ORIGINAL

1    JOSH A. KREVITT (CA SBN 208552)          MICHAEL A. JACOBS (CA SBN 111664)
     jkrevitt@gibsondunn.com                  mjacobs@mofo.com
2    H. MARK LYON (CA SBN 162061)             RICHARD S.J. HUNG (CA SBN 197425)
     mlyon@gibsondunn.com                     rhung@mofo.com
3    GIBSON, DUNN & CRUTCHER LLP              MORRISON & FOERSTER LLP
     1881 Page Mill Road                      425 Market Street
4    Palo Alto, CA 94304-1211                 San Francisco, California 94105-2482
     Telephone: (650) 849-5300                Telephone: (415) 268-7000
5    Facsimile: (650) 849-5333                Facsimile: (415) 268-7522

6

7                                             Filed

8    *Attorneys for Plaintiff Apple, Inc.*        FEB    8 2012

9                                             RICHARD W. WIEKING
                                             CLERK, U.S. DISTRICT COURT
                                             NORTHERN DISTRICT OF CALIFORNIA
10                          UNITED STATES DISTRICT COURT

11                         NORTHERN DISTRICT OF CALIFORNIA

12                                SAN JOSE DIVISION

13                                        CV 12-00630 LHK

14   APPLE INC., a California corporation,

15                     Plaintiff,

16          v.                                CASE NO. 12-cv-

17   SAMSUNG ELECTRONICS CO., LTD., a         **DECLARATION OF DR. KARAN SINGH
     Korean corporation; SAMSUNG             REGARDING U.S. PATENT NO. 8,074,172**
18   ELECTRONICS AMERICA, INC., a New
     York corporation; and SAMSUNG            **Hearing:**                         HRL
19   TELECOMMUNICATIONS AMERICA,              Date:
     LLC, a Delaware limited liability company,   Time:
20                                            Place:
                       Defendants.            Judge:
21

22

23

24

25

26

27

28

**INTRODUCTION**

1.     I, Dr. Karan Singh, have been asked by counsel for Apple Inc. ("Apple") to provide an opinion as to whether the Samsung Galaxy Nexus infringes certain claims of United States Patent No. 8,074,172 (the "'172 patent"), which is assigned to Apple.  I have also been asked to provide an opinion as to whether the Apple iOS products use the technology of the '172 patent.  My opinions are set forth below in this report.

2.     If I am called as an expert witness, I expect to testify regarding my background, qualifications and experience relevant to the issues in this action, the technical subject matter of the '172 patent, the accused Samsung products, and the Apple products that practice the claimed inventions.

**QUALIFICATIONS AND EXPERIENCE**

3.     I received my Bachelor of Technology degree from the Indian Institute of Technology in 1991. I was awarded a Master of Science degree in 1992, and a Ph.D. in 1995, both from Ohio State University.  Attached to this report as Exhibit 1 is my curriculum vitae, which includes a list of all my honours, patents, presentations, grants, and publications from the last five years.

4.     In 1994, I was invited to conduct research at the Advanced Telecommunications Research laboratory in Kyoto, Japan.  During this time I researched virtual reality technology, specifically designing graphical environments in which human characters could interact with computing systems.

5.     My Ph.D. dissertation, which I presented in 1995, was on creating representations of humans which could interact in graphical environments.

6.     In 1995, I joined Alias Wavefront in Toronto, Canada. While there I designed character animation and facial modeling tools for the first release of Maya, which is a software system for computer graphical modeling, animation, and rendering which won a technical Oscar in 2003, one of only 38 such awards since 1930.  This software, which I worked on for more than two

1    years, is still the premiere software package today for these functions.  I worked at Alias Wavefront

2    until 1999.

3        7.      I have worked with Chris Landreth, a director of animated films, since I started with

4    Alias Wavefront in 1995.  Chris and I worked together on the design of Maya, and have subsequently

5    **worked on a number of film projects. Notable among these projects is the short film "Ryan," which**

6    **won an Oscar for Best Animated Short in 2005.**

7

8        8.      Later in 1999, I joined a start-up company in California called Paraform Inc.  While

9    there I worked to develop a system which transformed data from real objects which had been scanned

10   using lasers into useable digital models for downstream applications.

11       9.      For several months in 1999 I was a Visiting Professor of Computer Science at the

12   University of Otago in New Zealand. During that time I taught and conducted research in computer

13   graphics.

14

15       10.     Since 2002, I have been an Associate Professor of Computer Science at the University

16   of Toronto where I co-direct a reputed graphics and human computer interaction laboratory dgp

17   (dynamic graphics project).   I have conducted research and taught classes in graphics and in human

18   computer interaction.  During this period, I have also undertaken consulting projects with various

19   companies in the computer graphics and design industries. Since 2002, I have also been the Chief

20   Scientist at Geometry Systems, which is a company which designs software for the reverse

21   engineering of physical objects into usable digital models. I also co-founded Arcestra, Inc. in 2006,

22   which is a software service for conceptualizing and visualizing architectural interiors.

23

24       11.     My current research focus is on interaction techniques for pen and touch based devices

25   inspired by a sketching metaphor.

26

27

28

Gibson, Dunn &
Crutcher LLP

DECLARATION OF DR. KARAN SINGH
Case No. 12-cv-                                       3

12. I have previously testified by deposition as an expert in proceedings before the International Trade Commission in *In re Certain Electronic Digital Media Devices and Components Thereof*, Investigation No. 337-TA-796.

## COMPENSATION

13. I am being compensated for my work in connection with this matter at my current standard rate of $450 per hour. I am being separately reimbursed for any out-of-pocket expenses. No part of my compensation is dependent upon the outcome of this litigation or the nature of the opinions that I express.

## MATERIALS CONSIDERED FOR THIS DECLARATION

14. In forming the opinions set forth in this report, I have considered and relied upon my education, knowledge of the relevant fields, and experience. I have also reviewed and considered the '172 patent, and the prosecution history of the '172 patent. I have also reviewed all of the documents, things, and materials referenced in this declaration and included in the list attached as Exhibit 2.

15. If called to testify or to give additional opinions regarding this matter, I reserve the right to rely upon any additional information or materials that may be provided to me or that are relied upon by any of the Defendants' experts or witnesses.

16. I understand that discovery has not begun in this matter, and I will consider additional facts and material produced through any discovery that takes place to determine whether such additional material has an impact on my opinions. I may amend or supplement this declaration as necessary based on such additional information.

