ORIGINAL

1  JOSH A. KREVITT (CA SBN 208552)
   jkrevitt@gibsondunn.com
2  H. MARK LYON (CA SBN 162061)
   mlyon@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
4  Palo Alto, CA  94304-1211
   Telephone: (650) 849-5300
5  Facsimile: (650) 849-5333

   MICHAEL A. JACOBS (CA SBN 111664)
   mjacobs@mofo.com
   RICHARD S.J. HUNG (CA SBN 197425)
   rhung@mofo.com
   MORRISON & FOERSTER LLP
   425 Market Street
   San Francisco, California 94105-2482
   Telephone: (415) 268-7000
   Facsimile: (415) 268-7522

6

7

8  *Attorneys for Plaintiff Apple Inc*

Filed

F8  8 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13            CV 12 - 00630

14

15  APPLE INC., a California corporation,

          Plaintiff,
16
       v.
17
   SAMSUNG ELECTRONICS CO., LTD., a
18  Korean corporation; SAMSUNG
   ELECTRONICS AMERICA, INC., a New
19  York corporation; and SAMSUNG
   TELECOMMUNICATIONS AMERICA,
20  LLC, a Delaware limited liability company,

          Defendants.
21

CASE NO. 12-cv-

**EXPERT DECLARATION OF
DR. NATHANIEL POLISH CONCERNING
U.S. PATENT NO. 8,086,604**

**Hearing:**
Date:
Time:
Place:
Judge:

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND AND QUALIFICATIONS ............................................... 1

III.    MATERIALS REVIEWED ........................................................................... 3

IV.     SUMMARY OF OPINIONS ......................................................................... 3

V.      PERSON OF ORDINARY SKILL IN THE ART ...................................... 4

VI.     LEGAL STANDARDS ................................................................................. 4

        A.      Claim Construction ........................................................................... 4

        B.      Infringement ...................................................................................... 5

        C.      Invalidity ........................................................................................... 6

                1.      Presumption of Validity ...................................................... 6

                2.      Patentable Subject Matter .................................................... 6

                3.      Anticipation .......................................................................... 7

                4.      Obviousness .......................................................................... 8

                5.      Conception And Reduction To Practice .............................. 9

                6.      Indefiniteness ..................................................................... 10

VII.    THE '604 PATENT ..................................................................................... 11

        A.      DESCRIPTION AND BACKGROUND OF THE '604 PATENT ......................... 11

        B.      ASSERTED CLAIMS OF THE '604 PATENT .......................................... 14

        C.      CONSTRUCTION OF '604 PATENT TERMS ........................................... 14

        D.      INFRINGEMENT ........................................................................... 15

                1.      Claim 6 .............................................................................. 15

                2.      Claim 19 ............................................................................ 25

        E.      USE BY APPLE OF THE '604 PATENTED TECHNOLOGY ............................... 27

        F.      VALIDITY ..................................................................................... 28

## I.   INTRODUCTION

1.      I have been asked by counsel for Apple, Inc. ("Apple")  to provide an opinion as to whether certain Samsung products, known as the Galaxy Nexus, infringe United States Patent No. 8,086,604 ("the '604 patent"), which is assigned to Apple, Inc. ("Apple"). My opinions in this declaration are limited to claims 6 and 19.  I have also been asked to provide an opinion as to whether Apple iOS devices incorporate features claimed in the '604 patent.  My opinions are set forth below in this report.

2.      If I am called as an expert witness, I expect to testify regarding my background, qualifications and experience relevant to the issues in this action, the technical subject matter of the '604 patent, the accused Samsung products, and the Apple products that practice the claimed invention.

## II.   BACKGROUND AND QUALIFICATIONS

3.      I expect to testify regarding my background, qualifications, and experience relevant to the issues in this litigation. I have a Ph.D. in Computer Science from Columbia University. I hold the following four degrees from Columbia, spanning the years 1980 to 1993:

- Ph.D. in Computer Science, May 1993, Thesis: *Mixed Distance Measures for the Optimization of Concatenative Vocabularies in Speech Synthesis*;
- M.Phil. in Computer Science, December 1989;
- M.S. in Computer Science, December 1987;
- B.A. in Physics, Columbia College, May 1984.

4.      For over twenty-five years, I have run a computer technology development firm that I co-founded, called Daedalus Technology Group. My primary business activity is the development of computer-related products. This activity involves understanding the business objectives of customers,

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                    1

Gibson, Dunn &
Crutcher LLP

designing products to suit their needs, and supervising the building, testing, and deployment of these products. I develop hardware and software as well as supervise others who do so.

5.      Also, from time to time I found other companies in order to pursue particular product opportunities. I develop and ultimately sell these companies. Most of my business activity, however, is as a consulting product developer. From time to time I have also served as an expert witness on computer and software related cases. I am a named inventor on seven United States patents, and am a member of several professional societies, including the IEEE and ACM.

6.      I have extensive experience in several areas relevant to this case. From the mid-1980s to the mid-1990s I and my company were engaged in a number of research and development projects related to realtime processing, DSPs, signal processing, speech and audio coding and video serving. I used several early TI DSP chips as part of my dissertation research in the late 1980s. I have developed a number of systems having a variety of realtime aspects and requirements. These included signal processing systems as well as media serving systems.

