# EXHIBIT 8

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian M. Buroker
Direct: +1 202.955.8541
Fax: +1 202.530.4200
BBuroker@gibsondunn.com

Client: 03290-00026

April 6, 2012

VIA ELECTRONIC MAIL

Michael L. Fazio
Quinn Emanuel
865 S. Figueroa St., 10th Floor
Los Angeles CA 90017

Re:     Apple v. Samsung Elecs. Co. et al., No. 12-cv-0630

Dear Mr. Fazio:

I write to respond to your letter dated April 3, 2012 relating to Samsung's objections and responses to Apple's First Set of Preliminary Injunction Requests for Production.

Blanket Refusals to Produce

I devoted a substantial portion of my March 31, 2012 letter to explaining why Samsung's blanket refusals to produce are improper with respect to Apple's Requests for Production Number 1, 4, 7-16, 18, 20-34, 36-39, 41, 44-45, 47-55, 57, 59, 61-64, 67, 68, 70, 72, 74, 75, 77, 79-81, 84-89 and 91.  In your April 3, 2012 letter, you refuse to remedy any of these serious deficiencies.  It thus appears that the parties are at an impasse on this issue.

       Design, Development and Implementation

Samsung claims that it may refuse to produce any documents in response to Requests 4, 7-8, 18, 20-24 and 89 because these requests are not limited to the "Galaxy Nexus."  But evidence that Samsung copied or utilized the accused features in products other than the "Galaxy Nexus" is relevant to the nexus element of the Apple's Preliminary Injunction Motion because it demonstrates the importance of those features to both Samsung and to Apple, and that Samsung has systematically copied Apple's technology and products in an effort to usurp market share from Apple.  Additionally, if the accused features were first developed in connection with Samsung's earlier products, information relating to those development efforts would be pertinent to demonstrating Apple's likelihood of success.

For similar reasons, Samsung's position that discovery in these proceedings must be strictly confined to the accused features is misguided.  Information about the broader structures (*e.g.*, keyboards) used to *implement* an accused feature (*e.g.*, text correction) undoubtedly is

**GIBSON DUNN**

Michael L. Fazio
April 6, 2012
Page 2

relevant to Apple's infringement claims because it relates to how the accused functionality operates within the context of the accused device.

### Samsung's Analysis, Designs Around, Copying, or Inspection of Apple Products

Requests for Production Nos. 14-16 seek documents relating to Samsung's consideration of Apple products and patents in its design of the "Galaxy Nexus." These documents are directly relevant to Apple's Preliminary Injunction Motion. Among other things, they are relevant to the elements of irreparable harm and nexus, as well as to Apple's likelihood of success on the merits of the case with respect to infringement and validity. Indeed, Apple is aware that Samsung has produced similar documents generated by its Product Design Team in the *Apple Inc. v. Samsung Electronics Co., Ltd., et al.,* Case No. 5:11-cv-01846-LHK, relating to products other than the "Galaxy Nexus."

In view of the clear relevance of these materials, Samsung's objections are not well-taken, and they certainly are not "precisely tailored" as Samsung would have it. After all, Samsung has not committed to producing *any* documents responsive to Requests for Production Nos. 14-16.

### First Time Buyers

Your April 3, 2012 letter did not address Apple's requests for documents relating to first time smartphone buyers. *See* Apple's Requests No. 51 and 52. Apple fails to see how a request relating to the importance of sales of smartphones to first-time buyers is overly broad, particularly when Apple has devoted a section of its Preliminary Injunction Motion to the issue of how "a consumer's first purchase of a smartphone exerts substantial influence over subsequent purchases." Mot. at 8-10.

### Competition between Apple and Samsung

Samsung continues to refuse to produce any documents in response to Apple's Requests No. 44-45, 47-50 and 53-55 and instead rests on its boilerplate objections. The information at issue is highly relevant because it would shed light on the competition between Apple and Samsung, and perhaps demonstrate that Samsung's introduction of the "Galaxy Nexus" is simply the latest salvo in the two companies' long-standing efforts to capture sales from smartphone buyers. Moreover, the information would be relevant to explain the nature of the competitive marketplace, and the various factors that drive consumer demand in the marketplace.

