# EXHIBIT 1

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105–2482
Telephone: (415) 268–7000
Facsimile: (415) 268–7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526–6000
Facsimile: (617) 526–5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858–6000
Facsimile: (650) 858–6100

Attorneys for Plaintiff and
Counterclaim–Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11–cv–01846–LHK (PSG)<br><br>**APPLE'S REPLY BRIEF IN SUPPORT OF RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JANUARY 27, 2012 DAMAGES DISCOVERY ORDER**<br><br>Date: April 3, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

PUBLIC REDACTED VERSION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION ................................................................................................................................ 1
ARGUMENT ........................................................................................................................................ 2
I.  SAMSUNG'S NARROW INTERPRETATION OF THE ORDER CONTRADICTS ITS BROAD ASSURANCES TO THE COURT ................................ 2
II. SAMSUNG'S FEBRUARY 3RD PRODUCTION VIOLATED THE COURT'S ORDER ......................................................................................................... 3
    A.  Samsung's Compliance Should Be Measured By Its Productions As Of The February 3 Deadline ............................................................................. 3
    B.  Samsung's ▆▆▆▆▆▆▆▆▆▆▆▆ Was Unreliable for Any Purpose ........................................................................................................... 3
III. EVEN IF SAMSUNG'S UNTIMELY PRODUCTIONS WERE RELEVANT, THEY WOULD NOT CURE SAMSUNG'S VIOLATION OF THE ORDER ................................................................................................ 5
    A.  The "Revised" Spreadsheets Exacerbate, Rather Than Mitigate The Problems ........................................................................................................ 5
    B.  The Remaining Documents Do Not Cure Samsung's Violations ................ 6
IV. SAMSUNG HAS FAILED TO PRODUCE INFORMATION TO CALCULATE SAMSUNG'S CONSOLIDATED PROFITS FROM SALES OF ANY ACCUSED PRODUCTS ............................................................ 7
V.  SAMSUNG IMPROPERLY REFUSES TO PROVIDE FINANCIAL INFORMATION ABOUT THREE INFRINGING PRODUCTS ............................ 8
VI. SAMSUNG VIOLATED THE ORDER BY WITHHOLDING SPECIFIC FINANCIAL DOCUMENTS PRODUCED IN THE ORDINARY COURSE OF BUSINESS ............................................................................................. 11
VII. SAMSUNG'S VIOLATIONS WARRANT THE SANCTIONS THAT APPLE SEEKS ................................................................................................. 13
CONCLUSION ................................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*,
 No. 07-cv-0894-DMS (POR),
 2010 WL 743792 (S.D. Cal. Mar. 2, 2010) .......................................................................... 14

*Davis v. Nevarez*,
 No. 3:07-CV-00427-EJL-LMB,
 2009 WL 1468705 (D. Idaho May 22, 2009) ..................................................................... 14

*Fair Housing of Marin v. Combs*,
 285 F.3d 899 (9th Cir. 2002) ......................................................................................... 13, 14

*Lewis v. Ryan*,
 261 F.R.D. 513 (S.D. Cal. 2009) ......................................................................................... 14

*PeerMusic III Ltd. v. LiveUniverse, Inc.*,
 No. CV 09-6160-GW,
 2011 WL 672585 (C.D. Cal. Jan. 26, 2011) ....................................................................... 14

*Peterson v. AT&T Umbrella Benefit Plan No. 1*,
 No. C-10-03097 JCS,
 2011 U.S. Dist. LEXIS 135285 (N.D. Cal. Nov. 23, 2011) ................................................ 14

*U.S. v. Kahaluu Const. Co.*,
 857 F.2d 600 (9th Cir. 1988) ............................................................................................... 13

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
 259 F.3d 1101 (9th Cir. 2001) ............................................................................................. 14

**OTHER AUTHORITIES**

Fed. R. Civ. P
 Rule 30(b)(6) ....................................................................................................................... 14
 Rule 37(b)(2) ......................................................................................................................... 9
 Rule 37(c) ............................................................................................................................ 14

## INTRODUCTION

Since Apple filed its Motion, Samsung has compounded its serious violations of the Court's Order. Just as Apple predicted, Samsung produced additional documents and revised versions of its Spreadsheet long after the Court-ordered deadline—each time within 24 hours of a 30(b)(6) deposition related to damages, and once on the last day of fact discovery. ▓▓▓

▓▓▓ Further, Samsung's witnesses confirmed in sworn testimony that ▓▓▓

While Samsung now assures the Court that its subsequent productions were designed to provide Apple with additional information, its witnesses tell a radically different story. Samsung's sworn 30(b)(6) testimony is that ▓▓▓ These last minute modifications announced on the eve of Samsung's 30(b)(6) damages depositions represented exactly the kind of unfair surprise that Apple predicted and sought to avoid by its motion to compel that led to the Order.

