JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Plaintiff Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. :12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS**<br><br>**Hearing**:<br>Date: May 1, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5<br>Judge: Paul S. Grewal |

**FILED UNDER SEAL**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. Discovery Relating To Samsung's Alleged Copying Of Apple's Technology And Innovations Is Highly Relevant To Apple's Preliminary Injunction Motion ..........................................................................................................................2

    B. Discovery Relating To The Design And Implementation Of The Accused Products Is Relevant To The Preliminary Injunction Factors .........................................5

    C. Discovery Relating To Samsung's Smartphone And Tablet Strategy Is Relevant To Apple's Preliminary Injunction Motion ........................................................6

    D. Documents Relating To Consumer Confusion Are Relevant To The Elements Of Irreparable Harm And The Balance Of Hardships .........................................9

    E. Samsung Should Not Be Permitted Withhold Materials On The Basis Of The Common Interest Privilege ...................................................................................10

    F. Samsung Failed To Raise Its Objections With Specificity ..........................................12

    G. Samsung Should Be Ordered To Immediately Complete Its Production Of Documents ...................................................................................................................12

III. CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & E Products Group v. California Supply, Inc.*,
  1993 WL 461489 (C.D. Cal. 1993) .................................................................................................. 4

*Brill v. Walt Disney Pictures & TV*,
  2000 U.S. App. LEXIS 31179 (9th Cir. Dec. 1, 2000) ................................................................... 11

*Elan Microelectronics Corp. v. Apple, Inc.*,
  2011 U.S. Dist. LEXIS 87989 (N.D. Cal. Aug. 8, 2011) ................................................................ 11

*FSP Stallion 1, LLC v. Luce*,
  2010 U.S. Dist. LEXIS 110617 (D. Nev. Sept. 30, 2010) .............................................................. 11

*Global Tech Appliances, Inc. v. SEB, S.A.*,
  131 S.Ct. 2060 (2011) ...................................................................................................................... 3

*High Point SARL v. Sprint Nextel Corp.*,
  2011 U.S. Dist. LEXIS 103118 (D. Kan. Sept. 12, 2011) ................................................................ 5

*Perry v. Schwarzenegger*,
  591 F.3d 1126 (9th Cir. 2009) ....................................................................................................... 11

*Southwest Aerospace Corp. v. Teledyne Indus., Inc.*,
  702 F. Supp. 870 (N.D. Ala. 1988), aff'd 884 F.2d 1398 (Fed. Cir. 1989) ...................................... 3

*Union Pac. R.R. v. Mower*,
  219 F.3d 1069 (9th Cir. 2000) ....................................................................................................... 10

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
  782 F.2d 995 (Fed. Cir. 1986) ..................................................................................................... 4, 6

**Statutes**

Fed. R. Civ. P. 26(b)(5) ....................................................................................................................... 10

Fed. R. Civ. P. 26(b)(ii)(C)(3) ............................................................................................................... 8

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In its Opposition, Samsung urges the Court to adopt a narrow (and incorrect) view regarding the scope of discovery: essentially, Samsung argues that the only relevant topic for discovery is whether the Galaxy Nexus directly infringes Apple's Preliminary Injunction Patents.  As detailed below, this view effectively deprives Apple of discovery relevant to key aspects of its Preliminary Injunction Motion, including the elements of irreparable harm, the balance of hardships, and public interest.  In addition, it would deprive Apple of evidence highly relevant to its issues of likelihood of success, including, for example, patent validity.

Through its objections, Samsung seeks to exclude discovery regarding copying of Apple technology and innovations, particularly if such copying occurred in connection with the development of products other than the Galaxy Nexus.  In its Opposition ("Opp."), Samsung argues that copying and Samsung's state of mind, even with respect to the Galaxy Nexus, are irrelevant to the issue of direct infringement.  But Samsung's argument ignores the fact that evidence of Samsung's copying is relevant to issues other than direct infringement, and pertains to issues of non-obviousness, indirect infringement, the importance of the features (irreparable harm), and the balance of hardships.

