# EXHIBIT 1

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California  94065-2139
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100

9
   William C. Price (Bar No. 108542)
10 williamprice@quinnemanuel.com
   Patrick M. Shields (Bar No. 204739)
11 patrickshields@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
12 Los Angeles, California 90017
   Telephone: (213) 443-3000
13 Facsimile: (213) 443-3100

14 Attorneys for Defendants
   SAMSUNG ELECTRONICS CO., LTD.,
15 SAMSUNG ELECTRONICS AMERICA, INC.
   and SAMSUNG TELECOMMUNICATIONS
16 AMERICA, LLC
   [additional counsel listed on signature page]

17

18              UNITED STATES DISTRICT COURT

19     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

20

21 APPLE INC., a California corporation,        CASE NO. 12-cv-00630-LHK

                Plaintiff,                      **SAMSUNG'S OPPOSITION TO APPLE'S
22                                              MOTION FOR A PRELIMINARY
                                                INJUNCTION**
23        vs.

   SAMSUNG ELECTRONICS CO., LTD., a            Date:  June 7, 2012
24 Korean business entity; SAMSUNG             Time:  1:30 p.m.
   ELECTRONICS AMERICA, INC., a New            Place: Courtroom 8, 4th Floor
25 York corporation; SAMSUNG                   Judge: Hon. Lucy H. Koh
   TELECOMMUNICATIONS AMERICA,
26 LLC, a Delaware limited liability company,  **FILED UNDER SEAL
                                               HIGHLY CONFIDENTIAL –
27              Defendant.                      ATTORNEYS' EYES ONLY**

28

# TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................................ 1

Background ............................................................................................................................ 2

    A.    Samsung Develops the Galaxy Nexus in Partnership With Google ...................... 2

    B.    Apple's Unprecedented Success Since Samsung's Release of the Galaxy Nexus ................................................................................................................... 3

Standards for Preliminary Injunction ..................................................................................... 3

Argument ............................................................................................................................... 4

I.      APPLE IS NOT LIKELY TO SUCCEED ON THE MERITS ..................................... 4

    A.    Apple Has Failed to Show a Likelihood of Success with Respect to the '647 Patent ................................................................................................................... 4

            1.    The '647 Patent Requires Claim Construction ........................................... 5

                    (a)    "analyzer server" ......................................................................... 5

                    (b)    "linking actions to the detected structures" ................................. 5

            2.    The '647 Patent Is Invalid ......................................................................... 6

                    (a)    Newton Programmer's Guide Anticipates the '647 Patent .............. 7

                    (b)    Sidekick Anticipates the '647 Patent ............................................ 7

                    (c)    Pandit Anticipates the '647 Patent ............................................... 7

            3.    The Galaxy Nexus Does Not Infringe the '647 Patent ................................ 8

                    (a)    The Galaxy Nexus Does Not Include an "analyzer server" ............. 8

                    (b)    The Galaxy Nexus Does Not "link[] actions to detected structures" .................................................................................... 8

    B.    Apple Has Failed to Show a Likelihood of Success with Respect to the '604 Patent ................................................................................................................... 9

            1.    The '604 Patent Requires Claim Construction ........................................... 9

                      (a)    "each heuristic module . . . employs a different, predetermined heuristic algorithm" .................................................................. 9

            2.    The '604 Patent Is Invalid ........................................................................ 10

(a)     Claim 6 Is Anticipated by WAIS ................................................. 10

(b)     Claim 6 Is Anticipated by Legall ................................................. 11

(c)     Claim 19 Is Obvious in Light of Either WAIS or Legall ................ 11

3.      The Galaxy Nexus Does Not Infringe the '604 Patent................................. 11

(a)     Apple Has Not Identified a Single Algorithm, Let Alone a "heuristic algorithm," in the Galaxy Nexus .................................... 11

(b)     Apple Has Failed to Show That "each heuristic module . . . employs a different, predetermined heuristic algorithm"................ 12

C.      Apple Has Failed to Show a Likelihood of Success with Respect to the '721 Patent ................................................................................................................. 13

1.      The '721 Patent Is Invalid ........................................................... 13

(a)     Plaisant Anticipates All Asserted Claims........................................ 13

(b)     NeoNode Renders Obvious All Asserted Claims ........................... 14

(c)     Plaisant in Combination with NeoNode Renders Obvious All Asserted Claims.............................................................................. 14

(d)     All Asserted Claims Are Indefinite Because of the Undefined Term "unlock the device".............................................. 15

(e)     Claims 12 and 15 Are Indefinite Hybrid Claims............................ 15

2.      The Galaxy Nexus Does Not Infringe the '721 Patent................................ 16

(a)     The Unlock Image Does Not Move "continuously" ...................... 16

(b)     There Is No Single "unlock image" ................................................ 16

D.      Apple Has Failed to Show a Likelihood of Success with Respect to the '172 Patent ................................................................................................................. 17

1.      The '172 Patent Is Invalid ........................................................... 18

(a)     Longe and Robinson Anticipate All Asserted Claims .................... 18

(b)     TextPlus User's Guide Anticipates and/or Renders Obvious All Asserted Claims ........................................................................ 18

(c)     King Renders Obvious All Asserted Claims................................... 19

(d)     The Asserted Claims Are Invalid as a Predictable Combination of Known Elements .................................................... 19

(e)     Claims 18 and 27 Are Indefinite Hybrid Claims............................ 20

SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION

(f)   Claims 19 and 27 Are Indefinite Because They Do Not Disclose the Claimed Algorithms .................................................. 20

2.   The Galaxy Nexus Does Not Infringe the '172 Patent ............................... 21

(a)   The Galaxy Nexus Does Not Infringe Claims 18 or 19 ................. 21

(b)   The Galaxy Nexus Does Not Infringe Claim 27 ............................ 21

II.   APPLE HAS FAILED TO PROVE IRREPARABLE HARM .......................................... 22

A.   Apple Has Failed to Prove Irreparable Harm from Lost Market Share ................. 23

B.   Apple Has Failed to Prove Irreparable Harm from Lost Goodwill ...................... 25

C.   Apple Has Failed to Prove Irreparable Harm to Its Other Product Lines and "Ecosystem" .................................................................................. 26

D.   Apple Has Failed To Prove Causation ................................................... 27

E.   Apple Has Failed to Prove the Inadequacy of Monetary Damages ....................... 30

F.   Apple's Delay Belies Its Claimed Irreparable Harm ..................................... 30

G.   Apple's Licensing Practices Show That It Will Not Suffer Irreparable Harm ....... 31

III.   THE BALANCE OF HARDSHIPS WEIGHS IN SAMSUNG'S FAVOR ...................... 32

IV.   AN INJUNCTION WILL NOT SERVE THE PUBLIC INTEREST ............................... 33

Conclusion .......................................................................................... 34

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

<u>**CASES**</u>

*Abbott Labs. v. Andrx Pharms., Inc.*,
  452 F.3d 1331 (Fed. Cir. 2006) ........................................................................... 24

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008) ........................................................................... 32

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
  579 F. Supp. 2d 554 (D. Del. 2008) ..................................................................... 25

*Altana Pharma AG v. Teva Pharm. USA, Inc.*,
  566 F.3d 999 (Fed. Cir. 2009) ............................................................................... 4

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ............................................................................. 4

*American Cyanamid Co. v. United States Surgical Corp.*,
  833 F. Supp. 92 (D. Conn. 1992) ......................................................................... 33

*Ariba, Inc. v. Emptoris, Inc.*,
  2008 WL 3482521 (E.D. Tex. 2008) ................................................................... 15

*Aristocrat Techs. Australia v. International Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) ........................................................................... 21

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000) ........................................................................... 12

*Astra-Zeneca LP v. Apotex, Inc.*,
  633 F.3d 1042 (Fed. Cir. 2010) ............................................................................. 4

*Automated Merch. Sys., Inc. v. Crane Co.*,
  357 Fed. App'x. 297 (Fed. Cir. 2009) ................................................................. 24

*Aventis Pharma S.A. v. Hospira, Inc.*,
  743 F. Supp. 2d 305 (D. Del. 2010) ..................................................................... 15

*Board of Regents of the Univ. of Tex. Sys. v. BENQ America Corp.*,
  533 F.3d 1362 (Fed. Cir. 2008) ..................................................................... 10, 12

*Caldwell Manuf. Co. N. Am., LLC v. Amesbury Grp., Inc.*,
  2011 WL 3555833 (W.D.N.Y. Aug. 11, 2011) ................................................... 22

*Calmar, Inc. v. Emson Research, Inc.*,
  838 F. Supp. 453 (C.D. Cal. 1993) ...................................................................... 31

*Cummins-Allison Corp. v. Glory, Ltd.*,
  2003 WL 22125212 (N.D. Ill. Sept. 5, 2003) ..................................................... 25

*Datamize, LLC, v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005) ............................................................... 15

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ..................................................................... 23, 32

*Generac Power Sys., Inc. v. Kohler Co.*,
   807 F. Supp. 2d 791 (E.D. Wis. 2011) ........................................................ 24

*Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l, LLC*,
   634 F. Supp. 2d 1024 (N.D. Cal. 2008) ....................................................... 8

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
   49 F.3d 1551 (Fed. Cir. 1995) ............................................................ 31, 32

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) ............................................................ 27, 28

*Illinois Tool Works, Inc. v. Grip-Pak*,
   906 F.2d 679 (Fed. Cir. 1990) ............................................................ 23, 32

*In re Katz Interactive Call Processing Patent Litigation*,
   639 F.3d 1303 (Fed. Cir. 2011) .............................................................. 15

*In re Skvorecz*,
   580 F.3d 1262 (Fed. Cir. 2009) ........................................................... 10, 12

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
   995 F.2d 1566 (Fed. Cir. 1993) ............................................................... 3

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) ......................................................... 15, 16, 20

*Kimberly-Clark Worldwide, Inc. v. Tyco Healthcare Group LP*,
   635 F. Supp. 2d 870 (E.D. Wis. 2009) ...................................................... 22, 33

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ......................................................................... 19

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
   264 F.3d 1326 (Fed. Cir. 2001) .............................................................. 12

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   2010 WL 2574059 (E.D. Tex. June 22, 2010) .................................................. 32

*Lear, Inc. v. Adkins*,
   395 U.S. 653 (1969) ......................................................................... 33

*Litton Sys. Inc. v. Sundstrand Corp.*,
   750 F.2d 952 (Fed. Cir. 1984) ............................................................... 32

*Mas-Hamilton Group v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998) .............................................................. 20

*McDavid Knee Guard, Inc. v. Nike USA, Inc.*,
    683 F. Supp. 2d 740 (N.D. Ill. 2010) ................................................................. 24

*Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*,
    788 F. Supp. 2d 71 (E.D.N.Y. 2011)................................................................... 23

