# EXHIBIT L



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,287 | 10/15/2010 | 5946647 | 031486.647 | 9354 |

77970    7590    03/27/2012

Apple Inc.
c/o Novak Druce + Quigg LLP
1000 Louisiana Street
Fifty-Third Floor
Houston, TX  77002

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 03/27/2012

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS
BRYAN CAVE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104

Date:   **MAILED**

**MAR 27 2012**

CENTRAL REEXAMINATION UNIT

## EX PARTE REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. : 90011287
PATENT NO. : 5946647
ART UNIT : 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| ***Ex Parte Reexamination Advisory Action*** | Control Number | Patent Under Reexamination |
|---|---|---|
| | 90/011,287 | 5946647 |
| | Examiner | Art Unit |
| | MARY STEELMAN | 3992 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

THE PROPOSED RESPONSE FILED *16 February 2012* FAILS TO OVERCOME ALL OF THE REJECTIONS IN THE FINAL REJECTION MAILED *16 December 2011*. Therefore, unless a timely appeal is filed, or other appropriate action by the patent owner is taken to overcome all of the outstanding rejection(s), this *ex parte* reexamination proceeding WILL BE TERMINATED and a Notice of Intent to Issue *Ex Parte* Reexamination Certificate will be mailed in due course. Any finally rejected claims, or claims objected to, will be CANCELLED.

THE PERIOD FOR RESPONSE IS EXTENDED TO RUN <u>5</u> MONTHS FROM THE MAILING DATE OF THE FINAL REJECTION.

(Extensions of time are governed by 37 CFR 1.550(c))

1. ☐ Appellant's Brief is due two months from the date of the Notice of Appeal filed on _____ (or within the extended period for response set forth above, whichever is later). See 37 CFR 1.191(d) and 37 CFR 1.192(a).

2. ☐ The proposed amendment(s) will not be entered because:
   (a) ☐ they raise new issues that would require further consideration and/or search (see NOTE below);
   (b) ☐ they raise the issue of new matter (see NOTE below);
   (c) ☐ they are not deemed to place the proceeding in better form for appeal by materially reducing or simplifying the issues for appeal; and/or
   (d) ☐ they present additional claims without canceling a corresponding number of finally rejected claims.
   NOTE: _____

3. ☐ Patent owner's proposed response filed _____ has overcome the following rejection(s):_____

4. ☐ The proposed new or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

5. ☒ The a)☐ affidavit/declaration, b)☐ exhibit, or c)☒ request for reconsideration has been considered but does NOT overcome the rejection(s) because: <u>*See Continuation Sheet*</u> .

6. ☐ The affidavit/declaration or exhibit will NOT be considered because it is not directed SOLELY to issues which were newly raised by the Examiner in the final rejection.

7. ☐ For purposes of Appeal, the proposed amendment(s) a)☐ will not be entered or b)☐ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.

   The status of the claim(s) is (or will be) as follows:
   Claim(s) patentable and/or confirmed: _____
   Claim(s) objected to: _____
   Claim(s) rejected: _____
   Claim(s) not subject to reexamination: _____

8. ☐ The drawing correction filed on _____ a)☐ has b)☐ has not been approved by the Examiner.

9. ☐ Note the attached Information Disclosure Statement(s), PTO-1449, Paper No(s) _____.

10. ☐ Other:_____

| | /Mary Steelman/ Primary Examiner Art Unit: 3992 |
|---|---|

cc: Requester (if third party requester)

Continuation of 5. But does not overcome the rejection(s) because:  See Attached.

Application/Control Number: 90/011,287                                   Page 2
Art Unit: 3992

**Attachment to Advisory Action** - In response to Patent Owner's Remarks After Final

(02/16/2012)

In general Examiner finds the arguments to be repetitive.  Claim language is broad.  Patent

Owner argues for a narrow interpretation of certain terms such as "linking," while arguing for a

broad interpretation of the explicitly defined and claimed term "analyzer server."  Examiner is

not persuaded.

