# EXHIBIT M



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,287 | 10/15/2010 | 5946647 | 031486.647 | 9354 |

77970      7590      06/27/2011

Apple Inc.
1000 Louisiana Street
Fifty-Third Floor
Houston, TX 77002

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 06/27/2011

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

BRYAN CAVE LLP

1290 Avenue of the Americas

New York, NY 10104

**MAILED**

JUN 2 7 2011

CENTRAL REEXAMINATION UNIT

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/011,287*.

PATENT NO. *5946647*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| **Office Action in Ex Parte Reexamination** | **Control No.** 90/011,287 | **Patent Under Reexamination** 5946647 |
|---|---|---|
| | **Examiner** MARY STEELMAN | **Art Unit** 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☒ Responsive to the communication(s) filed on _10 February 2011_ .  b☐ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I     THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.      3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO/SB/08.            4. ☐ ___ .

Part II    SUMMARY OF ACTION

1a. ☒ Claims _1-24_ are subject to reexamination.

1b. ☐ Claims ___ are not subject to reexamination.

2. ☐ Claims ___ have been canceled in the present reexamination proceeding.

3. ☒ Claims _1-12 and 14_ are patentable and/or confirmed.

4. ☒ Claims _13 and 15-24_ are rejected.

5. ☐ Claims ___ are objected to.

6. ☐ The drawings, filed on ___ are acceptable.

7. ☐ The proposed drawing correction, filed on ___ has been (7a) ☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some*  c)☐ None     of the certified copies have

    1☐ been received.

    2☐ not been received.

    3☐ been filed in Application No. ___ .

    4☐ been filed in reexamination Control No. ___ .

    5☐ been received by the International Bureau in PCT application No. ___ .

    * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☒ Other: _Eleven IDS forms as noted in Office Action_

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)                    Office Action in Ex Parte Reexamination                    Part of Paper No. 20110614

## Non Final Office Action

Per Request received 10/15/2010, claims 1-24 of USPN 5,946,647 to Miller et al. are under

reexamination.  This Office Action is in response to Patent Owner's Remarks received

02/10/2011.  There are no amendments to the claims.

### IDS Statement

The following eleven IDS statements have been entered:  06/17/2011, 06/06/2011, 05/23/2011,

05/05/2011 (two separate IDS statements), 04/21/2011, 04/18/2011, and 03/23/2011 (four

separate IDS statements).

With respect to the **Information Disclosure Statements** (PTO/SB/08A and 08B or its

equivalent) acknowledged with this action, the information cited has been considered as

described in the MPEP.  Note that MPEP 2256 and 2656 indicate that degree of consideration to

be given to such information will be normally limited by the degree to which the party filing the

information citation has explained the content and relevance of the information. Information that

does not appear to be "patents or printed publications" as identified in 35 U.S.C. 301 have been

considered to the same extent (unless otherwise noted), but have been lined through and will not

be printed on any resulting reexamination certificate (i.e., Court documents have been considered

and lined through).  Undated references have been lined through.  Electronic means or medium

Application/Control Number: 90/011,287                                          Page 3

Art Unit: 3992

for filing IDS is not permitted except for: (A) citations to U.S. patents *>,< U.S. patent

application publications >, foreign patent documents and non-patent literature (NPLs)< in an IDS

filed via the Office's Electronic Filing System (EFS) (see MPEP § 609.07); or (B) a compact

disc (CD) that has tables, sequence listings, or program listings included in a paper IDS in

compliance with 37 CFR 1.52(e). The video material has not been viewed and has been

considered only to the extent that the content and relevance has been explained. The video

material is also lacking dates.

It is also noted that some of the IDS has been filed almost 5 months after the date of the order for

reexamination. 37 CFR 1.555(a) states, in part: Any information disclosure statement must be

filed with the items listed in § 1.98(a) as applied to individuals associated with the patent owner

in a reexamination proceeding, and should be filed within two months of the date of the order for

reexamination, or as soon thereafter as possible. It is unclear how, why, or if, the information is

being filed "as soon thereafter as possible".

**Declarations:**

The 37 CFR 1.131 Declaration of Chi-Hsin Chang has been entered into the record (02/10/2011).

The Chang declaration is in support of a reduction to practice of the Miller invention prior to

December 27, 1995, the filing date of USPN 5,859,636 to Pandit (file date 12/27/1995). The

Chang Declaration cites to Exhibits A and B-1 through B-8:

**Exhibit A** maps limitations of the claims of the '647 patent to the LiveDoc ver. 0.7 images.

**Exhibits B-1 through B-6** - Screen images either from or related to the LiveDoc ver.0.7

computer program as evidence of the reduction to practice of the invention claimed in claims 1-

5, 8-10, 13-18, and 20-22 of the '647 patent before December 27, 1995.

