# EXHIBIT 3

<u>PUBLIC VERSION</u>

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN PERSONAL DATA AND MOBILE COMMUNICATIONS DEVICES AND RELATED SOFTWARE** | Inv. No. 337-TA-710 |

<u>Order No. 22</u>

Third-party Google, Inc. ("Google") moves to limit the subpoena *duces tecum* and subpoena *ad testificandum* issued to Google in this investigation on August 27, 2010, upon the application of complainants Apple, Inc. and NeXT Software, Inc. (collectively, "Apple"). (Motion No. 710-22). The motion is opposed by Apple. As set forth below, the motion is <u>granted</u> as to Deposition Topics 3 and 6, <u>granted in part</u> as to Google Chrome OS, and in all other respects <u>denied</u>.

A.   **Requests and Deposition Topics Related to Google Chrome OS**

The motion to exclude all document requests and deposition topics relating to Google Chrome OS is <u>granted in part</u>. Apple's requests and deposition topics related to Google Chrome OS are limited to current or future HTC products using Chrome OS or any Chrome OS code used in HTC products.

Google asserts that Apple's subpoenas include 48 document requests and 49 deposition topics seeking information about the Google Chrome operating system that is not relevant to any

issue in this investigation. (Request Nos. 22-61, 63-64, 122-125, 134-135; Topic Nos. 18-36, 38-64, 134, 148-149). It further asserts that "Chrome OS, which is an open source operating system for netbooks, is not used on any HTC handsets and has never been accused in this Investigation." Mem. at 7. Finally, Google argues that "Apple has not accused the rumored HTC tablet of infringing any of its patents." Mem. at 8. Citing the complaint at ¶ 19 (accused HTC Android Products), and ¶ 20 (certain accused HTC DSP Products), Google argues that Chrome OS is not properly a part of this investigation.

Accordingly, Google argues that the requested discovery is not probative as to the alleged infringement of Apple's patents by respondent HTC's accused products, or to any other issue in this investigation. *Id.*

With respect to the scope of this investigation, ¶ 18 of the complaint in part reads, "The Accused Products include computing and mobile communication devices, including but not limited to cellular phones and smartphones, together with software designed for use on, and intended to be loaded onto, such devices." Apple is correct in asserting that a tablet is an example of a personal data or mobile communications device. Thus, a tablet that runs the Chrome OS falls within the scope of this investigation. *See* Opp. at 22.

Next, it is found that Apple has provided sufficient support for the discovery of the Google Chrome OS, as ordered. First, Apple cites to publicly available sources that have reported that Google is developing a tablet computing device using Chrome OS and that it has partnered with HTC to develop and market this product. Opp. at 21, citing Ex. 37 (Press Reports relating to HTC Chrome OS tablet). Second, Apple cites to an HTC-produced document

[                                                                              ] Finally, Apple

2

argues that Google's mere statement that it does not intend to sell any mobile communication device using Chrome OS is, without more, unreliable. Also, as noted by Apple, Google is not authorized to speak on behalf of HTC in terms of whether it has plans to sell any mobile communication device using Chrome OS.

In sum, given the above arguments, it is found that Apple may request documents and depose Google regarding Google Chrome OS. Keeping in mind the scope of the present investigation, however, document requests and deposition topics are to be limited to current or future HTC products using Chrome OS or any Chrome OS code used in HTC products. *See* Google Mem. at 8.

**B.     The Accused HTC Android Products**

Google's motion to limit the subpoena with respect to the Accused HTC Android Products is denied.

Google submits that many of Apple's deposition topics relating to "Accused HTC Android Products" seek "remarkably detailed information" and thus are overbroad and unduly burdensome. (Topic Nos. 9-10, 14-16, 72-79, 95-97, 99-104, 108-110, 113, 115, 116-122, 124, 126, 132, 153-162, 215-222). Mem. at 8-9. Further, Google notes that "Apple has defined 'Accused HTC Android Products' to include any past, current, or future HTC product based on the Android Platform. (Ex. A at Definitions, ¶ 21.)" *Id.* at 9.

