# EXHIBIT 20

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN JOSE DIVISION
 4
 5
    APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
 6  CORPORATION,                )
                                )  SAN JOSE, CALIFORNIA
 7              PLAINTIFF,       )
                                )  AUGUST 24, 2011
 8        VS.                    )
                                )  PAGES 1-90
 9  SAMSUNG ELECTRONICS CO.,    )
    LTD., A KOREAN BUSINESS      )
10  ENTITY; SAMSUNG             )
    ELECTRONICS AMERICA,         )
11  INC., A NEW YORK            )
    CORPORATION; SAMSUNG         )
12  TELECOMMUNICATIONS          )
    AMERICA, LLC, A DELAWARE     )
13  LIMITED LIABILITY           )
    COMPANY,                     )
14                              )
                DEFENDANTS.     )
15
16           TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE LUCY H. KOH
17          UNITED STATES DISTRICT JUDGE
18
19
20           APPEARANCES ON NEXT PAGE
21
22
23
24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                  CERTIFICATE NUMBER 9595
25
```

```
1
2    A P P E A R A N C E S:
3    FOR PLAINTIFF          MORRISON & FOERSTER
     APPLE:                 BY:  HAROLD J. MCELHINNY,
4                                MICHAEL A. JACOBS, AND
                                 RICHARD S.J. HUNG
5                           425 MARKET STREET
                            SAN FRANCISCO, CALIFORNIA  94105
6
     FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
7    APPLE:                 HALE AND DORR
                            BY:  WILLIAM F. LEE AND
8                                MARK D. SELWYN
9    FOR APPLE:             TAYLOR & COMPANY
                            BY:  STEPHEN E. TAYLOR AND
10                               STEPHEN MCG. BUNDY
                            ONE FERRY BUILDING, SUITE 355
11                          SAN FRANCISCO, CALIFORNIA  94111
12
     FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
13                          OLIVER & HEDGES
                            BY:  KATHLEEN M. SULLIVAN
14                          51 MADISON AVENUE, 22ND FLOOR
                            NEW YORK, NEW YORK  10010
15
                            BY:  VICTORIA F. MAROULIS AND
16                               KEVIN P.B. JOHNSON
                            555 TWIN DOLPHIN DRIVE
17                          SUITE 560
                            REDWOOD SHORES, CALIFORNIA  94065
18
                            BY:  MICHAEL T. ZELLER
19                          865 SOUTH FIGUEROA STREET
                            10TH FLOOR
20                          LOS ANGELES, CALIFORNIA  90017
21
22
23
24
25
```

 1  SAN JOSE, CALIFORNIA                 AUGUST 24, 2011

 2              P R O C E E D I N G S

 3         (WHEREUPON, COURT CONVENED AND THE

 4  FOLLOWING PROCEEDINGS WERE HELD:)

 5         THE CLERK:  CALLING CASE NUMBER 11-1846,

 6  APPLE, INC. V. SAMSUNG ELECTRONICS, ON FOR MOTION

 7  TO DISQUALIFY COUNSEL, MOTION FOR EXPEDITED TRIAL.

 8         COUNSEL, PLEASE COME FORWARD AND STATE

 9  YOUR APPEARANCES.

10         MR. MCELHINNY:  GOOD AFTERNOON, YOUR

11  HONOR.  HAROLD MCELHINNY, MIKE JACOBS, AND

12  RICHARD HUNG FOR APPLE AS PLAINTIFF.

13         MR. LEE:  GOOD AFTERNOON, YOUR HONOR.

14  BILL LEE, AND MY PARTNER, MARK SELWYN, REPRESENTING

15  APPLE ON THE COUNTERCLAIMS AND OUR COUNTERCLAIMS IN

16  REPLY.

17         THE COURT:  OKAY.  GOOD AFTERNOON.

18         MS. SULLIVAN:  GOOD AFTERNOON, YOUR

19  HONOR.

20         I'M SORRY.

21         MR. TAYLOR:  GOOD MORNING, YOUR HONOR, OR

22  AFTERNOON, YOUR HONOR.  STEPHEN TAYLOR REPRESENTING

23  APPLE IN CONNECTION WITH THE MOTION FOR

24  DISQUALIFICATION FOR BRIDGES & MAVRAKAKIS.

25         THE COURT:  OKAY.  IS MR. BUNDY WITH YOU?

1            MR. TAYLOR:  HE IS WITH ME.

2            THE COURT:  ALL RIGHT.  THANK YOU.

3            MS. SULLIVAN:  GOOD AFTERNOON, YOUR

4  HONOR.  KATHLEEN SULLIVAN FROM QUINN EMANUEL FOR

5  SAMSUNG, TOGETHER WITH MY PARTNERS, KEVIN JOHNSON,

6  VICTORIA MAROULIS, AND MICHAEL ZELLER.

7            THE COURT:  OKAY.  GOOD AFTERNOON.

8            MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.

9            THE COURT:  OKAY.  LET'S HANDLE THE

10  DISQUALIFICATION MOTION FIRST AND THEN WE CAN

11  HANDLE THE MOTION FOR EXPEDITED TRIAL AND THE CMC.

12            SO I HAVE QUESTIONS FOR BOTH SIDES ON THE

13  DISQUALIFICATION MOTION, SO I THINK WE'LL JUST DO

14  PING PONG AND JUST GO BACK AND FORTH BETWEEN THE

15  TWO PARTIES.

16            LET ME FIRST ASK JUST SOME FACTUAL

17  QUESTIONS.

18            WHY DID BRIDGES NOT FILE THEIR NOTICE OF

19  APPEARANCE UNTIL JUNE 16TH OF 2011 IF APPLE HAD

20  HIRED BRIDGES ATTORNEYS TO WORK ON THE SAMSUNG

21  DISPUTE AS EARLY AS SPRING OF 2010?

22            MR. TAYLOR:  MY UNDERSTANDING IS, YOUR

23  HONOR, THAT WHILE BRIDGES, MAVRAKAKIS WAS RETAINED

24  BY APPLE AND WAS HELPING APPLE ON THE ANDROID

25  RELATED DISPUTES, THAT IT WASN'T UNTIL THE FIRST

1    AMENDED COMPLAINT WAS FILED THAT THEY JOINED THIS

2    LITIGATION ON THE APPLE CLAIMS.

3           I BELIEVE IT HAD A LOT TO DO WITH THE

4    FACT THAT THE FIRM WAS SMALL AND WAS HEAVILY

5    INVOLVED IN THE ITC PROCEEDING AGAINST HTC.

6           BUT THEIR FIRST -- THEY FILED THEIR

7    NOTICE OF APPEARANCE WHEN THAT FIRST AMENDED

8    COMPLAINT WAS FILED.

9           THE COURT:  OKAY.

10          MR. TAYLOR:  THE THING --

11          THE COURT:  OKAY.  IT HAD NOTHING TO DO

12   WITH SAMSUNG'S OWN CASE OF FILING THE '604 PATENT?

13          MR. TAYLOR:  NOTHING, YOUR HONOR.

14          THE COURT:  OKAY.  LET ME ASK A QUESTION

15   TO SAMSUNG.

16          IT SEEMS A LITTLE BIT HARD TO BELIEVE

17   THAT THE SAMSUNG REPRESENTATIVES AT THAT

18   NEGOTIATION MEETING BACK IN THE FALL OF 2010

19   WOULDN'T HAVE RECOGNIZED AT LEAST

20   MR. MICHAEL PIEJA, AND PERHAPS AT LEAST THE BRIDGES

21   FIRM AND THE POTENTIAL CONFLICT.

22          MS. SULLIVAN:  SO, YOUR HONOR, FOR

23   SAMSUNG -- FIRST OF ALL, JUST TO PUT IT IN CONTEXT,

24   WHERE THERE IS THE POSSESSION OF CONFIDENTIAL

25   INFORMATION ON A SUBSTANTIALLY RELATED CASE, IT WAS

1    THE DUTY OF APPLE TO SEEK INFORMED -- IT WAS THE

2    DUTY OF BRIDGES TO SEEK INFORMED CONSENT FROM

3    SAMSUNG.

4         THE SUBSTANTIAL RELATIONSHIP SHOULD HAVE

5    PUT THE BURDEN ON THEM.

6         IT WAS NOT SAMSUNG'S BURDEN TO SMOKE OUT,

7    SO TO SPEAK, WHETHER THERE WAS A CONFLICT -- A

8    CONFLICTED COUNSEL WORKING FOR THE OTHER SIDE.

9         BUT TO YOUR HONOR'S QUESTION ABOUT PIEJA,

10   REMEMBER, HE WAS A VERY JUNIOR PERSON IN THE

11   ERICSSON MATTER WITH MINIMAL HOURS COMPARED TO THE

12   HOURS EXTENDED BY MR. BRIDGES, ESPECIALLY IN

13   CONNECTION WITH THE FRAND ISSUES, AND BY MR. LEVIN

14   IN CONNECTION WITH THE '604 PATENT.  PIEJA WAS A

15   BIT PLAYER, VERY JUNIOR PERSON.

16        AND THE PEOPLE AT SAMSUNG AT THE MEETING

17   WERE FRONT LINE ENGINEERS, NOT NECESSARILY

18   FAMILIAR -- THEY WEREN'T LAWYERS FAMILIAR WITH THE

19   LITIGATION TEAM.

20        MR. BRIDGES WAS NOT PRESENT AT THE

21   MEETING.  THAT WOULD HAVE BEEN A RED LINE.

22        AND MR. ROBERT MAVRAKAKIS, WHO WAS THERE,

23   HAD NOT BEEN INVOLVED IN ERICSSON.

24        SO WITH RESPECT, THERE WAS NO BASIS FOR

25   SAMSUNG TO INTUIT THAT, FROM THE PRESENCE OF THIS

1   VERY JUNIOR PERSON WHO THEY DIDN'T NECESSARILY

2   RECOGNIZE, THAT CONFLICTED COUNSEL WAS ACROSS THE

3   TABLE FROM THEM.

4           BUT WE REALLY DON'T THINK THAT WAS

5   SAMSUNG'S BURDEN IN THE FIRST PLACE.  IT WAS

6   BRIDGES' DUTY TO SAMSUNG TO DISCLOSE THE CONFLICT

7   AND SEEK INFORMED WRITTEN CONSENT, NOT SAMSUNG'S

8   DUTY TO TRY TO FIGURE OUT WHETHER THERE WAS A

9   FAMILIAR FACE NOW WORKING FOR THE OTHER SIDE

10  ADVERSE IN A RELATED MATTER.

11          THE COURT:  ISN'T THERE A LITTLE BIT OF A

12  TENSION -- THE OPENING MOTION SAYS MR. PIEJA DID A

13  LOT OF WORK AND INCLUDES HIS TOTAL BILLED HOURS,

14  BUT THEN THE REPLY SAYS, WELL, ACTUALLY, HE'S

15  REALLY A JUNIOR ASSOCIATE WHO DIDN'T DO A

16  SIGNIFICANT AMOUNT OF WORK.

17          SO WHICH ONE IS IT?  WAS HE A SIGNIFICANT

18  PLAYER IN THE SAMSUNG LITIGATIONS THUS REQUIRING

19  DISQUALIFICATION, OR WAS HE A SMALL BIT PLAYER AND

20  THUS JUSTIFIES WHY THE CONFLICT WASN'T PERCEIVED

21  EARLIER?

22          MR. TAYLOR:  WELL, ALL OF THE BRIDGES,

23  MAV LAWYERS I THINK WERE NOT SIGNIFICANT PLAYERS AS

24  YOUR HONOR WOULD KNOW FROM HAVING REVIEWED

25  MR. BRIDGES' DECLARATION WHERE HE SAYS HE WAS AT

1    LEAST A FOURTH TIER LAWYER HIMSELF.

2           BUT MR. PIEJA'S ROLE WAS MUCH LESS,

3    SIGNIFICANTLY MUCH LESS AS THE HOURS REFLECT.

4           IT IS TRUE, THOUGH, THAT HE IDENTIFIED

5    HIMSELF WITH THAT FIRM, WITH THE BRIDGES,

6    MAVRAKAKIS FIRM AT THAT MEETING THAT HE WAS HAVING

7    WITH SAMSUNG, AND WE THOUGHT IT WAS CLEAR TO THEM,

8    AND I THINK THE BRIDGES, MAVRAKAKIS FIRM THOUGHT IT

9    WAS CLEAR TO SAMSUNG, THAT THAT FIRM, THOSE

10   LAWYERS, WERE REPRESENTING APPLE ON SOMETHING VERY

11   UNRELATED TO ANYTHING THEY HAD DONE FOR SAMSUNG IN

12   CONNECTION WITH THE ERICSSON LITIGATION.

13          THE COURT:  WELL, LET ME ASK, IT ALSO

14   SEEMS TO BE A LITTLE BIT HARD TO BELIEVE THAT APPLE

15   WOULD NOT BE ABLE TO PREDICT THAT SAMSUNG WOULD

16   ACTUALLY COUNTERCLAIM AND WOULD NOT GO ON THE

17   OFFENSIVE IN THIS KIND OF NUCLEAR WAR BETWEEN, YOU

18   KNOW, FIERCE COMPETITORS.

19          SO I FIND IT A LITTLE BIT HARD TO BELIEVE

20   THAT APPLE THINKS THAT IT CAN JUST GO ON THE

21   OFFENSIVE IN ONE SORT OF UNILATERAL WAY, AND

22   ANYTHING WHERE SAMSUNG GOES ON THE OFFENSIVE IS

23   TOTALLY UNRELATED AND SEPARATE.

24          ISN'T THIS WHAT HAPPENS IN THESE KINDS OF

25   CASES?  THE DEFENSE ALWAYS GOES ON THE OFFENSIVE

1    AND COUNTERCLAIM WITH THEIR OWN I.P.

2           SO THIS IS SOMETHING THAT APPLE SHOULD

3    HAVE ANTICIPATED.

4           MR. TAYLOR:  WELL, PERHAPS, YOUR HONOR,

5    BUT APPLE I THINK DID ANTICIPATE IT.

6           AND THE IRONY OF THIS MOTION, IF I MAY,

7    IS THAT I THINK THE BRIDGES, MAVRAKAKIS FIRM AND

8    APPLE CONDUCTED THEMSELVES EXACTLY IN COMPLIANCE

9    WITH THE RULE OF PROFESSIONAL CONDUCT 3-310(E) IN

10   THIS SENSE:  THAT RULE SAYS THAT A MEMBER SHALL NOT

11   ACCEPT EMPLOYMENT IF THAT EMPLOYMENT WILL REQUIRE

12   THE DISCLOSURE, OR MIGHT INVOLVE THE DISCLOSURE, OF

13   CONFIDENTIAL INFORMATION RELATING TO A PRIOR

14   EMPLOYMENT.

15          SO YOU DON'T AGREE TO REPRESENT APPLE IN

16   THE APPLE-ANDROID LOOK AND FEEL MULTITOUCH CASE

17   AGAINST SAMSUNG IF YOU'VE HAD A PRIOR

18   REPRESENTATION FOR SAMSUNG WHICH IS SUBSTANTIALLY

19   RELATED TO THIS APPLE-ANDROID CLAIM.

20          APPLE COMES TO THE FIRM AND SAYS, "CAN

21   YOU HANDLE THIS MATTER?  CAN YOU REPRESENT US ON

22   THE ANDROID MATTER, INCLUDING AGAINST SAMSUNG?"

23          THE FIRM SAYS, I THINK ENTIRELY

24   APPROPRIATELY, "WELL, LET'S LOOK AND SEE WHETHER

25   THERE'S ANY SUBSTANTIAL RELATIONSHIP BETWEEN THIS

1    ANDROID CASE AND WHAT WE DID FOUR YEARS AGO IN THE

2    ERICSSON CASE."

3            AND APPLYING CALIFORNIA LAW, I THINK

4    COMPLETELY CORRECTLY, WHAT THEY DECIDE IN COMPARING

5    THE CURRENT REQUEST FOR REPRESENTATION WITH THE

6    PRIOR REPRESENTATION IS IF -- AS THE FARRIS AND

7    OTHER CASES SAY, YOU LOOK FOR OVERLAP IN THE FACTS

8    AND THE LEGAL ISSUES AND THEY LOOK AND SAY, "IN

9    ERICSSON, WE WERE TALKING ABOUT STANDARDS PATENTS,

10   WE WERE TALKING ABOUT" --

11           THE COURT:  BUT SUBJECT TO INTERFACE,

12   USER INTERFACE.

13           MR. TAYLOR:  FRAND ISSUES, YES.

14           BUT I THINK THE KEY IN THIS CASE IS ABOUT

15   A USER INTERFACE THAT INVOLVES TOUCH SCREENS.

16           AND AS MR. BRIDGES SAYS, NOT ONLY DID

17   THESE PHONES THAT ARE AT ISSUE HERE NOT EXIST, BUT

18   NO ANDROID PHONE, AS FAR AS WE'RE AWARE OF, EXISTED

19   AT THE TIME THAT THEY WERE DOING THE REPRESENTATION

20   OF ERICSSON.  NONE.

21           SO THE PHONE THAT THE BRIDGES, MAVRAKAKIS

22   FIRM WAS WORKING ON WHEN IT WAS DOING THE ERICSSON

23   CASE WAS NOT ONLY A WHOLE DIFFERENT GENERATION OF

24   PHONE, IT WAS BUILT ON AN ENTIRELY DIFFERENT

25   SOFTWARE PLATFORM.

1          MY UNDERSTANDING IS, AND THE RECORD WOULD

2     SHOW, THAT THE ANDROID SOFTWARE PLATFORM, FROM THE

3     VERY BOTTOM TO THE VERY TOP OF THE USER INTERFACE,

4     IS COMPLETELY INDEPENDENT AND SEPARATE FROM

5     ANYTHING IN THE OTHER CASE.

6          SO THE PHONES INVOLVED IN THIS CASE AND

7     THE TECHNOLOGY INVOLVED IN THIS CASE DIDN'T EXIST

8     AT THAT TIME.

9          THE PATENTS WERE DIFFERENT.

10          THE PRODUCTS WERE COMPLETELY DIFFERENT.

11     THERE WAS NO APPLE ISSUE IN THE ERICSSON CASE.

12          AND WHEN YOU LOOK AT THE MICROSOFT CASE

13     AND YOU LOOK AT THE CIBA-GEIGY CASE AND YOU LOOK AT

14     THE ARCTIC CAT CASE, THESE ARE PATENT CASES WHERE

15     SOMEONE TRIES TO DISQUALIFY SOMEONE FOR DOING

16     ANOTHER PATENT CASE IN THE SAME AREA OF

17     TECHNOLOGY -- LIKE IN THE MICROSOFT CASE ON THE

18     WIRELESS LAN CONNECTIONS, OR PATCHES, YOU KNOW,

19     INTERDERMAL PATCHES IN THE CASE OF THE CIBA-GEIGY

20     CASE -- AND THE COURT SAID THAT IS NOT, FOR

21     PURPOSES OF A SUBSTANTIAL RELATIONSHIP FOR AN

22     ETHICS VIOLATION AND FOR A CONFLICT OF INTEREST,

23     THAT IS NOT A SUBSTANTIALLY RELATED CASE.

24          TO BE SUBSTANTIALLY RELATED, YOU HAVE TO

25     SHOW THAT THERE IS OVERLAP SUCH THAT THE SAME

1    ISSUES, OR VERY, VERY SIMILAR ISSUES, ARISE.

2              I SEE IT THIS WAY --

3              THE COURT:  BUT YOU WOULD CONCEDE THAT IF

4    THE COUNTERCLAIMS STAY IN THIS CASE, THE '604

5    PATENT IS A VERY OBVIOUS AND VERY BLATANT OVERLAP

6    AND SUBSTANTIAL REPRESENTATION BETWEEN WHAT BRIDGES

7    DID IN ERICSSON AND IT'S DOING NOW FOR APPLE?

8              MR. TAYLOR:  WELL, THE -- THAT'S, I

9    THINK, THE FUNDAMENTAL ISSUE THAT THE MOTION

10   RAISES.

11             IF YOU'RE GOING TO ACCUSE A LAWYER OF

12   UNETHICAL CONDUCT OR CONFLICT OF INTEREST AND TRY

13   AND DEPRIVE A CLIENT OF THEIR LAWYER, IS IT OKAY,

14   IS IT PERMISSIBLE FOR A LAWYER TO SAY, "I CAN

15   ACCEPT THE REPRESENTATION YOU'RE ASKING ME TO

16   UNDERTAKE.  YES, I CAN ACCEPT THAT."

17             NOW, AT THE TIME BRIDGES, MAV SAID --

18   BRIDGES, MAVRAKAKIS SAID, "WE HAVE DONE OTHER WORK

19   FOR APPLE.  YOU NEED TO UNDERSTAND THIS.  IF SOME

20   OF THE STANDARDS MATERIAL, PATENTS OR THESE OTHER

21   ISSUES ARISE, WE WOULDN'T BE ABLE TO DO THAT.  BUT

22   WE CAN DO THIS."

23             AND THE LAW IN CALIFORNIA IS THAT YOU CAN

24   DO THAT.  THERE'S NO LIFETIME BAN ABOUT EVER BEING

25   ADVERSE TO A FORMER CLIENT.

1        THE BAN IS TWO THINGS:   KEEP EVERYTHING

2   YOU LEARN CONFIDENTIAL, WE ALL DO THAT ALL THE TIME

3   FOR A FORMER CLIENT; AND SECONDLY, DON'T DO

4   SOMETHING THAT'S SO CLOSELY RELATED THAT IF YOU'RE

5   REPRESENTING THE CLIENT, YOUR DUTIES WILL BE

6   CONFLICTED.

7        SO IT'S LIKE THIS, AND IT'S PRETTY STARK

8   AND, I THINK, TANGIBLE.  DON'T TAKE A

9   REPRESENTATION FOR APPLE THAT INVOLVES THE

10  STANDARDS PATENTS OR ANYTHING RELATING TO THOSE

11  PHONES OR THOSE TECHNOLOGY FOR THIS REASON:  YOU

12  HAVE AN OBLIGATION TO SAMSUNG TO KEEP EVERYTHING

13  CONFIDENTIAL, EVERYTHING YOU LEARNED BACK IN --

14        THE COURT:  I JUST -- I'M SORRY TO

15  INTERRUPT YOU.

16        MR. TAYLOR:  SURE.

17        THE COURT:  I JUST FIND IT HARD TO

18  BELIEVE THAT APPLE WOULD HIRE BRIDGES IN SPRING OF

19  2010 FOR THE DISPUTE WITH SAMSUNG AND NOT THINK IT

20  HAD AN ADVANTAGE THAT THESE BRIDGES LAWYERS HAD

21  PREVIOUSLY WORKED FOR SAMSUNG IN LITIGATION ON

22  THESE MOBILE PHONE PRODUCTS, AS THEY EXISTED AT THE

23  TIME, AND I UNDERSTAND WHAT YOU'RE SAYING, THAT

24  2006/2007 LOOKS DIFFERENT THAN 2010/2011.

