# EXHIBIT J
# FILED UNDER SEAL

Highly Confidential - Attorneys' Eyes Only

Page 1

1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5   APPLE INC., a California
    corporation,

6

                Plaintiff,

7

    vs.                        CASE NO.  12-cv-00630-LHK

8

    SAMSUNG ELECTRONICS CO.,

9   LTD., a Korean business
    entity; SAMSUNG ELECTRONICS

10  AMERICA,INC., a New York
    corporation; SAMSUNG

11  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited

12  liability company,

13              Defendants.
    _____/

14

15

16       H I G H L Y   C O N F I D E N T I A L

17       A T T O R N E Y S'   E Y E S   O N L Y

18

19       VIDEOTAPED DEPOSITION OF ARTHUR RANGEL

20          REDWOOD SHORES, CALIFORNIA

21           THURSDAY, APRIL 5, 2012

22

23  BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

24  CSR LICENSE NO. 9830

25  JOB NO. 47973

Highly Confidential - Attorneys' Eyes Only

| Page 2 | Page 3 |
|---|---|

<table>
<tr><td>

Page 2

1     THURSDAY, APRIL 5, 2012<br>
2         9:30 A.M.<br>
3<br>
4<br>
5<br>
6   VIDEOTAPED DEPOSITION OF ARTHUR RANGEL,<br>
7   taken at QUINN EMANUEL URQUHART & SULLIVAN,<br>
8   LLP, 555 Twin Dolphin Drive, Redwood Shores,<br>
9   California, pursuant to Notice, before me,<br>
10  ANDREA M. IGNACIO HOWARD, CLR, CCRR, RPR,<br>
11  CSR License No. 9830.<br>
12<br>
13<br>
14<br>
15<br>
16<br>
17<br>
18<br>
19<br>
20<br>
21<br>
22<br>
23<br>
24<br>
25

</td><td>

Page 3

1   A P P E A R A N C E S:<br>
2<br>
3<br>
4   FOR APPLE INC.:<br>
5   GIBSON, DUNN & CRUTCHER LLP<br>
6   By:  ROD J. STONE, Esq.<br>
7   333 South Grand Avenue<br>
8   Los Angeles, California 90071<br>
9   Phone:  (213) 229-7256<br>
10  rstone@gibsondunn.com<br>
11<br>
12  FOR SAMSUNG ELECTRONICS CO. LTD:<br>
13  QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>
14  By:  SCOTT L. WATSON, Esq.<br>
15    VALERIE LOZANO, Esq.<br>
16    DOUGLAS POST, Esq.<br>
17  865 S. Figueroa Street, 10th Floor<br>
18  Los Angeles, California 90017<br>
19  Phone:  (213) 443-3000<br>
20  swatson@quinnemanuel.com<br>
21<br>
22  ALSO PRESENT:   Benjamin Gerald, Videographer<br>
23        Tom Vigdal, Apple Inc.<br>
24<br>
25      ---oOo---

</td></tr>
</table>

| Page 4 | Page 5 |
|---|---|

<table>
<tr><td>

Page 4

1    REDWOOD SHORES, CALIFORNIA<br>
2     THURSDAY, APRIL 6, 2012<br>
3        9:30 A.M.<br>
4<br>
5<br>
6<br>
7   THE VIDEOGRAPHER:  Good morning.<br>
8    This marks the beginning of the Disc labeled<br>
9  No. 1 of the videotaped deposition of Arthur Rangel.<br>
10 In the matter Apple Incorporated versus Samsung<br>
11 Electronics Company LTD, et al.<br>
12    Held in the United States District Court for<br>
13 the Northern District of California, San Jose<br>
14 Division.  Case number is CV-12-00630-LHK.<br>
15    This deposition is being held at 555 Twin<br>
16 Dolphin Drive in the city of Redwood Shores,<br>
17 California.  Taken on April 5th, 2012, at<br>
18 approximately 9:30 a m.<br>
19    My name is Benjamin Gerald from<br>
20 TSG Reporting, Incorporated, and I am the legal video<br>
21 specialist.<br>
22    The court reporter is Andrea Ignacio, in<br>
23 association with TSG Reporting.<br>
24    At this time, will counsel please identify<br>
25 themselves for the record.

