1          THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5    APPLE, INC.,              )  CV-12-00630-LHK-PSG
                               )
6           PLAINTIFF,         )  MAY 1, 2012
                               )
7              V.              )
                               )
8    SAMSUNG ELECTRONICS       )  PAGES 1 - 85
     COMPANY LTD., ET AL.,     )
9                              )
            DEFENDANTS.        )
10   _____  )

11

12        THE PROCEEDINGS WERE HELD BEFORE

13      THE HONORABLE UNITED STATES DISTRICT

14        MAGISTRATE JUDGE PAUL S. GREWAL

15   A P P E A R A N C E S:

16

17   FOR THE PLAINTIFF:  GIBSON, DUNN & CRUTCHER
                         BY:  H. MARK LYON
18                            JOSH A. KREVITT
                         1881 PAGE MILL ROAD
19                       PALO ALTO, CALIFORNIA 94304

20

         (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21

22

     OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
23                            CERTIFICATE NUMBER 8074

24

25

                                                        1

1    A P P E A R A N C E S: (CONT'D)

2

3    FOR THE DEFENDANTS: QUINN, EMANUEL, URQUHART &
                        SULLIVAN
4                       BY:  ERIC J. EMANUEL
                             MICHAEL L. FAZIO
5                            PARTICK M. SHIELDS
                             MATTHEW S. WARREN
6                       865 S. FIGUEROA STREET
                        10TH FLOOR
7                       LOS ANGELES, CALIFORNIA 90017

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                        2

```
 1    SAN JOSE, CALIFORNIA                  MAY 1, 2012

 2                    P R O C E E D I N G S

 3

 4              (WHEREUPON, COURT CONVENED AND THE

 5    FOLLOWING PROCEEDINGS WERE HELD:)

 6              THE CLERK:  CALLING APPLE, INC., V.

 7    SAMSUNG ELECTRONICS COMPANY, LTD., ET AL., CASE

 8    NUMBER CV-12-630.

 9              MATTER ON FOR PLAINTIFF'S MOTIONS TO

10    COMPEL.

11              COUNSEL, PLEASE STATE YOUR APPEARANCES.

12              MR. LYON:  GOOD MORNING, YOUR HONOR.

13    MARK LYON FOR APPLE AND WITH ME IS MY PARTNER JOSH

14    KREVITT.

15              MR. KREVITT:  GOOD MORNING, YOUR HONOR.

16              THE COURT:  GOOD MORNING, YOUR HONOR.

17              MR. EMANUEL:  GOOD MORNING, YOUR HONOR.

18    ERIC MANUAL, MICHAEL FAZIO, AND PATRICK SHIELDS FOR

19    SAMSUNG.

20              MR. SHIELDS:  GOOD MORNING, YOUR HONOR.

21              MR. FAZIO:  GOOD MORNING, YOUR HONOR.

22              MR. WARREN:  AND MATT WARREN FOR NONPARTY

23    COMPLAINANT.  GOOD MORNING, YOUR HONOR.

24              THE COURT:  GOOD MORNING TO YOU AS WELL,

25    COUNSEL.
```

The timestamps in the left margin are:
11:25:59 (line 5), 11:25:59 (line 6), 11:25:59 (line 7), 11:26:01 (line 8), 11:26:03 (line 9), 11:26:05 (line 10), 11:26:13 (line 11), 11:26:15 (line 12), 11:26:17 (line 13), 11:26:17 (line 14), 11:26:20 (line 15), 11:26:20 (line 16), 11:26:24 (line 17), 11:26:25 (line 18), 11:26:30 (line 19), 11:26:30 (line 20), 11:26:30 (line 21), 11:26:32 (line 22), 11:26:35 (line 23), 11:26:36 (line 24), 11:26:38 (line 25)

3

11:26:44  1          ALL RIGHT.  I HAVE THREE MOTIONS ALL

11:26:46  2     FILED BY APPLE ALL SEEKING DISCOVERY FROM EITHER

11:26:48  3     SAMSUNG OR GOOGLE OR BOTH.

11:26:50  4          MR. LYON, THEY'RE YOUR MOTIONS, AND SO

11:26:53  5     I'LL START WITH YOU AND I'LL LET YOU PRESENT YOUR

11:26:54  6     ARGUMENTS HOWEVER YOU SEE FIT.

11:26:55  7          MR. LYON:  THANK YOU, YOUR HONOR.  WHY

11:26:58  8     DON'T WE START WITH THE SAMSUNG MOTIONS BECAUSE I

11:27:01  9     THINK THOSE HAVE MORE OF A TRADITIONAL JUST A

11:27:02  10    QUESTION OF WHAT IS THE RELEVANCE TO THE SCOPE OF

11:27:02  11    RELEVANCE IN DISCOVERY.

11:27:03  12         THE GOOGLE MOTION IS A LITTLE MORE

11:27:04  13    DIFFERENT.  IT'S A LITTLE MORE RUNNING OUT THE

11:27:07  14    CLOCK ISSUE.  AND SO I THINK WE SHOULD MORE THAN

11:27:08  15    LIKELY DEAL WITH THAT AT THE END.

11:27:09  16         BUT I THINK A LOT OF THE ISSUES THAT

11:27:11  17    WE'LL TALK ABOUT WITH RESPECT TO THE SAMSUNG

11:27:14  18    MOTIONS CARRY OVER TO THE GOOGLE ISSUE.

11:27:15  19         EXCUSE ME.  SO WHAT WE HAVE HERE REALLY

11:27:18  20    AT THE END, THERE'S JUST A FEW ARGUMENTS ABOUT SOME

11:27:21  21    OBJECTIONS THAT WE CAN GET TO HERE BUT AT THE

11:27:23  22    BEGINNING PART IT'S REALLY JUST WHAT IS THE SCOPE

11:27:25  23    OF DISCOVERY FOR THIS P.I. MOTION.

11:27:27  24         SAMSUNG IS TAKING THE POSITION THAT YOU

11:27:29  25    REALLY ONLY NEED TO FOCUS ON THE SUBSTANTIAL

4

11:27:31 1   LIKELIHOOD OF SUCCESS.  IF DOCUMENTS ARE NOT

11:27:34 2   RELATED TO DIRECT INFRINGEMENT PROOFS, THEY'RE NOT

11:27:39 3   WILLING TO GO OUT AND LOOK FOR THEM AND GATHER

11:27:40 4   THOSE AND PRODUCE THEM.

11:27:41 5        ON THE OTHER HAND, THERE'S MANY MORE

11:27:42 6   ELEMENTS TO THE P.I. MOTION THAT WE REALLY HAVE TO

11:27:43 7   DEAL WITH.  THERE'S THE IRREPARABLE HARM ELEMENT

11:27:46 8   AND THERE IS THE BALANCE OF THE HARDSHIPS AND THE

11:27:48 9   PUBLIC INTEREST.

11:27:48 10        AND A LOT OF THE DOCUMENTS THAT WE'RE

11:27:50 11   TALKING ABOUT HERE HAVE TO DO WITH EITHER COPYING

11:27:52 12   OR THE IMPORTANCE OF THESE FEATURES TO THE

11:27:54 13   CUSTOMERS THAT ARE PURCHASING THEM, EFFORTS AND

11:27:57 14   ANALYSES THAT SAMSUNG OR OTHERS MAY HAVE MADE IN

11:28:00 15   TRYING TO FIGURE OUT HOW TO DESIGN THESE FEATURES

11:28:03 16   AND WHETHER THEY SHOULD COPY APPLE OR ANYTHING LIKE

11:28:05 17   THAT.

11:28:05 18        ALL OF THOSE ARE RELATED DIRECTLY TO THE

11:28:09 19   IRREPARABLE HARM PRONG WHERE WE HAVE, UNDER JUDGE

11:28:11 20   KOH'S ORDER FROM THE PRIOR PRELIMINARY INJUNCTION,

11:28:14 21   WHICH WE HAVE THIS BURDEN OF SHOWING THE NEXUS

11:28:16 22   BETWEEN THE FEATURES THAT WE ARE CLAIMING ARE BEING

11:28:18 23   INFRINGED AND THE SALES AND THE DEMANDS FROM THE

11:28:21 24   CUSTOMERS.

11:28:24 25        SO WE NEED A LOT OF THAT INFORMATION,

5

11:28:26 1    AND, FRANKLY, WE FOUND SOME ALREADY FROM EXISTING

11:28:29 2    SAMSUNG DOCUMENTS AS PART OF OUR DISCOVERY ALREADY

11:28:32 3    WHERE THERE IS SOME EVIDENCE OF THIS KIND OF THING.

11:28:34 4         BUT WE HAVE BEEN TOLD THAT THERE'S A

11:28:35 5    NUMBER OF CATEGORIES OF OUR DOCUMENT REQUESTS AND

11:28:38 6    INTERROGATORIES WHICH SAMSUNG IS JUST NOT WILLING

11:28:40 7    TO PRODUCE INFORMATION AT THIS POINT.

11:28:42 8         SO THAT'S WHY WE'RE HERE I THINK

11:28:44 9    GENERALLY.

11:28:45 10        IF YOU LOOK AT THE MAIN CRUX OF IT IS

11:28:49 11   COMMUNICATION WITH GOOGLE, SINCE GOOGLE IS

11:28:51 12   OBVIOUSLY THE PARTY HERE AS WELL, AND OTHER THIRD

11:28:54 13   PARTIES THAT WOULD HAVE TO DO WITH THESE FEATURES.

11:28:56 14        NOW, PART OF THIS IS THAT WE'RE LOOKING

11:28:58 15   FOR DOCUMENTS FROM OTHER PHONES BEYOND JUST THE

11:29:02 16   GALAXY NEXUS, WHICH IS THE PRIMARY SUBJECT OF THE

11:29:04 17   PRELIMINARY INJUNCTION.

11:29:04 18        THE COURT:  WELL, IT'S THE ONLY PRODUCT

11:29:06 19   THAT IS ACCUSED OF INFRINGING THE PATENTS AT ISSUE,

11:29:09 20   RIGHT?

11:29:09 21        MR. LYON:  CORRECT.  FOR THE PRELIMINARY

11:29:10 22   INJUNCTION MOTION, THAT'S CORRECT.  YES.

11:29:11 23        THE COURT:  SO WHY ARE THESE OTHER

11:29:13 24   PRODUCTS RELEVANT?

11:29:13 25        MR. LYON:  WELL, THE REASON IS BECAUSE

6

11:29:14  1    SOME OF THESE FEATURES HAVE BEEN DEVELOPED AS PART

11:29:16  2    OF OTHER PRODUCTS OR EARLIER PRODUCTS AND SO ANY

11:29:20  3    DOCUMENT THAT TALKS ABOUT WHETHER OR NOT THEY HAVE

11:29:22  4    BEEN LOOKING AT APPLE PRODUCTS TO COPY THEM OR WHY

11:29:25  5    THEY'RE PUTTING THESE FEATURES IN AND WHY THEY MAY

11:29:28  6    HAVE SELECTED A CERTAIN FEATURE, STUDIES THAT THEY

11:29:31  7    HAVE DONE WITH CONSUMERS OR CUSTOMERS OR ANYONE

11:29:32  8    ELSE AS TO WHY THESE ARE GOOD IMPLEMENTATIONS OF

11:29:35  9    THESE FEATURES, ALL OF THAT MIGHT HAVE BEEN DONE

11:29:37 10    WITH RESPECT -- AND IT PROBABLY WOULD HAVE BEEN

11:29:39 11    DONE -- WITH RESPECT TO PRODUCTS THAT OCCURRED

11:29:40 12    BEFORE THE GALAXY NEXUS.

11:29:43 13        THEY MAY HAVE DONE SOME WITH RESPECT TO

11:29:44 14    THE GALAXY NEXUS 2, AND I UNDERSTAND SAMSUNG HAS

11:29:48 15    AGREED THAT THEY'RE PRODUCING ANYTHING THAT COVERS

11:29:49 16    THAT.

11:29:50 17        BUT WHAT WE'RE TALKING ABOUT NOW IS LET'S

11:29:52 18    SAY WITH RESPECT TO THE EARLIER GENERATION OF THE

11:29:54 19    GALAXY PHONE, BECAUSE THE NEXUS IS JUST SORT OF THE

11:29:57 20    NEXT IN LINE, THAT THEY DID LOOK AT SOME OF THIS

11:29:57 21    INFORMATION.

11:29:59 22        WE WOULD LIKE THEM TO BE LOOKING FOR THAT

11:30:01 23    INFORMATION AND PRODUCING IT TO US BECAUSE IT MAY

11:30:03 24    BE HIGHLY RELEVANT TO WHY THESE FEATURES ARE

11:30:05 25    IMPORTANT OR WHY THESE FEATURES ARE SOMETHING THAT

7

THEY DECIDED THAT THEY REALLY NEED TO COPY FROM
APPLE.

SO THAT'S -- WE'RE NOT LOOKING FOR ALL
FEATURES, NECESSARILY, FOR ALL PRODUCTS.  WE'RE
LOOKING FOR THESE FEATURES IN OTHER PRODUCTS.

AND WE'RE ALSO LOOKING FOR INFORMATION
THAT WOULD SHOW EVIDENCE OF COPYING OF APPLE'S
PRODUCTS WITH RESPECT TO OTHER FEATURES JUST
BECAUSE WHEN YOU LOOK AT THE BALANCE OF THE
HARDSHIPS AND SOME OF THE QUESTIONS LIKE THAT, IF
THEY HAVE THIS STRATEGIC CAMPAIGN WHICH APPLE HAD
ALLEGED THAT THEY BELIEVE THAT THEY DO, OF GOING
OUT AND COPYING APPLE'S PRODUCTS REPEATEDLY, NOT
JUST THIS FEATURE BUT ON A REPETITIVE
PRODUCT-BY-PRODUCT BASIS LOOKING AT SERIAL COPYING
OF APPLE'S FEATURES, THAT'S EVIDENCE THAT THIS IS
SORT OF A CAMPAIGN AND STRATEGY OF THEIRS.  THIS IS
THEIR MARKETING STRATEGY AGAINST APPLE.  THEY'RE
TRYING TO ENTICE CUSTOMERS AWAY FROM APPLE BY
MAKING THE EXPERIENCE VIRTUALLY THE SAME.

THE COURT:  SO YOU'RE SAYING -- I'M GOING
TO USE A HYPOTHETICAL HERE.  YOU'RE SAYING THAT IF
SOME FOLKS OVER AT SAMSUNG ARE LOOKING TO RIP OFF
APPLE T.V., FOR EXAMPLE --

MR. LYON:  CORRECT.

8

11:31:04 1          THE COURT: -- SOME FEATURE OR FUNCTION

11:31:07 2     ON THE APPLE T.V., THAT OUGHT TO BE SEARCHED FOR,

11:31:10 3     COLLECTED, PROCESSED, PRODUCED, TURNED OVER IN THIS

11:31:13 4     CASE IN ORDER TO HELP YOU TO ESTABLISH A THEME THAT

11:31:16 5     THEY'RE TARGETING YOUR CLIENT MORE BROADLY.

11:31:19 6          MR. LYON: SO I WOULD AGREE THAT WHEN WE

11:31:21 7     GET INTO PRODUCTS LIKE COMPUTERS AND APPLE T.V.'S,

11:31:24 8     IT'S PROBABLY LESS.

11:31:25 9          THE COURT: OKAY. SO HELP ME JUST DRAW

11:31:26 10    THE LINE THAT YOU THINK IS APPROPRIATE. SO WE

11:31:29 11    AGREE THAT COMPUTERS AND NON-SMART PHONES OR

11:31:32 12    NON-TABLET PRODUCTS ARE OFF LIMITS.

11:31:37 13         MR. LYON: LET ME JUST SAY WITHOUT SEEING

11:31:39 14    THE DOCUMENT IT'S HARD TO SAY.

11:31:40 15         THE COURT: RIGHT. WE HAVE TO DESIGN

11:31:42 16    WHAT DOCUMENTS HAVE TO BE PRODUCED AND WHAT YOU'RE

11:31:44 17    PROPOSING IS A WHOLESALE UPTURNING OF THE ENTIRE

11:31:47 18    COMPANY, AND IT MAY BE APPROPRIATELY LEGITIMATE BUT

11:31:49 19    I NEED TO MAKE SURE I'M DRAWING THE RIGHT LINE. SO

11:31:53 20    TELL ME HOW TO DO THAT.

11:31:53 21         MR. LYON: SO THE PRODUCTS THAT WE'RE

11:31:54 22    TALKING ABOUT WOULD BE THE I/S PRODUCTS, WHICH

11:31:57 23    WOULD BE THE PHONES --

11:31:57 24         THE COURT: AND THE TABLETS.

11:31:57 25         MR. LYON: -- THE IPADS AND TABLETS AND

9

11:31:59  1       THE IPOD TOUCHES, AND THOSE PRODUCTS THAT ARE

11:31:59  2   REALLY INTERACTING WITH THOSE KIND OF -- THAT HAVE

11:32:02  3   THE SLIDE-TO-UNLOCK FEATURES.

11:32:04  4           AND SOME OF THE OTHER PRODUCTS LIKE THE

11:32:05  5   APPLE T.V. AND COMPUTERS -- I'LL SLOW DOWN.  I

11:32:10  6   APOLOGIZE -- AND THE COMPUTERS ARE A LITTLE BIT

11:32:12  7   DIFFERENT IN THE SENSE THAT THEY ARE NOT

11:32:15  8   NECESSARILY GOING TO HAVE THE SAME KIND OF A

11:32:16  9   COMPETITIVE STRATEGY WITH RESPECT TO WHAT WE'RE

11:32:19 10   SEEING FROM SAMSUNG.

11:32:20 11           THE COURT:  SO IS THAT DIFFERENT SUCH

11:32:22 12   THAT WE CAN ALL AGREE THAT THEY'RE OFF LIMITS AND

11:32:25 13   THEN WE CAN TURN TO WHAT SHOULD BE ON LIMITS?

11:32:26 14           MR. LYON:  I THINK FOR PURPOSES OF THE

11:32:28 15   P.I. THAT WOULD BE FINE.  I THINK WHAT WE'RE REALLY

11:32:30 16   FOCUSSED ON IS REALLY JUST THE PHONES AND THE

11:32:32 17   TABLETS.

11:32:33 18           THE COURT:  SO WITHIN THAT SMALL UNIVERSE

11:32:36 19   OF PRODUCTS, TELL ME WHY FEATURES THAT ARE NOT EVEN

11:32:40 20   AN ISSUE IN THE CASE OUGHT TO BE THE SUBJECT OF

11:32:41 21   DISCOVERY AND HOW ONE MIGHT CRAFT A RULE TO BALANCE

11:32:45 22   YOUR NEEDS AGAINST WHAT WOULD BE A HUGE BURDEN

11:32:48 23   UNDOUBTEDLY FOR THE DEFENDANT?

11:32:49 24           MR. LYON:  SO WE HAVE SEEN EVIDENCE AND

11:32:51 25   WE BELIEVE THAT THIS IS THE CASE THAT SAMSUNG IS

10

11:32:55  1    ACTUALLY GOING OUT THERE AND NOT JUST TARGETING

11:32:57  2    SALES OF OTHER ANDROID COMPANIES AND THINGS LIKE

11:32:59  3    THAT, THAT THEY ARE SERIOUSLY TARGETING APPLE.

11:33:02  4            THE COURT:  THEY WANT TO TAKE YOU GUYS

11:33:04  5    OUT.

11:33:04  6            MR. LYON:  EXACTLY.

11:33:04  7            THE COURT:  IT'S THEIR BUSINESS.  I GET

11:33:06  8    THAT.

11:33:06  9            MR. LYON:  EXACTLY.  SO PART OF THIS IS

11:33:07 10    WHEN YOU LOOK AT THEIR STRATEGY DOCUMENTS, THEY'RE

11:33:11 11    NOT GOING TO FOCUS JUST ON IPHONE 4S.  THEY'RE

11:33:13 12    GOING TO FOCUS ON IPHONE PRODUCTS AS A WHOLE

11:33:18 13    INCLUDING TABLETS AND OTHER PRODUCTS.

11:33:18 14            AND THEY'RE GOING TO HAVE DOCUMENTS WHERE

11:33:20 15    THEY'RE COMPARING THEIR TABLETS WITH OUR TABLETS.

11:33:25 16    AND I THINK THAT THEME REALLY NEEDS TO BE PRESENTED

11:33:27 17    TO JUDGE KOH.  THIS IS PART OF WHY WE ARE HERE AND

11:33:30 18    PART OF THE REASON WE HAVE TO TAKE A SECOND CRACK

11:33:32 19    AT IT AGAIN BECAUSE IT JUST CONTINUES.

11:33:34 20            SO WE NEED TO BE ABLE TO PRESENT THAT

11:33:35 21    KIND OF EVIDENCE TO JUDGE KOH AND TO SAY, LOOK,

11:33:38 22    THIS IS NOT JUST AN ISOLATED INCIDENT.  THIS IS NOT

11:33:38 23    JUST ONE PRODUCT WHERE THEY DECIDED, OH, WE'RE

11:33:40 24    GOING TO TAKE A RUN AT APPLE.  THIS IS A STRATEGIC

11:33:43 25    CAMPAIGN ON THEIR PART.

11

11:33:44 1          AND SO AT LEAST WITH RESPECT TO THESE

11:33:46 2     OTHER PRODUCTS, THE COPYING EVIDENCE IS GOING TO BE

11:33:48 3     DIRECTLY RELEVANT TO AT LEAST A BALANCE OF THE

11:33:51 4     HARDSHIPS BUT ALSO REALLY TO WHY -- YOU KNOW, WHAT

11:33:55 5     WAS THE MOTIVATION AND THE REASON THAT THEY'RE

11:33:57 6     TRYING TO TARGET APPLE CUSTOMERS?  AND THEY'RE

11:34:00 7     LOOKING FOR FEATURES THAT ARE REALLY IMPORTANT TO

11:34:02 8     THEM.  THAT IS WHY THEY ARE NOT --

11:34:02 9          THE COURT:  AND SO WE'RE NOT OPERATING

11:34:03 10    HERE IN A VACUUM.  THERE'S A PRIOR CASE, AND SOME

11:34:08 11    OF US ARE INVOLVED IN THAT PRIOR CASE, AND MANY OF

11:34:11 12    US ARE.

11:34:11 13         CAN YOU POINT TO ANY PRECEDENT EITHER

11:34:14 14    FROM THE COURT OR FROM SAMSUNG THAT WOULD SUGGEST

11:34:16 15    THAT THIS TYPE OF BROADER DISCOVERY INTO FEATURES

11:34:18 16    OTHER THAN THOSE ACCUSED IN THE COMPETITION BETWEEN

11:34:21 17    THE TWO PARTIES AS TO THOSE FEATURES WAS AN

11:34:24 18    APPROPRIATE TOPIC?

