JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                              Plaintiff,<br><br>          v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                              Defendants. | CASE NO.: 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**<br><br>**Hearing:**<br>Date:  June 7, 2012<br>Time: 1:30 P.M.<br>Place:  Courtroom 8<br>Judge:  Hon. Lucy H. Koh |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                   Counterclaim-Plaintiff,<br><br>          v.<br><br>APPLE INC., a California corporation,<br><br>                   Counterclaim-Defendant. | PUBLIC REDACTED VERSION |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT................................................................................................1

I.     APPLE WILL PREVAIL ON THE MERITS ............................................................2

       A.     U.S. Patent No. 8,086,604 (Unified Search)................................................2

       B.     U.S. Patent No. 8,074,172 (Word Recommendations) ..................................3

       C.     U.S. Patent No. 8,046,721 (Slide-to-Unlock) ..............................................5

       D.     U.S. Patent No. 5,946,647 (Links for Structures) ........................................6

II.    APPLE WILL SUFFER IRREPARABLE HARM ....................................................8

       A.     The Galaxy Nexus Will Permanently Deprive Apple of Market Share.........................9

       B.     The Galaxy Nexus Causes Incalculable Harm to Apple's Entire Business ................11

       C.     The Patented Features Are Key to the Functioning and Success of the Galaxy
              Nexus ...........................................................................................................12

III.   THE BALANCE OF HARDSHIPS FAVORS A PRELIMINARY INJUNCTION ...............15

IV.    THE PUBLIC INTEREST SUPPORTS A PRELIMINARY INJUNCTION .........................15

CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola Inc.*,
   Case No. 1:11-cv-08540, pending in the Northern District of Illinois ............................................ 7

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 2012-1105, slip op. (Fed. Cir. May 14, 2012) ................................................................9, 12, 13

*Bd. of Regents of Univ. of Tex. Sys. v. BENQ Am. Corp.*,
   533 F.3d 1362 (Fed. Cir. 2008) .......................................................................................................... 2

*Datamize LLC v. Plumtree Software Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005) .......................................................................................................... 6

*In re Beauregard*,
   53 F.3d 1583 (Fed. Cir. 1995) ............................................................................................................ 5

*In re Skvorecz*,
   580 F.3d 1262 (Fed. Cir. 2009) .......................................................................................................... 2

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) ...................................................................................................... 4, 6

*Leader Techs., Inc. v. Facebook, Inc.*,
   770 F. Supp. 2d 686 (D. Del. 2011) .................................................................................................... 6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
   2011 WL 5601460 (Fed. Cir. Nov. 18, 2011) .................................................................................... 9

*ResQNet.com v. Lansa, Inc.*,
   346 F.3d 1374 (Fed. Cir. 2003) .......................................................................................................... 2

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) ............................................................................................. 9, 10, 11

*Yodlee, Inc. v. Cashedge, Inc.*,
   2006 WL 3456610 (N.D. Cal. Nov. 29, 2006) ............................................................................... 4, 6

**EXPLANATION OF CITATION FORMS**

**Pleadings**

Citations to "Memo" are to Apple's Motion and Memorandum in Support of Apple's Motion for a Preliminary Injunction (D.I. 10), dated February 8, 2012.

Citations to "Opp." are to Samsung's Opposition to Apple's Motion for a Preliminary Injunction (D.I. 115), dated April 23, 2012.

**Declarations Submitted With Samsung's Opposition**

Citations to "Cohen Decl." are to the Declaration of Geoff Cohen, Ph.D. Concerning U.S. Patent 8,046,721 (D.I. 130), dated April 24, 2012.

Citations to "Wagner Decl." are to the Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction (D.I. 131), dated April 24, 2012.

**Declarations Submitted Herewith**

Citations to "Balakrishnan Rep. Decl." are to the Reply Expert Declaration of Dr. Ravin Balakrishnan Concerning U.S. Patent No. 8,046,721.

Citations to "Leslie Decl." are to the Declaration of Scott Leslie in Support of Apple's Reply Memorandum in Support of Motion for a Preliminary Injunction.

Citations to "Mowry Rep. Decl." are to the Reply Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647.

Citations to "Polish Rep. Decl." are to the Reply Expert Declaration of Dr. Nathaniel Polish Concerning U.S. Patent No. 8,086,604.

Citations to "Singh Rep. Decl." are to the Reply Expert Declaration of Dr. Karan Singh Regarding U.S. Patent No. 8,074,172.

Citations to "Vellturo Rep. Decl." are to the Reply Declaration of Christopher Vellturo, Ph.D.

**Other**

Citations to "Cohen Dep." are to the Deposition Transcript of Geoffrey A. Cohen, Ph.D., dated May 2, 2012, attached as Exhibit 10 to Mowry Rep. Decl.

1    Citations to "Kaliski Dep." are to the Deposition Transcript of Martin E. Kaliski, dated May

2    10, 2012, attached as Exhibit D to Singh Rep. Decl.

3    Citations to "P.I. Order" are to the Court's Order Denying Apple's Preliminary Injunction in

4    No. 5:11-CV-01846-LHK (D.I. 452), dated December 2, 2011.

5    Citations to "Slip Op." are to the Federal Circuit's decision in *Apple, Inc. v. Samsung Elecs.*

6    *Co., Ltd.*, No. 2012-1105, slip op. (Fed. Cir. May 14, 2012).

