

IN THE UNITED STATES
PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| APPLICANTS: | James R. Miller et al. |
| SERIAL NO.: | 08/595,257 |
| FILING DATE: | February 1, 1996 |
| TITLE: | System and Method for Performing an Action on a Structure in Computer-Generated Data |
| EXAMINER: | Patrick N. Edouard |
| ART UNIT: | 2741 |
| ATTY. DKT. NO: | P1716/PA357 |

#### CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231, on the date printed below:

Dated: 4/28/98                           _____
                                         Rodney L. Lacy

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

### REMARKS

Claims 1-20 were pending, and all were rejected in the Patent Office Action mailed 1/28/98 (paper #7). In response, please consider the following remarks and reconsider the patentability of claims 1-20.

1

### Claim Rejections – 35 U.S.C. §102

In paragraph 2 of the Office Action, the Examiner rejected claims 1-3, 11-14 and 20 under 35 U.S.C. §102(e) as being anticipated by U.S. patent No. 5,574,843 to Gerlach et al.

Before addressing the rejections it may be helpful to briefly review the inventions at issue. The Gerlach disclosure is directed to a computer system and methods for editing multimedia presentations. The user interacts with the system through the selection and placement of icons. Each icon represents a multimedia event or command. The manner in which the user selects and places the icons on the screen controls the order and content of a presentation that is produced as a result of the user's editing. In essence, Gerlach teaches a visual programming language directed to producing multi-media presentations (see column 3 lines 1-3).

Applicants' disclosure is directed to a computer system and methods for dynamically scanning computer data for recognizable patterns. Once a pattern has been recognized, the user may select an action to be applied to the pattern. For example, if a pattern representing a telephone number is found in a document, the user may select an action that automatically takes the recognized telephone number and places it in a telephone directory.

In paragraph 2 of the Office Action, the Examiner alleges that claims 1-3, 11-14 and 20 are anticipated under 35 U.S.C. §102(e) by Gerlach. Specifically, the Examiner asserts that Gerlach, at column 50 lines 6-14, teaches "an analyser server for detecting structures in the data, and linking actions to the detected structures." Applicants respectfully traverse. The word "structure" is a critical term used by both Gerlach and Applicants. The Gerlach specification consistently uses "structure" to refer to the linked list *data structures* that are added to the data in order to give the data a form to support the events and

commands associated with icons in the multimedia editing system. These data structures are generated and interpreted by, and totally *internally* to, Gerlach's system. Examples of this type of usage can be found primarily in Figure 9a, Figure 9b, Figure 24 and column 21 line 6 – column 22 line 64.

In contrast, Applicants' specification and claims use the term "structure" to mean a recognizable pattern having "semantic significance such as phone numbers, e-mail addresses, post-office addresses, zip codes and dates" (page 1, lines 12-13 and lines 21-24). These structures can appear in any document or file and are generated *externally* to Applicants' system. In addition, Applicants' invention is a system-wide service that can be used to enable cooperating systems to detect recognizable structures in their data.

When analyzed in view of the differing definitions of "structure" used by Gerlach and by Applicants, it is clear that Gerlach neither teaches nor suggests an analyzer server for detecting structures, i.e. patterns, in the content of the data, or linking actions to the detected structures. Gerlach does not teach or suggest that a broad range of dynamic recognizable patterns should be linked with actions that a user finds desirable. Instead, Gerlach teaches the addition of static, internally defined linked list data structures to support linking events and commands represented by icons that control a multimedia presentation (see column 21 lines 11-14).

Also in paragraph 2, the Examiner asserts that Gerlach discloses "a user interface enabling the selection of a detected structure and a linked action (his mouse 110 and his keyboard 115, col.50, lines17-24)." Applicants respectfully disagree with the Examiner's interpretation. While a mouse and keyboard comprise elements that are typically part of a user interface, nothing in the language cited by the Examiner, nor in the specification, ties the use of these elements to the structures. In fact, the structures described in the claim language cited by the Examiner are internal linked list data structures that are never seen

3

by the user and are therefor incapable of selection. The selection process in Gerlach is directed to selecting files, icons and menus, not structures (see Figure 24, column 6 lines 31-32 and lines 48-49). As discussed above, there is no teaching of a detected structure as the term is used in Applicant's specification. Because there is no detected structure, there can be no teaching of "a user interface enabling the selection of a detected structure."

