# In The Matter Of:

*Apple, Inc.*
*vs.*
*Motorola, Inc., et al*

_____

*David John Wright*

*April 6, 2012*

_____

## CONFIDENTIAL APPLE BUSINESS INFORMATION
*Attorneys' Eyes Only - Under Protective Order*

**MERRILL CORPORATION**
LegaLink, Inc.
311 South Wacker Drive
Suite 300
Chicago, IL 60606
Phone: 312.386.2000
Fax: 312.386.2275

Confidential Apple Business Information - Attorneys' Eyes Only - Under Protective Order
David John Wright    April 6, 2012

---

**Page 1**

```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                             --oOo--
       APPLE INC. and NeXT    )
       SOFTWARE, INC., (f/k/a NeXT )
       COMPUTER, INC.),       )
                              )
             Plaintiffs,      )
                              )
           vs.             ) No. 1:11-cv-08540
       MOTOROLA, INC. and MOTOROLA )
       MOBILITY, INC.,        )
                              )
             Defendants.      )
       _____)


              CONFIDENTIAL APPLE BUSINESS INFORMATION
              ATTORNEYS' EYES ONLY - UNDER PROTECTIVE ORDER


                     VIDEOTAPED DEPOSITION OF

                       DAVID JOHN WRIGHT
                 _____
                      FRIDAY, APRIL 6, 2012




       REPORTED BY: DIANE M. WINTER, RMR, CRR, CSR NO. 3186
```

---

**Page 2**

```
 1                         I N D E X
 2                    INDEX OF EXAMINATIONS
 3                                              PAGE
 4      BY MS. FAIRNENY                            7
 5
 6
 7
 8
 9              EXHIBITS MARKED FOR IDENTIFICATION
10      No.     Description                       Page
11      Exhibit 1   Resume of David J. Wright
                    (WI-Apple0456931/34)............... 37
12
        Exhibit 2   Email dated 9-28-94, Subject:
13                  "Structure detectors"
                    (WI-Apple1729181).................. 74
14
        Exhibit 3   The ATG Review, No. 14, April 1997
15                  (WI-Apple0313263/296).............. 74
16      Exhibit 4   US Patent No. 5,946,647
                    (No Bates)......................... 92
17
        Exhibit 5   Email dated 6-25-96, Subject: "Re:
18                  TF$ slides" (APLNDC630-0000117804). 111
19      Exhibit 6   Email chain, topmost dated 11-9-95,
                    Subject: "Re: More problems with
20                  SD (" (WI-Apple1729112/13)......... 119
21      Exhibit 7   Email dated 11-26-96, Subject:
                    "Update on Performance of LiveDoc"
22                  (WI-Apple0457266).................. 120
23      Exhibit 8   Email dated 11-26-96, Subject: "Re:
                    Update on Performance of LiveDoc"
24                  (WI-Apple0457267).................. 126
25
```

---

**Page 3**

```
 1      Exhibit 9   Engineering Response Document titled
                    "Apple Data Detectors", ver. 1.0
 2                  (WI-Apple0457269/80)............... 130
 3      Exhibit 10  Structure Detectors Engineering
                    Reference Specification, ver. 1.0
 4                  (WI-Apple1729538/53)............... 131
 5      Exhibit 11  Engineering Response Document titled
                    "Apple Data Detectors", ver. 1.0,
 6                  with marketing documents attached
                    (WI-Apple1729324/46)............... 139
 7
        Exhibit 12  Email chain, topmost dated 5-23-95,
 8                  Subject: (Left blank)
                    (APLNDC630-0000118136)............. 150
 9
        Exhibit 13  Email chain, topmost dated 9-28-94,
10                  Subject: "Re: Nautiuls wants your
                    technology" (WI-Apple1729183/86)... 154
11
        Exhibit 14  Email dated 6-2-95, Subject:
12                  "Finally - working code!"
                    (WI-Apple1719542).................. 165
13
        Exhibit 15  Screen Shot LiveDoc 1.6 demo
14                  (WI-Apple1719569).................. 168
15      Exhibit 16  Screen Shot LiveDoc 1.6 demo
                    (WI-Apple1719570).................. 168
16
        Exhibit 17  Screen Shot (WI-Apple1719571)...... 168
17
        Exhibit 18  Screen Shot (WI-Apple1719572)...... 168
18
        Exhibit 19  Screen Shot (WI-Apple1719573)...... 168
19
20
21
22
23
24
25
```

