1  JOSH A. KREVITT (CA SBN 208552)          MICHAEL A. JACOBS (CA SBN 111664)
   jkrevitt@gibsondunn.com                  mjacobs@mofo.com
2  H. MARK LYON (CA SBN 162061)             RICHARD S.J. HUNG (CA SBN 197425)
   mlyon@gibsondunn.com                     rhung@mofo.com
3  GIBSON, DUNN & CRUTCHER LLP              MORRISON & FOERSTER LLP
   1881 Page Mill Road                      425 Market Street
4  Palo Alto, CA  94304-1211                San Francisco, California 94105-2482
   Telephone: (650) 849-5300                Telephone: (415) 268-7000
5  Facsimile: (650) 849-5333                Facsimile: (415) 268-7522

6

7  MARK D. SELWYN (CA SBN 244180)
   mark.selwyn@wilmerhale.com
8  WILMER CUTLER PICKERING
   HALE AND DORR LLP
9  950 Page Mill Road
   Palo Alto, CA 94304
10 Telephone: (650) 858-6000
   Facsimile: (650) 858-6100

11 *Attorneys for Plaintiff Apple Inc.*

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                         SAN JOSE DIVISION

16

17 APPLE INC., a California corporation,        CASE NO. 12-cv-00630 (LHK)

18                 Plaintiff,                   **REPLY EXPERT DECLARATION OF
                                                DR. NATHANIEL POLISH CONCERNING
19          v.                                  U.S. PATENT NO. 8,086,604**

20 SAMSUNG ELECTRONICS CO., LTD., a             **HIGHLY CONFIDENTIAL – ATTORNEYS'
   Korean corporation; SAMSUNG                  EYES ONLY**
21 ELECTRONICS AMERICA, INC., a New
   York corporation; and SAMSUNG
22 TELECOMMUNICATIONS AMERICA,                  **Hearing:**
   LLC, a Delaware limited liability company,   Date:  June 7, 2012
23                                              Time:  1:30 p.m.
                   Defendants.                  Place:  Courtroom 8, 4th Floor
24                                              Judge:  Honorable Lucy H. Koh

25

26

27

28

Gibson, Dunn &
Crutcher LLP

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)

**TABLE OF CONTENTS**

I.     **INTRODUCTION AND SUMMARY** ......................................................... 1

II.    **RESPONSE TO DR. CARBONELL'S ANALYSIS OF THE '604 PATENT** .................. 11

    A.    INFRINGEMENT ................................................................................ 11

        1.    The Samsung Galaxy Nexus Infringes Claim 6 ............................................. 11

        2.    The Samsung Galaxy Nexus Infringes Claim 19 ........................................... 23

    B.    VALIDITY ........................................................................................... 24

        1.    WAIS Does Not Anticipate or Render Obvious Claims 6 and 19 ................. 25

        2.    Legall Does Not Anticipate or Render Obvious Claims 6 and 19 ................. 32

        3.    Neal Does Not Anticipate or Render Obvious Claims 6 and 19 .................... 34

        4.    MetaCrawler Does Not Anticipate or Render Obvious Claims 6 and 19 ....... 36

        5.    Claim 19 is Not Obvious ................................................................. 38

    C.    APPLE'S USE OF THE '604 PATENTED TECHNOLOGY .................................. 43

III.    **BACKGROUND AND QUALIFICATIONS** ......................................... 43

IV.    **MATERIALS REVIEWED** .................................................................... 43

V.    **PERSON OF ORDINARY SKILL IN THE ART** ...................................... 44

VI.    **LEGAL STANDARDS** ........................................................................ 44

VIII.  **CONCLUSION** ..................................................................................... 45

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1.     I have been asked by counsel for Apple, Inc. ("Apple") to submit a reply declaration in further support of my declaration of February 6, 2012, in which I provided my opinion that the Samsung Galaxy Nexus infringes claims 6 and 19 of U.S. Patent No. 8,086,604 ("the '604 patent"), which is assigned to Apple, and that claims 6 and 19 of the '604 patent are valid.

2.     I have reviewed Samsung's Brief in Opposition to Apple's Motion for Preliminary Injunction ("Opp.") and the Expert Declaration of Dr. Jaime Carbonell Concerning U.S. Patent No. 8,086,604, dated April 23, 2012 ("Carbonell Decl."), and disagree with the opinions Dr. Carbonell offers therein and with the positions Samsung has taken with regards to the '604 patent.

3.     If I am called as an expert witness, I expect to testify regarding my background, my qualifications and experience relevant to the issues in this action, the technical subject matter of the '604 patent, the accused Samsung products, and the Apple products that practice the claimed invention of the '604 patent.

## I.     INTRODUCTION AND SUMMARY

4.     Based on information currently available to me, and contrary to the Declaration of Dr. Carbonell, it is still my opinion that:

a.     The Accused Samsung Galaxy Nexus infringes claims 6 and 19 of the '604 patent;

b.     Claims 6 and 19 of the '604 patent are valid; and

c.     The Apple iPhone 4S incorporates features claimed in the '604 patent.

## A.  Executive Summary

5.     The '604 patent focuses on providing a single search interface that transmits a search request to two or more "heuristic" modules assigned to different areas of search (one area being, for example, the Internet and a second area being, for example, Contact information).  Apple implements

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    1

Gibson, Dunn &
Crutcher LLP

this technology in its famous "Siri" searching capability and Samsung had adopted it through the Google Quick Search Box ("QSB") that is a core part of the Samsung Galaxy Nexus device. Samsung and its expert, Dr. Carbonell, are not able to dispute that the '604 patent specification provides examples of what it means to be a "heuristic module" and that those examples are identical to what Samsung built into the Samsung Galaxy Nexus.

6.      Because the Galaxy Nexus does exactly what the '604 patent teaches and claims, Dr. Carbonell forwards arguments based on two related points that are completely inconsistent with the '604 patent and claims.  First, Dr. Carbonell argues that the phrase "each heuristic" as used in claim 6 of the '604 patent, requires that every search module in an accused device (no matter how many) use different search algorithms.  This assertion is contrary to the disclosure of the '604 patent and, I understand, contrary to the way the courts have interpreted the word "each" in prior cases.  As I explain below, consistent with the '604 disclosure and prior cases, claim 6 just requires that the accused device have two modules that use different heuristic algorithms.  Under this appropriate application of the claims, Dr. Carbonell readily admits that QSB's Google Search module and Contacts module use different search algorithms.

7.      Second, Dr. Carbonell applies an improper and narrow interpretation of the term "heuristic" that is divorced from, and contrary to, the examples contained in the '604 patent.  Indeed, Dr. Carbonell asserts that if the search method used does not incorporate "any particular human knowledge specific to the problem or the data or to the user" it is not a heuristic.  Carbonell Decl., ¶¶ 107.  As explained below, nothing the '604 patent requires any particular human knowledge specific to the problem or the data or to the user; rather, the '604 patent explains that a heuristic simply "can operate to match the user descriptor with the names of information."  '604 patent, 5:15-17.  Dr. Carbonell concedes that the Galaxy Nexus is able to search and locate names of information on the

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    2

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

phone, and, thus, Dr. Carbonell's attempt to add limitations where none exist demonstrates how

clearly the Galaxy Nexus infringes the asserted claims.

**B.  Overview of the '604 Patent**

8.      I will start my reply by going back to the basics of what the '604 patent and its claims

concern.  The '604 patent is directed to the general problem of efficiently locating information across

varying information sources, e.g., information stored locally on a device and information available on

the Internet, that contain different categories of information (the Internet web sites compared to a

Contacts database).  Users are often overwhelmed by the amount of information available from the

various sources and are not certain how to go about finding what they are looking for, where it might

be located, or how best to search for it.

9.      The '604 patent provides a solution to that problem by enabling the user to input a

query into a single interface of a device.  The device, in turn, provides that query to multiple

"modules," each of which is assigned a category of information to search, i.e., an "area of search."

Thus, in this context, the claim term "area of search" simply refers to the category of information

being searched, such as the Internet or a collection of contacts with names, addresses, phone

numbers, etc. located on the device.  Because each module is assigned to an area of search, the

module employs a heuristic (or rule of thumb) that enables it to best search its assigned area of search

and then employ a heuristic algorithm (a sequence of one or more steps that implements the heuristic)

that it uses to produce results from the area of search.  If multiple areas of search are available (e.g.,

the Internet and a local database of contact information), then the modules associated with each area

of search have different heuristic algorithms based on the different areas of search.

10.      The '604 patent also contemplates the inclusion of multiple modules that are

associated with the same area of search.  For example, the system might include one module that

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

searches a local contacts database and two modules that search the Internet.  In such a case, the module associated with the local contacts database would employ one heuristic algorithm, while the two modules associated with the Internet search would employ a similar heuristic algorithm.  This is illustrated, for instance, in Figure 2, which lists modules $22_1$ to $22_N$ but only provides four example heuristic modules.  Additionally, the patent explains that "the computer's operating system may contain a few plug-in modules that operate according to the most popular heuristics."  '604 patent, 7:25-29.  Thus, it is not necessary that every module employ a different heuristic algorithm.

11.     The '604 patent is clear, moreover, that the available heuristics are broad.  For example, the '604 patent explains that "the particular heuristic algorithms described herein are meant to be exemplary of many different heuristics that can be employed, for the purpose of retrieving information through a simplified user interface."  '604 patent, 3:31-34.  Furthermore, the patent illustrates that "one heuristic can operate to match the user descriptor with the names of information located within various storage media in the computer, on servers and the Internet. Another heuristic can identify matches between the information descriptor and the content of files located on the computer, on servers and the Internet."  '604 patent, 5:15-20.  Thus, the '604 patent contemplates various types of heuristics, including those not explicitly described within the specification.  At bottom, the heuristics are used simply "to locate at least one item of information."  '604 patent, 3:28-29.

12.     Consistent with the examples contained in the specification of the '604 patent, claim 6 requires multiple heuristic modules that work in parallel to obtain search results from different areas of search.   Such areas of search include data stored on at least one remote source and one local source.   Furthermore, two of those modules use a different heuristic algorithm that is based on the area of search to which it is assigned.

