```
 1              UNITED STATES DISTRICT COURT
 2     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3              CASE NO. 12-CV-00630-LHK (PSG)
 4     -------------------------------------------)
       APPLE INC., a California corporation,      )
 5                                                )
                      Plaintiff,                  )
 6                                                )
                   vs.                            )
 7                                                )
       SAMSUNG ELECTRONICS CO., LTD., a           )
 8     Korean business entity; SAMSUNG            )
       ELECTRONICS AMERICA, INC., a New           )
 9     York corporation; SAMSUNG                  )
       TELECOMMUNICATIONS AMERICA, LLC, a         )
10     Delaware limited liability company,        )
                                                  )
11                    Defendants.                 )
       -------------------------------------------)
12
13
14
15        VIDEOTAPED DEPOSITION OF NATHANIEL POLISH
16                    New York, New York
17                    April 3, 2012
18
19
20
21
22
23     Reported by:
24     KATHY S. KLEPFER, RMR, RPR, CRR, CLR
25     JOB NO. 47971
```

Page 2

April 3, 2012

VIDEOTAPED deposition of NATHANIEL POLISH, held at Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, New York, New York, before Kathy S. Klepfer, a Registered Professional Reporter, Registered Merit Reporter, Certified Realtime Reporter, Certified Livenote Reporter, and Notary Public of the State of New York.

TSG Reporting - Worldwide   877-702-9580

Page 3

A P P E A R A N C E S:

GIBSON DUNN & CRUTCHER
Attorneys for Plaintiff
   200 Park Avenue
   New York, New York  10166
BY: JOSHUA FURMAN, ESQ.
BY: BRIAN M. BUROKER, ESQ.


MORRISON & FOERSTER
Attorneys for Plaintiff
   425 Market Street
   San Francisco, California  94105
BY: DIANA B. KRUZE, ESQ.

QUINN EMANUEL URQUHART & SULLIVAN
Attorneys for Defendants
   51 Madison Avenue
   New York, New York  10010
BY: ANASTASIA M. FERNANDS, ESQ.
   ROBERT KANG, ESQ.

TSG Reporting - Worldwide   877-702-9580

Page 4

ALSO PRESENT:
   MICHAEL PINEIRO, Videographer

TSG Reporting - Worldwide   877-702-9580

Page 5

IT IS HEREBY STIPULATED AND AGREED, by and between the attorneys for the respective parties herein, that the filing and sealing be and the same are hereby waived.
   IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.
   IT IS FURTHER STIPULATED AND AGREED that the within deposition may be sworn to and signed before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

TSG Reporting - Worldwide   877-702-9580

Page 42

equivalent training and course work and some academic or work experience in computer software.
    So I think -- I think a bachelor's in computer science is enough right there. If you're not going to have a bachelor's in computer science -- and I don't have a bachelor's in computer science. I am largely self-trained in this sort of thing. I had equivalent training and course work and some academic and work experience in computer software.
    Q.  Let's go back to what we've marked as Polish 4. The '604 patent.
        THE WITNESS: Okay. At your next moment, I wouldn't -- a breakpoint, I wouldn't mind a bathroom break.
        MS. FERNANDS: This is a fine point.
        THE VIDEOGRAPHER: This is the end of the tape labeled number 1. The time is 10:32. Going off the record.
        (Recess.)
        THE VIDEOGRAPHER: This is the start of tape labeled number 2. The time is 10:41. We're back on the record.

Page 43

BY MS. FERNANDS:
    Q.  So if you could take out what we marked as Exhibit 4. It's the '604 patent.
    A.  Okay.
    Q.  And turn to column 8.
    A.  Okay.
    Q.  Claim 6 begins around line 26 of column 8, correct?
    A.  Yes.
    Q.  And if you go down to about line 30, do you see the claim element "a plurality of heuristic modules"?
    A.  Yes.
    Q.  What is your understanding of what "a plurality of heuristic modules" means?
    A.  At least two.
    Q.  Would you agree that a device that had only one heuristic module would not satisfy the claim limitation "a plurality of heuristic modules"?
    A.  I would agree with that, yes.
    Q.  If you go down to -- it's about the broken line, 34 to 35 in claim 6 still.
    A.  Yes.
    Q.  Do you see the heuristic algorithm

Page 44

limitation?
    A.  Yes.
    Q.  In your opinion, did "heuristic algorithm" have an ordinary meaning in the art in 2000?
    A.  Yes, as I said before, it -- it had a lot of different meanings and I think people generally understood what it meant, and the spec helps you understand at least some of what it meant.
    Q.  How would a person of ordinary skill in the art have understood -- what would a person of ordinary skill in the art have understood "heuristic algorithm" to mean in 2000?
        MR. BUROKER: Object to form.
    A.  Well, I think -- I think somebody would have understood it to mean that there was some algorithm that would operate on a particular -- on a particular area of data and come up with a result that would be -- might not be the definitive answer, but would be a helpful -- would be helpful towards an answer, and then they would have looked at the spec and seen some examples that we've been talking about

Page 45

before and they would have generally understood what it meant.
    Q.  I believe you said a couple of answers ago that there were a lot of meanings to "heuristic algorithm" in 2000; is that accurate?
    A.  As I said, I think it's -- it's a broad term that I think was described in the file history a little bit. People generally understood it to be a rule of thumb that gave you the -- that would give you an answer that would -- it wouldn't necessarily give you the definitive one answer, but it would give you a result that would help you towards an answer.
    Q.  How would a person of ordinary skill in the art in 2000 have determined whether a particular algorithm was a heuristic algorithm?
    A.  I think they would have -- they would have relied upon their computer science background and examples from computer science courses of heuristic searches and heuristic algorithms to find examples of heuristic searches, and those would have been distinct from other kinds of, in some sense, more precise search technologies that -- that might have been alternatives.

TSG Reporting - Worldwide    877-702-9580

Page 46

1    Q.  Would the person of ordinary skill in
2  the art in 2000 looking to the examples of
3  heuristic algorithms have understood the full
4  scope of what is a heuristic algorithm?
5    A.  What exactly do you mean by "full
6  scope" there?
7    Q.  When we discussed earlier whether
8  there was an ordinary meaning in the art of
9  "heuristic algorithms," you said there were a
10 lot of meanings, correct?
11   A.  I think -- I don't know the exact
12 word, but it's possible, yes.
13   Q.  And in your opinion, do all of those
14 meanings apply in the context of the '604
15 patent?
16   A.  I don't think that there's a limit set
17 in terms of the meaning of "heuristic algorithm"
18 within the patent.  I think the patent at least
19 sets -- it sets it broad with the term
20 "heuristic algorithm," and then in column 4, you
21 at least have guidance as to three particular
22 examples that are at least included.  And I
23 think that's what would be the guide to know
24 what was meant by "heuristic algorithm."
25   Q.  Would a person of ordinary skill in

TSG Reporting - Worldwide    877-702-9580

Page 47

1  the art have understood that there could be
2  heuristic algorithms other than what the
3  examples are in column 4?
4    A.  Yes, certainly.
5    Q.  And how would the person of ordinary
6  skill in the art understand whether an algorithm
7  that they were working with was in fact a
8  heuristic algorithm under the broader meaning if
9  it did not fall within these examples?
10   A.  Well, I think -- I mean, I used to
11 teach a class in artificial intelligence and we
12 had -- we had several weeks we talked about
13 heuristic algorithms, heuristic searches, and
14 there were plenty of examples in a typical
15 course like that of heuristic algorithms.  And I
16 think people would have -- would have seen those
17 examples and understood that it's -- it's
18 something which might not be -- give you the
19 precise answer, but which would give you an
20 answer which would help you towards getting your
21 answer.
22   Q.  And in your opinion, do all algorithms
23 that might not give you the precise answer but
24 which would give you the answer which would help
25 you toward getting the answer qualify as a

TSG Reporting - Worldwide    877-702-9580

Page 48

1  heuristic algorithm?
2    A.  Depending on the context.  I think
3  they likely would.  It would depend on the
4  context.  I would have to see a particular -- a
5  particular example, but as I say, "heuristic" is
6  a pretty broad concept and it's a -- it's a
7  pretty broad concept in that -- but I mean,
8  most -- I would have to look at a particular
9  example, but I think most that would fit, what
10 we just said there, that performed an analysis
11 of a particular area of data and came back with
12 a result that helped you towards -- towards
13 getting your result, I think those would likely
14 be considered heuristics.
15   Q.  Is it possible that an algorithm could
16 be considered a heuristic algorithm in some
17 contexts but not in others?
18   A.  Probably.  I would have to think about
19 that, but probably.  Some people might call it
20 something different.  Some people might call it,
21 you know, have it by a different name in a
22 different context.
23   Q.  If it were called by a different name
24 in a different context, would the person of
25 ordinary skill in the art still understand it to

TSG Reporting - Worldwide    877-702-9580

Page 49

1  be a heuristic algorithm?
2      MR. BUROKER:  Object to form.
3    A.  Well, in the context of a system such
4  as this where you're -- where you're
5  implementing a search, I think you would view it
6  as being heuristic.  You might have the same
7  algorithm in a non-search context where it might
8  not be called a heuristic.
9      An example might be you might apply
10 something to a Web page and get a score, and
11 that score -- you might call that just some kind
12 of a Web page score.  In the context of
13 searching Web pages, that algorithm would be a
14 heuristic one, but somebody might just call it a
15 score if they were just doing it in the context
16 of scoring a document or scoring the page.
17   Q.  Why, in your opinion, would the
18 algorithm be a heuristic one when searching Web
19 pages?
20   A.  Well, again, if you had something
21 which scored the page and gave you a result and
22 it would help you towards some goal of
23 understanding the page, that would be a
24 heuristic, and certainly -- I would say it would
25 be a heuristic no matter what, but somebody

TSG Reporting - Worldwide    877-702-9580

13 (Pages 46 to 49)

Page 50

1  might simply call it a score in other contexts.
2  In the context of searching, it would clearly be
3  a heuristic.
4      Q.   In your analysis concerning the '604
5  patent, what construction were you using for a
6  heuristic algorithm?
7      A.   Well, I didn't -- I didn't set forth a
8  claim construction analysis here.  I viewed it
9  as plain and ordinary meaning and informed by
10 the spec.  So I viewed it as -- as I think was
11 described in the file history at various points.
12     It was an algorithm that would -- it
13 was a rule of thumb or an algorithm that would
14 give you a result that would help you towards
15 your answer, and certainly in the context of the
16 spec, those three examples they give would fit
17 under that.  And in my infringement analysis, I
18 found those specific examples in the accused
19 product.
20     So, for the purposes of coming up with
21 an infringement analysis, I didn't have to go
22 much further than look at what was in the spec
23 and what -- and what was generally discussed in
24 the file history.
25     Q.   When you say that you used plain and
          TSG Reporting - Worldwide    877-702-9580

Page 51

1  ordinary meaning as informed by the
2  specification, was there a plain and ordinary
3  meaning that was, in your opinion, altered by
4  the specification in some way?
5      A.   I wouldn't say it was altered.  I
6  think the plain and ordinary meaning is, and I
7  don't want to do claim construction here, but
8  I -- plain and ordinary meaning as described in
9  the file history and I think generally is it's
10 a -- it's a rule or set of rules that provides
11 an answer that advances you towards -- towards
12 an understanding or a goal that the spec didn't
13 alter it, but it -- it said, well, it has to at
14 least include these three items, and then those
15 three items happened to be ones that were in the
16 accused product so I didn't have to go much
17 further.
18     I mean, I'm in the situation with the
19 declaration where I don't have a full-on claim
20 construction analysis, but I could still find
21 infringement because it was matching what was in
22 the spec so closely.
23     Q.   In your opinion, is "heuristic
24 algorithm" specifically defined in the
25 specification?
          TSG Reporting - Worldwide    877-702-9580

Page 52

1      MR. BUROKER:  Object to form.
2      A.   There is not a definition and they're
3  certainly not acting as their own lexicographer
4  in the patent.
5      Q.   These examples that you pointed to in
6  column 4, these are examples of searches that
7  might be run with heuristic algorithms; is that
8  correct?
9      A.   Well, these are -- these are examples
10 that are heuristic, that these searches that are
11 done within the patent, these are examples of
12 what they consider to be heuristic modules or
13 heuristic algorithms.
14     Q.   The actual algorithms used are not set
15 forth in column 4; is that correct?
16     MR. BUROKER:  Object to form.
17     A.   That's right.  I don't think they set
18 forth what people would consider to be an
19 algorithm here.
20     Q.   In your opinion, what makes these
21 examples heuristic?
22     A.   You mean other than they say that
23 they're heuristic in the patent?
24     Q.   Other than your understanding in the
25 art of what is a heuristic, what makes these
          TSG Reporting - Worldwide    877-702-9580

Page 53

1  examples heuristic?
2      A.   Well, I think what they're -- what
3  they're getting to here and in other parts of
4  the patent is that you're doing -- you're
5  narrowing your search based upon certain
6  heuristics or criteria.
7      For example, in the -- in the last of
8  the three examples of list of recently accessed
9  files, applications and Websites, presumably the
10 list of all of your files and all of your
11 applications and all of the Websites on the
12 Internet is too big a list.  So they are
13 offering results that are based upon the ones
14 you most recently looked at.
15     So it might be that that's wrong and
16 that -- and that in fact what you're looking for
17 is a Website you have never accessed before
18 and/or an application you have never used
19 before, but this heuristic will offer you the
20 ones that are most recent and so they -- they
21 might be the ones you're interested in.  So, in
22 that sense, it's heuristic.  It's giving you
23 something which will advance you towards the
24 goal of finding what you're looking for, but
25 isn't necessarily going to be giving you the
          TSG Reporting - Worldwide    877-702-9580

Page 158

1  work within the global search system within
2  Android, but that's from a developer side rather
3  than from a consumer side.  I don't think I've
4  looked at the consumer side of that equation.
5     **Q.  Did you do any analysis as to whether**
6  **the features that make Siri -- the features of**
7  **the '604 patent incorporated into Siri that are**
8  **important to Siri are those that are distinct**
9  **from the prior art?**
10    A.   Well, as I said, I think that a lot of
11 Siri's value comes from its comprehensiveness
12 and that the claimed features of the '604 are
13 important to achieving that comprehensiveness.
14 So there may well be other aspects of Siri such
15 as its ability to do speaker independent speech
16 recognition that's very important or handle
17 noisy microphones, but I think to -- I think
18 comprehensiveness is very -- is very important
19 to the -- to the success of it as an interface
20 and the '604 patented features are very
21 important to that comprehensiveness.
22    MS. FERNANDS:  Let's take a break.
23    THE VIDEOGRAPHER:  The time is 2:49.
24 We're going off the record.
25    (Recess.)

TSG Reporting - Worldwide     877-702-9580

Page 159

1     THE VIDEOGRAPHER:  The time is 2:59.
2  We are back on the record.
3     MS. FERNANDS:  Thank you for your time
4  today.  I have nothing further in connection
5  with your declaration in support of the PI.
6     MR. BUROKER:  No further questions.
7  The witness would like to read and sign, but
8  other than that, we're done too.
9     And -- yes, nothing needs to be
10 confidential.  Okay.
11    THE WITNESS:  Yes.  Thank you.
12    MS. FERNANDS:  Thank you.
13    THE VIDEOGRAPHER:  The time is 2:59
14 P.M.  That's the end of today's deposition.
15 We are going off the record.
16    oOo
17
18    _____
19    NATHANIEL POLISH
20 Subscribed and sworn to
   before me this ___ day
21 of _____ 2012.
22
23 _____
24
25

TSG Reporting - Worldwide     877-702-9580

Page 160

1
2     CERTIFICATE
3  STATE OF NEW YORK )
        : ss
4  COUNTY OF NEW YORK)
5     I, Kathy S. Klepfer, a Registered
6  Merit Reporter and Notary Public within and
7  for the State of New York, do hereby
8  certify:
9     That NATHANIEL POLISH, the witness
10 whose deposition is herein before set forth,
11 was duly sworn by me and that such
12 deposition is a true record of the testimony
13 given by such witness.
14    I further certify that I am not
15 related to any of the parties to this action
16 by blood or marriage and that I am in no way
17 interested in the outcome of this matter.
18    In witness whereof, I have hereunto
19 set my hand this 3rd day of April, 2012.
20
21    -------------------------------
   KATHY S. KLEPFER, RPR, RMR, CRR, CLR
22
23
24
25

TSG Reporting - Worldwide     877-702-9580

Page 161

1     INDEX
2  TESTIMONY OF N. POLISH:       PAGE
3  Examination by Ms. Fernands     6
4
5  POLISH EXHIBITS:       PAGE
6  Exhibit 1, CV of Nathaniel Polish, Ph.D.   16
7  Exhibit 2, U.S. Patent No. 6,430,531   20
8  Exhibit 3, Expert Declaration of Dr. Nathaniel   28
9  Polish Concerning U.S. Patent No. 8,086,604
10 Exhibit 4, U.S. Patent No. 8,086,604   33
11 Exhibit 5, a document bearing Bates Nos.   55
12 APLNDC630-40547 through 558
13 Exhibit 6, a document bearing Bates Nos.   65
14 APLINDC630-40667 through 40686
15 Exhibit 7, printout from Wikipedia   66
16 Exhibit 8, List of Materials Considered   68
17 Exhibit 9, and excerpt from Modern Dictionary   69
18 of Electronics, Seventh Edition
19 Exhibit 10, an excerpt from Dictionary of   72
20 Computer Science, Engineering, and Technology
21 Exhibit 11, a document bearing Bates Nos.   80
22 APLNDC630-40504 through 512
23 Exhibit 12, Infringement Claim Chart   95
24 Exhibit 13, Exhibit 7 to Declaration of   114
25 Nathaniel Polish, Ph.D.

TSG Reporting - Worldwide     877-702-9580

Page 162

INDEX (Cont'd.)

POLISH EXHIBITS:                                           PAGE
Exhibit 14, Specification Document                         127
Exhibit 15, an article entitled "Introducing               128
Quick Search Box for Android"
Exhibit 16, an article entitled "Android 1.6               129
Platform Highlights"
Exhibit 17, U.S. Patent 6,847,959                          133
Exhibit 18, a document entitled A Uniform                  137
Interface to Networked Library Services
Exhibit 19, U.S. Patent No. 7,020,670                      146

TSG Reporting - Worldwide    877-702-9580

Page 163

NAME OF CASE:  Apple v. Samsung
DATE OF DEPOSITION:  April 3, 2012
NAME OF WITNESS:  Nathaniel Polish
Reason Codes:
  1. To clarify the record.
  2. To conform to the facts.
  3. To correct transcription errors.

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

_____
NATHANIEL POLISH

TSG Reporting - Worldwide    877-702-9580