Highly Confidential - Attorneys' Eyes Only

Page 1

1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                   SAN JOSE DIVISION
4
5    APPLE INC., a California corporation,
6
                    Plaintiff,
7
     vs.                             CASE NO.   11-cv-01846-LHK
8                                               12-cv-00630-LHK
     SAMSUNG ELECTRONICS CO.,
9    LTD., a Korean business
     entity; SAMSUNG ELECTRONICS
10   AMERICA,INC., a New York
     corporation; SAMSUNG
11   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited
12   liability company,
13                  Defendants.
     _____/
14
15
16           H I G H L Y   C O N F I D E N T I A L
17           A T T O R N E Y S'   E Y E S   O N L Y
18
19        VIDEOTAPED DEPOSITION OF STEVEN SINCLAIR
20              REDWOOD SHORES, CALIFORNIA
21               WEDNESDAY, APRIL 4, 2012
22
23   BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR
24   CSR LICENSE NO. 9830
25   JOB NO. 47582

Page 2

1  WEDNESDAY, APRIL 4, 2012
2      10:04 A.M.
3
4
5
6  VIDEOTAPED DEPOSITION OF STEVEN SINCLAIR,
7  taken at QUINN EMANUEL URQUHART & SULLIVAN,
8  LLP, 555 Twin Dolphin Drive, Redwood Shores,
9  California, pursuant to Notice, before me,
10 ANDREA M. IGNACIO HOWARD, CLR, CCRR, RPR,
11 CSR License No. 9830.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1  APPEARANCES:
2
3
4     FOR APPLE INC.:
5     MORRISON & FOERSTER
6     By:  STUART C. PLUNKETT, Esq.
7     425 Market Street
8     San Francisco, California 94105
9
10
11
12
13    FOR APPLE INC.:
14    GIBSON DUNN
15    By:  ROD J. STONE, Esq.
16    333 South Grand Avenue
17    Los Angeles, California 90071
18
19
20
21
22
23
24
25

Page 4

1  APPEARANCES:  (Continued.)
2
3
4     FOR SAMSUNG ELECTRONICS CO. LTD:
5     QUINN EMANUEL URQUHART & SULLIVAN
6     By: JOHN B. QUINN, Esq.
7        JOHN P. D'AMATO, Esq.
8        VALERIE LOZANO, Esq.
9        SCOTT L. WATSON, Esq.
10    865 S. Figueroa Street
11    Los Angeles, California 90017
12
13
14
15    ALSO PRESENT:   Benjamin Gerald, Videographer
16
17
            ---oOo---
18
19
20
21
22
23
24
25

Page 5

1        REDWOOD SHORES, CALIFORNIA
2          WEDNESDAY, APRIL 4, 2012
3             9:36 A.M.
4
5
6
7        THE VIDEOGRAPHER:  Good morning.
8      This marks the beginning of the disc labeled
9  No. 1 of the videotaped deposition of Steven Sinclair.
10 In the matter Apple Incorporated versus Samsung
11 Electronics Company LTD, et al.
12      Held in the United States District Court for
13 the Northern District of California.  Case
14 Nos. 11-cv-01846-LHK and 12-cv-00630.
15      This deposition is being held at 555 Twin
16 Dolphin Drive in the city of Redwood Shores,
17 California.  Taken on April 4th, 2012, at
18 approximately 9:36 a.m.
19      My name is Benjamin Gerald from
20 TSG Reporting, Incorporated, and I am the legal video
21 specialist.
22      The court reporter is Andrea Ignacio, in
23 association with TSG Reporting.
24      At this time, will counsel please identify
25 themselves for the record.

Page 6

1  MR. QUINN:  John Quinn for Samsung.
2  MS. LOZANO:  Valarie Lozano for Samsung.
3  MR. D'AMATO:  John D'Amato for Samsung.
4  MR. WATSON:  Scott Watson for Samsung.
5  MR. PLUNKETT:  Stuart Plunkett for Apple.
6  MR. STONE:  Rod Stone from Gibson Dunn for
7  Apple.
8  MR. VIDEOGRAPHER:  Thank you.
9  Would the reporter please swear in the
10 witness.
11
12        STEVEN SINCLAIR,
13   having been sworn as a witness
14   by the Certified Shorthand Reporter,
15        testified as follows:
16
17 THE VIDEOGRAPHER:  Thank you.
18 Please proceed.
19
20        EXAMINATION BY MR. QUINN
21 MR. QUINN:  Thank you.
22 Q  Mr. Sinclair, you draw a distinction between
23 a telephone which is the first to have a feature and a
24 phone in which that feature has first been made
25 commercially successful; don't you?

Page 7

1  A  Can you repeat that.
2  Q  You in your own mind draw a distinction
3  between having a -- being the first to have a feature
4  in a phone and being the first to have that feature in
5  a commercially successful version.  You draw that
6  distinction in your own mind; correct?
7  A  I'm not sure if I fully understand the
8  distinction between the two.
9  Q  Are you saying that you do not understand the
10 distinction between being the first to have a feature
11 in a phone and being the first to have a commercially
12 successful version of a feature in a phone?
13 A  No.  I think that you have a phone.  You sell
14 a phone that has the feature.  It has the feature.
15 Q  I'm not sure if I understand your answer.
16 Let me go back to my question, sir.
17 A  Okay.
18 Q  Can you tell me whether or not in your own
19 mind you draw a distinction between being the first to
20 have a feature and being the first to have a
21 commercially successful version of a feature?
22 A  I -- I don't really think about that
23 distinction.
24 Q  Can you see -- as you think about it now, can
25 you see a difference between being the first to have a

Page 8

1  feature and being the first to have a commercially
2  successful version of a feature?
3  A  I think that there are features that are
4  implemented by various products that can be there in
5  name, and they function that way, function as -- as --
6  as they're named or intended.  And there are
7  different -- different levels of success as far as how
8  well that feature works.
9  Q  So is it true that you do see a distinction
10 between being the first to have a feature and the
11 first to have a commercially successful version of a
12 feature?
13 MR. STONE:  Object to the form; vague.
14 THE WITNESS:  So I'm having trouble without
15 specific examples.
16 MR. QUINN:  Q.  Are there particular words
17 that I'm using in my question that you do not
18 understand?
19 A  I'm having trouble parsing your words.
20 Q  Are there particular words in my question
21 that you're having difficulty understanding?
22 A  I believe so.
23 Q  Which words?
24 A  So can someone read back the question again.
25 Q  Is there a distinction in your own mind

Page 9

1  between being the first to have a feature and the
2  first to have a commercially successful version of
3  that feature?
4      In that question, are there particular words
5  that you do not understand?
6  A  I guess there is the definition of
7  "commercially successful."  And also, you're asking me
8  to create a distinction between two hypotheticals that
9  I don't have anything concrete to -- to grab onto.
10 Q  We'll get to that.
11 A  Okay.
12 Q  I want to start out with the words that you
13 don't understand.
14 A  Okay.
15 Q  And so far, as -- if I understand correctly
16 what you've told me, you're having difficulty
17 answering the question because you don't understand
18 some of the words; is that true?
19 A  Well, I'm having trouble with the two things
20 you're trying to compare without concrete examples.
21 Q  Well, let me go back, then.
22 A  Okay.
23 Q  Are there particular words in the question
24 that you do not understand?
25 MR. STONE:  I think he's already told you

Highly Confidential - Attorneys' Eyes Only

Page 58

1  MR. STONE: John, we've been going over an
2  hour. Whenever you get to a good breaking point.
3  MR. QUINN: Let me just -- let me just do a
4  little bit and we'll break; okay?

REDACTED

Page 59

REDACTED

15  MR. QUINN: Okay. Let's break.
16  THE VIDEOGRAPHER: This marks the end of Disc
17  No. 1 in the deposition of Steven Sinclair.
18  The time is 10:36 a m., and we are off the
19  record.
20  (Recess taken.)
21  THE VIDEOGRAPHER: This marks the beginning
22  of Disc No. 2 in the deposition of Steven Sinclair.
23  The time is 10:47 a m., and we are back on
24  the record.
25  MR. QUINN: Q. For how long have you worked

Page 60

1  in the marketing profession or occupation?
2  A  About seven or eight years.
3  Q  Do you have any professional training in that
4  area?
5  A  I have an MBA where I took a class.
6  Q  And where is your MBA from?
7  A  University of Michigan.
8  Q  You're aware that there are particular -- let
9  me start over again.
10  It's true, isn't it, that if a manufacturer
11  of a product wants to find out specifically what
12  features caused a consumer to purchase the product,
13  there are techniques by which a manufacturer could do
14  that?
15  A  Sure.
16  Q  And -- and what would some of those be?
17  A  Primary one would be to -- to ask customers,
18  "Why did you buy the product?"
19  Q  And if Apple wanted to find out what specific
20  features caused consumers to purchase Apple products,
21  that's something that Apple could presumably do by
22  doing those types of surveys?
23  A  That's true.
24  Q  So if Apple wanted to find out whether, you
25  know, a particular feature like slide to unlock or,

Page 61

1  you know, the ability to suggest words in composing a
2  message, or the ability to search across multiple
3  databases and applications, or -- what's the fourth
4  one -- linking structures to actions or detectors, if
5  Apple wanted to find out specifically whether any of
6  those features caused consumers to purchase a product,
7  that -- or contributed to the purchase decision,
8  that's something that Apple could do?

REDACTED



Highly Confidential - Attorneys' Eyes Only

Page 66

REDACTED

21  Q  Based on your experience, your professional
22  experience, are there ways that companies that engage
23  in advertising can determine how effective their
24  advertising has been?
25  A  I'm not an advertising person, and I don't

Page 67

1  dabble in that or spend any time looking at the
2  effectiveness of our advertising, so I don't feel
3  confident in answering that question.
4  Q  So you do not regard yourself as being
5  knowledgeable about advertising; is that true?

REDACTED

Page 68

REDACTED

14  Q  I mean, do you -- I mean, in your
15  declaration, you refer to some advertisements, and I
16  think there are YouTube addresses given for some
17  advertisements --
18  A  That's correct.
19  Q  -- do you recall that?
20  A  I recall that.
21  Q  I mean, have you actually looked at those
22  advertisements yourself?
23  A  I've seen all of those at one time or
24  another.
25  Q  And do you have any information at all that

Page 69

1  you can share with me as to how effective those
2  advertisements have been?
3     MR. STONE:  Objection; vague.

REDACTED

14     MR. QUINN:  Q.  And why did you include those
15  particular advertisements and not others in your
16  declaration?
17  A  So if I recall correctly, those ads show
18  features that were pertinent to the declaration, so
19  slide to unlock, for example.
20  Q  I mean, is it your understanding that those
21  advertisements reflect all four of the patents that
22  you referred to?
23  A  I don't recall if it shows all four.  I can't
24  remember if we had a Siri ad in that list or not, for
25  example.  But certainly they -- they -- they basically