# EXHIBIT HH

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 1

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3

   APPLE INC., a California,          )
4  Corporation,                       )
                                       )
5                    Plaintiff,        )
                                       )
6          vs.                         ) Case No.
                                       ) 12-CV-00630-LHK
7  SAMSUNG ELECTRONICS CO., LTD.,      )
   a Korean business entity;          )
8  SAMSUNG ELECTRONICS AMERICA,        )
   INC., a New York corporation;      )
9  SAMSUNG TELECOMMUNICATIONS          )
   AMERICA, LLC, a Delaware           )
10 limited liability company,         )
                                       )
11                   Defendants.       )
   ------------------------------     )

12

13              ATTORNEYS' EYES ONLY

14         PURSUANT TO PROTECTIVE ORDER

15                  VIDEOTAPED

16      DEPOSITION OF NATHANIEL POLISH

17           New York, New York

18         Friday, June 1, 2012

19

20

21

22 Reported by:

23 FRANCIS X. FREDERICK, CSR, RPR, RMR

24 JOB NO. 50027

25

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 2

1

2

3

4              June 1, 2012

5              9:00 a.m.

6

7

8              CONFIDENTIAL videotaped deposition

9       of NATHANIEL POLISH, held at the offices

10      of Quinn Emanuel Urquhart & Sullivan,

11      LLP, 51 Madison Avenue, New York, New

12      York, pursuant to Notice, before Francis

13      X. Frederick, a Certified Shorthand

14      Reporter, Registered Merit Reporter and

15      Notary Public of the States of New York

16      and New Jersey.

17

18

19

20

21

22

23

24

25

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 3

1   A P P E A R A N C E S:

2

3        GIBSON, DUNN & CRUTCHER

4        Attorneys for Plaintiffs

5             1050 Connecticut Avenue, N.W.

6             Washington, D. C.  20036

7        BY:   BRIAN M. BUROKER, ESQ.

8             - and -

9        GIBSON, DUNN & CRUTCHER

10       Attorneys for Plaintiffs

11            200 Park Avenue

12            New York, New York  10166

13       BY:   JOSHUA FURMAN, ESQ.

14

15       QUINN EMANUEL URQUHART & SULLIVAN

16       Attorneys for Defendants

17            51 Madison Avenue

18            New York, New York  10010

19       BY:   ANASTASIA M. FERNANDS, ESQ.

20

21

22

23  ALSO PRESENT:

24       SHA-LA HOLLIS, Videographer

25

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

1       of the Plaintiff, Apple.

2           THE VIDEOGRAPHER:  Will the court

3       reporter please swear in the witness.

4           * * *

5   N A T H A N I E L   P O L I S H,   called as a

6       witness, having been duly sworn by a

7       Notary Public, was examined and

8       testified as follows:

9   EXAMINATION BY

10  MS. FERNANDS:

11      Q.    Good morning, Dr. Polish.

12      A.    Good morning.

13      Q.    I know you -- I've seen you for

14  deposition before so I know you know the

15  process.  Let me just remind you of a few

16  things.  I'd ask you to please wait until I've

17  finished asking my question before you answer.

18  I will try to wait for you to finish your

19  answer before I start asking the next

20  question.  If at any time during the day you'd

21  like a break just let me know.  I would just

22  ask that you wait until -- if there's a

23  question pending, until after you've answered

24  the question before we take a break.  Do you

25  understand all of that?

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page  33

1        Q.     Leaving aside separate, is the

2    Internet a search area, in your opinion, as

3    that term is used in the '604 patent?

4        A.     Yes.

5        Q.     What is your understanding of

6    search area as that term is used in the '604

7    patent?

8             MR. BUROKER:   Again, objection,

9         calls for a legal conclusion but you can

10        certainly answer.

11             (Document review.)

12        A.     I guess what I would say is I'm

13    not -- I'm not going to offer a claim

14    construction for it sitting here.   In the '604

15    patent there's a description of some examples

16    of plug-in modules.   And I think I've referred

17    on several occasions to the area in -- to the

18    part of the patent in column 4 in the second

19    paragraph of that column that talks about

20    separate modules with associated heuristics

21    with relevant areas of search.   It's on line

22    25.

23             I think there -- and there are

24    examples in the patent that describe those

25    different -- those different modules

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 34

1    heuristics and areas.

2            I don't -- and -- I don't think

3    that -- I mean, I haven't performed a full

4    claim construction analysis as to exactly what

5    I would use -- how I would define area.  But

6    it's clear in the example in the '604 patent

7    that searching the Internet is an area.

8        Q.    Why do you say that it's clear in

9    the example in the '604 patent that searching

10   the Internet is an area?

11       A.    Because at line 22 in column 4

12   they say, "Yet another module might employ a

13   search engine to locate Internet Web pages

14   which match the user input."

15           And so that's being given as an

16   example of a module with a search of an area.

17       Q.    In the analysis that you did to

18   prepare your Reply Declaration you considered

19   whether the prior art references cited by Dr.

20   Carbonell satisfied the claims 6 and 19 of the

21   '604 patent, correct?

22       A.    Yes.

23       Q.    And in that analysis did you have

24   a working understanding of search area?

25       A.    I had a working understanding of

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

1   what the '604 patent was describing.  And I

2   applied that to my -- to looking at Dr.

3   Carbonell's analysis.

4        Q.    When you say you had a working

5   understanding of what the '604 patent was

6   describing, is that different than having a

7   working understanding of what the claim terms

8   mean?

9        A.    I think it's possible to

10  understand what the patent is describing

11  without analyzing each possible component

12  within the patent.  Because the analysis that

13  I'm doing is to determine whether the piece of

14  alleged prior art would cover all the elements

15  of the claimed invention so all I really need

16  to do is find a single difference or some

17  differences in order to knock out that piece

18  of alleged prior art as being invalidated.

19       Q.    But you've also performed an

20  infringement analysis in connection with this

21  litigation, correct?

22       A.    Yes.

23       Q.    You would agree that for an

24  infringement analysis, you have to have an

25  understanding of every element of the claims,

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page  36

1   correct?

2        A.    I have to have an understanding

3   of -- I have to have an understanding of the

4   claims and how I'm applying them to an

5   infringing system.

6        Q.    You understand for there to be

7   infringement that each element of the claim

8   must be present in the accused system or

9   apparatus, correct?

10       A.    Yes.

11       Q.    In performing that analysis, did

12  you have a working understanding of each claim

13  term?

14       A.    Again, I haven't done a claim

15  construction analysis.  As I said I think in

16  the prior declaration I didn't really need to

17  in the sense that what was being done in the

18  accused products was essentially exactly what

19  was being described in the specification of

20  the '604 patent.  So given the notion that

21  whatever claim construction was going to

22  happen was going to have to include what was

23  in the spec that was -- that was a sufficient

24  understanding of the claim elements.

25       Q.    You understand that infringement

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page  37

1    analysis is based on whether the accused

2    product satisfies the specific limitations of

3    the claim, correct?

4          A.    Yes.

5          Q.    You understand that the

6    specification may disclose or describe things

7    that are not part of a particular claim,

8    correct?

9                MR. BUROKER:  Objection.  Calls

10         for a legal conclusion.

11         A.    Well, the specification can

12   describe things that are not necessarily

13   claimed.  But my understanding -- and this is

14   a legal understanding -- but my understanding

15   is that claim construction needs to be

16   consistent with what's in the spec.  And as

17   such that can be very informative as to what

18   the claim elements mean.

19         Q.    Now, I believe in your

20   declarations you have stated that you

21   interpreted the claims as you thought a person

22   of ordinary skill in the art would have

23   understood them; is that correct?

24         A.    Yes.

25         Q.    In considering the claims and

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 38

1   their meaning, were there any terms in claim 6

2   that you believed should be construed other

3   than with the claim meaning to a person of

4   ordinary skill in the art?

5        A.    I think that's stuff we covered

6   previously and I don't think I've offered any

7   opinions to suggest that we would go beyond --

8   that I would go beyond plain meaning as

9   understood by someone of ordinary skill.

10       Q.    So it is -- when you refer to

11  interpreting the claims consistently with the

12  specification, you're not saying that the

13  patentee has acted as its own lexicographer in

14  connection with any of those claims -- the

15  claim terms in claim 6 of the '604 patent.

16            MR. BUROKER:  Objection.  Calls

17       for a legal conclusion.

18       A.    That's correct.  I don't think --

19  I don't think that the -- I don't think that

20  the inventors of the '604 were acting as their

21  own lexicographers in this case.

22       Q.    And at least as far as your

23  analysis for purposes of infringement and

24  invalidity you did not apply any particular

25  constructions other than what you thought the

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 39

1  ordinary meaning to a person of ordinary skill

2  in the art would have been in 2000; is that

3  accurate?

4       A.    I believe that's right, yes.

5       Q.    Going back to the Legall patent

6  that we marked as Exhibit 3, would you agree

7  that the system described in Legall attempts

8  to get the user what she is looking for in the

9  Electronic Programming Guide when a search is

10 conducted?

11      A.    Broadly speaking, yes.  That's

12 right.

13      Q.    And the system described in Legall

14 is designed to locate at least one item of

15 information in the Electronic Program Guide if

16 a search is conducted of the guide, correct?

17      A.    Can ask you that again, please?

18      Q.    Sure.  The system that is

19 described in Legall is designed to locate at

20 least one item of information in response to

21 the user query with respect to the Electronic

22 Program Guide, correct?

23      A.    I guess I'm reacting to your "at

24 least one item of information."

25            It talks about searching and

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 42

1    judgment as to whether they're heuristic.

2         Q.    You agree that the search of the

3    EPG is designed to find information from the

4    EPG, correct?

5         A.    Yes.

6         Q.    And you agree that it attempts to

7    give the user what the user is looking for in

8    that search from the EPG.

9         A.    Yes.

10        Q.    You agree as well that the search

11   of the Internet described in Legall is

12   designed to get information from the Internet,

13   correct?

14        A.    Yes.

15        Q.    And that it is -- it attempts to

16   get the user what she is looking for from the

17   Internet?

18        A.    Yes.

19        Q.    On page 34 of your Declaration,

20   paragraph 82, you note that Dr. Carbonell

21   testified that Legall does not provide a

22   description of an algorithm that embodies the

23   search tool for the EPG, correct?

24        A.    Yes.

25        Q.    And is it your opinion that a

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 43

1   person of ordinary skill in the art would need

2   to see an algorithm, a specific heuristic

3   algorithm set forth if -- describing a

4   heuristic search in order to understand how to

5   implement that search?

6           MR. BUROKER:  Objection to form.

7        Incomplete hypothetical.

8        A.    I don't think they would need to

9   necessarily see a specific algorithm.  They

10  would need to -- I think my only point here is

11  that Legall does not offer any guidance as to

12  what the algorithm is.  Doesn't say whether

13  it's heuristic or not.  It's essentially

14  silent on the subject.

15       Q.    If the search in Legall is

16  heuristic, would the search tool for the EPG

17  necessarily be heuristic?  Sorry.  Strike

18  that.  It was a bad question.

19           If the search of the EPG in Legall

20  is heuristic would there necessarily be a

21  heuristic algorithm employed by the search

22  tool?

23       A.    If I get this correctly, you're

24  asking if there was a heuristic search

25  performed of the EPG in Legall, would there be

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 44

1  a heuristic algorithm as part of it?

2      Q.    Yes.

3      A.    Yes.  I think so.

4      Q.    In your opinion, would a person of

5  ordinary skill in the art in 1997 have been

6  able to implement a search using a heuristic

7  algorithm if an algorithm was not disclosed to

8  them?

9          MR. BUROKER:  Objection,

10      incomplete hypothetical.

11      A.    Given what?  What are you

12  suggesting that the person of ordinary skill

13  in that case was given as a starting point?

14      Q.    If a person of ordinary skill in

15  the art, for example, were given the

16  disclosure of the Legall patent and asked to

17  design a heuristic search, would the person of

18  ordinary skill in the art, based on the

19  knowledge in the art at the time, have the

20  skills to implement a heuristic algorithm?

21      A.    I think someone of ordinary skill

22  in the art would have known how to make a

23  heuristic search if they were told that that

24  was a requirement.

25          (Polish Exhibit 4, United State

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 47

1   product information from multiple suppliers.

2   The same information -- same item may be

3   listed several times in an aggregated

4   catalogue from different suppliers."

5            So it's clear that what they're

6   talking about is that there is a database that

7   is constructed from different catalogues.  And

8   that all the operations going forward are on

9   that aggregated database.

10       Q.   Can you turn to figure 2 in Neal,

11   please.

12       A.   (Witness complies.)

13       Q.   Did you consider figure 2 in

14   forming your opinions concerning Neal?

15       A.   Yes.

16       Q.   And you see that figure 2

17   describes -- sets forth in a flow diagram

18   different data sets being searched by

19   different search methodologies?

20       A.   Figure 2 pairs up data sets and

21   search methodologies.  Yes, it does.

22       Q.   Is it your understanding that

23   those different data sets are all within the

24   same database as described in Neal?

25       A.   I believe that's correct.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 48

1    Q.    Is it your opinion that a data set

2  cannot be a search area?

3         MR. BUROKER:  Object to form.

4    A.    I suppose in some context perhaps

5  it could but not in this context.  In this

6  context the data sets are all catalogue

7  entries of items and I think it's -- I think

8  it's -- it's clear that this -- that the point

9  is that they're all being pulled in and stuck

10 into this database and as such a single area.

11        I could imagine you could create

12 something where you brought in very different

13 data and brought it into the same database and

14 they might be different areas but that's not

15 what's -- that's not what's described here.

16   Q.    Is it your opinion, then, that to

17 be a search area different data must be

18 included in different areas for them to

19 quality as search areas?

20   A.    Can you give me that one again?

21   Q.    Well, let's go back to your

22 previous answer.

23        You answered that you could

24 imagine that you could create something where

25 you brought in very different data and brought

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 49

1  it into the same database and that might be

2  different areas.

3          Why might it be different areas if

4  there's different data?

5      A.    Well, all I was getting to there

6  was that I'm not saying that the fact that

7  it's a single database does not inherently

8  make it a single area.  It also has to do with

9  the fact that this is -- that this is all

10 information concerning catalogue items.  So

11 this is all the same kind of information.

12 It's all being put into the same database.

13 They may be calling it different data sets but

14 it's still a single database, single kind of

15 information.  It's a single area.

16     Q.    If a database contains the same

17 kind of information, in your opinion, it's a

18 single search area?

19     A.    Well, yeah.  I don't want to

20 necessarily make categorical statements about

21 it.  I'm saying in the context of this patent,

22 of the Neal patent, that bringing in

23 essentially the same kind of catalogue

24 information and putting it into the same

25 database, it's the same area.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 53

1    different search methodologies are really just

2    ways of subdividing the existing database for

3    different purposes.

4              So I don't think they're -- so

5    that's part of what supports the notion that

6    this is all one area.

7         Q.    If you look at column 3 of the

8    Neal patent at about line 45, do you see there

9    there's a description of one embodiment of the

10   invention?

11        A.    Yes.  I see it.

12        Q.    And within that embodiment, it

13   describes a system that is configured to

14   search first a catalogue or data set of items

15   that are in-house.  Then a second tier

16   catalogue or data set of vendors supplied.

17   And then if those searches fail another data

18   set of special order suppliers.

19              Do you see that?

20        A.    Yes.

21        Q.    And in your opinion are all of

22   those all still the same search area?

23        A.    Yes.  I think they're still

24   just -- they're just catalogues containing the

25   same sort of product information and what's

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 54

1    talked about here and it's elaborated on later

2    in the patent is that you're just talking

3    about the field that might be different and

4    you're subdividing the database based upon

5    that field.  That doesn't -- certainly not in

6    the context of Neal that doesn't create a

7    separate area all by itself.

8        Q.    So in your opinion, data set 1 is

9    not the respective search area for methodology

10   1 as described in Neal.

11            MR. BUROKER:  Objection, form.

12       A.    Well, say that again.

13       Q.    In your opinion, data set 1 is not

14   a respective search area corresponding to

15   methodology 1 in Neal?

16       A.    Well, data set 1 is paired with

17   search methodology 1.  That much is clear from

18   figure 2.  But I don't think that data set 1

19   is a different search area as described in --

20   in the '604 patent.

21       Q.    You said -- you responded that

22   it's not a different search area.  Is data set

23   1 a search area?

24       A.    Well, the database is a search

25   area and data set 1 is a subset of that search

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 55

1    area -- or a subset of that database.

2         Q.    Is a subset of a search area not a

3    search area in its own right?

4              MR. BUROKER:  Objection, vague.

5         A.    I don't know.  I'd have to think

6    about that.  I think -- you know, I'm not sure

7    exactly what context that would make sense in.

8         Q.    If the data sets are searched by

9    different methodologies and are not searched

10   in the aggregate, how are they not separate

11   search areas?

12             MR. BUROKER:  Objection, form.

13        A.    Well, I'm kind of a little bit

14   lost as to exactly what you're drawing -- what

15   hypothetical you're drawing there.

16             If the data sets are totally

17   different things -- you know, you can imagine

18   going back to the '604 patent.  You had, you

19   know, contacts stuck into a database and file

20   names were also stuck into the database, in

21   the same database, and they would never

22   interact -- and there was no interaction

23   between them and you were just sticking them

24   in the same database for some technological

25   reason, those might be different search areas.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 56

1          But that's very far from where
2    Neal is.  Neal is taking things that are
3    clearly part of the same search area, product,
4    you know, catalogue information, putting them
5    in the database and restructuring what makes
6    the data set dynamically depending upon what
7    someone is looking for.
8          Q.    Now, you said you have not
9    construed the term "search area" specifically,
10   correctly?  Correct?
11         A.    Yes, that's right.
12         Q.    You haven't formed in your mind a
13   construction of the term search area for
14   purposes of your analysis in connection with
15   the '604 patent?
16         A.    I haven't done a -- I haven't done
17   a formal claim construction analysis of that
18   term, no.
19         Q.    What, in your understanding of the
20   term search area, leads you to the conclusion
21   that data sets containing catalogue
22   information cannot be search areas?
23         A.    Well, they can be a search area.
24   But I don't think they'll necessarily be
25   distinct search areas or separate search

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 57

1  areas.  I think that -- I'm saying that

2  product catalogue information is a search area

3  and that product catalogue information from

4  Arrow Electronics would not necessarily be a

5  separate search area from catalogue items from

6  Ingram.  The fact that they're from different

7  vendors doesn't make them different search

8  areas.

9       Q.    What in claim 6 of the '604 patent

10  are you relying on in your opinion that they

11  must be different or distinct search areas?

12            MR. BUROKER:  Objection.  Calls

13       for a legal conclusion.

14       A.    I think that the point about claim

15  6 and area has to do with that there are --

16  that there are these different heuristic

17  modules that have different heuristics and

18  have respective areas.  And then there's

19  examples of them.  And there's examples of

20  these modules that are clearly different that

21  have different heuristic algorithms associated

22  with them.  And different areas.

23            And my only point is that Neal

24  is -- doesn't have these separate modules.

25  It's not separate.  All these things are

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 60

1          Yeah, I think it's -- I'm just

2     looking at -- in my declaration I talk about

3     that the modules access remote information.

4     So I don't think the information itself is

5     part of the module.

6          Q.    Is it your opinion that the

7     information itself cannot be part of the

8     module for it to satisfy claim 6?

9               MR. BUROKER:  Objection, vague.

10         Incomplete hypothetical.

11         A.    I don't know.  I haven't thought

12    about whether you could -- whether you could

13    incorporate the data with the module.  Perhaps

14    you could.

15         Q.    And correct me if I'm wrong but I

16    believe you also said in a previous answer

17    that it's your opinion that Neal does not

18    disclose modules; is that correct?

19         A.    I don't remember whether I said

20    that specifically or not.  But I don't -- I

21    think -- I think -- certainly Neal does not

22    disclose a plurality of modules.

23         Q.    And why do you say that Neal

24    certainly does not disclose a plurality of

25    modules?

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 61

1    A.    Neal is -- Neal is silent on the

2    way that the code is structured.  I don't

3    think there's anything in here to suggest that

4    there's modules or not modules or -- that's

5    structured any particular way.  So there's no

6    discussion in Neal of modularity or

7    creating -- or any particular way of

8    architecting the software.

9    Q.    In paragraph 73 of your

10   Declaration you state that:  "Modules are

11   small software programs that are parts of a

12   larger application."

13        Do you see that?

14   A.    Yes.

15   Q.    Is that the understanding of

16   modules that you've used consistently

17   throughout your analysis for purposes of

18   invalidity and infringement?

19        A.    Yes.  I think so.

20   Q.    What do you mean by small software

21   program in your definition of module?

22        A.    Generally that's referring to a,

23   in some way, bounded piece of code that has an

24   entry point and an exit point and that is

25   somehow semantically a unit.  So, examples

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 62

1    would be methods in Java or procedures or

2    functions in a language like C.

3          Q.    And what is the basis for your

4    understanding of module?

5          A.    Well, I think module is a

6    well-understood term of -- for one of ordinary

7    skill of art at the time of the '604 patent.

8    I think people -- certainly computer science

9    students understand what a module is.  And the

10   use of the term is fully consistent with that

11   definition within the patent.

12         Q.    When you say the use of the term

13   is fully consistent with the definition within

14   that patent, you're referring to the '604

15   patent?

16         A.    Yes.

17         Q.    So is it your opinion, then, that

18   the person of ordinary skill in the art in

19   2000 would have understood module to mean

20   small software programs that are part of a

21   larger application where a program is defined

22   as you just defined it, a bounded piece of

23   code with entry and exit points that is

24   semantically a unit?

25         A.    Again, I'm resisting doing claim

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 63

1    construction at this point in the case but I

2    think that's -- that's something that wouldn't

3    be terribly controversial.  I think that's how

4    people would view -- people of ordinary skill

5    would view the term module.  And it's

6    consistent with what's in the '604 patent.

7         Q.    Is it also consistent with your

8    view of how a person of ordinary skill in the

9    art would have understood module in 2000, a

10   module can be a collection of routines and

11   data structures that perform a particular

12   task?

13              MR. BUROKER:  Objection.  Calls

14        for a legal conclusion.

15        A.    A collection of routines and data

16   structure that perform a particular task.

17   Where's that definition coming from?

18        Q.    I'm just asking whether that's

19   consistent with your understanding of how

20   module was used in the year 2000.

21              MR. BUROKER:  Same objection.

22        A.    A collection of routines and data

23   structures to perform a task.

24              It might well be.  I think it has

25   to do with -- with the boundedness of it; that

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 68

1    taking the same essential query and applying

2    it to their own internal index.

3          Q.    Is it your opinion that the search

4    areas must be different to satisfy claim 6 of

5    the '604 patent?

6                MR. BUROKER:  Objection.  Calls

7          for a legal conclusion.  Asked and

8          answered.

9          A.    I don't know if they have to be

10   different or not.  I know that they -- that's

11   what's described in the patent is different

12   modules with different heuristics and

13   respective search areas.  And there's -- and

14   that's not present here.

15         Q.    When you say "that is not present

16   here" what are you referring to as "that"?

17         A.    Different modules with different

18   heuristic search algorithms connecting to

19   their respective areas.

20         Q.    Do you agree that the Internet can

21   be a respective area of search as used in the

22   '604 patent?

23         A.    Yes.  The area -- the Internet can

24   be an area of search as used in the '604

25   patent.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 70

1    Q.    Is it your opinion that the

2  heuristic search algorithm is part of the

3  module as described in the '604 patent?

4    A.    Yes.  I think the module contains

5  an implementation of the heuristic search

6  algorithm.

7    Q.    But in your opinion a person of

8  ordinary skill in the art would have

9  understood that the module does not contain

10 the information being searched; is that

11 correct?

12        MR. BUROKER:  Objection, vague.

13    A.    I don't think that's how people

14 would have understood it.  I think that

15 looking at column 5 around 18 -- well,

16 actually go even earlier than that, I guess

17 around 14, for example:  "As described

18 previously a heuristic can operate to match

19 the user descriptor with names of information

20 located within various storage media on the

21 computer, on servers and the Internet.

22 Another heuristic can identify matches between

23 the information descriptor and the contents of

24 files located on the computer on servers and

25 the Internet."

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 75

1    type metadata.  Are those respective areas of

2    search?

3              MR. BUROKER:  Objection, vague.

4         Incomplete hypothetical.

5         A.    I'm not sure.  I don't think I

6    have anything close to enough information to

7    answer that.

8         Q.    If two modules using different

9    algorithms were searching -- were both

10   searching file names, in your opinion would

11   those be searching respective areas of search?

12             MR. BUROKER:  Same objection.

13        A.    I'm not sure I can answer that.

14        Q.    Why not?  What is missing?

15        A.    Well -- could you read the

16   question again and I'll try to figure out

17   what's missing.

18        Q.    Two modules using different

19   algorithms for both searching file names, in

20   your opinion would those be searching

21   respective areas of search?

22        A.    If the two modules are searching

23   the list of file names on a particular hard

24   drive, those would be searching the same area.

25        Q.    Paragraph 92 of your Reply

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 76

1    Declaration.  You state your opinion that "The

2    external search engines searched by

3    MetaCrawler are not module."

4              Do you see that?

5       A.    Yes.

6       Q.    What's the basis for your opinion

7    that the external search engines are not

8    modules?

9       A.    Well, the external search engines

10   are large collections of servers with lots of

11   different functionality associated with them.

12   I don't think of those -- running on different

13   computers across the Internet, I don't -- I

14   don't see how those would constitute modules

15   of the MetaCrawler.  They're just -- it's not

16   how anybody would think about -- about a

17   module.

18              The harness can -- the harness as

19   they understand -- they define it in

20   MetaCrawler provides various interfaces and

21   translations to access those -- those external

22   search engines but I don't see those search

23   engines as separate modules.

24       Q.    You refer to the harness -- if you

25   look in the MetaCrawler document which we

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 79

1    modified, and removed without impacting the

2    rest of MetaCrawler.  So, I mean, that's

3    exactly what I mean by abstracting.  It means

4    that you can mess with the internals of the

5    module and the particular communication to one

6    of the search engines without the rest of

7    MetaCrawler having to know about it.

8         Q.    And in your earlier answer you

9    agreed that there are different -- definitely

10   modules related to each search engine within

11   MetaCrawler.  Is that correct?

12        A.    There's a module as -- as they're

13   talking about it in the MetaCrawler paper.

14   It's not a module as understood in the '604

15   patent.

16        Q.    Why is it not a module as

17   understood in the '604 patent?

18        A.    Well, because it doesn't

19   contain -- it doesn't contain the heuristic

20   search algorithm.  I mean, the module that

21   they're describing in the MetaCrawler is a

22   translation module that's translating

23   between -- between a query and the types of

24   commands the particular search engine wants

25   and it translates the results into a form that

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 80

1   can be used by MetaCrawler.

2        Q.    You referred to the modules in

3   MetaCrawler as translation modules.  Do those

4   translation modules transmit the queries to

5   the different Internet search engines?

6        A.    I mean, it's not entirely clear.

7   I think the answer is no because I think in

8   figure 2 there's this box labeled Parallel Web

9   Interface.  And I think that's what does the

10  transmitting.  And that the modules being

11  talked about in this architectural design

12  paragraph are things that are doing

13  translation and then it -- of commands which

14  it then sense to this parallel Web interface

15  and it's looking at the results and

16  translating those.  But it really doesn't talk

17  about it very much.

18       Q.    In your opinion, did the different

19  Internet search engines identified within the

20  MetaCrawler reference, Licos, Excite, Yahoo!

21  and AltaVista, also identified on the first

22  page, I believe, in the introduction, did

23  those employ heuristic search algorithms in

24  the 1996 time frame?

25            MR. BUROKER:  Objection.  Calls

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 88

1    to here is that they're -- is that they're all

2    doing the same heuristic algorithm -- they're

3    all doing the same algorithm.  This is

4    describing all WAIS servers and they all

5    operate in the same way.  At least with

6    respect to this.

7         Q.    And what do you base the opinion

8    that all of the heuristics are the same?

9         A.    Well, they're all -- as I

10   understand WAIS is that WAIS servers produce

11   an index and that the search that's going on

12   is the search of the index.  And they're

13   all -- they're all just doing a text search,

14   key word search, something like that, of the

15   index on the server.

16        Q.    Is ranking based on heuristics

17   part of that text search or key word search as

18   you described it?

19              MR. BUROKER:  Objection, vague.

20        A.    I think what's being described

21   there is that the ranking is done based on

22   heuristics but the search is just, you know, a

23   key word or text search of the index.  I mean,

24   it may well be that the ranking is done with

25   heuristics.  I think it's pretty clear that it

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 89

1    probably was at least based upon that -- that

2    sentence.

3         Q.    In your opinion, to be a heuristic

4    algorithm that satisfies the limitations of

5    claim 6 of the '604 patent, does the heuristic

6    algorithm have to be the search algorithm?

7              MR. BUROKER:  Objection, vague.

8         A.    I certainly think it needs to be

9    part of the search algorithm.  Yeah.  It needs

10   to be part of it.  It talks about -- in column

11   4 that "Each plug-in module has an associated

12   heuristic which it employs to locate

13   information that corresponds to the user

14   input."  So I view the to -- "employs to

15   locate information" suggests that that's at

16   least part of the search.

17        Q.    Also in paragraph 65 of your Reply

18   Declaration at line 22 you state that "All of

19   the servers perform the search in the same

20   manner."

21              Do you see that?

22        A.    Yes.

23        Q.    What do you mean by that?

24        A.    Well, my understanding is that

25   the -- is that the way servers receive a query

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 95

1    line at column 4 beginning at about line 17,

2    "The second module that may index and search

3    the contents of files on the local and/or

4    network storage volumes."

5              Do you see that?

6        A.    Yes.

7        Q.    As described there, there's a

8    single module that both indexes and searches,

9    correct?

10       A.    Yes.  What they're describing

11   there is a module that would both index and

12   search.

13       Q.    And if the index employed a

14   heuristic algorithm would that, in your

15   opinion, be a heuristic module employing a

16   heuristic algorithm corresponding to a

17   respective area of search?

18            MR. BUROKER:  Objection, vague.

19       A.    I think that the heuristic that

20   we're talking about within this column is used

21   to locate information as such is part of the

22   search.  There are other heuristics such as

23   for -- that might be used as part of indexing

24   or if you look further down in this same

25   column in, I guess it's 27, about using

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 96

1  additional heuristics to determine which

2  results are the most relevant, those are --

3  those are -- those are different but I think

4  the -- I think the associated heuristic is

5  concerning search and not concerning indexing

6  or ranking.

7      Q.   Are you familiar with the term

8  inverted index?

9      A.   Yes.

10     Q.   What is an inverted index?

11     A.   What's a succinct answer to that?

12          An index is something like a --

13  well, an index of a book would be a list of

14  words and what pages they appeared on.  An

15  inverted index would be a list of pages and

16  what words were on them.  So it would be

17  inverting -- inverting the index.

18     Q.   And do you think that searching an

19  inverted index is included within what's

20  contemplated by the '604 patent?

21          MR. BUROKER:  Objection, vague.

22     A.   I don't think it's excluded.  I

23  think it's something that could be -- you

24  certainly could -- you could have a module

25  that was searching an inverted index the same

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 129

1      Q.    Which patent is that?

2      A.    That's the '263 patent which is

3  the same patent that I offered testimony about

4  a year ago for Apple at the ITC which was

5  against Nokia and HTC.

6      Q.    Generally, what's the nature of

7  the technology of the '263 patent?

8      A.    The '263 patent deals with various

9  kinds of computer architect pictures for

10 interfacing to digital signal processing

11 chips.

12     Q.    If you'd look at paragraph 7 of

13 your Declaration.  In paragraph 7 you state

14 your opinion that Dr. Carbonell applies an

15 improper narrow interpretation of the term

16 heuristic; is that correct?

17     A.    Yes.

18     Q.    And you go on to state that in

19 your opinion nothing in the '604 patent

20 requires any particular human knowledge

21 specific to the problem or the data or to the

22 user for something to be heuristic; is that

23 correct?

24     A.    That's right.

25     Q.    And then you state the '604 patent

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 130

1    explains that a heuristic simply "can operate

2    to match the user descriptor with the names of

3    the information."

4            Do you see that?

5    A.    Yes.

6    Q.    Is anything that operates to match

7    a user descriptor with the names of

8    information a heuristic in your opinion?

9    A.    You mean that being the only

10   requirement?

11   Q.    Correct.

12   A.    No.  Not necessarily.

13   Q.    So something could, in fact,

14   operate to match a user descriptor with the

15   names of information in a non-heuristic

16   fashion.

17   A.    I think it's possible, yes.

18   Q.    When you say that the '604 patent

19   explains that a heuristic simply can operate

20   to match the user descriptor with the names of

21   information, is that serving as a definition

22   of heuristic in your opinion?

23   A.    No.  I don't think that's a

24   definition of heuristic.

25   Q.    What other requirement is

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 131

1    necessary for this to be a heuristic?

2              MR. BUROKER:  Objection, vague.

3         A.    By this to be heuristic you mean

4    what?

5         Q.    Well, when I asked is anything

6    that operates to match the user descriptor

7    with the names of heuristic, you asked whether

8    that was the only requirement.

9         A.    Right.

10        Q.    And if that is the only

11   requirement you said that's not necessarily a

12   heuristic, correct?

13        A.    Right.

14        Q.    So if that is not necessarily a

15   heuristic, if that is the only requirement,

16   what is necessary to be added to it to make it

17   a heuristic?

18        A.    Well, I haven't performed a claim

19   construction on the term heuristic.  I've

20   offered in the past that the notion that plain

21   and ordinary meaning would be something like a

22   rule of thumb that gets a user -- that

23   advances a user towards getting what they

24   want.  I think that's consistent with what's

25   in the spec.  And I think it really depends on

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 132

1    the context as to whether something is or is

2    not a heuristic.

3         Q.    In paragraph 9 of your

4    Declaration, do you see the sentence beginning

5    at about line 9:  "Because each module is

6    assigned to an area of search, the module

7    employs a heuristic (or rule of thumb) that

8    enables it to best search its assigned area of

9    search..."

10             Do you see that?

11        A.    Yes.

12        Q.    Why do you say that because each

13   module is assigned to an area of search the

14   module employs a heuristic?

15             MR. BUROKER:  Objection, form.

16        A.    Well, I think what I'm -- what I'm

17   saying here is that -- when I say that a

18   heuristic is rule of thumb that advances a

19   user towards getting what they want, you could

20   also say that it's -- you could also add to

21   that within a particular area, within a

22   particular domain or context.  So I think that

23   a heuristic only really works within a certain

24   defined problem domain or area.

25             So there are some things that

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 133

1    would be heuristics that would work -- that

2    would not work as heuristics for some areas

3    but would work for others.

4            Q.    Would they still be heuristics

5    with respect to both areas?

6            A.    Not necessarily, no.

7            Q.    Now, with respect to this sentence

8    that begins at line 19 of page 3 of your

9    Declaration, are you saying here that if a

10   model employs a heuristic -- sorry, strike

11   that.

12           Are you saying here that if a

13   model is assigned to an area of search that it

14   necessarily employs a heuristic?

15           A.    You said a model.  You mean a

16   module.

17           Q.    A module.  I'm sorry.  Strike

18   that.  Let's start over.

19           So the sentence reads:  "Because

20   each module is assigned to an area of search,

21   the module employs a heuristic (or rule of

22   thumb) that enables it to best search its

23   assigned area of search..." and then it goes

24   on, correct?

25           A.    Yes.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 134

1    Q.    Okay.  So are you saying here in

2  this sentence at line 19 that if a module is

3  assigned to an area of search that it

4  necessarily employs a heuristic?

5    A.    Ah, I see where -- okay.  Perhaps

6  the sentence is not the clearest.  I'm not

7  saying that the fact that the module has been

8  assigned to an area of search means that it

9  employs a heuristic.  What I'm saying is that

10  a heuristic -- the module needs to be assigned

11  to an area of search and have a heuristic

12  which enables it to best search the area.

13         The -- I guess there's a coupling

14  between the heuristic and the area.  There are

15  certainly heuristics that would work -- there

16  are algorithms that would work as heuristics

17  for some areas but not for other areas.  So in

18  order for an algorithm to be heuristic you

19  have to in effect either know what the area is

20  or constrain the area in some way such that

21  the heuristic will work as a heuristic.

22    Q.    Now, in that same sentence that we

23  were just discussing you refer to a heuristic

24  that enables it to "best search."  What do you

25  mean by best search?

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 135

1    A.    Well, a heuristic -- a heuristic

2  gets a user -- advances a user towards what

3  they want.  You could -- there's various

4  efficiencies of that.  There are some

5  heuristics that would do that very well and

6  some heuristics that would do that very

7  poorly.  And a good heuristic is going to be

8  one that gets you mostly what you want and

9  excludes the things you don't want.  So you

10  want to pick a heuristic that does the best

11  for the particular area you've chosen.

12    Q.    Is it a requirement of a heuristic

13  that it be the best, or that it lead to the

14  best search?

15         MR. BUROKER:  Objection, vague.

16    A.    No, it doesn't have to be the

17  best.  It's -- that's a goal, though.

18    Q.    In the last sentence of that

19  paragraph 9 do you see the sentence:  "If

20  multiple areas of search are available (e.g.

21  the Internet and a local database of contact

22  information) then the modules associated with

23  each area of search have different heuristic

24  algorithms based on the different areas of

25  search."

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 140

1          A.     Um-hum.   Yes.

2          Q.     And is it your opinion that

3     anything that can operate to match the user

4     descriptor with the names of information

5     located within various storage media in the

6     computer, on servers, and the Internet, is a

7     heuristic?

8          A.     No.   Not necessarily.

9          Q.     That same paragraph goes on:

10    "Another heuristic can identify matches

11    between the information descriptor and the

12    content of files located on the computer, on

13    servers, in the Internet."

14              Do you see that?

15         A.     Yes.

16         Q.     And is it the case that anything

17    that can identify matches between the

18    information descriptor and the content of

19    files located on the computer, on servers, in

20    the Internet, is a heuristic in your opinion?

21         A.     No, not necessarily.

22         Q.     The final sentence of that

23    paragraph 11 you state:   "At bottom, the

24    heuristics are used simply 'to locate at least

25    one item of information'."

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 141

1           Do you see that?

2      A.    Yes.

3      Q.    And is it your opinion that

4  anything that is used simply to locate at

5  least one item of information is a heuristic?

6      A.    No.  Certainly not.

7      Q.    If something is used to locate at

8  least one item of information, how does a

9  person of ordinary skill in the art determine

10 whether it's heuristic?

11          MR. BUROKER:  Objection, vague.

12      Incomplete hypothetical.

13      A.    Well, I think that it depends on

14 how the particular item is searched for.  So

15 if -- if you're using a rule of thumb that

16 will tend to give you an answer that leads you

17 to where you want -- where the user is going,

18 that would be heuristic.

19          If -- you know, if it's something

20 that's very precise that's not a rule of thumb

21 then it probably wouldn't be heuristic.

22      Q.    Can you give me an example of

23 something that is very precise and not a rule

24 of thumb that wouldn't be a heuristic in your

25 opinion?

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 142

1    A.    I think a precise string match
2 probably wouldn't be a heuristic.  I think
3 probably a regular expression matcher would
4 probably not be heuristic.
5    Q.    What do you mean by a regular
6 expression matcher?
7    A.    Something like the UNIX program
8 GREP, G-R-E-P.
9    Q.    And when you say precise string
10 match, what do you mean by precise string
11 match?
12    A.    Well, if it's regular expression
13 it's going to give you a very specific parse
14 that it's looking for and that you're matching
15 for that precise -- that precise thing.
16    Q.    In paragraph 12 at line 22 of that
17 same page of your Declaration, you state:
18 "Consistent with the examples attended in the
19 specification of the '604 patent, claim 6
20 requires multiple heuristic modules that work
21 in parallel to obtain search results from
22 different areas of search."
23         Do you see that?
24    A.    Yes.
25    Q.    What do you mean work in parallel?

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 147

1    completely different area of search --

2    completely different kind of data and so the

3    searches are going to be different.

4         Q.    In your opinion are the searches

5    necessarily going to be different if they're

6    searching different kinds of data?

7         A.    I guess if it's different enough

8    they're pretty clearly going to be using

9    different algorithms.  I think in this

10   particular case they certainly are different

11   enough to use different algorithms.

12        Q.    On the next page in paragraph 19

13   of your Declaration the last sentence of

14   paragraph 19 you state that:  "Figure 2

15   actually lists modules 21 -- excuse me -- 221

16   to 22N but only provides four examples of

17   heuristic modules; it is likely that some of

18   those N modules may use the same heuristic

19   modules."

20             Do you see that?

21        A.    Yes.

22        Q.    Why in your opinion is it likely

23   that some of those N modules may use the same

24   heuristic algorithm?

25        A.    Well, because it's -- the patent

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 148

1    contemplates that there could be a lot of

2    these different modules for different areas

3    and with different heuristics.  You could

4    certainly have a situation where you have some

5    of these modules that are running the same

6    heuristic algorithm but just for different

7    areas.  And that's -- I think that's

8    contemplated in the patent in various places.

9                (Document review.)

10        A.    Yeah, I don't -- I don't -- I

11   can't point you to exactly where that comes

12   from other than it seems pretty clear that you

13   could have many, many modules.  Some might be

14   targeted to different areas but they could

15   wind up searching it with the same heuristics.

16        Q.    You refer in that sentence we were

17   looking at in claim -- in paragraph 19 to the

18   fact that the specification provides -- only

19   provides four examples of heuristic modules,

20   correct?

21        A.    Yes.

22        Q.    What is the relevance to your

23   opinion concerning whether there are modules

24   using in the same heuristic algorithms the

25   fact that the specification only provides four

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 149

1   examples of heuristic modules?

2        A.    Well, I think one of the things I

3   was pointing that up is that I think that Dr.

4   Carbonell was suggesting at some point that

5   every heuristic module needed to be different

6   and that was somehow a requirement of the

7   claim.  And I think I was pointing that up

8   clearly here because I think it's clear that

9   the patent doesn't contemplate that as a

10  requirement of the system.

11           It's not -- my understanding it

12  isn't legally required given the language of

13  the claim, specifically about comprising in

14  each.  But -- also the patent doesn't

15  contemplate a system where there's -- where

16  every module is different.

17       Q.    You would agree with me that the

18  patent expressly says that the heuristic

19  algorithms described herein are meant to be

20  exemplary, correct?

21       A.    Yes.

22       Q.    And that many different heuristics

23  can be employed.

24       A.    Certainly true.

25       Q.    So the patent doesn't contemplate

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 150

1    a limit to the number of heuristic algorithms

2    that could be used.

3         A.    That's right.

4         Q.    In paragraph 21 of your

5    Declaration you assert that Dr. Carbonell's

6    interpretation of heuristic excludes the

7    examples provided in the patent.

8              Do you see that?

9         A.    Yes.

10        Q.    And by the examples provided in

11   the patent in that paragraph 21 are you

12   referring to the section of the specification

13   that's called out from lines 7 through 14 of

14   your Declaration there under paragraph 21?

15        A.    Yes.

16        Q.    So, for instance, about three

17   lines down in the call-out there's the

18   sentence, for instance, one module 221 may

19   search the names of files stored on the local

20   storage media 12 and the LAN storage volumes 8

21   to find those which match user input, right?

22        A.    Yes.

23        Q.    And is it your opinion that a

24   module that searches the names of files stored

25   on the local storage media and the LAN storage

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 151

1    volumes to match those that match the user

2    input is necessarily heuristic?

3         A.   Well, it's not necessarily

4    heuristic.  It can be done heuristically and I

5    think the patent says that you would do it

6    heuristically.

7         Q.   But that standing alone in your

8    opinion, one module may search the names of

9    files stored on the local storage media and

10   the LAN storage volumes to find those which

11   match the user input does not describe a

12   heuristic; is that correct?

13        A.   That does not specify an algorithm

14   right there.  It's simply saying what it does.

15   Not necessarily how it's doing it.

16        Q.   What do you mean when you say that

17   Dr. Carbonell's interpretation of heuristic

18   excludes the examples provided in the patent?

19        A.   Well, as I recall, Dr. Carbonell

20   has a lot on this notion of requiring specific

21   human knowledge as being a requirement of a

22   heuristic.  And I think that the -- I think at

23   least some of the heuristics described -- the

24   heuristic modules here would not satisfy his

25   requirement for specific human knowledge.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 152

1      Q.    When you refer to the heuristic

2  modules here, what are you referring to?

3      A.    Well, the module to search the

4  names of files stored at the local storage

5  media and LAN storage volume.  The module to

6  index and search contents of files.  And the

7  list of files and applications and Web sites

8  with the most recently accessed.  I think that

9  one probably would satisfy this requirement

10 because the most recently accessed would be

11 something that a human did.

12          So I -- and these four -- there

13 are four modules being contemplated in this

14 call-out.  I think at least some of them are

15 ones that wouldn't satisfy Dr. Carbonell's

16 definition of heuristic.

17      Q.    So let me go back then because I

18 might have misunderstood.  When we talked

19 about the first module, module 211 which may

20 search the names of files stored on the local

21 storage media and the LAN storage volumes to

22 find those to match the user input, are you

23 saying that is an example of a heuristic

24 model?

25      A.    Yes.  Certainly.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 153

1    Q.    But didn't you agree that that can

2    be implemented in a way that is not heuristic?

3    A.    It could be.  But it is a

4    heuristic module here because it's an

5    example -- the patent says it's an example of

6    a heuristic module and it can be done as a

7    heuristic module so this is an example of a

8    heuristic module.

9    Q.    If it is done without using a

10   heuristic, is it a heuristic module?

11   A.    No.

12   Q.    And you agree that it can be

13   implemented without using a heuristic.

14   A.    I believe that module could be

15   done without a heuristic.

16   Q.    The second module, 222, may index

17   and search the contents of files on the local

18   and/or network storage volumes, correct?

19   A.    Yes.

20   Q.    In your opinion is that an example

21   of a heuristic module?

22   A.    Yes.

23   Q.    Is it necessarily the case that a

24   heuristic is used to index and search the

25   contents of files on the local and/or network

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 154

1    storage volumes?

2        A.    Again, I think it's just like with

3    the other one.  I think it may be possible to

4    do without a heuristic.  I haven't necessarily

5    thought that all the way through.  I think it

6    is possible to do without a heuristic but we

7    know it's being done with a heuristic here

8    because these examples in the patent of

9    heuristic modules.

10       Q.    If a module index searches the

11   contents of files on the local Internet with

12   storage volumes without using a heuristic, is

13   it a heuristic module?

14       A.    No.

15       Q.    The third module 223 can maintain a

16   list of the files, applications, and Web sites

17   which were most recently accessed and search

18   this list for a match.

19           Do you see that?

20       A.    Yes.

21       Q.    And is it possible to maintain a

22   list of the files, applications and Web sites

23   which were most recently accessed and search

24   this list for a match without using a

25   heuristic?

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 155

1    A.    Again, I'm not a hundred percent

2 sure.  It partly depends on what definition

3 you come up with for a heuristic.  I tend to

4 think that of its nature most recently

5 accessed implies a heuristic.  But there's

6 probably somebody somewhere who has a

7 definition of heuristic that you could use and

8 build something that wasn't heuristic.

9    Q.    In your opinion, is the third

10 module that can maintain a list of the files,

11 applications and Web sites which were most

12 recently accessed and search this list for a

13 match an example of a heuristic module?

14    A.    Yes.  In the context of this

15 patent, yes.  Absolutely.

16    Q.    Do you agree that if someone built

17 something that wasn't heuristic to maintain a

18 list of files, applications and Web sites

19 which were most recently accessed and searched

20 the list for a match, that it would not be a

21 heuristic module?

22         MR. BUROKER:  Objection, vague.

23    A.    You know, in the context of the

24 patent they're giving these examples of

25 examples of heuristic modules.  If it's

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 156

1   possible to build them not being heuristics, I

2   suppose it's possible.  But the patent is

3   clearly calling out these as examples of

4   heuristic modules.

5        Q.    What in the patent clearly calls

6   these as out examples of heuristic models?

7        A.    Well, it says for in -- it says

8   for each -- each plug-in module has an

9   associated heuristic which it employs to

10  locate information.  It corresponds to user

11  input.  For instance, and then it goes on and

12  lists these four modules.

13           So I see -- I read this paragraph

14  pretty clearly to indicate that these are

15  heuristic modules -- these are what the Office

16  of the Patent considered to be heuristic

17  modules.

18       Q.    You don't read this to simply be

19  examples of possible modules?

20       A.    I think it's -- I think the

21  modules are clearly tied to these being

22  examples of plug-in modules that have

23  associated heuristics.

24       Q.    For module 221 what is the

25  associated heuristic as described in this

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 157

1   paragraph?

2        A.    Well, they're not -- they're

3   not -- they're not giving you a specific

4   heuristic function right there.  Let me see

5   something.

6             (Document review.)

7        A.    Paragraph -- column 5 is full of

8   further details about how these things might

9   be implemented.  And, you know, they go on to

10  describe these various -- these various

11  modules and how they might operate.  So I

12  think for the purposes of the patent, anyway,

13  these are examples of heuristic models.

14       Q.    You would agree, however, that

15  this column that you have on page 8 of your

16  Declaration which is from column 4 -- column 4

17  at about lines 13 through 23 of the '604, that

18  it does not describe the associated heuristics

19  for each of these modules?

20       A.    That's correct.

21             MR. BUROKER:  Objection to form.

22       Q.    The final module discussed in this

23  call-out states yet another module might

24  employ a search engine to locate Internet Web

25  pages which match the user input.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 158

1              Do you see that?

2       A.     Yes.

3       Q.     And it is also your opinion that

4  that is an example of a heuristic module?

5       A.     Yes.

6       Q.     Is it your opinion that that

7  module necessarily uses a heuristic?

8              MR. BUROKER:  Objection, vague.

9       A.     I think it does necessarily use a

10  heuristic.  It might be -- it might be

11  theoretically possible in some hypothetical

12  system that you could do it without a

13  heuristic.  I'm not sure how you would do it.

14             But I think any reasonable -- any

15  reasonable approach to implementing that model

16  would have to be heuristic.

17      Q.     Why do you think any reasonable

18  approach to implementing the module that might

19  employ a search engine to locate Internet Web

20  pages must employ a heuristic?

21      A.     Well, because I think what we

22  think of as Internet searching is only

23  feasible on a heuristic basis.

24      Q.     In paragraph 22 of your

25  Declaration at about line 23, do you see the

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 165

1  from what I read that the only

2  non-infringement argument being offered was

3  that -- was this business about each module

4  needed to be different.

5       Q.    And is the statement to which you

6  are referring the statement that you've quoted

7  in footnote 2 there?

8       A.    Well, that's certainly a piece of

9  it.  There was something -- there was

10  something more -- there was something more to

11  it than that but there was certainly -- that

12  certainly summarizes the argument that Samsung

13  was making.

14      Q.    If there was something more to it

15  than that, you haven't cited it here in your

16  Declaration, have you?

17            (Document review.)

18      A.    No.  I don't think I have.

19      Q.    In paragraph 36 of your

20  Declaration -- and feel free to read whatever

21  you need for context, of course.  In paragraph

22  36 you state:  "The examples in the patent

23  that I note above are heuristic because they

24  all attempt to get the searcher what she is

25  looking for within their particular area of

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 166

1    search."

2           Do you see that?

3       A.    Um-hum.  Yes, I do.

4       Q.    In your opinion, is anything that

5    attempts to get the searcher what she's

6    looking for within a particular area of search

7    heuristic?

8       A.    No.  Clearly not.

9       Q.    Why do you state that the examples

10   are heuristic because they attempt to get the

11   searcher what she is looking for within a

12   particular area of search?

13      A.    I think I was using it in the

14   context of -- of the quoted sections of the

15   patent that -- that it was an algorithm that

16   was being -- it was a system -- it was a --

17   it's a heuristic because it was attempting to

18   get the searcher what she was looking for in a

19   particular area and it was exactly the kind of

20   module that was being discussed in the

21   specification of the patent as being

22   heuristic.

23      Q.    Well, you'd agree that what you

24   wrote here is that the examples in the patent

25   that you note above are heuristic because they

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 167

1    attempt to get the searcher what she's looking

2    for in their particular area of search,

3    correct?

4         A.    That's what I wrote, yes.

5         Q.    You go on to say, "For example,

6    one module, whose domain is file names, looks

7    at file names..."

8              Do you see that?

9         A.    Yes.

10        Q.    Is file names an area of search?

11        A.    It certainly could be in this

12   context, yes.

13        Q.    And "...a second whose domain is

14   file contents looks there..." there being file

15   contents in that example?

16        A.    Yes.

17        Q.    Are file contents an area of

18   search.

19        A.    It certainly could be in this

20   context, yes.

21        Q.    It goes on to state "...a third

22   looks at history."

23             Is history an area of search?

24        A.    Yes, it could be in this context.

25        Q.    And what do you mean by history in

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 168

1   this context?

2        A.    What things have been done before.

3   Names of files that have been accessed.  Names

4   of -- names of things that have been

5   previously accessed.

6        Q.    In the next sentence you state:

7   "None of these modules 'know' what the user is

8   looking for or that they will return the

9   desired results."

10            Do you see that?

11       A.    Yes.

12       Q.    What do you mean by that?

13       A.    Well, I guess I was looking -- I

14  was specifically replying to the notion of

15  there being human knowledge somehow embedded

16  in all this, that there's nothing -- these

17  modules don't have any particular human

18  knowledge.  They're just -- they're doing what

19  they can to advance the user towards --

20  towards her goal.

21            But I'm rejecting Dr. Carbonell's

22  notion that a heuristic has to have some kind

23  of specific human knowledge embedded within

24  it.

25       Q.    You go on to state that, "As such

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 169

1  they're using heuristics to give their best

2  approximation within their area of search of

3  what the user is searching for with the input

4  information descriptor."

5          Do you see that?

6      A.    Yes.

7      Q.    What do you mean that as such

8  they're using heuristics?

9      A.    Well, they are -- they are --

10  they're using heuristics.  Again I'm assuming

11  they're heuristics in part because that's what

12  the patent says they are.  But they are giving

13  an approximation, they're using a rule of

14  thumb, to give what it thinks would be the

15  best answer within -- within the domain.  It

16  doesn't know what the exact correct answer is.

17      Q.    You said you're assuming they're

18  heuristics in part because that's what the

19  patent says they are.  If you go back to the

20  previous page, you have that same quote that

21  begins Each plug-in module from column 4.

22          Do you see that?

23      A.    Yes.

24      Q.    And you would agree that quote

25  begins Each plug-in module has an associated

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 170

1    heuristic, correct?

2         A.    Yes.

3         Q.    But the quote from the column 4,

4    lines 13 to 23, does not describe the

5    associated heuristics, correct?

6              MR. BUROKER:  Objection, vague.

7         A.    Well, it doesn't give specific

8    algorithms, no.

9         Q.    Does it give heuristics for each

10   of these proposed modules, these example

11   modules?

12        A.    No.

13             THE WITNESS:  I wouldn't mind a

14        break soon.

15             MS. FERNANDS:  We can take a

16        break.  That's fine.

17             THE VIDEOGRAPHER:  The time is

18        3:13 p.m. and this completes number four

19        of the videotaped deposition of Mr.

20        Nathaniel Polish.

21             (Recess taken.)

22             THE VIDEOGRAPHER:  The time is

23        3:25 p.m. and here begins tape number

24        five of the videotaped deposition of Mr.

25        Nathaniel Polish.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 174

1    recently accessed and searches them for a

2    match.

3              So the Browser module looks at

4    bookmarks and Web history and searches them

5    for a match.  So in that sense it is -- it is

6    a heuristic -- it's the heuristic module in

7    the same sense that it's a heuristic module in

8    column 4.

9         Q.    What is the heuristic algorithm

10   employed by the Browser module in your

11   opinion?

12        A.    To search the bookmarks and

13   history -- search the bookmarks and recent

14   history for a match.

15        Q.    Is it your opinion that simply

16   searching the bookmarks and history for a

17   match uses a heuristic algorithm?

18        A.    In this context, yes.

19        Q.    So in your opinion searching

20   bookmarks and history for a match necessarily

21   uses a heuristic algorithm?

22             MR. BUROKER:  Objection.

23        Mischaracterizes.

24        A.    I think that the -- that the

25   heuristic for trying to get the user what they

Page 175

1    want is to go search the bookmarks and Web

2    history and that's the heuristic.  I don't

3    think it's more complicated than that.

4         Q.    When you say that's the heuristic

5    to go search the bookmarks and Web history, in

6    your opinion is the heuristic what -- does the

7    heuristic identify what to search; that is

8    bookmarks and Web history?

9              MR. BUROKER:  Objection, vague.

10        A.    I think what I said is that the --

11   the heuristic is to search these things.  I

12   think it would not be a heuristic if what the

13   user was looking for was -- I don't know,

14   was -- was their contacts.  That would not be

15   a very good heuristic for finding your

16   contacts.  It would be a good heuristic for

17   finding other sorts of things.

18        Q.    What would not be a good heuristic

19   for finding your contacts?

20        A.    Searching bookmarks and Web

21   history.

22        Q.    What exactly is the heuristic in

23   your example?

24        A.    To search bookmarks and recent Web

25   history.

Page 178

1   6 of the '604 patent requires that the

2   heuristic module employ a heuristic algorithm,

3   correct?

4          A.    Yes.

5          Q.    Where in your infringement

6   analysis in this Reply Declaration do you

7   identify the heuristic algorithm employed by

8   the Browser module?

9                MR. BUROKER:  It's the fourth time

10        you've asked that.  Asked and answered.

11         A.    I say the Browser module returns

12   likely candidates from the user's bookmarks

13   and Web history.

14         Q.    Is that a heuristic algorithm?

15         A.    In this context, yes.

16         Q.    The fact that the Browser module

17   returns likely candidates from user bookmarks

18   and Web history, that describes the heuristic

19   algorithm used by the Browser module.

20         A.    Yes.

21         Q.    Did you discuss your testimony at

22   all with counsel during the last break?

23         A.    No.

24         Q.    In that same paragraph 40 that we

25   were discussing earlier at about line 19 you

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 181

1    and sends searches from the modules to the

2    Google search engine implements the heuristic

3    module described in the patent as yet another

4    module that might employ a search engine to

5    locate Internet Web pages which match the user

6    input.  So I think that Google module is using

7    Google search engine to come up with these

8    suggestions.

9          Q.    Is Google search engine part of

10   the module, in your opinion?

11         A.    No.  Google search --

12   Google's -- Google's Internet search system is

13   not part of the module.  It's what's -- it's

14   what's used by the module.  But it's not part

15   of the module.

16         Q.    The module sends the search to

17   Google search -- to the Google search engine,

18   correct?

19         A.    Yes.  I think that's what I say.

20         Q.    So the Google module.  So let's

21   make the question clear.  In your opinion the

22   Google module sends the search to Google

23   search suggestions, right?

24               I'm sorry.  Strike that.  Let's

25   try this again.  Apologies.

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 186

1   I mean, it's a bit of a hypothetical but the

2   system would know whether it had succeeded or

3   not.  But that's a much narrower kind of a

4   search than is being contemplated here.

5       Q.    And that is not a heuristic

6   search, correct?

7       A.    I think you certainly could

8   construct that as not being a heuristic

9   search.  You could make that -- some search

10  like that in a non-heuristic way.

11      Q.    Is it your opinion that any search

12  that does not have a precise answer such as

13  matching an exact invoice number is

14  necessarily a heuristic search?

15          MR. BUROKER:  Objection, vague.

16  Calls for a legal conclusion.

17      A.    I think, as I've said before,

18  heuristic is a rule of thumb that tries to get

19  the user closer to what they're looking for

20  is -- in their particular area, that's about

21  as close to a definition as I can get right

22  now.  So I think heuristic depends on context

23  and -- yeah, I don't think I could define it

24  any more closely than that.

25      Q.    In paragraph 44 you express the

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 182

1          MR. BUROKER:  A lot of Googles.

2      That's the problem.

3      A.    A lot of Googles and -- I think at

4  the bottom of paragraph 40 I'm saying it about

5  as clearly as I can.

6      Q.    So the Google module sends a

7  search to the Google search engine, is that

8  accurate?

9      A.    Yes, that's correct.

10      Q.    Okay.  And the Google search

11  engine conducts the search and returns the

12  results to the Google module; is that

13  accurate?

14      A.    That's accurate.

15      Q.    Okay.  In paragraph 43 of your

16  Declaration, your first sentence of paragraph

17  43 is "These modules are also heuristic."

18          Do you see that?

19      A.    Yes.

20      Q.    Which modules are you referring to

21  there?

22      A.    I believe I'm referring to the

23  People module and the Google search suggestion

24  modules -- the Google search module.

25      Q.    You go on to state in that same

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 198

1    22N."

2              Do you see that?

3         A.    Yes.

4         Q.    And it goes on to say the

5    heuristics of each plug-in module is

6    different, correct?

7         A.    Yes.

8         Q.    It occurred to me that figure 5

9    does not specifically reference plug-in

10   modules 221 through 22N, does it?

11        A.    That's correct.

12        Q.    So in your opinion with respect to

13   the Google search suggestions what you've

14   referred to as the Google module, the Google

15   module transmits the Google search to the

16   Google search engine, correct?

17        A.    Yes.

18        Q.    And the Google search engine is

19   not part of the module in your opinion?

20        A.    That's correct.

21        Q.    Is -- does the Google module

22   located on the Galaxy Nexus do anything other

23   than transmit the search to the Google search

24   engine and receive the results?

25        A.    What you mean by does it do

Page 199

1    anything?

2         Q.    Does the Google module conduct a

3    search?

4         A.    Google module I'm sure does many

5    things that I haven't necessarily gotten all

6    the way through.  The Google module, though,

7    sends the search to the Google search engine

8    which returns back search suggestions.

9         Q.    And it is the Google search engine

10   that actually does the search based on the

11   Google -- the -- based on the search that is

12   sent by the Google module; is that correct?

13        A.    I believe that's right.

14        Q.    Could you turn to the '604 patent

15   that we marked as Polish Exhibit 2.  Claim 6

16   of the '604 patent requires a plurality of

17   heuristic modules configured to search for

18   information that corresponds to the received

19   information descriptors, correct?

20        A.    Yes.

21        Q.    Is the Google module as you have

22   described it configured to search?

23             MR. BUROKER:  Objection, vague.

24        Q.    Strike that.

25             What is your understanding of what

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 200

1    it means to be configured to search in this

2    context?

3            MR. BUROKER:  Objection.  Calls

4        for a legal conclusion.

5        A.    The modules are set up to perform

6    a search based on information that they

7    receive.  And they can -- they make a decision

8    based on heuristic as to go -- as to where to

9    go search.

10        Q.    In your application -- in your

11   analysis of the '604 patent and application of

12   the claims for purposes of both infringement

13   and invalidity, did you have a working

14   understanding of what it meant to be

15   configured to search?

16            MR. BUROKER:  Same objection.

17        A.    I think I had a general

18   understanding what it meant, yes.

19        Q.    What was your general

20   understanding of what it meant as you applied

21   the claims to Galaxy Nexus and the prior art?

22        A.    That the module would -- would

23   perform a search for information based upon

24   what information was provided to it by the

25   user and what heuristics the module was -- was

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 201

1    built around.

2          Q.    In paragraph 109 of your

3    Declaration you describe certain materials

4    that you reviewed after preparing your last

5    declaration on February 6th.

6                Do you see that?

7          A.    Yes.

8          Q.    Is there anything else that you've

9    reviewed other than what was identified in

10   your February 6th declaration and the one

11   that's identified here in paragraph 109 in

12   connection with your opinions for this case?

13         A.    I guess the only thing that I

14   would maybe clarify in this is that I looked

15   at the source code that Dr. Carbonell was

16   referring to and that I make reference to in

17   one of the exhibits to my Declaration.  Other

18   than that, I don't believe there was anything

19   else.

20         Q.    Have you reviewed your own

21   deposition transcript from the previous

22   deposition in this case?

23         A.    Yes.

24         Q.    Did you have any corrections to

25   that transcript?

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 203

1          THE VIDEOGRAPHER:  The time is

2     4:43 p.m. and we're back on the record.

3          MS. FERNANDS:  Dr. Polish, thank

4     you for your time today.  I have no

5     further questions at this time.

6          MR. BUROKER:  No redirect.  Of

7     course Dr. Polish would want an

8     opportunity to read and sign the

9     transcript.  And with that I think we're

10    done.

11         THE VIDEOGRAPHER:  The time is

12    4:45 p.m. and we are off the record.

13    This completes the tape number five as

14    well as this videotaped deposition of

15    Mr. Nathaniel Polish.

16         (Time Noted:     4:36 p.m.)

17

18

19         _____

20              NATHANIEL POLISH

21

22    Subscribed and sworn to before me

23    this 1st day of June, 2012.

24

25    _____

ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

Page 204

1         C E R T I F I C A T E

2    STATE OF NEW YORK      )

3                          : ss.

4    COUNTY OF NEW YORK     )

5            I, FRANCIS X. FREDERICK, a

6    Notary Public within and for the State

7    of New York, do hereby certify:

8            That NATHANIEL POLISH, the

9    witness whose deposition is

10   hereinbefore set forth, was duly sworn

11   by me and that such deposition is a

12   true record of the testimony given by

13   the witness.

14           I further certify that I am not

15   related to any of the parties to this

16   action by blood or marriage, and that

17   I am in no way interested in the

18   outcome of this matter.

19           IN WITNESS WHEREOF, I have

20   hereunto set my hand this 1st day of

21   June, 2012.

22

23           _____

24                FRANCIS X. FREDERICK

25