1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA    )  C-12-00639 LHK
6  CORPORATION,                )
                               )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,       )
                               )  JUNE 7, 2012
8          VS.                  )
                               )  PAGES 1-120
9  SAMSUNG ELECTRONICS CO.,     )
   LTD., A KOREAN BUSINESS      )
10 ENTITY; SAMSUNG              )
   ELECTRONICS AMERICA,         )
11 INC., A NEW YORK             )
   CORPORATION; SAMSUNG         )
12 TELECOMMUNICATIONS           )
   AMERICA, LLC, A DELAWARE     )
13 LIMITED LIABILITY            )
   COMPANY,                     )
14                             )
               DEFENDANTS.      )
15 _____

16          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17         UNITED STATES DISTRICT JUDGE

18

19

20         APPEARANCES ON NEXT PAGE

21

22

23

24 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                  CERTIFICATE NUMBER 9595
25

                                                      1

```
 1

 2     A P P E A R A N C E S:

 3      FOR APPLE:            GIBSON, DUNN & CRUTCHER
                              BY:  JOSH A. KREVITT
 4                            200 PARK AVENUE
                              NEW YORK, NEW YORK  10166
 5
                              BY:  H. MARK LYON
 6                            1881 PAGE MILL ROAD
                              PALO ALTO, CALIFORNIA  94304
 7
                              BY:  MARK REITER
 8                            2100 MCKINNEY AVENUE
                              DALLAS, TEXAS  75201
 9
                              MORRISON & FOERSTER
10                            BY:  MICHAEL A. JACOBS
                              425 MARKET STREET
11                            SAN FRANCISCO, CALIFORNIA  94105

12

13      FOR SAMSUNG:          QUINN, EMANUEL, URQUHART,
                              OLIVER & HEDGES
14                            BY:  WILLIAM C. PRICE
                                   PATRICK M. SHIELDS
15                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
16                            LOS ANGELES, CALIFORNIA  90017

17

18

19

20

21

22

23

24

25
```

```
 1   SAN JOSE, CALIFORNIA              JUNE 7, 2012

 2                  P R O C E E D I N G S

 3             (WHEREUPON, COURT CONVENED AND THE

 4   FOLLOWING PROCEEDINGS WERE HELD:)

 5             THE CLERK:  CALLING CASE NUMBER

 6   C-12-00630 LHK, APPLE, INCORPORATED VERSUS SAMSUNG

 7   ELECTRONICS COMPANY LIMITED, ET AL.

 8             COUNSEL, STATE YOUR APPEARANCES, PLEASE.

 9             MR. KREVITT:  GOOD AFTERNOON, YOUR HONOR.

10   JOSH KREVITT FROM GIBSON, DUNN ON BEHALF OF APPLE.

11             WITH ME TODAY ARE MY COLLEAGUES MARK LYON

12   AND MARK REITER, AND FROM MORRISON & FOERSTER,

13   MICHAEL JACOBS.

14             THE COURT:  OKAY.  GOOD AFTERNOON.

15             MR. PRICE:  GOOD AFTERNOON, YOUR HONOR.

16   WILLIAM PRICE AND PATRICK SHIELDS FROM QUINN,

17   EMANUEL FOR SAMSUNG.

18             THE COURT:  GOOD AFTERNOON.

19             OKAY.  SO I'D LIKE TO SPEND ABOUT 15

20   MINUTES ON EACH OF THE FOUR PATENTS, AND I HAVE

21   SPECIFIC QUESTIONS.  REALLY, SOME OF THESE ARE

22   SHORTER, SO 5 TO 15 MINUTES.

23             WE CAN SPEND 5 MINUTES ON THE NEW RELEASE

24   ISSUE; AND THEN ABOUT 30 TO 45 MINUTES ON

25   IRREPARABLE HARM; AND THEN AT THE END I'LL GIVE
```

1     YOU, LIKE, IF WE HAVE ENOUGH TIME, 3 TO 5 MINUTES

2     TO WRAP UP.

3              BUT THIS HEARING WILL LAST NO LONGER THAN

4     TWO HOURS.  OKAY?  SO WE'LL JUST BE ON A BIT OF A

5     TIME CLOCK.

6              SO LET'S GO WITH -- LET'S GO WITH --

7     LET'S JUST START WITH THE NEW RELEASE.

8              THIS WILL NOT BE THE SUBJECT OF TODAY'S

9     HEARING.  THERE'S BEEN NO DISCOVERY, AND THE ISSUES

10    HAVEN'T BEEN BRIEFED.

11             SO WHAT I WILL DO, IF THERE IS A

12    PRELIMINARY INJUNCTION, THEN I WOULD INVITE THE

13    PARTIES TO DO A THREE-PAGE BRIEF ON HOW YOU WANT TO

14    PROCEED, EITHER IF AN INJUNCTION IS ISSUED, WHETHER

15    THAT SHOULD BE A CONTEMPT PROCEEDING, OR WHETHER WE

16    SHOULD JUST HAVE THE THIRD APPLE V. SAMSUNG

17    PRELIMINARY HEARING ON WHETHER THE NEW PRODUCT IS

18    COLORABLY DIFFERENT OR NOT.

19             BUT I WOULD ALLOW SOME TIME FOR DISCOVERY

20    AND SET A BRIEFING SCHEDULE AND SET A HEARING

21    SCHEDULE PROBABLY THREE TO FOUR MONTHS, OR TWO

22    MONTHS FROM THE ISSUANCE OF AN ORDER IF THERE IS AN

23    INJUNCTION ISSUED.

24             MR. KREVITT:  MAY I BE HEARD, YOUR HONOR?

25             THE COURT:  YEAH, GO AHEAD.

4

1          MR. KREVITT:  I UNDERSTAND WHY YOUR HONOR

2    MIGHT BE INCLINED TO RULE THAT WAY, BUT FOR REASONS

3    THAT I'D LIKE TO EXPLAIN BRIEFLY, IT WILL RESULT IN

4    SUBSTANTIAL, IMMEDIATE, AND IRREPARABLE HARM TO

5    APPLE.

6          AND IT'S VERY IMPORTANT TO UNDERSTAND

7    WHAT THE NEW RELEASE IS RELATIVE TO THE GALAXY

8    NEXUS.  IT IS THE CONTINUATION PRODUCT.

9          I HAVE DOCUMENTS THAT I'D LIKE TO SHOW

10   YOUR HONOR, THEY'RE CONFIDENTIAL, SO I HAVE A

11   BINDER THAT -- MAY I APPROACH, YOUR HONOR?

12          THE COURT:  WELL, I REALLY DON'T WANT TO

13   GET INTO THE SUBSTANCE OF THE NEW RELEASE.

14          MR. KREVITT:  THAT'S FINE, YOUR HONOR.

15          THE COURT:  I THINK THAT SAMSUNG IS

16   CORRECT THAT THEY HAVE A DUE PROCESS ISSUE THAT --

17   HOW WOULD I MAKE A DETERMINATION OF WHETHER THERE'S

18   A COLORABLE DIFFERENCE OR NOT WITHOUT HEARING FROM

19   THEM?

20          MR. KREVITT:  HERE'S HOW, YOUR HONOR, TWO

21   WAYS.

22          THE COURT:  YEAH.

23          MR. KREVITT:  FIRST, THERE IS NO

24   ALLEGATION YET THAT THE PRODUCT, IN RELEVANT

25   RESPECTS, IS AT ALL DIFFERENT.

1        WE PUT IN EXPERT DECLARATIONS THAT IT IS

2   IDENTICAL, NOT COLORABLY -- MORE THAN COLORABLY,

3   LESS THAN COLORABLY, IDENTICAL IN RELEVANT

4   RESPECTS.

5        IT INFRINGES USING THE SAME OPERATING

6   SYSTEM.

7        SO WHAT HAPPENS, YOUR HONOR, JUST TO PUT

8   THIS IN PERSPECTIVE -- AND I UNDERSTAND THAT YOUR

9   HONOR HAS A LOT THAT YOU WANT TO COVER, BUT THIS IS

10  CRITICALLY IMPORTANT TO APPLE -- IS WE FILE THE

11  PRELIMINARY INJUNCTION MOTION IN FEBRUARY COVERING

12  THE GALAXY NEXUS, WHICH USES THE ANDROID ICE CREAM

13  SANDWICH OPERATING SYSTEM.  IT WAS THE FIRST

14  SAMSUNG PRODUCT, THE FIRST ANDROID PRODUCT, TO USE

15  THAT OPERATING SYSTEM.

16       THEY HAVE BEEN ON NOTICE SINCE FEBRUARY

17  OF THIS YEAR THAT WE ARE ASSERTING FOUR PATENTS, OF

18  COURSE.

19       THEY HAVE NOW ANNOUNCED THAT THEY ARE

20  GOING TO START SELLING A PRODUCT IN TWO WEEKS THAT

21  INCLUDES THE EXACT SAME FEATURE THAT INFRINGES TWO

22  OF THE PATENTS THAT ARE AT ISSUE HERE IN THE EXACT

23  SAME WAY.  IT'S THE SAME OPERATING SYSTEM.

24       IT ISN'T -- THERE IS NO DISCOVERY THAT IS

25  NECESSARY, YOUR HONOR.  I UNDERSTAND WHY, COMING IN

1    WITH A NEW DEVICE, THE COURT MAY BE INCLINED TO

2    THINK THERE WOULD BE DISCOVERY NECESSARY.

3            WHAT WE DID, IF YOU'LL INDULGE ME, WHEN

4    THE PRODUCT WAS ANNOUNCED, WE IMMEDIATELY -- EXCUSE

5    ME -- WHEN THE PRODUCT WENT ON SALE, WE

6    IMMEDIATELY -- AND WHEN I SAY "IMMEDIATELY," WE

7    FLEW SOMEBODY TO LONDON TO GET A COPY OF IT -- WE

8    IMMEDIATELY WENT, GOT THE DEVICE, BROUGHT IT TO THE

9    UNITED STATES, HAD OUR EXPERTS ANALYZE IT, AND OUR

10   EXPERTS DETERMINED THAT WITH RESPECT TO TWO OF THE

11   FOUR PATENTS THAT ARE AT ISSUE IN THIS CASE, IT IS

12   IDENTICAL.

13            WITH RESPECT TO THE OTHER TWO PATENTS --

14            THE COURT:  THIS WOULD NOT BE THE FIRST

15   ISSUE WHERE APPLE AND SAMSUNG EXPERTS DISAGREE.

16            MR. KREVITT:  I UNDERSTAND, YOUR HONOR.

17            THE COURT:  I WOULD SUSPECT THAT THEY ARE

18   GOING TO BE ABLE TO GET AN EXPERT TO ACTUALLY

19   DISAGREE AND SAY -- AND ASSERT THAT THERE IS A

20   COLORABLE DIFFERENCE.

21            MR. KREVITT:  MAYBE, YOUR HONOR.

22            BUT IF I CAN RESPOND BRIEFLY ON THAT

23   POINT?

24            WE FILED A DOCUMENT WITH EXPERT

25   DECLARATIONS.  SAMSUNG FILED A RESPONSIVE DOCUMENT

```
 1    WHICH YOUR HONOR HAS, OF COURSE.  THEY FILED THAT
 2    YESTERDAY.  IT'S THREE PAGES.
 3              NEVER ONE TIME DOES IT SAY IT DOES NOT
 4    HAVE THE IDENTICAL FEATURE.
 5              SO SO FAR, IT'S UNIQUELY IN THEIR
 6    POSSESSION, THEY HAVE THE DEVICE, THEY UNDERSTAND
 7    WHY WE THINK IT'S IDENTICAL, AND SO FAR THEY HAVE
 8    NOT SAID IT ISN'T.
 9              WHAT'S MORE, YOUR HONOR --
10              THE COURT:  OKAY.  LET ME -- I'M SORRY TO
11    INTERRUPT YOU, BUT JUST IN THE INTERESTS OF TIME,
12    ASSUMING THERE IS AN INJUNCTION, AND I AM NOT
13    COMMENTING ON WHETHER THERE IS OR IS NOT, ASSUMING
14    THERE IS AND ASSUMING THAT I AM GOING TO ALLOW
15    LIMITED, EVEN IF IT'S ONLY EXPERT DISCOVERY, BUT
16    I'M GOING TO ALLOW SOME LIMITED DISCOVERY AND WOULD
17    ALLOW SAMSUNG TO MAKE A SUBSTANTIVE RESPONSE TO
18    YOUR REQUEST, AND IF A HEARING IS NECESSARY, WHICH
19    I THINK IN THE INTERESTS OF DUE PROCESS WE SHOULD
20    HAVE ONE, EVEN IF IT'S A TRUNCATED ONE, TELL ME
21    WHAT YOU PROPOSE.
22              MR. KREVITT:  VERY WELL, YOUR HONOR.
23              THE COURT:  YEAH.
24              MR. KREVITT:  WHAT WE PROPOSE IS IF YOUR
25    HONOR ACCEPTS OUR ARGUMENTS THAT THE SALE OF
```

1    INFRINGING DEVICES CAUSE IRREPARABLE HARM TO APPLE,

2    THE IRREPARABLE HARM WILL BE ENORMOUS STARTING ON

3    JUNE 21ST.

4           THIS IS, AS YOUR HONOR SAW FROM THE

5    SUBMISSION THAT WE MADE, AT LEAST REPORTEDLY IN THE

6    PRESS, THE MOST WIDELY PRE-ORDERED GADGET IN

7    HISTORY.

8           THERE ARE MILLIONS, TENS -- TEN MILLION

9    PRE-ORDERS ALREADY.

10          THE COURT:  I'M SORRY TO INTERRUPT YOU

11   AGAIN, BUT WHAT IS YOUR PROPOSAL ON THE PROCESS?

12          MR. KREVITT:  SO OUR PROPOSAL, FAIR

13   ENOUGH.

14          THE COURT:  OKAY.

15          MR. KREVITT:  OUR SPECIFIC PROPOSAL, YOUR

16   HONOR, IS THAT THIS COURT NEEDS AN OPPORTUNITY TO

17   CONSIDER THE PRELIMINARY INJUNCTION QUESTION BEFORE

18   THE LAUNCH, WHICH MEANS THAT IF THE LAUNCH IS SET

19   TO TAKE PLACE IN TWO WEEKS, WE WOULD PROPOSE THAT

20   YOUR HONOR ENTER AN ORDER IN WHICH WE HAVE

21   DISCOVERY IMMEDIATELY, IN THE NEXT WEEK, AND WE

22   FILE PAPERS RIGHT AWAY.

23          ALTERNATIVELY, YOUR HONOR -- AND YOUR

24   HONOR MAY HAVE SEEN THIS FROM THE CORRESPONDENCE

25   THAT WE ATTACHED -- SAMSUNG CAN AGREE TO DELAY THE

1    LAUNCH.

2            WHAT WE WANT, AND WHAT THE RULES PROVIDE,

3    IS A PRESERVATION OF THE STATUS QUO, BECAUSE THE

4    MOMENT THE LAUNCH TAKES PLACE, YOUR HONOR, THE

5    HORSE IS OUT OF THE BARN AND THE IRREPARABLE HARM

6    HAS HAPPENED.  THE INCALCULABLE HARM HAS HAPPENED

7    AT THAT POINT.

8            SO WE WOULD PROPOSE, YOUR HONOR, A

9    MECHANISM THAT ALLOWS THIS COURT TO DECIDE THE

10   ISSUE BEFORE LAUNCH.

11           WE CAN FILE, IF YOUR HONOR BELIEVES IT'S

12   NECESSARY AND APPROPRIATE FOR NOTICE REASONS, WE

13   DON'T, BUT IF YOUR HONOR DOES, WE CAN FILE, BY THIS

14   TIME TOMORROW, A MOTION FOR A TEMPORARY RESTRAINING

15   ORDER AND YOUR HONOR CAN ENTER A SCHEDULE WHICH

16   WOULD ALLOW THE PARTIES TO BRIEF THE ISSUE, TO THE

17   EXTENT THAT BRIEFING IS NECESSARY, WITHIN DAYS.

18           THE -- OUR CONTENTION, YOUR HONOR, IS

19   THAT THE RECORD BEFORE THE COURT IS SUFFICIENT TO

20   ENTER AN ORDER WITH RESPECT TO THE GALAXY S III.

21           THAT ONLY WORKS AGAINST APPLE.  THE

22   REASON I SAY THAT, YOUR HONOR, IS IT'S LIKELY THAT

23   THE HARM WITH RESPECT TO THE S III MAY BE GREATER.

24           WE ARE PREPARED TO PROCEED ON THE CURRENT

25   RECORD WITH RESPECT TO IRREPARABLE HARM, BALANCE OF

1    THE HARDSHIP, ALL OF THOSE ISSUES.

2         SO, YOUR HONOR, WHAT WE ARE REQUESTING IS

3    A MECHANISM -- AND THIS IS WHAT RULE 65 PROVIDES --

4    TO PRESERVE THE STATUS QUO, TO NOT ALLOW THE LAUNCH

5    TO TAKE PLACE BEFORE THIS COURT HAS AN OPPORTUNITY

6    TO CONSIDER THIS QUESTION.

7         WE -- AS I SAY, WE CAN HAVE A BRIEF ON

8    FILE BY THIS TIME TOMORROW, AND AS YOU KNOW, THE

9    PARTIES CAN MOVE VERY QUICKLY WHEN ORDERED TO DO

10   SO.

11        IF SAMSUNG BELIEVES THE PRODUCT IS

12   DIFFERENT IN MATERIAL RESPECTS, IT WILL NOT TAKE AN

13   EXPERT LONG TO SAY SO AND TO EXPLAIN WHY.

14        THE COURT:  ALL RIGHT.  LET ME HEAR FROM

15   SAMSUNG ON THIS ISSUE, PLEASE.

16        MR. PRICE:  YOUR HONOR, IN THE ORIGINAL

17   INJUNCTION MOTION THAT WE'RE TALKING ABOUT TODAY,

18   APPLE HAS SAID THAT THESE FOUR ACCUSED FEATURES

19   HAVE BEEN THE FEATURES THAT HAVE DRIVEN THE SALE OF

20   THE NEXUS, AND YOU'VE SEEN THE DATA ON THAT, AND

21   THE DATA IS THAT THE NEXUS IS NO MORE THAN A GNAT

22   ON, YOU KNOW, AN ELEPHANT'S REAR QUARTERS COMPARED

23   TO IPHONE SALES.

24        THEY HAVEN'T SHOWN THE IRREPARABLE HARM

25   FOR THE NEXUS WITH WHAT THEY SAY ARE FOUR ACCUSED

11

1    FEATURES.

2              AND NOW THEY COME AT THE LAST MINUTE AND

3    SAY -- WE HAVE THE GALAXY S III, WHICH SAMSUNG

4    BELIEVES WILL BE A BIG SELLER BECAUSE IT IS A

5    GENERATION AHEAD OF EVERYTHING ELSE.  IT HAS

6    FEATURES WHICH ARE DYNAMIC --

7              THE COURT:  OKAY.

8              MR. PRICE:  -- AND CUSTOMERS WILL --

9              THE COURT:  I'M SORRY TO INTERRUPT YOU.

10             WHAT DO YOU WANT BY WAY OF PROCESS?

11   BECAUSE WE DO NEED TO GET TO THE ACTUAL ISSUE AT

12   HAND.  SO WHAT DO YOU WANT BY WAY OF PROCESS?  I

13   MEAN, DISCOVERY IS ALREADY GOING ON IN THIS CASE.

14             MR. PRICE:  THAT'S --

15             THE COURT:  SO TELL ME WHAT KIND OF

16   PROCESS WOULD YOU LIKE, UNDERSTANDING THAT I WOULD

17   ALLOW SOME LIMITED DISCOVERY, SOME LIMITED

18   BRIEFING, AND PERHAPS A HEARING.

19             NOW, THIS MAY BECOME MOOT IF I FIND THAT

20   THERE'S NO PRELIMINARY INJUNCTION BASED ON THESE

21   PATENTS ANYWAY.

22             BUT GO AHEAD.

23             MR. PRICE:  YOUR HONOR, I THINK -- I

24   DON'T THINK THERE IS AN ESTABLISHED EMERGENCY.  I

25   THINK THAT APPLE SHOULD FILE A MOTION, PERHAPS

1    AMEND ITS COMPLAINT, AND WE NEED DISCOVERY NOT JUST

2    ON THE FEATURES, WE NEED DISCOVERY ON THAT CRITICAL

3    ISSUE OF NEXUS, WHICH IS WHY THE PEOPLE WANT THIS

4    GALAXY S III PHONE.

5              AND THAT'S WHAT'S GOING TO BE COMPELLING.

6              YOUR HONOR, APPLE DOESN'T WANT TO COMPETE

7    WITH THE NEW FEATURES.  THE ACCUSED FEATURES THAT

8    ARE PART OF THIS PRELIMINARY INJUNCTION FUNCTION

9    DON'T SELL THIS PHONE.  APPLE KNOWS IT.

10             WHAT THIS IS AN ATTEMPT TO DO IS SIMPLY

11   PREVENT A PHONE FROM GETTING TO THE PUBLIC THAT IS

12   BETTER THAN APPLE ON MANY, MANY RESPECTS, AND I'LL

13   BE GLAD TO ENUMERATE THOSE, BUT I KNOW YOU WANT TO

14   DO THIS HEARING FIRST.

15             THE COURT:  ALL RIGHT.  FROM WHAT I CAN

16   TELL, IF AN INJUNCTION ISSUES, THEN IT MEANS

17   VALIDITY IS ALREADY DETERMINED AND IRREPARABLE HARM

18   IS DETERMINED SOMEWHAT AS TO THESE FEATURES.

19             BUT I AGREE WITH YOU THAT THERE MAY BE

20   SOME SUPPLEMENTAL DISCOVERY ON IRREPARABLE HARM AS

21   TO THAT PARTICULAR COMBINATION OF FEATURES, AS WELL

22   AS ON THE INFRINGEMENT ISSUE AND WHETHER IT'S

23   COLORABLY DIFFERENT.

24             SO IT WOULD BE A MORE LIMITED UNIVERSE

25   THAN WHAT WE HAVE TO DECIDE TODAY.

1           SO WHAT I'M GOING TO ALLOW AS TO THIS NEW

2    RELEASE IS HAVE DISCOVERY RESPONSES ON THIS.

3    INSTEAD OF 30 DAYS, WHAT IF WE JUST HAD IT BE 10

4    DAYS AND YOU CAN FLESH OUT THESE TWO ISSUES OF

5    WHETHER THERE'S A COLORABLE DIFFERENCE AND IF

6    THERE'S ANY DIFFERENCE AS TO IRREPARABLE HARM, AND

7    THAT'S IT.

8           MR. KREVITT:  YOUR HONOR -- I UNDERSTAND,

9    YOUR HONOR.  MAY I RESPOND?

10          THE DIFFERENCE BETWEEN 30 DAYS --

11   UNDERSTAND, YOUR HONOR, THIS IS OF CRITICAL

12   IMPORTANCE TO APPLE.  THE DIFFERENCE BETWEEN 30

13   DAYS AND 10 DAYS FOR DISCOVERY IS IMMATERIAL, YOUR

14   HONOR.

15          THE HARM HAPPENS UPON LAUNCH.  WE'RE

16   ENTITLED TO FILE A TEMPORARY RESTRAINING ORDER.  WE

17   ARE ABOUT TO BE IRREPARABLY HARMED UPON LAUNCH.

18          THAT'S THE POINT.  THEY HAVE ANNOUNCED

19   THAT THEY'RE GOING TO LAUNCH ON JUNE 21ST.

20          AS YOUR HONOR PREVIOUSLY FOUND IN THE

21   PRIOR PRELIMINARY INJUNCTION RULING, ONCE SALES ARE

22   MADE, THE HARM IS INCALCULABLE.  THE HARM IS

23   IRREPARABLE, YOUR HONOR.  THERE IS A WAVE OF

24   MILLIONS OF DEVICES THAT ARE ABOUT TO BE SOLD ON

25   JUNE 21ST.

                                                    14

1          WE NEED A MECHANISM, YOUR HONOR -- WE'RE

2    PREPARED TO PROCEED ON DISCOVERY MEASURED IN

3    HOURS -- ON ANY SCHEDULE YOUR HONOR SETS.

4          WHAT WE NEED IS A PRESERVATION OF THE

5    STATUS QUO UNTIL THIS COURT HAS AN OPPORTUNITY TO

6    CONSIDER THE ISSUES.

7          AND, YOUR HONOR, IF I MAY, THIS IS

8    EXACTLY WHAT HAS BEEN GOING ON IN THESE CASES FOR

9    YEARS AND AROUND THE WORLD.

10          THE COURT:  OKAY.  I'M GOING TO -- I'M

11    GOING TO HAVE TO STOP YOU BECAUSE UNLESS YOU DON'T

12    WANT TO TALK ABOUT WHY WE'RE HERE TODAY, WHICH IS

13    FINE --

14          MR. KREVITT:  I WANT TO TALK ABOUT THAT.

15          THE COURT:  -- AND WE CAN JUST TALK ABOUT

16    THIS THE WHOLE TWO HOURS AND I'M GOING TO GET UP

17    AND LEAVE AND I'M NOT GOING TO HAVE ANY ANSWERS TO

18    WHAT I NEED FOR THE INJUNCTION MOTION.

19          MR. KREVITT:  YOUR HONOR, OF COURSE, AND

20    I UNDERSTAND THAT I'M WEARING ON THE COURT'S

21    PATIENCE.

22          THE COURT:  YES, YOU ARE, SO LET'S MOVE

23    ON.

24          MR. KREVITT:  BUT THE POINT I WANT TO

25    MAKE IS WE WOULD LIKE GUIDANCE, IF WE WERE TO FILE

15

1    A TEMPORARY RETRAINING ORDER, WHETHER WE CAN HAVE A

2    MECHANISM TO HAVE THE TEMPORARY RESTRAINING ORDER

3    RESOLVED IN TIME BEFORE THE LAUNCH SO THAT THEN

4    YOUR HONOR CAN ENTER THE PRELIMINARY INJUNCTION

5    ORDER, OR NOT, ON YOUR HONOR'S SCHEDULE OF COURSE,

6    BUT THE IRREPARABLE HARM THAT IS GOING TO HAPPEN

7    BECAUSE OF THE LAUNCH CAN BE PROTECTED.  APPLE CAN

8    BE PROTECTED.  BECAUSE ONCE THAT LAUNCH HAPPENS,

9    THE HARM HAPPENS.

10           THE COURT:  WELL, LET ME INTERRUPT YOU.

11           I HAVE A PATENT TRIAL STARTING ON MONDAY

12   THAT WILL -- THE EVIDENCE PORTION WILL GO THROUGH

13   JUNE 29TH.  THE JURY MAY OR MAY NOT BE DELIBERATING

14   THE FIRST WEEK OF JULY.

15           I HAVE SUMMARY JUDGMENTS IN ANOTHER

16   PATENT CASE TOMORROW.

17           I HAVE TO ISSUE AN ORDER IN THIS CASE.

18           NEXT WEEK I HAVE A PRELIMINARY INJUNCTION

19   IN A SECURITIES CLASS ACTION, AS WELL AS SUMMARY

20   JUDGMENTS.  YOU CAN TAKE A LOOK AT MY PUBLIC

21   CALENDAR --

22           MR. KREVITT:  I HAVE, YOUR HONOR, AND I

23   UNDERSTAND.

24           THE COURT:  -- AND SEE HOW IT'S STACKED

25   WEDNESDAY AND THURSDAY.  SO IF YOU WANT TO TRY TO

1    GET A TRO WITHIN 14 DAYS, YOU CAN TRY.  I JUST

2    CANNOT GUARANTEE THAT THAT CAN BE DONE.

3             MR. KREVITT:  I UNDERSTAND, YOUR HONOR.

4    I JUST WANTED THE COURT TO APPRECIATE THE EXIGENT

5    CIRCUMSTANCES.

6             AND MR. PRICE DID NOT IDENTIFY ANY ISSUES

7    THAT REQUIRE DISCOVERY.  THAT'S THE SIGNIFICANT

8    POINT.

9             IF THE LIKELIHOOD OF SUCCESS IS

10   IDENTICAL, YOUR HONOR, AND YOUR HONOR FINDS A

11   PRELIMINARY INJUNCTION --

12            THE COURT:  WELL, THIS IS WHAT I'M GOING

13   TO DO SO WE CAN GET ON TO WHY WE'RE REALLY HERE

14   TODAY.

15            MR. KREVITT:  YES.

16            THE COURT:  I'M GOING TO ASK YOU TO MEET

17   AND CONFER AND FILE, BY TOMORROW, WHAT YOUR

18   PROPOSAL IS AS TO LIMITED -- I WILL WANT TO HEAR

19   FROM SAMSUNG ON WHAT THEIR POSITION IS AS TO

20   WHETHER THIS IS COLORABLY DIFFERENT OR NOT.

21            MR. KREVITT:  I UNDERSTAND, YOUR HONOR.

22            THE COURT:  AS WELL AS AS TO WHETHER THE

23   IRREPARABLE HARM ANALYSIS IS DIFFERENT BECAUSE THIS

24   IS A DIFFERENT COMBINATION OF FEATURES.

25            MR. KREVITT:  I UNDERSTAND.

1          THE COURT:  AT LEAST ON THOSE TWO ISSUES,

2     I WANT TO KNOW WHAT SAMSUNG'S POSITION IS.

3          IF I FIND THE PATENT IS VALID, I REALLY

4     DON'T NEED TO GO OVER THAT GROUND AGAIN.

5          MR. KREVITT:  I AGREE WITH THAT.

6          THE COURT:  OKAY.  SO THOSE TWO ISSUES,

7     WHY DON'T YOU MEET AND CONFER, FILE SOME PROPOSAL

8     TOMORROW, UNDERSTANDING THAT I AM GOING TO ALLOW

9     SOME EXPEDITED DISCOVERY ON THOSE TWO ISSUES AND

10    WOULD WANT TO HEAR FROM SAMSUNG.

11         MR. KREVITT:  VERY WELL, YOUR HONOR.

12         THE COURT:  IF I GET INFORMATION ON THOSE

13    TWO, I MAY BE ABLE TO MAKE A DECISION FAIRLY

14    QUICKLY, BUT IT WILL ULTIMATELY DEPEND ON THIS

15    RULING.

16         MR. KREVITT:  I UNDERSTAND, YOUR HONOR.

17         ONE THING I WOULD ADD, YOUR HONOR, IS

18    UNDER THOSE CIRCUMSTANCES, GIVEN THE TIMING, IN

19    ADDITION TO THAT FILING, IT MAY BE ADVISABLE FOR US

20    TO GO AHEAD AND FILE A TEMPORARY RESTRAINING ORDER

21    SO THAT IS ON FILE AND YOUR HONOR CAN TREAT THAT

22    HOWEVER YOUR HONOR WISHES.

23         IT'S IMPORTANT TO REMEMBER THAT IF YOUR

24    HONOR WERE TO GRANT OUR PRELIMINARY INJUNCTION AND

25    BE IN A CONTEMPT SITUATION, ALL OF THOSE OTHER

1    ISSUES, IRREPARABLE HARM, BALANCE OF THE HARDSHIPS,

2    NEXUS, THOSE ARE IRRELEVANT.

3         THE ONLY QUESTION IS WHETHER THE PRODUCT

4    IS COLORABLY DIFFERENT OR NOT.  THAT'S THE ONLY

5    QUESTION IN CONTEMPT.

6         SO THIS -- IF ANYTHING, WHAT WE ARE

7    TRYING TO DO IS GIVE SAMSUNG THE OPPORTUNITY TO BE

8    HEARD.  WE JUST WANT IT ALL FOLDED IN SO YOUR HONOR

9    CAN HEAR IT.

10        MR. PRICE:  YOUR HONOR, THAT'S WRONG.

11        THE COURT:  YOU KNOW, I'M SORRY.  I HAVE

12   TO STOP THIS PART OF THE CONVERSATION.

13        MR. KREVITT:  OKAY.

14        THE COURT:  UNLESS YOU JUST WANT ME TO

15   ISSUE AN ORDER --

16        MR. KREVITT:  NO, I JUST WANTED --

17        THE COURT:  -- WHERE I HAVE A LOT OF

18   HOLES IN INFORMATION THAT I NEED.  OKAY?

19        SO WORK IT OUT AND FILE SOMETHING BY THE

20   END OF THE DAY TOMORROW AS TO WHAT YOUR PROPOSAL

21   WOULD BE AS TO HOW WE PROCEED AND WHAT ISSUES NEED

22   ANY DISCOVERY AND NEED BRIEFING ON.  OKAY?

23        MR. KREVITT:  VERY WELL, YOUR HONOR.

24        WOULD YOU LIKE TO TURN -- DID YOU HAVE A

25   PARTICULAR ORDER IN MIND THAT YOU WANTED TO GO ON

19

1    THE NEXT TOPICS?

2              THE COURT:  LET'S DO -- ALL RIGHT.  LET'S

3    DO THE PATENTS FIRST AND THEN WE'LL DO IRREPARABLE

4    HARM LAST.

5              OR MAYBE WE'LL JUST MIX IT UP.

6              MR. KREVITT:  AND YOUR HONOR, YOU HAD

7    SPECIFIC QUESTIONS AS OPPOSED TO WANTING TO SEE A

8    PRESENTATION FOR THE MOMENT?

9              THE COURT:  THAT'S RIGHT.  I DON'T WANT

10   TO SEE A PRESENTATION.

11             MR. KREVITT:  OKAY.  VERY WELL, YOUR

12   HONOR.

13             THE COURT:  OKAY.

14             ALL RIGHT.  LET'S DO -- THERE'S SO MANY

15   GREAT ONES TO CHOOSE FROM.

16             ALL RIGHT.  LET'S DO THE '604, THE

17   UNIFIED SEARCH.

18             AND THIS IS A QUESTION FOR BOTH OF YOU.

19   SO THERE ARE -- SO THE SPECIFICATION HAS TWO

20   DIFFERENT EXAMPLES, AND IN ONE IT'S PRETTY CLEAR

21   THAT THE HEURISTIC OF EACH MODULE IS DIFFERENT,

22   WHEREAS IN ANOTHER EXAMPLE IN THE SPEC, IT'S NOT AS

23   CLEAR.  IT JUST SAYS THAT THE MODULE HAS AN

24   ASSOCIATED HEURISTIC.  IT DOESN'T SAY IT HAS --

25   THAT EACH MODULE HAS A DIFFERENT OR UNIQUE

```
 1    HEURISTIC.
 2              MR. KREVITT:  CORRECT.
 3              THE COURT:  SO HOW AM I SUPPOSED TO
 4    RECONCILE SOMEWHAT INCONSISTENT EXAMPLES IN THE
 5    SPEC?
 6              MR. KREVITT:  I DON'T THINK THEY'RE
 7    INCONSISTENT, YOUR HONOR.
 8              THE COURT:  OKAY.
 9              MR. KREVITT:  AND THE QUESTION, I THINK,
10    GOES DIRECTLY TO SAMSUNG'S SOLE NONINFRINGEMENT
11    ARGUMENT, WHICH IS WHETHER THE CLAIMS REQUIRE EVERY
12    HEURISTIC MODULE TO BE DIFFERENT OR WHETHER, IF YOU
13    HAVE TWO THAT ARE DIFFERENT AND ONE THAT IS THE
14    SAME, IT STILL FALLS WITHIN THE SCOPE OF THE CLAIM.
15              I ASSUME THAT'S THE ISSUE TO WHICH YOUR
16    HONOR IS ASKING THE QUESTION.
17              AND THE ANSWER IS IN THE CLAIM LANGUAGE
18    ITSELF AND IN THE EXAMPLES.
19              THE CLAIM SIMPLY REQUIRES THERE TO BE A
20    PLURALITY OF HEURISTIC MODULES AND THAT EACH OF
21    THAT PLURALITY, SO AT LEAST TWO, AND EACH OF THAT
22    AT LEAST TWO BE DIFFERENT.
23              YOU COULD HAVE SOME THAT ARE THE SAME,
24    AND THAT'S WHY THE --
25              THE COURT:  BUT HOW DO YOU EXPLAIN WHY
```

1    HEURISTIC OF EACH PLUG-IN MODULE IS DIFFERENT?

2              MR. KREVITT:  BECAUSE, YOUR HONOR, IT'S

3    A --

4              THE COURT:  THAT DOESN'T SAY JUST TWO ARE

5    DIFFERENT.  IT SAYS EACH.

6              MR. KREVITT:  IT'S IN THAT PREFERRED

7    EMBODIMENT.

8              SO IT'S DESCRIBING AN EMBODIMENT THAT

9    WOULD FALL WITHIN THE SCOPE OF THE CLAIMS.

10             THE KEY TO THIS PATENT, YOUR HONOR, IS

11   THAT YOU HAVE DIFFERENT MODULES AND THEY SEARCH

12   DIFFERENT AREAS.        INCIDENTALLY, THERE'S NO

13   DISPUTE THAT THE GALAXY NEXUS DOES EXACTLY THE

14   EXAMPLES IN THE PATENT.

15             SO YOU HAVE A SITUATION WHERE YOU SEARCH

16   A PLURALITY OF MODULES, AND EACH OF THOSE MODULES

17   SEARCHES A DIFFERENT AREA.

18             THE PATENT IS NOW GIVING A SIMPLE

19   EXAMPLE, AND TO ILLUSTRATE THAT POINT, IT LISTS

20   SEVERAL MODULES AND SAYS THAT EACH ONE OF THOSE

21   EXEMPLARY MODULES USES A DIFFERENT ALGORITHM.

22             BUT IT DOESN'T GO ON TO SAY, NOR COULD IT

23   CONSISTENT WITH THE CLAIM LANGUAGE, THAT YOU

24   COULDN'T HAVE ADDITIONAL MODULES THAT WOULD USE THE

25   SAME ALGORITHM.

1        THE POINT IS, YOUR HONOR, IT'S AN

2   EMBODIMENT IN WHICH TO ILLUSTRATE THE CLAIMS.  THEY

3   GIVE YOU SEVERAL MODULES AND THEN DESCRIBE, AGAIN,

4   AS PART OF THE EMBODIMENT, THAT EACH OF THOSE

5   MODULES IN THAT EMBODIMENT ARE DIFFERENT.

6        IT'S ENTIRELY CONSISTENT WITH THE CLAIM

7   LANGUAGE AND IT'S ENTIRELY CONSISTENT WITH OUR

8   POSITION.

9        THERE IS NOTHING IN THAT EXAMPLE, YOUR

10  HONOR, IN ANY OF THE EXAMPLES, THAT SAYS YOU CAN'T

11  HAVE OTHER MODULES THAT ARE DIFFERENT.

12       IN FACT, YOUR HONOR, IF YOU LOOK AT

13  FIGURE 2, IT SAYS, 22 SUB 1, 22 SUB 2, AND ALL THE

14  WAY TO 22 SUB A, THE POINT IS YOU CAN HAVE AN

15  UNLIMITED NUMBER OF MODULES, AND THE KEY POINT IS

16  THAT YOU HAVE TO HAVE AT LEAST TWO THAT SEARCH

17  DIFFERENT AREAS USING DIFFERENT ALGORITHMS.

18       IT DOESN'T MEAN THAT YOU CAN'T ALSO HAVE

19  A MODULE THAT SEARCHES THE SAME ALGORITHM AS A

20  DIFFERENT MODULE.

21       AND THE CLAIM LANGUAGE IS VERY CLEAR ON

22  THIS, YOUR HONOR.

23       AND WE IDENTIFIED THE RESQNET CASE FOR

24  YOUR HONOR, WHICH IDENTIFIES -- WHICH ADDRESSES

25  THIS EXACT ISSUE, ALMOST VERBATIM LANGUAGE.

23

1          WHEN YOU HAVE A PLURALITY OF SOMETHING,

2     EACH OF WHICH HAS A CERTAIN CHARACTERISTIC, THAT

3     DOESN'T MEAN THAT YOU CAN'T HAVE SOMETHING ELSE

4     THAT HAS A DIFFERENT CHARACTERISTIC.

5          THE COURT:  LET ME ASK A QUESTION OF

6     SAMSUNG.

7          APPLE RAISED RESQNET IN ITS REPLY, SO I

8     WANT TO GIVE YOU AN OPPORTUNITY TO RESPOND TO THAT.

9          MR. PRICE:  WELL, THE DIFFERENCE, YOUR

10    HONOR, IS THAT RESQNET HAS A DIFFERENTLY PHRASED

11    PATENT.

12         THE PATENT IN THIS CASE -- AND I'LL

13    ADDRESS OTHER CASES WHICH ARE MORE LIKE THE PATENT

14    IN THIS CASE -- THE PATENT IN THIS CASE SAYS THAT

15    THERE ARE A PLURALITY OF HEURISTIC MODULES -- AND

16    THERE'S NO QUESTION, NO DISPUTE, THAT MEANS TWO OR

17    MORE -- WHEREIN EACH HEURISTIC MODULE EMPLOYS A

18    DIFFERENT PREDETERMINED -- AND I'LL ADD BECAUSE

19    IT'S HERE -- HEURISTIC ALGORITHM.

20         IT'S NOT JUST DIFFERENT ALGORITHMS.  IT

21    HAS TO BE A HEURISTIC ALGORITHM, WHICH I KNOW IS A

22    DIFFERENT QUESTION.

23         SO WHAT THE PATENT SAYS, ITS SYNTACTICAL

24    STRUCTURE IS YOU HAVE X OR MORE, EACH OF WHICH IS A

25    HEURISTIC MODULE.

1          AND IF YOU LOOK AT THE CASES, THE CASES

2     SUPPORT THAT THAT CONSTRUCTION MEANS ALL.  THE

3     SKVORECZ CASE --

4          THE COURT:  WELL, ACTUALLY, CAN YOU FOCUS

5     IT MORE ON RESQNET?

6          MR. PRICE:  SURE.

7          RESQNET HAS DIFFERENT LANGUAGE.  RESQNET

8     SAYS -- AND I KNOW THIS IS GETTING INTO SYNTAX, BUT

9     THE SYNTACTICAL DIFFERENCE IS SUPPORTED BY THE

10    PROSECUTION HISTORY HERE AND THE SPECIFICATIONS.

11         RESQNET IS "EACH OF TWO OR MORE."

12         RATHER THAN "TWO OR MORE, EACH OF WHICH

13    ARE Y," THAT MEANS YOU'VE GOT TWO OR MORE AND ALL

14    OF THEM ARE Y.

15         THE RESQNET USES DIFFERENT SYNTAX.  IT

16    SAYS "EACH OF TWO OR MORE."

17         AND IN THAT SITUATION --

18         THE COURT:  I THOUGHT IT SAYS "EACH OF A

19    PLURALITY OF FIELDS," BUT INTERPRETS THAT TO

20    MEAN --

21         MR. PRICE:  YES, "EACH OF THE PLURALITY,"

22    WHICH EVERYONE AGREES MEANS TWO OR MORE.

23         SO IT SAYS "EACH OF TWO OR MORE," AND THE

24    RESQNET COURT SAID THAT DOESN'T MEAN YOU NEED TO

25    USE ALL FIELDS.  YOU JUST NEED TO USE EACH OF TWO

1    OR MORE.

2            I KNOW THIS SOUNDS SOMEWHAT COMPLEX, BUT

3    I --

4            THE COURT:  WELL, I MEAN, YOU'RE SAYING

5    "PLURALITY OF HEURISTIC MODULES."  WHY IS THAT ANY

6    DIFFERENT THAN "EACH OF A PLURALITY OF FIELDS"?

7            MR. PRICE:  I'M NOT DISTINGUISHING

8    MODULES FROM FIELDS, YOUR HONOR.

9            THE COURT:  NO.  BUT I'M JUST SAYING --

10   HOW IS THE SYNTAX DIFFERENT IF IN BOTH INSTANCES

11   THEY'RE SAYING A PLURALITY OF ANYTHING?  A

12   PLURALITY OF BANANAS, AND IN RESQNET, THE FED

13   CIRCUIT SAYS PLURALITY OF BANANAS CAN MEAN TWO.

14           SO I GUESS I'M NOT CLEAR.

15           MR. PRICE:  RESQNET SAYS THAT EACH OF A

16   PLURALITY OF BANANAS IS NOT INDICATING THAT YOU

17   NEED ALL BANANAS.  YOU JUST NEED TWO OR MORE.

18           THE COURT:  UM-HUM.

19           MR. PRICE:  WHAT THIS PATENT SAYS, AND

20   WHAT THE -- IF I CAN GET THE CASES HERE, AND I

21   BELIEVE YOU HAVE THE CITES, THE SKVORECZ CASE --

22           THE COURT:  BUT I'M STILL NOT HEARING HOW

23   YOU'RE DIFFERENT FROM RESQNET.

24           MR. PRICE:  HERE'S THE DIFFERENCE:  HERE,

25   INSTEAD OF SAYING "EACH OF TWO OR MORE," WHAT THIS

1    PATENT SAYS IS "TWO OR MORE, EACH OF WHICH," AND

2    THE CASES MAKE A DISTINCTION.

3           WHEN YOU SAY YOU'VE GOT "TWO OR MORE,

4    EACH OF WHICH," YOU'RE SAYING ALL OF THOSE, EACH OF

5    THOSE TWO OR MORE.

6           WHEN YOU'RE STARTING OUT WITH "EACH OF

7    TWO OR MORE," THE CASES SAY YOU MAY NOT -- YOU MAY

8    HAVE ADDITIONAL ONES.

9           AND, AGAIN, IF YOU READ RESQNET AND THEN

10   YOU READ THE TWO CASES I JUST MENTIONED, THEY DRAW

11   THAT DISTINCTION.

12          AND IT'S A DISTINCTION THAT'S RELEVANT

13   HERE BECAUSE IF YOU RECALL, IN THE PROSECUTION

14   HISTORY, SAMSUNG -- APPLE WAS PRESENTED WITH, OR

15   WAS DISTINGUISHING THE ANDRIOLI PATENT, OR THE

16   ANDRIOLI PRIOR ART, AND WHAT APPLE SAID WITH

17   RESPECT TO ANDRIOLI, WHICH HAD DIFFERENT SEARCHES

18   WITH DIFFERENT MODULES, IT SAYS "ANDRIOLI DIDN'T

19   DESCRIBE, HOWEVER, THAT EACH," AND IT EMPHASIZED

20   EACH, "OF THE LOW AND REMOTE SEARCH OPERATIONS

21   EMPLOYS A DIFFERENT HEURISTIC ALGORITHM TO SEARCH

22   AN ASSOCIATED RELEVANT AREA OF SEARCH."

23          AND SO APPLE'S RESPONSE TO THE ANDRIOLI

24   PRIOR ART WAS, "UNLIKE ANDRIOLI, WHICH HAD A NUMBER

25   OF MODULES THAT DID ALGORITHM SEARCHES, IN OURS,

27

1    EACH OF THEM IS A HEURISTIC SEARCH AS OPPOSED TO

2    SOME OTHER TYPE OF SEARCH."  EACH.

3            AND IF YOU LOOK AT THE SPECIFICATIONS

4    THEMSELVES, IT'S CLEAR THE ONLY REAL EXAMPLE THEY

5    GIVE, IT'S EACH.  THAT'S FIGURE 5 I THINK IS WHAT

6    YOUR HONOR WAS PROBABLY REFERRING TO WHERE IT HAS

7    THE PLUG-IN MODULES AS BEING -- I FORGOT HOW

8    MANY -- IT ENDS, I GUESS, AT 22-1 TO 22-N.

9            AND THEN THE ONLY THING WHICH DR. POLISH

10   REFERS TO --

11           THE COURT:  MAY I INTERRUPT YOU A SECOND?

12           MR. PRICE:  SURE.

13           THE COURT:  AND THIS IS A QUESTION FOR

14   BOTH PARTIES.

15           HOW DO YOU DEFINE "HEURISTIC ALGORITHM"?

16           MR. PRICE:  WELL, OUR POSITION IS THAT

17   THAT HASN'T BEEN DEFINED BY APPLE.

18           THE COURT:  UM-HUM.

19           MR. PRICE:  THAT DR. POLISH TOOK THE

20   POSITION IN HIS DEPOSITION THAT ANY SEARCH IS

21   HEURISTIC.

22           AND THE PROBLEM WITH THAT, AGAIN, IS

23   ANDRIOLI WHERE THEY SAID, "NO, NO.  THERE'S A

24   DIFFERENCE BETWEEN REGULAR ALGORITHM SEARCHES AND

25   HEURISTIC."

28

1          WHAT APPLE TOLD THE PATENT OFFICE WAS

2     THAT HEURISTIC -- AND IF I CAN FIND THAT QUOTE,

3     YOUR HONOR, IT SAID -- IN COMPLAINING TO THE PATENT

4     OFFICE WHEN IT WAS NOT GIVING THE TERM "HEURISTIC"

5     ANY MEANING, IT SAID "HEURISTIC IS USING OR ARRIVED

6     AT BY A PROCESS OF TRIAL OR ERROR RATHER THAN SET

7     RULES;" THAT IS, THAT THERE AREN'T ANY SET RULES,

8     THAT YOU SOMEHOW USE HUMAN KNOWLEDGE TO DO THE

9     SEARCH.  THAT WAS WHAT THEY TOLD THE PATENT OFFICE.

10          AND THEN DR. POLISH CAME IN AND SAID,

11    "NO, WHAT THAT REALLY MEANS IS YOU'RE JUST DOING A

12    SEARCH TO FIND SOMETHING," AND THAT CLEARLY IS NOT

13    CORRECT.  OTHERWISE ANDRIOLI WOULD HAVE BEEN PRIOR

14    ART BECAUSE THERE YOU HAD DIFFERENT MODULES DOING

15    DIFFERENT SEARCHES.

16          THE COURT:  DOES THE COURT HAVE TO

17    CONSTRUE EITHER "HEURISTIC MODULE" OR "HEURISTIC

18    ALGORITHM" FOR THE INFRINGEMENT ANALYSIS?

19          MR. PRICE:  ABSOLUTELY, AND HERE'S WHY.

20          APPLE IS NOT EVEN CONTENDING THAT MANY OF

21    THE MODULES, THE MODULES THAT ARE IN THE SAMSUNG

22    PHONE DO HEURISTIC SEARCHES.

23          APPLE IS ONLY SAYING, AT LEAST DR. POLISH

24    HAS ONLY IDENTIFIED THREE OF THE ITEMS IN THE

25    UNIFIED SEARCH WHICH POTENTIALLY -- WELL,

29

1    POTENTIALLY DO HEURISTIC ALGORITHMS TO SEARCH.

2              AND WE HAVE, YOU KNOW, DEFENSES TO THAT.

3              AND, IN FACT, WITH RESPECT TO BROWSER,

4    THERE'S NO EVIDENCE AT ALL.

5              WITH RESPECT TO GOOGLE, THE GOOGLE

6    SEARCH, OUR EXPERT SAID HE DOESN'T KNOW BECAUSE HE

7    DOESN'T KNOW THE GOOGLE CODE.

8              AND WITH RESPECT TO CONTACTS, OUR EXPERT

9    TESTIFIED THAT THAT HAS A SEARCH WHERE IT'LL SEARCH

10   FOR YOUR CONTACTS, THE MOST FREQUENT NAME THAT YOU

11   CLICKED IN THE PAST, AND OUR EXPERT EXPLAINS THAT'S

12   NOT HEURISTIC BECAUSE IT'S A RULE.  YOU'RE APPLYING

13   A RULE.

14             HEURISTIC HAS TO, HAS TO BE BASED ON SOME

15   HUMAN JUDGMENT OR HUMAN KNOWLEDGE.

16             AND I THINK THAT DOES HAVE TO BE

17   CONSTRUED BECAUSE APPLE IS ONLY SAYING THAT THREE

18   OF THESE SEARCH AREAS IN UNIFIED SEARCH ARE

19   HEURISTIC, AND WE'RE SAYING THEIR DEFINITION IS SO

20   BROAD THAT EVERYTHING WOULD BE HEURISTIC.

21             THE COURT:  OKAY.  THANK YOU.

22             LET ME HEAR FROM APPLE ON WHAT YOUR

23   DEFINITION OF HEURISTIC ALGORITHM IS AND WHY THAT'S

24   DIFFERENT FROM A LOGICAL ALGORITHM, WHICH IS HOW

25   YOU DISTINGUISH THE PRIOR ART.

1          MR. KREVITT:  YEAH.  A FEW THINGS, YOUR

2     HONOR, IN RESPONSE TO THAT.

3          FIRST, MR. PRICE SAID THAT A -- THAT THE

4     PATENT REQUIRES AND THE PROSECUTION HISTORY SAYS

5     SOMETHING ABOUT HUMAN KNOWLEDGE.

6          THE PROSECUTION HISTORY IS ABSOLUTELY

7     SILENT.  DOESN'T USE THAT PHRASE, DOESN'T USE ANY

8     PHRASE LIKE IT.  THE PATENT DOESN'T.  IT APPEARS

9     NOWHERE AT ALL, OTHER THAN IN SAMSUNG'S PAPERS,

10    PERIOD.

11         NUMBER TWO, YOUR HONOR, THE CLAIM

12    LANGUAGE IS ABSOLUTELY CLEAR ON THE QUESTION OF

13    "EACH," AND YOUR HONOR'S PUZZLING OVER RESQNET IS

14    BECAUSE IT IS INDISTINGUISHABLE.  YOU CAN'T FIND --

15         THE COURT:  I DON'T WANT TO SPEND ANY

16    MORE TIME ON RESQNET.

17         MR. KREVITT:  FINE.  AS TO WHAT A

18    HEURISTIC IS AND WHETHER IT REQUIRES CONSTRUCTION,

19    AT THE CMC YOUR HONOR ASKED WHETHER THERE WERE

20    TERMS THAT REQUIRE CONSTRUCTION.

21         SAMSUNG SAID ONE TERM FOR THE '604

22    REQUIRED CONSTRUCTION.  IT'S THIS "EACH" TERM.

23    IT'S THE SAME IN THEIR BRIEF.

24         THEY HAVE NEVER CONTENDED THAT THAT

25    REQUIRES CONSTRUCTION UNTIL MR. PRICE STOOD UP HERE

                                                   31

1    AND TOLD YOU THAT TODAY.

2             AND FINALLY, YOUR HONOR, WHAT IS A

3    HEURISTIC AND WHETHER IT NEEDS TO BE CONSTRUED, THE

4    ANSWER IS IT IS SET FORTH IN THE PATENT.  A

5    HEURISTIC IS A RULE OF THUMB.  IT IS SOMETHING THAT

6    GIVES THE USER A BEST GUESS -- AND SAMSUNG'S EXPERT

7    AGREED WITH THIS -- IT'S A BEST GUESS OF WHAT THE

8    RESULT IS, AND IT'S UNDERSTOOD IN THE CONTEXT OF

9    THIS PATENT.

10             THE COURT:  IS THERE A SPECIFIC COLUMN

11   AND LINE NUMBER?

12             MR. KREVITT:  YES, YOUR HONOR.

13             THE COURT:  WHAT IS THAT?

14             MR. KREVITT:  COLUMN 4, LINES 13 THROUGH

15   23, FOR EXAMPLE.

16             IT'S -- IT BEGINS WITH "EACH PLUG-IN

17   MODULE HAS A," "HAS AN ASSOCIATED HEURISTIC," AND

18   IT GOES ON TO IDENTIFY HEURISTICS, SPECIFIC

19   HEURISTICS.  THESE ARE IN THE PATENT EXAMPLES.

20             IF YOU LOOK AT, STARTING AT -- SECOND, IF

21   YOU PULL UP SLIDE 9, AT LINE --

22             THE COURT:  I GUESS I'M NOT SEEING A

23   DEFINITION --

24             MR. KREVITT:  YOUR HONOR, WHAT I AM --

25             THE COURT:  -- OF HEURISTIC ALGORITHM

1      HERE.

2                  MR. KREVITT:  YOUR HONOR, WHAT I AM

3      TELLING YOU IS THE PATENT ITSELF IDENTIFIES

4      SPECIFIC EXAMPLES OF HEURISTIC ALGORITHMS.

5                  BOTH EXPERTS AGREE THAT WHAT THE CONCEPT

6      OF HEURISTIC IN THIS CONTEXT MEANS IS THAT YOU

7      DON'T KNOW EXACTLY WHAT YOU'RE LOOKING FOR.

8                  SO, FOR EXAMPLE, YOUR HONOR, YOU TYPE IN

9      A-P-P IN THE GOOGLE --

10                 THE COURT:  SO IS THIS LIKE PORNOGRAPHY?

11                 MR. KREVITT:  NOT AT ALL, YOUR HONOR.

12                 THE COURT:  WE KNOW IT WHEN WE SEE IT,

13     BUT WE CAN'T DEFINE IT?

14                 MR. KREVITT:  NOT AT ALL, YOUR HONOR.  WE

15     KNOW EXACTLY WHAT IT IS BECAUSE IT IS IDENTIFIED IN

16     THE PATENT.

17                 THE COURT:  BUT I'M NOT SEEING IT HERE,

18     SO POINT ME TO --

19                 MR. KREVITT:  IT SAYS "A SECOND MODULE

20     MAY INDEX AND SEARCH THE CONTENTS OF FILES ON THE

21     LOCAL AND/OR STORAGE VOLUMES."

22                 THAT IS AN EXAMPLE IDENTIFIED BY THE

23     PATENT OF A HEURISTIC ALGORITHM.

24                 THE NEXT ONE, "A THIRD MODULE CAN

25     MAINTAIN A LIST OF THE FILES, APPLICATIONS, AND

33

1    WEBSITES WHICH WERE MOST RECENTLY ACCESSED AND

2    SEARCH THIS LIST FOR A MATCH."

3            THIS IS RIGHT OUT OF THE PATENT, ANOTHER

4    EXAMPLE --

5            THE COURT:  SO YOU'RE SAYING WE JUST LOOK

6    TO EXAMPLES AND TRY TO EXTRAPOLATE FROM EXAMPLES?

7            MR. KREVITT:  NO.  WHAT I AM SAYING IS

8    THIS IS NOT A COMPLICATED ISSUE.

9            THE COURT:  OKAY.  BUT I CAN'T GET A

10   DEFINITION, THOUGH.

11           MR. KREVITT:  WELL, BECAUSE, YOUR

12   HONOR --

13           THE COURT:  YEAH.

14           MR. KREVITT:  -- THE POINT IS, YOU NEED

15   TO UNDERSTAND THE CONTEXT, AND THAT'S WHAT I WAS

16   TRYING TO EXPLAIN.

17           WHEN YOU HAVE MULTIPLE MODULES, YOU TYPE

18   IN A SEARCH.  THE DEVICE DOESN'T KNOW EXACTLY WHAT

19   YOU'RE LOOKING FOR.

20           IF YOU TYPE IN A-P-P, YOU COULD BE

21   LOOKING FOR A WEBSITE, THE APPLE STORE; IT COULD BE

22   THAT YOU'RE LOOKING FOR SOMEBODY IN YOUR CONTACTS

23   NAMED APPLEBAUM; IT COULD BE YOU'RE LOOKING FOR A

24   TERM PAPER YOU WROTE ON APPLE SEEDS.

25           AND WHAT HEURISTIC MEANS IS THAT FOR EACH

1    MODULE, DEPENDING ON ITS AREA OF SEARCH, WHETHER

2    IT'S YOUR CONTACTS, WHETHER IT'S THE WEB, WHETHER

3    IT'S YOUR BROWSER HISTORY, IT IS AN ALGORITHM THAT

4    IS DESIGNED TO PROVIDE THE BEST GUESS, BASED ON THE

5    INFORMATION, OF WHAT THE USER IS LOOKING FOR.

6         SO WHEN YOU TYPE IN A-P-P, IT IS NOT

7    CERTAIN THAT YOU ARE LOOKING FOR SOMEONE NAMED

8    APPLEBAUM IN YOUR CONTACTS.

9         IT'S A VERY SIMPLE CONCEPT, AND THAT'S

10   WHY THESE EXAMPLES EXPLAIN IT.

11        WHAT IT DOES IS DIFFERENT HEURISTIC

12   ALGORITHMS ARE DESIGNED, DEPENDING ON THE CONTEXT

13   OF THEIR SEARCH AREA, TO DELIVER THE RESULTS MOST

14   LIKELY.  THAT'S WHAT HEURISTIC MEANS.  IT'S MOST

15   LIKELY TO BE ACCURATE.

16        BUT IT'S NOT 100 PERCENT GUARANTEED TO BE

17   ACCURATE.

18        THE COURT:  AND HOW DOES THAT DIFFER FROM

19   A LOGICAL ALGORITHM?

20        MR. KREVITT:  A LOGICAL ALGORITHM, YOUR

21   HONOR, IS ACCURATE, TWO PLUS TWO EQUALS FOUR.

22        A LOGICAL ALGORITHM TELLS YOU EXACTLY

23   WHAT YOU'RE LOOKING FOR.  YOU KNOW EXACTLY WHAT

24   YOU'RE LOOKING FOR, IT'S A PROCESS, AND IT PROVIDES

25   AN ANSWER .

1            THE ISSUE -- WHAT MAKES THESE HEURISTIC

2    IS BECAUSE YOU HAVE MULTIPLE MODULES, YOU NEED

3    DIFFERENT ALGORITHMS THAT ARE DESIGNED FOR

4    DIFFERENT SEARCH AREAS.

5            THAT'S WHAT THE PATENT EXPLAINS.  IT

6    EXPLAINS IT AT COLUMNS 4, 13 THROUGH 23, AND AGAIN,

7    YOUR HONOR, WITH RESPECT TO HEURISTIC ALGORITHM AT

8    COLUMN 5, 15 THROUGH 20 ON THE NEXT PAGE, YOUR

9    HONOR, THE NEXT COLUMN.

10           IT SAYS, "ONE HEURISTIC CAN OPERATE TO

11   MATCH THE USER DESCRIPTOR WITH NAMES OF INFORMATION

12   LOCATED WITHIN VARIOUS STORAGE MEDIUM."

13           THE COURT:  AND WHAT WAS THE LINE NUMBER

14   AGAIN ON COLUMN 5?

15           MR. KREVITT:  I'M SORRY, YOUR HONOR.  I

16   SAID THAT TOO QUICKLY.  IT IS COLUMN 5, LINE --

17   IT'S ABOUT 14 THROUGH 20.

18           AND WE HAVE THESE EXAMPLES UP HERE, YOUR

19   HONOR, SO THE POINT ON THE SCREEN -- AND I'LL HAND

20   THIS DEC UP TO YOUR HONOR -- THE POINT THAT WE ARE

21   MAKING, YOUR HONOR, IS THAT AT THE CASE MANAGEMENT

22   CONFERENCE, THIS WAS NEVER IDENTIFIED AS A TERM

23   THAT NEEDS TO BE CONSTRUED BECAUSE IT ISN'T A TERM

24   THAT NEEDS TO BE CONSTRUED BECAUSE THE SAMSUNG

25   GALAXY NEXUS INDISPUTABLY -- THERE IS NO DISPUTE ON

1    THIS QUESTION, YOUR HONOR.  THEIR EXPERT ADMITTED

2    IT.  THE GALAXY NEXUS DOES EXACTLY THE EXAMPLE SET

3    FORTH IN THE PATENT.

4            THE COURT:  OKAY.  THANK YOU.

5            LET'S GO TO THE NEXT PATENT.

6            MR. PRICE:  YOUR HONOR, MAY I PLEASE?

7    BECAUSE THAT'S TOTALLY INACCURATE AND I NEED TO

8    RESPOND.

9            THE COURT:  OKAY.  I'LL GIVE YOU A

10   MINUTE.  PLEASE, REALLY BRIEFLY.

11           MR. PRICE:  IF I CAN, YOUR HONOR.

12           YOU WERE SHOWN THOSE EXAMPLES IN THE

13   PATENT.

14           DR. POLISH, THEIR EXPERT, WHEN HE

15   TESTIFIED -- IF WE CAN PUT THIS TESTIMONY UP, IT'S

16   AT PAGE 152 OF HIS DEPOSITION -- SAID THAT THOSE

17   EXAMPLES CAN BE EITHER HEURISTIC OR NOT HEURISTIC.

18   IT DEPENDS ON HOW YOU DO IT.

19           HE SAID -- FOR EXAMPLE, WITH THE SECOND

20   EXAMPLE, THE INDEXING, WHICH WAS JUST TALKED ABOUT,

21   HE WAS ASKED, "IS THAT AN EXAMPLE OF HEURISTIC?"

22           AND THAT'S IN THE MIDDLE HERE.

23           HE SAID, "YES.

24           "IS IT NECESSARILY THE CASE THAT A

25   HEURISTIC IS USED TO INDEX AND SEARCH THE CONTENTS

                                                        37

1    OF FILES ON THE LOCAL AND/OR NETWORK STORAGE

2    VOLUMES?"

3              THAT'S QUOTING FROM THE SPEC.

4              "AGAIN, I THINK IT'S JUST LIKE WITH THE

5    OTHER ONE.  I THINK IT MAY BE POSSIBLE TO DO

6    WITHOUT A HEURISTIC.  I HAVEN'T NECESSARILY THOUGHT

7    THAT ALL THE WAY THROUGH.  I THINK IT IS POSSIBLE

8    TO DO WITHOUT A HEURISTIC, BUT WE KNOW IT'S BEING

9    DONE WITH THE HEURISTIC HERE BECAUSE THESE EXAMPLES

10   IN THE PATENT -- THESE ARE EXAMPLES IN THE PATENT

11   OF HEURISTIC MODULES."

12             WHAT HE'S SAYING IS, WELL, OBVIOUSLY WHO

13   WROTE THIS MUST BE THINKING OF A HEURISTIC.

14             BUT THE EXAMPLE THEY GIVE IN THE MODEL IS

15   NOT NECESSARILY A HEURISTIC.

16             WHY?  A HEURISTIC IS NOT DEFINED.

17             AND SO WHAT DR. POLISH SAYS IS THAT,

18   WELL, THIS COULD BE AN EXAMPLE OF ONE, BUT IT MAY

19   NOT BE AN EXAMPLE OF ONE.

20             WHAT IS A HEURISTIC?  A HEURISTIC IS NOT

21   JUST A DIFFERENT ALGORITHM FOR DIFFERENT MODULES.

22   THAT WOULDN'T HAVE BEEN INTENDED, AS YOU CAN SEE

23   UNDER THE ANDRIOLI CASE.

24             THE COURT:  OKAY.  LET'S GO -- THANK YOU.

25             LET'S GO TO THE '647, LINKS TO

                                                          38

```
1     STRUCTURES, AND THIS IS A QUESTION FOR BOTH SIDES,

2     AND THAT IS, WHAT DOES LINKING MEAN?  DOES IT MEAN

3     THAT THE USER HAS TO PICK AN OPTION FROM THE MENU

4     AND ACTUALLY HAVE THAT ACTIVITY OR OPTION

5     PERFORMED?

6              OR HOW FAR DOWN THE CHAIN DO YOU HAVE TO

7     GO TO SAY THAT IT'S LINKED OR LINKING?

8              GO AHEAD.

9              MR. KREVITT:  SO I THINK I UNDERSTAND

10    YOUR QUESTION, YOUR HONOR.

11             THE ANSWER IS THE PATENT REQUIRES THAT

12    FOR EACH DETECTED STRUCTURE THERE BE AN ACTION THAT

13    IS LINKED TO IT, ASSOCIATED WITH IT, SO THAT WHEN

14    THE STRUCTURE IS ACTIVATED, THE ACTIONS APPEAR,

15    THEY'RE ALREADY ASSOCIATED, AND IN THAT RESPECT

16    THEY ARE LINKED.

17             IT DOES NOT HAVE TO BE, IF THIS WAS YOUR

18    HONOR'S QUESTION, THAT EVERYTHING THAT ULTIMATELY

19    WILL HAPPEN WITH THE ACTION HAS ALREADY BEEN

20    DETERMINED OR HARD WIRED INTO THE DEVICE.

21             WAS THAT -- IS THAT YOUR HONOR'S

22    QUESTION?

23             THE COURT:  WELL, THERE SEEMS TO BE AN

24    IMPLICATION FROM SAMSUNG THAT NOT ONLY DOES THE

25    POP-UP MENU HAVE TO COME UP, BUT THEN A USER NEEDS
```

1    TO ACTUALLY SELECT ONE OF THE OPTIONS AND ONE OF

2    THOSE OPTIONS HAS TO BE PERFORMED IN ORDER FOR

3    THERE TO BE LINKING.

4              SO I'M JUST TRYING TO GET A SENSE OF WHAT

5    LINKING MEANS AND HOW FAR DOWN --

6              MR. KREVITT:  I UNDERSTAND.

7              THE COURT:  IS JUST A POP-UP MENU GOING

8    UP, IS THAT LINKING AND IS THAT SUFFICIENT, OR DOES

9    A SELECTION HAVE TO BE MADE AND THAT SELECTION

10   ACTUALLY BE PERFORMED FOR THERE TO BE LINKING?

11             MR. KREVITT:  THE SELECTION DOES NOT HAVE

12   TO BE MADE AND THE ACTION PERFORMED FOR THERE TO BE

13   LINKING.

14             SO THE POINT IS THAT YOU HAVE A STRUCTURE

15   AND YOU HAVE AN ACTION THAT IS ASSOCIATED WITH IT,

16   THAT'S LINKED TO IT, AND WHEN YOU -- WHEN YOU

17   SELECT THE STRUCTURE, YOU GET A MENU OF ACTIONS.

18   THOSE ACTIONS HAVE BEEN ASSOCIATED WITH IT AND HAVE

19   BEEN LINKED TO THAT STRUCTURE.

20             THE COURT:  NOW, JUDGE POSNER REJECTED

21   YOUR ASSOCIATING DEFINITION FOR LINKING.  WHY

22   SHOULD I GO WITH ASSOCIATING OR WHY IS IT

23   ASSOCIATING FOR ANYONE?

24             MR. KREVITT:  WELL, YOUR HONOR, TO BE

25   CLEAR --

1              THE COURT:  YEAH.

2              MR. KREVITT:  -- WHAT WE HAVE EXPLAINED

3    IN OUR BRIEF, BECAUSE WE FEEL SO STRONGLY FOR

4    PRELIMINARY RELIEF HERE, IS THAT THE --

5              THE COURT:  THAT IT DOESN'T MATTER?

6              MR. KREVITT:  EXACTLY.  THE ITC RULED,

7    AND JUDGE POSNER ISSUED A DIFFERENT CLAIM

8    CONSTRUCTION, AND UNDER ANY OF THOSE CLAIM

9    CONSTRUCTIONS THERE IS INFRINGEMENT AND THERE IS

10   VALIDITY.

11             IN FACT, YOUR HONOR --

12             THE COURT:  YEAH, I UNDERSTAND THAT'S

13   YOUR POSITION.

14             MR. KREVITT:  OKAY.  AND JUDGE POSNER HAS

15   ALREADY REJECTED SUMMARY JUDGMENT MOTIONS MADE BY

16   MOTOROLA ON THOSE VERY POINTS.

17             THE COURT:  I'VE READ THAT.

18             MR. KREVITT:  OKAY.  SO WE'RE NOT ASKING

19   FOR THE DEFINITION THAT -- WE ARE, CONSISTENT WITH

20   JUDGE POSNER'S CONSTRUCTION HERE -- ULTIMATELY WE

21   MAY WISH A DIFFERENT CONSTRUCTION -- BUT FOR

22   PURPOSES OF THIS PROCEEDING, UNDER JUDGE POSNER'S

23   CONSTRUCTION, THERE IS INFRINGEMENT UNDER THAT AND

24   FOR THAT LINKING ACTION.

25             THERE IS, IN THE CODE, A DIRECT LINKING.

1    THERE IS A SUBROUTINE, A DIRECT ACTION LINKING A

2    SPECIFIED CONNECTION, WHICH IS WHAT JUDGE POSNER

3    SAID --

4               THE COURT:  RIGHT.

5               MR. KREVITT:  -- BETWEEN THE DETECTED

6    STRUCTURE AND THE ACTION.  THAT'S --

7               THE COURT:  BUT WHAT DOES "SPECIFIED

8    CONNECTION" MEAN?  DOES THAT MEAN CREATING THE

9    POP-UP MENU?  IS THAT --

10              MR. KREVITT:  CREATING -- IT'S NOT --

11              THE COURT:  IS THAT -- IS THE WORK THAT

12   CREATES THE POP-UP MENU, IS THAT THE SPECIFIED

13   CONNECTION?

14              MR. KREVITT:  AMONG OTHER THINGS.

15              BUT, YES, THE RESULTS IN THE POP-UP MENU,

16   THERE HAS BEEN A SPECIFIED CONNECTION BETWEEN THE

17   ACTIONS, CALL, STORING CONTACTS, THOSE ARE

18   ULTIMATELY THE ACTIONS, AND THERE HAS BEEN IN THE

19   CODE A SPECIFIED CONNECTION BETWEEN THOSE ACTIONS

20   AND THE DETECTED STRUCTURE.

21              AND THAT'S VERY CLEAR FROM THE, FROM THE

22   ANALYSIS OF THE CODE THAT OUR EXPERT PRESENTED.

23              THE '647 GETS A LITTLE BIT MORE

24   COMPLICATED BECAUSE YOU DO NEED TO LOOK AT THE

25   CODE, BUT OUR EXPERT, DR. MOWRY, PUT IN TWO

1    DECLARATIONS THAT MAKE THAT VERY CLEAR, THE SECOND

2    UNDER JUDGE POSNER'S -- THE FIRST WAS BEFORE

3    JUDGE POSNER'S CONSTRUCTION, BUT THE SECOND

4    ADDRESSES JUDGE POSNER'S CONSTRUCTION AND MAKES

5    VERY CLEAR THAT THAT SPECIFIED CONNECTION EXISTS TO

6    THE DETECTED STRUCTURE BEFORE THE USER TAKES ANY

7    ACTION.

8              THE COURT:  AND YOU THINK UNDER THE ITC'S

9    CONSTRUCTION, THE WORK THAT CREATES THE POP-UP MENU

10   IS ENOUGH FOR THAT LINKING?

11             MR. KREVITT:  THE ITC'S CONSTRUCTION IS,

12   IN THIS REGARD, BROADER, YOUR HONOR.

13             THE COURT:  UM-HUM.

14             MR. KREVITT:  AT THE END OF THE DAY, IT

15   INFRINGES, OF COURSE, FOR THE SAME REASON, AND SO

16   FAR AS IT INFRINGES JUDGE POSNER'S, IT INFRINGES

17   THE ITC'S AND THE ITC FOUND INFRINGEMENT.

18             BUT YES, YOUR HONOR, THE ITC DID NOT

19   REQUIRE THIS SPECIFIED IN CODE CONNECTION BETWEEN

20   THE ACTION AND THE DETECTED STRUCTURE.

21             THE COURT:  OKAY.  THANK YOU.

22             LET ME HEAR FROM SAMSUNG.

23             IS IT TRUE THAT YOU ARE ARGUING THAT THE

24   WORK THAT CREATES THE POP-UP MENU ISN'T ENOUGH,

25   THAT YOU ACTUALLY HAVE TO HAVE THE USER MAKE A

1    SELECTION AND WHATEVER THAT ACTIVITY WAS, THAT

2    SELECTED ACTION GETS PERFORMED?

3            MR. SHIELDS:  NOT EXACTLY.

4            THE COURT:  OKAY.

5            MR. SHIELDS:  IT'S NOT THAT THE USER HAS

6    TO A MAKE A SELECTION.  IT'S THAT THE CONNECTION

7    HAS TO EXIST IN THE SYSTEM BETWEEN THAT SPECIFIC

8    STRUCTURE, SAY AN E-MAIL ADDRESS, AND SPECIFIC

9    ACTIONS THAT CAN BE PERFORMED ON THAT STRUCTURE.

10           IN OTHER WORDS, THE -- THE ACTION AND THE

11   STRUCTURE MUST BE LINKED.  THERE MUST BE A

12   CONNECTION BETWEEN THEM.

13           THE COURT:  SO THE ACTION HAS TO HAVE

14   HAPPENED?

15           MR. SHIELDS:  NO, IT DOESN'T HAVE TO HAVE

16   HAPPENED.

17           THE COURT:  OKAY.

18           MR. SHIELDS:  BUT THERE HAS TO BE A

19   CONNECTION BETWEEN THE SUBROUTINE THAT PERFORMS

20   THAT ACTION AND THE SPECIFIC ADDRESS.

21           IN OTHER WORDS, YOU CAN'T JUST START WITH

22   A STRUCTURE AND END -- AND GO THROUGH A SERIES OF

23   STEPS AND END UP AT AN ACTION.  THE TWO MUST HAVE A

24   CONNECTION BETWEEN THEM, AND THE PATENT DESCRIBES

25   THIS.

1          IF I CAN ASK FOR SLIDE 7.

2          HERE'S HOW THE PATENT DESCRIBES WHAT A

3    CONNECTION -- WHAT A LINK IS.

4          THE -- IT SAYS MORE PARTICULARLY -- THIS

5    IS FROM COLUMN 4, LINES -- BEGINNING AT LINE 66.

6    "MORE PARTICULARLY, PARSER 310" -- AND THIS IS

7    TALKING ABOUT SUBROUTINES WITHIN THE ANALYZER

8    SERVER, AND IT'S TALKING ABOUT HOW THE ANALYZER

9    SERVER WORKS, AND IT SAYS "THE PARSER 310 RETRIEVES

10   FROM GRAMMAR FILE 320" -- WHICH IS ANOTHER PART OF

11   THE ANALYZER SERVER -- "POINTERS ATTACHED TO THE

12   GRAMMAR AND ATTACHES THE SAME POINTERS TO THE

13   IDENTIFIED STRUCTURE."

14         AND SO WHAT THAT'S SAYING IS THE ANALYZER

15   SERVER CONTAINS A PREDEFINED LIST OF GRAMMAR, SUCH

16   AS E-MAILS, TELEPHONE NUMBERS AND SO FORTH, AND A

17   PREDEFINED SET OF ACTIONS ASSOCIATED WITH THOSE

18   GRAMMARS WITH POINTERS TO THEM.

19         SO FOR -- GO TO SLIDE 6, PLEASE.

20         THIS IS FIGURE 4 FROM THE PATENT, AND IT

21   HAS A GRAMMAR, FOR EXAMPLE, FOR AN E-MAIL ADDRESS

22   AND ACTIONS ASSOCIATED WITH THAT.

23         AND THESE ARE SPECIFIC POINTERS, AS THE

24   SPECIFICATION SAYS, TO AN APPLICATION THAT SENDS AN

25   E-MAIL, AND A POINTER TO A SUBROUTINE THAT PUTS

1    THAT E-MAIL IN YOUR ADDRESS BOOK.

2          AND WHAT THE PATENT DISCLOSES IS THOSE

3    POINTERS, WHEN IT IDENTIFIES A SPECIFIC E-MAIL

4    ADDRESS, IT LOOKS TO SEE, WELL, WHAT POINTERS EXIST

5    FOR THAT KIND OF GRAMMAR IN THE ANALYZER SERVER,

6    AND IT COPIES THEM.

7          SO THE EXACT SAME POINTERS TO SPECIFIC

8    SUBROUTINES ARE ASSOCIATED WITH THAT SPECIFIC

9    E-MAIL ADDRESS OR OTHER STRUCTURE.

10         THAT'S VERY DIFFERENT FROM WHAT THE

11    GALAXY NEXUS DOES, BECAUSE IN THE GALAXY NEXUS, IN

12    ICE CREAM SANDWICH, NOTHING IS EVER CONNECTED TO A

13    PARTICULAR STRUCTURE.  THE USER CAN PICK, SAY, AN

14    E-MAIL ADDRESS AND THAT STARTS A SERIES OF STEPS

15    WHICH MAY END UP IN THE USER SELECTING THE

16    ACTIVITY.

17         BUT THAT ACTIVITY IS NEVER LINKED BACK TO

18    THE STRUCTURE AT CODE LEVEL.  THERE'S NO LINK

19    BETWEEN THEM OTHER THAN A CAUSAL LINK THAT YOU

20    STARTED WITH A STRUCTURE AND YOU ENDED UP WITH AN

21    ACTION.

22         BUT WHAT THE PATENT DESCRIBES IS AN

23    ACTUAL CONNECTION AT THE CODE LEVEL, BUT THAT THIS

24    PARTICULAR STRUCTURE POINTS TO SUBROUTINES THAT

25    PERFORM ACTIONS.

1           THE COURT:  OKAY.  THANK YOU.

2           LET'S GO TO THE '721, AND I HAVE

3      QUESTIONS FOR APPLE ON THE '721.

4           MR. KREVITT:  MAY I JUST RESPOND VERY

5      BRIEFLY, YOUR HONOR?

6           THE COURT:  VERY, VERY, BRIEFLY.

7           MR. KREVITT:  VERY BRIEFLY.

8           MR. SHIELDS JUST SHOWED YOUR HONOR

9      PORTIONS OF THE SPECIFICATION TALKING ABOUT

10     POINTERS.

11          THE CLAIM DOES NOT MENTION POINTERS.

12     SAMSUNG OWN EXPERT TESTIFIED THAT POINTERS ARE NOT

13     REQUIRED.  JUDGE POSNER DID NOT REQUIRE POINTERS.

14          THIS WAS IN SAMSUNG'S BRIEF AND THIS IS A

15     RED HERRING.

16          POINTERS ARE NOT REQUIRED BY THE CLAIMS,

17     THEY'RE NOT REQUIRED BY JUDGE POSNER'S

18     CONSTRUCTION, AND THAT HAS BEEN MADE VERY CLEAR

19     ALREADY, INCLUDING BY SAMSUNG'S OWN EXPERT IN THIS

20     CASE, YOUR HONOR.

21          SO THIS NOTION OF TRYING TO LIMIT THE

22     CLAIMS TO POINTERS, TO THE PARTICULAR

23     IMPLEMENTATION IN THE PREFERRED EMBODIMENT, IS

24     WRONG, IT'S INCONSISTENT WITH THE CLAIMS, IT'S

25     INCONSISTENT WITH JUDGE POSNER'S CONSTRUCTION AND

                                                    47

1    SAMSUNG'S OWN EXPERT'S TESTIMONY.

2           THE GALAXY NEXUS CLEARLY HAS THE

3    SPECIFIED CONNECTION UNDER JUDGE POSNER'S

4    CONSTRUCTION.  AND I KNOW YOU WANT TO MOVE ON, BUT

5    I HAVE A SLIDE THAT DEMONSTRATES THAT, YOUR HONOR,

6    AND I'M HAPPY TO SHOW YOU.

7           IT IS VERY CLEAR THAT THE STRUCTURES, THE

8    DETECTED STRUCTURES, EACH ONE HAS LINKED ACTIONS

9    THAT ARE SPECIFIED -- THAT THERE IS A CONNECTION

10   SPECIFIED BETWEEN THEM BEFORE THE USER DOES

11   ANYTHING.

12          THE COURT:  YOU DON'T HAVE TO SAY MORE ON

13   INFRINGEMENT ON THE '647.

14          MR. KREVITT:  OKAY.

15          THE COURT:  AND I WAS NOT PERSUADED BY

16   THE POINTERS.

17          OKAY.  LET'S GO TO THE '721, AND LET ME

18   ASK, THERE'S SOME DISPUTE ABOUT THE NEONODE AND

19   WHETHER IT IS IN PRIOR ART OR NOT.

20          MR. KREVITT:  YES, YOUR HONOR.

21          THE COURT:  SO LET ME ASK YOU IF APPLE IS

22   DISPUTING THAT THE NEONODE-N_1 AND N_1_M WERE SOLD

23   BEFORE THE PRIORITY DATE.

24          MR. KREVITT:  WE ABSOLUTELY ARE DISPUTING

25   THAT, YOUR HONOR.

                                                    48

1          I KEEP REFERRING TO THESE.  MAY I HAND

2     THESE UP, YOUR HONOR, SO I DON'T HAVE TO KEEP

3     LUGGING THESE BACK AND FORTH?

4          THE COURT:  OKAY.  HAVE YOU SHOWN THEM TO

5     MR. PRICE?

6          MR. KREVITT:  WE'RE HANDING THEM

7     SIMULTANEOUSLY.

8          THE COURT:  OKAY.

9          MR. KREVITT:  THANK YOU VERY MUCH.

10          A COPY FOR YOUR CLERK?

11          THE COURT:  YES, PLEASE.

12          MR. KREVITT:  THANK YOU, YOUR HONOR.

13          WE ABSOLUTELY ARE DISPUTING THAT NEONODE

14     IS PRIOR ART.  THERE IS NO EVIDENCE WHATSOEVER IN

15     THE RECORD THAT NEONODE IS PRIOR ART, ZERO.

16          ON THAT QUESTION, I DON'T THINK THERE

17     WILL BE A DISPUTE, BUT I'LL BE INTERESTED TO SEE,

18     BUT THERE'S BEEN NO EVIDENCE WHATSOEVER THAT

19     NEONODE WAS EVER ON SALE IN THE UNITED STATES, YOUR

20     HONOR.

21          AND HERE'S THE KEY POINT.  SAMSUNG KNOWS

22     THAT, SO THIS WEEK SAMSUNG FILED, OUT OF TIME AND

23     PROCEDURALLY INCORRECT, BUT JUST LOBBED IN

24     DOCUMENTS WITH RESPECT TO NEONODE TO TRY TO CURE

25     THIS DEFECT.

49

1          THE DOCUMENTS THEMSELVES MAKE CLEAR THAT

2    NEONODE WAS ON SALE IN STOCKHOLM, IN SWEDEN.  IT

3    WAS NEVER ON SALE IN THE UNITED STATES.

4          SAMSUNG'S EXPERT ADMITS HE'S NEVER HELD

5    THE DEVICE, HAS NO KNOWLEDGE OF IT EVER BEING ON

6    SALE IN THE UNITED STATES.

7          AND SO WHAT SAMSUNG HAS HAD TO DO, YOUR

8    HONOR -- FIRST, THAT'S THE ANSWER TO YOUR QUESTION.

9    IT IS NOT PRIOR ART, PERIOD.  AND THERE'S NO

10   EVIDENCE TO THE CONTRARY.

11         SO WHAT SAMSUNG HAS HAD TO DO, YOUR

12   HONOR, IS COBBLE TOGETHER DOCUMENTS, A YOUTUBE

13   VIDEO AND OTHER DOCUMENTS, ALL AFTER THE CRITICAL

14   DATE, THAT DON'T INDICATE AT ALL THAT NEONODE WAS

15   EVER ON SALE IN THE UNITED STATES, LET ALONE WHEN,

16   WHICH NEONODE, OR ANYTHING ELSE.

17         THE COURT:  SO ON THE VIDEO, YOU'RE NOT

18   DISPUTING AUTHENTICITY, YOU'RE JUST DISPUTING

19   WHETHER IT'S BEFORE THE PRIORITY DATE OR NOT?

20   YOU'RE JUST --

21         MR. KREVITT:  WE DON'T KNOW WHETHER IT'S

22   AUTHENTIC OR NOT.

23         WHAT WE ARE ABSOLUTELY DISPUTING, THOUGH,

24   IS WHETHER IT REFLECTED A NEONODE THAT WAS EVER IN

25   USE IN THE UNITED STATES AND WHETHER IT REFLECTS A

1    NEONODE AT THE RIGHT TIME, MEANING BEFORE THE

2    CRITICAL DATE.

3         SO I CANNOT SIT HERE TODAY AND TELL YOU

4    TODAY I HAVE AN AFFIRMATIVE REASON TO BELIEVE IT'S

5    A FRAUD.

6         WHAT I CAN TELL YOU IS THERE IS NO

7    EVIDENCE IN THE RECORD THAT THE NEONODE DEVICE WAS

8    EVER IN THIS COUNTRY, IN USE IN THIS COUNTRY.

9         THE COURT:  UM-HUM.  ALL RIGHT.

10        LET ME HEAR FROM SAMSUNG.

11        WHAT DO YOU HAVE WITH REGARD TO THE

12   NEONODE THAT SAYS THAT THE RELEVANT TIME PERIOD IS

13   BEFORE THE CRITICAL DATE?

14        MR. PRICE:  YOUR HONOR, IN THE DOCUMENTS

15   THAT WE FILED, LODGED, AMONG THE DOCUMENTS YOU'LL

16   SEE ARE THE WEBSITE, WHICH IS BEFORE THE DATE OF

17   FILING OF THE PATENT; YOU'LL SEE A FACT SECTION OF

18   THE WEBSITE TALKING ABOUT THE NEONODE; YOU'LL SEE A

19   USER FAN FORUM TALKING ABOUT SOMEONE SAYING THEY

20   HAVE A NEONODE, YOU KNOW, IN THEIR HAND; YOU WILL

21   SEE A PRESS RELEASE ABOUT THE SALE OF THE NEONODE.

22        AND QUITE FRANKLY, OF COURSE, WE'VE BEEN

23   TRYING IN THIS SHORT TIME PERIOD TO GET AS MUCH

24   EVIDENCE AS WE CAN ABOUT THE NEONODE, WHICH IS ONE

25   OF THE ISSUES, THE PROBLEMS WITH PRELIMINARY RELIEF

1    INSTEAD OF ACTUALLY HAVING A TRIAL.

2            AND WE STILL ARE.

3            BUT THERE IS SUBSTANTIAL EVIDENCE IN THE

4    RECORD, AND THAT'S ALL THAT'S REQUIRED AT THIS

5    POINT, SUBSTANTIAL EVIDENCE.

6            FIRST, UNDISPUTABLE EVIDENCE THAT THE

7    INVENTION, THE DEVICE WAS INVENTED PRIOR TO THE

8    FILING OF THE PATENT; AND ALSO THAT IT WOULD BE IN

9    THE UNITED STATES, BECAUSE IT COULD HAVE BEEN

10   IMPORTED INTO THE UNITED STATES.

11           BUT RIGHT NOW WE'RE, WE'RE STILL LOOKING.

12   THAT'S ONE OF THE PROBLEMS OF THE SHORTENED TIMING

13   HERE.

14           BUT THE EVIDENCE IS SUBSTANTIAL THAT IT

15   WAS A DEVICE THAT WAS CREATED BEFORE THE FILING OF

16   THE PATENT.

17           THE COURT:  WHAT ABOUT USE IN THE U.S.?

18           MR. PRICE:  THAT, YOUR HONOR, QUITE

19   FRANKLY, WE'RE -- YOU KNOW, WE HAVEN'T UNCOVERED A

20   SPECIFIC SALE.

21           WE KNOW THAT IT WAS AVAILABLE FOR SALE.

22   WE KNOW IT COULD BE IMPORTED.

23           I DON'T THINK WE KNOW WHERE THAT --

24           THE COURT:  SO YOU DON'T KNOW IF IT WAS

25   OFFERED FOR SALE IN THE U.S.?

1          MR. PRICE:  MY UNDERSTANDING IS IT WAS

2     OFFERED ON THE WEBSITE, BUT -- WELL, IF I'M WRONG,

3     A YOUNG ATTORNEY WILL BE SCURRYING UP BEHIND ME,

4     AND PLEASE DON'T SHOOT.

5          (LAUGHTER.)

6          THE COURT:  OKAY.  ALL RIGHT.

7          IS THERE ANYTHING YOU WANTED TO SAY ON

8     THAT?

9          MR. KREVITT:  YOUR HONOR, IT APPEARS THAT

10    MR. PRICE CANDIDLY ADMITTED THERE'S NO EVIDENCE.

11         I HAVE NOTHING MORE TO SAY ON WHETHER

12    THERE'S EVIDENCE.

13         THE ONLY THING I WOULD NOTE ON THE

14    TIMING, YOUR HONOR, IS THIS -- A RELATED PATENT HAS

15    BEEN IN PLAY IN OTHER PROCEEDINGS.  THE QUINN,

16    EMANUEL LAW FIRM WAS REPRESENTING THE DEFENDANTS IN

17    THOSE CASES, SO THERE'S BEEN ACTUALLY QUITE A LOT

18    OF TIME TO LOOK FOR PRIOR ART WITH RESPECT TO THIS

19    PATENT AND SO FAR NO EVIDENCE HAS BEEN UNCOVERED

20    REGARDING WHETHER THE NEONODE WAS EVER ON SALE IN

21    THE UNITED STATES.

22         THE COURT:  WELL, WHAT IF HE'S SAYING

23    THAT IT WAS OFFERED FOR SALE ON THE WEBSITE, SO YOU

24    COULD GET ACCESS TO IT ON THE INTERNET IN THE

25    UNITED STATES?

53

 1            MR. KREVITT:  NO, YOUR HONOR.  NO, YOUR

 2     HONOR.

 3            THERE IS NO EVIDENCE, TO BE CLEAR -- AND

 4     WE CAN PULL UP THE DOCUMENTS THAT WE SUBMITTED --

 5     THERE IS NO EVIDENCE THAT THIS DEVICE WAS EVER SOLD

 6     TO THE UNITED STATES, AND HAVING A DEVICE -- IN

 7     FACT, IF -- THE DOCUMENTS THAT THEY SUBMITTED,

 8     LODGED, SAID THAT IF YOU LIVE IN SWEDEN, YOU CAN

 9     GET A NEONODE DEVICE.  YOU CAN GO TO THE NEONODE

10     STORE AND GET A NEONODE DEVICE.

11            THESE ARE JUST TWO OF THE DOCUMENTS THAT

12     MR. PRICE REFERRED TO THAT WERE LODGED.  THIS IS ON

13     SLIDE 10, YOUR HONOR.

14            IF YOU SEE AT THE BOTTOM -- AND THESE ARE

15     FROM TWO DIFFERENT DOCUMENTS, I BELIEVE -- IF YOU

16     LIVE IN SWEDEN, NOVEMBER 1ST, 1200 HOURS, YOU CAN

17     GET ONE.

18            AND THEN, "THE SWEDISH MOBILE DEVICE

19     MANUFACTURER NEONODE LAUNCHES ITS WEB SHOP TO THE

20     SWEDISH PUBLIC."

21            AND WHAT'S MORE, THE DOCUMENTS TO WHICH

22     MR. PRICE REFERRED THAT SAID THAT PEOPLE HAVE THIS

23     DEVICE, THEY HAVE IN THEIR HANDS, THEY LIKE IT,

24     EACH OF THOSE PEOPLE ARE IN SWEDEN.  IT'S ON A

25     SWEDISH WEBSITE.  IT'S A CHAT ROOM TALKING ABOUT

                                                      54

1      THE NEONODE DEVICE ON A WEBSITE HOUSED IN STOCKHOLM

2      AMONG PEOPLE IN SWEDEN.

3            THERE IS NO EVIDENCE, AT ALL, THAT THIS

4      DEVICE WAS EVER ON SALE OR EVEN AVAILABLE FOR SALE

5      IN THE UNITED STATES.

6            AND, YOUR HONOR, IF I MAY, DON'T FORGET,

7      EVEN IF IT WAS, EVEN IF THERE WERE EVIDENCE,

8      SAMSUNG ADMITS THAT THE DEVICE ITSELF IS

9      INSUFFICIENT TO ESTABLISH -- THAT THE EVIDENCE OF

10     THE DEVICE IS INSUFFICIENT TO ESTABLISH WHAT IT

11     DID, ITS CHARACTERISTICS, AND THAT'S WHY THEY ARE

12     RELYING ON A 2007 YOUTUBE VIDEO AND RELYING ON

13     DOCUMENTS FROM AFTER THE CRITICAL DATE.

14           SO THERE'S NO EVIDENCE WHATSOEVER, AND

15     I THOUGHT MR. PRICE WAS CANDID ABOUT THIS, THERE IS

16     NO EVIDENCE WHATSOEVER THAT THE DEVICE WAS EVER ON

17     SALE OR OFFERED FOR SALE OR AVAILABLE FOR SALE OR

18     OTHERWISE IN USE IN THE UNITED STATES.

19           THERE IS NO EVIDENCE AT ALL, OTHER THAN

20     POST-CRITICAL DATE DOCUMENTS, OF WHAT THE NEONODE

21     DEVICE EVEN DID IN RELEVANT RESPECTS.

22           THE NEONODE DEVICE DOESN'T ANTICIPATE ON

23     THE MERITS, AND SAMSUNG'S OWN EXPERT ADMITS THAT.

24           BUT YOU SHOULD NEVER GET THERE, YOUR

25     HONOR, WITH ALL DUE RESPECT, BECAUSE THERE IS

1    SIMPLY NO EVIDENCE AT ALL THAT THIS IS PRIOR ART.

2            THE COURT:  OKAY.  WELL, I WASN'T

3    PERSUADED ON ANTICIPATION, BUT I WAS THINKING ABOUT

4    OBVIOUSNESS IN COMBINATION WITH PLAISANT.

5            MR. KREVITT:  WELL, I CAN ADDRESS THAT,

6    YOUR HONOR.

7            AS YOUR HONOR WELL KNOWS -- SO IF I COULD

8    MAYBE TIE THE LOOP ON THAT -- YOU CAN'T COMBINE A

9    REFERENCE THAT ISN'T PRIOR ART, OBVIOUSLY.

10           THE COURT:  RIGHT.

11           MR. KREVITT:  RIGHT.  SO IT IS NOT PRIOR

12   ART.  IT CANNOT BE COMBINED WITH THE PLAISANT

13   REFERENCE.  THERE IS NO EVIDENCE AS TO NEONODE

14   BEING PRIOR ART.

15           IF YOU'D LIKE, I'D BE HAPPY TO ADDRESS

16   WHY THE PLAISANT REFERENCE DOESN'T ANTICIPATE.

17           THE COURT:  NO, YOU DON'T HAVE TO DO

18   THAT.

19           MR. KREVITT:  OKAY.

20           THE COURT:  YOU DON'T HAVE TO DO THAT.

21           OKAY.  LET'S GO TO INDEFINITENESS ON THIS

22   ONE.

23           IS INDEPENDENT CLAIM 12 AN APPARATUS

24   CLAIM OR A METHOD CLAIM?

25           MR. KREVITT:  IT'S AN APPARATUS CLAIM.

1     IT'S CLEARLY AN APPARATUS CLAIM, YOUR HONOR.

2               I CAN'T RECALL A CASE IN WHICH A

3     DEFENDANT MADE MORE INDEFINITENESS ARGUMENTS.

4     EVERY ONE OF OUR CLAIMS IS INDEFINITE.

5               MR. PRICE:  YOUR HONOR, I CAN CUT THIS

6     SHORT.  WE'RE NOT MAKING THE ARGUMENT HERE.

7               THE COURT:  YOU'RE NOT MAKING THE HYBRID

8     CLAIM INDEFINITENESS ARGUMENT?

9               MR. PRICE:  NO, NOT AFTER SEEING THEIR

10    OPPOSITION.  IN OUR REPLY BRIEF, WE'RE WITHDRAWING

11    THE ARGUMENT.

12              THE COURT:  OKAY.  AS TO CLAIMS 12 AND

13    15, OR JUST TO CLAIM 12?

14              MR. PRICE:  15 IS DEPENDENT, SO IT WOULD

15    BE BOTH, YOUR HONOR.

16              THE COURT:  OKAY.  THANK YOU.  THAT

17    SHORTENED THAT ONE.

18              AND YOU ARE RIGHT, 15 IS DEPENDENT.

19              OKAY.  ALL RIGHT.  LET'S GO TO THE FINAL

20    PATENT AND THEN WE HAVE TO DO IRREPARABLE HARM.

21              OKAY.  AND I WANT APPLE TO CLARIFY WHY

22    THE PTO ALLOWED CLAIM 27 IN LIGHT OF LONGE AND

23    ROBINSON.  IT'S JUST NOT CLEAR AFTER THE INITIAL

24    REJECTION WHY THEY ALLOWED IT.

25              IF YOU COULD SPEAK TO THAT, PLEASE?

1            MR. KREVITT:  OKAY.  IF YOU COULD PULL

2    UP -- WHY DON'T WE GO TO SLIDE 13?

3            SO I'LL WALK THROUGH THIS VERY QUICKLY,

4    YOUR HONOR, IF I MAY.

5            THE COURT:  OKAY.

6            MR. KREVITT:  THIS IS A FIGURE RIGHT OUT

7    OF SAMSUNG'S BRIEF.

8            THE CLAIMS, AS YOUR HONOR KNOWS, REQUIRE

9    TWO THINGS.  18 AND 19 REQUIRE THAT YOU HAVE A

10    CURRENT CHARACTER STRING IN TWO PLACES, FIRST AREA

11    AND SECOND AREA; AND CLAIM 27 REQUIRES THAT YOU

12    APPEND PUNCTUATION.

13            IT DOESN'T REQUIRE THAT THE CURRENT

14    CHARACTER STRING BE IN TWO PLACES.  IT REQUIRES

15    THAT YOU REPLACE THE CURRENT CHARACTER STRING, AND

16    THAT YOU APPEND PUNCTUATION.

17            SO THAT'S THE DIFFERENCE.  18 AND 19

18    REQUIRE THE CURRENT CHARACTER STRING IN TWO PLACES.

19            ALL CLAIMS REQUIRE THAT THE CURRENT

20    CHARACTER STRING BE REPLACED, SO IT HAS TO EXIST

21    FIRST.

22            IF YOU LOOK AT SLIDE 13, YOU WILL SEE --

23    MAYBE IT WOULD BE EASIER IF WE GO TO THE NEXT

24    SLIDE, BECAUSE I THINK OUR FIGURES MAKE THIS A

25    LITTLE CLEARER.

1    SO THIS IS RIGHT OUT OF THE LONGE

2    REFERENCE, YOUR HONOR, AND THE BOX OVER HERE, YOUR

3    HONOR, THIS IS THE FIRST AREA, THIS IS YOUR CURRENT

4    CHARACTER STRING RIGHT HERE.  NO DISPUTE ABOUT

5    THAT.  THESE LETTERS, THAT'S YOUR CURRENT CHARACTER

6    STRING IN THE FIRST AREA.

7         THE COURT:  OKAY.

8         MR. KREVITT:  AND REMEMBER, CLAIMS 18 AND

9    19 REQUIRE THE CURRENT CHARACTER STRING TO BE IN

10   TWO PLACES.

11        IT CLEARLY IS NOT.  SO IT'S HERE, BUT WE

12   BLUE IT UP AND YOU CAN SEE THAT IT ENDS WITH THE --

13   AND YOUR SLIDE HOPEFULLY, YOUR HONOR, MAKES THIS

14   CLEAR.

15        THE CURRENT CHARACTER STRING DOES NOT

16   APPEAR IN TWO PLACES.  IT ONLY APPEARS IN WHAT IS

17   THE FIRST AREA, WHAT WOULD BE ANALOGOUS TO THE

18   FIRST AREA.

19        IT NEVER APPEARS ON THE -- IN THE AREA

20   WHERE THE REST OF THE TEXT EXISTS.  THAT'S VERY

21   CLEAR FROM THE REFERENCE ITSELF.

22        AND IT'S CLEAR FROM THE SPECIFICATION ON

23   THE LONGE REFERENCE.  THE CURRENT CHARACTER STRING,

24   AS YOU'RE TYPING, APPEARS IN THAT BOX.

25        THEN YOU MAKE A CHOICE, LET'S SAY YOU

59

1    TYPED R-W-Z-T AND YOU GOT THAT WRONG AND YOU MEANT

2    TEXT, THEN YOU WOULD SELECT TEXT, AND TEXT GETS PUT

3    IN.

4              SO IT NEVER APPEARS -- THE CURRENT

5    CHARACTER STRING, THE LETTERS YOU'RE TYPING, IN

6    THIS CASE THE R-W-Z-T, NEVER APPEARS IN TWO PLACES.

7              THAT'S A CLAIM REQUIREMENT OF CLAIMS 18

8    AND 19, THAT THE CURRENT CHARACTER STRING BE IN TWO

9    PLACES.

10             YOU CAN SEE VERY CLEARLY, YOUR HONOR,

11   IT'S ONLY IN ONE PLACE.  IT'S KIND OF HARD TO SEE,

12   BUT DOWN THERE AT THE BOTTOM LEFT, THAT WORD IS

13   THE, AND IT IS NOT R-W-Z-T.

14             THE COURT:  BUT WHAT DOES "REPLACE THE

15   CURRENT CHARACTER STRING" MEAN?

16             MR. KREVITT:  WELL, WHATEVER IT MEANS,

17   YOUR HONOR, IT MEANS YOU HAVE TO HAVE A CURRENT

18   CHARACTER STRING, AND THEN YOU HAVE TO CHANGE IT

19   WITH SOMETHING ELSE.

20             THAT'S JUST -- I DON'T THINK THERE'S ANY

21   DISPUTE ABOUT THAT WORD "REPLACE" IN THIS CONTEXT.

22   SO YOU HAVE SOMETHING AND YOU PUT SOMETHING ELSE IN

23   ITS PLACE.

24             AND THAT'S EXACTLY WHAT THE PATENT

25   DESCRIBES IS THAT YOU'RE TYPING ALONG AND THEN YOU

                                                          60

1     CAN MAKE A CHOICE TO KEEP THE WORD, OR YOU CAN

2     REPLACE IT WITH THE SUGGESTED WORD, AND IF YOU

3     REPLACE IT WITH THE SUGGESTED WORD, IT TAKES THE

4     SUGGESTED WORD, IT TAKES OUT THE CURRENT CHARACTER

5     STRING, AND IT PUTS IN THE SUGGESTED WORD.

6            AND THAT'S CLEAR, YOUR HONOR, ON SLIDE --

7     RIGHT OUT OF THE PATENT, YOUR HONOR, IF YOU LOOK AT

8     SLIDE 3, FOR EXAMPLE.

9            SO WHAT WE DID, YOUR HONOR, IN SLIDE 4 IS

10    JUST THE CLAIM LANGUAGE.  WE WANTED TO MAKE SURE

11    THERE WAS NO SUGGESTION WE WERE PARAPHRASING IT

12    UNFAIRLY.

13           BUT IF YOU LOOK AT SLIDE 3, THERE IS THE

14    FIRST AREA THAT'S CIRCLED IN BLUE, AND YOU HAVE

15    A -- YOU HAVE A CURRENT CHARACTER STRING, WHICH IS

16    C-A-E, IT'S WHAT THE USER IS TYPING, TAKE THE

17    C-A-E, AND THAT CURRENT CHARACTER STRING APPEARS IN

18    THE GREEN BOX, WHICH IS THE SECOND AREA ALSO.  SO

19    YOU SEE IT THERE IN TWO PLACES, YOUR HONOR.

20           AND THEN YOU HAVE A SUGGESTED REPLACEMENT

21    CHARACTER STRING, THAT'S CAR, BECAUSE MAYBE YOU

22    MEANT CAR.  C-A-E ISN'T A WORD.

23           SO YOU HAVE THE CURRENT CHARACTER STRING

24    IN TWO PLACES AND YOU HAVE A SUGGESTION IN ONE

25    PLACE, AND IF YOU CHOOSE THE SUGGESTION, WHAT IT

1    WILL DO IS REPLACE THE CURRENT CHARACTER STRING,

2    C-A-E, WITH THE SUGGESTED WORD, C-A-R.  THAT'S WHAT

3    IT MEANS TO REPLACE THE CURRENT CHARACTER STRING.

4            SO YOU HAVE TO HAVE THE CURRENT CHARACTER

5    STRING THERE IN ORDER TO BE ABLE TO REPLACE IT.

6            IF THE CURRENT CHARACTER STRING, YOUR

7    HONOR, ON SLIDE 3 THAT WE HAVE HERE, WHICH IS

8    FIGURE 4D FROM THE PATENT, IF THAT CURRENT

9    CHARACTER STRING DID NOT APPEAR IN THAT BLUE BOX IN

10   THE FIRST AREA, YOU COULDN'T REPLACE IT.  YOU WOULD

11   BE PLACING A WORD IN THERE.  IF IT DIDN'T EXIST

12   THERE -- YOU FOLLOW ME?

13           THE COURT:  UM-HUM.

14           MR. KREVITT:  IT SAYS TAKE THE C-A-E,

15   THAT'S THE CURRENT CHARACTER STRING; YOU NOW HAVE

16   AN OPTION, AS THE USER OF THIS DEVICE, TO KEEP

17   THAT, "NO, I MEANT C-A-E, I WANT TO KEEP THAT," OR

18   REPLACE IT, "I PREFER CAR, SO I'M GOING TO REPLACE

19   IT."

20           IF YOU REPLACE IT, IT SUBSTITUTES -- IT

21   TAKES OUT C-A-E AND PUTS IN THE SUGGESTED

22   ALTERNATIVE.

23           BUT IN ORDER TO REPLACE SOMETHING, JUST

24   COMMON ENGLISH, SOMETHING ELSE HAS TO EXIST THERE

25   FIRST.  OTHERWISE YOU'RE JUST PLACING IT.  YOU'RE

1    NOT REPLACING IT.

2              AND THIS CLAIM IS ENTIRELY -- IT'S NOT

3    JUST A WORD GAME.  THE CLAIM ITSELF REQUIRES THE

4    CURRENT CHARACTER STRING TO BE IN TWO PLACES.

5              YOU CAN SEE THAT VERY CLEARLY, YOUR

6    HONOR, ON SLIDE 4 IN THE CLAIM, OR YOUR HONOR

7    UNDOUBTEDLY HAS THE CLAIM, BUT IT SAYS THAT YOU

8    HAVE THE CURRENT CHARACTER STRING, IT'S BEING

9    INPUT, AND THE CURRENT CHARACTER STRING APPEARS IN

10   THE FIRST AREA AND THEN YOU HAVE THE CURRENT

11   CHARACTER STRING IN THE SECOND AREA.

12             SO IT'S IN BOTH PLACES.  THAT'S CLAIM 18

13   AND 19.

14             AND IF WE GO BACK TO THE LONGE REFERENCE,

15   OUR SLIDES ON THE LONGE REFERENCE, YOU CAN SEE WHY

16   IT'S MISSING ELEMENTS 18 AND 19 -- EXCUSE ME,

17   CLAIMS 18 AND 19.

18             NEXT SLIDE, PLEASE.

19             THE CURRENT CHARACTER STRING IS R-W-Z-T.

20   THERE'S NO DISPUTE THAT'S WHAT LONGE SAYS.  THAT IS

21   THE CURRENT CHARACTER STRING, R-W-Z-T.

22             AND IF YOU LOOK, THAT CURRENT CHARACTER

23   STRING APPEARS IN ONLY ONE PLACE.  IT DOES NOT

24   APPEAR IN THE SECOND AREA, WHICH WE'VE CIRCLED

25   THERE IN RED.

1           AND IF YOU GO TO THE NEXT SLIDE, YOUR

2    HONOR, THIS SHOWS HOW IT ACTUALLY WORKS.

3           SO THE SLIDE -- THE FIGURE ON THE LEFT

4    SHOWS THE CURRENT CHARACTER STRING, WHICH IS THE

5    R-W-Z-T, AND IT IS NOT IN THE OTHER AREA.  IT ONLY

6    APPEARS IN ONE PLACE.  NOW THE USER HAS CHOSE A

7    PARTICULAR WORD, THE USER CHOSE TEXT, AND THE WORD

8    TEXT IS PUT INTO THE SECOND AREA.

9           BUT THE CURRENT CHARACTER STRING NEVER

10   APPEARS IN THAT SECOND AREA, SO THE CURRENT

11   CHARACTER STRING IS NEVER REPLACED BY THE

12   SUGGESTION.

13           THAT'S CLAIM 18 AND 19.

14           THE COURT:  I'M NOT AS CONCERNED ABOUT 18

15   AND 19.

16           MR. KREVITT:  27, YOUR HONOR, REQUIRES --

17   I'M SORRY.  WAS THERE --

18           THE COURT:  NO, THERE'S NOTHING ELSE.

19           MR. KREVITT:  OKAY.  CLAIM 27 REQUIRES

20   THAT WHEN YOU USE A PUNCTUATION MARK, NOT ONLY IS

21   THE SUGGESTED WORD ACCEPTED, BUT THE PUNCTUATION

22   MARK IS ADDED.

23           SO YOU'RE TYPING ALONG AND YOU WANT TO

24   USE THE SUGGESTED WORD, SO YOU HIT PERIOD.  IT WILL

25   REPLACE THE WORD WITH THE SUGGESTED WORD AND IT

                                                    64

```
1    WILL AUTOMATICALLY APPEND A PERIOD TO THE WORD,

2    JUST AS A CONVENIENCE.  THAT'S CLAIM 27.

3             LONGE DOES NOT DO THAT.  ROBINSON DOES

4    NOT DO THAT.

5             THE COURT:  LET ME ASK YOU, WITH REGARD

6    TO THE '604, GOING BACK TO SIRI, IF THE COURT

7    ADOPTED SAMSUNG'S CLAIM CONSTRUCTION, DOES THAT

8    MEAN YOU LOSE ON INFRINGEMENT?

9             MR. KREVITT:  NO, YOUR HONOR.  NO, YOUR

10   HONOR, BECAUSE --

11            THE COURT:  WHY NOT?

12            MR. KREVITT:  BECAUSE -- WELL, IT'S NOT

13   CLEAR WHAT THAT MEANS TO ADOPT SAMSUNG'S CLAIM

14   CONSTRUCTION.

15            TO -- THE ONLY WAY FOR US TO LOSE ON

16   INFRINGEMENT IS IF THE EXAMPLES IN THE

17   SPECIFICATION ARE EXCLUDED BECAUSE, AS I SAID,

18   THERE IS NO DISPUTE.  SAMSUNG'S EXPERT DID NOT

19   DISPUTE THAT, THAT THE EXAMPLES IN THE

20   SPECIFICATION ARE IN THE GALAXY NEXUS.

21            THOSE EXAMPLES, AS SET FORTH IN THE

22   SPECIFICATION, ARE IN THE GALAXY NEXUS.

23            SO THE ONLY WAY WE LOSE IS A CLAIM

24   CONSTRUCTION --

25            THE COURT:  BUT IF YOU'RE TALKING ABOUT
```

1      THAT SECOND EXAMPLE, THAT IS NOT THAT CLEAR, RIGHT?

2      IT JUST SAYS ASSOCIATED HEURISTIC.  IT DOESN'T

3      SAY -- I AGREE IT DOESN'T SAY UNIQUE OR DIFFERENT

4      HEURISTIC, BUT --

5                MR. KREVITT:  I MISUNDERSTOOD YOUR

6      QUESTION, YOUR HONOR.  YOU'RE TALKING ABOUT THE

7      EACH QUESTION?

8                THE COURT:  YEAH.

9                MR. KREVITT:  IF SAMSUNG WINS ON THE EACH

10     QUESTION -- AND BEFORE YOUR HONOR GOT CLOSE TO THAT

11     RULING, I'D LIKE AN OPPORTUNITY TO ADDRESS THE

12     CASES BECAUSE IT IS CLEARLY WRONG -- IF SAMSUNG

13     WERE TO WIN ON THAT CLAIM CONSTRUCTION, THEN AT

14     THIS TIME WE DO NOT HAVE A LIKELIHOOD OF SUCCESS ON

15     INFRINGEMENT.

16               WE WOULD HAVE OTHER ARGUMENTS, BUT WE

17     WOULD NOT HAVE THE ARGUMENTS THAT WE HAVE PUT FORTH

18     IN THE RECORD FOR YOUR HONOR TO CONSIDER ON THIS

19     MOTION.

20               SO IN OTHER WORDS, IF YOUR HONOR

21     CONCLUDED THAT EVERY SINGLE MODULE IN THE DEVICE

22     HAS TO USE A DIFFERENT ALGORITHM, WE HAVE NOT

23     SUBMITTED EVIDENCE TO YOUR HONOR YET THAT EVERY

24     SINGLE MODULE IN THE DEVICE USES A DIFFERENT

25     ALGORITHM.

1           THAT IS, WITH ALL DUE RESPECT, IT WON'T

2     SURPRISE YOU TO HEAR, INCONSISTENT WITH THE CLAIM

3     ITSELF.  RESQNET ANSWERS THIS QUESTION VERY

4     CLEARLY, AND THE CASE TO WHICH MR. PRICE REFERRED,

5     WHICH NOT SURPRISINGLY I HAVE A SLIDE ON, IS

6     ENTIRELY DIFFERENT.

7           THAT -- NOT SURPRISINGLY, THOSE TWO CASES

8     HAVE NEVER DISAGREED WITH EACH OTHER, MEANING THE

9     CASE THAT MR. PRICE REFERRED TO CAME OUT AFTER

10    RESQNET AND IT DOESN'T SAY "WE DISAGREE WITH

11    RESQNET."

12          THEY ARE ENTIRELY CONSISTENT, THE TWO

13    CASES, AND THE RESQNET CASE IS DEAD-ON DIRECTLY

14    RELEVANT TO THE CLAIM LANGUAGE HERE.

15          WHEN YOU HAVE SOMETHING THAT SAYS A

16    PLURALITY OF SOMETHING, THAT JUST MEANS TWO OR

17    MORE.

18          AND THE CLAIM GOES ON TO TELL YOU WHAT,

19    WHAT IS WITHIN THAT PLURALITY.  SO EVERYTHING

20    WITHIN THAT PLURALITY HAS TO BE -- HAS TO HAVE THE

21    CHARACTERISTICS OF THE CLAIM.

22          BUT IN A COMPRISING CLAIM, SUCH AS THIS

23    ONE -- AND THE RESQNET CASE MAKES THIS VERY

24    CLEAR -- AS LONG AS YOU HAVE A PLURALITY, TWO OR

25    MORE, AND TWO OR MORE SATISFY THE CHARACTERISTICS,

1    YOU COULD HAVE A THIRD, A FOURTH, AN INDEFINITE

2    NUMBER THAT DO SOMETHING ELSE AND THAT DO NOT HAVE

3    THE CHARACTERISTICS OF THE CLAIM.

4         THE CLAIM SIMPLY REQUIRES TWO OR MORE,

5    AND OF THAT TWO OR MORE THAT ARE IDENTIFIED, YOU

6    HAVE TO HAVE TWO OR MORE -- EACH OF THAT TWO OR

7    MORE HAVE TO HAVE CERTAIN CHARACTERISTICS.

8         THERE IS NOTHING IN THE CLAIM, NOTHING IN

9    RESQNET, NOTHING IN THE OTHER CASE TO WHICH

10   MR. PRICE REFERRED THAT SUGGESTS A DIFFERENT

11   INTERPRETATION.

12        THE COURT:  OKAY.  THANK YOU.

13        LET'S GO TO IRREPARABLE HARM.

14        MR. SHIELDS:  YOUR HONOR, MAY I HAVE AN

15   OPPORTUNITY TO ADDRESS YOUR HONOR'S QUESTION ABOUT

16   LONGE?  UNLESS I DON'T NEED TO?  THEN I'M HAPPY TO

17   SIT DOWN.

18        THE COURT:  IS IT GOING TO BE ANYTHING

19   BEYOND WHAT YOU'VE ALREADY BRIEFED?

20        MR. SHIELDS:  YES, BECAUSE THIS IS AN

21   ARGUMENT THAT THEY MADE FOR THE FIRST TIME IN

22   REPLY, SO WE HAVEN'T HAD A CHANCE TO RESPOND TO IT.

23        THE COURT:  OKAY.  JUST VERY BRIEFLY,

24   PLEASE.

25        MR. SHIELDS:  OKAY.  WHAT MR. KREVITT

1    JUST SAID IS LONGE DOES NOT DISCLOSE DISPLAYING THE

2    CURRENT CHARACTER STRING IN TWO AREAS, AND THAT'S

3    NOT RIGHT.

4            CAN WE SEE SLIDE 27 PLEASE?

5            THIS IS FROM THE PROSECUTION HISTORY.

6            THE COURT:  DO YOU HAVE A HAND OUT?

7            MR. SHIELDS:  YES.  CAN WE GET THE

8    BINDERS?

9            HOW MANY WOULD YOUR HONOR LIKE?

10           THE COURT:  WELL, HAVE YOU SHOWN THEM TO

11   APPLE?

12           MR. KREVITT:  NO, YOUR HONOR.

13           THE COURT:  IF I COULD TAKE ONE AND IF

14   YOU COULD GIVE TWO TO THE LAW CLERKS.

15           WHAT NUMBER DID YOU SAY?

16           MR. SHIELDS:  27, IN THE '172 SECTION.

17           THE COURT:  OKAY.

18           MR. SHIELDS:  THIS IS FROM THE

19   PROSECUTION HISTORY, AND THIS IS WHAT CAUSED APPLE

20   TO TRY TO AMEND AROUND LONGE.

21           THESE WERE THE PTO'S FINDINGS, AND IT

22   DISCUSSES A NUMBER OF FINDINGS, INCLUDING, IN THE

23   MIDDLE OF THAT PARAGRAPH, THE CURRENT CHARACTER

24   STRING IS DISPLAYED TWICE.

25           NOW, WHAT MR. KREVITT SAID IS, "WELL,

69

1    LOOK AT FIGURE 1B, AND IT DOESN'T APPEAR TWICE IN

2    FIGURE 1B," AND I AGREE WITH THAT.  IT DOESN'T

3    APPEAR TWICE IN FIGURE 1B.

4           BUT THE FIGURE IS ONLY ONE EXEMPLARY

5    EMBODIMENT OF LONGE, AND IF ONE READS THE FULL

6    DISCLOSURE OF LONGE, YOU COME TO THE SAME

7    CONCLUSION THAT THE PTO DID, WHICH IS THE CURRENT

8    CHARACTER STRING IS DISPLAYED TWICE.

9           WHAT APPLE SAYS IS, WELL, ALL OF THE TEXT

10   EDITING, THE CURRENT CHARACTER STRING IS ENTERED IN

11   THIS SECOND AREA HERE, THIS LITTLE WINDOW, AND NOT

12   THE BIG BOX THAT HAS ALL THE TEXT IN IT.

13          AND THAT IS -- FOR ONE THING, THAT WOULD

14   BE A VERY DIFFICULT DEVICE TO USE IF EVERY WORD

15   THAT YOU HAD TO WRITE APPEARED ONLY IN THIS LITTLE

16   WINDOW AND NOT IN THE FULL CONTEXT OF WHAT YOU'RE

17   WRITING.

18          AND IT'S ALSO NOT WHAT LONGE SAYS.

19          GO TO SLIDE 31, PLEASE, CHARLES.

20          WHAT LONGE TEACHES IS AN UPPER OUTPUT

21   TEXT REGION -- THAT'S THAT BIG BOX OF TEXT -- THAT

22   DISPLAYS THE TEXT ENTERED BY THE USER AND SERVES AS

23   A BUFFER FOR TEXT INPUT AND EDITING.

24          THE TEXT IS INPUT IN THAT BOX, AND IT

25   APPEARS IN THE SECOND AREA.

70

1           GO TO SLIDE 36, PLEASE.

2           AND APPLE'S ARGUMENT IS, WELL, THE TEXT

3     CAN NEVER BE REPLACED BECAUSE IT DIDN'T EXIST IN

4     THE FIRST BOX TO BEGIN WITH.

5           NOT ONLY DOES LONGE TEACH EDITING AND

6     ENTERING IN THAT FIRST BOX, IT ALSO TEACHES

7     REPLACING.  IT DESCRIBES THAT SELECTING ONE OF THE

8     NEW CANDIDATE OBJECTS REPLACES THE PREVIOUSLY

9     OUTPUT WORD.

10          IN OTHER WORDS, THERE'S A WORD IN THE

11    FIRST TEXT BOX, THE USER CAN SELECT IT, EDIT,

12    SELECT A DIFFERENT RECOMMENDED WORD, AND REPLACE

13    THE OUTPUT WORD IN THE FIRST AREA.

14          SO LONGE DOES TEACH DISPLAYING THE

15    CURRENT CHARACTER STRING IN TWO AREAS.

16          AND I DON'T THINK APPLE DISPUTES IT

17    TEACHES USING PUNCTUATION AS A DELIMITER, WHICH OF

18    COURSE IS THE LIMITATION OF CLAIM 27.

19          THE COURT:  ALL RIGHT.  THANK YOU.

20          MR. KREVITT, IT DOES SAY CURRENT

21    CHARACTER STRING IS DISPLAYED TWICE.

22          MR. KREVITT:  YOUR HONOR, IT DOES SAY

23    THAT, YOUR HONOR, AND WHAT MR. SHIELDS DID NOT TELL

24    YOU IS THAT APPLE SPECIFICALLY DISAGREED WITH THAT

25    IN ITS RESPONSE, DID NOT AMEND CLAIMS BECAUSE OF

1    THAT, DISAGREED WITH THAT STATEMENT BECAUSE IT'S

2    CLEARLY INCORRECT.

3              YOUR OWN EYES DON'T -- YOUR OWN EYES SHOW

4    YOU WHAT THE FIGURE SHOWS.

5              THE EXAMINER GOT THAT WRONG.  WE DID NOT

6    AGREE WITH IT.  WE SAID SO AT THE TIME.

7              AND SO TO QUOTE THAT PORTION WITHOUT

8    NOTING THAT WE DISAGREED AND THE CLAIMS WERE

9    ALLOWED ANYWAYS IS MISLEADING.

10             THE SECOND THING, YOUR HONOR, QUICKLY,

11   WHICH IS ALSO HIGHLY MISLEADING, IS THE SECOND

12   POINT THAT MR. SHIELDS REFERRED TO YOU ABOUT

13   REPLACING WAS NOT TALKING ABOUT A CURRENT CHARACTER

14   STRING AT ALL.

15             IT'S TALKING ABOUT GOING BACK UP INTO

16   TEXT THAT YOU ALREADY WROTE, BACK INTO A SECTION.

17   IT'S THE WORD EDITING FEATURE AND BEING ABLE TO GO

18   INTO THE TEXT AND MAKE CHANGES.

19             AND WHEN YOU DO THAT, YOU ALREADY HAVE

20   THE WORD IN THE TEXT THAT YOU WROTE A WHILE AGO,

21   AND THEN YOU HAVE THE WORD IN A DIFFERENT PLACE.

22             IT IS NOT AT ALL ABOUT THE CURRENT

23   CHARACTER STRING.  THE CLAIMS THEMSELVES REQUIRE

24   THE CURRENT CHARACTER STRING AS YOU ARE TYPING.

25             THAT IS NOT WHAT HAPPENS IN THE WORD

1    EDITING SECTION TO WHICH MR. SHIELDS JUST REFERRED.

2            THEY ARE PLUCKING OUT RANDOM PARTS OF

3    LONGE THAT HAVE NOTHING TO DO WITH THE FIGURES THAT

4    I -- THAT YOU SAW.

5            THE EXAMINER ALLOWED ALL OF THE CLAIMS

6    BECAUSE LONGE CLEARLY DOES NOT DISCLOSE IT.

7            AND MR. SHIELDS ALSO SAID THAT LONGE

8    DISCLOSES PUNCTUATION AS A DELIMITER AND THAT'S

9    WHAT CLAIM 27 REQUIRES.

10           THAT'S NOT TRUE.  CLAIM 27 REQUIRES

11   APPENDING PUNCTUATION, AND THE LONGE REFERENCE DOES

12   NOT DISCLOSE THAT.  THERE IS NO DISCLOSURE OF IT.

13           SO THE LONGE REFERENCE, YOUR HONOR, WAS

14   CONSIDERED BY THE PATENT OFFICE, THE CLAIMS WERE

15   ALLOWED FOR THE REASONS THAT WE'VE DISCUSSED.  THE

16   CURRENT CHARACTER STRING CLEARLY DOESN'T APPEAR IN

17   TWO PLACES.  IT'S NEVER REPLACED.  IT CANNOT BE

18   REPLACED BECAUSE IT DOESN'T EXIST THERE, AS THE

19   FIGURES THAT WERE THERE SHOWED A MOMENT AGO, YOUR

20   HONOR.

21           THE COURT:  YOU KNOW, I HAD ONE MORE

22   THOUGHT ON -- IF YOU'RE GOING TO DO A TRO FOR

23   JUNE 21, THEN I'M GOING TO GIVE APPLE A HOBSON'S

24   CHOICE.

25           EITHER WE GO FORWARD WITH YOUR SUMMARY

1    JUDGMENT HEARING, WHICH IS ALSO SET FOR JUNE 21 AND

2    ALL YOUR DAUBERT MOTIONS -- YOU'RE GOING TO PICK.

3    YOU'RE GOING TO PICK EITHER YOU GO FORWARD WITH

4    YOUR TRO OR YOU GO FORWARD WITH YOUR SUMMARY

5    JUDGMENT MOTIONS AND YOUR DAUBERT HEARINGS ON YOUR

6    EARLIER FILED CASE.

7              I JUST DON'T HAVE THE HUMAN BANDWIDTH TO

8    BE ABLE TO DO BOTH IN THE NEXT TWO WEEKS.  OKAY?

9              SO YOU CAN TALK TO YOUR CLIENT AND

10   DECIDE, EITHER YOU WANT THE TRO ON THE

11   GALAXY S III, OR YOU WANT TO GO FORWARD WITH YOUR

12   SUMMARY JUDGMENT ON YOUR EARLIER FILED CASE.

13             AND IF WE BUMP THE SUMMARY JUDGMENT ON

14   THE EARLIER FILED CASE, IT WILL PROBABLY BUMP YOUR

15   TRIAL DATE.

16             SO I'M SORRY, BUT I JUST DON'T HAVE THE

17   HUMAN ABILITY TO GET ALL OF THAT DONE AND GET AN

18   ORDER OUT ON THE PRELIMINARY INJUNCTION MOTIONS.

19   OKAY?

20             SO LET YOUR CLIENT KNOW AND MAKE YOUR

21   CHOICE.

22             MR. KREVITT:  YOUR HONOR, MAY I MAKE ONE

23   QUICK SUGGESTION IN THAT REGARD?

24             THE COURT:  YEAH.

25             MR. KREVITT:  IT IS POSSIBLE -- AND I

74

1    KNOW HOW MUCH CARE THAT YOUR HONOR PUTS INTO THE

2    DECISIONS, WE SAW THAT WITH THE PRIOR P.I. ORDER --

3    TO ISSUE A DECISION, EXCUSE ME, AN ORDER WITH A

4    DECISION TO FOLLOW.

5            BECAUSE WHAT WE NEED, YOUR HONOR,

6    ASSUMING YOUR HONOR AGREES, OF COURSE, WITH US ON

7    THE PRELIMINARY INJUNCTION, WHAT WE NEED IS TO STOP

8    THE LAUNCH OF THE S III, AND I'VE EXPLAINED THAT.

9    I WON'T REPEAT THAT.

10           THE COURT:  YEAH, PLEASE DON'T.

11           MR. KREVITT:  I UNDERSTAND, YOUR HONOR.

12           THE COURT:  BECAUSE I HAVE 30 MINUTES

13   LEFT AND WE HAVE TO ADDRESS --

14           MR. KREVITT:  BUT I WAS JUST SEEKING YOUR

15   HONOR'S GUIDANCE.  IS THAT SOMETHING YOUR HONOR

16   WOULD CONSIDER, WHICH WOULD ALLOW US TO PROCEED

17   WITH THE TEMPORARY RESTRAINING ORDER, AS WELL AS

18   KEEP THE CURRENT SCHEDULE FOR THE SUMMARY JUDGMENTS

19   AND DAUBERTS?

20           THE HOBSON'S CHOICE TO WHICH YOUR HONOR

21   IS PUTTING US -- AND I UNDERSTAND IT -- IS A CHOICE

22   THAT SAMSUNG IS CREATING BY HAVING HAD NOTICE SINCE

23   FEBRUARY OF THESE PATENTS AND THIS PATENT

24   INFRINGEMENT AS GOING FORWARD WITH A DEVICE THAT,

25   IN MATERIAL RESPECTS, IS IDENTICAL, AND TO PUT US

```
1    INTO THE POSITION WHERE WE WOULD HAVE TO BUMP A

2    TRIAL DATE OR -- AND ALLOW MASSIVE IRREPARABLE HARM

3    IS VERY DIFFICULT AND AN UNFAIR POSITION FOR US TO

4    BE IN UNDER THE CIRCUMSTANCES.

5              IT'S NOT YOUR HONOR'S CREATION, OF

6    COURSE, BUT IT'S THE CREATION OF SAMSUNG

7    DELIBERATELY PROCEEDING, ALWAYS ONE STEP AHEAD, NO

8    COURT CAN STOP IT BEFORE IT JUST LAUNCHES ANOTHER

9    PRODUCT AND ANOTHER PRODUCT AND THE IRREPARABLE

10   HARM --

11             THE COURT:  I HEAR YOU AND I -- AND I

12   WISH I WAS NOT SO LIMITED IN RESOURCES, BUT --

13             MR. KREVITT:  IF YOUR HONOR WOULD

14   ENTERTAIN, NOT NOW, BUT A -- IF WE CAN --

15             THE COURT:  JUST THINK ABOUT IT.

16             MR. KREVITT:  -- HUDDLE AND MAKE A

17   SUGGESTION IN THAT REGARD.

18             THE COURT:  YOU CAN THINK ABOUT IT,

19   THAT'S RIGHT.

20             I ASKED YOU TO MEET AND CONFER AND FILE

21   SOMETHING TOMORROW, BUT I JUST DID WANT TO GIVE YOU

22   SOME NOTICE THAT I CANNOT BE AN APPLE V. SAMSUNG

23   JUDGE FULL TIME.

24             MR. KREVITT:  I UNDERSTAND, YOUR HONOR.

25   OF COURSE.
```

1           THE COURT:  SO I CANNOT HANDLE ALL OF

2     YOUR SUMMARY JUDGMENT MOTIONS AND ALL YOUR DAUBERT

3     MOTIONS IN TWO WEEKS, THIS P.I., AND A THIRD TRO IN

4     THE NEXT TWO WEEKS WHEN I HAVE ANOTHER, YOU KNOW,

5     350 CIVIL CASES AND 100 CRIMINAL CASES.  I CANNOT

6     DO THAT.

7           MR. KREVITT:  I UNDERSTAND THAT.

8           THE COURT:  SO MAKE YOUR CHOICE.

9           LET'S GO TO IRREPARABLE HARM THEN.

10          MR. KREVITT:  VERY WELL.

11          WITH RESPECT TO IRREPARABLE HARM, IF YOUR

12    HONOR WERE TO AGREE WITH US AND ISSUE A PRELIMINARY

13    INJUNCTION AND YOUR HONOR WERE TO ISSUE AN ORDER

14    WITH A DECISION TO FOLLOW, THE TIMING OF THAT WOULD

15    BE VERY IMPORTANT, BECAUSE EVEN IF THE S III --

16          THE COURT:  OKAY, I'M SORRY.  WE'VE GOT

17    TO MOVE ON.

18          MR. KREVITT:  NO, I'M --

19          THE COURT:  OKAY?  WE'VE GOT TO MOVE ON.

20    WE SPENT WAY MORE TIME THAN THE FIVE MINUTES I HAD

21    ALLOCATED TO THE S III.

22          MR. KREVITT:  OKAY, YOUR HONOR.

23          THE COURT:  SO LET ME ASK, WITH REGARD

24    TO -- YOU'VE PROVIDED THE EASE OF USE CONSUMER

25    DATA, BUT HAVE NOT SPECIFIED WHAT FEATURES FALL

77

1     INTO EASE OF USE, AND SAMSUNG SAYS, WELL, THERE ARE

2     HUNDREDS OF FEATURES THAT FALL WITHIN EASE OF USE.

3           SO TELL ME -- ARE YOU ARGUING THAT THE

4     COURT AGGREGATE FEATURES FOR THE NEXUS?  BECAUSE --

5     WELL, LET ME FIRST ASK, ARE YOU CONCEDING THAT --

6     SEPARATE THE SIRI, BUT THE THREE EASE OF USE

7     PATENTS, ARE YOU CONCEDING THAT EACH INDIVIDUALLY,

8     ON ITS OWN, CANNOT FORM THE NEXUS FOR IRREPARABLE

9     HARM AND THAT I NEED TO SORT OF DO SOME AGGREGATION

10    OF EASE OF USE FEATURES DEFINED IN NEXUS?

11          MR. KREVITT:  NO, YOUR HONOR.

12          I UNDERSTAND WHY YOUR HONOR WOULD ASK

13    THAT QUESTION, BECAUSE IN SAMSUNG'S BRIEF, THEY

14    LUMPED THEM ALL TOGETHER, CALLED THEM EASE OF USE,

15    AND TRIED TO DISMISS THEM THAT WAY.

16          BUT THAT'S NOT AT ALL OUR POSITION, YOUR

17    HONOR.

18          OUR POSITION IS THAT EACH ALONE,

19    INDIVIDUALLY, SATISFIES THE NEXUS REQUIREMENT.

20          THE COURT:  WHAT'S YOUR PROOF?  WHAT'S

21    YOUR PROOF FOR THAT?  BECAUSE YOUR CONSUMER SURVEYS

22    JUST DEAL WITH EASE OF USE AS A CATEGORY AND NOT AS

23    SPECIFIC -- OTHER THAN SIRI, I'M TAKING SIRI OUT.

24    LET'S JUST GO TO WHO SAID THAT A CUSTOMER WILL BUY

25    YOUR PRODUCT FOR THE SLIDING UNLOCK FEATURE?

1           MR. KREVITT:  YOUR HONOR, WE HAVE

2    SUBSTANTIAL EVIDENCE WHICH WE PUT IN THE RECORD.

3           THE COURT:  OKAY.

4           MR. KREVITT:  SHOULD I ADDRESS THAT ONE?

5           THE ANSWER, YOUR HONOR -- IT SOUNDS LIKE

6    YOU HAVE MORE OF A GENERAL QUESTION, SO LET ME

7    ANSWER IT THIS WAY.

8           THE COURT:  OKAY.

9           MR. KREVITT:  THE FEDERAL CIRCUIT AND

10   THIS COURT'S PRIOR ORDER MAKE CLEAR THAT IN ORDER

11   TO SATISFY THE NEXUS REQUIREMENT, THERE HAS TO BE A

12   CAUSAL LINK, THERE HAS TO BE A CONNECTION BETWEEN

13   THE FEATURE THAT IS COVERED BY THE PATENT AND THE

14   DEMAND.  IT HAS TO BE IMPORTANT SOMEHOW TO THE

15   FUNCTIONING OF THE DEVICE.

16           THE FEATURE THAT IS COVERED BY -- EACH OF

17   THE FEATURES THAT ARE COVERED BY OUR PATENTS ARE

18   IMPORTANT, CORE FEATURES AND FUNCTIONALITY THAT, IN

19   FACT, ARE IMPORTANT TO THE DEMAND OF THE DEVICE.

20           AND ONE IMPORTANT THING AT THE OUTSET,

21   YOUR HONOR.  IMPORTANCE TO DEMAND GOES -- THERE ARE

22   TWO SIDES OF THAT COIN IN THE FOLLOWING RESPECT.

23           OBVIOUSLY A FEATURE CAN SATISFY THE NEXUS

24   REQUIREMENT IF IT AFFIRMATIVELY DRIVES DEMAND,

25   PEOPLE GOING TO THE STORE AND ASKING FOR THE DEVICE

1    BECAUSE OF A PARTICULAR FEATURE.

2           BUT THAT'S NOT REQUIRED.  THAT CAN'T BE

3    REQUIRED WHEN YOU HAVE COMPLICATED DEVICES WITH

4    MANY, MANY FEATURES, AND THE FEDERAL CIRCUIT DIDN'T

5    SAY SO.

6           A FEATURE CAN ALSO SATISFY THE NEXUS

7    REQUIREMENT IF ITS REMOVAL WOULD SUPPRESS DEMAND,

8    IF ITS REMOVAL WOULD RENDER THE PRODUCT LESS

9    VALUABLE.

10          THAT'S EXACTLY WHAT THE FEDERAL CIRCUIT

11   IS TALKING ABOUT WHEN IT SAYS THAT ITS REMOVAL

12   WOULD IMPACT THE HARM ON THE PLAINTIFF.

13          IF THEY WERE TO REMOVE THE FEATURES THAT

14   ARE COVERED BY OUR PATENT, EACH ONE, FROM THE

15   GALAXY NEXUS, IT WOULD HAVE A SUBSTANTIAL IMPACT ON

16   THE FUNCTIONALITY OF THE DEVICE AND, AS A

17   CONSEQUENCE, A SUBSTANTIAL IMPACT ON THE DEMAND FOR

18   THE DEVICE.

19          TAKE -- WE CAN DO IT IN ANY ORDER YOU

20   WANT, BUT TAKE AUTO CORRECT, YOUR HONOR.  THERE

21   IS -- I'M TRYING TO DO JUST THE THREE, NOT SIRI FOR

22   THE MOMENT.

23          THE COURT:  UM-HUM.

24          MR. KREVITT:  THE AUTO CORRECT, THERE IS

25   AMPLE EVIDENCE THAT HAS BEEN SUBMITTED TO YOUR

1    HONOR, SUBSTANTIAL EVIDENCE, DOCUMENTS, DEPOSITION

2    TESTIMONY, THAT TYPING ON GLASS IS DIFFICULT FOR

3    SOME PEOPLE, PARTICULARLY FIRST TIME USERS.

4    THEY'RE RELUCTANT TO DO IT HAVING BEEN USED TO

5    TYPING ON TACTILE KEYS, AND THAT THEY MAKE MISTAKES

6    AND THAT THE AUTO CORRECT FUNCTIONALITY IS CRITICAL

7    TO THE ACCEPTANCE OF THE DEVICE.

8         THERE'S AMPLE EVIDENCE IN THE RECORD,

9    PUBLIC EVIDENCE.  THE WALL STREET JOURNAL, YOUR

10   HONOR, WROTE AN ARTICLE ABOUT THE IPHONE WHEN IT

11   FIRST CAME OUT AND SAID THAT THERE WAS DEEP

12   SKEPTICISM BECAUSE OF THE KEYBOARD BEING A GLASS

13   KEYBOARD, DEEP SKEPTICISM THAT WAS OVERCOME BECAUSE

14   OF THE AUTO CORRECT FEATURE.

15        THE NEW YORK TIMES, THE SAME THING.  THEY

16   THOUGHT THAT IT WAS A MISTAKE TO HAVE A GLASS

17   KEYBOARD, A VIRTUAL KEYBOARD BECAUSE THERE WOULD BE

18   MISTAKES.

19        AND THE ONLY REASON IT WAS ACCEPTABLE,

20   YOUR HONOR, IS BECAUSE OF THE AUTO CORRECT FEATURE.

21        THERE IS AMPLE EVIDENCE, EVERY TOUCH

22   SCREEN DEVICE HAS THE AUTO CORRECT FEATURE.  IT'S

23   THAT IMPORTANT, YOUR HONOR.

24        FROM THE VERY BEGINNING OF THE IPHONE,

25   ALL OF THE EVIDENCE SUPPORTS THE PROPOSITION THAT

```
1    IT'S AN IMPORTANT FEATURE AND SAMSUNG HAS NEVER

2    SAID OTHERWISE.

3             THE COURT:  OKAY.  LET ME ASK YOU --

4    LET'S ASSUME THAT I'M NOT CONVINCED THAT, IF YOU

5    TAKE OUT SIRI, FOR THE OTHER THREE EASE OF USE

6    FEATURES THAT THERE IS SUFFICIENT EVIDENCE THAT

7    THERE IS A NEXUS BETWEEN EACH OF THE THREE, SLIDE

8    TO UNLOCK, WORD SEARCH, THE INTERFACE LINKING, THE

9    STRUCTURE, FOR IRREPARABLE HARM.

10            THEN ARE YOU SUGGESTING THAT THE COURT

11   AGGREGATES THOSE?  OR NOT?

12            MR. KREVITT:  YOUR HONOR, IF -- SO IF I

13   NEED TO ASSUME FOR PURPOSES OF THIS QUESTION THAT

14   YOUR HONOR IS NOT CONVINCED AS TO THOSE THREE

15   PATENTS INDIVIDUALLY, THEN ABSOLUTELY YOUR HONOR

16   CAN AND SHOULD CONSIDER THE INTELLECTUAL PROPERTY

17   THAT IS BEING INFRINGED, THE EXTENT TO WHICH THAT

18   COLLECTION OF INTELLECTUAL PROPERTY, IN THE DEVICE,

19   IS CONTRIBUTING TO THE SALES AND DEMAND AND THE

20   OTHER REQUIREMENTS FOR THE NEXUS.

21            IS IT IMPORTANT TECHNOLOGY, AS YOUR HONOR

22   SAID?  IS IT CORE FUNCTIONALITY?

23            AND IF IT IS, YOUR HONOR ABSOLUTELY

24   SHOULD FIND IRREPARABLE HARM.

25            DON'T FORGET, YOUR HONOR, IF I MAY -- I
```

1    WANT TO MAKE SURE I FOCUS ON THE QUESTIONS THAT ARE

2    OF MOST INTEREST TO YOUR HONOR, BUT UNDERSTAND THE

3    CONTEXT IN WHICH WE'RE TALKING ABOUT THIS.

4         YOUR HONOR IN THE PRIOR P.I. RULING HAS

5    ALREADY FOUND VIRTUALLY EVERY FACT THAT SUPPORTS

6    IRREPARABLE HARM.  THE ONLY QUESTION LEFT IS THE

7    NEXUS.

8         AND, IN FACT, SAMSUNG'S DOCUMENTS SUPPORT

9    EVERYTHING YOUR HONOR PREVIOUSLY FOUND, THAT THERE

10   IS SUBSTANTIAL COMPETITION BETWEEN APPLE AND

11   SAMSUNG; IT'S A CRITICAL JUNCTURE IN THE NEXT --

12   CERTAINLY DURING THE PENDENCY OF THIS LAWSUIT IN

13   WHICH PEOPLE MOVE TO SMARTPHONES, STICKINESS IN THE

14   MARKETPLACE WHICH WILL MAKE PEOPLE STAY ON THE

15   OPERATING SYSTEM, ALL OF THOSE.

16        SO THE ONLY QUESTION THEN, YOUR HONOR,

17   HAVING FOUND ALL OF THOSE ISSUES ON IRREPARABLE

18   HARM, IS DOES THE INTELLECTUAL PROPERTY THAT'S IN

19   THE DEVICE, IS IT SUFFICIENTLY TIED TO THAT?

20        AND THAT'S THE QUESTION ON WHICH YOUR

21   HONOR IS NOW FOCUSSED.

22        IF YOUR HONOR CONCLUDES THAT EACH

23   INDIVIDUAL FEATURE, TAKEN ALONE, DOES NOT SATISFY

24   THE NEXUS, THEN THERE IS -- WE RESPECTFULLY SUBMIT

25   THERE IS OVERWHELMING EVIDENCE THAT THOSE FEATURES

1    TAKEN TOGETHER THAT HAVE BEEN ICONIC, CRITICAL

2    FEATURES SINCE THE IPHONE CAME OUT, DO CONTRIBUTE

3    TO THE HARM, THEY CAUSE THE HARM, THEY DRIVE THE

4    DEMAND.  THEY'RE CORE, CRITICAL FUNCTIONALITY.

5    THERE'S A CAUSAL LINK BETWEEN THE HARM AND THOSE

6    FEATURES.

7              THE COURT:  LET ME ASK, THERE HAS TO BE A

8    NEXUS BETWEEN THE PATENTED FEATURE AND THE

9    IRREPARABLE HARM, BUT I'M NOT CLEAR ON HOW MUCH

10   NEXUS IS REQUIRED.

11             DOES IT HAVE TO BE THE SOLE REASON PEOPLE

12   ARE BUYING THE PRODUCT?  DOES IT HAVE TO BE

13   IMPORTANT AND CONTRIBUTING TO THE SALES?  DOES IT

14   HAVE TO BE THE CORE FUNCTIONALITY?

15             TELL ME -- WHY DON'T YOU ADDRESS HOW MUCH

16   NEXUS IT HAS TO BE?

17             MR. KREVITT:  IT CLEARLY DOESN'T HAVE TO

18   BE THE SOLE REASON, IT CAN'T BE THE SOLE REASON,

19   AND WE KNOW THAT FROM WHAT THE FEDERAL CIRCUIT DID

20   IN AFFIRMING YOUR HONOR'S RULING WITH RESPECT TO

21   THE TAB PRODUCT.

22             THERE'S NO SUGGESTION THAT THE DESIGN OF

23   THE TAB IS THE SOLE REASON FOR DEMAND, AND YET THE

24   FEDERAL CIRCUIT FOUND THAT THERE WAS IRREPARABLE

25   HARM, AND THAT JUST MAKES SENSE.  IT'S AN IMPORTANT

1    FEATURE.

2              WHAT THE FEDERAL CIRCUIT SAID, WHAT YOUR

3    HONOR SAID AND WHICH WAS AFFIRMED, IS THAT THE

4    TECHNOLOGY HAS TO CONTRIBUTE TO THE HARM.  IT HAS

5    TO BE IMPORTANT TECHNOLOGY.  IT HAS TO BE RELEVANT

6    TO THE DEMAND OF THE DEVICE.

7              BUT HERE'S AN IMPORTANT POINT, YOUR

8    HONOR.  AGAIN, IT DOESN'T HAVE TO BE -- THE FEDERAL

9    CIRCUIT DIDN'T SAY IT HAD TO BE, AND YOUR HONOR

10   DIDN'T SAY IT HAD TO BE, THE REASON SOMEBODY GOES

11   INTO A STORE AND BUYS A PRODUCT.

12             AND IF I MAY GIVE JUST ONE QUICK EXAMPLE

13   IN THAT REGARD.

14             THE COURT:  OKAY.

15             MR. KREVITT:  AIR CONDITIONING IN A

16   CAR -- OUR EXPERT GAVE THIS EXAMPLE, SO I MENTION

17   IT, YOUR HONOR.

18             AT THIS POINT, NOBODY WALKS INTO A CAR

19   DEALERSHIP, OR VIRTUALLY NOBODY WALKS INTO A CAR

20   DEALERSHIP AND ASKS FOR A CAR WITH AIR

21   CONDITIONING.  CAR DEALERSHIPS DON'T DO SURVEYS

22   ABOUT HOW IMPORTANT AIR CONDITIONING IS OR ISN'T.

23             TWENTY YEARS AGO WHEN SOME CARS HAD IT

24   AND SOME CARS DIDN'T, IT WAS A BIG DRIVER OF SALES.

25   NOW, NOT A BIG DRIVER OF SALES.

85

1           BUT IF YOU REMOVED AIR CONDITIONING FROM

2     A CAR, IF YOU WALKED INTO A CAR DEALERSHIP AND

3     ASKED FOR A CAR AND THEY SAID, "WELL, WE'VE GOT

4     THIS GREAT CAR, BUT YOU NEED TO KNOW IT DOESN'T

5     HAVE AIR CONDITIONING," THAT MIGHT HAVE AN IMPACT

6     ON YOUR INTEREST IN THE DEVICE.  IT MIGHT HAVE AN

7     IMPACT ON THE DEMAND FOR THE PRODUCT.

8           SO WHAT THE COURT NEEDS TO LOOK AT, YOUR

9     HONOR, IS WHAT DOES THE DEVICE LOOK LIKE IF YOU

10    WERE TO TAKE OUT AUTO CORRECT, FOR EXAMPLE?  WHAT

11    DOES THE GALAXY NEXUS -- HOW DOES IT FUNCTION?

12    WHAT'S ITS USABILITY?  IS IT AS GOOD A PRODUCT?

13    WOULD THE DEMAND BE AS GREAT FOR THE GALAXY NEXUS

14    IF AUTO CORRECT WEREN'T IN THE DEVICE?

15          AND THE RECORD EVIDENCE IS CRYSTAL CLEAR,

16    YOUR HONOR, THAT AUTO CORRECT IS CRITICALLY

17    IMPORTANT.

18          TAKE UNLOCKING THE DEVICE --

19          THE COURT:  DO YOU HAVE -- DO YOU HAVE A

20    SLIDE ON WHAT EVIDENCE IS NOT SORT OF EASE OF

21    USE --

22          MR. KREVITT:  YES.

23          THE COURT:  -- EVIDENCE, BUT SPECIFIC TO

24    EACH OF THOSE THREE?

25          MR. KREVITT:  YES.

86

1              THE COURT:  OKAY.

2              MR. KREVITT:  MAY I HAND IT UP?

3              THE COURT:  SURE.

4              MR. KREVITT:  WE HAD ASSUMED, YOUR HONOR,

5    THAT WE WERE NOT GOING TO BE SHOWING CONFIDENTIAL

6    INFORMATION, SO I PREPARED BINDERS.  IF I MAY HAND

7    IT UP?

8              THE COURT:  YOU CAN EVEN JUST CITE TO

9    WHATEVER YOU THINK IT IS, BECAUSE I -- WELL, LET ME

10   ASK YOU, WITH AN EASE OF USE CUSTOMER SURVEY DATA,

11   THERE IS -- YOU WOULD AGREE THAT THERE'S NO

12   BREAKDOWN ON WHAT FEATURES COMPRISE EASE OF USE?

13   IS THAT CORRECT?

14             MR. KREVITT:  MAY I HAND THIS UP?

15             THERE IS SOME BREAKDOWN, YOUR HONOR.

16             THERE IS NOT BREAKDOWN WITH SLIDE TO

17   UNLOCK.  THERE IS NOT BREAKDOWN WITH THE AUTO

18   CORRECT, YOUR HONOR.

19             THE COURT:  SO THEN HOW --

20             MR. KREVITT:  BECAUSE, YOUR HONOR, THAT'S

21   NOT THE EVIDENCE ON WHICH WE'RE RELYING.  IT'S SOME

22   EVIDENCE ON WHICH WE'RE RELYING, BUT IT'S NOT THE

23   SOLE EVIDENCE ON WHICH WE'RE RELYING.

24             AND THAT'S WHAT MAKES SAMSUNG'S RESPONSE

25   IN THIS REGARD SO DISMISSIVE AND SO INADEQUATE.

1          SAMSUNG, WITH THE BACK OF THE HAND, SAID

2     "THESE ARE ALL EASE OF USE, ALL THE SURVEYS TALK

3     ABOUT EASE OF USE, AND THEREFORE WE DON'T HAVE

4     EVIDENCE."

5          THE COURT:  WHY SHOULD SURVEYS ON WHAT

6     APPLE'S CUSTOMERS WANT AND CARE ABOUT BE IMPUTED TO

7     SAMSUNG OR OTHER SMARTPHONE CUSTOMERS?  IT COULD BE

8     THAT YOU HAVE RATHER UNIQUE CUSTOMERS THAT ARE

9     LOOKING FOR SOMETHING DIFFERENT.

10          MR. KREVITT:  IT COULD BE, YOUR HONOR.

11          OUR EVIDENCE ISN'T LIMITED TO APPLE'S

12     SURVEYS IN ANY EVENT.

13          BUT DON'T FORGET, YOUR HONOR, WITH ALL

14     THE FEATURES IN A DEVICE, IN ORDER TO -- IT IS NOT

15     THE CASE THAT TO GET A PRELIMINARY INJUNCTION, WE

16     NEED TO FIND THE COLLECTION OF GALAXY NEXUS USERS

17     AND POLL THEM ON SPECIFIC FEATURES AND ASK WHICH

18     ARE IMPORTANT AND WHICH AREN'T IMPORTANT.

19          WE ARE ALLOWED, PARTICULARLY BECAUSE WE

20     COME IN FOR A PRELIMINARY INJUNCTION -- WE'RE

21     COMING IN WITH A TEMPORARY RESTRAINING ORDER,

22     POTENTIALLY, ON THE S III BEFORE IT'S LAUNCHED.

23          SO IT'S OFTEN THE CASE THAT BEFORE THE

24     PRODUCT IS EVEN LAUNCHED YOU'RE SEEKING PRELIMINARY

25     RELIEF.

1    SO WHAT WE NEED TO DO, YOUR HONOR, IS

2    LOOK AT ALL THE AVAILABLE EVIDENCE AND TRY TO

3    DETERMINE WHAT'S IMPORTANT AND WHAT ISN'T IMPORTANT

4    AND WHAT MIGHT BE RELEVANT TO SALES.

5    I DON'T THINK THERE IS ANY DISPUTE, YOUR

6    HONOR -- AND SAMSUNG WILL CORRECT ME -- BUT I DON'T

7    THINK THERE IS ANY DISPUTE THAT AN AUTO CORRECT

8    FEATURE IS CRITICALLY IMPORTANT.

9    I DON'T THINK THERE IS ANY DISPUTE ABOUT

10   THAT QUESTION, RIGHT FROM THE WALL STREET JOURNAL,

11   THE NEW YORK TIMES ARTICLE, AS I SAID, LONG AGO

12   FROM THE FIRST VIRTUAL KEYBOARD, THROUGH GOOGLE'S

13   CONFIDENTIAL INFORMATION, WHICH I DON'T WANT TO

14   REVEAL, BUT GOOGLE'S OWN CONFIDENTIAL INFORMATION

15   MAKES ABSOLUTELY CRITICALLY -- EXCUSE ME -- CRYSTAL

16   CLEAR HOW CRITICALLY IMPORTANT AUTO CORRECT IS.

17   THERE IS NO DISPUTE.

18   SO WE RESPECTFULLY SUBMIT, YOUR HONOR,

19   THAT THE QUESTION THIS COURT NEEDS TO ASK IS, DOES

20   THE GALAXY NEXUS INFRINGE OUR AUTO CORRECT PATENT?

21   AND IF THE GALAXY NEXUS INFRINGES OUR

22   AUTO CORRECT PATENT, THEN THE QUESTION THE COURT

23   NEEDS ASK IS, IS AUTO CORRECT IMPORTANT OR IS IT

24   NOT IMPORTANT?  WOULD THE GALAXY NEXUS BE AS

25   EFFECTIVE A DEVICE, WOULD THE SALES BE AS HIGH,

1    WOULD THE DEMAND BE AS GREAT FOR THE GALAXY NEXUS

2    WITHOUT AUTO CORRECT?

3            THE OVERWHELMING EVIDENCE THAT WE HAVE

4    SUBMITTED, YOUR HONOR, INCLUDING FROM SAMSUNG'S OWN

5    DOCUMENTS, DEMONSTRATES THAT THE GALAXY NEXUS WOULD

6    NOT BE A SUCCESSFUL PRODUCT.  NO TOUCH SCREEN

7    KEYBOARD WOULD BE A SUCCESSFUL PRODUCT WITHOUT AUTO

8    CORRECT.

9            AND I CAN QUICKLY WALK THROUGH JUST A FEW

10   DOCUMENTS, YOUR HONOR, IF YOU'D LIKE THAT, AND

11   PROVIDE EVIDENCE, BEYOND SURVEYS, BEYOND EASE OF

12   USE, THAT GO DIRECTLY TO THE QUESTION OF THESE

13   FEATURES AND WHY THESE FEATURES ARE IMPORTANT.

14           THE COURT:  LET ME ASK, UNDERSTANDING

15   THAT THERE ARE A LOT OF REASONS WHY A CONSUMER

16   MIGHT BUY A SPECIFIC SMARTPHONE, ISN'T IT JUST

17   SPECULATION THAT APPLE WOULD HAVE GOTTEN YET EVEN

18   MORE MARKET SHARE BUT FOR THE GALAXY NEXUS AND BUT

19   FOR THE SLIDING UNLOCK, QUESTION SEARCH BOX AND THE

20   OTHER TWO FEATURES?

21           MR. KREVITT:  I DON'T THINK SO AT ALL,

22   YOUR HONOR, AND THERE'S TWO QUESTIONS IN THERE.

23           THE FIRST IS, WOULD WE HAVE GOTTEN MORE

24   MARKET SHARE?

25           YOUR HONOR'S PRIOR PRELIMINARY INJUNCTION

1    RULING ANSWERS THAT QUESTION.  THESE PARTIES

2    COMPETE.  THEY COMPETE DIRECTLY.  THEY TAKE SALES

3    FROM EACH OTHER.

4              SAMSUNG'S OWN DOCUMENTS -- AND AGAIN,

5    YOUR HONOR, I KNOW I KEEP THREATENING TO DO IT, BUT

6    YOUR HONOR DOESN'T SEEM INTERESTED -- I CAN WALK

7    THROUGH DOCUMENT BY DOCUMENT.  SAMSUNG'S OWN

8    DOCUMENTS THAT MAKE CLEAR THAT ITS SINGULAR FOCUS

9    IS APPLE, TAKING MARKET SHARE FROM APPLE, AND THE

10   GALAXY NEXUS IS A KEY COMPONENT.

11             THE COURT:  I'M NOT DOUBTING THAT THEY

12   WANT IT.

13             MR. KREVITT:  BUT, YOUR HONOR, I'M MAKING

14   A DIFFERENT POINT, THAT, IN FACT, IT IS WORKING,

15   THAT THE -- SAMSUNG'S OWN EXPERT TESTIFIED THAT THE

16   GALAXY NEXUS TAKES SALES FROM APPLE.

17             SAMSUNG'S OWN EXPERT TESTIFIED THAT

18   THE -- THAT SOME PORTION OF GALAXY NEXUS USERS WILL

19   NEVER BUY AN IPHONE, EVER, BECAUSE OF STICKINESS,

20   BECAUSE ONCE YOU GET LOCKED INTO A PARTICULAR

21   OPERATING SYSTEM -- THIS IS EXACTLY WHAT YOUR HONOR

22   CORRECTLY FOUND LAST TIME IN THE PRIOR P.I. -- ONCE

23   YOU GET LOCKED INTO A PARTICULAR OPERATING SYSTEM,

24   YOU TEND TO STAY IN THAT OPERATING SYSTEM.  NOT 100

25   PERCENT, BUT A VERY, VERY HIGH PERCENT, A MUCH,

1    MUCH HIGHER PERCENT THAN SAMSUNG REPRESENTS IN ITS

2    BRIEF.

3            THE COURT:  LET ME ASK YOU, THE

4    GALAXY S III, YOUR POSITION IS IT HAS THE HIGHEST

5    NUMBER OF PRE-RELEASE ORDERS EVER.

6            BUT YOU'RE ALSO CONTENDING THAT THE

7    GALAXY NEXUS HAS BASICALLY THE SAME FEATURES, MINUS

8    ONE OF THE PATENTS; CORRECT?

9            NO.  THAT THE S III HAS ONE LESS FEATURE?

10           MR. KREVITT:  REAL PRECISE, YOUR HONOR.

11           THE COURT:  YEAH.

12           MR. KREVITT:  WHAT WE ARE SIMPLY SAYING

13   IS THAT IT HAS TWO IN EXACTLY THE SAME WAY IT MAY

14   HAVE THE OTHER TWO PATENTS, BUT BECAUSE WE WANTED

15   TO MOVE FORWARD ON THIS RECORD, WE DIDN'T WANT TO

16   ADD ANY NEW INFRINGEMENT ISSUES, ANY NEW ANALYSIS.

17           SO WE DON'T KNOW AS TO THE OTHER TWO,

18   YOUR HONOR.  WE --

19           THE COURT:  OKAY.

20           MR. KREVITT:  WE BELIEVE IT INFRINGES,

21   BUT WE DO NOT YET -- THAT IS NOT PART OF THE RECORD

22   THAT WE HAVE SUBMITTED TO YOUR HONOR.

23           THE COURT:  OKAY.  WELL, IF THOSE TWO

24   FEATURES WHICH YOU ALLEGE ARE NOT COLORABLY

25   DIFFERENT IN THE GALAXY S III AND THE GALAXY NEXUS

1    AND EXIST IN BOTH, THEN HOW DO YOU EXPLAIN THE

2    DIFFERENCE IN SALES, WHICH YOU SAY FOR THE S III

3    ARE OFF THE CHARTS, BIGGEST EVER, AND EVEN THOUGH

4    YOU DON'T AGREE WITH HOW ANEMIC THE SALES ARE OF

5    THE NEXUS AS SAMSUNG PORTRAYS, THEY'RE CLEARLY NOT

6    AS MUCH AS THE S III.

7            SO THERE MUST BE SOMETHING OTHER THAN THE

8    TWO OVERLAPPING PATENTED FEATURES THAT ARE THE

9    SUBJECT OF THIS MOTION; RIGHT?

10           I MEAN, HOW ARE YOU GOING TO EXPLAIN THE

11   DRAMATIC DIFFERENCE IN DEMAND FOR THOSE TWO SAME

12   FEATURES?

13           MR. KREVITT:  THERE -- THERE MUST BE SOME

14   OTHER REASONS THAT CONTRIBUTE TO THE SALES OF THE

15   S III.

16           THE COURT:  UM-HUM.

17           MR. KREVITT:  THAT'S TRUE, YOUR HONOR.

18           BUT THAT DOESN'T TAKE AWAY FROM THE

19   FACT -- AGAIN, AND THIS IS THE CRITICAL POINT --

20   THAT IF YOU WERE TO REMOVE THOSE FEATURES FROM THE

21   S III, THE SALES WOULD PLUMMET.  THAT'S THE POINT

22   WE ARE MAKING, YOUR HONOR.

23           THE ANALYSIS WITH THE NEXUS REQUIREMENT

24   THAT YOUR HONOR MUST ENGAGE IN IS, IF YOU TAKE THE

25   S III AND YOU REMOVE THE FEATURES, WHAT WOULD THE

93

1    IMPACT ON THE S III BE?

2            ONE OF THE PATENTS THAT WE TALKED ABOUT,

3    YOUR HONOR -- AND I KNOW YOU DON'T WANT TO TALK

4    ABOUT, FOR THE MOMENT, THE SIRI PATENT -- BUT ONE

5    OF THE PATENTS WE TALKED ABOUT WAS THE '647 PATENT,

6    THE ABILITY ON THE SCREEN TO TAP A PHONE NUMBER,

7    TAP AN E-MAIL, AND TAKE CERTAIN ACTIONS WITH IT.

8            THAT IS, AT THIS POINT, THE WAY PEOPLE

9    INTERACT WITH THEIR PHONES.  PEOPLE COUNT ON THAT.

10   PEOPLE ARE USED TO THAT.  YOU SIT ON THE SUBWAY AND

11   YOU SEE PEOPLE BANGING ON THEIR PHONE, AND THEY'RE

12   DOING THAT BECAUSE AT THIS POINT -- WHICH IS WHAT

13   APPLE ORIGINATED -- AT THIS POINT THAT IS HOW

14   PEOPLE INTERACT WITH THEIR SMARTPHONES.

15           IF THE S III CAME OUT -- AND BY THE WAY,

16   NO ONE IN THE UNITED STATES HAS THE S III.  I TOLD

17   YOU WE SENT SOMEBODY TO GET IT.

18           SO PEOPLE THAT ARE BUYING IT DON'T KNOW

19   WHAT'S IN IT OR NOT, BUT THEY ARE ASSUMING THAT IT

20   HAS THE SAME FEATURES AND FUNCTIONALITY AS THE

21   GALAXY NEXUS.  IT'S THE SUCCESSOR PRODUCT.

22           IF, WHEN THEY GOT THE DEVICE, IT DID NOT

23   HAVE THAT ABILITY --

24           THE COURT:  WHAT'S THE -- WHAT ELSE IS

25   DIFFERENT BETWEEN THE S III AND THE NEXUS?  THERE

94

1    MUST BE SOME REASON THAT IT'S HAVING SUCH A HIGHER

2    LEVEL OF DEMAND THAN SOMETHING THAT IS -- LIKE YOU

3    SAID, IT'S BOTH ANDROID PLATFORM 4.0.

4         MR. KREVITT:  YOUR HONOR, CANDIDLY, WE

5    HAVE NOT ANALYZED THE DEVICE SUFFICIENTLY TO

6    IDENTIFY EVERY DIFFERENCE.

7         THE COURT:  UM-HUM.

8         MR. KREVITT:  BUT WHAT WE HAVE, AS I

9    SAID, IS AMPLE EVIDENCE THAT THESE FEATURES ARE

10   CRITICAL.  THESE FEATURES -- THE ABSENCE OF THESE

11   FEATURES WOULD DRAMATICALLY IMPACT THE

12   FUNCTIONALITY OF THE DEVICE.

13        THAT'S THE KEY POINT, YOUR HONOR, THAT I

14   THINK NEEDS TO BE KEPT IN MIND.

15        IF THIS WERE -- SAMSUNG KNOWS THAT WE

16   BELIEVE THEY INFRINGE THE '604 PATENT AND THE '647

17   PATENT, THOSE TWO.

18        THE '647 PATENT, YOUR HONOR, IS THE

19   PATENT THAT RELATES TO THIS DATA TAPPING, THE LINKS

20   FOR STRUCTURES.

21        THEY COULD TAKE THAT OUT.  THEY CAN

22   REMOVE THAT.  THEY'VE BEEN ON NOTICE THAT WE THINK

23   THEY INFRINGE.

24        THE COURT:  LET ME ASK YOU -- I'LL ASK

25   YOU ONE LAST QUESTION ON THE '604.

                                                    95

1           MR. KREVITT:  OKAY.

2           THE COURT:  BECAUSE YOU'VE ALREADY

3   CONCEDED THAT IF I GO WITH SAMSUNG ON CLAIM

4   CONSTRUCTION, YOU'VE GOT NO INFRINGEMENT CASE, SO

5   I'M GOING TO GIVE YOU A MINUTE OR TWO TO GIVE YOUR

6   BEST CASE ON CLAIM CONSTRUCTION, BECAUSE

7   OTHERWISE --

8           MR. KREVITT:  I DON'T THINK I QUITE SAID

9   I DON'T HAVE A CASE.

10          I THINK I SAID WE HAVEN'T PUT EVIDENCE IN

11  THE RECORD.  WE CAN GO BACK AND LOOK AT THE

12  TRANSCRIPT, YOUR HONOR, ON THAT ONE.

13          NO, I'M ONLY JOKING.

14          THE COURT:  WELL -- YEAH.

15          MR. KREVITT:  IF I CAN HAVE THE --

16          YOUR HONOR, IF I MAY HAND THIS UP?

17          THE COURT:  OKAY.

18          MR. KREVITT:  THESE WERE -- EXCUSE ME.

19          THIS IS JUST A SLIDE THAT HAS -- THIS IS

20  A SLIDE THAT HAS THE -- -- SO WHAT WE DID, YOUR

21  HONOR, IS WE PUT CLAIM 6 FROM THE '604 PATENT AT

22  THE TOP, AND THEN WE PUT THE CLAIM LANGUAGE FROM

23  RESQNET AND THE CLAIM LANGUAGE FROM THE CASE ON

24  WHICH SAMSUNG RELIES.

25          THERE IS ANOTHER CASE, THE BENQ CASE THAT

                                                    96

1       SAMSUNG MENTIONED.  WE DON'T HAVE THAT HERE, YOUR

2       HONOR, BECAUSE THAT CASE MAKES CLEAR THAT THE

3       PATENTEE, DURING PROSECUTION, IS FILLING IN CLAIM

4       SCOPE, WHICH WE HAVE A SLIDE IF YOUR HONOR WANTS TO

5       SEE IT.

6               BUT THESE ARE THE ONLY CASES THAT DEAL

7       WITH THE CLAIM CONSTRUCTION ISSUE.

8               THE BENQ CASE, AS I SAID, THEY WERE

9       DISCLAIMING STATEMENTS.

10              AND IF YOU LOOK AT CLAIM 6, WHAT IT

11      REQUIRES IS A PLURALITY OF HEURISTIC MODULES

12      WHEREIN -- NOW, THEY'RE TALKING ABOUT THAT

13      PLURALITY, SO YOU HAVE TO IDENTIFY A PLURALITY, TWO

14      OR MORE.  THAT'S ALL A PLURALITY MEANS.  THE CASE

15      LAW IS PERFECTLY CLEAR ON THAT.

16              YOU IDENTIFY A PLURALITY, YOU IDENTIFY

17      YOUR TWO HEURISTIC MODULES, AND EACH ONE HAS TO

18      HAVE CERTAIN CHARACTERISTICS.  EACH ONE HAS TO

19      EMPLOY A DIFFERENT HEURISTIC ALGORITHM.  OKAY?

20              THAT DOESN'T MEAN THAT YOU CAN'T HAVE A

21      THIRD THAT'S THE SAME.  IT JUST MEANS THAT YOU HAVE

22      TO -- THE CLAIM REQUIRES -- IT'S NOT LIMITING IN

23      THAT WAY, YOUR HONOR.  IT SIMPLY IS A REQUIREMENT

24      THAT YOU CAN POINT TO AT LEAST TWO THAT HAVE A

25      DIFFERENT ALGORITHM.  THAT'S WHAT THE CLAIM

1    LANGUAGE MEANS.  THAT'S CLEAR FROM THE CLAIM

2    ITSELF.

3              AND IF YOU LOOK AT THE RESQNET CASE, IT

4    IS VIRTUALLY IDENTICAL.  IT SAYS "EACH OF A

5    PLURALITY OF FIELDS" AS OPPOSED TO "A PLURALITY OF

6    FIELDS, EACH OF WHICH," BUT IT IS VIRTUALLY

7    IDENTICAL.

8              AND THE RESQNET CASE FOUND -- AND THIS IS

9    ABSOLUTELY CONSISTENT WITH THE CASE LAW AND OUR

10   ARGUMENT -- THE RESQNET CASE FOUND THAT WHEN IT

11   SAYS "EACH OF A PLURALITY OF FIELDS," THAT DOES NOT

12   MEAN THAT EVERY ONE IN THE SYSTEM HAS TO SATISFY

13   THAT ELEMENT.  YOU JUST HAVE TO IDENTIFY A

14   PLURALITY.

15             AND THEN AS LONG AS THE ONES THAT YOU

16   HAVE IDENTIFIED, TWO OR MORE, AS LONG AS YOU HAVE

17   TWO OR MORE THAT HAVE THAT CHARACTERISTIC, YOU'RE

18   GOOD, EVEN IF YOU HAVE OTHERS THAT DO SOMETHING

19   ELSE.

20             IF YOU LOOK AT THE NEXT CASE, YOUR

21   HONOR -- AND I ADMIT THIS CLAIM IS VERY DIFFICULT.

22   IT TOOK US A LONG TIME TO SQUINT AT THIS CLAIM TO

23   UNDERSTAND IT, BUT IT'S -- ONCE YOU DO, IT'S CLEAR.

24             THIS IS VERY DIFFERENT.  WHAT THIS CLAIM

25   SAYS IS THAT YOU HAVE AT LEAST TWO WIRE LEGS, AND

1    THEN IT FURTHER -- SO YOU NEED THAT; YOU NEED AT

2    LEAST TWO WIRE LEGS; AND THEN IT FURTHER COMPRISES

3    A PLURALITY OF OFFSETS; AND THEN IT IS DEFINING THE

4    OFFSETS.  IT'S TELLING YOU WHAT THE OFFSETS ARE.

5    IT'S TELLING YOU WHAT THE OFFSETS HAVE TO BE.

6           YOU NEED AN OFFSET TO DISPLACE EACH WIRE

7    LEG.

8           IT DOESN'T SAY, AND THE COURT DID NOT

9    HOLD -- THIS IS CRITICALLY IMPORTANT, YOUR HONOR --

10   IT DOESN'T SAY THAT YOU COULD NOT HAVE AN

11   ADDITIONAL OFFSET.  YOU COULD HAVE AN ADDITIONAL

12   OFFSET THAT DOES NOT SECURE A WIRE LEG.

13          BUT WHAT IT SAYS IS THAT EACH WIRE LEG

14   MUST HAVE AN OFFSET.

15          I KNOW THAT MAY BE CONFUSING, YOUR HONOR,

16   BUT IF -- SO IF WE TAKE IT FROM THE TOP WHERE IT

17   SAYS HAVING AT LEAST TWO WIRE LEGS, THAT'S THE

18   FIRST THING THAT IS REQUIRED, SO YOU HAVE TO HAVE

19   AT LEAST TWO WIRE LEGS.

20          IT THEN IS GOING LATER IN THE CLAIM TO

21   CLAIM OFFSETS, AND IT DEFINES WHAT THE OFFSETS DO.

22          IT'S NOT A PLURALITY HERE.  IT WILL TELL

23   YOU WHAT THE OFFSETS MUST HAVE, THE CHARACTERISTICS

24   OF THAT PLURALITY, A PLURALITY OF OFFSETS FOR

25   LATERALLY DISPLACING EACH WIRE LEG.

```
1              SO WHAT THAT MEANS IS THAT YOU MUST HAVE

2    AN OFFSET FOR EACH WIRE LEG.

3              BUT YOU COULD HAVE ANOTHER OFFSET, AS

4    LONG AS YOU HAVE AN OFFSET FOR EACH WIRE LEG.

5              THAT'S WHAT THE "EACH" HERE MEANS, YOUR

6    HONOR.  IT'S REFERRING TO AN ENTIRELY DIFFERENT

7    THING.  IT'S TELLING YOU THAT YOU HAVE TO HAVE AN

8    OFFSET FOR EACH LEG.  EACH LEG MUST GET AN OFFSET.

9    THAT'S ALL IT'S SAYING.

10             IT'S NOT SAYING THAT YOU CAN'T HAVE

11   OFFSETS THAT DO OTHER THINGS ALSO.

12             THE COURT:  OKAY.  ALL RIGHT.

13             MR. KREVITT:  THE CLAIM LANGUAGE ITSELF

14   IS DEFINING CLEARLY WHAT THE OFFSETS ARE.

15             THE COURT:  OKAY.  THANK YOU.

16             OKAY.  LET ME HEAR FROM SAMSUNG.

17             ASSUME I FIND EVERYTHING BUT THE SIRI

18   VALID AND INFRINGED.

19             WHY SHOULDN'T I GRANT THE PRELIMINARY

20   INJUNCTION?

21             MR. PRICE:  AND ARE WE TALKING ABOUT

22   IRREPARABLE HARM?

23             THE COURT:  UM-HUM.

24             MR. PRICE:  WELL, YOU SHOULDN'T GRANT

25   PRELIMINARY INJUNCTION, YOUR HONOR, FOR TWO
```

1    REASONS.

2            ONE IS, AS YOU KNOW, AND YOU MAY HAVE --

3    YOU WERE INVOLVED IN THE CASE OBVIOUSLY.

4            THE FEDERAL CIRCUIT SAID THAT TO DO A

5    PRELIMINARY INJUNCTION, WHICH MEANS BASICALLY IT'S

6    BEFORE TRIAL, BEFORE WE HAVE A CHANCE TO DO FULL

7    DISCOVERY AND EXAMINE WITNESSES --

8            THE COURT:  UM-HUM.

9            MR. PRICE:  -- BEFORE YOU DO THAT, BEFORE

10   YOU HAVE A PRELIMINARY INJUNCTION, YOU HAVE TO SHOW

11   LIKELIHOOD OF SUBSTANTIAL, IMMEDIATE, IRREPARABLE

12   INJURY.

13           AND DOES YOUR HONOR HAVE OUR FILE, OUR

14   LIST OF SLIDES?  I THINK YOU DO SOMEWHERE.  IF YOU

15   DON'T, I CAN GET YOU ANOTHER ONE.

16           THE COURT:  NO, NO, I HAVE IT.  I HAVE IT

17   RIGHT HERE.

18           MR. PRICE:  THERE'S A SECTION THERE ON

19   IRREPARABLE HARM, AND THE FIRST SLIDE TALKS ABOUT

20   THAT STANDARD.

21           AND IF YOU LOOK AT JUST, YOU KNOW, IS

22   THERE SOMETHING SUBSTANTIAL, ANY SUBSTANTIAL CHANGE

23   IN THE MARKET SHARE GOING ON BECAUSE OF THIS GALAXY

24   NEXUS, IF YOU LOOK AT THE SECOND PAGE, YOUR

25   HONOR -- AND WE CAN'T DISPLAY THIS BECAUSE THESE

1    ARE CONFIDENTIAL NUMBERS, SO I CAN JUST WALK YOU

2    THROUGH IT.

3              YOU SEE THERE'S A PIE CHART WHICH

4    COMPARES THE GALAXY NEXUS SALES THROUGH THE FIRST

5    QUARTER OF THIS YEAR.  SO WE'RE TALKING THREE

6    MONTHS, THREE AND A HALF MONTHS, AND INCLUDING THE

7    DEBUT WHEN IT HAS THE BIGGEST SALES.

8              THE COURT:  WELL, WHAT IF I FIND THAT THE

9    '647, '721, AND '172 ARE SUCH IMPORTANT FEATURES

10   THAT THEY DO DRIVE THE SALES AND THAT, IF YOU

11   DIDN'T HAVE THOSE, PEOPLE WOULDN'T BUY THE PRODUCT?

12             I MEAN, I'M SAYING SEPARATE FROM LOOKING

13   SPECIFICALLY ON HOW ANEMIC ARE THE GALAXY AND NEXUS

14   SALES, IF I MAKE THE FINDING THAT THESE ARE VALID

15   AND INFRINGED AND THEY DO CONTRIBUTE TO THE HARM,

16   THEY'RE IMPORTANT OR RELEVANT TO THE DEMAND, THEN

17   WHY NOT?

18             MR. PRICE:  WELL, THE QUESTION ISN'T

19   WHETHER OR NOT THEY'RE IMPORTANT TO THE DEMAND, AND

20   OF COURSE I'D LIKE TO ADDRESS THAT ISSUE.

21             THE COURT:  YEAH.  HOW MUCH NEXUS IS

22   ENOUGH?

23             MR. PRICE:  THE QUESTION IS -- AND IF YOU

24   LOOK AT SLIDE 32, THE PATENTED FEATURE HAS TO DRIVE

25   THE DEMAND FOR THE PRODUCT.

1         AND HERE THERE'S A REAL MISUNDERSTANDING

2    AS TO WHAT THE COURT WAS TALKING ABOUT.  COUNSEL

3    FOR APPLE HAS SAID, FOR EXAMPLE, YOU HAVE A

4    PREDICTIVE TEXT FEATURE.

5         IF THE NEXUS DIDN'T HAVE ANY PREDICTIVE

6    TEXT FEATURE, WOULD ITS SALES BE DECREASED IN SOME

7    WAY?

8         THAT'S NOT THE QUESTION.  THE QUESTION

9    IS, IF THE GALAXY NEXUS HAD A PREDICTIVE TEXT

10   FEATURE -- IF IT DIDN'T HAVE APPLE'S PREDICTIVE

11   TEXT FEATURE, USED BY ITS PATENT, YOU KNOW, WOULD

12   GALAXY NEXUS SALES BE INCREASED?

13        BECAUSE THERE ARE ALL SORTS OF WAYS TO DO

14   PREDICTIVE TEXT.  IT'S LIKE THE CUP HOLDER ANALOGY

15   THAT WAS USED AT THE FEDERAL CIRCUIT.

16        IF THERE'S REALLY FANCY, NEAT, YOU KNOW,

17   CUP HOLDERS WHICH WE'RE USING AND WE CAN SHOW, HEY,

18   IT COULD BE THOSE CUP HOLDERS, IT COULD BE OTHER

19   CUP HOLDERS.  IT'S NOT THAT PARTICULAR TYPE OF CUP

20   HOLDER THAT'S DRIVING SALES.  WE COULD PUT IN A

21   BLACK ONE THAT'S NORMAL.  YOU KNOW?  WE COULD PUT

22   IN, YOU KNOW, ONE FROM A TOYOTA AND ONE FROM A

23   HONDA.  OKAY?

24        THE QUESTION IS WHETHER OR NOT APPLE'S

25   PATENTED TECHNOLOGY, IF NOT THERE, WOULD MEAN THERE

1    WOULDN'T BE SALES.

2         THE COURT:  BUT HASN'T THE ONLY THING THE

3    FEDERAL CIRCUIT HAS SAID IS THAT THE NEXUS HAS TO

4    BE MORE THAN DE MINIMIS?  THEY HAVEN'T SAID IT HAS

5    TO BE A PREPONDERANCE, THAT IT HAS TO BE MORE

6    LIKELY THAN NOT.  YOU KNOW, THEY HAVEN'T GIVEN A

7    STANDARD BEYOND IT'S GOT TO BE MORE THAN DE

8    MINIMIS.

9         WOULD YOU AGREE WITH THAT?

10        MR. PRICE:  I --

11        THE COURT:  SO FAR, THAT'S WHAT THE

12   CURRENT STATE OF THE LAW IS.

13        MR. PRICE:  I WOULD, BUT IT HAS TO BE DE

14   MINIMIS IN THE CONTEXT OF DRIVING SALES.

15        SO YOU'VE GOT TO ASK YOURSELF, LOOK AT

16   THIS GALAXY NEXUS PHONE, AND LET'S LOOK AT THESE

17   FEATURES, SLIDE TO UNLOCK, FOR EXAMPLE.

18        IF YOU DID THAT ANOTHER WAY, YOU KNOW,

19   WOULD YOU HAVE FEWER GALAXY NEXUS SALES?  IS THAT

20   REALLY WHY PEOPLE ARE BUYING THIS?

21        AND YOU POINT OUT SOMETHING, YOUR HONOR.

22   THE GALAXY S III, WHICH IS GOING TO HAVE ENORMOUS

23   SALES, WE BELIEVE, YOU COULD LOOK ON THE FACE OF

24   IT -- AND APPLE IS BEING A LITTLE DISINGENUOUS HERE

25   BECAUSE THEY DO HAVE THE PHONE -- AND THEIR VERSION

1    OF UNLOCKING THAT, YOU CAN EASILY SEE ON THE FACE

2    OF THE PHONE WHETHER OR NOT IT PRACTICES APPLE'S

3    PATENT, AND IT DOES NOT.  IT'S COMPLETELY

4    DIFFERENT.

5              AND, YET, YOU'RE HAVING MILLIONS AND

6    MILLIONS OF SALES THAT ARE PREDICTED.

7              IT'S BECAUSE APPLE'S WAY OF DOING IT, AS

8    STATED IN THEIR PATENT, DOES NOT DRIVE SALES.

9    THAT'S THE QUESTION.  IS APPLE'S WAY OF DOING THAT

10   FEATURE SOMETHING THAT DRIVES SALES?

11             AND THERE IS NO EVIDENCE OF THAT AT ALL.

12             LOOK AT THE PREDICTIVE TEXT.  IS APPLE'S

13   WAY OF DOING IT IN THEIR PATENT, WITH THE TWO

14   DIFFERENT AREAS, IS THAT WHAT'S DRIVING SALES?

15             ABSOLUTELY NOT.  THERE ARE LOTS OF

16   PREDICTIVE TEXT, WAYS TO DO PREDICTIVE TEXT.

17             IN FACT, YOUR HONOR, APPLE DOES NOT USE

18   THE METHOD THAT IS IN THEIR PATENT THAT THEY'RE

19   SUING US ON.

20             IF YOU LOOK AT THE, AT SLIDE 40 --

21             THE COURT:  LET ME ASK A QUESTION TO --

22   AND THIS IS TO EACH OF YOU, BECAUSE WHOEVER LOSES

23   ON THIS IS GOING TO TAKE THIS UP ON APPEAL AND

24   WE'LL GET AN ANSWER ANYWAY, BUT I WANT TO FIND OUT

25   FROM YOU NOW, HOW WOULD YOU DEFINE THE NEXUS THAT'S

1    REQUIRED?  WHAT DO YOU THINK MORE THAN DE MINIMIS

2    MEANS?  DOES THAT MEAN MAJORITY?  DOES THAT MEAN --

3    WHAT DOES THAT MEAN?

4              AND I WANT TO HEAR FROM BOTH SIDES.

5              MR. PRICE:  I THINK -- I THINK THERE'S

6    A -- IT WOULD BE, DOES IT DRIVE SALES THAT AFFECT

7    SUBSTANTIALLY, SUFFICIENT SALES THAT WOULD AFFECT

8    SUBSTANTIALLY THE MARKET SHARE?

9              THE COURT:  DOES IT DRIVE SUBSTANTIAL

10   SALES THAT AFFECT MARKET SHARE?

11             MR. PRICE:  THE MARKET SHARE, BECAUSE

12   THAT'S THE STANDARD FOR GETTING THIS RELIEF BEFORE

13   YOU HAVE, YOU KNOW, A FULL TRIAL.  IT'S EMERGENCY

14   RELIEF.

15             THE COURT:  LET ME HEAR FROM APPLE.

16             HOW DO YOU DEFINE -- I'M GOING TO GIVE

17   YOU LESS THAN A MINUTE.  HOW DO YOU DEFINE MORE

18   THAN DE MINIMIS?

19             WELL, MAYBE YOU JUST SAY IT CONTRIBUTES

20   TO THE HARM.  IT'S IMPORTANT OR RELEVANT TO DEMAND.

21   IS THAT HOW YOU WOULD DEFINE IT?  THAT'S WHAT YOU

22   SAID BEFORE.

23             MR. KREVITT:  IT'S -- YES, YOUR HONOR.

24             BUT, AGAIN, IT'S IMPORTANT TO UNDERSTAND

25   THAT THAT CAN BE IN REVERSE, MEANING IF YOU WERE TO

                                                      106

1    REMOVE THE FEATURE -- IT'S NOT JUST THAT IT'S

2    DRIVING SOMEBODY INTO THE STORE -- BUT IF YOU WERE

3    TO REMOVE THE FEATURE, THERE WOULD BE AN IMPACT ON

4    THE FUNCTIONALITY OF THE DEVICE IN SOME MANNER THAT

5    WOULD HAVE SOME CAUSAL LINK TO DEMAND.

6              IT DOES NOT HAVE TO BE THE MAJORITY.  AS

7    I SAID EARLIER, THE FEDERAL CIRCUIT JUST AFFIRMED

8    YOUR HONOR'S RULING AND FOUND IRREPARABLE HARM

9    WITHOUT SAYING IT'S THE SOLE REASON.

10             IF IT HAD TO BE THE SOLE REASON, IT'S

11   HARD TO IMAGINE ONE COULD EVER GET A PRELIMINARY

12   INJUNCTION.

13             THE COURT:  OKAY.  THANK YOU.

14             LET ME GIVE SAMSUNG MORE OF AN

15   OPPORTUNITY TO ADDRESS IRREPARABLE HARM BECAUSE

16   WE'RE GOING TO HAVE TO WRAP THIS UP.

17             MR. PRICE:  I'D LOVE TO.  I HOPE I CAN

18   GET AN EQUAL AMOUNT OF TIME, BECAUSE IT'S VERY

19   IMPORTANT.

20             AND I WANT TO FOCUS ON SOME OF THE

21   QUESTIONS YOUR HONOR ASKED, AND ONE IS, IS THERE

22   ANY EVIDENCE -- AND THIS IS THE QUESTION, IT'S NOT

23   THE QUESTION THAT WAS POSED -- THAT TAKING OUT THE

24   WAY APPLE DOES THESE FEATURES WOULD HAVE ANY

25   SIGNIFICANCE ON WHETHER OR NOT CUSTOMERS ARE GOING

1    TO DRIVE -- TO BUY THESE PRODUCTS?

2            SO, FOR EXAMPLE, THE UNLOCKING THE KEY

3    CARD.  THE GALAXY S III HAS A COMPLETELY DIFFERENT

4    WAY OF DOING IT.  MILLIONS ARE GOING TO BUY IT, WE

5    THINK.  IT'S NOT GOING TO BE A DETERRENT.

6            THE TEXT PREDICTION, OR -- AGAIN, APPLE

7    DOESN'T EVEN FOLLOW ITS PATENTED METHOD OF DOING

8    THAT, OF CHANGING TEXT, OF PREDICTING TEXT.

9            YES, CUSTOMERS ARE USED TO HAVING THAT,

10   BY THE WAY.  THERE'S NO EVIDENCE THAT THEY WOULD

11   BUY THE PHONE WITHOUT IT.

12           IN FACT, SOME CUSTOMERS, WE'VE GIVEN YOU

13   EVIDENCE, DON'T LIKE IT.  THE APPLE WITNESS

14   TESTIFIED TO THAT FACT, THAT IT'S KIND OF ANNOYING.

15   IF YOU'RE NOT LOOKING AT THE SCREEN AS YOU'RE

16   TYPING IT, YOU KNOW, IF YOU'RE JUST TYPING, IT'LL

17   CHANGE WORDS WITHOUT YOU DOING ANYTHING.

18           SO, AGAIN, IT'S -- APPLE'S WAY OF DOING

19   THAT IS NOT DRIVING SALES.

20           APPLE'S WAY OF LINKING IS NOT DRIVING

21   SALES.  THERE'S NO ADVERTISING OR MARKETING BY

22   SAMSUNG ON THESE FEATURES AT ALL.

23           IN FACT, WITH THE GALAXY S III, YOUR

24   HONOR, YOU COULD AGAIN JUST LOOK AT THE PHONE,

25   WHICH APPLE HAS DONE, AND DO THE TEXTING AND SEE

1    THAT IT, EVEN ON ITS FACE, DOES NOT DO WHAT THE

2    APPLE PATENT SAYS.

3             AND, YET, MILLIONS ARE GOING TO BE SOLD,

4    AND THAT'S BECAUSE THAT'S NOT WHAT IS DRIVING THESE

5    SALES.

6             WHAT IS DRIVING THESE SALES -- AND IF YOU

7    CAN LOOK AT, I THINK IT'S SLIDE 44.  THAT IS FROM

8    ONE OF THE ARTICLES THAT MR. WAGNER LOOKED AT.

9    IT'S THAT -- AND THIS IS WHY APPLE DOESN'T LIKE THE

10   GALAXY NEXUS BEING A PRODUCT.

11            IT HAS ADOBE FLASH SUPPORT.  IT HAS A

12   LARGE SCREEN.  I MEAN, THESE ARE ITEMS WHICH

13   REVIEWERS ARE LOOKING AT TO SAY THIS IS WHY THIS IS

14   A GOOD, FANTASTIC PRODUCT.

15            AND THERE IS NO EVIDENCE THAT IF SAMSUNG

16   HAD A PRODUCT THAT HAD, YOU KNOW, A DIFFERENT WAY

17   OF UNLOCKING IT, OR A DIFFERENT TEXTING, LIKE APPLE

18   DOES, YOU KNOW, OR EVEN THE SEARCH, THE UNIFIED

19   SEARCH -- I MEAN, APPLE DIDN'T HAVE THAT, IT SAYS,

20   UNTIL THE 4S, THE UNIFIED SEARCH.

21            THERE'S NO EVIDENCE THAT IF YOU HAVE

22   SIMPLY A SEARCH FUNCTION, WHICH ALL PHONES DO HAVE,

23   THAT INSTEAD OF, QUOTE, "UNIFIED SEARCH," THAT

24   FEWER PEOPLE WOULD BUY THE SAMSUNG.  THERE'S NO

25   EVIDENCE OF THAT AT ALL.

1          APPLE LUMPS IT INTO EASE OF USE.  THEIR

2     30(B)(6) WITNESS ON EASE OF USE, THE PERSON THEY

3     PUT FORWARD, SAID THAT IT WOULD BE PURE

4     SPECULATION -- AND THAT, YOUR HONOR, IS AT SLIDE

5     34 -- IT WOULD BE PURE SPECULATION TO SAY THAT IF

6     SAMSUNG REMOVED THE FOUR ALLEGEDLY INFRINGING

7     FEATURES FROM THE GALAXY NEXUS AND SOLD THE GALAXY

8     NEXUS WITHOUT THOSE, WOULD IT HAVE ANY IMPACT ON

9     SALES OR MARKET SHARE OF THE IPHONE?

10          AND THEY SAID THE SAME ANSWER.  THAT

11    WOULD BE SOMETHING YOU WOULD HAVE TO GUESS AT OR

12    SPECULATE AND I DON'T KNOW HOW I WOULD DO THAT.

13          APPLE SAYS IT GOES TO EASE OF USE.  THEIR

14    WITNESS SAID EASE OF USE MEANS -- AND THIS IS, I

15    BELIEVE IT'S SLIDE 36 -- MEANS EVERY FEATURE ON THE

16    PHONE.  THE RIGHT VOLUME SLIDE -- THERE ARE

17    THOUSANDS OF FEATURES ON THE PHONE.

18          APPLE HAS NO DATA TO SAY THAT THE WAY

19    THEY DO THESE FEATURES DRIVES SALES AT ALL.

20          AND IN FACT, LIKE I SAID WITH THE

21    TEXTING, THEY DON'T EVEN USE THAT FEATURE.  THEY DO

22    SOMETHING ELSE.  SO OBVIOUSLY THEY DON'T THINK THAT

23    PRACTICING THEIR PATENT IS SOMETHING THAT DRIVES

24    SALES BECAUSE THEY DO SOMETHING ELSE.

25          NOW, YOU TALKED ABOUT SIRI -- AND I WANT

1    TO BE VERY CLEAR ON SIRI, BY THE WAY.

2              WHAT APPLE IS SAYING IS THEY HAVE SIRI,

3    IT DRIVES SALES, AND SIRI USES UNIFIED SEARCH.

4              THE GALAXY NEXUS DOESN'T COMPETE ON SIRI.

5              SIRI IS, AS APPLE WITNESSES SAID, WHAT

6    SELLS IT, WHAT YOU SAW WITH SAMUEL JACKSON AND

7    ZOOEY DESCHANEL, AND I FORGET THE LAST ONE,

8    WHATEVER CELEBRITY IS USING IT ON THE COMMERCIALS.

9    IT'S THE FACT THAT THE PHONE IS HUMANIZED.

10             AND APPLE SAYS, "YEAH, BUT WE USE UNIFIED

11   SEARCH IN DOING THE SIRI FUNCTIONS."

12             THE ANSWER IS, WHAT DOES THAT HAVE TO DO

13   WITH WHETHER OR NOT CUSTOMERS WOULDN'T BUY THE

14   GALAXY NEXUS WHEN THE GALAXY NEXUS DOESN'T COMPETE

15   ON SIRI?  IT DOESN'T HAVE THAT FUNCTION AT ALL.

16             IT'S SORT OF LIKE APPLE SAYING, YOU KNOW,

17   "WE HAVE A CAR WITH THE BEST SUNROOF YOU'VE EVER

18   SEEN.  IT'S AMAZING.  AND WE HAVE A SERVO MOTOR

19   THAT OPENS THAT SUNROOF.  YOU, SAMSUNG, YOU KNOW,

20   HAVE A SERVO MOTOR THAT INFRINGES OUR PATENT, BUT

21   IT UNLOCKS THE DOORS ."

22             WELL, THAT'S NOT TAKING AWAY SALES FROM

23   APPLE BECAUSE WE'RE NOT PRESENTING THE SAME

24   FEATURE.

25             THAT'S THE SIRI FEATURE, WHICH IS QUITE

1    DIFFERENT FROM UNIFIED SEARCH.

2              MR. VELLTURO'S AIR CONDITIONING EXAMPLE

3    IS JUST NOT APPROPRIATE, YOUR HONOR.  HE'S TALKING

4    INSTEAD ABOUT THE KNOBS ON THE AIR CONDITIONER.

5              YOU KNOW, YOU CAN HAVE WAYS OF UNLOCKING

6    THE PHONE WITHOUT USING APPLE'S SPECIFIC WAY OF

7    DOING IT.  SAMSUNG IS DOING THAT WITH THE

8    GALAXY S III.

9              YOU CAN HAVE SEARCHES WITHOUT DOING IT

10   APPLE'S PARTICULAR WAY.

11             REMOVING THE APPLE FEATURES -- THERE IS

12   NO EVIDENCE THAT REMOVING THE WAY THOSE FEATURES

13   ARE DONE ON THE SAMSUNG NEXUS AND DOING SOMETHING

14   ELSE WOULD AFFECT DEMAND AT ALL.

15             THEY SIMPLY HAVE NO EVIDENCE ON THAT

16   WHATSOEVER, AND THEIR OWN WITNESS SAYS IT WOULD BE

17   PURE SPECULATION.

18             NOW, WITH RESPECT TO WHETHER OR NOT THERE

19   IS A SUBSTANTIAL EFFECT ON APPLE'S BUSINESS, YOUR

20   HONOR, YOU CAN BE MISLED HERE BY STATISTICS THAT

21   SHOW THE FOLLOWING.

22             ONE, THERE ARE A LOT OF STATISTICS ABOUT

23   WORLDWIDE SALES.  SAMSUNG IS THE BIGGEST.  YOU

24   KNOW, SAMSUNG'S DONE TERRIFIC.

25             THAT'S NOT RELEVANT TO THE PRELIMINARY

1      INJUNCTION HERE WHERE THE QUESTION IS, HOW IS THE

2      AMERICAN MARKET AFFECTED BY THESE PRODUCTS BEING IN

3      THE UNITED STATES?

4              SAMSUNG DOES WELL IN THE WORLD, AND WE

5      CAN TALK ABOUT THAT.  WE CAN TALK ABOUT APPLE NOT

6      COMPETING ON LOWER PRICED PHONES AND THAT BEING A

7      DIFFERENT MARKET AND THAT'S WHY SAMSUNG HAS AN

8      ADVANTAGE.

9              WE CAN TALK ABOUT COURTS NOT GRANTING

10     PRELIMINARY INJUNCTIONS BECAUSE THEY SAY SAMSUNG --

11     THAT APPLE'S PATENTS ARE NOT INVENTIVE.

12             EUROPE DOESN'T MATTER.  TO THE EXTENT

13     THAT IT DOES, BY THE WAY, TO THE EXTENT THAT YOU --

14     THAT IT WAS OF ANY RELEVANCE, THEN YOU COULD LOOK

15     AT SLIDE 8, YOUR HONOR.

16             SLIDE 8, WHICH AGAIN WE CAN'T SHOW, SHOWS

17     WORLDWIDE PROFITS FOR ALL HANDSETS THROUGH 2011,

18     AND YOU CAN SEE THAT APPLE IS DOING PRETTY GOOD

19     WORLDWIDE.

20             BUT THE WORLDWIDE NUMBERS ON HOW BIG

21     EVERYBODY IS, YOU KNOW -- AND OF COURSE THAT'S THE

22     BOTTOM LINE.

23             YOU WOULD ALSO NOTE THAT SAMSUNG, FROM

24     2008 UNTIL THE FOURTH QUARTER OF 2011, THERE HAVE

25     BEEN SOME UPS AND DOWNS.  IT'S PRETTY MUCH IN THE

1    SAME PLACE.

2              SECOND, YOUR HONOR, THEY'RE SAYING THAT

3    THE GALAXY NEXUS CAUSED AN EFFECT, AND THEY'RE

4    USING FIGURES ON APPLE SALES WHEN WHAT THEY KNOW IS

5    THAT THE PATTERN THAT THE DATA SHOWS IN APPLE'S

6    SALES ARE EXACTLY WHAT YOU'D EXPECT FROM APPLE

7    SALES, EVEN IF SAMSUNG DID NOT EXIST.

8              AND HERE'S WHAT I MEAN.  IF YOU LOOK AT

9    SLIDE 9, ANOTHER CONFIDENTIAL SLIDE, YOU'LL SEE IT

10   SHOWS HISTORICAL APPLE SMARTPHONE SALES, AND YOU

11   SEE A PATTERN HERE.

12             EVERY TIME APPLE RELEASES A PHONE, YOU

13   KNOW, YOU'VE GOT THOSE PEOPLE IN LINE, STANDING

14   THERE OVERNIGHT; THEY SELL A LOT, THEY SELL A LOT

15   FOR A WHILE; AND THEN THERE'S A DROP OFF EVERY TIME

16   BECAUSE IT'S A NEW PHONE, AND THEN IT'S NO LONGER A

17   NEW PHONE.

18             YOU SEE HOW THAT HAPPENED UP UNTIL THE

19   THIRD QUARTER OF 2011 BEFORE THE 4S CAME OUT.

20             APPLE'S INTERNAL DOCUMENTS SHOW THAT.  IF

21   YOU LOOK AT EXHIBITS 10 AND 11, THIS IS THE SALES

22   OF AT&T MEETING OVERVIEW WITHIN APPLE AND IT SHOWS

23   THAT HISTORICALLY, THERE'S A THIRD QUARTER DROP OF

24   APPLE UNITS OF SALES.

25             AND YOUR HONOR, THAT'S BECAUSE THE APPLE

1    PHONE USED TO COME OUT IN JUNE OR JULY, AND SO

2    HISTORICALLY, YOU'RE GOING TO HAVE THAT DROP.

3    THAT'S JUST WHAT HAPPENS.

4            IT'S NOT AFFECTED BY SAMSUNG.  WE'RE NOT

5    THE ONES STOPPING THE LINES FROM FORMING.

6            AND THEN YOU LOOK AT SLIDE 12, AND THIS

7    IS WHAT HAPPENS THROUGH THE FIRST QUARTER OF 2012.

8            AND YOU LOOK AT THAT PATTERN AND YOU SEE

9    THAT WHEN THE IPHONE 4S CAME OUT, SALES SPIKED.  IT

10   WAS THE MOST SUCCESSFUL RELEASE EVER.

11           AND AFTER THAT, IT HAS COME DOWN, AND

12   THAT'S THE SAME PATTERN YOU GET EVERY TIME APPLE

13   RELEASES A PHONE.

14           NOW, YOU MIGHT NOTICE THAT IT'S COME DOWN

15   TO HISTORICAL LEVELS.  IT'S HIGHER, THAT'S WHAT THE

16   DOTTED LINE IS, THAN IT EVER HAS BEEN BEFORE.

17           AND THERE'S NO EVIDENCE THAT THIS IS

18   BECAUSE OF THE SAMSUNG NEXUS.

19           IN FACT, IF YOU LOOKED AT ALL THE SAMSUNG

20   NEXUS SALES THROUGH THE FIRST QUARTER OF THIS YEAR

21   FOR WHICH WE HAVE DATA, AND IF YOU ASSUME EVERY ONE

22   OF THOSE, EVERY ONE, WOULD HAVE GONE TO APPLE --

23   AND THERE'S NO EVIDENCE TO SUGGEST THAT THAT WOULD

24   HAVE HAPPENED BECAUSE ANDROID USERS LIKE ANDROID --

25   IF YOU LOOKED AT THAT, YOUR HONOR, IF YOU LOOK AT

1    PAGE --

2              THE COURT:  I'M GOING TO HAVE TO WRAP

3    THIS UP, SO IF YOU WOULD PLEASE CONCLUDE.

4              MR. PRICE:  IT'S LESS THAN 1 -- THE

5    ENTIRE MARKET SHARE WOULD BE LESS THAN 1 PERCENT.

6              SO THERE'S NO EVIDENCE THAT WE NEED TO

7    RESOLVE SOMETHING BEFORE, BEFORE WE GET TO A TRIAL.

8              AND ON THE STICKINESS ARGUMENT, WHAT THE

9    EVIDENCE ACTUALLY SHOWS WITH RESPECT TO STICKINESS

10   IS THAT WITH RESPECT TO SAMSUNG, THERE ISN'T A

11   SIGNIFICANT AMOUNT OF STICKINESS.

12             THERE IS CERTAINLY -- THERE ARE CERTAINLY

13   ASPIRATIONS.  WE'D LOVE FOR THERE TO BE STICKINESS.

14             THE EVIDENCE SHOWS THAT THERE'S NOT.

15             THE EVIDENCE SHOWS, FOR EXAMPLE, SAMSUNG

16   PHONE SALES GO UP, AND YOU'VE GOT THE TABLET GOING

17   THIS WAY.

18             BUT THERE ARE MOUNDS OF DATA -- THIS IS

19   PROBABLY THE MOST OBSERVED INDUSTRY IN THE COUNTRY

20   IN TERMS OF SALES DATA -- THERE ARE MOUNDS OF DATA

21   FROM WHICH YOU CAN CALCULATE THE VALUE OF A

22   CUSTOMER AND WHAT THEY'RE LIKELY TO DO IN THE

23   FUTURE, HOW MANY PHONES A SAMSUNG CUSTOMER USUALLY

24   BUYS AFTER IT BUYS THE FIRST.

25             IN FACT, YOU HAVE SOME OF THAT DATA.

1           BUT IMPORTANT WITH RESPECT TO THE

2    IRREPARABLE HARM IS THAT APPLE HAS SAID THAT THESE

3    FEATURES, THESE, QUOTE, "CORE FEATURES" ARE

4    ESSENTIAL TO SAMSUNG'S SELLING PHONES.

5           WELL, IF THERE IS A PERMANENT

6    INJUNCTION -- AND FOR THE PURPOSES OF THIS HEARING,

7    WE HAVE TO ASSUME THAT APPLE WILL WIN -- IF YOU

8    ASSUME THEY WIN AND YOU ASSUME THEY WILL WIN AT THE

9    END, IS THERE IRREPARABLE HARM BY NOT DOING

10   SOMETHING NOW?  I MEAN, THAT'S THE ISSUE.

11          IF THEY WIN IN THE END, THEY WILL GET AN

12   INJUNCTION PROHIBITING SAMSUNG FROM USING APPLE'S

13   INTELLECTUAL PROPERTY.

14          ACCORDING TO APPLE, THAT MAKES SAMSUNG

15   PHONES NOT DESIRABLE AT ALL.

16          IN FACT, IF PEOPLE ARE BUYING SAMSUNG

17   PHONES BECAUSE IT HAS THIS FUNCTIONALITY, THEN

18   AFTER A PERMANENT INJUNCTION, THERE'S NOT GOING TO

19   BE ANY STICKINESS.  THOSE FOLKS AREN'T GOING TO

20   WANT THEIR PHONE BECAUSE IT DOESN'T DO WHAT,

21   ACCORDING TO APPLE, IS A CORE FUNCTION, SOMETHING

22   THAT IS ESSENTIAL.

23          YOU KNOW, WE'RE HERE BECAUSE WE WANT A

24   FULL TRIAL ON THESE ISSUES AND WE WANT OUR PHONES

25   OUT THERE THAT HAVE THESE FEATURES, SUCH AS -- AND

                                                    117

1    YOU ASKED ABOUT THE S III.

2         IT HAS A BIGGER SCREEN, FOR EXAMPLE; IT

3    HAS THIS THING WHERE IF YOU LOOK AT IT, IT KNOWS

4    YOU'RE LOOKING AT IT SO IT DOESN'T GO INTO SLEEP

5    MODE; AND YOU KNOW WHEN YOU TURN YOUR PHONE AND IT

6    CHANGES THE MOVIE YOU'RE LOOKING AT OR IT CHANGES

7    THE SCREEN TO A DIFFERENT RATIO, BECAUSE IT SEES

8    YOU LOOKING AT IT, IF YOU DO THIS AND YOU DO THIS,

9    THE THING DOESN'T SWITCH (INDICATING).

10        IT'S GOT THESE AMAZING NEW FEATURES WHICH

11   ARE -- AND APPLE KNOWS ABOUT THEM BECAUSE THEY

12   SUBMITTED ONE OF THEIR VIEWS IN THEIR PAPERS WHICH

13   TALKS ABOUT ALL THESE FEATURES.

14        MOTION GESTURES LIKE YOU GO LIKE THIS

15   OVER THE PHONE AND IT TAKES A PICTURE OF WHAT'S ON

16   THE PHONE (INDICATING).  YOU PUT YOUR HAND ON IT

17   AND IT PAUSES INSTEAD OF HAVING TO LOOK FOR

18   SOMETHING.  YOU WANT TO SCROLL TO THE TOP, YOU JUST

19   HIT IT.

20        IT HAS THESE AMAZING FEATURES AND THAT'S

21   WHAT APPLE WANTS TO PREVENT GETTING OUT THERE, AND

22   IT'S ON THE BASIS OF ABSOLUTELY NO EVIDENCE, I MEAN

23   REALLY ZERO EVIDENCE, THAT SAMSUNG WOULD BE SELLING

24   THE NEXUS OR WOULD BE SELLING THE S III, BUT LET'S

25   FOCUS ON THE NEXUS, THAT THOSE SALES ARE DRIVEN BY

1    ANY OF THESE FEATURES THE WAY APPLE DOES THEM IN

2    ITS PATENTS.

3              THE COURT:  OKAY.  THANK YOU.

4              ALL RIGHT.  WE DON'T HAVE ANYTHING ON THE

5    CMC.  THE CASE SCHEDULE REMAINS AS SET AT OUR PAST

6    CASE MANAGEMENT CONFERENCE AND THE NEXT CMC WILL

7    REMAIN SEPTEMBER 26TH, 2012 AT 2:00 O'CLOCK.

8              MR. KREVITT:  YOUR HONOR, BEFORE YOU GET

9    UP, MAY I RESPOND VERY BRIEFLY?

10             THE COURT:  NO.

11             MR. SHIELDS:  YOUR HONOR, COULD I ASK A

12   PROCEDURAL FAVOR?  I APOLOGIZE FOR THIS.

13             IN OUR HASTE TO HAND UP BINDERS TO THE

14   COURT, I BELIEVE WE MAY HAVE GIVEN TO ONE OF YOUR

15   HONOR'S CLERKS A COPY OF A BINDER THAT HAS ATTORNEY

16   WORK PRODUCT IN IT.

17             MAY I HAVE PERMISSION TO SWAP THAT FOR A

18   CORRECT VERSION?

19             THE COURT:  YES.

20             MR. SHIELDS:  THANK YOU.

21             MR. PRICE:  FOR THE RECORD, YOUR HONOR,

22   I'D LOVE TO ANSWER THE SAME QUESTIONS ON THE '604

23   THAT YOU ASKED APPLE ABOUT.

24             THE COURT:  NO.  THANK YOU.

25             THANK YOU VERY MUCH.

1           MR. PRICE:  THANK YOU, YOUR HONOR.

2           MR. KREVITT:  THANK YOU, YOUR HONOR.

3           (WHEREUPON, THE PROCEEDINGS IN THIS

4    MATTER WERE CONCLUDED.)

1

2

3

4                      CERTIFICATE OF REPORTER

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23            /S/
              _____
24            LEE-ANNE SHORTRIDGE, CSR, CRR
              CERTIFICATE NUMBER 9595
25