1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4

5

    APPLE INC., A CALIFORNIA      )  C-12-00630 LHK
6   CORPORATION,                  )
                                  )  SAN JOSE, CALIFORNIA
7                    PLAINTIFF,   )
                                  )  DATE JULY 2, 2012
8              VS.                )
                                  )  PAGES 1-81
9   SAMSUNG ELECTRONICS CO.,      )
    LTD., A KOREAN BUSINESS       )
10  ENTITY; SAMSUNG               )
    ELECTRONICS AMERICA,          )
11  INC., A NEW YORK              )
    CORPORATION; SAMSUNG          )
12  TELECOMMUNICATIONS            )
    AMERICA, LLC, A DELAWARE      )
13  LIMITED LIABILITY             )
    COMPANY,                      )
14                                )
                     DEFENDANTS.  )
15  _____

16               TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE LUCY H. KOH
17             UNITED STATES DISTRICT JUDGE

18

19

20             APPEARANCES ON NEXT PAGE

21

22

23

24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
25

                                                        1

```
 1

 2    A P P E A R A N C E S:

 3    FOR APPLE:          MORRISON & FOERSTER
                          BY:  HAROLD J. MCELHINNY
 4                             MICHAEL A. JACOBS
                          425 MARKET STREET
 5                        SAN FRANCISCO, CALIFORNIA  94105

 6                        GIBSON, DUNN & CRUTCHER
                          BY:  JOSH A. KREVITT
 7                        200 PARK AVENUE
                          NEW YORK, NEW YORK  10166
 8
                          BY:  H. MARK LYON
 9                        1881 PAGE MILL ROAD
                          PALO ALTO, CALIFORNIA  94304
10
                          WILMER, CUTLER, PICKERING
11                        HALE AND DORR
                          BY:  MARK D. SELWYN
12                        950 PAGE MILL ROAD
                          PALO ALTO, CALIFORNIA  94304
13

14    FOR SAMSUNG:        QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
15                        BY:  WILLIAM C. PRICE
                               PATRICK M. SHIELDS
16                        865 SOUTH FIGUEROA STREET
                          10TH FLOOR
17                        LOS ANGELES, CALIFORNIA  90017

18

19

20

21

22

23

24

25
```

2

1    SAN JOSE, CALIFORNIA                 JULY 2, 2012

2              P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE CLERK:  CALLING CASE NUMBER

6    C-12-00630 LHK, APPLE, INCORPORATED VERSUS SAMSUNG

7    ELECTRONICS COMPANY, LIMITED, ET AL.

8              MR. MCELHINNY:  GOOD MORNING, YOUR HONOR.

9    HAROLD MCELHINNY AND MIKE JACOBS FROM

10   MORRISON & FOERSTER FOR APPLE.

11             MR. KREVITT:  GOOD MORNING, YOUR HONOR.

12   JOSH KREVITT AND MARK LYON, GIBSON DUNN, ALSO ON

13   BEHALF OF APPLE.

14             THE COURT:  GOOD MORNING.

15             MR. PRICE:  GOOD MORNING, YOUR HONOR.

16   WILLIAM PRICE AND PAT SHIELDS FROM QUINN, EMANUEL

17   FOR SAMSUNG.

18             THE COURT:  GOOD MORNING.

19             LET ME ASK BOTH PARTIES, HOW LONG DO YOU

20   EXPECT FOR THE FEDERAL CIRCUIT TO RULE ON A STAY

21   MOTION?

22             MR. MCELHINNY:  MAY I ADDRESS THAT, YOUR

23   HONOR?

24             THE COURT:  GO AHEAD, PLEASE.

25             MR. MCELHINNY:  I HAVE PRIOR EXPERIENCE

3

1    ON THIS WITH A PERMANENT INJUNCTION, AND WHAT THE

2    FEDERAL CIRCUIT DOES, TRADITIONALLY, IS AS SOON AS

3    A STAY MOTION IS GRANTED -- AS SOON AS A STAY IS

4    REQUESTED, THEN THEY HAVE A CLERK THAT REVIEWS

5    THAT.  THEY EITHER DENY IT RIGHT THEN OR THEY GRANT

6    THEMSELVES A SHORT STAY IN ORDER TO DETERMINE

7    WHETHER OR NOT THEY SHOULD GRANT A STAY PENDING

8    REVIEW.

9           SO THEY HAVE AN INTERMEDIATE -- THEY TAKE

10   CARE OF THEMSELVES.  IF THEY NEED TIME TO DECIDE

11   THE STAY, THEY GRANT THEMSELVES A SHORT PERIOD OF

12   TIME TO LOOK AT THE STAY MOTION.

13          SO THE ODDS -- THEY WILL EITHER DENY IT

14   IMMEDIATELY OR THEY WILL GRANT, USUALLY GRANT

15   THEMSELVES A SHORT PERIOD OF TIME AND THEN, AT THE

16   END OF THAT PERIOD OF TIME, THEY WILL ISSUE A

17   RULING ON WHETHER OR NOT THEY ARE GOING TO ISSUE A

18   STAY PENDING THE FULL TIME OF THE REVIEW.

19          THE COURT:  SO THEN -- YOU'RE SAYING IT'S

20   GENERALLY, A STAY IS GENERALLY GIVEN BY THE CIRCUIT

21   SO THAT IT CAN DECIDE WHETHER TO GRANT A LONGER

22   STAY?

23          MR. MCELHINNY:  IN TEBOW VERSUS ECHOSTAR

24   WHERE WE WERE FACING -- I WAS REPRESENTING

25   ECHOSTAR, AND WE WERE FACING AN INJUNCTION WHICH

                                                              4

1     WOULD HAVE REQUIRED AN INJUNCTION THAT WOULD HAVE

2     REQUIRED US TO PULL BOXES OUT OF PEOPLE'S HOUSES.

3          WE WENT TO THE FEDERAL CIRCUIT -- WE WERE

4     DENIED THE STAY AT THE DISTRICT COURT, WHICH IS

5     WHAT USUALLY HAPPENS BECAUSE THE DISTRICT COURTS

6     NORMALLY HAVE THOUGHT ABOUT THIS BEFORE THEY ISSUE

7     THE FIRST ORDERS -- WE WENT TO THE FEDERAL CIRCUIT,

8     AND WITHIN 15 MINUTES THEY GRANTED THEMSELVES A

9     STAY UNTIL THEY COULD CONSIDER THE STAY MOTION, AND

10    THEN A WEEK LATER THEY GRANTED US A PERMANENT

11    INJUNCTION.

12          THE COURT:  OKAY.

13          MR. PRICE:  SO MY UNDERSTANDING, I'M NOT

14    THE SAME EXPERT, BUT -- I DON'T HAVE THE SAME

15    EXPERTISE, BUT MY UNDERSTANDING FROM OUR FOLKS IS

16    IT'S IMMEDIATE OR WITHIN A WEEK OR TWO.

17          THE COURT:  OKAY.  NOW, ORIGINALLY YOU

18    HAD THOUGHT THAT YOU WOULD FILE ON WEDNESDAY, BUT I

19    SEE YOU WENT AHEAD AND FILED YESTERDAY THE NOTICE

20    OF APPEAL.  CORRECT?

21          MR. PRICE:  YES, WE FILED A NOTICE OF

22    APPEAL.

23          THE COURT:  OKAY.  AND YOU'RE GOING TO

24    MAKE A REQUEST FOR EXPEDITED TREATMENT?

25          MR. PRICE:  YES.

                                                    5

1    THE COURT: OKAY. ALL RIGHT.

2         LET ME ASK, WITH REGARD TO THE STANDARD,

3    IF BOTH SIDES BELIEVE THAT -- STANDARD HAVENS WAS

4    1990, SO IT'S QUITE SOME TIME AGO AND LONG

5    PRE-DATES THE SUPREME COURT'S DECISION IN WINTER.

6         DO YOU THINK THAT THE STANDARD HAVENS

7    SUBSTANTIAL CASE ON THE MERITS TEST STILL APPLIES?

8    OR DO YOU THINK WINTER BASICALLY OVERRULED THAT?

9         MR. KREVITT: YOUR HONOR, I'LL TAKE A

10   CRACK AT THAT.

11        AND I KNOW YOUR HONOR HAS ADDRESSED THIS

12   QUESTION AS TO WHAT THE PROPER STANDARD IS IN THE

13   LI DECISION OF LAST YEAR.

14        THERE SEEMS TO BE SOME QUESTION AS TO

15   WHETHER OR NOT IT IS A SUBSTANTIAL QUESTION COUPLED

16   WITH SHARP TIPPING OF THE BALANCE IS AN OPERATIVE

17   TEST, OR WHETHER THE MOVANT MUST SHOW A SUBSTANTIAL

18   STRONG CASE, A STRONG SHOWING OF A LIKELIHOOD OF

19   SUCCESS, COUPLED WITH THE OTHER FACTORS OF

20   LIKELIHOOD OF -- EXCUSE ME -- OF IRREPARABLE HARM,

21   NO HARM TO THE NON-MOVING PARTY, AND PUBLIC

22   INTEREST.

23        THE WAY WE ADDRESS THIS QUESTION IN OUR

24   PAPERS, BECAUSE THE STANDARD IS UNCERTAIN, AS YOUR

25   HONOR IDENTIFIED IN THAT CASE, IS WE ADDRESSED IT

6

1    UNDER BOTH STANDARDS AND EXPLAINED, WE HOPE, TO THE

2    COURT WHY, UNDER EITHER STANDARD, SAMSUNG CANNOT

3    COME CLOSE TO MEETING THE RELEVANT AND NECESSARY

4    FACTORS FOR A STAY.

5            THERE'S JUST -- THERE'S NOT EVEN A

6    SUBSTANTIAL QUESTION, LET ALONE A STRONG SHOWING

7    NECESSARY FOR A STAY PENDING APPEAL.

8            AND IF IT WERE A SUBSTANTIAL QUESTION,

9    YOUR HONOR, AGAIN, KNOWING THIS IN A CASE, A

10   SUBSTANTIAL QUESTION IS A VERY SERIOUS QUESTION.

11           IF I MAY QUOTE YOUR HONOR, YOU WROTE, FOR

12   A LEGAL QUESTION TO BE SERIOUS, IT MUST BE, QUOTE,

13   "A QUESTION GOING TO THE MERITS SO SERIOUS,

14   SUBSTANTIAL, DIFFICULT, AND DOUBTFUL AS TO MAKE THE

15   ISSUES RIPE FOR LITIGATION AND DESERVING OF MORE

16   DELIBERATE INVESTIGATION."

17           AND YOU NOTED, YOUR HONOR, THAT IN THE

18   NINTH CIRCUIT, SERIOUS LEGAL QUESTIONS OFTEN

19   CONCERN ISSUES OF CONSTITUTIONALITY.

20           NONE OF THOSE --

21           THE COURT:  WHAT CASE IS THAT?  IS THAT

22   LI VERSUS PERFECT DAY, OR WHICH CASE IS THAT?

23           MR. KREVITT:  YES, LI VERSUS PERFECT

24   FRANCHISE, YOUR HONOR.

25           THE COURT:  OKAY.

7

1              MR. KREVITT:  AND -- I'M SORRY, YOUR

2       HONOR.

3              THE COURT:  GO AHEAD, PLEASE.

4              MR. KREVITT:  I WAS SIMPLY GOING TO NOTE,

5       YOUR HONOR, THAT UNDER EITHER TEST, GIVEN THE

6       ISSUES THAT HAVE BEEN IDENTIFIED BY SAMSUNG, ALL OF

7       WHICH YOUR HONOR ADDRESSED VERY CAREFULLY IN YOUR

8       HONOR'S LENGTHY AND COMPREHENSIVE OPINION, THEY

9       SIMPLY GO TO ISSUES OF HOW ONE WEIGHS THE EVIDENCE,

10      THE FACTUAL DISPUTES.

11             THEY ARE NOT LEGAL ISSUES.  THEY'RE NOT

12      DEEP LEVEL SERIOUS LEGAL ISSUES, NOR CAN SAMSUNG IN

13      ANY EVENT MEET THE ADDITIONAL REQUIRED PRONGS OF

14      PROVING THAT SAMSUNG WOULD SUFFER IRREPARABLE HARM.

15             AS YOUR HONOR NOTED IN THE PRELIMINARY

16      INJUNCTION ORDER, SAMSUNG PRODUCED NO EVIDENCE

17      WHATSOEVER REGARDING ANY IRREPARABLE HARM OR ANY

18      HARDSHIP THAT THEY WOULD SUFFER IF A PRELIMINARY

19      INJUNCTION WERE ENTERED.

20             THE ONLY HARM THAT SAMSUNG HAS IDENTIFIED

21      IN ITS STAY MOTION IS THAT VERIZON AND SPRINT,

22      THIRD PARTIES, WOULD SUFFER HARM BECAUSE THERE IS

23      SOME BACK-TO-SCHOOL PROGRAM THAT INVOLVES THE

24      GALAXY NEXUS AND THOSE THIRD PARTIES WOULDN'T BE

25      ABLE TO INCLUDE THAT PRODUCT AS PART OF THEIR

1    BACK-TO-SCHOOL PROGRAM.

2              THE COURT:  BUT IF THE FEDERAL CIRCUIT IS

3    GOING TO GIVE ITSELF A STAY ANYWAY, THEN WHY SHOULD

4    I PUT EVERYONE IN THE AWKWARD POSITION OF HAVING TO

5    UNRING THE BELL?  WHY SHOULDN'T I JUST GRANT THE

6    STAY AND THEN LET THE FEDERAL CIRCUIT DECIDE HOW

7    LONG IT WANTS THE ISSUE TO BE STAYED?

8              MR. MCELHINNY:  I DON'T THINK -- I THINK

9    WHAT I TRIED TO SAY IS EITHER THEY DENY IT

10   IMMEDIATELY, OR THEY GRANT THEMSELVES ENOUGH TIME

11   TO ISSUE A STAY.

12             WE OBVIOUSLY ARE DEFENDING -- YOUR HONOR

13   HASN'T SET A HEARING ON THE EARLIER PRELIMINARY

14   INJUNCTION MOTION, BUT IN THE EARLIER PRELIMINARY

15   INJUNCTION, OF COURSE, THE FEDERAL CIRCUIT ITSELF

16   WORKED ON AN EXPEDITED BASIS AND ISSUED THE MANDATE

17   QUICKLY.

18             WE THINK IT'S EXTREMELY UNLIKELY THAT

19   THEY'RE GOING TO GRANT ANY KIND OF A STAY GIVEN THE

20   HISTORY OF THAT PARTICULAR INJUNCTION, AND FRANKLY,

21   HAVING BEEN AT THE FEDERAL CIRCUIT AND HAVING --

22             THE COURT:  BUT -- I'M SORRY TO INTERRUPT

23   YOU, BUT DIDN'T YOU SAY THAT GENERALLY IN A

24   SITUATION LIKE THIS -- SO NOT LIKE THE FIRST

25   INJUNCTION WHERE THE FEDERAL CIRCUIT HAS ALREADY

9

1    REVIEWED THE MERITS OF THE CASE -- BUT IN A CASE

2    LIKE THIS WHERE THE FEDERAL CIRCUIT HAS NOT LOOKED

3    AT IT, IT WOULD BE THE FIRST TIME, THAT THEY WOULD

4    GENERALLY GIVE THEMSELVES A STAY, AT LEAST ENOUGH

5    TIME TO DECIDE WHETHER THEY SHOULD GRANT A STAY?

6            MR. MCELHINNY:  LET ME BE PERFECTLY

7    CLEAR.  I WAS ASKING -- IN THE FIRST CASE I TRIED

8    TO ANSWER YOUR HONOR'S QUESTION JUST BY WHAT THE

9    PRACTICE IS.

10           THE COURT:  OKAY.

11           MR. MCELHINNY:  I THOUGHT I SAID THAT

12   THEY'D EITHER DENY IT IMMEDIATELY, OR THEY'D GRANT

13   THEMSELVES ENOUGH TIME TO LOOK AT IT IF THEY SEE AN

14   ISSUE.

15           IF YOU'RE ASKING ME -- I MEAN, WHAT WE'RE

16   GOING TO TELL THE FEDERAL CIRCUIT, AND WHAT I'M

17   QUITE -- YOU KNOW, I'M ALWAYS CONFIDENT -- BUT I'M

18   QUITE CONFIDENT IN THIS CASE THAT THEY'RE NOT GOING

19   TO SEE THESE AS SEPARATE CASES.

20           I MEAN, THESE ARE RELATED CASES.  WE'RE

21   DEALING WITH ONE DEFENDANT WHO HAS NOW A PATTERN OF

22   BEHAVIOR AND IN WHICH YOUR HONOR HAS ANALYZED, NOT

23   ONCE, BUT TWICE, IN VERY LENGTHY AND VERY

24   DETAILED -- YOUR HONOR HAS READ WHAT THE FEDERAL

25   CIRCUIT SAID ABOUT YOUR WORK BEFORE.  YOU'VE SEEN

1    WHAT THEY SAID --

2                THE COURT:  I GOT REVERSED ON A PORTION.

3                MR. MCELHINNY:  YOU -- I'LL TELL YOU,

4    WHEN I WAS SITTING THERE LISTENING TO THEM TALK

5    ABOUT THE DETAILED ANALYSIS THAT YOUR HONOR HAD

6    DONE AND THE DEFERENCE THAT THEY PAY TO DISTRICT

7    JUDGES, AND THEN WHEN I READ WHAT THEY SAID IN THE

8    OPINION, THEY'RE NOT GOING TO SEE THESE AS SEPARATE

9    CASES, IN MY VIEW.

10               WE DON'T SEE THEM AS SEPARATE CASES.  WE

11   SEE THEM AS A SERIES IN WHICH YOUR HONOR HAS FOUND

12   THAT SAMSUNG IS INFRINGING, OR IS LIKELY TO BE HELD

13   TO BE INFRINGING SIX OR SEVEN VALID PATENTS, ALONG

14   WITH FULL SPECTRUM OF ALL OF ITS PRODUCTS AND WHERE

15   YOUR HONOR, HAVING SET OUT THE LEVEL THAT YOU HAVE

16   ESTABLISHED FOR GRANTING PRELIMINARY INJUNCTIONS,

17   HAS FINALLY BEEN CONVINCED TO DO THAT.

18               AND I DON'T THINK THEY'RE GOING TO GRANT

19   A STAY.

20               I MEAN, THEY MAY GRANT THEMSELVES A SHORT

21   PERIOD OF TIME, BUT I -- AND IF THEY WANT TO DO

22   THAT, THEY CAN DO THAT.

23               WHAT I'M, FRANKLY, WORRIED ABOUT IS THAT

24   YOUR HONOR ENDS UP SENDING THEM A MIXED MESSAGE,

25   THAT YOUR HONOR ENDS UP SENDING THEM A MESSAGE THAT

1    YOU HAVE SOME DOUBT ABOUT THIS OR YOU HAVE SOME

2    QUESTION OR YOU THINK THERE IS SOME -- YOU KNOW,

3    THAT MAYBE YOU GOT IT WRONG, AND JUST HAVING BEEN

4    IN THIS COURTROOM WITH YOU AND ARGUED THESE ISSUES

5    AND LOOKING AT YOUR OPINION, I DON'T THINK THAT'S

6    WHERE YOU ARE.

7            AND IF THAT'S NOT WHERE YOU ARE, I DON'T

8    THINK YOU SHOULD SEND THEM THAT KIND OF A MESSAGE.

9            THE COURT:  WELL, I THINK -- I'M GOING TO

10   LET MR. PRICE RESPOND.

11           MR. PRICE:  I CAN'T WAIT.

12           THE COURT:  YOU KNOW, I -- I DON'T THINK

13   I GOT IT WRONG.

14           ON THE OTHER HAND, YOU KNOW, THE FEDERAL

15   CIRCUIT DOES REVERSE A HIGH PERCENTAGE OF DISTRICT

16   COURT DECISIONS.

17           AND, I MEAN, WE'LL GET INTO IT IN A

18   MINUTE, BUT SOME OF THE LAW ON IRREPARABLE HARM IS

19   NOT AS CLEARLY ESTABLISHED, YOU KNOW, POST-EBAY.

20           AND SO --

21           MR. MCELHINNY:  BUT EVEN IN THAT

22   CONTEXT --

23           THE COURT:  OKAY.

24           MR. MCELHINNY:  EVEN IN THAT CONTEXT,

25   WHAT WE'RE TALKING ABOUT -- WE'RE NOT TALKING

1      ABOUT, IS APPLE SUFFERING IRREPARABLE HARM?  THAT'S

2      NOT THE QUESTION, BECAUSE WE CLEARLY ARE.

3               AND SO THE QUESTION THAT YOUR HONOR --

4      YOU'RE ACTUALLY CREATING THE LAW.  I MEAN, YOU

5      WROTE IT THE FIRST TIME WITH THE NEXUS AND NOW

6      YOU'RE IN A DIALOGUE WITH THE FEDERAL CIRCUIT.

7               BUT THE QUESTION REALLY IS, HOW MUCH

8      IRREPARABLE HARM IS ENOUGH?

9               AND AT LEAST AS I UNDERSTAND THE RECORD,

10     I -- I'M GETTING NERVOUS HERE BECAUSE I'M SPEAKING

11     FOR YOU -- BUT AT LEAST AS I UNDERSTAND THE RECORD,

12     WE HAVE CONVINCED YOU THAT ENOUGH IS ENOUGH, THAT

13     THE IRREPARABLE HARM THAT WE ARE SUFFERING

14     JUSTIFIES THESE ORDERS.

15               AND IF THAT'S TRUE, I -- YOU KNOW, WE

16     HOPE YOUR HONOR WILL BE CONSISTENT WITH THAT, AND

17     IF THE FEDERAL CIRCUIT IS GOING TO CHANGE THAT,

18     WHICH I DON'T THINK THEY ARE, LET THEM DO IT.

19               BUT I -- AGAIN, I'M SAYING -- I THINK YOU

20     HAVE A LOT OF CREDIBILITY UP THERE, AND I THINK

21     THEY WANT TO KNOW, YOU KNOW, HOW SERIOUS YOU ARE

22     ABOUT THIS, AND YOUR OPINION SAYS THAT.

23               BUT I'M -- I CERTAINLY HOPE THAT YOU

24     DON'T SEND THEM A MIXED MESSAGE.

25               THE COURT:  LET ME ASK ONE LAST QUESTION

1    AND I'M GOING TO GO TO MR. PRICE AND ALLOW HIM TO

2    ADDRESS ALL THIS, AND I GUESS THIS IS FOR

3    MR. KREVITT.

4            IF -- ASSUMING THE SUBSTANTIAL CASE ON

5    THE MERITS STILL APPLIES, AND LET'S SAY I FIND THAT

6    SAMSUNG HAS NOT SHOWN LIKELIHOOD OF SUCCESS ON

7    APPEAL, BUT HAS SHOWN A SUBSTANTIAL CASE ON THE

8    MERITS, THEN TELL ME HOW I'M SUPPOSED TO RESOLVE

9    THE HARDSHIP QUESTION AND EXACTLY WHAT -- HOW MUCH

10   OF A HARDSHIP DOES SAMSUNG HAVE TO SHOW.

11           MR. KREVITT:  WELL, SO FIRST I WOULD WANT

12   AN OPPORTUNITY TO CONVINCE YOU THEY HAVEN'T MET THE

13   FIRST PRONG IN ANY EVENT.

14           BUT TO ANSWER YOUR QUESTION DIRECTLY, IT

15   IS CLEAR FROM THE CASE LAW THAT IT IS YET A HIGHER

16   BURDEN ON THE HARM BECAUSE IF YOU -- THAT'S THE

17   WHOLE ISSUE OF A SLIDING SCALE.

18           SO IF YOU REDUCE -- IT'S STILL A

19   SIGNIFICANT ISSUE, BUT IF YOU REDUCE THEIR BURDEN

20   ON LIKELIHOOD, THE CASES SAY THE BALANCE MUST

21   SHARPLY TIP, SHARPLY TIP IN SAMSUNG'S FAVOR.

22           AND THAT'S A CHANGE FROM A MORE RIGID

23   TEST FROM WHAT THE TEST WAS, WHICH IS THAT SAMSUNG

24   MUST SHOW IRREPARABLE HARM, THAT THEY WOULD SUFFER

25   IRREPARABLE HARM; THAT SAMSUNG MUST SHOW THAT APPLE

14

1    WOULD NOT SUFFER ANY SUBSTANTIAL INJURY; AND THAT

2    THE PUBLIC INTEREST FAVORS A STAY.

3            SO THE QUESTION, TO ANSWER -- THAT YOU

4    ASKED, YOUR HONOR, IS IT BECOMES A MUCH, MUCH

5    HIGHER BURDEN FOR SAMSUNG TO MEET ON THE BALANCE OF

6    THE HARDSHIPS.

7            AND IN ADDRESSING THAT VERY QUICKLY, YOUR

8    HONOR, AGAIN, THE HARM THAT APPLE WILL SUFFER, YOUR

9    HONOR HAS FOUND THAT.

10           YOUR HONOR FOUND, QUITE CORRECTLY IN OUR

11   VIEW, THAT APPLE IS SUFFERING SUBSTANTIAL AND

12   IRREPARABLE HARM, AND IMMEDIATE HARM.  WE ARE BEING

13   HARMED TODAY, YESTERDAY, FOR THE LAST SEVEN MONTHS

14   WHILE THIS PRODUCT HAS BEEN ON THE MARKET, AND WE

15   WILL BE HARMED TOMORROW AND NEXT WEEK AND SO FORTH.

16           THERE IS NO REASON FOR THAT TO BE ABLE TO

17   CONTINUE JUST SO SAMSUNG CAN CONTINUE TO FLOOD THE

18   MARKET WITH PRODUCTS.  THAT'S THE HARM THAT APPLE

19   WILL SUFFER.

20           THERE IS NO HARM TO SAMSUNG, NONE, FOR

21   SEVERAL REASONS, YOUR HONOR, IF I MAY QUICKLY

22   ADDRESS THIS.

23           THE REASON THERE IS NO HARM TO SAMSUNG

24   IS, FIRST, SAMSUNG ASKED FOR A HUNDRED MILLION

25   DOLLAR BOND.  WE THOUGHT THAT BOND WAS EXCESSIVE.

1    YOUR HONOR -- WE DIDN'T HAVE AN OPPORTUNITY TO TAKE

2    DISCOVERY.  WE'RE NOT COMPLAINING ABOUT THAT.

3           YOUR HONOR GAVE SAMSUNG EXACTLY THE BOND

4    THAT SAMSUNG ASKED FOR, NEARLY A HUNDRED MILLION

5    DOLLARS.

6           SECOND, SAMSUNG PRESENTED, AND YOUR HONOR

7    FOUND THIS, YOU FOUND IT, PRESENTED NO EVIDENCE AT

8    ALL OF ANY HARDSHIP IT WOULD SUFFER IN THE EVENT OF

9    AN INJUNCTION.

10           AND NOW THAT THEY WANT TO AVOID THE

11   ENFORCEMENT OF THAT INJUNCTION, THEY COME FORWARD

12   WITH A DECLARATION AND THE ONLY HARM THEY IDENTIFY

13   IS THAT VERIZON AND SPRINT WILL SUFFER SOME HARM

14   BECAUSE THE GALAXY NEXUS IS PART OF THE

15   BACK-TO-SCHOOL PROGRAM.

16           THAT IS NOT COGNIZABLE HARM FOR SAMSUNG

17   IN ANY EVENT.  IT CERTAINLY DOESN'T RISE TO THE

18   LEVEL OF HARM THAT SAMSUNG NEEDS TO ESTABLISH TO

19   AVOID ENFORCEMENT OF AN INJUNCTION.

20           AND THIS IS REALLY IMPORTANT, YOUR HONOR,

21   ON THAT QUESTION OF THE BACK-TO-SCHOOL PROGRAM.

22           THE SOLE EVIDENCE ON WHICH SAMSUNG RELIES

23   FOR HARM -- COLLEGE STUDENTS ARE PART OF SAMSUNG'S

24   BEAT APPLE STRATEGY.  IT IS THE VERY BACK-TO-SCHOOL

25   PROGRAM THAT CAUSES APPLE THE IRREPARABLE HARM.

1       IT'S -- THE PURPOSE OF SAMSUNG'S MOTION PRACTICE IS

2       TO JUST BE ABLE TO GET MORE AND MORE PRODUCT OUT,

3       INCLUDING TO COLLEGE STUDENTS.  THAT IS EXPLICITLY

4       PART OF SAMSUNG'S STRATEGY TO BEAT APPLE.

5               IF I MAY HAND UP ONE DOCUMENT, YOUR

6       HONOR?  THIS IS A DOCUMENT THAT WAS PART OF THE

7       RECORD.  IT WAS ATTACHED AS EXHIBIT 44.

8               MR. PRICE:  MAY I SEE A COPY?

9               MR. KREVITT:  YES, OF COURSE.

10              I HAVE A COUPLE COPIES FOR YOU TO SHARE.

11              AND VERY QUICKLY, YOUR HONOR, IF I COULD

12      JUST POINT YOU TO A COUPLE POINTS IN THIS DOCUMENT.

13              REMEMBER, THE ONLY HARM THAT SAMSUNG HAS

14      IDENTIFIED IN ITS MOTION TO STAY IS THAT THERE IS A

15      BACK-TO-SCHOOL PROGRAM INVOLVING THIRD PARTIES,

16      VERIZON AND SPRINT.  THEY IDENTIFY NO OTHER HARM

17      WHATSOEVER.

18              WE PICKED JUST ONE DOCUMENT, YOUR HONOR,

19      TO DEMONSTRATE WHY NOT ONLY IS THAT NOT COGNIZABLE

20      HARM, BUT WHY IT IS SAMSUNG'S STRATEGY.

21              SO YOUR HONOR CAN SEE FROM THE TITLE OF

22      THIS DOCUMENT, THIS IS ALL ABOUT BEATING APPLE.

23      THIS IS A STRATEGY DOCUMENT ABOUT SAMSUNG'S

24      DIFFERENT WAYS THAT IT CAN BEAT APPLE.

25              AND THE VERY FIRST PAGE, YOUR HONOR,

17

1    ABOUT HALFWAY DOWN, YOU CAN SEE -- AND IT'S A

2    CONFIDENTIAL DOCUMENT, SO I NEED TO BE CAREFUL --

3    BUT THE THIRD BULLET IDENTIFIES TARGETS, AND THEN

4    IF YOU LOOK FURTHER DOWN, YOU CAN SEE WHO IS

5    IDENTIFIED AND WHY.

6              IT'S EXACTLY THE BACK-TO-SCHOOL PROGRAM

7    THAT SAMSUNG IS NOW ASKING THIS COURT TO RELIEVE

8    SAMSUNG OF THE EFFECT OF THE INJUNCTION SO IT CAN

9    TARGET THESE VERY CONSUMERS THAT ARE ON THE FIRST

10   PAGE OF ITS BEAT APPLE STRATEGY.

11             AND IF YOU LOOK ABOVE, YOUR HONOR, AT THE

12   SECOND BULLET WHERE -- BEGINNING "SDA'S BEAT APPLE

13   STRATEGY," AND IT RUNS THROUGH EXACTLY WHAT WE

14   EXPLAINED IN OUR PAPERS, EXACTLY WHAT YOUR HONOR

15   FOUND ON EVERY SINGLE POINT.

16             IF I -- IF I MAY, YOUR HONOR, IF YOU

17   WOULD FLIP TO ABOUT TWO-THIRDS OF THE WAY THROUGH

18   TO PAGE 26 OF THE DOCUMENT.

19             THE COURT:  DID YOU CITE TO THIS DOCUMENT

20   AT ALL --

21             MR. KREVITT:  YES.

22             THE COURT:  -- IN YOUR MOTION?

23             MR. KREVITT:  YES, WE DID, YOUR HONOR.

24             THE COURT:  WHERE?

25             MR. KREVITT:  AND IT WAS ATTACHED, YOUR

1    HONOR, AS I NOTED ON THE COVER PAGE, AS EXHIBIT 44

2    TO DR. VELLTURO'S REPLY DECLARATION.  IT WAS NOT

3    SUBMITTED AS PART OF OUR OPENING PAPERS, OF COURSE,

4    BECAUSE WE DIDN'T HAVE IT.  IT WAS PRODUCED IN

5    DISCOVERY.

6            THE COURT:  SO THIS WAS IN YOUR REPLY

7    BRIEF?

8            MR. KREVITT:  YES, YOUR HONOR.  AND YOUR

9    HONOR CITED THIS DOCUMENT.  YOUR HONOR CITED THIS

10   DOCUMENT AS WELL.

11           THE COURT:  OKAY.

12           MR. KREVITT:  IF YOUR HONOR WOULD FLIP TO

13   PAGE 26, THIS IS WHERE THEY ADDRESS THIS VERY ISSUE

14   IN MORE DETAIL.

15           AND IT ALMOST IS VERBATIM OUT OF YOUR

16   HONOR'S RULING ON IRREPARABLE HARM DEALING WITH

17   STICKINESS, FUTURE PURCHASES, PLATFORM LOYALTY, THE

18   NEED TO TARGET THE STUDENTS THAT SAMSUNG IS NOW

19   ASKING THIS COURT TO ALLOW IT TO SELL INFRINGING

20   DEVICES TO.

21           THE SOLE HARM IDENTIFIED BY SAMSUNG IN

22   ITS MOTION TO STAY IS IDENTIFIED HERE, YOUR HONOR,

23   AS CRITICAL TO BEATING APPLE, TO LOCKING IN

24   CONSUMERS.

25           SO I JUST WANTED TO ADDRESS ON THE MERITS

1    THE ONE THING THAT SAMSUNG IDENTIFIES AS ITS HARM

2    BECAUSE YOUR HONOR ASKED ABOUT IT.

3            AND IF I MAY JUST MAKE ONE OTHER POINT,

4    YOUR HONOR, BECAUSE I KNOW WE WERE ADDRESSING

5    SPECIFIC QUESTIONS SO I DON'T WANT TO GO TOO LONG

6    WITHOUT MAKING SURE I'M ADDRESSING YOUR HONOR'S

7    ISSUES, YOUR HONOR ASKED WHY NOT JUST GIVE A STAY

8    AND LET THE FEDERAL CIRCUIT ADDRESS IT?

9            AND I THINK THE ANSWER, YOUR HONOR, IS

10   THAT CASE AFTER CASE SAYS THAT THERE ARE FACTORS TO

11   CONSIDER AS TO WHETHER A STAY SHOULD BE GRANTED.

12   THERE ARE FACTORS THAT THIS COURT SHOULD CONSIDER,

13   AND YOUR HONOR WAS WRESTLING WITH WHAT IS THAT

14   RIGHT STANDARD.

15           BUT IN ANY EVENT, THEY MUST ESTABLISH A

16   LIKELIHOOD OF SUCCESS ON APPEAL, OR AT LEAST A

17   SUBSTANTIAL QUESTION.

18           THEY HAVE NOT DONE THAT.  THEY'VE SIMPLY

19   REHASHED ALL OF THE ISSUES THAT YOUR HONOR

20   CAREFULLY CONSIDERED AND, IN PAGE AFTER PAGE OF

21   DETAILED ANALYSIS, REJECTED.  IT'S THE SAME EXACT

22   ISSUES.

23           THE COURT:  BUT WHY ISN'T THE IRREPARABLE

24   HARM ISSUE A SUBSTANTIAL QUESTION?  I THINK

25   EVERYONE IN HERE WOULD AGREE THE LAW IS NOT

1    PERFECTLY CLEAR ON IF APPLE HAS ACTUALLY BEEN

2    GAINING MARKET SHARE, BUT THE COURT FINDS THAT YOU

3    WOULD HAVE GAINED EVEN MORE HAD THERE NOT BEEN

4    INFRINGEMENT, THAT -- DO YOU HAVE A CASE ON POINT

5    ON THAT ISSUE?

6              MR. KREVITT:  YES, YOUR HONOR, BECAUSE

7    THE -- THE ISSUE IS IT'S A SUBSTANTIAL LEGAL

8    QUESTION, AND YOUR HONOR'S QUESTION GOES TO EXACTLY

9    THE PROBLEM WITH SAMSUNG'S MOTION.

10             IT ISN'T HOW DID YOUR HONOR WEIGH THE

11   EVIDENCE, AND YOU LOOKED AT SOME FIGURES AND YOU

12   CONCLUDED IT'S A LOT, AND MAYBE THE FEDERAL CIRCUIT

13   WILL LOOK AT THE SAME FIGURES AND CONCLUDE THAT

14   IT'S DIFFERENT.

15             THE FEDERAL CIRCUIT HAS MADE VERY CLEAR,

16   YOUR HONOR, INCLUDING IN THE APPLE CASE, THAT THERE

17   IS SUBSTANTIAL DEFERENCE PAID TO THE DISTRICT

18   COURT, AND ONLY IN AN ABUSE OF DISCRETION CONTEXT,

19   ONLY IN AN ABUSE OF DISCRETION WILL A PRELIMINARY

20   INJUNCTION RULING BE REVERSED ONE WAY OR THE OTHER.

21   THEY SAID THAT REPEATEDLY IN THEIR ORDER.

22             SO THE SUBSTANTIAL QUESTION, YOUR HONOR,

23   IS NOT JUST SOMEBODY SITTING IN YOUR SHOES MIGHT

24   HAVE LOOKED AT THIS DIFFERENTLY.

25             AND IT'S AN IMPORTANT QUESTION.  THE

21

1    SUBSTANTIAL QUESTION HAS TO RISE TO THE LEVEL THAT

2    IT MIGHT ACTUALLY CONSTITUTE AN ABUSE OF YOUR

3    HONOR'S WIDE DISCRETION IN THE FACTUAL FINDINGS

4    THAT YOUR HONOR MADE, AND THE FACTUAL FINDINGS ARE

5    ASSESSED ON A CLEARLY ERRONEOUS BASIS.

6           SO THE SUBSTANTIAL QUESTION ON

7    IRREPARABLE HARM IS NOT JUST SOMEBODY MAY HAVE

8    WEIGHED IT DIFFERENTLY.  THAT'S EXACTLY WRONG.

9           THE SUBSTANTIAL QUESTION IS, HAS SAMSUNG

10   RAISED A SUBSTANTIAL ISSUE REGARDING WHETHER YOUR

11   HONOR HAS ABUSED YOUR DISCRETION; WHETHER YOUR

12   HONOR'S FACTUAL FINDINGS -- AND THAT'S WHAT THEIR

13   BRIEF IS ALL ABOUT, FACTUAL FINDINGS -- HAVE THEY

14   RAISED A SUBSTANTIAL QUESTION THAT YOUR HONOR'S

15   FACTUAL FINDINGS ARE CLEARLY ERRONEOUS?

16          AND THEY CLEARLY HAVE NOT, YOUR HONOR.

17   IT'S THE EXACT SAME ISSUES IN THEIR BRIEF, ALMOST

18   VERBATIM, MEANING THEIR OPPOSITION BRIEF, AND YOUR

19   HONOR CONSIDERED AND EVALUATED, CONSIDERED ALL OF

20   THE EVIDENCE THAT SAMSUNG IS NOW ADVANCING TO YOUR

21   HONOR, REJECTED, MADE FINDINGS, AND THOSE FINDINGS,

22   AS I SAID, WILL BE EVALUATED ON A CLEARLY ERRONEOUS

23   STANDARD.

24          NO SUBSTANTIAL QUESTION HAS BEEN RAISED

25   HERE, YOUR HONOR, AS TO WHETHER YOUR HONOR HAS

1    ABUSED THE COURT'S DISCRETION.

2           THE COURT:  OKAY.  LET ME HEAR FROM

3    MR. PRICE.

4           LET'S GO BACK TO THE FIRST QUESTION OF

5    WHETHER THE SUBSTANTIAL CASE ON THE MERITS TEST

6    SURVIVED THE SUPREME COURT'S WINTER DECISION.

7           MR. PRICE:  AND I THINK AS THE MERIAL

8    CASE CITES, OR SUGGESTS, YES.

9           I MEAN, THERE'S NO SUGGESTION REALLY THAT

10   THAT IS NO LONGER ONE WAY THAT WE CAN GET A STAY AT

11   THIS LEVEL.

12          IF THERE'S A SUBSTANTIAL QUESTION -- AND

13   HERE THERE IS -- IF THERE'S SUBSTANTIAL LEGAL

14   QUESTION, THAT IS, SAMSUNG HAS TO SHOW, YOU KNOW,

15   THE NEXUS, THE CAUSATION, AND THE QUESTION IS

16   WHAT'S THEIR BURDEN TO COME FORWARD AND SHOW THAT,

17   AS A RESULT OF THE QUICK SEARCH FUNCTION BEING IN

18   THE GALAXY NEXUS, THAT THERE HAS BEEN A LOSS OF

19   SUBSTANTIAL MARKET SHARE, YOU KNOW, TO THE IPHONE

20   OR TO APPLE.

21          AND AS YOU NOTED IN YOUR OPINION, YOUR

22   HONOR, AND AS WE COULD TELL WHEN WE HAD THE ORAL

23   ARGUMENT SEVERAL WEEKS AGO, THAT'S SOMETHING WHICH,

24   WHICH IS A SUBSTANTIAL QUESTION AND HASN'T BEEN

25   ANSWERED CLEARLY.  LET'S PUT IT THAT WAY.

1        AND THE QUESTION HERE, WHEN THEY'RE

2    LOOKING AT THIS RECORD, WILL BE, LOOK, WE HAVE THE

3    QUICK SEARCH FUNCTION IN THE GALAXY NEXUS.  WE HAVE

4    MARKET SHARE CHANGES FOR APPLE.  IS IT ENOUGH, FOR

5    EXAMPLE, TO -- HAS APPLE MET ITS BURDEN BY SAYING,

6    "WE HAVE THESE MARKET CHANGES," EVEN THOUGH YOU

7    WOULD HAVE THOSE MARKET CHANGES EVEN IF SAMSUNG

8    DIDN'T EXIST.

9        AND WHAT I MEAN, YOUR HONOR, IS, AS YOU

10   KNOW, APPLE'S BUSINESS STRATEGY IS TO HOLD BACK

11   IMPROVEMENTS ON ITS PHONES FOR BASICALLY A YEAR AND

12   THEN COME OUT WITH A NEW PHONE AND THEN THEY HAVE

13   EXPLOSIVE SALES, AND THE EVIDENCE IS UNDISPUTED

14   THAT THAT'S WHAT THEIR STRATEGY IS AND THAT'S WHAT

15   HAPPENS.  SO YOU'RE GOING TO HAVE THESE DIFFERENCES

16   IN MARKET SHARE.

17       EVEN IF SAMSUNG WASN'T IN THE MARKET,

18   APPLE'S MARKET SHARE WOULD DECREASE.

19       IN FACT, IN THE EXAMPLE YOU GAVE IN YOUR

20   ORDER, WHICH IS A 4TH QUARTER 2010, IF YOU LOOK AT

21   DR. VELLTURO, APPLE'S EXPERT'S DATA BEHIND THAT

22   MARKET CHANGE FROM I GUESS IT WAS 33 TO 22 PERCENT

23   FOR SAMSUNG AND 3 TO 16 PERCENT FOR APPLE, IF YOU

24   LOOK AT THE DATA, SAMSUNG'S UNITS SOLD ACTUALLY

25   WENT DOWN, EVEN THOUGH ITS MARKET SHARE INCREASED

24

1    FROM 3 TO 16.  APPLE APPARENTLY WENT DOWN, TOO, AND

2    IT WENT DOWN, YOU KNOW, MORE BECAUSE APPLE

3    DOMINATED THE MARKET THEN.

4         BUT IT WAS WHAT ALWAYS HAPPENS WHEN YOU

5    HAVE THIS ONE YEAR STRATEGY OF EXPLOSIVE SALES AND

6    THEN YOU DECREASE.

7         AND SO THE FEDERAL CIRCUIT'S GOING TO BE

8    LOOKING AT, WELL, WHAT BURDEN DO WE REQUIRE HERE TO

9    PROVE THIS LINKAGE?

10        YOU KNOW, CAN YOU USE MARKET SHARE WHEN

11   THERE'S NO EVIDENCE AT ALL THAT THAT MARKET SHARE

12   DECREASE IS ANYTHING MORE THAN WHAT APPLE -- WHAT

13   ALWAYS HAPPENS WITH APPLE?

14        AND WITH RESPECT TO THE QUICK SEARCH

15   ITSELF --

16        THE COURT:  CAN I INTERRUPT YOU HERE?

17        MR. PRICE:  SURE.

18        THE COURT:  WHAT -- WHAT EVIDENCE

19   WOULD -- THE FEDERAL CIRCUIT SAID THAT CONSUMER

20   SURVEY EVIDENCE IS NOT REQUIRED.

21        MR. PRICE:  YES.

22        THE COURT:  SO WHAT EVIDENCE WOULD HAVE

23   TO BE PRODUCED OR SHOWN TO SHOW THAT A CUSTOMER IS

24   BUYING A GALAXY NEXUS INSTEAD OF AN IPHONE, OR THAT

25   A CUSTOMER IS BUYING A GALAXY NEXUS BECAUSE OF THE

                                                        25

1    QUICK SEARCH FUNCTION?

2              MR. PRICE:  WELL, THERE ARE A COUPLE OF

3    THINGS THAT THEY COULD PRESENT.

4              ONE IS WHEN THE FEDERAL CIRCUIT SAID YOU

5    DON'T HAVE TO PRESENT CONSUMER SURVEYS, I THINK IT

6    WAS BASICALLY SAYING -- IT'S KIND OF UNREALISTIC TO

7    GO OUT IN A SHORT PERIOD OF TIME AND DO CONSUMER

8    SURVEYS.

9              WE DON'T HAVE THAT HERE.  APPLE DOES

10   CONSUMER SURVEYS ALL THE TIME.  THEY DO MORE

11   CONSUMER SURVEYS PROBABLY THAN -- WELL, I CAN'T SAY

12   THAN ANY COMPANY THAT EXISTS.

13             BUT YOU'VE SEEN A LOT OF THEIR CONSUMER

14   SURVEYS.  SO THEY ACTUALLY WOULD BE IN A POSITION,

15   YOU WOULD THINK HISTORICALLY, IF THIS WAS AN ISSUE,

16   TO COME FORWARD AND SAY THERE ARE CONSUMER SURVEYS

17   LIKE THAT.  THAT WOULD BE ONE THING.

18             THE OTHER THING YOU WOULD LOOK AT IS HOW

19   IS THE -- HOW IS THE GALAXY NEXUS SOLD?  HOW IS IT

20   ADVERTISED?  WHAT DOES SAMSUNG SAY ARE ITS

21   COMPELLING FEATURES?

22             AND, OF COURSE, SAMSUNG HAS SAID, "HEY, A

23   GREAT THING HERE, THERE'S UNIFIED SEARCH."

24             IF THAT'S WHAT IT'S SAYING TO CONSUMERS,

25   IF THAT'S A LOUD MESSAGE, THEN YOU MIGHT BE ABLE TO

26

1    CONCLUDE THAT A PORTION OF THE .5 PERCENT MARKET

2    SHARE THAT REPRESENTS THE GALAXY NEXUS WOULD HAVE

3    GONE TO APPLE INSTEAD.

4            AND OF COURSE I WOULD SUGGEST THAT EVEN

5    IF ALL OF THAT WENT TO APPLE, THAT'S NOT

6    SUBSTANTIAL MARKET SHARE LOSS, .5 PERCENT, WHICH IS

7    WHAT THE GALAXY NEXUS UNIT OF VOLUME'S MARKET SHARE

8    IS.  THAT'S NOT SUBSTANTIAL IN ANY EVENT.

9            BUT IF YOU'RE LOOKING TO SEE, OKAY, IF

10   THE '604 -- IF THE UNIFIED SEARCH WASN'T IN THE

11   GALAXY NEXUS, YOU KNOW, WOULD A SUBSTANTIAL PART OF

12   THE .5 PERCENT GO TO APPLE, THEN YOU'D WANT TO LOOK

13   AND SEE, YOU KNOW, HOW IS IT THIS THING IS EVER

14   TIED TO THE CONSUMERS?  WHAT IS REALLY EMPHASIZED

15   HERE?

16           ANOTHER THING YOU MIGHT LOOK AT IS WHAT'S

17   HAPPENED IN THE MARKET IN THE PAST AS A RESULT OF

18   THE UNIFIED SEARCH BEING IN A PHONE?

19           AND HERE'S THE UNDISPUTED EVIDENCE OF

20   THAT:  SAMSUNG HAD A QUICK SEARCH IN ITS PHONE AS

21   OF JULY 2010, OKAY?

22           THE IPHONE 4 WAS IN THE MARKET, DID GREAT

23   SALES.  IT WAS A PHENOMENALLY WELL SOLD PRODUCT.

24           ACCORDING TO APPLE, ITS PRODUCT DIDN'T

25   HAVE UNIFIED SEARCH UNTIL THE 4S IN OCTOBER OF

1     2011.

2             SO YOU'VE GOT, YOU KNOW, OVER A YEAR WITH

3     SAMSUNG HAVING THE QUICK SEARCH AND APPLE DOESN'T,

4     AND YET, APPLE IS SELLING LIKE CRAZY.

5             AND THERE'S NO EVIDENCE, EITHER APPLE

6     DOCUMENTS INTERNALLY OR SAMSUNG DOCUMENTS, SAYING,

7     "HEY, SAMSUNG HAS THIS HUGE ADVANTAGE BECAUSE IT

8     HAS QUICK SEARCH FOR THIS YEAR-PLUS AND APPLE DOES

9     NOT."

10            NOW, I THINK YOU'RE RIGHT THAT SEARCH IS

11    SOMETHING THAT CONSUMERS EXPECT A SMARTPHONE TO DO.

12    IT WOULD BE HARD TO SELL A SMARTPHONE IF IT HAS NO

13    SEARCH.

14            THE QUESTION IS, ON NEXUS, WHETHER OR NOT

15    APPLE IS LOSING SUBSTANTIAL MARKET SHARE NOT

16    BECAUSE OF SEARCH, BUT BECAUSE OF QUICK SEARCH.

17            NOW, APPLE CAME -- STARTED USING QUICK

18    SEARCH WHEN IT CAME OUT WITH SIRI BECAUSE APPLE

19    THOUGHT, AND YOUR HONOR CONCLUDED, THAT QUICK

20    SEARCH WAS CORE TO SIRI FUNCTIONALITY, AND THAT'S A

21    BUT-FOR DRIVER OF DEMAND FOR SIRI.

22            NOW, LET'S ACCEPT THAT AS TRUE.

23            THAT'S NOT THE QUESTION YOUR HONOR MUST

24    ASK.  THE QUESTION IS WHETHER OR NOT QUICK SEARCH

25    ON GALAXY NEXUS, WHETHER THE ABSENCE OR PRESENCE OF

                                                    28

1    THAT -- UNDER THE STANDARD THAT YOU CITED TO, THE

2    QUESTION YOU SHOULD BE ASKING TO YOUR STANDARD IS

3    WHETHER OR NOT, LIKE BASIC SEARCH, LIKE APPLE HAD

4    ON ITS IPHONE 4, IF THE GALAXY NEXUS JUST HAD THAT,

5    YOU KNOW, WOULD SUBSTANTIAL MARKET SHARE GO TO

6    APPLE BECAUSE THERE WAS NO QUICK SEARCH?

7             SO YOU COULD LOOK AT -- AND AGAIN, THAT

8    HISTORICAL DATA, WHETHER OR NOT THERE WAS, YOU

9    KNOW, SOMEONE AT APPLE SAYING, "OH, MY GOSH.

10   SAMSUNG HAS QUICK SEARCH, THEY'VE HAD IT FOR A

11   YEAR, WE MUST PUT QUICK SEARCH IN OUR PHONE," THAT

12   DOESN'T EXIST, AND THAT'S BECAUSE APPLE WAS NEVER

13   CONCERNED ABOUT THAT.

14             IN FACT, AND THIS IS IN THE RECORD, IT'S

15   A FEBRUARY 2012 COMPARATIVE UPDATE INTERNAL TO

16   APPLE, AND THIS IS SCOTT WASSEN DECLARATION,

17   EXHIBIT B, AND THE COMPARATOR UPDATE DOESN'T EVEN

18   MENTION THE GALAXY NEXUS.  IT'S NOT EVEN ON THE

19   RADAR SCREEN.

20             SIRI IS ALL ABOUT, YOU KNOW, DELIVERING

21   EXPERIENCE TO THE CONSUMER, INCLUDING VOICE, WHICH

22   THE NEXUS DOESN'T.

23             AND, YOUR HONOR, I --

24             THE COURT:  BUT THE NEXUS DOES HAVE A

25   VOICE CAPABILITY.

29

1          MR. PRICE:  WELL, I'M GOING TO TALK ABOUT

2     THAT.

3          YES, BUT IT IS UNDISPUTED THAT THAT VOICE

4     CAPABILITY IS NOT LINKED AT ALL TO QUICK SEARCH.

5     SO THAT'S A RED HERRING.

6          THE COURT:  WHAT DOES THAT MEAN?

7          MR. PRICE:  WHAT THAT MEANS IS IT HAS A

8     VOICE CAPABILITY, BUT IT DOES NOT USE -- IT DOES

9     NOT SEND A SEARCH OUT TO, TO VARIOUS SEARCH AREAS,

10    RESPECTIVE SEARCH AREAS, USING DIFFERENT HEURISTIC

11    ALGORITHMS.  THERE'S BEEN NO CONTENTION THAT IT

12    USES A QUICK SEARCH FUNCTION.  IN FACT, THIS IS NOT

13    PART OF THE RECORD.

14         THE COURT:  BUT IT'S ADVERTISED AS BEING

15    ABLE TO GIVE YOU AN ANSWER FROM INFORMATION ON THE

16    DEVICE AS WELL AS, YOU KNOW, FROM THE INTERNET AND

17    OTHER SOURCES.

18         MR. PRICE:  I SAW THAT.

19         THE COURT:  YEAH.

20         MR. PRICE:  AND THE DEPOSITION OF

21    MR. GILBERT WAS TAKEN -- AND THIS IS NOT PART OF

22    THE RECORD BECAUSE THERE JUST HAS NEVER BEEN AN

23    ALLEGATION THAT THE VOICE FUNCTION ON THE NEXUS

24    USES QUICK SEARCH.

25         BUT MR. GILBERT OF GOOGLE WAS DEPOSED AND

1    HE EXPLAINED THAT, NO, THERE'S A VOICE FUNCTION

2    THERE, BUT IT DOES NOT DO QUICK SEARCH.

3              THERE'S NEVER BEEN AN ALLEGATION THAT IT

4    USES QUICK SEARCH.

5              YOU WOULD THINK THAT IF IT DID -- IF THE

6    GALAXY NEXUS DID WHAT SIRI DID, YOU WOULD THINK

7    THAT SAMSUNG WOULD BE ADVERTISING THAT BECAUSE IT'S

8    PRETTY INTERESTING AND FUN, YOU KNOW, TECHNOLOGY.

9              THE COURT:  CAN I GO BACK TO MY ORIGINAL

10   QUESTION, AND THAT IS -- OR I'M SORRY.  MAYBE I

11   DIDN'T ASK YOU YET.

12             IF I DON'T FIND LIKELIHOOD OF SUCCESS ON

13   APPEAL, BUT I DO FIND A SUBSTANTIAL CASE ON THE

14   MERITS --

15             MR. PRICE:  UM-HUM.

16             THE COURT:  -- THEN WHAT SHOWING OF

17   HARDSHIP WOULD SAMSUNG NEED TO MAKE IN ORDER TO GET

18   A STAY?

19             MR. PRICE:  WELL, I THINK, AS THE CASES

20   SAY, THAT YOU NEED TO FIND THAT HARM MILITATES IN

21   FAVOR OF SAMSUNG.

22             AND WE'RE TALKING ABOUT A CERTAIN TIME

23   PERIOD HERE, NOT UNTIL THE END OF THIS CASE.  WE'RE

24   TALKING ABOUT -- ONE, WE'RE ASKING FOR A STAY

25   PENDING THE FEDERAL CIRCUIT DECIDING THIS APPEAL,

1    THIS EXPEDITED APPEAL.

2            AND GIVEN YOUR PAST EXPERIENCE, THAT'S

3    GOING TO BE, IF WE DO THE ENTIRE APPEAL PROCESS

4    EXPEDITED, FOUR MONTHS, FIVE, I THINK.  AND SO

5    WE'RE LOOKING AT THAT TIMEFRAME.

6            OR, IN THE ALTERNATIVE, WE ASKED FOR A

7    STAY PENDING THE FEDERAL CIRCUIT'S DECISION ON OUR

8    EMERGENCY STAY MOTION, AND THAT'S GOING TO BE A

9    MATTER OF, I GUESS IT WAS, 15 MINUTES TO A WEEK OR

10   TWO.

11           AND SO WE'RE GOING TO, YOU KNOW, WHAT IS

12   THEN THE BALANCE OF HARM?  DOES IT MILITATE IN

13   SAMSUNG'S FAVOR?

14           AND I WOULD SUGGEST IT DOES.

15           FOR ONE THING, IF WE LOOK AT APPLE AND

16   APPLE'S HARM, AS I SAID, THE GALAXY NEXUS IS ONLY,

17   YOU KNOW, AS OF THE LAST DATA THAT WE HAD, .5

18   PERCENT OF THE MARKET.  IT IS -- IT IS NOT AT ITS

19   PEAK OF SALES.  THAT USUALLY HAPPENS WHEN IT FIRST

20   COMES OUT.

21           AND SO THERE'S NOT GOING TO BE A

22   SUBSTANTIAL EFFECT ON APPLE'S MARKET SHARE.

23           THE COURT:  BUT DOESN'T THAT CUT BOTH

24   WAYS?

25           MR. PRICE:  WELL --

                                                    32

1    THE COURT:  IF IT'S SORT OF GETTING TO

2    THE END OF LIFE ON YOUR END AS WELL, THEN IT REALLY

3    SHOULDN'T MATTER FOR YOU ALL AS WELL ON IRREPARABLE

4    HARM.

5    MR. PRICE:  BUT THE DIFFERENCE IS WHEREAS

6    SAMSUNG LOSES THAT .5 PERCENT, WE LOSE EVERY PART

7    OF THAT .5 PERCENT, THAT IS, EVERY SALE TO US IS A

8    LOST SALE, EVERY SALE OF THAT PHONE, HOWEVER, IN

9    THE MARKET IS NOT A LOST SALE FOR APPLE, AND

10   THEY'VE SHOWN NO EVIDENCE THAT IT WOULD BE.

11   I MEAN, THAT WOULD ASSUME THAT EVERY ONE

12   OF THOSE .5 PERCENT WHO WOULD BUY FROM SAMSUNG

13   WOULD, YOU KNOW, BUY AN IPHONE INSTEAD BECAUSE, YOU

14   KNOW, OF THE '604, OR QUICK SEARCH CAPABILITY.

15   AND THERE'S JUST NO EVIDENCE OF THAT.

16   WHAT WE DO KNOW IS THAT, OBVIOUSLY,

17   SAMSUNG WOULD BE LOSING THAT.

18   AND IN TERMS OF DOLLARS, IT'S A

19   SUBSTANTIAL AMOUNT, AND IT'S -- YOU KNOW, IT'S

20   CERTAIN TO THE EXTENT THAT IF WE LOSE A SALE, WE

21   LOSE A SALE.  WE CAN'T SELL IT.

22   IT IS NOT AT ALL CERTAIN THAT, IF WE MAKE

23   A SALE, APPLE LOSES A SALE BECAUSE OF THIS QUICK

24   SEARCH.

25   SO IT IMPACTS US MUCH MORE.

33

1          THE COURT:  WHAT IS THE -- YOU KNOW, IN

2     STANDARD HAVEN, THE IRREPARABLE HARM TO THE PARTY

3     TO BE ENJOINED WAS POTENTIAL DISSOLUTION, LAY OFFS,

4     FIRING EMPLOYEES.  I MEAN, IT WAS PRETTY SEVERE.

5          I DON'T THINK THAT THAT'S WHAT WOULD BE

6     REQUIRED --

7          MR. PRICE:  NO.

8          THE COURT:  -- TO GET A STAY, BUT WHAT'S

9     YOUR BEST CASE TO SUPPORT THE INJURY THAT THE

10    DECLARATION OF MR. CHAPPLE SETS FORTH?

11         MR. PRICE:  WELL, MR. CHAPPLE ADDS

12    ADDITIONAL INFORMATION.  SO THE FULL PANOPLY, I

13    GUESS, IS WE WOULD LOSE THOSE SALES.

14         THE COURT:  UM-HUM.

15         MR. PRICE:  YOU -- YOU RULED THAT MONEY,

16    DAMAGES, DOES NOT ADEQUATELY COMPENSATE FOR LOST

17    SALES IN THIS MARKETPLACE BECAUSE OF STICKINESS,

18    AND ALTHOUGH I THINK THERE'S A GENUINE DISPUTE AS

19    TO HOW STICKY APPLE -- SAMSUNG PRODUCTS ARE AND

20    WHETHER THERE ARE CONTINUED EFFECTS FROM THE LOSS

21    OF A SALE FOR APPLE, IF A CUSTOMER GOES FROM

22    SAMSUNG TO APPLE, THE EVIDENCE IS PRETTY COMPELLING

23    THAT APPLE IS THE STANDARD FOR HAVING A STRONG

24    ECOSYSTEM AND HAVING STICKINESS.

25         SO THE EVIDENCE IS MUCH STRONGER,

1    EXPONENTIALLY STRONGER, THAT IF SAMSUNG LOSES A

2    CUSTOMER DURING THIS TIMEFRAME, IT WILL LOSE IT FOR

3    LIFE BECAUSE APPLE, THEY'VE GOT -- WHEN THEY GET

4    THOSE CUSTOMERS, AS WOULD BE HYPOTHESIZED, APPLE

5    HAS A GREAT RECORD OF KEEPING THEM.

6              AND IN ALL THE RECORDS YOU'VE LOOKED AT,

7    YOUR HONOR, ALL THE DOCUMENTS, SAMSUNG WANTS TO BE

8    THERE.  THEY WOULD LOVE TO HAVE THAT STICKINESS AND

9    THEY DON'T, BUT APPLE DOES.

10             SO IT'S A GREATER EFFECT ON SAMSUNG IN

11   TERMS OF THE LOST SALES.

12             IT ALSO EFFECTS RELATIONSHIPS WITH

13   VENDORS AND -- WELL, BASICALLY SAMSUNG'S ABILITY

14   TO, TO WORK AND BE TRUSTED BY ITS VENDORS GOING

15   FORWARD.

16             AND OF COURSE WE HAVE NO QUANTIFICATION

17   OF THAT.  WE KNOW THAT, THAT VENDORS WILL BE

18   SCURRYING.

19             AND, AGAIN, WE'RE TALKING ABOUT A TIME

20   PERIOD OF 15 MINUTES TO TWO WEEKS OR FIVE MONTHS.

21             THE COURT:  WHY WASN'T THAT DECLARATION

22   PART OF THE OPPOSITION TO THE MOTION FOR A

23   PRELIMINARY INJUNCTION?

24             MR. PRICE:  I DO NOT HAVE AN ANSWER TO

25   THAT.

35

1           THE COURT:  OKAY.

2           MR. PRICE:  I THINK IT -- I THINK PARTLY

3    IT IS BECAUSE -- AND I'M GUESSING HERE -- IS THAT,

4    YOU KNOW, WHEN THE COURT'S DECISION WAS ANNOUNCED,

5    ALL OF A SUDDEN PEOPLE PERCOLATE AND SAY, SUCH AS

6    VENDORS, AND SAY, "HEY, WE'VE GOT THIS GOING ON."

7           BUT I -- I DON'T KNOW.

8           I KNOW THAT SOMEONE OTHER THAN ME, YOU

9    KNOW, HAD THE CONVERSATION AND -- AS YOU MIGHT

10   GUESS, YOU KNOW, WHEN THE PRELIMINARY INJUNCTION

11   WAS REPORTED, THE CARRIERS ARE GOING TO BE -- ARE

12   GOING TO VOICE THEIR OPINIONS ABOUT IT AND THE

13   EFFECT OF IT.

14          BUT THERE'S -- WHEN YOU SAY DOES IT HAVE

15   TO BE CATASTROPHIC, YOUR HONOR, I THINK WHAT YOU'VE

16   GOT TO LOOK AT IS NOT WHETHER IT'S GOING TO BE

17   CATASTROPHIC.  THAT'S NOT WHAT'S REQUIRED.  IT'S

18   THE BALANCE OF HARMS IN THAT PERIOD THAT THE STAY

19   ISN'T IN PLACE, WHETHER IN THAT PERIOD IT MILITATES

20   STRONGLY IN FAVOR OF SAMSUNG.

21          AND THERE'S NO EVIDENCE IN THAT FIVE

22   MONTH PERIOD THAT APPLE IS GOING TO HAVE ANY

23   SUBSTANTIAL LOSS OR HARDSHIP GIVEN WHERE THIS

24   PRODUCT IS, GIVEN ITS HISTORIC PERFORMANCE, AND

25   GIVEN, I WOULD SAY, THE AMOUNT OF EVIDENCE THAT THE

                                              36

```
1    QUICK SEARCH IS WHAT DRIVES ANY MARKET LOSS,

2    WHEREAS WE KNOW THAT SAMSUNG IS GOING TO LOSE EVERY

3    SALE THAT IT WOULD HAVE OTHERWISE HAD.

4              AND IT'S GOING TO AFFECT THE PUBLIC.  THE

5    PUBLIC WON'T HAVE ACCESS TO A PURE GOOGLE PHONE

6    EXPERIENCE.  THAT'S WHAT THIS IS CALLED, THIS

7    GALAXY NEXUS PHONE.  THIS IS LIKE PURE GOOGLE

8    ANDROID.

9              IT DOESN'T HAVE THE SAMSUNG, YOU KNOW,

10   IMPRINT ON IT.  IT'S THE GOOGLE CODE.

11             AND THERE ARE PEOPLE WHO WANT THAT.  I

12   MEAN, THE PUBLIC WILL BE DEPRIVED OF A PRODUCT, A

13   LESS EXPENSIVE PRODUCT THAN THE IPHONE 4S, AND THE

14   CARRIERS WILL BE DEPRIVED OF IT.

15             SAMSUNG WILL LOSE SALES, GIVEN YOUR

16   ANALYSIS ON STICKINESS THAT APPLIES DOUBLE OR

17   TRIPLE, WHATEVER, BUT SAMSUNG LOSES SALES TO APPLE,

18   AND IT'S NOT THE OTHER WAY AROUND.

19             SO THE EQUITIES FOR THAT PERIOD CLEARLY

20   MILITATE IN FAVOR OF SAMSUNG.

21             THE COURT:  CAN I ASK YOU, I DO WANT TO

22   GO TO THE MERITS A LITTLE BIT, THE NEAL PRIOR ART

23   REFERENCE WAS IN THE EXPERT DECLARATION, BUT IT

24   WASN'T IN SAMSUNG'S OPPOSITION BRIEF .

25             WHAT WOULD ALLOW ME TO START LOOKING AT
```

```
1     ADDITIONAL PRIOR ART REFERENCES IN A MOTION FOR

2     STAY THAT WEREN'T ANALYZED IN THE MOTION FOR A

3     PRELIMINARY INJUNCTION?

4              MR. PRICE:  AND, YOUR HONOR, AT THIS

5     POINT I'M GOING TO DO A TAG TEAM --

6              THE COURT:  OKAY.  AND HAVE MR. FIELDS

7     COME UP?

8              MR. PRICE:  -- AND HAVE MR. SHIELDS

9     ADDRESS THAT ISSUE.

10             THE COURT:  OKAY.

11             MR. SHIELDS:  GOOD MORNING, YOUR HONOR.

12             THE COURT:  GOOD MORNING.

13             MR. SHIELDS:  I WOULDN'T CHARACTERIZE

14    NEAL AS AN ADDITIONAL OR NEW PRIOR ART REFERENCE.

15    IT WAS FULLY ANALYZED IN DR. CARBONELL'S

16    DECLARATION WHICH WE FILED WITH OUR OPPOSITION

17    PAPERS, AND IT WAS FULLY RESPONDED TO BY

18    DR. POLISH, APPLE'S EXPERT.

19             IN DOING OUR OPPOSITION PAPERS, I MEAN,

20    WE JUST -- AS A PRACTICAL MATTER, WE WERE SUBJECT

21    TO CONSTRAINTS.  WE HAD TO DEAL WITH MULTIPLE

22    CLAIMS WITH FOUR PATENTS, INFRINGEMENT, VALIDITY,

23    ALL THE OTHER FACTORS, AND THE COURT SET A PAGE

24    LIMIT AND TOLD US WE WOULDN'T GET MORE.  SO WE DID

25    THE BEST WE COULD WITH WHAT WE HAD.
```

1            AND AT THE TIME WE FELT THAT WAIS AND

2    LEGAL WERE STRONGER REFERENCES THAN NEAL, IN PART

3    BECAUSE WE ANTICIPATED THE ARGUMENT THAT APPLE WAS

4    GOING TO MAKE, AND THEY DID MAKE, THAT THEY SAID,

5    WELL, NEAL DOESN'T DISCLOSE MORE THAN ONE SEARCH

6    AREA.

7            AND WHILE WE DISAGREED WITH THAT AT THE

8    TIME, AND STILL DISAGREE WITH IT, I THINK IT'S EVEN

9    MORE CLEAR THAT ARGUMENT IS WRONG NOW IN LIGHT OF

10   YOUR HONOR'S INFRINGEMENT FINDINGS, BECAUSE IN

11   ANALYZING INFRINGEMENT ON THE GALAXY NEXUS, YOUR

12   HONOR RELIED ON TWO SPECIFIC APPLICATIONS, PEOPLE

13   AND BROWSER, AND BOTH OF THOSE APPLICATIONS ARE --

14   DO LOCAL SEARCHES ON THE PHONE ITSELF.

15            THE COURT:  UM-HUM.

16            MR. SHIELDS:  THEY'RE NOT SEARCHING

17   OVER -- REMOTELY ON A NETWORK, NOT ON A REMOTE

18   SERVER, NOT ON A LAN.  THEY'RE BOTH APPLICATIONS

19   THAT SEARCH AREAS WITHIN THE PHONE.

20            SO IF TWO -- IF SEARCHING TWO SEARCH

21   AREAS WITHIN THE SAME DEVICE INFRINGES, AS YOUR

22   HONOR FOUND THAT IT DID, THEN NEAL IS DEAD-ON AND

23   APPLE'S ARGUMENT THAT NEAL DOESN'T DISCLOSE TWO

24   DIFFERENT SEARCH AREAS FALLS APART BECAUSE NEAL

25   VERY CLEARLY DISCLOSES SEARCHING DIFFERENT SEARCH

39

1    AREAS WITHIN A DATABASE.

2              AND SO IN LIGHT OF YOUR HONOR'S

3    INFRINGEMENT FINDINGS, NEAL IS A MUCH MORE RELEVANT

4    REFERENCE.

5              THE COURT:  LET ME -- CAN WE GO TO WAIS?

6              ARE YOU POINTING TO WAIS AS A PRINTED

7    PUBLICATION OR THAT IT WAS KNOWN OR USED IN THE

8    UNITED STATES?  WHAT -- OR BOTH?

9              MR. SHIELDS:  BOTH OF THOSE THINGS.

10             THE COURT:  OKAY.

11             MR. SHIELDS:  THERE WERE ESSENTIALLY

12   PRINTED PUBLICATIONS AVAILABLE THAT WERE CITED AND

13   I THINK ATTACHED AS EXHIBITS TO OUR PAPERS.

14             AND WE ALSO -- I MEAN, THE SYSTEM WAS

15   AVAILABLE, I BELIEVE THERE'S EVIDENCE IN THE RECORD

16   TO THAT EFFECT, AND WE BUILT A SYSTEM THAT'S

17   DESCRIBED IN THE DECLARATION OF LYLE BICKLEY USING

18   ORIGINAL PARTS, SO TO SPEAK, SORT OF A DEMO SYSTEM

19   TO CONFIRM THAT THE DOCUMENTATION THAT EXISTED AT

20   THE TIME WAS ACCURATE.

21             THE COURT:  BUT WHAT ABOUT -- ALL OF

22   THOSE REFERENCES ALL SEEM TO BE MISSING SOMETHING,

23   SO -- OR DO YOU DISAGREE WITH ME AND CAN YOU POINT

24   TO ONE THAT ANTICIPATES AND ACTUALLY HAS EVERY

25   LIMITATION?

                                                    40

1          MR. SHIELDS:  WELL, UNDER -- WELL, I

2     THINK EACH OF THEM DOES.

3          BUT TO ANSWER YOUR HONOR'S QUESTION, IN

4     LIGHT OF YOUR HONOR'S CLAIM CONSTRUCTIONS AND THE

5     ANALYSIS YOUR HONOR USED IN FINDING INFRINGEMENT, I

6     WOULD SUGGEST THAT NEAL HAS EVERY LIMITATION.

7          IT HAS MULTIPLE MODULES WHICH ARE SHOWN

8     VERY CLEARLY IN FIGURE 2 OF NEAL; IT DISCLOSES EACH

9     OF THOSE MODULES USES A DIFFERENT SEARCH ALGORITHM;

10    AND IT DISCLOSES SEARCH ALGORITHMS THAT ARE

11    HEURISTIC, DIFFERENT SEARCH ALGORITHMS THAT ARE

12    HEURISTIC.

13         APPLE DOES NOT EVEN DISPUTE THAT IT

14    DISCLOSES HEURISTIC.  THEIR ARGUMENT IS THAT, WELL,

15    IT'S NOT MORE THAN ONE AREA.

16         BUT NEAL CLEARLY DISCLOSES SEARCHING ONE

17    OR MORE CATALOGS AND DESCRIBES A TIERED SEARCH

18    METHOD WHERE IT HAS, YOU KNOW, FIRST SEARCHED AREA

19    WITH FIRST SEARCH METHOD, AND THEN IT GOES TO

20    SECOND SEARCH AREA WITH SECOND SEARCH METHOD.

21         AND UNDER YOUR HONOR'S CONSTRUCTION OF

22    MODULES AND CONSTRUCTION OF THE EACH LIMITATION AND

23    CONSTRUCTION OF -- AND CLAIM CONSTRUCTIONS YOUR

24    HONOR USED IN FINDING INFRINGEMENT AND

25    DISTINGUISHING THE OTHER REFERENCES, NEAL HAS ALL

41

1    THOSE.

2              THE COURT:  SO YOU DON'T BELIEVE THAT

3    WAIS ANTICIPATES?

4              MR. SHIELDS:  I ABSOLUTELY BELIEVE THAT

5    WAIS ANTICIPATES.

6              THE COURT:  OKAY.

7              MR. SHIELDS:  BUT I WAS TRYING TO GIVE

8    THE MOST DIRECT ANSWER UNDER YOUR HONOR'S CLAIM

9    CONSTRUCTIONS AND ANALYSIS SO FAR.

10             THE COURT:  UM-HUM.

11             MR. SHIELDS:  YOU KNOW, WAIS -- YOUR

12   HONOR DISTINGUISHED WAIS SOLELY ON THE BASIS THAT

13   THE MODULES IN WAIS THAT ACTUALLY DO THE SEARCHING

14   AND CONTROL THE SEARCH ALGORITHMS ARE REMOTE, AND

15   YOUR HONOR, IN YOUR HONOR'S CLAIM CONSTRUCTION,

16   FOUND THAT THOSE MODULES HAD TO ACTUALLY BE PART OF

17   THE CLIENT ARCHITECTURE AS OPPOSED TO THE SEARCH

18   ENGINE.

19             THAT -- IT'S NOT CLEAR FROM THE '604 THAT

20   THAT'S A REQUIREMENT, BUT IF IT IS, THEN WE DON'T

21   THINK WE INFRINGE, EITHER -- THIS IS ADDRESSED IN

22   OUR PAPERS -- BECAUSE PEOPLE AND BROWSER WORK THE

23   SAME WAY; THAT IS, THE SEARCH FUNCTIONALITY, THE

24   SEARCH HEURISTIC, IF YOU WILL, OR AT LEAST THE

25   SEARCH ALGORITHMS ARE DONE AND HANDLED AT THE

1    APPLICATION LEVEL, PEOPLE OR BROWSER, AND NOT AT

2    THE CLIENT APPLICATION, WHICH IS A DIFFERENT SEARCH

3    BOX.

4              SO IT'S ON A SMALLER SCALE, BUT ACTUALLY

5    FUNCTIONS THE SAME WAY THAT WAIS DOES.

6              THE COURT:  WHAT PLURALITY OF MODULES

7    DOES WAIS DISCLOSE?

8              MR. SHIELDS:  WAIS DISCLOSES THAT IT CAN

9    SEARCH REMOTELY OVER, OVER THE INTERNET, SO IT'S A

10   REMOTE SERVER, AND IT CAN SEARCH LOCALLY.

11             AND THIS WAS DESCRIBED BOTH IN THE

12   DECLARATION OF DR. CARBONELL AND THE DECLARATION OF

13   LYLE BICKLEY.

14             MR. BICKLEY IS SORT OF A TECHNOLOGY

15   HISTORIAN, IF YOU WILL.  HE'S THE ONE WHO ASSEMBLED

16   OUR DEMONSTRATION SYSTEM.  AND HE DESCRIBED IN HIS

17   DECLARATION, IN SOME DETAIL, THE SYSTEM AS IT'S SET

18   UP, AND ACCORDING TO THE DOCUMENTATION THAT EXISTED

19   AT THE TIME, OF A DATABASE -- EXCUSE ME -- A SERVER

20   WITH MULTIPLE DATABASES ON IT, AND ALSO A LOCAL

21   SEARCH CAPABILITY AND DESCRIBES HOW THESE DIFFERENT

22   SEARCH AREAS CAN BE SEARCHED USING DIFFERENT

23   ALGORITHMS.

24             THE COURT:  AND WHAT PLURALITY OF

25   HEURISTIC DOES WAIS DISCLOSE?

43

1          MR. SHIELDS:  WELL, WAIS DISCLOSES THAT

2     THERE'S DIFFERENT WAYS OF CONFIGURING THE SEARCH IN

3     EACH AREA.  BASICALLY EACH WAIS SERVER, FOR

4     EXAMPLE, CAN USE A DIFFERENT -- CAN HAVE DIFFERENT

5     SEARCH STANDARDS.

6          SO, FOR EXAMPLE, SOUNDEX, WHICH IS A

7     SEARCH TOOL THAT WILL MATCH WORDS THAT SOUND ALIKE,

8     YOU CAN -- YOU KNOW, AND THAT'S A HEURISTIC THAT

9     CAN BE USED TO BROADEN YOUR SEARCH OR NARROW YOUR

10    SEARCH AND THAT CAN BE USED DIFFERENTLY IN

11    DIFFERENT SERVERS.

12          ALSO, WAIS SERVERS CAN DEFINE SYNONYMS

13    FOR DIFFERENT SEARCH TERMS, SO IF YOU SEARCH FOR

14    THE WORD "CAT," THE WAIS SEARCHER CAN BE SET SO

15    THAT IT ALSO HITS ON THE WORD "FELINE," OR IT CAN

16    BE SET NOT TO DO THAT.

17          SO THERE'S GREAT FLEXIBILITY IN THE WAY

18    THAT THE SEARCH ALGORITHMS CAN BE STRUCTURED EITHER

19    IN DIFFERENT WAIS SERVERS OR ON A LOCAL WAIS

20    CLIENT.

21          THE COURT:  OKAY, THANK YOU.

22          MR. SHIELDS:  BEFORE I SIT DOWN, CAN I

23    TRY TO ANSWER YOUR QUESTION THAT YOUR HONOR ASKED

24    MR. PRICE THAT HE WASN'T ABLE TO ANSWER, WHICH IS

25    WHY THE DECLARATION --

1           THE COURT:  IRREPARABLE HARM.  YEAH,

2      SURE, PLEASE, GO AHEAD.

3           MR. SHIELDS:  I THINK THE ANSWER TO THAT

4      IS WE'RE LOOKING AT A DIFFERENT TIME PERIOD NOW.

5           YOU KNOW, THE DECLARATION THAT WE FILED

6      IN CONNECTION WITH OUR MOTION TO STAY TALKS ABOUT

7      SORT OF THE BALANCE OF HARDSHIPS IN THE VERY, VERY

8      NEAR TERM, AND, YOU KNOW, MAYBE IF -- LOOKING AT

9      THE GRAND SCHEME OF THINGS OVER THE COURSE OF FROM

10     THE FILING OF THE INJUNCTION TO THE END OF THIS

11     CASE, MAYBE THAT WOULD BE A SMALL DROP IN THE

12     BUCKET.

13          BUT IN THE VERY, VERY SHORT TERM THAT

14     WE'RE LOOKING AT NOW, WHICH IS SHOULD A STAY BE

15     ENTERED PENDING AN EXPEDITED APPEAL, OR AN EVEN

16     SHORTER STAY TO ALLOW THE FEDERAL CIRCUIT TO DECIDE

17     IF A STAY PENDING EXPEDITED APPEAL IS APPROPRIATE,

18     THE BALANCE IS DIFFERENT BECAUSE NOW YOU'RE TALKING

19     ABOUT DO WE, FOR THIS VERY, VERY TINY, YOU KNOW,

20     POTENTIAL LOSS OF SALES TO APPLE, DO WE REQUIRE

21     SAMSUNG TO HIT THE BRAKES, STOP, LITERALLY STOP

22     DELIVERIES THAT ARE ON THE ROAD AND CALL THEM BACK,

23     AND THEN POTENTIALLY HAVE TO TRY TO START ALL THAT

24     UP AGAIN IN A COUPLE OF WEEKS DEPENDING ON WHAT THE

25     FEDERAL CIRCUIT SAYS.

```
1                THE COURT:  OKAY.  THANK YOU.

2                OKAY.  LET ME ASK MR. KREVITT WHETHER

3    GOOGLE SEARCH IS A MODULE.

4                MR. KREVITT:  YES, YOUR HONOR.

5                YOUR HONOR FOUND THAT IT DOES NOT EMPLOY

6    HEURISTIC AND, AS YOU KNOW, WE DISAGREE.  WE

7    ARGUED, OF COURSE, THAT IT DOES.  BUT WE UNDERSTAND

8    YOUR HONOR'S RULING IN THAT REGARD.

9                BUT IT IS A MODULE.  IT -- AS IMPLEMENTED

10   IN THE QUICK SEARCH BOX.

11               THE COURT:  THEN HOW IS THAT DIFFERENT

12   THAN WAIS?

13               MR. KREVITT:  YOUR HONOR, IT'S VERY

14   DIFFERENT THAN WAIS, AND THERE HAS BEEN, WITH DUE

15   RESPECT -- AND AS TO NEAL, TOO, I'D LIKE TO POINT

16   OUT SOME VERY INACCURATE DESCRIPTIONS OF THE

17   VARIOUS REFERENCES.

18               WHAT HAPPENS IN WAIS, FIRST, TO ANSWER

19   YOUR QUESTION ABOUT WHAT, WHAT THEY RELY ON IN THE

20   PRINTED PUBLICATIONS OR THIS SYSTEM, IS IT'S VERY

21   IMPORTANT, YOUR HONOR, AND THIS WAS EXPLAINED IN

22   THE PAPERS, NO PRINTED PUBLICATION DISCLOSES ALL

23   THE ELEMENTS FOR WAIS.  WE --

24               THE COURT:  I AGREE WITH THAT.

25               MR. KREVITT:  YEAH.  SO WHAT THEY DID IS
```

46

1    THEY HAD SOME GUY NAMED BICKLEY GO BACK AND FIND

2    PARTS AND PUT THEM TOGETHER AND SAY THIS WAS WAIS

3    AT THE RELEVANT TIME.

4            BICKLEY NEVER WORKED ON WAIS.  HE

5    NEVER -- AT THE TIME -- THE SYSTEM HE BUILT TODAY,

6    11 YEARS LATER, HE DOESN'T CLAIM WAS IN EXISTENCE

7    AT THE TIME.  IT'S JUST LOOKING AT THE DOCUMENTS,

8    HE COBBLED TOGETHER USING OLD PARTS -- THAT WAS THE

9    DIRECTION THAT THE SAMSUNG LAWYERS TOLD HIM, FIND

10   PARTS THAT WERE IN EXISTENCE AT THE TIME,

11   ESSENTIALLY HE RUNS A PARTS MUSEUM -- AND BUILD

12   WAIS.

13           THAT'S NOT PRIOR ART, YOUR HONOR.  THAT'S

14   INSUFFICIENT TO CONSTITUTE PRIOR ART AS A MATTER OF

15   LAW.

16           MOREOVER, TO ANSWER YOUR QUESTION ON THE

17   MERITS, WHAT HAPPENED WITH WAIS IS AN IDENTICAL

18   QUERY WAS SENT OUT FROM THE CLIENT TO SERVERS.

19           THE '604 PATENT SPECIFICATION ITSELF

20   MAKES CLEAR THAT THAT IS INSUFFICIENT TO CONSTITUTE

21   MODULES, BECAUSE WHAT THE '604 PATENT SPECIFICATION

22   DESCRIBES -- AND YOUR HONOR ADDRESSED THIS IN THE

23   ORDER -- IS A MODULE, A HEURISTIC MODULE THAT

24   EMPLOYS A REMOTE SERVER.  IT IS NOT ITSELF A REMOTE

25   SERVER.

47

1          AND IT IS THE REMOTE SERVERS IN WAIS TO

2    WHICH SAMSUNG HAS HAD TO POINT TO TRY TO ESTABLISH

3    INVALIDITY.

4          THERE -- THE PATENT SPECIFICATION MAKES

5    VERY CLEAR THAT WAIS CANNOT CONSTITUTE THE MODULES.

6          A SINGLE HEURISTIC ALGORITHM, OR A SINGLE

7    ALGORITHM IS USED.  THERE IS NO EVIDENCE THAT

8    DIFFERENT ALGORITHMS ARE USED.  IT IS A SINGLE

9    QUERY THAT IS SENT OUT TO MULTIPLE PLACES.  NO

10   MODULES, NO MULTIPLE ALGORITHMS.

11         IN CONTRAST, AND FOR THE VERY FIRST

12   TIME -- THIS IS AN ARGUMENT, INCIDENTALLY, THAT

13   COULD HAVE BEEN RAISED BELOW.  ALL THE ARGUMENTS

14   THAT WE'RE TALKING ABOUT TODAY ARE AKIN TO A MOTION

15   FOR RECONSIDERATION, INCLUDING THIS ARGUMENT.

16         FOR THE VERY FIRST TIME, SAMSUNG HAS NOW

17   ARGUED THAT THE QUICK SEARCH BOX IS LIKE WAIS IN

18   THIS REGARD.

19         IT IS NOT AT ALL LIKE WAIS FOR THE

20   FOLLOWING REASON:  IN THE QUICK SEARCH BOX IN THE

21   GALAXY NEXUS, YOU HAVE MODULES ON THE DEVICE

22   ITSELF, ON THE CLIENT DEVICE ITSELF.  THEY ARE

23   TIGHTLY INTEGRATED WITH -- THIS IS VERY CLEAR FROM

24   THE DECLARATIONS -- WITH THE QUICK SEARCH BOX.

25         YOU HAVE A -- AND THIS WAS IN THE

48

1    PAPERS -- A SCREEN SHOT OF THE QUICK SEARCH BOX AND

2    YOU CAN CHECK OFF THE DIFFERENT MODULES, THE

3    DIFFERENT HEURISTIC MODULES THAT YOU WANT TO

4    SEARCH.  PEOPLE WAS ONE, BROWSER WAS ONE, THE

5    GOOGLE SEARCH BOX WAS ANOTHER.

6            EACH OF THOSE -- FOR EACH OF THOSE SEARCH

7    AREAS THERE IS A MODULE RESIDENT ON THE DEVICE, NOT

8    REMOTE, NOT FAR AWAY, RESIDENT ON THE DEVICE

9    INTEGRATED WITH THE QUICK SEARCH BOX THAT RECEIVES

10   THE QUERY AND APPLIES A DIFFERENT HEURISTIC

11   ALGORITHM.

12           THESE ARE THE PLUG IN MODULES THAT THE

13   '604 PATENT TALKS ABOUT AND THAT YOUR HONOR

14   DESCRIBED IN THE ORDER.

15           WAIS IS NOTHING LIKE THE QUICK SEARCH BOX

16   AT ALL IN THIS REGARD.  EVERYTHING IS REMOTE IN

17   WAIS, TO THE EXTENT IT CONSTITUTES PRIOR ART AT

18   ALL -- AND AS I EXPLAINED, IT DOES NOT -- IN

19   CONTRAST TO THE ON-DEVICE, CLIENT-SIDE HEURISTIC

20   MODULES OF THE PEOPLE AND THE BROWSER THAT ARE

21   INTEGRATED WITH THE QUICK SEARCH BOX IN THE GALAXY

22   NEXUS.

23           SO THAT'S HOW WAIS IS COMPLETELY

24   DIFFERENT FROM THE QUICK SEARCH BOX.

25           AGAIN, YOUR HONOR, I MENTIONED THAT THIS

                                                        49

1    IS AN ISSUE THAT COULD HAVE BEEN RAISED NOT ONLY TO

2    POINT OUT THAT THESE ARE NEW ISSUES THAT ARE

3    ENTIRELY IMPROPER ON A MOTION TO STAY, BUT TO

4    EXPLAIN, YOUR HONOR, THAT HAD THESE BEEN LEGITIMATE

5    ISSUES, HAD SAMSUNG BELIEVED THAT THESE ISSUES HAD

6    ANY MERIT WHATSOEVER, THEY WOULD HAVE INCLUDED THEM

7    IN THEIR DECLARATIONS, LET ALONE THE BRIEF.

8            THESE ISSUES THAT ARE BEING RAISED NOW

9    THAT WAIS IS LIKE THE QUICK SEARCH BOX AND THAT

10   THEY WERE SIMILAR IN THE WAY THAT THE MODULES

11   INTERACT APPEARS NOWHERE EVEN IN DR. CARBONELL'S

12   REPORT.  THAT'S SAMSUNG'S EXPERT.

13           SO THAT'S WAIS, YOUR HONOR.

14           THE COURT:  CAN I ASK YOU, THE '604 SPEC

15   DESCRIBES "YET ANOTHER MODULE MIGHT EMPLOY A SEARCH

16   ENGINE TO LOCATE INTERNET WEB PAGES WHICH MATCH THE

17   USER INPUT.  IT DOESN'T HAVE ALL THE RESIDENT ON

18   THE DEVICE VERSUS REMOTE SERVER," ET CETERA.

19           DOESN'T THAT SOUND A LOT LIKE WAIS?

20           MR. KREVITT:  NO, YOUR HONOR.  NO, YOUR

21   HONOR.  I MUST NOT HAVE BEEN CLEAR.

22           THE COURT:  UM-HUM.

23           MR. KREVITT:  WHAT HAPPENS IN WAIS,

24   THE -- IT DOES NOT -- THE MODULES IN THE PATENT CAN

25   EMPLOY A SEARCH ENGINE.

1          THEY ARE NOT THE SEARCH ENGINES.  THAT'S

2     THE DIFFERENCE.

3          AND YOUR HONOR FOUND THIS.  YOUR HONOR

4     WAS EXACTLY RIGHT IN THE OPINION.

5          THEY -- IN WAIS, THESE ARE REMOTE

6     SERVERS.  A SINGLE QUERY IS SENT OUT FROM THE

7     CLIENT DEVICE.

8          IT DOESN'T EMPLOY DIFFERENT HEURISTIC

9     ALGORITHMS.  IT DOESN'T DIFFERENT MODULES.

10         A SINGLE QUERY IS SENT OUT TO DIFFERENT

11    SEARCH ENGINES.

12         THOSE SEARCH ENGINES CANNOT BE THE

13    MODULES THEMSELVES.  THAT'S THE POINT, YOUR HONOR.

14         HAD THE WAIS SYSTEM HAD MODULES THAT THEN

15    SENT OUT THE QUERIES TO THE SEARCH ENGINES, THAT

16    MIGHT BE ONE THING.

17         BUT WHAT SAMSUNG HAS ARGUED IS THAT THE

18    REMOTE SEARCH ENGINES, THE REMOTE SERVERS ARE THE

19    MODULES.  AND THAT'S WHAT THE '604 PATENT

20    PRECLUDES.

21         THE COURT:  LET ME --

22         MR. KREVITT:  NO, GO ON, YOUR HONOR.

23         THE COURT:  MR. SHIELDS DID NOT GO HERE,

24    BUT IF HE HAD SAID THERE'S NOT ONE PUBLICATION OR

25    THE RECONSTRUCTION OR ANY ONE -- WELL, PRESUMABLY

                                                          51

1    THE RECONSTRUCTION IS, BUT THERE'S NOT ONE PRINTED

2    PUBLICATION THAT HAD ALL OF THE LIMITATIONS IN

3    WAIS, WHY COULDN'T YOU SORT OF AGGREGATE A BUNCH OF

4    DIFFERENT ONES, EVEN IF THEY WERE ALL INDIVIDUALLY

5    MISSING A LIMITATION, AND PUT THEM TOGETHER, KIND

6    OF LIKE OBVIOUSNESS?  WHY COULDN'T YOU HAVE JUST --

7            MR. KREVITT:  WELL, YOU CAN MAKE AN

8    OBVIOUSNESS CLAIM, YOUR HONOR.  THEY DON'T.

9    THEY'VE BEEN DOING IT IN THE WAY YOUR HONOR JUST

10   DESCRIBED.

11           THE COURT:  UM-HUM.

12           MR. KREVITT:  BUT MORE IMPORTANTLY, NONE

13   OF THE REFERENCES, TAKEN ALL TOGETHER, VIEWED

14   TOGETHER IF YOUR HONOR WERE INCLINED TO DO THAT,

15   DISCLOSE THE ELEMENTS THAT I AM DESCRIBING.

16           THERE ISN'T A REAL DISPUTE AS TO HOW WAIS

17   OPERATES.  YOUR HONOR GOT IT EXACTLY RIGHT IN THE

18   OPINION THAT THERE'S NOT MUCH OF A DISPUTE ON THAT.

19   YOU HAVE ONE LOCATION AND WAIS SENDS A QUERY OUT TO

20   REMOTE SERVERS.

21           THERE ARE NO MODULES, LET ALONE MULTIPLE

22   MODULES.  THERE ARE NO -- THERE ARE NOT DIFFERENT

23   ALGORITHMS.

24           THERE'S ONE ALGORITHM.  ONE SEARCH IS

25   SENT TO THE REMOTE SERVERS .

1        SO THAT'S WHY, YOUR HONOR, EVEN IF YOUR

2   HONOR DID AGGREGATE THEM, THEY ARE STILL MISSING

3   THOSE ELEMENTS.

4        AND THIS IS DESCRIBED, YOUR HONOR, IN

5   DETAIL IN DR. POLISH'S REPLY DECLARATION, WHY THE

6   WAIS SYSTEM CANNOT ANTICIPATE AND WHY IT'S

7   DIFFERENT THAN THE QUICK SEARCH BOX.

8        THE COURT:  CAN I JUST ASK ONE QUESTION

9   ON NEAL?

10        MR. KREVITT:  YES.

11        THE COURT:  IF THE TWO EXPERTS DISAGREE

12   ON WHETHER MULTIPLE ALGORITHMS DISCLOSE MULTIPLE

13   MODULES, WHY CAN'T THAT JUST BE A SUBSTANTIAL

14   QUESTION THAT SHOULD GO UP TO THE FEDERAL CIRCUIT?

15        MR. KREVITT:  YOUR HONOR, TWO THINGS, AND

16   I WANT TO ANSWER IT IN THE ORDER YOU ASKED IT, BUT

17   THERE'S A PREMISE THERE.

18        THE EXPERTS DO NOT DISAGREE.  THE EXPERTS

19   COMPLETELY AGREE, AND I'M GOING TO EXPLAIN THAT IN

20   JUST ONE SECOND.

21        BUT THE ANSWER IS THAT'S NOT A

22   SUBSTANTIAL LEGAL QUESTION, YOUR HONOR.  IF THAT

23   WERE A SUBSTANTIAL LEGAL QUESTION, THERE IS NO SUCH

24   THING AS A QUESTION THAT ISN'T SUBSTANTIAL.  THAT

25   HAPPENS EVERY SINGLE DAY IN THIS COURTROOM.

1    EXPERTS DISAGREE.  YOUR HONOR MAKES A DECISION,

2    AGREES WITH ONE SIDE VERSUS THE OTHER, AND MAKES A

3    RULING.

4         THAT DOESN'T CONSTITUTE THE SUBSTANTIAL

5    BURDEN -- CANNOT MEET THE SUBSTANTIAL BURDEN

6    NECESSARY FOR A STAY OF AN INJUNCTION WHEN THE

7    FEDERAL CIRCUIT HAS SAID, AND THE LAW IS CLEAR,

8    THAT SUBSTANTIAL DEFERENCE WILL BE PAID TO THE

9    DISTRICT COURT AND THE DECISION WILL BE REVIEWED ON

10   AN ABUSE OF DISCRETION.

11        SO THAT'S WHY, YOUR HONOR, IF TWO EXPERTS

12   DISAGREEING COULD CONSTITUTE THE SUBSTANTIAL

13   QUESTION THAT YOUR HONOR IS TALKING ABOUT, THERE IS

14   NO SUCH THING AS A QUESTION THAT WOULD NOT SATISFY

15   THAT BURDEN.

16        BUT -- FIRST, DOES THAT ANSWER YOUR

17   QUESTION, YOUR HONOR?

18        THE COURT:  WELL, WHY DON'T YOU JUST TALK

19   ABOUT NEAL?  MR. SHIELDS JUST SAID THAT IT

20   ANTICIPATES.  JUST BRIEFLY, PLEASE.

21        MR. KREVITT:  OKAY.  VERY BRIEFLY, YOUR

22   HONOR, BECAUSE MR. SHIELDS RAISED SEVERAL POINTS ON

23   NEAL AND I'M PREPARED TO ADDRESS THEM ALL, BUT I

24   THINK WE CAN DISPOSE OF NEAL AND, FRANKLY, EXPLAIN

25   IN LARGE MEASURE WHAT IS GOING ON HERE TODAY BY

1    LOOKING AT JUST ONE THING.

2           NEAL DOES NOT DISCLOSE MULTIPLE MODULES.

3    IT ALSO DOESN'T DISCLOSE MULTIPLE SEARCH AREAS.  IT

4    ALSO DOESN'T DISCLOSE OTHER THINGS.  BUT ONE THING

5    IT DOES NOT DISCLOSE IS MULTIPLE MODULES.

6           IN SAMSUNG'S BRIEF TO YOUR HONOR ON A

7    MOTION TO STAY THAT WAS JUST FILED YESTERDAY,

8    SAMSUNG SAYS THAT DR. POLISH -- THAT'S MY EXPERT --

9    SAID THAT NEAL COULD DISCLOSE USING ONE MODULE, BUT

10   THAT'S AN ALTERNATIVE EMBODIMENT, AND IT ALSO

11   DISCLOSES MULTIPLE MODULES.

12          THAT'S NOT WHAT HAPPENED.

13          IF I CAN REFER YOUR HONOR TO PARAGRAPH 86

14   OF DR. POLISH'S REPLY DECLARATION -- UNFORTUNATELY,

15   I HAVE ONLY ONE COPY, BUT PAGE 86 OF DR. POLISH'S

16   REPLY DECLARATION DID THE FOLLOWING THING.  IT

17   QUOTED DR. CARBONELL.

18          SO DR. CARBONELL WAS DEPOSED AND HE WAS

19   ASKED, "DOES NEAL DISCLOSE MULTIPLE MODULES?"

20          THAT'S A REQUIREMENT OF THE CLAIMS, DOES

21   IT DISCLOSE MULTIPLE MODULES?

22          HE SAID NO.  HE SAID IT COULD BE DONE IN

23   MULTIPLE MODULES, IT COULD BE DONE IN A SINGLE

24   MODULE.  IT IS NOT CLEAR.

25          SPECIFICALLY, YOUR HONOR, IF I MAY?

1        "QUESTION:  AND IT," THAT'S THE NEAL

2    REFERENCE, "AND IT DOESN'T SAY THAT THEY ARE

3    IMPLEMENTED IN SEPARATE MODULES.  YOU'RE JUST

4    SAYING IT COULD HAVE BEEN DONE THAT WAY; RIGHT?

5        "ANSWER:  I'M SAYING -- I'M SAYING THAT

6    IT COULD HAVE BEEN DONE THAT WAY, OR IT COULD HAVE

7    BEEN DONE IN ONE MODULE.  THE DISCLOSURE HERE AS

8    SEPARATE METHODOLOGIES WITH THE DIFFERENT

9    HEURISTICS WOULD PERMIT ONE TO -- PERMIT ANYONE

10   SKILLED IN THE ART TO INCLUDE THEM IN SEPARATE

11   MODULES."

12       SO WHAT DR. CARBONELL SAID IS THE

13   REFERENCE IS SILENT, AND IN FACT, YOUR HONOR, THE

14   REFERENCE IS SILENT.  THE REFERENCE IS SILENT AS TO

15   WHETHER THERE IS ONE MODULE OR MULTIPLE MODULES,

16   AND DR. CARBONELL TESTIFIED UNDER OATH, SAMSUNG'S

17   EXPERT, THAT THE REFERENCE IS SILENT.  IT COULD

18   HAVE BEEN DONE WITH ONE.  IT COULD HAVE BEEN DONE

19   WITH MORE THAN ONE.

20       SO DR. POLISH, IN HIS REPLY DECLARATION,

21   EXPLAINED THAT, EXPLAINED TO YOUR HONOR WHY THIS

22   REFERENCE CANNOT INVALIDATE BECAUSE IT DOESN'T

23   DISCLOSE MULTIPLE MODULES, SAYS THAT DR. CARBONELL

24   POINTS TO NEAL'S FIGURE 2 AS DEMONSTRATING THAT

25   NEAL DISCLOSES TWO OR MORE HEURISTIC MODULES.

1          BUT DR. CARBONELL TESTIFIED AT HIS

2   DEPOSITION THAT NEAL MAY HAVE BEEN IMPLEMENTED AS A

3   SINGLE MODULE.

4          DR. POLISH WASN'T SAYING, ALTHOUGH IT

5   DISCLOSES MULTIPLE MODULES, IT ALSO MAY HAVE BEEN

6   DISCLOSED AS A SINGLE MODULE.

7          THAT'S WHAT SAMSUNG REPRESENTED TO THIS

8   COURT IN ITS MOTION TO STAY, AND IT'S FALSE.

9          WHAT DR. POLISH WAS SAYING IS THAT

10  DR. CARBONELL ADMITTED THAT THE REFERENCE IS

11  SILENT.  COULD HAVE BEEN ONE MODULE, COULD HAVE

12  BEEN MULTIPLE MODULES.  THE REFERENCE SAYS NOTHING,

13  AND BECAUSE IT SAYS NOTHING, YOUR HONOR, IT CANNOT

14  ANTICIPATE.

15         WITH RESPECT -- AND I UNDERSTAND PEOPLE

16  WERE UNDER A SHORT TIMEFRAME TO PRODUCE BRIEFS,

17  YOUR HONOR, AND SO MAYBE SOME LEEWAY IS DUE --

18  LOOKING AT THE REPRESENTATION IN SAMSUNG'S MOTION

19  TO STAY ON THIS POINT REGARDING NEAL AND COMPARING

20  IT TO PARAGRAPH 86 OF DR. POLISH'S REPLY

21  DECLARATION, WHICH IS THE PART TO WHICH SAMSUNG IS

22  REFERRING, MAKES VERY CLEAR TWO THINGS:  ONE,

23  SAMSUNG'S BRIEF IS INACCURATE; AND, TWO, AND MORE

24  IMPORTANTLY AND RELEVANT TO THE QUESTION YOUR HONOR

25  IS ASKING, THE NEAL REFERENCE CANNOT ANTICIPATE.

57

1    IT DOES NOT DISCLOSE MULTIPLE MODULES.

2            THE COURT:  OKAY.  LET ME ASK YOU JUST

3    VERY BRIEFLY -- I'M GOING TO GO BACK TO THE SORT OF

4    IRREPARABLE HARM ISSUE.  YOU KNOW, I'VE AGREED WITH

5    THE SORT OF STICKINESS OF PLATFORM ISSUES.

6            BUT LET ME ASK YOU ABOUT WHAT MR. PRICE

7    RAISED, WHICH IS WHAT EVIDENCE IS THERE THAT A

8    PERSON WHO WOULD HAVE BOUGHT A GALAXY NEXUS IS NOT

9    GOING TO BUY ANOTHER ANDROID SMARTPHONE AND IS

10   GOING TO BUY AN IPHONE INSTEAD DURING THE COURSE OF

11   THIS?

12           MR. KREVITT:  SO THERE'S LOADS OF

13   EVIDENCE, YOUR HONOR, AND WE SUBMITTED THAT IN

14   CONNECTION WITH OUR REPLY PAPERS CHIEFLY BECAUSE WE

15   WERE RELYING ON SAMSUNG'S DOCUMENTS.

16           THAT WASN'T A QUESTION DIRECTLY RAISED

17   HERE, SO I DON'T HAVE ALL THAT EVIDENCE IN FRONT OF

18   ME.

19           BUT SAMSUNG'S OWN DOCUMENTS, TIME AND

20   TIME AGAIN, SAY THAT THE GALAXY NEXUS -- SAY THEY

21   DO THIS GRAPHICALLY, YOUR HONOR, THEY DO THIS IN

22   BULLETS, THEY DO IT IN FLOW CHARTS -- THAT THE

23   GALAXY NEXUS IS DESIGNED TO TAKE SALES FROM THE

24   IPHONE.

25           SAMSUNG HAS DOCUMENTS, YOUR HONOR, IN

1   WHICH THEY LIST THEIR VARIOUS PRODUCTS AND THEN

2   THEY LIST THE PRODUCTS WITH WHICH THE SAMSUNG

3   PRODUCTS COMPETE.

4          THE COURT:  I'VE SEEN THAT.

5          MR. KREVITT:  THERE ARE SOME PRODUCTS

6   THAT COMPETE WITH -- YOU'VE SEEN THOSE.

7          THE COURT:  YEAH, I'VE SEEN THAT.

8          MR. KREVITT:  THE GALAXY NEXUS IDENTIFIES

9   ONE COMPETITOR, ONLY ONE, YOUR HONOR, APPLE, THE

10  IPHONE.  IT'S THE ONLY COMPETITOR IDENTIFIED BY

11  THE -- BY SAMSUNG IN DOCUMENT AFTER DOCUMENT AFTER

12  DOCUMENT.

13         THE GALAXY NEXUS IS IDENTIFIED REPEATEDLY

14  AS PART OF A CORE COMPONENT OF SAMSUNG'S STRATEGY

15  TO TAKE MARKET SHARE, TO TAKE SALES FROM APPLE.

16         SO SAMSUNG'S OWN DOCUMENTS, YOUR HONOR,

17  TIME AND TIME AGAIN, DEMONSTRATE THAT SAMSUNG IS

18  TARGETING IPHONE, NOT ANY OTHER ANDROID OR ANY

19  OTHER MANUFACTURER.

20         LOOK AT SAMSUNG'S ADVERTISING.

21         THE COURT:  OKAY.  LET ME INTERRUPT YOU A

22  SECOND.

23         MR. KREVITT:  YES.

24         THE COURT:  ANOTHER POINT THAT MR. PRICE

25  RAISED WAS THAT THE VOICE CAPABILITY WAS NOT LINKED

1      TO THE QUICK SEARCH BOX.

2                  DO YOU HAVE A VIEW ON THAT?

3                  MR. KREVITT:  YEAH.

4                  THAT'S NOT TRUE, YOUR HONOR.  THE VOICE

5      CAPABILITY IS LINKED TO THE QUICK SEARCH BOX.  YOU

6      CAN USE THE VOICE CAPABILITY WITH THE QUICK SEARCH

7      BOX.  YOUR HONOR WAS QUITE RIGHT ON THAT QUESTION.

8                  SIRI HAS ADDITIONAL FUNCTIONALITY.  IT

9      HAS DIFFERENT SOFTWARE.  IT DOES ADDITIONAL THINGS.

10                 BUT THE QUESTION THAT YOUR HONOR ASKED

11     AND THE QUESTION THAT MR. PRICE ANSWERED WAS, IS

12     THE VOICE CAPABILITY OF THE GALAXY NEXUS TIED TO

13     AND CAN IT BE USED WITH THE QUICK SEARCH BOX?

14                 AND THE ANSWER IS YES, YOUR HONOR.

15                 THE COURT:  WHAT ABOUT MR. PRICE'S POINT

16     THAT THE GALAXY SMARTPHONES HAD THE QUICK SEARCH

17     FUNCTION AS OF JULY OF 2010, THE IPHONE 4 DID NOT,

18     AND YET THE IPHONE 4 STILL HAD -- STILL HAD

19     TREMENDOUS SALES.  DO YOU WANT TO RESPOND TO THAT

20     POINT THAT MR. PRICE MADE?

21                 MR. KREVITT:  YOUR HONOR --

22                 THE COURT:  WHY DIDN'T IT DRIVE, THEN,

23     THE GALAXY SALES THAT HAD THE QUICK SEARCH

24     FUNCTION?

25                 MR. KREVITT:  YOUR HONOR, I'M -- I THINK

1    I LOST THE QUESTION A LITTLE BIT, BUT LET ME ANSWER

2    IT, OR TRY TO ANSWER IT THIS WAY.

3           THE FEDERAL CIRCUIT HAS SAID, AND YOUR

4    HONOR APPLIED THE STANDARD IN THIS PRELIMINARY

5    INJUNCTION, THAT THE FUNCTIONALITY MUST BE A DRIVER

6    OF SALES.  THERE COULD BE OTHER THINGS.

7           OBVIOUSLY IF IT DIDN'T HAVE PHONE

8    CAPABILITY, IT WOULDN'T SELL.  SO IT DOESN'T HAVE

9    TO BE THE SOLE DRIVER.  THAT WOULDN'T MAKE SENSE.

10   IT HAS TO BE A DRIVER OF SALES.

11          SIRI HAS INDISPUTABLY BEEN A DRIVER OF

12   SALES.  THERE IS NO DISPUTE ON THAT QUESTION.

13          AND MOREOVER -- AND THIS, TOO, YOUR

14   HONOR, WAS JUST COMPLETELY INACCURATE IN SAMSUNG'S

15   PAPERS -- SAMSUNG SAID IN THEIR MOTION TO STAY THAT

16   THERE IS NO EVIDENCE WITH RESPECT TO SIRI ISOLATING

17   THE SEARCH FUNCTIONALITY, THAT THE ONLY EVIDENCE IS

18   HOW SIRI IS A VOICE RECOGNITION PROGRAM.

19          THAT'S JUST FALSE, YOUR HONOR.  YOUR

20   HONOR HAS PAGE AFTER PAGE IN YOUR ORDER

21   IDENTIFYING --

22          THE COURT:  YEAH, I'M NOT INTERESTED IN

23   THAT ISSUE.

24          MR. KREVITT:  OKAY.

25          THE COURT:  BUT --

61

1    MR. KREVITT: AND YOUR HONOR, AS TO THE

2    NEXUS, IS THAT THE ISSUE ON WHICH --

3         THE COURT: WELL, I GUESS IT'S KIND OF

4    TWO ISSUES. YOU KNOW, ONE IS YOUR DATA THAT SIRI

5    WAS THE DRIVER WAS REALLY ALL FOCUSSED ON APPLE

6    SMARTPHONES; AND, YOU KNOW, OBVIOUSLY THERE WASN'T

7    ANY CONSUMER DATA ON GALAXY NEXUS CONSUMERS, NOT

8    THAT YOU HAVE TO HAVE THEM, AS TO WHETHER QUICK

9    SEARCH BOX IS DRIVING THE NEXUS SALES. SO THAT'S

10   REALLY MY MAIN QUESTION.

11        AND THEN KIND OF RELATED TO THAT IS THE

12   POINT THAT MR. PRICE WAS MAKING THAT, YOU KNOW,

13   IT -- IF IT WERE, IN FACT, A DRIVER OF THE SALES

14   FOR THE NEXUS, WHY DIDN'T YOU SEE EITHER GREATER

15   SALES FOR THE GALAXY NEXUS SINCE JULY OF 2010, AND

16   WHY DO YOU SEE SUCH GREAT SALES FOR THE IPHONE 4

17   THAT DOESN'T HAVE THAT CAPABILITY? SO IT'S SORT OF

18   ALL ONE BIG QUESTION.

19        MR. KREVITT: SO THE FIRST PART OF THE

20   QUESTION IS WE HAVE SUBSTANTIAL EVIDENCE -- WE

21   SUBMITTED IT, YOUR HONOR CITED IT -- THAT THE QUICK

22   SEARCH BOX SEARCH FUNCTIONALITY IS CRITICAL TO THE

23   SALES OF THE ANDROID DEVICES, THE GALAXY -- OF THE

24   SAMSUNG DEVICES.

25        THE COURT: WELL, IT WAS IN THE ANDROID

1    DOCUMENTS AND THE SAMSUNG DOCUMENTS AS OBVIOUSLY AN

2    IMPORTANT FEATURE, THAT THEY WOULD HIGHLIGHT IT.

3            BUT THERE WASN'T ANYTHING EXPLICIT FROM

4    THE -- IT WAS EXPLICIT FROM THE PROVIDER

5    PERSPECTIVE THAT THEY VIEW THIS AS AN IMPORTANT

6    FEATURE TO HIGHLIGHT.

7            BUT THERE WASN'T ANYTHING EXPLICITLY THAT

8    THE CONSUMERS, RIGHT, OF NEXUS --

9            MR. KREVITT:  WELL, NO, THERE ARE --

10           THE COURT:  -- WERE SELECTING IT FOR THAT

11   FEATURE?

12           MR. KREVITT:  THERE ARE THIRD PARTIES

13   THAT TALKED ABOUT THE SEARCH FUNCTIONALITY BEING

14   ESSENTIAL AND THAT IT MAY BE A KEY COMPONENT TO

15   COMPETING WITH APPLE.  THOSE DOCUMENTS YOUR HONOR

16   CITED ALSO.

17           SO THERE ARE DOCUMENTS BY -- FROM GOOGLE,

18   THERE ARE DOCUMENTS IN SAMSUNG'S OWN -- EXCUSE

19   ME -- INFORMATION IN SAMSUNG'S OWN DOCUMENTS, AS

20   WELL AS THIRD PARTIES THAT TALK ABOUT THE

21   IMPORTANCE OF THE SEARCH CAPABILITY, WHICH IS THE

22   QUICK SEARCH BOX AND THE ABILITY TO SEARCH

23   DIFFERENT AREAS, WHICH IS, AS YOUR HONOR FOUND,

24   UNIFIED SEARCH, THE IMPORTANCE OF THAT TO DRIVING

25   SALES OF THE ANDROID DEVICES.

1           THERE ARE THOSE DOCUMENTS, YOUR HONOR.

2      THEY EXIST.

3           AND THOSE DOCUMENTS ARE NOT LIMITED TO

4      THE GALAXY NEXUS, OF COURSE, BECAUSE THEY'RE

5      TALKING ABOUT THAT QUICK SEARCH CAPABILITY.  THAT'S

6      AN IMPORTANT DRIVER OF SALES.

7           THE GALAXY NEXUS HAS BEEN A LESS

8      SUCCESSFUL DEVICE, YOUR HONOR, FOR A VARIETY OF

9      REASONS.  IT'S -- CONSUMERS HAVEN'T LIKED THE WAY

10     IT FEELS -- THERE'S BEEN, WE UNDERSTAND,

11     SUBSTANTIAL, DRAMATICALLY LESS ADVERTISING FROM

12     SAMSUNG FOR THE GALAXY NEXUS THAN FOR OTHER GALAXY

13     DEVICES, A TINY FRACTION OF THE ADVERTISING.

14          SAMSUNG HAS MADE THE DECISIONS IT HAS

15     MADE WITH RESPECT TO THAT DEVICE.

16          BUT THAT'S NOT THE QUESTION.

17          THE QUESTION IS, OF THE SALES THAT THE

18     GALAXY NEXUS HAS HAD, IS THE QUICK SEARCH BOX AN

19     IMPORTANT DRIVER OF THOSE SALES?

20          AND IN THAT REGARD, YOUR HONOR, DOCUMENT

21     AFTER DOCUMENT FROM SAMSUNG'S OWN FILES DEMONSTRATE

22     THAT IT HAS.

23          YOUR HONOR, AGAIN, CITED THOSE DOCUMENTS

24     AND GOT IT EXACTLY RIGHT.

25          THE COURT:  WHERE -- IS IT IN THE RECORD

1    THAT SAMSUNG SPENT LESS MONEY ON ADVERTISING ON THE

2    NEXUS?

3              MR. KREVITT:  IT IS IN DOCUMENTS THAT ARE

4    IN THE RECORD, YOUR HONOR, YES.

5              THE COURT:  TO WHAT, THE VELLTURO --

6              MR. KREVITT:  FOR SURE IT IS IN DOCUMENTS

7    ATTACHED TO VELLTURO.  I WOULD NEED TO GO BACK AND

8    FIND IN WHICH DOCUMENTS AND -- BUT YES, YOUR HONOR,

9    THAT -- THAT QUESTION IS NOT A -- THAT ISSUE IS NOT

10   IN DISPUTE.

11             AND I THINK, YOUR HONOR, IN LISTENING TO

12   MR. PRICE, IT IS ALL ABOUT HOW YOUR HONOR -- AND I

13   DON'T MEAN TO BE DISRESPECTFUL -- BUT GOT IT WRONG,

14   YOU JUST WEIGHED THE EVIDENCE IN A WAY THAT THEY

15   DON'T THINK MAKES SENSE.

16             AND THAT IS NOT THE STANDARD FOR A MOTION

17   TO STAY, AND THIS IS VERY CLEAR IN ONE SENTENCE IN

18   THEIR BRIEF ON THE CAUSATION, BECAUSE THAT'S THE

19   ISSUE WE'RE TALKING ABOUT.

20             AT THE END OF THE CAUSATION SECTION ON

21   THE QUICK SEARCH BOX AND WHETHER IT DRIVES SALES,

22   SAMSUNG SAYS "AN INJUNCTION SHOULD NOT ISSUE UNTIL

23   THE FEDERAL CIRCUIT HAS COMPARED THE RECORD AGAINST

24   THE CAUSATION STANDARD."

25             THAT IS TO SAY, NOT UNTIL IT EVALUATES

1    THE FACTS, UNTIL IT LOOKS AT ALL THE EVIDENCE AND

2    MAKES A JUDGMENT ABOUT WHETHER YOUR HONOR ABUSED

3    YOUR HONOR'S DISCRETION OR MADE CLEARLY ERRONEOUS

4    FACTUAL FINDINGS.

5           THAT IS NOT THE STANDARD FOR A MOTION TO

6    STAY.  THAT COULD BE SAID IN EVERY SINGLE CASE,

7    THAT A STAY SHOULD BE PUT IN PLACE UNTIL THE

8    FEDERAL CIRCUIT CAN EVALUATE THE RECORD.

9           THAT STATEMENT -- THERE IS NO LOSING

10   PARTY THAT WOULDN'T MAKE THAT STATEMENT.

11          BUT IT ISN'T THE STANDARD.

12          IT IS A VERY, VERY HIGH BURDEN TO GET A

13   STAY OF AN INJUNCTION, YOUR HONOR.  THEY HAVE TO

14   SHOW STRONG LIKELIHOOD OF SUCCESS, OR AT LEAST A

15   SUBSTANTIAL LEGAL QUESTION, NOT FACTUAL QUESTION,

16   LEGAL QUESTION.

17          AND ALSO, MR. PRICE CONTINUES TO TALK

18   ABOUT A BALANCING OF THE HARDSHIPS.  ALL OF A

19   SUDDEN, THIS STAY STANDARD HAS BEEN WATERED DOWN TO

20   A BALANCING OF THE HARDSHIPS.

21          THAT'S NOT WHAT THE CASES SAY, YOUR

22   HONOR.  THE CASES SAY THAT SAMSUNG MUST ESTABLISH

23   THAT IT WILL BE IRREPARABLY HARMED, NOT JUST THAT

24   THE HARDSHIPS TIP ONE WAY OR THE OTHER, THAT IT

25   WILL BE IRREPARABLY HARMED.

66

1          IT HAS MADE NO SHOWING.  IT HASN'T COME

2    CLOSE TO MAKING THE SHOWING.

3          I SUGGEST YOUR HONOR LOOK AT THE

4    DECLARATIONS SUBMITTED.  IT TALKS ALL ABOUT VERIZON

5    AND SPRINT, AND EVEN THAT HARM ISN'T IRREPARABLE.

6          AND WHAT'S MORE, YOUR HONOR, WITH RESPECT

7    TO THIS BACK-TO-SCHOOL PROGRAM, THE SOLE EVIDENCE

8    ON WHICH SAMSUNG RELIES, THAT'S A CHOICE SAMSUNG

9    MADE.

10          THIS MOTION FOR A PRELIMINARY INJUNCTION

11   WAS FILED FEBRUARY 8.  FOR MONTHS THIS MOTION HAS

12   BEEN PENDING.  WE HAD A HEARING JUNE 7TH.

13          WHILE YOUR HONOR WAS CONSIDERING THIS

14   MOTION, SAMSUNG MADE A JUDGMENT THAT THEY WOULD GO

15   FORWARD WITH A BACK-TO-SCHOOL PROGRAM USING THE

16   GALAXY NEXUS.

17          WE KNOW WHY.  IT'S BECAUSE OF THE

18   DOCUMENT I SHOWED YOU EARLIER.  IT'S A WAY TO BEAT

19   APPLE.

20          BUT THAT'S A CHOICE THAT SAMSUNG MADE,

21   AND HAVING MADE THAT CHOICE -- OR THE CARRIERS

22   MADE -- AND HAVING MADE THAT CHOICE TO USE THE

23   GALAXY NEXUS -- WHICH, DON'T FORGET, YOUR HONOR,

24   YOUR HONOR FOUND IS LIKELY TO BE FOUND TO INFRINGE

25   FOUR VALID PATENTS -- HAVING MADE THE CHOICE TO USE

                                                    67

1    THE GALAXY NEXUS, THEY CAN'T COME NOW AND SAY TO

2    YOU, TO THIS COURT, "YOU CAN'T PUT THE INJUNCTION

3    IN PLACE, JUDGE, BECAUSE IF YOU DO, WE'RE GOING TO

4    LOSE SALES."

5              WELL, OF COURSE THEY'RE GOING TO LOSE

6    SALES.  THEIR SALES INFRINGE.  THEIR SALES CAUSE

7    APPLE IRREPARABLE AND IMMEDIATE HARM.  YOUR HONOR

8    FOUND THAT IN A 101-PAGE COMPREHENSIVE, DETAILED

9    OPINION.  SO OF COURSE THEY'RE GOING TO LOSE SALES.

10             BUT THAT'S NOT IRREPARABLE HARM NECESSARY

11   FOR AN INJUNCTION.

12             THEY ALSO HAVE TO SHOW, YOUR HONOR, THAT

13   APPLE WILL NOT SUFFER SUBSTANTIAL HARM IF A STAY IS

14   PUT IN PLACE.

15             THEY CANNOT POSSIBLY SHOW THAT BECAUSE

16   YOUR HONOR FOUND THAT APPLE IS IMMEDIATELY AND

17   IRREPARABLY HARMED, SO OF COURSE WE WILL SUFFER

18   SUBSTANTIAL HARM.

19             THE POINT, YOUR HONOR, IS THIS:  THEY'VE

20   BEEN SELLING AN INFRINGING DEVICE FOR SEVEN MONTHS.

21   YOUR HONOR TOOK TREMENDOUS CARE IN CRAFTING A

22   100-PAGE DECISION, ANALYZING EVERY SINGLE ISSUE,

23   GIVING CONSIDERATION TO EVERY FACT AND EVERY LEGAL

24   QUESTION RAISED BY BOTH PARTIES.

25             THE COURT CONCLUDED THAT APPLE IS

1    ENTITLED TO AN INJUNCTION.  APPLE SHOULD BE ABLE TO

2    ENFORCE THAT INJUNCTION AT THIS POINT AND STOP THE

3    INFRINGING SALES.

4            IF THE FEDERAL CIRCUIT WISHES TO PUT IN

5    PLACE A STAY, OR A STAY PENDING A STAY, THE FEDERAL

6    CIRCUIT CAN DO THAT.

7            I PROMISE YOU, YOUR HONOR, SAMSUNG WILL

8    BE AT THE FEDERAL CIRCUIT VERY, VERY QUICKLY,

9    MEASURED IN HOURS OR DAYS, ASKING THE FEDERAL

10   CIRCUIT TO DO THAT.

11           AND IF THE FEDERAL CIRCUIT BELIEVES THAT

12   THERE IS A QUESTION THAT WARRANTS ITS ATTENTION, IF

13   THEY BELIEVE THAT SAMSUNG'S HARM IS SO IRREPARABLE,

14   NOTWITHSTANDING THE COMPLETE ABSENCE IN THE RECORD

15   OF ANY PROOF OF THAT, THEN THE FEDERAL CIRCUIT WILL

16   PUT A STAY IN PLACE.

17           BUT AS MR. MCELHINNY SAID AT THE OUTSET,

18   YOUR HONOR, HAVING CONSIDERED THESE ISSUES AS

19   CAREFULLY AS THIS COURT DID, HAVING WRITTEN A

20   CAREFULLY REASONED, THOROUGH OPINION, AND HAVING

21   FOUND THAT APPLE WILL SUFFER AND HAS BEEN SUFFERING

22   SUBSTANTIAL IRREPARABLE HARM, IT IS CRITICAL THAT

23   THE INJUNCTION MOVE FORWARD AND THAT SAMSUNG NOT BE

24   ABLE TO CONTINUE TO FLOOD THE MARKET WITH

25   INFRINGING DEVICES WHICH CONTINUE TO CAUSE ALL THE

                                                    69

1    HARMS THAT YOUR HONOR DETAILED AND DESCRIBED

2    CAREFULLY IN THE OPINION.

3            THE COURT:  OKAY.  I'M GOING TO GIVE

4    SAMSUNG THE LAST WORD.  IF IT COULD BE BRIEF,

5    PLEASE, SINCE THE HEARING HAS BEEN GOING ON FOR AN

6    HOUR AND A HALF NOW?

7            MR. SHIELDS:  THANK YOU, YOUR HONOR.  I

8    DID WANT TO ADDRESS MR. KREVITT'S COMMENTS ABOUT

9    NEAL AND WAIS.

10            I'LL START WITH NEAL.  MR. --

11            THE COURT:  I AGREE WITH HIM.  IT

12    DISCLOSED THE MULTIPLE ALGORITHMS, BUT NOT THE

13    MULTIPLE MODULES.

14            MR. SHIELDS:  IT DOES DISCLOSE MULTIPLE

15    MODULES, AND THAT'S EXACTLY WHAT I WANTED TO

16    ADDRESS.

17            THE COURT:  UM-HUM.

18            MR. SHIELDS:  IN DR. POLISH'S

19    DECLARATION, HIS REPLY DECLARATION, HE QUOTES ONE

20    QUESTION AND ANSWER FROM DR. CARBONELL, AND WHAT

21    DR. CARBONELL SAID IN THAT QUOTE, WHICH IS WHAT WE

22    CITED IN OUR BRIEF, IS THAT NEAL DISCLOSES TO A

23    PERSON OF ORDINARY SKILL IN THE ART, A PERSON OF

24    ORDINARY SKILL IN THE ART COULD READ NEAL AND

25    IMPLEMENT, YOU KNOW, THE SEARCH ENGINE WITH ONE

1    MODULE OR WITH MORE THAN ONE MODULE.

2              WHAT HE SAYS IS "I'M SAYING THAT IT COULD

3    HAVE BEEN DONE THAT WAY OR IT COULD HAVE BEEN DONE

4    IN ONE MODULE."

5              THE DISCLOSURE HERE OF SEPARATE

6    METHODOLOGIES WITH THE DIFFERENT HEURISTICS WOULD

7    PERMIT ONE TO -- PERMIT ANYONE SKILLED IN THE ART

8    TO INCLUDE THEM IN SEPARATE MODULES.

9              NOW, I THINK THAT IS SUFFICIENT.

10             BUT HE THEN WENT ON IN THE SAME

11   DEPOSITION, WHICH WE QUOTED IN OUR BRIEF AND

12   MR. KREVITT DIDN'T RESPOND TO, HE SAID, IN REGARD

13   TO FIGURE 2 OF NEAL, "WELL, IT WOULD HAVE SOME

14   MODULES," PLURAL, "BECAUSE IF YOU LOOK IN BETWEEN

15   THEM, EACH ONE TERMINATES EITHER WITH A MATCH AND A

16   RESULT OR WITH NO MATCH BEFORE THE OTHER ONE

17   BEGINS."

18             AND FIGURE 2 FROM NEAL SHOWS EXACTLY WHAT

19   YOUR HONOR CONSTRUED A MODULE TO BE, WHICH IS A

20   SMALLER APPLICATION WITHIN THE LARGER CLIENT

21   APPLICATION.

22             AND FIGURE 2 SHOWS -- IS A DIAGRAM IN

23   NEAL OF THE SEARCH ENGINE, THE CLAIMED SEARCH

24   ENGINE, WITH SEPARATE BOXES FOR EACH SEARCH, EACH

25   AREA OF SEARCH, AND ONE COMPLETES BEFORE YOU GO ON

                                                    71

1     TO ANOTHER ONE.

2               SO THERE'S SEPARATE SUBROUTINES WITHIN

3     THE SEARCH ENGINE.

4               SO FOR MR. KREVITT TO SUGGEST THAT THE

5     EXPERTS AGREE THERE'S NOT MORE THAN ONE MODULE IN

6     NEAL IS SIMPLY WRONG.

7               A WORD ON WAIS.

8               FIRST OF ALL, MR. KREVITT SAID THIS

9     ARGUMENT SHOULD HAVE BEEN MADE BEFORE.

10               I HAVE A BIT OF A PROBLEM WITH THAT

11     BECAUSE APPLE ARGUES THAT ROUGHLY HALF OF OUR

12     ARGUMENTS IN THE MOTION TO STAY SHOULD BE REJECTED

13     BECAUSE THEY WERE MADE BEFORE, AND THE OTHER HALF

14     SHOULD BE REJECTED BECAUSE THEY WEREN'T, AND I'M

15     PRETTY SURE BOTH OF THOSE CAN'T BE REASONS TO

16     REJECT OUR MOTION.

17               BUT THE REASON THIS WASN'T MADE BEFORE IS

18     THAT YOUR HONOR'S CLAIM CONSTRUCTION OF THE TERM

19     "MODULES" CAME FROM DR. POLISH'S REPLY DECLARATION.

20               I MEAN, TO SAY THAT WE DIDN'T ARGUE TO

21     BEGIN WITH THAT WE DID THE SAME THING AS WAIS IS

22     LUDICROUS.  WE ARGUED WAIS ANTICIPATES.  OF COURSE

23     WE SAID WE DO THE SAME THING AS WAIS.

24               AND TO DISTINGUISH WAIS, DR. POLISH, IN

25     HIS REPLY DECLARATION, FOR THE FIRST TIME OFFERED A

1    CONSTRUCTION OF MODULES WHERE THE MODULES HAVE TO

2    BE PART OF THE CLIENT APPLICATION.

3            WE DIDN'T GET A CHANCE TO RESPOND TO THAT

4    BECAUSE WE DIDN'T HAVE A SURREPLY AND IT WASN'T ONE

5    OF THE ISSUES THAT YOUR HONOR ASKED ABOUT AT THE

6    PRELIMINARY INJUNCTION HEARING AND THAT WAS THE

7    CONSTRUCTION THAT YOUR HONOR OFFERED, OR ACCEPTED

8    IN YOUR ORDER.

9            BUT APPLYING THAT CONSTRUCTION TO GALAXY

10   NEXUS, WE DO NOT INFRINGE.

11           MR. KREVITT KEPT TALKING ABOUT HOW WAIS

12   USES A SINGLE QUERY.  HE SAID THE CLIENT

13   APPLICATION IN WAIS SENDS A SINGLE QUERY AND THE

14   SEARCH ENGINES THEN TAKE THAT AND RUN WITH IT AND

15   DO WHAT THEY WILL.

16           GALAXY NEXUS DOES THE SAME THING.  THE

17   QUICK SEARCH BOX SENDS A SINGLE QUERY TO PEOPLE, TO

18   BROWSER, AND TO WHATEVER OTHER APPLICATIONS ARE

19   CONNECTED TO IT.

20           PEOPLE IS A SEARCH ENGINE.  BROWSER IS A

21   SEARCH ENGINE, JUST LIKE THE REMOTE SERVER IN WAIS.

22           AND THE FACT THAT THEY'RE IN THE SAME

23   DEVICE AS OPPOSED TO CONNECTED OVER A LONGER

24   NETWORK DOES NOT MATTER BECAUSE YOUR HONOR'S

25   CONSTRUCTION WASN'T THEY HAVE TO BE PART OF THE

73

1    SAME DEVICE.

2              YOUR HONOR'S CONSTRUCTION WAS THE MODULE

3    HAS TO BE PART OF THE CLIENT APPLICATION, NOT

4    SOMETHING THE CLIENT APPLICATION SENDS A QUERY TO.

5              MR. PRICE:  YOUR HONOR, FIRST, I DO WANT

6    TO ADMIT THAT WE ARE ALSO SAYING THAT YOUR

7    CONCLUSION ABOUT APPLE LOSING SUBSTANTIAL MARKET

8    SHARE AND THERE BEING ANY CAUSAL RELATION TO THE

9    NEXUS, OR THE NEXUS TO THE NEXUS, I GUESS, IS

10   CLEARLY ERRONEOUS.

11             THE COURT:  I UNDERSTOOD THAT.

12             MR. PRICE:  AND WE DO MAKE THAT ARGUMENT,

13   AND OF COURSE WE WERE ENTITLED TO MAKE THAT

14   ARGUMENT.  IT'S KIND OF STRANGE TO HAVE A

15   SUGGESTION THAT WE WEREN'T.

16             BUT CERTAINLY THERE IS A SUBSTANTIAL

17   QUESTION BECAUSE OF THE AMBIGUITY THAT YOU'VE

18   IDENTIFIED IN THE FEDERAL CIRCUIT'S DECISION, AND

19   THAT IS IN A CASE LIKE THIS, WHERE THE EVIDENCE IS

20   SHIFTING MARKET SHARE OVERALL, IN THE CONTEXT OF

21   APPLE'S HISTORIC PATTERN OF ALWAYS HAVING DECREASED

22   SALES AFTER THAT EXPLOSIVE FIRST SALE WHEN THEY

23   BRING THE PRODUCT TO MARKET, COMBINING THAT WITH

24   ONLY .5 PERCENT OF THE MARKET BEING THE GALAXY

25   NEXUS, AND THEN WITH THE EVIDENCE THAT THERE'S A

74

1    CAUSAL LINK BEING THE SAME MARKET SHARE CHANGE AND

2    DOCUMENTS THAT GO TO DEVELOPERS, I THINK IT WAS ONE

3    OF THE DOCUMENTS CITED IN YOUR OPINION WAS FOR

4    ANDROID DEVELOPERS AND SOMETHING ON GOOGLE, THERE

5    IS NO EVIDENCE THAT THE CONSUMER, YOU KNOW, CARED

6    AT ALL AS TO WHETHER OR NOT THE GALAXY NEXUS HAD

7    SEARCH VERSUS A QUICK SEARCH THAT WOULD SEARCH

8    MULTIPLE AREAS USING DIFFERENT HEURISTICS.

9            AND I -- AND WE WENT THROUGH THE KIND OF

10   EVIDENCE ONE WOULD EXPECT IF THAT WAS THE CASE, AND

11   YOU ASKED THE QUESTION, WELL, HOW DO YOU EXPLAIN

12   THE FACT THAT THE IPHONE 4 COMPETED MARVELOUSLY

13   WITH THE GALAXY PRODUCTS FOR OVER A YEAR WHEN THE

14   GALAXY HAD QUICK SEARCH AND THE IPHONE DIDN'T, AND

15   YOU DIDN'T HEAR A RESPONSE.

16           QUICK SEARCH WAS NECESSARY FOR SIRI.

17   THAT'S THE EVIDENCE THAT YOU HAVE.

18           AND SIRI DOES SOMETHING THAT SAMSUNG

19   DOESN'T DO.

20           AND I HEARD THAT -- I DON'T KNOW THAT

21   THERE'S ANY EVIDENCE IN THIS RECORD AT ALL -- IN

22   FACT, I'M QUITE CERTAIN THAT THERE ISN'T -- THAT

23   THE VOICE FUNCTION ON THE GALAXY NEXUS USES UNIFIED

24   SEARCH.

25           MY UNDERSTANDING -- AND THIS IS NOT IN

1    THE RECORD ON THIS, ON THIS PRELIMINARY INJUNCTION

2    MOTION BECAUSE THE ACCUSATION HASN'T BEEN MADE --

3    BUT THE DEPOSITION OF GOOGLE'S ENGINEER --

4         IS IT BRINGERT?

5         MR. SHIELDS:  BJORN BRINGERT.

6         MR. PRICE:  -- BJORN BRINGERT HAS BEEN

7    TAKEN, WE CAN SUPPLY THE TRANSCRIPT, AND HE SAYS,

8    "NO, THE VOICE ON THE NEXUS IS NOT ASSOCIATED WITH

9    UNIFIED SEARCH, WITH QUICK SEARCH."

10        SO WE HAVE A DIFFERENCE OF OPINION THERE.

11        BUT THE POINT IS THERE'S A SUBSTANTIAL

12   QUESTION AS TO WHETHER OR NOT, UNDER THE AMBIGUOUS

13   STANDARD OF THE FEDERAL CIRCUIT, OR AS YOUR HONOR

14   SAID IN HER OPINION, THE STANDARD WHICH YOU FIND

15   NOT COMPLETELY LIABLE, THERE'S A QUESTION OF

16   WHETHER THAT IS THE TYPE OF EVIDENCE THAT IS ENOUGH

17   TO SHOW THAT APPLE -- OR THAT SAMSUNG COULD NOT

18   HAVE SOLD THE GALAXY NEXUS IF IT HAD SEARCH INSTEAD

19   OF QUICK SEARCH, OR THAT APPLE HAS LOST SUBSTANTIAL

20   SALES.

21        AND THERE'S ALSO THEN AN ISSUE ON WHAT IS

22   SUBSTANTIAL SALES?  WE'RE TALKING ABOUT .5 PERCENT

23   OF THE MARKET.

24        SO THIS ISN'T JUST WE WANT TO DO-OVER.

25        THE COURT:  WOULD YOU LIKE TO ANSWER VERY

76

1    QUICKLY MR. KREVITT'S POINT ABOUT THE

2    BACK-TO-SCHOOL PROMOTIONAL BASICALLY BEING --

3             MR. PRICE:  OUR FAULT?

4             THE COURT:  NO, NOT -- NO, NOT YOUR

5    FAULT.  YOU DON'T HAVE TO ADDRESS THAT.

6             BUT HOW IT'S, I GUESS, ONE OF THE CENTRAL

7    PIECES OF APPLE'S CLAIM OF IRREPARABLE HARM.

8             MR. PRICE:  WELL, FIRST YOU HAVE TO

9    HAVE -- YES, THEY CLAIM IRREPARABLE HARM BECAUSE WE

10   ARE TARGETING PEOPLE, WE ARE TARGETING CUSTOMERS

11   WHO WOULD WANT TO USE AN IPHONE, AND THAT IS

12   UNDISPUTED.

13            I MEAN, YOU KNOW, THE PERSON IN SECOND OR

14   THIRD PLACE ALWAYS WANTS TO BE IN FIRST PLACE, AND

15   SO YOU'RE GOING TO SEE LOTS OF STRATEGY, LOTS OF

16   SALES STRATEGY GEARED TOWARD TAKING MARKET SHARE

17   FROM APPLE.  THERE'S NO QUESTION ABOUT THAT.

18            YOU KNOW, THIS CASE WAS FILED AND SAMSUNG

19   CONTINUED TO OPERATE ITS BUSINESS, COMPETING WITH

20   OTHER ANDROID MANUFACTURERS, COMPETING WITH IPHONE.

21            IT DIDN'T ASSUME, "OH, MY GOSH.  WE'RE

22   GOING TO LOSE THIS.  WE'RE GOING TO STOP OUR

23   BUSINESS."

24            IN FACT, THEY FELT VERY STRONGLY THAT

25   WHAT APPLE WAS DOING WAS TRYING TO USE PATENTS,

                                                      77

1    WHICH WE BELIEVED DID NOT APPLY AND WERE NOT VALID,

2    AGAINST A PRODUCT THAT WAS IN THE MARKET AND THAT

3    THOSE PARTICULAR FUNCTIONS HAD NOTHING TO DO WITH

4    WHAT WAS REALLY DRIVING OUR SALES.

5            IT WAS LIKE A GOTCHA SORT OF LAWSUIT,

6    WHICH IS, "HEY, YOUR PHONE HAPPENS TO HAVE A SLIDE

7    TO UNLOCK.  YOU CAN'T SELL IT.  YOU CAN'T COMPETE

8    WITH US."

9            SO, YES, SAMSUNG WENT FORWARD AND

10   COMPETED IN THE MARKET AS IT HAS.

11           NOW, WHERE WE ARE NOW?  WE'RE EVALUATING

12   WHETHER OR NOT THERE'S IRREPARABLE HARM AND WE'RE

13   LOOKING AT GOING FORWARD IN A 15 MINUTE TO TWO WEEK

14   PERIOD OR FOUR MONTH PERIOD.

15           YOU KNOW, WHERE'S THE HARM GO TO?  I

16   MEAN, WHICH SIDE HAS MORE HARM?

17           AND IN THIS CASE, APPLE HASN'T BEEN ABLE

18   TO DEMONSTRATE ANY SUBSTANTIAL HARM.

19           THEY HAVE, THROUGH THEIR EVIDENCE, SHOWN

20   WHY WE HAVE IRREPARABLE HARM, AND THAT'S THE

21   STICKINESS, WHICH IS MULTI-FOLD FOR APPLE AS

22   OPPOSED TO SAMSUNG.

23           IF WE LOSE CUSTOMERS, THEY'RE GOING TO BE

24   GONE.  THAT'S WHAT APPLE WOULD TELL YOU BASED UPON

25   THE STATISTICS THEY'VE SHOWN, BECAUSE THEY'RE

1    TELLING YOU THAT ABOUT SAMSUNG BASED ON STICKINESS,

2    WHICH ISN'T HALF AS SIGNIFICANT.

3           SO THEY'VE SHOWN THAT WE'RE GOING TO LOSE

4    NOT JUST SALES, BUT ALSO SALES OF OTHER PRODUCTS

5    AND THAT WE'RE GOING TO LOSE A CHANCE TO BUILD AN

6    ECOSYSTEM.  THEY'VE DEMONSTRATED THAT BY SAYING

7    THAT'S GOING TO HAPPEN WITH APPLE.

8           WELL, IT'S CERTAINLY GOING TO HAPPEN IF

9    APPLE GETS OUR CUSTOMERS.

10          AND IN THAT PERIOD OF TIME, THE CARRIERS

11   ARE BEING DISRUPTED, THE PUBLIC IS GOING TO BE

12   DISRUPTED BECAUSE IT WON'T HAVE A GOOGLE, A

13   STRAIGHT GOOGLE PHONE OUT THERE TO CHOOSE, AND

14   THERE ARE PEOPLE WHO WANT THAT PHONE, AND SO THAT'S

15   THE IRREPARABLE HARM.

16          YOU COMPARE THAT WITH, YOU KNOW, THESE

17   PATENTS ARE APPLE SAYING "THEY'RE INFRINGING AND

18   THAT'S HORRIBLE."

19          WELL, YOU ANALYZED THE FOUR PATENTS AND

20   FOUND THAT THERE WASN'T SUBSTANTIAL EVIDENCE ON

21   THREE OF THEM THAT THEY'RE THE KIND OF THING THAT

22   WOULD DRIVE SALES, WHICH, BY THE WAY, KIND OF GIVES

23   YOU AN IDEA OF EXACTLY WHAT THESE LAWSUITS ARE

24   ABOUT.  THEY ARE GOTCHA LAWSUITS.

25          AND ON THE ONE, YOUR HONOR, WHERE YOU DID

79

1    FIND THE NEXUS, I THINK YOU ACKNOWLEDGED THAT THIS

2    IS A TRICKY AREA GIVEN WHERE THE FEDERAL CIRCUIT IS

3    RIGHT NOW.

4           AND ALTHOUGH YOU FOUND THAT THERE WAS A

5    NEXUS, MY SUGGESTION IS THERE'S A SUBSTANTIAL

6    QUESTION, GIVEN THE KIND OF EVIDENCE THAT'S

7    AVAILABLE OUT THERE, AS TO WHETHER OR NOT THERE

8    REALLY WAS ONE.

9           SO BEFORE STOPPING SAMSUNG IN ITS TRACKS

10   AND SAYING, YOU KNOW, "YOU'RE GOING TO LOSE THESE

11   CUSTOMERS, YOU'RE GOING TO LOSE THEM FOR A LONG

12   TIME, YOUR CARRIERS ARE GOING TO BE DISRUPTED, THE

13   CUSTOMERS WON'T HAVE THE CHOICE FOR THIS PHONE, TO

14   BUY THIS PHONE," THAT YOU SHOULD STAY YOUR ORDER

15   AND LET THE FEDERAL CIRCUIT DECIDE, EITHER 15

16   MINUTES, TWO WEEKS, OR FOUR MONTHS.

17          THE COURT:  ALL RIGHT.  THANK YOU ALL

18   VERY MUCH.

19          I AM HOPING TO ISSUE AN ORDER SHORTLY.

20          I DO NOT WANT APPLE TO POST THE BOND

21   UNTIL I HAVE AN OPPORTUNITY TO ISSUE MY ORDER,

22   OKAY?  BUT I'M TRYING TO DO IT AS QUICKLY AS

23   POSSIBLE.

24          MR. MCELHINNY:  UNDERSTOOD, YOUR HONOR.

25          THE COURT:  OKAY.  THANK YOU.

1          MR. PRICE:  THANK YOU, YOUR HONOR.

2          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

3          MR. KREVITT:  THANK YOU, YOUR HONOR.

4          (WHEREUPON, THE PROCEEDINGS IN THIS

5     MATTER WERE CONCLUDED.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                        CERTIFICATE OF REPORTER

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23              /S/
              _____
24            LEE-ANNE SHORTRIDGE, CSR, CRR
              CERTIFICATE NUMBER 9595
25