**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>SAMSUNG ELECTRONICS CO., LTD., a  )<br>Korean corporation; SAMSUNG  )<br>ELECTRONICS AMERICA, INC., a New York )<br>corporation; and SAMSUNG  )<br>TELECOMMUNICATIONS AMERICA, LLC, )<br>a Delaware limited liability company,  )<br>  )<br>  Defendants.  )<br>_____ ) | Case No.: 12-CV-00630-LHK<br><br>ORDER DENYING SAMSUNG'S MOTION TO STAY AND SUSPEND THE JUNE 29, 2012 PRELIMINARY INJUNCTION PENDING APPEAL OR, ALTERNATIVELY, PENDING DECISION BY FEDERAL CIRCUIT ON STAY PENDING APPEAL |

On June 29, 2012, this Court issued an order enjoining Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Telecommunications America, LLC; its officers, directors, partners, agents, servants, employees, attorneys, subsidiaries, and those acting in concert with any of them, from making, using, offering to sell, or selling within the United States, or importing into the United States Samsung's Galaxy Nexus smartphone and any product that is no more than colorably different from the specified product and infringes U.S. Patent No. 8,086,604 ("the '604 Patent"). *See* ECF No. 221 ("PI Order"). As a condition of the preliminary injunction,

the Court ordered Apple to post a bond in the amount of $95,637,141.60 to secure payment of any damages sustained by Samsung if it is later found to have been wrongfully enjoined.[1]

On July 1, 2012, Samsung filed a Notice of Appeal of the preliminary injunction order to the Federal Circuit. *See* ECF No. 218. Also on July 1, 2012, Samsung filed a Motion to Stay and Suspend the June 29, 2012 Preliminary Injunction Pending Appeal or, Alternatively, Pending Decision by Federal Circuit on Stay Pending Appeal ("Motion to Stay"). *See* ECF No. 219 ("Mot."). Later that day, Apple filed an Opposition to Samsung's Motion to Stay. *See* ECF No. 220 ("Opp'n"). The Court held a hearing on Samsung's Motion to Stay on July 2, 2012. Having considered the parties' arguments and the relevant law, the Court hereby DENIES Samsung's Motion to Stay.

## I. LEGAL STANDARD

Both the court of appeals and the district court have authority to stay an order pending review on appeal, as a function of its "'traditional equipment for the administration of justice.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 9-10 (1942)); *see* Fed. R. Civ. P. 62(c) (district court); Fed. R. App. P. 8(a) (appellate court). While the district court has the authority to hold an order in abeyance pending review, "[a] stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" *Nken*, 556 U.S. at 427 (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam), and *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926), respectively).

The standard for determining whether to grant a stay pending appeal is similar to the standard for issuing a preliminary injunction. *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988); *see Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) (laying out four-pronged test for preliminary injunctive relief). For both the appellate court and the district court,

---

[1] On June 29, 2012, the Court ordered Apple not to post the bond before July 3, 2012, so the parties could brief a motion to stay, and the Court could hold a hearing on July 2, 2012. At the July 2, 2012 hearing, the Court ordered Apple not to post the bond before the Court ruled on Samsung's Motion to Stay.

2

Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

"the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *accord Nken*, 556 U.S. at 425-26; *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009). Generally speaking, the first two factors of this standard "are the most critical." *Nken*, 556 U.S. at 434. "It is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). "By the same token, simply showing some 'possibility of irreparable injury' fails to satisfy the second factor." *Id.* (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)).

The court need not, however, give equal weight to each of the four factors. *Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed. Cir. 1990). Although the Supreme Court has not spoken definitively on the matter, the Ninth Circuit has held that the "sliding scale," or "serious questions," approach to deciding motions for preliminary injunction and motions for stay survived *Winter*. *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (treating "*Nken*'s endorsement of *Hilton* as an indication that we should continue to employ the type of 'continuum'" approach to stay motions, wherein "courts balance the various stay factors once they are established"); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (holding that the "serious questions" sliding-scale approach for preliminary injunctions survives *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)). Under the Ninth Circuit's "serious questions" test, a movant seeking a stay "must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the [movant']s favor." *Leiva-Perez*, 640 F.3d at 970; *cf. Alliance for the Wild Rockies*, 632 F.3d at 1134-35. Ultimately, whether to grant a stay of a preliminary injunction pending appeal is a matter of equitable discretion, and "'[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" *Nken*, 556 U.S. at 433 (quoting *Virginian R. Co*, 272 U.S. at

672-73). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id.* (citations omitted).

**II. ANALYSIS**

**A. Likelihood of Success on Appeal**

Samsung argues that a stay should issue pending the Federal Circuit's ruling on appeal because Samsung has a strong likelihood of success on the merits of its appeal, which at least raises substantial questions. Having reviewed the parties' briefs and the Court's preliminary injunction order, the Court is not convinced that Samsung has met its burden of showing a likelihood of success or substantial questions on appeal.

**1. Infringement of the '604 Patent**

Samsung argues that it is likely to establish on appeal that the Galaxy Nexus does not infringe the '604 Patent for three reasons: (1) there is at least a substantial issue regarding claim construction of the "each" limitation; (2) "People" and "Browser" are not infringing modules under the Court's construction; and (3) the Court's infringement finding reads out the claim limitation of "locating information in a network."

Samsung's first argument is without merit. In construing the claim term "each" in claim 6 of the '604 Patent, the Court carefully considered the claim language, specification, available prosecution history evidence, and the relevant Federal Circuit case law cited by both parties. In the absence of prosecution history evidence contradicting the plain and ordinary meaning of the claim term "each," as used to modify the claim term "plurality of heuristic modules," *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1382 (Fed. Cir. 2003), is directly on point. As discussed in the PI Order, the two cases on which Samsung relies, *In re Skvorecz*, 580 F.3d 1262 (Fed. Cir. 2009), and *Board of Regents v. BENQ America Corp.*, 533 F.3d 1362 (Fed. Cir. 2008), are readily distinguishable. Samsung has failed to raise a substantial question of law regarding the Court's claim construction as would warrant issuance of a stay.

Nor is the Court persuaded by Samsung's second non-infringement argument that the "People" and "Browser" modules are not heuristic modules under the Court's construction of "modules" for purposes of distinguishing the WAIS reference. In analyzing the WAIS system, the

4

Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Court explained that WAIS failed to disclose the "plurality of heuristic modules" limitation because "'[m]odules are small software programs that are parts of a larger application,' meaning they 'must be part of the application and not some service or server to which the application connects.'" PI Order at 26 (quoting Polish Reply Decl.[2] ¶ 73). The Court referred to the '604 Patent's specification, which states that "if a search engine is designed for use on the Internet to locate particular types of web pages, a plug-in module can also be designed to access that search engine and return results to the information retrieval manager." '604 Patent 7:31-35; *see also id.* at 4:22-23. Thus, the specification makes clear that a module accessing or employing a remote Internet search engine must be a software application residing locally on the apparatus. Applying that understanding of the '604 Patent to WAIS, the Court found that WAIS does not employ different modules to interact with the remote database servers, but rather works by sending an identical query to each remote database server, and thus does not disclose the "plurality of heuristic modules" limitation.

Samsung asserts, without citation to evidence or law, that "[t]he Quick Search Box works exactly the same way as WAIS," arguing that "[i]f the WAIS servers are not 'modules,' then neither are People and Browser." Mot. at 6. The evidence speaks to the contrary. The People and Browser functions of Android's Ice Cream Sandwich are relatively simple programs that search small, locally stored databases and provide ordered results. The specification contemplates that such simple programs used for local searches are "modules." *See* '604 Patent 4:15-17 ("one module $22_1$ may search the names of files stored on the local storage media 12 and the LAN storage volumes 8, to find those which match the user input"); *id.* at 4:17-19 ("A second module $22_2$ may index and search the contents of files on the local and/or network storage volumes"); *id.* at 4:19-21 ("A third module $22_3$ can maintain a list of the files, applications and web sites which were most recently accessed, and search this list for a match."). Thus, the Court is not persuaded that its finding of infringement based on the People and Browser modules is inconsistent with the ground on which it distinguished WAIS as an allegedly anticipatory reference.

---

[2] Unless otherwise indicated, all short-form citations to the record conform to the same short-form record citations used in the PI Order.

5
Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Moreover, although Samsung asserts that WAIS is an anticipatory reference, it has failed to produce a single written document for WAIS that discloses all the limitations of claim 6. As described in the PI Order, while the record contains prior art references describing the WAIS system, each of these references fails to disclose at least one limitation of claim 6, and thus none of these references individually anticipates the invention described in the '604 Patent. *Overview of Wide Area Information Servers*, for instance, fails to disclose "a display module configured to display one or more candidate items of information located by the plurality of heuristic modules on the display device." '604 Patent 8:39-41; *see* Carbonell Decl. Ex. GG. *WAIS, A Sketch Of An Overview* fails to disclose heuristic algorithms. *See* Carbonell Decl. Ex. HH. *The Enhanced freeWAIS distribution, Edition 0.5, for freeWAIS-sf 2.0*, which provides documentation for developers of WAIS-compatible database servers, fails to disclose the display or interface modules required by claim 6. *See* Carbonell Decl. Ex. JJ. The *MacWAIS User Manual* fails to disclose heuristic algorithms. *See* Carbonell Decl. Ex. KK. Because none of these references individually anticipates claim 6, Samsung relies on a technology historian, Lyle Bickley, who reconstructed a WAIS system for purposes of this litigation. *See generally* Bickley Decl. Mr. Bickley's reconstruction was based on the descriptions in the cited documentation, code that he himself wrote for the reconstruction, and software programs released in 1994 and 1999, respectively. *See id.* ¶ 4 ("I also installed freeWAIS-SF version 2.2.12, released on April 16, 1999"); *id.* ¶ 6 ("I built and indexed two searchable text databases"); *id.* ¶ 7 ("I generated a custom synonym file"); *id.* ¶ 8 ("I generated a much smaller test database"); *id.* ¶ 9 ("I installed a WAIS client . . . released October 7, 1994"). There is no evidence that the software programs and code used by Mr. Bickley were in existence at the same time or that they were combined in a single apparatus. Mr. Bickley's post-hoc, reconstructed interpretation of how a WAIS system *might* have been constructed does not constitute prior art for purposes of anticipation. Accordingly, because Samsung has failed to adduce a single anticipatory prior art reference, and Samsung has not put forth an obviousness argument with regard to claim 6, Samsung has not raised a substantial question of invalidity based on the WAIS reference. *See generally* Opp'n to Mot. for Prelim. Inj. ("PI Opp'n") at 10-11. This

obviates the need to differentiate WAIS on the basis of "modules," further demonstrating that Samsung is unlikely to prevail in its challenge on appeal.

Third, Samsung argues that because neither the People nor the Browser module searches data stored remotely, the Quick Search Box does not meet the claim limitation requiring "locating information in a network." The preamble of claim 6 reads: "An apparatus for locating information in a network, comprising:." '604 Patent 8:26-27. "Whether to treat a preamble term as a claim limitation is 'determined on the facts of each case in light of the claim as a whole and the invention described in the patent.'" *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) (quoting *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003)). "'Generally,. . . the preamble does not limit the claims.'" *Id.* (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)). Although "a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim . . . a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal quotation marks and citations omitted).

In claim 6 of the '604 Patent, the phrase "locating information in a network" is simply a description of the intended use of the patented apparatus. The phrase does not recite any essential structure and is not necessary to breathe life or vitality into claim 6. Indeed, neither party felt the need to construe "locating information in a network."[3] Thus, the Court determines that "locating information in a network" does not limit claim 6. Furthermore, even if the Court were to accept Samsung's argument that the preamble is an affirmative limitation requiring that the claimed apparatus search at least one remote source of data, the Quick Search Box would still be infringing. There is no dispute that the Google Search Suggestion module searches the Internet by connecting to a remote Google server. There is also no requirement in claim 6 that the plurality of heuristic

---

[3] Samsung's expert's only argument regarding this preamble phrase was that it supported Samsung's proposed construction of "storage media accessible by the apparatus" as being not limited to local storage media. *See* Carbonell Decl. ¶¶ 87-95.

7
Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

modules perform a search of the network. Thus, even absent proof that the Google module searches using a heuristic algorithm, the Quick Search Box would still meet any limitation requiring "locating information in a network." Samsung's preamble argument therefore does not change the Court's finding of likely infringement based on the People and Browser modules searching locally.

In sum, the Court is not persuaded that Samsung has raised any substantial questions concerning infringement or that Samsung has shown a likelihood of success on non-infringement on appeal.

### 2. Validity of the '604 Patent

Samsung argues that it is likely to establish on appeal that the '604 Patent is invalid as anticipated by U.S. Patent No. 6,324,534 to Neal ("Neal"). Samsung raised only two references in its brief in opposition to Apple's motion for preliminary injunction: WAIS and Legall. *See* PI Opp'n at 10-11. Although Samsung's expert, Dr. Jaime Carbonell, opined on the Neal prior art reference in his declaration in support of Samsung's opposition to Apple's motion for preliminary injunction, Samsung in its opposition brief neither mentioned Neal nor cited to the portions of Dr. Carbonell's declaration discussing the Neal reference, and therefore the Court deemed any invalidity argument with respect to the Neal reference waived.[4] The Court set strict briefing limits on the preliminary injunction motion, allowing Apple's opening brief and Samsung's opposition brief each to exceed the page limit set in Civil Local Rule 7-2(b) by eight pages. *See* ECF No. 38. Expert declarations are to serve as evidence in support of arguments raised in a party's brief, not as means for circumventing briefing page limits. The Court took at face value Samsung's decision not to argue the Neal reference in its opposition brief and does not look favorably upon Samsung's endeavor now to re-litigate the merits of the '604 Patent's validity based on what is effectively new prior art. Because the Federal Circuit is unlikely to consider a prior art reference for the first time on appeal, the Court is doubtful that Samsung can show a likelihood of success on appeal based on

---

[4] Dr. Carbonell also discussed a fourth prior art reference with respect to the '604 Patent, "MetaCrawler," *see* Carbonell Decl. ¶¶ 174-184, but Samsung did not cite the MetaCrawler reference in its opposition brief, and thus the Court deemed the argument waived. Samsung does not now cite MetaCrawler as a basis for its Motion to Stay.

8
Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

the Neal reference. *See In re Brimonidine Patent Litig.*, 643 F.3d 1366, 1373 (Fed. Cir. 2011) (no clear error where defendant failed to call district court's attention to evidence on which defendant later relied on appeal); *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 389 (Fed. Cir. 1987) ("[Defendants] argue that because this reference had first been offered to the district court it is not in fact presented for the first time on appeal. But this reference, although placed in the record by the district court, was not the subject of testimony or any other form of evaluation by that court. Initial consideration of evidence is not the appellate role.").

In any event, upon review of the Neal reference itself, Samsung's and Apple's expert declarations, and the parties' Stay briefs, the Court determines that Samsung is unlikely to prove by clear and convincing evidence at trial that the Neal reference anticipates claim 6 of the '604 Patent. At trial, Samsung would have the burden of proving invalidity by "clear and convincing evidence." 35 U.S.C. § 282; *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1281 (Fed. Cir. 2005) (citation omitted). Samsung's expert testified during his deposition that Neal Figure 2 depicts the use of multiple algorithms. Polish Reply Decl. Ex. 2 [Carbonell Dep.] at 242:14-243:7. Samsung's expert contends that this explicit disclosure of multiple algorithms would also disclose the use of multiple "modules" to a person having ordinary skill in the art. Carbonell Decl. ¶ 167; Polish Reply Decl. Ex. 2 at 241:3-15, 242:14-244:18. Apple's expert disagrees, explaining that multiple algorithms can be implemented in a single module and that the Neal reference therefore would not disclose the use of multiple modules to a person having ordinary skill in the art. *See* Polish Reply Decl. ¶¶ 86-87. In the face of the presumption of validity that the '604 Patent enjoys, these directly competing expert declarations, the absence of any other evidence in support of anticipation, and the burdens that would inhere at trial, the Court concludes that Samsung has not raised a substantial question of invalidity based on the Neal reference. Accordingly, the Court is not persuaded that Samsung has raised a substantial question or shown a likelihood of prevailing on the merits of its invalidity arguments on appeal.

### 3. Irreparable Harm Attributable to Infringement of the '604 Patent

Samsung also argues that it is likely to succeed on appeal because: (1) the Court's finding that Apple will suffer irreparable harm was based on legally insufficient evidence that Samsung

9

and Apple are competitors; (2) the Court's Order is inconsistent with the Federal Circuit's directive that market share losses must be substantial; and (3) the Court's causation finding as to the '604 Patent was erroneous, or at a minimum raises substantial questions. In particular, Samsung argues that Apple has not presented any evidence that any Galaxy Nexus customers would have purchased a different phone, let alone an iPhone, if the Galaxy Nexus omitted the Quick Search Box. Mot. at 4. Furthermore, in light of the Galaxy Nexus's meager sales figures, any such loss in sales would be only a miniscule fraction of the entire smartphone market and would fall far short of demonstrating loss of "substantial" market share.

The Court disagrees with Samsung's contention that the Court erroneously applied the legal standards governing a finding of irreparable harm. Admittedly, Apple has not come forward with direct evidence that specific Galaxy Nexus customers would have purchased an iPhone but for the Quick Search Box feature on the allegedly infringing Samsung device. But the Federal Circuit has not required proof of specific lost customers. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010). Samsung also argues that, unlike the typical plaintiff claiming irreparable harm, Apple's iPhone has continued to perform well in the market, and Apple's U.S. and worldwide market shares have even continued to grow since the release of the Galaxy Nexus, perhaps because the iPhone 4S was also released around the same time as the Galaxy Nexus.[5] *See* Vellturo Reply Decl. Figs. 2 & 3; *see id.* Ex. 19 at 1; Wagner Decl. Figs. 2 & 3. That Apple does not face catastrophic harm, however, does not foreclose a finding of irreparable harm. The Court considered and weighed Samsung's evidence alongside Apple's evidence, viewing the totality of the evidence in context. The record contains evidence that, while Apple's U.S. market share in unit shipments may have continued to grow from the third to fourth quarters of 2011, even after release of the Galaxy Nexus on December 15, 2011, Apple's U.S. market share fell by several percentage points in the first quarter of 2012 – i.e., the three months after the Galaxy Nexus was released – while Samsung's U.S. market share grew by roughly the same percentage points. *See* Vellturo Reply Decl. Fig. 3. The record also contains evidence that, while Apple's worldwide market share

---

[5] The iPhone 4S was released in the U.S. on October 14, 2011. The Galaxy Nexus was released in the U.S. on December 15, 2011. *See* Wagner Decl. Fig. 2.

10

in unit shipments may have grown from 18.6% in the first quarter of 2011 to 24.2% in the first quarter of 2012, Samsung's worldwide market share in unit shipments grew even more dramatically during that time period, rising from 11.3% in the first quarter of 2011 to 29.1% in the first quarter of 2012. Vellturo Reply Decl. Ex. 19. This market share data must be viewed alongside Samsung's own internal strategic documents, which reveal that a centerpiece of Samsung's business strategy is to "█████," which ████████████████████ ████████████████████████████████, and which ████████████████████████████ ████████████████████████████████. See Vellturo Reply Decl. Ex. 44; id. Ex. 35 at SAMNDCA00258729, *697; id. Ex. 53 at S-ITC-500047403; id. Ex. 57 at S-ITC-500057724. In short, the Court did not rely on a lone, unsubstantiated assertion that Apple and Samsung are direct competitors. Rather, viewing the record as a whole, the Court found that Apple had shown a clear likelihood that Samsung has and will continue to take market share from Apple, and moreover that it is doing so with a product that likely infringes four of Apple's likely valid patents.

The Court was further persuaded by the evidence in the record that Apple's risk of lost market share and loss of downstream purchases to Samsung would be substantial and difficult to calculate. The evidence reviewed by the Court establishes that Samsung's Galaxy line of phones competes head to head with the iPhone for first-time smartphone buyers during this critical juncture in the market. Both neutral, third-party industry observers and Samsung predict that most U.S. consumers who have not yet switched from a feature phone to a smartphone will do so in the next twelve to twenty-four months. See, e.g., Vellturo Decl. ¶¶ 18-19 & Attach. D; id. Ex. 33 at 1; Vellturo Reply Decl. Exs. 35, 40. The evidence in the record supports a finding that both Apple and Samsung view first-time purchasers as critical to the race to capture market share because consumers are more likely to "stick" with the same operating system, both in making future smartphone purchases, and in making downstream purchases, such as apps, downloads, and tablets. Because this case is not scheduled to go to trial until March 31, 2014, see ECF No. 160, injunctive relief obtained after trial would be too late. Furthermore, unlike many of the cases cited by Samsung, there is no evidence here that Apple has ever shown willingness to license the '604

Patent to a competitor in the smartphone market.[6]  Nor is there evidence that Apple unduly delayed in bringing suit to enforce and to enjoin Samsung's infringement of the '604 Patent.  The Galaxy Nexus was not released in the U.S. until December 15, 2011, and the '604 Patent did not issue until December 27, 2011.  Apple filed this action and its preliminary injunction motion on February 8, 2012, just over six weeks from the '604 Patent's issuance, and just under eight weeks of the Galaxy Nexus's launch in the U.S. market.  This is not evidence of unreasonable delay.

Finally, the Court found sufficient evidence in the record of demand for the '604 Patented feature in particular, both in the form of consumer demand for the Siri feature on the iPhone, and in the form of Android developer documents and third-party reviews touting the Quick Search Box for its unified search functionality.  *See, e.g.*, Polish Reply Decl. Ex. 1 at 1; Vellturo Reply Decl. Ex. 10 at 2 (third-party review observing that Quick Search Box "adds a whole new layer of functionality" that helps Android phones "win new customers, even ones with iPhones").  Viewing the record as a whole, the Court was persuaded that Apple had shown the requisite causal nexus between Samsung's alleged infringement of the '604 Patent and Apple's alleged irreparable harm. *See* PI Order at 96.  On this record, the Court is not convinced that Samsung has a strong likelihood of success on appeal.[7]

---

[6] Samsung's sole evidence of Apple's willingness to license the '604 Patent is Apple's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  Furthermore, this ▉▉▉▉▉▉ predates the application date and issuance of the '604 Patent, as well as predates the issuance of the parent to the '604 Patent, U.S. Patent No. 6,847,959 ("the '959 Patent").  The '604 Patent did not issue until December 27, 2011, and the '959 Patent did not issue until January 25, 2005.  The Court notes that in its PI Order, it inadvertently cited to the wrong exhibit, citing to a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, *see* Posner Decl. Ex. S, rather than the relevant ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  *See* PI Order at 95.  The misstatement in the Court's PI Order does not in any way affect the Court's analysis.

[7] Because of the highly individualized nature of preliminary injunctive relief, the cases on which Samsung relies, both in its PI Opposition and its Motion for Stay, are distinguishable.  For example, *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006), held simply that "where a patentee has not shown a likelihood of success on the merits, and where the patentee has not clearly established that monetary damages could not suffice but the defendant has not established that monetary damages do suffice, we cannot say that the irreparable harm prong of the analysis favors either party."  *Abbott Labs.*, 452 F.3d at 1348.  Two major differences render *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 682-83 (Fed. Cir. 1990), distinguishable. There, the patentee had *not* shown a likelihood of success on the merits, and the district court

12

Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Samsung argues that, even if it has not shown a strong likelihood of success on appeal, it has raised at a minimum "substantial questions" regarding the Court's application of the irreparable harm standard. The Court fully acknowledges that the precise irreparable harm showing required to obtain an injunction in a patent case has been less than crystal clear in the years since *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Although *eBay* was decided in 2006 and seemingly buried the "presumption" of irreparable harm that historically inhered to any patentee who established a likelihood of success on the merits of infringement and validity, it has taken some time for the lower courts handling patent disputes to sort out the full ramifications of this tectonic shift in the basic framework for awarding injunctive relief. Not until October 2011, in fact, did the Federal Circuit definitively proclaim dead the presumption of irreparable harm in the context of injunctive relief. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). However, even in *Robert Bosch*, the Federal Circuit expressed reluctance to eschew a long tradition of presumptive irreparable harm in patent cases:

> [E]ven though a successful patent infringement plaintiff can no longer rely on presumptions or other short-cuts to support a request for a permanent injunction, it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude. Indeed, this right has its roots in the Constitution, as the Intellectual Property Clause of the Constitution itself refers to inventors' "*exclusive* Right to their respective . . . Discoveries." U.S. Const. art. I § 8, cl. 8 (emphasis added). Although the Supreme Court disapproved of this court's absolute reliance on the patentee's right to exclude as a basis for our prior rule favoring injunctions, that does not mean that the nature of patent rights has no place in the appropriate equitable analysis. While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either.
> The abolition of categorical rules and the district court's inherent discretion to fashion equitable relief, moreover, also do not mandate that district courts must act on a clean slate. "Discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be

---

further found that the patent holder had already licensed its patent to another company, undermining its claim that monetary damages could not adequately compensate for any alleged infringement. *See also Generac Power Sys., Inc. v. Kohler Co.*, 807 F. Supp. 2d 791, 805 (E.D. Wis. 2011) (no showing of likelihood of success on the merits, and no evidence of actual or future losses); *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740, 749-50 (N.D. Ill. 2010) (no showing of likelihood of success on the merits, and no evidence of lost profits or lost market share beyond conclusory affidavits). Although *Automated Merchandising Sys., Inc. v. Crane Co.*, 357 Fed. App'x 297 (Fed. Cir. 2009) (unpublished), seems to come closest to supporting Samsung's position, it is an unpublished opinion.

13
Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

decided alike." *eBay*, 547 U.S. at 395, (Roberts, J., concurring). In this area, as others, "a page of history is worth a volume of logic" when "it comes to discerning and applying those standards." *Id.* (quoting *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921) (Holmes, J.)).

*Id.* at 1149-50 (some internal citations omitted). The Federal Circuit went on to identify two categories of cases, explaining that the teachings of history are "particularly apt" in the first category of "traditional cases," "where the patentee and adjudged infringer both practice the patented technology," but may be less so in "certain cases arising now," which the Court will call "non-traditional cases," for lack of a better phrase. *Id.* at 1150. Such "non-traditional cases" include: (1) cases "'in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees;'" (2) "'[w]hen the patented invention is but a small component of the product;'" and (3) "those involving 'the burgeoning number of patents over business methods.'" *Id.* (quoting *eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring)). The implication of *Robert Bosch* is that the patentee's right to exclude weighs more heavily in a "traditional case," and less so in a "non-traditional case."

The difficulty with the Federal Circuit's categorization of cases, as illustrated by the facts presented here, is that the so-called "traditional cases" and the "non-traditional cases" are not mutually exclusive. As discussed in the Court's PI order and above, the overwhelming evidence establishes that Apple and Samsung are clearly direct competitors in the smartphone market, and Apple has shown that both the Galaxy Nexus and the iPhone 4S likely incorporate the features claimed by the '604 Patent, albeit in different forms (the Google Quick Search Box on the Galaxy Nexus, and Siri on the iPhone 4S). At the same time, however, the Court is not blind to the fact that smartphones are extraordinarily complex consumer products, comprised of hundreds, if not thousands, of discrete individual components. The Federal Circuit only recently announced a rule that a patentee must show "some causal nexus" between the infringement and the alleged harm "as part of the showing of irreparable harm." *Apple v. Samsung*, 678 F.3d 1314, 1324 (Fed. Cir. 2012). Under *Apple*, "a likelihood of irreparable harm cannot be shown if sales would be lost regardless of the infringing conduct." *Id.* The Federal Circuit was careful, however, not to require "customer survey evidence or other proof of what Apple calls 'consumer motivation'" as "a prerequisite to a

14

Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

finding of irreparable harm." *Id.* at 1324 n.3. There appears to remain an open question, not yet addressed by the Federal Circuit, as to what kinds of proof apart from direct consumer survey evidence may satisfy the requisite causal nexus showing.

In light of this open question and the fact that the Federal Circuit has only just recently established a causal nexus requirement for preliminary injunctive relief, the Court appreciates why Samsung believes it has raised "serious questions" going to the merits of the Court's irreparable harm nexus analysis. The questions raised here regarding the precise contours of the "causal nexus" requirement for irreparable harm are important ones. Nonetheless, even assuming that Samsung has raised "serious questions" on the merits of Apple's irreparable harm claim, Samsung has not established that the balance of hardships tips *sharply* in its favor, as discussed further below. The Ninth Circuit's "serious questions" sliding scale approach requires a showing of both prongs. Thus, even under the "serious questions" standard, Samsung has not met its burden.

### B. Irreparable Injury and Balance of the Equities

Even assuming Samsung has established "a substantial case on the merits," or has raised serious questions on the merits, the Court finds that Samsung has not shown that "the balance of hardships tips *sharply* in [its] favor." *Leiva-Perez*, 640 F.3d at 970 (emphasis added); *see Standard Havens*, 897 F.2d at 513. Such a showing is met when the movant establishes that "without a stay it is likely to suffer irreparable harm in the form of employee layoffs, immediate insolvency, and, possibly, extinction." *Standard Havens*, 897 F.2d at 515.

Samsung has not come close to making this showing of "catastrophic and irreparable" harm in the absence of a stay. *Id.* at 516. Samsung argues that its business relationships, goodwill, and reputation will be irreparably harmed by enjoining sales of the Galaxy Nexus. Samsung has already committed to supply a certain number of Galaxy Nexus phones to third-party carriers and retail vendors, and Samsung argues that enjoining sales of the Galaxy Nexus will "negatively impact [Samsung's] longstanding relationships and goodwill with vendors." Decl. of Paul Chapple ("Chapple Decl.") ¶ 7. Samsung offers two examples in particular, both concerning "Back-to-School" promotions featuring the Galaxy Nexus at a particular price point. *See id.* ¶¶ 4-5. According to the declaration of Paul Chapple, Samsung's Vice President of Sales, Samsung and its

15
Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

1  business partners have already invested sunk costs in preparing for these promotions and will be
2  harmed if forced to reconfigure their promotional campaigns. *Id.*

3  As an initial matter, the Court notes that Samsung did not raise this argument or provide
4  any evidence that it would suffer hardship in the face of an injunction in opposing Apple's
5  preliminary injunction motion. In any event, the Court is not persuaded that this belated evidence
6  of potential harm to Samsung's business relationships in the absence of a stay outweighs the
7  likelihood of harm to Apple in the absence of an injunction. Both Samsung and its business
8  partners assumed the risk of facing disruptions to their business practices by building their
9  promotional schemes on a product that has been the subject of a pending preliminary injunction
10 motion since February 8, 2012. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12
11 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be
12 heard to complain if an injunction against continuing infringement destroys the business so
13 elected."). While Samsung placed emphasis at the July 2, 2012 hearing on the unique harm it will
14 suffer in the coming weeks, as compared to Apple's ongoing irreparable harm, the harms identified
15 by Samsung in the coming weeks or months are no more than the expected harms that accompany
16 any enjoined business. Samsung has presented no evidence or argument of an extraordinary harm
17 that it will suffer in the absence of a stay, as was the case in *Standard Havens*.

18 In light of Samsung's weak showing of harm in the absence of a stay, compared with
19 Apple's clear showing of irreparable harm in the absence of an injunction, the Court concludes that
20 the balance of equities tips in Apple's favor. To the extent Samsung will be injured by its
21 exclusion from the two "Back-to-School" promotions that will be affected by the injunction, at the
22 July 2, 2012 hearing, Apple cited to compelling evidence (already in the record) that the
23 demographic target of those promotions is one of the key customer bases that forms the backbone
24 of Samsung's ▮▮▮▮▮ campaign. Therefore, the Court finds that granting a stay and allowing
25 Samsung to proceed with those planned promotions would only exacerbate Apple's irreparable
26 harm. Furthermore, Samsung's very argument at the hearing that it would be irreparably harmed
27 by lost Galaxy Nexus sales to Apple, due to the strength of Apple's platform stickiness and brand
28 loyalty among its customers, undermines the position it has maintained during this litigation that

16
Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Galaxy Nexus customers are unlikely to buy Apple products in Samsung's stead. Samsung's argument instead supports Apple's position that the Galaxy Nexus is taking sales away from Apple.

Finally, while the Court acknowledges the damage incurred by Samsung if it later turns out to have been wrongfully enjoined, this risk is precisely the rationale for requiring Apple to post a bond of over $95 million in order for the injunction to take effect. *See Costandi v. AAMCO Automatic Transmissions, Inc.*, 456 F.2d 941, 943 (9th Cir. 1972); *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1085 (E.D. Cal. 2009). The Court set the bond at the amount of Samsung's own estimated lost profits, which is exactly the amount of bond requested by Samsung. *See* PI Order at 100. The bond provides protection to Samsung from the potential harm if the injunction was wrongly issued. Thus, the Court finds that Samsung has not shown that it will likely be irreparably harmed absent a stay, nor has it shown that the balance of equities tips sharply in its favor.

### C. Public Interest

Samsung argues that, "[i]f a stay is not granted, irreparable consequences will ripple downstream from Samsung to vendors and customers who have formed plans and expectations around the Galaxy Nexus." Mot. at 9. In addition to disrupting third-parties' businesses, as discussed above, Samsung argues that enjoining sales of the Galaxy Nexus will harm certain "techie" consumers who value the pure Android operating system offered in the Galaxy Nexus, and who will be unable to find any close substitute within the same price point as the Galaxy Nexus. Mot. at 9; Chapple Decl. ¶ 8. Finally, Samsung argues that "a temporary stay would protect the public's interest in orderly preservation of the status quo." Mot. at 10.

As previously explained in the order granting the preliminary injunction, the balance of the hardships and the public interest weigh in favor of the injunction. Samsung's motion does not change this analysis or convince the Court that the preliminary injunction should be stayed. Although some consumers may be disappointed that they cannot purchase the Galaxy Nexus, the Galaxy Nexus, as Samsung itself has repeatedly insisted, is not Samsung's only smartphone product on the market. In light of Apple's strong showing of likely success on the merits, the

17

Court finds that the public interest here "is best served by enforcing patents that are likely valid and infringed." *Abbott Labs.*, 452 F.3d at 1348.

As explained above, Samsung has not shown a likelihood of success on the merits of its appeal. Weighing the remaining equitable factors, the Court finds that a stay of the preliminary injunction of the Galaxy Nexus would not lead to an equitable result. *See Standard Havens*, 897 F.2d at 513 (citations omitted) (The court "assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public.").

### III. CONCLUSION

For the foregoing reasons, Samsung's Motion to Stay is DENIED.

**IT IS SO ORDERED.**

Dated: July 3, 2012

LUCY H. KOH
United States District Judge

Case No.: 12-CV-00630-LHK
ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL