| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Charles K. Verhoeven (Bar No. 170151)<br>charlesverhoeven@quinnemanuel.com<br>Kevin A. Smith (Bar No. 250814)<br>kevinsmith@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, California 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700 | STEPTOE & JOHNSON, LLP<br>John Caracappa (*pro hac vice*)<br>jcaracappa@steptoe.com<br>1330 Connecticut Avenue, NW<br>Washington, D.C. 20036<br>Telephone: (202) 429-6267<br>Facsimile: (202) 429-3902 |

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Patrick M. Shields (Bar No. 204739)
patrickshields@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG'S MOTION TO STAY AND SUSPEND THE JUNE 29, 2012 PRELIMINARY INJUNCTION PENDING APPEAL OR, ALTERNATIVELY, PENDING DECISION BY FEDERAL CIRCUIT ON STAY PENDING APPEAL**<br><br>**FILED UNDER SEAL**<br>HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY<br><br>Date:　　July 2, 2012<br>Place:　　Courtroom 8, 4th Floor<br>Judge:　　Hon. Lucy H. Koh |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that Defendants Samsung Electronics Co., Ltd., Samsung

3  Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively

4  "Samsung") shall and hereby do move the Court, pursuant to Rule 62(c) of the Federal Rules of

5  Civil Procedure, to stay and suspend pending appeal its June 29, 2012 Order Granting Motion for

6  Preliminary Injunction ("Order"), or, in the alternative, pending a decision by the United States

7  Court of Appeals for the Federal Circuit on an emergency motion for stay pending appeal, which

8  Samsung will file within 48 hours from an order denying this motion.  This motion is based on this

9  notice of motion and supporting memorandum, the evidence cited therein, and such other written

10 or oral argument as may be presented at or before the time this motion is taken under submission

11 by the Court.

12 **RELIEF REQUESTED**

13 Samsung seeks an order staying and suspending the Court's June 29, 2012 Order Granting

14 Motion for Preliminary Injunction pending appeal, or, in the alternative, pending a decision by the

15 United States Court of Appeals for the Federal Circuit on an emergency motion for stay pending

16 appeal, which Samsung will file within 48 hours of an order denying a stay pending appeal.

17

18 DATED:  July 1, 2012                          QUINN EMANUEL URQUHART &
                                                SULLIVAN, LLP
19

20
                                                By  */s/ Patrick M. Shields*
21                                                 Charles K. Verhoeven
                                                   Kevin P.B. Johnson
22                                                 Victoria F. Maroulis
                                                   Patrick M. Shields
23
                                                   Attorneys for SAMSUNG ELECTRONICS CO.,
24                                                 LTD., SAMSUNG ELECTRONICS AMERICA,
                                                   INC., and SAMSUNG
25                                                 TELECOMMUNICATIONS AMERICA, LLC

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I. SAMSUNG HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS APPEAL, WHICH AT LEAST RAISES SUBSTANTIAL QUESTIONS ............. 2

    A. The Court's Finding That Apple Will Suffer Irreparable Harm Was Based On Legally Insufficient Evidence That Samsung and Apple Are Competitors ................................................................................................... 2

    B. The Court's Order Is Inconsistent With the Federal Circuit's Directive That Market Share Losses Must Be Substantial ................................................ 4

    C. The Court's Causation Finding As To The '604 Patent Was Erroneous, Or At A Minimum Raises Substantial Questions ......................................... 5

    D. "People" and "Browser" Are Not Infringing Modules Under the Court's Construction ................................................................................................. 6

    E. The Court's Infringement Finding Reads Out the Claim Limitation of "locating information in a network" .......................................................... 7

    F. The Court Did Not Address Neal, Which Anticipates Claim 6 Under the Court's Construction ................................................................................... 7

    G. There Is at Least a Substantial Issue Regarding Claim Construction of the "Each" Limitation ........................................................................................ 9

II. THE EQUITIES TIP SHARPLY IN FAVOR OF A STAY PENDING APPEAL ............. 9

CONCLUSION ...................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adv. Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
    579 F. Supp. 2d 554 (D. Del. 2008) ..................................................................................3

*Advanced Med. Optics, Inc. v. Alcon Laboratories, Inc.*
    2005 WL 3454283 (D. Del. Dec. 16, 2005) .......................................................................2

*Apple v. Samsung*,
    678 F.3d at 1314 (Fed. Cir. 2012) .................................................................................4, 5

*Costco Wholesale Corp. v. Hoen*,
    2006 WL 2645183 (W.D. Wash. Sept. 14, 2006) ..............................................................2

*County of Sonoma v. Fed. Housing Fin. Agency*,
    2011 WL 4536894 (N.D. Cal. Sept. 30, 2011)...................................................................2

*Davila v. Cty of San Joaquin*,
    2008 WL 4426669 (E.D. Cal. Sept. 26, 2008) ...................................................................2

*GTE Prods. Corp. v. Kennametal, Inc.*,
    772 F. Supp. 907 (W.D. Va. 1991) ....................................................................................2

*Generac Power Sys., Inc. v. Kohler Co.*,
    807 F. Supp. 2d 791 (E.D. Wis. 2011) ...........................................................................2, 3

*Illinois Tool Works, Inc. v. Grip-Pak*,
    906 F.2d 679 (Fed. Cir. 1990)............................................................................................2

*Lankford v. Sherman*,
    451 F.3d 496 (8th Cir. 2006)..............................................................................................3

*Merial Ltd. v. Cipla Ltd.*,
    426 Fed. App'x 915 (Fed. Cir. 2011)..................................................................................1

*Rowe v. Dror*,
    112 F.3d 473 (Fed. Cir. 1997)............................................................................................7

*See eBay, Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) ...........................................................................................................4

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    897 F.2d 511 (Fed. Cir. 1990)............................................................................................1

**Preliminary Statement**

The Court should grant a temporary stay of the injunction order because Samsung has a strong likelihood of succeeding on appeal, and at a minimum has a substantial case on the merits.

Prior merits arguments aside, the Court's Order highlights new problems and inconsistencies that make it improper to enjoin the Galaxy Nexus based on the '604 patent:

- The Court based its finding regarding lost market share on the bare fact that Apple and Samsung are competitors; that is legally insufficient to prove any lost market share, however, much less "*substantial*" market share.

- The Court's causation finding relies on evidence of a different feature (Siri, the voice command and response feature) in a different product (Apple's iPhone); there is no evidence that the unified search aspect of the accused feature (Quick Search Box, which does not support voice interaction) drove any sales of the accused product (Galaxy Nexus).

- The Court's finding that "People" and "Browser" constitute infringing "modules" is inconsistent with the claim construction of "modules" the Court applied for validity purposes. It also vitiates the claim limitation whereby the claimed apparatus must search *in a network*, not just on local media.

- The Court also failed to address the Neal prior art reference, which, under the Court's construction, anticipates every limitation of claim 6.

The status quo is that the Galaxy Nexus is currently being marketed, sold, and serviced as it has been for quite some time, with business operations, vendor promotions (particularly impending "back to school" promotions), and customer relationships all having formed around it. Samsung respectfully submits that this status quo should remain in place pending the Federal Circuit's expeditious resolution of the pending appeal so that Samsung, its customers, and the public may avoid substantial disruption and irreparable harm that cannot be adequately repaired in the event the injunction is ultimately reversed. On the other side of the coin, continued, incremental sales of the Galaxy Nexus during an expedited appeal pose minimal harm to Apple. Thus, the equities tip sharply in favor of an interim stay.

**Argument**

"To obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits, or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor." *Merial Ltd. v. Cipla Ltd.*, 426 Fed. App'x 915, 915

-1-
SAMSUNG'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY
JUNE 29, 2012 ORDER PENDING APPEAL

1  (Fed. Cir. 2011) (unpublished) (citing *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)).  "When the
2  request for a stay is made to a district court, common sense dictates that the moving party need not
3  persuade the court that it is likely to be reversed on appeal."  *Costco Wholesale Corp. v. Hoen*,
4  2006 WL 2645183, at *2 (W.D. Wash. Sept. 14, 2006).  If serious legal questions exist on the
5  appeal, the Court may grant a stay even if it "believes [its] ruling was correct."  *Davila v. Cty of*
6  *San Joaquin*, 2008 WL 4426669, at *2 (E.D. Cal. Sept. 26, 2008).  The Court may also stay
7  enforcement long enough for the Federal Circuit to rule on a motion to stay.  *County of Sonoma v.*
8  *Fed. Housing Fin. Agency*, 2011 WL 4536894, at *2 (N.D. Cal. Sept. 30, 2011).

**I.    SAMSUNG HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS APPEAL, WHICH AT LEAST RAISES SUBSTANTIAL QUESTIONS**

Samsung respectfully submits that it has a strong likelihood of success on the merits of its appeal and at least can raise substantial questions implicating reversal.  Understanding that this Court has considered and rejected Samsung's prior arguments as to why a preliminary injunction should not issue, Samsung will not belabor those arguments here, and instead respectfully incorporates them by reference.  (D.N. 115.)  The remainder of this section focuses only on those arguments newly or specially implicated by this Court's June 29th Order.

**A.    The Court's Finding That Apple Will Suffer Irreparable Harm Was Based On Legally Insufficient Evidence That Samsung and Apple Are Competitors**

The Court recognized where a plaintiff attempts to prove irreparable harm from lost market share, "the mere potential of lost sales alone does not demonstrate irreparable harm, for if such were the case, an injunction would issue in every case of infringement."  (Order at 66.)  As a matter of law, therefore, proof must be more than an inference of lost market share from the mere fact that the parties are direct competitors.  *See Illinois Tool Works, Inc. v. Grip-Pak*, 906 F.2d 679, 683 (Fed. Cir. 1990); *Generac Power Sys., Inc. v. Kohler Co.*, 807 F. Supp. 2d 791, 805 (E.D. Wis. 2011).

In determining that Apple carried its burden, the Court relied only on evidence that Apple and Samsung are direct competitors.  The Court stated:  "That Apple and Samsung are direct competitors in the smartphone market cannot be genuinely disputed."  (Order at 66.)  ■■■■■

████████████████████████████████████████████

████████████████████████████████ (*Id.* at 67–68.)  This evidence is insufficient, in itself, to show irreparable harm.  Yet Apple's evidence begins and ends there.  Apple offered no evidence of how much market share it has lost or will lose specifically as a result of the *Galaxy Nexus*, as distinct from Samsung's *overall product array*.  It offered no revenue or market-share projections that point to any losses in the future; moreover, the evidence of its financial performance and smartphone sales shows it faces, at most, *de minimis* losses.  Its 30(b)(6) witness on irreparable harm testified unequivocally that ████████████████████████ ██████████████████████████ (Opp. Br. at 23.)

The only purportedly direct evidence of market share was ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████ (Order at 68.)  Historical evidence of Apple's alleged lost market share in the fourth quarter of 2010, based on a *different product*, is likewise insufficient to prove that Apple will suffer an irreparable loss of market share to the Galaxy Nexus.  *See Lankford v. Sherman*, 451 F.3d 496, 513 (8th Cir. 2006) (remanding preliminary injunction request because "many facts have changed since the original hearing"); *Adv. Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 559 n.9 (D. Del. 2008) (no injunction where patentee relied on "prior market data" showing market share losses later recouped).  Moreover, substantial, unrebutted evidence showed that ████████████████████████████████████████ ████████████████████████████████  Finally, even if competition for market share in this space may amount to a "two horse race" between Apple and Samsung, it most certainly is not a two *product* race.  On-point evidence proves that it was not the *Galaxy Nexus* that moved the needle for Samsung.  (Opp. Br. at 23–25.)

The Court also discussed the reasons why Apple's loss of market share may be long term and difficult to quantify, including Apple's claim that the market is in a "critical juncture" and that its losses in smartphones "would radiate out in a multitude of other ways." (Order at 70-76.)  This too is legally insufficient to prove lost smartphone market share, because the difficulty in

quantifying lost market share resulting from its long-term or "radiating" effects *presupposes a loss of smartphone market share in the first place*.  Putting aside that Apple and Samsung are competitors, there is nothing else in the record to satisfy Apple's burden of proving likely and immediate loss of market share.

### B. The Court's Order Is Inconsistent With the Federal Circuit's Directive That Market Share Losses Must Be Substantial

Mere loss of sales cannot justify an injunction; instead, irreparable harm in the form of lost market share must be shown.  *See eBay, Inc. v. MercExchange*, LLC, 547 U.S. 388, 393 (2006).  Moreover, in its recent order, the Federal Circuit held that a "mere showing that [the patentee] might lose some insubstantial market share as a result of [the accused's] infringement is not enough."  *Apple v. Samsung*, 678 F.3d at 1314, 1324–25 (Fed. Cir. 2012).  Thus, the Court's finding that Apple will suffer irreparable harm depends upon adequate proof that Apple will lose *substantial* market share without an injunction.  Further, as the Court recognized, Apple must show it faces such loss not simply from the *Galaxy Nexus*, but from the presence or absence specifically of its *infringing feature*.  (Order at 80.)

The Court did not, and could not, determine that the inclusion of the alleged unified search feature of the Galaxy Nexus has caused Apple any substantial loss of market share.  Apple offered no such evidence.  To the contrary, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  (Wagner Decl. Ex. B, Sch. 8 & Ex. EEE (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓)); Vellturo Reply Decl. Ex. 22 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).)  That number is insufficient to pose substantial loss of market share.  There also is no evidence beyond pure speculation that any material number of Galaxy Nexus purchasers would have purchased any different phone—let alone an iPhone—if the Galaxy Nexus omitted the Google Quick Search Box.  Whatever the portion may be, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ If ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that requirement is toothless.

1
2
     **C.    The Court's Causation Finding As To The '604 Patent Was Erroneous, Or At A Minimum Raises Substantial Questions**

3
4
5
6
7
8
     The Federal Circuit held that to be entitled to a preliminary injunction, Apple must prove that any infringing features of the Galaxy Nexus drive sales *of the Galaxy Nexus* to the point of causing a *substantial loss of market share* to Apple. *Apple*, 678 F.3d at 1324–25. As the Court acknowledged, although "the Federal Circuit has made clear that the patented features must 'drive the demand' for the accused product, the Federal Circuit has not provided more detailed guidance on what standard of proof would satisfy the movant's burden." (Order at 79.)

9
10
11
12
13
14
15
16
17
18
     Under an appropriate standard of proof, Apple has fallen well short. The Court recognized that Apple lacks any direct evidence that the accused functionality specifically drives sales of the Galaxy Nexus. (Order at 83.) Apple relied instead on evidence ▮▮▮▮▮▮▮▮▮▮▮▮▮▮—which the Galaxy Nexus does not have—without isolating the functionality claimed by '604 patent. (Order at 81.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Posner Decl., Ex. J at 155:24–156:4.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nevertheless, based on this "circumstantial" evidence, the Court was "persuaded by the evidence in the record that the '604 unified search functionality drives consumer demand in a way that affects substantial market share." (Order at 83, 85.)

19
20
21
22
23
24
25
26
27
28
     The evidence on which the Court relied—showing that *Siri*, a different feature than the unified search covered by the '604 patent, drives sales of the *iPhone*, a different product—was twice removed from the question the Federal Circuit instructed the Court to consider. Apple was obliged to show a substantial loss in market share resulting from the presence *of the allegedly infringed patented feature in the allegedly infringing product*. The record is devoid of evidence that the unified search aspect of Quick Search Box drove so much as a single sale of the Galaxy Nexus, or that removing that aspect from the Galaxy Nexus would have any positive affect on sales of the iPhone. Absent this proof, the Court's causation finding rests on inferences too far attenuated from the Federal Circuit's required analysis. Nor did Apple offer any evidence that Galaxy Nexus purchasers would have viewed an alternate search functionality that did not

implicate the '604 patent as an unacceptable alternative. Especially given the stakes, an injunction should not issue until the Federal Circuit has compared the record proof against the causation standard it handed down.

### D. "People" and "Browser" Are Not Infringing Modules Under the Court's Construction

The Court found that the accused Quick Search Box likely infringes claim 6 of the '604 Patent because the People and Browser applications constitute heuristic "modules" employing different, predetermined heuristic algorithms. (Order at 24:22–27.) This finding, however, is *inconsistent* with the Court's construction of "modules" for purposes of invalidity.

In distinguishing the WAIS reference, the Court construed "modules" as "'small software programs that are parts of a larger application,' meaning they 'must be part of the application and not some service or server to which the application connects.'" (Order at 26:19–22 (quoting Polish Reply Decl. ¶ 73).) In other words, the claimed "modules" employing heuristic algorithms must be part of the client application itself. The Court ruled that, so construed, WAIS did not include "modules" because the search algorithms in WAIS were determined by the individual servers, not the client application: "[W]hen a user inputs a search string, the software component on the client side sends an identical query to all servers, *but there are no modules on the client side for sending queries that are tailored to each server*." (Order at 27:2–4 (emphasis added).)

The Quick Search Box works exactly the same way as WAIS. There are no modules or programs *within* the Quick Search Box that tailor queries for different search areas. Instead, the Quick Search Box sends the identical user input to People and Browser (and other applications) and *the applications themselves* tailor and conduct the search. (Bringert Decl., ¶ 5 ("To find these proposed results, *the application may perform its own search* . . . ." (emphasis added)); *see also id.* ¶¶ 6–7; Polish Reply Decl., ¶ 47 ("Each SuggestionProvider implements a Query() method that handles all searches for that application.").) People and Browser are not "small software programs that are parts of" the Quick Search Box; they are separate programs to which the Quick Search Box connects. If the WAIS servers are not "modules," then neither are People and Browser.

1   **E.    The Court's Infringement Finding Reads Out the Claim Limitation of "locating information in a network"**

Claim 6 of the '604 Patent requires an apparatus for "locating information in a network."[1] ('604 Patent at 8:26.) According to Apple's own expert, Dr. Polish, the claim requires searching at least one *remote* source of data:

> Consistent with the examples contained in the specification of the '604 patent, claim 6 requires multiple heuristic modules that work in parallel to obtain search results from different areas of search. *Such areas of search include data stored on at least one remote source* and one local source.

(Polish Reply Decl., ¶ 12 (emphasis added).)

The Court's order, however, finds infringement based on two applications—People and Browser—that search *only local data*. As described by Dr. Polish:

> The Browser module maintains a list of the files, applications and web sites which were most recently accessed, and searches this list for match. The People module searches the contents of files on the local storage volume.

(Polish Decl., ¶ 66.) This is presumably why Apple has *never* argued that People and Browser alone constitute the infringing modules. Apple has consistently alleged infringement based on People, Browser, *and the "Google" module*, which connects to a remote Google server. But the Court has found that Apple failed to show that the Google module uses a heuristic algorithm as required by claim 6. (Order at 21–22.) Without the Google module, Apple's infringement theory is doomed to fail because neither People nor Browser searches for information "in a network."

**F.    The Court Did Not Address Neal, Which Anticipates Claim 6 Under the Court's Construction**

The Court's order addresses only two of the four prior art references cited and discussed in Dr. Carbonell's expert declaration. In particular, the Court made no findings with respect to United States Patent No. 6,324,534 to Neal ("Neal"), which, under the Court's infringement analysis, clearly anticipates claim 6 of the '604 patent. Neal discloses a plurality of modules searching different data sets using different methodologies:

---

[1] The preamble of claim 6 is limiting because it recites a structural limitation ("a network") of the claimed invention. *See Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997).



The present invention is a system and method for cascading search methodologies on preselected segments, or sets, of data. Each data set is paired with one or more search strategies so that the overall effect is to supply the user with the most advantageous match to a keyword search. Search strategies may include one or more of the following: exact search, stem search, soundex search, and fuzzy logic search.

(Neal at 3:25–31 & Fig. 2 (Carbonell Ex. QQ); *see also* Carbonell Decl., ¶¶ 163–70.) Apple does not dispute that several of the search methods disclosed in Neal are heuristic (soundex, fuzzy logic, synonyms, and natural adjectives).[2] (*See* Carbonell Decl., ¶ 168.)

Apple made only two arguments against Neal. Apple's main argument was that Neal does not disclose more than one search area. (Polish Reply Decl., ¶ 85.) But it does:

> In one embodiment of the invention, the system is configured to search first within a catalog (or data set) of items that are designated as in-house, and then to fail-over to *a second tier catalog (or data set)* of vendor-supplied items available for short-term delivery.

(Neal at 3:45–50 (Carbonell Ex. QQ) (emphasis added).) Neal thus discloses multiple data sets, each of which constitutes an area of search. Apple also argued that the system disclosed in Neal *could* have been implemented in a single module, rather than multiple modules. (Polish Reply Decl., ¶ 85.) But alternative embodiments are irrelevant, because Neal clearly discloses an embodiment using multiple modules, as illustrated in Figure 2 above. (Carbonell Depo. at 243:14–18 ("Well, it would have some modules, because if you look in between them, each one

---

[2] Samsung respectfully submits that, in light of the anticipation of claim 6, the Court should also revisit its conclusion that dependent claim 19 is not obvious. But even if that finding stands, Apple has not shown, and the Court has not found, any nexus between *dependent claim 19* and Apple's alleged irreparable harm. The Court's nexus findings were based on the search functionality of claim 6, not the additional limitation of incremental search found in claim 19.

1  terminates either with a match and a result or with no match before the other one begins.").)

2  Under the Court's construction and application of claim 6, Neal anticipates every limitation.

### G. There Is at Least a Substantial Issue Regarding Claim Construction of the "Each" Limitation

As Apple conceded at the preliminary injunction hearing, Apple cannot demonstrate likelihood of success on the '604 patent under Samsung's proposed construction of the "each" limitation of claim 6.  (June 7, 2012 Hearing Tr. at 65:5–66:25.)  While the Court did not adopt Samsung's proposed construction, there is substantial support for that construction in the specification (*e.g.*, '604 Patent at 5:13–14 ("The heuristic of each plug-in module is different.")), and the language of claim 6 tracks exactly that embodiment.  Because this dispositive issue is a pure issue of law, and one in substantial dispute, Samsung respectfully submits that a stay is appropriate until the Federal Circuit has a chance to construe the term.

## II. THE EQUITIES TIP SHARPLY IN FAVOR OF A STAY PENDING APPEAL

Because Samsung has raised at least substantial legal questions for appeal, it is entitled to a stay of the injunction if the equities tip in its favor.  *See*, *e.g.*, *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 516 (Fed. Cir. 1990).  If a stay is not granted, irreparable consequences will ripple downstream from Samsung to vendors and customers who have formed plans and expectations around the Galaxy Nexus, as attested to in the accompanying declaration of Paul Chapple, STA's VP of Sales.  For instance, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. ¶¶ 4–6. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. ¶¶ 7–8. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. ¶ 9.

In contrast, Apple faces no appreciable harm in the next few months.  As noted, the most Apple has lost to Samsung from the Galaxy Nexus is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1    The irreparable impact an injunction would have on Samsung's business
2 relationships, good will and reputation is out of all proportion to any *de minimus* market share
3 Apple may lose in the near future.  Moreover, the Court has found that Apple has not shown any
4 likely loss of goodwill or reputation from Samsung's sales of the Galaxy Nexus.  (Order at 77.)
5 Any impact Apple may "suffer" from an inability to block Samsung's sales during the course of
6 Samsung's appeal may be good reason why the appeal should be expedited; it is not good reason
7 why the preliminary injunction should be implemented immediately rather than stayed on an
8 interim basis.  *See Advanced Med. Optics, Inc. v. Alcon Laboratories, Inc*., 2005 WL 3454283, at
9 *11 (D. Del. Dec. 16, 2005) ("While [plaintiff] will lose its right to exclusivity pending appeal and
10 may suffer some injury to its reputation as a company that enforces its patent rights, a temporary
11 stay [pending appeal] is not likely to cause irreparable harm."); *GTE Prods. Corp. v. Kennametal,*
12 *Inc*., 772 F. Supp. 907, 920 (W.D. Va. 1991).
13      Finally, a temporary stay would protect the public's interest in orderly preservation of the
14 status quo.  Although the public has a recognized interest in promoting the protection of
15 intellectual property rights, that interest is served by allowing prompt, final resolution via
16 expedited appeal, without suddenly depriving the public of an alternative to the iPhone before the
17 Federal Circuit has had its say.  Accordingly, even if Samsung's likely success on appeal may
18 seem dubious to this Court, there are substantial questions to be decided and potent equitable
19 considerations that in any event suffice to justify entry of a stay pending appeal.

20                                                  **Conclusion**

21      The Court should stay the June 29, 2012 Order Granting Preliminary Injunction pending
22 appeal or, alternatively, pending the Federal Circuit's ruling on an emergency motion for a stay.

23 DATED:  July 1, 2012                    QUINN EMANUEL URQUHART &
                                                          SULLIVAN, LLP
24
25
26                                                    By  */s/ Patrick M. Shields*
                                                              Patrick M. Shields
27
28

Charles K. Verhoeven
William C. Price
Kevin P.B. Johnson
Victoria F. Maroulis

Attorneys for DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC.,
and SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC