JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Counterclaim-Defendant. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**APPLE'S RENEWED ADMINISTRATIVE MOTION TO FILE DOCUMENTS RELATING TO PRELIMINARY INJUNCTION PROCEEDINGS UNDER SEAL** |

Pursuant to the Court's July 18, 2012 Order (D.I. 238), Apple Inc. ("Apple") submits this renewed administrative motion to seal a limited number of documents, and portions thereof, filed in connection with Apple's Motion for Preliminary Injunction and related filings. These documents,[1] as identified in Exhibit A hereto, satisfy the "compelling reasons" standard,[2] and, as such, Apple respectfully requests that they be sealed. The documents fall within the following categories:

- Third-party confidential research: Full research analysis reports sold to Apple under specific agreements to maintain the confidentiality of such research, and whose public disclosure would severely impact the market for those third parties' work product;
- Apple's non-public financial information: Apple's specific cost data, profit margins, and detailed breakdowns of product line sales, costs, and revenue;
- Licensing information: Full licenses between Apple and its licensing partners, as well as the terms of such licenses and Apple's licensing revenue; and
- Apple's customer base and product positioning analyses: Current analyses and other research of Apple's customer base and product positioning strategies.

As discussed below, each of these categories is precisely the type of information that has been found by courts to "outweigh the public's interest and justify sealing court records" under the Ninth Circuit's "compelling reasons" standard.

In recognition of the goal of providing the public with insight into the parties' claims, *see* D.I. 238 at 4, Apple is—as a general matter—*not* seeking to seal the parties' briefs and expert declarations. Rather, it moves to seal only portions of the evidence supporting those arguments—evidence that goes well beyond what the public needs to understand the parties' positions and the judicial process. *See, e.g.*, *Richardson v. Mylan Inc.*, No. 09-CV-1041-JM (WVG), 2011 U.S. Dist. LEXIS 23969, at *7-8 (S.D. Cal. Mar. 9, 2011) (information "of comparatively little value to the general public in terms of enhancing its understanding of the judicial process" is sealable) (internal quotation omitted); *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 U.S. Dist. LEXIS 21721, at *13-14 (N.D. Cal. Mar. 10, 2010) (sealing material that would "do little

---

[1] Apple believes that the subject of filings struck by the Court, D.I. 195, should remain under seal because they are not part of the record relating to the preliminary injunction. *See* D.I. 221.

[2] When considering motions to seal, the Ninth Circuit distinguishes between documents related to dispositive and non-dispositive motions. *See Philips v. Gen. Motors Corp.,* 307 F.3d 1206, 1213 (9th Cir. 2002). Though Apple respectfully maintains that the sealing standard for non-dispositive motions applies here, there is cause even under the "compelling reasons" standard to seal the documents at issue here.

APPLE'S RENEWED ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL
12-cv-00630-LHK (PSG)                                    1

to aid the public's understanding of the judicial process," but could cause a party "significant harm").

### A. Third-Party Confidential Research

Apple moves to seal the full data reports and analysis purchased from third-party market research companies pursuant to contractual agreements restricting the public disclosure of such information. These third parties, such as IDC (a leading research and analysis firm), expend significant resources in compiling, analyzing, and making available their data, and in turn require considerable payment from purchasers such as Apple in order to recoup their investments. Declaration of Cyndi Wheeler ("Wheeler Decl.") ¶¶ 5-6. Moreover, these third parties typically offer their proprietary research and analysis on a subscription basis, and demand strict protocols in order to maintain the confidentiality of their work. *Id.* ¶¶ 5-8, Ex. A. If that research and analysis were instead to be freely disclosed to the public, it would cease to have economic value. Thus, compelling reasons exist to seal this proprietary third-party data. *See, e.g.*, *Network Appliance,* 2010 U.S. Dist. LEXIS 21721, at *7 (sealing third party "confidential and proprietary technical information . . . designated . . . as 'Attorneys Eyes Only'"). In contrast, the public interest in full disclosure of this material is low. *See In re Adobe Systems, Inc. Sec. Litigation*, 141 F.R.D. 155, 161-62 (N.D. Cal. 1992) (sealed filings preserve third parties' "legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly disseminated").

Apple is not seeking blanket protection for *all* third-party data contained in the parties' filings; references to subsets of data in briefs and declarations, and data focusing on Apple and Samsung, *will* be available to the public. Apple here limits its request to seal full reports disclosing extensive additional information with little or no connection to the parties' claims.[3] The public thus may understand the judicial process without exposing proprietary, and irrelevant, third-party material.

### B. Financial Information

The only financial data that Apple now seeks to seal include detailed financial breakdowns, on a model-by-model basis, of Apple's products sales and costs, profit margins, and operating expenses. *See* Wheeler Decl. ¶¶ 10-11. Apple strictly protects such data, both within and outside

---

[3] Apple notes that it inadvertently omitted redacting certain third-party material in the initial Vellturo Declaration (not available through Pacer) that should have been redacted. This omission has been remedied in the present material.

Apple, as they provide critical strategic insight into Apple's competitive business strategy, in stark contrast to the broader, more generalized revenue and sales information that Apple provides in SEC filings and on earnings calls. *Id.* ¶¶ 11-12. Such financial data could enable Apple's competitors to tailor their own product offerings and priorities, advertising, budgets, and business strategies to more effectively compete with Apple. *Id.*; *see also Bauer Bros v. Nike, Inc.,* 2012 WL 1899838, *3-4 (S.D. Cal. May 24, 2012); *TriQuint Semiconductor v. Avago Techs., Ltd.*, Case No. CV 09-1531-PHX-JAT, 2011 U.S. Dist. LEXIS 143942, at *10-12 (D. Az. Dec. 13, 2011). As just one example, if Apple's competitors knew the specific profit margins for each iPhone model, they could determine which models are most profitable and by how much, and use that as a roadmap to undercut Apple's product pricing. Wheeler Decl. ¶ 12. In addition, if Apple's suppliers had this information, they could raise prices just enough to extract a higher profit without losing Apple as a customer. *Id.*

Other courts have found that compelling reasons exist to seal such information based on these very reasons. *See TriQuint,* 2011 U.S. Dist. LEXIS 143942, at *10-12 (sealing "information regarding [] development spending, budgets, and development processes . . . [because] revealing this information to the public would significantly harm its competitive standing [and] allow competitors to tailor their own capital expenditures, budgets, and business strategies to compete against [Defendant] more effectively"); *see also Bauer Bros.,* 2012 WL 1899838, at *3-4; *Nat'l Ass'n of Optometrists & Opticians v. Brown*, 709 F. Supp. 2d 968, 978 (E.D. Cal. 2010), *aff'd by* 682 F.3d 1144 (9th Cir. 2012); (deeming financial data not known to the public "proprietary"). Moreover, product line information such as that directly at issue here has been held to be sealed on similar grounds as well. *See Bean v. John Wiley & Sons., Inc.,* 2012 WL 1078662, at *6-7 (D. Ariz. Mar. 30, 2012) (sealing charts summarizing sales and revenue figures broken out by product, such as "precise revenue information results" and "exact sales and production numbers").

Moreover, disclosure of this would "do little to aid the public's understanding of the judicial process," *Network Appliance,* 2010 U.S. Dist. LEXIS 21721, at *13-14, because the issues do not turn on the model-by-model cost and product-line data at issue here. *See* D.I. 115, 221.

**C.    Apple Customer Base Research and Competitive Analyses**

Apple also seeks to seal its recent, proprietary Apple customer analyses such as its periodic

"iPhone Buyer Surveys," which compile and evaluate information provided by Apple iPhone buyers worldwide, as well as competitive analyses used to determine product positioning. Wheeler Decl. ¶¶ 14-18. Only Apple has such extensive access to its customer base, and its surveys provide detailed insight into the preferences of Apple customers, as opposed to the population at large. *Id.* This unique data is critical for developing, producing, and marketing products targeted to Apple's existing customers. *Id.* Apple uses this and third-party data to create competitive analyses detailing Apple's product positioning strategies. *Id.* All of these highly sensitive materials are kept confidential even within Apple, wherein only a restricted group of individuals receive such reports. *Id.* at ¶ 19.

If released, such information would unfairly benefit Apple's competitors by allowing them to identify and examine the key dynamics of Apple's core businesses, as well as discover how Apple endeavors to develop products that are well-received by consumers. ¶¶ 15-17. For example, these survey reports reflect Apple's plans for positioning its products in the marketplace as well as the product features upon which Apple focuses. *Id.* Public dissemination of the reports could in turn help Apple's competitors strategically position their own products to compete with the features that Apple customers find most desirable. *Id.* These documents also reveal long-term product projections, discussions of business strategy, and competitive analyses, all of which has been considered by courts to raise compelling reasons to seal. *Id.; see Krieger v. Atheros Communs., Inc.*, 2011 U.S. Dist. LEXIS 68033 (N.D. Cal. June 25, 2011) (compelling reasons to seal "discussions of business strategy, and competitive analyses"); *TriQuint,* 2011 U.S. Dist. LEXIS 143942, at *9-10.

The harm from full public disclosure of Apple's internal customer survey reports far outweighs any potential benefit that these documents may provide to the public in understanding the issues surrounding the preliminary injunction proceedings. To be sure, Apple relied upon specific data from these analyses to show the importance of the patented features at issue, and how Samsung's infringement relating to those features has a causal nexus with the irreparable harm suffered by Apple in the absence of an injunction. Wheeler Decl. ¶ 17, D.I. 10. However, the documents from which that data were taken contain a wealth of additional proprietary information (such as market data concerning iPhones in foreign countries) that bears little or no relevance to an injunction of Galaxy Nexus sales in the United States. Wheeler Decl. ¶¶ 15-17. Again, in consideration of the public's

right to access, Apple moves to seal only recent, full customer reports/analyses themselves, but *not* the specific data points discussed in the parties' briefing and declarations, nor will it seal pre-2011 market analyses (with the exception of any extensive third-party data utilized within). *Id.* ¶¶ 14-19.

### D.    Licensing Information

Apple moves to seal only full license agreements and the terms thereof, as well as the revenue derived from those agreements. As courts have recognized, the disclosure of this information would substantially harm Apple by providing its competitors "with competitively sensitive information to which they otherwise would not have access and also potentially reduce [Apple's] leverage in negotiations with component suppliers and other business partners." *Nygren v. Hewlett-Packard Co.*, 2010 U.S. Dist. LEXIS 59094 (N.D. Cal. May 25, 2010) (finding compelling reasons to seal settlement agreement that "reveals confidential, competitively sensitive financial matters"); *see also Powertech Tec., Inc., v. Tessera, Inc.*, No. C 11-6121 CW, 2012 U.S. Dist. LEXIS 75831, at *5 (N.D. Cal. May 31, 2012) (details of license agreement sealable); *Elec. Arts, Inc. v. U.S. Dist. Court for the N. Dist. of Cal.*, 298 Fed. Appx. 568 (9th Cir. 2008) (compelling reasons to seal License Agreement terms as "plainly fall[ing] within the definition of trade secrets"); *Watts v. Metro. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 107201 (S.D. Cal. 2010) (sealing contract between defendants and third-party vendor that competitors could use to determine defendants' internal decision-making processes).

Apple deliberately and carefully protects the confidentiality of its licensing arrangements, within and without Apple, for these very reasons. Wheeler Decl. ¶¶ 20-22. Apple is frequently engaged in licensing negotiations and lawsuits, and the public disclosure of its licenses, settlement agreements, and revenues would negatively impact its position in future negotiations. *Id.* At minimum, potential competitors or entities seeking to sue Apple would gain unfair bargaining power and insight into Apple's, and its licensing partners', cost/benefit and licensing strategies. *Id.* There are therefore compelling reasons to seal the licensing information at issue, particularly since the public will gain little insight into the preliminary injunction proceedings through their disclosure.

\* \* \*

Apple respectfully requests that the materials identified in Exhibit A, attached, be sealed under the "compelling reasons" standard.

1

2  Dated: July 25, 2012                                    GIBSON, DUNN & CRUTCHER LLP

3                                                          By:   /s/ *H. Mark Lyon*
4                                                                H. Mark Lyon
                                                                 ***Attorney for Apple Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil 5 Local Rule 5.4, and will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have consented to electronic service in accordance with Civil Local Rule 5.4 via the Court's ECF system.

Dated: July 25, 2012                                        /s/ *H. Mark Lyon*
                                                                          H. Mark Lyon

# EXHIBIT A

Apple hearby moves to seal the following documents:

- Exhibits 22, 28, 29, 53, 82, and 112 and Attachments B-L to the Declaration of Christopher Vellturo, Ph.D. In Support of Apple's Motion for Preliminary Injunction (of which the proposed redacted versions of Exhibit 29 may be filed in public form);

- Exhibits 1, 2, 3, 5 and 6 to the Declaration of Arthur Rangel In Support of Apple's Motion for Preliminary Injunction;

- The Declaration of Michael J. Wagner In Support of Samsung's Opposition to Apple's Motion for Preliminary Injunction (the "Wagner Declaration") and accompanying Exhibits B, L, R, S, PP, TT, UU, XX, YY, ZZ, AAA, BBB, DDD, GGG, HHH and III (of which the proposed redacted versions of the Wagner Declaration and Exhibits B, L, R, UU, XX, YY, ZZ, AAA, BBB and III may be filed in public form);

- Exhibits Q, R, S, T, V, W, Y, BB, and CC to the Declaration of Daniel C. Posner In Support of Samsung's Opposition to Apple's Motion for Preliminary Injunction (of which the proposed redacted versions of Exhibits BB, and CC may be filed in public form); and

- Exhibits 4, 22, 25, 26, 27, 29, 30 and 31 to the Reply Declaration of Christopher Vellturo, Ph.D. In Support of Apple's Reply In Support of Its Preliminary Injunction Motion (of which the proposed redacted version of Exhibits 4 and 29 may be filed in public form).