# EXHIBIT 1

1   JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
2   H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
4   Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
5   Facsimile: (650) 849-5333

6   MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
7   WILMER CUTLER PICKERING
HALE AND DORR LLP
8   950 Page Mill Road
Palo Alto, CA 94304
9   Telephone: (650) 858-6000
Facsimile: (650) 858-6100

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

10
*Attorneys for Plaintiff and Counterclaim Defendant Apple Inc.*

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14

15   APPLE INC., a California corporation,

16                          Plaintiff,

17          v.

18   SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation; SAMSUNG
19   ELECTRONICS AMERICA, INC., a New
York corporation; and SAMSUNG
20   TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,
21
                          Defendants.
22   SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation; SAMSUNG
23   ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
24   TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,
25
                 Counterclaim-Plaintiff,
26          v.

27   APPLE INC., a California corporation,

28                 Counterclaim-Defendant.

CASE NO.: 12-cv-00630-LHK (PSG)

**APPLE INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR A
PRELIMINARY INJUNCTION**

**Hearing:**
Date:  June 7, 2012
Time: 1:30 P.M.
Place:  Courtroom 8
Judge:  Hon. Lucy H. Koh

FILED UNDER SEAL

CONTAINS HIGHLY CONFIDENTIAL
INFORMATION PURSUANT TO
PROTECTIVE ORDER

1

**TABLE OF CONTENTS**

2

Page

PRELIMINARY STATEMENT..............................................................................................1

I.      APPLE WILL PREVAIL ON THE MERITS ...........................................................2

        A.      U.S. Patent No. 8,086,604 (Unified Search).................................................2

        B.      U.S. Patent No. 8,074,172 (Word Recommendations) ...................................3

        C.      U.S. Patent No. 8,046,721 (Slide-to-Unlock) ...............................................5

        D.      U.S. Patent No. 5,946,647 (Links for Structures) ........................................6

II.     APPLE WILL SUFFER IRREPARABLE HARM ....................................................8

        A.      The Galaxy Nexus Will Permanently Deprive Apple of Market Share........................9

        B.      The Galaxy Nexus Causes Incalculable Harm to Apple's Entire Business................11

        C.      The Patented Features Are Key to the Functioning and Success of the Galaxy
                Nexus .........................................................................................................12

III.    THE BALANCE OF HARDSHIPS FAVORS A PRELIMINARY INJUNCTION...............15

IV.     THE PUBLIC INTEREST SUPPORTS A PRELIMINARY INJUNCTION ........................15

CONCLUSION..............................................................................................................15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola Inc.*,
  Case No. 1:11-cv-08540, pending in the Northern District of Illinois ............................................. 7

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 2012-1105, slip op. (Fed. Cir. May 14, 2012) ............................................................9, 12, 13

*Bd. of Regents of Univ. of Tex. Sys. v. BENQ Am. Corp.*,
  533 F.3d 1362 (Fed. Cir. 2008) .......................................................................................................... 2

*Datamize LLC v. Plumtree Software Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005) .......................................................................................................... 6

*In re Beauregard*,
  53 F.3d 1583 (Fed. Cir. 1995) ............................................................................................................ 5

*In re Skvorecz*,
  580 F.3d 1262 (Fed. Cir. 2009) .......................................................................................................... 2

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005) ....................................................................................................... 4, 6

*Leader Techs., Inc. v. Facebook, Inc.*,
  770 F. Supp. 2d 686 (D. Del. 2011) .................................................................................................... 6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
  2011 WL 5601460 (Fed. Cir. Nov. 18, 2011) ..................................................................................... 9

*ResQNet.com v. Lansa, Inc.*,
  346 F.3d 1374 (Fed. Cir. 2003) .......................................................................................................... 2

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011) ............................................................................................... 9, 10, 11

*Yodlee, Inc. v. Cashedge, Inc.*,
  2006 WL 3456610 (N.D. Cal. Nov. 29, 2006) ................................................................................ 4, 6

1

## EXPLANATION OF CITATION FORMS

2

**Pleadings**

3
4

Citations to "Memo" are to Apple's Motion and Memorandum in Support of Apple's Motion for a Preliminary Injunction (D.I. 10), dated February 8, 2012.

5
6

Citations to "Opp." are to Samsung's Opposition to Apple's Motion for a Preliminary Injunction (D.I. 115), dated April 23, 2012.

7

**Declarations Submitted With Samsung's Opposition**

8
9

Citations to "Cohen Decl." are to the Declaration of Geoff Cohen, Ph.D. Concerning U.S. Patent 8,046,721 (D.I. 130), dated April 24, 2012.

10
11
12

Citations to "Wagner Decl." are to the Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction (D.I. 131), dated April 24, 2012.

13

**Declarations Submitted Herewith**

14
15

Citations to "Balakrishnan Rep. Decl." are to the Reply Expert Declaration of Dr. Ravin Balakrishnan Concerning U.S. Patent No. 8,046,721.

16
17

Citations to "Leslie Decl." are to the Declaration of Scott Leslie in Support of Apple's Reply Memorandum in Support of Motion for a Preliminary Injunction.

18
19

Citations to "Mowry Rep. Decl." are to the Reply Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647.

20
21

Citations to "Polish Rep. Decl." are to the Reply Expert Declaration of Dr. Nathaniel Polish Concerning U.S. Patent No. 8,086,604.

22
23

Citations to "Singh Rep. Decl." are to the Reply Expert Declaration of Dr. Karan Singh Regarding U.S. Patent No. 8,074,172.

24

Citations to "Vellturo Rep. Decl." are to the Reply Declaration of Christopher Vellturo, Ph.D.

25

**Other**

26
27

Citations to "Cohen Dep." are to the Deposition Transcript of Geoffrey A. Cohen, Ph.D., dated May 2, 2012, attached as Exhibit 10 to Mowry Rep. Decl.

28

1     Citations to "Kaliski Dep." are to the Deposition Transcript of Martin E. Kaliski, dated May

2  10, 2012, attached as Exhibit D to Singh Rep. Decl.

3     Citations to "P.I. Order" are to the Court's Order Denying Apple's Preliminary Injunction in

4  No. 5:11-CV-01846-LHK (D.I. 452), dated December 2, 2011.

5     Citations to "Slip Op." are to the Federal Circuit's decision in *Apple, Inc. v. Samsung Elecs.*

6  *Co., Ltd.*, No. 2012-1105, slip op. (Fed. Cir. May 14, 2012).

7     Citations to "Wagner Dep." are to the Deposition Transcript of Michael J. Wagner, dated May

8  4, 2012, attached as Exhibit 4 to Vellturo Rep. Decl.

9     Citations to "*###" are to the last digits of Bates numbers on pages that have been produced

10  in this matter.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

Despite submitting 15 declarations, Samsung is unable to refute that the Galaxy Nexus infringes the four Apple patents, and is intended to and will cause long-lasting, wide-ranging and incalculable harm to Apple.  Consistent with this Court's prior P.I. Order and the Federal Circuit's recent decision in the related case, preliminary relief is clearly warranted here.

Indeed, rather than seriously dispute that the Galaxy Nexus infringes, Samsung injects only confusion with arguments that are irreconcilable with the patents.  Samsung's invalidity arguments are worse, based almost entirely on prior art already rejected by the PTO.  The Nexus also undeniably causes irreparable harm as it takes market share and hurts Apple to an extent that cannot possibly be calculated.  In fact, Samsung's own documents confirm virtually *every* point in Apple's motion, though it does not cite a single one and repeatedly makes assertions directly contrary by them.

Samsung's opposition largely boils down to its claim (repeated over and over) that the Galaxy Nexus has not sold well, and thus the harm to Apple is not *severe enough* for preliminary relief.  Samsung's excuse is not only inconsistent with Federal Circuit law, it also is false:  the Galaxy Nexus is a core part of Samsung's "Actions to Beat Apple," and was the best-selling Android phone *by any manufacturer* on the nation's largest carrier, generating ███████████████████ in revenue – and sales far greater than Samsung represents in its brief – in just a few months.  Samsung also incorrectly claims that the patented features do not "cause" the irreparable harm.  The overwhelming evidence, which Samsung altogether avoids, establishes that the patented features, alone and taken together, are core to the functionality and sales of the Galaxy Nexus, and thus cause irreparable harm.

In the end, Samsung's opposition demonstrates why preliminary relief is crucial.  In quick succession, Samsung launches one copycat, infringing product after another in a relentless campaign to "BEAT APPLE."  Samsung now urges this Court to excuse its latest infringement, and the irreparable harm it causes, because the Galaxy Nexus is just one of many products, and the patented features are just four of many features.  Samsung should not be rewarded just because its infringement is so widespread; nor should its infringement be allowed to continue while it captures critical market share – the value of which far exceeds the damages it ultimately will pay.  Samsung's infringement should be stopped now.

# I.    APPLE WILL PREVAIL ON THE MERITS

Samsung's opposition confirms that Apple will, and at the very least is likely to, prevail.

## A.  U.S. Patent No. 8,086,604 (Unified Search)

***The Galaxy Nexus Infringes the '604 Patent.***  The '604 patent allows a user to search multiple sources of information both on the device (such as contacts) and off the device (such as the Internet), all with a single interface.  The Galaxy Nexus includes the "Android Quick Search Box" ("QSB"), the announcement of which reads like a summary of the '604 patent:

> Rather than giving you one search box for the web and another for your phone, QSB provides one single search box to let you search content on your phone, including apps, contacts, and browser history, as well as content from the web, like personalized search suggestions, local business listings, stock quotes, weather, and flight status, all without opening the browser.  [Polish Rep. Decl. Exh 1.]

Samsung's sole non-infringement argument is based *entirely* on an application of the claims that is contrary to well-established patent law principles.  Claim 6 requires "a plurality" (*i.e.*, at least two) "heuristic modules" "*each*" of which "employs a different, predetermined heuristic algorithm." Samsung admits that the QSB has at least two modules that use different search algorithms (*e.g.*, the Google Search module that searches the Internet and the People module that searches contacts).  But, Samsung asserts that it is not enough that a plurality of modules (two or more) *each* employs a different algorithm; according to Samsung, *every* module in the device must employ a different algorithm.  The claims require no such thing; they require only that each of at least two modules (*i.e.*, a plurality) employs a different algorithm, regardless of what additional ones do.  The Federal Circuit addressed this issue in *ResQNet.com v. Lansa, Inc.*, 346 F.3d 1374, 1382 (Fed. Cir. 2003), and found infringement despite additional components because "'each of a plurality of fields' means 'each of at least two fields'" *not* every field.  *ResQNet*, not cited by Samsung, precludes its argument.[1]

The accused modules also are "heuristic," and in fact map almost exactly to the examples in the patent.  Polish Rep. Decl. ¶¶ 14-23, 30-40.  Samsung does not contend otherwise in its brief, but claims that Apple's expert did not construe "heuristic modules."  That is not true, and in any event Samsung's expert concedes that the algorithms used are heuristic.  *Id.* ¶¶ 41-56.

---

[1]  In *Bd. of Regents. v. BENQ Am. Corp.*, 533 F.3d 1362, 1367 (Fed. Cir. 2008) and *In re Skvorecz*, 580 F.3d 1262, 1268 (Fed. Cir. 2009), cited by Samsung, the prosecutions required narrow construction of "each."

***The '604 Patent Is Valid.***   For claim 6, Samsung relies on the WAIS system and Legall patent.  Samsung's expert admits that none of the WAIS references are anticipatory, and has no evidence that the system was ever in public use.  *Id.* ¶¶ 26, 60-75.  WAIS also does not include the required heuristic modules that employ different algorithms.  *Id.*  Indeed, Samsung's expert does not identify *any* modules and instead identifies differences regarding how to configure the WAIS index, *not* differences in how that index is searched (equivalent to differences in writing the Yellow Pages, not how to look something up).  *Id.*  Legall also only discloses one component that is used for searching and, therefore, also does not disclose "a plurality of heuristic modules." *Id.* ¶¶ 27, 76-83.  Even if Legall disclosed a plurality of modules, Samsung's expert admitted that it did not necessarily disclose that they each employ heuristic algorithms.  *Id.*

Samsung does not even allege that WAIS or Legall anticipates claim 19, but contends that the additional "incremental search" was known and would have been obvious to use with WAIS or Legall.  Neither Samsung nor its expert explains why one would combine that feature with WAIS or Legall, and Dr. Polish explains why no one would have.  *Id.* ¶¶ 29, 95-104.

**B.  U.S. Patent No. 8,074,172 (Word Recommendations)**

***The Galaxy Nexus Infringes the '172 Patent.***   The '172 patent describes "a graphical user interface" for correcting errors as they are typed.  A user enters a "current character string" displayed in a "first area," while in a separate "second area" that character string and "a suggested replacement character string" are displayed.  The user has the option to "replace" the "current character string" with the "suggested replacement character string," or to keep it.  The patent focuses on what the user sees and does (*i.e.*, to keep or replace the current string with a suggested replacement string).

Samsung does not even dispute that the Galaxy Nexus infringes claim 27.  Instead, Samsung states only that Apple's expert did not "look at the instructions."  Opp. at 21.  Looking at instructions is unnecessary when screenshots clearly show the functionality, and Samsung does not deny that the Galaxy Nexus has it.  Singh Rep. Decl. ¶¶ 20, 28-30.

Samsung also does not dispute that the Galaxy Nexus provides the user interface exactly as described in claims 18 and 19.  Samsung's expert admitted that Samsung has no non-infringement position when the claims are viewed from the user experience.  Kaliski Dep. at 99:17-24.  Instead,

Samsung argues *only* that the Galaxy Nexus never actually "keeps" the user-input character string, even when the user chooses to keep it and the device shows that it has been kept, because *at the source code level* the data underlying the user-input character string (*i.e.*, the "1's and 0's" representing the text) is actually replaced with identical data.  Opp. at 21.  There is absolutely no support in the specification or claims for Samsung's reading of the claims, which looks at the source code implementation rather than the user interface and interaction, as claimed and described throughout the patent.  Indeed, the figures clearly show that the patent is focused on the user interface and how the user interacts with the device.

      *The '172 Patent Is Valid.*  Samsung also does not raise any serious validity issue, and instead relies almost entirely upon prior art rejected by the PTO.  Samsung relies on Longe and Robinson (which have the same disclosure in relevant respects), even though the PTO allowed all the claims over the disclosure.  The references do not disclose the display of a current character string input by the user in two locations: a "first area" and a separate "second area," as required by claims 18 and 19.  Singh Rep. Decl. ¶¶ 22-23, 42-56.  Nor do they disclose replacing the current character string with a suggested replacement in the manner required by claims 18, 19, and 27; in fact, Longe and Robinson teach a markedly different system and thus teach away from the asserted claims.  *Id.*

      Samsung also admits that the undated, unauthenticated TextPlus for the Palm OS Version 5.5 Users Guide ("TextPlus User Guide") does not anticipate claims 18 and 19.  Nor can it anticipate claim 27 because it does not show appending a punctuation mark after the selected word.  Singh Rep. Decl. ¶¶ 24, 58.  Samsung claims that earlier versions of TextPlus disclosed the elements missing in the TextPlus User Guide (Opp. at 18), but those elements were abandoned in favor of the more limited graphical user interface that displays a current character string in only one area, not in both a first and second area, and thus confirms that TextPlus, on which Samsung relies, is different from the asserted claims.  *Id.* ¶¶ 59-65.  The King patent also teaches away from the '172 patent.  *Id.* ¶¶ 66-68.

      Samsung also once again lobs out meritless indefiniteness arguments.  Samsung asserts that 18 and 27 are hybrid apparatus/method claims that violate *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005), even though these claims merely recite how the device responds to inputs from a user, not any user action or method steps.  *See Yodlee v. Cashedge*, 2006 WL

1    3456610 at, *10 (N.D. Cal. 2006).  Samsung also asserts that claims 19 and 27 are indefinite means

2    claims, even though they do not have any language to make them so, and in fact are ordinary

3    computer-readable media claims.  *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995).

4        **C.  U.S. Patent No. 8,046,721 (Slide-to-Unlock)**

5        ***The Galaxy Nexus Infringes the '721 Patent.***  Samsung admits that the Galaxy Nexus has a

6    slide-to-unlock feature.  Indeed, the Galaxy Nexus user guide explicitly describes this slide-to-unlock

7    feature, which clearly infringes the '721 patent.

8        Samsung argues that there is "no single unlock image" because the image that will be slid to

9    unlock (a circle) is not the same image that is "initially displayed on the screen" (a padlock and

10   circle) before the user touches the device.  Opp. at 19.  But, there is no requirement that the unlock

11   image be the same as an image on the device before contact, and Samsung concedes that when a user

12   taps a predefined location, an unlock image is shown (the circle image that appears at the point of

13   user contact) which then moves with user contact in the same way as the '721 patent.  Opp. at 8.

14   That is all the claims require.  Moreover, even if the image originally displayed on the device (the

15   circled padlock) had to be the unlock image, the Galaxy Nexus still infringes even though that image

16   is modified because the patent itself explicitly discloses that the unlock image need not be a static,

17   unchanging image, but rather may change in form.  Balakrishnan Rep. Decl. ¶¶ 13, 46.

18       Samsung also argues that although there is continuous movement of the unlock image until it

19   reaches a predefined region (which the claims require), the Galaxy Nexus does not infringe because

20   there is not continuous movement *after* it reaches that region (which is *not* required).  Opp. at 16;

21   Cohen Decl. ¶ 94.  Samsung contends that the unlock "image will follow the user's finger only to a

22   point, but then jump to the unlock region."  Opp. at 16.  That is incorrect; the image "jumps" only

23   *after* it reaches the unlock region.  When the image *reaches* that region, the device is unlocked and

24   the claim satisfied, regardless of any *later* movement.  Balakrishnan Rep. Decl. ¶¶ 15-16, 54-55.

25       ***The '721 Patent Is Valid.***  Samsung relies *solely* on prior art the PTO already considered.

26   Samsung's primary reference is the Plaisant paper.[2]  Opp. at 13-14.  Incredibly, Samsung represents

27

28
_____

[2] Samsung claims that a related video was not before the PTO, but the paper makes clear, *in the very first sentence*, that the video is commensurate with the paper.  Balakrishnan Rep. Decl. n.4.

Gibson, Dunn &
Crutcher LLP

to this Court that "Plaisant anticipates every element of the asserted claims of the '721 patent," even though it clearly does *not* disclose numerous elements, including: (1) a touchscreen on a "hand-held electronic device," (2) an image to "unlock" (as opposed to turn on/off), and (3) unlocking "*the* hand-held electronic device" (as opposed to a remote device).  Balakrishnan Rep. Decl. ¶¶ 18-21, 70-83.  In fact, contrary to Samsung's brief, neither Samsung's expert nor Plaisant herself (who submitted a declaration) claimed that the Plaisant prior art discloses all claim elements.  That is because Plaisant actually discloses a *massive* built-in computer screen used to *turn on/off other* devices.  *Id.*

Next, Samsung relies on the Neonode N1 Guide, but that also was cited during prosecution and is missing numerous limitations.  Samsung does not even allege that it anticipates any claim, and in fact admits that it does not disclose at least "moving the unlock image in accordance with user input."  Opp. at 14.  To fill the void, Samsung asserts as "prior art" material from *after* the '721 patent's *2005* priority date, including a *2006* review of the Neonode N1, a *2007* YouTube video of the device, and two *undated, unauthenticated* videos evidently created by Samsung's counsel.  Cohen Decl. ¶ 138.  Even these materials omit key limitations.  Balakrishnan Rep. Decl., ¶¶ 25, 102-104.

Unable to raise a serious prior art issue, Samsung asserts that the claims are indefinite.  First, Samsung claims that the term "unlock" is unclear.  There is nothing unclear about this common term.[3]  In fact, although it fails to inform the Court, Samsung uses the exact same term in its own description of the Galaxy Nexus's infringing slide-to-unlock function in the Galaxy Nexus user's guide.  Balakrishnan Rep. Decl., ¶¶ 32, 121.  Samsung also contends that claims 12 and 15 are indefinite because "they combine both apparatus and method limitations."  Opp. at 15 (citing *IPXL*, 430 F.3d 1377, 1384).  But, "[t]he *IPXL* rule does not apply 'where the claims require capability, but not actual use,'" such as the claims at issue here.  *Yodlee*, 2006 WL 3456610 at *10.[4]

### D.  U.S. Patent No. 5,946,647 (Links for Structures)

The '647 patent claims detecting structures (such as phone numbers) and performing actions on the detected structures (such as dialing the number).  The Galaxy Nexus incorporates this

---

[3]  *Datamize LLC v. Plumtree Software Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite.").

[4]  Claims virtually identical to those at issue here have consistently been found valid.  *See, e.g.*, *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 710 (D. Del. 2011).

1   functionality.  In fact, the ITC recently found the asserted '647 patent claims valid and infringed by

2   an HTC phone identical in relevant respects to the Galaxy Nexus.  Samsung now argues that the ITC

3   was wrong and that no infringement exists under claim constructions Judge Posner recently issued in

4   a case involving Motorola.[5]  Samsung's arguments here are not only inconsistent with the ITC's

5   ruling, they were rejected by Judge Posner in a summary judgment ruling.  Similarly, the prior art

6   Samsung cites has been rejected multiple times by both the PTO and the ITC.

7       ***The Galaxy Nexus Infringes the '647 Patent.***  Claim 1 requires an "analyzer server" for

8   detecting structures (*e.g.*, a phone number), and for "linking actions to detected structures" (*e.g.*,

9   calling the number).  Samsung erroneously argues that because an "analyzer server" is "*a* program

10  subroutine" (under the ITC construction) or "*a* server routine" (under the Illinois construction), the

11  Galaxy Nexus has no "analyzer server" because there is no "*single* program subroutine" that

12  performs the claimed functions.  Opp. at 8 (emphases added).  But, neither the ITC nor Judge Posner

13  required the "analyzer server" to be a *single* subroutine under Samsung's narrow interpretation.  To

14  the contrary, the ITC found essentially identical Android code constituted "a program subroutine"

15  that infringed claim 1.  Mowry Rep. Decl. ¶ 9.  And, Judge Posner found that "the inventor had a

16  broad[] conception of the term 'routine'" as simply "a piece of programming necessary to perform a

17  specific function."  *Id.*, Ex. 2 at 10.  Thus, the Galaxy Nexus infringes under either construction.

18      Samsung distorts Judge Posner's construction in other ways that the court already rejected.

19  Because Judge Posner construed "analyzer server" to be "a server routine separate from a client that

20  receives data having structures from the client," Samsung asserts that the accused "analyzer server"

21  code must be completely "separate" from other components in the system.  Such a requirement would

22  make no sense because such a system could not function.  *Id.*, ¶¶ 13-15, 66-69.  In fact, Judge Posner

23  denied Motorola's summary judgment motion based on this argument, stating that "some of the

24  [analyzer server] code responsible for each task is intertwined with the client applications," while

25  "much [of the code] appears separate from and reused across the client applications."  *Id.*, Ex. 3 at 5.

26

27

---

28  [5]  *Apple Inc. v. Motorola Inc.*, Case No. 1:11-cv-08540, pending in the Northern District of Illinois.
The same law firm representing Samsung here represents HTC and Motorola in those cases.

1    Samsung finally argues that the Galaxy Nexus does not "link" or "create a specified

2  connection between" actions and detected structures "because the Browser does not create *pointers* to

3  any particular actions when it detects a structure."  Opp. at 8.  Samsung's own expert testified that

4  "creating a specified connection" does not require pointers.  Cohen Dep. at 140:17-142:9.  But even if

5  it did, the Nexus *does* use pointers to link actions to detected structures.  Mowry Rep. Decl. ¶ 88.

6  The required linking also is apparent from the use of the device.  Once a user selects a structure, the

7  device offers specified "actions" it then performs.  Judge Posner denied a non-infringement summary

8  judgment motion based on this argument as well (again not mentioned by Samsung).  *Id.* Ex. 3 at 5.

9    ***The '647 Patent Is Valid.***  Samsung relies largely on the same prior art raised in prosecution,

10  reexamination and litigation.  Nevertheless, Samsung argues that the repeated validity findings

11  should be ignored because Apple supposedly stipulated to a "broad" construction in the ITC, but

12  urged a "narrow" one in reexamination.  Opp. at 6.  That is false, and Samsung offers *no* explanation

13  as to how Apple's positions are inconsistent, or how the ITC construction differs from that in

14  reexamination.  Samsung also ignores the reexamination examiner's statement that he applied the

15  broadest reasonable interpretation to "analyzer server."  Mowry Rep. Decl., Ex. 6 at 2.  In fact,

16  Samsung's expert admitted that the PTO's understanding of "analyzer server" was *broader* than his

17  own narrow construction.  Cohen Dep. at 236:4 – 237:19.  Thus, even if Samsung could explain how

18  one construction was "broader" or "narrower," it ignores that the claims were deemed valid with the

19  *broadest* scope, and with a scope *broader* than even its own expert applies.[6]

20  **II.    APPLE WILL SUFFER IRREPARABLE HARM**

21    Samsung never denies what Apple demonstrated, and this Court already found:  Samsung's

22  smartphones take market share from Apple, and "potential customers that Apple loses to Samsung

23  may have long-term effects that are difficult to calculate and may not be recaptured."  P.I. Order at

24  32.  In fact, the two declarations actually from Samsung employees do not dispute *anything* in

25

26  ─────────────────────
[6]  Samsung relies on previously considered prior art.  Despite Samsung's claim, the Newton system
27  was asserted in the ITC, but dropped before trial presumably because it is missing numerous
   elements.  Mowry Rep. Decl. ¶¶ 22-23, 146-166.  Likewise, the ITC found that the Pandit patent did
28  not disclose the elements of claims 1 and 8, and both the ITC and the PTO agreed it is not even prior
   art because Apple conceived of the '647 patent before Pandit's priority date.  *Id.* ¶¶ 25-26, 201-221.
   The Sidekick reference also is cumulative of art rejected by the ITC and PTO.  *Id.* ¶¶ 28-29, 118-145.

Apple's motion; neither denies that the Galaxy Nexus takes market share from Apple or that the four patented features enable it to do so.  The *only* "evidence" Samsung submits is an expert declaration of Mr. Wagner, which is belied on nearly every point by Samsung's documents and his own testimony.[7]

### A.   The Galaxy Nexus Will Permanently Deprive Apple of Market Share

Long-term loss of market share constitutes irreparable harm as a matter of law.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 2011 WL 5601460, at *8-9 (Fed. Cir. Nov. 18, 2011).[8]  As Apple established, sales of the Galaxy Nexus *will* result in a substantial long-term loss of iPhone market share, which this Court found would be both "difficult to calculate and may not be recaptured," and thus "could support a finding of irreparable harm."  P.I. Order at 32-33.

This is especially so considering the "absence of other competitors in the relevant market," Slip Op. at 25, as the smartphone market has become, as Samsung's expert's acknowledged, a "two-horse race" between Apple and Samsung.  Wagner Dep. at 16:6-16; Vellturo Rep. Decl. ¶ 54.[9]  The Federal Circuit has held that the "existence of a two-player market may well serve as a substantial ground for *granting* an injunction" because "it creates an inference that an infringing sale amounts to a lost sale for the patentee."  *Bosch,* 659 F.3d at 1151 (emphasis in original); Slip Op. at 25.

Unable to refute that the Galaxy Nexus does – and, in fact, is explicitly intended to – take substantial market share from Apple, Samsung claims that "even if Apple did sell fewer phones, that evidence alone would be insufficient to prove irreparable harm."  Opp. at 24.  Apple is not relying on lost sales *alone*.  Rather, given the critical juncture in which first-time buyers are moving to smartphones as well as platform stickiness – both of which this Court addressed and Samsung's expert and documents acknowledge – Apple will lose significant long-term market share, which *does* prove irreparable harm.  *See Bosch*, 659 F.3d at 1151; *O2 Micro*, 2011 WL 5601460, at *8-9.

---

[7]  Apple respectfully refers the Court to the Reply Declaration of Apple's expert, Dr. Vellturo, for a more thorough discussion of irreparable harm, and the extent to which the positions in Samsung's brief and expert declaration are irreconcilable with Samsung's own documents.

[8]  Although *Bosch* and *O2 Micro* are recent and relevant Federal Circuit cases addressed by Apple (and this Court as to *Bosch*), Samsung cites neither, and makes arguments inconsistent with both.

[9]  The "two horse" nature of the market also belies Samsung's speculation that "likely, other sellers of Android-based phones lost sales to the Galaxy Nexus," (Opp. at 24), and explains why Samsung targets Apple, not Android manufacturers, in its advertising.

Indeed, in addition to the vast evidence Apple has submitted, Samsung's expert and documents confirm that the Galaxy Nexus is designed to and will take long-term market share from Apple. Samsung has actually concluded that its "future success is dependent on blunting Apple." Vellturo Rep. Decl. ¶ 56, Ex. 35 at *690. Moreover, in connection with the release of the Galaxy Nexus, Samsung prepared detailed strategy presentations, including one to its CEO, featuring the Galaxy Nexus in a plan of "Actions to Beat Apple"; in another, the Galaxy Nexus (aka "Nexus Prime") is one of three "best-in-class products" to "Beat Apple." *Id.* ¶ 60, Ex. 35 at *798, Ex. 50 at *432. Samsung's expert also testified that the Galaxy Nexus was part of Samsung's "goal" to take market share, and that it has taken sales from Apple. Wagner Dep. at 9:24-10:1, 46:19-47:3.

Samsung's documents also confirm this Court's conclusion that platform loyalty and stickiness "make[] the initial decision regarding which product to purchase even more important." P.I. Order at 32. Samsung dismisses this Court's conclusions and Apple's evidence, but its own documents recognize that "Android & Apple ecosystems are 'sticky' (high repeat purchases)," and that "Apple loyalty is strong, which provides challenges to get iPhone users to switch." Vellturo Rep. Decl. ¶¶ 19-30, Ex. 37 at *358, *373. As a result ███████████████████████████ ███████████████████████████," because "capturing first time smartphone buyers is critical to success," as "[c]onsumers are loyal to an ecosystem once they enter." *Id.*, Ex. 40 at *7000, Ex. 37 at *372. Samsung's "2012 winning strategy" ███████████████████████ ████████████████████." *Id.* ¶ 59, Ex. 56 at *374, *402. Samsung's expert also contradicted its claim that first-time buyers are unlikely to buy premium phones like the iPhone 4S or the Galaxy Nexus. Wagner Dep. at 46:19-48:1. Finally, Samsung's expert also testified that some Galaxy Nexus users will "never" be iPhone users. *Id.* at 96:23-97:11.

Despite all this evidence, Samsung contends that the extent of Apple's lost market share is "speculative" because it has not been quantified with precision by "projections" or other "data." Opp. at 23. Such precision is neither possible nor required. The incalculability of future lost market share is the very basis for *granting* an injunction, not denying one. *Bosch*, 659 F.3d at 1154. Samsung's documents confirm that there is nothing speculative about *whether* the Galaxy Nexus will take substantial long-term market share, even if the magnitude of that loss cannot be calculated.

1    Samsung also repeatedly claims that sales of the Galaxy Nexus have not been enough to cause

2    irreparable harm.  Samsung's portrayal of its product's performance is seriously misleading.  The

3    Galaxy Nexus is Samsung's flagship phone on Verizon and Sprint, and has been the first or second

4    best-selling Android phone *by any manufacturer* on Verizon (the largest carrier) since its release.

5    Wagner Decl., Exs. M-N.  When launched on Sprint, pre-orders sold out in four days.  Velltuno Rep.

6    Decl. ¶ 60.  Samsung has sold over half a million Galaxy Nexus phones – *many more than Samsung*

7    *claims in its brief* – and in just the last few months, Samsung has generated ████████████████

8    ████████  in revenue from the Galaxy Nexus *alone*.  *Id*. ¶ 65.  With sales of the device, Samsung just

9    had an exceptional first quarter 2012, *surpassing* Apple in worldwide smartphone sales.  *Id*. ¶ 47.

10   Samsung mentions *none* of these facts, which directly contradict the central premise of its opposition.

11   Samsung also incorrectly contends that the Galaxy Nexus must not take all that much market

12   share from Apple because the iPhone is still successful.  Apple's success does not give Samsung

13   license to infringe and seize market share with impunity.  Moreover, whatever Apple's market share

14   is, it would be higher, and grow more quickly, had Samsung not been selling infringing competing

15   devices, all the while targeting the iPhone in advertising for its products.  Samsung's expert

16   acknowledged this unassailable point.  Wagner Dep. at 18:10-13.  Samsung's documents do, too; its

17   strategic planning shows that it strives to "slow the rapidly growing install base" of Apple, even if it

18   cannot reverse it.  Vellturo Rep. Decl., Ex. 51 at *334.  And, Samsung's strategy has worked.  While

19   Apple's shipments less than doubled over the last year, Samsung's nearly *quadrupled*.  *Id*. Ex.19.

20   **B.  The Galaxy Nexus Causes Incalculable Harm to Apple's Entire Business**

21   Apple also established in painstaking detail that harm from the Galaxy Nexus will radiate out

22   to impact many aspects of Apple's business, long into the future.  Memo at 20-25.  As this Court

23   found, and Apple demonstrated, loss of iPhone sales leads to lost "sales of tag-along products like

24   apps, other Apple devices such as desktops, laptops, and iPods, and future models of Apple

25   smartphones."  P.I. Order at 32; Vellturo Rep. Decl. ¶¶ 123-127.  The Federal Circuit has held that

26   even harm to "only a portion of a patentee's business" may be irreparable because that "says nothing

27   about whether that harm can be rectified."  *Bosch*, 659 F.3d at 1152.  Here, most of Apple's business

28   is affected as Galaxy Nexus users will be far less likely to buy not only iPhones, but also iPad, iPod

Touch, iMac, and Macbook products, and will not download content (*e.g.*, apps and music) to Apple devices because they use (and will continue to use) Android devices instead.  Vellturo Rep. Decl. ¶¶ 123-127.  These wide-ranging harms and lost "future downstream purchases" cannot be calculated and "would be difficult to recover," and thus constitute irreparable harm.  P.I. Order at 32.

Samsung does not even attempt to refute the myriad harms Apple will suffer beyond initial lost iPhone sales.  Samsung's *only* response is to assert that the *extent* of these harms is "speculative" and "belied by Apple's continued actual success across all its product lines."  Opp. at 25-26.  There is nothing speculative about *whether* Apple will lose downstream sales by virtue of lost iPhone sales. And, the harm to Apple is irreparable precisely *because* the full extent cannot be calculated.

Moreover, just because Apple products manage to succeed despite Samsung's infringement does not negate the long-lasting harm to Apple.  However many other products Apple sells, it sells fewer by virtue of the Galaxy Nexus and the stickiness to Android that results.  That is, in fact, Samsung's strategy, as its documents clearly and repeatedly show.  Samsung strategy presentations graphically show how iPhone sales drive a continuous cycle of other sales of Apple products. Vellturo Reply Decl. ¶¶ 21, 125, Ex. 51 at *324.  While Apple will undeniably suffer harm beyond lost iPhone sales, the full extent of that harm cannot be calculated, and is thus irreparable.

**C.  The Patented Features Are Key to the Functioning and Success of the Galaxy Nexus**

The patented features are core to the functionality and sales of the Galaxy Nexus, and thus cause the irreparable harm.  Slip. Op. at 24.  Samsung does not really challenge Apple's detailed showing that the four patents alone, and certainly all taken together, cover key technology.  Samsung does not even address three of the four patents, and distorts the scope of importance of the fourth.

Rather than confront Apple's substantial evidence, Samsung asserts only that Apple does not have survey evidence that consumers bought the Galaxy Nexus *specifically* because of the four patented features.  Opp. at 27-28.  The Federal Circuit rejected Samsung's singular focus on survey evidence, stating: "we do not hold that customer survey evidence or other proof of . . . 'consumer motivation' is a prerequisite to a finding of irreparable harm."  Slip. Op. at 18 n.3.

To the contrary, irreparable harm requires "a nexus between infringement of the patent and some market-based injury, be it as a result of consumer preference or some other kind of causal link."

1    Slip. Op. at 24.  That nexus may be established, and irreparable harm established, by showing that the

2    patented features lead to demand and sales of the Galaxy Nexus, or that there would be fewer sales

3    "if the offending feature[s] were absent."  *Id*. at 17.  In its prior P.I. Order, this Court similarly held

4    that the nexus may be satisfied if the features are "necessary to, or a core functionality of, the

5    products," or consumers' "purchasing decisions are based on the[ir] existence."  P.I. Order at 63-64.

6           Samsung does not even allege that the four patented features at issue here are not necessary

7    and core functionalities of the Galaxy Nexus, because they so clearly are.  The overwhelming

8    evidence also establishes – objectively and conclusively – that Apple is losing sales because the

9    patented features drive demand for, and sales of, the Galaxy Nexus and that their absence would

10   reduce such sales and demand substantially.

11          ***The '604 Patent (Siri and Unified Search).***  The unified search capability of the '604 patent

12   allows one to search across multiple different data sources (*e.g.*, the Internet, contacts, applications)

13   all at once, with just one search.  This feature is part of Siri on the iPhone 4S and the quick search

14   box ("QSB") on the Galaxy Nexus, and it is core to the functionality and sales of both products.

15          Samsung does not dispute that Siri is a critical feature, and that consumers flocked to buy the

16   iPhone 4S because of it.  Samsung argues only that because Siri also has speech recognition, the

17   search component must not be important.  That argument is illogical and inconsistent with the

18   evidence.  Siri is core to the functioning and sales of the iPhone not just because it hears requests, but

19   because it *delivers search results*.  Vellturo Rep. Decl. ¶¶ 96, 102.  Siri would not be Siri and would

20   be considerably less valuable if it did not provide the robust searching it does.  A *Forbes* article noted

21   that while Siri may be "the best voice recognition application in history," "its potential really lies in

22   its ability to revolutionize the way we search."  *Id*. ¶ 103, Ex. 15 at *197.  Consumer studies (about

23   which Apple testified but Samsung does not mention) also rank the search capability of Siri as one of

24   its foremost functionalities—only 3% less than making a call.  *Id*. ¶ 101, Ex. 30 at *092.[10]

25          The unified search feature also is critical to, and drives sales of, the Galaxy Nexus.  The

26   Android developer's guide (not cited by Samsung) stresses that "search is a core user feature on

27   

_____

[10]     Samsung contends that Apple has not shown that the patented feature is important because it did
28   not show that customers considered the "heuristic search algorithms" of the '604 patent when buying
     devices.  Opp. at 28.  Neither the Federal Circuit nor this Court requires such a showing.

Gibson, Dunn &
Crutcher LLP

1  Android." *Id.* ¶ 104, Ex. 6 at 1.  And not just any search, but a search feature, like the '604 patent,

2  that lets users "search any data that is available to them, whether the content is located on the device

3  or the Internet." *Id.*  Third parties agree that the QSB "adds a whole new layer of functionality" that

4  helps Android phones "win new customers, even ones with iPhones." *Id.* ¶ 104, Ex. 10 at 2.

5        ***The '172 Patent (Auto Correction).***  The auto-correct feature is essential for the iPhone and

6  Galaxy Nexus (and others smartphones with touchscreens).  The feature corrects errors and suggests

7  alternate words as a user types.  Without it, touchscreen keyboards, which are more prone to error

8  than tactile ones, would be difficult and intimidating, particularly to the all-important first-time users,

9  who are unfamiliar with, and may be reluctant to use, touchscreens. *Id.* ¶¶ 83-87.  This feature was

10  critical in overcoming skepticism when Apple introduced the iPhone. *Id.*  One leading commentator,

11  for the *Wall Street Journal*, initially said that Apple's touchscreen would be difficult to use and a

12  mistake; but after two weeks changed his mind and "called out the fact" that "having auto correction

13  made it as good or better than any keyboard he had ever used." *Id.* ¶ 87 Another commentator, for the

14  *New York Times*, similarly noted that it was auto correct, "some very smart software," that made the

15  touch-screen useable. *Id.* ¶ 86. Google also recognizes the importance of this feature, and has noted

16  that some customers "find the on-screen keyboard unusable without auto-correct."  Leslie Decl. Ex. 1

17  at 5.  Accordingly, this feature is necessary for sales of the Galaxy Nexus.  Vellturo Rep. Decl. ¶ 88.

18        ***The '721 Patent (Slide-to-Unlock).***  Slide-to-unlock is an iconic feature of the iPhone,

19  appearing in nearly every advertisement for the iPhone from the start (*Id.* ¶ 74), and also is a core

20  feature of the Galaxy Nexus (and not only because it lets Samsung copy the iPhone experience).  It

21  provides a way for users to unlock their phones with a precise motion that minimizes accidental

22  activations (*e.g.*, from a pocket).  Unlike prior methods, it also is intuitive and easy to use.

23  Samsung's documents reflect the value of this feature and dissatisfaction with other methods.  One

24  unlock alternative incorporated in the Galaxy Nexus ("face unlock") was called a "poor gimmick,"

25  and "not an improvement over existing unlock methods" such as slide-to-unlock and thus "hurts the

26  phone more than it helps." *Id.* ¶ 80, Ex. 49 at *973.  Samsung surveys report that another unlock

27  alternative ("long-pressing" an unlock button) was "[a]n unfavorable aspect of the user experience"

28  and an "important" target for fixing, and that when Samsung tried to fix it, it encountered accidental

1   activations that slide-to-unlock avoids; ultimately, Samsung gave up, and recommended "an on-

2   screen, gesture-based unlock" for its phones.  *Id.* ¶ 79, Ex. 33 at *472; Ex. 42 at *603.

3         ***The '647 Patent (Links for Structures).***  Providing links for structures is an important aspect

4   of the user experience, and is core to both the iPhone and the Galaxy Nexus.  *Id.* ¶¶ 90-95.  It

5   recognizes data on the screen (*e.g.*, a number in an email or web page) as something a user might

6   wish to interact with, and allows the user to take an action on that data (*e.g.*, dialing or storing the

7   number) simply by touching it.  A phone without this feature would be far more cumbersome, and

8   less appealing to consumers.  The absence of this feature would fundamentally change the easy and

9   intuitive way users interact with their devices, and diminish sales.  *Id.*  The feature was, in fact, a

10  principal focus of Apple's original promotion of the iPhone.  Samsung's documents also recognize

11  that this is an important feature; in one study comparing side-by-side features of the iPhone to

12  Samsung's Galaxy S1 (precursor to the Galaxy Nexus), Samsung states that "Improvement

13  Directions" are to "improve usability by providing Links for Web, Call, E-mail for memo contents

14  that can be linked," *i.e.*, the links to structure used in the iPhone.  *Id.* ¶ 94, Ex. 32 at *915.[11]

15  **III.    THE BALANCE OF HARDSHIPS FAVORS A PRELIMINARY INJUNCTION**

16        Although Samsung includes a section in its brief purporting to address the balance of the

17  hardships (Opp. at 31-32), it never even mentions any hardship it would suffer, let alone how such

18  unidentified hardship could possibly outweigh the wide-ranging irreparable harm to Apple.

19  **IV.    THE PUBLIC INTEREST SUPPORTS A PRELIMINARY INJUNCTION**

20        Samsung's entire discussion of public interest is its claim that the public has an interest in

21  promoting competition.  Opp. at 32-33.  There is, of course, no public interest served by

22  "competition" based on Samsung's serial, willful and wide-spread patent infringement.

23                        **CONCLUSION**

24        Apple respectfully requests that this Court grant Apple's motion for a preliminary injunction.

25

26  ————————————

27  [11] Samsung wrongly suggests that Apple delayed in seeking preliminary relief even though Apple
filed this motion the day it filed the complaint and within weeks of the Galaxy Nexus's launch.
Samsung's reliance on Apple's limited licenses is also misplaced and inappropriate, as explained

28  previously.  Memo at 5-6, n.9-10.  Samsung raises a 1997 Microsoft license (only to the '647 patent),
but that was entered years before either party was in the smartphone business.  Opp. at 31.

1

2                                                        GIBSON, DUNN & CRUTCHER LLP

3     Dated:  May 14, 2012                    By:   /s/ H. Mark Lyon

4                                                        H. Mark Lyon

5                                                  *Attorneys for Plaintiff Apple Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION - CASE NO.: 12-CV-00630-LHK   16