# EXHIBIT 5





PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:

MITCHEAL C. FREEMAN ET AL

Serial No:     08/198,130

Filed:          02/16/94

For:    REMOTE VIDEO
        TRANSMISSION SYSTEM

Group No:    2414

Examiner:    P. Assouad

I HEREBY CERTIFY THAT THIS CORRESPONDENCE IS BEING DEPOSITED WITH THE UNITED STATES POSTAL SERVICE AS FIRST CLASS MAIL IN AN ENVELOPE ADDRESSED TO: COMMISSIONER OF PATENTS AND TRADEMARKS, WASHINGTON, D.C. 20231, ON THE DATE SHOWN:

Date: _FEB. 2, 1996_

_Ruth A. Griffith_
Ruth A. Griffith

### AMENDMENT AND RESPONSE TO THE OFFICE ACTION DATED AUGUST 2, 1995

Commissioner of Patents and Trademarks

Washington, D.C.  20231

Dear Sir:

This is an Amendment responsive to the Office Action of August 2, 1995.

Please amend the above-identified application in the following manner:

IN THE CLAIMS:

Please cancel claims 8, 9, 11, and 15.

Please amend the following claims:

SAMNDCA630-00832596

SuB B17    1. (Amended)      An apparatus for transmission of data, comprising:

a remote unit including means for capturing, compressing, digitizing, storing, and transmitting at least one [audio and/or video] composite signal;

a host unit including:

a.)    means for receiving at least one [audio and/or video] composite signal transmitted by the remote unit;

a playback unit including:

a.)    means for exchanging data with said host unit;

b.)    means for storing the [video] composite signal received by the host unit;

c.)    means for decompressing said [video] composite signal[;].

[d.)    means for converting said digitized video signal to a broadcast signal;]

SuB B37    3. (Amended)      An apparatus according to claim 1 wherein the [video] composite signal is transmitted over [telephone lines, cellular, radio [and] or other telemetric frequencies.

SuB B5    12. (Amended)      An apparatus for transmission of data from a remote location to a host location, comprising:

a remote unit capable of receiving [an input and audio and/or video] a composite signal;

2

SAMNDCA630-00832597

said remote unit being a personal computer, including:

    a.)    a video card having a video capture module to capture, compress, and digitize said [video] composite signal into a data file;

    b.)    at least one computer [inteface] interface;

    c.)    means for transmitting said data file;

    d.)    means for splitting and organizing said data file prior to transmission;

    e.)    means for storing said data file

a host unit;

said host unit being a personal computer, including:

    a.)    at least one computer interface;

    b.)    means for recombining the split data file;

a playback unit;

said playback unit being a personal computer, including:

    a.)    means for exchanging data with said host unit;

    b.)    means for storing the [video signal] data file received by the host unit;

    c.)    a decompression card for decompressing said data file;

    d.)    a scan converter card for converting said data file to a broadcast signal[;] .

SAMNDCA630-00832598

Please add the following new claims:

12=16.   An apparatus according to claim 1 including means for converting said composite signal to a VGA signal.

17.   An apparatus according to claim 16 further including means for converting said VGA signal to a broadcast signal.

18.   An apparatus according to claim 17 wherein said means for converting said VGA signal to a broadcast signal includes a scan converter card.

19.   An apparatus for transmission of data, comprising:

a personal computer including a video card having a video capture module to capture video;

means for transmission of said captured video over a cellular frequency.

20.   The apparatus of claim 19 wherein the means for transmission of said captured video over a cellular frequency includes;

at least one interface operating in conjunction with said computer;

a cellular telephone or land telephone line connected to each said interface.

21.   The apparatus of claim 20 wherein the captured video is split prior to transmission.--

## R E M A R K S

The Office Action dated August 2, 1995 rejects claims 1-15 under 35 U.S.C. §112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicant regards as the invention.  Claims 1-15 are rejected under 35 U.S.C. §102(a) as being anticipated by Rosenthal et al (Planetary Data Distribution System) dated December 2, 1993.  Further, claims 1-15 are rejected under 35 U.S.C. §103 as being unpatentable over Gattis et al (U.S. P.N. 5,062,136) in view of Dykes et al (U.S. P.N. 5,428,671) and Guillou (U.S. P.N. 4,337,483).  For convenience and clarity in this Amendment and Response, Applicant hereby responds to the Office Action with numbered paragraphs corresponding to the numbered paragraphs contained in Part III of the Office Action.

1.   Applicant understands that this application has been filed with informal drawings which are acceptable for examination purposes only.  Applicant further understands that formal drawings will be required when the application is allowed.

2.   Claims 1-15 are rejected in the Office Action under 35 U.S.C. §112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the

5

SAMNDCA630-00832600

subject matter which Applicant regards as the invention.   Pursuant to the above amendment to the claims and the following remarks, Applicant hereby responds to each specific rejection under 35 U.S.C. §112, second paragraph.   Applicant respectfully requests reconsideration and allowance of claims 1-15 upon the sufficient grounds and explanation herein presented.

Claims 1 and 12 are rejected because they end with a semi-colon.  Claims 1 and 12 have been amended above to end with a period.  This rejection is believed overcome.

In claim 1, line 4, and claim 12, line 4, and throughout, the alternative expression "audio and/or video" has been objected to as covering two different elements and thereby vague and indefinite.  As can be seen above regarding amended claims 1, 3, and 12, "audio and/or video" signal has been replaced with "composite" signal.   The term "composite signal" is generally known to mean a signal which includes components such as audio and/or video.  With regard to the present invention, the composite signal which is captured by the remote unit may have both audio and video components as is commonly known to be a "composite signal."  However, a "composite signal" having both audio and video information is necessarily a larger quantity of information and correspondingly has larger digitized file sizes.  In instances where rapid transmission of a video segment is desired in order to reduce the size of the resultant digitized and compressed data file to be transmitted to the host unit, the remote unit may be instructed to capture the video portions of the composite signal only.  Thus, this smaller data file can be transmitted faster than a larger one.  It is believed by Applicant that the amendments to claims 1, 3, and 12 wherein "composite" signal has been substituted for "audio and/or video" signal,

6

SAMNDCA630-00832601

overcomes the indefiniteness rejection in the Office Action.

In claim 1, lines 11,13, 14 and claim 3, line 1, "the video signal", "said video signal", "said digitized video signal" have been rejected for lacking antecedent basis.   The amendments to claims 1, 3, and 12, wherein "audio and/or video" signal has been substituted with "composite" signal also provides the antecedent basis to overcome this rejection.

The term "broadcast signal" in claim 1, line 15 and claim 12, line 26, is rejected in the Office Action as being vague and indefinite. Claim 1 is amended above to delete the term "broadcast signal". However, new claim 17 has been added which includes the term "broadcast signal".

In the specification, page 7, lines 31-33 and page 28, lines 7-15, the term "broadcast" is defined as being NTSC, PAL, Y/C video (or S Video) or other such broadcast signal. Although of different video waveforms, all formats are broadcast signals commonly known in the industry as recited in claims 12, 17, and 18.

The term "telemetric frequencies" has been objected to in claim 3.  Telemetric frequencies, as used in the present application, includes any frequency over which a composite signal can be transmitted.  As a matter of practicality, "telemetric frequency" could be any frequency on which data may be transmitted.

With further regard to claim 3, the Office Action has rejected the term "telephone lines, cellular, radio **and** telemetric frequencies" (emphasis added).  Claim 3 has been amended to recite, "telephone lines, cellular, radio, **or** other telemetric.  Applicant asserts, however, that it is possible to transmit over a plurality of these mediums at the same time.

7

SAMNDCA630-00832602

Once the captured, digitized, and compressed composite signal is split pursuant to File Splitting Software C (pp. 22-24), it is transferred pursuant to Transfer Software Sequence B (pp. 19-22). It is conceivable that portions of a split file can be transmitted via cellular, land lines, and radio frequencies simultaneously. The mode of transmission of a block of a split file is irrelevant as long as it is received intact by the host unit. The host unit then reassembles the files, pursuant to File Reception Software Sequence E (pp. 25-26). The availability of multiple modes of transmission may be practical in situations or environments where the reliability of any particular mode changes. Further, transmission over two or more of the same transmission mediums provides   (a) enhanced (faster) completed transmissions; and (b) redundancy for reliability. It is thus contemplated that if one or more transmission interface connections, the remaining interface connections can transmit all split files for complete transmission. In this fashion speed and reliability are achieved. The remote and host units can be configured with several different transmission modes.

The terms "splitting and organizing" in claim 4 has been objected to as being vague and indefinite. The term "splitting" is defined on page 22, line 18 - page 24, line 13, of the specification and includes the method in which files are split. The term "organizing" in claim 4 includes the affixation of a DOS archive bit set to each packetized portion of the split file, thereby identifying files on the directory of the remote unit which are to be transmitted. In the preferred embodiment 10k "packets" (sub-files) are employed. The organizing function is defined as described on page 22, line 26 - page 23, line 3 of the present application which recombines the packets (sub-files) into their proper sequence.

8

Claims 8, 9, and 15 have been rejected for failing to further limit claim 1. Claims 8, 9, and 15 have been deleted herein.

Claim 12, line 9, has been corrected to read "interface" rather than "inteface". The term "receiving on input" has been deleted from claim 12 pursuant to the above amendments to claim 12.

Pursuant to the amendments to the claims and the remarks herein, the rejections in the Office Action under 35 U.S.C. §112, second paragraph, are overcome. Allowance of claims 1-7, 10, and 12-14 is respectfully requested.


3.     Claims 1-15 have been rejected in the Office Action under 35 U.S.C. §102(a) as being anticipated by Rosenthal et al. ("Planetary Data Distribution System", 12/2/1993). Reconsideration of claims 1-15 as amended herein is respectfully requested.

As pointed out, with gratitude, in the Office Action, the date of the Rosenthal et al reference is December 2, 1993. Attention is directed to Applicants' Affidavit Under 37 CFR §1.131, which is incorporated herein by reference. Pursuant to Applicants' Affidavit Under 37 CFR §1.131, Applicants conceived and reduced to practice their Remote Video Transmission System of the present invention including the subject matter of Applicants' claims 1-15 prior to April 8, 1993. New claims 16-21 have been added herein. The subject matter of new claims 16-21 was embodied in the device conceived and reduced to practice prior to April 8, 1993 and thus substantially earlier in time than Rosenthal et al.

Further, the "Remote Video Transmission System" invention of claims 1-15 was not described in the Rosenthal et al publication, and the date of the Rosenthal et al publication

9

SAMNDCA630-00832604

is after the invention of the "Remote Video Transmission System" by Applicants.

The Rosenthal et al "Planetary Data Distribution System" publication is not prior art and cannot anticipate Applicants' claims under 35 U.S.C. §102(a). The rejection in the Office Action under 35 U.S.C. §102(a) is overcome. Allowance of claims 1-15 is respectfully requested.

4. Claims 1-15 have been rejected in the Office Action under 35 U.S.C. §103 as being unpatentable over Gattis et al ('136) in view of Dykes et al ('671) and Guillou ('483). Claims 1, 3, and 12 have been amended, and claims 8, 9, 11, and 15 have been canceled in this Amendment and Response. Reconsideration and allowance of claims 1-7, 10, and 12-14 is hereby respectfully requested.

The Gattis et al ('136) patent lacks a significant element contained within Applicants' independent claims 1 and 12 which is not supplied by Dykes et al or Guillou. Specifically, amended claim 1 requires "means for capturing, compressing, digitizing, storing, and transmitting at least one composite signal" (emphasis added). Claim 12 recites "a remote unit being a personal computer, including: a.) a video card having a video capture module to capture, compress, and digitize said signal into a data file."

Significantly, Gattis et al as referenced on page 7 of the Office Action, and in column 3, line 67 - column 4, line 3, of Gattis, discloses the usage of a frame grabber 24A. This device only contemplates an uninterrupted, continuous stream of information digitized on a line by line of resolution basis that ultimately represent a sequence of "pictures." Gattis does not contemplate the creation of full-motion composite signal video information

10

SAMNDCA630-00832605

into digitized files which can be stored, transmitted, played or replayed. This is a very significant difference. Under Gattis the video quality is depicted by the available connection speed, and the lower the speed the lower the quality of the frames grabbed. Moreover, the system disclosed in Gattis even fails if the connection is not a continuous link sufficiently fast to provide "an acceptable picture." Gattis, column 8, line 66. Thus, Gattis does not disclose the creation of a data file as required by Applicants' claims. Also, Gattis does not contemplate the ability to provide a high quality full-motion picture with lower band width connections and cannot take into account the actual variables encountered in video data transmissions (whether analog or digital) including: variable baud rates; interference; line loss and the like. However, in Applicants' invention, full-motion composite signal is captured into digitized files and transmitted over narrow (slow) and/or intermittent band widths while and still maintaining the original captured quality of the video.

Neither Dykes et al, nor Guillou supply this important deficiency of Gattis et al. Claims 1-7, 10, and 12-14 must be allowed at least for this reason and is respectfully requested. Claims 2-7 and 10 depend upon claim 1 and Claims 13-14 depend upon claim 12 and are all allowable at least for the reasons set forth above with regard to claims 1 and 12.

Further, claims 5, 12, 13, and 14 all require "means for splitting and organizing the digitized, compressed, composite signal prior to transmission." As discussed above with regard to the rejections under 35 U.S.C. §112, the means for splitting and organizing the digitized, compressed composite signal prior to transmission includes splitting the

11

captured, organized, and compressed composite signal according to the present application (p. 22, line 18 - p. 24, line 14). Gattis does not disclose splitting the file prior to transmission. In fact, Gattis recognizes the problem of transmission speed. In column 4, lines 9-13, Gattis states, "Efficient transmission of such signals without overloading the transmission channel requires the use of a compressed code. A compressed code also reduces the amount of memory required to store each frame." Although the present invention employs compression technology, transmission speed is increased by splitting and then simultaneously transmitting the portions of the split file. Gattis, column 4, lines 21-22, states:

> "The video signal fed into the encoder/compressor 30A should be a standard black and white signal."

Capture of full motion color video with audio produces a much larger digitized data file. Transmission of that large file in real time necessitates the splitting function described by Applicants.

Applicants have added new claims 16-21. New claims 16-21 do not include new subject matter. The arguments contained herein in response to the rejections under 35 U.S.C. §112, 102(a) and 103 apply to new claims 16-20. Allowance is respectfully requested.

12

SAMNDCA630-00832607

The application as originally filed had 15 claims, including two independent claims. In this Amendment four dependent claims have been canceled. One independent claim and five dependent claims have been added. This totals 3 independent claims, and 14 dependent claims. Therefore, it is not believed any additional filing fee is necessary. However, the Commissioner is hereby authorized to credit any overpayment or debit any additional fees which may be due in connection with this Amendment to the deposit account of the undersigned, No. 03-1127.

In view of the above comments and amendments to the claims which clearly distinguish the claims for the prior art, it is respectfully requested that the Office Action be reconsidered and that the application be allowed.

Respectfully submitted,

CATALANO, ZINGERMAN & ASSOCIATES

By _____
Frank J. Catalano, Reg. No. 25,836
Scott R. Zingerman, Reg. No. 35,422
810 S. Cincinnati, Suite 200
Tulsa, Oklahoma 74119
(918) 584-8787
Attorneys for Applicant

13

SAMNDCA630-00832608