| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552)<br>jkrevitt@gibsondunn.com<br>H. MARK LYON (CA SBN 162061)<br>mlyon@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, CA  94304-1211<br>Telephone:  (650) 849-5300<br>Facsimile: (650) 849-5333 | WILLIAM F. LEE (pro hac vice)<br>william.lee@wilmerhale.com<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000 |
| MICHAEL A. JACOBS (CA SBN 111664)<br>mjacobs@mofo.com<br>RICHARD S.J. HUNG (CA SBN 197425)<br>rhung@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California  94105-2482<br>Telephone: (415) 268-7000<br>Facsimile: (415) 268-7522 | MARK D. SELWYN (CA SBN 244180)<br>mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100 |

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Counterclaim-Plaintiffs,<br><br>    v.<br><br>APPLE INC., a California corporation,<br><br>        Counterclaim-Defendant. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S REPLY CLAIM CONSTRUCTION BRIEF PURSUANT TO PATENT LOCAL RULE 4-5**<br><br>**Claim Construction Hearing:**<br><br>Date:     February 21, 2013<br>Time:    10:30 a.m.<br>Place:    Courtroom 1, 5th Floor<br>Judge:   Hon. Lucy H. Koh |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................................1

II.    ARGUMENT .......................................................................................................................1

    A.    U.S. Patent No. 5,666,502: "History List"................................................................1

    B.    U.S. Patent No. 5,666,502: "Field Class" ................................................................4

    C.    U.S. Patent No. 5,946,647: "Action Processor"........................................................6

    D.    U.S. Patent No. 7,761,414: "Concurrently With" .....................................................9

    E.    U.S. Patent No. 8,014,760: "Completely Substitut[e/ing] Display of the List [of Interactive Items] with Display of Contact Information" ..............................................12

III.    CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
    659 F.3d 1121 (Fed. Cir. 2011) ................................................................................................ 1

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
    616 F.3d 1283 (Fed. Cir. 2010) .............................................................................................. 12

*Badasa v. Mukasey*,
    540 F.3d 909 (8th Cir. 2008) ................................................................................................. 10

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
    334 F.3d 1294 (Fed. Cir. 2003) .............................................................................................. 11

*Gart v. Logitech, Inc.*,
    254 F.3d 1334 (Fed. Cir. 2001) ................................................................................................ 7

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
    381 F.3d 1352 (Fed. Cir. 2004) ................................................................................................ 3

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*
    540 F.3d 1337 (Fed. Cir. 2008) ................................................................................................ 3

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008) .............................................................................................. 13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................................................... 4, 7, 11

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) ............................................................................................ 1, 7

*Sandisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed Cir. 2005) ............................................................................................... 15

*Vitronics Corp. v. Conceptronic Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................................................ 12

## I. INTRODUCTION

The proper starting point for construing patent claim terms is the language of the claims in which the terms appear. Instead, Samsung attempts to use attorney argument, dictionary definitions, and selected excerpts from the patents' specifications in an effort to improperly narrow each of the five Apple patent claim terms in dispute. As Apple's opening brief explained, the meaning of each of these five terms is easily determined from the context of the claims in which they appear. Samsung's efforts to import additional limitations are contrary to controlling precedent, and should be rejected.

## II. ARGUMENT

### A. U.S. Patent No. 5,666,502: "History List"

The parties' dispute over the term "history list" is straightforward—Apple contends that history lists *can be* shared between different applications; Samsung contends history lists *must be* shared between different applications. Because Samsung's contention is not supported by the claim language and reads out a preferred embodiment, it should be rejected.

Samsung does not dispute that its construction adds a concept—"sharing between applications"—missing from the claim language. To justify its addition, Samsung asserts that "sharing historical information between different applications" is the "invention" and argues that cases require limiting claims to the specification's description of "the invention." (Samsung's Responsive Claim Construction Brief, D.I. 352 ("Samsung Br.") at 5-6.) In each of those cases, however, the patentee clearly disavowed of claim scope. *See, e.g., Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (requiring "*manifest exclusion or restriction, representing a clear disavowal of claim scope*" to narrow claim scope) (internal quotation marks omitted) (emphasis added). In contrast, if the specification only explains that a feature "*can* be included in the *present invention*," the claims will not be limited even if (unlike here) the feature is described as "the present invention." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1137 (Fed. Cir. 2011) (internal quotation marks omitted). Samsung identifies no disavowal in the '502 patent and ignores that the specification explains "sharing" *can* be included.

Indeed, Samsung is wrong both that (1) the '502 "invention" *requires* "sharing historical information between different applications," and (2) the specification describes sharing history lists

between applications as "the invention"—it does not. As explained in Apple's opening brief, the specification merely explains that sharing between applications is possible, not required. (*See* Apple Inc.'s Opening Claim Construction Brief, D.I. 333 ("Apple Br.") at 5) (citing '502 Patent, Abstract; 2:38-41, 4:20-25 ("the historical [information] *can also* be shared between different applications") (emphasis added).) Samsung *omits* this language when characterizing the patent's teachings, arguing instead, and incompletely, that once the list was created, "that list was then 'shared between different applications that execute on the computer system.'" (Samsung Br. at 2 (citing '502 Patent, Abstract).) By excising the words "can also be" before "shared," Samsung erroneously attempts to transform an optional feature of the invention into the "critical" feature of the invention.

Furthermore, even those passages Samsung correctly quotes provide no support for importing this limitation. As Samsung points out, the patent states that "the invention . . . *facilitates* the sharing of the historical input data between different applications." (Samsung Br. at 4 (citing '502 Patent, 2:35-38) (emphasis added).) An invention that "facilitates" sharing does not "require" sharing.[1]

Ignoring all embodiments described in the specification, Samsung selectively focuses on embodiments describing "'*usage* of the invention' to share history information 'across different programming applications.'" (*Id.* at 4-5 (citing '502 Patent, 16:23-38) (emphasis added); *see also id.* at 5 (citing '502 Patent, 16:50-17:7).) These embodiments, however, merely illustrate that the invention *can be* used across different applications; they do not say that the invention *must be* so used. Indeed, the earlier-described "basic embodiment of the invention" employs just a single application without sharing the history list between applications. Samsung's argument that this basic embodiment requires "two different applications" (*see id.* at 7,) is contradicted by the specification, which explains:

> The list processing 164 begins by displaying 166 a form having at least one field . . . . *For example,* in an application program such as a fax sending program running on a computer, when sending a fax, a form will be displayed to the user requesting that the user enter the name of the person to which the fax is to be sent. *Another example* is a[n] electronic business card program (*e.g.*, ROLODEX® like product) running on a computer, wherein when entering a new business acquaintance, a form will be

---

[1] Samsung also incorrectly argues that "[t]his 'invention' [sharing between applications] is the patent's allegedly key improvement over the prior art." (Samsung Br. at 5 (citing '502 Patent, 16:41-49).) But the passage Samsung cites in support of this argument does not contain the word "invention" or mention any prior art. '502 Patent, 16:41-49.

displayed to the user requesting the name, company, address, phone, etc. of the person. The above *two examples of forms* are two of *many types of forms* that can be used with the invention.

'502 Patent, 9:48-61 (emphasis added). This embodiment describes a single "form," which can be in a "fax sending program" as one "example," or alternatively, an "electronic business card program" as "[a]nother example." Tellingly, and contrary to Samsung's argument, the '502 specification never suggests that these different exemplary applications must, or even do, share fields or history lists among their respective forms.[2] *See id.*, 9:65-10:13.

Samsung further mischaracterizes the file history. The examiner allowed the claims over certain art because of the "field class" element. (Declaration of Victoria Maroulis in support of Samsung's Responsive Brief, D.I. 352-1 ("Maroulis Decl."), Ex. 2 at APLNDC630-0000056188.) In particular, the examiner explained, "Borland C++ does not teach updating the history list associated with the field class. In contrast, Borland C++ seems to limit updating to a specific entry field instance." (*Id.*) In other words, Borland C++ simply updated the particular field in a form, not a class associated with that field. Unlike Borland C++, by associating a history list with a field class, the '502 history list *can be* shared among different fields in the same form or across forms, *e.g.*, sharing an "address" field class across "home address" and "billing address" in a purchase form. Nowhere does the examiner explain that a history list *must be* "shared" among different "applications." The cited file history thus does not support a finding of a "clear disavowal" of the claims' full scope. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004).

Finally, Samsung improperly attempts to rely on inventor testimony to change the clear scope of the claims. *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.* 540 F.3d 1337, 1347 (Fed. Cir. 2008) ("inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction").[3] Even if considered, inventor Capps's testimony does not support Samsung's position. When asked to provide on-the-spot analysis for Samsung of an alleged prior art program that purported to show a history list for a particular field instance, Capps explained he could not see

---

[2] Additionally, the claim language only requires a single form – not one shared by different applications. '502 Patent, claims 1, 4, 8, 11, 16, 26.

[3] *Howmedica* rejected and overturned the cases cited by Samsung suggesting that inventor testimony that is "against [the inventor's] own interest" is "highly relevant." (Samsung Br. at 8 n.3.)

1   whether the alleged prior art used field codes.  (Maroulis Decl., Ex. 3 at 161:7-166:17.)   None of this

2   testimony indicates that sharing between applications is *required*; rather, Capps stated only that if the

3   prior art had shared a history list between applications, it might have informed him whether a field

4   code was present.  Samsung completely ignores Mr. Capps's unambiguous testimony that his

5   invention did not require history lists to be shared, and his identification of examples where sharing

6   would be undesirable.  (Declaration of Jennifer Rho in support of Apple's Reply Brief ("Rho Reply

7   Decl."), Ex. 1 (December 12, 2012 Deposition of Stephen Capps) at 169:11-170:20  (explaining the

8   desire for flexibility that having data be "sharable" provides but explaining that the system would not

9   want to share data "if you had a medical application for your patients' data, and you're a good doctor,

10  you would never commingle that data with the contacts database, which might be your fellow

11  physicians and staff at the hospital").)

12          In sum, neither the intrinsic evidence nor Samsung's selective and legally-irrelevant

13  fragments of the inventor's deposition support limiting the scope of the '502 Patent claims to require

14  that history lists be shared between applications.

15  **B.     U.S. Patent No. 5,666,502: "Field Class"**

16          Samsung is correct that "[t]he parties largely agree about the role played by the 'field class.'"

17  (Samsung Br. at 9.)  A "field class" is associated with a field, as well as a history list, and identifies

18  the type of information entered into the field.  In this way, a history list containing the type of

19  information relevant to a particular field (*e.g.*, names or addresses) can be displayed to the user.

20  Thus, the parties agree that the "field class" identifies a category of information.

21          Samsung, however, erroneously seeks to go further and argues that "field class" must be a

22  "data element," despite the fact that the term "data element" appears nowhere in the intrinsic record

23  and is itself subject to alternative constructions.  In effect, Samsung seeks to introduce an undefined

24  phrase into the construction, without any anchor to the specification or other intrinsic evidence, but

25  based solely on out-of-context extrinsic evidence.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed.

26  Cir. 2005) ("In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a

27  reliable interpretation of patent claim scope unless considered in the context of the intrinsic

28  evidence.").  Samsung's effort should be rejected.

Although Samsung asserts that its construction "tracks the patent's descriptions of 'field classes'" (Samsung Br. at 8), Samsung cites *no intrinsic evidence* to support its made-up definition. Indeed, Samsung argues (in footnote 6) that "the patent repeatedly points to data elements (*see, e.g.*, '502 10:66-67, 11:3-5, 16:59-63, 16:67-17:7), and in particular 'strings' (computer science parlance for words), that identify the category of information – such as 'name' or 'company.' (*Id*. 16:67-17:7.)". (Samsung Br. at 10-11 n.6.) But, the patent *never* uses the term "data element,"[4] much less use "data element" to describe a category of information. Being absent from the patent, "data element" cannot have "plain meaning [] in the patent." (Samsung Br. at 10.) Rather, given the absence of any use in the patent, or even any evidence of how one of skill in the art understands the term, "data element" would itself require construction.

Reaching further into extrinsic evidence, Samsung argues that "field class" is limited to a "data element" because "data element" appears in another Apple patent having different inventors, covering a different technology, and lacking any reference to "field classes." Not surprisingly, Samsung cites no case law that endorses construing a claim term from one patent by using words, taken in a vacuum, from a completely unrelated patent, covering unrelated technology. (*Id.* at 11 n.6.)[5]

In addition to its improper attempt to use extrinsic evidence to import a new concept into the '502 patent, Samsung's "data element" construction would only introduce ambiguity into the claim. One of Samsung's proffered dictionaries defines "field"—not "field class"—as follows:

> A field is the physical unit of storage, whereas a data item refers to the data itself. For example, the data items Chicago, Dallas and Phoenix are stored in the CITY field. The terms *field*, *data element*, *data item*, and *variable* refer to the same unit of data and are often used interchangeably.

---

[4] In one embodiment, "the field class associated with the field 184 would be 'full name.'" '502 Patent, 10:66-67, 11:3-5. In another embodiment, "a history table developed for company names (*i.e.*, field class= 'company') can be shared amongst the different modules within the accounting software package." *Id.* 16:60-63, 16:67-17:7. Nowhere does the patent describe "full name," "company," or any other exemplary field class as a "data element."

[5] In fact, even if a comparison could be drawn between the patents, the fact that Apple knew how to use the term "data element" (and did so over a hundred times) in one patent and failed to use the term once in the '502 patent demonstrates, if it demonstrates anything at all, that the term was consciously omitted in the '502 patent because it did not capture the meaning of "field class."

(Rho Reply Decl. Ex. 2 (Alan Freedman, *Computer Words You Gotta Know!* 60 (AMACOM 1993) at SAMNDCA630-XX0209950).) This reference states that "data element" and "field" are used "interchangeably." But, again, the claim term is "field class"—something the '502 patent expressly distinguishes from a "field." *See, e.g.*, '502 Patent, claim 8 (requiring a "form having at least one field requiring data input, *the field being associated with one of the field classes*") (emphasis added); 2:51-55 ("When inputting data via the input tablet into a field of a form being displayed on the display screen, a list of choices is produced from the history table for *the field class corresponding to the field* and displayed on the display screen.") (emphasis added).

With some irony, Samsung accuses Apple's proposed alternative construction of "add[ing] a layer of redundancy that will only confuse the jury." (Samsung Br. at 9.) In making that accusation, Samsung loses sight of the fact that Apple asserts that "field class" need not be construed and is understandable from its context. If the Court finds that a construction is needed, Apple merely maintains that the construction should itself be clear and not include terms that have no foundation in the intrinsic record. Samsung agrees that "field class" connotes a "category of information." But "category of information" merely defines a "class." A "field" class, then, is a class (or category of information) associated with a field. This construction will not confuse a jury.[6]

### C. U.S. Patent No. 5,946,647: "Action Processor"

Apple and Samsung agree that, as claimed in the '647 patent, "action processor" is a "program routine" that "performs the selected action on the detected structure." Rather than stop with a construction that aligns with the language of the claims and the description in the '647 specification, Samsung goes further and seeks to inject an extrinsic concept that requires the action processor to be "separate from a client." This concept lacks any support and should be rejected.

Samsung's "separate" requirement does not appear in the language of the asserted '647 claims;[7] indeed, the words "separate" and "client" do not appear in the claims. Not surprisingly,

---

[6] Also, Samsung's argument that the "field class" must be more than a "mental impression" is a red herring. (*See* Samsung Br. at 10.) Apple does not contend that the "field class" is merely an abstract idea; it is "a category of information associated with a field."

[7] Samsung argues that because claim 15 recites the function of the action processor without using that term, "action processor" in claim 1 conveys a different meaning. (Samsung Br. at 14.) Claim 15, however, is a method claim that recites steps, whereas claim 1 is a system claim that labels program

then, Samsung fails to cite to any claim language that even implies that the "action processor" must be "separate from a client." Also recognizing that the doctrine of claim differentiation undercuts its argument, Samsung even avoids reference to claims that could be said to describe separate components. For example, dependent claims 3 and 10 describe an embodiment in which the claimed "program routines" (which include the "action processor") may have an application program interface to communicate with an application (which Samsung alleges to be the separate client). Given the specificity found in the dependent claims, "action processor" found in claim 1 should not be so limited. *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

Like the claim language, the '647 specification does not support a construction that requires the "action processor" to be "separate from a client." Samsung's reliance on Figures 1 and 2 of the patent is misplaced because these figures merely demonstrate one disclosed embodiment—not the precise metes and bounds of the claims. *See, e.g.*, *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001) ("[D]rawings are not meant to . . . limit the scope of coverage defined by the words used in the claims themselves."); *Retractable Techs.*, 653 F.3d at 1306 ("To disavow claim scope, the specification must contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.") (internal quotation marks omitted). Indeed, there is no evidence that the arrangement of boxes that Samsung cites from Figure 1 (Samsung Br. at 12) is even a preferred feature, much less a required element of the claimed invention.

Samsung also argues that Figure 2 and its related description support its "separateness" limitation, because "the detected structure and selected action are 'transmitted' to the action processor." (*Id.* (citing '647 Patent, 4:52-54).) In making this argument, however, Samsung overlooks the fact that the specification describes, and Figure 2 shows, that the "*user interface 240*" that transmits is, like the action processor, part of the same "program 165" and shown within the

---

routines so that they can be described later in dependent claims. *See* '647 Patent, claims 2, 4-7 (adding limitations to the analyzer server); claims 8-9 (adding limitations to the user interface).

same "box" in Figure 2. '647 Patent, 3:54-57 (emphasis added); Fig. 2. If anything, Figure 2 shows that the action processor may be part of a client, not that it must be separate from it.

Samsung's reliance on the file history is likewise misplaced and taken out of context. The examiner rejected the pending claims based on the Gerlach reference. In response, Apple explained that in Gerlach the "data structures are generated and interpreted by, and totally *internally* to, Gerlach's system." (Declaration of Jennifer Rho in support of Apple Inc.'s Opening Claim Construction Brief, D.I. 333-1 ("Rho Decl."), Ex. F at APLNDC630-0000110162.) In contrast, Apple explained that data structures in the '647 system "can appear in any document or file and are generated *externally* to Applicant's system." (*Id.*) Apple continued that its "invention is a system-wide service that can be used to enable cooperating systems to detect recognizable structures in their data." (*Id.*) In other words, the invention of the '647 patent can work across different systems, *i.e.*, identify and take action on data structures of cooperative systems. This capability says nothing about whether the action processor must be "separate" from a "client" or "application."

Finding no intrinsic support, Samsung argues that its construction is "consistent with the well-known understanding of a 'processor' in computing contexts – a part of a system capable of carrying out basic computation on behalf of a variety of applications." (Samsung Br. at 13.) But this is pure attorney argument, and Samsung cites no evidence to support its alleged "well-known understanding" in the art. A "processor" executes actions or instructions. Nothing about the term requires a separate "application" or "client."

Samsung also complains that Apple's alternative construction "merely restates functionality that is already in the explicit claim language." (*Id.* at 14.) That is exactly why no construction is necessary—the claim language is already clear. Samsung urges that "action processor" requires construction because the jury might "assume it refers to hardware." (*Id.* at 11.) But the claims explicitly require software, that is, "*program routines*" that include an "action processor." '647 Patent, claim 1 (emphasis added). The jury will not be "confused" by this plain language. Indeed, the bulk of Samsung's own construction of "action processor"— a ""program routine . . . that performs the selected action on the detected structure"—likewise restates the express claim language.

1  The only part that is not in the claims is Samsung's extraneous "separate from a client" limitation.
2  The Court should reject Samsung's invitation to read such a limitation into the claims.

3  **D.    U.S. Patent No. 7,761,414: "Concurrently With"**

4  Samsung seeks to construe "concurrently with" to mean "at the same time as" because it
5  contends that only a multiple processor system, which includes "multi-core" processors, can actually
6  execute two threads "at the same time." (Samsung Br. at 17-18.)  Thus, the real dispute is whether it
7  is proper, as Samsung urges, to limit the meaning of "concurrently with" to exclude concurrent
8  operation on single processor systems—notwithstanding that the '414 patent specification discloses
9  concurrent operation on single processor embodiments.

10  To start, Samsung is wrong when it says that "[t]here is no preferred embodiment that
11  exclusively describes a single processor." (Samsung Br. at 17.)  The '414 patent refers to both hosts
12  (*e.g.*, a personal computer) and devices (*e.g.*, a smartphone) as "data processing systems." *See*, *e.g.*,
13  '414 Patent, 4:53-55; claim 2.  The specification goes on to explain, using Figure 2, for example, that
14  "[t]he processing system 47 may include *one* or more microprocessors, such as a microprocessor
15  from Intel or IBM." *Id.*, 5:23-24 (emphasis added).  And, again, by reference to Figure 3, the
16  specification explains that "[t]he data processing system 60 shown in FIG. 3 includes a processing
17  system, which may be *one* or more microprocessors." *Id.*, 6:15-17 (emphasis added).  Thus, the '414
18  patent clearly contemplates that a data processing system can include *only one* processor.  Having
19  defined a "data processing system," the specification teaches that the invention may be fully
20  embodied in a *single* data processing system:  "This aspect involves the ability for *one* or both *of the*
21  *device and the host* to have both non-synchronization processes and synchronization processes
22  occurring concurrently in that they are both being *executed by one* or more *processing systems*." *Id.*,
23  24:43-47 (emphasis added).  As explained previously, these data processing systems may have only
24  *one processor*.  Thus, whether running on a host data processing system (a PC) or a device data
25  processing system (a smartphone) the patent describes embodiments with one processor, as well as
26  multiple processors, and each embodiment concurrently executes both non-synchronization threads
27  and synchronization threads.

28

Thus, taken as a whole, the '414 patent teaches that the invention can be implemented as (1) one data processing system with only one processor; (2) one data processing system with multiple processors; (3) multiple processing systems, each with one processor; or (4) multiple processing systems, each with multiple processors.  The patent, in fact, explains that the "particular architecture or manner of interconnecting components . . . are not germane to the present inventions."  '414 Patent, 4:61-63.  Samsung ignores this statement, like it ignores the one data processing system / one processor embodiment, in its effort to limit the invention to a particular embodiment or to read "multi-core processors" into the embodiments.

Indeed, Samsung attempts to reconcile the single processor embodiments disclosed in the patent with its construction by pointing to Wikipedia to suggest that the single processors described in the specification refer to "dual-core" chips containing multiple processors. (Samsung Br. at 17-18 n.8.)  First, Wikipedia does not replace the intrinsic record, which specifically states that the invention is architecture agnostic, nor should it be used to narrowly define the scope of embodiments disclosed in the patent.  *Cf. Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008) (noting that Wikipedia is not a reliable source of information).  Second, a multi-core processor describes a system with two or more processors (called "cores") residing on a single die or chip; each "core" is a separate processor.[8]  Third, the '414 patent does not define a single processor to equate to a multi-core processor.  Samsung again erroneously creates this limitation with no support in the intrinsic record.  Fourth, as noted, the '414 patent teaches that the invention can be practiced on "a cellular telephone with PDA-like functionality" ('414 Patent, 6:44-46)—the first cellular phone with a dual-core chip was not released until more than three years after the filing of the '414 patent (*see* Rho Reply Decl. Ex. 4 (Peter Pachal, *LG Announces Optimus 2X, World's First Dual-Core Phone*,

---

[8] For example, IBM, whose processor is provided as an example in the '414 patent specification, said in an article published contemporaneously with the '414 filing that "[t]ypical *processors* [*sic*] *chips contain one processor core (the 'brains' of the processor)* surrounded by supporting circuitry, such as on-chip L2 cache, a memory controller (in some designs), and so on.… *By contrast, dual-core processors contain two complete processor cores within one chip*…" (Rho Reply Decl. Ex. 3 (Mark T. Chapman, IBM Systems and Technology Group, The Benefits of Dual-Core Processors in High-Performance Computing (June 2005)) at 2 (emphasis added).)  Samsung's Wikipedia citation supports Apple's argument in that it states that single-core processors could *multitask* – or run multiple threads concurrently.  (*See* Samsung Br. at 17-18 n.8.)

PCMAG.COM (Dec. 16, 2010) *available at* http://www.pcmag.com/article2/0,2817,2374435,00.asp).) Therefore, one of skill in the art at the time the '414 patent was filed would not interpret the single processor embodiments disclosed therein to refer solely to dual-core chips, as Samsung urges now. *Phillips*, 415 F.3d at 1312-13 (claims are interpreted from perspective of skilled artisan from patent filing date).

Samsung's construction, hence, fails for at least two reasons. First, it is contrary to Federal Circuit precedent to exclude an embodiment described in the specification—here, a data processing system with one processor – without some evidence of a clear disavowal of claim scope. Such a clear disavowal does not exist. Second, it is inconsistent with the commonly understood meaning in the art at the time the '414 patent was filed: A single processor was capable of concurrently executing two or more threads.

At bottom, and as Apple explained in its opening brief, the commonly understood meaning near the time the patent was filed was that "concurrent execution" means "[t]he simultaneous execution of multiple computer operations by *the CPU*"; in other words, simultaneous execution of multiple threads on a single processor was considered concurrent execution even if there was some interleaving or infinitesimal period of time between threads. (*See* Apple Br. at 18 (citing Steven M Kaplan, *Wiley Electrical and Electronics Dictionary* 138 (2004).)[9]

Further, Samsung's insistence that the patent uses the phrase "at the same time" (the same language Samsung proposes as it construction) (Samsung Br. at 16) merely begs the question. It does not demonstrate that the interleaved execution of multiple threads by a single processor falls outside of the '414 patent claims' scope. (Apple Br. at 17.)  Given its context in the claim, "concurrently" requires no construction; if, however, some clarifying definition is necessary, Apple's proposed alternative captures what it means to one of skill in the art at the time of the invention for the two claimed threads to execute concurrently with each other on *one* or more processors – that the

---

[9] Samsung's request for the Court to ignore these dictionaries relies on inapplicable case law where the rejected references were from years *after* the filing of the patent at issue. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003) ("These references are dated well after the '003 patent.") Apple's evidence predates the filing of the patent and therefore demonstrates that for at least fifteen years leading up to the filing of the '414 patent, the understanding of those of skill in the art – that two threads could execute concurrently on a single processor – had not changed.

1  "synchronization thread and non-synchronization thread are both active during an overlapping time
2  interval."

### E. U.S. Patent No. 8,014,760: "Completely Substitut[e/ing] Display of the List [of Interactive Items] with Display of Contact Information"

Through its negative construction—"none of the list of missed calls is visible"—Samsung seeks to exclude *any* overlap in information appearing on the display of the list of interactive items, *i.e.*, the list of missed calls, with information appearing on the display of contact information. As the '760 patent illustrates, the list of missed calls includes such information as the caller's name, phone number, and the date and time of the missed call. If "none of the list" is visible, then, under Samsung's construction, none of this information can appear with the caller's contact information. This restriction, beyond ignoring the plain language of the claim, which focuses on substituting the *display* and not information, violates a cardinal rule of claim construction – it excludes a preferred embodiment. *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (quoting *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996)) (A proposed construction that excludes a preferred embodiment is rarely, if ever, correct.).

Both parties agree that the preferred embodiment depicted in "Figure 12C . . . shows what the Examiner meant by 'completely substituting' . . ." (Samsung Br. at 23.) Indeed, Figure 12C shows a display of contact information corresponding to the Bruce Walker entry on the missed call list of Figure 12B, which displays three pieces of information: the caller's name, the date and time of the missed call, and the number of missed calls. As the '760 patent explains and shows in Figure 12C, when a user selects the item for Bruce Walker in Figure 12B, contact information for Bruce Walker is displayed. '760 Patent, 31:3-12. As Figure 12C plainly shows, Mr. Walker's contact information includes information that overlaps with information appearing on the list of missed calls, *i.e.*, Mr. Walker's name and the date and time of Mr. Walker's last missed call. Despite these illustrations and explanations in the '760 patent, by its construction Samsung seeks to exclude information that overlaps between the two displays, *e.g.*, Mr. Walker's name and the missed call date and time. Thus, to the extent Samsung's argument that Figure 12C requires "a new screen in which the *call information has been completely replaced* with the display of stored contact information for the caller" means that there can be no overlap of information between the missed call list display and the

1  contact information display, Samsung is wrong.  (Samsung Br. at 23 (emphasis added).)  That

2  argument conflicts with the specification, and that argument ignores the express claim language,

3  which simply requires a complete substitution of the *display*, not a complete substitution of

4  information.  *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008) ("[W]here claims can

5  reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to

6  exclude that embodiment, absent probative evidence on the contrary.").



'760 Patent Figs. 12B and 12C

16  Failing to find support for its negative limitation in either the claims or the specification,

17  Samsung incorrectly asserts that the "completely substituting" language was added to the claims

18  during prosecution to "preserve the distinction between call information, on the one hand, and stored

19  contact information, on the other."  (Samsung Br. at 22.)  In other words, Samsung argues that this

20  amendment focused on replacing call *information* with contact *information*.[10]  Again, Samsung is

21  wrong.  The Examiner added the "completely substituting" language to the prosecution history to

22  differentiate the '760 patent's use of a second *display* from the Chew prior art in which contact

23  information appeared in a window that only partially overlapped with (rather than replaced) the call

24  information display.[11]  Thus, the Examiner's Amendment focused on the *display* – where a first

---

[10] The examiner's amendment neither mentions "call information" nor adds a "contact information" limitation because the term "contact information" *was already in the claims* prior to the '760 Patent's Second Notice of Allowance.  Rho Decl. Ex. N (Second Notice of Allowance (June 1, 2011)).

[11] The parties agree that "[t]he term 'completely substitut[ing]' was first added by the patent examiner" following the '760 Patent's First Notice of Allowance and that the examiner intended that the term describe what was disclosed "in the specification (Figs 12B-12C)."  (Samsung Br. at 22.)

1  *display* was substituted "completely" with a second *display*, and thereby avoided Chew. (Apple Br.
2  at 23.)

3  The examiner's focus on the *display* (not content) of the information, moreover, is evidenced
4  by the fact that the examiner included the term "display" twice – once before "list of interactive
5  items" and once before "contact information" as shown below on the right (compared to the relevant
6  claim language before the examiner's amendment shown on the left):

| After 1st Notice of Allowance | After 2nd Notice of Allowance |
|---|---|
| displaying a list of interactive items . . . immediately displaying contact information | displaying a list of interactive items . . . completely substituting display of the list of interactive items with display of contact information |

Indeed, to support its argument that the *information* content is being substituted, Samsung repeatedly, and notably, omits the word "display" when characterizing the language at issue. (*See, e.g.,* Samsung Br. at 23 ("Accordingly, when the claim states that missed call information is completely substituted with contact information, those terms have specific meanings.").)

Further, when arguing that the prosecution history "flatly contradicts" Apple's position, Samsung misreads the prosecution history as well as the claims. The *only difference* between the language in the First Notice of Allowance and the Second Notice of Allowance is the reference to Chew and the inclusion of the "completely substituting" claim addition made at the time of the Second Notice of Allowance.[12] As noted above, the claim language was added to overcome Chew's disclosure of a partially obscuring display of contact information over the display of call information. (*Compare* Samsung Br. at 24-25 (citing the Second Notice of Allowance) *with* Rho Reply Decl. Ex. 5 (First Notice of Allowance (April 15, 2011)); Rho Reply Decl. Ex. 6 (Response to Final Office Action (February 14, 2011)) at 4.) Both Chew and Figure 12C of the '760 patent show an overlap of information appearing on the missed call list and the contact information*, e.g.*, the contact name and missed call time. Figure 12C is different from Chew because Figure 12C completely replaces the *display* of the missed call list rather than only partially obscuring the display. In other words, in the

---

[12] Samsung discusses other prior art references overcome during the '760 prosecution, such as Twerdahl and Kun. (*Id.* at 21-22.) These references are irrelevant to the "completely substituting" construction, as both references were overcome before the First Notice of Allowance, and before the disputed claim term was added. (Rho Reply Decl. Ex. 5 (First Notice of Allowance).)

'760 patent, the display of contact information must appear as its own display, rather than in a pop-up sub-menu as depicted in the Chew reference.

Samsung's semantic argument that Apple's proposed alternative construction would "read[] out the 'contact information' requirement of the claim[]" and "allow any type of information about the caller . . . to satisfy the limitation" (Samsung Br. at 24) is also incorrect.  As discussed in its opening brief, Apple believes that the language of the claims as written is clear because it specifies particular "contact information."   For example, '760 patent claim 1 requires the inclusion of a plurality of contact objects comprising at least a telephone number object having the return telephone number and a second contact object for contacting the caller through a non-telephonic modality.[13] Notably, the claim language is open-ended and does not exclude other information from being displayed.  *See Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1284 (Fed Cir. 2005) ("As a patent law term of art, 'includes' means 'comprising'. . . [n]either includes, nor comprising, forecloses additional elements that need not satisfy the stated claim limitations.") (citations omitted).  Apple's proposed alternate construction need not specify further details for "contact information" because the non-disputed claim language already sets out those requirements.  For these reasons, as well as those addressed previously, Apple's alternate construction is fully supported by the '760 patent's claims, specification, and prosecution history.

### III.   CONCLUSION

For the foregoing reasons, Apple requests that the Court adopt its proposed constructions and reject Samsung's unsupported definitions.

---

[13]  In its original proposed construction of the disputed phrase, Samsung argued that "contact information" was limited to "numbers, addresses, and/or instant messaging usernames."  Apple demonstrated that proposed limitation is contrary to the '760 patent specification.  (Apple Br. at 24-25.)  Samsung now appears to concede that point, agreeing in its Responsive Brief that the term "contact information" could also include "other information that would permit a user to contact the caller."  (Samsung Br. at 25.)

GIBSON, DUNN & CRUTCHER LLP

Dated: February 8, 2013					By: _/s/  H. Mark Lyon_____

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document, and all supporting documents and exhibits, was filed electronically in compliance with Civil Local Rule 5-1, and will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have consented to electronic service in accordance with the Northern District of California Local Rules via the Court's ECF system.

Dated: February 8, 2013                                By:            */s/ H. Mark Lyon*
                                                                                    H. Mark Lyon