1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   William C. Price (Cal. Bar No. 108542)
10 williamprice@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                      UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 | APPLE INC., a California corporation, | CASE NO. 12-cv-00630-LHK |
|---|---|
| Plaintiff, | **SAMSUNG'S REPLY CLAIM CONSTRUCTION BRIEF** |
| vs. | Date: February 21, 2013 |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Time: 10:30 am |
| | Place: Courtroom 8, 4th Floor |
| | Judge: Hon. Lucy H. Koh |
| Defendants. | |

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. U.S. PATENT NO. 7,756,087 | 1 |
|     A. Non-Scheduled Transmission (NST) | 2 |
|         1. Apple Ignores the Realities of Samsung's Invention | 2 |
|         2. Apple's Construction Ignores the Preferred Embodiments | 3 |
|         3. "Non" in "Non-Scheduled Transmission" Means Not Scheduled Mode | 4 |
|     B. N | 5 |
|         1. Apple's Construction Reads Out the Preferred Embodiments | 5 |
|         2. Apple's Construction Adds Unsupported Limitations | 6 |
| III. U.S. PATENT NO. 7,577,757 | 6 |
|     A. Zone Specific Storage and Interface Device | 6 |
|         1. Apple's Construction is Unjustified Because There Is No Clear Disavowal Of Claim Scope | 7 |
|         2. Apple's Construction is Based on an Unsupported Definition of "Zone" And Ignores Preferred Embodiments | 7 |
| IV. U.S. PATENT NO. 5,579,239 | 9 |
|     A. Means for Capturing, Digitizing, and Compressing at Least one Composite Signal | 9 |
|         1. The Proper Corresponding Structure is a "Module" Not a "Card" | 9 |
|         2. Software is Not a Required Structure | 11 |
|         3. A Composite Signal is Video and/or Audio | 12 |
|     B. Means for Transmitting the Composite Signal | 12 |
|         1. Apple Improperly Narrows the Construction to Cover *only* Cellular Telephones with Modems | 12 |
|         2. The Algorithm Included in Apple's Proposed Construction is Not Part of the Claimed Function | 13 |
| V. CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Page**

### Cases

*Alcon Research, Ltd., v. Apotex Inc.*,
    687 F.3d 1362 (Fed. Cir. 2012).................................................................................................7

*Anderson Corp. v. Fiber Composites, LLC.*,
    474 F.3d 1361 (Fed. Cir. 2007)...............................................................................................11

*Aristocrat Techs. Australia PTY Ltd. v. International Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008)...............................................................................................12

*Brown v. 3M*,
    265 F.3d 1349 (Fed. Cir. 2001).................................................................................................1

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
    296 F.3d 1106 (Fed. Cir. 2002)...............................................................................................15

*Dealertrack v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)..........................................................................8, 12, 14, 15

*In re Google Litigation*,
    No. C-08-03172 RMW, 2011 U.S. Dist. LEXIS 98469, (N.D. Cal. Aug. 31, 2011)...................6

*In re Hayes MicroComputer Products, Inc. Patent Litigation*,
    982 F.2d 1527 (Fed. Cir. 1992)...............................................................................................10

*Laryngeal Mask Co Ltd. v. Ambu A/S*,
    618 F.3d 1367 (Fed. Cir. 2010).................................................................................................7

*MBO Laboratories, Inc. v. Bectron, Dickinson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007)...........................................................................................3, 6

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
    347 F.3d 1367 (Fed. Cir. 2003)...............................................................................................10

*Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*,
    194 F.3d 1250 (Fed. Cir. 1999)...............................................................................................12

*Microthin.com, Inc. v. SiliconeZone USA, LLC*,
    615 F. Supp. 2d 754 (N.D. Ill. 2009), *aff'd*, 377 F. App'x 8 (Fed. Cir. 2010)...........................5

*Omega Engineering, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003).................................................................................................8

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011)...............................................................................................11

*UniRAM Tech., Inc. v. Monolithic System Tech., Inc.*,
    No. C-04-1268, 2006 WL 825460 (N.D. Cal. Mar. 30, 2006).................................................1

*Wenger Manufacturing, Inc. v. Coating Machine System, Inc.*,
　239 F.3d 1225 (Fed. Cir. 2001) ............................................................................................... 10, 16

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
　442 F.3d 1322 (Fed. Cir. 2006) ..................................................................................................... 7

I.     **INTRODUCTION**

For the five claim terms from Samsung's patents, Apple takes aggressive, litigation-induced positions that are inconsistent with the canons of claim construction and Apple's constructions for its own patents.   For the '087 patent, Apple argues that both claim terms must be construed, yet argues that no terms from its own patents should be construed.   Then for the '087 and '757 patents, Apple argues for overly narrow constructions that would exclude the inventions from the claims.   For the means-plus-function limitations in the '239 patent, Apple ignores structures that are clearly linked to the claimed functions and at the same time attempts to include structures that are unrelated to those functions.

II.    **U.S. PATENT NO. 7,756,087**

Apple argues in its Response Brief that "non-scheduled transmission" and "N" relate to highly complex technologies, and therefore the Court *must* construe these two terms.   *See* Apple Inc.'s Responsive Claim Construction Brief ("Apple Resp. Br.") at 4, 8.   However, in its Opening Brief, Apple argued that terms, like "field class" and "action processor" are not complex, and therefore, do not require construction.   *See, e.g.*, Apple Inc.'s Opening Claim Construction Brief ("Apple Br.") at 4, 6, 10, 16, 21.   The mere fact that the '087 patent relates to complex technology does not mean that its claim terms must be construed.   *See UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, No. C-04-1268, 2006 WL 825460, at *1 (N.D. Cal. Mar. 30, 2006) (declining to construe terms well known to those skilled in the art despite the complexity of the art).   Instead, the question is whether the claims and the specification provide enough information so that a juror can understand the term in the context of the claim.   *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001).   Apple confuses the complexity of the '087 specification with what is actually defined in the claims.   The '087 claims define "N" as a positive integer and "non-scheduled transmission" as the transmission of data in non-scheduled mode using non-scheduled transmission information indicating possible TTIs.   Therefore, neither term needs to be construed.

### A. Non-Scheduled Transmission (NST)

| Samsung's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| No construction necessary. | Transmission of uplink data by the UE without using scheduling assignment information sent by the base station. |

The '087 claims state that "non-scheduled transmission information" (NSTI) is used to perform a "non-scheduled transmission" (NST).  Apple proposed for construction NST, not NSTI.  However, in order to save its flawed construction for NST, Apple confuses the two terms and misrepresents both the patent and Samsung's position.

#### 1. Apple Ignores the Realities of Samsung's Invention

To understand the '087 Patent, it is important to understand the history of the invention. Scheduled transmissions (STs) and scheduling assignment information (SAI) were added to the E-DCH portion of the 3GPP standard first.  The '087 inventors built upon this framework to add NSTs and NSTI.  To be clear, the '087 inventors did not *eliminate*, as Apple suggests, STs or SAI.  *See* Apple Resp. Br. at 3.  Instead, the '087 patent discloses that the user equipment (UE) continues to receive both the SAI and NSTI, and the UE continues to perform both STs and NSTs.

An important benefit of Samsung's invention is that the NSTI *enables* the UE to send information without using a SAI every time it sends data.  *See* '087 Patent at 3:23-34.  This streamlines the process so that the UE can send information quickly.  When the UE sends STs, the UE will use the SAI like it did before.  *See id*. at 12:19-36.  When the UE sends NSTs, the UE will use NSTI, but the UE may also use SAI marginally or not at all.  Nothing in the '087 patent prohibits the UE from using the SAI.  In fact, the '087 specification makes clear that the UE will inevitably continue to use the SAI, such as the data rate.  *See id*. at 6:41-44.  The fatal flaw with Apple's construction is that it tries to define a NST by what it does *not* use, instead of what *it does use*.  The best way to define an NST is by the NST's use of the NSTI, not the absence of an SAI.

### 2.   Apple's Construction Ignores the Preferred Embodiments

The '087 Patent consistently states that the UE receives both the SAI and the NSTI.[1]  The patent never states that NSTs *eliminate* the SAI.   To support its flawed construction, Apple misquotes two sentences in the '087 patent:

> The UE **enables** non-scheduled transmission (referred to as non-scheduled transmission) for transmitting uplink data through the E-DCH **without using scheduling assignment information**.  The non-scheduled transmission can quickly transmit E-DCH data **by omitting a series of processes** for sending scheduling information from the UE to the Node B and receiving scheduling assignment information from the Node B.

'087 Patent at 3:23-30 (emphasis added).   Apple conveniently takes the phrase "without using scheduling assignment information" out of context.   *See* Apple Resp. Br. at 3.   When read in its entirety, it is clear that the phrase Apple relies on does not characterize the invention as forbidding the use of the SAI.   In fact, the patent says the opposite: the UE may use SAI, such as the data rate, to perform NSTs.   *See* '087 Patent at Claims 4, 6, 12, 14, and 37 (illustrating that NSTs utilize a data rate); *see also id*. at 6:41-44 ("[a]ccording to the Node B controlled scheduling, non-scheduled transmission is possible at a data rate within a predetermined limit").[2]

By way of further proof that Apple's construction improperly reads out the preferred embodiment, claims 27 and 34 state that the receiver can receive *both* the SAI and the NSTI.  *Id*. at claims 27 and 34.   Since the UE receives both the SAI and the NSTI, the SAI is available to the UE when it performs a NST.   Since the NST in claim 1 is the same as the NST in claims 27 and 34, it is incorrect to exclude the use of the SAI from claim 1.   By reading out the preferred embodiments, Apple's construction violates one of the basic canons of claim construction.   *MBO*

---

[1] Apple misrepresents Samsung's position by stating that Samsung contends "that [NSTI] can include [SAI]."   Apple Resp. Br. at 4.   Samsung does not contend and the specification does not support that the NSTI *includes* the SAI.   Using the SAI does not mean the NSTI includes the SAI.  Apple's misrepresentation stems from its own confusion regarding the '087 invention.

[2] Apple incorrectly relies on the background of the patent to argue that "additional signaling" is used instead of the SAI to control the data rate for NSTs.   *See* Apple Br. at 6.   However, this additional signaling is the precise *problem* the '087 inventors solved in their invention.   *See* '087 Patent at 3:53–4:16.

*Labs, Inc. v. Bectron, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever correct." (citation omitted)).   If the Court determines a construction is necessary, the Court should adopt a construction that is consistent with its use throughout the patent, which is a transmission of data using non-scheduled transmission information indicating possible TTIs.   *See, e.g.*, '087 Patent at claim 1.

### 3. "Non" in "Non-Scheduled Transmission" Means Not Scheduled Mode

Apple does not refute, and essentially concedes, that in order to find a negative limitation, there must be a "clear and unmistakable disclaimer."   Apple Resp. Br. at 5.   The cases that Apple cites all permit negative limitations because the intrinsic evidence contained a "clear and unmistakable disclaimer" to support such a construction.   The problem with Apple's construction, however, is that it goes well beyond what is supported by the intrinsic evidence.   ***First***, Apple admits that some scheduling is still required to transmit data in non-scheduled mode.   *See* Apple Resp. Br. at 2 ("[Node B] identifies a limited number of time slots (within a recurring set of time slots) when the UE may send non-scheduled transmissions to the Node B").   Apple's proposed construction eliminates the scheduling that even Apple admits is necessary for NSTs.   ***Second***, the prefix "non" just means that the non-scheduled transmission is <u>not</u> *the scheduled transmission mode*.   It does not mean the transmission is not a ST *and* cannot use SAI.   *See Microthin.com, Inc. v. SiliconeZone USA, LLC*, 615 F. Supp. 2d 754, 759-60 (N.D. Ill. 2009) (refusing to read into the term "non-slip" a requirement of also being non-stick because the non-stick limitation was described only in the preferred embodiment and not as a claim limitation), *aff'd*, 377 F. App'x 8 (Fed. Cir. 2010).   Even *In re Google Litigation*, the case Apple cites to support its flawed construction, only holds that "non" creates a negative limitation *for the exact phrase that follows*. *See In re Google Litig.*, No. C-08-03172 RMW, 2011 U.S. Dist. LEXIS 98469, at *20 (N.D. Cal. Aug. 31, 2011) (construing the term "non-semantical method" as "a method of analysis that is based on direct relationships between textual objects that otherwise does not account for phrases and words [i.e., *semantics*] in a textual object").

**B.   N**

| Samsung's Proposed Construction | Apple's Proposed Construction |
|---|---|
| No construction necessary. | A non-scheduled transmission parameter, expressed in units of TTIs and denoting the total number of TTIs in a non-scheduled transmission period, that is determined at the base station and transferred to the User Equipment UE [sic] |

Apple's construction for "N" illustrates the lengths Apple will go to rewrite the claims to create non-infringement arguments. Apple's construction for "N" requires the Court to take a simple term that is taught in every introductory algebra course and construe this term in direct violation of bedrock claim construction principles. There is nothing ambiguous about the term "N" or the '087 patent's use of the term "N." In fact, by arguing for such a construction, Apple contradicts its own statements that "claim construction is not an exercise in substituting different words for clear claim language, particularly when [] the constructions would actually change the meaning and scope of the claims." Apple Br. at 1-2.

### 1.   Apple's Construction Reads Out the Preferred Embodiments

Apple's construction improperly reads out, and in fact contradicts, the preferred embodiments. *See MBO Labs.*, 474 F.3d at 1333. ***First***, Apple's construction imposes the limitation that N must be "determined at the base station." This construction is in direct contradiction to the preferred embodiments that state, in no uncertain terms, that the Radio Network Controller ("RNC") can send the non-scheduled transmission parameters to the UE. *See* '087 Patent at 11:44-48 ("In FIG. 8, a receiver of the UE receives, from the RNC, non-scheduled transmission parameters . . . ."); *see also id.* at 11:34-36 ("A [RNC] transmitter sends the determined non-scheduled transmission parameters 703 to the Node B and each UE through signaling."); *id.* at 8:26-27 ("the RNC sends non-scheduled transmission parameters"). ***Second***, Apple's construction ignores the embodiments that disclose that a UE can receive a bit map of "N" bits instead of non-scheduled transmission parameters to determine the possible non-scheduled transmission time intervals:

> The RNC can give notification of information to be used to determine the possible non-scheduled transmission time intervals <u>*or*</u> can directly give notification of the set possible [*sic*] non-scheduled transmission time intervals using a bit map.

'087 Patent at 8:30-34 (emphasis added).  Since dependent claim 2 requires a bit map, independent claim 1 must be broad enough to include the bit map limitation imposed by claim 2.  *See Alcon Research, Ltd.*, *v. Apotex Inc.*, 687 F.3d 1362, 1367 (Fed. Cir. 2012).  Apple's construction, therefore, improperly limits N to only the embodiments that disclose non-scheduled transmission parameters and reads out the embodiments that disclose transmitting a bit map.

### 2. Apple's Construction Adds Unsupported Limitations

Apple seeks to redefine the claims by improperly adding new limitations.  Apple admits its construction adds the limitation of "***how*** 'N' is communicated to the UE."  Apple Resp. Br. at 8.  The fact is, to Apple's chagrin, the independent asserted claims only require that the UE receive non-scheduled transmission information; they are not limited by *how* the non-scheduled transmission information is communicated to the UE.  Therefore, it is improper for Apple to redraft the '087 Applicants' claims to inject this extra language.  *Laryngeal Mask Co Ltd. v. Ambu A/S*, 618 F.3d 1367, 1371-73 (Fed. Cir. 2010) (holding it is improper to import limitations from the specification into broad claim language where the claim gave no mention of "how" a certain feature operates).  The only justification for adding such an unsupported limitation is that one of Apple's non-infringement arguments hinges on this additional limitation.  Such a justification is improper.  *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006) (holding that a court may not add limitations to a claim to exclude specific features of the accused product to reach a preconceived judgment of non-infringement).

## III. U.S. PATENT NO. 7,577,757

### A. Zone Specific Storage and Interface Device

| Samsung's Proposed Construction | Apple's Proposed Construction |
|---|---|
| a storage and interface device associated with a particular viewing and/or listening zone | a device fixed in a room, or similar bounded location, for multimedia playback |

### 1. Apple's Construction is Unjustified Because There Is No Clear Disavowal Of Claim Scope

Samsung's Opening Brief established that a "zone specific storage and interface device" is "a storage and interface device associated with a particular viewing and/or listening zone." Apple, on the other hand, attempts to limit the scope of this term to a "device fixed in a room, or similar bounded location, for multimedia playback." Apple essentially argues that the '757 inventors disclaimed portable zone devices and limited the claims to fixed zone devices. But to limit the claims in this way would "require a waiver of claim scope that is both so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." *Dealertrack v. Huber*, 674 F.3d 1315, 1322 (Fed. Cir. 2012) (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) (internal quotations omitted)). Nothing in the '757 claim language, specification or prosecution history states, much less unmistakably and unambiguously requires that, a "zone specific storage and interface device" is fixed. For this reason alone, Apple's construction should be rejected.

### 2. Apple's Construction is Based on an Unsupported Definition of "Zone" And Ignores Preferred Embodiments

Apple's construction is also incorrect because it is predicated on an improper definition for the term "zone." Under Apple's view, a "zone" is an area that is fixed. But there is no support for this restrictive definition of "zone" in the intrinsic or extrinsic record. One of ordinary skill in the art would understand that a "zone" is an area that can move. For example, a portable radio creates a listening zone that moves with the radio. Thus, a "zone" in the context of the '757 patent is an area that a user may view or listen to multimedia content from a particular storage and interface device (*i.e.*, "zone specific storage and interface device") that may move or be fixed.[3]

Under Apple's flawed view, a "zone" and a "zone specific storage and interface device" are unrelated, and a room (or similar bounded location) is a "zone" regardless of whether there is a

---

[3] Apple complains that Samsung's proposal is improper because it does not construe the term "zone." Samsung did not construe "zone" as part of its construction of "zone specific storage and interface device" because the term "zone" is introduced earlier in claim 1 and it was not selected by either party for construction.

"zone specific storage and interface device" associated with it.  This understanding does not comport with the specification which provides that the consumer can "be situated at anyone of the zones and access substantially identical audio, video, and photographic information."  *See* '757 Patent at 4:32-34.  If you are in a room but cannot access your multimedia content, you are not in a "zone."  On the other hand, if you are in an unbounded area (*e.g.*, a patio) and can access your multimedia content, you are in a "zone."

Apple's construction also fails to capture the "portable" and "mobile" embodiments disclosed throughout the specification.[4]  Apple's misunderstanding of the term "zone" causes it to express surprise that "there is ***no example*** in the '757 specification of a zone specific storage and interface device that serves multiple zones simultaneously or that can move between zones." (emphasis in original).  Of course there is no such example.  Each zone specific storage and interface device serves just one zone (*i.e.*, it is "specific" to that zone), and if the device is "portable" or "mobile," the associated zone moves with it.

Apple contends that its construction does not read out the mobile preferred embodiments because those devices are captured in dependent claims.  Specifically, Apple argues that "zone specific storage and interface device" should be read to exclude mobile devices because claim 13 provides that such a zone device may be "coupled to a "wireless mobile device."  (Apple Resp. Br. at 11).  However, nothing in claim 13 precludes the zone device from being mobile in addition to the "wireless mobile device."  Furthermore, merely being coupled to a device is not equivalent to being able to synchronize with that device, and the specification describes that "car and other mobile devices can also synchronize over wired or wireless connections."  *See* '757 Patent at 9:36-38.  There is no basis to conclude that mobile devices that are capable of synchronizing with a central storage and interface device cannot be "zone specific storage and interface devices" as described in claim 1.

---

[4]  Apple turns Samsung's construction on its head by contending that it allows a zone device to "be 'associated with' an unlimited number of zones, and therefore need not be 'specific' to any zone." (Apple Resp. Br. at 12).  This interpretation wrongly reads out the word "particular" from Samsung's construction, and fails to appreciate that the zone specific device is what allows for the viewing and/or listening zone, not four arbitrary walls.

1  IV.     **U.S. PATENT NO. 5,579,239**

2       Apple's constructions for the two means-plus-function terms in the '239 patent are fatally
3  flawed because they seek to import a long list of limitations that are not clearly linked to the
4  claimed functions.   This approach has been squarely rejected by the Federal Circuit.   *Wenger*
5  *Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001).   Apple also
6  complains that Samsung modified its constructions.   Samsung merely clarified its constructions in
7  an effort both to compromise with Apple where possible, and to ensure that its constructions
8  accurately reflects the '239 specification and controlling legal standards.

9       A.     **Means for Capturing, Digitizing, and Compressing at Least one Composite Signal**
10

| Samsung's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Agreed function: capturing, digitizing, and compressing at least one composite signal. | Agreed function: capturing, digitizing, and compressing at least one composite signal. |
| Corresponding structure: A video and/or audio capture module, and equivalents. | Corresponding structure: An audio card, a video card having a video capture module, and a video capture software package, such as Video for Windows software, using the software sequence set forth at 2:63-3:3, 4:39-63, 5:4-6:23, and 6:62-7:14. |

17              **1.     The Proper Corresponding Structure is a "Module" Not a "Card"**

18       Apple argues that the corresponding structure for "means for capturing, digitizing, and
19  compressing" is limited to "an audio card, a video card having a video capture module, and a
20  video capture software package" using a specific software sequence.   Apple's proposal
21  completely ignores disclosure in the '239 patent that undermines its argument.

22       In its Opening Brief, Samsung described how independent claim 9, a non-means-plus-
23  function claim, provides the corresponding structure for this means-plus-function term.   Samsung
24  Br. at 18-19.   That claim, which is part of the specification, discloses a "video capture module to
25  capture, digitize and, compress said composite signal."   *See* '239 Patent at claim 9; *Merck & Co.,*
26  *Inc. v. Teva Pharm. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003); *In re Hayes MicroComputer*
27  *Prods., Inc. Patent Litig.*, 982 F.2d 1527, 1543 (Fed. Cir. 1992).   Because claim 9 unmistakably
28  identifies the "video capture module" as the structure that performs the agreed function of

1  "capturing, digitizing, and compressing at least one composite signal," the "video capture module"
2  is proper corresponding structure.   Tellingly, Apple completely ignores Samsung's argument with
3  respect to claim 9 in its Response Brief.
4      The prosecution history confirms that the "video capture module" and not the "video
5  capture card" is the structure that performs the function of "capturing, digitizing, and compressing
6  the composite signal."   Following an Examiner Interview, the Applicant amended claims 19
7  (now, claim 15) to "delete reference to a video capture card *leaving reference to a video capture*
8  *module*.   Likewise, claim 12 [now claim 9, discussed above] [was] amended in the same fashion
9  in order to delete reference to a 'video capture card.'"   Ex. J, '239 File History at
10 SAMNDCA630-00832644.   This amendment appeared as follows.

> 12.   (Twice Amended)   An apparatus for transmission of data from a remote location to a host location, comprising:
>
> a remote unit capable of receiving a composite signal;
>
> said remote unit being a [personal] computer, including:
>
>   a.)   a video [card having a video] capture module to capture, <u>digitize and compress</u>[, and digitize] said composite signal into a data file;

18 *Id*. at SAMNDCA630-00832634.   The Examiner allowed the claims immediately after this
19 amendment.   *Id*. at SAMNDCA630-00832646-647.   This amendment leaves no doubt that the
20 "video capture module," not the "video capture card," is the structure that performs the function of
21 "capturing, digitizing, and compressing the composite signal."
22      Apple also cannot escape the fact that dependent claims 5 and 6, which limit claim 1 to a
23 "capture device," and the doctrine of claim differentiation *require* the construction to be broader
24 than a video and audio card.   The cases Apple cites are inapposite.   *Anderson Corp. v. Fiber*
25 *Composites, LLC.*, 474 F.3d 1361 (Fed. Cir. 2007) and *Retractable Techs., Inc. v. Becton,*
26 *Dickinson & Co.*, 653 F.3d 1296, 1304-1305 (Fed. Cir. 2011) do not address a situation where the
27 dependent claim was broader than the purported structure, as is the case with Apple's proposed
28 construction.   Claims 5 and 6 require the means for capturing, digitizing, and compressing in

independent claim 1 encompass "capture devices."  Because "devices" are broader than "cards," Apple's proposed construction is improper.

### 2. Software is Not a Required Structure

As explained above, claim 9 and the related prosecution history makes it clear that the "capture module" captures, digitizes, and compresses.  But even if the corresponding structure did include software, as Apple contends, Apple's proposed construction incorporates software algorithms far beyond the any software structure that is required to perform the claimed function.[5] *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1257-58 (Fed. Cir. 1999) (finding error where the district court incorporated structure beyond that necessary to perform the claimed functions.)  Indeed, Apple never explains how the detailed algorithm steps it seeks to incorporate into the structure are even remotely related to the claimed function.

Apple's reliance on *Business Objects, S.A. v. MicroStrategy, Inc.* is misplaced because, in that case, not only was the query engine means completely implemented by an algorithm, but the algorithm the plaintiff sought to exclude was explicitly recited in the claimed function.  393 F.3d 1366 (Fed. Cir. 2005).  Apple also misstates Samsung's argument with regard to *Aristocrat*, which also involved a general purpose processor.  *Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008).  Unlike in *Aristocrat*, the '239 patent claims a specific "capture module" to perform the claimed function.

Apple also misleadingly suggests that Samsung identified software algorithms as corresponding structure in its Joint Claim Construction Statement.  Apple Resp. Br. at 16.  Samsung never took the position that those portions of the specification were corresponding structure, and indeed many of those portions are not even software sequences.  Patent L.R. 4-2

---

[5] Apple's proposed algorithm structure should not be incorporated into the structure for "capturing, digitizing, and compressing at least one composite signal" for at least the following reasons:  2:63-3, 4:39-48, and 5:4-7 are not software sequences, and support Samsung's construction that the "capture module" performs the claimed function; 4:50-61, 5:8-6:8, 6:14-23, and 6:62-714 relate to functions other than "capturing, digitizing, and compressing"; 4:62-63 and 6:9-14 do nothing more than repeat the claimed function and therefore provides no additional structure.

requires the parties to identify *all* references from the specification that support its proposed construction. Those sections of the specification demonstrate that the "capture module" is the structure performing the *claimed* functions while it describes alternative, unclaimed functions.[6]

### 3. A Composite Signal is Video and/or Audio

Apple's own citations to the file history belie Apple's argument that the structure *must* contain audio and video components. The office action states "[w]ith regard to *the present invention*, the composite signal which is captured by the remote unit *may have* both audio and video components." Apple Resp. Br. at 20. This statement makes clear that the composite signal *may* be (1) an audio signal; (2) a video signal; or (3) an audio and video signal. Finally, there is no evidence that claim 4 was an error, as suggested by Apple.

### B. Means for Transmitting the Composite Signal

| Samsung's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| Agreed function: transmitting the composite signal. Corresponding structure: One or more cellular telephone transmitters, radio frequency transmitters, telemetric frequency transmitters and/or standard telephone line transmitters, and equivalents. | Agreed function: transmitting the composite signal. Corresponding structure: One or more modems connected to a corresponding number of cellular telephones or telephone lines and the run-time module of a communications software package, such as ProComm Plus for Windows software, using the software sequence set forth at 3:8-14, 6:36-61, 7:24-33, 7:60-10:2. |

### 1. Apple Improperly Narrows the Construction to Cover *only* Cellular Telephones with Modems

Apple's leading citations demonstrate why a modem is not a necessary part of the structure for means for transmitting. Apple's Response Brief describes an interface and modem, but none of the citations mention the transmitting function *until* the specification discusses "telephone lines, cellular, radio and other telemetric frequencies." '239 patent at 8:61-9:2, Apple Resp. Br. at 23.

---

[6] Apple also argues that Samsung originally included "associated software" in its construction. As indicated in its Opening Brief, Samsung clarified its construction. Samsung is not contending that the "capture module" must be implemented *solely* in hardware. Indeed, the claimed functions may be implemented using hardware, firmware, software, or a combination of those, so long as it is implemented with the "capture module," as required by the specification.

1  Thus, the modem is not linked to the transmitting function.[7]

2  Apple claims that the specification does not literally use the words a "cellular telephone
3  transmitter," "telemetric frequency transmitter," or "standard telephone line transmitter."
4  However, the specification discloses all of these means for transmission, and makes clear that it is
5  the transmitter portion of each of these components that *transmits*:  "Files may be *transmitted*
6  using telephone lines, cellular, radio, and other telemetric frequencies . . . ."  '239 patent at 9:25-
7  26 (emphasis added.)   Apple's claim that the term "transmitter" would render the claim indefinite
8  is a last ditch effort to save its narrow construction.   Indeed, each and every one of these
9  transmission methods must have a transmitter, as described above, or it could not transmit.   It is
10 the transmitter portion of the device *that transmits*.   '239 patent at 9:25-37.

11 Apple also criticizes the phrase "other telemetric frequency."   Apple does not dispute that
12 the specification explicitly discloses "other telemetric frequencies," because it cannot.   Apple
13 cites to *Ergo Licensing, LLC v. Carefusion 303, Inc.* to argue that only corresponding structure
14 "described in the specification" should be included in the structure.   673 F.3d 1361, 1364 (Fed.
15 Cir. 2012).   In that case, Ergo argued that a "control device" was synonymous with a computer,
16 which was not disclosed.   Here, there is no dispute that the specification and the dependent claims
17 clearly disclose *and claim* "other telemetric frequencies."   '239 patent at 9:25-37; Claim 3.
18 Moreover, not only did the Applicant explain what "other telemetric frequencies" are in the file
19 history as Apple admits, the Examiner accepted and agreed with the Applicant's arguments.   Ex. J
20 at SAMNDCA630-00832611 (withdrawing 112 rejections).   To find that these are not within the
21 structure for "means for transmitting" would be clear error.

### 2. The Algorithm Included in Apple's Proposed Construction is Not Part of the Claimed Function

The '239 patent specification does not require software to transmit the composite signal.
But even if it did, it would not require the detailed software algorithms Apple incorporates into its

---

[7]  Even if the Court agrees with Apple that some sort of interface is necessary, it should not be restricted to modems because the specification discloses "computer interfaces *such as* modems." '239 patent at 8:38-41.

1  proposed construction.  For example, Apple points to the specification at 8:30-34.  This portion
2  of the specification is not describing the process of "transmission" but rather is describing
3  unclaimed functions that are performed *prior to* transmission, such as obtaining and splitting a
4  stored file. '239 patent at 8:28-29.

5  As discussed in Samsung's Opening Brief, the algorithm that Apple points to has nothing
6  to do with the process of "transmitting."[8]  Although Apple cites to *Noah Systems, Inc. v. Intuit,*
7  *Inc.*, this case is inapposite.  The inquiry in *Noah Systems* was whether the specification disclosed
8  *any* structure that performs the function associated with the limitation at issue.  675 F.3d 1302,
9  1311 (Fed. Cir. 2012).  The same is true in *Cardiac Pacemakers*.  There, the dispute once again
10 was whether there was any corresponding structure, and the Court found that there was not.
11 *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 296 F.3d 1106, 1118-19 (Fed. Cir. 2002).
12 Here the specification clearly discloses the mechanisms of transmitting via telephone lines,
13 cellular, radio, and other telemetric frequency transmitters.  '239 patent at 9:25-26.

14 Apple makes no attempt to justify its inclusion of algorithms that have nothing to do with
15 the claimed transmitting function.  Instead, Apple argues that algorithms performing other
16 functions can be included, but that is not the law.  Apple cites to *Engineered Prods. Co. v.*
17 *Donaldson Co.* to justify its improper construction.  In that case, the Court ruled that a "flange"
18 performed the claimed function, and also performed another function *as it was performing* the
19 claimed function.  147 F. App'x 979, 985 (Fed. Cir. 2005.)  But Apple's cited algorithms
20 perform complete and distinct functions.  The algorithms in Apple's construction are not needed
21 to transmit the composite signal.  In fact, some of the functions are separately claimed in both the

---

[8] Apple's proposed algorithm structure should not be incorporated into the structure for "transmitting the composite signal" for at least the following reasons:  3:8-14, 6:36-40, 8:13-22, 6:41-61, 7:60-8:6, 8:23-60, 9:66-10:2 are unrelated to the claimed function, and instead relate to dependant claim 4, precluded by claim 7 that permits 1 interface only, and precluded by 7:60-8:6 that states more than one interface is just one disclosed embodiment (*see also* Ex. J, SAMNDCA630-00832640 ("Additionally, the data file *may be split* into pieces . . . ."); 7:24-33 is unrelated to the claimed function, and instead relates to dependent claim 18; 8:7-13, 8:61-9:24 is unrelated to the claimed function; 8:61-9:24 is precluded by the disclosure at 9:25-45 that describes other possible methods of transmission; 9:25-10:2 is not a software sequence.

1  independent and dependent claims.

2  Apple also does not, and cannot, explain away the fact that the claims themselves, and the
3  doctrine of claim differentiation, precludes the algorithm it cites from being incorporated into the
4  "means for transmitting the composite signal." For example, claim 4 states:

> 4. An apparatus according to claim 3 further including means for splitting and organizing the digitized, compressed audio and/or video prior to transmission.[9]

7  '239 patent at 13:23-25.  Apple's proposed construction of "means for transmitting" also includes
8  the algorithm that is claimed in the dependent claim 4 function "means for splitting and organizing
9  . . . ." *See, e.g.*, *id.* at 3:8-14, 6:36-40, 8:13-22, 6:41-61, 7:60-8:6, 8:23-60, 9:66-10:2.  In this
10 case, "splitting and organizing" is the only difference between claims 3 and 4.  Therefore, Apple's
11 proposed construction makes claim 4 entirely redundant if those limitations are improperly read
12 into claim 1.  The doctrine of claim differentiation "is clearly applicable when there is a dispute
13 over whether a limitation found in a dependent claim should be read into an independent claim,
14 and that limitation is the only meaningful difference between the two claims."  *Wenger Mfg.*, 239
15 F.3d at 1233.

16 Moreover, claim 4 makes it clear that these algorithmic functions that Apple includes in its
17 construction are part of functions performed *before* the function of "transmitting the composite
18 signal." (*See* "means for splitting and organizing . . . *prior to* transmission.")  Since the only
19 "transmission" discussed in the claims is the "means for transmitting," these functions *necessarily*
20 must occur *before* the means for transmitting.

21 **V.     CONCLUSION**

22 Samsung therefore respectfully requests that the Court adopt its proposed constructions.

---

[9] Claim 4 depends from claim 3, which depends from claim 1.

1  DATED: February 8, 2013                QUINN EMANUEL URQUHART &
2                                          SULLIVAN, LLP
3
4                                          By */s/ Victoria F. Maroulis*
                                              Charles K. Verhoeven
5                                             Kevin P.B. Johnson
                                              Victoria F. Maroulis
6                                             William C. Price
                                              Attorneys for SAMSUNG ELECTRONICS
7                                             CO., LTD., SAMSUNG ELECTRONICS
                                              AMERICA, INC., and SAMSUNG
8                                             TELECOMMUNICATIONS AMERICA, LLC