UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendants. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**JOINT STATUS REPORT** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Counterclaim-Plaintiffs,<br>        v.<br><br>APPLE INC., a California corporation,<br><br>                    Counterclaim-Defendant. | |

During the February 14, 2013 hearing, the Court requested that the parties meet and confer regarding whether they would agree that a stay of this litigation was appropriate pending resolution of the appeal of the parties' separate litigation in Civil Action No. 11-cv-01846-LHK (the "1846 Case"). The parties have met and conferred, and disagree on the appropriateness of a stay. Below are the parties' respective positions.

## I.     Apple's Position

There is no basis for a stay of this proceeding pending final resolution of the 1846 Case, and a stay would seriously and irreparably prejudice Apple.  Aside from the parties involved, there is essentially no overlap between Apple's patent claims in this case and the 1846 Case: the two cases involve *none* of the same patents (or even patent families), *none* of the same accused functionality, and virtually *none* of the same Samsung products.  To the extent that there is any real overlap at all, it is solely because *Samsung* chose to accuse some of the same products in both cases; but neither the law nor equities support staying Apple's claims against Samsung's new infringing products just because Samsung asserted counterclaims regarding certain overlapping products.

Indeed, in filing this case, Apple carefully selected patents and technologies that did not overlap with those at issue in the 1846 Case, and has focused on Samsung's infringing products not at issue in the 1846 Case.  Apple filed this case to stop – immediately, by way of a preliminary injunction – Samsung's *new* infringing devices, which Samsung has continued to launch despite this Court's preliminary injunction findings that Apple had shown that it was likely to succeed on infringement and validity and that Samsung's efforts to capitalize on Apple's technology during a critical time in the market would cause Apple irreparable harm.  Because those facts have not changed, and Samsung's willful infringement is continuing, this case must proceed now, in order to stop the ongoing sales – and relentless launch – of Samsung's latest infringing devices, which have caused, and every day continue to cause, continuing harm to Apple.

Given the absence of overlap between the two cases, and the severe prejudice Apple would suffer, a stay is not appropriate.  In fact, a court's discretion to stay a case is limited; courts must balance (1) simplification of issues, if any, that could result, (2) possible damage a party may suffer during a stay, and (3) any hardship a party may suffer in the absence of a stay.  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  Here, none of the factors favors a stay.

> ***A stay will not simplify the issues*** considering that the claim construction, infringement, and validity issues in this case bear virtually no relationship to those in the 1846 Case.

> ***Apple would indisputably suffer serious and unfair damage as a result of stay.***  Samsung has continued to sell and launch infringing products despite the pendency of this case and the verdict in the 1846 Case.  As this Court found, Samsung and Apple fiercely compete "for critical first-time smartphone buyers. . . whose first purchasing decisions will largely predict

1

their operating system allegiance for future purchases." (D.I. 221, at 72.)  Apple has already shown that it is likely to succeed on infringement and validity with respect to at least some of the patents in this case.  Any delay in resolution of this case will severely harm Apple.

***Samsung will suffer no hardship absent of a stay.***  Samsung has litigated this case for over a year, and until the Court broached the issue two weeks ago, Samsung never raised it.  "If there is even a fair possibility that the stay . . . will work damage to [Apple]," Samsung "must make out a clear case of hardship or inequity."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).  Samsung has identified no hardship and no inequity – because there is none.

As a result, a stay is unwarranted, and in the event Samsung moves for a stay, Apple would oppose.

**A.      A Stay Would Not Simplify the Issues in This Case**

A stay of this case pending the appeal of the 1846 Case would not simplify this case.  The Apple patents at issue in this case are from completely different families, cover different technologies, and solve different problems than those in the 1846 Case.  None of the 1846 Case appeals, therefore, will resolve any issue affecting claim construction, infringement, or validity of the patents asserted in this case.  *See LG Elecs., Inc. v. Eastman Kodak Co.,* No. 09-cv-344, 2009 WL 1468703, *4 (S.D. Cal. May 26, 2009) (denying a stay because the patents in the co-pending proceeding were unrelated and "the inventions explicitly have different goals").[1]  Further, of the 23 accused Samsung products here, only two are at issue in the 1846 Case, and the accused features of those products differ completely.  In fact, the Samsung products in this case are primarily newly released products—based on recently released versions of Android source code—that Samsung continues to sell despite findings by this Court that Samsung likely infringes Apple's patents.

Recognizing the absence of any relationship between Apple's claims here and those in the 1846 Case, during the parties' meet and confer, Samsung argued for a stay because of overlap in certain of the Apple products accused of infringing Samsung's patents and certain legal issues associated with two standards-essential patents that Samsung elected to assert among the eight Samsung patents-in-suit.  But any such overlap in *Samsung's* claims is a problem of Samsung's

---

[1]    By contrast, courts have granted stays where the co-pending case would likely implicate or dispose of critical substantive issues in the stayed case.  *See, e.g., CMAX*, 300 F.2d at 269 (the co-pending proceedings would "provide a means of developing comprehensive evidence bearing upon the highly technical … questions which are likely to arise in the district court case"); *Alzheimer's Inst. Of America v. Elan Corp. PLC*, No. C-10-482, 2011 WL 6748634, *2 (N.D. Cal. Dec. 22, 2011) (staying patent case in favor of co-pending proceeding regarding standing which was "potentially dispositive of [the] entire action").

1    making and does not warrant a stay of *Apple's* claims, which do not overlap.  Samsung also argued

2    that the 1846 Case is "related" to this action and that the parties have agreed to cross-use discovery.

3    However, the fact that the two cases involve "substantially the same parties" and "may involve part

4    of the same subject matter,"[2] says nothing about any potential simplification a stay would bring.

5    Moreover, the presence of a cross-use agreement counsels *against* a stay.  *LG Elecs.*, 2009 WL

6    1468703, at *4 (noting that any potential duplicative discovery efforts could be reduced if the parties

7    entered an agreement to cross-use discovery).  In any event, pre-trial discovery closed long ago in the

8    1846 Case, thus there is little potential for duplicative discovery.  Additionally, during the meet-and-

9    confer, Samsung asserted that in the 1846 Case appeal it may challenge Apple's ability to prove

10   infringement through "representative products."  That challenge, based on a mischaracterization of

11   the 1846 Case's factual record, says nothing about an entirely different set of patents, products, and

12   evidence; even so, Apple does not intend to demonstrate infringement of all products merely by

13   examining representative products in this case, so any such concerns are misplaced.

14          Finally, during the claim construction hearing, reference was made to the separately pending

15   "injunction" appeal at the Federal Circuit.  Notably, that appeal will most likely conclude in less than

16   a year and before the trial in this case.[3]  Thus, this case can continue on schedule, and the Court will

17   still have the benefit of any decision by the Federal Circuit clarifying the standard for a permanent

18   injunction.  Further, because the Federal Circuit will base its 1846 Case decision on the 1846 Case

19   factual record alone, the outcome of the 1846 Case appeal will not be dispositive of Apple's request

20   for an injunction or any other form of relief here.

21          In short, Samsung cannot point to any potential for simplification that supports a stay.

22   **B.    Apple Would Be Substantially Harmed by a Stay**

23          As noted above, a stay would inflict substantial harm on Apple.  This Court already found that

24   absent an injunction against Samsung's sale of just one of the accused products (the Galaxy Nexus

---

26   [2]   D.I. 003 (Apple Notice of Pendency of Other Action or Proceeding).

27   [3]   Federal Circuit statistics indicate that this appeal will be resolved in less than a year.  *See*
     http://www.cafc.uscourts.gov/images/stories/the-court/statistics/Median_Disposition_Time_

28   Table_2003-2012.pdf.

1    smartphone), Apple will likely suffer a long-term loss of market share and of downstream sales.  (D.I.

2    221 at 78.)  While the Federal Circuit held that Apple had not shown a sufficient causal nexus to

3    obtain a preliminary injunction, it did not reverse this Court's findings that Apple is suffering an

4    irrecoverable loss of market share and downstream sales.  Nor did it reverse this Court's finding that

5    (1) the smartphone market is at a "critical juncture," (2) "Apple and Samsung have established

6    themselves as fierce competitors in the smartphone market," (3) Apple's "risk of lost sales is more

7    than merely speculative or conjectural," and (4) Apple presented "compelling circumstantial

8    evidence" that it is also losing downstream sales as a result of Samsung's infringement—sales that

9    are "both long-term and difficult to calculate."  *Id.* at 2, 66, 76.

10        Any stay that would postpone the trial beyond the currently scheduled trial date will leave

11   Apple in a substantially worse position because Samsung will continue to capture first-time

12   smartphone buyers with continued sales of accused infringing products as well as sales of additional

13   newly launched infringing products.  This Court's findings in the preliminary injunction proceedings

14   are more than sufficient to establish at least a "fair possibility" that a stay would damage Apple.

15   **C.     Samsung Can Demonstrate No Cognizable Hardship if the Case Proceeds**

16        Finally, Samsung can identify no harm that it will suffer absent a stay; Samsung did not even

17   raise the issue.  To support a stay, Samsung "*must* make out a *clear case of hardship or inequity* … if

18   there is even a *fair possibility* that the stay . . . will work damage" on Apple.  *Lockyer*, 398 F.3d at

19   1112 (quoting *Landis*, 299 U.S. at 255) (emphasis added).  As this Court has already found, there is

20   much more than just a "fair possibility" of damage to Apple—there is substantial, and possibly

21   irreparable, harm.  And the only "harm" Samsung could possibly articulate is the cost of continuing

22   to litigate.  But simply "being required to defend a suit does not constitute a clear case of hardship or

23   inequity within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112 (internal quotation marks

24   omitted).  Samsung has purposefully continued to launch infringing products, and cannot now

25   complain that it must account for that infringement in a timely manner.

26        For all these reasons, the Court should not stay this action.  To the extent the Court continues

27   to consider a stay, the Court should order Samsung to file an appropriate motion so that Apple has a

28   full and fair an opportunity to brief the issue and provide all relevant evidence.

4

## II.   Samsung's Position

This Court should stay the current case, Apple v. Samsung II, pending the resolution of the appeals from this Court's post-trial orders in Apple v. Samsung I.  A stay will promote judicial economy, avoid wasting the time of the Court and the jury, and provide the parties and the Court with the benefits of the Federal Circuit's views on common legal and factual issues.  A stay will not prejudice either party.  It will also allow the parties to attempt to reach a business resolution of their disputes.  District courts have broad discretion to stay cases, especially where, as here, there are overlapping issues that will be resolved in a pending appeal.[4]

As the Court is aware, the parties entered into a cross-use stipulation providing that discovery taken in the prior action may be used as if obtained in this action.  *See* Dkt. No. 84.  That stipulation was based on a recognition by both parties that there is substantial overlap between this case and the prior case before the court.  As set forth below, this overlap counsels in favor of staying this action until the prior litigation reaches conclusion.

### A.   Utility Patent Infringement

Apple's assertion of patent claims against every possible Samsung device will create identical legal issues of trial procedure and the burden of proving patent infringement, and it will save this Court considerable time and energy to stay this case pending Samsung's appeal.  At trial in 2012, Apple asserted three utility patents against 24 Samsung products.  With only 25 hours of allotted trial time, Apple performed the required limitation-by-limitation analysis for only *one* of the accused products.  For the remaining 23 products, Apple relied only on brief demonstrative videos, and

---

[4]   *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.");  *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.") (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir.)); *Meijer, Inc. v. Abbott Laboratories*, C 07-5985 CW, 2009 WL 723882 (N.D. Cal. Mar. 18, 2009) ( finding that "[i]t would be an extraordinary waste of time and money to conduct expert discovery, entertain case-dispositive motions and proceed to trial, only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the Ninth Circuit determined did not apply."); *Zoran Corp. v. DTS, Inc.*, C 08-4655 JF (HRL), 2009 WL 160238 (N.D. Cal. Jan. 20, 2009) (staying case pending decision on common FRAND issues by different tribunal).

5

1    providing the devices to the jury.  *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-1846, Dkt.

2    No. 2013, at 13 (N.D. Cal. Oct. 2, 2012).  In denying Samsung's motion for judgment as a matter of

3    law, the Court found Apple's presentation sufficient to meet its burden.  *See id.*, Dkt. No. 2220, at 15.

4    Samsung intends to appeal this ruling.

5          The current case foreshadows an identical issue of trial procedure.  Currently, Apple is

6    asserting numerous claims from eight utility patents against 24 Samsung products—including some

7    of the same products at issue in the first litigation.  Dkt. No. 380.[5]  Even with significant narrowing

8    after the Claim Construction Order, Apple will be unable to meet its burden of proving infringement

9    without resorting to the same improper "representative product" strategy.  *See L&W, Inc. v. Shertech,*

10   *Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006).  Indeed, the current case schedule provides less time for

11   Apple to put on its infringement case.

12         Staying the instant case, in expectation of Federal Circuit guidance on the propriety of

13   Apple's trial strategy, will save judicial resources by allowing the Court and the parties to focus on

14   the most important claims and products at issue.[6]  Alternatively, if Apple intends to attempt proof of

15   infringement against all the Samsung products currently in suit, the trial date could be rescheduled to

16   accommodate the scale of the case Apple intends to prosecute.

17   **B.     Standards Disclosure, FRAND, and Antitrust**

18         Apple's counterclaims regarding disclosure of essential IPR to ETSI, FRAND licensing,

19   antitrust, and exhaustion, implicate identical legal issues with the previous case, and further merit a

20   stay.  In both cases, Samsung asserts two declared essential UMTS patents.  The jury found that

21   Samsung had not breached any contractual obligations it might owe to ETSI or its members, either by

22   failing to timely disclose IPR during the creation of the UMTS standard, or by failing to uphold its

---

23      [5]  Apple articulates one argument against the stay: the lack of overlap of patents, products, and

24   claim construction positions between the prior and the current actions.  Apple is incorrect as to
     products: not only do both actions concern smartphones and tablets generally, but at least 4 Samsung

25   products and at least 5 Apple products are accused in both cases.  The fact that the asserted patents
     have different patent numbers is beside the point because the overarching legal issues here support a

26   stay.  Finally, Apple's attempt to portray the prior action as a "design" case is unavailing.  In that
     case, Apple asserted 8 utility patents just as it does here.

27      [6]  Separately, the '647 patent is currently subject to reexamination and an appeal to the Federal

28   Circuit in the *Apple v Motorola* action, further supporting the stay as to that patent.

1  commitment to license its declared-essential portfolio on FRAND terms.  Further, the jury rejected

2  Apple's claim that Samsung had violated Section Two of the Sherman Act.  Finally, the Court

3  overturned the jury's finding of exhaustion.  Apple will likely appeal these issues.[7]

4  Although the facts differ slightly from the previous case to the instant, Apple's standards-

5  based theories are built on identical legal frameworks and implicate numerous overlapping legal

6  issues.  For example, Apple claims rely on: whether inventors and standards-meetings participants

7  have a duty to disclose IPR during 3GPP working group meetings; whether 3GPP members have a

8  duty to disclose non-public patent applications; what the appropriate framework for determining a

9  FRAND rate is; whether and to what extent declared-essential patents may be enforced when Apple

10 rejected Samsung's offer to license and refused to engage in meaningful negotiation; whether

11 antitrust markets may be properly defined by reference to a single declared-essential patent; and

12 whether exhaustion applies to events occurring outside the U.S. under expired or otherwise

13 inapplicable contracts.  Staying this case until the Federal Circuit decides these issues will allow the

14 Court to approach this case with a settled legal framework and appropriately deal with the preclusive

15 effects of the previous case.

16 **C.    Remedies**

17 Staying the action would permit appellate review of the Court's March 1, 2013 Order re:

18 Damages in N.D. Cal. I.  *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-1846, Dkt. No. 2271

19 (N.D. Cal. Mar. 1, 2013).  While Apple's interrogatory responses are woefully deficient, it is clear

20 that as to at least one patent in this action, Apple intends to claim notice required by 35 USC §287(a)

21 was provided at the same August 4, 2010 meeting that Apple relied on in the prior action.  *See id.* at

22 15, 17; Apple's Responses to Samsung's First Set of Interrogatories at 8 (referring to "August 2010

23 meeting" as providing notice as to the '647 patent, providing no substantive response as to six other

24

25    [7]  In addition, given the number of cases involving FRAND issues that are currently or likely to
26 soon be on appeal to the Federal Circuit (*see e.g. Microsoft Corp. v. Motorola Inc.*, Case No. 10-cv-
1823 (W.D. Wash.); *Apple Inc. v. Motorola Inc.*, Case No. 11-cv-178 (W.D. Wis. ); *Motorola Inc. v.*
27 *Apple Inc.* (ITC Investigation No. 337-TA-745); *Samsung v. Apple Inc.* (ITC Investigation No. 337-
TA-794)), it is likely that the Federal Circuit will clarify the law relating to FRAND commitments in
28 a way that could be significant here.

7

Apple patents asserted).  If Apple intends to rely on that August 2010 meeting as a basis for notice on the other 7 patents it is asserting, it should tell the Court now.  To the extent that Apple intends to appeal the portion of the March 1, 2013 Order addressing notice, the resolution of that appeal is critical to the calculation of damages in this action if Apple intends to assert that notice was given at the August 4, 2010 meeting.

Finally, a stay is unlikely to have any significant negative impact on the parties' claims for injunctive relief.  Given that trial is already set two years from the filing date, any incremental delay resulting from a stay is unlikely to materially alter the effectiveness of an injunction.  Additionally, the parties' Motions for Judgment as a Matter of Law in *Apple v. Samsung I* have now been adjudicated, and stand ready for appellate review as appropriate.

In summary, the stay is both warranted and will not prejudice either party.

1

2   Dated:  March 7, 2013                                    GIBSON, DUNN & CRUTCHER LLP

3

4                                                            By:   /s/   H. Mark Lyon
                                                                    H. Mark Lyon
5
                                                            **Attorneys for Plaintiff Apple Inc.**
6

7

8                                                            QUINN EMANUEL URQUHART &
     Dated:  March 7, 2013                                   SULLIVAN LLP
9

10

11                                                           By:   /s/ Victoria Maroulis
                                                                    Victoria Maroulis, with permission
12
                                                            **Attorneys for Defendants Samsung**
13                                                          **Electronics Co., Ltd., Samsung Electronics**
                                                            **America, Inc., and Samsung**
14                                                          **Telecommunications America, LLC**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATUS REPORT
CASE NO. 12-CV-00630-LHK (PSG)

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on March 7, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

Dated: March 7, 2013                                    By: _/s/ H. Mark Lyon_