# EXHIBIT 6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Patrick M. Shields (Bar No. 204739)
patrickshields@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** |

1  Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Samsung

2  Electronics, Co. Ltd., Samsung Telecommunications America, LLC and Samsung Electronics

3  America, Inc., (collectively "Samsung") request that Plaintiff Apple Inc. ("Apple") produce for

4  inspection and copying the documents and things set forth below at the offices of Quinn Emanuel

5  Urquhart & Sullivan, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017,

6  within 30 days.

7  **DEFINITIONS**

8  1.  The terms "APPLE," "PLAINTIFF," "YOU," and "YOUR" shall refer to Apple,

9  Inc., any predecessor or successor of Apple, Inc., and any past or present parent, division,

10  subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee,

11  consultant, staff member, or other representative of Apple, Inc., including counsel and patent

12  agents, in any country.

13  2.  The term "DEFENDANTS" or "SAMSUNG" means Samsung Electronics Co.,

14  Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

15  3.  The terms "DOCUMENT" and "DOCUMENTS" shall have the broadest meaning

16  ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.   This

17  includes copies which differ from the original in any way, including handwritten notations or other

18  written or printed matter.   It also includes information stored electronically, whether in a

19  computer database or otherwise, regardless of whether such documents are presently also in non-

20  electronic form.

21  4.  "COMMUNICATION," in the plural as well as the singular, means any transmittal

22  and/or receipt of information, whether such was oral or written, and whether such was by chance,

23  prearranged, formal or informal, and specifically includes, but is not limited to, conversations in

24  person, telephone conversations, electronic mail (including instant messages and text messages),

25  voicemail, letters, memoranda, statements, media releases, magazine and newspaper articles, and

26  video and audio transmissions.

27  5.  The term "RELATING TO " or "RELATED TO" shall mean regarding, referring

28  to, concerning, mentioning, reflecting, pertaining to, evidencing, identifying, involving,

describing, discussing, commenting on, embodying, responding to, supporting, contradicting, containing, or constituting (in whole or in part).

6.      The term "APPLE PATENTS" shall mean U.S. Patent Nos. 5,666,502, 5,946,647, 6,847,959, 7,761,414, 8,014,760, 8,046,721, 8,074,172, 8,086,604, and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents.

7.      "PRIOR ART" shall mean any reference, publication, patent, physical specimen, use, invention by another, sale, offer for sale, or other activities that are relevant to the validity of the APPLE PATENTS including anything that is relevant to the patentability of any patent claim under 35 U.S.C. §§ 102 and 103.   Prior Art is not limited to references or other activities cited to the United States Patent and Trademark Office during prosecution of any patent.

8.      "APPLE'S EXPERTS" shall mean Christopher Vellturo, Todd Mowry, Nathaniel Polish, Ravin Balakrishnan, Karan Singh, and any other expert witnesses retained for purposes of this case by APPLE.

9.      "This Lawsuit" shall mean the action captioned, *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 12-CV-00630-LHK (N.D. Cal.).

10.      "IDC" shall mean International Data Corporation.

11.      "GARTNER" shall mean Gartner, Inc.

12.      "PATENTED FEATURES" shall refer to the alleged inventions claimed by the APPLE PATENTS and their commercial embodiments.

13.      "PLATFORM STICKINESS" shall mean the theory that a consumer's first purchase of a smartphone exerts substantial influence over subsequent purchases, locking in a preference for the first-chosen platform long into the future as alleged in APPLE's motion for a preliminary injunction.

14.      "WAIS" shall mean the Wide Area Information Servers system developed by APPLE, Thinking Machines Corporation, and others.

15.     The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

16.     The word "each" includes the word "every," and the word "every" includes the word "each," as necessary, to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

17.     The word "any" includes the word "all," and the word "all" includes the word "any," as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

18.     The word "all" includes the word "each," and the word "each" includes the word "all," as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

19.     The use of the singular form of any word includes the plural and vice-versa, as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

## **INSTRUCTIONS**

1.     Each DOCUMENT is to be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction.

2.     All DOCUMENTS shall be produced in the order that they are kept in the usual course of business, and shall be produced in their original folders, binders, covers or containers, or photocopies thereof.

3.     In the event that any DOCUMENT called for by these requests or subsequent requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that DOCUMENT is to be identified by stating (i) the author(s), addressee(s) and any indicated or blind copyee(s); (ii) the DOCUMENT's date, number of pages and attachments or appendices; (iii) the subject matter(s) of the DOCUMENT; (iv) the nature of the privilege or immunity

1  asserted; and (v) any additional facts on which you would base your claim of privilege or

2  immunity.[1]

3      4.      These Requests for Production shall be deemed continuing so as to require further

4  and supplemental production in accordance with the Federal Rules of Civil Procedure.

5      5.      To the extent these Requests for Production encompass documents or things

6  produced in response to SAMSUNG's preliminary injunction discovery requests, such documents

7  or things need not be produced again in response to these Requests for Production.

8  **REQUESTS FOR PRODUCTION**

9

10  **REQUEST FOR PRODUCTION NO. 54:**

11      All contracts and agreements between APPLE and each named inventor for each of the

12  APPLE PATENTS.

13

14  **REQUEST FOR PRODUCTION NO. 55:**

15      All DOCUMENTS, including notes and workbooks, prepared or used during the design

16  and development of APPLE PATENTS including, but not limited to, documentation of software

17  design and pattern development and/or selection, any software used or diagrams or files, and any

18  notes or documentation of the implementation of the software design or patterns into compilable

19  code or instructions.

20

21  **REQUEST FOR PRODUCTION NO. 56:**

22      All DOCUMENTS RELATING TO the conception and reduction to practice of the

23  APPLE PATENTS.

24

25  _____

26  [1]    Provided the parties reach an agreement that neither party needs to log documents and

27  information generated after the start of this Lawsuit on February 8, 2012, this Instruction applies
    only to privileged information and documents generated before the start of litigation.

28

1    **REQUEST FOR PRODUCTION NO. 57:**

2       All DOCUMENTS sufficient to identify the individuals, including but not limited to

3    named inventors, who contributed to the conception of the alleged inventions of the APPLE

4    PATENTS.

5

6    **REQUEST FOR PRODUCTION NO. 58:**

7       All COMMUNICATIONS between YOU and any other person, including, but not limited

8    to, the inventors of the APPLE PATENTS, concerning the APPLE PATENTS, any products

9    accused of infringing the APPLE PATENTS, any products that embody the APPLE PATENTS, or

10   This Lawsuit.

11

12   **REQUEST FOR PRODUCTION NO. 59:**

13      All DOCUMENTS RELATING TO the scope, construction, meaning or interpretation of

14   the APPLE PATENTS.

15

16   **REQUEST FOR PRODUCTION NO. 60:**

17      All DOCUMENTS RELATING TO design arounds or alternatives to the APPLE

18   PATENTS.

19

20   **REQUEST FOR PRODUCTION NO. 61:**

21      All transcripts of testimony given at a deposition, hearing, trial, or other proceeding

22   RELATING TO the APPLE PATENTS, including expert testimony and testimony provided by

23   any alleged inventors of the APPLE PATENTS.

24

25   **REQUEST FOR PRODUCTION NO. 62:**

26      All PRIOR ART known to APPLE RELATING TO the APPLE PATENTS, including all

27   PRIOR ART cited or identified by other individuals or companies.

28

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS RELATING TO the prosecution of the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS sufficient to identify every foreign counterpart patent application to the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 65:**

The prosecution history for every foreign counterpart patent application to the APPLE PATENTS, including any English translations.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS RELATING TO the prosecution of every foreign counterpart patent application to the APPLE PATENTS, including any English translations.

**REQUEST FOR PRODUCTION NO. 67:**

Each item of PRIOR ART cited in the prosecution history for every foreign counterpart patent application to the APPLE PATENTS, including any English translations.

**REQUEST FOR PRODUCTION NO. 68:**

All DOCUMENTS considered or relied on by APPLE'S EXPERTS in their declarations submitted in This Lawsuit.

**REQUEST FOR PRODUCTION NO. 69:**

All prior expert reports and declarations submitted by APPLE'S EXPERTS in other litigations involving utility patent infringement.

1  **REQUEST FOR PRODUCTION NO. 70:**

2      All trial and deposition transcripts from other litigations in which APPLE'S EXPERTS

3  testified.

4

5  **REQUEST FOR PRODUCTION NO. 71:**

6      All DOCUMENTS from any prior or current litigation or dispute RELATING TO

7  infringement, validity, enforceability, or ownership of the APPLE PATENTS and any foreign

8  counterparts to the APPLE PATENTS.

9

10  **REQUEST FOR PRODUCTION NO. 72:**

11      All DOCUMENTS RELATING TO prior enforcement of the APPLE PATENTS or any

12  foreign counterparts to the APPLE PATENTS.

13

14  **REQUEST FOR PRODUCTION NO. 73:**

15      All DOCUMENTS RELATING TO other manufacturers' practice of the APPLE

16  PATENTS.

17

18  **REQUEST FOR PRODUCTION NO. 74:**

19      All customer survey and market research DOCUMENTS RELATING TO the

20  PATENTED FEATURES.

21

22  **REQUEST FOR PRODUCTION NO. 75:**

23      All DOCUMENTS RELATING TO competition and market share of APPLE versus

24  SAMSUNG or other competitors.

25

26  **REQUEST FOR PRODUCTION NO. 76:**

27      All DOCUMENTS RELATING TO competition and market share of iOS versus Android

28  and/or other operating systems.

**REQUEST FOR PRODUCTION NO. 77:**

All DOCUMENTS RELATING TO APPLE'S contention that any SAMSUNG product has taken or will take APPLE market share.

**REQUEST FOR PRODUCTION NO. 78:**

All DOCUMENTS RELATING TO APPLE'S contention that any SAMSUNG product will cause APPLE to lose non-smartphone customers.

**REQUEST FOR PRODUCTION NO. 79:**

All DOCUMENTS RELATING TO APPLE'S contention that it will not be able to regain any market share allegedly lost as a result of the sale of any SAMSUNG product.

**REQUEST FOR PRODUCTION NO. 80:**

All DOCUMENTS RELATING TO APPLE'S contention that purchasers of any SAMSUNG product are less likely to buy an iPhone, iPad or other APPLE products in the future.

**REQUEST FOR PRODUCTION NO. 81:**

All DOCUMENTS RELATING TO APPLE'S contention that customers buy the iPhone and any SAMSUNG product because of the PATENTED FEATURES.

**REQUEST FOR PRODUCTION NO. 82:**

All DOCUMENTS RELATING TO APPLE'S contention that the PATENTED FEATURES are core functionalities of any SAMSUNG product.

**REQUEST FOR PRODUCTION NO. 83:**

All DOCUMENTS RELATING TO APPLE'S contention that any SAMSUNG product will erode the distinctiveness and goodwill associated with APPLE'S products.

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS RELATING TO competition between each version of the iPhone and any product YOU accuse of infringing the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 85:**

All DOCUMENTS RELATING TO competition between each version of the iPhone and any other product.

**REQUEST FOR PRODUCTION NO. 86:**

All DOCUMENTS RELATING TO competition between each version of the iPad and any other product.

**REQUEST FOR PRODUCTION NO. 87:**

All DOCUMENTS sufficient to identify the respective markets of each version of the iPhone and the iPad.

**REQUEST FOR PRODUCTION NO. 88:**

All DOCUMENTS sufficient to identify the respective market shares of each version of the iPhone and the iPad.

**REQUEST FOR PRODUCTION NO. 89:**

All DOCUMENTS sufficient to identify the respective market share of each product that competes with the iPhone or the iPad.

**REQUEST FOR PRODUCTION NO. 90:**

All DOCUMENTS sufficient to identify all projections YOU have reviewed or considered as to what the respective market share of the iPhone and iPad, and each product that competes with the iPhone or the iPad, are likely to be at any future point.

**REQUEST FOR PRODUCTION NO. 91:**

All DOCUMENTS RELATING TO any COMMUNICATIONS with third-parties relating to the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 92:**

All DOCUMENTS RELATING TO licenses, covenants not to sue, or the granting of any rights relating to the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 93:**

All DOCUMENTS considered or relied on by any individual in their declarations submitted in support of any motions or other papers served or filed in This Lawsuit by APPLE.

**REQUEST FOR PRODUCTION NO. 94:**

All DOCUMENTS RELATING TO APPLE advertisements depicting the PATENTED FEATURES.

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS RELATING TO the valuation of APPLE'S goodwill and the effect SAMSUNG has had on that goodwill.

**REQUEST FOR PRODUCTION NO. 96:**

All DOCUMENTS RELATING TO APPLE'S contention that any SAMSUNG product will harm APPLE'S "ecosystem."

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS RELATING TO APPLE'S contention that it has suffered damages as a result of SAMSUNG'S alleged infringement of the APPLE PATENTS, including without limitation DOCUMENTS RELATING TO the amount of any such damages.

1   **REQUEST FOR PRODUCTION NO. 98:**

2       All DOCUMENTS RELATING TO APPLE'S contention that it is owed at least a

3   reasonable royalty as a result of SAMSUNG'S alleged infringement of the APPLE PATENTS,

4   including without limitation DOCUMENTS RELATING TO the royalty rate and royalty base

5   APPLE alleges should be used to calculate such reasonable royalty damages.

6

7   **REQUEST FOR PRODUCTION NO. 99:**

8       All DOCUMENTS RELATING TO any royalties received by APPLE for licensing or

9   otherwise conveying any right to practice any of the APPLE PATENTS.

10

11  **REQUEST FOR PRODUCTION NO. 100:**

12      All DOCUMENTS RELATING TO any policies or practices of APPLE RELATING TO

13  licensing any of the APPLE PATENTS.

14

15  **REQUEST FOR PRODUCTION NO. 101:**

16      All DOCUMENTS sufficient to determine, on a month-by-month basis, the income

17  received by APPLE RELATING TO the sale of any products embodying any of the APPLE

18  PATENTS, including DOCUMENTS sufficient to determine APPLE's units sold, gross revenue,

19  net revenue, fixed costs, overhead, variable costs, gross margin, net margin, gross profit, and net

20  profit for each embodying product.

21

22  **REQUEST FOR PRODUCTION NO. 102:**

23      All DOCUMENTS RELATING TO APPLE'S contention that it is owed lost profits

24  damages as a result of SAMSUNG'S alleged infringement of the APPLE PATENTS, including

25  without limitation DOCUMENTS RELATING TO the amount of any lost profits allegedly owed

26  to APPLE.

27

28

Case No. 12-CV-00630-LHK
SAMSUNG'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 103:**

All DOCUMENTS RELATING TO settlement of any litigation or other adversarial proceeding RELATING TO any of the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 104:**

All DOCUMENTS RELATING TO any alleged irreparable harm suffered by APPLE as a result of SAMSUNG's alleged infringement of any APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 105:**

All DOCUMENTS RELATING TO any effect on the public from sales of SAMSUNG products alleged to infringe any APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 106:**

All DOCUMENTS RELATING TO any long felt but unresolved needs allegedly met by the inventions claimed in the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 107:**

All DOCUMENTS RELATING TO any failure by others to develop the inventions claimed in the APPLE PATENTS or the PATENTED FEATURES.

**REQUEST FOR PRODUCTION NO. 108:**

All DOCUMENTS RELATING TO any skepticism expressed by experts RELATING TO the inventions claimed in the APPLE PATENTS or the PATENTED FEATURES.

**REQUEST FOR PRODUCTION NO. 109:**

All DOCUMENTS RELATING TO any praise for the inventions claimed in the APPLE PATENTS or the PATENTED FEATURES.

1  **REQUEST FOR PRODUCTION NO. 110:**

2  　　　All DOCUMENTS RELATING TO YOUR contention that SAMSUNG's alleged

3  infringement of any of the APPLE PATENTS has been willful.

4

5  **REQUEST FOR PRODUCTION NO. 111:**

6  　　　All DOCUMENTS RELATING TO YOUR contention that SAMSUNG induced others to

7  infringe any APPLE PATENTS.

8

9  **REQUEST FOR PRODUCTION NO. 112:**

10  　　　All DOCUMENTS RELATING TO YOUR contention that SAMSUNG contributed to the

11  infringement of any APPLE PATENTS by others.

12

13  **REQUEST FOR PRODUCTION NO. 113:**

14  　　　All DOCUMENTS RELATING TO the ownership and/or transfer or ownership of any

15  APPLE PATENTS.

16

17  **REQUEST FOR PRODUCTION NO. 114:**

18  　　　All DOCUMENTS sufficient to determine APPLE's organizational structure, including

19  without limitation the identity of all departments, groups, and formal or informal organizations

20  involved in the design, development, manufacture, marketing, or sale of the APPLE PATENTS or

21  any commercial embodiments of the APPLE PATENTS.

22

23  **REQUEST FOR PRODUCTION NO. 115:**

24  　　　All DOCUMENTS RELATING TO APPLE's document retention or destruction policies

25  since 2006.

26

27

28

**REQUEST FOR PRODUCTION NO. 116:**

All DOCUMENTS RELATING TO multi-touch control of touch-sensitive input devices from *Elan Microelectronics Corp. v. Apple Inc.*, No. C-09-01531 RS (N.D. Cal.) and *Certain Electronic Devices with Multi-Touch Enabled Touchpads and Touchscrens*, U.S.I.T.C. Inv. No. 337-TA-714.

**REQUEST FOR PRODUCTION NO. 117:**

All DOCUMENTS RELATING TO the proportion of smartphone consumers who will buy their first smartphone by the end of 2014.

**REQUEST FOR PRODUCTION NO. 118:**

All DOCUMENTS RELATING TO APPLE's allegations regarding PLATFORM STICKINESS in the smartphone or tablet markets.

**REQUEST FOR PRODUCTION NO. 119:**

All DOCUMENTS RELATING TO PLATFORM STICKINESS for iPhone purchasers.

**REQUEST FOR PRODUCTION NO. 120:**

All DOCUMENTS RELATING TO PLATFORM STICKINESS for iPad purchasers.

**REQUEST FOR PRODUCTION NO. 121:**

All DOCUMENTS RELATING TO PLATFORM STICKINESS for iPod Touch purchasers.

**REQUEST FOR PRODUCTION NO. 122:**

All DOCUMENTS RELATING TO PLATFORM STICKINESS for purchasers of SAMSUNG smartphones or tablets.

**REQUEST FOR PRODUCTION NO. 123**:

All DOCUMENTS RELATING TO any relationship between PLATFORM STICKINESS and PATENTED FEATURES.

**REQUEST FOR PRODUCTION NO. 124**:

All DOCUMENTS RELATING TO consumer loyalty to APPLE.

**REQUEST FOR PRODUCTION NO. 125**:

All DOCUMENTS RELATING TO consumer loyalty to SAMSUNG.

**REQUEST FOR PRODUCTION NO. 126**:

All DOCUMENTS RELATING TO YOUR contention that the smartphone market is at a "critical juncture."

**REQUEST FOR PRODUCTION NO. 127**:

All DOCUMENTS RELATING TO the role of iPhone sales in the sale of other APPLE products, including without limitation iPads, iPods, MacBooks, and Apple TV devices.

**REQUEST FOR PRODUCTION NO. 128**:

All DOCUMENTS RELATING TO APPLE's decision not to make iTunes available on Android devices.

**REQUEST FOR PRODUCTION NO. 129**:

All DOCUMENTS RELATING TO any efforts by APPLE to promote PLATFORM STICKINESS for APPLE products.

DATED: April 12, 2012

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By/s/ Patrick M. Shields
      Patrick M. Shields
      Attorney for SAMSUNG ELECTRONICS CO.,
      LTD., SAMSUNG ELECTRONICS AMERICA,
      INC., and SAMSUNG
      TELECOMMUNICATIONS AMERICA, LLC

SAMSUNG'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

# EXHIBIT 7

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Patrick M. Shields (Bar No. 204739)
patrickshields@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC. and
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

STEPTOE & JOHNSON, LLP
John Caracappa (*pro hac vice*)
jcaracappa@steptoe.com
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 429-6267
Facsimile: (202) 429-3902

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG'S SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Samsung Electronics, Co. Ltd., Samsung Telecommunications America, LLC and Samsung Electronics America, Inc., (collectively "Samsung") request that Plaintiff Apple Inc. ("Apple") produce for inspection and copying the documents and things set forth below at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017, within 30 days.

**<u>DEFINITIONS</u>**

1.     The terms "APPLE," "PLAINTIFF," "YOU," and "YOUR" shall refer to Apple, Inc., any predecessor or successor of Apple, Inc., and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, or other representative of Apple, Inc., including counsel and patent agents, in any country.

2.     The term "DEFENDANTS" or "SAMSUNG" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

3.     The term "THIS LAWSUIT" shall mean the action captioned, *Apple, Inc. v. Samsung Electronics Co., Ltd.,* Case No. 12-CV-00630-LHK (N.D. Cal.).

4.     The terms "DOCUMENT" and "DOCUMENTS" shall have the broadest meaning ascribed to them by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.   This includes copies which differ from the original in any way, including handwritten notations or other written or printed matter.   It also includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently also in non-electronic form.

5.     "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and specifically includes, but is not limited to, conversations in person, telephone conversations, electronic mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, magazine and newspaper articles, and video and audio transmissions.

6.     The term "RELATING TO " or "RELATED TO" shall mean regarding, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, identifying, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, containing, or constituting (in whole or in part).

7.     The term "APPLE PATENTS" shall mean U.S. Patent Nos. 5,666,502, 5,946,647, 6,847,959, 7,761,414, 8,014,760, 8,046,721, 8,074,172, 8,086,604, and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents.

8.     "NAMED INVENTORS" shall mean the persons named as inventors on any of the APPLE PATENTS.

9.     "PRIOR ART" shall mean any reference, publication, patent, physical specimen, use, invention by another, sale, offer for sale, or other activities that are relevant to the validity of the APPLE PATENT including anything that is relevant to the patentability of any patent claim under 35 U.S.C. §§ 102 and 103. Prior Art is not limited to references or other activities cited to the United States Patent and Trademark Office during prosecution of any patent.

10.    "PATENTED FEATURES" shall refer to the alleged inventions claimed by the APPLE PATENTS and their commercial embodiments.

11.    As used herein, the term "NEXT" refers to Next, Inc..

12.    As used herein, the term "OS X" refers to the operating system developed by APPLE designed to run on Macintosh computers, also referred to as Mac OS X or Hera, Kodiak, Cheetah, Puma, Jaguar, Panther, Tiger, Leopard, Snow Leopard, Leopard, Lion, and Mountain Lion.

13.    As used herein, the term "OS X AUTOCOMPLETE" refers to the feature available in OS X applications, wherein a user activating the Escape key, or the Option and Escape keys simultaneously, activates a pop-up menu of word choices.

14.    The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

15.     The word "each" includes the word "every," and the word "every" includes the word "each," as necessary, to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

16.     The word "any" includes the word "all," and the word "all" includes the word "any," as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

17.     The word "all" includes the word "each," and the word "each" includes the word "all," as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

18.     The use of the singular form of any word includes the plural and vice-versa, as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

## **INSTRUCTIONS**

1.     Each DOCUMENT is to be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction.

2.     All DOCUMENTS shall be produced in the order that they are kept in the usual course of business, and shall be produced in their original folders, binders, covers or containers, or photocopies thereof.

3.     In the event that any DOCUMENT called for by these requests or subsequent requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that DOCUMENT is to be identified by stating (i) the author(s), addressee(s) and any indicated or blind copyee(s); (ii) the DOCUMENT's date, number of pages and attachments or appendices; (iii) the subject matter(s) of the DOCUMENT; (iv) the nature of the privilege or immunity asserted; and (v) any additional facts on which you would base your claim of privilege or immunity.

4.     These Requests for Production shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

1      5.      To the extent these Requests for Production encompass documents or things

2  produced in response to SAMSUNG's preliminary injunction discovery requests, such documents

3  or things need not be produced again in response to these Requests for Production.

4

5                          **REQUESTS FOR PRODUCTION**

6

7  **REQUEST FOR PRODUCTION NO. 262:**

8      All DOCUMENTS RELATING TO any affidavit or declaration ever signed, served, or

9  filed in any proceeding by any NAMED INVENTOR or prosecutor of the APPLE PATENTS at

10 any time, where any part of the affidavit or declaration relates to any of the APPLE PATENTS

11 and/or the subject matter disclosed or claimed in any of the APPLE PATENTS.

12

13 **REQUEST FOR PRODUCTION NO. 263:**

14     All DOCUMENTS RELATING TO the retention and/or participation of any NAMED

15 INVENTOR as a consultant, expert, or witness in any proceeding concerning any of the APPLE

16 PATENTS.

17

18 **REQUEST FOR PRODUCTION NO. 264:**

19     All DOCUMENTS RELATING TO any APPLE guidelines, policies, protocols, or

20 practices for inventor or employee innovation or invention compensation.

21

22 **REQUEST FOR PRODUCTION NO. 265:**

23     All DOCUMENTS RELATING TO any payment or other form of compensation or

24 remuneration made by APPLE or anyone acting on its behalf to any NAMED INVENTOR in

25 connection with each of the APPLE PATENTS, including without limitation documents sufficient

26 to identify the form of such payment, the amount of such payment, the date such payment was

27 made, the identity of each person with knowledge of such payment, and the reason for such

28 payment.

**REQUEST FOR PRODUCTION NO. 266**:

All DOCUMENTS RELATING TO any payment or other form of compensation or remuneration made by APPLE or anyone acting on its behalf to any NAMED INVENTOR in connection with his or her involvement in THIS LAWSUIT, including without limitation documents sufficient to identify the form of such payment, the amount of such payment, the date such payment was made, the identity of each person with knowledge of such payment, and the reason for such payment.

**REQUEST FOR PRODUCTION NO. 267**:

All DOCUMENTS RELATING TO writings, publications, abstracts, papers, presentations, memoranda, reports, or speeches authored or given by or for APPLE or any of the NAMED INVENTORS RELATING TO the subject matter disclosed or claimed in any of the APPLE PATENTS and authored or given prior to the filing date of the relevant APPLE PATENT.

**REQUEST FOR PRODUCTION NO. 268**:

All DOCUMENTS RELATING TO publications, abstracts, papers, presentations, or speeches authored RELATING TO the subject matter disclosed or claimed in any of the APPLE PATENTS and authored prior to the filing date of the relevant APPLE PATENT.

**REQUEST FOR PRODUCTION NO. 269**:

All DOCUMENTS RELATING TO technical or scientific writings that were authored by, contributed to, or given in whole or in part by APPLE or any of the NAMED INVENTORS RELATING TO the subject matter of any of the APPLE PATENTS and authored, contributed to, or given prior to the filing date of the relevant APPLE PATENT, including, without limitation, patents, patent applications, articles, abstracts, publications, manuscripts, papers, posters, presentations, speeches, technical disclosures, or APPLE internal technical publications.

**REQUEST FOR PRODUCTION NO. 270:**

All DOCUMENTS RELATING TO APPLE's decision to seek patent protection for the subject matter of any claim of any APPLE PATENT.

**REQUEST FOR PRODUCTION NO. 271:**

All DOCUMENTS RELATING TO any decision as to what reference(s) to cite, or to not cite during the prosecution of each of the APPLE PATENTS and any foreign counterparts thereto, including without limitation all prior art search results.

**REQUEST FOR PRODUCTION NO. 272:**

All DOCUMENTS RELATING TO any prior art, or possible prior art, to the subject matter of any claim of any of the APPLE PATENTS. This includes without limitation documents or information RELATING TO patents, publications, prior knowledge, public uses, sales, or offers for sale.

**REQUEST FOR PRODUCTION NO. 273:**

All DOCUMENTS RELATING TO any evaluation, analysis, or review of any prior art RELATING TO any of the APPLE PATENTS or any foreign counterparts thereto, including without limitation any documents that refer to any prior art RELATING TO any of the APPLE PATENTS or any foreign counterparts thereto.

**REQUEST FOR PRODUCTION NO. 274:**

All DOCUMENTS RELATING TO any search for or investigation of any prior art or other information, regarding the patentability, validity, enforceability, or scope of the subject matter of any claim of each of the APPLE PATENTS and any foreign counterpart thereto.

1 **REQUEST FOR PRODUCTION NO. 275:**

2        All DOCUMENTS RELATING TO any COMMUNICATION, meeting, or contact with

3 the U.S. Patent and Trademark Office or any foreign patent office RELATING TO each of the

4 APPLE PATENTS or any foreign counterparts thereto.

5

6 **REQUEST FOR PRODUCTION NO. 276:**

7        All DOCUMENTS on which APPLE intends to rely in support of any proposed

8 interpretation and/or construction of any claims of any of the APPLE PATENTS.

9

10 **REQUEST FOR PRODUCTION NO. 277:**

11        All DOCUMENTS RELATING TO any unique or specialized meaning (i.e., different

12 from its everyday common use) of any word or phrase contained in any claim of any of the

13 APPLE PATENTS.

14

15 **REQUEST FOR PRODUCTION NO. 278:**

16        All DOCUMENTS RELATING TO the level of ordinary skill in the art to which the

17 subject matter of any of the APPLE PATENTS pertains, including without limitation each

18 document upon which APPLE intends to rely in THIS LAWSUIT to attempt to establish the level

19 of ordinary skill in the art.

20

21 **REQUEST FOR PRODUCTION NO. 279:**

22        All DOCUMENTS RELATING TO any written description of any claim of any APPLE

23 PATENT, including without limitation all invention disclosures or invention reports and other

24 written descriptions authored by any of the NAMED INVENTORS.

25

26

27

28

**REQUEST FOR PRODUCTION NO. 280:**

All DOCUMENTS RELATING TO the first disclosure to a person (whether employed by APPLE or not), other than a NAMED INVENTOR, of the subject matter of any claim of any of the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 281:**

For each of the APPLE PATENTS, all DOCUMENTS RELATING TO any disclosure or publication of the subject matter of any claim of such patent sent to, shared with, or disseminated to any person or entity other than APPLE before the filing date of such patent, including without limitation any pre-filing date sales, offers for sale, public uses, demonstrations, announcements, advertisements, or publications.

**REQUEST FOR PRODUCTION NO. 282:**

All DOCUMENTS RELATING TO the first public disclosure, first public use, first public demonstration, first offer for sale, and/or first sale of the subject matter claimed in any claim of the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 283:**

All DOCUMENTS RELATING TO any notice given by APPLE to SAMSUNG about any APPLE PATENT, including without limitation any notice reflecting APPLE's contention that SAMSUNG was or is infringing any APPLE PATENT. This request includes without limitation any COMMUNICATIONS between the parties or their representatives on the issue of such notice or on the issue of alleged infringement.

**REQUEST FOR PRODUCTION NO. 284:**

All DOCUMENTS RELATING TO plans, suggestions, decisions, discussions, or contemplated action regarding the bringing or institution of this or any action for alleged patent infringement against SAMSUNG, including without limitation all corporate minutes and all other

DOCUMENTS and things concerning meetings of the Board of Directors, Executive Committee, other board committees, stockholders or any other of SAMSUNG's corporate boards, committees, or subcommittees.

**REQUEST FOR PRODUCTION NO. 285:**

All DOCUMENTS produced or made available to APPLE by any non-party or third-party in this Litigation.

**REQUEST FOR PRODUCTION NO. 286:**

All DOCUMENTS RELATING TO APPLE's decision to mark or not to mark any product with the numbers of any of the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 287:**

All DOCUMENTS and things RELATING TO any marking of any product with any of the numbers of any of the APPLE PATENTS.

**REQUEST FOR PRODUCTION NO. 288:**

All DOCUMENTS and things produced in response to any subpoena in connection with this case.

**REQUEST FOR PRODUCTION NO. 289:**

All DOCUMENTS including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides sufficient to show the design, structure and functionality of any OS X AUTOCOMPLETE feature available in or with Mac OS X, and any similar feature found in any earlier operating systems developed by APPLE and/or NEXT.

**REQUEST FOR PRODUCTION NO. 290**:

All DOCUMENTS sufficient to identify any persons involved in development of the OS X AUTOCOMPLETE feature available in or with Mac OS X, and any similar feature found in any earlier operating systems developed by APPLE and/or NEXT.

**REQUEST FOR PRODUCTION NO. 291**:

All DOCUMENTS including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides sufficient to show the design, structure and functionality of any spell checking feature available in or with Mac OS X, and any similar feature found in any earlier operating systems developed by APPLE and/or NEXT.

**REQUEST FOR PRODUCTION NO. 292**:

All DOCUMENTS sufficient to identify any persons involved in development of the OS X spell checking feature available in or with Mac OS X, and any similar feature found in any earlier operating systems developed by APPLE and/or NEXT.

**REQUEST FOR PRODUCTION NO. 293**:

All DOCUMENTS, including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides RELATING TO APPLE's iSync software.

**REQUEST FOR PRODUCTION NO. 294**:

All DOCUMENTS, including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides RELATING TO synchronization functionality, including but not limited to the synchronization feature in APPLE's iTunes software.

**REQUEST FOR PRODUCTION NO. 295:**

All DOCUMENTS, including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides RELATING TO search functionality, including but not limited to the "Find" feature in Apple Newton version 2.0.

**REQUEST FOR PRODUCTION NO. 296:**

All DOCUMENTS including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides sufficient to show the design, structure and functionality of any alleged implementation of the PATENTED FEATURES of U.S. Patent No. 5,666,502 in any Apple Newton device.

**REQUEST FOR PRODUCTION NO. 297:**

All DOCUMENTS including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides sufficient to show the design, structure and functionality of the Sherlock search feature that was released as part of Mac OS 8.5.

**REQUEST FOR PRODUCTION NO. 298:**

All DOCUMENTS including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides sufficient to show the design, structure and functionality of any "Recent" button or menu available as part of the user interface in Mac OS 8.5.

**REQUEST FOR PRODUCTION NO. 299:**

All DOCUMENTS including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides sufficient

1  to show the design, structure and functionality of any speech recognition feature available in or

2  with Mac OS 8.5.

3

4  DATED: September 25, 2012           QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
5

6

7                                      By  /s/ Patrick M. Shields
                                       _____
8                                          Charles K. Verhoeven
                                           Kevin P.B. Johnson
9                                          Victoria F. Maroulis
                                           William C. Price
10                                         Patrick M. Shields

11                                         John Caracappa (*pro hac vice*)
                                           Steptoe & Johnson, LLP
12                                         1330 Connecticut Avenue, NW
                                           Washington DC 20036
13                                         TEL:   202-429-6267
                                           FAX:   202-429-3902
14
                                           Attorneys for Defendants
15                                         SAMSUNG ELECTRONICS CO., LTD.,
                                           SAMSUNG ELECTRONICS AMERICA, INC.,
16                                         and SAMSUNG TELECOMMUNICATIONS
                                           AMERICA, LLC
17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 8

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC. and
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

STEPTOE & JOHNSON, LLP
John Caracappa (*pro hac vice*)
jcaracappa@steptoe.com
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 429-6267
Facsimile: (202) 429-3902

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG'S ELEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 594-647)** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Samsung Electronics, Co. Ltd., Samsung Telecommunications America, LLC and Samsung Electronics America, Inc., (collectively "Samsung") request that Plaintiff Apple Inc. ("Apple") produce for inspection and copying the documents and things set forth below at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017, within 30 days.

**<u>DEFINITIONS</u>**

1.      The terms "APPLE," "PLAINTIFF," "YOU," and "YOUR" shall refer to Apple, Inc., any predecessor or successor of Apple, Inc., and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, or other representative of Apple, Inc., including counsel and patent agents, in any country.

2.      The term "BOOMERANG" means all versions of the Boomerang software developed by Hiro Yamamoto and/or Zeta Soft, including but not limited to Boomerang 1.0, Boomerang 2.0, Boomerang 2.1, "Super Boomerang" and the software referred to on pages 52 and 53 of Saul Greenberg, *The Computer User as Toolsmith: The Use, Reuse, and Organization of Computer-Based Tools* (attached as Exhibit 1).

3.      The term "DEFENDANTS" or "SAMSUNG" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

4.      "This Lawsuit" shall mean the action captioned, *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 12-CV-00630-LHK (N.D. Cal.).

5.      The term "'087 PATENT" shall mean U.S. Patent No. 7,756,087 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claims the same subject matter.

6.      The term "'596 PATENT" shall mean U.S. Patent No. 7,551,596 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claims the same subject matter.

7.      The term "'239 PATENT" shall mean U.S. Patent No. 5,579,239 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claims the same subject matter.

8.      The term "'087 PATENT ACCUSED PRODUCTS" shall mean the iPhone 4, iPhone 4S, iPhone 5, iPad 2, iPad 3, iPad 4, and iPad Mini, and any other products identified in any of SAMSUNG's complaints or infringement contentions served in this action as infringing any claim of the '087 PATENT.

9.      The term "'596 PATENT ACCUSED PRODUCTS" shall mean the iPhone 4, iPhone 4S, iPhone 5, iPad 2, iPad 3, iPad 4, and iPad Mini, and any other products identified in any of SAMSUNG's complaints or infringement contentions served in this action as infringing any claim of the '596 PATENT.

10.     The term "'239 PATENT ACCUSED PRODUCTS" shall mean all Apple iPhone 4, the Apple iPhone 4S, the iPhone 5, the iPad 2, the iPad 3, the iPad 4, the iPad Mini; the iPod Touch; Macs; iMacs; Macbooks, and PCs running iTunes with cameras, and any other products identified in any of SAMSUNG's complaints or infringement contentions served in this action as infringing any claim of the '239 PATENT.

11.     The term "3GPP" shall mean the organization known as the 3rd Generation Partnership Project which specifies, develops, and promulgates technical specifications for wireless networks.

12.     The term "UMTS" shall mean the Universal Mobile Telecommunications System as developed and promulgated by 3GPP.

13.     The term "WCDMA" shall mean Wideband Code Division Multiple Access, a member of the UMTS family of standards.

14.     The term "GSM" shall means the standard known as Global System for Mobile Communications.

15.     The term "Baseband Processor" shall mean a processor in a mobile telecommunications device that is mainly used to process communication functions.

16.     The term "ETSI" shall mean the European Telecommunications Standards Institute.

17.     The term "ESSENTIAL" shall mean necessary for implementation of any mobile wireless standard, such that the standard, or some part of the standard, could not be practiced without infringing the patent or technology to which "essential" refers.

18.     The terms "DOCUMENT" and "DOCUMENTS" shall have the broadest meaning ascribed to them by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.   This includes copies which differ from the original in any way, including handwritten notations or other written or printed matter.    It also includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently also in non-electronic form.    "DOCUMENT" or "DOCUMENTS" shall include, but are not limited to, any "COMMUNICATION" as defined herein.

19.     The term "SOFTWARE" shall include source code, hardware code, machine code, assembly code, or code written in any programming language, and code that can be compiled or acted upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code.

20.     The term "EXECUTABLE SOFTWARE" shall mean computer files containing encoded instructions capable of being executed by a processing unit (e.g. central processing unit, microcontroller), and any release notes describing the features or modifications of such files. The term shall include, without limitation, firmware and executable binary files.

21.     The term "SOURCE CODE" shall mean human-readable programming language text that defines SOFTWARE, firmware, or electronic hardware descriptions.    SOURCE CODE files include, but are not limited to, files containing source in "Java," "C," "C++," assembler, VDHL, Verilog, and digital signal processor ("DSP") programming languages.    SOURCE CODE files further includes "Include" files, "make" files, link files, and other human-readable text files used in the generation and/or building of SOFTWARE directly executed on an application processor, micro-controller, or DSP.

22.     The term "Baseband Processor" shall mean a processor in a mobile telecommunications device that is mainly used to process communication functions.

SAMSUNG'S ELEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

23.     The term "PRIOR ART" shall mean any reference, publication, patent, physical specimen, use, invention by another, sale, offer for sale, or other activities that are relevant to any patent claim under 35 U.S.C. §§ 102 and 103.   Prior Art is not limited to references or other activities cited to the United States Patent and Trademark Office during prosecution of any patent.

24.     The term "WEB OBJECTS" refers to APPLE's application development environment and framework of the same name.

25.     The term "ENTERPRISE OBJECTS FRAMEWORK" refers to APPLE's database application development environment and framework of the same name.

26.     The term "MAC OSX" refers to APPLE's operating system of the same name.

27.     The term "ICAL" refers to the calendar application of the same name, developed by Apple.

28.     The term "ADDRESS BOOK" refers to the contacts application of the same name, developed by Apple.

29.     "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and specifically includes, but is not limited to, conversations in person, telephone conversations, electronic mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, magazine and newspaper articles, and video and audio transmissions.

30.     The term "RELATING TO " or "RELATED TO" shall mean regarding, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, identifying, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, containing, or constituting (in whole or in part).

31.     The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

32.     The word "each" includes the word "every," and the word "every" includes the word "each," as necessary, to bring within the scope of these requests for production all responses

1    that might otherwise be construed to be outside of their scope.

2           33.     The word "any" includes the word "all," and the word "all" includes the word

3    "any," as necessary to bring within the scope of these requests for production all responses that

4    might otherwise be construed to be outside of their scope.

5           34.     The word "all" includes the word "each," and the word "each" includes the word

6    "all," as necessary to bring within the scope of these requests for production all responses that

7    might otherwise be construed to be outside of their scope.

8           35.     The use of the singular form of any word includes the plural and vice-versa, as

9    necessary to bring within the scope of these requests for production all responses that might

10   otherwise be construed to be outside of their scope.

11                                            **<ins>INSTRUCTIONS</ins>**

12          1.      Each DOCUMENT is to be produced along with all non-identical drafts thereof in

13   their entirety, without abbreviation or redaction.

14          2.      All DOCUMENTS shall be produced in the order that they are kept in the usual

15   course of business, and shall be produced in their original folders, binders, covers or containers, or

16   photocopies thereof.

17          3.      In the event that any DOCUMENT called for by these requests or subsequent

18   requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that

19   DOCUMENT is to be identified by stating (i) the author(s), addressee(s) and any indicated or

20   blind copyee(s); (ii) the DOCUMENT's date, number of pages and attachments or appendices;

21   (iii) the subject matter(s) of the DOCUMENT; (iv) the nature of the privilege or immunity

22   asserted; and (v) any additional facts on which YOU would base YOUR claim of privilege or

23   immunity.

24          4.      These Requests for Production shall be deemed continuing so as to require further

25   and supplemental production in accordance with the Federal Rules of Civil Procedure.

26          5.      To the extent these Requests for Production encompass documents or things

27   produced in response to SAMSUNG's preliminary injunction discovery requests, such documents

28   or things need not be produced again in response to these Requests for Production.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 594:**

All DOCUMENTS and THINGS, including but not limited to SOFTWARE, EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions, instruction manuals, user guides, published articles publications, and COMMUNICATIONS relating to any and all versions of BOOMERANG.

**REQUEST FOR PRODUCTION NO. 595:**

All COMMUNICATIONS between YOU and Hiro Yamamoto prior to August 7, 1995.

**REQUEST FOR PRODUCTION NO. 596:**

All COMMUNICATIONS between YOU and Zeta Soft prior to August 7, 1995.

**REQUEST FOR PRODUCTION NO. 597**

All DOCUMENTS served by any party in the ITC Investigation, *In the Matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,* Inv. No. 337-TA-701 (*Nokia v. Apple*) RELATING TO Apple's alleged infringement of U.S. Patent No. 6,895,256 ("the '256 patent"), including without limitation any and all expert reports, infringement contentions, responses to interrogatories, and responses to requests for admissions.

**REQUEST FOR PRODUCTION NO. 598**

All DOCUMENTS filed under seal by any party in ITC Investigation, *In the Matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,* Inv. No. 337-TA-701 (*Nokia v. Apple*) RELATING TO Apple's alleged infringement of the '256 patent, including without limitation all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, stipulations, supporting declarations, and exhibits to supporting declarations filed in

1  connection with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*,

2  motions to strike, and post-trial motions.

3

4  **REQUEST FOR PRODUCTION NO. 599**

5       All depositions transcripts, trial transcripts or other DOCUMENTS containing any

6  testimony and or statements RELATING TO Apple's alleged infringement of the '256 patent in

7  the ITC Investigation, *In the Matter of Certain Electronic Devices, Including Mobile Phones,*

8  *Portable Music Players, and Computers,* Inv. No. 337-TA-701 (*Nokia v. Apple*).

9

10  **REQUEST FOR PRODUCTION NO. 600**

11       All DOCUMENTS served by any party in the ITC Investigation, *In the Matter of Certain*

12  *Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,* Inv. No.

13  337-TA-701 (*Nokia v. Apple*) RELATING TO Apple's defenses and counterclaims, including

14  without limitation any and all expert reports, invalidity contentions, responses to interrogatories,

15  and responses to requests for admission.

16

17  **REQUEST FOR PRODUCTION NO. 601**

18       All DOCUMENTS filed under seal by any party in the ITC Investigation, *In the Matter of*

19  *Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,*

20  Inv. No. 337-TA-701 (*Nokia v. Apple*) RELATING TO Apple's defenses or counterclaims,

21  including without limitation all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs,

22  stipulations, supporting declarations, and exhibits to supporting declarations filed in connection

23  and with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to

24  strike, and post-trial motions.

25

26  **REQUEST FOR PRODUCTION NO. 602**

27       All transcripts of depositions, trial transcripts or other DOCUMENTS containing

28  testimony and or RELATING TO Apple's defenses or counterclaims in the ITC Investigation, *In*

*the Matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,* Inv. No. 337-TA-701 (*Nokia v. Apple*).

**REQUEST FOR PRODUCTION NO. 603**

All DOCUMENTS prepared by any expert, including any technical, economic, marketing, licensing or damages experts, in connection with the ITC Investigation, *In the Matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,* Inv. No. 337-TA-701 (*Nokia v. Apple*) .

**REQUEST FOR PRODUCTION NO. 604**

All trial exhibits and trial demonstratives used by any party in the ITC Investigation, *In the Matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,* Inv. No. 337-TA-701 (*Nokia v. Apple*) RELATING TO Apple's alleged infringement of the '256 patent.

**REQUEST FOR PRODUCTION NO. 605**

All trial exhibits and trial demonstratives used by any part in the ITC Investigation, *In the Matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,* Inv. No. 337-TA-701 (*Nokia v. Apple*) RELATING TO Apple's defenses or counterclaims.

**REQUEST FOR PRODUCTION NO. 606**

All DOCUMENTS reflecting COMMUNICATIONS with or RELATED TO AT&T.

**REQUEST FOR PRODUCTION NO. 607**

All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO This Lawsuit.

**REQUEST FOR PRODUCTION NO. 608**

All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO the '087 PATENT.

**REQUEST FOR PRODUCTION NO. 609**

All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO the '596 PATENT.

**REQUEST FOR PRODUCTION NO. 610**

All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO the enhanced uplink dedicated channel ("E-DCH").

**REQUEST FOR PRODUCTION NO. 611**

All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO non-scheduled transmissions.

**REQUEST FOR PRODUCTION NO. 612**

All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO transmitting control information relating to uplink packet data.

**REQUEST FOR PRODUCTION NO. 613**

All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO 3GPP.

**REQUEST FOR PRODUCTION NO. 614**

All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO 3GPP Technical Specification 25.331 v. 6.0.0 or later.

1   **REQUEST FOR PRODUCTION NO. 615**

2       All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO 3GPP

3   Technical Specification 25.321 v. 6.0.0 or later.

4

5   **REQUEST FOR PRODUCTION NO. 616**

6       All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO 3GPP

7   Technical Specification 25.309 v. 6.0.0 or later.

8

9   **REQUEST FOR PRODUCTION NO. 617**

10      All COMMUNICATIONS with AT&T RELATED TO any Baseband Processor

11  incorporated or used in any '087 PATENT ACCUSED PRODUCTS.

12

13  **REQUEST FOR PRODUCTION NO. 618**

14      All COMMUNICATIONS with AT&T RELATED TO any Baseband Processor

15  incorporated or used in any '596 PATENT ACCUSED PRODUCTS.

16

17  **REQUEST FOR PRODUCTION NO. 619**

18      All DOCUMENTS reflecting COMMUNICATIONS with AT&T RELATED TO testing,

19  certification of compliance testing with 3GPP standards, and/or for compliance with a AT&T

20  3GPP compliant network, including without limitation the following documents:

21      • AT&T Device Requirements Document (AT&T Document # 13340);

22      • Handset Specification Compliance Spreadsheet (AT&T Document # 13289); and

23      • Lab and Field Test Requirements for Terminal Unit Acceptance (AT&T Document

24       # 10776)

25

26  **REQUEST FOR PRODUCTION NO. 620**

27      All DOCUMENTS served by any party in the ITC Investigation,   *In the Matter of Certain*

28  *Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and*

*Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*), including without limitation any and all expert reports, infringement contentions, responses to interrogatories, and responses to requests for admissions.

**REQUEST FOR PRODUCTION NO. 621**

All DOCUMENTS filed under seal by any party in ITC Investigation, *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*), including without limitation all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, stipulations, supporting declarations, and exhibits to supporting declarations filed in connection with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to strike, and post-trial motions.

**REQUEST FOR PRODUCTION NO. 622**

All depositions transcripts, trial transcripts or other DOCUMENTS containing any testimony and or statements RELATING TO Apple's alleged infringement of camera-related patents in the ITC Investigation, *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*).

**REQUEST FOR PRODUCTION NO. 623**

All DOCUMENTS served by any party in the ITC Investigation, *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*) RELATING TO Apple's defenses and counterclaims, including without limitation any and all expert reports, invalidity contentions, responses to interrogatories, and responses to requests for admission.

**REQUEST FOR PRODUCTION NO. 624**

All DOCUMENTS filed under seal by any party in the ITC Investigation, *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*) RELATING TO Apple's defenses or counterclaims, including without limitation all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, stipulations, supporting declarations, and exhibits to supporting declarations filed in connection and with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to strike, and post-trial motions.

**REQUEST FOR PRODUCTION NO. 625**

All transcripts of depositions, trial transcripts or other DOCUMENTS containing testimony and or RELATING TO Apple's defenses or counterclaims in the ITC Investigation, *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*).

**REQUEST FOR PRODUCTION NO. 626**

All DOCUMENTS prepared by any expert, including any technical, economic, marketing, licensing or damages experts, in connection with the ITC Investigation, *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*).

**REQUEST FOR PRODUCTION NO. 627**

All trial exhibits and trial demonstratives used by any party in the ITC Investigation, *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*).

**REQUEST FOR PRODUCTION NO. 628**

All trial exhibits and trial demonstratives used by any part in the ITC Investigation, *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof,* Inv. No. 337-TA-703 (*Kodak v. Apple et al.*) RELATING TO Apple's defenses or counterclaims.

**REQUEST FOR PRODUCTION NO. 629**

All DOCUMENTS served by any party in any litigation or ITC investigation relating to capturing, digitizing, and/or compressing image data, storing image data, transmitting image data, and/or receiving image data, including without limitation any and all expert reports, infringement contentions, responses to interrogatories, and responses to requests for admissions.

**REQUEST FOR PRODUCTION NO. 630**

All DOCUMENTS filed under seal by any party in any litigation or ITC investigation relating to capturing, digitizing, and/or compressing image data, storing image data, transmitting image data, and/or receiving image data, including without limitation all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, stipulations, supporting declarations, and exhibits to supporting declarations filed in connection with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to strike, and post-trial motions.

**REQUEST FOR PRODUCTION NO. 631**

All depositions transcripts, trial transcripts or other DOCUMENTS containing any testimony and or statements RELATING TO Apple's alleged infringement of camera-related patents in any litigation or ITC investigation relating to capturing, digitizing, and/or compressing image data, storing image data, transmitting image data, and/or receiving image data,.

**REQUEST FOR PRODUCTION NO. 632**

All DOCUMENTS served by any party in any litigation or ITC investigation relating to capturing, digitizing, and/or compressing image data, storing image data, transmitting image data, and/or receiving image data, RELATING TO Apple's defenses and counterclaims, including without limitation any and all expert reports, invalidity contentions, responses to interrogatories, and responses to requests for admission.

**REQUEST FOR PRODUCTION NO. 633**

All DOCUMENTS filed under seal by any party in the ITC Investigation, any litigation or ITC investigation relating to capturing, digitizing, and/or compressing image data, storing image data, transmitting image data, and/or receiving image data, RELATING TO Apple's defenses or counterclaims, including without limitation all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, stipulations, supporting declarations, and exhibits to supporting declarations filed in connection and with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to strike, and post-trial motions.

**REQUEST FOR PRODUCTION NO. 634**

All transcripts of depositions, trial transcripts or other DOCUMENTS containing testimony and or RELATING TO Apple's defenses or counterclaims in any litigation or ITC investigation relating to capturing, digitizing, and/or compressing image data, storing image data, transmitting image data, and/or receiving image data.

**REQUEST FOR PRODUCTION NO. 635**

All DOCUMENTS prepared by any expert, including any technical, economic, marketing, licensing or damages experts, in connection with any litigation or ITC investigation relating to capturing, digitizing, and/or compressing image data, storing image data, transmitting image data, and/or receiving image data.

1  **REQUEST FOR PRODUCTION NO. 636**

2      All trial exhibits and trial demonstratives used by any party in the ITC Investigation, any

3  litigation or ITC investigation relating to capturing, digitizing, and/or compressing image data,

4  storing image data, transmitting image data, and/or receiving image data.

5

6  **REQUEST FOR PRODUCTION NO. 637**

7      All trial exhibits and trial demonstratives used by any part in any litigation or ITC

8  investigation relating to capturing, digitizing, and/or compressing image data, storing image data,

9  transmitting image data, and/or receiving image data, RELATING TO Apple's defenses or

10 counterclaims.

11

12 **REQUEST FOR PRODUCTION NO. 638:**

13     All DOCUMENTS and THINGS, including but not limited to SOFTWARE,

14 EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions,

15 instruction manuals, user guides, published articles, publications, and COMMUNICATIONS

16 relating to all versions of APPLE's iTunes software developed prior to January 7, 2007, including

17 but not limited to version 6.0.1.

18

19 **REQUEST FOR PRODUCTION NO. 639:**

20     All DOCUMENTS and THINGS, including but not limited to SOFTWARE,

21 EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions,

22 instruction manuals, user guides, published articles, publications, and COMMUNICATIONS

23 relating to any and all versions of the ENTERPRISE OBJECT FRAMEWORK.

24

25 **REQUEST FOR PRODUCTION NO. 640:**

26     All DOCUMENTS and THINGS, including but not limited to SOFTWARE,

27 EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions,

28

SAMSUNG'S ELEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

instruction manuals, user guides, published articles, publications, and COMMUNICATIONS relating to WEBOBJECTS's implementation of the ENTERPRISE OBJECT FRAMEWORK.

**REQUEST FOR PRODUCTION NO. 641:**

All DOCUMENTS and THINGS, including but not limited to SOFTWARE, EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions, instruction manuals, user guides, published articles, publications, presentations, slides, video or audio recordings, and COMMUNICATIONS relating to any presentation concerning the ENTERPRISE OBJECTS FRAMEWORK prepared for and/or presented at the 2004 Worldwide Developers Conference, including but not limited to the presentation titled "Using WebObjects EOF."

**REQUEST FOR PRODUCTION NO. 642:**

DOCUMENTS and THINGS sufficient to identify the first public use, public disclosure, sale, and/or offer for sale, in the United States, of each version of APPLE's iTunes software prior to January 7, 2007.

**REQUEST FOR PRODUCTION NO. 643:**

DOCUMENTS and THINGS sufficient to identify the first public use, public disclosure, sale, and/or offer for sale, in the United States, of each version of APPLE's iSync software prior to January 7, 2007.

**REQUEST FOR PRODUCTION NO. 644:**

DOCUMENTS and THINGS sufficient to identify the first public use, public disclosure, sale, and/or offer for sale, in the United States, of each version of APPLE's ENTERPRISE OBJECTS FRAMEWORK prior to January 7, 2007.

**REQUEST FOR PRODUCTION NO. 645:**

All DOCUMENTS and THINGS, including but not limited to SOFTWARE, EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions, instruction manuals, user guides, published articles, publications, and COMMUNICATIONS relating to thread and/or process scheduling in all versions of MAC OSX developed prior to January 7, 2007, including but not limited to versions 10.3 and 10.4.

**REQUEST FOR PRODUCTION NO. 646:**

All DOCUMENTS and THINGS, including but not limited to SOFTWARE, EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions, instruction manuals, user guides, published articles, publications, and COMMUNICATIONS relating to ICAL in all versions of MAC OSX developed prior to January 7, 2007, including but not limited to versions 10.3 and 10.4.

**REQUEST FOR PRODUCTION NO. 647:**

All DOCUMENTS and THINGS, including but not limited to SOFTWARE, EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions, instruction manuals, user guides, published articles, publications, and COMMUNICATIONS relating to ADDRESS BOOK in all versions of MAC OSX developed prior to January 7, 2007, including but not limited to versions 10.3 and 10.4.

1  DATED: January 15, 2013          QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP

2

3

4                                   By  /s/ Amar Thakur
                                        Charles K. Verhoeven
5                                       Kevin P.B. Johnson
                                        Victoria F. Maroulis
6                                       William C. Price

7

8                                   John Caracappa (*pro hac vice*)
                                    Steptoe & Johnson, LLP
9                                   1330 Connecticut Avenue, NW
                                    Washington DC 20036
10                                  TEL:   202-429-6267
                                    FAX:   202-429-3902
11

12                                  Attorneys for Defendants
                                    SAMSUNG ELECTRONICS CO., LTD.,
13                                  SAMSUNG ELECTRONICS AMERICA, INC.,
                                    and SAMSUNG TELECOMMUNICATIONS
14                                  AMERICA, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-

**CERTIFICATE OF SERVICE**

I am employed in the County of San Francisco, State of California.   I am over the age of eighteen years and not a party to the within action; my business address is 50 California St., 22nd Floor, San Francisco, CA 94111.

On January 15, 2013, I served true copies of the following documents, described as:

**SAMSUNG'S ELEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

on the interested parties in this action addressed as follows:

| ATTORNEYS FOR APPLE INC. | ATTORNEYS FOR APPLE INC. |
|---|---|
| MICHAEL A. JACOBS<br>mjacobs@mofo.com<br>RICHARD S. J. HUNG<br>rhung@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA        94105-2482<br>Telephone (415) 268-7000<br>Facsimile (415) 268-7522 | JOSH A. KREVITT<br>jkrevitt@gibsondunn.com<br>H. MARK LYON<br>mlyon@gibsondunn.com<br>MARK REITER<br>mreiter@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, CA        94302-1211<br>Telephone: (650) 849-5300<br>Facsimile: (650) 849-5333<br>Apple/Samsung@gibsondunn.com |
| **ATTORNEYS FOR APPLE INC.**<br><br>MARK D. SELWYN<br>mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, CA        94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100 | |

**BY ELECTRONIC MAIL TRANSMISSION** from alexbinder@quinnemanuel.com, by transmitting PDF format copies of such documents to each such person identified above, at the e-mail address listed in their address(es). The documents were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 15, 2013, at San Francisco, California.

*/s/ Alex Binder*

# EXHIBIT 9

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Patrick M. Shields (Bar No. 204739)
patrickshields@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC. and
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

STEPTOE & JOHNSON, LLP
John Caracappa (*pro hac vice*)
jcaracappa@steptoe.com
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 429-6267
Facsimile: (202) 429-3902

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG'S FIRST SET OF INTERROGATORIES TO APPLE** |

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Samsung

2    Electronics, Co. Ltd., Samsung Telecommunications America, LLC and Samsung Electronics

3    America, Inc., (collectively "Samsung") request that Plaintiff Apple Inc. ("Apple") produce for

4    inspection and copying the documents and things set forth below at the offices of Quinn Emanuel

5    Urquhart & Sullivan, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017,

6    within 30 days.

7    **<u>DEFINITIONS</u>**

8    1.    The terms "APPLE," "PLAINTIFF," "YOU," and "YOUR" shall refer to Apple,

9    Inc., any predecessor or successor of Apple, Inc., and any past or present parent, division,

10   subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee,

11   consultant, staff member, or other representative of Apple, Inc., including counsel and patent

12   agents, in any country.

13   2.    The term "DEFENDANTS" or "SAMSUNG" means Samsung Electronics Co.,

14   Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

15   3.    The terms "DOCUMENT" and "DOCUMENTS" shall have the broadest meaning

16   ascribed to them by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.   This

17   includes copies which differ from the original in any way, including handwritten notations or other

18   written or printed matter.    It also includes information stored electronically, whether in a

19   computer database or otherwise, regardless of whether such documents are presently also in non-

20   electronic form.

21   4.    "COMMUNICATION," in the plural as well as the singular, means any transmittal

22   and/or receipt of information, whether such was oral or written, and whether such was by chance,

23   prearranged, formal or informal, and specifically includes, but is not limited to, conversations in

24   person, telephone conversations, electronic mail (including instant messages and text messages),

25   voicemail, letters, memoranda, statements, media releases, magazine and newspaper articles, and

26   video and audio transmissions.

27

28

5.      The terms "DATE" and "DATES" mean the exact date(s), if known, or the closest approximation to the exact date(s) as can be specified, including without limitation the year, month, week in a month, or part of a month.

6.      The phrases "THIRD PARTY" and/or "THIRD PARTIES" mean all persons who are not parties to this LITIGATION, as well as their officers, directors, employees, agents and attorneys.

7.      The term "RELATING TO " or "RELATED TO" shall mean regarding, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, identifying, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, containing, or constituting (in whole or in part).

8.      The term "COMPLAINT" refers to APPLE's "Amended Complaint for Patent Infringement" filed August 31, 2012, in the Litigation.

9.      The phrase "ANSWER AND COUNTERCLAIMS IN REPLY" refers to "Apple Inc.'s Answer, Defenses, and Counterclaims in Reply to Samsung's Counterclaims" filed May 31, 2012 in the LITIGATION.

10.      The term "APPLE PATENTS" shall mean U.S. Patent Nos. 5,666,502, 5,946,647, 6,847,959, 7,761,414, 8,014,760, 8,046,721, 8,074,172, 8,086,604, and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents.

11.      The phrase "APPLE COVERED PRODUCT" means any PRODUCT sold or offered for sale at any time by APPLE that APPLE contends practices any of the APPLE PATENTS.

12.      "PRIOR ART" shall mean any reference, publication, patent, physical specimen, use, invention by another, sale, offer for sale, or other activities that are relevant to the validity of the APPLE PATENT including anything that is relevant to the patentability of any patent claim under 35 U.S.C. §§ 102 and 103. Prior Art is not limited to references or other activities cited to the United States Patent and Trademark Office during prosecution of any patent.

13.     "PATENTED FEATURES" shall refer to the alleged inventions claimed by the APPLE PATENTS and their commercial embodiments.

14.     The term "SAMSUNG ACCUSED PRODUCTS" shall refer to the products identified in Apple Inc.'s Disclosure of Asserted Claims & Infringement Contentions and/or Apple's Amended Complaint for Patent Infringement.

15.     The term "'087 PATENT" shall mean U.S. Patent No. 7,756,087 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

16.     The term "'596 PATENT" shall mean U.S. Patent No. 7,551,596 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

17.     The term "'470 PATENT" shall mean U.S. Patent No. 7,672,470 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

18.     The term "'757 PATENT" shall mean U.S. Patent No. 7,577,757 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

19.     The term "'058 PATENT" shall mean U.S. Patent No. 7,232,058 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

20.     The term "'179 PATENT" shall mean U.S. Patent No. 6,292,179 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

21.     The term "'449 PATENT" shall mean U.S. Patent No. 6,226,449 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

22.    The term "'239 PATENT" shall mean U.S. Patent No. 5,579,239 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

23.    The term "SAMSUNG PATENTS" shall mean the '087 PATENT, '596 PATENT, '470 PATENT, '757 PATENT, '058 PATENT, '179 PATENT, '449 PATENT, '239 PATENT, and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

24.    The term "APPLE ACCUSED PRODUCTS" shall mean all iPhones, iPads, iPod Touches, Apple computers, Apple TV, iCloud, iTunes, and any other products identified in any of SAMSUNG's complaints or infringement contentions served in this action as infringing any claim of any SAMSUNG PATENT.

25.    The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

26.    The word "each" includes the word "every," and the word "every" includes the word "each," as necessary, to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

27.    The word "any" includes the word "all," and the word "all" includes the word "any," as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

28.    The word "all" includes the word "each," and the word "each" includes the word "all," as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

29.    The use of the singular form of any word includes the plural and vice-versa, as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

The following instructions shall apply to each of the Interrogatories herein:

1.      In answering the following Interrogatories, furnish all available information, including information in the possession, custody, or control of any of PLAINTIFF's attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and persons under PLAINTIFF's control, who have the best knowledge, not merely information known to PLAINTIFF based on PLAINTIFF's own personal knowledge. If YOU cannot fully respond to the following Interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Interrogatory that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Interrogatory cannot be answered fully and completely; and state what knowledge, information or belief PLAINTIFF has concerning the unanswered portion of any such Interrogatory.

2.      If any information requested is claimed to be privileged or otherwise, provide all information falling within the scope of the Interrogatory which is not privileged, and for each item of information contained in a document to which a claim of privilege is made, identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

          a.      the basis on which the privilege is claimed;

          b.      the names and positions of the author of the information and all other persons participating in the preparation of the information;

          c.      the name and position of each individual or other person to whom the information, or a copy thereof, was sent or otherwise disclosed;

          d.      the date of the information;

          e.      a description of any accompanying material transmitted with or attached to such information;

          f.      the number of pages in such document or information;

g.      the particular Interrogatory to which such document is responsive; and whether any business or non-legal matter is contained or discussed in such information.

3.      In the event YOU contend that any of these Interrogatories is objectionable, in whole or in part, YOU shall state with particularity each such objection and the bases therefore, and shall respond to the remainder of the Interrogatory to the extent you are not objecting to it.

4.      For any Interrogatory or portion thereof that YOU determine to be vague, overbroad, or unclear, YOU shall adopt a reasonable meaning for that portion of the Interrogatory, state the adopted meaning in YOUR response to the particular Interrogatory, and produce responsive information accordingly.

5.      The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "including" means "including without limitation."

6.      The use of the singular form of any word includes the plural and vice versa.

7.      PLAINTIFF's obligation to respond to these Interrogatories is continuing and its responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**

Separately identify and describe in detail each and every instance in which APPLE or anyone else has ever given notice to SAMSUNG of the existence and/or the alleged infringement of the APPLE PATENTS, including without limitation: the date of notice; the manner in which notice was given; the patent(s) and the patent claim(s) at issue; the sum and substance of the notice; and the identity of all documents or oral communications constituting such notice.

**INTERROGATORY NO. 2:**

Separately for each claim of the APPLE PATENTS that APPLE contends SAMSUNG has infringed or is infringing, describe in detail all facts relevant to the conception of that claimed invention, including without limitation: the date of conception, the name of each person who contributed to the conception, the specific contribution made by each such person to the claimed invention, how these persons arrived at their claimed invention, and the identity of all documents (by Bates numbers) relating to such conception.

**INTERROGATORY NO. 3:**

Separately for each claim of the APPLE PATENTS that APPLE contends SAMSUNG has infringed or is infringing, describe in detail all facts relevant to the first reduction to practice of that claimed invention, including without limitation: the date of the first reduction to practice, the name of each person who contributed to the reduction to practice, the nature of each person's contribution, all facts and circumstances relating to any alleged diligence between the asserted conception and reduction to practice dates, the identity of each person with knowledge of such diligence, the nature of each person's participation, involvement, and/or contribution to the diligence in reduction to practice, and the identity of all documents (by Bates numbers) relating to such diligence and reduction to practice.

**INTERROGATORY NO. 4:**

Separately for each of the APPLE PATENTS, identify each APPLE COVERED PRODUCT, which of the APPLE PATENTS are embodied in the APPLE COVERED PRODUCT, the date each APPLE COVERED PRODUCT was first sold in the United States, and whether each APPLE COVERED PRODUCT was marked pursuant to 35 U.S.C. § 287 or otherwise, how each APPLE COVERED PRODUCT was marked including the location and manner of the marking, the individuals or entities that marked each APPLE COVERED PRODUCT, and any interruptions or other changes in the practice of marking the APPLE COVERED PRODUCT since it was first marked. The APPLE COVERED PRODUCTS shall be

1   identified by commercial name, commercial model number, telecommunications carrier (if

2   applicable), date of product announcement, date of product release, "code name," and any other

3   identifiers used internally and/or externally to identify or refer to the product at any point during

4   its research, design, development, manufacture, marketing, sale, transfer, distribution, testing,

5   qualification, importation, export, or otherwise.

6

7   **INTERROGATORY NO. 5:**

8       Separately for each claim of the APPLE PATENTS, identify each secondary consideration

9   that YOU contend supports the non-obviousness of the invention(s) claimed (e.g., commercial

10  success, long-felt need, commercial acquiescence, expressions of skepticism, copying, teaching

11  away, simultaneous development, failure of others, unexpected results, commercial acquiescence

12  through acceptance of licenses, departure from acceptable principles of prior art, or acclaim by

13  industry), and for each such alleged secondary consideration describe in detail the facts underlying

14  the alleged secondary consideration.

15

16  **INTERROGATORY NO. 6:**

17      Please IDENTIFY EACH PERSON who was involved in the prosecution of the APPLE

18  PATENTS -- including without limitation, ALL engineers, developers, programmers, designers,

19  testers, patent agents, attorneys, AND draftsmen -- AND DESCRIBE the role EACH such

20  PERSON played in the prosecution of the APPLE PATENTS.

21

22  **INTERROGATORY NO. 7:**

23      For each SAMSUNG ACCUSED PRODUCT, describe the circumstances under which

24  APPLE first became aware of each SAMSUNG ACCUSED PRODUCT's alleged infringement,

25  including, but not limited to, the date(s) upon which APPLE first became aware of such

26  SAMSUNG ACCUSED PRODUCT; the date upon which APPLE first became aware that such

27  SAMSUNG ACCUSED PRODUCT allegedly infringed one or more of the APPLE PATENTS;

28  any investigations, reverse engineering, analyses, tests, or studies done on any SAMSUNG

1   ACCUSED PRODUCT by or on the behalf of APPLE with respect to possible infringement of

2   any claim of one or more of the APPLE PATENTS, including without limitation the date,

3   procedures, and results of such analyses, tests, or studies; and an identification of all persons

4   involved in any such analyses, tests, or studies and any related documents.

5

6   **INTERROGATORY NO. 8:**

7       Describe in detail all communications with THIRD PARTIES relating to actual or

8   potential licenses, sublicenses, settlement agreements, technology sharing agreements, or other

9   agreements regarding the APPLE PATENTS, including by identifying by Bates range all

10  documents relating to any such communications.

11

12  **INTERROGATORY NO. 9:**

13      For EACH of the APPLE PATENTS, please set forth the royalty (expressed as a

14  percentage to be applied to gross revenue in the case of a running royalty, AND expressed as a

15  dollar amount in the case of a lump sum royalty, AND expressed as the royalty base) which

16  APPLE believes is appropriate for a non-exclusive license to use such patent.

17

18  **INTERROGATORY NO. 10:**

19      Separately for each of the APPLE PATENTS, state the complete factual and legal basis for

20  YOUR contentions that APPLE is entitled to injunctive relief against infringement of the APPLE

21  PATENTS, including but not limited to: (a) what irreparable injury APPLE has suffered; (b) why

22  other remedies such as monetary damages are inadequate to compensate for that injury; (c) why

23  the balance of hardships between APPLE and SAMSUNG warrants a permanent injunction; and

24  (d) why the public interest would not be disserved by an injunction.

25

26  **INTERROGATORY NO. 11:**

27      Separately for each claim of the SAMSUNG PATENTS, identify each secondary

28  consideration that YOU contend supports the obviousness of the invention(s) claimed, and for

each such alleged secondary consideration describe in detail the facts underlying the alleged secondary consideration including any related documents and people most knowledgeable of the secondary consideration.

**INTERROGATORY NO. 12:**

If YOU contend or believe that YOU do not infringe any asserted claim of the SAMSUNG PATENTS, state with specificity the complete factual and legal bases for such contention or belief.

**INTERROGATORY NO. 13:**

Separately for all SOFTWARE produced by APPLE including, but not limited to iOS SOURCE CODE, IDENTIFY: (a) each version of SOFTWARE that corresponds to commercially distributed versions of SOFTWARE; (b) which APPLE ACCUSED PRODUCT was commercially distributed with which version of the SOFTWARE produced by APPLE; and (c) all material differences between the commercially distributed versions of SOFTWARE that are relevant to any aspect, element or function of any APPLE ACCUSED PRODUCT that is alleged to infringe any of the SAMSUNG PATENTS.

**INTERROGATORY NO. 14:**

Describe and identify each communication between YOU and any THIRD PARTY concerning any infringement or possible infringement of any of the patents asserted by either party; or concerning any license, request for license, offer to license or possible license, of any of the patents asserted by either party; or concerning notice of any of the patents asserted by either party, the value of the patents asserted by either party; or concerning the validity, invalidity, enforceability, or unenforceability of the patents asserted by either party. For each such communication identified, identify each person involved in the communication, the date and form of the communication, and provide a brief description of the communication.

**INTERROGATORY NO. 15:**

Identify the person of ordinary skill in the art for each of the APPLE PATENTS and each of the SAMSUNG PATENTS.

**INTERROGATORY NO. 16:**

Describe in detail the factual and legal basis (including the identity of all documents and persons) upon which you will rely to establish, or that contradict, each of YOUR affirmative defenses.

**INTERROGATORY NO. 17:**

Describe in detail the factual and legal basis (including the identity of all documents and persons) upon which you will rely to establish, or that contradict, each of the denials AND allegations set forth in the ANSWER AND COUNTERCLAIMS IN REPLY.

**INTERROGATORY NO. 18:**

Specifically for each of the SAMSUNG PATENTS, identify and explain in detail each design-around and/or alleged alternative technology or method that can be used as an alternative to the patented technology, including but not limited to: (1) a description of the alleged design-around; (2) a description of when and how the alleged design-around was developed; (3) the identity of individuals involved in developing the alleged design-around, including their titles and departments if they are or were Samsung employees; (4) dates when the alleged design-around was incorporated into APPLE's products; and (5) each product available on the market simultaneously with the APPLE ACCUSED PRODUCTS that would have been an acceptable non-infringing alternative for customers who purchased the APPLE ACCUSED PRODUCTS.

**INTERROGATORY NO. 19:**

With respect to each of the APPLE PATENTS and foreign counterparts to each of the APPLE PATENTS, identify any prior art references YOU found or of which YOU were aware but

1  that YOU did not cite or otherwise provide to the United States Patent and Trademark Office prior

2  to the issuance of the patent.

3

4  **INTERROGATORY NO. 20:**

5       If YOU contend or believe that any of the asserted claims of the APPLE PATENTS are not

6  practiced by any of the APPLE COVERED PRODUCTS, identify each such asserted claim and

7  explain in detail the reasons why the respective APPLE COVERED PRODUCT does not practice

8  each such claim, including a description of the differences between the respective APPLE

9  COVERED PRODUCT and any APPLE COVERED PRODUCT that YOU do contend or believe

10  practices the same claim of the APPLE PATENTS.

11

12  **INTERROGATORY NO. 21:**

13       Identify the date on which APPLE first became aware of the SAMSUNG PATENTS, the

14  circumstances by which APPLE first became aware of the SAMSUNG PATENTS, and the

15  identity of each PERSON at APPLE who became aware of the SAMSUNG PATENTS at that

16  time.

17

18  **INTERROGATORY NO. 22:**

19       Please set forth APPLE'S DOCUMENT retention policy in its entirety.

20

21  **INTERROGATORY NO. 23:**

22       Please DESCRIBE when APPLE instituted ANY litigation hold RELATING to the

23  LITIGATION; how APPLE implemented ANY litigation hold RELATING to the LITIGATION;

24  who was responsible for monitoring compliance with such litigation hold; AND ANY instances of

25  non-compliance with such litigation hold.

26

27

28

**INTERROGATORY NO. 24:**

Please IDENTIFY AND DESCRIBE EACH AND every litigation, dispute OR proceeding -- prior OR current -- RELATING to the validity, enforceability OR ownership of ANY APPLE PATENTS or foreign counterparts to any APPLE PATENTS, including but not limited to: the parties involved in such litigation OR dispute; the court in which such litigation was/is pending, OR the arbitral body before which such dispute was/is pending, or the administrative body before which such proceeding was/is pending; the current status of such litigation, dispute OR proceeding; AND the non-attorney PERSONS at APPLE who are most knowledgeable about such litigation, dispute OR proceeding.

DATED: September 25, 2012        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Patrick M. Shields
    Charles K. Verhoeven
    Kevin P.B. Johnson
    Victoria F. Maroulis
    William C. Price
    Patrick M. Shields

    John Caracappa (*pro hac vice*)
    Steptoe & Johnson, LLP
    1330 Connecticut Avenue, NW
    Washington DC 20036
    TEL:   202-429-6267
    FAX:   202-429-3902

    Attorneys for Defendants
    SAMSUNG ELECTRONICS CO., LTD.,
    SAMSUNG ELECTRONICS AMERICA, INC.,
    and SAMSUNG TELECOMMUNICATIONS
    AMERICA, LLC

# EXHIBIT 10

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

November 29, 2012

<u>**Via E-Mail**</u>

Michael A. Valek
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Dallas, TX 75201-6912

Re:   <u>Apple v. Samsung Elecs. Co. et al, Case No 12-cv-630</u>

Dear Counsel:

I write regarding Apple's production of documents relating to WAIS, and further to my letter of November 15, 2012 regarding Apple's Objections and Responses to Samsung's 6th Set of Requests for Production of Documents and Things.  More than two weeks have passed since Apple received my letter and Samsung still awaits a response.  Meanwhile, analysis of Apple's document productions has revealed deficiencies in Apple's productions under at least several Requests.

**<u>Apple's Production of Documents Relating to WAIS</u>**

At least three separate Requests call for the production of documents relating to WAIS: No. 46 Relating to Preliminary Injunction relating specifically to WAIS; and Nos. 62 and 272, relating to all prior art.  Apple's response to each of these Requests indicates it would make a full document production as requested.

As you know, Samsung has identified WAIS as prior art to U.S. Patent Nos. 8,086,604 and 6,847,959 in its Patent Local Rule 3-3 and 3-4 Disclosures.  Apple thus has an obligation to produce all documents related to WAIS.  Moreover, Apple was extensively involved in development of WAIS.  Yet, Apple has produced a mere handful of documents that mention WAIS.

Apple should perform a search for relevant documents as soon as possible.  Apple's search should include, among other sources, those documents generated by Apple employees Kevin

quinn emanuel urquhart & sullivan, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401

WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100

LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100

TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712

MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100

MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666 FAX +7 495 797 3667

Tiene and Charles Bedard, especially documents that might relate to those individuals' work with Thinking Machines, KPMG (aka Peat Marwick), and Dow Jones.

Please confirm that Apple will undertake a thorough search for these documents and produce all responsive, non-privileged documents, and provide a date by which Samsung can expect to receive these documents.

## Request for Production Nos. 293 and 294

As noted in my letter of November 15, 2012, these Requests require production of "All Documents . . . Relating To Apple's iSync [and iTunes] software."  However, Apple has improperly limited its production to "documents . . . sufficient to show the operation and functionality of Apple's iSync [and iTunes] software."  There is no basis for Apple's unilateral decision to limit its production.

Despite Apple's commitment to produce iSync and iTunes documents, Apple has produced almost no source code or documents called for by these Requests, including no source code at all for iSync, and no source code for any version of iTunes before 7.3.0.

Please confirm that Apple will produce all responsive documents without limitation, including source code, and provide a date by which Samsung can expect to receive these documents.

As you know Gordon Freedman is scheduled for deposition on December 5, 2012.  Because Apple has failed to timely produce all documents required under Request 293 and 294, Samsung hereby reserves the right to call Mr. Freedman for further deposition, as necessary, after Apple has remedied its deficient production and Samsung has had an opportunity to review the documents.

## Request for Production Nos. 295 and 296

These Requests require production of documents relating to Newton.  Apple's responses to these Requests indicate that it will produce all responsive, non-privileged documents resulting from a reasonable search.  As mentioned above, Apple has also agreed to produce documents relating to all prior art (including Newton) under Request Nos. 62 and 272.  Samsung has identified Newton as prior art to U.S. Patent Nos. 8,086,604 and 6,847,959 in its Patent Local Rule 3-3 and 3-4 Disclosures.  Apple has an obligation to produce all responsive, non-privileged documents relating to Newton.

As you know, Apple was intimately involved in development of Newton and must be in possession and control of numerous documents and source code relating to Newton and its features and applications.  Yet, Apple has produced no source code and no other documents relating to Newton.  Please confirm that Apple will produce all responsive, non-privileged documents relating to Newton, including source code, and provide a date by which Samsung can expect to receive these documents.

Furthermore, and as you also know, Stephen Capps is scheduled for deposition on December 7, 2012.  Because Apple has failed to timely produce all documents required under Request Nos. 295 and 296, Samsung hereby reserves the right to call Mr. Capps for further deposition, as necessary, after Apple has remedied its deficient production and Samsung has had an opportunity to review the documents.

## Request for Production No. 297

This Request requires production of documents relating to Sherlock.  Apple's response indicates that it will produce all responsive, non-privileged documents resulting from a reasonable search.  As mentioned above, Apple has also agreed to produce documents relating to all prior art (including Sherlock) under Request Nos. 62 and 272.  Samsung has identified Sherlock as prior art to U.S. Patent Nos. 8,086,604 and 6,847,959 in its Patent Local Rule 3-3 and 3-4 Disclosures.  Apple has an obligation to produce all responsive, non-privileged documents relating to Sherlock.

Yet, Apple has produced no source code and no other documents relating to Sherlock.  Please confirm that Apple will produce all responsive, non-privileged documents relating to Sherlock, including source code, and provide a date by which Samsung can expect to receive these documents.


Very truly yours,

Amar L. Thakur

Amar L. Thakur

3

# EXHIBIT 11

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian M. Buroker
Direct: +1 202.955.8541
Fax: +1 202.530.4200
BBuroker@gibsondunn.com

Client: 03290-00026

November 30, 2012

VIA E-MAIL

Michael L. Fazio                            Amar L. Thakur
865 South Figueroa Street, 10th Floor       865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543          Los Angeles, California 90017-2543

Re:     *Apple v. Samsung, 12-cv-0630*

Dear Counsel:

I write to respond to your letters sent yesterday regarding Apple's recent document productions.

**Apple's Recent Production**

Your letter greatly overstates the extent of the problems with the production of the documents bates numbered APLNDC630-0000197215-APLNDC630-0000242920.

First, you complain that Apple did not provide any custodial information for the documents bates labeled APLNDC630-0000199529-APLNDC630-0000242920.  However, the load file provided with the production identifies both the document files and their designated custodians.  As should be evident from an examination of this load file, all of the documents that list Mr. Capps as a custodian were collected from Mr. Capps.  The rest of the documents in the production that list Apple as the custodian were collected from Apple.  It is unclear why "Samsung has not been able to determine which documents in this production are from Mr. Capps."  If you encountered problems opening the load files, which are simple excel spreadsheets that clearly identify the custodian for any given document, please let us know and we can provide replacements.

Second, Apple has made the complete set of documents collected from Mr. Capps available for inspection in Gibson Dunn's Palo Alto office as Ms. Fedman previously informed you via email.  The files are available now.  Please let us know if you are interested in inspecting them.

Third, Apple's production did not omit any documents in their entirety.  Apple included full text and load files for every document in the APLNDC630-0000197215-APLNDC630-0000242920 production in its initial production.  While some of the individual image files

**GIBSON DUNN**

Michael L. Fazio
Amar L. Thakur
November 30, 2012
Page 2

were missing from the initial production, Apple, on its own initiative, provided those image files as soon as it could remedy the problem.

In sum, Samsung has all of the documents collected from Mr. Capps, and indeed has had most of them since March 2012, and has ample time to review them before his deposition on December 7, 2012.  Samsung's ability to prepare for Mr. Capps' deposition has not been compromised in any way.  There is no reason that Samsung cannot be fully prepared to conduct and complete Mr. Capps' deposition as scheduled.

**Mr. Capps' Deposition and Request for Production Nos. 295 and 296**

Apple has also complied with its obligations regarding Samsung's requests for documents relating to the Newton, Samsung Requests Nos. 295 and 296.  Apple included all responsive documents in its possession relating to Newton, regardless of whether they relate to the '502 patent, in its latest production.  The complaints raised in your letter regarding the production in response to these requests are thus misplaced.

**Mr. Freedman's Deposition and Request for Production Nos. 293 and 294**

Finally, as you are aware, Apple is making Mr. Freedman available for deposition on December 5 and 6, 2012.  Yesterday's letter was the first time Samsung has taken the position that it must have all documents related to Apple's iSync and iTunes software *before* it can depose Mr. Freedman.  Such a late, sudden change in position is entirely unreasonable, particularly when combined with Samsung's insistence on deposing Mr. Freedman prior to the deadline for claim construction discovery.

Apple has already produced documents in accordance with the parties' agreement to produce an inventor's documents ten days before that inventor's deposition, including all documents in Mr. Freedman's possession related to iSync and iTunes software.  Indeed, the documents produced from Mr. Freedman in Apple's November 21, 2012 production bates labeled APLNDC630-0000183552 - APLNDC630-0000197214 included over 4,500 pages of documents collected from Mr. Freedman that relate to  iSync or iTunes.  Any complaints regarding the production from Mr. Freedman are entirely misplaced.

In addition, Apple already produced for inspection source code, including iTunes source code, months ago, but Samsung has not sought to inspect it.  Yesterday was the first time Samsung suggested it would want to inspect source code for both current and historical versions of iSync and iTunes before it deposed Mr. Freedman.  While some of that code is

**GIBSON DUNN**

Michael L. Fazio
Amar L. Thakur
November 30, 2012
Page 3

already available for inspection, it will take time to search for any older source code that may exist in order to accommodate Samsung's belated request.

Accordingly, Samsung has two choices in how it may proceed:  (1) either Samsung can proceed with Mr. Freedman's deposition on December 5 and 6th, as previously-scheduled, but, if it does so, Mr. Freedman will not be made available for additional deposition later; or (2) the parties can agree to postpone the deposition to allow time for Apple to investigate whether it has any additional iTunes source code or iSync source code.  If Samsung agrees to the latter option, Apple will attempt to offer new dates for Mr. Freedman's deposition prior to January 25, 2013, such that his deposition would be completed prior to the deadline for responsive claim construction briefing.

Sincerely,


_____*/s/ Brian M. Buroker*_____


Brian M. Buroker

BMB/pdd

# EXHIBIT 12

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian M. Buroker
Direct: +1 202.955.8541
Fax: +1 202.530.4200
BBuroker@gibsondunn.com

December 23, 2012

VIA E-MAIL

Amar Thakur
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figeroa St.
Tenth Floor
Los Angeles, CA 90017

Re:     Apple v. Samsung - 12-cv-630 (LHK)

Dear Amar:

Thank you for your letter confirming the dates for Mr. Freedman's deposition.  Source code
relating to iSync and earlier versions of iTunes is now available for inspection at Gibson
Dunn's Palo Alto office.  Apple continues to investigate and will supplement the source code
available for inspection should any additional source code be located.

Sincerely,


/s/ Brian M. Buroker

BMB/jrf

Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich · New York
Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

# EXHIBIT 13

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

January 1, 2013


<u>Via E-Mail</u>

Josh Krevitt                              Jennifer Rho
Gibson Dunn & Crutcher, LLP               Gibson Dunn & Crutcher, LLP
1881 Page Mill Road                       333 South Grand Avenue
Palo Alto, CA 94304-1211                  Los Angeles, CA 90071-3197


Re:    <u>Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)</u>


Dear Counsel:

I write regarding Samsung's ongoing review of source code made available for inspection at your Palo Alto office.  Based on our preliminary review, it appears that there are serious deficiencies relating to Apple's production of iTunes source code.  Specifically, it appears that Apple has not produced the code implementing the iTunes user interface.  For example, the view and controller code used to implement the iTunes user interface appears to be missing.  As Apple is aware, this code is relevant to Samsung's invalidity defenses (see, e.g., Exhibit D-9 to Samsung's Invalidity Contentions at 5-7, 9, 12, 16, 38-39, 47, 53, 59, 63, 69).

Please immediately complete production of iTunes code.  Apple's failure to produce this code is prejudicing Samsung's development of its invalidity defenses, as well as its preparation for upcoming depositions, including Mr. Freedman's January 16 deposition.

In light of Mr. Freedman's rapidly approaching deposition, and our long history of correspondence on this source code, please produce the code implementing the iTunes user

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000  FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

interface and identify where, in the production, you have placed that code.  In particular, produce and identify where you have placed the code implementing the relevant functionalities of that user interface, as depicted in Samsung's invalidity contentions, by close of business Thursday January 3.

Very truly yours,

Amar L. Thakur

# EXHIBIT 14

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Joshua Furman
Direct: +1 212.351.2461
Fax: +1 212.351.5261
JFurman@gibsondunn.com

January 7, 2013

VIA E-MAIL

Amar L. Thakur
Quinn Emanuel
865 S. Figueroa St., 10th Floor
Los Angeles, California  90017

Re:     *Apple v. Samsung* Case No. 12-cv-630

Dear Amar:

I write in response to your letter of January 1, 2013.

Your letter requests code implementing the user interface ("UI") for iTunes version 6.0.1. Apple has already produced extensive source code for iTunes version 6.0.1.  Samsung offers no explanation for why the additional code it seeks is possibly relevant here.  In your letter, Samsung points to a couple pages from its invalidity contentions that contain screen shots of the UI, but those pages provide no narrative beyond a description of what each particular screen shot shows (*e.g.*, Page 5:  "iTunes 6 for Mac at main application window"; Page 6: "iTunes 6 for Mac at Get Info pane, before editing metadata.")  It is, therefore, unclear why Samsung believes it needs to inspect all of the source code for the UI, when nothing beyond the use of that that UI as shown in the screen shots is identified as pertinent in Samsung's contentions.  Please identify with specificity the particular aspects of the UI that you believe Samsung to inspect source code for and explain how those aspects might possibly pertain to the issues in this case.

Additionally, your letter attempts to tie the production of source code for the iTunes 6.0.1 UI to Mr. Freedman's upcoming deposition. But just as there is nothing to suggest that this code is relevant to any issue in the case, there is no evidence that Mr. Freedman has had any involvement with the iTunes UI.  Accordingly, Apple disagrees that lacking immediate access to this particular source code will prejudice Samsung's examination of Mr. Freedman in any way.

Sincerely,

*/s/ Joshua Furman*

# EXHIBIT 15

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

January 7, 2013

<u>Via E-Mail</u>

Josh Krevitt                                   Jennifer Rho
Gibson Dunn & Crutcher, LLP     Gibson Dunn & Crutcher, LLP
1881 Page Mill Road                    333 South Grand Avenue
Palo Alto, CA 94304-1211           Los Angeles, CA 90071-3197

Re:     <u>Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)</u>

Dear Counsel:

I write regarding two issues related to Samsung's ongoing review of source code made available for inspection at your Palo Alto office.

First, as noted in my letter of January 1, 2013, Apple's production of iTunes source code is deficient.  Our source code reviewers have confirmed that, as of today, Apple still has not produced code implementing the iTunes user-interface functionality.  Not only has Apple failed to comply with its discovery obligations regarding these materials, but Apple also has failed to provide any response to my January 1, 2013 letter.

Second, Apple has failed to comply with our request to install source code review tools on the machines at your Palo Alto office.  As my colleague John McKee explained in his email to Joshua Furman on January 3, 2013, there are exceptional circumstances of Apple's own making that warrant expedited installation of these review tools.  As of today, however, Apple has neither installed the requested software nor responded to Mr. McKee's email.

Apple's continued failure to produce highly relevant source code and install tools necessary to

quinn emanuel urquhart & sullivan, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000 FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

review the code in an efficient manner is prejudicing Samsung's development of its invalidity defenses, as well as its preparation for upcoming depositions, including Mr. Freedman's deposition scheduled for January 16, 2012.  In light of Apple's delay, Samsung reserves the right to hold open Mr. Freedman's deposition in order to re-depose him after we have had an adequate opportunity to review a complete production of the iTunes source code on a machine equipped with the tools we have requested.

Very truly yours,

Amar L. Thakur

Amar L. Thakur

# EXHIBIT 16

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

January 9, 2013

**Via E-Mail**

Joshua Furman
Gibson Dunn & Crutcher, LLP
200 Park Avenue
New York, NY 10166-0193

Re:     Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)

Dear Joshua:

I write in response to your letter of January 7, 2013.

Your letter suggests that source code for the iTunes user interface is not relevant to the issues of this case.  You are incorrect.  This case involves Apple's allegation that Samsung infringes U.S. Patent No. 7,761,414, the asserted claims of which expressly require "a user interface" and "at least one user-level non-synchronization processing thread."   As part of its invalidity defense, Samsung contends that iTunes anticipates each and every limitation of the asserted claims, including those noted above.  Certainly, in support of its defense, Samsung is entitled to inspect source code implementing the very features of iTunes required by the asserted claims.

Your letter further suggests that Samsung is not entitled to inspect all of the source code for the iTunes user interface because "Samsung points to a couple pages from its invalidity contentions that contain screen shots of the UI, but those pages provide no narrative beyond a description of what each particular screen shot shows."  There are several problems with this logic.  First, you

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601  | TEL (212) 849-7000  FAX (212) 849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401

WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100

LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100

TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712

MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100

MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000 FAX +7 499 277 1001

HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

are asking Samsung to identify with specificity particular aspects of a user interface that are implemented with Apple's proprietary source code.  Having not seen Apple's proprietary source code, it is impossible for Samsung to determine all of the aspects that are relevant to the asserted claims.  Second, your argument is based on the false premise that our inspection should be limited to source code underlying only those features depicted in Samsung's invalidity contentions.  To the contrary, the purpose of our inspection is to not only support the exemplary user-interface features identified in our contentions, but also to determine whether additional aspects of the iTunes source code – aspects that, again, are proprietary to Apple – satisfy the limitations of the asserted claims.

Finally, with respect to Mr. Freedman's deposition next week, your letter states that "there is no evidence that Mr. Freedman has had any involvement with the iTunes UI."  This is far from an unqualified denial that Mr. Freedman has personal knowledge of the iTunes user interface, and thus we intend to analyze the requested source code in preparation for his deposition.

Accordingly, please produce all iTunes user interface source code immediately.  If you do not, Samsung will be forced to approach the Court to avoid further prejudice, and we reserve all rights for appropriate relief in doing so.

Very truly yours,

Amar L. Thakur

# EXHIBIT 17

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

January 14, 2013

Joshua Furman
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193

Re:     Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)

Dear Joshua:

I write in response to your January 12 letter. Apple's refusal to provide all iTunes user interface source code for inspection prior to Mr. Freedman's deposition is baseless and an about-face from Apple's previous representations.

As you acknowledge in your letter, Apple has produced only a small subset of iTunes source code. We dispute only whether the unproduced code we have requested is relevant to this litigation. It clearly is. As set forth in my January 9 letter, Samsung contends that iTunes anticipates each and every limitation of the asserted claims of U.S. Patent No. 7,761,414; these asserted claims expressly require "a user interface" and "at least one user-level non-synchronization processing thread." Therefore, iTunes user interface source code is relevant to Samsung's invalidity defense – in particular, how the iTunes user interface is implemented, including how user-interface code executes on one or more threads, as well as the relationship between user interface code and synchronization code.

Apple's position – that the iTunes user interface source code is not relevant to Samsung's invalidity defense to the '414 patent – is not only meritless but also brand new. As you know, this is not the first time Samsung has requested that Apple produce the iTunes source code in advance of Mr. Freedman's deposition. In his November 30, 2012 letter, your colleague Brian Buroker acknowledged that Samsung had notified Apple that "**it would want to inspect source**

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia 20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000 FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

**code for both current and historical versions of iSync and iTunes before it deposed Mr. Freedman.**" 11/30/2012 Letter, at 2 (emphasis added).  In the same letter, Mr. Buroker admitted that Apple had not made all of this code available for inspection and that "it will take time to search for any older source code that may exist in order to accommodate Samsung's [] request." *Id.* at 3.  Apple then offered to delay Mr. Freedman's deposition specficially "to allow time for Apple to investigate whether it has any additional iTunes source code or iSync source code." *Id.* Apple even agreed that if Samsung agreed to postpone the deposition, "Apple will attempt to offer new dates for Mr. Freedman's deposition prior to January 25, 2013, such that his deposition would be completed prior to the deadline for responsive claim construction briefing." *Id.* Samsung agreed to delay the deposition based on Apple's agreement to accommodate Samsung's request to locate and produce the source code in advance of Mr. Freedman's deposition and in time for incorporation of testimony into Samsung's claim construction briefing.  *See* 12/2/2012 email chain between Michael Fazio and Brian Buroker.

At that time, Apple did not dispute the relevance of this code – nor could it.  Now that Samsung agreed to delay the deposition for the express purpose of giving Apple time to locate this prior art source code that it already should have produced, Apple is reneging on its earlier agreement by refusing to produce the code.  Apple has no reason to assert this objection now other than to block Samsung's legitimate discovery regarding invalidating prior art.

In your letter, you also state that "there is no need to inspect [iTunes user interface] source code prior to Mr. Freedman's deposition" because "Mr. Freedman had no involvement in the development of the iTunes user interface."  This is a non sequitur.  This source code is relevant to Mr. Freedman's deposition regardless of whether he was directly involved in its development. As an initial matter, you do not deny that Mr. Freedman has personal knowledge of the iTunes user interface, only that he was not directly involved in its development.  But more broadly, Samsung is entitled to ask Mr. Freedman questions about how, if at all, his patent differs from other Apple software – including iTunes, which Samsung has expressly identified as invalidating prior art.

Apple's conduct suggests that it fears the outcome if Samsung obtains full and fair discovery of Apple's own prior art.  This has become a disturbing pattern:  Apple will not produce information about its own prior art, or allow its witnesses to be deposed about that prior art. Samsung has already been prejudiced with similarly unexplained discovery failures for Mr. Capps' deposition, including late and incomplete Newton productions.  Apple is now doing the same thing with iTunes and iSync prior art, precluding a full and fair examination of Mr. Freedman.

Further, in light of Apple's incomplete source code production, your calculation of percentages relating to the entire iTunes 6.0.1 "software release" is highly suspect.  To maintain this objection, Apple must immediately provide a listing of all source code files in the complete "software release" of iTunes 6.0.1, as well as the page count for each file.

Given Apple's refusal to produce the outstanding iTunes source code, as well as Apple's refusal to deliver print-outs of the limited code it has made available, the parties are at an impasse. Samsung will hold Mr. Freedman's deposition open in light of Apple's willful failure to produce

relevant material, and reserves the right to seek appropriate sanctions from the Court in light of these and related discovery failures regarding Apple's own prior art.

Very truly yours,

Amar L. Thakur

# EXHIBIT 18

# FILED UNDER SEAL

# EXHIBIT 19

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

January 29, 2013

Joshua Furman
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193

Re:     Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)

Dear Joshua:

I write to follow up yet again on the ongoing deficiencies in Apple's production of iTunes, iSync, and Sync Services source code.  Apple has not yet responded to my January 23, 2013 letter.  Please respond no later than tomorrow, January 30th.

Also, we understand from prior discussions that Apple will notify Samsung whenever new source code is placed on the review computers.  Please let us know if your understanding differs.

Very truly yours,

Amar L. Thakur

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401

WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100

LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100

TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712

MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100

MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000 FAX +7 499 277 1001

HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

01980.52084/5151363.1

# EXHIBIT 20

**FILED UNDER SEAL**

# EXHIBIT 21

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Joshua Furman
Direct: +1 212.351.2461
Fax: +1 212.351.5261
JFurman@gibsondunn.com

January 12, 2013


VIA E-MAIL

Amar L. Thakur
Quinn Emanuel
865 S. Figueroa St., 10th Floor
Los Angeles, California  90017

Re:      *Apple v. Samsung*, Case No. 12-cv-630

Dear Amar:

I write in response to your letter of January 9, 2013.  Mr. Freedman had no involvement in the development of the iTunes user interface.  As such, there is no need to inspect such code prior to Mr. Freedman's deposition, nor is there any basis for Samsung to attempt to hold that deposition open after it concludes on January 17, 2013.

Moreover, Apple has produced source code for iTunes 6.0.1 that underlies the functionality that is allegedly relevant to Samsung's invalidity contentions.  You have not provided any justification that the *source code* for the user interface itself is relevant.  Samsung is clearly in possession of a working copy of iTunes 6.0.1 and you have provided no explanation as to why that is insufficient.

Sincerely,


*/s/ Joshua Furman*



Joshua Furman

# EXHIBIT 22

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Joshua Furman
Direct: +1 212.351.2461
Fax: +1 212.351.5261
JFurman@gibsondunn.com

February 1, 2013


VIA ELECTRONIC MAIL

Amar L. Thakur
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California  90017

Re:     *Apple Inc. v. Samsung Electronics Co., et al.,*  12-cv-00630 LHK (PSG)

Dear Amar:

I write in response to your letters of January 23 and 29, 2013.  Apple has completed the production of the iTunes and iSync source code that it was able to locate after a thorough investigation.  Since Samsung first alleged on November 29, 2012 (seven days before Mr. Freedman's original deposition date) that it wanted to inspect the source code for every version of iTunes and iSync, Apple has worked diligently to produce that code, some of which is for products released a decade ago.  Aside from six header files identified by Samsung in its letter of January 11, 2013, which are now available, all the potentially relevant source code has been available for inspection since January 16, 2013.

In your letter of January 23 you first complain that Apple produced too much code (i.e., 1.5 million source code files on January 16) and then assert without explanation that Apple has not produced enough source code.  It is worth noting that Samsung's reviewers have spent only portions of two days (and one hour on a third day) reviewing the code produced on January 16.  If Samsung believes it has conducted a thorough review of the source code Apple has produced and can identify something is missing, please identify it with specificity so that we can investigate the issue.

In addition, Samsung has yet to explain how the production of iTunes UI *source code* is relevant to any claims or defenses and why it should be produced.  We reiterate that request again:

> Apple has produced source code for iTunes 6.0.1 that underlies the functionality that is allegedly relevant to Samsung's invalidity contentions. You have not provided any justification that the source code for the user interface itself is relevant.  Samsung is clearly in possession of a working copy of iTunes 6.0.1, and you have provided no explanation as to why that is insufficient.

# GIBSON DUNN

Amar L. Thakur
February 1, 2013
Page 2


Finally, contrary to the suggestion in your letter, I do not believe there is any agreement in place regarding notifications of source code computer updates, but if Samsung agrees to notify Apple when it installs new source code on its inspection computers moving forward, we will do the same.


Sincerely,


_____/s/ Joshua Furman_____
Joshua Furman

JRF

# EXHIBIT 23

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

February 28, 2013

Michael A. Valek
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Dallas, TX 75201-6912

Re:   Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)

Dear Counsel:

Thank you for participating in the lead counsel meet and confer between Apple and Samsung on February 15-16.  I write to follow up on the issues we discussed regarding Apple's production of iTunes source code.  As you know, there are two issues outstanding.  First, Apple has refused to deliver to Samsung printouts of iTunes 6.0.1 source code selected by our reviewers under the Protective Order.  Second, Apple has refused to produce complete source code releases for iTunes versions that pre-date January 2007, and specifically, Apple has failed to produce source code relating to the user interface functionality in these versions.

1.      **iTunes Source Code Printouts**

On January 3 and 7, 2013, Samsung's representative printed portions of iTunes 6.0.1 source code, bearing Bates numbers 630OFFAPPLESOURCECODE_000089 through 630OFFAPPLESOURCECODE_000410 and 630OFFAPPLESOURCECODE_000428 through 630OFFAPPLESOURCECODE_000453.  Apple refused to deliver these print outs, objecting that these 346 pages "contain[] approximately 25% of the iTunes 6.0.1 source code release, and thus far exceeds '10% or more of a specific software release.'"  (Furman to Thakur, January 8, 2013.)  On January 8, 2013, Samsung's representative printed additional portions of iTunes 6.0.1 source code, bearing Bates numbers 630OFFAPPLESOURCECODE_000454 through 630OFFAPPLESOURCECODE_000650.  Apple also refused to deliver these printouts, asserting that "[f]or the same reasons enumerated in my letter of January 8, 2013, the printing of the source code contained in these documents is presumptively excessive under section 11(i) of the Protective Order, as it contains approximately 37% of the iTunes 6.0.1 source code release, and thus far exceeds '10% or more of a specific software release.'"  (Furman to Thakur, January 14, 2013.)

The Protective Order governing confidentiality in this action provides that a party may object to the delivery of source code printouts that "exceed 50 continuous pages or 10% or more of a specific software release." (Protective Order, Section 11(i).)  At the lead counsel meet and confer on February 15-16, Apple confirmed and restated its position that "software release" does not actually mean all the code in a particular software release, but includes only the code from that release that Apple has made available for inspection.  For example, if Apple has made 10 pages of source code available for iTunes 6.0.1, then Samsung may only print 1 page; if Apple has made 20 pages of source code available for iTunes 6.0.1, then Samsung may print 2 pages.  To state this position clearly is to refute it, but that is Apple's position and we must respond accordingly.  In keeping with its nonsensical position, Apple has refused to provide a list of each file in the full iTunes 6.0.1 software release as well as their lengths, so Samsung cannot independently calculate whether we have sought to print more than 10% of the actual software release, as opposed to Apple's arbitrary subset.

2.      **Source Code For Full Releases of the iTunes Software**

Apple's production of iTunes source code remains deficient.  Apple has produced only limited portions of iTunes software releases ranging between versions 1.0.0 and 10.7.0.  Samsung has identified iTunes as invalidating prior art to U.S. Patent No. 7,761,414.  (*See* Samsung's Patent Local Rule 3-3 and 3-4 Disclosures, dated August 10, 2012, at 50 and Ex. D-9.)  All versions of this source code that predate January 2007 – the priority date of the '414 patent – are relevant to Samsung's invalidity contentions for the '414 patent.  Apple must produce the complete source code releases for all of these versions of iTunes.

The subdirectories Apple has produced for each version of iTunes contain only a limited number of files corresponding to discrete aspects of the iTunes software.  Most notably, the produced code does not contain user interface code, which we have now explained through correspondence and in person is highly relevant to Samsung's invalidity defense.  In response, Apple has continued to withhold the user interface code across all versions of iTunes, contending that the user interface source code is not even "potentially relevant." (*See* Furman to Thakur, February 1, 2013.)  At the lead counsel meet and confer on February 15-16, Apple confirmed and restated its position that would not produce all source code from all versions of iTunes that pre-date January 2007.

3.      **Apple's Proposal**

During the meet and confer, Apple suggested a proposal whereby Apple would produce the complete source code for iTunes 6.0.1, subject to Samsung's agreement that it would not require production of source code for other versions of iTunes unless it articulated a good faith basis for needing the additional versions.  Apple also suggested that this proposal would moot the printouts dispute, because Samsung's iTunes 6.0.1 printouts do not exceed 10% of the entire software release, they only exceed 10% of the subset of the code that Apple has made available for inspection at Gibson Dunn's Palo Alto office.  Apple's position would not resolve the failures in Apple's discovery obligations.

Samsung cannot any longer accept piecemeal or incomplete production of iTunes source code. As you know, Samsung has identified all iTunes versions that pre-date January 2007 as

2

invalidating prior art to every asserted claim of the '414 patent.  Samsung is therefore entitled to discovery into all of these versions, each of which is different from the others and therefore may support Samsung's invalidity defenses on any given claim in different ways.  As for Apple's suggestion that its proposal would moot the dispute over Apple's improper withholding of the iTunes 6.0.1 printouts, it would not prevent Apple from employing the same baseless objection as to future printouts from other iTunes versions.  Samsung has been prejudiced enough by Apple's tactics, and cannot agree to leave the door open for Apple to withhold additional printouts on its meritless interpretation of "software release."  Therefore it is clear that the parties are at an impasse on both of these outstanding issues.

Samsung notes that Apple has consistently requested all source code for all versions of software used in the Samsung devices Apple accuses of infringement.  (*See*, *e.g.*, Request for Production No. 274.)  Based on Apple's position as to the scope of source code it requires, Samsung expects that Apple will produce the complete source code for all versions of iTunes that pre-date January 2007 by March 6.  Samsung also expects that Apple will deliver the withheld source code printouts by March 6.

Very truly yours,

Amar L. Thakur

Amar L. Thakur

# EXHIBIT 24

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

2100 McKinney Avenue
Dallas, TX 75201-6912
Tel 214.698.3100
www.gibsondunn.com

Michael A. Valek
Direct: +1 214.698.3369
Fax: +1 214.571.2916
MValek@gibsondunn.com

Client: 03290-00026

March 1, 2013

VIA ELECTRONIC MAIL

Michael L. Fazio
Quinn Emanuel
865 S. Figueroa St., 10th Floor
Los Angeles, CA 9017

Re:     Apple Inc. v. Samsung Electronics Co. et al., No. 12-cv-0630

Dear Michael:

I write to follow up on certain issues discussed during the parties' lead counsel meet and confer on February 15-16, 2013, including issues identified in Samsung's letter from Mr. Fazio and its letter from Mr. Thakur both dated February 22, 2013.  Apple expects that Samsung will similarly provide its response to the issues we discussed during the meet and confer and specifically those matters identified in my letters to you dated February 19 and 27, 2013.

Apple's Third and Seventh Set of Requests for Production

RFP No. 168:  Apple agrees to limit this request to documents that describe the features and functionality accused by Samsung in its Infringement Contentions.

RFP No. 171 and RFP No. 172:  With the exception of documents related to the asserted '239 patent, Apple agrees to limit Request 171 to documents related to the conception and reduction to practice of the Samsung Patents-in-Suit, and to limit Request 172 to the production or logging of invention disclosure forms.  In addition to these categories, Apple seeks documents relating to inventorship of the '239 patent from the case titled Computerized Automation Technologies v. Piotrowski, Case No. 95-CV-322-H (N.D. Ok.), and any documents about inventorship provided to Samsung by the named inventors of the '239 patent or their representatives.

RFP No. 204: Apple agrees to limit the scope of Request 204 to the asserted claims of the Samsung Patents-In-Suit.  Apple also agrees that for purposes of this Request, "subject matter" and "invention claimed" mean the same thing.

**GIBSON DUNN**

Michael L. Fazio
March 1, 2013
Page 2


RFP No. 220:  Apple proposes that both parties agree to identify key personnel involved in licensing the patents-in-suit and comparable technology.  Please indicate whether Samsung will agree to this proposal.

RFP No. 416:  Apple disagrees with Samsung's characterization of certain points of the discussion relating to Request 416.  First, the terminology used in the '470 patent refers to many different features relating to "On-screen Display" or "OSD," including "On-screen display (OSD) window," "On-screen display (OSD) menu window," "OSD processing unit," "OSD menu," and "OSD."  The '470 patent does not, however, use the terms "on screen window display" and "on screen window menu display," as Samsung indicates.  Second, at no point before or during the meet and confer did Apple concede that "the '470 patent does not require compliance with any standard," and Apple does not concede that now.  Nonetheless, in an effort to compromise, Apple is amenable to limiting Request 416 to submissions to standards-setting organizations concerning the subject matter of the '470 patent, and documents related to such submissions.


Apple's Fourth Set of Requests for Production

RFP No. 275:  Apple agreed to limit this request as indicated in my February 19, 2013 letter, provided Samsung would agree to produce documents in response to the same.  Apple agrees that it will not use the fact that Samsung agreed to that limitation with respect to Apple RFP No. 275 to argue that a similar limitation is appropriate for other requests (although Apple reserves the right to argue that a similar limitation is appropriate for other requests irrespective of Samsung's agreement as to Apple RFP No. 275).

Samsung's Second Set of Preliminary Injunction Requests for Production

RFP Nos. 1 and 3:  Apple has conducted a reasonably diligent search and identified all custodians likely to have responsive documents.  Apple has or will produce responsive, non-privileged documents from these custodians.

Samsung's Second Set of Requests for Production

RFP Nos. 61 and 116:  Apple has received Samsung's letter of today regarding the cases it believes have a "technological nexus" to this one and will respond after having an opportunity to consider the same.

RFP No. 73:  Apple continues to wait for Samsung to identify its key licensing custodians and produce non-privileged documents from them relating to licensing discussions relating to

**GIBSON DUNN**

Michael L. Fazio
March 1, 2013
Page 3

Samsung's asserted patents.[1]  As we explained, there do not appear to be any licensing custodians on Samsung's disclosures to date.  In contrast, Apple has already identified its key licensing custodians, Mr. Watrous and Mr. Teksler, and agreed to produce such documents (relating to Apple's asserted patents) from them in response to other of Samsung's requests.

RFP Nos. 84-86:  Apple has agreed to conduct a diligent search of the custodial files of Phillip Schiller, Greg Joswiak, Steve Sinclair, Art Rangel, James Imahiro, Eric Jue and Stan Ng.  The specifics of the attorney interviews of these custodians and collections by Apple's counsel are attorney work product.

RFP No. 129:  As explained in our meeting, Samsung's Request No. 129 is overbroad, potentially encompassing any document relating to any effort to sell any of Apple's products.  Moreover, this request is unnecessary given Apple's agreement to produce documents in response to other requests.  Samsung asked Apple to further articulate the scope of documents it has already agreed to produce, which may also be responsive to Request No. 129.  To that end, Apple has, subject to its stated objections, agreed to produce documents in response to Samsung Request Nos. 49, 78, 80, 118-125, 331-333 and 523-524.  Apple has also disclosed search terms for its marketing custodians, which include the following terms:  doctext co (platform) near/10 doctext co (loyalty or stick* or switch*); doctext co (stickiness); and doctext co (sticky).  Apple is producing non-privileged documents responsive to these requests and search terms obtained from these custodians.  Accordingly, Apple believes it has fully met its discovery obligations with respect to any permissible scope of documents within this otherwise overbroad and unduly burdensome request.

<u>Samsung's Third Set of Requests for Production</u>

Apple understands that the parties have agreed to address requests relating to financial documents by March 8.  Apple will memorialize its positions regarding Requests 192, 195-196, 198, and 199 at that time.

<u>Samsung's Fifth Set of Requests for Production</u>

RFP Nos. 259-261:  As discussed during our meeting and in Apple's February 19th letter, Apple has asked Samsung whether it will produce all drafts, correspondence and other documents related to its "deep dive" and other market research report in addition to the final reports themselves.  Such documents are similar in scope to the documents Samsung requests from Apple through these requests.  Samsung has not yet provided any response.

---

[1]  Such documents would be responsive to at least Apple RFP No. 221.

# GIBSON DUNN

Michael L. Fazio
March 1, 2013
Page 4

Samsung's Seventh Set of Requests for Production

RFP Nos. 315-16:  Apple understands these requests to be subsumed within Samsung Request No. 326 to which Apple has already agreed to produce documents.  Accordingly, subject to its previously-stated objections, Apple has and will continue to produce documents responsive to these requests to the extent located after a reasonably diligent search.

RFP Nos. 328 and 337-349:  Subject to its previously-stated objections, Apple has and will continue to produce documents responsive to Samsung Request No. 328 to the extent located after a reasonably diligent search.  Apple continues its objections to Samsung Request Nos. 337-349, which are either too vague for Apple to formulate a reasonable search or seek information regarding irrelevant matters ostensibly for the purpose of improper collateral attack on Apple's reputation.  As explained in the meet and confer, Apple is not withholding documents responsive to other requests on the basis of its objections to Samsung Request Nos. 337-349, but neither is it formulating specific searches or search terms for these requests.

Samsung's Ninth Set of Requests for Production

Apple will address these issues by separate letter.

Apple's Inventor Production

Samsung asked that Apple further explain its production from Michael Matas and Keith Mortensen.  As you know, Mr. Matas is no longer an Apple employee.  Apple collected and ran search terms on the custodial files of Mr. Matas in Apple's possession, custody and control.  The search terms Apple used for Mr. Matas have been disclosed to Samsung and Samsung has raised no objections to the same.  Apple produced all responsive, non-privileged documents located through this search at least ten days in advance of Mr. Matas's deposition.

Apple also conducted a diligent search for relevant documents from Mr. Mortensen.  While Samsung complains that only one document was produced from Mr. Mortensen's files, it ignores the fact that for several of its inventors Samsung has produced no documents at all. Samsung claims this is because these inventors left Samsung prior to this litigation at a time when it was under no obligation to retain their files.  The same is true of Mr. Mortensen.  Mr. Mortensen left Apple in 2003, after the '959 patent was filed, and was employed elsewhere for several years.  Mr. Mortensen has since returned to Apple, but his current employment is unrelated to the subject matter of the '959 and '604 patents.  Apple collected and searched those custodial files that remain in its possession, custody or control, including those relating to Mr. Mortensen's most recent employment at Apple, using its disclosed search terms (to

# GIBSON DUNN

Michael L. Fazio
March 1, 2013
Page 5

which Samsung has not objected).  Apple produced all responsive, non-privileged documents located though this search.

Samsung has proposed that both parties agree not to request further information regarding retention of former employee documents.[2]  In light of the explanation provided above, Apple believes that this agreement should extend to Mr. Matas and Mr. Mortensen as well.  Please indicate whether Samsung will agree to the same.

<u>Apple's Search Term Disclosures</u>

The form of Apple's current search term disclosures is sufficient under the Federal Rules and the Court's orders.  Apple declines Samsung's request to provide "transparency disclosures" that correlate production numbers with custodians as this information is already available through review of the metadata and load files that both parties are already producing.

<u>Samsung's Requests Related to WAIS</u>

Apple responded to Samsung's requests relating to the production of WAIS documents and source code in its letter dated February 22, 2013.

Although it continues its objection to Samsung's request for "WAIS-compliant" documents, Apple has agreed to investigate whether it could locate the source code Samsung has requested for AppleSearch, Rosebud and Reporters and will produce such code to the extent Apple locates it.  Samsung indicated in the meet and confer that the production of such code would likely satisfy its requests related to AppleSearch, Rosebud and Reporters and Apple agreed to look into the same in an effort to provide an acceptable compromise to the parties' dispute on this issue.  Please let us know if Samsung will agree that the production of source code for AppleSearch, Rosebud and Reporters, to the extent Apple can locate such, will resolve this dispute.  Per the requests on page 5 of Samsung's February 22, 2013 letter, Apple confirms that Keven Tiene, Charles Bedard, David Casseras, Steve Cisler, Tom Erickson, Eric Roth, John Thompson-Rohrlich, Gitta Salomon, Oliver Steele and Ruth Ritter are not current Apple employees.  Apple has learned that Ms. Ritter was briefly employed by Apple in 1990, but has searched for and does not have any custodial documents for Ms. Ritter.  Apple has collected documents from Kazu Yanagihara and will produce non-privileged, responsive documents from his custodial files, if any, per the timeline in Apple's February 22nd letter.  Apple has conducted a reasonable search and is not aware of WAIS-related documents from any other employees or former employees, including Ms. Vratny, in its possession, custody or control.

---

[2]  *See* Feb. 22 Letter from M. Fazio, at 6-7.

**GIBSON DUNN**

Michael L. Fazio
March 1, 2013
Page 6


Finally, while Samsung suggests in its letter that Apple must search "back-up tapes," it points to no exceptional circumstances or good cause for Apple to undertake the substantial burden and cost of doing so.  Indeed, as Apple explained during the meet and confer, there are numerous areas where Samsung's production is deficient and in fact some areas (such as former employee inventor documents) where Samsung claims not to have any documents whatsoever in its near-term or live storage records.  Apple has not asked Samsung to search "back-up tapes" for additional responsive documents at this time.  It is unproductive for Samsung to continue suggest that Apple has some sort of unilateral obligation to undertake extraordinary and burdensome efforts to respond to its requests, when Samsung has not done the same for Apple's requests.

<u>Samsung's Requests Related to Sherlock</u>

Apple responded to these requests in its letter dated February 22, 2013.

<u>Samsung's Requests Related to iSync and Sync Services</u>

Apple has produced the iSync and Sync Services source code it has located after a reasonably diligent search.  Samsung has not identified any particular deficiencies with respect to the source code Apple has produced.

Apple has located some materials related to the 2004 World Wide Development event and, after reviewing them, will produce non-privileged materials to the extent they are responsive to your request.

<u>Samsung's Requests to iTunes Source Code</u>

Apple will make the user interface source code for iTunes 6.0.1 available for inspection.  As we discussed during our meeting, Apple continues its objection that this code is not pertinent to the functionality identified in Samsung's invalidity contentions, nevertheless Apple has agreed to produce this code as a compromise to attempt to resolve the parties' dispute with respect to production of the same.  Samsung agreed not to seek additional user interface source code for other versions of iTunes unless it articulates a specific and good faith basis for needing to inspect the same.  As Apple has noted, Samsung's invalidity contentions are limited to iTunes 6.0.1 and it is extremely burdensome for Apple to collect user interface code for outdated versions of iTunes.

Sincerely,


*/s/ Michael A. Valek*

# EXHIBIT 25

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

March 3, 2013

Michael A. Valek
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Dallas, TX 75201-6912

Re:   Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)

Dear Counsel:

I write in response to your March 1 letter to Michael Fazio.  Samsung will respond to the entirety of your letter, but would like to make one important point now.  Regarding iTunes source code, it is not correct that if Apple provided user interface code for iTunes 6.0.1, then "Samsung agreed not to seek additional user interface source code for other versions of iTunes unless it articulates a specific and good faith basis for needing to inspect the same," as you state in your letter. Apple made this proposal for the first time at the February 15-16 lead counsel meet and confer; in response, Samsung said we would consider it and respond after conferring with our client. After consideration of Apple's proposal, we explained in my letter of February 28 why Apple's proposal does not solve any of the problems we identified at the lead counsel meet and confer.

Samsung asks for a response to my February 28 letter no later than March 6, as well as production by that date of the complete source code for all versions of iTunes that pre-date January 2007 and of the withheld iTunes 6.0.1 printouts.

Very truly yours,

Amar L. Thakur

# EXHIBIT 26

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Joshua Furman
Direct: +1 212.351.2461
Fax: +1 212.351.5261
JFurman@gibsondunn.com

January 8, 2013

<u>VIA E-MAIL</u>

Amar Thakur
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figeroa St.
Tenth Floor
Los Angeles, CA 90017

Re:   *Apple v. Samsung* Case No. 12-cv-630

Dear Amar:

Pursuant to section 11(i) of the Protective Order, we are sending the documents printed by Mr. Jackson on January 7, 2013, bearing the Bates Numbers of 630OFFAPPLESOURCECODE_000411 through 630OFFAPPLESOURCECODE_000427 from the iTunes 7.3.0 source code to Mr. Joseph LeRoy in your San Francisco office.

Pursuant to section 11(j) of the Protective Order, Apple objects to Samsung's excessive printing of the iTunes 6.0.1 source code made by Mr. Jackson on January 3, 2013 and January 7, 2013, and particularly those documents bearing Bates Numbers 630OFFAPPLESOURCECODE_000174 through 630OFFAPPLESOURCECODE_000453 (except for the document mentioned above, which is from the 7.3.0 release of iTunes).  The printing of the source code contained in these documents is presumptively excessive under section 11(i) of the Protective Order, as it contains approximately 25% of the iTunes 6.0.1 source code release, and thus far exceeds "10% or more of a specific software release." Samsung is not permitted to print large blocks of source code "as an alternative to reviewing that Source Code electronically on the Confidential Source Code Computer, as the parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere." *Id.*

On December 28, 2012 Samsung printed approximately 5.2% of the iTunes 6.0.1 release bearing the Bates Numbers 630OFFAPPLESOURCECODE_000001 through 630OFFAPPLESOURCECODE_000088.  Because that range of printouts was compliant with the Protective Order, Apple produced printed copies of those printouts on December 31, 2012.   Accordingly, to the extent that Samsung would like to review the printouts made bearing bates range 630OFFAPPLESOURCECODE_000089 through 630OFFAPPLESOURCECODE_000453 and select for production only those pages of the

# GIBSON DUNN

Amar Thakur
January 8, 2013
Page 2


source code that are actually necessary, up to 10% of the code, these printouts are available at Gibson Dunn's Palo Alto office, with the source code computer.

Going forward, because Samsung has far exceeded the allowable limit for printouts from the source code for iTunes 6.0.1 and has provided no justification as to why the presumption in the protective order does not apply, Apple objects to any additional printouts of iTunes 6.0.1.

Moreover, Samsung has engaged in an open-ended review of the source code without providing Apple a clear understanding of the days and times the reviewers will be inspecting the source code computer nor has Samsung provided an explanation as to why rolling open-ended inspection is reasonable.  In an effort to be accommodating Apple has not objected, but notes that Samsung is not acting in accordance with the standards unreasonably imposed on Apple during the review of Samsung's source code.  *See e.g.,* Email from Mr. Rezvani of November 6, 2012 (stating Samsung is unable to accommodate a request for inspection on November 9, 2012); Second Email from Mr. Rezvani of November 6, 2012 (stating "Paragraph 11(f), for example, speaks of inspection 'upon reasonable request.'  It is not reasonable for Apple to expect to add another day to its initial inspection after having repeatedly represented that it would inspect on two days.").  Accordingly, for future inspections, please provide, in writing and with adequate notice, specific dates on which Samsung requests to inspect the source code computer and an explanation as to why that request is reasonable.

Sincerely,


Joshua Furman

# EXHIBIT 27

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3227**

WRITER'S INTERNET ADDRESS
**michaelfazio@quinnemanuel.com**

January 10, 2013

**<u>Via E-Mail</u>**

Joshua Furman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York  10166-0193

Re:     <u>Apple v. Samsung Elecs. Co. et al, Case No 12-cv-630</u>

Dear Counsel:

I write in response to Apple's January 8th letter regarding Samsung's review of Apple's source code made available for inspection at Gibson Dunn.

Apple contends, pursuant to section 11(i) of the Protective Order, that Samsung has printed "approximately 25% of the iTunes 6.0.1 source code release."  This is simply not the case.  The Protective Order allows for a party to object when a party has printed "10% or more of a specific software release," and Samsung has not done so here.  Your January 7th letter admits that portions of iTunes, including at least the source code for the user interface, are excluded from Apple's production.  Apple has not made the iTunes 6.0.1 "software release" available for inspection, and has instead apparently hand-picked a subset of code that Apple considers relevant.  This is not a "software release" pursuant to Section 11(i) of the Protective Order; that provision does not permit a party to withhold source code, or game its percentage calculations, based on an incomplete production.

Indeed, Apple appears to have created a self-fulfilling prophecy, producing limited subsets of certain code rather than entire software releases – yet complaining that Samsung has printed too much of the limited subset of code that Apple produced.  The Protective Order does not

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666 FAX +7 495 797 3667
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

authorize this gamesmanship.  Apple's complaints only highlight the impropriety of its failure to produce entire software releases.

Apple must produce the code bearing Bates numbers 630OFFAPPLESOURCECODE_000089 through 630OFFAPPLESOURCECODE_000453 without any further delay.  Please confirm Apple will do so.  Moreover, Samsung will be forced hold Mr. Freedman's deposition open as a consequence of Apple's discovery misconduct – including not only its refusal to provide the full iTunes 6.0.1 software release, but its impermissible refusal to deliver printouts from Apple's incomplete production.  Samsung reserves its rights to seek other relief.

Finally, Apple's letter requests that Samsung provide, for future inspections, "an explanation as to why that request is reasonable."  Samsung declines Apple's invitation to impose a new requirement on Samsung that is at odds with the Protective Order.  Indeed, Section 11(g) of the Protective Order requires only that Samsung provide "two (2) days notice prior to any additional inspections" of the source code.  Samsung appreciates that Apple has allowed, without objection, Samsung's reviewers to review the source code on a rolling basis to date, and Samsung will provide the notice that is required by Section 11(g) going forward.

Please immediately produce all source code that Samsung has printed no later than January 11, 2013.

Very truly yours,

Michael L. Fazio

# EXHIBIT 28

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3227**

WRITER'S INTERNET ADDRESS
**michaelfazio@quinnemanuel.com**

January 12, 2013

<u>**Via E-Mail**</u>

Joshua Furman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York  10166-0193

Re:   <u>Apple v. Samsung Elecs. Co. et al, Case No 12-cv-630</u>

Dear Counsel:

I write in regards to Samsung's January 10th letter regarding Samsung's review of Apple's source code made available for inspection at Gibson Dunn. As our letter made clear, Apple has no basis to withhold Samsung's requests for printed portions of the iTunes 6.0.1 software release. We asked that Apple comply with its obligations under the Protective Order by producing all outstanding source code printouts by January 11th, but Apple neither produced these printouts nor provided any response to our letter. Samsung is prejudiced by Apple's continued and unjustified withholding of source code discovery. As we have stated in response to numerous deficiencies with respect to the iTunes source code, Samsung reserves its rights and currently plans to hold Gordon Freedman's deposition open as a consequence of Apple's refusal to provide printed copies of the iTunes source code as well as Apple's refusal to produce this software release in full.

Because this source code relates to the subject matter of Mr. Freedman's deposition this week, please provide a time that you are able to discuss this issue by telephone on January 14, 2013.

quinn emanuel urquhart & sullivan, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666  FAX +7 495 797 3667
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

Very truly yours,

Michael L. Fazio

# EXHIBIT 29

Amar,

The source code computers will be available starting at 11:00 AM tomorrow morning.

Regards,
Josh


Joshua R. Furman

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2461 • Fax +1 212.351.5261
JFurman@gibsondunn.com<mailto:JFurman@gibsondunn.com> •
www.gibsondunn.com<http://www.gibsondunn.com/>

From: Amar Thakur <amarthakur@quinnemanuel.com<mailto:amarthakur@quinnemanuel.com>>
Date: Tuesday, January 8, 2013 2:57 PM
To: "Krevitt, Josh" <JKrevitt@gibsondunn.com<mailto:JKrevitt@gibsondunn.com>>, "Rho, Jennifer"
<JRho@gibsondunn.com<mailto:JRho@gibsondunn.com>>, *** Apple/Samsung
<Apple/Samsung@gibsondunn.com<mailto:Apple/Samsung@gibsondunn.com>>, 'WH NDCal
<WHAppleSamsungNDCalIIService@wilmerhale.com<mailto:WHAppleSamsungNDCalIIService@wilmerhale.com>>
Cc: Samsung NEW <SamsungNEW@quinnemanuel.com<mailto:SamsungNEW@quinnemanuel.com>>
Subject: Apple v. Samsung, 12-cv-630 (LHK) - Letter re Source Code Inspection

Counsel,

Please see attached correspondence.

Best, Amar

Amar L. Thakur
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3263 Direct
858-248-0479 Mobile
213-443-3000 Main Office Number
213-443-3100 Fax
amarthakur@quinnemanuel.com<mailto:amarthakur@quinnemanuel.com>
www.quinnemanuel.com<http://www.quinnemanuel.com/>
NOTICE: The information contained in this e-mail message is intended only for the personal and confidential
use of the recipient(s) named above. This message may be an attorney-client communication and/or work
product and as such is privileged and confidential. If the reader of this message is not the intended recipient
or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received
this document in error and that any review, dissemination, distribution, or copying of this message is strictly
prohibited. If you have received this communication in error, please notify us immediately by e-mail, and
delete the original message.

_____

This message may contain confidential and privileged information. If it has been sent to you in error, please

reply to advise the sender of the error and then immediately delete this message.
_____

# EXHIBIT 30

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

January 31, 2013

**<u>Via E-Mail</u>**

Joshua Furman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York  10166-0193

Re:     <u>Apple v. Samsung Elecs. Co. et al, Case No 12-cv-630</u>

Dear Counsel:

I write in response to Apple's January 14th letter regarding Apple's refusal to produce iTunes 6.0.1 source code printed by Samsung's source code reviewers from the review machines at Gibson Dunn's Palo Alto office.

Apple's objections to Samsung's "excessive printing" under Section 11(i) of the Protective Order rest on the mistaken assumption that Samsung's printing, was in fact, excessive.  You claim that Samsung has printed "approximately 37% of the iTunes 6.0.1 source code release," yet nowhere do you provide any precision as to the actual size of the iTunes 6.0.1 software release.  Indeed, Apple has not produced the entire source code tree for iTunes 6.0.1, so Samsung is not even able to independently verify the accuracy of Apple's 37% assertion.  And as Samsung's January 14 letter states, Apple's incomplete production of this code renders Apple's calculations highly suspect.  Since Section 11(i) of the Protective Order only allows printed source code to be withheld as presumptively excessive if it exceeds 10% or more of a specific *software release*, please provide, no later than February 4, a complete list of each and every file in the iTunes 6.0.1 software release and provide, for each file, the length in printed pages of that file.  Please also provide the sum total of these page counts.

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666  FAX +7 495 797 3667
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

Samsung expects that the above exercise will reveal that Samsung has, in fact, *not* printed more than 10% of the iTunes 6.0.1 software release, and that Apple will withdraw its objection. Accordingly, please produce all withheld printed source code no later than January February 4, 2013.

Very truly yours,

Amar L. Thakur

# EXHIBIT 31

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

February 10, 2013

**Via E-Mail**

Joshua Furman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York  10166-0193

Re:     Apple v. Samsung Elecs. Co. et al, Case No 12-cv-630

Dear Counsel:

I write as a follow-up to my January 31 letter regarding Apple's refusal to produce iTunes 6.0.1 source code printed by Samsung's source code reviewers from the review machines at Gibson Dunn's Palo Alto office.

You first refused to produce this source code in a January 7 letter, citing Section 11(i) of the Protective Order.  As Samsung has explained repeatedly since then, in letters dated January 10th, January 12th, and January 31st, Apple's method for calculating a software release under Section 11(i) of the Protective Order is incorrect.  Apple's continued silence on this matter, including failing completely to reply to Samsung's January 31 letter, belies any argument that Apple's objection to this production is justifiable.  If Apple will not withdraw this objection by Monday, February 11, Samsung will understand that the parties are at an impasse on this issue.  Accordingly, Samsung will move to compel production of this improperly withheld source code.

quinn emanuel urquhart & sullivan, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666 FAX +7 495 797 3667
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

Very truly yours,

Amar L. Thakur

# EXHIBIT 32

**FILED UNDER SEAL**

# EXHIBIT 33

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

January 16, 2013

Joshua Furman
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193

Re:     Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)

Dear Joshua:

I write to follow up on my letter of January 11, 2013, regarding yet more deficiencies in Apple's production of iSync source code.

As you know, in late November Apple acknowledged that Samsung "would want to inspect source code for both current and historical versions of iSync and iTunes before it deposed Mr. Freedman."  (11/30/2012 Letter from Brian Buroker, at 2.)  For precisely this reason, Apple proposed delaying Mr. Freedman's deposition, to give Apple sufficient time to find and produce the missing source code.  (*Id.*)  Samsung accepted Apple's representation that it would produce both the current and historical versions of iSync, and would allow Samsung sufficient time to inspect the code in advance of Mr. Freedman's deposition; on that basis, Samsung agreed to postpone Mr. Freedman's deposition to January 16, 2013.  (12/2/2012 email chain between Michael Fazio and Brian Buroker.)

Yesterday – one day before Mr. Freedman's rescheduled deposition – Apple produced, for the very first time, over 1.5 million files of new source code.  This massive source code dump, which Apple made *without any notification to Samsung*, appears to include thousands – perhaps hundreds of thousands – of iSync-related files.  There is quite obviously insufficient time for Samsung to inspect this late-produced iSync source code in advance of Mr. Freedman's deposition.  In light of this massive last-minute production, and the many other deficiencies in

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000  FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

Apple's production and treatment of iTunes and iSync prior art source code, Samsung will be holding open Mr. Freedman's deposition.

Apple must fulfill its obligations to produce all current and historical versions of iSync software as soon as possible.  The iSync source code is material prior art, described in Samsung's Patent Local Rule 3-3 and 3-4 Disclosures, and is clearly responsive to Samsung's long-pending discovery requests, including Request for Production No. 293.

Please confirm that Apple has now produced all source code for all versions of iSync.  Also, please specifically confirm that Apple has produced the missing iSync source code files we requested in my January 11 letter.  If Apple has not produced all code for all versions of iSync, please specify exactly what code is being withheld, as well as the basis for withholding it.

Also, in order for Samsung to verify which code has been produced, please identify the iSync commercial release version that corresponds with each internal version number.

In addition to holding open Mr. Freedman's deposition, Samsung also reserves the right to seek any additional relief from the Court relating to Apple's continuing and systematic failure to timely produce this and other highly relevant prior art source code.

Very truly yours,

Amar L. Thakur

2

# EXHIBIT 34

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

February 21, 2013

Michael A. Valek
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Dallas, TX 75201-6912

Re:     Apple Inc. v. Samsung Elecs. Co., Ltd., et al., Case No. 12-cv-00630 (N.D. Cal.)

Dear Counsel:

I write regarding Apple's continuing refusal to identify which commercial release version of iSync corresponds with each internal version number Apple has provided on its source code computers.  At last week's lead counsel meet and confer, Apple stated that it would not provide this information unless Samsung could point to a specific Request for Production to which it was responsive.  Apple's condition is unreasonable.  Apple has conceded that these documents are responsive and relevant by producing them, and cannot now retroactively seek to prevent Samsung from using them as prior art by withholding critical information, including the version numbers that would allow us to determine their dates of release.

Although Apple's condition is unreasonable, in the spirit of cooperation and compromise we want to specify that, among many others, Request for Production No. 293 seeks "All DOCUMENTS, including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides RELATING TO APPLE's iSync software."  The small category of documents we have requested, documents sufficient to identify which commercial release version corresponds to the internal version numbers of iSync, is clearly responsive to this Request.

Apple's decision to withhold this narrow but important category of information continues to

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000  FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

prejudice Samsung.  Please produce these documents by no February 28.  Otherwise the parties are at an impasse on this issue.

Very truly yours,

Amar L. Thakur

# EXHIBIT 35

**FILED UNDER SEAL**

# EXHIBIT 36

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Plaintiff Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**AGREED UPON PROTECTIVE ORDER REGARDING DISCLOSURE AND USE OF DISCOVERY MATERIALS** |
| SAMSUNG ELECTRONICS CO., LTD.; a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Counterclaim-Defendant. | |

AGREED UPON PROTECTIVE ORDER REGARDING DISCLOSURE AND USE OF DISCOVERY MATERIALS
12-cv-00630-LHK (PSG)

1

Case 5:12-cv-00630-LHK Document 257-1 Filed 09/05/12 Page 38 of 81

## AGREED UPON PROTECTIVE ORDER
## <u>REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS</u>

Plaintiff and counterclaim-defendant Apple Inc. ("Apple") and defendants and counterclaim-plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") (collectively referred to herein as the "Parties") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

1. <u>**PURPOSES AND LIMITATIONS**</u>

(a)    Unless otherwise agreed by the parties, Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(b)    The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a).  Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below.  If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

2. <u>**DEFINITIONS**</u>

(a)    "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things,

testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

(b)   "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party, (ii) partners and associates of such counsel to whom it is reasonably necessary to disclose the information for this litigation, and their paralegals and support staff, and (iii) outside, independent attorneys contracted to provide legal advice to a Party in connection with this action.

(c)   "Patents-in-suit" means U.S. Patents Nos. 5,946,647, 6,847,959, 8,046,721, 8,074,172, 8,014,760, 5,666,502, 7,761,414, 8,086,604, 7,756,087, 7,551,596, 7,672,470, 7,577,757, 7,232,058, 6,292,179, 6,226,449, and 5,579,239, and any other patent asserted in this action, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

(d)   "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e)   "Producing Party" means any Party or non-party entity that discloses or produces any Discovery Material in this case.

(f)   "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE," as provided for in this Order.

(g)   "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h)   "Source Code" means confidential and proprietary computer code, scripts, assembly, object code, source code listings and descriptions of source code, object code listings and descriptions of object code, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any application-specific integrated circuit (ASIC) or other chip.

3.   **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rule of Civil Procedure 6.

4.   **SCOPE**

(a)   The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

(b)   Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Discovery Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Discovery Material to an individual who prepared the Discovery Material.

(c)   Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with consent of the Producing Party or by order of the Court.

(d)   This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

5.   **DURATION**

Even after the termination of this case, and unless otherwise indicated in this Order, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or an order from this Court otherwise directs.

6.   **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)   <u>Basic Principles</u>.  All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function, except as expressly provided herein.  Protected Material shall not voluntarily be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(b) <u>Patent Prosecution Bar</u>. Absent the written consent of the Producing Party, anyone who receives one or more items designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" shall not be involved, directly or indirectly, in any of the following activities: advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications (whether for design or utility patents), specifications, claims, and/or responses to office actions, or otherwise affecting the disclosure in patent applications or specifications or the scope of claims in patents or patent applications relating to the subject matter of the patents-in-suit before any foreign or domestic agency, including the United States Patent and Trademark Office. These prohibitions are not intended to and shall not preclude (i) participating in or advising on any reexamination or reissue proceeding by Samsung's Outside Counsel with respect to any patents in which Apple has any interest, or participating in or advising on any reexamination or reissue proceeding (except for participating in or advising on, directly or indirectly, claim drafting or amending claims) by Apple's Outside Counsel with respect to any patents in which Apple has any interest; and (ii) participating in or advising on any reexamination or reissue proceeding by Apple's Outside Counsel with respect to any patents in which Samsung has any interest, or participating in or advising on any reexamination or reissue proceeding (except for participating in or advising on, directly or indirectly, claim drafting or amending claims) by Samsung's Outside Counsel with respect to any patents in which Samsung has any interest.

(c) The prohibitions in Paragraph 6(b) shall begin when access to "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" materials are first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

(d) <u>Secure Storage</u>. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

(e) <u>Legal Advice Based on Protected Material</u>. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in

part upon Protected Materials, provided counsel does not disclose the Protected Materials themselves, the content of those Protected Materials, or the fact of those particular Protected Materials' existence except as provided in this Order.

(f)     <u>Limitations</u>.  Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to Order of the Court.  Notwithstanding the foregoing, a Producing Party may not disclose its own Protected Material to the extent such Protected Material is also the Protected Material of any other party (*e.g.*, settlement discussions and agreements containing confidentiality obligations), without the prior written consent of such other party, unless compelled to do so by a Court of competent jurisdiction.

7.     **<u>DESIGNATING PROTECTED MATERIAL</u>**

(a)     <u>Available Designations</u>.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein: "CONFIDENTIAL," "CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE."

(b)     <u>Written Discovery and Documents and Tangible Things</u>.  Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Paragraph 7(a) may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.  In the event that original documents are produced for inspection, the original documents shall be presumed "HIGHLY

CONFIDENTIAL—ATTORNEYS' EYES ONLY" during the inspection and re-designated, as appropriate during the copying process.

(c)     <u>Depositions and Testimony</u>.  Parties or testifying persons or entities may designate depositions and other testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony are designated within twenty one (2l) days of receipt of the transcript of the testimony.  If no indication on the record is made, all information disclosed during a deposition shall be deemed "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" until the time within which it may be appropriately designated as provided for herein has passed.  Any Party that wishes to disclose the transcript that has been deemed "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" as a result of no designation having been made on the record at the time the testimony was given, or information contained therein, may provide written notice of its intent to treat the transcript as non-confidential, after which time, any Party that wants to maintain any portion of the transcript as confidential must designate the confidential portions within fourteen (l4) days, or else the transcript may be treated as non-confidential.  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

8.     **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a)     A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects information that qualifies for protection under Federal Rule of Civil Procedure 26(c).

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i)     The Receiving Party's Outside Counsel;

(ii)     Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) such expert or consultant is not a current officer, director, or employee of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party;

(iv)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)     The Court, jury, and court personnel;

(vi)     Document processing and hosting vendors, and graphics, translation, design, and/or trial consulting services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vii)     Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(viii)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(ix)     Any other person with the prior written consent of the Producing Party or by Order of this Court.

9.     **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY"**

(a)     A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" if it contains or reflects sensitive business information that is trade secret, and/or commercially sensitive, where substantial harm from disclosure cannot otherwise be avoided.  The Parties agree that at least the following information, if non-public, shall be presumed to merit the "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" designation: trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, cost information, licensing of the Producing Party's intellectual property, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)     The Receiving Party's Outside Counsel, except that unless otherwise agreed no Outside Counsel who is involved in competitive decision-making[1], as defined by *U.S. Steel v. United States*, 730 F.2d l465, l468 n.3 (Fed. Cir. l984), shall have access to Discovery Material designated as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY";

(ii)     Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director,

---

[1]  For the absence of doubt, for the purposes of this Protective Order, "competitive decision-making" shall not include duties traditionally performed by outside counsel with respect to advising the Parties regarding this or other litigation.

or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d l465, l468 n.3 (Fed. Cir. l984), on behalf of a Party or a competitor of a Party with respect to the subject matter of the patents-in-suit; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph l2 below;

(iv)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)     The Court, jury, and court personnel;

(vi)     Document processing and hosting vendors, and graphics, translation, design, and/or trial consulting services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vii)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(viii)     Any other person with the prior written consent of the Producing Party or by order of this Court.

10.     **DISCOVERY MATERIAL DESIGNATED AS "HIGHLY CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE"**

(a)     To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b)     Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(c)     Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" shall be subject to

the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 11 below, solely to:

   (i)  The Receiving Party's Outside Counsel, except that unless otherwise agreed no Outside Counsel who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d l465, l468 n.3 (Fed. Cir. l984), shall have access to Discovery Material designated as "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE";

   (ii)  Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

   (iii)  Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d l465, l468 n.3 (Fed. Cir. l984), on behalf of a Party or a competitor of a Party with respect to the subject matter of the patents-in-suit; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph l2 below;

   (iv)  Court reporters, stenographers and videographers retained to record testimony taken in this action;

   (v)  The Court, jury, and court personnel;

   (vi)  Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

   (vii)  Any other person with the prior written consent of the Producing Party or by order of this Court.

11.  **DISCLOSURE AND REVIEW OF SOURCE CODE**

(a)    The following provisions apply to the production of Source Code that is designated "[PRODUCING PARTY'S] HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE," unless otherwise agreed by the Producing Party:

(b)    All Source Code shall be made available by the Producing Party to the Receiving Party in a secure room, on at least two secured, stand-alone computers (running a reasonably current operating system) per software platform produced, without Internet access or network access to other computers, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal, or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (hereinafter "Confidential Source Code Computer").  If it should be necessary, the Confidential Source Code Computer may be configured by the Producing Party to run other mutually agreed upon operating systems.  Except as otherwise authorized by the Producing Party, no more than a total of 25 individuals identified by the Receiving Party shall have access to the secure room in which the Producing Party produces its Source Code.

(c)    The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business.  The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.  The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (l4) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Confidential Source Code Computer.  Specific tools may include but are not limited to:  Visual Slick Edit, Source-Navigator, PowerGrep, and ExamDiff Pro, or other similar programs.  The Receiving Party shall not at any time use any compilers, interpreters or simulators in connection with the Producing Party's Source Code.

Gibson, Dunn & Crutcher LLP

AGREED UPON PROTECTIVE ORDER REGARDING DISCLOSURE AND USE OF DISCOVERY MATERIALS
12-cv-00630-LHK (PSG)

(d)      The Producing Party shall make the Source Code available electronically and in text searchable form in a secure room at the offices of the Producing Party's outside counsel as defined in paragraph 2(b) or any other location mutually agreed by the parties.

(e)      In order to verify that its Source Code has not later been altered, the Producing Party may benchmark the materials before and after they are provided but shall not install any keystroke or other monitoring software on the Confidential Source Code Computer.

(f)      The Confidential Source Code Computer shall be made available from 9:00 a.m. to 7:00 p.m. local time, Monday through Friday (excluding holidays), and other days and/or times, including weekends, upon reasonable request at least until the close of expert discovery in this action. Access on weekends or after hours shall be permitted only on three days' advance written notice.

(g)      Prior to the first inspection of any requested piece of Source Code, the requesting party shall provide fourteen (l4) days notice of the Source Code that it wishes to inspect.  The requesting party shall provide two (2) days notice prior to any additional inspections of the same Source Code, although the parties will be reasonable in accommodating requests of less than two (2) days.  The Receiving Party shall identify any individual who will be given access to the Source Code at least ten (l0) days prior to the first time any such individual is given access to the Source Code, and, during that l0-day period, the Producing Party may object to providing access to any persons so identified.  The Receiving Party shall provide two (2) days notice any time each such individual is given access to the Source Code after the first time, although the parties will be reasonable in accommodating notice of less than two (2) days.  If an objection to an individual is made by the Producing Party, it will be the burden of the Producing Party to prove that the individual should not be authorized to inspect the Producing Party's Source Code.

(h)      Proper identification of all authorized persons shall be provided prior to any access to the secure room or to the Confidential Source Code Computer.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship.  Access to the secure room or the Confidential Source Code Computer

may be denied, at the discretion of the Producing Party, to any individual who fails to provide proper identification.

(i)     The Confidential Source Code Computer shall be equipped with a printer with commercially reasonable printing speeds to print copies of the Source Code on watermarked pre-Bates numbered paper, which shall be provided by the Producing Party.  The Receiving Party may print limited portions of the Source Code only when reasonably necessary to facilitate the Receiving Party's preparation of court filings, expert reports, and trial exhibits, and shall print only such portions as are relevant to the claims and defenses in the case and are reasonably necessary for such purpose.  The Receiving Party shall not print Source Code in order to review blocks of Source Code elsewhere in the first instance, *i.e.*, as an alternative to reviewing that Source Code electronically on the Confidential Source Code Computer, as the parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere. If the Producing Party objects that the printed portions are excessive and/or not done for a permitted purpose, the Producing Party shall make such objection known to the Receiving Party within five (5) days.  Printed portions which exceed 50 continuous pages or l0% or more of a specific software release shall be presumed excessive and not done for a permitted purpose.  If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek the Court's resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose.  The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.  Except as otherwise authorized by the Producing Party, no more than a total of 40 individuals identified by the Receiving Party shall have access to the printed portions of Source Code (except insofar as such code appears in any filing with the Court or expert report in this case).

(j)     The printed Source Code shall be labeled with "[PRODUCING PARTY'S NAME] HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE." Outside counsel for the Producing Party will keep the originals of these printed documents, and copies shall be made for outside counsel for the Receiving Party on watermarked paper within 48

hours.  It is the responsibility of the Producing Party to ensure delivery of the printed documents to outside counsel for the Receiving Party within 48 hours.  The Receiving Party's outside counsel may make no more than ten (l0) additional paper copies of any portions of the Source Code received from a Producing Party, not including copies attached to court filings or used at depositions.

(k)     In addition to other reasonable steps to maintain the security and confidentiality of the Producing Party's Source Code, printed copies of the Source Code maintained by the Receiving Party must be kept in a locked storage container when not in use.  No electronic copies of the Source Code shall be provided by the Producing Party beyond the Confidential Source Code Computer.

(l)     Except as provided herein, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including, by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code).  Images or copies of Source Code shall not be included in correspondence between the parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible.  If a party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such filing will not be made absent agreement from the supplier that the confidentiality protections will be adequate.  If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or to provide written permission to the Receiving Party to produce an electronic or any other copy of Source Code for purposes of a court filing, the Receiving Party's communication and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order, and all such individuals must be identified, in accordance with paragraph 11(q), on the Confidential Source Code Access Log as reviewers and/or recipients of paper copies.  In the case where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the electronic copies shall be included on the log required by paragraph 11(q); and any other information required by paragraph

11(q) shall be included on the log. Additionally, any such electronic copies must be labeled "[PRODUCING PARTY'S NAME] HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" as provided for in this Order.

(m)  For depositions, the Receiving Party shall not bring copies of any printed Source Code. Rather, at least five (5) days before the date of the deposition, the Receiving Party shall notify the Producing Party about the specific portions of Source Code it wishes to use at the deposition, and the Producing Party shall bring printed copies of those portions to the deposition for use by the Receiving Party. Copies of Source Code that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition shall be returned to the Producing Party and securely destroyed in a timely manner following the deposition.

(n)  Other than the Confidential Source Code Computer and printer provided by the Producing Party, no electronic devices, including but not limited to laptops, floppy drives, zip drives or other hardware, shall be permitted in the secure room. Nor shall any cellular telephones, personal digital assistants, Blackberries, cameras, voice recorders, Dictaphones, telephone jacks, or other devices be permitted inside the secure room. No non-electronic devices capable of similar functionality shall be permitted in the secure room. The Receiving Party shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Confidential Source Code Computer itself or any other computer. No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized records of the Source Code and no information concerning the Source Code are being created or transmitted in any way.

(o)  Other than as provided in paragraph 11(n), the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Confidential Source Code Computer including,

without limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind. The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities or the offices of the Producing Party's outside counsel.

(p)     Unless otherwise agreed in advance by the parties in writing, following each day on which inspection of Source Code is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the secure room. The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

(q)     The Receiving Party shall maintain a Confidential Source Code Access Log identifying each hard copy (or electronic copy as permitted by paragraph 11(l)) of Source Code that it has in its possession and, for each and every time the hard copy (or electronic copy as permitted by paragraph 11(l)) of the Source Code is viewed, the following additional information: (i) the name of each person who viewed the Source Code; and (ii) whether any portion of the Source Code was copied and, if so, what portion was copied. The Producing Party shall be entitled to a copy of the log upon one (l) day's advance notice to the Receiving Party. Within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in the above-captioned action, the Receiving Party must serve upon the Producing Party the Confidential Source Code Access Log. Additionally, within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in the action, all persons to whom the paper copies of the Source Code were provided must certify in writing that all copies of the Source Code were returned to Counsel of Record for the Producing Party and that they will make no use of the Source Code or of any knowledge gained from the Source Code in any future endeavor.

(r)     Nothing herein shall be deemed a waiver of a party's right to object to the production of Source Code. Absent a subsequent and specific court or agency order, nothing herein shall obligate a party to breach any non-party license agreement relating to such Source Code.

(s)     The parties further acknowledge that some or all of the Source Code may be owned by non-parties and not in a party's possession, custody, or control.  Nothing herein shall be deemed a waiver of any non-party's right to object to the production of Source Code or object to the manner of any such production.

(t)     Any consultant or expert retained on behalf of a Receiving Party who is to be given access to a Producing Party's Source Code - whether in electronic form or otherwise - must agree in writing not to use the accessed code to write source code directly intended for commercial purposes relating to the technology at issue in this action for a period of six (6) months after the issuance of a final, non-appealable decision resolving all issues in the action.  This shall not preclude such consultants and experts from any academic work or consulting in future litigation, so long as such consulting does not involve writing source code directly intended for commercial purposes relating to the technology at issue in this action.

12.     **NOTICE OF DISCLOSURE**

(a)     Prior to disclosing any Protected Material to any person described in Paragraphs , 9(b)(iii) or l0(c)(iii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i)     the name of the Person; (ii) the present employer and title of the Person; (iii) an identification of all of the Person's past or current employment or consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person, within the last five (5) years; (iv) an up-to-date curriculum vitae of the Person; and (v) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.  Said written notice shall include an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of mobile phones and tablet computers, or relating to the acquisition of intellectual property assets relating to mobile phones and tablet computers.  The Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant.  During the pendency of this

action, including all appeals, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of mobile phones and tablet computers, or the acquisition of intellectual property assets relating to mobile phones and tablet computers.

(b)     Within seven (7) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to disclosure to the Person for good cause. In the absence of an objection at the end of the seven (7) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this seven (7) day period. If the Producing Party objects to disclosure to the Person within such seven (7) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

(c)     For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order.

(d)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(e)     An initial failure to object to a Person under this Paragraph l2 shall not preclude the non-objecting Party from later objecting to continued access to Protected Material by that Person based on new facts or circumstances for good cause shown. In this event, a Party must make a written objection to the other Party concerning the continued access of Protected Material by that Person, and the Parties must meet and confer in good faith concerning such objection. To the extent that the objection is unable to be resolved, the later-objecting Party must present its objection to the Court for resolution within no later than five (5) days of making such objection. Notwithstanding

such objection, the designated Person may continue to have access to Protected Material until judicial resolution of the objection.

13. **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)     A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)     Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection.  Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)     The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute.  The Producing Party shall have the burden of justifying the disputed designation;

(ii)     Failing agreement, the Receiving Party may bring a motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation.  The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)     Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

14. **SUBPOENAS OR COURT ORDERS**

(a)     If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

15.     **FILING PROTECTED MATERIAL**

(a)     Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file in the public record any Protected Material.

(b)     Any Receiving Party is authorized under Local Rule 79-5 to request the filing under seal with the Court of any brief, document or materials that are designated as Protected Material under this Order.  Nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

16.     **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)     The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a notice and request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)     Upon a notice and request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return within five (5) days of such notice and request such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)     Within five (5) days of the Producing Party's notice and request for the return and/or destruction of privileged Discovery Material, the Producing Party shall provide a privilege log with

entries for the inadvertently produced document(s).  The Producing Party shall maintain the

referenced document(s) until the Parties resolve any dispute concerning the privileged nature of such

documents or the Court rules on any motion to compel production of such documents.  If a dispute

arises concerning the privileged nature of the document(s) demanded or returned, the Parties shall

meet and confer in good faith in an effort to resolve the dispute.  If the Parties are unable to resolve

the dispute, the Receiving Party may file a motion to compel the production of such document(s).  In

the event of such a motion to compel, the Producing Party shall have the burden to demonstrate the

claimed privilege, work product immunity or other immunity.  However, in no case will the return of

any demanded document be delayed or refused by reason of a party's objection to the demand or by

the filing of a motion to compel, nor may a party assert the fact of the inadvertent production as a

ground for any such motion.  The Parties further agree that the Receiving Party will not use or refer

to any information contained within the document(s) at issue, including in deposition or at trial or in

any Court filing, unless and until such a motion to compel production of that document is granted by

a Court, except as such information may appear in any applicable privilege log.

17.    **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)    The inadvertent failure by a Producing Party to designate Discovery Material as

Protected Material with one of the designations provided for under this Order shall not waive any

such designation provided that the Producing Party notifies all Receiving Parties that such Discovery

Material is protected under one of the categories of this Order within fourteen (l4) days of the

Producing Party learning of the inadvertent failure to designate.  The Producing Party shall reproduce

the Protected Material with the correct confidentiality designation within seven (7) days upon its

notification to the Receiving Parties.  Upon receiving the Protected Material with the correct

confidentiality designation, the Receiving Parties shall destroy all Discovery Material that was not

designated properly.

(b)    A Receiving Party shall not be in breach of this Order for any use of such Discovery

Material before the Receiving Party receives the notice described in Paragraph l7(a), unless an

objectively reasonable person would have realized that the Discovery Material should have been

appropriately designated with a confidentiality designation under this Order.  Once a Receiving Party

has received the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 17(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)     Protected Material produced without the designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" may be so designated subsequent to production when the Producing Party failed to make such designation at the time of production through inadvertence or error.  If Discovery Material is designated subsequent to production, the Receiving Party promptly shall collect any copies that have been provided to individuals so that they can be re-labeled with the "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY— SOURCE CODE" designation.  Notwithstanding the above, such subsequent designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" materials only while the materials were not marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE" from engaging in the activities set forth in Paragraph 6(b).

18.  **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)     In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure.  The responsible disclosing Party shall also promptly take all reasonable measures to

retrieve the improperly disclosed Discovery Material and to ensure that no further or greater

unauthorized disclosure and/or use thereof is made

(b)     Unauthorized or inadvertent disclosure does not change the status of Discovery

Material or waive the right to hold the disclosed document or information as Protected.

19.   **FINAL DISPOSITION**

(a)     Not later than ninety (90) days after the Final Disposition of this case, each Party shall

return all Discovery Material of a Producing Party to the respective outside counsel of the Producing

Party or destroy such Material, at the option of the Producing Party.  For purposes of this Order,

"Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-

captioned action with prejudice, including all appeals.

(b)     All Parties that have received any such Discovery Material shall certify in writing that

all such materials have been returned to the respective outside counsel of the Producing Party or

destroyed.  Notwithstanding the provisions for return of Discovery Material, outside counsel may

retain one set of pleadings, correspondence and attorney and consultant work product (but not

document productions) for archival purposes, but must return or destroy any pleadings,

correspondence, and consultant work product that contain Source Code.

20.   **DISCOVERY FROM EXPERTS OR CONSULTANTS**

(a)     The Parties will not seek drafts of expert reports, declarations, affidavits, or notes

taken by experts retained to testify in this litigation, whether those reports, declarations, affidavits, or

notes relate to this litigation, to any prior litigation, or to any currently pending investigation,

litigation or proceeding involving any of the Parties.  The Parties will not seek documents relating to

communications between such experts and counsel, including email communications, whether

generated in connection with this litigation, a prior litigation, or any currently pending investigation,

litigation or proceeding involving any of the Parties, except for documents, information and things

included in or attached to such communications that are directly relied upon by the expert in his or

her expert report, declaration, affidavit, or testimony.

(b)     Except where a draft was produced as the only available copy, the Parties will not

inquire at deposition or trial as to the contents of drafts of expert reports, declarations or affidavits,

nor notes pertaining thereto, whether drafted in connection with this litigation, a prior litigation, or any currently pending investigation, litigation or proceeding involving any of the Parties, and the Parties will not inquire at deposition or at trial as to the expert's communications, written or oral, with counsel, whether generated in connection with this litigation, a prior litigation, or any currently pending investigation, litigation or proceeding involving any of the Parties, except to the extent that the expert explicitly references or cites information from counsel in his or her expert report, declaration, affidavit, or testimony.

(c)     Furthermore, nothing in Paragraph 20(a)-(b) is intended to restrict the Parties' ability to inquire into the basis of any of the opinions expressed by any expert in his or her report, declaration, or affidavit, including the manner by which such opinions were reached, and information considered in reaching such opinions.

(d)     Materials, communications, and other information exempt from discovery under the foregoing Paragraph 20(a)-(b) shall be treated as attorney-work product for the purposes of this litigation and Order.

21.     **ELECTRONIC DISCOVERY**

(a)     The Parties agree that no voicemail, instant messages, text messages, or materials that may be archived and/or retained in tape, floppy disc, optical disc or similar media for backup or disaster recovery shall be searched for or produced unless good cause for the production can be shown, and further subject to the Producing Party's claim of undue burden or cost.  The Parties shall meet and confer as to good cause on this issue.

(b)     Materials retained in tape, floppy disk, optical disk or similar formats primarily for back-up or disaster recovery purposes should be considered not reasonably accessible under Rule 26(b)(2) of the Federal Rules of Civil Procedure and, accordingly, should not be subject to production unless specific facts demonstrate a particular need for such evidence that justifies the burden of retrieval.  Archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are created for disaster recovery purposes and not used as reference materials in the ordinary course of a party's business operations need not be searched or produced absent good cause, and further subject to the Producing Party's claim of undue burden or cost.  Neither party need

deviate from the practices it normally exercises with regard to preservation of such "tape, floppy disk, optical disk or similar formats primarily for back-up or disaster recovery purposes" that it does not otherwise exercise when not in anticipation of litigation (*e.g.*, recycling of backup tapes is permitted).

22.     **CROSS-REFERENCE AND USE OF DISCOVERY MATERIALS**

Documents that have been or are produced (with appropriate Bates numbers) and depositions of party witnesses taken in the below-referenced pending United States proceedings involving Apple and Samsung are deemed produced in the above-captioned action, and neither party shall be deemed to have violated a protective order in the below listed matters by using such documents in the above-captioned action: *In the Matter of Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, Tablet Computers*, USITC Inv. No. 337-TA-794, and *In the Matter of Certain Electronic Digital Media Devices and Components Thereof*, USITC Inv. No. 337-TA-796, and *Apple Inc. v. Samsung Electronics Co., Ltd., et al.*, No. 5:11-cv-01846 LHK (N.D. Cal.). Any document or deposition produced by a Party in the one of the aforementioned proceedings shall be used and treated with the same level of confidentiality for purposes of this action (*e.g.*, a document designated by a Party as "Confidential Business Information" shall be treated as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" in this action) as an initial matter, but may be re-designated pursuant to Paragraph l3 of this Order. Any deposition produced pursuant to this paragraph shall be useable in this case as if the deposition were originally noticed and taken in this case; however, such prior depositions shall not count against the time limits specified under Rule 30(d)(1) of the Federal Rules of Civil Procedure or the time limits on depositions under the Court's Case Management Order dated May 2, 2012. This paragraph shall not extend to cross-use of confidential materials produced by third parties in such matters. This cross-use provision also does not apply to other forms of discovery, including, without limitation, expert reports, responses to interrogatories or requests for admission. Nothing in this paragraph, however, prohibits a party from seeking such other forms of discovery through service of formal discovery requests in this action. Any costs incurred in the above-referenced matters shall be excluded from a computation of taxable costs under Fed. R. Civ. P. 54 and N.D. Cal. Civ. L.R. 54.

23.     **MISCELLANEOUS**

(a) <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b) <u>Termination of Matter and Retention of Jurisdiction</u>. The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned matter. The Court shall retain jurisdiction after Final Disposition of this matter to hear and resolve any disputes arising out of this Protective Order.

(c) <u>Successors</u>. This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d) <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order. This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e) <u>Burdens of Proof</u>. Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f) <u>Modification by Court</u>. This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the Northern District of California is responsible for the interpretation and enforcement of this Order. All disputes concerning Protected Material, however

designated, produced under the protection of this Order shall be resolved by the United States District Court for the Northern District of California.

(g) <u>Discovery Rules Remain Unchanged</u>. Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Northern District of California, or the Court's own orders. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Northern District of California, or the Court's own orders.

(h) <u>Supersession of Any Protective Orders</u>. Except as otherwise set forth in this paragraph, this Protective Order supersedes any protective orders referenced by the Parties as applying to material disclosed before the entry of this Protective Order. Any discovery material disclosed by any Party before the entry of this Protective Order shall retain whatever confidentiality designation it originally bore. Such Protected Material that was designated as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL'S EYES ONLY" pursuant to this Court's Patent L.R. 2-2 Model Interim Protective Order, or by the Stipulated Modification to Patent L.R. 2-2 Model Interim Protective Order for Purposes of Expedited Discovery (Case No. 11-cv-01846, D.N. 76), shall be treated as if they were designated "CONFIDENTIAL—ATTORNEYS' EYES ONLY," and such Protected Material previously designated as "HIGHLY CONFIDENTIAL—SOURCE CODE" pursuant to either or both of those prior orders shall be treated as if they were designated "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE." In addition, any expert disclosed pursuant to Paragraph 7.4(a)(2) of the Model Interim Protective Order or the parties' stipulated Interim Protective Order (D.N. 80) shall be deemed to have been disclosed pursuant to Paragraph 11 of this Protective Order.

**STIPULATED AND AGREED:**

Dated: May 9, 2012                    GIBSON, DUNN & CRUTCHER LLP

                                       By:    /s/ H. Mark Lyon
                                                H. Mark Lyon

                                             Attorney for Plaintiff
                                             APPLE INC.

Dated: May 9, 2012                    QUINN EMANUEL URQUHART &
                                       SULLIVAN LLP

                                       By:    /s/ Patrick M. Shields
                                                Patrick M. Shields, signed with
                                                permission

                                             Attorney for Defendants
                                             SAMSUNG ELECTRONICS CO.,
                                             LTD., SAMSUNG ELECTRONICS
                                             AMERICA, INC., and SAMSUNG
                                             TELECOMMUNICATIONS
                                             AMERICA, LLC

**IT IS SO ORDERED.**

Date:

                                       _____
                                       Paul S. Grewal
                                       United States Magistrate Judge

EXHIBIT A

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Apple Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC*, United States District Court, Northern District of California, San Jose Division, Civil Action No. 12-cv-00630-LHK. Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual:

Present occupation/job description:


Name of Company or Firm:

Address:

Dated:


[Signature]

# EXHIBIT 37

Case 5:12-cv-00630-LHK   Document 395-7   Filed 03/12/13   Page 178 of 191

# *The*
# American Heritage®
# College Dictionary

## FOURTH EDITION



Houghton Mifflin Company
Boston · New York

*d*

The id

his new
*ge® Col*
lat a c
spect of
vised.
istingui
or deca
efining
ver 2,5
nhance

**New Wo**
*hai, cop*
*netatag,*
*weaponiz*
words th
to-date
comput
used in
help yo
in our

**Autho**
Based
Usage
invalua
conun
*hopefull*
such a
notes
bers o
and su
have v
such a

0402

Words are included in this Dictionary on the basis of their usage. Words that are known to have current trademark registrations are shown with an initial capital and are also identified as trademarks. No investigation has been made of common-law trademark rights in any word, because such investigation is impracticable. The inclusion of any word in this Dictionary is not, however, an expression of the Publisher's opinion as to whether or not it is subject to proprietary rights. Indeed, no definition in this Dictionary is to be regarded as affecting the validity of any trademark.

American Heritage® and the eagle logo are registered trademarks of Forbes Inc. Their use is pursuant to a license agreement with Forbes Inc.

Copyright © 2002 Houghton Mifflin Company. All rights reserved.

No part of this work may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying and recording, or by any information storage or retrieval system without the prior written permission of Houghton Mifflin Company unless such copying is expressly permitted by federal copyright law. Address inquiries to Reference Permissions, Houghton Mifflin Company, 222 Berkeley Street, Boston, MA 02116.

Visit our website: www.houghtonmifflinbooks.com

The American Heritage college dictionary.-- 4th ed.
    p.cm.
  Based on the fourth ed. of the American Heritage dictionary.
  ISBN 0-618-09848-8 (thumb edge) --
  ISBN 0-618-19604-8 (deluxe binding)
   1. English language--Dictionaries. 2. Americanisms. I Houghton Mifflin Company. II. American Heritage dictionary.

PE1628 .A6227 2002
423--dc21

                                    2001039826

Manufactured in the United States of America

nection to something else. **3.** *Grammar* A relative pronoun. [ME < OFr. *relatif* < LLat. *relātīvus* < Lat. *relātus*, p. part. of *referre*, to relate. See RELATE.] **—rel′a·tive·ness** *n.*

**relative clause** *n.* A dependent clause introduced by a relative pronoun, as *which* in *is downstairs* in *The dining room, which is downstairs, is too dark.*

**relative density** *n.* See **specific gravity.**

**relative humidity** *n.* The ratio of the amount of water vapor in the air to the maximum amount that the air would hold at the same temperature, expressed as a percentage.

**rel·a·tive·ly** (rĕl′ə-tĭv-lē) *adv.* In a relative manner; in comparison.

**relative pronoun** *n.* A pronoun that introduces a relative clause and has reference to an antecedent, as *who* in *the child who is wearing a hat.*

**relative to** *prep.* With regard to; concerning.

**rel·a·tiv·ism** (rĕl′ə-tĭ-vĭz′əm) *n.* A theory, esp. in ethics or aesthetics, that conceptions of truth and moral values are not absolute but are relative to the persons or groups holding them.

**rel·a·tiv·ist** (rĕl′ə-tĭ-vĭst) *n.* **1.** *Philosophy* A proponent of relativism. **2.** A specialist in the theories of relativity.

**rel·a·tiv·is·tic** (rĕl′ə-tĭ-vĭs′tĭk) *adj.* **1.** Of or relating to relativism. **2.** *Physics* **a.** Of, relating to, or resulting from speeds approaching the speed of light. **b.** Having to do with or based on the theory of relativity.

**rel·a·tiv·i·ty** (rĕl′ə-tĭv′ĭ-tē) *n.* **1.** The quality or state of being relative. **2.** A state of dependence in which the existence or significance of one entity is solely dependent on that of another. **3.** *Physics* **a.** Special relativity. **b.** General relativity.

**re·la·tor** (rĭ-lā′tər) *n.* **1.** One who relates or narrates. **2.** *Law* A beneficially interested person on whose behalf an action is maintained by a sovereign power or a state.

**re·lax** (rĭ-lăks′) *v.* **-laxed, -lax·ing, -lax·es** —*tr.* **1.** To make lax or loose: *relax one's grip.* **2.** To make less severe or strict: *relax a curfew.* **3.** To reduce in intensity; slacken: *relax one's efforts.* **4.** To relieve from strain: *The warm bath relaxed me.* —*intr.* **1.** To take one's ease; rest. **2.** To become lax or loose. **3.** To become less severe or strict. **4.** To become less restrained or tense. [ME *relaxen* < OFr. *relaxer* < Lat. *relaxāre* : *re-*, re- + *laxāre*, to loosen (< *laxus*, loose).] **—re·lax′a·ble** *adj.*

**re·lax·ant** (rĭ-lăk′sənt) *n.* Something, such as a drug, that relaxes muscular or nervous tension. **—re·lax′ant** *adj.*

**re·lax·a·tion** (rē′lăk-sā′shən) *n.* **1.** The act of relaxing or the state of being relaxed. **2.** Refreshment of body or mind; recreation. **3.** A loosening or slackening. **4.** A reduction in strictness or severity. **5.** *Physiology* The lengthening of inactive muscle or muscle fibers. **6.** *Physics* The return of a system to equilibrium following displacement or abrupt change. **7.** *Mathematics* A method of solving equations in which the errors resulting from an initial approximation are reduced by succeeding approximations until all errors are within specified limits.

**re·laxed** (rĭ-lăkst′) *adj.* **1.** Not rigorous or strict. **2.** Free from strain or tension. **3.** Easy and informal in manner.

**re·lax·er** (rĭ-lăk′sər) *n.* One that relaxes, as a chemical solution used on tightly curled hair to soften or loosen the curls.

**re·lax·in** (rĭ-lăk′sĭn) *n.* A female hormone secreted by the corpus luteum that helps soften the cervix and relax the pelvic ligaments in childbirth.

**re·lay** (rē′lā) *n.* **1.** An act of passing something along from one person, group, or station to another. **2.** *Sports* **a.** A relay race. **b.** A division of a relay race. **3.** *Electronics* A device that responds to a small current or voltage change by activating switches or other devices in an electric circuit. **4.** A crew of workers who relieve another crew; a shift. **5.** A fresh team, as of horses, to relieve weary animals. ❖ *tr.v.* (rē′lā, rĭ-lā′) **-layed, -lay·ing, -lays** **1.** To pass along by or as if by relay: *relayed the message to his boss.* **2.** To supply with fresh relays. **3.** *Electronics* To control or retransmit by means of a relay. [ME *relai*, fresh team of dogs for a hunt < OFr. < *relaier*, to relay : *re-*, re- + *laier*, to leave (of orig. ?).]

**relay race** *n.* A race between two or more teams, in which each team member participates in only a set part of the race and is then relieved by another member of the team.

**re·leas·a·ble** (rĭ-lē′sə-bəl) *adj.* **1.** That can be released. **2.** Intended or configured to release. **—re·leas′a·bil′i·ty** *n.* **—re·leas′a·bly** *adv.*

**re·lease** (rĭ-lēs′) *tr.v.* **-leased, -leas·ing, -leas·es 1.** To set free from confinement, restraint, or bondage. **2.** To free from something that binds, fastens, or holds back; let go: *released the balloons.* **3.** To dismiss, as from a job. **4.** To relieve of debt or obligation. **5.** To relieve of care and suffering. **6a.** To issue for performance, sale, publication, or distribution. **b.** To make known or available. **7.** To relinquish (a right or claim). ❖ *n.* **1.** A deliverance or liberation, as from confinement, restraint, or suffering. **2.** An authoritative discharge, as from an obligation or from prison. **3.** An unfastening or letting go of something caught or held fast. **4.** A device or catch for locking or releasing a mechanism. **5a.** The act or an instance of issuing something for publication, use, or distribution. **b.** Something thus released: *a new release of a software program.* **c.** The condition of being available, in use, or in publication: *a movie in wide release.* **6.** *Law* **a.** Relinquishment to another of a right, title, or claim. **b.** The document

authorizing such relinquishment. **7.** *Linguistics* The movement of a vocal organ or organs so as to end the closure of a stop consonant. [ME *relesen* < OFr. *relaissier*, alteration of *relacher* < Lat. *laxāre*. See RELAX.]

**re·leas·er** (rĭ-lē′sər) *n.* **1.** One that releases. **2.** A stimulus that initiates a specific behavior pattern in an animal.

**re·leas·ing factor** (rĭ-lē′sĭng) *n.* Any of several hormones secreted by the hypothalamus that stimulate the anterior part of the pituitary gland to release certain hormones.

**rel·e·gate** (rĕl′ĭ-gāt′) *tr.v.* **-gat·ed, -gat·ing, -gates 1.** To assign to an obscure place, position, or condition. **2.** To assign to a particular class or category; classify. **3.** To refer or assign (a matter or task, for example) for decision or action. **4.** To send to a place of exile; banish. [ME *relegaten*, to banish < Lat. *relegāre : re-*, re- + *lēgāre*, to send, depute; see LEG- in App.] **—rel′e·ga′tion** *n.*

**re·lent** (rĭ-lĕnt′) *v.* **-lent·ed, -lent·ing, -lents** —*intr.* To become more lenient, compassionate, or forgiving. —*tr.* Obsolete **1.** To cause to slacken or abate. **2.** To cause to soften in attitude or temper. [ME *relenten*, to melt < AN *relenter* < *relent*, damp : Lat. *re-*, re- + Lat. *lentus*, sticky, slow.]

**re·lent·less** (rĭ-lĕnt′lĭs) *adj.* **1.** Unyielding in severity or strictness; unrelenting. **2.** Steady and persistent; unremitting. **—re·lent′less·ly** *adv.* **—re·lent′less·ness** *n.*

**rel·e·vant** (rĕl′ə-vənt) *adj.* Having a bearing on or connection with the matter at hand. [Med.Lat. *relevāns, relevant-* < Lat. pr. part. of *relevāre*, to relieve, raise up. See RELIEVE.] **—rel′e·vance, rel′e·van·cy** *n.* **—rel′e·vant·ly** *adv.*

**re·li·a·ble** (rĭ-lī′ə-bəl) *adj.* **1.** Capable of being relied on; dependable. **2.** Yielding the same or compatible results in different clinical experiments or statistical trials. **—re·li′a·bil′i·ty, re·li′a·ble·ness** *n.* **—re·li′a·bly** *adv.*

**re·li·ance** (rĭ-lī′əns) *n.* **1.** The act of relying or the state of being reliant. **2.** The faith, confidence, or trust felt by one who relies: dependence. **3.** One relied on; a mainstay.

**re·li·ant** (rĭ-lī′ənt) *adj.* Having or exhibiting reliance; dependent. **—re·li′ant·ly** *adv.*

**rel·ic** (rĕl′ĭk) *n.* **1.** Something that has survived the passage of time, esp. an object or custom whose original culture has disappeared. **2.** Something cherished for its age or historic interest. An object kept for its association with the past, a memento. **4.** An object of religious veneration, esp. a piece of the body or a personal item of a saint. **5.** *or* **relics** A corpse; remains. [ME *relik*, object of religious veneration < OFr. *relique* < LLat. *reliquiae*, sacred relics < Lat., remains < *reliquus*, remaining < *relinquere*, to leave behind. See RELINQUISH.]

**rel·ict** (rĕl′ĭkt, rĭ-lĭkt′) *n.* **1.** *Ecology* An organism or species of an earlier time surviving in an environment that has undergone considerable change. **2.** Something that has survived; a remnant. **3.** A widow. ❖ *adj. Geology* Of or relating to something that has survived, as structures after destructive processes. [< ME *relicte*, undisturbed < Lat. *relictus*, p. part. of *relinquere*, to leave behind. See RELINQUISH. Sense 3, ME *relicte* < Med.Lat. *relicta* < fem. p. part. of Lat. *relinquere*.]

**re·lic·tion** (rĭ-lĭk′shən) *n.* Gradual recession of water in a sea, lake, or stream, leaving permanently dry land.

**re·lief** (rĭ-lēf′) *n.* **1.** The easing of a burden or distress, such as pain, anxiety, or oppression. **2.** Something that alleviates pain or distress. **3a.** Public assistance. **b.** Aid in time of danger, esp. rescue from siege. **4a.** Release from a post or duty, as that of one on duty. **b.** One who releases another by taking over a post or duty. **5.** A pleasant or amusing change; a diversion. **6a.** The projection of figures or forms from a flat background, as in sculpture, for the apparent projection of such shapes in a painting or drawing. **b.** A work of art featuring such projection. **7.** *Geology* The variations in elevation of an area of the earth's surface. **8.** Distinctness or prominence due to contrast. **9.** *Law* Redress awarded by a court. **10.** *Baseball* The pitching done by a relief pitcher. **11.** A pledge made by the heir of a deceased tenant to a feudal lord for the privilege of succeeding to the tenant's estate. —*idiom:* on relief Receiving public assistance because of need or poverty. [ME < OFr. < *relever*, to relieve; see RELIEVE. Senses 6, 7 < Ital. *rilievo*; see BAS-RELIEF.]

**relief map** *n.* A map that depicts land configuration, usu. with contour lines.

**relief pitcher** *n. Baseball* A pitcher who replaces another in a game.

**re·lieve** (rĭ-lēv′) *tr.v.* **-lieved, -liev·ing, -lieves 1.** To set free from danger or difficulty. **2.** To free from pain, anxiety, or distress. **3.** To reduce the lessening or alleviation of: *relieved his symptoms; relieved the tension.* **2.** To rescue from siege. **5.** To release (a person from duty) by providing or acting as a substitute. **6.** To make less onerous. **7.** To furnish from an obligation, restriction, or burden, as by money or aid. **8.** To make prominent or effective by contrast; set off. *Baseball* To take over for (a relief pitcher). *A small candle relieved the gloom.* **8.** To make less tedious, monotonous, or unpleasant. —*idiom:* relieve oneself *Informal* To rob or deprive: *A mugger relieved him of his wallet.* To urinate or defecate. [ME *releven* < OFr. *relever* < Lat. *relevāre : re-*, re- + *levāre*, to raise; see LEG- in App.] **—liev′a·ble** *adj.* **—re·liev′er** *n.*

# EXHIBIT 38

Mac
iPod
iPhone
iPad
iTunes
Support

**Apple Press Info**                    Press Releases        Product Images & Info        Apple Leadership

## Apple Announces iPhone 2.0 Software Beta

### Includes SDK & Built-in Microsoft Exchange ActiveSync

CUPERTINO, California—March 6, 2008—Apple® today previewed its iPhone™ 2.0 software, scheduled for release this June, and announced the immediate availability of a beta release of the software to selected developers and enterprise customers. The iPhone 2.0 beta release includes both the iPhone Software Development Kit (SDK) as well as new enterprise features such as support for Microsoft Exchange ActiveSync to provide secure, over-the-air push email, contacts and calendars as well as remote wipe, and the addition of Cisco IPsec VPN for encrypted access to private corporate networks.

"We're excited about creating a vibrant third party developer community with potentially thousands of native applications for iPhone and iPod touch," said Steve Jobs, Apple's CEO. "iPhone's enterprise features combined with its revolutionary Multi-Touch user interface and advanced software architecture provide the best user experience and the most advanced software platform ever for a mobile device."

The iPhone SDK provides developers with a rich set of Application Programming Interfaces (APIs) and tools to create innovative applications for iPhone and iPod® touch. Starting today, anyone can download the beta iPhone SDK for free and run the iPhone Simulator on their Mac®. Apple today also introduced its new iPhone Developer Program, giving developers everything they need to create native applications, and the new App Store, a breakthrough way for developers to wirelessly deliver their applications to iPhone and iPod touch users.

With the iPhone SDK, third party developers will be able to build native applications for the iPhone with a rich set of APIs, including programming interfaces for Core OS, Core Services, Media and Cocoa Touch technologies. The iPhone SDK will allow developers to create amazing applications that leverage the iPhone's groundbreaking Multi-Touch™ user interface, animation technology, large storage, built-in three-axis accelerometer and geographical location technology to deliver truly innovative mobile applications.

Apple has licensed Exchange ActiveSync from Microsoft and is building it right into the iPhone, so that iPhone will connect out-of-the-box to Microsoft Exchange Servers 2003 and 2007 for secure over-the-air push email, contacts, calendars and global address lists. Built-in Exchange ActiveSync support also enables security features such as remote wipe, password policies and auto-discovery. The iPhone 2.0 software supports Cisco IPsec VPN to ensure the highest level of IP-based encryption available for transmission of sensitive corporate data, as well as the ability to authenticate using digital certificates or password-based, multi-factor authentication. The addition of WPA2 Enterprise with 802.1x authentication enables enterprise customers to deploy iPhone and iPod touch with the latest standards for protection of Wi-Fi networks.

The iPhone 2.0 software provides a configuration utility that allows IT administrators to easily and quickly set up many iPhones, including password policies, VPN setting, installing certificates, email server settings and more. Once the configuration is defined it can be easily and securely delivered via web link or email to the user. To install, all the user has to do is authenticate with a user ID or password, download the configuration and tap install. Once installed, the user will have access to all their corporate IT services.

The iPhone 2.0 software release will contain the App Store, a new application that lets users browse, search, purchase and wirelessly download third party applications directly onto their iPhone or iPod touch. The App Store enables developers to reach every iPhone and iPod touch user. Developers set the price for their applications—including free—and retain 70 percent of all sales revenues. Users can download free applications at no charge to either

### Download iPhone images



iPhone 5
Download (zip)



iPhone 5
Download (zip)



iPhone 5
Download (zip)



iPhone 5
Download (zip)

the user or developer, or purchase priced applications with just one click. Enterprise customers will be able to create a secure, private page on the App Store accessible only by their employees. Apple will cover all credit card, web hosting, infrastructure and DRM costs associated with offering applications on the App Store. Third party iPhone and iPod touch applications must be approved by Apple and will be available exclusively through the App Store.

The iPhone SDK provides a reliable, fast and secure way to create innovative applications for the iPhone and iPod touch. In addition to the rich set of iPhone OS APIs, the iPhone SDK also provides advanced tools for creating native iPhone and iPod touch applications including: Xcode® for source code editing, project management and graphical debugging; Interface Builder with drag and drop interface creation and live preview; Instruments to monitor and optimize iPhone application performance in real time; and the iPhone Simulator to run and debug applications.

During the beta iPhone SDK program, a limited number of developers will be accepted into Apple's new iPhone Developer Program and offered the ability to get code onto iPhones for testing. The Standard Program costs $99 (US) per year and gives members an iPhone SDK and development tools; access to pre-release iPhone software; technical support; the ability to get code onto iPhones for testing; and distribution of applications via the new App Store. The Enterprise Program costs $299 (US) per year.

In addition to these new iPhone network and security features, the beta iPhone 2.0 software provides several new Mail features such as the ability to view PowerPoint attachments, in addition to Word and Excel, as well as the ability to mass delete and move email messages.

**Pricing & Availability**
Apple plans to release the final iPhone 2.0 software, including the iPhone SDK and new enterprise features, as a free software update for all iPhone customers by the end of June. Third party applications created for the iPhone will also run on the iPod touch, and iPod touch users will be required to purchase a software update to run these applications. The free beta iPhone SDK is available immediately worldwide and can be downloaded at developer.apple.com/iphone/program. The iPhone Developer Program will initially be available in the US and will expand to other countries in the coming months. Apple is accepting applications beginning today from enterprise customers who would like to join the private iPhone Enterprise Beta Program (www.apple.com/iphone/enterprise).

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Today, Apple continues to lead the industry in innovation with its award-winning computers, OS X operating system and iLife and professional applications. Apple is also spearheading the digital media revolution with its iPod portable music and video players and iTunes online store, and has entered the mobile phone market with its revolutionary iPhone.

**Press Contacts:**
Natalie Kerris
Apple
nat@apple.com
(408) 974-6877

Jennifer Bowcock
Apple
jennifer.b@apple.com
(408) 974-9758

Apple, the Apple logo, Mac, Mac OS, Macintosh, iPhone, iPod, Multi-Touch and Xcode are trademarks of Apple. Other company and product names may be trademarks of their respective owners.

Leading Developers, Enterprise Customers & Partners Applaud iPhone 2.0 Software

### AOL
"No question the powerful tools and APIs in the iPhone SDK made it easy to develop a feature-rich mobile application for the iPhone," said Kevin Conroy, executive vice president,

AOL. "The rapid development cycle for this application was very intuitive, and when you add the App Store, it's an unbeatable combination for development and distribution of mobile applications."

**Cisco**
"As a result of this collaboration between Cisco and Apple, iPhone users will have seamless and highly secure access to mission critical information as it is needed from anywhere in the world," said Richard Palmer, senior vice president of the Security Technology Group, Cisco. "The connected world is becoming more mobile and collaborative where employees need access to private business information no matter where they are."

**Disney**
"Apple has really done their homework, addressing issues of security, manageability and integration," said Randy Brooks, senior vice president, IT Strategy and Architecture, The Walt Disney Company. "We currently have hundreds of iPhone users and expect the demand to grow significantly with this release."

**Electronic Arts**
"The animation technology in the iPhone OS enables us to build awesome games," said John Riccitiello, CEO of Electronic Arts. "I think iPhone consumers are going to be blown away by the games we create for this platform."

**Epocrates**
"By putting so much computing power into such an elegant mobile device, Apple has opened up tremendous opportunities for application developers," said Kirk Loevner, chairman and CEO, Epocrates, Inc. "The technology and software in the iPhone OS will allow us to create new and innovative applications that help improve patient safety and provide healthcare professionals with an unsurpassed user experience."

**Genentech**
"The iPhone is a watershed event in mobile computing for corporations," said Todd Pierce, vice president, Corporate Information Technology, Genentech, Inc. "Genentech's pilot with iPhone has shown its potential to be the most useful business mobility tool we've ever used. We now have 3,000 planned for deployment based on how easy and simple it was to integrate iPhone with our corporate email system."

**Microsoft**
"Licensing Exchange ActiveSync to Apple enables them to build support right into the iPhone for simple, out-of-the-box connectivity with Exchange Server," said Terry Myerson, corporate vice president, Unified Communications Group, Microsoft. "Microsoft believes in building open and interoperable products, and Microsoft Exchange Server is no exception."

**Nike**
"With support for Exchange ActiveSync in this new iPhone release, Apple is offering a plug-and-play enterprise solution," said Roland Paanakker, vice president and CIO Nike. "We already have Nike employees using iPhones, and now look forward to deploying more iPhones across our business."

**Salesforce.com**
"The opportunity to use the innovative iPhone OS platform to deliver compelling Software-as-a-Service applications to mobile users is empowering to us, and ultimately, our customers, "said Marc Benioff, chairman and CEO of Salesforce.com. "They are asking us for new ways to harness the power of Force.com to access their business information on any device regardless of location."

**Sega**
"The iPhone OS is a robust development platform that will allow Sega to deliver mobile gaming experiences that are truly compelling," said Simon Jeffery, president and COO, Sega of America. "Using the iPhone's accelerometer to power a tilt control feature adds a whole new dimension to Super Monkey Ball, and we can't wait for gamers to try it."

Apple Media Helpline   (408) 974–2042   media.help@apple.com

# EXHIBIT 39

Mac
iPod
iPhone
iPad
iTunes
Support

## Apple Press Info

Press Releases          Product Images & Info          Apple Leadership

April 27, 2011

## Apple Q&A on Location Data

Apple would like to respond to the questions we have recently received about the gathering and use of location information by our devices.

1. Why is Apple tracking the location of my iPhone?
Apple is not tracking the location of your iPhone. Apple has never done so and has no plans to ever do so.

2. Then why is everyone so concerned about this?
Providing mobile users with fast and accurate location information while preserving their security and privacy has raised some very complex technical issues which are hard to communicate in a soundbite. Users are confused, partly because the creators of this new technology (including Apple) have not provided enough education about these issues to date.

3. Why is my iPhone logging my location?
The iPhone is not logging your location. Rather, it's maintaining a database of Wi-Fi hotspots and cell towers around your current location, some of which may be located more than one hundred miles away from your iPhone, to help your iPhone rapidly and accurately calculate its location when requested. Calculating a phone's location using just GPS satellite data can take up to several minutes. iPhone can reduce this time to just a few seconds by using Wi-Fi hotspot and cell tower data to quickly find GPS satellites, and even triangulate its location using just Wi-Fi hotspot and cell tower data when GPS is not available (such as indoors or in basements). These calculations are performed live on the iPhone using a crowd-sourced database of Wi-Fi hotspot and cell tower data that is generated by tens of millions of iPhones sending the geo-tagged locations of nearby Wi-Fi hotspots and cell towers in an anonymous and encrypted form to Apple.

4. Is this crowd-sourced database stored on the iPhone?
The entire crowd-sourced database is too big to store on an iPhone, so we download an appropriate subset (cache) onto each iPhone. This cache is protected but not encrypted, and is backed up in iTunes whenever you back up your iPhone. The backup is encrypted or not, depending on the user settings in iTunes. The location data that researchers are seeing on the iPhone is not the past or present location of the iPhone, but rather the locations of Wi-Fi hotspots and cell towers surrounding the iPhone's location, which can be more than one hundred miles away from the iPhone. We plan to cease backing up this cache in a software update coming soon (see Software Update section below).

5. Can Apple locate me based on my geo-tagged Wi-Fi hotspot and cell tower data?
No. This data is sent to Apple in an anonymous and encrypted form. Apple cannot identify the source of this data.

6. People have identified up to a year's worth of location data being stored on the iPhone. Why does my iPhone need so much data in order to assist it in finding my location today?
This data is not the iPhone's location data—it is a subset (cache) of the crowd-sourced Wi-Fi hotspot and cell tower database which is downloaded from Apple into the iPhone to assist the iPhone in rapidly and accurately calculating location. The reason the iPhone stores so much data is a bug we uncovered and plan to fix shortly (see Software Update section below). We don't think the iPhone needs to store more than seven days of this data.

7. When I turn off Location Services, why does my iPhone sometimes continue updating its Wi-Fi and cell tower data from Apple's crowd-sourced database?
It shouldn't. This is a bug, which we plan to fix shortly (see Software Update section below).

8. What other location data is Apple collecting from the iPhone besides crowd-sourced Wi-Fi hotspot and cell tower data?
Apple is now collecting anonymous traffic data to build a crowd-sourced traffic database with the goal of providing iPhone users an improved traffic service in the next couple of years.

9. Does Apple currently provide any data collected from iPhones to third parties?
We provide anonymous crash logs from users that have opted in to third-party developers to help them debug their apps. Our iAds advertising system can use location as a factor in targeting ads. Location is not shared with any third party or ad unless the user explicitly approves giving the current location to the current ad (for example, to request the ad locate the Target

store nearest them).

10. Does Apple believe that personal information security and privacy are important?
Yes, we strongly do. For example, iPhone was the first to ask users to give their permission for each and every app that wanted to use location. Apple will continue to be one of the leaders in strengthening personal information security and privacy.

**Software Update**
Sometime in the next few weeks Apple will release a free iOS software update that:

- reduces the size of the crowd-sourced Wi-Fi hotspot and cell tower database cached on the iPhone,
- ceases backing up this cache, and
- deletes this cache entirely when Location Services is turned off.

In the next major iOS software release the cache will also be encrypted on the iPhone.

**Press Contacts:**
Natalie Harrison
Apple
harri@apple.com
(408) 862-0565

Natalie Kerris
Apple
nat@apple.com
(408) 974-6877

Apple, the Apple logo, Mac, Mac OS, Macintosh, iPhone and iTunes are trademarks of Apple. Other company and product names may be trademarks of their respective owners.

Apple Media Helpline   (408) 974-2042   media.help@apple.com

# EXHIBIT 40

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3227**

WRITER'S INTERNET ADDRESS
**michaelfazio@quinnemanuel.com**

March 4, 2013

<u>VIA E-MAIL</u>

Joshua Furman, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166-0193

Re:    <u>Apple v. Samsung Elecs. Co. et al, Case No 12-cv-0630</u>

Dear Counsel:

I write to respond to Apple's letter dated February 27, 2013 regarding Apple's inspection of source code at Samsung's offices in San Jose.  Apple contends that the source code review "setup is in violation of the protective order."  According to Apple, the Protective Order requires "a local copy of the source code on the source code computers."  There is no such provision in the Protective Order.  Rather, paragraph 11(b) of the Protective Order requires that the source code be "available" on the review machines, which Samsung's source code indisputably is.  The Protective Order does not require that a copy physically reside on the machines, as Apple seems to contend.

Samsung trusts that Apple understands the volume of source code that Apple has requested – which, as Apple acknowledges, encompasses source code for "at least forty device/carrier/Android versions" – constitutes terabytes of data, which cannot fit on a local hard drive.  Accordingly, the source code must be on high capacity servers, readily accessed by the review machines.  This is the arrangement the parties agreed to months ago.  Apple's counsel personally visited the inspection site in early November 2012 and reviewed Samsung's configuration.  As I am sure you recall, Apple's expert, Mr. Sowayan, made two trips in early November, and you accompanied him on one of his visits.  Apple made no objection during

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000  FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

either of those visits to the source code "setup," nor at any time over the following months until Apple's letter of February 27th.

Apple points out that it can take hours to download one "workspace."  It remains unclear, however, how this download time (assuming the time asserted by Apple is accurate) handicaps Apple's source code reviewers.  Presumably, the reviewers would download data in the background, while concurrently reviewing other, previously downloaded source code.  Stated differently, despite Apple's assertions of long download times for large files, Apple notably does not say its reviewers are sitting idle while source code is downloading.  Logically, they would first download some smaller files and review those while larger files are downloading.  Indeed, Apple's reviewers have printed approximately 7,500 pages of source code to date, further showing that their review has not been hindered.

Further, Apple asserts that Samsung's source code computers "are not 'stand-alone' because they have network access to other computers."  Apple asserts this violates the Protective Order.  Preliminarily, the computers do not allow for the unauthorized access to the Internet.  Rather, and consistent with the Protective Order, each laptop has only a secured, port-to-port connection directly to Samsung servers that contain exclusively source code.  If Apple is now contending that its source code reviewers have attempted to obtain Internet or some other network access during their inspections, then please promptly inform us of this fact.

Importantly, Apple seems to misunderstand the provision restricting Internet and network access.  The provision is for the protection of the Producing Party.  As expressly stated in paragraph 11(b) of the Protective Order, the restrictions on Internet and network access are to prevent unauthorized copying, and are limited to those:

> necessary and appropriate to prevent and protect against any
> unauthorized copying, transmission, removal or other transfer of
> any Source code outside or away from the computer on which the
> Source Code is provided for inspection.

Apple also contends that Samsung's source code is "not text searchable."  Samsung has confirmed that the source code made available for inspection on both laptops is, in fact, text searchable.  To the extent that Apple continues to contend to the contrary, then please explain why this issue is only being raised now after months of access.  Is Apple contending it never conducted a text search before February 27, 2013?

Apple's letter also complains of an outage.  There has only been one outage and this lone event lasted fifty minutes.  Apple's letter omits the fact that Mr. Rezvani immediately contacted you on February 26th and informed you of the outage.  *See* Email from Rezvani to Furman dated February 26, 2012.  Apple was also informed that the reviewers could make up for the approximately fifty minute outage by staying past 7:00 p.m.  Notwithstanding Samsung's offer, the reviewers chose to leave for the day before 7:00 p.m.  In any event, Samsung apologizes for this rare event.  Servers do, on isolated occasions, go down.  Samsung remains agreeable to permitting Apple's reviewers to come early or stay late on any day of Apple's choosing to make up for this fifty minutes.

Additionally, Apple requests that Samsung "immediately augment both hard drives with the open source copy of Android with the most up to date versions, including 4.1.x and 4.2.x." As Apple is undoubtedly aware, the Android open source code is publicly available on the Internet. Nothing in the Protective Order requires Samsung to make that source code available to Apple's reviewers during their inspection of Samsung's code; and the provision of such code at the review site thus far has been a courtesy. Samsung will further extend this courtesy and endeavor to make the requested Android open source code available at the inspection site. Samsung notes that it is amenable to continuing to extend to Apple professional courtesies of this sort, but Samsung believes that Apple's latest request that Samsung reconfigure its entire source code laptop configuration, which Apple has been using for four months, is simply unreasonable.

Lastly, by separate letter dated March 1, 2013, Samsung raised several issues with Apple's source code, including that Apple has not produced a full code base for all versions of iOS, Mac OS X, and any other relevant software, in a manner consistent with Samsung's production of its own source code. Given the diligence that Samsung has exercised in addressing Apple's purported issues with Samsung's source code, Samsung trusts that Apple will be equally diligent in addressing this critical issue regarding Apple's missing source code, and we look forward to Apple's prompt response.

Very truly yours,

Michael L. Fazio