JOSH KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile:  650.849.5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br>Counterclaim-Defendant. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S MOTION TO COMPEL A RESPONSE TO INTERROGATORY NO. 22 AND PRODUCTION OF DIFF PROGRAM PRINTOUTS**<br><br><u>HEARING</u>:<br><br>Date:       April 23, 2013<br>Time:       10 a.m.<br>Place:      Courtroom 5, 4th Floor<br>Judge:      Hon. Paul S. Grewal<br><br><br>**REDACTED** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 23, 2013 at 10:00a.m., or as soon as the matter may be heard by the Honorable Paul S. Grewal, in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Apple, Inc. ("Apple") shall and hereby does move the Court for an order compelling Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America LLC  (collectively "Samsung") to (1) respond to Apple's Interrogatory No. 22 and (2) provide certain printouts made by Apple's representatives during inspection of Samsung's produced source code.

## I.  RELIEF REQUESTED

Apple seeks an order compelling Samsung to provide the following by no later than May 1, 2013:

- A complete response to Apple's Interrogatory No. 22 to Samsung
- All printouts from the output of the "diff program" made by Apple's representatives during the review and inspection of Samsung's source code

## II.  STATEMENT OF ISSUES TO BE DECIDED

Under Federal Rules of Civil Procedure 26, 33 and 34, Apple seeks an order compelling Samsung to (1) provide a full response to the entirety of Apple's Interrogatory No. 22 to Samsung and (2) provide to Apple's counsel all printouts from the output of the "diff program," – a computer program that compares and identifies differences between two versions of source code – made by Apple's representatives during the review and inspection of Samsung's source code.

## III.  APPLE'S CIVIL LOCAL RULE 37-2 STATEMENT

Pursuant to Civil L.R. 37-2, Apple's discovery requests to Samsung that are the subject of this motion are set forth in full below, with Samsung's corresponding responses following immediately after each:

**INTERROGATORY NO. 22**:

Identify from the Source Code produced in response to Request Nos. 96 and 97 in Apple's Second Set of Requests for Production all files that relate to the Accused Features and functionality of the Accused Samsung Products.  Such identification should include the name of the file, the engineers, designers and authors responsible for that file, the specific Accused Feature to which the identified file relates, and any differences between that file and the publicly available version of the source code for the Jelly Bean, Ice Cream Sandwich, Honey Comb, Gingerbread and FroYo versions of the Android operating system and the engineers, designers and authors of those differences, and identify the person(s) most knowledgeable about the response to this interrogatory.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 22**:

In addition to its General Objections above, which it hereby incorporates by reference, Samsung objects to this Interrogatory on the grounds that: (i) it is unduly burdensome; (ii) it seeks information that is outside of Samsung's possession, custody, or control, or that is equally available to Apple; (iii) it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity; (iv) it is overly broad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks "all files that relate to the Accused Features and functionality of the Accused Samsung Products"; (v) it is vague and ambiguous, particularly as to the terms "relate to," "responsible for," "differences," "publicly available version of the source code for the Jelly Bean, Ice Cream Sandwich, Honey Comb, Gingerbread and FroYo versions of the Android operating system" and "engineers, designers and authors of those differences"; (vi) it is compound and comprises discrete subparts resulting in separate interrogatories; and (vii) it seeks documents containing confidential third party information, including information subject to a non-disclosure or other agreement between Samsung and a third party, or documents subject to a protective order.

**REQUEST FOR PRODUCTION NO. 96**:

Source code and any other instructions utilized by or implemented on the Accused Devices,

including, but not limited to, source code for each version of the Android operating system and applications utilized by each of the Accused Devices.

**RESPONSE TO REQUEST NO. 96:**

In addition to its general objections, which it hereby incorporates by reference, Samsung objects to this Request on the grounds that: (i) it is vague and ambiguous including with regard to the terms "instructions," "utilized by," and "implemented on;" (ii) it is temporally and substantively overbroad and unduly burdensome in that it is not limited to any reasonable time period and seeks documents and things related to features or functionality that are not at issue in this litigation; (iii) for devices in which the accused features were designed by Google or another third party, it seeks documents that are not within Samsung's possession, custody, or control; (iv) it seeks the confidential, proprietary and/or trade secret information of third parties, and to the extent it seeks information subject to non-disclosure or other confidentiality agreements between Samsung and a third party; and (v) it seeks documents that are not relevant to the claims or defenses of any party and/or not reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing, and without waiving any objections, Samsung will produce responsive, non-privileged source code for the accused features of the Accused Devices that are in Samsung's possession, custody, or control, that can be located based on a reasonable search.

**REQUEST FOR PRODUCTION NO. 97:**

Source code and any other instructions utilized by or implemented on the Accused Devices, including, but not limited to, source code for the features and functionality used by the Accused Devices that Apple has alleged infringe the Patents-in-Suit.

**RESPONSE TO REQUEST NO. 97:**

In addition to its general objections, which it hereby incorporates by reference, Samsung objects to this Request on the grounds that: (i) it is vague and ambiguous including with regard to the terms "instructions," "utilized by," and "implemented on;" (ii) it is temporally and substantively overbroad and unduly burdensome in that it is not limited to any reasonable time period and seeks documents and things related to features or functionality that are not at issue in this litigation; (iii) for

devices in which the accused features were designed by Google or another third party, it seeks documents that are not within Samsung's possession, custody, or control; (iv) it seeks the confidential, proprietary and/or trade secret information of third parties, and to the extent it seeks information subject to non-disclosure or other confidentiality agreements between Samsung and a third party; and (v) it seeks documents that are not relevant to the claims or defenses of any party and/or not reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing, and without waiving any objections, Samsung will produce responsive, non-privileged source code for the accused features of the Accused Devices that are in Samsung's possession, custody, or control, that can be located based on a reasonable search.

## IV.    APPLE'S CERTIFICATION PURSUANT TO FED. R. CIV. P. 37(a)(1)

Apple hereby certifies that it has in good faith conferred with Samsung in an effort to obtain the discovery described immediately above without Court action.  Apple's efforts to resolve this discovery dispute without court intervention are described in the Declaration of Joshua Furman in Support of Apple Inc.'s Motion to Compel a Response to Interrogatory No. 22 and Production of Diff Program Printouts and exhibits attached thereto and in the Declaration of Michael Valek in Support of Apple Inc.'s Motion to Compel a Response to Interrogatory No. 22 and Production of Diff Program Printouts and exhibits attached thereto, submitted concurrently herewith.

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND AND PROCEDURAL HISTORY .............................................. 2

III.    LEGAL STANDARD ........................................................................................... 5

IV.     ARGUMENT ....................................................................................................... 6

      A.      SAMSUNG MUST RESPOND TO INTERROGATORY NO. 22 ............................ 6

      B.      SAMSUNG MUST PRODUCE THE DIFF PRINTOUTS APPLE'S
            REVIEWERS HAVE REQUESTED ...................................................... 12

V.      CONCLUSION .................................................................................................. 17

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple Inc. v. Samsung Electronics Co.*, No. C 11-1846-LHK (PSG), 2012 WL 1595784 (N.D. Cal. May 4, 2012), *aff'd,* 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012)...........................................5

*Digital Reg of Texas, LLC v. Adobe Systems Inc.*, 2013 WL 633406 (N.D. Cal. 2013)................6, 14

*Donell v. Fid. Nat'l Title Agency of Nev., Inc.*, 2012 U.S. Dist. LEXIS 46598 (D. Nev. 2012)...........9

*E. & J. Gallo Winery v. Rallo*, 2006 U.S. Dist. LEXIS 84048 (E.D. Cal. 2006)................................10

*FatPipe Networks India Ltd. v. XRoads Networks, Inc.*, 2010 WL 3064369 (D. Utah 2010)..........5, 9

*Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001) ..................................................................16

*LaserDynamics, Inc. v. Asus Computer Int'l*, 2009 U.S. Dist. LEXIS 3878 (E.D. Tex. 2009) ............8

*O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272 (C.D. Cal. 1999) ...................................................9

*Trevino v. ACB American, Inc.*, 232 F.R.D. 612 (N.D. Cal. 2006) .................................................6, 7

## Rules

Fed. R. Civ. P. 26 ..............................................................................................................12, 14

Fed. R. Civ. P. 33 ...........................................................................................................8, 9, 10

Fed. R. Civ. P. 34 ................................................................................................................6, 14

## Other Authorities

Fed. R. Civ. P. 26 2010 Advisory Committee Notes ...............................................................14

Fed. R. Civ. P. 33(d) 1980 Advisory Committee Notes ...........................................................9

Gibson, Dunn &
Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Apple brings this motion to obtain information from Samsung relating to the source code in Samsung's accused products that is relevant to the issue of Samsung's infringement.  First, Apple asks the Court to order Samsung to answer Apple's Interrogatory No. 22 by identifying those portions of Samsung's source code that relate to the accused functionality in Samsung's accused products.  Samsung's source code is a modified version of the Android operating system, which is publicly available.  Apple's infringement contentions identify the accused features in Samsung's accused products in prose and by reference to specific files in the public Android source code. Interrogatory No. 22 asks Samsung to identify those portions of its modified source code that correspond to functionality described in Apple's contentions, including any differences between those portions of Samsung's code and the corresponding portions of the public Android code.  This information is highly relevant because it bears directly on infringement of each accused product. Samsung refuses to provide that identification.  Instead, it insists that Apple *identify to Samsung* those source code files that correspond to Apple's infringement contentions.  In doing so, Samsung undermines the very purpose of Interrogatory No. 22.  Indeed, as Apple has only recently discovered, Samsung produced its source code such that the code for a particular device has many identically-named files and no mechanism to determine which of those are actually used by a device.  Thus, not only is the burden less for Samsung, Samsung is uniquely positioned to identify which of the source code files are actually used by Samsung's own devices.

Second, Apple asks the Court to order Samsung to produce printouts of documents created by Apple's source code reviewers, using a software analysis tool, during their inspections of Samsung's source code.  This Court previously ordered that this tool, called "diff," be installed on the source code inspection computers in this case.  *See* Order Granting-In-Part Apple's Motion to Compel (D.I. 164) (Grewal, J.) ("Google shall load Cygwin and software with the ability to compare the relevant

Gibson, Dunn &
Crutcher LLP

source code versions.")[1].  It allows source code experts to compare two files and creates a list of differences, if any, on a line-by-line basis, between the two files.  The output is also called a "diff" and will either have the list of differences or indicate that the files are identical.  Apple's experts have created "diffs" during their inspections of Samsung's code so that Apple can prove that there are no material differences between the relevant source code files for each of the accused products—a point of proof Samsung insists is necessary for Apple to carry its burden at trial.  Despite Samsung's insistence, it refuses to produce these "diff" printouts to Apple.

Apple therefore respectfully requests that this Court compel Samsung to (1) answer Interrogatory No. 22 by identifying those portions of its produced source code that provide the accused features on its accused products and (2) immediately produce the "diff" printouts Apple has requested.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On February 8, 2012, Apple filed a complaint for patent infringement alleging that a number of Samsung devices, both phones and tablets, infringe eight of Apple's patents.  On June 15, 2012, and later through amendments, Apple disclosed its asserted claims and infringement contentions, specifically laying out the features and functionality of the 23 devices accused of infringement.

On March 6, 2012, during the preliminary injunction phase of this case, Apple served on Samsung a number of document requests directed to the source code for the accused features of the Samsung Galaxy Nexus – the only device for which Apple sought a preliminary injunction.  Later, on April 11, 2012, Apple served on Samsung a number of document requests for the case generally, including Request Nos. 96 and 97.  Furman Decl. Ex. A, Apple's Second Set of Requests for Production To Defendants, (Nos. 92-155).

In response to Apple's Request For Production Nos. 9-13, 96 and 97, Samsung made certain source code available for inspection pursuant to the provisions of the Protective Order ¶ 11 (D.I. 171).  Before inspecting that source code, Apple requested that Samsung provide the public version of the Android source code together with Samsung's modified version of the source code, and to

---

[1]   The diff program is part of the Cygwin tools.

1   install on the source code computer the tools necessary to make comparisons between the two

2   versions of the source, including the diff program.  The Court previously ordered third-party Google

3   to install such comparison tools on Google's source code computers during the preliminary injunction

4   phase of this case.  *See* Order Granting-In-Part Apple's Motion to Compel (D.I. 164).  Samsung

5   complied with Apple's request and representatives for Apple first went to inspect the source code on

6   June 2, 2012.  Apple returned to inspect the source code on November 8 and 9, 2012 (see Furman

7   Decl. Ex. G, Nov. 6, 2012 Email from S. Rezvani to J. Furman) and again on February 19 (see

8   Furman Decl. Ex. N, Feb. 8, 2013 Letter from J. Furman to S. Rezvani).  The latter inspection is

9   continuing week-to-week.

10       As these inspections have progressed, Apple has encountered an increasing number of issues

11   with Samsung's source code production that have impaired Apple's review.  For example, Samsung's

12   source code is hosted on a remote server, rather than residing locally on the source code computer

13   itself.  These remote servers contain approximately 50 workspaces, with each workspace containing a

14   particular release of source code for a particular device running a particular version of Android on a

15   particular carrier.  Storing the code in this way substantially slows down the review process.

16   Moreover, the way the files on each workspace are stored is highly confusing.  For instance, Apple

17   has recently discovered that numerous copies of many of the files of interest exist on each workspace,

18   and there is no clear indication of which copy is the one actually used by the accused device.  *See*

19   Furman Decl. Ex. P, Listing of Examples of Duplicate Files in Samsung's Source Code Production.

20       Nevertheless, despite these significant and ongoing obstacles, Apple's reviewers have

21   proceeded with their review and attempted to analyze the source code.  This analysis included use of

22   the diff program to compare Samsung's source code with the public Android source code and

23   printing the results.  The purpose of these printouts is to support future expert opinions on issues of

24   infringement.

25       Following Apple's first inspection on June 2, 2012, Samsung refused to turn over all of the

26   diff printouts, instead choosing to produce only up to the first 50 pages of each diff printout.  Any

27   printout greater than 50 pages was truncated at the 50-page mark.  *See* Furman Decl. Ex. E, June 4,

28

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-CV-00630-LHK (PSG)

2012 Letter from J. Zalduendo to E. Fedman.  For all subsequent inspections, Samsung has refused to provide to Apple's counsel *any* of these diff printouts, stating that they can only be reviewed onsite.  *See* Furman Decl. Ex. H, Nov. 12, 2012 Letter from S. Rezvani to J. Furman; Furman Decl. Ex. J, Dec. 10, 2012 Letter from S. Rezvani to J. Furman;  Valek Decl. Ex. 4, March 1, 2013 Letter from M. Fazio to M. Valek.  Apple explained in correspondence on multiple occasions that Samsung lacked any legitimate basis for withholding these "diff" printouts, but to no avail.  *See* Furman Decl. Ex. I, Dec. 5, 2012 Letter from J. Furman to S. Rezvani; Furman Decl. Ex. K, Jan. 11, 2013 Letter from J. Furman to S. Rezvani; Furman Decl. Ex. M, Feb. 1, 2013 Letter from J. Furman to S. Rezvani;

In the midst of its attempts to inspect Samsung's source code, Apple served Interrogatory No. 22.  Interrogatory No. 22 asks Samsung to identify from its source code production "all files that relate to the Accused Features[2] and functionality of the Accused Samsung Products" and asks that the identification include a listing of "any differences between that file and the publicly available version" of Android.  Furman Decl. Ex. C, Apple's Third Set of Interrogatories to Defendants and Counterclaim Plaintiffs, (Nos. 20-32).  Such information was necessary given the complexity of the source code and its manner of production, including the lack of any information from Samsung as to which of the 50+ versions of its code or the public Android code were representative of the accused functionality on the accused products.  Samsung refused answer to Interrogatory No. 22.  *See* Furman Decl. Ex. D, Samsung's Objections and Responses to Apple's Third Set of Interrogatories.

As one of its bases for its refusal to answer, Samsung stated that Apple's reviewers had the ability to use the diff program to identify differences in Samsung's source code.  Valek Decl. Ex. 2, November 16, 2012 Letter from M. Fazio to M. Valek.  Notwithstanding that argument, Samsung has continued to withhold Apple's diff printouts, insisting that Apple be limited to "inspecting" them at its offices.  Valek Decl. Ex. 4, Mar. 1, 2013 Letter.

After numerous unsuccessful attempts to resolve these issues by letter, the parties met and

---

[2]  "Accused Features" was defined as "any aspect, element or function of any Accused Samsung Product that is alleged to infringe any of the Apple Patents-in-Suit, including each function identified in Apple's Disclosure of Asserted Claims and Infringement Contentions and amendments and corrections thereto."  Furman Decl. Ex. C, Apple's Third Set of Interrogatories To Defendants and Counterclaim Plaintiffs, (Nos. 20-32).

1   conferred in person regarding Interrogatory No. 22 and the diff printouts in Los Angeles on February

2   15-16, 2013.  *See* Valek Decl. Ex. 1, November 5, 2012 Letter from M. Valek to M. Fazio; Valek

3   Decl. Ex. 3, February 19, 2013 Letter from M. Valek to M. Fazio; Valek Decl. Ex. 5, March 12, 2013

4   Letter from M. Valek to M. Fazio; Valek Decl., para. 8.  Apple proposed that Samsung might narrow

5   the scope of the parties' dispute with respect to diff printouts by providing a response to Interrogatory

6   No. 22 in which it identified those differences it would rely on to support its non-infringement

7   defense.  Valek Decl., para. 8.  Samsung rejected that proposal, subsequently informing Apple that

8   (1) it would not produce Apple's diff printouts, and (2) it would not provide a narrative response to

9   Interrogatory No. 22, unless Apple first identified those source code files in Samsung's product

10  relating to the accused functionality described in Apple's contentions.  Valek Decl. Ex. 6, Mar. 14,

11  2013 Letter from M. Fazio to M. Valek.  In other words, Samsung now insists that Apple answer its

12  own interrogatory.  Since the parties are at an impasse on these issues, Apple asks this Court to

13  intervene.

14  **III.    LEGAL STANDARD**

15       There is no doubt as to the relevance of source code in a software patent case.  *See Apple Inc.*

16  *v. Samsung Electronics Co.*, No. C 11-1846-LHK (PSG), 2012 WL 1595784, at *3 (N.D. Cal. May 4,

17  2012) (Grewal, J.) ("[W]hen a patentee requests source code for one or more accused products, a

18  defendant must produce it.  This is especially true when the defendant makes clear that it will

19  challenge any infringement claim at least in part by questioning the patentee's failure to analyze the

20  accused product's source code."), *aff'd,* 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) (Koh, J.).

21       When ambiguity exists as to how source code is used to implement the accused

22  instrumentalities, courts have compelled defendants to identify "the specific portion or portions of

23  [Defendant's] source code that perform[s] the function claimed in each element of [an asserted

24  claim]" and held that "[p]roviding the entire source code and expecting the requesting party to

25  discern the function of each line of code is not a sufficient response." *FatPipe Networks India Ltd. v.*

26  *XRoads Networks, Inc.*, 2010 WL 3064369, at *4 (D. Utah 2010).  It follows that a party may not

27  bury the relevant source code in a multitude of duplicative code and leave it to the other party to

28

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

1    discern which source code is actually used and which is not.

2          Once source code has been made available for inspection, the producing party must further

3    allow the inspecting party to review and test the source code.  *See* Fed. R. Civ. P. 34(a)(1).  Courts

4    have acknowledged the need for "source code analyzer tools" to discern the functionality of

5    particular source code.  *Digital Reg of Texas, LLC v. Adobe Systems Inc.*, 2013 WL 633406, at *5-6

6    (N.D. Cal. 2013).

7    **IV.    ARGUMENT**

8          The Court has previously faulted Samsung for not complying with its obligation to produce

9    relevant source code.  *See Apple Inc. v. Samsung Electronics Co.*, Case No. 5:11-cv-01846, 2012 WL

10   1595784 (N.D. Cal. 2012) (Grewal, J.).  Now Samsung is taking a different approach, refusing to

11   provide highly relevant information directly related to Apple's analysis of Samsung's source code,

12   while simultaneously preventing Apple from discovering fully such information through Apple's own

13   review of the code.

14         **A.      SAMSUNG MUST RESPOND TO INTERROGATORY NO. 22**

15         Apple's Interrogatory No. 22 asks Samsung to identify which files in Samsung's own code

16   are actually used by the accused devices to implement the accused features.  This information is

17   critical to Apple's case, and it is information that should be readily accessible to Samsung.  After a

18   number of boilerplate objections, see Furman Decl. Ex. D, Samsung's Objections and Responses to

19   Apple's Third Set of Interrogatories, Samsung bases its refusal to provide any answer on three

20   grounds: (1) the interrogatory is compound; (2) Apple's own expert "can ascertain which files relate

21   to which accused features at issue in this case" and therefore the response is equally available to

22   Apple as it is to Samsung; and (3) the information requested is outside of Samsung's possession,

23   custody, or control and therefore providing a response would be unduly burdensome.  *See* Valek

24   Decl. Ex 2, Nov. 16, 2012 Letter.  Each of these objections is meritless.

25         ***First***, Samsung's objection that the interrogatory is compound does not excuse Samsung's

26   failure to answer.  *See Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (holding

27   that an objection that an interrogatory is compound does not excuse the receiving party from

28

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-CV-00630-LHK (PSG)

providing a response).  Moreover, Interrogatory No. 22 is not compound because the entire

interrogatory is "logically or factually subsumed within and necessarily related to the primary

question."  *Id.*  The primary question here asks that Samsung identify the source code that is actually

used by Samsung for each accused device and each accused feature.

The entire interrogatory focuses on one set of information – <u>identification</u> of the source code

for the accused features and functionality that Samsung incorporates into its devices.  Because

Samsung does not develop the source code from scratch, but, instead, modifies the public Android

source code, it is necessary for Apple to understand how the Samsung files compare to the public

Android source code.  *See* Furman Decl. Ex. P, Examples of Duplicate Files in Samsung's

Production.  Apple's Interrogatory 22 simply asks Samsung to identify and explain the modifications,

if any, relevant to the accused features.

Samsung misstates the interrogatory in an effort to claim that it is compound.  In the meet-

and-confer process, Samsung claimed that there were two discrete sub-parts:  "(1) identification of

"all files that relate to the Accused Features and functionality of the Accused Samsung Products";

and (2) a comparison of "any differences between that file and the publicly available version of the

source code …."  Valek Decl. Ex. 2, Nov. 16, 2012 Letter.  Its argument is belied by the plain

language of the interrogatory, which makes clear what Apple means by "Identify": "the name of the

file, the engineers, designers and authors responsible for that file, the specific Accused Feature to

which the identified file relates, and any differences between that file and the publicly available

version of the source code for … the Android operating system and the engineers, designers and

authors of those differences."  The interrogatory is not compound.

***Second***, Samsung claims that it does not need to answer Interrogatory 22 because the identity

of the source code files that provide the accused functionality described in Apple's infringement

contentions is "equally available" to Apple through its review of Samsung's source code.  *See* Valek

Decl. Ex. 2, Nov. 16 Letter.  This is not true.

Samsung's source code is not "equally available" to Apple.  Apple's reviewers can inspect it,

but only through time-consuming download from a remote server.  It takes hours to download the

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

code for one version of one accused product.  And the review of such must be done onsite, generally within normal business hours.  In contrast, this code is freely-available to Samsung and its counsel with <u>no</u> restrictions whatsoever.  Moreover, Samsung <u>worked with and customized the code</u> for each of the accused products and therefore has substantial familiarity with its code.  There can be no doubt that it is far less burdensome for Samsung to identify those portions of its own source code that are actually used by the devices pertaining to the specific accused features (*e.g.*, slide-to-unlock, asynchronous synchronization, unified search, management of missed calls, history lists, linking actions to structures) and how that code may differ from the publicly-available version than it is for Apple.  Indeed, when production problems have arisen regarding portions of Samsung's code, Samsung has represented that those portions "do not concern the functionalities at issue in this lawsuit."  Furman Decl. Ex. O, March 15, 2013 Letter from M. Fazio to B. Buroker.  Knowledge of what code portions "do not concern" the accused functionalities presupposes at least some knowledge of the code portions that do.

Samsung's argument that it may specify the <u>entirety</u> of its source code production to respond to this interrogatory under Federal Rule of Civil Procedure 33(d) fails for the same reason.  Rule 33(d) says that the burden must be "substantially the same for either party" and the responding party must "specify[] the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party."  There can be no dispute that the burden on Apple is much greater when it comes to understanding the operation of *Samsung's* own source code.  Samsung engineers have written and designed the source code at issue and "it is implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate."  *LaserDynamics, Inc. v. Asus Computer Int'l*, 2009 U.S. Dist. LEXIS 3878, at *6 (E.D. Tex. 2009) (ordering a party to provide a narrative response regarding how its source code operates and holding that a reliance on Rule 33(d) is improper.).

Moreover, it is improper for Samsung to use Rule 33(d) simply to point to its source code and expect Apple to figure it out.  The Advisory Committee Notes to Rule 33 are clear that "directing the

Gibson, Dunn & Crutcher LLP

8      APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-CV-00630-LHK (PSG)

interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision…are an abuse of the option." Fed. R. Civ. P. 33(d) 1980 Advisory Committee Notes.  Moreover, the Ninth Circuit has held that the responding party must "specify where in the records the answers can be found."  *Donell v. Fid. Nat'l Title Agency of Nev., Inc.*, 2012 U.S. Dist. LEXIS 46598, at *17 (D. Nev. 2012) (citing *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983)).  When "voluminous documents are produced under Rule 33(d), they must be accompanied by indices designed to guide the searcher to the documents responsive to the interrogatories ….  Without detailed specification by category and location of responsive documents, the burden of deriving the answers to the interrogatories is **not** the same for the parties; rather, it would be easier for persons employed by the defendants to locate responsive documents."  *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 278 (C.D. Cal. 1999) (emphasis in original).  This situation is particularly acute when it comes to source code.  In *FatPipe Networks* the court ordered the defendant to "identify the specific portion or portions of [Defendant's] source code that perform[s] the function claimed in each element of [an asserted claim]" and held that "[p]roviding the entire source code and expecting the requesting party to discern the function of each line of code is not a sufficient response."  *FatPipe Networks India Ltd. v. XRoads Networks, Inc.*, 2010 WL 3064369, at *4 (D. Utah 2010).  So too here, Samsung engineers know exactly which portions of the source code are used for each device and how they themselves modified the source code from the public Android source code.  Samsung's reliance on Rule 33(d) is misplaced.

Finally, Samsung's production makes it impossible for Apple to discern which files are actually used by the accused devices.  Samsung's source code includes numerous duplicate files that make it impossible for Apple to determine the files are actually used in the accused products.  For example, during the preliminary injunction phase the Court found that Apple was likely to succeed in proving infringement of the '604 patent based in part on the analysis of two files in the public version

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-cv-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

of the Android Ice Cream Sandwich[3] source code:  **ContactsProvider2.java** and

**BrowserProvider.java**.  Order Granting Preliminary Injunction at 22-24 (D.I. 221).  Inspection of

the source code for Samsung's version of the Android Ice Cream Sandwich operating system for the

Samsung Galaxy S III shows ███████████████████████████████████████████████

██████████████████████████████████████  and without any indication of which

file is actually compiled and run by the Galaxy S III.  *See* Furman Decl. Ex. P, Examples of Duplicate

Files in Samsung's Production.  Additionally, for that same device there are ████████████████

████████████████████████████████████████████████  each of which is

relevant to the infringement of the '604 and '959 patents.  *Id.*  The problem multiplies upon

inspection of the source code for what appears to be the Jelly Bean (version 4.1.1) operating system

for that same phone: there are █████████████████████████████████████████████████

███████████████████████████████████████████████████

████████  and again with no indication of which is used by the Galaxy S III.  Similar problems exist

in the code for many of the other accused products.  A non-exhaustive list of duplicate files within

Samsung's source code production can be found in Exhibit P to the Furman Declaration.  It is not

possible for Apple to identify which of these duplicates is actually used in the accused products.

Only Samsung can provide this information.  A party "that knows or had access to an interrogatory

response may not use Rule 33(d) to avoid furnishing a response to the interrogatory where the answer

is not apparent from the face of the documents."  *E. & J. Gallo Winery v. Rallo*, 2006 U.S. Dist.

LEXIS 84048, at \*6-7 (E.D. Cal. 2006).

      **Third,** Samsung contends that it is overly burdensome to ask it to provide what it incorrectly

characterizes as "a point-by-point comparison of the differences … between the numerous versions of

source code implemented on the accused Samsung products and the hundreds of thousands of files

implicated in the 'publically available' versions of source code for five different operating systems."

Valek Decl. Ex. 2, Nov. 16 Letter.  Apple is not asking for a "point-by-point comparison" of all the

---

[3] Versions of the Android operating system are named after sweets – Ice Cream Sandwich is version
4.1 of Android and Jelly Bean is versions 4.1 and 4.2.

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-cv-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

differences in every source code file.  Interrogatory No. 22 asks Samsung to identify <u>only those source code files that relate to the accused functionality</u> identified in Apple's infringement contentions and, <u>as part of that identification</u>, describe any differences between those files and their counterparts in the public Android code.  Again, this is information as to which Samsung has exclusive knowledge.

Samsung insists says that before Samsung answers Interrogatory No. 22 Apple must identify the portions of Samsung's source code that provide the relevant functionality.  Valek Decl. Ex. 6, March 14, 2013 Letter from M. Fazio to M. Valek.  In other words, Samsung insists that Apple must answer most of Apple's own Interrogatory No. 22 in order for Samsung to provide any additional information, and that Apple must do so for every version of code for every accused product.  Apple has provided sufficient detail in its infringement contentions, including citations to relevant source code, to clearly identify the accused functionality.  In fact, as noted above, Samsung was perfectly capable of knowing which portions of its source code "do not concern the functionalities at issue in this lawsuit."  Furman Decl. Ex. O, March 15, 2013 Letter.  Further, Samsung goes so far as to claim that the parties are not at impasse as to Interrogatory No. 22 because it has offered to provide information relating to its non-infringement contentions (which is the subject of a different interrogatory) if Apple will first identify all the files in Samsung's source code for every version of code and every accused product that relate to the functionality Apple has described in its contentions.  Valek Decl. Ex. 6, March 14, 2013 Letter.  Samsung's offer is illusory, as the entire point of Interrogatory No. 22 is to obtain information that is uniquely in Samsung's possession.

*Finally*, answering Interrogatory No. 22 does not shift the burden to prove infringement, as Samsung claims.  Apple has identified the accused functionality and provided detailed explanation of its infringement contentions.  It has served Interrogatory No. 22 to obtain discovery into where that functionality resides in Samsung's source code.  Apple intends to meet all of its evidentiary burdens at trial, but it is entitled to reasonable discovery, including information that is entirely in Samsung's possession.  Accordingly, Apple asks the Court to compel Samsung to respond to Interrogatory No. 22.

Gibson, Dunn &
Crutcher LLP

11   APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-CV-00630-LHK (PSG)

**B.     SAMSUNG MUST PRODUCE THE DIFF PRINTOUTS APPLE'S REVIEWERS HAVE REQUESTED**

Samsung should be ordered to produce the diff printouts made by Apple's source code reviewers.  Samsung has no basis for withholding this Apple work product.  Samsung's behavior is particularly egregious in light of this Court's previous Order compelling the installation of the diff program used to create the diff printouts, as well as public versions of the Android source code.  Order Granting-In-Part Apple's Motion to Compel (D.I. 164).  Samsung is effectively trying to perform an end-run around the Court's previous order by allowing Apple to use the diff program but not to make reasonable use of the output.  Samsung's refusal to provide the diff printouts is also inconsistent with its reasoning for not answering Interrogatory No. 22.  Specifically, Samsung has taken the position that "Apple's expert can ascertain which files relate to which accused features in this case" and that "Apple requested, and Samsung agreed, to install the Cygwin tools [which include the diff program] on Samsung's source code review computer ….  [Apple's Reviewer] has Cygwin at his disposal to run several 'diffs' during his inspection of source code …."  Valek Decl. Ex 2, November 16, 2012 Letter.

The diff program enables Apple's experts to review source code once for a single device and then compare that to other devices.  For example, an expert can look at a file called **contacts.java** that runs on the Samsung Galaxy S III ("File A") and conclude that it operates in a certain manner that infringes one of Apple's patents.  The expert can then compare File A with the file **contacts.java** that runs on the Samsung Galaxy Note 2 ("File B").  When the diff program indicates that File A and File B have no differences the expert can then conclude that the analysis of File A applies to File B and move on.  In doing so, Apple's expert would be obligated under Fed. R. Civ. P. 26(a)(2)(B)(ii)-(iii) to attach copies of the diff printout to his expert report as the basis on which he formed his opinion that File B infringes.  Without the diff printouts the only way Apple's expert would be able to support his opinion of infringement would be to do a line-by-line comparison on hundreds of printed pages of source code, basically replicating the diff program by hand.  Doing so would not only be grossly impractical, but it would also eliminate one of the chief reasons for having the diff program in the first place, in contravention of the Court's Order.

Gibson, Dunn & Crutcher LLP

While a full response to Interrogatory No. 22 would not obviate Apple's need for the diff printouts, it would decrease the printouts required. For example, because a complete response to Interrogatory No. 22 would identify the differences between the source code files related to the accused features and the public Android source code, Apple would not require full diff printouts comparing the Samsung code to the public Android code. Apple still would need, however, diff printouts that compare devices to one another.

Samsung's objections to providing the diff printouts are meritless and inconsistent. In one letter, Samsung argues both that the diff printouts "contain no source code" yet also that the diff printouts should be subject to the limitations in the Protective Order for the printing of source code. *See* Furman Decl. Ex. F, June 6, 2012 from J. Zalduendo to E. Fedman; Protective Order ¶ 11(i) (D.I. 171). In later correspondence, Samsung makes the conclusory allegation that Samsung need not produce the diff printouts because Apple is printing them "for the purpose of review and analysis elsewhere." Furman Decl. Ex. J, Dec. 10, 2012 Letter from S. Rezvani to J. Furman. Samsung goes on to argue that "the Protective Order does *not* give the parties *any* right to print out the 'diff results' in the first place." *Id.* (emphasis in original). Each of these objections is wrong.

***First,*** Samsung appears to base its refusal to produce the diff printouts on the mistaken notion that because the Protective Order "does not expressly provide for the printing of diff results" there is no obligation to allow them. Furman Decl. Ex. L, January 22, 2013 Letter from S. Rezvani to J. Furman. This misconstrues the very purpose of the Protective Order. It is not a replacement for the Federal Rules of Civil Procedure; it does not govern what a party must produce, only how it should be produced and the steps necessary to protect confidentiality of the information. Samsung continues that the documents are not discoverable because "the printouts are unlike any other documents in this case. They were not created by Samsung employees. They did not exist until Apple's expert generated and printed them in this litigation. They are not responsive to any Request for Production propounded by Apple. The contents of the printouts would not be admissible either as an exhibit to a declaration, or as an exhibit at trial." *Id.* By this argument, Samsung ignores that Apple is not seeking the diff printouts from Samsung through a document request; rather, the diff printouts are the

Gibson, Dunn &
Crutcher LLP

1  results of an analysis performed by Apple and authorized under Fed. R. Civ. P. 34(a)(1)(A). "A party

2  may serve on any other party a request… to produce and permit the requesting party or its

3  representative to *inspect, copy, test, or sample* the following items in the responding party's

4  possession, custody, or control: (A) any designated documents *or electronically stored information.*"

5  *Id.* (emphasis added). Courts have acknowledged the need for "source code analyzer tools" to

6  discern the functionality of particular source code. *Digital Reg of Texas, LLC v. Adobe Systems Inc.*,

7  2013 WL 633406, at *5-6 (N.D. Cal. 2013). These diff printouts are, in fact, evidence that Apple's

8  experts can use when preparing their reports, which must identify "the facts or data considered by the

9  witness in forming" his opinions and "any exhibits that will be used to summarize or support them."

10 Fed. R. Civ. P. 26(a)(2)(B)(ii)-(iii). The notes of the Advisory Committee explain, moreover, that

11 "the intention is that 'facts or data' be interpreted broadly to require disclosure of any material

12 considered by the expert, from whatever source, that contains factual ingredients. The disclosure

13 obligation extends to any facts or data 'considered' by the expert in forming the opinions to be

14 expressed, not only those relied upon by the expert." Fed. R. Civ. P. 26 2010 Advisory Committee

15 Notes.

16     ***Second***, Samsung's second, inconsistent position is that the diff printouts are prohibited by

17 provisions of the Protective Order. *See* Furman Decl. Ex. F, June 6, 2012 from J. Zalduendo to E.

18 Fedman; Furman Decl. Ex. J, Dec. 10, 2012 Letter from S. Rezvani to J. Furman. Samsung is wrong.

19 While Apple agrees with Samsung that the diff printouts are not source code (*see* Protective Order,

20 ¶ 2(h)), Apple also has no objection to giving them the same confidentiality *designation* that the

21 Protective Order ¶ 10 provides for source code, since they are *about* the source code. An expert

22 report or deposition discussing source code would be so designated as well.

23     While Apple has no objection to applying the source code confidentiality designation to the

24 diff printouts, despite that the diff printouts are not source code, as both Apple and Samsung agree,

25 Apple does object to applying the printout limitations placed on source code in the Protective Order.

26 Specifically, paragraph 11(i) of the Protective Order restricts the printing *of source code* from the

27 source code computer. Again, despite acknowledging that the diff printouts are not source code,

28

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
                INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
                PROGRAM PRINTOUTS
                CASE NO. 5:12-cv-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

Samsung asserts that Apple's diff printouts run afoul of the provision that "[p]rinted portions which exceed 50 continuous pages or l0% or more of a specific software release shall be presumed excessive and not done for a permitted purpose."  Protective Order ¶ 11(i) (D.I. 171).  As the Protective Order explicitly explains, this provision was restricted to source code and added to prevent a party from circumventing the source code inspection protocol:  "The Receiving Party shall not print **Source Code** in order to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Confidential Source Code Computer, as the parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere."  *Id.*  As explained above, Apple does not seek to use the diff printouts to circumvent its inspection of the code; rather, the printouts memorialize the inspection.

Indeed, Samsung fails to appreciate the distinction that analysis of source code is not the same as source code itself.  Samsung's argument that the diff printouts "provide access to an understanding of" the source code is beside the point.  *See* Furman Decl. Ex. F, June 6, 2012 from J. Zalduendo to E. Fedman; Furman Decl. Ex. J, Dec. 10, 2012 Letter from S. Rezvani to J. Furman.  The provision in paragraph 11(i) is meant to keep the actual source code itself under tight security and strives to keep safe the disclosure of the actual "crown jewels."  That does not mean that anything discussing the source code is governed by those same printing restrictions.

From a technical perspective, the page and percentage limits of paragraph 11(i) do not make sense in the context of diff printouts.  When two files are compared and the diff program says that they are the same, a single line is generated that says so.  The code itself is not repeated.  When two files are different, the diff program will show the actual differences in a manner similar to the redlining tool in Microsoft Word.  The diff program can also be run on a group of files at once.  The output would be one diff printout containing multiple lines, one line for each pair of files if they are the same and multiple lines for each pair if the files are different.  Regardless of the length of that output, it cannot be considered to be "50 continuous pages" of a source code file under the Protective Order, since the length is attributable to many different source code files.  In this case, where the

Gibson, Dunn &
Crutcher LLP

similarities in the files vastly outnumber the differences, Samsung has not pointed to any instances in which anywhere even close to 50 continuous pages of a single source code file has been generated by the diff printouts.

**Third**, Samsung's unsupported contention that diff printouts should not be produced because they are "for the purpose of review and analysis elsewhere" again misapplies the Protective Order. Furman Decl. Ex. J, Dec. 10, 2012 Letter from S. Rezvani to J. Furman.  This language from ¶ 11(i), with emphasis added, applies only to *source code printouts*, not printouts of an analysis of source code:

> …The Receiving Party **shall not print Source Code** in order to review blocks of **Source Code** elsewhere in the first instance, i.e., as an alternative to reviewing **that Source Code** electronically on the Confidential Source Code Computer, as the parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing **portions of code** for review and analysis elsewhere…

The purpose of this provision is to prevent a receiving party from printing out blocks of code for later, offsite review.  Instead, a receiving party must review the code onsite, and then limit the printing to relevant excerpts only.  The purpose of the diff printouts is entirely different: it is to identify the *differences* between two similar sets of code, and then to document those differences for the purpose of supporting an infringement analysis.  In other words, the purpose of the diff printouts is "to facilitate the Receiving Party's preparation of court filings, expert reports, and trial exhibits." Protective Order ¶ 11(i).  As such, the diff printouts are expressly *permitted* by the Protective Order. Samsung has never demonstrated otherwise.

If Samsung continues to refuse to provide the diff printouts, Samsung should be precluded from claiming that Apple has analyzed the wrong source code or that there are any material differences between the public Android source code and the source code for any accused device.  The justification for this choice is straightforward.  To establish its *prima facie* case against each version of the accused products, Apple needs to analyze the source code actually used by the accused devices and demonstrate how the accused functionalities operate in those versions.  Samsung's refusal to answer Interrogatory No. 22 and to produce diff printouts has deprived Apple of evidence that is critical to those efforts.  *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (explaining

that "the reasonable assumption that the party resisting discovery is doing so because the information sought is unfavorable to its interest.  In such a case, the [adverse inference] merely serves as a mechanism for establishing facts that are being improperly hidden by the party resisting discovery.")

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court GRANT Apple's Motion to Compel a Response to Interrogatory No. 22 and Production of Diff Program Printouts.

.

GIBSON, DUNN & CRUTCHER LLP

Dated:  March 18, 2013                              By:    _____
                                                                    */s/ H. Mark Lyon*
                                                                    H. Mark Lyon
                                                                    ***Attorney for Plaintiff Apple Inc.***

APPLE INC.'S MOTION TO COMPEL A RESPONSE TO
INTERROGATORY NO. 22 AND PRODUCTION OF DIFF
PROGRAM PRINTOUTS
CASE NO. 5:12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule 5-1, and will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have consented to electronic service in accordance with the Northern District of California Local Rules via the Court's ECF system.

Dated:  March 18, 2012                    By:    _____*/s/ H. Mark Lyon*_____

H. Mark Lyon

Gibson, Dunn &
Crutcher LLP