QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S MOTION TO COMPEL PRODUCTION OF ITUNES AND ISYNC SOURCE CODE, PRINTOUTS, AND RELEASE INFORMATION**<br><br>Date: April 16, 2013<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Honorable Paul S. Grewal<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ......................................................................... 1

RELIEF REQUESTED .............................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED............................................................ 2

SAMSUNG'S CIVIL L.R. 37-2 STATEMENT .......................................................... 2

SAMSUNG'S CERTIFICATION PURSUANT TO FED. R. CIV. P. 37(A)(1)............................ 7

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

INTRODUCTION.................................................................................................... 1

BACKGROUND...................................................................................................... 3

     A.    Samsung Identifies iTunes and iSync as Prior Art to U.S. Patent No.
          7,761,414 and Seeks Discovery Relating to These References ................................ 3

     B.    Apple Refuses to Produce Prior Art iTunes Code.................................................... 4

     C.    Apple Refuses to Deliver Printouts of iTunes 6.0.1 Source Code .......................... 5

     D.    Apple Produces Pieces of iSync Source Code But Refuses to Identify the
          Corresponding Release Numbers ........................................................................... 6

ARGUMENT ......................................................................................................... 7

I.    APPLE MUST PRODUCE SAMSUNG'S ITUNES SOURCE CODE
      PRINTOUTS, WHICH DO NOT EXCEED 10% OF THE ITUNES SOFTWARE
      RELEASE ......................................................................................................... 7

II.   SAMSUNG IS ENTITLED TO THE FULL SOURCE CODE FOR ALL
      VERSIONS OF ITUNES THAT PRE-DATE JANUARY 2007 ....................................... 9

     A.    iTunes Source Code Is Relevant .......................................................................... 9

     B.    Apple Itself Has Demanded Complete Source Code For All Versions of
          Applications Accused of Infringing The '414 Patent............................................... 11

III.  APPLE MUST IDENTIFY INTERNAL VERSION NUMBERING FOR ISYNC
      SOURCE CODE ................................................................................................. 12

CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## Cases

*3Com Corp v. D-Link Sys.,*
  2007 U.S. Dist. LEXIS 26540, 5-7 (N.D. Cal. Mar. 27, 2007)...................................10

*Columbia Pictures Indus. v. Bunnell.,*
  2007 U.S. Dist. LEXIS 101968, 15-18 (C.D. Cal. May 3, 2007) ...............................10

*Displaylink Corp. v. Magic Control Technology Corp.,*
  2008 WL 2915390 (N.D. Cal. July 23, 2008)..............................................................10

*Fatpipe Networks India Ltd. v. Xroads Networks, Inc.,*
  U.S. Dist. LEXIS 137353 (D. Utah Aug. 3, 2010).......................................................10

*In re Google Litigation,*
  2011 WL 286173 (N.D. Cal. January  27, 2011) .........................................................10

*Phase Four Industries, Inc. v. Marathon Coach, Inc.,*
  2006 WL 1465313 (N.D. Cal. May 24, 2006) ..............................................................11

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.,*
  254 F.R.D. 568 (N.D. Cal. 2008) ...................................................................................8

*Regal Electronics, Inc. v. Pulse Engineering, Inc.,*
  2005 WL 3078983 (N.D. Cal. November 16, 2005)....................................................11

*Orion IP, LLC v. Staples, Inc.,*
  407 F. Supp. 2d 815 (E.D. Tex. 2006)  ........................................................................11

*Epicrealm, Licensing, LLC v. Autoflex Leasing, Inc.,*
  2007 WL 2580969 (E.D. Tex. Aug. 27, 2007)............................................................11

## Statutes

35 U.S.C. § 102 ....................................................................................................................12

Fed. R. Civ. P. 26(b)(1) .........................................................................................................9

Fed. R. Civ. P. 37(a)(3)(B)(iv) ..............................................................................................9

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 16, 2013, at 10:00 am, or as soon thereafter as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court for an order compelling Apple Inc. ("Apple") to produce (1) the source code printouts bearing Bates numbers 630OFFAPPLESOURCECODE_000089 through 630OFFAPPLESOURCECODE_000410 and 630OFFAPPLESOURCECODE_000428 through 630OFFAPPLESOURCECODE_000650; (2) the complete source code for every version of iTunes that predates January 7, 2007; (3) the complete source code for every version of iSync that predates January 7, 2007, including the complete source code for all SyncServices and ███████ source code used by these versions; and (4) the version number information required to verify Apple's iSync production, including an identification of the SyncServices and ███████ versions that were used by each version of iSync.

This motion is based on this notice of motion and supporting memorandum of points and authorities; the Declaration of Michael Fazio ("Fazio Decl."); and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

## RELIEF REQUESTED

Under Federal Rule of Civil Procedure 37(a)(1), Samsung seeks an order compelling Apple to (1) produce the source code printouts bearing Bates numbers 630OFFAPPLESOURCECODE_000089 through 630OFFAPPLESOURCECODE_000410 and 630OFFAPPLESOURCECODE_000428 through 630OFFAPPLESOURCECODE_000650; (2) complete production of source code for all releases of iTunes that pre-date January 7, 2007, including but not limited to 1.0, 1.0.1, 1.1, 1.1.1, and 1.1.2; 2.0, 2.0.1, 2.0.2, 2.0.3, and 2.0.4; 3.0 and 3.0.1; 4.0, 4.0.1, 4.1.1, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.7.1, 4.8, and 4.9; 5.0 and 5.0.1; 6.0, 6.0.1, 6.0.2, 6.0.3, 6.0.4,, 6.0.4.1, 6.0.4.2, and 6.0.5; 7.0, 7.0.1, and 7.0.2; (3) complete production

of source code for all releases of iSync software that pre-date January 7, 2007, including but not limited to all source code used by these releases, such as all ███████ and SyncServices code used by those versions of iSync; and (4) identify which release version of iSync software corresponds to each folder of iSync code Apple has made available for inspection, and identify the versions and corresponding folders on Apple's secure review computer for SyncServices or ███████ code used by each release version of iSync.

### STATEMENT OF ISSUES TO BE DECIDED

Whether the term "software release" in Section 11(i) of the Protective Order governing confidentiality in this action (Dkt. No. 171) refers to a release of a software program (the common meaning of that term) or instead refers to whatever subset of code for a software program Apple decides to make available on its source code review computer.

Whether Apple may selectively make available only a subset of iTunes and iSync source code on its secure review computers, rather than make the full set of relevant code available for Samsung's examination on those review computers.

Whether Apple may make iSync source code available for inspection in folders that bear internal codenames or internal numbering schemes without identifying the release of iSync that corresponds to each internally numbered folder.

### SAMSUNG'S CIVIL L.R. 37-2 STATEMENT

Pursuant to Civil L.R. 37-2, Samsung's discovery requests to Apple that are the subject of this Motion are set forth in full below, with Apple's corresponding objections and/or answers following immediately after each:

### SAMSUNG'S REQUEST FOR PRODUCTION NO. 62:

All PRIOR ART known to APPLE RELATING TO the APPLE PATENTS, including all PRIOR ART cited or identified by other individuals or companies.

**APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Apple objects to this Request to the extent it is vague, ambiguous, overbroad, and unduly burdensome, particularly with respect to the terms "[a]ll PRIOR ART known to APPLE," "APPLE PATENTS" and "cited or identified by other individuals or companies." Apple objects to this Request to the extent that the overly broad term "RELATING TO" seeks information regarding patents and patent claims not asserted by Apple in This Lawsuit. Apple also objects to this Request to the extent it seeks privileged information, information protected by the work product doctrine, information protected by the joint defense or common interest privilege, and any other privileges and/or doctrines.

Subject to and without waiving the foregoing General and Specific Objections, Apple has produced or will produce responsive, non-privileged documents in its possession, custody, or control, if any, located after a reasonable search, that constitute or identify alleged prior art disclosed during the respective course of prosecution of the asserted patents, or of which Apple has otherwise been made aware of as relating to the validity of the asserted patents.

**SAMSUNG'S REQUEST FOR PRODUCTION NO. 272:**

All DOCUMENTS RELATING TO any prior art, or possible prior art, to the subject matter of any claim of any of the APPLE PATENTS.  This includes without limitation documents or information RELATING TO patents, publications, prior knowledge, public uses, sales, or offers for sale.

**APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 272:**

Apple objects to this request on the grounds and to the extent that it is overly broad, unduly burdensome, vague, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including but not limited to its use of the terms "All DOCUMENTS RELATING TO," "any prior art, "possible prior art," "subject matter," "any claim of any of the APPLE PATENTS," "includes without limitation," "documents or information RELATING TO," "patents, publications, prior knowledge, public uses, sales, or

offers for sale," and the request's failure to specify with particularity the documents being sought. Apple objects to this request to the extent that it seeks documents outside of Apple's possession, custody, or control. Apple objects to this request on the grounds and to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense or common interest privilege, or any other applicable privilege, doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B).

Subject to and without waiving the foregoing General and Specific Objections, Apple has produced or will produce non-privileged responsive documents relating to prior art to the asserted Apple Patents of which Apple is aware that are in its possession, custody, or control, if any, that can be located after a reasonably diligent search and only after Apple has satisfied all disclosure obligations required for the pertinent parties.

**SAMSUNG'S REQUEST FOR PRODUCTION NO. 293:**

All DOCUMENTS, including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides RELATING TO APPLE's iSync software.

**APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 293:**

Apple objects to this request on the grounds and to the extent that it is overly broad, unduly burdensome, vague, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including but not limited to its use of the terms "All DOCUMENTS," "Software," "Executable Software," "technical plans," "diagrams," "workbooks," "manuals," and "RELATING TO APPLE's iSync software." Apple further objects to this request as overly broad, unduly burdensome, vague, ambiguous, seeking information not reasonably calculated to lead to the discovery of admissible evidence, and not specifying with reasonable particularity the documents being sought, particularly with respect to the phrase "RELATING TO APPLE's iSync software" and the fact that this request is not limited in time.

1    Subject to and without waiving the foregoing General and Specific Objections, Apple has

2  produced or will produce non-privileged responsive documents in its possession, custody, or

3  control sufficient to show the operation and functionality of Apple's iSync software, if any, that

4  can be located after a reasonably diligent search.

5

6  **SAMSUNG'S REQUEST FOR PRODUCTION NO. 294:**

7    All DOCUMENTS, including but not limited to Software, Executable Software, technical

8  plans, diagrams, workbooks, manuals, published articles, publications, and user guides

9  RELATING TO synchronization functionality, including but not limited to the synchronization

10  feature in APPLE's iTunes software.

11

12  **APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 294:**

13    Apple objects to this request on the grounds and to the extent that it is overly broad, unduly

14  burdensome, vague, ambiguous, and seeks information that is neither relevant nor reasonably

15  calculated to lead to the discovery of admissible evidence, including but not limited to its use of

16  the terms "All DOCUMENTS," "Software," "Executable Software," "technical plans,"

17  "diagrams," "workbooks," "manuals," "RELATING TO synchronization functionality,"

18  "synchronization functionality," "synchronization feature," and "Apple's iTunes software." Apple

19  further objects to this request as overly broad, unduly burdensome, vague, ambiguous, seeking

20  information not reasonably calculated to lead to the discovery of admissible evidence, and not

21  specifying with reasonable particularity the documents being sought, particularly with respect to

22  the phrase "RELATING TO synchronization functionality" and the fact that this request is not

23  limited in time.

24    Subject to and without waiving the foregoing General and Specific Objections, Apple has

25  produced or will produce non-privileged responsive documents in its possession, custody, or

26  control sufficient to show the operation and functionality of the synchronization process used by

27  Apple's iTunes software, if any, that can be located after a reasonably diligent search.

28

**SAMSUNG'S REQUEST FOR PRODUCTION NO. 638:**

All DOCUMENTS and THINGS, including but not limited to SOFTWARE, EXECUTABLE SOFTWARE, technical plans, diagrams, workbooks and other descriptions, instruction manuals, user guides, published articles, publications, and COMMUNICATIONS relating to all versions of APPLE's iTunes software developed prior to January 7, 2007, including but not limited to version 6.0.1.

**APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 638:**

Apple objects to this request on the grounds and to the extent that it is overly broad, unduly burdensome, vague, ambiguous, and seeks Apple objects to this request on the grounds and to the extent that it is overly broad, unduly burdensome, vague, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including but not limited to its use of the terms "All DOCUMENTS and THINGS," "SOFTWARE," "EXECUTABLE SOFTWARE," "technical plans," "diagrams," "workbooks," "manuals," "COMMUNICATIONS," and "relating to all versions of APPLE's iTunes software." Apple further objects to this request as overly broad, unduly burdensome, vague, ambiguous, seeking information not reasonably calculated to lead to the discovery of admissible evidence, and not specifying with reasonable particularity the documents being sought, particularly to the extent that it is not limited to the identified version 6.0.1 of the iTunes software and does not otherwise identify specific versions of the Apple iTunes software with respect to which it seeks documents. Apple further objects to this request as not sufficiently limited in time in that it seeks all "COMMUNICATIONS … prior to January 7, 2007," without specifying a beginning time frame. Apple objects to the extent this request is duplicative of previous requests, including, but not limited to Requests 128 and 294. Apple further objects to the phrase "All DOCUMENTS AND THINGS" and all "COMMUNICATIONS . . . relating to all versions of APPLE's iTunes software" as overly broad, unduly burdensome, vague, ambiguous, and seeking information not reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent

1   this request seeks documents that are not relevant to the claims or defenses of any party in this

2   litigation.

3        Subject to and without waving the foregoing General and Specific Objections, Apple has

4   produced or will produce non-privileged responsive documents in its possession, custody or

5   control, if any, that are sufficient to show the syncing operation of iTunes 6.0.1 and can be located

6   after a reasonably diligent search.

7

8        **SAMSUNG'S CERTIFICATION PURSUANT TO FED. R. CIV. P. 37(A)(1)**

9        Samsung hereby certifies that it has in good faith conferred with Apple in an effort to

10  obtain the discovery described immediately above without Court action.  Samsung's efforts to

11  resolve this discovery dispute without court intervention are described in the Declaration of

12  Michael Fazio, and exhibits attached thereto, submitted concurrently herewith.

13

14  DATED: March 12, 2013          QUINN EMANUEL URQUHART & SULLIVAN, LLP

15                    By */s/ Michael L. Fazio*

16                       Charles K. Verhoeven
                        Kevin P.B. Johnson

17                       Victoria F. Maroulis
                        Michael T. Zeller

18                       Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
                        SAMSUNG ELECTRONICS AMERICA, INC., and

19                       SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Seven months ago, Samsung identified two Apple products, iTunes and iSync, as prior art to U.S. Patent No. 7,761,414 ("the '414 patent"), and asked Apple to produce source code for all releases of these products from before the filing date. Apple has responded with roadblocks, delays, and incomplete information. Apple's systemic refusal to allow discovery of prior art Apple itself developed is a violation of the Federal Rules of Civil Procedure, the Local Rules, and the Protective Order in this action, and must end.

First, Apple refuses to deliver source code printouts based on an absurd interpretation of the Protective Order. That order allows parties, including Apple, to object to source code printouts that exceed 10% of a specific "software release." The Protective Order does not define "software release," and does not need to: everyone knows it means a version of software released to the public. Seeking an excuse to avoid its production obligations, however, Apple insists that "software release" means any hand-picked subset of code Apple chooses to provide in discovery. Thus, according to Apple, if a released version of iTunes software included 10,000 pages of source code, but Apple decided to make only *ten* pages available to Samsung in this action, then Samsung could print only *one* page of code from that iTunes "software release." This interpretation of the Protective Order is absurd; "software release" means "software release," not a chosen-for-litigation subset of the source code that implements a software release. Apple's position is a blatant effort to hinder analysis of Apple's prior art.

Second, Apple is withholding the vast majority of its iTunes prior art source code. Apple cherry-picked a subset of source code from each of the iTunes releases that predate the '414 patent. This cherry-picked subset includes some code used for synchronization operations in iTunes, but because the subset is incomplete, Samsung is unable to determine whether additional synchronization source code exists. Worse, Apple refuses to produce *any* code for the iTunes user interface – even though the asserted claims of the '414 patent explicitly reference a "user level non-synchronization processing thread . . . provided by a user application which provides a user interface …" At most, Apple says, it need only produce user interface code from *one* version of

iTunes that Apple unilaterally deems "representative."  Apple has it backwards.  Samsung is entitled to review complete iTunes source code for all prior art releases, and Samsung – not Apple – is entitled to decide which versions of source code are most likely to prove Samsung's invalidity defenses.  Apple's position would allow *Apple* to pick a single version, and require Samsung to accept the say-so of Apple attorneys that this version fairly represents all the other versions of prior art code.  This is unacceptable, as Apple well knows.  Apple itself asked Samsung to produce source code for *all* versions of the Samsung products accused of infringement, and Samsung complied.  Samsung is entitled to the same scope of discovery that Apple demanded and received.

Third, Apple is obstructing discovery into iSync prior art by refusing to produce all prior art versions, or to identify which iSync software releases correspond to folders of code Apple made available for inspection.  The iSync source code on Apple's inspection computers is identified only by cryptic internal numbers, such as "████████" with no indication of which internal numbers correspond to actual releases, such as iSync release version 1.1.  Apple refuses to tell Samsung which iSync release corresponds to which source code folders on Apple's review computer, or to identify which versions and folders of SyncServices or ███████ code were used by each iSync release.  Without this information, Samsung cannot establish that the iSync source code produced by Apple is in fact prior art, or complete its analysis of this source code, rendering Apple's production of code effectively worthless.

Because Apple continues to stonewall on this basic discovery, Samsung requests an order compelling Apple's production of:

- the source code printouts bearing Bates numbers 630OFFAPPLESOURCECODE _000089 through 630OFFAPPLESOURCECODE_000410 and 630OFFAPPLE SOURCECODE_000428 through 630OFFAPPLESOURCECODE_000650;

- the complete source code for every version of iTunes that predates January 7, 2007;

- the complete source code for every version iSync that predates January 7, 2007, including all SyncServices and ███████ source code used by these versions; and

- the version number information required to verify Apple's iSync production.

# BACKGROUND

**A.    Samsung Identifies iTunes and iSync as Prior Art to U.S. Patent No. 7,761,414 and Seeks Discovery Relating to These References**

The '414 Patent, filed January 7, 2007 and entitled "Asynchronous Data Synchronization Amongst Devices," addresses synchronizing two databases by concurrently executing a synchronization thread and a non-synchronization thread.  (Fazio Decl. Ex. 1.)   The asserted claims of the '414 patent state that the non-synchronization thread is provided by a "user application" with a "user interface."  (*See* Claims 1-2, 4, 6-7, 10-12, 14, 16-17, 20, 23-24, and 26-28.)

On August 10, 2012, Samsung served its invalidity contentions under Pat. L. R. 3-3.  Samsung identified as prior art all versions of Apple's iTunes and iSync software that predate the '414 patent.  (Fazio Decl. Ex. 2, at 50.)  Samsung also served detailed invalidity charts explaining how user interface and synchronization functionality in Apple's iTunes software together anticipated the '414 patent (Fazio Decl. Ex. 3), as well as how iSync, when used to synchronize data in the Apple OS X Address Book application, provides this user-interface and synchronization functionality (Fazio Decl. Ex. 4).  On December 27, 2012, Samsung supplemented its invalidity contentions; Samsung again identified all versions of iTunes and iSync predating the '414 patent as prior art, and again included detailed invalidity charts explaining the anticipating functionality in Apple's iTunes and iSync software.  (Fazio Decl. Ex. 5.)

Between April and September 2012, Samsung propounded discovery requests seeking documents and source code regarding Apple's iTunes and iSync prior art software releases.  In addition to general requests for all documents relating to prior art to the Apple patents-in-suit (Fazio Decl. Ex. 6, at Request No. 62; Fazio Decl. Ex. 7 at Request No. 272), Samsung propounded several document requests specifically directed to iTunes and iSync.  For example, Samsung requested all documents –  including "Software" and "Executable Software" – relating to iTunes and iSync.  (*Id.* at Request Nos. 293-294; Fazio Decl. Ex. 8 at Request No. 638.)  Samsung's Interrogatory No. 13 also asked Apple for information regarding the actual source code produced pursuant to these requests, including that Apple identify which commercially distributed

1   versions of software corresponds to the source code produced by Apple.  (Fazio Decl. Ex. 9, at

2   Interrogatory No. 13.)

3   **B.      Apple Refuses to Produce Prior Art iTunes Code**

4        Despite knowing since August that Samsung sought discovery on iTunes and iSync, Apple

5   failed to make any prior art source code for that software available until late December 2012.

6   After Samsung wrote to Apple about this deficiency on November 29, 2012 (Fazio Decl. Ex. 10),

7   Apple acknowledged that it had not yet produced "all current and historical versions of iSync and

8   iTunes" and requested additional time "to allow time for Apple to investigate whether it has any

9   additional iTunes source code or iSync source code."  (Fazio Decl. Ex. 11.)  Apple did not raise

10  any relevance objection to the production of iTunes source code, instead indicating that its

11  production would be limited only by its ability to *locate* additional code.  (*Id.*)

12       On December 23, 2012, Apple produced prior art iTunes source code for inspection (Fazio

13  Decl. Ex. 12), but this code was missing – among other things – the code implementing the iTunes

14  user interface.  (Fazio Decl. Ex. 13.)  Samsung wrote Apple about this deficiency on January 1 and

15  then again, after receiving no response, on January 7.  (*Id.* and Fazio Decl. Ex. 14.)  Apple

16  eventually responded to Samsung's letters and stated that it was refusing to produce any iTunes

17  user interface code based on a new relevance objection.  (Fazio Decl. Ex. 15.)  In response,

18  Samsung explained that the code was relevant to Samsung's invalidity defenses because the

19  asserted claims of the '414 patent expressly require a "user interface" and "at least one user-level

20  non-synchronization processing thread."  (Fazio Decl. Ex. 16.)  Samsung went on to explain the

21  relevance of this source code again in repeated follow-up letters of January 14, January 23,

22  January 29, and February 6.  (Fazio Decl. Ex. 17; Fazio Decl. Ex. 18; Fazio Decl. Ex. 19; Fazio

23  Decl. Ex. 20.)  But in its subsequent letters, Apple simply ignored Samsung's explanations and

24  continued to assert a relevance objection, without explanation.  (Fazio Decl. Ex 21; Fazio Decl.

25  Ex. 22.)

26       The parties held a lead counsel meet and confer on February 15-16, during which Apple

27  confirmed it was standing on its claim that iTunes user interface code was not relevant, and that

28  Apple would not let Samsung inspect the complete source code for prior art iTunes releases.

Apple offered to allow inspection of, at most, the user interface code of a single version of iTunes (version 6.0.1), and only on the condition that Samsung withdraw its requests for any additional code, unless Samsung could articulate reasons that, in Apple's mind, constituted a "specific and good faith basis" for additional source code inspection.  Samsung declined Apple's proposal, in light of Apple's refusal to let Samsung inspect the complete source code for all versions of iTunes. (Fazio Decl. Ex. 23.)  Apple again confirmed on March 1 that it would not let Samsung inspect the complete iTunes source code for any iTunes release.  (Fazio Decl. Ex 24.)   On March 3, Samsung confirmed that the parties were at an impasse.  (Fazio Decl. Ex. 25.)

**C.**     **Apple Refuses to Deliver Printouts of iTunes 6.0.1 Source Code**

From January 3-7, 2013, Samsung inspected the limited iTunes source code that had been made available for inspection and printed portions of code relating to synchronization operations. Of the 453 pages of source code that Samsung printed regarding iTunes 6.0.1, Apple refused to deliver 347 pages.  Apple's excuse for its failure to deliver this code was that "printing of the source code contained in these documents is presumptively excessive under section 11(i) of the Protective Order, as it contains approximately 25% of the iTunes 6.0.1 source code release, and thus far exceeds '10% or more of a specific software release.'" (Fazio Decl. Ex. 26.)

On January 10, Samsung explained that Apple's refusal to deliver the source code printouts was unfounded, because the Protective Order means what it says – printouts are improper only if they total more than 10% of a "software release," not 10% or more of the subset of a "software release" that Apple decided to make available to Samsung.  (Fazio Decl. Ex. 27.) On January 12, having received neither the printouts nor a response from Apple, Samsung wrote to Apple again, requesting that Apple provide a time to discuss this issue by telephone.  (Fazio Decl. Ex. 28.)

On January 14, Apple wrote to Samsung regarding iTunes source code printouts – not in response to Samsung's letters, but rather to inform Samsung that it was withholding an additional 196 pages of iTunes 6.0.1 printouts.  (Fazio Decl. Ex. 29.)  Apple again claimed that "the printing of the source code contained in these documents is presumptively excessive under section 11(i) of

1   the Protective Order, as it contains approximately 37% of the iTunes 6.0.1 source code release,

2   and thus far exceeds '10% or more of a specific software release.'" (*Id.*)

3       On January 31, Samsung requested a complete list of each file in the iTunes software

4   release, so that Samsung could verify whether it had printed more than 10% of this release. (Fazio

5   Decl. Ex. 30.) Tellingly, Apple refused. Indeed, it did not respond to Samsung's January 31 letter

6   at all – nor did it respond to Samsung's February 10 letter, which explained that the parties were at

7   an impasse. (Fazio Decl. Ex. 31.)

8       During the lead counsel meet and confer on February 15-16, Apple confirmed that it would

9   not deliver the printouts. Apple stood by its claim that the Protective Order did not mean

10  "software release" when it said "software release" – according to Apple, the Order actually meant

11  "source code selected by Apple lawyers for inspection by Samsung." On February 28, Samsung

12  confirmed that the parties were at an impasse on this issue. (Fazio Decl. Ex. 23.)

13      **D.    Apple Produces Pieces of iSync Source Code But**
14          **Refuses to Identify the Corresponding Release Numbers**

15      Apple's initial production of source code did not include any iSync software. Samsung's

16  November 29 letter identified this deficiency and explained that iSync source code and other

17  documents related to iSync were responsive to, *inter alia*, Request for Production No. 293. (Fazio

18  Decl. Ex. 10.) Apple produced "[s]ource code relating to iSync" on December 23, 2012, and

19  again on January 15, 2013. (Fazio Decl. Ex. 12.) But Apple's production of iSync code is,

20  without additional information, impossible to review effectively. The code is stored in folders

21  identified by cryptic internal numbering conventions, such as "████████████" and "████

22  ████" (Fazio Decl. Ex. 32.) Likewise, while Apple's production included at least some source

23  code for SyncServices (software developed by Apple) and ████████ (third-party software) used

24  by various versions of iSync, Apple also produced this code with cryptic internal numbering (*e.g.,*

25  in folders labeled as ████████████████████████ that do not identify

26  which version of iSync used which versions of SyncServices or ████████ code Apple made

27  available for review.

28

Case No. 12-CV-00630-LHK (PSG)
SAMSUNG'S MOTION TO COMPEL RE ITUNES AND ISYNC

Accordingly, Samsung requested that Apple verify that full versions of iSync code had been produced for inspection, and identify the "commercial release version that corresponds with each internal version number." (Fazio Decl. Ex. 33.) After Apple did not respond, Samsung sent follow up letters on January 23 and January 29. (Fazio Decl. Ex. 18; Fazio Decl. Ex. 19.) On February 1, Apple responded to Samsung's January 23 letter – but failed to address Samsung's requests regarding iSync code. (Fazio Decl. Ex. 22.) On February 6, Samsung wrote once again, requesting that Apple "identify the iSync commercial release version that corresponds with each internal version number" of iSync source code. (Fazio Decl. Ex. 20.) Samsung again did not receive any response.

At the lead counsel meet and confer on February 15-16, Apple refused to provide this release-identifying information unless Samsung identified a specific Request for Production to which the information was responsive. Samsung identified a representative request – at least Request for Production No. 293 – in written correspondence on February 21. (Fazio Decl. Ex. 34.) Again, Apple did not produce the documents – or even respond to Samsung's letter.   On March 8, Samsung confirmed that the parties were at an impasse. (Fazio Decl. Ex. 35.)

## ARGUMENT

### I.   APPLE MUST PRODUCE SAMSUNG'S ITUNES SOURCE CODE PRINTOUTS, WHICH DO NOT EXCEED 10% OF THE ITUNES SOFTWARE RELEASE

The Protective Order provides that a party may object to the delivery of source code printouts that "exceed 50 continuous pages or 10% or more of a specific software release." (Fazio Decl. Ex. 36, ¶ 11(i).) The standard interpretation of "software release" – indeed, the only sensible interpretation – is a version of software released to the public. Apple does not deny that Samsung's printouts of iTunes 6.0.1 source code are well under 10% of the total source code for the iTunes 6.0.1 release. Instead Apple relies on a novel and self-serving interpretation of "software release" as used in ¶ 11(i) – that "software release" does not actually mean released software, but instead means an arbitrary *subset* of the source code implementing a software release – and objects that Samsung printed 37% of the *subset* of iTunes 6.0.1 source code that Apple made available. This is clearly incorrect.

The Protective Order does not define the term "software release," and for good reason:  it is well known and readily understood.  The American Heritage College Dictionary's definition of "release" even uses software as an example:

5a.  The act or instance of issuing something for publication, use, or distribution.

b.  Something thus released: a new release of a software program.

(Fazio Decl. Ex. 37.)  Apple itself routinely uses the term "software release" in its own press releases and statements in just this way:

- "The iPhone 2.0 ***software release*** will contain the App Store, a new application that lets users browse, search, purchase and wirelessly download third party applications directly onto their iPhone or iPod touch." (emphasis added)

- "'The new iPhone OS 3.0 is a major ***software release*** packed with incredible new features and innovations for iPhone customers and developers alike.  It will keep us years ahead of the competition,' said Philip Schiller, Apple's senior vice president of Worldwide Product Marketing." (emphasis added)

- "In the next major iOS ***software release*** the cache will also be encrypted on the iPhone." (emphasis added)

(Fazio Decl. Ex. 38; Fazio Decl. Ex. 39.)  Against all evidence, however, Apple now contends that "software release" does not refer to the software Apple releases, but instead refers to the subset of source code Apple's lawyers decide to produce.  This interpretation of the Protective Order is not only contrary to the plain meaning of "software release" – it is contrary to common sense and should be rejected.

First, Apple's interpretation encourages a producing party to withhold source code in order to limit the number of pages the inspecting party may print for use in deposition preparation, expert reports, and trial.  This could not be the Court's intention in executing the Protective Order.  *See Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) ("The scope of permissible discovery under Rule 26 should be liberally construed[.]").

Second, Apple's argument prevents Samsung from printing relevant source code for use at trial.  In this action, Apple has refused to produce all source code for iTunes, instead producing *only* the source code it deems relevant.  But under Apple's interpretation of the Protective Order,

1  Samsung can print only 10% of the small set of relevant code Apple produced, regardless of

2  whether this code must be used as an exhibit at trial.  This piles absurdity upon absurdity.

3      Finally, Apple's bizarre position regarding "software release" seeks to leverage another

4  asymmetry in the parties' production in this action:  Apple produced hand-selected subsets of

5  code, while Samsung produced complete source code for software releases in its possession.

6  Apple printed more than *7,800 pages* of Samsung's source code to date.  (Fazio Decl. Ex. 40.)

7  Apple should not be allowed to apply a double standard, or be rewarded for its incomplete source

8  code production by being permitted to use its incomplete production as a basis to withhold source

9  code printouts.

10     The Court should reject Apple's interpretation of "software release" and compel Apple to

11 deliver forthwith the printouts Bates-numbered 630OFFAPPLESOURCECODE_000089 through

12 630OFFAPPLESOURCECODE_000410 and 630OFFAPPLESOURCECODE_000428 through

13 630OFFAPPLESOURCECODE_000650 to Samsung, and preclude Apple from relying in the

14 future on its erroneous definition of "software release."

15 **II.     SAMSUNG IS ENTITLED TO THE FULL SOURCE CODE FOR ALL VERSIONS
       OF ITUNES THAT PRE-DATE JANUARY 2007**

16

17     Separately from its failure to allow Samsung to print its source code, Apple also refused to

18 produce relevant source code to Samsung *at all*.  Apple produced only hand-selected portions of

19 each iTunes release, and consistently refused to supplement despite Samsung's repeated reminders

20 that other code is relevant.  Just as Samsung produced its accused code to Apple, Apple must

21 provide Samsung *all* of the requested prior art iTunes code, so that Samsung can effectively

22 develop its invalidity defenses.

23     **A.     iTunes Source Code Is Relevant**

24     A party may obtain discovery "regarding any nonprivileged matter that is relevant to any

25 party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Moreover, "[r]elevant information need not

26 be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

27 admissible evidence."  *Id.*  "A party seeking discovery may move for an order compelling . . .

28 production, or inspection. This motion may be made if: . . . a party fails to respond that inspection

1    [of such documents or tangible things] will be permitted – or fails to permit inspection – as

2    requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).  Courts routinely compel production of

3    relevant source code if there is an adequate Protective Order in place.  *See, e.g.*, December 22,

4    2011 Order Granting-In-Part Plaintiff's Motion to Compel, Case No. C 11-1846 LHK (PSG), Dkt.

5    No. 537; *In re Google Litig.*, 2011 WL 286173, at *5 (N.D. Cal. Jan. 27, 2011); *Displaylink Corp.*

6    *v. Magic Control Tech. Corp.*, 2008 WL 2915390, at *2 (N.D. Cal. July 23, 2008).

7            As set forth repeatedly in Samsung's correspondence with Apple, Samsung contends that

8    every version of iTunes predating January 2007 appears to anticipate each and every limitation of

9    the asserted claims of the '414 patent.  The asserted claims of the '414 patent expressly require "a

10   user interface" and "at least one user-level non-synchronization processing thread."  (Fazio Decl.

11   Ex. 1.)  Thus, iTunes source code – including source code demonstrating that the iTunes "user

12   interface" provides a "thread" that is "user-level" and "non-synchronization" – is clearly relevant

13   to Samsung's invalidity defense.  Discovery into how the iTunes user interface is implemented,

14   and its multi-threaded operation, is clearly relevant to Samsung's invalidity defenses.  Samsung is

15   entitled to analyze source code to investigate the relationship between iTunes' user interface

16   threads and its synchronization threads.  Because any of the iTunes source code that predates

17   January 2007 may support Samsung's invalidity defenses, it must be produced for inspection.  *See,*

18   *e.g., Apple Inc. v. Samsung Elecs. Co.*, 2012, Case No. 5:11-cv-1846, Dkt. No. 898 (N.D. Cal.

19   May 4, 2012) (ordering the production of "all relevant Samsung source code versions, and not

20   only the release-version source code that Samsung deemed most relevant"); *See also 3Com Corp*

21   *v. D-Link Sys.,* 2007 U.S. Dist. LEXIS 26540, 5-7 (N.D. Cal. Mar. 27, 2007) (ordering the

22   production of "all…versions of the source code that [defendant] maintains" where only some – not

23   all – versions of such code had apparently been produced); *Columbia Pictures Indus. v. Bunnell*,

24   2007 U.S. Dist. LEXIS 101968, 15-18 (C.D. Cal. May 3, 2007) (ordering defendant to produce all

25   versions of source code, where defendant had apparently produced only one version of source

26   code); *Fatpipe Networks India Ltd. v. Xroads Networks, Inc.*, 2010 U.S. Dist. LEXIS 137353 (D.

27   Utah Aug. 3, 2010) (ordering plaintiff to produce "all versions" of source code in response to

28   defendant's discovery request for "[a] copy of the source code for any software used in the

operation of any device."); *Phase Four Indus., Inc. v. Marathon Coach, Inc.*, 2006 WL 1465313, at *10 (N.D. Cal. May 24, 2006) (compelling production of prior art documents in Plaintiff's possession because "[d]iscovery related to alleged prior art for the '009 Patent is relevant"); *Regal Elecs., Inc. v. Pulse Eng'g, Inc.*, 2005 WL 3078983, at *3 (N.D. Cal. Nov. 16, 2005) (compelling production of all non-privileged prior art documents known to Plaintiff).

Allowing inspection of code for all releases of iTunes would not be an undue burden.  This code is readily accessible, as demonstrated by the fact that Apple has *already* placed *a small, hand-selected subset* of code from each iTunes release on its code review computer.  Indeed, it is far more burdensome to do what Apple has done – sift through each software release and selectively produce only subsets of the source code – than to simply place the full directory of source code on the review computer.  Apple's own actions undercut any claim of undue burden.

Apple claims that it need only provide discovery for a single iTunes release – release version 6.0.1 – because Samsung used this version of iTunes to take screenshots for a chart attached to Samsung's invalidity contentions.  This is baseless.  Samsung's invalidity contentions unambiguously assert that it will rely on the following prior art: "***iTunes (all versions before the '414 priority date***, including version 6.0.1)."  (Fazio Decl. Ex. 5, at 65-66 (emphasis added).)  The fact that Samsung additionally provided a chart with screenshots of iTunes 6.0.1 does not negate Apple's obligations under the Federal Rules, or undo Samsung's clear notice that it would rely on "all [iTunes] versions before the '414 priority date" in proving invalidity.  *See*, *e.g.*, *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006) (approving use of representative examples in preliminary contentions under patent local rules); *Epicrealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 2007 WL 2580969, at *3 (E.D. Tex. Aug. 27, 2007) (scope of discovery is governed by Federal Rules and may include products not specifically identified in preliminary contentions under patent local rules).

**B.    Apple Itself Has Demanded Complete Source Code For All Versions of Applications Accused of Infringing The '414 Patent**

Apple's refusal to produce complete source code for historical versions of iTunes is at odds with Apple's own demands for all versions of Samsung code.  Apple accused a number of

applications of infringing the '414 patent, including the Contacts, Calendar, and Gallery applications.  (*See generally* Apple Inc.'s Disclosure of Asserted Claims & Infringement Contentions, Exs. 36-53.)  Apple demanded the complete source code for all versions of this software.  (*See*, *e.g.*, Request for Production No. 274, seeking "*All* Source Code and executables for *each version* of each Samsung application installed in the Accused Samsung Products, including for each of the following applications: Phone, Contacts, Internet Browser, Calendar, Email, Music Player, Feeds & Updates, Camera, Gallery, Notes, Quick Search Box, Sync, and Screensaver." (emphasis added))  Samsung produced the complete source code for all released versions in its possession, custody, and control.  (Fazio Decl. Ex. 40.)  Apple cannot request, and receive, this discovery for its own case, and then simultaneously refuse to give Samsung the same discovery.

### III.   APPLE MUST IDENTIFY INTERNAL VERSION NUMBERING FOR ISYNC SOURCE CODE

Samsung requested that Apple produce "[a]ll DOCUMENTS, including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides RELATING TO APPLE's iSync software."  (Fazio Decl. Ex. 7, at Request for Production No. 293.)  The discovery that Samsung now seeks – documents sufficient to identify which commercial version of iSync corresponds to the source code produced for inspection, and which versions of SyncServices and ███████ were used by which iSync release – is clearly responsive to this request.  This information is also responsive to other requests propounded by Samsung, including Interrogatory No. 13 that asks Apple to "[s]eparately for all SOFTWARE produced by Apple including, but not limited to iOS SOURCE CODE, IDENTIFY: (a) each version of SOFTWARE that corresponds to commercially distributed versions of SOFTWARE[.]"  (Fazio Decl. Ex. 9, at Interrogatory No. 13.)

Samsung requires this information for at least two reasons.  First, Samsung needs to know which source code on the inspection computers corresponds to the released versions of iSync, in order to prove the code is prior art – e.g., that it was "in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."  35 U.S.C. § 102.  Without

knowing which commercially released version of iSync corresponds to the source code available for inspection, Samsung will not be able to show that the executable version of this source code was in public use, on sale, and available to the public before January 7, 2007.

Second, Samsung requires this information in order to determine whether Apple's production of iSync source code is complete.  Without this information, Samsung has no way of knowing whether Apple has produced any source code at all for any given version of iSync. Moreover, even within a particular software release, Samsung needs to know which source code corresponds to which version of iSync to assess whether Apple's production is complete.  And for the same reasons, Apple must identify iSync-related source code as well – including which version and folder of SyncServices code and ███████ code was used with each iSync release.

Apple cannot reasonably object to providing this information based on undue burden; Apple is clearly the party in the best position to explain what its own internal code names and project numbers mean.  Apple should be ordered to explain what, exactly, it has produced, so that Samsung can identify and analyze the iSync releases Apple claims to have placed on the source code review computers.  Apple should therefore be ordered to identify: (1) which release version of iSync software corresponds to each folder of iSync source code on Apple's computer; (2) which SyncServices or ███████ version corresponds to which folder of source code on Apple's computer, and which SyncServices or ███████ versions were used by each iSync release; and (3) the complete version history of iSync, SyncServices and ███████.  Apple should also be ordered to produce all source code used in any version of iSync, to the extent it has not already done so.

1

## <u>CONCLUSION</u>

2

For the foregoing reasons, the Court should GRANT Samsung's Motion to Compel in full.

3

4

DATED: March 12, 2013                    QUINN EMANUEL URQUHART &
                                                                  SULLIVAN, LLP

5

6

By */s/ Michael Fazio*

7

Charles K. Verhoeven
Kevin P.B. Johnson

8

Victoria F. Maroulis
Michael T. Zeller

9

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,

10

INC., and SAMSUNG

11

TELECOMMUNICATIONS AMERICA, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28