# EXHIBIT A

**TO Supplemental Declaration of
Emily L. Fedman in Support of Apple's
Motion to Compel Discovery from Google
FILED UNDER SEAL**

Highly Confidential Information of Non-Party Google
Pursuant to the Protective Order

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN JOSE DIVISION
 4   APPLE INC., a California
     corporation,
 5
              Plaintiff,            Case No.
 6
        vs.                         11-CV-00630-LHK
 7
     SAMSUNG ELECTRONICS CO., LTD.,
 8   a Korean business entity;
     SAMSUNG ELECTRONICS AMERICA,
 9   INC., a New York corporation;
     SAMSUNG TELECOMMUNICATIONS
10   AMERICA, LLC, a Delaware
     limited liability company,
11
              Defendants.
12
13
14      HIGHLY CONFIDENTIAL INFORMATION OF
15             NON-PARTY GOOGLE
16      PURSUANT TO THE PROTECTIVE ORDER
17
18     VIDEOTAPED DEPOSITION OF JAMES MILLER
19           Redwood Shores, California
20              Tuesday, May 1, 2012
21
22
23   REPORTED BY:
24   CYNTHIA MANNING, CSR No. 7645, CLR, CCRR
25   JOB NO. 49118
```

Highly Confidential Information of Non-Party Google
Pursuant to the Protective Order

Page 2

1  May 1, 2012
2  2:04 p.m.
3
4
5      Deposition of JAMES MILLER, taken at
6  555 Twin Dolphins Drive, Fifth Floor, Redwood
7  Shores, California, before Cynthia Manning,
8  Certified Shorthand Reporter No. 7645, Certified
9  LiveNote Reporter, California Certified Realtime
10 Reporter.

Page 3

1  APPEARANCES:
2
3  FOR COMPLAINANT APPLE INC.:
4
       GIBSON DUNN & CRUTCHER
5      BY: JASON LO, ESQ.
           SARAH E. SIMMONS, ESQ.
6      333 South Grand Avenue
       Los Angeles, California 90071
7
8
9  FOR RESPONDENTS SAMSUNG ELECTRONICS COMPANY,
   LTD., SAMSUNG ELECTRONICS AMERICA, INC..
10 SAMSUNG TELECOMMUNICATIONS AMERICA, LLC:
11     QUINN EMANUEL URQUHART & SULLIVAN
       BY: PATRICK M. SHIELDS, ESQ.
12     865 S. Figueroa Street
       Los Angeles, California 90017
13
14
15 FOR NON-PARTY GOOGLE INC.:
16     QUINN EMANUEL URQUHART & SULLIVAN
       BY: MATTHEW S. WARREN, ESQ.
17     50 California Street
       San Francisco, California 94111
18
19
20
21 ALSO PRESENT:
22     Chester Day, Google Inc.
23     Shawn Philips, Videographer
24
25

Page 4

1      REDWOOD SHORES, CALIFORNIA.
2      TUESDAY, MAY 1, 2012; 2:04 P.M.
3
4          THE VIDEOGRAPHER:  Good afternoon.
5      This is the start of the tape labeled
6  No. 1 in the videotaped deposition of Jim Miller
7  in the matter of Apple Incorporated versus
8  Samsung Electronics Co., Ltd., et al., in the
9  United States District Court, Northern District
10 of California, San Jose Division, No.
11 12-CV-00630-LHK.
12     This deposition is being held at 555
13 Twin Dolphin Drive, Redwood Shores, California,
14 on May 1st, 2012 at approximately 2:05 p.m.
15     My name is Shawn Phillips.  I'm the
16 legal video specialist from TSG Reporting,
17 Incorporated, headquartered at 747 Third Avenue,
18 New York, New York.
19     The court reporter is Cynthia Manning,
20 in association with TSG Reporting.
21     Will counsel please introduce
22 yourselves.
23         MR. LO:  Jason Lo, Gibson Dunn &
24 Crutcher, on behalf of Apple.
25         MS. SIMMONS:  Sarah Simmons, Gibson

Page 5

1  Dunn & Crutcher, on behalf of Apple.
2          MR. WARREN:  Matt Warren from Quinn
3  Emanuel on behalf of non-party Google Inc. and
4  the witness.  And with me is Chester Day,
5  in-house counsel with Google.
6          MR. SHIELDS:  Patrick Shields from
7  Quinn Emanuel representing the Samsung
8  defendants.
9          THE VIDEOGRAPHER:  Will the court
10 reporter please swear in the witness.
11
12         JAMES MILLER,
13     having first been duly sworn, testified
14     as follows:
15
16         MR. WARREN:  So, Counsel, before you
17 start, I want to put on the record that we've met
18 and conferred and that we've reached an agreement
19 regarding this deposition, which is that
20 Mr. Miller is going to proceed to testify now, he
21 will have another deposition at some future time
22 after you are satisfied with our document
23 production, and that the total time of those two
24 depositions will be seven hours on the record,
25 subject to, always, your ability to argue, as you

Highly Confidential Information of Non-Party Google
Pursuant to the Protective Order

Page 10

1  formality so that the court reporter can take it
2  down; correct?
3      A.  Yes.
4      Q.  And that if you don't understand any of
5  my questions, you can ask me for clarification?
6      A.  Yes.
7      Q.  And that you can ask for a break at any
8  point that you want?
9      A.  Yes.
10     Q.  If at any point throughout the day you
11 remember something or you need to make a
12 clarification to an earlier answer, do you
13 understand that you can just interrupt me at any
14 point and let me know what additional information
15 might make your testimony more complete or
16 accurate?
17     Do you understand that?
18     A.  Yes.
19     Q.  And, similarly, this is not a memory
20 test.  If you need to have certain documents in
21 front of you in order to answer certain
22 questions, feel free to let me know.
23     Do you understand that?
24     A.  Yes.
25     Q.  Is there any reason, whether because

Page 11

1  you have -- you are taking any medication or
2  otherwise, that you're not able to give complete
3  and accurate testimony today?
4      MR. WARREN:  And I think this is what
5  you asked.
6      But I'm just going to instruct the
7  witness that I don't want you talking about
8  medication or anything like that.  I never let my
9  witnesses talk about that.  So just answer the
10 question, is there any reason why you can't give
11 your most accurate testimony today.
12     THE WITNESS:  I'll answer that question
13 as, I see no reason why I can't give my best
14 testimony today.
15 BY MR. LO:
16     Q.  You've been employed at Google since
17 2007?
18     A.  Yes.
19     MR. WARREN:  Objection; assumes facts
20 not in evidence.
21     Sorry, let me get the objection out.
22 BY MR. LO:
23     Q.  And you submitted a declaration
24 recently in connection with this case, do you
25 understand that, the Apple versus Samsung

Page 12

1  litigation?
2      A.  Yes.
3      Q.  Okay.  Had you submitted declarations
4  in your capacity as a Google employee before for
5  any court litigation?
6      A.  No.
7      Q.  Are you -- or were you compensated in
8  any way for your work in connection with the
9  declaration other than just being paid your
10 normal salary at Google?
11     A.  No.
12     Q.  When did you first become aware that
13 you were going to submit a declaration in
14 connection with the Apple versus Samsung
15 litigation?
16     MR. WARREN:  Okay.  So here I have to
17 caution the witness that you shouldn't reveal any
18 information that you -- that reflect any
19 conversations that you had with lawyers for
20 Google, me or any other lawyers for Google.  So
21 in the event that you can answer that question
22 without doing that, you may answer it; but if the
23 only way to answer that question is to reveal a
24 communication with me or other lawyers for
25 Google, you should say, I'm unable to answer that

Page 13

1  question based on my lawyer's instruction.
2      THE WITNESS:  I'm -- I'm unable to
3  answer that question based on my lawyer's
4  instructions.
5  BY MR. LO:
6      Q.  Wait a minute.
7      All I want to know is the date when you
8  became aware that you would be putting together a
9  declaration for the Apple versus Samsung
10 litigation.
11     MR. LO:  Are you instructing him not to
12 answer that question?
13     MR. WARREN:  I am.  And I'm happy to
14 tell you why.  And if you want to explain why I'm
15 wrong, that's fine.
16     My point is that if he became aware --
17 I'm pretty sure he became aware based on a
18 conversation with counsel.
19     MR. LO:  Sure.
20     MR. WARREN:  The substance of that
21 communication is going to be necessarily revealed
22 by him saying that he became aware through a
23 communication with counsel.
24     MR. LO:  Okay.
25     //

Highly Confidential Information of Non-Party Google
Pursuant to the Protective Order

Page 14

1  BY MR. LO:
2    Q. So there is an instruction not to
3  answer. Mr. Miller, I take it you're going to
4  follow your counsel's instruction?
5    A. I am.
6    Q. Okay.
7        MR. WARREN: It's possible, if you want
8  to confer about that over the break, I may be
9  able to talk to him and reach a nonprivileged way
10 to answer that question, but right now I'm a
11 little uncomfortable.
12       MR. LO: I just need a --
13       MR. WARREN: Okay.
14       MR. LO: Yeah, I just need a date. And
15 if the instruction is not to answer, then the
16 instruction is not to answer.
17       MR. WARREN: Okay. Well, let me -- let
18 me confer with him, because there may be a way to
19 do that in a nonprivileged fashion. Right now
20 I'm uncomfortable with it.
21       MR. LO: That's fine.
22 BY MR. LO:
23   Q. Did you write the declaration yourself,
24 Mr. Miller?
25       MR. WARREN: And I'm going to instruct

Page 15

1  the witness not to answer that question as well,
2  because whether or not he wrote it, it was
3  obviously transmitted to me, because we put a
4  caption on it. So you're now inquiring steps
5  that he undertook in the furtherance of
6  communication with counsel. That is protected by
7  the attorney-client privilege. And again, I'm
8  happy to discuss contrary authority, but my
9  understanding is that that's clearly privileged.
10       MR. SHIELDS: And I'm going to object
11 to form.
12 BY MR. LO:
13   Q. And, Mr. Miller, throughout the day,
14 your counsel will be instructing you not to
15 answer from time to time. In order to speed
16 things up, can I just assume that you are going
17 to be taking his instructions at all times?
18   A. I believe so, yes.
19   Q. Before you signed your declaration, did
20 you speak with any non-attorneys about the
21 declaration?
22       MR. WARREN: Now you can answer.
23 Obviously I'll caution you not to reveal the
24 contents of any communications with counsel.
25       THE WITNESS: That's an open-ended

Page 16

1  question. I assume you mean with regards to the
2  content of that; correct?
3  BY MR. LO:
4    Q. That is correct.
5    A. Okay. No.
6    Q. And you did have communications -- I
7  just want a yes or no -- with attorneys about the
8  contents of that declaration; is that correct?
9        MR. WARREN: You can answer that
10 question yes or no.
11       THE WITNESS: Say it again, please.
12 BY MR. LO:
13   Q. Did you have conversations with any
14 attorneys about the contents of your declaration
15 prior to signing that declaration?
16       MR. WARREN: And you can answer that
17 question yes or no, but you can't reveal the
18 contents of any communications you had with
19 counsel.
20       THE WITNESS: Yes.
21 BY MR. LO:
22   Q. And on how many occasions?
23       MR. WARREN: Okay. So before we answer
24 this, Counsel, I'm under the impression that
25 there is an agreement between Apple and Samsung

Page 17

1  regarding post-filing activity where that is not
2  going to be logged. And so the question that you
3  are now asking is equivalent to demanding a
4  privilege log for post-filing communications.
5        So I'm concerned that there is a
6  different standard being applied to non-party
7  Google than between Apple and Samsung.
8        MR. LO: Okay. Are you instructing him
9  not to answer?
10       MR. WARREN: No, I'm asking you what
11 the status of the agreement is. Because to me --
12 to me this is -- if you guys are going to produce
13 a log of all of your internal communications post
14 filing, then this is a fair question. If
15 you're --
16       MR. LO: I'm not asking for a log. I'm
17 asking just for the number of conversations
18 because I think I'm entitled to know how much
19 involvement outside counsel versus the witness
20 has had with respect to preparation of the
21 declaration.
22       I'm not going to ask about the
23 individual conversations other than to know how
24 often they occurred and on what time span.
25       MR. WARREN: Okay. I understand, but I

Highly Confidential Information of Non-Party Google
Pursuant to the Protective Order

Page 18

1  guess the point that I'm making is a little bit
2  different, which is, if you are entitled to that
3  information, then it sounds as if you are saying
4  that, on behalf of Apple, you will log all of
5  your internal e-mails and produce a privilege log
6  post filing.
7      MR. LO: No.
8      MR. WARREN: If there's a difference
9  between those two things, I'm happy to explore
10 it, but it strikes me as that's exactly the same
11 thing.  And I -- again, I don't -- I'm not really
12 privy to all these details, but in court this
13 morning, there was a discussion.  And counsel
14 from Apple said we're not logging post filing.
15     And if counsel from Apple says we're
16 not logging post filing, it seems to me the same
17 standard should apply to Google, which means that
18 if I had a communication with him, it wouldn't be
19 logged, which also means he wouldn't testify
20 about it.  Kind of the same thing; right?
21     MR. LO: I've already explained the
22 differences, my -- my view as to why it's
23 different.  Your choices now are let him answer
24 or instruct him not to answer.
25     MR. WARREN: Okay.  I don't think you

Page 19

1  have explained, but I understand that I'm not
2  going to get you to explain further.  So what
3  I'll do is -- is I'm going to defer this.  And
4  we're going to have a second deposition, so we're
5  going to defer this to the second deposition.
6  Because I believe that what you are doing now
7  contradicts what -- what your lead counsel said
8  in court this morning.  And we can resolve that,
9  and maybe we resolve that and I let him answer.
10     But that -- my understanding based on
11 what your lead counsel said in court this morning
12 is -- is we're not logging post filing.  And if
13 we're not logging post filing, this is the same
14 thing as logging.
15     MR. LO: Okay.  Counsel, I just want to
16 move on with the deposition as quickly as we can.
17     MR. WARREN: Yeah.
18     MR. LO: Your choices are, are you
19 instructing him not to answer, yes or no?
20     MR. WARREN: I am instructing him not
21 to answer, but --
22     MR. LO: Fine.  Then --
23     THE REPORTER: One at a time, please.
24     MR. WARREN: Well, he keeps
25 interrupting me, so I don't know what you want me

Page 20

1  to do.
2      I just want to make clear that if -- if
3  Apple -- if I'm wrong about what lead counsel
4  says, then we'll revisit this issue.
5      MR. LO: Okay.
6  BY MR. LO:
7    Q.  Did you review any drafts of the
8  declaration prior to signing it?
9      Let me rephrase my question.  That was
10 an ambiguous question.
11     The version of the declaration that you
12 actually signed, had you seen prior versions
13 before?
14     MR. SHIELDS: Object to the form.
15     MR. WARREN: And, again -- this is
16 going to sound silly -- you can answer that
17 question to the extent that there were prior
18 drafts that were not the subject of a
19 communication with counsel.  So if all of your
20 prior drafts were the -- were either sent to me,
21 okay, or you thought about them and then sent
22 them to me, then you should not answer that
23 question.
24     So you should say, I'm unable to answer
25 that question based on my counsel's instruction.

Page 21

1      THE WITNESS: I'm unable to answer that
2  question based on my counsel's instruction.
3  BY MR. LO:
4    Q.  What is your current title?
5      MR. WARREN: That one is okay.
6      THE WITNESS: I am a senior software
7  engineer at Google.
8  BY MR. LO:
9    Q.  How long have you held that position?
10   A.  Say approximately two years.
11   Q.  And as a senior software engineer, are
12 you assigned to a particular group within Google?
13     MR. WARREN: Objection; assumes facts
14 not in evidence.
15     THE WITNESS: Titles are fairly
16 nebulous, and I don't think it has any
17 correlation.
18 BY MR. LO:
19   Q.  Putting aside your title, do you work
20 for a particular group within Google?
21   A.  I'm a member of the Android team.
22   Q.  And how long have you been a member of
23 the Android team?
24   A.  Since I started in 2007.
25   Q.  And what currently is your role as a

Highly Confidential Information of Non-Party Google
Pursuant to the Protective Order

Page 22

1  member of the Android team?
2       MR. WARREN:  Objection; vague.
3       MR. SHIELDS:  Join.
4       THE WITNESS:  Software engineer.
5  BY MR. LO:
6     Q.  Okay.  And are there particular
7  aspects -- well, let me rephrase the question.
8       As a member of the Android team, I take
9  it that you -- do you work on what's known as the
10 Android software that's developed by Google?
11      MR. WARREN:  Objection; vague.
12      THE WITNESS:  I work on software
13 targeted to the Android Platform.
14 BY MR. LO:
15    Q.  Is that different than saying you work
16 on the Android Platform itself?
17      MR. SHIELDS:  Object to the form.
18      THE WITNESS:  I don't know what that
19 means.
20 BY MR. LO:
21    Q.  How would you define the Android
22 Platform, just generally, as you stated in your
23 previous answer?
24    A.  Android is a project.  I write software
25 for that project.

Page 23

1     Q.  And do you write -- I take it you don't
2  write -- well, the software you write, are they
3  confined to specific features or applications
4  within the Android Platform?
5       MR. WARREN:  Objection; vague.
6       THE WITNESS:  I write software that
7  does a great many things.
8  BY MR. LO:
9     Q.  Can you describe some of them?  Let's
10 just focus the answer on the last 18 months, make
11 it a little bit more narrow.
12    A.  One thing I've done is work on
13 libraries.
14    Q.  Anything else?
15    A.  I've written custom views.
16    Q.  Anything else?
17    A.  I've worked on settings.
18    Q.  What else?
19    A.  I worked on fixing bugs.
20    Q.  Is that all?
21    A.  No.
22    Q.  You can list them.
23    A.  Okay.  It's hard to come up with a
24 complete list because I've worked on a lot of
25 stuff.

Page 24

1     Q.  Are those all that you can recall right
2  now?
3     A.  I worked on system UI.
4     Q.  System user interfaces?
5     A.  Mm-hmm.
6     Q.  Is that all?
7     A.  There is more.  That's the list that
8  comes to mind.
9     Q.  Sure.
10      In your declaration, you describe a
11 particular functionality that involves the
12 unlocking of the Galaxy Nexus phone.
13      Do you recall that?
14      MR. WARREN:  Objection; calls for a
15 legal conclusion.
16      THE WITNESS:  Please state that again.
17 BY MR. LO:
18    Q.  Sorry?
19    A.  Please state that again.
20    Q.  Sure.
21      Your declaration that you submitted in
22 connection with the Apple/Samsung litigation
23 talks a little bit about a functionality to
24 unlock the Galaxy Nexus mobile phone; is that
25 correct?

Page 25

1       MR. WARREN:  Objection.
2       MR. SHIELDS:  Object to form.
3       MR. WARREN:  Objection; calls for a
4  legal conclusion.
5       THE WITNESS:  No.
6  BY MR. LO:
7     Q.  No?
8       How would you describe the
9  functionality that you discuss in your
10 declaration?
11      MR. SHIELDS:  Object to form.
12      THE WITNESS:  Things are described
13 there pretty clearly, but it is a screensaver.
14 BY MR. LO:
15    Q.  It's a screensaver?
16    A.  Yes.
17    Q.  And do you agree or disagree that the
18 functionality you describe in your declaration
19 includes a functionality to unlock the Galaxy
20 Nexus cell phone?
21      MR. WARREN:  Objection; calls for a
22 legal conclusion.
23      MR. SHIELDS:  Object to form.
24      THE WITNESS:  I don't know what you
25 mean by "unlock."

Highly Confidential Information of Non-Party Google
Pursuant to the Protective Order

Page 106

1  Platform for two years; is that correct?
2      A.  That's incorrect.
3      Q.  Is it five years?
4      A.  About that.
5      Q.  Okay.  Having worked on the Android
6  Platform for five years, and sitting here today,
7  you have no views on whether changing the
8  interface, as I've described, so that instead of
9  moving an image on the screen, you simply tap --
10  the user simply taps once on the open padlock
11  icon -- you have no opinion one way or the other
12  as to whether that would degrade the
13  functionality of -- of this interface; is that
14  correct?
15          MR. WARREN:  Objection; vague, asked
16  and answered.
17          MR. SHIELDS:  Object to form.
18          THE WITNESS:  I believe that would be a
19  good question for our UX department, but I'm not
20  going to say one way or -- I don't know one way
21  or the other.
22  BY MR. LO:
23      Q.  Are you aware of anybody at Google that
24  has an opinion one way or the other on my
25  question, whether that would -- whether the

Page 107

1  change to have -- simply have the user press once
2  on the open padlock icon would degrade the
3  functionality of this interface?
4          MR. WARREN:  Objection; calls for
5  speculation, asked and answered.
6          MR. SHIELDS:  Join.
7          THE WITNESS:  I'm not going to
8  speculate, but again, our UX department is who I
9  rely on for information like that.
10  BY MR. LO:
11      Q.  No, no, I'm not asking you to guess
12  whether somebody feels that way.  I'm asking if
13  you actually are aware of specific instances
14  where someone has expressed to you on this
15  subject.  And if you don't, then that's fine.
16      A.  I am not aware of any, no.
17          MR. LO:  Okay.  I have no more
18  questions.
19          MR. SHIELDS:  Nothing more from me.
20          THE VIDEOGRAPHER:  This marks the end
21  of Disk 2 of two and concludes today's deposition
22  of Jim Miller.  The time is 4:54 p.m., and we're
23  off the record.
24          (Time noted:  4:54 p.m.)
25

Page 108

1          DECLARATION UNDER PENALTY OF PERJURY
2
3      I, JAMES MILLER, do hereby certify under
4  penalty of perjury that I have read the foregoing
5  transcript of my deposition taken on May 1, 2012;
6  that I have made such corrections as appear noted
7  herein in ink, initialed by me; that my testimony
8  as contained herein, as corrected, is true and
9  correct.
10
11      DATED this         day of
12  2012, at              , California.
13
14
15
16          _____
17              JAMES MILLER
18
19
20
21
22
23
24
25

Page 109

1  IN THE MATTER OF:  Apple v Samsung Electronics
2
3  DATE: May 1, 2012
4  WITNESS: JAMES MILLER
5  Reason codes:
6      1.  To clarify the record.
       2.  To conform to the facts.
7      3.  To correct transcription errors.
8
   Page       Line         Reason
9
10 From              to
11
   Page       Line         Reason
12
13 From              to
14
   Page       Line         Reason
15
16 From              to
17
   Page       Line         Reason
18
19 From              to
20
21
           _____
22             JAMES MILLER
23
24
25

Highly Confidential Information of Non-Party Google
Pursuant to the Protective Order

Page 110

1  STATE OF CALIFORNIA )
2      :ss
3  COUNTY OF SAN MATEO )
4      I, CYNTHIA MANNING, a Certified Shorthand
5  Reporter of the State of California, do hereby
6  certify:
7      That the foregoing proceedings were taken
8  before me at the time and place herein set forth;
9  that any witnesses in the foregoing proceedings,
10 prior to testifying, were placed under oath; that
11 a verbatim record of the proceedings was made by
12 me using machine shorthand which was thereafter
13 transcribed under my direction; further, that the
14 foregoing is an accurate transcription thereof.
15     I further certify that I am neither
16 financially interested in the action, nor a
17 relative or employee of any attorney of any of
18 the parties.
19
20     IN WITNESS WHEREOF, I have subscribed
21 my name this 1st day of May 2012.
22
23
   _____
24 CYNTHIA MANNING, CSR No. 7645, CCRR, CLR
25

Page 111

1              I N D E X
2  TUESDAY, MAY 12, 2012
3  DEPOSITION OF JAMES MILLER
4
5  EXAMINATION                    PAGE
6    BY MR. LO                    7, 97
7    BY MR. SHIELDS               91
8              * * *

Page 112

1         I N D E X (Continued)
2         DEPOSITION EXHIBITS
3  NUMBER                         PAGE
4
5  Exhibit 1   Declaration of Jim Miller    26
6
7  Exhibit 2   Printout on Android 4.0      41
8              Platform from
9              developer.android.com
10             * * *