JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Plaintiff and Counterclaim Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION TO COMPEL PRODUCTION OF iTUNES AND iSYNC SOURCE CODE** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Counterclaim-Defendant. | **HEARING:**<br><br>Date: April 16, 2013<br>Time: 10 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION ..................................................................................................... 1

4

II.     BACKGROUND ...................................................................................................... 2

5

        A.      THE '414 PATENT ...................................................................................... 2

6

        B.      SAMSUNG'S INVALIDITY CONTENTIONS .......................................... 3

7

        C.      PROCEDURAL BACKGROUND................................................................ 4

8

9

                1.      Apple Has Produced All iTunes Printouts At Issue ....................... 4

10

                2.      Samsung's Original Document Requests Focused Solely On The
                        Synchronization Feature Of iTunes ............................................... 5

11

12

                3.      Apple Attempted To Reach A Reasonable Compromise With
                        Samsung Regarding The Remaining iTunes Code ........................... 5

13

                4.      Samsung's Motion Seeks To Skip The Step Of Propounding
                        Proper Discovery............................................................................ 6

14

III.    ARGUMENT .......................................................................................................... 6

15

16

        A.      APPLE HAS PRODUCED THE REQUESTED ITUNES SOURCE
                CODE PRINTOUTS...................................................................................... 6

17

18

19

        B.      APPLE HAS MADE NUMEROUS VERSIONS OF THE RELEVANT
                ITUNES SOURCE CODE AVAILABLE FOR INSPECTION, AND IT
                WILL PRODUCE A COMPLETE VERSION OF ITUNES SOURCE
                CODE, AS WELL........................................................................................ 7

20

                1.      The Only Arguably Relevant iTunes Source Code Is The Source
                        Code That Relates To Synchronization ........................................... 7

21

22

                2.      The iTunes User Interface Source Code Is Irrelevant..................... 8

23

        C.      SAMSUNG'S REQUEST FOR ADDITIONAL INFORMATION
                REGARDING ISYNC SOURCE CODE IS NOT PROPERLY BEFORE
                THE COURT ................................................................................................ 9

24

25

IV.     CONCLUSION...................................................................................................... 11

26

27

28

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*In re Google Litigation*,
    2011 WL 286173, No. C 08-03172 RMW (PSG) (N.D. Cal. Jan. 27, 2011) ................................ 8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO
COMPEL PRODUCTION OF ITUNES AND ISYNC CODE
CASE NO. 5:12-CV-00630-LHK (PSG)                        ii

Gibson, Dunn &
Crutcher LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      **INTRODUCTION**

Samsung's motion to compel seeks source code and other information related to Apple's iTunes and iSync software – software that Samsung contends is prior art to U.S. Patent No. 7,761,414 ("the '414 Patent"), which Apple asserts against Samsung.  Samsung's motion to compel mischaracterizes the history and nature of its discovery requests and fails to explain the relevance of the vast production sought.

Very generally, the '414 patent describes synchronizing data on two different computing devices, and, unlike the prior art devices, allows a user to access and make changes to data in a database while synchronization occurs.  Recognizing the focus of the '414 Patent, Samsung's original document request relating to iTunes code – Request for Production No. 294 – sought software "related to synchronization functionality."  Apple produced that software.  Months and several hundred Requests for Production later, Samsung revisited its requests and served Request for Production No. 638, which, for the first time, and despite the focus of the '414 patent, asked for the *entirety* of the iTunes code, not just the synchronization functionality, covering over thirty versions of iTunes.  Although Apple disputes Samsung's need for the entire iTunes source code, and particularly thirty-plus versions of the source code, Apple is in the process of producing this code for the iTunes application, Version 6.0.1, which is the one version Samsung charted in its invalidity contentions.  This production, together with Apple's prior production, exceeds what Samsung relied upon in its invalidity contentions.

Samsung also complains that Apple refused to produce source code printouts of the iTunes synchronization code that Apple made available for inspection in response to Request for Production No. 294.  To be sure, the parties have had, and continue to have, an ongoing dispute regarding the quantitative source code printout limitations appearing in the protective order.  Indeed, Apple recently filed its own motion to compel on a similar issue.  (Dkt. No. 398.)  Nonetheless, in an effort to resolve at least this portion of the parties' dispute, on March 13, 2013, Apple produced the printouts requested by Samsung.  As such, the "printout" portion of Samsung's motion is moot.

1    Samsung's final complaint arises out of its professed inability to understand the iSync source

2    code that Apple produced in response to Request for Production No. 293.  In its motion, Samsung

3    claims that it has sought discovery correlating various versions of the iSync code produced with

4    commercial versions of Apple products such as "SyncServices."  Yet Request No. 293 asks only for

5    the production of documents related to iSync.  Neither the Request for Production nor any

6    interrogatory propounded by Samsung asks for the correlation Samsung now demands in its motion.

7    In an attempt to fill this void, Samsung refers the Court to Interrogatory No. 13.  That interrogatory,

8    however, is not referenced in Samsung's Civil L.R. 37-2 Statement, was never the subject of any

9    meet and confer (as is made clear by its absence in Samsung's Certification Pursuant to Fed. R. Civ.

10   P. 37(A)(1)), and does not even ask for information related to prior art.  It is apparent that, in its rush

11   to file this motion, Samsung did not follow the correct process to seek the desired information.

12   For all of these reasons, discussed more fully below, Samsung's motion should be denied.

## II.   BACKGROUND

### A.   THE '414 PATENT

15   The '414 Patent, entitled "Asynchronous Data Synchronization Amongst Devices," describes

16   synchronizing data stored on two different computing devices.  (*See* Declaration of Michael Fazio In

17   Support of Samsung's Motion to Compel, (Dkt. No. 395) ("Fazio Decl."), Ex. 1.)  The '414 Patent

18   provides an important improvement over prior art synchronization systems.  In many prior systems,

19   users could not access and modify their data while it was in the process being synchronized, but

20   instead would need to wait for the synchronization process to complete.  That impediment, which

21   could frustrate the user experience, was rooted in certain fundamental characteristics of computers

22   and the way they handle processing multiple programs.  A computer program is, at its essence, a

23   series of instructions for a processor to execute.  Each program or process employs one or more

24   "threads," which is a series of steps that are processed by a computer to complete a task.  Rather than

25   permit simultaneous synchronization and continued user-modification of data within the device, past

26   systems would stop the data modification thread from running by, for example, locking the screen of

27   the device while the synchronization thread was running and only unlocking it when synchronization

28

Gibson, Dunn &
Crutcher LLP

was complete.

The '414 Patent solves these problems.  The patent provides, for example, a data processing system that executes both a synchronization processing thread and a non-synchronization processing thread concurrently.  *See id.*, Abstract; 2:18-20; 24:42-47.  The '414 Patent explains that these multiple threads "allow[] a user of a device to operate the device while it is being synchronized, and similarly allows a user of the host to operate the host while the host is synchronizing with the device." *Id.* 24:49-51. The patent specification provides an example of this functionality:

> [A] user on the device may be viewing a calendar program which displays a calendar of the user showing events and possibly To Do items for the user while at the same time a synchronization service is synchronizing the calendar data on the device with calendar data on the host.

*Id.* 24:53-57.  The claims are consistent with this explanation.  For example, '414 claim one provides:

> A machine implemented method comprising:
>
> executing at least one user-level non-synchronization processing thread, wherein the at least one user-level non-synchronization processing thread is provided by a user application which provides a user interface to allow a user to access and edit structured data in a first store associated with a first database; and
>
> executing at least one synchronization processing thread concurrently with the executing of the at least one user-level non-synchronization processing thread, wherein the at least one synchronization processing thread is provided by a synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database.

As the claim language makes clear, the focus of the '414 patent is on the concurrent execution of non-synchronous and synchronous threads.  The claim additionally recites a "user interface," but that interface simply provides a user access to the database being synchronized.

## B.       SAMSUNG'S INVALIDITY CONTENTIONS

In its August 10, 2012 Invalidity Contentions, Samsung identified dozens of alleged prior art references for the '414 Patent.  (Fazio Decl., Ex. 2.)  Among those references, and particularly the alleged prior art "systems," Samsung identified iTunes:  "iTunes (at least version 6.0.1), and, for example, Apple Macintosh OS X 10.3.9 / iPod nano / Mac Address Book."  (*Id.* at 50.)  Other than

version 6.0.1, Samsung identified no other specific version of iTunes.  Indeed, in the charts accompanying Samsung's contentions, specifically Exhibit D-9, Samsung stated:  "The Apple iTunes application version 6.0.1 ("iTunes") was known on [sic] by at least October 20, 2005.  In addition to the information below, individuals at Apple Inc. are likely to have information related to iTunes 6.0.1, including its public use and sale."  (Fazio Decl., Ex. 3 at 1.)  Later in Exhibit D-9, Samsung referenced "Apple iTunes 6.0.1 running on Apple Macintosh OS X 10.3.9 ("iTunes 6 for Mac"), available by at least October 20, 2005."  (*Id.*)  Further, in its chart, Samsung referenced only – and not even by way of example – "Apple iTunes version 6.0.1 ("iTunes")."  (*Id.* at 2.)  Thus, in its invalidity charts Samsung was clear in defining "iTunes" as meaning only version 6.0.1.

Consistent with the limitations in the '414 patent claims, Samsung focused its iTunes invalidity charts on the non-synchronization and synchronization thread requirements of the claims.  While Samsung did address the "user interface" requirement contained within certain of the claims, Samsung's charts used iTunes documentation to identify how a user interacted with a device, while also showing various windows through which the user interacted with a Macintosh computer running iTunes version 6.0.1.  (*Id.* at 3-8.)  Nowhere in its charts did Samsung indicate that the claims require anything more than a user interface that allows user to access and edit data.  (*Id.*)

### C. PROCEDURAL BACKGROUND

Samsung's "Background" section also leaves out additional critical facts regarding the state of discovery, all of which demonstrate the impropriety of this motion.

### 1. Apple Has Produced All iTunes Printouts At Issue

First, Samsung claims that Apple has continually "refused" to provide several hundred pages of iTunes source code printouts, but it does not cite any recent meet-and-confer discussions regarding this issue.  Instead, it cites only communications from Apple dating back to January 2013.  Samsung fails to acknowledge that there have been, and continue to be, ongoing disputes between the parties regarding the quantitative restrictions on printouts relating to source code – with respect to *both* sides' inspection of source code.  Indeed, the parties continued to correspond on this issue in March 2013, and Samsung filed this motion even though those discussions were ongoing.  Apple has since

1  produced the source code printouts sought by Samsung on March 13, 2013.  (*See* Declaration of

2  Jennifer Rho ("Rho Decl."), Ex. 1.)  The issue is now moot.

### 2. Samsung's Original Document Requests Focused Solely On The Synchronization Feature Of iTunes

Second, Samsung criticizes the fact that Apple's production of iTunes source code in

December 2012 did not include any source code for iTunes related to user interface ("UI") features.

Samsung also focuses on various letters that it sent in January 2013 to address this alleged omission.

(Opening Memo. at 4.)  Samsung fails to mention that it waited until *January 15, 2013* to propound

Request for Production No. 638, which, for the first time, broadly sought the entirety of the iTunes

source code, "including but not limited to version 6.0.1." (Fazio Decl., Ex. 8 at 15.)  In its prior

requests for production, by contrast, Samsung had merely asked for software "relating to

*synchronization functionality*, including but not limited to the *synchronization feature* in Apple's

iTunes software." (*See* Request for Production No. 294 (emphasis added).)  That is what Apple

produced in December – source code relating to the synchronization feature in iTunes – a fact

Samsung does not dispute.   In other words, Samsung did not ask for any more of the iTunes code

than the synchronization portion – much less the *entirety* of all pre-January 7, 2007 versions, or even

the UI portions of that code – until very recently.  Thus, Samsung mischaracterizes the history

underlying the dispute when it asserts that it "asked Apple to produce the source code" "[s]even

months ago" (Opening Memo. at 1), or that Apple continually refused to make a production of all

iTunes source code, or even the UI source code.  In reality, Apple's response to this broader request

for production was not called for until mid-February 2013.

### 3. Apple Attempted To Reach A Reasonable Compromise With Samsung Regarding The Remaining iTunes Code

Third, Samsung admits that it only charted a single version of iTunes in its invalidity

contentions – Version 6.0.1.  Indeed, as explained above, in those charts Samsung exclusively

focused on Version 6.0.1 and defined "iTunes" as Version 6.0.1.  Thus, despite producing thousands

of pages of invalidity charts that cite and rely on dozens of prior art references and systems, Samsung

fails to explain why Apple should be required to produce source code for every version of iTunes

when Samsung only focused on one iTunes version.  Despite Samsung's failure to indicate why any other version of iTunes could be relevant here, Apple offered to produce the applicable UI code for Version 6.0.1 of iTunes, as well as other versions, if Samsung could "articulate[] a good faith basis for needing" more versions.  (Fazio Decl., Ex. 23 at 2; *see also* Fazio Decl. Ex. 24 at 6.)  Samsung's contention that Apple offered Version 6.0.1 "only on the condition that Samsung withdraw its requests for any additional [versions of the] code" (Opening Memo. at 5) is not accurate.  Apple did not close the door on collecting additional versions of the iTunes UI code – it simply sought to meet Samsung halfway by requesting a *good-faith showing* of relevance on Samsung's part for these additional versions.  Notwithstanding this effort at compromise, Samsung refused.  (*Id.*)

### 4.   Samsung's Motion Seeks To Skip The Step Of Propounding Proper Discovery

Finally, Samsung fails to explain that its negotiations with Apple regarding correlation of the iSync source code were all based on *document requests*:  during meet-and-confer discussions, Samsung repeatedly stated that it was entitled to receive all of Apple's source code for iSync (a product Apple stopped developing years ago), as well as anything that would correlate the source code produced to past commercial releases.  Not once during the parties' meet-and-confer discussions did Samsung identify an interrogatory relevant to this issue, nor has Samsung followed up with discovery focused on this issue.  (*See, e.g.,* Fazio Decl. Ex. 33 at 2; Rho Decl., Ex. 2.)  At all times, Apple was led to believe that the only thing Samsung was seeking with these requests were *documents*, and consistent with that understanding, in its Civil L.R. 37-2 Statement Samsung only references requests for production.  Thus, to the extent that Samsung's motion now reflects an effort to broaden the scope of discovery beyond the document requests it identified during the meet-and-confer discussions, it is an improper attempt to circumvent the discovery meet-and-confer processes.

## III.   ARGUMENT

### A.   APPLE HAS PRODUCED THE REQUESTED ITUNES SOURCE CODE PRINTOUTS

As previously noted, Samsung devotes much of its motion to an issue that is now moot:  the production of source code printouts.  The parties have had, and continue to have, an ongoing dispute

regarding the appropriate limitations on source-code printouts, including undue restrictions placed by Samsung on printouts resulting from Apple's inspections.  It was Apple's understanding that the parties were still negotiating this issue – on both sides – in March, when Samsung filed this motion.  As also noted above, on March 13, 2013, Apple produced the printouts at issue in this motion.  On March 18, 2013, Apple filed its own motion to compel against Samsung (Dkt. No. 398), based on its understanding from Samsung on March 14 that the parties were at an impasse.  The issue on Samsung's motion is now moot; the issue identified in Apple's motion is still in dispute.

### B.   APPLE HAS MADE NUMEROUS VERSIONS OF THE RELEVANT ITUNES SOURCE CODE AVAILABLE FOR INSPECTION, AND IT WILL PRODUCE A COMPLETE VERSION OF ITUNES SOURCE CODE, AS WELL

#### 1.   The Only Arguably Relevant iTunes Source Code Is The Source Code That Relates To Synchronization

Samsung complains that Apple "hand-selected portions of each iTunes release" for production, rather than produce all of the iTunes source code.  (Opening Memo. at 9.)  As noted above, however, Apple produced the code Samsung requested.  Indeed, in its original request for production, Samsung's request for iTunes software related *only* to synchronization functionality.  Indeed, in Request for Production No. 294, Samsung requested:

> All DOCUMENTS, including but not limited to Software, Executable Software, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides *RELATING TO synchronization functionality*, including but not limited to *the synchronization feature in APPLE's iTunes* software.

(Request for Production No. 294 (emphasis added).)  In response to this request, and as evidenced by Samsung's demand for printouts, Apple produced for inspection iTunes source code "relating to synchronization functionality."  Apple produced for inspection numerous versions of the iTunes synchronization software.  While Samsung only charted its contentions for Version 6.0.1, Apple did not limit the production to that version of the iTunes synchronization software.

The scope of Samsung's original request makes sense, as it is limited to relevant functionality.  Samsung has asserted in its invalidity contentions that iTunes 6.0.1 is prior art to Apple's '414 patent, based on its synchronization capabilities.  As noted above, the '414 patent relates to the ability of an end user to make changes to a database through one "non-synchronization processing thread," while

1  the database is being synchronized by a synchronization module that executes another, concurrent

2  "synchronization processing thread." (*E.g.*, claim 1.)  In other words, the '414 patent focuses on

3  "synchronization functionality," and that is presumably why Samsung's Sixth Set of Requests for

4  Production addressed only the part of the iTunes source code that relates to synchronization.

5        **2.**      **The iTunes User Interface Source Code Is Irrelevant**

6        In correspondence in early 2013, Samsung argued that Apple should also produce the user

7  interface code for iTunes, even though: (1) Samsung never served a request for production covering

8  the user interface, and (2) this code is irrelevant to the '414 patent claims.  Samsung also propounded

9  a new document request (Request for Production No. 638), which sought the *entirety* of the source

10 code for all pre-January 7, 2007 versions of iTunes, thereby attempting to sweep in the UI source

11 code as well as everything else in the iTunes application.

12       In apparent recognition of the overbreadth of this request, during subsequent meet and confer

13 sessions Samsung focused its arguments on the user interface source code.  In its communications,

14 Samsung failed to provide any explanation of why it needed the iTunes UI source code, particularly

15 considering the fact that it already had executable versions of the software, user manuals, and other

16 documents describing how the iTunes user interface operated.

17       Nonetheless, Apple did offer to provide the UI code for version 6.0.1, the iTunes version

18 charted by Samsung.  In its motion, Samsung claims that Apple's offer to produce UI code for

19 Version 6.0.1 was insufficient and attempts to justify that claim by asserting that in its December 27,

20 2012 Amended Patent Local Rule 3-3 and 3-4 Disclosures, it referred to "all [iTunes] versions before

21 the '414 priority date." (Opening Memo at 11, citing Fazio Decl. Ex. 5 at 65-66.)  Even so, Samsung

22 fails to note that despite that conclusory amendment to its disclosures, it still has only provided a

23 chart for Version 6.0.1 and has made no effort to amend that chart or otherwise establish invalidity

24 based on other iTunes versions.  Further, *all* the cases cited in Samsung's motion governing source

25 code are inapposite; they are directed to obtaining source code from an accused infringer in order to

26 prove *infringement*.  (Opening Memo. at 10-11.)  *E.g.*, *In re Google Litigation*, 2011 WL 286173,

27 No. C 08-03172 RMW (PSG) at *4 (N.D. Cal. Jan. 27, 2011) (ordering production of source code, as

28

it bears on the "analysis that [plaintiff] accuses of infringement").  None of these cases stand for the proposition that a party must produce all existing versions of source code for a single product that might serve as prior art, without any showing that there are material differences between all of these versions.  Moreover, Samsung fails to cite any case where a party charted only one version of source code as prior art, completely failed to chart other versions – as did Samsung – and then was granted the right to obtain source code for all non-charted versions.  Samsung's motion is particularly extreme in that it seeks *at least 38 versions* of the iTunes source code, going all the way back to Version 1.0.  (Motion at 1.)  Again, Samsung charted only one version (6.0.1).  There is simply no basis for this overreaching request.

Notwithstanding the foregoing, Apple has determined that it can, without excessive burden, produce the source code for the entire iTunes software application, Version 6.0.1, which includes the UI source code, and Apple is in the process of making this code available for inspection.  Thus, with this production (which should be in place well before the hearing on this motion), Apple will have produced the source code arguably relevant to Samsung's contentions; namely, the code for the version of iTunes charted by Samsung, as well as multiple versions of the synchronization code originally requested by Samsung.  Other than to say that it "will rely" on "all versions," Samsung has made no effort – it has not provided charts or evidence identifying relevant, substantive differences between other versions of iTunes and Version 6.0.1 – to justify its need for *37 additional* versions of the code.  Indeed, Samsung should not be permitted to conceal its invalidity theories regarding these other versions, demand such versions through this motion, and later ambush Apple with invalidity theories that it had or could have formulated long ago.  Respectfully, Samsung's request for additional versions of iTunes source code should be denied.

### C. SAMSUNG'S REQUEST FOR ADDITIONAL INFORMATION REGARDING iSYNC SOURCE CODE IS NOT PROPERLY BEFORE THE COURT

Samsung's final complaint appears to be that even though Samsung only served a request for document production relating to Apple's iSync software, Apple should also have correlated "which commercial version of iSync corresponds to the source code produced for inspection," including the versions of certain other software, such as SyncServices, used in each iSync release.  (Opening

Memo. at 12.)  Apparently recognizing that such a correlation is not covered by the request for production on which Samsung bases the motion to compel, Samsung now refers to Interrogatory No. 13 to argue that the "information is responsive to other requests propounded by Samsung." *Id.*  This argument should be rejected for at least two reasons.

First, in the context of Apple's production of iSync source code, Samsung never mentioned Interrogatory No. 13 during the parties' in-person lead counsel discovery conference, in meet-and-confer correspondence, or in any other discovery communication.  In failing to raise this argument before filing its motion, Samsung never gave Apple an opportunity to consider Interrogatory No. 13 in the context of this issue.  Even more significantly, Samsung does not include this interrogatory in its Civil Local Rule 37-2 Statement in support of this motion.

Second, Interrogatory No. 13 is directed to an entirely different part of the case.  Notably, Samsung omits the full text of this interrogatory in its opening memorandum, which makes it clear why it does not support Samsung's position:

**INTERROGATORY NO. 13**

Separately for all SOFTWARE produced by APPLE including, but not limited to **iOS SOURCE CODE**, IDENTIFY: (a) each version of SOFTWARE that corresponds to commercially distributed versions of SOFTWARE; (b) which **APPLE ACCUSED PRODUCT** was commercially distributed with which version of the SOFTWARE produced by APPLE; and (c) all material differences between the commercially distributed versions of SOFTWARE that are relevant to any aspect, element or function of any **APPLE ACCUSED PRODUCT that is alleged to infringe any of the SAMSUNG PATENTS**.

(Fazio Decl., Ex. 9 at Interrogatory No. 13 (boldface added).)  As the language of the interrogatory makes clear, this interrogatory is directed to the source code for Apple's *accused iOS software*, and it seeks to match up the versions of that source code with the different versions of "APPLE ACCUSED PRODUCT[S]" that are "alleged to infringe any of the SAMSUNG PATENTS."  The entire focus of this interrogatory is Samsung's *infringement* contentions, for *Samsung's* patents, and it has nothing to do with *Apple's* patents or potential prior art to Apple's patents.  The interrogatory has nothing to do with iSync, which is not *iOS software*, or any alleged prior art source code.  (*See* Declaration of Michael McDougall, ¶ 2.)  On this second basis, the Court should likewise reject Samsung's arguments regarding Interrogatory No. 13.

1    However, even if this interrogatory could somehow be read to encompass the information

2    now sought by Samsung, this motion is Apple's first notice of such a broad interpretation.  Had

3    Apple been given the opportunity to address this interpretation in meet-and-confer discussions, it

4    would have explained that there is:  (1) no single location or folder for this obsolete code, and (2) no

5    single custodian who has familiarity with the entire iSync source code, thereby necessitating

6    additional investigation to determine if such a correlation can be made.  (*Id.* ¶ 3.)

7    This portion of Samsung's motion is clearly an effort to skip the normal discovery timelines

8    and interrogatory limits to go straight to an order compelling Apple to do something for which it has

9    not had adequate notice and opportunity to respond.  Apple respectfully submits that this is improper

10   and should be denied.

11   **IV.    CONCLUSION**

12   For all of the foregoing reasons, Samsung's motion to compel reflects a mischaracterization

13   of the scope and nature of the actual discovery requests relating to production of the old source code

14   files for iTunes and iSync, as well as a pattern of failing to allow the discovery and meet-and-confer

15   process to properly proceed.  Apple respectfully urges the Court to deny Samsung's motion.

16

17                                              GIBSON, DUNN & CRUTCHER LLP

18

19   Dated:  March 26, 2013              By:  _____
                                                      */s/ H. Mark Lyon*
20                                                    H. Mark Lyon
                                              ***Attorney for Plaintiff Apple Inc.***
21

22

23

24

25

26

27

28

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO
COMPEL PRODUCTION OF ITUNES AND ISYNC CODE
CASE NO. 5:12-CV-00630-LHK (PSG)                          11

Gibson, Dunn &
Crutcher LLP

1

**CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that the foregoing document was filed electronically in

3   compliance with Local Rule 5-1, and will be served on all counsel for Samsung Electronics Co., Ltd.,

4   Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have

5   consented to electronic service in accordance with the Northern District of California Local Rules via

6   the Court's ECF system.

7

8   Dated:  March 26, 2012                    By:  _____/s/ H. Mark Lyon_____

9                                                      H. Mark Lyon

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP