QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

STEPTOE & JOHNSON, LLP
John Caracappa (*pro hac vice*)
jcaracappa@steptoe.com
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 429-6267
Facsimile: (202) 429-3902

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL RESUMED DEPOSITIONS OF YOUNG-BUM KIM AND JU-HO LEE AND PRODUCTION OF DOCUMENTS**<br><br>Hearing Date: April 11, 2013<br>Hearing Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Honorable Paul S. Grewal |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

RESPONSE TO APPLE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS ........... 3

I.   APPLE'S PREMATURE MOTION TO COMPEL PRODUCTION OF
     DOCUMENTS IS MOOT. ....................................................................................... 3

     A.   Samsung's Responses Were Not Even Due When Apple Filed Its Motion ............. 3

     B.   The Dispute Whether The Documents At Issue Were Encompassed By
          Earlier Requests Was Resolved After Meet and Confer When Apple Agreed
          To Propound Specific Requests. ............................................................................... 4

OPPOSITION TO APPLE'S MOTION TO RESUME DEPOSITIONS OF YOUNG-BUM
KIM AND JU-HO LEE ........................................................................................................ 5

SUMMARY OF PERTINENT FACTS ................................................................................... 5

ARGUMENT ....................................................................................................................... 8

I.   APPLE DOES NOT LIVE UP TO ITS END OF THE PARTIES' AGREEMENT. ........... 8

     A.   Samsung Has Fulfilled The Parties' Agreements; Apple Should Too. .................... 8

          1.   Apple Agreed To Depose Young-Bum Kim And Ju-Ho Lee On One
               Day Each, And Received Numerous Benefits In Exchange. ........................ 8

          2.   Samsung Has Fulfilled The Parties' Agreement Regarding Young-
               Bum Kim and Ju-Ho Lee's Document Productions. ................................... 9

     B.   The Court Already Declined Apple's Request To Resume These
          Depositions. ........................................................................................................... 10

     C.   Apple's Contentions Regarding Technical Issues and Production Volume
          Are Makeweight. .................................................................................................... 11

          1.   Samsung's Productions For Ju-Ho Lee and Young-Bum Kim Were
               Formatted Properly And Consistent With Samsung's Prior
               Productions, About Which Apple Never Complained. ............................... 11

          2.   Apple's Contention Regarding "A New Hard Drive Containing A
               Replacement Production" Is Misleading. .................................................. 13

          3.   Apple Received All Documents That It Demanded. ................................... 13

     D.   Samsung's Subsequent Document Production of 6,600 Documents, Which
          Was Made In Response To Apple's Belated Document Requests, Is No
          Reason To Resume Mr. Lee's Deposition. ............................................................. 15

E.    Samsung is Entitled to Preserve its Objections and to Protect its Witnesses
From Abusive and Confusing Questions. ............................................................... 15

II.   IF THE COURT ORDERS THAT MESSRS. LEE AND KIM'S DEPOSITIONS
BE RESUMED, THEN THOSE DEPOSITIONS SHOULD TAKE PLACE IN
SUWON, SOUTH KOREA. .......................................................................................... 17

CONCLUSION ....................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Archer Daniels Midland v. Aon Risk Services, Inc.,*
    187 F.R.D. 578 (D. Minn. 1999) ................................................................................19

*Armsey v. Medshares Mgmt. Servs.,*
    184 F.R.D. 569 (W.D. Va. 1998) ...............................................................................19

*BNSF Ry. Co. v. San Joaquin Valley R. Co.,*
    No. 1:08-cv-01086-AWI-SMS, 2009 WL 3872043 (E.D. Cal. Nov. 17, 2009) .......16

*Boston Scientific Corp. v. Cordis Corp.,*
    No. 5:02CV1474 JW (RS), 2004 WL 1945643 (N.D. Cal. Sept. 1, 2004) ...............16

*Cadent v. 3M Unitek Corp.,*
    232 F.R.D. 625 (C.D. Cal. 2005) ...............................................................................20

*Continental Federal Sav. And Loan Ass'n v. Delta Corp of America,*
    71 F.R.D. 697 (W.D. Okla. 1976) ..............................................................................19

*Rapoca Energy Co., L.P. v. AMCI Exp. Corp.,*
    199 F.R.D. 191 (W.D. Va. 2001) ...............................................................................18

*Saca v. J.P. Molyneux Studio Ltd.,*
    No. CIV S-06-2818 MCE EFB, 2008 WL 802320 (E.D. Cal. Mar. 25, 2008) .........16

*Salter v. Upjohn Co.,*
    593 F.2d 649 (5th Cir. 1979) ......................................................................................18

*Tailift USA, Inc. v. Tailift Co., Ltd.,*
    No. 3:03-CV-0196-M, 2004 U.S. Dist. LEXIS 28648 (N.D. Tex. Mar. 26, 2004) ....18

*Universal Trading & Investment Co. v. Kiritchenko,*
    No. C-99-03073 MMC (EDL), 2007 WL 2300740 (N.D.Cal. Aug. 2, 2007) ...........16

## <u>Statutes</u>

Rule 30(b)(6)   .....................................................................................................................19

**INTRODUCTION**

Apple's Motion to Compel production of documents is moot.   Apple's Motion concerns documents that were requested by Apple's Thirteenth Set of Requests for Production, and Samsung's responses to these Requests were not due until *after* Apple filed its Motion to Compel. Samsung has responded to Apple's Requests within the time prescribed by the Federal Rules of Civil Procedure and has agreed to produce these documents.   Although Samsung requested that Apple withdraw its Motion, as of the time of this filing Apple refused.   There is nothing for this Court to decide.

Notably, Apple attempts to justify its premature Motion by contending that the documents were encompassed by other previously served Requests.   Yet if Apple genuinely believed its contention, it would not have propounded Requests seeking the same documents.   Indeed, the parties met and conferred over whether or not earlier requests called for the documents at issue. The parties resolved that dispute by Apple agreeing to propound more specific requests.   The meet and confer was pointless—and Apple's Thirteenth Set of Requests for Production make-work—if Apple does not live up to its agreement to resolve the very dispute they raise by this Motion.

Apple's Motion also seeks to resume the depositions of two Samsung employees—Young-Bum Kim and Ju-Ho Lee—named inventors of the '087 Samsung patent-in-suit.   Apple omits the fact that Apple agreed, after three weeks of negotiations, that Apple would depose these inventors *each on one day* and *in Suwon, South Korea*.   The parties further agreed that document productions for inventors would occur ten days in advance of a deposition.   Samsung has fulfilled all of its obligations under parties' agreement, making Messrs. Kim and Lee available on the agreed-upon dates and producing their documents more than ten day before deposition.

Importantly, the parties' deal regarding Young-Bum Kim and Ju-Ho Lee was part of a larger compromise regarding numerous other inventor depositions.   Apple obtained several benefits from that deal, including Samsung's agreement to: (1) make other Samsung inventors who reside outside the United States available for deposition in the United States; (2) depose only five of the twelve Apple inventors prior to close of claim construction discovery; and (3) depose

Apple's current and former employees at Apple's counsel's offices.   Now, having had the benefits of that agreement, Apple seeks to renege on its end of the bargain by demanding more days of deposition with Messrs. Kim and Lee and demanding that they occur in the United States. Indeed, if Apple refuses to live up to its agreement, why even meet and confer and make agreements in the first place?   Samsung has performed its promise.   Apple should too.

Apple quotes Judge Koh out of context in arguing that she entered an Order that Apple is entitled to extra days for the depositions in question.   In the parties' Joint Case Management Statement dated December 5, 2012, Apple asked for an Order granting extra days.   Samsung opposed that request, pointing out that "Apple did not notify Samsung in advance of scheduling Mr. Kim's deposition that it sought more than one day of testimony."   The Court ruled that a two-day deposition required advance notice:

> If a party wishes to schedule a two-day deposition due to the use of
> an interpreter, advance notice to the opposing party is required.

Here, when the parties were negotiating the deposition schedule, Apple knew these inventors were Korean speakers.   Apple did not give advance notice that it wanted to schedule two days.   Indeed, even now, Apple provides no topics that it would have covered with these witnesses if Apple had more time.

As another purported justification for additional days of deposition, Apple contends that Samsung's document production for these two inventors contained "technical problems." Accordingly to Apple, "Samsung sent a new hard drive containing a *replacement production* which arrived at [Apple's counsel's] office at approximately the same time as the deposition of Mr. Kim was occurring in Korea."   (Emphasis added.)   Apple has confused *two entirely different Samsung inventors*—Sung-Ho Choi and Soeng-Hun Kim.   The replacement hard drive was for Sung-Ho Choi and Soeng-Hun Kim; not for the witnesses at issue in Apple's Motion— Young-Bum Kim and Ju-Ho Lee.   Samsung's productions for Young-Bum Kim and Ju-Ho Lee were free of any glitches, readily downloadable and reviewable.

Apple also asserts it is entitled to additional days of deposition because of the volume of documents produced.   Apple seems to contend that even though it has three law firms working on

1   this case, and agreed to production of documents ten days before the depositions, it still lacked the

2   resources to review the documents over the course of two weeks.    The Court should outright

3   reject Apple's argument that it is under-resourced.

4           Lastly, Apple contends that Samsung made a "late" document production of approximately

5   6,600 documents, which further supports a second day of deposition of Mr. Lee.    That so-called

6   "late production" was in response to requests for documents served by Apple on November 16,

7   2012.    Samsung responded to those requests within the time required, which, under the Federal

8   Rules of Civil Procedure, was *after* the agreed upon date for Mr. Lee's deposition.    A party's

9   own belated document requests are not an excuse to re-open discovery.

10          Apple's remaining contention about excessive objections is makeweight.    Had Apple's

11  counsel not engaged in improper questioning, then it would not have been necessary for

12  Samsung's counsel to object in the manner that he did.    The Court should deny Apple's Motion.

13  **RESPONSE TO APPLE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

14  **I.      APPLE'S PREMATURE MOTION TO COMPEL PRODUCTION OF**

15          **DOCUMENTS IS MOOT.**

16          The documents at issue in Apple's Motion were demanded by requests propounded less

17  than 30 days before Apple's Motion was filed.    When Samsung timely responded, it agreed to

18  produce the documents.

19          **A.      Samsung's Responses Were Not Even Due When Apple Filed Its Motion.**

20          Apple's Motion seeks four types of marketing and financial documents, referred to

21  internally by Samsung as "Deep Dives," "SMOPs," "PMT Reports" and "PSI Variance" reports.

22  These documents were requested by Apple in its Thirteenth Set of Requests propounded on

23  February 22, 2013, which means that Samsung's responses to these Requests were not even due

24  until *March 25, 2013*—one week *after* Apple filed its Motion.    (*See* Fazio Decl.,[1] Ex. 1, at 2.)

25  _____

26          [1]    The "Fazio Decl." is the Declaration of Michael L. Fazio in Support of Samsung's
27  Opposition to Apple's Motion to Compel Resumed Depositions of Young-Bum Kim and Ju-Ho
    Lee and Production of Documents.

28

1    When Samsung responded, it agreed to produce the documents requested by Apple.   (*See* Fazio

2    Decl., Ex. 2.)

3        **B.**    **The Dispute Whether The Documents At Issue Were Encompassed By Earlier**

4            **Requests Was Resolved After Meet and Confer When Apple Agreed To**

5            **Propound Specific Requests.**

6        Apple contends that the specific documents sought by its Motion were called for by earlier,

7    broader Apple Requests.   (Mot. 2:3-5.)   Whether they were or not need not be decided by the

8    Court because the parties met and conferred on that issue and resolved it by Apple agreeing to

9    propound additional Requests specifically seeking these documents.   (*See* Fazio Decl., Ex. 3, at 2

10   (February 22, 2013 letter from Fazio to Valek).)   Apple did just that, and propounded its

11   Thirteenth Set of Requests for Production one week after the parties' meet and confer.

12   Accordingly, the parties resolved the very issue Apple now raises regarding whether these

13   documents are encompassed by Apple's other Requests.

14       Most of the other Requests that Apple moves on—Request Nos. 44, 45, 49, 55, 135, 295,

15   297, 552, 554, 555, 556—have not been the subject of a lead trial counsel meet and confer.   (*See*

16   Mot. 2:19-21.)   Apple concedes as much, given that its own attorney declaration submitted in

17   support of its Motion does not state, as it must, that these Requests were the subject of a lead trial

18   counsel meet and confer prior to filing.   (*See* ECF No. 402, ¶ 12 (stating that only Request Nos.

19   125, 231, 298 and 312 were the subject of a lead trial counsel meet-and-confer).)

20       Indeed, Apple points to only four Requests for Production at issue in its Motion—Request

21   Nos. 125, 231, 298 and 312—that, according to Apple, were met and conferred on prior to filing.

22   (*See id*.)   But the documents at issue do not fall under any of these Requests.   As just one

23   example, Request No. 125 seeks "[a]ll Documents relating to any contention that Apple would not

24   be irreparably harmed in the absence of an injunction."   It is unclear how any of the documents at

25   issue fall under this Request.   Nonetheless, and given Samsung's agreement to produce, Apple's

26   Motion is moot.

27

28

## OPPOSITION TO APPLE'S MOTION TO RESUME DEPOSITIONS
## OF YOUNG-BUM KIM AND JU-HO LEE

### Summary of Pertinent Facts

**Apple Agreed to the Dates and Length for the Depositions of Young-Bum Kim and Ju-Ho Lee.**   Apple mentions the parties' agreement reached on November 8, 2012 regarding when the depositions of Young-Bum Kim and Ju-Ho Lee would occur.   (*See* Mot. 7:20-21.) Tellingly, Apple omits any description of the parties' extensive back and forth negotiations leading up to that agreement; and how the agreement was a compromise that resolved a number of issues regarding numerous inventor depositions and document productions.

On October 3, 2012, Samsung noticed the depositions of 12 inventors of the Apple patents-in-suit.   (Fazio Decl., Ex. 4 (collecting Samsung's deposition notices).)   One week later, on October 10, 2012, Apple noticed the depositions of seven inventors of the Samsung patents-in-suit.   (Fazio Decl., Ex. 5 (collecting Apple's deposition notices).)   Young-Bum Kim and Ju-Ho Lee—named inventors of the '087 patent asserted by Samsung—were among those depositions noticed by Apple.   (*Id.*)   Nine days later, Samsung offered dates for their depositions in Suwon; specifically, November 28, 2012 for Young-Bum Kim and November 30, 2012 for Ju-Ho Lee. (Fazio Decl., Ex. 6 (October 19, 2012 letter from Fazio to Silhasek).)

Apple responded five days later, requesting that Mr. Kim and Mr. Lee be deposed in the United States.   (Fazio Decl., Ex. 7, at 2 (October 24, 2012 letter from Kolovos to Fazio).) Importantly, in its response, Apple did not object to conducting Mr. Kim and Mr. Lee's depositions on one day each.   (*See id.*)   Apple never requested that it wanted two days with either deponent.   (*See id.*)

On November 1, 2012, Samsung again wrote to Apple offering November 28 and November 30 for these two depositions, and requesting that Apple "please notify [Samsung] as soon as possible, and no later than November 5, 2012, if Apple accepts the dates offered for these deponents."   (*See* Fazio Decl., Ex. 8, at 2 (November 1, 2012 letter from Kolovos to Fazio).) Apple responded the following day, offering a compromise proposal whereby certain Samsung inventors would be deposed in South Korea while others would be deposed in the United States.

1   (*See* Fazio Decl., Ex. 9, at 3 (November 2, 2012 letter from Kolovos to Fazio).)    Apple again did

2   not take issue with deposing Messrs. Lee and Kim on one day each.    (*See id.*)

3          Samsung subsequently offered Messrs. Lee and Kim on alternate dates in the United

4   States.    Specifically, by letter dated November 6, Samsung offered to make Mr. Lee available on

5   November 23, 2012 and Mr. Kim available on November 25, 2012 in Dallas, Texas.    (Fazio

6   Decl., Ex. 10, at 4 (November 6, 2012 letter from Fazio to Kolovos) .)    Though Apple declined

7   these alternative dates given their proximity to the Thanksgiving holiday, Apple again did not

8   object to deposing Mr. Kim and Mr. Lee on one day each.    (*See* Fazio Decl., Ex. 11 (November

9   7, 2012 e-mail from Kolovos to Fazio).)

10          Samsung again offered Messrs. Kim and Lee on November 28 and November 30,

11   respectively, and in Suwon, as part of a compromise proposal with Apple.    (Fazio Decl., Ex. 12

12   (November 8 and November 9, 2012 e-mails from Fazio to Kolovos).)    Apple accepted.    (Fazio

13   Decl., Ex. 13 (November 9, 2012 e-mail from Rho to Fazio).)    The parties' agreement expressly

14   provided that Messrs. Kim and Lee would be deposed *on one day each* and in Suwon:

15              The two pre-December 14 Samsung inventor depositions will be

16              Young-Bum Kim on November 28, 2012 and Ju-Ho Lee on

17              November 30, 2012.    Both depositions will occur in Suwon.

18   (Fazio Decl., Ex. 12, at 1 (November 8, 2012 e-mail from Fazio to Kolovos) (second bullet).)

19          Notably, the parties' agreement regarding Messrs. Kim and Lee's depositions was part of a

20   much larger compromise deal between the parties regarding inventors' depositions.    As part of

21   that deal, Apple gave some and it got some.    Specifically, the parties' deal provided that:

22          •   Samsung will make three of its seven employee inventors available for deposition

23              in the United States.   Those U.S. depositions will occur after December 14, 2012;

24          •   The two pre-December 14 Samsung inventor depositions will be Young-Bum Kim

25              on November 28, 2012 and Ju-Ho Lee on November 30, 2012.   Both depositions

26              will occur in Suwon;

27

28

1    • The depositions of Apple current or former employees would be taken at Apple's
2    counsels' office.

3    (Fazio Decl., Ex. 12, at 1 (November 8, 2012 e-mail from Fazio to Kolovos); Fazio Decl., Ex. 13.)

4    The parties' deal also provided that of the 12 Apple inventor depositions noticed by
5    Samsung, Samsung would depose only five of those inventors prior to close of claim construction
6    discovery.   (Fazio Decl., Ex. 14, at 1 (October 31, 2012 e-mail from Fazio to Rho).)
7    Additionally, Apple previously requested, and Samsung agreed, that the parties make their
8    document productions from their respective inventors ten days in advance of the inventors'
9    depositions:

10    Samsung will make its document productions from its seven
11    employee inventors 10 days in advance of their depositions.   Apple
12    will make its supplemental document productions from its inventors
13    (both employee inventors and non-employee inventors represented
14    by Apple) 10 days in advance of their depositions.

15    (Fazio Decl., Ex. 12, at 1.)   Samsung served its document productions for Ju-Ho Lee and Young-
16    Bum Kim on November 16, 2012—12 days in advance of Young-Bum Kim's deposition and 14
17    days in advance of Ju-Ho Lee's deposition.   (Fazio Decl. ¶ 18.)

18    **The Depositions Proceed On The Agreed-Upon Dates.**   Apple commenced Young-
19    Bum Kim's deposition at 9:00 a.m., (Fazio Decl., Ex. 28, at 6:12-13), and concluded at
20    approximately 7:00 p.m. on November 28 (*Id*. at 136:21-25).   As detailed below, Samsung's
21    objections during Mr. Kim's deposition were minimal and proper.   Apple's counsel did not state
22    Apple's intention to attempt to resume Mr. Kim's deposition at a later date.   (*See id*.)
23    Furthermore, at the end of the deposition, Apple's counsel did not make any proffer of additional
24    topics or inquiries that Apple would have covered with Mr. Kim if it had more time.   (*See id*.)
25    Similarly, Ju-Ho Lee's deposition went forward on November 30th.   At Mr. Lee's
26    deposition, Samsung's counsel specifically offered additional deposition time upon Apple's
27    request, stating:
28

1    If you want additional time, you need to let us know in advance.

2    That was never the case.    If at any time yesterday counsel had

3    asked me for additional reasonable amount of time to finish the

4    deposition, I would have certainly entertained such a request.    At

5    no time yesterday did counsel ever request additional time.

6  (Fazio Decl., Ex. 15, at 7:21 to 8:2.)    Notably, Apple's counsel even ended Mr. Lee's deposition

7  early and did not offer any additional topics or inquiries that Apple would have covered even if it

8  had more time.

9                                **ARGUMENT**

10  I.      **APPLE DOES NOT LIVE UP TO ITS END OF THE PARTIES' AGREEMENT.**

11          A.      **Samsung Has Fulfilled The Parties' Agreements; Apple Should Too.**

12                  1.      **Apple Agreed To Depose Young-Bum Kim And Ju-Ho Lee On One**

13                          **Day Each, And Received Numerous Benefits In Exchange.**

14          Apple further contends that Samsung's refusal to make Messrs. Kim and Lee available for

15  a second day of deposition in light of the Court's Case Management Order is nonsensical.    (*See*

16  Mot. 11: 14-16.)    Yet there is nothing nonsensical about holding Apple to its word.

17          As detailed above, the parties engaged in extensive back and forth negotiations lasting

18  three weeks regarding the date and location for Messrs. Kim and Lee's depositions, and the timing

19  of their document productions.    After dozens of letters and emails, the parties reached agreement.

20  That agreement provided that Young Bum Kim and Ju-Ho Lee's depositions would occur on

21  November 28, 2012 and November 30, 2012, respectively, in Suwon.    (Fazio Decl., Exs. 12, 13.)

22  At no point during these extensive negotiations did Apple ever state that they wanted more than

23  one day of deposition with Messrs. Kim and Lee.

24          Importantly, in exchange for limiting their depositions to one day each in Suwon, Apple

25  received numerous benefits under the parties' agreement.    Specifically, the depositions of three

26  other Samsung inventors would occur in the United States; the depositions of Apple's current and

27  former employees would occur at Apple's counsel's offices; only five of Apple's 12 inventors

28  would be deposed before claim construction discovery cut-off; and document productions would

1   be made ten days before inventor depositions.    (Fazio Decl., Exs. 12, 13, 14.)    Having received

2   the benefits of the parties' agreement, Apple should not now be permitted to rescind the provision

3   that it does not now like.

4              Notably, at the conclusion of Messrs. Kim and Lee's depositions, Apple's counsel never

5   said he was not finished nor did he indicate that he had not had sufficient time.    Rather, Apple

6   first raised the issue of a two-day deposition in a letter sent by Apple the day after Young-Bum

7   Kim's deposition.   (*See* Fazio Decl., Ex. 16 (November 29, 2012 letter from Kolovos to Fazio).)

8   Apple argued for the first time that Apple should have been permitted to depose Mr. Kim for 14

9   hours.   (*Id.*)    Apple also asserted that Mr. Kim should travel to the United States for his resumed

10  deposition.   (*Id.*)    Apple's demand to resume Mr. Kim's deposition for a second day in the

11  United States is in contravention of the parties' agreement.

12             Had Apple notified Samsung in advance of its potential need for two days of testimony,

13  Samsung could have planned accordingly.    Instead, if Apple is provided with additional time to

14  continue these depositions, Samsung will be severely prejudiced.    Samsung will need to again

15  disrupt Messrs. Kim and Lee's schedules with another day of deposition.    Such prejudice could

16  easily have been avoided had Apple provided proper notice.    Samsung has fulfilled its

17  obligations under the parties' agreement by making Messrs. Kim and Lee available for deposition

18  on the agreed upon dates and location.    Apple should likewise be held to the parties' agreement.

19             **2.    Samsung Has Fulfilled The Parties' Agreement Regarding Young-Bum**

20             **Kim and Ju-Ho Lee's Document Productions.**

21             The parties agreed that document productions for its inventors will be made ten days in

22  advance of the deposition.    (*See* Fazio Decl., Ex. 12, at 1 (November 9, 2012 e-mail from Fazio

23  to Kolovos); Fazio Decl.., Ex. 13.)    Here too, Samsung fulfilled the parties' agreement.

24             On November 14, 2012, Samsung informed Apple of the manner and timing of Samsung's

25  inventor document productions, stating that the documents would be served on November 16th on

26  a hard drive, and requesting who at Apple the documents should be sent to in order to ensure that

27  Apple could timely process them.    (Fazio Decl., Ex. 17 (November 14, 2012 e-mail from

28  Zalduendo to Rho).)    Apple's counsel responded by providing the name of the pertinent Apple

1   personnel—Ernest Aglipay—and his address, and Samsung served its documents on November

2   16, 2012 consistent with Apple's instructions.   (Fazio Decl., Ex. 18 (November 14, 2012 e-mail

3   from Rho to Fazio); Fazio Decl. ¶ 18.)   Apple did not object to Samsung producing documents

4   via hard drive.   Nor did Apple request that Samsung produce these documents using some other

5   media, such as FTP.   Young-Bum Kim's documents were served 12 days before his deposition,

6   and Ju-Ho Lee's documents were served 14 days before his deposition.   (Fazio Decl. ¶ 18.)

7   Accordingly, not only did Samsung fulfill the parties' agreement, it even produced documents

8   early.[2]

9          **B.      The Court Already Declined Apple's Request To Resume These Depositions.**

10          Apple contends that the Court's Case Management Order entered on December 11, 2012

11   supports resuming Messrs. Kim and Lee's depositions for a second day.   (*See* Mot. 9:17-25.)

12   But the context of that Order is everything and Apple provides the Court with none.

13          To be clear, the parties have already presented this issue to Judge Koh in their most recent

14   Joint Case Management Conference Statement.   There, Apple argued "that depositions taken

15   through an interpreter are subject to a 14-hour limit."   (ECF No. 319, at 2:10-12.)   Apple noted

16   it was seeking this ruling on deposition time limits in order to attempt to resume Young-Bum

17   Kim's deposition, arguing that "[a]fter requiring Apple to travel to Suwon, Korea to take Mr.

18   Kim's deposition, Samsung cut off the deposition exactly at seven hours."   (*Id.* at 2:20-12.)

19          Samsung responded that it should not be required to resume the depositions based upon the

20   parties' agreement regarding these depositions, stating:

21                  [T]he parties previously agreed that Samsung inventors Young-Bum

22                  Kim and Ju-Ho Lee would each be deposed *on one day* – November

23

24   ───────────────────

25          [2]      Parenthetically, Apple has consistently failed to adhere to the parties' agreement,
     producing its inventors' documents late.   (*See, e.g.*, Fazio Decl., Ex. 19, at 2 (November 29, 2012
26   letter from Fazio to Krevitt and Rho) (detailing Apple's belated document production for Apple
     inventor Stephen Capps); Fazio Decl., Ex. 20 (March 18, 2013 e-mail from Rho to Fazio)
27   (detailing Apple's belated document production for Apple inventor Kenneth Kocienda).)

28

1    28, 2012 for Young-Bum Kim and November 30, 2012 for Ju-Ho

2        Lee – *with both depositions occurring in Suwon, South Korea*.

3    (*Id.* at 3:15-18 (emphasis added).)

4        Judge Koh declined Apple's request to order that Mr. Kim's deposition be resumed.   The

5    Court further ruled that "[i]f a party wishes to schedule a two-day deposition due to the use of an

6    interpreter, *advance notice to the opposing party is required*."   (ECF No. 324, at 2:3-5 (emphasis

7    added).)   Here, there was no advance notice.   Apple presented the issue of re-deposing the

8    witnesses and the Court declined to enter such an Order.

9    **C.**    **Apple's Contentions Regarding Technical Issues and Production Volume Are**

10        **Makeweight.**

11        **1.**    **Samsung's Productions For Ju-Ho Lee and Young-Bum Kim Were**

12            **Formatted Properly And Consistent With Samsung's Prior**

13            **Productions, About Which Apple Never Complained.**

14        Apple contends that Samsung's November 16th document productions were "rife with

15    technical problems."   (Mot. 7:26-28.)   Apple does not further detail these purported technical

16    problems, except to state in a footnote that Samsung's hard drive "contained 76 different RAR

17    files grouped into five production folders for several different witnesses, including Mr. Kim and

18    Mr. Lee."  (Mot. 8:26-28.)   Apple continues to fail to point to any specific "technical problems"

19    with Messrs. Kim and Lee's document productions.

20        Importantly, Apple waited until the evening of November 20th to raise its purported

21    issues with Samsung's document production for these two inventors.   (*See* Fazio Decl., Ex. 21

22    (November 20, 2012 e-mail from Herriot to Fazio.)    In its email, Apple stated that the files for

23    Messrs. Kim and Lee were "disorganized and confusing."[3]   (*Id.*)   Apple did *not* claim any

24    technical difficulties.   Apple followed up with a letter, again stating that, in Apple's view, these

25

26    _____

27        [3]    Samsung's counsel responded to Apple's inquiry five minutes later, and set up a
     teleconference in order to alleviate Apple's purported confusion.   (Fazio Decl., Ex. 21.)
28

1   files were "disorganized."    (*See* Fazio Decl., Ex. 22, at 1 (November 21, 2012 letter from

2   Kolovos to Fazio).)    Apple again did not claim any technical difficulties.

3          Indeed, although Apple characterizes their issue as "technical problems"—suggesting

4   some sort of malfunction—in fact their complaint is formatting.    That is, according to Apple,

5   Samsung should not have produced Messrs. Kim and Lee's documents as "compressed data."

6   (*See id*.)    Preliminarily, the parties have agreed upon the formatting of document productions in

7   their Stipulation Regarding Electronic Discovery.    (*See* ECF No. 328, ¶ A.3.ii).)    Apple does not

8   dispute that Samsung's document productions for Messrs. Kim and Lee complied with the parties'

9   Stipulation.    In any event, Apple's complaint about the formatting of Samsung's production is

10  belied by the fact that almost every document that Samsung has produced in this case has been

11  produced in a similar format—that is, a compressed file format (usually as zip files).    (*See* Fazio

12  Decl., Ex. 23, at 2 (November 21, 2012 letter from Fazio to Kolovos); Land Decl.[4] ¶ 9.)

13  Notwithstanding Samsung's production of over one million documents in the past year in this

14  same format, Apple has never once complained.    (Land Decl. ¶ 9.)    That Apple now purports to

15  find compressed files objectionable, given that is how Samsung has produced its documents over

16  the duration of this case, suggests that this is a disingenuous complaint.

17         Further, the files pertinent to Ju-Ho Lee and Young-Bum Kim were readily identifiable by

18  file name, as shown below, or metadata.

19  

20

21

22

23  These files were downloadable in minimal time—approximately 3.6 hours download time for

24

25  _____

26      [4]    The "Land Decl." is the Declaration of Jonathan A. Land in Support of Samsung's

27  Opposition to Apple's Motion to Compel Resumed Depositions of Young-Bum Kim and Ju-Ho
    Lee and Production of Documents.

28

1   Ju-Ho Lee and 3.5 hours download time for Young Bum Kim.   (*See id*. ¶¶ 5, 7.)   Accordingly,

2   Samsung's production for these inventors was properly formatted, free of errors, and readily

3   reviewable.

4             **2.      Apple's Contention Regarding "A New Hard Drive Containing A**

5                      **Replacement Production" Is Misleading.**

6             Apple further states that it "discovered that there were errors with two of the five

7   production folders" and "Samsung sent a new hard drive containing a replacement production,

8   which arrived at counsel for Apple's Palo Alto office at approximately the same time as the

9   deposition of Mr. Kim was occurring in Korea."   (Mot. 8:6-8.)   Apple, however, does not say

10  what was on that hard drive and, by its silence, Apple invites the Court to infer that documents for

11  either Messrs. Lee or Kim were contained on this "replacement" drive.   *They were not.*

12            The replacement hard drive served by Samsung contained documents for only Soeng-Hun

13  Kim and Sung-Ho Choi—*two different Samsung inventors whose depositions are not at issue.*

14  (Land Decl. ¶ 10.)   The replacement files were *not* for Young-Bum Kim and Ju-Ho Lee.

15  Apple's attempt to conflate document productions and mislead the Court on this issue should be

16  rejected.

17            **3.      Apple Received All Documents That It Demanded.**

18            Apple claims the "volume of documents" produced by Samsung justifies resuming Messrs.

19  Kim and Lee's depositions.   (Mot. 1:21-23.)   Preliminarily, though the hard drive that Samsung

20  served on November 16th contained documents from multiple Samsung custodians, it contained

21  approximately 67,000 documents for Ju-Ho Lee and 59,000 documents for Young Bum Kim.

22  (Land Decl. ¶ 2.)   Therefore, only a portion of the documents contained in this production were

23  from Messrs. Kim and Lee.

24            Moreover, when Apple requested broad categories of documents, it knew or should have

25  known that it would receive a large volume of documents in response.   For example, Apple's

26  Request No. 343 seeks "[a]ll documents relating to the evaluation, adoption or incorporation by

27  3GPP of Samsung's Alleged Essential Patents into the UMTS Standard."   (Fazio Decl., Ex. 24, at

28  22.)   As another example, Apple's Request No. 348 seeks "all documents relating to Samsung's

1   understanding of, and compliance with, the ETSI IPR Policy."   (*Id.* at 26-27)    As yet another

2   example, Apple's Request No. 350 seeks "all documents relating to or comprising

3   communications, statements, submissions, or presentations by Samsung regarding the IPR

4   disclosure practices, policies, or procedures of 3GPP or ETSI."   (*Id.* at 28)    Having sought these

5   broad categories of documents, and received them from Samsung, Apple should not now be heard

6   to complain about the volume of documents that it expressly requested.

7            Additionally, part of the volume of documents about which Apple complains is due to

8   Apple insisting that these types of documents be produced in prior productions.    In an

9   investigation before the U.S. International Trade Commission, specifically Investigation No. 337-

10  TA-794 (the "794 Investigation"), Apple argued that Samsung should produce documents

11  otherwise publicly available through 3GPP and ETSI that were also in the custody of the certain

12  inventors pertinent to that action.    Not only did Apple move to compel production of those

13  publicly available documents, but Apple also moved for sanctions arguing that "[h]ad Samsung

14  conducted a diligent and reasonable search of inventor files, it would have produced these

15  documents."   (Fazio Decl., Ex. 25, at 16.)    Indeed, Apple acknowledged that the documents at

16  issue were publicly available but, according to Apple, "[i]t is *Samsung's* responsibility to produce

17  responsive documents from its *own* inventors, and Apple's diligence in obtaining certain of these

18  documents by other means only underscores the deficiencies in Samsung's production – it does

19  not excuse them."   (*Id.*)

20           In this case, and in order to avoid comparable complaints from Apple in the 794

21  Investigation, Samsung produced exactly what Apple asked for—all responsive, non-privileged

22  documents from Messrs. Lee and Kim, *even the publicly available ones*.    These publicly

23  available documents constituted a majority of Samsung's custodial collections for Messrs. Lee and

24  Kim.    (Fazio Decl. ¶ 18.)    But they were documents publicly accessible by Apple long before

25  Samsung's document production was served on November 16, 2012.

26           Apple's argument really boils down to one of resources—that is, Apple appears to contend

27  that even with its three law firms and armies of contract attorneys reviewing documents day and

28  night, Apple was unable to complete their review in time for Messrs. Kim and Lee's depositions.

1   Given the near-limitless resources at Apple's disposal, the Court should reject Apple's argument

2   that it could not review approximately 126,000 documents for these two inventors over two

3   weeks.

4       **D.**   **Samsung's Subsequent Document Production of 6,600 Documents, Which Was**

5           **Made In Response To Apple's Belated Document Requests, Is No Reason To**

6           **Resume Mr. Lee's Deposition.**

7       Apple contends that "Samsung's production of over 27,000 pages of documents

8   [corresponding to 6,613 documents] from Dr. Lee's files weeks after his first deposition"

9   necessitates a second day of deposition.   (Mot. 1:23-24.)   But these additional documents were

10  produced in response to a separate, later document request—one that Apple served only 14 days

11  before Mr. Lee's deposition.   (*See* Fazio Decl., Exs. 26, 27; Fazio Decl. ¶ 29.)   In other words,

12  Samsung's time to respond was 16 days *after* the scheduled deposition.   None of the authorities

13  cited by Apple stand for the proposition that a party is entitled to an additional day of deposition

14  based on a production of documents that the party was not entitled to at the time of deposition.

15      In *Boston Scientific*, further deposition was granted because the deponent's party produced

16  additional documents it belatedly "discovered," without explanation, the day after the second

17  deposition—the document production was *not* in response to new and belated requests by the

18  movant.   *Boston Scientific Corp. v. Cordis Corp.*, No. 5:02CV1474 JW (RS), 2004 WL 1945643,

19  at *1-2 (N.D. Cal. Sept. 1, 2004).   Similarly, in the other case cited by Apple, *Saca v. J.P.*

20  *Molyneux Studio Ltd.*, the court permitted further deposition due to belated responses by the

21  defendant to *preexisting* requests for production, whereas Apple's requests here were not

22  propounded until days before the depositions.   *Saca v. J.P. Molyneux Studio Ltd.*, No. CIV S-06-

23  2818 MCE EFB, 2008 WL 802320, at *2 (E.D. Cal. Mar. 25, 2008).

24      **E.**   **Samsung is Entitled to Preserve its Objections and to Protect its Witnesses**

25          **From Abusive and Confusing Questions.**

26      Under the Federal Rules of Civil Procedure, counsel are required to make a reasonable

27  objection to the form of questioning; otherwise, evidence elicited will be admissible at trial.   To

28  avoid waiver in a deposition, courts have held that challenges to the form of questioning *must* be

1  made if the questions are leading, suggestive, ambiguous, uncertain, compound, or argumentative.

2  *BNSF Ry. Co. v. San Joaquin Valley R. Co.*, No. 1:08-cv-01086-AWI-SMS, 2009 WL 3872043, at

3  *2 (E.D. Cal. Nov. 17, 2009) ("Questions to which timely objections should be made during the

4  deposition include those which are leading or suggestive; ambiguous or uncertain; compound;

5  assume facts not in evidence; call for a narration; call for speculation or conjecture; or

6  argumentative.") (citations omitted).   If such objections are not timely made, they may be

7  waived.   *Universal Trading & Investment Co. v. Kiritchenko*, No. C-99-03073 MMC (EDL),

8  2007 WL 2300740, at *4 (N.D.Cal. Aug. 2, 2007).   Apple's apparent disagreement with some of

9  Samsung's objections or the fact that the objections must be translated into Korean does not justify

10  a "re-do" of depositions in this case.[5]

11      Further, the deposition records demonstrate that Samsung's counsel invariably stated

12  concise objections and the deponent proceeded to answer these questions.   For example, counsel

13  for Apple routinely asked questions of Samsung witnesses that implied a definition or claim

14  construction for terms at issue in this case, *e.g.*, "k" and "N."   Without interfering with the

15  deposition progress or the answer of the witness, Samsung concisely stated, "Objection.   Vague."

16  (*See, e.g.*, Fazio Decl., Ex. 28, at 37:8-19 (excerpts from the Young-Bum Kim deposition

17  transcript).)   These objections were proper and necessary, and hardly time consuming.   The

18  objections were not argumentative, did not suggest an answer to the witness, and preserved

19  Samsung's ability to later object to the use of the answer when the questions were ambiguous.

20      Further, counsel for Apple repeatedly asked Samsung's witnesses questions relating to

21  their interpretation of U.S. patent documents and U.S. patents that the witnesses had not prepared

22  and were not qualified to answer.   Counsel for Samsung properly objected on the grounds that

23  the question called for legal conclusion.   (*See, e.g.*, *id.* at 28:13-22, 29:17-21, 33:2-9.)   Notably,

24  Apple has repeatedly objected on similar grounds when their witnesses are deposed.   (*See, e.g.*,

25

26  [5]   Apple's Motion is silent as to the objections made during Mr. Lee's deposition.   Apple's

27  counsel ended Mr. Lee's deposition in less than seven deposition hours, and therefore Apple's counsel has no basis for arguing that objections during Mr. Lee's deposition hindered her ability to finish the deposition during the seven-hour day.

28

1    Fazio Decl., Ex. 29, at 70:17-21, 74:16-23, 75:4-9, 75:19-21 (excerpts from the Kenneth Kocienda

2    deposition transcript).)    Again, these objections were necessary to preserve Samsung's later

3    objection to the witnesses' answer.    Apple may have chosen to rephrase the questions to elicit

4    factual testimony.    In any event, Samsung was obligated to object to questions in the form of

5    legal opinions.

6          Moreover, this issue cannot be resolved by merely counting objections, as Apple does.    If

7    that were true, an attorney who poorly framed questions would get rewarded with extra deposition

8    days.    For example, Apple's counsel spent over an hour questioning Mr. Kim on a document he

9    did not remember that described a technology that was proposed by Lucent, not Samsung.    (Fazio

10   Decl., Ex. 28, at 84:8-103:24.)    Mr. Kim repeatedly testified that he did not recall any facts

11   related to this technology and that any answer he provided would be speculation.    Instead of

12   moving onto topics that Mr. Kim had knowledge of and could provide answers to, Apple's counsel

13   continued asking the same objectionable questions, wasting his own deposition time.    This is not

14   grounds to resume a deposition.

15   **II.    IF THE COURT ORDERS THAT MESSRS. LEE AND KIM'S DEPOSITIONS BE**

16        **RESUMED, THEN THOSE DEPOSITIONS SHOULD TAKE PLACE IN SUWON,**

17        **SOUTH KOREA.**

18         Apple contends that Messrs. Kim and Lee should travel to the United States for their

19   resumed depositions.    (*See* Mot. 13:15 to 14:9.)    Even if the Court were to find that Messrs. Lee

20   and Kim's depositions should be resumed, those depositions should occur in Suwon because that

21   is what the parties already agreed to: "*Both depositions will occur in Suwon.*"    (Fazio Decl., Exs.

22   12, 13 (emphasis added).)    And even if the parties did not already make this agreement, case law

23   supports holding these depositions in Suwon.

24         There is a general presumption that "the deposition of a corporation by its agents and

25   officers should ordinarily be taken at its principal place of business, especially when . . . the

26   corporation is the defendant," and that the burden is on the deposing party to show "peculiar

27   circumstances" to rebut this presumption.    *Salter v. Upjohn Co.*, 593 F.2d 649, 651-52 (5th Cir.

28   1979) (citations omitted).    Apple fails to rebut this presumption.    Instead, Apple seems to

1   contend that because Samsung has counterclaimed in this case, it "should be in the same position

2   as a party plaintiff which selected the forum."   (Mot. 14:6-9.)   Apple's contention, however, is

3   not supported by case law.

4        In refusing to require a foreign defendant to travel to the forum district for deposition,

5   courts hold that the presumption in favor of deposing a corporate employee at the corporation's

6   principal place of business applies equally to a defendant that asserts counterclaims.   *See, e.g.*,

7   *Rapoca Energy Co., L.P. v. AMCI Exp. Corp.*, 199 F.R.D. 191, 194 (W.D. Va. 2001) (finding that

8   "the fact that [defendant] has filed a permissive counterclaim" is insufficient "to overcome the

9   presumption that the depositions of its officers should be taken in the district of [defendant's]

10  principal place of business").   Courts recognize that regardless of whether a corporate

11  defendant's counterclaim is permissive or compulsory, "it would be unfair to require Defendant's

12  corporate representatives to travel here [to the forum district] simply because it made the

13  determination that economy would be served by the same court hearing" its counterclaims.   *See*

14  *Tailift USA, Inc. v. Tailift Co., Ltd.*, No. 3:03-CV-0196-M, 2004 U.S. Dist. LEXIS 28648, *11-12

15  (N.D. Tex. Mar. 26, 2004) (citations omitted).   Thus, contrary to Apple's assertion, Samsung's

16  counterclaims do not change the caption of this case and transform Samsung into a plaintiff for

17  purposes of these depositions.

18       Apple musters one case, *Continental Federal Sav. And Loan Ass'n v. Delta Corp of*

19  *America*, 71 F.R.D. 697 (W.D. Okla. 1976), that Apple contends supports its position that "for

20  permissive counterclaim[s], defendant should be 'in the same position as a party plaintiff which

21  selected the forum.'"   *Id.* at 700.   *Continental* is distinguishable because the plaintiff in that case

22  sought testimony on Rule 30(b)(6) topics relating *solely* to the defendant's counterclaims.   *See id.*

23  at 699 ("[I]t is urged that the matters to which the discovery requested is directed relate to

24  Defendant's Counterclaim and in particular request information as to the alleged damages sought

25  by way of same against Plaintiff.").   By contrast, here, Apple also seeks to depose these Samsung

26  inventors regarding Apple's affirmative antitrust and FRAND-related causes of action.   (*See* ECF

27  No. 262, ¶¶ 159-183.)   In fact, when Apple deposed six of these seven Samsung inventors in the

28  11-CV-01846 action, Apple questioned them at length regarding Samsung's participation in 3GPP

1   and ETSI.    Apple later extensively relied on these inventors' testimony and custodial documents

2   in moving for summary judgment on its FRAND counterclaims.    (*See Apple v. Samsung*, 11-CV-

3   01846, ECF No. 660-3.)    Apple even went so far as to argue that it was entitled to maintain its

4   antitrust and FRAND claims, even as to Samsung counterclaims that had been dismissed from the

5   case.    (Fazio Decl., Ex. 30, at 140:22-144:20 (excerpts from the July 18, 2012 hearing transcript

6   in *Apple v. Samsung*, 11-CV-01846).)    Therefore, unlike the scenario presented in *Continental*,

7   Apple seeks testimony on issues well beyond Samsung's asserted counterclaim patents.

8          *Continental* is further distinguishable because the deponents were corporate officers,

9   whereas these seven Samsung inventors are ordinary employees.    Courts distinguish between

10  depositions of corporate officers and ordinary employees, such as the named inventors here,

11  finding that ordinary employees should be deposed where they reside.    *See, e.g.*, *Archer Daniels*

12  *Midland v. Aon Risk Services, Inc.*, 187 F.R.D. 578, 587-88 (D. Minn. 1999) (holding plaintiff

13  could insist on its lower level employees being deposed in the State of their residence, or their

14  principal place of employment); *Armsey v. Medshares Mgmt. Servs.*, 184 F.R.D. 569, 571-72

15  (W.D. Va. 1998) (ordering corporation to make available its officers, but not its employees,

16  available for deposition in the forum).

17         Importantly, it was Apple that chose to initiate this litigation just ten miles from its

18  corporate headquarters.    Samsung asserted counterclaims in the interest of economy, particularly

19  in light of the familiarity of Judge Koh and Judge Grewal with the parties and the legal issues

20  surrounding standards-essential patents.    As Apple would have it, corporate defendants would

21  not be able to protect their employees from the burden of traveling to a distant forum for

22  deposition without asserting permissive counterclaims in separate litigation.    Such a position is

23  not only contrary to the weight of authority, it would encourage wasteful uses of judicial

24  resources.

25         The additional case cited by Apple, *Cadent v. 3M Unitek Corp.*, 232 F.R.D. 625 (C.D. Cal.

26  2005), is also distinguishable.    In *Cadent*, it was the plaintiff, an Israeli corporation that chose to

27  bring suit in the district of defendant's principal place of business, and then plaintiff refused to

28  offer its witnesses for deposition in the district of its choosing.    *Id.* at 627-28.    Further, in that

1    case the proposed alternate forums were either "a dangerous place to hold the depositions" or were

2    unrelated to plaintiff's principal place of business.   *Id.* at 630.   Here, there is no such concern.

3                                          **CONCLUSION**

4              For the foregoing reasons, Samsung respectfully requests that the Court rule that Apple's

5    Motion to Compel Production of Documents is moot.   Samsung further respectfully requests that

6    the Court deny Apple's Motion to resume the depositions of Young-Bum Kim and Ju-Ho Lee.

7

8    DATED: April 1, 2013                    QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
9

10

11                                          By */s/ Michael L. Fazio*
                                               Michael L. Fazio
12                                             Attorney for SAMSUNG ELECTRONICS CO.,
                                               LTD., SAMSUNG ELECTRONICS AMERICA,
13                                             INC., and SAMSUNG
                                               TELECOMMUNICATIONS AMERICA, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28