JOSH KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

WILLIAM F. LEE (pro hac vice)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

***Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.***

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

APPLE INC., a California Corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

---

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Counterclaim-Plaintiffs,

v.

APPLE INC., a California corporation,

Counterclaim-Defendant.

CASE NO. 12-cv-00630-LHK (PSG)

**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO PRICING OF APPLE PRODUCTS**

**<u>HEARING</u>:**

Date: Thursday, April 11, 2013
Time: 10:00 a.m.
Place: Courtroom 5, 4th Floor
Judge: Honorable Paul S. Grewal

## TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. ARGUMENT ........................................ 4

A. The Documents Samsung Seeks Have No Relevance to Apple's Damages Claim Against Samsung ........................................ 5

B. The Documents Samsung Seeks Have No Relevance to Samsung's Damages Claim Against Apple ........................................ 8

C. Samsung Has Set Forth No Basis for its Facially Unreasonable Demand for "All Documents" Relating to Pricing of Every Apple Product ........................................ 9

IV. CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

## Cases

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 11-cv-1846-LHK (PSG), 2012 WL 1413385 (N.D. Cal. Apr. 23, 2012) .................. 3

*Bayer AG v. Betachem, Inc.*, 173 F.3d 188 (3d Cir. 1999) .................. 9

*Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200 (D. Col. 2010) .................. 8

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993) .................. 6

*Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001) .................. 6

*Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369 (Fed. Cir. 2003) .................. 5

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971) .................. 5, 7

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) .................. 10

*Green v. Baca*, 219 F.R.D. 485 (C.D. Cal. 2003) .................. 10

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143 (N.D. Cal. 2007) .................. 6

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) .................. 5, 9

*State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989) .................. 5

*TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F. 2d 895 (Fed. Cir. 1986), *cert denied*, 479 U.S. 852 (1986) .................. 8, 9

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) .................. 6, 7, 8

# I. INTRODUCTION

Samsung asks this Court to order Apple to produce "all documents" relating to the pricing of essentially all of Apple's products, including "all iPhones, iPads, iPod Touches, Apple computers, Apple TV, iCloud, iTunes, and any other products identified in any of Samsung's complaints or infringement contentions." Samsung's Mot. to Compel Production of Documents Relating to Pricing of Apple Products, Mar. 19, 2013 (D.I. 404) ("Mot."), at ii, 1. Samsung's overreaching demand is both unsupported by Samsung's own cited authority and inconsistent with Samsung's own document production. Indeed, Samsung's motion consists of little more than two pages of string cites to cases that, when actually analyzed, show that the pricing information that Apple has already agreed to produce is all that is relevant or required. Moreover, Samsung's suggestion that its production of "Pumi" reports justifies Samsung's demand is contrary to the reports themselves, which contain nowhere near the information Samsung asks this Court to compel from Apple. In fact, Samsung produced those reports only because this Court compelled Samsung to do so in the prior case based on their inclusion of *profitability* information – not because they relate to pricing strategy. Samsung's cases and conduct demonstrate that the documents it demands are *not* relevant, that its request is unreasonably broad, and that Samsung's motion should be denied.

Apple does not dispute its obligation to produce detailed information showing the actual price of its products or the profitability of its products. Nor does Apple dispute its obligation to produce documents relating to the value of the accused functionality and to competition with Samsung, whether or not such documents reference price. Apple does dispute, however, the relevance of generic documents relating to pricing "strategy" that are untethered to competition with Samsung or to any of the technology at issue in this case. Generalized commentary about product pricing is simply not relevant to any issue in the case, including damages. It is actual price, not a party's musings about how to set price, that is relevant to the damages analysis. Indeed, neither Apple nor Samsung relied on "pricing strategy" information in Case No. 11-cv-1846 (the "1846 case"), an undeniably high-stakes patent case where billions of dollars were at stake. There is nothing about this case that would make these documents any more relevant here.

Samsung should not be permitted to subject Apple to the tremendous burden of collecting volumes of irrelevant and sensitive pricing documents that not even Samsung will produce, that neither party used in the 1846 case, and that no one will use in this case. For all of the forgoing reasons, Samsung's motion should be denied.

## II. BACKGROUND

Apple has already agreed to produce the relevant pricing information in this case. Apple long ago committed to produce actual price information for all of the Apple products that Samsung has accused in this case, or that Apple contends embody the patented features of Apple's patents. *See, e.g.*, Decl. of Amar L. Thakur in Support of Samsung's Mot. to Compel Production of Documents Relating to Pricing of Apple Products, Mar. 19, 2013, ("Thakur Decl."), Ex. B (D.I. 404-3), at 56. Over the parties' months-long meet and confer process, Samsung failed to provide any explanation as to why this production would be insufficient, and never explained how additional "pricing strategy" information could be relevant. Indeed, in the numerous discovery letters that Samsung cites to in its motion, Samsung points to nothing more than one unhelpful sentence, pasted over and over again, purporting to address the relevance of this information. Samsung writes that "documents relating to the decision to set the ultimate price are relevant to the overall valuation of the product and Samsung's damages claims." *See Id.*, Ex. C (D.I. 404-4), at 10 (emphasis removed); *Id.*, Ex. E (D.I. 404-6), at 8; *Id.*, Ex. G (D.I. 404-8), at 8; *Id.*, Ex. H (D.I. 404-9), at 6-7. That is not an intelligible basis for a motion to compel.

Samsung did not press for this pricing strategy information because Samsung had itself taken the position that even *basic* pricing information was completely irrelevant. Indeed, Samsung makes much of the fact that Apple served its own (more specifically tailored) request on Samsung seeking pricing information:

> **REQUEST FOR PRODUCTION NO. 232:** "Documents sufficient to show Samsung's pricing, pricing practice or policies, and changes in pricing with respect to each Samsung Covered Product you claim embodies any invention claimed in any claim of any of the Samsung Patents-In-Suit, including without limitation, documents concerning price lists, pricing worksheets, marketing/pricing memoranda, sales correspondence, or price quotations."

Mot. at 3.

Despite the greater focus of this request – requesting the actual price, price worksheets, and changes in price – Samsung fails to explain in its briefing that it objected to this request in its entirety, and initially did not agree to produce a single responsive document. *See* Apr. 2, 2013 Decl. of Michael Valek in Support of Apple's Opp'n ("Valek Decl."), Ex. 1, Samsung's Objs. and Responses to Apple's Request No. 232. Samsung also neglects to mention that a primary basis for refusing to produce was *relevance*. *See id.*

Only recently, after Samsung realized that Apple would compel Samsung to produce its Pumi reports if Samsung continued to refuse to produce them, did it change its position and pursue pricing *strategy* documents in earnest. Indeed, Samsung knew that it could not avoid production of the Pumi reports in this case because Apple obtained an order compelling their production in the 1846 case. *See* Apple's Rule 37(b)(2) Mot. Re Samsung's Violation of Jan. 27, 2012, Damages Discovery Order, Feb. 28, 2012, Case No. 11-cv-1846-LHK (PSG) (D.I. 759) ("Apple 1846 Mot."), at 13 (discussing Pumi reports as documents falling within scope of prior proposed order concerning discovery); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 11-cv-1846-LHK (PSG), 2012 WL 1413385, at *9 (N.D. Cal. Apr. 23, 2012). Apple did not demand the Pumi reports in the 1846 case because they contain pricing strategy information, but because they pertain to profitability, which is undeniably relevant. *See* Apple 1846 Mot., at 13. Samsung now argues that because it has to produce Pumi reports, and because they happen to contain information about product prices, Apple must produce every pricing document regarding every product in its possession. *See* Mot. at 3.

Pumi reports, however, are not the detailed "pricing documents" sought by Samsung in its motion. Indeed, based on the few Pumi reports Apple has seen, they appear to contain a "broad array" of "financial, marketing, and technical information relating to Samsung's accused products," but do not contain what Samsung demands – *i.e.*, "(1) internal analysis by [Samsung] of how it determines pricing for its products; (2) price elasticity/price sensitivity studies relating to the accused products; (3) documents discussing any price premiums that incorporate the patented features; and (4) discussions of pricing with wireless carriers, who heavily subsidize [Samsung's] products." *See*

Thakur Decl., Ex. J (D.I. 404-11), at 1; Mot. at 4. That Samsung failed to attach even one exemplary Pumi report to its motion is telling.[1] At bottom, the Pumi reports are a red herring.

Given that the Pumi reports do not contain the detailed pricing strategy information that Samsung demands, Apple sought a clear and definitive representation from Samsung regarding what pricing information it intends to produce. *See* Valek Decl., Ex. 4. Samsung responded with nothing more than a vague and qualified representation that it would produce Pumi reports that are "relevant" to this litigation, and that Samsung would produce other "responsive" documents "similar in scope" to its Request. *See* Valek Decl., Ex. 5. Samsung has not stated with any specificity what it will produce beyond the Pumi reports and has not represented that it will produce "all documents relating to pricing."

## III. ARGUMENT

The pricing strategy documents that Samsung seeks are not relevant to either party's case. In its motion, Samsung does not demonstrate otherwise, but cites to a series of general damages cases that establish nothing more than the undisputed point that actual price is relevant to a lost profits or reasonable royalty analysis. But that argument misses the point. Apple does not dispute that information regarding actual price is relevant, and Apple has agreed to produce that information. Apple's point is that generalized information regarding pricing "strategy," wholly untethered to the patented features or competition with Samsung, is irrelevant. Samsung's own conduct, as discussed above, shows that even Samsung knows that to be the case. Apple further objects to the facially unreasonable scope of Samsung's request – "all documents" relating to pricing of essentially every Apple product – which Samsung has no intention of itself producing regarding its own products. As discussed below, none of the authority Samsung cites supports the unprecedented and overreaching

---

[1] During the meet and confer discussions, Samsung identified only one Pumi report to support its demand for pricing strategy information. *See* Valek Decl. ¶ 4. That report, however, contains only high-level pricing information. It does not contain any information about how Samsung's prices were actually derived, or anything resembling the detailed analyses of pricing strategy, price elasticity, price premiums, particular accused features, or carrier subsidies that Samsung now demands. *See* Valek Decl., Exs. 2, 3.

order that Samsung seeks from this Court, and its own discovery conduct further undermines the position it now takes before this Court.

**A. The Documents Samsung Seeks Have No Relevance to Apple's Damages Claim Against Samsung**

Information regarding Apple's general pricing "strategy" is not relevant to Apple's damages claim against Samsung. Indeed, it is actual price, not a party's thought process at arriving at that price, that is at the heart of a damages case. Under a *Georgia-Pacific* analysis, reasonable royalties are assessed against actual revenues and actual units sold, all of which flow from actual prices. Not one of the 15 *Georgia-Pacific* factors suggests that pricing strategy information should inform a reasonable royalty analysis. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), mod. and aff'd, 446 F.2d 295 (2d Cir. 1971), cert. denied, 404 U.S. 870 (1971). Similarly, a lost profits analysis focuses on the actual profits that the patentee would have made "but for" infringement. *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). In a case like this one, where the patentee is not claiming that it could have charged a higher price but for infringement, it is actual price (less cost) that drives the calculation.[2] What a party may have been thinking when it set that price is wholly irrelevant. It is for this reason that neither Apple nor Samsung relied on "pricing strategy information" in the 1846 case.

It is consequently of no surprise that not one of the six cases that Samsung cites in its section about Apple's damages claims even discusses "pricing strategy," let alone holds that this information is relevant to the damages analysis. Samsung does not suggest otherwise in its brief. These are run-of-the mill damages cases, and the most that they suggest about price (if anything) is that *actual price* is relevant.

Samsung incorrectly suggests that it needs pricing strategy information in order to assess the overall value of Apple's patented features to the products as a whole. Samsung, for example, cites to

---

[2] Samsung relies on *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378 (Fed. Cir. 2003), a case about lost profits under a theory of price erosion. *See* Mot. at 4-5. That case is entirely inapposite here, as Apple is not asserting a price erosion theory in this case.

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993), to argue that it requires documents covering the "incremental value" of the patented technologies to rebut Apple's claim for lost profits. *See* Mot. at 4. This case does not support Samsung's argument. To the contrary, *BIC Leisure* underscores that actual price is what is important. Indeed, in its decision reversing an award of lost profits, the *BIC Leisure* court found that the actual prices of the infringing product and the patentee's products were too disparate to support a finding that the companies competed for the same customers. *BIC Leisure*, 1 F.3d at 1218-19. The court paid no attention to, nor did it even inquire into, the respective companies' pricing strategies, or whether the patented features contributed to price. *Id.* In any event, Apple has already produced, and will continue to produce, documents related to the patented features in response to other, more specific requests. *See, e.g.*, Valek Decl., Ex. 6, Apple's Objs. and Responses to Samsung Request Nos. 320-21; *id.*, Ex. 7, Apple's Objs. and Responses to Samsung Request Nos. 432-33. To the extent these feature-related documents contain pricing information, Apple has, or will, produce that information.

Samsung next wrongly suggests that it needs pricing strategy information in order to assess the degree of competition between Apple and Samsung, *e.g.*, as reflected by price disparity between the companies' products. *See* Mot. at 4-5 (citing *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1355-56 (Fed. Cir. 2001); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1155-56 (N.D. Cal. 2007); *BIC Leisure Prods.*, 1 F.3d at 1218-19). Again, the cases Samsung cites do not suggest that pricing *strategy* information, as opposed to information about the actual prices charged, is needed to compute damages. In *Crystal Semiconductor*, for example, the court noted that the "patentee must show that the infringing units do 'not have a disparately higher price than or possess characteristics significantly different from the patented product.'" *Crystal Semiconductor*, 246 F.3d at 1356 (citing *BIC Leisure*, 1 F.3d at 1219). In any event, Apple has already produced and will continue to produce documents related to competition with Samsung in response to more specifically tailored requests. *See, e.g.*, Valek Decl., Ex. 8, Apple's Objs. and Responses to Samsung Request No. 84.

Additionally, Samsung, citing *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1318 (Fed. Cir. 2011), wrongly argues that it needs pricing strategy information to determine the

applicability of the "entire market value rule." Mot. at 5. Again, this case does not suggest that pricing strategy information is relevant to the inquiry. As explained in *Uniloc*, the "entire market value rule allows a patentee to assess damages based on the entire market value of the accused product only where the patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component.'" *Id.* at 1318 (citation omitted). Clearly, while the entire market value rule requires an assessment of whether the patented feature constitutes consumer demand, it ultimately focuses on the actual price charged for an accused product. Samsung cites no case that supports its demand for the production of pricing strategy documents to determine the applicability of the entire market value rule.

Finally, Samsung argues that "pricing documents" are relevant to Apple's reasonable royalty demand under *Georgia-Pacific*. Mot. at 5. Notably, Samsung does not even *say* in this portion of its brief that pricing *strategy* information, as opposed to the actual pricing information Apple has agreed to produce, is relevant to *Georgia-Pacific* analysis. Samsung was right not to, because, as discussed above, *Georgia-Pacific* does not mention pricing strategy, and none of the factors require an assessment of the strategy behind setting actual prices.

Samsung has not shown how pricing strategy information is needed to rebut Apple's damages case. That fact is highlighted by the very language of the request that Samsung now seeks to enforce. The request is not directed toward Apple's damages theories or products that embody Apple's patents at all, but rather seeks pricing information related only to the "APPLE ACCUSED PRODUCTS" – *i.e.*, the products that Samsung has accused of infringing Samsung's patents this case.[3] Samsung plainly served this request in furtherance of its own theories, not to respond to Apple's. The actual pricing information that Apple has agreed to produce, together with the host of other information Apple has agreed to produce in response to Samsung's more narrowly tailored requests, is more than sufficient for Samsung to respond to Apple's damages demands.

---

[3] It is only because Samsung's infringement allegations are so broad, and for no other reason, that this request fortuitously covers the products that Apple contends embody its own patents.

### B. The Documents Samsung Seeks Have No Relevance to Samsung's Damages Claim Against Apple

Apple's pricing strategy information is similarly irrelevant to Samsung's damages case, both as to the reasonable royalty and lost profits analysis. For the reasons already discussed above, it is the actual price of Apple's products that is relevant to the issue of damages and *not* Apple's "strategies" regarding how it sets those prices.

Without providing any explanation or citing any supporting case law, Samsung asserts that Apple documents relating to pricing strategy and Apple's discussions with carriers are relevant to a *Georgia-Pacific* reasonable royalty analysis. Mot. at 5. As discussed above, the key inquiry for the *Georgia-Pacific* analysis is evidence "tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Uniloc USA, Inc.*, 632 F.3d at 1318. Relevant factors included within this inquiry are the actual price of the accused products, the number of units sold, any profits from the sale of the accused products, and the costs associated with the accused products, all of which Apple has produced or has agreed to produce.

It is Samsung's overreaching demand for Apple pricing documents that undisputedly do not discuss or relate to the patented technology that Apple objects to, and Samsung has not offered any authority suggesting that those documents are relevant. Indeed, the only case that Samsung cites in its entire brief that even relates to pricing strategy is a decision from the District of Colorado. Mot. at 5 (citing *Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 212-213 (D. Col. 2010)). The *Biax* case does not support the broad relief requested by Samsung. Significantly, the court in *Biax* did not issue an order compelling the defendant to produce "all documents" relating to "pricing," but rather, in the context of ruling on a much larger number of document requests not at issue here, granted certain requests for pricing information and denied others, with essentially no explanation. *Id*. There is nothing in this decision that suggests that "all documents related to pricing" are relevant. Mot. at ii, 4. That Samsung could find no other authority for its motion beyond this one isolated case is telling.

Next, Samsung incorrectly asserts that its requests for all pricing documents are relevant to calculation of damages under the "analytical approach" discussed in *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F. 2d 895, 899 (Fed. Cir. 1986), cert denied, 479 U.S. 852 (1986). Mot. at 5-6. The "analytical approach" used in *TWM Mfg.* compares the infringer's usual profits with anticipated or

projected profits for devices employing the allegedly infringing features. 789 F.2d at 899. Specifically, in performing the "analytical approach" calculation, the court took the alleged infringer's projected gross profit from infringing sales and subtracted overhead expenses and the industry standard net profit to determine the reasonable royalty rate. *Id.* Therefore, the "analytical approach" in *TWM Mfg.* requires only profit and expense information, which Apple has already produced or has agreed to produce. Contrary to Samsung's allegations, *TWM Mfg.* does not even mention, much less rely on, pricing strategy in its calculation of a reasonable royalty rate under the "analytical approach." *Id.*

Lastly, Samsung attempts to argue that Apple's pricing strategy information is necessary to assess the incremental value of the Samsung patented features with respect to Apple's products. Mot. at 6. Again, Samsung offers no explanation regarding why a general Apple document discussing how prices are set at the product level has any bearing on the value of the specific Samsung patented features at issue in this case. Samsung does not even attempt to show how this information would be relevant under the *Panduit* test for determining lost profits. *See Panduit*, 575 F.2d at 1156. In any event, Apple will produce documents related to the accused features in response to other, more specific requests. To the extent these feature-related documents contain pricing information, such information has been, or will be, produced.

Samsung has failed to carry its burden of demonstrating relevance, and its motion should be denied.

### C. Samsung Has Set Forth No Basis for its Facially Unreasonable Demand for "All Documents" Relating to Pricing of Every Apple Product

Samsung offers no argument, authority, or justification for the incredibly broad scope of its request, which Samsung has asked this Court to enforce to its full extent. Apple is a large and successful company, and a request for "all documents" relating to pricing of nearly every one of its products is plainly overbroad on its face. This Court, and other courts, have refused to enforce overbroad requests on this basis alone. *See, e.g.*, *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir. 1999) (affirming district court's denial of discovery where "the aims of discovery were more than met by the [ ] information being furnished") (internal quotation marks omitted); *Green v. Baca*,

219 F.R.D. 485, 490 (C.D. Cal. 2003) (determining that "[i]t is within the discretion of a court ruling on a motion to compel" to "narrow the requests" or to "sustain the responding party's objections to them in toto" if "the requests are vague, ambiguous or overbroad"); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) ("Overbroad subpoenas seeking irrelevant information may be quashed or modified.") (citations omitted). The overbreadth of Samsung's request is particularly problematic here, where it seeks volumes of sensitive business material from a competitor.

Finally, Samsung has not, despite its suggestions to the contrary, undertaken to produce anything approaching the scope of the information that Samsung demands from Apple. To the extent the Court does grant Samsung's motion, Apple requests that the Court order Samsung to provide Apple with a production of the same scope.

## IV. CONCLUSION

Apple should not be subject to the burden of collecting volumes of irrelevant pricing documents that not even Samsung will produce, that neither party used in the 1846 case, and that no one will use in this case. For all of the forgoing reasons, Samsung's motion should be denied.

GIBSON, DUNN & CRUTCHER LLP

Dated: April 2, 2013

By: */s/ H. Mark Lyon*
H. Mark Lyon
***Attorney for Plaintiff Apple Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil Local Rule 5.4, and will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have consented to electronic service in accordance with Civil Local Rule 5.4 via the Court's ECF system.

Dated: April 2, 2013

By: *[/s/ H. Mark Lyon]*

H. Mark Lyon