| | | |
|---|---|---|
| 1 | JOSH A. KREVITT (CA SBN 208552)<br>jkrevitt@gibsondunn.com | WILLIAM F. LEE (pro hac vice)<br>william.lee@wilmerhale.com |
| 2 | H. MARK LYON (CA SBN 162061)<br>mlyon@gibsondunn.com | WILMER CUTLER PICKERING<br>HALE AND DORR LLP |
| 3 | GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road | 60 State Street<br>Boston, Massachusetts 02109 |
| 4 | Palo Alto, CA  94304-1211<br>Telephone: (650) 849-5300 | Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000 |
| 5 | Facsimile: (650) 849-5333 | |
| 6 | MICHAEL A. JACOBS (CA SBN 111664)<br>mjacobs@mofo.com | MARK D. SELWYN (CA SBN 244180)<br>mark.selwyn@wilmerhale.com |
| 7 | RICHARD S.J. HUNG (CA SBN 197425)<br>rhung@mofo.com | WILMER CUTLER PICKERING<br>HALE AND DORR LLP |
| 8 | MORRISON & FOERSTER LLP<br>425 Market Street | 950 Page Mill Road<br>Palo Alto, CA 94304 |
| 9 | San Francisco, California 94105-2482<br>Telephone: (415) 268-7000 | Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100 |
| 10 | Facsimile: (415) 268-7522 | |

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., a California corporation,

    Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

    Defendants.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

    Counterclaim-Plaintiff,

v.

APPLE INC., a California corporation,

    Counterclaim-Defendant.

CASE NO. 12-cv-00630-LHK  (PSG)

**DECLARATION OF MARK BUCKLEY IN SUPPORT OF APPLE'S RENEWED SEALING MOTION**

BUCKLEY DECLARATION IN SUPPORT OF APPLE'S SEALING MOTION
12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

I, Mark Buckley, declare and state as follows:

1. I am an employee of Apple, Inc. ("Apple"), where I am employed as a Finance Manager. As part of my role, I am very familiar with financial information and systems at Apple, and the efforts Apple takes to ensure sensitive financial information is kept confidential. I submit this declaration in support of Apple's motion regarding sealing, filed contemporaneously herewith. I have personal knowledge of the matters set forth below. If called as a witness I could and would competently testify as follows.

2. Apple seeks to seal documents or portions of documents that contain or reference highly sensitive, non-public Apple financial data, the public release of which would critically harm Apple:

   a. Figure 13 in paragraph 72 of the Declaration of Michael J. Wagner in support of Samsung's Opposition to Apple's Motion for Preliminary Injunction ("Wagner Declaration");

   b. Exhibits B, L, XX, YY, ZZ, AAA, BBB, and III to the Wagner Declaration; and

   c. Exhibit 4 to the Declaration of Chris Vellturo in support of Apple's Reply in support of Apple's Motion for Preliminary Injunction ("Reply Vellturo Declaration").

3. In particular, these documents contain Apple's specific and current financial information (as well as data for a few preceding years for context), which includes breakdowns of revenue, sales, costs, and profit margins for various Apple product lines and other sources of revenue, including licensing revenue. Such product line breakdowns, for example, distinguish between the iPhone 4S and the iPhone 4 in the iPhone product line. This confidential financial data is not included in Apple's SEC filings and is not otherwise disclosed to the public, for example during Apple's earnings calls. Furthermore, certain of this confidential financial information relates to products that Apple continues to sell. Apple does release some limited financial information regarding entire product lines, such as the entire iPhone product line or the entire iPad product line, during its earnings calls and in its SEC filings, but even in those situations, Apple does not release all of the significantly more detailed financial information contained in these documents here – and does

not release information for individual product models. Such information thus provides far more insight into Apple's operating expenses and finances than Apple has previously disclosed to the public—or is disclosed in practice by other companies in Apple's industry, and particularly Apple's competitors. Exposure of this financial information, currently kept confidential, to the public would cause Apple severe harm.

4. Apple strictly maintains the confidentiality of this information even within Apple. Apple goes to extensive lengths to protect the confidentiality of its financial information. Apple's highly sensitive financial data is in fact among the most painstakingly protected information at the company, on par with source code. Only a limited number of individuals are authorized to receive this information, even within Apple, and on a need-to-know basis. Apple limits the individuals knowledgeable about this detailed financial information to only those who need to know in order to perform their normal job responsibilities, and requires those individuals to maintain this data in the strictest of confidentiality. For example, Apple restricts system access to its nonpublic financial information to a small list of individuals who have been approved by a Vice-President of Finance. This is reviewed at least once every quarter and revised as appropriate to ensure that Apple employees who no longer need access do not receive the information. I am not aware of Apple ever sharing this information with its vendors. Additionally, while Apple endeavors to not share its nonpublic financial data—including cost data, product line details, breakdowns of revenue, licensing revenue, and profit margins—with third parties, in the rare instance when it is required to share any nonpublic financial data with third parties, Apple insists on very restrictive nondisclosure agreements and/or protective orders. Apple therefore maintains this information as highly confidential in the ordinary course of business and does not disclose it publicly.

5. As explained in declarations submitted by other Apple personnel in connection with Apple's motion to seal such financial information submitted during the earlier case pending between Apple and Samsung, Case No. 11-cv-1846, such as the July 30, 2012 Declarations of Jim Bean, disclosure of the specific financial information at issue here would cause Apple severe harm.

6. The financial information that Apple seeks to seal here is some of the most sensitive of Apple's financial information. For example, while Apple views even general profit margin

information across different products—and for not just the present, but also historically and over a lengthy period of time—to be confidential and competitively sensitive, specific cost, profit margin, and operating expense information for particular products and product lines is even more so because it has the most value to companies seeking to compete with Apple. Indeed, even with respect to entire product lines, for which Apple discloses limited financial information, there is much more specific information at issue here, such as Apple's costs, profit margins, and operating expenses, that would cause severe harm to Apple if it were to be publicly disclosed. Moreover, the historical data showing the evolution of Apple's sales, costs, profit margins, and operating expenses would give Apple's competitors and vendors insight into Apple's cost structure and how and why Apple has made strategic decisions based on such financial information. Apple's profit and loss data for particular products is only shared with a very limited group of people, including, for example, the company's CFO, CEO, Board, and Executive Team. It is not shared externally. Apple even precludes its OEM suppliers from having visibility into its cost structure. Although many companies in the industry have their OEM suppliers buy directly from component manufacturers, Apple buys from these manufacturers itself and provides the component parts to the OEMS so they are not aware of the cost of Apple's products.

7. For the reasons explained above, and to be explained, it would cause severe competitive harm to Apple if the specific and substantial financial information contained in these documents, namely, Figure 13 in paragraph 72 of the Wagner Declaration, Exhibits B, L, XX, YY, ZZ, AAA, BBB, and III to the Wagner Declaration; and Exhibit 4 to the Reply Vellturo Declaration, were publicly disclosed. The financial information contained in these documents provide a detailed overview of the financial information for Apple's mobile products that Apple relies upon in determining which products to sell and how to position them in the market, and the services and offerings that Apple provides with such mobile products. Public disclosure of this information would thus permit Apple's competitors to tailor their product offerings, advertising, costs, budgets, and business strategies to more effectively compete with Apple. As just one example, this data—current and historical, and including data for products that Apple continues to sell—would enable Apple's competitors to learn exactly which iPhone models have been the most profitable during which

particular periods, as well as the specific distribution of sales across Apple's iPhone models, and to alter their development priorities, product offerings, and marketing strategies to counter Apple accordingly. Indeed, this information would inform Apple's competitors about how many of each type of model are sold by Apple, as well as Apple's operating expenses for iPhones across time. As another example, this data reveals detailed breakdowns of financial information for various sources of revenue for Apple, including, for example, iTunes, accessories, and mobile advertising. Apple protects this detailed information as highly confidential and proprietary. Based on this information, Apple's competitors could learn which services to focus on in competing with Apple's offerings, and how to compete even within a particular service. Thus, by learning the specific distribution of revenue for the various content provided in iTunes, such as how much revenue derives from songs versus movies versus apps and mobile advertising, Apple competitors would be able to determine how to distribute their content in order to best match Apple's distribution.

8. Moreover, access to Apple's cost and profit information, and knowledge of the various expenses that Apple faces, thus would give competitors a substantial and unfair advantage over Apple. Apple's expenses and cost and profit information would also provide an economic boon to Apple's competitors if disclosed, giving them a substantial and unfair advantage over Apple. Apple does not follow any formula for setting its margins, nor does it follow an industry standard—the specific margins set for particular products are unique to Apple and they are not publicly disclosed. As a result, competitors could only learn this information from disclosure of Apple's confidential internal documents. Competitors could then tailor their product offerings and pricing to undercut Apple. For example, the detailed information at issue here could permit Apple's competitors to identify the best-selling products, or the specific products and product lines where they could most successfully undercut Apple's pricing, and choose to focus on those models. Similarly, competitors could use such information to determine exactly what price level would make a given product unprofitable to Apple, and target their product offerings at exactly that price, or otherwise identify the products on which Apple has substantial profits, low costs, and wide margins, and thus would be most susceptible to a price cut. Even if competitors' products are not identical to the Apple products in question, the price of such competitor products do affect the demand for Apple's products.