1  Amy H. Candido (Bar No. 237829)
   amycandido@quinnemanuel.com
2  Matthew S. Warren (Bar No. 230565)
   matthewwarren@quinnemanuel.com
3  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   50 California Street, 22nd Floor
4  San Francisco, California 94111-4788
   (415) 875-6600
5  (415) 875-6700 facsimile

6  *Attorneys for Non-Party Google Inc.*

7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　Defendants. | Civil Case No. 5:12-cv-630-LHK-PSG<br><br>**GOOGLE'S OPPOSITION TO APPLE'S MOTION TO COMPEL DISCOVERY OF DOCUMENT PRODUCTION INFORMATION AND DIFF PROGRAM PRINTOUTS**<br><br>**Hearing:**<br><br>Date:　April 30, 2013<br>Time:　10:00 a.m.<br>Place:　Courtroom 5, Fourth Floor<br>Judge:　Hon. Paul S. Grewal |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　Counterclaim-Plaintiffs,<br>　　v.<br><br>APPLE INC., a California corporation,<br><br>　　　　Counterclaim-Defendant. | |

Apple creates a dispute with non-party Google for the mere sake of raising a dispute with the Court.  Google produced over 50,000 pages of documents as well as voluminous source code and has agreed to produce witnesses for depositions to satisfy its obligations under the Subpoenas.  There exists no dispute between the parties that could not have been resolved by Apple, itself, without the Court's intervention.

First, Apple's motion seeks so-called "transparency" from Google, which Apple defines as a list of the custodians Google searched and the terms it used to search them.  But Google already promised Apple substantial transparency into its collection and production, by offering to run any search terms Apple proposed, and search any custodians Apple identified, or explain why it could not do so.  Rather than accepting Google's offer and cooperating to determine whether any additional documents need be produced, Apple marched straight into Court.  Notably, in the weeks since Google made this offer to run Apple's search terms on Apple's preferred custodians, Apple has sent Google *precisely zero* terms and *precisely zero* custodians.  Instead Apple launched this motion, which, in *Apple's own best case*, would result in Apple suggesting that Google "modify its search methodology" in some undisclosed, unknown way.  Google *already offered* to "modify its search methodology" for Apple, if only Apple would identify for Google the terms and custodians it believes should be searched.

Second, Apple seeks precisely the same relief it already sought from Samsung:  removing printouts of "diff" reports from Google's secure code review facility.  Apple relies on its pending papers against Samsung, but neglects to mention that Google specifically "agree[d] that the outcome of Apple's pending motion to compel Samsung will control the dispute between Apple and Google as well."  Rather than agreeing to wait for the Court's guidance through its motion against Samsung, Apple marched into Court with the same issue that may well be resolved before this motion is even heard.  Apple's desire to pick these fights is an abuse of the subpoena process and a waste of this Court's time.  No true deficiencies in Google's document production exist, and thus, Apple's motion should be denied.

# BACKGROUND

### A. Google Met Its Document Production Obligations Under The Subpoenas

On October 1, 2012, Apple issued two subpoenas (collectively, the "Subpoenas") to non-party Google which included thirty-eight requests for production and fifteen topics for deposition. (Declaration of Michael Valek, March 26, 2013, Docket No. 418 ("Valek Decl.") Ex. 1.) On October 15, 2012, Google timely objected to Apple's document requests. (Valek Decl. Ex. 2 at 14-19, 26, 28.) Notwithstanding its objections, Google agreed to produce more source code than it has produced as a non-party involving Apple, documents showing the design and development of the accused functionality, as well as *all* non-privileged documents relating to the accused functionality. (*Id.* at 15-16, 19; Valek Decl. Ex. 12 at 3.) During the preliminary injunction phase Google produced 24,261 pages of documents to Apple. (Valek Decl. Ex. 12 at 1.) In response to the Subpoenas, Google produced an additional 6,122 pages on December 14, 2012; 17,266 pages on February 1, 2013; and 6,416 pages on February 12. (Valek Decl. Ex. 12 at 1-2; Declaration of Lindsay Cooper ("Cooper Decl.") Exs. A-B.) Included in the document productions are the identities of the custodian for each document.

Google produced voluminous source code as well. As early as May 7, May 9, and June 7, 2012, Google produced highly confidential source code. (Valek Decl. Ex. 12 at 2.) Google also produced additional highly confidential source code on August 24, 2012 – well *before* Apple issued its second Subpoenas. (*Id.*) Despite this, Apple did not revisit Google's highly confidential source code *even once* between August 24, 2012 and January 31, 2013. (Cooper Decl. Ex. C.) Although Apple now alleges a sense of urgency in processing Google's production, Apple failed to analyze or even inspect Google's highly confidential source code for the five months between August 24, 2012 and January 31, 2013.

Finally, Google has been working with Apple in an effort to resolve any disputes without Court intervention. Between October 1, 2012 and March 19, 2013, Apple wrote Google nine letters complaining about Google's response to the Subpoenas. (Valek Decl. Ex. 3, 5, 7, 9, 14-16, 18; Cooper Decl. Ex. D.) Google continued to work through these complaints, many times conceding to produce documents that it did not believe were even relevant, only to avoid

burdening the Court.  Throughout this time, however, Apple never requested that Google provide its search terms or custodian list.

### B. Although It Already Fulfilled Its Document Production Obligations, Google Offered to Search Additional Terms and Custodians; Apple Refused

During the meet and confer held between the parties on March 19, 2013, for the first time, Apple asked Google to disclose its search terms and custodian list to Apple.  (Valek Decl. Ex. 20 at 3.)  Although Apple did not identify any examples of why it believed Google's search methodology was in any way deficient, on March 22, Google agreed to run additional search terms if Apple proposed the terms:

> [I]n the spirit of compromise and to cure any concerns you may have regarding the breadth of our search, we are happy to review any lists of search terms Apple provides, and we will commit either to running Apple's terms and reviewing the resulting documents, or to explaining why we cannot do so, for example, because the proposed term is overly burdensome as it generates many false positives.  To the extent that any of Apple's proposed search terms are too broad, we will also work with you to refine any over inclusive terms.

(Valek Ex. 20 at 3.)  In addition, Google made the same offer regarding Apple's selection of custodians:

> Although we do not believe it is necessary, in the spirit of compromise and to cure any concerns you have regarding the breadth of our search, we are happy to review a list of additional custodians Apple provides, and we will commit to either searching these custodians or explaining why we cannot do so, for example, because the proposed custodian is unlikely to have any responsive documents.

(Cooper Decl. Ex. E at 2.)  Apple refused these offers and curtly declared an impasse.  (Valek Decl. Ex. 23 at 2.)

### C. Apple Refused Google's Offer to Let This Court Hear The Same Issue Once

Finally, during the discussions of March 19, lead counsel also conferred about Apple's demands to Google concerning production of printed source code "diff" reports created by Apple's reviewers.  (Valek Decl. Ex. 20 at 5.)  Since Apple had already filed its motion to compel Samsung to provide printed "diff" reports (Docket No. 398), Google proposed that Google and Apple accept the outcome of the already-pending motion:

> During our discussion, I noted that the issue of "diff" source code printouts is currently live between the parties in this case, and the subject of a pending motion to compel filed by Apple.  (*See* Dkt. 398.)  As you know, both Judge Grewal and Judge Koh have repeatedly

> noted that this litigation and the prior action between Apple and Samsung have unnecessarily consumed judicial time and resources. Google believes that the most way to resolve this dispute is to agree that the outcome of Apple's pending motion to compel Samsung will control the dispute between Apple and Google as well. This would enable a full resolution of issues between us without further burdening the Court.

(Valek Decl. Ex. 20 at 5.) Apple simply ignored this proposal; hours before filing its motion, it tersely responded to Google that "[y]our letter confirms that we are at impasse on this issue." (Valek Decl. Ex. 23 at 4.)

## **ARGUMENT**

### I. Apple Provides No Evidence of Deficiencies With Google's Search Methodology

Apple requests "transparency" based on nothing more than conjecture. (Motion at 1 ("The absence of such documents *suggests* that Google's document production is substantially incomplete . . .").[1]) Apple offers no evidence whatsoever that relevant, non-privileged documents responsive to Apple's requests actually exist beyond those already produced. Apple's primary argument supporting its request for search terms is that "there appear to be no specification or requirements documents relating to the development, design, or implementation of the following accused functionality in the accused devices: Historical Lists, Slide to Unlock, and Special Text Detection," and "only a handful of such documents for the other accused functionalities (Text Correction, Data Synchronization, Unified Search, and Alternative Call Return)." (Motion at 7.) This is simply incorrect, and shows that Apple has not reviewed the documents Google produced to date. In a letter to Apple after the parties' meet and confer, Google directed Apple to exemplary production numbers of "design and development" documents Apple claimed were "missing." (Valek Decl. Ex. 21.[2]) It appears Apple simply ignored those documents, just as it ignored Google's efforts to resolve the parties' dispute without burdening the Court. Had Apple reviewed Google's document production more closely, it would have found precisely the documents it

---

[1] Apple further admits that alleged document production deficiencies "could be a result of searches that used inadequate search terms" (Motion at 8), and requests disclosure of terms and custodians so that Apple can "diagnose" Google's production (Motion at 9).

[2] The Valek Declaration contains a slight error: Valek Decl. Ex. 21 is a letter from Matthew Warren to Michael Valek of March 24, 2013, not March 25, 2013 as stated in Valek Decl. ¶ 24.

alleges it cannot find. (*Id.*) The same is true for Apple's complaint regarding "communications between Google and Samsung regarding the accused functionality." (Motion at 7.)

Similarly, Apple points to excerpts from a custodian's deposition testimony and complains that "fewer than five [documents] that have the term 'Keyguard'" have been produced. (Motion at 7.) Had Apple raised these alleged deficiencies with Google during the meet and confer process rather than for the first time in its motion, Google could have conducted a further investigation before Apple rushed to file its motion. Notwithstanding this, Apple provides no evidence that Google's search terms led to the nominal production of documents for this particular custodian. Google is investigating Apple's complaint which was raised for the first time in its motion and does not support the disclosure Apple seeks.

Even if Apple had provided clear evidence showing that Google's search methodology was flawed, to the extent any additional discovery from Google were necessary, the proper course is not post-hoc production of search terms, as Apple requests, but instead cooperation between counsel to craft appropriate keywords for use in any future electronic searches. *See Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109 (E.D. Pa. 2010) ("It is well-established that communication among counsel is crucial to a successful electronic discovery process"); *William A. Gross Constr. Assocs. Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Of course, the best solution in the entire area of electronic discovery is cooperation among counsel."); *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 358 (S.D.N.Y. 2008) ("The Federal Rules of Civil Procedure, case law, and the *Sedona Principles* all further emphasize that electronic discovery should be a party-driven process."). Cooperation and communication among counsel is exactly the course Google has taken even though Apple never even mentioned the topic of search terms until the meet and confer conference of March 19, just days prior to Apple filing its motion. (Valek Decl. Ex. 20 at 3.) In order to address Apple's specific concerns about the scope of Google's production, Google offered to work together with Apple to come up with mutually agreeable search terms. (*Id.*) Apple has refused, claiming it

-5-  Case No. 5:12-cv-630-LHK-PSG
GOOGLE INC.'S OPPOSITION TO APPLE INC.'S MOTION TO COMPEL

should not have to "shoot in the dark" (Motion at 8), but that is exactly what Apple is doing with its unsubstantiated allegations of missing documents.[3]

Forcing Google to disclose its search methodology would be unduly burdensome especially given that Google is a non-party responding to a Rule 45 subpoena. "Of course, non-parties may occasionally have to testify and give evidence for and against litigants but non-parties should not be burdened in discovery to the same extent as the litigants themselves." *Intermec Techs. Corp. v. Palm, Inc.*, No. 3:09-mc-80097-WHA, slip op. at 4 (N.D. Cal. May 15, 2009); Fed. R. Civ. P. 45(c)(3)(A)(iv). "Requests to non-parties should be narrowly drawn to meet specific needs for information." *Intermec Techs. Corp.*, No. 3:09-mc-80097-WHA, slip op. at 4. "While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery." *Rombeiro v. Unum Life Ins. Co. of Am.*, No. C 02-04018, 2011 WL 1152270, at *4 (N.D. Cal. Mar. 27, 2011) (internal citation and quotation omitted). To require Google to retroactively disclose its search methods would result in an undue burden that is not justified by any potential benefit to Apple. Apple's reliance on *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109 (E.D. Pa. 2010) is misplaced. In *Romero*, the court denied plaintiff's motion to compel a *party* to disclose search terms already used because the undue burden imposed was unjustified by any potential benefit:

> To require Defendants to compile a list of all search terms, custodians, and other methods of searching used in the past would result in an undue burden on Defendants that is not justified by any potential benefit to Plaintiffs. Although Plaintiffs argue that "without knowing the search methodology for Defendants' previously-produced documents [they]

---

[3] Apple's own authorities demonstrate its demand for search terms without a timely request or any negotiation is improper. For example, in *Form Factor* the court ordered disclosure of "what search terms were used for all of Plaintiff's electronic searches" only after Plaintiff's 30(b)(6) designee on document production offered "less than complete" testimony on areas including "what key word searches were used." *Form Factor, Inc. v. Micro-Probe, Inc.*, Case No. C-10-03095-PJH (JCS), 2012 WL 1575093, at *6-7 (N.D. Cal. May 3, 2012). In *Romero*, the court ordered the parties "to confer and come to some agreement on the search terms that Defendants intend to use" for prospective searches only. *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109-110 (E.D. Pa. 2010). In *Smith*, the court ordered disclosure of defendant's terms where plaintiff – unlike Apple – sought to confer with defendant on search terms a year before filing its motion. (Cooper Decl. Ex. F at 18); *Smith v. Life Investors Ins. Co. of Am.*, Case No. 2:07-cv-681, 2009 WL 2045197, at *7 (W.D. Pa. July 9, 2009).

-6-   Case No. 5:12-cv-630-LHK-PSG
GOOGLE INC.'S OPPOSITION TO APPLE INC.'S MOTION TO COMPEL

cannot evaluate the new searches that Defendants propose will result in the identification and production of electronic documents 'not previously produced,'" the Court is confident that the parties can coordinate their efforts on a forward-going basis to share information about what has already been completed and what needs to be done in order to avoid duplicative discovery.

*Romero*, 271 F.R.D. at 110 (internal citations omitted).  The same reasoning should apply here with even greater force because Google is a non-party responding to a subpoena.

Furthermore, the impact of requiring non-parties to provide complete "transparency" into their search methodology and custodians in responding to non-party subpoenas whenever unsubstantiated claims of production deficiencies are made would be extraordinary.  Instead, a proper remedy, should one even be needed in this case, would be as Google proposed – Apple should identify the documents that it believes have not been produced and the search terms which it believes can be used to capture such documents.  Google has already indicated that it would work with Apple to search for additional documents if Apple agreed to provide its proposed terms.

## II. Apple Already Has In Its Possession The List of Custodians For The Produced Documents

Apple burdens the Court with a request for information that Google has already provided to Apple.  For each production of documents in response to Apple's Subpoenas, Google has provided metadata which includes the name of the custodian associated with each file contained in that production.  This custodian information is stored in the load files provided to Apple along with the documents themselves, which Apple can easily access.  Rather than use the custodian information Google already provided, Apple improperly burdens this Court with unnecessary motion practice.[4]  Yet Apple does not identify a single custodian whom it believes has relevant documents and for whom no documents have been produced.  It is unclear to Google why Apple requires this information if the substantial amount of custodian data Google already provided is

---

[4] Apple's grievance appears to simply be that Google did not provide the names of the custodians whose files had been searched but for whom no documents were produced.  The reason for this is quite simple – those custodians did not have any non-privileged, responsive documents.  There is no reason, and Apple has not provided one, explaining why it is entitled to see a list of such custodians if it exists.

not enough to lead Apple to constructive suggestions.

Apple explicitly rebuked requests for suggestions on this issue; Google asked Apple to provide a list of custodians that it believed had responsive documents but from whose files Google had not produced responsive documents. (Cooper Decl. Ex. E at 2.) Google agreed that, if Apple provided such a list, Google would search those custodians' files. (*Id.* at 2.) Again, Apple refused to cooperate. The Court should not reward Apple's unwillingness to cooperate. If Apple was in fact concerned that a key custodian had inadvertently been overlooked in connection with Google's production of documents in response to Apple's Subpoenas, Apple should have identified those persons to Google.

### III. Apple's Duplicative Requests Regarding "Diff" Reports Is A Waste of Judicial Resources

Apple admits it has already filed a pending motion against Samsung concerning the removal of printed "diff" reports from the secure review facility. (Motion at 2 (citing Docket No. 398).) In an effort to avoid wasting judicial resources, Google informed Apple that it would follow the guidance of the Court in its decision relating to that motion. (Valek Decl. Ex. 20 at 5.) Despite this offer, Apple burdens this Court with a superfluous mirror motion against Google, which depends entirely on Apple's motion papers against Samsung. Samsung has already explained why Apple's request is improper and in contravention of the Protective Order entered in this case. *See* Samsung's Opp'n to Apple's Mot. to Compel a Resp. to Interrog. No. 22 and Produc. of Diff Printouts. (Docket No. 424.) Moreover, Apple submits *no evidence at all* that Google has withheld any "diff" reports. In fact, Apple's motion regarding the "diff" reports is nothing more than an afterthought and does not even approach this Court's standards for motion practice; its statement under Local Rule 37-2 does not include Apple's document requests seeking source code. (Notice at 2-9.) The Court should deny Apple's motion for this reason alone.

Should the Court choose to substantially decide Apple's motion regarding "diff" reports separately against Google, it should be denied. Apple should not be permitted to remove the printed "diff" reports from the secure facility because the Protective Order does not allow this practice. Apple's allegation that Google is attempting to "end-run the Court's previous order" is a

-8-   Case No. 5:12-cv-630-LHK-PSG
GOOGLE INC.'S OPPOSITION TO APPLE INC.'S MOTION TO COMPEL

grasp at straws.  Google complied with the order requiring it to load Cygwin and software with the ability to compare the relevant source code versions.  Apple can do so within Google's secure review facility.  Although it is unclear how such a "diff" report would be relevant in this case, Google allowed Apple to use the loaded Cygwin software and create "diff" reports.  Google will continue to allow this practice in the future.  Google is only preventing the removal of these reports, and the source code excerpts they contain, from Google's secure review location.  If Apple truly needs the comparison information in these "diff" reports to understand Samsung's code, it is free to prepare and inspect these reports in the secure review facility, and to use them to guide Apple's review and printing of source code files in the manner allowed by the Protective Order.  Apple has not shown any basis in the Protective Order to remove these "diff" reports, or the lines of code they excerpt, from the secure review room.  Google produced highly proprietary code in this case based on the Protective Order; Apple cannot now play bait-and-switch with that Order and its terms, including printing restrictions.

## **CONCLUSION**

For all the foregoing reasons, the Court should deny Apple's motion to compel.

DATED:  April 9, 2013              QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s Matthew S. Warren*
  Amy H. Candido
  amycandido@quinnemanuel.com
  Matthew S. Warren
  matthewwarren@quinnemanuel.com
  QUINN EMANUEL URQUHART & SULLIVAN, LLP
  50 California Street, 22nd Floor
  San Francisco, California  91111-4788
  (415) 875-6600
  (415) 875-6700 facsimile

  *Attorneys for Non-Party Google Inc.*