UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation<br><br>Plaintiff,<br>v.<br>SAMSUNG ELECTRONICS CO. LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 12-CV-0630-LHK (PSG)<br><br>**ORDER RE: MOTIONS TO COMPEL**<br><br>(**Re: Docket Nos. 395, 398, 401, 404**) |

In this patent infringement case between Plaintiff Apple, Inc. ("Apple") and Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung"), the parties move to compel production of various documents and depositions. The parties appeared for hearing on the four motions at issue on April 11, 2013. Because the facts of this case are familiar to the parties and are widely available, the court dispenses with an explanation of that background here. Instead, the court begins with a recitation of the applicable legal standards and then addresses the merits of each motion in turn.

1

Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

# I.   LEGAL STANDARDS

Rule 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[1]

A party "may, by oral questions, depose any person, including a party, without leave of court."[2] Pursuant to Fed. R. Civ. P. 30(a)(2)(A)(i), a party must obtain leave from the court for a deposition if it "would result in more than 10 depositions being taken." The court "must grant leave to the extent consistent with Rule 26(b)(2)."

Fed. R. Civ. P. 26(b)(2) in turn provides that the court must limit the frequency or extent of discovery if it determines that: (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the burden or expense of the proposed discovery outweighs its likely benefit." Upon a motion to compel pursuant to Fed. R. Civ. P. 37(a)(3), the moving party has the burden of demonstrating relevance.[3]

---

[1] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

[2] Fed. R. Civ. P. 30(a)

[3] *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

2
Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

## II. DISCUSSION

**A. Apple's Motion to Compel Response to Interrogatory No. 22 and Production of Diff Program Printouts and Supporting Documents**

Apple seeks a "complete response" to its Interrogatory Number 22 and "[a]ll printouts from the output of the 'diff program' made by Apple's representatives during review and inspection of Samsung's source code."[4] Interrogatory Number 22 asks Samsung to "[i]dentify from the Source Code produced [in response to two other Apple requests] all files that relate to the Accused Features and functionality of the Accused Samsung Products."[5] The interrogatory continues:

> Such identification should include the name of the file, the engineers, designers and authors responsible for the file, the specific Accused Feature to which the identified file relates, and any differences between that file and the publicly available version of the source code for the Jelly Bean, Ice Cream Sandwich, Honey Comb, Gingerbread and FroYo versions of the Android operating system and the engineers, designers and authors of those differences, and identify the person(s) most knowledgeable about the response to this interrogatory.

Apple also wants printouts of the results of the "diff" program its experts run on Samsung's source code, which lists the differences and, by virtue of exclusion from the list, the similarities between two versions of source code.

Samsung objects to both requests. Samsung argues that Interrogatory Number 22 is Apple's attempt to impermissibly shift the burden to Samsung of identifying the source code connected to the accused features. Apple responds that Samsung's production of the source code is so confusing that Samsung should have to connect the source code to the accused features. Samsung also contends that permitting Apple to remove the diff outputs from the source code review site would allow Apple to circumvent the restrictions in the Protective Order in this case. Apple counters that the diff outputs are its work product and therefore not subject to the Protective Order limitations.

---

[4] *See* Docket No. 398 Ex. 1.

[5] *See id.* Ex. C.

To illustrate its point, Samsung supplied the court with the entirety of Apple's infringement contentions, which amount to nearly 13,000 pages, covering eight asserted patents against 26 devices. Dramatic demonstrations about the volume of documents aside, the court agrees that Apple's request impermissibly requires Samsung to prove Apple's case. Apple has made allegations regarding the features of Samsung's products; Samsung has made source code available for Apple to evaluate how those features operate. Samsung has no obligation to search its source code to extract the portions it thinks Apple thinks infringe – doing so in fact would lead to other problems regarding Samsung defining the scope of Apple's case.

To the extent that what Apple seeks are navigational tools to aid in its evaluation of Samsung's code, Apple may be entitled to that kind of information. But Apple did not request navigational tools or seek to depose a 30(b)(6) witness familiar with the organization of Samsung's code. Instead, it sought to have Samsung match its source code to Apple's contentions. That request is unduly burdensome to Samsung and outside of its obligations.

As to the diff reports, the court agrees with Samsung that allowing Apple to remove the outputs from the source code room does not accord with the Protective Order that resulted from an intense negotiation between the parties to protect and balance their respective interests. The diff reports indisputably contain source code. Apple's argument to remove the documents thus fails on two grounds. First, if the diff reports are Apple experts' notes, those notes necessarily include source code, and removal of notes with source code references is prohibited under the Protective Order.[6] Second, because the diff outputs create consolidated reports of only the differences in swaths of source code, they are different in kind from the source code printouts subject to the Protective Order's 50 page/10% limits on printouts.[7] Apple has access to the subject of the diff

---

[6] *See* Docket No. 171 ¶ 11(n) ("No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein.").

4

Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

reports at the site and may use the reports to better target the source code it needs to establish its case.

Apple's motion is DENIED.

## B. Apple's Motion to Compel Production of Documents and Things and Continued Depositions of Juho Lee and Young Bum Kim

Apple moves to compel Samsung to produce several marketing and financial reports that it asserts are responsive to fifteen of its requests for production.[8] Samsung claims that Apple's request regarding the financial reports is moot because Samsung has produced the reports at issue and that Apple's motion was premature as the parties were meeting and conferring to adjust Apple's requests. Given the parties' representations at the hearing, the court understands Samsung's representations to be accurate and so does not discuss this matter further.

Apple also moves to compel Samsung to produce Juho Lee ("Lee") and Young Bum Kim ("Kim") each for a second day of deposition testimony. In support, Apple points to Judge Koh's December 11, 2012 order stating that for depositions involving interpreters, the parties were entitled to double the hours for the depositions, with advance notice if a party required the double time.[9] Apple contends that Kim and Lee's depositions were insufficient because of the interpreters and because of excessive objections by Samsung's counsel. It also asserts that Samsung's document production before the depositions was excessive and in an inaccessible format. Apple lastly points to production of over 6,000 documents regarding Lee after his deposition as a reason to reopen the examination.

In opposition, Samsung points to a discovery bargain between the parties regarding depositions and production of documents. According Samsung, Apple agreed to limit depositions

---

[7] *See id.* ¶ 11(i).

[8] *See* Docket No. 401 Ex. 1.

[9] *See* Docket No. 324.

Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

of Lee and Kim to one day apiece in Korea in exchange for other depositions taking place in the United States, among other concessions. Samsung contends that as part of that agreement, the parties agreed document production for the deponents would occur ten days prior to the depositions, a provision with which it complied. It asserts that its production was complete and done so in a commonly used compressed format that Apple should have been able to access. As to the 6,000 documents produced after the deposition, Samsung maintains that production was in response to Apple's belated request for more documents.

Given Judge Koh's order, the court finds that Apple should be permitted in this limited situation to resume depositions of Kim and Lee for an additional seven hours apiece. But because Samsung negotiated for the one-day depositions in the first instance and given Kim and Lee's employee status at Samsung, the court finds that the depositions should take place in Suwon, Korea, and not in the United States. The court also notes that Lee and Kim are the only deponents that it will permit to be deposed for an extra day without advance notice to the opposing party regarding the entitlement to an additional day. As to pre-deposition production, the court adopts the parties' agreement regarding the ten-day deadline to produce relevant documents. The parties shall engage in good faith production and exchange of those documents prior to any depositions taken.

C.  **Samsung's Motion to Compel Production of iTunes and iSync Source Code, Printouts, and Release Information**

Samsung moves to compel Apple to produce source code printouts, "the complete source code for every version of iTunes that predates January 7, 2007," "the complete source code for every version [of] iSync that predates January 7, 2007, including all SyncServices and FusionOne source code used by these versions," and "the version number information required to verify Apple's iSync production." According to Apple, and as undisputed by Samsung at the hearing, it

6

Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

already has produced the printouts requested by Samsung and so that issue is moot. The court does not address it further.

Samsung asserts that it is entitled to the entire source code for every version of iTunes and iSync that predates January 7, 2007 to support is invalidity contention that previous versions of iTunes or iSync represent prior art for US Patent Number 7,761,414 ("'414 Patent"). The patent describes a system that allows a user to continue using a device even as the device synchronizes with a database by simultaneously executing a synchronous thread and a nonsynchronous thread of commands. Samsung seeks in particular the user interface source code for these programs because, it argues, the '414 Patent includes user interface as a claim limitation.

Apple objects to having to produce the source code Samsung requests. Apple argues that the only source code relevant to Samsung's invalidity claims is the code related to synchronization, which Apple has produced. It also has agreed to produce the entire source code for iTunes 6.0.1, even though it contends that source code other than the code related to synchronization is not relevant to the invalidity contentions. It refuses to provide any source code outside of limited synchronization code for versions of iTunes prior to version 6.0.1 because Samsung identified only that version in its invalidity charts. Samsung responds that despite only charting the one version of iTunes, it expressly stated in its contentions that it planned to rely on all previous versions of the program.

Samsung has not provided any evidence of how earlier versions of iTunes differ from Version 6.0.1 that would show that production of code from all of those versions would not be duplicative and for that matter relevant to Samsung's invalidity theories. But Apple has not indicated that the code for the different versions in fact is duplicative. Given that synchronization and the UI code are the primary issues addressed in Samsung's request – and  addressed in the '414 Patent – Apple  shall make available UI and synchronization code for every version of iTunes.

7

Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

Samsung requests documents correlating the source code file names Apple produced for the iSync program to the different versions of iSync. According to Apple, it does not have any documents responsive to that request and the interrogatory Samsung points to in support reflects a request regarding Samsung's counterclaims on its patents rather than regarding its invalidity contentions. Apple also points out that Samsung did not meet confer on the interrogatory on which it relies. If Apple has no internal document correlating file names to iSync versions, the court cannot compel it to produce such a document. Samsung's reliance on its earlier interrogatory is unavailing – it does not address the information it seeks here. Samsung may make an interrogatory request of Apple to provide correlations between the source code and the iSync versions, but it cannot move to compel a document that Apple does not have already.

**D.     Samsung's Motion to Compel Apple to Produce Pricing Information**

Samsung moves to compel Apple to produce documents revealing the company's pricing strategies for its products on the grounds that Samsung needs the information to rebut Apple's damages claims and to support its damages theories for its cross-claims. It specifically requests documents revealing: (1) "internal analysis by Apple of how it determines pricing for its products"; (2) "price elasticity/price sensitivity studies relating to the accused products"; (3) "documents discussing any price premiums for products that incorporate the patented features"; and (4) "discussions of pricing with wireless carriers, who heavily subsidize Apple's products."[10]

Samsung asserts that documents revealing Apple's internal discussions regarding how to price its products are necessary under the *Georgia-Pacific* factors for determining a reasonable royalty, for any entire market value theory, and to rebut any lost profits assertions. According to Samsung, Apple's pricing strategies shed light on the incremental value of its patented features to the products and therefore are relevant to Samsung's defenses to Apple's damages theories. To

---

[10] *See* Docket No. 404.

8

Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

support its argument, Samsung also points to its production of its Pumi reports, which includes pricing strategy information.

Apple objects to Samsung's requests as being too overbroad and seeking information that is relevant neither to Samsung's defense nor to Samsung's counterclaims. Apple contends that the only pricing information that is relevant under *Georgia-Pacific*, for a lost profits theory, or for an entire market value theory are actual prices and profitability. Apple has agreed to produce information about its actual prices, its costs and expenses, and thereby its profitability. It refuses to produce any of its pricing strategy documents because it asserts that pricing discussions do not provide any information regarding either a comparable licensing fee or what profits were lost. As to the Pumi reports, Apple asserts that it sought Samsung's Pumi reports because they contain the profitability information that Apple asserts is relevant to the parties' damages claims. Apple argues that the fact that the Pumi reports also contain Samsung's pricing strategy information is just a consequence of the fact that the profitability information is also within the documents.

The court agrees with Samsung that the pricing strategy information is relevant under Rule 26(b) and in light of the various damages theories that Apple and Samsung may present. Under the *Georgia-Pacific* factors, for example, the fact finder must attempt to determine a licensing negotiation before initiation of the infringement to determine an appropriate royalty amount to award in damages.[11] An expert must "carefully tie proof of damages to the claimed invention's footprint in the market place."[12] Apple's internal discussions about the relative value of the patented features to its products – as may be reflected for example by documents regarding pricing premiums for those features – would shed light on Apple's perception at the time of the value of its patents to a competitor. Information about Apple's valuation of the different features of its phone

---

[11] *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011).

[12] *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

9
Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

might aid a fact finder in determining a "hypothetical" rather than "pure[ly] speculati[ve]" reasonable royalty rate.[13]

The entire market value theory also supports having Apple produce its pricing strategy documents. The entire market value theory requires that Apple show that the patented feature drove demand to rely on the entire market value of the accused product.[14] Apple's consideration of pricing changes as the patented features were added to Apple's products may provide insight into at least Apple's perception of whether customers sought the patented features, and as later adjustments as other features were added could provide information about the degree to which the patented features drove demand.

Given the broad definition of relevance under Rule 26(b) and the ability for the pricing strategy information to aid Samsung in at least its defense against Apple's damages claims, Samsung's motion is GRANTED.

**E.    Motions to Seal**

Apple and Samsung also filed several motions to seal that accompany their discovery motions. Sealing motions for documents submitted with nondispositive discovery motions are subject to the good cause standard of Fed. R. Civ. P. 26(b).[15] Even under the lower good cause standard, the parties must make a "particularized showing"[16] that "specific prejudice or harm will result," [17] and they must "narrowly tailor" their requests to information for which they have made that showing.[18] "[B]road allegations of harm, unsubstantiated by specific examples or articulated

---

[13] *See id.*

[14] *See Uniloc*, 632 F.3d at 1318.

[15] *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

[16] *Id.*

[17] Fed. R. Civ. P. 26(c).

10
Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL

reasoning" will not suffice.[19] A protective order sealing the documents during discovery may reflect the court's previous determination that good cause exists to keep the documents sealed,[20] but a blanket protective order that allows the parties to designate confidential documents does not provide sufficient judicial scrutiny to determine whether each particular document should remain sealed.[21]

In light of the standard for sealing motions, the court decides as follows:

- Docket Number 395: Samsung requests on Apple's behalf that various exhibits be sealed or redacted. In its supporting declaration, Apple offers narrowly tailored redactions supported by good cause that the redactions describe Apple's source code.[22] The court GRANTS the request pursuant to Apple's redactions.

- Docket Number 398: Apple requests on Samsung's behalf to seal entirely Exhibit P to the Furman Declaration, and the parts of its motion to compel and the Furman Declaration that reference Exhibit P. Exhibit P consists almost entirely of Samsung's source code, and so sealing that exhibit is GRANTED. The limited redactions in the motion and the declaration refer to Samsung's code and so likewise are GRANTED.

- Docket Number 401: Apple requests on Samsung's behalf that Exhibits 9, 11, 12, 13, 15, 16, and 17 to the Valek Declaration be sealed, that Exhibit 7 to the Selwyn Declaration be sealed, and that its motion to compel be redacted. In its supporting declaration, Samsung only seeks redactions to Exhibit 12.[23] Because those redactions are narrowly tailored to information for which Samsung has provided good cause for sealing, the court GRANTS the request pursuant to Samsung's limited redactions to Exhibit 12. The other exhibits and an unredacted copy of the motion shall be filed on the record within seven days.

**IT IS SO ORDERED.**

Dated: April 12, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[18] Civil L.R. 79-5

[19] *Kamakana*, 447 F.3d at 1178.

[20] *See id.* at 1179-80.

[21] *See* Civil L.R. 79-5(a).

[22] *See* Docket No. 405.

[23] *See* Docket No. 416.

11
Case No: 12-0630 LHK (PSG)
ORDER RE MOTIONS TO COMPEL