```
1                    IN THE UNITED STATES DISTRICT COURT

2                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                             SAN JOSE DIVISION

4

5
       APPLE, INC,                        )   CV-12-00630-LHK
6                                         )
                         PLAINTIFF,       )   SAN JOSE, CALIFORNIA
7                                         )
                   VS.                    )   APRIL 11, 2013
8                                         )
       SAMSUNG ELECTRONICS CO., LTD,      )   PAGES 1-93
9      ET AL,                             )
                                          )
10                       DEFENDANT.       )

11

12                      TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE PAUL S. GREWAL
13                     UNITED STATES DISTRICT JUDGE

14

15     A P P E A R A N C E S:

16     FOR THE PLAINTIFF:      GIBSON DUNN & CRUTCHER, LLP
                               BY:  MARK LYON
17                             425 MARKET STREET
                               SAN FRANCISCO, CA 94105
18

19     FOR THE DEFENDANT:      QUINN EMANUEL
                               BY:  MICHAEL FAZIO
20                             50 CALIFORNIA STREET, 22ND FL
                               SAN FRANCISCO, CA 94111
21

22     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
       PRODUCED WITH COMPUTER.
23

24             APPEARANCES CONTINUED ON THE NEXT PAGE

25     OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
```

```
 1     FOR THE PLAINTIFF:        GIBSON DUNN & CRUTCHER
                                 BY:  MARK REITER
 2                               2100 MCKINNEY AVENUE, STE 1100
                                 DALLAS, TX 75201
 3

 4     FOR THE PLAINTIFF:        WILMER CUTLER PICKERING HALE & DORR
                                 BY:  MARK SELWYN
 5                               950 PAGE MILL ROAD
                                 PALO ALTO, CA 94304
 6

 7     FOR THE DEFENDANT:        QUINN EMANUEL
                                 BY:  VICTORIA MAROULIS
 8                               555 TWIN DOLPHIN DRIVE, 5TH FL
                                 REDWOOD SHORES, CA 94065
 9

10     FOR THE DEFENDANT:        QUINN EMANUEL
                                 BY:  PATRICK CURRAN
11                               51 MADISON AVENUE, 22ND FL
                                 NEW YORK, NY 10010
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1     SAN JOSE, CALIFORNIA                    APRIL 11, 2013

 2                    P R O C E E D I N G S

 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4     WERE HELD:)

 5              THE COURT:  GOOD MORNING.  PLEASE BE SEATED.

 6        MR. RIVERA, WOULD YOU CALL THE NEXT CASE, PLEASE.

 7              THE CLERK:  YES, YOUR HONOR.

 8        CALLING APPLE, INC. VERSUS SAMSUNG ELECTRONICS, ET AL.

 9     CASE-CV-12-630-LHK.

10        MATTER ON FOR APPLE'S MOTION TO COMPEL.

11        COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

12              MS. MAROULIS:  GOOD MORNING, YOUR HONOR.

13        VICTORIA MAROULIS WITH QUINN EMANUEL, COUNSEL FOR SAMSUNG.

14        AND WITH ME ARE MY PARTNERS MICHAEL FAZIO AND PATRICK

15     CURRAN.

16              THE COURT:  GOOD MORNING.

17              MR. LYON:  GOOD MORNING, YOUR HONOR.

18        MARK LYON FROM GIBSON DUNN ON BEHALF OF APPLE.  WITH ME IS

19     MY COLLEAGUE MARK REITER ALSO GIBSON DUNN AND MARK SELWYN,

20     WILMER HALE.

21              THE COURT:  GOOD MORNING, COUNSEL.

22        HAVE A SEAT.

23        ALL RIGHT.  I HAVE A NUMBER OF MOTIONS TO DEAL WITH THIS

24     MORNING.

25        I WOULD LIKE TO BEGIN WITH WHAT -- OH, I SEE, I DIDN'T
```

1    HAVE THE ENTIRE COLLECTION.  I WOULD LIKE TO KNOW WHY I HAVE

2    DOZENS -- THOUSANDS OF PAGES OF CONTENTIONS IN MY CHAMBERS

3    TAKING UP SPACE AND CONSUMING THIS COURT'S RESOURCES.

4         WHAT WAS THE PURPOSE OF THIS DEMONSTRATION?

5              MS. MAROULIS:  YOUR HONOR, I IMAGINE THAT THE COURT

6    WANTED TO ILLUSTRATE TO THE PARTIES THAT THE PARTIES ARE

7    OVERBURDENING THE COURT WITH THE SUBMISSIONS.

8              THE COURT:  THAT'S NOT A BAD SUPPOSITION,

9    MS. MAROULIS, AND I SEE MORE TO COME.

10             MS. MAROULIS:  THIS IS A DUPLICATE OF WHATEVER

11   WE'VE --

12             THE COURT:  WHY DO I HAVE THESE BOXES IN MY CHAMBERS.

13             MS. MAROULIS:  YOUR HONOR, WE BELIEVE THE RECORD

14   NEEDS TO BE FULL.

15        SO TO THE EXTENT THE MOTIONS ARE BRIEFED, WE HAVE TO

16   INCLUDE THE MATERIALS THAT RELATE TO THE MOTIONS.

17        AND IF YOUR HONOR'S QUESTIONS WITH RESPECT TO THE

18   INFRINGEMENT CONTENTIONS, SPECIFICALLY THE POINT HAD TO GO TO

19   THE INTERROGATORY 22, WHICH IS THAT --

20             THE COURT:  I UNDERSTAND.

21        MY POINT IS THIS:  PRESUMABLY WHEN YOU ALL, OR ANY PARTY

22   IN ANY CASE SUBMIT PAPERS TO THE COURT, THEY'RE BEING SUBMITTED

23   SO THE COURT CAN READ THEM, RIGHT?  THERE'S NO PURPOSE IN

24   FILING MATERIALS THAT HAVE NO CHANCE IN HECK OF EVER BEING READ

25   BY THE COURT.

1          FOR ME TO GET THROUGH JUST THOSE CONTENTIONS ALONE, WHAT

2     WOULD YOU EXPECT THAT WOULD TAKE ME TO DO, A WEEK?

3               MS. MAROULIS:  YOUR HONOR, THE CONTENTIONS WERE THERE

4     FOR COMPLETENESS, NOT FOR THE COURT TO REVIEW EVERY PAGE.

5               THE COURT:  WELL, IF IT'S NOT THERE FOR ME TO READ, I

6     DON'T NEED TO SEE THEM.

7          SO I HOPE MY POINT HAS BEEN MADE.

8               MS. MAROULIS:  THANK YOU, YOUR HONOR.

9               THE COURT:  LET'S TURN TO THE FIRST MOTION WHICH HAS

10    TO DO WITH INTERROGATORY 22 AND PRODUCTION OF THE DIFF PROGRAM

11    PRINTOUTS.

12              MR. LYON:  GOOD MORNING, YOUR HONOR.

13         MARK LYON.

14         SO THANK YOU.  AND WE UNDERSTAND THE COURT'S ADVISEMENT,

15    AND WE WILL MAKE SURE THAT WE MAKE EFFORTS GOING FORWARD AS

16    WELL.

17              THE DIFF OUTPUT, THE BIG CONCERN HERE IS WE ARE TRYING TO

18    AVOID SORT OF A GOT YA CASE.  WE HAVE A SITUATION WHERE WE HAVE

19    AN ANDROID OPEN SOURCE PROJECT THAT IS THE BASIS AND ADMITTEDLY

20    THE BASIS FOR ALL THE SOURCE CODE THAT GOES INTO THE PHONES

21    THAT ARE ACCUSED AND THE MOBILE PRODUCTS ACCUSED HERE.

22              SAMSUNG DOES MAKE SOME MODIFICATIONS TO THOSE, BUT IT'S

23    OUR BELIEF AND IT'S BEEN PROVEN IN THE PRELIMINARY INJUNCTION

24    PORTION OF THE CASE WITH RESPECT TO THE GALAXY NEXUS THAT THESE

25    AREN'T MATERIAL AT ALL WITH RESPECT TO THE PATENTS THAT WE ARE

1    TALK TALKING ABOUT.

2         SO WHAT WE HAVE DONE IS LOOKED AT AND ANALYZED THE OPEN

3    SOURCE CODE IN ORDER TO MAKE OUR CONTENTIONS WE FILED BEFORE WE

4    GOT SAMSUNG CODE.  WE ARE NOW LOOKING AT THE SAMSUNG CODE FOR

5    THE PHONES THEMSELVES.

6         THERE'S ABOUT 70 OR 80 DIFFERENT WORK SPACES WHICH

7    REPRESENT DIFFERENT PHONE BILLS, DIFFERENT VERSIONS,

8    MAINTENANCE RELEASES.

9              THE COURT:  WHEN YOU ARE SAYING WORK SPACES, WHAT DO

10   YOU MEAN?

11             MR. LYON:  WHAT I MEAN IS THAT THE WAY SAMSUNG HAS

12   PROVIDED THE CODE TO US IS IN VARIOUS WORK SPACES ON A COMPUTER

13   THAT WE CAN THEN ACCESS SERVERS ON SAMSUNG'S SYSTEM THAT ALLOW

14   US TO ACCESS THE CODE.

15        EACH OF THESE CODE AREAS OR BUILDS YOU MIGHT THINK OF ARE

16   IN A WORK SPACE.

17        SO WHAT I THINK OF THOSE AS IS IT'S A PARTICULAR PHONE, A

18   PARTICULAR RELEASE OF THE OPERATING SYSTEM FOR THAT PHONE, AND

19   SOMETIMES EVEN SOME SUBSET OF THAT, THAT WOULD BE A WORK SPACE.

20   AND THERE'S PROBABLY AROUND 70, 80, SOMEWHERE IN THAT ORDER.

21             THE COURT:  AND IS EACH OF THESE 70 OR 80 THAT YOU'RE

22   REFERRING TO IMPLEMENTATIONS BY SAMSUNG ABOVE AND BEYOND WHAT'S

23   MADE AVAILABLE IN THE OPEN SOURCE?

24             MR. LYON:  CORRECT.

25        WHAT IT IS, IS TAKING THE OPEN SOURCE CODE FOR THE MOST

1    PART, PUT IT IN VERBATIM TO THE PHONES, THEN THEY MAKE

2    MODIFICATIONS TO PUT SAMSUNG SKINS OR VARIOUS OTHER THINGS ON

3    THE PHONES.

4        WHAT WE HAVE BEEN DOING WITH THE DIFF TOOL WHICH IS

5    SOMETHING WE'VE ALL AGREED -- AND WE HAVE TOOLS WE'VE INSTALLED

6    ON OUR MACHINES SO THAT SAMSUNG CAN USE THEM AS WELL.  THESE

7    ARE TOOLS THAT ALLOW US TO ANALYZE THE VOLUMES OF CODE WHICH IS

8    MANY, MANY LINES OF CODE FOR EACH BUILD.

9        AND IT JUST COMPARES THOSE TWO FILES -- WHAT WE HAVE

10   DONE, AND IF THE COURT IS CURIOUS WE CAN SHOW YOU EXAMPLES, BUT

11   ALL IT DOES IS IF THE FILES ARE IDENTICAL, IT JUST SAYS THE

12   FILES ARE IDENTICAL.

13       IF THERE ARE DIFFERENCES, IT'S KIND OF LIKE A RED LINE IN

14   THE SENSE THAT IT WILL PULL UP THE DIFFERENCES FROM THE CODE.

15   IT WON'T SHOW YOU THE WHOLE CODE, BUT IT WILL SAY HERE'S THE

16   LINES THAT ARE DIFFERENT.

17          THE COURT:  DOES IT IDENTIFY THE LINES BY NUMBER OR

18   DOES IT ACTUALLY PRODUCE THE SUBSTANTIVE DIFFERENCE OF THE CODE

19   ITSELF WHICH COMPRISES THE DIFFERENCE?

20        MR. LYON:  IT'S A LITTLE BIT OF BOTH.

21      IT WILL TELL YOU WHAT LINES ARE THERE.  AND IT DOES HAVE --

22   IF THERE ARE DIFFERENCES IT WILL HAVE CODE EXCERPTS FROM THAT

23   THAT ARE DIFFERENT.

24       SO WHAT THIS IS DOING IS IT ALLOWS US TO DO TWO THINGS

25   THAT WE ARE DOING.  ONE IS TO CONFIRM OUR BELIEF THAT IT'S VERY

1      SIMILAR OR THE SAME AS THE OPEN SOURCE CODE.

2           NOW WE CAN DO THAT OURSELVES TO -- FOR EXAMPLE, WE COULD

3      TAKE THE GALAXY S3 AND WE CAN CONFIRM THAT WITH THE PRODUCT

4      CODE.  BUT THE MORE IMPORTANT PART OF THE TOOL IS FOR EACH OF

5      THESE INDIVIDUAL PRODUCTS FOR EACH OF THESE INDIVIDUAL BUILDS

6      WE WANT TO CONFIRM THERE AREN'T ANY DIFFERENCES, BECAUSE WE

7      DON'T BELIEVE AT THE END OF THE DAY WE HAVE TO SHOW 20 SOME

8      DIFFERENT VERSIONS OF THIS IMPLEMENTATION ON ALL THESE

9      DIFFERENT PRODUCTS.  IT'S ACTUALLY THE SAME IMPLEMENTATION FOR

10     THE PURPOSE OF THIS PATENT --

11          THE COURT:  OKAY, SO YOUR INTEREST IN IDENTIFYING ANY

12     DIFFERENCES OR PERHAPS EVEN MORE IMPORTANTLY THE LACK OF ANY

13     DIFFERENCE IS AS MUCH AS BETWEEN DIFFERENT BUILDS FOR A GIVEN

14     PRODUCT AS OPPOSED TO THE DIFFERENCE BETWEEN SAMSUNG'S

15     IMPLEMENTATION AND THE OPEN SOURCE?

16          MR. LYON:  CORRECT.

17          OTHERWISE WE ARE FORCED TO DO THIS ESSENTIALLY HUNDREDS OF

18     THOUSANDS OF TIMES OVER, AND IT'S THE SAME ANALYSIS

19     EFFECTIVELY.  THERE'S REALLY NO DIFFERENCE.  THIS JUST ALLOWS

20     US TO DO THAT.

21          AND THE REASON WHY WE NEED THE OUTPUTS IS THIS IS WHAT

22     WOULD GO FOR THE BASIS OF THE EXPERT REPORT AT THE END OF THE

23     DAY.  THIS IS WHAT THE EXPERT WOULD RELY ON TO SAY HERE, I DID

24     THIS, I HAD THIS RUN, HERE'S WHERE THE DIFFERENCES ARE, BUT

25     THEY ARE NOT MATERIAL BECAUSE X, Y, Z.

1    AND IF WE DON'T HAVE THAT, THE EXPERT CAN WRITE NOTES OR DO

2    SOMETHING TO THEM, BUT THEN WE HAVE NO REAL BASIS OR BACKUP

3    THAT IF SAMSUNG CHALLENGES US AND SAYS, NO, IN FACT THERE ARE

4    DIFFERENCES THAT YOU DIDN'T NOTE, WE DON'T HAVE ANY BASIS TO

5    SAY WELL, WE RAN IT AND HERE'S WHAT SHOWS YOU, THEN YOU DON'T

6    HAVE -- THESE ARE THE ONLY DIFFERENCES THAT APPLY.

7         THE COURT:  IF I MAY INTERRUPT.

8    SO I'M CURIOUS.  I UNDERSTAND, I THINK, THE BASIC POINT

9    YOU ARE TRYING TO PROVE OR DISPROVE THROUGH THE ANALYSIS.

10   HAVING CONDUCTED THIS WORK AT LEAST TO DATE, PUTTING ASIDE THE

11   ISSUE OF YOUR ABILITY TO TAKE THE RESULT OF THE DIFF TOOL AND

12   USE THEM WITH YOUR EXPERT OUTSIDE THE ROOM --

13        MR. LYON:  RIGHT.

14        THE COURT:  -- HAVE YOU BEEN ABLE TO REACH ANY

15   AGREEMENT WITH SAMSUNG AS TO ANY NUMBER OF THESE BUILDS OR

16   PRODUCTS THAT THERE ARE IN FACT NO MATERIAL DIFFERENCES?

17        MR. LYON:  NOT AT THIS POINT.

18   THEY ARE MAINTAINING THAT THE OPEN SOURCE CODE IS NOT

19   WHAT IS PUT ON THE PHONE, WHICH I THINK LITERALLY MIGHT BE

20   TRUE, BUT WHEN YOU LOOK AT THE CODE THAT'S ACTUALLY ON THE

21   PHONES THEY ARE IDENTICAL IN ALMOST ALL CASES THAT WE ARE

22   TALKING ABOUT.  SO MAYBE IT'S A MODIFIED VERSION.

23   BUT WE HAVE NOT AT THIS POINT HAD ANY AGREEMENT THAT THIS

24   PHONE IS IDENTICAL TO THIS PHONE, SO WHEN WE ARE ANALYZING IT

25   WE ONLY HAVE TO LOOK AT ONE, WE DON'T HAVE TO LOOK AT ALL 25.

1       THE COURT:  HAVE YOU HAD ANY CONVERSATIONS ALONG

2   THOSE LINES?  I TAKE IT THE ANALYSIS IS DONE, RIGHT?

3       MR. LYON:  THE ANALYSIS IS IN PROGRESS STILL.  WE ARE

4   STILL WORKING ON IT, BUT YES.

5       THE COURT:  HAS YOUR ANALYSIS TO DATE CONFIRMED OR

6   IDENTIFIED ANY EXACT MATCHES OR MATCHES THAT ARE EXACT FOR ALL

7   MATERIAL PURPOSES THAT YOU MIGHT --

8       MR. LYON:  I BELIEVE THE ANSWER TO THAT IS YES.

9     THEN THERE ARE -- SOMEWHERE THERE ARE DIFFERENCES THAT WE

10  DON'T THINK ARE MATERIAL, SO WE HAVE BEEN KEEPING TRACK OF

11  THOSE SO WE CAN ADDRESS THOSE.

12      THE COURT:  SO FOR EXAMPLE, IF YOU HAVE IDENTIFIED --

13  IT SEEMS TO ME IF THERE ARE NO DIFFERENCES AT ALL, THAT'S A

14  RELATIVELY EASY AGREEMENT TO REACH WITH THE OTHER SIDE UNLESS

15  THEY DISAGREE WITH THE EFFICACY OF YOUR TOOL.

16    WHERE THERE ARE SOME DIFFERENCES IDENTIFIED, THEN QUESTION

17  IS ARE THESE DIFFERENCES MATERIAL TO POINTS YOU OR SAMSUNG

18  WISHES TO MAKE.

19    HAVE YOU HAD ANY CONFERENCES OR HAD ANY MEET AND CONFER ON

20  THAT ISSUE.

21      MR. LYON:  NO WE HAVE NOT AT THIS POINT IN THE CASE?

22      THE COURT:  DO YOU INTEND TO --

23      MR. LYON:  WHAT WE HAD HOPED TO DO IS BE ABLE TO TAKE

24  THESE DIFF OUTPUTS AS WE ARE HAVING THEM IN HAND SO WE CAN SAY

25  WE AGREE WITH THIS OR NOT AGREE WITH THIS BUT WE DON'T HAVE

1    ACCESS TO THOSE.

2              THE COURT:  AT THIS POINT DO YOUR EXPERTS HAVE ANY

3    RESTRICTIONS ON THEIR ABILITY TO USE THE TOOL OR UNDERSTAND ITS

4    OUT PUT ON SITE.

5              MR. LYON:  NOT AT THIS POINT -- WE'VE HAD SOME ISSUES

6    WITH HOW THE ON SITE WORKS BUT WE ARE WORKING THOSE OUT.

7         I THINK WE ARE GETTING TO THE POINT WHERE THAT'S FINE.  ONE

8    OF THE THINGS SAMSUNG POINTS OUT IN ITS PAPERS IS THEY HAVE

9    GIVEN US THIS UNPRECEDENTED ACCESS TO THE CODE.  BUT IT'S

10   DIFFICULT BECAUSE THE CODE GETS UPDATED REALTIME AND WE DON'T

11   KNOW WHY IT'S BEING CHANGED OR WHAT'S BEING ADDED.

12        BUT PUTTING THAT ASIDE, WE ARE WORKING THOSE OUT AND I

13   THINK THAT'S CHANGING.

14        OTHER THAN THAT I DON'T THINK WE'VE HAD ANY ISSUES WITH THE

15   ABILITY TO USE THE TOOL.  WE HAVE BEEN ABLE TO MAKE THE

16   PRINTOUTS BUT WE HAVEN'T BEEN ABLE TO TAKE THEM OUT OF THE

17   SOURCE CODE AT THIS POINT.

18             THE COURT:  IF NOT AFTER THE MEET AND CONFER AND

19   CERTAINLY AFTER RECEIVING SAMSUNG'S RESPONSE YOU, I TAKE IT,

20   APPRECIATE THE CONCERN THEY HAVE ABOUT YOUR ABILITY TO TAKE THE

21   OUTPUT OF THE DIFF TOOL AND THE FACT THAT SOURCE CODE WILL BE

22   EXPOSED.

23        IS THERE ANY COMPROMISE OR PROPOSAL YOU MIGHT HAVE TO

24   MITIGATE THEIR CONCERNS, HOWEVER LEGITIMATE THEY MAY BE?

25             MR. LYON:  I THINK THERE'S TWO THINGS.

 1          ONE IS WE HAVE THE ABILITY -- OUR REVIEWERS HAVE THE

 2     ABILITY TO TAKE NOTES AND THERE'S REALLY NOTHING THAT PREVENTS

 3     THEM FROM WRITING THE SAME THING DOWN IN THEIR NOTES.

 4          AND THOSE NOTES AREN'T AS RESTRICTED AS IT WOULD BE IF IT'S

 5     A PRINT OUT THAT'S PRODUCED TO US FROM THE SOURCE CODE.  UNDER

 6     THAT WE'VE SAID EVEN THOUGH WE DON'T THINK IT'S SOURCE CODE IN

 7     THE SENSE IT MAY HAVE LINES HERE OR THERE BUT IT'S NOT SOURCE

 8     CODE IN THE PRINTOUT OF THE SOURCE CODE FILES, BUT WE ARE

 9     WILLING TO TREAT THEM LIKE SOURCE CODE IN THE PROTECTIVE ORDER

10     AND KEEP THEM UNDER THE SAME PROTECTIONS AND DO ALL OF THAT.

11          SO WE THINK THE PROTECTION BY THE PRINTOUTS, BECAUSE

12     SAMSUNG WOULD BE ABLE TO KEEP A COPY OF THE PRINTOUT WHICH THEY

13     WOULDN'T WITH THE NOTES.  IT'S ACTUALLY HARDER IF WE GET THEM

14     AND TREAT THEM AS PRINTOUTS AND TREAT THEM AS SOURCE CODE UNDER

15     THE PROTECTIVE ORDER.  WE ARE WILLING TO DO THAT.

16          THEN IF THE LOWER PROTECTION WOULD BE FOR US TO DO A

17     HANDWRITTEN NOTE WHICH SAMSUNG DOESN'T GET COPIES OF, AND WE

18     WOULD STILL HAVE THE SAME INFORMATION.  IT WOULD STILL BE OF

19     COURSE SUBJECT TO THE PROTECTIVE ORDER AND WE WOULD TREAT IT

20     THAT WAY.

21              THE COURT:  DO YOU HAVE A COPY OF THE DIFF TOOL?

22              MR. LYON:  I DON'T HAVE A COPY -- I HAVE A COPY OF

23     EXAMPLES OF WHAT WE COULD SHOW YOU WHAT IT LOOKS LIKE WHERE

24     THERE'S THE SAME FILE NOT.

25              THE COURT:  IF YOU WOULD MIND.  I TAKE IT

1    MS. MAROULIS HAS THAT?

2              MS. MAROULIS:  YOUR HONOR, THIS IS HIGHLY

3    CONFIDENTIAL SOURCE CODE.

4              MR. LYON:  THIS IS NOT.  WE ARE NOT PROVIDING ACTUAL

5    DIFF OUTPUTS OF THE SAMSUNG SOURCE CODE FOR THAT REASON.  THIS

6    IS SOMETHING WE RAN OFF OF PUBLIC ANDROID CODE.

7              THE COURT:  WHY DON'T YOU SHOW IT TO MS. MAROULIS.

8              MR. LYON:  WE DIDN'T WANT TO -- JUST TO MAKE IT

9    CLEAR, THESE AREN'T SAMSUNG SOURCE CODE, THESE ARE JUST

10   EXAMPLES FOR YOU.

11       MAY I APPROACH?

12             THE COURT:  YES.  HAND IT TO MR. RIVERA.

13             MR. LYON:  WHAT I'M HANDING TO MR. RIVERA NOW ARE

14   EXAMPLES -- THE FIRST ONE, THE ONE THAT HAS THE LIST IS THE

15   EXAMPLE OF A DIFF OUTPUT WHERE THE FILES WERE IDENTICAL.

16       AND THE SECOND IS AN EXAMPLE OF A DIFF OUTPUT WHERE THE

17   FILES WERE NOT IDENTICAL.

18       AND DO I HAVE THE -- THE UNDERLYING FILES HERE.

19             THE COURT:  SO AM I JUST LOOKING AT HEADERS?

20             MR. LYON:  SO IF YOU LOOK FOR EXAMPLE AT THE ONE WITH

21   THE LEAST AMOUNT OF TEXT, IT HAS TWO LINES.  ONE SAYS FILES AND

22   THE TWO TRIALS SAYS IT'S IDENTICAL.

23        THE SECOND ONE, WHAT WE DID IS WE MADE THESE UP.  SO IN

24   THIS CASE FILE 1 AND 3 ARE NOT IDENTICAL.  FILES 1 AND 2 WERE.

25   1 AND 3 ARE NOT.

1       AND SO THIS SHOWS THE DIFFERENCE BETWEEN THOSE TWO FILES,

2    IS JUST SHOWS THE PORTIONS THAT WERE DIFFERENT.

3           THE COURT:  SO HOW IS IT THAT IN LINES 4 THROUGH 9

4    I'M NOT LOOKING AT SOURCE CODE?

5           MR. LYON:  I THINK, WELL YOU ARE LOOKING AT -- THAT

6    IS TRUE.

7       SO THAT PART, AND THAT'S ONE REASON WHY WE ARE WILLING AND

8    HAPPY TO TREAT THESE AS SOURCE CODE BECAUSE THERE ARE EXCERPTS

9    OF ACTUAL DIFFERENCES IN THE SOURCE CODE FILES.

10          THE COURT:  SO IF I CAN ASK YOU TO STEP BACK TO THE

11   PROTECTIVE ORDER FOR A MOMENT, LET'S ASSUME WE ARE NOT TALKING

12   ABOUT THE SOURCE CODE DEPICTED IN THIS DIFF REPORT BUT RATHER

13   JUST A STRAIGHT OUT PRINTOUT OF THE SOURCE CODE.

14      YOU'RE SAYING YOU WOULD TREAT THIS REPORT IN EXACTLY THE

15   SAME WAY AS THAT STRAIGHT PRINTOUT?

16          MR. LYON:  CORRECT.

17      UNDER THE TERMS OF THE PROTECTIVE ORDER WE WOULD KEEP IT

18   LOCKED UP AS WE ARE REQUIRED TO DO AND ALL THE OTHER THINGS

19   THAT WE HAVE TO DO WITH THE ACTUAL PRINTOUTS OF SOURCE CODE

20   THAT WE HAVE.

21          THE COURT:  ALL RIGHT.

22      ANY OTHER POINTS, MR. LYON?

23          MR. LYON:  I THINK THAT'S THE MAIN POINT.  I CAN

24   ADDRESS WHATEVER.

25          THE COURT:  WE WILL DEAL WITH INTERROGATORY 22 IN

```
 1        JUST A MOMENT.

 2             MS. MAROULIS?

 3                  MS. MAROULIS:  YOUR HONOR, THE DISPUTE BETWEEN THE

 4        PARTIES IS ACTUALLY VERY NARROW.  IT'S NOT WHETHER APPLE CAN

 5        VIEW THE FILES USED IN THE DIFF PROGRAM OR WHETHER THEY CAN

 6        VIEW THE REVIEWER TOOLS.

 7                  THE COURT:  CAN YOU REMIND ME, MS. MAROULIS, WHERE IS

 8        THE SOURCE CODE REVIEW BEING PERFORMED?  IT'S BEEN SOME TIME

 9        SINCE I'VE SEEN YOU ALL.

10             MS. MAROULIS:  YES, YOUR HONOR.

11          THERE'S A SECURE FACILITY IN SAN JOSE WHERE THE REVIEW IS

12        GOING ON DAY-TO-DAY.

13             AND THERE'S ALSO AN OPPORTUNITY TO REVIEW THAT IN A ROOM

14        IN LOS ANGELES SECURE.

15                  THE COURT:  THIS IS A PARTY OFF SITE?

16             MS. MAROULIS:  IT'S A SAMSUNG FACILITY WHERE THE

17        APPLE REVIEWERS ARE ALLOWED TO DO WHAT THEY NEED TO DO.

18             SO THE TWO THINGS THAT THE COUNSEL CONCEDED IN THE

19        ARGUMENT IS THAT A, THEY ARE ABLE TO USE THE REVIEW TOOLS AND

20        HAVE BEEN USING THEM.

21             AND TWO, THAT THERE ARE NO RESTRICTIONS ON THE EXPERTS.

22             SO THE ONLY ISSUE IS WHETHER EXPERTS -- SO THE ONLY ISSUE

23        IS WHETHER THE EXPERTS IN APPLE CAN TAKE THE SOURCE CODE

24        PRINTOUTS, OR MORE PARTICULARLY THE DIFF PRINTOUTS, OFF SITE.

25        AND WE BELIEVE THAT IS A VIOLATION OF THE PROTECTIVE ORDER AND
```

1    HERE'S WHY.

2         THESE DIFFS -- FIRST OF ALL THEY ARE VERY LONG.  THERE'S

3    A RESTRICTION ON PAGE NUMBERS IN THE PROTECTIVE ORDER.  THEY

4    CANNOT PRINT MORE THAN 50 CONSECUTIVE PAGES OF THE SOURCE CODE

5    OR TEN PERCENT, WHICHEVER IS GREATER.

6         THE COURT:  OF ANY GIVEN FILE OR THIS BECOMES AN

7    ISSUE IN ANOTHER MOTION?

8         MS. MAROULIS:  BUT DIFFS ARE DIFFERENT.  THEY ARE

9    ALMOST LIKE A SUPER SOURCE CODE BECAUSE WHEN YOU COMPARE THE

10   FILES IT'S SIMILAR TO A RED LINE, BUT WHEN WE COMPARED THE

11   FILES IT ACTUALLY REPEATS THE PORTIONS OF THE SOURCE CODE THAT

12   ARE DIFFERENT.

13        SO IF YOU HAVE A FIVE-PAGE PRINTOUT OF A DIFF, IT'S

14   ACTUALLY A LOT MORE PAGES THAN FIVE PAGES BECAUSE SOMEONE CAN

15   TAKE A PUBLICLY AVAILABLE ANDROID CODE AND COMPARE IT WITH

16   THOSE FIVE PAGES.

17        SO IN A SENSE THEY ARE GETTING ACCESS TO A LOT MORE PAGES

18   IF THEY WOULD THAN IF THEY WERE PRINTING THE ACTUAL SOURCE

19   CODE.

20        THIS IS HIGHLY CONFIDENTIAL INFORMATION.  THE PROTECTIVE

21   ORDER WAS VERY HEAVILY NEGOTIATED AND THE VERY SPECIFIC

22   PROVISIONS UNDER THE PROTECTIVE ORDER ITSELF, DOCKET 171 ON

23   PAGES 16 AND 17, THEY CANNOT PRINT MORE THAN 50 PAGES.  THEY

24   CANNOT TAKE EITHER HAND NOTES OR ELECTRONIC NOTES THAT COPY

25   ACTUAL CODE.

1          THE COURT:  OKAY.  SO LET ME SEE IF I CAN JUST

2    BENEFIT FROM YOUR SUPERIOR APPRECIATION OF THE DETAILS OF THE

3    PROTECTIVE ORDER.

4          YOU ARE SAYING THAT UNDER THE PROTECTIVE ORDER FOR A

5    GIVEN FILE, HOWEVER WE DEFINE THAT, THEY GET TO PRINT OUT

6    50 PAGES.  NO MORE THAN THAT; IS THAT RIGHT?

7          MS. MAROULIS:  CONSECUTIVE, YES.

8          THE COURT:  OKAY.  50 CONSECUTIVE PAGES.

9          OKAY.  AND TO THE EXTENT THAT THERE'S A DIFFERENCE

10   BETWEEN FILE 1 AND FILE 2 WHICH RUNS 55 PAGES, UNDER APPLE'S

11   INTERPRETATION THEY WOULD BE ENTITLED TO THAT ENTIRE DIFF

12   REPORT, THE PROTECTIVE ORDER NOTWITHSTANDING, CORRECT?

13          MS. MAROULIS:  THAT'S WHAT APPLE IS ESSENTIALLY

14   ARGUING.

15          BUT THE POINT HERE IS EVEN BIGGER.  IT'S NOT JUST THAT IT

16   EXCEEDS 50 PAGES, IT'S THAT THE AMOUNT OF INFORMATION IN THOSE

17   55 PAGES COULD BE EQUIVALENT TO A MUCH LARGER AMOUNT OF SOURCE

18   CODE BECAUSE IT SYNTHESIZES, IT EXTRACTS SOURCE CODE.

19          SO A PERSON OR COMPETITOR WHO WANTED TO ENGINEER SAMSUNG

20   PROPRIETARY CODE COULD OBTAIN A LARGE CHUNK OF ANDROID CODE,

21   TAKE THAT EXCERPT, IF IT FALLS INTO THE WRONG HANDS AND

22   RECONSTRUCT THE ENTIRE CODE.  IT'S LIKE A BLUEPRINT.

23          SO IN THAT SENSE A 50 PAGE DIFF CARRIES A LOT MORE

24   INFORMATION TO THE OUTSIDE WORLD THAN A 50 PAGE SOURCE CODE

25   PRINTOUT.

1    THE COURT:  WELL, ARE -- ALL OF THE UNDERLYING LINES

2    OF CODE THAT YOU SUGGEST ARE REALLY IMPLICATED BY WHAT WOULD

3    OTHERWISE APPEAR TO BE A VERY SMALL PORTION OF CODE, PUBLICLY

4    AVAILABLE OPEN SOURCE, FOR EXAMPLE?

5    MS. MAROULIS:  YOUR HONOR, THERE'S OPEN SOURCE CODE

6    WHICH WE ALSO PROVIDED FOR FURTHER REVIEW AND BENEFIT.  BUT THE

7    DIFFS AND THE EXAMPLE COUNSEL GAVE YOU NECESSARILY IS A PUBLIC

8    EXAMPLE BUT THIS IS A ONE, THREE-LINE PAGE DIFF PORTION.

9    IF YOU HAVE A 10 OR 15 PAGE DIFF PRINTOUT, AND SOME OF

10   THEIR DIFFS ACTUALLY RAN INTO 500 PAGES.  A 500 PAGE DIFF

11   PRINTOUT COULD POTENTIALLY ENCOMPASS THE ENTIRE CODE.  SO IT'S

12   A VERY LARGE AMOUNT OF SOURCE CODE OUT THERE.

13   AND THE WAY THAT DIFF WOULD LOOK LIKE IS THAT IF THERE'S

14   NO DIFFERENCE BETWEEN THE CODE IT JUST SAYS NO DIFFERENCE LIKE

15   THE DELTA REVIEW IN THE RED LINE.

16   IF THERE IS A DIFFERENCE, IT PUTS THE ENTIRE LINE OF CODE

17   THERE.  SO TO A PERSON WHO IS NOT SKILLED IN CODE READING LIKE

18   ME, I WOULD NOT BE ABLE TO GET ANYTHING FROM IT.  BUT A

19   COMPETITOR WHO WANTS TO GET THEIR HANDS ON SAMSUNG'S

20   PROPRIETARY TRADE SECRETS, THEY CAN TAKE THAT PRINTOUT AND

21   COMPARE IT TO THE ANDROID FILE OF OPEN SOURCE FILE AND

22   RECONSTRUCT SAMSUNG'S PROPRIETARY CODE.

23   THE COURT:  IS THERE ANY RESTRICTION FROM THE

24   PROTECTIVE ORDER WHICH LIMITS AN APPLE EXPERT OF TAKING NOTES

25   OF EXACTLY THE SAME INFORMATION?

1          MS. MAROULIS:  YOUR HONOR, THERE'S A RESTRICTION IN

2     PARAGRAPH ON PAGE 16 THAT THEY CANNOT REPEAT THE CODE LINES IN

3     THEIR NOTES.  THEY CAN TAKE NOTES BUT THEY CANNOT MANUALLY COPY

4     DOWN THE CODE NOTES EITHER ON THE COMPUTER OR IN PERSON.  IF

5     YOUR HONOR NEEDS A CLEAN COPY, I CAN ASK ONE OF MY COLLEAGUES.

6          THE COURT:  I ACCEPT YOUR REPRESENTATIONS.

7          MS. MAROULIS:  BUT LET ME GIVE YOU THE EXACT

8     PROVISION.  I BELIEVE IT'S PARAGRAPH 11, LINE N.

9          SO THE REASON ALL THESE PROVISIONS WERE PUT IN THE

10    PROTECTIVE ORDER IS BECAUSE SAMSUNG VALUES THE PROTECTION OF

11    ITS SOURCE CODE EXTREMELY HIGHLY.

12         THIS SECURE FACILITY CREATED PROVIDES APPLE WITH ENORMOUS

13    ADVANTAGE.  THEY CAN REVIEW THE CODE JUST THE WAY IT IS BEING

14    BUILT, MODIFIED IN KOREA THEY CAN SEE ANYTHING THEY WANT TO

15    SEE.

16         ADDITIONALLY WE MADE TO THEM AVAILABLE OR WE WERE IN THE

17    PROCESS OF MAKING AVAILABLE, RELEASED VERSIONS OF THE CODE ON A

18    HARD DRIVE WHICH ALSO NEEDS TO BE VIEWED IN A FACILITY, BUT IT

19    ADDRESSES SOME OF THE ISSUES THAT COUNSEL RAISED REGARDING HOW

20    IT'S WRITTEN DOWN AND LOGGED.

21         BUT THE IMPORTANT POINT HERE IS IT'S A VERY NARROW

22    DISPUTE WHICH IS THEY CANNOT WALK OFF WITH SAMSUNG'S TRADE

23    SECRETS BECAUSE DESPITE THEIR BEST EFFORTS, DOCUMENTS ARE

24    MISLAID.  AND WE DON'T WANT IT IN THE HANDS OF THE PUBLIC OR

25    COMPETITORS.  AND IT'S HIGHLY CONFIDENTIAL AND USEFUL

1    INFORMATION BECAUSE IT'S AN ARCHITECTURAL BLUEPRINT OF THE

2    SAMSUNG CODE.

3        THEY HAVE BEEN ABLE TO VIEW THE CODE AND RUN TWO

4    IMPORTANT TOOLS, I THINK IT'S CALLED VISUAL SLICKEDIT AND

5    CYGWIN.  THEIR EXPERTS ARE USING THEM, THEY ARE THERE EVERY DAY

6    AND WE CAN BE THERE AS LONG AS THEY NEED TO ANY TIME.

7        AND WE ARE ASSISTING THEM THE BEST WAY WE CAN TO THE

8    SOURCE CODE.  I WOULD SUBMIT AN UNPRECEDENTED ACCESS TO THE

9    CODE THAT IN MANY OTHER CASES A LOT LESSER PROVISIONS ARE --

10        THE COURT:  SO WHAT DO THEY DO IF YOU DON'T AGREE

11    THAT A GIVEN BUILD IS MATERIAL, IDENTICAL TO ANOTHER BUILD?

12        WHAT ARE THEY SUPPOSED TO DO IN ORDER TO CHALLENGE THAT

13    POINT?  IF THEY CAN'T HAVE ACCESS TO THE DIFFERENCES BETWEEN

14    THE TWO FILES?

15        MS. MAROULIS:  YOUR HONOR, FIRST OF ALL, IF THERE'S A

16    PARTICULAR PORTION OF THE SOURCE CODE THAT THEY WANT TO SHOW AS

17    IDENTICAL THEY CAN PRINT THAT PAGE FROM ONE FILE AND ANOTHER

18    PAGE FROM ANOTHER FILE AND SHOW IT'S IDENTICAL.

19        THE COURT:  RIGHT.

20    THE SCENARIO I'M IMAGINING IS ONE WHERE THERE ARE

21    DIFFERENCES AND YOU ALL HAVE A DISAGREEMENT OVER WHETHER THOSE

22    DIFFERENCES MATTER.  IF THEY CAN'T REVIEW THAT CODE AND PRESENT

23    THAT CODE AND OPINE ON THAT CODE THROUGH EXPERT TESTIMONY, HOW

24    ARE THEY TO ENGAGE WITH YOU ALL AND PRESENT TO JUDGE KOH OR THE

25    JURY THAT EVIDENCE?

1           MS. MAROULIS:  WELL, YOUR HONOR, THE IMPORTANT PART

2     IS THAT TO ANALYZE INFRINGEMENT THEY NEED TO SEE SAMSUNG CODE.

3     THAT'S THE CODE THAT'S IMPLEMENTED IN THE DEVICES.  THEY HAVE

4     ACCESS TO THAT CODE.

5           I WOULD SUBMIT TO YOUR HONOR THAT THE DIFFERENCES BETWEEN

6     ANDROID CODE AND THIS CODE IS ACTUALLY NOT IMPORTANT BECAUSE

7     IT'S NOT LIKE WE ARE COMPARING FOR, SAY, COPYRIGHT INFRINGEMENT

8     CASE WHERE MINOR DIFFERENCES MATTER.

9           THE COURT:  SO COULD YOU STIPULATE FOR EXAMPLE THAT

10     THERE ARE NO DIFFERENCES THAT MATTER BETWEEN EACH OF THESE

11     DIFFERENT BUILDS?

12           MS. MAROULIS:  YOUR HONOR, FIRST OF ALL, THEY NEVER

13     APPROACHED US WITH THAT.

14           THE COURT:  I'M APPROACHING YOU NOW.

15        WHAT DO YOU THINK ABOUT THAT?

16           MS. MAROULIS:  YOUR HONOR, THAT'S SOMETHING WE NEED

17     TO DISCUSS INTERNALLY WITH THE CLIENT.  IT'S VERY DIFFICULT TO

18     MAKE STATEMENTS FOR THE ENTIRE FILE.  OBVIOUSLY THERE'S

19     SPECIFIC FILES THAT ARE RELEVANT TO VARIOUS ISSUES.

20        SO NOW I CANNOT MAKE A REPRESENTATION HERE, STANDING HERE

21     NOW, THAT ANYTHING IS IDENTICAL TO ANYTHING ELSE.

22           THE COURT:  LET'S PLAY THIS OUT A BIT.

23        LET'S ASSUME YOU SPEAK TO YOUR CLIENT AND FOR WHATEVER

24     REASON YOU ARE NOT WILLING OR ABLE TO STIPULATE THAT THE

25     DIFFERENCES FROM ONE BUILD TO THE NEXT ARE IMMATERIAL.

1          IN THAT SCENARIO WHERE THE DIFFERENCES ARE SUBSTANTIAL IN

2     TERMS OF VOLUME, HOW COULD JUDGE KOH OR A JURY EVALUATE WHICH

3     ONE OF YOU IS RIGHT UNLESS THEY COULD SEE THE EVIDENCE

4     THEMSELVES?

5          AND IF THAT'S TRUE, HOW COULD APPLE MEANINGFULLY PRESENT

6     ITS SIDE OF THE STORY WITHOUT BEING ABLE TO HAVE A COPY OF THE

7     DIFFERENCES THAT ARE BEING DISCUSSED?

8             MS. MAROULIS:  YOUR HONOR, FIRST OF ALL, WE HAD A

9     TRIAL IN THIS CASE IN THE PRIOR CASE.

10            THE COURT:  YEAH, I'M FAMILIAR.  I REMEMBER.

11            MS. MAROULIS:  AND APPLE DID NOT INTRODUCE ANY SOURCE

12    CODE.  I BELIEVE THE ONLY SOURCE CODE THAT WAS INTRODUCED WAS

13    THIRD-PARTY CODE.

14         THEY BASICALLY FLASHED ONE PHONE TO THE JURY AND SAID AND

15    THE OTHER 26 PRODUCTS WORK THE SAME WAY.

16         SO A VERY PRACTICAL ASPECT IS THIS IS NOT GOING TO BE AT

17    TRIAL.

18         BUT SPECIFICALLY, THEY HAVE ACCESS TO THE CODE AND THEY

19    CAN MAKE A NOTE AND THEY CAN EXPLAIN THEIR EXPERT DECLARATION,

20    WHAT THEY THINK ABOUT DIFFERENCES OR SIMILARITIES.

21         BUT THE POINT IS THAT THEY HAVE TO PROVE INFRINGEMENT AND

22    THEY NEED TO LOOK AT THE ACCUSED DEVICES AND THE --

23            THE COURT:  RIGHT.

24         BUT IF THEIR EXPERT IS UP ON THE STAND, FOR EXAMPLE, AND

25    MAKING THE POINT THAT BUILD NUMBER 7 IS NO DIFFERENT THAN BUILD

1    NUMBER 6, AND ONE OF YOU, EITHER YOU OR ONE OF YOUR COLLEAGUES

2    STANDS UP AND CROSS-EXAMINES THE EXPERT AND ASKS, WELL, WHERE'S

3    THE CODE YOU ARE RELYING UPON TO MAKE THAT ASSERTION?

4        YOU CAN'T SHOW THIS JURY THE CODE.  WHAT'S HE OR SHE

5    SUPPOSED TO DO IN THAT SITUATION?

6            MS. MAROULIS:  WELL, YOUR HONOR, THEY COULD PRINT

7    PORTIONS OF THE ACTUAL CODE.  THERE COULD BE SMALLER PORTIONS

8    BECAUSE THEY CAN'T PRINT MORE THAN 50 PANGS.

9            BUT I DON'T SEE ANY CIRCUMSTANCE WHICH THEIR EXPERT IS

10   GOING TO BE OPINING BETWEEN TWO DIFFERENT RELEASES.

11           THE COURT:  BUT YOU ARE NOT WILLING TO STIPULATE THAT

12   THOSE DIFFERENCES ARE MATERIAL, SO HOW CAN YOU MAKE THAT

13   CATEGORICAL STATEMENT?

14           MS. MAROULIS:  THAT CONVERSATION HAS NOT HAPPENED YET

15   BETWEEN APPLE AND OURSELVES OR OURSELVES AND THE CLIENT.  BUT

16   IMPORTANTLY, SO FAR THE CONVERSATION ABOUT DIFFS WAS

17   CONVERSATION ABOUT COMPARING PUBLIC CODE TO SAMSUNG PROPRIETARY

18   CODE.

19       AND THE REASON THIS IS IMPORTANT IS THAT A, THOSE

20   DIFFERENCES DO NOT MATTER FOR APPLE'S INFRINGEMENT ANALYSIS.

21       BUT SECONDLY, BECAUSE THE PUBLIC CODE IS PUBLIC, THAT

22   HEIGHTENS THE POTENTIAL INJURY FROM RELEASING THESE DIFFS.

23       THE MOTION WAS NOT FILED ON COMPARING TWO SAMSUNG -- THEY

24   WANT TO BE ABLE TO COMPARE ANDROID CODE TO PROPRIETARY CODE.

25           AND IT'S POSSIBLE THAT THEY ARE ALSO WRITING THIS OTHER

1    ANALYSIS THERE AND DIFFS ISSUES WOULD APPLY SIMILAR TO THAT.

2    BUT THE MAIN CONCERNS ARE THE ONES OF SECURITY.

3           THE COURT:  ALL RIGHT.

4       ANY OTHER POINTS YOU WANT TO MAKE ON THIS ISSUE,

5    MS. MAROULIS?

6           MS. MAROULIS:  WE ARE GO GOOD ON THIS.

7           THE COURT:  ALL RIGHT.  THANK YOU.

8       MR. LYON, BRIEF RESPONSE.

9           MR. LYON:  THANK YOU, YOUR HONOR.

10      JUST A COUPLE THINGS.  WHAT THE MOTION IS COVERING, IT IS

11   COVERING BOTH.  WE ARE ASKING TO BE ABLE TO COMPARE TO THE OPEN

12   SOURCE TOO, ALTHOUGH WE DON'T NEED TO DO THAT FOR EVERY SINGLE

13   BUILD.  I THINK WE NEED TO COMPARE THE BUILDS BECAUSE THAT'S

14   WHERE THE FIGHT MIGHT ACTUALLY BE.

15       CATEGORICAL REFUSAL TO PRODUCE DIFFS IS WHAT WE ARE

16   TALKING ABOUT.

17          THE COURT:  WELL, THEY ARE PRODUCING THEM.  YOU'VE

18   HAD ACCESS TO THEM FOR MONTHS.

19          MR. LYON:  WELL, THAT'S TRUE, BUT WE ARE NOT ABLE TO

20   TAKE THEM OUT.  IT'S NOT A SITUATION WHERE -- LET'S SAY WE TAKE

21   THE 500 PAGES THAT MS. MAROULIS REFERRED TO.

22       FOR ONE THING, THE SOURCE CODE PROTECTIVE ORDER SAYS 50

23   CONSECUTIVE PAGES OF SOURCE CODE, NOT 50 CONSECUTIVE PAGES OF

24   DIFF OUTPUTS.

25       AND THERE'S A DIFFERENCE BECAUSE THESE DIFFS WON'T

1    NECESSARILY BE 50 CONSECUTIVE PAGES.

2            THE COURT:  LET'S EXPLAIN WHAT I WAS LOOKING AT

3    EARLIER WAS SOURCE CODE.

4            MR. LYON:  BUT IT WON'T BE 50 CONSECUTIVE PAGES,

5    NECESSARILY.

6        BUT LET'S ASSUME THERE IS ONE LIKE THAT.  THIS IS A

7    SITUATION WHERE WE COULD TALK ABOUT THAT IN THAT SITUATION,

8    PERHAPS.  BUT THAT'S NOT WHAT SAMSUNG'S POSITION IS.  SAMSUNG'S

9    POSITION IS FOR ANY DIFF OUTPUTS, REGARDLESS OF WHETHER IT'S

10   50 PAGES OR NOT.  SO THAT'S THE ISSUE.

11       AND I DO AGREE IF WE CAN RESOLVE THIS THROUGH AN AGREEMENT

12   THAT THERE ARE NO DIFFERENCES THAT ARE MATERIAL FOR THESE

13   PRODUCTS, THAT WOULD BE GREAT.

14       BUT WE ARE CONCERNED AND WANT TO MAKE SURE WE AREN'T CAUGHT

15   AT THE LAST MINUTE HERE HAVING A SITUATION WHERE OUR EXPERTS

16   DON'T HAVE THE BACKUP THEY NEED IN ORDER TO BE ABLE TO SHOW IN

17   DEPOSITION OR PERHAPS AT TRIAL.

18       AND I WOULD SAY THAT WHAT WE DID IN 1846 WAS APPROPRIATE

19   FOR 1846.  WHAT WE ARE DOING HERE IN THE 630 CASE MAY BE

20   DIFFERENT BECAUSE THE PATENTS ARE DIFFERENT.  SO WE MAY DO

21   THINGS WE DIDN'T DO WITH RESPECT TO SOURCE CODE.  I DO NOT KNOW

22   YET, BUT THAT'S SOMETHING WE ARE KEEPING IN MIND.

23           THE COURT:  ALL RIGHT.

24       WELL LET'S TURN TO THE INTERROGATORY ISSUE.  I WILL JUST --

25   THE LAST POINT ON THE DIFF ISSUE.

1       IT SEEMS TO ME THE PLACE TO START WOULD BE TO SEE IF YOU

2   CAN REACH AN AGREEMENT TO MOOT ALL OF THIS OR MOOT MOST OF

3   THIS.

4       IT DOESN'T SOUND LIKE THAT DISCUSSION HAPPENED AT ALL.  IF

5   YOU WANT A DECISION, I WILL GIVE YOU A DECISION.

6           MR. LYON:  THANK YOU.

7       AS FAR AS THE INTERROGATORY, SO THE KEY ISSUE HERE IS

8   WHAT WE ARE SEEING IS WHEN YOU LOOK AT THESE WORK SPACES THAT

9   I'VE BEEN TALKING ABOUT, YOU WILL SEE MANY, MANY PACKAGES OF

10  CODE THAT ARE WITHIN THESE WORK SPACES THAT MAKE UP A

11  PARTICULAR BUILD.

12      WHEN YOU LOOK WITHIN THESE WORK SPACES YOU WILL SEE IN

13  SOME CASES DUPLICATES OF PACKAGES WITHOUT REALLY ANY

14  EXPLANATION OF WHY THEY ARE THERE OR WHICH ONES OF THESE

15  DUPLICATE PACKAGES ARE ACTUALLY ON THE PHONE.

16      AND IF WE ATTACHED THAT IN EXHIBIT P TO THE DECLARATION

17  OF OUR MOTION.  YOU WILL SEE LISTINGS, WE GIVE AN EXAMPLE FOR

18  GALAXY S3 AND THE 2, IF I RECALL CORRECTLY, WHERE WE SHOW THERE

19  ARE DUPLICATE ENTRIES.

20      WE HAVE NO WAY OF REALLY KNOWING WHICH OF THESE

21  PARTICULAR PACKAGES OF SOURCE CODE FIND THEMSELVES ON THE PHONE

22  AND WHICH DON'T.  IT MAY BE THAT SOME OF THESE WERE BUILT AND

23  NEVER ACTUALLY IMPLEMENTED, IT COULD BE THAT IS THE PROCESS

24  THESE ARE UPDATES THAT HAVE YET TO BE IMPLEMENTED, WE DON'T

25  KNOW.

1          AND SO WHAT WE'VE ASKED TO DO WITH ROG 22 IS TO HAVE

2     SAMSUNG TELL US WHAT, WHICH PORTIONS OF THESE CODES ACTUALLY GO

3     ON WHICH BUILDS OF THE PHONE SO WE CAN TRACK THIS.

4          THE COURT:  ARE THERE PARTICULAR FEATURES OR SUBSETS

5     OF THE CODE FOR A GIVEN BUILD THAT REALLY MATTER?  DO YOU

6     REALLY NEED THAT IDENTIFICATION ACROSS THE BOARD FOR THE ENTIRE

7     BUILD?

8          MR. LYON:  NO.

9          WHAT I THINK WE'VE DONE WITH EXHIBIT P AS AN EXAMPLE IS WE

10    IDENTIFIED WHAT WE THINK ARE THE IMPORTANT ONES.  AND WHAT WE

11    PROPOSED, WHAT WE THINK WOULD BE PERFECTLY FINE, RESULTS OF

12    THIS IS IF WE COULD IDENTIFY A LIST OF HERE'S THE ONES WE ARE

13    INTERESTED IN, COULD YOU TELL US WHICH OF THESE DUPLICATE

14    PACKAGES ARE IMPLEMENTED ON THE PHONES AND WHICH VERSIONS.

15         AND THEY RESPOND TO US WITHIN, SAY, 3 TO 5 DAYS OR SOME

16    KIND OF FIXED PERIOD.  THAT WOULD BE A PERFECTLY GOOD RESULT.

17         RIGHT NOW THEY ARE REFUSING TO ANSWER AT ALL, PARTIALLY

18    BECAUSE THE WAY THE INTERROGATORY IS WORDED IT IS MORE BROAD.

19    BUT WHAT WE ARE REALLY ASKING FOR AND WHAT WE ARE REALLY

20    FOCUSED ON IS THIS DUPLICATE ISSUE.

21         THE COURT:  I CERTAINLY READ THE INTERROGATORY AS

22    BROADLY AS YOU HAVE SUGGESTED IT IS DRAFTED.  THIS IS A MORE

23    MODEST PROPOSAL YOU ARE MAKING NOW, WAS THAT A PROPOSAL MADE IN

24    THE MEET AND CONFER?

25         MR. LYON:  IT'S MY UNDERSTANDING THAT WAS SOMETHING

1    DISCUSSED AS PART OF THE MEET AND CONFERS.

2         THE COURT:  AND THE RESPONSE FROM SAMSUNG TO THAT

3    MORE LIMITED PROPOSAL WAS NO?

4         MR. LYON:  THAT'S MY UNDERSTANDING.

5         AND SO, YOU KNOW, BUT WE ARE WILLING I THINK AT THIS

6    POINT BECAUSE WE WOULD LIKE TO HAVE THEM HAVE A LISTING FOR ALL

7    THE FUNCTIONS SO WE CAN GET THEM TO AGREE THESE ARE THE CODE

8    PACKAGE PACKAGES THAT GO WITH THE PARTICULAR FUNCTIONS THAT

9    WERE AT ISSUE.

10        BUT FRANKLY, I THINK WE CAN IDENTIFY THOSE.  SO IT'S NOT

11   AS CRITICAL.  THAT WOULD BE SOMETHING WE WOULD LIKE THEM TO DO

12   SO WE CAN JUST ELIMINATE ANY DISAGREEMENTS.

13        BUT IF THERE'S A CONCERN THAT THAT REQUIRES TOO MUCH

14   EFFORT ON THEIR PART, WHAT WE REALLY NEED THEN IS FOR THESE

15   DUPLICATE PACKAGES, WE CAN IDENTIFY TO THEM TO HAVE THEM TELL

16   US WHICH OF THESE ARE REALLY PART OF THE CODE, WHICH OF THESE

17   ARE PART OF THE CODE THAT GOES ON THE PHONE.

18        THE COURT:  ALL RIGHT.  THANK YOU.

19        MS. MAROULIS.

20        MS. MAROULIS:  YOUR HONOR, I WASN'T PERSONALLY

21   PRESENT AT THE LEAD COUNSEL MEET AND CONFER.  I DO NOT BELIEVE

22   THAT PROPOSAL AS ARTICULATED TO DATE HAS BEEN MADE.  SO I'M

23   GOING TO RESPOND TO SOME OF YOUR HONOR'S QUESTIONS A BIT ON THE

24   FLY HERE.

25        INTERROGATORY 22 AS WORDED IS EXTREMELY BROAD.  WHAT IT

1    BASICALLY ASKS US -- AND AGAIN I APOLOGIZING FOR BURDENING THE

2    COURT WITH ALL THESE BOXES.  WHAT IT ASKS US IS TO PROVIDE PIN

3    CITES FROM SOURCE CODE TO ALL THE PAPERS CONTAINED IN THESE

4    FOUR BOXES STANDING BEFORE YOUR HONOR.

5         THAT IS INAPPROPRIATE BOTH BECAUSE WE DO NOT ACTUALLY

6    UNDERSTAND SOME OF APPLE'S CONTENTIONS AND THEY'RE TOO VAGUE

7    FOR US TO FIND IT, BUT IT WOULD ALSO FUNDAMENTALLY SHIFT THE

8    BURDEN FROM THE PATENTEE --

9         THE COURT:  WELL TO BE KIND OF BLUNT ABOUT IT, THE

10   COURT IS ON THE BAZAAR, RIGHT.

11        IN MOST NORMAL PATENT CASES, IF THERE IS SUCH A THING, A

12   PATENTEE PROVIDES CONTENTIONS AND CITES TO THE SOURCE CODE TO

13   SUPPORT THE CONTENTION.

14        AS I UNDERSTAND WHAT'S BEING ASKED OF SAMSUNG HERE, YOU'RE

15   BEING ASKED TO PULL OUT SOURCE CODE CITATIONS FOR THEIR

16   CONTENTIONS.

17        MS. MAROULIS:  THAT IS EXACTLY RIGHT, YOUR HONOR.

18        AND FOR ALL THESE FOUR BOXES.

19        SO WE OBVIOUSLY OBJECT FOR REASONS OF BOTH IT'S INCORRECT

20   LEGALLY BUT IT ALSO IS EXTREMELY BURDENSOME AND WOULD BE

21   ACTUALLY DIFFICULT FOR US TO GET INTO THE MIND OF APPLE AND ITS

22   EXPERTS AND FIGURE OUT WHAT THEY MEANT.

23        THAT IS HALF OF THE INTERROGATORY.

24        THE OTHER HALF APPEARS TO GO TO THIS ISSUE OF

25   DIFFERENCES.

1        AGAIN, IF WE UNDERSTOOD THAT ACTUALLY ALL THEY ARE ASKING

2    FOR IS TO FIGURE OUT THE DIFFERENTIATION BETWEEN WHAT THEY CALL

3    DUPLICATES, WE CERTAINLY CAN TAKE IT UNDER ADVISEMENT AND TALK

4    TO THEM ABOUT IT.

5        MY UNDERSTANDING IS THERE'S SOMETHING CALLED MEG FILE

6    THAT ACTUALLY SHOWS YOU HOW THE CODE IS BUILT FOR A PARTICULAR

7    PRODUCT.  SO IT'S NOT DUPLICATE INSOFAR AS YOU USE THE MEG FILE

8    YOU WILL KNOW EXACTLY WHAT IS USED FOR IT.

9        BUT NOW THAT WE UNDERSTAND THAT TODAY THE NARROW

10   INTERROGATORY 22 TO THAT ASPECT I WOULD APPRECIATE AN ATTORNEY

11   TO DISCUSS IT WITH PEOPLE WITH THE CLIENT AND THE TEAM.  BUT AS

12   CURRENTLY WRITTEN ROG 22 IS SIMPLY UNATTAINABLE.  IT'S BOTH

13   OVERBROAD AND LEGALLY INCORRECT.

14       SO WE SUBMIT THAT THAT MOTION SHOULD BE DENIED.  AND TO

15   THE EXTENT YOUR HONOR WOULD PREFER FOR THE PARTIES TO GO BACK

16   AND DISCUSS ANY DUPLICATE ISSUES, WE ARE CERTAINLY HAPPY TO DO

17   THAT.

18           THE COURT:  ALL RIGHT.  THANK YOU.

19       MR. LYON, ANY BRIEF RESPONSE?

20           MR. LYON:  YEAH, NOT VERY LENGTHY.

21       I JUST -- I THINK WITH RESPECT TO THE BREADTH OF THE

22   INTERROGATORY, WE TALKED ABOUT TRYING TO LIMIT AND ASK THEM TO

23   IDENTIFY DIFFERENCES THAT THEY ARE CONTENDING ARE MATERIAL.

24       WE DIDN'T GET AGREEMENT ON THAT.  SO IT IS SOMETHING -- ALL

25   OF THIS IS JUST TRYING TO NARROW WHAT'S GOING TO REALLY BE

1    DISPUTED --

2              THE COURT:  WOULD YOU AGREE THAT IT IS, AT THE VERY

3    LEAST, UNUSUAL FOR A PATENTEE TO EXPECT THAT A DEFENDANT

4    IDENTIFY SOURCE CODE THAT SUPPORTS THE PATENTEES INFRINGEMENT

5    CONTENTIONS?

6              MR. LYON:  WELL, IN THE VAGUE ABSTRACT WAY YOU PUT

7    IT, I WOULD AGREE WITH THAT.  BUT I THINK WHEN YOU SEE THE

8    INFRINGEMENT CONTENTIONS --

9              THE COURT:  OH, I SAW THEM.

10             MR. LYON:  GOOD POINT.  ALL RIGHT.

11         WITH RESPECT TO THE INFRINGEMENT CONTENTIONS, WE DO

12    IDENTIFY PARTICULAR FUNCTIONALITY.  AND IN SOME CASES WE

13    ACTUALLY DO GET INTO THE VARIOUS CODE PACKAGES, SOME DO AND

14    SOME DON'T.  I WOULD AGREE WITH THAT.  BUT WE DO AT LEAST

15    IDENTIFY FUNCTIONALITY.

16         I DON'T THINK IT'S UNUSUAL TO EXPECT THE DEFENDANT WHO

17    KNOWS THEIR PRODUCT TO IDENTIFY PARTICULAR PORTIONS THAT WOULD

18    APPLY TO THE FUNCTIONALITY THAT'S IDENTIFIED IN THE CONTENTION.

19         BUT WHAT WE ARE SAYING HERE NOW JUST TO AVOID CONTINUED

20    DISPUTES, ALL WE ARE REALLY FOCUSSING IS WE CAN GET AN

21    UNDERSTANDING -- AND THE MEG FILES I JUST WANT TO ADDRESS ONE

22    POINT ON THAT.

23         THESE MEG FILES, THEY ARE VERY CONVOLUTED WHEN YOU LOOK

24    AT THEM.  I WON'T GET INTO DETAILS BECAUSE POTENTIALLY THEY ARE

25    SOURCE CODE CONFIDENTIAL INFORMATION.

 1          YOU CAN THINK OF THEM AS TREES OF MEG FILES IF YOU WILL.

 2     THEY REALLY GET VERY COMPLICATED TO TRY TO TRACE BY HAND ONE

 3     MEG FILE, ONE GOES TO ANOTHER TO ANOTHER, AND IT GETS VERY

 4     DIFFICULT.  AND WE CAN'T COMPILE THE CODE BECAUSE THE

 5     PROTECTIVE ORDER PREVENTS US FROM DOING THAT.

 6          SO THE WAY TO HANDLE THIS EFFICIENTLY IS TO SAY, CAN YOU

 7     TELL US WHAT'S ACTUALLY ON THE PHONE.

 8          THE COURT:  ALL RIGHT.  THANK YOU.

 9          LET'S TURN NEXT TO THE MOTION TO COMPEL DOCUMENTS AND

10     THINGS FROM APPLE, AND ALSO THE MOTION TO COMPEL THE

11     DEPOSITIONS OF, I THINK IT'S DR. LEE AND MR. KIM.

12          MR. FAZIO:  GOOD MORNING, YOUR HONOR.

13          THE COURT:  GOOD MORNING.

14          MR. FAZIO:  MICHAEL FAZIO ON BEHALF OF THE SAMSUNG

15     DEFENDANTS.

16      I WILL BE ARGUING BOTH OF THESE MOTIONS, THE MOTION TO

17     COMPEL PRICING DOCUMENTS AGAINST APPLE.

18      I WANTED TO START BY SAYING I CERTAINLY APPRECIATE THE

19     COURT HAS A LOT OF PAPER IN FRONT OF IT AND I WANTED TO TRY TO

20     DRAW A FEW OF OUR POINTS OUT TO THE FOREFRONT OF THAT ARENA, SO

21     TO SPEAK.

22          THE FIRST IS THAT IT'S UNDISPUTED THAT APPLE HAS A CLAIM

23     FOR LOST PROFITS THAT THEY'RE PURSUING IN THIS CASE.  AND APPLE

24     IS CLAIMING, IN FACT, THAT THE ACCUSED FEATURES AT ISSUE IN

25     THIS CASE HAVE CAUSED THEM LOST SALES.

1          THE COURT:  APPLE IS NOT CLAIMING HOWEVER AND HAS

2   DISCLAIMED ANY THEORY OF PRICE EROSION, CORRECT?

3          MR. FAZIO:  THEY HAVE, YOUR HONOR.

4       THAT WAS A POINT THAT WE MADE IN OUR MOVING PAPERS AND THEY

5   CAME BACK AND SAID THEY ARE NOT RELYING ON PRICE EROSION.  SO I

6   DID WANT TO SET THAT ISSUE ASIDE FOR A MOMENT BECAUSE THAT

7   REPRESENTATION DOES SEEM TO RESOLVE PRICE EROSION.

8          THE COURT:  I'M CURIOUS, WAS THAT REPRESENTATION IN

9   APPLE'S OPPOSITION TO A MOTION TO COMPEL THE FIRST INSTANCE IN

10  WHICH YOU WERE INFORMED THAT THAT THERE WAS NO PRICE EROSION AT

11  ISSUE IN THIS CASE.

12         MR. FAZIO:  IT WAS, YOUR HONOR.  IT WAS.

13      AND SO IN THIS CASE WHERE APPLE IS CLAIMING THAT THESE

14  ACCUSED FEATURES CAUSED LOST SALES ACCORDING TO APPLE WE,

15  SAMSUNG, ARE NOT ENTITLED TO DOCUMENTS THAT SHOW THE EFFECT OF

16  PRICE ON SALES.

17      AND THAT'S VERY SIGNIFICANT, YOUR HONOR.  BECAUSE IF

18  THERE'S AN APPLE MARKETING CUSTODIAN OR AN APPLE FINANCIAL

19  PERSONNEL CUSTODIAN AND THEY HAVE PRICING ANALYSIS DOCUMENTS --

20         THE COURT:  WELL, THE EFFECT AT LEAST ACCORDING TO

21  MOST WELL UNDERSTOOD THEORIES OF MICROECONOMICS IS PRICE RISES,

22  DEMAND FALLS.

23         MR. FAZIO:  ABSOLUTELY, YOUR HONOR.

24         THE COURT:  SO I TAKE IT WHAT YOU ARE INTERESTED IN

25  IS THE ACTUAL CURVE.

1           MR. FAZIO:  WE ARE CERTAINLY INTERESTED IN THE ACTUAL

2     CURVE, THAT'S PART OF THE PRICING ANALYSIS WE ARE INTERESTED

3     IN.

4           THE COURT:  WELL WHETHER APPLE'S CUSTOMERS ARE

5     EXTREMELY PRICE SENSITIVE OR NOT PRICE SENSITIVE AT ALL, HOW

6     DOES THAT AFFECT WHAT LOST PROFITS APPLE MIGHT REASONABLY

7     CLAIM?

8           MR. FAZIO:  WELL, I THINK THE PREDICATE FOR

9     YOUR HONOR'S STATEMENT, THERE ARE CERTAINLY PRICE SENSITIVITIES

10    IN THIS MARKETPLACE AS THERE ARE IN ALL MARKETPLACES AND

11    CONSUMERS ARE PRICE EFFECTIVE.

12          APPLE IS GOING TO SAY HEY, WE LOST SALES BECAUSE OF

13    SAMSUNG'S ALLEGED INFRINGEMENT AND WE WANT TO BE ABLE TO SAY

14    NO, THAT'S NOT RIGHT.  YOU MAY HAVE LOST SALES DUE TO OTHER

15    FACTORS BECAUSE THIS ANALYSIS IS PRICING DRIVEN.  AND THAT'S

16    WHAT WE WANT TO BE ABLE TO SHOW.

17          THAT IS IN THE LOST PROFITS ANALYSIS WHERE APPLE HAS TO

18    SHOW THAT BUT FOR SAMSUNG'S ALLEGED INFRINGEMENT, THEY WOULD

19    HAVE REALIZED SAMSUNG'S SALES AND THEREFORE THAT THEY HAVE TO

20    SHOW THE MARKET DRIVE OF THE SALES WOULD BE THE ACCUSED

21    FEATURES.

22          WE WANT TO SHOW THOSE FEATURES DIDN'T ACTUALLY DRIVE

23    SALES, THERE WERE OTHER THINGS DRIVING APPLE'S SALES, CHIEF

24    AMONG THEM BEING PRICING.  AND APPLE IS SAYING YOU CAN'T HAVE

25    THOSE DOCUMENTS FROM OUR MARKETING CUSTODIAN AND OUR PERSONNEL

1    OR FINANCE CUSTODIANS, BUT WE NEED THEM TO BE ABLE TO REBUT

2    APPLE'S ASSERTION THAT THE FEATURES DRIVES SALES.

3         THE COURT:  SO ARE YOU ESSENTIALLY ARGUING AN

4    ALTERNATIVE THEORY OF CAUSATION OR AT LEAST WANT TO INVESTIGATE

5    THAT POSSIBILITY.

6         MR. FAZIO:  I THINK SO.

7         AND IT'S TRUE WE HAVE BEEN TALKING ABOUT LOST PROFITS,

8    IT'S ESSENTIAL AN ALTERNATIVE THEORY OF CAUSATION.  AND WE HAVE

9    BEEN TALKING ABOUT LOST PROFITS, BUT THE REASONABLE ROYALTY

10   ANALYSIS IS ALSO LARGELY DRIVEN BY PRICING DOCUMENTS AS WELL.

11        AND THIS IS ACTUALLY SOMETHING THAT THE BIAX CORP. V.

12   NVIDIA CORP. CASE THAT WE CITED IN OUR MOVING PAPERS IS

13   SQUARELY ON POINT.

14        IN THAT CASE THE NVIDIA DEFENDANT SAID EXACTLY WHAT APPLE

15   IS SAYING HERE WHICH IS HEY, SAMSUNG CAN MAKE DUE WITH JUST

16   PRICE LISTS SHOWING RETAIL PRICING FOR THE APPLE PRODUCTS AT

17   ISSUE IN THIS CASE.

18        AND THE COURT IN THAT CASE AGREED WITH THE PLAINTIFF'S

19   POSITION WHICH WAS, NO, THE ACTUAL PRICING ANALYSIS GOES TO THE

20   VERY HEART OF THE REASONABLE ROYALTY DAMAGES ANALYSIS BECAUSE

21   IT MAY REVEAL THE MANNER IN WHICH APPLE SETS ITS PRICES, AND

22   THAT MAY SHOW THE VALUE TO BE ASCRIBED TO THESE ACCUSED

23   FEATURES.

24        AND WE NEED THAT INFORMATION AS WELL, YOUR HONOR.

25         THE COURT:  SO WHAT IF APPLE WERE ORDERED TO PRODUCE

1    ANY SUCH DOCUMENTS THAT SPOKE TO THE VALUE OF THE ACCUSED

2    FEATURES; WOULD THAT BE SUFFICIENT FOR THAT PURPOSE?

3              MR. FAZIO:  IT'S NOT, YOUR HONOR, FOR THE FOLLOWING

4    REASON.

5              THE COURT:  WELL IT SEEMED TO SQUARE PLENTY NICELY

6    WITH THE DISTRICT OF COLORADO'S ANALYSIS, WOULDN'T IT?

7              MR. FAZIO:  WELL, I'M NOT SO SURE THAT IT WOULD

8    BECAUSE APPLE'S ANALYSIS, AND APPLE HAS SAID THIS IN THE

9    INTERROGATORY RESPONSE SERVED JUST A FEW HOURS AGO LAST NIGHT.

10        THEY SAID THAT THESE FEATURES DRIVE SALES, THEY ARE THE

11   KEY SALES DRIVERS.  THAT WAS ACTUALLY APPLE'S TERM USED IN AN

12   INTERROGATORY RESPONSE SERVED LAST NIGHT.

13        SO IF THERE ARE APPLE PRICING DOCUMENTS THAT SHOWS THAT

14   APPLE IS PRICING ITS PRODUCTS BECAUSE IT HAS A HIGH RESOLUTION

15   CAMERA OR BECAUSE OF OTHER FEATURES THAT ARE NOT THESE FEATURES

16   THEN THAT'S SUBSTANTIAL TO US YOUR HONOR BECAUSE THAT WOULD

17   SHOW THERE ARE OTHER FEATURES THAT ARE DRIVING SALES THAT ARE

18   NOT THESE FEATURES.

19        SO I DON'T THINK YOUR HONOR'S LIMITATION IS GOING TO HELP

20   US OUT AS MUCH AS WE WOULD LIKE IT TO BECAUSE IT WOULD

21   NECESSARILY EXCLUDE THE OTHER DOCUMENT THAT IS SHOW ALL THE

22   OTHER FEATURES THAT COULD BE DRIVING SALES AND NOT THESE

23   FEATURES.

24              THE COURT:  SO LET ME TAKE ANOTHER RUN AT THIS.  WHAT

25   IF THE ORDER WERE FOR APPLE TO PRODUCE ANY PRICING DOCUMENTS

```
1    WHICH SPOKE TO ANY FEATURES EFFECT ON DEMAND FOR THE ACCUSED

2    PRODUCT WOULD THAT BE SUFFICIENT.

3              MR. FAZIO:  I THINK THAT WOULD GET A LOT CLOSER TO

4    WHAT WE ARE AFTER, YOUR HONOR.

5              THE COURT:  THAT'S NARROWER THAN WHAT YOU ARE ASKING

6    FOR IN THIS REQUEST, ISN'T IT?

7              MR. FAZIO:  IN THE REQUEST, YES.  BUT WE DID NARROW

8    THE REQUEST THROUGHOUT THE MEET AND CONFER PROCESS, WE ACTUALLY

9    NARROWED IT DOWN TO THESE FOUR SUBJECT MATTER AREAS WHICH WAS

10   ANALYSIS OF PRICING DOCUMENTS, THE CONSUMER --

11             THE COURT:  LET TAKE THAT -- THAT'S A GOOD EXAMPLE.

12        LET'S ASSUME THEY'VE GOT ALL KINDS OF ANALYSIS WHICH SET

13   PRICING BASED ON CURRENT SUPPLIER TRENDS THE STATE OF THE BILL

14   OF MATERIALS ISSUES WHICH HAVE NOTHING TO DO WITH A GIVEN

15   FEATURE OR SAMSUNG.  WHY SHOULD THEY HAVE TO PRODUCE THAT?

16             MR. FAZIO:  BECAUSE YOUR HONOR IT WOULD, AGAIN, SHOW

17   THE FACTORS THAT DRIVE PRICING WHICH ARE NOT FEATURE DRIVEN.

18   THEY COULD SHOW THAT WHAT DRIVES -- WHAT DRIVES APPLE CONSUMER

19   DEMAND OF ITS PRODUCT IS THE WAY --

20             THE COURT:  BUT THEIR CLAIM ISN'T DIRECTED TOWARDS

21   HARM TO PRICING POWER, THEIR CLAIM IS ABOUT PROFITABILITY ISN'T

22   IT.

23             MR. FAZIO:  YES, YOUR HONOR.

24        PROFITABILITY THAT IS DRIVEN BY CONSUMERS BUYING THE

25   PRODUCTS BECAUSE OF THE PRESENCE OF THESE ACCUSED FEATURES.
```

```
 1              THE COURT:  THAT'S LIKE 2 OR 3 STEPS REMOVED, RIGHT?

 2              MR. FAZIO:  IT'S -- WELL, I THINK IT MAY BE A LITTLE

 3    BIT DOWN THE ROAD YOUR HONOR BUT FOR PURPOSE WAS

 4    DISCOVERABILITY AND RELEVANCE.

 5         I WOULD RESPECTFULLY SUBMIT WE ARE ENTITLED TO DOCUMENTS

 6    THAT SHOW WHY APPLE'S CONSUMERS ARE BUYING APPLE'S PRODUCTS.

 7    AND IF THEY ARE BEING DRIVEN BY PRICING, THAT IS, THE APPLE

 8    CONSUMER GOES TO THE APPLE STORE, SEES THE PHONE THAT HE WANTS

 9    AND HE CAN GET IT FOR A CHEAPER OR A COMPARABLE PRICE TO A

10    SAMSUNG PHONE, THE WAY APPLE IS PRICING ITS PRODUCTS IS

11    RELEVANT TO THE CASE.

12         BRAND RECOGNITION, ANOTHER RELEVANT FACTOR THAT'S A

13    SEPARATE MOTION TO COMPEL AND THAT'S SET TO BE HEARD TODAY.

14         BUT TO THE EXTENT THAT THERE'S THIS UNIVERSE OF THE

15    FACTORS THAT SORT OF MAKE UP THE PIE DIAGRAM OF WHAT IS DRIVING

16    APPLE'S CONSUMERS TO BUY THEIR PHONE, WE WANT TO UNDERSTAND

17    WHAT THOSE FACTORS ARE.

18         BECAUSE WHAT OUR CONTENTION IS, IS THAT WHATEVER THOSE

19    FACTORS ARE, THEY ARE NOT THESE ACCUSED FEATURES

20              THE COURT:  ALL RIGHT.

21              MR. FAZIO:  SO GETTING BACK TO YOUR HONOR'S QUESTION

22    WHICH WAS WITH RESPECT TO THE SCOPE OF THE INITIAL REQUEST, WE

23    DID IN FACT NARROW THE SCOPE OF THAT REQUEST BOTH DURING THE

24    MEET AND CONFER PROCESS AS WELL AS IN THE COURSE OF OUR MOVING

25    PAPERS.  AND WE NARROWED IT DOWN TO FOUR CRITERIA WHICH WAS
```

1    ANALYSIS OF PRICING DOCUMENTS, AS WELL AS CONSUMER SENSITIVITY

2    DOCUMENTS, THE POINT THAT WE DISCUSSED ABOUT HOW CONSUMERS ARE

3    PRICE EFFECTED AND WE WANT DOCUMENTS THAT SHOW THAT.

4         AS WELL AS COMMUNICATIONS BETWEEN APPLE AND THE CARRIERS

5    BECAUSE THAT CAN CERTAINLY TEND TO REVEAL WHY PRICES ARE SET

6    THE WAY THEY ARE SET.

7         THAT IS WHY CONSUMERS ARE BUYING A CERTAIN HANDSET AT A

8    CERTAIN PRICE.

9         THE COURT:  WHAT'S SPECIAL ABOUT THAT DISTRIBUTION

10   CHANNEL, RIGHT.

11        APPLE SELLS THESE PRODUCTS THROUGH A MYRIAD OF CHANNELS,

12   THE CARRIERS ARE ONE OF THEM.  WHY DO YOU NEED THAT PARTICULAR

13   SET OF COMMUNICATIONS?

14        MS. MAROULIS:  YOUR HONOR, I DON'T HAVE A VERY

15   SATISFYING ANSWER FOR WHY WE FOCUSED JUST ON THE CARRIER

16   COMMUNICATIONS.  I SUPPOSE WE CERTAINLY COULD HAVE GONE BROADER

17   THAN THAT TO SEEK OTHER CHANNELS OF COMMUNICATION.

18        IN THE COURSE OF TRYING TO NARROW WHAT YOUR HONOR HAS

19   POINTED OUT WAS IN ENCOMPASSING THE REQUEST, THAT WAS THE ONE

20   WE DECIDED TO FOCUS ON.

21        SO WITH RESPECT TO THE PRICING ISSUE YOUR HONOR, I'M NOT

22   ENTIRELY SURE I HAVE ANYTHING ELSE TO SAY.  IF THE COURT HAS

23   ANY QUESTIONS ABOUT THE MARKET VALUE APPROACH THAT WE TALK

24   ABOUT IN OUR MOTION OR THE ANALYTICAL APPROACH AND ALL OF THESE

25   WONDERFUL RULES, I'M CERTAINLY HAPPY TO TALK ABOUT THAT.

1        BUT ABSENT --

2            THE COURT:  WELL, SINCE YOU BROUGHT IT UP, HOW DO

3    PRICING DOCUMENTS RELATE TO THE EMVR?

4            MR. FAZIO:  SURE, YOUR HONOR.  SO THE EMVR,

5    ESSENTIALLY UNDER THAT RULE THE PATENTEE CAN ASSESS DAMAGES

6    BASED UPON THE ENTIRE MARKET VALUE OF THE ACCUSED PRODUCT ONLY

7    IN THE VERY LIMITED CIRCUMSTANCE.

8            THE COURT:  WHERE THE ACCUSED FEATURE DRIVES DEMAND

9    FOR THE PRODUCT CLAIMED.

10        SO HOW DOES THE PRICING STRATEGY BEHIND THE FINAL PRICE

11   SHED ANY LIGHT ON THE DEMAND ANALYSIS WHICH WAS REQUIRED UNDER

12   THE ENTIRE MARKET VALUE?

13            MR. FAZIO:  SURE.

14        BECAUSE WE WANT TO UNDERSTAND WHAT CREATES THE BASIS FOR

15   THE DEMAND.  APPLE WILL SAY WE GET THE VALUE OF OUR ACCUSED

16   PRODUCT BECAUSE THE FEATURES, THE ACCUSED FEATURES AT ISSUE IN

17   THIS CASE CREATE THE BASIS FOR DEMAND.  THAT IS, SLIDE TO

18   UNLOCK AND TEXT CORRECTION AND CALL HISTORY LIST.

19        IF APPLE HAS PRICING DOCUMENTS THAT SHOW PEOPLE ARE WALKING

20   INTO APPLE STORES TO BUY THE IPHONE 3G OR 4S OR 5 BECAUSE IT

21   HAS SLIDE TO UNLOCK AND THAT FEATURE IS PRICELESS, THEN WE

22   WOULD LIKE TO UNDERSTAND THAT.  BECAUSE THAT WOULD CERTAINLY

23   LEND ITSELF TO THE EMVR.

24            THE COURT:  A FINAL QUESTION BEFORE I HEAR FROM THE

25   OTHER SIDE.

1          IN THE PAPERS IT WAS SUGGESTED THAT APPLE AT A MINIMUM

2     HAS PRODUCED ALL OF THE ACTUAL PRICING FOR THE ACCUSED

3     PRODUCTS; IS THAT CORRECT?  HAVE YOU RECEIVED ALL OF THAT

4     PRICING INFORMATION?

5               MR. FAZIO:  YOUR HONOR, I CAN'T SAY WHETHER OR NOT

6     IT'S CORRECT BECAUSE WE CAN ACTUALLY GET IT OFF LINE.  IT'S

7     AVAILABLE BUT THAT IS VERY, VERY FAR FROM WHAT WE NEED.

8               THE COURT:  I UNDERSTAND.  YOU HAVE A FAR BROADER

9     REQUEST.

10         I JUST WANT TO KNOW AS A MATTER OF PRODUCTION BECAUSE IT'S

11    PUBLICLY AVAILABLE, HAS THERE BEEN ANY DELAY IN MAKING THAT

12    AVAILABLE TO YOU?

13              MR. FAZIO:  YOUR HONOR, I DON'T THINK THERE'S ANY

14    DISPUTE ABOUT WHETHER OR NOT THEY PRODUCED IT.  I DON'T

15    REMEMBER SEEING IT IN THEIR PRODUCTION BUT I CAN ALWAYS FIND

16    IT.

17              THE COURT:  YOU CAN ALWAYS GO DOWN TO THE APPLE

18    STORE.

19              MR. FAZIO:  I COULD DO THAT TOO, YOUR HONOR.

20              THE COURT:  I MIGHT HAVE A QUESTION OR TWO IN

21    REBUTTAL.

22         MR. REITER?

23              MR. REITER:  THANK YOU, YOUR HONOR.

24         GOOD MORNING.

25              THE COURT:  GOOD MORNING.

1        MR. REITER:  WELL, I THINK THE COURT HIT UPON THE

2   RIGHT QUESTIONS.

3        PRICE -- ULTIMATE PRICE IS WHAT GOES INTO THE DAMAGES

4   ANALYSIS.  ALL OF THE CASES.  WE WENT THROUGH THE CASES WITH

5   THE EXCEPTION OF BIAX, AND I WILL TALK ABOUT THAT IN A MOMENT,

6   BUT ALL OF THE CASES TALK ABOUT FOR LOST PROFITS, WHAT IS THE

7   PRICE, WHAT IS THE PRICE OF THE ALLEGED INFRINGING PRODUCT, ARE

8   THEY COMPETITIVE OR IN THE SAME SCOPE.

9        WE LOOK AT BIC LEISURE WHICH WERE SALES BOARDS, THE

10  PATENTEES PRODUCT WERE $2 MORE THAN THE INFRINGING PRODUCT.

11  AND THE FEDERAL CIRCUIT SAID THEY'RE NOT COMPETITIVE, IT

12  FOCUSED ON THE ACTUAL PRICE.

13       THE SAME THING GOES WITH CRYSTAL SEMICONDUCTOR.  YOU MUST

14  SHOW THE ACTUAL PRICE, SHOW THE PRODUCTS ARE COMPETITIVE.  IF

15  THEY ARE NOT COMPETITIVE, THE PATENTEE CAN'T SAY THEY'VE LOST

16  SALES BECAUSE THE SALES OF THE INFRINGING PRODUCT, THEY DON'T

17  COMPETE.  THAT'S WHERE ACTUAL PRICE COMES IN.

18       NO FEDERAL CASE THAT I HAVE BEEN ABLE TO FIND OR THAT I

19  FOUND BY SAMSUNG SAYS PRICING STRATEGY GOES INTO THIS ANALYSIS,

20  IF THAT'S IMPORTANT FOR LOST PROFITS OR REASONABLE ROYALTY.

21       YOUR HONOR ASKED ABOUT THE ENTIRE MARKET VALUE ROLE.  IT

22  LOOKS AT THE ENTIRE MARKET VALUE.  WHAT IS THE PRICE OF THE

23  ACCUSED PRODUCT, AND IS THE PATENTEE ABLE TO USE THAT PRICE AS

24  A DRIVER FOR THE ROYALTY.  IS THE PATENTEE ABLE TO TAKE THE

25  ENTIRE PRICE, NOT THE STRATEGY THAT WENT INTO DERIVING THAT

1    PRICE BUT THE ENTIRE PRICE AND GET A ROYALTY OFF OF THAT PRICE.

2    AND THEY ONLY CAN, AS THE COURT POINTED OUT, IF THE PATENTED

3    FEATURE DRIVES DEMAND.

4        AND WE HAVE SAID AND WE MADE IT CLEAR IN OUR RESPONSES,

5    IN RESPONSE TO NARROWER REQUEST FOR PRODUCTION THAT SAMSUNG HAS

6    SERVED, 320, 321, 432, 433, 84, WHICH TALK ABOUT COMPETITION

7    TALK ABOUT THE VALUE OF THE ACCUSED FEATURES, TALK ABOUT THE

8    VALUE OF THE FEATURES TO THE CONSUMERS, THE USE OF THE

9    FEATURES, WE ARE PRODUCING THAT.  IF WE FIND ANYTHING, WE ARE

10   PRODUCING IT.

11       WE ARE LOOKING FOR DOCUMENTS RELATED TO THE PARTICULAR

12   FEATURES.  IF PRICE IS IN IT, WE WILL PRODUCE IT.

13       YOUR HONOR ASKED A QUESTION ABOUT WHETHER THEY RECEIVED

14   EVERYTHING.  WE HAVE AN EXCHANGE OF FINANCIAL INFORMATION ON

15   APRIL 15TH WHICH IS ON MONDAY.  SO A LOT OF INFORMATION BOTH

16   SIDES ARE GOING TO BE GETTING.

17           THE COURT:  SO LET ME ASK YOU THIS, MR. REITER.

18       SO YOUR, CLAIM AS I UNDERSTAND IT, MADE AS RECENTLY OR

19   REAFFIRMED AS RECENTLY AS LAST NIGHT IS THAT THE FEATURES

20   ACCUSED IN THIS CASE DID AND DO DRIVE DEMAND FOR THE PRODUCTS

21   THAT ARE AT ISSUE.

22       WHY ISN'T SAMSUNG ENTITLED TO INVESTIGATE OR EVALUATE

23   ALTERNATIVE SOURCES OF DEMAND, I.E. PRICING?  AS ONE EXAMPLE.

24       AND WHY WOULDN'T -- WHY WOULDN'T THE DOCUMENTS WHICH

25   ARTICULATE APPLE'S PRICING STRATEGY SHED LIGHT ON, BE

1    DISCOVERABLE ON THIS ALTERNATIVE SOURCE OF DEMAND?

2              MR. REITER:  BECAUSE THE DEMAND IS BASED ON THE

3    PATENTED FEATURES.

4              THE COURT:  THAT'S YOUR CLAIM.

5              MR. REITER:  BUT THAT'S WHAT THE CASE LAW SAYS.

6              THE COURT:  YOUR CLAIM IS THAT UNDER THE CASE LAW YOU

7    MAY APPLY A ROYALTY TO THE ENTIRE PRODUCT BECAUSE DEMAND IS

8    BEING DRIVEN BY THE FEATURE.

9         AS I UNDERSTAND IT, WHAT SAMSUNG IS SAYING IS SAMSUNG IS

10   SAYING WE ARE NOT SO SURE ABOUT THAT, WE THINK MAYBE WHAT'S

11   DRIVING DEMAND FOR APPLE'S PRODUCTS IS ITS PRICING STRATEGY,

12   AMONG OTHER THINGS.

13        SO IF PRICING -- AND THERE MAY BE OTHER BRAND

14   RECOGNITION, ALL SORTS OF OTHER ALTERNATIVES, IF PRICING IS ONE

15   ALTERNATIVE EXPLANATION FOR THE DEMAND APPLE ENJOYS FOR ITS

16   PRODUCTS, WHY WOULD THAT BE AT LEAST DISCOVERABLE UNDER RULE

17   26?

18             HELP ME FIGURE THIS ONE OUT.

19             MR. REITER:  I UNDERSTAND, YOUR HONOR.

20        AND I'M TRYING TO UNDERSTAND THE CLAIM THEY ARE MAKING

21   BECAUSE IT IS NOT SUPPORTED IN THE CASE LAW.

22        AND THERE'S A CASE, I CAN'T REMEMBER EXACTLY WHICH ONE, I

23   THINK IT WAS THE MOR-FLO CASE WHICH SAID THAT THE PATENTEE DOES

24   NOT YET -- IT IS THE MOR-FLO, STATE INDUSTRIES V. MOR-FLO, IT

25   SAYS THE PATENT HOLDER DOES NOT NEED TO NEGATE ALL

1    POSSIBILITIES THAT A PURCHASER MIGHT HAVE BOUGHT A DIFFERENT

2    PRODUCT OR MIGHT HAVE FOREGONE THE PURCHASE ALL TOGETHER.

3        WHAT IT GOES INTO, AND THIS IS A LOST PROFIT CASE, GOES

4    ON TO THE PANDUIT FACTORS.  IT SAYS YOU NEED TO LOOK AT THE

5    DEMAND FOR THE PATENT PRODUCT.  IT DOESN'T SAY ANYTHING ABOUT

6    HOW PRICING AFFECTS THE DEMAND OTHER THAN THERE'S COMPETITION

7    BETWEEN THE TWO PARTIES, ABSENCE OF ACCEPTABLE NON INFRINGING

8    SUBSTITUTES.  THE ABILITY FOR THE PATENTEE TO EXPLOIT ITS

9    CAPACITY TO MAKE UP FOR --

10        THE COURT:  I HAVE A GENERAL UNDERSTANDING OF IT.

11        MR. REITER:  THEN FINALLY, YOUR HONOR, IT'S THE

12   AMOUNT OF PROFIT.

13        MS. MAROULIS:  THE AMOUNT OF PROFIT GOES INTO THE

14   PRICE COSTS AND SO FORTH.  ALL THE INFORMATION WE ARE GIVING.

15   THERE'S NOT A DISPUTE ABOUT THAT.

16        THE COURT:  RIGHT.

17      BUT YOU ARE ALSO CLAIMING INHERENT IN PANDUIT, OF COURSE,

18   AND IN EVENT IS A REASONABLE ROYALTY AS A FLOOR.

19        WHY WOULDN'T IT BE RELEVANT THAT, FOR EXAMPLE PEOPLE GO

20   INTO A WAL-MART, PEOPLE GO TO THE APPLE STORE, PEOPLE THROUGH

21   VERIZON OR AT&T BUY AN IPHONE NOT BECAUSE OF THE FEATURES THAT

22   ARE ISSUED IN THIS CASE BUT BECAUSE APPLE HAS A SOPHISTICATED

23   PRICING STRATEGY THAT BASICALLY IS CRUSHING THE MARGIN DOWN FOR

24   RETAILERS SO THAT THERE'S VERY LITTLE ROOM BETWEEN THE

25   MANUFACTURER SUGGESTED RETAIL PRICE AND THE PRICE THAT'S SET AT

1     THE WHOLESALE LEVEL.

2           AND THAT AS A RESULT, RETAILERS PRICE APPLE PRODUCTS

3     EFFECTIVELY AS LOSS LEADERS.

4           THIS IS ONE SUPPOSITION.  BUT MY POINT IS THERE MAY BE

5     OTHER EXPLANATIONS WHY APPLE ENJOYS DEMANDS FOR THE PRODUCTS

6     OTHER THAN THE ACCUSED FEATURES.

7           ONE OF THESE EXPLANATIONS COULD BE IT SEEMS REASONABLY --

8     APPLE IS PARTICULAR SAVVY IN PRICING THESE THINGS AT EXACTLY

9     THE RIGHT POINT.

10          AND IF THAT'S ALL TRUE, WOULDN'T THAT GIVE THE JURY SOME

11    PAUSE IN ATTRACTING DEMAND TO THE FEATURES THAT ARE ISSUES IN

12    THIS CASE?

13              MR. REITER:  WELL, IT IS OUR BURDEN TO SHOW THAT THE

14    PATENTED FEATURES DRIVE DEMAND.  I MEAN, WE HAVE THE BURDEN OF

15    SHOWING AND WE ARE ACCEPTING THAT BURDEN, WE HAVE NO CHOICE,

16    OBVIOUSLY.

17          IF WE CAN'T SHOW THAT THEN WE DON'T GET THE PROFITS WE

18    ARE LOOKING FOR.  WE DON'T GET THE ENTIRE MARKET VALUE.  AND

19    I'M NOT CERTAIN THAT WE ARE EVEN GOING TO BE TRYING TO APPLY

20    THE ENTIRE MARKET VALUE.

21          SO I THINK THAT'S A BIT OF A HYPOTHETICAL HERE.

22          BUT IT IS OUR BURDEN AND THAT'S WHAT THE CASES SAY IS WE

23    HAVE TO SHOW THAT THE FEATURES DRIVE DEMAND.  WE DON'T HAVE TO

24    SHOW, JUST AS I READ FROM THE MOR-FLO CASE, WE DON'T HAVE TO

25    SHOW THAT THERE'S A WHOLE BUNCH OF OTHER THINGS THAT MAY DRIVE

1    DEMAND.  WE HAVE TO SHOW THE PATENT FEATURES DRIVE IT.

2          AND SAMSUNG HAS THE SAME BURDEN ON THEIR SIDE.  THEY ARE

3    ASKING FOR LOST PROFITS ON THEIR SIDE OF THE CASE.  THEY HAVE

4    THAT BURDEN.  WE HAVE NOT ASKED FOR THEIR PRICING STRATEGY

5    BECAUSE IT IS NOT RELEVANT.

6          THE QUESTION IS WHETHER OR NOT THE PRODUCTS ARE

7    COMPETITIVE, WHETHER THEY COMPETE AT THE SAME PRICING LEVEL.

8    WHAT THE PROFIT IS OF THE PRODUCTS AND WHETHER OR NOT THE

9    PATENTED FEATURES, AND THAT'S WHAT THE CASES GO OVER AND OVER

10   GO OVER AGAIN.

11         WHEN YOU LOOK AT THE UNILOC CASE, IT DOESN'T SAY ANYTHING

12   ABOUT OTHER FEATURES, IT'S TALKING ABOUT DEMAND BASED ON THE

13   PATENTED FEATURES.

14         AND WHEN YOU LOOK AT THE LOST PROFITS CASES IT'S BUT FOR

15   THE INFRINGEMENT, THE PATENTEE WOULD HAVE MADE ITS SALES.  NONE

16   OF THE CASES GO INTO PRICING STRATEGY.  THE ONLY CASE WITHOUT

17   ANY ANALYSIS, AS I'M SURE YOUR HONOR IS AWARE, IS THE BIAX

18   CASE.

19         AND IN THAT CASE -- AND I DO TAKE ISSUE WITH WHAT WAS

20   REPRESENTED.  I'M NOT SURE THAT THE RFP WAS NARROWED.  I READ

21   THE OPENING AND I READ THE RELIEF REQUEST AND IT WAS ALL

22   DOCUMENTS RELATING TO PRICING.  AND EVEN IN THE BIAX CASE THE

23   COURT DID NOT REQUIRE PRODUCTION OF ALL DOCUMENTS.

24         SO WHAT WE ARE TALKING ABOUT ARE DOCUMENTS, ALL DOCUMENTS

25   ABOUT PRICING OF EVERY APPLE PRODUCT, IPADS, IPHONES, IPODS,

1    MCINTOSH COMPUTERS, ITV, ICLAP, SO ON AND SO FORTH.  I DON'T

2    HAVE AS MANY I'S.

3         BUT -- SO THE POINT IS, YOUR HONOR, IS SAMSUNG HAS THE

4    BURDEN OF SHOWING THE RELEVANCE HERE.  THEY HAVE NOT IDENTIFIED

5    ANY FEDERAL CIRCUIT CASE, THEY HAVE NOT IDENTIFIED ANY ANALYSIS

6    IN THE CASE LAW THAT SUGGESTS THAT PRICING STRATEGY THAT ALL

7    DOCUMENTS RELATING TO PRICE, PUTTING SEPARATELY THE PATENTED

8    FEATURES WHICH WE'VE AGREED TO PRODUCE ALREADY ARE RELEVANT OR

9    SHOULD BE PRODUCED.

10        AND WHEN WE ARE TALKING ABOUT THE SCOPE OF THE PRODUCTION

11   HERE, RELATING TO ALL OF THESE PRODUCTS, I MEAN THE BURDEN IS

12   SELF EVIDENT.  I DON'T EVEN KNOW WHERE TO START TO GO TO

13   DIFFERENT PEOPLE --

14        THE COURT:  I ACTUALLY HAVE AN IDEA ABOUT THAT ONE,

15   RIGHT.

16        I SUSPECT APPLE IS NO DIFFERENT THAN ANY NUMBER OF

17   TECHNOLOGY COMPANIES THAT REGULARLY APPEAR IN THIS COURT.  THEY

18   HAVE PRODUCT MANAGERS WHO ARE RESPONSIBLE FOR PRICING A GIVEN

19   PORTFOLIO OF PRODUCTS.

20        I SUSPECT ON A QUARTERLY BASIS THERE ARE PRICING REVIEW

21   MEETINGS THAT ARE HELD AND DECISIONS ARE MADE.  THERE'S A WAY

22   TO GET THIS DONE IF IT HAS TO BE DONE, RIGHT?

23        MR. REITER:  BUT IT'S A LARGE VARIETY OF PEOPLE

24   ACROSS A LARGE VARIETY OF PRODUCTS, AND WE HAVEN'T ANY BASIS IN

25   THE CASE LAW, ANY BASIS THAT SAYS THAT THIS INFORMATION IS

1     RELEVANT OR PERTINENT.

2          AND TO THE EXTENT THAT THERE ARE DOCUMENTS THAT GO TO

3     DEMAND FOR THE PRODUCT, WE ARE PRODUCING THAT.

4          FOR EXAMPLE, THERE'S BEEN ISSUES ABOUT IPHONE BUYER

5     SURVEYS, FOR EXAMPLE.  WE PRODUCED SOME OF THOSE.  AND THOSE

6     SHOW WHAT DRIVES SOME OF THE SALES OF THE APPLE PRODUCTS.  WE

7     PRODUCED THOSE IN THE PRELIMINARY INJUNCTION PHASE AND WE ARE

8     PRODUCING DRAFTS TO SAMSUNG.

9          SO THOSE TYPES OF DOCUMENTS ARE BEING PRODUCED IN

10    ADDITION TO THE VERY SPECIFIC DOCUMENTS RELATING TO COMPETITION

11    AND MARKET PRICE AND SO ON AND SO FORTH.

12         AND I WANT TO MAKE A POINT TOO, YOUR HONOR, THAT IN THE

13    BRIEFING SAMSUNG MADE A POINT OF THEIR PRODUCTION OF PUMI

14    REPORTS AND HOW THESE PUMI REPORTS CONTAIN EXACTLY THE KIND OF

15    INFORMATION THEY ARE ASKING FOR FROM APPLE.

16         AND THAT'S JUST NOT TRUE.  WE ATTACHED AN EXAMPLE OF A

17    PUMI REPORT THAT WAS IDENTIFIED DURING THE MEET AND CONFER AND

18    IT SHOWS EXACTLY THE TYPE OF INFORMATION WE HAVE SAID IS

19    RELEVANT.  COMPETITION, MARKET SHARE, AVERAGE SALES PRICE,

20    PROFIT AND LOSS.

21         THOSE ARE THE THINGS THAT GO INTO A LOST PROFITS ANALYSIS

22    A REASONABLE ROYALTY ANALYSIS.  HOW ONE GETS TO THE PRICE.

23    JUST SIMPLY ISN'T PART OF THAT ANALYSIS.

24              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

25          BRIEF REBUTTAL?

1          MR. FAZIO:  YES, YOUR HONOR.

2      I WANTED TO START WITH THE LAST POINT THAT MR. REITER

3  BROUGHT UP WHICH IS THE PUMI REPORTS.

4      ALL PUMI REPORTS ARE NOT CREATED EQUAL, YOUR HONOR.  THERE

5  WAS A CURSORY PUMI REPORT THAT WAS SUBMITTED AND TRANSLATED

6  ATTACHED TO MR. VALEK'S DECLARATION.

7      THERE ARE PUMI REPORTS THAT ARE, 50, 60, 70, PAGES LONG

8  THAT GO INTO THE EXACT PRICING DETAIL WE ARE ASKING APPLE

9  PRODUCE.  EVEN THE ONE PUMI REPORT THAT THEY PICKED TO SUBMIT

10  WITH THEIR BRIEF AT PAGE 3 AND 4 IT TALKS ABOUT VERY SPECIFIC

11  PRICING STRATEGY FOR THE GALAXY S SERIES OF SMART PHONES.

12      PAGE 7, PRICING STRATEGY FOR OTHER SMART PHONES.  PAGE 1,

13  MARKET DEMAND ACROSS ALL THE VARIOUS CARRIERS.  AVERAGE PRICING

14  INDEX.  AVERAGE SALE PRICE.

15      THIS IS THE INFORMATION THAT APPLE DOES NOT WANT PRODUCED,

16  YOUR HONOR.

17       THE OTHER POINT I WANTED TO BRING UP IS IPHONE BUYER

18  SURVEYS.  YOUR HONOR, THERE'S NOT BEEN AN ADEQUATE PRODUCTION

19  ON IPHONE BUYER SURVEYS.

20          THE COURT:  DO I HAVE A MOTION ON ME BEFORE THAT

21  SUBJECT?

22          MR. FAZIO:  NO, THAT IS A FORTHCOMING MOTION THAT I

23  WANTED TO FLAG FOR THE COURT.

24          THE COURT:  ALL RIGHT.

25          MR. FAZIO:  BUT IN TERMS OF TWO OTHER VERY BRIEF

1    POINTS I WANTED TO HIT ON, YOUR HONOR, IS IN TERMS OF ALL

2    PRODUCTS.

3         WE ARE NOT SEEKING ALL PRODUCTS, YOUR HONOR.  WE ARE NOT

4    SEEKING PRICING INFORMATION FOR ALL PRODUCTS.  IN FACT, I WILL

5    REPRESENT ON THE RECORD TODAY WE ARE WILLING TO LIMIT THIS TO

6    PHONES AND TABLETS AND I THINK THAT WILL SUBSTANTIALLY NARROW

7    THE SCOPE.

8              THE COURT:  I'M SORRY.

9              MR. FAZIO:  TO PHONES AND TABLETS, YOUR HONOR.

10        WHERE TO START, YOUR HONOR, IN TERMS OF THOSE QUESTIONS,

11   THERE ARE SIX INDIVIDUALS THAT APPLE DISCLOSED IN THEIR INITIAL

12   DISCLOSURES AND SUPPLEMENTAL DISCLOSURES THAT HAVE PRIMARY

13   RESPONSIBILITY FOR MARKETING FINANCIAL INFORMATION AND SALES.

14        THEY ARE MARK BUCKLEY, ERICK JUE, STEVEN SINCLAIR,

15   MICHAEL TCHAO, GREG JOSWIAK, AND PHILLIP SCHILLER.  THAT IS

16   WHERE IT STARTS, YOUR HONOR, IN TERMS OF GATHERING THESE

17   DOCUMENTS.

18        LASTLY, WITH RESPECT TO ANY --

19             THE COURT:  I'M CURIOUS, HAVE ANY OF THOSE

20   INDIVIDUALS BEEN DEPOSED IN THIS CASE?

21             MR. FAZIO:  YOUR HONOR, I BELIEVE MARK BUCKLEY WAS

22   DEPOSED IN THE PRELIMINARY INJUNCTION PHASE.

23             THE COURT:  DID MR. BUCKLEY, FOR EXAMPLE, DESCRIBE OR

24   ARTICULATE THE KINDS OF DOCUMENTS HE KEEPS IN CONNECTION WITH

25   PRICING THE PHONES OR THE TABLETS.

1          MR. FAZIO:  I MUST ADMIT, YOUR HONOR, I'M NOT

2     FAMILIAR ENOUGH WITH HIS TESTIMONY TO SAY ONE WAY OR THE OTHER.

3          LASTLY, THE BIAX CASE, YOUR HONOR, THE COURT IN THAT CASE

4     TO BE VERY CLEAR, ORDERED PRODUCTION OF PRICING STRATEGIES,

5     PRICING AND PROFIT MARGINS, DOCUMENTS REGARDING FACTORS IN

6     DETERMINING PRICING AND ANALYSIS OF PRICING.

7          THOSE ARE THE DOCUMENTS WE ARE SEEKING HERE.  THERE WAS

8     ANALYSIS IN THAT COURT OR IN THAT OPINION.  IT STARTS AT PAGE 8

9     OF THE OPINION AND THEN THE COURT MOVES ALONG AND LEAVES THE

10    ANALYSIS TO TALK ABOUT THE INTERROGATORY, GOES BACK TO THE

11    ANALYSIS AT PAGE 12.

12         THAT IS AN OPINION THAT IS ON POINT --

13         THE COURT:  YOU DON'T HAPPEN TO KNOW IN BIAX V.

14    NVIDIA, ANY OF THAT PRICING STRATEGY, DOCUMENTATIONS ORDERED

15    PRODUCED EVER SAW THE LIGHT OF DAY LATER ON IN THE CASE HAD

16    EVER MATTERED?

17         MR. FAZIO:  I DON'T KNOW ANYTHING THAT HAPPENED AFTER

18    THE DAY OF POINT OF THE OPINION ISSUE, YOUR HONOR.

19         ABSENT ANY QUESTIONS, THAT'S ALL I HAVE.

20         THE COURT:  ALL RIGHT.  THANK YOU.

21         LET'S TURN TO, JUST GOING THROUGH MY LIST, SAMSUNG'S

22    MOTION ON ITUNES AND ISYNC SOURCE CODE.

23         MR. CURRAN:  GOOD MORNING, YOUR HONOR.

24    PATRICK CURRAN, QUINN EMANUEL, FOR SAMSUNG.

25         THE MOTION ADDRESSES THREE AREAS:  ITUNES SOURCE CODE,

1    ITUNES SOURCE CODE PRINTOUTS, AND ISYUNC RELEASE INFORMATION.

2          IF YOU WOULD LIKE, WE WILL ADDRESS --

3              THE COURT:  AS A PRELIMINARY QUESTION, COUNSEL, ARE

4    YOU SEEKING EVERY VERSION OF EVERY ONE OF THOSE PRODUCTS?

5              MR. CURRAN:  WE ARE SEEKING EVERY PRIOR ART VERSION

6    OF THOSE PRODUCTS.

7          AND THERE'S BEEN SOME NO UNDUE BURDEN OBJECTIONS TO THAT.

8    THERE ARE A DISCREET NUMBER, 38 PRIOR ART VERSIONS.  AND YOU

9    ALREADY HAVE SOURCE CODE PRODUCED FROM ALL 38 --

10             THE COURT:  ONLY IN THIS CASE WOULD 38 PRODUCTS BE

11   DISCREET.

12         OKAY, SO YOU ARE SAYING FOR THE 38 PRODUCTS THAT YOU

13   BELIEVE ARE DISCREET YOU WANT THE ENTIRETY OF THE SOURCE CODE

14   FOR EVERY VERSION OF THOSE PRODUCTS?

15             MR. CURRAN:  FOR THE ITUNES SOURCE CODE, WE WOULD

16   LIKE THE ENTIRETY OF THE ITUNES SOURCE CODE PRODUCED.

17         BECAUSE RIGHT NOW WE ONLY HAVE A SUBSET OF SOURCE CODE

18   RELATED TO SYNCHRONIZATION.  WE HAVE BEEN GIVEN NO SOURCE CODE

19   RELATED TO USER INTERFACE OR THE THREADS THAT IMPLEMENT THE

20   USER INTERFACE OR THE RELATIONSHIP BETWEEN THE SYNCHRONIZATION

21   THREADS AND THE USER INTERFACE THREADS.

22         IF THERE WERE ANOTHER WAY TO ENSURE WE RECEIVED ALL

23   RELEVANT SOURCE CODE BY PARSING OUT ONLY ELEMENTS OF THAT, WE

24   WOULD BE FINE WITH RECEIVING ONLY THE RELEVANT SOURCE CODE.

25         WE ARE ASKING FOR WHAT WE BELIEVE IS THE LEAST BURDENSOME

1    APPROACH WHICH IS TO SIMPLY EXPORT THE CODE AND WE WILL DO THE

2    DIGGING.

3         AS IT STANDS, APPLE WENT INTO 38 VERSIONS OF ITUNES

4    SOURCE CODE, HAD THE ENGINEER MANUALLY EXTRACT WHAT APPLE

5    CONSIDERED WAS THE RELEVANT SOURCE CODE.

6         SO WE HAVE 38 FOLDERS THAT ARE SLIGHTLY DIFFERENT TREES

7    AND FILES.

8              THE COURT:  WHAT'S IN EACH OF THOSE TREES AND FILES?

9              MR. CURRAN:  THAT IS SYNCHRONIZATION RELATED CODE FOR

10   ITUNES.

11             THE COURT:  DO YOU HAVE ANY BEEF OR COMPLAINT AS TO

12   THE SYNCHRONIZATION CODE?

13             MR. CURRAN:  AS TO THE SYNCHRONIZATION CODE, WE ARE

14   NOT IN A POSITION TO KNOW WHETHER WE RECEIVED ALL THE CODE.

15        WE KNOW WE TRACED THE CODE AND IT DEAD ENDS AT VARIOUS

16   POINTS, WHETHER IT'S INTO THREAD LIBRARIES OR OTHER

17   SYNCHRONIZATION CODE OR OTHER LIBRARIES, WE ARE NOT SURE.

18        BUT WE DO KNOW THAT WE HAVE BEEN GIVEN A SUBSET HAND

19   SELECTED CODES FROM 38 VERSIONS.

20             THE COURT:  OKAY.

21        SO APART FROM THE SYNCHRONIZATION SLICE OF THE SOURCE CODE

22   FOR THESE 38 VERSIONS, YOUR PAPERS AND YOUR COMMENTS THIS

23   MORNING SEEM TO FOCUS ON THE USER INTERFACE CODE; IS THAT

24   CORRECT FOR ME TO UNDERSTAND?

25             MR. CURRAN:  THAT'S CORRECT, YOUR HONOR.

1      THIS IS RELATED TO THE '414 PATENT.  AND THAT PATENT

2   DESCRIBES THE CURRENT EXECUTION OF TWO THREADS.  A

3   SYNCHRONIZATION THREAD AND A USER LEVEL NON SYNCHRONIZATION

4   THREAD PROVIDED BY A USER INTERFACE.

5      SO WE NEED TO SHOW THAT THERE ARE THESE THREADS AND THEY

6   HAVE A CERTAIN RELATIONSHIP OF CONCURRENT EXECUTION.  WE HAVE

7   BEEN GIVEN CODE THAT RELATES TO SYNCHRONIZATION THREADS, NO

8   CODE AT ALL FOR THE USER INTERFACE, NO CODE THAT LETS US

9   COMPARE THE RELATIONSHIP BETWEEN THOSE TWO THREADS.

10          THE COURT:  AND IN YOUR INVALIDITY CONTENTIONS, ARE

11   YOU CLAIMING THAT EACH OF THESE 38 VERSIONS OF ITUNES

12   ANTICIPATES OR RENDERS OBVIOUS THE '414?

13          MR. CURRAN:  WE ARE, YOUR HONOR.

14      THE CONTENTIONS STATE THAT WE ARE RELYING ON ALL VERSIONS

15   OF ITUNES BEFORE THE PRIORITY DATE, INCLUDING BUT NOT LIMITED

16   TO VERSION 6.0.1.

17      WE HAVE DONE A CHART THAT HAS DETAILED SCREEN SHOTS OF THAT

18   ONE VERSION OF ITUNES.

19      WE HAVEN'T GIVEN THEM 38 REDUNDANT SCREEN SHOTS OF THE USER

20   INTERFACE, BUT WE ARE SHOWING THEM THE FUNCTIONALITY.

21          THE COURT:  SO THIS IS AN ISSUE THAT I JUST PERHAPS

22   DIDN'T APPRECIATE IN READING THE PAPERS.

23      AS I UNDERSTAND WHAT APPLE IS SAYING IN YOUR INVALIDITY

24   CONTENTIONS IS YOU ONLY SPOKE OF 6.0.1; IS THAT NOT CORRECT?

25          MR. CURRAN:  THAT IS INCORRECT, YOUR HONOR.

1    THE ORDER OF CONTENTIONS DISCLOSE ITUNES, ALL VERSIONS

2  BEFORE THE '414 PRIORITY DATE INCLUDING VERSION 6.0.1 AS A

3  PRIOR ART SYSTEM.

4    WE ALSO ATTACH AN EXHIBIT THAT GIVES A HUNDRED PAGES OF

5  DETAILED CONTENTIONS USING SCREEN SHOTS FROM 6.0.1.

6    WE MADE CLEAR WE WANT DISCOVERY ON THE VERSIONS TO

7  ANALYZE HOW UNDER THE HOOD, DIFFERENT THREAD MANAGEMENT SYSTEMS

8  ARE USED TO BUILD THAT PRETTY COMMON USER INTERFACE ACROSS ALL

9  THOSE VERSIONS.

10    THE COURT:  AND EVEN THOUGH YOUR LANGUAGE WAS KIND OF

11  OPEN ENDED AS TO THE VERSIONS OTHER THAN 6.0.1, DID YOU CHART

12  OUT ALL THOSE OTHER VERSIONS?

13    MR. CURRAN:  WE DON'T HAVE ANY OF THE SOURCE CODE FOR

14  THEM TO DO THE FULL CHART.  WE ARE SEEKING THAT CODE SO WE CAN

15  DO THOSE CHARTS.

16    WE DID NOT PROVIDE 38 DIFFERENT REDUNDANT SCENE SHOTS OF

17  THE SAME INTERFACE THROUGH ITUNES, BUT WE WILL RELY ON THOSE

18  DIFFERENT VERSIONS AND WE HAVE BEEN ASKING FOR THE SOURCE CODE

19  FOR MANY MONTHS NOW.

20    THE COURT:  I TAKE IT THAT AMONG THE 38 ITERATIONS OF

21  THE ITUNE SOURCE CODE THAT WE ARE TALKING ABOUT, THERE ARE

22  IDENTICAL COPIES OF EITHER SYNCHRONIZATION OR USER INTERFACE

23  FILES.  YOU DON'T NEED TO SEE ALL 38 COPIES; IS THAT RIGHT?

24    MR. CURRAN:  IN ORDER TO DO AN EFFICIENT TRACE, I

25  THINK WE WOULD NEED TO SEE EACH VERSION AS A COMPLETE VERSION,

1  OTHERWISE YOU WOULD HAVE TO THINK ABOUT WHERE I HAVE -- IN ONE

2  VERSION I HAVE A COPY OF THIS FILE, IN ANOTHER VERSION I HAVE A

3  COPY OF ANOTHER FILE --

4          THE COURT:  WHAT I'M THINKING OF, FOR EXAMPLE, AGAIN

5  YOU ALL SAT DOWN AND HAD A CONVERSATION AND YOU COULD AGREE

6  THAT A GIVEN FILE REPEATS ITSELF 36 OUT OF 38 TIMES, WOULD

7  THERE BE ANY REASON FOR APPLE NOT TO MAKE THAT AVAILABLE TO YOU

8  ALL 36 TIMES?

9          MS. MAROULIS:  YOUR HONOR, WE HAVE HAD DISCUSSIONS

10  ABOUT UNDUE BURDEN AND THAT'S IN PART BECAUSE APPLE NEVER

11  CLAIMED THAT THERE'S AN UNDUE BURDEN HERE.  THEY ONLY CLAIMED A

12  RELEVANCE PROBLEM.

13     AND IN THEIR PAPERS, THEIR OBJECTION IS RELEVANCE.  WE

14  BELIEVE THE ITUNES USER INTERFACE CODE IS RELEVANT BECAUSE

15  THERE'S A USER INTERFACE WITH A SPECIFIC THREAD, A NON

16  SYNCHRONIZATION PROCESSING THREAD FROM THE USER INTERFACE.

17  THAT SEEMS CLEARLY RELEVANT TO US.

18          THE COURT:  OKAY.

19     LET'S ASSUME I DON'T HAVE MUCH OF A PROBLEM WITH YOUR

20  RELEVANCE ARGUMENTS BUT I'M THINKING ABOUT HOW TO MANAGE THE

21  BURDEN AS I'VE TRIED TO FOR OVER A YEAR PLUS NOW FOR BOTH

22  SIDES.

23     WOULD YOU HAVE ANY PROBLEM WITH APPLE IN LIEU OF

24  PRODUCING 38 IDENTICAL COPIES OF FILES, PRODUCING ONE COPY AND

25  SAYING THE OTHER 37 WORK EXACTLY THE SAME WAY?

1    MR. CURRAN:  I THINK WE WOULD WANT TO TRUST, BUT

2    VERIFY, BUT DEPENDING ON THE ABILITY TO VERIFY WE WOULD BE OPEN

3    TO THAT.

4        I CAN REPRESENT FROM EXAMINING THE 38 VERSIONS THAT HAVE

5    BEEN PRODUCED, THEY ARE NOT ON THE SYNCHRONIZATION SIDE ALL THE

6    SAME.  BUT WE ARE OPEN TO REASONABLE WAYS TO MINIMIZE THE

7    PRODUCTION OF DUPLICATE CODE.  ABSOLUTELY.

8        THE COURT:  ALL RIGHT.

9        I MAY HAVE A QUESTION OR TWO FOR YOU AFTER I HEAR FROM

10   APPLE.

11       DO YOU HAVE ANY OTHER POINT YOU WANT TO MAKE BEFORE --

12       MR. CURRAN:  AS TO THE ITUNE SOURCE CODE, NO.

13   THERE ARE SEPARATE ISSUES OF PRINTOUTS AND RELEASE INFORMATION.

14       THE COURT:  OKAY.  THANK YOU.

15    MR. LYON?

16       MR. LYON:  THANK YOU, YOUR HONOR.

17       SO I THINK IT'S HELPFUL YOU GET BACK HERE TO GET THE

18   BACKGROUND OF WHAT HAPPENED HERE.

19       INITIALLY SAMSUNG ISSUED, I THINK IT'S DOCUMENT REQUEST

20   294 THAT ASKS FOR OUR SYNCHRONIZATION RELATED SOURCE CODE FOR

21   THE ITUNES PRODUCT.

22       SO WE PRODUCED ALL OF THE VERSIONS OF THE

23   SYNCHRONIZATIONS.  WE WENT THROUGH AND CULLED THROUGH THE CODE

24   AND PUT THAT TOGETHER.

25       THEY THEN CHARTED 6.0.1 AND HAD THIS SORT OF CATCH ALL

1    THAT ALL VERSIONS BESIDES 6.0.1 ARE IN THE CONTENTION.  THEY

2    DIDN'T NEED THE USER INTERFACE CODE TO DO THE CHART FOR 6.0.1

3    BECAUSE THEY DIDN'T HAVE IT AT THAT POINT.

4         THEY DON'T NEED IT TO CHART THE OTHER VERSIONS IF THEY

5    THINK THEY ARE REALLY IMPORTANT.  IF WANTED TO PUT THE CHART

6    TOGETHER AND SAID, HERE'S SOME OTHER VERSIONS WE THINK WE NEED

7    TO SEE, THAT WOULD BE FINE.

8         AT THIS POINT WE NOW PRODUCED TO THEM THE FULL SOURCE

9    CODE FOR ITUNES 6.0.1.  SO THEY HAVE IT BECAUSE THEY CHARTED

10   IT.

11        OUR POINT IS THIS IS KIND OF A CART BEFORE THE HORSE

12   THING.  AND 13 VERSIONS OF CODE, IT'S NOT SO SIMPLE -- I'M NOT

13   SAYING IT'S GOING TO TAKE HEAVEN AND EARTH TO DO THIS, BUT IT'S

14   NOT SIMPLE TO PULL TOGETHER 38 DIFFERENT VERSIONS.

15        WHEN YOU LOOK AT THE LIST THEY ARE TALKING ABOUT, IT'S

16   NOT EVEN MAJOR RELEASE VERSIONS, IT'S ALL THE VARIOUS DOT DOT

17   DOT VERSIONS THAT COME OUT AT ANY POINT.

18             THE COURT:  RIGHT.

19        THEY ARE SAYING THOSE DOT DOT VERSIONS ANTICIPATE OR RENDER

20   OBVIOUS THE '414.  SO WHY WOULDN'T THEY BE FAIR GAME?

21             MR. LYON:  WELL, I GUESS THE POINT WOULD BE WHY -- IF

22   THEY GOT 6.0.1 AND THEY ALSO HAVE THE SYNCHRONIZATION CODE FOR

23   THESE OTHER ONES, IF THERE ARE DIFFERENCES THAT THEY THINK ARE

24   IMPORTANT TO THEM SO THEY NEED TO SEE THE CODE FOR OTHER

25   VERSIONS, THEN FINE.

1        THE COURT:  HOW DO THEY KNOW THE DIFFERENCES IF THEY

2    DONT' SEE?

3        MR. LYON:  WELL, THEY HAVE THE SYNCHRONIZATION --

4        THE COURT:  RIGHT.  BUT AS TO THE UI CODE, THEY

5    DON'T.

6        MR. LYON:  SO LET'S -- ON THIS PATENT THE UI CODE IS

7    SOMETHING OF A RED HERRING IN THE SENSE THAT WHILE THERE'S THIS

8    REQUIREMENT FOR SEPARATE THREAD, IT'S NOT BY ANY MEANS THE

9    PRINCIPAL PART OF THIS PATENT.

10       THE COURT:  BUT IT IS A REQUIRED LIMITATION.

11       MR. LYON:  IT IS, BUT IT'S SOMETHING YOU CAN REALLY

12   SEE TO SOME DEGREE FROM JUST THE ACTUAL VISUAL --

13       THE COURT:  SO WOULD YOU STIPULATE THAT EACH OF THESE

14   38 VERSIONS PRACTICE OR TEACH THE LIMITATION THAT'S AT ISSUE

15   AND AVOID ALL THIS PROBLEM ALL TOGETHER?

16       MR. LYON:  I DON'T KNOW THAT I CAN MAKE -- I CAN'T DO

17   THAT NOW, WE WOULD HAVE TO GO BACK AND THINK ABOUT THAT.

18       THE COURT:  I'M NOT CRITICIZING YOU.  IF YOU ARE

19   NOTING WILLING TO MAKE THAT STIPULATION THAT IT'S IN THERE.

20   HOW CAN YOU WITHHOLD THE INFORMATION THAT ALLOWS THEM TO PROVE

21   THIS?

22       MR. LYON:  I UNDERSTAND YOUR POINT, YOUR HONOR.

23       I GUESS OUR POINT HAS ALWAYS BEEN THIS IS KIND OF THE CART

24   BEFORE THE HORSE.  THEY NEED TO CHART OUT AND SAY HERE'S WHERE

25   WE THINK THESE VERSIONS ARE.  WE'VE GIVEN THEM THE

1    SYNCHRONIZATION CODE.

2         AND I THINK BECAUSE THE PATENT IS ABOUT SYNCHRONIZATION AND

3    THIS IS JUST ONE PLAIN ELEMENT BEYOND THAT --

4         THE COURT:  YEAH, BUT IT'S A PLAIN ELEMENT YOU ARE

5    TELLING ME NOW YOU ARE NOT WILLING TO STIPULATE IS PRACTICED OR

6    TAUGHT IN THE PRIOR ART THAT THEY'RE ASSERTING ANTICIPATES OR

7    RENDERS OBVIOUS THE CLAIM.

8         SO AGAIN, HOW CAN THEY PROVE THAT UNLESS THEY HAVE IT?

9         MR. LYON:  WHAT I'M TRYING TO DO, YOUR HONOR, IS THIS

10   IS A WAY TO BALANCE THE BURDEN.  THIS IS WHAT WE HAVE BEEN

11   PROPOSING.  TELL US WHICH ONES OF THESE VERSIONS YOU REALLY

12   NEED TO SEE, BECAUSE YOU HAVE THE INFORMATION, YOU KNOW WHICH

13   ONES YOU THINK HAVE DIFFERENCES FROM 6.0.1.

14        THE COURT:  BUT THE DIFFERENCES THAT YOU ARE POINTING

15   TO IS SYNCHRONIZATION.

16        MR. LYON:  I AGREE.

17        THE COURT:  RIGHT.

18        SO THEY HAVE NO ABILITY WHATSOEVER TO KNOW WHAT DIFFERENCES

19   EXIST AS TO THE UI CODE, RIGHT?

20        MR. LYON:  I GUESS THAT'S TRUE.

21        AS FAR AS THE SOURCE CODE VERSION THEY CAN SEE HOW THE UI

22   INTERFACES WITH RESPECT TO THESE OTHER VERSIONS.

23        THE COURT:  AND AGAIN, NOTHING PREVENTS YOU FROM

24   SIMPLY STIPULATING AND AVOIDING THIS PROBLEM.

25        MR. LYON:  AND THAT'S SOMETHING -- WE COULD HAVE THAT

1   CONVERSATION, BUT WE HAVEN'T HAD THAT CONVERSATION AT THIS

2   POINT.

3        IT'S REALLY -- THAT'S THE ISSUE FOR US.  IT'S NOT SO MUCH

4   AN ISSUE OF WHETHER OR NOT SOME OF THIS CODE MIGHT BE SOMETHING

5   THEY THINK IS RELEVANT.  IT'S MORE SORT OF THEY HAVEN'T STEPPED

6   THROUGH WHAT WE THINK THEY NEED TO DO AS FAR AS THEIR

7   CONTENTIONS.  THEY CAN'T SORT OF THIS CATCH ALL AND EVERYTHING

8   ELSE, THEY HAVE TO SHOW WHY YOU HAVE TO PRODUCE ALL THESE

9   VERSIONS.

10       AND I SUBMIT IF WE HAVE TO PRODUCE ADDITIONAL CODE, MAYBE

11  WE CAN AT LEAST START WITH MAJOR RELEASES OR SOMETHING THAT'S

12  MORE LIMITED THAN ALL 38.

13       AND IF THEY THINK THEY STILL NEED SOME OTHERS, MAYBE WE

14  CAN GO BACK AND TALK ABOUT IT.  BUT TRYING TO BE A LITTLE BIT

15  REASONABLE RATHER THAN SAYING EVERYTHING FROM THE DAWN OF TIME.

16       THE COURT:  ALL RIGHT.  THANK YOU.

17       REBUTTAL?

18       MR. CURRAN:  YOUR HONOR, JUST VERY BRIEFLY.

19       WE DID ASK APPLE ABOUT A STIPULATION ON THIS POINT AND THE

20  CORRESPONDENCE THAT'S BEEN SUBMITTED WITH THE MOTIONS AND THAT

21  STIPULATION --

22       THE COURT:  THAT WAS ALMOST AS FUN TO READ AS THOSE

23  FOUR BOXES.

24       THE MYRIAD OF MEET AND CONFER LETTERS I READ.  ARE YOU

25  TELLING ME I OVERLOOK AN EXPLICIT REQUEST FROM SAMSUNG THAT

1       APPLE STIPULATE ON THIS ONE?

2               MR. CURRAN:  I WANT TO SAY GREAT MINDS THINK ALIKE

3       AND WE HAVE TRIED TO REACH A STIPULATION ON THIS AND WE ARE

4       OPEN TO THAT AGAIN.

5           BY GREAT MINDS THINK ALIKE.  I DIDN'T THINK OF THAT BUT

6       OTHER GREAT MINDS DID.

7           ON THE LIMITED PRODUCTION, WE ARE OPEN TO WHATEVER KIND

8       OF STIPULATION THAT WOULD ALLOW US TO VERIFY THAT EACH OF THESE

9       VERSIONS ACTUALLY DOES WORK.

10              THE COURT:  DOES YOUR INTERROGATORY ASK FOR UI CODE?

11              MR. CURRAN:  OUR REQUEST FOR PRODUCTION ASKS FOR --

12              THE COURT:  294 SPECIFICALLY REQUESTS --

13              MR. CURRAN:  294 ASKS FOR SYNCHRONIZATION CODE.

14              THE COURT:  THAT'S NOT UI CODE, IS IT?

15              MR. CURRAN:  THAT'S RIGHT.

16          WE ISSUED RFP 638.  WHEN IN CORRESPONDENCE THEY SAID, WE

17      THINK THIS RFP DOESN'T CALL FOR PRODUCTION OF UI CODE.  WE DID

18      ISSUE A SEPARATE REQUEST FOR PRODUCTION TO CLARIFY.

19              THE COURT:  RFP IS THE SEPARATE ONE?

20              MS. MAROULIS:  RFP 638.

21              THE COURT:  AND WHAT DOES 638 SAY?

22              MR. CURRAN:  IF SAYS ALL DOCUMENTS -- AND I THINK IT

23      SAYS, INCLUDING BUT NOT LIMITED TO SOFTWARE EXECUTABLE

24      SOFTWARE, TECHNICAL PLANS, DIAGRAMS, NOTEBOOKS AND OTHER

25      DESCRIPTIONS, INSTRUCTION MANUALS, USER GUIDES, PUBLISHED

1    ARTICLES, PUBLICATIONS AND COMMUNICATIONS RELATING TO ALL

2    VERSIONS OF APPLE'S ITUNES SOFTWARE DEVELOPED PRIOR TO

3    JANUARY 7TH, 2007.

4            THE COURT:  WHEN WAS THAT REQUEST SERVED?

5            MR. CURRAN:  THAT WAS IN JANUARY.

6            THE COURT:  ALL RIGHT.

7        ANY OTHER POINTS?

8            MR. CURRAN:  NO.

9        MOVING ON TO THE RELEASE INFORMATION, YOUR HONOR.  VERY

10   BRIEFLY, APPLE HAS PRODUCED WHAT THEY REPRESENT IS THE FULL

11   AMOUNT OF SOURCE CODE FOR ANOTHER PRODUCT, ISYNC WHICH IS ALSO

12   PRIOR ART TO THE '414 PATENT.  BUT IT'S IN FOLDERS THAT HAVE

13   INTERNAL CODE NAMES.

14       SO THE FOLDERS SAY ISYNC, UI 132, OR ISYNC UI 1101.  THESE

15   NUMBERS DON'T MATCH UP TO THE COMMERCIAL RELEASE VERSIONS OF

16   ISYNC LIKE ISYNC 1 ISYNC II.

17       WE ASKED APPLE FOR INFORMATION THAT WILL CONNECT THE

18   FOLDERS PRODUCED TO THOSE COMMERCIAL RELEASE NUMBERS, AND THEY

19   HAVE SO FAR NOT PROVIDED THAT INFORMATION EITHER THROUGH

20   CORRESPONDENCE OR THROUGH REQUEST FOR PRODUCTION.

21           THE COURT:  SO ALL YOU WANT IS A TABLE THAT SAYS

22   WHERE THE SOURCE CODE REFERS TO INTERNAL CODE NAME OR PROJECT

23   NAME X, THE COMMERCIAL -- THE COMMERCIAL RELEASE OR VERSION OF

24   THIS PRODUCT IS WHY?  AND SO ON AND SO FORTH.

25           MR. CURRAN:  THAT WOULD BE FINE.

1    WE WOULD ALSO ACCEPT DOCUMENTS SUFFICIENT TO SHOW THAT

2    INFORMATION.

3        THE OTHER ISSUE WITH VERSION IDENTIFICATIONS IS THAT THE

4    FOLDERS, THERE'S A COLLECTION OF FOLDERS AND THE ISYNC UI

5    FOLDER CALLS INTO ANOTHER LIBRARY OF SYNCHRONIZATION SERVICES

6    CODE OR SOME OTHER THIRD PARTY LIBRARY WHICH IS, AGAIN,

7    IDENTIFIED WITH A THREE DIGIT NUMBER.  AND THOSE NUMBERS DON'T

8    LINE UP.

9        SO WE DON'T HAVE INFORMATION ABOUT WHICH FOLDER IN THE

10   ICUI CODE IS CALLING INTO THE WHICH VERSION OF THE THIRD PARTY

11   LIBRARY NAMES, THEY ARE CONFIDENTIAL SO I WON'T MENTION THEM.

12       WHICH POINT OF WHICH FOLDER CALLS INTO WHICH OTHER

13   FOLDERS.  WE'VE SEARCHED APPLE'S PRODUCTION FOR REFERENCES TO

14   THOSE FOLDER NAMES.  THERE ARE NO DOCUMENTS THAT HAVE BEEN

15   PRODUCED WITH THAT INFORMATION.  WE ASKED THEM TO CONNECT THE

16   DOTS FOR US SO WE KNOW WHICH COLLECTION OF FOLDERS COMPRISES

17   EACH ISYNC VERSION.  THAT'S ALL THE INFORMATION WE ARE SEEKING.

18       THE COURT:  IN RESPONSE TO THAT REQUEST IN MEET AND

19   CONFER, WHAT DID LEAD TRIAL COUNSEL FROM APPLE SAY?

20       MR. CURRAN:  I WAS NOT PERSONALLY AT THE --

21       THE COURT:  YEAH, IT'S KIND OF INTERESTING THAT WE

22   HAVE THIS LEAD TRIAL COUNSEL MEET AND CONFER HAPPENING AND I

23   DON'T SEE ANY OF THEM HERE.

24       MS. MAROULIS:  YOUR HONOR, MR. FAZIO WAS AT EACH FOR

25   OUR SIDE, SO HE CAN SPEAK.

```
 1              THE COURT:  I STAND CORRECTED.

 2         IN ANY EVENT, WHAT DID LEAD COUNSEL FOR APPLE SAY IN

 3    RESPONSE TO THE QUESTION?

 4              MR. FAZIO:  YOUR HONOR, THE RESPONSE AS I UNDERSTOOD

 5    IT WAS WOULD BE TAKEN UNDER SUBMISSION.

 6              THE COURT:  WHAT'S THAT MEAN?

 7              MR. FAZIO:  MEANING THEY WOULD GET BACK TO US,

 8    YOUR HONOR.

 9              THE COURT:  DID THEY?

10              MR. FAZIO:  THEY DID NOT.

11              THE COURT:  OKAY.

12         ANY OTHER POINTS ON ISYNC?  I THINK I UNDERSTAND THE

13    REQUEST.

14         THANK YOU.

15          MR. LYON?

16              MR. LYON:  THANK YOU.

17         LET ME START WITH THE LAST POINT AND THEN I WILL WORK

18    BACKWARD ON THIS.

19         WE GOT BACK TO THEM IN LETTERS AND CORRESPONDENCE.  IT WAS

20    OUR UNDERSTANDING WE WERE STILL DISCUSSING THIS WHEN THEY FILED

21    THE MOTION.  SO IT'S A LITTLE BIT UNFAIR TO SAY WE HADN'T HAD A

22    CHANCE TO GET BACK TO THEM.

23         BUT LET ME START WITH THE REASON WHY THIS IS AN ISSUE AT

24    ALL.  THERE'S NO REQUEST FOR THIS INFORMATION.

25         WHAT SAMSUNG IS MOVING ON WHEN YOU LOOK AT THE ISYNC
```

1    PORTION OF THEIR MOTION IS IT'S REQUEST FOR PRODUCTION, NOT AN

2    INTERROGATORY ASKING US TO SPELL OUT ANYTHING.  THEY'RE MOVING

3    ON REQUEST FOR PRODUCTION.

4         THEY ASKED FOR DOCUMENTS THAT SHOW THIS INFORMATION.  THERE

5    AREN'T ANY.  THAT'S PART OF THE PROBLEM.

6         SO WHAT THE ISYNC IS A LITTLE DIFFERENT THAN SOMETHING LIKE

7    ITUNES WHERE IT'S FULLY DOWNLOADABLE.  ISYNC IS SORT OF AN

8    INTEGRATED PRODUCT DEVELOPED BY A BUNCH OF DIFFERENT PEOPLE

9    WITHIN APPLE, SORT OF 10 TO 15 DIFFERENT AREAS.

10        SO IN ORDER FOR US TO RECREATE THE CODE -- IT'S ALSO AN

11   OBSOLETE PRODUCT NO LONGER OFFERED.  SO IN ORDER FOR US TO GO

12   BACK AND FIGURE OUT WHERE THIS CODE IS, WE HAD TO GO TO A BUNCH

13   OF DIFFERENT PEOPLE AND ASK WHAT THE PRODUCT NAME IS AND TRY TO

14   PUT IT UP THERE.

15        SO IT'S NOT A SIMPLE PROCESS FOR US TO SAY HERE IT IS,

16   HERE YOU HAVE IT.  SO TRYING TO IDENTIFY WHAT'S A COMMERCIAL

17   RELEASE WOULD TAKE US SOME TIME.

18        THE PROBLEM IS THAT NEVER CAME UP BECAUSE THE

19   INTERROGATORY THEY ARE NOW POINTING TO TO SAY WE ASKED YOU THIS

20   QUESTION IN INTERROGATORY FORM, IT WAS NEVER DISCUSSED IN THE

21   MEET AND CONFERS.  IT CAME UP FOR THE FIRST TIME IN THIS MOTION

22   THAT THEY FILED.

23        AND IT'S NOT AN INTERROGATORY DIRECTED TO THIS.  WHEN YOU

24   READ THIS INTERROGATORY WHICH IS INTERROGATORY NUMBER 13, I

25   THINK, IF I GOT THE RIGHT NUMBER, THAT WHAT THAT INTERROGATORY

```
 1        -- THERE'S A SUBPART C TO THAT THAT SPECIFICALLY IS ASKING FOR

 2        CORRELATION BETWEEN SAMSUNG PATENTS THEY ARE ASSERTING AND THE

 3        SOURCE CODE THAT APPLE IS PRODUCING.

 4             SO THAT INTERROGATORY IS FOR SAMSUNG'S OFFENSIVE PART OF

 5        THE CASE.  THEY ARE ASKING US TO CATEGORIZE WHAT PARTS OF OUR

 6        SOURCE CODE MATCH THEIR PATENTS.

 7             IT'S NOT DIRECTED TOWARDS --

 8             THE COURT:  IT SOUNDS AN AWFUL LOT LIKE THE REQUEST I

 9        WAS DISCUSSING EARLIER WITH YOU, RIGHT?

10             MR. LYON:  CORRECT.

11        I MEAN, I THINK THE FLIP SIDE IS THIS, AND THE ONE WE WERE

12        DISCUSSING EARLIER, WE ACTUALLY ASKED THE QUESTION TO ASK THEM

13        FOR THE INFORMATION.  THEY HAVEN'T ACTUALLY ASKED US THE PROPER

14        INTERROGATORY YET.

15        IF THEY DO, FINE, WE WILL GO OUT AND TRY TO DO THE BEST WE

16        CAN.  I CAN'T GUARANTEE WE CAN HUNDRED PERCENT RECREATE WHAT'S

17        IN THE COMMERCIAL OF THE ISYNC, BUT WE CAN CERTAINLY TRY, THEY

18        JUST NEVER ASKED THE QUESTION.

19             THE COURT:  I UNDERSTAND.  THANK YOU.

20        ALL RIGHT.  IF I HAVE MY NOTES CORRECTLY THIS LEAVES US

21        WITH MR. --

22             MS. MAROULIS:  YOUR HONOR, MAY WE HAVE A BRIEF

23        REBUTTAL BY MR. CURRAN?

24             MR. CURRAN:  VERY BRIEF, YOUR HONOR.

25        WE SPENT A LOT OF TIME TALKING ABOUT AN INTERROGATORY THERE
```

1    BUT WE ARE ACTUALLY MOVING ON A REQUEST FOR PRODUCTION.  WE

2    IDENTIFIED THAT REQUEST FOR PRODUCTION IN THE MEET AND CONFER

3    PROCESS.  THAT MEET AND CONFER PROCESS WENT ON FOR A VERY LONG

4    TIME.

5        WE HAVE BEEN ASKING FOR THIS RELEASE INFORMATION SINCE

6    JANUARY.  WE SENT FOUR LETTERS THAT WENT UNANSWERED.  WE HAVE

7    HAD LEAD TRIAL COUNSEL MEET AND CONFER ON FEBRUARY 15TH AND

8    16TH.

9            THE COURT:  WHO ALL WAS THERE, BY THE WAY.  I'M JUST

10   CURIOUS.

11       I KNOW MR. FAZIO WAS THERE.  WHO ELSE WAS THERE?  ANYBODY

12   CAN ANSWER.

13           MR. LYON:  FOR OUR SIDE IT WAS MR. CREVITT,

14   MR. WALDEN, MS. ROWE, MR. VALEK, AND MR. STONE WHO AREN'T HERE

15   TODAY.

16           MR. FAZIO:  YOUR HONOR, FROM OUR SIDE MYSELF, AMAR

17   THAKUR, BILL PRICE, I BELIEVE MR. JUHO WAS THERE FOR A PERIOD

18   OF TIME AS WELL.  I'M NOT RECALLING ANYBODY ELSE FROM OUR SIDE.

19           THE COURT:  THANK YOU.  IT MAY NOT BE TERRIBLY

20   RELEVANT BUT I'M ALSO LOOKING TO LEARN.

21       SO IF YOU ARE SAYING THAT YOU ARE MOVING TO COMPEL

22   SPECIFICALLY ON A DOCUMENT REQUEST THAT'S BEEN PENDING FOR

23   MONTHS, I TOOK MR. LYON'S ANSWER TO THAT TO BE THERE ISN'T A

24   DOCUMENT.

25           AND RULE 34 DOESN'T REQUIRE MR. LYON OR ANY OF HIS

1    COLLEAGUES TO MAKE UP A DOCUMENT, DOES IT?

2           MR. CURRAN:  IT ABSOLUTELY DOESN'T, YOUR HONOR.

3         BUT WE DON'T HAVE A LOT OF COMFORT THAT APPLE HAS DONE A

4    THOROUGH SEARCH FOR ANY DOCUMENTS.

5         FOR EXAMPLE, THERE'S A DECLARATION HERE FROM MICHAEL

6    MCDOOGLE.  MR. MCDOOGLE IS NOT A DOCUMENT CUSTODIAN AND DOES

7    NOT APPEAR HE'S HAD HIS DOCUMENTS COLLECTED.

8         AND IT APPEARS THAT HE'S THE PERSON WHO USED RECORDS TO

9    DETERMINE WHICH VERSIONS OF ISYNC SOURCE CODE TO PRODUCE.  WE

10   ARE ENTITLED TO THOSE RECORDS.  WE HAVE BEEN ASKING FOR THEM

11   FOR A VERY LONG TIME.

12          THE COURT:  THAT'S NOT WHAT YOU ARE MOVING ON IN THIS

13   MOTION, RIGHT?

14          MR. CURRAN:  IF THOSE DOCUMENTS ARE SUFFICIENT TO

15   SHOW THIS INFORMATION, THEN YES, WE ARE VERY HAPPY TO HAVE A

16   TABLE PRESENTED WITH THIS INFORMATION.

17        BUT I WANTED THE RECORD TO BE CLEAR WE HAVE BEEN ASKING FOR

18   THIS FOR QUITE A LONG TIME.

19          THE COURT:  AND I WANT TO BE EQUALLY CLEAR, IF I

20   UNDERSTAND YOUR POSITION CORRECTLY, IF APPLE COULD SATISFY ME

21   THAT THEY HAVE MOVED HEAVEN AND EARTH TO LOOK FOR ANY DOCUMENT

22   THAT MIGHT SATISFY THIS REQUEST AND THE RESULT OF THAT

23   INVESTIGATION IS THERE ISN'T ONE, UNDER YOUR PURSUIT OF THIS

24   MOTION TO COMPEL, THEY WOULD BE DONE THEY WOULDN'T HAVE TO DO

25   ANYTHING MORE, RIGHT?

1        MR. CURRAN:  REALISTICALLY, YOUR HONOR, AS YOU KNOW

2   FROM LARGE TECHNOLOGY COMPANIES, THERE ARE DOCUMENTS THAT

3   EXPLAIN --

4        THE COURT:  I KNOW, BUT REALISTICALLY YOU CAN'T

5   SQUEEZE BLOOD FROM A TURNIP.  IF THE DOC IS NOT THERE, IT'S NOT

6   THERE.

7        MR. CURRAN:  ABSOLUTELY.  WE BELIEVE THE DOCS ARE

8   THERE.

9      WE ARE HAPPY TO HAVE THIS INFORMATION IN WHATEVER FORM IS

10  MOST CONVENIENT, BUT WE NEED THE INFORMATION, WE HAVE BEEN

11  ASKING FOR THE DOCUMENTS FOR A LONG TIME.

12       THE COURT:  I AM MERELY ASKING WHY AN INTERROGATORY

13  WOULDN'T BE THE RIGHT WAY TO GET AT THE INFORMATION.

14       MR. CURRAN:  WE HAVE PROPOUNDED AN INTERROGATORY ON

15  THIS TOPIC.  WE WOULD BE HAPPY TO RECEIVE THE INFORMATION.

16       THE COURT:  CAN YOU IDENTIFY THAT INTERROGATORY FOR

17  ME.

18       MR. CURRAN:  WE THINK IT'S INTERROGATORY 13.

19  SOURCE CODE VERSIONS FOR ALL SOURCE CODE THAT APPLE HAS

20  PRODUCED.  IT'S NOT LIMITED TO IOS CODE, SO IT WOULD BE

21  RESPONSIVE TO THAT INTERROGATORY.

22       THE COURT:  ALL RIGHT.  THANK YOU.

23       MR. LYON:  JUST BRIEFLY, YOUR HONOR.

24      SO WITH RESPECT TO -- I JUST WANT TO MAKE SURE IT'S CLEAR.

25  WITH RESPECT TO MR. MCDOOGLE AS A CUSTODIAN, WE HAVE AN AGREED

1    PROCESS.  WE HAVE AN AGREED PROCESS.  WE HAVE TRANSPARENCY IN

2    THIS CASE WHERE WE ARE AGREEING ON CUSTODIAN RESEARCH ON THE

3    TERMS WE ARE SEARCHING.  HE'S NOT ONE, BUT IF THEY WOULD LIKE

4    US TO TALK ABOUT THAT, THAT'S CERTAINLY SOMETHING WE CAN

5    ADDRESS.

6         AT THIS POINT WE HAVE NOT FOUND A DOCUMENT.  CERTAINLY IF

7    WE FIND ONE, WE WOULD BE HAPPY TO PRODUCE IT.  THIS IS REALLY,

8    I THINK THOUGH, AN INTERROGATORY.

9         AND WHAT'S INTERESTING TO ME ABOUT THIS MOTION IS THERE'S

10   NOTHING AT ALL IN THEIR MOTION PAPERS ABOUT THIS BEING ON THAT

11   INTERROGATORY.  YOU SEE A REFERENCE TO IT BUT THEY DON'T QUOTE

12   THE ENTIRE INTERROGATORY IN THEIR MOVING PAPERS.  IT'S NOT PART

13   OF THE STATEMENT THAT THEY MAKE UNDER RULE 72 THOUGH.

14        AND WE QUOTED IT IN OUR OPPOSITION, AND IT'S PAGE 10 OF

15   OUR OPPOSITION.  I THINK IF YOU READ THROUGH THAT, A FAIR

16   READING WHILE IT OPENS UP TO IOS AND ANYTHING ELSE AS FAR AS

17   SOFTWARE, WHEN YOU REALLY READ WHAT YOU ARE BEING ASKED TO DO

18   WITH THAT INTERROGATORY, IT'S CLEAR IT'S TALKING ABOUT READING

19   IOS ON THE SAMSUNG PATENTS, NOT LOOKING AT OLD VERSIONS OF

20   ISYNC WITH RESPECT TO PRIOR ART OR ANYTHING LIKE THAT.

21        SO THAT'S ALL WE SAY, WE THINK THEY NEED TO ASK THE RIGHT

22   QUESTION.

23             THE COURT:  ALL RIGHT.

24        I UNDERSTAND YOUR RESPECTIVE POSITIONS.

25        LET'S TURN TO THE LAST ISSUE IN DISPUTE, LEE AND KIM.  WHO

1    WANTS TO GO FOR -- MR. SELWYN, GOOD MORNING.

2         MR. SELWYN:  GOOD MORNING, YOUR HONOR.

3      FOR THE RECORD MARK SELWYN FOR APPLE.

4      LET ME BEGIN BY EXPLAINING THE SUBSTANTIVE IMPORTANCE OF

5    THESE DEPOSITIONS TO THE CASE AND THE SUBJECT MATTERS AND THE

6    DOCUMENTS WE WANT TO PURSUE AND CONTINUE DEPOSITIONS.

7         BOTH OF THE SAMSUNG WITNESSES ARE NAMED INVENTORS OF THE

8    '087 PATENT WHO WORKED FOR SAMSUNG FOR MORE THAN TEN YEARS AND

9    HAD SIGNIFICANT INVOLVEMENT IN STANDARD SETTING ACTIVITIES.

10         THE COURT:  ARE THEY CURRENTLY EMPLOYED BY SAMSUNG?

11         MR. SELWYN:  YES, THEY ARE.

12      DR. LEE HAS BEEN A LONG TIME MEMBER OF SAMSUNG'S STANDARDS

13    GROUP.  HE WAS THE VICE CHAIR OF WORKING GROUP AT 3GPP AND

14    PARTICIPATED IN DOZENS MEETINGS AT 3GPP, INCLUDING MEETINGS

15    WHERE TECHNOLOGY THAT SAMSUNG CLAIMS TO BE COVERED BY THE '087

16    PATENT WERE DISCUSSED.

17      MR. KIM IS A SENIOR ENGINEER AT SAMSUNG.  HE'S ALSO

18    ATTENDED MEETINGS FOR A TECHNOLOGY THAT SAMSUNG CLAIMS TO BE

19    COVERED BY THE '087 PATENT WERE DISCUSSED.

20      BROADLY SPEAKING, THERE ARE THREE SUBJECT MATTERS THAT WE

21    WOULD LIKE TO PURSUE IN CONTINUED DEPOSITIONS.  THE FIRST IS

22    SAMSUNG'S POLICIES AND PRACTICES WITH RESPECT TO STANDARD

23    SETTING PARTICIPATION.

24      THAT ISSUE IS IMPORTANT TO APPLE'S COMPETITION RELATED

25    COUNTERCLAIMS AND ALSO IMPORTANT TO THE TIMING OF SAMSUNG'S

1    DISCLOSURE OF ITS INTELLECTUAL PROPERTY RIGHTS TO THE STANDARD

2    SETTING BODY.

3        THE SECOND ISSUE IS THE INVENTOR'S AWARENESS TO THE

4    TECHNOLOGY CONTRIBUTIONS MADE BY OTHERS TO THE PORTION OF THE

5    STANDARD THAT SAMSUNG CLAIMS IS PRACTICED BY THE '087 PATENT.

6        THAT'S BORN INTO VALIDITY.  AND THIRD, WE WANT TO EXPLORE

7    DOCUMENTS RELATED TO ANOTHER ASSERTED PATENT IN THIS CASE THE

8    '596 PATENT.

9        DR. LEE AUTHORED A PATENT THAT APPLE ARGUES IS PRIOR ART

10   TO THE '596 PATENT.  SOME OF THE LATE PRODUCED DOCUMENTS

11   SUGGEST THAT HE HAD KNOWLEDGE OF SOME OF THE SUBJECT MATTER

12   CLAIMED IN THE '596 PATENT, AND HIS AWARENESS OF THAT

13   TECHNOLOGY AND HIS PRIOR ART PATENT IS SOMETHING THAT WE WANT

14   TO EXPLORE.

15       THE COURT:  ARE EITHER OF THESE TWO PATENTS THAT

16   YOU'VE RAISED STANDARDS ESSENTIAL?

17       MR. SELWYN:  BOTH OF THE PATENTS ARE CLAIMED TO BE

18   STANDARDS ESSENTIAL, YES, THE '596 AND THE '087.

19       SO FOR EACH OF THESE SUBJECT MATTERS WE WOULD LIKE TO

20   QUESTION THE WITNESSES ABOUT DOCUMENTS FROM THEIR FILES

21   INCLUDING DOCUMENTS THAT SAMSUNG PRODUCED AFTER THE DEPOSITION.

22       THE VOLUME OF DOCUMENTS THAT WERE PRODUCED FOR DR. LEE

23   AND MR. KIM FAR EXCEEDED WHAT SAMSUNG HAD PRODUCED IN THE PRIOR

24   CASE FOR THESE WITNESSES AND FAR EXCEEDED WHAT WE EXPECTED TO

25   RECEIVE.

1        JUST BY WAY OF COMPARISON, IN THE PRIOR CASE WE RECEIVED

2    1400 PAGES OF DOCUMENTS FOR MR. KIM AND ABOUT 10,000 PAGES OF

3    DOCUMENTS FOR DR. LEE.

4        THIS TIME AROUND WE RECEIVED 1.7 MILLION PAGES, SOME OF

5    WHICH OF COURSE IS IN KOREAN.

6        SO WE HAVE FOUR BOXES HERE.  THAT'S THE EQUIVALENT TO 7

7    OR 800 BOXES OF DOCUMENTS.

8        THE COURT:  SO IT'S BEFORE YOU, YOUR CLIENT, WAS

9    UNHAPPY WITH HOW LITTLE WAS BEING PRODUCED, NOW THE COMPLAINT

10   IS THEY PRODUCED TOO MUCH?

11        MR. SELWYN:  NO, THAT'S NOT THE COMPLAINT.

12        THE COMPLAINT IS THAT THE DOCUMENTS WERE PRODUCED,

13   1.7 MILLION PAGES, AND IT WAS NOT POSSIBLE TO HAVE THEM

14   REVIEWED IN SUFFICIENT TIME FOR THE DEPOSITIONS.

15        THE COURT:  ROUGHLY, I'M NOT GOING TO HOLD YOU TO THE

16   EXACT MINUTE COUNT.  HOW FAR IN ADVANCE OF THE DEPOSITIONS WERE

17   THESE DOCUMENTS PRODUCED?

18        MR. SELWYN:  THEY WERE PRODUCED ON A HARD DRIVE.

19   THEY WERE SENT TO US BY FEDERAL EXPRESS ON THE 16TH.  THEY

20   ARRIVED IN OUR OFFICE ON SATURDAY.

21        WE IMMEDIATELY TURNED IT AROUND AND SENT IT TO OUR VENDOR

22   WHO RECEIVED IT ON MONDAY.  IT TOOK TWO AND A HALF DAYS FOR THE

23   VENDOR TO PROCESS IT AND UP LOAD IT.

24        I'M HAPPY TO GO INTO THE GORY DETAILS OF THE ISSUE.

25        THE COURT:  I HAVE A GENERAL SENSE OF IT, SO I DON'T

1      THINK IT'S NECESSARY.

2              MR. SELWYN:  IT WAS WEDNESDAY AFTERNOON THE 21ST, THE

3      DAY BEFORE THANKSGIVING, THAT WE HAD THE DOCUMENTS READY TO

4      REVIEW.

5          WE HAD PEOPLE REVIEWING THOSE DOCUMENTS THROUGH THE

6      THANKSGIVING DAY HOLIDAY AND THE DEPOSITION WAS THE 28TH.

7          ON THE 21ST WHEN IT BECAME CLEAR TO US WE WOULD NOT BE ABLE

8      TO GET THROUGH THESE DOCUMENTS, WE WERE TRANSPARENT ABOUT THAT.

9      WE SAID TO SAMSUNG HEY, WE CAN'T DO IT, THERE'S TOO MANY

10     DOCUMENTS HERE, CAN WE MOVE THE DEPOSITIONS TO THE END OF THE

11     WEEK OF DECEMBER 3RD OR 10TH BEFORE THE CLOSE OF CLAIM

12     CONSTRUCTION?

13         THEY CAME BACK AND SAID SO SORRY, NO, WE CAN'T MOVE THEM,

14     WE HAVE TO GO FORWARD ON THAT DATE.  AND WE RESPONDED IF OUR

15     CHOICE IS NO DEPOSITIONS ARE GOING FORWARD ON THOSE DATES, WE

16     WILL GO FORWARD ON THOSE DATES BUT WE RESERVE THE RIGHT TO

17     CONTINUE THE DEPOSITIONS AFTER OUR REVIEW OF THE DOCUMENTS ARE

18     COMPLETE.

19          SO WE DID THE BEST WE COULD UNDER THE CIRCUMSTANCES

20     MAKING CLEAR THAT WE WOULD NOT BE ABLE TO GET THROUGH THE

21     DOCUMENTS DESPITE BEST EFFORTS AND WE WOULD RESERVE THE RIGHT

22     TO CONTINUE THOSE DEPOSITIONS.

23              THE COURT:  SO STANDING HERE TODAY, MR. SELWYN, ARE

24     THE THREE CATEGORIES OF DOCUMENTS YOU DESCRIBED TO ME DOCUMENTS

25     WHICH HAVE YET TO BE PRODUCED IN TOTAL FROM SAMSUNG OR DO YOU

1    NOW HAVE THE DOCUMENTS AND THE ONLY QUESTION IS WHETHER YOU

2    NEED FURTHER DEPOSITION ON THOSE DOCUMENTS?

3             MR. SELWYN:  WE UNDERSTAND FROM SAMSUNG THAT WE NOW

4    HAVE THE DOCUMENTS AND IN EACH OF THOSE CATEGORIES THAT WE WANT

5    TO DISCUSS WITH THE WITNESSES ARE DOCUMENTS THAT SAMSUNG

6    PRODUCED AFTER THE DEPOSITIONS FROM THE FILES OF DR. LEE.

7             THE COURT:  AND SO ON THIS ISSUE, IS THE REQUEST TO

8    THE COURT STRICTLY FOCUSED ON ADDITIONAL DEPOSITION TIME OR IS

9    THERE ANY RELIEF YOU ARE REQUESTING?

10            MR. SELWYN:  WELL, IT'S TWOFOLD.

11      IT'S ADDITIONAL DEPOSITION TIME BECAUSE WE BELIEVE THAT

12   UNDER JUDGE KOH'S ORDER THE EXPECTATION IS THAT WE WOULD HAVE

13   TWO FULL DAYS FOR ANY WITNESS WHO HAS A TRANSLATED DEPOSITION.

14   WE ARE JUST ASKING FOR THAT.

15            THE COURT:  CAN YOU ELABORATE ON THAT POINT.  I DON'T

16   HAVE AS TACTILE SENSE OF HER HONOR'S STANDARD.

17       SO HAS SHE BASICALLY SAID IF SOMEONE IS TESTIFYING IN

18   KOREAN OR HINDI OR ANY OTHER LANGUAGE, YOU GET TWICE THE TIME

19   YOU NORMALLY GET?

20            MR. SELWYN:  YES.

21      AND I DON'T THINK THERE'S ANY DISAGREEMENT ABOUT THAT.  THE

22   DISAGREEMENT IS HER INITIAL ORDER ON THE MAY 2ND CASE

23   MANAGEMENT ORDER SAID TRANSLATED TIME WILL COUNT --

24            THE COURT:  AGAINST YOUR BUDGET.

25            MR. SELWYN:  YEAH.

1        AND ONE HOUR TRANSLATED COUNTS FOR HALF AN HOUR AGAINST

2    YOUR BUDGET.

3            THE COURT:  RIGHT.  SHE HAS A 50 PERCENT DISCOUNT

4    RATE.

5            MR. SELWYN:  EXACTLY.

6        LATER WHEN WE HAD THIS ISSUE COME UP, WE SUBMITTED TO

7    HER HONOR, SHE CLARIFIED THAT WE COULD HAVE TWO FULL DAYS OF

8    DEPOSITION OF ANY TRANSLATED -- ANY WITNESS THAT REQUIRES

9    TRANSLATION.

10        THAT OCCURRED AFTER THE DEPOSITION.  SHE ALSO SAID YOU

11    HAVE TO GIVE ADVANCE NOTICE.  SAMSUNG SAYS WELL, YOU DIDN'T

12    GIVE ADVANCE NOTICE HERE.  WE SAY WELL, WE DID GIVE ADVANCE

13    NOTICE BECAUSE AS SOON AS WE REALIZED WE HAD THIS PROBLEM, WE

14    MADE CLEAR WE WOULD TO CONTINUE THE DEPOSITION.

15        AFTER MR. KIM'S DEPOSITION WE WROTE ANOTHER LETTER SAYING

16    WE WANT TO CONTINUE DR. LEE'S DEPOSITION.  AND ON THE RECORD AT

17    DR. LEE'S DEPOSITION WE SAID WE WANTED TO CONTINUE IT.

18        SO WE HAVE JUDGE KOH'S ORDER.  WE BELIEVE THIS IS A

19    PROPER APPLICATION OF JUDGE KOH'S ORDER.  AND IN ADDITION TO

20    THAT WE HAVE TENS OF THOUSANDS OF DOCUMENTS THAT WERE PRODUCED

21    AFTER THE DEPOSITION THAT NOTWITHSTANDING JUDGE KOH'S ORDER WE

22    WOULD STILL WANT TO GO BACK AND HAVE THE OPPORTUNITY TO ASK THE

23    WITNESSES ABOUT THOSE DOCUMENTS.

24            THE COURT:  I'M CURIOUS, IF DR. LEE AND MR. KIM WERE

25    TESTIFYING SHORTLY AFTER THANKSGIVING, I'M LOOKING AT THE

1    CALENDAR, WE ARE NOW COMING ON SIX MONTHS AFTER THAT EVENT,

2    WHAT DOES THAT LAG SUGGEST ABOUT THE MEET AND CONFER ON THIS

3    ISSUE?

4         MR. SELWYN:  WELL, THE MEET AND CONFER WAS WEDNESDAY.

5    YOU SAW A LOT OF CORRESPONDENCE BACK AND FORTH BETWEEN THE

6    PARTIES.  WE HAD THE LEAD COUNSEL MEET AND CONFER AND AFTER

7    THAT THE MOTION WAS BROUGHT.

8         THE COURT:  SO IN TERMS OF THE RELIEF, JUST TO BRING

9    THIS TO A HEAD, I TAKE IT WHAT YOU WOULD LIKE IS SEVEN

10   ADDITIONAL HOURS OF REALTIME WITH EACH OF THESE TWO WITNESSES

11   IN CALIFORNIA?

12        MR. SELWYN:  THAT'S CORRECT.

13   WHICH WOULD TOTAL 14 HOURS OF TRANSLATED DEPOSITIONS FOR

14   EACH WITNESS CONSISTENT WITH JUDGE KOH'S ORDER.

15        THE COURT:  OKAY.  THANK YOU.

16        MR. SELWYN:  THANK YOU.

17        THE COURT:  THANK YOU.

18        MR. FAZIO:  YES, YOUR HONOR.  THANK YOU.

19   YOUR HONOR THERE'S SOME VERY IMPORTANT POINTS THAT WERE

20   LEFT OUT THAT I THINK I NEED TO BRING TO THE COURT'S ATTENTION.

21   THE FIRST IS WE HEARD A TIMELINE ABOUT A DOCUMENT

22   PRODUCTION ABOUT HOW SOMETHING WAS DROPPED IN FEDEX ON SATURDAY

23   AND HOW IT ARRIVED THERE MONDAY.

24   WHAT YOU DIDN'T HEAR WAS THAT WE ACTUALLY E-MAILED

25   APPLE'S COUNSEL ON NOVEMBER 14TH TWO DAYS BEFORE WE SENT IT TO

1    THE FEDEX AND WE SAID, WE HAVE THESE INVENTOR'S DOCUMENTS READY

2    TO GO, WE ARE SENDING THEM TO YOU ON A HARD DRIVE, WHO SHALL WE

3    SEND THEM TO.

4        WE RECEIVED IMMEDIATE RESPONSE FROM APPLE'S COUNSEL WITH

5    THE NAME OF THE INDIVIDUAL THAT'S THE HEAD OF, I ASSUME, THEIR

6    IT DEPARTMENT.  WE SENT THEM TO THAT PERSON PURSUANT TO THE

7    INSTRUCTIONS FROM APPLE.

8        THE DOCUMENTS ON THAT HARD DRIVE, YOUR HONOR, THERE WAS

9    AN INTIMATION IN THE BRIEFING THAT THERE WERE TECHNICAL

10   PROBLEMS WITH THOSE DOCUMENTS, AND THERE WERE NOT, YOUR HONOR.

11       TO BE VERY, VERY CLEAR, YOUNG BUM KIM AND JUHO LEE'S

12   DOCUMENTS WERE ERROR FREE, READILY DOWNLOADABLE AND READILY

13   REVIEWABLE.

14       AND I WANTED TO STRESS THAT BECAUSE WHAT WE HEARD IN THE

15   OPENING PARAGRAPH OF APPLE'S BRIEF ON THIS MOTION, AS I SAID,

16   THE DOCUMENTS WERE RIFE WITH TECHNICAL PROBLEMS.

17       THEN IN FOOTNOTE 2, PAGE 8 THEY SAY "THERE WERE ERRORS IN

18   TWO OF THE FIVE PRODUCTION FOLDERS."

19       WHAT APPLE DOES NOT TELL THE COURT IS THAT THE PURPORTED

20   ERRORS WERE NOT IN THESE TWO CUSTODIAN'S PRODUCTION FOLDERS,

21   THEY WERE IN TWO ENTIRELY DIFFERENT CUSTODIAN'S PRODUCTION

22   FOLDERS, DID NOT AFFECT THESE PRODUCTIONS.  THESE PRODUCTIONS

23   WERE ERROR FREE AND READILY REVIEWABLE

24           THE COURT:  LET'S PRESUME THE PRODUCTIONS WERE

25   PRISTINE AS THE DRIVEN SNOW, NEVERTHELESS WE ARE TALKING ABOUT

1      HUNDREDS OF THOUSANDS IF NOT MILLIONS OF PAGES OF PRODUCTION,

2      CORRECT?

3              MR. FAZIO:  CORRECT.

4              THE COURT:  AND EVEN IF THEY WERE READY TO GO THE

5      DATE YOU DROPPED THE DRIVE OFF AT WILMER HALE OR WHATEVER LAW

6      FIRM RECEIVED IT, ARE YOU SUGGESTING THAT IT WAS ENTIRELY

7      REASONABLE AND PLAUSIBLE OVER THE THANKSGIVING HOLIDAY TO

8      COMPLETE THE REVIEW OF THAT MATERIAL?

9              MR. FAZIO:  YES, YOUR HONOR, FOR THE FOLLOWING

10     REASON:

11             THIS WAS AN AGREEMENT THAT CONTAINED A LOT OF DIFFERENT

12     PROVISIONS, MANY FOR THE BENEFIT OF APPLE, SOME FOR THE BENEFIT

13     OF SAMSUNG.

14             AND THIS IS PRECISELY WHAT WE NEGOTIATED, YOUR HONOR.

15     THESE DOCUMENTS WOULD BE DELIVERED ON A DATE CERTAIN -- AND WE

16     ACTUALLY DELIVERED THEM, YOUR HONOR.

17             THE AGREEMENT BETWEEN THE PARTIES WAS TEN DAYS BEFORE THE

18     DEPOSITION.  WE PRODUCED 12 DAYS FOR YOUNG BUM KIM AND 12 DAYS

19     FOR JUHO LEE.  THAT WAS THE AGREEMENT.

20             AND APPLE, YOUR HONOR, THEY HAVEN'T TOLD YOU ABOUT THIS

21     AGREEMENT, BUT THEY HAVE RECEIVED SUBSTANTIAL BENEFITS UNDER

22     THIS AGREEMENT.

23             EVERY SINGLE CURRENT APPLE EMPLOYEE AND FORMER EMPLOYEE

24     GETS DEPOSED AT APPLE'S COUNSEL'S OFFICE UNDER THIS AGREEMENT.

25             WE BROUGHT ALMOST HALF OF OUR INVENTORS TO THE

1    UNITED STATES FOR A DEPOSITION UNDER THIS AGREEMENT WITH THE

2    OTHER HALF BEING DEPOSED IN SUWON.  AND PART OF THAT OTHER HALF

3    OF YOUNG BUM KIM AND JUHO LEE, THE TWO INVENTORS AT ISSUE ON

4    THIS MOTION.  THAT WAS PART OF THE PARTIES' AGREEMENT.

5         APPLE ALSO GOT ANOTHER VERY IMPORTANT CONCESSION UNDER

6    THAT AGREEMENT WHICH IS APPLE HAS 12 NAMED INVENTORS ON THEIR

7    APPLE PATENTS IN SUIT.  WE AGREED TO FOREGO 7 OUT OF THOSE 12

8    DEPOSITIONS AS PART OF CLAIM CONSTRUCTION DISCOVERY, ONLY

9    DEPOSING 5 OF THEM.

10        THESE WERE ALL BENEFITS THAT APPLE GOT.  THE BENEFIT WE

11   WERE SUPPOSED TO GET UNDER THE AGREEMENT WAS THAT THESE TWO

12   INVENTORS, MR. KIM AND DR. LEE WERE GOING TO BE DEPOSED ON ONE

13   DAY EACH AND IN SOUTH KOREA.  THAT WAS THE BENEFIT THAT WE WERE

14   SUPPOSED TO GET.

15        APPLE IS GETTING THEIR BENEFITS, BUT QUITE FRANKLY

16   YOUR HONOR WE WOULD LIKE OURS TOO.

17        SO THAT WAS AN ISSUE I WANTED TO BRING TO THE FOREFRONT

18   OF THE COURT'S ATTENTION BECAUSE --

19             THE COURT:  SO IF I UNDERSTAND WHAT YOU ARE TELLING

20   ME CORRECTLY, WHAT YOU ARE SAYING IS YOU HAD THIS DEAL, LOTS OF

21   TERMS, LOTS OF PROVISIONS, BENEFITS FOR ONE, BENEFITS FOR THE

22   OTHER, BURDENS ON BOTH SIDES.  BUT THE DEAL, IF NOTHING ELSE,

23   SAID EXPLICITLY YOU HAD TO COMPLETE YOUR PRODUCTION NO LATER

24   THAN A CERTAIN DATE.

25        AND YOU ARE TELLING ME THE ENTIRETY OF THIS PRODUCTION,

```
1        THIS DRIVE OR SET OF DRIVES WAS MADE PRIOR TO THE DATE?

2               MR. FAZIO:  THAT IS CORRECT, YOUR HONOR.

3          IT WAS MADE IN ADVANCE OF THE DATE.  CONSISTENT WITH THE

4     PARTIES' AGREEMENT.  AND THERE HAS BEEN NO DISPUTE ABOUT THAT,

5     YOUR HONOR.

6               THERE'S BEEN NO DISPUTE WE SERVED THE DOCUMENTS.

7               AND WITH RESPECT TO THE PURPORTEDLY LATE SERVED

8     DOCUMENTS --

9               THE COURT:  THERE -- SO WAIT, THERE WERE DOCUMENTS

10    PRODUCED LATE?

11              MR. FAZIO:  YES, YOUR HONOR.

12         THERE WERE 606,000 DOCUMENTS PRODUCED LATE.  THE REASON WHY

13    THEY WERE PRODUCED LATE IS BECAUSE APPLE DIDN'T SERVE THEIR

14    DOCUMENT REQUESTS FOR THOSE DOCUMENTS UNTIL NOVEMBER 16TH.

15         OUR TIME TO RESPOND WAS DECEMBER 17TH.  WE SERVED THE

16    DOCUMENTS WHEN WE WERE SUPPOSED TO SERVE THEM WHICH WAS AFTER

17    THE DEPOSITION:  SO WHEN I SAY LATE IT MEANS AFTER THE

18    DEPOSITION.

19              BUT THAT IS BECAUSE OF APPLE'S BELATED DOCUMENT REQUEST.

20    THE CASES THAT APPLE CITES, THE JP MOLYNEAUX CASE, THE BOSTON

21    SCIENTIFIC CASE THAT TALKS ABOUT RESUMING DEPOSITIONS BECAUSE

22    OF BELATED DOCUMENT PRODUCTIONS, NEITHER OF THOSE CASES DEALS

23    WITH THE SITUATION WE HAVE HERE.

24              WHAT WE HAVE HERE IS APPLE WAS NOT ENTITLED TO THE

25    DOCUMENTS AT THE TIME THEY TOOK THE DEPOSITION BECAUSE WE GOT
```

1    THEIR DOCUMENT REQUEST 12 DAYS EARLIER, AND THAT'S THE

2    SITUATION WE HAVE HERE, YOUR HONOR.

3              THE COURT:  SO WHEN APPLE REACHED OUT TO YOU AND SAID

4    WE DIDN'T KNOW THIS WAS GOING TO BE A MILLION PAGES, CAN WE

5    MOVE DR. LEE AND MR. KIM BY A COUPLE OF WE WEEKS; WHAT WAS THE

6    PROBLEM WITH THAT?

7              MR. FAZIO:  THERE'S TWO PROBLEMS WITH THAT, YOUR

8    HONOR.

9         FIRST OF ALL, THEY GAVE US VERY SPECIFIC WEEKS THEY WANTED

10   TO TAKE THEIR DEPOSITION, THEN DR. KIM AND MR. LY WERE NOT

11   AVAILABLE THOSE WEEKS.

12        THE SECOND PROBLEM IS IT WAS NO SECRET, IT HAS BEEN NO

13   SECRET IN THIS CASE THAT THE DOCUMENT PRODUCTIONS OF SAMSUNG

14   HAVE BEEN VERY, VERY VOLUMINOUS.  WE'VE PRODUCED MILLIONS OF

15   DOCUMENTS IN THIS CASE AND WE CONTINUE TO DO SO.

16        SO THE NOTION THAT PRODUCING 120,000 DOCUMENTS ACROSS TWO

17   CUSTODIANS, 12 DAYS AND 14 DAYS IN ADVANCE OF THEIR DEPOSITIONS

18   DID NOT STRIKE US AS BEYOND THE NORM.

19         YES, IT WAS A LOT OF DOCUMENTS, WE DON'T DISPUTE THAT,

20   BUT WE PRODUCED THOSE DOCUMENTS.

21             THE COURT:  AND THE MAJORITY OF THESE DOCUMENTS WERE

22   IN KOREAN?

23             MR. FAZIO:  I DON'T KNOW IF I WOULD SAY THE MAJORITY,

24   YOUR HONOR.

25             THE COURT:  SUBSTANTIALLY?

1          MR. FAZIO:  CERTAINLY SOME WERE IN KOREAN.  CORRECT,

2     YOUR HONOR.

3          BUT THE OTHER THING I WANTED TO POINT OUT IS THE PARTIES

4     ACTUALLY HAVE A STIPULATION REGARDING ELECTRONIC DISCOVERY.  IT

5     WAS ENTERED BY THE COURT DECEMBER 17, 2012.

6          PARAGRAPH 3 OF THE STIPULATION GOVERNS THE FORMAT OF THE

7     PARTIES' DOCUMENT PRODUCTIONS, TALKS ABOUT HOW PRODUCTIONS CAN

8     BE MADE ON THE HARD DRIVE PRECISELY IN THE MANNER WE PRODUCED

9     THOSE DOCUMENTS.

10          SO YOUR HONOR WE DID PRECISELY WHAT WE WERE SUPPOSED TO

11     DO.  WE HAD AN AGREEMENT ON THE TIMING OF PRODUCTIONS, WE HAD A

12     STIPULATION ON THE FORMAT OF PRODUCTIONS AND WE DID EVERYTHING

13     CONSISTENT.

14          WE DO NOT DISPUTE IT WAS A LOT OF DOCUMENTS.  WE

15     CONTINUED TO PRODUCE A LOT OF DOCUMENTS ACROSS ALL OF OUR

16     CUSTODIAN, MANY OF WHICH ARE IN KOREAN.

17          THE COURT:  OKAY.

18          SO LET'S ASSUME FOR THE MOMENT THAT YOUR DOCUMENT

19     PRODUCTION WAS CONSISTENT WITH THE DEAL CUT BY THE PARTIES AND

20     TIMELY MADE.  WE WILL PUT TO THE SIDE THE 6,000, I TAKE YOUR

21     POINT THAT THEY ONLY WERE REQUESTED A CERTAIN NUMBER OF DAYS IN

22     ADVANCE OF THEIR PRODUCTION.

23          PUTTING ALL OF THAT ASIDE, APPLE SAYS EVEN IF ALL THAT IS

24     TRUE, JUDGE KOH HAS MADE IT CLEAR THAT SEVEN HOURS REALLY IS

25     14, IF WE ARE TALKING ABOUT PEOPLE TESTIFYING IN A NON ENGLISH

1    LANGUAGE.

2         SO WHY WOULDN'T THAT JUSTIFY ADDITIONAL DEPO TIME?

3              MR. FAZIO:  BECAUSE THIS IS WHY, YOUR HONOR:    THE

4    ISSUE THAT WAS BROUGHT BEFORE JUDGE KOH DURING THE

5    DECEMBER 2012 CMC WAS PRECISELY IN THIS CONTEXT.  THAT IS APPLE

6    AND SAMSUNG PUT IN A JOINT CMC STATEMENT WHICH ESSENTIALLY HAD

7    APPLE ASKING FOR CLARIFICATION OF THE COURT'S PRIOR ORDER THAT

8    SEVEN HOURS REALLY MEANS 14 HOURS.

9         AND WE BROUGHT UP THE CONTEXT IN WHICH THIS REQUEST WAS

10   BEING MADE WHICH WAS APPLE WANTED SEVEN HOURS TO MEAN 14 HOURS

11   BECAUSE THEY WANTED TO RESUME MR. KIM AND DR. LEE'S DEPOSITION.

12        AND THE COURT IN ISSUING ITS CASE MANAGEMENT ORDER -- AND

13   JUST TO TAKE A STEP BACK, WE ALSO MADE THE COURT AWARE OF THE

14   PARTIES' AGREEMENT JUST AS I DID THE COURT TODAY AND WE ALSO

15   MADE THEM AWARE OF THE ADDITIONAL FACT THAT WE NEVER GOT NOTICE

16   THAT APPLE WANTED TWO DAYS OF DEPOSITION WITH THESE DEPONENTS

17   UNTIL AFTER THEY TOOK DAY ONE IN SUWAN, SOUTH KOREA.

18        WE MADE JUDGE KOH AWARE OF ALL THESE FACTS.  AND IN

19   RESPONSE TO THAT HER CASE MANAGEMENT ORDER SAID SEVEN HOURS

20   REALLY MEANS 14 HOURS FOR TRANSLATED DEPOSITIONS BUT IT ALSO

21   ADDED ON THE ADDITIONAL PORTION THAT ADVANCE NOTICE IS REQUIRED

22   FOR ANY TRANSLATED DEPOSITION THAT WILL LAST MORE THAN ONE DAY.

23   AND THIS WAS BROUGHT UP IN THE CONTEXT OF THESE TWO

24   DEPOSITIONS.

25        AND I THINK RESPECTFULLY, YOUR HONOR, IT'S DISINGENUOUS

1    FOR APPLE TO NOW SAY WELL, YOU KNOW WE REALLY WANTED TWO DAYS.

2         WE HAD THREE WEEKS OF NEGOTIATIONS GOING BACK AND FORTH

3    WITH THESE WITNESSES AND NOT ONCE DID THEY EVER SAY WE REALLY

4    WANT MORE THAN ONE DAY.

5         WE BOOKED THEM FOR ONE DAY.  AND WE DID SO IN THE CONTEXT

6    OF ALL THESE OTHER MOVING PROVISIONS WHERE EVERY TIME WE HAVE A

7    DEPOSITION OF AN APPLE WITNESS WE GO TO THEIR OFFICES AND WE

8    ARE BRINGING INVENTORS OVER HERE BECAUSE THAT'S WHAT WE AGREED

9    TO DO, EXCEPT THESE TWO INVENTORS, THEY ARE SUPPOSED TO BE

10   DEPOSED IN SOUTH KOREA.

11        BUT THAT WAS OUR DEAL, YOUR HONOR.  IT WAS ONE DAY EACH

12   AND NOT TWO DAYS.

13        AND WE'VE ADDRESSED THIS WITH JUDGE KOH AND JUDGE KOH

14   SAID THAT ADVANCE NOTICE IS REQUIRED AND WE DO NOT HAVE THAT

15   HERE.

16             THE COURT:  ALL RIGHT.  I UNDERSTAND YOUR POSITION.

17        THANK YOU.

18        MR. SELWYN, ANY BRIEF REBUTTAL?

19             MR. SELWYN:  JUST VERY BRIEFLY, YOUR HONOR.  FIRST

20   WITH REGARD TO JUDGE KOH'S ORDER, IT'S DOCKET NUMBER 324.  IN

21   THAT SHE SAYS A DEPOSITION WITH AN INTERPRETER MAY LAST UP TO

22   14 HOURS OVER TWO DAYS, IF A PARTY WISHES TO SCHEDULE A TWO-DAY

23   DEPOSITION WITH THE USE OF AN INTERPRETER ADVANCE NOTICE TO THE

24   POSING PARTY IS REQUIRED.

25        IF THE PARTIES HAVE DISPUTES ABOUT SPECIFIC DEPOSITIONS

1    THEY ARE UNABLE TO RESOLVE, THE MOTION SHOULD BE DIRECTED TO

2    YOUR HONOR.

3              THE COURT:  I SAW THAT PART.

4              MR. SELWYN:  JUDGE KOH GAVE US HER GUIDANCE ON IT.

5        I THINK THE EXPECTATION WAS WITH THAT GUIDANCE WE MIGHT BE

6    ABLE TO RESOLVE THE ISSUE THAT WE ARE NOW BEFORE YOU ON.  WE

7    WEREN'T WE PRESENTED IT TO YOU.

8        A COUPLE NOTES ABOUT THE LATE PRODUCED DOCUMENTS.  I

9    DON'T THINK SAMSUNG'S EXPLANATION MAKES ANY SENSE FOR TWO

10   REASONS.

11       FIRST, IF YOU RUN THE SEARCH TERMS THAT THEY HAVE

12   DISCLOSED FOR THE CUSTODIAN AGAINST THOSE DOCUMENTS, THERE ARE

13   HUNDREDS OF HITS.

14       SO WHAT THAT MEANS IS THOSE ARE DOCUMENT THAT IS SHOULD

15   HAVE BEEN PRODUCED WITH THE CUSTODIAN FILES BACK BEFORE THE

16   DEPOSITIONS.

17       SECONDLY, WE HAD REQUEST FOR PRODUCTION TO WHICH THOSE

18   DOCUMENTS WERE RESPONSIVE FAR EARLIER THAN THE DEPOSITIONS.

19       WE HAD SUBSEQUENT REQUESTS TO WHICH THOSE DOCUMENTS WERE

20   ALSO RESPONSIVE.  THEY SAY WELL, THEY ARE RESPONSIVE TO THE

21   SECOND SET OF REQUESTS AND THAT EXPLAINS THE TIMING.

22       IT DOESN'T WORK BECAUSE THE DOCUMENTS ARE BOTH RESPONSIVE

23   TO SEARCH TERMS AND RFP'S.

24       ON THE SIDE OF THE PRODUCTION WE HAVE A LIST THAT GOES

25   THROUGH THE SIZE OF THE PRODUCTIONS TO DATE.  THIS ONE WAS FAR

1    LARGER THAN ANY PRODUCTION THAT HAD BEEN MADE IN THE PAST IN

2    THIS CASE BY SAMSUNG.

3          SO THERE WAS A COURSE OF CONDUCT BETWEEN THE PARTIES THAT

4    WE HAD THAT WE EXPECT TO BE CONTINUED AS WELL AS THE PRODUCTS

5    BEFORE.

6          I SAID I WON'T GO INTO THE GORY DETAILS, BUT I DO HAVE TO

7    MENTION ONE THING BECAUSE IT WAS BROUGHT UP BY SAMSUNG'S

8    COUNSEL.

9          THE ISSUE WE HAD IS WE WERE GIVEN CUSTODIAN FILES IN

10   FOLDERS.  SOME OF THOSE FOLDERS HAD NAMES, SOME OF THOSE

11   FOLDERS DIDN'T HAVE NAMES.

12         TWO OF THE FOLDERS THAT THE PARTIES AGREE HAD PROBLEMS

13   WERE IN THE REPLACEMENT DRIVE THAT WE RECEIVED ON THE SAME DAY

14   OF THE DEPOSITION.

15         ONE OF THOSE FOLDERS STILL HAD NO NAME WITH IT.  WE

16   DIDN'T KNOW UNTIL ALL OF THAT WAS PROCESSED WHETHER OR NOT

17   DOCUMENTS FROM DR. LEE OR MR. KIM WERE.

18              THE COURT:  INCLUDED IN THAT SET.

19              MR. SELWYN:  EXACTLY.

20         SO THERE'S NO DISPUTE THAT THIS DRIVE HAD PROBLEMS IN IT.

21         AS IT TURNS OUT, THOSE PROBLEMS WEREN'T DIRECTED TO THE TWO

22   CUSTODIANS FOR WHOM WE HAD A DEPOSITION.  BUT WE DIDN'T KNOW

23   THAT UNTIL EVERYTHING WAS FINISHED PROCESSING WHICH OCCURRED

24   AFTER THE DEPOSITIONS.

25              THANK YOU, YOUR HONOR.

```
 1              THE COURT:  ONE LAST QUESTION ON THIS IF I MIGHT,

 2      MR. SELWYN.

 3              AS I READ YOUR MOTION, THERE WAS A SUGGESTION -- THERE

 4      WAS A DISCUSSION REALLY OVER SEVERAL MARKETING AND FINANCIAL

 5      REPORTS AND I BELIEVE SAMSUNG HAS REPRESENTED TO THE COURT THAT

 6      THE ISSUE IS MOOTED BECAUSE THE PRODUCTION HAS BEEN COMPLETED;

 7      IS THAT CORRECT?

 8              MR. SELWYN:  I WILL HAVE TO DEFER TO --

 9              MR. REITER:  YES, YOUR HONOR.

10          MR. REITER FOR APPLE.  WE'VE HAD CORRESPONDENCE WITH MR.

11      FAZIO ON BEHALF OF SAMSUNG AND THAT IS MOOTED.

12          THEY HAVE AGREED TO PRODUCE THE DOCUMENTS AS WE REQUESTED

13      BY MAY 1ST, SO I THINK WE ARE GOOD ON THAT.

14              THE COURT:  ALL RIGHT.

15              MR. FAZIO:  BRIEF REBUTTAL, YOUR HONOR?

16              THE COURT:  YES.

17              MR. FAZIO:  YOUR HONOR, WITH RESPECT TO THE NO NAME

18      FOLDER, WE DROPPED GRAPHICS OF WHAT THOSE FOLDERS LOOKED LIKE

19      INTO MR. LAN'S SUPPORTING DECLARATION FOR A REASON.

20          ONE OF THOSE FOLDERS ACTUALLY IS TITLED JUHO LEE, SO

21      THERE SHOULD NOT HAVE BEEN ANY CONFUSION TO APPLE AS TO WHOSE

22      DOCUMENTS WERE LOCATED IN THAT FOLDER.

23          THE OTHER WAS A NUMBERED FOLDER BUT WHEN YOU CLICK ON IT

24      AND IT OPENS, THERE'S A TEXT FILE IN THERE WHICH YOU CAN

25      DOWNLOAD IN A COUPLE OF MINUTES AND IT CONTAINS THE METADATA
```

1    FOR THAT PRODUCTION SHOWING IT WAS YOUNG BUM KIM'S.

2         SO THE NOTION THAT THESE ENTIRE FOLDERS HAVE TO BE

3    DECOMPRESSED, WHICH ACCORDING TO THE DECLARATION WE PUT IN TOOK

4    THREE AND A HALF HOURS FOR EACH CUSTODIAN PRODUCTION, IS

5    INCORRECT.  EVEN IF IT WERE CORRECT, THREE AND A HALF HOURS IS

6    NOT THE WORST THING IN THE WORLD.

7         WITH RESPECT TO SEARCH TERMS, THAT'S THE FIRST TIME THIS

8    ISSUE HAS COME UP.  YOUR HONOR WON'T FIND THAT ARGUMENT

9    ANYWHERE IN EITHER OF THE PARTIES BRIEFS.

10        I WILL SAY THAT THE SEVENTH SET OF RFP'S WHICH WERE THE

11   BELATEDLY SERVED RFP'S THAT CAME IN 12 DAYS BEFORE MR. KIM AND

12   LY'S DEPOSITIONS, THOSE DEALT WITH THE '508 PATENT IN WHICH

13   DR. LEE AND KIM ARE ALSO NAMED AS INVENTORS.  SEARCH TERMS WERE

14   RUN FOR THOSE DISTINCT AND DIFFERENT REQUESTS.

15        TO THE EXTENT THERE MAY HAVE BEEN SOME OVERLAP IN OTHER

16   DOCUMENTS, I DON'T DISPUTE THAT FACT BUT THE POINT IS THESE

17   WERE DOCUMENTS PRODUCED IN RESPONSE TO DIFFERENT REQUESTS.

18        THE LAST POINT I WANTED TO MAKE WHICH IS AN EXCEEDINGLY

19   IMPORTANT ONE IS WE HEARD A LOT ABOUT THE HISTORY OF THESE

20   INDIVIDUALS AND WHO THEY ARE IN THIS CASE.

21        WHAT APPLE'S COUNSEL DID NOT MENTION TO THE COURT IS THAT

22   THESE INDIVIDUALS ARE NOT STRANGERS TO THE APPLE V. SAMSUNG

23   LITIGATION, THEY WERE DEPOSED MULTIPLE TIMES IN THE 1846

24   ACTION.

25        SO THE NOTION THAT WE NEED TO SIT THEM DOWN FOR A THIRD

1    OR FOURTH DAY OF DEPOSITION, COUNTING THE ADDITIONAL

2    DEPOSITIONS THEY'VE ALREADY BEEN SUBJECTED TO IN THE 1846

3    ACTION, YOUR HONOR, I WOULD RESPECTFULLY SUBMIT IT'S SIMPLY NOT

4    PROPER.

5            THE COURT:  ALL RIGHT.

6        WELL, I THINK I'VE COVERED IT.  ARE THERE ANY OTHER ISSUES

7    WE NEED TO ADDRESS WHILE WE ARE ALL HERE?

8            MS. MAROULIS:  NOT FOR SAMSUNG, YOUR HONOR.  THANK

9    YOU.

10            THE COURT:  ALL RIGHT.

11        HAVE A GOOD MORNING.  THANK YOU.

12        (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 4/14/13