# EXHIBIT 4
# FILED UNDER SEAL

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

STEPTOE & JOHNSON, LLP
John Caracappa (*pro hac vice*)
jcaracappa@steptoe.com
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 429-6267
Facsimile: (202) 429-3902

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG DEFENDANTS' THIRD AMENDED DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS**<br><br>**[PATENT L.R. 3-1, 3-2]** |

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") submit this Third Amended Disclosure of Asserted Claims and Infringement Contentions pursuant to Patent Local Rules 3-1 and 3-2 for U.S. Patent Nos. 7,756,087, 7,551,596, 7,672,470, 7,577,757, 7,232,058, 6,292,179, 6,226,449, and 5,579,239 (the "Samsung patents").

## I.  IDENTIFICATION OF INFRINGED CLAIMS AND ACCUSED PRODUCTS [PATENT L.R. 3-1(a)-(d)]

On June 15, 2012, Samsung timely served its Disclosure of Asserted Claims and Infringement Contentions (the "Original Disclosure"). On September 28, 2012, Samsung served its Amended Disclosure of Asserted Claims and Infringement Contentions (the "First Amended Disclosure") to provide information required by Patent Local Rule 3-1(a)-(d) for the iPhone 5.  On November 15, 2012, the Court granted Samsung's motion for leave to amend its disclosures through the First Amended Disclosure. *See* Dkt. No. 302.  On November 19, 2012, Samsung served its Second Amended Disclosure of Asserted Claims and Infringement Contentions (the "Second Amended Disclosure") to provide information required by Patent Local Rule 3-1 (a)-(d) for newly released products such as the iPad 4, iPad Mini, and iPod Touch (5th generation).  The parties subsequently entered into a stipulation, and on January 16, 2013, the Court entered the stipulation permitting the amendments served in its Second Amended Disclosure.  On April 22, 2013, Samsung submitted its Case Narrowing Statement, dismissing without prejudice certain claims of the Samsung patents.

Samsung hereby supplements its Original Disclosure, First Amended Disclosure and Second Amended Disclosure to provide the information required by Patent Local Rule 3-1 (a)-(d) as set forth in the following exhibits:

**Exhibit A** U.S. Patent No. 7,756,087

**Exhibit B** U.S. Patent No. 7,551,596

**Exhibit C** U.S. Patent No. 7,672,470

**Exhibit D** U.S. Patent No. 7,577,757

**Exhibit E** U.S. Patent No. 7,232,058

1    **Exhibit F** U.S. Patent No. 6,292,179

2    **Exhibit G** U.S. Patent No. 6,226,449

3    **Exhibit H** U.S. Patent No. 5,579,239

4    The amended infringement contentions set forth in Exhibits A–H hereto are exemplary and not

5    exhaustive.

6    As described in the Original Disclosure, the First Amended Disclosure, the Second

7    Amended Disclosure, and this supplemental amendment thereto, Apple infringes the Samsung

8    patents under 35 U.S.C. § 271(a), (b) and/or (c). Samsung further accuses any other Apple

9    products that Apple is currently developing, making and using including but not limited to any

10   newer but unreleased versions of the accused products that have been recently announced by

11   Apple. Accordingly, Samsung reserves its right to further supplement this amended disclosure to

12   include any additional Apple products it identifies through discovery and its continuing

13   investigation. Samsung further reserves the right to supplement its disclosures to include any

14   additional information it learns about the accused Apple products through discovery (which is at

15   its earliest stages) and its continuing investigation.

16   **II.    LITERAL INFRINGEMENT AND DOCTRINE OF EQUIVALENTS**

17   **[PATENT      L.R. 3-1(e)]**

18   The accused Apple products literally infringe the asserted claims of the Samsung patents.

19   The accused products also infringe under the doctrine of equivalents for the reasons set forth in

20   Exhibits A-H.  To the extent that any element or limitation of the asserted claims is not found to

21   have literal correspondence in the accused Apple products, the accused Apple products infringe

22   under the doctrine of equivalents.  Samsung further incorporates by reference it Original

23   Disclosure, First Amended Disclosure, and Second Amended Disclosure under Patent L.R. 3-1(e).

24   **III.    PRIORITY DATES**
     **[PATENT      L.R. 3-1(f)]**

25   Samsung has already provided the information required by Local Rule 3-1 in its Disclosure

26   of Asserted Claims and Infringement Contentions served on June 15, 2012.  Samsung is not

27   amending or supplementing the Priority Date information asserted in that Disclosure at this time.

28

IV.   **PRODUCTS INCORPORATING OR REFLECTING THE CLAIMED INVENTIONS**
      **[PATENT        L.R. 3-1(g)]**

Exhibit I discloses exemplary Samsung products that incorporate or reflect the claimed inventions of the Samsung patents.

V.    **APPLE'S WILLFUL INFRINGEMENT**
      **[PATENT        L.R. 3-1(h)]**

Before initiating this lawsuit, Apple was aware that its products infringed many Samsung patents, including patents that Samsung has asserted against Apple in this action.  Despite this knowledge, Apple continues to infringe Samsung's patents and continues to act in a subjectively and objectively reckless manner including, but not limited to, making, using, selling, and offering to sell the Apple products accused of infringement in this action.  Apple has willfully infringed U.S. Patent Nos. 7,756,087 and U.S. Patent No. 6,292,179 since at least September 2010 when Samsung informed Apple of its infringement.  Apple has willfully infringed U.S. Patent No. 7,577,757 since at least 2011 when the former patent owner, ReQuest, Inc., informed Apple's in-house counsel of its infringement as recently confirmed by Apple.  *See* March 21, 2013 letter from P. Kolovos to A. Thakur.  Apple has continued to willfully infringe these patents and the other Samsung patents since the filing of Samsung's counterclaims.

VI.   **DOCUMENT PRODUCTION ACCOMPANYING DISCLOSURE**
      **[PATENT L.R. 3-2]**

Samsung has already produced documents pursuant to Local Rule 3-2 ("Document Production Accompanying Disclosure") concurrently with the service of its Disclosure of Asserted Claims and Infringement Contentions on June 15, 2012.  Samsung is not supplementing that production at this time.

1   DATED:  April 30, 2013                QUINN EMANUEL URQUHART & SULLIVAN LLP

2

3                                         By  /s/  Victoria Maroulis
    Victoria                                      Maroulis
4                                             Attorneys for Defendants
                                              SAMSUNG ELECTRONICS CO., LTD.,
5                                             SAMSUNG ELECTRONICS AMERICA, INC. and
                                              SAMSUNG TELECOMMUNICATIONS
6                                             AMERICA, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D) DISCLOSURES FOR U.S. PATENT NO. 7,756,087**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D))[1] |
|---|---|
| 9. An apparatus for performing non-scheduled transmission in a user equipment (UE) of a mobile communication system for supporting an enhanced uplink dedicated channel (E-DCH), comprising:<br><br>[a] a receiver receiving non-scheduled transmission information indicating k transmission time intervals (TTIs) for transmitting non-scheduled data via the E- | Each of the Accused Apple Products[2] is an apparatus for performing non-scheduled transmission in a user equipment (UE) of a mobile communication system for supporting an enhanced uplink dedicated channel (E-DCH).  Each of the Accused Apple Products meets the HSPA, HSUPA, and/or HSPA+ standard as set forth in 3GPP TS 25.321 v. 6.6.0 and later.<br><br>*See, e.g.,* Apple's iPad Website, http://www.apple.com/ipad/compare/; *see also, e.g.*, Apple's iPhone Website, http://www.apple.com/iphone/compare-iphones/.<br><br>Each of the Accused Apple Products comprises a receiver capable of receiving non-scheduled transmission information indicating k transmission time intervals (TTIs) for transmitting non-scheduled data via the E-DCH, wherein non-scheduled transmissions can be performed during the k TTIs within a period having N TTIs. For example, a period N is defined in the HSPA standard as an integer between 1 and 8 and, as shown in the table below, k transmission time intervals (TTIs) are represented as bits set to "1" in the Information Element "2ms non-scheduled transmission grant HARQ process allocation."  *See, e.g.*, 3GPP TS 25.331 v. 6.21.0 § 10.3.5.1b, 10.2.33, 10.3.5.2; *see also, e.g.*, 3GPP TS 25.309 v. 6.6.0 § 10; 3GPP TS 25.321 v. 6.18.0 § 11.<br><br>This information is received by the user equipment pursuant to the standard.  A transmission time interval |

---

[1]    Samsung reserves the right to supplement this response with additional information obtained through Apple and third party discovery.  For example, Apple's production of Qualcomm source code within its possession is incomplete.  Samsung has sent numerous requests to Apple to supplement its production; to date Apple has not done so.  Third party Qualcomm did not make its source code available to Samsung until April 22, 2013.  Samsung is currently reviewing Qualcomm's source code to determine whether it is complete.  Qualcomm has not produced any non-source code documents.  Third party Intel is in the process of supplementing its production with additional relevant source code.

[2]    "Accused Apple Products" refers to all Apple products supporting HSPA, HSUPA, and/or HSPA+ including, without limitation, the iPhone 4, iPhone 4S, iPhone 5, iPad 2 with Wi+Fi and 3G, iPad 3 with Wi+Fi and 3G, iPad 4 with Wi+Fi and 4G, and iPad mini with Wi+Fi and 4G.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE
ATTORNEYS' EYES ONLY

| DCH, wherein non-scheduled transmissions can be performed during the k TTIs within a period having N TTIs; | may be, for example, 2ms.<br><br>*See, e.g.,* 3GPP TS 25.331 v. 6.21.0 § 10.3.5.1b (emphasis added):[3]<br><br>**10.3.5.1b     Added or reconfigured E-DCH MAC-d flow**<br><br>This IE is used in relation to MAC-d flows mapped to the E-DCH transport channel. |
|---|---|

| Information Element/Group name | Need | Multi | Type and reference | Semantics description | Version |
|---|---|---|---|---|---|
| E-DCH MAC-d  flow identity | MP | | E-DCH MAC-d flow identity 10.3.5.7e | | REL-6 |
| E-DCH MAC-d flow power offset | OP | | Integer(0..6) | Only allowed to be absent when already defined for this E-DCH MAC-d flow, unit is dB | REL-6 |
| E-DCH MAC-d flow maximum number of  retransmissions | OP | | Integer (0..15) | Only allowed to be absent when already defined for this E-DCH MAC-d flow | REL-6 |
| E-DCH MAC-d flow multiplexing list | OP | | Bitstring (maxE-DCHMACdFlow) | Indicates, if this is the first MAC-d flow for which PDUs are placed in the MAC-e PDU, the other MAC-d flows from which MAC-d PDUs are allowed to be included in the same MAC-e PDU. | REL-6 |

---

[3]   Corresponding disclosure for this limitation and the other limitations set forth in this chart is also found in earlier and/or later versions of 3GPP TS 25.331.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | Bit 0 is for MAC-d flow 0, Bit 1 is for MAC-d flow 1, … Value '1' for a bit means multiplexing is allowed. Bit 0 is the first/leftmost bit of the bit string. NOTE: The bit that corresponds to the MAC-d flow itself is ignored. | |
| | | CHOICE transmission grant type | OP | | | Only allowed to be absent when already defined for this E-DCH MAC-d flow | REL-6 |
| | | >Non-scheduled transmission grant info | | | | | REL-6 |
| | | >>Max MAC-e PDU contents size | MP | | Integer (1..19982) | | REL-6 |
| | | >>2ms non-scheduled transmission grant HARQ process allocation | MD | | Bitstring (8) | MAC-d PDUs for this MAC-d flow are only allowed to be transmitted in those processes for which the bit is set to "1". Bit 0 corresponds to HARQ process 0, bit 1 corresponds to HARQ process 1,… Default value is: transmission in all HARQ processes is allowed. Bit 0 is the first/leftmost bit of the bit string. | REL-6 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | | | | | | |
|---|---|---|---|---|---|---|
| | >Scheduled transmission grant info | | | NULL | | REL-6 | |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| [b] and a transmitter transmitting data on at least one TTI of the k TTIs within the period; wherein the k is an integer greater than 0 and less than or equal to a positive integer N. | Each of the Accused Apple Products comprises a transmitter capable of transmitting data on at least one TTI of the k TTIs within the period, wherein the parameter k is an integer greater than 0 and less than or equal to a positive integer N.  For example, as defined in the HSPA standard, each of the Accused Apple Products transmits data during one or more (k) TTIs, within a period of N TTIs. N corresponds, for example, to eight, the number of bits in the Bitstring (8), and the Bitstring (8) refers to '2ms non-scheduled transmission grant HARQ process allocation.'  *See, e.g.*, 3GPP TS 25.309 § 10, 3GPP TS 25.331 §§ 8.6.5.18, 10.3.5.1b, 3GPP TS 25.321 §§ 4, 9.1.5, 11.8.1.4.<br><br>*See, e.g.,* 3GPP TS 25.331 v. 6.21.0 § 10:<br><br>## 10.2.33  RADIO BEARER SETUP<br><br>This message is sent by UTRAN to the UE to establish new radio bearer(s). It can also include modifications to the configurations of transport channels and/or physical channels.<br><br>RLC-SAP: AM or UM<br><br>Logical channel: DCCH<br><br>Direction: UTRAN → UE |

| Information Element/Group name | Need | Multi | Type and reference | Semantics description | Version |
|---|---|---|---|---|---|
| Message Type | MP | | Message Type | | |
| [...] | | | | | |
| **RB Information Elements** | | | | | |
| CHOICE specification mode | MP | | | | REL-6 |
| >Complete specification | | | | In this version of the specification, only this value is specified | REL-6 |
| [...] | | | | | |
| **TrCH Information Elements** | | | | | |
| **Uplink transport** | | | | | |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | | | | | |
|---|---|---|---|---|---|
| | **channels** | | | | |
| | [...] | | | | |
| | >>Added or Reconfigured TrCH  information list | OP | 1 to <maxTrCH> | | |
| | >>>Added or Reconfigured UL TrCH information | MP | | Added or Reconfigured UL TrCH information 10.3.5.2 | |
| | [...] | | | | |

### 10.3.5.2      Added or Reconfigured UL TrCH information

| Information Element/Group name | Need | Multi | Type and reference | Semantics description | Version |
|---|---|---|---|---|---|
| [...] | | | | | |
| UL Transport channel identity | MP | | Transport channel identity 10.3.5.18 | | |
| | CV-NotE-DCH | | | | REL-6 |
| CHOICE UL parameters | | | | | REL-6 |
| >DCH,USCH | | | | | REL-6 |
| >>TFS | MP | | Transport Format Set 10.3.5.23 | | |
| >E-DCH | | | | | REL-6 |
| >>E-DCH Transmission Time Interval | MP | | Integer(2,10) | Unit is ms. | REL-6 |
| >>HARQ info for E-DCH | MP | | 10.3.5.7d | | REL-6 |
| >>Added or reconfigured E-DCH MAC-d flow list | OP | <1 to maxE-DCHMACdFlow> | | | REL-6 |
| >>>Added or reconfigured E-DCH MAC-d flow | MP | | Added or reconfigured E-DCH MAC-d flow 10.3.5.1b | | REL-6 |
| Note 1:      If included in System Information Block Type 16, the values 'E-DCH' does not apply for the IE "Uplink transport channel type". | | | | | |

10

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE
ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| 10. The apparatus of claim 9, wherein the non-scheduled transmission information is configured by a bit map of N bits indicating the k TTIs using specific bit values. | Each of the Accused Apple Products comprises the apparatus of claim 9, wherein the non-scheduled transmission information is capable of being configured by a bit map of N bits indicating the k TTIs using specific bit values. The TTIs are indicated using a bitstring as defined in the standard.<br><br>*See* Claim 9*; see also, e.g.,* 3GPP TS 25.331 v. 6.21.0 § 10.3.5 (emphasis added):<br><br>**10.3.5.1b     Added or reconfigured E-DCH MAC-d flow**<br><br>This IE is used in relation to MAC-d flows mapped to the E-DCH transport channel. |

| Information Element/Group name | Need | Multi | Type and reference | Semantics description | Version |
|---|---|---|---|---|---|
| E-DCH MAC-d  flow identity | MP | | E-DCH MAC-d flow identity 10.3.5.7e | | REL-6 |
| E-DCH MAC-d flow power offset | OP | | Integer(0..6) | Only allowed to be absent when already defined for this E-DCH MAC-d flow, unit is dB | REL-6 |
| E-DCH MAC-d flow maximum number of  retransmissions | OP | | Integer (0..15) | Only allowed to be absent when already defined for this E-DCH MAC-d flow | REL-6 |
| E-DCH MAC-d flow multiplexing list | OP | | Bitstring (maxE-DCHMACdFlow) | Indicates, if this is the first MAC-d flow for which PDUs are placed in the MAC-e PDU, the other MAC-d flows from which MAC-d PDUs are allowed to be included in the same MAC-e PDU. Bit 0 is for MAC-d flow 0, Bit 1 is for | REL-6 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | MAC-d flow 1, … Value '1' for a bit means multiplexing is allowed. Bit 0 is the first/leftmost bit of the bit string.  NOTE: The bit that corresponds to the MAC-d flow itself is ignored. | |
| | | CHOICE transmission grant type | OP | | | Only allowed to be absent when already defined for this E-DCH MAC-d flow | REL-6 |
| | | >Non-scheduled transmission grant info | | | | | REL-6 |
| | | >>Max MAC-e PDU contents size | MP | | Integer (1..19982) | | REL-6 |
| | | >>2ms non-scheduled transmission grant HARQ process allocation | MD | | Bitstring (8) | MAC-d PDUs for this MAC-d flow are only allowed to be transmitted in those processes for which the bit is set to "1". Bit 0 corresponds to HARQ process 0, bit 1 corresponds to HARQ process 1,… Default value is: transmission in all HARQ processes is allowed. Bit 0 is the first/leftmost bit of the bit string. | REL-6 |
| | | >Scheduled transmission grant | | | NULL | | REL-6 |

16

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | info | | | | | |
|---|---|---|---|---|---|---|

3GPP TS 25.321 v. 6.18.0 § 11.8.1.4 (emphasis added)[4]:

11.8.1.4. E-TFC Selection

…

The HARQ process ID for the upcoming transmission is determined using the following formulae:

- <u>For 2ms TTI:     CURRENT_HARQ_PROCESS_ID = [5*CFN + subframe number] mod HARQ_RTT</u>

- For 10ms TTI:    CURRENT_HARQ_PROCESS_ID = [CFN] mod HARQ_RTT

Based on this current HARQ process ID and the RRC configuration, the UE shall determine whether to take the scheduled and non-scheduled grants into account in the upcoming transmission.


3GPP TS 25.331 v. 6.21.0 § 8.6.5.18 (emphasis added):

8.6.5.18 Added or reconfigured E-DCH MAC-d flow
If the IE "Added or reconfigured E-DCH MAC-d flow" is included, the UE shall:
…

1>     if the IE "Non-scheduled transmission grant info" is included:

2>     if the TTI configured on the E-DCH equals 2ms, and the IE "2ms non-scheduled transmission grant HARQ process allocation" is configured for this MAC-d flow:

3>     <u>MAC-d PDU's for logical channels belonging to this MAC-d flow shall only be included in a MAC-e PDU transmitted by HARQ processes allowed by the IE "2ms non-scheduled transmission grant HARQ process allocation",</u> with a total contribution from this MAC-d flow not exceeding the size as signalled by the IE "Max MAC-e PDU contents size".

2>     else:

---

[4]  Corresponding disclosure for this limitation and the other limitations set forth in this chart is also found in earlier and/or later versions of 3GPP TS 25.321.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

3>        MAC-d PDU's for logical channels belonging to this MAC-d flow shall be included in a MAC-e PDU transmitted by any HARQ process, with a total contribution from this MAC-d flow (i.e. including MAC-e/es headers) not exceeding the size as signalled by the IE "Max MAC-e PDU contents size".

## 3GPP TS 25.331 v. 6.21.0 § 10.3.5.1b (emphasis added):

10.3.5.1b Added or reconfigured E-DCH MAC-d flow

(Information element) 2ms non-scheduled transmission grant HARQ process allocation:

(Semantics description) MAC-d PDUs for this MAC-d flow are only allowed to be transmitted in those processes for which the bit is set to "1".

Bit 0 corresponds to HARQ process 0, bit 1 corresponds to HARQ process 1,…

Default value is: transmission in all HARQ processes is allowed. Bit 0 is the first/leftmost bit of the bit string.

## 3GPP TS 25.321 v. 6.18.0 § 11.8.1.4 (emphasis added):

11.8.1.4. E-TFC Selection

RRC can allocate non-scheduled transmission grants to individual MAC-d flows in order to reduce the transmission delays. When a 2ms TTI is configured each non-scheduled grant is applicable to the specific set of HARQ processes indicated by RRC. The applicability of scheduled grants can be also restricted to a specific set of HARQ processes when a 2ms TTI is configured. HARQ process restriction and reservation is under the control of the serving cell Node B and indicated to the UE by RRC.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | ████████████████████████████████████████████████████████████████████ |
| | Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 34. An apparatus for transmitting uplink data in user equipment (UE) of a mobile communication system for supporting an | Each of the Accused Apple Products is an apparatus for transmitting uplink data in user equipment (UE) of a mobile communication system for supporting an enhanced uplink dedicated channel (E-DCH).

Each of the Accused Apple Products comprises a receiver capable of receiving at least one of scheduling assignment information generated by the Node B based on a scheduling information and non-scheduled transmission information indicating k transmission time intervals (TTIs) for transmitting non-scheduled data |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| enhanced uplink dedicated channel (E-DCH), comprising:<br><br>a receiver receiving at least one of scheduling assignment information generated by the Node B based on a scheduling information and non-scheduled transmission information indicating k transmission time intervals (TTIs) for transmitting non-scheduled data via the E-DCH within a period having N TTIs;<br><br>a controller selecting a Node B controlled scheduling mode or an non-scheduled transmission mode to transmit data; and<br><br>a transmitter transmitting uplink data according to the scheduling assignment information in the Node B controlled scheduling mode, and | via the E-DCH within a period having N TTIs, a controller selecting a Node B controlled scheduling mode or a non-scheduled transmission mode to transmit data, and a transmitter capable of transmitting uplink data according to the scheduling assignment information in the Node B controlled scheduling mode, and transmitting uplink data on at least one TTI of the k TTIs within the period in the non-scheduled transmission mode, wherein the parameter k is an integer greater than 0, and less than or equal to a positive integer N. *See* claim 9.<br><br>The RRC S/W block in the Accused Apple Products are capable of receiving IE "Non-scheduled transmission grant info" or IE "Scheduled transmission grant info," and is capable of selecting a Node B controlled scheduling mode or a non-scheduled transmission mode to transmit data based on the IEs.<br><br>*See* Claim 9; *see also, e.g,* 3GPP TS 25.321 v.6.18.0 §§ 9.2.5.2.1, 9.2.5.2.2; 3GPP TS 25.309 v. 6.6.0 §§ 7.3.6, 9.3.1, 9.3.1.1, 9.3.1.1.1; 3GPP TS 25.331 v. 6.21.0 § 8.6.5.18 (emphasis added):<br><br>[for FDD:]<br><br>1>    if the IE "Non-scheduled transmission grant info" is included:<br><br>    2>    if the TTI configured on the E-DCH equals 2ms, and the IE "2ms non-scheduled transmission grant HARQ process allocation" is configured for this MAC-d flow:<br><br>        3>  MAC-d PDU's for logical channels belonging to this MAC-d flow shall only be included in a MAC-e PDU transmitted by HARQ processes allowed by the IE "2ms non-scheduled transmission grant HARQ process allocation", with a total contribution from this MAC-d flow (i.e. including MAC-e/es headers) not exceeding the size as signaled by the IE "Max MAC-e PDU contents size".<br><br>    2> else:<br><br>        3>  MAC-d PDU's for logical channels belonging to this MAC-d flow shall be included in a MAC-e PDU transmitted by any HARQ process, with a total contribution from this MAC-d flow (i.e. including MAC-e/es headers) not exceeding the size as signaled by the IE "Max MAC-e PDU contents size".<br><br>1>    if the IE "Scheduled transmission grant info" is included:<br><br>    2>  transmission of MAC-d PDU's for logical channels belonging to this MAC-d flow shall be in accordance with the |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

transmitting uplink data on at least one TTI of the k TTIs within the period in the non-scheduled transmission mode;

wherein the parameter k is an integer greater than 0, and less than or equal to a positive integer N.

received scheduled grant on E-AGCH/E-RGCH (see [15]).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | ████████████████████████████████ |
| | Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 35. The apparatus of claim 34, wherein the non-scheduled transmission information is configured by a bit map of N bits indicating the k TTIs using specific bit values. | Each of the Accused Apple Products comprises the apparatus of claim 34, wherein the non-scheduled transmission information is configured by a bit map of N bits indicating the k TTIs using specific bit values. *See* claim 34.<br><br>The non-scheduled transmission information in the Accused Apple Products is capable of being configured by a bit map of N bits indicating the k TTIs using specific bit values. The TTIs are indicated using a bitstring as defined in the standard.  *See* Claims 34 and 10; *see also, e.g.,* 3GPP TS 25.331 v. 6.21.0 § 10.3.5.1b and 3GPP TS 25.321 v. 6.18.0 § 11.8.1.4, cited in claim 10.<br><br>████████████████████████████████ |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | ███████████████████████████████████████████████████████████████████████████████████████████████████████████████ |
| | Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims. For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents. Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance. To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 39. The apparatus of claim 34, wherein the transmitter computes a non-scheduled | Each of the Accused Apple Products comprises the apparatus of claim 34, wherein the transmitter is capable of computing a non-scheduled transmission determination value according to a connection frame number (CFN) for generating a frame to be used in communication with a Node B accessed by the UE and a subframe number, and is capable of transmitting the data in TTIs in which non-scheduled transmission |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| transmission determination value according to a connection frame number (CFN) for generating a frame to be used in communication with a Node B accessed by the UE and a subframe number, and transmits the data in TTIs in which non-scheduled transmission determination values correspond to values of the k TTIs. | determination values correspond to values of the k TTIs.<br><br>*See* Claim 9; *see also, e.g.*, 3GPP TS 25.321 v. 6.18.0 §§ 4, 11:<br><br># 11.8 Control of E-DCH transmission and reception<br><br>## 11.8.1 UE operation<br><br>### 11.8.1.1 HARQ Operation<br><br>#### 11.8.1.1.1 HARQ entity<br><br>There is one HARQ entity at the UE. A number of parallel HARQ processes are used in the UE to support the HARQ entity, allowing transmissions to take place continuously while waiting for the feedback on the successful or unsuccessful reception of previous transmissions.<br><br>At a given TTI, the HARQ entity identifies the HARQ process for which a transmission should take place. Also, based on the timing, it routes the receiver feedback (ACK/NACK information), relayed by the physical layer, to the appropriate HARQ process.<br><br>The number of HARQ processes is equal to the HARQ round-trip-time (HARQ_RTT). The HARQ_RTT is equal to 4 for 10ms TTI and 8 for 2ms TTI. The TTI duration shall be configured by the higher layers. Each process is associated with a number from 0 to HARQ_RTT-1.<br><br>[...]<br><br>### 11.8.1.4 E-TFC Selection<br><br>[...]<br><br>At each TTI boundary, UEs in CELL_DCH state with an E-DCH transport channel configured shall determine the state of each E-TFC for every MAC-d flow configured based on its required transmit power versus the maximum UE transmit power (see [7] and [12]). If no DCH transport channel is configured or if a DCH transport channel is configured and the selected TFC is "empty" (see [3]), the UE shall consider that E-TFCs included in the minimum set of E-TFCs are always in supported state (see [7]).<br><br>At every TTI boundary for which a new transmission is requested by the HARQ entity (see subclause 11.8.1.1.1), the UE shall |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

perform the operations described below. UEs configured both with DCH and E-DCH transport channels shall perform TFC selection before performing E-TFC selection.

The Serving Grant Update function provides the E-TFC selection function with the maximum E-DPDCH to DPCCH power ratio that the UE is allowed to allocate for the upcoming transmission for scheduled data (held in the Serving Grant state variable – see subclause 11.8.1.3).

[...]

The HARQ process ID for the upcoming transmission is determined using the following formulae:

- For 2ms TTI:    CURRENT_HARQ_PROCESS_ID = [5*CFN + subframe number] **mod** HARQ_RTT

- For 10ms TTI:    CURRENT_HARQ_PROCESS_ID = [CFN] **mod** HARQ_RTT

Based on this current HARQ process ID and the RRC configuration, the UE shall determine whether to take the scheduled and non-scheduled grants into account in the upcoming transmission. If they are not supposed to be taken into account, then the corresponding grant shall be assumed to not exist. If the variable Serving_Grant has the value "Zero_Grant" after the Serving Grant Update, then the Serving Grant shall not be taken into account in the upcoming transmission.

The above two equations are identical to equations (1) and (2) in '087 patent:

> Non-scheduled Transmission Determination Value 2ms TTI = TTI Number mod N = (CFNx5+Subframe Number) mod N.....Equation (2)

> Non-scheduled Transmission Determination Value 10ms TTI = CFN mod N.....Equation (1)

The value CURRENT_HARQ_PROCESS_ID in the standard is the "Non-scheduled Transmission Determination Value in the '087 patent. The value HARQ_RTT in the standard is "N" in the '087 patent.

3GPP TS 25.331 v. 6.21.0 § 8:

### 8.5.15.1    Initialisation for CELL_DCH state after state transition

When the UE receives any of the messages causing the UE to perform a state transition to CELL_DCH, the UE shall set the CFN in relation to the SFN of the first radio link listed in the IE "Downlink information per radio link list" included in that message according to the following formula:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

- for FDD:

$$CFN = (SFN - (DOFF \text{ div } 38400)) \bmod 256$$

where the formula gives the CFN of the downlink DPCH or F-DPCH frame which starts at the same time as or which starts during the PCCPCH frame with the given SFN. DOFF is determined according to subclause 8.6.6.14.

Definition from 3GPP TS 21.905 v. 9.1.0 § 4[5]:

CFN     Connection Frame Number

---

[5]  Corresponding disclosure for this limitation and the other limitations set forth in this chart is also found in earlier and/or later versions of 3GPP TS 21.905.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

|  |  |
|---|---|
|  | 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents |
| 40. The apparatus of claim 39, wherein the non-scheduled transmission determination value is computed by (CFN*n+Subframe Number)mod N, where a TTI size of the E-DCH is 1/n of a frame length. | Each of the Accused Apple Products comprises the apparatus of claim 39, wherein the non-scheduled transmission determination value is capable of being computed by (CFN*n+Subframe Number)mod N, where a TTI size of the E-DCH is 1/n of a frame length.<br><br>*See* Claim 39; *see also, e.g.,* 3GPP TS 25.321 v. 6.18.0 §§ 4, 11.8.1.4:<br><br>11.8.1.4      E-TFC Selection<br><br>[...]<br><br>The HARQ process ID for the upcoming transmission is determined using the following formulae:<br><br>- For 2ms TTI:      CURRENT_HARQ_PROCESS_ID = [5*CFN + subframe number] **mod** HARQ_RTT<br><br>- For 10ms TTI:      CURRENT_HARQ_PROCESS_ID = [CFN] **mod** HARQ_RTT<br><br>Based on this current HARQ process ID and the RRC configuration, the UE shall determine whether to take the scheduled and non-scheduled grants into account in the upcoming transmission. |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims. For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents. Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance. To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

# EXHIBIT B

## SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D) DISCLOSURES FOR U.S. PATENT NO. 7,551,596

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D))[1] |
|---|---|
| 1. A method for transmitting control information for an uplink packet data service in a mobile communication system, the method comprising the steps of:<br><br>[a] forming a first protocol data unit (PDU) including uplink packet data; | Each of the Accused Apple Products[2] performs the claimed method for transmitting control information for an uplink packet data service in a mobile communication system.  Each of the Accused Apple Products meets the HSPA, HSUPA, and/or HSPA+ standard as set forth in 3GPP TS 25.321 v. 6.6.0 and later.<br><br>*See, e.g.,* Apple's iPad Website, http://www.apple.com/ipad/compare/; *see also, e.g.*, Apple's iPhone Website, http://www.apple.com/iphone/compare-iphones/.<br><br>Each of the Accused Apple Products performs the step of forming a first protocol data unit (PDU) including uplink packet data.  Pursuant to the standard, MAC-d PDU includes uplink packet data. |

---

[1]  Samsung reserves the right to supplement this response with additional information obtained through Apple and third party discovery.  For example, Apple's production of Qualcomm source code within its possession is incomplete.  Samsung has sent numerous requests to Apple to supplement its production; to date Apple has not done so.  Third party Qualcomm did not make its source code available to Samsung until April 22, 2013.  Samsung is currently reviewing Qualcomm's source code to determine whether it is complete.  Qualcomm has not produced any non-source code documents.  Third party Intel is in the process of supplementing its production with additional relevant source code.

[2]  "Accused Apple Products" refers to all Apple products supporting HSPA, HSUPA, and/or HSPA+ including, without limitation, the iPhone 4, iPhone 4S, iPhone 5, iPad 2 with Wi+Fi and 3G, iPad 3 with Wi+Fi and 3G, iPad 4 with Wi+Fi and 4G, and iPad mini with Wi+Fi and 4G.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

*See, e.g.,* 3GPP TS 25.321 v. 6.18.0 § 9.1.5:[3]

# 9.1.5 MAC    PDU (E-DCH)

In the case of E-DCH there are two MAC sublayers, MAC-e and MAC-es. MAC-es sits on top of MAC-e and receives PDUs directly from MAC-d. MAC-es SDUs (i.e. MAC-d PDUs) of the same size, coming from a particular logical channel are multiplexed together into a single MAC-es payload. There is one and only one MAC-es PDU per logical channel per TTI (since only one MAC-d PDU size is allowed per logical channel per TTI). To this payload is prepended the MAC-es header (see subclause 9.2.4.1). The number of PDUs, as well as the one DDI value identifying the logical channel, the MAC-d flow and the MAC-es SDU size are included as part of the MAC-e header. In case sufficient space is left in the E-DCH transport block or if Scheduling Information needs to be transmitted, an SI will be included at the end of the MAC-e PDU (see subclause 9.2.4.2). Multiple MAC-es PDUs from multiple logical channels, but only one MAC-e PDU can be transmitted in a TTI.

In the example MAC-e PDU shown in figure 9.1.5.2a, the field $DDI_0$ is referring to the specific DDI value that indicates that there is an SI included in the MAC-e PDU (see subclause 9.2.4.2). This header will not be associated with a new MAC-es payload. Figure 9.1.5.2b shows the MAC-e PDU format when SI is sent alone. In this case $DDI_0$ is not included in the MAC-e PDU and E-



**Figure 9.1.5.1 MAC-es PDU**

TFCI index 0 is used.

³  Corresponding disclosure for this limitation and the other limitations set forth in this chart is also found in earlier and/or later versions of 3GPP TS 25.321.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



**Figure 9.1.5.2a : MAC-e PDU**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | ████████████████████████████████████████████ |
| | To the extent Apple argues that the Accused Apple Products do not literally satisfy this limitation, the Accused Apple Products still infringe under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents<br><br>Apple infringes this claim because it has performed each and every step of this claim, including but not limited to testing and use by its employees or agents.  Apple also infringes this claim by selling the Accused Apple Products to customers and encouraging those customers to use the products in a manner that meets each and every step of this claim. |
| [b] forming a control service data unit (SDU) including control information for an uplink packet data service; | Each of the Accused Apple Products performs the step of forming a control service data unit (SDU) including control information for an uplink packet data service. Control information includes, for example, scheduling information ("SI") as shown in figure 9.1.5.2a.<br><br>*See* claim 1[a]; *see also, e.g.,* 3GPP TS 25.321 v. 6.18.0 § 9:<br><br>## 9.1.1 General<br><br>A MAC PDU is a bit string, with a length not necessarily a multiple of 8 bits. In the drawings in clause 9.1, bit strings are represented by tables in which the first bit is the leftmost one on the first line of the table, the last bit is the rightmost on the last line of the table, and more generally the bit string is to be read from left to right and then in the reading order of the lines.<br><br>Depending on the provided service, MAC SDUs are bit strings with any non-null length, or bit strings with an integer number of octets in length. An SDU is included into a MAC PDU from first bit onward.<br><br>In the UE for the uplink, all MAC PDUs delivered to the physical layer within one TTI are defined as Transport Block Set (TBS). It consists of one or several Transport Blocks, each containing one MAC PDU. The Transport Blocks, shall be transmitted in the |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

order as delivered from RLC. When multiplexing of RLC PDUs from different logical channels is performed on MAC, the order of all Transport Blocks originating from the same logical channel shall be the same as the order of the sequence delivered from RLC. The order of the different logical channels in a TBS is set by the MAC protocol.

## 9.1.5 MAC      PDU (E-DCH)

In the case of E-DCH there are two MAC sublayers, MAC-e and MAC-es. MAC-es sits on top of MAC-e and receives PDUs directly from MAC-d. MAC-es SDUs (i.e. MAC-d PDUs) of the same size, coming from a particular logical channel are multiplexed together into a single MAC-es payload. There is one and only one MAC-es PDU per logical channel per TTI (since only one MAC-d PDU size is allowed per logical channel per TTI). To this payload is prepended the MAC-es header (see subclause 9.2.4.1). The number of PDUs, as well as the one DDI value identifying the logical channel, the MAC-d flow and the MAC-es SDU size are included as part of the MAC-e header. In case sufficient space is left in the E-DCH transport block or if Scheduling Information needs to be transmitted, an SI will be included at the end of the MAC-e PDU (see subclause 9.2.4.2). Multiple MAC-es PDUs from multiple logical channels, but only one MAC-e PDU can be transmitted in a TTI.

In the example MAC-e PDU shown in figure 9.1.5.2a, the field $DDI_0$ is referring to the specific DDI value that indicates that there is an SI included in the MAC-e PDU (see subclause 9.2.4.2). This header will not be associated with a new MAC-es payload.



**Figure 9.1.5.2a MAC-e PDU**

3GPP TS 25.321 v. 6.18.0 § 9.2.5.3.2:

## 9.2.5.3.2 Scheduling Information

The Scheduling Information is located at the end of the MAC-e PDU and is used to provide the serving

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

Node B with a better view of the amount of system resources needed by the UE and the amount of resources it can actually make use of. The transmission of this information will be initiated due to the quantization of the transport block sizes that can be supported or based on the triggers defined in subclause 11.8.1.6. When a Scheduling Information is transmitted, its contents shall always be updated in new transmissions with the buffer status after application of the E-TFC selection procedure described in subclause 11.8.1.4.. The logical channels for which a non-scheduled grant is configured shall never be taken into account when putting together this information. In addition, the RRC may restrict applicability for logical channels for which no non-scheduled grant was configured.

This information includes the following fields:

- Highest priority Logical channel ID (HLID): The HLID field identifies unambiguously the highest priority logical channel with available data. If multiple logical channels exist with the highest priority, the one corresponding to the highest buffer occupancy will be reported. The length of the HLID is 4 bits. In case the TEBS is indicating index 0 (0 byte), the HLID shall indicate the value "0000".

- Fields related to amount of available data:

- Total E-DCH Buffer Status (TEBS):
  The TEBS field identifies the total amount of data available across all logical channels for which reporting has been requested by the RRC and indicates the amount of data in number of bytes that is available for transmission and retransmission in RLC layer. When MAC is connected to an AM RLC entity, control PDUs to be transmitted and RLC PDUs outside the RLC Tx window shall also be included in the TEBS. RLC PDUs that have been transmitted but not negatively acknowledged by the peer entity shall not be included in the TEBS. The length of this field is 5 bits. The values taken by TEBS are shown in Table 9.2.5.3.2.1.

- Highest priority Logical channel Buffer Status (HLBS):
  The HLBS field indicates the amount of data available from the logical channel identified by HLID, relative to the highest value of the buffer size range reported by TEBS when the reported TEBS index is not 31, and relative to 50000 bytes when the reported TEBS index is 31. The length of HLBS is 4 bits. The values taken by HLBS are shown in table 9.2.5.3.2.2. In case the TEBS field is indicating index 0 (0 byte), the HLBS field shall indicate index 0.

- UE Power Headroom (UPH):
  The UPH field indicates the ratio of the maximum UE transmission power and the corresponding DPCCH code power defined in [17]. The length of UPH is 5 bits.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



To the extent Apple argues that the Accused Apple Products do not literally satisfy this limitation, the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | Accused Apple Products still infringe under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| [c] forming at least one first header part corresponding to the first PDU by using a data description indicator (DDI) field representing the first PDU and an N field representing the number of uplink packet data included in the first PDU; | Each of the Accused Apple Products performs the step of forming at least one first header part corresponding to the first PDU by using a data description indicator (DDI) field representing the first PDU and an N field representing the number of uplink packet data included in the first PDU.<br><br>*See* claim 1[a-b]; *see also, e.g.,* 3GPP TS 25.321 v. 6.18.0 § 9.2.4.2:<br><br>**9.2.4.2 MAC-e        header parameters**<br><br>- Data description indicator (DDI):<br>The DDI field identifies the logical channel, MAC-d flow and size of the MAC-d PDUs concatenated into the associated MAC-es PDU. The mapping between the DDI values and the logical channel ID, MAC-d flow and PDU size is provided by higher layers. The length of the DDI field is 6 bits. When, due to the quantization in the transport block sizes that can be supported or triggering of the Scheduling Information, the size of the data plus header is less than or equal to the TB size of the E-TFC selected by the UE minus 24 bits, the DDI value [111111] shall be appended at the end of the MAC-e header and a Scheduling Information shall be concatenated into this MAC-e PDU, where DDI value [111111] indicates that there is a Scheduling Information concatenated in this MAC-e PDU. Otherwise, if the size of the data plus header is less than or equal to the TB size of the ETFC selected by the UE minus 18 bits, a Scheduling Information shall be concatenated into this MAC-e PDU. In any other case it is understood that another MAC-es PDU or Scheduling Information does not fit and it is therefore not necessary to reserve room in the transport block for an additional DDI field.<br><br>- Number of MAC-d PDUs (N):<br>The number of consecutive MAC-d PDUs corresponding to the same DDI value. The length of the N field is 6 bits. |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



To the extent Apple argues that the Accused Apple Products do not literally satisfy this limitation, the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | Accused Apple Products still infringe under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| [d] forming a second header part corresponding to the control SDU by using a DDI field set as a predetermined specific value representing that the control SDU is transmitted; | Each of the Accused Apple Products performs the step of forming a second header part corresponding to the control SDU by using a DDI field set as a predetermined specific value representing that the control SDU is transmitted.  For example, the field DDI$_0$ in figure 9.1.5.2a is a second header part corresponding to the control SDU.<br><br>*See* claim 1[a-c], *see also, e.g.,* 3GPP TS 25.321 v. 6.18.0 § 9.1.5:<br><br><br>**Figure 9.1.5.2a: MAC-e PDU** |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



To the extent Apple argues that the Accused Apple Products do not literally satisfy this limitation, the Accused Apple Products still infringe under the doctrine of equivalents. Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims. For instance, Apple

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| [e] and forming a second data packet unit (PDU) by concatenating a header and a payload, and transmitting the second PDU to a Node B, wherein the header includes the header parts, and the payload includes the first PDU and the control SDU. | Each of the Accused Apple Products performs the step of forming a second data packet unit (PDU) by concatenating a header and a payload, and transmitting the second PDU to a Node B, wherein the header includes the header parts, and the payload includes the first PDU and the control SDU. *See* claim 1[a-d], *see also, e.g.,* 3GPP TS 25.321 v. 6.18.0 § 9.1.5:  **Figure 9.1.5.2a: MAC-e PDU** |

18

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



20

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ |
| | To the extent Apple argues that the Accused Apple Products do not literally satisfy this limitation, the Accused Apple Products still infringe under the doctrine of equivalents because they form and transmit data in substantially the same way, to obtain substantially the same result of transmitting control information. Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 13. A user equipment (UE) for transmitting control information for an uplink packet data service in a mobile communication system, the UE comprising:

[a] at least one block for forming a first protocol data unit (PDU) including uplink packet data; | Each of the Accused Apple Products is a user equipment (UE) for transmitting control information for an uplink packet data service in a mobile communication system.  Each comprises at least one block for forming a first protocol data unit (PDU) including uplink packet data.  *See* claim 1[a].

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

To the extent Apple argues that the Accused Apple Products do not literally satisfy this limitation, the Accused Apple Products still infringe under the doctrine of equivalents for the same reasons set forth above in each element of claim 1, and because the Accused Apple Products form and transmit data in substantially the same way, to obtain substantially the same result of transmitting control information.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| | Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| [b] a control unit for forming a control service data unit (SDU) including control information for an uplink packet data service; | Each of the Accused Apple Products comprises a control unit for forming a control service data unit (SDU) including control information for an uplink packet data service.  *See* claim 1[b].<br><br>■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■<br><br>To the extent Apple argues that any of the Accused Apple Products do not literally infringe this limitation, Samsung contends that the Accused Apple Products infringe this limitation under the doctrine of equivalents for the same reasons set forth above in each element of claim 1 and 13[a], and because the Accused Apple Products form and transmit data in substantially the same way, to obtain substantially the same result of transmitting control information.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| [c] and a multiplexing | Each of the Accused Apple Products comprises a multiplexing and transmission sequence number (TSN) |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| and transmission sequence number (TSN) setting unit for forming at least one first header part corresponding to the first PDU by using a data description indicator (DDI) field representing the first PDU and an N field representing the number of uplink packet data included in the first PDU, | setting unit for forming at least one first header part corresponding to the first PDU by using a data description indicator (DDI) field representing the first PDU and an N field representing the number of uplink packet data included in the first PDU.  *See* claim 1[c].<br><br><br><br>To the extent Apple argues that any of the Accused Apple Products do not literally infringe this limitation, Samsung contends that the Accused Apple Products infringe this limitation under the doctrine of equivalents for the same reasons set forth above in each element of claim 1, 13[a], and 13[b], and because the Accused Apple Products form and transmit data in substantially the same way, to obtain substantially the same result of transmitting control information.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| [d] forming a second header part corresponding to the control SDU by using | Each of the Accused Apple Products comprises a multiplexing and transmission sequence number (TSN) setting unit for forming a second header part corresponding to the control SDU by using a DDI field set as a predetermined specific value representing that the control SDU is transmitted.  *See* claim 1[d].<br><br>To the extent Apple argues that any of the Accused Apple Products do not literally infringe this limitation, |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| a DDI field set as a predetermined specific value representing that the control SDU is transmitted, | Samsung contends that the Accused Apple Products infringe this limitation under the doctrine of equivalents for the same reasons set forth above in each element of claims 1, 13[a], 13[b], and 13[c], and because the Accused Apple Products form and transmit data in substantially the same way, to obtain substantially the same result of transmitting control information.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| [e] and forming a second data packet unit (PDU) by concatenating a header and a payload, the header including the header parts, the payload including the first PDU and the control SDU, wherein the second PDU is transmitted to a Node B. | Each of the Accused Apple Products comprises a multiplexing and transmission sequence number (TSN) setting unit for forming a second data packet unit (PDU) by concatenating a header and a payload, the header including the header parts, the payload including the first PDU and the control SDU, wherein the second PDU is transmitted to a Node B.  *See* claim 1[e].

To the extent Apple argues that any of the Accused Apple Products do not literally infringe this limitation, Samsung contends that the Accused Apple Products infringe this limitation under the doctrine of equivalents for the same reasons set forth above in each element of Claims 1, 13[a], 13[b], 13[c], and 13[d], and because the Accused Apple Products form and transmit data in substantially the same way, to obtain substantially the same result of transmitting control information.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| 16. The user equipment as claimed in claim 13, wherein the control information includes at least one of transmission power information of the UE to transmit the uplink packet data service and buffer status information thereof. | Each of the Accused Apple Products comprises the user equipment of claim 13, wherein the control information includes at least one of transmission power information of the UE to transmit the uplink packet data service and buffer status information thereof. |
|---|---|

Each of the Accused Apple Products comprises the user equipment of claim 13, wherein the control information includes at least one of transmission power information of the UE to transmit the uplink packet data service and buffer status information thereof.

*See* claim 13; *see also, e.g.,* 3GPP TS 25.321 v. 6.18.0 § 9.2.5.3.2:

- UE Power Headroom (UPH):
  The UPH field indicates the ratio of the maximum UE transmission power and the corresponding DPCCH code power defined in [17].  The length of UPH is 5 bits.

The Scheduling Information message is represented in figure 9.2.5.3.2-1 where for each field, the LSB is the rightmost bit in the figure and the MSB is the leftmost bit.

| UPH (5bits) | TEBS (5bits) | HLBS (4bits) | HLID (4bits) |
|---|---|---|---|

**Figure 9.2.5.3.2-1: Scheduling Information format**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

| | |
|---|---|
| |  |
| | To the extent Apple argues that the Accused Apple Products do not literally satisfy this limitation, the Accused Apple Products still infringe under the doctrine of equivalents because they form and transmit data in substantially the same way, to obtain substantially the same result of transmitting control information. Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 18. The user equipment as claimed in claim 13, wherein the DDI field inserted into the first header | Each of the Accused Apple Products comprises the user equipment of claim 13, wherein the DDI field inserted into the first header part represents a media access control-data (MAC-d) flow and a logical channel relating to uplink packet data included in the first PDU, and a size of the uplink packet data.<br><br>*See* claims 1 and 13; *see also, e.g.,* 3GPP TS 25.321 v. 6.18.0 § 9.1.5: |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

part represents a media access control-data (MAC-d) flow and a logical channel relating to uplink packet data included in the first PDU, and a size of the uplink packet data.

## 9.1.5 MAC        PDU (E-DCH)

In the case of E-DCH there are two MAC sublayers, MAC-e and MAC-es. MAC-es sits on top of MAC-e and receives PDUs directly from MAC-d. MAC-es SDUs (i.e. MAC-d PDUs) of the same size, coming from a particular logical channel are multiplexed together into a single MAC-es payload. There is one and only one MAC-es PDU per logical channel per TTI (since only one MAC-d PDU size is allowed per logical channel per TTI). To this payload is prepended the MAC-es header (see subclause 9.2.4.1). The number of PDUs, as well as the one DDI value identifying the logical channel, the MAC-d flow and the MAC-es SDU size are included as part of the MAC-e header. In case sufficient space is left in the E-DCH transport block or if Scheduling Information needs to be transmitted, an SI will be included at the end of the MAC-e PDU (see subclause 9.2.4.2). Multiple MAC-es PDUs from multiple logical channels, but only one MAC-e PDU can be transmitted in a TTI.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY



29

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY; INTEL CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY; QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY

To the extent Apple argues that the Accused Apple Products do not literally satisfy this limitation, the Accused Apple Products still infringe under the doctrine of equivalents because they form and transmit data in substantially the same way, to obtain substantially the same result of transmitting control information. Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

# EXHIBIT C

**SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D)
DISCLOSURES FOR U.S. PATENT NO. 7,672,470**

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D)) |
|---|---|
| 7. An audio/visual (A/V) device which processes an audio signal for an external audio reproduction unit, the A/V device comprising: | Apple infringes this claim, and its asserted dependent claims, by manufacturing, using, importing, selling and offering for sale the Accused Devices[1], each of which comprises at least one digital camera.<br><br>Each Accused Device is an audio/visual (A/V) device which processes an audio signal for an external audio reproduction unit.  Each Accused Device includes an audio output port for connecting an external audio reproduction unit, such as headphones or external speakers.  Each device is "audio/visual" because it is capable of reproducing music and videos.  *See, e.g.,*<br><br>iPhone 5 technical specifications available at http://www.apple.com/iphone/specs.html:<br><br> |

---

[1]   "Accused Devices" refers to all versions, models or generations of the iPhone, iPad, iPad Mini and iPod Touch.  The product and screen images shown herein are representative, and the Accused Devices are not limited to the specific product model, version or generation used in the images.

| | |
|---|---|
| | To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they are devices that perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – they are devices that reproduce and play music and videos.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 7[a] a speaker operable to output the audio signal; | Each Accused Device comprises an internal speaker operable to output an audio signal.  *See* above; *see also, e.g.,*<br><br>When no external reproduction unit is connected, each Accused Device plays music through its built-in speaker.<br><br><br><br>iPhone 5 Music Application when playing a song through the speakers[2]: |

---

[2]  Exemplary screen images show the operation of the iPhone 5 running iOS 6.0 unless otherwise noted.



iPhone 5 home screen, while device continues to play song started in Music Application through speakers:



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include speaker(s) that perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – the speaker(s) allow a user to hear music without using headphones.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12

| | |
|---|---|
| | merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 7[b] an audio output port, which is connectable to an external audio reproduction unit and operable to output the audio signal to the external audio reproduction unit; | Each Accused Device comprises an audio output port, which is connectable to an external audio reproduction unit and operable to output the audio signal to the external audio reproduction unit.  *See* above; *see also, e.g.,*<br><br>iPhone 5 audio output port for headphones (headphone minijack):<br><br><br><br>As shown below, when headphones are connected to the audio output port, each Accused Device plays music through the headphones.  When headphones are not connected, each Accused Device plays music through the built-in speaker(s).<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include headphone jacks that perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – the headphone jacks allow for connection to headphones or an external speaker to reproduce music or videos.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple |

| | |
|---|---|
| | does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 7[c] an audio signal processing unit operable to process the audio signal and output the processed audio signal to one of the speaker and the audio output port; | Each Accused Device comprises an audio signal processing unit operable to process the audio signal and output the processed audio signal to one of the speaker and the audio output port.  For example, each device includes an audio codec chip, and/or associated hardware and/or software, to process audio and selectively output it to an internal speaker or an external audio port.  *See, e.g.,* <br><br> iPhone 5 audio codec chip from teardown available at http://www.ifixit.com/Teardown/iPhone-5-Teardown/10525/3: <br><br>  |

| | |
|---|---|
| | As shown below, when headphones are connected to the audio output port, each Accused Device automatically plays music through the headphones.  When headphones are not connected, each Accused Device plays music through the built-in speakers.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include a  processor that performs substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – the processor is capable of reproducing music through the built-in speaker or the headphones minijack.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 7[d] a display screen operable to display one of a first On-screen Display (OSD) window, which indicates that the external audio reproduction unit is connected to the audio | Each Accused Device comprises a display screen operable to display a first On-screen Display (OSD) window, which indicates that the external audio reproduction unit is connected to the audio output port.<br><br>For example, when headphones are connected and a volume control command is received each Accused Device displays a "headphones" volume control window. |

output port,



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they display clearly delineated volume bar windows on the screen, one of which is labeled "headphones" and another one which is not, that perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – momentarily displaying a clearly delineated overlay window on the screen indicating whether headphones or an external speaker are connected to the

| | |
|---|---|
| | external port.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 7[e] and a second OSD window, which indicates that the external audio reproduction unit is not connected to the audio output port; | Each Accused Device comprises a display screen operable to display a second OSD window, which indicates that the external audio reproduction unit is not connected to the audio output port.<br><br>For example, when headphones are not connected and a volume control command is received each Accused Device displays the following speaker volume control window. |



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they display clearly delineated volume bar windows on the screen, one of which is labeled "headphones" and another one which is not, that perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – the windows momentarily display a clearly delineated overlay window on the screen indicating whether headphones or an external speaker are connected to

| | |
|---|---|
| | the external port.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 7[f] and a control unit which is operable to receive an input command and which controls the audio signal processing unit and the display screen, wherein if the control unit receives the input command and the external audio reproduction unit is | Each Accused Device comprises a control unit which is operable to receive an input command and which controls the audio signal processing unit and the display screen, wherein if the control unit receives the input command and the external audio reproduction unit is connected to the audio output port, the control unit controls the display screen to automatically display the first OSD window, and wherein if the control unit receives the input command and the external audio reproduction unit is not connected to the audio output port, the control unit controls the display screen to automatically display the second OSD window.<br><br>For example, each Accused Device comprises a processor, a touchscreen, and associated circuitry and software.  These components receive an input command, such as the command to increase volume, when the user presses the corresponding button on the phone or touches a corresponding area of the touchscreen.  More particularly, the Accused Devices include an application processor that receives user input and controls the display and the audio reproduction circuitry.<br><br>iPhone 5 volume control buttons: |

connected to the audio output port, the control unit controls the display screen to automatically display the first OSD window, and wherein if the control unit receives the input command and the external audio reproduction unit is not connected to the audio output port, the control unit controls the display screen to automatically display the second OSD window.



If headphones are connected to the audio output port, the phone displays the volume control window corresponding to the headphones volume level.



If headphones are not connected to the audio output port, the phone displays the volume control window corresponding to the speaker volume level.



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include processors that perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – the processors centrally coordinate display of alternating on-screen display windows.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and

Case 5:12-cv-00630-LHK   Document 476-8   Filed 04/30/13   Page 91 of 285


| | |
|---|---|
| | uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents. Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 8. The A/V device according to claim 7,<br><br>8[a] wherein if the control unit receives the input command and the external audio reproduction unit is connected to the audio output port, the control unit further controls the audio signal processing unit to automatically output the processed | Each Accused Device is an A/V device according to claim 7, wherein if the control unit receives the input command and the external audio reproduction unit is connected to the audio output port, the control unit further controls the audio signal processing unit to automatically output the processed audio signal to the audio output port.  *See* claim 7.<br><br>For example, when each Accused Device detects that headphones are connected it automatically outputs the audio signal to the audio output port.  Similarly, when the headphones are connected and the Accused Device receives a command to increase or decrease the volume, it automatically outputs the audio signal to the audio output port. |

| | |
|---|---|
| audio signal to the audio output port, |  |

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – when headphones are connected audio is automatically output  through the headphones port, including when an input command is received, through automatic detection and enabling of the headphones.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it

| | |
|---|---|
| | does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 8[b] and wherein if the control unit receives the input command and the external audio reproduction unit is not connected to the audio output port, the control unit further controls the audio signal processing unit to automatically output the processed audio signal to the speaker. | Each Accused Device is an A/V device according to claim 7, wherein if the control unit receives the input command and the external audio reproduction unit is not connected to the audio output port, the control unit further controls the audio signal processing unit to automatically output the processed audio signal to the speaker.  *See* claim 7.<br><br>For example, when each Accused Device detects that headphones are not connected it automatically outputs the audio signal to the built-in speakers.  Similarly, when the headphones are not connected and each Accused Device receives a command to increase or decrease the volume, it automatically outputs the audio signal to the built-in speakers.<br><br> |

| | |
|---|---|
| | To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – when headphones are connected audio is automatically output through the headphones port, including when an input command is received, through automatic detection and enabling of the headphones; otherwise, audio is automatically routed to the speaker.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 10. The A/V device according to claim 7, wherein the input command includes volume control command. | Each Accused Device is an A/V device according to claim 7, wherein the input command includes volume control command. *See* claim 7.

For example, each Accused Device includes volume control buttons, and/or is able to accept volume control inputs from Apple headphone remote controls.  *See* claim 7[f].

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – they include volume control buttons which the user can press to input volume control information which is received by the application processor and/or audio processor, triggering display of an on-screen display window.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 11. The A/V | Each Accused Device is an A/V device according to claim 10, wherein the first OSD window displays previously stored |

| | |
|---|---|
| device according to claim 10, wherein the first OSD window displays previously stored volume level of external audio reproduction unit and the second OSD window displays previously stored volume level of the speaker. | volume level of external audio reproduction unit and the second OSD window displays previously stored volume level of the speaker. *See* claim 10.<br><br>For example, the headphones volume control window displays a volume bar indicating the previously stored volume level for headphones (audio output port).  *See, e.g.*,<br><br><br><br>Similarly, the built-in speaker(s) volume control window displays a volume bar indicating the previously stored volume level for the speakers. |



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function as this limitation, in substantially the same way to obtain substantially the same result – they display a clearly delineated volume control overlay window including a volume control bar set to the last volume level for either the headphones port or built-in speaker, separately recalling and displaying different prior volume settings for the headphones port or built-in speaker. Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may

|  | now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |

# EXHIBIT D

**SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D)
DISCLOSURES FOR U.S. PATENT NO. 7,577,757**

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D)) |
|---|---|
| 1. A system for synchronizing devices in a multimedia environmental, the system comprising: | Apple directly infringes this claim through testing and use of the claimed system for synchronizing its devices in a multimedia environment by and at the direction of its employees, including through testing and use of the claimed system at Apple stores.   Apple also indirectly infringes this claim by offering to sell and selling components of the claimed system that are found in the iPhone (all generations), iPod Touch (all generations), iPad (all generations), iPad Mini, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, Apple TV, PCs with iTunes, the iCloud system including iTunes Match, and the iTunes system (collectively the "Accused Devices") to customers and by encouraging and aiding those customers to use the Accused Devices in conjunction with the previously accused Apple products in a manner that meets each and every step of this claim.[1] |
| at least one central storage and interface device, wherein | Apple's Mac Products, including the iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, and Apple TV (collectively the "Mac Products"), are central storage and interface devices, wherein audio, video, or photographic data, including content information and content management information, relating to the user, are stored in digital form. |

---

[1]   In its original infringement contentions served on June 15, 2012, Samsung alleged that the iPhone (all generations prior to the iPhone 5), iPod Touch (all generations), iPad (all generations prior to the iPad 4), iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, Apple TV, and PCs with iTunes were collectively the "Accused Devices" that have been used by Apple and its customers to create systems that infringe each and every asserted claim of the '757 patent.  On October 1, 2012, Samsung filed a Motion for Leave to Amend its infringement contentions to further accuse the iPhone 5 of infringing its patents, and on November 15, 2012, Samsung's Motion was granted.  On November 19, 2012, pursuant to the Court's November 15 Order, Samsung served Second Amended Infringement Contentions to accuse the iPod Touch (5th Generation), iPad mini, and iPad 4 of infringing its patents.  Those previously accused devices operate in substantially the same way as described herein.

In Samsung's Third Amended Infringement Contentions, Samsung supplements its infringement contentions in response to the Court's claim construction regarding the '757 patent.  In addition, Samsung clarifies that all Accused Products described in these infringement contentions and all prior infringement contentions also infringe the '757 patent under the doctrine of equivalents for the same reasons that Apple literally infringes, and for the reasons described in further detail herein.  Further, to the extent that the previously accused devices vary from the products described herein, Samsung continues to allege infringement under previously disclosed theories of infringement, including all claims previously asserted against Apple's devices.

| audio, video, or photographic data, including content information and content management information, relating to at least one user, are stored in digital form; and | Apple's iCloud service, including its iTunes Match service that works with iCloud, includes at least a central storage and interface device, wherein audio, video, or photographic data, including content information and content management information, relating to the user, are stored in digital form.  As described by Apple on its website, Apple's iCloud is a central storage service that "automatically and securely stores" a user's multimedia content and allows access to it "from whichever device you happen to be using": <br><br> **Your content. On all your devices.** <br><br> iCloud is so much more than a hard drive in the sky. It makes it quick and effortless to access just about everything on the devices you use every day. iCloud automatically and securely stores your content so it's always available to your iPhone, iPad, iPod touch, Mac, or PC. It gives you access to your music, movies, apps, latest photos, and more from whichever device you happen to be using. And it keeps your email, contacts, and calendars up to date across all your devices. No syncing required. No management required. In fact, no anything required. iCloud does it all for you. <br><br> As described on Apple's website, iTunes Match is a service that allows a user to store all of its music in iCloud so that the user can access, listen, and download that music anytime and anywhere on an iPhone (all generations), iPod Touch (all generations), iPad (all generations), iPad Mini, iMac (all models), MacBook Air (all models), MacBook Pro (all models), Mac Mini (all models), Mac Pro (all models), Apple TV (all generations), or PC that runs iTunes. |

## How iTunes Match works.

iTunes determines which songs in your collection are available in the iTunes Store. Any music with a match is automatically added to iCloud for you to listen to anytime, on any device. Since there are more than 20 million songs in the iTunes Store, chances are your music is already in iCloud. And for the few songs that aren't, iTunes uploads what it can't match (which is much faster than uploading your entire music library). Even better, all the music iTunes matches plays back from iCloud at 256-Kbps AAC DRM-free quality — even if your original copy was of lower quality.

Once your music is in iCloud, you can stream it to any of your devices. Just browse the complete list of all your music stored in the cloud. To listen to a song, tap the iCloud icon next to it and your song starts playing. You can store up to 25,000 songs in iCloud (more if songs are purchased from the iTunes Store), but only what you want to play is stored on your device. So you have immediate access to a huge music library without taking up storage space.

(http://www.apple.com/itunes/itunes-match/, viewed 9/24/2012)

Non-Apple PC computers, including desktops and laptops, that run Apple's iTunes software are further examples of central storage and interface devices, wherein audio, video, or photographic data, including content information and content management information, relating to the user, are stored in digital form.

Apple's iTunes service, with or without the iTunes Match service that works with iTunes, includes at least a central

4

storage and interface device, wherein audio, video, or photographic data, including content information and content management information, relating to the user, are stored in digital form.  For example, as described by Apple on its website, Apple's iTunes services stores digital copies of "more than 26 million songs in the iTunes Store," at "256-Kbps AAC DRM-free quality."

## How iTunes Match works.

iTunes determines which songs in your collection are available in the iTunes Store. Any music with a match is automatically added to iCloud for you to listen to anytime, on any device. Since there are more than 26 million songs in the iTunes Store, chances are your music is already in iCloud.[3] And for the few songs that aren't, iTunes uploads what it can't match (which is much faster than uploading your entire music library). Even better, all the music iTunes matches plays back from iCloud at 256-Kbps AAC DRM-free quality — even if your original copy was of lower quality.

(http://www.apple.com/itunes/itunes-match/, viewed 4/22/2013)

Apple's iTunes, along with the Mac Products, PCs with iTunes, Apple TV, and iCloud, are referred to collectively as the "Central Devices."

To the extent Apple argues that the accused devices are not "central storage and interface devices" because they comprise more than one device (e.g., an iTunes, iCloud, or iTunes Match service comprising more than one server), this limitation is still met under the doctrine of equivalents because Apple's devices acting in concert is an insubstantial difference.  Apple's devices perform substantially the same function as a single-device central storage and interface as they store audio, video, or photographic data, including content information and content management information, and allow "zone specific storage and interface devices" to store and interface with that information.  Apple's devices perform this function in substantially the same way by exchanging audio, video or

| | |
|---|---|
| | photographic information with a zone specific storage and interface device through one or more networks, such as a LAN or WAN.  Apple's devices also obtain substantially the same result, which is to allow the user to be situated in any zone or location and access audio, video, or photographic information related to at least one user.<br><br>Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| and at least one zone, each zone having at least one zone specific storage and interface device capable of storing or interfacing with information stored in the central storage and interface device, wherein audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and | Apple's iPhone, iPod Touch, iPad, iPad Mini, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro and Apple TV devices, and PCs with iTunes (collectively the "Zone Devices") are storage and interface devices that reside in a specific location and are capable of storing or interfacing with information stored in a central storage and interface device.  For example, each of these devices may reside in a room or similar location, or be coupled to devices residing in a room or similar location, such as a dock, including docks sold on Apple's website.  For example, Apple markets and sells docks such as the Bose SoundDock Series II Digital Music System for the iPhone and iPod, or the XtremeMac InCharge X2 Charging Station for iPod, iPhone, or iPad. |

interface device and the central storage and interface device, are updated in relation to the zone specific storage and interface devices and the central storage and interface device, whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.



(http://store.apple.com/us/product/TS836VC/A/bose-sounddock-series-ii-digital-music-system?fnode=4b, viewed 04/25/13)



(http://store.apple.com/us/product/H8446ZM/A/xtrememac-incharge-x2-charging-station-for-ipod-iphone-or-ipad?fnode=45, viewed 4/25/13)

Furthermore, these devices may reside in a location under Apple's ownership and/or control, including but not limited to an Apple store, as they are being assembled, used and/or sold by Apple by and at the direction of Apple's employees.

Apple's software that is pre-loaded on a Zone Device allows the user of a Zone Device to store or interface with the user's audio, video, or photographic information stored on a Central Device.  Apple's software also allows the audio, video, or photographic information contained within a Zone Device and a Central Device to be updated in relation to each other.  As a result, Apple's software allows the user to be situated in one zone and to access all of the user's audio, video, or photographic information stored on the Zone Device or on the Central Device.

The iPhone User Guide (for iOS 6.1 Software), for example, describes a variety of ways information can be exchanged between a Central Device and a Zone Device using Apple's software:

## Managing content on your iOS devices

You can transfer information and files between your iOS devices and computers using either iCloud or iTunes.

- *iCloud* stores content such as music, photos, calendars, contacts, documents, and more, and wirelessly pushes it to your other iOS devices and computers, keeping everything up to date. See iCloud below.

- *iTunes* syncs music, video, photos, and more, between your computer and iPhone. Changes you make on one device are copied to the other when you sync. You can also use iTunes to copy a file to iPhone for use with an app, or to copy a document you've created on iPhone to your computer. See Syncing with iTunes on page 16.

You can use iCloud or iTunes, or both, depending on your needs. For example, you can use iCloud Photo Stream to automatically get photos you take on iPhone to your other devices, and use iTunes to sync photo albums from your computer to iPhone.

*Important:* Don't sync items in the Info pane of iTunes (such as contacts, calendars, and notes) and also use iCloud to keep that information up to date on your devices. Otherwise, duplicated data may result.

**( iPhone User Guide For iOS 6.1 Software, pg. 14)**

The iPod Touch User Guide (for iOS 6.1 software), for example, describes a variety of ways information can be exchanged between a Central Device and a Zone Device using Apple's software:

## Managing content on your iOS devices

You can transfer information and files between your iOS devices and computers using iCloud or iTunes.

- *iCloud* stores your photos, apps, contacts, calendars, and more, and wirelessly pushes them to your devices, keeping everything up to date. See iCloud below.
- *iTunes* syncs music, video, photos, and more between your computer and iPod touch. You can connect iPod touch to your computer using USB, or set it up to sync wirelessly using Wi-Fi. Changes you make on one device are copied to the other when you sync. You can also use iTunes to copy a file to iPod touch for use with an app, or to copy a document you've created on iPod touch to your computer. See Syncing with iTunes on page 15.

You can use iCloud, iTunes, or both, depending on your needs. For example, you can use Photo Stream to automatically put photos you take with iPod touch on all of your devices, and use iTunes to sync photo albums from your computer to iPod touch.

*Important:* Don't sync items in the Info pane of iTunes (such as contacts, calendars, and notes) if you use iCloud to keep that information up to date on your devices. Otherwise, you might see duplicate items.

**( iPod Touch User Guide For iOS 6.1 Software, pg. 14)**

### iCloud

Apple's iCloud service allows a user to store, interface with and access all of the user's multimedia information stored on iCloud from a Zone Device. For example, any of the user's songs stored in iCloud can be streamed or downloaded, over Wi-Fi or a cellular network, to an iOS device or a computer running iTunes. Updates resulting from new music purchases or changes to the user's existing multimedia library are automatically downloaded to a Zone Device over Wi-Fi or a cellular network.  Updates resulting from new music purchases or changes to the user's existing multimedia library are automatically downloaded to all Zone Devices over Wi-Fi or a cellular network. As described on Apple's website:

## New purchases. Automatically everywhere.

iCloud can automatically download new music purchases to all your devices over Wi-Fi — or over a cellular network if you choose. Which means you can buy a song from iTunes on your iPad at home, and find it waiting for you on your iPhone during your morning commute. All without having to sync.[1] And now, when you buy an album, song, movie, or TV show on any device, it's instantly accessible in your iTunes library on your Mac or PC.



## Your past purchases. Available on all your devices.

Now you can download music, movies, and TV shows you've previously purchased to all your devices. When you buy from iTunes, iCloud stores your purchase history. So you can see what you've bought — no matter which device you bought it on. You can access your purchase history from the iTunes Store on your iPhone, iPad, iPod touch, Mac, PC, or Apple TV. Since you already own the songs, albums, movies, or TV shows in your purchase history, you can tap to download them to any of your devices.[1] And whenever you play a movie, TV episode, podcast, iTunes U lesson, or audiobook on one device, all your other devices will automatically remember where you left off. Just sign in to the iTunes Store with your Apple ID.

Try iTunes in the Cloud today.
Download iTunes, free for Mac and PC ›

(http://www.apple.com/icloud/features/itunes-in-the-cloud/, viewed 04/22/13)

Apple also describes how to set up iCloud on its devices.  The iPhone User Guide (for iOS 6.1 software), for example, provides instructions to a user for setting up an iCloud account and using its functionality:

## iCloud

iCloud stores your content, including music, photos, contacts, calendars, and supported documents. Content stored in iCloud is pushed wirelessly to your other iOS devices and computers set up with the same iCloud account.

iCloud is available on devices with iOS 5 or later, on Mac computers with OS X Lion v10.7.2 or later, and on PCs with the iCloud Control Panel for Windows (Windows Vista Service Pack 2 or Windows 7 required).

iCloud features include:

- *iTunes in the Cloud*—Download previous iTunes music and TV show purchases to iPhone for free, anytime.
- *Apps and Books*—Download previous App Store and iBookstore purchases to iPhone for free, anytime.
- *Photo Stream*—Photos you take appear on all your devices. You can also create photo streams to share with others. See Photo Stream on page 71.
- *Documents in the Cloud*—For iCloud-enabled apps, keep documents and app data up to date across all your devices.
- *Mail, Contacts, Calendars*—Keep your mail, contacts, calendars, notes, and reminders up to date across all your devices.
- *Backup*—Back up iPhone to iCloud automatically when connected to power and Wi-Fi. See Backing up iPhone on page 150.
- *Find My iPhone*—Locate your iPhone on a map, display a message, play a sound, lock the screen, or remotely wipe the data. See Find My iPhone on page 34.
- *Find My Friends*—Share your location with people who are important to you. Download the free app from the App Store.
- *iTunes Match*—With an iTunes Match subscription, all your music—including music you've imported from CDs or purchased somewhere other than iTunes—appears on all of your devices and can be downloaded and played on demand. See iTunes Match on page 62.
- *iCloud Tabs*—See the webpages you have open on your other iOS devices and OS X computers. See Chapter 7, Safari, on page 55.

With iCloud, you get a free email account and 5 GB of storage for your mail, documents, and backups. Your purchased music, apps, TV shows, and books, as well as your photo streams, don't count against your free space.

**Sign in or create an iCloud account, and set iCloud options:** Go to Settings > iCloud.

**Purchase additional iCloud storage:** Go to Settings > iCloud > Storage & Backup, then tap Manage Storage. For information about purchasing iCloud storage, go to help.apple.com/icloud.

**View and download previous purchases:**

- *iTunes Store purchases:* Go to iTunes, tap More, then tap Purchased.
- *App Store purchases:* Go to App Store, tap Updates, then tap Purchased.
- *iBookstore purchases:* Go to iBooks, tap Store, then tap Purchased.

**Turn on Automatic Downloads for music, apps, or books:** Go to Settings > iTunes & App Stores.

For more information about iCloud, go to www.apple.com/icloud. For support information, go to www.apple.com/support/icloud.

**(iPhone User Guide For iOS 6.1 Software, pg. 15)**

The iPod Touch User Guide (for iOS 6.1 software), for example, provides instructions to a user for setting up an iCloud account and using its functionality:

## iCloud

iCloud is a service that stores your content, including music, photos, contacts, calendars, and supported documents. Content stored in iCloud is wirelessly pushed to your other iOS devices and computers set up with the same iCloud account.

iCloud is available on an iOS device with iOS 5 or later, on a Mac with OS X Lion v10.7.2 or later, and on a PC with the iCloud Control Panel for Windows (Windows Vista Service Pack 2 or Windows 7 required).

*Note:* iCloud is not available in all areas, and iCloud features may vary by area. For more information, go to www.apple.com/icloud.

iCloud features include:

- *iTunes in the Cloud*—Download your previous iTunes music and TV show purchases to iPod touch for free, anytime.
- *Apps and Books*—Download your previous App Store and iBookstore purchases to iPod touch for free, any time.
- *Photo Stream*—Photos you take on one device appear on all your other devices. See Photo Stream on page 58.
- *Documents in the Cloud*—For iCloud-enabled apps, keep documents and app data up to date across all your devices.
- *Mail, Contacts, Calendars*—Keep your mail contacts, calendars, notes, and reminders up to date across all your devices.
- *Backup*—Back up iPod touch automatically when connected to power and Wi-Fi. See Backing up iPod touch on page 132.
- *Find My iPod*—Locate your iPod touch on a map, display a message, play a sound, lock the screen, or remotely wipe the data. See Find My iPod on page 33.
- *Find My Friends*—Share your location with people who are important to you. Download the free app from the App Store.

- *iTunes Match*—With an iTunes Match subscription, all your music, including music you've imported from CDs or purchased somewhere other than iTunes, appears on all of your devices and can be downloaded and played on demand. See iTunes Match on page 45.
- *iCloud Tabs*—See the webpages you have open on your other iOS devices or computers with OS X Mountain Lion or later installed. See Chapter 15, Safari, on page 70.

With iCloud, you get a free mail account and 5 GB of storage for your mail, documents, and backups. Your purchased music, apps, TV shows, and books don't count against your free space.

**Sign in or create an iCloud account, and set iCloud options:** Go to Settings > iCloud.

**Purchase additional iCloud storage:** Go to Settings > iCloud > Storage & Backup, then tap Manage Storage. For information about purchasing iCloud storage, go to help.apple.com/icloud.

**View and download previous purchase:**

- *iTunes Store purchases:* Go to iTunes, tap More, then tap Purchased.
- *App Store purchases:* Go to App Store, tap Updates, then tap Purchased.
- *iBookstore purchases:* Go to iBooks, tap Store, then tap Purchased.

**Turn on Automatic Downloads for music, apps, or books:** Go to Settings > iTunes & App Stores.

For more information about iCloud, go to www.apple.com/icloud. For support, go to www.apple.com/support/icloud.

**(iPod Touch User Guide For iOS 6.1 Software, pgs. 14-15)**

For example, Apple's website provides instructions to a user for activating iCloud on its devices, including the automatic download feature on Mac devices:



(http://www.apple.com/icloud/setup/mac.html, viewed 04/22/13).

Samsung is seeking discovery from Apple regarding the structure and operation of Apple's iCloud and iTunes services, including Apple's data centers and servers.  Samsung reserves the right to amend its infringement contentions in response to additional discovery to accuse portions of iCloud and/or iTunes as Zone Devices.

## iTunes Match

Apple's iTunes Match service allows a user to store all of the user's songs in iCloud, including songs not obtained from iTunes or the iTunes Store.  iTunes Match allows a user to store, interface with and access all of the user's multimedia information stored on iCloud from a Zone Device. As described on Apple's website:

# A match made in iCloud.

With iTunes in the Cloud, the music you buy from the iTunes Store automatically appears on all your devices.[1] And for music you haven't purchased from iTunes, iTunes Match is the perfect solution. iTunes Match is built right into iTunes on your computer and the Music app on your iOS devices.[2] It lets you store your entire collection in iCloud, even music you've imported from CDs or purchased somewhere other than iTunes. When it's in iCloud, it's available on all your devices. So you can enjoy all your music anywhere, anytime — on your iPhone, iPad, iPod touch, Mac, PC, or Apple TV.

## How iTunes Match works.

iTunes determines which songs in your collection are available in the iTunes Store. Any music with a match is automatically added to iCloud for you to listen to anytime, on any device. Since there are more than 26 million songs in the iTunes Store, chances are your music is already in iCloud.[3] And for the few songs that aren't, iTunes uploads what it can't match (which is much faster than uploading your entire music library). Even better, all the music iTunes matches plays back from iCloud at 256-Kbps AAC DRM-free quality — even if your original copy was of lower quality.

Once your music is in iCloud, you can play it from any of your devices. Just browse the complete list of all your music stored in the cloud and tap to play to it. You can store up to 25,000 songs in iCloud (more if songs are purchased from the iTunes Store), but only you play or download is stored on your device. Tap the iCloud download button to download music from an artist, album, or playlist. So you have immediate access to a huge music library without having to worry about the storage space on your device.

**(http://www.apple.com/itunes/itunes-match/, viewed 4/24/13)**

Apple also describes how to set up iTunes Match on its devices.  The iPhone User Guide (for iOS 6.1 software), for example, provides instructions to a user for setting up iTunes Match and using its functionality:

## iTunes Match

iTunes Match stores your music library in iCloud—including songs imported from CDs—and lets you play your collection on iPhone and your other iOS devices and computers. iTunes Match is offered as a paid subscription. To find out where it's available, see support.apple.com/kb/HT5085.

**Subscribe to iTunes Match:** In iTunes on your computer, go to Store > Turn On iTunes Match, then click the Subscribe button.

Once you subscribe, iTunes adds your music, playlists, and Genius Mixes to iCloud. Your songs that match music already in the iTunes Store are automatically available in iCloud. Other songs are uploaded. You can download and play matched songs at up to iTunes Plus quality (256 kbps DRM-free AAC), even if your original was of lower quality. For more information, see www.apple.com/icloud/features.

**Turn on iTunes Match:** Go to Settings > Music.

Turning on iTunes Match removes synced music from iPhone, and disables Genius Mixes and Genius Playlists.

*Note:* If "Use Cellular Data for iTunes" in Settings > General > Cellular is on, cellular data charges may apply.

Songs are downloaded to iPhone when you play them. You can also download songs and albums manually.

**Download a song or album to iPhone:** While browsing, tap ☁.

*Note:* When iTunes Match is on, downloaded music is automatically removed from iPhone when space is needed, starting with the oldest and least played songs. iCloud icons (☁) reappear for removed songs and albums, showing that the songs and albums are still available through iCloud, but not stored locally on iPhone.

**Manually remove a song or album:** Swipe sideways across the song or album, then tap Delete.

**Show only music that's been downloaded from iCloud:** Go to Settings > Music, then turn off Show All Music (available only when iTunes Match is turned on).

**Manage your devices using iTunes Match or Automatic Downloads:** In iTunes on your computer, go to Store > View My Apple ID. Sign in, then click Manage Devices in the "iTunes in the Cloud" section.

**(iPhone User Guide For iOS 6.1 Software, pg. 62)**

The iPod Touch User Guide (for iOS 6.1 software), for example, provides instructions to a user for setting up iTunes Match and using its functionality:

## iTunes Match

iTunes Match stores your music library in iCloud—including songs imported from CDs— and lets you play your collection on iPod touch and your other iOS devices and computers. iTunes Match is offered as a paid subscription. To find out where it's available, see support.apple.com/kb/HT5085.

**Subscribe to iTunes Match:** In iTunes on your computer, choose Store > Turn On iTunes Match, then click the Subscribe button.

Once you subscribe, iTunes adds your music, playlists, and Genius Mixes to iCloud. Your songs that match music already in the iTunes Store are automatically available in iCloud. Other songs are uploaded. You can download and play matched songs at up to iTunes Plus quality (256 kbps DRM-free AAC), even if your original was of lower quality. For more information, see www.apple.com/icloud/features.

**Turn on iTunes Match:** Go to Settings > Music.

Turning on iTunes Match removes synced music from iPod touch, and disables Genius Mixes and Genius Playlists.

Songs are downloaded to iPod touch when you play them. You can also download songs and albums manually.

**Download a song or album to iPod touch:** While browsing, tap ☁.

*Note:* When iTunes Match is on, downloaded music is automatically removed from iPod touch when space is needed, starting with the oldest and least played songs. iCloud icons (☁) reappear for removed songs and albums, showing that the songs and albums are still available through iCloud, but not stored locally on iPod touch.

**Manually remove a song or album:** Swipe sideways across the song or album, then tap Delete.

**Show only music that's been downloaded from iCloud:** Go to Settings > Music, then turn off Show All Music (available only when iTunes Match is turned on).

**Manage your devices using iTunes Match or Automatic Downloads:** In iTunes on your computer, go to Store > View My Apple ID. Sign in, then click Manage Devices in the "iTunes in the Cloud" section.

**(iPod Touch User Guide For iOS 6.1 Software, pg. 45)**

For example, Apple's website provides instructions to a user for subscribing to iTunes Match on a computer, including the Mac Computers and PCs:

**iTunes Match minimum system requirements:**

- iTunes 10.5.1 or later on your Mac or PC
- iOS 5.0.1 or later on your iPhone, Pad, or iPod touch

▼ **To subscribe to iTunes Match**

1. Open the latest version of iTunes on your computer. You cannot subscribe to iTunes Match from an iOS device.
2. Choose **Store > Turn On iTunes Match.**
3. From the main screen, click the subscribe button.
4. If you already have an existing Apple ID that you use for iTunes Store purchases, sign in with that Apple ID, and click Subscribe. Review this article if you want to use the same Apple ID for iTunes Store purchases and iCloud. Otherwise, click Create Account to create an Apple ID.
5. You may be asked to validate your billing information at this point.
6. After you have added a valid payment method, click "Subscribe" to continue.

    **Note:** You may use store credit to pay for your iTunes Match subscription; however, you must have a valid payment method on file at the time of sign up.

7. Once you agree to the iTunes Match Terms and Conditions, iTunes will automatically scan your iTunes library for matches.
8. A status indicator will allow you to track progress. You may also manually pause and resume iTunes at any time by clicking the Stop or Start button.
9. Once iTunes has completed scanning, matching, and uploading any unmatched songs, click Done.
10. The download button ⬇ will be displayed next to items that are available for download from iCloud. If the download button is not visible, this means that the item already exists locally in your iTunes library.

(**http://support.apple.com/kb/ht4914,** viewed 4/24/13)

Samsung is seeking discovery from Apple regarding the structure and operation of Apple's iCloud and iTunes services, including Apple's data centers and servers.  Samsung reserves the right to amend its infringement contentions in response to additional discovery to accuse portions of iCloud and/or iTunes as Zone Devices.

**Photo Stream**

Similarly, Photo Stream allows a user to take a photo on a Zone Device or a non-Apple device with a digital camera and that photo will automatically appear on the Central Device and all other Zone Devices.

Because certain Zone Devices have limited memory, Apple designed Photo Stream to allow the Central Device to be the "master photo library." As further described on Apple's website:

## Master photo library. On your Mac or PC.

Keeping a complete set of your photos on your Mac is as simple as turning on Photo Stream in iPhoto or Aperture. Every new photo you take appears in a Photo Stream album just as it does on your iPhone, iPad, and iPod touch. But since your Mac has more storage than your iOS device, it automatically imports every picture from your Photo Stream into your photo library so you can edit, delete, and share the ones you want. Want to get the photos you've taken on your point-and-shoot or DSLR camera into your Photo Stream to view on all your other devices? The photos you import to your library from a camera or SD card are automatically uploaded to your Photo Stream. If you have a PC, you can auto-import and upload pictures, too. Just turn on Photo Stream, grab a camera, and start shooting.



(**http://www.apple.com/icloud/features/photo-stream.html**, viewed 04/22/13)

Apple instructs a user on how to use its Photo Stream software.  For example, Apple provides instructions to a user for activating Photo Stream in the iPhone User's Guide (for iOS 6.1 Software):

**Photo Stream**

With Photo Stream, a feature of iCloud (see iCloud on page 15), photos you take on iPhone automatically appear on your other devices set up with Photo Stream, including your Mac or PC. Photo Stream also lets you share select photos with friends and family, directly to their devices or on the web.

**About Photo Stream**

When Photo Stream is turned on, photos you take on iPhone (as well as any other photos added to your Camera Roll) appear in your photo stream after you leave the Camera app and iPhone is connected to the Internet via Wi-Fi. These photos appear in the My Photo Stream album on iPhone and on your other devices set up with Photo Stream.

**Turn on Photo Stream:** Go to Settings > iCloud > Photo Stream.

Photos added to your photo stream from your other iCloud devices also appear in My Photo Stream. iPhone and other iOS devices can keep up to 1000 of your most recent photos in My Photo Stream. Your computers can keep all your Photo Stream photos permanently.

**( iPhone User Guide For iOS 6.1 Software, pg. 71)**

For example, Apple provides instructions to a user for activating Photo Stream in the iPod Touch User's Guide (for iOS 6.1 Software):

**Photo Stream**

With Photo Stream, a feature of iCloud (see iCloud on page 14), photos you take on iPod touch automatically appear on your other devices set up with Photo Stream, including your Mac or PC. Photo Stream also lets you share select photos with friends and family, directly to their devices or on the web.

**About Photo Stream**

When Photo Stream is turned on, photos you take on iPod touch (as well as any other photos added to your Camera Roll) appear in your photo stream after you leave the Camera app and iPod touch is connected to the Internet via Wi-Fi. These photos appear in the My Photo Stream album on iPod touch and on your other devices set up with Photo Stream.

**Turn on Photo Stream:** Go to Settings > iCloud > Photo Stream.

Photos added to your photo stream from your other iCloud devices also appear in My Photo Stream. iPod touch and other iOS devices can keep up to 1000 of your most recent photos in My Photo Stream. Your computers can keep all your Photo Stream photos permanently.

**( iPod Touch User Guide For iOS 6.1 Software, pg. 58)**

For example, Apple provides instructions to a user for activating Photo Stream for Mac Computers on its website:



([http://www.apple.com/icloud/setup/mac.html](http://www.apple.com/icloud/setup/mac.html), viewed 04/22/13)

Apple also provides software that allows a user's Zone Device to store or interface with the user's multimedia content on a Central Device even if the user does not have an iCloud account.

**Syncing With iTunes**

A user can sync music, photos and video between a Zone Device and a Central Device using iTunes. For example, as described in the iPhone User Guide for iOS 6.1 Software:

## Syncing with iTunes

Syncing with iTunes copies information from your computer to iPhone, and vice versa. You can sync by connecting iPhone to your computer, or you can set up iTunes to sync wirelessly with Wi-Fi. You can set iTunes to sync music, photos, videos, podcasts, apps, and more. For information about syncing iPhone with your computer, open iTunes, then choose iTunes Help from the Help menu.

**Set up wireless iTunes syncing:** Connect iPhone to your computer. In iTunes on the computer, select your iPhone, click Summary, then turn on "Sync with this iPhone over Wi-Fi."

When Wi-Fi syncing is turned on, iPhone syncs every day. iPhone must be connected to a power source, iPhone and your computer must both be on the same wireless network, and iTunes must be open on your computer. For more information, see iTunes Wi-Fi Sync on page 136.

**(iPhone User Guide For iOS 6.1 Software, pg. 16)**

For example, as described in the iPod Touch User Guide for iOS 6.1 Software:

## Syncing with iTunes

Syncing with iTunes copies information from your computer to iPod touch, and vice versa. You can sync by connecting iPod touch to your computer, or you can set up iTunes to sync wirelessly with Wi-Fi. You can set iTunes to sync photos, videos, podcasts, apps, and more. For information about syncing iPod touch, open iTunes on your computer, then select iTunes Help from the Help menu.

**Set up wireless iTunes syncing:** In iTunes on the computer, select your iPod touch, click Summary, then turn on "Sync with this iPod over Wi-Fi."

When Wi-Fi syncing is turned on, iPod touch syncs when it's connected to a power source, both iPod touch and your computer are connected to the same wireless network, and iTunes is open on the computer. For more information, see iTunes Wi-Fi Sync on page 97.

**(iPod Touch User Guide For iOS 6.1 Software, pg. 15)**

## Home Sharing

Apple's Home Sharing software allows a user with a second desktop or laptop computer (e.g, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro or PC) to operate it as a zone specific storage and interface device that is capable of storing or interfacing with multimedia information stored on a Central Device. As described on Apple's website, Home Sharing allows a user to share the user's "iTunes media libraries between up to five computers in your household."

 Understanding Home Sharing

**Summary**

Home Sharing in iTunes is designed to let you easily share your iTunes media libraries between up to five computers in your household. You can also use Home Sharing to play your iTunes content on your iOS devices and Apple TV (2nd generation) if they are connected to your home Wi-Fi network.

less

**Products Affected**

Apple TV (2nd generation), Apple TV (3rd generation), iPad, iPhone, iPod touch, iTunes 10, iTunes 11, iTunes 9

(**http://support.apple.com/kb/HT3819#**, viewed 04/22/13)

Home Sharing also allows a Zone Device to interface with a Central Device by playing its iTunes content.  The iPhone User's Guide (for iOS 6.1 Software), for example, instructs a user how to interface with the user's iTunes library on the user's Mac or PC:

## Home Sharing

Home Sharing lets you play music, movies, and TV shows from the iTunes library on your Mac or PC. iPhone and your computer must be on the same Wi-Fi network.

*Note:* Home Sharing requires iTunes 10.2 or later, available at www.itunes.com/download. Bonus content, such as digital booklets and iTunes Extras, can't be shared.

Play music from your iTunes library on iPhone:

1   In iTunes on your computer, choose File > Home Sharing > Turn On Home Sharing. Log in, then click Create Home Share.

2   On iPhone, go to Settings > Music, then log in to Home Sharing using the same Apple ID and password.

3   In Music, tap More, then tap Shared and choose your computer's library.

Return to content on iPhone: Tap Shared and choose My iPhone.

**(iPhone User Guide For iOS 6.1 Software, pg. 63)**

The iPod Touch User's Guide (for iOS 6.1 Software), for example, instructs a user how to interface with the user's iTunes library on the user's Mac or PC:

## Home Sharing

Home Sharing lets you play music, movies, and TV shows from the iTunes library on your Mac or PC. iPod touch and your computer must be on the same Wi-Fi network.

*Note:* Home Sharing requires iTunes 10.2 or later, available at www.itunes.com/download. Bonus content, such as digital booklets and iTunes Extras, can't be shared.

**Play music from your iTunes library on iPod touch:**

1 In iTunes on your computer, choose File > Home Sharing > Turn On Home Sharing. Log in, then click Create Home Share.

2 On iPod touch, go to Settings > Music, then log in to Home Sharing using the same Apple ID and password.

3 In Music, tap More, then tap Shared and choose your computer's library.

Return to content on iPod touch: Tap Shared and choose My iPod touch.

**(iPod Touch User Guide For iOS 6.1 Software, pg. 46)**

Apple's website, for example, instructs a user how to interface with the user's iTunes library between the user's Mac and/or PC computers:

## Home Sharing your iTunes libraries among your family computers

Home Sharing enables you to stream or transfer music, movies, TV shows, apps, and more among up to five authorized computers in your household. To do so, you will need to Turn on Home Sharing on each computer using the same Apple ID. Once set up, all the libraries from your computers you've enabled Home Sharing on will show up in the SHARED area of iTunes:



With Home Sharing, you can stream music and video from one authorized computer to another, or simply drag music between computer libraries. You can also choose to have iTunes automatically import purchases you make on any of your Home Sharing computers to your own library. To do so, select the library and use the Settings button at the lower right of the iTunes window to check what you'd like copied.

28

(**http://support.apple.com/kb/HT3819**, viewed 04/22/13)

Apple's website, for example, further instructs a user how to automatically transfer music between the user's Mac and/or PC computers using home sharing:

▼ **Setting up Automatic Transfer**

Automatic Transfer can transfer your newly-purchased apps, books, music, TV shows, and movie purchases to your other computers setup for Home Sharing.

To automatically transfer content between computers, click the Settings button in the lower-right while viewing a Home Share and select which content to transfer. Automatic transfer of iTunes Store content is off by default.



**Note**: The Settings and Import button are not present if you are using Music Sharing, which is different from Home Sharing. See this article for more information.

- Automatic transfer applies to new purchases from the iTunes Store whenever they are made. However, updates are not transferred (such as those from the App Store).

- Automatic transfer only applies to iTunes Store content you purchase or download after enabling Home Sharing.

- Previously downloaded or non-iTunes Store content can only be manually transferred. It may be necessary to authorize iTunes Store content for playback on other computers.

- Audiobooks purchased through the iTunes Store can be automatically or manually transferred.

- Home Sharing cannot transfer or stream audiobook content purchased from Audible.com. See Audible.com for assistance in using their content on multiple computers.

- In addition, rentals from the iTunes Store cannot be streamed or transferred to another computer using Home Sharing.

(**http://support.apple.com/kb/HT4620**, viewed 04/22/13)

| | |
|---|---|
| | To the extent Apple argues that the accused devices are not "zone specific storage and interface devices" because they do not reside in a room or similar location, or are otherwise mobile or portable devices, this limitation is still met under the doctrine of equivalents because the use of a mobile device instead of a device residing in a room or similar location is an insubstantial difference.  A mobile device performs substantially the same function as a "zone specific storage and interface device," as it stores information and interfaces with audio, video or photographic information stored on a central storage and interface device and updates audio, video or photographic information in relation to the central storage and interface device.  A mobile device performs this function in substantially the same way by exchanging audio, video or photographic information with a central storage and interface device through one or more networks, such as a LAN or WAN.  A mobile device also obtains substantially the same result as a device residing in a room or similar location, which is to allow the user to be situated in any zone or location and access audio, video, or photographic information related to at least one user.<br><br>Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 3. The system of claim 1, further comprising a wide area network (WAN) coupling at least one zone specific storage and interface device with the central storage and interface device. | Apple directly infringes this claim through testing and use of the claimed system for synchronizing its devices in a multimedia environment by and at the direction of its employees, including through the testing and use of the claimed system at Apple stores.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed system that are found in the iPhone, iPod Touch, iPad, iPad mini, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, Apple TV, PCs with iTunes, the iCloud system including iTunes Match, and the iTunes system (collectively the "Accused Devices") to customers and by encouraging and aiding those customers to use the Accused Devices in conjunction with the previously accused Apple products in a manner that meets each and every step of this claim.<br><br>For example, Apple's iCloud service allows a user to couple a Zone Device to the iCloud server (i.e., the Central Device) using a wide area network (e.g., the Internet, including over a cellular network ).  As further described on Apple's website: |

## New purchases. Automatically everywhere.

iCloud can automatically download new music purchases to all your devices over Wi-Fi — or over a cellular network if you choose. Which means you can buy a song from iTunes on your iPad at home, and find it waiting for you on your iPhone during your morning commute. All without having to sync.[1] And now, when you buy an album, song, movie, or TV show on any device, it's instantly accessible in your iTunes library on your Mac or PC.



## Your past purchases. Available on all your devices.

Now you can download music, movies, and TV shows you've previously purchased to all your devices. When you buy from iTunes, iCloud stores your purchase history. So you can see what you've bought — no matter which device you bought it on. You can access your purchase history from the iTunes Store on your iPhone, iPad, iPod touch, Mac, PC, or Apple TV. Since you already own the songs, albums, movies, or TV shows in your purchase history, you can tap to download them to any of your devices.[1] And whenever you play a movie, TV episode, podcast, iTunes U lesson, or audiobook on one device, all your other devices will automatically remember where you left off. Just sign in to the iTunes Store with your Apple ID.

(**http://www.apple.com/icloud/features/itunes-in-the-cloud/**, viewed 02/05/13)

Samsung is seeking discovery from Apple regarding the structure and operation of Apple's iCloud and iTunes services, including Apple's data centers and servers.  Samsung reserves the right to amend its infringement contentions in response to additional discovery to accuse portions of iCloud and/or iTunes as Zone Devices.

To the extent Apple argues that the accused devices are not "zone specific storage and interface devices" because they do not reside in a room or similar location, or are otherwise mobile or portable devices, this limitation is still met under the doctrine of equivalents because the use of a mobile device instead of a device residing in a room or similar location is an insubstantial difference.  A mobile device performs substantially the same function as a "zone

| | |
|---|---|
| | specific storage and interface device," as it stores information and interfaces with audio, video or photographic information stored on a central storage and interface device and updates audio, video or photographic information in relation to the central storage and interface device.  A mobile device performs this function in substantially the same way by exchanging audio, video or photographic information with a central storage and interface device through one or more networks, such as a LAN or WAN.  A mobile device also obtains substantially the same result as a device residing in a room or similar location, which is to allow the user to be situated in any zone or location and access audio, video, or photographic information related to at least one user. |
| | Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 4. The system of claim 1, further comprising a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially | Apple directly infringes this claim through testing and use of the claimed system for synchronizing its devices in a multimedia environment by and at the direction of its employees, including through the testing and use of the claimed system at Apple stores.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed system that are found in the iPhone, iPod Touch, iPad, iPad mini, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, Apple TV, PCs with iTunes, the iCloud system including iTunes Match, and the iTunes system (collectively the "Accused Devices") to customers and by encouraging and aiding those customers to use the Accused Devices in conjunction with the previously accused Apple products in a manner that meets each and every step of this claim.

Each of the Zone Devices have zone specific output devices that are coupled to the Zone Device itself, including but not limited to displays and speakers for outputting audio, video, and photographic information.  By utilizing the Apple software components described above, with Apple's encouragement and direction, the user has substantially identical content information and content management information available to display and manipulate  in any of the devices in any zone.

Samsung is seeking discovery from Apple regarding the structure and operation of Apple's iCloud and iTunes services, including Apple's data centers and servers.  Samsung reserves the right to amend its infringement |

| | |
|---|---|
| identical content information and content management information displayed and manipulated in anyone of the zones. | contentions in response to additional discovery to accuse portions of iCloud and/or iTunes as Zone Devices.<br><br>To the extent Apple argues that the accused devices are not "zone specific storage and interface devices" because they do not reside in a room or similar location, or are otherwise mobile or portable devices, this limitation is still met under the doctrine of equivalents because the use of a mobile device instead of a device residing in a room or similar location is an insubstantial difference.  A mobile device performs substantially the same function as a "zone specific storage and interface device," as it stores information and interfaces with audio, video or photographic information stored on a central storage and interface device and updates audio, video or photographic information in relation to the central storage and interface device.  A mobile device performs this function in substantially the same way by exchanging audio, video or photographic information with a central storage and interface device through one or more networks, such as a LAN or WAN.  A mobile device also obtains substantially the same result as a device residing in a room or similar location, which is to allow the user to be situated in any zone or location and access audio, video, or photographic information related to at least one user.<br><br>Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 14. The system of claim 1 wherein the central storage and interlace device is disposed to be coupled to a wireless mobile device via LAN. | Apple directly infringes this claim through testing and use of the claimed system for synchronizing its devices in a multimedia environment by and at the direction of its employees, including through the testing and use of the claimed system at Apple stores.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed system that are found in the iPhone, iPod Touch, iPad, iPad mini, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, Apple TV, PCs with iTunes, the iCloud system including iTunes Match, and the iTunes system (collectively the "Accused Devices") to customers and by encouraging and aiding those customers to use the Accused Devices in conjunction with the previously accused Apple products in a manner that meets each and every step of this claim.<br><br>*See* Claims 1 and 4.  The iPhone, iPad, iPad mini and iPod touch are each wireless mobile device that can be |

| | |
|---|---|
| | coupled to a Central Device via LAN (e.g., a hardwired connection or Wi-Fi).<br><br>To the extent Apple argues that the accused devices do not meet this limitation, this limitation is still met under the doctrine of equivalents because any differences are insubstantial.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.<br><br>Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 15. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via WAN. | Apple directly infringes this claim through testing and use of the claimed system for synchronizing its devices in a multimedia environment by and at the direction of its employees, including through the testing and use of the claimed system at Apple stores.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed system that are found in the iPhone, iPod Touch, iPad, iPad mini, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, Apple TV, PCs with iTunes, the iCloud system including iTunes Match, and the iTunes system (collectively the "Accused Devices") to customers and by encouraging and aiding those customers to use the Accused Devices in conjunction with the previously accused Apple products in a manner that meets each and every step of this claim.<br><br>*See* Claims 1, 3 and 4.  The iPhone, iPad, iPad mini and iPod Touch are each wireless mobile devices that can be coupled to a Central Device via WAN (e.g., the Internet, including over a cellular network).<br><br>To the extent Apple argues that the accused devices do not meet this limitation, this limitation is still met under the |

|  | doctrine of equivalents because any differences are insubstantial.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.<br><br>Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|

# EXHIBIT E

**SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D) DISCLOSURES FOR U.S. PATENT NO. 7,232,058**

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D)) |
|---|---|
| 1. A data displaying apparatus comprising: | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale the iPod Touch, 4th and 5th Generations, the iPad, iPad 2, iPad 3, iPad 4, iPad Mini, iPhone 4, iPhone 4S, and iPhone 5 (the "Accused Devices") that each comprise a data displaying apparatus. |
| a user input unit for outputting a data-display request signal if there is a data-display request from a user; | Each Accused Device has a touchscreen and a home button that are user input units.  On information and belief, the touchscreen firmware that operates and is pre-loaded on the Accused Devices outputs a data-display request signal if there is a data-display request from a user.  The home button on the Accused Devices outputs a data-display request signal upon being pressed by the user.  To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use a user input device (i.e., a touchscreen and a home button) to perform substantially the same function, in substantially the same way, to obtain substantially the same result  of outputting a data-display request signal if there is a data-display request from a user.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a memory unit for storing a plurality of data and a plurality of identification information corresponding to said plurality of data; | Each Accused Device has a memory unit comprised of  internal flash memory and dynamic random access memory for storing a plurality of data and a plurality of identification information corresponding to such data (e.g., icons, folder names, file names, and pictures).  To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use internal flash memory and dynamic access memory to perform substantially the same function, in substantially the |

| | |
|---|---|
| | same way, to obtain substantially the same result  of storing a plurality of data and a plurality of identification information corresponding to that data.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a display unit for displaying the plurality of data; | Each Accused Device has a screen for displaying the plurality of data.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use a screen to perform substantially the same function, in substantially the same way, to obtain substantially the same result of displaying the plurality of data.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| and a controller for controlling said display unit to display the plurality of identification information if said data display request signal is inputted by | Each Accused Device has a controller that controls the display unit to display a plurality of identification information upon request by the user.  For example, the Accused Devices run using an A5 or A6X processor that includes a graphical processor unit that is a specialized electronic circuit designed to rapidly manipulate and alter memory in such a way so as to accelerate the building of images in a frame buffer intended for output to a display.  The Accused Devices store and display |

| the user, | many types of identification information.  For example, when a user presses the home button on the Accused Devices, a plurality of icons and/or folders of icons is displayed:[1] |
|---|---|

---

[1]   Screen images show the operation of the iPod Touch 5 running iOS 6.0 unless otherwise noted.  The iPad 4, the iPad Mini, and the previously accused devices (as identified in Samsung's original infringement contentions that were served on June 15, 2012 and its amended infringement contentions that were filed on October 1, 2012) that also run on iOS 6.0 operate in substantially the same way.



In another example, when a uses touches a folder of icons (i.e., a plurality of identification information), the icons contained within that folder are displayed:



In a further example, when a user touches the "Notes" icon, a list of the user's Notes (i.e., a plurality of identification information) is displayed:



Due to the larger screen size of the iPad 4 and iPad Mini in relation to the iPad Touch 5, the iPad 4 and iPad Mini displays the list of notes on the left side of the screen with the contents of the selected note displayed on the right side.  The below iPad Mini screenshot indicates that the second note has been selected, and depicts the first note being lifted to reveal the second note.  This functionality is present on all of the Accused Devices, but is most readily apparent on the iPad 4 and iPad Mini.



When the iPad 4 and iPad Mini are placed in portrait mode, the iPad 4 and iPad Mini display the list of notes as an window overlaid on the contents of the selected note displayed, as shown in this iPad Mini screenshot:



In another example, when a when a user opens an inbox in the "Mail" application, a list of the user's email filenames (i.e., a plurality of identification information) is displayed as shown in this screenshot from an iPod Touch 5:



On the iPad 4 and iPad Mini, the list of emails is displayed on the left side of the screen with the contents of the selected email displayed on the right side.  The below iPad Mini screenshot indicates that the second email has been selected for display:



When the iPad 4 and iPad Mini are placed in portrait mode, the iPad 4 and iPad Mini display the list of the user's email filenames as an window overlaid on the contents of the selected email displayed, as shown in this iPad Mini screenshot:



| | |
|---|---|
| | To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use an A5 or A6X processor including a graphic s processing unit to perform substantially the same function, in substantially the same way, to obtain substantially the same result of controlling the display unit to display the plurality of identification information if a data display request signal is inputted by the user.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| display data corresponding to specific identification information via a first layer if the specific identification information is selected from among the plurality of identification information, | Each of the Accused Devices has a controller that controls the display unit to display data corresponding to a specific identification information (e.g., a particular icon, folder, file name or picture) when selected by a user.<br><br>For example, when a user selects a particular note from the list of "Notes", the Accused Devices display that note (i.e., data corresponding to specific identification information) via a first layer: |



In another example, when a user selects an email file, the Accused Devices display that email file (i.e., data corresponding to specific identification information) via a first layer:



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use an A5 or A6X processor including a graphic s processing unit to perform substantially the same function, in

| | substantially the same way, to obtain substantially the same result of displaying data corresponding to specific identification information via a first layer if the specific identification information is selected from among the plurality of identification information.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| --- | --- |
| and display a specific area of the specific information in an enlarged form via a second layer if the specific area is selected from the specific identification information of the first layer. | Each of the Accused Devices allows for the use of a magnifying glass in text fields in certain applications that are pre-loaded by Apple on the Accused Devices, including Safari, Notes, Calendar, Mail and Contacts.<br><br>As described in the iPod Touch User Guide for iOS 6.0 software at p. 23:[2] |

---

[2]   Apple, "iPod Touch User Guide," http://manuals.info.apple.com/en_US/ipod_touch_user_guide.pdf (last visited at November 13, 2012).

### Editing text

If you need to edit text, an onscreen magnifying glass lets you position the insertion point where you need it. You can select text, and cut, copy, and paste text. In some apps, you can also cut, copy, and paste photos and videos.

**Position the insertion point:** Touch and hold to bring up the magnifying glass, then drag to position the insertion point.



**Select text:** Tap the insertion point to display the selection buttons. Tap Select to select the adjacent word, or tap Select All to select all text.

You can also double-tap a word to select it. Drag the grab points to select more or less text. In read-only documents, such as webpages, touch and hold to select a word.

In the "Notes" application, as displayed below for example, upon selection of the word "touchscreen" by the user using its finger on the touchscreen, the Accused Devices display that specific area in an enlarged form via a second layer:



In the "Mail" application, as displayed below for example, upon selection of the word "Package" by the user using its finger on the touchscreen, the Accused Devices display that specific area in an enlarged form via a second layer:



| | To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use an A5 or A6X processor including a graphic s processing unit to perform substantially the same function, in substantially the same way, to obtain substantially the same result of displaying a specific area of the specific information in an enlarged form via a second layer.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformatory response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|
| 9.  A data displaying method comprising: | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale the iPod Touch 5, iPad 4, and the iPad Mini (the "Accused Devices") that each perform each and every step of this claim. Apple also indirectly infringes this claim by offering to sell and selling the Accused Devices that perform the claimed methods to customers and by encouraging and aiding those customers to use those products in a manner that meets each and every step of this claim. |
| displaying a plurality of identification information corresponding respectively to a plurality of data if a data-display request signal is inputted by a user; | Each Accused Devices displays a plurality of identification information (e.g., icons, folder names, file names, and pictures) if a data-display request signal is inputted by a user.<br><br>For example, when a user presses the home button on one of the Accused Devices, that Accused Device displays a plurality of icons and/or folders of icons: |



In another example, when a uses touches a folder of icons (i.e., a plurality of identification information), the Accused Devices display the icons contained within that folder:



In a further example, when a user touches the "Notes" icon, for example, the Accused Devices display a list of the user's Notes (i.e., a plurality of identification information):



Due to the larger screen size of the iPad 4 and iPad Mini in relation to the iPod Touch 5, the iPad 4 and iPad Mini displays the list of notes on the left side of the screen with the contents of the selected note displayed on the right side.  The below iPad Mini screenshot indicates that the second note has been selected, and depicts the first note being lifted to reveal the second note.  This functionality is present on all of the Accused Devices, but is most readily apparent on the iPad.



When the iPad 4 and iPad Mini are placed in portrait mode, the iPad 4 and iPad Mini display the list of notes as an window overlaid on the contents of the selected note displayed, as shown in this iPad Mini screenshot:



In another example, when a when a user opens an inbox in the "Mail" application, a list of the user's email filenames (i.e., a plurality of identification information) is displayed, as shown in this screenshot from an iPod Touch 5:



On the iPad 4 and iPad Mini, the list of emails is displayed on the left side of the screen with the contents of the selected email displayed on the right side.  The below iPad Mini screenshot indicates that the second email has been selected for display:



When the iPad 4 and iPad Mini are placed in portrait mode, the iPad 4 and iPad Mini display the list of the user's email filenames as an window overlaid on the contents of the selected email displayed, as shown in this iPad Mini screenshot:



| | To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use a combination of an A5 or A6X processor with included graphics processing unit and a touchscreen to perform substantially the same function, in substantially the same way, to obtain substantially the same result of displaying a plurality of identification information corresponding respectively to a plurality of data if a data-display request signal is inputted by a user.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|
| displaying specific data corresponding to a specific one of the plurality of identification information via a first layer if the specific identification information is selected from the plurality of identification information; | Each Accused Device displays specific data corresponding to a specific one of the plurality of identification information (e.g., a particular icon, folder, file name or picture) that is selected by a user.<br><br>For example, when a user selects a particular note from the list of "Notes", the Accused Devices display that note (i.e., data corresponding to specific identification information) via a first layer: |



In another example, when a user selects an email file, the Accused Devices display that email file (i.e., data corresponding to specific identification information) via a first layer:



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use a combination of an A5 or A6X processor with included graphics processing unit and a touchscreen to perform

| | |
|---|---|
| | substantially the same function, in substantially the same way, to obtain substantially the same result of displaying specific data corresponding to a specific one of the plurality of identification information via a first layer if the specific identification information is selected from the plurality of identification information.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| and enlarging and displaying a specific area of the specific data of the first layer via a second layer if the specific area is selected from the specific data displayed via the first layer, wherein the second layer enlarges the specific area. | Each of the Accused Devices allows for the use of a magnifying glass inside the text fields in certain applications that are pre-loaded by Apple on the Accused Devices, including Safari, Notes, Calendar, Mail and Contacts.<br><br>As described in the iPod Touch User Guide for iOS 6.0 software at p. 23:[3] |

---

[3]   Apple, "iPod Touch User Guide," http://manuals.info.apple.com/en_US/ipod_touch_user_guide.pdf (last visited at November 13, 2012).



In the "Notes" application, as displayed below for example, upon selection of the word "touchscreen" by the user using its finger on the touchscreen, the Accused Devices display that specific area in an enlarged form via a second layer:



In the "Mail" application, as displayed below for example, upon selection of the word "Package" by the user using its finger on the touchscreen, the Accused Devices display that specific area in an enlarged form via a second layer:



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use a combination of an A5 or A6X processor with included graphics processing unit and a touchscreen to perform substantially the same function to perform substantially the same function, in substantially the same way, to obtain substantially the same result of enlarging and displaying a specific area of the specific data of the first layer via a second layer if the specific area is selected from the specific data displayed via the first layer, wherein the second layer enlarges the specific area. Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims. For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents. Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance. To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

# EXHIBIT F

**SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D)
DISCLOSURES FOR U.S. PATENT NO. 6,292,179**

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D)) |
|---|---|
| 1. A software keyboard system using a touch screen, comprising:<br><br>[a] a screen displaying a keyboard image; | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale all models of the iPhone, the iPod Touch, and the iPad (the "Accused Devices").[1]<br><br>Each of Apple's Accused Devices is a software keyboard system that uses a touch screen. *See* SAMNDCA630-00835494 – 540; s*ee, e.g.,*<br><br>iPhone 4S technical specifications available at http://www.apple.com/iphone/iphone-4s/specs.html:<br><br>Display<br>· Retina display<br>· 3.5-inch (diagonal) widescreen Multi-Touch display<br>· 960-by-640-pixel resolution at 326 ppi<br>· 800:1 contrast ratio (typical)<br>· 500 cd/m2 max brightness (typical)<br>· Fingerprint-resistant oleophobic coating on front and back<br>· Support for display of multiple languages and characters simultaneously |

---

[1]   "Accused Devices" refers to all Apple products that implement a touchscreen keyboard as described herein, including all models of iPhone, iPad and iPod Touch.  Exemplary documents and screenshots are provided in these charts for at least one iPhone, iPad, and iPod Touch model; however,  all iPhone models, all iPad models, and all iPod Touch models operate in substantially the same way, regardless of operating system. and are accused on the same bases articulated in these charts for the exemplary products.

**Keyboard Support**

English (U.S.), English (UK), Chinese – Simplified (Handwriting, Pinyin, Stroke), Chinese – Traditional (Handwriting, Pinyin, Zhuyin, Cangjie, Stroke), French, French (Canadian), French (Switzerland), German (Germany), German (Switzerland), Italian, Japanese (Romaji, Kana), Korean, Spanish, Arabic, Bulgarian, Catalan, Cherokee, Croatian, Czech, Danish, Dutch, Emoji, Estonian, Finnish, Flemish, Greek, Hawaiian, Hebrew, Hindi, Hungarian, Icelandic, Indonesian, Latvian, Lithuanian, Macedonian, Malay, Norwegian, Polish, Portuguese, Portuguese (Brazil), Romanian, Russian, Serbian (Cyrillic/Latin), Slovak, Swedish, Thai, Tibetan, Turkish, Ukrainian, Vietnamese

The iPhone 4S displays a keyboard image, such as the Japanese (Kana) keyboard and the Chinese Stroke keyboard[2]:

---

[2]   Screen images show the operation of the Accused Devices running iOS 5.0 or later unless otherwise noted.  However, the accused functionalities operate in the same way for all versions of iOS 4, iOS 5, and iOS 6.  On information and belief, the accused functionalities also operate in substantially the same way for all versions of iOS 3; however, Apple has not produced relevant source code for iOS 3.



iPhone 5 technical specifications available at http://www.apple.com/iphone/specs.html:

Display

Retina display

4–inch (diagonal) widescreen Multi–Touch display

1136–by–640–pixel resolution at 326 ppi

800:1 contrast ratio (typical)

500 cd/m2 max brightness (typical)

Fingerprint–resistant oleophobic coating on front

Support for display of multiple languages and characters simultaneously

## Keyboard Support

English (U.S.), English (UK), Chinese – Simplified (Handwriting, Pinyin, Stroke), Chinese – Traditional (Handwriting, Pinyin, Zhuyin, Cangjie, Stroke), French, French (Canadian), French (Switzerland), German (Germany), German (Switzerland), Italian, Japanese (Romaji, Kana), Korean, Spanish, Arabic, Bulgarian, Catalan, Cherokee, Croatian, Czech, Danish, Dutch, Emoji, Estonian, Finnish, Flemish, Greek, Hawaiian, Hebrew, Hindi, Hungarian, Icelandic, Indonesian, Latvian, Lithuanian, Macedonian, Malay, Norwegian, Polish, Portuguese, Portuguese (Brazil), Romanian, Russian, Serbian (Cyrillic/Latin), Slovak, Swedish, Thai, Tibetan, Turkish, Ukrainian, Vietnamese

The iPhone 5 displays a keyboard image, such as the Japanese (Kana) keyboard and the Chinese Stroke keyboard:



iPod Touch 5 technical specifications available at http://www.apple.com/ipod-touch/specs.html:

**Display**

4-inch (diagonal) widescreen display with Multi-Touch IPS technology

Retina display

1136-by-640-pixel resolution at 326 pixels per inch

800:1 contrast ratio (typical)

500 cd/m2 max brightness (typical)

Fingerprint-resistant oleophobic coating



## Keyboard Support

English (U.S.), English (Australian), English (Canadian), English (UK), Chinese – Simplified (Handwriting, Pinyin, Stroke), Chinese – Traditional (Handwriting, Pinyin, Zhuyin, Cangjie, Stroke), French, French (Canadian), French (Switzerland), German (Germany), German (Switzerland), Italian, Japanese (Romaji, Kana), Korean, Spanish, Arabic, Bulgarian, Catalan, Cherokee, Croatian, Czech, Danish, Dutch, Emoji, Estonian, Finnish, Flemish, Greek, Hawaiian, Hebrew, Hindi, Hungarian, Icelandic, Indonesian, Latvian, Lithuanian, Macedonian, Malay, Norwegian, Polish, Portuguese (Portugal), Portuguese (Brazil), Romanian, Russian, Serbian (Cyrillic/Latin), Slovak, Swedish, Thai, Tibetan, Turkish, Ukrainian, Vietnamese

The iPod Touch 5 displays a keyboard image, such as the Japanese (Kana) keyboard and the Chinese Stroke keyboard:



iPad 4 with Retina display technical specifications available at http://www.apple.com/ipad/specs/:

**Display**

- **Retina display**
- 9.7-inch (diagonal) LED-backlit Multi-Touch display with IPS technology
- 2048-by-1536 resolution at 264 pixels per inch (ppi)
- Fingerprint-resistant oleophobic coating



- Keyboard support for English (U.S.), English (Australian), English (Canadian), English (UK), Chinese – Simplified (Handwriting, Pinyin, Stroke), Chinese – Traditional (Handwriting, Pinyin, Zhuyin, Cangjie, Stroke), French, French (Canadian), French (Switzerland), German (Germany), German (Switzerland), Italian, Japanese (Romaji, Kana), Korean, Spanish, Arabic, Bulgarian, Catalan, Cherokee, Croatian, Czech, Danish, Dutch, Emoji, Estonian, Finnish, Flemish, Greek, Hawaiian, Hebrew, Hindi, Hungarian, Icelandic, Indonesian, Latvian, Lithuanian, Macedonian, Malay, Norwegian, Polish, Portuguese (Portugal), Portuguese (Brazil), Romanian, Russian, Serbian (Cyrillic/Latin), Slovak, Swedish, Thai, Tibetan, Turkish, Ukrainian, Vietnamese

The iPad 4 with Retina display displays a keyboard image, such as the Japanese (Kana) keyboard and the Chinese Stroke keyboard:



iPad mini technical specifications available at http://www.apple.com/ipad-mini/specs/:

**Display**

- 7.9-inch (diagonal) LED-backlit Multi-Touch display with IPS technology
- 1024-by-768 resolution at 163 pixels per inch (ppi)
- Fingerprint-resistant oleophobic coating



- Keyboard support for English (U.S.), English (Australian), English (Canadian), English (UK), Chinese – Simplified (Handwriting, Pinyin, Stroke), Chinese – Traditional (Handwriting, Pinyin, Zhuyin, Cangjie, Stroke), French, French (Canadian), French (Switzerland), German (Germany), German (Switzerland), Italian, Japanese (Romaji, Kana), Korean, Spanish, Arabic, Bulgarian, Catalan, Cherokee, Croatian, Czech, Danish, Dutch, Emoji, Estonian, Finnish, Flemish, Greek, Hawaiian, Hebrew, Hindi, Hungarian, Icelandic, Indonesian, Latvian, Lithuanian, Macedonian, Malay, Norwegian, Polish, Portuguese (Portugal), Portuguese (Brazil), Romanian, Russian, Serbian (Cyrillic/Latin), Slovak, Swedish, Thai, Tibetan, Turkish, Ukrainian, Vietnamese

iPad mini displays a keyboard image, such as the Japanese (Kana) keyboard and the Chinese Stroke keyboard:



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include a screen that performs the same function of displaying images in substantially the same way, to obtain substantially the same result of displaying a keyboard image on a screen.  Any differences between the Accused Devices and this limitation are insubstantial.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple

|  | provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|
| 1[b] a touch panel on said screen, generating a coordinate value in accordance with a position pressed by a stylus; | Each Accused Device comprises a touch panel on said screen, generating a coordinate value in accordance with a position pressed by a stylus.  For example, each Accused Device includes a multi-touch screen panel and associated circuitry.  The associated circuitry includes, for example, a touch screen controller chip that generates a coordinate value according to where the screen is touched (pressed) by, for example, the user's finger (stylus).<br><br>Sample iPhone 4S touch screen controller chip:<br><br> |

Sample iPhone 5 touch screen controller chip, from teardown available at http://www.ifixit.com/Teardown/iPhone-5-Teardown/10525/3:



Sample iPod Touch 5 touch screen controller chip, from teardown available at
http://www.ifixit.com/Teardown/iPod+Touch+5th+Generation+Teardown/10803/3:

14



Sample iPad 4 with Retina display touch screen controller chip, from teardown available at http://www.ifixit.com/Teardown/iPad+4+Teardown/11462/2:



Sample iPad mini touch screen controller chip, from teardown available at
http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/2:



Touchscreen controller

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they use a touch screen panel to perform the same function of identifying the position on the screen touched by a stylus (e.g., a finger) in substantially the same way, to obtain substantially the same result of generating positional data corresponding to the position on the screen touched by the stylus.  Any differences between the Accused Devices and this limitation, such as how the position pressed by the stylus is represented within the system, are insubstantial.  between the Accused Devices and this limitation are insubstantial.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No.

|  | 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|
| 1[c] a converter receiving said coordinate value and outputting a digital value; | Each Accused Device comprises a converter receiving said coordinate value and outputting a digital value.  *See* 1[b].  A digital value is necessary for processing by each Accused Device's digital circuitry.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform the same function of generating a digital value representing the positional data corresponding to the position on the screen touched by the stylus (*see* 1[b]) in substantially the same way, to obtain substantially the same result of outputting a digital value corresponding to said positional data.  Any differences between the Accused Devices and this limitation are insubstantial.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 1[d] a memory storing:

names of keys forming said keyboard image,

for each of said keys, a plurality | Each Accused Device comprises a memory. *See, e.g.,*

iPhone 4S technical specifications available at http://www.apple.com/iphone/iphone-4s/specs.html:

Capacity  [16GB]   [32GB]   [64GB]

iPhone 5 technical specifications available at http://www.apple.com/iphone/specs.html: |

| of respective key codes, and<br><br>for each of said key codes, corresponding screen and direction range information; | Capacity[1] | | | |
|---|---|---|---|---|
| | | 16GB | 32GB | 64GB |

iPod Touch 5 technical specifications available at http://www.apple.com/ipod-touch/specs.html:

| Capacity[2] | | |
|---|---|---|
| | 32GB | 64GB |

iPad 4 with Retina display technical specifications available at http://www.apple.com/ipad/specs/:

| Storage[2] | | | | | | |
|---|---|---|---|---|---|---|
| | 16GB | 32GB | 64GB | 16GB | 32GB | 64GB |

iPad mini technical specifications available at http://www.apple.com/ipad-mini/specs/:

| Storage[2] | | | | | | |
|---|---|---|---|---|---|---|
| | 16GB | 32GB | 64GB | 16GB | 32GB | 64GB |

Each Accused Device also includes a processor with internal memory and access to RAM.  For example, the iPhone 4S includes an A5 processor:



iPhone 5 features list available at http://www.apple.com/iphone/features/:

# A6 chip.

## Performance and graphics up to twice as fast.
## With battery life to spare.

**Faster CPU performance.**
With the new A6 chip, just about everything you do on
iPhone 5 is noticeably faster — up to twice as fast
compared with the A5 chip. So apps launch, web pages
load, and email attachments appear almost instantly.



iPod Touch 5 features list available at http://www.apple.com/ipod-touch/features/:

## Dual-core A5 chip. Power meets play.



It's the most powerful iPod touch ever. That's because the dual-core A5 chip provides up to twice the processing power and up to seven times faster graphics than the previous generation. So games are incredibly responsive and realistic. Your samurai swordplay is sharper than ever, your zombie-dodging ultrasmooth. And because the A5 chip isn't a power hog, you get the same great battery life: up to 40 hours of music or 8 hours of video on a single charge.¹ So you can keep on swinging, slicing, and racing. And listening, watching, and browsing.

iPad 4 with Retina display features list available at http://www.apple.com/ipad/features/:



## Powerful A6X chip. We doubled down on performance.

iPad mini features list available at http://www.apple.com/ipad-mini/features/:



**Powerful A5 chip.**

iPad is known for its fast, fluid performance, and iPad mini doesn't disappoint. It features the powerful and power-efficient A5 chip, which makes everything you do feel smooth and natural. From the little things like switching from app to app and swiping from page to page, to the big things like editing photos, watching movies, and playing games.

The Accused Devices store in memory the names of keys forming a keyboard image. Some keys are a assigned a plurality of respective key codes, which are also stored in memory. For example, on the iPhone 4S, the Japanese (Kana) numeric input keyboard assigns a plurality of key codes (5, +, x and ÷) to the key labeled "5":[3]

---

[3]  The Japanese (Kana) keyboard is used in the screenshots below; however, the Chinese Stroke keyboard functions identically on all Accused Devices.



The key codes assigned to the "5" key are enlarged when the key is pressed and held:



The iPhone 5 stores in memory the names of keys forming a keyboard image.  Some keys are a assigned a plurality of respective key codes, which are also stored in memory.  For example, the Japanese (Kana) numeric input keyboard assigns a plurality of key codes (5, +, x and ÷) to the key labeled "5":



The key codes assigned to the "5" key are enlarged when the key is pressed and held:



The iPod Touch 5 stores in memory the names of keys forming a keyboard image.  Some keys are a assigned a plurality of respective key codes, which are also stored in memory.  For example, the Japanese (Kana) numeric input keyboard assigns a plurality of key codes (5, +, x and ÷) to the key labeled "5":



The key codes assigned to the "5" key are enlarged when the key is pressed and held:



Similarly, the Japanese (Kana) keyboard on the iPad 4 with Retina display shows keys which are assigned a plurality of respective key codes, which are also stored in memory:



Similarly, the Japanese (Kana) keyboard on the iPad mini shows keys which are assigned a plurality of respective key codes, which are also stored in memory:



Each Accused Device stores in memory, for each of said key codes, corresponding screen and direction range

| | |
|---|---|
| | information, as shown below.  For example, other keyboards such as the Chinese (Stroke) keyboards,  assign different key codes to the same keys, and the different codes and keyboards are stored in memory and accessed as needed.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform the same function of storing in memory information corresponding to keys in said keyboard image, and information corresponding to key codes for each of said keys, including screen and direction range information used to generate said key codes, in substantially the same way, to obtain substantially the same result of allowing the user to select a generate a key code by performing a trace with the stylus on the touch screen.  Any differences between the Accused Devices and this limitation, such as precisely where in memory the keys, key codes, and other associated information are stored, or the particular representation of that information in said memory, are insubstantial.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 1[e] a controller controlling said display of said keyboard image, receiving said digital value for a trace of said stylus, and determining the position and direction of said trace; | Each Accused Device comprises a controller controlling said display of said keyboard image, receiving said digital value for a trace of said stylus, and determining the position and direction of said trace.  For example, each Accused Device  includes a processor and associated chips and circuitry to control the display and process input from the touch screen.  *See, e.g.,* claim 1[b-d].<br><br>When a user slides a finger (stylus) on, for example, a key in the Japanese (Kana) keyboard, the Accused Device controller receives a digital value corresponding to the user's inputted trace and determines the position and direction of the trace.  This is evident because, as shown below, the controller selects a key input based on the position and direction of the trace.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform the same function of controlling the display of the keyboard image, receive one or more digital values corresponding to a trace of the stylus, and determine the position and direction of the trace, in substantially the same way, to obtain substantially the same result of determining a key |

| | |
|---|---|
| | code based on the position and direction of a trace of the stylus, and displaying the generated key code in the keyboard image.  Any differences between the Accused Devices and this limitation are insubstantial.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 1[f] wherein said controller selects one of said key codes based on said position and on said direction of said trace, and | Each Accused Device's controller selects a key code based on the position and direction of a trace.<br><br>For example, in the iPhone 4S, when a user slides a finger on top of the "5" key in the numeric Japanese (Kana) keyboard, one of the key codes assigned to the "5" key is selected.<br><br>Sliding the finger to the left results in selecting and inputting the "+" key code: |



Sliding the finger to the right results in selecting and inputting the "÷" key code:



Sliding the finger in the up direction results in selecting and inputting the "x" key code:



In the iPhone 5, when a user slides a finger on top of the "5" key in the numeric Japanese (Kana) keyboard, one of the key codes assigned to the "5" key is selected.

Sliding the finger to the left results in selecting and inputting the "+" key code:



Sliding the finger to the right results in selecting and inputting the "÷" key code:



Sliding the finger in the up direction results in selecting and inputting the "x" key code:



In the iPod Touch 5, when a user slides a finger on top of the "5" key in the numeric Japanese (Kana) keyboard, one of the key codes assigned to the "5" key is selected.

Sliding the finger to the left results in selecting and inputting the "+" key code:



Sliding the finger to the right results in selecting and inputting the "÷" key code:



Sliding the finger in the up direction results in selecting and inputting the "x" key code:



Similarly, sliding the finger to the left in the previously identified key of the iPad Japanese (Kana) keyboard results in selecting a first key code:



Sliding the finger to the right in the previously identified key of the iPad Japanese (Kana) keyboard results in selecting a second key code:



The iPad mini has the same functionality:





To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform the same function of selecting a key code based on the position and direction of a trace of the stylus in substantially the same way, to obtain substantially the same result of selecting a key code.  Any differences between the Accused Devices and this limitation are insubstantial.  Apple

| | |
|---|---|
| | has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 1[g] wherein said controller controls said screen to display, in said keyboard image, an image of said generated key code for a predetermined time after said controller selects said one of said key codes, and then to restore said image of said generated key code to its original state. | Each Accused Device's controller controls said screen to display, in said keyboard image, an image of said generated key code for a predetermined time after said controller selects said one of said key codes, and then to restore said image of said generated key code to its original state.

For example, in the iPhone 4S, when the finger touches the "5" key from right to left, the "+" key code is selected. The selected key code is displayed for a predetermined amount of time: |



After the predetermined amount of time has passed, the keyboard image is restored to its original state:



In the iPhone 5, when the finger touches the "5" key from right to left, the "+" key code is selected.  The selected key code is displayed for a predetermined amount of time:



After the predetermined amount of time has passed, the keyboard image is restored to its original state:



In the iPod Touch 5, when the finger touches the "5" key from right to left, the "+" key code is selected.  The selected key code is displayed for a predetermined amount of time:



After the predetermined amount of time has passed, the keyboard image is restored to its original state:



The iPad 4 with Retina display and iPad mini have the same functionality, as shown above.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform the same function of causing the screen to display, in the keyboard image, an image of the generated key code for a predetermined time, and then restore the image to its original state, in substantially the same way, to obtain substantially the same result of displaying in the keyboard image, for a predetermined time, the generated key code. Any differences between the Accused Devices and this

| | |
|---|---|
| | limitation, such as precisely where in the keyboard image the generated key code is displayed, or the length of time for which the generated key code is displayed, are insubstantial.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents. Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance. To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 3. The software keyboard system of claim 1, wherein said controller controls said screen to enlarge only said generated key code. | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale all models of the iPhone, the iPod Touch, and the iPad (the "Accused Devices").<br><br>Each Accused Device comprises the software keyboard system of claim 1, wherein said controller controls said screen to enlarge only said generated key code.<br><br>For example, in the iPhone 4S, when a finger traces an upward path starting in the "5" key area of the numeric Japanese (Kana) keyboard, the controller selects the "x" key code, and enlarges an image of only that key code.  *See* claim 1; *see e.g.*,<br><br>Sliding the finger in the up direction results in selecting and inputting the "x" key code, an image of which is enlarged: |



In the iPhone 5, when a finger traces an upward path starting in the "5" key area of the numeric Japanese (Kana) keyboard, the controller selects the "x" key code, and enlarges an image of only that key code. *See* claim 1; *see e.g.*,

Sliding the finger in the up direction results in selecting and inputting the "x" key code, an image of which is enlarged:



In the iPod Touch 5, when a finger traces an upward path starting in the "5" key area of the numeric Japanese (Kana) keyboard, the controller selects the "x" key code, and enlarges an image of only that key code.  *See* claim 1; *see e.g.*,

Sliding the finger in the up direction results in selecting and inputting the "x" key code, an image of which is enlarged:



The iPad 4 with Retina display and iPad mini have the same functionality, as shown above.  For example, when a finger traces an leftward path starting in the previously identified key area of the iPad Japanese (Kana) keyboard, the controller selects the first key code, and enlarges an image of only that key code.



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform the same function of controlling the screen in substantially the same way, to obtain substantially the same result of enlarging only the generated key code. Any differences between the Accused Devices and this limitation are insubstantial. Apple has not provided any adequate

| | |
|---|---|
| | evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 7. A method for recognizing key codes, in a software keyboard system using a touch panel, comprising the steps of:<br><br>(a) displaying an image of a keyboard including keys with a plurality of key codes; | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale all models of the iPhone, the iPod Touch, and the iPad (the "Accused Devices") that each perform each and every step of this claim.<br><br>Apple also indirectly infringes this claim by offering to sell and selling the Accused Devices that perform the claimed method to customers and by encouraging and aiding those customers to use those products in a manner that meets each and every step of this claim.<br><br>Each Accused Device performs a method for recognizing key codes, in a software keyboard system using a touch panel.  *See* claim 1.<br><br>Each Accused Device performs the step of displaying an image of a keyboard including keys with a plurality of key codes.  *See* claim 1[a, d].<br><br>Apple infringes this claim, and the dependent claims identified herein, because it has performed each and every claimed step, including but not limited to testing and use by its employees or agents. Apple also infringes the asserted claims by selling the Accused Devices to customers and encouraging those customers to use the products in a manner that meets each and every step of the claims. |
| 7(b) obtaining the trace of a stylus; | Each Accused Device performs the step of obtaining the trace of a stylus.  *See* claim 1[e]. |
| 7(c) determining a key area in | Each Accused Device performs the step of determining a key area in which the trace of the stylus is drawn.  *See* claim 1[e-f]. |

| | |
|---|---|
| which the trace of the stylus is drawn; | |
| 7(d) obtaining a direction of the trace drawn on the determined key area; | Each Accused Device performs the step of obtaining a direction of the trace drawn on the determined key area. *See* claim 1[e-f]. |
| 7(e) searching key code information in accordance with the key area and the trace direction to generate a selected key code of the plurality of key codes of the key area; and | Each Accused Device performs the step of searching key code information in accordance with the key area and the trace direction to generate a selected key code of the plurality of key codes of the key area. *See* claim 1[e-f]. |
| 7(f) displaying on the image of the keyboard an image of the key code generated by | Each Accused Device performs the step of displaying on the image of the keyboard an image of the key code generated by step (e) to distinguish it from the other available key codes, and then restoring the image to its original state. *See* claim 1[g]. |

| | |
|---|---|
| step (e) to be distinguished from the others of the plurality of key codes, and then restoring the image to its original state. | |

# EXHIBIT G

# SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D) DISCLOSURES FOR U.S. PATENT NO. 6,226,449

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D)) |
|---|---|
| 25. A digital camera comprising: | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale the Accused Devices[1], each of which comprises at least one digital camera. |
| a lens, | Each Accused Device has at least one lens.<br><br>For example, the iPhone 5 has a rear-facing lens and a front-facing lens. *See, e.g.*:<br><br> |
| an imaging device which converts an optical image into an | Each Accused Device has an imaging device that converts an optical image into an analog signal.  Each Accused Device uses a CMOS Image Sensor (or similar device) that converts an optical image into an electronic analog signal.  For example, an iPhone 5's CMOS Image Sensor is depicted below: |

---

[1]   "Accused Devices" refers to all versions, models or generations of the iPhone, iPad, iPad Mini and iPod Touch.  The product and screen images shown herein are representative, and the Accused Devices are not limited to the specific product model, version or generation used in the images.

| analog signal; | <br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include image capturing components that perform substantially the same function of converting an optical image into a signal in substantially the same way, to obtain substantially the same result – a signal representing the optical image.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| --- | --- |
| an A/D converter which converts said analog signal from said imaging device to a digital signal; | Each Accused Device includes an A/D converter which converts said analog signal from said imaging device to a digital signal.  Each Accused Device uses a CMOS Image Sensor (or similar device) to capture image data.  The captured imaged data is converted from an analog signal to a digital signal by an A/D converter, which may be incorporated into the image sensor chip.<br><br>For example, an iPhone 5 CMOS Image Sensor is depicted below: |

<table>
<tr><td></td><td>



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include image capturing components that perform substantially the same function of converting analog data into a digital signal in substantially the same way, to obtain substantially the same result – a digital signal representing an optical image.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

</td></tr>
<tr><td>

a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method

</td><td>

Each Accused Device has a compressor which compresses the digital signal outputted by the A/D converter. Each Accused Device compresses moving image data by a different method than it compresses still image data. For example, the iPhone 5 runs on the A6 processor, which has a video encoder that utilizes at least the H.264 and MPEG-4 standards for compressing moving images and the JPEG standard for compressing still images. Each Accused Device has a similar processor.  The iPhone 5's A6 processor is depicted below:

</td></tr>
</table>

| | |
|---|---|
| for moving image signals and for still image signals; | <br><br>Apple's specifications for the iPhone 5 identify the following supported video formats:[2]<br><br>Video formats supported: H.264 video up to 1080p, 30 frames per second, High Profile level 4.1 with AAC-LC audio up to 160 Kbps, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; MPEG-4 video up to 2.5 Mbps, 640 by 480 pixels, 30 frames per second, Simple Profile with AAC-LC audio up to 160 Kbps per channel, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; Motion JPEG (M-JPEG) up to 35 Mbps, 1280 by 720 pixels, 30 frames per second, audio in ulaw, PCM stereo audio in .avi file format<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include compression hardware and software that perform substantially the same function of compressing digital signals representing optical images using different methods for photos or videos in substantially the same way, to obtain substantially the same result – compressed digital images or videos using respective formats.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the |

[2]   Apple, iPhone 5 "Tech Specs," http://www.apple.com/iphone/specs.html (last visited September 26, 2012).

| | doctrine of equivalents. |
|---|---|
| a recording circuit which records compressed data, said compressed data including a moving image signal, and a still image signal; | Each Accused Device includes a recording circuit which records compressed data  including a moving image signal and a still image signal.  For example, each Accused Device includes a NAND memory module, and an interface circuit thereto, that records both compressed moving image data and compressed still image data for storage.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include hardware and software that perform substantially the same function of  recording data in memory, including compressed photos or videos, in substantially the same way, to obtain substantially the same result – storage of photos and videos in respective compressed formats.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a decompressor which decompresses said compressed data by using a different decompressing method according to whether said recorded compressed data is a moving image signal or a still image signal; | Each Accused Device has a decompressor which decompresses the compressed digital data.  Each Accused Device decompresses compressed moving image data by a different method than it decompresses compressed still image data.  For example, the iPhone 5 runs an A6 processor that has a video decoder that utilizes the H.264 and MPEG-4 standards for decompressing moving images and the JPEG standard for decompressing still images.  Each Accused Device has a similar processor.  For example, an iPhone 5's A6 processor is represented below: |



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include decompression hardware and software that perform substantially the same function of decompressing stored photos or videos using respective decompression methods in substantially the same way, to obtain substantially the same result – decompressed digital images or videos.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

| a reproducing circuit which reproduces a moving image signal, a sound signal in synchronous to said moving image signal, and a still image signal; and | Each Accused Device has a reproducing circuit which can reproduce a moving image signal, a sound signal that is synchronous to a moving image signal, and a still image signal. The Accused Devices include one or more graphical processing units (GPUs), that are specialized circuits designed to render images for output to a display.  For example, the iPhone 5's A6 processor includes a triple-core PowerVR SGX 543MP3 GPU.  Moreover, the Accused Devices include one or more display drivers for converting received imaged data into an image signal capable of being displayed by the display.  Similarly, decoded audio—such as the audio track of a video in MPEG format—is played back through a circuit that includes an audio decoder and a signal path to a speaker or audio output port.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include hardware and software that perform |

| | |
|---|---|
| | substantially the same function of rendering images, video and audio for output to a display and an audio output port or speakers in substantially the same way, to obtain substantially the same result – image, video and/or audio signals suitable for output.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a display which displays said moving image signals and still image signals outputted from said reproducing circuit, and a list of said moving image signal and still image signal as a search mode, and a list of classifications as a classification mode; | Each Accused Device includes a display which displays said moving image signals and still image signals outputted from said reproducing circuit, and a list of said moving image signal and still image signal as a search mode, and a list of classifications as a classification mode.<br><br>The Accused Devices include a display which can display videos and photos outputted from the reproducing circuit.  Each Accused Device displays these image signals, for example, within the "Photos" application that is pre-loaded by Apple on each Accused Device.<br><br>The display lists the videos and photos in a search mode within the "Photos" application that Apple refers to as "Camera Roll": |



The display also lists the classifications (i.e., "Albums")  as a classification mode.  Each Accused Device allows the user to arbitrarily create classifications.  The display displays the list of classifications in the "Albums" screen.  One example of an Albums list screen is shown below:



| | |
|---|---|
| | To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they include a display that displays a Camera Roll and an Albums screen.  The Camera Roll performs substantially the same function of a search mode by allowing the user to browse through photos and videos captured with the camera in substantially the same way, to obtain substantially the same result – a display mode that allows searching for photos or videos captured with the camera.  The Albums screen performs substantially the same function of a classification mode by displaying a list of Albums (classifications) stored in the device in substantially the same way, to obtain substantially the same result – a displayed list of Albums or classifications from which the user can select.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| wherein said recording circuit records each one of said plurality of image signals with classification data, and | Each Accused Device includes a recording circuit, wherein said recording circuit records each one of said plurality of image signals with classification data.  For example, the recording circuit records the identification of the album or albums that contain a particular image signal, for each moving image signal and still image signal that is stored.  Additional album and classification data stored by the recording circuit include location information, date, time, product identification information, camera identification information, resolution, compression method, orientation, and other data pursuant to the Exchangeable Image File Format ("Exif").  <br><br> To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because album identification or Exif data are equivalent to classification data, in that they match the function, way and result of the claimed classification data, and are not substantially different therefrom.  Moreover, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of recording album information and/or Exif data with each photo or video in substantially the same way, to obtain substantially the same result – classification data, such as album name(s) or Exif data, stored with each photo or video.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with |

<table>
<tr><td></td><td>specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.</td></tr>
<tr><td>said display lists a plurality of classifications and a number of images belonging to each classification.</td><td>Each Accused Device's display lists a plurality of classifications and a number of images belonging to each classification.  For example, the Accused Devices display a list of Albums (*i.e.*, the plurality of classifications) and a number of still or video images that are in each Album.

One example of a list of a plurality of classifications (*i.e.*, a list of Albums) is shown below, including the number of images belonging to each Album indicated in parentheses:



To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of displaying a list of Albums and indicating next to each Album name the number of photos or videos contained within the Album in substantially the same way, to obtain substantially the same result – a displayed list of</td></tr>
</table>

| | |
|---|---|
| | classifications (Albums) and the number of images belonging to each classification.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 27. A digital camera according to claim 25,<br><br>wherein said classification is able to change by a direction of a user. | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale the Accused Devices that comprises a digital camera.<br><br>Each Accused Device allows for the classification of a particular image signal to be changed at the direction of the user.<br><br>For example, a user can use the Photos application to add a moving image signal in one classification into another classification.  First, the Accused Device provides a icon labeled "Edit" (shown by the arrow) that a user may touch to select one or more image signals:<br><br><br><br><br><br>After the "Edit" icon is pressed by the user, the display displays this screen: |



A moving image signal is identified and distinguished from still image signals by the movie camera and video duration indications shown at the bottom of the reduced size image.  After the moving image signal is selected by the user, the display displays this screen:



After the "Add To" Button is pressed by the user, the display displays this screen, which allows the user to add the selected image signal to an existing classification or a new classification:



After the "Add to Existing Album" is pressed by the user, the display displays this screen:



After the "iPhone" Album is pressed by the user, the display displays this screen, indicating that the moving image signal has a new classification and is now listed as being within "iPhone" classification:





The user may then delete the moving image signal from its original album.  The Accused Device provides a icon labeled "Edit" on the original album screen that a user may touch to select one or more image signals within that album:





After the "Edit" icon is pressed by the user, the display displays this screen:



After the moving image signal is selected by the user, the display displays this screen:



After the "Remove" Button is pressed by the user, the display displays this screen, which allows the user to remove the selected image signal from the album:



After the "Plants" Album is pressed by the user, the display displays this screen, indicating that the moving image signal has been removed from the original album:





|  | To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of allowing the user to change the classification (album or albums) that a photo or video belongs to in substantially the same way, to obtain substantially the same result – a photo or video's classification is changed at the direction of the user.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |

# EXHIBIT H

## SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D) DISCLOSURES FOR U.S. PATENT NO. 5,579,239

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D)) |
|---|---|
| 1. An apparatus for transmission of data, comprising: | Apple directly infringes this claim through testing and use of the claimed apparatus for transmitting data by and at the direction of its employees.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed apparatus to customers and by encouraging and aiding those customers to use the products in a manner that meets each and every step of this claim.  Apple indirectly infringes through the offer for sale and sale of any single individual component, including the iPhone 5, iPhone 4S, iPhone 4, iPhone 3GS, iPhone 3G, iPod Touch (any generation), iPad Mini, iPad 4, iPad 3, iPad 2, iPad, iMac, Mac Pro, Mac Mini, MacBook Air, and MacBook Pro (collectively the "Accused Devices").  *See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc).  Apple knew about the '239 patent since at least as early as the filing date of this lawsuit.  It induces infringement through many avenues, including: instructing customers to transmit video in the manner of the claims; television commercials and advertisements; training courses and other instruction in Apple stores and on the Apple website; technical support;  and user manuals.  Samsung is currently seeking discovery from Apple on all of these items and intends to use all related documents and deposition testimony in support of these contentions and expert reports to be served in accordance with the schedule in this case.[1] <br><br> To the extent Apple argues that the Accused Devices do not literally satisfy any limitation of this claim, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of |

---

[1]   In its original infringement contentions served on June 15, 2012, Samsung alleged that the iPhone (4 and 4S), iPod Touch (4th generation), iPad (all generations prior to the iPad 4), iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, and PCs with iTunes were collectively the "Accused Devices" that have been used by Apple and its customers to create an apparatus that infringe claims 1-7 of the '239 patent.  On October 1, 2012, Samsung filed a Motion for Leave to Amend its infringement contentions to further accuse the iPhone 5 of infringing its patents.  Those previously accused devices, including the iPhone 5, that run on the newly released iOS 6.0 (the same operating system that ships with the iPod Touch (5th Generation), iPad mini, and iPad 4) operate in substantially the same way as described herein.  Further, to the extent that the previously accused devices vary from the iPod Touch (5th Generation), iPad mini, and iPad 4, Samsung continues to allege infringement under previously disclosed theories of infringement, including all claims previously asserted against Apple's devices.  As used herein, "iPod Touch (3rd generation or later)" and "iPod Touch (4th generation or later)" includes the iPod Touch (5th Generation), and "iPad (all generations)" includes the iPad mini and iPad 4.   Samsung also notes that the same additions made in these contentions apply to the previous contention charts that apply to other products.  The additional contentions added to these charts apply equally to all accused and charted products.

| | |
|---|---|
| | transmitting data in substantially the same way through a transmitter or other transmission means, to obtain substantially the same result of transmitting data.  Samsung's doctrine of equivalents positions are explained in greater detail in each limitation.   Moreover, to the extent there even are any differences, there are insubstantial differences between the Accused Devices and the asserted claims.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.<br><br>Moreover, for all limitations and claims, Samsung intends to rely on expert testimony to prove that Apple infringes both literally and under the doctrine of equivalents, including, without limitation, expert testimony establishing the function, way, and result of the claims and Accused Devices.  Samsung will serve its expert reports, providing those opinions. in accordance with the schedule in this case. |
| a mobile remote unit including: | The iPod Touch (5th generation), iPad 4, and iPad mini, as well as previously charted Mobile Remote Units, are each mobile remote units (collectively "Mobile Remote Units").<br><br>To the extent Apple argues that the Mobile Remote Units do not literally satisfy this limitation, the Mobile Remote Units still infringe under the doctrine of equivalents because they perform substantially the same function of being mobile in substantially the same way as to provide mobile functionality, to obtain substantially the same result, a device that enables a user to bring the functionality to a remote location.   Moreover, to the extent there even are any differences, any differences alleged by Apple between a "mobile remote unit" and the Mobile Remote Units are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine |

| | of equivalents. |
| --- | --- |
| a.) means for capturing, digitizing, and compressing at least one composite signal; | The Mobile Remote Units have a means for capturing, digitizing and compressing a composite signal into a digital file.  On information and belief, the Mobile Remote Units each use a CMOS Image Sensor that converts an optical image into an electronic analog signal, and then uses an A/D converter that converts the analog signal into a digital signal.  The Court has construed the structure for this term as "an audio capture card, and a video card having a video capture module."  The components identified below infringe this claim both literally and under the doctrine of equivalents.  For example, the iPad mini's camera assemblies are depicted below:  |



http://www.ifixit.com/Teardown/iPad+4+Teardown/11462/2http://www.ifixit.com/Teardown/iPad+4+Teardown/11462/2(iPad mini camera assemblies, http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)

The iPad mini's A5 processor with a graphical processing unit (GPU) captures the digital composite signal and uses a video encoder that utilizes at least the H.264 and MPEG-4 standards for compressing the digital signal into a compressed digital file.[2]

---

[2] The previously accused devices have A4, A5 and A6 processors which operate in substantially the same manner as the iPad mini's A5 processor. The iPad 4 has an A6X processor which operates in substantially the same manner as the iPad mini's A5 processor.

For example, the iPad mini's A5 processor is depicted below:



**(A5 Processor http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

According to Apple's website, the iPad mini captures video in 1080p HD format:

**Cameras, Photos, and Video Recording**

**FaceTime HD Camera**
- 1.2MP photos
- 720p HD video
- FaceTime video calling over Wi-Fi or cellular[4]
- Face detection
- Backside illumination
- Tap to control exposure for video or still images
- Photo and video geotagging

**iSight Camera**
- 5MP photos
- Autofocus
- Face detection
- Backside illumination
- Five-element lens
- Hybrid IR filter
- f/2.4 aperture
- Tap to focus video or still images
- Tap to control exposure for video or still images
- Photo and video geotagging

**Video Recording**
- 1080p HD video recording
- Video stabilization
- Face detection
- Tap to focus while recording
- Backside illumination




(**http://www.apple.com/ipad-mini/specs/,** viewed 11/19/2012)

Apple's website further describes that the iPad mini supports numerous video compression standards:

Video formats supported: H.264 video up to 1080p, 30 frames per second, High Profile level 4.1 with AAC-LC audio up to 160 Kbps, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; MPEG-4 video up to 2.5 Mbps, 640 by 480 pixels, 30 frames per second, Simple Profile with AAC-LC audio up to 160 Kbps per channel, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; Motion JPEG (M-JPEG) up to 35 Mbps, 1280 by 720 pixels, 30 frames per second, audio in ulaw, PCM stereo audio in .avi file format

(**http://www.apple.com/ipad-mini/specs/.** viewed 11/19/2012)

The iPad mini's User Guide describes using the iPad's FaceTime Camera and app for capturing, digitizing, and compressing at least one composite signal.



**(iPad User Guide for iOS 6 Software, pg. 7)**



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.

Drag your image to any corner.



Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

Samsung has sought, is seeking, and/or is planning to seek third party discovery of the component manufacturers. That discovery may ultimately impact these contentions or be incorporated into Samsung's expert reports.

| | Moreover, Samsung has sought discovery from Apple that Samsung has not yet received.  Samsung reserves all rights to amend these contentions or theories in its expert report after receiving this discovery.<br><br>To the extent Apple argues that the Mobile Remote Units do not contain the corresponding structure disclosed by the specification and determined by the Court in the Markman Order, the Mobile Remote Units still literally infringe because they contain equivalents thereof.  The Mobile Remote Units perform the identical function of capturing, digitizing, and compressing data in substantially the same way of providing chips within the Mobile Remote Units that perform these limitations, with substantially the same result of generating captured, digitized, and compressed data.  The chips used within the Mobile Remote Units are equivalents to the structure construed by the Court because they perform the same functions as the "cards" as construed by the Court.<br><br>To the extent Apple argues that the Mobile Remote Units do not literally satisfy this limitation, the Mobile Remote Units still infringe under the doctrine of equivalents because they capture, digitize, and compress data in substantially the same way by receiving data and capturing, digitizing, and compressing it, to obtain substantially the same result, of providing a component of the remote device to perform the claimed function.  Moreover, to the extent there even are any differences, the differences between the Mobile Remote Units and the claims is insubstantial because the chips in the Mobile Remote Units operate in the same way as construed by the Court.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|
| b.) means for storing said composite signal; | The Mobile Remote Units have a means for storing the composite signal, such as a NAND flash module or RAM.<br><br>To the extent Apple argues that the Mobile Remote Units do not contain the corresponding structure disclosed by the specification, the Mobile Remote Units still literally infringe because they contain equivalents thereof.  The Mobile Remote Units perform the identical function of storing the composite signal in substantially the same way by providing a memory where data can be stored, with substantially the same result of data being stored in memory.<br><br>To the extent Apple argues that the Mobile Remote Units do not literally satisfy this limitation, the Mobile Remote Units still infringe under the doctrine of equivalents because they store a composite signal in substantially the same |

| | |
|---|---|
| | way by providing a memory where data can be stored, to obtain substantially the same result of data being stored in memory.  Moreover, to the extent there even are any differences, the differences between the Mobile Remote Units and the claims is insubstantial because they both include means for storing said composite signal.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| c.) means for transmitting said composite signal; | The Court construed the structure for this claim term as "one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file."  The components of the Mobile Remote Units infringe this structure both literally and under the doctrine of equivalents.

The Mobile Remote Units include one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file.[3]  For example, Mobile Remote Units have an applications processor, a baseband chip, a Wi-Fi chip, and one or more cellular or radio frequency transmitters and software sequences for transmitting the composite signal, including software sequences contained in, initialized by, implemented by, or otherwise related to software and/or firmware such as Camera, Photos, Messages, Mail, YouTube, Phone, Contacts, FaceTime, Voice Memos, Email, iTunes, iPod and/or other processes.

A user can transmit videos from a Mobile Remote Unit to a host unit using Apple's software components that are pre-loaded on the Mobile Remote Unit as described in more detail below with respect to claim 15.  For example, a user can email or message a video to any third party, or directly send the video for uploading to YouTube, over a |

---

[3]   Some of the previously and currently identified accused devices, i.e. iPod Touch (all versions), only have a wireless chip for transmitting the compressed composite signal across Wi-Fi frequencies.

cellular frequency.

A user can also transmit videos from a Mobile Remote Unit to a host unit over Wi-Fi by using Apple's iTunes software.  As described in the iPad User's Guide, for example, Syncing With iTunes allows a user to transmit a copy of videos stored on the Mobile Remote Unit to a host unit:

## Syncing with iTunes

Syncing with iTunes copies information from your computer to iPad, and vice versa. You can sync by connecting iPad to your computer with the included USB cable, or you can set up iTunes to sync wirelessly using Wi-Fi. You can set iTunes to sync music, photos, videos, podcasts, apps, and more. For information about syncing iPad, open iTunes on your computer, then select iTunes Help from the Help menu.

**Set up wireless iTunes syncing:** Connect iPad to your computer using the included USB cable. In iTunes on your computer, select iPad (under Devices), click Summary, then turn on "Sync over Wi-Fi connection."

When Wi-Fi syncing is turned on, iPad automatically syncs every day. iPad must be connected to a power source, both iPad and your computer must be on the same wireless network, and iTunes must be open on the computer. For more information, see iTunes Wi-Fi Sync on page 114.

**(iPad User Guide For iOS 6 Software, pg. 16)**

Additionally, a user can transmit video from a Mobile Remote Unit to a host unit over either a cellular frequency or a Wi-Fi signal using Apple's FaceTime app, which is preloaded on the Mobile Remote Unit.



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.

Drag your image to any corner.



Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

The components above are one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters.  Moreover, the Mobile Remote Units contain software that initializes one or more

communication ports on the remote unit.  For example, when a call or other cellular or WiFi connection is made, the software initializes a modem, a port on the modem, an antenna, and/or a port on the phone in order to transmit the information.  Also, the Mobile Remote Units obtain the stored data file in order to transmit the data file.  These software sequences may include sequences contained in, initialized by, implemented by, or otherwise related to software and/or firmware such as Camera, Photos, Messages, Mail, YouTube, Phone, Contacts, FaceTime, Voice Memos, Email, iTunes, iPod and/or other processes.

Samsung has sought, is seeking, and/or is planning to seek third party discovery of the component manufacturers.  That discovery may ultimately impact these contentions or be incorporated into Samsung's expert reports.  Moreover, Samsung has sought discovery from Apple that Samsung has not yet received.  Samsung reserves all rights to amend these contentions or theories in its expert report after receiving this discovery.

To the extent Apple argues that the Mobile Remote Units do not contain the corresponding structure disclosed by the specification and determined by the Court in the Markman Order, the Mobile Remote Units still literally infringe because they contain equivalents thereof.  The Mobile Remote Units perform the identical function of transmitting the composite signal in substantially the same way by using transmitters and means as construed by the Court, with substantially the same result, of transmitting the video and audio data.  The components identified above are modems.  To the extent Apple argues that none of the components of the Mobile Remote Units are "modems," the components identified above are equivalent to a "modem."  Moreover, to the extent Apple argues that the Mobile Remote Units do not perform the software limitations that are part of the Court's construction, the methods performed by the Mobile Remote Units are equivalent.

To the extent Apple argues that the Mobile Remote Units do not literally satisfy this limitation, the Mobile Remote Units still infringe under the doctrine of equivalents because they perform the substantially similar function of transmitting a composite signal in substantially the same way by using a modem or substantially equivalent component, and performing the Court's software sequence, to obtain substantially the same result of transmitting the video and audio data.  Moreover, to the extent there even are any differences, the differences between the Mobile Remote Units and the claims is insubstantial because the chips in the Mobile Remote Units operate in the same way as construed by the Court.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element

| | thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|
| a host unit including: | Apple's computers (i.e.,  iMac, MacBook Air, MacBook Pro, Mac Mini and Mac Pro) and non-Apple PCs with iTunes, as well as previously charted Host Units are each host units.<br><br>Additionally, FaceTime allows the iPod touch (5th generation), iPad 4 and iPad mini (and previously accused iPhones, iPads, and iPod touches), as well as previously charted Host Units to act as a host computer.  For example, Apple informs its customers:<br><br>**Now your smile goes even further.**<br><br>FaceTime for Mac makes it possible to talk, smile, and laugh with anyone on an iPad, iPhone, iPod touch, or Mac with a built-in FaceTime camera.ˮ So you can catch up, hang out, joke around, and stay in touch with just a click. Sure, it's great to hear a voice. But it's even better to see the face that goes with it.<br><br>**([http://www.apple.com/mac/facetime/](http://www.apple.com/mac/facetime/), viewed 11/19/2012)** |

# FaceTime
# Be in two
# places at once.

Hang with friends in one city. Visit
family in another. Make that
important meeting. While you're
catching the game at the ballpark.
With a tap, you can make video calls
over Wi-Fi from your iPhone, iPad,
iPod touch, or Mac to someone else's.
You can even make FaceTime calls
over cellular networks on iPhone or
iPad.* And be there in person, even
when you're not.

(http://www.apple.com/ios/facetime/, viewed 11/19/2012)

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of being a host in substantially the same way as to provide host functionality, to obtain substantially the same result, a device that has the capability to act as a host.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "host unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to

16

| | |
|---|---|
| | Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a.) means for receiving at least one composite signal transmitted by the remote unit; | On information and belief, Apple's computers and non-Apple PCs, as well as other Accused Devices, each have a computer interface(s) for receiving a composite signal transmitted by the remote unit either over cellular or Wi-Fi frequencies.<br><br>Apple's software, as described below, works in conjunction with that computer interface(s) to allow a host computer unit to receive information from a Mobile Remote Unit such as an iPad mini.<br><br>**( iPad User Guide For iOS 6 Software, pg. 16)** |



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.



Drag your image to any corner.

Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

Additionally, as described above, the iPod touch (5th generation), iPad 4 and iPad mini also have a computer interface(s) for receiving a composite signal transmitted by the remote unit either over cellular or Wi-Fi frequencies.

First, the iPad 4s and iPad minis with cellular capabilities have a baseband chip for receiving the compressed composite signal across cellular frequencies.  Second, each iPod touch (5th generation), iPad 4 and iPad mini also has a wireless chip for receiving the compressed composite signal across Wi-Fi frequencies.

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of receiving data in substantially the same way of providing chips within the Accused Devices that perform this limitation, with substantially the same result, data being received.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they receive data in substantially the same way of providing chips within the Accused Devices that perform this limitation, to obtain substantially the same result, data being received.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for receiving at least one composite signal transmitted by the remote unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

| a playback unit including: | On information and belief, the iPod touch (5th generation), iPad 4, iPad mini, Apple's computers, and non-Apple PCs, as well as previously charted Accused Devices each have a playback unit for playing the composite signal and displaying it to the user.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of being a playback unit in substantially the same way as to provide playback functionality, to obtain substantially the same result, a device that has playback capabilities.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "playback unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|
| a.) means for exchanging data with said host unit; | On information and belief, the iPod touch (5th generation), iPad 4, iPad mini, Apple's computers, and non-Apple PCs, as well as previously charted Accused Devices, each have a circuit for exchanging the data received by the host computer's interface with the playback unit.  Apple's software, such as Quicktime and FaceTime, works in conjunction with that computer interface(s) and the circuit to allow a host unit to receive data from a Mobile Remote Unit and transmit it to playback unit for playback unit.<br><br>To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of exchanging data in substantially the same way of providing chips within the Accused Devices that perform these limitations, with substantially the same result, having data exchanged.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they exchange data in substantially the same way of providing chips within the Accused Devices that perform these limitations, to obtain substantially the same result, having data |

<table>
<tr>
<td></td>
<td>exchanged.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for exchanging data with said host unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.</td>
</tr>
<tr>
<td>b.) means for storing the composite signal received by the host unit;</td>
<td>The iPod touch (5th generation), iPad 4, iPad mini, Apple's computers and non-Apple PCs, as well as previously charted Accused Devices, each have a hard drive or NAND flash module for storing the composite signal that is received by the host unit's interface from a Mobile Remote Unit and then exchanged with the playback unit. For example, composite signals that are received by the host unit via email, messaging or Syncing with iTunes are transmitted to the playback unit and stored on the computer's hard drive or NAND flash module.  Further, composite signals that are received by the host unit for the FaceTime app are stored in a memory buffer, either the playback unit's hard drive or NAND flash module.

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of storing the composite signal in substantially the same way by providing a memory where data can be stored, with substantially the same result, data being stored in memory.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they store a composite signal in substantially the same way by providing a memory where data can be stored, to obtain substantially the same result, data being stored in memory.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for storing the composite signal received by the host unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it</td>
</tr>
</table>

| | |
|---|---|
| | may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| c.) means for decompressing said composite signal. | On information and belief, the iPod touch (5th generation), iPad 4, iPad mini, Apple's computers and non-Apple PC computers, as well as previously charted Accused Devices, each have a graphical processing unit such as a video card, including a video decoder, for decompressing the compressed composite signal for playback.   Further, on information and belief, Apple's software, including FaceTime, decompresses the composite signal.<br><br>For example, the iPad mini has an A5 processor with a graphical processing unit (GPU) that captures the digital composite signal and uses a video encoder that utilizes at least the H.264 and MPEG-4  standards for compressing the digital signal into a compressed digital file.[4]   The iPad mini's A5 processor is depicted below: |

---

[4]   The previously accused devices have A4, A5 and A6 processors which operate in substantially the same manner as the iPad mini's A5 processor.  The iPad 4 has an A6X processor which operates in substantially the same manner as the iPad mini's A5 processor.



**(A5 Processor http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of decompressing data in substantially the same way of providing chips within the Accused Devices that perform these limitations, with substantially the same result, generating decompressed data.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still

<table>
<tr>
<td></td>
<td>infringe under the doctrine of equivalents because they decompress data in substantially the same way of providing chips within the Accused Devices that perform these limitations, to obtain substantially the same result, generating decompressed data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for decompressing said composite signal" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.</td>
</tr>
<tr>
<td>3. An apparatus according to claim 1 wherein the composite signal is transmitted over telephone lines, cellular, radio or other telemetric frequencies.</td>
<td>Apple directly infringes this claim through testing and use of the claimed apparatus for transmitting data by and at the direction of its employees.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed apparatus that are found in the Accused Devices to customers and by encouraging and aiding those customers to use the products in a manner that meets each and every step of this claim. Apple indirectly infringes through the offer for sale and sale of any single individual component, including the iPhone 5, iPhone 4S, iPhone 4, iPhone 3GS, iPhone 3G, iPod Touch (any generation), iPad Mini, iPad 4, iPad 3, iPad 2, iPad, iMac, Mac Pro, Mac Mini, MacBook Air, and MacBook Pro (collectively the "Accused Devices").  *See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc).  Apple knew about the '239 patent since at least as early as the filing date of this lawsuit.  It induces infringement through many avenues, including: instructing customers to transmit video in the manner of the claims; television commercials and advertisements; training courses and other instruction in Apple stores and on the Apple website; technical support;  and user manuals.  Samsung is currently seeking discovery from Apple on all of these items and intends to use all related documents and deposition testimony in support of these contentions and expert reports to be served in accordance with the schedule in this case.

The Mobile Remote Units can transmit composite signals to a host computer over cellular and/or other radio frequencies, including Wi-Fi frequencies.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit the composite signal in substantially the same way by using transmitters and means as construed by the Court, to obtain substantially the same result, the transmission</td>
</tr>
</table>

<table>
<tr><td></td><td>of audio and video data. Moreover, to the extent there even are any differences, any differences alleged by Apple between an "apparatus according to claim 1 wherein the composite signal is transmitted over telephone lines, cellular, radio or other telemetric frequencies" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents. Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims. For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents. Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance. To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.</td></tr>
<tr><td>7. An apparatus according to claim 3 wherein the means for transmitting the composite signal includes: at least one interface installed in conjunction with said remote unit; a cellular telephone connected to each said interface.</td><td>Apple directly infringes this claim through testing and use of the claimed apparatus for transmitting data by and at the direction of its employees. Apple also indirectly infringes this claim by offering to sell and selling components of the claimed apparatus that are found in the Accused Devices to customers and by encouraging and aiding those customers to use the products in a manner that meets each and every step of this claim. Apple indirectly infringes through the offer for sale and sale of any single individual component, including the iPhone 5, iPhone 4S, iPhone 4, iPhone 3GS, iPhone 3G, iPod Touch (any generation), iPad Mini, iPad 4, iPad 3, iPad 2, iPad, iMac, Mac Pro, Mac Mini, MacBook Air, and MacBook Pro (collectively the "Accused Devices"). *See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc). Apple knew about the '239 patent since at least as early as the filing date of this lawsuit. It induces infringement through many avenues, including: instructing customers to transmit video in the manner of the claims; television commercials and advertisements; training courses and other instruction in Apple stores and on the Apple website; technical support; and user manuals. Samsung is currently seeking discovery from Apple on all of these items and intends to use all related documents and deposition testimony in support of these contentions and expert reports to be served in accordance with the schedule in this case.

On information and belief, the iPad Mini and iPad 4 have at least one interface installed that is connected to a cellular telephone. For example, Apple informs its customers that the baseband processor on some models of the iPad mini allows it to interface with multiple cellular networks.</td></tr>
</table>

| | | |
|---|---|---|
| **Wireless and Cellular** | • 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>• Bluetooth 4.0 wireless technology | • Model A1454*<br>  ○ GSM/EDGE (850, 900, 1800, 1900 MHz)<br>  ○ UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>  ○ LTE (Bands 4 and 17)<br>• Model A1455*<br>  ○ CDMA EV-DO Rev. A and Rev. B (800, 1900, 2100 MHz)<br>  ○ GSM/EDGE (850, 900, 1800, 1900 MHz)<br>  ○ UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>  ○ LTE (Bands 1, 3, 5, 13, 25)<br>• Data only[3]<br>• 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>• Bluetooth 4.0 wireless technology |

(**http://www.apple.com/ipad-mini/specs/**, viewed 11/19/2012)

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification and determined by the Court in the Markman Order, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of transmitting the composite signal in substantially the same way by using transmitters and means as construed by the Court, with substantially the same result, transmitted video and audio data.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit the composite signal in substantially the same way by using transmitters and means as construed by the Court, to obtain substantially the same result, transmitted video and audio data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between an

| | |
|---|---|
| | "apparatus according to claim 3 wherein the means for transmitting the composite signal includes: at least one interface installed in conjunction with said remote unit; a cellular telephone connected to each said interface" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 15. An apparatus for transmission of data, comprising: | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale the iPad 4 and iPad mini, as well as previously charted Accused Devices (collectively the "Accused Devices") that comprises an apparatus for transmission of data.[5]<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy any limitation of this claim, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of transmitting data in substantially the same way through a transmitter or other transmission mechanism, to obtain substantially the same result, transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between an "apparatus for transmission of data" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple |

---

[5]    In its original infringement contentions served on June 15, 2012, Samsung alleged that the iPhone (4 and 4S) and iPad (all Generations) were collectively the "Accused Devices" that have been used by Apple and its customers to create systems that infringe claims 15-17 of the '239 patent.  On October 1, 2012, Samsung filed a Motion for Leave to Amend its infringement contentions to further accuse the iPhone 5 of infringing its patents.  Those previously accused devices, including the iPhone 5, that run on the newly released iOS 6.0 (the same operating system that ships with the iPad mini, and iPad 4) operate in substantially the same way as described herein.  Further, to the extent that the previously accused devices vary from the iPad mini, and iPad 4, Samsung continues to allege infringement under previously disclosed theories of infringement, including all claims previously asserted against Apple's devices.  As used herein, "iPad (all generations)" includes the iPad mini and iPad 4.

| | |
|---|---|
| | to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a computer including a video capture module to capture and compress video in real time; | The Accused Devices comprise a computer that includes a video capture module to capture and compress video in real time.  For example, the iPad mini has a CMOS Image Sensor that converts an optical image into an electronic analog signal, and then uses an A/D converter that converts the analog signal into a digital signal.  For example, the iPad mini's camera assemblies are depicted below: |





**(iPad mini's camera assemblies, http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

The iPad mini has an A5 processor with a graphical processing unit (GPU) for capturing from the iPad mini's camera and uses a video encoder for compressing the digital signal into a compressed digital file in real time according to one of three compression standards:  H.264, MPEG-4 and Motion JPEG (M-JPEG).[6]

---

[6]   The previously accused devices have A4, A5 and A6 processors which operate in substantially the same manner as the iPad mini's A5 processor.  The iPad 4 has an A6X processor which operates in substantially the same manner as the iPad mini's A5 processor.

For example, the iPad mini's A5 processor is depicted below:



**(A5 Processor http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

According to Apple's website, the iPad mini captures video in 1080p HD format:

**Cameras, Photos, and Video Recording**

| FaceTime HD Camera | iSight Camera | Video Recording |
|---|---|---|
| • 1.2MP photos | • 5MP photos | • 1080p HD video recording |
| • 720p HD video | • Autofocus | • Video stabilization |
| • FaceTime video calling over Wi-Fi or cellular⁴ | • Face detection | • Face detection |
| • Face detection | • Backside illumination | • Tap to focus while recording |
| • Backside illumination | • Five-element lens | • Backside illumination |
| • Tap to control exposure for video or still images | • Hybrid IR filter | |
| • Photo and video geotagging | • ƒ/2.4 aperture | |
| | • Tap to focus video or still images | |
| | • Tap to control exposure for video or still images | |
| | • Photo and video geotagging | |




(http://www.apple.com/ipad-mini/specs/, **viewed 11/19/2012**)

Apple's website further describe that the iPad mini supports numerous video compression standards:

Video formats supported: H.264 video up to 1080p, 30 frames per second, High Profile level 4.1 with AAC–LC audio up to 160 Kbps, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; MPEG–4 video up to 2.5 Mbps, 640 by 480 pixels, 30 frames per second, Simple Profile with AAC–LC audio up to 160 Kbps per channel, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; Motion JPEG (M–JPEG) up to 35 Mbps, 1280 by 720 pixels, 30 frames per second, audio in ulaw, PCM stereo audio in .avi file format

(http://www.apple.com/ipad-mini/specs/, **viewed 11/19/2012**)

The iPad mini's User Guide also describes using the iPad mini's FaceTime Camera and app for capturing, digitizing,

and compressing at least one composite signal:



**(iPad User Guide for iOS 6 Software, pg. 7)**



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.



To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they capture and compress data in substantially the same way of providing chips within the Accused Devices that perform these limitations, to obtain substantially the same result,

| | |
|---|---|
| | generating captured and compressed data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "computer including a video capture module to capture and compress video in real time" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| means for transmission of said captured video over a cellular frequency.[7] | The Accused Devices allow for the transmission of a captured video over a cellular frequency in a variety of ways.  The Photos application that is pre-loaded on the Accused Devices provide the user with three ways (email, messages, and sending to YouTube) to share a captured video with another person over a cellular frequency. As explained by Apple: <br><br> **Now playing** <br><br> It's premiere time. You <br> Messages app and sen <br> MMS. Or attach it to an <br> or YouTube. With AirPl <br> your movies to a large <br><br> After a video is captured by an Accused Device, it can be accessed through the Photos application as shown below on this iPad Mini: |

---

[7]   This claim term has not been construed by the Court.  To the extent Apple argues that the term "means for transmission" in claim 15 is the same as "means for transmitting" in claim 1, Samsung's amended contentions set forth with respect to claim 1 apply in a similar manner to this term.



When a user clicks on the icon in the upper right hand corner of the screen, three options for transmitting the video are displayed:



Upon selection of the "Mail" option, the iPad mini displays this screen that depicts the video being processed by the iPad mini for attachment to an email:



Upon selection of the "Message" option, the iPad mini display this screen:



Upon selection of the "YouTube" option, the iPad mini displays this screen:



On information and belief, the Accused Devices have at least one cellular antenna and supporting hardware and software, including a baseband chip, for transmitting the captured video over a cellular frequency. For example, on information and belief, the iPad mini includes a baseband processor that supports multiple cellular communication networks.  The iPad mini's specifications indicate the networks that are available to a user:

| | | |
|---|---|---|
| | **Wireless and Cellular** | • 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>• Bluetooth 4.0 wireless technology | • Model A1454*<br>   ○ GSM/EDGE (850, 900, 1800, 1900 MHz)<br>   ○ UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>   ○ LTE (Bands 4 and 17)<br>• Model A1455*<br>   ○ CDMA EV-DO Rev. A and Rev. B (800, 1900, 2100 MHz)<br>   ○ GSM/EDGE (850, 900, 1800, 1900 MHz)<br>   ○ UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>   ○ LTE (Bands 1, 3, 5, 13, 25)<br>• Data only³<br>• 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>• Bluetooth 4.0 wireless technology |

(**http://www.apple.com/ipad-mini/specs/, viewed 11/19/2012**)

The iPad User Guide shows the status icons that indicate what networks are available for use by the phone at a given time:

| Status icon | | What it means |
|---|---|---|
| ✈ | Airplane mode | Shows that airplane mode is on—you can't access the Internet, or use Bluetooth® devices. Non-wireless features are available. See Airplane mode on page 109. |
| **LTE** | LTE | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over a 4G LTE network. |
| **4G** | 4G | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over a 4G network. |
| **3G** | 3G | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over a 3G network. |
| **E** | EDGE | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over an EDGE network. |
| o | GPRS | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over a GPRS network. |

**(iPad User Guide for iOS 6 Software, pg. 12)**

FaceTime also allows users to make a video call over cellular frequencies:



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.

Drag your image to any corner.



Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused

<table>
<tr>
<td></td>
<td>Devices perform the identical function of transmitting data in substantially the same way by using transmitters or other transmission means, with substantially the same result, transmitted data.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit data in substantially the same way by using transmitters or other transmission means, to obtain substantially the same result, transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for transmission of said captured video over a cellular frequency" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.</td>
</tr>
<tr>
<td>16. The apparatus of claim 15 wherein the means for transmission of said captured video over a cellular frequency includes;</td>
<td>Apple infringes this claim by selling the Accused Devices that each comprises an apparatus for transmission of captured video over a cellular frequency.

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of transmitting data in substantially the same way by using transmitters or other transmission means, with substantially the same result, transmitted data.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit data in substantially the same way by using transmitters or other transmission means, to obtain substantially the same result, transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between an "apparatus of claim 15 wherein the means for transmission of said captured video over a cellular frequency includes;" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted</td>
</tr>
</table>

| | |
|---|---|
| | claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| at least two interfaces operating in conjunction with said computer; | On information and belief, the Accused Devices have at least two interfaces for transmission of captured video over a cellular frequency.  For example, the iPad mini has a baseband processor that supports multiple cellular communication networks.<br><br>**Wireless and Cellular**<br><br>• 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>• Bluetooth 4.0 wireless technology<br><br>• Model A1454*<br>  ○ GSM/EDGE (850, 900, 1800, 1900 MHz)<br>  ○ UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>  ○ LTE (Bands 4 and 17)<br>• Model A1455*<br>  ○ CDMA EV-DO Rev. A and Rev. B (800, 1900, 2100 MHz)<br>  ○ GSM/EDGE (850, 900, 1800, 1900 MHz)<br>  ○ UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>  ○ LTE (Bands 1, 3, 5, 13, 25)<br>• Data only[3]<br>• 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>• Bluetooth 4.0 wireless technology<br><br>(**http://www.apple.com/ipad-mini/specs/,** viewed 11/19/2012)<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit data in substantially the same way of providing |

| | |
|---|---|
| | chips within the Apple Accused Product that perform the claim limitation, to obtain substantially the same result, transmitted data.  Moreover, to the extent there are any differences, any differences alleged by Apple between "at least two interfaces operating in conjunction with said computer" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a cellular telephone connected to each said interface. | The Accused Devices are cell phones that are connected to each interface.  For example, the iPad mini is a world phone that is both a CDMA cellular telephone connected to a CDMA interface and a GSM telephone connected to a GSM interface.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit data in substantially the same way by using transmitters or other transmission means, to obtain substantially the same result transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "cellular telephone connected to each said interface" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |

# EXHIBIT I

**SAMSUNG'S SECOND AMENDED PATENT L.R. 3-1(G) DISCLOSURES**

02198.51981/4809042.4

**Samsung Products Incorporating or Reflecting Asserted Claims**

| U.S. Pat. No. 5,579,239 | | |
|---|---|---|
| *Device Model* | | *Claims* |
| Galaxy Tab | SCH-I800 | 15 |
| Acclaim SCH-R | 880 | 15 |
| Captivate SGH | -I897 | 15 |
| Continuum SCH | -I400 | 15 |
| Droid Charge | SCH-I510 | 15 |
| Epic 4G | SPH-D700 | 15 |
| Exhibit 4G | SGH-T759 | 15 |
| Fascinate SGH-T | 959 | 15 |
| Galaxy Ace | SPH-I325 | 15 |
| Galaxy Note II | SCH-i605 | 15 |
| Galaxy Prevail | SPH-M820 | 15 |
| Galaxy S III | SCH-I535 | 15 |
| Galaxy S 4G | SCH-I500 | 15 |
| Gem SCH | -I100 | 15 |
| Indulge SCH | -R915 | 15 |
| Infuse 4G | SCH-I997 | 15 |
| Intercept SPH- | M910 | 15 |

02198.51981/4809042.4

| | | |
|---|---|---|
| Mesmerize | SCH-I500 | 15 |
| Nexus S | SPH-D720 | 15 |
| Replenish | SPH-M580 | 15 |
| Showcase Galaxy S | SCH-I500 | 15 |
| Sidekick | SGH-T839 | 15 |
| Vibrant SG | H-T959 | 15 |

| Device (Project name) | Model | U.S. Pat. No. 7,551,596 Claims | U.S. Pat. No. 7,756,087 Claims |
|---|---|---|---|
| Galaxy Note II | SCH-i605 (VZW) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Viper | SCH-I110 (VZW) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Aegis | SCH-I405 (VZW) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| P8-VzW | SCH-I815 (VZW) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Stealth-V | SCH-I510 (VZW) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Gaudi | SPH-D710 (SPR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Vino-E | SPH-M820 (BST) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |

02198.51981/4809042.4

| Chief_MTR | SCH-R920 (MTR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
|---|---|---|---|
| Tikal | SCH-R930 (USC) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Gaudi_USCC | SCH-R760U (USC) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Venturi | YP-G70 (Global) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Espresso7 | GT-P3113 (XAR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Espresso10 | GT-P5113 (XAR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Geim | SGH-I827 (ATT) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Vital2_SPR | SPH-M930 (SPR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Vital2_BST | SPH-M930 (BST) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| GIO_ACG SCH-R | 680(ACG) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| GIO_USC | SCH-R680 (USC) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Rookie_ACG | SCH-R720 (ACG) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Rookie_MTR | SCH-R720 (MTR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| P4_GalaxyTab10.1 | SCH-I905U (USC) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Viper1 | SCH-S720C (TFN) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Midas Verizon | SCH-I535 (VZW) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |

02198.51981/4809042.4

| Jasper | SCH-I200 (VZW) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
|---|---|---|---|
| Espresso Tab 7" | SCH-I705 (VZW) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Gogh | SPH-L300 (SPR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Midas Sprint | SPH-L710 (SPR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Aegis-Lte | SCH-I405U (USC) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Gaudi NA CDMA | SCH-R760X (ACG) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Tikal-M | SCH-R940 (MTR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Trebon-Lte | SCH-R820 (MTR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Atlas | SCH-S950C (TFN) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |
| Note10  TAB | GT-N8013 (XAR) | 1,4,6,13,16,18 | 1,2,6,7,8, 9,10,14,15,16, 34,35,39,40 |

| U.S. Pat. No. 7,672,470 | |
|---|---|
| *Model C* | *laims* |
| UN19D4000NDXZA | 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 |
| UN22D5000NDXZA | 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 |
| LN19D450G1DXZA | 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 |
| LN22D450G1DXZA | 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 |

5

| Device (Project name) | Model | U.S. Pat. No. 7,577,757 Claims | U.S. Pat. No. 6,226,449 Claims | U.S. Pat. No. 7,232,058 Claims |
|---|---|---|---|---|
| Galaxy Note II | SCH-i605 | 1, 2, 3, 4, 5, 11, 12, 14, 15 | 25, 27 | 1, 4, 9, 12, 17 |
| Galaxy S III | SCH-I535 | 1, 2, 3, 4, 5, 11, 12, 14, 15 | 25, 27 | 1, 4, 9, 12, 17 |

6