1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

     APPLE INC., A CALIFORNIA        )  C-12-00630 LHK
6    CORPORATION,                    )
                                     )  SAN JOSE, CALIFORNIA
7               PLAINTIFF,           )
                                     )  APRIL 24, 2013
8          VS.                       )
                                     )  PAGES 1-74
9    SAMSUNG ELECTRONICS CO., LTD.,  )
     A KOREAN BUSINESS ENTITY;       )
10   SAMSUNG ELECTRONICS AMERICA,    )
     INC., A NEW YORK CORPORATION;   )
11   SAMSUNG TELECOMMUNICATIONS      )
     AMERICA, LLC, A DELAWARE        )
12   LIMITED LIABILITY COMPANY,      )
                                     )
13              DEFENDANTS.          )
     _____ )
14                                   )
                                     )
15

16          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17         UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2        A P P E A R A N C E S:

 3        FOR APPLE:            GIBSON, DUNN & CRUTCHER
                                BY:   JOSH A. KREVITT
 4                              200 PARK AVENUE
                                NEW YORK, NEW YORK  10166
 5
                                BY:  H. MARK LYON
 6                              1881 PAGE MILL ROAD
                                PALO ALTO, CALIFORNIA  94304
 7
                                BY:  MARK REITER
 8                              2100 MCKINNEY AVENUE
                                DALLAS, TEXAS  75201
 9

10                              WILMER, CUTLER, PICKERING,
                                HALE AND DORR
11                              BY:  WILLIAM F. LEE
                                60 STATE STREET
12                              BOSTON, MASSACHUSETTS  02109

13                              BY:  MARK D. SELWYN
                                950 PAGE MILL ROAD
14                              PALO ALTO, CALIFORNIA  94304

15

16        FOR SAMSUNG:          QUINN, EMANUEL, URQUHART,
                                OLIVER & HEDGES
17                              BY:  WILLIAM C. PRICE
                                865 SOUTH FIGUEROA STREET
18                              10TH FLOOR
                                LOS ANGELES, CALIFORNIA  90017
19
                                BY:  VICTORIA F. MAROULIS
20                                   KEVIN P.B. JOHNSON
                                     TODD M. BRIGGS
21                              555 TWIN DOLPHIN DRIVE
                                SUITE 560
22                              REDWOOD SHORES, CALIFORNIA  94065

23

24

25
```

```
1        SAN JOSE, CALIFORNIA                    APRIL 24, 2013

2                        P R O C E E D I N G S

3        (COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)

4              THE CLERK:  CALLING CASE NUMBER C-12-00630 LHK,

5     APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY LIMITED,

6     ET AL.

7           COUNSEL, STATE YOUR APPEARANCES, PLEASE.

8              MR. KREVITT:  GOOD AFTERNOON, YOUR HONOR.

9     JOSH KREVITT FROM GIBSON DUNN ON BEHALF OF APPLE.

10          WITH ME ARE MY COLLEAGUES MARK LYON AND MARK REITER.

11             MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE AND

12    MARK SELWYN FROM WILMER, HALE.

13             THE COURT:  OKAY.  I'M SORRY.  ONE SECOND.

14          MR. KREVITT IS HERE WITH MR. LYON AND, I'M SORRY, WITH WHO

15    ELSE?

16             MR. KREVITT:  MR. REITER, MARK REITER, ONE OF THE

17    THREE MARKS APPEARING AT APPLE'S TABLE.  DOES HIS NAME NOT

18    APPEAR?

19             THE COURT:  NO, IT DOES.  UNFORTUNATELY, EVERY

20    ATTORNEY IS LISTED WITH THEIR STREET ADDRESS AND THEIR PHONE

21    NUMBER AND THEIR E-MAIL, SO IT'S REALLY LONG.  OKAY.

22          OKAY.  AND THEN WE HAVE -- THIS MUST BE FROM THE ECF LIST

23    AND THAT'S WHY IT'S LISTING EVERYONE'S ADDRESS, EVEN THOUGH

24    MANY OF YOU ARE FROM THE SAME OFFICE.

25          OKAY.  SO WE HAVE MR. LEE HERE.
```

```
 1                 MR. LEE:  AND MR. SELWYN, YOUR HONOR.

 2                 THE COURT:  OKAY.

 3            HELLO, MR. PRICE.

 4                 MR. PRICE:  GOOD AFTERNOON, YOUR HONOR.  BILL PRICE,

 5       KEVIN JOHNSON, VICTORIA MAROULIS, AND TODD BRIGGS FOR SAMSUNG.

 6                 MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.

 7                 THE COURT:  OKAY.  GOOD AFTERNOON.  LET ME JUST FIND

 8       YOU ALL ON MY LIST AS WELL.

 9            OKAY.  SO WE'VE GOT MR. JOHNSON, MR. PRICE, MS. MAROULIS,

10       AND MR. BRIGGS.  OKAY.

11            ALL RIGHT.  GREAT.  THANK YOU.

12            SO NEITHER SIDE IS REQUESTING ANY CHANGES TO THE CASE

13       SCHEDULE; CORRECT?

14                 MR. KREVITT:  THAT'S CORRECT, YOUR HONOR.

15                 THE COURT:  OKAY.  SO THEN WE'RE REALLY JUST HERE FOR

16       THIS NARROWING, AND I WOULD LIKE TO MAKE A PROPOSAL.  I'VE

17       REVIEWED BOTH OF YOUR PROPOSALS, AND I WILL GIVE YOU AN

18       OPPORTUNITY TO BE HEARD ABOUT WHAT YOU'D LIKE TO BE CHANGED

19       EITHER BY WAY OF LIMIT OR DATE.

20            SO I WANT TO THANK YOU FOR ALREADY DOING YOUR FIRST

21       REDUCTION OF 25 CLAIMS AND TO THANK YOU THAT YOU'VE DONE EVEN

22       FEWER ACCUSED PRODUCTS THAN YOU COULD HAVE.

23            I WOULD LIKE TO SET A DATE FOR THE INVALIDITY

24       REFERENCE/SYSTEM/COMBINATION REDUCTION.  WHAT ABOUT MAY 6TH?

25       SO THAT GIVES YOU A LITTLE -- NOT QUITE TWO WEEKS -- AND IF YOU
```

1    NEED MORE TIME, LET ME KNOW -- AND I WOULD LIKE THAT TO BE

2    REDUCED TO 35.

3         AND JUST SO WE'RE ALL ON THE SAME PAGE, IF THERE IS A

4    PARTICULAR DEVICE, ITS MANUAL, ITS INSTALLATION GUIDE, ITS

5    WHATEVER, IT WILL ALL COUNT AS ONE, OKAY?  SO 35 BY MAY 6TH.

6         AND THEN I WOULD LIKE A POST-FACT DISCOVERY, PRE-EXPERT

7    DISCOVERY REDUCTION AS OF JULY 11TH, SO IT'S A FEW DAYS AFTER

8    THE FACT DISCOVERY CUT OFF OF JULY 8TH, BUT IT'S HOPEFULLY --

9    YOU KNOW, IT'S MORE THAN TWO WEEKS -- NO, I'M SORRY -- YEAH,

10   ABOUT A LITTLE MORE THAN TWO WEEKS IN ADVANCE OF YOUR EXPERT

11   REPORTS, SO JULY 11TH, 2013 REDUCING IT TO 18 CLAIMS PER SIDE,

12   18 ACCUSED PRODUCTS PER SIDE.

13        AND THEN FOUR DAYS AFTER THAT, DO THE INVALIDITY REDUCTION

14   TO 25 REFERENCES PER SIDE.  OKAY?

15        AND THEN AFTER EXPERT DISCOVERY AND BEFORE SUMMARY

16   JUDGMENT -- SO EXPERT DISCOVERY CLOSES AUGUST 30TH, SUMMARY

17   JUDGMENTS ARE DUE SEPTEMBER 26TH.

18        SO SEPTEMBER 4, WHICH IS HOPEFULLY IN SUFFICIENT TIME FOR

19   YOU TO DRAFT THE SUMMARY JUDGMENT MOTIONS, TO REDUCE IT TO TEN

20   CLAIMS PER SIDE, 15 ACCUSED PRODUCTS PER SIDE.

21        AND THEN FIVE DAYS AFTER THAT, ON SEPTEMBER 9TH, REDUCE

22   THE NUMBER OF INVALIDITY REFERENCES/SYSTEMS/COMBINATIONS PER

23   SIDE TO 20, AND THEN WE'LL JUST DO SUMMARY JUDGMENT ON

24   HOPEFULLY JUST A SUBSET OF THAT.

25        BUT THEN AFTER SUMMARY JUDGMENT AND BEFORE THE PRETRIAL

1    CONFERENCE -- SO I'M SETTING A DATE OF FEBRUARY 6TH, SO

2    HOPEFULLY YOU WILL HAVE HAD ALL OF OUR SUMMARY JUDGMENT ORDERS

3    AND IT'S STILL MORE THAN ENOUGH TIME TO BE TAKEN INTO ACCOUNT

4    IN YOUR PRETRIAL MEETINGS AND MATERIALS, FIVE CLAIMS PER SIDE,

5    TEN ACCUSED PRODUCTS PER SIDE, AND 15 INVALIDITY

6    REFERENCES/SYSTEMS/COMBINATIONS PER SIDE.

7        SO WE'D BE GOING TO TRIAL ON TEN CLAIMS TOTAL, 20 ACCUSED

8    PRODUCTS TOTAL, AND 30 INVALIDITY REFERENCES TOTAL.

9        DO YOU NEED ME TO REPEAT THAT?

10        MR. REITER:  I THINK WE GOT IT.

11        THE COURT:  IS EVERYONE -- DO YOU HAVE THAT?

12        MS. MAROULIS:  YOUR HONOR, WOULD YOU LIKE TO HEAR

13    FROM THE PARTIES?

14        FIRST OF ALL, I THINK BOTH SIDES WOULD LIKE TO TAKE IT TO

15    OUR CLIENTS IF POSSIBLE BECAUSE WE VETTED BOTH OF OUR PROPOSALS

16    WITH THE CLIENTS.

17        BUT TO THE EXTENT THE COURT WISHES A RESPONSE, WE'RE READY

18    TO RESPOND.

19        THE COURT:  SURE.  DO YOU NEED ME TO REPEAT ANY OF

20    THOSE DATES OR NUMBERS THOUGH?  I JUST WANT TO MAKE SURE

21    EVERYONE HAS THAT.

22        ALL RIGHT.  GO AHEAD.  LET ME HEAR WHAT YOUR VIEWS ARE.  I

23    KNOW IT IS MORE NARROW THAN WHAT YOU REQUESTED.

24        MR. KREVITT:  YOUR HONOR, LET ME BEGIN FOR APPLE, AND

25    THERE MAY BE ISSUES ON WHICH MR. LEE WANTS TO SPEAK AS WELL.

```
 1          WE'LL OBVIOUSLY TAKE A MOMENT TO CONSIDER THE SPECIFIC
 2     DATES, THE SPECIFIC LIMITATIONS YOU MENTIONED.
 3          BUT THERE ARE A FEW FUNDAMENTAL ISSUES AND PROBLEMS THAT WE
 4     HAVE WITH THE APPROACH THAT YOUR HONOR IS SUGGESTING THAT I'D
 5     LIKE AN OPPORTUNITY TO RAISE.
 6          THE COURT:  OKAY.
 7          MR. KREVITT:  THE FIRST IS WE BELIEVE THAT THERE
 8     SHOULD BE A REDUCTION OF PATENTS QUICKLY, NOT JUST A REDUCTION
 9     OF CLAIMS OVER TIME.
10          THE GOAL, AS YOUR HONOR HAS SET IT OUT REPEATEDLY -- AND WE
11     UNDERSTAND IT -- IS TO SIMPLIFY THIS CASE, NOT ONLY ULTIMATELY
12     FOR TRIAL, BUT OF COURSE ALSO FOR EXPERT REPORTS AND AS IT
13     RELATES TO THE COURT'S TIME FOR SUMMARY JUDGMENT AS WELL.
14          SO WE BELIEVE THAT BOTH PARTIES IN THEIR PROPOSALS HAD
15     SUGGESTED THAT WE GET DOWN TO NO MORE THAN FIVE PATENTS BECAUSE
16     BOTH PARTIES -- WE HAD SUGGESTED NO MORE THAN FIVE PATENTS, AND
17     SAMSUNG --
18          THE COURT:  YOU KNOW, I DON'T BELIEVE THAT SAMSUNG
19     AGREES WITH YOU ON THE PATENT ISSUE.
20          MR. KREVITT:  WELL, THEY DID, YOUR HONOR, IMPLICITLY
21     INSOFAR AS THEY HAD PROPOSED NO MORE THAN FIVE CLAIMS.  SO
22     THERE CAN BE NO MORE THAN FIVE PATENTS, OF COURSE, IF THERE ARE
23     NO MORE THAN FIVE CLAIMS.
24          SO IN THAT RESPECT, AT TRIAL -- BOTH PARTIES WERE PROPOSING
25     TO YOUR HONOR THAT WE GO TO TRIAL ON NO MORE THAN FIVE PATENTS.
```

```
 1        WE SUGGESTED, APPLE, THAT THAT REDUCTION IN THE NUMBER OF
 2    PATENTS BE DONE MUCH EARLIER.  IN FACT, WE SUGGEST, YOUR HONOR,
 3    THAT WITHIN TEN DAYS -- WE CAN DO IT MUCH SOONER -- BUT FOR
 4    PURPOSES OF OUR PROPOSAL WE HAD, THAT WITHIN TEN DAYS OF THE
 5    CMC ORDER THAT WOULD RESULT FROM THIS PROCEEDING, THE PARTIES
 6    WOULD REDUCE THE NUMBER OF PATENTS FROM EIGHT TO SIX; AND THEN
 7    BEFORE SUMMARY JUDGMENT, AFTER THE CLOSE OF EXPERT DISCOVERY,
 8    THE PARTIES WOULD REDUCE FURTHER THE NUMBER OF PATENTS FROM SIX
 9    TO FIVE.
10        SO WE'D WIND UP IN THE SAME PLACE, THAT WE WOULD HAVE FIVE
11    PATENTS, NO MORE THAN FIVE PATENTS, BUT WE BELIEVE THAT THERE
12    IS NO REASON TO MOVE FORWARD WITH EXPERT REPORTS --
13            THE COURT:  OH, WELL, WHY DON'T WE -- IF THAT WOULD
14    HELP, I'M PROPOSING A LIMIT OF TEN TESTIFYING EXPERTS PER SIDE
15    AND TEN EXPERT REPORTS PER SIDE.
16            MR. KREVITT:  YOUR HONOR --
17            THE COURT:  UM-HUM.
18            MR. KREVITT:  -- I THINK -- ARE YOU INCLUDING ALL
19    EXPERTS, DAMAGES AND --
20            THE COURT:  YES.
21            MR. KREVITT:  I THINK THAT WOULD BE DIFFICULT TO MAKE
22    THE MATH WORK, BUT LET ME --
23            THE COURT:  OKAY.  WELL, I MEAN, IF WE'RE GOING TO
24    TRIAL ON FIVE CLAIMS PER SIDE, HOW MANY EXPERTS DO YOU REALLY
25    THINK YOU WOULD NEED?  APPLE'S PROPOSED A TOTAL OF 30 AND
```

1     SAMSUNG APPEARS TO BE PROPOSING A TOTAL OF 32.  IS THAT YOUR --

2         MS. MAROULIS:  NO, YOUR HONOR.  SAMSUNG WAS PROPOSING

3     ONE TECHNICAL EXPERT PER PATENT, PLUS ABOUT EIGHT FOR OTHER

4     ISSUES WHICH IS DAMAGES, ANTITRUST, AND SUCH.

5         THE COURT:  RIGHT.  SO IT LOOKS LIKE YOU'RE ASKING

6     FOR 16 PER SIDE, WHICH IS 32.  THAT'S HOW I CALCULATED IT.

7         MR. KREVITT:  BUT, YOUR HONOR, SO MUCH FLOWS -- SO

8     MUCH IS INTERLOCKING, BECAUSE BOTH PARTIES WERE PROPOSING NO

9     MORE THAN FIVE PATENTS AT TRIAL PER SIDE.  SAMSUNG'S PROPOSAL

10    OF AN EXPERT PER PATENT WOULD PRODUCE TEN EXPERTS, FIVE EXPERTS

11    ON ONE SIDE, FIVE EXPERTS ON THE OTHER, AND SAMSUNG PROPOSED

12    EIGHT ON TOP OF THAT FOR A TOTAL OF 18.

13        WE PROPOSED 15 EXPERTS, USE THEM ANY WAY YOU WANT.

14        SO THE PARTIES WERE NOT FAR OFF IN THAT RESPECT.  SAMSUNG

15    WANTED TO TETHER THE EXPERT COUNT TO HOW THE SPECIFIC PATENTS,

16    HOW THE PARTIES USE THEM.

17        APPLE SIMPLY SUGGESTED THAT THE PARTIES --

18        THE COURT:  WELL, I'M NOT THAT FAR OFF.  IF SAMSUNG'S

19    PROPOSAL WAS 26, RIGHT, ONE FOR EACH OF THE TEN PATENTS IN THE

20    CASE TOTAL --

21        MR. KREVITT:  18, YOUR HONOR.

22        THE COURT:  OH, PLUS 8 EIGHT EACH, WHICH WOULD BE 16,

23    YEAH, 16 PLUS TEN IS 26.  I'M AT 20 TOTAL VERSUS 26 TOTAL.

24        MR. KREVITT:  NO.  BUT YOUR HONOR, SAMSUNG'S PROPOSAL

25    WAS -- I'M SORRY -- AGAIN WAS TEN EXPERTS FOR PATENTS, ONE

```
 1      EXPERT PER PATENT WITH FIVE PATENTS PER SIDE, SO THAT'S TEN

 2      PATENTS, ONE EXPERT PER, THAT COMES TO TEN; PLUS EIGHT IS 18

 3      TOTAL.

 4           BOTH PARTIES -- AGAIN, YOUR HONOR, AT THE END OF THE DAY

 5      WHEN WE DO OUR OPENING STATEMENTS, BOTH PARTIES WERE AT FIVE

 6      PATENTS PER SIDE.

 7           SO SAMSUNG'S PROPOSAL WAS ONE EXPERT PER PATENT, FIVE

 8      PATENTS PER SIDE FOR A TOTAL OF TEN.

 9                THE COURT:  RIGHT.

10                MR. KREVITT:  SO THAT'S TEN EXPERTS, PLUS EIGHT.

11      THAT'S HOW THEY GOT TO 18.

12                THE COURT:  AND THE EIGHT IS TOTAL?

13                MR. KREVITT:  NO, NO.

14                THE COURT:  EIGHT IS EACH?

15                MR. KREVITT:  EIGHT ON TOP OF THE TEN EACH, SO EACH

16      SIDE WOULD HAVE 18.  THE OTHER EIGHT COULD BE USED FOR DAMAGES,

17      FOR FRAND, FOR WHATEVER OTHER REASONS THE PARTIES MAY WANT TO

18      USE THEM.

19           APPLE'S SUGGESTION, WHICH IN TOTAL NUMBERS IS NOT FAR OFF,

20      WE WERE AT 15, AND APPLE'S PROPOSAL WAS THE PARTIES ARE FREE TO

21      USE THEIR EXPERTS ANY WAY THEY WANT.

22                MS. MAROULIS:  YOUR HONOR, THAT'S CORRECT AS FAR AS

23      MATH GOES.

24           AND ANOTHER ELEMENT OF OUR PROPOSAL FOR BOTH PARTIES WAS

25      THAT WE WANTED TO BE LIMITED FOR EXPERTS AT TRIAL, BUT NOT FOR
```

1    THE REPORTS, BECAUSE THE PARTIES WOULD LIKE AN OPPORTUNITY TO

2    SUBMIT MORE EXPERT REPORTS BECAUSE SOME ISSUES MIGHT FALL BY

3    THE WAYSIDE OR CERTAIN EXPERTS MAY DO BETTER OR WORSE IN

4    DEPOSITIONS.  SO THE LIMITATION AT TRIAL WE WOULD REQUEST

5    RESPECTFULLY NOT BE APPLIED TO A LIMITATION ON ACTUAL REPORTS

6    AND DEPOSITIONS.

7         THE COURT:  WELL, WE COULD MAKE THIS REDUCTION OF TEN

8    TESTIFYING EXPERTS EACH AFTER THE CLOSE OF EXPERT DISCOVERY SO

9    YOU HAD A CHANCE TO EVALUATE YOUR EXPERT'S PERFORMANCE.  OR

10   THIS COULD BE JUST THE LIMIT FOR TRIAL.

11        MR. KREVITT:  YOUR HONOR, IF I MAY?  THE PARTIES ARE

12   OBVIOUSLY GOING TO HAVE TO CONFER ON SOME OF THIS.  IF THIS

13   EXPERTS ISSUE IS ONE THAT PERHAPS THE PARTIES CAN CONFER ON --

14        THE COURT:  NO.  I MEAN, YOU HAD YOUR CHANCE.  I

15   MEAN, WE HAD THIS DISCUSSION --

16        MR. KREVITT:  WELL, THE --

17        THE COURT:  -- BEFORE THE CLAIM CONSTRUCTION HEARING

18   BACK IN FEBRUARY.  I --

19        MR. KREVITT:  THE REASON I SAY THAT --

20        THE COURT:  I ISSUED AN ORDER THAT SAID WE ARE GOING

21   TO LIMIT EXPERTS.  I AM NOT GOING TO HAVE THE SAME OCCURRENCES

22   THAT HAPPENED IN THE FIRST CASE HAPPEN IN THIS CASE.

23        MR. KREVITT:  I UNDERSTAND, YOUR HONOR.  I WAS SIMPLY

24   SUGGESTING THAT SOME OF THAT MAY FALL OUT FROM THE OTHER

25   ISSUES.

```
 1              THE COURT:  ALL RIGHT.  DO IT RIGHT NOW.  DO IT RIGHT
 2    NOW.  WE'RE GOING TO TAKE A SHORT BREAK AND I WANT YOU TO COME
 3    UP WITH -- NOW IS THE TIME TO DO IT.  I ISSUED AN ORDER BACK ON
 4    FEBRUARY -- WHEN WAS THAT ORDER? -- SAYING PLEASE COME UP WITH
 5    A PROPOSAL, AND NOW IS THE TIME.  NOW IS THE TIME.
 6         THIS IS WHY WE'RE ALL HERE, SO NOW IS THE TIME TO FIGURE
 7    OUT WHAT YOUR PROPOSAL IS THAT YOU FEEL IS CLOSER TO WHAT YOU'D
 8    LIKE AND THEN LET'S TALK ABOUT IT.
 9              MR. KREVITT:  THAT'S FINE, YOUR HONOR.
10              THE COURT:  OKAY.
11              MR. KREVITT:  IF I MAY JUST NOTE ONE OTHER ISSUE,
12    WHICH WE CAN ADDRESS NOW OR AFTER --
13              THE COURT:  OKAY.
14              MR. KREVITT:  -- A BREAK IT SOUNDS LIKE WE'RE GOING
15    TO TAKE.
16              THE COURT:  WHAT'S THAT?
17              MR. KREVITT:  THE FIRST ISSUE I RAISED, OF COURSE, IS
18    THAT WE BELIEVE THERE SHOULD BE A REDUCTION OF PATENTS SOON.
19    THAT SHOULD BE ORDERED AND THE PARTIES SHOULD BE REQUIRED TO DO
20    IT.
21              THE COURT:  OKAY.  WHAT ELSE?
22              MR. KREVITT:  WE WOULD SUGGEST TWO VIRTUALLY
23    IMMEDIATELY, AND ANOTHER AT THE CLOSE OF EXPERT DISCOVERY SO
24    THAT WHEN WE ENTER INTO SUMMARY JUDGMENT, WE'RE AT NO MORE THAN
25    FIVE PATENTS PER SIDE.
```

```
1        THE OTHER ISSUE, WHICH IS VERY SIGNIFICANT, YOUR HONOR, IS

2   WITH RESPECT TO THE REDUCTION OF PRODUCTS.

3        THE ISSUE HERE, YOUR HONOR, IS THERE IS VIRTUALLY NO

4   DIFFERENCE IN PROOF AMONG THE DIFFERENT PRODUCTS THAT APPLE HAS

5   ACCUSED IN THIS CASE.  WE HAVE SERVED CLAIM CHARTS ON ALL OF

6   THE PRODUCTS.

7        SAMSUNG HAS NOT IDENTIFIED ANY DIFFERENCES IN PROOF AMONG

8   THOSE PRODUCTS.  IN THEIR CMC STATEMENT, THERE'S NOTHING MORE

9   THAN A CONCLUSORY STATEMENT THAT THERE WILL BE DIFFERENCES, NOT

10  EVEN A CONCLUSORY STATEMENT THAT THERE WILL BE DIFFERENCES WITH

11  RESPECT TO THE INFRINGEMENT READS, AND THE REASON FOR THAT,

12  YOUR HONOR, IS THERE WILL BE NO DIFFERENCES.

13       REDUCING PRODUCTS WILL NOT SIMPLIFY THE ISSUES FOR TRIAL AT

14  ALL BECAUSE THE PROOF IS THE SAME.

15       AND WE CAN'T ELIMINATE PRODUCTS.  WE'RE ENTITLED TO A

16  REMEDY ON ALL OF THE INFRINGING PRODUCTS.

17           THE COURT:  ANY REDUCTION IS A DISMISSAL WITHOUT

18  PREJUDICE, SO YOU CAN SEEK ANOTHER TRIAL.  YOU CAN SEEK OTHER

19  RELIEF.

20           MR. KREVITT:  I UNDERSTAND THAT, YOUR HONOR.

21           THE COURT:  I'M NOT DISMISSING ANYTHING WITH

22  PREJUDICE.

23           MR. KREVITT:  I UNDERSTAND THAT, YOUR HONOR, AND I

24  HAD ASSUMED THAT.

25       BUT THIS IS THE POINT THAT I'M MAKING.
```

1          THE COURT:  UM-HUM.

2          MR. KREVITT:  GIVEN THE FACT THAT THE PROOFS ARE

3    VIRTUALLY IDENTICAL ONE PRODUCT TO THE NEXT, IN MOST CASES

4    IDENTICAL, THERE'S VERY FEW OPERATING SYSTEMS THAT ARE ON THESE

5    DEVICES, IN SOME INSTANCES, VIRTUALLY IDENTICAL.

6          I'LL JUST GIVE YOUR HONOR ONE EXAMPLE.  WE HAVE THE '721

7    PATENT, WHICH IS THE SLIDE TO UNLOCK PATENT THAT YOUR HONOR

8    ADDRESSED AT THE PRELIMINARY INJUNCTION HEARING.

9          THE -- ONE DEVICE USES A CIRCLE THAT'S MOVED ACROSS THE

10   SCREEN.  ANOTHER DEVICE USES A PUZZLE PIECE.

11         OTHERWISE THE INFRINGEMENT IS IDENTICAL.  WHETHER YOU USE A

12   CIRCLE OR A PUZZLE PIECE HAS NO RELEVANCE WHATSOEVER TO THE

13   PROOF AT TRIAL.  IT HAS NO RELEVANCE AT ALL TO THE INFRINGEMENT

14   CLAIM.  IT HAS NOTHING TO DO WITH THE CLAIMS, WITH THE CLAIM

15   ELEMENTS.

16         AND SO ARBITRARILY REDUCING THE NUMBER OF PRODUCTS WHEN

17   THERE'S NO SIMPLIFICATION --

18          THE COURT:  THERE IS.  I JUST WENT THROUGH POST-TRIAL

19   MOTIONS, JUST WENT THROUGH IN EXCRUCIATING DETAIL OVER THE

20   VERDICT FORM.  THE NUMBER OF PRODUCTS DOES INCREASE THE BURDEN

21   ON THE COURT AND ON THE PARTIES AND ON THE JURY.

22          MR. KREVITT:  BUT, YOUR HONOR, IT DOES WHEN, A, THE

23   PROOF IS DIFFERENT; AND B, THERE ARE DIFFERENT TYPES OF PROOF.

24         SO IN THE 1846 CASE, THERE WERE DIFFERENT TYPES OF

25   INTELLECTUAL PROPERTY THAT WERE AT ISSUE THAT PRODUCED

1    DIFFERENT DAMAGES THEORIES, DIFFERENT PROOFS, DIFFERENT ISSUES

2    FOR YOUR HONOR TO ADDRESS.  THERE WERE DESIGN PATENTS, THERE

3    WERE TRADE DRESS CLAIMS, THERE WERE UTILITY PATENTS.

4        IN THIS CASE IT IS ALL UTILITY PATENTS.

5        GIVEN THAT THE PROOFS ARE IDENTICAL AMONG THE DIFFERENT

6    PRODUCTS YOUR HONOR, AND THIS IS VERY IMPORTANT, THE ONLY

7    BENEFIT, SUCH AS THERE IS, TO REDUCING PRODUCTS IS SAMSUNG WILL

8    BE ABLE TO EVADE A REMEDY ON THOSE PRODUCTS.

9        WE WILL ONE DAY HAVE TO HAVE ANOTHER TRIAL ON THE EXACT

10   SAME PATENTS WITH THE EXACT SAME PROOF WHEN WE'RE ALL HERE AND

11   THE PROOFS AT TRIAL WILL BE IDENTICAL.

12       THE ONLY STATEMENT THAT SAMSUNG HAS MADE ON THIS SUBJECT,

13   YOUR HONOR, IS IN THE CMC STATEMENT, AS I SAID, A CONCLUSORY

14   STATEMENT, NOTWITHSTANDING HAVING HUNDREDS OF PAGES OF

15   INFRINGEMENT CONTENTIONS BY APPLE, THAT THE PROOFS ARE

16   DIFFERENT.

17       WHAT WE WOULD SUGGEST TO YOUR HONOR, IF YOUR HONOR IS AT

18   ALL INCLINED, AND IT'S CLEAR THAT YOUR HONOR IS INCLINED --

19            THE COURT:  YES, I AM.

20            MR. KREVITT:  -- TO CONSIDER REDUCING THE NUMBER OF

21   PRODUCTS, WE WOULD RESPECTFULLY SUGGEST THAT THE TIME TO DO

22   THAT IS AFTER EXPERT REPORTS.

23       LET THE PARTIES COME FORWARD AT THAT TIME, SAMSUNG CAN

24   ARGUE "THE PROOFS ARE VERY DIFFERENT.  IN ORDER TO SIMPLIFY FOR

25   TRIAL, WE NEED TO REDUCE THE NUMBER OF PRODUCTS," AND APPLE

1    WILL HAVE AN OPPORTUNITY TO COME FORWARD, YOUR HONOR, AND SAY

2    "THE PROOFS ARE THE SAME.  WE DON'T NEED TO SIMPLIFY."

3         THE ONLY THING ELIMINATING PRODUCTS WILL DO IN THIS CASE IS

4    ALLOW SAMSUNG TO AVOID DAMAGES AND AN INJUNCTION.

5         AND THIS IS THE POINT, YOUR HONOR, THAT WE HAVE BEEN MAKING

6    SINCE WE FILED OUR PRELIMINARY INJUNCTION CASE IN -- MOTION IN

7    THIS CASE, AND AS YOUR HONOR FOUND, EVERY DAY THESE INFRINGING

8    PRODUCTS ARE OUT THERE, THEY TAKE SALES FROM APPLE.

9         IF WE CARVE OUT MOST OF THE PRODUCTS WHICH GET LAUNCHED

10   REPEATEDLY, AS YOU KNOW, WITH GREAT FREQUENTLY BY SAMSUNG,

11   WHICH IS VERY DIFFERENT THAN APPLE, IF WE CARVE OUT THOSE

12   PRODUCTS AND FORCE APPLE TO DEAL WITH THOSE ANOTHER DAY, EVEN

13   THOUGH THE PROOFS ARE THE SAME, APPLE MAY NEVER GET TO THOSE.

14        AND BY THE TIME IT GETS TO THOSE PRODUCTS -- WHICH, AGAIN,

15   THE PROOF IS THE SAME -- THERE WILL BE ALL THESE NEW PRODUCTS

16   THAT HAVE LAUNCHED.  APPLE WILL NEVER BE ABLE TO CATCH UP.

17        THIS IS, WITH ALL DUE RESPECT, THE WHACK-A-MOLE GAME THAT

18   APPLE BELIEVES SAMSUNG IS PLAYING, THE CATCH ME IF YOU CAN.  WE

19   NEVER GET TO THE REMEDY.

20        THE PROOFS ARE THE SAME ON THESE PRODUCTS, YOUR HONOR.

21   WE'RE PERFECTLY COMFORTABLE REDUCING THE NUMBER OF CLAIMS.

22   WE'RE COMFORTABLE AND ARE SUGGESTING REDUCING THE NUMBER OF

23   PATENTS.  WE UNDERSTAND AND ARE COMFORTABLE REDUCING THE PRIOR

24   ART REFERENCES.

25        WHAT WE ARE SAYING IS WITH RESPECT TO PRODUCTS FOR WHICH

1    THE PROOF IS THE SAME, DO NOT DENY APPLE A REMEDY.  DO NOT DENY

2    APPLE THE OPPORTUNITY SIMPLY TO GET DAMAGES AND AN INJUNCTION

3    WHEN IT ADDS NO COMPLEXITY AS A TECHNICAL MATTER.

4         AND IF YOUR HONOR HAS ANY QUESTION ABOUT THAT, BECAUSE ALL

5    YOU HAVE IS A CONCLUSORY STATEMENT, THEN LET'S ADDRESS THAT

6    WHEN THE EXPERT REPORTS ARE IN THE CAN AND I CAN COME TO YOU

7    AND STAND AT THIS PODIUM AND SAY, "SEE, FOR PRODUCT X, THE

8    PROOF IS IDENTICAL AS PRODUCT Y.  SEE, FOR PRODUCT A, THERE'S

9    ONLY THIS SLIGHT UTTERLY IRRELEVANT DIFFERENCE."

10        ARBITRARILY REDUCING PRODUCTS NOW FOR WHICH THE PROOF IS

11   THE SAME ONLY DENIES APPLE A REMEDY, ONLY REWARDS SAMSUNG FOR

12   THE BUSINESS MODEL OF CHURNING OUT INFRINGING PRODUCT AFTER

13   INFRINGING PRODUCT AND LETS IT STAY ALWAYS ONE STEP AHEAD OF A

14   REMEDY FOR APPLE.

15        IT'S UNFAIR AND IT'S UNNECESSARY IN ORDER TO SIMPLIFY THE

16   CASE, BECAUSE REDUCING THE PRODUCTS FOR WHICH THE PROOF IS THE

17   SAME WILL HAVE NO SIMPLIFICATION.

18             THE COURT:  OKAY.  THANK YOU.

19        LET ME HEAR FROM SAMSUNG.

20             MS. MAROULIS:  YOUR HONOR, SAMSUNG AGREES WITH THE

21   COURT THAT THE PRODUCTS SHOULD BE NARROWED AND REDUCED.  THE

22   COURT IS CORRECT THAT THE CASE WILL BE GREATLY SIMPLIFIED IF

23   YOU REDUCE THE NUMBER OF PRODUCTS.

24        FIRST OF ALL, THE TECHNICAL PROOF IS GOING TO BE DIFFERENT

25   PRODUCT BY PRODUCT.  BUT THAT'S NOT THE ONLY DIFFERENCE.

1  THERE WILL BE DIFFERENT DAMAGES ANALYSES AS TO VARIOUS

2  PRODUCTS, DIFFERENT LAUNCH DATES, DIFFERENT RATES, DIFFERENT

3  VARIOUS FINANCIAL INFORMATION.

4  IT IS SIMPLY NOT CORRECT TO SAY THAT THERE'S NO DIFFERENCE

5  BETWEEN A CASE WITH TEN ACCUSED PRODUCTS AND A CASE WITH 25

6  ACCUSED PRODUCTS.

7  SO THE COURT -- SAMSUNG AGREES WITH THE COURT AS TO THE

8  NARROWING OF ACCUSED PRODUCTS.

9  AND ALSO AS TO NARROWING OF PRODUCTS -- OF THE CASE

10  CLAIM-BY-CLAIM AS OPPOSED TO PATENT-BY-PATENT.  THAT GIVES THE

11  PARTIES SOME FLEXIBILITIES WHETHER THEY WANT TO SERVE FIVE

12  CLAIMS FROM FIVE DIFFERENT PATENTS OR FIVE CLAIMS FROM ONE OR

13  TWO PATENTS.  REGARDLESS OF THAT, THE CASE WILL BE MUCH SMALLER

14  AND SIMPLER.

15  SO THE MODEL THE COURT PRESENTED PRETTY MUCH TRACKS THE

16  PARTIES' NARROWING PROPOSAL, BUT IT'S SMALLER.

17  SO IF WE, DURING THE BREAK, CAN DISCUSS THE SPECIFIC

18  NUMBERS THE COURT PROPOSED, THAT WOULD BE GREAT.

19  THE INVALIDITY LIMITS THAT THE COURT SUGGESTED SEEM TOO

20  RESTRICTIVE FROM THE BEGINNING.  I BELIEVE THE COURT ASKED US

21  TO REDUCE BY MAY 6TH TO ONLY 35 REFERENCES AND WE RESPECTFULLY

22  REQUEST THAT THAT NUMBER BE LARGER AND THE DATE BE MOVED,

23  BECAUSE IF WE ONLY CAN ASSERT --

24  THE COURT:  WHEN?  TO WHEN?

25  MS. MAROULIS:  PROBABLY PAST THE CLOSE OF DISCOVERY.

1     IF YOUR HONOR WANTS US TO CONFER DURING THE BREAK, WE CAN

2   GIVE A MORE CONCRETE DATE.

3     BUT 35 REFERENCES FOR WHAT CAN BE ANYWHERE BETWEEN FIVE AND

4   EIGHT PATENTS IS SIMPLY NOT ENOUGH BECAUSE SOME OF THE PATENTS

5   AT ISSUE HAVE VERY DIFFERENT CLAIMS.

6     FOR EXAMPLE, AS OF NOW, APPLE IS ASSERTING FIVE DIFFERENT

7   CLAIMS FROM THE '502 PATENT AND THESE CLAIMS ARE ALMOST

8   VIRTUALLY FROM DIFFERENT FAMILIES IF YOU LOOK AT THE PATENT

9   ITSELF.

10    SO IN OUR PROPOSAL, WE PROPOSED NARROWING CLAIM-BY-CLAIM

11  FOR INVALIDITY REFERENCES.

12       THE COURT:  YES, THAT'S TOO MANY.  THAT WAS TOO MANY.

13       MS. MAROULIS:  WE CAN PROPOSE A DIFFERENT NUMBER, BUT

14  I WANTED TO FLAG THAT.

15       THE COURT:  PROPOSE A DIFFERENT NUMBER.  I'M MORE

16  THAN HAPPY TO RECONSIDER THE 35.

17    BUT I WILL REQUIRE SOME REDUCTION BEFORE THE CLOSE OF FACT

18  DISCOVERY.  IF YOU WANT A DIFFERENT DATE THAN MAY 6TH, THAT'S

19  FINE.  PROPOSE SOMETHING.

20    BUT DO I THINK THAT OVERALL THE CASE SHOULD KEEP NARROWING

21  CONSISTENTLY ON ALL FRONTS, NOT JUST THE ACCUSED PRODUCTS AND

22  CLAIMS.  IT NEEDS TO INCLUDE THE INVALIDITY AS WELL.

23       MS. MAROULIS:  CERTAINLY, YOUR HONOR.  WE'LL WORK ON

24  REDUCING INVALIDITY AS WELL.

25    BUT THE CLAIMS AND THE PRODUCTS IN THE SEQUENCE SUGGESTED

1    BY THE COURT, WE'LL ADJUST THE DATES AND MAYBE PROPOSE SOME

2    DIFFERENT LIMITS, BUT GENERALLY THE SEQUENCE WORKS.  BUT WE

3    WANTED TO MENTION THE INVALIDITY ISSUE UP FRONT.

4        AND CERTAINLY WE STRONGLY DISAGREE WITH APPLE THAT LIMITING

5    APPLE TO ACCUSED PRODUCTS IS SOMEHOW VIOLATING DUE PROCESS WHEN

6    NARROWING CLAIMS OR NARROWING OTHER ASPECTS OF THE CASE IS NOT.

7            THE COURT:  OKAY.  SO WHY DON'T WE TAKE A BREAK FOR

8    YOU ALL --

9            MR. KREVITT:  YOUR HONOR --

10           THE COURT:  OH, GO AHEAD.

11           MR. KREVITT:  I WAS SIMPLY GOING TO NOTE ONE THING TO

12   THE EXTENT YOUR HONOR IS CONSIDERING THE PRODUCTS ISSUE DURING

13   THE BREAK.

14           THE COURT:  WHAT'S THAT?

15           MR. KREVITT:  I WOULD NOTE THAT WHAT MS. MAROULIS

16   SAID IS VERY MUCH CONSISTENT WITH THE POINT THAT I WAS MAKING

17   TO YOUR HONOR INSOFAR AS THE ONLY SENTENCE THAT MS. MAROULIS

18   UTTERED WITH RESPECT TO DIFFERENCES AMONG THE PROOFS WAS,

19   QUOTE, "TECHNICAL PROOF WILL BE DIFFERENT."

20       THERE IS -- THEY HAVE HAD OUR INFRINGEMENT CONTENTIONS.

21   THEY'VE TAKEN DEPOSITIONS.  THEY KNOW WHAT OUR CLAIMS ARE.

22       TECHNICAL PROOF WILL NOT BE DIFFERENT, YOUR HONOR.  THE

23   PROOF WITH RESPECT TO THE PRODUCTS WILL BE THE SAME.

24       TO THE EXTENT THAT IT ISN'T, WHEN YOUR HONOR -- WHEN THE

25   EXPERT REPORTS HAVE BEEN SUBMITTED, WE CAN ADDRESS IT AT THAT

1       TIME.

2           THE ONLY THING MS. MAROULIS ADDRESSED WAS DAMAGES, AND

3       THAT'S MY POINT, YOUR HONOR.  THEY WANT TO LIMIT PRODUCTS, NOT

4       BECAUSE IT WILL SIMPLIFY TRIAL, BUT BECAUSE THEY WANT TO HAVE

5       THE PRODUCTS OUT IN THE MARKETPLACE.

6           AS YOUR HONOR FOUND IN THE DETAILED 101-PAGE OPINION,

7       EVERY --

8               THE COURT:  WHICH GOT REVERSED.

9               MR. KREVITT:  IT DID NOT GET REVERSED ON THIS POINT,

10      YOUR HONOR, THAT THE PARTIES ARE HEAD-TO-HEAD COMPETITORS, THAT

11      SAMSUNG IS TARGETING FIRST TIME BUYERS, THAT THE FIRST TIME

12      BUYERS, ONCE THEY GET LOCKED IN, MAY NEVER SWITCH OPERATING

13      SYSTEMS.  IT DIDN'T GET REVERSED ON ANY OF THOSE POINTS, YOUR

14      HONOR.

15          THE ONLY POINT IT GOT REVERSED ON IN THIS CONTEXT WAS THE

16      EXTENT TO WHICH THE '604 PATENT CAUSED THAT HARM.

17          WE, IN THIS CASE, INTEND AND BELIEVE WE'LL BE SUCCESSFUL IN

18      CONVINCING YOU, WITH THE FULL RECORD, THAT WE ARE ENTITLED TO

19      AN INJUNCTION.

20              THE COURT:  WELL, THE CLAIM CONSTRUCTION GOT REVERSED

21      AS WELL ON THAT.

22              MR. KREVITT:  ON THE '604, PATENT, YES, YOUR HONOR,

23      IT DID.

24          BUT MY POINT IS THAT THE FINDING THAT YOUR HONOR MADE WITH

25      RESPECT TO THE FOUR PATENTS THAT WERE AT ISSUE IN THE

1    PRELIMINARY INJUNCTION, THAT THEY'RE HEAD-TO-HEAD COMPETITORS,

2    SAMSUNG TARGETING FIRST TIME BUYERS, THE STICKINESS, THE

3    DOWNSTREAM EFFECTS, ALL OF THOSE FINDINGS THAT YOUR HONOR FOUND

4    IN THIS PRELIMINARY INJUNCTION RULING, SAME AS YOUR HONOR FOUND

5    IN THE PRIOR PRELIMINARY INJUNCTION RULING, NONE OF THOSE WERE

6    DISTURBED ON APPEAL.

7         THEY ARE CORRECT, YOUR HONOR, AND THEY REQUIRE, WITH

8    RESPECT, THAT APPLE HAVE AN OPPORTUNITY TO SEEK A REMEDY.

9         GIVEN THAT THE PROOFS ARE THE SAME, THERE IS NO

10   SIMPLIFICATION IN LIMITING PRODUCTS.  THE ONLY THING THAT WILL

11   RESULT -- IT SHOULD BE VERY OBVIOUS TO THE COURT WHAT'S GOING

12   ON HERE -- THE ONLY THING THAT WILL RESULT IS APPLE WILL BE

13   DENIED A REMEDY ON THE PRODUCTS.

14        THE COURT:  WHAT'S HAPPENING -- I KNOW THE EN BANC

15   REHEARING WAS DENIED.

16        MR. KREVITT:  YES, YOUR HONOR.

17        THE COURT:  IS THAT COMPLETELY DONE OR WHAT'S THE

18   STATUS OF YOUR APPEAL?  DID YOUR REHEARING BY ANOTHER PANEL GET

19   DENIED AS WELL?  I KNOW THE EN BANC --

20        MS. MAROULIS:  THAT APPEAL IS AT AN END AS FAR AS I

21   KNOW.

22        MR. KREVITT:  I BELIEVE THAT APPEAL IS AT AN END IN

23   THE FEDERAL CIRCUIT.

24        THE COURT:  IT'S DONE?

25        MR. KREVITT:  YES, YOUR HONOR, I BELIEVE SO.

```
 1              MR. LEE:  THAT'S RIGHT.

 2              MR. KREVITT:  YES, YOUR HONOR.  I'M JUST CONFIRMING.

 3         BUT AGAIN, I DON'T WANT TO BE REPETITIVE ON THIS POINT, BUT

 4    IT IS VERY IMPORTANT FOR YOUR HONOR TO THINK ABOUT IT FOR THESE

 5    PURPOSES, AND ULTIMATELY, WHEN WE PRESENT THE PRELIMINARY --

 6    THE PERMANENT INJUNCTION MOTION TO YOUR HONOR THAT THE FEDERAL

 7    CIRCUIT DID NOT DISTURB ANY OF THOSE FACTUAL FINDINGS THAT YOUR

 8    HONOR MADE.

 9         THEY WERE CORRECT THEN.  THEY'RE CORRECT NOW.  THE PARTIES

10    ARE HEAD-TO-HEAD COMPETITORS, MORE SO TODAY THAN THEN, YOUR

11    HONOR, AND THE SALES THAT APPLE -- THAT SAMSUNG MAKES OF THE

12    PRODUCTS ACCUSED OF INFRINGEMENT IN THIS CASE CAUSE APPLE HARM.

13         AT A MINIMUM, YOUR HONOR, WE'RE GOING TO BE ENTITLED TO

14    DAMAGES, OF COURSE.

15         AND SO THE ONLY -- THE ONLY PURPOSE THAT IS SERVED IN

16    ELIMINATING PRODUCTS FOR WHICH THE PROOF IS THE SAME IS DENYING

17    APPLE A REMEDY.

18         I DON'T BLAME SAMSUNG FOR WANTING THAT RESULT.  IF I WERE

19    IN SAMSUNG'S SHOES, I'D BE ENCOURAGING YOUR HONOR TO REDUCE THE

20    NUMBER OF PRODUCTS, TOO.

21         IT IS FUNDAMENTAL LY UNFAIR FOR THE REASONS THAT I'VE

22    IDENTIFIED.  IT WOULD RESULT IN NO SIMPLIFICATION OF THE ISSUES

23    FOR THE REASONS I IDENTIFIED.

24         AND UNDER THOSE CIRCUMSTANCES, YOUR HONOR, TO THE EXTENT

25    THE COURT IS CONSIDERING -- WOULD CONSIDER IT AT ALL, IT NEEDS
```

1        TO BE WITH A RECORD UNDERSTANDING WHAT THE PROOF WILL BE AND

2        THE EXTENT TO WHICH THERE ARE ANY DIFFERENCES.

3            AND WE BELIEVE AT THAT TIME YOUR HONOR WILL SEE THAT THERE

4        AREN'T -- THAT THERE ARE NO SAVINGS WITH RESPECT TO THE PROOF.

5            THE ONLY SAVINGS, AGAIN, WILL BE THE DAMAGES.

6            THE COURT:  YOU'VE ALREADY BEEN INCONSISTENT BECAUSE

7        ON THE ONE HAND YOU'RE SAYING "MS. MAROULIS KNOWS THE TECHNICAL

8        PROOF IS ALL THE SAME," AND NOW YOU'RE SAYING, "NO, NO, NO.  WE

9        NEED A RECORD TO PROVE THAT THE TECHNICAL PROOF IS THE SAME."

10            MR. KREVITT:  NO, YOUR HONOR.  IF I COULD JUST --

11            THE COURT:  SO YOU'RE SAYING "SHE ALREADY KNOWS ALL

12        OF OUR CLAIMS, SHE KNOWS ALL OF OUR POSITIONS."

13            MR. KREVITT:  YOUR HONOR, IF I COULD CLEAR THAT UP?

14            THE COURT:  YES.

15            MR. KREVITT:  MY POINT WAS THE TECHNICAL PROOF IS THE

16        SAME.  MS. MAROULIS KNOWS IT.

17        TO THE EXTENT YOUR HONOR, THOUGH, WERE CONSIDERING LIMITING

18        THE PRODUCTS, YOUR HONOR SHOULD BE CONVINCED THAT THE PROOF

19        WOULD NOT BE THE SAME.  SAMSUNG SHOULD COME FORWARD AND EXPLAIN

20        TO YOU WHY THE PROOF ON THOSE PRODUCTS WILL NOT BE THE SAME.

21        AT SOME POINT WE WILL HAVE EXPERT REPORTS, YOUR HONOR.  WE

22        WILL IDENTIFY EXACTLY HOW WE'RE GOING TO PROVE INFRINGEMENT AT

23        TRIAL IN THOSE EXPERT REPORTS.

24        SAMSUNG WILL HAVE AN OPPORTUNITY AT THAT TIME TO COME AND

25        CONVINCE YOUR HONOR THAT THE PROOF WILL BE DIFFERENT.

1    IF SAMSUNG WANTS TO COME TO YOUR HONOR AND PROVE THAT THE

2    PROOF WOULD BE DIFFERENT BASED ON OUR INFRINGEMENT CONTENTIONS,

3    THEY CAN TRY TO DO THAT AS WELL.

4    THERE IS NO INCONSISTENCY THERE.  THE PROOFS WILL BE

5    IDENTICAL OR VIRTUALLY IDENTICAL, YOUR HONOR.  THERE WILL BE NO

6    SAVINGS FROM A TECHNICAL PERSPECTIVE.

7    THE ONLY THING THAT WILL RESULT IS APPLE WILL BE DENIED A

8    REMEDY.  WE'LL BE DENIED AN INJUNCTION AS TO THOSE PRODUCTS AND

9    DAMAGES AS TO THOSE PRODUCTS.

10   AND THEN WHEN WE DO BRING THAT OTHER LAWSUIT THAT YOUR

11   HONOR MENTIONED ON THOSE PRODUCTS TO TRY TO CAPTURE THOSE

12   PRODUCTS, WHAT WILL HAVE HAPPENED BY THEN, YOUR HONOR?

13   ALL THESE OTHER SAMSUNG PRODUCTS WILL BE FLOODING THE

14   MARKET.  WE WILL CONSTANTLY, CONSTANTLY BE TRYING TO PLAY CATCH

15   UP.

16   AS IT IS, YOUR HONOR, WE'RE GOING TO HAVE TO GO TO TRIAL AT

17   SOME POINT IN THIS CASE WITH PRODUCTS HAVING BEEN CUT OFF AT

18   SOME POINT, SO WE'RE NOT GOING TO BE ABLE TO CAPTURE EVERY

19   SINGLE PRODUCT THAT EXISTS AT THE TIME OF TRIAL.

20   BUT WE CERTAINLY SHOULD BE ABLE TO CAPTURE THE PRODUCTS FOR

21   WHICH WE HAVE SERVED INFRINGEMENT CONTENTIONS, TAKEN AND

22   PRODUCED DISCOVERY, AND PROVIDED THE INFORMATION UPON WHICH

23   SAMSUNG KNOWS THAT THE PROOFS WILL BE THE SAME.

24   THERE IS NO REASON TO DENY APPLE A REMEDY WITH RESPECT TO

25   THOSE PRODUCTS.  THERE'S NO SIMPLIFICATION AND IT WOULD BE

1    FUNDAMENTALLY UNFAIR AND REWARD SAMSUNG FOR ITS BUSINESS MODEL

2    OF CHURNING OUT ONE INFRINGING PRODUCT AFTER ANOTHER.

3              MS. MAROULIS:  YOUR HONOR, TO GET AWAY FROM THE

4    RHETORIC AND FOCUS ON THE NARROWING PROCESS, THE REDUCTION OF

5    PRODUCTS WOULD APPLY TO BOTH PARTIES, SO SAMSUNG WILL ALSO NEED

6    TO BRING A SEPARATE SUIT ON OTHER PRODUCTS.

7         AND ALSO, MR. KREVITT'S TEAM MADE A NUMBER OF ARGUMENTS TO

8    JUDGE GREWAL ABOUT HOW THEY NEED ALL SOURCE CODE VERSIONS OF

9    ALL DIFFERENT PRODUCTS, SO EVEN THEY DON'T THINK THE PROOF IS

10   THE SAME.  THEY WANT EVERYTHING BECAUSE THEY WANT TO BE ABLE TO

11   PROVE IN THEIR OWN MIND WHAT PRODUCTS INFRINGE.

12        SO I DON'T THINK HE CAN STAND HERE AND SAY THAT THE PROOF

13   IS IDENTICAL.

14             MR. KREVITT:  YOUR HONOR --

15             THE COURT:  WELL, LET ME -- OKAY, ONE LAST THING.

16             MR. KREVITT:  TWO VERY QUICK POINTS, YOUR HONOR.

17             THE COURT:  OKAY.

18             MR. KREVITT:  MS. MAROULIS SAID THAT IT'S BILATERAL,

19   IT WOULD APPLY TO BOTH PARTIES.

20        AS YOUR HONOR IS WELL AWARE, THE MARKETING -- THE BUSINESS

21   MODELS FOR THESE COMPANIES ARE VERY DIFFERENT.

22        REDUCTION OF PRODUCTS WOULD BE ASYMMETRICAL.  APPLE

23   LAUNCHES VERY FEW PRODUCTS RELATIVE TO THE NUMBER OF PRODUCTS

24   THAT SAMSUNG DOES.  I KNOW YOUR HONOR IS AWARE OF THAT.  WE

25   LAUNCH AN IPHONE ROUGHLY ONCE A YEAR, FOR EXAMPLE, AS OPPOSED

1        TO SAMSUNG, WHICH LAUNCHES NEW DEVICES MONTHLY.

2            SO THE ASYMMETRY RENDERS THE NOTION THAT BOTH PARTIES WOULD

3        HAVE TO DO IT IRRELEVANT, AND LIMITING APPLE TO THE SAME NUMBER

4        IN THAT RESPECT IS UNFAIR.

5            THE OTHER THING TO KEEP IN MIND, YOUR HONOR, IS SAMSUNG

6        IS -- THIS LAWSUIT IS A RESPONSE TO APPLE'S LAWSUIT.  THAT'S

7        WHY SAMSUNG CAME TO YOUR HONOR AND SAID "STAY IT ALL.  WE DON'T

8        EVEN WANT ANY OF THIS TO GO FORWARD."

9            SO OF COURSE THEY'RE WILLING TO LIMIT THE NUMBER OF

10       PRODUCTS.  THEY'RE WILLING TO LIMIT THE NUMBER OF PRODUCTS, MY

11       GUESS, TO ONE.  THEY'D BE WILLING TO LIMIT THE PRODUCTS OF BOTH

12       PARTIES ABIDED BY TO ZERO.  THEY DON'T WANT THIS LAWSUIT.

13           WE DO WANT THIS LAWSUIT BECAUSE SAMSUNG HAS CONTINUED TO

14       LAUNCH PRODUCTS THAT INFRINGE.

15           WE BROUGHT THE LAWSUIT -- YOUR HONOR, WE BROUGHT A

16       PRELIMINARY INJUNCTION THE SAME DAY WE FILED THE COMPLAINT FOR

17       THAT REASON, YOUR HONOR.

18           WE ARE NOT ASKING TO MOVE THE TRIAL DATE.  WE WANT TO GO TO

19       TRIAL.  WE UNDERSTAND WE NEED TO REDUCE THE ISSUES FOR TRIAL.

20           BUT THERE IS NO REASON TO REDUCE OUR REMEDY AT TRIAL, NOT

21       TODAY, NOT PICKING SOME ARBITRARY NUMBER, NOT WHEN THE PROOF IS

22       THE SAME, YOUR HONOR, NOT WHEN IT WOULD BENEFIT SAMSUNG SO MUCH

23       AND REWARD IT FOR ITS BUSINESS MODEL OF LAUNCHING THESE

24       INFRINGING PRODUCTS WITH NO SIMPLIFICATION.

25           THERE'S NO REASON TO LIMIT THE PRODUCTS, YOUR HONOR, AND IT

 1    WOULD BE UNFAIR TO DO SO.

 2        IT WOULD RESULT IN A PROLIFERATION OF ACTIONS.  NOW WE NEED

 3    TO BRING A LAWSUIT TO CAPTURE THE PRODUCTS WE WEREN'T ABLE TO

 4    PURSUE IN THIS CASE.

 5        AND BY THE TIME WE HAVE THAT LAWSUIT, THEY'VE GOT ALL THESE

 6    OTHER PRODUCTS, AND FOREVER.

 7        AND ALL THE WHILE, YOUR HONOR -- AND YOUR HONOR'S OPINION

 8    IS DEAD ON ON THIS -- ALL THE WHILE SAMSUNG CAPTURES MARKET

 9    SHARE, SAMSUNG LAUNCHES NEW PRODUCTS, SAMSUNG TARGETS FIRST

10    TIME BUYERS.

11        WE CAN'T STOP IT ALL, YOUR HONOR, BUT WE SHOULD BE ENTITLED

12    TO PURSUE THE PRODUCTS WE HAVE ACCUSED IN THIS CASE, ESPECIALLY

13    GIVEN THAT THERE WOULD BE NO SIMPLIFICATION, NO REDUCTION OF

14    PROOF ON ONE PRODUCT VERSUS THE OTHER.

15        THESE ARE THE SAME -- THERE'S ONLY A FEW OPERATING SYSTEMS,

16    AS YOUR HONOR IS AWARE.

17        SO THE PROOFS ARE GOING TO BE THE SAME OR VIRTUALLY THE

18    SAME.

19            THE COURT:  ALL RIGHT.  THANK YOU.

20            MR. KREVITT:  THANK YOU, YOUR HONOR.

21            THE COURT:  LET ME ASK IF YOU WOULD PLEASE -- WE CAN

22    TAKE A SHORT RECESS, AND IF THERE ARE ANY COMMENTS OR PROPOSED

23    CHANGES YOU WOULD LIKE TO MAKE, EITHER TO THE LIMITS OR TO THE

24    TIMING, IF YOU WOULD LET ME KNOW AFTER THE RECESS?

25            AND I AM OPEN TO YOUR PROPOSAL AS TO THE TIMING ON LIMITING

1    EXPERT REPORTS AND TESTIFYING EXPERTS.

2        BUT WE JUST CANNOT HAVE A REPEAT OF -- IT MULTIPLIES

3    DISCOVERY MOTIONS, IT MULTIPLIES MOTIONS IN LIMINE, IT

4    MULTIPLIES DAUBERT MOTIONS AND IT CAN BECOME UNWIELDY.

5        SO THIS HAS TO BE NARROW AND IT'S GOING TO HAVE TO BE

6    NARROWED BEFORE EXPERT DISCOVERY AND AFTER.

7        SO I WOULD APPRECIATE A PROPOSAL.

8        YOUR REQUESTS OF 30 AND 36 TESTIFYING EXPERTS IS NOT GOING

9    TO BE APPROVED.  I'M GOING TO REJECT THAT OUT OF HAND.

10       SO IF YOU COULD PLEASE COME UP WITH A MORE NARROW REQUEST?

11   AND IF YOU WANT TO PHASE IT PRE-EXPERT DISCOVERY, POST-EXPERT

12   DISCOVERY, THAT'S FINE.

13           MR. KREVITT:  YOUR HONOR, THE PARTIES -- I KNOW

14   THERE'S BEEN TREMENDOUS CONFUSION ON THIS -- BUT ARE ACTUALLY

15   AT 15 AND 18 TOTAL FOR THE CASE, NOT 30 AND 36.

16           MS. MAROULIS:  I THINK THE COURT SAID TOTAL 32.

17           MR. KREVITT:  WE'VE OBVIOUSLY NOT DONE A GOOD JOB OF

18   EXPLAINING THAT IN OUR PAPERS OR TODAY.

19           THE COURT:  I'M SORRY IF I HAVE THAT WRONG.

20           MS. MAROULIS:  YOUR HONOR, IT'S EITHER 15 PER SIDE OR

21   18 PER SIDE.

22           THE COURT:  NO.  I'M SORRY.  APPLE PROPOSES THAT THE

23   PARTIES BE LIMITED TO NO MORE THAN 15 TESTIFYING EXPERTS EACH.

24           MR. KREVITT:  RIGHT.

25           THE COURT:  SO 15 PLUS 15 IS 30.

1          MR. KREVITT:  YES, YOUR HONOR.  I'M SORRY.  I

2    MISSED -- I THOUGHT YOU SAID PER SIDE.

3          THE COURT:  NO.  I'M ADDING 15 PLUS 15 TO GET 30.

4          MR. KREVITT:  YES, UNDERSTOOD.

5          THE COURT:  AND I'M UNDERSTANDING SAMSUNG WANTS TEN

6    EACH IN TERMS OF TECHNICAL EXPERTS, AND EIGHT EACH FOR

7    NON-TECHNICAL EXPERTS.

8          MR. KREVITT:  CORRECT, YOUR HONOR.

9          MS. MAROULIS:  YOUR HONOR, IT'S ONE FOR EACH PATENT,

10   SO IF EACH SIDE HAS FIVE PATENTS, IT'S FIVE PER SIDE FOR

11   TECHNICAL; AND THEN EIGHT NON-TECHNICAL EXPERTS PER SIDE, SO

12   TOTAL OF 36.

13         MR. KREVITT:  YEAH.

14         THE COURT:  WELL, THAT'S -- I THOUGHT THAT'S WHAT I

15   SAID, 36.

16         MS. MAROULIS:  WE UNDERSTAND, YOUR HONOR, THAT WE

17   NEED A SMALLER NUMBER HERE.

18         THE COURT:  YES.  I'M NOT GOING TO APPROVE THIS

19   BECAUSE IT DOES MULTIPLY THE DISCOVERY MOTIONS EXPONENTIALLY

20   AND MAKES EVERYTHING, ALL THE EVIDENTIARY OBJECTIONS MUCH MORE

21   DIFFICULT AT TRIAL TO REMEMBER WHICH ONE WAS WHICH DISCOVERY

22   MOTION.  SO WE JUST CANNOT HAVE THIS THIS TIME.

23       SO I'D LIKE TO GET YOUR INPUT.  OTHERWISE I WILL JUST

24   SELECT AND IT MAY NOT BE THE BEST FOR THE CASE.

25       SO -- OKAY.  WHY DON'T WE TAKE A RECESS?

```
 1          I JUST DON'T KNOW WHAT'S HAPPENING WITH OUR BENEDICT CASE.

 2               THE CLERK:  I COULD CALL THE METAL DETECTOR AND SEE

 3     IF THEY'RE DOWN IN THE LOUNGE.

 4               THE COURT:  IF THEY'RE READY, THEN I'M WONDERING IF

 5     WE COULD JUST SWAP AND THIS CASE CAN GO DOWN THERE.

 6               THE CLERK:  I CAN HAVE SOMEBODY DOWN THERE CHECK.

 7               THE COURT:  YEAH, COULD YOU HAVE THE CSO CHECK?

 8               MR. KREVITT:  WOULD YOU LIKE US TO CHECK IN WITH YOU

 9     WITHIN A CERTAIN TIME?  WOULD YOU LIKE US TO GIVE YOU A NUMBER

10     WHERE WE CAN BE CALLED?

11               THE COURT:  SURE.  ARE YOU GOING TO GO TO THE

12     ATTORNEY'S LOUNGE?  I DON'T THINK YOU'LL FIT IN MY JURY ROOM IS

13     THE ONLY PROBLEM.  HOW MANY FOLKS DO YOU HAVE?

14               MS. MAROULIS:  MAY WE STAY IN THE COURTROOM?

15               MR. JOHNSON:  CAN WE SAY HERE?

16               THE COURT:  WELL, IT DEPENDS ON -- I HAVE THAT OTHER

17     CASE MEETING AND CONFERRING ABOUT A PROTECTIVE ORDER, SO I WAS

18     HOPING THAT PERHAPS WHILE YOU'RE CONFERRING, I CAN BRING THEM

19     BACK AND WE CAN JUST FLIP.

20               MR. JOHNSON:  WE CAN GO DOWNSTAIRS.

21               MR. KREVITT:  YEAH, WE'LL GO TO THE ATTORNEY LOUNGE,

22     YOUR HONOR.

23               THE COURT:  OKAY.  THANK YOU.

24          (PAUSE IN PROCEEDINGS.)

25               MR. KREVITT:  IT'S OUR UNDERSTANDING THAT OUR CASE
```

```
 1      ALWAYS TAKES PRECEDENCE, YOUR HONOR.  WE'LL BOOT THEM.

 2              THE COURT:  THAT WAS NOT FUNNY.

 3              MR. PRICE:  WE DISAGREE.

 4          (PAUSE IN PROCEEDINGS.)

 5          (RECESS FROM 2:53 P.M. TO 3:50 P.M.)

 6              THE COURT:  SO WHAT DID YOU DECIDE?

 7              THE REPORTER:  JUDGE, DO YOU WANT THIS TO BE ON THE

 8      RECORD?

 9              THE COURT:  WELL, I THINK SHOULD BE ON THE RECORD.  I

10      THINK HAVING A MORE INFORMAL DISCUSSION --

11              MS. MAROULIS:  WE ACTUALLY CAME UP WITH A LARGELY --

12              THE COURT:  OH, EVEN BETTER.

13          I THINK WE SHOULD BE ON THE RECORD.  I WOULD PUT A BURP ON

14      THE RECORD IN THIS CASE.

15              MR. KREVITT:  IT MAY BE BETTER TO HEAR WHAT YOU CAME

16      UP WITH.

17              THE COURT:  NO, NO.  WHAT DID YOU ALL DECIDE?

18              MR. KREVITT:  WE CAME UP WITH THE FOLLOWING, AND

19      CORRECT ME IF YOU NEED TO.

20              MS. MAROULIS:  I SHALL.

21              THE COURT:  MR. PRICE, COME AROUND.

22              MR. KREVITT:  SO I'M GOING TO DO THIS GOING THROUGH

23      DATES.

24              THE COURT:  OKAY.

25              MR. KREVITT:  ON JUNE 28TH, THERE WOULD BE A
```

```
1    REDUCTION TO 18 ASSERTED CLAIMS.

2         THE COURT:  OH, SO YOU'RE DOING SOMETHING TOTALLY

3    DIFFERENT.  OKAY.  THEN LET ME GET A NEW SHEET OF PAPER.

4         MS. MAROULIS:  WE HAVE REDONE THE SCHEDULE, SO

5    THERE'S GOING TO BE ONE, TWO, THREE, FOUR, FIVE NARROWING

6    EVENTS.

7         THE COURT:  WOW.  OKAY.  SO JUNE 18 --

8         MR. KREVITT:  JUNE 28TH.

9         THE COURT:  I'M SORRY.  JUNE 28TH.  OKAY, WHAT'S

10   HAPPENING ON JUNE 28TH?

11        MR. KREVITT:  WE WOULD REDUCE, BOTH PARTIES OF

12   COURSE, WOULD REDUCE THE NUMBER OF CLAIMS FROM 25 TO 18.

13        THE COURT:  OKAY.

14        MS. MAROULIS:  AND SAMSUNG REQUESTS THAT BOTH PARTIES

15   BE ASKED TO REDUCE PRODUCTS.  THAT'S THE DISAGREEMENT BETWEEN

16   US.  SO EACH DEADLINE WE WILL BE GIVING YOU THE NUMBER OF

17   PRODUCTS THAT WE THINK SHOULD BE REDUCED BY APPLE.

18        MR. LEE:  WHY DON'T WE DO THIS:  WE'LL GO THROUGH

19   WHERE WE AGREE --

20        THE COURT:  AND THEN WE CAN ADD IN.

21        MR. KREVITT:  WE LARGELY AGREE.  THE PRODUCT ISSUE,

22   AS YOUR HONOR KNOWS, IS AN ISSUE, AND THERE'S SOME FURTHER

23   THOUGHTS --

24        THE COURT:  OKAY.  ALL RIGHT.

25        MR. KREVITT:  SAMSUNG HAS THOUGHTS ON THAT, OF
```

```
1        COURSE.

2              THE COURT:  OKAY.

3              MR. KREVITT:  BUT FOR THE MOMENT, WE'LL GO THROUGH

4    THE ISSUES ON WHICH WE AGREE.

5         SO JUNE 28TH, WE REDUCE THE NUMBER OF CLAIMS TO 18.

6         JULY 5, THE PARTIES REDUCE THE PRIOR ART REFERENCES TO 50

7    TOTAL.

8              THE COURT:  OKAY.

9              MR. KREVITT:  SEPTEMBER 2, THE PARTIES REDUCE THE

10   ASSERTED CLAIMS TO 12.

11             THE COURT:  OKAY.

12             MR. KREVITT:  JULY 9, A WEEK LATER --

13             MR. LEE:  SEPTEMBER 9.

14             MR. KREVITT:  EXCUSE ME, SEPTEMBER 9 -- AND THAT WAS

15   SEPTEMBER 2.

16             THE COURT:  YES.

17             MR. KREVITT:  SEPTEMBER 9, THE PARTIES REDUCE THE

18   REFERENCES TO 35, PRIOR ART REFERENCES TO 35.

19             THE COURT:  OKAY.

20             MR. KREVITT:  ON FEBRUARY 6TH, THE PARTIES FURTHER

21   REDUCE THE ASSERTED CLAIMS.  THIS IS ONE AREA THAT THERE'S A

22   DIFFERENCE, SO I'LL JUST GIVE YOU BOTH.

23             THE COURT:  OKAY.

24             MR. KREVITT:  SAMSUNG WOULD REDUCE THE ASSERTED

25   CLAIMS TO FIVE.
```

```
1                THE COURT:  OKAY.

2                MR. KREVITT:  AND APPLE, WHICH HAD PROPOSED IN THE

3    CMC STATEMENT TO HAVE 12 CLAIMS, HAS REDUCED ITS ASK TO EIGHT.

4                MR. REITER:  WITH FIVE PATENTS ONLY, NO MORE THAN

5    FIVE PATENTS.

6                MR. KREVITT:  RIGHT.

7                THE COURT:  NOW, FOR SAMSUNG, DO YOU -- I MEAN, YOU

8    DON'T CARE WHETHER IT'S LIMITED TO FIVE PATENTS OR NOT BECAUSE

9    IT'S LIMITED TO FIVE CLAIMS?

10               MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR, THE

11   MAXIMUM OF FIVE CLAIMS.

12               MR. JOHNSON:  THE OTHER AREA WHERE THERE WAS

13   AGREEMENT ON FEBRUARY 6TH, THOUGH, IS THE NUMBER OF REFERENCES

14   WOULD BE LIMITED TO 25.

15               MR. KREVITT:  YEAH, THAT'S FINE.

16           AND THEN --

17               THE COURT:  THERE'S AGREEMENT ON THAT?

18               MR. KREVITT:  YES.

19               MS. MAROULIS:  YES.

20               MR. JOHNSON:  AND THEN THERE'S AGREEMENT ON THE

21   EXPERTS.

22               THE COURT:  OKAY.

23               MR. KREVITT:  AND THE FINAL THING, YOUR HONOR, ON

24   WHICH THERE'S AGREEMENT, WHICH COVERS A GREAT DEAL OF THE

25   ISSUES, IS ON THE EXPERTS.
```

```
 1              THE COURT:  OKAY.

 2              MR. KREVITT:  WE'VE OBVIOUSLY HEARD YOUR HONOR'S

 3    GUIDANCE AND HAVE A PROPOSAL, WHICH IS THAT EACH SIDE BE

 4    ENTITLED TO 14 EXPERTS.  I KNOW THAT'S MORE THAN YOUR HONOR HAD

 5    SUGGESTED.

 6              THE COURT:  OKAY.

 7              MR. KREVITT:  BUT THE PARTIES, IN ORDER TO ALLEVIATE

 8    SOME OF THE CONCERNS YOUR HONOR ARTICULATED, ARE SUGGESTING

 9    THAT THEY BE LIMITED TO FIVE DAUBERT MOTIONS TOTAL.

10         SO ALTHOUGH THERE WOULD BE 14 EXPERTS POSSIBLY, YOUR HONOR

11    WOULD SEE NO MORE THAN FIVE DAUBERT MOTIONS FROM EITHER SIDE.

12              THE COURT:  OKAY.  SO THAT 14 EXPERTS ARE TESTIFYING

13    AT TRIAL?

14              MR. KREVITT:  CORRECT.

15              MR. LEE:  CORRECT.

16              MR. JOHNSON:  AND THE REASON WE GOT TO 14, YOUR

17    HONOR, IS IF YOU LOOK AT, EVEN UNDER BOTH SCENARIOS, FIVE

18    PATENTS BEING ASSERTED BY APPLE, FIVE PATENTS BEING ASSERTED BY

19    SAMSUNG, THAT'S TEN PATENTS TOTAL.  EACH SIDE IS GOING TO NEED

20    EXPERTS, OSTENSIBLY ONE FOR EACH PATENT.

21              THE COURT:  BUT IS THERE NO OVERLAP?

22              MR. KREVITT:  THERE MAY BE.

23              THE COURT:  LAST TIME THERE WERE PATENTS AND YOU ONLY

24    HAD ONE EXPERT --

25              MR. JOHNSON:  IT'S HARD AT THIS POINT TO SAY.
```

```
 1                THE COURT:  SURE, SURE.

 2                MR. REITER:  I THINK WE WOULD ENDEAVOR TO OBVIOUSLY

 3     CUT BACK WHERE WE CAN.

 4                MS. MAROULIS:  THIS IS OUR LIMITS NOW.

 5                MR. KREVITT:  WHAT PATENTS GET DROPPED WILL MAKE A

 6     DIFFERENCE.

 7                THE COURT:  OKAY.

 8                MR. KREVITT:  SO THE OUTSTANDING ISSUES THEN, YOUR

 9     HONOR, OF COURSE ONE OUTSTANDING ISSUE THAT I IDENTIFIED IS

10     WHETHER, ON FEBRUARY 6TH, THE PARTIES WOULD BE REQUIRED TO

11     REDUCE THE CLAIMS TO FIVE OR EIGHT --

12                THE COURT:  UM-HUM.

13                MR. KREVITT:  -- OR SOME OTHER NUMBER OF YOUR HONOR'S

14     CHOOSING.

15                THE COURT:  UM-HUM.

16                MR. KREVITT:  THE OTHER ISSUE, OF COURSE, IS

17     PRODUCTS, WHICH WE SPOKE ABOUT BEFORE THE BREAK.

18                THE COURT:  UM-HUM.

19                MR. KREVITT:  YOU UNDERSTAND APPLE'S POSITION ON

20     THAT.

21                MS. MAROULIS:  AND SAMSUNG'S PROPOSED NARROWING

22     SCHEDULE IS JUNE 28TH, THE PARTIES WOULD BE LIMITED TO 18

23     PRODUCTS; ON SEPTEMBER 2, TO 15 PRODUCTS; AND ON FEBRUARY 6, TO

24     TEN PRODUCTS.

25                MR. KREVITT:  WHAT I WAS GOING TO SAY, THOUGH, YOUR
```

1    HONOR, IN ADDITION TO THE PRODUCTS ISSUE, WHICH IS A BIG ISSUE

2    OF COURSE FROM OUR PERSPECTIVE AND WE ADDRESSED IT AND ARE

3    HAPPY TO ANSWER ANY QUESTIONS, THERE'S A RELATED ISSUE AS TO

4    HOW PRODUCTS ARE COUNTED, AND THIS CHIEFLY RELATES TO THE WAY

5    SAMSUNG HAS IDENTIFIED PRODUCTS.

6         SO MR. LEE WOULD ADDRESS THAT.

7              MR. LEE:  AND YOUR HONOR, THIS MAY GO TO

8    MR. KREVITT'S POINT ABOUT WHEN WE ADDRESS THE PRODUCT

9    REDUCTION, BUT IF YOUR HONOR LOOKS AT THE PRODUCTS THAT WE'VE

10   IDENTIFIED ON THE OFFENSIVE SIDE, WE HAVE DONE IT BY PRODUCT,

11   NOT PRODUCT LINE.

12        SO, FOR INSTANCE, WE DON'T HAVE THE GALAXY AS A SINGLE

13   PRODUCT.  WE'VE BROKEN IT OUT BY PRODUCT.

14             THE COURT:  UM-HUM.

15             MR. LEE:  SAMSUNG, AND I CAN BE CORRECTED IF I'M

16   WRONG, HAS ACTUALLY DONE TWO THINGS:  FOR A SERIES OF PRODUCTS,

17   THEY HAVE GONE BY PRODUCT.  SO FOR THE IPHONE IT'S 3G, 3GS, 4,

18   4S, AND 5.

19        BUT THEN FOR ANOTHER SERIES OF PRODUCTS, THE IPOD TOUCH,

20   THE MAC, THE IMAC, THE MACBOOK, THE MACBOOK AIR, THE SERIES OF

21   THEM, THEY HAVE JUST SAID THE IMAC OR THE MACBOOK.

22        WELL, WITHIN THOSE THERE ARE -- WITHIN THOSE PRODUCT

23   FAMILIES, THERE ARE A HOST OF DIFFERENT PRODUCTS.

24             THE COURT:  UM-HUM.

25             MR. LEE:  I MEAN, SOME OF THEM PREDATE THE ISSUANCE

```
 1        OF THE PATENT IN THE PRIORITY CASE, SO IT CAN'T BE ALL OF THEM.

 2            SO I THINK A POINT THAT WE NEED CLARIFIED, AND IT'S THE

 3        SAME FOR BOTH PARTIES, IS ARE WE TALKING PRODUCTS OR PRODUCT

 4        LINES?

 5            THE MORAL EQUIVALENT OF ACCUSING THE MACBOOK AIR WOULD BE

 6        FOR US TO JUST SAY THE GALAXY.

 7            THAT'S NOT WHAT WE'VE DONE.  WE'VE GONE THROUGH AND --

 8                THE COURT:  YEAH, IT NEEDS TO BE THE INDIVIDUAL

 9        PRODUCT.

10                MR. JOHNSON:  BUT I THINK TO THAT POINT, THOUGH, THE

11        ISSUE IS -- FOR EXAMPLE, APPLE'S IDENTIFIED A PARTICULAR

12        PRODUCT, LIKE THE S III, AND AS WE'VE TALKED ABOUT, THERE ARE

13        DIFFERENCES AMONG THE S III EVEN BETWEEN THE DIFFERENT

14        CARRIERS.

15            SO YOU HAVEN'T GONE TO THE LEVEL OF IDENTIFYING DIFFERENT

16        CARRIERS.

17                MR. REITER:  HOWEVER, WE DO THAT -- I APOLOGIZE.

18            IF WE GO TO THAT LEVEL OF GRANULARITY, THEN SAMSUNG HAS

19        THAT SAME ISSUE ON OUR PRODUCTS, THAT THEY HAVE NOT DONE AN

20        O.S., OR AN OPERATING SYSTEM OR THE CARRIER DISTINCTION IN THE

21        PRODUCTS THAT THEY'VE IDENTIFIED.

22                MR. LEE:  RIGHT.  I THINK IF WE HAVE YOUR HONOR'S

23        GUIDANCE --

24                MR. KREVITT:  THAT'S WHAT I WAS GOING TO SAY.

25                MR. LEE:  -- THAT IT'S PRODUCTS, NOT PRODUCT LINES,
```

```
1     THEN WE CAN GO BACK AND MEET AND CONFER TO FIGURE OUT IF

2     THERE'S ANY DIFFERENCE.

3              MR. KREVITT:  AND IDENTIFY ANY ISSUES FOR THE COURT.

4              THE COURT:  IT'S PRODUCT, NOT PRODUCT LINE.  I THINK

5     PRODUCT LINE WILL GET CONFUSING ON INFRINGEMENT BECAUSE THERE

6     ARE VARIATIONS ACROSS THE PRODUCT LINES.

7              MR. JOHNSON:  SO THEN, FOR EXAMPLE, THE IMAC, IT'S

8     CALLED THE IMAC, THE MACBOOK AIR, I MEAN, HOW -- WHAT LEVEL OF

9     SPECIFICITY DO YOU REQUIRE BEYOND JUST THE MACBOOK?

10             MR. SELWYN:  GENERATIONS.

11             MR. LEE:  AND THE IPHONE ARE DIFFERENT GENERATIONS.

12    IT'S THE GENERATION OF THAT PRODUCT, THAT RELEASE HAS THE

13    INFRINGING FEATURE.

14             MR. JOHNSON:  SO THE RELEASE OF THE SOFTWARE?

15             MR. LEE:  IT CAN BE IDENTIFIED THAT WAY OR IT CAN BE

16    IDENTIFIED BY SOME OTHER FORM OF THE RELEASE.

17         BUT I THINK IF WE HAVE HER HONOR'S GUIDANCE THAT IT'S

18    PRODUCTS, IT'S SOMETHING THAT WE OUGHT TO BE ABLE TO REACH

19    AGREEMENT ON.

20             MR. KREVITT:  AND OF COURSE, YOUR HONOR, THIS ISSUE

21    DOESN'T GET TRIGGERED OTHER THAN -- WELL, I SUPPOSE IT DOES

22    BECAUSE YOU'VE LIMITED US TO 25 PRODUCTS.

23         EVEN IF YOU WERE TO ACCEPT APPLE'S VIEW THAT THERE SHOULD

24    BE NO FURTHER LIMITING OF PRODUCTS, THIS ISSUE WITH RESPECT TO

25    PRODUCTS VERSUS PRODUCT LINES COULD IMPACT SAMSUNG'S
```

```
1     IDENTIFICATION OF PRODUCTS.

2          WITH THE COURT'S GUIDANCE, WE'D BE ABLE TO ADDRESS THAT.

3               MR. JOHNSON:  I THINK IT DOES HIGHLIGHT THE ISSUE

4     THAT THERE NEEDS TO BE SOME LIMITATION ON THE PRODUCTS, AND

5     I'M -- AND THAT THE -- THE NUMBERS THAT WE ARTICULATED, THE 18

6     PRODUCTS, THE 15, THE TEN, ARE THE NUMBERS THAT YOUR HONOR

7     RAISED EARLIER THIS AFTERNOON.

8          AND SO WITH THE GUIDANCE, I THINK WE COULD GO BACK AND TALK

9     ABOUT HOW WE GET THERE.

10         BUT WE DO THINK THERE NEEDS TO BE SOME SIMPLIFICATION OF

11    THE ISSUES AS WE MOVE FORWARD.

12         AS WE HEARD -- AS WE SAW REPEATEDLY IN THE FIRST TRIAL, AND

13    THIS TRIAL WILL BE DIFFERENT, BUT IN THE FIRST TRIAL WE HEARD

14    REPEATEDLY THAT PRODUCTS OPERATE THE SAME WAY, YET THE JURY

15    FOUND OTHERWISE.

16         SO THE PROOF HERE IS GOING TO BE IMPORTANT AND THE

17    DIFFERENCES WILL BE IMPORTANT.

18         AND EVEN WHEN MR. KREVITT WAS TALKING EARLIER ABOUT THE

19    FACT THAT THERE ARE SOME DEVICES THAT USE CIRCLES AND SOME

20    DEVICES THAT USE PUZZLE PIECES, BUT THOSE WERE IRRELEVANT FOR

21    INFRINGEMENT PURPOSES, THE PEOPLE WHO ARE ULTIMATELY SITTING IN

22    THE BOX AND YOUR HONOR MAY HAVE A DIFFERENT VIEW OF THAT.

23         SO THE DIFFERENCES ARE GOING TO BE IMPORTANT TO ARTICULATE

24    AND TO DISCUSS, SO SIMPLIFYING THE CASE AND HAVING THE

25    LIMITATION ON THE PRODUCTS WE THINK IS IMPORTANT.
```

```
 1              MR. KREVITT:  BUT --
 2              THE COURT:  SO LET ME JUST SEE WHAT THE CHANGE IS.
 3     SO YOU HAVE NO INVALIDITY REDUCTION UNTIL JULY.
 4              MS. MAROULIS:  JUNE 28TH.
 5              MR. KREVITT:  NO, JULY 5.
 6              MR. LEE:  AND YOUR HONOR, THAT'S IN PART BECAUSE SOME
 7     OF THE INVALIDITY CONTENTIONS MAY BE BASED UPON THIRD PARTY
 8     PRIOR ART THAT REQUIRES DISCOVERY, SO WE PUSHED IT OUT CLOSER
 9     TO THE END OF DISCOVERY TO ALLOW US TO GET THAT DONE.
10     OTHERWISE WE MAY BE CASTING ABOUT UNTIL WE GET THE DISCOVERY
11     DONE.
12              THE COURT:  OKAY, THAT'S FINE.  SO THE FACT DISCOVERY
13     CUT OFF IS JULY 8TH, SO YOU'RE DOING IT THREE DAYS BEFORE THEN.
14     THAT'S FINE.
15         I WAS GOING TO INCREASE IT TO 49.
16         THIS IS WHAT I WAS PLANNING TO DO:  I WAS GOING TO ASK THAT
17     YOU ELIMINATE ONE PATENT SINCE YOU NOW HAVE THE MARKMAN ORDER.
18     I WILL SAY BY JUNE 28TH, EACH SIDE ELIMINATES ONE PATENT.  HOW
19     ABOUT THAT?
20              MR. KREVITT:  THAT'S FINE FROM OUR PERSPECTIVE, YOUR
21     HONOR.
22              THE COURT:  DO YOU WANT TO BE HEARD ON THAT,
23     MS. MAROULIS?
24              MR. JOHNSON:  THAT'S FINE.
25              THE COURT:  WOULD YOU OBJECT TO TWO?
```

1          MR. KREVITT:  WE'D PROPOSE TWO.

2          MS. MAROULIS:  WE MAY NEED TO GET CLIENT CLEARANCE

3     FOR TWO PATENTS.

4          THE COURT:  OKAY.  SO LET'S SAY, AT A MINIMUM, YOU'RE

5     GOING TO EACH ELIMINATE ONE PATENT BY JUNE 28TH.

6        AND THEN WHEN CAN YOU LET ME KNOW WHETHER WE CAN GO TO TWO?

7     I WOULD LIKE THIS TO BE A REALLY NARROWED CASE EARLY ON.

8          MR. JOHNSON:  WE CAN LET YOU KNOW, YOUR HONOR, BY

9     NEXT WEEK.

10         THE COURT:  OKAY.  SO WHY DON'T -- WHAT ABOUT --

11    WE'LL SAY THE 24TH.

12         MR. JOHNSON:  WE'RE GOING TO BE SEEING YOU --

13         THE COURT:  OH, WOULD YOU KNOW BY MONDAY?

14         MR. JOHNSON:  I THINK THE ANSWER TO THAT IS YES.

15         THE COURT:  OKAY.  ALL RIGHT.  SO THEN DO YOU

16    THINK -- I THINK YOU'RE COMING AT 2:00 O'CLOCK, RIGHT?

17       COULD YOU FILE SOMETHING MAYBE BY 10:00 O'CLOCK ON MONDAY?

18         MR. JOHNSON:  HOW ABOUT NOON?

19         THE COURT:  THAT'S FINE.  OKAY.  JUST LET ME KNOW IF

20    YOU WOULD AGREE TO --

21         MR. JOHNSON:  WE'LL FILE IT AS SOON AS WE CAN.

22         THE COURT:  SURE.

23         MR. JOHNSON:  THERE ARE JUST MANY PEOPLE WE HAVE TO

24    CHECK WITH.

25         THE COURT:  SURE, I UNDERSTAND.

1          OKAY.  SO SEE IF YOUR CLIENT WOULD AGREE TO ELIMINATING TWO

2    PATENTS BY JUNE 28TH.

3          OKAY.  SO IF WE ELIMINATE AT LEAST ONE PATENT BY JUNE 28TH,

4    I WAS THINKING OF 49 PRIOR ART REFERENCES BECAUSE YOU HAVE

5    SEVEN PATENTS LEFT AND THAT LEAVES SEVEN REFERENCES PER PATENT.

6          NOW, YOU WANT TO DO REFERENCES.

7          SO THEN I WAS GOING TO SUGGEST ELIMINATION OF ANOTHER

8    PATENT AFTER EXPERT DISCOVERY, BECAUSE AT THAT POINT YOU SHOULD

9    HAVE A BETTER SENSE OF WHICH ONES ARE YOUR STRONGER ONES.

10          MR. KREVITT:  THAT -- WE'RE FINE WITH THAT.  THAT WAS

11    OUR PROPOSAL, YOUR HONOR, TWO NOW AND ONE AT THE END OF EXPERT

12    DISCOVERY, REDUCING IT TO FIVE AS WE HEAD INTO --

13          THE COURT:  WELL, I DIDN'T WANT TO PUSH THREE BECAUSE

14    SAMSUNG OPPOSED ANY REDUCTION.

15          MR. KREVITT:  I UNDERSTAND.

16          THE COURT:  BUT I WAS GOING TO SUGGEST ONE

17    POST-MARKMAN AND ONE POST-EXPERT DISCOVERY.

18          MR. JOHNSON:  AND THEN ARE YOU THINKING AN

19    ADDITIONAL?

20          THE COURT:  NO.

21          MR. REITER:  ON THE PATENT?

22          MR. JOHNSON:  YEAH, ON THE PATENT, DROPPING ANY

23    ADDITIONAL PATENTS POST-EXPERT DISCOVERY?

24          THE COURT:  YES.  SO I WAS THINKING -- LIKE RIGHT NOW

25    EACH SIDE HAS EIGHT.  WE GO DOWN TO SEVEN AS OF JUNE 28TH.

```
 1            AND THEN I WAS GOING TO SUGGEST THAT AFTER EXPERT

 2    DISCOVERY, EACH SIDE ELIMINATE ONE MORE SO WE'RE DOWN TO SIX.

 3            AND THEN I WASN'T GOING TO REQUIRE YOU TO ELIMINATE

 4    NECESSARILY ANOTHER ONE BECAUSE YOU'RE BASICALLY DOWN TO FIVE

 5    ANYWAY.

 6            MR. JOHNSON:  OKAY, THAT'S GOOD.

 7            THE COURT:  BUT IF YOU ELIMINATE TWO NOW AND

 8    ELIMINATE ONE AFTER EXPERT DISCOVERY, THEN WE KNOW OUR FIVE

 9    EARLIER.

10            MR. LYON:  I'M SORRY, YOUR HONOR.  IS SAMSUNG

11    REQUIRED BY MONDAY TO TELL US WHETHER THEY'LL DROP TWO ON

12    JUNE 28TH AND OR DROP ANOTHER ONE AFTER EXPERT DISCOVERY?

13            MR. REITER:  I THINK IT'S THE FORMER.

14            THE COURT:  WELL, I MEAN, YOUR PROPOSAL IS TO HAVE

15    THE ELIMINATION OF THREE.

16            MR. KREVITT:  YES, YOUR HONOR.

17            MR. LYON:  CORRECT, YES.

18            THE COURT:  SO DOWN TO FIVE.

19        I WANT TO HEAR FROM SAMSUNG ON HOW YOU AND YOUR CLIENT VIEW

20    THAT.

21            MS. MAROULIS:  MAY WE GET BACK TO YOUR HONOR ON

22    MONDAY AS TO BOTH --

23            THE COURT:  SURE.

24            MS. MAROULIS:  -- DROPPING EXPERTS AND DAMAGES ON

25    JUNE 28TH, AND IF WE CAN DO IT ON FRIDAY INSTEAD OF MONDAY IN
```

```
1    TERMS OF FILING, WE'LL DO THAT.
2           THE COURT:  OKAY, THAT'S GREAT.  SO YOU'RE GOING TO
3    ASK -- I MEAN, I THINK HAVING TWO BE ELIMINATED IS NOT
4    UNREASONABLE AND IT WILL HELP, YOU KNOW, STREAMLINE THE CASE
5    MORE, SO I'D LIKE TO DO ONE POST-MARKMAN AND ONE POST-EXPERT
6    DISCOVERY.
7        AND THEN IF YOUR CLIENT IS AMENABLE TO ONE MORE, I'M -- I
8    MEAN, IF YOU WOULD PREFER TO DO THE SECOND ONE AFTER EXPERT
9    DISCOVERY, THAT'S OKAY, TOO.
10          MR. KREVITT:  AGAIN, WE HAD SUGGESTED FIVE, YOUR
11   HONOR, IN PART BECAUSE SAMSUNG HAD FIVE CLAIMS AS THEIR
12   PROPOSAL FOR TRIAL, SO OF COURSE THEY WERE AT NO MORE THAN
13   FIVE, TOO.  AND IT WAS SIMPLY A QUESTION OF WHEN DO YOU GET TO
14   FIVE?
15       SO WE THOUGHT IT MADE SENSE TO GET TO FIVE SOONER, WHICH IS
16   WHY WE SUGGESTED TWO GONE NOW, OR VIRTUALLY NOW, AND THEN --
17          THE COURT:  YEAH, BUT YOU CONVINCED ME WITH ALL YOUR
18   TALK ABOUT HOW WE NEED TO SEE THE EXPERT DISCOVERY.
19          MR. KREVITT:  I WAS DOING SOMETHING.  I WAS VERY
20   IMPRESSIVE.
21          MR. LEE:  DON'T RETREAT.
22       (LAUGHTER.)
23          THE COURT:  SO -- OKAY.  WELL, AT A MINIMUM WE'LL DO
24   ONE AND ONE.  WE MAY DO TWO AND ONE OR WE MAY DO ONE AND TWO.
25   BUT THAT'S WHAT I'D LIKE TO DO.
```

```
 1        OKAY.  SO THEN YOU GET TO -- SO SEPTEMBER 9, WE'LL, AT A

 2   MINIMUM, BE DOWN TO -- WELL, I WANTED ANOTHER ELIMINATION OF A

 3   PATENT.  MAYBE IT MAKES SENSE TO DO THAT ON SEPTEMBER 2ND.

 4   OKAY?  SO THEN WE'LL BE DOWN TO SIX.

 5        AND WHY CAN'T WE KNOCK THAT DOWN TO 30?  THAT WOULD BE FIVE

 6   REFERENCES PER PATENT.

 7             MR. KREVITT:  I THINK WE CAN, YOUR HONOR.

 8             THE COURT:  IS THAT --

 9             MS. MAROULIS:  CAN WE KEEP 35 JUST BECAUSE THERE'S SO

10   MANY DIFFERENT NUMBERS?  I'M CONCERNED.  WE WORKED IT OUT THIS

11   AFTERNOON TO 35 IS WHAT WE HAD.

12             MR. JOHNSON:  THE ISSUE I THINK WE'RE HAVING IS NOT

13   KNOWING ULTIMATELY WHAT WE'RE GOING TO END UP WITH, IF IT'S

14   GOING TO END UP AT FIVE CLAIMS OR 18.

15             THE COURT:  YOU KNOW, WE SHOULD BRING A WHITE BOARD.

16   WOULD THAT BE HELPFUL IF WE HAD A WHITE BOARD AND WE COULD ALL

17   LOOK AT IT?

18             MR. JOHNSON:  WE ALL HAVE OUR OWN WHITE BOARD.

19             THE COURT:  YEAH, I KNOW.  BUT THEN WE COULD SORT OF

20   ALL DO IT.  WOULD YOU MIND IF WE GOT ONE?

21        I WAS THINKING OF KEEPING IT FIVE CLAIMS PER SIDE -- WE

22   WANT TO WORK BACKWARDS, RIGHT? -- FIVE CLAIMS PER SIDE AT

23   TRIAL, FIVE PATENTS PER SIDE, TEN CLAIMS TOTAL IN THE WHOLE

24   TRIAL.

25        I WAS AMENABLE TO INCREASING THE NUMBER OF ACCUSED PRODUCTS
```

```
1     TO 12 PER SIDE FOR A TOTAL OF 24.

2         AND I WAS GOING TO INCREASE THE NUMBER OF REFERENCES TO

3     FOUR FOR EACH PATENT FOR TOTAL A 20.

4         BUT IF YOU WANT TO BE HEARD ON -- I MEAN, I WOULD LIKE TO

5     KEEP --

6             MR. JOHNSON:  THOSE ARE ACCEPTABLE TO SAMSUNG.

7             THE COURT:  OKAY.  SO --

8             MR. KREVITT:  YOUR HONOR, YOU KNOW OUR POSITION.  WE

9     PREFER EIGHT CLAIMS TO FIVE.  THAT'S NOT A HUGE DIFFERENCE.

10        THE PRODUCTS -- FOR ALL THE REASONS I ARTICULATED EARLIER,

11    WE THINK THERE IS A VERY SUBSTANTIAL PROBLEM REDUCING PRODUCTS,

12    CERTAINLY REDUCING IT TO AS LOW AS 12.

13        THAT DOESN'T MEAN WE CAN'T DO SOME REDUCTION WHEN WE LOOK

14    AT THIS LIST.

15        BUT GOING -- WE'RE AT 22 PRODUCTS NOW ON THIS LIST.  GOING

16    BELOW 20 -- 18 WOULD BE VERY PROBLEMATIC FOR US IN TERMS OF THE

17    REMEDY TO WHICH WE'RE ENTITLED IN THIS CASE.

18        SO WE -- WHAT WE WOULD --

19            THE COURT:  WELL, I JUST CANNOT HAVE ANOTHER 34.  I'M

20    NOT GOING TO DO THAT.

21        I THINK THAT 24 TOTAL PRODUCTS IS --

22            MR. KREVITT:  WELL, AGAIN, YOUR HONOR --

23            THE COURT:  IT REALLY KIND OF IS REACHING THE LIMIT

24    OF WHAT THE JURY CAN HANDLE, BECAUSE THEY'RE GOING TO BE

25    LOOKING AT -- YOU KNOW, I'M ASSUMING YOU'RE GOING TO ACCUSE ALL
```

1     OF THE PRODUCTS OF ALL CLAIMS --

2         OH, IT'S THE LITTLE ONE.  WE COULD DO THE BIG ONE, BUT THEN

3     WE HAVE TO ERASE ALL MY KIDS' DRAWINGS AND SO FORTH.

4         (LAUGHTER.)

5             THE CLERK:  YOU WANT THE BIG ONE?

6             THE COURT:  YES.

7             MR. KREVITT:  YOUR HONOR, WOULD IT BE POSSIBLE, AS I

8     SUGGESTED EARLIER, AS A FALLBACK TO -- IF WE HAD SOME MODEST

9     REDUCTION, AND THEN ADDRESS THE QUESTION, SO WE'RE NOT GUESSING

10    WHAT THE TRIAL WILL LOOK LIKE, WE'RE NOT GUESSING WHAT THE

11    PROOFS WILL LOOK LIKE, AND WE HAVE -- WE'RE GOING TO OBVIOUSLY

12    HAVE AN OPPORTUNITY TO BE BEFORE YOU AFTER EXPERT REPORTS AND

13    ADDRESS IT AT THAT TIME SO WE DON'T HAVE TO GUESS TODAY?

14            THE COURT:  NO, NO.  YOU KNOW, I THINK I MIGHT JUST

15    IMPOSE THESE AND NOT EVEN WAIT FOR YOU TO HEAR FROM YOUR

16    CLIENTS.

17        I MIGHT GO AHEAD AND AGREE WITH YOU THAT WE SHOULD GO AHEAD

18    AND GET THE ELIMINATION OF THREE PATENTS RATHER THAN JUST TWO,

19    BUT I'M HOLDING THE LINE ON THE PRODUCTS.

20            MR. KREVITT:  IN TERMS OF LIMITING THEM?

21            THE COURT:  YES.

22            MS. MAROULIS:  DOES YOUR HONOR STILL WANT US TO CHECK

23    WITH SAMSUNG OR THIS IS GOING TO BE IT?

24            THE COURT:  NO, I THINK THIS IS GOING TO BE IT.

25        NOW, WHY DON'T YOU BE HEARD ON WHETHER YOU WANT THE

```
 1        PATENT -- THE SECOND OF THE THREE PATENTS ELIMINATED EITHER

 2        POST-MARKMAN OR POST-EXPERT DISCOVERY?

 3                MR. JOHNSON:  POST-EXPERT DISCOVERY.

 4                MS. MAROULIS:  YES, YOUR HONOR.

 5                THE COURT:  OKAY.  OKAY.  SO FIVE CLAIMS, FIVE

 6        PATENTS PER SIDE, 20 INVALIDITY REFERENCES AT TRIAL.  I MEAN,

 7        THAT'S STILL A TON.  THAT'S, LIKE, 40 REFERENCES TOTAL.

 8           I MEAN, DO YOU REALLY THINK THAT WE'RE GOING TO BE DOING

 9        THAT?  THE LIMITS ARE GOING TO BE POTENTIALLY EVEN LESS THAN

10        LAST TIME, SO --

11                MR. LEE:  MY BET IS, IF I THINK BACK TO WHAT WAS

12        DONE, MANY OF THE PATENTS HAD ONE PRIOR ART REFERENCE, BUT IT'S

13        JUST A QUESTION OF --

14                THE COURT:  LOCKING YOURSELF IN NOW?

15                MR. JOHNSON:  THAT'S THE ISSUE.

16                MR. LEE:  THAT'S THE ISSUE.

17                MS. MAROULIS:  I THINK THE TIME LIMITS WOULD LIMIT

18        THE PARTIES TO WHAT THEY NEED TO DO.

19                MR. LEE:  I AGREE WITH THAT.  THE TIME LIMITS LAST

20        TIME WERE ACTUALLY OKAY AND MADE PEOPLE CHOOSE.

21                THE COURT:  WELL, WHAT IF WE DID 18, ASSUMING THAT

22        FOR SOME PATENTS YOU'LL HAVE THREE AND FOR A COUPLE YOU'LL HAVE

23        FOUR --

24                MR. JOHNSON:  REFERENCES?

25                THE COURT:  -- PER SIDE.
```

```
 1              MR. JOHNSON:  THAT'S FINE.

 2              THE COURT:  THAT'S STILL A TOTAL OF 36.

 3              MR. LEE:  YEAH.

 4              THE COURT:  OKAY.  I FEEL LIKE WE'RE MAKING SAUSAGE

 5      HERE.

 6          THANK YOU SO MUCH.

 7          ALL RIGHT.  SO LET'S -- ALL RIGHT, GOOD.  SO LET'S WORK

 8      BACKWARDS THEN.

 9          SO FOR TRIAL, IT'S GOING TO BE FIVE CLAIMS, TOTAL OF FIVE

10      PATENTS -- EVERYTHING IS PER SIDE -- 18 PRIOR ART REFERENCES.

11          OKAY.  THEN YOU'RE SAYING THAT IF WE WORK BACKWARDS --

12              MR. PRICE:  YOUR HONOR, FOR THE RECORD, I DON'T THINK

13      YOU SAID THE 12 ACCUSED PRODUCTS.  YOU WROTE IT DOWN, BUT I

14      DON'T THINK YOU SAID IT FOR THE RECORD.

15              THE COURT:  I'M SORRY?

16              MR. PRICE:  THE 12 ACCUSED PRODUCTS, YOU WROTE IT

17      DOWN.  I DON'T THINK YOU SAID IT FOR THE RECORD.  SO I WOULD

18      SAY, LET THE RECORD REFLECT THAT HER HONOR WROTE DOWN 12

19      ACCUSED PRODUCTS.

20              THE COURT:  OH, OKAY.  YEAH.

21          WE'LL ISSUE A CASE MANAGEMENT ORDER --

22              MR. LEE:  ONE OF THE GREAT THINGS IS WE HAVE A

23      SMARTPHONE THAT HAS A CAMERA.

24              THE COURT:  I STILL THINK YOU ALL SHOULD SETTLE IT ON

25      THE PLAYING FIELD MYSELF, BUT --
```

```
1              MR. JOHNSON:  MR. LEE AND I ARE GOING TO TALK ABOUT

2      THAT.

3          (LAUGHTER.)

4              THE COURT:  OKAY.  I MEAN, YOU CAN DO GOLF IF THAT'S

5      MORE YOUR THING.

6          OKAY.  SO TRIAL IS GOING TO BE 18 REFERENCES, FIVE CLAIMS

7      FROM FIVE PATENTS, 12 ACCUSED PRODUCTS -- THIS IS ALL PER SIDE.

8          SO YOU DON'T THINK THAT ANY PRE -- OH, YOU DID HAVE A

9      PRETRIAL --

10             MS. MAROULIS:  THAT WAS FEBRUARY 6TH.

11             THE COURT:  OKAY.  SO THAT WAS THE SAME AS MY DATES,

12     SO THAT WAS A -- THAT WAS A POST-SUMMARY JUDGMENT, PRE-PRETRIAL

13     CONFERENCE DATE OF -- OKAY.  AND SO YOU ARE -- SO THAT'S WHEN

14     YOU'RE DOING YOUR FIVE, WHEN YOU'RE GOING TO GO AHEAD AND LIMIT

15     IT TO FIVE CLAIMS.

16         NOW, WHY CAN'T THIS PRIOR ART REFERENCE NARROWING BE DONE

17     AT THIS POINT?  IT'S GOING TO BE AFTER SUMMARY JUDGMENT.  I

18     DOUBT ANY MOTIONS IN LIMINE WILL IMPACT --

19             MS. MAROULIS:  YOUR HONOR, I BELIEVE THAT'S THE

20     NARROWING THAT THE PARTIES CONTEMPLATED.  SO WHAT YOU HAVE

21     WRITTEN FOR TRIAL IS WHAT THE PARTIES HAD IN MIND FOR

22     FEBRUARY 6TH.

23             MR. JOHNSON:  YES.

24             THE COURT:  OH, OKAY.

25             MS. MAROULIS:  THAT IS THE FEBRUARY 6TH NARROWING.
```

```
1            THE COURT:  OKAY.  SO YOU'LL DO IT ON THIS DATE?

2            MS. MAROULIS:  RIGHT, CORRECT.

3            THE COURT:  OKAY.  ALL RIGHT.  OKAY, THAT'S FINE.

4       OKAY.  SO THEN YOUR NEXT DATE OF -- OKAY.  SO SEPTEMBER 9,

5    THAT WAS ALSO THE DATE -- CAN WE REDUCE THIS FURTHER THAN 35

6    REFERENCES IF YOU'RE ONLY GOING TO HAVE 18?

7            MR. KREVITT:  GO TO 30?

8            THE COURT:  I WAS GOING TO SUGGEST 24.

9            MS. MAROULIS:  YOUR HONOR, MAY WE ASK FOR MORE

10   COLLECTIVELY?

11           THE COURT:  MORE THAN 24?

12           MS. MAROULIS:  YEAH.  CAN WE DO 30?

13           THE COURT:  WELL, I MEAN, WE'LL BE DOWN TO SIX

14   PATENTS AT THAT POINT.  DO YOU THINK YOU NEED FIVE REFERENCES

15   EACH?

16           MR. JOHNSON:  BUT THERE WILL BE 12 CLAIMS STILL, FIVE

17   PATENTS.

18           MR. PRICE:  FIVE PATENTS, 12 CLAIMS.

19           MS. MAROULIS:  RIGHT.  SOME OF THE CLAIMS ARE

20   DIFFERENT.  THEY'RE NOT FROM -- THEY'RE SEPARATE PRIOR ART.

21           MR. JOHNSON:  SO THAT'S STILL -- THAT'S NOT EVEN --

22           THE COURT:  OKAY.  SO 9-2-13, THAT IS POST-EXPERT AND

23   PRE-SUMMARY JUDGMENT.

24       OKAY.  AND WHEN YOU'RE SUGGESTING TO GO AHEAD AND -- I

25   THINK IT SHOULD BE REDUCED MORE THAN JUST 12 CLAIMS AT THIS
```

```
 1        POINT.  AT A MINIMUM -- I THINK TEN AT THE MOST.  TEN CLAIMS,
 2        15 PRODUCTS.
 3           OKAY.  AND THEN -- LET ME JUST TAKE A LOOK AT THIS.  SO
 4        YOU'RE SAYING JULY 5TH, POST-FACT, LET'S SAY -- WHAT ABOUT 45
 5        REFERENCES POST-FACT?
 6           AND THEN JUNE 28TH, SAMSUNG WILL HAVE 18 CLAIMS, 18
 7        PRODUCTS.
 8           OKAY.  AND SO WE'LL DO ONE PATENT ELIMINATION HERE AND
 9        WE'RE GOING TO DO TWO PATENT ELIMINATIONS HERE.
10              MR. JOHNSON:  YOU MEAN THE SECOND PATENT OR THE --
11              THE COURT:  NO.  WE'RE ELIMINATING TWO MORE.
12           SO FROM THIS POINT FORWARD, WE'LL BE DOWN TO SEVEN PATENTS;
13        AND THEN FROM THIS POINT FORWARD, WE'LL BE DOWN TO FIVE.
14        THAT'S THESE LIMITS UP HERE.
15           OKAY.  SO I WOULD LIKE A TOTAL, AT MOST, OF 12 TESTIFYING
16        EXPERTS AT THIS STAGE, AND TO HAVE AN ELECTION AT THIS STAGE OF
17        15 TESTIFYING EXPERTS AND 15 EXPERT REPORTS.
18              MS. MAROULIS:  YOUR HONOR, THAT SEEMS TO BE FEWER
19        EXPERT REPORTS THAN CLAIMS FOR DISCOVERY.
20              THE COURT:  BUT I GUESS I JUST DON'T SEE AN EXPERT
21        JUST DOING A REPORT ON ONE CLAIM.  AREN'T YOU GOING TO HAVE
22        GROUPING OF PATENTS AND HAVE --
23              MS. MAROULIS:  IF THEY -- IN THE PRIOR CASE, WE
24        HAD -- BOTH PARTIES HAD SOME EXPERTS WHO JUST OPINED ON ONE
25        PATENT, SO IT WOULD BE ONE CLAIM, ONE PATENT.
```

```
 1        IF ONE IS ASSERTED, ONE CLAIM, ONE PATENT.  THAT'S

 2   POTENTIALLY FIVE TECHNICAL EXPERTS FOR FIVE PATENTS.

 3            THE COURT:  OKAY.  THEN I'M GOING TO LIMIT IT TO JUST

 4   THE 15 CLAIMS AND WE WON'T HAVE THAT ISSUE.

 5            MR. PRICE:  YOUR HONOR, IF I MIGHT?

 6            THE COURT:  YEAH.

 7            MR. PRICE:  BUT THEN THAT MEANS WE WOULD HAVE NO

 8   EXPERTS FOR DAMAGES, CAUSATION.

 9            THE COURT:  RIGHT.  BUT I DON'T THINK YOU'RE GOING TO

10   HAVE ONE EXPERT PER CLAIM.  I'M JUST NOT CONVINCED OF THAT.

11            MR. JOHNSON:  WELL, WE ARE GOING TO HAVE ONE EXPERT

12   WHO'S GOING TO COVER MULTIPLE ISSUES, EVEN WITHIN A CLAIM.

13        SO WE WILL HAVE AN EXPERT -- WE MAY HAVE ONE EXPERT WHO

14   DOES AN INFRINGEMENT REPORT, A NON-INFRINGEMENT REPORT, AND

15   THAT SAME EXPERT IS GOING TO HAVE TO DO ULTIMATELY A REBUTTAL

16   REPORT AND PUT IN SOMETHING ON VALIDITY ON ONE SIDE OR THE

17   OTHER.

18        SO EACH EXPERT -- EACH TECHNICAL EXPERT WILL LIKELY HAVE

19   TWO REPORTS AT LEAST, AND MAYBE EVEN --

20            THE COURT:  WELL, GIVE ME A NUMBER, BUT WE'RE GOING

21   TO LIMIT THE NUMBER OF REPORTS.  I'M NOT GOING TO HAVE THAT BE

22   AN UNLIMITED NUMBER THIS TIME.

23            MR. JOHNSON:  WELL, WE GO BACK TO -- I MEAN, I KNOW

24   YOUR HONOR WANTS TO LIMIT THE AMOUNT OF PAPER THAT BOTH YOU AND

25   JUDGE GREWAL SEE AS WELL, AND THAT'S WHY I WAS SUGGESTING
```

```
 1        HAVING THE NUMBER OF CHALLENGES --

 2              THE COURT:  WELL, THE ADVISORY COMMITTEE AT THE

 3     FEDERAL CIRCUIT IS GOING TO BE PROPOSING LIMITS ON THIS, SO

 4     THIS IS NOT SOMETHING THAT'S UNIQUE TO THIS CASE.  EVERYONE IS

 5     SAYING THERE'S JUST ABUSE OF PATENT LITIGATION AND THERE'S TOO

 6     MUCH DISCOVERY, THERE'S TOO MUCH EXPENSE.  THIS IS OUT OF

 7     CONTROL.  THIS IS SOMETHING OF BROADER NATIONAL PHENOMENON.

 8         SO THIS IS STILL, I THINK, VERY GENEROUS COMPARED TO WHAT I

 9     THINK -- YOU KNOW, TO THE PROPOSAL THAT MAY ULTIMATELY BE MADE

10     BY OTHER BODIES.

11         SO ANYWAY, WELL, GIVE ME A NUMBER.  IT'S GOING TO BE

12     LIMITED.

13            (PAUSE IN PROCEEDINGS.)

14              MR. KREVITT:  WHAT IF WE DROPPED THE THREE PATENTS

15     EARLIER?  THAT WOULD ELIMINATE THE ISSUE.

16              MR. LEE:  THAT'S WHAT I WAS SAYING.

17              THE COURT:  I WAS THINKING I MAYBE WOULD LIKE TO

18     LIMIT THIS AS WELL BEFORE SUMMARY JUDGMENT.  WE'RE GOING TO BE

19     DOWN TO FIVE PATENTS AT THAT POINT.  I THINK FIVE REFERENCES --

20              MR. KREVITT:  IF YOU LIMIT IT TO FIVE PATENTS, YOUR

21     HONOR, FOR THE REPORTS, THEN OF COURSE YOU'D NEED FEWER EXPERT

22     REPORTS.

23         SO IN OTHER WORDS, YOU WOULD HAVE SEVEN PATENTS AND THEN

24     WITH A FURTHER REDUCTION TO FIVE, WE'VE ACCELERATED THAT

25     REDUCTION.
```

```
 1              THE COURT:  OH, IF WE DID THE TWO PATENTS EARLIER?

 2    YEAH, WE COULD DO THAT.

 3              MR. LYON:  GO TO FIVE PATENTS BEFORE EXPERTS.

 4              MR. JOHNSON:  WHAT IF WE WENT TO -- RIGHT NOW WE HAVE

 5    DROPPING TWO -- ONE PATENT ON 6-28.  IF WE WERE TO DROP TWO

 6    PATENTS ON 6-28 --

 7              THE COURT:  YEAH.

 8              MR. JOHNSON:  -- AND ANOTHER ONE POST-EXPERT --

 9         I AGREE WITH MR. LEE THAT IF WE HAVE -- IF WE HAVE 15

10    EXPERTS WHERE YOUR HONOR HAS WRITTEN THAT NEXT TO JULY 5TH,

11    THEN THEY'RE TECHNICAL EXPERTS.  EACH TECHNICAL EXPERT NEEDS

12    TWO REPORTS.  SO I THINK WE'RE LOOKING AT -- WE'RE LOOKING AT

13    30.

14              MR. LEE:  AND, YOUR HONOR, THERE WILL BE A -- THERE

15    WILL BE AN INFRINGEMENT REPORT BY AN EXPERT AND A VALIDITY

16    REPORT BY AN OPPOSING EXPERT, AND THEN THEY'LL EACH FILE

17    REBUTTAL REPORTS, A NON-INFRINGEMENT REPORT AND A VALIDITY

18    REPORT FOR LACK OF A BETTER WORD.

19         SO IF YOU THOUGHT ABOUT THAT, AT THE END OF THE DAY, YOU

20    WERE GOING TO HAVE FIVE CLAIMS AND YOU MIGHT HAVE FIVE

21    TECHNICAL EXPERTS, EACH SIDE BY -- AT A MINIMUM, THAT WOULD BE

22    TEN REPORTS.

23              MR. JOHNSON:  JUST FOR THE TECHNICAL EXPERTS.

24              MR. LEE:  JUST FOR THE TECHNICAL EXPERTS.

25              THE COURT:  UM-HUM.  SO WHAT'S THE PROPOSAL?  WHAT'S
```

```
1        THE PROPOSAL?

2             (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

3                  MS. MAROULIS:  CAN WE HAVE 30 REPORTS TOTAL, YOUR

4        HONOR?

5                  THE COURT:  NO.  THAT'S TOO MANY.

6                  MR. LYON:  YOU HAVE GOT 20 FOR REPORTS ON BOTH

7        PATENTS.

8                  THE COURT:  I MEAN, EVEN 36 REFERENCES IS A LOT.  I

9        MEAN, DO YOU THINK YOU'RE REALLY GOING TO DO 36 REFERENCES?

10                 MR. JOHNSON:  THAT GOES BACK TO MR. LEE'S POINT ABOUT

11       THE TIMING OF, YOU KNOW, IF WE START BACKING INTO -- THERE'S

12       GOING TO BE THIRD PARTY DISCOVERY ON BOTH SIDES.

13                 THE COURT:  YEAH, YEAH.  NO, NO, NO.  I DON'T MEAN --

14       I MEAN HERE.  I MEAN HERE.

15          HAVING 36 AT THE TRIAL, THAT SEEMS LIKE -- I DON'T THINK

16       WE'D EVEN HAVE TIME TO GET THROUGH THAT MANY.

17                 MR. JOHNSON:  I THINK THAT'S REALLY THE GUIDING LIGHT

18       IS THE TIME CONSTRAINTS WOULD FORCE THE PARTIES TO PICK AND

19       CHOOSE ULTIMATELY.

20                 THE COURT:  UM-HUM.

21                 MR. JOHNSON:  AND THAT'S -- THAT IS WHAT HAPPENED IN

22       THE FIRST TRIAL.

23                 THE COURT:  SO HOW MANY DID YOU HAVE IN THE FIRST

24       TRIAL?  AT MOST IT WAS THREE PER PATENT IN TERMS OF PRIOR ART

25       REFERENCES PER PATENT.
```

```
 1              MR. JOHNSON:  I THINK IT WENT TO FIVE.

 2              THE COURT:  MAYBE FOUR.

 3              MR. JOHNSON:  FIVE IN ONE INSTANCE, AND MOSTLY --

 4   THERE WERE SOME THAT WENT ACROSS SEVERAL PATENTS BECAUSE THERE

 5   WAS -- THE SINGLE PATENTS WERE RELATED.  BUT --

 6              THE COURT:  UM-HUM.

 7              MS. MAROULIS:  PART OF THE REASON WE NEED EXTRA ON

 8   THE PRIOR ART REFERENCES, AGAIN, SOME ARE THIRD PARTY, SO SOME

 9   MAY NOT BE ABLE TO COME TO TRIAL OR MAY NOT BE WILLING, SO WE

10   MAY NEED TO PULL THAT REFERENCE AT THE LAST MOMENT.  SO WE NEED

11   SOME FOR BOTH SIDES.

12              THE COURT:  YEAH, GO AHEAD.

13              MR. JOHNSON:  I WOULD SAY -- YOU HAVE 18 DOWN AND I

14   THINK THAT'S -- I THINK THAT'S THE RIGHT NUMBER.

15       IF IT WAS SOMETHING LESS THAN THAT, THEN MR. LEE CAN

16   DISAGREE, BUT 15, 16, 17, 18, I THINK SOMEWHERE IN THAT

17   BALLPARK IS THE RANGE.

18              THE COURT:  CAN I JUST DO 15?

19              MR. KREVITT:  YES.

20              MR. SELWYN:  WE DON'T KNOW WHAT THE ASSERTED CLAIMS

21   ARE.

22              THE COURT:  YEAH.  WELL, YOU KNOW, IT COULD BE THAT

23   YOU DON'T HAVE FIVE PATENTS AND YOU JUST HAVE THREE.

24       ALL RIGHT.  LET'S DO 15 PRIOR ART REFERENCES TOTAL, FIVE

25   CLAIMS; 12 ACCUSED PRODUCTS; WE'RE GOING TO ELIMINATE TWO
```

```
1        PATENTS JUNE 28TH, ANOTHER ONE SEPTEMBER 2ND --

2              MR. PRICE:  YOUR HONOR, ON JUNE 28TH, GOING FORWARD

3        THEN, WE'LL HAVE HOW MANY PATENTS?

4              THE COURT:  SIX.

5              MR. PRICE:  12 TOTAL.

6              THE COURT:  THAT'S RIGHT.

7              MR. PRICE:  SIX PER SIDE, 12 TOTAL.  SO THAT MEANS 24

8        REPORTS FOR THOSE 12 PATENTS.  YOU'RE GOING TO HAVE INVALIDITY

9        AND INFRINGEMENT AND -- SO IT SEEMS LIKE WE NEED A MINIMUM OF

10       24 REPORTS, PLUS THE REPORTS -- THAT'S JUST THE TECHNICAL

11       REPORTS, AND PLUS, YOU KNOW, SIX --

12             MR. LEE:  RIGHT.  SO THE OTHERS WON'T HAVE THE SAME

13       ISSUE THAT -- DAMAGES AND FRAND WON'T HAVE -- IT WILL JUST BE

14       ONE OR THE OTHER.

15             MR. PRICE:  SO IT SEEMS LIKE --

16             MR. LEE:  I THINK WITH 15 EXPERTS AND 30 REPORTS --

17             MR. PRICE:  YEAH, 30 REPORTS IS --

18             THE COURT:  THAT'S REALLY -- THAT'S JUST TOO MANY.

19             MR. PRICE:  AGAIN, THEY'RE ALMOST REBUTTAL REPORTS.

20       IT'S THE SAME TOPIC.  IT'S JUST YOU'VE GOT TO WAIT UNTIL AFTER

21       THEIR INITIAL REPORT.

22             MR. KREVITT:  WE COULD LIMIT IT BY JUST THE NUMBER OF

23       OPENING REPORTS AND WE CAN THINK ABOUT THE ISSUES.

24             THE COURT:  WHAT ABOUT 20?

25             MR. PRICE:  THAT'S --
```

```
 1            THE COURT:  I MEAN, I ASSUME THERE'S GOING TO BE

 2   OVERLAP, RIGHT?  THERE'S GOING TO BE SOME GROUPING OF PATENTS.

 3   YOU'RE GOING TO HAVE THE SAME TECHNICAL PERSON DOING

 4   INFRINGEMENT AND INVALIDITY.

 5            MR. PRICE:  OKAY.  HOPEFULLY YOU CAN FIND EXPERTS WHO

 6   DO THAT.

 7            THE COURT:  YEAH.

 8            MR. PRICE:  BUT YOU'RE NOT REALLY SAVING -- IF IT

 9   TURNS OUT WE HAVE TO HAVE SEPARATE EXPERTS FOR SEPARATE CLAIMS,

10   YOU'RE NOT REALLY SAVING EFFORT BECAUSE YOU HAVE AN EXPERT

11   DOING THE EQUIVALENT OF THREE REPORTS.

12      BUT IF YOU HAVE THREE EXPERTS ON THREE CLAIMS, YOU'D HAVE

13   THREE SEPARATE REPORTS.  IT'LL BE ADDRESSING THE SAME SUBJECT

14   MATTER.

15            MR. LYON:  YOUR HONOR, EVEN IF YOU HAVE ONE EXPERT

16   DOING VALIDITY AND INFRINGEMENT, THAT'S TWO REPORTS, AND IF

17   THERE'S 12 PATENTS IN THE CASE AT THAT TIME, THAT GETS TO 24

18   REPORTS.

19            MR. PRICE:  THAT'S A MINIMUM 24 ON THE TECHNICAL

20   SIDE, AND OF COURSE WE THINK ONE OF THE KEY ISSUES HERE IS

21   CAUSATION, DAMAGES.

22            THE COURT:  WHY CAN'T THEY DO A COMBINED --

23            MR. JOHNSON:  IT GOES TO THE NOTICE.

24            THE COURT:  YEAH, ALL RIGHT.

25            MS. MAROULIS:  ONE IS THE OPENING, ONE IS REBUTTAL.
```

```
 1                THE COURT:  YEAH, I KNOW.  I'M TRYING TO THINK OF A

 2   WAY TO LIMIT THIS NUMBER.  I DO NOT WANT -- ALL RIGHT.

 3                MR. LEE:  WHAT ABOUT 15 EXPERTS AND 15 OPENING

 4   REPORTS ON WHICH YOU BEAR THE BURDEN?

 5                MR. PRICE:  AND THEN WE HANDLE THE --

 6                MR. LEE:  YEAH, THERE ARE GOING TO BE REBUTTAL

 7   REPORTS.

 8                THE COURT:  THAT WON'T BE COUNTED.

 9                MR. KREVITT:  WE COULD LIMIT THEM TO OPENING.  I

10   THINK THAT'S --

11                MR. LEE:  OKAY.  15 EXPERTS, 15 REPORTS.

12                THE COURT:  I'M SORRY.  I WAS KIND OF THINKING OF IT

13   THAT WAY.  I WASN'T COUNTING ALL OF THE INDIVIDUAL REBUTTALS AS

14   A SEPARATE --

15                MR. PRICE:  OH, OKAY.

16                THE COURT:  I'M SORRY.  I SHOULD HAVE CLARIFIED THAT.

17   I WAS THINKING EACH -- YEAH, OKAY.  SO 15 EXPERTS, WE'LL DO 15

18   OPENING REPORTS.  EVERYONE IS OKAY WITH THAT?

19                MR. LEE:  YES.

20                MR. KREVITT:  YES.

21                MR. JOHNSON:  YES.

22                THE COURT:  OKAY.  NOW, CAN WE TAKE THIS DOWN TO TEN?

23   OR NOT?

24                MR. PRICE:  NOT SAFELY.

25                MR. JOHNSON:  I DON'T THINK SO, YOUR HONOR.
```

```
 1              THE COURT:  OKAY.  WELL, LET'S SEE.  SO WHAT -- LET

 2   ME JUST DOUBLE-CHECK MY NOTES, WHICH ARE MESSY HERE.

 3        OKAY.  SO WE'RE DOWN TO 15 PRIOR ART REFERENCES, FIVE

 4   CLAIMS FROM FIVE PATENTS MAX; 12 -- OKAY.

 5        AND THEN POST-EXPERT DISCOVERY, WE'RE GOING TO ELIMINATE

 6   ANOTHER PATENT WHEN WE DO THE CLAIMS.

 7        AND THEN -- OKAY.  ANYONE WANT TO COMMENT?  OTHERWISE I

 8   THINK THIS WILL BE THE SCHEDULE AND THE LIMITS.

 9              MR. KREVITT:  YOUR HONOR, WITH ONE SUGGESTION ON

10   PRODUCTS, MINDFUL THAT WE'RE GOING TO BE LIMITING IT

11   CONSIDERABLY --

12              THE COURT:  UM-HUM.

13              MR. KREVITT:  -- IS THAT YOU HAVE A REDUCTION TO 15

14   PRODUCTS ON 9-2, WHICH IS POST-EXPERT AND PRE-SUMMARY JUDGMENT.

15              THE COURT:  UM-HUM.

16              MR. KREVITT:  IT MAY BE THAT WE EMERGE FROM THE

17   SUMMARY JUDGMENT PROCESS WITH SOMETHING LESS THAN 12 PRODUCTS,

18   AND WHAT I WOULD SUGGEST IS THAT WE DON'T DO A FURTHER -- WE

19   DON'T COMPEL TODAY A FURTHER NARROWING TO 12 AT TRIAL, THAT WE

20   REDUCE IT TO 15 AT THAT TIME, ON 9-2.

21        AND THEN WHAT WE WOULD GO TO TRIAL ARE ON NO MORE THAN 15

22   PRODUCTS.  AS I SAY, BASED ON THE SUMMARY JUDGMENT PROCESS WE

23   MAY HAVE FEWER.

24              THE COURT:  NO.  I MEAN, THAT'S STILL A REALLY LONG

25   VERDICT FORM, 24 PRODUCTS, TEN CLAIMS.  THAT'S A LONG VERDICT
```

```
 1      FORM, SO HM-UM.

 2          I MEAN, I ALMOST THINK THIS IS GOING TO BE TOO LONG OF A

 3      VERDICT FORM AS IT IS.

 4          ANY OTHER -- ANY OTHER COMMENT?

 5              MS. MAROULIS:  WE'LL DO THAT, YOUR HONOR.

 6              THE COURT:  NOW, I HAD MENTIONED CONSULTING EXPERTS

 7      IN MY MARCH, WHATEVER, 6TH ORDER, BUT DO YOU ALL WANT THAT?

 8              MR. REITER:  NO, YOUR HONOR.

 9              THE COURT:  NO?  OKAY.  ALL RIGHT.  I MEAN, AS LONG

10      AS THAT'S NOT GOING TO CREATE A LOT OF, YOU KNOW, MOTION

11      HEADACHES FOR JUDGE GREWAL, THAT'S OKAY.

12          MOST OF THE MOTIONS, THE DISCOVERY MOTIONS DON'T INVOLVE

13      THE CONSULTANTS, RIGHT?

14              MR. KREVITT:  CORRECT.

15              MS. MAROULIS:  NONE OF THEM DID LAST TIME.

16              THE COURT:  ALL RIGHT.  ANY LAST COMMENT?  OTHERWISE

17      I'LL ISSUE THIS SCHEDULE IN THE CASE MANAGEMENT ORDER.

18          NOW, I GUESS WE HAVE A QUESTION OF -- IT SOUNDS LIKE

19      THERE'S SOME DISPUTE AS TO WHETHER THE LIMIT TO 21 AND 22 IS --

20      ACTUALLY, THAT IT MIGHT BE PROBLEMATIC.

21          SHOULD I HAVE YOU REDO YOUR LIMITS AND HAVE YOU MEET AND

22      CONFER ON WHAT THE DEFINITION IS?  IS IT GOING TO BE CARRIER?

23      IS IT GOING TO BE OPERATING SYSTEM?  WHAT'S THE, YOU KNOW,

24      LEVEL OF GRANULARITY YOU'RE GOING TO USE?

25              MR. KREVITT:  YES, YOUR HONOR.  YOUR GUIDANCE HAS
```

```
 1        BEEN HELPFUL AND WE SHOULD, BASED ON THAT, BE ABLE TO WORK IT

 2        OUT.

 3               MR. JOHNSON:  RIGHT.  WE'LL WORK IT OUT.

 4               THE COURT:  OKAY.  SO THEN LET'S DO ANOTHER DATE FOR

 5        YOU TO DO YOUR REVISED LIST OF 22 PRODUCTS.

 6               MR. LEE:  TWO WEEKS?

 7               MS. MAROULIS:  TWO WEEKS?

 8           (PAUSE IN PROCEEDINGS.)

 9               MR. KREVITT:  AS TO TIMING, YOUR HONOR, HOW ABOUT THE

10        PARTIES FILE REVISED SUBMISSIONS WITHIN TWO WEEKS FROM TODAY?

11               THE COURT:  SO WHAT WOULD THAT BE?  THAT WOULD BE

12        MAY 8TH?  MAY 7TH?

13               THE CLERK:  MAY 8TH.

14               THE COURT:  DOESN'T MATTER, WHATEVER YOU LIKE.

15        WHATEVER DATE YOU WANT.

16          OKAY.  SO THEN BY MAY 8TH, YOU'RE GOING TO FILE NEW PRODUCT

17        SELECTIONS, UP TO 22.

18               MR. KREVITT:  CORRECT.

19               MR. LEE:  YOUR HONOR, COULD I RAISE ONE THING THAT'S

20        NOT ON THE SCHEDULE?

21               THE COURT:  YES.

22               MR. LEE:  THERE'S BEEN DISCUSSIONS BETWEEN US ABOUT

23        REPRESENTATIVE PRODUCTS.

24               THE COURT:  UM-HUM.

25               MR. LEE:  AND I HAVE IN MIND WHAT MR. KREVITT TALKED
```

```
 1        ABOUT, WHICH IS THE FOLLOW-ON LITIGATION FOR EVERYTHING THAT

 2        WAS DISMISSED WITHOUT PREJUDICE.

 3            IT SEEMS TO ME THAT IF WE'RE GOING TO FOLLOW THIS SCHEDULE,

 4        IT MIGHT MAKE SENSE FOR US TO CONFER AGAIN AFTER WE HIT THE MAY

 5        DATE AND HAVE THE NEW LIST AND SEE IF WE CAN REACH AGREEMENT ON

 6        REPRESENTATIVE PRODUCTS.

 7            THAT WOULD STILL HAVE US AT YOUR 12 PRODUCTS, BUT HAVE THEM

 8        BE REPRESENTATIVE OF OTHERS SO THAT YOU DON'T HAVE TO HAVE A

 9        FOLLOW-ON CASE.

10            I DON'T THINK WE HAVE TO BUILD ANYTHING IN HERE, BUT I

11        DIDN'T WANT TO NOT SAY SOMETHING ABOUT IT AND HAVE IT COME BACK

12        TO YOUR HONOR AND HAVE US BOTH SAY, ONCE WE'VE NARROWED, THAT

13        WE AGREE THAT THESE ARE REPRESENTATIVE OF A, B, C, AND D.

14            IT WON'T CHANGE THE TRIAL AT ALL.

15                THE COURT:  UM-HUM.  WELL, WE CAN SET A DATE FOR AT

16        LEAST A STATUS REPORT.

17                MR. LEE:  I THINK THAT WOULD BE GREAT.

18                MR. KREVITT:  I AGREE.

19                MR. PRICE:  YES.

20                THE COURT:  WHAT DO YOU WANT?  MAY 29TH?  JUNE 1ST?

21        THREE WEEKS?  MAY 29TH?

22                MR. LEE:  OKAY.

23                MR. JOHNSON:  YEAH.  WE'LL MEET AND CONFER AND SEE IF

24        WE CAN MAKE ANY PROGRESS.

25                MR. KREVITT:  AND THEN FILE --
```

```
 1              MR. LEE:  RIGHT.

 2              MR. KREVITT:  WE'LL FILE A SUBMISSION AND REPORTS ON

 3    ANY AGREEMENTS OR ANY ISSUES THE PARTIES HAVE IN THAT REGARD.

 4              MR. LEE:  RIGHT.

 5              THE COURT:  BOY, I'M EVEN THINKING MAYBE I SHOULDN'T

 6    HAVE GONE UP TO 12.  MAYBE I SHOULD HAVE JUST KEPT IT AT TEN.

 7    I'M JUST CONCERNED ABOUT A REALLY COMPLICATED VERDICT FORM.

 8              MR. JOHNSON:  WE'RE FINE WITH TEN, YOUR HONOR.

 9              MR. LEE:  YOU'RE RIGHT AT 12.

10              MR. KREVITT:  YOU WERE WRONG AT 12.

11              MR. PRICE:  YOU KNOW, THAT'S ON THE RECORD.

12              THE COURT:  I THINK I'D LIKE TO CHANGE THAT BACK TO

13    TEN JUST BECAUSE TEN PRODUCTS ACROSS 15 CLAIMS, THAT'S GOING TO

14    BE A VERY COMPLICATED VERDICT FORM.

15         I'M GOING TO STRONGLY ENCOURAGE A REPRESENTATIVE PRODUCT

16    STIPULATION AND DO WHATEVER I CAN DO TO HELP IN ENFORCING THAT.

17              MR. KREVITT:  SO, YOUR HONOR, IF I MAY SUGGEST WE

18    KEEP IT THE WAY IT IS, AND DEPENDING UPON WHAT THE PARTIES ARE

19    ABLE TO DO OR NOT DO WITH THE REPRESENTATIVE PRODUCTS, WE'LL

20    OBVIOUSLY, WELL IN ADVANCE, HAVE AN OPPORTUNITY TO REVISIT

21    THAT.

22              THE COURT:  YOU KNOW, I'M GOING TO CHANGE IT TO TEN

23    ACCUSED PRODUCTS, AND THEN LET ME KNOW WHAT I CAN DO TO

24    CORDIALLY EXPECT THAT THERE WILL BE SOME TYPE OF REPRESENTATIVE

25    PRODUCT STIPULATION, JUST TO LIMIT THAT.  OKAY?  WE'LL DO IT
```

```
1       THAT WAY.
2           WHAT CAN I DO TO HELP ENCOURAGE A REPRESENTATIVE PRODUCT
3       STIPULATION?
4               MR. LEE:  I ASK THAT YOUR HONOR -- ONCE WE BOTH FILE
5       THE REVISED LISTS ON MAY 8TH, SO THE ISSUE IS JOINT OR WE'RE ON
6       THE SAME PLAYING FIELD -- MAYBE NOT -- BUT ON THE SAME PLAYING
7       FIELD, THEN WE'LL BE ABLE TO TALK ABOUT WHETHER WE CAN DO THE
8       REPRESENTATIVE PRODUCT STIPULATION.  WE'LL BE IN A BETTER
9       POSITION BY THEN TO TELL YOU WHAT YOU CAN DO TO HELP US.
10              THE COURT:  OKAY.  WHEN ARE YOU COMING IN AGAIN FOR
11      ANOTHER CMC?
12              MR. REITER:  I DON'T BELIEVE IT'S ON THE SCHEDULE.
13              MS. MAROULIS:  WE'RE NOT ON THIS SCHEDULE.  I DON'T
14      BELIEVE WE HAVE IT SCHEDULED.
15              THE COURT:  OKAY.  SO WHEN WOULD BE GOOD?
16          OTHERWISE YOU HAVE FACT DISCOVERY CUT OFF JULY 8TH, EXPERT
17      DISCOVERY CUT OFF AUGUST 30TH.
18          WHEN WOULD YOU LIKE TO COME BACK?
19          AND DID WE SET A DATE -- ARE THE DAUBERT MOTIONS GOING TO
20      BE HEARD WITH THE DISPOSITIVE MOTIONS?
21              MR. JOHNSON:  WE DID THAT THE LAST TIME.
22          (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)
23              THE COURT:  YEAH, IT WAS DIFFICULT TO HANDLE ALL OF
24      THAT ALL AT ONCE.  HOPEFULLY THIS WILL HELP THIS TIME.
25          BUT DO YOU THINK IT MAKES SENSE TO HAVE IT BEFORE OR AFTER
```

```
 1          SUMMARY JUDGMENT?  I KNOW SOME OF THEM ARE GOING TO BE

 2     INTERTWINED.

 3               MR. JOHNSON:  I THINK IT -- I WOULD THINK THAT THEY

 4     SHOULD BE CLOSE IN TIME.

 5               THE COURT:  UM-HUM.

 6               MR. JOHNSON:  I DON'T --

 7               MS. MAROULIS:  WE WILL NOT HAVE ENOUGH TIME TO DO IT

 8     SIGNIFICANTLY BEFORE BECAUSE EXPERT DISCOVERY CLOSES ON

 9     AUGUST 30 AND WE NEED TO BRIEF SUMMARY JUDGMENT ON THE 26TH OF

10     SEPTEMBER.

11               THE COURT:  DO YOU WANT TO DO IT AFTER, DEPENDING ON

12     DISPOSITIVE MOTIONS?

13          BUT WHAT ARE WE GOING TO DO ABOUT THE ONES THAT ARE

14     CONTINGENT ON THE DAUBERT MOTIONS?  SO I APPRECIATE YOU SAID

15     IT'S GOING TO BE A LIMIT OF FIVE DAUBERTS PER SIDE.

16               MR. LYON:  WE COULD HAVE THE HEARING ON THE DAUBERTS

17     BEFORE THE HEARING ON THE SUMMARY JUDGMENT AND THAT WAY IF

18     THERE'S AN ISSUE THAT IS RESOLVED -- THAT RESOLVES THE SUMMARY

19     JUDGMENT, WE DON'T HAVE TO DO THAT AS WELL.

20          SO IN OTHER WORDS, THEY'RE ALL FILED AT THE SAME TIME, BUT

21     THEN THE HEARING -- WE'D HAVE A FIRST HEARING ON DAUBERT, KIND

22     OF LIKE WHAT WE DID WITH THE MARKMAN WHERE YOU HAD A TUTORIAL

23     AND KIND OF A PRE-HEARING.

24          IF THEY RESOLVE AT DAUBERT, THEN THAT ELIMINATES AN EXPERT

25     UPON WHICH A SUMMARY JUDGMENT IS DEPENDENT AND THAT SUMMARY
```

1      JUDGMENT WOULD NOT NEED TO BE HEARD AT ALL.

2              THE COURT:  YEAH, ALTHOUGH I NEED TO SEE WHEN WE EVEN

3      HAVE A LAW AND MOTION HEARING DATE OPEN.

4          WOULD YOU PLEASE CHECK?  IT WOULD HAVE TO BE SOMETIME

5      BETWEEN DECEMBER 12TH AND MARCH 5TH, WHICH IS OUR PRETRIAL

6      CONFERENCE.

7              THE CLERK:  SO THAT'S THE PERIOD OF TIME YOU WANT ME

8      TO LOOK?

9              THE COURT:  YES, PLEASE.

10             THE CLERK:  SO MAYBE JANUARY?

11             THE COURT:  SO WHAT I WOULD HAVE YOU DO IS HAVE YOU

12     KEEP THE SAME BRIEFING SCHEDULE ON THE DAUBERTS AND DISPOSITIVE

13     MOTIONS, BECAUSE THEY'LL HAVE TO BE PREPARED AT THE SAME TIME,

14     EVEN IF THE ORDERS COME OUT SEQUENTIALLY.

15         AND I'D LIKE TO STRONGLY ASK THAT THERE NOT BE A PROVE IT

16     UP SUMMARY JUDGMENT MOTION THIS TIME.  THAT JUST MAKES THE

17     COURT HAVE TO GO THROUGH EVERY SINGLE CAUSE OF ACTION IN THE

18     CASE.

19             THE CLERK:  WE'VE GOT EITHER, YOU KNOW, DISPOSITIVE

20     MOTION DATES OR PRETRIAL CONFERENCES SET, YOU KNOW, THROUGHOUT

21     JANUARY.  I MEAN, I COULD MAYBE FIND --

22             THE COURT:  MAYBE IN FEBRUARY THEN, EARLY FEBRUARY?

23             THE CLERK:  FEBRUARY 6TH WE HAVE TWO PRETRIALS.  THEY

24     MAY BOTH GO AWAY, DURVASULA --

25             THE COURT:  YEAH.

```
 1            THE CLERK:  -- AND PARK TOWNSEND.

 2            THE COURT:  OKAY.  DURVASULA IS SETTLING.

 3            THE CLERK:  AND LAST DAY FOR DISPOSITIVES IN

 4     BURLINGTON VERSUS SCOTT.

 5            THE COURT:  YOU NEED THE DAUBERTS BEFORE YOU MAKE

 6     THAT ELECTION, RIGHT?  YOU NEED THAT?

 7            MR. REITER:  YES.

 8            MR. LEE:  YES.

 9            THE CLERK:  FEBRUARY 13TH WE HAVE TWO PRETRIALS, BOND

10     SAFEGUARD INSURANCE VERSUS BRANDENBURG AND SILVA VERSUS TECH

11     SYSTEMS.

12        BUT NO LAST DAY FOR DISPOSITIVES.  THE ONLY ONE IS GARDEN

13     MEADOW AND THAT'S SETTLING.

14            THE COURT:  WELL, WHY DON'T WE SET THAT MAYBE AT THE

15     NEXT CMC?  WE'LL SET ANOTHER -- WE'LL SET ANOTHER HEARING DATE.

16        DECEMBER 19TH IS FULL, TOO, RIGHT?  I THINK SO.

17            THE CLERK:  YEAH.  THAT'S THE FINAL PRETRIAL IN

18     CREAGRI AND SOME LAST -- THREE CASES LAST DAY FOR DISPOSITIVES

19     AND TWO PRETRIALS.  THREE PRETRIALS COUNTING CREAGRI.

20            THE COURT:  ALL RIGHT.  WELL, WE'LL HAVE TO SET

21     ANOTHER DATE, BUT THE DAUBERTS WILL BE BRIEFED WITH THE SUMMARY

22     JUDGMENT.  WE'LL SET ANOTHER DATE SOMEWHERE IN BETWEEN

23     DECEMBER 12TH AND MARCH 5 TH.

24        OKAY.  SO WHEN DO YOU WANT TO COME BACK FOR A CMC?  WE

25     COULD DO IT JUNE 26TH, JULY 17TH, SEPTEMBER 18TH.  WHEN WOULD
```

1      YOU LIKE TO COME IN?

2            (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

3            MS. MAROULIS:  YOUR HONOR, WE'D LIKE TO COME IN AFTER

4      THE CLOSE OF FACT DISCOVERY.

5            THE COURT:  OKAY.  SO FACT DISCOVERY CLOSES ON

6      JULY 8TH.  SO WOULD YOU LIKE TO COME IN JULY 17TH?

7            MR. LEE:  DO YOU WANT TO DO IT BEFORE THE END OF FACT

8      DISCOVERY SO THAT WE CAN HAVE THE REPRESENTATIVE PRODUCT ISSUE

9      AND TALK ABOUT IT?

10           MS. MAROULIS:  I JUST KNOW THAT HALF OF IT IS GOING

11     TO BE FOR DEPOSITIONS.

12           MR. JOHNSON:  I THINK COMING IN AFTERWARDS WILL

13     ENABLE US TO KNOW WHERE THE DISCOVERY STANDS, WE'LL KNOW WHAT'S

14     BEEN PRODUCED, WHAT HASN'T BEEN, AND WE'LL HAVE A BETTER

15     UNDERSTANDING OF WHAT WE THINK ARE GOING TO BE THE RIGHT

16     REPRESENTATIVE PRODUCTS.

17        I THINK WE NEED TO GO THROUGH THE DISCOVERY TO HAVE THAT

18     AND HAVE THE DEPOSITIONS TAKEN.

19        AND SO DOING THAT IN PARALLEL IS IMPORTANT, BUT I THINK

20     COMING IN IN JULY TO TALK IT THROUGH WITH YOUR HONOR IS THE

21     PERFECT TIME.

22           MR. KREVITT:  THE PROBLEM IS WE HAVE TO REDUCE

23     PRODUCTS, AND THIS REPRESENTATIVE PRODUCT ISSUE WILL BE

24     IMPORTANT, AND WE MAY NEED -- IT MAY BE USEFUL TO HAVE THE

25     COURT'S FURTHER GUIDANCE.

1            MR. REITER:  WE COULD COME IN BY STIPULATION ON

2    MAY 29TH.

3            MR. KREVITT:  SOMETIME IN JUNE?

4            MR. JOHNSON:  MAY 29TH?  I MEAN, THAT'S WHEN WE WILL

5    BE APPRISING YOUR HONOR OF WHERE WE ARE AND WHAT'S GOING ON.

6            THE COURT:  UM-HUM.

7            MR. JOHNSON:  SO THERE'S STILL A LOT -- BASED ON THE

8    SCHEDULE THAT WE'RE TALKING ABOUT NOW, I MEAN, THE DEPOSITIONS

9    ARE GOING TO BE OCCURRING THROUGHOUT.

10            MS. MAROULIS:  THERE ARE GOING TO BE MULTIPLE

11    DEPOSITION DATES.

12            MR. KREVITT:  DID YOU HAVE A SPECIFIC JUNE DATE?

13            THE COURT:  IS JUNE 26TH AT 2:00 O'CLOCK --

14            MS. MAROULIS:  YOUR HONOR, SAMSUNG PREFERS JULY.

15            MR. KREVITT:  AS I SAID, YOUR HONOR, I THINK SOONER

16    IS BETTER SO THAT WE CAN ADDRESS THIS ISSUE.

17            THE COURT:  WE CAN DO IT JUNE 26TH.

18        OKAY.  ALL RIGHT.  I THINK WE'RE DONE.  IS THAT IT?  IS

19    THAT -- IS THERE ANYTHING ELSE?

20        IS THERE ANYTHING ELSE WE CAN -- WE'LL PUT THIS IN AN ORDER

21    AND FILE IT SO YOU HAVE IT.  OKAY?

22            MR. PRICE:  GIVE YOU A HIGH FIVE AND LEAVE?

23            THE COURT:  YES.  THANK YOU ALL.  I APPRECIATE IT.

24    THANK YOU.

25            MR. PRICE:  THANK YOU, YOUR HONOR.

1            MR. KREVITT:  THANK YOU, YOUR HONOR.

2            MR. LEE:  THANK YOU.

3            MS. MAROULIS:  THANK YOU, YOUR HONOR.

4        (THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____

    LEE-ANNE SHORTRIDGE, CSR, CRR
17  CERTIFICATE NUMBER 9595

18       DATED:  MAY 2, 2013

19

20

21

22

23

24

25