# EXHIBIT 11

# K&L|GATES

K&L Gates LLP
1601 K Street NW
Washington, DC  20006-1600

T 202.778.9000    www.klgates.com

January 14, 2010

**CBI** _10 - 097_

Eric C. Rusnak
D  202.778.9212
eric.rusnak@klgates.com

> DOCKET
> NUMBER
>
> 2706
> -------------------------
> Office of the
> Secretary
> Int'l Trade Commission

**VIA HAND DELIVERY**

The Honorable Marilyn R. Abbott
Secretary
U.S. International Trade Commission
500 E Street S.W., Room 112
Washington, DC 20436

Re:   <u>Certain Mobile Telephones and Wireless Communication Devices Featuring Digital
Cameras, and Components Thereof</u>, Inv. No. 337-TA-_____

Dear Secretary Abbott:

Enclosed for filing on behalf of Complainant Eastman Kodak Company ("Kodak")
are the following documents in support of Kodak's request that the Commission commence
an investigation under Section 337 of the Tariff Act of 1930, as amended.  A request for
treatment of Confidential Exhibits 13, 25, 27, 30, 31, 32, and 33 is included with this filing.

The Exhibits to the Complaint contain certified copies of the asserted patent and the
assignment of that patent.  Appendix A to the Complaint contains a certified copy of the
prosecution history for the asserted patent.

Accordingly, Kodak submits the following documents:

1.    An original and twelve (12) copies of Kodak's verified Complaint pursuant to
19 C.F.R. 201.6(c) and 210.8(a) (original and one copy unbound, without tabs,
pursuant to 19 C.F.R. 201.8(d));

2.    An original and six (6) copies of the confidential version of the exhibits to the
Complaint pursuant to 19 C.F.R. 201.6(c) and 210.8(a) (original and one copy
unbound, without tabs, pursuant to 19 C.F.R. 201.8(d));

3.    An original and six (6) copies of the nonconfidential version of the exhibits to
the Complaint pursuant to C.F.R. 210.4(f)(3)(i) and 210.8(a) (original and one
copy unbound, without tabs, pursuant to 19 C.F.R. 201.8(d));

4.    Three (3) additional copies of the Complaint and the accompanying
nonconfidential exhibits for service upon proposed respondents; and three (3)

K&L|GATES

The Honorable Marilyn R. Abbott
January 14, 2010
Page 2

   additional copies of the confidential exhibits for service upon counsel for the
   respondents once appropriate subscriptions to a protective order have been
   filed, pursuant to 19 C.F.R. 210.8(a);

5.   One (1) additional copy of the Complaint and the accompanying
     nonconfidential exhibits for service on the embassy of Canada, pursuant to 19
     C.F.R. 210.8(a);

6.   One (1) certified copy of U.S. Patent No. 6,292,218 ("the '218 patent") is
     included as Exhibit 1 to the Complaint;

7.   Certified copies of the assignments for the '218 patent are included as Exhibit
     11 to the Complaint;

8.   One (1) certified copy and three (3) copies (on CDs) containing Appendix A,
     which is the U.S. Patent and Trademark Office prosecution history for the
     '218 patent, pursuant to 19 C.F.R. 210.12(c)(1);

9.   Four (4) copies (on CDs) containing Appendix B, which includes all technical
     references mentioned in the prosecution history for the '218 patent, pursuant
     to 19 C.F.R. 210.12(c)(2); and

10.  A letter and certification pursuant to 19 C.F.R. 201.6(b) and 210.5(d)
     requesting confidential treatment of Confidential Exhibits 13, 25, 27, 30, 31,
     32, and 33.

   Please note that the signature on the Complaint's Verification submitted herewith is a
photocopy. An original signature page will be submitted shortly.

   Thank you for your attention to this matter. If you have any questions, please call me
at 202-778-9212.

                              Respectfully Submitted,

                              *E C Rusnak*

                              Eric C. Rusnak

                              Counsel for Complainant
                              Eastman Kodak Company

Enclosures

# K&L|GATES

K&L Gates LLP
1601 K Street NW
Washington, DC  20006-1600

T 202.778.9000    www.klgates.com

## REQUEST FOR CONFIDENTIAL TREATMENT

January 14, 2010

Eric C. Rusnak
D 202.778.9212
eric.rusnak@klgates.com

## VIA HAND DELIVERY

The Honorable Marilyn R. Abbott
Secretary
U.S. International Trade Commission
500 E Street S.W., Room 112
Washington, DC 20436

Re:    Certain Mobile Telephones and Wireless Communication Devices Featuring Digital
       Cameras, and Components Thereof, Inv. No. 337-TA_____

Dear Secretary Abbott:

In accordance with the requirements of 19 C.F.R. § 201.6 concerning Confidential Business Information, Complainant Eastman Kodak Company ("Kodak") hereby requests confidential treatment of the business information contained in Confidential Exhibits 13, 25, 27, 30, 31, 32, and 33.

The information for which confidential treatment is sought is proprietary commercial and technical information, specifically:

1.    Kodak licenses to the '218 patent (Exhibit 13);

2.    Receipt for Purchase of RIM Blackberry Bold 9700 (Exhibit 25);

3.    Receipt for Purchase of Apple iPhone 3GS (Exhibit 27);

4.    Amounts invested by and Number and Location of employees in Kodak in R&D of digital cameras (Exhibit 30);

5.    Revenues for Kodak's Consumer Digital Imaging Group (Exhibit 31);

6.    Kodak's Expenditures and Investment in its licensing program for Digital Imaging Patents, including the '218 patent (Exhibit 32); and

7.    Kodak's Revenues from its Licensing Program for Digital Imaging Patents, Including the '218 patent (Exhibit 33).

DC-1398002 v1

K&L|GATES

## **REQUEST FOR CONFIDENTIAL TREATMENT**

The Honorable Marilyn R. Abbott
January 14, 2010
Page 2

19 C.F.R. §§ 201.6(a)(1) and 201.6(b)(3)(i).

     The business information described herein qualifies as confidential business information because substantially identical information is not available to the public, and its disclosure would likely impair the Commission's ability to obtain information necessary to perform its statutory functions as well as cause substantial harm to the competitive position of Complainant.  19 C.F.R. §§ 201.6(a), (b)(3)(ii), (b)(3)(iii).

     Attached is the requisite certification relating to confidentiality.

     Thank you for your attention in this matter.  If you have any questions, please contact me at 202-778-9212.

     Respectfully Submitted,

     Eric C. Rusnak

     Counsel for Complainant
     Eastman Kodak Company

Attachment

## **CERTIFICATION**

I, Eric C. Rusnak, Attorney for Eastman Kodak Company, declare:

1.    I am duly authorized to execute this certification.

2.    I have reviewed Confidential Exhibits 13, 25, 27, 30, 31, 32, and 33, for which confidential treatment has been requested.

3.    To the best of my knowledge, information, and belief, founded after reasonable inquiry, substantially identical information is not available to the public.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of January, 2010 in Washington, D.C.

_____
Eric C. Rusnak

DC-1398015 v1

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

In the Matter of

CERTAIN MOBILE TELEPHONES AND
WIRELESS COMMUNICATION
DEVICES FEATURING DIGITAL                          Inv. No. 337-TA-_____
CAMERAS, AND COMPONENTS
THEREOF

COMPLAINT UNDER SECTION 337 OF
THE TARIFF ACT OF 1930, AS AMENDED

Complainant:                                Proposed Respondents:
Eastman Kodak Company                       Research In Motion, Ltd.
343 State Street                            295 Phillip Street
Rochester, NY 14650                         Waterloo, Ontario
Tel: (800) 698-3324                         Canada N2L 3W8
Fax: (585) 724-9563                         Tel: (519) 888-7465


Counsel for Complainant:                    Research In Motion Corporation
Michael J. Bettinger                        122 West John Carpenter Parkway
Elaine Chow                                 Suite 430
Stephen M. Everett                          Irving, TX 75039
Curt Holbreich                              Tel: (972) 650-6126
K&L Gates LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111                     Apple Inc.
Tel: (415) 882-8200                         1 Infinite Loop
Fax: (415) 882-8220                         Cupertino, CA 95014
                                            Tel: (408) 996-1010

Michael J. Abernathy
Sanjay K. Murthy
Brian J. Arnold
K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 287-8000


Eric C. Rusnak
K&L Gates LLP
1601 K Street, NW
Washington, DC 20006
Tel: (202) 778-9000
Fax: (202) 778-9100

SF200415V4

Index of Nonconfidential Exhibits

| Exhibit Number | Item |
|---|---|
| 1 | Certified Copy of United States Patent 6,292,218 |
| 2 | Excerpts from Eastman Kodak Company 2008 Annual Report |
| 3 | Research In Motion Ltd. 2009 Annual Report |
| 4 | Research In Motion Ltd. 2009 Annual Information Form |
| 5 | Response to Verified Complaint of Respondents Research In Motion Ltd and Research In Motion Corp., ITC Inv. No. 337-TA-664 |
| 6 | Response of Research In Motion Ltd. and Research in Motion Corp. to the Complaint and Notice of Investigation, ITC Inv. No. 337-TA-667 Public Version |
| 7 | Response to Verified Complaint of Respondents Research In Motion Ltd and Research In Motion Corp., ITC Inv. No. 337-TA-683 Public Version |
| 8 | Apple 2009 10-K SEC Filing |
| 9 | Apple's First Amended Response to the Compliant and Notice of Investigation, ITC Inv. No. 337-TA-664 |
| 10 | Response of Apple Inc. to Complaint Under Section 337 of the Tariff Act of 1930, As Amended, and Notice of Investigation, ITC Inv. No. 337-TA-683 |
| 11 | Certified Copies of the Assignment Document for the '218 Patent |
| 12 | List of All Foreign Patents and All Foreign Patent Applications Corresponding to the '218 Patent and Prosecution Status |

| | |
|---|---|
| 14 | Claim chart applying claim 15 of the '218 Patent to the RIM BlackBerry Bold 9700 |
| 14 A-E | Supporting docs to Claim chart applying claim 15 of the '218 Patent to the RIM BlackBerry Bold 9700 |
| 15 | RIM "Contact a BlackBerry Reseller" web page |
| 16 | "Where to Buy BlackBerry SmartPhones" web page |
| 17 | RIM BlackBerry Bold 9700 SmartPhone User Guide |
| 18 | RIM BlackBerry Bold 9700 SmartPhone Safety and Product Information |
| 19 | Claim Chart applying independent Claim 15 of '218 patent to the Apple iPhone 3GS mobile device |
| 19 A-E | Supporting docs to Claim Chart applying independent Claim 15 of '218 patent to the Apple iPhone 3GS mobile device |
| 20 | http://www.apple.com/retail/storelist/ |
| 21 | http://www.apple.com/buy/locator/ using Zip Code 14650, location of Apple Store |
| 22 | More places to Buy Web Page from Apple Website |
| 23 | http://www.apple.com/buy/locator/ using Rochester, N.Y. |
| 24 | iPhone 3GS Important Product Information Guide |
| 26 | Photograph of RIM BlackBerry Bold 9700 |
| 28 | Photograph of Apple iPhone 3GS mobile device |
| 29 | Claim chart applying Claim 15 of '218 Patent |

| | |
|---|---|
| | to Kodak Z1085 IS zoom digital camera |
| 29 A-C | Supporting documents to Claim chart applying Claim 15 of '218 Patent to Kodak Z1085 IS zoom digital camera |

Confidential Exhibits

| Exhibit Number | Item |
|---|---|
| 13 | Kodak Licenses to the '218 patent |
| 25 | Receipt for Purchase of RIM  Blackberry Bold 9700 |
| 27 | Receipt for Purchase of Apple iPhone 3GS |
| 30A-B | Amounts invested by and Number and Location of employees in Kodak in R&D of digital cameras |
| 31 | Revenues for Kodak's Consumer Digital Imaging Group |
| 32A-B | Kodak's Expenditures and Investment in its licensing program for Digital Imaging Patents, including the '218 Patent |
| 33 | Kodak's Revenues from its Licensing Program for Digital Imaging Patents, Including the '218 Patent |

Appendices

| Exhibit Number | Item |
|---|---|
| A | Certified Prosecution History of the '218 Patent |

| B | Technical References in the Prosecution History of the '218 Patent |
|---|---|

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     THE PARTIES ......................................................................................................2

        A.      Complainant Kodak ..................................................................................2

        B.      Respondents RIM Ltd. and RIM Corp. .....................................................4

        C.      Respondent Apple.....................................................................................5

III.    NON-TECHNICAL DESCRIPTIONS OF THE PATENTED TECHNOLOGY.............6

        A.      Background ................................................................................................6

        B.      The Specification and Claims of the '218 Patent ......................................8

IV.     OWNERSHIP AND LICENSING OF THE '218 PATENT ...................................9

        A.      Background ................................................................................................9

        B.      Licensing of the '218 Patent .....................................................................9

V.      UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS – PATENT
        INFRINGEMENT .................................................................................................10

        A.      Infringement of the '218 Patent by RIM Ltd. and RIM Corp. ...................10

                1.      Direct Infringement .......................................................................11

                2.      Contributory Infringement..............................................................11

                3.      Inducement of Infringement ..........................................................12

        B.      Infringement of the '218 Patent by Apple ...............................................13

                1.      Direct Infringement .......................................................................14

                2.      Contributory Infringement..............................................................15

                3.      Inducement of Infringement ..........................................................16

VI.     IMPORTATION...................................................................................................17

        A.      Importation of  RIM Accused Products into the United States .................17

        B.      Importation of Apple Accused Products into the United States ...............17

        C.      HTSUS Classification ..............................................................................18

VII.    RELATED LITIGATION INVOLVING THE '218 PATENT ..................................18

VIII.   DOMESTIC INDUSTRY......................................................................................22

IX.     RELIEF................................................................................................................24

## I.      INTRODUCTION.

1.      Eastman Kodak Company ("Kodak" or "Complainant") files this Complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), based on the unlawful importation into the United States, the sale for importation, and/or the sale within the United States after importation of certain mobile telephones and wireless communication devices featuring digital cameras (hereinafter "mobile devices"), and components thereof.

2.      The proposed respondents (collectively, "Respondents") are Research In Motion, Ltd. ("RIM Ltd.") and Research In Motion Corporation ("RIM Corp.") (collectively, "RIM"); and Apple Inc. ("Apple").

3.      This Complaint is directed to certain accused products, including mobile devices, that infringe one or more of independent claim 15 and dependent claims 23, 24, 25, 26 and 27 of United States Patent No. 6,292,218 ("the '218 patent"). Upon further investigation and discovery, Kodak may identify additional accused products and/or seek to assert additional claims. A certified copy of the '218 patent is attached to this Complaint as Exhibit 1.

4.      The '218 patent and the asserted claims also are the subject of U.S. International Trade Commission Investigation No. 663. That investigation is assigned to Administrative Law Judge Charles C. Charneski. On or about December 17, 2009, ALJ Charneski issued an Initial Determination finding that the asserted claims of the '218 patent were not invalid or unenforceable, and that the claims were infringed. ALJ Charneski further found Kodak satisfied the domestic industry requirement for the '218 patent. Motions to terminate the investigation based on settlement agreements are pending.

1

5.      By this Complaint, Kodak seeks as permanent relief an order

excluding from entry into the United States all RIM and Apple mobile devices, and

components thereof, that infringe one or more of the asserted claims of the '218

patent ("Accused Devices").  Excluded from the definition of Accused Devices are

RIM and Apple mobile devices that do not feature digital cameras or components

thereof.  Kodak also seeks, pursuant to Section 337(f), permanent cease and desist

orders, prohibiting the importing, selling, marketing, advertising, distributing,

offering for sale or transferring (except for exportation) of Accused Devices or the

soliciting of U.S. agents or distributors for Accused Devices; or the aiding or abetting

in the importation, sale for importation, sale after importation, transfer or distribution

of Accused Devices.  Pursuant to Section 337(l), any such relief shall not apply to any

articles imported by or for the use of the United States with the authorization or

consent of the Government.

## II.      THE PARTIES.

### A.      Complainant Kodak.

6.      Complainant Kodak is a New Jersey corporation with its principal

place of business at 343 State Street, Rochester, New York 14650.  Kodak presently

has more than 19,000 employees.  Excerpts from Kodak's 2008 Annual Report, with

further information about the company, are attached to this Complaint as Exhibit 2.

7.      Founded in 1892, Kodak has a long history of innovation in

photography and image processing.  Among many other significant inventions,

Kodak and its founder, George Eastman, invented photographic plates in 1879, the

hand-held camera in 1888, and roll-up film in 1883.  Kodak engineers also designed

and built the camera that Neil Armstrong used on the first walk on the moon.

8.      Kodak's innovations have continued in the age of digital photography. In 1977, Kodak designed and built the first operating digital camera.  Since then, Kodak has invested billions of dollars into the research and development of digital imaging technology.  Between 2006 and 2008 alone, Kodak invested nearly $755 million in the research and development of its consumer digital imaging products, according to its most recent year-end reporting.  See Exhibit 2 (Kodak 2008 Annual Report) at 8.  Kodak's significant investment in research and development has resulted in a continuing stream of improvements to digital imaging technology -- improvements that have led to more than 1,000 Kodak patents in the field of digital imaging, including the'218 patent asserted in this Complaint.

9.      Kodak has invented many of the fundamental innovations used in virtually every digital camera today – including the Bayer color filter array, the first color megapixel sensor, the first effective color preview for a digital camera, the first color consumer digital camera, and the basic digital architecture utilized by nearly every present-day digital camera.  Indeed, Kodak Fellow Kenneth Parulski, a co-inventor of the '218 patent, has more than 160 patents to his name and is widely recognized as a pioneer in numerous digital camera technologies.

10.     The market has recognized the value of Kodak's digital cameras and supporting products.  In 2008, Kodak generated U.S. revenues of more than $1.81 billion from the sale of its consumer digital imaging products, according to its most recent year-end reporting.  See Exhibit 2 (Kodak 2008 Annual Report) at 27. Recognizing the value of Kodak's innovations, most competitors in the consumer

digital imaging space have taken licenses to Kodak's digital imaging patents, including the '218 patent.

**B.      Respondents RIM Ltd. and RIM Corp.**

11.      Respondent RIM Ltd., is a corporation organized under the law of Ontario, Canada, with its principal place of business at 295 Phillip Street, Waterloo, Ontario, Canada N2L 3W8.  RIM Ltd. is a designer, manufacturer and marketer of wireless solutions for the worldwide mobile communications market.  See Exhibit 3 (RIM Ltd. 2009 Annual Report) at 16.

12.      Respondent RIM Corp. is a corporation organized under the law of Delaware with its principal place of business at 122 W. John Carpenter Parkway, Irving, Texas 75039.  RIM Corp. is a wholly owned subsidiary of RIM Ltd.  See Exhibit 4 (RIM Ltd. 2009 Annual Information Form) at 5.

13.      The RIM Accused Devices are mobile devices that feature digital cameras.  See, e.g., Exhibit 4 (RIM Ltd. 2009 Annual Information Form) at 17-18. The RIM Accused Devices include, but are not necessarily limited to, the following models of mobile devices that feature digital cameras:  BlackBerry Tour; BlackBerry Storm 9530; BlackBerry Storm2 9550; BlackBerry Bold 9000, 9700; BlackBerry Curve 8300, 8310, 8320, 8330, 8350i, 8520, 8530, 8900; BlackBerry Pearl 8100, 8110, 8120, 8130; and BlackBerry Pearl Flip 8220, 8230.  In the fiscal year 2009, 63 percent of RIM Ltd.'s $11.0 billion in revenues were derived from the sales in the United States.  Exhibit 4 (RIM Ltd. 2009 Annual Information Form) at 16, 23.

14.      RIM Ltd. and/or RIM Corp. have Accused Devices manufactured and assembled at facilities located outside the United States, including, but not necessarily limited to, RIM Ltd.'s facility in Waterloo, Ontario, Canada.  Exhibit 4 (RIM Ltd.

2009 Annual Information Form) at 27.  On information and belief, RIM Ltd. and/or RIM Corp. also have Accused Devices manufactured and assembled at third-party facilities outside the United States, including, but not necessarily limited to, Mexico.

15.     RIM Ltd. and/or RIM Corp. import Accused Devices into the United States for sale, or sell these products for importation into the United States.  RIM Ltd. and RIM Corp. have admitted in previous ITC Investigations that they import and/or sell after importation into the United States mobile devices that feature digital cameras.  See Exhibit 5 (Response to Verified Complaint of Respondents Research In Motion Ltd. and Research In Motion Corporation, ITC Inv. No. 337-TA-664) at 7, 15; Ex. 6 (Response of Research In Motion Ltd. and Research In Motion Corp. to the Complaint and Notice of Investigation, ITC Inv. No. 337-TA-667 Public Version) at 4, 13, 28; Ex. 7 (Response to Verified Complaint of Respondents Research in Motion Ltd. and Research in Motion Corporation, ITC Inv. No. 337-TA-683 Public Version) at 24.  As set forth in detail in paragraphs 28-36 and the exhibits referenced therein, RIM's Accused Devices infringe the '218 patent.

## C.      Respondent Apple.

16.     Respondent Apple is a California corporation having its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  Among other things, Apple designs, manufactures, markets and sells mobile devices.  See Exhibit 8 (Apple 2009 10-K) at 1.

17.     The Apple Accused Devices are mobile devices that feature digital cameras.  See, e.g., Exhibit 8 (Apple 2009 10-K) at 4.  The Apple Accused Devices include, but are not necessarily limited to, the following models of mobile devices that feature digital cameras:  the iPhone 3G and iPhone 3GS.  Net worldwide revenue

and net sales of iPhones (including the 3G and 3GS models) and related products and services amounted to $6.8 billion in the fiscal year 2009, with iPhones handset unit sales (including the 3G and 3GS models) totaling 20.7 million.  See Exhibit 8 (Apple 2009 10-K) at 42.  These figures represented respective increases of 266% and 78% percent compared to revenue and net sales of $4.9 billion and handset sales of 9.1 million in fiscal year 2008.  See *id.*

      18.     Substantially all of Apple's Accused Devices are manufactured and assembled at facilities located in China.  See Exhibit 8 (Apple 2009 10-K) at 12.  Moreover, Apple has admitted in at least two previous ITC Investigations that it imports and/or sells after importation into the United States mobile devices that feature digital cameras.  See Exhibit 9 (Apple's First Amended Response to the Complaint and Notice of Investigation, ITC Inv. No. 337-TA-664) at 6; Exhibit 10 (Response of Apple Inc. to Complaint Under Section 337 of the Tariff Act of 1930, As Amended, and Notice of Investigation, ITC Inv. No. 337-TA-683) at 48.  As set forth in detail in paragraphs 37-45 below and the exhibits referenced therein, Apple's Accused Devices infringe the '218 patent.

## III.    NON-TECHNICAL DESCRIPTION OF THE PATENTED TECHNOLOGY.

### A.    Background.

      19.     Unlike traditional cameras (which capture a photographed scene using film), most digital cameras today capture images through the use of an image sensor such as a "charge-coupled device" ("CCD") or "complementary metal-oxide-semiconductor" ("CMOS") sensor, which use an array of millions of light-sensitive photosensors (called "pixels") that generate and collect a charge from light passing through the camera lens when the user presses the shutter button.  Because a CCD or

CMOS sensor is unable to distinguish the quantities of the different colors of the incoming light, each sensor pixel is typically coated with either a green, red, or blue filter (called a "color filter array" or CFA) that allows each pixel to measure the amount of either red, green or blue light at its location on the sensor. That information is used to determine the specific colors appearing in the captured scene. The captured color pixel information (initially stored in the CCD or CMOS sensor as an electrical charge) is then converted and processed to generate the data that represents the color image that eventually is stored as a digital data file in the camera's internal or removable memory.

20. Today's digital cameras also include a display that allows a user to preview the scene before initiating capture of an image as a digital picture, and to subsequently view the captured image. The display has a much lower resolution than the resolution of the CCD and/or CMOS sensor, or the resolution of the image stored in the digital data file.

21. The resolution of a captured image depends, in part, on the size of the array of pixels on a digital camera's CCD or CMOS sensor. A digital camera containing a 50-megapixel CCD[1] or CMOS sensors (meaning the CCD or CMOS can divide a scene into as many as 50 million different pixels), for example, can capture images at a far higher resolution than the 3-megapixel, 5-megapixel, and 8-megapixel CCDs or CMOSs commonly found in many digital cameras today. Although a high resolution image will contain greater detail than a lower resolution image (of the

---

[1]     Kodak announced the first 50-megapixel CCD in July 2008.

same scene), the high resolution image also requires more processing power and more storage space.

**B.      The Specification and Claims of the '218 Patent.**

22.      The '218 patent describes and claims an image capture and processing device with certain components for "previewing" the scene to be captured.  The patent discloses the first effective color preview for a digital camera – a key feature that requires managing the enormous amounts of data present in color images, accounting for the complex manner in which the color pixels of an image interact, and processing image data at speeds sufficient to present moving images on a display that accurately reflect the scene to be captured.

23.      The patent describes two functions.  A motion preview function permits the device to produce preview images representing the scene to be captured. A still image function enables the device to capture high quality still images.  The motion preview function uses a relatively simple image processing technique that outputs images at a higher rate and allows moving images to be displayed prior to image capture.  The still image function uses a more complex digital image processing technique that outputs images at a slower rate but enables the device to capture high quality still images.  In practice, the preview images are displayed to be used to frame and compose the scene to be captured.  When the capture button is used to take a picture, the device switches to the higher resolution still image function and the processor generates the digital image data that is stored in a digital memory.

24.      It is now common for image capture and processing devices to preview images on a liquid crystal display ("LCD") integrated into the device before capture.  On many such devices, particularly those now featured in mobile devices,

the LCD replaces the traditional optical viewfinder found on older digital or film

cameras.

## IV.   OWNERSHIP AND LICENSING OF THE '218 PATENT.

### A.   Background.

25.     On September 18, 2001, the Patent Office duly and legally issued the

'218 patent, which is entitled "Electronic Camera for Initiating Capture of Still

Images While Previewing Motion Images," and names Kenneth A. Parulski and

Timothy J. Tredwell as inventors.  The '218 patent issued from U.S. Patent

Application Serial No. 08/895,094, filed July 16,1997 ("the '094 application"), which

is a division of U.S. Patent Application Serial No. 08/367,399, filed on December 30,

1994.  The prosecution history for the '218 patent and copies of each patent and the

applicable pages of each technical reference mentioned in that prosecution history are

being submitted with this Complaint.  See Appendices A and B.

26.     Kodak is the owner, by valid assignment, of all right, title and interest

in and to the '218 patent (the inventors assigned all right, title and interest in the '094

application to Kodak).  The assignment was recorded with the U.S. PTO on March 6,

1995 (Reel/Frame:  007452/0575).  A Certified copy of the assignment document for

the '218 patent is attached to the Complaint as Exhibit 11.

27.     A list of all foreign patents corresponding to the '218 patent and their

prosecution status is set forth in Exhibit 12.  There are no pending, abandoned,

rejected or withdrawn foreign applications.

### B.   Licensing of the '218 Patent.

28.     Kodak has licensed the '218 patent to the companies listed in

Confidential Exhibit 13.  The license agreements are subject to confidentiality

requirements.  As a result, Kodak will notify the licensees of the filing of this

complaint and intends to submit the licenses thereafter.

## V.   UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS – PATENT INFRINGEMENT.

### A.   Infringement of the '218 Patent by RIM Ltd. and RIM Corp.

29.    RIM Ltd. and RIM Corp. directly infringe, contribute to infringement,

and induce infringement with respect to at least claims 15, 23, 24, 25, 26 and 27 of

the '218 patent.  RIM Ltd. and RIM Corp. do so by the importation and/or selling

after importation into the United States of RIM Accused Devices that directly

infringe, contribute to infringement, and induce infringement either literally or under

the doctrine of equivalents with respect to one or more of claims 15, 23, 24, 25, 26

and 27 of the '218 patent.  The RIM Accused Devices include at least the following

models:  BlackBerry Tour; BlackBerry Storm 9530; BlackBerry Storm2 9550;

BlackBerry Bold 9000, 9700; BlackBerry Curve 8300, 8310, 8320, 8330, 8350i,

8520, 8530, 8900; BlackBerry Pearl 8100, 8110, 8120, 8130; and BlackBerry Pearl

Flip 8220, 8230.

30.    Kodak analyzed, as a representative RIM Accused Device, the

BlackBerry Bold 9700 mobile device and accompanying material to ascertain

whether it infringes the '218 patent.  A claim chart applying independent claim 15 of

the '218 patent to the BlackBerry Bold 9700 mobile device is attached to this

Complaint as Exhibit 14.  Materials supporting the claim chart analysis are attached

to this Complaint as Exhibits 14A-14E.

### 1.   Direct Infringement.

31.   RIM Ltd. and/or RIM Corp. sell and offer for sale RIM Accused Devices within the United States through, for example, wireless communication carriers (carrier partners) and through third-party distribution channels, including resellers.  See Exhibit 4 (RIM Ltd. 2009 Annual Information Form) at 22, 45; Exhibit 15 (RIM "Contact a BlackBerry Reseller" web page).  Kodak has purchased Accused Devices, in the United States, directly from the AT&T Store, 3144 Winton Road S, Rochester, N.Y.

32.   Upon information and belief, RIM Ltd. and/or RIM Corp. sell and offer for sale RIM Accused Devices to carrier partners and through third-party distribution channels, including resellers in the United States.  RIM Ltd. and RIM Corp. maintain on the RIM website a locator search function that allows potential buyers to identify RIM partner carriers who sell Accused Devices by product and carrier name.  See http://na.blackberry.com/eng/purchase/?regionId.   See Exhibit 16 (Where to Buy Blackberry SmartPhones web page for United States carriers).

33.   RIM Ltd. and/or RIM Corp. import into the United States the RIM Accused Devices.

34.   RIM Ltd. and/or RIM Corp., therefore, directly infringe claims 15, 23, 24, 25, 26 and 27 of the '218 patent through the importation for sale and/or sale after importation of RIM Accused Devices.

### 2.   Contributory Infringement.

35.   RIM Ltd. and/or RIM Corp. also contribute to infringement of (and thereby infringes) claims 15, 23, 24, 25, 26 and 27 of the '218 patent in violation of 35 U.S.C. § 271 by selling within the United States, offering for sale within the

United States, and/or importing components, including at least RIM Accused Devices and the non-staple constituent parts of those devices, that embody a material part of the inventions described in the '218 patent. The RIM Accused Devices are known by RIM Ltd. and RIM Corp. to be especially made or especially adapted for use in infringement of the '218 patent. RIM Accused Devices are not staple articles or commodities suitable for substantial, non-infringing use.

36.     Specifically, RIM Ltd. and/or RIM Corp. sell RIM Accused Devices, with knowledge that the devices infringe, through its carrier partners and through third-party distribution channels, including resellers, to consumers. Consumers of RIM Accused Devices directly infringe the '218 patent

37.     RIM Ltd. and RIM Corp. admit in their declaratory relief complaint filed in Civil Action No. 3:08-cv-02075-K in the United States District Court for the Northern District of Texas that they were on notice of the '218 patent by no later than receipt of a letter from Kodak, dated August 16, 2007, in which Kodak alleges, among other things, infringement of the '218 patent by RIM mobile devices. Moreover, upon information and belief, RIM Ltd. and RIM Corp. had actual knowledge of the '218 patent in advance of the August 16, 2007 letter.

**3.     Inducement of Infringement.**

38.     RIM Ltd. and RIM Corp. also have induced, and continue to induce, others to infringe the '218 patent in violation of 35 U.S.C § 271, by encouraging and facilitating others to perform actions known by RIM Ltd. and RIM Corp. to be acts of infringement of the '218 patent with intent that those performing the acts infringe the '218 patent. RIM Ltd. and RIM Corp., upon information and belief, contract for the distribution of RIM Accused Devices for sale such as by carrier partners and resellers,

market RIM Accused Devices, create and distribute user manuals for RIM Accused Devices, and supply warranty coverage for RIM Accused Devices sold in the United States.  See Exhibit 4 (RIM Ltd. 2009 Annual Information Form) at 22, 45; Exhibit 15 (RIM "Contact a BlackBerry Reseller" web page); Exhibit 16 (Where to Buy Blackberry SmartPhones web page for United States carriers); Exhibit 17 (RIM BlackBerry Bold 9700 SmartPhone User Manual); Exhibit 18 (RIM Blackberry Bold 9700 SmartPhone Safety and Production Information).

39.    RIM Ltd. and RIM Corp. admit in their declaratory relief complaint filed in Civil Action No. 3:08-cv-02075-K in the United States District Court for the Northern District of Texas that they were on notice of the '218 patent by no later than receipt of a letter from Kodak, dated August 16, 2007, in which Kodak alleges, among other things, infringement of the '218 patent by RIM mobile devices. Moreover, upon information and belief, RIM Ltd. and RIM Corp. had actual knowledge of the '218 patent in advance of the August 16, 2007 letter.

**B.     Infringement of the '218 Patent by Apple.**

40.    Apple directly infringes, contributes to infringement, and induces infringement with respect to one or more of claims 15, 23, 25, 26 and 27 of the '218 patent.  Apple does so by the importation and/or selling after importation into the United States Apple Accused Devices that directly infringe, contribute to infringement, and induce infringement either literally or under the doctrine of equivalents with respect to claims 15, 23, 25, 26 and 27 of the '218 patent.  The Apple Accused Devices include at least the iPhone 3G and iPhone 3GS.

41.    Kodak analyzed, as a representative Apple Accused device, the iPhone 3GS mobile device and accompanying material to ascertain whether it infringes the

13

'218 patent.  A claim chart applying independent claim 15 of the '218 patent to the iPhone 3GS mobile device is attached to this Complaint as Exhibit 19.  Materials supporting the claim chart analysis are attached to this Complaint as Exhibits 19A-19E.

### 1.      Direct Infringement.

42.      Apple sells and offers for sale Apple Accused Devices within the United States, for example, through its own retail and online stores.  See Exhibit 8 (Apple 2009 10-K) at 1-2, 19.  As of September 26, 2009, Apple had 217 retail stores in the United States.  See Exhibit 8 (Apple 2009 10-K) at 2.  A listing of its U.S. retail stores that Apple advertises as selling at least the iPhone 3G and iPhone 3GS is attached as Exhibit 20 to the Complaint (Apple Retail Store web page).  Kodak has purchased Apple Accused Devices in the United States directly from Apple Store No. 240, 7979 Pittsford-Victor Road in Victor, N.Y., located about 12 miles southeast of Kodak's headquarters in Rochester, NY.  A copy of a printout from the Apple website showing the location of the Apple store in Victor, N.Y., is attached as Exhibit 21.

43.      Apple also sells and offers for sale Apple Accused Devices to cellular network carriers' distribution channels and third-party resellers in the United States. See Exhibit 8 (Apple 10-K) at 19.  These carriers, distributors and resellers include, among others, AT&T, Best Buy, Radio Shack and WalMart.  See Exhibit 22. (More Places to Buy web page from Apple website).  Apple maintains on its website a store locator that allows potential buyers to search by zip code or city and generate a list of Apple stores, carriers and other third parties who sell iPhone products.  See http://www.apple.com/buy/locator/.  An example search for stores selling Apple

Accused Devices in Rochester, N.Y., the home of Kodak, shows five AT&T

locations.  See Exhibit 23 (Apple Store Locator web page for Rochester, N.Y.).

       44.      Apple imports into the United States Apple Accused Devices.

       45.      Apple, therefore, directly infringes claims 15, 23, 25, 26 and 27 of the

'218 patent through its importation for sale and/or sale after importation of Apple

Accused Devices.

### 2.       Contributory Infringement.

       46.      Apple also contributes to infringement of (and thereby infringes)

claims 15, 23, 25, 26 and 27 of the '218 patent in violation of 35 U.S.C. § 271 by

selling within the United States, offering for sale within the United States, and/or

importing components, including at least Apple Accused Devices and the non-staple

constituent parts of those devices, that embody a material part of the inventions

described in the '218 patent.  The Apple Accused Devices are known by Apple to be

especially made or especially adapted for use in infringement of the '218 patent.  The

Apple Accused Devices are not staple articles or commodities suitable for substantial,

non-infringing use.

       47.      Specifically, Apple sells Apple Accused Devices, with knowledge that

the devices infringe, through a distribution network to network carriers, third-party

resellers and consumers.  Consumers of Apple Accused Devices directly infringe the

'218 patent.

       48.      Apple had knowledge of the '218 patent by no later than on or about

October 14, 2008, when representatives of Apple attended a presentation by Kodak of

its license program related to its camera phone patent portfolio of which the '218

patent is known to be a key component.  Moreover, upon information and belief,

Apple had actual knowledge of the '218 patent in advance of the licensing program presentation.

### 3.    Inducement of Infringement.

49.    Apple also has induced, and continues to induce, others to infringe the '218 patent in violation of 35 U.S.C § 271, by encouraging and facilitating others to perform actions known by Apple to be acts of infringement of the '218 patent with intent that those performing the acts infringe the '218 patent.  Apple contracts for the distribution of Apple Accused Devices for sale by retail sales outlets, cellular network carriers distribution channels and third-party resellers; markets Apple Accused Devices; creates and distributes user manuals for Apple Accused Devices; and supplies warranty coverage for Apple Accused Devices sold in the United States.  See Exhibit 8 (2009 Apple 10K) at 12, 36; Exhibit 22 (More Places to Buy web page from Apple website); Exhibit 23 (Apple Store Locator web page for Rochester, N.Y.); Exhibit 24 (iPhone 3GS Important Product Information Guide).

50.    Apple had knowledge of the '218 patent by no later than on or about October 14, 2008, when representatives of Apple attended a presentation by Kodak of its license program related to its camera phone patent portfolio of which the '218 patent is known to be a key component.  Moreover, upon information and belief, Apple had actual knowledge of the '218 patent in advance of the licensing program presentation.

## VI.   IMPORTATION.

### A.   Importation of RIM Accused Products into the United States.

51.   RIM Ltd. and RIM Corp. are importing, selling for importation, and/or selling within the United States after importation RIM Accused Devices that infringe one or more of claims 15, 23, 24, 25, 26 and 27 of the '218 patent.

52.   RIM Ltd. and RIM Corp. offer RIM Accused Devices for sale to carrier partners and resellers of mobile devices with the knowledge and expectation that they intend to sell such RIM Accused Devices within the United States.

53.   Kodak has obtained in the United States RIM Accused Devices that have been imported.  For example, Kodak has obtained a RIM BlackBerry Bold 9700 mobile device.  A copy of the sales receipt for this mobile device purchased at the AT&T Store, 3144 Winton Road S, Rochester, N.Y., on December 2, 2009, is attached to this Complaint as confidential Exhibit 25.

54.   As shown in the photograph included in Exhibit 26, the physical casing of the BlackBerry Bold 9700 mobile devices is marked as "Made in MEXICO."

### B.   Importation of Apple Accused Products into the United States.

55.   Apple imports, sells for importation, and/or sells within the United States after importation Apple Accused Devices that infringe one or more of claims 15, 23, 25, 26 and 27 of the '218 patent.

56.   Apple also offers Apple Accused Devices for sale to cellular network carriers' distribution channels and third-party resellers with the knowledge and expectation that they intend to sell such Apple Accused Devices within the United States.

57.     Kodak has obtained in the United States Apple Accused Devices that have been imported.  For example, Kodak has obtained the Apple iPhone 3GS mobile device.  A copy of the sales receipt for the Apple iPhone 3GS mobile device, purchased at Apple Store No. 240, 7979 Pittsford-Victor Road in Victor, N.Y., on September 9, 2009, is attached to this Complaint as confidential Exhibit 27.

58.     As shown in the photograph included in Exhibit 28, the physical casing of the Apple iPhone 3GS mobile device is marked as "Assembled in China."

## C.     HTSUS Classification

59.     Upon information and belief, the RIM Accused Devices and the Apple Accused Devices may be classified under at least the following subheading of the Harmonized Tariff Schedule of the United States: 8517.12.0050.

## VII.   RELATED LITIGATION INVOLVING THE '218 PATENT.

60.     On or about March 8, 2004, Kodak filed a complaint for patent infringement against Sony Corporation; Sony Corporation of America; and Sony Electronics Inc. in Civil Action No. 6:04-cv-6095-MAT-JWF in the United States District Court for the Western District of New York, asserting infringement of the '218 patent, among others.  Kodak added Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc. as defendants by an amended complaint, dated July 16, 2004.  The parties later entered into separate settlement and license agreements that included a royalty bearing license to Kodak.  The district court dismissed all claims and counterclaims in the case with prejudice on January 3, 2007.

61.     On or about July 25, 2007, Kodak filed a complaint for patent infringement against Matsushita Electric Industrial Company, Ltd.; Panasonic

Corporation of North America; Victor Company of Japan, Ltd. (JVC), and JVC

Americas Corporation in Civil Action No. 6:07-CV00352-LED in the United States

District Court for the Eastern District of Texas, asserting infringement of the '218

patent, among others.  Before an answer was filed, Kodak entered into separate

settlement and license agreements with the defendants.  The license agreements were

royalty bearing to Kodak.  The district court dismissed all claims with prejudice on

January 8, 2008.

   62. On or about November 17, 2008, Kodak filed a complaint for patent

infringement against Samsung Electronics Company, Ltd.; Samsung Electronics

America, Inc.; Samsung Telecommunications America, LLC; LG Electronics, Inc.;

LG Electronics USA, Inc.; and LG Electronics MobileComm USA in Civil Action

No. 08-CV-6511T in the United States District Court for the Western District of New

York, asserting infringement of two patents, including the '218 patent.  The action

was stayed at the request of defendants.  On December 4, 2009, Kodak announced

that it had entered into a royalty bearing license agreement with LG Electronics, Inc.,

and that the parties agreed to conclude their patent litigation.  On or about December

22, 2009, the claims pending against the LG defendants were dismissed in Civil

Action No. 08-CV-6511T.  On December 23, 2009, Kodak announced that it had

agreed to negotiate settlement and license agreements with Samsung Electronics Co.,

Ltd., and that Samsung had agreed to make a non-refundable payment to Kodak in

2009 to be credited toward future royalty payments to Kodak.  On January 11, 2010,

Kodak announced that it had entered into a royalty bearing license agreement with

Samsung Electronics Co. Ltd. and a separate settlement agreement that included
settlement of the patent litigation between the parties.

63.     On November 17, 2008, Kodak filed a complaint for violation of
Section 337 against Samsung Electronics Company, Ltd.; Samsung Electronics
America, Inc.; Samsung Telecommunications America, LLC; LG Electronics, Inc.;
LG Electronics USA, Inc.; and LG Electronics MobileComm USA in the United
States International Trade Commission, asserting infringement of claims 15, 23, 24,
25, 26 and 27 of the '218 patent, among others.  On December 12, 2008, the
Commission instituted an investigation based on the Complaint captioned Certain
Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras,
and Components Thereof, USITC Investigation No. 337-TA-663.  A hearing on that
matter was held before Administrative Law Judge Carl C. Charneski commencing on
October 5, 2009, and ending on October 16, 2009.  On December 4, 2009, Kodak
announced that it had entered into a royalty bearing license agreement with LG
Electronics, Inc., and that the parties agreed to conclude their patent litigation.  On or
about December 16, 2009, Kodak and the LG respondents submitted a motion to
terminate the Investigation as to the LG respondents.  The motion is pending.  On or
about December 17, 2009, ALJ Charneski issued an Initial Determination finding,
among other things, that the asserted claims of the '218 patent (including claims 15,
~~23, 24, 25, 26 and 27) were not invalid or unenforceable, and that the Samsung~~
respondents' accused products infringed the asserted claims.  ALJ Charneski further
found the domestic industry requirement was satisfied for the '218 patent.  ALJ
Charneski concluded a violation of Section 337 of the Tariff Act of 1930, as

amended, 19 U.S.C. § 1337, had occurred.  On or about December 23, 2009, ALJ

Charneski issued a Recommended Determination on Remedy and Bonding.  On

December 23, 2009, Kodak announced it had agreed to negotiate settlement and

license agreements with Samsung Electronics Co., Ltd., and that Samsung had agreed

to make a non-refundable payment to Kodak in 2009 to be credited toward future

royalty payments to Kodak.  On or about January 8, 2010, Kodak and the Samsung

respondents submitted a confidential motion to terminate the Investigation as to the

Samsung respondents based on a settlement agreement.  That motion is pending.  On

January 11, 2010, Kodak announced that it had entered into a royalty bearing license

agreement with Samsung Electronics Co. Ltd.  Kodak further announced that the

license and settlement become effective upon termination of the ITC action.

64.     On or about November 20, 2008, RIM Ltd., and RIM Corp. filed a

declaratory judgment action against Kodak in Civil Action No. 3:08-cv-02075-K in

the United States District Court for the Northern District of Texas seeking a

determination that they did not infringe the '218 patent, among others, and that the

'218 patent, among others, was invalid and unenforceable.  On or about February 17,

2009, Kodak filed a counterclaim against RIM Ltd. and RIM Corp. alleging

infringement of the '218 patent, among others.  The case is pending.  The Court has

scheduled a Markman hearing for February 22, 2010.

65.     On or about July 31, 2009, an application for ex parte re-examination

of the '218 patent was filed with the United States Patent and Trademark Office

("USPTO").  On or about September 25, 2009, a re-examination of the '218 patent

was ordered.  No further action on the re-examination has been taken by the USPTO.

66.    Concurrent with the filing of this complaint, Kodak filed a complaint for patent infringement against Apple Inc., in the United States District Court for the Western District of New York.  The complaint includes an assertion of infringement of the '218 patent.

## VIII.  DOMESTIC INDUSTRY.

67.    Pursuant to Section 337(a)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, a domestic industry exists in connection with the '218 patent.

68.    All of Kodak's digital cameras embody the invention of at least independent claim 15 of the '218 patent.  Attached to this Complaint as Exhibit 29 is a claim chart showing how the Kodak Z1085 IS digital camera meets all limitations of claim 15 of the '218 patent.  Materials supporting the claim chart analysis are attached to this Complaint as Exhibits 29A-29C.  Although Kodak does not presently manufacture its digital cameras in the United States, Kodak employees in the United States have continuously developed advanced technologies to support the digital cameras that incorporate the inventions claimed in the'218 patent.  Confidential Exhibit 30A attached to this Complaint shows the amounts invested by Kodak in research and development in support of its digital cameras that incorporate the inventions claimed in the '218 patent, including that for the Z1085 IS camera, for the period from 2007 through the most recent reported quarter, ending September 30, 2009.  Confidential Exhibit 30B also shows the number and location of employees engaged in the same research for the period from 2006 through 2009.  The digital cameras that result from Kodak's research and development work have generated significant camera sales in the United States for Kodak.  Confidential Exhibit 31 shows the revenues for Kodak's Consumer Digital Imaging Group, which includes

digital camera sales, in the United States, for the period 2005 through the most recent

year-end reporting period of 2008.

69.     Kodak has invested significant amounts of capital in the United States

in licensing the '218 patent.  Kodak's investment in licensing includes use of

consultants to assist in licensing the '218 patent and asserting the '218 patent in

litigation.  Since 2001, Kodak has invested significant amounts of capital in its

licensing program, including litigation expenses.  In addition, Kodak has invested a

substantial amount of its own manpower in its licensing program, assigning

employees to identify potential licensees, to analyze potential licensee's products, to

negotiate licenses and to monitor licenses.  Kodak employs patent attorneys,

engineers, executives and assistants working on its licensing program, including for

the '218 patent.  The '218 patent is a key patent in the Kodak digital imaging patent

portfolio.  The '218 patent has been specifically asserted during licensing negotiations

in which licensees have agreed to take a license under Kodak's digital imaging patent

portfolio and is specifically highlighted in numerous license agreements.

70.     Confidential Exhibit 32A attached to this Complaint show the amounts

invested by Kodak in the United States on licensing its digital imaging technology,

including the '218 patent, through November 30, 2009.  Confidential Exhibit 32B

attached to this Complaint shows the salary costs and full time equivalent employees

and contractors engaged in Kodak's licensing program for its digital imaging

technology, including the '218 patent.  Confidential Exhibit 33 attached to this

Complaint shows Kodak's revenues for the most recent year-end reporting periods for

the years 2006-08 from licensing its digital imaging technology, including the '218 patent.

71.    In the Initial Determination in the 663 Investigation, ALJ Charneski found that Kodak satisfied the domestic industry requirement for the '218 patent.

## IX.    RELIEF

WHEREFORE, by reason of the foregoing, Kodak requests that the United States International Trade Commission:

a.    Institute an immediate investigation pursuant to Section 337(b)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to violations of that section based upon the unlawful importation into the United States, the sale for importation, and/or the sale within the United States after importation of Respondents' mobile devices that infringe one or more claims of the '218 patent;

b.    Render a determination that the importation, sale for importation, and/or sale after importation of Respondents' infringing mobile devices constitute one or more violations of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337;

c.    Issue a permanent exclusion order pursuant to Section 337(d) of the Tariff Act of 1930, as amended, excluding from entry into the United States all of Respondents' mobile devices that feature digital cameras or components thereof and that infringe one or more claims of the '218 patent.  Pursuant to Section 337(l), any such relief shall not apply to any articles imported by or for the use of the United States with the authorization or consent of the Government; and

d.    Issue permanent cease and desist orders pursuant to Section 337(f) of the Tariff Act of 1930, as amended, prohibiting the importing, selling, marketing, advertising, distributing, offering for sale or transferring (except for exportation) of any of Respondents' mobile devices

that feature digital cameras or components thereof and that infringe one or more claims of the '218 patent or the soliciting of U.S. agents or distributors for all such mobile devices; or the aiding or abetting in the importation, sale for importation, sale after importation, transfer or distribution of all such mobile devices.  Pursuant to Section 337(l), any such relief shall not apply to any articles imported by or for the use of the United States with the authorization or consent of the Government.

Dated: January 14, 2010                  Respectfully submitted,


_E. C. Rusnak_
_____

Counsel for Complainant:

Michael J. Bettinger
Elaine Chow
Stephen M. Everett
Curt Holbreich
K&L Gates LLP
Four Embarcadero Ctr., Ste. 1200
San Francisco, CA  94111
Tel: (415) 882-8200
Fax: (415) 882-8220

Michael J. Abernathy
Sanjay K. Murthy
Brian J. Arnold
K&L Gates LLP
70 West Madison St., Ste. 3100
Chicago, IL  60602-4207
Tel: (312) 372-1121
Fax: (312) 287-8000

Eric C. Rusnak
K&L Gates LLP
1601 K Street, NW
Washington, DC  20006
Tel: (202) 778-9000
Fax: (202) 778-9100

Counsel for Complainant
Eastman Kodak Company

VERIFICATION

I, Laura G. Quatelaam   V.P.   for Eastman Kodak Company and am duly

authorized to execute this complaint on behalf of Eastman Kodak Company. I have read the

Complaint and am aware of its contents. To the best of my knowledge, information, and belief,

formed after an inquiry reasonable under the circumstances, I hereby certify as follows:

1. The complaint is not being presented for any improper purpose, such as to harass or cause

   unnecessary delay or needless increase in the cost of the investigation.

2. The claims and other legal contentions in the complaint are warranted by existing law or

   nonfrivolous argument for the extension, modification, or reversal of existing law or the

   establishment of new law; and

3. The allegations and other factual contentions in the complaint have evidentiary support

   or, if specifically so identified, are likely to have evidentiary support after a reasonable

   opportunity for further investigation or discovery.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2010.