1                  IN THE UNITED STATES DISTRICT COURT

2                FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                           SAN JOSE DIVISION

4

5

   APPLE, INC.,                        )   CV-12-00630-LHK
6                                       )
                        PLAINTIFF,      )   SAN JOSE, CALIFORNIA
7                                       )
              VS.                       )   MAY 7, 2013
8                                       )
   SAMSUNG ELECTRONICS CO., LTD.,       )   PAGES 1-25
9  ET AL,                               )
                                        )
10                      DEFENDANT.      )

11

12                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE PAUL S. GREWAL
13                  UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:      GIBSON, DUNN & CRUTCHER, LLP
                             BY:  MARK LYON
17                           1881 PAGE MILL ROAD
                             PALO ALTO, CA 94304
18

19   FOR THE DEFENDANT:      QUINN EMANUEL
                             BY:  MICHAEL FAZIO
20                           MATTHEW WARREN
                             LINDSAY COOPER
21                           50 CALIFORNIA STREET, 22ND FL
                             SAN FRANCISCO, CA 94111
22

23   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED WITH COMPUTER.
24

25   OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185

```
1    SAN JOSE, CALIFORNIA                    MAY 7, 2013

2                    P R O C E E D I N G S

3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

4    WERE HELD:)

5               THE COURT:  MR. RIVERA, WOULD YOU CALL THE NEXT CASE,

6    PLEASE.

7               THE CLERK:  YES, YOUR HONOR.

8        CALLING APPLE, INC.  VERSUS SAMSUNG ELECTRONICS, ET AL.

9    CASE CV-12-630-LHK.

10       MATTER ON FOR PLAINTIFF'S MOTION TO COMPEL AND DEFENDANT'S

11   MOTION TO COMPEL.

12       PLEASE STATE YOUR APPEARANCES.

13              MR. FAZIO:  GOOD MORNING, YOUR HONOR.

14       MICHAEL FAZIO ON BEHALF OF THE SAMSUNG DEFENDANTS.

15              THE COURT:  GOOD MORNING.

16              MR. WARREN:  MATT WARREN ON BEHALF OF NONPARTY

17   GOOGLE, INC.

18              THE COURT:  GOOD MORNING.

19              MR. LYON:  MARK LYON ON BEHALF OF APPLE.

20              THE COURT:  MR. LYON, GOOD MORNING.

21              MS. COOPER:  LINDSAY COOPER ON BEHALF OF NONPARTY

22   GOOGLE.

23              THE COURT:  GOOD MORNING TO EACH OF YOU.

24       I UNDERSTAND FROM SOME FILING LAST NIGHT THAT CURRENTLY I

25   NOW HAVE ONLY APPLE'S MOTION TO COMPEL; IS THAT CORRECT?
```

```
1              MR. FAZIO:  THAT IS CORRECT, YOUR HONOR.

2              THE COURT:  I CERTAINLY WON'T CRITICIZE ANYONE FOR

3      TAKING MOTIONS OFF OF MY CALENDAR.

4          MR. LYON, IT'S YOUR MOTION SO I WILL BEGIN WITH YOU.  WHY

5      DON'T YOU TELL ME WHAT YOU HAVE IN MIND.

6              MR. LYON:  THANK YOU, YOUR HONOR.

7          I DON'T THINK I HAVE A LOT.  I WILL KEEP IT BRIEF BECAUSE

8      WE ARE DOWN TO A VERY NARROW ISSUE.  IT'S JUST A QUESTION OF

9      TRANSPARENCY.

10             THE COURT:  THE DIFF REPORT ISSUE HAS BEEN RESOLVED.

11             MR. LYON:  YES.  I THINK WE AGREE.  WE HAVE WITHDRAWN

12     THAT AS PART OF THE REPLY BRIEF.

13         IT'S JUST THIS TRANSPARENCY ISSUE.  WE WOULD LIKE TO HAVE

14     THE SEARCH TERMS AND CUSTODIANS THAT GOOGLE HAS USED TO SO WE

15     CAN UNDERSTAND THE SCOPE OF WHAT THEY HAVE SEARCHED.

16         WHAT WE ARE SEEING AS FAR AS THE DOCUMENT PRODUCTION IS

17     LESS DOCUMENTS THAN WHAT WE WOULD EXPECT GIVEN THE FACT THAT

18     GOOGLE HAS SAID THEY INDEPENDENTLY DEVELOP ALL OF THESE IDEAS,

19     ALL OF THESE FEATURES.  WE ARE SEEING VERY FEW DOCUMENTS ON

20     MOST FEATURES.

21             THE COURT:  CAN I ASK, AND AGAIN I APOLOGIZE FOR NOT

22     KNOWING THIS GIVEN HOW MUCH TIME I'VE SPENT IN THIS CASE.

23         ARE EACH OF THE FEATURES WE ARE TALKING ABOUT PLAINLY

24     REVEALED IN THE ANDROID DROPS THAT GOOGLE DEVELOPS AND MAKES

25     AVAILABLE ON THE WEB?
```

1          IN OTHER WORDS, DO YOU HAVE PUBLIC EVIDENCE THAT THE

2     FEATURES WERE IN FACT PUBLIC CONFIRMATION DROPPED AT GOOGLE AS

3     OPPOSED TO AT SAMSUNG?

4          MR. LYON:  WELL, I THINK YES AND NO.

5          LET ME PUT IT THIS WAY, FOR THE SOME OF THE PATENTS IT'S

6     VERY CLEAR IT'S ALL PART OF THE ANDROID CODE AND IT'S PART OF

7     WHAT GOES ON THE SAMSUNG PHONES.

8          OTHER PARTS THERE IS PORTIONS OF WHAT GOES INTO SAMSUNG

9     THAT WE ARE LOOKING INTO.  OR THERE ARE ADDITIONAL APPLICATIONS

10    FOR WHICH WE JUST RECEIVED CODE FROM GOOGLE THAT ARE REQUIRED

11    TO INTERACT WITH THE PUBLIC CODE.

12         BUT THAT ASIDE, I THINK IT'S VERY CLEAR THAT THEY ARE

13    ACTUALLY USING THIS IN ANDROID.  WE HAVE CONFIRMATION FROM THEM

14    OR THEY ARE SAYING THEY DEVELOPED THIS AS PART OF DIFFERENT

15    ANDROID BILLS.

16         SO WHAT WE ARE LOOKING FOR ARE THE DEVELOPMENT DOCUMENTS,

17    MARKETING, EMAILS, ALL THE THINGS YOU WOULD EXPECT TO SEE FROM

18    MOST ENGINEERS DEVELOPING THESE KINDS OF FEATURES.  SO WE ARE

19    NOT SEEING THAT.  SO WE HAVE CONCERNS THAT THEY ARE NOT DOING A

20    FULL SEARCH.

21         WE ASKED THEM, FRANKLY, EXPECTING THEM TO SAY OKAY.  WE

22    ASKED THEM TO HAVE THEIR SEARCH TERMS AND THE CUSTODIAN LISTS

23    THEY SEARCHED AND THEY REFUSED WHICH IS SURPRISING TO US.

24         BECAUSE WITH SAMSUNG, APPLE AND SAMSUNG HAVE BEEN

25    EXCHANGING THESE ALL ALONG FOR THE LAST TWO CASES, REALLY.

1    IT'S THE SAME ATTORNEYS, SAME LAW FIRM REPRESENTING GOOGLE.  SO

2    WE REALLY EXPECTED THIS NOT TO BE AN ISSUE, BUT IT IS

3    APPARENTLY.  THAT ALSO CREATES A CONCERN FOR US.

4         INITIALLY THEY SAID IT WAS PRIVILEGED, THEY RETRACTED

5    THAT AND ARE NOT PUSHING THAT ISSUE NOW.

6         NOW THEY SAY IT'S BURDENSOME, BUT I DON'T SEE HOW IT

7    COULD POSSIBLY BE BURDENSOME TO GIVE US A LIST OF SEARCH TERMS

8    THE CUSTODIANS MUST DEVELOP IN ORDER TO SEARCH THESE DOCUMENTS

9    IN THE FIRST PLACE.

10        THE COURT:  SO IF I READ YOUR MOTION CORRECTLY, AT

11   LEAST THIS MOTION, YOU ARE NOT HERE ASKING THE COURT TO ORDER

12   ANY ADDITIONAL PRODUCTION OF DOCUMENTS.  THE ONLY SUBJECT OF

13   THE MOTION ARE THE SEARCH TERMS AND THE CUSTODIANS, NOTHING

14   MORE.

15        MR. LYON:  CORRECT.

16    AND WE ARE HOPEFUL, NOT CONFIDENT, BUT HOPEFUL WE WILL BE

17   ABLE TO WORK OUT DETAILS AFTER THAT.

18        THE COURT:  ALL RIGHT.

19    I THINK I UNDERSTAND YOUR POSITION.  I WILL GIVE YOU A

20   CHANCE FOR REBUTTAL.

21        MR. WARREN:  GOOD MORNING, YOUR HONOR.

22        THE COURT:  GOOD MORNING.

23        MR. WARREN:  I WANT TO START BY POINTING OUT THEIR

24   MOTION DEPENDS ENTIRELY, AS I THINK MR. LYON HAS AGREED, ON THE

25   ALLOCATION THERE HAS BEEN SOME DEFICIENCY IN GOOGLE'S

```
 1    PRODUCTION.
 2        WE DON'T THINK THAT'S TRUE, AND I WILL JUST SAY A COUPLE OF
 3    THINGS.
 4        WE HAVE PRODUCED AN UNPRECEDENTED AMOUNT OF OUR
 5    CONFIDENTIAL SOURCE CODE IN THIS CASE.  THEY ACCUSED ONE DEVICE
 6    FOR WHICH WE HAVE SOURCE CODE, THE SAMSUNG GALAXY NEXUS.
 7        WE PRODUCED HUNDRED PERCENT OF SOURCE CODE FOR A HUNDRED
 8    PERCENT OF THE VERSIONS FOR THAT DEVICE.
 9        THEY HAVE ALSO ACCUSED, AS MR. LYON NOTED, SEVERAL OF OUR
10    PROPRIETARY APPLICATIONS.  WE HAVE PRODUCED A HUNDRED PERCENT
11    OF THE SOURCE CODE FOR A HUNDRED PERCENT OF THE VERSIONS WE
12    RELEASED FOR A HUNDRED PERCENT OF THOSE APPLICATIONS.
13        SO IF THEY ACCUSE ONE TINY, LITTLE, NARROW ASPECT OF
14    APPLICATION, WE PRODUCED ALL THE VERSIONS OF ALL THE SOURCE
15    CODE FOR THAT ENTIRE APPLICATION.
16        SO I DON'T THINK THERE'S ANY QUESTION ABOUT THE
17    COMPLETENESS OF OUR SOURCE CODE PRODUCTION.
18            THE COURT:  HE'S NOT ASKING FOR SOURCE CODE.
19            MR. WARREN:  HE'S NOT, BUT I WANT TO MAKE SURE THAT I
20    EMPHASIZE THAT BECAUSE I THINK THAT THERE'S AN OVERALL
21    ALLEGATION OF DEFICIENCY THAT I WANT TO MAKE SURE I REBUT.
22        HE HAS ALLEGED TWO SPECIFIC PROBLEMS WITH OUR PRODUCTION.
23    ONE, THEY SAY THERE'S A DEFICIENCY IN DESIGN DOCUMENTS.  AND I
24    WOULD LIKE TO -- IF IT'S ALL RIGHT, I WOULD LIKE TO HAND
25    MR. RIVERA TWO EXCERPTS FROM OUR PRODUCTION.
```

1          AND THESE ARE VERY SMALL EXCERPTS BECAUSE I'M TRYING TO

2     MINIMIZE ANY POTENTIAL WAIVER OF OUR CONFIDENTIALITY RIGHTS.

3          IF YOU LOOK, YOUR HONOR, AT THE FIRST DOCUMENT ENDING IN

4     PRODUCTION NUMBER 53028, APPLE ALLEGES THAT THIS IS NOT A

5     DESIGN DOCUMENT.  THAT IS ESSENTIALLY APPLE'S ATTORNEY'S

6     OPINION.  THIS IS THE FIRST PAGE OF A DOCUMENT, IT GOES ON

7     AFTER THAT.

8          I THINK -- YOUR HONOR, I WON'T READ IT OUT LOUD BECAUSE

9     IF I READ IT OUT LOUD IT WILL GO ON THE RECORD, BUT I THINK IF

10    YOUR HONOR LOOKS AT THAT YOU WILL SEE THAT THIS IS SOMETHING

11    THAT THE PERSON WHO WROTE THIS DOCUMENT INTENDED TO BE A DESIGN

12    DOCUMENT.

13         ESSENTIALLY WHAT WE HAVE IS THE IPSE DIXIT OF APPLE'S

14    ATTORNEYS WHO ARE SAYING THEY DON'T THINK IT'S A DESIGN

15    DOCUMENT.

16         TURNING TO THE JACKSON DOCUMENT WHICH IS BATES NUMBER

17    ENDING IN 27668, I'VE BLACKED OUT MOST OF IT, AGAIN JUST TO

18    MINIMIZE ANY POTENTIAL CONFIDENTIALITY WAIVER AND I WON'T READ

19    IT INTO THE RECORD.

20         APPLE HAS ALLEGED IN THEIR PAPERS THAT THERE ARE NO

21    DESIGN DOCUMENTS REGARDING THE KEY GUARD PROJECT.

22         AND I THINK IF YOU LOOK AT THIS, THIS IS A DOCUMENT THAT

23    THE --

24              THE COURT:  WHAT'S KEY GUARD REFER TO?

25              MR. WARREN:  WELL, LET'S GET TO THAT.     LET ME

1    FINISH MY SENTENCE.

2        THIS IS CLEARLY A DOCUMENT THAT THE AUTHORS OF THIS

3    DOCUMENT THOUGHT WAS A DESIGN DOCUMENT REGARDING THE KEY GUARD

4    PROJECT.

5        APPLE'S ATTORNEYS APPARENTLY DISAGREE.  BUT THE OPINION

6    OF APPLE'S ATTORNEYS AS TO WHAT CONSTITUTES A GOOGLE

7    ENGINEERING DESIGN DOCUMENT SEEMS INSUFFICIENT TO ME TO CREATE

8    A DEFICIENCY.

9        PART OF THE -- AND YOUR QUESTION LEADS RIGHT INTO MY NEXT

10   POINT.  THEY SAY THAT THERE ARE AN INSUFFICIENT NUMBER OF

11   DOCUMENTS CONTAINING THE WORD KEY GUARD.

12       THEY SAY THERE ARE 5.  WE SEARCHED, WE FOUND 42.  SOME OF

13   THEM ARE DUPLICATES, BUT IT'S CERTAINLY MORE THAN 5.

14       SO PUTTING ASIDE THE FACTUAL ISSUE, WHAT THEY CITE ON

15   PAGE 7 OF THEIR MOTION AND PAGE 2 OF THEIR REPLY IS VALEK

16   EXHIBIT 22.  VALEK EXHIBIT 22 IS A CONFIDENTIAL EXCERPT OF THE

17   DEPOSITION OF ONE OF OUR WITNESSES FROM THE PRELIMINARY

18   INJUNCTION PHASE, JIM MILLER.

19       AND AGAIN, I DON'T WANT TO READ THE DETAILS INTO THE

20   RECORD BUT IF YOU LOOK AT PAGE 29 OF THAT EXHIBIT, WHICH THEY

21   CITE, IF YOU LOOK AT PAGE 29 OF THAT EXHIBIT, MR. MILLER

22   TESTIFIES THAT THE WORD KEY GUARD CONCERNS NOT JUST THE

23   FUNCTIONALITY THEY'VE ACCUSED BUT ALSO LOTS OF OTHER

24   FUNCTIONALITY.

25       HE SAYS THAT, AGAIN PAGE 29, EXHIBIT 22, HE SAYS THAT

1    QUITE CLEARLY.

2         SO THE IDEA THAT WE HAVEN'T PRODUCED ENOUGH DOCUMENTS

3    ABOUT THE ACCUSED FUNCTIONALITY BECAUSE WE HAVEN'T PRODUCED

4    ENOUGH DOCUMENTS INCLUDING THAT WORD WHICH IS A MUCH BIGGER

5    PROJECT, IT JUST DOESN'T MAKE ANY SENSE TO ME AND I THINK IT'S

6    INSUFFICIENT TO SHOW A DEFICIENCY.  AND THOSE ARE THE ONLY TWO

7    EXAMPLES THAT THEY GIVE IN THEIR BRIEF.

8         AND I THINK THAT NEITHER OF THOSE TWO EXAMPLES IS

9    SUFFICIENT AND I THINK THAT THAT SHOULD RESOLVE THE MATTER

10   RIGHT HERE BECAUSE WITHOUT BEING ABLE TO ALLEGE SOME SORT OF

11   DEFICIENCY, HE SHOULDN'T BE ABLE TO ACHIEVE ANY RELIEVE WHICH

12   HE HAS KEYED IN HIS MOTION TO THE EXISTENCE OF A DEFICIENCY.

13        THE COURT:  SO I WANT TO UNDERSTAND GOOGLE'S POSITION

14   IN THE NORTHERN DISTRICT OF CALIFORNIA.

15        IS GOOGLE SAYING TO THIS COURT IT HAS NO OBLIGATION

16   WHATSOEVER, EVER TO SHARE SEARCH TERMS IN THE ABSENCE OF PROOF

17   THAT THE PRODUCTION GENERATED BY THOSE SEARCH TERMS WAS

18   INSUFFICIENT.

19        MR. WARREN:  AS A THIRD PARTY, YES, YOUR HONOR.

20        THE COURT:  SO GOOGLE TAKES THAT POSITION AS A THIRD

21   PARTY?

22        MR. WARREN:  AS A THIRD PARTY, YES.

23        THE COURT:  ISN'T ITS POSITION AS A PARTY?

24        MR. WARREN:  AS A PARTY, THESE MATTERS WOULD USUALLY

25   RESOLVE BY NEGOTIATIONS AMONG COUNSEL.

1          THE COURT:  AS A PARTY GOOGLE WOULD CERTAINLY NOT

2     WITHHOLD SEARCH TERMS FROM AN ADVERSARY IN THIS DISTRICT.

3          MR. WARREN:  CORRECT, YOUR HONOR.

4          THE COURT:  SO WHAT IS IT ABOUT GOOGLE'S STATUS AS A

5     THIRD PARTY, WHICH I WILL GET TO IN A MOMENT, WHICH MAKES IT

6     DIFFERENT?

7          MR. WARREN:  CAN I SAY ONE THING FIRST, WHICH IS --

8     AND I MADE THIS POINT IN OUR BRIEF -- WE DID OFFER GOING

9     FORWARD TO RUN ANY TERMS THAT THEY WANTED AGAINST --

10          THE COURT:  APPLE SEARCH TERMS.  BUT YOU NEVER

11     OFFERED ONCE, AS BEST I CAN STEAL FROM THIS RECORD, TO TELL

12     APPLE WHAT SEARCH TERMS YOU USE TO GENERATE THESE DOCUMENTS.

13          MR. WARREN:  THAT IS CORRECT.

14          THE COURT:  SO WHY IS IT THAT GOOGLE'S STATUS AS A

15     NONPARTY DISTINGUISHES ITS POSITION IN OTHER CASES IN THIS

16     DISTRICT.

17          MR. WARREN:  WELL FIRST OF ALL, SIMPLY BECAUSE IN OUR

18     EXPERIENCE AS A LITIGANT IN THIS AND MANY OTHER DISTRICTS, WE

19     LITERALLY BEFORE THIS CASE HAVE NEVER BEEN ASKED FOR

20     RETROACTIVE SEARCH TERMS AS A THIRD PARTY.

21          THE COURT:  REALLY.

22        SO AS A SUBPOENAED THIRD PARTY IN THE UNITED STATES

23     DISTRICT COURT, ALL 94 OF THEM, MAYBE THE ITC, MAYBE FOREIGN

24     COURTS, GOOGLE HAS NEVER BEEN ASKED TO DISCLOSE SEARCH TERMS?

25          MR. WARREN:  THAT'S CORRECT.

1          THE COURT:  NEVER BEEN ASKED.

2      I'M NOT ASKING WHETHER IT EVER AGREED, NEVER BEEN ASKED.

3      ARE YOU SURE ABOUT THAT?

4          MR. WARREN:  I MIGHT NOT SURE ABOUT NEVER BEEN ASKED,

5  YOUR HONOR.  BUT CERTAINLY THERE'S NEVER BEEN A MOTION.   BUT

6  WE DID ASK ABOUT THIS BECAUSE WE ARE A REPEAT PLAYER, AS YOU

7  ARE AND AS MR. LYON IS.

8          AND YOU KNOW, WE ARE CONCERNED BECAUSE AS THIRD PARTY WE

9  DON'T HAVE RIGHTS THAT PARTIES HAVE.  WE DON'T HAVE A RIGHT TO

10  RECIPROCAL DISCOVERY.  WE DON'T HAVE A RIGHT TO DEMAND

11  MR. LYON'S SEARCH TERMS.  WE DON'T HAVE A RIGHT TO ANY OF THE

12  NORMAL DETERRENT EFFECTS THAT PARTIES HAVE.

13          THE COURT:  WHAT ARE YOU TRYING TO DETER?

14      THEY ARE ASKING FOR THE TERMS YOU USED TO PRODUCE THE

15  DOCUMENTS.  WHY WOULD YOU WANT TO DETER INSIGHT INTO THE

16  QUALITY OF YOUR PRODUCTION?

17          MR. WARREN:  WELL THANK YOU, THAT GETS ME TO MY NEXT

18  POINT.

19      IT HAS NOTHING TO DO WITH THE QUALITY OF IT, YOUR HONOR.

20  BUT WE HAVE NOW BEEN SUBPOENAED --

21          THE COURT:  NO, BUT YOU JUST STOOD UP FOR SEVEN

22  MINUTES TELLING ME HOW WONDERFUL YOUR PRODUCTION IS.  AS BEST I

23  CAN TELL, IT IS WONDERFUL.

24      SO WHY WOULDN'T YOU WANT TO ESTABLISH A REQUIREMENT THAT

25  SUCH TERMS ARE DISCLOSED AS OPPOSED TO A PROHIBITION?

1           MR. WARREN:  WELL, LET ME EXPLAIN, YOUR HONOR.  IN

2   THIS CASE WE HAVE BEEN SUBPOENAED AT LEAST NINE TIMES BY APPLE

3   IN ANDROID LITIGATION.

4           THE COURT:  YOU ARE NOT A NORMAL THIRD PARTY IN THIS

5   CASE, ARE YOU?

6           MR. WARREN:  LET ME --

7           THE COURT:  ARE YOU?

8           MR. WARREN:  YES.  WE ARE IN FACT A THIRD PARTY --

9           THE COURT:  ARE YOU A NORMAL THIRD PARTY?

10          MR. WARREN:  YES, YOUR HONOR.  AND LET ME EXPLAIN

11  WHY.

12          THE COURT:  HOW CAN YOU STAND IN THIS DISTRICT,

13  HAVING SUPPLIED SOURCE CODE TO ANY NUMBER OF HANDSET

14  MANUFACTURERS, HAVING AFFORDED YOURSELF THE PRIVILEGE OF

15  LITIGATING THIS DISTRICT MULTIPLE TIMES, AND SAY THAT YOU ARE

16  AS NEUTRAL IN THIS FIGHT AS ANYBODY ON THE --

17          MR. WARREN:  I DIDN'T SAY WE ARE NEUTRAL, YOUR HONOR.

18          THE COURT:  SO YOU ARE NOT A NORMAL THIRD PARTY?

19          MR. WARREN:  LET ME EXPLAIN WHY.

20     APPLE IS THE MASTER OF ITS COMPLAINT, YOUR HONOR.  APPLE

21  HAS NOT SUED GOOGLE IN THIS ACTION.

22     THERE ARE ONLY TWO POSSIBLE REASONS WHY THAT IS.  EITHER

23  NUMBER ONE, THEY TRULY BELIEVE THAT WE DON'T INFRINGE ANY OF

24  THEIR PATENTS.

25     OR NUMBER TWO, THEY THINK THEY ARE BETTER OFF NOT SUING US.

1   THEY THINK THEY ARE BETTER OFF WITH US AS A THIRD PARTY.

2         THEY ARE VERY SOPHISTICATED GUYS.  THEY MADE A STRATEGIC

3   DECISION.  HAVING MADE A STRATEGIC DECISION TO KEEP GOOGLE OFF

4   THE COMPLAINT, THEY ARE ENTITLED TO RULE 45 DISCOVERY AND RULE

5   45 DISCOVERY ONLY.

6         THE COURT:  WHAT IS SO SPECIAL ABOUT RULE 45 THAT

7   ALLOWS GOOGLE TO WITHHOLD SEARCH TERMS IN A WAY THAT IT AGREES

8   IT WOULD NEVER DO UNDER RULE 34?

9         MR. WARREN:  THE PERSON WHO HAS THE MOST INCENTIVE TO

10  TELL YOU THAT THOSE TWO THINGS ARE THE SAME IS MR. LYON AND

11  APPLE.

12     THEY HAVE CITED ZERO CASES IN THEIR BRIEF IN WHICH A RULE

13  45 NONPARTY WAS COMPELLED TO PROVIDE SEARCH TERMS.  ZERO CASES.

14        THE COURT:  SO IF I CAN ON MY OWN, IN ABOUT

15  30 SECONDS, FIND SUCH CASES, WOULD YOU HAVE A DIFFERENT

16  POSITION?

17        MR. WARREN:  I -- WELL, I WOULD HAVE TO READ THE CASE

18  AND SEE, YOUR HONOR.

19     BUT I THINK THE PERSON WHO HAS THE STRONGEST INCENTIVE TO

20  DO THAT IS APPLE AND THEY HAVEN'T DONE IT.

21     I WOULD FURTHER SUBMIT THAT, AGAIN, OUR OFFER, WHICH WAS

22  EXTREMELY GENEROUS, WAS TO WORK WITH THEM COOPERATIVELY.

23        THE COURT:  YOU WON'T EVEN TELL THEM WHICH TERMS YOU

24  ARE USING, AND YOU ARE STANDING UP HERE TELLING ME YOU ARE

25  GENEROUS?

1          MR. WARREN:  I AM, YOUR HONOR.

2      I'M HAPPY TO TAKE ANY TERMS THEY RUN AND EITHER RUN THEM

3   OR SAY WHY I CAN'T.  FOR EXAMPLE, SAY THEY WOULD PRODUCE TOO

4   MANY DOCUMENTS OR --

5          THE COURT:  YOU WOULD AGREE THERE'S NO SERIOUS

6   ARGUMENT THAT DISCLOSING SEARCH TERMS WOULD BE BURDENSOME TO

7   GOOGLE?

8          MR. WARREN:  IT WOULD BE BURDENSOME FOR THE FOLLOWING

9   REASON, YOUR HONOR.

10      WHEN WE TOOK THIS --

11         THE COURT:  DO YOU KNOW THE SEARCH TERMS STANDING

12   RIGHT HERE?

13         MR. WARREN:  I DON'T KNOW THEM.

14         THE COURT:  YOUR CLIENT KNOWS THEM.

15         MR. WARREN:  WE KNOW --

16         THE COURT:  YOUR CLIENT CAN PRODUCE THEM IN THE NEXT

17   NINE MINUTES IF I ORDERED THEM TO DO IT, RIGHT?

18         MR. WARREN:  I DON'T THINK IT WOULD TAKE NINE

19   MINUTES, YOUR HONOR --

20         THE COURT:  IT WOULD PROBABLY TAKE NINE SECONDS.

21      SO IT'S NOT BURDENSOME TO PRODUCE THESE.

22         MR. WARREN:  IF I COULD EXPLAIN WHY.

23      IT WOULD BE BECAUSE, AGAIN, WHEN WE GOT THE SUBPOENA IT WAS

24   IN THE CONTEXT OF ALL KINDS OF LITIGATION WITH APPLE IN WHICH

25   THEY NEVER ASKED FOR SEARCH TERMS --

1          THE COURT:  THIS WAS THE SUBPOENA THAT WAS SERVED SIX

2     MONTHS AGO?

3          MR. WARREN:  YES.

4      AND WE GENERATED OUR SEARCH TERMS BASED ON VERY BROAD TERMS

5     IN THE SUBPOENA, AND WE GENERATED OUR CUSTODIAN LIST BASED ON

6     VERY BROAD TERMS OF THE SUBPOENA AND BASED ON, FRANKLY, VAGUE

7     INFRINGEMENT CONTENTIONS.

8      AND WE GUESSED.  WE GUESSED, AND WE GUESSED AS TO WHO MIGHT

9     HAVE DOCUMENTS, AND WE GUESSED AS TO WHAT THEY MIGHT ACCUSE.

10    AND THOSE GUESSES WHICH ARE REFLECTED IN OUR TERMS REPRESENT,

11    FRANKLY, THE MENTAL IMPRESSION OF THE ATTORNEYS ABOUT WHAT THEY

12    MIGHT ACCUSE.

13          THE COURT:  AH.  SO NOW GOOGLE IS STANDING ON ITS

14    OBJECTION THAT THE DISCLOSURE OF SEARCH TERMS WOULD BE A

15    DISCLOSURE OF WORK PRODUCT.

16          MR. WARREN:  NO, YOUR HONOR BECAUSE THE --

17          THE COURT:  SO WHAT DO MENTAL IMPRESSIONS HAVE TO DO

18    WITH ANY OF THIS?

19          MR. WARREN:  BECAUSE THE CONCERN IS THAT THEY

20    WOULD --

21          THE COURT:  SO IT'S NOT -- CAN WE AT LEAST AGREE IT'S

22    NOT WORK PRODUCT?

23          MR. WARREN:  WE THINK IT IS, YOUR HONOR, BUT THE

24    CASES SAY IT'S NOT.  SO WE'RE NOT CONTENDING THAT.

25          THE COURT:  WELL, YOU ARE STANDING ON WORK PRODUCT.

```
 1           WELL, WHAT'S YOUR POSITION?  ARE SEARCH TERMS WORK

 2    PRODUCT OR NOT?

 3                MR. WARREN:  THEY ARE NOT, YOUR HONOR.

 4                THE COURT:  OKAY.

 5       SO THE MENTAL IMPRESSIONS ARE IRRELEVANT TO THIS

 6    DISCUSSION, CORRECT?

 7                MR. WARREN:  WHAT I'M TRYING TO EXPLAIN IS, IS THAT

 8    THERE WOULD BE AN INCENTIVE ON THEIR PART TO THEN TAKE

 9    DISCOVERY INTO AREAS THAT, FRANKLY, REPRESENTED OUR GUESSES AS

10    TO WHAT THEY MIGHT AT SOME FUTURE TIME TAKE DISCOVERY INTO.

11           AND THAT'S NOT SOMETHING -- WE THINK THAT WOULD BE VERY

12    BURDENSOME FOR US AND WE THINK THAT THAT IS SOMETHING THAT --

13                THE COURT:  WE ARE NOT HERE TALKING ABOUT TAKING A

14    LITIGATION TO SOME NEW DIRECTION.  I'M TALKING ABOUT THE BURDEN

15    FOR GOOGLE TO PRODUCE A LIST OF SEARCH TERMS.  I THOUGHT WE

16    WERE MAKING GOOD PROGRESS ON THE NOTION.

17       IT'S NOT BURDENSOME, IS IT?

18                MR. WARREN:  THE BURDEN THAT I'M ASSERTING,

19    YOUR HONOR, IS NOT BUYING.

20       THE BURDEN I'M ASSERTING IS THAT IT WOULD ENABLE THEM TO

21    TAKE FUTURE DISCOVERY THAT WE DON'T THINK THEY SHOULD TAKE

22    SIMPLY BECAUSE WE THOUGHT SOME CUSTODIAN MIGHT BE --

23                THE COURT:  HOW WOULD A LIST OF SEARCH TERMS ALLOW

24    THEM TO TAKE ADDITIONAL DISCOVERY TO WHICH THEY ARE NOT

25    ENTITLED?
```

1          MR. WARREN:  WELL, THEY ALSO ASKED FOR A LIST OF

2    CUSTODIANS, YOUR HONOR.

3          THE COURT:  LET'S TALK ABOUT THE SEARCH TERMS.

4        HOW WOULD THAT RISK APPEAR IN THIS CASE?

5          MR. WARREN:  WELL, MY CONCERN IS THAT IF THEY HAVE

6    OUR LIST OF THE SEARCH TERMS, WHICH AGAIN REPRESENTS OUR

7    GUESSES, IF THEY HAVE OUR LIST OF SEARCH TERMS, THEY MIGHT THEN

8    SEEK DISCOVERY INTO OUR GUESSES WHERE THEY MIGHT NOT OTHERWISE

9    GO.

10          THE COURT:  I DON'T UNDERSTAND THAT AT ALL.

11        YOU ARE SAYING IF YOU USED A CERTAIN TERM, FOR EXAMPLE KEY

12    GUARD --

13          MR. WARREN:  YES.

14          THE COURT:  I HOPE YOU USED KEY GUARD TO AT LEAST

15    DELINEATE THE UNIVERSE OF DOCUMENTS AT ISSUE.

16        YOUR CONCERN IS THAT BY TELLING APPLE THAT YOU USED KEY

17    GUARD TO GENERATE THIS DOCUMENT, YOU ARE SOMEHOW, WHAT?

18          MR. WARREN:  WE WOULD BE GIVING THEM IDEAS ABOUT HOW

19    TO PROCEED THAT THEY WOULDN'T HAVE HAD ALREADY.

20        AND AGAIN --

21          THE COURT:  BUT YOU HAVE THE DOCUMENT ITSELF.

22          MR. WARREN:  WHICH IS EXACTLY WHY THEY SHOULD BE

23    GENERATING THE SEARCH TERMS THEMSELVES.

24          THE COURT:  SO NOW YOU ARE SAYING THAT APPLE SHOULD

25    TAKE DOCUMENTS AND DEDUCE FROM THE DOCUMENT WHAT THE SEARCH

```
 1        TERMS WERE THAT LEAD TO THE PRODUCTION OF DOCUMENTS?

 2                    MR. WARREN:  NO, YOUR HONOR.

 3                    THE COURT:  HOW COULD THEY PRODUCE YOUR SEARCH TERMS?

 4                    MR. WARREN:  THEY ARE SAYING -- THEY DON'T NEED OUR

 5        SEARCH TERMS, YOUR HONOR.

 6             ALL THEY WANT, REMEMBER THE END RESULT OF THIS MOTION FOR

 7        THEM IS THEY ARE GOING TO COME BACK TO US WITH MORE SEARCH

 8        TERMS AND SAY, WHY DON'T YOU RUN THOSE.  THAT'S WHAT THEY SAY,

 9        THAT'S IN THEIR PAPERS.  AND THERE'S NO REASON FOR THEM TO LOOK

10        AT OUR SEARCH TERMS FIRST BEFORE DOING THAT.

11                 AND I WILL SUBMIT TO YOU, AS I'M SURE YOUR HONOR KNOWS,

12        THAT IS IN FACT THE NORM IN THE EASTERN DISTRICT OF TEXAS.

13                 AND IN THE EASTERN DISTRICT OF TEXAS --

14                    THE COURT:  SO NOW ARE YOU URGING ON ME THE STANDARDS

15        OF THE EASTERN DISTRICT OF TEXAS?

16                    MR. WARREN:  I'M NOT, YOUR HONOR.

17             I'M POINTING OUT THAT THEIR PAPERS SAY IT'S IMPOSSIBLE FOR

18        THEM TO GENERATE THEIR OWN SEARCH TERMS.

19                    THE COURT:  I WANT TO MAKE SURE I UNDERSTAND GOOGLE

20        INCORPORATED'S POSITION IN THE NORTHERN DISTRICT OF CALIFORNIA

21        BECAUSE I'VE HAD MANY ROBUST DISCUSSIONS WITH MANY OF THE

22        COUNSEL.

23                    MR. WARREN:  YES.

24                    THE COURT:  ARE YOU URGING THIS DISTRICT APPLY THE

25        DISCOVERY STANDARDS OF MARSHALL?
```

1          MR. WARREN:  NO, YOUR HONOR.

2          THE COURT:  YOU WOULDN'T WANT THAT, WOULD YOU?

3          MR. WARREN:  NO, YOUR HONOR.

4          THE COURT:  WHY ARE YOU REFERRING TO THE ORDER OF THE

5     EASTERN DISTRICT?

6          MR. WARREN:  BECAUSE IN THEIR PAPERS THEY SAY THAT

7     THEY COULDN'T POSSIBLY GENERATE THEIR OWN SEARCH TERMS WITHOUT

8     LOOKING AT OURS FIRST.

9          AND MY POINT IS THAT'S SIMPLY NOT TRUE BECAUSE THEY DO IT

10    IN TEXAS ALL THE TIME.  IF THEY CAN DO IT IN TEXAS, THEY CAN DO

11    IT UP HERE.

12         AND REMEMBER YOUR HONOR, WE OFFERED TO RUN ANYTHING THEY

13    WANT AND REVIEW THE DOCUMENTS AND PRODUCE THE RESPONSIVE

14    DOCUMENTS OR WORK COOPERATIVELY WITH THEM TO EXPLAIN WHY THAT

15    WOULDN'T WORK.  THEY SAID NO TO THAT.  THAT WAS SIX WEEKS AGO.

16         IF THEY WANTED US TO RUN SEARCH TERMS, THEY COULD HAVE

17    WRITTEN US SIX WEEKS AGO AND GIVEN ME A LIST.

18         THE COURT:  WELL, THIS MAY BE A VERY GOOD REASON WHY

19    I'M NOT GOING TO ORDER YOU TO PRODUCE ANY MORE DOCUMENTS ONCE

20    THEY DO GIVE YOU SEARCH TERMS, BUT WE'RE NOT THERE YET.

21         ALL THAT WE'RE HERE TO DO IS TALK ABOUT WHY GOOGLE BELIEVES

22    IT SHOULDN'T EVEN HAVE TO TURN OVER THE TERMS THAT IT USED TO

23    GENERATE ITS PRODUCTION.

24         AND I'VE LEARNED MANY NEW THINGS ABOUT GOOGLE'S BELIEFS

25    AS TO HOW TO MANAGE PATENT LITIGATION IN THIS DISTRICT.  THIS

1      IS HELPFUL TO ME.

2          AND I THINK I UNDERSTAND YOUR POSITION.  AND THIS IS AN

3      IMPORTANT SERIOUS SUBJECT, SO I DON'T WANT TO MINIMIZE IT.

4          LET'S TALK ABOUT CUSTODIANS FOR A MOMENT BECAUSE WE

5      HAVEN'T TALKED A LOT ABOUT THAT.

6          YOU ARE SAYING THEY CAN TELL THE CUSTODIAN FROM THE

7      METADATA?

8              MR. WARREN:  CORRECT.  THE CUSTODIAN FOR WHICH WE

9      PRODUCED DOCUMENTS.  THERE'S A SMALL NUMBER OF CUSTODIANS FOR

10     WHICH WE SEARCHED BUT DID NOT PRODUCE ANY DOCUMENTS.

11             THE COURT:  AND I TAKE IT YOUR REAL OBJECTION IS TO

12     IDENTIFYING THOSE INDIVIDUALS?

13             MR. WARREN:  WE DO NOT WANT TO IDENTIFY THEM BECAUSE

14     WE THINK THEY ARE OBVIOUSLY IRRELEVANT TO THIS CASE, AND WE

15     THINK THEY MIGHT BE SUBJECTED TO SUBPOENAS SIMPLY BECAUSE AT

16     SOME POINT SOME LAWYER THOUGHT THAT THEY MIGHT BE SEARCHABLE.

17             THE COURT:  ALL RIGHT.  I UNDERSTAND THAT POSITION.

18         ANY OTHER POINTS YOU WANT TO MAKE?

19             MR. WARREN:  NO, YOUR HONOR.

20             THE COURT:  ALL RIGHT.  THANK YOU.

21       MR. LYON?

22             MR. LYON:  THANK YOU, YOUR HONOR.

23         SO MR. WARREN IS OVERSTATING OUR POSITION A LITTLE BIT, I

24     THINK, HERE.  WE ARE NOT SAYING WE COULDN'T POSSIBLY COME UP

25     WITH SEARCH TERMS, WE CAN DEFINITELY DO THAT.

```
 1              THE COURT:  IN FACT, HE'S CORRECT THAT NOT ONLY UNDER

 2    THE EASTERN DISTRICT'S IMPLEMENTATION BUT IN THE ORIGINAL

 3    FEDERAL CIRCUIT MODEL ORDER, A PRODUCING PARTY IS NORMALLY

 4    EXPECTED TO.

 5              MR. LYON:  YES.  CORRECT.  THERE ARE MODELS THAT WAY.

 6              THE COURT:  AND I'M SORRY FOR INTERRUPTING YOU, BUT I

 7    INTERRUPTED HIM PLENTY, SO LET'S PLAY IT FAIR.

 8              MR. LYON:  NOT A PROBLEM.

 9              THE COURT:  SO IN THIS CASE NEITHER JUDGE KOH NOR I

10    HAVE ADOPTED OR IMPLEMENTED ANY VERSION OF THE MODEL

11    E-DISCOVERY ORDER FROM THE FEDERAL CIRCUIT, CORRECT?

12              MR. LYON:  THAT'S CORRECT.

13              THE COURT:  OKAY.

14              MR. LYON:  SO IN THIS CASE I THINK THE PRACTICE OF

15    THE PARTIES TO THIS CASE WITH WHICH MR. WARREN IS REPRESENTING

16    BOTH SAMSUNG AND GOOGLE, AS HE STANDS HERE, HE KNOWS THIS AS

17    WELL.  WE HAVE BEEN EXCHANGING THESE TERMS.  GOOGLE AS YOU KNOW

18    IS NOT REALLY AN INDEPENDENT THIRD PARTY HERE.

19              THE COURT:  HE SAYS THEIR STATUS IS AS A THIRD PARTY,

20    HOWEVER TENUOUS, DISTINGUISHES THEM FROM SAMSUNG.

21         WHAT DO YOU THINK ABOUT THAT?

22              MR. LYON:  I DISAGREE WITH THAT.

23         I THINK THE POINT HERE IS THIRD PARTIES OR PARTIES,

24    WHATEVER IT IS, THE PERSON RECEIVING DISCOVERY KNOWS THEIR

25    DOCUMENTS, KNOWS THEIR PEOPLE, KNOWS WHERE TO SEARCH.  I THINK
```

1      IT'S NOT A BURDEN TO ASK THEM TO PROVIDE THAT INFORMATION SO

2      THAT WE CAN TAILOR SEARCHES AND HAVE A DISCUSSION.

3          THEY SAY THEY WANT TO WORK COOPERATIVELY WITH US, BUT AT

4      THE SAME TIME THEY DON'T WANT TO TELL US ANYTHING ABOUT WHAT

5      THEY DID.

6          YOU HAVE TO TELL US WHAT YOU WANT AND THEN WE WILL TELL YOU

7      WHETHER WE DECIDE WE WANT TO RUN IT OR NOT.

8          AND THAT'S JUST NOT THE WAY IT SHOULD WORK.  IT SHOULD BE A

9      GIVE AND TAKE.  AND ALL WE ARE ASKING IS TO SEE WHAT THEY HAVE

10     DONE.  IT MAY BE THAT MR. WARREN IS CORRECT, THEY HAVE DONE A

11     GOOD SEARCH AND WE ARE DONE.

12         I'M GUESSING THERE WILL BE SUGGESTIONS WE HAVE AS TO THINGS

13     WE'D LIKE TO SEE CHANGE, AND MAYBE WE CAN WORK THOSE OUT.

14         BUT MY GUESS IS IF THEY'VE DONE A GOOD JOB, IT'S NOT GOING

15     TO BE A COMPLETE REMAP, IT'S JUST A FINE TUNING OF WHAT THE

16     SEARCH FOR THE SEARCH TERMS WOULD BE.

17          AS FAR AS CUSTODIANS, I THINK MR. WARREN POINTED OUT THE

18     BIG PROBLEM WE HAVE.  WE CAN GO TO THE METADATA AND SEE WHO

19     THEY PRODUCED, BUT THERE'S NO ABILITY WE HAVE TO SEE WHO ELSE

20     THEY HAVE --

21              THE COURT:  WOULD YOU AGREE MR. LYON, THOUGH, IT'S

22     SOMEWHAT UNUSUAL OF A PARTY REQUESTING DOCUMENTS OF A THIRD

23     PARTY TO SAY, DON'T TELL ME THE PEOPLE YOU DID PULL MATERIALS

24     FROM, TELL ME THE ONES YOU DIDN'T.

25          THAT'S PRETTY UNUSUAL; WOULD YOU AGREE?

1          MR. LYON:  I UNDERSTAND YOUR POINT, BUT I THINK THIS

2     IS THE IDEA OF WHAT WAS THE SEARCH.  WE ARE JUST TRYING TO HAVE

3     A DIALOG ABOUT, DID YOU DO AN ADEQUATE AND REASONABLE SEARCH

4     HERE.

5          AND IT'S IMPORTANT TO KNOW WHERE YOU LOOK BUT DIDN'T FIND

6     DOCUMENTS TOO.  AND IF THESE PEOPLE ARE PEOPLE WHO HAD

7     ABSOLUTELY NO DOCUMENTS, THEY MAY VERY WELL LIKELY NOT BE

8     RELEVANT AT ALL IN THE CASE.

9          BUT WE JUST WANT TO UNDERSTAND, DID YOU LOOK AT PEOPLE WHO

10    MAY HAVE BEEN RELEVANT.  THERE WERE PEOPLE DEPOSED IN THIS CASE

11    IN THE PRELIMINARY INJUNCTION, PRESUMABLY.  THEY HAVE ALL BEEN

12    LOOKED AT -- I DON'T HAVE ANY INFORMATION, BUT I'M GUESSING

13    THEY ARE IN THE METADATA BECAUSE THEY HAVE DOCUMENTS.

14          THE COURT:  HAS APPLE IDENTIFIED EVEN ONE INDIVIDUAL

15    FROM WHOM DOCUMENTS WERE COLLECTED AND SEARCHED BUT FROM WHICH

16    NO DOCUMENTS WERE PRODUCED?

17          MR. LYON:  WELL, WE CAN'T DO THAT BECAUSE WE DON'T

18    HAVE THE INFORMATION OF -- YOU MEAN ON OUR SIDE?  OH, YES, YES.

19          THE COURT:  SO YOU'VE TOLD SAMSUNG ABOUT PEOPLE

20    YOU'VE SEARCHED BUT FROM WHOM NO DOCUMENTS WERE PRODUCED?

21          MR. LYON:  WE PROVIDE, HERE'S THE CUSTODIANS WE ARE

22    GOING TO SEARCH, HERE'S THE SEARCH TERMS WE ARE GOING TO USE.

23          AND TO THE EXTENT THERE AREN'T ANY DOCUMENTS, WE WOULD TELL

24    THEM THAT, BUT I MEAN, THAT'S WHAT WE DO.

25          THE COURT:  TO YOUR KNOWLEDGE, HAVE THERE BEEN ANY

1    SUCH INDIVIDUALS?

2            MR. LYON:  AS I STAND HERE, I DON'T KNOW.

3        MY GUESS IS IT'S PROBABLY RARE BECAUSE YOU CAN ALWAYS FIND

4    SOMETHING THAT'S RESPONSIVE, BUT IT'S VERY RARE.

5            AND THAT'S ALL WE ARE ASKING FOR, I THINK IS A LITTLE BIT

6    MORE TRANSPARENCY SO WE CAN HAVE A DIALOG.

7            THE COURT:  MR. WARREN, I WILL GIVE YOU THE FINAL

8    WORD.

9            MR. WARREN:  YOUR HONOR, THE FINAL WORD IS THAT APPLE

10   AND SAMSUNG HAVE EXCHANGED INFORMATION BECAUSE APPLE AND

11   SAMSUNG CONSTRUCTED A VERY CAREFUL AGREEMENT AT WHICH BOTH

12   PARTIES WERE AT THE TABLE.

13       AND THAT JUST ISN'T TRUE FOR GOOGLE.  WE CAME INTO THIS

14   CASE MUCH LATER.  AND SO, YOU KNOW, THE ONLY THING THAT'S

15   PREVENTING US FROM INAPPROPRIATE DISCOVERY IS YOUR HONOR.

16       THAT'S ALL I HAVE TO SAY.

17           THE COURT:  ALL RIGHT.

18       ALL RIGHT, THE MATTER IS SUBMITTED.  I WILL GET AN ORDER

19   OUT SHORTLY.

20       THANK YOU BOTH.

21       (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185            DATED: 5/10/13