QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 12-CV-00630-LHK |
| Plaintiff, | **SAMSUNG'S MAY 13, 2013 CASE NARROWING STATEMENT** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

1  Pursuant to the Court's Case Management Order (Dkt. 471), Samsung submits its revised Case Narrowing Statement with a narrowed list of 22 accused Apple products.  As explained below, however, Samsung disagrees with Apple's interpretation of a "product" and objects to Apple's expanded list of accused products.

During the Case Management Conference of April 24, 2013, the Court explained that each party must identify specific *products*, not product lines, because variations across product lines will lead to confusion.  *See* April 24, 2013 Hearing Tr. 40:4-6 ("The Court: It's product, not product line.  I think product line will get confusing on infringement because there are variations across the product lines.")  In response to the Court's suggestion, Samsung revised its Case Narrowing Statement to addresses complaints raised by Apple during the case management conference.  Samsung now identifies the specific accused generations of iPod Touch (3rd to 5th generations) and Apple TV (1st and 3rd generations).  Samsung also removes its accusations against the MacBook and Mac product lines, instead identifying the iMac, Mac mini and Mac Pro desktop computers and the MacBook Pro and MacBook Air laptop computers.  Samsung's identified iPhone and iPad products remain unchanged, as Apple agrees that these are products and not product lines.  (Tr. 38:15-18.)

Apple, however, has resubmitted the *identical* list of 22 products it submitted on April 22, 2013, ignoring the Court's guidance regarding "products" and "product lines," with one *addition*: the Samsung Galaxy S4 product line, which Apple admits it has not even accused in this case.  Apples' attempt to *broaden* the case is the polar opposite of the Court's instructions.  Apple's "narrowed" list does not use the definition of "product" versus "product line," defeating the purpose of the Court's orders seeking to narrow the case to a reasonable scope.

Samsung's revised Case Narrowing Statement reflects a simple and sensible understanding of "products" and "product lines":  a "product" is a device with its own set of hardware and software, while a "product line" is a line of products, typically marketed together under a common name.  In contrast, Apple's revised Case Narrowing Statement seeks to accuse entire product lines, such as all models of the Galaxy SIII, by incorrectly accusing them as a single product.

1      Samsung's products are heavily customized to various carrier specifications, and
2 Samsung's product lines – such as the Galaxy SIII product line – contain a variety of different
3 products.  As one example, the T-Mobile Galaxy SIII (SGH-T999) ships with a different set of
4 applications than the Verizon Galaxy SIII (SCH-i535) or the AT&T Galaxy SIII (SGH-i747).
5 Apple, by contrast, does not customize its iPhone products based on carrier specifications.
6      The carrier-specific customizations that Samsung makes for different products within
7 product lines are highly relevant to Apple's claims of infringement, and will require separate proof
8 for each product, regardless of its product line.  As one example, Apple contends that each
9 "searchable" application accessed by the Quick Search Box is a "heuristic module" or "plug-in
10 module" as required by the '604 and '959 patents.  (*See* Galaxy SIII Claim Chart for U.S. Patent
11 No. 8,086,604, Dkt. 427-6 at 119.)  As the Federal Circuit explained, for Apple to show
12 infringement it must prove that each of these "modules" uses unique "heuristics," requiring an
13 analysis and comparison of every alleged "module" on each device.  (*Apple Inc. v. Samsung Elecs.*
14 *Co.*, 695 F.3d 1370, 1379 (Fed. Cir. 2012).)  Different Samsung products, such as different carrier-
15 specific products in the Galaxy SIII line, ship with different, customized "searchable"
16 applications.  These include at least the Amazon application (present on the T-Mobile Galaxy SIII
17 (SGH-T999) but not the AT&T (SGH-i747), MetroPCS (SCH-R530M) or Verizon Galaxy SIII
18 (SCH-i535)), the Verizon Backup Assistant application (present on the Verizon Galaxy SIII
19 (SCH-i535) but not the T-Mobile (SGH-T999), AT&T (SGH-i747) or MetroPCS Galaxy SIII
20 (SCH-R530M)), and the YPMobile application (present on the AT&T Galaxy SIII (SGH-i747) but
21 not the Verizon (SCH-i535), T-Mobile (SGH-T999) or MetroPCS Galaxy SIII (SCH-R530M)).
22 Apple knows well that Samsung heavily customizes software to carrier specifications.  In the prior
23 case, Apple *separately accused* Samsung products based on carrier, because it knew that these
24 carrier-customized products contain different software.  *See, e.g.*, 11-cv-01846 Amended Verdict
25 Form, Dkt. 1931 (separately listing the Galaxy S II (AT&T), the Galaxy S II (T-Mobile), and
26 other versions of the Galaxy S II).  Apple now seeks to ignore its prior recognition that Samsung
27
28

customizes different products for different carriers by accusing an entire product line as a single product. As it did before, however, Apple must separately accuse each separate product.

Many of Samsung's accused devices also run multiple different versions of software, requiring separate analysis as new products. Again, Apple has already acknowledged as much – this time, in *this* litigation. For example, on October 5, 2012, Apple requested leave to add the Galaxy Nexus running Android Jelly Bean to its infringement contentions, even though it had already accused the Galaxy Nexus running Android Ice Cream Sandwich. (Dkt. 269, *see also* Dkt. 288.) Similarly, on November 23, 2012, Apple requested leave to add the Galaxy SIII running Android Jelly Bean to its infringement contentions, even though it had already accused the Galaxy SIII running Ice Cream Sandwich. (Dkt. 306.) These amendments were necessary because, as Apple recognized, Jelly Bean is fundamentally different from Ice Cream Sandwich or other versions of Android.

Apple itself addressed these differences in its contentions. As just one example, for Apple's '647 patent, Apple accuses the ContentDetector software in products running Jelly Bean of infringing certain claim limitations, but accuses different software in earlier versions of Android – CacheBuilder – of infringing those same limitations. (*Compare* T-Mobile Samsung Galaxy SII Claim Chart for U.S. Patent No. 5,946,647, Dkt. 427-12 at 176, *with* Samsung Galaxy SIII Claim Chart for U.S. Patent No. 5,946,647, Dkt. 428-1 at 7.) Nonetheless, in its Case Narrowing Statement Apple lumps together different products using these distinct versions of Android, which Apple acknowledges will require separate proof of infringement, to avoid the product narrowing ordered by this Court.

During a meet and confer on May 10, 2013, Apple alleged that accused products should be defined by product "generations." Under Apple's view, the Galaxy SIII product line is a "generation" that constitutes one accused product, regardless of the different carrier-customized software, different versions of Android, and different proof of infringement required for each product within this product line. Apple's position is improper. Apple must separately accuse each of Samsung's different products, which differ based on carrier and operating system. Apple

cannot lump together the entire "Samsung Galaxy SIII" product line when Apple previously acknowledged in the prior action that each carrier-customized product is its own product, and when Apple's infringement theories in this action require separate proof for separate products within this product line, such as the Galaxy SIII T-Mobile (Ice Cream Sandwich) and the Galaxy SIII AT&T (Jelly Bean).  The Court should order Apple to revise its list to identify 22 accused products, not product lines.

Samsung's narrowed list of accused products is as follows:

1. iPhone 3G
2. iPhone 3GS
3. iPhone 4
4. iPhone 4S
5. iPhone 5
6. iPad
7. iPad 2
8. iPad 3
9. iPad 4
10. iPad Mini
11. iPod Touch (5th generation)
12. iPod Touch (4th generation)
13. iPod Touch (3rd generation)
14. MacBook Air
15. MacBook Pro
16. iMac
17. Mac Mini
18. Mac Pro
19. iTunes (including iTunes Match)
20. iCloud

21. Apple TV (3rd generation)

22. Apple TV (1st generation)

DATED: May 13, 2013      QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Victoria F. Maroulis*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC