# EXHIBIT A

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S MOTION TO COMPEL COMPLETE PRODUCTION OF SOURCE CODE FOR ALL ACCUSED PRODUCTS**<br><br>Date: June 11, 2013<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Honorable Paul S. Grewal<br><br>**FILED UNDER SEAL** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 11, 2013, at 10:00 am, or as soon thereafter as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court for an order compelling Apple to produce complete sets of all versions of source code used to operate or enable the accused operating systems, software applications, server-based software or hardware functionalities, responsive to Samsung's Request for Production Nos. 162-170, by no later than seven days after the issuance of such order.

This motion is based on this notice of motion and supporting memorandum of points and authorities; the declaration of Amar L. Thakur ("Thakur Decl.") and any exhibits attached thereto; and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

**RELIEF REQUESTED**

Pursuant to Federal Rule of Civil Procedure 37(a)(1), Samsung seeks an order compelling Apple to produce complete sets of all versions of source code used to operate or enable the accused operating systems, software applications, server-based software or hardware functionalities, by no later than seven days after the issuance of such order.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Apple must make a full production of source code complete sets of all versions of source code used to operate or enable the accused operating systems, software applications, server-based software or hardware functionalities, by no later than seven days after the issuance of such order.

**SAMSUNG'S CIVIL L.R. 37-2 STATEMENT**

Pursuant to Civil L.R. 37-2, Samsung's Request Nos. 162-170 are set forth in full below along with Apple's objections and responses:

1  **REQUEST FOR PRODUCTION NO. 162:**

2        All versions of the source code used to operate or enable any accused functionality for any

3  of the APPLE ACCUSED PRODUCTS.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 162:**

5        Apple objects to the phrase "used to operate or enable" as vague and ambiguous.    Apple

6  further objects to this request to the extent that it seeks documents outside of Apple's possession,

7  custody, or control.    Apple objects to Samsung's definition of "APPLE ACCUSED

8  PRODUCTS" to the extent it is overly broad and unduly burdensome and to the extent it seeks

9  information that is neither relevant nor reasonably calculated to lead to the discovery of admissible

10  evidence.    Apple objects to Samsung's definition of "APPLE ACCUSED PRODUCTS" as vague

11  and ambiguous.    Apple also objects to Samsung's definition of "APPLE ACCUSED

12  PRODUCTS" to the extent that it purports to impose a duty on Apple to identify a comprehensive

13  set of discrete products that Samsung asserts have functionality that come within the scope of any

14  claim of the Samsung Patents-In-Suit.    Apple further objects to the definition of "APPLE

15  ACCUSED PRODUCTS" to the extent it includes products that are not made, used, offered for

16  sale, or sold in the United States.    For purposes of responding to this Request, Apple interprets

17  the term "APPLE ACCUSED PRODUCTS" to mean those products that are specifically identified

18  and accused in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on June 15,

19  2012.

20        Subject to and without waiving the foregoing General and Specific Objections, Apple has

21  made or will make available for inspection source code in its possession, custody, or control, if

22  any, located after a reasonable search, regarding the accused functionality as identified by

23  Samsung in its Infringement Contentions.

24  **REQUEST FOR PRODUCTION NO. 163:**

25        All DOCUMENTS and THINGS RELATED TO the hardware, software, executable

26  software, firmware, source code, components, circuits, or any other aspect of the '087 PATENT

27  ACCUSED PRODUCTS that is RELATED TO transmitting, receiving, processing,

28  communicating, enabling, or otherwise facilitating the non-scheduled transmission of packetized

1  data from an APPLE ACCUSED PRODUCT through any WCDMA network employing enhanced

2  uplink dedicated channel (E-DCH) technology.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 163:**

4      Apple objects to the term "related to" as vague, ambiguous, and potentially overbroad, and

5  because it does not describe with reasonable particularity the documents sought.   Apple objects

6  to this request on the grounds that it is overly broad, unduly burdensome, vague and ambiguous,

7  and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

8  admissible evidence, including without limitation because it seeks documents regarding

9  components, features, and/or functionality not at issue in this lawsuit.    Apple further objects to

10  the phrase "WCDMA network employing enhanced uplink dedicated channel (EDCH)

11  technology" as vague and ambiguous.

12      Subject to and without waiving the foregoing General and Specific Objections, Apple has

13  made or will make available for inspection source code in its possession, custody, or control, if

14  any, located after a reasonable search, regarding the accused functionality as identified by

15  Samsung in its Infringement Contentions.

16  **REQUEST FOR PRODUCTION NO. 164:**

17      All DOCUMENTS and THINGS RELATED TO the hardware, software, executable

18  software, firmware, source code, components, circuits, or any other aspect of the '596 PATENT

19  ACCUSED PRODUCTS that is RELATED TO transmitting, receiving, processing,

20  communicating, enabling, or otherwise facilitating the exchange of control information for

21  packetized data transmission from an APPLE ACCUSED PRODUCT through any WCDMA

22  network employing enhanced uplink dedicated channel (E-DCH) technology.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 164:**

24      Apple objects to the term "related to" as vague, ambiguous, and potentially overbroad, and

25  because it does not describe with reasonable particularity the documents sought.   Apple objects

26  to this request on the grounds that it is overly broad, unduly burdensome, vague and ambiguous,

27  and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

28  admissible evidence, including without limitation because it seeks documents regarding

1  components, features, and/or functionality not at issue in this lawsuit.    Apple further objects to

2  the phrase "WCDMA network employing enhanced uplink dedicated channel (EDCH)

3  technology" as vague and ambiguous.

4      Subject to and without waiving the foregoing General and Specific Objections, Apple has

5  made or will make available for inspection source code in its possession, custody, or control, if

6  any, located after a reasonable search, regarding the accused functionality as identified by

7  Samsung in its Infringement Contentions.

8  **REQUEST FOR PRODUCTION NO. 165:**

9      All DOCUMENTS and THINGS RELATED TO the hardware, software, executable

10 software, firmware, source code, components, circuits, or any other aspect of the '470 PATENT

11 ACCUSED PRODUCTS that is RELATED TO controlling the volume of audio playback.

12 **RESPONSE TO REQUEST FOR PRODUCTION NO. 165:**

13     Apple objects to the term "related to" as vague, ambiguous, and potentially overbroad, and

14 because it does not describe with reasonable particularity the documents sought.    Apple objects

15 to this request on the grounds that it is overly broad, unduly burdensome, vague and ambiguous,

16 and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

17 admissible evidence, including without limitation because it seeks documents regarding

18 components, features, and/or functionality not at issue in this lawsuit.    Apple also objects to the

19 term "controlling the volume of audio playback" as vague and ambiguous.

20     Subject to and without waiving the foregoing General and Specific Objections, Apple has

21 made or will make available for inspection source code in its possession, custody, or control, if

22 any, located after a reasonable search, regarding the accused functionality as identified by

23 Samsung in its Infringement Contentions.

24 **REQUEST FOR PRODUCTION NO. 166:**

25     All DOCUMENTS and THINGS RELATED TO the hardware, software, executable

26 software, firmware, source code, components, circuits, or any other aspect of the '757 PATENT

27 ACCUSED PRODUCTS that is RELATED TO synchronizing multimedia files associated with

28

one or more users and stored across any '757 PATENT ACCUSED PRODUCTS using network transmissions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

Apple objects to the term "related to" as vague, ambiguous, and potentially overbroad, and because it does not describe with reasonable particularity the documents sought.   Apple objects to this request on the grounds that it is overly broad, unduly burdensome, vague and ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks documents regarding components, features, and/or functionality not at issue in this lawsuit.   Apple further objects to the phrase "synchronizing multimedia files associated with one or more users and stored across any '757 PATENT ACCUSED PRODUCTS using network transmissions" as vague and ambiguous.

Subject to and without waiving the foregoing General and Specific Objections, Apple has made or will make available for inspection source code in its possession, custody, or control, if any, located after a reasonable search, regarding the accused functionality as identified by Samsung in its Infringement Contentions.

**REQUEST FOR PRODUCTION NO. 167:**

All DOCUMENTS and THINGS RELATED TO the hardware, software, executable software, firmware, source code, components, circuits, or any other aspect of the '058 PATENT ACCUSED PRODUCTS that is RELATED TO displaying content in layers, including expanding portions of the displayed content that are selected by a user.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 167:**

Apple objects to the term "related to" as vague, ambiguous, and potentially overbroad, and because it does not describe with reasonable particularity the documents sought.   Apple objects to this request on the grounds that it is overly broad, unduly burdensome, vague and ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks documents regarding

1  components, features, and/or functionality not at issue in this lawsuit.    Apple also objects to the

2  phrase "displaying content in layers" as vague and ambiguous.

3       Subject to and without waiving the foregoing General and Specific Objections, Apple has

4  made or will make available for inspection source code in its possession, custody, or control, if

5  any, located after a reasonable search, regarding the accused functionality as identified by

6  Samsung in its Infringement Contentions.

7  **REQUEST FOR PRODUCTION NO. 168:**

8       All DOCUMENTS and THINGS RELATED TO the hardware, software, executable

9  software, firmware, source code, components, circuits, or any other aspect of the '179 PATENT

10  ACCUSED PRODUCTS that is RELATED TO displaying a keyboard on a touchscreen and

11  processing user input that consists of contact with the displayed keys.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 168:**

13       Apple objects to the term "related to" as vague, ambiguous, and potentially overbroad, and

14  because it does not describe with reasonable particularity the documents sought.    Apple objects

15  to this request on the grounds that it is overly broad, unduly burdensome, vague and ambiguous,

16  and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

17  admissible evidence, including without limitation because it seeks documents regarding

18  components, features, and/or functionality not at issue in this lawsuit.    Apple also objects to the

19  phrase "processing user input that consists of contact with the displayed keys" as vague and

20  ambiguous.

21       Subject to and without waiving the foregoing General and Specific Objections, Apple has

22  made or will make available for inspection source code in its possession, custody, or control, if

23  any, located after a reasonable search, regarding the accused functionality as identified by

24  Samsung in its Infringement Contentions.

25  **REQUEST FOR PRODUCTION NO. 169:**

26       All DOCUMENTS and THINGS RELATED TO the hardware, software, executable

27  software, firmware, source code, components, circuits, or any other aspect of the '449 PATENT

28

1    ACCUSED PRODUCTS that is RELATED TO the capture, processing, storage, retrieval, or

2    display of still or moving images.

3    **RESPONSE TO REQUEST FOR PRODUCTION NO. 169:**

4         Apple objects to the term "related to" as vague, ambiguous, and potentially overbroad, and

5    because it does not describe with reasonable particularity the documents sought.    Apple objects

6    to this request on the grounds that it is overly broad, unduly burdensome, vague and ambiguous,

7    and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

8    admissible evidence, including without limitation because it seeks documents regarding

9    components, features, and/or functionality not at issue in this lawsuit.    Apple also objects to the

10   term "processing" as vague and ambiguous.

11        Subject to and without waiving the foregoing General and Specific Objections, Apple has

12   made or will make available for inspection source code in its possession, custody, or control, if

13   any, located after a reasonable search, regarding the accused functionality as identified by

14   Samsung in its Infringement Contentions.

15   **REQUEST FOR PRODUCTION NO. 170:**

16        All DOCUMENTS and THINGS RELATED TO the hardware, software, executable

17   software, firmware, source code, components, circuits, or any other aspect of the '239 PATENT

18   ACCUSED PRODUCTS that is RELATED TO the capture, processing, and packetized

19   transmission of multimedia data.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 170:**

21        Apple objects to the term "related to" as vague, ambiguous, and potentially overbroad, and

22   because it does not describe with reasonable particularity the documents sought.    Apple objects

23   to this request on the grounds that it is overly broad, unduly burdensome, vague and ambiguous,

24   and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

25   admissible evidence, including without limitation because it seeks documents regarding

26   components, features, and/or functionality not at issue in this lawsuit.    Apple also objects to the

27   terms "processing" and "capture" as vague and ambiguous.

28

SAMSUNG'S MOTION TO COMPEL COMPLETE PRODUCTION OF SOURCE CODE

1    Subject to and without waiving the foregoing General and Specific Objections, Apple has

2   made or will make available for inspection source code in its possession, custody, or control, if

3   any, located after a reasonable search, regarding the accused functionality as identified by

4   Samsung in its Infringement Contentions.

5    **SAMSUNG'S CERTIFICATION PURSUANT TO FED. R. CIV. P. 37(a)(1)**

6    Samsung hereby certifies that it has in good faith conferred with Apple in an effort to obtain

7   the discovery described immediately above without Court action.    Samsung's efforts to resolve

8   this discovery dispute without court intervention are described in paragraphs 10-22 of the

9   Declaration of Amar L. Thakur, submitted herewith.

10

11   DATED: May 7, 2013              QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
12

13

14                                   By  */s/ Victoria F. Maroulis*
                                          Victoria F. Maroulis
15                                        Attorney for SAMSUNG ELECTRONICS CO.,
                                          LTD., SAMSUNG ELECTRONICS AMERICA,
16                                        INC., and SAMSUNG
                                          TELECOMMUNICATIONS AMERICA, LLC
17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S MOTION TO COMPEL COMPLETE PRODUCTION OF SOURCE CODE

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 2

      A.    Samsung Serves Its Infringement Contentions ....................................... 2

      B.    Samsung Requests Complete Source Code For the Accused iOS and Mac OS X Operating Systems, Apps and Applications, Server-based Software, and Hardware ................................................................................. 2

      C.    Apple's Source Code Production Remains Incomplete ........................... 4

      D.    Samsung Produces Complete Versions of Samsung's Source Code Despite the Deficiencies In Apple's Source Code Production ................................ 5

ARGUMENT .................................................................................................................... 6

I.     THE COURT SHOULD COMPEL APPLE TO MAKE A COMPLETE PRODUCTION OF SOURCE CODE RELATING TO SAMSUNG'S FEATURE PATENTS ........................................................................................................... 6

      A.    Apple Must Produce All Source Code For All Accused Software and Hardware ................................................................................................. 6

      B.    Apple Has Improperly Withheld Source Code That is Essential To Proving Infringement of Samsung's Patents...................................................... 10

II.    THE REQUESTED DISCOVERY IS NOT BURDENSOME.......................... 12

CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

### Cases

*American Video Graphics, L.P. v. Electronic Arts, Inc.*,
    359 F. Supp. 2d 558 (E.D. Tex. 2005) ..........................................................................9

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
    No. 05-04158, 2008 WL 624771 (N.D. Cal. Mar. 4, 2008) .........................................9

*Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n*,
    No. 04-04143, 2005 WL 1787421 (N.D. Cal. July 27, 2005) ....................................10

*Edward D. Ioli Trust v. Avigilon Corp.*,
    No. 10-605, 2012 WL 5830711 (E.D. Tex. Nov. 16, 2012) .........................................8

*Fleming v. Escort, Inc.*,
    No. 09-105, 2010 WL 3833995 (D. Idaho) ..................................................................8

*Forterra Sys., Inc. v. Avatar Factory*,
    2006 WL 2458804 (N.D. Cal. Aug. 22, 2006) ...........................................................7, 9

*In re Google Litig.*,
    No. 08-03172-RMW (PSG), 2011 WL 6951972 .........................................................7

*In re iPhone/iPad Application Consumer Privacy Litig.*,
    No. 11-2250, 2013 WL 843833 (N.D. Cal. Mar. 6, 2013) ...........................................8

*InTouch Techs., Inc. v. VGO Comm'ns, Inc.*,
    No. 11-9185, 2012 WL 7783405 (C.D. Cal. Apr. 23, 2012) .............................7, 8, 9

*Multimedia Patent Trust v. Apple Inc.*,
    No. 10-2618, 2012 WL 4547449 (S.D. Cal. Sept. 28, 2012) .......................................9

*Network Appliance Inc. v. Sun Microsys. Inc.*,
    No. 07-06053, 2009 WL 2761924 (N.D. Cal. Aug. 31, 2009)......................................9

*SIPCO, LLC v. Amazon.com, Inc.*,
    2009 WL 9051241 (E.D. Tex. 2009) ...........................................................................9

*Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*,
    No. 04-167, 2006 WL 5111116 (E.D. Tex. Feb. 9, 2006) ..........................................7

### INTRODUCTION

With just over two months remaining before the close of fact discovery, and the deadline for expert reports rapidly approaching, Apple has yet to make a complete production of source code for the accused products—discovery which is absolutely critical to Samsung's infringement claims, and produced as a matter of course in software patent cases such as this.   At the outset of discovery in this litigation, Samsung requested all source code for all versions of the accused software and hardware.   Despite initially agreeing to produce source code, Apple has sporadically produced a tiny fraction of source code responsive to Samsung's requests.   Apple has insisted upon limiting its production to source code that it unilaterally deems "relevant" to the infringement theories that Apple believes Samsung has "adequately disclosed."   Apple has refused to produce any source code except for the particular files that perform the accused functions that are expressly identified in Samsung's Infringement Contentions, and has imposed upon Samsung the burden of somehow identifying withheld source code and explaining why the withheld source code is relevant to Samsung's infringement theories.   In effect, Apple demands that Samsung present fully developed infringement theories before Samsung ever sees the very source code necessary to develop a detailed infringement analysis.

Apple has it backwards.   *All* source code for *all* of the accused software and hardware is relevant and discoverable under Federal Rule of Civil Procedure 26.   Samsung is not required to accept Apple's self-serving and unexplained assertion that Apple's paltry production of source code to date is all Samsung is entitled to under the Federal Rules and Patent Local Rules in order to prove its case.   Under both Rule 26 and Patent L.R. 3-4(a), Samsung is entitled to review Apple's source code in order to make its own determination regarding what source code is relevant to its infringement theories.   Consistent with this understanding of Rule 26 and Patent L.R. 3-4(a)—as well as the Court's orders concerning source code in the previous case between the parties—Samsung produced every line of source code for the accused Samsung products. Having received this discovery from Samsung in this case, Apple cannot now continue to withhold this vitally important evidence.

## FACTUAL BACKGROUND

A.    <u>Samsung Serves Its Infringement Contentions</u>

Samsung served Infringement Contentions pursuant to Patent L.R. 3-1 on June 15, 2012. Ex. 1.[1]    Samsung asserts eight patents against various generations of the iPhone, iPad, iPod, AppleTV, MacBook Air, MacBook Pro, and certain Mac desktop computers.    Samsung served amended and second amended Infringement Contentions on September 28, 2013 and November 19, 2013, respectively, alleging infringement by later-released generations of Apple's products. Ex. 2; Ex. 3.    The features accused throughout all of Samsung's Infringement Contentions heavily rely on Apple's iOS and Mac OS X operating systems, various apps and applications, server-based software, and programmed hardware.    *See, e.g.,* Ex. 4 at 2-13; Ex. 5 at 2-7.

On August 10, 2012, Apple served Invalidity Contentions pursuant to Patent L.R. 3-3. Rather than making a complete production of source code for the accused instrumentalities, as required by Patent L.R. 3-4, Apple represented that it would, "[a]t a mutually convenient time," produce source code "sufficient to show the operation of the accused functionalit[ies]."    Ex. 6.

B.    <u>Samsung Requests Complete Source Code For the Accused iOS and Mac OS X Operating Systems, Apps and Applications, Server-based Software, and Hardware</u>

On July 31, 2012, Samsung served its Third Set of Requests for Production ("RFPs"), including RFPs 162-170, which generally sought all versions of source code used to operate or enable any software or hardware accused of infringing Samsung's patents.    Ex 7.    In response, Apple agreed only to produce source code "regarding the accused functionalit[ies] as identified by Samsung in its Infringement Contentions."    Ex. 8 at 30-36.    Samsung wrote several letters to Apple explaining that Samsung needed more than just source code for the accused functionalities in order to understand "how the [accused] software works, how the software [was] developed, and why the software was developed in the manner it was, and so on."    Ex. 9 at 6-7; Ex. 10 at 5-6.

---

[1]    Citations to "Ex. __" are citations to exhibits to the Declaration of Amar L. Thakur in Support of Samsung's Motion to Compel Complete Production of Source Code, submitted herewith.

1  Apple, however, insisted on limiting its production to "source code regarding the accused

2  functionality of each accused product."   Ex. 11 at 6.

3      Upon inspecting Apple's initial productions of source code, Samsung quickly recognized

4  two glaring deficiencies in Apple's production.   First, Apple only produced selected portions of

5  source code for the accused software applications, and withheld all source code related to server-

6  based features and a number of hardware features.   Ex. 12.   Second, Apple produced no source

7  code whatsoever for a significant number of the accused versions of iOS and Mac OS X.   *Id.*

8  Samsung asked Apple to produce complete sets of each version of source code for 36 software

9  applications and/or features, and identified the Samsung patents-in-suit to which each request

10  related.   *Id.*

11      In response to Samsung's request for complete source code productions, Apple stated that

12  it was "only obligated to produce source code that is relevant to the infringement theories that are

13  adequately disclosed in Samsung's infringement contentions."   Ex. 13.   Apple did not deny the

14  relevance of the source code requested in Samsung's December 23 letter.   *Id.*   Instead, Apple

15  dismissed all of Samsung's requests out-of-hand, stating that "it appears that Samsung is seeking

16  code for applications and functionalities that are either absent from Samsung's contentions, or

17  about which Samsung's contentions are incomplete."   *Id.*   Apple made no attempt to explain the

18  basis for its assertion that Samsung's Infringement Contentions were incomplete.   According to

19  Apple, Samsung bore the burden to "explain in detail . . . the relevance of the requested code

20  beyond what has already been produced."   *Id.*   Apple, however, made additional productions of

21  source code after its January 8 letter, thus implicitly conceding that its prior productions excluded

22  source code that even Apple recognized as relevant to Samsung's infringement claims.   *See, e.g.,*

23  Thakur Decl. ¶ 25.

24      On March 9, 2013, Samsung again objected to Apple's practice of making piecemeal

25  production of selected portions of source code, and specifically objected to the lack of hardware-

26  related and server-based source code.   Ex. 14.   Samsung's March 9 letter identified a number of

27  examples of source code relevant to the accused applications and functionalities that Apple

28  continued to withhold.   *Id.*   Samsung also took issue with Apple's attempt to impose upon

Samsung the burden of explaining the relevance of the missing code.   *Id.*   Following a non-lead

counsel meet and confer on March 21, 2013, Apple maintained its refusal to produce complete sets

of source code, and refused to produce the vast majority of source code specifically requested in

Samsung's previous letters, claiming that the code "appears to be for applications or

functionalities that are either absent from Samsung's [infringement] contentions or about which

Samsung's contentions are insufficient."   Ex. 15.

   In a letter dated April 5, 2013, Samsung again requested complete production of all source

code.   Ex. 16.   Three days later, Samsung identified several categories of source code and

technical documents for each patent-in-suit that Samsung needed in order to prepare for and

conduct upcoming depositions.   Ex. 17.   On May 1, 2013, Apple asserted that "the extent of

[its] obligation is to produce the source code for the accused functionality identified in

[Samsung's] infringement charts."   Ex 18.   In separate correspondence, Apple refused to

produce any additional source code for the features identified by Samsung.   Ex. 19.   Even where

Samsung limited its request to source code for specific components or applications identified in

Samsung's Infringement Contentions—such as the applications processor accused of infringing

U.S. Patent No. 5,579,239 ("'239 patent") (Ex. 2 at 4-5, 16-17, 20-21, 26-27), or the Music app

accused of infringing U.S. Patent No. 7,672,470 ("'470 patent") (Ex. 20 at 4-8, 21-23, 26)—Apple

stated it was only required to produce source code for specific "*functions* identified in Samsung's

Infringement Contentions."[2] Ex. 19 (emphasis added).

   At a lead counsel meet and confer on May 2, 2013, Apple confirmed that it would only

produce source code that performed the specific functions identified in Samsung's Infringement

Contentions.   Thakur Decl. ¶ 22.

   C.   Apple's Source Code Production Remains Incomplete

   Apple's source code production to date has been paltry—less than three gigabytes in total

for all versions of the 21 accused Apple products.   Thakur Decl. ¶ 23.   By comparison, Samsung

---

   [2]   For several requests, Apple claimed that its previous productions were sufficient, or that Apple was "not aware of any source code that performs the function of the claims."   *Id.*

has produced more than 1024 gigabytes of source code for the accused Samsung products.   *Id.* Even the three gigabytes that Apple has produced includes duplicate source code files.   *Id.* Further, there are significant gaps within Apple's production: at least 57% of the source code directories produced by Apple consist of only *partial* code for an application, app, framework, library, or project that is specifically identified in Samsung's Infringement Contentions.   *Id.* at ¶ 24; *see also id.* at ¶¶ 40-45.

Apple's strategy of withholding any source code it does not identify as relevant has been time-consuming and burdensome, even for Apple.   Despite the fact that Apple's counsel has been in possession of the Apple source code since at least August 2012, Apple's source code has slowly trickled in through seven separate productions spanning nine months.[3]   *Id.* at ¶ 25.   On more than one occasion, Apple has represented that it has produced all source code that is relevant, only to backtrack from this assertion months later by producing additional source code or conceding that it was still "working to determine whether there is additional source code relevant to the functions identified by Samsung in its infringement contentions."   Ex. 21.   Apple was still producing "relevant" source code as recently as April 17, 2013, and admitted that it is still "in the process of producing additional source code" as of May 1, 2013.   Ex. 18.

D.   Samsung Produces Complete Versions of Samsung's Source Code Despite the Deficiencies In Apple's Source Code Production

Apple, like Samsung, requested all source code for each version of the accused Samsung products.[4]   In stark contrast with Apple's cherry-picked productions, Samsung has produced complete source code builds for released and unreleased versions of the Samsung accused products, in full compliance with Apple's discovery requests, the Federal Rules of Civil Procedure, and Patent Local Rules.   Thakur Decl. ¶ 28.   This production, which constitutes code

---

[3]   Apple has provided written notice of just two of these productions.   *Id.*

[4]   Apple's RFP No. 274, for instance, seeks "All Source Code and executables for each version of each Samsung application installed in the Accused Samsung Products, including for each of the following applications: Phone, Contacts, Internet Browser, Calendar, Email, Music Player, Feeds & Updates, Camera, Gallery, Notes, Quick Search Box, Sync, and Screensaver." Ex. 22.

1   from over 40 different versions of the Android operating system, amounts to well over a terabyte

2   of data, or more than 250 times the volume of Apple's production.   *See id.*; Ex. 23.

3        Not only has Samsung produced complete source code for the accused Samsung products,

4   it has gone above and beyond its discovery obligations by making every effort to accommodate

5   Apple's review of Samsung's source code.   For example, when Apple requested that Samsung

6   provide copies of the open source Android source code, Samsung promptly made this code

7   available at the inspection site—despite the fact that Android code is publicly available.   Ex. 23

8   at 3.   When Apple asked that Samsung produce print-outs of source code more quickly, Samsung

9   did so—even though Samsung had fully complied with the timeframe set forth in the Protective

10   Order.   Ex. 24 at 3.   When Apple complained of slow transfer times from the central source

11   code server to individual review computers, Samsung made all released versions of source code

12   available on external hard drives.   Ex. 25.   Samsung has addressed each of Apple's many

13   review-related complaints, and informed Apple that it will make any reasonable effort to

14   accommodate Apple's source code review.

15                                          **ARGUMENT**

16   I.    THE COURT SHOULD COMPEL APPLE TO MAKE A COMPLETE PRODUCTION

17          OF SOURCE CODE RELATING TO SAMSUNG'S FEATURE PATENTS

18       A.    Apple Must Produce All Source Code For All Accused Software and Hardware

19        Source code is no different than any other discovery under Rule 26—there is "no source

20   code exception" to the Federal Rules.   *See* Case No 11-cv-1846 ("1846 Case"), Dkt. 898 at 2.

21   Thus, subject only to the burden and proportionality requirements of Rule 26, "when a patentee

22   requests source code for one or more accused products, a defendant must produce it."   *Id.*   Here,

23   Rule 26 requires Apple to produce all source code for the accused iOS and Mac OS X operating

24   systems, applications and apps, server-based software, and hardware.   In software patent cases

25   such as this, courts have held that "the *entire* source code is relevant under Rule 26," and thus the

26   patentee and its experts "must have access to the *entire* source code" for the accused products.

27   *Forterra Sys., Inc. v. Avatar Factory*, 2006 WL 2458804, at *1-2 (N.D. Cal. Aug. 22, 2006)

28   (emphasis added); *see also In re Google Litig.*, No. 08-03172-RMW (PSG), 2011 WL 6951972, at

1   *7 (compelling accused infringer to "make available for inspection all source code for all accused

2   indexing and serving activity"); *Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*, No. 04-167,

3   2006 WL 5111116, at *1 (E.D. Tex. Feb. 9, 2006) (ordering accused infringer to "produce all

4   source code for the accused products").   Indeed, during the previous litigation between the

5   parties, the Court ordered Samsung to produce complete source code builds for the accused

6   Samsung products (*see* 1846 Case Dkt. 537 at 2-3), even though the patents asserted by Apple in

7   that case were limited to functionalities representing an infinitesimal fraction of the hundreds of

8   millions of pages worth of source code for the accused products.

9       Apple contends that it need only produce source code that Apple deems "relevant" to the

10   specific functionalities identified in Samsung's Infringement Contentions.   This contention

11   contradicts the decisions of numerous courts holding that accused infringers may not limit

12   production of source code based on their own understanding of what is relevant to the patentee's

13   infringement claims.   *See, e.g., InTouch Techs., Inc. v. VGO Comm'ns, Inc.*, No. 11-9185, 2012

14   WL 7783405, at *1 (C.D. Cal. Apr. 23, 2012) (rejecting accused infringer's representation that it

15   produced "what it believes are the relevant portions of the source code" because "litigants

16   frequently disagree about what is relevant"); *Fleming v. Escort, Inc.*, No. 09-105, 2010 WL

17   3833995, at *2 (D. Idaho) (patentee entitled to complete, unredacted source code in order to verify

18   accused infringer's claims that redacted code was unimportant).[5]   Thus, contrary to Apple's

19   assertions, Samsung is not required to accept Apple's self-serving representations that the meager

20   amount of source code produced by Apple includes all "relevant" code.   Rather, Samsung is

21   entitled to "make **its own** determinations as to infringement."   *Edward D. Ioli Trust v. Avigilon*

22   *Corp.*, No. 10-605, 2012 WL 5830711, at *2-3 (E.D. Tex. Nov. 16, 2012) (emphasis in original)

23

24

_____

25       [5]   Notably, this Court recently rejected Apple's attempts to place this same limitation on its

26   discovery obligations in a separate litigation.   *In re iPhone/iPad Application Consumer Privacy*
    *Litig.*, No. 11-2250, 2013 WL 843833, at *1 (N.D. Cal. Mar. 6, 2013) (noting that Apple

27   "improperly limited its production to its own classification of relevant documents based on its
    theory of the case").

28

1   (citation omitted).   Apple cannot limit production of source code to "the bare minimum of what *it*

2   believes is sufficient."   *Id.* (emphasis in original).

3         Apart from Rule 26, Apple's source code production also fails to satisfy the requirements

4   of Patent L.R. 3-4(a) because the portions of code are not "sufficient to show the operation of any

5   aspects or elements of an Accused Instrumentality."   Apple's cherry-picked productions have

6   forced Samsung to review Apple's source code without the context needed to fully understand

7   how the accused software works in practice, or trace the operation of the accused features within

8   the source code from launch to close.   *See InTouch*, 2012 WL 7783405, at *1 (patentee's ability

9   "to properly understand the directly relevant portions of the source code may depend in part on

10   their ability to review other portions of the source code that may not appear to defendant's counsel

11   . . . to be relevant or necessary to place the directly relevant portions of the source code in

12   context.").   For example, many of the source code files Apple has produced—code that even

13   Apple admits is relevant to Samsung's infringement claims—frequently reference other source

14   code files that Apple has *not* produced.   Thakur Decl. ¶ 32.   Samsung cannot fully understand

15   the significance of the source code that Apple has produced without reviewing these referenced

16   code files.[6]   Samsung cannot conduct a full and fair infringement analysis in a vacuum.

17         Apple cannot justify withholding source code based on its conclusory assertion that

18   Samsung's Infringement Contentions are "incomplete" or not "adequately disclosed," because

19   Apple has deprived Samsung of the very information that it needs to provide more fulsome

20   contentions.   As noted in *American Video Graphics, L.P. v. Electronic Arts, Inc.*, plaintiffs in

21   software patent cases "only have access to the manifestation of the defendants' allegedly

22   infringing source code and not the code itself."   359 F. Supp. 2d 558, 560 (E.D. Tex. 2005).   As

---

23       [6]   In fact, Apple's production of source code for many features has been so limited that

24   Samsung often has not been able to identify the nature of the code or ascertain its significance, much less fully understand the role served by the produced code.   For instance, until recently

25   Apple had produced only a few dozen source code files for the Photos app.   Thakur Decl. ¶ 33.

26   Apple's production was so limited that Samsung could not determine whether the produced files related to the Photos app or some other iOS framework.   *Id.*   In fact, Samsung did not even

27   realize that Apple had produced source code for the Photos app until April 17, 2013, when Apple produced substantially complete source code for a different version of the Photos app.   *Id.*

28

a result, "until plaintiffs have access to [defendant's source code], plaintiffs are typically unable to give highly specified infringement contentions."   *Id.*   For this reason, courts frequently permit patentees to amend their infringement contentions after having a reasonable opportunity to review source code for the accused products.   *See id.* at 561; *Multimedia Patent Trust v. Apple Inc.*, No. 10-2618, 2012 WL 4547449, at *5-6 (S.D. Cal. Sept. 28, 2012); *Network Appliance Inc. v. Sun Microsys. Inc.*, No. 07-06053, 2009 WL 2761924, at *3-4 (N.D. Cal. Aug. 31, 2009).[7]

As this Court has recognized, source code "is not something that can be reviewed casually. It often takes even highly trained, highly paid experts extraordinary time and effort to understand, let alone fit into the framework of the case."   1846 Case Dkt. 898 at 8.   At this late stage of discovery, Samsung simply does not have the luxury of quibbling with Apple over the relevance of individual source code files.   In fact, Apple's discovery conduct casts serious doubts on whether Apple is even capable of identifying and producing all source code that is relevant to Samsung's Infringement Contentions.   Despite Apple's repeated claims that it produced all relevant source code, Apple recently admitted that it is still "working to determine whether there is additional source code relevant to the functions identified by Samsung in its infringement contentions."   Ex. 21.   Apple further admitted it is still "in the process" of producing relevant source code that Samsung requested in *December*.   Ex. 19.   Apple has even declared, in correspondence and interrogatory responses, that "it is not aware of any" software or source code that performs certain claimed functions (*see id.*; *see also* Ex. 26 at 17)—an assertion that, if Samsung is forced to accept, is potentially dispositive of certain of Samsung's claims.   *Cf. Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n*, No. 04-04143, 2005 WL 1787421, at *2

---

[7]      In any event, courts have held that the scope of discovery under Rule 26 is not limited by the patentee's infringement contentions.   *See Forterra*, 2006 WL 2458804 at *1 ("the entire source code is relevant under Rule 26," regardless of whether defendant was required to disclose the entire source code under Patent L. R. 3-4); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No. 05-04158, 2008 WL 624771, at *4 (N.D. Cal. Mar. 4, 2008) ("discovery is not limited by the list of accused devices in the preliminary infringement contentions"); *SIPCO, LLC v. Amazon.com, Inc.*, 2009 WL 9051241, *4 (E.D. Tex. 2009) (ordering production of source code for the accused product and any products "reasonably similar" to the accused product).

1   (N.D. Cal. July 27, 2005) (rejecting accused infringer's attempt to "narrowly define[ ] what Patent

2   L.R. 3-4 requires and then announce[ ] that it has no such documents.").

3       B.      Apple Has Improperly Withheld Source Code That is Essential To Proving
4               Infringement of Samsung's Patents

5           Even assuming that Apple may limit its production to "relevant" source code, Apple has

6   not come close to living up to this standard.    Rather than err on the side of disclosure, Apple has

7   filtered its source code production based on an exceedingly narrow concept of relevance,

8   withholding part or all of the source code for a number of features, and even specific functions,

9   that are expressly identified in Samsung's Infringement Contentions.    Even in the instances when

10  Apple has produced some source code, Apple has produced only a subset of code for an

11  application, app, framework, library, or project.    Further, Apple has withheld almost all relevant

12  server-based code, source code related to hardware/firmware, or code showing how the application

13  interacts with functions performed by the operating system.    Because the deficiencies in Apple's

14  source code production are numerous—and because Samsung discovers additional deficiencies on

15  a regular basis—Samsung highlights several of the most obvious examples to demonstrate that

16  Apple's claim to have produced all relevant source code is simply not credible.

17          *First*, Apple has not produced all source code for iCloud, iTunes, and iTunes Match, which

18  Samsung's Infringement Contentions repeatedly identify as the heart of the systems accused of

19  infringing U.S. Patent No. 7,577,757 ("'757 patent").    *See, e.g.,* Ex. 4 at 2-4, 6-8, 14-16, 18.

20  The '757 patent relates to a system for synchronizing audio, video, and photographic content

21  among multiple devices, including a central storage device and at least one zone device capable of

22  interfacing with information stored in the central storage device.    Ex. 27 at Abstract and 10:34-

23  51; *see also* Dkt. 335 at 12-13; Dkt. 350 at 9-10.    The claim language of the '757 patent

24  explicitly requires implementation details on at least one server.[8]    Moreover, Samsung's

25

26      ―――――――――――

27      [8]    For instance, Claim 1 requires that the central storage device store "content information
    and content management information," associated with a particular user, and update information in
28  relation to the zone device.  *See* Thakur Decl. Ex. 27 at 10:34-47.

Infringement Contentions explicitly accuse various server-side functionalities.   *See, e.g.,* Ex. 4 at 2, 5-10.   Yet Apple has produced *less than four megabytes* of source code for the accused server features, effectively forcing Samsung to treat the accused server and synchronization features as a black box.   Thakur Decl. ¶ 36.   Worse, Apple has never specifically addressed Samsung's request for server-based source code, despite the fact that Samsung made this request as early as December.

     *Second*, Apple has withheld source code for a number of features relevant to the '239 patent, which relates to a system for capturing, digitizing, compressing, transmitting and stories audio and video files.   *See* Dkt. 350 at 13-14.   Samsung's Infringement Contentions for the '239 patent repeatedly identify particular hardware features—including the applications processor, image sensor, audio codecs, audio chips, and video chips—as comprising part of the claimed "means for capturing, digitizing and compressing at least one composite signal."   *See* Ex. 5 at 3-5 and 20-27.   Despite the fact that Apple argued in its *Markman* brief that this limitation *requires* software components (*see* Dkt. 350 at 16-20), Apple has not produced a single line of code related to audio chips, audio codecs, video chips and image sensor chips.   Thakur Decl. ¶ 37.   Nor has Apple produced any applications processor source code involved in core functions such as preparing audio or video data for transmission, communicating with the baseband processor and WiFi chips, or transferring audio or video data between software and hardware components, all of which are disclosed in Samsung's Infringement Contentions (Ex. 5 at 9, 16, 23 and 40) and described in Judge Koh's *Markman* Order (*see* Dkt. 440 at 63).   Similarly, Apple has not produced *any* source code for the FaceTime app, which is clearly disclosed throughout Samsung's Infringement Contentions.   Thakur Decl. ¶ 39; Ex. 5 at 7, 10, 12-13, 16, 18-19, and 28.

     *Third*, Apple has withheld key source code modules in such a way as to render much of the produced source code incomprehensible.   This is true particularly with respect to the '239 patent. For example, Apple has produced source code for the ███████████████████ ████████████████ frameworks used in storing and decompressing audio or video data. Thakur Decl. ¶ 40.   These frameworks, however, are not themselves applications—rather, they are used by applications such as the Camera and FaceTime apps.   Accordingly, without source

1  code for the applications that interface with these frameworks, it is difficult to show how the

2  accused products actually use the produced code.   *Id.*   Apple's production of source code for the

3  YouTube app suffers from similar flaws.   Apple has produced some YouTube source code for

4  sending audio or video data, such as the source code that starts the "upload" process.   *Id.* at 41.

5  Apple has not produced any source code that would show that the "upload" process will, in fact,

6  send the data over the wireless link.   *Id.*   Without this source code, it is difficult to understand

7  how the accused products complete the process of uploading and transmitting data.

8       Finally, Apple's determination of what is "relevant" is wholly inconsistent from one

9  version of software to the next, because Apple has produced widely varying amounts of source

10  code for different versions of the same accused feature or functionality.   For example, with

11  respect to U.S. Patent No. 6,292,179 ("'179 patent"), which discloses a software keyboard system

12  for a touch screen device, Apple produced over 4,700 source code files relating to the UIKit

13  framework in each of iOS versions 4.0 and 5.0, but produced 70 or fewer source code files for the

14  UIKit framework in iOS versions 4.3.5, 5.1.1, and 6.0.   Thakur Decl. ¶ 43.   Similarly, with

15  respect to the Mail app accused of infringing U.S. Patent No. 7,232,058 ("'058 patent"), Apple

16  produced over 34 megabytes of source code for iOS version 6.0.1, but only 160 kilobytes for iOS

17  4.0, and only 340 kilobytes for iOS 5.0.   *Id.* at ¶ 44.

18  II.    <u>THE REQUESTED DISCOVERY IS NOT BURDENSOME</u>

19       Apple has no legitimate burden objection to producing all source code for all versions of

20  the accused products.   As an initial matter, any burden objection is foreclosed by the Court's

21  decision to compel a virtually identical scope of production from Samsung in the 1846 case.

22  Moreover, Apple's current practice—whereby Apple reviews each source code file in order to

23  determine what is "relevant" to Samsung's infringement theories, manually deletes all "irrelevant"

24  source code, and then debates the merits of Samsung's requests for additional code—is more

25  burdensome than complete production by many orders of magnitude.   Finally, any burden

26  objection is fatally undermined by the fact that Apple has requested the exact same scope of

27  discovery from Samsung—and Samsung has readily produced it.   Without any prompting from

28  Apple, Samsung completed its production for all of the 40-plus versions of Android running on

1  nearly two-dozen accused Samsung products—and even took additional steps to make Apple's

2  review of that source code more expeditious and convenient.    In light of Samsung's extensive

3  efforts to produce all source code for all accused products, Apple cannot be heard to suggest that

4  making the same production presents an undue burden.

5

6  **CONCLUSION**

7        For the foregoing reasons, the Court should GRANT Samsung's Motion to Compel and

8  require Apple to produce, by no later than seven days after the issuance of the Court's Order, a

9  complete production of all source code for all versions of the accused products, including all

10  versions of iOS and Mac OS X, as well as related software applications, hardware-related source

11  code and server-based source code.

12

13  DATED: May 7, 2013          QUINN EMANUEL URQUHART &
                     SULLIVAN, LLP

14

15                  By  */s/ Victoria F. Maroulis*

16                    Victoria F. Maroulis
                  Attorney for SAMSUNG ELECTRONICS CO.,

17                    LTD., SAMSUNG ELECTRONICS AMERICA,
                  INC., and SAMSUNG

18                    TELECOMMUNICATIONS AMERICA, LLC

19

20

21

22

23

24

25

26

27

28