JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | CASE NO. 5:12-cv-00630-LHK<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS INFRINGEMENT CONTENTIONS**<br><br>Date:     June 4, 2013<br>Time:    10:00 a.m.<br>Place:   Courtroom 5, 4th Floor<br>Judge:  Hon. Paul S. Grewal |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Counterclaim-Plaintiffs,<br><br>    v.<br><br>APPLE INC., a California corporation,<br><br>        Counterclaim-Defendant. | **PUBLIC REDACTED VERSION** |

APPLE'S OPPOSITION TO SAMSUNG'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS INFRINGEMENT CONTENTIONS
CASE NO. 5:12-cv-00630-LHK

ACTIVEUS 109064686v.7

## I. INTRODUCTION

In June 2012, the parties served their infringement contentions in accordance with the Local Patent Rules of this Court. Thereafter, by stipulated agreement, both parties sought and obtained leave to amend their respective infringement contentions in October 2012, and again in November 2012. The parties have spent nearly a year seeking extensive discovery directed to these contentions (both from each other and from third parties), and the close of fact discovery is now just seven weeks away.

Despite that rapidly-approaching deadline, Samsung has filed the present motion in which it seeks leave to amend its infringement contentions for a third time. To be clear, this is not an instance in which a patentee seeks amendment near the close of fact discovery merely to cite recently-obtained discovery in *further* support of its *previously disclosed* infringement theories (something that Apple would not oppose). Rather, Samsung's proposed amendment is replete with substantive changes that, if allowed, would drastically alter the infringement theories on which this case has proceeded over the last year of discovery. These proposed amendments should be rejected for three primary reasons.

*First*, Samsung's proposed amendments contain numerous substantive changes that Samsung *does not even mention* in its motion—including many new infringement theories that Samsung could have asserted long ago, but did not. Having failed to articulate *any* reason to justify the addition of these new amendments, Samsung cannot meet its burden to show good cause for adding any of them.

*Second*, Samsung also has failed to show good cause for the proposed amendments actually addressed in its motion. It argues that certain amendments are proper as a result of the Court's recent *Markman* Order—but those proposed changes have nothing to do with the Court's new constructions, and instead reflect infringement theories that Samsung could have asserted long ago (including under the constructions that Samsung itself proposed during *Markman*). Samsung contends that its other proposed amendments are warranted in view of supposed "recent developments in this litigation," but most of those "developments" are hardly "recent," and none justifies adding new infringement theories at this late stage of discovery.

*Third*, Samsung wholly ignores the substantial resulting prejudice that Apple will suffer if forced to address Samsung's many new and changed infringement theories in the remaining weeks of fact discovery.

Accordingly, because Samsung cannot show good cause for its proposed amendments, and because Apple would suffer undue prejudice as a result of those amendments, the Court should deny the motion to amend (except to the extent that Samsung merely seeks to add citations to recently-produced discovery).

## II.     ARGUMENT

### A.     Samsung Should Not Be Permitted to Amend Its Infringement Contentions to Add the Many New Arguments and Theories Not Even Addressed in Its Motion.

Samsung's proposed third amended infringement contentions contain a host of new substantive arguments for each of the eight patents-in-suit. In its motion, however, Samsung only addresses *some* of these changes (addressed in Sections II(B)-(F) below), while saying *nothing* about numerous others, including:

#### <u>The '087 Patent</u>

- New allegations directed to versions of the 3GPP TS 25.321 standard not referenced in any of Samsung's prior infringement contentions (*compare* Dkt. 305, Ex. 10, Ex. A ['087 Second Amended Contentions] at 3 (limited to *version 7.0.0* "or later") *with* Dkt. 476, Ex. 4, Ex. A ['087 Proposed Third Amended Contentions] at 2 (accusing *version 6.6.0* "and later"));

- New citations to the 3GPP TS 25.309 standard (Dkt. 476, Ex. 4, Ex. A ['087 Proposed Third Amended Contentions] at 2) that Samsung did not include in any of its three prior sets of contentions, even though that standard has existed since the commencement of this litigation;

- New citation to a document that existed in the public domain before Samsung's prior contentions (*e.g.*, *id.* at 2 (adding citation to a public web page that Samsung could have cited in its prior contentions)); and

- New reliance on deposition testimony taken six months ago in November 2012, from Samsung's *own* witnesses, Young Bum Kim and Ju Ho Lee (*id.* at 8, 14, 27).

**The '596 Patent**

- A new allegation that the iPhone 5 is an accused product for the '596 patent (Dkt. 476, Ex. 4, Ex. B ['596 Proposed Third Amended Contentions] at 2 n.2);

- New allegations directed to versions of the 3GPP TS 25.321 standard not referenced in any of Samsung's prior infringement contentions (*compare* Dkt. 305, Ex. 10, Ex. B ['596 Second Amended Contentions] at 3 (limited to *version 7.0.0* "or later") *with* Dkt. 476, Ex. 4, Ex. B ['596 Proposed Third Amended Contentions] at 2 (accusing *version 6.6.0* "and later"));

- New citation to a document that existed in the public domain before Samsung's prior contentions (*e.g.*, Dkt. 476, Ex. 4, Ex. B ['596 Proposed Third Amended Contentions] at 2 (adding citation to a publicly available web page that Samsung could have cited in its prior contentions)); and

- New reliance upon an Intel "XGOLD 61x Product Specification" that was produced more than one year ago in the ITC 794 Investigation between the parties (*id.* at 5, 10, 13, 16, 19, 25, 28).

**The '179 Patent**

- New arguments based on previously non-accused versions of Apple's mobile operating system (*compare* Dkt. 305, Ex. 10, Ex. F ['179 Second Amended Contentions] at 3 n.1 (only accusing *iOS 6*) *with* Dkt. 476, Ex. 4, Ex. F ['179 Proposed Third Amended Contentions] at 2-3 n.1-2 (also accusing *iOS 3, iOS 4, and iOS 5*);

- New theories regarding how the accused products are supposedly representative of each other (Dkt. 476, Ex. 4, Ex. F ['179 Proposed Third Amended Contentions] at 2 n.1);

- A new argument that the accused Apple devices all operate in the same way across iOS 3, iOS 4, iOS 5, and iOS 6 (*id.* at 3 n.2);

- A new argument that the accused Japanese Kana and Chinese Stroke keyboards work in the same way for purposes of the asserted claims (*id.* at 3 n.2); and

- A new theory that each accused iPhone, iPad, and iPod touch model is representative of each other respective accused iPhone, iPad, and iPod touch model (*id.* at 2 n.1).

**The '757 Patent**

- A new theory that "automatic[] transfer [of] music between the user's Mac and/or PC computers using Home Sharing" infringes the '757 patent (*compare* Dkt. 476, Ex. 4, Ex. D ['757 Proposed Third Amended Contentions] at 26-30 *with* Dkt. 305, Ex. 10, Ex. D ['757 Second Amended Contentions] at 11-12); and

- A new argument that previously non-accused third-party docking station products (the "Bose SoundDock Series II Digital Music System" and the "XtremeMac InCharge X2 Charging Station") are under Apple's control and part of an infringing combination (Dkt. 476, Ex. 4, Ex. D ['757 Proposed Third Amended Contentions] at 6-8).

**The '239 Patent**

- A new claim that the iPhone 3G, iPhone 3GS, and first three generations of the iPod touch are accused devices for the '239 patent (Dkt. 476, Ex. 4, Ex. H ['239 Proposed Third Amended Contentions] at 2);

- New equivalents arguments under 35 U.S.C. § 112, ¶ 6, for each of the many means-plus-function limitations in the '239 patent that were ***not*** at issue in *Markman* (*id.* at 10, 11, 14, 19, 20, 21, 23, 43, 44); and

- New arguments that the "means for transmitting" limitation is supposedly met by the previously non-accused Camera, Phone, Contacts, Voice Memos, and "iPod" applications, as well as "other [unspecified] processes" (*id.* at 11).

**The '470 Patent**

- A new argument that "[e]ach [accused Apple] device is an audio/visual (A/V) device" because it is capable of reproducing music and videos (Dkt. 476, Ex. 4, Ex. C ['470 Proposed Third Amended Contentions] at 2); and

- A new contention that the applications processor meets the "control unit" limitation of the asserted claims and "receives user input and controls the display and the audio reproduction circuitry" (*id.* at 12).

**The '449 Patent**

- A new theory of infringement based on a claim that the "A/D converter which converts said analog signal from said imaging device to a digital signal . . . ███████████████████" (Dkt. 476, Ex. 4, Ex. G ['449 Proposed Third Infringement Contentions] at 3);

- A new argument that the accused Apple products contain "a reproducing circuit which reproduces . . . a sound signal in synchronous to said moving image signal," even though Samsung's prior contentions did not identify anything in the accused Apple products supposedly meeting this limitation (*id.* at 7);

- A new theory that the "classification data" limitation of claim 25 is met by "███████████████████████████████████████, and other data pursuant to the Exchangeable Image File Format ('Exif')" (*id.* at 10); and

- A new argument that the "display lists a plurality of classifications and a number of images belonging to each classification" limitation is met by the list of albums screen—an entirely different screen from the thumbnail images screen that Samsung had previously accused for that limitation (*compare* Dkt. 305, Ex. 10, Ex. G ['449 Second Amended Contentions] at 7 *with* Dkt. 476, Ex. 4, Ex. G ['449 Proposed Third Amended Contentions] at 11).

Without ***any*** even attempted justification for these many proposed amendments, Samsung cannot meet its burden to demonstrate good cause for adding any of them. As such, its motion should be denied for each of these proposed amendments, which would prejudice Apple if introduced at this late stage of discovery. *See Nuance Commc'ns, Inc. v. ABBYY Software House*, 08-02912 JSW MEJ, 2012 WL 2427160, at **1-2 (N.D. Cal. June 26, 2012) (rejecting amendments to infringement contentions because, under Rule 3-6, "[t]he party seeking to amend its contentions bears the burden

of establishing diligence," and the patentee "offer[ed] no explanation for [its] delay" in seeking to amend); *Berger v. Rossignol Ski Co., Inc.*, C 05-02523 CRB, 2006 WL 1095914, at *5 (N.D. Cal. Apr. 25, 2006) *aff'd*, 214 F. App'x 981 (Fed. Cir. 2007) ("Even if plaintiffs were found to have promptly sought leave to amend they still fail to satisfy this district's good cause standard as they have not provided any justification for the amendment . . . . [P]laintiffs offer so little explanation that to permit amendment here would render the 'good cause' requirement meaningless.").

### B. Samsung Should Not Be Permitted to Amend Its Infringement Contentions for the '239 and '757 Patents Based on the Court's *Markman* Order.

Samsung contends that it should be permitted to amend its infringement contentions for the '239 and '757 patents based on the Court's April 10, 2013 *Markman* Order. (Mot. at 2-6.)[1] As detailed below, however, Samsung cannot show good cause for any of these proposed amendments, which have nothing to do with the Court's new constructions.

#### 1. Proposed Amendments for the '239 Patent

In its *Markman* Order, the Court construed two terms from the '239 patent: (i) "means for capturing, digitizing, and compressing," which the Court held is a mean-plus-function element with corresponding structure that includes a "video card with video capture module" and an "audio capture card" (Dkt. 447 at 46, 54); and (ii) "means for transmitting," which the Court held is a means-plus-function limitation with corresponding structure that includes "one or more modems connected to one or more cellular telephones, telephone lines and/or radio transmitters" and related "software" that performs a series of steps, including "initializing one or more communications ports on the remote unit" (*id.* at 55-56, 63). Samsung argues that these new constructions justify some of its proposed amendments for the '239 patent, but those arguments fail for the following three reasons.

*First*, for the "means for capturing, digitizing, and compressing" limitation, Samsung claims that it should be permitted to add a new equivalents argument "to allege that to the extent Apple's

---

[1] As used herein, "Mot." refers to Samsung's Notice of Motion and Motion for Leave to Amend and Supplement Its Infringement Contentions.

products do not include 'cards,' the components in Apple's products are insubstantially different from cards":

> To the extent Apple argues that the Mobile Remote Units do not contain the corresponding structure disclosed by the specification and determined by the Court in the Markman Order, the Mobile Remote Units still literally infringe because they contain equivalents thereof. The Mobile Remote Units perform the identical function of capturing, digitizing, and compressing data in substantially the same way of providing chips within the Mobile Remote Units that perform these limitations, with substantially the same result of generating captured, digitized, and compressed data. The chips used within the Mobile Remote Units are equivalents to the structure construed by the Court because they perform the same functions as the "cards" as construed by the Court.

(Mot. at 5; Dkt. 476, Ex. 4, Ex. H ['239 Proposed Third Amended Contentions] at 10.) But this language merely parrots the test for equivalence—without providing any substantive explanation as to how the accused components and claimed structure supposedly perform the same function, in the same way, to achieve the same result. Samsung should not be permitted to add these conclusory assertions at this late stage of discovery—which would unfairly leave Apple guessing as to which equivalents arguments Samsung may advance at trial. *See CSR Tech., Inc. v. Freescale Semiconductor*, No. C–12–02619 RS (JSC), 2013 WL 503077, at *9 (N.D. Cal. Feb. 8, 2013) ("Rule 3–1(e) requires that Plaintiff disclose its entire theory at this stage in the case."); *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (holding infringement contentions must "provide reasonable notice to [the accused infringer] why [the patentee] believes it has a reasonable chance of proving infringement") (citation omitted); *Nuance Comm'ns*, 2012 WL 2427160, at *3 (rejecting proposed amendments to add a new equivalents infringement theory late in litigation where the patentee only offered a "conclusory statement" as justification).

**Second**, for the "means for transmitting" limitation, Samsung contends that amendment is warranted so it can "clarify how the Apple products infringe under the Court's structure." (Mot. at 5.) But Samsung's proposed amendment does not "clarify" anything. Rather, it merely includes a laundry list of components and applications—without identifying any of them as the "modem" and/or "software" required by the Court's construction, or otherwise explaining how the unspecified

"modem" is supposedly "connected to" the other required components or how the "modem" and/or "software" supposedly meet the claimed function of those structures:

> For example, Mobile Remote Units have an applications processor, a baseband chip, a Wi-Fi chip, and one or more cellular or radio frequency transmitters and software sequences for transmitting the composite signal, including software sequences contained in, initialized by, implemented by, or otherwise related to software and/or firmware such as Camera, Photos, Messages, Mail, YouTube, Phone, Contacts, FaceTime, Voice Memos, Email, iTunes, iPod and/or other processes.

(Dkt. 476, Ex. 4, Ex. H ['239 Proposed Third Amended Contentions] at 10.) Again, Apple would be unfairly prejudiced if Samsung is allowed to add this generic "placeholder" argument, presumably so it can continue shifting infringement positions as the case proceeds. *See MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 01-4925 SBA, 2004 WL 5363616, at *5 (N.D. Cal. Mar. 2, 2004) (denying request to amend infringement contentions to add a doctrine of equivalents theory that merely consisted of "general statements and opinions from its expert"); *CSR Tech.*, 2013 WL 503077, at *9; *Shared Memory Graphics*, 812 F. Supp. 2d at 1025; *Nuance Comm'ns*, 2012 WL 2427160, at *3.

**Finally**, Samsung argues that it should be allowed to add new equivalents theories "for ***other claim terms***" because Apple allegedly "made new assertions [during *Markman*] that the structure of the limitations at issue should be significantly narrowed based on the disclosure in the specification . . . and Samsung anticipates that Apple may make the same or similar arguments for other claim terms." (Mot. at 5.) But Samsung's motion does not identify ***any*** of those specific "other claim terms," does not identify ***any*** of the "new assertions" that Apple supposedly made during *Markman*, and does not explain how ***any*** of those ***unspecified*** "assertions" allegedly justify its new ***unspecified*** doctrine of equivalents arguments for the ***unspecified*** "other claim terms." Without that information, Apple cannot respond to this argument, and Samsung cannot demonstrate good cause for its proposed amendments. *See Nuance Comm'ns*, 2012 WL 2427160 at *3 (denying leave to add a doctrine of equivalents theory late in litigation where the patentee only offered a "conclusory statement" in support of its proposed amendment); *GN Resound A/S v. Callpod, Inc.*, No. C 11-04673 SBA, 2013 WL 1190651, at *7 (N.D. Cal. Mar. 21, 2013) ("Courts in this district . . . have rejected attempts to

invoke the doctrine of equivalents through blanket statements without providing specific analysis, on an element by-element basis, as to its theory of why there is infringement under the doctrine of equivalents").[2]

### 2. Proposed Amendments for the '757 Patent

Samsung maintains that it should be permitted to add multiple new infringement theories for the '757 patent based on the Court's determination that a "zone specific storage and interface device" is "a storage and interface device that resides in an area, such as a room or similar location." (Mot. at 4.) But Samsung argued during *Markman* that ***anything*** was a "zone." (Dkt. 335 [Samsung's Opening Claim Construction Br.] at 14 ("The specification broadly describes a 'zone' as an area where a consumer may have 'substantially exclusive or reclusive enjoyment of its multimedia content wherever the consumer may go.'").) As such, Samsung had every reason (and ability) to argue long ago—including under its ***own*** proposed construction—that infringement of the '757 patent could be based on devices that "are within Apple stores, connected to a dock or other apparatus, or residing in a room generally." (Mot. at 4.) By failing to raise that argument in any of its prior three rounds of infringement contentions, Samsung has waived it, and the Court's *Markman* Order does not provide any basis to revive it. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, Nos. C 10–3724 CW, C 10–5254 CW, 2013 WL 1701737, at *4 (N.D. Cal. Apr. 18, 2013) (denying leave to amend contentions to add new products because plaintiff waived its good cause arguments by raising them too late); *Dynetix Design Solutions, Inc. v. Synopsis Inc.*, No. CV 11-05973 PSG, 2012 WL 6019898, at *2 (N.D. Cal. Dec. 3, 2012) (rejecting request to add a new infringement theory that patentee reasonably "could have discovered earlier had it acted with the requisite diligence") (citation omitted).

Likewise, Samsung has no legitimate basis to contend that the *Markman* Order somehow supports its effort to allege for the first time that third-party docking stations are part of an infringing combination for the '757 patent. Under the theory that Samsung pressed during *Markman*, ***every*** type

---

[2]   To the extent Samsung later contends that Apple made these "new assertions" somewhere in its *Markman* briefs, Samsung still could not prove good cause given that Apple filed those briefs months ago.

of device could be a "zone specific storage and interface device"—including third-party docking stations.  (Dkt. 335 [Samsung's Opening Claim Construction Br.] at 13 (proposing to construe "zone specific storage and interface device" as "a storage and interface device associated with a particular viewing and/or listening zone").)  Samsung cannot rely on the Court's claim construction to accuse the *same* devices that it could have accused under its own proposed construction—but did not.  *See Dynetix Design*, 2012 WL 6019898, at *2; *Google, Inc. v. Netlist, Inc.*, C 08 4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) ("The critical issue is not when Netlist discovered this information, but rather, whether they could have discovered it earlier had it acted with the requisite diligence.").

**C.      Samsung Should Not Be Permitted to Amend Its Infringement Contentions for the '757, '087, '596, and '449 Patents Based on Discovery That Has Long Been in Its Possession.**

Samsung contends that it should be permitted to amend its infringement contentions for the '757, '087, '596, and '449 patents "in response to recent, non-public information produced by Apple and third parties."  (Mot. at 6.)  Apple does not object to the extent that Samsung merely seeks to add citations to discovery that Apple or third parties recently produced.  But, as detailed below, most of Samsung's discovery-based amendments are based on documents and testimony that Samsung has had in its possession for many months, including the following:

**The '757 Patent**

Samsung alleges that it has good cause to amend its willful infringement contentions for the '757 patent because Apple purportedly "withheld" documents relating to negotiations between Apple and the prior assignee of the patent, ReQuest, Inc.  (Mot. at 6-7.)  But Samsung has known about Request's (unsuccessful) offer of the '757 patent to Apple since at least ████████████ ████████████████████████████████████████████ ████████████████████████ (Ex.[3] 1 [7/26/2011 Email] at SAMNDCA630-06439448

---

[3]      As used herein, "Ex." refers to the exhibits attached to the Declaration of Mark D. Selwyn in Support of Apple's Opposition to Samsung's Motion for Leave to Amend and Supplement Its Infringement Contentions.

(████████████████████████████████████████████████

████████████████████████████████████████████████); Ex. 2 [Due

Diligence Materials] at Cholnoky_630DEF-000000093 ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████).)

Therefore, given Samsung's ██████████████████████████, Samsung

cannot excuse its prior failure to allege a willfulness claim based on anything that later occurred in

discovery. *See Dynetix Design*, 2012 WL 6019898, at *2 (rejecting proposed amendment to add a

new infringement theory that the patentee should have known about at the time of its original

infringement contentions based on documents available to the patentee at the time).

### The '087 and '596 Patents

Samsung argues that it should be permitted to amend its infringement contentions to add new

"evidentiary support that was recently disclosed by Apple and third parties Qualcomm, Intel, Alcatel-

Lucent, and AT&T." (Mot. at 8.) Apple does not oppose this request to the extent it seeks to cite to

source code that Alcatel-Lucent produced in March 2013, and that Qualcomm produced in April

2013. But Apple otherwise objects to Samsung's attempt to add this new "evidentiary support."

*First*, Samsung's proposed contentions assert for the first time that: (i) the '087 patent covers

four new 3GPP standards (3GPP TS 25.321 v. 6.6.0; 3GPP TS 25.321 v. 6.18.0; 3GPP TS 25.331 v.

6.21.0; and 3GPP TS 25.309 v. 6.6.0); and (ii) the '596 patent covers two new 3GPP standards

(3GPP TS 25.321 v. 6.6.0 and 3GPP TS 25.321 v. 6.18.0). (Dkt. 476, Ex. 4, Ex. A ['087 Proposed

Third Amended Contentions] at 2, 3, 9, 15, 17, 18, 22, 27, 31, 32, 36; *id.*, Ex. 4, Ex. B ['596

Proposed Third Amended Contentions] at 2, 3, 7, 12, 15, 18, 25, 27). According to Samsung, it first

"became aware" of its supposed infringement claims arising under these standards only "after

reviewing . . . disclosures from Intel, Alcatel-Lucent, and AT&T." (Mot. at 8.) But these standards

have been publicly available for years, and Samsung does not even attempt to explain why it was

unable to determine that its *own patents* cover these known 3GPP standards until after it reviewed

confidential documents obtained *from third parties*.  As such, Samsung cannot show good cause for these amendments.  *See Dynetix Design*, 2012 WL 6019898, at \*2 (finding lack of good cause to add a new infringement theory because the patentee should have known about the theory at the time of its original infringement contentions based on documents "publicly available" via the internet); *Google*, 2010 WL 1838693, at \*2 (rejecting motion to amend infringement contentions where patentee "had more than ample opportunity early in the litigation to discover the existence of these non-public documents and to ascertain whether they disclosed a potential basis for additional infringement contentions").

   **Second,** despite its claim to the contrary, Samsung has not shown good cause to add citations to the following documents, source code, and deposition testimony—which have long been publicly available and/or otherwise in Samsung's possession:

- An Apple web page that was publicly available before Samsung's last amendment in November 2012 (Dkt. 476, Ex. 4, Ex. A ['087 Proposed Third Amended Contentions] at 2; *id.,* Ex. B ['596 Proposed Third Amended Contentions] at 2);

- Source code that Intel produced five months ago in January 2013, and documents that AT&T produced four months ago in February 2013 (Mot. at 8);

- Deposition testimony taken in November 2012 from Samsung's *own* witnesses, Young Bum Kim and Ju Ho Lee (Dkt. 476, Ex. 4, Ex. A ['087 Proposed Third Amended Contentions] at 8, 14, 27); and

- An Intel "XGOLD 61x Product Specification" that was produced *more than one year ago* in the ITC 794 Investigation between the parties (Dkt. 476, Ex. 4, Ex. B ['596 Proposed Third Amended Contentions] at 5, 10, 13, 16, 19, 25, 28).

   Samsung has not shown good cause to add any of these new citations, particularly at this late stage of discovery.  *See Google*, 2010 WL 1838693, at \*2 (rejecting motion to amend infringement contentions where patentee "had more than ample opportunity early in the litigation to discover the existence of these non-public documents and to ascertain whether they disclosed a potential basis for additional infringement contentions"); *Acer, Inc. v. Tech. Properties Ltd.*, 5:08-CV-00877 JF/HRL, 2010 WL 3618687, at \*4 (N.D. Cal. Sept. 10, 2010) (rejecting motion to amend infringement

contentions where patentee waited "until . . . three months after it began its review and three weeks after that review was completed" to seek leave to amend); *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, C05-03117 MJJ, 2007 WL 2221029, at **1-2 (N.D. Cal. July 30, 2007) (denying motion to amend infringement contentions where party had evidence at issue for five months before seeking leave to amend, and only two months remained in discovery).

**The '449 Patent**

Samsung claims that it should be permitted to identify a "recording circuit" in the accused Apple devices for the first time based on a Bill of Materials document that Apple recently produced showing "flash memory." (Mot. at 8.) But that document does not disclose anything new—Samsung had Bills of Materials for the accused Apple products in its possession *before* it served its Second Amended Infringement Contentions *in November 2012*. (*E.g.*, Ex. 3 [iPhone 4S Bill of Materials] at APL630DEF-WH0000094087, 94091 (referring to flash memory).)

Samsung also claims that it should be permitted to identify a "'reproducing circuit' that includes an audio codec chip"—which would be the first time Samsung has identified a component for this limitation—based on documents received in discovery from Cirrus Logic. (Mot. at 8.) But again, by November 2012, Apple had already produced documents that specifically identified the *same* Cirrus Logic audio codec chip. (*E.g.*, Ex. 3 [iPhone 4S Bill of Materials] at APL630DEF-WH0000094090 (listing Cirrus Logic Inc. ████████); Ex. 4 [new iPad Bill of Materials] at APL630DEF-WH0000095682 (listing Cirrus Logic Inc. ████████).) Indeed, *since the outset of this case*, Samsung has had Apple's production of datasheets—containing detailed specifications of the audio codec chip—that Samsung has now (again) received from Cirrus Logic. (*E.g.*, Ex. 5 [Datasheet for Cirrus Logic ████████] at APL-ITC796-0000549074; Ex. 6 [Datasheet for Cirrus Logic ████████] at APL-ITC796-X0000002958; Dkt 84 [Stipulation and Order re Discovery] at 2 (stipulating documents produced in other cases are deemed produced in this case).) In fact, in its Second Amended Infringement Contentions for a different patent (the '470 patent), Samsung cited a document showing the Cirrus Logic audio codec (and other components). (Dkt. 305, Ex. 10, Ex. C ['470 Second Amended Contentions] at 11-13.) Samsung cannot excuse its failure

to disclose this new theory in a timely manner simply because Apple and Cirrus Logic more recently produced **additional** documents directed to the **same** chip and feature.

### D. Samsung Should Not Be Permitted to Amend Its Infringement Contentions to Add Doctrine of Equivalents Theories for Each of Its Eight Asserted Patents.

In its first three sets of infringement contentions, Samsung **never** alleged that Apple infringed a **single** claim of **any** of the eight patents-in-suit under the doctrine of equivalents. But now, in the final weeks of fact discovery, Samsung contends for the first time that it should be permitted to assert an equivalents theory for **each** of those patents—based on a claim that it could not have asserted an equivalents theory any sooner because Apple supposedly "fail[ed] to disclose its noninfringement theories" in discovery. (Mot. at 9-10.) That argument fails for several reasons.

**First**, Local Rule 3-1 required Samsung to disclose its equivalents theories, if any, in its original contentions filed in June 2012—without regard to whether Apple had already identified the specific limitations for which Samsung cannot prove literal infringement. *See* L.R. 3-1(e) (providing that infringement contentions "shall contain . . . [w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality"). Simply put, nothing in the Local Rules permits a patentee to delay its compliance with Rule 3-1(e) until **after** the accused infringer states its noninfringement positions in discovery. *See GN Resound*, 2013 WL 1190651, at *2 ("The purpose of Rule 3-1 is to be nitpicky, to require a plaintiff to crystalize its theory of the case and patent claims.") (citations omitted); *Acer*, 2010 WL 3618687, at *4 (finding patentee did not establish good cause to amend its infringement contentions where it did not seek leave to amend "until . . . three months after it began its review and three weeks after that review was completed").[4]

**Second**, as Samsung admits, Apple served timely discovery responses in early November 2012, in which it identified the specific limitations that it believes are not literally met by the accused

---

[4]    Otherwise, a patentee could unilaterally delay the disclosure of its equivalents theories, as required by the Local Rules, simply by waiting to serve discovery seeking the accused infringer's noninfringement positions.

Apple products.  (Ex. 7 [Response to Interrog. No. 12] at 34-53.)  Yet, over the next five months, Samsung did not even attempt to amend its infringement contentions to assert infringement under the doctrine of equivalents for any of those limitations—leading Apple to believe (reasonably) that Samsung had decided to limit its contentions to literal infringement alone.[5]  Samsung should not be permitted to add equivalents theories for each of the eight asserted patents—an expansion that would unfairly prejudice Apple with just seven weeks left in fact discovery.  *See Berger*, 2006 WL 1095914, at *4 (denying leave to amend infringement contentions, in part, because the accused infringer had "relied on plaintiffs' preliminary infringement contentions for the past three months").

*Third*, Samsung's new equivalents arguments should also be rejected because they consist entirely of conclusory, boilerplate recitations of the function-way-result test—with no "specific analysis" of how the accused components purportedly satisfy each prong of the test.  *See GN Resound*, 2013 WL 1190651, at *6 ("A party asserting infringement under the doctrine of equivalents must provide specific analysis, on an element-by-element basis, as to its theory of why there is infringement under the doctrine [of equivalents].") (citing cases); *Nuance Commc'ns*, 2012 WL 2427160, at *6 (same); *Creagri, Inc. v. Pinnaclife Inc., LLC*, No 11-cv-06635-LHK-PSG, 2012 WL 5389775, at *6 (N.D. Cal. Nov. 2, 2012) ("[A plaintiff] cannot merely add boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory."); *CSR Tech.*, 2013 WL 503077, at *9 (rejecting boilerplate doctrine of equivalents contentions).  Without that required detail, Samsung's proposed contentions do not "provide reasonable notice to [Apple] why [Samsung] believes it has a reasonable chance of proving infringement."  *Shared Memory Graphics*, 812 F. Supp. 2d at 1025; *Rambus Inc. v. Hynix Semiconductor Inc.*, Nos. C-05-00334 RMW, C-05-02298 RMW, C-06-00244 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008) ("The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation.").

---

[5]    Samsung repeatedly casts Apple's November 2012 discovery responses as an improper effort by Apple to "deliberately obscure" its noninfringement positions.  (Mem. at 11.)  But that argument fails in view of Samsung's own noninfringement contentions for Apple's asserted patents, which disclose the same level of detail.  (Ex. 8 [Response to Interrog. No. 24] at 11-22.)

**Fourth,** Samsung alternatively contends that it should be permitted to add new doctrine of equivalents theories for the '449 and '757 patents "based on non-public information from Apple and third parties." (Mot. at 9.) But for the '449 patent, Samsung long ago could have asserted its new theory that "███████████████████████████████████████████████"—as confirmed by its failure to cite any new evidence produced by anyone on this issue giving rise to a new claim. In fact, Samsung has long had technical documents from Apple showing the existence of ████████████████████ in the accused products. (Ex. 9 [Datasheet for OmniVision ██████ ████] at APL630DEF-WH0000098160 (describing █████████████████████████████ ████████████████); *id.* at 98161 (block diagram showing ████████████); Ex. 10 [Datasheet for OmniVision ████████████] at APL630DEF-WH0000098061-2 (same).)

Nor can Samsung claim that it was unaware that it could assert an equivalents theory for the "classification" limitations of the '449 patent until after it reviewed Apple source code. Samsung's proposed amendments for the '449 patent do not cite ***any*** source code at all, and instead rely ***entirely*** on screen shots from the accused Apple products that have been in Samsung's possession since at least June 2012. (Ex 11 ['449 Original Infringement Contentions] at 8-17 (showing screen shots).) *See Nuance Commc'ns*, 2012 WL 2427160, at *3 (denying proposed amendments based on supposed review of source code where the patentee only "conclusor[ily] asserts that its recent review of the source code compels these substitutions, but it does not cite to any specific examples to corroborate this argument").

Similarly, for the '757 patent, Samsung seeks to allege a new doctrine of equivalents theory where "more than one device is used to operate the server," claiming that it could not have alleged that theory until now because "Apple continues to withhold documents and source code regarding the design architecture and operation of iTunes, iCloud, and iTunes Match." (Mot. at 9.) But Samsung does not even attempt to explain why it ***can*** assert such a theory now, but could ***not*** assert the same theory earlier, if Apple has truly withheld, and continues to withhold, the documents necessary for Samsung to identify the theory. The reason for that lack of explanation is plain: Apple has not improperly withheld any such documents, and Samsung fails to cite any evidence (produced by Apple or anyone else) that otherwise supports this new claim.

Moreover, Apple began producing relevant documents from Apple custodians related to iTunes *last year*, and has made numerous productions with tens of thousands of documents from these custodians since—all months before the parties' agreement required production of custodian documents. As such, Samsung has had long had relevant iTunes documents in its possession that would have permitted it to assert the same doctrine of equivalents theory against the same multiple-device configuration. Having failed to advance that equivalents theory earlier, it should not be permitted to do so now just a few weeks before the close of fact discovery.

***Finally***, allowing Samsung to add doctrine of equivalents theories for the first time now would unduly prejudice Apple. Throughout nearly one year of discovery, Samsung failed to provide ***any*** notice that it might rely on a doctrine of equivalents theory for ***any*** of its eight asserted patents. Relying on that lack of notice, Apple has focused its discovery efforts to date on defending against Samsung's claims of literal infringement. Forcing Apple to defend against new equivalents theories now—with just seven weeks of fact discovery remaining—would be extremely burdensome to Apple by requiring it to re-evaluate prior art and claim construction (to determine whether Samsung is now interpreting the claims in a way that would ensnare prior art), to launch extensive new consultation and investigation with its experts, and potentially to re-depose party and third-party witnesses, such as inventors. This resulting prejudice also requires denial of Samsung's motion. *See Dynetix Design*, 2012 WL 6019898, at *3 (denying amendment that would unfairly prejudice the accused infringer by "expand[ing] the case substantially"); *Speedtrack, Inc. v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 13575, **3-4 (N.D. Cal. Feb. 3, 2012) (finding prejudice would occur if plaintiff was permitted to amend its contentions six months after discovering the need to do so, because discovery might need to be reopened to permit the parties to litigate the new theory); *Sun Microsystems, Inc. v. Network Appliance, Inc.*, C-07-05488 EDL, 2009 WL 508448, at *1 (N.D. Cal. Feb. 27, 2009) ("The delay is prejudicial to NetApp which correctly points out that only two months remain for discovery, and Sun's proposed additions would require NetApp to further develop its non-infringement position, investigate identified prior art and potentially search for further prior art.").

**E.  Samsung Should Not Be Permitted to Amend Its Infringement Contentions Based on the Federal Circuit's August 2012 *Akamai* Decision.**

In *Akamai Tech, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (*en banc*), the Federal Circuit held for the first time that a patentee can prove indirect infringement of a method claim, even if no single induced entity directly infringed the claim, as long that the accused infringer induced multiple entities to **collectively** perform all of the claimed steps.  *Id.* at 1306.  In an argument spanning just eight lines of text, Samsung contends that it should be permitted to amend its infringement contentions for the '239 patent in view of *Akamai*.  (Mot. at 11.)  But that argument should be rejected as both irrelevant and untimely.

**First**, for the '239 patent, Samsung has asserted two claims against Apple—both of which are apparatus claims.  (Dkt. 383 [Samsung's Corrected Identification of Asserted Claims] at 3.)  As such, *Akamai's* **method claim**-based holding is irrelevant to Samsung's infringement allegations for the **apparatus** claims of the '239 patent.  *See Akamai*, 692 F.3d at 1305-06 ("The problem of divided infringement in induced infringement cases typically arises only with respect to method patents.  When claims are directed to a product or apparatus, direct infringement is always present, because the entity that installs the final part and thereby completes the claimed invention is a direct infringer.").

**Second,** *Akamai* is also irrelevant to Samsung's proposed amendment because Samsung merely contends that Apple induced unspecified "customers" to directly infringe the '239 patent—without alleging that **two of more** of the supposed "customers" **collectively** infringed any claim of the '239 patent.  (Dkt. 476, Ex. 4, Ex. H [Proposed Third Amended Contentions] at 1 ("Apple also indirectly infringes this claim by offering to sell and selling components of the claimed apparatus to customers and by encouraging and aiding those customers to use the products in a manner that meets each and every step of this claim. . . .  *See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc).").)  Therefore, even if Samsung could stretch *Akamai* to reach the apparatus claims of the '239 patent, Samsung's new **single-party** allegation of direct infringement has nothing to do with *Akamai's* **multiple-party** holding.

**Third**, despite its claim to the contrary, Samsung did not "diligently" seek to amend its infringement contentions after *Akamai*—which the Federal Circuit decided **nearly eight months ago in August 2012**.  (*Id.*)  During that eight month period of delay, Samsung twice amended its

infringement contentions for the '239 patent without any mention of *Akamai* or a supposed need to "further elaborate on its allegations of indirect infringement" as a result of that decision. This lengthy and unexplained delay further bars Samsung from adding an entirely new indirect infringement theory just seven weeks before the close of fact discovery. *See Abbott Diabetes Care*, 2007 WL 2221029, at *2 (rejecting amendment of infringement contentions to add new accused products "because less than two months remain before the . . . termination of fact discovery [and] the addition of new products would likely derail the case management schedule, require additional claim construction, and delay trial"); *Sun Microsystems*, 2009 WL 508448, at *1 ("The delay is prejudicial to NetApp which correctly points out that only two months remain for discovery, and Sun's proposed additions would require NetApp to further develop its non-infringement position, investigate identified prior art and potentially search for further prior art.").

　　　　**Finally**, Samsung's motion is also untimely in view of the Court's Local Patent Rules, which—***at the outset of this case***—required Samsung to explain whether it was relying on an indirect infringement theory based on the acts of multiple parties (and if so, to identify each party and their alleged "role"):

> For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. ***Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.***

L-R 3-1(d). Having failed to include any of this required information in its June 2012, October 2012, or November 2012 infringement contentions, Samsung should not be allowed to add it for the first time now. *See MEMC Elec.*, 2004 WL 5363616, at *6 (precluding patentee from asserting a doctrine of equivalents theory because it had failed to act diligently in seeking leave to add the new theory pursuant to Patent L.R. 3-1(d)).

　　**F.　　Samsung Should Not Be Permitted to Amend Its Infringement Contentions to Add New Samsung Products That Supposedly Practice Samsung's Own Patents.**

　　　　Samsung raises two arguments why it should be allowed to amend its contentions to allege that the Galaxy S III (Jelly Bean) and Galaxy Note II practice multiple Samsung patents—including

the '058 patent, '757 patent, and '449 patent, for which Samsung did not identify *any* allegedly practicing products in any of its previous three sets of infringement contentions. (Mot. at 10.) Neither argument has merit.

*First*, Samsung contends that it should be allowed to add the two products to its contentions because Apple did not identify them as infringing devices for Apple's patents until January 2013. (Mot. at 10-11.) But the timing of *Apple's* identification of products that infringe *Apple's* patents has nothing to do with *Samsung's* unrelated and independent obligation under Local Rule 3-1(g) to identify products that allegedly practice *Samsung's* own patents. *See* L.R. 3-1(g) ("If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party shall identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.").) Samsung cannot choose to add products that it truly believes practice one or more of its asserted patents (the S III (Jelly Bean), launched in May 2012 and/or Galaxy Note II, launched in July 2012) after, and only after, those products are accused of infringement. Samsung should not be permitted to prejudice Apple by adding the Galaxy S III (Jelly Bean) and Galaxy Note II as allegedly practicing products at this late stage of discovery. *See Nuance Commc'ns*, 2012 WL 2427160, at *1 (rejecting request to amend infringement contentions to add allegedly infringing products that the patentee had known about for several months before seeking leave to amend).

*Second*, Samsung argues that its delay should be excused because it "promptly" sought leave to add the products after the Court entered its *Markman* Order. (Mot. at 11.) But Samsung fails to cite *anything* in the Order that could justify the addition of those products. In fact, in its motion, Samsung contends that it has wanted to add the two products since February 2013—months before entry of the *Markman* Order. *See Nuance Commc'ns,* 2012 WL 2427160, at *3 (rejecting proposed amendments that the patentee alleged were justified in view of a recent event, where the patentee expressed a desire to make the same amendments even before the event). Moreover, the Court's Order only construed terms from the three of Samsung's asserted patents (i.e., the '087, '239, and '757 patents), and thus is indisputably irrelevant to whether Samsung should be permitted to add

practicing products for the other five Samsung patents that did not have *any* terms construed (i.e., the '058, '179, '596, '470, and '449 patents).

For these reasons, Samsung should be limited to the allegedly practicing products that it disclosed in its second amended infringement contentions, as further reduced by its more recently-filed submission listing products that allegedly practice its patents. (Dkt. 383 [Samsung's Corrected Identification of Asserted Claims].)

## III. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court deny Samsung leave to amend its infringement contentions.

WILMER CUTLER PICKERING
HALE AND DORR LLP

Dated: May 14, 2013                    By:  __/s/ Mark D. Selwyn_____

Mark D. Selwyn

*Attorney for Plaintiff and Counterclaim-Defendant Apple Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil Local Rule 5-1, and will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have consented to electronic service in accordance with Civil Local Rule 5-1 via the Court's ECF system.

Dated: May 14, 2013                                    By:   /s/ Mark D. Selwyn

                                                            Mark D. Selwyn