# EXHIBIT 7

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                Plaintiff,<br><br>        v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                Defendants. | Civil Action No. 12-CV-00630-LHK (PSG)<br><br>**APPLE INC.'S OBJECTIONS AND RESPONSES TO SAMSUNG'S FIRST SET OF INTERROGATORIES**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br>                Counterclaim-Plaintiffs,<br>        v.<br><br>APPLE INC., a California corporation,<br><br>                Counterclaim-Defendant. | |

1  success caused by the claimed invention (Samsung itself does not claim to practice the

2  patent); (iii) that anyone has copied the '449 patent; (iv) that anyone has sought a license to

3  the '449 patent; or (v) any praise of the '449 patent.

4          Discovery is still in its early stages and Apple is continuing to investigate.  Apple

5  reserves the right to supplement and/or amend its response as appropriate.

6  **INTERROGATORY NO. 12:**

7          If YOU contend or believe that YOU do not infringe any asserted claim of the

8  SAMSUNG PATENTS, state with specificity the complete factual and legal bases for such

9  contention or belief.

10 **RESPONSE TO INTERROGATORY NO. 12**

11         Apple objects to this Interrogatory as premature to the extent that it: (a) conflicts with

12 the schedule entered by the Court, (b) conflicts with the obligations imposed by the Federal

13 Rules of Civil Procedure, the Civil Local Rules and/or the Patent Local Rules of this Court,

14 and/or any other applicable rule; (c) seeks information that is the subject of expert testimony;

15 (d) seeks information and/or responses that are dependent on the Court's construction of the

16 asserted claims of the patents-in-suit; or (e) seeks information and/or responses that are

17 dependent on depositions and documents that have not been taken or produced.  Apple also

18 objects to this Interrogatory as premature on the ground that Samsung's infringement

19 contentions under Patent Local Rule 3-1 fail to specifically identify the features and/or

20 functionality of the accused Apple products that Samsung contends satisfy each limitation of

21 the asserted claims of the patents-in-suit and otherwise lack sufficient detail to allow Apple

22 to identify "the complete factual and legal bases" for its noninfringement arguments.

23         Apple also objects to this Interrogatory on the grounds that it is overbroad, unduly

24 burdensome, and not reasonably calculated to lead to the discovery of admissible evidence,

25 especially to the extent it seeks information about the accused Apple products beyond the

26 components or technologies of those products that may be relevant to Samsung's patents-in-

27 suit, and/or that Samsung has placed at issue in this case in its Patent Rule 3-1 Disclosures.

28                                              -34-

1   Apple further objects to this Interrogatory to the extent it requires information outside

2   Apple's possession, custody, and control, including, for example, information concerning

3   components that Apple has purchased from third parties.

4   Subject to and without waiving the foregoing General and Specific Objections, Apple

5   responds as follows:

6   **'087 Patent**

7   Apple denies that it infringes the '087 patent and denies that the '087 patent is

8   essential to any standard.  Nevertheless, Samsung's submission of declarations to ETSI

9   covering the '087 patent obligates Samsung to license the '087 patent FRAND terms.

10   Apple has not directly infringed, induced infringement of, or contributed to

11   infringement of the '087 patent.  Samsung's infringement contentions fail to demonstrate

12   direct or indirect infringement of the '087 patent by Apple.  Samsung's contentions also fail

13   to allege any facts to support its allegations of indirect infringement, including with respect

14   to the critical issues of whether Apple intended to induce others to infringe the '087 patent,

15   whether the Accused Products are capable of substantial non-infringing uses, whether the

16   Accused Products were especially made or especially adapted for infringing use, and how

17   others have supposedly directly infringed the '087 patent.

18   Samsung has not shown that any Accused Product has any of the features of the

19   UMTS standards cited in Samsung's infringement contentions.  Based on Apple's current

20   understanding of the asserted claims of the '087 patent, and with reservation of all rights to

21   amend or supplement this interrogatory response, the Accused Products do not: (1) perform

22   "non-scheduled transmission"; (2) receive non-scheduled transmission information indicating

23   k TTIs; (3) receive the non-scheduled transmission parameter, N; (4) identify, or transmit on,

24   k of N TTIs; (5) transmit data "within a data rate"; (6) compute a "determination value"; and

25   (7) have a "receiver receiving" and a "transmitter transmitting" simultaneously.

26   Further responding, based on Apple's current understanding of the asserted claims of

27   the '087 patent, and recognizing that Samsung has not specifically identified the features

28   -35-

1    and/or functionality of the Accused Products that it contends satisfy each limitation of the

2    asserted claims—for example, Samsung has failed to identify any "receiver receiving non-

3    scheduled transmission information indicating k transmission time intervals (TTIs) for

4    transmitting non-scheduled data via the E-DCH" in the Accused Products —Apple states that

5    at a minimum the following limitations of the asserted claims of the '087 patent are not

6    satisfied by the Accused Products: "receiving non-scheduled transmission information

7    indicating k transmission time intervals (TTIs) for transmitting non-scheduled data via the E-

8    DCH, wherein non-scheduled transmissions can be performed during the k TTIs within a

9    period having N TTIs"; "transmitting data on at least one TTI of the k TTIs within the period,

10   wherein the parameter k is an integer greater than 0 and less than or equal to a positive

11   integer N"; "non-scheduled transmission information is configured by a bit map of N bits

12   indicating the k TTIs using specific bit values"; "transmitting the data within a data rate

13   allowed by a radio network controller (RNC) on at least one of the k TTIs"; "computing a

14   non-scheduled transmission determination value according to a connection frame number

15   (CFN) for generating a frame to be used in communication with a Node B accessed by the

16   UE and a subframe number"; "transmitting the data in TTIs in which non-scheduled

17   transmission determination values correspond to values of the k TTIs"; "the non-scheduled

18   transmission determination value is computed by (CFN*n+Subframe Number)mod N, where

19   a TTI size of the E-DCH is 1/n of a frame length"; "a receiver receiving non-scheduled

20   transmission information indicating k transmission time intervals (TTIs) for transmitting non-

21   scheduled data via the E-DCH, wherein non-scheduled transmissions can be performed

22   during the k TTIs within a period having N TTIs"; "a transmitter transmitting data on at least

23   one TTI of the k TTIs within the period; wherein the k is an integer greater than 0 and less

24   than or equal to a positive integer N"; "the transmitter transmits the data within a data rate

25   allowed by a radio network controller (RNC) on at least one TTI of the k TTIs;" "the

26   transmitter computes a non-scheduled transmission determination value according to a

27   connection frame number (CFN) for generating a frame to be used in communication with a

28                                              -36-

1   Node B accessed by the UE and a subframe number"; "the transmitter … transmits the data

2   in TTIs in which non-scheduled transmission determination values correspond to values of

3   the k TTIs"; "a receiver receiving at least one of scheduling assignment information

4   generated by the Node B based on a scheduling information and non-scheduled transmission

5   information indicating k transmission time intervals (TTIs) for transmitting non-scheduled

6   data via the E-DCH within a period having N TTIs"; "a controller selecting a Node B

7   controlled scheduling mode or an non-scheduled transmission mode to transmit data"; "a

8   transmitter transmitting uplink data according to the scheduling assignment information in

9   the Node B controlled scheduling mode"; and "a transmitter …transmitting uplink data on at

10  least one TTI of the k TTIs within the period in the non-scheduled transmission mode;

11  wherein the parameter k is an integer greater than 0, and less than or equal to a positive

12  integer N."

13       At least because the Accused Products do not satisfy all limitations of claims 1 and 9

14  of the '087 patent, they also do not infringe dependent claims 2, 6, 7, 8, 10, 14, 15, 16, 34,

15  35, 39, and 40.

16  **'058 Patent**

17       Samsung's infringement contentions as to '058 patent lack sufficient detail to allow

18  Apple to identify all its potential noninfringement arguments.  Samsung's contentions fail to

19  allege any facts to support its allegations of indirect infringement, including with respect to

20  the critical issues of whether Apple intended to induce others to infringe the '058 patent,

21  whether the Accused Products are capable of substantial non-infringing uses, whether the

22  Accused Products were especially made or especially adapted for infringing use, and how

23  others have supposedly directly infringed the '058 patent.

24       Furthermore, and not by way of limitation, although Samsung's Patent Local Rule 3-1

25  infringement contentions purport to accuse the iPhone, iPad, and iPod Touch (4th Gen.),

26  Samsung's contentions fail to address each limitation of the asserted claims for each of those

27  products.  In addition, although Samsung purports to accuse the Contacts, Calendar, Safari,

28                                      -37-

1   and Messages applications, Samsung does not sufficiently explain how the functionality of

2   these applications allegedly meets the limitations of the asserted claims.

3       Based on Apple's current understanding of the asserted claims of the '058 patent,

4   Apple responds that it does not infringe the below-identified asserted claims for at least the

5   following reasons:

6       Samsung identifies "a touchscreen" as a "user input unit," but then contends that "the

7   touchscreen firmware that operates and is pre-loaded on the Accused Device outputs a data-

8   display request signal if there is a data-display request from a user."  From this disclosure, it

9   is unclear (i) what hardware and/or software Samsung contends is the "touchscreen" and

10  whether Samsung is accusing the "touchscreen" alone as the "user input unit," or (ii) what

11  hardware and/or software Samsung contends is "the touchscreen firmware" and whether

12  Samsung is accusing "the touchscreen firmware" alone as the "user input unit."  Regardless,

13  "touchscreen firmware" is not a "user input unit," and Samsung has failed to identify any

14  "data-display request" or "data-display request signal" in connection with either a

15  "touchscreen" or "touchscreen firmware" as required by claims 1, 4, or 17 ("a user input unit

16  for outputting a data-display request signal if there is a data-display request from a user") or

17  claims 9 or 12 ("if a data display request signal is inputted by a user").

18      Samsung also identifies "a home button" as a "user input unit," and contends that it

19  "outputs a data-display request signal upon being pressed by the user."  But the home button

20  is not a "user input unit," and Samsung has failed to identify any "data-display request" or

21  "data-display request signal" in connection with the home button as required by claims 1, 4,

22  or 17 ("a user input unit for outputting a data-display request signal if there is a data-display

23  request from a user") or claims 9 or 12 ("displaying a plurality of identification information

24  corresponding to a plurality of data if a data display request signal is inputted by a user").

25      Samsung contends that "[e]ach Accused Device has a memory unit comprised of

26  internal flash memory and dynamic random access memory for storing a plurality of data and

27  a plurality of identification information corresponding to such data (including icons, folder

28                                          -38-

1   names, file names, and pictures),” but does not specifically identify any such memory unit, as

2   required by claims 1, 4, or 17 (“a memory unit for storing a plurality of data and a plurality

3   of identification information corresponding to said plurality of data”).

4          Samsung contends that “[e]ach Accused Device has a screen for displaying the

5   plurality of data.”  But Samsung does not identify what it means by “a screen” as required by

6   claims 1, 4, or 17 (“a display unit for displaying the plurality of data”).  In addition, to the

7   extent Samsung contends the same “screen”/”touchscreen” satisfies both the “display” and

8   “user input unit” requirements of the asserted claims, Samsung also fails to satisfy these

9   elements of the claims.

10          Samsung appears to contend that the A4 and A5 processors are a “controller,” but

11   does not explain how these processors control the “display unit” to display “the plurality of

12   identification information” in response to the user’s input of “said data display request

13   signal,” the “first layer,” or the “second layer” as required by claims 1, 4, or 17 (“a controller

14   for controlling said display unit to display the plurality of identification information if said

15   data display request signal is inputted by the user, display data corresponding to specific

16   identification information via a first layer if the specific identification information is selected

17   from among the plurality of identification information, and display a specific area of the

18   specific information in an enlarged form via a second layer if the specific area is selected

19   from the specific identification information of the first layer”; “a controller for controlling

20   said display unit in response to the data-display request by the user to display the plurality of

21   identification information, said display unit further displaying data corresponding to specific

22   identification information via a first layer if the specific identification information is selected

23   from among the plurality of identification information, and displaying a specific area of the

24   specific information in an enlarged form via a second layer if the specific area is selected

25   from the specific identification information of the first layer”).

26          Samsung contends that “when a user touches the ‘Notes’ icon, a list of the user’s

27   Notes (i.e., a plurality of identification information) is displayed,” and that “when a user

28                                                      -39-

1    opens an inbox in the 'Mail' application, a list of the user's email filenames (i.e., a plurality

2    of identification information) is displayed."  But these examples do not constitute "a plurality

3    of identification information" as required by asserted claims 1, 4, 9, 12, or 17  ("a controller

4    for controlling said display unit to display the plurality of identification information if said

5    data display request signal is inputted by the user, display data corresponding to specific

6    identification information via a first layer if the specific identification information is selected

7    from among the plurality of identification information, and display a specific area of the

8    specific information in an enlarged form via a second layer if the specific area is selected

9    from the specific identification information of the first layer"; "displaying a plurality of

10   identification information corresponding respectively to a plurality of data if a data display

11   request signal is inputted by a user"; "a controller for controlling said display unit in response

12   to the data-display request by the user to display the plurality of identification information,

13   said display unit further displaying data corresponding to specific identification information

14   via a first layer if the specific identification information is selected from among the plurality

15   of identification information, and displaying a specific area of the specific information in an

16   enlarged form via a second layer if the specific area is selected from the specific

17   identification information of the first layer").

18        Samsung has failed to identify a "first layer" displayed by the accused Apple products

19   (under the control of a controller or otherwise), as required by claims 1 and 4 ("display data

20   corresponding to specific identification information via a first layer"), claims 9 and 12

21   ("displaying specific data corresponding to a specific one of the plurality of identification

22   information via a first layer"), or claim 17 ("displaying data corresponding to specific

23   identification information via a first layer").

24        Samsung has failed to identify any instance in which the accused Apple products

25   display "specific identification information" in a "first layer" (under the control of a

26   controller or otherwise), as required by claims 1 and 4 ("display a specific area of the specific

27   information in an enlarged form via second layer if the specific area is selected from the

28                                                    -40-

1   specific identification information of the first layer") or claim 17 ("displaying a specific area

2   of the specific information in an enlarged form via a second layer if the specific area is

3   selected from the specific identification information of the first layer").

4        Samsung has failed to identify any instance in which the accused Apple products

5   display "a specific area of the specific identification information in an enlarged form via a

6   second layer" (under the control of a controller or otherwise, or "if the specific area is

7   selected from the specific identification information of the first layer"), as required by claims

8   1 and 4 ("display a specific area of the specific information in an enlarged form via second

9   layer if the specific area is selected from the specific identification information of the first

10  layer") or claim 17 ("displaying a specific area of the specific information in an enlarged

11  form via a second layer if the specific area is selected from the specific identification

12  information of the first layer").

13       Samsung has failed to identify any instance in which the accused Apple products

14  display "identification information" in the form of a "file name" (under the control of a

15  controller or otherwise), as required by asserted claims 4 and 12 ("wherein each of said

16  plurality of identification information is a file name").

17  **'596 Patent**

18       Apple denies that it infringes the '596 patent and denies that the '596 patent is

19  essential to any standard.  Nevertheless, Samsung's submission of declarations to ETSI

20  covering the '596 patent obligates Samsung to license the '596 patent on FRAND terms.

21       Apple has not directly infringed, induced infringement of, or contributed to

22  infringement of the '596 patent.  Samsung's infringement contentions fail to demonstrate

23  direct or indirect infringement of the '596 patent by Apple.  Samsung's contentions also fail

24  to allege any facts to support its allegations of indirect infringement, including with respect

25  to the critical issues of whether Apple intended to induce others to infringe the '596 patent,

26  whether the Accused Products are capable of substantial non-infringing uses, whether the

27

28                                              -41-

1  Accused Products were especially made or especially adapted for infringing use, and how

2  others have supposedly directly infringed the '596 patent.

3  Samsung has not shown that any Accused Product has any of the features of the

4  UMTS standards cited in Samsung's infringement contentions.  Based on Apple's current

5  understanding of the asserted claims of the '596 patent, and with reservation of all rights to

6  amend or supplement this interrogatory response, the Accused Products do not: (1) form a

7  "data packet unit"; (2) transmit "the second PDU"; (3) have the claimed "block"; (4) have the

8  claimed "control unit"; (5) have the claimed ""multiplexing and transmission sequence

9  number (TSN) setting unit"; and (6) use "a data description indicator (DDI) field

10  representing the first PDU and an N field representing the number of uplink packet data

11  included in the first PDU."

12  Further responding, based on Apple's current understanding of the asserted claims of

13  the '596 patent, and recognizing that Samsung has not specifically identified the features

14  and/or functionality of the Accused Products that it contends satisfy each limitation of the

15  asserted claims—for example, Samsung has failed to identify a "block for forming a first

16  protocol data unit (PDU) including uplink packet data" in the Accused Products—Apple

17  states that at a minimum the following limitations of the asserted claims of the '596 patent

18  are not satisfied by the Accused Products: "forming a first protocol data unit (PDU) including

19  uplink packet data"; "forming a control service data unit (SDU) including control

20  information for an uplink packet data service"; "forming at least one first header part

21  corresponding to the first PDU by using a data description indicator (DDI) field representing

22  the first PDU and an N field representing the number of uplink packet data included in the

23  first PDU"; "forming a second header part corresponding to the control SDU by using a DDI

24  field set as a predetermined specific value representing that the control SDU is transmitted";

25  "forming a second data packet unit (PDU) by concatenating a header and a payload";

26  "transmitting the second PDU to a Node B, wherein the header includes the header parts, and

27  the payload includes the first PDU and the control SDU"; "the control information includes

28  -42-

at least one of transmission power information of a UE to transmit the uplink packet data

service and buffer status information thereof"; "the DDI field inserted into the first header

part represents a media access control-data (MAC-d) flow and a logical channel relating to

uplink packet data included in the first PDU, and a size of the uplink packet data"; a "block

for forming a first protocol data unit (PDU) including uplink packet data"; "a control unit for

forming a control service data unit (SDU) including control information for an uplink packet

data service"; and "a multiplexing and transmission sequence number (TSN) setting unit for

forming at least one first header part corresponding to the first PDU by using a data

description indicator (DDI) field representing the first PDU and an N field representing the

number of uplink packet data included in the first PDU, forming a second header part

corresponding to the control SDU by using a DDI field set as a predetermined specific value

representing that the control SDU is transmitted, and forming a second data packet unit

(PDU) by concatenating a header and a payload, the header including the header parts, the

payload including the first PDU and the control SDU, wherein the second PDU is transmitted

to a Node B."

At least because the Accused Products do not satisfy all limitations of claims 1 and 13

of the '596 patent, they also do not infringe dependent claims 4, 6, 16, and 18.

**'179 Patent**

Samsung's infringement contentions as to the '179 patent lack sufficient detail to

allow Apple to identify all its potential noninfringement arguments.  Samsung's contentions

fail to allege any facts to support its allegations of indirect infringement, including with

respect to the critical issues of whether Apple intended to induce others to infringe the '179

patent, whether the Accused Products are capable of substantial non-infringing uses, whether

the Accused Products were especially made or especially adapted for infringing use, and how

others have supposedly directly infringed the '179 patent.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          Case No. 12-CV-00630-LHK (PSG)

1    Furthermore, and not by way of limitation, although Samsung's Patent Local Rule 3-1

2 infringement contentions purport to accuse "all Apple products that implement a touchscreen

3 keyboard as described herein," "including" the iPod Touch and "all models" of the iPhone

4 and iPad, its claim charts only provide information about the iPhone 4S.  Because Samsung

5 has limited its contentions to the iPhone 4S alone, no response other than with respect to the

6 iPhone 4S is required.  And even with respect to the iPhone 4S, Samsung has failed to

7 identify the specific functionality that supposedly meets the limitations of the asserted

8 claims, and has limited it contentions to the Japanese (Kana) keyboard.  In addition, as

9 detailed further below, Samsung also has not explained how the "coordinate value," "digital

10 value," "controller," "key code," "key code table," "key information table," "searching key

11 code information," or "vector" limitations of the asserted claims are met by the accused

12 Apple products.

13    Based on Apple's current understanding of the asserted claims of the '179 patent,

14 Apple responds that it does not infringe the below-identified asserted claims for at least the

15 following reasons:

16    Samsung identifies "a multi-touch screen panel and associated circuitry" as a "touch

17 panel," but does not identify which "associated circuitry" it includes as part of the "touch

18 panel."  Samsung also does not explain how the accused Apple products supposedly generate

19 or obtain "a coordinate value" of any kind, as required by claims 1, 3, 4, 5, or 6 ("generating

20 a coordinate valued in accordance with a position pressed by a stylus") or claims 9 or 10

21 ("obtaining a coordinate value …").

22    Samsung contends that "[e]ach of Apple's Accused Devices comprises a converter

23 receiving said coordinate value and outputting a digital value," but never identifies any such

24 "converter" in the accused Apple products as required by claims 1, 3, 4, 5, or 6 ("a converter

25 receiving said coordinate value and outputting a digital value").

26    Samsung contends that "[e]ach of Apple's Accused Devices comprises a memory,"

27 that "the Accused Devices also include processors with internal memory and access to

28                                          -44-

1    RAM," and that "[t]he Accused Devices store in memory the names of keys forming a

2    keyboard image . . . [and] [s]ome keys are a [sic] assigned a plurality of respective key codes,

3    which are also stored in memory."  But Samsung does not identify a specific memory that

4    stores any "names of keys," "a plurality of key codes" for each key, or "corresponding screen

5    and direction range information" for each key code.  Nor does Samsung explain how the

6    accused Apple devices allegedly generate key codes, enlarge key codes, store or otherwise

7    use key code tables or key information tables, or use direction range information consisting

8    of a minimum and maximum value of a trace.  These elements are required by claims 1, 3, 4,

9    5, 6, 7, 8, 10, or 11 ("a memory storing:  names of keys forming said keyboard image, for

10   each of said keys, a plurality of respective key codes, and for each of said key codes,

11   corresponding screen and direction range information"; "wherein said memory further

12   comprises: key code tables, each corresponding to one of said keys, storing said

13   corresponding screen and direction range information of said plurality of respective key

14   codes, and a key information table storing said names of keys and address information

15   indicating, for each of said keys, the corresponding one of said key code tables"; "wherein

16   said direction range information is different for each of said plurality of respective key codes

17   of one of said keys"; "wherein the direction range information of the key code includes a

18   minimum value and a maximum value of said trace direction of said stylus"; "(a) displaying

19   an image of the keyboard including keys with a plurality of key codes"; (e) searching key

20   code information in accordance with the key area and the trace direction to generate a

21   selected key code of the plurality of key codes of the key area").

22          Samsung contends that "[e]ach of the Accused Devices comprise a controller

23   controlling said display of said keyboard image, receiving said digital value for a trace of

24   said stylus, and determining the position and direction of said trace," and that the Accused

25   Devices include "a processor and associated chips and circuitry to control the display and

26   process input from the touch screen."  But Samsung does not identify any specific controller

27   that "control[s] said display of said keyboard image," or explain how it "receive[es] a digital

28                                                -45-

value for a trace" or what exactly that digital value is, how the alleged "controller" "determin[es] the position or direction of said trace," or how it "selects one of said key codes."  Nor does Samsung explain how the "controller" allegedly generates key codes, enlarges key codes, uses key code tables or key information tables, or uses vectors.  These elements are required by claims 1, 3, 4, 5, 6, 7, 8, 10, or 11 ("a controller controlling said display of said keyboard image, receiving said digital value for a trace of said stylus, and determining the position and direction of said trace"; "wherein said controller selects one of said key codes based on said position and on said direction of said trace"; "wherein said controller controls said screen to display, in said keyboard image, an image of said generated key code for a predetermined time after said controller selects said one of said key codes, and then to restore said image of said generated key code to its original state"; "wherein said controller controls said screen to change a character color and a background color of said image of said generated key code"; "wherein said controller controls said screen to enlarge only said generated key code"; "(a) displaying an image of the keyboard including keys with a plurality of key codes"; "(b) obtaining the trace of a stylus"; "(c) determining a key area in which the trace of the stylus is drawn"; "(d) obtaining a direction of the trace drawn on the determined key area"; "(e) searching key code information in accordance with the key area and the trace direction to generate a selected key code of the plurality of key codes of the key area"; "(f) displaying on the image of the keyboard an image of the key code generated by step (e) to be distinguished from the others of the plurality of key codes, and then restoring the image to its original state"; "(b1) obtaining a coordinate value of a start point of the trace"; "(b2) obtaining a coordinate value in which the stylus contacts the touch panel, after a predetermined time"; "(b3) determining whether the point obtained in the step (b2) is an end point, thereby obtaining the end point of the trace"; "wherein step (c) includes checking whether a part of coordinate values of the trace drawn by the stylus is within the range defined as a key area"; "(a) displaying an image of a keyboard including keys with a plurality of key codes"; "(b) obtaining the trace of a stylus"; "(c) determining a key area in which the

-46-

1  trace of the stylus is drawn"; "(d) obtaining a direction of the trace drawn on the determined

2  key area"; "(e) searching key code information in accordance with the key area and the trace

3  direction to generate a selected key code of the plurality of key codes of the key area"; "(d1)

4  obtaining a vector composed of coordinate values of a start point and an end point of the

5  stylus trace"; "(d2) calculating the magnitude of the obtained vector"; "(d3) comparing the

6  magnitude of the vector with the magnitude of a reference vector"; "(d4) determining a trace

7  direction to be zero when the vector magnitude is smaller than the magnitude of the reference

8  vector, and obtaining the trace direction by calculating an angle between the vector and a

9  reference line when the magnitude of the vector is larger than the magnitude of the reference

10 vector").

11     The two-step menu embodiments of the accused Apple products do not satisfy the

12 various "trace" limitations of the asserted claims because such embodiments are disclaimed

13 in the '179 patent specification; thus, these embodiments do not infringe asserted claims 1, 3,

14 4, 5, 6, 7, 8, 10, or 11.

15     The two-step menu embodiments of the accused Apple products do not display "an

16 image of said generated key code for a predetermined time after said controller selects said

17 one of said key codes," and thus do not infringe asserted claims 1, 3, 4, 5, or 6.

18     Certain embodiments of the Apple accused products do not display the alleged "key

19 codes" on the virtual keys and thus cannot restore images of these non-displayed key codes

20 to their "original state," and thus do not infringe asserted claims 1, 3, 4, 5, or 6 ("and then to

21 restore said image of said generated key code to its original state"), or claims 7, 8,  or 10

22 ("restoring the image to its original state").  Likewise, these embodiments do not "display[ ]

23 an image of a keyboard including keys with a plurality of key codes," and thus do not

24 infringe asserted claims 7, 8, 10, or 11.

25     The accused Apple products do not enlarge a key code, and thus do not infringe

26 asserted claim 3 ("enlarge only said generated key code").  Alternatively, certain

27 embodiments do not display an image of the alleged key codes on the keys such that the

28                                          -47-

image can be "enlarged," and thus do not infringe asserted claim 3 ("enlarge only said generated key code").

Certain embodiments of the Apple accused products do not display the alleged "key codes" on the virtual keys, and thus do not infringe asserted claims 7, 8, or 10.  These embodiments do not meet element (a) ("(a) displaying an image of a keyboard including keys with a plurality of key codes") or element (f) ("(f) displaying on the image of the keyboard an image of the key code … and then restoring the image to its original state").

The accused Apple products do not determine a "coordinate value" as a "point" that represents the touch position of a stylus, and thus do not infringe asserted claim 9 ("(b3) determining whether the point obtained in the step (b2) is an end point, thereby obtaining the end point of the trace").

The accused Apple products do not "obtain[ ] a vector composed of coordinate values of a start point and an end point of the stylus trace," and thus do not infringe asserted claim 11.  Furthermore, any vector calculation is not composed of "coordinate values" as that term is used in the claims.

The accused Apple products do not include a "reference vector" and do not "determin[e] a trace direction to be zero when the vector magnitude is smaller than the magnitude of the reference vector," and thus do not infringe asserted claim 11 ("(d3) comparing the magnitude of the vector with the magnitude of a reference vector"; "(d4) determining a trace direction to be zero when the vector magnitude is smaller than the magnitude of the reference vector, and obtaining the trace direction by calculating an angle between the vector and a reference line when the magnitude of the vector is larger than the magnitude of the reference vector").

**'757 Patent**

Based on Apple's current understanding of the asserted claims of the '757 patent, and recognizing that Samsung has not specifically identified the features and/or functionality of the accused Apple products that it contends satisfy each limitation of the asserted claims—

-48-

for example, Samsung has failed to identify any "zone[s]"—Apple states that the accused Apple products do not infringe because they do not synchronize audio, video, or photographic data as required by the '757 patent.  Additionally, the accused Apple products do not infringe for at least the reason that they do not include zones, and are not zone specific storage and interface devices.

Further responding, Apple states that at least the following limitations of the asserted claims of the '757 patent are not satisfied by one or more of the accused Apple products: "[a] system for synchronizing devices in a multimedia environment[]," "at least one zone," "each zone having at least one zone specific storage and interface device," "wherein audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and interface device are updated in relation to the zone specific storage and interface devices and the central storage and interface device," "whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user," "a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially identical content information and content management information displayed and manipulated in anyone [sic] of the zones," "an output device coupled to the at least one central storage and interface, wherein audio, video, or photographic information is outputted," "wherein the central storage and interface device is capable of converting analog information into digital form."

At least because the accused Apple products do not satisfy all the limitations of claim 1 of the '757 patent, they also do not infringe dependent claim 2-5, 11, 12, 14, and 15.

**'239 Patent**

Based on Apple's current understanding of the asserted claims of the '239 patent, Apple has not directly infringed, induced infringement of, or contributed to infringement of the '239 patent.  Samsung's infringement contentions fail to demonstrate direct or indirect

-49-

1   infringement of the '239 patent by Apple.  Samsung's contentions also fail to allege any facts

2   to support its allegations of indirect infringement, including with respect to the critical issues

3   of whether Apple intended to induce others to infringe the '239 patent, whether the Accused

4   Products are capable of substantial non-infringing uses, whether the Accused Products were

5   especially made or especially adapted for infringing use, and how others have supposedly

6   directly infringed the '239 patent.

7       In addition, Samsung has not specifically identified the features and/or functionality

8   of the accused Apple products that it contends satisfy each limitation of the asserted claims.

9   For example, Samsung has failed to identify any "means for exchanging data with [a] host

10  unit," "means for splitting and organizing the digitized, compressed audio and/or video signal

11  prior to transmission," "interface[s]," or "cellular telephone[s] connected to said interface."

12      Further responding, based on Apple's current understanding of the asserted claims of

13  the '239 patent, Apple states that at least the following limitations of the asserted claims of

14  the '239 patent are not satisfied by the accused Apple products: "a mobile remote unit,"

15  "means for capturing, digitizing, and compressing at least one composite signal," "means for

16  storing said composite signal," "means for receiving at least one composite signal transmitted

17  by the remote unit," "means for exchanging data with said host unit," "means for storing the

18  composite signal received by the host unit," "means for decompressing said composite

19  signal," "means for splitting and organizing the digitized, compressed audio and/or video

20  signal prior to transmission," "wherein the means for capturing, digitizing, and compressing

21  said composite signal includes a video capture device installed in said remote unit to capture

22  said composite signal in real time," "wherein the means for capturing, compressing and

23  digitizing said Composite signal includes an audio capture device installed in said remote

24  unit," "wherein the means for transmitting the composite signal includes: at least one

25  interface installed in conjunction with said remote unit; a cellular telephone connected to

26  each said interface," "a computer including a video capture module to capture and compress

27  video in real time," "means for transmission of said captured video over a cellular

28                                          -50-

1    frequency," "wherein the means for transmission of said captured video over a cellular

2    frequency includes: at least two interfaces operating in conjunction with said computer; a

3    cellular telephone connected to each said interface," "means for splitting the captured video

4    into pieces for transmission through said interfaces."  Further, for the means-plus-function

5    claim limitations listed above, the Apple products do not meet those limitations because the

6    Apple products do not use the structures or equivalent structures disclosed in the '239 patent

7    specification (to the extent any such structures are disclosed).

8         At least because the accused Apple products do not satisfy all the limitations of

9    claims 1 and 15 of the '239 patent, they also do not infringe dependent claims 2-7, and 16-17.

10   **'470 Patent**

11        Samsung has not specifically identified the features and/or functionality of the

12   accused Apple products that it contends satisfy each limitation of the asserted claims of the

13   '470 patent.  For example, and not by way of limitation, although Samsung's Patent Local

14   Rule 3-1 infringement contentions purport to accuse all models of the iPhone, iPad,

15   MacBook, and iMac of infringing the '470 patent, Samsung's contentions only attempted to

16   identify how each element of the  asserted claims allegedly reads on  the iPhone 4S.

17   Accordingly, no response other than with respect to the iPhone 4S is required.

18        Based on Apple's current understanding of the asserted claims of the '470 patent,

19   Apple states that at least the following limitations of the asserted claims of the '470 patent

20   are not satisfied by the accused Apple products:  "A/V device"; "a display screen operable to

21   display one of a first On-screen Display (OSD) window, which indicates that the external

22   audio reproduction unit is connected to the audio output port, and a second OSD window,

23   which indicates that the external audio reproduction unit is not connected to the audio output

24   port"; "input command"; "wherein if the control unit receives the input command and the

25   external audio reproduction unit is connected to the audio output port, the control unit

26   controls the display screen to automatically display the first OSD window"; "wherein if the

27   control unit receives the input command and the external audio reproduction unit is not

28                                              -51-

1   connected to the audio output port, the control unit controls the display screen to

2   automatically display the second OSD window"; "wherein if the control unit receives the

3   input command and the external audio reproduction unit is connected to the audio output

4   port, the control unit further controls the audio signal processing unit to automatically output

5   the processed audio signal to the audio output port"; "wherein if the control unit receives the

6   input command and the external audio reproduction unit is not connected to the audio output

7   port, the control unit further controls the audio signal processing unit to automatically output

8   the processed audio signal to the speaker"; "wherein the first OSD window displays

9   previously stored volume level of external audio reproduction unit and the second OSD

10  window displays previously stored volume level of the speaker"; "if the external audio

11  reproduction unit is connected to the audio output port of the A/V device, automatically

12  displaying on the display screen a first OSD window indicating that the external audio

13  reproduction unit is connected to the audio output port"; and "if the external audio

14  reproduction is not connected to the audio output port, automatically displaying on the

15  display screen a second OSD window indicating that the external audio reproduction unit is

16  not connected to the audio output port."

17          At least because the accused Apple products do not satisfy all the limitations of

18  claims 7 and 12 of the '470 patent, the accused Apple products also do not infringe

19  dependent claims 8, 9, 10, 11, 13, 14, 15, and 16.

20  **'449 Patent**

21          Samsung has not specifically identified the features and/or functionality of the

22  accused Apple products that it contends satisfy each limitation of the asserted claims.  For

23  example, and not by way of limitation, although Samsung's Patent Local Rule 3-1

24  infringement contentions purport to accuse the iPod touch 4th generation and all generations

25  of the iPad, Samsung has only attempted to identify how each element allegedly reads on an

26  iPhone running iOS 5.1.1.  Accordingly, no response other than with respect to an iPhone

27

28                                           -52-

1   running iOS 5.1.1 is required.  In addition, Samsung has failed to identify the "recording

2   circuit" in any accused product.

3          Based on Apple's current understanding of the asserted claims of the '449 patent,

4   Apple states that at least the following limitations of the asserted claims of the '449 patent

5   are not satisfied by the accused Apple products: :  "an A/D converter which converts said

6   analog signal from said imaging device to a digital signal," "a recording circuit which

7   records compressed data, said compressed data including a moving image signal, and a still

8   image signal"; "a reproducing circuit which reproduces a moving image signal, a sound

9   signal in synchronous to said moving image signal, and a still image signal"; "a display

10  which displays said moving image signals and still image signals outputted from said

11  reproducing circuit, and a list of said moving image signal and still image signal as a search

12  mode, and a list of classifications as a classification mode"; "wherein said recording circuit

13  records each one of said plurality of image signals with classification data"; and "said display

14  lists a plurality of classifications and a number of images belonging to each classification."

15         At least because the accused Apple products do not satisfy all the limitations of claim

16  25 of the '449 patent, they also do not infringe dependent claim 27.

17         Discovery is still in its early stages and Apple is continuing to investigate.  Apple

18  reserves the right to supplement and/or amend its response as appropriate.

19  **INTERROGATORY NO. 13:**

20         Separately for all SOFTWARE produced by APPLE including, but not limited to iOS

21  SOURCE CODE, IDENTIFY: (a) each version of SOFTWARE that corresponds to

22  commercially distributed versions of SOFTWARE; (b) which APPLE ACCUSED

23  PRODUCT was commercially distributed with which version of the SOFTWARE produced

24  by APPLE; and (c) all material differences between the commercially distributed versions of

25  SOFTWARE that are relevant to any aspect, element or function of any APPLE ACCUSED

26  PRODUCT that is alleged to infringe any of the SAMSUNG PATENTS.

27  **RESPONSE TO INTERROGATORY NO. 13**

28                                    -53-

Dated:  November 8, 2012

By:   /s/ H. Mark Lyon

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

MARK D. SELWYN (SBN 244180)
(mark.selwyn@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

WILLIAM F. LEE (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

***Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.***

-92-

**CERTIFICATE OF SERVICE**

I, Angela L. Wilkins, hereby certify that on this 8th day of November, 2012, I did cause the following documents to be served in the following manner:

**Apple's Responses to Samsung's First Set of Interrogatories**

On the interested parties in this action addressed as follows:

**ATTORNEYS FOR SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC**

William Price
Victoria F. Maroulis
Charles K. Verhoeven
Michael Fazio
Kevin A. Smith
Kevin P.B. Johnson
**Quinn Emanuel Urquart & Sullivan, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065
Telephone: (650) 801-5000
williamprice@quinnemanuel.com
victoriamaroulis@quinnemanuel.com
kevinjohnson@quinnemanuel.com
charlesverhoeven@quinnemanuel.com
kevinsmith@quinnemanuel.com
michaelfazio@quinnemanuel.com

John M. Caracappa
Huan-Yi Lin
Michael Heimbold
**Steptoe & Johnson LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
jcaracappa@steptoe.com
hlin@steptoe.com
mheimbold@steptoe.com

<u>  X  </u>   **BY ELECTRONIC MAIL TRANSMISSION** from awilkins@gibsondunn.com, by transmitting PDF copies of such documents to each such person identified above, at the e-mail address listed in their addresses.  The documents were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 8, 2012 in Dallas, TX.

Dated:    November 8, 2012                                           *Angela L. Wilkins*

Angela L. Wilkins
Gibson, Dunn & Crutcher
2100 McKinney Ave., Suite 1100
Dallas, TX  75201
(214) 698-3145