QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 12-CV-00630-LHK (PSG) |
| Plaintiff, | |
| vs. | **REPLY IN SUPPORT OF SAMSUNG'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS INFRINGEMENT CONTENTIONS** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Date:  June 4, 2013<br>Time:  10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |
| Defendants. | **[PUBLIC REDACTED VERSION]** |

02198 51981/5319379 14

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. SAMSUNG'S AMENDMENTS FOR THE '757 AND '239 PATENTS ARE JUSTIFIED BY THE COURT'S NEW CONSTRUCTIONS ............................................ 1

 A. '757 Amendments ................................................................................................. 1

 B. '239 Amendments ................................................................................................. 2

III. SAMSUNG'S AMENDMENTS TO THE '757, '087, '596, AND '449 PATENTS ARE JUSTIFIED BY RECENT DISCOVERY .................................................................... 4

 A. '757 Willful Infringement and Doctrine of Equivalents Amendments ..................... 4

 B. '087 and '596 Evidentiary Amendments ................................................................ 5

 C. '449 Evidentiary and Doctrine of Equivalents Amendments .................................. 7

IV. SAMSUNG'S DOCTRINE OF EQUIVALENTS AMENDMENTS ARE JUSTIFIED BY APPLE'S DEFICIENT DISCLOSURE OF NONINFRINGEMENT THEORIES ..................................................................................... 8

V. SAMSUNG'S PRACTICING PRODUCTS AMENDMENTS ARE JUSTIFIED BY APPLE'S IDENTIFICATION OF NEW ALLEGEDLY INFRINGING PRODUCTS ......................................................................................................................... 9

VI. THE INDIRECT INFRINGEMENT CONTENTIONS FOR THE '239 PATENT ARE JUSTIFIED BY RECENT CHANGES IN LAW ......................................................... 9

VII. SAMSUNG ADDRESSED EACH CHANGE IDENTIFIED IN ITS INFRINGEMENT CONTENTIONS .................................................................................. 10

VIII. CONCLUSION .................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Abaxis, Inc. v. Cepheid*,
   10-cv-2840-LHK Dkt. 199 (N.D. Cal. July 20, 2012) ...............................................................8

*Abaxis, Inc. v. Cepheid*,
   Dkt. 204, 2012 WL 3255601 (N.D. Cal. August 8, 2012) .........................................................8

*Applied Medical Resources v. U.S. Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006).................................................................................................2

*Cf. Dynetix Design Solutions Investment v. Synopsys Inc.*,
   2012 WL 6019898 (N.D. Cal. Dec. 3, 2012) ............................................................................5

*Creagri, Inc. v. Pinnaclife Inc., LLC*,
   No. 11-cv-06635 LHK (PSG), 2012 WL 5389775 (N.D. Cal Nov. 2, 2012) ............................3

*Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009).................................................................................................2

*CSR Tech., Inc. v. Freescale Semiconductor*,
   No. C-12-02619 RS (JSC), 2013 WL 503077 (N.D. Cal. Feb. 8, 2013) ...................................2

*Golden Hour Data Systems, Inc. v. Health Services Integration, Inc.*,
   2008 WL 2622794 (N.D. Cal. 2008).........................................................................................7

*Google Investment v. Netlist, Inc.*,
   2010 WL 1838693 (N.D. Cal. May 5. 2010) ............................................................................5

*Nuance Commc'ns, Inc. v. ABBYY Software House*,
   08-02912 JSW (MEJ), 2012 WL 2427160 (N.D. Cal. June 26, 2012) .....................................3

*O2 Micro International, Ltd. V. Monolithic Power Systems, Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006).................................................................................................7

*Vasudevan Software, Inc. v. International Bus. Machines Corp.*,
   2011 WL 940263 (N.D. Cal. Feb. 18, 2011).............................................................................5

## I. INTRODUCTION

Apple's opposition is full of misstatements and half-truths.  For example, Apple accuses Samsung of adding new Apple products, when no such products were added.  Apple accuses Samsung of adding new evidence, when the evidence was already in Samsung's previous contentions.  Apple accuses Samsung of making "unsupported" amendments, when they were fully discussed in Samsung's opening brief.  Apple even accuses Samsung of making "amendments" that never occurred.  When Apple's misleading rhetoric is stripped away, it is readily apparent that Samsung's amendments are valid amendments that the Court regularly permits.

## II. SAMSUNG'S AMENDMENTS FOR THE '757 AND '239 PATENTS ARE JUSTIFIED BY THE COURT'S NEW CONSTRUCTIONS

### A. '757 Amendments

**First**, the Court construed "zone specific storage and interface device" to require "a storage and interface device that *resides in an area*, such as a room or similar location."  Apple does not dispute that Samsung's '757 claim construction amendments relate to this new construction.  Instead, Apple argues that Samsung should have set forth *all* possible infringement theories in its earlier contentions.  This argument is simply untenable and contrary to the local patent rules.  Patent Rule 3-6(a) explicitly permits amendments in response to adverse claim construction holdings.  Here, the Court construed the term "zone specific storage device" in a manner that neither Samsung nor Apple proposed.  Thus, Samsung's amendments are proper under Patent Rule 3-6(a).

**Second**, Samsung is not attempting to add third party docking stations to the list of Apple accused products.  The docking stations, which are sold on Apple's website, are merely an example of how Apple's "mobile" products can and do "reside in an area."  They also show how Apple induces its customers to infringe the claims of the '757 Patent.  These amendments directly address the Court's new construction.

**Finally**, Apple does not specifically dispute Samsung's amendments indicating that Apple meets the "resides" limitation under the doctrine of equivalents.  As the amendments explain, the

1  location of a device is not central to the purpose of the '757 invention, and Apple's devices are
2  equivalent.

### B.      '239 Amendments

**First**, Apple incorrectly alleges that Samsung's equivalents contentions are deficient for failing to adequately disclose its arguments.   However, the same structures that directly infringe as structural equivalents and under the doctrine of equivalents were *already disclosed* in Samsung's past contentions.   For example, Samsung identified structures including video capture modules, camera assemblies, and application processors as the structure for "means for capturing, digitizing, and compressing."   *See* Ex. 3, Samsung's Second Amended Infringement Contentions, Ex. H at 3-8.   Samsung's newest disclosures specifically address how these same components literally infringe as structural equivalents or infringe under the doctrine of equivalents.   Samsung can demonstrate structural equivalence under § 112, ¶ 6 by showing that the same accused structures "perform the identical function in substantially the same way, with substantially the same result" as the structure in the patent.   *Applied Med. Res. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006).

Samsung accordingly identified the accused structure (audio and video "chips" in Apple's devices) and the correlated disclosed structure (a "card").   Samsung also identified a specific function ("capturing, digitizing and compressing data"), a specific way ("providing chips within Mobile Remote Units") and a specific result ("generating captured, digitized and compressed data").   *See, e.g.*, Mot. at Ex. 4, Samsung's Third Amended Infringement Contentions Ex. H at 10, 14, 19, 21.   This analysis applies equally to Samsung's doctrine of equivalents amendments. *Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009) (citation omitted).   To the extent Apple argues that more detail is required, Samsung's level of detail was driven by the level of detail provided by Apple's non-infringement arguments.   Apple has not identified its non-infringement arguments with sufficient specificity to permit Samsung to provide additional detail.

Apple's citation of *CSR Tech* is inapplicable because the patentee only provided an incomplete sampling of its doctrine of equivalents arguments. *CSR Tech., Inc. v. Freescale*

1  *Semiconductor*, No. C-12-02619 RS (JSC), 2013 WL 503077, at *9 (N.D. Cal. Feb. 8, 2013).
2  Moreover, the plaintiff in another of Apple's cited cases, *Nuance Communications*, provided
3  nothing more than a blanket statement such as "[patentee] contends that the [accused products]
4  infringe the asserted claims under the doctrine of equivalents." *Nuance Commc'ns, Inc. v. ABBYY*
5  *Software House*, 08-02912 JSW (MEJ), 2012 WL 2427160, at *2 n.5 (N.D. Cal. June 26, 2012)
6  (citation omitted).  Here, Samsung identified the accused structure and the function, way, and
7  result for each element.

8  **Second**, Apple incorrectly alleges that Samsung is merely providing a "placeholder"
9  argument for the "means for transmitting" limitation and that it has not identified a modem or
10 software.  Apple is wrong.  For example, Samsung discloses "an applications processor, a
11 baseband chip, a Wi-Fi chip, and one or more cellular or radio frequency transmitters" and
12 explicitly states that "[t]he components above are one or more modems." Mot. at Ex. 4, Ex. H at
13 11, 13.  Samsung also identified software that plays a role in performing the required software
14 limitations from the Court's *Markman* order ("software and/or firmware such as Camera, Photos,
15 Messages, Mail, YouTube, Phone, Contacts, FaceTime, Voice Memos, Email, iTunes, iPod and/or
16 other processes").  Each of these applications is involved in transmitting a composite signal,
17 because such transmissions are a fundamental feature of Apple's mobile communications devices.
18 For example, a FaceTime call may be initiated from the Phone or Contacts applications on an
19 iPhone.  To the extent that Apple's opposition suggests that Samsung should identify specific
20 source code within these applications, Samsung notes that Apple has refused to produce such
21 source code and forced Samsung to file a motion to compel.  *See* Dkt. 499, Samsung's Motion to
22 Compel.  Samsung has provided the detail required by the patent rules, which do not require
23 Samsung to "prove its infringement case" at this time. *Creagri, Inc. v. Pinnaclife Inc.*, *LLC*, No.
24 11-cv-06635 LHK (PSG), 2012 WL 5389775, *2 (N.D. Cal Nov. 2, 2012) (citation omitted).

25 **Finally,** Apple incorrectly alleges that Samsung has made unspecified doctrine of
26 equivalents amendments to other claim terms.  Samsung made specific amendments to means
27 plus function claim terms that it now believes Apple will attempt to narrow through arguments
28 similar to the ones Apple advanced during the *Markman* proceedings.  For example, Samsung

-3-
SAMSUNG'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS INFRINGEMENT CONTENTIONS

amended the "means for storing" limitation to clarify that the *already* disclosed structures also infringe as structural equivalents and under the doctrine of equivalents.  Mot. at Ex. 4, Ex. H at 10.  Given Apple's thin non-infringement argument disclosures, Samsung was only able to discern what Apple *might* argue based on its *Markman* arguments.[1]

## III. SAMSUNG'S AMENDMENTS TO THE '757, '087, '596, AND '449 PATENTS ARE JUSTIFIED BY RECENT DISCOVERY

### A. '757 Willful Infringement and Doctrine of Equivalents Amendments

Apple relies entirely on two statements made by third-party ReQuest to suggest that Samsung should have asserted willful infringement of the '757 Patent earlier.  Instead of relying on these third party statements alone to assert willful infringement, Samsung first sought confirmation of the relevant facts from Apple.  Samsung served discovery on Apple in July 2012 regarding Apple's interactions with ReQuest.  Apple withheld these facts from Samsung for ***over six months*** and then it produced a few documents on March 21, 2012 (buried in a nearly 1 million page production) confirming its willful infringement.[2]  Under these circumstances, Samsung should be permitted to assert willful infringement of the '757 Patent.  A denial of Samsung's motion would only encourage litigants to advance allegations of willful infringement without first establishing a strong factual basis for those allegations.

Samsung's doctrine of equivalents arguments regarding the central storage and interface device are also supported by Apple's refusal to produce discovery regarding the operations of its servers.  Apple claims that "Samsung fails to cite any evidence . . . that otherwise supports this new claim."  Opp. at 17.  But that is precisely the point – Samsung did not have detailed information about the operation of Apple's servers until a week ago.  On May 13, Apple served an interrogatory response disclosing for the first time some of the specific servers Apple uses to operate iCloud, iTunes Match, and Photo Stream.  *See* Ex. 4, Apple's Response to Samsung's

---

[1]  Apple subsequently amended its non-infringement contentions on May 2, 2013.  Samsung does not agree that these contentions are a sufficient disclosure.

[2]  In addition, Apple does not dispute that it still has yet to produce documents describing the actual licensing negotiations between itself and ReQuest.

1  Fifth Set of Interrogatories at 6-13.  This is precisely the type of recent discovery that justifies
2  Samsung's inclusion of doctrine of equivalents arguments for the '757 Patent.

3  **B.  '087 and '596 Evidentiary Amendments**

4  Samsung's amendments for the '087 and '596 Patents primarily relate to documents and
5  source code that were recently produced by Apple or third parties.  Apple does not object to the
6  majority of Samsung's amendments.  Opp. at 12 ("Apple does not oppose this request to the
7  extent it seeks to cite to source code that Alcatel-Lucent produced in March 2013, and that
8  Qualcomm produced in April 2013.").  For the other amendments, Apple grossly misstates the
9  record.  Apple even goes so far as to fabricate "amendments" that did not occur.  For all of the
10 contested "amendments," the purported change was already in Samsung's earlier contentions, or it
11 is the result of recent discovery.

12 Apple argues that Samsung cannot add a citation to TS 25.309 because it is a public
13 document.  In doing so, Apple misstates the law.  *See Vasudevan Software, Inc. v. Int'l Bus.*
14 *Machs. Corp.*, 2011 WL 940263, at *3 (N.D. Cal. Feb. 18, 2011) (granting amendment to include
15 publicly available information consisting of voluminous and detailed technical manuals).  Also
16 Samsung did not learn about the relevance of TS 25.309 until **after** it reviewed confidential
17 documents.

18 All of the cases cited by Apple miss the mark.  Unlike the plaintiff in *Dynetix*, Samsung's
19 amendment does not add a new infringement theory—it is merely evidentiary support for
20 previously disclosed infringement theories.  *Cf. Dynetix Design Solutions Inv. v. Synopsys Inc.*,
21 2012 WL 6019898, at *2 (N.D. Cal. Dec. 3, 2012).  Moreover, TS 25.309 did not become
22 relevant until Samsung reviewed confidential information from Intel, AT&T, and Alcatel-Lucent.
23 Unlike the defendant in *Google* who had possession of the plaintiff's non-public information for
24 over a year, Samsung only received Alcatel-Lucent's production in March; AT&T's production in
25 February; and Intel's production in the end of December.  *See Vasudevan*, 2011 WL 940263, at
26 *3 (finding unpersuasive the argument that plaintiff's failure to amend its contentions until four
27 months after the information was known shows that plaintiff was not acting in good faith); *cf.*
28 *Google Inv. v. Netlist, Inc.*, 2010 WL 1838693, at *2 (N.D. Cal. May 5. 2010).

1    These recently-produced confidential documents revealed the relevance of TS 25.309.
2    For example, an Intel document states that ████████████████████████████████████
3    ████████████████████████████████████████ Ex. 5, ████████████
4    ████████ at 160DOC000332.   In addition, a document produced by AT&T discloses that █
5    ████████████████████████████████████████ Ex. 6, ████████████
6    ████████████████ at ATT00016 and ATT00046.   Therefore, even though TS 25.309 is a
7    public document, the relevance of the document was not known until the confidential documents
8    were produced.   *Vasudevan*, 2011 WL 940263, at *4.
9        Apple's remaining gripes are equally misplaced.   **First**, the following "amendments"
10   were already in Samsung's earlier contentions.

11   • Samsung accused the iPhone 5 of infringing the '596 Patent in its Second Amended
12      Infringement Contentions.   *See, e.g.*, Ex. 3, Ex. B at 2.
13   • Samsung's original contentions identified infringement based on the HSUPA standard,
14      "as set forth in 3GPP TS 25.321 v. 6.6.0 or later."   *See* Ex. 1 Samsung's (Original)
15      Infringement Contentions, Ex. A at 2 and Ex. B at 2.
16   • Samsung identified the web pages or virtually identical web pages in its previous
17      contentions.   *See, e.g.*, Ex. 3, Ex. A at 2-3 and Ex. B at 2-3 (citing Apple's iPad mini
18      and iPad compare websites); Ex. 2 Samsung's First Amended Infringement
19      Contentions, Ex. A at 2 and Ex. B. at 2 (citing iPhone compare websites).

20   **Second**, the following "amendments" are the result of recent discovery.
21   • Samsung cites to Intel code.   Intel supplemented its source code production as recent
22      as mid-March, and Intel and Samsung were engaged in discussions regarding the scope
23      of Intel's production until the end of April.   Furthermore, the Intel deposition
24      regarding this code will not occur until late June.
25   • Samsung cites to AT&T documents that were produced in February.   Furthermore,
26      the AT&T deposition has not occurred.
27   • Samsung cites to deposition testimony from late-November 2012.   This testimony is
28      merely cited to support doctrine of equivalents arguments.   As explained below,

1  Apple has not identified its non-infringement arguments with sufficient specificity.
2  Thus, the clock for doctrine of equivalents amendments never started.
3  • Samsung cites to an Intel document, XGold 61x Product Specification.  This
4  document was produced in an ITC investigation between Apple and Samsung ("the
5  794 Investigation").  Apple's statement that this document was produced a year ago is
6  disingenuous at best.  Obviously Samsung could not use documents from the 794
7  Investigation in the present case until it obtained Intel's permission to do so.

Accordingly, Samsung has shown good cause to amend its infringement contentions for the '087 and '596 Patents.

### C.  '449 Evidentiary and Doctrine of Equivalents Amendments

Apple attempts to justify its opposition to the '449 amendments by identifying isolated documents in its earlier productions and arguing that Samsung could have derived new information about the Accused Devices from those documents.  Arguing that Samsung should have derived information from millions of pages without the assistance of interrogatory responses is misleading at best.  Samsung only discovered this information when third party Cirrus Logic produced documents on April 10, 2013 and when Apple finally provided a response to Samsung's interrogatories on April 17, 2013.

Samsung amended its '449 contentions to narrowly identify specific components that infringe the "recording circuit" and "reproducing circuit" elements of the '449 claims.  Samsung only discovered the information necessary for this amendment after reviewing Bills of Materials ("BOMs") that Apple identified for the first time in its April 17, 2013 supplemental responses to Samsung's fourth set of interrogatories.  Ex. 7, Apple's Supp. Resp. to Samsung's 4th Set of Interrogatories, at 12-13.  Moreover, because Apple did not previously cite to the necessary datasheets until this response, Samsung learned of the Audio Codec chips cited in its amendment from third party Cirrus Logic's narrow production made on April 10, 2013.  Samsung did not have the requisite information to make this amendment before this production.

## IV. SAMSUNG'S DOCTRINE OF EQUIVALENTS AMENDMENTS ARE JUSTIFIED BY APPLE'S DEFICIENT DISCLOSURE OF NONINFRINGEMENT THEORIES

Apple does not deny that has intentionally obfuscated its noninfringement arguments in its interrogatory responses.  Instead, Apple makes several inapposite arguments.

**First**, Apple argues that all doctrine of equivalents arguments should have been disclosed by Samsung at the outset of this litigation.  However, the Patent Local Rules are not so inflexible, but "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories."  *Golden Hour Data Systems, Inc. v. Health Services Integration, Inc.*, 2008 WL 2622794 (N.D. Cal. 2008), *citing O2 Micro Int'l, Ltd. V. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006).  Samsung sought to develop new information regarding Apple's noninfringement positions but was rebuffed by Apple's wholly inadequate response.  Thus, it was unable to amend its infringement contentions at an earlier date.

**Second**, Apple is wrong to suggest that Samsung's amendments are untimely because they did not occur shortly after November 8, 2012, the date when Apple served its deficient interrogatory response.  This is not the proper date to start the clock.  Apple remained free to amend its interrogatory response to provide an adequate disclosure of its noninfringement arguments, but chose not to do so for several months.[3]  Samsung has sought these general doctrine of equivalents contentions out of necessity, to reserve its rights to respond to any last-minute disclosures of noninfringement positions by Apple.

**Third**, Apple's complaints that Samsung's doctrine of equivalents arguments are too general miss the point.  Samsung has set forth its positions to the extent possible, given Apple's refusal to elaborate on its noninfringement positions.  For those limitations where Samsung was able to identify doctrine of equivalents arguments with specificity, Samsung has done so, identifying the specific claim limitations and identifying the particular features that are equivalent.

---

[3] Samsung recognizes that Apple recently supplemented its response to Samsung's interrogatory on May 2, 2013.  Samsung does not agree that these amendments are a sufficient disclosure.

-8-
SAMSUNG'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS INFRINGEMENT CONTENTIONS

1  These amendments provide a "limitation-by-limitation analysis," satisfying the requirements of
2  the Local Rules.
3       **Finally**, any prejudice to Apple is of its own making, and does not outweigh the prejudice
4  to Samsung caused by Apple's delayed disclosure.   Apple should not be rewarded for its late
5  production of discovery responsive to Samsung's longstanding requests.   *See Abaxis, Inc. v.*
6  *Cepheid*, 10-cv-2840-LHK at Dkt. 199 (N.D. Cal. July 20, 2012) (Koh, J.); *see also Abaxis* at Dkt.
7  204, 2012 WL 3255601 (N.D. Cal. August 8, 2012) (denying motion for reconsideration).

8  **V.   SAMSUNG'S PRACTICING PRODUCTS AMENDMENTS ARE JUSTIFIED BY APPLE'S IDENTIFICATION OF NEW ALLEGEDLY INFRINGING PRODUCTS**

9       Apple claims that Samsung should have independently included the Galaxy S III and
10 Galaxy Note II as practicing products, regardless of Apple's actions.   However, Apple's addition
11 of these allegedly infringing products is highly relevant to Samsung's present motion.   Prior to
12 their inclusion in this litigation, Samsung had no intention of discussing either the Galaxy S III or
13 Galaxy Note II with the Court or the jury.   However, on January 16, 2013, the Court entered a
14 stipulation permitting Apple's inclusion of these products in exchange for Samsung's inclusion of
15 certain Apple products, making each of these products relevant to the litigation.   Samsung would
16 be prejudiced if Apple is permitted to accuse the Galaxy S III and Galaxy Note II of infringement,
17 while Samsung is barred from explaining how these products practice Samsung's own patents.
18     Apple received timely notice of Samsung's proposed amendments on February 28, 2013, a
19 little more than a month after these products were included in the litigation.   And Apple does not
20 face any prejudice, since it is receiving full discovery based on the inclusion of these products to
21 the litigation.   Accordingly, the Court should permit this amendment.

22 **VI.  THE INDIRECT INFRINGEMENT CONTENTIONS FOR THE '239 PATENT ARE JUSTIFIED BY RECENT CHANGES IN LAW**
23
24     **First**, Apple confounds two distinct indirect infringement theories that Samsung is
25 presenting, the first of which was already previously disclosed.   Samsung's original infringement
26 contentions identify inducement by Apple based on the actions of a single direct infringer.   Thus,
27 Apple's citations to these excerpts is not relevant to Samsung's separate allegations under *Akamai*,
28

-9-
SAMSUNG'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS INFRINGEMENT CONTENTIONS

which contend that two or more customers (such as customers communicating to each other via audio and video) can act as direct infringers.

**Second**, Apple attempts to argue on the merits that the *Akamai* decision is limited to method claims, and does not extend to joint infringement of apparatus claims.   Samsung respectfully disagrees, and believes that its infringement contentions are not the proper venue for resolving this dispute.   Should Apple believe that these claims are without merit, the parties can address the issue properly in a motion for summary judgment.

**Finally**, no prejudice accrues to Apple based on the addition of Samsung's *Akamai* claims. The factual basis for Apple's indirect infringement – that it induces its customers to use the infringing applications on its products – is unchanged.

## VII.   SAMSUNG ADDRESSED EACH CHANGE IDENTIFIED IN ITS INFRINGEMENT CONTENTIONS

Apple is wrong when it alleges that many of Samsung's amendments were made without support.   Opp. at 3-6.   Apple (1) fabricates changes where there were none; (2) ignores information already properly entered in previous infringement contentions; and (3) further nitpicks on additional evidence that provides additional support for previously disclosed theories. Samsung has already responded to these points above, and specifically addressed the '087 and '596 Patents point for point.   Here, Samsung rebuts each of Apple's remaining allegations in turn:

**The '179 Patent**

Samsung's original infringement contentions, served on June 30, 2012, expressly accused "Apple products that implement a touchscreen keyboard as described herein, including all models of iPhone, iPad and iPod Touch."   The contentions were not limited to a particular version of Apple's mobile operating system (iOS), as Samsung has always contended that the different versions of iOS are not materially different with respect to the features accused of infringing the

1  '179 Patent – a contention that Apple has never disputed.[4]   Notably, the June 30, 2012
2  contentions could not be limited to iOS 6, because iOS 6 was not released until September 2012.
3  Samsung's Second Amended Contentions, which Apple cites as support, specifically identified
4  iOS 6 because the additional products accused therein – Apple's newly released iPod Touch 5,
5  iPad 4, and iPad mini – only run iOS 6.
6      Samsung has always asserted, since the original infringement contentions served on June
7  30, 2012, that screenshots and other product-specific allegations in its charts are exemplary.  See,
8  e.g., '179 Contentions, Ex. F at 2 ("see, e.g., iPhone 4S technical specifications…"), 4 ("Sample
9  iPhone 4S touch screen controller chip").   Accordingly, the previously served contentions already
10 provide that specific products depicted in the charts, e.g., iPhone 4S, iPod Touch 5, are
11 representative of other accused products running different versions of iOS by virtue of their
12 substantially similar functionality.   To that end, footnote 1 of the proposed amendments is merely
13 a clarification of this point, and not a new theory.   Indeed, footnote 1 adds nothing new to the
14 previous contentions, as it is necessarily true that a representative product must be substantially
15 similar to the products it represents with respect to the accused functionalities.
16     Samsung has contended since its original June 30, 2012 infringement contentions that the
17 Chinese (Stroke) keyboard, in addition to the Japanese Kana keyboard, infringes the '179 Patent.
18 See '179 Contentions, Ex. F at 9 ("For example, other keyboards such as the Chinese (Stroke)
19 keyboards assign different key codes to the same keys.").   Samsung never articulated a different
20 theory of infringement for the Chinese (Stroke) keyboard.   Accordingly, the mere clarification in
21 the proposed amendments that the two keyboards work in the same way for the purposes of the
22 asserted claims is not a new argument.
23     **The '757 Patent**
24     • Samsung's amendment identifying an exemplary operation of Home Sharing on
25        Apple's laptop and desktop systems is in response to the Court's claim construction

---

[4]   In fact, despite numerous requests from Samsung, Apple has to date refused to produce complete source code for each version of iOS.

1      requiring a zone specific device to "reside" in an area.  Mot. at 4.  While the parties
2      dispute whether mobile devices can "reside" in an area, there is less dispute that a
3      desktop computer resides in an area such as a room, as indicated in Samsung's
4      amendments.  Samsung simply demonstrates the behavior of the already-accused
5      Home Sharing feature on these computer devices.

6   • Samsung's amendments identify docking stations as examples of how Apple's mobile
7      devices may "reside" in a location, in response to the Court's claim construction
8      requiring a zone specific device to "reside" in an area.  Mot. at 4.  Samsung is simply
9      disclosing its arguments based on the Court's Markman ruling, not adding these
10     docking stations as accused devices.  Samsung addressed these issues above.

11  **The '239 Patent**

12  • Samsung did not intend to add the iPhone 3G, iPhone 3GS and the first three
13     generations of the iPod Touch to its accusations against the '239 Patent, and withdraws
14     those amendments.

15  • Samsung has already explained that these additional doctrine of equivalents disclosures
16     are in response to Apple's arguments during the Markman process.  Mot. at 5.
17     Samsung addressed these issues above.

18  • Samsung identified software or firmware such as the Camera, Phone, Contacts, Voice
19     Memos and iPod applications in response to the Court's claim construction, which held
20     that the "means for transmitting said composite signal" includes "software."  Mot. at
21     5.  Camera provides a method of accessing the Photos functionality, which has been
22     explicitly disclosed throughout Samsung's contentions.  *See, e.g.,* Ex. 1, Ex. H at 13;
23     Ex. 2, Ex. H at 24, Ex. 3, Ex. H at 31.  Similarly, Phone and Contacts provide methods
24     of accessing the FaceTime functionality, which has been explicitly disclosed
25     throughout Samsung's contentions.  *See, e.g.,* Ex. 2, Ex. H at 4, 8, 10, 22; Ex. 3, Ex. H
26     at 7, 10, 12, 28. Samsung addressed these issues above.

27
28

**The '470 Patent**

- The claims of the '470 Patent include the preamble "an audio/visual (A/V) device […] comprising [.]"  From the beginning, Samsung's infringement contentions have alleged that each Accused Device "is an audio/visual (A/V) device which processes an audio signal for an external audio reproduction unit."  Ex. 1, Ex. C at 2.  In support of this statement Samsung cited the technical specifications of each Accused Device; for example, the technical specifications of the iPhone 4S specify the audio and video playback formats supported by the device, and the expected battery life when playing back audio or video.[5]  In addition, Samsung's original infringement contentions illustrate the infringement features using the example of playback from the Music application.  *See, e.g.*, Ex. 1, Ex. C at 8.  Accordingly, there is no merit to Apple's protestation that Samsung's amended contentions disclose a "new argument" by simply stating that each Accused Device meets the claim preamble because it is capable of reproducing music and videos.  Opp. at 5.  Samsung's original infringement contentions relied on and disclose that same capability.

- Similarly, the statement that each Accused Device includes a control unit in the form of an application processor is not a "new contention," as Apple argues.  Opp. at 6.  Samsung's original infringement contentions identified each Accused Device's processor as meeting the "control unit" limitation.  See, e.g., Ex. 1, Ex. C at 14 ("For example, the iPhone 4S comprises a processor […]").  Samsung's amended contentions merely refer to that previously identified "processor" as an "application processor" to be consistent with what appears to be Apple's internal nomenclature.  The term "application processor" is used in processor user manuals ("SOC manuals") identified by Apple for the first time in its April 17, 2013 supplemental responses to

---

[5]  *See* Ex. 1, Ex. C at 2 (citing technical specifications available at http://www.apple.com/iphone/specs.html).

-13-
SAMSUNG'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT ITS INFRINGEMENT CONTENTIONS

Samsung's fourth set of interrogatories.[6]  Accordingly, even if using the term "application processor" instead of "processor" amounted to a new contention—which it does not—Samsung has good cause for using the term in its amended contentions.

**The '449 Patent**

- Samsung's original infringement contentions state that each Accused Device includes "a CMOS Image Sensor (or similar device) that has an A/D converter."  Ex. 1, Ex. G at 3.  This statement refers to an analog to digital (A/D) converter which is part of a CMOS image sensor chip.  Given this early disclosure, Apple cannot credibly argue that Samsung raises a "new theory of infringement" by merely restating that the A/D converter "may be incorporated into the image sensor chip."  Opp. at 6.  Samsung's theory was and remains that the A/D converter may be part of the image sensor chip.  As explained above, Samsung's amended contentions only add a doctrine of equivalents statement for "A/D converter" in response to ongoing discovery from Apple, Omnivision and Sony.  Mot. at 9.  Nothing in Samsung's amended contentions for the '449 Patent constitutes a "new theory" of infringement.

- Samsung's amended contentions do not raise a "new argument" that the Accused Devices meet the limitation of "a reproducing circuit which reproduces… a sound signal in synchronous to said moving image signal."  Opp. at 6.  Samsung has always contended that the limitation is met because the Accused Devices include a decompressor and reproducing circuit for video and audio compressed using, for example, the MPEG-4 or H.264 compression methods.  See, e.g., Ex. 1, Ex. G at 4-5.  As explained above, Samsung's amended contentions timely disclose that the audio decoder or codec chip described in documents produced by third-party Cirrus Logic on April 10, 2013, may be part of the claimed reproducing circuit.  Mot. at 8.  Apple

---

[6]  *See, e.g,* Ex. 8, APL630DEF-WH0001708698 (SOC manual cited in Apple's supplemental response to interrogatory No. 36, describing a "high performance application processor solution for mobile phone applications.").

1       argues that "Samsung's prior contentions did not identify anything in the Accused
2       products supposedly meeting this limitation."  Opp. at 6.  However, even Samsung's
3       original contentions identify portions of each device's processor, such as the GPU, as
4       part of the claimed "reproducing circuit."  See Ex. 1, Ex. G at 5.

- Apple further alleges that Samsung discloses a "new theory" that data pursuant to the Exif standard may be "classification data" as recited in claim 25.  Opp. at 6.  But Samsung's amended contentions merely cite Exif data as another example of data that is stored by the Accused Products when recording a captured image or video.  Samsung's original contentions identified album identification data as one example of "classification data."  See Ex. 1, Ex. G at 5-6.  Samsung's theory—that data recorded with an image or video may be "classification data"—remains the same.

- Finally, Apple falsely states that Samsung's amended contentions rely on "an entirely different screen" to show that the Accused Devices meet the limitation of a display that "lists a plurality of classifications and a number of images belonging to each classification."  Opp. at 6.  In fact, Samsung's original and amended contentions cite the same screenshot showing the Accused Devices' "Albums" screen.  Samsung's original contentions cite to the "Albums" screenshot reproduced earlier in the chart. See Ex. 1, Ex. G at 7 ("One example of a plurality of classifications (i.e., a list of Albums) is shown above").  Samsung's amended contentions merely reproduce the same screenshot for added clarity, such that the reader does not have to refer back to a prior page.  Mot. Ex. 4, Ex. G at 11.  Accordingly, Samsung's amended contentions rely on the exact same screen as its original contentions, and Apple's objection is meritless.

## VIII.  CONCLUSION

For the foregoing reasons, Samsung's Motion to Amend and Supplement Its Infringement Contentions should be granted in its entirety.

1  DATED: May 21, 2013              QUINN EMANUEL URQUHART &
2                                                       SULLIVAN, LLP
3
4                                                 By /s/ Victoria Maroulis
                                                         Victoria F. Maroulis
5                                                     Attorney for SAMSUNG ELECTRONICS CO.,
                                                         LTD., SAMSUNG ELECTRONICS AMERICA,
6                                                     INC., and SAMSUNG
                                                         TELECOMMUNICATIONS AMERICA, LLC
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28