JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California  94304-1211
Telephone:  (650) 849-5300
Facsimile:  (650) 849-5333

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　Defendants. | Case No. 12-cv-00630 (LHK)<br><br>**APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION TO COMPEL COMPLETE PRODUCTION OF SOURCE CODE FOR ALL ACCUSED PRODUCTS** |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND.............................................................................3

        A.      Apple's Immensely Valuable and Proprietary Source Code ...................................3

        B.      Samsung's Source Code Requests for Production and Apple's Agreement to
                Produce Relevant Code..........................................................................................4

        C.      Apple's Comprehensive Effort to Identify, Collect, and Produce Its Relevant
                Source Code ..........................................................................................................5

        D.      Samsung's Subsequent Demand for Additional Source Code.............................10

III.    ARGUMENT ....................................................................................................11

        A.      Samsung Cannot Justify Its Demand for All Apple Source Code—Regardless
                of Relevance—Under Fed. R. Civ. P. 26 or the Patent Local Rules ....................11

        B.      Samsung Cannot Justify Its Demand for All Apple Source Code Because It Never
                Served a Request Seeking the Production of Those Materials .............................14

        C.      Samsung Cannot Justify Its Demand for All Apple Source Code in View of
                the Significant Potential Risks of Serious Harm to Apple and Third Parties ........16

        D.      Samsung's Motion Should Be Denied Because Apple Has Already Produced
                the Specific Categories of Source Code That Samsung Has Identified in the
                Motion ..................................................................................................................17

IV.     CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Brooks v. Motsenbocker Advanced Devs, Inc.*,
  07-cv-773 BTM (NLS), 2008 WL 109061 (S.D. Cal. Jan. 8, 2008) ......................................15

*Edward D. Ioli Trust v. Avigilon Corp.*,
  No. 10-cv-605, 2012 WL 5830711 (E.D. Tex. Nov. 16, 2012)................................................13

*Fleming v. Escort, Inc.*,
  No. 09-105-S-BLW, 2010 WL 3833995 (D. Idaho Sept. 24, 2010)........................................13

*Forterra Sys., Inc. v. Avatar Factory*,
  No. C-05-4472 PVT, 2006 WL 2458804 (N.D. Cal. Aug. 22, 2006)......................................13

*Herbert v. Lando*,
  441 U.S. 153 (1979)................................................................................................................11

*In re Google Litig.*,
  No. C 08-03172 RMW (PSG), 2011 WL 6951972 (N.D. Cal. July 8, 2011)...................12, 13

*In re Google Litig.*,
  No. C 08-03172 RMW (PSG), 2011 WL 286173 (N.D. Cal. Jan. 27, 2011) ............................2

*Kelora Sys., LLC v. Target Corp.*,
  No. 11-01548, 2011 U.S. Dist. LEXIS 96724 (N.D. Cal. Aug. 29, 2011) ....................... 11-12

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
  No. 00-1412, 2001 U.S. Dist. LEXIS 23155 (D. Minn. Dec. 14, 2001)................................12

*Nazomi Commc'ns, Inc. v. Samsung Telecomms., Inc.*,
  No. C-10-05545-RMW, 2012 WL 1980807 (N.D. Cal. June 1, 2012) ...........................11, 12

*Samsung SDI Co. v. Matsushida Elec. Indus., Co.*,
  No. CV 05-8493-AG, 2007 WL 4302701 (C.D. Cal. June 27, 2007) ................................2, 13

*Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*,
  No. 04-167, 2006 WL 5111116 (E.D. Tex. Feb. 9, 2006) .....................................................13

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D. Cal. 1995).........................................................................................11

**RULES**

Fed. R. Civ. P. 26.............................................................................................................1, 11

## I.    INTRODUCTION

Samsung's Patent Local Rule 3-1 disclosures accuse Apple of infringing eight patents based on *specific features* found in Apple's accused products—which also include many other *non-accused* features having *nothing* to do with the asserted Samsung patents.  As such, Apple has limited its source code production to code potentially relevant to the accused features, a task that has involved extraordinary effort, as confirmed by the accompanying declarations from 35 Apple engineers involved in helping to identify and collect that code.  As a result of those efforts, Apple has now made more than one million source code files available to Samsung, which would fill more than four thousand boxes in printed form.

After waiting more than two months even to begin its review of source code that Apple had made available for inspection, Samsung has periodically identified additional code that it claims is relevant.  With the exception of requests for source code with no apparent colorable relevance to Samsung's infringement contentions, Apple has complied with Samsung's requests by supplementing its source code production several times.  In its motion to compel, however, Samsung now contends that, despite these extensive efforts and massive source code production, Apple has violated its discovery obligations by refusing to produce *every* line of source code from *every* version of software in the accused products—including *every* version of its iOS, OS X, iTunes, and iCloud software and *every* version of software supplied by third parties for any component, regardless of whether the code has any potential relevance to this case or is even in Apple's possession.  That argument should be rejected for the following five reasons.

*First*, Rule 26 of the Federal Rules of Civil Procedure expressly provides that the proper scope of discovery is limited to "any nonprivileged matter *that is relevant to any party's claim or defense*."  As such, Samsung does not have an unfettered right to seek *tens of millions* of *irrelevant* Apple and third-party source code files that indisputably have nothing to do with any issue in this case.  Indeed, just last year, Samsung itself made this *same* point to Judge Whyte when opposing a motion seeking to compel the production of its entire source code library for each accused product:  "[B]ecause Nazomi cannot identify any reasonable need for a complete

copy of Samsung's source code for each accused product, ***Samsung should only be required to produce portions of its source code that are relevant to the technology at issue in the patents-in-suit***."  (Kolovos Decl.,[1] Ex. A [Samsung Opp'n Br.] at 6-7 (emphasis added).)  Judge Whyte agreed with Samsung's argument in that case, and the same result should apply here as well.

*Second*, Samsung's demand for all source code files—regardless of relevance—also conflicts with Patent Local Rule 3-1, which requires patentees to provide specific infringement contentions at the outset of a case, in part, to focus the scope of permissible discovery into the accused products.  *See Samsung SDI Co. v. Matsushida Elec. Indus., Co.*, No. CV 05-8493-AG, 2007 WL 4302701, at *2-3 (C.D. Cal. June 27, 2007) (agreeing with *Samsung* that this Court's Patent Local Rules impose "a limitation on a party seeking discovery," and that infringement contentions may constrain the scope of discovery).  By its motion, Samsung seeks to obtain source code that indisputably has nothing to do with its infringement theories or the specific features of the Apple products that it has accused.

*Third*, Samsung has never served a Rule 34 document request that seeks the production of all versions of all Apple and third-party source code (or anything close to that scope).  Rather, its motion rests on document requests that seek source code relevant only to the ***accused functionalities***—which, from the outset, Apple has always agreed to produce.  As such, even if Samsung could justify its demand for irrelevant source code under the Federal and Local Rules (which it cannot), it has no basis to the compel the production of additional source code that it did not request.

*Fourth*, granting Samsung's motion would put Apple at risk of significant irreparable harm.  As this Court has previously recognized, demands for production of source code must be evaluated with sensitivity to the potential harm resulting from any disclosure.  *See In re Google Litig.*, No. C 08-03172 RMW (PSG), 2011 WL 286173, at *5 (N.D. Cal. Jan. 27, 2011) ("The court . . . appreciates the potential harm from the disclosure of a firm's proprietary source code,

---

[1]   "Kolovos Decl." refers to the Decl. of Peter J. Kolovos in Support of Apple's Opp'n to Samsung's Mot. to Compel Complete Production of Source Code for All Accused Products.

even with the safeguards offered by a protective order.").  Source code is unquestionably among Apple's most precious assets—reflecting the work of thousands of Apple engineers and billions of dollars of investment—and its unauthorized disclosure would be potentially catastrophic to Apple, even if wholly inadvertent.  The simple truth is that even the most sophisticated counsel occasionally make mistakes that cause the inadvertent disclosure of confidential information, which has already occurred multiple times in the cases between the parties, some of which this Court has seen.  *E.g.*, Case No. 11-CV-1846-LHK, Dkt. 1478 (denying IBM's motion for TRO to prevent Reuters from publishing confidential license terms inadvertently served on Reuters' counsel by counsel for IBM).  Apple should not be forced to subject its extremely valuable source code to that serious risk of disclosure when the code itself has no relevance to any issue at stake in this proceeding.

**Finally**, to the extent Samsung's motion identifies particular functionalities for which it demands source code, Apple has always agreed to produce that source code provided it is in Apple's possession and the functionalities remotely relate to any Samsung infringement contention.  Therefore, there is nothing to compel.

Accordingly, Samsung's motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Apple's Immensely Valuable and Proprietary Source Code

In this case, Samsung has alleged infringement based on Apple's iPhone, iPad, iPod touch, AppleTV, MacBook Pro, MacBook Air, and Mac desktop computer product lines. Essential to each of those devices is Apple-developed software—which enables the rich, powerful, and unique computing environment that differentiates Apple's products from those of its competitors, including Samsung.  (Wright Decl.,[2] ¶ 4.)

In total, Apple's iOS, OS X, iTunes, and iCloud software includes tens of millions of lines of source code—resulting from the efforts of thousands of Apple employees.  (*Id.* at ¶ 3.)

---

[2]    "Wright Decl." refers to the Decl. of John Wright in Support of Apple's Opp'n to Samsung's Mot. to Compel Complete Production of Source Code for All Accused Products.

Not surprisingly, Apple treats its iOS, OS X, iTunes, and iCloud source code as some of its most closely-guarded trade secrets, and protects them accordingly.[3]  For example, within its own facilities, Apple maintains its source code on highly secure depositories, and strictly limits physical and logical access to a select group of authorized Apple employees.  (*Id.* at ¶ 5.)  Through these and other security mechanisms, Apple has sought to protect itself against the real and substantial harm that it undoubtedly would suffer if its extraordinarily valuable software trade secrets were disclosed without authorization to others.  (*Id.* at ¶ 4.)

These important protections also help safeguard the interests of Apple's customers and third party partners.  For example, Apple's iOS and OS X operating systems contain source code that protects the personal information of Apple's customers from unauthorized use or interception, and prevents unauthorized copying of copyrighted content (*e.g.,* music, movies, and other media) of Apple's third party partners.  Gaining unauthorized access to Apple's source code might enable someone to undermine one or both sets of protections, thereby subjecting Apple's customers and partners to harm.  (*Id.* at ¶ 6.)[4]

**B.    Samsung's Source Code Requests for Production and Apple's Agreement to Produce Relevant Code**

During this case, Samsung has served several document requests that seek the production of source code—but only for the ***specific functionalities*** that Samsung has accused as a basis for its infringement claims.  For example, in July 2012, Samsung served Request No. 162, in which it sought the production of "source code used to operate or enable ***any accused functionality*** for any of the APPLE ACCUSED PRODUCTS."  (Thakur Decl.,[5] Ex. 7 at 14 (emphasis added).)

---

[3]    In its motion, Samsung attempts to draw comparisons between its source code and Apple's.  But there is no comparison.  In contrast to Apple's own highly proprietary source code, much of Samsung's source code is publicly available code that Google created.

[4]    Some of Apple's suppliers restrict Apple's access to ***their*** source code.  For example, as detailed below, *see infra* at 18-19, Samsung has requested the source code that runs on certain components supplied by third parties.  But Apple does not have that code – the suppliers do not give it to Apple.

[5]    "Thakur Decl." refers to the Decl. of Amar L. Thakur in Support of Samsung's Mot. to Compel Complete Production of Source Code for All Accused Products.

Likewise, the other eight document requests on which Samsung moves to compel (Request Nos. 163-70) seek source code for functionality that Samsung has accused in its infringement contentions. (Mot. at ii-ix.) In response to all nine requests, Apple agreed to produce its relevant source code for the accused functionality. (*E.g.*, Thakur Decl., Ex. 8 at 4 (agreeing in response to Request No. 162 to produce source code "regarding the accused functionality as identified by Samsung in its infringement contentions"); *id.* at 4-9 (agreeing to produce source code regarding the accused functionality as identified by Samsung in its infringement contentions); *id.*, Ex. 11 at 7 ("In response to these requests, Apple has agreed to produce source code regarding the accused functionality of each accused product.").)

## C.    Apple's Comprehensive Effort to Identify, Collect, and Produce Its Relevant Source Code.

Consistent with its promises, Apple has dedicated enormous time and resources to identify, collect, and produce relevant source code for the accused functionalities. (*See* Atwell Decl. ¶¶ 3,4,6.) As described more fully in the declarations accompanying this brief, Apple has enlisted at least 35 of its engineers in that effort (*id.* at ¶ 5), including for the code set forth below:

| Apple Engineer | Code Collected | Relevant Patent | Approx. No. of Files[6] |
|---|---|---|---|
| John Harper | Source code for the iOS CoreAnimation functionality | '058 Patent | 17,000 |
| Adele Peterson | Source code for the Safari application | '058 Patent | 24,000 |
| Joshua Shaffer | Source code for UIKit, including the code that displays the text loupe and the code for handling touch events | '058 Patent '179 Patent | 163,000 |
| Ed Voas | Source code for Notes, Calendar, and Contacts applications | '058 Patent | 66,000 |

---

[6] Decl. of John P. Pettit in Support of Apple's Opp'n to Samsung's Mot. to Compel Complete Production of Source Code for All Accused Products ("Pettit Decl."), ¶ 8.

| Apple Engineer | Code Collected | Relevant Patent | Approx. No. of Files[6] |
|---|---|---|---|
| Srini Nimmala | Source code for non-scheduled transmissions related to HARQ processes<br><br>Source code for forming MAC-e PDU and Scheduling Information for UMTS Enhanced Uplink and the functionality of non-scheduled transmission related to HARQ processes | '087 Patent<br>'596 Patent | 80 |
| Chris Mullens | Source code for multi-touch panel for capturing and processing touch data | '179 Patent | 3,700 |
| Deborah Goldsmith | Source code for defining and displaying the keys for the Japanese and Chinese keyboards in iOS | '179 Patent | 500 |
| Brittany Hughes | Source code for Springboard, including the source code for handling touch events<br><br>Source code that displays the volume HUD | '179 Patent<br>'470 Patent | 47,000 |
| Nima Parivar | Source code for processing touch information in the multi-touch framework | '179 Patent | 14,000 |
| Friedrich Drees | Source code for video playback in OS X | '239 Patent | 940,000 |
| Hsi-Jung Wu | Source code for decompressing video in OS X | '239 Patent | 9,300 |
| Justin Wood | Source code for setting up a FaceTime connection and attaching a video to a message for transmission | '239 Patent | 114,000 |
| Andre Boule | Source code for publishing videos to YouTube in iOS | '239 Patent | 350 |
| Joe Abuan | Source code for setting up a FaceTime call, for sending and receiving video in iOS, and for receiving, processing, and playback of FaceTime video in OS X | '239 Patent | 3,900 |

| Apple Engineer | Code Collected | Relevant Patent | Approx. No. of Files[6] |
|---|---|---|---|
| Cristobal Baray | Source code for the Mail application, including the user interface and email functionality | '239 Patent '058 Patent | 58,600 |
| Meera Shah | Source code for the Photos application, including code that attaches a video to an email or message from the Photos application | '239 Patent '449 Patent | 44,900 |
| Rolf Toft | Source code that compresses moving and still image signals; records compressed moving and still image signals to memory; decompresses moving and still image signals, reproduces moving and still image signals on the display; and reproduces sound signals synchronous with moving signals | '239 Patent '449 Patent | 52,000 |
| Haitao Guo | Source code for the MPEG2 codec | '239 Patent '449 Patent | 1,500 |
| Justin Titi | Source code for the Photo app, including for storing both still images and recorded videos, as well as presenting the camera roll and albums display | '449 Patent | 44,900 |
| Alexei Kosut | Source code that determines whether an external audio device is connected to the audio output port, and driver source code for the volume buttons | '470 Patent | 2,600 |

| Apple Engineer | Code Collected | Relevant Patent | Approx. No. of Files[6] |
|---|---|---|---|
| Matt Mora | Source code that causes audio to be output to the internal speakers if no external audio device is connected, or causes audio to be output to the external audio device through the audio output port if an external audio device is connected | '470 Patent | 13,700 |
| Robert Ulrich | Source code that displays a user interface element that allows a user to control the volume of the internal speakers or external audio devices (if connected) | '470 Patent | 6,200 |
| Greg Chapman | Source code that saves volume level settings, displays the appropriate saved volume level, and causes volume control commands received from a user to be handled | '470 Patent | 258,000 |
| Thomas Alsina | Source code for the Music app, including the user interface and email functionality, and the source code for displaying volume controls in the MediaPlayer library | '470 Patent | 59,300 |
| Yan Arrouye | Source code for supporting uploading and downloading content for Photo Stream (for the relevant library) | '757 Patent | 39,800 |
| Eric Krugler | Source code in Photo Stream that receives an image from one of a user's devices, determines which other devices to distribute the photo, and then notifies devices that the photo is available | '757 patent | 77,000 |
| Justin Henzie | Source code that manages content and metadata to and from Apple TV | '757 Patent | 42,000 |

| Apple Engineer | Code Collected | Relevant Patent | Approx. No. of Files[6] |
|---|---|---|---|
| Darren Lew | Source code that transfers content and metadata between iTunes in the Cloud servers and clients | '757 Patent | 12,000 |
| Olagappan Manickam | Source code that transfers content and metadata between iTunes in the Cloud servers and clients, and particularly with the functionality of the DAAP Service | '757 Patent | 7,300 |
| Garrick McFarlane | Source code that transfers content and metadata between iTunes in the Cloud servers and clients, particularly with the functionality of the relevant service | '757 Patent | 550 |
| Michael Chu | Source code that transfers content and metadata between iTunes and the Cloud servers and clients | '757 Patent | 300 |
| Arvind Shenoy | Source code that transfers content and metadata between iTunes Match servers and clients | '757 patent | 45,000 |
| Dave Rahardja | Source code that transfers Photo Stream content from or to an iOS device | '757 Patent | 3,800 |
| Dallas De Atley | Source code in iOS for communicating with iTunes | '757 Patent '239 Patent | 28,000 |
| David Heller | Source code for the iTunes client | '757 Patent '239 Patent | 2,700 |

In accordance with Patent Local Rule 4-2, Apple made a substantial portion of source code available to Samsung on August 10, 2012, which Apple supplemented on September 28, 2012, and October 11, 2012.  Samsung and its experts did not conduct a single inspection of that source code until October 12, 2012 (and more than half of its inspections did not occur until April and May 2013).  (Pettit Decl. ¶¶ 3,6.)

**D.      Samsung's Subsequent Demand for Additional Source Code**

Since October 2012, Samsung has periodically identified additional source code files that it believes Apple should have included in its production.  With the exception of requests for source code with no apparent colorable relevance to Samsung's infringement contentions, Apple has accommodated those requests by supplementing its source code production multiple times (on November 9, 2012, December 20, 2012, February 4, 2013, April 16, 2013, May 7, 2013, May 11, 2013, May 17, 2013, May 20, 2013, May 22, 2013, and May 23, 2013).[7]  For example, in its infringement contentions, Samsung did not differentiate among the numerous different versions of Apple's operating system software.  As such, in its August 2012 production, Apple included the relevant code from its most recent software versions—just as it had done without complaint in the prior 11-1846 case.  (*Id.* at ¶ 2.)  However, several months later, Samsung demanded that Apple produce source code files for the accused functionality for ***all*** versions of the iOS and OS X operating systems.  (Kolovos Decl., Ex. B [March 1 Letter from Fazio] at 3.)  Although Samsung could not point to anything in its infringement contentions supporting a relevant difference among these versions, in an effort to avoid burdening the Court with motion practice, Apple nonetheless agreed to produce relevant code for all relevant versions and releases. (Thakur Decl., Ex. 15.)

In addition, on December 23, 2012, Samsung identified source code that it claimed was relevant to accused functionalities or features.  (Thakur Decl., Ex. 12.)  In its letter dated January 8, 2013, Apple noted that many of Samsung's requests sought source code for applications or functionalities that Samsung had failed to identify in its infringement contentions, and asked Samsung to explain the relevance of the requested code.  (*Id.*, Ex. 13.)  Samsung did not respond for over two months, and even when it did (on March 9, 2013), it ignored Apple's request and instead demanded that Apple produce its entire source code base.  (*Id.*, Ex. 14.)  In response, Apple agreed to produce source code for newly-requested files that appeared colorably relevant

---

[7]      After the parties reached an agreement to notify each other when source code was added to the source code computer, Apple timely notified Samsung of these supplemental source code productions.  (Pettit Decl. ¶ 3.)

1  to Samsung's contentions and sought clarification for others (including those identified in

2  Apple's January 8 letter), but refused to produce its entire source code base without regard to

3  relevance.  (*Id.*, Ex. 15.)

4      To date, Apple has made more than one million source code files available to Samsung

5  for inspection, containing more than 500 million lines of code.  (Pettit Decl. ¶ 5.)  Samsung's

6  request for all versions of all code in the accused products would surely amount to billions of

7  lines of code.

8  **III.  ARGUMENT**

9      **A.  Samsung Cannot Justify Its Demand for All Apple Source Code—Regardless**
10      **of Relevance—Under Fed. R. Civ. P. 26 or the Patent Local Rules.**

11      At the core of Samsung's motion is the premise that the law requires Apple to produce ***all***

12  of its own and third party source code for ***every*** version of ***each*** accused product, without regard

13  to whether the code has any potential relevance to the issues in this case.  But that is not the law,

14  and Samsung's argument fails for three reasons.

15      ***First,*** the Federal Rules of Civil Procedure make clear that Samsung can only seek source

16  from Apple "***that is relevant to any party's claim or defense***."  Fed. R. Civ. P. 26(b) (directed to

17  "Discovery Scope and Limits") (emphasis added); *see Herbert v. Lando*, 441 U.S. 153, 177

18  (1979) ("[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant'

19  should be firmly applied . . . ."); *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)

20  ("[T]he party seeking to compel discovery bears the burden of showing that his request satisfies

21  the relevance requirement of Rule 26 . . . .").  In other words, Samsung has no right to seek

22  discovery of massive amounts of Apple and third-party source code that are ***irrelevant*** to the

23  specific features accused in this litigation.

24      Indeed, courts in patent cases have repeatedly rejected motions seeking to compel the

25  production of source code that is not relevant to the specific issues in dispute.  *See Nazomi*

26  *Commc'ns, Inc. v. Samsung Telecomms., Inc.*, No. C-10-05545-RMW, 2012 WL 1980807, at *3

27  (N.D. Cal. June 1, 2012) (limiting required production to relevant source code); *Kelora Sys., LLC*

28

1   *v. Target Corp.*, No. 11-01548, 2011 U.S. Dist. LEXIS 96724, at *9 (N.D. Cal. Aug. 29, 2011)

2   (denying motion to compel production of source code that was "completely unrelated to the

3   accused functionality"); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, No. 00-1412, 2001 U.S. Dist.

4   LEXIS 23155, at *25-26 (D. Minn. Dec. 14, 2001) ("Multi-Tech is not entitled to the whole

5   universe of source code for the products at issue because, as Microsoft explains, there are many

6   functions within the relevant products which have no bearing on this case.").

7           In fact, in the *Nazomi Commc'ns* case, **Samsung** itself **opposed** a motion that sought to

8   compel the production of its entire source code library for each accused product by taking the

9   **same** relevance-based position that Apple has advanced here:

10          Because Nazomi cannot identify any reasonable need for a complete copy
            of Samsung's source code for each accused product, ***Samsung should***
11          ***only be required to produce portions of its source code that are relevant***
            ***to the technology at issue in the patents-in-suit***.
12

13   (Kolovos Decl., Ex. A [Samsung Opp'n Br.] at 6-7 (emphasis added).)  Judge Whyte agreed with

14   Samsung that its source code production "should be limited to portions of source code that are

15   relevant to the technology at issue in the patents-in-suit" because the patentee "has not

16   demonstrated the necessity of 'fully understand[ing] the operation of Samsung's products' as

17   opposed to understanding the portion that is covered by its infringement claims." *Nazomi*

18   *Commc'ns*, 2012 WL 1980807, at *3.  Samsung cannot prevail here by arguing that a different

19   standard should apply to the production of Apple's source code.

20          While Samsung suggests that courts generally require a defendant in a software patent

21   case to produce its entire source code base (Mot. at 6-7), the cases cited by Samsung do not

22   support this proposition.  *In re Google* arose from a motion for sanctions stemming from

23   Google's non-compliance with an earlier discovery order, in response to which (among other

24   deficiencies) Google failed to provide plaintiff access to source code for certain accused features.

25   *In re Google Litig.*, No. C 08-03172 RMW (PSG), 2011 WL 6951972  at *4 (N.D. Cal. July 8,

26   2011) ("As for other accused activity … Google does not explain why it appears not to have

27   provided any [source code] access whatsoever.").  Even so, the Court did not order Google to

28

1    produce its entire source code base as a sanction, but rather compelled production of all source

2    code "for all accused indexing and serving activity."  *Id.* at *7.  In *Fleming*, the court recognized

3    that the defendant was not required to produce irrelevant source code, but found that because the

4    defendant bundled source code for all of its products together, it was "compelled by its own

5    business practices to produce source code for both infringing and non-infringing products."

6    *Fleming v. Escort, Inc.*, No. 09-105-S-BLW, 2010 WL 3833995, at *1-2 (D. Idaho Sept. 24,

7    2010).  And *Ioli Trust* did not concern the scope of a defendant's obligation to produce source

8    code; rather, the defendant had refused to produce ***any*** source code for the accused software.

9    *Edward D. Ioli Trust v. Avigilon Corp.*, No. 10-cv-605, 2012 WL 5830711, at *2 (E.D. Tex.

10   Nov. 16, 2012).[8]  Finally, the issue before the court in *InTouch Technologies* was whether to

11   compel production of source code that was "several hundred thousand lines long,"  (Kolovos

12   Decl., Ex. C [Joint Stip. Re Motion to Compel] at 8.)  In contrast, Samsung is seeking the

13   production of billions of lines of source code.

14           ***Second***, Samsung's request for irrelevant source code also conflicts with the Patent Local

15   Rules of this Court, which are designed to put some boundaries on the scope of permissible

16   discovery.  *See Samsung SDI Co.*, 2007 WL 4302701, at *2-3 (Patent Local Rules impose "a

17   limitation on a party seeking discovery").  Permitting Samsung to demand source code from

18   Apple that has nothing to do with its stated infringement theories would subvert one of the key

19   purposes behind Rule 3-1 disclosures.

20           ***Finally***, unable to base its motion on any existing law, Samsung attempts to manufacture

21   new authority by stating that it was ordered in the 1846 case "to produce complete source code

22   builds for the accused Samsung products," even for code not relevant to accused functionalities.

23   ──────────────

24   [8]      Apple notes that the court in *Forterra* offered no explanation for its conclusion that "the
     entire source code is relevant under Rule 26," as most of the court's analysis focused on

25   establishing appropriate safeguards to limit the risk of inadvertent disclosure.  *See Forterra Sys.,
     Inc. v. Avatar Factory*, No. C-05-4472 PVT, 2006 WL 2458804, at *1-2 (N.D. Cal. Aug. 22,

26   2006).  Similarly, the court in *Sensormatic* offered no analysis or explanation to support its order
     that defendants produce "all source code for the accused products, including those accused in the

27   supplemental infringement contentions."  *Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*, No.
     04-167, 2006 WL 5111116, at *1 (E.D. Tex. Feb. 9, 2006).

28

1    (Mot. at 7.)  But the Court did no such thing.  Rather, in a section captioned "Source code and

2    technical documents *showing the operation of the allegedly infringing product features*," the

3    Court merely ordered Samsung to produce "the source code and technical documents *requested*

4    *by Apple's motion*"—a motion that only sought "source code and other technical documents

5    *showing the operation of the allegedly infringing product features*," not Samsung's entire

6    source code base.  11-CV-01846-LHK, Dkt. 467-1 at 36 (emphases added); 11-CV-01846-LHK,

7    Dkt. 537 at 2 (emphasis added).  As such, limiting Apple's production in this case to source code

8    relevant to the accused functionality is entirely consistent with the Court's prior ruling.

9    **B.    Samsung Cannot Justify Its Demand for All Apple Source Code Because It
          Never Served a Request Seeking the Production of Those Materials.**

10

11        As noted above, the law does not permit Samsung to seek discovery of source code that is

12   irrelevant to the substantive issues in this litigation.  That said, even if Samsung could overcome

13   that legal hurdle (which it cannot), its motion still should be denied because Samsung has never

14   served a document request seeking all of Apple's source code for the accused Apple products.

15   To the contrary, as detailed below, Samsung has limited each of the nine source code requests it

16   cites pursuant to Civil L.R. 37-2 to the accused features or functionality:

17        •   **Request No. 162:**  "All versions of the source code used to operate or enable *any*

18            *accused functionality* for any of the APPLE ACCUSED PRODUCTS" (Thakur

19            Decl., Ex. 7 at 14 (emphasis added));

20        •   **Request No. 163:**  "All DOCUMENTS and THINGS RELATED TO . . .

21            transmitting, receiving, processing, communicating, enabling, or otherwise

22            facilitating the non-scheduled transmission of packetized data from an APPLE

23            ACCUSED PRODUCT through any WCDMA network employing enhanced uplink

24            dedicated channel (E-DCH) technology" (*id*. at 14) [accused feature for the '087

25            patent];

26        •   **Request No. 164**: "All DOCUMENTS and THINGS RELATED TO . . . transmitting,

27            receiving, processing, communicating, enabling, or otherwise facilitating the

28

exchange of control information for packetized data transmission from an APPLE

ACCUSED PRODUCT through any WCDMA network employing enhanced uplink

dedicated channel (E-CDH) technology" (*id*. at 14-15) [accused feature for the '596

patent];

- **Request No. 165:** "All DOCUMENTS and THINGS RELATED TO . . . controlling

  the volume of audio playback." (*id*. at 15) [accused feature for the '470 patent];

- **Request No. 166:** "All DOCUMENTS and THINGS RELATED TO . . .

  synchronizing multimedia files associated with one or more users and stored across

  any '757 PATENT ACCUSED PRODUCTS using network transmissions" (*id*. at 15)

  [accused feature for the '757 patent];

- **Request No. 167:** "All DOCUMENTS and THINGS RELATED TO . . . displaying

  content in layers, including expanding portions of the displayed content that are

  selected by a user" (*id*. at 15) [accused feature for the '058 patent];

- **Request No. 168:** "All DOCUMENTS and THINGS RELATED TO . . . displaying

  a keyboard on a touchscreen and processing user input that consists of contact with

  the displayed keys" (*id*. at 15) [accused feature for the '179 patent];

- **Request No. 169:** "All DOCUMENTS and THINGS RELATED TO . . . the capture,

  processing, storage, retrieval, or display or still or moving images" (*id*. at 16)

  [accused feature for the '449 patent];

- **Request No. 170:** "All DOCUMENTS and THINGS RELATED TO . . . the capture,

  processing, and packetized transmission of multimedia data" (*id*. at 15) [accused

  feature for the '239 patent].

Having failed to serve a document request seeking the production of ***all*** of Apple's source

code, Samsung cannot seek to compel the production of those materials here.  *See Brooks v.

Motsenbocker Advanced Devs, Inc.*, 07-cv-773 BTM (NLS), 2008 WL 109061, *2 (S.D. Cal.

Jan. 8, 2008) ("Because Plaintiffs have not requested the specific information sought in nos. 1-7

through discovery, the Court cannot compel Defendants to respond to it at this time.").

1

2

### C.   Samsung Cannot Justify Its Demand for All Apple Source Code in View of the Significant Potential Risks of Serious Harm to Apple and Third Parties.

3

4

5

6

7

As noted above, Samsung has failed to identify *any* legitimate benefit that will result if Apple is compelled to produce all versions of all Apple and third party source code for all accused products regardless of relevance—including the entire content of its proprietary source code files for iOS, OS X, iTunes, and iCloud.  By contrast, requiring a complete production of that code would present serious and unnecessary risks to Apple, its suppliers, and its customers.

8

9

10

11

12

13

14

15

16

17

18

*First*, Apple's source code has incalculable value.  That code has resulted from the work of thousands of Apple employees, and is one of the key ways in which Apple is able to differentiate its products from those of its competitors.  (Wright Decl., ¶¶ 3-4.)  As such, while some harm will necessarily follow from the inadvertent disclosure of any production, that harm would rise to a catastrophic level if Apple's source code were ever disclosed to others without authorization (inadvertently or otherwise).  Apple is prepared to accept that severe risk with respect to the specific source code files that are necessary for the Court to assess Samsung's infringement contentions.  But Samsung has failed to identify any reason why Apple should be forced to endure that same extreme risk for the *billions* of *additional* lines of source code Samsung seeks that have no relevance to any issue at stake in this proceeding—because there is no reason.

19

20

21

22

23

24

25

*Second*, Samsung's motion is equally silent with respect to the harm that Apple's third party suppliers and customers might suffer following unauthorized disclosure of Apple's or their own source code.  For example, access to Apple's entire source code library may allow others to bypass the software security mechanisms that help protect the copyrighted digital assets of Apple's third party partners.  (Wright Decl., ¶ 6.)  Likewise, elements of Apple's iOS and OS X operating systems that are not in any way relevant to this case protect the security of personal information that Apple customers store on Apple's devices.  (*Id.* at ¶ 6.)  Production of that (and

26

27

28

other irrelevant) source code enhances the risk of harm to those customers, despite the existence of a protective order.[9]

**Third**, Samsung suggests that Apple should be compelled to produce all its source code simply because Samsung has chosen to produce all its code.  (Mot. at 5-6.)  But Samsung cannot use its unilateral choice to produce its entire source code base as a mechanism to require Apple to produce its entire base, including irrelevant source code that Apple has no obligation to produce.  Moreover, because much of the source code that Samsung has produced was written by Google and is already in the public domain, Samsung does not stand to suffer any significant harm from unauthorized disclosure of that code.  By contrast, as detailed above, Apple will suffer very real and very substantial harm if its critically important and proprietary source code is disclosed to others outside the scope of the protective order.[10]

At bottom, Apple, its suppliers, and its customers should not be forced to assume the risk that their trade secrets, copyrighted content, and personal information will be disclosed simply because Samsung wishes to obtain undeniably irrelevant information.

### D. Samsung's Motion Should Be Denied Because Apple Has Already Produced the Specific Categories of Source Code That Samsung Has Identified in the Motion.

Unable to compel the production of Apple's entire source code base, Samsung contends in its motion that Apple should be required to produce source code relating to certain specific functionality.[11]  As set forth below, however, that request should be denied inasmuch as Apple

---

[9]    Specific provisions in the protective order offer heightened protection for source code, but even these extra protections cannot completely eliminate the risk of all unauthorized disclosures.

[10]    Samsung suggests that Apple's rolling production has hampered its source code review. (Mot. at 5.)  Yet, Samsung went two months before sending anyone to review Apple's source code, and most of its review has been conducted over the last six weeks.  As a result, Samsung cannot complain that its late review has identified additional source code that Apple has recently produced.

[11] Samsung also complains that Apple produced varying amounts of source code for different versions of the same accused feature or functionality.  (Mot. at 12.)  As an initial matter, to the extent there were variations in scope among the versions, Apple is not aware that the variations were in any way material (and Samsung has not pointed to any way in which they were material).  In any event, Apple's supplemental source code productions have remedied any perceived deficiency.

has already agreed to produce that source code to the extent it is in Apple's possession and

accused in Samsung's infringement contentions:

**iCloud, iTunes, and iTunes Match:**  Samsung claims that Apple has not produced all

source code for iCloud and iTunes.  However, Apple has already produced both client side and

server side source code related to accused iCloud services, and all source code for the accused

iTunes functionality.  (Heller Decl., ¶¶ 4-5; De Atley Decl., ¶¶ 4-5; Krugler Decl., ¶¶ 4-5;

Arrouye Decl., ¶¶ 4-5; Rahardja Decl., ¶¶ 4-5; Chu Decl., ¶¶ 4-5; Lew Decl., ¶¶ 4-5; Manickham

Decl., ¶¶ 4-5; McFarlane Decl., ¶¶ 4-5; Shenoy Decl., ¶¶ 4-5).  For example, server code related

to the DAAP servers, part of the iCloud accused functionality, was produced on August 10,

2012.  Likewise, the source code for the iTunes client software was also produced at that same

time.  Additional extensive source code has also been produced on other dates to cover multiple

versions of the relevant server code, per Samsung's request.

**Audio chips, audio codecs, video chips, and image sensor chips:**  Samsung complains

that Apple has withheld third-party source code for audio chips, audio codecs, video chips, and

image sensor chips accused with respect to the '239 patent.  As an initial matter, Samsung has

not identified any audio components in its infringement contentions for the '239 patent (or for

the '449 patent).  Moreover, it is unclear what Samsung means by the terms "audio chip" or

"video chip"; the accused products do not contain any components of that name, and Samsung

has not identified any in its contentions.  To the extent Samsung means the video encoders and

decoders and audio codecs and amplifiers supplied by third-parties, Apple does not have source

code for these components.  Cirrus Logic supplies the audio codecs and amplifiers in the iOS

devices.   The H.264 video encoders and decoders are supplied by Imagination Technologies and

the JPEG encoder / decoder is supplied by Samsung.  None of these third parties provides source

code to Apple.  The same is true of the image sensors in Apple's accused products, which are

supplied by Omnivision and Sony.  (Indeed, Samsung is well aware that Apple does not have this

third party source code:  Samsung has already served subpoenas to Cirrus, Omnivision, and Sony.)

Samsung also complains that Apple has not produced applications processor source code involved in "preparing audio or video data for transmission," "communicating with the baseband processor and WiFi chips," or "transferring audio or video data between software and hardware components."  (Mot. at 11.)  On March 29, Apple asked Samsung to explain the relevance of these requests, but Samsung has pointed to nothing in its infringement contentions, in the '239 patent claims, or anywhere else in response.  (Thakur Decl., Ex. 15; Thakur Decl. Ex. 16.)  This is unsurprising, as these functionalities are not relevant to either asserted claim of the '239 patent.[12]  Indeed, none of Samsung's infringement contentions even uses the terms "preparing," "communicating," or "transferring."

**FaceTime and Camera Applications:**  Samsung alleges that Apple is withholding source code for the Camera and FaceTime applications, and that these applications are needed because they use the frameworks EmbeddedAVFoundation and EmbeddedCoreMedia.  (Mot. at 11-12.)  But none of Samsung's infringement contentions identifies the Camera app as accused, and although Samsung did not add FaceTime as an accused feature until January 23, 2013 (Dkt. 349), Apple has produced FaceTime source code for the accused functionality.  (Abuan Decl., ¶¶ 4-6; Wood Decl., ¶¶ 4-5.)  As such, Apple is not withholding anything relevant for either application.

**Code for the "upload process" to "send the data over the wireless link"**:  For the '239 patent, Samsung complains that Apple has not produced source code "that would show that the 'upload' process will, in fact, send the [audio or video] data over the wireless link," including

---

[12]   Claim 1 consists entirely of means-plus-function terms directed to the functions of capturing, digitizing, compressing, storing, transmitting, receiving, and decompressing video, and exchanging the video between a host unit that received it and a playback unit.  ('239 patent, Col. 13: 5-17.)  None of these functions involves the requested functionalities.  Independent claim 15 is similarly devoid of such language (requiring "a computer including a video capture module to capture and compress video in real time; means for transmission of said captured video over a cellular frequency").

1    certain source code for the YouTube app.  (Mot. at 12.)  But the Court's *Markman* Order held

2    that the "means for transmitting" element is limited to "one or more modems connected to one or

3    more cellular telephones, telephone lines, and/or radio transmitters" used for transmitting the

4    audio or video files, and Samsung has not identified ***any*** of those things in its infringement

5    contentions.  Therefore, Apple is not withholding code directed to the "means for transmitting"

6    limitation, and has no way of knowing what additional source code Samsung believes might be

7    relevant to that limitation.

8    **IV.    CONCLUSION**

9           Apple has agreed to produce its source code for all relevant functionality for the accused

10   products, which is what Samsung's Request Nos. 162-70 seek.  The demand that Samsung

11   makes in its motion—that Apple produce all of it source code, without regard to relevance—is

12   unsupported by the Federal Rules of Civil Procedure, the Local Rules of this Court, or anything

13   else.  That is particularly true here given that the source code at issue is one of Apple's most

14   sensitive and important commercial assets.

15          Apple respectfully requests that the Court deny Samsung's motion in its entirety.

16

17   Dated:  May 23, 2013                          _____/s/ Mark D. Selwyn_____

18                                                            Mark D. Selwyn

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

3          I hereby certify that a true and correct copy of the above and foregoing document has

4   been served on May 23, 2013 to all counsel of record who are deemed to have consented to

5   electronic service via the Court's ECF system per Civil Local Rule 5-1.

6

                                            /s/ Mark. D Selwyn
7                                           Mark D. Selwyn

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28