# EXHIBIT C

Craig S. Summers (SBN 108,688)
craig.summers@kmob.com
Joseph S. Cianfrani (SBN 196,186)
joe.cianfrani@kmob.com
Irfan A. Lateef (SBN 204,004)
irfan.lateef@kmob.com
Brian C. Claassen (SBN 253,627)
brian.claassen@kmob.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
**INTOUCH TECHNOLOGIES, INC.
D/B/A INTOUCH HEALTH**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| INTOUCH TECHNOLOGIES, INC. D/B/A INTOUCH HEALTH, a Delaware corporation, | ) Case No. CV 11-9185 PA (AJWx) ) |
| Plaintiff, | ) **L.R. 37-2 JOINT STIPULATION** ) **REGARDING INTOUCH** ) **TECHNOLOGIES, INC.'S MOTION** ) **TO COMPEL PRODUCTION OF** ) **DOCUMENTS AND SOURCE CODE** ) |
| v. | ) **DISCOVERY MATTER** ) |
| VGO COMMUNICATIONS, INC., a Delaware corporation, | ) ) Hearing Date: May 7, 2012 |
| Defendant. | ) Time: 10:00 a.m. ) Courtroom: 690 |
| | ) ) Discovery Cut-Off: September 10, 2012 ) Final PTC: October 19, 2012 ) Trial: November 20, 2012 ) |
| AND RELATED COUNTERCLAIMS | ) Honorable Magistrate Judge ) Andrew J. Wistrich |

# **TABLE OF CONTENTS**

**Page No.**

I.   INTRODUCTION ........................................................................... 1

    A.   InTouch's Introduction ......................................................... 1

    B.   VGo's Introduction .............................................................. 4

II.  THE MANNER AND TIMING OF SOURCE CODE
    PRODUCTION ............................................................................. 6

    A.   InTouch's Position ................................................................ 6

    B.   VGo's Position ................................................................... 10

III. DISPUTES REGARDING OTHER DOCUMENTS .............................. 11

    A.   Request for Production Nos. 2-4 ......................................... 12

        1.   InTouch's Position .................................................. 13

        2.   VGo's Position ....................................................... 14

    B.   Request for Production Nos. 6, 7, 10, 11, 13, 34, 35, 54,
        55, 57, and 58 .................................................................. 15

        1.   InTouch's Position .................................................. 19

        2.   VGo's Position ....................................................... 21

## <u>TABLE OF AUTHORITIES</u>

Page No(s).

*Collaboration Properties v. Tandberg ASA*,
    No. C 05-01940, 2006 U.S. Dist. LEXIS 13966
    (N.D. Cal. Mar. 28, 2006) ...................................................................... 9, 10

*IP3 Networks, Inc. v. Nomadix, Inc.*,
    No. 04 CV 1485 BTM (POR) (S.D. Cal.) .................................................10

*Jab Distribs., LLC v. London Luxury, LLC*,
    No. 09-CV-5831, 2010 U.S. Dist. LEXIS 109178
    (N.D. Ill. Oct. 13, 2010) ...........................................................................9

*Masimo Corporation v. Philips Electronics North America
    Corporation*, Case No. 09-80 (D. Del.).....................................................10

*Nomadix, Inc. v. Second Rule LLC*,
    No. CV07-1946 DDP (C.D. Cal.).............................................................10

*Phillips v. General Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) ...................................................................8

*Sprint Commc'ns Co. v. Big River Tel. Co.*,
    No. 08-2046, 2008 U.S. Dist. LEXIS 70669
    (D. Kan. Sept. 16, 2008) ...........................................................................9

*Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*,
    813 F.2d 1207 (Fed. Cir. 1987) .................................................................9

*Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
    214 F.R.D. 583 (C.D. Cal. 2003)...............................................................8

### OTHER AUTHORITIES

Fed. R. Civ. P. 26..........................................................................................8

Fed. R. Civ. P. 30..........................................................................................2

Fed. R. Civ. P. 34.............................................................................. 6, 14, 21

Fed. R. Civ. P. 37..........................................................................................4

Local Rule 37...................................................................................... 1, 3, 4

Plaintiff/Counterdefendant InTouch Technologies, Inc. d/b/a InTouch Health ("Plaintiff" or "InTouch") and Defendant/Counterclaimant VGo Communications, Inc. ("Defendant" or "VGo") submit this joint stipulation pursuant to Local Rule 37-2. The parties met and conferred on VGo's document production pursuant to Local Rule 37-1 on March 27, 2012.

Exhibits A-R are attached to the declaration of Brian Claassen, submitted herewith, in support of InTouch's Motion and include the discovery requests and responses, as well as the written communications of counsel required by Local Rule 37, and this Court's Scheduling Order.

# I. INTRODUCTION

## A.   InTouch's Introduction

Plaintiff InTouch designs and sells remote presence robot systems. These robot systems enable a user at one location to remotely control a robot with two-way audio and video capability at a second location in order to establish a remote presence of the user at the second location. InTouch has been awarded numerous patents for its innovations in remote presence robot technology.

In this case, InTouch brought claims for patent infringement against VGo Communications, Inc. ("VGo") for infringement of U.S. Patent Nos. 6,346,962 and 6,925,357. These patents relate to the software used to operate the robots. Thus, the source code for that software is critical documentary evidence on which both parties will heavily rely throughout this case. For example, InTouch intends to rely on portions of the source code for the accused VGo Robot Systems to show that the robots perform the patented methods.

Knowing that the software used to operate the robots would be critical evidence in this case, InTouch asked for the software code at the parties' very first meeting in early February, 2012. Specifically, InTouch served requests for production directed to the source code for the accused robots on the very first day of discovery in this case (February 8, 2012). *See* Ex. A. Shortly thereafter,

Judge Anderson entered a Scheduling Order setting a jury trial in November 2012 and making InTouch's infringement contentions due April 2, 2012. *See* Ex. C.

Recognizing that Judge Anderson's schedule did not permit discovery delays, InTouch noticed a Fed. R. C. P. 30(b)(6) deposition for March 23, 2012 regarding the structure, function, and operation of the accused devices so that it could refer to that testimony in its infringement contentions. InTouch specifically sequenced the deposition to occur shortly after March 12, 2012, the date VGo was obligated to provide the documents responsive to InTouch's requests for production. This sequence would allow InTouch to obtain the needed discovery before the April 2, 2012 due date for serving its infringement contentions.

On March 1, 2012, counsel for InTouch reminded counsel for VGo that it needed the requested source code and technical documents well in advance of the upcoming date for infringement contentions. InTouch requested a meeting to discuss production of the source code, other technical documents, and electronically stored information. *See* Ex. D. On March 11, 2012, VGo's counsel stated that VGo would not produce copies of the source code to InTouch's attorneys and that VGo would only allow InTouch's attorneys to inspect the source code, without making copies, at VGo's New Hampshire headquarters. Ex. F.

On March 12, 2012, the agreed-upon due date for VGo's written discovery responses, InTouch again requested a conference of counsel to discuss the outstanding discovery issues. *See* Ex. G. Later that day, VGo served its responses to InTouch's interrogatories. Ex. H. VGo did not serve a response to InTouch's requests for production until the following day.

In response to InTouch's requests for production, VGo stated that it would either produce the requested documents or permit inspection, yet

produced nothing.  Ex. B.  Unable to reach VGo's counsel to discuss its failure to produce the requested documents, on March 14, 2012 InTouch served a letter to VGo's counsel requesting a conference of counsel under Local Rule 37-1.  Ex. K.

VGo's attorney finally responded on March 16, 2012, proposing that InTouch's attorneys could "go to Nashua, NH and inspect all of the VGo Source Code."  Ex. L.  Alternatively, VGo's attorney offered to produce selected portions of the VGo software.  On Monday, March 19, 2012, counsel for InTouch reiterated its request for a conference regarding the outstanding issues and a schedule for document production.  Ex. M.

On March 21, 2012, InTouch offered to travel to New Hampshire to inspect and copy all of the requested VGo documents.  Ex. N.  VGo declined.  Finally, on March 27, 2012, VGo's attorney finally agreed to meet and confer over the outstanding discovery issues.  VGo promised to produce a handful of documents the following day, but indicated that a full production of the requested documents was not forthcoming anytime soon.  VGo's attorney also reiterated that it would only produce selected portions of the VGo source code and that if InTouch wanted to inspect the full version, they would have to travel to New Hampshire to do so.  VGo produced only a selective portion of its source code and only fifty five pages of documents.  This motion followed.

There are two issues on this motion.  First, VGo improperly refuses to produce a full version of its source code, instead offering only to produce portions of the code that it selects.  Such a proposal is unworkable and unfair to InTouch, whose attorneys must review the entire software code with its expert in order to accurately identify those portions of the code that are performing the patented methods.  VGo can offer no justification for withholding the remaining software code, which heightens suspicions that key portions will be omitted.

/ / /

Second, VGo has agreed to a full production, yet has produced very little, which has prejudiced InTouch's ability to timely provide full and complete infringement contentions as required by the Court's scheduling order.  Such an abject refusal to perform undisputed discovery obligations hardly requires discussion.  Accordingly, InTouch respectfully requests that the Court order VGo to produce a searchable soft copy of its entire source code used with the accused robots and to produce all documents and things requested in InTouch's requests for production without further delay.  InTouch further requests its fees and costs associated with the filing of this Motion pursuant to F.R. Civ. P. 37(a), as VGo cannot justify its refusal to comply with its discovery obligations.

## B.    VGo's Introduction

Much of InTouch's lengthy Introduction (and nearly all of its Exhibits) consists of *ad hominem* attacks on the failings of VGo's Counsel to comply with the demands of InTouch's Counsel (actually, in complete contravention of the strict procedures of Local Rule 37, InTouch has modified its half of the Joint Stipulation, in response to the half provided by VGo; accordingly, InTouch has wisely removed some of the more offensive and unnecessary attacks, and has softened some of its rhetoric in other places, as well; leading to this parenthetical being added before filing).  If the Court is interested in a point-by-point rebuttal and/or explanation, Counsel for VGo is willing to provide it, but in the interest of saving the Court time and the Parties Attorneys Fees, VGo will, instead, focus only on the two issues as identified in the final two paragraphs of InTouch's lengthy Introduction Section.

First, InTouch argues that "VGo can offer no justification for withholding the remaining software code, which ["only" – removed by InTouch between the two versions] heightens suspicions that key portions will be omitted."  That statement belies the extensive justification provided by the Undersigned

/ / /

Counsel for VGo about why the entire Source Code will not just be turned over to Counsel for InTouch – one of VGo's most aggressive competitors.

A perusal of the email correspondence submitted by InTouch will show that VGo is concerned about turning over non-relevant portions of the Source Code to its competitor, but that VGo already has turned over – for InTouch's Counsel and Expert (not yet hired or disclosed, by the way) to pore over in whatever detail they determine is necessary – 59,496 lines of Source Code contained in 501 files, hand-delivered by VGo's Counsel on a thumb drive to InTouch's Counsel on Friday, March 30, 2012.   That Source Code was substantially all C++ code and is all of VGo's Source Code in the accused product that is related to the contested issues in the Patents-in-Suit.  As to any possible "suspicions that key portions will be omitted," the Undersigned Counsel for VGo fails to understand why production of the relevant and responsive portions of the Source Code that have been accused of infringement of the Patents-in-Suit is different in any material way than the centuries old practice of the lawyer for the responding party selecting which documents to be produced from within the warehouses full of documents that the responding party might have retained over the past few years or decades.  To the contrary, dumping all of those documents, as in the movie Class Action, would likely be considered to be litigation abuse of the worst kind.  How can it also be true that producing only those documents (or in this case, portions of the Source Code) that relate to the claims of the two Patents-in-Suit is deficient and worthy of monetary sanctions?  As an officer of this Court for the past 18 years (and an IP practitioner for 24), I am offended by the implication.

As to the second issue, that of producing additional technical documents, as the email Exhibits will demonstrate, the Undersigned Counsel for VGo has tried to elicit from the Undersigned Counsel for InTouch specifically what they are seeking, so that those most important documents may be produced first.

Notably, InTouch is not moving to compel – at least not as its motivating requests – copies of all of the sales receipts or manufacturing costs or other mundane and run-of-the-mill G&A documents. Instead, InTouch has focused on the engineering documents related to U.S. Patent No. 6,925,357 (all such documents already have been produced regarding U.S. Patent 6,346,962). Unfortunately, however, VGo does NOT have ANY engineering documents related to U.S. Patent No. 6,925,357, because the only documents that are relevant and responsive to those Requests are the software itself, which already has been produced. VGo simply does NOT have a wonderful flowchart that explains all of the ins and outs of VGo's software system, and Rule 34 does not require VGo to create such a document. All of this would have been learned by InTouch, had they taken VGo's suggestion and taken the the Deposition of Thomas Ryden, the CoFounder and Chief Operating Officer of VGo, who could have explained to InTouch's Counsel what documents existed and what did not. Instead, InTouch set up this Motion to Compel, generating a lot of legal fees, but no more documents than it already has received, because those are all that exist, and there is nothing left to be compelled.

## II.   THE MANNER AND TIMING OF SOURCE CODE PRODUCTION

### A.   InTouch's Position

InTouch's Requests for Production Nos. 8 and 9 (below) seek production of the source code for the software used to operate the accused VGo robots.

**REQUEST FOR PRODUCTION NO. 8:**
The computer source code associated with the design, manufacture and/or operation of the VGo Robot System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection – but not copying – Defendant's relevant, responsive, non-immune, and non-privileged source code upon request at VGo's headquarters, on a mutually agreeable date and time.

**REQUEST FOR PRODUCTION NO. 9:**
    Any directory structures associated with the source code of the VGo Robot System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**
    Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information.
    Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged source code directory structures upon request at VGo's headquarters, on a mutually agreeable date and time.

VGo's responses above are clear that it agreed to produce the source code. VGo did not object, or otherwise suggest than anything less than a full version of the software would be provided. However, VGo has used its response that it will provide the code "on a mutually agreeable date and time" as a delay mechanism to thwart timely production and now seeks to limit its production to only a few files that it has selected. Allowing VGo to select what source code files to produce is unworkable and obstructs InTouch's legitimate discovery requests in this case to which VGo did not object in terms of scope.

InTouch has repeatedly requested that VGo produce its source code so that such documents could be analyzed and appropriate citations included in InTouch's April 2, 2012 infringement contentions. To date, VGo has produced only a small portion of its source code and unreasonably insists that if InTouch's attorneys and experts want to study a full version of the software, they must travel to New Hampshire to merely inspect the source code without making any copies.

InTouch has offered numerous alternatives, and repeatedly asked VGo's counsel to confer on this issue. Specifically, InTouch offered to review the source code at an escrow facility in Irvine, California, accessible only to InTouch's attorneys and experts engaged in this case. VGo refused.

/ / /

1    VGo offers no basis for requiring InTouch's attorneys and experts to
2    travel to New Hampshire to inspect a full and complete version of VGo's
3    software.  Judge Anderson entered a standard protective order on February 27,
4    2012.  VGo bears the burden to show that there is good cause to require
5    additional protections for its source code.  Fed. R. Civ. P. 26(c).  VGo must
6    show that specific prejudice or harm will result if the additional security
7    measures it seeks are not put in place.  *Phillips v. General Motors Corp.*, 307
8    F.3d 1206, 1210–11 (9th Cir. 2002); *Verizon Cal. Inc. v. Ronald A. Katz Tech.*
9    *Licensing, L.P.*, 214 F.R.D. 583, 585 n.9 (C.D. Cal. 2003).  VGo cannot meet
10   this burden and cannot justify its proposal requiring InTouch's attorneys and
11   experts to travel to New Hampshire every time they need to review the source
12   code.  InTouch made repeated efforts to meet with VGo's attorneys and resolve
13   this dispute without the Court's assistance.  VGo has rejected InTouch's requests
14   and good faith attempts to compromise, insisting that InTouch's attorneys and
15   expert must travel to VGo's New Hampshire headquarters where they can "take
16   notes" while inspecting the code.   This highly burdensome approach is
17   unnecessary in light of the protective order already entered by the Court, which
18   prohibits disclosure of any confidential documents to unauthorized personnel.
19   The additional burdens that VGo's proposal imposes will only increase litigation
20   costs and obstruct InTouch's access to key evidence.
21        Further, VGo's proposal to allow an inspection of the source code only in
22   New Hampshire would prevent InTouch from litigating this case effectively.
23   InTouch's attorneys and experts need to have meaningful and uninterrupted
24   access to the defendants' source code.  VGo's source code is several hundred
25   thousand lines long, and includes over two thousand files.  InTouch could not
26   even scratch the surface of the code in only a few days of inspection.  Moreover,
27   InTouch's infringement evidence will develop over time as additional
28   documents are reviewed and depositions taken.  Accordingly, InTouch will need

to continually review VGo's source code throughout the case, resulting in innumerable hours of source code review.

VGo is not entitled to the burdensome restrictions it seeks simply because it is fears that InTouch's counsel will not adhere to the terms of a protective order. *Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987) ("We will not assume that counsel would breach the duty of an officer of the court by disclosing the sales information to [their client] or to any Hydro-Air competitor in violation of a protective order."); *Jab Distribs., LLC v. London Luxury, LLC*, No. 09-CV-5831, 2010 U.S. Dist. LEXIS 109178, at *11 (N.D. Ill. Oct. 13, 2010) (similar); *Sprint Commc'ns Co. v. Big River Tel. Co.*, No. 08-2046, 2008 U.S. Dist. LEXIS 70669, at *13–14 (D. Kan. Sept. 16, 2008) (similar).

The Court should therefore order VGo to produce to InTouch's counsel a soft copy of VGo's source code to keep at their offices. Only InTouch's attorneys and expert witnesses working on this litigation will have access to the source code. InTouch's proposal is both secure and flexible, and will allow InTouch's attorneys to review the code as needed throughout the case, on their own schedule and in their own office building.

Many courts have ordered defendants to produce electronic copies of their confidential source code to plaintiffs' attorneys or experts, over the defendants' objections. For example, in *Collaboration Properties v. Tandberg ASA*, No. C 05-01940, 2006 U.S. Dist. LEXIS 13966 (N.D. Cal. Mar. 28, 2006), the court refused to allow the defendants to restrict production of their source code to their chosen location and instead ordered the defendants "to produce a single electronic copy [of their source code], which will be kept either by plaintiff's attorneys or by [ ] plaintiff's expert." *Id.* at *2–3. Just as InTouch proposes here, "an electronic copy of the source code [was allowed to be placed] on the hard

/ / /

drive" of the other party. *Collaboration Props.*, 2006 U.S. Dist. LEXIS 13966 at *3.

Moreover, it is common for parties in patent disputes to exchange copies of source code to opposing counsel. InTouch's proposal has been adopted in several cases. For example, a very similar procedure for producing source code was used in *Masimo Corporation v. Philips Electronics North America Corporation*, Case No. 09-80 (JJF/MPT) (D. Del.). Claassen Decl.¶ 21. A similar procedure was also adopted in *Nomadix, Inc. v. Second Rule LLC*, No. CV07-1946 DDP (VBKx) (C.D. Cal.), and *IP3 Networks, Inc. v. Nomadix, Inc.*, No. 04 CV 1485 BTM (POR) (S.D. Cal.). Claassen Decl. ¶¶ 22-23. In each case, the parties produced copies of their proprietary source code to the opposing attorneys' offices. *Id.*

Complete responses to the requests for production were due on March 9, 2012. VGo has not produced its entire source code, which is critically necessary for InTouch to prepare its case. Accordingly, InTouch respectfully requests that the Court order VGo to produce a full version of its source code without further delay.

**B.    VGo's Position**

InTouch's 3 + 1/3 page argument raises lots of points, and cites a number of cases (most of which are unpublished, non-binding opinions from other district courts outside the Central District), but misses the critical fact: VGo already did produce a thumb drive with all of VGo's relevant and responsive Source Code for InTouch's Attorneys to review – subject to the Protective Order Entered by Judge Anderson – and there is nothing left to compel to be produced. The remaining "several hundred thousand lines" of code "includ[ing] over two thousand files" are so lengthy and detailed that "InTouch could not even scratch the surface of the code in only a few days of inspection." Thankfully for InTouch, VGo has already done that work for them, and has

- 10 -

already produced ALL of the responsive and relevant Source Code, omitting only those "several hundred thousand lines" of Source Code that have nothing whatsoever to do with this litigation. Again, imagine if VGo had produced all "several hundred thousand lines" of Source Code – InTouch would be screaming about VGo's inconsiderate dumping of irrelevant and non-responsive "documents" (in this case "several hundred thousand lines" of code) that were produced merely to "bury" those significantly fewer lines of responsive and relevant Source Code that are all InTouch really needs to determine whether VGo's robot system infringes the claims of the two Patents-in-Suit, or not.

One other point glibly glossed over by InTouch's Counsel is that VGo has offered several times on several dates, all now in the past, the Deposition of Thomas Ryden, the CoFounder and Chief Operating Officer of VGo, either at VGo in Nashua, NH or at Knobbe Martens' Office in Irvine, CA, without prejudice to a further Deposition of Mr. Ryden, to ask Mr. Ryden all about the Source Code (and the other technical documents as well). InTouch declined each of the offers of Deposition, claiming that it could not take a meaningful Deposition unless and until it had received ALL of VGo's Source Code and reviewed it all in detail. This objection was made despite the fact that Mr. Ryden offered to show the entire Source Code to InTouch's Counsel, permitting them to see for themselves that there was no relevant and responsive Source Code sections other than those that have already been produced by thumb drive.

### III.  DISPUTES REGARDING OTHER DOCUMENTS

InTouch has also repeatedly asked VGo to produce other technical documents in addition to its source code. Over two months have passed and VGo has only produced fifty five pages of responsive documents. Because VGo has not produced any documents pursuant to many of InTouch's requests, the following requests are included as illustrative.

/ / /

**A.** **Request for Production Nos. 2-4**

**REQUEST FOR PRODUCTION NO. 2:**
Documents and things relating to the design and/or manufacture of the VGo Robot System, including but not limited to, schematics, software, source code firmware, specifications, application notes, presentation materials, and emails.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation, the self-critical analysis privilege, attorney-client privilege and/or the work product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.
Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged schematics, CAD drawings, design drawings and manufacturing drawings for the parts, and source code upon request at VGo's headquarters, on a mutually agreeable date and time.

**REQUEST FOR PRODUCTION NO. 3:**
Documents and things relating to the programming, or operation of the VGo Robot System, including but not limited to, schematics software, source code, firmware, specifications, application notes, presentation materials, and emails.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation, the self-critical analysis privilege, attorney-client privilege and/or the work product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.
Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged schematics, CAD drawings, design drawings, manufacturing drawings for the parts, user manuals, and source code upon request at VGo's headquarters, on a mutually agreeable date and time.

**REQUEST FOR PRODUCTION NO. 4:**

Engineering drawings, specifications, and schematics related to the design and functionality of the VGo Robot System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation, the self-critical analysis privilege, attorney-client privilege and/or the word product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.

Subject to the foregoing and without waving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged engineering drawings, specifications, and schematics upon request at VGo's headquarters, on a mutually agreeable date and time.

### 1.   InTouch's Position

The foregoing requests seek engineering drawings, specifications, schematics, application notes, and presentation materials related to the design and functionality of the accused VGo Robot System.  In response to each request, VGo said it would produce responsive documents and things.

Despite agreeing to do so, VGo has failed to produce *any* documents related to U.S. Patent No. 6,925,357 and only fifty-five pages related to U.S. Patent 6,346,962.  Nor has VGo agreed to a date for InTouch's attorneys to inspect and copy the documents.  It is imperative that VGo promptly provide these documents so that InTouch can develop its infringement analysis and prepare its case.  InTouch also needs these technical documents and information in order to prepare for, and take, depositions relating to the design of the accused robot systems.

When asked to produce all of the requested technical documents, VGo's attorney responded that VGo did not understand what documents and things

InTouch is requesting. *See* Exs. F and L. However, VGo never objected to the foregoing requests as vague or ambiguous, but rather agreed to produce the requested documents. VGo cannot now claim that it does not understand the scope of the requests or know which documents it should produce. Because VGo is withholding documents clearly relevant to the issues in this case, InTouch requests that the Court order a full production of all responsive documents and things.

### 2. **VGo's Position**

Once again, InTouch seems to want to have it both ways. Rather than accept the small – but extremely relevant and responsive – production of technical documents that are directly related to the claims of the Patents-in-Suit, InTouch would rather argue about the huge number of unproduced documents, despite the fact that those unproduced documents are significantly less relevant and responsive! And, again, a careful reading of the email correspondence attached by InTouch will demonstrate that VGo offered InTouch two alternatives: to come to Nashua, NH to inspect ALL of the documents, and select for copying those that it would want to copy, or to agree to pay for VGo to send out ALL of the documents to be copied, numbered, and shipped to California, without regard to whether they are particularly helpful or not. Oddly, InTouch refused both of those alternatives, perhaps due to a misreading of VGo's obligations pursuant to Fed. R. Civ. P. Rule 34 which clearly permits VGo to make available the documents in Nashua for inspection and copying.

In any event, as explained above, there are no documents (other than Source Code, which already has been produced) related to U.S. Patent No. 6,925,357 and the fifty-five pages that were produced related to U.S. Patent 6,346,962 are the most highly relevant and responsive documents that show exactly what VGo has done – or not done – regarding that Patent-in-Suit.

/ / /

## B.    Request for Production Nos. 6, 7, 10, 11, 13, 34, 35, 54, 55, 57, and 58

### REQUEST FOR PRODUCTION NO. 6:

Communication between You and any third party relating to the VGo Robot System, including but not limited to its design, development, function, operation, manufacture, marketing, and sale in the United States.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation, the self-critical analysis privilege, attorney-client privilege and/or the work product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant, nor is calculated to lead to the discovery of admissible evidence.

Defendant objects to this Request in that it is mercilessly overbroad and unduly burdensome and intended solely for purposes of harassing Defendant. Defendant also objects to this Request to the extent that it purports to command Defendant to speak for, answer for, or be responsible for anyone other than the specific named Answering Defendant in this Action. Defendant declines to do so.

Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged communications upon request at VGo's headquarters, on a mutually agreeable date and time.

### REQUEST FOR PRODUCTION NO. 7:

Document and things relating to any and all changes, modifications, or enhancements made to the design of the VGo Robot System.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation, the self-critical analysis privilege, attorney-client privilege and/or the work product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in this action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.

Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-

immune, and non-privileged documents upon request at VGo's headquarters, on a mutually agreeable date and time.

**REQUEST FOR PRODUCTION NO. 10:**
Flowcharts and any other design documents for the computer source code associated with the design, manufacture, and/or operation of the VGo Robot System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information.

Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged source code directory structures upon request at VGo's headquarters, on a mutually agreeable date and time.

**REQUEST FOR PRODUCTION NO. 11:**
Any software used to operate the VGo Robot System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information.

Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection instructions on how to download Defendant's relevant, responsive, non-immune, and non-privileged desktop application software upon request at VGo's headquarters, on a mutually agreeable date and time.

**REQUEST FOR PRODUCTION NO. 13:**
Specifications, including software requirements specifications and hardware specifications, related to the VGo Robot System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.

Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection Defendant's relevant, responsive, non-immune, and non-privileged specification sheets upon request at VGo's headquarters, on a mutually agreeable date and time.

/ / /

- 16 -

**REQUEST FOR PRODUCTION NO. 34:**
Documents and things relating to comparison between the VGo Robot System and other companies' products, including but not limited to, comparisons with InTouch's products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation, the self-critical analysis privilege, attorney-client privilege and/or the work product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.
Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection relevant, responsive, non-immune, and non-privileged documents upon request at VGo's headquarters, on a mutually agreeable date and time.

**REQUEST FOR PRODUCTION NO. 35:**
Documents and things relating to patents, patent application, research, or disclosures relating to the VGo Robot System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation, the self-critical analysis privilege, attorney-client privilege and/or the work product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant.
Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant' relevant, responsive, non-immune, and non-privileged Issued Patents and Published Patent Applications upon request to VGo's headquarters, on a mutually agreeable date and time.

**REQUEST FOR PRODUCTION NO. 54:**
Any software used to test the VGo Robot System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**
Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation,

the self-critical analysis privilege, attorney-client privilege and/or the work product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.

Subject to the foregoing and without waiving any Specific or General Objection, Defendant will produce or make available for inspection and copying Defendant's relevant, response, non-immune, and non-privileged documents upon request to VGo's headquarters, on a mutually agreeable date and time.

## REQUEST FOR PRODUCTION NO. 55:

Documents associated with testing of the VGo Robot System.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 55:

Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information protected from disclosure by privilege or immunity including, without limitation, the self-critical analysis privilege, attorney-client privilege and/or the work product immunity doctrine. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.

Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged documents upon request at VGo's headquarters, on a mutually agreeable date and time.

## REQUEST FOR PRODUCTION NO. 57:

Documents and things related to methods and instructions relating to the VGo Robot System that YOU provide to Your customers or end users.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 57:

Defendant objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.

Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged manuals and installation guides upon request at VGo's headquarters, on a mutually agreeable date and time.

/ / /

**REQUEST FOR PRODUCTION NO. 58:**

Documents and things relating to after-sales service and support of the VGo Robot system, including, but not limited to, schematics, software, source code, call logs, firmware, specifications, applications notes, presentation materials, and emails.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Defendant objects to this Request on the grounds that it seeks confidential, non-public, proprietary, trade secret, and/or commercially sensitive information. Defendant further objects to this Request to the extent that it seeks information beyond the scope of the claims and defenses on file in the action, and therefore, is not relevant. Defendant further objects to this Request on the grounds that it is overbroad as to scope and time, and on that basis, is unduly burdensome.

Subject to the foregoing and without waiving any Specific or General Objections, Defendant will produce or make available for inspection and copying Defendant's relevant, responsive, non-immune, and non-privileged manuals and installation guides upon request at VGo's headquarters, on a mutually agreeable date and time.

1.    **InTouch's Position**

The foregoing requests seek additional technical documents that InTouch needs to analyze for its infringement contentions and prepare for upcoming depositions. Such documents include communications (email), technical documents, software, and documents provided to VGo's customers. Specifically, the requests seek:

(No. 6) communications relating to the VGo Robot System, including, but not limited to, its design, development, function, operation, manufacture;

(No. 7) document and things relating to any and all changes, modifications, or enhancements made to the design of the VGo Robot System;

(No. 10) flowcharts and any other design documents for the computer source code associated with the design, manufacture, and/or operation of the VGo Robot System;

(No. 11) any software used to operate the VGo Robot System;

(No. 13) specifications, including software requirements specifications and hardware specifications, related to the VGo Robot System;

- 19 -

(No. 34) documents and things relating to comparison between the VGo Robot System and other companies' products, including but not limited to, comparisons with InTouch's products;

(No. 35) documents and things relating to patents, patent applications, research, or disclosures relating to the VGo Robot System;

(No. 54) any software used to test the VGo Robot System. In response, VGo said it would produce such documents of software;

(No. 55) documents associated with testing of the VGo Robot System, including but not limited to its design, development, function, operation, manufacture;

(No. 57) documents and things related to methods and instructions relating to the VGo Robot System that VGo provides to its customers or end users; and

(No. 58) documents and things relating to after-sales service and support of the VGo Robot system, including, but not limited to, schematics, software, source code, call logs, firmware, specifications, applications notes, presentation materials, and emails.

In response to each of these requests, VGo said it would produce such documents and communications. Despite agreeing to do so, VGo has not produced any documents or things relating to the foregoing topics for U.S. Patent No. 6,925,357 and only fifty-five pages related to U.S. Patent 6,346,962 (and those fifty-five pages are of limited relevance to the disputes in this case). VGo also has been unwilling to agree to a date for inspection and copying. As discussed above, documents relating to the design, development, function, operation or manufacture of the VGo Robot System are necessary for InTouch to prepare its case, and conduct depositions on these topics. It is imperative that VGo promptly provide this discovery so that InTouch can develop its infringement analysis and prepare its case.

- 20 -

### 2. __VGo's Position__

In accordance with Fed. R. Civ. P. Rule 34, VGo has agreed to make available for inspection and copying many of the documents contained in the foregoing half a dozen or so pages. It is merely a matter of getting Counsel for the Parties to go together to Nashua, NH on a day when Counsel for VGo is not in London for one case (March 18 – 23, 2012) or in Trial in another case (was supposed to start April 9, and now has been pushed back to start on April 30, 2012). There is no real issue of disagreement here, except, perhaps other than VGo's question about the formatting of InTouch's Joint Stipulation, which does not seem to comply with L.R. 37-2.1, which seems to require: "The stipulation shall contain all issues in dispute and, with respect to each such issue, the contentions and points and authorities of each party." The Undersigned Counsel for VGo has always understood that Local Rule to require the Moving Party to set forth, for each Request in dispute, the reasons why the Objections are not well-taken, and to provide, for the Party that the Moving Party seeks to compel, a place for the Non-Moving Party to put its further support for the Objections.

Here, because it seems that the Parties actually agree, it is only a matter for InTouch to decide whether it will (a) travel to Nashua, NH on a mutually agreeable date and time to inspect and designate for copying, in accordance with Fed. R. Civ. P. Rule 34, or (b) to agree to pay the reasonable costs of copying, numbering, and shipping the documents to California from New Hampshire.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

There really is no need for the Court to get into the specifics of each of the dozen or so requests set forth collectively hereinabove. The bottom line is that VGo already had agreed to one of two methods of "production" and InTouch simply needs to decide which one it prefers to undertake.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:    April 9, 2012       By:   /s/Brian C. Claassen

Joseph S. Cianfrani
Brian C. Claassen

Attorneys for Plaintiff
INTOUCH TECHNOLOGIES, INC. D/B/A
INTOUCH HEALTH

HANKIN PATENT LAW, APC

Dated:    April 9, 2012       By:   /Marc E. Hankin/  (with permission)

Marc E. Hankin
Kevin Schraven

Attorneys for Defendant,
VGo COMMUNICATIONS, INC.

12979475

- 22 -