QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S REPLY IN SUPPORT OF MOTION TO COMPEL COMPLETE PRODUCTION OF SOURCE CODE FOR ALL ACCUSED PRODUCTS**<br><br>Date: June 11, 2013<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Honorable Paul S. Grewal<br><br>**PUBLIC REDACTED VERSION** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ...................................................................................................................................... 2

I. THE SOURCE CODE SOUGHT BY SAMSUNG IS RELEVANT AND
   DISCOVERABLE ................................................................................................................. 2

II. APPLE'S PRODUCTION OF SOURCE CODE REMAINS INCOMPLETE ..................... 4

   A. Apple Has Not Produced All Source Code For Functionalities That Are
      Expressly Identified in Samsung's Infringement Contentions ................................ 5

   B. Apple Has Withheld Relevant Source Code Based On An Improper
      Reading of Samsung's Infringement Contentions .................................................... 7

   C. Apple's Agreement to Produce Self Selected Source Code Is No Basis to
      Deny Samsung's Motion ......................................................................................... 10

III. ANY RISK OF INADVERTENT DISCLOSURE DOES NOT JUSTIFY
     DENYING SAMSUNG ACCESS TO APPLE'S SOURCE CODE .................................. 11

CONCLUSION ................................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*,
  359 F. Supp. 2d 558 (E.D. Tex. 2005) ...................................................................................7

*DCG Sys. v. Checkpoint Tech., LLC*,
  No. C11-03792, 2012 WL 1309161 (N.D. Cal. April 6, 2012) ...............................................7

*Edward D. Ioli Trust v. Avigilon Corp.*,
  No. 10-605, 2012 WL 5830711 (E.D. Tex. Nov. 16, 2012) ....................................................3

*Kelora Sys., LLC v. Target Corp.*,
  No. 11-01548, 2011 U.S. Dist. LEXIS 96724 (N.D. Cal. Aug. 29, 2011) ...............................3

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
  No. 00-1412, 2001 U.S. Dist. LEXIS 23155 (D. Minn. Dec. 14, 2001) ..................................3

*Network Caching Tech. LLC v. Novell Inc.*,
  No. 01-2079, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002) .................................................7

*New York Univ. v. E.Piphany, Inc.*,
  No. 05-1929, 2006 WL 559573 (S.D.N.Y March 6, 2006) .....................................................7

*Orion IP, LLC, v. Staples, Inc.*,
  407 F. Supp. 2d 815 (E.D. Tex. 2006) .....................................................................................7

*STMicroelecs., Inc. v. Motorola, Inc.*,
  308 F. Supp. 2d 754 (E.D. Tex. 2004) .....................................................................................7

*Samsung SDI Co. v. Matsushida Elec. Indus., Co.*,
  2007 WL 4302701 (C.D. Cal. June 27, 2007) .........................................................................3

## INTRODUCTION

Apple's Opposition is premised on a grossly misleading account of Apple's source code production in this case. While Apple claims it has now produced "over one million source code files" (Opp. at 11), Apple conveniently omits the fact that only *66,000* of those files were produced before Samsung filed its Motion. Apple does not dispute that it produced only *3 gigabytes* of source code throughout the first nine months of discovery. Since Samsung filed its Motion, Apple has dumped more than *94 gigabytes* of source code in a matter of weeks—on the eve of the depositions of Apple's technical witnesses. While Apple boasts of the "enormous time and resources" dedicated to identifying and collecting "relevant" source code (Opp. at 5), the timing of Apple's production makes clear that these resources were not part of any good faith effort to comply with Apple's discovery obligations. Rather, Apple enlisted its engineers in an eleventh-hour attempt to frustrate Samsung's ability to meaningfully present the issues before the Court.[1]

Apple's Opposition not only misrepresents the reality of Apple's source code productions, it mischaracterizes the relief sought by Samsung's Motion. Apple dedicates the bulk of its Opposition to knocking down a straw man—Apple's claim that Samsung seeks "every line of source code" for the accused products. Contrary to Apple's contention, however, Samsung only seeks source code "used to operate or enable" the accused software and hardware. Apple makes no serious attempt to explain why the production that Samsung *actually requested* is beyond the scope of Rule 26 or Samsung's document requests.

Even as Apple has gone from withholding source code to dumping massive amounts of source code on Samsung, Apple has yet to produce all source code that is directly relevant to Samsung's infringement claims. Apple has withheld source code for functionalities that are explicitly disclosed on the face of Samsung's infringement contentions. Moreover, Apple continues to limit its production according to its own strict interpretation of Samsung's

---

[1] Tellingly, none of the 35 engineers that purportedly assisted in Apple's source code collection mentions *when* they were consulted.

infringement contentions, depriving Samsung of source code necessary to fully understand the operation of features Samsung expressly accuses of infringing. Neither Apple's vague agreement to produce all "accused" source code nor Apple's generalized and unsupported fears of inadvertent disclosure justify denying Samsung's Motion. The Court should grant Samsung's Motion.

## ARGUMENT

I.   THE SOURCE CODE SOUGHT BY SAMSUNG IS RELEVANT AND DISCOVERABLE

In an attempt to portray Samsung as overreaching, Apple's Opposition mischaracterizes the relief sought by Samsung's Motion. Apple contends that Samsung seeks "every line of source code" for the accused products (Opp. at 1), and then spends pages explaining why a request for Apple's "entire source code base" is beyond the scope of Rule 26, the Patent Local Rules, and Samsung's document requests (*see id.* at 11-14). Apple need not have gone to all that trouble. As is clear from the moving papers, Samsung only asks the Court to compel source code "*used to operate or enable*" the software and hardware accused of infringing the Samsung patents-in-suit (*see* Motion at ii),[2] including the entire source code for the software applications and hardware components identified in Samsung's infringement contentions, source code for the iOS and Mac OS X operating systems,[3] and any server-based source code that supports or interacts with those

---

[2] Samsung's requested relief directly tracks the language of Samsung's document requests: "All versions of the source code used to operate or enable any accused functionality." *See, e.g.*, Motion at iii. Thus, Apple's argument that Samsung seeks production of materials not covered by Samsung's document requests (Opp. at 14-15) is another red herring.

[3] iOS and Mac OS X source code is necessitated by the structure and role of those operating systems, which "manage[] the device hardware and provide[] the technologies required to implement native apps." *See* Reply Declaration of Amar Thakur in Support of Samsung's Motion To Compel Complete Production of Source Code ("Thakur Reply Decl.") Ex. 1 at 7; *see also id.* at 8 ("iOS acts as an intermediary between the underlying hardware and the apps that appear on the screen. The apps you create rarely talk to the underlying hardware directly.") Without iOS and Mac OS X source code, it will be difficult, if not impossible, for Samsung to trace the operation of the accused functionalities from start to finish. *See* Thakur Reply Decl.¶ 4. While iOS and Mac OS X support numerous applications and hardware components that are unrelated to the accused functionality, Samsung has not requested source code for those applications and components.

1  software applications and hardware components.   The source code sought by Samsung represents
2  the bare minimum required by Rule 26 and Patent L.R. 3-4(a).
3        Apple's obfuscation glosses over the central point of Samsung's Motion, which is that
4  Rule 26 obligates Apple to produce more than just the "specific source code files" that *Apple*
5  *believes* are "necessary for the Court to assess Samsung's infringement contentions."   Opp. at 16.
6  None of the cases cited by Apple supports such a narrow approach to discovery.   Unlike the
7  situation in *Kelora Sys., LLC v. Target Corp.*, No. 11-01548, 2011 U.S. Dist. LEXIS 96724, at *9
8  (N.D. Cal. Aug. 29, 2011), Apple has not merely withheld source code that is "completely
9  unrelated to Samsung's infringement claims."   *See* Opp. at 11-12.   Similarly, Apple has not
10 simply withheld source code that "[has] no bearing on this case," as in *Microsoft Corp. v. Multi-*
11 *Tech Sys., Inc.*, No. 00-1412, 2001 U.S. Dist. LEXIS 23155, at *25-26 (D. Minn. Dec. 14, 2001).
12 *See* Opp. at 12.   Instead, Apple has refused to produced the entire source code for software
13 applications and hardware components explicitly accused of infringing, and has refused to produce
14 all operating system or server-side source code that supports or enables that software and
15 hardware.   Opp. at 16.   Apple cites to no authority holding that Rule 26 is limited to specific
16 source code files that the accused infringer decides are necessary.[4]
17        Apple's limited source code production also fails to comply with Patent L.R. 3-4(a) and
18 cases construing it.   Under the plain language of the Rule, patentees are entitled to source code
19 "sufficient to show the operation of *any aspects or elements* of an Accused Instrumentality," *see*
20 Patent L. R. 3-4(a) (emphasis added), not just the aspects or elements that the accused infringer
21 believes are relevant to the patentee's infringement theories.   The purpose of Patent L.R. 3-4(a) is
22 to allow the patentee "make **its own** determinations as to infringement," and to prevent the
23 accused infringer from limiting its production to "the bare minimum of what *it* believes is
24 sufficient."   *Edward D. Ioli Trust v. Avigilon Corp.*, No. 10-605, 2012 WL 5830711, at *2-3

---

[4] While Apple cites the *Matsushida* case as holding that the Patent Local Rules may limit discovery to *products* that are identified in the patentee's infringement contentions, nothing in that case suggests that the Patent Local Rules limit discovery to specific *functions* of products that are accused.   *See Samsung SDI Co. v. Matsushida Elec. Indus., Co.*, 2007 WL 4302701 (C.D. Cal. June 27, 2007).

1  (E.D. Tex. Nov. 16, 2012) (emphasis in original) (citation omitted).    Yet that is precisely what

2  Apple has done here, producing only the specific source code files that *Apple's engineers* identify

3  as "responsible" for "perform[ing]" the specific functions that are expressly identified in

4  Samsung's infringement contentions.[5]

5  II.    APPLE'S PRODUCTION OF SOURCE CODE REMAINS INCOMPLETE

6  After withholding all but *3 gigabytes* of source code throughout the first nine months of

7  discovery, Apple produced more than *94 gigabytes* of source code in the weeks since Samsung

8  filed its Motion (Thakur Reply Decl. ¶ 2)—or, as characterized by Apple, enough code to "fill

9  more than four thousand boxes in printed form."    Opp. at 1.    Despite sandbagging Samsung

10  with a massive amount of source code—including at least tens of thousands of source code files

11  produced in duplicate[6]—Apple has yet to produce all source code that is relevant to Samsung's

12  infringement claims.    First, even a cursory review of Apple's belated production reveals that

13  Apple excluded source code that is directly involved in functions identified in Samsung's

14  infringement contentions—and thus should have been produced months ago, even under Apple's

15  cramped view of its discovery obligations.    Second, Apple itself admits that it withheld source

16  code for several features based on an overly restrictive interpretation of Samsung's infringement

17  contentions.    Given Apple's apparent intention to continue withholding this source code, Apple's

18  claim that it has agreed to produce all "relevant" source code is no basis for denying Samsung's

19  Motion.

---

[5]   *See, e.g.,* Declaration of Joe Abuan (Dkt. 533-10) at ¶¶ 4-5; Declaration of Andre Boule (Dkt. 533-13) at ¶¶ 4-5, Declaration of Dallas De Atley (Dkt. 533-15) at ¶¶ 4-5; Declaration of Brittany Hughes (Dkt. 533-22) at ¶¶ 4-5, Declaration of Alexei Kosut (Dkt. 533-23) at ¶¶ 4-5; Declaration of Dave Rahardja (Dkt. 533-29) at ¶¶ 4-5; Declaration of Meera Shah (Dkt. 533-31) at ¶¶ 4-5, Declaration of Justin Wood (Dkt. 533-36) at ¶¶ 4-5.

[6]   For example, Apple's productions for just two versions of the UIKit framework include at least 9,500 duplicate source code files, while Apple's production of multitouch firmware source code includes at least 14,000 duplicate files.    Thakur Reply Decl. ¶ 5.

A. **Apple Has Not Produced All Source Code For Functionalities That Are Expressly Identified in Samsung's Infringement Contentions**

While Samsung's review of Apple's last-minute source code productions is ongoing, Samsung has had little difficulty identifying several examples where Apple has failed to produce source code related to functions identified in Samsung's infringement contentions. These examples are purely illustrative; Samsung reserves the right to identify additional examples of missing source code in supplemental briefing or at the hearing on Samsung's Motion.

First, Apple has withheld source code involved in the synchronization functions that are the central feature of Samsung's '757 patent. For example, Apple has not produced source code for the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Thakur Reply Decl. ¶ 7), a product feature that has been accused since the very beginning of this case. Ex. 2 at 2;[7] Dkt. 107 at ¶ 78. Apple also has withheld source code corresponding to screenshots of the iCloud settings screen that have appeared in Samsung's infringement contentions for nearly a year. Thakur Reply Decl. ¶ 8; Ex. 2 at 7.

Second, despite Apple's carefully worded claim that it has "already produced . . . server side source code related to accused iCloud services," Apple clearly has not produced all server code related to the '757 patent. For example, Apple's production excludes over 2,000 source code files that operate or enable the server functionality of iTunes in the Cloud, iTunes Match, and Photo Stream, all of which Apple itself has identified as central to Samsung's infringement theories. Thakur Reply Decl. ¶ 10; Ex. 3. For example, Apple continues to withhold source code related to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Thakur Reply Decl. ¶ 11; Ex. 3 at 10-11. Apple also has not produced source code for the ▓▓▓▓▓▓▓▓▓▓ that Apple documents indicate is relevant to the '757 patent. Thakur Reply Decl. ¶ 12; Ex. 4 at 2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[7] Citations to "Ex. __" are citations to exhibits to the Reply Declaration of Amar L. Thakur in Support of Samsung's Motion to Compel Complete Production of Source Code, submitted herewith.

1   ▮▮▮▮   Apple apparently has purposefully removed these files and others from its
2   production, despite the fact that these files are referenced in the source code Apple actually *has*
3   produced.   Thakur Reply Decl. ¶¶ 11-12.

4   Third, Apple has not produced all source code relevant to the '058 patent, which generally
5   pertains to displaying data in a first layer and enlarging and displaying part of that data in a second
6   layer.   Ex. 5 at 7-10.   Samsung alleges that the accused products infringe the '058 patent
7   through the use of the magnifying glass feature of applications such as Safari, Mail, Notes,
8   Contacts and Calendar.   *Id.* at 3-10, 17-18.   Although Apple's engineers state that they provided
9   "the source code for [these] apps,"[8] Apple has not produced source code for the ▮▮▮▮
10   ▮▮▮▮
11   ▮▮▮▮
12   ▮▮▮▮   Thakur Reply Decl. ¶ 15.   Apple also has not produced source code
13   for a number of key methods, such as ▮▮▮▮
14   ▮▮▮▮
15   ▮▮▮▮   *Id.* at ¶ 16.

16   Lastly, Apple apparently has withheld source code files that *even its own engineers* have
17   identified as responsible for the accused functionalities.   Thus, while Apple claims that Yan
18   Arrouye identified 39,800 source code files as relevant to the ▮▮▮▮ for Photo
19   Stream (Opp. at 8; Arrouye Decl. ¶¶ 4-5), Apple has only produced 1,738 files directly related to ▮
20   ▮▮▮▮.[9]   Thakur Reply Decl. ¶ 17.   All told, Apple's engineers identified more
21   than 2.1 million files (Opp. at 5-9), yet Apple only claims it produced "over one million source
22   code files" (*id.* at 11).   In light of these discrepancies, Samsung has requested a deposition of
23   Erica Atwell in order to determine how Apple and its engineers and outside counsel decided which

---

[8]   *See* Declaration of Cristobal Baray (Dkt. 533-12) at ¶¶ 4-5; Declaration of Adele Peterson (Dkt. 533-28) at ¶¶ 4-5; Declaration of Ed Voas (Dkt. 533-35) at ¶¶ 4-5.
[9]   Further, Apple engineer Eric Krugler refers ▮▮▮▮ which, as of the filing of this Reply, appears not to have been produced.   Thakur Reply Decl. ¶ 18.

1  source code files to "count," and which ones to produce.   Thakur Reply Decl. ¶ 19.   Apple has

2  refused to make Ms. Atwell available.   *Id.* at ¶ 20; Ex. 6.

3        B.    <u>Apple Has Withheld Relevant Source Code Based On An Improper Reading of Samsung's Infringement Contentions</u>

4

5        Apple's Opposition is based on the mistaken premise that Apple's discovery obligation can

6  be limited according to its own narrow and self-serving interpretation of Samsung's infringement

7  contentions.   Infringement contentions—which are due before discovery begins—are intended to

8  provide *reasonable notice of the patentee's infringement theories* without requiring "unrealistic,

9  overly factual contentions" from patentees.   *Orion IP, LLC, v. Staples, Inc.*, 407 F. Supp. 2d 815,

10  818 (E.D. Tex. 2006); *DCG Sys. v. Checkpoint Tech., LLC*, No. C11–03792, 2012 WL 1309161,

11  at *2 (N.D. Cal. April 6, 2012) (Patent Local Rules "do not, as is sometimes misunderstood,

12  'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement

13  case.'");[10]  *STMicroelecs., Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004)

14  (Patent L.R. 3-1 is not intended to force parties to "pre-try the case ... by conducting a highly

15  detailed and rigorous analysis of the preliminary claim infringement contentions").   Apple, by

16  limiting its production of source code according to a rigid, formalistic interpretation of Samsung's

17  infringement contentions, seeks to force Samsung to prove its infringement case at the discovery

18  stage—in direct contradiction of the Rules.

19        **Audio Chips and Video Chips:**   Apple's claim that the accused products do not contain

20  any components referred to as "audio chips" or "video chips" is pure semantics.   *See* Opp. at 18.

21  Audio chips and video chips are commonly understood terms that generically refer to components

22  such as integrated circuits, modules, cards, graphical processing units, codecs, encoders, decoders,

23  image sensors, CMOS sensors, CCD sensors, and camera modules—components that are

---

[10]   Particularly in software patent cases, numerous courts have recognized that patentees must have access to source code in order to present fully developed infringement contentions. *New York Univ. v. E.Piphany, Inc.*, No. 05-1929, 2006 WL 559573, at *3 (S.D.N.Y March 6, 2006); *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005); *Network Caching Tech. LLC v. Novell Inc.*, No. 01-2079, 2002 WL 32126128, at *7 (N.D. Cal. Aug. 13, 2002).   For that reason, courts regularly permit patentees to amend their contentions after reviewing the defendant's source code—just as Apple has done in this case.   *See* Dkt. 525.

expressly identified in Samsung's infringement contentions.  *See* Exs.7-9.[11]   While many of these components may be supplied by third parties, Apple has withheld the operating system source code that manages and enables the interaction between these components and the software applications that enable them, ███████████████████████████████████████

███████████████████████████████ .  *See* Thakur Reply Decl. ¶ 26; Ex. 1 at 7-8 (Apple's operating systems "manage[] the device hardware and provide[] the technologies required to implement native apps" and "act[] as an intermediary between the underlying hardware and the apps that appear on the screen.")

**Applications Processor:**   Apple plays similar semantic games in attempting to justify its refusal to produce all source code related to the applications processor, including source code involved in preparing data for transmission, communicating with the baseband processor and WiFi chips, and transferring data between components.   Samsung alleges that the applications process—a key component of Samsung's infringement contentions for the '239 patent—compresses audio or video data, which is then transmitted using a baseband processor or Wi-Fi chip.   Ex. 7 at 9.   Regardless of whether Samsung's contentions "use[ ] the term "preparing," "communicating" or "transferring'" (Opp. at 19), source code showing the manner in which the application processor sends data to the baseband processor or Wi-Fi chips, as well as other interactions between these components, is necessary to fully understand the functions that are expressly disclosed in Samsung's infringement contentions.   Yet Apple's production excludes, *inter alia*, source code that controls and enables the interactions between the application processor and WiFi chip.   Thakur Reply Decl. ¶ 27.

**Camera App:**   Apple argues it may withhold all source code for the Camera app because "none of Samsung's infringement contentions identify the Camera app as accused."   Opp. at 19.   As an initial matter, Apple ignores Samsung's amended infringement contentions for the '239

---

[11]   Apple has frustrated Samsung's attempts to obtain other discovery that would allow Samsung to identify these components more precisely.   For example, in response to Samsung's Interrogatory Nos. 33, 36, and 37, which asked Apple to identify various camera and audio components in the accused products, Apple ███████████████████████████████████████
███████████████████████████████

patent, which expressly identify the Camera app as infringing.  *See* Ex. 7 at 11.  Furthermore, the Camera app is used to operate or enable features and functionalities expressly accused of infringing the '449 patent.  Samsung's contentions are directed to a number of hardware components that capture, convert, and compress photos and videos.  Ex. 8 at 2-6.  While Apple's engineers state that they provided source code for the Photos app that performs compression and storage functions (*see* Declaration of Justin Titi (Dkt. 533-32) at ¶¶ 4-5; Declaration of Rolf Toft (Dkt. 533-33) at ¶¶ 4-5), Apple has not produced source code for the Camera app that allows users to capture photos or videos in the first instance.  Thakur Reply Decl. ¶ 28.  Moreover, the Camera app also allows users to access the Camera Roll and Albums features, both of which are expressly accused of infringing the '449 patent.  *See* Ex. 8 at 6-8.

**YouTube App:**  Apple refuses to produce all source code related to the YouTube app based on its contention that Samsung's infringement theories are inconsistent with the Court's construction of the "means for transmitting" limitation of the '239 patent.  *See* Opp. at 20. Apple selectively quotes from the Court's construction, which requires *software* to perform functions such as "transmitting the stored data file."  Dkt. 447 at 61-63.  Every iteration of Samsung's infringement contentions has alleged that the YouTube app is involved in transmitting data files.  *See, e.g.,* Ex. 11 at 4 ("a user can . . . directly send the video for uploading to YouTube, over a cellular frequency").  With respect to the requirement of "one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters," Apple ignores the amended infringement contentions that Samsung served in response to the Court's construction, which clearly identify the components and applications that Samsung alleges meet this limitation.  *See* Ex. 7 at 11-14.[12]

---

[12]  Specifically, Samsung alleges that the "means for transmitting" limitation is met by "an applications processor, a baseband chip, a Wi-Fi chip, and one or more cellular or radio frequency transmitters and software sequences for transmitting the composite signal, including software sequences contained in, initialized by, implemented by, or otherwise related to software and/or firmware such as Camera, Photos, Messages, Mail, YouTube, Phone, Contacts, FaceTime, Voice Memos, Email, iTunes, iPod and/or other processes."  *Id.* at 11.

C. **Apple's Agreement to Produce Self Selected Source Code Is No Basis to Deny Samsung's Motion**

Apple suggests that Samsung's Motion is somehow moot because Apple has "already agreed to produce that source code to the extent it is in Apple's possession and accused in Samsung's infringement contentions." Opp. at 17-20. Apple's agreement, however, is silent as to when it will complete its source code production, and Samsung needs Apple's source code *now*. Source code "is not something that can be reviewed casually. It often takes even highly trained, highly paid experts extraordinary time and effort to understand, let alone fit into the framework of the case." *See Apple, Inc. v. Samsung Elecs. Co., Ltd.,* No. 11-cv-1846, Dkt. 898 at 8. Apple's delay in producing the vast majority of its source code has already caused severe prejudice to Samsung's ability to conduct discovery. Not coincidentally, Apple's belated and massive source code productions come on the eve of the depositions of Apple's technical witnesses, which are set to take place over the next several weeks. Ex. 12. Samsung was already forced to cancel one of these depositions after Apple produced over 28,000 additional iTunes source code files just four days before the deposition of Chris Wysocki, Apple's designated corporate representative on topics relating to iTunes, including topics specifically relating to iTunes source code. Thakur Reply Decl. ¶ 31; Ex. 13. Without a firm commitment that Apple will produce all source code used to operate or enable the accused software and hardware, by a date certain in the immediate future, Apple's gamesmanship will only continue.

Furthermore, Apple's agreement to produce all "relevant" source code is simply not credible in light of Apple's previous representations that it *already had* produced all source code relevant to Samsung's infringement contentions. Apple's source code dump consists largely of source code that Samsung requested *more than five months ago*—including, for example, source code for iCloud, iCloud servers, MobileMediaPlayer and MobileSlideShow . *See* Ex. 14. Apple dismissed these and other requests as "seeking code for applications or functionalities that are either absent from Samsung's contentions, or about which Samsung's contentions are incomplete." Ex. 15. After Samsung filed its Motion, however, Apple produced more than 4.7

1  gigabytes of iCloud source code, 65,000 server-related source code files,[13] 1.15 gigabytes of
2  source code for MobileMusicPlayer and 3.36 gigabytes of source code for MobileSlideShow.
3  Thakur Reply Decl. ¶ 34.   The same is true for countless other accused features—Apple
4  repeatedly claimed that the only withheld source code was irrelevant, only to produce such code
5  months later, after Samsung moved to compel it.

6  III.   **ANY RISK OF INADVERTENT DISCLOSURE DOES NOT JUSTIFY DENYING SAMSUNG ACCESS TO APPLE'S SOURCE CODE**
7

8  Apple contends that producing source code for the accused software applications and
9  hardware components will subject it to "serious and unnecessary risks" to the "incalculable value"
10 of Apple's source code.   This is now the fourth litigation between the parties over the past several
11 years, during which both sides have produced tens of millions of source code files.   To date, not a
12 single one of those files has been inadvertently disclosed.   Thakur Reply Decl. ¶ 35.   Moreover,
13 as Apple acknowledges, the protective order in this action—to which *Apple itself stipulated*—
14 severely restricts access to Apple's source code.   If Apple believes those provisions of the
15 protective order governing source code are inadequate, the proper course of action is not to
16 withhold discovery, but to ask the Court to modify the protective order, as the Court has done on
17 multiple occasions.   *See* Dkt. 159; Dkt. 327; Dkt. 438.   Apple cannot justify withholding source
18 code based on purported deficiencies in a protective order to which Apple itself agreed.

19                              **CONCLUSION**

20 For the foregoing reasons, the Court should GRANT Samsung's Motion to Compel
21 Complete Production of Source Code.

---

[13]   Despite Apple's claim that its August 10, 2012 production of source code included "server code related to the DAAP servers, part of the iCloud accused functionality" (Opp. at 18), Apple's August production included just 334 kilobytes of source code for the DAAP servers—a mere 143 source code files.   Thakur Reply Decl. ¶ 35.   Apple's Opposition does not dispute Samsung's contention that Apple produced less than four megabytes of server-side source code related to the '757 patent as of May 7, 2013.

1  DATED: June 3, 2013                QUINN EMANUEL URQUHART &
2                                     SULLIVAN, LLP

3                                     By  */s/ Victoria F. Maroulis*
                                           Victoria F. Maroulis
4                                          Attorney for SAMSUNG ELECTRONICS CO.,
                                           LTD., SAMSUNG ELECTRONICS AMERICA,
5                                          INC., and SAMSUNG
                                           TELECOMMUNICATIONS AMERICA, LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28