# EXHIBIT 7

# EXHIBIT H

# SAMSUNG'S THIRD AMENDED PATENT L.R. 3-1(A)-(D) DISCLOSURES FOR U.S. PATENT NO. 5,579,239

| ASSERTED CLAIM (PATENT L.R. 3-1(A)) | ACCUSED INSTRUMENTALITY AND HOW EACH ELEMENT IS MET BY ACCUSED INSTRUMENTALITY (PATENT L.R. 3-1(B)-(D)) |
|---|---|
| 1. An apparatus for transmission of data, comprising: | Apple directly infringes this claim through testing and use of the claimed apparatus for transmitting data by and at the direction of its employees.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed apparatus to customers and by encouraging and aiding those customers to use the products in a manner that meets each and every step of this claim.  Apple indirectly infringes through the offer for sale and sale of any single individual component, including the iPhone 5, iPhone 4S, iPhone 4, iPhone 3GS, iPhone 3G, iPod Touch (any generation), iPad Mini, iPad 4, iPad 3, iPad 2, iPad, iMac, Mac Pro, Mac Mini, MacBook Air, and MacBook Pro (collectively the "Accused Devices").  *See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc).  Apple knew about the '239 patent since at least as early as the filing date of this lawsuit.  It induces infringement through many avenues, including: instructing customers to transmit video in the manner of the claims; television commercials and advertisements; training courses and other instruction in Apple stores and on the Apple website; technical support;  and user manuals.  Samsung is currently seeking discovery from Apple on all of these items and intends to use all related documents and deposition testimony in support of these contentions and expert reports to be served in accordance with the schedule in this case.[1]<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy any limitation of this claim, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of |

---

[1]   In its original infringement contentions served on June 15, 2012, Samsung alleged that the iPhone (4 and 4S), iPod Touch (4th generation), iPad (all generations prior to the iPad 4), iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, and PCs with iTunes were collectively the "Accused Devices" that have been used by Apple and its customers to create an apparatus that infringe claims 1-7 of the '239 patent.  On October 1, 2012, Samsung filed a Motion for Leave to Amend its infringement contentions to further accuse the iPhone 5 of infringing its patents.  Those previously accused devices, including the iPhone 5, that run on the newly released iOS 6.0 (the same operating system that ships with the iPod Touch (5th Generation), iPad mini, and iPad 4) operate in substantially the same way as described herein.  Further, to the extent that the previously accused devices vary from the iPod Touch (5th Generation), iPad mini, and iPad 4, Samsung continues to allege infringement under previously disclosed theories of infringement, including all claims previously asserted against Apple's devices.  As used herein, "iPod Touch (3rd generation or later)" and "iPod Touch (4th generation or later)" includes the iPod Touch (5th Generation), and "iPad (all generations)" includes the iPad mini and iPad 4.   Samsung also notes that the same additions made in these contentions apply to the previous contention charts that apply to other products.  The additional contentions added to these charts apply equally to all accused and charted products.

| | |
|---|---|
| | transmitting data in substantially the same way through a transmitter or other transmission means, to obtain substantially the same result of transmitting data.  Samsung's doctrine of equivalents positions are explained in greater detail in each limitation.  Moreover, to the extent there even are any differences, there are insubstantial differences between the Accused Devices and the asserted claims.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.<br><br>Moreover, for all limitations and claims, Samsung intends to rely on expert testimony to prove that Apple infringes both literally and under the doctrine of equivalents, including, without limitation, expert testimony establishing the function, way, and result of the claims and Accused Devices.  Samsung will serve its expert reports, providing those opinions. in accordance with the schedule in this case. |
| a mobile remote unit including: | The iPod Touch (5th generation), iPad 4, and iPad mini, as well as previously charted Mobile Remote Units, are each mobile remote units (collectively "Mobile Remote Units").<br><br>To the extent Apple argues that the Mobile Remote Units do not literally satisfy this limitation, the Mobile Remote Units still infringe under the doctrine of equivalents because they perform substantially the same function of being mobile in substantially the same way as to provide mobile functionality, to obtain substantially the same result, a device that enables a user to bring the functionality to a remote location.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "mobile remote unit" and the Mobile Remote Units are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine |

| | of equivalents. |
| --- | --- |
| a.) means for capturing, digitizing, and compressing at least one composite signal; | The Mobile Remote Units have a means for capturing, digitizing and compressing a composite signal into a digital file.  On information and belief, the Mobile Remote Units each use a CMOS Image Sensor that converts an optical image into an electronic analog signal, and then uses an A/D converter that converts the analog signal into a digital signal.  The Court has construed the structure for this term as "an audio capture card, and a video card having a video capture module."  The components identified below infringe this claim both literally and under the doctrine of equivalents.  For example, the iPad mini's camera assemblies are depicted below:<br><br> |



**http://www.ifixit.com/Teardown/iPad+4+Teardown/11462/2http://www.ifixit.com/Teardown/iPad+4+Teardown/11462/2(iPad mini camera assemblies, http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

The iPad mini's A5 processor with a graphical processing unit (GPU) captures the digital composite signal and uses a video encoder that utilizes at least the H.264 and MPEG-4 standards for compressing the digital signal into a compressed digital file.[2]

---

[2]   The previously accused devices have A4, A5 and A6 processors which operate in substantially the same manner as the iPad mini's A5 processor.  The iPad 4 has an A6X processor which operates in substantially the same manner as the iPad mini's A5 processor.

For example, the iPad mini's A5 processor is depicted below:



**(A5 Processor http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

According to Apple's website, the iPad mini captures video in 1080p HD format:

**Cameras, Photos, and Video Recording**

**FaceTime HD Camera**
- 1.2MP photos
- 720p HD video
- FaceTime video calling over Wi-Fi or cellular⁴
- Face detection
- Backside illumination
- Tap to control exposure for video or still images
- Photo and video geotagging

**iSight Camera**
- 5MP photos
- Autofocus
- Face detection
- Backside illumination
- Five-element lens
- Hybrid IR filter
- ƒ/2.4 aperture
- Tap to focus video or still images
- Tap to control exposure for video or still images
- Photo and video geotagging

**Video Recording**
- 1080p HD video recording
- Video stabilization
- Face detection
- Tap to focus while recording
- Backside illumination



(**http://www.apple.com/ipad-mini/specs/,** viewed 11/19/2012)

Apple's website further describes that the iPad mini supports numerous video compression standards:

Video formats supported: H.264 video up to 1080p, 30 frames per second, High Profile level 4.1 with AAC–LC audio up to 160 Kbps, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; MPEG–4 video up to 2.5 Mbps, 640 by 480 pixels, 30 frames per second, Simple Profile with AAC–LC audio up to 160 Kbps per channel, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; Motion JPEG (M–JPEG) up to 35 Mbps, 1280 by 720 pixels, 30 frames per second, audio in ulaw, PCM stereo audio in .avi file format

(**http://www.apple.com/ipad-mini/specs/.** viewed 11/19/2012)

The iPad mini's User Guide describes using the iPad's FaceTime Camera and app for capturing, digitizing, and compressing at least one composite signal.



**(iPad User Guide for iOS 6 Software, pg. 7)**



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.

Drag your image to any corner.



Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

Samsung has sought, is seeking, and/or is planning to seek third party discovery of the component manufacturers. That discovery may ultimately impact these contentions or be incorporated into Samsung's expert reports.

| | |
|---|---|
| | Moreover, Samsung has sought discovery from Apple that Samsung has not yet received.  Samsung reserves all rights to amend these contentions or theories in its expert report after receiving this discovery.<br><br>To the extent Apple argues that the Mobile Remote Units do not contain the corresponding structure disclosed by the specification and determined by the Court in the Markman Order, the Mobile Remote Units still literally infringe because they contain equivalents thereof.  The Mobile Remote Units perform the identical function of capturing, digitizing, and compressing data in substantially the same way of providing chips within the Mobile Remote Units that perform these limitations, with substantially the same result of generating captured, digitized, and compressed data.  The chips used within the Mobile Remote Units are equivalents to the structure construed by the Court because they perform the same functions as the "cards" as construed by the Court.<br><br>To the extent Apple argues that the Mobile Remote Units do not literally satisfy this limitation, the Mobile Remote Units still infringe under the doctrine of equivalents because they capture, digitize, and compress data in substantially the same way by receiving data and capturing, digitizing, and compressing it, to obtain substantially the same result, of providing a component of the remote device to perform the claimed function.  Moreover, to the extent there even are any differences, the differences between the Mobile Remote Units and the claims is insubstantial because the chips in the Mobile Remote Units operate in the same way as construed by the Court.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| b.) means for storing said composite signal; | The Mobile Remote Units have a means for storing the composite signal, such as a NAND flash module or RAM.<br><br>To the extent Apple argues that the Mobile Remote Units do not contain the corresponding structure disclosed by the specification, the Mobile Remote Units still literally infringe because they contain equivalents thereof.  The Mobile Remote Units perform the identical function of storing the composite signal in substantially the same way by providing a memory where data can be stored, with substantially the same result of data being stored in memory.<br><br>To the extent Apple argues that the Mobile Remote Units do not literally satisfy this limitation, the Mobile Remote Units still infringe under the doctrine of equivalents because they store a composite signal in substantially the same |

| | |
|---|---|
| | way by providing a memory where data can be stored, to obtain substantially the same result of data being stored in memory.  Moreover, to the extent there even are any differences, the differences between the Mobile Remote Units and the claims is insubstantial because they both include means for storing said composite signal.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| c.) means for transmitting said composite signal; | The Court construed the structure for this claim term as "one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file."  The components of the Mobile Remote Units infringe this structure both literally and under the doctrine of equivalents.  The Mobile Remote Units include one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file.[3]  For example, Mobile Remote Units have an applications processor, a baseband chip, a Wi-Fi chip, and one or more cellular or radio frequency transmitters and software sequences for transmitting the composite signal, including software sequences contained in, initialized by, implemented by, or otherwise related to software and/or firmware such as Camera, Photos, Messages, Mail, YouTube, Phone, Contacts, FaceTime, Voice Memos, Email, iTunes, iPod and/or other processes.  A user can transmit videos from a Mobile Remote Unit to a host unit using Apple's software components that are pre-loaded on the Mobile Remote Unit as described in more detail below with respect to claim 15.  For example, a user can email or message a video to any third party, or directly send the video for uploading to YouTube, over a |

---

[3]   Some of the previously and currently identified accused devices, i.e. iPod Touch (all versions), only have a wireless chip for transmitting the compressed composite signal across Wi-Fi frequencies.

cellular frequency.

A user can also transmit videos from a Mobile Remote Unit to a host unit over Wi-Fi by using Apple's iTunes software.  As described in the iPad User's Guide, for example, Syncing With iTunes allows a user to transmit a copy of videos stored on the Mobile Remote Unit to a host unit:

## Syncing with iTunes

Syncing with iTunes copies information from your computer to iPad, and vice versa. You can sync by connecting iPad to your computer with the included USB cable, or you can set up iTunes to sync wirelessly using Wi-Fi. You can set iTunes to sync music, photos, videos, podcasts, apps, and more. For information about syncing iPad, open iTunes on your computer, then select iTunes Help from the Help menu.

**Set up wireless iTunes syncing:** Connect iPad to your computer using the included USB cable. In iTunes on your computer, select iPad (under Devices), click Summary, then turn on "Sync over Wi-Fi connection."

When Wi-Fi syncing is turned on, iPad automatically syncs every day. iPad must be connected to a power source, both iPad and your computer must be on the same wireless network, and iTunes must be open on the computer. For more information, see iTunes Wi-Fi Sync on page 114.

**(iPad User Guide For iOS 6 Software, pg. 16)**

Additionally, a user can transmit video from a Mobile Remote Unit to a host unit over either a cellular frequency or a Wi-Fi signal using Apple's FaceTime app, which is preloaded on the Mobile Remote Unit.



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.

Drag your image to any corner.



Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

The components above are one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters.  Moreover, the Mobile Remote Units contain software that initializes one or more

communication ports on the remote unit.  For example, when a call or other cellular or WiFi connection is made, the software initializes a modem, a port on the modem, an antenna, and/or a port on the phone in order to transmit the information.  Also, the Mobile Remote Units obtain the stored data file in order to transmit the data file.  These software sequences may include sequences contained in, initialized by, implemented by, or otherwise related to software and/or firmware such as Camera, Photos, Messages, Mail, YouTube, Phone, Contacts, FaceTime, Voice Memos, Email, iTunes, iPod and/or other processes.

Samsung has sought, is seeking, and/or is planning to seek third party discovery of the component manufacturers.  That discovery may ultimately impact these contentions or be incorporated into Samsung's expert reports.  Moreover, Samsung has sought discovery from Apple that Samsung has not yet received.  Samsung reserves all rights to amend these contentions or theories in its expert report after receiving this discovery.

To the extent Apple argues that the Mobile Remote Units do not contain the corresponding structure disclosed by the specification and determined by the Court in the Markman Order, the Mobile Remote Units still literally infringe because they contain equivalents thereof.  The Mobile Remote Units perform the identical function of transmitting the composite signal in substantially the same way by using transmitters and means as construed by the Court, with substantially the same result, of transmitting the video and audio data.  The components identified above are modems.  To the extent Apple argues that none of the components of the Mobile Remote Units are "modems," the components identified above are equivalent to a "modem."  Moreover, to the extent Apple argues that the Mobile Remote Units do not perform the software limitations that are part of the Court's construction, the methods performed by the Mobile Remote Units are equivalent.

To the extent Apple argues that the Mobile Remote Units do not literally satisfy this limitation, the Mobile Remote Units still infringe under the doctrine of equivalents because they perform the substantially similar function of transmitting a composite signal in substantially the same way by using a modem or substantially equivalent component, and performing the Court's software sequence, to obtain substantially the same result of transmitting the video and audio data.  Moreover, to the extent there even are any differences, the differences between the Mobile Remote Units and the claims is insubstantial because the chips in the Mobile Remote Units operate in the same way as construed by the Court.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element

| | |
|---|---|
| | thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a host unit including: | Apple's computers (i.e.,  iMac, MacBook Air, MacBook Pro, Mac Mini and Mac Pro) and non-Apple PCs with iTunes, as well as previously charted Host Units are each host units.<br><br>Additionally, FaceTime allows the iPod touch (5th generation), iPad 4 and iPad mini (and previously accused iPhones, iPads, and iPod touches), as well as previously charted Host Units to act as a host computer.  For example, Apple informs its customers:<br><br>**Now your smile goes even further.**<br><br>FaceTime for Mac makes it possible to talk, smile, and laugh with anyone on an iPad, iPhone, iPod touch, or Mac with a built-in FaceTime camera.* So you can catch up, hang out, joke around, and stay in touch with just a click. Sure, it's great to hear a voice. But it's even better to see the face that goes with it.<br><br>(**http://www.apple.com/mac/facetime/**, **viewed 11/19/2012**) |

# FaceTime
# Be in two
# places at once.

Hang with friends in one city. Visit
family in another. Make that
important meeting. While you're
catching the game at the ballpark.
With a tap, you can make video calls
over Wi-Fi from your iPhone, iPad,
iPod touch, or Mac to someone else's.
You can even make FaceTime calls
over cellular networks on iPhone or
iPad.* And be there in person, even
when you're not.

(http://www.apple.com/ios/facetime/, viewed 11/19/2012)

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of being a host in substantially the same way as to provide host functionality, to obtain substantially the same result, a device that has the capability to act as a host.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "host unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to

| | |
|---|---|
| | Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a.) means for receiving at least one composite signal transmitted by the remote unit; | On information and belief, Apple's computers and non-Apple PCs, as well as other Accused Devices, each have a computer interface(s) for receiving a composite signal transmitted by the remote unit either over cellular or Wi-Fi frequencies.<br><br>Apple's software, as described below, works in conjunction with that computer interface(s) to allow a host computer unit to receive information from a Mobile Remote Unit such as an iPad mini.<br><br>**( iPad User Guide For iOS 6 Software, pg. 16)** |



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.



Drag your image to any corner.

Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

Additionally, as described above, the iPod touch (5th generation), iPad 4 and iPad mini also have a computer interface(s) for receiving a composite signal transmitted by the remote unit either over cellular or Wi-Fi frequencies.

First, the iPad 4s and iPad minis with cellular capabilities have a baseband chip for receiving the compressed composite signal across cellular frequencies.  Second, each iPod touch (5th generation), iPad 4 and iPad mini also has a wireless chip for receiving the compressed composite signal across Wi-Fi frequencies.

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of receiving data in substantially the same way of providing chips within the Accused Devices that perform this limitation, with substantially the same result, data being received.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they receive data in substantially the same way of providing chips within the Accused Devices that perform this limitation, to obtain substantially the same result, data being received.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for receiving at least one composite signal transmitted by the remote unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.

| a playback unit including: | On information and belief, the iPod touch (5th generation), iPad 4, iPad mini, Apple's computers, and non-Apple PCs, as well as previously charted Accused Devices each have a playback unit for playing the composite signal and displaying it to the user.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of being a playback unit in substantially the same way as to provide playback functionality, to obtain substantially the same result, a device that has playback capabilities.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "playback unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
|---|---|
| a.) means for exchanging data with said host unit; | On information and belief, the iPod touch (5th generation), iPad 4, iPad mini, Apple's computers and non-Apple PCs, as well as previously charted Accused Devices, each have a circuit for exchanging the data received by the host computer's interface with the playback unit.  Apple's software, such as Quicktime and FaceTime, works in conjunction with that computer interface(s) and the circuit to allow a host unit to receive data from a Mobile Remote Unit and transmit it to playback unit for playback unit.

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of exchanging data in substantially the same way of providing chips within the Accused Devices that perform these limitations, with substantially the same result, having data exchanged.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they exchange data in substantially the same way of providing chips within the Accused Devices that perform these limitations, to obtain substantially the same result, having data |

| | |
|---|---|
| | exchanged.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for exchanging data with said host unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| b.) means for storing the composite signal received by the host unit; | The iPod touch (5th generation), iPad 4, iPad mini, Apple's computers and non-Apple PCs, as well as previously charted Accused Devices, each have a hard drive or NAND flash module for storing the composite signal that is received by the host unit's interface from a Mobile Remote Unit and then exchanged with the playback unit. For example, composite signals that are received by the host unit via email, messaging or Syncing with iTunes are transmitted to the playback unit and stored on the computer's hard drive or NAND flash module.  Further, composite signals that are received by the host unit for the FaceTime app are stored in a memory buffer, either the playback unit's hard drive or NAND flash module. |
| | To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of storing the composite signal in substantially the same way by providing a memory where data can be stored, with substantially the same result, data being stored in memory. |
| | To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they store a composite signal in substantially the same way by providing a memory where data can be stored, to obtain substantially the same result, data being stored in memory.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for storing the composite signal received by the host unit" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it |

| | |
|---|---|
| | may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| c.) means for decompressing said composite signal. | On information and belief, the iPod touch (5th generation), iPad 4, iPad mini, Apple's computers and non-Apple PC computers, as well as previously charted Accused Devices, each have a graphical processing unit such as a video card, including a video decoder, for decompressing the compressed composite signal for playback.   Further, on information and belief, Apple's software, including FaceTime, decompresses the composite signal.<br><br>For example, the iPad mini has an A5 processor with a graphical processing unit (GPU) that captures the digital composite signal and uses a video encoder that utilizes at least the H.264 and MPEG-4  standards for compressing the digital signal into a compressed digital file.[4]  The iPad mini's A5 processor is depicted below: |

---

[4]  The previously accused devices have A4, A5 and A6 processors which operate in substantially the same manner as the iPad mini's A5 processor.  The iPad 4 has an A6X processor which operates in substantially the same manner as the iPad mini's A5 processor.



**(A5 Processor http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of decompressing data in substantially the same way of providing chips within the Accused Devices that perform these limitations, with substantially the same result, generating decompressed data.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still

| | |
|---|---|
| | infringe under the doctrine of equivalents because they decompress data in substantially the same way of providing chips within the Accused Devices that perform these limitations, to obtain substantially the same result, generating decompressed data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for decompressing said composite signal" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 3. An apparatus according to claim 1 wherein the composite signal is transmitted over telephone lines, cellular, radio or other telemetric frequencies. | Apple directly infringes this claim through testing and use of the claimed apparatus for transmitting data by and at the direction of its employees.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed apparatus that are found in the Accused Devices to customers and by encouraging and aiding those customers to use the products in a manner that meets each and every step of this claim. Apple indirectly infringes through the offer for sale and sale of any single individual component, including the iPhone 5, iPhone 4S, iPhone 4, iPhone 3GS, iPhone 3G, iPod Touch (any generation), iPad Mini, iPad 4, iPad 3, iPad 2, iPad, iMac, Mac Pro, Mac Mini, MacBook Air, and MacBook Pro (collectively the "Accused Devices").  *See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc).  Apple knew about the '239 patent since at least as early as the filing date of this lawsuit.  It induces infringement through many avenues, including: instructing customers to transmit video in the manner of the claims; television commercials and advertisements; training courses and other instruction in Apple stores and on the Apple website; technical support;  and user manuals.  Samsung is currently seeking discovery from Apple on all of these items and intends to use all related documents and deposition testimony in support of these contentions and expert reports to be served in accordance with the schedule in this case.<br><br>The Mobile Remote Units can transmit composite signals to a host computer over cellular and/or other radio frequencies, including Wi-Fi frequencies.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit the composite signal in substantially the same way by using transmitters and means as construed by the Court, to obtain substantially the same result, the transmission |

<table>
<tr>
<td></td>
<td>of audio and video data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between an "apparatus according to claim 1 wherein the composite signal is transmitted over telephone lines, cellular, radio or other telemetric frequencies" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents.</td>
</tr>
<tr>
<td>7. An apparatus according to claim 3 wherein the means for transmitting the composite signal includes: at least one interface installed in conjunction with said remote unit; a cellular telephone connected to each said interface.</td>
<td>Apple directly infringes this claim through testing and use of the claimed apparatus for transmitting data by and at the direction of its employees.  Apple also indirectly infringes this claim by offering to sell and selling components of the claimed apparatus that are found in the Accused Devices to customers and by encouraging and aiding those customers to use the products in a manner that meets each and every step of this claim. Apple indirectly infringes through the offer for sale and sale of any single individual component, including the iPhone 5, iPhone 4S, iPhone 4, iPhone 3GS, iPhone 3G, iPod Touch (any generation), iPad Mini, iPad 4, iPad 3, iPad 2, iPad, iMac, Mac Pro, Mac Mini, MacBook Air, and MacBook Pro (collectively the "Accused Devices").  *See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc).  Apple knew about the '239 patent since at least as early as the filing date of this lawsuit.  It induces infringement through many avenues, including: instructing customers to transmit video in the manner of the claims; television commercials and advertisements; training courses and other instruction in Apple stores and on the Apple website; technical support;  and user manuals.  Samsung is currently seeking discovery from Apple on all of these items and intends to use all related documents and deposition testimony in support of these contentions and expert reports to be served in accordance with the schedule in this case.

On information and belief, the iPad Mini and iPad 4 have at least one interface installed that is connected to a cellular telephone.  For example, Apple informs its customers that the baseband processor on some models of the iPad mini allows it to interface with multiple cellular networks.</td>
</tr>
</table>

| Wireless and Cellular | • 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>• Bluetooth 4.0 wireless technology | • Model A1454*<br>  ○ GSM/EDGE (850, 900, 1800, 1900 MHz)<br>  ○ UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>  ○ LTE (Bands 4 and 17)<br>• Model A1455*<br>  ○ CDMA EV-DO Rev. A and Rev. B (800, 1900, 2100 MHz)<br>  ○ GSM/EDGE (850, 900, 1800, 1900 MHz)<br>  ○ UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>  ○ LTE (Bands 1, 3, 5, 13, 25)<br>• Data only³<br>• 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>• Bluetooth 4.0 wireless technology |

(http://www.apple.com/ipad-mini/specs/, viewed 11/19/2012)

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification and determined by the Court in the Markman Order, the Accused Devices still literally infringe because they contain equivalents thereof. The Accused Devices perform the identical function of transmitting the composite signal in substantially the same way by using transmitters and means as construed by the Court, with substantially the same result, transmitted video and audio data.

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit the composite signal in substantially the same way by using transmitters and means as construed by the Court, to obtain substantially the same result, transmitted video and audio data. Moreover, to the extent there even are any differences, any differences alleged by Apple between an

| | |
|---|---|
| | "apparatus according to claim 3 wherein the means for transmitting the composite signal includes: at least one interface installed in conjunction with said remote unit; a cellular telephone connected to each said interface" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 15. An apparatus for transmission of data, comprising: | Apple infringes this claim by manufacturing, using, importing, selling and offering for sale the iPad 4 and iPad mini, as well as previously charted Accused Devices (collectively the "Accused Devices") that comprises an apparatus for transmission of data.[5]<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy any limitation of this claim, the Accused Devices still infringe under the doctrine of equivalents because they perform substantially the same function of transmitting data in substantially the same way through a transmitter or other transmission mechanism, to obtain substantially the same result, transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between an "apparatus for transmission of data" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple |

---

[5]    In its original infringement contentions served on June 15, 2012, Samsung alleged that the iPhone (4 and 4S) and iPad (all Generations) were collectively the "Accused Devices" that have been used by Apple and its customers to create systems that infringe claims 15-17 of the '239 patent.  On October 1, 2012, Samsung filed a Motion for Leave to Amend its infringement contentions to further accuse the iPhone 5 of infringing its patents.  Those previously accused devices, including the iPhone 5, that run on the newly released iOS 6.0 (the same operating system that ships with the iPad mini, and iPad 4) operate in substantially the same way as described herein.  Further, to the extent that the previously accused devices vary from the iPad mini, and iPad 4, Samsung continues to allege infringement under previously disclosed theories of infringement, including all claims previously asserted against Apple's devices.  As used herein, "iPad (all generations)" includes the iPad mini and iPad 4.

| | |
|---|---|
| | to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a computer including a video capture module to capture and compress video in real time; | The Accused Devices comprise a computer that includes a video capture module to capture and compress video in real time.  For example, the iPad mini has a CMOS Image Sensor that converts an optical image into an electronic analog signal, and then uses an A/D converter that converts the analog signal into a digital signal.  For example, the iPad mini's camera assemblies are depicted below: |



02198.51990/5289009.2



**(iPad mini's camera assemblies, http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

The iPad mini has an A5 processor with a graphical processing unit (GPU) for capturing from the iPad mini's camera and uses a video encoder for compressing the digital signal into a compressed digital file in real time according to one of three compression standards:  H.264, MPEG-4 and Motion JPEG (M-JPEG).[6]

---

[6]   The previously accused devices have A4, A5 and A6 processors which operate in substantially the same manner as the iPad mini's A5 processor.  The iPad 4 has an A6X processor which operates in substantially the same manner as the iPad mini's A5 processor.

For example, the iPad mini's A5 processor is depicted below:



**(A5 Processor http://www.ifixit.com/Teardown/iPad+Mini+Teardown/11423/3, viewed 11/19/2012)**

According to Apple's website, the iPad mini captures video in 1080p HD format:

**Cameras, Photos, and Video Recording**

**FaceTime HD Camera**
- 1.2MP photos
- 720p HD video
- FaceTime video calling over Wi-Fi or cellular⁴
- Face detection
- Backside illumination
- Tap to control exposure for video or still images
- Photo and video geotagging

**iSight Camera**
- 5MP photos
- Autofocus
- Face detection
- Backside illumination
- Five-element lens
- Hybrid IR filter
- ƒ/2.4 aperture
- Tap to focus video or still images
- Tap to control exposure for video or still images
- Photo and video geotagging

**Video Recording**
- 1080p HD video recording
- Video stabilization
- Face detection
- Tap to focus while recording
- Backside illumination




(http://www.apple.com/ipad-mini/specs/, **viewed 11/19/2012**)

Apple's website further describe that the iPad mini supports numerous video compression standards:

Video formats supported: H.264 video up to 1080p, 30 frames per second, High Profile level 4.1 with AAC–LC audio up to 160 Kbps, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; MPEG–4 video up to 2.5 Mbps, 640 by 480 pixels, 30 frames per second, Simple Profile with AAC–LC audio up to 160 Kbps per channel, 48kHz, stereo audio in .m4v, .mp4, and .mov file formats; Motion JPEG (M–JPEG) up to 35 Mbps, 1280 by 720 pixels, 30 frames per second, audio in ulaw, PCM stereo audio in .avi file format

(http://www.apple.com/ipad-mini/specs/, **viewed 11/19/2012**)

The iPad mini's User Guide also describes using the iPad mini's FaceTime Camera and app for capturing, digitizing,

and compressing at least one composite signal:



**(iPad User Guide for iOS 6 Software, pg. 7)**



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.

Drag your image to any corner.



Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they capture and compress data in substantially the same way of providing chips within the Accused Devices that perform these limitations, to obtain substantially the same result,

| | |
|---|---|
| | generating captured and compressed data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "computer including a video capture module to capture and compress video in real time" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| means for transmission of said captured video over a cellular frequency.[7] | The Accused Devices allow for the transmission of a captured video over a cellular frequency in a variety of ways. The Photos application that is pre-loaded on the Accused Devices provide the user with three ways (email, messages, and sending to YouTube) to share a captured video with another person over a cellular frequency. As explained by Apple: <br><br> Now playing everywhere. <br><br> It's premiere time. You can shoot video right in the Messages app and send it through iMessage or as an MMS. Or attach it to an email. Or post it on Facebook or YouTube. With AirPlay and Apple TV, you can show your movies to a large audience on your HDTV.* <br><br> After a video is captured by an Accused Device, it can be accessed through the Photos application as shown below on this iPad Mini: |

---

[7]  This claim term has not been construed by the Court.  To the extent Apple argues that the term "means for transmission" in claim 15 is the same as "means for transmitting" in claim 1, Samsung's amended contentions set forth with respect to claim 1 apply in a similar manner to this term.



When a user clicks on the icon in the upper right hand corner of the screen, three options for transmitting the video are displayed:



Upon selection of  the "Mail" option, the iPad mini displays this screen that depicts the video being processed by the iPad mini for attachment to an email:



Upon selection of the "Message" option, the iPad mini display this screen:



Upon selection of the "YouTube" option, the iPad mini displays this screen:



On information and belief, the Accused Devices have at least one cellular antenna and supporting hardware and software, including a baseband chip, for transmitting the captured video over a cellular frequency. For example, on information and belief, the iPad mini includes a baseband processor that supports multiple cellular communication networks.  The iPad mini's specifications indicate the networks that are available to a user:

**Wireless and Cellular**

- 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)
- Bluetooth 4.0 wireless technology

- Model A1454*
  - GSM/EDGE (850, 900, 1800, 1900 MHz)
  - UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)
  - LTE (Bands 4 and 17)
- Model A1455*
  - CDMA EV-DO Rev. A and Rev. B (800, 1900, 2100 MHz)
  - GSM/EDGE (850, 900, 1800, 1900 MHz)
  - UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)
  - LTE (Bands 1, 3, 5, 13, 25)
- Data only[3]
- 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)
- Bluetooth 4.0 wireless technology

(http://www.apple.com/ipad-mini/specs/, viewed 11/19/2012)

The iPad User Guide shows the status icons that indicate what networks are available for use by the phone at a given time:

| Status icon | | What it means |
|---|---|---|
| ✈ | Airplane mode | Shows that airplane mode is on—you can't access the Internet, or use Bluetooth® devices. Non-wireless features are available. See Airplane mode on page 109. |
| **LTE** | LTE | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over a 4G LTE network. |
| **4G** | 4G | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over a 4G network. |
| **3G** | 3G | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over a 3G network. |
| **E** | EDGE | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over an EDGE network. |
| **o** | GPRS | Shows that iPad (Wi-Fi + cellular models) is connected to the Internet over a GPRS network. |

**(iPad User Guide for iOS 6 Software, pg. 12)**

FaceTime also allows users to make a video call over cellular frequencies:



On an iPad 2 or later, you can use FaceTime to make video calls to other iOS devices or computers that support FaceTime. The FaceTime camera lets you talk face-to-face; switch to the iSight camera on the back to share what you see around you.

*Note:* FaceTime may not be available in all areas. On iPad Wi-Fi + cellular models, FaceTime calls can be made over a cellular data connection. Cellular data charges may apply.

Drag your image to any corner.





Mute (you can hear and see; the caller can see but not hear).

Switch cameras.

To use FaceTime, you need an Apple ID and a Wi-Fi connection to the Internet. When you open FaceTime, you may be prompted to sign in using your Apple ID, or to create a new account.

**Make a FaceTime call:** Tap Contacts, choose a name, then tap the phone number or email address the person uses for FaceTime.

You can also make a FaceTime call from the Contacts app.

**(iPad User Guide for iOS 6 Software, pg. 51)**

To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused

| | |
|---|---|
| | Devices perform the identical function of transmitting data in substantially the same way by using transmitters or other transmission means, with substantially the same result, transmitted data.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit data in substantially the same way by using transmitters or other transmission means, to obtain substantially the same result, transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "means for transmission of said captured video over a cellular frequency" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.  For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| 16. The apparatus of claim 15 wherein the means for transmission of said captured video over a cellular frequency includes; | Apple infringes this claim by selling the Accused Devices that each comprises an apparatus for transmission of captured video over a cellular frequency.<br><br>To the extent Apple argues that the Accused Devices do not contain the corresponding structure disclosed by the specification, the Accused Devices still literally infringe because they contain equivalents thereof.  The Accused Devices perform the identical function of transmitting data in substantially the same way by using transmitters or other transmission means, with substantially the same result, transmitted data.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit data in substantially the same way by using transmitters or other transmission means, to obtain substantially the same result, transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between an "apparatus of claim 15 wherein the means for transmission of said captured video over a cellular frequency includes;" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted |

| | |
|---|---|
| | claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| at least two interfaces operating in conjunction with said computer; | On information and belief, the Accused Devices have at least two interfaces for transmission of captured video over a cellular frequency.  For example, the iPad mini has a baseband processor that supports multiple cellular communication networks.<br><br>**Wireless and Cellular**<br><br>- 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>- Bluetooth 4.0 wireless technology<br><br>- Model A1454*<br>  - GSM/EDGE (850, 900, 1800, 1900 MHz)<br>  - UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>  - LTE (Bands 4 and 17)<br>- Model A1455*<br>  - CDMA EV-DO Rev. A and Rev. B (800, 1900, 2100 MHz)<br>  - GSM/EDGE (850, 900, 1800, 1900 MHz)<br>  - UMTS/HSPA+/DC-HSDPA (850, 900, 1900, 2100 MHz)<br>  - LTE (Bands 1, 3, 5, 13, 25)<br>- Data only[3]<br>- 802.11a/b/g/n Wi-Fi (802.11n 2.4GHz and 5GHz)<br>- Bluetooth 4.0 wireless technology<br><br>(http://www.apple.com/ipad-mini/specs/, viewed 11/19/2012)<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit data in substantially the same way of providing |

| | |
|---|---|
| | chips within the Apple Accused Product that perform the claim limitation, to obtain substantially the same result, transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between "at least two interfaces operating in conjunction with said computer" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |
| a cellular telephone connected to each said interface. | The Accused Devices are cell phones that are connected to each interface.  For example, the iPad mini is a world phone that is both a CDMA cellular telephone connected to a CDMA interface and a GSM telephone connected to a GSM interface.<br><br>To the extent Apple argues that the Accused Devices do not literally satisfy this limitation, the Accused Devices still infringe under the doctrine of equivalents because they transmit data in substantially the same way by using transmitters or other transmission means, to obtain substantially the same result transmitted data.  Moreover, to the extent there even are any differences, any differences alleged by Apple between a "cellular telephone connected to each said interface" and the Accused Devices are insubstantial differences, and therefore, Apple infringes this limitation under the doctrine of equivalents.  Apple has not provided any adequate evidence or contentions that it does not literally infringe the asserted claims.   For instance, Apple provides a vague and uninformative response to Samsung's Interrogatory No. 12, which asks Apple to state with specificity the complete factual and legal bases for Apple's belief that it does not infringe any asserted claim of Samsung's asserted patents.  Apple's response to Interrogatory No. 12 merely quotes the claim language verbatim and asserts that Apple does not infringe each claim element thereby obscuring any non-infringement arguments it may now have or later advance.  To the extent Apple later explains why it does not literally infringe this element, Samsung reserves the right to provide additional analysis why Apple would also infringe under the doctrine of equivalents. |