**LEGAL STANDARDS APPLIED**

### I.   Claim Construction

17.   I am not a legal expert and offer no legal opinions.  However, I have been informed by counsel of the various legal standards that apply to the pertinent technical issues, and I have applied those standards in arriving at my conclusions expressed in this report.

18.   I understand that in construing claims of a patent one should first consider the intrinsic evidence, which includes the patent's claim language, its specification, and its prosecution history.  In particular, I should first consider the words of the claims themselves, giving those words their customary and ordinary meaning as understood by one of ordinary skill in the art.  I then must consider the patent specification to determine whether the inventor used any terms or words in a manner inconsistent with their plain and ordinary meaning.  In addition to the claims and the specification, I also must review the prosecution history, which is the complete record of all the proceedings before the United States Patent and Trademark Office.  This is because a patent applicant might have affirmatively, or by implication, limited claim scope during prosecution.

19.   If the intrinsic evidence is not conclusive, I understand I may consider extrinsic evidence to ensure that a claim construction is not inconsistent with clearly expressed and widely held understandings in the pertinent technical field.  Such extrinsic evidence may take the form of expert and/or inventor testimony, dictionaries, technical treatises, and articles.  I further understand that I may not rely on extrinsic evidence to contradict or vary the meaning of claims provided by the intrinsic record.

20.   I further understand that the claims should be construed from the standpoint of a hypothetical person of ordinary skill in the art as of the invention date of the asserted patent.  I understand that claim construction is a matter of law and will be determined by the Court.

1

## II.     Infringement

2       21.      I understand that to determine whether there is infringement of a patent:  (1) the claims

3    of the patent must be construed; and (2) the properly construed claims must then be compared with

4
     the accused products.

5
        22.      I understand that the parties may dispute the construction of several terms.  As no

6

7    constructions have yet been proposed, I have interpreted the claims as one of ordinary skill in the art

8    would have at the time the relevant patent was filed in light of the teachings of the patent and its

9    prosecution history.

10      23.      As the second step in the infringement analysis, I understand that the properly

11   construed claim must be compared to the accused products.  I understand that an accused product

12
     may infringe a claim either literally or equivalently.  I understand from counsel that literal
13

14   infringement exists when the accused product embodies each and every limitation of a given asserted

15   claim.  To literally infringe a method claim, the product must perform every step of the claim.  If a

16   product does not literally perform a step of the claim, it can still infringe under the doctrine of

17   equivalents if the step it performs is insubstantially different from the claimed step.

18      24.      I understand that one test for determining equivalence is to determine whether the

19
     differences between the claimed limitation and the accused product are insubstantial.  I understand
20

21   that another test for determining equivalence is to examine whether the step used by the accused

22   product performs substantially the same function in substantially the same way to achieve

23   substantially the same result as the claimed step.

24      25.      I further understand that infringement of a method claim can be either direct or

25   indirect.  I understand that direct infringement occurs when a party makes, uses, sells, offers for sale,

26   or imports an article covered by the claims of a patent.  I understand that an indirect infringement

27   occurs either through inducement, where a party induces another to engage in acts that constitute

28

direct infringement, or through contributory infringement, where a party sells an article that is made for use in an infringement of the patent's claims or, put otherwise, is not a staple article of commerce that has substantial non-infringing uses.

### III.   Validity

#### A.   Presumption of Validity

26.    I understand that the same legal standards that I have discussed above for evaluating infringement also apply to the technical prong of the domestic industry requirement.  I have been informed that in deciding whether to issue a patent, the U.S. Patent and Trademark Office ("PTO") examines the patent specification, its claims, and relevant prior art references to determine whether the patent application and its claims meet the requirements for patentability. I understand that if the PTO then issues the patent, it has determined that the claims are valid. I understand that the law recognizes that the PTO possesses special expertise to conduct such determinations, and, as a result, each claim of a patent issued by the PTO is presumed valid by law.  This presumption of validity can only be overcome if the party seeking to invalidate a claim proves invalidity by clear and convincing evidence, which I understand to mean evidence that convinces the fact-finder that it is highly probable that the particular proposition is true.  I also understand that the burden to prove invalidity by clear and convincing evidence is even higher when the allegedly invalidating prior art was already considered by the PTO or is cumulative of the prior art that the PTO considered so any attempt to invalidate a claim using that type of information will not likely succeed.

#### B.   Patentable Subject Matter

27.    I understand that a claim must be directed to a new and useful process, machine, manufacture, or composition of matter and that a claim cannot merely claim a mathematical algorithm or an abstract idea. However, I understand that a claim drawn to new and useful subject matter does not become non-patentable simply because it uses a mathematical formula, computer

program, or digital computer. I further understand that in analyzing the patentability of a claim, one must consider the invention as a whole, rather than dissecting the claims into old and new elements and then ignoring the presence of the old elements in the analysis.

### C.    Anticipation

28.    I understand that a person cannot obtain a patent if someone else already has made an identical invention. I further understand that to prove anticipation, Respondents must prove with clear and convincing evidence that the claimed invention is not new.

29.    I understand that to anticipate a claim, each and every element in the claim must be present in a single item of prior art. In determining whether every one of the elements of the claimed invention is found in the prior art, I understand that one should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular prior art. I also understand that the prior art reference alleged to be anticipatory must also enable one of ordinary skill in the art to make the claimed invention without undue experimentation.

30.    I understand that anticipation must be found in a single reference, device, or process. In other words, anticipation does not allow an additional reference to supply a missing claim limitation. I further understand that the prior art reference must disclose all elements of the claim within the four corners of the document and must also disclose those elements arranged as in the claim.

31.    Moreover, I understand that any differences between prior art reference and a claimed invention invoke the question of obviousness, not anticipation. In other words, I understand it is not sufficient for a prior art reference to disclose part of a claimed invention or that it includes multiple, distinct teachings that one of ordinary skill in the art might somehow combine to achieve the claimed invention. The prior art reference must disclose the claimed invention without any need for combining various disclosures not directly related to each other.

32.     I further understand that the burden of proving invalidity is especially difficult or particularly heavy when prior art reference was before the Examiner during prosecution. In other words, I understand there is an added burden of overcoming the deference due to the Patent Office.

**D.     Obviousness**

33.     I understand that a claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, I have been informed that obviousness may be shown by considering more than one item of prior art.

34.     I further understand that the following factors must be evaluated to determine whether Defendants have established that the claimed inventions are obvious: (1) the scope and content of the prior art; (2) the difference or differences, if any, between each claim of the asserted patent and the prior art; (3) the level of ordinary skill in the art at the time the invention of the asserted patent was made; and (4) the existence of secondary considerations that indicate that the invention was obvious or not obvious.

35.     I also understand that Defendants must prove obviousness by clear and convincing evidence.

36.     I have been informed that one should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention and that one must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it. Moreover, I understand that a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. I understand that it is important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new

invention does. I understand that this is the case because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known. Therefore, I further understand that one may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention. I also understand that one must be careful not to determine obviousness using hindsight and that one evaluating the prior art should put oneself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made.

37.     I understand that secondary considerations that should be taken into account include the following: 1) commercial success of a product due to the merits of the claimed invention; 2) a long-felt, but unsolved, need for the solution provided by the claimed invention; 3) unsuccessful attempts by others to find the solution provided by the claimed invention; 4) copying of the claimed invention by others; 5) unexpected and superior results from the claimed invention; 6) acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention; and 7) disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention.

**E.     Indefiniteness**

38.     I understand that the requirement that patent claims be definite means that patent claims must particularly point out and distinctly claim subject matter which the applicant regards as his invention. I further understand that a claim is sufficiently definite to satisfy this requirement if one skilled in the art would understand the bounds of the claim when read in light of the specification. I have also been informed that a claim is not indefinite unless it is not amenable to construction or is insolubly ambiguous. I further understand that a claim is not indefinite merely because it poses a difficult issue of claim construction.

DECLARATION OF DR. KARAN SINGH
Case No. 12-cv-                                          10

Gibson, Dunn &
Crutcher LLP

## SUMMARY OF OPINIONS

39.     Based on information currently available to me, it is my opinion that:

    a.     The Samsung Galaxy Nexus infringes claims 18, 19 and 27 of the '172 patent;

    b.     Claims 18, 19, and 27 of the '172 patent are valid; and

    c.     Apple's iOS devices incorporate the features claimed in the '172 patent.

## LEVEL OF ORDINARY SKILL IN THE ART

40.     I may offer testimony regarding the level of ordinary skill in the art of the '172 patent, and specifically the qualifications of such a person at the time of the invention of that patent.

41.     In my opinion a person of ordinary skill in the art of the '172 patent would have at least a bachelor's degree in computer science, computer engineering or electrical engineering, or the equivalent, or at least four years of experience in designing and/or implementing systems that enable user interaction and input.  One of ordinary skill in the art might have either more formal education with less practical experience or more practical experience with less formal education.

42.     I have at least that level of skill and consider myself a person with at least ordinary skill in the art pertaining to the '172 patent and I would have been such a person at the time of invention of that patent in the 2006-2007 timeframe.  In addition, I have worked with others who would have been such a person at that time and understand their skills and capabilities.

## TECHNICAL BACKGROUND

I.     Apple's '172 patent

A.     Description and Background of Apple's '172 patent

43.     The '172 patent invented by Kenneth Kocienda and Bas Ording is entitled "Method, system and graphical user interface for providing word recommendations."  The '172 patent is directed to a portable computing device that enables users to input text values and make recommendations to the user to change the input value to a potentially more accurate input in an easy manner or to choose to keep what the user input.

44.     As the patent describes:

> In recent years, the functional capabilities of portable electronic devices have
> increased dramatically. Current devices enable communication by voice, text, and still
> or moving images. Communication by text, such as by email or short message service
> (SMS), has proven to be quite popular.
> However, the size of these portable communication devices also restricts the size of
> the text input device, such as a physical or virtual keyboard, in the portable device.
> With a size-restricted keyboard, designers are often forced to make the keys smaller or
> overload the keys. Both may lead to typing mistakes and thus more backtracking to
> correct the mistakes.  This makes the process of inputting text on the devices
> inefficient and reduces user satisfaction with such portable devices.

'172 patent, 1:22-35

45.     The '172 patent addresses that problem by displaying the input values and at certain

times providing the user with a suggestion to replace input values provided by the user.  For example,

if the user typed in Whav, the system might display What as a suggested replacement since Whav is

not a word, but What is.  Further, to facilitate speed of using the portable electronic device, upon

receiving an input associated with a delimiter (e.g., the space bar), the system automatically replaces

the input text with the suggested text.  Because sometimes the user is typing a proper name or intends

to input arbitrary characters (like Whav), the '172 patent describes also enabling the user to choose

the input characters by making a gesture (e.g., tapping on a touch screen) in another area of the user

interface.  Further, the '172 patent describes providing a second area in the graphical user interface

where the current string of characters and one or more suggested strings are displayed and allowing

the user to make a gesture (e.g., tapping on the touch screen an area of the user interface associated

with the suggested character string) to replace the current string.   This combination of features

enables a user of a smartphone, for example, to input text with the ability to correct mistakes without

having to delete characters and start over.

46.     For example, Fig. 4D displays an example in the patent for a portable device with a

virtual keyboard (21) and a first input area (214) where text is being entered and a second area (216)

Gibson, Dunn &
Crutcher LLP

where both the current character string and a suggested replacement character string are displayed. That second area is located between the first input area and the virtual keyboard.  In this example, when the user types in cae, the current character string (cae) and a suggested replacement character string (car) are both displayed in the second area (216) and when the user selects an input associated with a delimiter (such as the space bar in Fig. 4D), the system replaces the current character string with the suggested replacement character string as shown in Fig. 4E.

 

FIG. 4D     FIG. 4E

47.     If, instead, the user wants to use the current character string and performs a gesture associated with the second area near where the current character string is displayed, then the system selects the current character string as shown below in Fig. 4C.

Portable Electronic Device
200

FIG. 4C

48.    The Samsung Galaxy Nexus performs in a manner that is remarkably similar to the example figures shown in the '172 patent.  To my knowledge, no one had used an auto-correct feature in the manner recited in claims 18, 19 and 27 of the '172 patent prior to January 5, 1997.

**B.    Prosecution History**

49.    The '172 patent was filed on January 5, 1997 and issued with 38 claims on December 6, 2011.  I have reviewed the file history of the '172 patent as part of preparing this declaration.  Claims 18, 19 and 27 of the '172 patent were reviewed by the United States Patent and Trademark Office ("USPTO") examiner several times but allowed over sixty or more references cited by Apple or the PTO examiner.

50.    '172 patent claims 18, 19 and 27 are based on application claims 23, 24 and 32, respectively.  On October 24, 2011, the USPTO issued a Notice of Allowance in which the examiner allowed the '172 patent claims and provided Reasons for Allowance as shown below:

Gibson, Dunn &
Crutcher LLP

DECLARATION OF DR. KARAN SINGH
Case No. 12-cv-                                                14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Reasons for Allowance*

6.      The following is an examiner's statement of reasons for allowance:

**Regarding independent claims 6, 7, 23, 24, 25, 27, 32, 33, 37 and 38,** the prior art of record neither anticipates nor suggests to a person of ordinary skill in the art, at the time the invention was made, the claimed method, device or computer readable media for text entry at a portable electronic device with a touch screen display comprising: in a first area of the touch screen display, displaying a current character string being input by a user with the keyboard; in a second area of the touch screen display that is between the first area and the keyboard, displaying the current character string or a portion thereof and a suggested replacement character string for the current character string on opposite sides of the second area; replacing the current character string in the first area with the suggested replacement character string if the user activates a space bar key on the keyboard; replacing the current character string in the first area with the suggested replacement character string if the user performs a first gesture on the suggested replacement character string displayed in the second area; and keeping the current character string in the first area and adding a space if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area.

C.      **Asserted Claims**

51.      I have evaluated claims 18, 19 and 27 of the '172 patent for now against the Samsung Galaxy Nexus.

52.      Claim 18 of the '172 patent claims:

18.   A graphical user interface on a portable electronic device with a keyboard and a touch screen display, comprising:

a first area of the touch screen display that displays a current character string being input by a user with the keyboard; and

a second area of the touch screen display separate from the first area that displays the current character string or a portion thereof and a suggested replacement character string for the current character string;

wherein;

the current character string in the first area is replaced with the suggested replacement character string if the user activates a key on the keyboard associated with a delimiter;

the current character string in the first area is replaced with the suggested replacement character string if the user performs a gesture on the suggested replacement character string in the second area; and

the current character string in the first area is kept if the user performs a gesture in the second area on the current character string or the portion thereof displayed in the second area.

53.   Claim 19 of the '172 patent claims:

19.   A portable electronic device, comprising:

a touch screen display;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, one or more programs including:

instructions for displaying, in a first area of the touch screen display, a current character string being input by a user with the keyboard;

instructions for displaying, in a second area of the touch screen display separate from the first area, the current character string and a suggested replacement character string for the current character string;

instructions for replacing the current character string in the first area with the suggested replacement character string if the user activates a key on the keyboard associated with a delimiter; instructions for replacing the current character string in the first area with the suggested replacement character string if the user performs a first gesture on the suggested replacement character string displayed in the second area; and instructions for keeping the current

character string in the first area if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area.

54. Claim 27 of the '172 patent claims:

27. A portable electronic device, comprising:

one or more processors;

a touch screen display; and

computer readable memory comprising instructions that, when executed by the one or more processors, perform operations comprising:

receiving a plurality of user inputs of characters through the keyboard, and displaying a current character string as input by the user, displaying a suggested replacement character string for the current character string;

while both the current character string and the suggested replacement string are displayed, receiving a further user input through a punctuation mark key of the keyboard, and in response to the further user input, replacing the current character string with the suggested replacement character string, and appending a punctuation mark at the end of the replacement character string, the punctuation mark corresponding to the punctuation mark key through which the further user input was received.

**D.    Claim Construction of the '172 Patent Terms**

55.    I have applied the understanding of the claims from the perspective of one of ordinary skill in the art, but reserve the right to amend my opinions should the construction of those terms change.

**E.    Infringement**

**1.    Infringement of Claim 18 of the '172 patent**

56.    It is my opinion that the Samsung Galaxy Nexus literally infringes each element of claim 18 of the '172 patent. To the extent that any element is found not to be literally infringed, it is my opinion that the Galaxy Nexus performs substantially the same function as required by each element, in substantially the same way, to achieve substantially the same result. My analysis is set

DECLARATION OF DR. KARAN SINGH
Case No. 12-cv-                                        17

1  forth in the claim chart attached as Exhibit 6, and my element-by-element analysis is further provided

2  below.

4          **(i)     A graphical user interface on a portable electronic device
                     with a keyboard and a touch screen display comprising:**

5          57.     To the extent that the preamble may be construed to be limiting, the Samsung Galaxy

7  Nexus provides a graphical user interface on a portable computer, as evidenced by the presence of a

8  CPU, memory devices, and a display device, and due to its size (67.94 X 135.5 X 9.47 **mm or 5.33" x**

9  **2.67" x 0.37").**



22         58.     The Specifications are attached as Exhibit 4.[1]

23         59.     **Samsung's website lists the Galaxy Nexus within the category "Mobile Devices," and**

24  **more particularly within the subcategory of "Smartphones" that run "Android OS".** *Id.*

26         60.     The Samsung Galaxy Nexus has a 1.2 GHz dual core processor. *Id.*

---

[1] *Available at* http://www.google.com/nexus/register.html#/tech-specs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CPU

| Processor Speed, Type | 1.2GHz Dual-Core Processor |
| --- | --- |

61.    The Samsung Galaxy Nexus also has storage as indicated in the Specifications, Exhibit 4, and indicated below.

## Memory

| Internal Memory | 32GB |
| --- | --- |

62.    The Galaxy Nexus's CPU and memory are shown in the photographs below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   63.     As shown below, and in the specifications, the Samsung Galaxy Nexus's CPU is

16   coupled to a 4.65 inch, 1280 x 720 pixel color Super AMOLED touch screen display.  (*See* Exhibit 4,

17   Specifications for Galaxy Nexus.)

18
19
20
21
22
23
24
25
26
27
28

## Display

| | |
|---|---|
| **Main Display Resolution** | 1280x720 pixels |
| **Main Display Size** | 4.65" Display |
| **Main Display Technology** | HD Super AMOLED™ contoured display |



64. The Samsung Galaxy Nexus provides a graphical user interface as shown and provides a virtual keyboard and a touch screen. The virtual keyboard can be shown in the figure below:



      (ii)    **first area of the touch screen display that displays a current character string being input by a user with the keyboard;**

65.    In the Samsung Galaxy Nexus email App, as the user the inputs the characters in "This is a new messaf," the Samsung Galaxy Nexus displays "This is a new messaf" as a character string on the touch screen in a first area of the touch screen display (shown with the longer blue line) below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16 (*See* http://android-developers.blogspot.com/2009/04/updating-applications-for-on-screen.html – a
17 true and accurate copy of which is attached as Exhibit 8; "Galaxy Nexus Help: Help articles >
18 Android 4.0 > Galaxy Nexus > Get started > Touch & type", available at
19 http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&
20 ctx=topic ("To type something, such as a name, password, or search terms, just touch where you want
21 to type. A keyboard pops up that lets you type into the field.") – a true and accurate copy of which is
22 attached as Exhibit 9; "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter &
23 edit text > Use the keyboard", available at
24
25 http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&
26 ctx=topic.) – a true and accurate copy of which is attached as Exhibit 10.
27
28

1

2

3

           **(iii)**    **in a second area of the touch screen display separate from the first area that displays the current character string or a portion thereof and a suggested replacement character string for the current character string;**

4

    66.    In a second area of the touch screen display, the current string and a suggested

5

replacement string are displayed, as depicted below.

6

7

8

9

10

11

12

13

14

15

16

17

18

19



20

21

    67.    The second area is separate because it is below the text input area that comprises the

22

first area and is differentiated by the use of different background color. (*See* Exhibit 8,

23

http://android-developers.blogspot.com/2009/04/updating-applications-for-on-screen.html; Exhibit

24

10, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit text > Use the

25

keyboard", available at

26

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&

27

ctx=topic ("As you type, the keyboard displays suggestions above the top row of keys. To accept a

28

suggestion, touch it."); **Exhibit 9,** "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus

1   > Get started > Touch & type", available at

2   http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&

3   ctx=topic; http://developer.android.com/reference/android/widget/TextView.html  - a true and

4   accurate copy of which is attached as Exhibit 11;

5

6   http://developer.android.com/reference/android/text/AutoText.html.) – a true and accurate copy of

7   which is attached as Exhibit 3.

8

9                     **(iv)**    **wherein; the current character string in the first area is**

                                      **replaced with the suggested replacement character string if**

10                                      **the user activates a key on the keyboard associated with a**

                                     **delimiter;**

11       68.    If the user presses the "Space" bar on the keyboard, the delimiter character, the current

12   character string is replaced by the suggested string.

13



(*See* "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit text > Use the keyboard", available at

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287& ctx=topic; "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Get started > Touch & type", available at

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159& ctx=topic;

http://www.macnn.com/reviews/samsung-galaxy-nexus.html – a true and accurate copy of which is attached as Exhibit 5; http://www.laptopmag.com/review/cellphones/samsung-galaxy-nexus.aspx – a true and accurate copy of which is attached as Exhibit 7; Exhibit 11, http://developer.android.com/reference/android/widget/TextView.html; Exhibit 3, http://developer.android.com/reference/android/text/AutoText.html.)

> (v)  **the current character string in the first area with the suggested replacement character string if the user performs a first gesture on the suggested replacement character string displayed in the second area; and**

69.   If the user performs a first gesture of pressing on the suggested replacement string, the current character string is replaced by the suggested string, as shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



First gesture press area

15
16
17
18
(*See* **Exhibit 10**, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit

text > Use the keyboard", available at

19 http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&

20 ctx=topic ("As you type, the keyboard displays suggestions above the top row of keys. To accept a

21 suggestion, touch it."); Exhibit 9, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus

22 > Get started > Touch & type", available at

23 http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&

24
25 ctx=topic; Exhibit 11, http://developer.android.com/reference/android/widget/TextView.html; Exhibit

26 3, http://developer.android.com/reference/android/text/AutoText.html; Exhibit 5,

27 http://www.macnn.com/reviews/samsung-galaxy-nexus.html; Exhibit 7,

28 http://www.laptopmag.com/review/cellphones/samsung-galaxy-nexus.aspx.)

1

        **(vi)**    **the current character string in the first area is kept if the**
2                 **user performs a second gesture in the second area on the**
                **current character string or the portion thereof displayed in**
3                 **the second area.**

4        70.    If the user performs a second gesture of pressing on the current string, the current

5 character string is kept:

6

7

8

9

10

11

12

13 

14

15

16

17

18

19

20

21                Second gesture press area

22 (*See* Exhibit 10, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit

23 text > Use the keyboard", available at

24 http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&

25 ctx=topic; Exhibit 9, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Get started

26

27 > Touch & type", available at

28 http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&

ctx=topic; Exhibit 11, http://developer.android.com/reference/android/widget/TextView.html; Exhibit

3, http://developer.android.com/reference/android/text/AutoText.html; Exhibit 5,

http://www.macnn.com/reviews/samsung-galaxy-nexus.html; Exhibit 7,

http://www.laptopmag.com/review/cellphones/samsung-galaxy-nexus.aspx.)

71.     Therefore, it is my opinion that the Samsung Galaxy Nexus infringes claim 18 of the

'172 patent because all of the elements are found in the Samsung Galaxy Nexus.

### 2.     Infringement of Claim 19 of the '172 patent

72.     It is my opinion that the Samsung Galaxy Nexus literally infringes each element of

claim 19 of the '172 patent. To the extent that any element is found not to be literally infringed, it is

my opinion that the Galaxy Nexus performs substantially the same function as required by each

element, in substantially the same way, to achieve substantially the same result. My analysis is set

forth in the claim chart attached as Exhibit 6, and my element-by-element analysis is further provided

below.

### (i)     A portable electronic device comprising:

73.     To the extent that the preamble may be construed to be limiting, the Samsung Galaxy

Nexus is a portable computer, as evidenced by the presence of a CPU, memory devices, and a display

device, and as reflected by its size (67.94 X 135.5 X 9.47 mm or 5.33" x 2.67" x 0.37"). The

Specifications are attached as Exhibit 4.[2]

---

[2] *Available at* http://www.google.com/nexus/register.html#/tech-specs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   74.   Samsung's website lists the Galaxy Nexus within the category "Mobile Devices," and

17   more particularly within the subcategory of "Smartphones" that run "Android OS".  *Id.*

18   75.   The Samsung Galaxy Nexus has a 1.2 GHz dual core processor.  *Id.*

19
20   CPU
21   Processor Speed,        1.2GHz Dual-Core Processor
     Type
22
23   76.   The Samsung Galaxy Nexus also has storage as indicated in the Specifications,

24   Exhibit 4 and indicated below:
25
26
27   Memory
28   **Internal Memory**        32GB

77.    The Galaxy Nexus's CPU and memory are shown above in the section related to Claim 18.

78.    As shown below, and in the specifications, the Samsung Galaxy Nexus's CPU is coupled to a 4.65 inch, 1280 x 720 pixel color Super AMOLED display.  (*See* Exhibit 4, Specifications for Galaxy Nexus.)

## Display

| Main Display Resolution | 1280x720 pixels |
|---|---|
| Main Display Size | 4.65" Display |
| Main Display Technology | HD Super AMOLED™ contoured display |



**(ii)    one or more processors;**

79.    The Samsung Galaxy Nexus comprises one or more processors.

80.    The Samsung Galaxy Nexus has a 1.2 GHz dual core processor.  (*See* Exhibit 4, Specifications for Galaxy Nexus.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CPU**

| Processor Speed, Type | 1.2GHz Dual-Core Processor |
| --- | --- |

**(iii)    a touch screen display;**

81.    The Samsung Galaxy Nexus comprises a touch screen display.



82.    As shown in the photo above and as indicated in the Specifications, Exhibit 4, the Samsung Galaxy Nexus has a color Super AMOLED display:

**Display**

| Main Display Resolution | 1280x720 pixels |
| --- | --- |
| Main Display Size | 4.65" Display |
| Main Display Technology | HD Super AMOLED™ contoured display |

          (iv)     **memory; and one or more programs stored in the memory and configured to be executed by the one or more processors, one or more programs including:**

83.     The Samsung Galaxy Nexus comprises memory and one or more programs stored in the memory and configured to be executed by the one or more processors.

84.     The Samsung Galaxy has storage and memory as indicated in the Specifications, Exhibit 4 (identifying memory of 32 GB and 1GB of RAM)

85.     Further, the Samsung Galaxy Nexus operates the Android 4.0 operating system and applications that execute on that operating system.

          (v)     **instructions for displaying, in a first area of the touch screen display, a current character string being input by a user with a keyboard;**

86.     The Samsung Galaxy Nexus comprises memory and one or more programs stored in the memory and configured to be executed by the one or more processors, one or more processors including instructions for displaying, in a first area of the touch screen display, a current character string being input by a user with a keyboard.

87.     In the Samsung Galaxy Nexus email App, as the user the inputs the characters in "This is a new messaf," the Samsung Galaxy Nexus displays "This is a new messaf" as a character string on the touch screen in a first area of the touch screen display (shown with the longer blue line) below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15 (*See* Exhibit 8, http://android-developers.blogspot.com/2009/04/updating-applications-for-on-

16 screen.html; Exhibit 9, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Get

17 started > Touch & type", available at

18 http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&

19 ctx=topic ("To type something, such as a name, password, or search terms, just touch where you want

20 to type. A keyboard pops up that lets you type into the field."); Exhibit 10, "Galaxy Nexus Help:

21 Help articles > Android 4.0 > Galaxy Nexus > Enter & edit text > Use the keyboard", available at

22

23 http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&

24 ctx=topic.)

25

26           **(vi)**     **instructions for displaying, in a second area of the touch**
**screen display separate from the first area, current**
27 **character string and a suggested replacement character**
**string for the current character string;**
28

1

2
    88.    In a second area of the touch screen display, the current string and a suggested

replacement string are displayed, as depicted below.

3



4

5

6

7

8

9

10

11

12

13

14

15

16

17

(*See* Exhibit 8, http://android-developers.blogspot.com/2009/04/updating-applications-for-on-

18

screen.html; **Exhibit 10,** "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter &

19

**edit text > Use the keyboard",** available at

20

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&

21

ctx=topic ("**As you type, the keyboard displays suggestions above the top row of keys. To accept a**

22

**suggestion, touch it.");** **Exhibit 9,** "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus

23

**> Get started > Touch & type",** available at

24

25

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&

26

ctx=topic; Exhibit 11, http://developer.android.com/reference/android/widget/TextView.html; Exhibit

27

3, http://developer.android.com/reference/android/text/AutoText.html.)

28

1

2

3

    **(vii)**  **instructions for replacing the current character string in the first area with the suggested replacement character string if the user activates a key on the keyboard associated with a delimiter;**

4

  89.  If the user presses the "Space" bar on the keyboard, the delimiter character, the current

5

character string is replaced by the suggested string.

6

7

8

9

10

11

12

13

14

15

16

17

18

19



20

21

22

(*See* **Exhibit 10, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit text > Use the keyboard", available at**

23

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&

24

ctx=topic; **Exhibit 9, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Get started**

25

**> Touch & type", available at**

26

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&

27

ctx=topic;

28

1  Exhibit 5, http://www.macnn.com/reviews/samsung-galaxy-nexus.html; Exhibit 7,
2  http://www.laptopmag.com/review/cellphones/samsung-galaxy-nexus.aspx; Exhibit 11,
   http://developer.android.com/reference/android/widget/TextView.html; Exhibit 3,
3  http://developer.android.com/reference/android/text/AutoText.html.)

4                    **(viii)    instructions for replacing the current character string in the**
5                                **first area with the suggested replacement character string if**
                                 **the user performs a first gesture on the suggested**
6                                **replacement character string displayed in the second area;**
                                 **and**

7         90.      If the user performs a first gesture of pressing on the suggested replacement string,

8  the current character string is replaced by the suggested string.



First gesture press area

25  (*See* Exhibit 10, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit

26  text > Use the keyboard", available at

27  http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&

28  ctx=topic ("**As you type, the keyboard displays suggestions above the** top row of keys. To accept a

1   suggestion, touch it."); Exhibit 9, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus

2   > Get started > Touch & type", available at

3   http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&

4   ctx=topic; Exhibit 11, http://developer.android.com/reference/android/widget/TextView.html; Exhibit

5

6   3, http://developer.android.com/reference/android/text/AutoText.html; Exhibit 5,

7   http://www.macnn.com/reviews/samsung-galaxy-nexus.html; Exhibit 7,

8   http://www.laptopmag.com/review/cellphones/samsung-galaxy-nexus.aspx.)

9

10                          **(ix)     instructions for keeping the current character string in the
                                         first area if the user performs a second gesture in the second
11                                       area on the current character string or the portion thereof
                                         displayed in the second area.**

12          91.     If the user performs a second gesture of pressing on the current string, the current

13   character string is kept.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Second gesture press area

(*See* Exhibit 10, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit text > **Use the keyboard**", available at

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&ctx=topic; ; Exhibit 9, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Get started > **Touch & type**", available at

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&ctx=topic; Exhibit 11, http://developer.android.com/reference/android/widget/TextView.html; Exhibit 3, http://developer.android.com/reference/android/text/AutoText.html; Exhibit 5, http://www.macnn.com/reviews/samsung-galaxy-nexus.html; Exhibit 7, http://www.laptopmag.com/review/cellphones/samsung-galaxy-nexus.aspx.)

92.    Therefore, it is my opinion that the Samsung Galaxy Nexus infringes claim 19 of the '172 patent because all of the elements are found in the Samsung Galaxy Nexus.

### 3.    Infringement of Claim 27 of the '172 patent

93.    It is my opinion that the Samsung Galaxy Nexus literally infringes each element of claim 27 of the '172 patent.  To the extent that any element is found not to be literally infringed, it is my opinion that the Galaxy Nexus performs substantially the same function as required by each element, in substantially the same way, to achieve substantially the same result.  My analysis is set forth in the claim chart attached as Exhibit 6, and my element-by-element analysis is further provided below.

### (i)    A portable electronic device comprising:

94.    To the extent that the preamble may be construed to be limiting, the Samsung Galaxy Nexus is a portable computer, as evidenced by the presence of a CPU, memory devices, and a display device, and as reflected by its size (67.94 X 135.5 X 9.47 mm or 5.33" x 2.67" x 0.37").  The Specifications are attached as Exhibit 4.[3]

---

[3] *Available at* http://www.google.com/nexus/register.html#/tech-specs
DECLARATION OF DR. KARAN SINGH
Case No. 12-cv-                                                    40

Gibson, Dunn & Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   95.   Samsung's website lists the Galaxy Nexus within the category "Mobile Devices," and

17   more particularly within the subcategory of "Smartphones" that run "Android OS".  *Id.*

18   96.   The Samsung Galaxy Nexus has a 1.2 GHz dual core processor.  *Id.*

19
20   CPU

21   | Processor Speed, Type | 1.2GHz Dual-Core Processor |
22

23   97.   The Samsung Galaxy Nexus also has storage as indicated in the Specifications,

24   Exhibit 4 and indicated below:

25
26
27   Memory

28   | Internal Memory | 32GB |

Gibson, Dunn &   DECLARATION OF DR. KARAN SINGH
Crutcher LLP     Case No. 12-cv-                          41

98.     The Galaxy Nexus's CPU and memory are shown above in the section related to Claim 18.

99.     As shown below, and in the specifications, the Samsung Galaxy Nexus's CPU is coupled to a 4.65 inch, 1280 x 720 pixel color Super AMOLED display. (*See* Exhibit 4, Specifications for Galaxy Nexus.)

## Display

| | |
|---|---|
| **Main Display Resolution** | 1280x720 pixels |
| **Main Display Size** | 4.65" Display |
| **Main Display Technology** | HD Super AMOLED™ contoured display |



**(ii)     one or more processors;**

100.    The Samsung Galaxy Nexus comprises one or more processors.

101.    The Samsung Galaxy Nexus has a 1.2 GHz dual core processor. (*See* Exhibit 4, Specifications for Galaxy Nexus.)

CPU

| Processor Speed, Type | 1.2GHz Dual-Core Processor |
|---|---|

### (iii)   a touch screen display;

102.   The Samsung Galaxy Nexus comprises a touch screen display.



103.   As shown in the photo above and as indicated in the Specifications, Exhibit 4, the Samsung Galaxy Nexus has a color Super AMOLED display:

Display

| Main Display Resolution | 1280x720 pixels |
|---|---|
| Main Display Size | 4.65" Display |
| Main Display Technology | HD Super AMOLED™ contoured display |

1

2

3

                            (iv)     **computer readable memory comprising instructions that, when executed by the one or more processors, perform operations comprising:**

4

5

        104.     The Samsung Galaxy Nexus comprises memory and one or more programs stored in the memory and configured to be executed by the one or more processors.

6

7

        105.     The Samsung Galaxy has storage and memory as indicated in the Specifications, Exhibit 4 (storage of 32 GB and 1 GB of RAM).

8

9

10

        106.     Further, the Samsung Galaxy Nexus operates the Android 4.0 operating system and applications that execute on that operating system.

11

12

13

                            (v)     **receiving a plurality of user inputs of characters through the keyboard, and displaying a current character string as input by the user,**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DR. KARAN SINGH
Case No. 12-cv-

107.    The Samsung Galaxy Nexus receives user inputs through a keyboard and displays the current character string.



108.    (*See* Exhibit 8, http://android-developers.blogspot.com/2009/04/updating-applications-for-on-screen.html; Exhibit 9, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Get started > Touch & type", available at

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&ctx=topic ("To type something, such as a name, password, or search terms, just touch where you want to type. A keyboard pops up that lets you type into the field."); Exhibit 10, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit text > Use the keyboard", available at

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&ctx=topic.)

1
2

           **(vi)    displaying a suggested replacement character string for the current character string;**

3
4

     109.    The Samsung Galaxy Nexus displays a suggested replacement character string for the current string.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20
21
22
23
24
25
26
27
28

     110.    (*See* Exhibit 8, http://android-developers.blogspot.com/2009/04/updating-applications-for-on-screen.html; Exhibit 10, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Enter & edit text > Use the keyboard", available at

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1646288&topic=1646287&ctx=topic ("As you type, the keyboard displays suggestions above the top row of keys. To accept a suggestion, touch it."); Exhibit 8, "Galaxy Nexus Help: Help articles > Android 4.0 > Galaxy Nexus > Get started > Touch & type", available at

http://www.google.com/support/ics/nexus/bin/answer.py?hl=en&answer=1637532&topic=1634159&

1 ctx=topic; Exhibit 11, http://developer.android.com/reference/android/widget/TextView.html; Exhibit

2 3, http://developer.android.com/reference/android/text/AutoText.html.)

3

4                           **(vii)**     **while both the current character string and the suggested**

                                       **replacement string are displayed, receiving a further user**

5                                        **input through a punctuation mark key of the keyboard, and**

6     111.    With both the current and suggested replacement character string displayed, the user

7 inputs a punctuation mark through a punctuation mark key on the keyboard (e.g., the question mark

8 key), as shown below:

9



23                                                                                   User selects the question mark

24                             **(viii)**     **in response to the further user input, replacing the current**

25                                        **character string with the suggested replacement character**

                                       **string, and appending a punctuation mark at the end of the**

26                                        **replacement character string, the punctuation mark**

                                       **corresponding to the punctuation mark through which the**

27                                      **further user input was received.**

28

112.     When the punctuation mark is received, the Samsung Galaxy Nexus replaces the current character string with the suggested character string and appends the punctuation mark (here the question mark) at the end of the suggested replacement string.



113.     Therefore, it is my opinion that the Samsung Galaxy Nexus infringes claim 19 of the '172 patent because all of the elements are found in the Samsung Galaxy Nexus.

**F.     Apple's Use of the Patented Technology**

114.     It is my opinion that at least the Apple iOS products incorporate the features of the '172 patent. Each of these Apple products provides functionality to enable each of input through use of punctuation marks, delimiters like the space bar and selecting the suggested replacement string or the current replacement string through a bar that is provide in the middle of the user interface between the text input area and the keyboard, as described and claimed in the '172 patent.

**G.    Validity**

115.    It is my opinion that claims 18, 19 and 27 of the '172 patent are valid.

116.    The '172 patent issued in December of 2011 after a thorough examination by the USPTO.  The USPTO considered over sixty potential prior art references, as well as a large number of PTO Office Actions addressed to other pending Apple patent applications.

117.·    In my opinion, the extensive USPTO review of claims 18, 19, and 27 of the '172 patent has enhanced the likelihood that these claims will survive any possible challenge to their validity beyond just the normal presumption of validity given to all issued patents.  For example, I understand that where certain references have been analyzed by the USPTO during the prosecution of a patent, those references may be given less weight if and when asserted as prior art against that patent during subsequent litigation.  Here, where the '172 patent underwent multiple rounds of deep discussion and analysis against so many references, I believe that there is a very high likelihood that a jury will agree with the USPTO's recent issuance of claims 18, 19 and 27 was proper and that those claims are valid.

**1.    Novelty and Non-obviousness Over Closest Prior Art References**

118.    I have been researching and teaching in the field related to graphical user interfaces for over twenty years.· In my experience as a computer science professor, my consulting experience and my own professional experience, I have utilized a large number of electronic devices, including mobile phones, laptop computers and other computing devices.  To the best of my recollection, I have not seen any disclosure or actual devices that provide all of the features recited in claims 18, 19 or 27 of the '172 patent that pre-date the January 5, 2007 filing date.

119.    In addition, it is my opinion that the features recited in claims 18, 19 and 27 of the '172 patent departed from the text correction systems in electronics devices that pre-dated January 5, 2007.  By enabling a user to accept a suggested replacement string by use of a key associated with a

delimiter (like the space bar key), the user is able to input text more quickly.  In addition, by providing a separate area where the current character string and suggested replacement character strings are displayed, the user is able to readily see the choices being offered and make a decision. Further, if the user wants to reject the suggested replacement character string, the user can easily tap on the current character string and keep inputting additional text.  After a short time using this system, the user is able to input text more quickly with fewer mistakes.  My experience thus supports my opinion that the invention of the '172 patent was novel, and not anticipated by any device or publication in the prior art.

120.      My review of the prosecution history of the '172 patent also supports my opinion that Apple's invention was new and non-obvious.  In particular, the discussion below of certain alleged prior art references is not intended to address every distinction between claims 18, 19 and 27 of the '172 patent and these references, or every reason I believe that these references do not render claims 18, 19 and 27 of the '172 patent invalid, but rather just some of these distinctions and how they support my opinions.

121.      During examination of the '172 patent, the USPTO Examiner cited four published patent applications as being the most pertinent prior art:  Longe (2006/0274015), Rainisto (2006/0265648), Kushler (2007/0040813), and Knaven (2006/0152496).  After considered analysis of these references, the Examiner determined that these references did not disclose the inventions claimed in the '172 patent, as summarized in the Examiner's Reasons for Allowance in the October 24, 2011 Notice of Allowance:

**Regarding independent claims 6, 7, 23, 24, 25, 27, 32, 33, 37 and 38,** the prior art of record neither anticipates nor suggests to a person of ordinary skill in the art, at the time the invention was made, the claimed method, device or computer readable media for text entry at a portable electronic device with a touch screen display comprising: in a first area of the touch screen display, displaying a current character string being input by a user with the keyboard; in a second area of the touch screen display that is between the first area and the keyboard, displaying the current character string or a portion thereof and a suggested replacement character string for the current character string on opposite sides of the second area; replacing the current character string in the first area with the suggested replacement character string if the user activates a space bar key on the keyboard; replacing the current character string in the first area with the suggested replacement character string if the user performs a first gesture on the suggested replacement character string displayed in the second area; and keeping the current character string in the first area and adding a space if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area.

122.     I have reviewed each of those references and agree with the USPTO examiner that those references do not anticipate or render obvious claims 18, 19 and 27 of the '172 patent.

123.     For example, Longe (2006/0274015) (the "Longe Reference") does not disclose the inventions claimed in claims 18, 19, and 27 of the '172 patent at least because the Longe Reference, neither alone nor in combination with any other references, discloses a first and second area both of which display the current character string or a portion thereof along with all of the other limitations recited in claims 18, 19, and 27 of the '172 patent.

124.     Similarly, neither Kushler (2007/0040813) (the "Kushler Reference") nor Rainisto (2006/0265648) (the "Rainisto Reference"), alone or in combination, disclose at least an invention in which "the current character string in the first area is kept if the user performs a gesture in the second area on the current character string or the portion thereof displayed in the second area," as claimed in claim 18.  Neither the Kushler Reference nor the Rainisto Reference, again alone or in combination, further disclose "keeping the current character string in the first area if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area," as claimed in claim 19, or "replacing the current character string with the suggested replacement character string, and appending a punctuation mark at the end of the replacement character string, the punctuation mark corresponding to the punctuation mark key through which the further user input was received," as claimed in claim 27.

125.     Moreover, and as noted by the USPTO Examiner, Knaven (2006/0152496) (the "Knaven Reference") does not disclose the inventions claimed in claims 18, 19, and 27.  In particular, while the Knaven Reference generally discloses that keyboards may be used with portable devices, the Knaven Reference, neither alone nor in combination with any other references, discloses the portable electronic devices having all of the elements claimed in claims 18, 19, and 27 of the '172 patent, where, for example, such keyboards are used in conjunction with character string replacement.

126.     For at least these reasons, I agree that the Longe, Rainisto, Kushler, and Knaven references do not anticipate or render obvious claims 18, 19, or 27 of the '172 patent.

## II.    Conclusion

127.     In sum, it is my opinion that claims 18, 19 and 27 of the '172 patent are infringed by the Galaxy Nexus; that the Apple iOS devices use the claimed features of the '172 patent; and that claims 18, 19 and 27 of the '172 patent are valid.

1  I declare under penalty of perjury that the foregoing is true and correct.

2

3      Dated:  8 Feb. 2012

4                                          Karan Singh

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DECLARATION OF DR. KARAN SINGH
Case No. 12-cv-                                53