7.      My Ph.D. work was in the area of Artificial Intelligence and computer speech. Use of heuristics and multiple agents in common in Artificial Intelligence and these are concepts that are well known to me from my work. Further, in the late 1990s I started a company called Soliloquy that was in the business of creating speech interfaces to databases. The systems that we built took speech recognition system output and generated database queries from them. This resulted in a patent (6,430,531). In a similar time frame I worked on a system to perform heuristic or fuzzy queries to a directory database. This work resulted in a patent application that was ultimately abandoned by my client (US20020181466A1).

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                    2

Gibson, Dunn &
Crutcher LLP

8.       These are similar technologies to those discussed in the patents at issue in this case. As part of my work on these projects, I was involved in all aspects of designing and developing these systems. I was and am very familiar with the technology.

9.       Attached to this report as Exhibit 1 is a copy of my curriculum vitae, which includes a list of the matters in which I have served as an expert witness.

10.      I am being compensated for the time I have spent on this litigation at my customary rate of $525 per hour.  My compensation does not depend in any way upon the opinion I provide or the outcome of this litigation.

### III.     MATERIALS REVIEWED

11.      In forming the opinions set forth in this report, I considered and relied upon my education, background, experience, and prior presentations and publications.  I also reviewed and considered the '604 patent and its prosecution history, as well as the other documents or reference materials cited or listed in this report.  In addition, I have evaluated representative samples of the accused products.  Exhibit 2 includes a list of materials I have reviewed.  I reserve the right to rely upon any additional information or materials that may be provided to me or that are relied upon by any of Samsung's experts or witnesses, if called to testify or to give additional opinions regarding this matter.

12.      I understand that discovery in this case has not begun, and I reserve the right to supplement my opinions in this report should additional information become available to me.

### IV.     SUMMARY OF OPINIONS

13.      Based on information currently available to me, it is my opinion that:

a.       The Accused Samsung Products infringe claims 6 and 19 of the '604 patent;

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                    3

b.     The '604 patent is valid;

c.     The Apple iPhone 4S incorporates features claimed in the '604 patent.

## V.     PERSON OF ORDINARY SKILL IN THE ART

14.     A person of ordinary skill in the art relevant to the '604 patent is a person with at least a Bachelor's of Science degree in computer science or equivalent training and/or coursework and some academic or work experience in computer software.

## VI.     LEGAL STANDARDS

### A.     Claim Construction

15.     I have been informed and understand that the language of a patent claim must be interpreted in light of the patent's claims, specification, and prosecution history, as well as other evidence extrinsic to the patent.  More specifically, I understand that claim terms should be given their plain and ordinary meaning as understood by one of ordinary skill in the art as of the effective filing date of the patent application (i.e., the day the application that led to the patent was filed), unless the claims, specification, or prosecution history indicate that a special meaning was intended.  For the '604 patent I understand that date is January 5, 2000.

16.     I have been informed by counsel that, while claims must be interpreted in view of the specification, it is improper to import limitations from the specification into the claims.  Although the specification often describes specific or preferred embodiments of the invention, claims should not be limited to those embodiments.

17.     I have also been informed by counsel that the prosecution history should be considered during claim construction in conjunction with the claims and specification.  For the prosecution history to limit a claim, the applicant must make a clear and unambiguous disavowal of claim scope.

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                                    4

## B.    Infringement

18.    I understand that to determine whether there is infringement of a patent:  (1) the claims of the patent must be construed; and (2) the properly construed claims must then be compared with the accused products.

19.    I understand that the parties dispute the construction of several terms.  Where constructions have not been proposed, I have interpreted the claims as one of ordinary skill in the art would have at the time the relevant patent was filed.

20.    As the second step in the infringement analysis, I understand that the properly construed claim must be compared to the accused products.  I understand that an accused product may infringe a claim either literally or equivalently.  I understand from counsel that literal infringement exists when the accused product embodies each and every limitation of a given asserted claim.  To literally infringe a method claim, the product must perform every step of the claim.  If a product does not literally perform a step of the claim, it can still infringe under the doctrine of equivalents if the step it performs is insubstantially different from the claimed step.

21.    I understand that one test for determining equivalence is to determine whether the differences between the claimed limitation and the accused product are insubstantial.  I understand that another test for determining equivalence is to examine whether the step used by the accused product performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed step.

22.    I further understand that infringement of a method claim can be either direct or indirect. I understand that direct infringement occurs when a party makes, uses, sells, offers for sale, or imports an article covered by the claims of a patent.  I understand that an indirect infringement occurs either through inducement, where a party induces another to engage in acts that constitute

EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                      5

Gibson, Dunn &
Crutcher LLP

direct infringement, or through contributory infringement, where a party sells an article that is made for use in an infringement of the patent's claims or, put otherwise, is not a staple article of commerce that has substantial non-infringing uses.

## C.  Invalidity

### 1.  Presumption of Validity

23.     I have been informed that in deciding whether to issue a patent, the U.S. Patent and Trademark Office ("PTO") examines the patent specification, its claims, and relevant prior art references to determine whether the patent application and its claims meet the requirements for patentability. I understand that if the PTO then issues the patent, it has determined that the claims are valid. I understand that the law recognizes that the PTO possesses special expertise to conduct such determinations, and that, as a result, each claim of a patent issued by the PTO is presumed valid by law. This presumption of validity can only be overcome if the party seeking to invalidate a claim proves invalidity by clear and convincing evidence, which I understand to mean evidence that convinces the fact-finder that it is highly probable that the particular proposition is true.

### 2.  Patentable Subject Matter

24.     I understand that a claim must be directed to a new and useful process, machine, manufacture, or composition of matter and that a claim cannot merely claim a mathematical algorithm or an abstract idea. However, I understand that a claim drawn to new and useful subject matter does not become non-patentable simply because it uses a mathematical formula, computer program, or digital computer. I further understand that in analyzing the patentability of a claim, one must consider the invention as a whole, rather than dissecting the claims into old and new elements and then ignoring the presence of the old elements in the analysis.  I also understand that the burden

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                                6

Gibson, Dunn &
Crutcher LLP

to prove invalidity by clear and convincing evidence is even higher when the allegedly invalidating prior art was already considered by the PTO or is cumulative of the prior art that the PTO considered so any attempt to invalidate a claim using that type of information will not likely succeed.

### 3.   Anticipation

25.      I understand that a person cannot obtain a patent if someone else already has made an identical invention. I further understand that to prove anticipation, Respondents must prove with clear and convincing evidence that the claimed invention is not new.

26.      I understand that to anticipate a claim, each and every element in the claim must be present in a single item of prior art. In determining whether every one of the elements of the claimed invention is found in the prior art, I understand that one should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular prior art. I also understand that he prior art reference alleged to be anticipatory must also enable one of ordinary skill in the art to make the claimed invention without undue experimentation.

27.      I understand that anticipation must be found in a single reference, device, or process. In other words, anticipation does not allow an additional reference to supply a missing claim limitation. I further understand that the prior art reference must disclose all elements of the claim within the four corners of the document and must also disclose those elements arranged as in the claim.

28.      Moreover, I understand that any differences between prior art reference and a claimed invention invoke the question of obviousness, not anticipation. In other words, I understand it is not sufficient for a prior art reference to disclose part of a claimed invention or that it includes multiple, distinct teachings that one of ordinary skill in the art might somehow combine to achieve the claimed

Gibson, Dunn &
Crutcher LLP

invention. The prior art reference must disclose the claimed invention without any need for combining various disclosures not directly related to each other.

29.    I further understand that the burden of proving invalidity is especially difficult or particularly heavy when prior art reference was before the Examiner during prosecution. In other words, I understand there is an added burden of overcoming the deference due to the Patent Office.

### 4.    Obviousness

30.    I understand that a claimed invention is **invalid as "obvious" if** it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, I have been informed that obviousness may be shown by considering more than one item of prior art.

31.    further understand that the following factors must be evaluated to determine whether Respondents have established that the claimed inventions are obvious: (1) the scope and content of the prior art; (2) the difference or differences, if any, between each claim of the asserted patent and the prior art; (3) the level of ordinary skill in the art at the time the invention of the asserted patent was made; and (4) the existence of secondary considerations that indicate that the invention was obvious or not obvious.

32.    I also understand that Respondents must prove obviousness by clear and convincing evidence.

33.    I have been informed that one should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention and that one must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it. Moreover, I understand that a patent claim composed of several requirements is not

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                     8

Gibson, Dunn &
Crutcher LLP

proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. I understand that it is important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does. I understand that this is the case because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known. Therefore, I further understand that one may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention. I also understand that one must be careful not to determine obviousness using hindsight and that one evaluating the prior art should put oneself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made.

34.     I understand that secondary considerations that should be taken into account include the following: 1) commercial success of a product due to the merits of the claimed invention; 2) a long-felt, but unsolved, need for the solution provided by the claimed invention; 3) unsuccessful attempts by others to find the solution provided by the claimed invention; 4) copying of the claimed invention by others; 5) unexpected and superior results from the claimed invention; 6) acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention; and 7) disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention.

**5.     Conception And Reduction To Practice**

35.     I understand that Respondents can attempt to show that a patent claim was not new because the invention described was first made or invented by someone else. However, I further understand that if patent inventors first conceived of the claimed invention, even if they reduced it to

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                    9

Gibson, Dunn &
Crutcher LLP

practice second, the patent inventors are considered the first inventors if they worked with reasonable diligence to reduce the invention to **practice from a time just before the other party's conception.** Moreover, I understand that if the inventors conceived and reduced to practice before the other party's conception, but the other party's conception predates the filing of a patent by the inventors, the patent inventors maintain their right to obtain a patent if they worked with reasonable diligence to perfect their invention by making refinements and improvements that are reflected in the final patent application.

36.      In this context, I understand that conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is to be applied in practice. I further understand that reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. I also understand that reasonable diligence means that the inventor worked continuously on reducing the invention to practice but that interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of reasonable diligence.

### 6.   Indefiniteness

37.      I understand that the requirement that patent claims be definite means that patent claims must particularly point out and distinctly claim subject matter which the applicant regards as his invention. I further understand that a claim is sufficiently definite to satisfy this requirement if one skilled in the art would understand the bounds of the claim when read in light of the specification. I have also been informed that a claim is not indefinite unless it is not amenable to construction or is insolubly ambiguous. I further understand that a claim is not indefinite merely because it poses a difficult issue of claim construction.

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                              10

# VII.   THE '604 PATENT

## A.   DESCRIPTION AND BACKGROUND OF THE '604 PATENT

38.      The '604 patent, entitled "Universal Interface For Retrieval Of Information In A Computer System," was issued to Apple on December 27, 2011, was filed on December 1, 2004 and is a continuation of U.S. Patent No. 6,847,959 filed on January 5, 2000.   The '604 patent relates to computer interfaces that quickly and easily retrieve desired information in a computer system. More specifically, the '604 patent is directed "a universal interface which uses a plurality of heuristic algorithms to identify an item of information (e.g., document, application or Internet web page) in response to at least one information descriptor." ('604 patent 1:18-21).

39.      The invention disclosed in the '604 patent overcomes a problem in the prior art where various applications and systems each provided a separate search interface for finding desired information.  For example, certain computer operating systems such as the Macintosh Operating System and the Windows Operating System provided interfaces for searching for files, documents, or items stored locally on a computer.  ('604 patent 1:23-38).  Similarly, "with the advent of the Internet, various specialized find routines have been developed that can be loaded into a computer's memory and launched in order to facilitate user requests for particular information on servers located throughout the world. Additionally, web browser applications enable a user to access worldwide websites and interact with search engines provided by the website." ('604 patent, 1:53-59)

40.      As the '604 patent states, "[t]here has been no combination of desktop find routines that presents a single interface and Internet browsing routines to allow a computer user to find a needed or desired item of information from among all different types of information storage systems." ('604 patent, 2:9-13)

Gibson, Dunn &
Crutcher LLP

41.      The invention disclosed in the '604 patent, "provides convenient access to items of information that are related to various descriptors input by a user, by means of a unitary interface which is capable of accessing information in a variety of locations, through a number of different techniques. Using a plurality of heuristic algorithms to operate upon information descriptors input by the user, the present invention locates and displays candidate items of information for selection and/or retrieval. Thus, the advantages of a search engine can be exploited, while listing only relevant object candidate items of information." ('604 patent, 2:23-33).

42.      The embodiment disclosed in the '604 patent, "provides a universal interface that enables the user to readily retrieve an item of desired information located on any of the various storage media that are accessible to the user's computer system, with minimal effort. The desired information could be an application that is stored on the local storage media, a file stored on the LAN storage volume, or a web page available through the Internet router. Rather than require a separate search mechanism to locate each of these different types of information, the present invention facilitates the user's ability to easily retrieve the information by means of a single universal interface which is capable of accessing files on all of these various storage resources." ('604 patent, 3:55-67) (reference numbers removed).

43.      The interface for the user to provide input that describes the desired information can be text input or voice. ('604 patent, 4:4-6)

44.      In response to the input, Retrieval Manager 18, shown below in Figure 2 from the '604 patent, passes the input to various components or plug-in modules $22_1 - 22_n$, below.  The input to Retrieval Manager 18 can be text from a Dialog Box 15 or spoken words from the Speech Processor 16. ('604 patent, 4:4-4:12)

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                        12

Gibson, Dunn &
Crutcher LLP



**FIG. 2**

45.     Each plug-in module, "has an associated heuristic which it employs to locate information that corresponds to the user input. For instance, one module $22_1$ may search the names of files stored on the local storage media and the LAN storage volumes, to find those which match the user input. A second module $22_2$ may index and search the contents of files on the local and/or network storage volumes. A third module $22_3$ can maintain a list of the files, applications and web sites which were most recently accessed, and search this list for a match. Yet another module might employ a search engine to locate Internet web pages which match the user input.  Each plug-in module $22_1 - 22_n$ attempts to locate information in a relevant area of search, using its associated heuristic. The results obtained by the modules are sent back to the retrieval manager 18. The information retrieval manager may employ additional heuristics to determine which results are most relevant, and present one or more choices to the user on the display device." ('604 patent, 4:13-30)(reference numbers deleted)

## B.     ASSERTED CLAIMS OF THE '604 PATENT

46.     I understand that Apple is asserting at least **claims 6 and 19 of the '604 patent, which** recite:

> **Claim 6**. An apparatus for locating information in a network, comprising:
>
> an interface module configured to receive an inputted information descriptor from a user-input device;
>
> a plurality of heuristic modules configured to search for information that corresponds to the received information descriptor, wherein:
>
> each heuristic module corresponds to a respective area of search and employs a different, predetermined heuristic algorithm corresponding to said respective area,
>
> and the search areas include storage media accessible by the apparatus;
>
> and a display module configured to display one or more candidate items of information located by the plurality of heuristic modules on a display device.
>
> **Claim 19**. The apparatus of claim 6, wherein the interface module is configured to receive portions of the information descriptor as the portions are being inputted, and wherein the heuristic modules are configured to search for information that corresponds to the portions of the information descriptor as the portions are being received.

## C.     CONSTRUCTION OF '604 PATENT TERMS

47.     In forming my opinions, I have considered certain information about the Galaxy Nexus provided by Samsung on its website, I have used the Galaxy Nexus itself (including to search and the Internet and the items stored locally on the Galaxy Nexus and to install searchable apps), and **I have considered the '604 patent** itself, including the claims, the specification, **and the patent's** prosecution history, all in the context of the legal principles summarized above.

48.     **I understand that the '604 patent has not been** previously asserted in litigation, and that **the claims of the '604 patent have** not previously been construed by any court or other adjudicator.  I reserve the right to consider any claim construction orders in the future with respect to my opinions regarding infringement and validity.  At present, my opinions are based on the claims as I believe a person of ordinary skill in the art would have understood them.

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                          14

Gibson, Dunn &
Crutcher LLP

## D.   INFRINGEMENT

### 1.   Claim 6

49.      It is my opinion that the Samsung Galaxy Nexus **infringes claims of the '604 patent,** including at least claims 6 and 19.  My opinions are summarized in the infringement claim chart attached here as Exhibit 3.  It is my opinion that the Galaxy Nexus literally infringes each element of **Claim 6 of the '604 patent.  To the extent that any** element is found not to be literally infringed, it is my opinion that the Galaxy Nexus performs substantially the same function as required by each element, in substantially the same way, to achieve substantially the same result.

### a.   An apparatus for locating information in a network, comprising:

50.      The Samsung Galaxy Nexus is an apparatus for locating information in a network.

51.      For instance, the Samsung Galaxy Nexus includes a 1.2 GHz dual-core processor **CPU, 1GB of RAM, 32GB of on-board memory, a 4.65" HD (1280x720) Super AMOLED screen,** LTE and WiFi and Bluetooth radios providing the connectivity listed below and software comprising Version 4.0 of the Android operating system, along with various pre-installed applications and therefore is an apparatus for locating information in a network. (Ex. 4, Samsung Galaxy Nexus Android Smartphone Specs*, available at* http://www.samsung.com/us/mobile/cell-phones/SCH-I515MSAVZW-specs)

| CPU | |
|---|---|
| **Processor Speed, Type** | 1.2GHz Dual-Core Processor |

| Memory | |
|---|---|
| **Internal Memory** | 32GB |

| Network | |
|---|---|
| **Frequencies and Data Type** | CDMA/PCS/1xEVDO Rev. A: 800/1900 MHz,LTE: 700 MHz |
| **Data Speed** | LTE, EVDO Rev. A |

| Connectivity | |
|---|---|
| Features | Bluetooth®; Bluetooth® Profiles, A2DP, AVCTP, AVRCP, GAVDP, HFP, HSP, OPP, PAN, PBAP, SPP ; Wi-Fi® ; Wi-Fi® Hotspot, HTML Browser |



EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604

16

Gibson, Dunn &
Crutcher LLP

52.     The Samsung Galaxy Nexus contains the following chips used to access a network and therefore is an apparatus for locating information in a network:

The Broadcom BCM4330 Bluetooth/WiFi/FM Radio chip show below.



The Via Telecom CBP7.1 and FCI FC7780 CDMA baseband chips shown below.

 

The Samsung CMC221 and FCI FC78851 LTE baseband chips shown below.



EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                          17

Gibson, Dunn &
Crutcher LLP

53.      The Samsung Galaxy Nexus includes the Android Quick Search Box, which is a "powerful, system-wide search framework" that "allows users to quickly and easily find what they're looking for, both on their devices and on the web." (Ex. 5, Android Developer Site, "Quick Search Box," *available at* http://android-developers.blogspot.com/search/label/Quick%20Search%20Box (hereinafter "Developer QSB")).

54.      As shown above (the box at the top of the screen labeled "Google"), the Quick Search Box forms part of the default user interface available from the home screen on the Samsung Galaxy Nexus.  The figure below shows the screen when a user taps the Quick Search Bar on the home screen.



(Screenshot of Samsung Galaxy Nexus Showing Android Quick Search Box (text field at top).)

    **b.**    **an interface module configured to receive an inputted information descriptor from a user-input device; an information identifier;**

EXPERT DECLARATION OF DR. NATHANIEL POLISH CONCERNING U.S. PATENT NO. 8,086,604

18

Gibson, Dunn & Crutcher LLP

55.      The Samsung Galaxy Nexus comprises an interface module configured to receive an inputted information descriptor from a user-input device.

56.      **The Samsung Galaxy Nexus has a 4.65" HD (1280x720) Super AMOLED screen, as** noted above (Ex. 4).   The Super AMOLED screen, a user-input device, is a touchscreen which the user manipulates by touching displayed objects.   For instance, as shown in the figure below, the touchscreen allows the user to input an information descriptor using an onscreen keyboard.

57.      The Android Quick Search Box on the Samsung Galaxy Nexus is configured to receive an inputted information descriptor from a user-input device in the text field, an interface module, shown below, where the information descriptor "app" has been input:



(Screenshot of Samsung Galaxy Nexus Showing Android **Quick Search Box after input of "app" in** the text field using the onscreen keyboard.)

EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                        19

Gibson, Dunn &
Crutcher LLP

58.     Portions of the computer instructions to receive an information descriptor in the Samsung Galaxy Nexus may be found in the QsbApplication class and in the com.android.quicksearchbox package.[1]

c.     **a plurality of heuristic modules configured to search for information that corresponds to the received information descriptor, wherein:**

59.     The Samsung Galaxy Nexus comprises a plurality of heuristic modules configured to search for information that corresponds to the received information descriptor.

60.     As shown below, the Preferences panel for the Quick Search Box on the Samsung Galaxy Nexus permits the user to activate searches using a plurality of heuristic modules, including heuristic modules configured to search for information that corresponds to the received information descriptor.  The Quick Search Box provides heuristic modules configured to search for information on Internet (e.g., Google Search suggestions) and local storage media (e.g., downloaded Amazon Kindle books and Contacts entries).

61.     The default heuristic modules supported by Android include (1) Google internet search suggestions and (2) searches of local device system data for applications, books, browser bookmarks, text messages, music, people (contacts), and videos. (Developer QSB)  These heuristic modules further include modules defined by developers of individual applications installed on the device: to use the Quick Search Box "developers **will need to make their app 'searchable' and** provide suggestions in response to user queries." (Ex. 6, Android Developer Site at "Android 1.6

---

[1]  The Galaxy Nexus appears to run the Android 4.0 platform.  The source code for the Android 4.0 operating system and the applications available with Android 4.0 and on the Galaxy Nexus can be found at http://source.android.com/source/downloading.html.  All references to source code are to files available from that site. The examples from the source code are indicative of the functionality of the Galaxy Nexus and are not meant to be exhaustive.

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                      20

Gibson, Dunn &
Crutcher LLP

Platform Highlights." *available at* http://developer.android.com/sdk/android-1.6-highlights.html

(hereinafter "Android 1.6 Platform Highlights")).

 

(Screenshots of Samsung Galaxy Nexus: (Left) showing a plurality of heuristic modules configured to search for information that corresponds to the received information descriptor and (Right) showing Android Quick Search Box after input of a received information descriptor.)

62.     By way of example, on the Samsung Galaxy Nexus, when a user types a search request into the Quick Search Box, Android computer instructions in the SearchActivity class calls the getSuggestions() method of an instance of the SuggestionsProviderImpl class. (*See* Android Source Code at SearchActivity.java, SuggestionsProviderImpl.java.) This, in turn, creates an object called "receiver" to hold the query results from the different applications that respond to the search request, and calls the startQueries() method on a QueryTask object to dispatch the query to a plurality of search heuristics to locate information responsive to the request. (*See* Android Source Code at SuggestionsProviderImpl.java). The QueryTask object creates multiple parallel requests, in separate

1   threads, to send the query simultaneously to a plurality of heuristics.  (*See* Android Source Code at

2   QueryTask.java.)

3
4
        **d.**    **each heuristic module corresponds to a respective area of search and employs a different, predetermined heuristic algorithm corresponding to said respective area,**

5   63.      The Samsung Galaxy Nexus comprises heuristic modules wherein each heuristic

6   module corresponds to a respective area of search and employs a different, predetermined heuristic

7   algorithm corresponding to said respective area.

8



64.      For example, the Quick Search Box provides heuristic modules to corresponding to a

respective area of search. The figure above shows a plurality of heuristic modules and their respective

area of search.  One heuristic module indicated by the red rectangle is the Google heuristic module

and corresponds to a search of Google Search suggestions on the Internet.  Another heuristic module

28   EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604              22

Gibson, Dunn &
Crutcher LLP

indicated by the green rectangle is the Browser heuristic module that corresponds to a search of

bookmarks and web history.  Another heuristic module indicated by the blue rectangle is the People

heuristic module that corresponds to a search of the names of contacts stored locally on the Galaxy

Nexus.

65.     Each heuristic module shown above employs a different, predetermined heuristic

algorithm corresponding to the respective area of search.  According to **the '604  patent specification:**

> "**Each plug-in module has an associated heuristic** which it employs to locate information that
> corresponds to the user input. For instance, one module $22_1$ may search the names of files
> stored on the local storage media 12 and the LAN storage volumes 8, to find those which
> match the user input. A second module $22_2$ may index and search the contents of files on the
> local and/or network storage volumes. A third module 223 can maintain a list of the files,
> applications and web sites which were most recently accessed, and search this list for a match.
> Yet another module might employ a search engine to locate Internet web pages which match
> **the user input.  ('604 patent, col. 4, ll. 13-23)**

> "**[T]he selected plug-in modules $22_1$ . . . $22_N$** receive the information descriptor and determine
> whether any information matches the criteria of respective locator heuristics associated with
> the plug-in modules $22_1$ . . . $22_N$. **The heuristic of each plug-in module is different.**" ('604
> Patent, col. 5 ll. 10-14)

66.     Each heuristic module identified above employs a different, predetermined heuristic

algorithm corresponding to the respective area of search.  The Google heuristic module employs a

search engine to locate Internet web pages which match the user input.  The Browser module

maintains a list of the files, applications and web sites which were most recently accessed, and

searches this list for a match.  The People module searches the contents of files on the local storage

volumes.

67.     Each module is configured and designed to search the specific area based on the input

information descriptor.  The Android Developers Site describes how a developer can design an

application that can be included in the Quick Search Box.  (See Ex. **7, Android Developers – Search**

Dialog *available at* http://developer.android.com/guide/topics/search/search-dialog.html (*hereinafter*

"**Android Search Dialog**")).  **An** application that implements search and that should be included in the

EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                              23

heuristic modules available from the Quick Search Box must declare this in an XML file called searchable.xml, which lists the name and features of the searchable app.  (*Id.*)  To make a searchable Activity:

> "A searchable activity is the Activity in your application that performs searches based on a query string and presents the search results.  When the user executes a search in the search dialog or widget, the system starts your searchable activity and delivers it the search query in an Intent with the ACTION_SEARCH action. Your searchable activity retrieves the query from the intent's QUERY extra, then searches your data and presents the results." (*Id.*)

68.     According to the Developers site, how the data is searched "is unique to your application." (*Id.*)

      e.     and the search areas include storage media accessible by the apparatus;

69.     The Samsung Galaxy Nexus comprises heuristic modules wherein the search areas include storage media accessible by the apparatus.

70.     As described above, the People heuristic module search area is a user's contacts stored on the storage media accessible by the Samsung Galaxy Nexus. The Quick Search Box, "suggests content on your device as you type, like apps, contacts, browser history, and music." (Developer QSB)

      f.     and the search areas include storage media accessible by the apparatus;

71.     The Samsung Galaxy Nexus comprises a display module configured to display one or more candidate items of information located by the plurality of heuristic modules on a display device.

72.     The Samsung Galaxy Nexus has a 4.65" HD (1280x720) Super AMOLED screen display device, as noted above. (Ex. 4) The Quick Search Box has a display module that is configured to display one or more candidate items of information located by the plurality of heuristic modules.

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                      24

Gibson, Dunn &
Crutcher LLP

As shown in the figure below, the Quick Search Box display module is displaying the candidate items located by plurality of heuristic modules in response to the information descriptor "app."



2.    **Claim 19**

73.    It is my opinion that the Galaxy Nexus literally infringes each element of Claim 19 of the '604 patent. To the extent that any element is found not to be literally infringed, it is my opinion that the Galaxy Nexus performs substantially the same function as required by each element, in substantially the same way, to achieve substantially the same result.

> a.    **The apparatus of claim 6, wherein the interface module is configured to receive portions of the information descriptor as the portions are being inputted, and wherein the heuristic modules are configured to search for information that corresponds to the portions of the information descriptor as the portions are being received.**

74.      The Samsung Galaxy Nexus comprises an interface module wherein the interface module is configured to receive portions of the information descriptor as the portions are being inputted, and wherein the heuristic modules are configured to search for information that corresponds to the portions of the information descriptor as the portions are being received.

75.      The Quick Search Box provides a text field where a user can input an information descriptor as discussed above with regards to claim 6.

76.      As portions of the information descriptor are being inputted to the Quick Search Box the heuristic modules, which are configured to search for information that corresponds to the portions of the information descriptor as the portions are being received, provides search results based on the portions of the information descriptor that are being inputted.  The figures below show the search results as portions of the information **descriptor "app" are being inputted.**



EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                          26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## E.    USE BY APPLE OF THE '604 PATENTED TECHNOLOGY

77.    It is my opinion that the Apple iPhone 4S incorporates the claimed features of the '604 patent. The features of the invention described in the '604 patent are used by the iPhone's Siri voice controlled personal assistant. (*See* Ex. 8, Siri *available at* http://www.apple.com/iphone/features/siri.html; Ex. 9, iPhone User Guide at 38-40, *available at* http://manuals.info.apple.com/en_US/iphone_user_guide.pdf).  Users of the iPhone 4S can interact with their phones by asking Siri any number of questions and receive a relevant answer.   For example, a user presses the Siri button on their phone which initiates the input of a spoken request, such as, "who is Dennis Ritchie?"



(Screenshot of iPhone Siri Interface.)

EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                   27

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

78.    Upon receipt of the search request Siri will utilize search modules which can search two different areas for the relevant **information, the user's locally** stored contacts and the Internet. Siri will then present the results to the user, either the contact or the result of the Internet search, as shown in the screenshots below.

 

## F.    VALIDITY

79.    In addition to my opinions that claims of the '604 patent including at least claims 6 and 19 are infringed by the Samsung Galaxy Nexus and claim 6 is practiced by the Apple iPhone, it is also my opinion that these claims are not likely to be rendered invalid.  In reaching this opinion, I have considered the claims, specification, and prosecution histories of the '604 patent and the '959 patent, the parent to the '604 patent including the prior art references identified by the USPTO as being the closest prior art, and I have relied on my knowledge of and expertise regarding computer

EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                              28

science and human computer interaction.   I have also relied on the legal standards regarding validity discussed above.

80.      I understand that a patent is presumed valid. The '604 patent was successfully prosecuted in front of the USPTO.  The USPTO issued the '604 patent despite a rigorous prosecution, multiple rejections by the USPTO in light of the prior art and an appeal to the U.S. Patent and Trademark Office's Board of Patent Appeals and Interferences. It is therefore my opinion that Apple is likely to succeed against any attempt by Samsung to challenge the validity of the '604 patent.

81.      For example, the '604 patent was allowed in light of U.S. Patent No. 7,020,670 (hereinafter "Andreoli").   Andreoli discusses the use of knowledge brokers to search and retrieve documents by using feature constraints. (Andreaoli at 2:11 -43) Andreoli discusses producing constraints by having a user specify attribute-value relations for documents (*Id.* at 2:40 – 61)  The brokers process search requests and can release sub-requests to other brokers such that a search is performed by a collaboration of brokers (*Id.* at 8:13-18)  Each broker can be specialized to perform search requests of appropriate repositories on a network (*Id.* at 17:4-20) In order to collaborate, search requests are formulated in a common language using a logical format.(*Id.* at 8:28-50) This is achieved by formulating all requests in a logical format. *(Id.)* Requests are expressed by a pair <x, P>, where x is a logical variable and P is a logical formula involving x, meaning "retrieve knowledge object x such that the property expressed by formula P holds." *(Id.)* The scope of brokers are defined using similar logic. *(Id.)* For example, a broker with scope <x, R> can only retrieve objects x that satisfy formula R. *(Id.)*  Furthermore, the scope of a search to be performed by a broker may be logically split into two scopes. *(Id.* at 9:26-10:59) Scope-splitting relies on negation to create two brokers having exclusive scopes (e.g.,. P^F and P^~F). *(Id.* at 9:26-50)  Based on the

two scopes, different portions of a repository can be searched.  (*See* Response to Office Action of April 23, 2008 at 7-8)  I have reviewed Andreoli and it is my opinion that it does not disclose the **invention of the '604 patent, nor would Apple's** invention have been obvious in light of this reference, either alone or in combination.

82.     In particular, Andreoli fails to disclose elements of claims 6 and 19 (which were claims 11 and 14 in the application) among others.  For example, Andreoli does not describe that **each search operation "each heuristic module corresponds to a respective area of search and employs a different, predetermined heuristic algorithm corresponding to said respective area."  As Apple** stated in the response to the **examiner's rejection, the** algorithms described in Andreoli go to formation of the search request and not how the local and remote search operations perform a search of the repositories on the network. (*See*  Response to Office Action of October 23, 2007 at 13) Further, I agree with Apple that the algorithms in Andreoli the constraint satisfaction algorithms used by brokers in Andreoli are based on the same search request and feature constraints and only logically differ from one another, not heuristically. Andreoli therefore does not **disclose, "a different, predetermined heuristic algorithm."** (*See* Response to Office Action of April 23, 2008 at 8)

83.     **Another example, the '604 patent was allowed** in light of Andreoli and U.S. Patent No. 6,636,849 (hereinafter "Tang").  **Tang discusses a** method for searching a large quantity of data in a metric space, which is partitioned into a multigrid search tree.  (*See Tang* at Abstract, 2:66-3:21) I have reviewed Andreoli and Tang it is my opinion **that the invention of the '604 patent invention** would have not have been obvious in light of these references, either alone or in combination.

84.     In particular, Andreoli fails to disclose claim elements as discussed above.  In addition, **Tang fails to disclose "heuristic modules."** Further, Tang fails to **disclose "each heuristic** module corresponds to a respective area of search and employs a different, predetermined heuristic

algorithm corresponding to said respective area." I agree with Apple that Tang applies heuristic algorithms to search the entire multigrid search tree, meaning Tang applies the same heuristic algorithms to search all of the grids in a tree and therefore does not teach that claim elements. (*See* Appeal Brief of February 5, 2010 at 6-8)

85.      My review of the prosecution history of the '959 patent also supports my opinion that Apple's invention was new and non-obvious.

86.      For example, the '959 patent was allowed in light of Blumenfeld, et al. "A uniform interface to networked library services," ACM (1992) at 608-613 (hereinafter "the Blumenfeld reference"). The Blumenfeld reference discusses a uniform interface to search library catalog information among a number of networked heterogeneous catalog systems. The Blumenfeld reference discusses the available catalogs that support three types of searches: Author, Title, and Subject. Other possible searches discussed by the Blumenfeld reference include Keyword, ISBN, and Boolean keyword searching. I have reviewed the Blumenfeld reference and it is my opinion that it does not disclose the invention of the '604 patent, nor would Apple's invention have been obvious in light of this reference, either alone or in combination.

87.      In particular, the Blumenfeld reference fails to disclose elements of claims 6 and 19 among others. By way of example, the Blumenfeld reference fails to disclose locating information in any location other than the Internet and therefore fails to disclose "the search areas include storage media accessible by the apparatus." Further, in the Blumenfeld reference search information is not provided to more than one type of search and therefore does not disclose "a plurality of heuristic modules."

88.      In my experience as a consultant in the computer and portable electronic device industry and to companies in litigation regarding such devices, I have seen, used, and read about a

EXPERT DECLARATION OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                        31

Gibson, Dunn &
Crutcher LLP

1  wide variety of portable electronic devices, including cellular telephones, portable digital assistants,

2  and other computing devices.  To the best of my recollection, however, I have not seen any

3  disclosures or actual devices that meet the elements of the claims of **the '604 patent, including claims**

4  **6 and 19**, and that also pre-date the January 5, 2000 **priority date of the '604** patent.   My experience

5  thus supports my opinion that the invention of the **'604 patent was novel, and not anticipated by any**

6  device or publication in the prior art.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                   32

Gibson, Dunn &
Crutcher LLP

1

2
I declare under penalty of perjury that the foregoing is true and correct.

3
Dated:   February 6, 2012

4
Nathaniel Polish

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn
& Crutcher LLP

EXPERT DECLARATION  OF DR. NATHANIEL
POLISH CONCERNING U.S. PATENT NO.
8,086,604                                              33