For example, Apple's Request No. 50 seeks "[d]ocuments relating to the actual or potential competitive impact on any Apple product resulting from the inclusion into any Samsung

**GIBSON DUNN**

Michael L. Fazio
April 6, 2012
Page 3

product of any feature or functionality used by the Samsung "Galaxy Nexus" that Apple has alleged infringes the Preliminary Injunction Patents, including Slide to Unlock, Text Correction, Unified Search, and Special Text Detection." If the only documents Samsung has on this subject relates to the features claimed in the Preliminary Injunction Patents, that would certainly bolster Apple's argument that there is a nexus between Samsung's infringement and the irreparable harm to Apple. If, on the other hand, Samsung contends that other unpatented features drive the sales of the Samsung "Galaxy Nexus," Apple is entitled to examine information relating to those unpatented features so that it may rebut those arguments as necessary.

### Smartphone Market

Samsung continues to refuse to produce "[d]ocuments sufficient to identify the market for Samsung products that use or incorporate the Android platform" and "[d]ocuments relating to any customer surveys, studies, analyses or investigations regarding Samsung smartphones or Samsung products that use or incorporate the Android platform" among many other categories of documents clearly relevant to irreparable harm and balancing of hardships. *See* Samsung's Responses to Apple's Requests No. 57, 59, 61-64, 67, 68, 70, 72, 74, 75, 77 and 79-81. As I noted in my prior letter, Samsung's refusal is inappropriate in its own light. After all, the information would be relevant to issues such as Apple's irreparable harm theory. But Samsung's position is particularly disingenuous in view of the fact that Samsung requested similar materials from Apple. There thus can be no dispute as to the relevancy of such materials.

### Source Code

Samsung has not refuted the relevance of the materials Apple requested in Requests No. 9-13. Instead Samsung claims to not have any source code relating to the "Galaxy Nexus" in its possession. However, in those requests, Apple asked for "source code and *any other instructions* utilized by or implemented on the Samsung Galaxy Nexus" related to the allegedly infringing features and functions at issue in the preliminary injunction motion (such as keyboards, search functionality, typing, entry of text and data detection—all clearly linked to functions accused of infringing Apple's patents and limited to a single Samsung product). *See* Requests No. 9-13. Samsung's continuing refusal to produce any source code or *other instructions in Samsung's* possession relating to the features at issue on the "Galaxy Nexus" is thus improper.

### Knowledge Regarding the Preliminary Injunction Patents

Samsung's argues that its awareness of the Preliminary Injunction Patents is irrelevant. This is incorrect. For example, Samsung's knowledge of Apple's innovative ideas is relevant to

**GIBSON DUNN**

Michael L. Fazio
April 6, 2012
Page 4

whether Samsung copied these ideas. If Samsung began "development" of certain features shortly after reviewing the Preliminary Injunction Patents, that fact would at least give rise to an inference that the development was triggered by a review of Apple's materials. Similarly, Samsung's decision to copy the technology disclosed in the Preliminary Injunction Patents would go towards Apple's likelihood of success in this case because it would undermine any alleged distinctions between the accused product and the claimed features.

<u>Partial Objections</u>

Samsung has also violated its discovery obligations even as to those categories for which production has been promised. Given the compressed schedule adopted for preliminary injunction discovery, Samsung's continued delay in producing documents relevant to the preliminary injunction motion and continued refusal to explain how it is limiting its production is troubling.

<u>Request for Production No. 35</u>

Samsung's proposal that it will produce documents explicitly referred to "in responding to Apple's Preliminary Injunction Interrogatories" is narrower than the scope of the request, and not acceptable. Specifically, Request for Production No. 35 calls for documents "considered or relied on," regardless of whether they are explicitly referenced in a response.

<u>Request for Production No. 40</u>

Similarly, Samsung's suggestion that it will only produce documents relating to the "impact a preliminary injunction in this case would have on Defendants" *upon which Samsung will rely* is not agreeable to Apple. Apple is entitled to all materials relevant to balance of hardships in this case, and Samsung's self-serving limitation of the request would effectively allow Samsung to selectively produce only those materials helpful to Samsung's argument, and to thereby withhold other materials that would be helpful to Apple's position.

**GIBSON DUNN**

GIBSON DUNN

Michael L. Fazio
April 6, 2012
Page 5

In view of Samsung's refusal to supplement its production, and in view of the pace of Samsung's production, it appears that the parties are at an impasse. Given Samsung's request to hold a lead trial counsel meet and confer in Los Angeles, please let us know a time during either the afternoon of April 9, 2012, or the morning of April 10, 2012, when Samsung's lead trial counsel is available in Los Angeles to meet and confer on these issues.

Sincerely,

*Brian M. Buroker*

Brian M. Buroker

BMB/jg

101267663.6