Samsung has essentially helped itself to an extrajudicial cap on Apple's damages award, reducing its exposure by potentially hundreds of millions of dollars. Samsung's willful disregard of the Order has severely prejudiced Apple. The Court should award the mitigating sanctions Apple has requested.

APPLE'S REPLY BRIEF ISO RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER — CASE NO. 11-CV-01846-LHK (PSG)
pa-1517236

1

**ARGUMENT**

**I. SAMSUNG'S NARROW INTERPRETATION OF THE ORDER CONTRADICTS ITS BROAD ASSURANCES TO THE COURT**

Samsung does not dispute that it repeatedly assured the Court (and Apple) that it would provide a robust production of financial documents on February 3rd that would render Apple's motion to compel "moot." (Mot. at 8-9.) Yet Samsung now interprets the Court's Order as if those assurances were meaningless. According to Samsung, the Order could not possibly have meant to hold Samsung to its word, because it did not "refer at all to any comments about any topic made by either party or the Court" at the hearing. (Opp. at 6.) Likewise, Samsung claims the Order's reference to Samsung's agreement to "provide responsive documents to all of the categories listed by Apple" (Order at 15), could not possibly have meant all the categories listed in Apple's proposed order, because the Order did not "quote from or cite to the two pages worth of categories of documents or information specified in Apple's proposed order" (Opp. at 6).[1]

Samsung contends that the Order required production of only "six categories of documents and information" that Samsung listed in a letter referenced in footnote 34 of the Order. (*Id.*) That argument not only contradicts Samsung's assurances to the Court, it also ignores the Order's reference to Samsung's opposition to Apple's motion to compel, in which Samsung committed to produce "nearly every category of financial documents that Apple requested," excepting only duplicates and non-existent documents. (Dkt. No. 642-3 at 4.) That same document stated that "Samsung already has agreed to produce the financial information *Apple has requested*, by February 3, 2012." (*Id.* at 14 (emphasis added); *see also id.* ("Samsung Already Has Produced Or Agreed To Produce All Of The Financial Information That Apple Requests").)

In short, in contrast to Samsung's vociferous argument that Apple's motion was moot and that Apple would get what it was seeking, Samsung argues that the Court's Order sought to *protect Samsung* from having to provide the documents Apple requested. The Court should not

---

[1] Contrary to Samsung's arguments, Apple does not contend that the Court granted its proposed order on the motion to compel. Instead, the proposed order indicates the breadth of Apple's requests that Samsung claimed were moot, as well as the categories of documents and information that Apple was seeking and to which the Order referred.

APPLE'S REPLY BRIEF ISO RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER — CASE NO. 11-CV-01846-LHK (PSG)
pa-1517236

2

1  reward Samsung's bait and switch tactics. The Court should enforce the Order by reference to the

2  broad promises that Samsung made in arguing that Apple's motion was "moot."

3  **II.    SAMSUNG'S FEBRUARY 3RD PRODUCTION VIOLATED THE COURT'S ORDER**

4

5      **A.    Samsung's Compliance Should Be Measured By Its Productions As Of The February 3 Deadline**

6      Apple's Motion predicted exactly what has come to pass: "Apple will be further

7  prejudiced if Samsung produces new, corrected, or additional information at some future

8  point. . . . Apple will have to address a constantly moving target if Samsung again doles out only

9  the information that it wants to give, on a schedule of its own choosing." (Mot. at 16.) Samsung

10 did precisely that—producing new financial spreadsheets on February 28th (on the eve of the

11 deposition of STA's controller Tim Sheppard) and then yet again on March 8 (the last day of

12 discovery, and while Apple's attorney was in flight to Korea to take two 30(b)(6) depositions on

13 damages issues). Further, on each date, Samsung produced ████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████ (although Samsung still fails to provide information on all accused products, as

16 shown in Section V, *infra*). (Dkt. No. 801-22 ¶¶ 8, 11, 30 & Exs. E-F.)

17     Samsung's subsequent productions did not cure, and in fact exacerbated, the problems

18 with the February 3rd Spreadsheet, as shown in Section III.A, below. But those productions are

19 irrelevant to whether Samsung violated the Order, which required Samsung to complete its

20 responsive production by February 3. Samsung understood its obligation and earlier insisted to

21 Apple in writing that the ████████████████ was accurate and gave Apple everything it

22 needed. (Dkt. No. 759-4 ¶ 23, Ex. 1.) Even now, Samsung erroneously claims that "Apple has

23 had since early February virtually all the financial information necessary to calculate financial

24 damages." (Opp. at 23.) Samsung's compliance should be measured by its grossly inadequate

25 production at the Court-ordered deadline.

26     **B.    Samsung's ████████████████ Was Unreliable for Any Purpose**

27     Samsung concedes many of the errors, omissions, and inconsistencies in the ██████

28 ████████ that Apple identified. (*See* Mot. at 12-13; Dkt. No. 759-5 ¶¶ 5-20.) For example,

1  Samsung admits that the Spreadsheet: ████████████████

2  ████████████████████████████████████████████

3  ████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ████████████████████████████████████████████

6        We now know the reasons for these problems: Despite the fact that it was produced in

7  response to the Court's Order, the February 3rd Spreadsheet (and each new version that was

8  created) was prepared ████████████████████████████

9  Samsung admits that the ████████████████████████████████

10  ████████████████████████████████ (Olson Reply Decl. Ex. I

11  at 39:4-40:3; *see id*. Ex. D at 18:10-19:5.) Yet it ████████████████████

12  ████████████████████████████████████████████

13  ████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████████████████████████████████

17  ████████████████████████████████████████████

18  ██████████ Not surprisingly, Mr. Sim testified at his 30(b)(6) deposition that ██

19  ████████████████████████████████████

20        Samsung's attempt to rehabilitate the deficient Spreadsheet through Mr. Sheppard's

21  declaration fails. Mr. Sheppard previously ████████████████████

22  ████████████████████████████████████████████

23  ██████████████ (Olson Reply Decl. Ex. I at 15:22-24, 39:23-40:6, 88:10-17; *see id*.

---

[2] Samsung's position that it need not review ████████████████ because it is a ████████████████ misses the mark. (Olson Reply Decl. Ex. I at 144:12-18; *see also* Dkt. No. 801-22 ¶ 34.) As shown in Section III.A *infra*, Samsung repeatedly ████████████████████████████████████ Even if this had not occurred, Samsung's defense would be illogical. ████████

APPLE'S REPLY BRIEF ISO RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER — CASE NO. 11-CV-01846-LHK (PSG)
pa-1517236

4

1 Exs. E, F (notifying Apple that Mr. Sheppard would not testify about ▓▓▓ ).) Having
2 no personal knowledge regarding the SEC information in the Spreadsheet, Mr. Sheppard's
3 declaration relies ▓▓▓ (Dkt. No. 801-22 ¶ 5.) But
4 according to Samsung's sworn 30(b)(6) testimony, ▓▓▓
5 ▓▓▓
6 ▓▓▓ (Olson Reply Decl. Ex. D at 15:7-11, 26:12-22.)

    The facts stack up conclusively against Samsung. The ▓▓▓ is the
only meaningful document provided in a timely manner in response to the Order.[3] ▓▓▓
▓▓▓
▓▓▓ Samsung violated the Court Order. The only
issue is what should be done about it.

## III. EVEN IF SAMSUNG'S UNTIMELY PRODUCTIONS WERE RELEVANT, THEY WOULD NOT CURE SAMSUNG'S VIOLATION OF THE ORDER

### A. The "Revised" Spreadsheets Exacerbate, Rather Than Mitigate The Problems

Samsung contends that it ▓▓▓
▓▓▓ (Opp. at 8.) Samsung's sworn 30(b)(6)
witness about the Spreadsheets, Mr. Sim, told a very different story.

    Mr. Sim testified that ▓▓▓
▓▓▓
▓▓▓ (Olson Reply Decl. Ex. D at 92:10-
93:13.) According to Mr. Sim, ▓▓▓
▓▓▓
▓▓▓
▓▓▓ (*Id.* at 92:10-94:4.) To make matters worse, ▓▓▓
▓▓▓
▓▓▓

---

[3] Samsung also produced on February 3 ▓▓▓
▓▓▓ (Mot. at 6 n.1.)

APPLE'S REPLY BRIEF ISO RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES
DISCOVERY ORDER — CASE NO. 11-CV-01846-LHK (PSG)
pa-1517236

5

1  ▮
2  ▮
3  ▮
4  ▮
5  Mr. Sim testified ▮
6  ▮
7  ▮
8  ▮
9  ▮
10  ▮ (*Id.* at 35:13-36:25, 92:10-93:13, 99:15-
11  100:7; *see* Roberts Reply Decl. ¶ 25.)[4]  There is no basis in accounting that would justify
12  ▮ (*See* Roberts Reply Decl.
13  ¶ 25.)  Mr. Sim did not offer ▮
14  ▮ (Olson Reply Decl. Ex. D at 183:15-185:2.)
15  Given that Apple is entitled to recover Samsung's consolidated profits, the ▮
16  ▮ represents a transparent attempt by Samsung to ▮ That
17  ▮ was therefore anything but a good-faith attempt by Samsung to "cure" its prior
18  violations of the Order.  Moreover, this manipulation belies Samsung's assertion that ▮
19  ▮
20  ▮  (*See* Olson Reply Decl. Ex. I at 144:12-18); Dkt. No. 801-22 ¶ 34.)

21  **B.  The Remaining Documents Do Not Cure Samsung's Violations**

22  Samsung points to the scattershot of other documents produced before and after the
23  Court's Order but these documents are a poor shadow of any reasonable effort to comply.
24  Samsung's production of over 3,500 pages of financial information on March 8th—the last day of
25  fact discovery—reflects a studied disregard for its obligations.  (*See* Olson Reply Decl. ¶ 4,

---

[4] Samsung made no mention of this manipulation ▮
▮ (Olson Reply Decl. Exs. G, H.)

APPLE'S REPLY BRIEF ISO RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES
DISCOVERY ORDER — CASE NO. 11-cv-01846-LHK (PSG)     6
pa-1517236

Exs. G, H.) Samsung admits that all but one of these documents were subject to the Order. (*See* Dkt. No. 801-9 ¶¶ 14-15.) Moreover, Apple had repeatedly requested these documents by name even before the Court-ordered deadline. (Dkt. No. 749-4 at Exs. 10, 11, 13, 15, 16.)

Further, nearly all the documents address ████████████████ (*See* Olson Reply Decl. ¶¶ 2-5.) Even if Samsung had produced complete information about STA (which it did not), that information would reflect only a small fraction of Samsung's total profits from the accused products. (*See id*. ¶¶ 2-7; Roberts Reply Decl. ¶¶ 33-34; *see also* Mot. at 7.) STA is just the sales arm of Samsung in the U.S. (*See* Dkt. No. 801-22 ¶ 17.) But there is no question that ████████████████████████████████████████████████████████████████ (Roberts Reply Decl. ¶ 22.) ████████████████████████████████████████████████████████ (*Id*. ¶¶ 17, 33; Olson Reply Decl. Ex. I at 123:5-18, 125:12-126:22.) Apple is entitled to Samsung's "total profits" from infringing sales of the accused products, and as Samsung admits, ████████████████████ ████████ (Dkt. No. 801-22 ¶¶ 17-18; Roberts Reply Decl. ¶¶ 11, 32-35; *see also* Olson Reply Decl. ¶ 5.)

Finally, while Samsung may have produced many pages of documents, it has not produced a comprehensive set of SEC documents for all periods during which infringement was occurring. (*See* Olson Reply Decl. ¶¶ 2-7.) Cost of Goods Sold, Operating Expenses, and Operating Profits cannot be estimated based on individual *ad hoc* productions.

### IV. SAMSUNG HAS FAILED TO PRODUCE INFORMATION TO CALCULATE SAMSUNG'S CONSOLIDATED PROFITS FROM SALES OF ANY ACCUSED PRODUCTS

Samsung's witnesses confirmed that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

1
2
3
4
5
6
7
8 ██████████████████████████ (*Id.* ¶¶ 5-14.)

9   Samsung's production of other documents also is insufficient. As discussed in
10  Section III.B, *supra*, Samsung has not provided comprehensive documents demonstrating SEC's
11  financial information, which Apple needs to ascertain the consolidated profits for any accused
12  products. (*See* Olson Reply Decl. ¶¶ 2-7.)

13  Of course, Samsung itself can do this (and does it each quarter to prepare its public
14  consolidated financial statements) ████████████████████████
15  ██████████████████████ Yet ███████████████
16  ████ Samsung chose not to produce that information in response to the Order ████
17  ██████████████████████████████████████ That
18  is absurd. One of the driving reasons behind Apple's January motion to compel was to provide
19  Apple with the means to calculate Samsung's consolidated profits, which are absolutely essential
20  to Apple's damages case. (*See* Dkt. No. 613-1 at 22; Dkt. No. 759-4 Ex. 8 at 154:17-25.)

21  **V.    SAMSUNG IMPROPERLY REFUSES TO PROVIDE FINANCIAL
22          INFORMATION ABOUT THREE INFRINGING PRODUCTS**

23  Samsung admits that it has withheld relevant financial information for two Galaxy S II
24  models (the Galaxy S II Epic 4G Touch and Galaxy S II Skyrocket) and the Galaxy Tab 10.1
25  LTE. (Opp. at 15-16.) Samsung's unilateral decision to withhold that information is contrary to
26  the scope of Apple's discovery requests, the plain language of Apple's Amended Complaint and
27  Infringement Contentions, and Samsung's own website description of its Galaxy S II phones and
28  Galaxy Tab 10.1 tablet, and is a further violation of the Court's Order.

APPLE'S REPLY BRIEF ISO RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES
DISCOVERY ORDER — CASE NO. 11-CV-01846-LHK (PSG)
pa-1517236

8

Apple's damages discovery requests encompassed all iterations of the Galaxy S II phones and Galaxy Tab 10.1 tablets. For example, Apple requested financial information for "each of the Products at Issue on a product-by-product basis," and defined "Products at Issue" to include "the Galaxy S II (aka Galaxy S 2) phones," the "Galaxy Tab 10.1" tablet, and "any similar products, and any products that Apple accuses of infringing its intellectual property in this litigation." (Decl. of Grant Kim in Supp. of Apple's Reply ("Kim Decl.") Ex. 1 at 1-2, 9-12; *see also, e.g.*, Dkt. No. 613-1 at lii-cvii (reciting Apple's Requests for Production Nos. 218, 252, 254, 256-57, 260-67, 293, and 461-62).) Apple's definition of "Products at Issue" was consistent with its Amended Complaint of June 16, 2011, which alleged that the Galaxy S II and the Galaxy Tab 10.1 infringe Apple's intellectual property. (Dkt. No. 75 ¶¶ 83, 87, 92, 98, 102-03.)

Samsung did not object to Apple's document requests on the ground that it did not understand the meaning of "Galaxy S II" or "Galaxy Tab 10.1." Moreover, Samsung has produced *thousands of documents* that refer to the specific models that Samsung now contends are *outside* the scope of Apple's document requests, but no financial information. (Kim Decl. ¶¶ 14-17, Exs. 13-15.)

Samsung admits that Apple's August 26, 2011 Addendum to its Infringement Contentions identified the "Galaxy S II" phone as an "Accused Instrumentality," and that "Galaxy S II" includes both the "Galaxy S II (T-Mobile edition)" and the "Galaxy S II (AT&T edition)." (Opp. at 15-16.) It nevertheless contends that Apple's Infringement Contentions did not include Sprint's "Galaxy S II Epic 4G Touch" and AT&T's "Galaxy S II Skyrocket," because these are not Galaxy S II models, the plain language of their names notwithstanding. (*Id.* ("Galaxy S II . . . accounts for two of the five devices—the Galaxy S II (T-Mobile edition) and the Galaxy S II (AT&T edition)").) Samsung's argument is refuted by its own website, which uses "Galaxy S II" to refer to *all* four models equally. Samsung's "Explore the Galaxy S II" webpage proclaims:

> The Samsung Galaxy S™ II unleashes ground-breaking smartphone technology to deliver a mobile experience like nothing that's come before. Experience the new Samsung Galaxy S II. Available at Sprint, T-Mobile, AT&T (4G), AT&T (4G LTE) and U.S. Cellular.

(Kim Decl. ¶ 4, Ex. 2.) The webpage includes photos and information for all of the U.S. carrier models, including the Sprint "Galaxy S II Epic 4G Touch" and the AT&T "Galaxy S II Skyrocket."[5] (*Id.*) The photos show that all of the Galaxy S II models include the same "Galaxy S II" logo on the back, *without* any additional words such as "Epic 4G Touch" or "Skyrocket." (*Id.* ¶¶ 5-7, Exs. 3-6.) Thus, Samsung clearly considers "Galaxy S II" to cover all of these U.S. carrier models, including the "Galaxy S II Epic 4G Touch" and "Galaxy S II Skyrocket."

The same is true as to the Galaxy tablet. Apple's August 26, 2011 Infringement Contentions identified the "Galaxy Tab 10.1" as an "Accused Instrumentality." (Dkt. No. 801-5 at 4.) Samsung does not dispute that "Galaxy Tab 10.1" includes the Wi-Fi only version of this product, but contends that it does not include the "Galaxy Tab 10.1 LTE." Yet, Samsung's "Explore Galaxy Tabs" webpage includes photos and descriptions of both products, which it refers to as "Galaxy Tab 10.1 (Wi-Fi Only)" and "Galaxy Tab 10.1 (Verizon 4G LTE)." (Kim Decl. Ex. 8.) As indicated by the webpage description, these are the same product except that one connects to the Internet through "Wi-Fi Only," and the other can also connect over a 4G LTE cellular network. (*Id.* ¶ 9, Ex. 8.)

Samsung argues that Apple's August 26, 2011 Infringement Contentions were insufficient because Apple never mentioned the "specific names and/or model numbers" of these products. (Opp. at 15 n.50.) Yet, as Samsung acknowledges, Patent Local Rule 3-1(b) requires accused products to be identified "'by name or model number, if known.'" (*Id.*) Apple identified the products by the names known to Apple at that time (which was before the Galaxy S II was released in the U.S.), and that Samsung actually uses—the "Galaxy S II" and "Galaxy Tab 10.1."

Samsung also argues that Apple's March 4, 2012 amendment of its response to Samsung's Interrogatory No. 5 shows that the two Galaxy S II models were not at issue. (Opp. at 15-16.)

---

[5] Samsung's webpage also includes information about the U.S. Cellular "Galaxy S II," which was just released on March 1, 2012. Apple does not fault Samsung for failing to produce financial data for a product that had not been released when this Motion was filed. However, the Sprint "Galaxy S II Epic 4G Touch" and the AT&T "Galaxy S II Skyrocket" were released many months ago, on September 16 and November 6, 2011, respectively. That was before and immediately after the release of the AT&T and T-Mobile editions of the Galaxy S II on October 2 and October 16, 2011, respectively. (Kim Decl. ¶ 13, Ex. 12.)

That amendment, however, simply updated Apple's response in a manner consistent with Apple's Amended Complaint (served June 16, 2011), its Addendum to Infringement Contentions (served August 26, 2011), and its numerous discovery requests (served in August, October, and November 2011, and in January and February 2012 (*see* Kim Decl. ¶¶ 2-3)). Apple's initial interrogatory response, served September 12, 2011, did not include the Galaxy S II variants because none had yet been released in the U.S. (Kim Decl. Ex. 9.) After Samsung released these various models, Apple amended its response on March 4 and March 8, 2012, to confirm which variants of the Galaxy S II it accuses of infringing its design patents (Dkt. No. 801-7 Ex. 3) and utility patents (Kim Decl. Ex. 10). These amendments do not change the fact that Apple had *already* accused the Galaxy S II of infringement many months earlier.[6]

Finally, it bears emphasis that the two Galaxy S II models that Samsung concedes are in the case—the T-Mobile and AT&T editions—have similar, but not identical, specifications. For example, the T-Mobile Galaxy S II has a slightly larger screen, 4.52 inches instead of the 4.3 inch screen of the AT&T Galaxy S II. (Kim Decl. ¶ 12, Ex. 11.) Thus, Samsung uses "Galaxy S II" to cover a group of related products with similar, but not identical specifications. The Sprint "Galaxy S II Epic 4G Touch" and AT&T "Galaxy S II Skyrocket" are members of this same Galaxy S II family. (*See id*. Ex. 12 at 4, 9-10 (identifying U.S. variants of Galaxy S II).)

## VI. SAMSUNG VIOLATED THE ORDER BY WITHHOLDING SPECIFIC FINANCIAL DOCUMENTS PRODUCED IN THE ORDINARY COURSE OF BUSINESS

Samsung fails to justify its refusal to produce particular financial documents that Apple seeks. Samsung asserts that it withheld ▮▮▮▮ because Apple only requested and Samsung only promised to provide ▮▮▮▮▮▮▮▮▮▮▮▮ (Opp. at 20.) The record flatly contradicts Samsung's position. Apple's proposed order sought the ▮▮▮▮▮▮▮▮▮▮▮▮ (Mot. App. A at 8) and Apple's counsel

---

[6] The unsigned stipulation that Samsung cites in a footnote also does not change Apple's prior identification of the Galaxy S II as an infringing product. (Opp. at 16 n.53.) That stipulation sought not just to add but also "to clarify the inclusion of" models already in the case, and it was never signed in any event. (Dkt. No. 801-4 Ex. 4.)

1 specifically argued at the hearing ▮▮▮

2 ▮▮▮

3 (Dkt. No. 759-4 Ex. 8 at 155:25-156:4.) Samsung's counsel responded that the ▮▮▮

4 ▮▮▮

5 ▮▮▮ but nevertheless promised to produce them. (*Id*.

6 at 167:16-18, 168:22-169:3.) There is no question that Samsung understood the request was for

7 "financial" documents, and that Samsung promised and then refused to produce ▮▮▮

8 ▮▮▮ Samsung asserts it withheld ▮▮▮ reports prepared by ▮▮▮

9 ▮▮▮

10 ▮▮▮ This also is incorrect. The few ▮▮▮ reports that Apple has obtained

11 contain ▮▮▮

12 ▮▮▮ (Roberts Reply Decl. ¶¶ 22, 29.) Equally important, in contrast to the

13 ▮▮▮ produced by Samsung specifically for this litigation ▮▮▮

14 ▮▮▮, the ▮▮▮ reports reflect ▮▮▮

15 ▮▮▮ (*Id*.)

16 ▮▮▮ Finally, Apple requires ▮▮▮

17 ▮▮▮ to verify the accuracy of Samsung's

18 production. Although Mr. Sheppard's declaration claims that Apple's request for ▮▮▮

19 ▮▮▮

20 ▮▮▮ Mr. Sheppard testified at his 30(b)(6) deposition that ▮▮▮

21 ▮▮▮ (Olson Reply

22 Decl. Ex. I at 72:13-22.) Apple seeks ▮▮▮

23 ▮▮▮

24 ▮▮▮ (*Id*. at 72:13-22, 142:1-10, 145:13-22; *see* Dkt. No. 801-9 Ex. 9 ▮▮▮

25 report).) Apple further is entitled to financial information from Samsung's system of records in a

26 manner sufficient for Apple to calculate Samsung's consolidated profits, as for example, ▮

27 ▮▮▮

28 ▮▮▮ As we have seen, anything less allows Samsung to ▮▮▮

APPLE'S REPLY BRIEF ISO RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES
DISCOVERY ORDER — CASE NO. 11-CV-01846-LHK (PSG)
pa-1517236

12



### VII. SAMSUNG'S VIOLATIONS WARRANT THE SANCTIONS THAT APPLE SEEKS

As shown above and in Apple's Motion, Apple indisputably has been prejudiced by Samsung's failure to comply with the Court's Order by the February 3rd deadline, and by its continuing refusal to produce the documents and information Apple needs to assess consolidated gross profits and operating profits.

Apple's requested sanctions are narrowly tailored to address the specific harms Samsung caused. In February, Samsung repeatedly claimed that it gave Apple everything it was entitled to and that its production had no errors. (*See*, *e.g.*, Dkt. No. 759-4 Ex. 18; Mot. at 7.) Samsung should have to live within its own claims. Apple should have access to the documents and information that it needs to test Samsung's profit figures and to prove consolidated profits. Samsung should not be able to cross-examine Apple's experts about their reports, which—because of Samsung's violations—were prepared without access to the information that Apple needs. Samsung was well aware of the deadlines for expert reports and discovery when it produced its original Spreadsheet. Samsung cannot withhold evidence and then use the absence of that evidence as a basis for cross-examining the damages experts who were whipsawed by Samsung's misconduct. Finally, Samsung should not be allowed to benefit from its misconduct by using its discovery violations as a means to delay the trial in this case.

Samsung does not take issue with any of Apple's specific sanctions requests and instead argues generally that "such harsh and potentially case-dispositive sanctions should be imposed only under 'extreme circumstances' in which a party violated a discovery order willfully, in bad faith, or through fault" and would be manifestly unjust here. (Opp. at 22.) Samsung ignores that "extreme circumstances" or "bad faith" are required only when case dispositive sanctions are at issue. *See*, *e.g.*, *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (requested sanction was default judgment); *U.S. v. Kahaluu Const. Co.*, 857 F.2d 600, 603 (9th Cir. 1988) ("Dismissal and default judgment are authorized only in extreme circumstances. So, too, are orders taking the plaintiff's allegations as established and awarding judgment to the plaintiff on

1  that basis."). The evidentiary sanctions requested by Apple are not case dispositive. They relate
2  solely to Apple's damages, not Samsung's liability.

3  Even if "extreme circumstances" were required, the very cases cited by Samsung hold that
4  the "bad faith" standard is met by "[d]isobedient conduct not shown to be outside the litigant's
5  control." *Fair Housing*, 285 F.3d at 905 (9th Cir. 2002); *see also*, *Lewis v. Ryan*, 261 F.R.D. 513,
6  518 (S.D. Cal. 2009). Samsung's disobedient conduct evidenced extraordinary disregard for the
7  Court's Order—including ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
8  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
9  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
10 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
11 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

12 Rather than requiring extreme circumstances, courts may issue the types of evidentiary
13 sanctions that Apple seeks unless the failure to provide discovery was either "substantially
14 justified or harmless." *Lewis v. Ryan*, 261 F.R.D. 513, 522 (S.D. Cal. 2009); *Peterson v. AT&T*
15 *Umbrella Benefit Plan No. 1*, No. C-10-03097 JCS, 2011 U.S. Dist. LEXIS 135285, at *19 (N.D.
16 Cal. Nov. 23, 2011); *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-
17 06 (9th Cir. 2001) (noting that "harshness" of Rule 37(c) sanctions excluding expert testimony is
18 ameliorated by exception permitting testimony if failure to disclose information is "substantially
19 justified or harmless"). Samsung never comes close to showing that either exception applies.

20 Courts routinely award evidentiary sanctions where, as here, a party failed to produce
21 documents required by a court order. *See, e.g., Carl Zeiss Vision Int'l GmbH v. Signet Armorlite,*
22 *Inc.*, No. 07-cv-0894-DMS (POR), 2010 WL 743792, at *6-7 (S.D. Cal. Mar. 2, 2010) (precluding
23 party from relying on financial data that was not produced until end of discovery, after party's
24 Rule 30(b)(6) designee had been deposed); *Davis v. Nevarez*, No. 3:07-CV-00427-EJL-LMB,
25 2009 WL 1468705, at *4 (D. Idaho May 22, 2009) ("it is entirely appropriate and justified to
26 strictly limit any testimony or statements . . . to those statements that have been produced in
27 discovery"); *PeerMusic III Ltd. v. LiveUniverse, Inc.*, No. CV 09-6160-GW (PLAx), 2011 WL
28 672585, at *9 (C.D. Cal. Jan. 26, 2011) ("preventing defendants from relying on evidence or

information that they have withheld from plaintiffs in discovery is 'an appropriate sanction, reasonably related to the subject of the discovery that was frustrated by sanctionable conduct'").

Nor does Samsung show that imposition of sanctions would be manifestly unjust. Samsung complains about the timing of Apple's Motion but it was Samsung's choice to withhold the information. Samsung has no basis to shift blame to Apple, particularly because Apple repeatedly ███████████████, asked for additional information, and met and conferred with Samsung about the issue. (Dkt. No. 759-4 Exs. 13-18.) Samsung also claims that Apple has failed to comply with the Court's February 3rd deadline, but Apple's purported conduct is not at issue. Had Apple done anything even remotely as egregious as Samsung has, Samsung could have filed a motion of its own. It did not. Finally, Samsung's claim that Apple has not been prejudiced has been refuted in spades.

Samsung has flaunted the Court's Order and unilaterally determined what information Apple should have. If sanctions do not issue, Samsung will continue to act as if the Court's Orders do not matter and Apple will continue to suffer prejudice caused by Samsung's violations.

**CONCLUSION**

For the foregoing reasons, Apple requests that the Court grant Apple's motion and issue the requested orders.

Dated: March 20, 2012                MORRISON & FOERSTER LLP

                                     By:    */s/ Michael A. Jacobs*
                                            Michael A. Jacobs

                                     Attorneys for Plaintiff
                                     APPLE INC.