Copying evidence related to products other than the Galaxy Nexus is also relevant.  Indeed, Samsung's copying of Apple's technology, particularly the accused, patented features during the development of products pre-dating the Galaxy Nexus highlights the importance of those features, which this Court has held is an element of irreparable harm.  Samsung's general copying of Apple's technology, moreover, relates at least to the balance of hardships analysis as courts have long recognized that a party who elects to build its business illicitly cannot later complain when facing an injunction.  Clearly, evidence of Samsung's copying, with respect to the four accused features, the Galaxy Nexus generally, and its product development generally is relevant to Apple's motion for preliminary injunction.

Samsung also seeks to exclude from discovery evidence relating to the competition between Apple and Samsung for products other than the accused Galaxy Nexus by taking the simplistic view that if a Samsung product is not accused of infringement, marketing and competition-analysis documents relating to that product cannot be relevant to Apple's Preliminary Injunction Motion.  But this view is inconsistent with issues raised by Apple in its PI Motion as well as of Samsung's own internal documents.  As Apple explains in its Motion and as Samsung's internal documentation confirms, Apple and Samsung are each vying to offer a complete ecosystem of products to consumers.  When a consumer enters the ecosystem though his or her first purchase, that consumer becomes pre-disposed to purchase other products in the ecosystem.  Here, the Galaxy Nexus is one element of Samsung's ecosystem and, in turn, its strategy to compete with a variety of Apple products; a complete picture of Samsung's competition strategy is therefore directly relevant to the irreparable harm described in Apple's Motion.  Given that Apple explicitly raised these issues in its papers, Samsung cannot simply ignore Apple's discovery requests focused on such issues.

Throughout these proceedings, Apple has been mindful of the Court's admonition that the discovery should be reasonable in scope and narrowly tailored to address the preliminary injunction motion.  But as the examples above demonstrate, Samsung has unilaterally imposed an overly-narrow view of the scope of discovery in these proceedings, the effect of which is to deprive Apple of discovery relevant to issues other than direct infringement.  For these and the additional reasons below, Apple's Motion should be granted, and Samsung should be compelled to produce all responsive materials forthwith.

## II.   ARGUMENT

### A.   Discovery Relating To Samsung's Alleged Copying Of Apple's Technology And Innovations Is Highly Relevant To Apple's Preliminary Injunction Motion

Apple's Requests Nos. 16 and 18 seek materials relating to Samsung's knowledge of the Preliminary Injunction Patents, as well as its efforts to copy or design-around the inventions claimed in those patents.

1   Apple's Request No. 16 seeks documents "relating to any analysis, review, consideration,
2   evaluation or attempts to design around or otherwise avoid infringement of the Preliminary Injunction
3   Patents." Samsung refuses to produce documents responsive to the Request, arguing that "copying is
4   irrelevant to patent infringement" and that "whether Samsung intended to infringe the Preliminary
5   Injunction Patents" also is not relevant to infringement.

6   Although intent and copying may not be relevant to *direct* infringement, it nevertheless relates
7   to indirect infringement, which Apple alleges in this case. *See Global Tech Appliances, Inc. v. SEB,*
8   *S.A.*, 131 S.Ct. 2060, 2071 (2011) (In context of indirect infringement analysis, "[Respondent's]
9   belief that SEB's fryer embodied advanced technology that would be valuable in the U.S. market is
10  evidenced by its decision to copy all but the cosmetic features of SEB's fryer."); Complaint at ¶¶ 19,
11  31, 37, and 61. Samsung's apparent focus on direct infringement is misplaced.

12  Intent and copying, moreover, also are relevant to other factors this Court will consider in
13  determining whether to grant a preliminary injunction. For instance, there is no question that
14  Samsung's intentional copying of the patents is relevant to willful infringement, which in turn is
15  relevant to the balance of the hardships. *Sw. Aerospace Corp. v. Teledyne Indus., Inc.*, 702 F. Supp.
16  870, 886 (N.D. Ala. 1988) (holding that "the balance of hardships in this case tips decidedly in favor"
17  of the patent holder in the court's preliminary injunction analysis, in part because the alleged
18  infringer had "undertaken a deliberate pattern of manufacturing and marketing products" "with full
19  knowledge of" the patent holder's "proprietary rights"), *aff'd*, 884 F.2d 1398 (Fed. Cir. 1989). This
20  law, perhaps, explains Samsung's prior acknowledgement that willful infringement is relevant to
21  preliminary injunction issues  an acknowledgement Samsung seeks to avoid now.

22  Additionally, Samsung's long-term strategy of copying nearly all aspects of the iPhone 
23  whether patented or unpatented  shows that Samsung intends to target Apple's customers and
24  deprive Apple of market share, which evidence is directly relevant to Apple's showing of irreparable
25  harm. *See* Apple's Preliminary Injunction Motion (D.I. 10) at 16-17. Samsung's copying is also
26  relevant to the balance of the hardships, as "[o]ne who elects to build a business on a product found
27  to infringe cannot be heard to complain if an injunction against continuing infringement destroys the
28

APPLE INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND THINGS
CASE NO.:12-CV-00630-LHK                                3

Gibson, Dunn &
Crutcher LLP

1  business so elected." *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir.
2  1986). Finally, the materials at issue are relevant because there is strong public interest favoring
3  innovation, and disfavoring serial copying by a recidivist infringer such as Samsung. *See A & E*
4  *Products Group v. California Supply, Inc.*, 1993 WL 461489, *10 (C.D. Cal. 1993) ("the public has
5  an interest in protecting the patent system, and in guarding against further copying of A & E's
6  invention. To that extent, the public interest will be served by a preliminary injunction.").

7        With respect to Request No. 18, Samsung argues that the Request is overbroad because it
8  seeks evidence of copying outside of the context of the development of the Samsung Galaxy Nexus.
9  Such evidence, Samsung posits, cannot be relevant because it does not help Apple prove "(1)
10 Samsung's infringement of the Preliminary Injunction Patents; and (2) the validity of those patents."
11 Opp. at 11. But neither statement responds to Apple's explanation in its opening brief that "if the
12 accused features were first developed in connection with Samsung's earlier products, information
13 relating to those development efforts would also be pertinent to demonstrating Apple's likelihood of
14 success." Motion at 8. In other words, if the accused functionalities were first implemented in a
15 predecessor product to the Galaxy Nexus, then the best evidence of copying and willful infringement
16 would be found in the materials relating to the development of that earlier product. Again, in
17 addition to relating to indirect infringement (likelihood of success), such evidence demonstrates the
18 importance of the features to consumers and the marketability of the phones, which relates at least to
19 irreparable harm.

20       Samsung's argument regarding a supposed burden of production does not justify a different
21 result. Opp. at 12-13. To begin with, Samsung has failed to articulate the specific burden associated
22 with the collection and production of responsive materials. Samsung's declarants are conspicuously
23 silent as to the amount of time and expense a search for responsive materials would entail. *See High*
24 *Point SARL v. Sprint Nextel Corp.*, 2011 U.S. Dist. LEXIS 103118, 46-48 (D. Kan. Sept. 12, 2011)
25 ("As the party resisting discovery, Sprint has the burden to show facts justifying its objection by
26 demonstrating that the time or expense involved in responding to the interrogatory is unduly
27 burdensome. This imposes an obligation to provide sufficient detail and explanation about the nature
28

of the burden in terms of time, money and procedure required to produce the requested documents or answer the interrogatory."). And in any event, any such burden would be a problem of Samsung's own creation. Having engaged in a wholesale effort to copy Apple's technology in a wide variety of products, Samsung should not be heard to complain that it would be unduly burdensome for it to collect and produce the evidence of those activities.

Because Samsung's efforts to copy Apple's technology and innovations are directly relevant to irreparable harm and balance of the hardships, the Court should grant Apple's Motion with respect to Request Nos. 16 and 18.

### B.  Discovery Relating To The Design And Implementation Of The Accused Products Is Relevant To The Preliminary Injunction Factors

Apple's Requests Nos. 8, 21, and 22 seek documents relating to the role that various individuals, groups, and entities played in the design of the accused features, the Galaxy Nexus and the Android 4.0 Ice Cream Sandwich software that provides such features on the accused device. Apple is entitled to know how such features came into being and implemented on the Galaxy Nexus, who participated in those efforts, as well as who contributed to the implementation of Ice Cream Sandwich. Such information is relevant not only to likelihood of success but also to irreparable harm and balancing of the hardships, which factors Samsung, again, ignores entirely.

Samsung attempts to avoid disclosure of this relevant information by asserting that information about the general design and features of the Galaxy Nexus and Ice Cream Sandwich are irrelevant. Opp. at 10. As previously explained, however, Samsung's overall copying strategy is relevant to direct competition, which clearly relates to irreparable harm. As also explained, evidence of Samsung's general efforts to copy Apple's products and technology tips the balance of the hardships further in Apple's favor. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). Samsung has failed to address any of these points or cite a single case in support of its position that this evidence is irrelevant. For all of these reasons, Samsung should be compelled to produce documents responsive to Request No. 18.

Additionally, Requests Nos. 8, 21, and 22 seek materials that will shed light on Samsung's involvement with the design of the accused product. For example, Request No. 8 seeks only those documents "sufficient to identify the individuals" involved in the development of the "ability to type, enter, change or modify text" in Samsung's applications. This functionality relates directly to Apple's '172 patent, the claims of which include elements such as a "keyboard associated with a delimiter." In its effort to justify its boilerplate, over-breadth objections (Opp. at 10), Samsung ignores that the Request seeks only documents "sufficient" to provide the requisite information, and as such, Samsung's objection should be overruled.

Similarly relevant are Request Nos. 21 and 22, both of which seek information pertaining to Samsung's relative contributions in the design and implementation of the accused product. Again, Samsung's argument as to undue burden is fundamentally inconsistent with Samsung's otherwise unwillingness or inability to produce responsive documents. For example, Samsung's claims that "over 1,000 Samsung engineers" participated in the development of its products "over the past five years" is flatly inconsistent with its argument that it did not design the products and does not know how they work. If Samsung is to be believed, then the production should not be so burdensome.

**C. Discovery Relating To Samsung's Smartphone And Tablet Strategy Is Relevant To Apple's Preliminary Injunction Motion**

Apple's Requests Nos. 45, 48-50, 53-55, 57, 59, 61-64, 67, 68, 70, 72, 74, 75, 77, 79, and 81 relate to actual or perceived competition between Apple and Samsung, as well as to the marketplace in which Apple and Samsung compete. Samsung appears to concede that any materials specific to the Samsung Galaxy Nexus are relevant and must be produced. The parties' dispute therefore centers on whether competition documents and materials that do not specifically reference the Galaxy Nexus can be relevant to Apple's requested preliminary injunction.

Apple addressed this very question in its Preliminary Injunction Motion. As Apple argued, and as supported by the declaration of Dr. Vellturo, "a consumer's first purchase of a smartphone exerts substantial influence over subsequent purchases, locking in a preference for the first-chosen platform long into the future." *See* Apple's Preliminary Injunction Motion (D.I. 10) at 8. Indeed, the

1  purchase of *any* consumer device from a given company can have long-lasting consequences because
2  "there can be fairly significant 'switching costs' when changing from one platform to another." *Id.* at
3  9.  As such, Samsung's general efforts to compete with Apple, and turn customers away from Apple,
4  particularly if Samsung seeks to do so in order to lock customers in to the Samsung or Android
5  ecosystem in order to enhance its ability to sell the Galaxy Nexus, go directly to the irreparable harm
6  Apple has identified in its brief—harm that cannot be fully calculated.  Likewise, Samsung's efforts
7  to use the Galaxy Nexus to drive sales of other products are equally relevant, and to the extent the
8  marketing and strategic plans of such other documents reference the Galaxy Nexus, they too should
9  be produced.
10         On this issue, the Court need not solely rely on the reasoning and analysis of Dr. Vellturo.
11  After all, Samsung's own documents demonstrate *Samsung's belief* that it is engaged in a pitched
12  battle in which the sale of any device can have long-lasting market consequences ▌
13  ▌
14  ▌
15  ▌
16  ▌
17  ▌
18  ▌
19  ▌
20  ▌
21  ▌
22  ▌
23  ▌ Clearly, the Galaxy Nexus is one important
24  element in Samsung's strategy to compete with Apple, and it is important for Apple to obtain the
25  complete picture of that strategy of competition because it goes directly to the irreparable harm that is
26  the center of Apple's preliminary injunction motion.

1    Samsung's suggestion that the Galaxy Nexus exists in a market all on its own is particularly
2 disingenuous because on the very day that Samsung submitted an Opposition articulating this stance,
3 its attorneys aggressively questioned Apple's expert witness, Dr. Vellturo, regarding *broad*
4 marketplace considerations. Dr. Vellturo Depo Tr. at 98:11-18 ("Q. Certainly you would agree that
5 the number of Galaxy Nexus [phones] which would be sold, you know, which where you would
6 otherwise have an Apple iPhone sold, that would have an impact on whether or not the market was
7 going to *materially tip toward Android* in the next 18 months?"); 165:17-18 ("Q. Will you agree that
8 Samsung has more offerings in the low end than Apple does?"); 108:22-109:5 ("Q. Dr. Vellturo, you
9 said that it was your opinion that in the next 18 months, if there is no preliminary injunction, that the
10 market will materially tip in the favor of Android? A. And you're reading from where? Q. I don't
11 have it in your deposition. That's what you said here. Is that your opinion?"). Fedman Decl., Exh. 5.

    Nor does any supposed burden justify the withholding of the materials at issue. To begin
13 with, Samsung fails to provide proper support for its contention that the collection of such materials
14 would be unduly burdensome. ██████████████████████████████████████████
15 ██████████████████████████████████████████████████████████████████████
16 ██████████████████████████) But beyond this conclusory statement, Samsung fails to
17 articulate other critical details including the cost of collecting responsive materials, the time it would
18 take to gather responsive materials, and the estimated volume of responsive materials. Without this
19 information, Samsung simply cannot meet its burden of demonstrating that "the burden or expense of
20 the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in
21 controversy, the parties' resources, the importance of the issues at stake in the action, and the
22 importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(ii)(C)(3).

    If there is one thing on which Dr. Vellturo and Samsung's personnel can agree, it is that the
24 ██████████████████████████████████████████████████████████████████████
25 ██████████████████████████████████████████████████████████████████████
26 ██████████████████████████████████ Given the undisputed nature of the

marketplace, Samsung should not be permitted to limit its production to only materials that specifically relate to the Galaxy Nexus.

### D. Documents Relating To Consumer Confusion Are Relevant To The Elements Of Irreparable Harm And The Balance Of Hardships

In its opening brief, Apple explained that Request No. 91, which relates to consumer confusion between Apple products and the Samsung Galaxy Nexus, seeks information that is relevant to show "the harm Apple will suffer without a preliminary injunction" and "that the harm from sales of infringing products is related to the patented features." Motion at 9.

Samsung's Opposition is founded entirely on an unsupported proposition that the discovery process was intended to avoid. According to Samsung, "[i]solated instances of confusion, if they even exist, are merely anecdotal." Opp. at 8. In other words, rather than *provide evidence* by which the Court could determine whether such confusion exists, and the prevalence of such confusion, Samsung wants to withhold that evidence simply based on its *assertion* that such instances of confusion are non-existent or at best isolated.

Not only is Samsung's position contrary to the letter and the spirit of the Rules of Civil Procedure, but it also cannot be reconciled with Samsung's simultaneous position that any search for responsive materials would be unduly burdensome. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ is inconsistent with Samsung's naked assertion that "[i]solated instances of confusion, if they even exist, are merely anecdotal." Opp. at 8. If there are few or no instances of consumer confusion, the burden on Samsung to produce responsive materials should be minimal. If there are numerous instances of consumer confusion, then any burden was of Samsung's own (wrongful) creation.[1]

---

[1] Samsung's burden argument fails for another reason. Even under Mr. Wilkins's worst-case scenario, the entire process could have been completed in "three or four weeks." Wilkins Decl. ¶ 6.

Samsung also does not represent that there would be any undue burden associated with producing responsive materials other than call center materials. At the very least then, Samsung should be required to produce other responsive materials such as consumer surveys or studies responsive to the Request.

### E. Samsung Should Not Be Permitted Withhold Materials On The Basis Of The Common Interest Privilege

Samsung has invoked the common interest privilege in order to block discovery into communications between itself and Google that Samsung vaguely identifies as "relating to a common interest with respect to the allegations of infringement raised by Apple in this case." Opp. at 14. Samsung has not made any showing that the common interest doctrine – a narrow exception to the general rule that discussions between arms-length entities are not privileged – applies.

A party asserting privilege or immunity from discovery bears the burden of disclosing the specific nature of the materials withheld from discovery, and further providing the basis for invoking the privilege. *See Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1077 n.9 (9th Cir. 2000) ("When a party withholds information . . . by claiming that it is privileged . . ., the party shall make the claim expressly and shall describe the nature of the documents, communications, or things . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." (citing to Fed. R. Civ. P. 26(b)(5))); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1133 n.1 (9th Cir. 2009) (holding that some form of privilege log is required.).

Moreover, beyond making a threshold showing that privilege applies, a party must further make a more rigorous showing to demonstrate that a common interest truly exists. *See Elan Microelectronics Corp. v. Apple, Inc.*, Case No. C 09-01531 RS (PSG), 2011 U.S. Dist. LEXIS 87989, 16-17 (N.D. Cal. Aug. 8, 2011) (finding that the common interest privilege did not apply where plaintiff offered nothing more than "mere post hoc rationalizations that it or its customers anticipated being drawn into a joint suit," where there was no joint defense or common interest

---

Given that the Requests at issue were served on March 6, 2012, even a "three or four" week process could have been completed well within the timeframe contemplated by the Court.

agreement, and where plaintiff failed to show there was a suit or even threat of suit against any of the parties who received the documents at issue); *FSP Stallion 1, LLC v. Luce*, Civ. No. 2:08-cv-01155-PMP-PAL, 2010 U.S. Dist. LEXIS 110617, 64-65 (D. Nev. Sept. 30, 2010) (finding failure to establish common interest privilege where no place in the record established that the parties agreed to treat the documents as privileged and confidential at the time the documents were exchanged); *Brill v. Walt Disney Pictures & TV*, Case No. 00-55592, 2000 U.S. App. LEXIS 31179, at *2-3 (9th Cir. Dec. 1, 2000) (holding that claimant failed to provide evidence that it had agreed to work in tandem with the third party to pursue a joint legal enterprise when the communications at issue transpired).

Samsung has not even attempted to meet any of these standards. Samsung has neither provided a privilege log covering the alleged privileged documents, nor any other information about when these discussions occurred, what was discussed (even at the highest level), who was involved, and which of those people were lawyers. In addition, Samsung has not provided any information to confirm that these discussions were truly legal in nature, rather than product development or business discussions that happened to have lawyers present. Nor has Samsung made any effort to provide anything other than bare attorney argument establishing that these companies were truly furthering a joint legal strategy when conducting these discussions. Samsung has not produced a common interest agreement or any other agreement, instrument, or evidence that that would suggest that a common interest exists. At bottom, Samsung has failed to provide Apple with any ability review or challenge Samsung's privilege assertions, and it has provided no information by which the Court can evaluate such claims. Because Samsung has had ample opportunity to make this showing and has not done so, Apple's motion should be granted.[2]

---

[2] Samsung argues that Apple "fail[ed] to meet and confer on the common interest privilege before filing its motion." Opp. at 13. That is not correct. Samsung acknowledges in its own opposition that the parties discussed the issue of the common interest privilege at their final meet and confer on these interrogatories, which the parties conducted after many fruitless exchanges of correspondence. *Id*. In any event, Apple made it quite clear at that conference that it would be moving to compel on the entirety of its interrogatory and would demand a complete, substantive response. Samsung made it equally clear that it had no intention of providing any response at all. It is not Apple's fault that Samsung, the burden with the party of establishing that the common interest privilege applies, had apparently not fully developed its basis for asserting that privilege in advance of the meet and confer, and is not ready to assert it in its opposition. Apple did not any way ambush

APPLE INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND THINGS
CASE NO.:12-CV-00630-LHK                           11

### F.   Samsung Failed To Raise Its Objections With Specificity

Rather than substantively respond to Apple's assertion that Samsung has indiscriminately peppered its responses with boilerplate objections, Samsung simply dismisses the argument as "makeweight." Opp. at 16.

For example, Apple showed in its opening brief that Samsung objected to "every single one of Apple's Requests for Production included in this Motion by stating boilerplate objections such as that Apple's requests are 'overly broad and unduly burdensome,' 'vague' and ambiguous.'" Motion at 10.  Apple also showed that Samsung objected "to every single Request for Production in this Motion as 'temporally and substantively overbroad in that it is not limited to any reasonable time period and seeks documents and things related to products not at issue in this litigation." Motion at 11.

Samsung's Opposition fails to explain why each of these objections was proper.  Instead, Samsung erects a straw man argument that its objections need not "contain all facts supporting Samsung's objections." Opp. at 16.  The Court need not reach the issue of whether Samsung's objections includes "all facts" supporting Samsung's boilerplate objections, because those objections fail to provide *any* facts.  Having not justified these and various other boilerplate objections, Samsung should be deemed to have waived any such objections.

### G.   Samsung Should Be Ordered To Immediately Complete Its Production Of Documents

Having squandered weeks of the discovery period by refusing to search for and produce responsive documents, Samsung now argues that "it would only be fair" to permit it until May 7 — one week before Apple's reply brief is due — to complete its document production.

But any burden associated with an earlier production deadline is a problem of Samsung's own creation.  For example, Samsung makes reference to the declarations of its various employees who claim that it would be time consuming to search and produce the documents at issue. Opp. at 19.  But what Samsung fails to address is when — or even *whether* — Samsung initiated the searches that are contemplated in the declarations.  Had Samsung been diligent about collecting and producing

---

Samsung by filing motion seeking a complete, substantive response to Apple's interrogatories, but rather repeatedly warned Samsung that Apple would do so.

1  responsive documents beginning in March 2012, one would have expected that information to appear
2  in Samsung's Opposition papers.
3      Even more disturbing, it appears that the slow pace of Samsung's production is driven not by
4  the logistical demands of the document production process, but by Samsung's deliberate litigation
5  tactic of withholding relevant documents until the timing is favorable to Samsung.  In its opening
6  brief, Apple pointed out one instance in which Samsung engaged in gamesmanship by surprising Dr.
7  Balakrishnan with alleged prior art that it had previously refused to produce in response to Apple's
8  discovery requests.  Motion at 14-15.  Notably, Samsung failed to offer any explanation as to when it
9  first became aware of the alleged prior art, and why that prior art was not produced despite
10 Samsung's and its counsel's obvious awareness of the prior art.[3]
11     Because Samsung's own discovery misconduct has caused the delay in Samsung's
12 production, the Court should require Samsung to immediately complete its document production.

### III. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court GRANT Apple's Motion to Compel.

---

[3] Samsung's observation that Apple produced a limited number of documents after certain witnesses have been deposed is a *non sequitur*.  Opp. at 18.  Notably, Samsung never even asserts that the subsequently-produced documents were of relevance to the earlier depositions.

| | |
|---|---|
| | GIBSON DUNN & CRUTCHER LLP |
| Dated: April 20, 2012 | By: */s/ H. Mark Lyon* <br> H. Mark Lyon |
| | ***Attorneys for Plaintiff Apple Inc.*** |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil 5 Local Rule 5,4, and will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have consented to electronic service in accordance with Civil Local Rule 5.4 via the Court's ECF system.

| | |
|---|---|
| Dated: April 20, 2012 | */s/ H. Mark Lyon* <br> H. Mark Lyon |