*Nash v. Microsoft Corp.*,
    2005 WL 5912091 (S.D. Tex. Apr. 1, 2005) ...................................................... 12

*Nutrition 21 v. United States*,
    930 F.2d 867 (Fed. Cir. 1991)..................................................................... 30, 31

*Panduit Corp. v. Band-It-Idex, Inc.*,
    2000 WL 1121554 (N.D. Ill. June 27, 2000) ..................................................... 31

*Precision Medical, Inc. v. Genstar Techs. Co.*,
    2011 WL 1674354 (E.D. Pa. May 3, 2011) ........................................................ 23

*RasterOps v. Radius, Inc.*,
    861 F. Supp. 1479 (N.D. Cal. 1994) ................................................................... 29

*Scanner Techs. Corp. v. Icos Vision Sys. Corp.*,
    2003 WL 1961565 (S.D.N.Y. Apr. 28, 2003)..................................................... 12

*Techradium, Inc. v. Blackboard Connect Inc.*,
    2009 WL 1152985 (E.D. Tex. Apr. 29, 2009) .................................................... 33

*Titan Tire Corp. v. Case New Holland, Inc.*,
    566 F.3d 1372 (Fed. Cir. 2009)............................................................................ 4

*Travel Tags, Inc. v. UV Color, Inc.*,
    690 F. Supp. 2d 785 (D. Minn. 2010) ................................................................. 25

*Travelers Express Co., Inc. v. Transaction Tracking Techs., Inc.*,
    305 F. Supp. 2d 1090 (D. Minn. 2003) ............................................................... 30

*Winter v. National Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................ 3, 27

*WMS Gaming Inc. v. International Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) .......................................................................... 21

*Yamashita v. Wilbur-Ellis Co.*,
    2006 WL 1320470 (N.D. Cal. May 15, 2006) .............................................. 30, 33

*z4 Techs., Inc. v. Microsoft Corp.*,
    434 F. Supp. 2d 437 (E.D. Tx. 2006) .......................................................... 27, 32

*Z-Man Fishing Products, Inc. v. Renosky*,
    790 F. Supp. 2d 418 (D.S.C. 2011) .................................................................... 26

**<u>STATUTES</u>**

35 U.S.C. § 112 ¶ 6 ................................................................................................................. 20

SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION

1

**Explanation of Citation Forms**

2

**Pleadings**

3

Citations to "Motion" are to Apple's Motion for a Preliminary Injunction, dated February

4

8, 2012.

5

**Declarations Submitted Herewith**

6

Citations to "Ex. __" are to exhibits attached to the Declaration of Daniel C. Posner in

7

Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction.

8

Citations to the "Bringert Decl." are to the Declaration of Björn Bringert.

9

Citations to the "Carbonell Decl." are to the Declaration of Dr. Jaime Carbonell.

10

Citations to the "Clark Decl." are to the Declaration of Cary Clark.

11

Citations to the "Cohen '647 Decl." are to the Declaration of Geoff A. Cohen, Ph.D.

12

Concerning U.S. Patent No. 5,946,647.

13

Citations to the "Cohen '721 Decl." are to the Declaration of Dr. Geoff A. Cohen, Ph.D.

14

Concerning U.S. Patent No. 8,046,721.

15

Citations to the "Hackborn Decl." are to the Declaration of Dianne Hackborn.

16

Citations to the "Kaliski Decl." are to the Declaration of Dr. Martin E. Kaliski.

17

Citations to the "Miller Decl." are to the Declaration of Jim Miller.

18

Citations to the "Plaisant Decl." are to the Declaration of Catherine Plaisant.

19

Citations to the "Sangbong Lee Decl." are to the Declaration of Sangbong Lee.

20

Citations to the "Wagner Decl." are to the Declaration of Michael J. Wagner Submitted In

21

Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction.

22

Citations to the "Wakasa Decl." are to the Declaration of Ken Wakasa.

23

Citations to the "Geklinsky Decl." are to the Declaration of Kevin Geklinsky.

24

Citations to the "Youngsoon Lee Decl." are to the Declaration of Youngsoon Lee.

25

Citations to the "Schaffer Decl." are to the Declaration of Michael W. Schaffer Regarding

26

Perspective.

27

28

**<u>Declarations Submitted With Apple's Motion</u>**

Citations to the "Mowry Decl." are to the Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647.

Citations to the "Polish Decl." are to the Declaration of Nathaniel Polish.

Citations to the "Rangel Decl." are to the Declaration of Arthur Rangel.

Citations to the "Vellturo Decl." are to the Declaration of Christopher Vellturo, Ph.D.

**Preliminary Statement**

This lawsuit is the latest engagement in Apple's ongoing campaign to monopolize the U.S. market for smartphones by suing its competitors.  Steve Jobs famously told his biographer in 2011, "I'm going to destroy Android . . . I'm willing to go thermonuclear war on this."  Apple has done its best to follow through, filing lawsuit after lawsuit against Android-based smartphone makers all around the world.

In the previous lawsuit before this Court, Apple sought a preliminary injunction based on alleged copying of Apple designs—designs that Apple claimed were the key to driving smartphone sales.  Having lost that battle, Apple now seeks a do-over.  Apple's redux of its prior motion is so complete that it repeats arguments verbatim—such as its refrain that Samsung "has systematically copied Apple's innovative technology and products, features and designs."  Yet this motion has nothing to do with designs or copying; this motion concerns alleged infringement of four narrowly-drawn feature patents by one device, the Galaxy Nexus smartphone.  In contradiction to its prior statements that smartphone sales are driven by design, Apple now contends that sales are driven by four specific features of the user interface (linking actions to structures; searching with heuristic algorithms; unlocking the phone; and spell check).  This motion fares no better than Apple's last.

Apple suggests that it invented the four technologies at issue, but the evidence shows otherwise.  Each function was well-known long before Apple filed its patents.  If those patents claim anything, it is not the fundamental technologies, but only specific implementations of those technologies.  Yet even those specific implementations were anticipated or rendered obvious by the prior art.  Apple cannot demonstrate a likelihood of success on the merits because it has no protectable intellectual property in the four asserted patents.

Even if the patents were valid, the Galaxy Nexus does not infringe any of them.  Apple's infringement analysis relies on a superficial description of functions performed by the Galaxy Nexus, not on the specific instructions within the phone.  But Apple did not invent those functions, it claims only to have invented specific implementations of those functions.  In each case, the implementations on the Galaxy Nexus are different from those claimed by Apple's patents.

1    Apple also fails to prove it will suffer irreparable harm.  Apple asserts that it will lose

2    smartphone market share, but the evidence shows that Apple has *gained* market share since the

3    release of the Galaxy Nexus and is continuing to do so.  ███████████████

4    ████████████████████████████████████████████████████

5    ██████████████████████████

6    ███████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ████████████████████████  While Apple's moving papers argue in

9    abstract terms that "ease of use" is important to *Apple's* sales, it makes no showing what drives

10   *Samsung's* sales.  Apple has shown no evidence of a nexus between the features at issue and

11   Apple's alleged harm, and Apple's own witnesses have disavowed knowledge of any such

12   evidence.  This also comports with common sense:  few people buy a phone because of how it

13   unlocks, or how it links applications to phone numbers, or which search algorithm it uses, or

14   which button it uses to correct one's spelling.

15   The balance of the hardships and the public interest also weigh against an injunction,

16   particularly at this stage of litigation.  It would be unfair to consumers to eliminate a choice of

17   smartphones from the market before the asserted patents have even been fully vetted.  In that

18   Apple's market share continues to rise, an injunction would only further its growing monopoly.

19   **Background**

20   **A.     Samsung Develops the Galaxy Nexus in Partnership With Google**

21   Samsung released the Galaxy Nexus in the United States in December 2011.  The Galaxy

22   Nexus is the latest in Samsung's Galaxy line of Android-based smartphones, the first of which

23   was released in 2009.  Android is a free, open-source mobile software platform developed by

24   Google that any developer can use to create applications for mobile devices, and that any handset

25   manufacturer can install on a device.

26   The Galaxy Nexus is the world's first smartphone to run Android version 4.0, called "Ice

27   Cream Sandwich."  The version of Ice Cream Sandwich installed on the Galaxy Nexus is designed

28   and controlled by Google.  (Sangbong Lee Decl., ¶¶ 3–4.)  Each of the four preliminary injunction

1  patents is asserted against features of Ice Cream Sandwich as installed on Galaxy Nexus.

2      As Apple notes, the Ice Cream Sandwich platform has been described as "the most

3  credible competitor to the iPhone so far."  (Motion at 7.)  Other features that set the Galaxy Nexus

4  apart from its predecessors are the larger size and higher definition of its display, its higher-speed

5  processor and browsing capabilities, increased memory capacity, and faster camera shutter.

6      **B.      Apple's Unprecedented Success Since Samsung's Release of the Galaxy Nexus**

7      Notwithstanding competition from Android products, Apple is in the midst of an

8  unprecedented period of success and growth.  With the extraordinary success of its iPhone 4S,

9  released on October 14, 2011, Apple's iPhone sales, market share, and earnings from the fourth

10  quarter of 2011 were its best since it released the first iPhone.  According to Apple's economic

11  expert, in 2011 "Apple became the most valuable brand in the world – surging ahead of Google

12  and IBM."  (Velluturo Decl., ¶ 97.)  Earlier this month, Apple was declared to be the "most

13  valuable company in the world," with its market capitalization having increased from $500 billion

14  to $600 billion between February and April 2012.  (Ex. A.)  Although Apple has not yet released

15  its earnings for the first quarter of 2012, ███████████████████████████████████████

16  ████████  (Ex. D at 63:22–64:19.)  Recent data shows that the iPhone was the "undisputed

17  smartphone champ" in the first quarter of 2012 and is continuing to "extend its market share

18  gains."  (Ex. EE (iPhones are "outselling all other smartphones combined at Sprint and AT&T and

19  selling at roughly equal volume to all Android smartphones at Verizon").)

20      **Standards for Preliminary Injunction**

21      A "preliminary injunction is a drastic and extraordinary remedy that is not to be routinely

22  granted."  *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).  "A plaintiff

23  seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is

24  likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

25  tips in his favor, and that an injunction is in the public interest."  *Winter v. National Res. Def.*

26  *Council, Inc.*, 555 U.S. 7, 20 (2008).  A "movant cannot be granted a preliminary injunction unless

27  it establishes both of the first two factors, *i.e.*, likelihood of success on the merits and irreparable

28

1  harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

2  Apple fails to satisfy any of the four factors.

<div align="center">**Argument**</div>

3

4  I.      **APPLE IS NOT LIKELY TO SUCCEED ON THE MERITS**

5          "For a patentee to establish that it is likely to succeed on the merits, it must demonstrate

6  that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least

7  one of those same allegedly infringed claims will also likely withstand the validity challenges

8  presented by the accused infringer." *Astra-Zeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed.

9  Cir. 2010). "A preliminary injunction should not issue if an alleged infringer raises a substantial

10  question regarding either infringement or validity, *i.e.*, the alleged infringer asserts an

11  infringement or invalidity defense that the patentee has not shown lacks substantial merit." *Id.*

12          In opposing a preliminary injunction, the defendant need not prove invalidity by clear and

13  convincing evidence. *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1006 (Fed.

14  Cir. 2009). Instead, "[v]ulnerability is the issue at the preliminary injunction stage, while validity

15  is the issue at trial." *Id.* A preliminary injunction is improper if there is even a "substantial

16  question of invalidity." *Id.* Once a defendant presents evidence of invalidity, the plaintiff bears

17  the burden of "responding with contrary evidence" and "persuad[ing] the court that, despite the

18  challenge presented to validity, [plaintiff] nevertheless is likely to succeed at trial on the validity

19  issue." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009).

20

21      A.      **Apple Has Failed to Show a Likelihood of Success with Respect to the '647 Patent**

22          U.S. Patent No. 5,946,647 ("the '647 patent") describes using an "analyzer server" to

23  detect defined structures in data (*e.g.*, telephone numbers or e-mail addresses) and to create links

24  to actions the user can take with respect to those structures (*e.g.*, saving a new contact or dialing a

25  phone number). Apple alleges that the Browser application in Ice Cream Sandwich infringes

26  claims 1 and 8 of the '647 patent.

27          As described in detail in the Declaration of Dr. Geoff A. Cohen, the asserted claims of the

28  '647 patent are anticipated by at least three separate pieces of prior art. In addition, the

1  declarations of Google engineers Cary Clark and Dianne Hackborn make clear that the Galaxy

2  Nexus does not infringe claims 1 or 8.

### 1.   The '647 Patent Requires Claim Construction

#### (a)   "analyzer server"

5  Claims 1 and 8 each require "an analyzer server for detecting structures in the data, and for

6  linking actions to the detected structures." ('647 Patent at 7:16–17.) The Court must decide, as a

7  preliminary matter, whether the "analyzer server" must be separate from the client application that

8  contains the data. In ITC Investigation No. 337-TA-710 (the "710 Investigation"), cited in the

9  moving papers, Apple and HTC agreed to construe "analyzer server" as "a program subroutine

10  that receives data from a document having recognizable structures, and uses patterns to detect the

11  structures." (Mowry Decl., ¶ 32.) Because Apple and HTC stipulated to the construction, the

12  Administrative Law Judge did not independently construe it. (Mowry Decl., Ex. 15 at 126.)

13  On March 19, 2012, the Northern District of Illinois (Judge Richard A. Posner, sitting by

14  designation) construed the term "analyzer server" to mean "a server routine separate from a client

15  that receives data having structures from the client." (Cohen '647 Decl., Ex. K at 10.) Judge

16  Posner's construction requires the "analyzer server" to be *separate* from the application (client)

17  that contains the data. This construction is consistent with the '647 patent specification, which

18  depicts the "analyzer server" (part of "Program" 165) as separate from the "application" (167), as

19  shown in Figure 1:



24  Judge Posner's construction is more consistent with the intrinsic evidence and should be applied

25  here. (Cohen '647 Decl., ¶¶ 78–79.)

#### (b)   "linking actions to the detected structures"

27  In the 710 Investigation, "linking actions to the detected structures" was construed to mean

28  "linking detected structures to the computer subroutines that cause the CPU to perform a sequence

1 of operations on the particular structures to which they are linked." (Mowry Decl., ¶ 32.) Judge

2 Posner construed this term to mean "creating a specified connection between each detected

3 structure and at least one computer subroutine that causes the CPU to perform a sequence of

4 operations on the detected structure." (Cohen '647 Decl., Ex. K at 10–11.)

5      Once again, Judge Posner's construction is more consistent with the intrinsic evidence.

6 (*Id.*, ¶¶ 81-82.) The '647 specification makes clear that "linking" is accomplished through

7 conventional pointers. ('647 patent at 4:67–5:5.) Linking by pointers means storing the memory

8 address of the code that performs the action relevant to the detected structure, thus creating a

9 "specified connection." (Cohen '647 Decl., ¶ 242.) Apple's proposed construction, by contrast,

10 defines "linking" tautologically as "linking," which provides no guidance regarding what kind of

11 operation the claim limitation requires.

12      **2.**    **The '647 Patent Is Invalid**

13      The linchpin of Apple's claim of validity is that claims 1 and 8 were found not invalid in

14 the 710 Investigation and were allowed in the pending reexamination proceedings. (Mowry Decl.,

15 ¶¶ 88–90.) Neither of these events eliminates the substantial questions in this case regarding the

16 invalidity of the '647 patent.

17      Notably, Claims 1 and 8 survived these separate challenges based on inconsistent claim

18 constructions. Although Apple stipulated to a broad construction of "analyzer server" in the 710

19 Investigation, during the later reexamination it urged a narrow construction. The PTO stated that

20 claims 1 and 8 were "confirmed due to the narrow claim language of the term 'analyzer server' as

21 defined in the '647 specification." (Cohen '647 Decl., Ex. L at 2.) It follows that claims 1 and 8

22 would not have survived reexam if "analyzer server" had been construed more broadly, as Apple

23 had stipulated in the 710 Investigation, and as it argues here.

24      Apple's analysis also does not account for Judge Posner's more recent construction of

25 these terms. In addition, several pieces of prior art analyzed by Dr. Cohen, including Newton and

26 Sidekick, were not presented during the 710 Investigation or the reexamination.

27

28

As described in detail in the Cohen Declaration, claims 1 and 8 of the '647 patent are anticipated or rendered obvious by a number of references, including Newton, Sidekick, and United States Patent No. 5,859,636 to Pandit ("Pandit").

**(a)** <u>**Newton Programmer's Guide Anticipates the '647 Patent**</u>

The Newton was an early tablet computer developed by Apple.  The *Newton Programmer's Guide* was published no later than 1994.  (Cohen '647 Decl., ¶ 135.)  The *Newton Programmer's Guide* discloses an Intelligent Assistant system service, which contextually parses a phrase entered by a user and matches the phrase to an action  (*Id.*, ¶¶ 142–144.)  For example, if the user wrote "Call Bob," Newton would detect those words and give the option to dial a phone number associated with Bob.  (*Id.*, ¶ 144.)  When the user pressed an Assist button, the Intelligent Assistant completed the matched action.  (*Id.*, ¶ 151.)  *Newton Programmer's Guide* discloses every element of claims 1 and 8 of the '647 patent.  (Id., ¶¶ 135–154.)

**(b)** <u>**Sidekick Anticipates the '647 Patent**</u>

Sidekick was a software utility sold in the United States by Borland International beginning in 1983.  (Cohen '647 Decl., ¶ 118.)  Sidekick's Dialer feature detected phone numbers in computer data and linked those numbers to a subroutine that allowed the user to select the number and dial it using a modem.  (*Id.*, ¶ 127.)  Sidekick discloses each limitation of claims 1 and 8 of the '647 patent.  (*Id.*, ¶¶ 118-134.)

**(c)** <u>**Pandit Anticipates the '647 Patent**</u>

Pandit issued January 12, 1999, based on an application filed December 27, 1995.  It disclosed a system for recognizing a predetermined class of text, such as a telephone number, fax number, or date, in a document, and then selecting and running operations relevant to that class of text.  (*See* Cohen '647 Decl., ¶ 205; Ex. QQ)  Pandit discloses every element of the asserted claims.  (*Id.*, ¶¶ 200–221.)

During reexamination of the '647 patent, the PTO found that claims 1 and 8 were anticipated by Pandit.  (*See id.*, Ex. M at 5–6.)  The PTO allowed claims 1 and 8 only after applicants submitted a declaration to swear behind Pandit.  (*See id*.)  However, Apple's evidence of prior conception and reduction to practice is insufficient to establish a date of invention of all

1    elements of the claims.  (*Id.*, ¶ 201.)  Accordingly, claims 1 and 8 are invalid in light of Pandit as

2    well.  At a minimum, Pandit is evidence of simultaneous invention that further supports invalidity

3    of the asserted claims.  *See Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l, LLC*, 634 F. Supp. 2d

4    1024, 1036 (N.D. Cal. 2008).

5            **3.        The Galaxy Nexus Does Not Infringe the '647 Patent**

6                    **(a)        The Galaxy Nexus Does Not Include an "analyzer server"**

7            Under Judge Posner's construction, an "analyzer server" is a server routine that is *separate*

8    from the client that provides the data.  In Ice Cream Sandwich, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Clark Decl., ¶¶ 4–17.)

10   Galaxy Nexus therefore does not have an "analyzer server" under Judge Posner's construction.

11   (Cohen '647 Decl., ¶¶ 91–96.)

12           Under the construction used in the 710 Investigation, an "analyzer server" was "a program

13   subroutine that receives data from a document having recognizable structures, and uses patterns to

14   detect the structures."  In its Motion, Apple does not and cannot identify any single program

15   subroutine that performs all of those functions.  Dr. Mowry points to a number of methods in

16   Galaxy Nexus that detect structures, and a number of other methods that he contends create links

17   to actions, but he does not identify anything that does both.  (Mowry Decl., ¶¶ 67–73.)  Thus there

18   is no "analyzer server" under this construction either.  (Cohen Decl., ¶¶ 89–90.)

19
20                   **(b)        The Galaxy Nexus Does Not "link[] actions to detected
                              structures"**

21           Under Judge Posner's construction, "linking actions to detected structures" requires a

22   "specified connection" to a subroutine.  Under the 710 Investigation's construction, this limitation

23   requires "linking" detected structures to subroutines.  Under either construction, the "analyzer

24   server" links specific actions to the detected structures prior to user selection.

25           The implementation in the Galaxy Nexus is fundamentally different.  There are no

26   "specified connections" or "links" to subroutines in the Galaxy Nexus because ▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Clark Decl., ¶¶ 6–17.) ▮▮▮▮▮

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1　██████████████████████████████████████████████████████

2　██████████████ (*Id.*; Hackborn Decl., ¶¶ 4–8.) ████████████

3　██████████████████████████████████████████████████████

4　████ there is no "link" between the structure and any subroutine.  (Cohen '647 Decl., ¶¶ 98–107.)

**B.　Apple Has Failed to Show a Likelihood of Success with Respect to the '604 Patent**

U.S. Patent No. 8,086,604 ("the '604 patent") describes a system for searching for information in a network.  The claimed system requires two or more heuristic modules that each search a different area of the database using a different heuristic search algorithm.  Apple asserts claims 6 and 19 of the '604 patent against the Quick Search function of Ice Cream Sandwich.

As described in detail in the Declaration of Dr. Jaime Carbonell, the asserted claims of the '604 patent are anticipated or rendered obvious by several prior art references, two of which are discussed below.  Furthermore, Apple does not even identify what search algorithms within Ice Cream Sandwich allegedly satisfy the claim limitations.  The declaration of Google engineer Björn Bringert confirms that the Galaxy Nexus does not infringe the asserted claims.

**1.　The '604 Patent Requires Claim Construction**

**(a)　"each heuristic module . . . employs a different, predetermined heuristic algorithm"**

Claim 6 requires that each module in the apparatus use a different search algorithm:  "a plurality of heuristic modules . . . wherein:  *each* heuristic module corresponds to a respective area of search and employs a different, predetermined heuristic algorithm."  ('604 Patent at 8:30–35 (emphasis added).)  The plain language of this limitation requires that, however many heuristic modules there are, each one must use a different algorithm.  (Carbonell Decl., ¶ 98.)  The specification also confirms that each search algorithm in the system must be different:  "*[t]he heuristic of each plug-in module is different*."  ('604 patent at 5:13–14 (emphasis added).)

Apple's expert, Dr. Polish, applied a construction that contradicts the claim language and the specification.  He contends that no matter how many modules are in the device, this limitation is satisfied so long as just *two* modules are different.  (Ex. E at 73:20–76:25.)  Under Dr. Polish's

1    proposed construction, the Court should ignore any additional modules, even if they repeat the

2    same search algorithms.  But "each" means "each."  Courts have consistently held that when a

3    claim limitation requires "each" element must satisfy a condition, every such element in the device

4    must satisfy that condition.  *See, e.g.*, *In re Skvorecz*, 580 F.3d 1262, 1267–68 (Fed. Cir. 2009)

5    (claim requiring "at least two wire legs" where "each wire leg" had an offset was not anticipated

6    by reference in which two, but not all, wire legs had an offset); *see also Board of Regents of the*

7    *Univ. of Tex. Sys. v. BENQ America Corp.*, 533 F.3d 1362, 1371–73 (Fed. Cir. 2008).

8        Because every algorithm must be different, Apple has not met its burden of proof because

9    it did not even analyze every search algorithm in the Galaxy Nexus.  Alternatively, if only two

10   algorithms must be different, as Apple contends, Apple cannot show a likelihood of success

11   because that is not novel.

12               **2.       The '604 Patent Is Invalid**

13                    **(a)      Claim 6 Is Anticipated by WAIS**

14        Under Apple's construction that only two algorithms need be different, claim 6 of the '604

15   patent is anticipated by the Wide Area Information Server protocol ("WAIS").[1]  (Carbonell Decl.,

16   ¶¶ 111–138.)  WAIS was a client-server search system that was in public use by the early 1990s.

17   (*Id.*, ¶ 111.)  WAIS allowed "[u]sers on different platforms [to] access personal, company, and

18   published information from one interface."  (*Id.*, Ex. GG.)  The user could select multiple search

19   areas, including databases located on remote servers or the user's local computer, and enter search

20   terms.  (*Id.*, Exs. GG, II, KK.)  The selected databases then "try to find documents that contain

21   those words and phrases and ranks then [sic] based on heuristics."  (*Id.*, Ex. GG.)  Some of these

22   searches used different methods, such as searching for synonyms or for words that sound alike.

23   (*Id.*, ¶¶ 125–130.)  WAIS thus practiced every limitation of claim 6 of the '604 patent.

24

25   _____

26        [1]   Under the alternative construction that every module needs to be different, it would have
     been obvious to a person of ordinary skill in the art that WAIS could be configured to meet all the
27   limitations of claim 6—for example, by limiting the search to two different areas that used
     different search methods.  (Carbonell Decl., ¶ 127.)
28

             **(b)**      <u>**Claim 6 Is Anticipated by Legall**</u>

United States Patent No. 6,005,565 to Legall, *et al.* ("Legall") issued on December 21, 1999.  (Carbonell Decl., Ex. FF.)  Legall describes a "power search tool that enables a user to search an electronic program guide and other information resources with one search."  (*Id.* at ¶ 145.)  For example, Legall taught using this search tool on a TV to search for information on the TV's electronic program guide and on a variety of Internet search engines with a single search.  (*Id.* at ¶ 149.)  Like WAIS, Legall disclosed all of the limitations of claim 6 of the '604 patent.  (*Id.*, ¶¶ 145–159.)

             **(c)**      <u>**Claim 19 Is Obvious in Light of Either WAIS or Legall**</u>

Claim 19 adds the further limitation of incremental search functionality—*i.e.*, the system begins searching while the user is still typing.  ('604 patent at 10:17–22.)  Such incremental search functionality was well known in the art by the priority date of January 5, 2000.  (Carbonell Decl., ¶ 140.)  Researchers at MIT documented this functionality as early as 1978, and it was used in Microsoft's WordPerfect 5.2, which was released on November 30, 1992.  (*Id.*, ¶ 142.)  It would have been obvious for a person of ordinary skill in the art to use any of the known techniques for incremental search functionality in combination with either WAIS or Legall.  (*Id.*, ¶¶ 140–144, 161–162.)

             **3.**      <u>**The Galaxy Nexus Does Not Infringe the '604 Patent**</u>

             **(a)**      <u>**Apple Has Not Identified a Single Algorithm, Let Alone a "heuristic algorithm," in the Galaxy Nexus**</u>

The heart of the '604 patent is something called "heuristic modules" containing "heuristic algorithms."  Apple contends that the Galaxy Nexus has these "heuristic modules," but Dr. Polish could not define "heuristic."  At his deposition, Dr. Polish testified that "'heuristic' means a lot of different things," and could be understood only by reference to specific examples.  (Ex. E at 32:21–33:24, 44:3–48:22.)  This "I know it when I see it test" is like contending that Apple has patented an "elegant module"—the definition lies only in the eye of the beholder.  Such vagaries cannot support a claim of infringement.

1    Indeed, Dr. Polish's declaration does not contain a single example of any search algorithm

2  used in the Galaxy Nexus.  When asked at deposition, Dr. Polish could not describe any of the

3  algorithms.  (Ex. E at 111:3–112:17.)  Nor does Dr. Polish's declaration contain any explanation

4  of why, in his opinion, the unstated algorithms on which he bases his opinion are "heuristic."

5  When asked why he did not explain what made the accused search function a "heuristic" search,

6  Dr. Polish testified that he "didn't think it was necessary to prove it."  (Ex. E at 107:23–108:8.)  A

7  conclusory expert declaration devoid of supporting facts is insufficient to demonstrate that Apple

8  will likely prove infringement.  *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d

9  1042, 1046 (Fed. Cir. 2000).  For this reason alone, Apple's motion should be denied.

10

11    **(b)**    **Apple Has Failed to Show That "each heuristic module . . .**
                 **employs a different, predetermined heuristic algorithm"**

12    Apple cannot prove that each module in the Galaxy Nexus uses a different algorithm

13  because Apple did not even look at each module.  While Dr. Polish identified eight purported

14  heuristic modules, he limited his review to only *three* of those.  (Polish Decl., ¶¶ 20–22.)  At

15  deposition, Dr. Polish admitted that he does not know whether the other five purported modules

16  use different heuristic algorithms because he did not study them.  (Ex. E at 109:8–110:6.)

17    Apple contends that as long any two modules use different algorithms, that is sufficient.

18  (Ex. E at 73:20–76:25.)  Apple is apparently relying on the rule that addition of other elements to

19  an accused device does not avoid infringement if all of the claim elements are also present.  But if

20  the accused device includes additional elements that are *inconsistent* with the claim limitations, it

21  does not infringe.  *See Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed.

22  Cir. 2001); *Nash v. Microsoft Corp.*, 2005 WL 5912091, at *11 (S.D. Tex. Apr. 1, 2005); *Scanner

23  Techs. Corp. v. Icos Vision Sys. Corp.*, 2003 WL 1961565, at *1 (S.D.N.Y. Apr. 28, 2003).  Here,

24  the claim language requires that each module employs a different algorithm.  Apple cannot

25  conveniently pick two modules that are different and ignore the others; inclusion of even one

26  module that does not use a different algorithm vitiates this claim limitation.  See *Skvorecz*, 580

27  F.3d at 1267–68; *Board of Regents*, 533 F.3d at 1371–73.

28

Moreover, even as to the three modules Dr. Polish analyzed, his declaration does not identify *any* differences between the algorithms.  At deposition, he could not explain what the purported differences were.  (Ex. E at 112:6–17.)  Apple has not presented any facts to support its assertion that even two—much less all eight—algorithms are different.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████  (Bringert Decl., ¶ 7.)  Apple therefore cannot show a likelihood of success on proving infringement of the '604 patent.

### C.   Apple Has Failed to Show a Likelihood of Success with Respect to the '721 Patent

U.S. Patent No. 8,046,721 ("the '721 patent") describes unlocking an electronic device by moving an "unlock image" over a touch screen display.  Apple asserts claims 7, 8, 12, and 15 of the '721 patent against one of several screensaver interfaces in Ice Cream Sandwich.  The idea of unlocking an electronic device using gestures on a touch screen is not novel.  As set forth in the Declaration of Dr. Cohen, at least two separate prior art references anticipate or render obvious every element of the asserted claims.  In any event, as described in the Cohen Declaration and the declaration of Google engineer Jim Miller, the Galaxy Nexus does not implement unlock functionality in the way required by the '721 patent, and therefore does not infringe.

### 1.   The '721 Patent Is Invalid

#### (a)   Plaisant Anticipates All Asserted Claims

In 1991, Catherine Plaisant and Daniel Wallace published a video and accompanying paper titled "Touchscreen Toggle design" ("Plaisant").  (Plaisant Decl., Exs. D, E.)  Coincidentally, employees from Apple saw demonstrations of Plaisant's work at the University of Maryland.  (*Id.*, ¶ 6.)  The Plaisant paper and video demonstrated six different methods for using a touch screen to turn a device on or off.  Two of these involved dragging one's finger across the screen, the "slider toggle" (lower left) and "lever toggle" (lower right):



(*Id.*, Ex. D at 2.)

Plaisant anticipates every element of the asserted claims of the '721 patent.  (Cohen '721 Decl., ¶¶ 111–124.)  Importantly, while the Plaisant paper was cited art during prosecution of the '721 patent, the Plaisant video was not before the examiner.  Apple's expert, Dr. Balakrishnan, has conceded that the Plaisant video adds materially to the disclosures in the Plaisant paper.  (Ex. F at 238:6–239:17.)

**(b)     NeoNode Renders Obvious All Asserted Claims**

The NeoNode N1 and N1m were touch screen mobile devices released in 2004 and 2005.  (Cohen '721 Decl., ¶ 138.)  The NeoNode N1 user's guide discloses unlocking the device by sweeping a finger across the touch screen from left to right.  (*Id.*, Ex. O at 7.)  As set forth in the Cohen Declaration and accompanying exhibits, NeoNode embodied every element of the '721 patent except moving the unlock image in accordance with user input.[2]  (*Id.*, ¶¶ 138–146.)  However, it would have been obvious to a person of ordinary skill in the art that the unlock image could be moved.  (*Id.*, ¶ 147.)  In fact, NeoNode itself included a volume slider that moved in accordance with user contact.  (*Id.*, ¶ 148.)  NeoNode thus renders obvious claims 7, 8, 12, and 15 of the '721 patent.  (*Id.*, ¶¶ 149–153.)

**(c)     Plaisant in Combination with NeoNode Renders Obvious All Asserted Claims**

While either Plaisant or NeoNode separately disclose all of the elements in the '721 patent, considering both in combination leaves no doubt that the invention claimed in the '721 patent was obvious.  (Cohen '721 Decl., ¶¶ 146–149.)  Indeed, a Dutch court has already reached this

---

[2]   As with Plaisant, the NeoNode user's guide was cited art in the prosecution of the '721 patent, but the examiner did not have the opportunity to see the actual operation of the device.

1    conclusion.  In a lawsuit between Apple and Samsung in the Netherlands, Apple asserted

2    European patent no. EP 1 964 022 ("EP 022"), which is the European equivalent of U.S. Patent

3    No. 7,657,849 ("the '849 patent"), the parent of the '721 patent.  EP 022 is similar to the '721

4    patent only more narrow:  it required that the movement of the unlock image follow a "predefined

5    displayed path."  (*Id.*, Ex. F at 23:13–15, 23:40–43.)  The Dutch court found that EP 022 was

6    obvious in light of Plaisant and NeoNode.  (*Id.*, Ex. U at 34–35.)

7

8    ### (d)    All Asserted Claims Are Indefinite Because of the Undefined Term "unlock the device"

9        Each of the asserted claims of the '721 patent requires "unlocking the device."  ('721

10   Patent at 20:6, 20:49.)  But Apple's expert concedes that even when a device is "locked," some

11   functions may still be accessible.  (Ex. F at 111:3–120:16, 122:25–136:12.)  What, then, does it

12   mean for a device to be "locked" or "unlocked"?  Dr. Balakrishnan could not say.  He was unable

13   to identify which functions or how many functions must be unavailable before the device is

14   considered "locked."  Ultimately, Dr. Balakrishnan conceded that whether a device is "locked" or

15   "unlocked" depends on the *subjective intent* of the manufacturer, and possibly the user.  (Ex. F at

16   122:25–136:12.)  One of the named inventors also conceded there is no objective set of criteria for

17   determining "locked" versus "unlocked."  (Ex. L at 140:6–146:3.)  If infringement depends on

18   subjective intent, the claims are indefinite as a matter of law.  *See Datamize, LLC, v. Plumtree*

19   *Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

20   ### (e)    Claims 12 and 15 Are Indefinite Hybrid Claims

21       Claims 12 and 15 of the '721 patent are invalid for the additional reason that they combine

22   both apparatus and method limitations.  As a matter of law, such a claim is indefinite because it

23   does not reasonably apprise those skilled in the art whether infringement occurs when one creates

24   the apparatus or when one uses it.  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377,

25   1384 (Fed. Cir. 2005); *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303,

26   1318 (Fed. Cir. 2011); *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 328–31 (D.

27   Del. 2010); *Ariba, Inc. v. Emptoris, Inc.*, 2008 WL 3482521, at *6–*8 (E.D. Tex. 2008).

28       Claim 12 of the '721 patent suffers this flaw because it claims an *apparatus*, which *when*

1   *executed* by a user, *performs a method*:

2       *A computer readable storage medium* storing one or more programs, the one or
        more programs comprising instructions, *which when executed by a portable*
3       *electronic device* with a touch-sensitive display, *cause the portable electronic*
        *device to perform a method comprising*:  . . . .

4   ('721 patent at 20:36–40 (emphasis added).)  This is explicitly an invalid hybrid claim under

5   *IPXL*.  Claim 15, which depends from claim 12, is indefinite for the same reasons.

6

7           **2.      The Galaxy Nexus Does Not Infringe the '721 Patent**

8               **(a)      The Unlock Image Does Not Move "continuously"**

9           Each asserted claim of the '721 patent requires that the unlock image follow the user's

10  finger "continuously" on the touch screen display.  ('721 Patent at 19:59–60, 20:43–45.)  There is

11  no dispute that "continuous" means that the movement of the unlock image must match the

12  movement of the finger.  (Cohen '721 Decl., ¶ 91; Ex. F at 96:22–99:23, 225:7–226:24.)  A

13  movement that jumps from one position to another or that does not follow the user's input is not

14  "continuous."  (*Id.*)

15          The accused unlock image on the Galaxy Nexus does not move "continuously."  ██████

16  ██████████████████████████████████████████████████  (Miller Decl., ¶¶ 14–

17  16.)  This movement is inherently *dis*continuous.  ████████████████████████

18  ████████████████████████████████████████████████████████

19  ███████████████████████████████████████  (*Id.*, ¶¶ 11–12.)

20  The Galaxy Nexus therefore does not infringe the asserted claims.  (Cohen '721 Decl., ¶¶ 91–94.)

21              **(b)      There Is No Single "unlock image"**

22          The asserted claims of the '721 patent make clear that the "unlock image" that is initially

23  displayed on the screen must be the same image that is moved into the unlock region.  Claim 7

24  refers to contact with "an unlock image"; every subsequent reference refers to "*the* unlock image."

25  ('721 Patent at 19:27–20:9.)  Use of the definite article "the" clearly refers back to the same

26  "unlock image" previously mentioned.  "[T]he unlock image" that is moved into the unlock region

27

28

must therefore be the same "unlock image" initially displayed to the user.  (Cohen Decl., ¶ 83.)  Claim 12 follows the same pattern.[3]  ('721 Patent at 20:41–53.)

The Galaxy Nexus has two images.  The initial image displayed on the lock screen is a padlock in a small circle.  When the user touches the screen, that image disappears and is replaced by a different image of a larger, empty circle:

 

(Miller Decl., ¶¶ 7–9.)  The first image does not move; only the second image moves with user contact.  The Galaxy Nexus thus does not implement an unlock function in the same way as the '721 patent, and does not infringe.  (Cohen Decl., ¶¶ 83–90.)

### D.    Apple Has Failed to Show a Likelihood of Success with Respect to the '172 Patent

U.S. Patent No. 8,074,172 ("the '172 patent") describes a system for suggesting alternative words to a typist, for example to correct typographical errors or misspellings.  Apple asserts claims 18, 19, and 27 of the '172 patent against the predictive text functionality of Ice Cream Sandwich.  As discussed in the declaration of Dr. Martin E. Kaliski, this functionality has existed for many years; even the particular implementation described by the '172 patent is anticipated or rendered obvious by at least three separate prior art references.  In any event, as shown in the declaration of Google engineer Ken Wakasa, the Galaxy Nexus does not implement this

---

[3]  To the extent Apple relies on claim differentiation to argue that "the unlock image" can be multiple different images, that doctrine is unavailing.  Claims 14 and 15 specify the devices of claims 7 and 12, respectively, "wherein the unlock image is a single image."  ('721 Patent at 20:56–59.)  However, claim differentiation creates only a rebuttable presumption.  Here, the plain language of claims 7 and 12 leave no room to interpret "*the* unlock image" as anything other than a single image.  Claims 14 and 15 are simply redundant.

1  functionality in the same way as the '172 patent, and thus does not infringe.

2          **1.**    **The '172 Patent Is Invalid**

3          **(a)**    **Longe and Robinson Anticipate All Asserted Claims**

4       U.S. Patent Pub. No. 2006/0274051 to Longe, *et al.* ("Longe") was filed on April 17, 2006.

5  (Kaliski Decl., Ex. F.)  A related patent, U.S. Patent No. 6,801,190 to Robinson, *et al.*

6  ("Robinson") issued on October 5, 2004, more than two years before priority date of the '172

7  patent.  (Kaliski Decl., Ex. G.)  Longe and Robinson disclose an "auto-correction" keyboard for

8  small electronic devices that provides suggested word replacements as the user types, as shown in

9  the following annotated Figure 1B from Longe:



17  Pressing the space key or a punctuation key selects the Default word to replace the current

18  character string, and appends the selected punctuation mark.  (Kaliski Decl., Ex. F, ¶ [0180].)  The

19  user can also select a word from the word choice list by touching it on the touch screen.  (*Id.*,

20  ¶ [0178].)  Longe and Robinson thus disclose every limitation of claims 18, 19, and 27 of the '172

21  patent.  (Kaliski Decl., ¶¶ 139–148.)

22          **(b)**    **TextPlus User's Guide Anticipates and/or Renders Obvious All**

23                     **Asserted Claims**

24       *TextPlus[TM] for the Palm OS Version 5.5 Users Guide* ("*TextPlus User's Guide*") was a

25  printed publication available by at least August 31, 2004.  (Kaliski Decl., Ex. H.)  TextPlus

26  displayed the word being entered by the user and, in a separate area, suggested words and phrases.

27  (*Id.* at 9.)  Users could select words by tapping them or by entering a space or punctuation mark.

28  (*Id.* at 9–10.)  *TextPlus User's Guide* thus discloses every element of claim 27 of the '172 patent.

1    (Kaliski Decl., ¶¶ 149–153.)

2    It also discloses every element of claims 18 and 19 except displaying the current character

3    string in the second area.  (*Id.*, ¶ 127.)  However, this addition would have been obvious to a

4    person of ordinary skill in the art.  (*Id.*, ¶ 154.)  In fact, earlier versions of the TextPlus software

5    included this functionality.  (*Id.*, ¶¶ 128, 162.)

6                  **(c)    King Renders Obvious All Asserted Claims**

7    U.S. Patent No. 5,953,541 to King, *et al.* ("King") issued on September 14, 1999.  (Kaliski

8    Decl., Ex. J.)  King discloses a reduced keyboard implemented on a touch screen display, with a

9    "disambiguating system" for identifying which words the user intended to type.  (*Id.*, at 1:9-12.)

10   The user could select any of the words in the selection list by touching them, or by choosing the

11   "Select" button or a punctuation mark.  (*Id.*, at 10:34–53, 11:20–23, 22:30–38.)

12   The only difference between King and the asserted claims is that King always displays in

13   the first area the first entry from the recommended word list, even if that is not exactly what the

14   user typed.  (Kaliski Decl., ¶ 130.)  However, it would have been obvious to a person of ordinary

15   skill in the art to display the exact character string typed by the user in a system with a more

16   precise keyboard.  (*Id.*, ¶¶ 157–161.)  King therefore renders obvious claims 18, 19, and 27 of the

17   '172 patent.

18
             **(d)    The Asserted Claims Are Invalid as a Predictable Combination**
19                   **of Known Elements**

20   The asserted claims of the '172 patent are also obvious because they are predictable

21   combinations of known elements.  If a person of ordinary skill can implement a predictable

22   variation of known elements, that variation is not patentable.  *KSR Int'l Co. v. Teleflex Inc.*, 550

23   U.S. 398, 417–18 (2007).

24   The problem the '172 patent set out to solve—more efficient ways of entering text into

25   portable devices—was well-known at the time the patent application was filed.  King was filed

26   nearly a decade before the filing date of the '172 patent and was directed to a similar problem.  In

27   the years between King and the '172 patent application, dozens of other references disclosed

28   different implementations of word completion, predictive text, or spell checking systems.  (Kaliski

1  Decl., ¶¶ 168–174.)  The '172 patent simply takes this well-known function of word

2  recommendation, and implements it using well-known functions of a touch-screen device.  This

3  combination of known elements is obvious under *KSR*.  (*Id.*, ¶¶ 183–185.)

4  <center>**(e)**   <u>**Claims 18 and 27 Are Indefinite Hybrid Claims**</u></center>

5  Claims 18 and 27 of the '172 patent are indefinite because they contain both apparatus and

6  method limitations.  *IPXL*, 430 F.3d at 1384.  Claim 18 describes an *apparatus* that performs

7  certain *method steps* when *activated by user*:

8  > *A graphical user interface* . . ., comprising:

9  > a first area of the touch screen display *that displays a current character string*
> *being input by a user* with the keyboard . . . .

10  > wherein;

11  > *the current character string in the first area is replaced* with the suggested
> replacement character string *if the user activates a key on the keyboard*

12  > associated with a delimiter . . . .

13  ('172 Patent at 12:49–63 (emphasis added).)

14  Claim 27 similarly describes an *apparatus* that, *when executed* by a user, *performs a*

15  *method* in response to *user inputs*:

16  > *A portable electronic device*, comprising . . .

17  > computer readable memory comprising instructions *that, when executed* by the one
> or more processors, *perform operations comprising*:

18  > *receiving a plurality of user inputs* . . . and displaying a current character string *as*
> *input by the user*, . . . [and]

19  > *in response to the further user input, replacing* the current character string . . . .

20  ('172 patent at 14:35–51 (emphasis added).)  Claims 18 and 27 are thus indefinite hybrid claims.

21

22  <center>**(f)**   <u>**Claims 19 and 27 Are Indefinite Because They Do Not Disclose**</u>
<u>**the Claimed Algorithms**</u></center>

23  When claims neither disclose structure nor have a "well-understood structural meaning in

24  the art," they must be construed as means-plus-function terms under 35 U.S.C. § 112 ¶ 6.  *Mas-*

25  *Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213-15 (Fed. Cir. 1998).  Claim 19

26  ("instructions for") and claim 27 ("instructions that") fall squarely into this category.

27  "In a means-plus-function claim in which the disclosed structure is a computer, or

28  microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general

1   purpose computer, but rather the special purpose computer programmed to perform the *disclosed*

2   *algorithm*."  *WMS Gaming Inc. v. International Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir.

3   1999) (emphasis added).  The '172 patent does not disclose any algorithm to perform the

4   "instructions" limitations, it only describes a function or result that one of ordinary skill in the art

5   could implement in a myriad of ways.  Claims 19 and 27 are therefore indefinite.  *See Aristocrat*

6   *Techs. Australia v. International Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

7                    **2.      The Galaxy Nexus Does Not Infringe the '172 Patent**

8                         **(a)      The Galaxy Nexus Does Not Infringe Claims 18 or 19**

9          Claims 18 and 19 each require giving the user two options:  *keep* the current character

10   string or *replace* it with a suggested character string.  ('172 Patent at 13:1–2, 13:30–32.)  The

11   Galaxy Nexus *never* keeps the current character string, it always replaces that string.

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████  (Wakasa

18   Decl., ¶¶ 9–10.)

19   ████████████████████████████████████████████

20   █████████████████████████████   By contrast, Apple's two options (keep or replace) require

21   two separate commands.  The Galaxy Nexus thus represents a fundamentally different

22   programming choice, and does not infringe claims 18 or 19 of the '172 patent.  (Kaliski Decl.,

23   ¶¶ 98–99, 103–104.)

24                         **(b)      The Galaxy Nexus Does Not Infringe Claim 27**

25          Claim 27 is directed to *instructions* that perform certain operations.  Apple cannot

26   demonstrate a likelihood of success on this claim because its expert, Dr. Singh, did not even look

27   at the instructions.  Dr. Singh conceded that he never reviewed the accused source code and does

28

1  not have an understanding of the algorithms used in Ice Cream Sandwich.  (Ex. H at 37:2–39:6.)

2  Apple cannot show that the instructions infringe without even addressing them.

3  **II.      APPLE HAS FAILED TO PROVE IRREPARABLE HARM**

4          Apple's claim of irreparable harm is based on dire rhetoric unsupported by facts.  Apple

5  presents an industry at a "critical juncture," in which sales of the Galaxy Nexus will irrevocably

6  tip the balance between the Android and iOS platforms during this lawsuit.  Apple's witnesses and

7  documents tell a very different story.

8          The evidence shows that the iPhone is the dominant smartphone in the U.S. with a 45%

9  market share by units sold and 75% of industry profits.  (Wagner Decl., ¶¶ 25, 27–29, Figs. 1–3.) ▋

10  ███████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████

12  ██████  (Ex. DD at 353.)  In that quarter, iPhone sales were "record-breaking," with over 15

13  million sold in the U.S.  (Ex. B.)[4]  ██████████████████████████████

14  ███████████████  (Ex. D at  63:22–64:19.)

15          By contrast, in the fourth quarter of 2011, ██████████████████████████

16  ██████████████████████████  (Ex. CC at 954.)

17  ██████████████████████  (Geklinsky Decl., Ex. A.).  Given the iPhone's dominant

18  market position and the number of available Android phones, no one product is capable of causing

19  the sea change Apple predicts from the Galaxy Nexus.

20          Irreparable harm requires proof that a plaintiff will likely suffer serious and permanent

21  damage to its business, market presence, or reputation during the pendency of the lawsuit if an

22  injunction does not issue.  *See Caldwell Manuf. Co. N. Am., LLC v. Amesbury Grp., Inc.*, 2011

23  WL 3555833, *3 (W.D.N.Y. Aug. 11, 2011); *Kimberly-Clark Worldwide, Inc. v. Tyco Healthcare*

24  *Group LP*, 635 F. Supp. 2d 870, 880 (E.D. Wis. 2009).  A plaintiff must also prove that "remedies

25  _____

26      [4]  Apple's motion studiously avoids data from the 4th Quarter of 2011, which reflects sales of
    the iPhone 4S and initial sales of Galaxy Nexus, even though that information was available to

27  Apple in advance of its filing – indeed, Apple issued a press release about its sales during that
    period on January 24, 2012, before filing this motion.  (Ex. B.)

28

available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "[W]here the patent infringement has only minimally affected the plaintiffs' business, it will be more challenging to show irreparable injury," because any harm to the patentee will more likely be compensable with money damages. *Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 788 F. Supp. 2d 71, 74 (E.D.N.Y. 2011); *see also Precision Med., Inc. v. Genstar Techs. Co.*, 2011 WL 1674354, *15 (E.D. Pa. May 3, 2011). Under these well-established standards, Apple has failed to prove irreparable harm.

### A.   Apple Has Failed to Prove Irreparable Harm from Lost Market Share

The crux of Apple's claim of irreparable harm is that it will "lose market share to Samsung during the pendency of this case if the Court does not enter a preliminary injunction." (Motion at 18.) Lost market share must be proven with evidence because accepting a speculative claim "would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances." *Illinois Tool Works, Inc. v. Grip-Pak*, 906 F.2d 679, 683 (Fed. Cir. 1990).

Apple offers no data or projections showing the past or future effect of the Galaxy Nexus on its sales or market share. Instead, ██████████████████████████████████████ ████████████████████ (Ex. G at 70:1–19, 74:8–21, 110:6–111:3, 122:22–124:11, 125:8–20.) But that begs the question of whether Apple is *losing* market share. Apple's 30(b)(6) witness on irreparable harm testified ████████████████████████████████████████ ████████████████████████████████ (Ex. G at 68:4–13, 73:21–75:25, 79:6–16, 81:25–82:8, 113:24–116:11, 119:23–121:6.) Likewise, Apple's 30(b)(6) witness on sales testified ████████ ██████████████████████████████████████████████████ ██████████████ ████████████████████████████████████████████ ████████████████████████ ██████████ (Ex. D at 83:6–10.) Indeed, ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████ (Ex. J at 73:21-74:9, 118:2-6, 141:8-15.)

1    Apple's argument regarding lost market share is thus based solely on its expert. ██████

2    ████████████████████████████████████████████████████████████████████████████████████

3    ██████████████████████████████████████████████ (Ex. I at 99:16–101:15.)

4    At current sales levels, ███████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████████████

6    ███████████████████████ (Geklinsky Decl., Ex. A.) ██████████████████████████████████

7    ██████████████████████████████████████████████ (*Id.*) ████████████████████████████

8    █████████████████████████████████████████████

9    Apple's speculative and unsupported allegations of lost market share are insufficient to

10   prove irreparable harm, especially in the face of sales numbers showing the Galaxy Nexus has had

11   no meaningful impact on iPhone sales. *See Generac Power Sys., Inc. v. Kohler Co.*, 807 F. Supp.

12   2d 791, 805 (E.D. Wis. 2011) (no irreparable harm where patentee relied "only upon its status as a

13   direct competitor" of defendant); *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d

14   740, 749–50 (N.D. Ill. 2010) (evidence was "insufficient to justify injunctive relief" where

15   patentee "has not presented this court with evidence of any actual loss of market share or overall

16   sales, but instead offers conclusory affidavits based on speculation to prove these losses").

17   Contrary to Apple's speculation, ███████████████████████████████████████████████████

18   ██████████████████████████████ (Wagner Decl., ¶¶ 25, 27–28.)  Recognizing this, Apple

19   argues that "even if Apple's overall market share *increased* while the Galaxy Nexus was sold, lost

20   iPhone sales due to sales of Galaxy Nexus would result in Apple losing some additional portion of

21   market share that Apple would have enjoyed but for Samsung's infringement."  (Motion at 18

22   (emphasis in original).)  Apple has no evidence of "lost iPhone sales."  More likely, other sellers

23   of Android-based phones lost sales to the Galaxy Nexus.  But even if Apple did sell fewer phones,

24   that evidence alone would be insufficient to prove irreparable harm. *See Automated Merch. Sys.,*

25   *Inc. v. Crane Co.*, 357 Fed. App'x. 297, 302 (Fed. Cir. 2009) ("Lost sales (without more) are

26   presumed to be compensable through damages, so they do not require injunctive relief."); *Abbott*

27   *Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (same); *Travel Tags, Inc. v.*

28

1   *UV Color, Inc*., 690 F. Supp. 2d 785, 801 (D. Minn. 2010) ("lost sales" are "generally quantifiable

2   and not remediable through preliminary injunctive relief").

3         The only actual data that Apple presents regarding market share further undermines its

4   claim to irreparable harm.  Without addressing the myriad factors that affect market share in the

5   fast-moving smartphone industry, Apple argues ███████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████  (Vellturo Decl., ¶ 23.)  But ██████████

8   ████████████████████████████████████████████████████████████████████████████████████

9   ██████  (Wagner Decl., ¶¶ 24, 27, Figs. 1–3.)  More recent data shows that, ████████████████

10  ████████████████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████  (Wagner Decl., ¶¶ 25, 27–28, 35–37, Figs.

12  1–3.)  Apple's evidence of past market share "losses" not only casts doubt on its claim that it was

13  harmed at all, but also refutes Apple's claim that such harm is irreparable.  *See Advanced*

14  *Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc*., 579 F. Supp. 2d 554, 560, n.9 (D. Del.

15  2008) (denying motion for permanent injunction where patentee recaptured prior lost market

16  share); *Cummins-Allison Corp. v. Glory, Ltd.*, 2003 WL 22125212, *18 (N.D. Ill. Sept. 5, 2003)

17  (finding that one-year drop in sales did not support a finding of irreparable harm where patentee's

18  sales were projected to grow again).

19      **B.**    **Apple Has Failed to Prove Irreparable Harm from Lost Goodwill**

20        Apple asserts that Samsung's alleged infringement "erodes Apple's hard-earned goodwill,"

21  specifically by "diluting the critical distinctiveness of Apple's products and goodwill associated

22  with those products."  (Motion at 24.)  Apple cites evidence showing that its brand is valuable and

23  that it has built a reputation for innovation (Vellturo Decl., ¶¶ 96–98), but ██████████████████

24  █████████████████████████████████████████████████████  (Ex. K at 150:8–19,

25  204:12–20, Ex. G at 190:11–191:22, 197:17–23, 203:23–204:19, Ex. I at 252:25–253:15.)  To the

26  contrary, ███████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████████████████

28  ██████████████████████  (Wagner Decl., ¶¶ 48, 86–87, 94–96; Ex. G at 104:9–105:19.)  Accordingly,

1   Apple's claim to lost goodwill through the erosion of its "reputation for innovation" is based only

2   on conclusory statements and theoretical arguments from its expert, and it should be rejected.  *See*

3   *Z-Man Fishing Products, Inc. v. Renosky*, 790 F. Supp. 2d 418, 423 (D.S.C. 2011) (no irreparable

4   harm where patentee had not offered any "evidence of lost goodwill").

5
    **C.    Apple Has Failed to Prove Irreparable Harm to Its Other Product Lines and**
6   **"Ecosystem"**

7        Apple argues it will suffer lost sales of iPads, iPods, Macs and Apple TVs, digital media

8   (apps and music) and so-called "network effects in the "iOS ecosystem."  (Motion at 20–25.)

9   Again, this assumption is not based on evidence.  Apple admits it has not done anything to

10  determine or measure this.  Its 30(b)(6) witness ███████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████████████████

12  ███████████████████  (Ex. G at 136:17–137:8, 169:8–22, 172:9–25, 181:14–183:18, 184:6–

13  185:7.)  Apple's expert ███████████████████████████████████████████████████████████

14  ████████████████████████  (Ex. I at 119:9-122:7.)  Again, ████████████████████████

15  █████████████████████████████  (Wagner Decl., ¶¶ 72–73, Fig. 13, & Ex. EEE.)

16  Apple's speculation is belied by Apple's continued actual success across all its product lines, ██

17  █████████████████████████████████  (Wagner Decl., ¶¶ 76–78; Ex. G at 166:12–

18  168:19.)  ████████████████████████████████  (Wagner Decl., ¶¶ 99–100, Fig.

19  23.).

20       In discussing the so-called "critical juncture" of the market and the phenomenon of

21  "platform stickiness" (Motion at 8, 20–24),  Apple ignores the fact that ██████████████████

22  ████████████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████████████████

26  ███████████████████████████████████████████  (Wagner Decl., ¶¶ 104–08;

27  Ex. G at 144:5–146:10, 154:13–155:24; Rangel Decl., Ex. 3 at 13 (████████████████████

28  ████████████████████████████).)  Likewise, Apple's "platform stickiness" argument

1   ignores that ████████████████████████████████████████████

2   ████████████████████████████████████████████████████████

3   ████████████████   (Wagner Decl., ¶¶ 84–96; Ex. G at 83:25–84:5, 89:20–90:16, 99:1–10, 104:9–

4   105:19, Ex. J at 102:17–104:1, Ex. I at 235:18–236:8, Ex. Y at 509, Ex. Z at 165–66; Rangel

5   Decl., Ex. 1 at 56.)

6       **D.    Apple Has Failed To Prove Causation**

7       In addition to proving irreparable harm in the first place, Apple must prove that an

8   injunction would prevent that harm.  *See Winter*, 555 U.S. at 20 (movant must demonstrate "that

9   he is likely to suffer irreparable harm *in the absence* of preliminary relief" (emphasis added)).  As

10  this Court recognized in the earlier case, this requires proof of a causal connection between the

11  alleged infringement and the patentee's alleged harm.  *See, e.g.*, *z4 Techs., Inc. v. Microsoft Corp.*,

12  434 F. Supp. 2d 437, 441 (E.D. Tex. 2006) (finding no irreparable harm because "it is not likely

13  that any consumer of Microsoft's Windows or Office software purchases these products for their

14  product activation functionality").

15      In this case, Apple alleges infringement by only four of the hundreds of features that

16  comprise the Galaxy Nexus.  Apple must prove that those four features are the cause of Apple's

17  harm.  Absent that showing, there is no basis to conclude that other products that *fairly compete*

18  with Apple's iPhone, including a redesigned Galaxy Nexus without the four accused features,

19  would not continue to cause the same "harm" to Apple during the pendency of this suit, rendering

20  the injunction meaningless.

21      Apple has failed to show any nexus between Samsung's alleged infringement and Apple's

22  claimed harm.[5] ████████████████████████████████████

23  ─────────────────────────

24      [5]   While Apple continues to challenge this "nexus" requirement, Apple has never cited any
    contrary authority, and there is no such authority.  Apple has relied primarily on *i4i Ltd. P'ship v.*

25  *Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010).  (Motion at 26.)  But that case did not reject
    a nexus requirement, and even if it did it would be inconsistent with the Supreme Court's holding

26  in *Winter* that an injunction must *prevent* irreparable harm.  *i4i* specifically found the plaintiff had
    proved that "the infringing Word products rendered i4i's software obsolete, as a result of which i4i

27  changed its business model to make software that complemented Microsoft's infringing products."

28      (footnote continued)

1   ███████████████████████████████████████████ (Ex. K at 108:6–10;

2   112:20–113:12, Ex. G at 45:21–46:11, 47:9–23, 49:13–50:22, 51:15–52:1.)  Apple even

3   acknowledges there is no such link:  it claims that even with a *permanent* injunction in place,

4   Apple "would continue to be harmed even by sales of redesigned, allegedly non-infringing

5   Samsung devices."  (Motion at 21.)  This could be true only ████████████████████████

6   ███████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████

8   ██████████████████████████████████████ (Wagner Decl., ¶¶ 64–67 & Fig.

9   12; Ex. G at 55:9–11, 56:12–17, 57:23–59:3.)  And of course, this is common sense:  consumers

10  do not buy advanced smartphones based on non-core attributes like the unlock feature, any more

11  than consumers buy cars because they like the cup holder.

12          Because it has no evidence that the four accused features drive sales of the Galaxy Nexus,

13  Apple tries to show a nexus between the features of its own iPhone and its own consumers'

14  purchasing decisions.  (Motion at 26–29.)  Apple fails to make this showing as well ████████

15  ███████████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████

17  ███████████████████████████ (Rangel Decl., Ex. 3 at 25.) █████████████████

18  ███████████████████████████████████████████████████████████

19  ███████████████████████████████████████████ (Rangel Decl.,

20  Ex. 3 at 26.)  Indeed, ████████████████████████████████████████████

21  ████ (Ex. M at 95:10–20, 107:15–21.)

22          Although Apple argues that "Siri" was a primary reason why consumers purchased the

23  iPhone 4S (Motion at 27), "Siri" has nothing to do with this motion.  Apple touts Siri as "the

24  intelligent personal assistant that helps you get things done just by asking."  (Ex. X.) ████████

25  ███████████████████████████████████████████████████████████

26  _____

27  *i4i*, 598 F.3d at 861.  Apple has not alleged any comparable effect on its business here nor shown

28  any link between its claimed harm and Samsung's alleged infringement.

1   ███████████████████████████ (Ex. K at 25:20–26:24 ████████████████

2   ████████████).)  The '604 patent concerns heuristic search algorithms.  ████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████  (Ex. K at 53:13–55:1.)  Moreover, it is undisputed that the Galaxy Nexus has no

6   "personal assistant" feature comparable to Siri.  (Ex. G at 41:3–7, Ex. I at 59:1–60:25.)  As such,

7   Apple's evidence that some consumers like Siri is irrelevant to the reasons why consumers

8   purchase the Galaxy Nexus.

9   Apple also argues that the patented features drive purchasing decisions because they

10  contribute to the iPhone's "ease of use."  (Motion at 28–29.)  But Apple has no evidence that

11  consumers believe the features at issue contribute to "ease of use" or that removing those features

12  would cause any consumers to perceive a decrease in ease of use.  Apple's witnesses testified that █

13  ██████████████████████████████████████████ (Ex. K at 52:2-8.)  ███████████

14  ████████████████████████████████████████████ (Ex. K at 47:17–25,

15  50:1–5, 52:2–8, 57:6–15, 58:13–59:14, 62:24–63:12, 64:15–66:3, Ex. J at 121:16–22, 144:15–

16  147:24, Ex. G at 20:18–24, 24:13–23, 27:22–28:10, 36:4–18, 61:5–12, Ex. I at 82:13–20.)  Indeed,

17  ███████████████████████████████████████████████████████ (Ex. G at

18  22:15–23:9, 61:22–62:10.)  In light of these admissions, Apple cannot meet its burden of proving

19  that the four accused features cause its alleged harm.

20  Finally, Apple argues that causation need not be tied to the infringing features of the

21  Galaxy Nexus, but just to sales of the "product" itself.  (Motion at 25.)  Even if this were the

22  standard, and it is not, █████████████████████████████████████████████

23  ███████████████████████████ (Ex. K at 108:11–109:8, Ex. J at 33:7–17, 73:21–

24  74:9, 140:6–141:15, Ex. G at 68:4–13, 73:21–74:6, 74:23–75:25, 79:6–16, 81:25–82:8, 113:24–

25  115:6, 115:21–116:11, 119:23–121:6, Ex. I at 136:16–24.)  The fact that Apple's market share has

26  *grown* since the release of the Galaxy Nexus further undercuts any inference of causation between

27  Samsung's sales of the Galaxy Nexus and Apple's claimed harm.  *See RasterOps v. Radius, Inc.*,

28  861 F. Supp. 1479, 1497 (N.D. Cal. 1994).  Accordingly, under any standard of causation, Apple

1   has failed to show a connection between Apple's claimed harm and Samsung's alleged

2   infringement.

3       **E.**    **Apple Has Failed to Prove the Inadequacy of Monetary Damages**

4       Apple has also failed to show that its harm is not compensable through monetary damages.

5   *Nutrition 21 v. United States*, 930 F.2d 867, at 872 (Fed. Cir. 1991).  ███████████

6   ████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████

8   █████████████████  (Ex. G at 15:22–17:18, 204:23–209:15, 211:23–212:12, Ex. I at 244:13–

9   245:15.)  Nor could Apple credibly make such claims given its recent public statements reflecting

10  enormous cash reserves.  (Wagner Decl., ¶ 103 & Ex. RR.)  Evidence of Apple's growth after the

11  release of the Galaxy Nexus further proves that money damages would be an adequate remedy for

12  any harm it suffers.  *See, e.g., Travelers Express Co., Inc. v. Transaction Tracking Techs., Inc.*,

13  305 F. Supp. 2d 1090, 1095 (D. Minn. 2003) (where patentee "has not demonstrated a loss in

14  market share" and instead "has enjoyed a period of rapid growth . . . after [defendant] began

15  competing with it," money damages should be available); *Yamashita v. Wilbur-Ellis Co.*, 2006

16  WL 1320470, *6–*8 (N.D. Cal. May 15, 2006) (same).

17      Finally, Apple's claim that it would be unable to quantify any harm it suffers during this

18  lawsuit makes no sense.  If Apple can show lost sales of the iPhone, ███████████████

19  ███████████████████████████  (Wagner Decl., ¶ 117.)  Similarly, if Apple

20  proves it has lost customers across multiple product lines, ████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ███████████  (Wagner Decl., ¶ 121.)  ██████████████████████████

24  (Wagner Decl., ¶ 122.)  Apple does not explain why this type of economic analysis—regularly

25  used in business disputes—could not be used here.

26      **F.**    **Apple's Delay Belies Its Claimed Irreparable Harm**

27      Apple's delay in seeking to enjoin Samsung from selling products with the allegedly

28  infringing features further undercuts its claimed irreparable harm.  A prolonged or undue delay in

1   bringing suit or seeking a preliminary injunction tends to demonstrate that the "status quo" does

2   not irreparably harm the patentee.  *See Nutrition 21*, 930 F.2d at 872; *High Tech Med.*

3   *Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995); *see Panduit*

4   *Corp. v. Band-It-Idex, Inc.*, 2000 WL 1121554, *24 (N.D. Ill. June 27, 2000).  This is also true

5   where the patentee delayed taking action against earlier, similar products.  *See Calmar, Inc. v.*

6   *Emson Research, Inc.*, 838 F. Supp. 453, 454 (C.D. Cal. 1993).

7          The '647 patent issued in 1999, more than 12 years before Apple filed this lawsuit.  The

8   accused Browser application was part of earlier versions of Android that have been included in

9   other Samsung products since at least July 2010.  (Youngsoon Lee Decl., Ex. A.)  Apple asserted

10  the '647 patent against HTC in the 710 Investigation based on an older version of Android—but it

11  waited for years before asserting the same patent against Samsung.

12         Apple also delayed for years before seeking to enjoin Samsung's allegedly infringing

13  search functionality.  While Apple's motion relies on the more recent '604 patent, that patent is a

14  continuation of the '959 patent, which issued in January 2005.  Apple apparently contends that the

15  same Samsung functionality infringes both patents, because Apple is asserting both the '959 and

16  '604 patents in this very case.  The accused Quick Search feature has been included in Samsung's

17  other Android products since at least July 2010.  (Youngsoon Lee Decl., Ex. A.)  Yet Apple chose

18  for years not to enforce the '959 patent.

19         The '721 patent is likewise a continuation of a prior patent, the '849 patent, which issued

20  in February 2010.  While the accused unlocking feature in the Galaxy Nexus is new, Samsung's

21  Android-based products have used a variety of similar features since at least July 2010.

22  (Youngsoon Lee Decl., Exs. A, B.)  In 2010, Apple asserted the '849 patent against Android

23  products sold by HTC and Motorola.  *Apple v. High Tech Computer Corp.*, No. 10-544, Docket

24  No. 1 at 6 (D. Del. Jun. 21, 2010); *Motorola Mobility, Inc. v. Apple Inc.*, No. 10-23580, Docket

25  No. 17 at 28 (S.D. Fla. Nov. 18, 2010).  Apple has also asserted the European equivalent of the

26  '849 patent against other Samsung products (unsuccessfully).  But it has never asserted these

27  patents against Samsung in the United States.

28         **G.      Apple's Licensing Practices Show That It Will Not Suffer Irreparable Harm**

1    Apple's willingness to license its patents also weighs against a finding of irreparable harm.

2    *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008); *High Tech Med.*, 49 F.3d at

3    1557. ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████

5    (Ex. DD at 15 [Aug. 4, 2010 Presentation].)  ████████████████████████████

6    (Exs. Q–W).  Apple's licensing practices show that Apple could be compensated with money

7    damages for any alleged infringement.

8    **III.    THE BALANCE OF HARDSHIPS WEIGHS IN SAMSUNG'S FAVOR**

9    "An injunction should not be granted if its impact on the enjoined party would be more

10   severe than the injury the moving party would suffer if it is not granted."  *Litton Sys. Inc. v.*

11   *Sundstrand Corp.*, 750 F.2d 952, 959 (Fed. Cir. 1984).  "The hardship on a preliminarily enjoined

12   manufacturer who must withdraw its product from the market before trial can be devastating."

13   *Illinois Tool Works*, 906 F.2d at 683.  Here, balance of hardships favors Samsung.

14   First, as shown above, Apple has not demonstrated that an injunction will prevent its

15   claimed harm.  Apple has no evidence linking its claimed losses to the four accused features of the

16   Galaxy Nexus (or even to sales of the Galaxy Nexus more generally).  Absent that link, there is no

17   basis to conclude that Apple's harm results from Samsung's alleged infringement rather than from

18   lawful competition from the Galaxy Nexus and other products.

19   Second, weighing the equitable factors must account for the nature of the patent being

20   enforced.  As Justice Kennedy stated in his concurrence in *eBay*, "[w]hen the patented invention is

21   but a small component of the product the companies seek to produce and the threat of an

22   injunction is employed simply for undue leverage in negotiations, legal damages may well be

23   sufficient to compensate for the infringement and an injunction may not serve the public interest."

24   *eBay*, 547 U.S. at 396; *see also z4 Techs.*, 434 F. Supp. 2d at 441; *LaserDynamics, Inc. v. Quanta*

25   *Computer, Inc.*, 2010 WL 2574059, *2 (E.D. Tex. June 22, 2010).  Here, the four allegedly

26   infringing features of the Galaxy Nexus are "but a small part" of the overall product, which

27   contains hundreds of other individual function and design elements that would be eliminated from

28   the market by an injunction.

1   Finally, the evidence of Apple's growing sales and market share, including after the

2   Galaxy Nexus was released, further tips the balance of the hardships in Samsung's favor.  *See*

3   *Techradium, Inc. v. Blackboard Connect Inc.*, 2009 WL 1152985, *7 (E.D. Tex. Apr. 29, 2009).

4   **IV.**      **AN INJUNCTION WILL NOT SERVE THE PUBLIC INTEREST**

5   Apple argues that the public interest will be served by "rewarding Apple's innovation, not

6   Samsung's imitation."  (Motion at 32–33.)  However, merely owning a valid patent is not

7   sufficient to justify an injunction; such a rule "would render much of the four-part injunction

8   analysis unnecessary because it would make the likelihood of success question dispositive."

9   *Kimberly-Clark Worldwide*, 635 F. Supp. 2d at 880.  Apple has not shown any other public

10  interest that would be served by an injunction.

11  The public also has an interest in promoting competition.  *See Yamashita v. Wilbur-Ellis*

12  *Co.*, 2006 WL 1320470, at *8 (N.D. Cal. May 15, 2006) (quoting *Lear, Inc. v. Adkins*, 395 U.S.

13  653, 670 (1969)) ("[T]he Supreme Court . . . made clear long ago that 'the equities of the licensor

14  do not weigh very heavily when they are balanced against the important public interest in

15  permitting full and free competition in the use of ideas which are in reality a part of the public

16  domain.'").  Removing from the market the product described as "the most credible competitor of

17  the iPhone so far" (Motion at 7) based on alleged infringement by four of its non-core features

18  would fail to serve the public's interest in enjoying the benefits of competition, particularly in

19  light of Apple's failure to make a strong showing of likely success on the merits of its claim.  *See*

20  *American Cyanamid Co. v. United States Surgical Corp.*, 833 F. Supp. 92, 134 (D. Conn. 1992)

21  (where "the Plaintiff has not made a strong showing that it will succeed on the merits, the balance

22  between the rights granted by the patent system and free competition should be struck in favor of

23  competition" (internal quotation omitted)).

24

25

26

27

28

1

## Conclusion

2

For the foregoing reasons, Apple's Motion for a Preliminary Injunction should be denied.

3

DATED: April 23, 2012                    Respectfully submitted,

4

5                                                QUINN EMANUEL URQUHART &
                                                 SULLIVAN, LLP

6

7                                                By   /s/ Patrick M. Shields
                                                     Charles K. Verhoeven
8                                                    Kevin P.B. Johnson
                                                     Victoria F. Maroulis
9                                                    William C. Price
                                                     Patrick M. Shields
10

11                                               John Caracappa (*pro hac vice*)
                                                 Steptoe & Johnson, LLP
12                                               1330 Connecticut Avenue, NW
                                                 Washington DC 20036
13                                               TEL:  202-429-6267
                                                 FAX:  202-429-3902
14

15                                               Attorneys for Defendants
                                                 SAMSUNG ELECTRONICS CO., LTD.,
16                                               SAMSUNG ELECTRONICS AMERICA, INC.,
                                                 and SAMSUNG TELECOMMUNICATIONS
17                                               AMERICA, LLC

18

19

20

21

22

23

24

25

26

27

28