Claims 1-34 are subject to reexamination.  Claims 1-12, 14 and 32-34 have been confirmed due

to the narrow claim language of the term "**analyzer server**" as defined in the '647 Specification..

As excerpted from Non Final Office Action 06/27/2011, pp. 7-8 & 27-28:

An analyzer server is described ('647, 3: 55-67; 4: 59-64) as a subroutine within a program,

which receives data from a document that has recognizable patterns. The analyzer server

comprises one or more pattern analysis units, such as a parser and grammars (grammar file) or

fast string search function and dictionaries (string library), which use patterns to parse a

document for recognizable structures. "Parser retrieves a grammar from grammar file and parses

text using the retrieved grammar." (Alternately, a fast string search function retrieves 1070 the

contents of string library 420, detects [identifies] 1080 the strings in the data identical to those in

Application/Control Number: 90/011,287                                    Page 3
Art Unit: 3992

the string library 420 and links 1090 actions associated with the library string to the detected

string."


('647, 6: 43-47) The **analyzer server links actions associated with the responsible pattern** (as

retrieved from grammar file/string library) **to the detected structure, using conventional**

**pointers**: "Parser retrieves from grammar file 320 pointers attached to the grammar and attaches

the same pointers to the identified structure." ('647, 4:67 - 5: 2)  "...a parsing process retrieves

1030 grammars, detects 1040 structures in the data based on the retrieved grammars, and links

1050 actions associated with each grammar to each structure detected by that grammar." ('647, 6:

39-42)  (emphasis added)



Examiner understands that Patent Owner traverses (Remarks 02/16/2012, p. 2) the reasons for

the confirmation. Examiner maintains the position that Analyzer Server is narrowly defined.  See

Final Office action 12/16/2011, pp. 7-10.



**1. Patent Owner** argues (pp. 2-4) that neither Pensoft nor Nokia are enabled disclosures, i.e.,

they do not enable persons of ordinary skill to make the invention without undue

experimentation.  Pensoft is a handbook which "explains how Perspective works... Pensoft is not

directed at how Perspective operates, but rather provides step-by-step instructions performed by

a user to use the functionality of Perspective. See, e.g., Pensoft, p. 5.   Pensoft does not describe

how the software

Application/Control Number: 90/011,287                                    Page 4
Art Unit: 3992

itself operates sufficiently to find that it discloses the claimed invention. Simply disclosing how

a user performs the steps of a function does not provide sufficient guidance to one of ordinary

skill in the art as to how the software performs the function. Given that software can require

hundreds of hours to program, the quantity of experimentation for one of ordinary skill in the art

would be an undue burden. Pensoft does not disclose how the program actually performs the

interpretation of handwriting...only the steps the user needs to perform in order to have

handwriting interpreted. Thus, the burden on one of ordinary skill in the art would be too great

due to the amount of experimentation and lack of guidance.

*Nokia,* 1:1-9. Nokia... patent is directed to the interactions of the user and provides very little

guidance as to how the telephone actually performs the described functionality. In fact, Nokia

provides no figures showing the steps that are performed for calling or storing a telephone

number. Nokia discloses six circuits and one switch means for performing various functions. *See*

*Nokia,* 9:11-10:8. The Office Action asserts that these circuits teach linking. *See Office Action,*

pp. 17 and 18. But Nokia provides no figures showing the schematics of such circuits or switch

means. Thus, Nokia provides insufficient guidance as to how one of ordinary skill in the art

would design such circuits and switch means. As a result, the amount of experimentation

necessary would pose an undue burden.

**Examiner** has noted that claim language is broad.  As an example, see Non Final Office Action

06/27/2011, pp. 7-9 (discussions related to the broad language of "detecting"; "selection of the

Application/Control Number: 90/011,287                                    Page 5
Art Unit: 3992

detected structure and a linked action"); Final Office Action, 12/16/2011, pp. 10-13 (linking).

**Examiner** cites to Final Office Action 12/16/2011, pp. 2-7 for a discussion directed to NOT

importing limitations from the specification.

The nature of the invention, in general, is to detect a pattern in code and link the pattern to an

action. These functions were well known in the prior art. Scanning (parsing/detecting) a pattern

in code and linking code are classic college level computer science student exercises. One with a

college degree in computer science or someone with several years of experience in software

coding would be able to predictably perform these functions. As the provided prior art shows,

working examples of the combination of such functions exist. **Examiner** asserts that the

quantity of experimentation needed to make or use the invention is nominal and well within the

abilities of one of skill in the art.

It is improper to conclude that a disclosure is not enabling based on an analysis of only one of

the above factors while ignoring one or more of the others. The examiner's analysis must

consider all the evidence related to each of these factors, and any conclusion of nonenablement

must be based on the evidence as a whole. In re Wands,  858 F.2d at 737, 740, 8 USPQ2d at

1404, 1407.

Application/Control Number: 90/011,287                                        Page 6
Art Unit: 3992

The fact that experimentation may be complex does not necessarily make it undue, if the art

typically engages in such experimentation. In re Certain Limited-Charge Cell Culture

Microcarriers, 221 USPQ 1165, 1174 (Int'l Trade Comm'n 1983),   aff'd. sub nom.,

Massachusetts Institute of Technology v. A.B. Fortia, 774 F.2d 1104, 227 USPQ 428 (Fed. Cir.

1985). See also In re Wands, 858 F.2d at 737, 8 USPQ2d at 1404. The test of enablement is not

whether any experimentation is necessary, but whether, if experimentation is necessary, it is

undue. In re Angstadt, 537 F.2d 498, 504, 190 USPQ 214, 219 (CCPA 1976).


"As a general rule, where software constitutes part of a best mode of carrying out an invention,

description of such a best mode is satisfied by a disclosure of the functions of the software. This

is because, normally, writing code for such software is within the skill of the art, not requiring

undue experimentation, once its functions have been disclosed. . . . [F]low charts or source code

listings are not a requirement for adequately disclosing the functions of software." Fonar Corp.,

107 F.3d at 1543, 1549, 41 USPQ2d at 1801, 1805 (citations omitted).


The prior art is enabling with respect to the claims at issue and finds that there is considerable

direction and guidance in the teachings; there was "a high level of skill in the art at the time the

application was filed"; and "all of the methods needed to practice the invention were well

known." (See 858 F.2d at 740, 8 USPQ2d at 1406.  Patent Owner arguments are not persuasive.

**Examiner** notes that the enablement argument has not been previously argued. **Examiner**

maintains that prior art Pensoft and Nokia are enabling teachings.

**2. Patent Owner** argues (pp. 4-6) that Pensoft does not disclose a linked action.   **Patent**

**Owner** argues (pp. 4-6) that an "opening operation" is not a "linked action" as defined by the

'647 patent's specification.   **Patent Owner** opines that Examiner's assertion that the opening of

the profile of an item anticipates the claimed linked action (Office Action, at pp. 13-14) is based

on an incorrect understanding of the following sentence: "An action may specify opening

another application, loading the identified structure into an appropriate field, and closing the

application." *'647patent,* at 2:34-36.  **Patent Owner** asserts that the '647 patent (2: 30-41)

expressly defines a linked action: "Upon detection of a structure, the analyzer server links

actions to the detected structure. Each action is a computer subroutine that causes the CPU to

perform a sequence of operations on the particular structure to which it is linked. An action may

specify opening another application, loading the identified structure into an appropriate field, and

closing the application. An action may further include internal actions, such as storing phone

numbers in an electronic phone book, addresses in an electronic address book, appointments on

an electronic calendar, and external actions such as returning phone calls, drafting letters,

sending facsimile copies and e-mail, and the like."  One of ordinary skill in the art would

recognize that this example action requires three steps: (1) opening another application, (2)

*loading the identified structure into an appropriate field* and (3) closing the application.

However, the Examiner's assertion mistakenly removes step two of the cited example. Pensoft's

opening of the related profile does not anticipate the claimed "linked action" since it only

discloses the first step of the three steps and not the second and third steps.  In addition, the

Examiner is not considering the sentence in the context of the entire paragraph--most importantly

Application/Control Number: 90/011,287                                                Page 8
Art Unit: 3992

the immediately preceding sentence which states: "Each action is a computer subroutine that

causes the CPU to perform a sequence of operations on the particular structure to which it is

linked." *'647 patent,* at 2:31-34.

Here the patentees have plainly acted as their own lexicographers by providing an explicit

definition of a linked action. Further, the patentees proceeded to provide examples of linked

actions wherein an operation is performed on the particular detected structure. All examples

provided by the '647 patent show an action performing an operation on the detected structure.

Pensoft does not disclose an action being performed on the structure. The mere opening of a

profile by itself is not executing an action linked to the detected structure since there is no action

being

performed on the detected structure.  Examiner's interpretation of an "action" as merely "opening

another application" (Office Action, at pp. 13-14), is incorrect.

**Examiner** notes that reexamination relies on the broadest reasonable interpretation of claim

terms consistent with the specification.  Claim terms "are generally given their ordinary and

customary meaning."  Cybor Corp. v. Fas Techs., Inc., 138 F.3d 1448, 1455-56 (Fed. Cir. 1998)

(en banc); Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)  The plain

language of the claim states "linking."  **Examiner** maintains that "opening" is an action, a

function.  **Examiner** does not agree that the citations provided by Patent Owner expressly define

"linked action."

Application/Control Number: 90/011,287                                            Page 9
Art Unit: 3992

While Patent Owner cites to '647, 2: 31-34 (...perform a sequence of operation on the particular

structure...), **Examiner** asserts that claim language (claim 13) recites "**linking** at least one action

**to** the detected structure" "executing the selected action linked **to** the selected structure." Claim

language **does not** recite "**on**" the particular structure. (emphasis added)


3.  Regarding claim 15, **Patent Owner** argues (pp. 6-7) that Pensoft does not disclose "linking"

at least one action to the detected structure.  Pensoft's program called Associate recognizes an

item and creates links to that item, but the profile contains only information; it is not an action

and does not contain an action.  Despite Pensoft's use of the word "link," its connotation is

different in Pensoft than in the '647 patent's claims.  Pensoft at p. 11. Opening a profile "linked"

to an item in Pensoft does not constitute an operation being performed on the item as required by

the claims because the opening of a linked profile in Pensoft does not cause any type of

operation to be performed upon the recognized item (e.g., name).


**Examiner** refers to discussion at #2 above.  Linking is a broad term, not expressly defined in the

specification.  Claim language does not recite "**on**."  Claim language recites "linking at least one

action **to** the detected structure" / "linked **to** the selected structure" (emphasis added)

Application/Control Number: 90/011,287                                    Page 10
Art Unit: 3992

4. **Patent Owner** asserts (p. 7) that the office action fails to address Patent Owner's arguments regarding claim 21.

Examiner cites to Final Office Action 12/16/2011, p. 20: "Examiner cites to "enabling" discussion above. Nokia links an action to the detected structure by way of keyed input. The detected structure is displayed. The executing program "enables" the selection of an action for performance on the detected structure. See Nokia 7:32-39 and 8: 1-15. Claim language does not recite "displaying actions that can be selected." From OA 12/10/2010, p. 8: "Regarding **claims 9 and 21**, Pandit teaches (Fig. 1F, 3: 60-67; 4: 1-12) a user interface (3: 63-64, displayed menu bar) enables selection of an action by causing the output device to display a pop-up menu of the linked actions. See 2:3-46 regarding linking the action to the detected structure, via pull down menus, the step of displaying (on video monitor) and enabling selection of an action...(by clicking or keyboard strokes)." From OA 06/27/2011, pp. 13-14: **Per claim 21**, PenSoft discloses displaying and enabling selection of an **action for performance** on the detected structure. The Perspective program enables selection of multiple candidate actions by causing the Associate to present pop-up menus of possible actions. Id. at 11: 38. The Associate automatically establishes links. "When the Associate is On, it looks at information you write in text (detects structure), and whenever possible, creates a link. PenSoft at 37. As an example (PenSoft, p. 33), the "InkWell" may be enabled for selection for performing an interpretation on the ink handwritten text (the detected structure). Note InkWell icon displayed on user interface."

Application/Control Number: 90/011,287                                    Page 11
Art Unit: 3992

**5. Patent Owner** argues (pp. 7-12) that Nokia does not disclose linking.  Linking is described in

the '647 patent as follows:  at 3:38-44; 4:64-5:5; 5:15-18; 5:38-43.  The '647 patent describes

linking an action to the detected structure. In the context in which each of these passages are

understood, it is clear that selection of the structure can direct the user to linked actions. Such a

linking is not present in Nokia.   **Patent Owner** states, "Nokia may disclose detecting a number

that *could* be a phone number, Nokia does not disclose linking the number to an action.  There is

no linking of the actions to the detected structure in the asserted section of Nokia. Rather the user

operates traditional keyboard keys to have the device act upon the text in the register and the

display, e.g., a telephone number between two asterisks. Nokia is precisely the type of

"[c]onventional systems that identify structures in computer data [but] *do not enable automatic*

*performance of an action on an identified structure"* described in the Background of the '647

patent. *'647 patent,* at 1:37-39 (emphasis added). For example, with respect to the 3rd circuit,

Nokia discloses transferring the "number" to a circuit. Yet, transferring is not linking. "Transfer"

means, "[t]o carry, remove, or shift from one person, position, or place to another.' (*See*

*Webster's New College Dictionary,* definition 1 (1996).)"

**Patent Owner** argues that Nokia's "circuits" (circuits #1-6, user input that directs execution to

actions such as forming an outgoing call; transferring; recognize characters; scroll in the display;

select for the operation) do not disclose linking of an action to the detected structure.  The Office

Action improperly asserts that the linking and executing are done simultaneously by the same

circuits in response to the user performing an asserted action, e.g., "some call keying". *See*

*Previous Office Action,* at pp. 18-19.  Claim 15 requires the linking be done in a step *before*

Application/Control Number: 90/011,287                                        Page 12
Art Unit: 3992

execution as the claim recites "executing the selected action *linked* to the selected structure." *'647*

*patent,* at 8:32-33 (emphasis added).

**Examiner** acknowledges Patent Owner's reliance on Webster's New College Dictionary for a

definition of "transferring." **Examiner** maintains that Nokia discloses "linking." See Final

Office Action 12/16/2011, pp. 16-18 & 20:  "Nokia links an action to the detected structure by

way of keyed input. The detected structure is displayed. The executing program "enables" the

selection of an action for performance on the detected structure. See Nokia 7:32-39 and 8: 1-15.

Claim language does not recite "displaying actions that can be selected.""

**Examiner** maintains that Nokia, after recognizing a structure, stores the structure in a register.

The stored data is linked to actions by user selections.  User actions applied to the methods

programmed in the circuits perform a link action.  If Patent Owner is referring to the

specification recitation of the use of conventional pointers linking actions to a detected structure,

Examiner notes that the broad claim language does not recite such limitations.  **Examiner**

asserts, as previously noted in the Response to Arguments 12/16/2011, p. 17, that there is no

order to the steps of claim 15.

**6. Patent Owner** argues (pp. 12-13) that Nokia does not disclose "enabling selection of the

structure and a linked action.

Application/Control Number: 90/011,287                                    Page 13
Art Unit: 3992

**Patent Owner** cites to Final Office Action pp. 19-20 and Nokia at 5:46-6:5, 7:15-24, and 7:32-39, and argues that selecting and/or storing a text message does not equate to enabling selection of the structure and enabling selection of a linked action. Thus, there is no disclosure of "enabling selection of the structure.

**Examiner** rebuts that claim language (claim 15) recites "enabling selection of the structure and a linked action." Claim language does not recite "enabling selection of the structure." Nokia fairly teaches this limitation. As stated in Final Office Action 12/16/2011, p. 20: The executing program "enables" the selection of an action for performance on the detected structure. See Nokia 7:32-39 and 8:1-15. See Non Final Office Action 06/27/2011, pp. 19-20.

7.  Regarding claim 15, **Patent Owner** argues (pp. 13-14) that Nokia does not disclose "executing the selected action linked to the selected structure." Nokia at 9:9-32 does not disclose linking actions and therefore does not disclose executing a selected action *linked* to a selected structure.

**Examiner** asserts that Nokia's teachings adequately enable one of ordinary skill in the art to perform the functions of executing an action linked to a structure. See Examiner's discussion of enabling disclosure above. Examples are given in Non Final Office Action 06/27/2011, pp. 20-21, and include making a call, displaying, transferring.

Application/Control Number: 90/011,287                                    Page 14
Art Unit: 3992

**8.** Regarding claim 18, **Patent Owner** argues (pp. 14-15) that Nokia does not disclose that "the grammar is associated with a particular action, and wherein the step of linking at least one action to the detected structure includes the step of linking the particular action to the detected structure." The Office Action recites, "Examiner notes that the Patent Owner appears to recognize that Nokia's detecting of telephone number reads on a grammar pattern." *Office Action, p. 18.* **Patent Owner** does not agree with such an assertion. Figure 4 of the '647 patent (reproduced above) shows five examples of grammars, which include phone number, post-office address, e-

mail address, date, and name grammars. Each of these grammars has associated actions. For example, the '647 patent specification recites, "[w]hen analyzer server 220 identifies an address using the 'e-mail address' grammar, actions for sending e-mail to the identified address and putting the identified address in an e-mail address book are linked to the address." *'647 patent,* 5:15-18. Nokia does not disclose such actions being associated with particular grammars. In Nokia, after the user accepts the "structure," there are no associated actions. Rather, the user must manually manipulate the "structure" using some form of keying...for calling the number (*Nokia,* 8:11-15)...for storing the number (*Nokia,* 8:50-54). The supposed actions are not in any way associated with the pattern used to identify the potential number. The grammar is not disclosed as being associated with a particular action.

Application/Control Number: 90/011,287                                    Page 15
Art Unit: 3992

**Examiner** notes that while Patent Owner may not agree with the assertion that Nokia's detecting

of telephone number reads on a grammar pattern, Patent Owner repeats similar language in the

After Final Arguments 02/16/2012, last paragraph, p. 8: "While Nokia may disclose detecting a

number that could be a phone number..."   The broad claim language of claim 18 does not rely on

the narrow definition of an "analyzer server."   See Non Final Office Action pp. 23-24:  ...Nokia

discloses the grammar is associated with a particular action, and wherein the step of linking at

least one action to the detected structure includes the step of linking the particular action to the

detected structure.  Claim language does not obviate human intervention in computer processes.

Even the '647 invention relies on some degree of human intervention.  Nokia teaches (7:15-

24)...either to accept the number (detected structure based on grammar).., to correct a telephone

number, for example in order to add or to remove an area code (Correction action linked to

detected structure / number)...   Nokia teaches (7:32-39)...user accepts the number.., this number

is also in the number register (linked action stores number in register), according to which further

procedures (additional linked actions) are possible. Nokia teaches (8:1 – 15)...makes a call to the

number (phone number grammar linked to telephone actions, link call action to detected

structure / number)...when the number to be used is in the register and in the display... are now

precisely the same (linked actions of displaying number and storing number in register)... A call

to a number also takes place (action associated with grammar).

9. Regarding claim 19, **Patent Owner** argues (p. 15) that Nokia does not disclose that "the

memory contains strings, and wherein the step of detecting a structure further comprises the

steps of retrieving a string from the memory and scanning the data to identify the string."  The

Application/Control Number: 90/011,287                                    Page 16
Art Unit: 3992

asserted sections do not disclose "memory," thus the string is not retrieved from memory and the

data cannot be scanned using the retrieved string. Nokia does not disclose identifying string" in

"the data."

**Examiner** cites to Non Final Office Action 06//27/2011, pp. 24-25 (regarding Nokia's

teachings):  The telephone apparatus includes **a memory for storing an alphanumeric message**

(the memory

contains strings). (Abstract) The radio telephone **apparatus receives** alphanumeric text

messages

and **processes the text messages** which have arrived (retrieving a string from memory) (1: 52-

58) ...**the apparatus is capable of interpreting** (scanning the data / the alphanumeric message)

as

a telephone number a character string included in an arbitrary text message (identify the string),

either automatically or aided by the user... (2: 23-28).  (emphasis added)  **Examiner** asserts that

these teachings read on "retrieving a string from the memory and scanning the data to identify

the string."

**10.**  Regarding claim 21, **Patent Owner** argues (pp. 15-16) that Nokia does not disclose "after

the step of linking at least one action to the detected structure, the step of displaying and enabling

selection of an action for performance on the detected structure." **Patent Owner** argues that the

proper construction of claim 21 requires displaying an action and enabling selection of an action.

Application/Control Number: 90/011,287                                    Page 17
Art Unit: 3992

Nokia does not disclose "linked actions." Therefore, it does not and cannot disclose displaying

and enabling selection of an action after the step of linking at least one action. For example, as

shown in Figure 7 of the '647 patent (reproduced above), the actions "Call #" and "Put in

electronic telephone book" are displayed and enabled for selection. The Office Action, however,

fails to assert any section of Nokia that discloses displaying an action, let alone enabling

selection of such an action, as required by claim 21.


**Examiner** notes that claim 21 does recite an order of steps taken. Nokia discloses "after the step

of linking at least one action to the detected structure, the step of displaying and enabling

selection of an action for performance on the detected structure." **Examiner** takes the broadest

reasonable interpretation of claim language: "the step of displaying" and "enabling selection."

As stated in Non Final Office Action 06/27/2011, "Nokia discloses (5: 46-51) a display for

displaying characters of a text message, and a keyboard that accepts user command inputs... user

accepts the number (describes an action) (or to correct describes an action)  (7:15-24.) After a

number in the register and display are "precisely the same...a call (action) to a number (selection

of an action) takes place (8:1-15). Nokia links (enables) an action to the detected structure by

way of keyed input. The detected structure is displayed. The executing program "enables" the

selection of an action for performance on the detected structure. See Nokia 7:32-39 and 8: 1-15.

Plain claim language does not recite "displaying actions that can be selected."

**11.** Regarding claim 22, **Patent Owner** argues (pp. 16-17) that Nokia does not disclose "communicating with the application to determine the location of the detected structure as presented by the application, to enable selection of the detected structure and a linked action, and to determine if the detected structure and a linked action have been selected." Support for the "communicating" limitation can be found, *inter alia,* in '647 patent at 4:1-15.

**Patent Owner** argues that Non Final Office Action, (p. 21) recites: Nokia discloses (6:11-12) "The RPK searches for a telephone number contained in a message." (communicating with the application); (6: 15-26), "... whereupon the RPK will search, starting from the beginning of the message, for the first point at which there is, for example, a numeral and the numeral is followed by at least four of any of the characters included in the following set [search to detect a matching character string / grammar] (determine the location of the detected structure); (7: 3-7), "In the search for a telephone number from a text message it is possible to apply...any of the methods described above or some other search algorithm which has been programmed according to the invention into the RPK." The asserted sections of Nokia fail to disclose the required communication. In fact, Nokia does not disclose any communication between the RPK and the application to determine the location of the detected structure. As recited above, the RPK determines the location of the detected structure. Thus, Nokia does not disclose the communicating limitation.

Application/Control Number: 90/011,287                                          Page 19
Art Unit: 3992

**Examiner** notes that the term "communicating" is broad. The term "communicating" within

claim language is not limited to the citation within the '647 specification that Patent Owner

asserts. Claim language recites "communicating with the application to determine the location of

the detected structure as presented by the application, to enable selection of the detected structure

and a linked action, and to determine if the detected structure and a linked action have been

selected..." **Examiner** opines that an application (such as Nokia's RPK) searching for characters

within a message is not communicating, as the term is understood in computer science.


/Mary Steelman/

Reexamination Specialist CRU 3992


Alexander Kosowski
*Supervisor*
*Art Unit 3992*