> Exhibit B-1 - a directory of a folder entitled LiveDoc, includes the self extracting
>
> archive named "LiveDoc 0.7.sea" dated before December 27, 1995.

> Exhibit B-2 - "Demo text" in a folder entitled "LiveDoc v.0.7" from the self extracting
>
> archive shown in Exhibit B-1.

> Exhibit B-3 - LiveDoc v.0.7 having found and identified structures in the Demo text.

> Exhibit B-4 - a pop-up menu that has appeared in response to a user selecting the
>
> detected email domain using LiveDoc v.0.7. The pop-up menu displays selectable
>
> actions related to the email domain.

> Exhibit B-5 shows a pop-up menu that has appeared in response to a user selecting the
>
> detected URL using LiveDoc v.0.7. The pop-up menu displays selectable actions
>
> related to the URL.

> Exhibit B-6 shows a pop-up menu that has appeared in response to a user selecting the
>
> detected file path using LiveDoc v.0.7. The pop-up menu displays selectable actions
>
> related to the file path.

> Exhibit B-7 - email evidence of the reduction to practice of the invention claimed in
>
> claims 1-5, 8-10, 13-18, and 20-22 of the '647 patent before December 27, 1995 from
>
> one of the inventors of the '647 patent, James Miller; discusses implementations of

structure detectors, including the operation and features of a LiveDoc implementation

of the claimed invention; contents of email mapped to the limitations of the claims of

the '647 patent in Exhibit A; describes that LiveDoc grabs text currently visible in an

application window and passes it to the Structure Detector engine; identified structures

are highlighted in the document; a mouse down operation over one of the highlighted

structures produces a pop-up menu containing actions relevant to the selected

structure; the selection of one of the actions causes the action to be fired.

Exhibit B-8 - email evidence of reduction to practice of the invention, claims

1-5, 8-10, 13-18, and 20-22 of the '647 patent before December 27, 1995 from one of

the inventors, David Wright, with the subject "Finally - working code!"  Contents of

this email are mapped to the limitations of the claims of the '647 patent at Exhibit A;

discusses using Structure Detectors to highlight structures found within the text;

describes that a user can click on the highlighted structure and a pop-up menu appears

displaying choices of actions.


**Examiner** has reviewed the 1.131 Declaration of Chi-Hsin Chang.  Exhibits B1 through B8 are

screen shots and email messages representing a working exhibit of the invention.  The evidence

appears to be sufficient to support an earlier date of reduction to practice of the invention.  The

evidence establishes an invention date that predates USPN 5,859,636 to Pandit, thus

disqualifying the Pandit reference as prior art.  In view of the persuasive declaration of Chi-Hsin

Application/Control Number: 90/011,287                                                                     Page 6

Art Unit: 3992

Chang **the rejections claims 1-5, 8-10, 12-18, 20-22, and 24 rejected under 35 U.S.C. 102(e)**

**as anticipated by USPN 5,859,636 to Pandit are hereby withdrawn.**

The rejection of **claims 6, 7, and 19 rejected under 35 U.S.C. 103(a) as obvious over USPN**

**5,859,636 to Pandit, in view of Salton are hereby withdrawn.**

The rejection of **claims 8, 9, 20 and 22 rejected under 35 U.S.C. 103(a) as obvious over**

**USPN 5,859,636 to Pandit, in view of USPN 5,649,222 to Mogilevsky are hereby withdrawn.**

The rejection of **claims 11 and 23 rejected under 35 U.S.C. 103(a) as obvious over USPN**

**5,859,636 to Pandit, in view of Nokia are hereby withdrawn.**

The rejection of **claims 12 and 24 rejected under 35 U.S.C. 103(a) as obvious over USPN**

**5,859,636 to Pandit, in view of PenSoft are hereby withdrawn.**


The 37 CFR 1.132 Declaration of David A. Wilson, PH.D. has been received (02/10/2011).  The

Wilson Declaration presents arguments as to why the Pandit reference does not read on claim

language.  Exhibit A, curriculum vitae is attached.  **Examiner** has reviewed the Declaration of

David A. Wilson, PH.D.  The arguments in the declaration are repeated by Patent Owner.   In

view of the withdrawal of all rejections based on Pandit, all arguments presented in the 1.32

Declaration of David A. Wilson are moot.


**Patent Owner Arguments**

**Patent Owner** provided a brief statement (Remarks 02/10/2011, pp. 26-27) addressing additional prior art provided with the Request (Nokia, PenSoft, Koved, and Stamps). **Examiner** disagrees with Patent Owner's assertions that neither Nokia or PenSoft discloses at least the claim limitations of "detecting structures in the data, and for linking actions to the detected structures," and "enabling the selection of a detected structure and a linked action." See rejections below incorporating the Nokia and PenSoft prior art.


In a first argument (related to the Pandit rejections and now moot), **Patent Owner** asserted (Patent Owner Remarks, 02/10/2011, p. 2) that "detecting structures in the data" requires that the computer/software of the '647 patent find and identify the structure in the data. While the discussion, as related to Pandit, is moot, the general argument is further addressed. **Examiner** disagrees with Patent Owner's narrow interpretation of the claim term "detecting" as narrowly reading on "finding" and "identifying" and, as argued in the interview, not reading on the term "recognizing". **Examiner** notes that the '647 Specification teaches "…an analyzer server for detecting structures in the data, and for linking actions to the detected structures…" An analyzer server is described ('647, 3: 55-67; 4: 59-64) as a subroutine within a program, which receives data from a document that has recognizable patterns. The analyzer server comprises one or more <u>pattern analysis units</u>, such as a parser and grammars (grammar file) or fast string search function and dictionaries (string library), which use patterns to parse a document for recognizable structures. "Parser retrieves a grammar from grammar file and parses text using the retrieved grammar." (Alternately, a fast string search function retrieves 1070 the contents of string library 420, detects [identifies] 1080 the strings in the data identical to those in the string

library 420 and links 1090 actions associated with the library string to the detected string."
('647, 6: 43-47)  The analyzer server <u>links actions</u> associated with the responsible pattern (as
retrieved from grammar file/string library) to the detected structure, <u>using conventional pointers:</u>
"Parser retrieves from grammar file 320 pointers attached to the grammar and attaches the same
pointers to the identified structure." ('647, 4: 67 – 5: 2) (emphasis added)  "…a parsing process
retrieves 1030 grammars, detects 1040 structures in the data based on the retrieved grammars,
and links 1050 actions associated with each grammar to each structure detected by that
grammar." ('647, 6: 39-42)

The parser/fast string search process, within the analyzer server, uses the retrieved grammar
/contents of a string library to parse a document (or document selection) and detect (identifies
identical) structures in the document data based on the retrieved grammars.  An "analyzer
server" includes parser functionality linking associated actions to a detected structure using
pointers retrieved from the grammar file 320.  The parser of the '647 invention uses pointers that
are attached to the grammar to attach to the identified structure, thus linking detected structure to
associated action ('647, 4: 67-5: 2).

In a second argument (addressing the Pandit rejections) **Patent Owner** asserts (Patent Owner
Remarks, 02/10/2011, p. 2) that enabling the selection of the detected structure and a linked
action, as variously recited in the independent claims of the '647 patent, requires *enabling user
selection of a detected structure and selection of a linked action;* that is, both "detected
structures" and "linked actions" must be enabled for user selection.   Examiner disagrees with

Application/Control Number: 90/011,287                                           Page 9

Art Unit: 3992

this interpretation.  Claim language fairly reads on a computer to perform the steps of ...

"enabling a selection of the structure and a linked action..."  The executing program "enables"

the selection.  Examiner provided a 112 6th paragraph analysis of the limitation (Non Final

Office Action 12/10/2010, p. 5, citing to the Miller '647 Specification for support) "means for

selecting the structure and a linked action" at 4:1-30- "application program interface 230, user

interface 240, display, mouse or touch sensitive screens, and dialog boxes, pull-down or pop-up

menu.  The executing program "enables" the selection of the structure and a linked action."  The

term "user" is not in the claim language.  Claim language does not recite "enabling <u>user</u>

<u>selection</u>" of a detected structure and selection of a linked action.


**Claim Rejections - 35 USC § 102**

        The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

        A person shall be entitled to a patent unless –

        (b) the invention was patented or described in a printed publication in this or a foreign

        country or in public use or on sale in this country, more than one year prior to the date of

        application for patent in the United States.


**Claim Rejections - 35 USC § 103**

        The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

        (a) A patent may not be obtained though the invention is not identically disclosed or
        described as set forth in section 102 of this title, if the differences between the subject

matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

1.    Determining the scope and contents of the prior art.
2.    Ascertaining the differences between the prior art and the claims at issue.
3.    Resolving the level of ordinary skill in the pertinent art.
4.    Considering objective evidence present in the application indicating obviousness or nonobviousness.

**Claims 13, 15, 16, 20, 21, 22, and 24 are rejected under 35 U.S.C. 102(b) as being anticipated by PenSoft.**

Regarding **claims 13, 15, and 22**, PenSoft discloses:

**-a program storage medium storing a computer program that causes a computer to perform the described steps...**

**-a computer having a memory storing actions, including a method for causing the computer to perform an action on a structure identified in computer data comprising the steps of...**

**-a computer-based method for causing a computer to identify, select and perform an action on a structure in computer data received from a concurrently running application...**

PenSoft (Perspective software on a PenPoint computer) discloses identifying / selecting a

structure in the data and performing actions (computer based methods) on detected structures.

Perspective is designed to be installed on a computer running the PenPoint operating system

(memory storing actions; method for causing the computer to perform / identify / select).

PenSoft at 1-2; 6.  Perspective includes a tool called the "Associate" which automatically links

information entered by a user with information stored in Perspective ProfileBook.   See PenSoft

at 11.  See details about the Associate, Pensoft at 39.


PenSoft discloses **receiving computer data**. Perspective describes standard gestures for input

(receives computer data).   See PenSoft at 1.  A user enters information into Perspective by

writing information (computer data) directly on the screen.  Id. at 27.  Alternately, see PenSoft at

p. 191, importing data.


PenSoft discloses **detecting a structure in the data; linking at least one action to the detected**

**structure**. Perspective includes a software tool called "the Associate" that, when installed on the

PenPoint hardware (including memory), detects structures in data input by a user and links

actions to the detected structure.  Id. at 11-12, 19, 36-40.   PenSoft, p. 12, "The Associate can

automatically file the note by recognizing (detecting) names you enter and creating links, or you

can manually link the note to other items."  (emphasis added)  PenSoft, p. 26, see double tap

press gesture, to prepare to link.

PenSoft discloses **enabling selection of the structure and a linked action.** See Perspective

user interface. Linked items in Perspective are bolded. Perspective allows a user to open the

profile for any linked item. Id. at 11. See Basic Gestures at PenSoft 26.


The method **communicates (per claim 22) with the application to determine location of the**

**detected structure as presented by the application, to enable selection of the detected**

**structure and a linked action, and to determine if the detected structure and a linked action**

**have been selected**; The Perspective software communicates with the PenPoint operating

system and determines that the detected structure is located in the display and stored in the

register. The software enables the selection of the detected structure and a linked action and

determines if the detected structure and a linked action have been selected, by way of the user

interface. Alternately consider the import and export abilities of Perspective at 191-207, where

data may be imported (communicates) and enabled for selection of a detected structure and a

linked action by way of the user interface.


PenSoft discloses **executing/performing the selected action linked to the selected structure /**

**detected pattern.** After Perspective is installed on the PenPoint operating system (on hardware

containing a processor), when a user double taps on a linked item, the profile for that linked item

is opened (example of executing / performing). See PenSoft 43, "Open a profile for a linked

item. Double tap bold linked information..." Perspective is software designed to run (execute)

on the PenPoint operating system and related hardware, which includes a processing unit to

control the execution of the program routines. See PenSoft at 1, 6.


Per **claim 16**, PenSoft discloses **the computer data is received from the application running**

**concurrently**.  The PenSoft application runs on the PenPoint mobile computing platform /

operating system (application runs concurrently with operating system).  (PenSoft at 6).

Computer data is received from applications of the Perspective software running concurrently on

the OS, such as the Assistant, Daily Planner, and Monthly Planner.  See list of applications

available to run concurrently at PenSoft, page 1.  See Perspective displaying data on the screen

of a computer running the PenPoint operating system at PenSoft 9.  Alternately consider

imported data (computer data is received) at PenSoft 191.


Per **claim 20**, PenSoft discloses (PenSoft p. 11, "bold text") **highlighting the detected**

**structure**.


Per **claim 21**, PenSoft discloses **displaying and enabling selection of an action for**

**performance on the detected structure**.  The Perspective program enables selection of multiple

candidate actions by causing the Associate to present pop-up menus of possible actions.  Id. at

11; 38.  The Associate automatically establishes links.  "When the Associate is On, it looks at

information you write in text (detects structure), and whenever possible, creates a link.  PenSoft

at 37.  As an example (PenSoft, p. 33), the "lnkWell" may be enabled for selection for

performing an interpretation on the ink handwritten text (the detected structure).   Note InkWell

icon displayed on user interface.


Per **claim 24**, Pensoft discloses (39-42) **a first one of the actions may invoke a second one of**

**the actions.**   An action that links an existing contact to an appointment, and separately an

additional action creates a new contact and calls the action to link that contact to an appointment.

See another example (PenSoft at 105) of a detected appointment linked to an alarm action, a

second delayed alarm action may be further linked and invoked to go off 5 minutes later.


**Claim 19 is rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of**

**PenSoft and Salton.**

Per **claim 19**, PenSoft discloses detecting string structures in data.  See anticipation rejections

above.  To the extent that PenSoft fails to teach detecting a structure further comprises the steps

of retrieving a sting from the memory and scanning the data to identify the string, Salton

explicitly discloses (Salton, at 259-60, Fast string Matching) a string library and a fast string

search function for detecting string structures in the data.


It would have been obvious to one of ordinary skill in the art to combine PenSoft and Salton

because both references disclose systems for scanning blocks of text (including text input by

a user) and automatically detecting text data structures.  Moreover, the string library and string

search functions disclosed by Salton are simply faster, more efficient methods for detecting

string structures in data. Thus, one of ordinary skill in the art would have been motivated to

modify Pensoft (which detects string structures in data) to include these better string structure

detection methods so as improve performance. Indeed, to one of ordinary skill in the art, this

would have been nothing more than a simple modification according to known programming

methods.

**Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of**

**PenSoft and Nokia.**

Per **claim 23**, PenSoft fails to teach sound activation.  However, Nokia discloses a

system wherein the user interface enables selection of a detected structure and a linked

action using sound activation. See Nokia, 5:52-58, "...'keying' denotes a command given by

means of the keyboard K ...or possibly a command spoken aloud, if the RPK supports voice

recognition, or any other method of giving a command."

It would have been obvious to one of ordinary skill in the art to combine PenSoft and Nokia

because both references disclose systems for detecting text data structures and linking them to

actions. Moreover, both PenSoft and Nokia allow for users to input text and make selections

through a user interface. In PenSoft, the user does this through the use of a stylus pen on the

screen of the device, however, other methods, such as through a keyboard, or through sound

activation were well known in the art (Nokia at col. 5:46-58).   Thus, it would have been obvious

to one of ordinary skill in the art to modify PenSoft to include "sound activation" as an

alternative input method.  The method used to accept user input is nothing more than a simple

design choice.

**Claims 13, 15, and 17-23 are rejected under 35 U.S.C. § 102(b) as anticipated by Nokia.**

Per **claims 13, 15, and 22,** Nokia discloses:

**-a program storage medium storing a computer program that causes a computer to**

**perform the described steps...**

**-a computer having a memory storing actions, including a method for causing the**

**computer to perform an action on a structure identified in computer data comprising the**

**steps of...**

**-a computer-based method for causing a computer to identify, select and perform an action**

**on a structure in computer data received from a concurrently running application...**

A telephone apparatus which is made up of a radio telephone part comprises a memory

unit (storage medium)... a circuit...a memory for storing an alphanumeric message (memory

storing actions)... (Abstract.)

The invention relates to a telephone apparatus... which comprises at least a memory unit for

storing a telephone number or numbers... the apparatus performing certain functions

automatically (method for causing the computer to perform an action)... the user of the radio

telephone apparatus may press certain keys in the apparatus and thereby cause a certain function included in the invention to take place. (1:1-15)

...the invention that the apparatus is capable of interpreting as a telephone number a character string included in an arbitrary text message, either automatically or aided by the user (select and perform), and this number can, when necessary, be modified, and the apparatus according to the invention is capable of calling this number (select and perform an action on a structure in computer data received from a concurrently running application), when necessary. (2:23-37)

Nokia discloses **receiving computer data**.

A telephone apparatus which is made up of... a keyboard, and of a receiver part for receiving alphanumeric messages (receiving computer data)... and a circuit, connected to the keyboard, for transferring the telephone number in the display at each given time to the register (register receives computer data) for the forming of a telephone call. (Abstract.) Also see 1: 1-15; 4: 47-56, regarding receiving alpha numeric data.

Nokia discloses **detecting a structure in the data.**

...the RPK (3: 47-48, Radio Telephone Apparatus) will search, starting from the beginning of the message, for the first point at which there is, for example, a numeral and the numeral is followed by at least four of any of the characters included in the following set numerals, -,/, (,), space...

RPK searches for ... a telephone number... searches for ...a character string which could be a telephone number... character string criteria can be formed.  (6:14-30.)

... at the time of transmitting the message, the telephone number to which the user should make a call is separated by some suitable special character on the basis of which the RPK will unambiguously discriminate the number (detecting a structure in the data).  Figure 4... an asterisk * is used as the recognition character. ..RPK will thus search, after the search keying, for a character string delimited by asterisks, and will then display it (search and display detected structure) in the display D.  (6:51-7:2.)   For example, the following circuits and switch means may be provided... A fourth circuit...pre-programmed to recognize (preprogrammed to detect) characters indicating the beginning and/or end of a telephone number possibly included in the alphanumeric present message or, alternatively, to recognize (detect) from the alphanumeric present message a character string which, according to the programmed algorithm, is probably a telephone number, this fourth circuit then transferring the found number (the detected structure), or characters string, to the display for the purpose of being assessed by the user.  (9:9-32.)

Nokia discloses **linking at least one action to the detected structure**.

For example, the following circuits and switch means may be provided:  A third circuit, connected to the keyboard, for transferring the telephone number in the display at each given time to the memory for forming a call and/or for further processing.  (detected structure / telephone number linked to a memory storage and / or processing action)  A fourth circuit...pre-programmed to recognize characters... or, alternatively, to recognize from the alphanumeric

present message a character string... (detected structure) then transferring the found number, or

characters string, to the display (linked to a 'display' action) for the purpose of being assessed by

the user... A sixth circuit, connected to the keyboard, by means of which circuit the user can,

with the help of a certain key or keys, select for operation the desired one of the said telephone

number tracing methods pre-programmed in the fourth and fifth circuits, the keyboard including

an acceptance key by means of which the user can accept a portion of the present message in the

display and transfer this portion (linked to 'transfer' action) to the memory in the case of a

telephone number, or to a short-selection directory in the case of a name or the like.  (9:9-52.)

Nokia discloses **enabling selection of the structure and a linked action.**

Typically an RPK has a display D, which is capable of displaying at one time at minimum

about twenty characters of a text message and through which a text message can be scrolled.

Also, an RPK has a keyboard K, and the user can give commands... 'keying' denotes a command

given by means of the keyboard K - it may be the pressing of an individual key, a sequence of

pressings of keys, or the pressing of several keys simultaneously, or possibly a command spoken

aloud, if the RPK supports voice recognition, or any other method of giving a command.

According to the invention, the user may <u>select</u> one text message received (enabling selection of

the structure), <u>or store</u> (linked action) for that purpose in the temporary memory, <u>for display</u>

(linked action) at one time <u>and for processing</u> (linked action) in the manner according to the

present invention. The message thus selected is called 'present message'. (5:46-6:5)  (display&

keyboard commands enable selection of structure and a linked action) (emphasis added)

(2) The user accepts the number  ... As a result of this step there will be available a telephone number for the steps next in succession.  (7:15-24.)  If the user accepts the number he performs an acceptance keying... Now there is visible in the display only a "pure" telephone number, and this number is also in the number register (selection of structure / number is linked 'storage' action, storing number in register), according to which further procedures (linked actions) are possible.  (7:32-39.)

For example, the following circuits and switch means may be provided:  A sixth circuit, connected to the keyboard, by means of which circuit the user can, with the help of a certain keys, select for operation the desired one of the said telephone number tracing methods pre-programmed in the fourth and fifth circuits, the keyboard including an acceptance key by means of which the user can accept a portion of the present message in the display (selection of the structure) and transfer (an a linked 'transfer' action) this portion to the memory in the case of a telephone number, or to a short-selection directory in the case of a name or the like.  (9: 9-52.)

Nokia discloses **executing/performing the selected action linked to the selected structure / pattern**.

(3) RPK makes a call (executing / performing selected action) to the number (the selected structure / pattern) ...the number to be used is in the register and in the display...A call to a

number also takes place... (8: 1-15.)   For example, the following circuits and switch means may

be provided:   A first electrical circuit for forming an outgoing call (executing the selected action

linked to the selected structure / pattern) in accordance with a number in the memory or register.

A second electrical circuit for displaying in the display a telephone number ... A third circuit,

connected to the keyboard, for transferring the telephone number in the display...to the memory

for forming a call and/or for further processing.   (9:9-32.)   See also 3:34-58, RPK can

execute/perform the selected action linked to the selected structure / pattern.


Further regarding **claim 22**, Nokia discloses **communicating with the application to determine
the location of the detected structure as presented by the application, to enable selection of
the detected structure and a linked action, and to determine if the detected structure and a
linked action have been selected.**

Figure 3 depicts one method according to the invention for locating a telephone number in a text

message.  (2: 45-47)  See text beginning at 6: 11, discussing communicating with the application

to determine the location of the detected structure (determine the location of the structure).

In the search for a telephone number from a text message it is possible to apply...any of the

methods described above or some other search algorithm which has been programmed according

to the invention into the RPK. (7: 3-7)

(2) The user accepts the number  This step will follow only after step (1) above. The objectives

are two: either to accept the number or to search a new candidate for a telephone number or the

next number in a message containing several numbers, and to correct a telephone number, for

example in order to add or to remove an area code.  As a result of this step there will be available

a telephone number for the steps next in succession.  (7:15-24.)

If the user accepts the number he performs an acceptance keying, whereupon the RPK will

eliminate from the display any characters following the number and any non-numeric characters

inside the number. Now there is visible in the display only a "pure" telephone number, and this

number is also in the number register (communicating with the application to determine the

location, in the register, of the detected structure as presented by the application), according to

which further procedures are possible.  (7:32-39.)

For example, the following circuits and switch means may be provided...A third circuit,

connected to the keyboard, for transferring the telephone number in the display at each given

time to the memory (communicating with the application) for forming a call and/or for further

processing.  (9:9-21.)

Per **claim 17**, Nokia discloses that **the memory contains grammars, and wherein the step of**

**detecting a structure further comprises the steps of retrieving a grammar and parsing the**

**data based on the grammar**.

...the RPK will search, starting from the beginning of the message, for the first point at which

there is, for example, a numeral and the numeral is followed by at least four of any of the

Application/Control Number: 90/011,287                                                                     Page 23

Art Unit: 3992

characters included in the following set numerals, -,/, (,), space (a grammar). At least three of

these first five characters must be numerals. In other words, the RPK searches for a point which

could be a telephone number.  Generally, the RPK thus searches for the message a character

string which could be a telephone number (parsing the data based on the grammar). There may

be various criteria for the character string, and they are not discussed separately in the present

application; it is only stated that character string criteria can be formed. They depend, for

example, on the country, the language, the practice, etc.  (6:14-30.)

For example, the following circuits and switch means may be provided:  A fourth circuit, which

can be pre-programmed (memory contains grammars) to recognize characters indicating the

beginning and/or end of a telephone number possibly included in the alphanumeric present

message or, alternatively, to recognize from the alphanumeric present message a character string

which, according to the programmed algorithm (use retrieved grammar / preprogrammed

algorithm reads on memory contains grammars), is probably a telephone number, this fourth

circuit then transferring the found number (detecting a structure), or characters string, to the

display for the purpose of being assessed by the user.  (9:9-32.)

Per **claim 18**, Nokia discloses **the grammar is associated with a particular action, and
wherein the step of linking at least one action to the detected structure includes the step of
linking the particular action to the detected structure**.

The objectives are two: either to accept the number (detected structure based on grammar)... to correct a telephone number, for example in order to add or to remove an area code (Correction action linked to detected structure / number)... (7:15-24.)

If the user accepts the number... this number is also in the number register (linked action stores number in register), according to which further procedures (additional linked actions) are possible. (7:32-39.)

(3) RPK makes a call to the number (phone number grammar linked to telephone actions, link call action to detected structure / number)  This step will begin only when the number to be used is in the register and in the display as a consequence of step (2)  The objective is that the register and the display of the telephone are now precisely the same (linked actions of displaying number and storing number in register)... A call to a number also takes place (action associated with grammar) (8:1-15.)

Per **claim 19**, Nokia discloses **the memory contains strings; retrieving a string from the memory and scanning the data to identify the string**.

The telephone apparatus includes a memory for storing an alphanumeric message (the memory contains strings). (Abstract) The radio telephone apparatus receives alphanumeric text messages and processes the text messages which have arrived (retrieving a string from memory) (1: 52-58) ...the apparatus is capable of interpreting (scanning the data / the alphanumeric message) as a telephone number a character string included in an arbitrary text message (identify the string), either automatically or aided by the user... (2: 23-28)

Generally, the RPK thus searches for the message (data) a character string (identified string

within message) which could be a telephone number (identify string as number). There may be

various criteria for the character string (grammar), and they are not discussed separately in the

present application; it is only stated that character string criteria can be formed.  They depend,

for example, on the country, the language, the practice, etc.  (6:14-30.)

Per **claim 20**, Nokia discloses **highlighting the detected structure**.

... RPK will unambiguously discriminate the number (highlight the detected structure). Figure

4...an asterisk * is used as the recognition character... a character string delimited by asterisks...

(6:51-7:2.)

•

Per **claim 21**, Nokia **discloses displaying and enabling selection of an action for performance**

**on the detected structure**.

Nokia discloses (5: 46-51)  a display for displaying characters of a text message, and a keyboard

that accepts user command inputs.  The display, keyboard, and related circuitry enable selection

of an action for performance on the detected structure.

(2) The user accepts the number  This step will follow only after step (1) above. The objectives

are two: either to accept the number... or to search a new candidate for a telephone number or the

next number in a message containing several numbers, and to correct a telephone number

(enabling selection of an action for performance on the detected structure)... (7:15-24.)

If the user accepts the number he performs an acceptance keying... Now there is visible in the

display only a "pure" telephone number, and this number is also in the number register,

according to which further procedures (actions for performance on the detected structure) are

possible.  (7:32-39.)

(3) RPK makes a call to the number   This step will begin only when the number to be used is in

the register and in the display as a consequence of step (2)  The objective is that the register and

the display of the telephone are now precisely the same... A call to a number (selection of an

action) also takes place   (8:1-15.)


Per **claim 23**, Nokia discloses **sound activation**.

Hereinafter, 'keying' denotes a command... or possibly a command spoken aloud, if the RPK

supports voice recognition (sound activation), or any other method of giving a command.  (5:52-

58.)


**Claim 16 is rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of**

**Nokia and '036.**

Per **claim 16**, Nokia discloses **receiving computer data**.   Typically an RPK has a display D,

which is capable of displaying at one time at minimum about twenty characters of a text message

and through which a text message can be scrolled. Also, an RPK has a keyboard K, and the user

can give commands (data from application running concurrently) to the RPK by pressing the

keys in the keyboard. (5:46-51.)

To the extent that Nokia fails to expressly teach "**from the application running concurrently**,"

'036 more explicitly discloses ('036, Abstract; 1: 40-68) a program designed to receive text from

other applications (like the application disclosed in Nokia), perform certain text-checking

functions (i.e., spell-checking), and respond with information about the results of the check.  The

'036 patent is explicitly directed to ('036, 2: 13-124) "an interface capable of providing text

checking functionality for a plurality of programs ... [which] can be ... application programs for

text processing."

It would have been obvious to one of ordinary skill in the art to combine Nokia and the '036

patent because both references relate to text based applications and disclose systems for parsing

textual data that has been input by a user.  Both references disclose systems for detecting text

data structures and linking them to actions.  It would have been obvious to one of ordinary skill

in the art to modify the text processing application in Nokia to include the text-checking

functions disclosed in the '036 patent. Indeed, such a combination of familiar elements, namely a

text processing application and a spell-checking feature, according to known programming

methods yields the predictable result required by these claims.


**Reasons for Confirmation**

Examiner **confirms claims 1-12, and 14**, in view of the explicit teachings in the '647

Specification, related to the "analyzer server."  See citations above (pages 7-8) presenting the

details of an analyzer server.   PenSoft and Nokia, alone or in combination with other prior art of
record in this reexamination fail to teach the features of an analyzer server.

Regarding independent claim 1, the prior art presented in this reexamination fails to teach "an
analyzer server for detecting structures in the data and for linking actions to the detected
structures."  Claims 2-12 are confirmed for being dependent on a confirmed independent claim.
Regarding claim 14, the prior art presented in this reexamination fails to teach an analyzer server
"means for detecting a structure in the data; means for linking at least one action to the detected
structure."  See 112 6th paragraph analysis of 'means for' language (Non Final 12/10/2010, p. 5):

> "means for detecting a structure in the data" at 3:39-41 - "The program 165...stored in RAM 170
> and causes CPU 120 to identify structures..." 3:61-64 - "Analyzer server 220 comprises...pattern analysis
> units, such as a parser and grammars or a fast string search function and dictionaries..."

> "means for linking at least one action to the detected structure" at 3: 39-41- "The program 165...stored in
> RAM 170 and causes CPU 120 to associate actions with the structures identified..." See 3: 65-67- "analyzer
> server 220 links actions...to detected structure using pointers."

## Notice Regarding Certain Reexamination Issues

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise
the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent
under reexamination throughout the course of this reexamination proceeding.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the
provisions of 37 CFR 1.136 apply only to "a Patent Applicant" and not to parties in a
reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings

"will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c). A request for extension of time must be filed on or before the day on which a response to this action is due, and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g). The mere filing of a request will not effect any extension of time. An extension of time will be granted only for sufficient cause, and for a reasonable time specified. The filing of a timely first response to this final rejection will be construed as including a request to extend the shortened statutory period for an additional month, which will be granted even if previous extensions have been granted. In no event, however, will the statutory period for response expire later than SIX MONTHS from the mailing date of the final action.

Amendment Proposed in Reexamination – 37 CFR 1.530(d)  Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c).

Any paper filed with the USPTO, i.e., any submission made, by either the Patent Owner or the Third Party Requester must be served on every other party in the reexamination proceeding, including any other third party requester that is part of the proceeding due to merger of the reexamination proceedings. As proof of service, the party submitting the paper to the Office must attach a Certificate of Service to the paper, which sets forth the name and address of the party

Application/Control Number: 90/011,287                                    Page 30

Art Unit: 3992

served and the method of service. Papers filed without the required Certificate of Service may be

denied consideration.   See 37 CFR 1.550(f)

All correspondence relating to this *ex partes* reexamination proceeding should be directed:

By EFS:         Registered users may submit via the electronic filing system EFS-Web, at
                https://sportal.uspto.gov/authenticate/authenticateuserlocalepf.html.

By Mail to:     Mail Stop Ex Partes Reexam
                Attn:  Central Reexamination Unit
                Commissioner for Patents
                United States Patent & Trademark Office
                P.O. Box 1450
                Alexandria, VA  22313-1450

By FAX to:      (571) 273-9900
                Central Reexamination Unit

By Hand:        Customer Service Window
                Randolph Building
                401 Dulany Street
                Alexandria, VA  22314

For EFS-Web transmission, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence (except

for a request for reexamination and a corrected or replacement request for reexamination) will be

considered timely filed if (a) it is transmitted via the Office's electronic filing system in

accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of

correspondence stating the date of transmission, which is prior to the expiration of the set period

of time in the office action.

Application/Control Number: 90/011,287                                          Page 31

Art Unit: 3992

Any inquiry concerning this communication or earlier communications from the examiner, or as

to the status of this proceeding, should be directed to the Central Reexamination Unit at

telephone number (571) 272-7705 or Mary Steelman at (571) 272-3704.


/Mary Steelman/

Mary Steelman, Reexamination Specialist                    Conferees:  /ZC/

Central Reexamination Unit 3992

(571) 272-3704