Google additionally submits that the deposition topics are overbroad and unduly burdensome "because Google does not have, and cannot be expected to have, detailed knowledge of how HTC's products work, as opposed to how the Android platform works before it is modified by HTC." *Id.* In that regard, Google states that it develops Android source code and

3

makes it freely available under an open source license for downloading and customization for use in a product. "After receiving the Android code, HTC and others are free to add, delete or modify any portion of such code to suit their needs." *Id.*

Nonetheless, Google acknowledges that three exceptions apply with respect to HTC. Google states that it does have information regarding the Android software to be used in the HTC Nexus One Handset, the HTC Dream (marketed as the T-Mobile G1) handset, and myTouch3G handset. Google is, therefore, willing to provide a witness to testify regarding its knowledge of the Android code installed in these three products. Mem. at 9-10.

Apple argues that it is entitled to discovery from Google as to all, not just three, of the HTC Products for which Google provides the Android OS. Opp. at 14. Apple is correct. First, Google developed, designed, and provided HTC with the Android OS for all of the accused HTC products. *See* Opp. at 14, citing Ex. 1 (HTC Response to Apple Interrogatory Nos. 20 and 22). Thus, Apple asserts, "[a]s a result, HTC has pointed to Google as a source of relevant knowledge regarding the accused technology and other issues in the case in response to no less than 23 of its responses to Apple's interrogatories as well as in the related District of Delaware action." *Id.* (citations to interrogatories omitted).

Second, HTC has already objected to the information being sought here from Google as a deposition topic, "because Android has been developed by one or more third parties, [and] is outside the knowledge of HTC personnel." *Id.,* citing Ex. 16 (HTC's Responses to Apple's First Notice of Examination, Topics 51-54 & 58-160). Thus, Google, the developer and supplier of the Android OS, is in the best position (in fact, the only one that can do so) to provide the requested information as to the design and operation of the Android OS in the HTC Accused

4

Products.

Third, Apple points to emails between Google and HTC employees that, in Apple's view, illustrate a collaborative effort in working on certain Accused HTC Products, including the accused HTC Droid Eris phone  Opp. at 15-16.

### C. Deposition Topics Requiring "All Communications" Regarding Apple or "Any Apple Product"

The motion to limit the deposition topics requiring "all communications" regarding Apple or "any Apple product" is <u>granted</u>.  Deposition Topic Nos. 3 and 6 shall be limited to communications regarding the accused functionality of the Android Platform, the Accused HTC Products, and the Asserted Patents.

Google argues that Deposition Topics 3 and 6 should be limited inasmuch as they require Google to produce testimony regarding "all communications" involving Apple or "any Apple Product." Mem. at 10.  Specifically, Topic No. 3 states, "All Communications between Google and HTC regarding the Android Platform; any of the Accused HTC Android Products; the Asserted Patents; Apple; or any Apple Product, including but not limited to any MacBook, iPhone, or iPad." Topic No. 6 states, "Google's Communications with any Entity regarding the Asserted Patents, Apple, any Apple Product, including but not limited to any MacBook, iPhone, or iPad; or the features or functionalities of the Android Platform."

Google submits that these requests are unduly burdensome and impermissibly broad on their face.  "These topics should be limited to communications regarding the accused functionality of the Android Platform, the Accused HTC Products and the Asserted Patents." Mem. at 10.  This time, Google is correct.

5

Apple's response that "Google communications with HTC regarding Apple's domestic industry products, such as the iPhone, may evidence HTC's recognition of these products' success in the marketplace and HTC's desire to replicate the look and feel of these devices in its line of smartphones," is just not enough to support such expansive deposition topics. While Apple argues that Google seeks to "too narrowly" limit the deposition topics, the fact of the matter is that as presently phrased, those topics are "too broad" and for that reason they are deficient.

D.   **Deposition Topics Regarding Multitouch**

Google's motion to strike the deposition topics regarding Multitouch is <u>denied</u>.

Google argues that Deposition Topics 146 and 147 involve touchscreen technology that is not relevant to any issue in this investigation. In Google's view, "[t]hese requests are a transparent effort by Apple to improperly obtain information for use in *Apple Inc. v. High Tech Computer Corp.*, 1:10-CV-00167-GMS (D.Del.), in which Apple alleges that HTC infringes its touchscreen patents." Mem. at 11.

Apple disagrees, arguing that "Android's multitouch services are relevant to this case because their implementations provide evidence that the accused Android "Binder" function is being used in a way that infringes the method claims of Apple's '721 patent." Opp. at 16-17. Citing to an infringement claim chart, Apple asserts that its claim charts for the '721 patent explicitly identify an Android functionality known as the "Binder" mechanism as providing the underlying implementation for the claimed interprocess communication mechanisms (IPC). *Id.* at 17.

Moreover, Apple states that "Android's multitouch functionality – and its handling of

6

touchscreen events in general – relies on the accused Binder functionality to work." *Id.* Specifically, "the service that handles touchscreen inputs, including multitouch (called the 'Window Manager Service'), runs in a different process from the applications it talks to (e.g., a web browser). As a result, the Window Manager Service uses the accused Binder-IPC functionality to process multitouch events and dispatch them to the applications that can respond to them." *Id.,* citing Exs. 30 & 31 (Anatomy and Physiology of an Android).

Given the generality of Google's objection, and the specificity of Apple's response, Apple has clearly established the relevance of Deposition Topics 146 and 147.

### E. Deposition Topics Regarding Java Applications

The motion to strike the deposition topics regarding Java applications is <u>denied</u>.

Google asserts that the "vast majority of information" demanded by the deposition topics regarding "applications written in Java" and "Java applications" is not relevant to the present investigation. In support of this assertion, Google submits that Apple's patents are not directed at Java applications in general, or the Java programming language itself. "Yet, Apple is seeking discovery on all Java applications written for the Android platform." Mem. at 11, citing Topic Nos. 16, 150-171.

In addition, Google argues that the deposition topics are overly broad. It states that because Android applications are typically written in Java, the deposition topics "directed to 'Java applications for the Android platform,' call for testimony regarding virtually every single one of the over 30,000 Android applications in existence." Mem. at 11-12 (citing Topic 165 as an example).

Apple argues that its requests relating to Java application seek information relevant to this

investigation. Apple is correct on this point. As noted by Apple, Java is the programming language used for Android applications, including the Android applications that allegedly infringe the patents-in-suit. Opp. at 17-18. In that regard, Apple has identified the relevance of Java applications (object-oriented applications for the Android OS are written in Java) with respect to the alleged infringement of the '867 and the '983 patents, as well as the '486 and '852 patents. *Id.* at 18-19.

Furthermore, Google's undeveloped argument that the deposition topics are overbroad is unpersuasive. Without more than the assertion that such is the case, it must fail in light of the counter arguments offered by Apple. Moreover, with respect to Topic 165, Apple asserts that it has "consented to limit the identification of specific persons to the 'individuals responsible for or entities primarily involved in the subjects of those topics." Opp. at 19 n.9. Thus, while Google's overbroad argument fails, both it and Apple are expected, to the extent possible, to take the same type of reasonable approach as they did with respect to Topic 165.

### F.     Android Source Code

Google's motion is <u>denied</u> insofar as it relates to the Android source code.

Google seeks to limit the subpoena as it relates to deposition topics involving the Android source code. It argues that the source code "is freely available to everyone including Apple," and, therefore, it should not be required to perform an "exhaustive, laborious technical analysis" explaining how each subpart of the Android Platform functions in relation to every other subpart. Mem. at 12, citing Topic Nos. 67, 206-207, & 211-212.[1] In sum, Google submits that Apple can

---

[1] For example, Google states that "Apple demands testimony concerning '[t]he interactions between the Android Managed Services, Native System Servers, and Native Daemons and lower-level Android services or functionalities, including but not limited to device

download the Open Source Android code on the Internet and spend its own time and money analyzing it. To the extent that it does possess non-public Android code, Google will provide it to Apple, of course without Google's analysis. Mem. at 13.

Apple responds that it is not requesting Google to conduct any analysis of the Android code. Opp. at 19. Rather, "Apple simply seeks Google's knowledge regarding the design and operation of the Android platform – which Google wrote and provided to HTC, and which is the source of many of Apple's infringement allegations." Opp. at 19-20. Apple submits that this simply boils down to its need to obtain a "complete factual record," and that includes facts known by Google regarding the design and operation of the source code that Google developed and provided for use in the Accused HTC Products. Opp. at 20.

For the reasons advanced by Apple, the motion to limit the deposition topics relating to the Android source code is denied. Given Google's development of the Android Platform, and the connection between the Android source code and the HTC Accused Products, the subject deposition topics are proper. Moreover, Google's suggestion that it will be required to provide further analysis through discovery is unsupported, as is its inference that Apple's analysis by its own experts would be an acceptable equivalent to deposition testimony from the entity that developed the Android Platform.

### G. Deposition Topics Regarding Each Produced Document

The motion is <u>denied</u> insofar as it involves deposition topics regarding each produced

---

drivers, hardware abstraction layer components, daemons, or other kernel services or functionalities.' (Topic No. 67.)." Mem. at 12. *See id.* (Topic No. 206 wherein Apple demands that Google produce witnesses capable of testifying about individual software modules and any others that "implement or extend or are referenced by" those modules within "any Android Platform Source Code.")

document.

Google seeks to limit Deposition Topic Nos. 225 and 226 regarding each document produced by Google. It submits that it "cannot be expected to prepare a witness – or even multiple witnesses – to testify regarding these many aspects of each of the hundreds of thousands of documents that Google will produce in response to Apple's subpoena." Mem. at 14. Thus, Google submits, "[t]hese topics should be excluded or, at the very least, narrowed substantially so that Google can reasonably prepare a witness to testify about the company's document production." *Id.*

Apple's response is that the deposition topics are proper inasmuch as it needs to establish the authenticity of the documents and to lay a foundation for their admissibility. Apple also argues that other parties and third-parties to this investigation have been required to do what it is asking Google to do. Opp. at 24.

On balance, there is less to this dispute than meets the eye. Apple states that in lieu of live testimony, it has offered to accept a stipulation from Google regarding the requested authenticity and foundation of the documents it produces. Opp. at 25. Given this representation, it is now up to Google. It can either produce live witnesses or stipulate.

Finally, the parties are directed to confer on a reasonable time frame for complying with this order. In the event that the parties are unable to agree, they shall so inform this tribunal.

Within seven days of the date of this document, each party shall submit to the Office of Administrative Law Judges a statement as to whether or not it seeks to have any portion of the document redacted from the public version. The parties' submissions may be made by facsimile and, or, by hard copy. Any party seeking to have a portion of this document redacted

from the public version must submit to this office a copy of this document with red brackets indicating the portion, or portions, asserted to contain confidential business information.

So Ordered.

*Carl C. Charneski*
Carl C. Charneski
Administrative Law Judge

Issued: September 28, 2010

CERTAIN PERSONAL DATA AND MOBILE COMMUNICATIONS DEVICES AND
RELATED SOFTWARE                                                                                   337-TA-710

### PUBLIC CERTIFICATE OF SERVICE

I, Marilyn R. Abbott, hereby certify that the attached **ORDER NO. 22** has been served by hand upon the Commission Investigative Attorneys Erin D. E. Joffre, Esq, and the following parties as indicated, on _____ October 14, 2010.

Marilyn R. Abbott, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112A
Washington, D.C. 20436

**FOR COMPLAINANTS APPLE INC., f/k/a APPLE COMPUTER INC., AND NEXT SOFTWARE, INC. f/k/a NeXT COMPUTER:**

F. Christopher Mizzo, Esq.
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793

( ) Via Hand Delivery
( ) Via Overnight Mail
(X) Via First Class Mail
( ) Other: _____

**FOR RESPONDENT HIGH TECH COMPUTER CORP. a/k/a/ HTC CORP., HTC AMERICA INC. AND EXEDEA, INC.:**

James B. Coughlan, Esq.
**PERKINS COIE LLP**
607 Fourteenth St., N.W.
Washington, D.C. 20005-2003

( ) Via Hand Delivery
( ) Via Overnight Mail
(X) Via First Class Mail
( ) Other: _____

CERTAIN PERSONAL DATA AND MOBILE COMMUNICATIONS DEVICES AND
RELATED SOFTWARE                                                      337-TA-710

**FOR RESPONDENTS NOKIA CORP.
AND NOKIA INC.:**

| | |
|---|---|
| Paul F. Brinkman, Esq.<br>**ALSTON & BIRD LLP**<br>950 F Street, N.W.<br>Washington, D.C. 20004 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(X) Via First Class Mail<br>( ) Other: _____ |

**NON-PARTIES GOOGLE INC., DANIEL
BORNSTEIN, PATRICK BRADY,
ALEJANDRO MEDINA, THOMAS
MOSS, ANDREW RUBIN AND
BRIAN SWETLAND:**

| | |
|---|---|
| | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(X) Via First Class Mail<br>( ) Other: _____ |

Amy H. Candido, Esq.
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
50 California St., 22nd Floor
San Francisco, CA 94111

PUBLIC MAILING LIST

**Heather Hall**
LEXIS-NEXIS
9443 Springboro Pike
Miamisburg, OH 45342


**Kenneth Clair**
Thomson West
1100 Thirteen Street, NW, Suite 200
Washington, D.C. 20005