25        I THINK APPLE ASSUMED THE RISK WHEN IT

1    HIRED THESE LAWYERS, PERHAPS THINKING IT AN

2    ADVANTAGE THAT THEY HAD REPRESENTED SAMSUNG, SO YOU

3    SUFFER THE CONSEQUENCE OF THE DISQUALIFICATION.

4              MR. TAYLOR:  I THINK WHAT THE LAW IS, AND

5    THIS IS WHAT WE'RE SUBMITTING TO YOUR HONOR, IS

6    THAT CLIENTS AND LAWYERS MAY HAVE SEPARATE

7    REPRESENTATION.  THEY MAY SAY, "YES, BRIDGES,

8    MAVRAKAKIS IS GOING TO COME IN AND REPRESENT US ON

9    THESE PATENTS, EVEN IF WE ANTICIPATE THAT THERE

10   WILL BE COUNTERCLAIMS.  WE ARE GOING TO HAVE

11   SEPARATE COUNSEL FOR THOSE COUNTERCLAIMS," AS APPLE

12   HAS DONE HERE.

13             WILMER, HALE REPRESENTS APPLE ON THE

14   COUNTERCLAIMS.

15             BRIDGES, MAVRAKAKIS DOES NOTHING ON THE

16   COUNTERCLAIMS.

17             THE COURT:  OKAY.  BUT IT'S NOT REALISTIC

18   TO THINK THEY'RE NOT GOING TO COORDINATE ON

19   POSITIONS TO KNOW WHAT THE IMPLICATIONS ARE GOING

20   TO BE FOR INFRINGEMENT ARGUMENTS, FOR VALIDITY

21   ARGUMENTS, BOTH ON APPLE'S AFFIRMATIVE CASE AND ON

22   SAMSUNG'S COUNTERCLAIMS.

23             IT'S JUST NOT CREDIBLE THAT THERE'S NOT

24   GOING TO BE SOME COMMUNICATION TO COORDINATE TO

25   MAKE SURE THAT YOU'RE NOT TAKING A POSITION IN ONE

1    CASE THAT'S GOING TO UNDERMINE THE POSITION IN THE

2    OTHER CASE.

3              MR. TAYLOR:  WELL, THERE'S -- IN THIS

4    MATTER, YOUR HONOR, THERE'S CERTAINLY NO EVIDENCE

5    OF ANY SUCH COORDINATION.

6              BRIDGES, MAVRAKAKIS HAS ETHICAL

7    OBLIGATIONS NOT TO GET INVOLVED IN THE

8    REPRESENTATION BASED ON RULE 3-310.

9              BRIDGES, MAVRAKAKIS HAS AN OBLIGATION NOT

10   TO DISCLOSE ANY CONFIDENTIAL INFORMATION.

11             AND THE COURT, EVEN IN ITS OWN DECISION

12   IN THE ORACLE CASE RECENTLY, POINTED TO AUTHORITIES

13   THAT SAY "WE WILL NOT SPECULATE ON WHETHER SOMEONE

14   MIGHT, AT SOME POINT, BREACH AN ETHICAL

15   OBLIGATION."

16             IT'S PARTICULARLY TRUE HERE WHEN THE TWO

17   MATTERS ARE INDEED VERY SEPARATE.  THEY WERE FILED

18   AS SEPARATE CASES.  THEY WERE ORIGINALLY NOT BEFORE

19   YOUR HONOR WHATSOEVER.

20             SAMSUNG THEN TOOK ADVANTAGE OF THE

21   OPPORTUNITY TO DISMISS AND REFILE HERE, AND IT'S

22   REALLY ONLY BECAUSE THEY TOOK THE ACTION THAT THEY

23   TOOK TO COMBINE TWO COMPLETELY UNRELATED CASES THAT

24   HAVE, FROM THE BEGINNING, DIFFERENT REPRESENTATION

25   FROM COUNSEL, THAT THEY'RE ABLE TO COME TO YOUR

1   HONOR AND MAKE THIS ARGUMENT.

2           AND THE CONCERN I HAVE IS THAT WHEN WE'RE

3   LOOKING AT CONFLICTS OF INTEREST, WE LOOK TO SEE AT

4   ONE THING:  IS THERE A RELATIONSHIP IN THE LEGAL

5   ISSUES AND FACTUAL ISSUES IN THE FIRST

6   REPRESENTATION, THE ERICSSON REPRESENTATION, AND

7   THE REPRESENTATION, THE REPRESENTATION THAT

8   BRIDGES, MAVRAKAKIS AGREED TO TAKE, WHICH IS

9   LIMITED IN SCOPE?

10           IT'S LIMITED ONLY TO THE APPLE

11   AFFIRMATIVE CLAIMS HAVING TO DO WITH THE LOOK AND

12   FEEL AND MULTITOUCH SCREEN.

13           THE COURT:  LET ME ASK -- I'M SORRY.

14           MR. TAYLOR:  GO AHEAD.

15           THE COURT:  GO AHEAD.

16           MR. TAYLOR:  AND, YOUR HONOR, I THINK THE

17   LAW IN CALIFORNIA IS CLEAR THAT LAWYERS MAY, JUST

18   AS THEY DID IN THE HILLEBY CASE AND PLANT CASE AND

19   AS WE'VE SEEN IN OTHER CASES, LAWYERS MAY, DO, AND

20   SHOULD LIMIT THEIR REPRESENTATION SO THAT THEY

21   DON'T VIOLATE THESE ETHICAL CANONS AND GET

22   CONFLICTS OF INTEREST.

23           THE COURT:  LET ME ASK MS. SULLIVAN, IT

24   DOES LOOK LIKE SORT OF SOME STRATEGIC OR TACTICAL

25   MANEUVERING FOR SAMSUNG TO FILE A SEPARATE CASE,

1   MAKE AN ADMINISTRATIVE MOTION TO HAVE IT RELATED,

2   AND THEN SAY, "OH, WAIT A MINUTE.  I'M JUST GOING

3   TO DISMISS THAT CASE AND NOW I'M GOING TO ASSERT

4   ALL OF THAT SAME I.P. AS A COUNTERCLAIM IN APPLE'S

5   CASE."

6           MS. SULLIVAN:  NOT AT ALL, YOUR HONOR.

7           IF YOU RECALL, IT WAS AT YOUR HONOR'S

8   INVITATION THAT WE FILED -- REFILED AS

9   COUNTERCLAIMS.  IN THE MAY CONFERENCE WITH YOUR

10  HONOR, IT WAS YOUR HONOR'S SUGGESTION, AND WE

11  THOUGHT IT WAS APPROPRIATE.

12          THERE WAS NOTHING STRATEGIC ABOUT THIS.

13  APPLE SUED SAMSUNG, SAMSUNG WANTED TO MAKE AN

14  AGGRESSIVE MOVE BACK, WANTED TO FILE OUR CLAIMS

15  BEFORE WE HAD TO ANSWER APPLE'S CLAIMS.  WE DID

16  THAT.

17          WHEN WE WERE CONFERRING WITH YOUR HONOR,

18  IT WAS YOUR HONOR'S OWN SUGGESTION THAT WE REFILE

19  THEM AS COUNTERCLAIMS, AND YOUR HONOR PROPERLY

20  RULED ON MAY 20TH THAT THEY ARE RELATED, AND

21  THEY'RE RELATED FOR REASONS THAT WERE OBVIOUS THEN,

22  AND I THINK WHAT MR. TAYLOR IS REALLY TRYING TO DO

23  HERE IS TO ASK YOU, OUTSIDE OF THE SCOPE OF THESE

24  MOTIONS, TO RECONSIDER YOUR DECISION ON THE MOTION

25  TO TREAT AS RELATED ON WHICH YOUR HONOR CORRECTLY

1   RULED THE CASES WERE RELATED.

2          BUT LET ME JUST GO BACK AND -- YOUR

3   HONOR, WE DO UNDERSTAND THAT ARGUING FOR A

4   DISQUALIFICATION IS A GRAVE MATTER.  WE DO NOT DO

5   IT LIGHTLY.  WE DO NOT THINK THIS IS A CLOSE CASE

6   FOR ALL THE REASONS THAT YOUR HONOR ALREADY GAVE.

7          AND LET ME START WITH THE POINT THAT YOUR

8   HONOR STARTED WITH, WHICH IS THAT IF THE '604

9   PATENT IS IN THE CASE THROUGH THE COUNTERCLAIMS,

10  WE'RE DONE BECAUSE THAT PATENT WAS INVOLVED IN

11  SONY-ERICSSON AND WAS THE SUBJECT OF THOUSANDS OF

12  HOURS OF WORK BY THE BRIDGES FIRM, AND THAT

13  ESTABLISHES AN ALMOST PER SE SUBSTANTIAL

14  RELATIONSHIP HERE.

15         BUT WHAT I WANT TO STRESS TO YOUR HONOR

16  IS THAT EVEN IF YOU WERE TO CONSIDER THE APPLE

17  CLAIMS SEPARATELY, YOU STILL MUST DISQUALIFY

18  BRIDGES & MAVRAKAKIS BECAUSE THEIR KNOWLEDGE

19  FROM -- OF CONFIDENTIAL INFORMATION, PRIVILEGED

20  INFORMATION, STRATEGIC DECISIONS BY SAMSUNG IN THE

21  SONY-ERICSSON LITIGATION IS SUBSTANTIALLY RELATED

22  TO APPLE'S CLAIMS AGAINST SAMSUNG.

23         IN OTHER WORDS, THE DISQUALIFICATION IS

24  OBVIOUS WITH RESPECT TO SAMSUNG'S COUNTERCLAIMS

25  AGAINST APPLE .

1          BUT IT EXISTS TO DISQUALIFY THE BRIDGES

2     FIRM EVEN WITH RESPECT TO APPLE'S CLAIMS.  AND LET

3     ME EXPLAIN THAT.

4          MR. TAYLOR, AS IN THE PAPERS, KEEPS

5     SAYING, "OH, WELL, WE'RE IN A NEW WORLD."

6          THE COURT:  WELL, THAT'S WHAT

7     MR. VERHOEVEN SAID AS WELL.

8          MS. SULLIVAN:  WELL, HE HAD SOMETHING

9     ABOUT CABBAGES, YOUR HONOR, AND NONE OF THE REST OF

10    US IS FROM IOWA AND WE DIDN'T QUITE UNDERSTAND THAT

11    PEOPLE KEPT CABBAGES FOR SIX MONTHS IN IOWA.

12          BUT THE POINT IS THAT OF COURSE THE

13    TECHNOLOGY IS CHANGING, YOUR HONOR.

14          BUT LET'S TALK ABOUT THE WAYS IN WHICH

15    THE TECHNOLOGY IS CONTINUOUS.

16          SO SAMSUNG HAS BEEN MAKING MOBILE PHONES

17    FOR A LONG TIME, AND IN FACT, THE POINT OF THE

18    ANDROID PHONES, THEY'RE ALL MADE TO BE BACKWARD

19    COMPATIBLE WITH THE EARLIER MODELS.

20          THE CELL PHONES THAT SAMSUNG IS MAKING

21    AND THE CELL PHONES THAT WE ACCUSE APPLE OF

22    INFRINGING, THE PATENTS IN THE CELL PHONES THAT WE

23    ACCUSE APPLE OF INFRINGING ARE PART OF A CONTINUOUS

24    EVOLUTION THAT GOES BACK TO 2006 AND 2007, THE VERY

25    TIMEFRAME THAT THE BRIDGES FIRM WAS REPRESENTING

1    SAMSUNG.

2         AND YOUR HONOR, I NEED TO POINT YOU -- I

3    CAN POINT YOU TO A VERY SPECIFIC POINT IN THE APPLE

4    COMPLAINT AS AMENDED IN JUNE AGAINST SAMSUNG.

5         IF YOU LOOK AT PARAGRAPH 80 OF THE

6    AMENDED COMPLAINT, THE APPLE COMPLAINT IS ACCUSING

7    A PHONE THAT SAMSUNG INTRODUCED IN KOREA IN

8    DECEMBER OF 2006, THAT'S THE F700, AND THIS IS --

9    IF YOU LOOK AT COMPLAINT PARAGRAPH 80, THE F700,

10   ACCORDING TO THE TERMS OF THE AMENDED COMPLAINT

11   ITSELF, WAS INTRODUCED IN, A KOREAN VERSION, IN

12   DECEMBER OF 2006 AND WAS BEING DISCUSSED IN THE

13   UNITED STATES IN THE TIME PERIOD IN EARLY 2007 WHEN

14   THE IPHONE'S ABOUT TO BE INTRODUCED.

15        SO THERE'S CONTEMPORANEOUS TECHNOLOGY

16   THAT IS NOW BEING ACCUSED IN THIS CASE, EVEN IF YOU

17   JUST LOOK AT SAMSUNG VERSUS APPLE.

18        SO YOUR HONOR, TO BE CLEAR, WE THINK YOU

19   CORRECTLY RELATED THE CASES.  THE CASES ARE

20   PROPERLY ONE CASE NOW.

21        THERE ARE TREMENDOUS MATTERS -- JUDICIAL

22   EFFICIENCIES THAT COME FROM TRYING THEM TOGETHER.

23        BUT THE DISQUALIFICATION HERE MUST OCCUR,

24   WHETHER YOU CONSIDER APPLE VERSUS SAMSUNG TOGETHER

25   OR SEPARATELY FROM SAMSUNG VERSUS APPLE.

1           AND, YOUR HONOR, IF I COULD JUST SAY A

2    FEW MORE WORDS ABOUT THE TECHNOLOGY?

3           THE POINT IS THAT THE CELL PHONE -- WE'RE

4    NOT TALKING HERE ABOUT SOME VAGUE KNOWLEDGE OF A

5    BROAD TECHNOLOGY.

6           WE'RE TALKING ABOUT THE EVOLUTION OF

7    SMART PHONES FROM 2006 AND 2007 TO THE PRESENT INTO

8    THEIR CURRENT FORM.

9           SO THIS IDEA THAT THERE'S A DISCONTINUOUS

10   LEDGE AND THAT ANDROID IS A NEW THING THAT CAME OUT

11   OF THE ETHER LONG AFTER BRIDGES WAS GONE FROM THE

12   SAMSUNG REPRESENTATION IS JUST INCORRECT.

13          YOU KNOW THAT'S NOT HOW TECHNOLOGY WORKS.

14   EVERY TECHNOLOGY BUILDS ON THE PRIORS.

15          AND TO HAVE THE LAWYERS WHO SAT WITH

16   SAMSUNG -- THE LAWYERS AT BRIDGES, MAVRAKAKIS WHO

17   SAT WITH SAMSUNG'S ENGINEERS AND DESIGNERS AND

18   LEARNED EVERYTHING ABOUT SAMSUNG'S TELEPHONE

19   DESIGNS IN 2006 AND 2007 TURN AROUND AND GO OVER TO

20   APPLE TO SUE SAMSUNG ON CELL PHONE PATENTS RELATING

21   TO SMART PHONES IS, IS SO CLEARLY SUBSTANTIALLY

22   RELATED, WITHOUT REGARD TO THE COUNTERCLAIMS, THAT

23   THIS IS AN EASY DISQUALIFICATION MOTION.

24          YOUR HONOR, AMONG THE ISSUES IN THIS CASE

25   WILL BE WHETHER THERE'S PRIOR ART THAT INVALIDATES

1  THE APPLE PATENTS THAT IT'S ASSERTING, AND AMONG

2  THE PRIOR ART MAY BE SAMSUNG'S OWN PRIOR ART.

3          AND THE IDEA THAT SOMEHOW YOU COULD

4  REPRESENT SAMSUNG, LEARN ALL ABOUT PRIOR ART THAT

5  MIGHT BE RELEVANT TO THE CURRENT INVALIDITY

6  DEFENSES, AND JUST SAY, "OH, NO, WE'RE NOT GOING TO

7  DISCLOSE ANY CONFIDENTIAL INFORMATION," IS, AS YOUR

8  HONOR SUGGESTED, WHOLLY UNREALISTIC.

9          OF COURSE THE LAWYERS HAVE TO COORDINATE

10 AS YOUR HONOR SUGGESTED.

11         WE THINK THE ONLY REMEDY THAT CAN WORK IS

12 DISQUALIFICATION BECAUSE THIS MENTAL SEVERANCE,

13 THIS MENTAL WALL THAT APPLE -- THAT BRIDGES IS

14 PROPOSING IS COMPLETELY UNWORKABLE.

15         THE LAWYERS IN THE TWO TEAMS HAVE TO

16 COORDINATE, THEY HAVE TO STRATEGIZE, THEY HAVE TO

17 BE IN THE SAME CASE MANAGEMENT CONFERENCES.  THEY

18 HAVE TO BE IN THE SAME MEETS AND CONFERS.

19         THEY HAVE AN ETHICAL DUTY TO APPLE TO

20 TELL APPLE ANYTHING OUTSIDE THE IMMEDIATE SCOPE OF

21 THE REPRESENTATION THAT MIGHT AFFECT APPLE'S

22 INTERESTS.

23         IF THEY KNOW SOMETHING FROM THEIR SAMSUNG

24 REPRESENTATION, THEY'D BE VIOLATING THEIR ETHICAL

25 DUTY TO APPLE NOT TO TELL THEM.

1          SO THE IDEA THAT YOU CAN RELY ON THE

2   SCOPE OF REPRESENTATION TO CONFINE THE ETHICAL

3   DUTIES HERE IS UNREALISTIC.

4          WHAT IS GOING TO HAPPEN?  HOW WOULD THE

5   COURT ENFORCE IT?  THERE'S GOING TO BE A TELEPHONE

6   CONFERENCE WHERE THE BRIDGES LAWYERS SUDDENLY GO ON

7   MUTE FOR A FEW MINUTES -- SORRY -- GO ON HOLD FOR A

8   FEW MINUTE?  OR SAY "WE'RE GOING TO DROP OFF THE

9   CALL," AND THEN THEY COME BACK ON?

10          HOW WOULD THE COURT POSSIBLY ENFORCE THE

11   SUPPOSED MENTAL POLICING OF THE SUPPOSED MENTAL

12   WALL?

13          CALIFORNIA LAW, AS YOUR HONOR WELL KNOWS,

14   DOES NOT EVEN RESPECT ETHICAL WALLS THAT ARE

15   FORMALIZED WITHIN A FIRM AS A BASIS FOR UNDOING A

16   DISQUALIFICATION WHEN THERE IS A SUBSTANTIAL

17   RELATIONSHIP AND THE POSSESSION OF CONFIDENTIAL

18   INFORMATION.

19          HOW COULD AN INFORMAL, METAPHYSICAL,

20   MENTAL WALL POSSIBLY SUFFICE AS A REMEDY HERE?

21          SO YOUR HONOR IS ABSOLUTELY CORRECT.

22   THERE'S GOING TO BE COORDINATION BETWEEN THE TEAMS,

23   AND THERE'S GOING TO -- THERE'S GOING TO BE

24   KNOWLEDGE THAT'S IMPORTED TO THE APPLE TEAM FROM

25   THE BRIDGES FOLKS THAT IS CONFIDENTIAL AND VIOLATES

1    SAMSUNG'S RIGHTS, UNDER THE ETHICAL RULES, TO HAVE

2    A DUTY OF LOYALTY FROM ITS FORMER EMPLOYEES.

3             APPLE -- BRIDGES OWES A DUTY TO ITS

4    FORMER CLIENT, SAMSUNG.  IT OWES A DUTY TO ITS

5    CURRENT CLIENT, APPLE.

6             IT CANNOT PERFORM THOSE DUTIES WITHOUT

7    THE PROPHYLACTIC OF A DISQUALIFICATION HERE.

8             AND THAT DOESN'T PREJUDICE APPLE IN ANY

9    WAY.  THEY HAVE EXTRAORDINARILY ABLE COUNSEL, AS

10   YOUR HONOR -- IN MORRISON & FOERSTER AND IN WILMER,

11   HALE ON THE COUNTERCLAIMS.  THEY'RE NOT GOING TO BE

12   PREJUDICED.

13            AS YOUR HONOR NOTED, BRIDGES WAS VERY

14   LATE TO THE TABLE.  WHY WERE THEY BROUGHT IN SO

15   LATE.  WHY DID THEY FILE THEIR NOTICE OF APPEARANCE

16   SO LATE?  THEY WERE BUSY?  I DON'T THINK SO.

17            THE NOTION THAT A LATE COMER IS

18   INDISPENSABLE TO THE REPRESENTATION OF A VERY WELL

19   REPRESENTED AND ABLY REPRESENTED CLIENT IS

20   EXTREMELY UNPERSUASIVE.

21            SO -- AND I JUST WANTED TO ANSWER YOUR

22   HONOR'S LAST QUESTION ABOUT PIEJA, WHICH I DIDN'T

23   WANT TO GO UNANSWERED.

24            PIEJA DID BILL A LOT OF TIME BEHIND THE

25   SCENES, BUT HE WAS NOT SOMEONE WHO INTERFACED WITH

1    THE SAMSUNG EMPLOYEES, SO THE PEOPLE THAT WERE IN

2    THE SEPTEMBER 2010 MEETING WOULD NOT HAVE

3    RECOGNIZED HIM, SO WE DON'T THINK THERE'S ANY

4    WAIVER OF THEIR ARGUMENT.

5            THE COURT:  LET ME ASK, A CASE THAT APPLE

6    RELIES A LOT ON IN ITS OPPOSITION IS THE HILLEBY

7    CASE, AND IN THE HILLEBY CASE, HILLEBY WAS GIVEN

8    THE CHOICE, "YOU CAN KEEP TOWNSEND & TOWNSEND, BUT

9    IF YOU DO, YOU HAVE TO GIVE UP ALL OF YOUR DEFENSES

10   THAT ATTACK THE PATENT THAT," WHAT IS IT, MR. SEKA

11   OR THE OTHER ATTORNEY, MR. HESLIN, ACTUALLY

12   PROSECUTED THE PATENT.

13           SO WHAT IF I GAVE YOU THAT CHOICE, THAT,

14   OKAY, YOU CAN KEEP BRIDGES, BUT YOU'RE GOING TO

15   HAVE TO GIVE UP YOUR FAIR AND NON-DISCRIMINATORY,

16   ALL YOUR FRAND AND OTHER DEFENSES, ANTITRUST

17   DEFENSES ABOUT FAILURE TO MAKE THE PROPER

18   DISCLOSURES TOWARD THE STANDARD SETTING, ET CETERA,

19   ET CETERA?  ARE YOU GOING TO MAKE THAT CHOICE, TO

20   KEEP BRIDGES BUT GIVE UP ALL OF THOSE DEFENSES THAT

21   THE BRIDGES ATTORNEYS WOULD HAVE WORKED ON IN THE

22   ERICSSON LITIGATION?

23           MR. TAYLOR:  NO, YOUR HONOR, I DON'T

24   THINK WE'RE GOING TO MAKE THAT CHOICE, NOR, WITH

25   ALL DUE RESPECT, DO I THINK THAT'S WHAT HILLEBY

1   STANDS FOR OR SAYS.

2           WHAT HILLEBY SAYS IS THAT THE LAWYERS IN

3   THE BRIDGES, MAV SITUATION HERE CAN LIMIT THEIR

4   REPRESENTATION TO ONLY REPRESENTING THE CLIENT ON

5   COUNTERCLAIMS THAT ARE NOT RELATED TO WHAT THEY DID

6   BEFORE.

7           IF THERE ARE SOME COUNTERCLAIMS WHICH ARE

8   RELATED TO WHAT THOSE LAWYERS DID BEFORE, THEY MAY

9   NOT REPRESENT THE CLIENT.

10           EITHER THEY GET NEW COUNSEL, OR THE

11   CLIENT HAS TO DECIDE TO LET THOSE CLAIMS GO

12   FORWARD.

13           BUT THAT FIRM CANNOT REPRESENT -- THAT'S

14   ALL THE COURT SAID -- CANNOT REPRESENT THE CLIENT

15   ON CLAIMS THAT ARE RELATED TO SOMETHING THEY DID

16   BEFORE.

17           SO THAT WOULD BE THE SITUATION HERE WHERE

18   IT'S AS IF BRIDGES, MAV DID NOT HAVE A LIMITED

19   SCOPE OF REPRESENTATION AND IF THEY SAID, "WE ARE

20   ACTUALLY REPRESENTING APPLE IN CONNECTION WITH SOME

21   PART OF THE '604 OR SOMETHING ELSE," THIS COURT

22   COULD THEN SAY, "YOU HAVE TO GET SEPARATE COUNSEL

23   FOR THAT, OR YOU HAVE TO GIVE UP THOSE CLAIMS IF

24   YOU WANT BRIDGES, MAV TO CONTINUE TO REPRESENT

25   YOU."

1          BUT WHAT'S KEY IN THE CASE IS THEY SAID,

2    "IF YOU," BRIDGES MAV, THE EQUIVALENT, "IF YOU'RE

3    REPRESENTING YOUR CLIENT, EVEN ON A COUNTERCLAIM,

4    EVEN IN THE SAME CASE, ON SOMETHING THAT'S NOT

5    RELATED TO ANYTHING YOU DID BEFORE, YOU STAY IN THE

6    CASE.  YOU MAY LIMIT YOUR REPRESENTATION THAT WAY

7    TO AVOID A CONFLICT."

8          THE IRONY HERE IS MS. SULLIVAN'S ONLY

9    TODAY ABLE TO MAKE HER LEAD ARGUMENT ABOUT THE

10   RELATIONSHIP BETWEEN THE ERICSSON CASE AND THIS

11   CASE BECAUSE OF ACTION THAT SAMSUNG TOOK TO PUT

12   THEM TOGETHER.  THEY WERE TWO SEPARATE CASES.

13         THAT RAISES NO ISSUE OF SUBSTANTIAL

14   RELATIONSHIP AND BRIDGES, MAV.  BRIDGES, MAV WAS

15   ONLY IN ONE CASE.

16         SAMSUNG AND -- EXCUSE ME -- APPLE WAS

17   REPRESENTED VERY ABLY IN THE OTHER CASE BY WILMER,

18   HALE.

19         THERE WAS NO SUBSTANTIAL RELATIONSHIP

20   BETWEEN THOSE TWO CLAIMS UNTIL SAMSUNG THREW THEM

21   TOGETHER BY DISMISSING THEIR ACTION AND FILING THEM

22   BOTH IN THIS ACTION.

23         THERE IS NO CASE IN CALIFORNIA, AND THAT

24   IS THE LAW THAT YOUR HONOR IS FOLLOWING, THAT SAYS

25   WHAT YOU DO IS YOU COMPARE WHAT A LAWYER DID BEFORE

1    TO EVERYTHING THAT'S IN THE CASE, PARTICULARLY WHEN

2    THE OTHER PARTY HAS COMPLETE CONTROL OVER WHAT YOU

3    CAN PUT IN THE CASE.

4            THINK OF WHAT THAT WOULD MEAN.  IF YOU

5    HAD A PARTY UP HERE THAT WORKED, AT SOME POINT IN

6    THEIR PAST, ON SOME ASPECT OF SOME PIECE OF

7    LITIGATION, IF AGGRESSIVE AND CREATIVE COUNSEL CAN

8    GO FIND SOME COUNTERCLAIM SOMEPLACE TO PUT IN THAT

9    CASE, EVEN THOUGH THE LAWYER IS NOT DOING ANY WORK

10   ON THAT, NOT REPRESENTING THEM ON THAT, IF THAT

11   STRATEGIC AND TACTICAL MANEUVER CAN SUCCEED IN

12   COSTING THE CLIENT THIS LAWYER WHO PROPERLY

13   ACCEPTED REPRESENTATION, WHO'S PROPERLY LIMITED THE

14   SCOPE OF HIS OR HER REPRESENTATION, IF THAT

15   STRATEGIC MANEUVER COULD DO THAT, THIS COURT WILL

16   SEE MANY MORE MOTIONS FOR DISQUALIFICATION, BECAUSE

17   IT'S NOT A HARD THING TO DO TO LOAD UP A CASE WITH

18   A COUNTERCLAIM THAT WOULD CREATE THAT KIND OF A

19   PROBLEM.

20           THAT'S WHY CALIFORNIA COURTS SAY THE ONE

21   THING, IS THE PRIOR REPRESENTATION SUBSTANTIALLY

22   SIMILAR TO THE CURRENT REPRESENTATION, TO WHAT

23   BRIDGES, MAV HAS AGREED TO DO AND IS DOING?

24           CAN BRIDGES, MAV LIMIT THIS?  YES, THEY

25   CAN LIMIT IT.

1              THAT'S WHAT HILLEBY SAYS.  THAT'S WHAT

2    PLANT SAYS.  THAT'S WHAT THE OTHER AUTHORITIES THAT

3    WE HAVE CITED IN THE PROPOSED RULE SAY IN THE

4    COMMENTARY.

5              AND LAWYERS LIMIT THEIR REPRESENTATION

6    ALL THE TIME IN ORDER TO STAY WITHIN THE ETHICAL

7    BOUNDARIES.

8              THE ONLY THING THAT'S CHANGING THAT --

9    AND SAMSUNG'S LEAD ARGUMENT IS A MISSTATEMENT OF

10   THE LAW.  YOU DO NOT COMPARE WHAT BRIDGES, MAV DID

11   BEFORE TO WHAT'S GOING ON IN A CASE THAT SEPARATE

12   COUNSEL ARE SEPARATELY HANDLING ON AN EVIDENTIARY

13   RECORD WHERE BRIDGES, MAV -- AND THERE'S NO

14   CONTRADICTION TO THIS -- SAYS "WE ARE NOT DOING ANY

15   WORK ON THE PART THAT'S RELATED.  WE ARE ONLY DOING

16   THE UNRELATED PART.  WE'RE ONLY DOING WORK WITHIN

17   THE SCOPE OF OUR LIMITED REPRESENTATION.  THERE'S

18   ANOTHER FIRM, THEY WERE ORIGINALLY HIRED TO DO IT,

19   THEY'RE STILL HIRED TO DO IT."

20             THE COURT:  LET ME ASK A QUESTION.

21             MR. TAYLOR:  SURE.

22             THE COURT:  HOW DO YOU DO THE ETHICAL

23   WALL WITHIN APPLE ITSELF?  I SEE WHAT YOU'RE SAYING

24   ABOUT WILMER, HALE VERSUS BRIDGES.

25             BUT ARE YOU GOING TO HAVE DIFFERENT APPLE

1  IN-HOUSE ATTORNEYS FOR THE SAMSUNG AFFIRMATIVE CASE

2  VERSUS THE APPLE AFFIRMATIVE CASE?

3            I MEAN, HOW -- IT'S VERY FEASIBLE TO

4  THINK THAT THE APPLE IN-HOUSE ATTORNEYS ARE GOING

5  TO HEAR SOME INFORMATION FROM BRIDGES THAT COULD

6  BLEED OVER AND TAINT THE OTHER SIDE.

7            SO WHAT KIND OF ETHICAL WALL ARE YOU

8  GOING TO HAVE IN-HOUSE?

9            MR. TAYLOR:  I THINK, YOUR HONOR, THAT AN

10  ETHICAL WALL IS NOT REQUIRED, AND I THINK THAT FOR

11  THIS REASON, NOR APPROPRIATE.

12            FIRST OF ALL, ETHICAL WALLS REALLY EXIST

13  ONLY WHEN YOU'RE TALKING ABOUT A SITUATION WITHIN

14  LAW FIRMS WHERE YOU HAVE PEOPLE WITH FIDUCIARY

15  DUTIES TO EACH OTHER, THEY'RE ALL PRESUMED TO HAVE

16  CONFIDENTIAL INFORMATION OF THE OTHER PERSON, AND

17  YOU'RE TRYING TO FIND A WAY TO OVERCOME THAT

18  PRESUMPTION.

19            AS YOUR HONOR INDICATED IN THE ORACLE

20  DECISION THAT CAME DOWN LAST MONTH, WE DON'T

21  PRESUME THAT BETWEEN CO-COUNSEL OR BETWEEN COUNSEL

22  AND A CLIENT THAT THEY'RE GOING TO VIOLATE THEIR

23  ETHICAL DUTIES AND THEY'RE GOING TO DISCLOSE

24  CONFIDENTIAL INFORMATION.  WE DON'T PRESUME THAT.

25  THERE'S NO EVIDENCE OF THAT IN THIS RECORD.

1          THERE'S ALSO EVIDENCE IN THE RECORD THAT

2    FROM THE BEGINNING, APPLE HAS UNDERSTOOD THAT

3    BRIDGES, MAV IS NOT TO CONTRIBUTE, NOT TO HAVE

4    ANYTHING TO DO WITH THE -- WITH ANYTHING HAVING TO

5    DO WITH THE SAMSUNG PATENTS OR THOSE STANDARDS

6    PATENTS OR FRAND AND THEY HAVE NOT.

7          THAT'S WHAT APPLE SAYS.  THAT'S WHAT THE

8    COUNSEL IN THE CASE SAY.  THAT'S WHAT BRIDGE, MAV

9    HAS DONE.

10          AND THAT IS BRIDGES, MAV'S ETHICAL

11   RESPONSIBILITY, NOT TO MAKE ANY AFFIRMATIVE

12   CONTRIBUTION, NOT TO DO ANYTHING ON THAT CASE.

13          AND AS WE INDICATED TO YOUR HONOR,

14   ALTHOUGH IT'S NOT NECESSARY, IF THE COURT WOULD

15   LIKE THE FIRM TO CONFIRM THAT IT WILL ABIDE BY THAT

16   OBLIGATION, NOT UNDERTAKE TO REPRESENT APPLE IN

17   CONNECTION WITH ANYTHING ON THE SAMSUNG CLAIMS, THE

18   FIRM IS WILLING TO HAVE THE COURT ENTER AN ORDER

19   THAT SAYS "YOU SHALL NOT REPRESENT APPLE IN

20   CONNECTION WITH ANY OF THE SAMSUNG CLAIMS, ANY OF

21   THE CLAIMS THAT ARE NOW THE COUNTERCLAIMS."

22          SO THAT THEY NOT ONLY HAVE THE ETHICAL

23   OBLIGATION NOT TO DO IT, BUT THEY ALSO HAVE THE

24   POWER OF THE COURT AND CONTEMPT OF COURT IN THE

25   EVENT THAT THEY ARE TO VIOLATE IT.

1          THEY HAVEN'T VIOLATED IT.  THERE'S NO

2   EVIDENCE THAT THEY WILL.

3          AND HERE WE HAVE SEPARATE COUNSEL WHO'S

4   HANDLING THAT CASE AND TAKING CARE OF THAT CASE.

5          THERE'S ONE OTHER ISSUE I'D LIKE TO

6   RAISE, AND I THANK YOUR HONOR FOR YOUR PATIENCE.

7          YOUR HONOR SUGGESTED THAT IT'S IMPOSSIBLE

8   THAT MAYBE MR. BRIDGES OR SOME OTHER MEMBER OF THE

9   FIRM DOESN'T HAVE SOME INFORMATION THAT MAY BE

10  RELEVANT.

11          IT'S A REALLY IMPORTANT POINT, BECAUSE IT

12  SUGGESTS -- AND SAMSUNG MAKES THIS POINT -- THAT

13  THERE IS SOME LIFE OR THERE IS SOME VITALITY IN

14  CALIFORNIA TO THIS GENERAL NOTION THAT YOU HAVE

15  INFORMATION ABOUT SOMEBODY'S PLAYBOOK OR HOW PEOPLE

16  DO THINGS.

17          THAT IS SIMPLY NOT THE LAW OF CALIFORNIA.

18  THERE IS NO GENERAL PLAYBOOK LAW IN CALIFORNIA.

19          AND WE CITED IN OUR BRIEFS, YOU KNOW, THE

20  BANNING RANCH CASE AND A WHOLE SERIES OF CASES THAT

21  SAY THAT OVER AND OVER AGAIN.

22          THE ONLY TIME THE COURTS DECIDE AND

23  PRESUME THAT SOMEONE MAY HAVE SOME INFORMATION THAT

24  THEY WOULD CONVEY AND USE IT FOR DISQUALIFICATION

25  IS WHEN SOMEONE HAS HAD ACCESS -- WE HAVE THE

1    FARRIS CASE WHERE WE HAVE A LAWYER WITH TEN YEARS

2    OF EXPERIENCE WITH AN INSURANCE COMPANY HANDLING

3    226 CASES WHERE THAT LAWYER ACTUALLY WROTE THE

4    PRACTICES FOR THE CLAIMS HANDLING PROCEDURES AND

5    DID THE TRAINING THAT WAS GOING TO BE AT ISSUE IN

6    LITIGATION THAT HE WANTED TO HANDLE AGAINST THE

7    INSURANCE COMPANY.

8              WE HAVE THE OLIVER CASE, WHICH IS VERY

9    DIFFERENT.

10             WE HAVE HERE, YOU KNOW, MR. BRIDGES, WHO,

11   BY HIS OWN INDICATION, IS -- HAS THREE LAWYERS

12   SENIOR TO HIM, THERE ARE 20 LAWYERS ON THE CASE, HE

13   HAS NO ONE-ON-ONE COMMUNICATIONS WITH THE DECISION

14   MAKER AT SAMSUNG, HE'S NOT INVOLVED IN SETTLEMENT,

15   HE'S NOT INVOLVED WITH ANY OF THAT.

16             AND IF SOMEONE LIKE MR. BRIDGES CAN BE

17   FOUND TO HAVE, IN SOME MANNER, INFORMATION THAT

18   COULD RESULT IN HIS BEING DISQUALIFIED FROM HAVING

19   BEEN A JUNIOR PARTNER WORKING ON A CASE WHERE

20   THERE'S NO EVIDENCE THAT HE LEARNED ANYTHING, AND

21   THEY HAVE -- THE BURDEN'S ON SAMSUNG.

22             THERE'S NO EVIDENCE THAT HE LEARNED

23   ANYTHING OF ANY SIGNIFICANT, YOU KNOW, CONFIDENTIAL

24   NATURE.

25             AND MORE IMPORTANTLY, THE BURDEN IS ON

1  SAMSUNG TO DEMONSTRATE THAT WHATEVER HE LEARNED, IF

2  IT WAS CONFIDENTIAL, THEY HAVE TO DEMONSTRATE THAT

3  IT WAS MATERIAL IN THIS SENSE:  THAT IT DIRECTLY

4  RELATED TO AN ISSUE IN THIS CASE WHERE THEY'RE

5  REPRESENTING -- DIRECTLY RELATED TO THE ANDROID

6  CASE; AND/OR THAT IT'S OF CRITICAL IMPORTANCE.

7          AND THAT'S A BIG STANDARD, AND IF YOUR

8  HONOR REVIEWS THE FOUST CASE, YOU'LL SEE THAT IT

9  IS -- IN CALIFORNIA, TO DISQUALIFY A LAWYER WHO

10 HAS -- WHERE THERE'S NO OVERLAP BETWEEN THE TWO

11 MATTERS WHERE THEY'VE ACCEPTED REPRESENTATION

12 BECAUSE THEY KNOW SOMETHING FROM THEIR PAST

13 REPRESENTATION IS A VERY, VERY DIFFICULT THING TO

14 DO AND THERE'S NO WAY THE LAW, WE WOULD SUBMIT,

15 WOULD APPLY TO SOMEONE, ON THIS EVIDENTIARY RECORD,

16 FOR WHAT MR. BRIDGES' ROLE WAS IN THIS CASE.

17          SO I AM CONCERNED, AND I THINK THAT APPLE

18 IS AND I THINK THE COURT SHOULD BE, TOO, OF THE

19 IMPLICATIONS OF GRANTING A MOTION TO DISQUALIFY ON

20 THIS PARTICULAR MATTER ON THIS RECORD GIVEN

21 CALIFORNIA LAW ON THE ISSUE, AND WE'VE TRIED TO

22 ADDRESS IT AS CLEARLY AS WE COULD IN OUR BRIEF.

23          IT REALLY DOES ALLOW A PARTY TO TAKE

24 TREMENDOUS TACTICAL ADVANTAGE OF A MOTION TO

25 DISQUALIFY BY THEIR OWN STRATEGIC DECISION MAKING

1  OF PUTTING THESE CLAIMS IN THIS CASE WHERE THEY

2  WERE NOT IN THE FIRST PLACE.

3          THE COURT:  LET ME -- I JUST HAVE A

4  CLARIFICATION AND I WOULD LIKE TO WRAP THIS UP

5  BECAUSE I ALSO HAVE A FINAL PRETRIAL CONFERENCE IN

6  ANOTHER CASE TODAY.

7          I JUST WAS UNCLEAR ON -- IN SAMSUNG'S

8  MOTION, MUCH WAS MADE OF THE DICAM AND SPANSION

9  LITIGATIONS.  THAT LARGELY SEEMS TO HAVE BEEN SORT

10  OF IGNORED IN THE REPLY.

11          EXACTLY WHAT'S SAMSUNG'S POSITION ON

12  THOSE?  DO YOU THINK THAT'S AN INDEPENDENT BASIS IN

13  YOUR VIEW FOR A DISQUALIFICATION, OR ARE YOU SORT

14  OF WALKING AWAY FROM THAT?  OR TELL ME WHAT YOUR

15  POSITION IS ON THOSE TWO.

16          MS. SULLIVAN:  YOUR HONOR, WE'RE RELYING

17  PRINCIPALLY ON THE SONY-ERICSSON LITIGATION.  WE

18  THINK THAT CREATES AN OBVIOUS CONFLICT WITH RESPECT

19  TO THE COUNTERCLAIMS, THE FRAND, IF THE

20  COUNTERCLAIMS REMAIN IN.

21          BUT IF I COULD TAKE JUST A MINUTE TO

22  RESPOND TO MR. TAYLOR, YOUR HONOR?

23          THE -- APPLE HAS CONCEDED THE SUBSTANTIAL

24  RELATIONSHIP BETWEEN THE '604 PATENT AND THE FRAND

25  ISSUES AND THE COUNTERCLAIMS.

1         WE DON'T -- THEREFORE, THE POSSESSION OF

2    CONFIDENTIAL INFORMATION IS CONCLUSIVELY PRESUMED

3    UNDER CALIFORNIA LAW.

4         SAMSUNG HAS NO OBLIGATION TO PROVE THAT

5    THEY POSSESSED CONFIDENTIAL INFORMATION WITH

6    RESPECT TO THOSE ISSUES IN THE COUNTERCLAIMS.

7         SO IF THE COUNTERCLAIMS STAY IN THE CASE

8    AND YOUR HONOR PROPERLY FOUND THE CASES, THE CLAIMS

9    RELATED AND THEY ARE NOW ONE CASE, WE'RE DONE.

10   THERE'S DISQUALIFICATION THAT HAS TO FOLLOW BECAUSE

11   THEIR PROPOSED MENTAL WALL IS UNWORKABLE.         AND

12   YOUR HONOR, HILLEBY IS AN OLD CASE.  IT'S 1992.  IT

13   DIDN'T CITE CALIFORNIA LAW.  IT INVOLVED A PARTNER

14   WHO HAD SOME OTHER PARTNER IN THE FIRM INVOLVED IN

15   THE PROSECUTION.

16        THAT'S A FAR CRY FROM MR. BRIDGES, WHO

17   WAS THE LITIGATOR FOR SAMSUNG, WHO TURNS AROUND TO

18   BECOME THE LITIGATOR FOR APPLE.

19        AND I, WITH ALL DUE RESPECT, CAN'T CREDIT

20   MR. TAYLOR'S NOTION THAT HE WAS JUST A JUNIOR

21   PARTNER.

22        JUNIOR PARTNERS POSSESS PLENTY OF

23   KNOWLEDGE, OFTEN MORE THAN THE SENIOR PARTNERS IN A

24   CASE.  SO THAT'S NOT A PERSUASIVE ARGUMENT.

25        BUT CRUCIALLY, HILLEBY DID NOT TALK ABOUT

1   THE LATER CASES IN WHICH CALIFORNIA COURTS HAVE

2   REJECTED ETHICAL WALLS.

3           SO IF FORMAL ETHICAL WALLS HAVE BEEN

4   REJECTED AS A GROUND FOR PRESERVING -- PREVENTING

5   CONFLICTS OF INTEREST, A MENTAL WALL CERTAINLY

6   CAN'T SUFFICE.

7           AND HILLEBY DIDN'T DISCUSS THOSE LATER

8   CASES WHICH ARE CITED IN OUR BRIEF.

9           THE COURT:  IT ALSO SAID THE NINTH

10  CIRCUIT HASN'T APPROVED ETHICAL WALLS ANYWAY.

11          MS. SULLIVAN:  CORRECT, YOUR HONOR.

12          SO THE NOTION THAT -- WE'RE A FAR CRY

13  FROM HILLEBY AS AN AUTHORITY HERE.

14          BUT YOUR HONOR, THE MOST IMPORTANT POINT

15  I WANT TO MAKE IS WE THINK WE WIN SO EASILY WHEN

16  THE COUNTERCLAIMS STAY IN THE CASE, GIVEN THE

17  CONCESSION OF THE SUBSTANTIAL RELATIONSHIP HERE,

18  BECAUSE OF THE UNWORKABILITY AND UNSUSTAINABILITY

19  OF THE MENTAL WALL.

20          BUT I WANT TO STRESS TO YOUR HONOR THAT

21  IT'S A CANARD TO SAY THAT WE BROUGHT THE CONFLICT

22  INTO THE CASE BY ASSERTING, PROPERLY, A RELATED

23  COUNTERCLAIM IN THIS CASE AT YOUR HONOR'S

24  INVITATION, BECAUSE THE CONFLICT EXISTS EVEN AS TO

25  APPLE VERSUS SAMSUNG.

1          APPLE IS ACCUSING SAMSUNG NOT JUST OF --

2    THEIR CLAIMS ARE NOT JUST DIRECTED AT THE ANDROID

3    PHONES.  THEY'RE DIRECTED AT THE LOOK AND FEEL OF

4    SAMSUNG'S PHONES, NOT JUST AT THE TECHNICAL

5    FEATURES, BUT AT THE LOOK AND FEEL.

6          BRIDGES & MAVRAKAKIS WERE PRIVY TO

7    SAMSUNG'S TECHNOLOGY, ENGINEERS, PRIVILEGED AND

8    CONFIDENTIAL INFORMATION IN 2006 AND 2007 WITH

9    RESPECT TO THE LOOK AND FEEL OF SAMSUNG'S PHONES.

10          SO THEY HAVE CONFIDENTIAL INFORMATION

11    WITH RESPECT TO APPLE'S CLAIMS ABOUT APPLE'S

12    PATENTS RELEVANT TO SAMSUNG'S PRODUCTS.

13          SO IT'S NOT THE COUNTERCLAIMS THAT BRING

14    THE CONFLICT OF INTEREST TO THIS CASE.  THAT

15    CONFLICT OF INTEREST IS THERE BECAUSE OF ERICSSON

16    AND THE KNOWLEDGE THAT WAS GAINED IN THE ERICSSON

17    REPRESENTATION ON WHICH WE PRINCIPALLY RELY THAT

18    CONFLICTS THEM OUT OF TURNING AROUND, CROSSING THE

19    STREET, GOING OVER TO APPLE AND SAYING, "NOW LET'S

20    SUE OUR FORMER CLIENT ON THE LOOK AND FEEL OF ITS

21    PHONES THAT WE LEARNED ABOUT FROM ITS ENGINEERS IN

22    THE COURSE OF OUR REPRESENTATION."

23          THAT IS NOT SOMETHING THAT'S CLOSE.

24    THERE SHOULD HAVE BEEN A REQUEST FOR INFORMED

25    WRITTEN CONSENT.

1       IT WAS NOT PROPER FOR BRIDGES &

2   MAVRAKAKIS TO APPOINT THEMSELVES THE JUDGES OF AN

3   ETHICAL CONFLICT.

4       IT IS THEIR DUTY TO FIND OUT WHETHER

5   THEIR CLIENT ABSOLVES THEM OF THE CONFLICT.

6       SAMSUNG WAS NOT GIVEN THAT OPPORTUNITY,

7   AND WE SHOULDN'T EVEN HAVE TO ENGAGE IN SUCH A

8   PROTRACTED DIALOG ABOUT SUCH A CLEAR VIOLATION.

9       DISQUALIFICATION IS THE ONLY REMEDY HERE

10  BECAUSE THE MENTAL WALL WON'T WORK.

11      THE COURT:  OKAY.  I WOULD LIKE TO WRAP

12  THIS UP.

13      DO YOU WANT TO SAY SOMETHING?  IF SO,

14  I'LL GIVE YOU A MINUTE.

15      MR. TAYLOR:  YOUR HONOR, JUST TWO QUICK

16  THINGS AND THEN I'M DONE.

17      THE COURT:  OKAY.

18      MR. TAYLOR:  ONE IS I DO -- I WOULD LIKE

19  TO SAY AGAIN THAT IF THE COURT PERMITS SAMSUNG TO

20  DEPRIVE APPLE OF COUNSEL AND DISQUALIFIES

21  BRIDGES, MAV IN THIS CASE WHEN THEY ARE OTHERWISE

22  UNDISQUALIFIABLE, AND I BELIEVE THEY ARE, EXCEPT

23  FOR WHAT SAMSUNG DECIDES TO PUT IN THE CASE THAT

24  CREATES A CONFLICT, WE HAVE THE KIND OF TACTICAL

25  ABUSE THAT THE MARLOW CASE TALKS ABOUT, YOUR HONOR

1    TALKS ABOUT, WHERE MOTIONS FOR DISQUALIFICATION

2    NEED TO BE JUDGED WITH STRICT SCRUTINY BECAUSE THEY

3    ARE SO SUSCEPTIBLE TO BEING USED BY PEOPLE, IN THIS

4    CASE, FUTURE CASES AND OTHER CASES, TO BRING A

5    COUNTERCLAIM IN FOR OTHER STRATEGIC REASONS, IT

6    DOESN'T MATTER WHAT THE REASON IS, AND THEN USE

7    THAT, TURN AROUND AND USE THAT TO DISQUALIFY A

8    PARTIES' COUNSEL WHEN THAT IS NOT THE STANDARD.

9            IT'S NOT THE COMPARISON BETWEEN -- AS

10   RULE 310 SAYS, YOU COMPARE THE EMPLOYMENT THAT WAS

11   ACCEPTED WITH THE EMPLOYMENT THAT WAS PREVIOUSLY

12   ENTERED.  THAT'S THE ONLY ETHICAL OBLIGATION, NOT

13   TO REMAIN CLEAR FROM ANYTHING THAT THE OTHER PARTY

14   MAY BRING INTO THE CASE.

15           THE SECOND THING IS IF I CAN, YOUR HONOR,

16   I SUGGESTED THAT BOTH APPLE AND BRIDGES, MAV WOULD

17   BE WILLING TO HAVE THE COURT ENTER AN ORDER SIMPLY

18   CONFIRMING WHAT THEIR ETHICAL OBLIGATIONS ARE.

19           IF YOUR HONOR WOULDN'T MIND, I WOULD LIKE

20   JUST TO SUBMIT THAT TO YOUR HONOR FOR YOUR HONOR'S

21   CONSIDERATION.

22           I'VE GIVEN A COPY TO OPPOSING COUNSEL.

23           THE COURT:  HAVE YOU FILED IT?

24           MR. TAYLOR:  I HAVE NOT.

25           THE COURT:  OKAY.  IT NEEDS TO BE FILED.

1              MR. TAYLOR:  OKAY.

2              AND UNLESS YOUR HONOR HAS ANY OTHER

3    QUESTIONS --

4              OR PROFESSOR, DO YOU HAVE ANYTHING TO

5    ADD?

6              I THINK THAT I WOULD JUST URGE THE COURT

7    TO DENY THE MOTION FOR THE REASONS THAT WE'VE

8    SUGGESTED.

9              THE COURT:  OKAY.  THANK YOU.  THANK YOU

10   BOTH.

11             LET'S GO TO THE MOTION FOR EXPEDITED

12   TRIAL AND THE CMC PORTION OF THE CASE.

13             LET ME ASK APPLE, WHY ISN'T YOUR PENDING

14   PRELIMINARY INJUNCTION MOTION SUFFICIENT TO PROTECT

15   YOUR INTEREST?  YOU'VE GOT -- IF YOU DO GET A

16   PRELIMINARY INJUNCTION, THAT'S ESSENTIALLY THE

17   RELIEF THAT YOU WOULD GET IF YOU WERE TO GO TO

18   TRIAL, SO WHY ARE YOU ENTITLED TO BOTH?

19             MR. MCELHINNY:  I -- THERE'S TWO ANSWERS

20   TO THAT, YOUR HONOR.

21             THE COURT:  YEAH.

22             MR. MCELHINNY:  BOTH OF WHICH ARE

23   ACCURATE.

24             ONE IS YOU -- AGAIN, YOU HAVE TO

25   UNDERSTAND THE CONTEXT.  YOUR HONOR MENTIONED -- I

1 MEAN, YOU CLEARLY DO UNDERSTAND THE CONTEXT OF

2 WHAT'S GOING ON HERE, WHICH IS THIS IS A CASE

3 THAT'S LARGER THAN THE UNITED STATES.

4 I MEAN, IT'S GOING ON ACROSS THE WORLD IN

5 ALMOST EVERY COUNTRY IN TERMS OF A CONCERTED EFFORT

6 BY SAMSUNG TO, AS WE SAY, COPY, USE THE APPLE

7 ENTREE IN ORDER TO GET INTO THE MARKETPLACE, CREATE

8 MARKET SHARE, AND TO DO THAT WITHOUT REGARD TO OUR

9 INTELLECTUAL PROPERTY.

10 AND PART OF THAT STRATEGY, WHICH TO US IS

11 AS CLEAR AS DAY, PART OF THAT STRATEGY IS TO OUTRUN

12 AND OUTMANEUVER THE ABILITY OF THE COURT SYSTEMS TO

13 CATCH THEM.

14 I -- IT'S A VERY SOPHISTICATED

15 COMBINATION OF WHAT I WOULD CALL WHACK-A-MOLE AND

16 CATCH US IF YOU CAN.

17 AND IN ALL OF THE COURTS SO FAR, IN THE

18 COUNTRIES THAT HAVE AN I.P. REGIMEN, ALL OF THEM

19 ARE MOVING AS EXPEDITIOUSLY AS POSSIBLE TO SORT OF

20 CATCH UP WITH THAT.

21 AND SO WE'VE HAD PROCEEDINGS IN

22 AUSTRALIA, WE'VE HAD PROCEEDINGS IN GERMANY, WE'VE

23 HAD PROCEEDINGS IN THE NETHERLANDS.

24 AND IN EVERY ONE OF THOSE COUNTRIES,

25 ALTHOUGH THE LAW IS DIFFERENT AND THE PROCESS, IT'S

1    CERTAINLY NOT PRECEDENTIAL IN ANY WAY, BUT IN EVERY

2    ONE OF THOSE COUNTRIES, THE RESULTS OF THOSE

3    HEARINGS HAVE BEEN A LIMITATION ON SAMSUNG'S

4    ABILITY TO MARKET.

5            AND IN EVERY CASE WE'VE SEEN AN

6    INSTANTANEOUS RESPONSE FROM SAMSUNG EITHER TO MOVE

7    INTO THE NEXT ADJOINING COUNTRY WHERE THE

8    PRELIMINARY INJUNCTION DOESN'T WORK, OR TO RELEASE

9    SLIGHTLY DIFFERENT PHONES --

10           THE COURT:  HOW MANY INJUNCTIONS HAVE YOU

11   GOTTEN?

12           MR. MCELHINNY:  TO BE CLEAR, THERE WAS A

13   STIPULATED AGREEMENT IN AUSTRALIA BY WHICH SAMSUNG

14   AGREED NOT TO RELEASE THE PRODUCT THAT WAS

15   CHALLENGED; THERE WAS AN INJUNCTION THAT WAS ISSUED

16   BY A GERMAN COURT THAT WAS OF PAN EUROPEAN EXPOSURE

17   THAT -- WHERE A CHALLENGE TO JURISDICTION WAS THEN

18   WITHDRAWN SO THAT IT ONLY COVERS GERMANY; AND THERE

19   WAS AN INJUNCTION ISSUED THIS MORNING IN THE

20   NETHERLANDS THAT RESTRICTS THREE NETHERLANDS

21   ENTITIES.

22           THE COURT:  WHAT DOES THAT MEAN, IT

23   RESTRICTS THREE NETHERLANDS ENTITIES?

24           MR. MCELHINNY:  THE EUROPEAN COURTS HAVE

25   A JURISDICTIONAL ISSUE ABOUT ENJOINING SAMSUNG

1    ITSELF, SO THEY ENJOIN THE COMPANIES THAT DO

2    BUSINESS IN THEIR JURISDICTIONS.

3            BUT SAMSUNG ISSUED A PRESS RELEASE THIS

4    MORNING SAYING, "YEAH, YOU GOT YOUR PRELIMINARY

5    INJUNCTION IN THE NETHERLANDS."

6            BUT IT'S NOT GOING TO DO US ANY GOOD

7    BECAUSE THEY HAVE OTHER COMPANIES THAT CAN DO THE

8    DISTRIBUTION AND THEY RELEASED FOUR DIFFERENT

9    PHONES TODAY.

10           IT'S LITERALLY A QUESTION -- AND TO JUST

11   BRING IT HOME SO THAT YOUR HONOR WILL SEE IT, WE

12   LITIGATED, BEFORE YOUR HONOR, THE SCHEDULE AT WHICH

13   WE COULD GET TO A PRELIMINARY INJUNCTION, AND WE

14   ASKED FOR A FAST ONE AND SAMSUNG ASKED FOR A SLOWER

15   ONE, AND YOUR HONOR GAVE A REASONABLE BASIS TO DO

16   THAT AND SORT OF AN EXTENDED BRIEFING SCHEDULE.

17           BUT LAST SUNDAY, YOUR HONOR, LAST

18   SUNDAY -- IF I CAN PRESENT THIS, I MEAN, THE

19   EVIDENCE IN THIS CASE COMES DOWN SO FAST -- LAST

20   SUNDAY, SAMSUNG, WITH BEST BUY, INAUGURATED A

21   PROGRAM WHERE THEY ARE NOW GIVING AWAY THEIR

22   TABLETS, THE THING THAT WE ARE CHALLENGING IN YOUR

23   PRELIMINARY INJUNCTION MOTION THAT WON'T BE HEARD

24   UNTIL OCTOBER, THEY ARE FLOODING THE MARKET WITH

25   THEM FOR FREE TO ANYONE WHO BUYS ONE OF THEIR

1    TELEVISIONS BECAUSE THEY UNDERSTAND MARKETING, THEY

2    UNDERSTAND MARKET SHARE, THEY UNDERSTAND TYING A

3    PRODUCT TO CUSTOMERS WHO WILL NOT MOVE FROM THAT

4    PRODUCT.

5              AND THEY ARE MOVING FASTER THAN THIS

6    COURT CAN MOVE IN ORDER TO ESTABLISH A MARKET SHARE

7    AND A POSITION THAT CANNOT BE UNDONE.

8              SO THE FIRST ANSWER TO YOUR HONOR'S

9    QUESTION IS THAT PRELIMINARY INJUNCTIONS GO TO

10   SPECIFIC PRODUCTS, THEY'RE TARGETED, THEY COME

11   AFTER A COMPLETE HEARING, BUT THEY COME OUT WITH A

12   RELATIVELY LIMITED ORDER.

13             AND BECAUSE OF THE NATURE OF THE PRODUCTS

14   THAT ARE AT ISSUE IN THIS CASE, SAMSUNG CAN CHANGE

15   THE NUMBER OF PHONES, THEY HAVE PRODUCTS THAT THEY

16   HAVEN'T EVEN RELEASED YET THAT ARE NOT THE SUBJECT

17   OF A PRELIMINARY INJUNCTION THAT THEY CAN RELEASE A

18   WEEK LATER.  THEY CAN MOVE FASTER THAN YOU CAN,

19   FRANKLY.

20             AND SO WHILE A PRELIMINARY INJUNCTION

21   ESTABLISHES RULES, IT DISRUPTS THEM, IT ESTABLISHES

22   THE WILLINGNESS OF THE COURT TO ENFORCE OUR RIGHTS,

23   IT DOES NOT, BECAUSE OF THE WAY SAMSUNG LOOKS AT

24   THESE CASES -- SAMSUNG IS BIGGER THAN ANY COUNTRY,

25   YOUR HONOR -- AND BECAUSE OF THE WAY SAMSUNG LOOKS

1    AT THESE CASES, IT CAN TAKE LITTLE LOSSES, IT CAN

2    TAKE LITTLE ORDERS HERE AND THERE, AND IT CAN STILL

3    ACCOMPLISH ITS LARGER MISSION, WHICH IS TO

4    GENERICIZE THE APPLE PRODUCT.  THAT'S ANSWER ONE.

5            ANSWER TWO, AS YOUR HONOR KNOWS, THE

6    DISADVANTAGE TO A MOVING PARTY LIKE US IS THAT

7    PRELIMINARY INJUNCTIONS SHIFT THE BURDENS.

8            AND SO WE HAD THIS DIALOGUE EARLIER WHERE

9    YOU WERE TALKING ABOUT YOU'RE NOT GOING TO MOVE ON

10   A UTILITY PATENT AND THOSE ARE VERY DIFFICULT AND

11   THOSE ARE TRUE BECAUSE THE BURDENS SHIFT.

12           THE NATURE OF OUR COMPLAINT, AND THE

13   REASON WE DRAFTED IT AS A COMPLAINT, IS BECAUSE THE

14   APPLE PRODUCTS, THE PHONE AND THE TABLET, THEY'RE

15   NOT A SINGLE PATENT, THEY'RE NOT A SINGLE DESIGN,

16   THEY'RE NOT A SINGLE ELEMENT.

17           WHAT THEY ARE IS A PRODUCT THAT INVOLVES

18   A GARDEN OF NOVEL INVENTION.

19           AND WE FIRMLY BELIEVE THAT IF, IN FACT --

20   THAT THE ONLY WAY TO STOP THIS, THE ONLY WAY THAT

21   IS GOING TO HAVE A PRACTICAL EFFECT ON SAMSUNG IS

22   TO HAVE A JURY IN THE UNITED STATES HEAR ALL THE

23   EVIDENCE ON ALL OF THE I.P. THAT WE HAVE ASSERTED

24   AND TO COME FORTH WITH A VERDICT ENFORCED BY THIS

25   COURT AS A PERMANENT INJUNCTION THAT ESTABLISHES

1   OUR RIGHTS TO THE FULL SPECTRUM OF THE INTELLECTUAL

2   PROPERTY THAT WE'VE ASSERTED.

3           IF WE KEEP GOING -- WE HAVE TO GO WITH

4   RIFLE SHOTS.  WE'RE NOT ABANDONING THAT BECAUSE

5   WE'VE GOT THEM AND BECAUSE WE THINK THEY'RE STRONG.

6           BUT RIFLE SHOTS ARE NOT GOING TO BRING

7   DOWN THIS STRATOSPHERIC BOMBER WHICH IS DROPPING

8   THESE PRODUCTS ALL OVER THE WORLD.  WE'RE NOT GOING

9   TO BE ABLE TO DO THAT WITH A SMALL WEAPON.  WE

10  NEED -- WE NEED A JUDGMENT AND WE NEED A VERDICT.

11          THE COURT:  HAVE ANY OF THE CASES IN THE

12  OTHER JURISDICTIONS SETTLED?

13          MR. MCELHINNY:  THEY'RE -- NO.  THE

14  ANSWER TO YOUR QUESTION IS NO.

15          THE COURT:  OKAY.  DO YOU HAVE TRIAL

16  DATES IN ANY OF THE OTHER JURISDICTIONS?

17          MR. MCELHINNY:  NOW YOU'RE TESTING ME.

18          THE COURT:  OKAY.

19          MR. MCELHINNY:  MY UNDERSTANDING IN

20  AUSTRALIA -- MY UNDERSTANDING IS THAT IN AUSTRALIA,

21  IT'S BEING HELD UP BECAUSE SAMSUNG HAS SAID THEY'RE

22  NOT GOING TO MARKET.

23          SO PROBABLY NOTHING WILL GO FORWARD THERE

24  UNTIL SAMSUNG GIVES NOTICE THAT THEY'RE GOING TO

25  PUT THEIR PRODUCT OUT.

1        I BELIEVE THERE'S A HEARING -- THERE'S A

2   HEARING ON THE MERITS THAT'S SCHEDULED FOR GERMANY,

3   BUT FRANKLY, I'M NOT ENOUGH OF AN EXPERT TO KNOW

4   WHETHER IT'S A FULL TRIAL ON THE MERITS OR IT'S A

5   FURTHER TRIAL ON THE PRELIMINARY INJUNCTION.

6            BUT I THINK THE ANSWER --

7            THE COURT:  IS IT THE SAME PRODUCTS IN

8   EACH JURISDICTION THAT'S BEING ACCUSED?

9            MR. MCELHINNY:  IT IS.

10           THE COURT:  IS IT THE SAME I.P., JUST

11  THE, YOU KNOW, EUROPEAN EQUIVALENT OR THE

12  AUSTRALIAN EQUIVALENT?

13           MR. MCELHINNY:  THESE ARE REALLY SIMPLE

14  QUESTIONS AND YOU'D THINK I COULD GIVE YOU A SAMPLE

15  ANSWER.

16           THE ANSWER IS THE PRODUCTS ARE SIMILAR,

17  BUT THEY'RE NOT THE SAME BECAUSE SAMSUNG HAS THE

18  ABILITY TO CHANGE THEM FROM JURISDICTION TO

19  JURISDICTION.

20           IN AUSTRALIA, THEY SAID, "YOU'RE

21  CHALLENGING THIS PRODUCT, SO WE WILL NOT RELEASE

22  THAT PRODUCT."

23           BUT A WEEK LATER, THEY ISSUED -- THEN

24  THEY ISSUED A PRESS RELEASE SAYING, "WE WERE NEVER

25  GOING TO ISSUE THAT PRODUCT IN AUSTRALIA ANYWAY,"

1    AND A WEEK LATER THEY RELEASED THE SAME PRODUCT IN

2    NEW ZEALAND.

3            THE I.P. IS ALL SORT OF -- YOU KNOW, IS

4    ALL DIFFERENT IN THE SENSE THAT IT'S ALL THE SAME

5    BASIC PATENTS, BUT THEY HAVE BEEN PROSECUTED IN

6    PARALLEL AND SO THE CLAIMS ARE NOT EXACTLY THE

7    SAME.

8            THE ANSWER IS GLOBALLY, GLOBALLY, APPLE

9    IS ASSERTING, I THINK, IN EXCESS OF 70 UTILITY AND

10   DESIGN PATENTS.

11           SO YOU WILL NOT --

12           THE COURT:  WHAT ABOUT --

13           MR. MCELHINNY:  SO THERE WILL NOT BE

14   RULINGS FROM ANY FOREIGN COURT, I BELIEVE, THAT

15   SOMEONE WILL COME IN HERE AND ANSWER THE QUESTIONS

16   THAT WERE PRESENTED TO YOUR HONOR BECAUSE THE LAW

17   WILL BE SLIGHTLY DIFFERENT.

18           AND THAT'S NOT REALLY MY POINT.

19           MY POINT IS THAT IN EVERY JURISDICTION,

20   SO FAR, SUBJECT TO WHATEVER CREDIT YOU GIVE A

21   STIPULATION, THAT THE COURTS HAVE CONCLUDED THAT

22   SAMSUNG IS VIOLATING THE INTELLECTUAL PROPERTY

23   RIGHTS OF APPLE IN THAT JURISDICTION.

24           THE COURT:  HAVE YOU RECEIVED DISCOVERY

25   IN THESE OTHER JURISDICTIONS?  I KNOW GERMANY

1    REALLY DOESN'T HAVE DISCOVERY.

2          MR. MCELHINNY:  THEY DON'T HAVE BROAD

3    DISCOVERY.  THE BROADEST DISCOVERY THAT WE'VE

4    GOTTEN, FRANKLY, AND IT'S BEEN FAIRLY -- IT'S BEEN

5    ONE-SIDED BUT IT'S BEEN QUITE EXTENSIVE SO FAR --

6    HAS BEEN THE PRELIMINARY INJUNCTION DISCOVERY HERE.

7          WE HOPE IT WILL BE EQUALLY BROAD STARTING

8    TOMORROW.

9          THE COURT:  OKAY.  WHY DIDN'T YOU SEEK A

10   PRELIMINARY INJUNCTION AS TO ALL OF YOUR CLAIMS?

11         MR. MCELHINNY:  AGAIN, THERE'S A COUPLE

12   OF REASONS.

13         IF YOUR HONOR REMEMBERS BACK, OUR

14   ORIGINAL MOTION FOR EXPEDITED DISCOVERY OF THE

15   PRODUCTS CHALLENGED FIVE PRODUCTS.  THREE OF THOSE

16   WERE RELEASED.  TWO OF THEM HAVE NOT YET BEEN

17   RELEASED.

18         THERE'S A LOT OF -- YOU KNOW, WE'VE DONE

19   THIS BEFORE.  THERE'S STUFF IN THE PRESS SAYING

20   THEY'RE GOING TO GET RELEASED, BUT SAMSUNG CONTROLS

21   THE RELEASE DATE AND THEY HAVE NOT BEEN RELEASED

22   YET.

23         SO WE HAVE NOT CHALLENGED, HERE, PRODUCTS

24   THAT HAVE NOT BEEN RELEASED.  THAT'S PART OF THE

25   ANSWER.

1          THE OTHER ANSWER IS A LARGE NUMBER OF

2   THE -- WE'RE ALL AWARE OF THE STANDARDS THAT THE

3   FEDERAL CIRCUIT APPLIES FOR UTILITY PATENTS ON, ON

4   PRELIMINARY INJUNCTION AND SO WE CHOSE, WE CHOSE

5   THE UTILITY PATENT THAT HAD BEEN THROUGH

6   RE-EXAMINATION AND HAD, YOU KNOW, GONE FORWARD

7   WITHOUT, YOU KNOW, SERIOUS CHALLENGE TO THE NEED OF

8   A MARKMAN HEARING.

9          WE PICKED THE PATENT THAT WE THOUGHT WE

10  COULD CONVINCE YOUR HONOR THAT WE MET THE STANDARD

11  UNDER.

12          BUT THAT'S ACTUALLY MY POINT.

13  PRELIMINARY INJUNCTIONS ARE NOT A SUBSTITUTE FOR A

14  TRIAL ON THE MERITS IN A PERIOD OF TIME WHEN THE

15  BURDENS ARE AS THEY SHOULD BE, WHEN ALL OF THE

16  EVIDENCE COMES IN, IN A PERIOD OF TIME THAT

17  ACTUALLY ALLOWS SOMEBODY TO CATCH SOMEBODY WHO'S

18  TRYING TO MOVE FASTER THAN THE JUDICIAL SYSTEM.

19          WE FILED PRELIMINARY INJUNCTIONS, AND THE

20  ANSWER IS, OH, THAT'S AN EXTRAORDINARY REMEDY, YOU

21  SHOULD ONLY BE GIVEN -- I MEAN, WE DON'T DENY ANY

22  OF THAT.  WE THINK WE MEET THAT STANDARD FOR THE

23  ONES WE'VE CHOSEN ON THE PRELIMINARY INJUNCTION.

24          BUT ON THE OTHERS, WE'RE ENTITLED TO OUR

25  PRESUMPTIONS OF VALIDITY.  WE'RE ENTITLED TO PUT IN

1    EVIDENCE.  THERE MAY BE A NEED FOR A CLAIM

2    CONSTRUCTION ON SOME.

3              AND THE ONLY WAY TO DO THAT IS WITH AN

4    EXPEDITED TRIAL, AGAIN, AS YOUR HONOR SUGGESTED.

5              THE COURT:  ALL RIGHT.  LET ME HEAR FROM

6    SAMSUNG ON WHAT YOUR VIEW IS.

7              MS. SULLIVAN:  THANK YOU, YOUR HONOR.

8              THIS CASE IS TOO COMPLEX TO BE EXPEDITED

9    AND APPLE HAS SHOWN NO LEGITIMATE REASON FOR

10   URGENCY.

11             AS YOUR HONOR'S QUESTIONS SUGGEST, AN

12   EXPEDITION WOULD GRAVELY PREJUDICE SAMSUNG.

13             LET'S RETURN TO HOW EXTRAORDINARY THIS

14   MOTION TO EXPEDITE IS.

15             APPLE PROPOSES A SCHEDULE THAT WOULD

16   DEPART FROM THE CAREFUL, ORDERLY NORTHERN DISTRICT

17   PATENT CASE RULES BY SETTING A TRIAL FOR THEIR

18   PATENTS TO OCCUR IN MARCH OF 2012, WHILE ALLOWING

19   SAMSUNG TO COME TO TRIAL ON ITS PATENTS IN JUNE OF

20   2013, AN EXTRAORDINARY DISPARITY AND ONE THAT, IN

21   THE ACCELERATION OF THE APPLE PATENTS, WOULD

22   VIOLATE THE ORDERLY PROCESSES THAT THE NORTHERN

23   DISTRICT OF CALIFORNIA RULES PROVIDE FOR.

24             NOW, YOUR HONOR, THE POINT OF THE RULES

25   IS TO MAKE SURE THAT THERE'S ADEQUATE TIME, AND

1   ADEQUATE TIME IS NEEDED.

2          WE'VE JUST FILED A LONG, SUBSTANTIVE

3   OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION

4   THAT YOUR HONOR WILL CONSIDER IN DUE COURSE.

5          BUT IN THE COURSE OF THE INVESTIGATION

6   THAT WE DID IN CONNECTION WITH THAT OPPOSITION, WE

7   DISCOVERED PRIOR ART COMING FROM JAPAN THAT WAS NOT

8   DISCLOSED BY APPLE TO THE PATENT OFFICE.  IT'S

9   DISCUSSED IN OUR OPPOSITION TO THE PRELIMINARY

10  INJUNCTION MOTION AT PAGES 3 AND 7.

11         THAT'S THE KIND OF EXAMPLE OF WHY TIME IS

12  NEEDED FOR ORDERLY DEVELOPMENT OF CASES.

13         AND EVEN JUST STICKING TO APPLE'S CLAIMS,

14  YOUR HONOR, THE TIME NEEDED FOR DISCOVERY FAR

15  OUTSTRIPS THE SUPPOSED EXPEDITED SCHEDULE.

16         WE WOULD -- WE NEED TIME FOR -- IF WE

17  JUST LOOK AT THE UTILITY AND DESIGN PATENTS THAT

18  APPLE HAS ASSERTED, THERE ARE 32 INVENTORS AND SIX

19  PROSECUTING LAWYERS FOR WHOM WE NEED DEPOSITIONS,

20  SO 38 DEPOSITIONS ARE NEEDED.

21         THE TIME TABLE THAT APPLE PROPOSES IS SO

22  TRUNCATED IT DOESN'T ALLOW PROPER TIME.

23         SO THE TIME TABLE THAT THE RULES

24  ESTABLISH IS THERE FOR A REASON.  IT'S TO ALLOW

25  ADEQUATE TIME FOR PEOPLE TO DEVELOP THEIR CLAIMS,

1    AND I'M NOT EVEN TALKING HERE ABOUT THE

2    COUNTERCLAIMS.

3            SO, YOUR HONOR, THE FIRST POINT IS WE

4    WOULD BE PREJUDICED BY THIS ASYMMETRICAL SCHEDULE

5    AND BY THE DELAY IN OUR CLAIMS THAT APPLE PROPOSES,

6    AND THEIR SCHEDULE IS WILDLY UNREALISTIC, AND

7    THEY'VE PROPOSED NO REASON FOR IT.

8            YOUR HONOR, IN THE ITC, IT'S 18 MONTHS,

9    NOT SEVEN MONTHS TO TRIAL UNDER CURRENT CALENDAR.

10           THIS IS SUCH AN EXTRAORDINARY EXPEDITION

11   MOTION, IT HAS NO PRECEDENT THAT WE'RE AWARE OF.

12           NOW, YOUR HONOR, AS YOU SUGGESTED,

13   THERE'S NO REASON FOR URGENCY HERE.  APPLE HAD ITS

14   CHANCE TO MOVE FOR A P.I., AND WHAT DID IT DO?  IT

15   MOVED FOR A PARTIAL P.I. ON ONLY A SUBSECTION OF

16   PATENTS, NOT THE PATENTS ON WHICH THEY SOUGHT

17   EXPEDITED DISCOVERY, NOT THE FUTURE PATENTS, BUT ON

18   A SUBSECTION OF PATENTS.

19           AND WHAT'S THE NEW REASON FOR URGENCY?

20   MR. MCELHINNY SUGGESTS THAT SOMEHOW THIS IS SOME

21   NEW SORT OF AMBUSH.

22           BUT THE FEATURES THAT ARE BEING

23   CHALLENGED IN THESE NEW PHONES HAVE BEEN IN

24   EXISTENCE IN SAMSUNG PHONES FOR A LONG TIME.  THE

25   LOOK AND FEEL IS NOT NEW.  THE LOOK AND FEEL THAT'S

1    BEING CHALLENGED ON THE NEW PHONE IS THE SAME THING

2    THAT WAS IN SAMSUNG PHONES OF WHICH APPLE WAS AWARE

3    A LONG TIME AGO.

4           THEY WERE AWARE IN THE GALAXY S PHONE

5    INTRODUCED IN KOREA AS OF MARCH 2010.  THEY WAITED

6    A YEAR TO FILE SUIT.

7           THEY FILED TWO AND A HALF -- THEY WAITED

8    TWO AND A HALF MONTHS AFTER THE COMPLAINT TO FILE

9    FOR THE P.I., AND THEN THEY FILED FOR A PARTIAL

10   P.I.

11          AS YOUR HONOR SUGGESTS, THAT REALLY

12   UNDERCUTS ANY ARGUMENT FOR URGENCY HERE.

13          YOUR HONOR PROPERLY DENIED THE EARLIER

14   EFFORTS TO EXPEDITE.  THEY TRIED TO EXPEDITE

15   DISCOVERY.  THEY TRIED TO DENY US THE CHANCE TO

16   HAVE APPROPRIATE AND ORDERLY BRIEFING ON THE P.I.

17   MOTION.  YOU REJECTED THE MOTION FOR EXPEDITED

18   BRIEFING ON THAT.

19          AND FINALLY, YOUR HONOR, WE'D REFER YOU

20   TO OUR OPPOSITION TO THE MOTION FOR PRELIMINARY

21   INJUNCTION.  WE GO AT GREAT LENGTH TO DESCRIBE TO

22   YOU WHY THERE IS NO IRREPARABLE HARM HERE TO APPLE.

23          SO FOR THE SAME REASONS AS THERE'S NO

24   IRREPARABLE HARM JUSTIFYING THE PRELIMINARY

25   INJUNCTION, THERE'S NO REASON FOR EXPEDITION HERE.

1          SO YOUR HONOR, I THINK IF -- I'M NOT SURE

2   WHETHER WE SHOULD BE FLATTERED THAT SAMSUNG WAS

3   SAID TO BE BIGGER THAN A COUNTRY, OR I DARE SAY

4   CONCERNED AT THE VERY SERIOUS AND REALLY RATHER

5   SURPRISING ALLEGATIONS THAT MR. MCELHINNY JUST MADE

6   OFF THE CUFF ABOUT THE NATURE OF SAMSUNG'S PRODUCT

7   DEVELOPMENT.

8          BUT I THINK AT A MINIMUM, WE NEED TO

9   CORRECT A COUPLE OF PLAIN MISSTATEMENTS THAT WERE

10  MADE, SO I'D LIKE TO ASK MR. JOHNSON TO RESPOND ON

11  THE NETHERLANDS INJUNCTION FOR A MOMENT.

12         MR. JOHNSON:  VERY QUICKLY, YOUR HONOR.

13         JUST TO CLARIFY THE RECORD, THERE WAS A

14  PRELIMINARY OPINION THAT CAME DOWN FROM THE COURT

15  IN THE NETHERLANDS THIS MORNING.  THERE'S NO

16  PRELIMINARY INJUNCTION.

17         THERE'S A DATE OF OCTOBER 13TH IN THE

18  NETHERLANDS WHEN THERE MAY BE SOME FUTURE FINDING

19  BY THE COURT.

20         BUT IN ESSENCE, THE NETHERLANDS' OPINION

21  WAS A VICTORY FOR SAMSUNG.  THERE WERE THREE

22  UTILITY PATENTS INVOLVED THERE, AND THERE WERE SIX

23  DESIGN PATENTS INVOLVED THERE, SO NINE PATENTS.

24         EIGHT OUT OF THE NINE PATENTS WERE FOUND

25  TO BE EITHER INVALID OR NOT INFRINGED.

1          AND THE ONES THAT OVERLAP, THAT HAVE

2    NETHERLANDS COUNTERPARTS TO THE U.S. DESIGN PATENTS

3    THAT ARE AT ISSUE IN THIS CASE, WERE FOUND BY THE

4    COURT TO BE NOT INFRINGED.

5          THE ONE PATENT THAT WAS FOUND TO BE

6    INFRINGED -- THERE WERE THREE PHONES THAT WERE

7    FOUND TO BE INFRINGED AND, FRANKLY, THAT ONE PATENT

8    DOESN'T HAVE ANY COUNTERPART IN THE UNITED STATES

9    AND IS NOT AT ISSUE IN THIS CASE.

10          THE THREE PHONES THAT WERE FOUND TO BE

11    INFRINGED, THERE WERE THREE PHONES, AND YET, THE

12    TAB IN THE NETHERLANDS, THE GALAXY TAB WAS FOUND

13    NOT TO BE INFRINGED OF THAT SAME PATENT.

14          SO SAMSUNG'S POSITION, WHICH WAS ALSO

15    INCLUDED IN THE PRESS RELEASE, IS THAT IT'S VERY

16    EASY TO FIX THOSE THREE PHONES TO PUT IN THE DESIGN

17    FROM THE GALAXY TAB.

18          AND SO THERE'S -- FROM SAMSUNG'S

19    STANDPOINT, BY THE OCTOBER 13TH DATE, THERE WILL BE

20    A NOT -- THERE WILL BE A SERIES OF PRODUCTS THAT

21    WILL HAVE BEEN FOUND BY THE COURT TO BE NOT

22    INFRINGED.

23          SO THE NETHERLANDS WAS A VICTORY.

24          GERMANY, THERE'S A HEARING ON THE

25    PRELIMINARY INJUNCTION ISSUE, FRANKLY, TOMORROW.

1        AND AUSTRALIA, THERE WAS A STIPULATION BY

2   THE PARTIES.  BECAUSE SAMSUNG NEVER HAD ANY

3   INTENTION OF INTRODUCING THE GALAXY TAB THAT WAS AT

4   ISSUE IN THE APPLE PRELIMINARY INJUNCTION PAPERS IN

5   AUSTRALIA, SO RATHER THAN FIGHT THAT PARTICULAR

6   ISSUE, SAMSUNG STIPULATED TO NOT BRINGING THAT

7   PRODUCT IN.

8        SO WITH RESPECT TO THE STATEMENTS THAT

9   THESE ARE VICTORIES AND THEY'RE RIFLE SHOTS THAT

10  HAVE TO OCCUR AROUND THE WORLD, BY AND LARGE,

11  SAMSUNG HAS FARED VERY WELL WITH RESPECT TO THE

12  LITIGATIONS AROUND THE WORLD.

13       AND WHERE APPLE HAS LOST IN THE FORUM

14  PROCEEDINGS, IT'S THE SAME OR ALMOST IDENTICAL

15  DESIGN RIGHTS THAT ARE AT ISSUE IN THE U.S. CASE.

16       WHERE APPLE HAS WON IN THE NETHERLANDS,

17  THERE'S NO U.S. EQUIVALENT TO THAT PATENT.

18       SO I JUST WANTED TO CLEAR THAT UP.

19       AND FINALLY, THE OTHER STATEMENT THAT I

20  WANTED TO CLEAR UP FROM MS. SULLIVAN WAS THE ITC

21  CASES, ACTUALLY THE TARGET DATES ARE 16 MONTHS AND

22  18 MONTHS OUT.

23       THE HEARINGS ARE ACTUALLY NOT UNTIL MAY

24  AND JUNE OF NEXT YEAR, BUT THE TARGET DATES IN

25  THOSE CASES ARE 16 MONTHS AND 18 MONTHS OUT.

1          SO AFTER THE HEARINGS OCCUR IN THE EARLY

2    PART OF NEXT SUMMER, THEN AFTERWARDS, AS YOUR HONOR

3    KNOWS, THERE WILL BE SOME POST-TRIAL BRIEFING AND

4    THE PERIOD IN WHICH AN INITIAL DETERMINATION IS

5    MADE BY THE ALJ'S.

6          THOSE HEARINGS ARE GOING TO PROCEED.

7          AND THE TARGET DATES, LIKE I SAID, IN

8    THOSE ARE 16 AND 18 MONTHS, NOTHING CLOSE TO A

9    MARCH 2012 TRIAL DATE.

10          MR. MCELHINNY:  BULLET POINTS, IF I MAY,

11   YOUR HONOR?

12          THE COURT:  OKAY, VERY BRIEFLY.

13          MR. MCELHINNY:  MR. JOHNSON'S SPEECH THAT

14   HE JUST GAVE YOU IS THE REASON WHY WE NEED A TRIAL

15   ON THE MERITS, THAT THEY ARE NOT -- THEY ARE NOT

16   FREE TO DISTRIBUTE PRODUCT IN AUSTRALIA, THEY ARE

17   NOT FREE TO DISTRIBUTE PRODUCT IN GERMANY.

18          THE INJUNCTION THAT WAS ISSUED THIS

19   MORNING IS AN INJUNCTION THAT HAS BEEN STAYED UNTIL

20   OCTOBER.

21          AND HE JUST TOLD YOU THAT SAMSUNG IS

22   WINNING ALL OF THESE CASES.

23          WHEN YOUR HONOR ISSUES A PRELIMINARY

24   INJUNCTION IN THIS CASE, THEY WILL ISSUE AN -- A

25   PRESS RELEASE THAT DECLARES A VICTORY AND THEY WILL

1    FIGURE OUT SOME WAY TO GET AROUND THAT SPECIFIC

2    ORDER.

3            BUT IT WILL NOT STOP THEIR STRATEGY.

4            ON THE PATENT RULES, AGAIN, FOR ALL OF US

5    WHO ARE INVOLVED IN THE PATENT RULE COMMITTEES THAT

6    PUT THEM TOGETHER, WE CAN ALL HEAR JUDGE WHYTE SAY

7    OVER AND OVER AND OVER, IF YOU READ THE RESPONSES

8    TO QUESTIONS WHERE THEY SAID THESE WILL BECOME A

9    STRAIGHT JACKET, JUDGES WILL HAVE TO FOLLOW THE

10   RULES, NO ONE WILL EVER CHANGE, JUDGE WHYTE USED TO

11   SAY OVER AND OVER, "READ RULE 1-3.  THERE'S A

12   REASON WHY IT'S THE FIRST RULE, BECAUSE IT SAYS THE

13   JUDGES IN THIS DISTRICT WILL ALTER THESE RULES TO

14   MEET THE NEEDS OF PARTICULAR CASES."

15           THE ASYMMETRICAL PROPOSAL FOR TRIALS IS

16   ASYMMETRICAL BECAUSE IT'S WHAT SAMSUNG ASKED FOR.

17           SAMSUNG HAS NEVER ASKED FOR EXPEDITION.

18   SAMSUNG DIDN'T ASK TO HAVE ITS CASE AND OUR

19   COUNTERCLAIMS TO GO EARLY.  SAMSUNG IS UNDER NO

20   TIME PRESSURE.

21           SO WE AGREED TO THEIR SCHEDULE FOR THEIR

22   CASE.

23           BUT WE DO NOT AGREE, AND I -- IF I HEARD

24   HER CORRECTLY THIS MORNING, THEY HAD NO TACTICAL

25   REASON FOR DOING IT, THEY HAD NO STRATEGIC REASON

1    FOR DOING IT, BUT THE REASON THEY JOINED THESE

2    CASES WAS BECAUSE YOUR HONOR TOLD THEM TO DO.

3    THAT'S WHAT SHE TOLD YOU ON THE DISQUALIFICATION

4    MOTION.

5            AND IF YOU TOLD THEM TO DO IT, YOU CAN

6    TELL THEM NOT TO DO IT, TOO.  WE DON'T NEED TO

7    FORCE THEM INTO SOME EXPEDITED SCHEDULE THAT THEY

8    DON'T WANT TO DO.

9            BUT WE NEED IT AND THAT'S WHY WE'RE

10   ASKING FOR IT.

11           THE COURT:  I DIDN'T TELL THEM TO DO IT.

12           MR. MCELHINNY:  I KNOW, YOUR HONOR.

13           THE COURT:  I ASKED IF THEY WERE GOING TO

14   DO IT.

15           MR. MCELHINNY:  AND I WAS BEING -- I WAS

16   BEING -- THE RECORD SHOULD REFLECT THAT I

17   UNDERSTOOD THAT PERFECTLY AND THAT WAS THE POINT I

18   WAS TRYING TO MAKE.

19           BUT SHE DID SAY THAT THEY DIDN'T DO IT

20   FOR ANY TACTICAL REASON THAT THEY NEEDED IT FOR.

21           ON THE ITC, TO BE CLEAR ON THE CORRECTION

22   THAT WAS MADE TO HER ARGUMENT, WHILE TELLING YOU

23   THAT THEY CAN'T POSSIBLY TRY THIS CASE IN SIX TO

24   EIGHT MONTHS, THEY FILED AN ITC ACTION IN WHICH THE

25   TRIAL WILL OCCUR WITHIN TEN MONTHS.

1          THE DECISION COMES LATER, BUT THEY ARE

2    PREPARED -- YOUR HONOR HAS A LOT OF EXPERIENCE

3    HERE.  WE'RE ALL BIG FIRMS.  IF YOUR HONOR TOLD US

4    THAT WE WERE GOING TO TRIAL 90 DAYS FROM TODAY, WE

5    COULD DO THAT.

6          WE'RE NOT ASKING FOR THAT.  WE'RE ASKING

7    FOR NEXT MAY, OR APRIL I THINK.

8          AND THERE'S JUST NOTHING IN THIS CASE

9    THAT'S INSURMOUNTABLE TO MAKE THAT TRUE.

10          THE UNITED STATES IS A LEADER IN THE

11    PROTECTION OF INTELLECTUAL PROPERTY.

12          THE NORTHERN DISTRICT IS THE LEADER.

13    WE'VE CITED TO YOUR HONOR CASES WHERE NORTHERN

14    DISTRICT JUDGES HAVE SAID, IN CASES OF I.P. RIGHTS

15    BEING CHALLENGED, THE COURTS CAN RESPOND.  THEY CAN

16    STEP UP AND PREDICT -- PROTECT THE LEGITIMATE

17    INTERESTS.

18          WE THINK WE HAVE DEMONSTRATED TO YOUR

19    HONOR THE POSITION THAT APPLE HOLDS, ITS ICONIC

20    POSITION BECAUSE OF ITS DESIGN AND ITS PRODUCTS,

21    AND THAT -- WHAT APPLE HAS ACCOMPLISHED, WHICH IS

22    RECOGNIZED WORLDWIDE, DESERVES TO BE PROTECTED AND

23    THE ONLY WAY TO PROTECT IT IS TO DECIDE THE LEGAL

24    ISSUES THAT ARE BEING CHALLENGED HERE.

25          THANK YOU.

1          THE COURT:  ALL RIGHT.  WE'RE GOING TO

2   TALK ABOUT THE CASE SCHEDULE.

3          LET ME TALK ABOUT MY FAVORITE TOPIC,

4   WHICH IS ALTERNATIVE DISPUTE RESOLUTION.

5          BOTH SIDES EXPRESSED AN INTEREST IN DOING

6   PRIVATE MEDIATION, BUT YOU SAID AT THE TIME AND ON

7   A DATE WHEN YOU THOUGHT IT WOULD BE APPROPRIATE.

8          WHEN IS THAT?  WHEN IS THAT?

9          MR. MCELHINNY:  THE ANSWER --

10         THE COURT:  WHY IS THAT NOT NOW?

11         MR. MCELHINNY:  IT IS NOT NOW BECAUSE THE

12   PARTIES ARE SO FAR DIVIDED ON THE LEGAL ISSUES THAT

13   ARE PRESENTED HERE.

14         AS YOUR HONOR KNOWS, SOMETIMES YOU HAVE

15   TO DECIDE SOME KEY LEGAL ISSUES BECAUSE THE

16   PARTIES, THEY CAN'T TALK AROUND THAT GAP.

17         THE COURT:  AND WHAT IS THAT?  IS THAT

18   THE P.I. MOTION?  IS THAT A MARKMAN RULING?  WHAT

19   IS THAT?  IS THAT SUMMARY JUDGMENT?

20         MR. MCELHINNY:  I DON'T KNOW THE ANSWER

21   TO THAT, YOUR HONOR.

22         THE COURT:  OKAY.  WHAT ABOUT FROM

23   SAMSUNG?  WHEN --

24         MR. JOHNSON:  FROM SAMSUNG'S STANDPOINT,

25   YOUR HONOR, WE ARE -- WE'RE WILLING AND ABLE TO

1   PARTICIPATE, YOU KNOW, SO -- WE DON'T -- WE'RE

2   HEARING FROM APPLE'S STANDPOINT THEY DON'T WANT TO

3   TALK.

4            BUT, YOU KNOW, I'M ALWAYS OF THE BELIEF

5   THAT IT MAKES SENSE TO TALK AND SEE IF THERE'S ANY

6   POTENTIAL TO RESOLVE THE DISPUTE.

7            THE COURT:  THAT SOUNDED PRETTY AMENABLE

8   TO ME.

9            MR. MCELHINNY:  YOUR HONOR, I HAVE NO

10  INFORMATION BEYOND WHAT I TOLD YOU.

11           I MEAN, THEY KNOW WHERE WE LIVE.

12           THE COURT:  ALL RIGHT.  WELL, I'M

13  DISAPPOINTED TO HEAR THAT.

14           NOW, THERE WASN'T -- THERE WAS SORT OF A

15  HINT OF A SEVERANCE ISSUE, BUT THERE WAS NO

16  SEVERANCE MOTION.

17           AT THIS POINT I'M KEEPING THIS ALL AS ONE

18  BIG CASE AND WE'RE GOING TO DO CLAIM CONSTRUCTION,

19  BUT IT'S GOING TO BE LIMITED TO TEN TERMS.

20           AND TO THE EXTENT THE PARTIES CAN AGREE,

21  THOSE WILL BE THE TEN TERMS.

22           TO THE EXTENT THAT YOU CANNOT, EACH SIDE

23  WILL JUST GET TO PICK YOUR OWN.

24           HOPEFULLY THERE WILL BE SOME THAT YOU'LL

25  AGREE TO.  IF NOT, EACH SIDE WILL GET FIVE.

1        AND WE'LL DO CLAIM CONSTRUCTION ON THOSE

2    TEN; WE'LL GO THROUGH SUMMARY JUDGMENT ON THOSE

3    TEN; WE'LL GO THROUGH TRIAL ON THOSE TEN.

4        I'M NOT, AT THIS POINT, COMMITTING TO

5    HAVING A SECOND PHASE OR SECOND ROUND OF CLAIM

6    CONSTRUCTION, SUMMARY JUDGMENT, TRIAL.

7        BUT WHAT I WOULD LIKE IS TO HAVE A VERY

8    NARROW CASE GO TO A JURY, AND SO WHAT I'M GOING TO

9    DO WITH REGARD TO -- WELL, LET'S TALK ABOUT

10   DISCOVERY.

11        BOTH SIDES DIDN'T WANT LIMITS ON REQUESTS

12   FOR PRODUCTION OR ADMISSIONS, THAT'S FINE; IT'LL BE

13   80 INTERROGATORIES PER SIDE; AND 250 HOURS OF

14   DEPOSITION, EACH SIDE, EXCLUDING EXPERTS AND THIRD

15   PARTY WITNESSES, AND SEVEN HOUR LIMITS PER

16   DEPOSITION.

17        I THINK THOSE WERE YOUR ONLY DISCOVERY

18   DISPUTES.  DOES THAT SOUND RIGHT?  LET ME JUST

19   CHECK YOUR --

20        MR. JOHNSON:  I THINK THAT'S CORRECT,

21   YOUR HONOR.

22        THE COURT:  OKAY.  ALL RIGHT.  SO THAT

23   WILL BE THE DISCOVERY LIMITS AND ALL CASES, BOTH

24   THE APPLE AFFIRMATIVE CASE AND THE SAMSUNG

25   COUNTERCLAIMS, ARE GOING TOGETHER AND THOSE ARE THE

1   LIMITS FOR BOTH CASES.

2           WITH REGARD TO SCHEDULING, THIS IS WHAT

3   I'M GOING TO PROPOSE.  I MEAN, WE'VE ALREADY HAD

4   EXPEDITED DISCOVERY.  WE'LL ALREADY, TO SOME

5   EXTENT, HAVE SOME CLAIM CONSTRUCTION IN THE

6   PRELIMINARY INJUNCTION MOTION.  YOU'VE ALREADY EVEN

7   HAD SOME CLAIM CONSTRUCTION DISCOVERY IN THE

8   PRELIMINARY INJUNCTION DISCOVERY.

9           SO I WOULD LIKE TO HAVE A MORE

10  EXPEDITIOUS SCHEDULE, BUT NOT THE ONE THAT APPLE

11  SUGGESTED BECAUSE I JUST DON'T THINK THAT'S

12  FEASIBLE CONSIDERING THE COMPLEXITY AND ALL OF THE

13  INTELLECTUAL PROPERTY RIGHTS THAT HAVE BEEN

14  ASSERTED IN THIS CASE.

15          BUT THIS IS WHAT I'D LIKE TO PROPOSE, AND

16  I'LL GIVE YOU EACH A CHANCE TO RESPOND:  SO INITIAL

17  DISCLOSURES WILL BE DUE SEPTEMBER 7TH, TWO WEEKS

18  FROM TODAY AS ACCORDING TO THE FEDERAL RULES OF

19  CIVIL PROCEDURE; HAVE YOUR INFRINGEMENT CONTENTIONS

20  DUE ON SEPTEMBER 7TH AS WELL; INVALIDITY

21  CONTENTIONS, OCTOBER 7TH; EXCHANGE PRELIMINARY

22  CLAIM CONSTRUCTION OCTOBER 17TH; EXCHANGE CLAIM

23  TERMS OCTOBER 31ST; FILE YOUR JOINT CLAIM

24  CONSTRUCTION, PREHEARING STATEMENT NOVEMBER 14TH;

25  THE DEADLINE TO AMEND THE PLEADINGS IS ALSO GOING

1    TO BE NOVEMBER 14TH; AND THE CLOSE OF CLAIM

2    CONSTRUCTION DISCOVERY IS NOVEMBER 28TH.

3           ALL RIGHT.  SO OPENING CLAIM CONSTRUCTION

4    BRIEF WILL BE DECEMBER 8TH; OPPOSITION,

5    DECEMBER 22ND; REPLIES, DECEMBER 29TH.

6           WE CAN HAVE A TUTORIAL -- LET ME ASK

7    MS. GARCIA IF YOU WOULD CHECK THE WEEK OF

8    JANUARY 19TH, 2012, PLEASE.  IF YOU COULD CHECK

9    THAT THURSDAY AND SEE IF THE LAW AND MOTION IS

10   HEAVY.

11          THE CLERK:  YOU DON'T HAVE ANYTHING SET

12   AT THAT TIME.

13          THE COURT:  OH, OKAY.  WHAT ABOUT FOR --

14   WHAT ABOUT THE WEEK BEFORE?  CAN YOU CHECK THE 12TH

15   AS WELL, THE 12TH AND THE 19TH?

16          THE CLERK:  ONE MATTER IS SET FOR THE

17   12TH.

18          THE COURT:  AND WHICH CASE IS THAT?

19          THE CLERK:  MINSHALL.

20          THE COURT:  OH, OKAY.  THAT'S AN ERISA

21   CASE.

22          (DISCUSSION OFF THE RECORD BETWEEN THE

23   COURT AND THE CLERK.)

24          THE COURT:  THAT'S OKAY.  THIS IS WHAT

25   I'LL DO:  I'LL SET A HALF DAY TUTORIAL ON MONDAY,

1    JANUARY 16TH OF 2012.  LET'S SET IT IN THE

2    AFTERNOON FROM 1:30 TO 4:30.

3              AND THEN I'LL SET THE CLAIM CONSTRUCTION

4    HEARING FOR THAT FRIDAY, JANUARY 20TH OF 2012 -- I

5    WOULD LIKE TO JUST SET THAT --

6              (DISCUSSION OFF THE RECORD BETWEEN THE

7    COURT AND THE CLERK.)

8              THE COURT:  ALL RIGHT.  WHY DON'T I SET

9    THAT, THEN, ON THE -- I'LL SET IT ON THE 17TH AND

10   SET THE CLAIM CONSTRUCTION ON THE 20TH, AND I WON'T

11   SET ANY LAW AND MOTION THAT WEEK.  THAT'LL BE THE

12   20TH, WHICH IS FRIDAY, AND WE'LL START AT 10:00.

13             I WOULD JUST LIKE TO DO IT FOR FOUR

14   HOURS, SO 10:00 TO 12:00, AND THEN 1:00 TO 3:00.

15             NOW, I CAN SET THE FACT DISCOVERY CUT OFF

16   SOONER, OTHERWISE I'D SET IT FOR MARCH 8TH OF 2012.

17   WHY DON'T -- I'LL KEEP THAT DATE, MARCH 8TH OF

18   2012; INITIAL EXPERT REPORTS, MARCH 22ND OF 2012;

19   REBUTTAL, APRIL 16TH; CLOSE OF EXPERT DISCOVERY,

20   I'LL SAY APRIL 27TH OF 2012; FILE YOUR DISPOSITIVE

21   MOTIONS ON MAY 3RD; HEARING WILL BE JUNE 7TH AT

22   1:30; PRETRIAL CONFERENCE, JULY 18TH AT 2:00

23   O'CLOCK; AND THE TRIAL ON MONDAY, JULY 30TH AT

24   9:00 A.M.

25             AND I'LL JUST PUT IT IN, FOR NOW, AS A 13

1    DAY ESTIMATE, BUT WE CAN FINE TUNE THAT LATER.

2              DOES ANYONE WANT TO BE HEARD ON THIS

3    SCHEDULE?  SO IT'S MORE EXPEDITED, BUT I THINK IT

4    STILL PROVIDES ENOUGH TIME.  I'M EXPEDITING IT

5    BECAUSE WE HAVE ALREADY HAD SOME, QUITE A BIT OF

6    DISCOVERY FOR THE P.I. MOTION.

7              MR. LEE:  YES, BILL LEE FROM WILMER,

8    HALE.

9              THE COURT:  YES.

10             MR. LEE:  THE SCHEDULE IS FINE, YOUR

11   HONOR, FROM OUR COLLECTIVE POINT OF VIEW.  I HAVE

12   JUST ONE QUESTION.

13             THE COURT:  YES.

14             MR. LEE:  YOUR HONOR SAID THERE WOULD BE

15   TEN CLAIM TERMS WITH THE HOPE OF NARROWING THE

16   PATENTS AND THE CLAIMS TO ACTUALLY BE TRIED

17   BEGINNING ON JULY 30TH.

18             IS THAT SOMETHING YOUR HONOR CONTEMPLATES

19   WILL HAPPEN DURING THE COURSE OF THE PROCESS OF

20   IDENTIFYING THE CLAIM TERMS AND NARROWING THE

21   CLAIMS DOWN BY US WORKING TOGETHER?

22             THE COURT:  YES.  SO WHEN YOU HAVE TO

23   MEET AND CONFER -- AFTER YOU EXCHANGE YOUR PROPOSED

24   CLAIM TERMS AND YOU HAVE TO MEET AND CONFER TO

25   NARROW THOSE TEN TERMS, IF YOU REACH AGREEMENT ON

1    SOME, THEN THOSE WILL OBVIOUSLY BE PART OF THE TEN,

2    AND WHATEVER YOU DON'T, YOU'LL HAVE TO JUST SPLIT

3    IT WHERE YOU GET TO PICK SOME AND YOU GET TO PICK

4    SOME.

5           MR. LEE:  AND JUST HYPOTHETICALLY, YOUR

6    HONOR, LET'S SAY THERE'S A PATENT AND WE AGREE UPON

7    WHAT THE CLAIM TERMS MEAN, BUT WE'D LIKE TO HAVE

8    THAT PATENT BE PART OF THE TRIAL.  IS THAT

9    SOMETHING WE'LL RESOLVE WITH YOUR HONOR DURING THE

10   COURSE OF THE MARKMAN, SUMMARY JUDGMENT, PRETRIAL

11   PROCEEDING?

12          THE COURT:  WAIT.  YOU'RE SAYING THAT

13   THERE'S NO DISPUTE AS TO THE CLAIM TERM'S --

14          MR. LEE:  RIGHT.  I GUESS --

15          THE COURT:  -- CONSTRUCTION, BUT YOU

16   STILL WANT IT TO BE PART OF THE TRIAL?

17          MR. LEE:  YEAH.  I COULD CONTEMPLATE THAT

18   THERE WILL BE CERTAIN CLAIMS THAT HAVE BEEN

19   ASSERTED, LIKE THE CONTRACT CLAIMS, BUT ALSO THERE

20   MAY BE PATENT CLAIMS WHERE WE AGREED ON WHAT THE

21   CLAIM TERMS MEAN, BUT EITHER OR BOTH OF US WANT

22   THEM TO BE PART OF THE TRIAL.

23          NOW, IF WE AGREE THAT WE'LL AGREE, WE'LL

24   COME TO YOUR HONOR AND SAY WE AGREE.

25          BUT HYPOTHETICALLY, I COULD SEE A

1    SITUATION WHERE WE HAVE NO DISPUTE AS TO WHAT THE

2    CLAIM TERMS MEAN AS A MATTER OF MARKMAN CLAIM

3    CONSTRUCTION --

4            THE COURT:  UM-HUM.

5            MR. LEE:  -- BUT WE MIGHT HAVE A DISPUTE

6    AS TO WHETHER THIS IS ONE OF THE, YOU KNOW, 19

7    PATENTS YOUR HONOR SHOULD CONSIDER PARING DOWN FOR

8    PURPOSES OF THE TRIAL.

9            NOW, MAYBE THE THING TO DO IS LET US GO

10   THROUGH THE MEET AND CONFER ON THE CLAIM

11   CONSTRUCTION PROCESS, LET US CONFER AS TO WHETHER

12   MY HYPOTHETICAL EVEN EXISTS, AND THEN WE COME BACK

13   TO YOUR HONOR AT THAT POINT IN TIME.

14           THE COURT:  I WOULD PREFER THAT.  I'M

15   NOT, AT THIS POINT, LIMITING THE TRIAL TO WHAT YOU

16   ACTUALLY HAVE CONSTRUED IF THAT'S THE QUESTION.

17           MR. LEE:  THAT WAS MY QUESTION.

18           THE COURT:  BUT I WOULD WANT -- EXCUSE

19   ME -- I WOULD WANT, BEFORE THE TRIAL, THAT WE COME

20   TO SOME AGREEMENT AS TO WHAT THE VERY NARROW ISSUES

21   ARE GOING TO BE.

22           AND AT THIS POINT I THINK IT'S PREMATURE

23   TO NARROW THE SCOPE UNTIL YOU HAVE MORE DISCOVERY,

24   YOU HAVE MORE INFORMATION, AND YOU HAVE MORE

25   RULINGS.

1           BUT AT THAT POINT -- AT THE POINT OF

2 TRIAL, WE'RE GOING TO PICK JUST VERY NARROWLY.

3           IT'S NOT GOING TO BE 19 PATENTS GOING TO

4 TRIAL.  IT'S NOT GOING TO BE ALL THE -- DO YOU SEE

5 WHAT I'M SAYING?

6           MR. LEE:  I UNDERSTAND.  FAIR ENOUGH.

7 FAIR ENOUGH.

8           AND I THINK WE'LL BE ABLE TO CRYSTALIZE

9 THINGS BETTER FOR YOUR HONOR, BECAUSE DEPENDING

10 UPON WHICH PATENTS THEY WANT TO ASSERT, THAT WILL

11 PERHAPS NECESSARILY BRING ALONG SOME OF THE OTHER

12 ISSUES.

13           BUT THAT'S SOMETHING THAT WE OUGHT TO BE

14 ABLE TO WORK OUT SOME TIME DURING THE NEXT SIX

15 MONTHS OR SO.

16           THE COURT:  BUT THE TEN MEANS TEN.

17           MR. LEE:  GOT IT.

18           THE COURT:  OKAY?  SO I DON'T WANT A

19 WHOLE CLAIM THAT'S, LIKE, FOUR PARAGRAPHS LONG AND

20 YOU'RE SAYING THAT'S THE WHOLE TERM.  I REALLY WANT

21 NARROW, JUST TEN TERMS.

22           AND WE'LL DECIDE AFTER THE TRIAL WHETHER

23 WE NEED TO DO ROUND TWO OF THIS WHOLE PROCESS.  I'M

24 HOPING NOT.

25           MR. LEE:  FAIR ENOUGH.  GOT IT.

1            MR. JOHNSON:  AND YOUR HONOR, JUST

2    QUICKLY?

3            THE COURT:  YES?

4            MR. JOHNSON:  WITH RESPECT TO THE

5    DISCOVERY THAT HAS ALREADY HAPPENED, I JUST WANT TO

6    POINT OUT, OBVIOUSLY, THAT THE DISCOVERY HAS ONLY

7    BEEN WITH RESPECT TO ONE UTILITY PATENT THAT APPLE

8    HAS ASSERTED.

9            THERE'S SEVEN OTHER UTILITY PATENTS, OF

10   WHICH WE'VE RECEIVED NO DISCOVERY AT THIS POINT,

11   AND WE HAVE ISSUES EVEN WITH THE SCOPE OF DISCOVERY

12   THAT WE'VE RECEIVED SO FAR, IN ADDITION TO THE FACT

13   THAT THERE ARE FOUR OTHER DESIGN PATENTS THAT WE

14   DON'T HAVE DISCOVERY ON YET.

15           SO MY POINT IS THAT THERE'S STILL --

16   THESE ARE -- THIS IS OBVIOUSLY A BIG CASE WITH A

17   LOT OF PATENTS IN IT.

18           WITH A MARKMAN -- WITH US STARTING TO

19   CHOOSE MARKMAN TERMS AND PROCEEDING TO CLAIM

20   CONSTRUCTION IN OCTOBER AND NOVEMBER, I UNDERSTAND

21   AND OBVIOUSLY WE'RE GOING TO BE FOCUSSING DOWN THE

22   CASE ULTIMATELY FOR TRIAL, BUT AT LEAST AT THE

23   BEGINNING, WE HAVE TO GET THE DISCOVERY FROM THEM.

24           THERE ARE 32 INVENTORS JUST ON THEIR SIDE

25   WITH RESPECT TO THE PATENTS.  THERE ARE ANOTHER

1    SEVEN LAWYERS THAT PROSECUTED THE PATENTS ON THEIR

2    SIDE.

3             I'M CONCERNED ABOUT THE TIME.  AND I

4    UNDERSTAND YOUR HONOR'S DESIRE TO EXPEDITE AT SOME

5    POINT AND MOVE THINGS FORWARD, BUT UNDER THIS

6    SCHEDULE, IT DOESN'T -- IT DOESN'T LEAVE US, I

7    THINK, SUFFICIENT TIME TO PUT TOGETHER THE DEFENSES

8    THAT WE NEED IN ORDER TO PROPERLY FOCUS THE CASE.

9             AND I'M PARTICULARLY CONCERNED ABOUT

10   MOVING FORWARD WITH RESPECT TO CLAIM CONSTRUCTION

11   AND NOT HAVING THE BENEFIT OF ALL THE DEPOSITIONS

12   THAT NEED TO OCCUR AND THE PRIOR ART THAT NEEDS TO

13   OCCUR AND, YOU KNOW, LOOKING AT THE FOREIGN

14   COUNTERPARTS THAT EXIST EVERYWHERE ELSE AND

15   UNDERSTANDING WHAT'S BEEN GOING ON IN THE FOREIGN

16   PROSECUTIONS.

17            THE COURT:  WELL, IF THESE CASES -- I'M

18   SORRY TO INTERRUPT YOU -- HAVE BEEN GOING ON SINCE

19   SEPTEMBER 2010, I ASSUME YOU'VE ALREADY BEEN

20   SEARCHING FOR PRIOR ART FOR THE LAST YEAR AT LEAST.

21            MR. JOHNSON:  BUT THESE PATENTS ARE

22   DIFFERENT, AND THEY'RE -- AND NOW THEY'RE -- YOU

23   KNOW, WE DON'T HAVE THEIR INFRINGEMENT CONTENTIONS

24   YET, BUT WHEN I GET THEIR INFRINGEMENT CONTENTIONS,

25   THAT'S OBVIOUSLY -- DEPENDING ON HOW BROADLY THEY

1    CONSTRUE THINGS, IT'S GOING TO TURN US -- I MEAN,

2    IT MAY UNLEASH ADDITIONAL PRIOR ART.

3            SO I'M CONCERNED ABOUT HOW TIGHT THIS

4    SCHEDULE IS, AND PARTICULARLY WHEN WE GET WITH

5    RESPECT TO SOME OF THE DATES ON THE BACK END OF THE

6    SCHEDULE THAT HAVE US, FOR EXAMPLE, FILING

7    DISPOSITIVE MOTIONS A WEEK AFTER THE CLOSE OF

8    EXPERT DISCOVERY.

9            AND I DO THINK THAT THAT'S AN OPPORTUNITY

10   FOR US TO REALLY FOCUS THE CASE AND FIGURE OUT

11   REALLY ON BOTH SIDES WHAT ARE THE STRENGTHS AND

12   WEAKNESSES AND WHAT'S ACTUALLY GOING TO GET TRIED.

13           I THINK THAT'S AN IMPORTANT TIME FOR THE

14   PARTIES TO FIGURE OUT WHAT DISPOSITIVE MOTIONS ARE

15   GOING TO BE FILED AND THEN COME TO YOUR HONOR WITH,

16   WITH THE -- YOU KNOW, ULTIMATELY WITH WHAT THE

17   BEST, WHAT THE BEST THEORIES ARE GOING TO BE AND

18   WHAT'S GOING TO ACTUALLY GET TRIED.

19           SO COMPRESSING IT ON THE BACK END AS WELL

20   WITH RESPECT TO DISPOSITIVE MOTIONS, I'D ASK FOR A

21   LITTLE BIT MORE TIME IN THAT RESPECT.

22           THE COURT:  ALL RIGHT.  WELL, BEFORE I DO

23   THAT, LET ME ASK, APPLE, YOU WANTED THIS FAST.

24           WHY DON'T YOU GIVE YOUR INFRINGEMENT

25   CONTENTIONS ON MONDAY?

1          MR. MCELHINNY:  YES.

2          THE COURT:  ARE YOU GOING TO DO THAT?

3          MR. MCELHINNY:  YES.

4          THE COURT:  HOW QUICKLY CAN YOU DO THAT?

5    CAN YOU DO IT FRIDAY?  GIVE ME A SOONER DATE.  GIVE

6    ME INITIAL DISCLOSURES VERY QUICKLY.  YOU WANTED

7    THIS, YOU'RE GOING TO GET IT.

8          MR. MCELHINNY:  YES, YOUR HONOR.

9          THE COURT:  WHEN CAN YOU DO YOUR INITIAL

10   DISCLOSURES?  YOU WANT TO DO THEM ON FRIDAY?

11         I'M GOING TO LET SAMSUNG KEEP

12   SEPTEMBER 7TH AS THEIR DATE.  THEY GET THE FULL 14

13   DAYS PROVIDED BY THE CIVIL RULES OF PROCEDURE.

14         WHERE ARE WE?  WE'RE AUGUST 24TH.

15         HOW QUICKLY CAN APPLE GET ITS INITIAL

16   DISCLOSURES AND INFRINGEMENT CONTENTIONS?

17         MR. MCELHINNY:  WE CAN GIVE THEM ON

18   FRIDAY, YOUR HONOR.

19         THE COURT:  OKAY.  SO AUGUST 26TH IS

20   GOING TO BE THE DATE JUST FOR APPLE FOR

21   INFRINGEMENT CONTENTIONS AND FOR INITIAL

22   DISCLOSURES.

23         NOW, ARE YOU GOING TO BE MAKING A

24   DOCUMENT PRODUCTION WITH YOUR INITIAL DISCLOSURES,

25   OR ONLY A LISTING OF CATEGORIES OF DOCUMENTS?

1          MR. MCELHINNY:  NO, YOUR HONOR.  WE'RE

2    GOING TO PRODUCE DOCUMENTS ON FRIDAY AS WELL.

3          THE COURT:  OKAY.

4          MR. MCELHINNY:  CAN I --

5          THE COURT:  NOW, I THINK THAT -- I THINK

6    MR. JOHNSON'S RAISED A GOOD POINT.  HOW IS HE GOING

7    TO GET ALL THESE DEPOSITIONS IN TIME?

8          IF YOU WANT TO KEEP THIS DATE, I THINK

9    APPLE'S GOING TO HAVE TO AGREE THAT RATHER THAN

10   GETTING THE NORMAL 30 DAYS TO RESPOND TO ANY

11   DISCOVERY, YOU'RE GOING TO DO IT ON A MUCH MORE

12   EXPEDITED BASIS.

13         OTHERWISE I AM GOING TO MOVE THIS CLAIM

14   CONSTRUCTION DATE SOMEWHAT.

15         MR. LEE:  WELL, YOUR HONOR, WE'LL DO

16   WHATEVER WE NEED TO DO TO KEEP THE DATES.

17         BUT LET ME MAKE ONE POINT JUST TO MAKE

18   SURE THAT THE PLAYING FIELD IS EVEN HERE.

19         THE COURT:  YEAH.

20         MR. LEE:  THERE ARE FOUR PATENTS THAT ARE

21   GOING TO BE IN THIS CASE.  THE FOUR LATEST PATENTS

22   ASSERTED ARE PATENTS THAT SAMSUNG ASSERTED ON

23   JUNE 30TH.

24         WE'RE GOING TO HAVE TO SUBMIT OUR

25   INFRINGEMENT CONTENTIONS ON THOSE PATENTS, WHICH

1    CAME INTO THE CASE FOR THE FIRST TIME ABOUT 30 DAYS

2    AGO, 40 DAYS AGO, BY OCTOBER 7TH.

3            BOTH OF US, IN ORDER TO GET THIS

4    RESOLVED, ARE GOING TO HAVE TO SUFFER A LITTLE BIT

5    OF PAIN AND GO A LITTLE BIT FASTER.

6            AND THE REASON WE NEED TO DO IT, YOUR

7    HONOR, NOT TO REITERATE WHAT MR. MCELHINNY SAID OR

8    TO REVISIT THE ARGUMENT THAT MS. SULLIVAN AND

9    MR. MCELHINNY HAD, BUT MR. VERHOEVEN IS RIGHT, THE

10   TECHNOLOGY IN THIS FIELD HAS THE LIFE OF A CABBAGE,

11   WHETHER YOU'RE FROM IOWA OR BOSTON OR FROM

12   SAN FRANCISCO.

13           THE REASON THAT WE NEED AN EARLY

14   DETERMINATION -- AND JULY NEXT YEAR IS AN EARLY

15   DETERMINATION -- IS SO THAT NO PARTY, SAMSUNG OR

16   APPLE, CONVINCES THE COURT TO DELAY PROCEEDINGS SO

17   THAT THERE ARE FOUR OR FIVE CROPS OF CABBAGES

18   BEFORE WE GET TO A FINAL DETERMINATION AND THAT

19   FINAL DETERMINATION IS NOTHING ABOUT YESTERDAY'S

20   TECHNOLOGY AND YESTERDAY'S DOLLARS.

21           BOTH OF US ARE GOING TO HAVE TO BASICALLY

22   SUCK IT UP AND GO FASTER.

23           AND THE FOUR PATENTS --

24           THE COURT:  BUT YOU INITIATED THE WAR, SO

25   IT'S PROBABLY MORE APPROPRIATE FOR YOU TO HAVE TO

1  SUFFER THE --

2        MR. LEE:  YOUR HONOR, THE QUESTION OF WHO

3  INITIATED THE WAR IS OPEN TO DISCUSSION AND IT'S

4  PROBABLY THE SUBJECT OF SOME DEBATE.

5        BUT IF YOUR HONOR CONSIDERS THIS, THE

6  '771 PATENT, THE '460 PATENT, THE '893 PATENT, AND

7  THE '871 PATENT, THE FIRST TIME THAT WE KNEW THEY

8  WERE IN THE CASE WAS 40 DAYS AGO, 50 DAYS AGO.

9        WE'RE GOING TO GET INFRINGEMENT

10  CONTENTIONS ON SEPTEMBER 7TH, SO I'M GOING TO BE IN

11  EXACTLY THE SAME SITUATION THAT MR. JOHNSON IS

12  GOING TO BE IN.

13        WE'LL GET OUR INVALIDITY CONTENTIONS IN

14  BY OCTOBER 7TH SO WE CAN HAVE THE MARKMAN HEARING.

15        WHY?  BECAUSE WE THINK COLLECTIVELY WE

16  NEED TO GET THESE ISSUES RESOLVED NEXT JULY.

17        THE COURT:  WELL, THAT STILL DOESN'T

18  ANSWER MY QUESTION.  HOW QUICKLY -- MR. JOHNSON IS

19  CORRECT, THE EXPEDITED DISCOVERY HAS LARGELY BEEN

20  ONE-SIDED.  IT'S BEEN GETTING THE SAMSUNG DISCOVERY

21  FOR THE APPLE P.I. MOTION.

22        MR. MCELHINNY:  NO.  IT'S EXACTLY THE

23  OPPOSITE, YOUR HONOR.  THEY'VE HAD DISCOVERY.

24  WE'VE HAD NONE.

25        MR. JOHNSON:  YOUR HONOR, WE DID NOT ASK

1    FOR THIS CASE TO BE EXPEDITED.

2             THE COURT:  I KNOW.

3             MR. LEE:  YEAH, THAT'S ACTUALLY -- THAT

4    ACTUALLY IS THE POINT.

5             MR. JOHNSON:  AND SO -- AND NOW FOR US --

6    IF THE GOAL IS ULTIMATELY TO TRY THIS CASE AND

7    FIGURE OUT WHAT ACTUALLY GETS TRIED AND STREAMLINE

8    IT, THEN WE HAVE TO BE IN A SITUATION, AND THEY --

9    AND THEY DID FILE THIS CASE FIRST.

10            I MEAN, SO WE HAVE TO BE IN A SITUATION

11   WHERE WE CAN TAKE THE INVENTOR DEPOSITIONS -- I'D

12   LIKE TO HEAR WHEN I'M GOING TO GET THE INVENTOR --

13            THE COURT:  I'M SORRY TO INTERRUPT YOU.

14            MR. JOHNSON:  GO AHEAD.

15            THE COURT:  LET'S AT LEAST GIVE US A

16   COMMITMENT ON THE INVENTORS.  I THINK APPLE HAS TO

17   BE SOMEWHAT ACCOMMODATING HERE.  AT LEAST YOUR

18   INVENTORS AND --

19            MR. JOHNSON, WHAT ELSE?

20            MR. JOHNSON:  INVENTORS, PROSECUTING

21   LAWYERS.

22            YOU KNOW, WE WERE TOLD THERE WERE NO

23   DESIGN -- THERE WERE NO INVENTOR'S NOTEBOOKS DURING

24   THE PRELIMINARY INJUNCTION DISCOVERY PROCEEDINGS.

25            WE TOOK A DEPOSITION.  WE FIGURED OUT

1    THAT THERE ARE NOTEBOOKS.

2          SO, YOU KNOW, I UNDERSTAND THEY'RE SAYING

3    THEY PRODUCED DOCUMENTS --

4          THE COURT:  LET ME GET A COMMITMENT FROM

5    APPLE ON THE INVENTORS AND PROSECUTORS.

6          MR. LEE:  CAN WE GET A MUTUAL COMMITMENT,

7    YOUR HONOR?  BECAUSE IF WE'RE IN THE SAME

8    SITUATION, LET'S HAVE A MUTUAL COMMITMENT THAT

9    WE'LL GIVE THEM OUR INVENTORS, THE PROSECUTING

10   ATTORNEYS.  LET'S GET IT BACK FROM THEM AS WELL.

11         THE COURT:  ALL RIGHT.  BUT I'M ACTUALLY

12   OKAY WITH THIS NOT BEING PERFECTLY SYMMETRICAL AND

13   HAVING APPLE GIVE AN EARLIER DATE FROM SAMSUNG.

14         SO GIVE ME A DATE.

15         MR. MCELHINNY:  I'M SORRY.  I'M SORRY.  I

16   GOT LOST.

17         YOU WERE TALKING ABOUT LESS THAN 30 DAYS

18   NOTICE.  WHAT SPECIFICALLY DO YOU NEED A DATE FOR?

19         THE COURT:  WELL, THERE ARE A COUPLE OF

20   ISSUES HERE.  ONE IS I WANT A COMMITMENT DATE BY

21   WHICH THE INVENTORS AND PROSECUTORS WILL BE

22   DEPOSED, WHEN THE APPLE FOLKS WILL BE.

23         AND THEN I'LL HAVE A DATE, A COMMITMENT

24   OF A COMPLETION DATE FROM SAMSUNG.

25         THE OTHER QUESTION WAS WHETHER APPLE

1    WOULD AGREE TO A LESSER PERIOD THAN 30 DAYS FOR

2    DISCOVERY RESPONSES.

3              AND I'M REALLY SORRY TO MY NEXT CASE, THE

4    QUALITY INVESTMENT VERSUS SERRANO ELECTRIC AND

5    PETERSON POWER, I'M VERY SORRY THAT YOU'RE HAVING

6    TO WAIT.  THANK YOU FOR YOUR PATIENCE.

7              MR. MCELHINNY:  WE'RE CHECKING THAT DATE.

8              CAN I ASK JUST A TECHNICAL --

9              THE COURT:  YES.

10             MR. MCELHINNY:  -- AS WE SAY IN THE

11   TRADE, HOUSEKEEPING QUESTION?

12             THE COURT:  YES.

13             MR. MCELHINNY:  AT THE BEGINNING OF THIS

14   CASE, YOU SAID THAT YOU WERE GOING TO USE

15   MAGISTRATE GREWAL FOR DISCOVERY MATTERS.

16             THE COURT:  UM-HUM.

17             MR. MCELHINNY:  AND THEN YOU HAVE KEPT

18   WITH YOURSELF THE DISCOVERY MATTERS, IF ANY, THAT

19   ARISE CONCERNING THE PRELIMINARY INJUNCTION.

20             THE COURT:  UM-HUM.

21             MR. MCELHINNY:  SO THAT WE'RE NOT

22   CONFUSED, DO YOU STILL ANTICIPATE A TRANSFER THERE?

23   AND IF SO, HOW WILL WE KNOW WHEN TO START DOING

24   THAT?  THAT'S THE QUESTION I HAVE.

25             THE COURT:  WELL, DO YOU HAVE ANY

1    DISCOVERY DISPUTES AS TO THE PRELIMINARY INJUNCTION

2    DISCOVERY?

3              MR. MCELHINNY:  THERE'S MEETS AND CONFERS

4    AND STUFF GOING ON.  I DON'T THINK THERE'S A -- I

5    DON'T THINK WE'VE GOT A MOTION.

6              MR. JOHNSON:  WE DO, YOUR HONOR.

7              MR. MCELHINNY:  WE DON'T HAVE ANY

8    DISCOVERY YET.

9              THE COURT:  OKAY.  THAT WILL GO TO

10   JUDGE GREWAL.

11             I'M GOING TO REQUIRE, AND I'M SURE HE

12   WOULD AGREE, THAT LEAD TRIAL COUNSEL HAVE TO MEET

13   IN PERSON TO MEET AND CONFER ON ANY DISCOVERY

14   DISPUTE BEFORE YOU FILE A MOTION.  OKAY?

15             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

16             I HAVE YOUR -- I'M SORRY.  I HAVE YOUR

17   DATE.

18             THE COURT:  OKAY.

19             MR. MCELHINNY:  WE CAN -- THE INVENTORS

20   AND THE PROSECUTING ATTORNEYS ON OR BEFORE

21   DECEMBER 1ST, YOUR HONOR.

22             THE COURT:  WELL, THAT'S TOO LATE.

23   YOU'RE ASKING THEM TO FILE ALL THEIR CLAIM

24   CONSTRUCTION BRIEFS --

25             MR. MCELHINNY:  I'M NOT SURE WHAT

1    INVENTORS OR PROSECUTING ATTORNEYS HAVE TO DO WITH

2    THE CLAIM CONSTRUCTION, YOUR HONOR.

3              THE COURT:  LET ME HEAR FROM SAMSUNG.

4              WHAT'S YOUR DATE?  AND IS THAT SOON

5    ENOUGH FOR YOU?

6              MR. JOHNSON:  NO.  THAT'S TOO LATE, YOUR

7    HONOR.  I MEAN, IT HAS EVERYTHING TO DO WITH CLAIM

8    CONSTRUCTION.

9              I MEAN, TO THE POINT THAT -- YOU KNOW,

10   AS -- WELL, I CAN'T TALK ABOUT WHAT MR. ORDING

11   TESTIFIED SINCE IT'S UNDER SEAL, THEIR INVENTOR.

12             BUT BASICALLY THE INVENTORS ARE GOING TO

13   TESTIFY ABOUT PRIOR ART THAT THEY'RE AWARE OF;

14   THEY'RE GOING TO TESTIFY ABOUT UNENFORCEABILITY

15   ISSUES AS WELL; THEY'RE GOING TO TESTIFY ABOUT THE

16   SCOPE OF THE CLAIMS WITH RESPECT TO THE PRIOR ART.

17             THAT'S THE REASON WE TOOK MR. ORDING'S

18   DEPOSITION IN THE CONTEXT OF THE PRELIMINARY

19   INJUNCTION HEARING, AND WE -- AS WE SPELLED OUT IN

20   OUR PAPERS, WE LEARNED A LOT OF IMPORTANT

21   INFORMATION THAT AFFECTS THE CLAIM CONSTRUCTION OF

22   THE TERMS THAT ARE INVOLVED IN THAT -- ON THE '381

23   PATENT; WE LEARNED FACTS ASSOCIATED WITH

24   INDEFINITENESS, WHICH ALSO SHOULD BE CONSIDERED --

25   AT LEAST LOOKED AT IN THE CONTEXT OF CLAIM

1   CONSTRUCTION.

2            SO I'M NOT LOOKING TO DELAY THINGS THAT

3   ARE TOO FAR.

4            BUT AT THIS POINT, THERE ARE 32

5   INVENTORS.  IF THE FIRST DATE I GET FROM THEM IS

6   DECEMBER AND I HAVE TO DO ALL THE CLAIM

7   CONSTRUCTION BEFORE THEN AND HAVE THE CLAIM

8   CONSTRUCTION HEARING, YOU KNOW, THE FIRST -- IN THE

9   MIDDLE PART OF JANUARY, THAT PUTS ME AT A SEVERE

10  PREJUDICE.

11           THE COURT:  WELL, THESE ARE COMPLETION

12  DATES.  THESE AREN'T BEGINNING DATES.

13           MR. MCELHINNY:  THAT'S CORRECT, YOUR

14  HONOR.

15           THE COURT:  I'M ASSUMING IT'S HAPPENING

16  BEFORE.  THERE'S NO WAY YOU CAN HAVE 32 PEOPLE

17  DEPOSED --

18           MR. MCELHINNY:  YOUR HONOR, I ALWAYS GET

19  IN TROUBLE WITH THESE THINGS, BUT TO BE REALISTIC

20  AND NOT TAKE YOUR TIME RIGHT NOW, THERE WILL COME A

21  TIME AT THE END OF PROCESS THAT YOUR HONOR HAS SET

22  WHERE SAMSUNG WILL FILE A MOTION TO CONTINUE THE

23  TRIAL DATE.  THEY WILL SAY THEY DIDN'T GET THE

24  DISCOVERY THEY NEEDED AND THEY DIDN'T GET

25  DEPOSITIONS AND THEY DIDN'T GET WHATEVER.

1        AND AT THAT TIME YOU'RE GOING TO BE

2   LOOKING AT WHETHER OR NOT WE DID WHAT THEY NEEDED

3   IN ORDER TO GET READY.  THAT'S JUST GOING TO

4   HAPPEN.

5        AND AS OPPOSED TO TRY TO HAMMER THIS OUT

6   RIGHT NOW, I THINK YOU -- WE UNDERSTAND WHAT YOUR

7   HONOR WANTS AND, YOU KNOW, I WOULD LIKE TO HAVE A

8   LITTLE BIT OF, YOU KNOW, TRUST HERE.

9        MR. JOHNSON:  UNDER THE CURRENT SCHEDULE,

10  YOUR HONOR, THE CLOSE OF CLAIM CONSTRUCTION

11  DISCOVERY IS NOVEMBER 28TH.

12        LET'S PUSH BACK THE DATES BY EVEN A

13  COUPLE OF, JUST A COUPLE OF MONTHS, WHICH

14  SHOULDN'T -- WHETHER THE TRIAL IS IN JULY OR

15  AUGUST OR SEPTEMBER OF NEXT YEAR, YOU KNOW, I --

16  THERE CAN'T BE ANY PREJUDICE WITH RESPECT TO TWO

17  MONTHS.

18        THEY DELAYED TWO AND A HALF MONTHS WHEN

19  THEY BROUGHT THE PRELIMINARY INJUNCTION MOTION.

20        AND AS I MENTIONED, YOUR HONOR, THE REAL

21  ISSUE THAT I SEE IS ALSO ON THE BACK END WITH

22  RESPECT TO DISPOSITIVE MOTIONS.

23        GIVING US A WEEK AFTER THE CLOSE OF

24  REBUTTAL -- OF EXPERT DISCOVERY TO FILE MOTIONS ON,

25  AT THAT POINT, WHICH COULD BE, YOU KNOW, 15 APPLE

1  PATENTS AND THERE WILL BE 12 --

2  THE COURT:  OKAY.  I'M SORRY.  I'VE GOT

3  TO CUT THIS OFF.

4  APPLE, YOU'RE GOING TO HAVE YOUR

5  INVENTORS AND PROSECUTING ATTORNEYS DEPOSED BY

6  NOVEMBER 1; AND SAMSUNG WILL BE DECEMBER 1.  OKAY?

7  AS FAR AS THE LAST DAY TO FILE

8  DISPOSITIVE MOTIONS -- ALL RIGHT.  I CAN -- I'LL

9  MOVE THAT TO MAY 17TH, 2012, AND THE HEARING ON

10  DISPOSITIVE MOTIONS WILL BE JUNE 21, 2012 AT 1:30.

11  OKAY?  THE PRETRIAL CONFERENCE AND THE

12  JURY TRIAL DATES REMAIN.

13  ANYTHING ELSE?

14  MR. LEE:  NO, YOUR HONOR.

15  THE COURT:  LET ME ASK ONE LAST QUICK

16  QUESTION.  IS APPLE WILLING TO AGREE TO A SHORTER

17  TIMEFRAME TO RESPOND TO DISCOVERY REQUESTS THAN 30

18  DAYS?

19  MR. MCELHINNY:  AGAIN, IF IT WAS MUTUAL,

20  WE WOULD DO IT, YOUR HONOR.

21  MR. LEE:  SURE.

22  MR. MCELHINNY:  JUST -- I MEAN, JUST LET

23  ME --

24  THE COURT:  YEAH.

25  MR. MCELHINNY:  THEY'VE NEVER ASKED FOR

1   AN EXPEDITED TRIAL AND YOUR HONOR HAS GIVEN THEM AN

2   EXPEDITED TRIAL AS WELL, AND THAT'S FINE, BUT NOW

3   WE'RE BOTH IN THE SAME BOAT HERE EXCEPT THAT

4   THEY'VE HAD DISCOVERY AND WE HAVEN'T HAD ANY.

5        THE COURT:  SO LET ME ASK WHETHER SAMSUNG

6   IS WILLING TO SHORTEN THE TIMEFRAME TO RESPOND TO

7   WRITTEN DISCOVERY REQUESTS.

8        MR. JOHNSON:  I THINK IT'S SOMETHING THAT

9   WE COULD MEET AND CONFER WITH THEM ABOUT AND SEE IF

10  THERE'S A TIME -- YOU KNOW, I'M OPEN TO SOME PERIOD

11  OF POTENTIALLY EXPEDITING, BUT AT THIS POINT, NOT

12  ANYTHING BEYOND -- I MEAN, LIKE I SAID, THEY MOVED

13  TO EXPEDITE, SO I THINK THEY SHOULD RESPOND TO THE

14  DISCOVERY MORE QUICKLY.

15       BUT I'M WILLING TO MEET AND CONFER WITH

16  THEM AND SEE IF WE CAN COME UP WITH SOMETHING.

17       MR. MCELHINNY:  I AGREE WITH MR. JOHNSON,

18  ACTUALLY.  NOW THAT YOU'VE GIVEN US DATES, WE'LL

19  WORK ALL THIS STUFF OUT.

20       THE COURT:  OKAY.  YOU KNOW, IF YOU DON'T

21  WORK IT OUT, THEN THERE ARE GOING TO BE PROBABLY

22  CONSEQUENCES THAT BOTH SIDES DON'T WANT, SO I HOPE

23  YOU WORK IT OUT.

24       MR. MCELHINNY:  THANK YOU, YOUR HONOR.

25       THE COURT:  OKAY.  LET'S HAVE A FOLLOW-UP

1   CMC ON OCTOBER 13TH AFTER THE PRELIMINARY

2   INJUNCTION HEARING.

3           IS THERE ANYTHING ELSE THAT WE HAVE TO DO

4   TODAY?

5           MR. MCELHINNY:  NO.  THANK YOU, YOUR

6   HONOR.

7           THE COURT:  NO?  OKAY.  ALL RIGHT.

8           THANK YOU.  I'LL SEE YOU ALL IN OCTOBER.

9           MR. JOHNSON:  THANK YOU, YOUR HONOR.

10          (WHEREUPON, THE PROCEEDINGS IN THIS

11  MATTER WERE CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23                   /S/

                     _____

24                   LEE-ANNE SHORTRIDGE, CSR, CRR

                     CERTIFICATE NUMBER 9595

25