</td><td>

Page 5

1    MR. WATSON:  Scott Watson on behalf of<br>
2 Samsung.<br>
3    MS. LOZANO:  Valerie Lozano on behalf of<br>
4 Samsung.<br>
5    MR. POST:  Douglas Post on behalf of Samsung.<br>
6    MR. STONE:  Rod Stone from Gibson Dunn on<br>
7 behalf of Apple.<br>
8    MR. VIGDAL:  Tom Vigdal, in-house counsel,<br>
9 Apple.<br>
10    THE VIDEOGRAPHER:  Thank you.<br>
11    Would the reporter please swear in the<br>
12 witness.<br>
13<br>
14     ARTHUR RANGEL,<br>
15    having been sworn as a witness<br>
16  by the Certified Shorthand Reporter,<br>
17    testified as follows:<br>
18<br>
19    THE VIDEOGRAPHER:  Thank you.<br>
20 Please proceed.<br>
21<br>
22    EXAMINATION BY MR. WATSON<br>
23 MR. WATSON:  Good morning.<br>
24 THE WITNESS:  Good morning.<br>
25 MR. WATSON:  Q.  You signed a declaration in

</td></tr>
</table>

Highly Confidential - Attorneys' Eyes Only



Page 26

Page 27

5      Q   Do you know what date the iPhone 4S was
6   released?
7      A   The date?  No.
8      Q   Do you know the month?
9      A   I think it was October or November, around
10   there.  It depends on the country.  I think U.S. was
11   October.  I'm really bad at remembering exactly when
12   we launch things.
13      Q   Okay.  If I said October 14th, 2011, would
14   that sound about right to you?
15      A   That sounds reasonable.

Page 28

Page 29

1   professional perspective, was the launch of the Galaxy
2   Nexus a significant event to you?
3      A   I tend to focus more on the research that we
4   are doing and working on.  I don't personally track
5   competitively what is being launched at whatever
6   point.
7      Q   So if -- if I told you the Galaxy Nexus was
8   launched December 15th, 2011, would that sound about
9   right?
10      A   I -- I really don't know, honestly.
11      Q   Do you have any basis to disagree with that
12   launch date?
13      A   No, I don't.

14      Q   Now, do you know when the Samsung Galaxy
15   Nexus was launched?
16      A   No, not -- I know it was sometime late last
17   year or early this year.  I don't recall the date.  I
18   don't remember even knowing the date, frankly.
19      Q   Was that a significant event, in your mind,
20   the launch of the Galaxy Nexus?
21      MR. STONE:  Objection; vague.
22      THE WITNESS:  I'm sorry.  Repeat your
23   question.
24      MR. WATSON:  Yeah.
25      Q   Was that a significant event from a -- from a

Highly Confidential - Attorneys' Eyes Only



Page 30

15    A  I believe I've answered that question.
16    Q  I don't think you have.
17    A  I believe I have.
18    Q  Well, humor me.
19       MR. STONE:  Well, I mean, you're arguing with
20  the witness now.
21       MR. WATSON:  I'm not arguing with the
22  witness.  Thank you.
23    Q  I mean, we can do it this way.  I'm sorry.
24  This will delay our break just a second.

Page 31

Page 32

16       MR. WATSON:  Q.  Is that what you said?
17    A  That's what I said.
18       MR. WATSON:  Okay.  Let's take a break.
19       THE VIDEOGRAPHER:  The time is 10:06 a.m.,
20  and we are off the record.
21       (Recess taken.)
22       THE VIDEOGRAPHER:  The time is 10:20 a.m.,
23  and we are back on the record.

Page 33

Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Page 62

1    You know, there might be some differences
2  like that, but I don't say I've put a lot of effort
3  into understanding exactly what -- what change is
4  there.

Highly Confidential - Attorneys' Eyes Only

Page 66

Page 67

Page 68

1   right?
2        And so we'd seen -- we still continue to see
3   when we ask the question, you know, consideration of
4   BlackBerry is high because there are a lot of previous
5   owners of BlackBerry.  But, you know, really, they --
6   it's -- it's losing favor; right?  So -- so I think
7   there are movements.
8        Do I recall, you know, loyalty in all the
9   other phones, you know, or repurchase?  No, I don't
10  recall it specifically.
11   Q  I mean, I know, in trying to learn about this
12  space and whatever, that I've seen a fair amount of
13  articles that kind of indicate that Apple has the
14  highest brand loyalty among the -- the phone
15  manufacturers.  Is that consistent with your general
16  sense?

Page 69



Highly Confidential - Attorneys' Eyes Only



Page 70

13      Okay.  We'll come around to that.  I...
14      MR. PATTERSON:  Is now a good time for a
15  break?
16      MR. WATSON:  Yeah, now is a great time for a
17  break.
18      THE VIDEOGRAPHER:  This marks the end of Disc
19  No. 1 in the deposition of Arthur Rangel.
20      The time is 11:10 a m., and we are off the
21  record.
22      (Recess taken.)
23      THE VIDEOGRAPHER:  This marks the beginning
24  of Disc No. 2 in the deposition of Arthur Rangel.
25      The time is 11:25 a m., and we are back on

Page 71

1   the record.
2       MR. WATSON:  You know, when we went -- when
3   we went to break -- a little bit before we went to
4   break, you mentioned RIM and how they're kind of going
5   out of the marketplace and their customers are
6   dispersing.

Page 72

Page 73

Highly Confidential - Attorneys' Eyes Only



Page 74

10    Q   And as you understand the -- kind of the
11  competitive marketplace, do the Android manufacturers
12  tend to have more phones in the market at any given
13  time than Apple would?
14    A   Yes.  There are many Android models and
15  brands.
16    Q   I mean, Apple has got, what, basically two
17  phones out at any given time?
18    A   Three right now.
19    Q   Three, so the -- the 4S, the 4 and 3GS?
20    A   Yes.
21    Q   Okay.  And is that the most that Apple has
22  had out during the -- the time that you recall?
23    A   Yes.
24    Q   What -- I'm not going to ask for exact
25  numbers, obviously, but give me a sense of, like, how

Page 75

1   many phones does -- smartphones does HTC have out at
2   any given time?
3     A   Again, I don't know specifically.  I mean, I
4   know there are 50-plus Android introductions a year,
5   something like that.
6     Q   The major Android manufacturers, that's HTC,
7   Motorola, Samsung.  Is there another?
8     A   I'd say it would be Samsung, HTC, Motorola.
9   What are the other ones?  Drawing a blank right now.
10  LG.  You know, there are other -- Nokia is on a
11  different system, but they're competitors.  Nokia,
12  Microsoft with their Windows 8 coming out, stuff like
13  that.

Page 76

Page 77

23    THE WITNESS:  Okay.  Great.  Thank you.  I
24  appreciate it.
25    MR. WATSON:  Yeah.

Highly Confidential - Attorneys' Eyes Only



Page 78

1        THE WITNESS:  I tend not to memorize numbers.
2    Too many of them.
3        MR. WATSON:  Yes, there certainly are.
4        All right.  So this is going to be Rangel
5    Deposition Exhibit 3.
6        (Document marked A. Rangel Exhibit 3
7         for identification.)

Page 79

Page 80

Page 81

Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Page 86

Page 87

Page 88

Page 89

15    A  I'm sorry.  We're almost at noon, and I'm
16  wondering what time we'll break for lunch.
17    Q  I was going to finish with this document,
18  which will probably take me another --
19    A  Okay.
20    Q  -- three or four minutes.
21    A  Okay.
22    Q  Do you want -- if you want to break now --
23    A  No.
24    Q  -- we can break now.
25    A  No, that's fine.  We can finish this one.

Highly Confidential - Attorneys' Eyes Only



Page 90

```
1   Q   Okay.
2   A   We're still on the same document?
3   Q   Still on the same document.
4   A   Okay.
```

Page 91

Page 92

Page 93

```
5        MR. WATSON:  Okay.  Let's go to lunch.
6        THE WITNESS:  Okay.
7        THE VIDEOGRAPHER:  The time is 11:55 a.m.,
8   and we are off the record.
9        (Lunch break taken at 11:55 a.m.)
10            ---oOo---
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Attorneys' Eyes Only



Page 98

Page 99

Page 100

Page 101

15    MR. STONE:  Bless you.
16    THE VIDEOGRAPHER:  Thank you.
17

21    MR. WATSON:  Bless you.
22    THE VIDEOGRAPHER:  Thank you:
23

Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

Page 130

3    Q  Have you used conjoint at other -- in
4  other -- other jobs that you've had in your life?
5    A  Yeah, yeah.
6    Q  And is it kind of a fairly common practice in
7  trying to determine what features are desirable in a
8  product?
9    A  Less so from -- it's really all about product
10  tradeoff and, you know, acceptance of a product.  It's
11  what it tries to get to.
12    Q  And can you -- can you explain that idea a
13  little bit.
14    A  It's tradeoffs about features in a product,
15  you know, like, let's say -- typically the way it's
16  done is you have -- and again, I'm not a statistician,
17  but what a consumer will see will be a screen with
18  maybe five different phones, right, and they'll say,
19  Which of these would you purchase or none of these;
20  right?  And there's a list of features and maybe a
21  price point, maybe a brand.  And so you'd say, Well,
22  of this set, I'd probably get this one.  And then
23  there's another one, which is of this set, what would
24  you buy?
25       And it goes on sometimes ad nauseam for a lot

Page 131

1  of choices.  And so there's this -- and don't ask me
2  to explain it.  I can't.
3       The statisticians will then take all that
4  data and go, your optimal, you know, products, that
5  would be this or whatever.
6    Q  So your optimal product would have this list
7  of features based on --
8    A  Yeah.
9    Q  -- on this test?

Page 132

10    Q  Okay.  You've not -- and you guys have never
11  had a conversation -- and I'm being very colloquial.
12  I guess I'm getting sloppy because it's late in the
13  afternoon.

Page 133

6       MR. STONE:  We've been going about an hour.
7       MR. WATSON:  Sure.
8       MR. STONE:  Is now a good time?
9       MR. WATSON:  If it's a good time for
10  Mr. Rangel, it's a good time for me.
11       THE WITNESS:  It's always a good time for me.
12       THE VIDEOGRAPHER:  This marks the end of Disc
13  No. 2 in the deposition of Arthur Rangel.
14       The time is 1:45 p m., and we're off the
15  record.
16       (Recess taken.)
17       THE VIDEOGRAPHER:  This marks the beginning
18  of Disc No. 3 in the deposition of Arthur Rangel.
19       The time is 2:00 p m., and we are back on the
20  record.
21       MR. WATSON:  Q.  So we were looking at --
22  before we took the break, we were looking at
23  Exhibit 5.  I just want to spend a little bit more
24  time with it.
25    A  Okay.



Highly Confidential - Attorneys' Eyes Only



Page 134

Page 135

Page 136

Page 137

2    Q  I think I may have covered this, but let me
3  make sure there's not some category here that I'm not
4  thinking of.
5       You told me who your -- who your data goes
6  to, and you told me you didn't know if it was used for
7  product marketing.  I'm sorry.  I misspoke.  For
8  product development.

Highly Confidential - Attorneys' Eyes Only



Page 138

Page 139

8    Q  Do you have any understanding of what this
lawsuit that we're here today involves?
9    A  Well, as far as discuss with the attorneys,
yes.
11   Q  Okay.  Don't -- yeah, don't tell me what you
discussed with the attorneys.
13      You understand that Apple is seeking a
preliminary injunction?
15   A  I believe so, yeah.
16   Q  Okay.  Do you know what that means generally?
17   A  Generally, I think it's -- interpretation is
to stop the sale of certain models in the U.S.

24   Q  Do you have any data that you already have in
25   your possession that you believe permits you to

Page 140

1    estimate or project what the effect of that would be?
2       MR. STONE:  Object to the form; lacks
3    foundation.
4       THE WITNESS:  It's not my job to project what
5    that might be or not.
6       MR. WATSON:  Q.  If the Samsung Galaxy Nexus
7    is removed from the marketplace as a result of this
8    motion, do you know what the effect will be on Apple
9    sales?
10      MR. STONE:  Objection; lacks foundation.
11      THE WITNESS:  Again, no, I've not looked at
12   that specific issue.
13      MR. WATSON:  Q.  Do you know what the effect
14   would be on other Android product sales?
15      MR. STONE:  Same objections.
16      THE WITNESS:  Same response.  No, I've not
17   looked at -- into that.

Page 141

16   Q  Now, you understand that this case is a
17   patent case?
18   A  Yes.
19   Q  And that there are four patents that are at
20   issue on this injunction?
21   A  Yes.
22   Q  You're aware of that?
23      Okay.  And one of them is the '647 patent
24   which is linking structures to actions.
25      Do you -- do you know what that means?

Highly Confidential - Attorneys' Eyes Only

Page 142

```
 1    A  I think so.
 2    Q  I think Mr. Sinclair yesterday used the
 3 phrase "data detectors"; are you familiar with that
 4 phrase?
 5    A  No.
 6    Q  Okay.  Linking structures to actions
 7 seemed -- seemed a little prettier to me, but data
 8 detectors seemed to have some resonance to him, that's
 9 why I asked.
10        What is your understanding of the kind of
11 linking structures to actions?
12    A  So again, this is mostly from our discussion
13 with attorneys.
14    Q  Okay.  Hang on.
15        So let's -- I don't -- I don't want you to
16 disclose what you discussed with your attorney.
17    A  Okay.
18        MR. STONE:  Could you ask him independent of
19 his conversations with his attorney, does he have any
20 understanding --
21        MR. WATSON:  Linking structures with actions;
22 that's a beautiful question.
23        THE WITNESS:  Okay.  So I think what that
24 means, personal interpretation of what I think that
25 means, is that I kind of think of it as the
```

Page 143

```
 1 integration within applications with an iPhone.
 2        So that, you know, if you say, it's Siri,
 3 "Search for restaurants," right, I think of it as the
 4 kind of calamari ad, if you will.  The old ad where
 5 you say, "Find restaurants," or find "Uncle Yu's
 6 restaurant in San Ramon."
 7        It might bring up a map.  It might bring up a
 8 phone number if I have it.  If it brings up a map and
 9 there's a phone number, it means I can click on it,
10 and it will do something else.  It will start the --
11 the calling feature.  That's my interpretation of it.
12 I'm not a product marketing person, so --
13        MR. WATSON:  Fair enough, and -- and luckily
14 for you you're not a patent lawyer.  So let's let
15 me -- let me break that down into component pieces.
16    Q  So you're familiar with this -- with the kind
17 of feature of the iPhone that if somebody sends you an
18 e-mail and it has a calendar date in it that you
19 can --
20    A  Right, exactly.
21    Q  -- click on that calendar date and it goes
22 into your calendar software; right?
23    A  Yes.
24    Q  And if you have a phone number, you can press
25 the phone number and it will call the phone number?
```

Page 144

```
 1    A  Correct.
 2    Q  And it essentially recognizes certain formats
 3 of data and then uses them in a different application?
 4    A  Correct.
 5    Q  Okay.  So that -- that's what we'll call kind
 6 of linking structures to actions.
 7    A  Okay.
 8    Q  Setting aside from Siri, because that's a
 9 different issue in the case --
10    A  Okay.
11    Q  -- but just focus on just this kind of
12 ability to -- to link from a particular piece of data
13 to a -- to another application; okay?
14    A  Okay.
```



Page 145



```
22    Q  Okay.  Now, another patent that's at issue
23 here is the -- is the word "recommendation patent"?
24    A  So the auto correct?
25    Q  So, yeah, when you're typing, it fixes as you
```

Highly Confidential - Attorneys' Eyes Only



Page 146

1  go, because you might mistype or whatever; right?
2      A   Uh-huh.

Page 147

8      Q   What about with regard to -- one of the other
9   patents at issue on the preliminary injunction is the
10  slide to unlock patent.  You're familiar with -- with
11  slide to unlock?
12     A   Yes.

25     Q   Now, there's kind of this interesting -- I

Page 148

1   mean, let's start the question again.

Page 149

Highly Confidential - Attorneys' Eyes Only

Page 150

3   Q   Okay.
4   A   No pun intended.
5       THE VIDEOGRAPHER:  I'm sorry to interrupt,
6   Counsel.  Can I ask you to move your mic just over a
7   little.  It's rubbing on the side of your -- thank
8   you.
9       MR. WATSON:  I'll shorten this into a single
10  question.
11      THE WITNESS:  Okay.

Page 151

11      THE WITNESS:  Okay.  Yeah.  Excuse me.  Sorry
    about that.

17  A   Let me -- sorry.  Let me get there.
18  Q   Yeah, yeah, yeah.  Of course.

Page 152

Page 153



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

Page 186



19    Q  I would think in market research, you don't
20  want to bet your career too much on any particular
21  finding.
22    A  Some more so than others.
23      MR. WATSON:  Well, let me confer with my
24  colleagues, but I'm not sure I have anything else.  So
25  why don't you give us two minutes.

Page 187

1      THE WITNESS:  Sure.
2      MR. STONE:  Go off the record.
3      MR. WATSON:  Yeah, we'll go off the record.
4      THE VIDEOGRAPHER:  The time is 3:33 p.m., and
5  we are off the record.
6      (Recess taken.)
7
8
9
10
11
12
13
14
15      THE VIDEOGRAPHER:  The time is 3:38 p.m., and
16  we're back on the record.
17      MR. WATSON:  Thank you very much, Mr. Rangel.
18      So we're going to use the same stipulation as
19  yesterday, and then.
20      MR. STONE:  And I would like to designate the
21  transcript as "Highly Confidential" for purposes of
22  the protective order.
23      THE VIDEOGRAPHER:  This marks the end of Disc
24  No. 3 of 3 and concludes today's deposition of Arthur
25  Rangel.

Page 188

1      The time is 3:39 p.m., and we are off the
2  record.
3      (WHEREUPON, deposition end at 3:39 p.m.)
4          ---oOo---
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 189

1          J U R A T
2
3
4  I, ARTHUR RANGEL, do hereby certify under
5  Penalty of perjury that I have read the
6  foregoing transcript of my deposition taken
7  on April 5, 2012; that I have made such
8  corrections as appear noted herein in ink,
9  initialed by me; that my testimony as
10  contained herein, as corrected, is true and
11  correct.
12
13
14  DATED this _____ day of _____, 2012,
15  at _____, California.
16
17
18
19  _____
20      SIGNATURE OF WITNESS
21
22
23
24
25

Highly Confidential - Attorneys' Eyes Only

Page 190

1          CERTIFICATE OF REPORTER

2

3

4          I, ANDREA M. IGNACIO HOWARD, hereby certify

5     that the witness in the foregoing deposition was by me

6     duly sworn to tell the truth, the whole truth, and

7     nothing but the truth in the within-entitled cause;

8

9          That said deposition was taken in shorthand

10    by me, a Certified Shorthand Reporter of the State of

11    California, and was thereafter transcribed into

12    typewriting, and that the foregoing transcript

13    constitutes a full, true and correct report of said

14    deposition and of the proceedings which took place;

15

16         That I am a disinterested person to the said

17    action.

18

19         IN WITNESS WHEREOF, I have hereunto set my

20    hand this 5th day of April, 2012.

21

22    _____

23    ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830

24

25