11:34:26 19         MR. LYON:  WELL, I WOULD SAY, I'M NOT AS

11:34:28 20    FAMILIAR WITH THE EARLIER CASE BECAUSE I WAS NOT

11:34:30 21    INVOLVED, BUT I DO KNOW THAT THERE HAVE BEEN

11:34:34 22    RECENTLY MOTIONS FOR SANCTIONS THAT WERE BROUGHT TO

11:34:37 23    THE COURT'S ATTENTION AND THEY HAD TO DO WITH

11:34:39 24    DOCUMENTS THAT WERE PRODUCED AFTER THE LAST

11:34:41 25    PRELIMINARY INJUNCTION MOTION THAT WERE HIGHLY

12

11:34:44 1    RELEVANT TO THE PRELIMINARY INJUNCTION AT THE TIME.

11:34:46 2          THE COURT: DO ANY OF THOSE DOCUMENTS

11:34:47 3    ADDRESS -- OR ORDERS WHICH WOULD ADDRESS THOSE

11:34:49 4    DOCUMENTS, DID ANY OF THEM SPEAK TO THIS ISSUE OF

11:34:52 5    THE FEATURE OTHER THAN THOSE BEING ACCUSED OF

11:34:55 6    INFRINGEMENT?

11:34:56 7          MR. LYON: AND I APOLOGIZE BECAUSE I'M

11:34:58 8    TRYING TO KEEP APART FROM WHAT I'VE SEEN FROM THE

11:34:59 9    SANCTIONS RELATED DOCUMENTS AND OTHER DOCUMENTS I

11:35:02 10   HAVE SEEN PRODUCED BY SAMSUNG.

11:35:03 11         I KNOW THERE ARE DOCUMENTS THAT I HAVE

11:35:05 12   SEEN THAT TALK ABOUT MORE OF A MARKETING STRATEGY

11:35:07 13   VERSUS APPLE.

11:35:08 14         I THINK, AS I RECALL, THERE MIGHT HAVE

11:35:10 15   BEEN SOME IN THE SANCTIONS MOTION. AND I

11:35:12 16   APOLOGIZE, BUT I BELIEVE THERE MIGHT HAVE BEEN SOME

11:35:15 17   IN THE SANCTIONS MOTION, AND I'LL ALSO ADDRESS

11:35:16 18   THAT.

11:35:16 19         I KNOW FOR A FACT THERE WERE SOME

11:35:18 20   DOCUMENTS IN THERE THAT RELATE TO PRODUCT, PRODUCT

11:35:22 21   ISSUES. AND BEYOND THAT, YOU KNOW, I DON'T KNOW.

11:35:24 22   THAT'S SOMETHING THAT WE CAN CERTAINLY SUBMIT

11:35:27 23   ADDITIONAL INFORMATION IF THAT WOULD BE HELPFUL FOR

11:35:29 24   THE COURT.

11:35:29 25         THE COURT: ALL RIGHT. SO DO YOU HAVE A

13

11:35:31  1    SENSE?  THAT IS CERTAINLY ONE QUESTION.  COULD YOU

11:35:35  2    HELP ME GET A SENSE?

11:35:36  3         THE SECOND QUESTION IS WHAT ARE WE

11:35:38  4    TALKING ABOUT HERE?  ARE WE TALKING ABOUT THOUSANDS

11:35:40  5    OF DIFFERENT FEATURES WITHIN THE SMART PHONES

11:35:44  6    ACROSS THIS ENTIRE PRODUCT LINE?  ARE WE TALKING

11:35:46  7    ABOUT A DOZEN?  IS THERE SOME WAY TO BOUND THIS SO

11:35:49  8    THAT IT'S NOT JUST A FISHING EXPEDITION?

11:35:51  9         MR. LYON:  SO LET'S START WITH WHAT IS AT

11:35:54 10    ISSUE IN THE P.I. MOTION IS FOUR FEATURES.  SO THAT

11:35:56 11    PART, AND I THINK GOING ACROSS TO OTHER PRODUCTS

11:35:59 12    THAT MAY HAVE THOSE FOUR FEATURES IS AN EASIER

11:36:03 13    BITE.

11:36:03 14         IF YOU LOOK AT THE OTHER PRODUCT LINE,

11:36:05 15    AND IT'S APPLE'S BELIEF THAT IT IS FAIRLY PERVASIVE

11:36:08 16    AND JUST BECAUSE WE'RE FOCUSSED ON FOUR FEATURES

11:36:11 17    HERE, WE COULD HAVE FOCUSSED ON MANY MORE IF WE

11:36:14 18    WANTED TO AND HAVE IN OTHER CASES AS I KNOW THIS

11:36:16 19    COURT IS AWARE.

11:36:17 20         SO WE THINK IT'S SOMETHING OF A PROBLEM

11:36:18 21    OF SAMSUNG'S OWN CREATION HERE THOUGH.  SO JUST

11:36:22 22    BECAUSE, IF IT'S A BURDEN FOR THEM TO GO THROUGH

11:36:24 23    AND SORT THROUGH ALL OF THIS INFORMATION, IT'S ONE

11:36:26 24    THAT THEY HAVE TAKEN ON THEMSELVES BY TAKING ON

11:36:28 25    THIS APPROACH TO HOW THEY WANT TO DO BUSINESS AND

                                                            14

11:36:31  1    TRYING TO GO AFTER APPLE AND TRYING TO COPY OUR

11:36:34  2    PRODUCTS AND TAKE THESE FEATURES.

11:36:36  3             THE COURT:  WELL, THAT PRESUMES, THOUGH,

11:36:37  4    THAT THEY HAVE ENGAGED IN A TRAGEDY ABOUT WHICH

11:36:40  5    APPLE SHOULD HAVE IN SEEKING DISCOVERY.

11:36:41  6             MY CONCERN IS WHETHER THEY HAVE NOT DONE

11:36:44  7    ANYTHING WRONG WITH RESPECT TO ANY OTHER FEATURE

11:36:46  8    AND YOU'RE ASKING ME TO ORDER, ESSENTIALLY, THE

11:36:50  9    ENTIRE PRODUCT MANAGEMENT TEAM, AND PERHAPS EVEN

11:36:53 10    SENIOR EXECUTIVES, TO START ROOTING THROUGH EVERY

11:36:55 11    DOCUMENT OR FILE REGARDING HUNDREDS OF THOUSANDS OF

11:37:00 12    FEATURES THAT WEREN'T AT ISSUE AND AREN'T GOING TO

11:37:02 13    BE AT ISSUE.

11:37:03 14             SO HOW DO I PROACTIVELY AND IN THE

11:37:05 15    ABSENCE OF ANY HARD EVIDENCE THAT OTHER FEATURES

11:37:07 16    WERE THE SUBJECT OF A CONCERTED STRATEGY OR

11:37:11 17    CAMPAIGN, AND HOW DO I DRAW THAT LINE?

11:37:15 18             MR. LYON:  IT WOULD SEEM TO ME THERE

11:37:16 19    WOULD BE WAYS TO FOCUS THE SEARCH.

11:37:17 20             THE COURT:  SO TELL ME WHAT WOULD YOU

11:37:19 21    SUGGEST?

11:37:19 22             MR. LYON:  FOR EXAMPLE, SOME OF THESE ARE

11:37:20 23    GOING TO BE MARKETING RELATED OR SORT OF

11:37:21 24    COMPETITIVE RELATED DOCUMENTS.  THERE MUST BE A

11:37:24 25    CORE GROUP OF FOLKS TO DO THAT.  THERE IS IN EVERY

15

11:37:27 1    COMPANY.

11:37:27 2              SO THEY WOULD BE ABLE TO IDENTIFY IN

11:37:29 3    THOSE PEOPLE AND DO SEARCHES THROUGH THOSE RECORDS.

11:37:32 4              THE COURT:  AND, AGAIN, I'M OPERATING

11:37:34 5    WITH THIS HUGE DISADVANTAGE TO YOU ALL, BUT MY

11:37:36 6    EXPERIENCE TEACHES ME THAT THOSE PEOPLE DO NOT TEND

11:37:41 7    TO OPERATE AT A FEATURE-BY-FEATURE LEVEL.  AND SO

11:37:44 8    IF YOU ARE ENTITLED TO COMPETITIVE ANALYSIS WITH

11:37:49 9    RESPECT TO FOUR OF THESE FEATURES, WOULDN'T THAT

11:37:52 10   SEARCH GET INFORMATION?

11:37:54 11             I'M WORRIED MORE ABOUT THE MANAGER OR

11:37:56 12   DIRECTOR OF PRODUCT MANAGEMENT FOR A PARTICULAR SET

11:37:59 13   OF SPECIFICATION REQUIREMENTS WITH RESPECT TO THIS

11:38:01 14   PRODUCT LINE HAVING TO GO THROUGH AND PULL OUT AN

11:38:04 15   E-MAIL AND OTHER DATA WHEN THE FEATURES THAT THAT

11:38:07 16   POOR SOUL IS RESPONSIBLE FOR HAVE NOTHING TO DO

11:38:10 17   WITH THIS CASE.

11:38:11 18             MR. LYON:  WELL, A LOT OF THIS, YOU

11:38:13 19   KNOW -- I GUESS THERE ARE SEVERAL LAWYERS THERE.

11:38:14 20   IN ONE SENSE UNDER MODERN TIMES WE HAVE THE ABILITY

11:38:17 21   TO DO SEARCHES ON A LOT OF DATA ALL AT ONCE.  AND

11:38:20 22   THERE ARE WAYS --

11:38:20 23             THE COURT:  YOU CAN'T GET THE DATA --

11:38:25 24             MR. LYON:  I APOLOGIZE.

11:38:28 25             THE COURT:  I APOLOGIZE, TOO.  GO AHEAD.

                                                              16

11:38:29  1           MR. LYON:  YES, I AGREE.  AND I THINK

11:38:31  2  THAT WHAT WE'RE SAYING IN A LOT OF WAYS IS THE SAME

11:38:34  3  THING IS THAT IF THERE IS A LOT OF COPYING

11:38:36  4  INFORMATION, THERE MAY BE A LOT OF PEOPLE THAT THEY

11:38:38  5  HAVE TO GO TO, TO GET THIS.

11:38:40  6           BUT WHAT WE'RE TALKING ABOUT REALLY IS

11:38:42  7  DOCUMENTS THAT THEY'RE COMPARING TO APPLE PRODUCTS

11:38:46  8  AND THEY'RE TRYING TO TAKE FEATURES AND STUDIES OF

11:38:49  9  APPLE PRODUCTS.  AND WE'RE LOOKING FOR THAT KIND OF

11:38:51 10  INFORMATION TO SHOW THAT THEY ARE ACTIVELY

11:38:53 11  MONITORING AND TRACKING AND TRYING TO DEVELOP THEIR

11:38:55 12  FEATURE SET BASED ON THE APPLE PRODUCTS.

11:38:57 13           THE COURT:  IF I MIGHT INTERRUPT YOU

11:38:59 14  THERE FOR JUST A MOMENT.  YOU ALL HAVE BEEN AT EACH

11:39:02 15  OTHER'S THROATS NOW FOR SOME TIME.  AT THIS POINT

11:39:06 16  DON'T YOU HAVE A PRETTY GOOD SENSE OF WHO THE

11:39:08 17  PEOPLE ARE OR THE SPECIFIC ORGANIZATIONS WITHIN

11:39:11 18  SAMSUNG THAT WE'RE TALKING ABOUT?

11:39:12 19           MR. LYON:  I THINK THAT'S CORRECT.  I

11:39:13 20  THINK WE HAVE A SENSE.  I DON'T KNOW IF IT'S

11:39:16 21  ENTIRELY ACCURATE, BUT I THINK WE HAVE DEFINITELY

11:39:17 22  DEVELOPED MORE OF AN UNDERSTANDING.

11:39:19 23           THE COURT:  COULD YOU MAKE A PROFFER TO

11:39:20 24  ME OR SOME KIND OF SUGGESTION HOW I MIGHT CRAFT AN

11:39:24 25  ORDER THAT YOU WANT ME TO ISSUE BOUNDARIES WHICH

17

11:39:26 1    RELY UPON OR USE THOSE -- THAT INSIGHT THAT YOU

11:39:29 2    GAVE ME?

11:39:29 3            MR. LYON:  I THINK THAT WOULD BE DOABLE

11:39:31 4    IF THAT WOULD BE HELPFUL FOR THE COURT.  I MEAN, WE

11:39:33 5    COULD IDENTIFY AT LEAST A GROUP OF PEOPLE THAT WE

11:39:35 6    THINK WOULD BE THE ONES TO LOOK FOR FIRST AND THEN

11:39:38 7    I SUPPOSE ADDRESS IT LATER IF WE NEED TO FOR

11:39:42 8    ADDITIONAL.

11:39:45 9            NOW, THEY BRING UP A COUPLE OF

11:39:48 10   OBJECTIONS, AND I DON'T KNOW IF YOUR HONOR WANTS TO

11:39:49 11   ADDRESS THOSE NOW OR WAIT.

11:39:50 12           THE COURT:  GO AHEAD.

11:39:51 13           MR. LYON:  WITH RESPECT TO BOTH OF THE

11:39:54 14   RFP'S INVOLVED WE HAVE THIS COMMON INTEREST ISSUE.

11:39:56 15   OUR POINT IS NOT THAT THERE CAN'T EVER BE A COMMON

11:40:00 16   INTEREST, IT IS JUST THAT THEY HAVE DONE NOTHING TO

11:40:02 17   REALLY JUSTIFY IT AND YOU CAN'T CONVERT EVERYTHING.

11:40:03 18           SO THERE MUST BE SOME DOCUMENTS THAT ARE

11:40:05 19   ENGINEER-TO-ENGINEER COMMUNICATIONS AND THINGS LIKE

11:40:08 20   THAT THAT ARE NOT PART OF THE COMMON INTEREST.

11:40:10 21           AND WE HAVE NOT SEEN WHAT THEY'RE

11:40:12 22   WITHHOLDING BASED ON THAT, AND WE WOULD LIKE A VERY

11:40:14 23   SPECIFIC UNDERSTANDING IF WHY -- IF THEY'RE

11:40:15 24   WITHHOLDING SOMETHING, WHY THEY'RE WITHHOLDING IT.

11:40:17 25           AND IF IT IS LEGITIMATELY PRIVILEGED,

                                                          18

11:40:20  1    THAT'S ONE THING AND IT MAY APPLY, BUT AT THIS

11:40:22  2    POINT THERE'S NO WAY FOR US TO TEST ANYTHING AND

11:40:24  3    THEY'RE THROWING IT UP THERE AND WE HAVE NO WAY TO

11:40:27  4    DEAL WITH IT.

11:40:28  5            THE COURT:  AND ORDINARILY YOU WOULD DEAL

11:40:29  6    WITH THAT BY RECEIVING LOGS AND REVIEWING THE LOGS

11:40:31  7    AND RAISING THE CHALLENGE.

11:40:33  8            ARE YOU SAYING AT LEAST TO DATE THEY HAVE

11:40:35  9    COMMUNICATED THEY'RE NOT GOING TO DO IT AND THEY'RE

11:40:38 10    JUST SIMPLY SAYING COMMON INTEREST, TOUGH LUCK.

11:40:42 11            MR. LYON:  AT THIS POINT ALL WE HAVE IS

11:40:42 12    THE OBJECTION, WE DON'T HAVE A LOG.  THEY HAVE NOT

11:40:43 13    INDICATED THEY WON'T PRODUCE ONE BUT WE DON'T HAVE

11:40:45 14    A LOG AT THIS POINT.  SO WE DO NEED SOME WAY OF

11:40:47 15    DEALING WITH THAT ISSUE, IF THERE ARE ISSUES WITH

11:40:49 16    THAT THEN WE KNOW WHAT THEY ARE.

11:40:51 17            ON THE SUBPART ISSUE WITH THE

11:40:53 18    INTERROGATORIES, I THINK OUR POSITION IS IN THE

11:40:55 19    PAPERS.  IT'S JUST THAT WE BELIEVE THOSE ARE

11:40:57 20    LOGICALLY CONSISTENT, AND I DON'T THINK THERE'S

11:40:59 21    MUCH MORE.

11:41:00 22            THE COURT:  CAN WE GO BACK TO THE COMMON

11:41:01 23    INTEREST ISSUE --

11:41:02 24            MR. LYON:  YEAH, SURE.

11:41:03 25            THE COURT:  -- THAT YOU RAISED?  IT'S

                                                            19

11:41:04 1  SOMETHING THAT I STRUGGLE WITH, AND I KNOW YOU ALL

11:41:08 2  HAVE SEEN ME CITE TO SOME EARLIER WORK I HAVE DONE

11:41:11 3  ON THIS SUBJECT.

11:41:15 4       YOU MENTION ENGINEER-TO-ENGINEER

11:41:17 5  COMMUNICATIONS.  SO MANY TIMES THESE TECHNICAL

11:41:19 6  DISCUSSIONS ARE OPERATING AT THE SPECIFIC DIRECTION

11:41:21 7  OR AT LEAST WITH THE GUIDANCE OF COUNSEL.

11:41:23 8       COULD YOU OFFER SOME THOUGHTS ABOUT HOW

11:41:27 9  ONE MIGHT DRAW LINES THAT APPROPRIATELY PROTECT THE

11:41:29 10  COMMON INTEREST BETWEEN THESE PARTIES AND YET --

11:41:33 11       MR. LYON:  I APOLOGIZE.  I BELIEVE -- I

11:41:35 12  THINK YOUR HONOR IS RIGHT.  THERE ARE TIMES WHERE

11:41:37 13  LAWYERS HAVE ASKED ENGINEERS WITHIN THE COMPANY TO

11:41:40 14  DO SOME WORK OR TO DO SOMETHING TO EVALUATE

11:41:43 15  SOMETHING AND THEN THERE ARE COMMUNICATIONS BETWEEN

11:41:44 16  TWO COMPANIES ESSENTIALLY AT THE DIRECTION OF

11:41:47 17  LAWYERS TO TRY TO FIGURE OUT HOW DO WE DEAL WITH AN

11:41:49 18  ISSUE OR PROBLEM.

11:41:51 19       THAT CAN BE PROTECTED.  IF THAT'S A

11:41:53 20  PRIVILEGED COMMUNICATION IN THE SENSE THAT THERE'S

11:41:55 21  WORK BEING DONE AT THE DIRECTION OF LAWYERS AND

11:41:57 22  IT'S WORK PRODUCT, AND IT OTHERWISE WOULD BE

11:41:59 23  PROTECTED BUT FOR THE THIRD PARTY COMMUNICATION,

11:42:02 24  THE COMMON INTEREST PRIVILEGE MIGHT STEP IN TO

11:42:05 25  PROTECT THAT.

20

11:42:05  1          BUT THEY HAVE TO ESTABLISH THAT IT'S A

11:42:08  2     PRIVILEGED COMMUNICATION.

11:42:09  3          THE COURT:  AND IT IS THEIR BURDEN.

11:42:10  4          MR. LYON:  IT IS THEIR BURDEN.  ALL

11:42:12  5     RIGHT.  THANK YOU.

11:42:13  6          THE COURT:  THANK YOU.

11:42:18  7          MR. FAZIO:  GOOD MORNING, YOUR HONOR.

11:42:19  8     MICHAEL FAZIO ON BEHALF OF THE SAMSUNG DEFENDANTS.

11:42:22  9          YOUR HONOR, I WANTED TO HIT UPON A COUPLE

11:42:24 10     OF POINTS THAT WERE MENTIONED BY MR. LYON.

11:42:29 11     SPECIFICALLY THERE SEEMS TO BE AN ACKNOWLEDGEMENT

11:42:31 12     THAT THERE IS AN ATTEMPT RIGHT NOW.  AND BY "RIGHT

11:42:34 13     NOW" I MEAN WE'RE IN P.I. DISCOVERY, NOT CASE-WIDE

11:42:36 14     DISCOVERY, BUT WE'RE HERE TODAY TO TALK ABOUT P.I.

11:42:40 15     DISCOVERY, WHICH THE COURT ORDERED TO BE NARROWLY

11:42:43 16     TAILORED.

11:42:43 17          THEY'RE TRYING TO TAKE DISCOVERY ON THEIR

11:42:45 18     ENTIRE THEME OF THEIR CASE, COPYING ACROSS AN

11:42:48 19     UNDISCLOSED AMOUNT OF PRODUCTS, OVER AN UNDISCLOSED

11:42:51 20     PERIOD OF TIME.  AND THAT IS SOMETHING THAT WOULD

11:42:58 21     NECESSARILY REQUIRE US, AS YOUR HONOR POINTED OUT,

11:43:00 22     TO GO AND INTERVIEW THOUSANDS OF ENGINEERS AND

11:43:03 23     PEOPLE IN THE MARKETING DEPARTMENT, NOT TO ACTUALLY

11:43:04 24     COLLECT THOSE DOCUMENTS BUT TO ACTUALLY DETERMINE

11:43:07 25     IF THEY EXIST IN THE FIRST PLACE.

21

11:43:08 1          NOW, APPLE HAS A REPLY BRIEF THAT IS DUE

11:43:11 2  ON MAY 14TH, AND THERE IS ONLY SO MANY THINGS THAT

11:43:14 3  ARE POSSIBLE IN THIS WORLD.

11:43:15 4          BUT TRYING TO INTERVIEW SEVERAL THOUSANDS

11:43:17 5  OF PEOPLE TO DETERMINE THE EXISTENCE OF THOSE

11:43:19 6  DOCUMENTS IN ORDER TO PRODUCE THAT DISCOVERY FOR

11:43:23 7  APPLE TO USE IT FOR THEIR P.I. REPLY IS SIMPLY NOT

11:43:27 8  POSSIBLE, YOUR HONOR.

11:43:27 9          THE COURT:  SO IF SEVERAL THOUSANDS IS

11:43:29 10 UNREASONABLE, WHY NOT START WITH A DOZEN?

11:43:31 11         MR. FAZIO:  YOUR HONOR, I WOULD NOT

11:43:34 12 DISPUTE THAT WE COULD START WITH A DOZEN.

11:43:35 13         THE COURT:  HAVE YOU?

11:43:37 14         MR. FAZIO:  YOUR HONOR, WE HAVE ALREADY

11:43:39 15 INTERVIEWED WELL OVER A DOZEN PEOPLE TO PRODUCE THE

11:43:42 16 1.2 MILLION PAGES OF DOCUMENTS THAT WE HAVE

11:43:43 17 PRODUCED TO DATE, AND THAT'S THE POINT THAT I WANT

11:43:46 18 TO HAMMER HOME BECAUSE SOMETHING THAT WAS NOT

11:43:48 19 MENTIONED PREVIOUSLY WAS WHAT WE HAVE DONE TO DATE

11:43:51 20 TO RESPOND TO THEIR DISCOVERY WHICH IS THAT WE --

11:43:54 21         THE COURT:  I DON'T MEAN TO INTERRUPT

11:43:55 22 YOU, COUNSEL, BUT I'LL GO AHEAD AND DO IT ANYWAY.

11:43:58 23         MR. FAZIO:  SURE.

11:43:59 24         THE COURT:  YOU KNOW, IN THE PARALLEL OF

11:44:01 25 LITIGATION I HAVE HEARD OVER AND OVER AGAIN CRIES

22

11:44:07 1    ABOUT HOW MUCH HAS BEEN PRODUCED WHENEVER ONE SIDE

11:44:10 2    OR THE OTHER HAS MOVED TO COMPEL, AND WITH ALL

11:44:12 3    RESPECT, THAT DOESN'T MOVE ME VERY MUCH.

11:44:16 4          THE ISSUE ON ANY MOTION TO COMPEL IS NOT

11:44:19 5    WHAT YOU HAVE PRODUCED, IT'S WHAT YOU HAVEN'T AND

11:44:22 6    WHETHER YOU SHOULD HAVE.

11:44:23 7          AND I DON'T MEAN TO CUT YOU OFF, OR

11:44:24 8    ANYONE WHO WANTS TO MAKE THIS POINT IN THE FUTURE,

11:44:27 9    BUT THAT DOESN'T DO MUCH FOR ME.

11:44:30 10         SO I'D RATHER FOCUS ON WHAT THEY ARE

11:44:31 11   ASKING FOR THAT YOU HAVEN'T PRODUCED AND WHETHER

11:44:33 12   YOU SHOULD HAVE.

11:44:34 13         MR. FAZIO:  CERTAINLY, YOUR HONOR.  AND

11:44:35 14   THE ONLY REASON I WANTED TO MAKE THAT ARGUMENT WAS

11:44:38 15   TO JUXTAPOSE IT AGAINST WHAT THEY ARE ASKING FOR

11:44:40 16   RIGHT NOW, WHICH IS ON THEIR P.I. PAPERS WE'RE

11:44:42 17   TALKING ABOUT FOUR ACCUSED FEATURES AND ONE DEVICE

11:44:44 18   AND THAT INVOLVED 1.2 MILLION PAGES OF DOCUMENTS

11:44:46 19   THAT WE HAVE PRODUCED.

11:44:48 20         TO TRY TO DELVE IN TO PRODUCE ALL

11:44:51 21   FEATURES, OTHER FEATURES, NON-USED FEATURES ACROSS

11:44:54 22   SOME UNDISCLOSED AMOUNT OF DEVICES, WHETHER THEY'RE

11:44:56 23   SMART PHONES, PRODUCTS OR TABLETS, I MEAN, WHO

11:45:00 24   KNOWS HOW MUCH WE'RE TALKING ABOUT HERE, YOUR

11:45:01 25   HONOR.

                                                        23

11:45:01  1        BUT SOMETHING THAT I DID WANT TO GET BACK

11:45:04  2   TO IS THERE WAS NO MENTION OF THE ACTUAL RFP'S

11:45:09  3   THEMSELVES IN THE ARGUMENT THAT WE JUST HEARD, AND

11:45:11  4   I THINK IT'S ABSOLUTELY NECESSARY TO TETHER THESE

11:45:14  5   ARGUMENTS TO THE LANGUAGE OF THE RFP'S BECAUSE THEN

11:45:17  6   WE CAN SEE HOW BROAD THEY ARE AND HOW FAR REACHING

11:45:19  7   THEY ARE, AND I NEED TO DO THIS IN THE CONTEXT OF

11:45:23  8   THE APPLE'S REPLY BRIEF BECAUSE I THINK THAT APPLE,

11:45:26  9   THEY'RE VERY ELOQUENT IN THEIR PAPERS.

11:45:28 10        THE COURT:  AS ARE YOU ALL.  YOU'RE VERY

11:45:31 11   ELOQUENT ALL THE WAY AROUND.

11:45:33 12        MR. FAZIO:  WELL, THANK YOU, YOUR HONOR.

11:45:34 13        AND THEY TRY TO PARAPHRASE WHAT THE RFP'S

11:45:38 14   SAY.  AND IN DOING SO THEY DO A PRETTY GOOD JOB OF

11:45:38 15   ALMOST MAKING IT SEEM AS THOUGH THE RFP'S ARE

11:45:43 16   REASONABLE IN SCOPE, BUT THEY'RE NOT.  AND I CAN DO

11:45:45 17   THAT THROUGH A COUPLE OF EXAMPLES VERY EFFICIENTLY.

11:45:48 18        ON PAGE 5 OF THEIR REPLY BRIEF, APPLE

11:45:50 19   PARAPHRASES THE REQUEST FOR PRODUCTION NUMBER 8.

11:45:53 20   AND THEY SAY THAT REQUEST FOR PRODUCTION NUMBER 8

11:45:56 21   SEEKS DOCUMENTS RELATING TO THE ROLE THAT VARIOUS

11:45:58 22   INDIVIDUALS, GROUPS, AND ENTITIES PLAYED IN THE

11:46:01 23   DESIGN OF THE ACCUSED FEATURES, GALAXY NEXUS, AND

11:46:04 24   THE ANDROID 4.0 ICE CREAM SANDWICH THAT PROVIDES

11:46:11 25   SUCH FEATURES ON THE ACCUSED DEVICE.

                                                        24

11:46:11 1          SO THAT SEEMS PRETTY NARROW.  WHEN WE

11:46:12 2     READ THAT, OKAY, SO WE'RE TALKING ABOUT THE FOUR

11:46:13 3     ACCUSED FEATURES ON THE ONE ACCUSED DEVICE.

11:46:16 4          BUT THEN IF WE ACTUALLY JUXTAPOSE THAT

11:46:19 5     AGAINST REQUEST FOR PRODUCTION NUMBER 8 ITSELF,

11:46:23 6     REQUEST FOR PRODUCTION NUMBER 8 ASKS FOR DOCUMENTS

11:46:26 7     SUFFICIENT TO IDENTIFY THE INDIVIDUALS WHO

11:46:29 8     CONTRIBUTED TO, OVERSAW OR WHO WERE OTHERWISE

11:46:32 9     INVOLVED IN THE DESIGN, DEVELOPMENT OR

11:46:35 10    IMPLEMENTATION OF THE ABILITY TO TYPE, ENTER,

11:46:40 11    CORRECT, CHANGE OR MODIFY TEXT IN APPLICATIONS AND

11:46:43 12    THEN IT LISTS THE APPLICATIONS.

11:46:44 13         THIS IS A FEATURE THAT ARGUABLY APPLIES

11:46:47 14    TO EVERY SAMSUNG PRODUCT PRODUCED OVER THE COURSE

11:46:50 15    OF THE LAST SEVERAL DECADES.

11:46:52 16         NOW, IN THE REPLY APPLE SAYS, WELL, WAIT

11:46:55 17    A MINUTE, IT COULD BE RELEVANT TO THE '172 PATENT

11:46:58 18    WHICH DEALS WITH WORD SUGGESTIONS.  AND I

11:47:00 19    RESPECTFULLY SUBMIT, YOUR HONOR, THAT THE ABILITY

11:47:01 20    TO TYPE TEXT OR ENTER TEXT OR MODIFY TEXT ACROSS

11:47:05 21    THOUSANDS OF SAMSUNG PRODUCTS OVER AN INDEFINITE

11:47:09 22    PERIOD OF TIME SIMPLY DOESN'T HAVE ANYTHING TO DO

11:47:12 23    WITH THE VERY NARROW SUBJECT MATTER OF WORD

11:47:14 24    SUGGESTION THAT'S ENCOMPASSED BY THE '172 PATENT.

11:47:17 25         THE COURT:  SO DID YOU GIVE HIM THE

                                                        25

11:47:19  1      PEOPLE WHO WORKED ON THE WORD SUGGESTION?

11:47:21  2              MR. FAZIO:  YOUR HONOR, WE HAVE PRODUCED

11:47:22  3      DOCUMENTS, A LARGE VOLUME OF DOCUMENTS, THAT DEAL

11:47:27  4      WITH A FEATURE IN SAMSUNG'S PRODUCT CALLED

11:47:32  5      PREDICTIVE TEXT, WHICH IS DIFFERENT THAN WORD

11:47:35  6      SUGGESTION, BUT THOSE DOCUMENTS HAVE BEEN PRODUCED.

11:47:37  7              THE COURT:  OKAY.  SO WERE THE DOCUMENTS

11:47:38  8      THAT WERE PRODUCED REGARDING PREDICTIVE TESTS

11:47:45  9      SUFFICIENT TO ALLOW APPLE TO IDENTIFY WHO WORKED ON

11:47:48 10      THOSE?

11:47:49 11              MR. FAZIO:  I BELIEVE THEY ARE, YOUR

11:47:51 12      HONOR, BUT TO THE EXTENT THAT APPLE HAS ANY ISSUE

11:47:54 13      WITH NOT BEING ABLE TO IDENTIFY THOSE FEATURES, WE

11:47:57 14      CAN IDENTIFY THOSE INVIDUALS FOR APPLE AT THEIR

11:47:57 15      REQUEST.

11:47:58 16              AND I THINK THAT'S THE APPROPRIATE WAY TO

11:47:59 17      HANDLE THIS ISSUE AS OPPOSED TO AN ORDER REQUIRING

11:48:02 18      US TO GO GATHER DOCUMENTS ACROSS ALL FEATURES AND

11:48:05 19      ACROSS ALL DOCUMENTS.

11:48:08 20              ANOTHER REQUEST, JUST TO HAMMER HOME THIS

11:48:10 21      POINT WITH THE COURT'S KIND INDULGENCE, IS REQUEST

11:48:12 22      FOR PRODUCTION NUMBER 18.  IN APPLE'S REPLY BRIEF

11:48:15 23      AT PAGE 2 APPLE SAYS IN ITS REQUEST NUMBER 18 SEEKS

11:48:22 24      MATERIALS RELATING TO SAMSUNG'S KNOWLEDGE OF THE

11:48:24 25      PRELIMINARY INJUNCTION PATENTS AS WELL AS ITS

26

11:48:26 1     EFFORTS TO COPY OR DESIGN AROUND THE INVENTIONS

11:48:29 2     CLAIMED IN THOSE PATENTS.

11:48:30 3              SO, AGAIN, IT SEEMS SOMEWHAT NARROW

11:48:32 4     BECAUSE WE'RE TALKING ABOUT THE PRELIMINARY

11:48:34 5     INJUNCTION PATENTS.

11:48:35 6              BUT THEN IF WE ACTUALLY GO TO THE

11:48:38 7     LANGUAGE OF REQUEST NUMBER 18, IT SAYS REQUESTS BUT

11:48:40 8     ASKS FOR ALL DOCUMENTS RELATING TO THE DESIGN OR

11:48:42 9     DEVELOPMENT OF ANY SAMSUNG SMART PHONE OR PRODUCTS

11:48:46 10    THAT USE OR INCORPORATE THE ANDROID PLATFORM THAT

11:48:49 11    MENTION OR REFER TO APPLE PRODUCTS AND THEN THERE'S

11:48:51 12    AN EXEMPLARY LIST AFTER THAT OF WHAT THOSE

11:48:54 13    DOCUMENTS MAY INCLUDE.

11:48:55 14             SO, AGAIN, WE HAVE GONE FROM THE

11:48:57 15    PRELIMINARY INJUNCTION PATENTS TO ALL SAMSUNG SMART

11:48:59 16    PHONES OR PRODUCTS OF WHICH THERE'S SOME UNTOLD

11:49:03 17    AMOUNT OVER THIS INDEFINITE TIMEFRAME THAT IS NOT

11:49:05 18    SPECIFIED BY THIS REQUEST FOR PRODUCTION.

11:49:07 19             THE COURT:  SO WOULD YOU AGREE THEN,

11:49:08 20    COUNSEL, THAT IF THE REQUEST HAD BEEN ORIGINALLY

11:49:12 21    DRAFTED AS NARROWLY AS APPLE HAS COUCHED THEM IN

11:49:15 22    THEIR PAPERS, YOU WOULD HAVE NO PROBLEM WITH THEM?

11:49:18 23             MR. FAZIO:  NOT ONLY, YOUR HONOR, WOULD

11:49:19 24    WE NOT HAVE A PROBLEM WITH THEM, BUT I COULD STAND

11:49:22 25    IN FRONT OF YOUR HONOR TODAY AND SAY WE HAVE

27

11:49:24 1    PRODUCED THOSE DOCUMENTS AND THIS WOULD BE A

11:49:26 2    NONISSUE.

11:49:26 3         BUT BY VIRTUE OF THE FACT THAT THEY NOW

11:49:28 4    WANT US TO GO OUT AND FIND THESE FEATURES ACROSS

11:49:32 5    ALL OTHER PRODUCTS --

11:49:34 6         THE COURT:  WELL, WAIT, WAIT, WAIT.  I

11:49:34 7    THOUGHT YOU JUST TOLD ME THAT AS TO THE STUFF THAT

11:49:36 8    THEY'RE ASKING FOR IN THEIR PAPERS, YOU HAVE

11:49:40 9    PRODUCED IT AND THERE'S NO ISSUE.

11:49:41 10        SO IF THAT'S TRUE THEN HAVEN'T YOU MOOTED

11:49:43 11   THEIR REQUEST?  THEY'RE NOT ASKING FOR ANYMORE THAN

11:49:46 12   WHAT YOU PRODUCED.  I UNDERSTAND WHAT YOU'RE

11:49:48 13   SAYING.

11:49:49 14        MR. FAZIO:  WELL, I THINK WHAT I AM

11:49:50 15   CONCERNED ABOUT, YOUR HONOR, IS THE SHELL GAME THAT

11:49:52 16   IS BEING PLAYED, WHICH IS THAT THEY PARAPHRASE IT

11:49:55 17   ONE WAY AND WE CAN SAY THAT TO THE EXTENT THAT THEY

11:49:58 18   PARAPHRASED IT TO APPLY TO THE FOUR ACCUSED

11:49:59 19   FEATURES AND THE ONE ACCUSED PRODUCT, WE HAVE

11:50:03 20   PRODUCED THOSE DOCUMENTS.

11:50:04 21        AND WHAT I'M AFRAID OF IS THAT THE ORDER

11:50:05 22   IS NOT COUCHED THAT WAY, AND IT'S COUCHED MORE IN

11:50:07 23   TERMS OF PRODUCE ALL DOCUMENTS RESPONSIVE TO RFP 8

11:50:09 24   OR TO NUMBER 18, WHICH I JUST READ, WHICH IS A FAR

11:50:12 25   BROADER UNIVERSE OF DOCUMENTS.  THAT'S MY CONCERN,

28

11:50:14 1   YOUR HONOR.

11:50:14 2           THE COURT:  I UNDERSTAND.  I UNDERSTAND.

11:50:16 3           AND YOUR CONCERN IS WARRANTED BY THE WAY

11:50:20 4   I STRUCTURED CERTAIN PREVIOUS ORDERS IN THE

11:50:22 5   PARALLEL CASE, BUT I WANT TO MAKE SURE THAT I

11:50:24 6   UNDERSTAND YOUR POSITION.

11:50:26 7           YOUR POSITION IS THAT HOW THEY ASKED IN

11:50:28 8   THE APPLE PAPERS, YOU HAVE COMPLIED?  THERE'S

11:50:31 9   NOTHING FURTHER FOR ME TO ORDER?

11:50:32 10          MR. FAZIO:  YOUR HONOR, I WOULD SAY THAT

11:50:34 11  IS CORRECT WITH RESPECT TO THE FIRST EXCERPT THAT I

11:50:36 12  READ ON PAGE 5 OF THEIR REPLY.  I WOULD SAY IT IS

11:50:39 13  NOT CORRECT AS TO THE SECOND EXCERPT THAT I READ ON

11:50:41 14  PAGE 2 BECAUSE WE HAVE NOT PRODUCED DOCUMENTS

11:50:43 15  REGARDING DESIGN AROUNDS.  AND THAT'S IMPORTANT,

11:50:46 16  YOUR HONOR.  THAT'S RFP NUMBER 16.

11:50:48 17          AND THE REASON WHY WE HAVE NOT PRODUCED

11:50:50 18  DOCUMENTS REGARDING DESIGN AROUNDS IS BECAUSE

11:50:52 19  DESIGN AROUND IS THE OPPOSITE OF COPYING.

11:50:54 20          AND TO THE EXTENT THAT THOSE DOCUMENTS

11:50:56 21  ARE NOT PRIVILEGED, BECAUSE GENERALLY THEY WOULD

11:51:00 22  NECESSARILY INVOLVE COMMUNICATIONS WITH COUNSEL FOR

11:51:03 23  SAMSUNG TO ANALYZE THE PATENTS AND SO ON AND SO

11:51:06 24  FORTH, DESIGN AROUNDS SIMPLY HAS NO PLACE IN THE

11:51:08 25  ANALYSIS OF PATENT INFRINGEMENT.

                                                    29

11:51:11 1            THE COURT:  REALLY?  DO YOU REALLY WANT

11:51:13 2    TO TAKE THE POSITION THAT THE DESIGN AROUND IS

11:51:15 3    IMMATERIAL TO AN ANALYSIS UNDER 271(A).

11:51:19 4            MR. FAZIO:  I WOULD SAY THAT IT

11:51:21 5    IS IRRELEVANT TO THE PRELIMINARY INJUNCTION.

11:51:21 6            THE COURT:  WHY?

11:51:22 7            MR. FAZIO:  BECAUSE, YOUR HONOR, IT HAS

11:51:23 8    NOTHING TO DO --

11:51:24 9            THE COURT:  WHY?  WHY WOULDN'T YOUR

11:51:25 10   ENGINEERING TEAM'S ANALYSIS OF WHAT FEATURES NEED

11:51:28 11   TO BE CHANGED IN WHAT MANNER BE AT LEAST MATERIAL

11:51:30 12   OR DISCOVERABLE ON A QUESTION OF 271(A) LIABILITY?

11:51:34 13           MR. FAZIO:  WELL, I WOULD RESPECTFULLY

11:51:35 14   SUBMIT, YOUR HONOR, THAT IT WOULD GO TO OUR EFFORTS

11:51:37 15   TO AVOID INFRINGEMENT.

11:51:38 16           THE COURT:  RIGHT.  AND WHY WOULDN'T IT

11:51:39 17   SHED LIGHT ON PRODUCT NUMBER 2 IS A DESIGN AROUND,

11:51:42 18   ITS AIM OR PURPOSE IS TO AVOID THE LIMITATIONS THAT

11:51:45 19   ARE BEING ASSERTED AGAINST PRODUCT NUMBER 1, SURELY

11:51:48 20   THE CONCLUSIONS AND ANALYSIS UNDERTAKEN WITH

11:51:52 21   PRODUCT NUMBER 2 WOULD ILLUMINATE WHETHER OR NOT

11:51:55 22   SAMSUNG BELIEVES PRODUCT NUMBER 1 IS A PROBLEM,

11:51:57 23   WOULDN'T IT?

11:51:58 24           MR. FAZIO:  YOUR HONOR, I SUPPOSE THERE

11:51:59 25   COULD BE A HYPOTHETICAL CONSIDERATION WHERE THAT

                                                          30

11:52:01  1    MIGHT BE THE CASE, I JUST HAVE A HARD TIME

11:52:04  2    IMAGINING HOW THAT ANALYSIS COULD BE TAKEN WITHOUT

11:52:06  3    ATTORNEYS BEING INVOLVED TO DISSECT THE PATENT.

11:52:09  4         THE COURT:  IT HAPPENS ALL OF THE TIME,

11:52:11  5    RIGHT?  I MEAN, WE TALKED ABOUT THIS, AS YOU ALL

11:52:13  6    MAY KNOW IN THE PARALLEL CASE I HAVE A MOTION

11:52:15  7    PENDING BEFORE ME ON THIS VERY SUBJECT, RIGHT?

11:52:17  8         AND SO ONCE PRODUCTS ARE RELEASED TO THE

11:52:20  9    MARKET, CERTAINLY THERE ARE NON-PRIVILEGED

11:52:23 10    DISCUSSION AROUND DESIGN AROUNDS BUT EVEN BEFORE

11:52:25 11    THAT THERE COULD BE SUCH DISCUSSIONS, RIGHT?

11:52:30 12         MR. FAZIO:  I THINK THERE COULD BE, I

11:52:31 13    THINK THERE COULD BE, YOUR HONOR.  BUT I WOULD SAY

11:52:33 14    THAT THE ISSUE OF DESIGN AROUNDS GOES TOWARD A

11:52:35 15    FAIRLY NARROW ISSUE THAT --

11:52:36 16         THE COURT:  BUT IT'S AN IMPORTANT ONE,

11:52:37 17    IT'S AN IMPORTANT ONE TO THIS COURT AND I WANT TO

11:52:40 18    MAKE SURE I UNDERSTAND YOUR POSITION.

11:52:41 19         HAS YOUR POSITION TO DATE BEEN THAT IF

11:52:43 20    WE'RE TALKING ABOUT A DESIGN AROUND THAT APPLE IS

11:52:46 21    NOT GETTING IT IN THE P.I. DISCOVERY?

11:52:50 22         MR. FAZIO:  YES, YOUR HONOR, THAT IS OUR

11:52:50 23    POSITION.

11:52:50 24         THE COURT:  AND THE BASIS FOR FOUNDATION

11:52:52 25    FOR THAT POSITION IS THAT THERE'S NOTHING MATERIAL,

31

11:52:56  1      IT'S IRRELEVANT?

11:52:56  2              MR. FAZIO:  IT'S IRRELEVANT TO THE FOUR

11:52:58  3      ELEMENTS THAT THE COURT HAS TO CONSIDER IN ITS

11:52:59  4      PRELIMINARY INJUNCTION ANALYSIS, YOUR HONOR, THAT

11:53:00  5      BEING LIKELIHOOD OF SUCCESS, IRREPARABLE HARM --

11:53:02  6              THE COURT:  SO EVEN IF SOME ENGINEERS ARE

11:53:02  7      OFF TRYING TO FIGURE OUT HOW TO AVOID A LIMITATION

11:53:06  8      THAT HAS BEEN ASSERTED AGAINST PRODUCT 1 IN ITS

11:53:07  9      DESIGN OF PRODUCT 2, YOUR POSITION IS THAT IT'S

11:53:11 10      IMMATERIAL THE QUESTION OF WHETHER PRODUCT 1 IS A

11:53:12 11      PROBLEM?

11:53:15 12              MR. FAZIO:  IN THAT HYPOTHETICAL, YES,

11:53:17 13      YOUR HONOR.

11:53:17 14              THE COURT:  REALLY?

11:53:20 15              MR. FAZIO:  YES, YOUR HONOR.  OUR

11:53:21 16      POSITION IS THAT DESIGN AROUNDS, THAT IS, THE

11:53:23 17      ABILITY TO AVOID COPYING THE PATENT, AS IF COPYING

11:53:26 18      ITSELF IS IRRELEVANT, THE ABILITY TO DESIGN AROUND

11:53:26 19      THE PATENT IS LIKEWISE IRRELEVANT.

11:53:30 20              AND THAT IS BUT ONE RFP OF THE 29 THAT

11:53:33 21      WE'RE TALKING ABOUT, YOUR HONOR.  IT'S RFP 16.  AND

11:53:36 22      -- BUT YOUR HONOR POSED AN INTERESTING QUESTION,

11:53:38 23      WHICH IS HAS THE PREDECESSOR ACTION DEALT WITH

11:53:40 24      SCHEMATIC DISCOVERY, SO TO SPEAK, THAT IS,

11:53:42 25      DISCOVERY ON COPYING OF OTHER ACCUSED DEVICES AND I

                                                              32

11:53:45 1   WOULD RESPECTFULLY SUBMIT THAT THE PREDECESSOR

11:53:47 2   COURT HAS DEALT WITH THAT, YOUR HONOR.

11:53:48 3            THE COURT:  THE PREDECESSOR COURT IS ONE

11:53:51 4   IN THE SAME.

11:53:52 5            MR. FAZIO:  YES, YOUR HONOR.  I MEANT THE

11:53:54 6   PREDECESSOR ACTION.  AND SPECIFICALLY THERE HAS AN

11:53:57 7   ORDER ISSUED BY JUDGE KOH ON MAY 18TH, 2011, AN

11:53:57 8   ORDER ON THE MOTION TO COMPEL.  AND SPECIFICALLY

11:54:02 9   APPLE WAS MOVING TO COMPEL COPYING DESIGNS RELATED

11:54:05 10  TO VARIOUS APPLE PRODUCTS, THE IPOD, THE IPAD, AND

11:54:10 11  THE IPAD 2 AND THE COURT SAID, CONSISTENT WITH THE

11:54:13 12  COURT'S CONCERNS HERE TODAY, THAT THIS IS GOING TO

11:54:16 13  ENTAIL A FAR RANGING INVESTIGATION TO ASCERTAIN

11:54:19 14  WHETHER OR NOT THESE DOCUMENTS EVEN EXIST IN THE

11:54:22 15  FIRST PLACE.

11:54:23 16           AND SPECIFICALLY OF THAT OPINION, IT'S

11:54:26 17  PAGES 3 AND 4 OF THE OPINION THAT ACTUALLY DISCUSS

11:54:28 18  THE BURDEN UPON SAMSUNG TO DO THAT.

11:54:33 19           THE COURT:  I HAVE A VAGUE RECOLLECTION

11:54:35 20  OF THE PRESIDING JUDGE WHO VISITED THIS ISSUE.

11:54:37 21           SO YOU'RE TELLING ME THAT IN THE PREVIOUS

11:54:41 22  PARALLEL CASE JUDGE KOH HAS ALREADY DETERMINED THE

11:54:43 23  APPROPRIATE SCOPE OF DISCOVERY WITH RESPECT TO

11:54:44 24  NON-ACCUSED FEATURES?

11:54:45 25           MR. FAZIO:  YES, YOUR HONOR, I'M SAYING

33

11:54:46  1   WITH RESPECT TO NON-ACCUSED FEATURES --

11:54:46  2          THE COURT:  IN THE P.I. CASE?

11:54:49  3          MR. FAZIO:  YES, YOUR HONOR.  THIS WAS

11:54:50  4   BEFORE RULE 26(F) DISCOVERY.  THERE WAS NO P.I.

11:54:53  5   MOTION BROUGHT, BUT THERE WAS TO REQUEST FOR

11:54:54  6   EXPEDITED DISCOVERY TO SUPPORT A FORTHCOMING P.I.

11:54:57  7   MOTION.

11:54:58  8          SO IN THAT CONTEXT THE COURT HELD THAT

11:55:00  9   THE UNDUE BURDEN SIMPLY OUTWEIGHED ANY ATTENUATED

11:55:04 10   RELEVANCY.  AND SO THAT WAS ANOTHER POINT THAT I

11:55:06 11   WANTED TO MAKE, YOUR HONOR.

11:55:07 12          NOW, SOMETHING THAT I DO WANT TO TALK

11:55:09 13   ABOUT IS OF THE 29 REQUESTS THAT ARE AT ISSUE IN

11:55:15 14   THIS MOTION TO COMPEL, 22 OF THEM DEAL WITH

11:55:17 15   MARKETING DOCUMENTS.  AND I JUST WANT TO HIT THIS

11:55:20 16   POINT BRIEFLY, BUT I HAVE TO KIND OF LAY IT OUT

11:55:23 17   THERE A LITTLE BIT.

11:55:24 18          INITIALLY IN APPLE'S MOVING PAPERS THEY

11:55:26 19   SAY WE NEED THESE MARKETING DOCUMENTS BECAUSE WE

11:55:29 20   HAVE TO SHOW THE HISTORY OF LITIGATION BETWEEN THE

11:55:31 21   PARTIES AND THAT APPLE AND SAMSUNG ARE COMPETITORS

11:55:33 22   IN THE SAME SMART PHONE MARKETPLACE.

11:55:35 23          AND WE CAME BACK IN THE OPPOSITION AND WE

11:55:38 24   SAID NO KIDDING.  I MEAN, WE'LL STIPULATE TO THAT.

11:55:40 25          THEN APPLE COMES BACK AND REPLIES AND

                                                        34

11:55:43 1    SAYS, WELL, WE HAVE THIS ENHANCED SALES THEORY AND

11:55:47 2    THIS ENHANCED SALES THEORY, ACCORDING TO APPLE,

11:55:50 3    SAYS THAT APPLE AND SAMSUNG COMPETE IN THE SAME

11:55:54 4    ECOSYSTEM.  THERE IS PREEXISTING STICKINESS IN THAT

11:55:57 5    ECOSYSTEM, MEANING IF SOMEONE IS ON THE ANDROID

11:56:00 6    PLATFORM, THEY'RE MORE LIKELY TO SAY ON THE ANDROID

11:56:03 7    PLATFORM, AND BECAUSE OF THAT PREEXISTING

11:56:05 8    STICKINESS, WHEN A CONSUMER LOOKS OUT TO THE

11:56:09 9    MARKETPLACE FOR A NEW PHONE, THEY'RE MORE LIKELY TO

11:56:10 10   PURCHASE THE GALAXY NEXUS BECAUSE THEY'RE ALREADY

11:56:13 11   ON THE ANDROID PLATFORM AND THAT WILL CAUSE

11:56:15 12   ENHANCED SALES.

11:56:16 13        NOW, THE PROBLEM WITH THAT THEORY THAT

11:56:18 14   THEY SET FORTH IN THEIR REPLY PAPERS IS THE FIRST

11:56:21 15   TIME WE HAVE HEARD IT AND IT'S INCONSISTENT WITH

11:56:23 16   WHAT THEY SAY IN THEIR P.I. PAPERS BECAUSE IN THEIR

11:56:26 17   P.I. PAPERS WHAT THEY SAY, AND THIS GOES BACK TO

11:56:29 18   DR. DELTORRO'S DEPOSITION, OR EXCUSE ME, HIS

11:56:32 19   DECLARATION.  THE THEORY OF IRREPARABLE HARM IN

11:56:36 20   APPLE'S P.I. PAPERS IS THAT THE PURCHASE OF GALAXY

11:56:39 21   NEXUS CAUSES THAT CONSUMER TO STICK TO THE ANDROID

11:56:42 22   PLATFORM AND IT'S THAT STICKINESS STARTING WITH THE

11:56:45 23   PURCHASE OF THAT GALAXY NEXUS THAT CAUSES THE

11:56:47 24   IRREPARABLE HARM THAT APPLE COMPLAINS OF.  SO IT'S

11:56:51 25   MUCH MORE OF A PROSPECTIVE ANALYSIS LOOKING

35

11:56:53 1    FORWARD.

11:56:53 2              NOW, THE REASON I'M BRINGING THIS UP IS

11:56:55 3    THAT I'M NOT TRYING TO PRE-ARGUE THE PRELIMINARY

11:56:57 4    INJUNCTION.  WHAT I'M TRYING TO POINT OUT IS --

11:56:59 5              THE COURT:  I'M SURE YOUR COUNSEL IN THAT

11:57:01 6    ARGUMENT WILL APPRECIATE THE POINTS YOU'RE MAKING.

11:57:03 7              I HEAR WHAT YOU'RE SAYING AND I THINK I

11:57:05 8    UNDERSTAND THE ECONOMIC RATIONALE OF APPLE'S

11:57:08 9    ARGUMENTS.  HELP ME OUT.  HOW DOES IT RELATE TO

11:57:12 10   THIS?

11:57:13 11             MR. FAZIO:  YES.  THE REASON IT RELATES

11:57:14 12   TO THIS, YOUR HONOR, IS WE SAW ONE THEORY OF

11:57:16 13   RELEVANCY IN THE MEET AND CONFER PAPERS, ANOTHER

11:57:18 14   THEORY IN THE MOTION TO COMPEL, AND YET ANOTHER ONE

11:57:20 15   IN THE REPLY AND ALL OF WHICH ARE INCONSISTENT WITH

11:57:23 16   THE P.I. PAPERS.

11:57:24 17             AND I RESPECTFULLY SUBMIT THAT THE REASON

11:57:26 18   THAT APPLE CANNOT LAND ON A CONSISTENT THEORY OF

11:57:29 19   RELEVANCY IS BECAUSE THESE DOCUMENTS ARE NOT

11:57:30 20   RELEVANT TO THEIR P.I. MOTION.

11:57:32 21             THE COURT:  WELL, ARE THEIR THEORIES

11:57:32 22   INCONSISTENT OR ADDITIVE?  I MEAN, IT WOULD SEEM TO

11:57:35 23   ME, I DON'T WANT TO BE AN ECONOMIST FOR APPLE HERE,

11:57:37 24   BUT IF I WERE, I MIGHT ARGUE THAT A PARTY WHICH IS

11:57:41 25   STUCK TO ANDROID BY VIRTUE OF A PRIOR PURCHASE IS

                                                              36

11:57:44  1    GOING TO FURTHER STICK ITSELF WITH RESPECT TO

11:57:46  2    FUTURE PURCHASES, RIGHT?

11:57:49  3            MR. FAZIO:  SURE, YOUR HONOR, I COULD SEE

11:57:50  4    THAT.  BUT THE ONE THAT I'M HAVING TROUBLE

11:57:52  5    RECONCILING EVEN MORE SO THAN THAT IS WHERE THEY

11:57:55  6    SAID IN THEIR MOVING PAPERS WE NEED MARKETING

11:57:58  7    DOCUMENTS TO SHOW THE HISTORY OF LITIGATION BETWEEN

11:57:59  8    THE PARTIES AND THAT THEY GENERALLY COMPETE IN THIS

11:58:02  9    ECOSYSTEM AS OPPOSED TO THE PREEXISTING ENHANCED

11:58:05 10    SALES THEORY, THE PREEXISTING STICKINESS ENHANCED

11:58:09 11    SALES THEORY THAT THEY CREATE IN THEIR REPLY

11:58:10 12    PAPERS.

11:58:11 13            I'M NOT SURE THAT THOSE HAVE ANYTHING TO

11:58:13 14    DO WITH EACH OTHER.

11:58:14 15            AND SO, YOU KNOW, THAT'S WHY WE SEE THIS

11:58:17 16    MORPHING OF THEORIES OVER TIME IS BECAUSE WHAT WE

11:58:20 17    HAVE HERE IS -- I MEAN, IT'S NO SECRET.  SAMSUNG'S

11:58:24 18    LEGAL TEAM IS TAKEN OUT OF THE OFFICE FOR TWO WEEKS

11:58:26 19    TO GO TO KOREA, TEXAS AND WHO KNOWS WHERE ELSE, TO

11:58:29 20    INTERVIEW THOUSANDS OF PEOPLE FOR DOCUMENTS THAT

11:58:31 21    APPLE DOES NOT REALLY NEED.  THE EFFECT IS THAT WE

11:58:33 22    CANNOT WORK ON THE OTHER ASPECTS OF THE CASE

11:58:35 23    BECAUSE WE'RE OUT GATHERING ALL OF THESE OTHER

11:58:38 24    THINGS.

11:58:38 25            THE COURT:  YOU ALL SEEM TO SPAWN NEW

37

11:58:41 1    TALENT EVERY TIME, SO THE LACK OF CAPACITY DOESN'T

11:58:45 2    MOVE ME VERY MUCH.

11:58:48 3            MR. FAZIO:  I WANTED TO TALK ABOUT

11:58:49 4    CONSUMER CONFUSION VERY BRIEFLY, IF I MAY, YOUR

11:58:52 5    HONOR.

11:58:52 6            THE COURT:  SURE.

11:58:53 7            MR. FAZIO:  THIS IS RFP NUMBER 91.  AND,

11:58:57 8    AGAIN, I'M TRYING TO TETHER THIS BACK TO THE

11:58:59 9    INDIVIDUAL RFP'S.  YOUR HONOR, THIS IS NOT A CASE

11:59:02 10   THAT INVOLVES DESIGN CLAIMS.  IT'S NOT A CASE THAT

11:59:04 11   INVOLVES TRADEMARK CLAIMS.

11:59:04 12           THE COURT:  THESE ARE UTILITY PATENTS?

11:59:08 13           MR. FAZIO:  THESE ARE A UTILITY PATENTS

11:59:08 14   WHICH ARE AT ISSUE ON THE P.I. MOTION.  CONSUMER

11:59:09 15   CONFUSION HAS ABSOLUTELY NO PLACE IN THIS CASE,

11:59:11 16   RESPECTFULLY, YOUR HONOR.

11:59:12 17           AND EVEN IF IT DID, EVEN IF THERE IS SOME

11:59:14 18   ATTENUATED RELEVANCE, WE SUBMITTED THE DECLARATION

11:59:17 19   OF RUSSELL WILKINS THAT SHOWS THAT THESE DOCUMENTS

11:59:20 20   WILL TAKE APPROXIMATELY A MONTH TO PRODUCE IN ORDER

11:59:22 21   TO GATHER THEM AND TO GO THROUGH SAMSUNG SYSTEMS.

11:59:25 22           SO I JUST WANTED --

11:59:25 23           THE COURT:  IF I COULD STOP YOU ON THAT

11:59:27 24   POINT.

11:59:27 25           MR. FAZIO:  YES, YOUR HONOR.

                                                    38

11:59:27  1           THE COURT:  YOU RAISE AN INTERESTING

11:59:29  2     QUESTION, AND IT'S ONE THAT I HAD DURING THE P.I.

11:59:31  3     PHASE OF THE PARALLEL CASE.

11:59:34  4           IN CONSIDERING THE RELATIVE BENEFITS

11:59:39  5     INCURRED AND STRIKING A BALANCE ON ORDERING

11:59:41  6     DISCOVERY OR DENYING THE REQUEST FOR AN ORDER, IS

11:59:46  7     IT APPROPRIATE, AND, INDEED, ISN'T IT ESSENTIAL

11:59:48  8     THAT I CONSIDER THE SCHEDULE THAT HAS BEEN PUT INTO

11:59:51  9     PLACE AND THE REALITY THAT COURTS CAN ISSUE ORDERS

11:59:54 10     ALL THEY WANT, BUT IF A PARTY HAS X NUMBER OF DAYS

11:59:57 11     TO GET THIS STUFF PRODUCED AND IT JUST AIN'T GOING

12:00:00 12     TO HAPPEN FOR FOUR MONTHS, TO PUT IT BLUNTLY,

12:00:01 13     SHOULDN'T I GIVE THAT SOME THOUGHT?

12:00:03 14           MR. FAZIO:  ABSOLUTELY.  I THINK IT'S

12:00:05 15     CRITICAL THAT YOUR HONOR GIVE THAT THE UTMOST

12:00:07 16     CONSIDERATION.

12:00:07 17           THE COURT:  SO THAT I AVOID OR ANY COURT

12:00:08 18     AVOIDS EFFECTIVELY AN ACT OF NULLITY.  IT SOMEWHAT

12:00:13 19     UNDERMINES THIS COURT'S AUTHORITY I WOULD THINK TO

12:00:15 20     ISSUE ORDERS THAT WE ALL KNOW THAT COULD NEVER BE

12:00:18 21     COMPLIED WITH, RIGHT?

12:00:19 22           MR. FAZIO:  ABSOLUTELY, ABSOLUTELY.  I

12:00:22 23     MEAN, THE PROBLEM THERE IS THAT IF YOUR HONOR WERE

12:00:24 24     TO ISSUE AN ORDER TO SAY, OKAY, SAMSUNG, GO OUT AND

12:00:31 25     INTERVIEW THE 1200 PEOPLE THAT ARE SET FORTH IN

                                                         39

12:00:32 1    MR. QUAN'S DECLARATION AND THE 400 PEOPLE IN

12:00:34 2    MR. PERSTEVI'S DECLARATION AND DO IT ALL IN THE

12:00:36 3    NEXT WEEK, I THINK WHAT WE WOULD PROBABLY PUT IN IN

12:00:37 4    A WEEK'S TIME IS A LONG SUBMISSION SAYING HOW WE

12:00:40 5    DID EVERYTHING POSSIBLE AND WE STILL COULD NOT

12:00:43 6    COMPLY WITH THE COURT'S ORDER BECAUSE IT'S NOT IN

12:00:45 7    THE REALM OF THE POSSIBILITY.

12:00:47 8            I MEAN, THERE ARE LIMITS AT THE END OF

12:00:50 9    THE DAY IN TERMS OF WHAT OUR RESOURCES --

12:00:50 10           THE COURT:  EVEN WITH SAMSUNG AND APPLE?

12:00:55 11           MR. FAZIO:  HOWEVER VAST THOSE RESOURCES

12:00:57 12   MAY BE, YOUR HONOR, THERE ARE LIMITS.

12:00:57 13           NOW I WANT TO TALK ABOUT THE COMMON

12:00:59 14   INTEREST PRIVILEGE, YOUR HONOR, BECAUSE THAT WAS

12:01:00 15   SOMETHING THAT CAME UP.

12:01:03 16           NOW, THIS WAS AN ISSUE -- FIRST OF ALL,

12:01:05 17   THE MEET AND CONFER REQUIREMENT, AT LEAST TO

12:01:08 18   SAMSUNG, IT'S NOT A PROCEDURAL REQUIREMENT.  IT'S A

12:01:10 19   SUBSTANTIVE REQUIREMENT.  WE HAD A TWO-AND-A-HALF

12:01:13 20   HOUR IN-PERSON MEET AND CONFER.  NO DISRESPECT TO

12:01:14 21   APPLE'S COUNSEL.

12:01:14 22           THE COURT:  TWO-AND-A-HALF HOUR MEET AND

12:01:15 23   CONFER?

12:01:16 24           MR. FAZIO:  TWO-AND-A-HALF HOUR IN-PERSON

12:01:18 25   MEET AND CONFER, YOUR HONOR.  AND THERE WERE

40

12:01:19 1    EXACTLY TWO SENTENCES SAID IN THAT TWO-AND-A-HALF

12:01:22 2    HOURS ABOUT THE COMMON INTEREST PRIVILEGE.

12:01:24 3            THE FIRST WAS BY SAMSUNG SAYING THAT WE

12:01:26 4    INTEND TO STAND ON THE PRIVILEGE.  THE SECOND WAS

12:01:28 5    FROM APPLE SAYING WE WILL HAVE TO THINK ABOUT THAT

12:01:30 6    AND GET BACK TO YOU.  AND THAT WAS THE EXTENT OF

12:01:32 7    IT, YOUR HONOR, UNTIL WE SAW IT APPEAR IN THEIR

12:01:35 8    MOTION TO COMPEL.

12:01:35 9            AND THAT'S SIGNIFICANT, YOUR HONOR,

12:01:36 10   BECAUSE AS I STAND HERE TODAY, WE DO NOT UNDERSTAND

12:01:39 11   WHERE APPLE WANTS TO TAKE THIS ARGUMENT.  AND I CAN

12:01:41 12   TELL THIS COURT DEFINITIVELY THAT IF APPLE'S

12:01:45 13   CONCERN IS THAT WE'RE NOT GOING TO PRODUCE

12:01:46 14   PREFILING COMMUNICATIONS BETWEEN SAMSUNG AND GOOGLE

12:01:49 15   REGARDING DEVELOPMENT OR DESIGN OF ANDROID 4.0 ICE

12:01:55 16   CREAM SANDWICH, THEN APPLE'S CONCERNS CAN BE PUT TO

12:01:59 17   REST BECAUSE WE WILL PRODUCE THOSE DOCUMENTS AND WE

12:02:01 18   WILL NOT STAND ON THE COMMON INTEREST PRIVILEGE.

12:02:04 19            IF, HOWEVER --

12:02:04 20            THE COURT:  WELL, LET ME ASK YOU, YOU SAY

12:02:05 21   YOU WILL, HAVE YOU?

12:02:06 22            MR. FAZIO:  YES, YOUR HONOR, WE HAVE.  AS

12:02:07 23   TO THE FOUR ACCUSED FEATURES IN THE P.I. MOTION, WE

12:02:11 24   HAVE.

12:02:11 25            BUT IF, HOWEVER, APPLE SAYS, WELL, WE

41

12:02:12  1    WANT TO GET TO POST-LITIGATION COMMUNICATIONS

12:02:15  2    BETWEEN SAMSUNG'S LEGAL TEAM AND GOOGLE'S LEGAL

12:02:18  3    TEAM ABOUT HOW THEY'RE GOING TO DEFEND THIS

12:02:20  4    LAWSUIT, AS TO THAT, YOUR HONOR, WE WOULD STAND ON

12:02:22  5    THE COMMON INTEREST PRIVILEGE AND THAT'S WHY WE

12:02:26  6    THINK THAT THIS ISSUE IS NOT RIPE FOR ADJUDICATION

12:02:29  7    BECAUSE WE ASKED --

12:02:30  8            THE COURT:  DID YOU HAVE A CHANCE TO

12:02:31  9    DISCUSS, FOR EXAMPLE, A MUTUAL STAND DOWN WHERE YOU

12:02:35 10    WOULD BE PROTECTED FROM PRODUCING THOSE MATERIALS

12:02:39 11    POST-FILING JUST AS APPLE WOULD -- IT WOULD BE

12:02:40 12    DISCUSSED, FOR EXAMPLE, WHETHER THERE'S A LOGGING

12:02:43 13    REQUIREMENT?

12:02:45 14            MR. FAZIO:  YES, YOUR HONOR, INDIRECTLY

12:02:45 15    WITH RESPECT TO THE LOGGING REQUIREMENT, AND YOUR

12:02:47 16    HONOR RAISED THE QUESTION PREVIOUSLY WHERE THESE

12:02:49 17    MATERIALS ARE ON A PRIVILEGE LOG.  AND THE REASON

12:02:52 18    THEY'RE NOT THERE IS BECAUSE THE PROTOCOL AS AGREED

12:02:55 19    TO BY THE PARTIES IS THAT POST-FILING PRIVILEGED

12:02:56 20    COMMUNICATIONS NEED NOT BE LISTED.

12:02:58 21            AND THAT'S WHAT WE'RE CONTENDING THE

12:03:00 22    COMMON INTEREST APPLIES TO, AND SO I THINK THAT

12:03:04 23    CLEARS THAT UP.

12:03:04 24            THE OTHER ISSUE WAS THAT WE DID THIS ON

12:03:06 25    AN ABBREVIATED BRIEFING SCHEDULE AND I WANT TO NOTE

                                                            42

12:03:09   1   THAT THERE WAS A SUGGESTION IN APPLE'S MOVING

12:03:12   2   PAPERS THAT WE WERE TRYING TO RUN OUT THE CLOCK,

12:03:14   3   AND I WOULD, RESPECTFULLY, THAT IF WE ARE AGREEING

12:03:17   4   TO AN EXPEDITED BRIEFING SCHEDULE, THAT SURE IS A

12:03:18   5   FUNNY WAY TO TRY TO RUN OUT THE CLOCK BECAUSE WE

12:03:21   6   AGREED TO PUT IN OUR OPPOSITION BRIEF ON MINIMAL

12:03:24   7   TIME.

12:03:24   8          AND BECAUSE WE AGREED TO PUT IT IN ON

12:03:26   9   MINIMAL TIME, ONE THING WE UNFORTUNATELY DID NOT

12:03:28  10   HAVE THE TIME TO DO WAS TO GO AND TRACK DOWN A

12:03:31  11   COMMON INTEREST AGREEMENT BETWEEN SAMSUNG AND

12:03:33  12   GOOGLE.

12:03:33  13          AND I CAN REPRESENT TO YOUR HONOR HERE

12:03:35  14   TODAY THAT THERE IS SUCH AN AGREEMENT.  IT WAS NOT

12:03:37  15   SOMETHING THAT WAS JUST INKED OUT IN THE HALLWAY

12:03:39  16   FOR PURPOSES OF ME SAYING THERE WAS AN AGREEMENT,

12:03:42  17   BUT THERE IS ONE.

12:03:43  18          AND IT'S SOMETHING THAT DID NOT APPEAR IN

12:03:45  19   OUR PAPERS BECAUSE WE SIMPLY DID NOT HAVE TIME TO

12:03:48  20   TRACK IT DOWN.

12:03:48  21          SO THAT'S ALSO SOMETHING I WANT TO POINT

12:03:52  22   OUT BECAUSE I THINK IT'S EMBLEMATIC OR DANGEROUS OF

12:03:56  23   TRYING TO BRIEF SOMETHING THAT IS SUBSTANTIAL AS

12:03:58  24   THIS ON AN ABBREVIATED TIME.

12:03:58  25          THE COURT:  HAS A COPY OF THAT AGREEMENT

43

12:03:59  1    BEEN PRODUCED TO APPLE?

12:04:00  2          MR. FAZIO:  NO, YOUR HONOR.  WE'RE

12:04:02  3    ASSERTING THE COMMON INTEREST PRIVILEGE OVER THE

12:04:04  4    COMMON INTEREST AGREEMENT.

12:04:05  5          THE COURT:  WHICH WOULD REQUIRE ME TO

12:04:06  6    LOOK AT THE AGREEMENT WHICH YOU SAY IS SUBJECT

12:04:09  7    TO --

12:04:10  8          MR. FAZIO:  YES, YOUR HONOR.

12:04:11  9          THE COURT:  IS THAT AN APPROPRIATE

12:04:12 10    POSITION TO TAKE THAT THE COMMON INTEREST AGREEMENT

12:04:14 11    ITSELF IS ENTITLED TO THE PROTECTIONS OF THAT

12:04:16 12    DOCUMENT?

12:04:16 13          MR. FAZIO:  YOUR HONOR, I CONSIDER -- WE

12:04:17 14    CAN CONFER INTERNALLY.

12:04:19 15          THE COURT:  THE WHOLE POINT OF HAVING A

12:04:20 16    DOCUMENT IS TO ALLOW THE OTHER SIDE TO EVALUATE

12:04:23 17    WHETHER IT'S A LEGITIMATE CLAIM OR NOT, HOW BROAD

12:04:25 18    THAT CLAIM CAN GO?  HOW CAN YOU DO THAT IF YOU

12:04:27 19    DON'T GET TO SEE THE DOCUMENT?

12:04:31 20          MR. FAZIO:  SURE, YOUR HONOR.  AND I

12:04:32 21    THINK TO SOME EXTENT THERE'S INFORMATION CONTAINED

12:04:34 22    IN THE DOCUMENT WITHOUT GETTING TOO SPECIFIC.

12:04:36 23          THE COURT:  I HAVE HEARD ALL KINDS OF

12:04:38 24    CONCERNS, BUT I WOULD ASSUME AS TALENTED LAWYERS AS

12:04:40 25    YOU ALL ARE, YOU ALL DRAFTED THAT DOCUMENT WITH A

44

12:04:44  1    VERY SPECIFIC EYE THAT IF SOME CRAZY JUDGE ORDERED

12:04:46  2    YOU TO PRODUCE IT, RIGHT?

12:04:47  3              MR. FAZIO:  I DIDN'T DRAFT THE DOCUMENT,

12:04:49  4    YOUR HONOR, SO I CAN'T SAY THAT, BUT THERE IS SUCH

12:04:51  5    AN AGREEMENT, YOUR HONOR.  THERE IS SUCH AN

12:04:53  6    AGREEMENT.

12:04:54  7              THE COURT:  I MIGHT SUGGEST THAT YOU

12:04:55  8    REEVALUATE THAT POSITION.  I DON'T HAVE A MOTION

12:04:58  9    BEFORE ME ON THAT, BUT THAT'S SOMETHING THAT I

12:05:00 10    WOULD CONSIDER.

12:05:04 11              MR. FAZIO:  YES, YOUR HONOR.  LET ME TAKE

12:05:05 12    A QUICK LOOK AT MY NOTES TO SEE IF I HAVE ANYTHING

12:05:08 13    FURTHER.

12:05:08 14              THE COURT:  GO AHEAD.

12:05:09 15              MR. FAZIO:  BARRING ANY QUESTIONS FROM

12:05:10 16    THE COURT, YOUR HONOR, THAT'S ALL I HAVE.

12:05:12 17              THE COURT:  THANK YOU.  ANY REBUTTAL ON

12:05:14 18    THIS POINT BEFORE WE TURN TO THE GOOGLE ISSUES?

12:05:16 19              MR. LYON:  JUST VERY BRIEFLY, YOUR HONOR.

12:05:17 20    I JUST WANTED TO POINT OUT A COUPLE OF THINGS THAT

12:05:19 21    COUNSEL SAID.

12:05:20 22              THEY TALKED ABOUT PRODUCING THE FOUR

12:05:23 23    ACCUSED FEATURES ON THE PRELIMINARY INJUNCTION

12:05:23 24    MOTION FOR THE ICE CREAM SANDWICH, AND THAT MAY BE

12:05:28 25    TRUE.  THEY MAY HAVE PRODUCED ALL OF THAT AT THIS

                                                              45

12:05:28 1    POINT.

12:05:28 2              THE CONCERN I HAVE IS THE CATEGORIES THAT

12:05:30 3    WE'RE TALKING ABOUT IS WHERE IT GOES BEYOND ICE

12:05:32 4    CREAM SANDWICH.  THESE FEATURES MAY HAVE BEEN

12:05:34 5    DEVELOPED IN GINGERBREAD OR IN A DIFFERENT PRODUCT.

12:05:38 6              SO I DON'T THINK IT SOLVES THE ISSUE OF

12:05:39 7    GOING TO OTHER PRODUCTS.

12:05:41 8              THE COURT:  CAN I ASK YOU WHETHER WE'RE

12:05:42 9    TALKING ABOUT A FEATURE THAT MAY HAVE BEEN

12:05:44 10   INTRODUCED IN GINGERBREAD OR ONE THAT WAS FIRST

12:05:47 11   INTRODUCED IN ICE CREAM SANDWICH?  CAN I ASK YOU TO

12:05:50 12   THE BEST OF YOUR KNOWLEDGE, AND I UNDERSTAND YOU'RE

12:05:52 13   LOOKING TO GET MORE INFORMATION ON THIS SUBJECT.

12:05:54 14   TO THE BEST OF YOUR KNOWLEDGE, IS THE FUNCTIONALITY

12:05:56 15   THAT IS REALLY ACCUSED HERE, FUNCTIONALITY WHICH IS

12:05:59 16   DEVELOPED BY GOOGLE AND WHICH IS SHIPPED TO SAMSUNG

12:06:05 17   BY -- ENTERED WITHOUT ANY FURTHER MODIFICATION BY

12:06:07 18   SAMSUNG?

12:06:07 19             MR. LYON:  IT'S OUR POSITION IT'S NOT THE

12:06:09 20   CASE.

12:06:09 21             THE COURT:  YOU BELIEVE THERE MAY BE SOME

12:06:11 22   MODIFICATIONS AT THE SOURCE CODE LEVEL?

12:06:13 23             MR. LYON:  WELL, LET'S TAKE IT FURTHER.

12:06:14 24   FOR THE GALAXY NEXUS THERE MAY NOT BE MODIFICATION

12:06:18 25   AT THE SOURCE CODE LEVEL BECAUSE IT IS OUR

                                                           46

12:06:18 1    UNDERSTANDING THAT THE WAY THIS WORKS THEY HAVE A

12:06:20 2    LEAD DEVICE.  THE SOURCE CODE IS PROBABLY GIVEN TO

12:06:25 3    SAMSUNG AND THEY'RE INVOLVED IN THE DESIGN.  WE

12:06:27 4    DON'T THINK THAT THEY'RE JUST SITTING BACK AND

12:06:29 5    TAKING THE SOURCE CODE, BUT THEY MAY NOT MODIFY IT

12:06:32 6    FOR PURPOSES OF THIS ONE DEVICE AS THEY DO IN OTHER

12:06:35 7    DEVICES WHEREAS SOMETIMES THEY MODIFY THE ANDROID

12:06:39 8    PLATFORM.

12:06:39 9         SO THAT'S OUR UNDERSTANDING.  AND IT'S,

12:06:41 10   OF COURSE, IMPERFECT AND WE HAVE NOT SEEN THE

12:06:43 11   DOCUMENTS YET.

12:06:43 12        BUT I WOULD SAY THAT THEY PUT A LOT OF

12:06:45 13   THESE SAME ISSUES IN PLAY IN THEIR OPPOSITION AS

12:06:47 14   WELL IN THE SENSE THAT THEIR OPPOSITION ARGUES THAT

12:06:50 15   A LOT OF THESE FEATURES ARE OUT THERE ALREADY AND

12:06:53 16   WE WAITED TOO LONG TO SUE ON THESE PATENTS AND SOME

12:06:55 17   OF WHICH THESE ISSUES ARE LITERALLY A COUPLE OF

12:06:57 18   MONTHS BEFORE WE FILED.

12:06:58 19        AND THE PROBLEM IS EVEN THOUGH GALAXY

12:07:01 20   NEXUS CAME OUT EARLIER, THEY'RE SAYING WE SHOULD

12:07:03 21   HAVE SUED ON PREDECESSOR PATENTS OR PARENT PATENTS

12:07:06 22   FOR THE SAME FEATURES ON OTHER PRODUCTS.

12:07:08 23        SO TO THE EXTENT THAT'S THE CASE, WE

12:07:09 24   OUGHT TO BE ABLE TO SEE WHAT IS THEIR DEVELOPMENT

12:07:11 25   UNDER THOSE FEATURES IN THE OTHER PRODUCTS AS WELL.

47

12:07:13 1    SO I THINK IT ALL PLAYS IN.

12:07:14 2            THE COURT:  ARE THEY ARGUING THAT SOMEHOW

12:07:17 3    THEY'RE PRECLUDED FROM ASSERTING A RECENTLY ISSUED

12:07:20 4    PATENT BECAUSE AN EARLIER PATENT IN THE FAMILY MAY

12:07:23 5    HAVE ALSO READ ON OTHER VERSIONS IN THE PRODUCT?

12:07:27 6            MR. LYON:  THAT'S CORRECT, THAT'S MY

12:07:28 7    UNDERSTANDING.

12:07:28 8            THE COURT:  OKAY.

12:07:29 9            MR. LYON:  SO I THINK THE ONLY OTHER

12:07:30 10   POINT I WOULD MAKE IS THAT WE HAVE ACTUALLY, AS I

12:07:32 11   WAS REMINDED, WE HAVE ACTUALLY SEEN EVIDENCE OF

12:07:34 12   COPYING OF OTHER FEATURES, NOT JUST THESE ACCUSED

12:07:38 13   FEATURES.  FOR EXAMPLE, THE PACKAGING STUFF THAT

12:07:40 14   HAS BEEN FRONT AND CENTER IN THAT CASE, BUT BEYOND

12:07:44 15   THAT I THINK --

12:07:45 16           THE COURT:  COULD WE TURN TO THE GOOGLE

12:07:48 17   ISSUE?

12:07:48 18           MR. LYON:  LET'S TURN TO THE GOOGLE

12:07:50 19   ISSUE.

12:07:50 20           NOW, THIS ONE IS A DIFFERENT STORY.  THIS

12:07:52 21   IS -- I THINK IT'S IMPORTANT TO STEP BACK A LITTLE

12:07:54 22   BIT.  GOOGLE IS NOT BEING SUBPOENAED HERE.  IT'S

12:07:57 23   JUST SOME PARTIES HAVEN'T HAD SOME DOCUMENTS.

12:07:59 24   THEY'RE NOT JUST A DISINTERESTED THIRD PARTY HERE.

12:08:02 25           THE COURT:  THE COURT HAS BEEN MADE AWARE

                                                              48

12:08:04 1    OF THE RELATIONSHIP OF THEIR INTEREST IN THIS CASE

12:08:06 2    SO I TAKE YOUR POINT.

12:08:07 3              MR. LYON:  THEY'RE VERY ACTIVE IN THIS

12:08:09 4    CASE.  THE ONE THING IN THE OPPOSITION, AND I THINK

12:08:12 5    WE PUT IT IN OUR PAPERS, YOU SAW THE DECLARATIONS.

12:08:14 6    THEY SUBMITTED FIVE ENGINEERING DECLARATIONS AS

12:08:16 7    PART OF SAMSUNG'S OPPOSITION.  THAT'S OVER TWICE

12:08:18 8    THE NUMBER OF SAMSUNG'S DECLARATIONS THAT WENT IN.

12:08:22 9    SO THEY'RE VERY ACTIVE.

12:08:23 10             THIS IS SOMETHING THAT THEY HAVE BEEN

12:08:24 11   COORDINATING VERY STRONGLY WITH SAMSUNG NOW.  THEY

12:08:26 12   HAVE KNOWN ABOUT THIS FOR QUITE A WHILE.

12:08:30 13             WE SERVED THE SUBPOENA -- LET ME STEP

12:08:33 14   BACK AND TELL YOU THE STORY.  THERE ARE A NUMBER OF

12:08:36 15   DOCUMENTS OUT THERE AND BLOG REPORTS AND ALL TALK

12:08:39 16   ABOUT HOW THE ANDROID OPEN SOURCE 4.01 WAS THE

12:08:43 17   SOURCE CODE GOING INTO THE GALAXY NEXUS.

12:08:46 18             AND WE ACTUALLY -- I HAVE A BRIEFING BOOK

12:08:49 19   THAT I CAN BRING UP AND SHOW YOU IF YOU WOULD BE

12:08:50 20   INTERESTED, YOUR HONOR, BUT I REPRESENT THAT IS

12:08:51 21   ACTUALLY TRUE.  SO WE WENT OUT AND LOOKED AT THE

12:08:54 22   OPEN SOURCE CODE AND DID OUR ANALYSIS FOR THE

12:08:56 23   PRELIMINARY INJUNCTION ON THAT SOURCE CODE.

12:08:57 24             GOOGLE ENGINEERS ARE NOW SAYING, WELL,

12:09:01 25   THE SOURCE CODE THAT IS IN THE GALAXY NEXUS IS

49

12:09:03 1    DIFFERENT.  BUT THEY WON'T TELL US HOW IT'S

12:09:05 2    DIFFERENT.  THEY DON'T ACTUALLY POINT OUT ANY

12:09:07 3    SIGNIFICANT DIFFERENCES FOR THE PURPOSES OF

12:09:08 4    ANALYSIS, BUT THEY SAY IT'S DIFFERENT.

12:09:10 5              AND SO WHAT WE HAVE DONE IS WE HAVE GONE

12:09:11 6    OUT AND ASKED SAMSUNG, GIVE US THE SOURCE CODE THAT

12:09:13 7    WENT INTO YOUR PHONE.

12:09:14 8              AND WHEN THEY RESPONDED, THEY INITIALLY

12:09:16 9    SAID WE DON'T HAVE IT.  WE DID A MEET AND CONFER

12:09:19 10   IMMEDIATELY.

12:09:19 11             THE COURT:  HOW COULD THEY NOT HAVE IT?

12:09:21 12             MR. LYON:  THEY CLAIM TO NOT HAVE THE

12:09:23 13   SOURCE CODE FOR THE ACTUAL CODE THAT GOES IN THE

12:09:25 14   PHONE.  ALL THEY DID IS --

12:09:28 15             THE COURT:  SO THEIR CLAIM TO YOU WAS

12:09:30 16   ONLY THAT OBJECT CODE WAS DELIVERED AND NO SOURCE?

12:09:33 17             MR. LYON:  CORRECT.  AND SO ON APRIL 3RD,

12:09:35 18   WE HAVE A MEET AND CONFER LETTER BACK FROM COUNSEL

12:09:37 19   FOR SAMSUNG SAYING WE DON'T HAVE IT AND WE TOLD YOU

12:09:40 20   THAT WE DON'T HAVE IT, AND WE IMMEDIATELY WENT OUT

12:09:43 21   AND SERVED THE SUBPOENA ON APRIL 5TH.

12:09:45 22             THAT'S TWO MONTHS BEFORE THE HEARING.

12:09:47 23   AND TO DATE WE HAVE NOT A SINGLE DOCUMENT FROM

12:09:50 24   GOOGLE.  WE HAVE NOT BEEN ABLE TO INSPECT A SINGLE

12:09:52 25   LINE OF SOURCE CODE, AND WE HAVE NOTHING.

50

12:09:54 1          THEY TOLD US, IN EFFECT, THE NUMBER OF

12:09:57 2     ROAD BLOCKS THAT THEY PUT IN FRONT.  ONE IS THAT

12:09:59 3     THEY SAID THAT, OH, WE'LL GIVE YOU SOME DOCUMENTS

12:10:01 4     BUT WE CAN'T GIVE THEM TO YOU BEFORE THE P.I.

12:10:04 5     HEARING OR WE CAN'T GIVE THEM TO THE BEFORE YOU

12:10:06 6     REPLY BRIEF.

12:10:07 7          IN FACT, IT WAS ILLUSTRATIVE AND WE WERE

12:10:10 8     HAVING A MEET AND CONFER WITH COUNSEL FOR GOOGLE

12:10:11 9     BEFORE THIS HEARING JUST NOW AND COUNSEL FOR GOOGLE

12:10:14 10    SAID, LOOK, I JUST CAN'T GET YOU ANYTHING BEFORE

12:10:16 11    THE REPLY BRIEF.

12:10:17 12         AND WE SAID, WELL, WHY CAN'T YOU GIVE IT

12:10:19 13    TO US?  AND COUNSEL SAID, WELL, WHY IS THAT

12:10:21 14    IMPORTANT?  WELL, WE MIGHT BE ABLE TO USE IT FOR

12:10:24 15    PART OF THE HEARING.  AND, OH, WELL, I DIDN'T THINK

12:10:25 16    YOU COULD DO THAT AT ALL.

12:10:27 17         SO IT'S CLEAR THAT THEY'RE TRYING TO

12:10:29 18    PREVENT US FROM HAVING IT FOR OUR MOVING PAPERS AND

12:10:32 19    BEING ABLE TO USE IT IN THIS CASE WHEN, IN FACT,

12:10:34 20    WHICH I SUBMIT WE WOULD MUCH RATHER HAVE IT FOR OUR

12:10:37 21    REPLY BRIEF, BUT IF WE GET THE INFORMATION BEFORE

12:10:39 22    THE HEARING WE WOULD CERTAINLY WANT TO BE ABLE TO

12:10:41 23    USE IT AS WELL.

12:10:42 24         SO WE NEED TO HAVE SOME AS FAST AS THEY

12:10:44 25    CAN, AND OBVIOUSLY WE WOULD PREFER TO HAVE IT AS BY

                                                            51

12:10:47  1    EARLY NEXT WEEK SO WE CAN ACTUALLY LOOK AT IT AND

12:10:49  2    USE IT.

12:10:50  3              THE COURT:  SO LET ME TRY AND UNDERSTAND

12:10:51  4    THE SITUATION THAT YOU FACE.  IN SUPPORT OF

12:10:58  5    SAMSUNG'S OPPOSITION TO YOUR MOTION FOR P.I.,

12:11:00  6    GOOGLE HAS SUBMITTED FIVE SEPARATE DECLARATIONS?

12:11:03  7              MR. LYON:  CORRECT.

12:11:07  8              THE COURT:  AS TO EACH OF THOSE FIVE

12:11:08  9    DECLARANTS, GOOGLE HAS NOT PRODUCED A SINGLE

12:11:12 10    DOCUMENT IN RESPONSE?

12:11:14 11              MR. LYON:  CORRECT.

12:11:14 12              THE COURT:  ARE THEY OFFERING THESE

12:11:16 13    INDIVIDUALS FOR DEPOSITION?

12:11:16 14              MR. LYON:  THEY'RE ACTUALLY FORCING US TO

12:11:17 15    TAKE THE DEPOSITIONS OF THESE INDIVIDUALS WITHOUT

12:11:19 16    HAVING THE DOCUMENTS FIRST.

12:11:20 17              NOW, WE HAVE NOW SINCE, I THINK, MADE AN

12:11:23 18    ARRANGEMENT SO THAT WE WILL BE ABLE TO TAKE THESE

12:11:27 19    DEPOSITIONS AND TAKE THEM FOR SO MANY HOURS AND

12:11:31 20    THEN WE TAKE THEM WHEN THEY PRODUCE THE DOCUMENTS.

12:11:32 21              BUT THE WAY GOOGLE IS TELLING IT TO US

12:11:34 22    NOW IS THAT THEY DON'T EXPECT TO HAVE THESE

12:11:36 23    DOCUMENTS PRODUCED, PERHAPS SOME OF THEM BEFORE THE

12:11:38 24    HEARING, BUT THERE WILL BE AT LEAST SOME OF THEM

12:11:40 25    THAT DON'T COME UNTIL AFTER THE HEARING AND THEY

52

12:11:42  1    WANT TO WAIT UNTIL AFTER THEY HAVE COMPLETED THEIR

12:11:45  2    DOCUMENT PRODUCTION BEFORE THEY'LL PRODUCE.

12:11:47  3              THE COURT:  YOU SERVED THE SUBPOENA ON

12:11:49  4    APRIL 5TH?

12:11:49  5              MR. LYON:  YES.

12:11:50  6              THE COURT:  AND YOUR REPLY IS DUE MAY

12:11:52  7    14TH?

12:11:52  8              MR. LYON:  CORRECT.

12:11:53  9              THE COURT:  AND THE HEARING IS SET FOR

12:11:56  10   JULY?

12:11:56  11             MR. LYON:  JUNE 7TH.

12:11:57  12             THE COURT:  JUNE 7TH.  NOW, YOUR SUBPOENA

12:12:01  13   SEEKS A 30(B)(6) DEPOSITION SEPARATE AND APART FROM

12:12:05  14   THE DEPOSITIONS BY THE DECLARANTS, RIGHT?

12:12:06  15             MR. LYON:  THAT'S CORRECT.

12:12:07  16             THE COURT:  WHAT IS IT THAT YOU WANT IN

12:12:09  17   THAT DEPOSITION THAT YOU WOULDN'T GET FROM THE FIVE

12:12:11  18   DECLARANTS?

12:12:12  19             MR. LYON:  SO IT DEPENDS ON THEIR

12:12:13  20   KNOWLEDGE BASE, BUT WHAT WE'RE LOOKING FOR IS

12:12:15  21   CUSTOMER STUDIES.  IT'S MUCH THE SAME TYPE OF

12:12:18  22   INFORMATION THAT WE TALKED ABOUT.  CUSTOMER STUDIES

12:12:21  23   OR INFORMATION ABOUT WHY THESE FEATURES MIGHT BE

12:12:25  24   IMPORTANT TO GOOGLE AND ANDROID CUSTOMERS AND THAT

12:12:27  25   WOULD PROBABLY APPLY BEYOND JUST THE GALAXY NEXUS

                                                          53

12:12:29 1    FEATURES AND AS WE MENTIONED THAT HAVE BEEN

12:12:31 2    DEVELOPED.

12:12:31 3              THE COURT:  CAN I ASK ARE THESE -- AND I

12:12:33 4    APOLOGIZE FOR THIS -- ARE THESE PATENTS AS ASSERTED

12:12:40 5    AGAINST THIS PRODUCT, ARE THEY IN PLAY, FOR

12:12:42 6    EXAMPLE, IN THE I.T.C. OR ANY OTHER FORUM?

12:12:44 7              MR. LYON:  THERE ARE -- LET'S SEE.  SO

12:12:46 8    ONE OF THE PATENTS WAS PART OF AN I.T.C.

12:12:50 9    INVESTIGATION AGAINST HTC WHICH APPLE WOULD PREVAIL

12:12:54 10   ON THE PATENT, AND IT IS ACTUALLY ALSO, I THINK, IN

12:12:55 11   A CASE AGAINST MOTOROLA DOWN THE ROAD OR STREET.

12:12:59 12             FOR SAMSUNG, I DON'T BELIEVE -- NONE OF

12:13:02 13   THE PATENTS ARE ASSERTED AGAINST SAMSUNG EXCEPT FOR

12:13:04 14   THIS LITIGATION SO.

12:13:04 15             THE COURT:  ALL RIGHT.  ANY OTHER POINTS

12:13:06 16   YOU WISH TO MAKE?

12:13:07 17             MR. LYON:  IF YOU HAVE QUESTIONS THAT YOU

12:13:08 18   WOULD LIKE TO ADDRESS.  I MEAN, I GUESS A COUPLE OF

12:13:11 19   THE ARGUMENTS THAT THEY PUT FORWARD WE CAN TALK

12:13:13 20   ABOUT.

12:13:14 21             ONE IS LEAD TRIAL COUNSEL MEET AND

12:13:16 22   CONFER.  WE READ IT AND OBVIOUSLY READ IT AND AS

12:13:18 23   NOT REPLYING TO THIRD PARTIES.  TO THE EXTENT THAT

12:13:21 24   IT DOES APPLY TO THIRD PARTIES, WE BELIEVE WE

12:13:24 25   ACTUALLY HAVE MADE EVERY EFFORT TO DO THAT.

                                                          54

12:13:26 1          THE COURT:  SO WHO MET AND CONFERRED?

12:13:28 2          MR. LYON:  SO WE HAD A MEET AND CONFER --

12:13:30 3   AND I WAS INVOLVED IN SOME, BUT IT WAS ONE OF MY

12:13:33 4   PARTNERS, JASON LOVE, WHO DID A LOT OF MEET AND

12:13:33 5   CONFERRING, MR. KREVITT, WHO IS MY PARTNER AND LEAD

12:13:33 6   TRIAL COUNSEL, WAS AVAILABLE THE MOMENT THIS WAS

12:13:42 7   RAISED BY ANYBODY AND WHICH ACTUALLY THE AFTERNOON

12:13:42 8   OF THE DAY ON WHICH GOOGLE SAID YOU HAVE TO FILE

12:13:44 9   THIS MOTION TODAY OR WE'RE NOT GOING TO AGREE TO

12:13:47 10  YOUR SCHEDULE.

12:13:47 11         SO IN THE AFTERNOON OF THAT DAY THEY SAID

12:13:49 12  YOU NEED TO HAVE A LEAD TRIAL COUNSEL MEET AND

12:13:52 13  CONFER.

12:13:53 14         AND SO WE MADE MR. KREVITT AVAILABLE, AND

12:13:54 15  MR. KREVITT WAS WILLING TO BE AVAILABLE ON

12:13:56 16  APRIL 24TH, AND WE GOT NO RESPONSE AND WE OFFERED

12:13:59 17  AGAIN TO MAKE HIM AVAILABLE ON APRIL 30TH, AND NO

12:14:02 18  RESPONSE.

12:14:02 19         THERE HAS BEEN A NUMBER OF PHONE CALLS

12:14:04 20  BETWEEN GOOGLE'S LEAD TRIAL COUNSEL AND MR. KREVITT

12:14:07 21  ABOUT TRYING TO ARRANGE THINGS BUT NOTHING -- THE

12:14:10 22  MESSAGES JUST DON'T GET RETURNED FOR DAYS.

12:14:12 23         SO IT'S BEEN ONE OF THESE THINGS WHERE WE

12:14:14 24  HAD A FAIRLY SUFFICIENT MEET AND CONFER, AND I

12:14:16 25  THINK THE PARTIES' POSITIONS ARE FAIRLY DEFINED.

                                                          55

12:14:19  1    AND IT'S NOT AN ISSUE WHERE I THINK MUCH WOULD

12:14:21  2    CHANGE OR LIKELY TO CHANGE BASED ON -- THEIR VIEW

12:14:23  3    IS THAT WE JUST WAITED TOO LONG AND WE SHOULD HAVE

12:14:25  4    DONE THIS EARLIER AND WE SHOULDN'T BE ABLE TO GO

12:14:28  5    AFTER THEM NOW ON AN EXPEDITED BASIS, DESPITE THE

12:14:30  6    FACT THAT THEY JUMPED INTO THIS LITIGATION FULL

12:14:34  7    FEET.  AND I THINK THAT'S THE REAL DISPUTE HERE,

12:14:34  8    AND IT'S NOT LEAD TRIAL COUNSEL REALLY DIDN'T

12:14:40  9    CHANGE THAT.

12:14:40 10            THE COURT:  ALL RIGHT.  ANY FINAL POINTS?

12:14:41 11            MR. LYON:  I DON'T THINK SO.

12:14:48 12            MR. WARREN:  GOOD AFTERNOON, YOUR HONOR.

12:14:48 13            THE COURT:  GOOD AFTERNOON.

12:14:52 14            MR. WARREN:  MATT WARREN FOR GOOGLE.  I

12:14:53 15    WANT TO START WITH THE MEET AND CONFER ISSUE.  I'LL

12:14:56 16    NOTE THAT THEY THINK THAT WE'RE SOMEHOW A PARTY FOR

12:14:58 17    PURPOSES OF DISCOVERY BUT NOW THEY'RE ARGUING WE'RE

12:15:00 18    NOT A PARTY FOR THE PURPOSES OF LEAD TRIAL COUNSEL

12:15:02 19    MEET AND CONFER.

12:15:03 20            WE DON'T THINK THE MEET AND CONFER HAS

12:15:05 21    BEEN ADEQUATE.  WE HAVE MADE SOME AGREEMENTS WITH

12:15:07 22    THEM SINCE FILING THE MOTION.

12:15:11 23            OBVIOUSLY MY VIEW IS, IS THAT THOSE

12:15:11 24    AGREEMENTS SHOULD HAVE BEEN MADE BEFORE FILING THE

12:15:11 25    MOTION AND YOUR HONOR WOULD HAVE HAD A LOT LESS

56

12:15:11  1    PAPER.

12:15:13  2              MY VIEW IS THAT IF THEY HAD HONORED THE

12:15:14  3    LEAD TRIAL COUNSEL IN-PERSON MEET AND CONFER

12:15:17  4    REQUIREMENT, WE WOULD NOT BE STANDING HERE TODAY.

12:15:19  5              I CITED TO YOU IN THE BRIEF THE SOMEWHAT

12:15:25  6    BELLICOSE RESPONSE THAT WE GOT FROM OVER E-MAIL

12:15:26  7    FROM NON-LEAD TRIAL COUNSEL WHICH ESSENTIALLY SAID

12:15:29  8    THAT WE REFUSE TO NARROW ANYTHING.

12:15:32  9              AND SINCE THEN WE MADE SOME OFFERS IN OUR

12:15:36 10    BRIEF ABOUT WHAT WE ARE WILLING TO PRODUCE IN TERMS

12:15:36 11    OF THE ACCUSED FUNCTIONALITY.

12:15:37 12              AND I'M GRATIFIED TO SEE IT SEEMS TO BE

12:15:40 13    CONGRUENT WITH YOUR HONOR'S COMMENTS TO APPLE WITH

12:15:41 14    REGARD TO THEIR MOTIONS AGAINST SAMSUNG, AND WE CAN

12:15:44 15    TALK ABOUT THAT.

12:15:45 16              BUT THE LEAD TRIAL COUNSEL MEET AND

12:15:46 17    CONFER REQUIREMENT IN CASE THIS BOTH APPLE AND

12:15:48 18    SAMSUNG IN THIS CASE AND IN THE PREVIOUS CASE HAVE

12:15:50 19    MADE MULTIPLE REQUESTS TO YOUR HONOR AND ALSO TO

12:15:53 20    JUDGE KOH TO GET OUT OF THAT REQUIREMENT.

12:15:55 21              THE COURT:  ACTUALLY I THINK YOUR

12:15:56 22    UNDERSTANDING IS INCORRECT.  I HAVE RAISED THE

12:15:59 23    ISSUE MULTIPLE TIMES AND DESPITE MY RAISING THIS

12:16:01 24    ISSUE, AND I'LL RAISE IT AGAIN, THE PARTIES FOR

12:16:04 25    SOME REASON HAVE BEEN UNWILLING OR UNINTERESTED IN

57

12:16:07  1    SEEKING RELIEF FROM THE APPROPRIATE JUDGE IN THIS

12:16:09  2    CASE.  THAT'S NOT ME.  THAT'S JUDGE KOH.

12:16:11  3             SO I WANT TO MAKE THAT VERY CLEAR.

12:16:13  4             MR. WARREN:  I APOLOGIZE IF I

12:16:15  5    MISUNDERSTOOD THE HISTORY.  IN ANY EVENT, THEY'RE

12:16:17  6    NOW PROCEEDING FROM THE ASSUMPTION THAT THE LEAD

12:16:20  7    TRIAL COUNSEL MEET AND CONFER REQUIREMENT APPLIES

12:16:22  8    ONLY WHEN A MOTION IS BEING MADE BY SAMSUNG AGAINST

12:16:24  9    APPLE OR APPLE AGAINST SAMSUNG.  I THINK THAT

12:16:27 10    STANDS JUDGE'S KOH'S INTENTION ON ITS HEAD, AND I

12:16:31 11    THINK JUDGE KOH WAS CLEARLY ATTEMPTING TO LIMIT THE

12:16:33 12    BEHAVIOR OF BOTH APPLE AND SAMSUNG, AND I WOULD BE

12:16:35 13    VERY SURPRISED IF HER VIEW WAS THAT THE PROTECTIONS

12:16:37 14    FOR A THIRD PARTY ARE LESS THAN THE PROTECTIONS TO

12:16:40 15    A PARTY.

12:16:41 16             AND I THINK THAT THE ONLY WAY TO ENFORCE

12:16:43 17    THAT REQUIREMENT AND THE ONLY WAY TO MAKE SURE THE

12:16:45 18    INCENTIVES ON LAWYERS FOR APPLE AND SAMSUNG ARE

12:16:49 19    PROPERLY ALIGNED IN THE FUTURE IS TO DENY THE WHOLE

12:16:52 20    MOTION.

12:16:52 21             I THINK WE HAVE RESOLVED A LOT OF THE

12:16:54 22    ISSUES.  I THINK WE CAN RESOLVE THE REST OF THE

12:16:57 23    ISSUES.  I WOULD BE VERY SURPRISED IF WE'RE BACK

12:16:59 24    BEFORE YOUR HONOR IN ANY WAY.

12:17:00 25             BUT I THINK IF YOUR HONOR RULES ON THIS,

58

12:17:02 1    THEN I THINK IT SENDS A VERY BAD MESSAGE TO APPLE

12:17:05 2    WHICH IS THAT YOU CAN SORT OF, SQUINTING AT YOUR

12:17:07 3    ORDER, YOU CAN TRY TO EVADE OR LIMIT OR REDUCE THE

12:17:10 4    SCOPE OF HER ORDER.

12:17:11 5            THE COURT:  LET ME ASK YOU, AS TO THE

12:17:13 6    FIVE DECLARANTS, HAVE ANY DOCUMENTS BEEN PRODUCED

12:17:16 7    FROM THE FILES?

12:17:18 8            MR. WARREN:  WE HAVE PRODUCED THE SOURCE

12:17:20 9    CODE, YOUR HONOR.  WE'VE MADE THE SOURCE CODE

12:17:20 10   AVAILABLE.  WE'RE FIGHTING WITH APPLE ABOUT THE

12:17:22 11   SCOPE OF THE PROTECTIVE GOVERNING THAT SOURCE CODE.

12:17:25 12           AND WE OFFERED TO THEM TO MAKE IT

12:17:26 13   AVAILABLE ON OUR TERMS WITHOUT PREJUDICE TO THEIR

12:17:28 14   RIGHT TO ARGUE TO YOUR HONOR THAT OUR TERMS WERE

12:17:30 15   WRONG.

12:17:30 16           AND THEY KEPT COMING BACK TO US WITH

12:17:32 17   REVISION AFTER REVISION AFTER REVISION, AND AS A

12:17:34 18   RESULT, IN MY VIEW, SO THAT THEY CAN COME HERE AND

12:17:39 19   SAY THAT THEY HAVE DONE IT, AND WE'VE SPENT A WHOLE

12:17:41 20   WEEKEND FIGHTING ABOUT THAT AND SO WE HAVE YET TO

12:17:43 21   AGREE ON THAT.  HOPEFULLY WE CAN RESOLVE THAT.  THE

12:17:44 22   SOURCE CODE IS ON A COMPUTER.

12:17:45 23           THE COURT:  FORGET THE SOURCE CODE.  MY

12:17:49 24   QUESTION WAS THE DOCUMENTS.

12:17:51 25           MR. WARREN:  NO.

59

12:17:51  1                    THE COURT:  WHY NOT?

12:17:52  2                    MR. WARREN:  BECAUSE WE HAVE NOT HAD TIME

12:17:54  3        TO COMPLETE OUR PRODUCTION YET, YOUR HONOR.

12:17:55  4                    THE COURT:  THE SUBPOENA WAS SERVED ON

12:17:58  5        THE APRIL 3RD, CORRECT?

12:17:58  6                    MR. WARREN:  I BELIEVE IT WAS APRIL 5TH,

12:17:58  7        YOUR HONOR.

12:17:58  8                    THE COURT:  OKAY.  APRIL 5TH.

12:18:03  9                    MR. WARREN:  YES.  ABOUT 25 DAYS --

12:18:03 10                    THE COURT:  IT WAS SO FAR AGO THAT IT'S

12:18:05 11        NOT EVEN ON MY WALL.  SO WE ARE TALKING ABOUT A

12:18:05 12        MONTH AGO.

12:18:08 13                    MR. WARREN:  IT'S NOT A MONTH.  I BELIEVE

12:18:09 14        IT'S ABOUT THREE-AND-A-HALF WEEKS, YOUR HONOR.

12:18:12 15                    THE COURT:  ALL RIGHT.  IF YOU WANT TO

12:18:13 16        QUIBBLE, THAT'S FINE.

12:18:14 17                    WHY HAVEN'T YOU PRODUCED A SINGLE

12:18:16 18        DOCUMENT FROM DECLARANTS WHO ARE OFFERING TESTIMONY

12:18:16 19        IN OPPOSITION TO A P.I. MOTION?  AND THAT SEEMS

12:18:18 20        PRETTY STRINGENT.

12:18:20 21                    MR. WARREN:  OKAY.  WELL, FOR ONE THING,

12:18:21 22        YOUR HONOR, THEY NEVER ASKED US TO ACCELERATE THE

12:18:24 23        DECLARANTS.  WHAT THEY'VE SAID TO US ALL ALONG IS

12:18:26 24        THAT --

12:18:26 25                    THE COURT:  IS THERE REALLY ANY MYSTERY

                                                                    60

12:18:27 1    THAT THEY WANT DOCUMENTS FROM THE DECLARANTS?

12:18:29 2                MR. WARREN:  I WAS UNDER THE IMPRESSION,

12:18:30 3    YOUR HONOR, THAT THEY WANTED EVERYTHING AS SOON AS

12:18:32 4    WE COULD PROVIDE IT.  WE HAVE BEEN PROCEEDING ON

12:18:34 5    A --

12:18:34 6                THE COURT:  WHY DON'T YOU SAY THEN LET'S

12:18:35 7    PRIORITIZE.  HERE ARE THE DOCUMENTS FROM THE FIVE

12:18:38 8    DECLARANTS.

12:18:40 9                MR. WARREN:  WE HAVE SAID TO THEM OVER

12:18:42 10   AND OVER AGAIN HOW DO YOU WANT TO PRIORITIZE?  AND

12:18:44 11   THEY HAVE SAID OVER AND OVER AGAIN THEY WANT

12:18:45 12   EVERYTHING ON ALL FRONTS.  I CAN CERTAINLY

12:18:45 13   PRIORITIZE THE DECLARANTS AND IF YOUR HONOR WANTS

12:18:47 14   ME TO DO THAT, I'LL DO THAT.

12:18:47 15               THE COURT:  WELL, I WOULD HAVE LIKED YOU

12:18:48 16   TO HAVE DONE THAT WEEKS AGO.

12:18:50 17               WHY DO YOU NEED A COURT TO GET INVOLVED

12:18:51 18   TO PRODUCE DOCUMENTS FROM PEOPLE WHO ARE OFFERING

12:18:53 19   SWORN TESTIMONY ON A VERY IMPORTANT TOPIC TO THE

12:18:56 20   PRESIDING JUDGE IN A VERY IMPORTANT CASE?  THAT

12:18:58 21   DOES NOT SEEM ALL THAT REASONABLE.

12:19:01 22               MR. WARREN:  ALL I CAN SAY, YOUR HONOR,

12:19:03 23   IS THAT HONESTLY DID NOT OCCUR TO US.  AND I

12:19:05 24   THINK --

12:19:05 25               THE COURT:  IT DID NOT OCCUR TO YOU TO

                                                              61

12:19:07 1    PRODUCE DOCUMENTS FROM WITNESSES?

12:19:08 2            MR. WARREN:  IT DID NOT, AND THE REASON

12:19:09 3    IS, IS THAT WE SPOKE TO THEM MULTIPLE TIMES AND

12:19:12 4    WHAT THEY HAVE SAID OVER AND OVER AGAIN IS THAT WE

12:19:13 5    WANT EVERYTHING AND SO WE HAVE BEEN PROCEEDING ON

12:19:15 6    ALL FRONTS.

12:19:16 7            THE COURT:  IT SEEMS TO ME LIKE YOU'RE

12:19:17 8    PROCEEDING ON NO FRONTS BECAUSE TO DATE YOU HAVE

12:19:20 9    NOT PRODUCED ANY DOCUMENTS.

12:19:22 10           MR. WARREN:  WE ARE IN THE PROCESS OF

12:19:26 11   COLLECTING AND REVIEWING DOCUMENTS AND WE JUST HAVE

12:19:28 12   NOT FINISHED THAT PROCESS.

12:19:28 13           THE COURT:  WHEN?

12:19:30 14           MR. WARREN:  AS SOON AS POSSIBLE.

12:19:30 15           THE COURT:  WHEN IS THAT?

12:19:31 16           MR. WARREN:  CERTAINLY -- AS I SAID TO

12:19:31 17   COUNSEL OUT IN THE HALLWAY, WE CAN GET A LOT DONE

12:19:34 18   BEFORE THE HEARING.

12:19:34 19           I THINK IT'S UNLIKELY THAT WE CAN GET

12:19:35 20   THEM VERY MUCH STUFF BESIDES THE SOURCE CODE, WHICH

12:19:39 21   I DO WANT TO EMPHASIZE IS SUBSTANTIAL, BEFORE THEIR

12:19:42 22   BRIEF IS DUE.

12:19:43 23           THE COURT:  DOESN'T THE SUBSTANTIALITY OF

12:19:46 24   THE SOURCE CODE UNDERSCORE THE PROBLEM HERE?

12:19:48 25           SO YOU'RE SAYING THAT WE HAVE NOT

62

12:19:50 1    PRODUCED ANY SOURCE CODE AND WE HAVE NOT PRODUCED

12:19:51 2    ANY DOCUMENTS, OH, BUT WE'RE WILLING TO MAKE THAT

12:19:54 3    SOURCE CODE AVAILABLE AT SOME POINT IN THE FUTURE

12:19:57 4    ASSUMING THAT YOU WILL AGREE TO OUR TERMS.

12:19:58 5            MR. WARREN:  WELL, WE ACTUALLY -- WE'RE

12:19:59 6    WILLING TO MAKE IT AVAILABLE TO THEM ON OUR TERMS.

12:20:02 7            THE COURT:  YEAH, ON YOUR TERMS.

12:20:02 8            MR. WARREN:  WITHOUT PREJUDICE TO THEIR

12:20:03 9    RIGHT TO COME TO YOUR HONOR AND MODIFY.  IN OTHER

12:20:05 10   WORDS, WE'RE NOT GOING TO ARGUE IF THEIR AGREEMENT

12:20:07 11   TO OUR TERMS BOUND THEM IN ANY WAY.

12:20:09 12           THE COURT:  WHEN CAN IT BE MADE

12:20:12 13   AVAILABLE?

12:20:12 14           MR. WARREN:  IT CAN BE MADE AVAILABLE

12:20:12 15   TODAY.  I MEAN, IT COULD HAVE BEEN MADE AVAILABLE

12:20:15 16   ON FRIDAY IF THEY WERE WILLING TO AGREE TO OUR

12:20:18 17   TERMS WITHOUT PREJUDICE TO THEIR TERMS.

12:20:20 18           THE COURT:  NOW, IS IT ACCURATE THAT THE

12:20:23 19   SOURCE CODE FOR THE FUNCTIONALITY IN THE P.I., AT

12:20:27 20   ISSUE IN THE P.I. IS SOURCE CODE WHICH IS DEVELOPED

12:20:31 21   EXCLUSIVELY BY GOOGLE?

12:20:33 22           MR. WARREN:  I DON'T KNOW WHAT YOUR HONOR

12:20:34 23   MEANS "EXCLUSIVELY."

12:20:35 24           THE COURT:  WELL, THE SAMSUNG MODIFIED

12:20:37 25   SOURCE.

                                                            63

12:20:38 1          MR. WARREN:  THE ANALOGY THAT I WOULD

12:20:38 2    MAKE IS THAT WE GET THE FINAL CUT.

12:20:40 3          THE COURT:  YOU, GOOGLE?

12:20:41 4          MR. WARREN:  YES, WE, GOOGLE.  WE TAKE

12:20:42 5    CONTRIBUTIONS FROM MANY PEOPLE.  I HONESTLY DON'T

12:20:43 6    KNOW IF THIS PARTICULAR FUNCTIONALITY WAS

12:20:46 7    INFLUENCED BY SAMSUNG.  MY GUESS WOULD BE NO, BUT

12:20:49 8    THAT IS SOMETHING --

12:20:49 9          THE COURT:  HAVE YOU INVESTIGATED THAT?

12:20:51 10         MR. WARREN:  I HAVE INVESTIGATED THAT AND

12:20:54 11   AS FAR AS I KNOW THE ANSWER IS NO.

12:20:54 12         THE COURT:  SO TO THE BEST OF YOUR

12:20:55 13   KNOWLEDGE SAMSUNG DOES NOT WRITE A SINGLE LINE OF

12:20:58 14   CODE FOR ANY OF THE FUNCTIONALITY THAT IS ACCUSED

12:21:00 15   IN THIS P.I. MOTION?

12:21:00 16         MR. WARREN:  I'M NOT AWARE OF ANY

12:21:06 17   CONTRIBUTIONS FROM THEM WITH REGARD TO THIS

12:21:07 18   FUNCTIONALITY, THAT'S RIGHT.

12:21:09 19         THE COURT:  AND DOES SAMSUNG HAVE THIS

12:21:10 20   CODE IN SOURCE OR ONLY IN BINARY?

12:21:12 21         MR. WARREN:  NO, YOUR HONOR, THEY HAVE IT

12:21:13 22   IN BINARY.

12:21:14 23         THE COURT:  ONLY BINARY?

12:21:16 24         MR. WARREN:  YES, YOUR HONOR.

12:21:16 25         THE COURT:  SO YOU'RE TELLING ME TODAY

                                                         64

12:21:18 1    THAT TO THE BEST OF GOOGLE'S KNOWLEDGE, THERE'S NO

12:21:21 2    SOURCE FOR THESE FUNCTIONALITIES.

12:21:25 3            MR. WARREN:  THERE MAY BE -- THEY MAY

12:21:25 4    HAVE DOWNLOADED THE OPEN SOURCE, YOUR HONOR.  I

12:21:26 5    SUSPECT THEY HAVE IN A MODIFIED --

12:21:26 6            THE COURT:  I'M TALKING ABOUT THE SOURCE

12:21:26 7    UNDERLYING THE OBJECT CODE WHICH SITS ON THEIR

12:21:29 8    DEVICE.

12:21:29 9            MR. WARREN:  THAT IS EXACTLY RIGHT, YOUR

12:21:30 10   HONOR, AND THAT IS THE WAY THAT WE DO THE LEAD

12:21:32 11   DEVICES AND I WOULD NOTE THAT APPLE HAS DONE THIS

12:21:34 12   FOUR TIMES BEFORE, AND WE, GOOGLE, HAVE ALWAYS

12:21:36 13   PRODUCED OUR OWN SOURCE CODE ON OUR OWN MACHINE FOR

12:21:39 14   THE LEAD DEVICES.  AND THEY ARE VERY FAMILIAR WITH

12:21:41 15   THIS, AND I SET FORTH THIS IN THE BRIEF.  AND

12:21:44 16   THAT'S WHY WE WERE SO SURPRISED WHEN THEY PRETENDED

12:21:47 17   NOT TO KNOW THAT THEY HAD TO COME TO US TO GET THE

12:21:49 18   CODE.

12:21:52 19           THE COURT:  WELL, APROPOS MY COMMENT IN

12:21:54 20   THE VERY FIRST ARGUMENT ON THIS MORNING'S CALENDAR,

12:21:58 21   WHEN YOU SAY THEY PRETENDED, THESE ALLEGATIONS OF

12:22:01 22   INTENT AND MISDIRECTION, IF YOU HAVE SOMETHING TO

12:22:03 23   BACK THAT UP, I'M VERY EAGER TO HEAR IT BUT IF YOU

12:22:06 24   DON'T, IT'S SUPERFLUOUS.  IT DOESN'T ADVANCE

12:22:08 25   ANYONE'S INTEREST HERE.

65

12:22:09  1                    DO YOU HAVE SOMETHING TO BACK UP THAT

12:22:11  2      CHARGE?

12:22:11  3                    MR. WARREN:  WHAT I HAVE TO BACK THAT UP,

12:22:13  4      YOUR HONOR, IS THE HISTORY OF LITIGATION BETWEEN

12:22:15  5      APPLE AND VARIOUS --

12:22:16  6                    THE COURT:  THAT'S A VERY BROAD LONG

12:22:18  7      RANGING TOPIC.

12:22:19  8                    DO YOU HAVE ANY SPECIFIC EVIDENCE THAT

12:22:21  9      THEY WERE PRETENDING ONE THING AND, IN FACT, DOING

12:22:23 10      SOMETHING OR ANOTHER?

12:22:26 11                    MR. WARREN:  ASIDE FROM THE HISTORY OF

12:22:27 12      THE LITIGATION BETWEEN THE PARTIES, NO, YOUR HONOR.

12:22:28 13                    THE COURT:  ALL RIGHT.  WELL, LET'S TALK

12:22:30 14      ABOUT THE CODE.  YOU HAVE NO PROBLEM PRODUCING IT

12:22:32 15      TODAY IS WHAT YOU'RE TELLING ME.

12:22:34 16                    HOW WOULD YOU MAKE IT AVAILABLE?  I WANT

12:22:36 17      TO UNDERSTAND THAT.

12:22:36 18                    MR. WARREN:  IT'S AVAILABLE ON A SOURCE

12:22:38 19      CODE COMPUTER USING BASICALLY THE SAME SETUP THAT

12:22:41 20      WE HAVE ALWAYS USED FOR THE PREVIOUS TIMES THAT WE

12:22:43 21      HAVE PRODUCED CODE TO APPLE IN THESE LITIGATIONS.

12:22:46 22                    THE COURT:  WHICH IS WHAT?  WHERE IS IT

12:22:47 23      MADE AVAILABLE?  UNDER WHAT CONSTRAINTS?

12:22:49 24                    MR. WARREN:  IT'S MADE AVAILABLE IN THE

12:22:50 25      QUINN EMANUEL SILICON VALLEY OFFICE, AND IT'S

                                                              66

12:22:53  1    SUBJECT TO A SERIES OF PROCEDURAL CONSTRAINTS THAT

12:22:57  2    IS, YOU KNOW, TOO DETAILED TO SET FORTH HERE BUT

12:22:59  3    THERE ARE CERTAIN HOURS THAT THEY CAN COME AND THEY

12:23:01  4    HAVE TO NOT BRING THINGS INTO THE ROOM AND THEY CAN

12:23:04  5    TAKE NOTES AND THEY CAN PRINT OUT THINGS, AND VERY

12:23:06  6    INDUSTRY STANDARD SORT OF PROVISIONS TO WHICH

12:23:08  7    APPLE, I BELIEVE, HAS AGREED IN PREVIOUS LITIGATION

12:23:10  8    AND I BELIEVE IN THIS LITIGATION AS WELL.

12:23:12  9         THE COURT:  WELL, THEIR AGREEMENT MAY

12:23:13 10    HAVE BEEN AT THE END OF AN ORDER OR TWO FROM THIS

12:23:17 11    COURT, BUT I DO RECALL THAT SUBJECT COMING UP IN

12:23:20 12    PARALLEL LITIGATION.

12:23:21 13         IF I MIGHT ASK, WHAT SPECIFICALLY IS YOUR

12:23:25 14    BEEF WITH THE PROTECTIVE ORDER THAT WAS AGREED UPON

12:23:26 15    BY YOUR FIRM AND APPLE?

12:23:30 16         MR. WARREN:  I BELIEVE -- WELL, SETTING

12:23:31 17    ASIDE THE QUESTION OF THE FIRM, OBVIOUSLY, YOU

12:23:32 18    KNOW, YOUR HONOR, WHEN LAW FIRMS REPRESENT

12:23:32 19    DIFFERENT PARTIES THEY MIGHT NOT ALWAYS TAKE THE

12:23:36 20    SAME POSITION.

12:23:37 21         THE COURT:  COUNSEL, THAT'S A VERY

12:23:37 22    INTERESTING AND IMPORTANT TOPIC.  YOU'RE STANDING

12:23:40 23    IN FRONT OF ME AS A QUINN EMANUEL LAWYER SAYING YOU

12:23:43 24    REPRESENT GOOGLE, RIGHT?  YOUR FIRM REPRESENTS

12:23:45 25    SAMSUNG, RIGHT?  THEREFORE, YOU DO REPRESENT

67

12:23:47  1    SAMSUNG, DON'T YOU?

12:23:49  2              MR. WARREN:  I DO NOT, YOUR HONOR.

12:23:50  3              THE COURT:  SO YOU'RE TELLING ME UNDER

12:23:51  4    RULES OF PROFESSIONAL RESPONSIBILITY AND EVERYTHING

12:23:53  5    ELSE THAT APPLIES HERE, YOU CAN REPRESENT GOOGLE

12:23:56  6    BUT NOT SAMSUNG, EVEN THOUGH QUINN EMANUEL

12:23:59  7    REPRESENTS SAMSUNG IN THIS VERY SAME CASE?

12:24:01  8              MR. WARREN:  YES, YOUR HONOR.

12:24:02  9              THE COURT:  ALL RIGHT.  WHAT IS WRONG

12:24:06 10    WITH THE ORDER THAT YOUR PARTNERS AGREED TO?

12:24:08 11              MR. WARREN:  I BELIEVE WE'RE DOWN TO ONE

12:24:10 12    SENTENCE IN THE ORDER, YOUR HONOR, WHICH IS A

12:24:12 13    SENTENCE THAT ALLOWS APPLE'S LITIGATION COUNSEL

12:24:14 14    WITH ACCESS TO GOOGLE'S C.B.I. TO BE INVOLVED IN

12:24:17 15    REEXAMINATIONS THAT APPLE ITSELF INITIATES.

12:24:23 16              WE'RE FINE WITH THAT OR REEXAMINATIONS

12:24:26 17    THAT SAMSUNG ISSUES.  WE'RE NOT FINE WITH THAT FOR

12:24:28 18    REEXAMINATIONS THAT APPLE INITIATES BECAUSE IT'S

12:24:31 19    OUR VIEW THAT IT ALLOWS APPLE TO TAKE OUR C.B.I.,

12:24:34 20    AND DETERMINE WHICH OF ITS OWN PATENTS IT WISHES TO

12:24:37 21    THROW IN REEXAM AND THEY TRY TO TARGET THOSE

12:24:40 22    PATENTS ON OUR C.B.I.

12:24:41 23              THE COURT:  SO YOUR CONCERN IS WITH

12:24:43 24    RESPECT TO APPLE ITSELF INITIATING THE EXAMINATION

12:24:46 25    ON ITS OWN PATENT?

                                                              68

12:24:46  1          MR. WARREN:  YES, YOUR HONOR, WHICH THE

12:24:47  2     CURRENT PROTECTIVE ORDER EXPLICITLY ALLOWS THEM TO

12:24:50  3     DO.

12:24:50  4          THE COURT:  SO YOU HAVE NO PROBLEM WITH

12:24:51  5     LITIGATION COUNSEL BEING INVOLVED IN ANY ATTACKS ON

12:24:54  6     ANY SAMSUNG PATENTS?

12:25:01  7          MR. WARREN:  CORRECT.

12:25:02  8          THE COURT:  OKAY.  I UNDERSTAND THE

12:25:03  9     PROBLEM YOU HAVE.

12:25:04 10          TELL ME WHY IT IS A PROBLEM.

12:25:05 11          MR. WARREN:  IT'S A PROBLEM BECAUSE IT

12:25:07 12     ALLOWS APPLE'S LITIGATION COUNSEL TO GO TO APPLE

12:25:09 13     AND SAY, LOOK, HERE'S A PATENT THAT I BELIEVE THAT

12:25:12 14     YOU SHOULD THROW INTO REEXAM AND GUIDED BY THEIR

12:25:15 15     KNOWLEDGE OF OUR HIGHLY CONFIDENTIAL SOURCE CODE

12:25:17 16     WHICH IS OUR C.B.I.

12:25:25 17          AND I SHOULD NOTE THAT I MADE A PROPOSAL

12:25:28 18     OUT IN THE HALLWAY THAT COUNSEL HAS NOT RESPONDED

12:25:29 19     TO THAT IF WE CAN ELIMINATE THAT, I BELIEVE WE HAVE

12:25:34 20     RESOLVED ALL OF OUR ISSUES REGARDING THE PROTECTIVE

12:25:36 21     ORDER SO THERE MAY BE NOTHING FOR YOUR HONOR TO

12:25:38 22     RULE ON.

12:25:38 23          THE COURT:  HAS APPLE -- I'M SORRY.  HAS

12:25:39 24     GOOGLE EVER AGREED TO PRODUCE ITS SOURCE CODE

12:25:42 25     WITHOUT THAT RESTRICTIONALITY?

                                                            69

12:25:46  1              MR. WARREN:  GOOGLE HAS AGREED TO PRODUCE

12:25:47  2     -- THERE'S A WHOLE BUNCH OF PROTECTIVE ORDERS.

12:25:47  3              THE COURT:  AND I'VE HAD EXPERIENCE WITH

12:25:48  4     A NUMBER OF THEM AS WELL.  SO IF I GO BACK AND

12:25:51  5     UNDERTAKE THE ARDUOUS TASK OF STUDYING GOOGLE'S

12:25:56  6     PROTECTIVE ORDER JUST IN THIS COURT, AM I GOING TO

12:25:58  7     FIND THAT GOOGLE HAS PRODUCED THIS SOURCE CODE

12:26:02  8     WITHOUT HAVING THIS RESTRICTION?

12:26:04  9              MR. WARREN:  I HAVE NOT LOOKED AT THIS

12:26:05 10     COURT, YOUR HONOR.  WE HAVE A VERY FIRM POLICY.

12:26:06 11     THERE HAVE SOMETIMES BEEN EXCEPTIONS FOR

12:26:09 12     REEXAMINATION REQUESTS INVOLVING ONLY THE PATENTS

12:26:11 13     IN SUIT, BUT THIS INVOLVES ALL PATENTS.  SO THIS

12:26:14 14     INVOLVES -- APPLE CAN TAKE SOME OTHER PATENT THAT

12:26:15 15     IS NOT IN SUIT AND ITS LITIGATION COUNSEL CAN

12:26:18 16     ADVISE THEM TO THROW THAT PATENT INTO REEXAMINE.

12:26:21 17              IF YOUR HONOR IS COMPARING, WE DID A

12:26:22 18     LITTLE RESEARCH OVER THE LAST 3 DAYS AND WE FOUND

12:26:25 19     13 ORDERS IN WHICH APPLE HAS ENTERED A PROTECTIVE

12:26:30 20     ORDER WITH A PROSECUTION BAR THAT IS ACROSS THE

12:26:34 21     BOARD AND IT CONTAINS NO EXCEPTION.

12:26:34 22              AND SO IF WE ARE COMPARING WHAT PEOPLE

12:26:35 23     HAVE DONE IN PREVIOUS CASES, I WOULD WANT TO SUBMIT

12:26:38 24     A PROFFER OF THOSE 13 ORDERS, AND I'M EXPECTING TO

12:26:41 25     FIND MORE.  WE JUST FOUND 13 IN THE LAST DAY.

70

12:26:42 1              THE COURT:  THERE ARE ONLY 24 HOURS IN

12:26:44 2     THE DAY, I GET THAT.

12:26:45 3              SO LET ME ASK YOU -- EVEN FOR YOU ALL.

12:26:48 4              LET ME ASK YOU, IF APPLE WERE TO AGREE

12:26:53 5     THAT ITS LITIGATION COUNSEL'S REEXAMINATION

12:26:55 6     ACTIVITY WERE CONSTRAINED TO THE PATENTS IN SUIT,

12:26:58 7     WOULD YOU HAVE A PROBLEM?

12:27:00 8              MR. WARREN:  NO, YOUR HONOR, THAT WOULD

12:27:01 9     BE ALL RIGHT.

12:27:01 10             THE COURT:  ALL RIGHT.  ANY OTHER POINTS

12:27:06 11    YOU WISH TO MAKE?

12:27:07 12             MR. WARREN:  THE ONLY OTHER POINT THAT I

12:27:09 13    WANT TO MAKE IS THAT WE NARROWED IN OUR BRIEF WE

12:27:14 14    BASICALLY SAID WE'RE GOING TO PRODUCE PRETTY MUCH

12:27:17 15    EVERYTHING THAT THEY WANT, WITH THE EXCEPTION OF

12:27:18 16    THINGS THAT HAVE NO RELATION TO THE KEY

12:27:21 17    FUNCTIONALITY, AND I THINK THAT WAS CONGRUENT WITH

12:27:24 18    YOUR HONOR'S COMMENTS.  AND THERE WERE OTHER

12:27:25 19    DETAILS IN THE BRIEF, BUT THAT WAS THE MOST

12:27:28 20    IMPORTANT THING.

12:27:28 21             AND OTHER THAN THAT, I DON'T THINK I HAVE

12:27:30 22    ANYTHING TO ADD, UNLESS YOUR HONOR HAS ANY FURTHER

12:27:33 23    QUESTIONS.

12:27:33 24             THE COURT:  THANK YOU, YOUR HONOR.  ANY

12:27:35 25    FURTHER COMMENTS OR BRIEF REBUTTAL?

                                                          71

12:27:38  1         MR. LYON:  LET'S START WITH THE

12:27:39  2    PROTECTIVE ORDER BECAUSE I DO THINK WE CAN PROBABLY

12:27:41  3    WORK THAT OUT AND WE JUST GOT COUNSEL'S PROPOSAL

12:27:44  4    BEFOREHAND.  AND I THINK IF WE'RE NOW NARROWING IT

12:27:47  5    AND IT'S SORT OF CARVING OUT JUST THAT ONE

12:27:49  6    EXCEPTION --

12:27:49  7         THE COURT:  MY SUGGESTION IS THAT YOU

12:27:51  8    TAKE A RUN AT THAT EVEN AFTER THAT HEARING AND

12:27:53  9    PERHAPS LET ME KNOW IF THIS IS AN ISSUE I NEED TO

12:27:56 10    SPEND TIME WITH.

12:27:56 11         MR. LYON:  AND WE WILL DO THAT BECAUSE IT

12:27:58 12    SOUNDS LIKE WE'LL BE ABLE TO DO THAT.

12:28:00 13         THE ISSUE WITH THE SOURCE CODE, THEY KEEP

12:28:02 14    SAYING THAT THEY MADE THIS AVAILABLE TO US.

12:28:04 15         WELL, THAT'S SOMEWHAT TRUE.  THEY SAID

12:28:06 16    COME AND SEE IT AS OF LAST TUESDAY, BUT WHEN WE

12:28:08 17    TRIED TO GET AN EXPERT QUALIFIED, IT TOOK A FEW

12:28:11 18    DAYS BECAUSE THEY ASKED FOR MORE INFORMATION THAT

12:28:15 19    SIMPLY DIDN'T EXIST FOR THE GUY.

12:28:16 20         WE BROUGHT HIM OUT OVER THE WEEKEND AND

12:28:19 21    WE HAD ISSUES OF WHO WAS GOING TO PAY FOR HIM TO

12:28:21 22    SIT THERE IN THE OFFICE ON THE WEEKEND AND THEN

12:28:22 23    THEY WENT SILENT.

12:28:25 24         AND SO OUR GUY WAS SITTING AROUND WAITING

12:28:28 25    TO INSPECT THE CODE AND HE COULDN'T GET IN.  SO

                                                          72

12:28:30 1    TODAY -- HE HAD TO LEAVE ON MONDAY, AND HE WILL BE

12:28:33 2    BACK TOWARD THE END OF THE WEEK AND WE WILL

12:28:36 3    PROBABLY GET HIM BUT TO DATE WE STILL HAVE NOT BEEN

12:28:38 4    ABLE TO SEE THE CODE.

12:28:39 5          ON THE LEAD DEVICE POINT, I JUST WAS TO

12:28:39 6    EMPHASIZE WHAT A LEAD DEVICE MEANS IS THAT THE

12:28:41 7    MANUFACTURER CAN'T CHANGE THE CODE.  IT DOESN'T

12:28:42 8    MEAN THAT THEY WOULDN'T HAVE ACCESS TO THE SOURCE

12:28:44 9    CODE.

12:28:44 10         AND IF YOU LOOK AT ALL OF THE LITIGATION

12:28:46 11   INFORMATION THAT GOOGLE PUT IN ITS OPPOSITION

12:28:48 12   BRIEF, THERE'S NOWHERE WHERE IT SAYS SOMETHING

12:28:50 13   ABOUT THE FACT THAT THE MANUFACTURER WOULD NEVER

12:28:52 14   POSSESS THE SOURCE CODE.

12:28:53 15         THE COURT:  CAN WE JUST GET A

12:28:55 16   REPRESENTATION FROM COUNSEL?

12:28:56 17         MR. LYON:  THAT THEY DON'T, YEAH.  BUT

12:28:58 18   THAT WAS THE FIRST TIME THAT WE KNEW.  SO THAT'S

12:29:00 19   WHAT I'M SAYING IS THAT IT WAS A SURPRISE TO US

12:29:02 20   THAT WE WOULD GET THAT.

12:29:03 21         OTHER THAN THAT, I DON'T -- I HAVE

12:29:05 22   NOTHING ELSE UNLESS YOU HAVE QUESTIONS.

12:29:06 23         THE COURT:  NO.  I APPRECIATE THE

12:29:08 24   ARGUMENTS THIS MORNING.

12:29:09 25         MR. WARREN:  YOUR HONOR, IF I COULD

                                                        73

12:29:10 1   CORRECT ONE FACTUAL POINT.  COUNSEL MADE A DEAL

12:29:12 2   ABOUT US TAKING A LONG TIME TO APPROVE THEIR EXPERT

12:29:18 3   FOR REVIEW OF OUR SOURCE CODE.  THEY DIDN'T

12:29:19 4   ACTUALLY DISCLOSE HIM UNTIL I WROTE THEM AN E-MAIL

12:29:21 5   SAYING, BY THE WAY YOU GUYS, WE'RE MAKING THIS

12:29:23 6   SOURCE CODE AVAILABLE AND YOU HAVE NOT DISCLOSED

12:29:25 7   ANY EXPERTS TO US.  AND SO AS A COOPERATIVE THING I

12:29:27 8   REMINDED THEM TO DO IT, AND THEY DID IT.  IT TOOK

12:29:30 9   US THREE DAYS, AND WE DID ASK SOME FOLLOW-UP

12:29:31 10  QUESTIONS, THAT'S VERY COMMON, AND WE HAD TEN DAYS

12:29:33 11  UNDER THE COURT ORDER, AND WE DID IT UNDER THREE.

12:29:35 12  AND I JUST WANT TO NOTE THE ONLY REASON IT HAPPENED

12:29:38 13  IN THE FIRST PLACE IS THAT I REMINDED THEM TO DO

12:29:40 14  IT.

12:29:40 15          THE COURT:  IS THIS INDIVIDUAL NOW CLEAR

12:29:42 16  AS FAR AS YOU ARE CONCERNED?

12:29:42 17          MR. WARREN:  YES, YOUR HONOR.

12:29:43 18          THE COURT:  ALL RIGHT.  THANK YOU VERY

12:29:44 19  MUCH.

12:29:45 20          MR. EMANUEL:  ERIC EMANUEL.  IN THE

12:29:48 21  DIVISION OF LABOR, WE DIDN'T REALLY TALK ABOUT THE

12:29:50 22  INTERROGATORIES.  NOTHING REALLY NEW TO ADD.  THE

12:29:53 23  SCOPE OF DISCOVERY, AS MR. LYON SAID, THE PARTIES

12:29:54 24  WERE LOOKING TO THE COURT FOR GUIDANCE ON HOW MUCH

12:29:57 25  DISCOVERY IS PERMITTED AT THIS STAGE, AT THE

74

PRELIMINARY INJUNCTION STAGE.

ALL I ASK IS THAT THERE ARE FOUR
INTERROGATORIES AT ISSUE, AND I WOULD ASK THE COURT
TO REVIEW THEM.  AND WE THINK THAT THEY'RE
OVERBROAD ON THEIR FACE ASKING FOR ALL DISCUSSIONS
OR ALL ANALYSIS OF ALL FEATURES.

THE COURT:  WELL, SINCE YOU BROUGHT THEM
UP, LET'S TALK ABOUT IT.  WHAT WOULD YOU SUGGEST IS
AN APPROPRIATE SCOPE?  RATHER THAN THROW THIS INTO
MY LAP AND SAY YOU, JUDGE, YOU DRAW SOME LINES,
WHAT ARE YOU SUGGESTING?

MR. EMANUEL:  YOUR HONOR, AT THE
PRELIMINARY INJUNCTION STAGE, WHEN WE ALL HAVE ONE
DEVICE, FOUR FEATURES -- AND I REALIZE WE'RE KIND
OF ASKING YOU TO STAND IN JUDGE KOH'S SHOES AND
SAY --

THE COURT:  IT'S KIND OF THE JOB
DESCRIPTION.

MR. EMANUEL:  YEAH.  WHAT IS THE JUDGE
GOING TO NEED TO DECIDE THE PRELIMINARY INJUNCTION?

AND I SUBMIT THAT THE JUDGE IS GOING TO
LOOK AT THE OBJECTIVE EVIDENCE OF DOES THIS DEVICE
INFRINGE THOSE FOUR FEATURES?  A BROAD DISCUSSION
OF WILLFUL INFRINGEMENT.

YOU KNOW, ATTORNEYS ALWAYS WANT TO SAY

75

12:30:58  1    NOT ONLY IS IT INFRINGED, IT WAS DELIBERATE, IT'S

12:31:01  2    WILLFUL, IT'S ACROSS INDUSTRY.

12:31:03  3              I THINK JUDGE KOH, I DON'T WANT TO SPEAK

12:31:07  4    FOR HER, BUT THE COURT IS LIKELY TO SAY DOES THIS

12:31:10  5    DEVICE INFRINGE THIS FEATURE?

12:31:12  6              THE COURT:  DOESN'T HER ORDER IN THE

12:31:15  7    PREVIOUS OR PARALLEL CASE SHED SOME LIGHT ON THIS?

12:31:18  8              IT CERTAINLY SEEMS TO ME -- I HAVE NOT

12:31:19  9    READ IT RECENTLY, BUT I DID READ IT CAREFULLY AT

12:31:22 10    ONE TIME.  IF I WERE TO GO BACK AND READ IT AGAIN,

12:31:25 11    MIGHT I NOT FIND SOME SUGGESTION THAT HER

12:31:27 12    ASSESSMENT OF FACTORS OTHER THAN THE LIKELIHOOD OF

12:31:30 13    SUCCESS ON THE MERITS WOULD BENEFIT FROM SOME OF

12:31:35 14    THE DISCOVERY THAT IS AT ISSUE HERE?

12:31:37 15              MR. EMANUEL:  I'M NOT DISAGREEING WITH

12:31:39 16    THAT AS A GENERAL PROPOSITION, BUT YOU ASKED A VERY

12:31:41 17    SPECIFIC QUESTION WHERE DO WE DRAW THE LINE?  AND

12:31:44 18    THERE'S A BRIGHT LINE TO BE DRAWN AND LET'S LOOK AT

12:31:46 19    THIS DEVICE.

12:31:47 20              THE COURT:  YOU'RE SAYING, NO, I GET

12:31:47 21    THAT.

12:31:49 22              MR. EMANUEL:  THESE FOUR FEATURES.  THE

12:31:50 23    PROBLEM THAT I SUGGESTED THAT THE COURT HAS, WHICH

12:31:51 24    I THINK WE ALL HAVE, IS THAT IF WE DON'T STOP

12:31:55 25    THERE, THERE IS NO END.  AND THEN WE'RE TAKING

                                                        76

12:31:57 1    DISCOVERY OF EVERY DEVICE AND EVERY FEATURE AND

12:32:00 2    GOING BACK IN TIME.

12:32:01 3              I WISH I COULD HELP THE COURT DRAW A LINE

12:32:06 4    FURTHER OUT.  I CAN'T.  I DON'T THINK ANYONE CAN.

12:32:09 5              AND SO THAT'S WHY I SUGGEST FOR PURPOSES,

12:32:11 6    GIVEN THAT OUR TASK IS TO DO ALL EFFORTS TO

12:32:15 7    NARROWLY TAILOR THIS TO THE ISSUES IN THE

12:32:18 8    PRELIMINARY INJUNCTION, I THINK DISCOVERY LIMITED

12:32:20 9    TO THIS DEVICE AND FOUR FEATURES GETS THE JOB DONE.

12:32:24 10   THERE'S MAYBE MORE.  THAT'S FOR LATER DISCOVERY.

12:32:27 11             THE COURT:  ALL RIGHT.  THANK YOU.

12:32:30 12             MR. EMANUEL:  THANK YOU, YOUR HONOR.

12:32:30 13             THE COURT:  ANYTHING FURTHER?  I'M NOT

12:32:31 14   SURE WHO HAS THE BURDEN.

12:32:36 15             MR. KREVITT:  YOUR HONOR, IF I MAY?

12:32:36 16   HAVING SEEN MR. EMANUEL GET TAGGED IN, IF I MAY

12:32:39 17   ADDRESS THIS.

12:32:40 18             VERY BRIEFLY, YOUR HONOR.  FIRST WITH

12:32:41 19   RESPECT TO THE LEAD COUNSEL MEET AND CONFER, I'M

12:32:44 20   HAPPY TO ADDRESS THIS IF YOUR HONOR WOULD LIKE.

12:32:46 21             THE COURT:  YOU KNOW, NECESSARILY I'M

12:32:46 22   NOT --

12:32:49 23             MR. KREVITT:  I WOULDN'T THINK.  THE

12:32:50 24   DESCRIPTION YOU HEARD WAS AT BEST INCOMPLETE AND TO

12:32:52 25   THE EXTENT IT WAS IMPORTANT, I WANTED TO STAND UP

                                                           77

12:32:55 1    AND ADDRESS IT.

12:32:55 2              THE COURT:  WELL, YOU KNOW, I RETRACT

12:32:56 3    THAT EARLIER STATEMENT SINCE YOU BROUGHT IT UP YET

12:32:59 4    AGAIN, AND I'VE RAISED THIS WITH OTHER COUNSEL

12:33:02 5    WEARING THESE VARIOUS HATS THAT YOU'RE WEARING

12:33:04 6    TODAY.

12:33:05 7              THE LEAD COUNSEL MEET AND CONFER

12:33:07 8    REQUIREMENT IS CLEARLY FALLING SHORT IN THE

12:33:12 9    PARALLEL OR PREVIOUS CASE.

12:33:14 10             DO YOU HAVE ANY SUGGESTIONS OR

12:33:16 11   ALTERNATIVES THAT WOULD MAKE MORE SENSE NOW THAT WE

12:33:19 12   HAVE TRIED THE EXPERIMENT ONCE AND HAVE ANOTHER

12:33:22 13   CHANCE TO TRY TO IMPROVE UPON IT?

12:33:24 14             MR. KREVITT:  WELL, AT THE RISK OF

12:33:25 15   AVOIDING A DIRECT QUESTION, YOUR HONOR, I WOULD

12:33:27 16   LIKE TO CONFER WITH MY COLLEAGUES AND GET A BETTER

12:33:29 17   SENSE AS TO WHY WE THINK IT MAY HAVE FALLEN SHORT

12:33:32 18   AND MAKE A PROPOSAL TO YOUR HONOR.

12:33:34 19             I CAN TELL YOU THAT IT IS APPLE'S

12:33:37 20   INTENTION, APPLE'S HARD AND FAST INTENTION TO

12:33:39 21   COMPLY NOT JUST WITH THE LETTER BUT THE SPIRIT OF

12:33:41 22   THAT MEET AND CONFER.

12:33:42 23             I'M NOT FOR THE MOMENT CHALLENGING YOUR

12:33:44 24   HONOR'S CONCLUSION THAT THE PARTIES HAVE FALLEN

12:33:46 25   DOWN TO SOME EXTENT WITH RESPECT TO THAT

                                                        78

12:33:48  1    OBLIGATION, BUT IT IS IN NO INSTANCE IN THE

12:33:50  2    PREDECESSOR CASE, THIS CASE OR IN ANY OTHER CASE,

12:33:54  3    THAT APPLE WOULD NOT TAKE THAT REQUIREMENT

12:33:56  4    SERIOUSLY.

12:33:57  5         APPLE UNDERSTANDS ITS PURPOSE, ITS

12:34:00  6    REQUIREMENTS, AND IN ALL RESPECTS IS TRYING TO

12:34:03  7    COMPLY WITH IT.

12:34:03  8         THERE HAVE BEEN INSTANCES, OF COURSE,

12:34:06  9    WHEN LEAD COUNSEL CAN'T GET TOGETHER AND BOTH

12:34:08 10    SIDES, AND I UNDERSTAND IT AND YET THERE'S AN

12:34:11 11    URGENCY WHERE THE PARTIES PERCEIVE AN URGENCY TO

12:34:15 12    GET BEFORE THE COURT AND MAYBE IN THAT RESPECT

12:34:17 13    SOMETIMES THE PARTIES HAVEN'T QUITE MET THE

12:34:20 14    STANDARDS THAT YOUR HONOR WOULD LIKE TO SEE.

12:34:22 15         BUT IT MAY BE SOMETHING THAT IS WORTH

12:34:25 16    CONFERRING WITH SAMSUNG AS WELL IN MAKING A

12:34:27 17    PROPOSAL TO YOUR HONOR.

12:34:28 18         I CAN TELL YOU THAT WITH RESPECT TO THE

12:34:32 19    ISSUES THAT ARE BEFORE YOUR HONOR TODAY, THERE'S NO

12:34:34 20    QUESTION ON THE SAMSUNG/APPLE MOTION THAT IS BEFORE

12:34:39 21    YOUR HONOR THAT THE LEAD COUNSEL DID MEET AND

12:34:43 22    CONFER, MET AND CONFERRED FOR HOURS AS SAMSUNG'S

12:34:47 23    COUNSEL REPRESENTED TO YOUR HONOR, DID SO IN PERSON

12:34:49 24    IN LOS ANGELES, BECAUSE THAT'S HOW THE SCHEDULES

12:34:53 25    WORK.  AND SO THE PARTIES DID TAKE THAT VERY

79

12:34:54  1    SERIOUSLY.

12:34:55  2            THERE WAS NO EFFORT TO AVOID THAT WITH

12:34:57  3    RESPECT TO THE GOOGLE MOTION.  THAT'S BEEN PENDING

12:35:00  4    FOR A LONG TIME.

12:35:01  5            THE COURT:  WELL, WE'VE PUSHED THE COURT

12:35:05  6    REPORTER HERE.  ABSOLUTELY BRING IT TO A FINAL

12:35:05  7    POINT OR TWO.

12:35:07  8            MR. KREVITT:  TWO FINAL POINTS, YOUR

12:35:08  9    HONOR.  ONE, WITH RESPECT TO GOOGLE, I UNDERSTAND

12:35:10 10    YOUR HONOR'S ADMONITION REGARDING THE PARTIES

12:35:14 11    CASTING ASPERSIONS AND WE HAVE MADE EVERY EFFORT TO

12:35:19 12    RESIST THAT AND I WILL CONTINUE TO RESIST THAT.

12:35:21 13            THE COURT:  I ENCOURAGE YOU TO.  SO WHY

12:35:23 14    DON'T YOU TURN TO THE SUBSTANTIVE POINT.

12:35:23 15            MR. KREVITT:  SO HERE IS WHERE WE ARE,

12:35:26 16    YOUR HONOR.  WE HAVE A BRIEF DUE ON MAY 14TH.  WE

12:35:29 17    SUBPOENAED GOOGLE ON APRIL 5TH.  THERE'S NO

12:35:33 18    DISPUTE, NO DISPUTE, YOUR HONOR, THAT GOOGLE IS IN

12:35:34 19    POSSESSION OF HIGHLY RELEVANT MATERIAL.

12:35:38 20            GOOGLE HAS ALL BUT CONCEDES THAT IT HAS

12:35:41 21    AGREE WITH SOME LIMITATIONS WITH WHICH WE DISAGREE,

12:35:44 22    BUT HAS AGREED TO PRODUCE THE MATERIAL.

12:35:46 23            THE VERY FIRST THING GOOGLE SAID, THE

12:35:46 24    VERY FIRST THING WHEN WE SUPBOENAED GOOGLE IS WE

12:35:49 25    WILL NOT PRODUCE MATERIAL BEFORE YOUR BRIEF IS DUE.

                                                            80

12:35:52  1      THAT'S OFF THE TABLE.

12:35:53  2              THE, THE -- IT WAS FIVE WEEKS FROM WHEN

12:35:56  3      WE SUBPOENAED.

12:35:57  4              AND AS YOUR HONOR SAID, COURTS SOMETIMES

12:35:59  5      REQUIRE PARTIES TO DO THINGS THAT ARE NOT POSSIBLE

12:36:03  6      AND IT CAN BE AN ACT OF FUTILITY.  FIVE WEEKS TO

12:36:07  7      PRODUCE SOME MATERIAL, A SINGLE DOCUMENT, EVEN ON A

12:36:10  8      ROLLING BASIS IS NOT TOO MUCH TO ASK.

12:36:13  9              JUST OUTSIDE OF THIS COURTROOM WE HAD A

12:36:15 10      FOLLOW-UP DISCUSSION AND WE ASKED COUNSEL FOR

12:36:17 11      GOOGLE, WHEN WILL YOU BE ABLE TO PRODUCE MATERIAL?

12:36:20 12      WHEN WILL YOU BE ABLE TO PRODUCE A SINGLE DOCUMENT?

12:36:22 13      I'M NOT TALKING ABOUT SOURCE CODE.  A SINGLE

12:36:25 14      DOCUMENT FROM THE DECLARANTS, FROM ANYTHING,

12:36:27 15      REGARDING ANY ISSUE THAT WE HAVE SUBPOENAED, ALL OF

12:36:30 16      THE MATERIAL THAT THEY HAVE AGREED TO PRODUCE.  AND

12:36:32 17      COUNSEL FOR GOOGLE REPRESENTED THAT YOU WILL NOT

12:36:34 18      GET A DOCUMENT BEFORE YOUR BRIEF IS DUE AND THEN

12:36:36 19      SAID, AND I THINK THIS IS INCREDIBLY ILLUMINATING,

12:36:40 20      YOUR HONOR, AND THEN SAID, WHEN WE ASKED, WELL,

12:36:42 21      WHEN WILL YOU BE ABLE TO PRODUCE THE MATERIAL?

12:36:45 22      COUNSEL FOR GOOGLE SAID, IT DOESN'T MATTER, YOU

12:36:48 23      WON'T BE ABLE TO USE IT.

12:36:49 24              SO MY POINT, I HOPE, IS CLEAR.

12:36:52 25              IT IS WITHOUT TRYING TO IMPUTE A MOTIVE.

81

12:36:57  1    ALL WE WANT IS THE MATERIAL.  WE JUST WANT THE

12:36:59  2    MATERIAL THAT WE CAN USE IN OUR BRIEF.

12:37:02  3            THE COURT:  WOULD YOU AGREE THAT THE

12:37:03  4    REASONABLE PLACE TO START A WAY TO PRIORITIZE WOULD

12:37:10  5    BE RESPONSE OF DOCUMENTS FROM THE FILES OF THESE

12:37:13  6    FIVE DECLARANTS?

12:37:16  7            MR. KREVITT:  YOUR HONOR, AT AN ABSOLUTE

12:37:17  8    BARE MINIMUM, OF COURSE.  THE NOTION THAT A THIRD

12:37:20  9    PARTY SUBMITS FIVE DECLARATIONS AND OPPOSITIONS TO

12:37:24 10    APPLE'S MOTION AND DOESN'T PRODUCE A SINGLE

12:37:27 11    DOCUMENT AND INSISTS, BY THE WAY, YOUR HONOR, THAT

12:37:28 12    WE TAKE THE DEPOSITIONS ON THE EXACT PLACE AND

12:37:31 13    EXACT DATE THAT THEY SAY OR WE FOREGO THE

12:37:34 14    OPPORTUNITY TO TAKE THEM, NO NEGOTIATION OR

12:37:36 15    NOTHING, WITHOUT A SINGLE DOCUMENT IS UNREASONABLE

12:37:39 16    AT A MINIMUM.

12:37:40 17            THE COURT:  YOUR CHOICE.

12:37:44 18            MR. KREVITT:  BUT WE DON'T KNOW WHETHER,

12:37:46 19    YOUR HONOR, THOSE FIVE DECLARANTS THAT GOOGLE

12:37:48 20    SELECTED ARE THE RIGHT DECLARANTS.

12:37:50 21            AT A MINIMUM WE NEED THOSE DECLARANT'S

12:37:53 22    FILES, OF COURSE, BUT WE HAVE NO ABILITY, YOUR

12:37:55 23    HONOR, TO REPRESENT TO THE COURT THAT, YES, THOSE

12:37:58 24    FIVE WOULD BE A GOOD START.

12:37:59 25            AT A MINIMUM WE NEED THOSE, OF COURSE,

                                                          82

12:38:02  1   BUT THERE'S INFORMATION, YOUR HONOR, THAT MAY BE IN

12:38:04  2   OTHER FILES THAT MAY HAVE NOTHING TO DO WITH THESE

12:38:07  3   FIVE DECLARANTS THAT IS CRITICALLY, HIGHLY

12:38:10  4   INDISPUTABLY RELEVANT AND WE NEED IT BEFORE OUR

12:38:13  5   BRIEF.  WE NEED THE OPPORTUNITY TO SEE THE MATERIAL

12:38:15  6   AND TO CONSIDER THE MATERIAL.

12:38:16  7           THE COURT:  I GET ALL OF THAT.  I'LL GIVE

12:38:18  8   YOU ONE LAST POINT AND THEN WE REALLY NEED TO WRAP

12:38:21  9   THIS UP.

12:38:21 10           MR. KREVITT:  OKAY.  SO, YOUR HONOR, THE

12:38:22 11   REASON THAT I WANTED TO STAND UP WITH RESPECT TO

12:38:23 12   THE GOOGLE IS TO MAKE SURE THAT YOUR HONOR

12:38:26 13   UNDERSTOOD THE TIMING AND TO REQUEST THAN AN ORDER

12:38:28 14   BE PUT IN PLACE THAT GOOGLE PRODUCE MATERIAL

12:38:31 15   IMMEDIATELY ON A ROLLING BASIS AND THAT ALL OF THE

12:38:34 16   DOCUMENT PRODUCTION BE COMPLETE OR AT LEAST

12:38:36 17   SUBSTANTIALLY COMPLETE AT LEAST SOME NUMBER OF

12:38:42 18   DAYS, THREE DAYS, FOUR DAYS BEFORE APPLE'S

12:38:45 19   OPPOSITION IS DUE, WHICH IS WHY WE ASKED FOR THE

12:38:47 20   MATERIAL BY THE END OF THIS WEEK.

12:38:49 21           AT A MINIMUM, YOUR HONOR, SHOULD GOOGLE

12:38:51 22   PRODUCE MATERIAL AFTER OUR BRIEF IS DUE, WE

12:38:54 23   OBVIOUSLY WILL HAVE TO HAVE AN OPPORTUNITY TO

12:38:57 24   ADDRESS IT SOMEHOW, SUPPLEMENT OUR BRIEFING, AND

12:39:00 25   DEAL WITH THAT AND I UNDERSTAND IN SOME RESPECTS

83

12:39:02 1    THAT'S A JUDGE KOH QUESTION AS OPPOSED TO AN ISSUE

12:39:05 2    FOR YOUR HONOR.

12:39:05 3              THE COURT:  YOUR UNDERSTANDING IS

12:39:06 4    CORRECT.

12:39:11 5              MR. KREVITT:  YES.  SO TO BE VERY

12:39:11 6    SPECIFIC, THOUGH, GIVEN THE IMPORTANCE OF THIS

12:39:14 7    MATERIAL AND GOOGLE'S CLEAR INVOLVEMENT WITH

12:39:16 8    RESPECT TO THE OPPOSITION OF THE PRELIMINARY

12:39:18 9    INJUNCTION MOTION, WE WOULD REQUEST AN ORDER

12:39:20 10   COMPELLING GOOGLE TO SUBSTANTIALLY COMPLETE THEIR

12:39:22 11   DOCUMENT PRODUCTION BY THE END OF THIS WEEK.

12:39:24 12             THE COURT:  ALL RIGHT.  THANK YOU VERY

12:39:26 13   MUCH.

12:39:27 14             MR. EMANUEL:  THANK YOU, YOUR HONOR.

12:39:28 15             THE COURT:  ALL RIGHT.  THE MATTER IS

12:39:29 16   SUBMITTED.  THANK YOU.  AND HAVE A GOOD DAY.

12:39:29 17             (WHEREUPON, THE PROCEEDINGS IN THIS

12:39:32 18   MATTER WERE CONCLUDED.)

19

20

21

22

23

24

25

84

1

2

3

CERTIFICATE OF REPORTER

4

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9   REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23                    /S/

                    _____
24                    IRENE RODRIGUEZ, CSR, CRR
                    CERTIFICATE NUMBER 8074
25
                    DATED:  MAY 3, 2012

                                                    85