7    Citations to "Wagner Dep." are to the Deposition Transcript of Michael J. Wagner, dated May

8    4, 2012, attached as Exhibit 4 to Vellturo Rep. Decl.

9    Citations to "*###" are to the last digits of Bates numbers on pages that have been produced

10    in this matter.

**PRELIMINARY STATEMENT**

Despite submitting 15 declarations, Samsung is unable to refute that the Galaxy Nexus infringes the four Apple patents, and is intended to and will cause long-lasting, wide-ranging and incalculable harm to Apple.  Consistent with this Court's prior P.I. Order and the Federal Circuit's recent decision in the related case, preliminary relief is clearly warranted here.

Indeed, rather than seriously dispute that the Galaxy Nexus infringes, Samsung injects only confusion with arguments that are irreconcilable with the patents.  Samsung's invalidity arguments are worse, based almost entirely on prior art already rejected by the PTO.  The Nexus also undeniably causes irreparable harm as it takes market share and hurts Apple to an extent that cannot possibly be calculated.  In fact, Samsung's own documents confirm virtually *every* point in Apple's motion, though it does not cite a single one and repeatedly makes assertions directly contrary by them.

Samsung's opposition largely boils down to its claim (repeated over and over) that ██████ ████████████████████ and thus the harm to Apple is not *severe enough* for preliminary relief. Samsung's excuse is not only inconsistent with Federal Circuit law, it also is false:  the Galaxy Nexus is a core part of Samsung's ████████████████ and was the best-selling Android phone *by any manufacturer* on the nation's largest carrier, generating ██████████████████ in revenue – and sales far greater than Samsung represents in its brief – in just a few months.  Samsung also incorrectly claims that the patented features do not "cause" the irreparable harm.  The overwhelming evidence, which Samsung altogether avoids, establishes that the patented features, alone and taken together, are core to the functionality and sales of the Galaxy Nexus, and thus cause irreparable harm.

In the end, Samsung's opposition demonstrates why preliminary relief is crucial.  In quick succession, Samsung launches one copycat, infringing product after another in a relentless campaign ████████████████████  Samsung now urges this Court to excuse its latest infringement, and the irreparable harm it causes, because the Galaxy Nexus is just one of many products, and the patented features are just four of many features.  Samsung should not be rewarded just because its infringement is so widespread; nor should its infringement be allowed to continue while it captures critical market share – the value of which far exceeds the damages it ultimately will pay.  Samsung's infringement should be stopped now.

1   I.   **APPLE WILL PREVAIL ON THE MERITS**

2       Samsung's opposition confirms that Apple will, and at the very least is likely to, prevail.

3       **A.  U.S. Patent No. 8,086,604 (Unified Search)**

4       ***The Galaxy Nexus Infringes the '604 Patent.***  The '604 patent allows a user to search

5   multiple sources of information both on the device (such as contacts) and off the device (such as the

6   Internet), all with a single interface.  The Galaxy Nexus includes the "Android Quick Search Box"

7   ("QSB"), the announcement of which reads like a summary of the '604 patent:

8         Rather than giving you one search box for the web and another for your phone, QSB
9         provides one single search box to let you search content on your phone, including
      apps, contacts, and browser history, as well as content from the web, like personalized
      search suggestions, local business listings, stock quotes, weather, and flight status, all
10         without opening the browser.  [Polish Rep. Decl. Exh 1.]

11   Samsung's sole non-infringement argument is based *entirely* on an application of the claims that is

12   contrary to well-established patent law principles.  Claim 6 requires "a plurality" (*i.e.*, at least two)

13   "heuristic modules" "*each*" of which "employs a different, predetermined heuristic algorithm."

14   Samsung admits that the QSB has at least two modules that use different search algorithms (*e.g.*, the

15   Google Search module that searches the Internet and the People module that searches contacts).  But,

16   Samsung asserts that it is not enough that a plurality of modules (two or more) *each* employs a

17   different algorithm; according to Samsung, *every* module in the device must employ a different

18   algorithm.  The claims require no such thing; they require only that each of at least two modules (*i.e.*,

19   a plurality) employs a different algorithm, regardless of what additional ones do.  The Federal Circuit

20   addressed this issue in *ResQNet.com v. Lansa, Inc.*, 346 F.3d 1374, 1382 (Fed. Cir. 2003), and found

21   infringement despite additional components because "'each of a plurality of fields' means 'each of at

22   least two fields'" *not* every field.  *ResQNet*, not cited by Samsung, precludes its argument.[1]

23       The accused modules also are "heuristic," and in fact map almost exactly to the examples in

24   the patent.  Polish Rep. Decl. ¶¶ 14-23, 30-40.  Samsung does not contend otherwise in its brief, but

25   claims that Apple's expert did not construe "heuristic modules."  That is not true, and in any event

26   Samsung's expert concedes that the algorithms used are heuristic.  *Id.* ¶¶ 41-56.

27

28     [1]  In *Bd. of Regents. v. BENQ Am. Corp.*, 533 F.3d 1362, 1367 (Fed. Cir. 2008) and *In re Skvorecz*,
580 F.3d 1262, 1268 (Fed. Cir. 2009), cited by Samsung, the prosecutions required narrow
construction of "each."

***The '604 Patent Is Valid.***  For claim 6, Samsung relies on the WAIS system and Legall patent.  Samsung's expert admits that none of the WAIS references are anticipatory, and has no evidence that the system was ever in public use.  *Id.* ¶¶ 26, 60-75.  WAIS also does not include the required heuristic modules that employ different algorithms.  *Id.*  Indeed, Samsung's expert does not identify *any* modules and instead identifies differences regarding how to configure the WAIS index, *not* differences in how that index is searched (equivalent to differences in writing the Yellow Pages, not how to look something up).  *Id.*  Legall also only discloses one component that is used for searching and, therefore, also does not disclose "a plurality of heuristic modules."  *Id.* ¶¶ 27, 76-83.  Even if Legall disclosed a plurality of modules, Samsung's expert admitted that it did not necessarily disclose that they each employ heuristic algorithms.  *Id.*

Samsung does not even allege that WAIS or Legall anticipates claim 19, but contends that the additional "incremental search" was known and would have been obvious to use with WAIS or Legall.  Neither Samsung nor its expert explains why one would combine that feature with WAIS or Legall, and Dr. Polish explains why no one would have.  *Id.* ¶¶ 29, 95-104.

## B.  U.S. Patent No. 8,074,172 (Word Recommendations)

***The Galaxy Nexus Infringes the '172 Patent.***  The '172 patent describes "a graphical user interface" for correcting errors as they are typed.  A user enters a "current character string" displayed in a "first area," while in a separate "second area" that character string and "a suggested replacement character string" are displayed.  The user has the option to "replace" the "current character string" with the "suggested replacement character string," or to keep it.  The patent focuses on what the user sees and does (*i.e.*, to keep or replace the current string with a suggested replacement string).

Samsung does not even dispute that the Galaxy Nexus infringes claim 27.  Instead, Samsung states only that Apple's expert did not "look at the instructions."  Opp. at 21.  Looking at instructions is unnecessary when screenshots clearly show the functionality, and Samsung does not deny that the Galaxy Nexus has it.  Singh Rep. Decl. ¶¶ 20, 28-30.

Samsung also does not dispute that the Galaxy Nexus provides the user interface exactly as described in claims 18 and 19.  Samsung's expert admitted that Samsung has no non-infringement position when the claims are viewed from the user experience.  Kaliski Dep. at 99:17-24.

1

2

3

4 There is absolutely no

5 support in the specification or claims for Samsung's reading of the claims, which looks at the source

6 code implementation rather than the user interface and interaction, as claimed and described

7 throughout the patent.  Indeed, the figures clearly show that the patent is focused on the user interface

8 and how the user interacts with the device.

9        *The '172 Patent Is Valid.*  Samsung also does not raise any serious validity issue, and instead

10 relies almost entirely upon prior art rejected by the PTO.  Samsung relies on Longe and Robinson

11 (which have the same disclosure in relevant respects), even though the PTO allowed all the claims

12 over the disclosure.  The references do not disclose the display of a current character string input by

13 the user in two locations: a "first area" and a separate "second area," as required by claims 18 and 19.

14 Singh Rep. Decl. ¶¶ 22-23, 42-56.  Nor do they disclose replacing the current character string with a

15 suggested replacement in the manner required by claims 18, 19, and 27; in fact, Longe and Robinson

16 teach a markedly different system and thus teach away from the asserted claims.  *Id.*

17        Samsung also admits that the undated, unauthenticated TextPlus for the Palm OS Version 5.5

18 Users Guide ("TextPlus User Guide") does not anticipate claims 18 and 19.  Nor can it anticipate

19 claim 27 because it does not show appending a punctuation mark after the selected word.  Singh Rep.

20 Decl. ¶¶ 24, 58.  Samsung claims that earlier versions of TextPlus disclosed the elements missing in

21 the TextPlus User Guide (Opp. at 18), but those elements were abandoned in favor of the more

22 limited graphical user interface that displays a current character string in only one area, not in both a

23 first and second area, and thus confirms that TextPlus, on which Samsung relies, is different from the

24 asserted claims.  *Id.* ¶¶ 59-65.  The King patent also teaches away from the '172 patent.  *Id.* ¶¶ 66-68.

25        Samsung also once again lobs out meritless indefiniteness arguments.  Samsung asserts that

26 18 and 27 are hybrid apparatus/method claims that violate *IPXL Holdings, L.L.C. v. Amazon.com,*

27 *Inc.*, 430 F.3d 1377 (Fed. Cir. 2005), even though these claims merely recite how the device responds

28 to inputs from a user, not any user action or method steps.  *See Yodlee v. Cashedge*, 2006 WL

1   3456610 at, *10 (N.D. Cal. 2006).  Samsung also asserts that claims 19 and 27 are indefinite means

2   claims, even though they do not have any language to make them so, and in fact are ordinary

3   computer-readable media claims.  *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995).

4   **C.  U.S. Patent No. 8,046,721 (Slide-to-Unlock)**

5   ***The Galaxy Nexus Infringes the '721 Patent.***  Samsung admits that the Galaxy Nexus has a

6   slide-to-unlock feature.  Indeed, the Galaxy Nexus user guide explicitly describes this slide-to-unlock

7   feature, which clearly infringes the '721 patent.

8   Samsung argues that there is "no single unlock image" because the image that will be slid to

9   unlock (a circle) is not the same image that is "initially displayed on the screen" (a padlock and

10  circle) before the user touches the device.  Opp. at 19.  But, there is no requirement that the unlock

11  image be the same as an image on the device before contact, and Samsung concedes that when a user

12  taps a predefined location, an unlock image is shown (the circle image that appears at the point of

13  user contact) which then moves with user contact in the same way as the '721 patent.  Opp. at 8.

14  That is all the claims require.  Moreover, even if the image originally displayed on the device (the

15  circled padlock) had to be the unlock image, the Galaxy Nexus still infringes even though that image

16  is modified because the patent itself explicitly discloses that the unlock image need not be a static,

17  unchanging image, but rather may change in form.  Balakrishnan Rep. Decl. ¶¶ 13, 46.

18  Samsung also argues that although there is continuous movement of the unlock image until it

19  reaches a predefined region (which the claims require), the Galaxy Nexus does not infringe because

20  there is not continuous movement *after* it reaches that region (which is *not* required).  Opp. at 16;

21  Cohen Decl. ¶ 94.  Samsung contends that the unlock "image will follow the user's finger only to a

22  point, but then jump to the unlock region."  Opp. at 16.  That is incorrect; the image "jumps" only

23  *after* it reaches the unlock region.  When the image *reaches* that region, the device is unlocked and

24  the claim satisfied, regardless of any *later* movement.  Balakrishnan Rep. Decl. ¶¶ 15-16, 54-55.

25  ***The '721 Patent Is Valid.***  Samsung relies *solely* on prior art the PTO already considered.

26  Samsung's primary reference is the Plaisant paper.[2]  Opp. at 13-14.  Incredibly, Samsung represents

27

28  _____

[2]  Samsung claims that a related video was not before the PTO, but the paper makes clear, *in the very first sentence*, that the video is commensurate with the paper.  Balakrishnan Rep. Decl. n.4.

1   to this Court that "Plaisant anticipates every element of the asserted claims of the '721 patent," even

2   though it clearly does *not* disclose numerous elements, including: (1) a touchscreen on a "hand-held

3   electronic device," (2) an image to "unlock" (as opposed to turn on/off), and (3) unlocking "*the* hand-

4   held electronic device" (as opposed to a remote device).  Balakrishnan Rep. Decl. ¶¶ 18-21, 70-83.

5   In fact, contrary to Samsung's brief, neither Samsung's expert nor Plaisant herself (who submitted a

6   declaration) claimed that the Plaisant prior art discloses all claim elements.  That is because Plaisant

7   actually discloses a *massive* built-in computer screen used to *turn on/off other* devices.  *Id.*

8           Next, Samsung relies on the Neonode N1 Guide, but that also was cited during prosecution

9   and is missing numerous limitations.  Samsung does not even allege that it anticipates any claim, and

10  in fact admits that it does not disclose at least "moving the unlock image in accordance with user

11  input."  Opp. at 14.  To fill the void, Samsung asserts as "prior art" material from *after* the '721

12  patent's *2005* priority date, including a *2006* review of the Neonode N1, a *2007* YouTube video of

13  the device, and two *undated, unauthenticated* videos evidently created by Samsung's counsel.  Cohen

14  Decl. ¶ 138.  Even these materials omit key limitations.  Balakrishnan Rep. Decl., ¶¶ 25, 102-104.

15          Unable to raise a serious prior art issue, Samsung asserts that the claims are indefinite.  First,

16  Samsung claims that the term "unlock" is unclear.  There is nothing unclear about this common

17  term.[3]  In fact, although it fails to inform the Court, Samsung uses the exact same term in its own

18  description of the Galaxy Nexus's infringing slide-to-unlock function in the Galaxy Nexus user's

19  guide.  Balakrishnan Rep. Decl., ¶¶ 32, 121.  Samsung also contends that claims 12 and 15 are

20  indefinite because "they combine both apparatus and method limitations."  Opp. at 15 (citing *IPXL*,

21  430 F.3d 1377, 1384).  But, "[t]he *IPXL* rule does not apply 'where the claims require capability, but

22  not actual use,'" such as the claims at issue here.  *Yodlee*, 2006 WL 3456610 at, *10.[4]

23          **D.  U.S. Patent No. 5,946,647 (Links for Structures)**

24          The '647 patent claims detecting structures (such as phone numbers) and performing actions

25  on the detected structures (such as dialing the number).  The Galaxy Nexus incorporates this

26

27  ---
    [3]  *Datamize LLC v. Plumtree Software Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite.").

28  [4]  Claims virtually identical to those at issue here have consistently been found valid.  *See, e.g.*, *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 710 (D. Del. 2011).

1   functionality.  In fact, the ITC recently found the asserted '647 patent claims valid and infringed by

2   an HTC phone identical in relevant respects to the Galaxy Nexus.  Samsung now argues that the ITC

3   was wrong and that no infringement exists under claim constructions Judge Posner recently issued in

4   a case involving Motorola.[5]  Samsung's arguments here are not only inconsistent with the ITC's

5   ruling, they were rejected by Judge Posner in a summary judgment ruling.  Similarly, the prior art

6   Samsung cites has been rejected multiple times by both the PTO and the ITC.

7   ***The Galaxy Nexus Infringes the '647 Patent.***  Claim 1 requires an "analyzer server" for

8   detecting structures (*e.g.*, a phone number), and for "linking actions to detected structures" (*e.g.*,

9   calling the number).  Samsung erroneously argues that because an "analyzer server" is "*a* program

10   subroutine" (under the ITC construction) or "*a* server routine" (under the Illinois construction), the

11   Galaxy Nexus has no "analyzer server" because there is no "*single* program subroutine" that

12   performs the claimed functions.  Opp. at 8 (emphases added).  But, neither the ITC nor Judge Posner

13   required the "analyzer server" to be a *single* subroutine under Samsung's narrow interpretation.  To

14   the contrary, the ITC found essentially identical Android code constituted "a program subroutine"

15   that infringed claim 1.  Mowry Rep. Decl. ¶ 9.  And, Judge Posner found that "the inventor had a

16   broad[] conception of the term 'routine'" as simply "a piece of programming necessary to perform a

17   specific function."  *Id.*, Ex. 2 at 10.  Thus, the Galaxy Nexus infringes under either construction.

18   Samsung distorts Judge Posner's construction in other ways that the court already rejected.

19   Because Judge Posner construed "analyzer server" to be "a server routine separate from a client that

20   receives data having structures from the client," Samsung asserts that the accused "analyzer server"

21   code must be completely "separate" from other components in the system.  Such a requirement would

22   make no sense because such a system could not function.  *Id.*, ¶¶ 13-15, 66-69.  In fact, Judge Posner

23   denied Motorola's summary judgment motion based on this argument, stating that "some of the

24   [analyzer server] code responsible for each task is intertwined with the client applications," while

25   "much [of the code] appears separate from and reused across the client applications."  *Id.*, Ex. 3 at 5.

---

28   [5]  *Apple Inc. v. Motorola Inc.*, Case No. 1:11-cv-08540, pending in the Northern District of Illinois.
The same law firm representing Samsung here represents HTC and Motorola in those cases.

1        Samsung finally argues that the Galaxy Nexus does not "link" or "create a specified

2    connection between" actions and detected structures "because the Browser does not create *pointers* to

3    any particular actions when it detects a structure."  Opp. at 8.  Samsung's own expert testified that

4    "creating a specified connection" does not require pointers.  Cohen Dep. at 140:17-142:9.  ████████

5    ████████████████████████████████████████████████████  Mowry Rep. Decl. ¶ 88.

6    The required linking also is apparent from the use of the device.  Once a user selects a structure, the

7    device offers specified "actions" it then performs.  Judge Posner denied a non-infringement summary

8    judgment motion based on this argument as well (again not mentioned by Samsung).  *Id.* Ex. 3 at 5.

9        ***The '647 Patent Is Valid.***  Samsung relies largely on the same prior art raised in prosecution,

10    reexamination and litigation.  Nevertheless, Samsung argues that the repeated validity findings

11    should be ignored because Apple supposedly stipulated to a "broad" construction in the ITC, but

12    urged a "narrow" one in reexamination.  Opp. at 6.  That is false, and Samsung offers *no* explanation

13    as to how Apple's positions are inconsistent, or how the ITC construction differs from that in

14    reexamination.  Samsung also ignores the reexamination examiner's statement that he applied the

15    broadest reasonable interpretation to "analyzer server."  Mowry Rep. Decl., Ex. 6 at 2.  In fact,

16    Samsung's expert admitted that the PTO's understanding of "analyzer server" was *broader* than his

17    own narrow construction.  Cohen Dep. at 236:4 – 237:19.  Thus, even if Samsung could explain how

18    one construction was "broader" or "narrower," it ignores that the claims were deemed valid with the

19    *broadest* scope, and with a scope *broader* than even its own expert applies.[6]

20  **II.    APPLE WILL SUFFER IRREPARABLE HARM**

21        Samsung never denies what Apple demonstrated, and this Court already found:  Samsung's

22    smartphones take market share from Apple, and "potential customers that Apple loses to Samsung

23    may have long-term effects that are difficult to calculate and may not be recaptured."  P.I. Order at

24    32.  In fact, the two declarations actually from Samsung employees do not dispute *anything* in

25

26        [6] Samsung relies on previously considered prior art.  Despite Samsung's claim, the Newton system
was asserted in the ITC, but dropped before trial presumably because it is missing numerous

27    elements.  Mowry Rep. Decl. ¶¶ 22-23, 146-166.  Likewise, the ITC found that the Pandit patent did
not disclose the elements of claims 1 and 8, and both the ITC and the PTO agreed it is not even prior

28    art because Apple conceived of the '647 patent before Pandit's priority date.  *Id.* ¶¶ 25-26, 201-221.
The Sidekick reference also is cumulative of art rejected by the ITC and PTO.  *Id.* ¶¶ 28-29, 118-145.

1    Apple's motion; neither denies that the Galaxy Nexus takes market share from Apple or that the four

2    patented features enable it to do so.  The *only* "evidence" Samsung submits is an expert declaration of

3    Mr. Wagner, which is belied on nearly every point by Samsung's documents and his own testimony.[7]

4    **A.  The Galaxy Nexus Will Permanently Deprive Apple of Market Share**

5        Long-term loss of market share constitutes irreparable harm as a matter of law.  *Robert Bosch*

6    *LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011); *O2 Micro Int'l Ltd. v. Beyond*

7    *Innovation Tech. Co., Ltd.*, 2011 WL 5601460, at *8-9 (Fed. Cir. Nov. 18, 2011).[8]  As Apple

8    established, sales of the Galaxy Nexus *will* result in a substantial long-term loss of iPhone market

9    share, which this Court found would be both "difficult to calculate and may not be recaptured," and

10   thus "could support a finding of irreparable harm."  P.I. Order at 32-33.

11       This is especially so considering the "absence of other competitors in the relevant market,"

12   Slip Op. at 25, as the smartphone market has become, as Samsung's expert's acknowledged, a "two-

13   horse race" between Apple and Samsung.  Wagner Dep. at 16:6-16; Vellturo Rep. Decl. ¶ 54.[9]  The

14   Federal Circuit has held that the "existence of a two-player market may well serve as a substantial

15   ground for *granting* an injunction" because "it creates an inference that an infringing sale amounts to

16   a lost sale for the patentee."  *Bosch,* 659 F.3d at 1151 (emphasis in original); Slip Op. at 25.

17       Unable to refute that the Galaxy Nexus does – and, in fact, is explicitly intended to – take

18   substantial market share from Apple, Samsung claims that "even if Apple did sell fewer phones, that

19   evidence alone would be insufficient to prove irreparable harm."  Opp. at 24.  Apple is not relying on

20   lost sales *alone*.  Rather, given the critical juncture in which first-time buyers are moving to

21   smartphones as well as platform stickiness – both of which this Court addressed and Samsung's

22   expert and documents acknowledge – Apple will lose significant long-term market share, which *does*

23   prove irreparable harm.  *See Bosch*, 659 F.3d at 1151; *O2 Micro*, 2011 WL 5601460, at *8-9.

24   _____

25   [7]  Apple respectfully refers the Court to the Reply Declaration of Apple's expert, Dr. Vellturo, for a
     more thorough discussion of irreparable harm, and the extent to which the positions in Samsung's
     brief and expert declaration are irreconcilable with Samsung's own documents.

26   [8]  Although *Bosch* and *O2 Micro* are recent and relevant Federal Circuit cases addressed by Apple
27   (and this Court as to *Bosch*), Samsung cites neither, and makes arguments inconsistent with both.

     [9]  The "two horse" nature of the market also belies Samsung's speculation that "likely, other sellers
28   of Android-based phones lost sales to the Galaxy Nexus," (Opp. at 24), and explains why Samsung
     targets Apple, not Android manufacturers, in its advertising.

1    Indeed, in addition to the vast evidence Apple has submitted, Samsung's expert and

2  documents confirm that the Galaxy Nexus is designed to and will take long-term market share from

3  Apple.  Samsung has actually concluded that its ████████████████████████████████████████

4  Vellturo Rep. Decl. ¶ 56, Ex. 35 at *690.  Moreover, in connection with the release of the Galaxy

5  Nexus, ████████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████ *Id*. ¶ 60, Ex. 35 at *798, Ex. 50 at

8  *432. ████████████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████ Wagner Dep. at 9:24-10:1, 46:19-47:3.

10    Samsung's documents also confirm this Court's conclusion that platform loyalty and

11  stickiness "make[] the initial decision regarding which product to purchase even more important."

12  P.I. Order at 32.  Samsung dismisses this Court's conclusions and Apple's evidence, ████████

13  ████████████████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████ Vellturo Rep.

15  Decl. ¶¶ 19-30, Ex. 37 at *358, *373 ████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████ *Id.*, Ex. 40 at *7000,

18  Ex. 37 at *372.  Samsung's ████████████████████████████████████████████████████████

19  ████████████████████████ *Id.* ¶ 59, Ex. 56 at *374, *402. ████████████████████████

20  ████████████████████████████████████████████████████████████████████████████████

21  ████████████ Wagner Dep. at 46:19-48:1.  Finally, ████████████████████████████████

22  ████████████████████████████████████████ *Id.* at 96:23-97:11.

23    Despite all this evidence, Samsung contends that the extent of Apple's lost market share is

24  "speculative" because it has not been quantified with precision by "projections" or other "data."

25  Opp. at 23.  Such precision is neither possible nor required.  The incalculability of future lost market

26  share is the very basis for *granting* an injunction, not denying one.  *Bosch*, 659 F.3d at 1154.

27  Samsung's documents confirm that there is nothing speculative about *whether* the Galaxy Nexus will

28  take substantial long-term market share, even if the magnitude of that loss cannot be calculated.

1    Samsung also repeatedly claims that ████████████████████████████

2    ██████████████ Samsung's portrayal of ██████████████████ is seriously misleading.  The

3    Galaxy Nexus is Samsung's flagship phone on Verizon and Sprint, and has been the first or second

4    best-selling Android phone *by any manufacturer* on Verizon (the largest carrier) since its release.

5    Wagner Decl., Exs. M-N.  When launched on Sprint, pre-orders sold out in four days.  Vellturo Rep.

6    Decl. ¶ 60.  Samsung has sold ████████████████ Galaxy Nexus phones – *many more than Samsung*

7    *claims in its brief* – and in just the last few months, Samsung has generated ████████████████████

8    ██████ in revenue from the Galaxy Nexus *alone*.  *Id*. ¶ 65.  With sales of the device, Samsung just

9    had an exceptional first quarter 2012, *surpassing* Apple in worldwide smartphone sales.  *Id*. ¶ 47.

10   Samsung mentions *none* of these facts, which directly contradict the central premise of its opposition.

11        Samsung also incorrectly contends that the Galaxy Nexus must not take all that much market

12   share from Apple because the iPhone is still successful.  Apple's success does not give Samsung

13   license to infringe and seize market share with impunity.  Moreover, whatever Apple's market share

14   is, it would be higher, and grow more quickly, had Samsung not been selling infringing competing

15   devices, all the while targeting the iPhone in advertising for its products.  Samsung's expert

16   acknowledged this unassailable point.  Wagner Dep. at 18:10-13 ██████████████████████████

17   ████████████████████████████████████████████████████████████████████████████

18   ██████████████████  Vellturo Rep. Decl., Ex. 51 at *334.  And, Samsung's strategy has worked.  While

19   Apple's shipments less than doubled over the last year, Samsung's nearly *quadrupled*.  *Id*. Ex.19.

20        **B.  The Galaxy Nexus Causes Incalculable Harm to Apple's Entire Business**

21        Apple also established in painstaking detail that harm from the Galaxy Nexus will radiate out

22   to impact many aspects of Apple's business, long into the future.  Memo at 20-25.  As this Court

23   found, and Apple demonstrated, loss of iPhone sales leads to lost "sales of tag-along products like

24   apps, other Apple devices such as desktops, laptops, and iPods, and future models of Apple

25   smartphones."  P.I. Order at 32; Vellturo Rep. Decl. ¶¶ 123-127.  The Federal Circuit has held that

26   even harm to "only a portion of a patentee's business" may be irreparable because that "says nothing

27   about whether that harm can be rectified."  *Bosch*, 659 F.3d at 1152.  Here, most of Apple's business

28   is affected as Galaxy Nexus users will be far less likely to buy not only iPhones, but also iPad, iPod

Touch, iMac, and Macbook products, and will not download content (*e.g.*, apps and music) to Apple devices because they use (and will continue to use) Android devices instead.  Vellturo Rep. Decl. ¶¶ 123-127.  These wide-ranging harms and lost "future downstream purchases" cannot be calculated and "would be difficult to recover," and thus constitute irreparable harm.  P.I. Order at 32.

Samsung does not even attempt to refute the myriad harms Apple will suffer beyond initial lost iPhone sales.  Samsung's *only* response is to assert that the *extent* of these harms is "speculative" and "belied by Apple's continued actual success across all its product lines."  Opp. at 25-26.  There is nothing speculative about *whether* Apple will lose downstream sales by virtue of lost iPhone sales.  And, the harm to Apple is irreparable precisely *because* the full extent cannot be calculated.

Moreover, just because Apple products manage to succeed despite Samsung's infringement does not negate the long-lasting harm to Apple.  However many other products Apple sells, it sells fewer by virtue of the Galaxy Nexus and the stickiness to Android that results.  That is, in fact, Samsung's strategy, ███████████████████████████████████████████ ██████████████████████████████████████████████████████ Vellturo Reply Decl. ¶¶ 21, 125, Ex. 51 at *324.  While Apple will undeniably suffer harm beyond lost iPhone sales, the full extent of that harm cannot be calculated, and is thus irreparable.

**C. The Patented Features Are Key to the Functioning and Success of the Galaxy Nexus**

The patented features are core to the functionality and sales of the Galaxy Nexus, and thus cause the irreparable harm.  Slip. Op. at 24.  Samsung does not really challenge Apple's detailed showing that the four patents alone, and certainly all taken together, cover key technology.  Samsung does not even address three of the four patents, and distorts the scope of importance of the fourth.

Rather than confront Apple's substantial evidence, Samsung asserts only that Apple does not have survey evidence that consumers bought the Galaxy Nexus *specifically* because of the four patented features.  Opp. at 27-28.  The Federal Circuit rejected Samsung's singular focus on survey evidence, stating: "we do not hold that customer survey evidence or other proof of . . . 'consumer motivation' is a prerequisite to a finding of irreparable harm."  Slip. Op. at 18 n.3.

To the contrary, irreparable harm requires "a nexus between infringement of the patent and some market-based injury, be it as a result of consumer preference or some other kind of causal link."

1    Slip. Op. at 24.  That nexus may be established, and irreparable harm established, by showing that the

2    patented features lead to demand and sales of the Galaxy Nexus, or that there would be fewer sales

3    "if the offending feature[s] were absent."  *Id*. at 17.  In its prior P.I. Order, this Court similarly held

4    that the nexus may be satisfied if the features are "necessary to, or a core functionality of, the

5    products," or consumers' "purchasing decisions are based on the[ir] existence."  P.I. Order at 63-64.

6          Samsung does not even allege that the four patented features at issue here are not necessary

7    and core functionalities of the Galaxy Nexus, because they so clearly are.  The overwhelming

8    evidence also establishes – objectively and conclusively – that Apple is losing sales because the

9    patented features drive demand for, and sales of, the Galaxy Nexus and that their absence would

10   reduce such sales and demand substantially.

11         ***The '604 Patent (Siri and Unified Search).***  The unified search capability of the '604 patent

12   allows one to search across multiple different data sources (*e.g.*, the Internet, contacts, applications)

13   all at once, with just one search.  This feature is part of Siri on the iPhone 4S and the quick search

14   box ("QSB") on the Galaxy Nexus, and it is core to the functionality and sales of both products.

15         Samsung does not dispute that Siri is a critical feature, and that consumers flocked to buy the

16   iPhone 4S because of it.  Samsung argues only that because Siri also has speech recognition, the

17   search component must not be important.  That argument is illogical and inconsistent with the

18   evidence.  Siri is core to the functioning and sales of the iPhone not just because it hears requests, but

19   because it *delivers search results*.  Vellturo Rep. Decl. ¶¶ 96, 102.  Siri would not be Siri and would

20   be considerably less valuable if it did not provide the robust searching it does.  A *Forbes* article noted

21   that while Siri may be "the best voice recognition application in history," "its potential really lies in

22   its ability to revolutionize the way we search."  *Id*. ¶ 103, Ex. 15 at *197.  Consumer studies (about

23   which Apple testified but Samsung does not mention) ███████████████████████████████

24   ███████████████████████████████████████████  *Id*. ¶ 101, Ex. 30 at *092.[10]

25         The unified search feature also is critical to, and drives sales of, the Galaxy Nexus.  The

26   Android developer's guide (not cited by Samsung) stresses that "search is a core user feature on

27   _____

28   [10]    Samsung contends that Apple has not shown that the patented feature is important because it did
     not show that customers considered the "heuristic search algorithms" of the '604 patent when buying
     devices.  Opp. at 28.  Neither the Federal Circuit nor this Court requires such a showing.

Android." *Id.* ¶ 104, Ex. 6 at 1.  And not just any search, but a search feature, like the '604 patent, that lets users "search any data that is available to them, whether the content is located on the device or the Internet." *Id.*  Third parties agree that the QSB "adds a whole new layer of functionality" that helps Android phones "win new customers, even ones with iPhones." *Id.* ¶ 104, Ex. 10 at 2.

*The '172 Patent (Auto Correction).*  The auto-correct feature is essential for the iPhone and Galaxy Nexus (and others smartphones with touchscreens).  The feature corrects errors and suggests alternate words as a user types.  Without it, touchscreen keyboards, which are more prone to error than tactile ones, would be difficult and intimidating, particularly to the all-important first-time users, who are unfamiliar with, and may be reluctant to use, touchscreens.  *Id.* ¶¶ 83-87.  This feature was critical in overcoming skepticism when Apple introduced the iPhone. *Id.*  One leading commentator, for the *Wall Street Journal*, initially said that Apple's touchscreen would be difficult to use and a mistake; but after two weeks changed his mind and "called out the fact" that "having auto correction made it as good or better than any keyboard he had ever used." *Id.* ¶ 87 Another commentator, for the *New York Times*, similarly noted that it was auto correct, "some very smart software," that made the touch-screen useable. *Id.* ¶ 86. Google also ███████████████████████████████████ ███████████████████████████████████████████████████ Leslie Decl. Ex. 1 at 5.  Accordingly, this feature is necessary for sales of the Galaxy Nexus.  Vellturo Rep. Decl. ¶ 88.

*The '721 Patent (Slide-to-Unlock).*  Slide-to-unlock is an iconic feature of the iPhone, appearing in nearly every advertisement for the iPhone from the start (*Id.* ¶ 74), and also is a core feature of the Galaxy Nexus (and not only because it lets Samsung copy the iPhone experience).  It provides a way for users to unlock their phones with a precise motion that minimizes accidental activations (*e.g.*, from a pocket).  Unlike prior methods, it also is intuitive and easy to use.

*Id.* ¶ 80, Ex. 49 at *973.

1 ████████████████████████████████████████████████████

2 ██████████████████████████    *Id.* ¶ 79, Ex. 33 at *472; Ex. 42 at *603.

3     **The '647 Patent (Links for Structures).**  Providing links for structures is an important aspect

4 of the user experience, and is core to both the iPhone and the Galaxy Nexus.  *Id.* ¶¶ 90-95.  It

5 recognizes data on the screen (*e.g.*, a number in an email or web page) as something a user might

6 wish to interact with, and allows the user to take an action on that data (*e.g.*, dialing or storing the

7 number) simply by touching it.  A phone without this feature would be far more cumbersome, and

8 less appealing to consumers.  The absence of this feature would fundamentally change the easy and

9 intuitive way users interact with their devices, and diminish sales.  *Id.*  The feature was, in fact, a

10 principal focus of Apple's original promotion of the iPhone. ████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████    *Id.* ¶ 94, Ex. 32 at *915.[11]

15 **III.    THE BALANCE OF HARDSHIPS FAVORS A PRELIMINARY INJUNCTION**

16     Although Samsung includes a section in its brief purporting to address the balance of the

17 hardships (Opp. at 31-32), it never even mentions any hardship it would suffer, let alone how such

18 unidentified hardship could possibly outweigh the wide-ranging irreparable harm to Apple.

19 **IV.    THE PUBLIC INTEREST SUPPORTS A PRELIMINARY INJUNCTION**

20     Samsung's entire discussion of public interest is its claim that the public has an interest in

21 promoting competition.  Opp. at 32-33.  There is, of course, no public interest served by

22 "competition" based on Samsung's serial, willful and wide-spread patent infringement.

23                                         **CONCLUSION**

24     Apple respectfully requests that this Court grant Apple's motion for a preliminary injunction.

25

26 ————————————————

27 [11] Samsung wrongly suggests that Apple delayed in seeking preliminary relief even though Apple
filed this motion the day it filed the complaint and within weeks of the Galaxy Nexus's launch.

28 ████████████████████████████████████████████████████
                                        Opp. at 31.

GIBSON, DUNN & CRUTCHER LLP

Dated:  May 14, 2012                          By:   /s/ H. Mark Lyon
                                                     H. Mark Lyon

                                              *Attorneys for Plaintiff Apple Inc.*