Further in paragraph 2, the Examiner cites Figure 24 and column 50 lines 25 – 32 and asserts that the cited items teach "an action processor for performing the selected action ... of the received data structure." Applicants respectfully disagree with the Examiner. Figure 24 clearly shows that it is the icon, not a detected structure, that is selected and that the structure is generated in response to the icon selection. This is quite different from selecting a pre-existing structure detected from within externally generated data. Therefor Gerlach neither teaches nor suggests an action processor for performing a selected action on the detected structure.

For the above reasons, the Examiner is respectfully requested to withdraw the rejection of claims 1-3, 11-14 and 20.

### Claim Rejections – 35 U.S.C. §103

In paragraph 4 of the Office Action, the Examiner rejected claims 4-10 and 15-19 under 35 U.S.C. §103(a) as being unpatentable over Gerlach in view of U.S. patent No. 5,369,575 to Lamberti et al. Applicants respectfully traverse and request withdrawal of the rejection.

The Examiner correctly notes that Gerlach does not teach that the analyzer server includes grammars and a parser for detecting structures in the data. However, the Examiner goes on to assert that Lamberti teaches parsing and grammars. Applicants respectfully disagree with the Examiner's assertion that Lamberti is applicable, for the reasons detailed below.

4

First, as discussed above, the structures used in Gerlach are linked lists that are internally generated and understood by the system. There is no concept of a detected structure in Gerlach.

Second, Gerlach is a visual programming system in which the user is limited to selecting menus and icons in a tightly constrained manner to edit a multi-media presentation. Because it is a tightly constrained visual-programming environment for editing a multi-media presentation, there is no requirement for a grammar or a parser. The Gerlach specification and claims do not use any variants of the words "parse" or "grammar." Therefor Gerlach does not teach or suggest combining the natural language parser in Lamberti or any other type of parser.

Third, Lamberti is a natural language parser and therefor is very different from a parser for regular expressions, email addresses, postal addresses or telephone numbers, the structures of which do not follow the rules of a natural language; instead they have their own distinct, recognizable structure. Natural language parsers are not designed to detect or parse such structures, rather they are designed to parse generalized sentence structures used in ordinary spoken or written language. Therefore, Lamberti would fail to parse the structures detected in Applicants' invention and therefore teaches away from Applicants' invention.

Also in paragraph 4, the Examiner states that it would have been obvious "to combine the analyser as taught by Gerlach with the parser as taught by Lamberti because the computer could employ a feedback method to reinforce a user's confidence and knowledge that the computer comprehends a query." The Examiner appears to have misunderstood the Applicants' invention. Unlike the natural language parser in Lamberti, there is no need in Applicants' invention to reinforce or train the computer to detect structures. Structures are automatically detected in the parsing process and there is no need to employ a feedback

5

method to indicate that the computer has correctly parsed the structure. In addition, Applicants' invention does not require the use of queries, as the Examiner seems to indicate.

For the reasons discussed above, Gerlach in view of Lamberti does not teach or suggest an analyzer server that includes grammars and a parser. The Examiner is respectfully requested to withdraw the rejection of claims 4-10 and 15-19.

## Conclusion

Applicants believe that claims 1-20 are in allowable form, and, in view of the above remarks, respectfully request withdrawal of the rejections and early allowance of the claims.

Respectfully submitted,

James R. Miller et al.

By: *[signature]*

J. Eppa Hite
Reg. No. 30,266
Carr & Ferrell LLP
2225 East Bayshore Road, Suite 200
Palo Alto, CA 94303
(650) 812-3428