---

**Page 4**

```
 1           The videotaped deposition of DAVID JOHN
 2      WRIGHT was taken by the defendants at 201 Redwood
 3      Shores Parkway, Redwood Shores, California,
 4      commencing at 10:28 A.M., on FRIDAY, APRIL 6, 2012,
 5      before DIANE M. WINTER, CSR, pursuant to Notice and
 6      Subpoena.
 7                           --oOo--
 8                      A P P E A R A N C E S
 9      FOR THE PLAINTIFFS APPLE AND NEXT SOFTWARE, INC. AND
        THE DEPONENT:
10      (In the Northern District of Illinois case)
11          WEIL, GOTSHAL & MANGES LLP
            201 Redwood Shores Parkway
12          Redwood Shores, California  94065-1134
            650.802.3000
13          BY:  JILL J. SCHMIDT, ESQ.
                 jill.schmidt@weil.com
14
15
16
17      FOR THE PLAINTIFFS APPLE, INC. AND THE DEPONENT:
        (In the Northern District of California case)
18
            GIBSON, DUNN & CRUTCHER LLP
19          2100 McKinney Avenue
            Dallas, Texas  75201-6912
20          214.698.3100
            BY:  ROBERT A. VINCENT, ESQ.
21               rvincent@gibsondunn.com
22
23
24
25
```

1 (Pages 1 to 4)

Confidential Apple Business Information - Attorneys' Eyes Only - Under Protective Order
David John Wright    April 6, 2012

## Page 5

```
 1   FOR THE DEFENDANTS MOTOROLA, INC. AND MOTOROLA
     MOBILITY, INC.:
 2      (In the Northern District of Illinois case)
 3      QUINN EMANUEL URQUHART & SULLIVAN LLP
        51 Madison Avenue, 23rd Floor
 4      New York, New York  10010
        212.849.7000
 5      BY:  LAURA FAIRNENY, ESQ.
             laurafairneny@quinnemanuel.com
 6
 7
 8
 9   FOR THE DEFENDANTS SAMSUNG ELECTRONICS CO., LTD.,
     ET AL.:
10      (In the Northern District of California case)
11      QUINN EMANUEL URQUHART & SULLIVAN LLP
        51 Madison Avenue, 23rd Floor
12      New York, New York  10010
        212.849.7000
13      BY:  ANASTASIA M. FERNANDS, ESQ.
             anastasiafernands@quinnemanuel.com
14
15
16
17   ALSO PRESENT:  Patrick Murray, videographer
18               --oOo--
19
20
21
22
23
24
25
```

## Page 6

```
              1   REDWOOD SHORES, CALIFORNIA
              2   FRIDAY, APRIL 6, 2012  10:28 A.M.
              3              --oOo--
              4      P R O C E E D I N G S
              5      VIDEOGRAPHER:  Here begins volume 1, DVD
10:28:11      6   No. 1 in the deposition of David Wright in the
10:28:13      7   matter of Apple Inc. and NeXT Software, Inc. versus
10:28:17      8   Motorola Inc. and Motorola Mobility Inc. in U.S.
10:28:21      9   District Court, Northern District of Illinois.  The
10:28:24     10   case number is 1:11-CV-08540.  Today's date is April
10:28:30     11   6th, 2012.  The time on the video monitor is 10:28.
10:28:36     12        The video operator today is Patrick Murray,
10:28:39     13   a notary public contracted by Merrill Court
10:28:42     14   Reporting, San Francisco, California.  This video
10:28:45     15   deposition is taking place at 201 Redwood Shores
10:28:49     16   Parkway, Redwood Shores, California.
10:28:51     17        Counsel, please identify yourselves and
10:28:53     18   state whom you represent.
10:28:56     19        MS. FAIRNENY:  Laura Fairneny of Quinn
10:28:59     20   Emanuel Urquhart & Sullivan for Motorola.
10:29:03     21        MS. FERNANDS:  Anastasia Fernands of Quinn
10:29:05     22   Emanuel Urquhart & Sullivan for Samsung Electronics.
10:29:07     23        MS. SCHMIDT:  Jill Schmidt from Weil
10:29:11     24   Gotshal & Manges representing Apple and the witness
10:29:12     25   in the Apple/Motorola action.
```

## Page 7

```
10:29:14      1        MR. VINCENT:  Robert Vincent from Gibson
10:29:18      2   Dunn representing Apple in the same action, as well
10:29:20      3   as the witness.
10:29:21      4        VIDEOGRAPHER:  The court reporter today is
10:29:23      5   Diane Winter of Merrill.  Would the reporter please
10:29:25      6   swear in the witness.
10:29:25      7        DAVID JOHN WRIGHT,
10:29:25      8   called as a witness herein and who, being first duly
10:29:33      9   sworn, was examined and testified as follows:
10:29:33     10        VIDEOGRAPHER:  Please begin.
10:29:35     11        EXAMINATION BY MS. FAIRNENY
10:29:35     12   Q   Good morning.
10:29:36     13   A   Good morning.
10:29:40     14   Q   Could you please --
10:29:41     15        MS. FERNANDS:  Apologies.  Can you hear me
10:29:44     16   because I'm not mic'd?
10:29:46     17        VIDEOGRAPHER:  I can.
10:29:47     18        MS. FERNANDS:  We wanted to put on the
10:29:49     19   record that although this is being taken under the
10:29:51     20   caption of the Apple versus Motorola matter, that
10:29:54     21   the deposition will also -- is also pursuant to a
10:29:55     22   subpoena to Mr. Wright in connection with the Apple
10:29:58     23   versus Samsung matter, which is Northern District of
10:30:01     24   California, 12-CV-00630 LHK.  And that the
10:30:06     25   deposition under the Motorola caption can be used
```

## Page 8

```
10:30:09      1   equally in that Samsung matter.
10:30:15      2        MS. FAIRNENY:  Great.  Now that the
10:30:15      3   technicalities are over I'll say good morning again.
10:30:19      4        THE WITNESS:  Good morning.
10:30:19      5   Q   (BY MS. FAIRNENY)  Could you please state
10:30:21      6   your name for the record.
10:30:22      7   A   David John Wright.
10:30:23      8   Q   And where do you live?
10:30:24      9   A   San Jose, California.
10:30:25     10   Q   Great.  So I think you've done this before,
10:30:28     11   but I'm just going to go over some of the ground
10:30:31     12   rules for the deposition.
10:30:31     13        You've just been sworn in.  That's like
10:30:33     14   being sworn in in court.  It's the same effect.  And
10:30:36     15   so is there any reason you cannot answer completely
10:30:38     16   and truthfully to my questions today?
10:30:40     17   A   No.
10:30:40     18   Q   And I'm just going to keep going over some
10:30:43     19   of the other rules.  As you can see today's
10:30:45     20   deposition is being transcribed, being taken down by
10:30:47     21   the court reporter, so we'll try to avoid talking
10:30:50     22   over each other.
10:30:50     23   A   Okay.
10:30:50     24   Q   So I'll let you if you finish your answer
10:30:52     25   before I ask my next question.  If you let me finish
```

Confidential Apple Business Information - Attorneys' Eyes Only - Under Protective Order

David John Wright     April 6, 2012

Page 77

```
12:30:51   1    Q  And do you remember writing this article?
12:30:52   2    A  I remember Jim soliciting feedback about
12:30:55   3  it.
12:30:56   4    Q  Did you write anything in this article?
12:30:58   5    A  I think --
12:30:59   6        MS. SCHMIDT:  Vague.
12:31:00   7        THE WITNESS:  -- that I -- I don't remember
12:31:04   8  if I wrote anything new for this.
12:31:07   9    Q  (BY MS. FAIRNENY)  Did you contribute --
12:31:09  10  was anything that you had formerly written a part of
12:31:13  11  this article?
12:31:14  12    A  I believe so.  I believe that's why -- I
12:31:18  13  can only guess that's why Jim would have allowed my
12:31:20  14  name to be on it, yes.
12:31:22  15    Q  Do you remember what it is that you had
12:31:25  16  written that may have been incorporated into this
12:31:27  17  article?
12:31:30  18    A  Jim always, I think that Jim always --
12:31:34  19  well, I'd be speculating about what Jim thought, and
12:31:37  20  I don't want to do that.
12:31:39  21    Q  Well, maybe it's worth looking at the
12:31:41  22  article very quickly.
12:31:42  23    A  Okay.
12:31:43  24    Q  So the article starts at the third page.
12:31:46  25  And it's only one of the articles in this ATG
```

Page 78

```
12:31:50   1  review, so it doesn't span the entire length of the
12:31:52   2  document.  But if you want to take a brief look at
12:31:55   3  it, scan it over, and let me know what you think you
12:31:57   4  contributed to it.
12:32:54   5    A  Okay, I've skimmed it.  It was a long time
12:32:58   6  ago.
12:33:00   7    Q  After having reviewed it briefly, I
12:33:03   8  understand, do you remember what portions you
12:33:05   9  contributed to this article?
12:33:06  10    A  No.
12:33:13  11    Q  I just want to briefly take a look at
12:33:16  12  page 3 of the article, which is WI-Apple0313266.
12:33:23  13  Are you there?
12:33:23  14    A  Yes.
12:33:24  15    Q  If you take a look at this portion that
12:33:26  16  says, "Apple Data Detectors" with the subtitle "The
12:33:30  17  target:  Working with information inside user
12:33:30  18  documents."
12:33:31  19    A  Okay.
12:33:32  20    Q  Starting in that first paragraph where the
12:33:34  21  sentence starts "By structured information we mean
12:33:36  22  data recognizable by a grammar."
12:33:40  23    A  I see that.
12:33:40  24    Q  And it goes on to list many different
12:33:42  25  pieces of structured information that can be
```

Page 79

```
12:33:44   1  detected?
12:33:45   2    A  I see that.
12:33:46   3    Q  Is that consistent with your understanding
12:33:47   4  that there is really no limit on the kinds of
12:33:50   5  information that can be detected?
12:33:52   6    A  It's consistent with my understanding,
12:33:55   7  especially when he says, "and so forth," at the end
12:34:00   8  of the sentence.
12:34:00   9    Q  Uh-huh.  And he goes on to say, "There are
12:34:05  10  countless domain-specific structures," as well,
12:34:09  11  correct?
12:34:09  12    A  That would be consistent with what I was
12:34:11  13  saying about in-house developers, yeah.
12:34:14  14    Q  And then it also talks about "The type of a
12:34:17  15  structure can be used to identify appropriate
12:34:19  16  actions that might be carried out on the structure,"
12:34:22  17  and it goes on to list many different actions,
12:34:24  18  correct?
12:34:24  19    A  I'm sorry, can I just correct one thing
12:34:26  20  that I had said?
12:34:27  21    Q  Sure.
12:34:27  22    A  Like an ISBN number, I see here, it's not
12:34:32  23  an example of just an in-house.  Like a developer
12:34:35  24  could have written that and any of us probably could
12:34:39  25  have benefited from that.  So by domain, I guess he
```

Page 80

```
12:34:42   1  meant there is the web domain and then there is
12:34:44   2  books domain or -- and then for the actions.
12:34:51   3    Q  Going on it talks about "a number of
12:34:54   4  appropriate actions that might be carried out on the
12:34:56   5  structures," and it lists a lot of them.
12:34:58   6        Do you see that?
12:34:59   7    A  Yes.  And then again it ends with, "and so
12:35:02   8  forth."
12:35:03   9    Q  So what does that tell you?
12:35:04  10    A  That we --
12:35:04  11        MS. SCHMIDT:  Vague, calls for speculation.
12:35:06  12        THE WITNESS:  Are you asking me if this is
12:35:10  13  consistent with what we were talking about before by
12:35:13  14  extensible?
12:35:14  15    Q  (BY MS. FAIRNENY)  Yes.
12:35:15  16    A  Yes, this is consistent with what I
12:35:18  17  understand.
12:35:18  18    Q  All right.  We can put that aside.  So if
12:35:22  19  you can just tell me in your own words what you
12:35:25  20  believe was new or novel about the Apple data
12:35:28  21  detectors.
12:35:29  22        MS. SCHMIDT:  Vague, calls for narrative,
12:35:31  23  calls for legal conclusion, calls for expert
12:35:33  24  testimony.
12:35:37  25        THE WITNESS:  I think that my understanding
```

Confidential Apple Business Information - Attorneys' Eyes Only - Under Protective Order

David John Wright        April 6, 2012

### Page 81

```
12:35:56   1    of what was new about Apple data detectors was that
12:36:02   2    the system was detecting text and helping the user
12:36:08   3    take action on that detected text.
12:36:17   4         Q   (BY MS. FAIRNENY)  And to your knowledge
12:36:19   5    that was new, the ability to detect text and helping
12:36:23   6    the user take action on that text?
12:36:24   7         A   Yes.  I mean when we released it there was
12:36:27   8    people -- some people called it magical.  Some
12:36:30   9    people called the system intelligent.  So it seemed
12:36:34  10    like it was not -- yeah -- available before.
12:36:41  11         Q   And in designing Apple data detectors, did
12:36:44  12    you look at competing products at all?
12:36:46  13         A   I didn't know --
12:36:48  14             MS. SCHMIDT:  Vague.
12:36:49  15             THE WITNESS:  -- about any.
12:36:49  16         Q   (BY MS. FAIRNENY)  So at the time you
12:36:51  17    weren't aware of -- strike that.
12:36:54  18             At the time were you aware of any systems,
12:36:59  19    other than Apple data detectors or things you were
12:37:01  20    working on in Apple, that could detect text?
12:37:18  21         A   Could you be more specific?
12:37:21  22         Q   Were there any systems out there that could
12:37:25  23    be used to detect bits of information in a text
12:37:28  24    document?
12:37:29  25             MS. SCHMIDT:  Vague, calls for expert
```

### Page 82

```
12:37:31   1    testimony.
12:37:34   2             THE WITNESS:  Like a operating system?
12:37:37   3         Q   (BY MS. FAIRNENY)  Well, we can start
12:37:42   4    there.  Did you know of an operating system that did
12:37:45   5    that?
12:37:45   6         A   I didn't know of an operating system.
12:37:46   7         Q   Did you know of any applications that could
12:37:49   8    do that?
12:37:51   9         A   I don't think so.
12:37:54  10         Q   So the idea of detecting text in a document
12:37:58  11    based on grammars, parsers --
12:38:01  12         A   Uh-huh.
12:38:02  13         Q   -- strings of texts, that was all new to
12:38:05  14    you?
12:38:05  15         A   That was new to me.
12:38:08  16         Q   Was it new to other people, to your
12:38:11  17    understanding?
12:38:11  18             MS. SCHMIDT:  Calls for speculation.
12:38:13  19             THE WITNESS:  I don't know.
12:38:14  20         Q   (BY MS. FAIRNENY)  When people were talking
12:38:18  21    about Apple data detectors while you were working on
12:38:21  22    the project, did you hear anyone talk about other
12:38:24  23    systems that similarly detected text?
12:38:27  24         A   I don't recall that ever happening.
12:38:31  25         Q   And what about helping users take action?
```

### Page 83

```
12:38:37   1             MS. SCHMIDT:  Vague.
12:38:37   2         Q   (BY MS. FAIRNENY)  Were you aware of other
12:38:39   3    systems that helped users take action on pieces of
12:38:42   4    text?
12:38:42   5             MS. SCHMIDT:  Vague.
12:38:49   6             THE WITNESS:  The way Apple data detectors
12:38:51   7    did?
12:38:52   8         Q   (BY MS. FAIRNENY)  In general.
12:38:54   9         A   Well, I -- one thing in general one could
12:38:58  10    say is a spell checker helps users with their texts,
12:39:02  11    right.  I don't know if that's what you mean.
12:39:04  12         Q   Does a spell checker detect text in a
12:39:08  13    document?
12:39:10  14             MS. SCHMIDT:  Vague, calls for a legal
12:39:11  15    conclusion, calls for expert testimony.
12:39:14  16             THE WITNESS:  I don't know if one could say
12:39:16  17    that phrase.  I don't know if that's --
12:39:18  18         Q   (BY MS. FAIRNENY)  Why not?
12:39:20  19         A   I'm not an expert.
12:39:21  20         Q   But to your understanding, does a spell
12:39:24  21    checker detect text in a document?
12:39:26  22             MS. SCHMIDT:  Same objections.
12:39:35  23             THE WITNESS:  I actually don't know how a
12:39:41  24    spell checker works.
12:39:41  25         Q   (BY MS. FAIRNENY)  From using it, as an
```

### Page 84

```
12:39:45   1    engineer and as a person who uses computers, when
12:39:49   2    you use a spell checker, are you familiar with a
12:39:52   3    spell checker detecting text in a document and
12:39:54   4    presenting it to you, the user?
12:39:56   5             MS. SCHMIDT:  Vague, calls for a legal
12:39:57   6    conclusion, calls for expert testimony.
12:40:03   7             THE WITNESS:  In the way the Apple data
12:40:05   8    detectors detects and makes users aware of text, I
12:40:10   9    don't think of a spell checker doing the same kind
12:40:12  10    of behavior.
12:40:13  11         Q   (BY MS. FAIRNENY)  So what was the
12:40:15  12    difference between the two, in your view?
12:40:16  13             MS. SCHMIDT:  Same objections, and calls
12:40:19  14    for a narrative.
12:40:20  15             THE WITNESS:  In my view of why a spell
12:40:22  16    checker doesn't detect text and present it to the
12:40:24  17    user the same way as Apple data detectors did, is it
12:40:28  18    seems like a spell checker is ready to detect
12:40:34  19    various misspellings of a word, but can still bring
12:40:39  20    the user back to probably what they really meant to
12:40:42  21    spell.  And I don't think the Apple data detectors
12:40:46  22    detecting that way are --
12:40:47  23         Q   (BY MS. FAIRNENY)  Using that explanation,
12:40:49  24    though, isn't it true that a spell checker would
12:40:52  25    look for versions of a misspelled word, like a
```

Confidential Apple Business Information - Attorneys' Eyes Only - Under Protective Order
David John Wright    April 6, 2012

### Page 169

| Time | # | |
|---|---|---|
| 16:09:33 | 1 | Q  First of all, do you recognize the screen |
| 16:09:37 | 2 | shots in these documents? |
| 16:09:42 | 3 | A  I don't think so. |
| 16:09:44 | 4 | Q  If you'd look at the first exhibit, Exhibit |
| 16:09:47 | 5 | 15. |
| 16:09:47 | 6 | A  Okay. |
| 16:09:48 | 7 | Q  And you see on the right side it's |
| 16:09:51 | 8 | highlighted -- or a portion of the text is |
| 16:09:54 | 9 | highlighted, it says, "LiveDoc 1.6 demo." |
| 16:09:54 | 10 | A  Uh-huh. |
| 16:09:58 | 11 | Q  Do you see that? |
| 16:09:58 | 12 | A  Yes. |
| 16:09:59 | 13 | Q  And it's dated Saturday, March 4th, 1995? |
| 16:10:03 | 14 | A  I see that. |
| 16:10:04 | 15 | Q  Do you recall there being a LiveDoc demo in |
| 16:10:07 | 16 | March 1995? |
| 16:10:07 | 17 | A  I don't remember. |
| 16:10:11 | 18 | Q  Does the name SuperCard mean anything to |
| 16:10:16 | 19 | you? |
| 16:10:16 | 20 | A  Yeah. |
| 16:10:16 | 21 | Q  What is SuperCard? |
| 16:10:20 | 22 | A  Well, one thing I knew SuperCard as was |
| 16:10:25 | 23 | like an enhanced version of Hypercard. |
| 16:10:30 | 24 | Q  What's Hypercard? |
| 16:10:32 | 25 | A  Hypercard was an application that Apple, I |

### Page 170

| Time | # | |
|---|---|---|
| 16:10:35 | 1 | think Apple wrote it, that would let users create |
| 16:10:41 | 2 | just cards in any order, multiple.  And the user |
| 16:10:47 | 3 | could flip back and forth between them, and they |
| 16:10:49 | 4 | could put things on it like text and images. |
| 16:10:52 | 5 | Q  By cards, what do you mean? |
| 16:10:57 | 6 | A  Rectangles or -- I don't remember the |
| 16:11:01 | 7 | details of the user interface. |
| 16:11:03 | 8 | Q  Like slides? |
| 16:11:04 | 9 | A  That's what I was -- yes. |
| 16:11:06 | 10 | Q  So it was -- it was a static image then? |
| 16:11:10 | 11 | A  Each card? |
| 16:11:11 | 12 | Q  Correct. |
| 16:11:12 | 13 | A  That's -- I don't -- I don't remember if it |
| 16:11:17 | 14 | was limited or not. |
| 16:11:20 | 15 | Q  When -- go ahead. |
| 16:11:22 | 16 | A  It was just kind of simple to me so I |
| 16:11:24 | 17 | didn't play with it much. |
| 16:11:27 | 18 | Q  So when you did a demonstration in |
| 16:11:32 | 19 | SuperCard, was there any code written behind it, or |
| 16:11:37 | 20 | was it really just a -- |
| 16:11:39 | 21 | A  I don't remember. |
| 16:11:40 | 22 | MS. SCHMIDT:  Vague. |
| 16:11:44 | 23 | THE WITNESS:  I don't remember the -- I |
| 16:11:46 | 24 | don't remember doing a demo with that or anything. |
| 16:11:50 | 25 | MS. FAIRNENY:  That's all I have for now. |

### Page 171

| Time | # | |
|---|---|---|
| 16:11:52 | 1 | MS. SCHMIDT:  So I don't have any |
| 16:11:53 | 2 | questions, but I'd like to mark this transcript |
| 16:11:55 | 3 | Apple confidential information and reserve our right |
| 16:11:59 | 4 | to review.  And if we're switching to a different |
| 16:12:02 | 5 | transcript, I will leave the room. |
| 16:12:06 | 6 | MS. FERNANDS:  And I will continue to |
| 16:12:08 | 7 | question on the new transcript. |
| 16:12:09 | 8 | VIDEOGRAPHER:  This concludes DVD No. 3, |
| 16:12:12 | 9 | volume 1, of David Wright.  And we're off the record |
| 16:12:14 | 10 | at 4:11. |
| 16:12:23 | 11 | (Whereupon, the deposition adjourned at 4:11 p.m.) |
| | 12 | --oOo-- |

### Page 172

| | # | |
|---|---|---|
| | 1 | CERTIFICATE OF REPORTER |
| | 2 | I, DIANE M. WINTER, a Certified Shorthand |
| | 3 | Reporter, hereby certify that the witness in the |
| | 4 | foregoing deposition was by me duly sworn to tell |
| | 5 | the truth, the whole truth and nothing but the truth |
| | 6 | in the within-entitled cause; |
| | 7 | That said deposition was taken in shorthand |
| | 8 | by me, a disinterested person, at the time and place |
| | 9 | therein stated, and that the testimony of the said |
| | 10 | witness was thereafter reduced to typewriting, by |
| | 11 | computer, under my direction and supervision; |
| | 12 | That before completion of the deposition, |
| | 13 | review of the transcript [x] was [ ] was not |
| | 14 | requested.  If requested, any changes made by the |
| | 15 | deponent (and provided to the reporter) during the |
| | 16 | period allowed are appended hereto. |
| | 17 | I further certify that I am not of counsel |
| | 18 | or attorney for either or any of the parties to the |
| | 19 | said deposition, nor in any way interested in the |
| | 20 | event of this cause, and that I am not related to |
| | 21 | any of the parties thereto. |
| | 22 | DATED:  April 9, 2012 |
| | 23 | |
| | 24 | _____ |
| | 25 | DIANE M. WINTER, CSR No. 3186 |

43 (Pages 169 to 172)