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                          4

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

13.     Claim 19 of the '604 patent adds a powerful concept to the search apparatus claimed in claim 6.  It specifies that each of the heuristic modules will begin searching, and modify the search, with each character input by the user.  For example, when the user has typed "c-a-r," the system would present one or more results to the user.  But if the user continues to type and enters "b" as the next character, results for "carb" might be presented.  Obviously, the results for "car" and "carb" will be very different.  As additional letters in the word are input, different results might be displayed. This feature provides the user with real-time results that may save the user from having to type out the entire word, thus increasing the efficiency of the claimed system.

## C. Infringement Overview

14.     The Android Quick Search Box ("QSB") infringes every element of claims 6 and 19 of the '604 patent.  (*See* February 6, 2012 Declaration of Nathaniel Polish ("Polish Decl.") ¶¶ 13, 49-76).  Google described the QSB in the blog post announcing its release in 2009:

> Rather than giving you one search box for the web and another for your phone, QSB provides one single search box to let you search content on your phone, including apps, contacts, and browser history, as well as content from the web, like personalized search suggestions, local business listings, stock quotes, weather, and flight status, all without opening the browser.[1]

15.     The QSB is the box labeled "Google" on the top of the home screen of the Samsung Galaxy Nexus, shown in the picture below on the left.  When a user presses on the QSB, an interface is shown that allows the user to enter her search query and to display the results, shown in the screen shot from the Galaxy Nexus below in the middle.  The user may also enter a settings menu that shows the modules that can be searched, shown in the screen shot from the Galaxy Nexus below on the right.

---

[1]  (Mike LeBeau, Quick Search Box for Android: Search your phone and the web, Google Mobile Blog (Oct. 9, 2009, 11:38 AM), http://googlemobile.blogspot.com/2009/10/quick-search-box-for-android-search.html, attached hereto as Exhibit 1).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    5

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

  

16.     For claim 6, the QSB provides two or more modules (for example, the Google Search Suggestions module and the People module) that employ different heuristic algorithms designed for the area of search on which they focus.  The heuristic algorithm used by Google Search Suggestions to search the Internet area of search is thus different from the heuristic algorithm used by the People module to search local contact information.

17.     For claim 19, the QSB presents different results from the different modules as new characters are input to the search field.  Importantly, as discussed below, even though Samsung disputes infringement of claim 6, it does not dispute that the QSB satisfies claim 19.

18.     As previewed above, Dr. Carbonell's non-infringement argument misinterprets both claim 6 and the invention disclosed in the '604 patent.  He asserts that the word "each" in claim 6 requires that every single module in the QSB must have a different heuristic algorithm.  This is a clear misreading of the claim element, which reads: "An apparatus for locating information in a network, comprising… <u>a plurality of heuristic modules configured to search for information that</u> <u>corresponds to the received information descriptor</u>, *wherein: each heuristic module corresponds to a respective area of search and employs a different, predetermined heuristic algorithm corresponding*

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    6

Gibson, Dunn &
Crutcher LLP

*to said respective area. . . .*" The first portion, which I have underlined, requires an apparatus comprising (among other things) a plurality of heuristic modules.  It is my understanding that the word "comprising" in claim 6 means that the claim requirements that follow that word are the **minimum** characteristics of an infringing device, not that an infringing device is limited to one with **only** those features and nothing more.  The next phrase, which I have italicized, provides a further description of the plurality of heuristic modules – it does not limit the apparatus to only the "plurality of heuristic modules."  Rather, the italicized limitation provides a further requirement that for each module contained within that plurality, those modules employ different heuristic algorithms.  In other words, within a group of two or more modules, at least two different heuristic algorithms must be used – two modules is a plurality, and that plurality employs different heuristic algorithms.  That other modules may employ the same heuristic algorithm does not detract from the fact that a plurality employ different algorithms.

19.     This is consistent with the invention of the '604 patent: a unified mechanism for searching with more than one heuristic algorithm.  The '604 patent does not specify that every module must be different.  For example, in one embodiment the specification provides for the heuristic modules shown in Figure 2, about which it says, "[e]ach plug-in module has an associated heuristic," not that each one has a different heuristic.  ('604 patent at 4:11-15).  Figure 2 actually lists modules $22_1$ to $22_N$ but only provides four example heuristic modules; it is likely that some of those N modules may use the same heuristic algorithm.

20.     Samsung concedes that if its previous argument is wrong, which it is, they are left with only validity arguments.  (Opp. at 10).  Simply put, the '604 patent claims only require two modules that use a different heuristic algorithm, a requirement that is clearly met by the Samsung Galaxy Nexus, as Samsung must acknowledge.

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

21.      Despite this concession, Dr. Carbonell additionally argues that the QSB modules are not heuristic. Dr. Carbonell's argument, however, ignores the fact that his interpretation of the word "heuristic" excludes the examples provided in the patent.  As can be seen in the below picture, the modules of the QSB on the Samsung Galaxy Nexus, which modules search different data, map exactly to the examples in the patent specification.



Each plug-in module has an associated heuristic which it employs to locate information that corresponds to the user input. For instance, one module $22_1$ may search the names of files stored on the local storage media 12 and the LAN storage volumes 8, to find those which match the user input. A second module $22_2$, may index and search the contents of files on the local and/or network storage volumes. A third module $22_3$, can maintain a list of the files, applications and web sites which were most recently accessed, and search this list for a match. Yet another module might employ a search engine to locate Internet web pages which match the user input.

22.      Specifically, the Browser module (green), which is described on the Galaxy Nexus as "Bookmarks and Web history," implements the heuristic module described in the patent specification as "[a] third module $22_3$ [that] can maintain a list of the files, applications and web sites which were most recently accessed, and search this list for a match." ('604 patent 4:19-21).  The People module (blue), which is described on the Galaxy Nexus as "Names of your contacts," implements the heuristic module described in the patent specification as "[a] second module $22_2$ [that] may index and search the contents of files on the local and/or network storage volumes."   ('604 patent 4:17-19). Lastly, the Google module (red), which is described on the Galaxy Nexus as "Google search suggestions" and sends searches from the modules to the Google search engine, implements the heuristic module described in the patent specification as, "[y]et another module [that] might employ a search engine to locate Internet web pages which match the user input." ('604 patent 4:22-23).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                              8

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

23.     Because the Galaxy Nexus includes, among the other claim requirements, a plurality of modules, which plurality employ different heuristic algorithms, I believe that the Galaxy Nexus infringes claims 6 and 19 of the '604 patent.

**D.  Validity Overview**

24.     As highlighted above, none of the references Dr. Carbonell identified invalidates claim 6 because those references fail to provide the unique combination of features recited in the claim. Moreover, Dr. Carbonell's cursory analysis of claim 19 demonstrates how novel and non-obvious that claim is.

25.     In fact, as I discuss below, not only do the references fail to invalidate either claim 6 or 19, but Dr. Carbonell at his deposition admitted that for each of the references cited he either applied what I understand to be the wrong standard for invalidity or lacked sufficient evidence to prove his claim.

26.     For example, Dr. Carbonell asserts that WAIS invalidates the asserted claims.  WAIS, however, fails to include, and Dr. Carbonell fails to show, the required "modules" and their use of different heuristic algorithms.   In fact, Dr. Carbonell admitted at his deposition that none of the references he cites disclose the invention as claimed in the '604 patent.  (*See*  May 2, 2012 Deposition of Dr. Jaime Carbonell ("Carbonell Dep.") 195:22-196:5; 199:17-22, attached hereto as Exhibit 2). In addition, Dr. Carbonell admitted that he has no evidence that the WAIS system (a system that a Samsung consultant constructed for this lawsuit) on which he relied was actually ever created at the relevant time, much less in public use before the invention date or more than one year before the filing date of the '604 patent.  (*See* Ex.2, Carbonell Dep. 206:5-207:15; 226:4-14; 209:9-210:23).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    9

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

27.        Similarly, the Legall patent fails for at least two reasons.  First, the portion of the Legall specification cited by Dr. Carbonell identifies only one module – not two.  As explained above, claim 6 of the '604 patent requires a plurality of modules.  Second, at his deposition Dr. Carbonell admitted that the Legall patent's disclosure was not clear and that one of the two disclosed heuristic modules he identified might actually not even use a heuristic.  (Ex. 2, Carbonell Dep. 235:12-236:15).   Thus, with respect to Legall, Dr. Carbonell's arguments boil down to his speculation about what Legall might have meant, not what *was* disclosed.

28.        As I discuss in more detail below, the only other two references Dr. Carbonell cited – U.S. Patent No. 6,324,534 to Neal and the "MetaCrawler" article – neither of which Samsung mentioned in its brief, suffer from similar flaws.

29.        Dr. Carbonell's "analysis" of claim 19 is even less complete.  Dr. Carbonell cites a number of references (EMACS, Word Perfect, and the Siitonen references) relating to looking up information stored locally in the memory of a computer, rather than on a network such as the Internet.  (*See* Opp. Br., at 11; Carbonell Decl. ¶¶ 139-144, 160-162, 171-173, 183-184).  As I discuss below, Dr. Carbonell fails to provide any analysis of how these references allegedly teach the additional elements of claim 19.  For example, there is no discussion of how those references use "heuristic modules."  Beyond that, Dr. Carbonell makes no effort to demonstrate why any of those references should be combined with any of the four references he alleges invalidate claim 6.  Indeed, Dr. Carbonell provides no evidence or argument whatsoever regarding why any of these "incremental search" references should or can be combined with other references directed to the problem of searching for information over a network. In fact, as I discuss in more detail below, the invention of claim 19 is not obvious in light of any combination of the references in Dr. Carbonell's declaration. As a result, nothing in Dr. Carbonell's declaration or Samsung's brief in any way alters my views that

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    10

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the Samsung Galaxy Nexus infringes claims 6 and 19 of the '604 patent and that such claims are valid.

## II.     RESPONSE TO DR. CARBONELL'S ANALYSIS OF THE '604 PATENT

### A.     INFRINGEMENT

#### 1.     The Samsung Galaxy Nexus Infringes Claim 6

30.     As I demonstrated in my previous declaration, the Samsung Galaxy Nexus infringes at least claims 6 and 19 of the '604 patent.  The Samsung Galaxy Nexus literally infringes both claims 6 and 19 of the '604 patent.  Moreover, even if one were to accept Dr. Carbonell's view that one or more elements are not literally found in the Galaxy Nexus, the Galaxy Nexus performs substantially the same function as required by each such element, in substantially the same way, to achieve substantially the same result, and thus infringes under the doctrine of equivalents

31.     Specifically, as I noted in my earlier declaration, it is my opinion that the Google Quick Search Box ("QSB") infringes claims 6 and 19.

32.     None of the arguments set forth by either Dr. Carbonell or Samsung changes the conclusion that the Galaxy Nexus is infringing.  Unfortunately, however, Samsung's opposition brief and Dr. Carbonell's declaration are difficult to follow.  First, while Samsung's brief appears to explain two theories as to why the Galaxy Nexus does not infringe claim 6,[2]  Samsung has, in my opinion, unequivocally disclaimed and rejected any non-infringement theory except for the one I discuss below, namely that "each" in the claim requires every single module in the Galaxy Nexus to be different.

---

[2]  "Because every algorithm must be different, Apple has not met its burden of proof because it did not analyze every search algorithm in the Galaxy Nexus.  Alternatively, if only two algorithms must be different, as Apple contends, Apple cannot show a likelihood of success because that is not novel."  (Opp. at 10).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    11

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

33.      Nevertheless, for the sake of completeness, I will address both of the theories in Samsung's brief.  Further, despite their expert, Dr. Carbonell, spending four pages discussing non-infringement, Samsung chose not cite to or rely any portion of that discussion their brief.  It is not clear to me that it is necessary to rebut the points argued by Dr. Carbonell, as it does not seem clear that Samsung even considers them to be all that important.  However, because they are so clearly wrong, and for the sake of completeness, I will address them below as well.

### a.      Heuristics

34.      Dr. Carbonell has injected an unnecessary amount of complexity into what is a very simple analysis.  That is, the QSB has heuristic modules because it has modules that match the example heuristic modules in the patent specification.

35.      In their brief Samsung alleges that I have failed to demonstrate that the modules in the QSB are heuristic.[3]  As I stated in my initial declaration at ¶¶ 64-66 and during my deposition (April 3, 2012 Deposition of Nathaniel Polish ("Polish Dep.") 44:3-51:22, attached hereto as Exhibit 3), any definition of heuristic in the context of the '604 patent must take into account the examples provided in the '604 patent itself:

> "Each plug-in module has an associated heuristic which it employs to locate information that corresponds to the user input. For instance, one module $22_1$ may search the names of files stored on the local storage media 12 and the LAN storage volumes 8, to find those which match the user input.  A second module $22_2$ may index and search the contents of files on the local and/or network storage volumes.  A third module $22_3$ can maintain a list of the files, applications and web sites which were most recently accessed, and search this list for a match.  Yet another module might employ a search engine to locate Internet web pages which match the user input.  ('604 patent 4:13-23).

> "[T]he selected plug-in modules $22_1$ . . . $22_N$ receive the information descriptor and determine whether any information matches the criteria of respective locator heuristics associated with the plug-in modules $22_1$ . . . $22_N$.  The heuristic of each plug-in module is different.  For example, as described previously, one heuristic can operate to match the user descriptor with the names of information located within various storage media

---

[3]   (*See also* Carbonell Decl. ¶¶ 99-100.)

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

in the computer, on servers and the Internet. Another heuristic can identify matches between the information descriptor and the content of files located on the computer, on servers and the Internet." ('604 patent 5:10-20).

36.     The examples in the patent that I note above are heuristic because they all attempt to get the searcher what she is looking for within their particular area of search.  For example, one module, whose domain is file names, looks at file names, a second whose domain is file contents looks there, a third looks at history, and a fourth searches on the internet.  None of these modules "know" what the user is looking for or that they will return the desired result.   As such, they are using heuristics to give the best approximation within their area of what the user is searching for with the input information descriptor.

37.     This understanding of heuristic is also consistent with the testimony of Yan Arrouye, one of the '604 patent inventors:

> Q.     So it's the decision to use one kind of search or another that involves the heuristic, in your opinion?
>
> A.     In my opinion, one heuristic might be to decide which kind of search to use. That's just an example of what heuristic might be.  There are many other heuristics.

(Apr. 27, 2012 Deposition of Yan Arrouye ("Arrouye Dep.") 58:15-21, attached hereto as Exhibit 4).

> Q.     In what context would an exact string match use heuristics as you use the term "heuristics"?
>
> A.     For example, if you -- if the user types the word "cat," we have no knowledge of whether the user meant the file name is cat or the type of the file has an extension that is cat or the file contains the word "cat" or the file – inside content is the word "cat."  And I think there could be heuristic involved to decide which of those many possible interpretation to choose to perform the search.
>
> Q.     So in your opinion, one would use heuristic -- strike that.  The decision as to whether to search file names, types of files or file content involves a heuristic?
>
> MR. BUROKER: Objection.  Vague.
>
> THE WITNESS: Again, not knowing the legal meaning of the word in that context, for me that is an example of heuristics.

(Ex. 4, Arrouye Dep. 73:23-74:17).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    13

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

38.    Dr. Carbonell's attempt to unnecessarily complicate the issue is apparent.  At the beginning of ¶ 84 of his declaration, Dr. Carbonell provides a definition of heuristic composed of three distinct definitions: "to the extent that Dr. Polish's understanding of ―heuristic algorithm is limited to [1] algorithms that employ a ―rule of thumb or [2] some prior specific human knowledge, or [3] one of several items of human judgment embedded in the algorithm, then we appear to have a similar understanding of the term."  (Carbonell Decl. ¶ 84 (numbers added in square brackets)).  In the next sentence, Dr. Carbonell writes, "[t]o the extent that Dr. Polish's interpretation of heuristic algorithm is broader than my understanding and/or [4] could apply to search algorithms that can be designed without any specific, human knowledge, then I disagree with his interpretation."  (*Id.* (numbers added in square brackets).)  It is not clear exactly which of these four definitions Dr. Carbonell is adopting.  Importantly,  Dr. Carbonell never explains how these definitions comport with the examples in the specification.  Moreover, Dr. Carbonell offers no basis from the claims, file history, or even extrinsic evidence to support his position and provides no basis for his repeated insistence on human knowledge or what that entails.

39.    That the QSB has heuristic modules is simple to demonstrate.  As I discussed earlier, the picture below is illustrative.  On the left I have highlighted a portion of the '604 patent specification from column 4, lines 13 to 23.  On the right is a screenshot of the list of modules from the Google Quick Search Box settings screen on the Galaxy Nexus.  The colors show the mapping from the example heuristic modules from the patent to the modules in the QSB.

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    14

Gibson, Dunn &
Crutcher LLP

Each plug-in module has an associated heuristic which it employs to locate information that corresponds to the user input. For instance, one module $22_1$ may search the names of files stored on the local storage media 12 and the LAN storage volumes 8, to find those which match the user input. A second module $22_2$ may index and search the contents of files on the local and/or network storage volumes. A third module $22_3$ can maintain a list of the files, applications and web sites which were most recently accessed, and search this list for a match. Yet another module might employ a search engine to locate Internet web pages which match the user input.



40.     Specifically, as I discussed above and given its importance repeat here, the Browser module, which is described on the Galaxy Nexus as "Bookmarks and Web history," implements the heuristic module described in the patent specification as "[a] third module $22_3$ [that] can maintain a list of the files, applications and web sites which were most recently accessed, and search this list for a match." ('604 patent 4:19-21).  The People module, which is described on the Galaxy Nexus as "Names of your contacts," implements the heuristic module described in the patent specification as "[a] second module $22_2$ [that] may index and search the contents of files on the local and/or network storage volumes."   ('604 patent 4:17-19).  Lastly, the Google module, which is described on the Galaxy Nexus as "Google search suggestions" and sends searches from the modules to the Google search engine, implements the heuristic module described in the patent specification as, "[y]et another module [that] might employ a search engine to locate Internet web pages which match the user input." ('604 patent 4:22-23).

41.     Dr. Carbonell alleges that these modules are not different.  (Carbonell Decl. ¶¶ 105-08; *see also* Opp. at 12-13).  This is clearly contradicted by the declaration of Bjorn Bringert, a Google engineer.  (Declaration of Bjorn Bringert for Non-Party Google Inc., dated Apr. 23, 2012

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    15

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

("Bringert Decl.") ¶ 2, 6-7).  Google's declarant Mr. Bringert says without equivocation that the People module for searching contacts, which ███████████████████████████████" is different from the Browser module for searching internet history, which uses ███████████████████████████" and that both of those are different from the Google Search Suggestions module that performs a Google search, which "is proprietary to Google [and] it is not part of Ice Cream Sandwich."  (*See* Bringert Decl. ¶¶ 6-8).

42.     Dr. Carbonell backtracked and agreed during his deposition that at least the People module and the Google Search Suggestions modules in the QSB use different algorithms, which is sufficient to show infringement.[4]  He testified with regards to People and Google Search suggestions:

> Q.   But you would agree that it is a different algorithm than the algorithm implemented in the Google search suggestions module?
>
> A.   I would believe that that is the case, but I cannot say for sure because I do not know the algorithm internal to the Google search module.  It would make sense for it to be different since it's . . .
>
> Q.   Why would it make sense for it to be different?
>
> A.   Simply because the people list of contacts is much smaller and more restricted.

(Ex. 2, Carbonell Dep. 138:20-139:8).

43.     These modules are also heuristic.  As noted above, they are heuristic because, like the examples in the patent, they all attempt to get the searcher what she is looking for within their particular area of search.  The People module takes the search string and attempts to give the user the best answer from her contacts.  The Google Search Suggestion attempts to get the user what she is looking for by transmitting the query from the Samsung Galaxy Nexus to a search engine that searches the Internet and the Browser module returns likely candidates from the user's bookmarks and web history.  These are "heuristic" because each module searches its area for the best solution

---

[4]  Dr. Carbonell agrees that these are modules.  (*See* Ex. 2, Carbonell Dep. 133:10-13).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

from that area.  There is no guarantee that the user is getting the information she wanted or that she preferred one area over another.  For example, when a user types the search "Nathaniel" into the QSB, she could be searching for the contact information for the her friend Nathaniel, or she could be doing research on Nathaniel Hawthorne, or it could be to get back to the website she just visited, http://www.nathaniel.com/, about the Nathaniel Group, a Vermont based engineering and design company.

44.     Even according to Dr. Carbonell's understanding of the term "heuristic," the modules in the QSB are "heuristic modules."  At his deposition, Dr. Carbonell conceded that the functionality that is used by the People module is a heuristic search.  ███████████████████████

████████████████████████████████████████████████ (*See* Carbonell Decl. ¶ 107-08; Bringert Decl. ¶ 7).  Dr. Carbonell further admitted at his deposition that ████████████████ need not be used alone and could be combined with other functionality to make a heuristic search.  Dr. Carbonell testified:

Q.  ████████████████████████████████████████

A.  ███████████████

Q.  ████████████████████████████████

A.  █████

(Ex. 2, Carbonell Dep. 143:3-10).

45.     Dr. Carbonell further testified that if the People module were to return a user's most frequently used contacts, the People module would be a heuristic search as he understood the term. Dr. Carbonell testified about a hypothetical module that returned a user's most selected results:

Q.  My question was incomplete.  If the results shows the ones that were most frequently chosen by users as the best, would that employ a heuristic algorithm?

A.  That were -- the ones that were chosen by users in the past?

Q.  Correct.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

A.    If it -- so let me make sure I understood your question, because now we are --
now you're getting somewhere in the heuristic realm here.  If the system were to
store information about prior user preferences, such as the user having selected
some results and having not selected other results, that precedent -- that
information was then compiled into the future selection process.  That would use
human judgment.  That human judgment would come from previous users.  So
that would satisfy the description of heuristic.

(Ex. 2, Carbonell Dep. 86:9-87:4).

46.     That is exactly how the People module operates.  It was clear from Dr. Carbonell's

deposition testimony that he was not familiar with the source code for the QSB modules that he

attached to his declaration.  For example, when asked to identify where in the People module source

code a search query is processed, an analysis necessary to determine if a search algorithm is heuristic,

Dr. Carbonell could not do so.[5]  In fact, Dr. Carbonell admittedly limited his review of the code to

just looking for the use of ███.  Dr. Carbonell testified:



(Ex. 2, Carbonell Dep. 140:18-141:13).

_____

[5]  *See* Ex. 2, Carbonell Dep. 188:20-189:1:

Q.  Right now without having more time to review the code, sitting here today, you're not able to
identify specifically where the function call is that would initiate the search of the contacts to
populate the Quick Search Box, right?

A.  That's right.

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)

18

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

47.        An in-depth analysis of the source code for the Public Android modules beyond the

mere use of ███████████ by the People module demonstrates that, in fact, the module is

heuristic even according to Dr. Carbonell's understanding.[6]  As Mr. Bringert says in his declaration,

any application on the Galaxy Nexus can declare that it is capable of providing content to the QSB.

(Bringert Decl. ¶ 5).  Those applications must implement the SuggestionProvider Java interface that

provides the protocol for the QSB to send them queries in the correct format and for the application

to send results back.  Each SuggestionProvider implements a Query() method that handles all

searches for that application.  That includes in application searches, for example, when a user is

searching within her contacts while in the contacts application and QSB searches.

48.        All applications that are Suggestion Providers receive their searches in the form of a

URI or universal resource locator.  Since some applications may be searched in a number of different

contexts (e.g., within the application, from the QSB, etc.), the URI will specify, among other things,

the context in which the application is being searched and the query.[7]  (*See e.g.*, Carbonell Decl. Ex.

H, ContactsProvider2.java:4781.)

49.        The People module, by way of example, is implemented in part in the

ContactsProvider2.java class.  In the ContactsProvider2 class, the Query method invokes a

---

[6]  My analysis was performed using the public version of Android 4.0.2. ████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[7]  Regarding these URIs, Dr. Carbonell testified that "I don't know what the URI means."  (Ex. 2,
Carbonell Dep. 155:4-12).  He speculated, mistakenly, that it was relevant to searching for URLs
for web pages.  (*Id.* at 154:18-155:25)

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    19

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QueryLocal method (ContactsProvider2.java:4982).  The QueryLocal method looks at the search

context from the URI.   (ContactsProvider2.java:5001).  The URI for a search received from the QSB

will read "content://com.android.contacts /search_suggest_query/" with the actual query appended to

the end and a specification of the number of results that should be returned.  The QueryLocal uses a

standard java switch statement to pick the right handler for QSB searches.[8]  In the case of the People

module and the ContactsProvider2 class, the QSB case is called "SEARCH_SUGGESTIONS."

(ContactsProvider2.java:5822).  That in turn utilizes a method in the GlobalSearchSupport.java class

(Carbonell Decl. Ex. I), which ultimately searches the contacts to generate the result set

(GlobalSearchSupport.java: 82, 302).  The search is not a simple "give me all results that match this

search string" query.  Instead, the code divides contacts into two categories: (1) recent contacts that

the user has selected and used in the past 30 days and (2) current contacts that the user has selected

and used more recently in the past three days.

```
82      // Current contacts – those contacted within the last 3 days (in seconds)
83      private static final long CURRENT_CONTACTS = 3 * 24 * 60 * 60;
84
85      // Recent contacts – those contacted within the last 30 days (in seconds)
86      private static final long RECENT_CONTACTS = 30 * 24 * 60 * 60;
87
88      private static final String TIME_SINCE_LAST_CONTACTED =
89              "(strftime('%s', 'now') – contacts." + Contacts.LAST_TIME_CONTACTED + "/1000)";
90
```

50.      Those in turn are used to build a SORT_ORDER query string

(GlobalSearchSupport.java:95) which is used to search for and return a limited number of contacts

from the People database in an order based on how frequently they have been contacted and how

recently they selected and used by the particular individual.

---

[8]  A switch statement which reads switch(variable){case MATCH1… case MATCH2…} is a
simplified way of writing a complex if . . . then statement.  The switch statement goes through all
the cases until it find a match and executes that code.  (*See*  Oracle, *The switch Statement*, Java
Tutorials, http://docs.oracle.com/javase/tutorial/java/nutsandbolts/switch.html, attached hereto as
Exhibit 6).  Dr. Carbonell at his deposition could not correctly identify how a switch statement
worked.  (*See* Ex. 2, Carbonell Dep. 161:1-19).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    20

Gibson, Dunn &
Crutcher LLP

```
95      private static final String SORT_ORDER =
96          "(CASE WHEN contacts." + Contacts.STARRED + "=1 THEN 0 ELSE 1 END)."
97          + "(CASE WHEN " + TIME_SINCE_LAST_CONTACTED + " < " + CURRENT_CONTACTS + " THEN 0 "
98          + "WHEN " + TIME_SINCE_LAST_CONTACTED + " < " + RECENT_CONTACTS + " THEN 1 "
99          + "ELSE 2 END),"
100         + "contacts." + Contacts.TIMES_CONTACTED + " DESC, "
101         + "contacts." + Contacts.DISPLAY_NAME_PRIMARY + ", "
102         + "contacts." + Contacts.ID;

302     private Cursor buildCursorForSearchSuggestionsBasedOnFilter(SQLiteDatabase db,
303         String[] projection, String selection, String filter, String limit) {
304         MatrixCursor cursor = new MatrixCursor(
305             projection != null ? projection : SEARCH_SUGGESTIONS_BASED_ON_NAME_COLUMNS);
306         StringBuilder sb = new StringBuilder();
307         final boolean haveFilter = !TextUtils.isEmpty(filter);
308         sb.append("SELECT "
309             + Contacts._ID + ", "
310             + Contacts.LOOKUP_KEY + ", "
311             + Contacts.PHOTO_THUMBNAIL_URI + ", "
312             + Contacts.DISPLAY_NAME + ", "
313             + PRESENCE_SQL + " AS " + Contacts.CONTACT_PRESENCE + ", "
314             + Contacts.LAST_TIME_CONTACTED);
315         if (haveFilter) {
316             sb.append(", " + SearchSnippetColumns.SNIPPET);
317         }
318         sb.append(" FROM ");
319         sb.append(Views.CONTACTS);
320         sb.append(" AS contacts");
321         if (haveFilter) {
322             mContactsProvider.appendSearchIndexJoin(sb, filter, true,
323                 String.valueOf(SNIPPET_START_MATCH), String.valueOf(SNIPPET_END_MATCH),
324                 SNIPPET_ELLIPSIS, SNIPPET_MAX_TOKENS, false);
325         }
326         if (selection != null) {
327             sb.append(" WHERE ").append(selection);
328         }
329         sb.append(" ORDER BY " + SORT_ORDER);
330         if (limit != null) {
331             sb.append(" LIMIT " + limit);
332         }
333         Cursor c = db.rawQuery(sb.toString(), null);
334         SearchSuggestion suggestion = new SearchSuggestion();
335         suggestion.filter = filter;
336         try {
337             while (c.moveToNext()) {
338                 suggestion.contactId = c.getLong(0);
339                 suggestion.lookupKey = c.getString(1);
340                 suggestion.photoUri = c.getString(2);
341                 suggestion.text1 = c.getString(3);
342                 suggestion.presence = c.isNull(4) ? -1 : c.getInt(4);
343                 suggestion.lastAccessTime = c.getString(5);
344                 if (haveFilter) {
345                     suggestion.text2 = shortenSnippet(c.getString(6));
346                 }
347                 cursor.addRow(suggestion.asList(projection));
348             }
349         } finally {
350             c.close();
351         }
352         return cursor;
353     }
```

51.     This SORT_ORDER (see purple above) and limit (see pink above) is used by the

GlobalSearchSupport class for constructing what is known as a Cursor object.  The Cursor object is

used to return the results to the QSB.  The returned set is a limited number of results based on how

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    21

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the user has interacted with her contacts in the past, including when the user last contacted them and the frequency of contact.  As I noted above, Dr. Carbonell agreed that this type of search is heuristic.

52.    Further, the Google Search Suggestions module is also a heuristic module according to Dr. Carbonell's understanding of the term.   The Google Search Suggestions module utilizes the Google search engine to generate results.  Dr. Carbonell testified that Internet search engine results are heuristic.  (*See* Ex. 2, Carbonell Dep. 251:10-22).

53.    A more detailed analysis of the source code for how the QSB utilizes the People and Browser modules can be found attached to this declaration as Exhibit 7.

54.    Thus, even under Dr. Carbonell and Samsung's understanding of the terms "heuristic modules" and "heuristic algorithms," the QSB would infringe claim 6 of the '604 patent.

55.    ***Each heuristic module…employs a different, predetermined heuristic algorithm.***

The only non-infringement position that Samsung relies on in its brief is based on a misunderstanding of the nature of the invention of the '604 patent.  Samsung has taken the position that the claim language "each heuristic module . . . employs a different, predetermined heuristic algorithm" means that every module must employ a different heuristic algorithm.  Samsung has ignored the portion of the claim that says that there are "a plurality of heuristic modules" and it is of that plurality the claim is further modifying when it says "wherein:  each."  There "wherein" is clearly providing a further description of the plurality of modules.  It is my understanding that in the context of claim interpretation, the word "comprising" means that a claimed apparatus is open-ended and to infringe must have at a minimum all the claimed elements, but may have more components or features.  Here the apparatus is "comprising: . . . a plurality of heuristic modules," meaning there may be other modules and other heuristic modules.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

56.        This is consistent with the invention of the '604 patent: a unified mechanism for searching with more than one heuristic algorithm.  The '604 patent does not specify that every module must be different.  For example, in one embodiment the specification provides for the heuristic modules shown in Figure 2, about which it says, "[e]ach plug-in module has an associated heuristic," not that each one has a different heuristic.  ('604 patent at 4:11-15).  Figure 2 actually lists modules $22_1$ to $22_N$ but only provides four example heuristic modules; it is likely that some of those N modules may use the same heuristic algorithm.  Dr. Carbonell's declaration addressing this issue deceptively cites to the '604 patent at 5:13-14, which says that "[t]he heuristic module of each plug-in module is different."  (Carbonell Decl. ¶ 88).  Dr. Carbonell fails to mention that this is in the context of performing the method shown in Figure 5, where the only modules that would fall within the method are those with different heuristic algorithms.  Steps that invoke modules with duplicate heuristic algorithms are just not included in the claimed method because they are superfluous, not because they are inconsistent with the invention.

## 2.        The Samsung Galaxy Nexus Infringes Claim 19

57.        Neither Samsung nor Dr. Carbonell provides any explanation as to why the Samsung Galaxy Nexus does not also infringe the additional claim elements of claim 19.  Thus, for the same reasons noted above, the Galaxy Nexus literally infringes each element of claim 19 of the '604 patent.  To the extent that any element is found not to be literally infringed, it is clear that the Galaxy Nexus performs substantially the same function as required by each element, in substantially the same way, to achieve substantially the same result, and thus infringes under the doctrine of equivalents.

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**B.   VALIDITY**

58.       Claims 6 and 19 of the '604 patent are valid even over the alleged prior art references

Dr. Carbonell discusses in his declaration and on which Samsung relies.  Samsung, in its brief, only

argues that claim 6 is anticipated by WAIS[9] and U.S. Patent No. 6,005,565 to Legall ("Legall").

(Opp. at 10-11.)  However, Dr. Carbonell in his declaration further argues that claim 6 is anticipated

by U.S. Patent No. 6,324,534 to Neal ("Neal") and by Selberg and Etzioni, The MetaCrawler

Architecture for Resource Aggregation on the Web (1996) ("MetaCrawler"), or rendered obvious by

some combination of these references, WAIS, and Legall.  Interestingly, Samsung did not rely on Dr.

Carbonell's additional arguments in its brief.  While a bit surprising, it does not really matter because

none of the four references anticipate or render obvious claim 6 of the '604 patent.  In addition, Dr.

Carbonell does not and cannot provide any evidence regarding how or why any of the references he

relied on should be combined in the first instance to even allege obviousness.

59.       With regard to claim 19, Dr. Carbonell alleges that each of the four references above,

which I will refer to as the "Main References," can be combined with four additional references,

EMACS, WordPerfect, and U.S. Patent No. 6,049,796 to Siitonen ("Siitonen") to render claim 19

obvious.  However, none of the four additional references disclose the added limitations of claim 19.

In addition, one of skill in the art would not think to combine those references with the Main

References.  In fact, beyond a bald assertion, Dr. Carbonell offers no evidence or analysis of why

such a combination would even be contemplated.

---

[9]  WAIS is not a single reference, but refers to various pieces of software.  As discussed later, Dr.
Carbonell admits (*see* Ex. 2, Carbonell Dep. 195:1-21; 195:22- 196:5; 200:3-8) and I agree that
none of the individual references Dr. Carbonell cites regarding WAIS anticipate claim 6.  In
addition, as I discuss later, Dr. Carbonell has no evidence whatsoever regarding how WAIS as a
system was used or configured in the past and admits as much in his deposition.  (*See* Ex. 2,
Carbonell Dep. 207:5-15).

**1.    WAIS Does Not Anticipate or Render Obvious Claims 6 and 19**

60.       As I note in my previous declaration, I start with the fact that patent claims are presumed valid.  (Polish Decl. ¶ 23).  In order to anticipate a patent claim, each and every element in the claim must be present in a single item of prior art.  (Polish Decl. ¶ 24).   As I mentioned in my prior declaration, an anticipatory piece of prior art must either be a single printed publication or a system that was actually in public use before the invention date or more than one year prior to the date of the application for the patent (or the parent patent application).  Also, I am informed that to establish invalidity based on prior public use, the party challenging the patent must prove by clear and convincing evidence that the allegedly anticipating system was *actually* used in this country prior to the date of invention of the patent.  It is not enough for the party challenging the patent to present evidence that the allegedly anticipating system *may* have been or *could* have been used.

61.       Dr. Carbonell has not conclusively described how WAIS qualifies as prior art and under what particular category he is asserting it invalidates claim 6 of the '604 patent.  First, Dr. Carbonell at his deposition said that only one of the references he cites with regards to WAIS, Exhibit HH to his declaration, "WAIS, A Sketch of an Overview," would qualify as an anticipatory reference.[10]  However, he later admitted that Exhibit HH (which was Exhibit 32 to his deposition) failed to disclose "heuristic modules."[11]  I agree that Exhibit HH fails to disclose, among other things,

---

[10]   *See* Ex. 2, Carbonell Dep. 195:22-196:5:

   Q. So is there a single reference in this collection of WAIS materials that you're relying on to say that WAIS anticipates claim 6 of the '604 patent?

   A. The WAIS -- the WAIS overview by itself anticipates the -- that is claim 6, not claim 19, which requires the additional reference, so we expect that that one is WAIS that renders obvious.

[11]   *See* Ex. 2, Carbonell Dep. 199:17-22:

   Q. So there's nothing in Exhibit 32 that you are able to cite to that demonstrates that the modules are heuristic, correct?

*(Cont'd on next page)*

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)          25

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

heuristic modules.  As such, Dr. Carbonell concedes that none of the printed publications on which he relies with regards to WAIS anticipate claim 6 of the '604 patent.

62.　　　Second, Dr. Carbonell appears to allege that a system assembled in 2012 by Lyle Bickley qualifies as prior art.  (*See* Carbonell Decl. ¶ 114, 116-37; Ex. B).  However, both the declarations of Dr. Carbonell and Mr. Bickley, as well as Samsung's brief, are silent as to how this system would qualify as prior art.  Mr. Bickley says clearly that his system was assembled only at the request of counsel and offers no evidence that it mirrors any actual system in use prior to 2000.  (*See* Bickley Decl. ¶ 2).  Nor does Dr. Carbonell provide any evidence that this recently-assembled system ever existed prior to the year 2000.  The only assertion about the date is that all the components were in existence before 2000.  My understanding is that this is not the standard for prior art.  This situation is analogous to going to a junkyard and assembling a car from pieces found there, using a patent claim as the blueprint for which pieces to acquire and how to assemble the overall car.  It is my understanding that this is just an improper use of hindsight to reconstruct a patented invention.  Just because the pieces are old does not mean they were ever used together in an actual car.  So too with the system assembled by Mr. Bickley.  Neither he nor Dr. Carbonell provide any evidence that the setup used by Mr. Bickley ever existed prior to the date that Mr. Bickley recently assembled it.  In fact, Dr. Carbonell testified that he had never personally used WAIS[12] and further that he has no

---

*(Cont'd from previous page)*

　　A. Exhibit 32 is agnostic with whether the modules are heuristic or not.
[12]　*See* Ex. 2, Carbonell Dep. 206:5-207:15:

　　Q. But Mr. Binkley -- Mr. Binkley [sic] downloaded it in 2012.  He didn't download it in 2000, right?

　　A. That's right.

　　Q. We don't know if it was freely available in 2000 based on Mr. Bickley's activities, right?

　　A. We don't know if it was freely available at that time based on Mr. Bickley's activity.  Dr. David Waltz who was a member of Thinking Machines and was one of the people who

*(Cont'd on next page)*

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

knowledge that the system assembled by Mr. Bickley was ever in public use prior to the invention

date or one year prior to the filing of the parent patent application date of the '604 patent.[13]  There is

no such evidence and, as such, the system assembled by Mr. Bickley is not prior art to the '604

patent.

63.     Finally, Dr. Carbonell may be arguing that some not clearly defined "WAIS system" is

anticipatory prior art.  However, as with Mr. Bickley's system above, Dr. Carbonell brings no

evidence regarding how WAIS in general was used prior to the invention date or one year before the

---

*(Cont'd from previous page)*

      worked on it, was disappointed when the -- he was one of my colleagues -- he was
disappointed when they chose not to make a business around this and he said that they were
making it publicly available.  Since that time, I have not had any contact with him until now.

Q.  But you're not relying on Mr. Waltz's -- conversations you've had with you Mr. Waltz?  You
didn't identify those in your declaration, correct?

A.  No, because they didn't make any statement as to whether it was publicly available or not.

Q.  And you didn't personally use WAIS prior to 2000, correct?

A.  Whether I used WAIS personally, I've heard of it but I did not use it.

Q.  And you didn't actually identify any specific companies or people that utilized WAIS prior to
2000, correct?

A.  They used it internally in -- in Thinking Machines, the company that provided.  I don't know
how much external use it got prior to 2000.

[13]  *See* Ex. 2, Carbonell Dep. 222:5-223:5:

Q.  Do you have any specific example?  Strike that.  Did you have evidence that any company
prior to 2000 actually used this part of FreeWAIS in their implementation?

A.  I know it was available for them to uses it.  It was disclosed.  It was part of the art.  I do not
know one way or the other whether I should include it in the old products.

Q.  And each FreeWAIS server could have been set up differently by different people, correct?

A.  That's correct.

Q.  You don't know how many were running prior to 2000, how many FreeWAIS servers?

A.  I don't recall.

Q.  Do you know how many WAIS servers were running, approximately, prior to 2000?

A.  I do not know that either.  I mean, I know they ran them when they gave the public
demonstrations, and they were running them internally at Thinking Machines, but I don't
know the number.

(*See also* Ex. 2, Carbonell Dep. 226:4-14; 209:9-210:23).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    27

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

filing date of the parent application to the '604 patent.  Dr. Carbonell and Samsung thus have no basis for alleging that some hypothetical WAIS system is actually prior art to the '604 patent because they have no evidence such a system ever actually existed.

64.     The references Dr. Carbonell cited as prior art fail to disclose elements of claim 6 of the '604 patent either individually or in combination and it is my opinion that claim 6 of the '604 patent is neither anticipated nor rendered obvious by any of the references or alleged uses.  The following are examples.

65.     ***WAIS does not disclose different heuristic algorithms.***  The evidence Dr. Carbonell cited fails to disclose the claim element "wherein: each heuristic module corresponds to a respective area of search and employs a different, predetermined heuristic algorithm corresponding to said respective area."  In his declaration, Dr. Carbonell alleges that the article Kahle, *Overview of Wide Area Information Servers* (Carbonell Decl. Ex. GG), discloses heuristic modules that employ different, predetermined heuristic algorithms.  (Carbonell Decl. ¶ 121).  This is not disclosed in this reference.  The following sentence is cited by Dr. Carbonell in his declaration:

```
How does WAIS work?
        The servers take a users question and do their best to find
relevant documents.  The servers, at this point, do not "understand" the
users english language question, rather they try to find documents that
contain those words and phrases and ranks then based on heuristics.  The
```

(Carbonell Decl. ¶ 121).

This paragraph is discussing ***all*** WAIS servers and how they all operate in an identical manner.  That is even if the servers were to have different data, they all perform the search in the same manner described.  Nowhere in that paragraph or the entirety of that article does it mention that servers use "a different predetermined heuristic algorithm corresponding to said respective area."  In fact, this article states that all servers use the ***same*** search algorithm.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

66.        In addition, Dr. Carbonell argues that the FreeWAIS-sf system set up by Mr. Bickley

and page 19 of the article entitled freeWAIS-sf, which was attached as Ex. JJ to the Carbonell

Declaration, discloses that claim element.  (*See* Carbonell Decl. ¶¶ 124-130; Ex. B, at 5-6).

However, the evidence that Dr. Carbonell says discloses this claim element- Synonym files,

SOUNDEX and PHONIX  - are all examples of how to build a WAIS index not how a search is

performed.  For example, when Dr. Carbonell describes how the FreeWAIS-sf document discloses

"different heuristic algorithms" he states, "As another example, FreeWAIS-SF permitted ***indexing*** of

documents via SOUNDEX and PHONIX."  (Carbonell Decl. Ex. B, at 6 (emphasis added).)

Constructing an index is not the same as searching.  Dr. Carbonell at his deposition agreed with this

distinction:

> Q.    You used the term "index" and "search."  Is there a difference between "index"
>        and "search"?
>
> A.    Index is -- search is what you do at run time.  Index is what -- you do it in just
>        time, when you organize the material in order to make it easier to search later.
>
> Q.    And so your interpretation of heuristic search that you talked about earlier is a
>        heuristic that's part of the search process?
>
> A.    Yes.

(Ex. 2, Carbonell Dep. 91:8-19)

An index is similar to the yellow pages and different versions of the yellow pages printed by different

companies may have different content or listings or different categorizations of those listings.  A

reader, however, would search all yellow pages in the same manner.  So to with an index and how it

is searched.

67.        Each of the two aspects of Mr. Bickley's system that Dr. Carbonell relies on to argue

that freeWAIS-sf has different heuristic algorithms also only address indexing, not searching.  First,

Dr. Carbonell claims that different "synonym files" make the searches different.  (Carbonell Decl.

¶ 125-26).  These synonym files are created at indexing time, not run time.  The line from the

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                29

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

freeWAIS-sf document that Dr. Carbonell cites to at page 19 lists the synonym file as an index file. Further, both of the databases set up by Mr. Bickley had synonym files, that is, in this respect they were both searched exactly the same way.  (Bickley Decl. ¶ 7).

68.      Second, Dr. Carbonell argues that SONEX and PHONIX are different heuristic algorithms.  In fact, as Mr. Bickley testified in his declaration, "FreeWAIS-sf permits server administrators to enable *indexing* by soundex function. . . . FreeWAIS-sf enables server administrators to enable *indexing* by the PHONIX function."  (Bickley Decl. ¶ 5 (emphasis added)).

69.      All the evidence cited by Dr. Carbonell about how WAIS has different heuristic algorithms only discusses functionality regarding creating an index, and therefore does not disclose "wherein: each heuristic module corresponds to a respective area of search and employs a different, predetermined heuristic algorithm corresponding to said respective area."  And in fact, the evidence has nothing to do with search.

70.      ***WAIS does not disclose heuristic modules***.  Dr. Carbonell has failed to demonstrate how WAIS discloses "heuristic modules" as required by claim 6.  In his claim chart for WAIS, Dr. Carbonell cites a passage from "WAIS A Sketch of an Overview" (Carbonell Decl. Ex. HH) that is discussing the WAIS client, which is the client side software for contacting WAIS servers.  The portion cited by Dr. Carbonell says that WAIS just specifies a protocol:

```
question/query.  A question consists of a phrase.  With the current sample
server/client implementations, this phrase is basically considered a set of
keywords to search for, based on weights/percentages of each word in the
documents (you're searching upon).  But, since WAIS really just specifies
the protocol for the client and server to use for communication, the
underlying search on the server could just as well use various natural
language queries upon its information.  The information on the server could
also easily be some arbitrary database, as long as the server knows how to
understand a WAIS question and send back a response.  The user never has to
```
"WAIS, A Sketch of an Overview." ¶ 2

(*See* Carbonell Decl. Ex. B, at 4).

Gibson, Dunn &
Crutcher LLP

71.     That being the case, all WAIS servers would be accessed with the same protocol and it would make no sense to use modules at all, let alone the different modules required by claim 6.

72.     If Dr. Carbonell is in fact claiming that the combination of the query portion of the WAIS interface should be combined with the running server (and nowhere does he say this), these cannot be correctly viewed as modules.

73.     Modules are small software programs that are parts of a larger application.  That is, they must be part of the application and not some service or server to which the application connects. This is consistent with the discussion in the specification of modules that access remote information. The specification says, "[t]hus, if a search engine is designed for use on the Internet to locate particular types of web pages, a plug-in module can also be designed to access that search engine and return results to the information retrieval manager" ('604 patent 7:31-35) and "[y]et another module might employ a search engine to locate Internet web pages which match the user input" ('604 patent 4:22-23).  That is, a module *accesses* or *employs* a search engine it is not one itself.  Such a module may send queries and to a search engine and retrieve results but the module itself is a piece of software contained within the apparatus.[14]

74.     The searches performed by WAIS are on remote systems by software running on the remote server.  The software component on the client side where the search string is input by the user sends an identical query to all servers.  That is, there are no modules on the client side for sending the queries that are tailored to the server.   Dr. Carbonell has failed to demonstrate at all how the client side queries are sent.

---

[14] I am not arguing that a limitation should be imported from the specification.  Rather, the understanding of the patentee of the term "module" is inconsistent with the argument that the apparatus and the heuristic modules include remote servers.

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                31

Gibson, Dunn &
Crutcher LLP

75.      Dr. Carbonell does not allege that WAIS discloses any of the additional elements of claim 19.  It does not.  Instead, he relies on additional references to argue that claim 19 is obvious.  A discussion of that incorrect obviousness argument can be found below.

**2.      Legall Does Not Anticipate or Render Obvious Claims 6 and 19**

76.      Dr. Carbonell's argument that U.S. Patent No. 6,005,565, "Integrated Search of Electronic Program Guide, Internet and Other Information Resources," granted to Legall et al. ("Legall"), anticipates claim 6 of the '604 patent is without merit.  (*See* Carbonell Decl. ¶¶ 145-62).  In my opinion, Legall does not disclose a "plurality of heuristic modules," as required by claims 6 and 19 of '604 patent.  Accordingly, Legall cannot anticipate either claim.  Dr. Carbonell does not dispute that Legall cannot anticipate claim 19 of the '604 patent.  (*See* Carbonell Decl. ¶ 146).

77.      Legall discloses a single tool for searching an electronic program guide ("EPG") and other information sources.  (*See, e.g.*, Carbonell Decl. Ex. FF, Abstract).  According to Dr. Carbonell, Legall discloses at least two search modules, one module for searching the internet and one module for searching the EPG.  (*See* Carbonell Decl. ¶ 149).  This is incorrect.

78.      In his claim chart, the portion of Legall that Dr. Carbonell cites as support for the "plurality of heuristic modules" in fact refers to the search mechanism in the singular tense:

> parameters. After a search is initiated **502** using the active filter specified **504**, the search mechanism conducts a search of the World Wide Web **506**, and the EPG **508**. At any time

Col. 4:19-21

(Carbonell Decl. Ex. C, at 5 (yellow in original, red box added)).

79.      Elsewhere in Legall, the mechanism that Dr. Carbonell points to as his "plurality of heuristic modules" is in fact a single item in Figure. 3A, shown below (red box added).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    32

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



FIG. 3A

80.     That component "Search Engine EPG & WWW" performs both of the functions that Dr. Carbonell mistakenly attributes to multiple modules.   (*See* Carbonell Decl. ¶¶ 149-54).  The patent specification even refers to it in the singular, namely "***The*** search engine 306." (Legall at 3:14 (emphasis added)).

81.     Even were there two modules, Dr. Carbonell has not shown that both of the modules he identifies are heuristic, or that they employ different, predetermined heuristic algorithms, as required by claim 6.  Dr. Carbonell admitted at his deposition that, according to the description in Legall, the search tool for the EPG need not be heuristic.  As such, even if the web search were heuristic, Legall would only disclose a single heuristic module, not a plurality.  Dr. Carbonell testified that not only did Legall not disclose how searching was performed by one of the "modules" he relied on, but the manner in which he assumes it operates is actually not heuristic:

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    33

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Q.   In your understanding of the systems, how is the electronic program guide searched in the Legall patent?

A.   To the degree that it was disclosed, it was searched with information that was specific to this being a program guide, searching code, searching sections, and so forth were -- was customized to that.  It says, "Specifically written" – that's a module – "Specifically written" for searching the EPG," which means it takes into account the structure and content of the EPG.  ***They did not provide a description of an algorithm that embodies that***.

Q.   And it's your view that a simple text search wouldn't't be a heuristic algorithm, correct?

A.   ***A simple string match text search would not, yes.***

(Ex. 2, Carbonell Dep. 235:12-236:5 (emphasis added)).

82.     Although Dr. Carbonell argued that Legall described a heuristic search tool "specifically written for searching the EPG," he admitted that Legall did "not provide a description of an algorithm that embodies that."  (Ex. 2, Carbonell Dep. 235:12-236:15).  Accordingly, Dr. Carbonell has not demonstrated that the algorithm used to search the EPG is heuristic.  It is my understanding that to anticipate a claim, a reference must necessarily disclose each element.  Because Dr. Carbonell admitted that the Legall patent may not disclose different heuristic algorithms, he has failed to prove invalidity.   As such, Dr. Carbonell has not shown that Legall anticipates claim 6.

83.     Dr. Carbonell does not allege that Legall discloses any of the additional elements of claim 19.  It does not.  Instead, he relies on additional references to argue that claim 19 is obvious.  A discussion of that incorrect obviousness argument can be found below.

**3.     Neal Does Not Anticipate or Render Obvious Claims 6 and 19**

84.     Dr. Carbonell is incorrect that U.S. Patent No. 6,324,534, "Sequential Subset Catalog Search Engine," granted to Neal et al. ("Neal"), anticipates claim 6 of the '604 patent.  (*See* Carbonell Decl. ¶ 164).  Because Neal does not disclose each and every limitation of claim 6 of the '604 patent, it is my understanding that it cannot anticipate that claim.

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

85.       Specifically, Neal does not disclose or suggest multiple search areas.  Claim 6 requires, "each heuristic module corresponds to a respective area of search and employs a different, predetermined heuristic algorithm corresponding to said respective area . . .  search *areas* includ[ing] storage media accessible by the apparatus."  According to Dr. Carbonell, Neal discloses "search areas accessible by the apparatus, including search of *a* database."  (Carbonell Decl. ¶ 169 (citing Neal, 5:20-29 ("An application server 12 is connected to interact with a database 14 which resides in a computer memory storage device 16.")).  Neal discloses searching a single catalog database – a single search area.  (*See* Carbonell Ex. E, at 11-12).  But claim 6 of the '604 patent plainly requires more than one search area.  For example, as the patentee explained in a June 14, 2011 Amendment, potential prior art references that disclose querying one knowledge base, here a database of catalogs, do not disclose "search areas," as the patent requires.  (*See* Exhibit 8 attached hereto; s*ee also*  Apr. 27, 2009 Amendment, at 9 (distinguishing an alleged prior art reference, Tang, because Tang's "database represents only one relevant area that may be searched, a data store (database).") attached hereto as Exhibit 9).  Accordingly, Neal cannot anticipate claim 6.

86.       Further, Dr. Carbonell has not shown that Neal discloses "a plurality of heuristic modules configured to search for information that corresponds to the received information descriptor."   Dr. Carbonell points to Neal's Figure 2 as demonstrating that Neal discloses two or more heuristic modules.  (*See* Carbonell Decl. ¶ 167).  But Dr. Carbonell testified at his deposition that Neal may have been implemented as a *single* module:

> Q.   And it doesn't say that they are implemented in separate modules.  You're just saying it could have been done that way, right?
>
> A.   I'm saying – I'm saying that it could have been done that way or it could have been done in one module.  The disclosure here as separate methodologies with the different heuristics would permit one to -- permit anyone skilled in the art to include them in separate modules.

(Ex. 2, Carbonell Dep. 244:8-18).

87.     Dr. Carbonell has admitted that Neal does not teach one of the elements of claim 6.  It is my understanding that to anticipate a claim a reference must necessarily disclose each element. Because Dr. Carbonell admitted that Neal may not disclose a plurality of heuristic modules, he has failed to prove invalidity.   As such, Dr. Carbonell has not shown that Neal anticipates claim 6.

88.     Dr. Carbonell does not allege that Neal discloses any of the additional elements of claim 19.  It does not.  Instead, he relies on additional references to argue that claim 19 is obvious.  A discussion of that incorrect obviousness argument can be found below.

**4.     MetaCrawler Does Not Anticipate or Render Obvious Claims 6 and 19**

89.     Dr. Carbonell's argument that Erik Selberg and Oren Etzioni's article, "The MetaCrawler Architecture for Resource Aggregation on the Web" (Nov. 8, 1996) ("MetaCrawler"), anticipates claim 6 of the '604 patent is without merit.  (*See* Carbonell Decl. ¶¶ 174-81 & Ex. D).  It is my understanding that for the MetaCrawler reference to anticipate claim 6 of the '604 patent, it must contain each and every limitation of the claim.  Since the MetaCrawler article on which Dr. Carbonell relies fails to disclose all limitations of claim 6, it cannot anticipate that claim.

90.     First, MetaCrawler does not disclose "a plurality of heuristic modules . . . wherein each heuristic module corresponds to a respective area of search," as required in claim 6. Specifically, MetaCrawler does not disclose or suggest searching two or more different, respective areas of search.  Instead, the MetaCrawler Softbot only searches one area – the internet.  (*See, e.g.*, Carbonell Decl. ¶ 177 (citing MetaCrawler Fig. 2, demonstrating that MetaCrawler searches "The Web")).  Dr. Carbonell testified that all the search engines accessed by MetaCrawler searched the same content:

> Q.     And what's the basis for your opinion that each of those uses a different heuristic outlet?
>
> A.     The fact that with the same query and the same web that they're searching, they come up with different results.  Sometimes the results are completely different.

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)          36

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

> Sometimes it's the same result ranked in a different location in the result this. So the first element of the Lycos might be the fourth element on the Yahoo! and might be totally absent from AltaVista.
>
> Q.   That doesn't necessarily mean that they've used a different heuristic algorithm, though, they could just use a different collection of content, correct?
>
> A.   None of the same documents come up if they have used the same content, **they've crawled the same web.  The web at that time was fairly small compared to today's web.**

(Ex. 2, Carbonell Dep. 251:10-252:6 (emphasis added)).

91.     Dr. Carbonell is simply incorrect in his conclusion that because each search engine queried by the MetaCrawler Softbot searches its own internal index, MetaCrawler discloses different search areas.  (*See* Carbonell Decl. ¶ 179).  Dr. Carbonell testified that the search engines that MetaCrawler searches are part of the heuristic modules.  (*See* Ex. 2, Carbonell Dep. 248:4-8 ("Q. What are you identifying as the plurality of heuristic modules in the MetaCrawler article?  A.  Each of the external web search engines.").  As such, according to Dr. Carbonell's understanding, the internal index used by the search engines would be part of the module and therefore could not be a search area, which is external to the modules.

92.     As I discussed above regarding WAIS and the term "module,"  the external search engines searched by MetaCrawler are not modules.   Should Dr. Carbonell argue that it is just the portions of the code in MetaCrawler that access the search engines, but not the search engines themselves, then MetaCrawler would further not disclose "a plurality of heuristic modules configured to search for information . . . wherein: each heuristic module . . . employs a different, predetermined heuristic algorithm."  All of those pieces of software do the exact same thing.  As the MetaCrawler article says, "Users enter queries, and MetaCrawler forwards those queries in parallel to the sundry search services." (MetaCrawler - Carbonell Decl. Ex. RR, at 2).

93.     Further, Dr. Carbonell stated in his declaration and at his deposition that he was offering an opinion that MetaCrawler anticipates, rather than renders obvious, claim 6.  (*See* Ex. 2,

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    37

Gibson, Dunn &
Crutcher LLP

Carbonell Dep. 247:14-25; Carbonell Decl. ¶ 175).  However, he appears to also advance an

obviousness argument in his supporting claim chart.  (*See* Carbonell Decl. Ex. D, at 4-5).  In

particular, Dr. Carbonell argues that to the extent that "storage media accessible to the apparatus"

requires local storage media, it would have been obvious to one skilled in the art to modify

MetaCrawler to include searching local storage media.  (*See id.*).  However, Dr. Carbonell has

provided no evidence that a person skilled in the part would have had a reason to include local search

functionality in MetaCrawler, which explicitly relates to simplifying internet searches.  (*See, e.g.*,

Carbonell Decl. ¶ 179).  As such, MetaCrawler does not render claim 6 obvious.

94.     Finally, Dr. Carbonell's conclusory argument that it would have been obvious to

include in MetaCrawler a method of displaying incremental search results does not withstand serious

scrutiny.[15]  Dr. Carbonell does not allege that MetaCrawler discloses any of the additional elements

of claim 19.  It does not.  Instead, he relies on additional references to argue that claim 19 is obvious.

A discussion of that incorrect obviousness argument can be found below.

### 5.     Claim 19 is Not Obvious

95.     In alleging that claim 19 is invalid, Dr. Carbonell relies on EMACS, Word Perfect,

and the Siitonen references to demonstrate the existence of what he calls "incremental search." (*See*

Opp. Br., at 11; Carbonell Decl. ¶¶ 139-44, 160-62, 171-73, 183-84).  Each of those references,

which I will refer to as the Secondary References, relates to looking up commands, spelling

corrections, or information on a PDA.  Dr. Carbonell alleges that these references can be combined

with each of the four references discussed above (the "Main References").  Yet, Dr. Carbonell fails

to demonstrate how these "incremental search" references actually disclose or suggest the elements of

---

[15]  Notably, Dr. Carbonell appears to have copied and pasted his obviousness argument related to
Neal (*see* Carbonell Decl. ¶ 172) into the MetaCrawler section of his declaration without even
changing some of the references to Neal (*see* Carbonell Decl. ¶ 184).

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                38

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

claim 19.  Claim 19 requires "wherein the interface module is configured to receive portions of the information descriptor as the portions are being inputted, and wherein the heuristic modules are configured to search for information that corresponds to the portions of the information descriptor as the portions are being received."  Dr. Carbonell's argument does not go beyond cutting and pasting a selection from each of the references without a discussion of where the two required modules are and how one of the modules is heuristic.  (*See* Carbonell Decl. ¶¶ 139-44, 160-62, 171-73, 183-84 & Ex. B, at 9-10; Ex. C, at 10-12; Ex. D, at 6-8; and Ex. E at 13-16).

96.    Additionally, the EMACS references that Dr. Carbonell relies on (Exs. MM & NN) do not disclose or suggest the elements of claim 19.  EMACS is a text editor that was frequently used with the Unix operating system.  EMACS was fairly versatile and had features such as commands that a user could run on the text in the main screen, known as a buffer.  With Exhibit MM, "An Introduction to the EMACS Editor," Dr. Carbonell says that EMACS had "incremental search" and then quotes the text from page 12 that says:

**5.6  Control-X ?** -- Describe &#x331;-command

&#x331;? will describe one or all &#x331;-commands, depending on the character typed next:  if you type "&deg;", all the &#x331;-commands are listed and briefly described; if you type another character, that &#x331;-command is describe in detail:

&#x331;?&deg;    List, briefly describe all &#x331;-commands.
&#x331;?&#x331;    Describe &#x331;&#x331;.

(Carbonell Decl. Ex. MM, at 12).

It is unclear how this is incremental search.  The portion of the document describes a special sequence whereby entering "*" gives the user a list of all available commands, which can be further specified by entering the first letter of a command.  To the extent that the command is an information descriptor, the "*" is not a portion of the command name and therefore not a portion of the information as required by the claims.  Additionally, there is no description of heuristic

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    39

Gibson, Dunn &
Crutcher LLP

modules that search for portions of an information descriptor.  With Exhibit NN -"GNU EMACS Manual - Searching and Replacement," Dr. Carbonell relies on a feature for searching text visible in the main buffer – similar to searching for a particular word in a Microsoft Word document.  There is no description of how there is a plurality of modules (claim 19 requires that the "heuristic modules" be configured).  Moreover, there are no heuristic modules for searching the text.  Dr. Carbonell does not even attempt to explain how this search is heuristic.

97.     Dr. Carbonell's next reference, Exhibit PP – "Word Perfect for Windows 5.2," is equally deficient.  The portion that Dr. Carbonell refers to is an image of a spell checker, which allegedly demonstrates that the spell checker provides correction suggestions as a user types in the text box.  Since Dr. Carbonell fails to cite anything but a fuzzy image and no text, it is unclear if the spell checker even operates in that fashion.  Even if it did, this is a spell checker, not search and therefore fails to disclose or suggest the elements of claim 19.  Additionally, this reference fails to disclose the elements of claim 19 because it fails to disclose modules or heuristics.

98.     Last, Dr. Carbonell relies on Exhibit OO, U.S. Patent No. 6,049,796 to Siitonen.  In his declaration, the most Dr. Carbonell says about this reference is, "Siitonen expressly describes incremental search used in a personal digital assistant (PDA)."   (Carbonell Decl. ¶ 143).  He does not provide any citations or evidence for this.  In the associated claim charts, Dr. Carbonell pastes in a quote from a portion of Siitonen 2:51-67.  (*See* Carbonell Decl. Ex. B, at 9; Ex. C, at 10-11; Ex. D, at 6-7; Ex. E, at 14).  Dr. Carbonell fails to explain how Siitonen discloses or suggests modules or heuristics or how any of the limitations of claim 19.

99.     Not only do all of the Secondary references fail to disclose the elements of claim 19, Dr. Carbonell also makes no effort to demonstrate why any of those references should be combined with any of the Main References he alleges invalidate claim 6.  Instead, Dr. Carbonell with each of

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                40

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

those four claim 6 references adds a pro forma "it is obvious to one skill in the art" to extend these claim 19 references to whatever other reference he is discussing.[16]  In fact it is not obvious and there is no reason to combine the Secondary References with any of the Main References he discusses.

100.     It would not have been obvious for a person of ordinary skill in the art to combine incremental search as disclosed in EMACS, WordPerfect 5.2, or Siitonen with WAIS, Legall, Neal, or MetaCrawler.  As Dr. Carbonell explains, WAIS is a client-server search system (*see* Carbonell Decl. ¶ 111), Legall is power search tool that enables a user to search an electronic program guide and other information resources with one search (*see* Carbonell Decl. ¶ 146), Neal is an electronic search engine for catalog searching (*see* Carbonell Decl. ¶ 163), and MetaCrawler is a Web search service designed to provide users with an interface to search multiple general-purpose search engines. (*See* Carbonell Decl. ¶¶ 174, 178).

101.     Dr. Carbonell does not, and indeed cannot, explain what would have prompted a person of ordinary skill in the art to modify any of those networked search systems, to include technology form a spell checker memory (WordPerfect 5.2), a PDA contacts database (Siitonen), or a text editor (EMACS).  Dr. Carbonell does not provide any evidence that the combination would be obvious.  He appears to have determined that it would have been obvious to combine incremental search with those Main References based on hindsight, which I understand is not permitted.  (*See* Polish Decl. ¶ 33).  As such, none of the Main References can be combined with the Secondary References and therefore cannot render claim 19 of the '604 patent obvious.

---

[16]  Clearly Dr. Carbonell's opinions regarding how references should be combined were so devoid of content that he thought nothing of cutting and pasting between disparate references, leading to the pasting of one whole paragraph of his report relating to obvious combinations with the Legall reference at ¶ 162 into the section discussing obvious combinations with the Neal reference five pages later at ¶ 173.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

102.     The failure of proof does not stop there, Dr. Carbonell also provides no evidence or argument regarding why all of his Secondary References should be extended to cover searching over a network.  If it was so obvious to one skill in the art to do so that no argument is necessary, why did Dr. Carbonell not cite a single reference that did so?  In fact, it is not obvious and the invention of claim 19 is not obvious in light of any of the references in Dr. Carbonell's declaration.

103.     In fact, each of these references discuss performing this incremental search on in buffer memories- items that have already been loaded into the memory of the same machine where the search is occurring.  In contrast claim 19 requires that heuristic search modules begin searching as an information descriptor is received.  That is, none of the information is in RAM memory yet, rather either resident remotely or on databases or file systems stored locally.

104.     Claim 6 is additionally not obvious in light of WAIS, Legall, Neal or MetaCrawler. Dr. Carbonell has advanced no theory as to how or why any references should be combined. In fact, Dr. Carbonell's never articulates any obviousness arguments.  Moreover, I also understand, based on my review of the Declaration of Christopher Vellturo, that the universal search  technology claimed in the '604 patent has led to demand for the Samsung Galaxy Nexus and the iPhone 4S.  I also understand that the universal search technology is a core feature of Android.  As I mentioned in my opening declaration, I understand that the commercial success of a product due to the merits of the claimed invention – here, the technology disclosed in the '604 Patent – is a secondary consideration that weighs against a finding of obviousness.  (Polish Decl. ¶ 34.)  Thus, this further bolsters my conclusion that the asserted '604 Patent claims are nonobvious.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## C.     APPLE'S USE OF THE '604 PATENTED TECHNOLOGY

105.      As I explained in my February 6, 2012 declaration, it is my opinion that the Apple iPhone 4S incorporates the claimed features of claim 6 the '604 patent.  Neither Samsung nor Dr. Carbonell disputes this.

## III.     BACKGROUND AND QUALIFICATIONS

106.      My previous declaration sets forth information regarding my background and qualifications as an expert in this action.  That information is hereby incorporated by reference.

107.      Since my February 6, 2012 declaration, I have offered deposition testimony in this action related to the '604 patent.  I have also offered testimony in *Creative Kingdoms v. Nintendo*, ITC Inv. 337-TA-770, and deposition testimony in *Apple v. Motorola*, No. 10-cv-662 (BBC) (W.D. Wis.).

108.      I continue to be compensated for the time I have spent on this litigation at my customary rate of $525 per hour.  My compensation does not depend in any way upon the opinions I provide or the outcome of this litigation.

## IV.     MATERIALS REVIEWED

109.      In addition to the materials I considered in my February 6, 2012 declaration, I have reviewed the Declaration of Dr. Carbonell and all the alleged prior art specifically discussed in that declaration.  Further, I have reviewed the transcript of Dr. Carbonell's deposition in this action.  In addition, I have reviewed the deposition transcripts of Yan Arrouye and Bjorn Bringert in this action.  I have also reviewed the Declaration of Christopher Vellturo.  In forming the opinions set forth in this reply declaration, I have considered and relied upon my education, knowledge of the relevant fields, and experience.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

110.     In forming my opinions, I have considered certain information about the Galaxy Nexus provided by Samsung on its website, I have used the Galaxy Nexus itself (including to search and the Internet and the items stored locally on the Galaxy Nexus and to install searchable apps), and I have considered the '604 patent itself, including the claims, the specification, and the patent's prosecution history, all in the context of the legal principles summarized in my February 6, 2012 declaration.

111.     I understand that discovery in this case has just begun.  Accordingly, I reserve the right to supplement my opinions in this reply declaration should additional information become available to me.

## V.     PERSON OF ORDINARY SKILL IN THE ART

112.     Dr. Carbonell's proposed definition of a person of ordinary skill in the art relevant to the '604 patent appears to require more experience and/or education in computer science than the definition I have applied.  I believe my definition, as set out in my prior declaration, is correct.  (*See* Polish Decl. ¶ 14).  Regardless of which definition is used, my conclusions in this reply declaration and in my original declaration would not be affected.

## VI.     LEGAL STANDARDS

113.     In my February 6, 2012 declaration, I provided an explanation of the legal standards I applied in forming my opinions related to the '604 patent.  Unless otherwise specified, I have applied that same understanding in this reply declaration.  I am not a legal expert and offer no legal opinions.  However, counsel has informed me of the various legal standards that apply to the relevant technical issues, and I have applied those standards in arriving at my conclusions expressed in this reply declaration.

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## VII.    CORRECTIONS

114.        In my February 6, 2012 declaration, I mistakenly stated that I understood that the parties disputed the construction of several terms.  (*See* Polish Decl. ¶ 19).  It is my understanding, and was my understanding while drafting the original declaration, that the parties have not yet engaged in claim construction.  In forming my opinions stated herein and in my original declaration, I interpreted the relevant claims as one of ordinary skill in the art would have interpreted them as of the priority date of the '604 patent.

## VIII.   CONCLUSION

115.        In sum, it is my opinion that the Accused Samsung Galaxy Nexus infringes claims 6 and 19 of the '604 patent; that claims 6 and 19 of the '604 patent are valid; and that the Apple iPhone 4S incorporates certain of the claimed features of the '604 patent.

REPLY EXPERT DECLARATION
OF DR. NATHANIEL POLISH
CONCERNING U.S. PATENT NO. 8,086,604
CASE NO. 12-CV-00630 (LHK)                    45

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   I declare under penalty of perjury that the foregoing is true and correct.

2

3      Dated:   May 14, 2012
                                                    _____
4                                                   Nathaniel Polish

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP