QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S PARTIAL OPPOSITION TO APPLE INC.'S MOTION FOR LEAVE TO AMEND ITS DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS**<br><br>Date:  June 25, 2013<br>Time:  10:00 a.m.<br>Place: Courtroom 5<br>Judge: Honorable Paul S. Grewal |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

I.    The Court Should Deny Apple's Motion to Add New Products to the Case ........................ 4

    A.    Apple Is Judicially Estopped From Seeking to Add New Products .......................... 4

    B.    Apple's Motion Conflicts With Judge Koh's Requirements to Narrow the Case ................................................................................................................... 5

    C.    Should the Court Allow Apple's Proposed Addition of the Galaxy S4 Product Line to the Case, It Would Require Extensive Additional Discovery That is Impossible in the Five Weeks of Fact Discovery Remaining ...................... 6

        1.    Apple's Amendment Will Require Massive Additional Discovery .............. 6

        2.    Samsung Will Have Little Time to Develop Its Defenses ........................... 7

II.    Apple's Proposed "Amendments" to Its Contentions for the '604 and '959 Patents Are An Improper Last-Minute Rewrite of Apple's Contentions, Motivated By Apple's New And Unsupported Definition of "Heuristic" ................................................... 8

    A.    Apple's Proposed Amendments Depend on a New Definition of "Heuristic" ......... 9

    B.    Apple's New Contentions Are Grossly Untimely Under the Local Rules .............. 10

    C.    Samsung Will Suffer Undue Prejudice if the Court Grants Apple's Motion .......... 14

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

### Cases

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*,
  No. 05-3117, 2007 WL 2221029 (N.D. Cal. July 30, 2007) ........................................................ 8

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  695 F.3d 1370 (Fed. Cir. 2012) ............................................................................................. 3, 8

*Atmel Corp. v. Info. Storage Devices, Inc.*,
  No. 95-1987, 1998 WL 775115 (N.D. Cal. Nov. 5, 1998) ........................................................ 11

*Avocent Redmond Corp. v. Rose Elecs.*,
  No. 06-1711, 2012 WL 4903278 (W.D. Wash. July 6, 2012) .................................................. 14

*Baughman v. Walt Disney World Co.*,
  685 F.3d 1131 (9th Cir. 2012) .................................................................................................... 5

*Dynetix Design Solutions Inc. v. Synopsys Inc.*,
  No. 11-5973, 2012 WL 6019898 (N.D. Cal. Dec. 3, 2012) ...................................................... 13

*Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co., Ltd.*,
  308 F. Supp. 2d 1106 (N.D. Cal. 2004) ............................................................................. 11, 14

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .................................................................................................................... 5

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ........................................................................................... 11, 13

*White v. Dunbar*,
  119 U.S. 47 (1886) .................................................................................................................... 15

### Rules

Patent Local Rule 3-6 ................................................................................................... 4, 10, 11

# INTRODUCTION

Most of the proposed contentions Apple seeks leave to file appear to add detail and evidence to Apple's infringement contentions, and while Samsung is still evaluating that evidence, Samsung does not object to those proposed amendments. In addition to these amendments, however, Apple also seeks to amend its infringement contentions in two impermissible ways.

First, mere weeks before the close of fact discovery and after the Court ordered the parties to reduce the number of accused products, Apple seeks to *add* allegations regarding *new* products: Samsung's Galaxy S4 line. Should the Court allow Apple to add allegations regarding the Galaxy S4 products, Samsung would suffer severe prejudice. Among many other things, Samsung would have only days to develop its defenses to these allegations and to provide discovery showing its non-infringement. The Local Rules exist precisely to avoid this situation. Indeed, in the previous action between Apple and Samsung, Apple opposed Samsung's request, at the same point in the calendar, to add the newly introduced iPhone 4S. In so doing, Apple argued that Samsung's amendment would require Apple "to develop its defenses to Samsung's new infringement claims against the iPhone 4S in short order (four weeks), and to its great prejudice." (No. 11-1846, Dkt. 713 at 6.) The Court agreed with Apple and denied Samsung's motion to amend. (No. 11-1846, Dkt. 836.) The rules have not changed: just as Apple insisted in the prior case, Apple cannot disrupt this case by adding the Galaxy S4 at this late date.

Second, the Court should deny Apple's attempt to devise, well past the eleventh hour, a new theory of infringement for the '604 and '959 patents. Apple's proposed "amendments" for those patents depend on a wholesale change to its underlying theory, based on its new definition of "heuristic" search – one focused on *where* a program searches, rather than *how* it searches. Apple tenders several justifications for this last-minute shift, but each fails.

Apple asserts that its new theory responds to the Federal Circuit's October 2012 decision reversing this Court's grant of a preliminary injunction. As even Apple must admit, however, the Federal Circuit's October 2012 decision issued *in October 2012* – more than seven months ago. Apple cannot credibly claim diligence in such a tardy response.

Apple tries to blame its delay on its asserted need to review source code underlying each accused "module" in every Samsung device, based on the patents' requirement of a "plurality" of infringing "modules." But Apple's proposed new contentions belie Apple's own argument, by accusing many "modules" for which Apple *even today has no source code*. Many of the "modules" Apple accuses are applications developed by non-parties, such as Amazon's "Kindle" application and Verizon's "Verizon Videos" application. These non-parties do not send the source code for these applications to Samsung; they send Samsung only the compiled executable version of this software. Samsung made this executable software available to Apple, and Apple has long known that Samsung has no source code for these applications. Yet Apple did not subpoena these non-parties for the source code underlying these accused "modules." Despite this, Apple's contentions still accuse these and other "modules" from non-parties – "modules" for which Apple did not and could not have reviewed source code. Apple cannot claim it *needed* source code to accuse each "module" under its new theory, and at the same time, use that same theory to accuse "modules" developed by non-parties for which *Apple has no source code*.

If the Court allows Apple's new theory, Samsung must revisit not only non-infringement but also invalidity, as Apple's new definition of "heuristic" implicates not only Apple's infringement arguments, but also Samsung's anticipation and obviousness prior art. By the time this Motion is heard, there will be only 13 days remaining in fact discovery. With such little time, Samsung should not be forced to re-review the voluminous prior art, to re-review all code for the accused features, and to craft new invalidity and non-infringement arguments – all while navigating the myriad of depositions at the close of discovery. Under those circumstances, Samsung could not reasonably find the necessary documents or craft the correct defenses to defend against Apple's new claims. Apple's attempt at salvaging the '604 and '959 patents is untimely, unjustified, and unduly prejudicial; the Court should deny it.

## **BACKGROUND**

The Case Schedule: Apple commenced this action on February 8, 2012. (Dkt. 1.) As required by the Court's Case Management Order, the parties served disclosures of asserted claims

1  and infringement contentions on June 15, 2012.  (Dkt. 160.)  Fact discovery will close in little over
2  a month and expert reports are due on July 26 and August 16.  (Dkt. 160.)
3       The Parties' Previous Amendments to Infringement Contentions:  Approximately eight
4  months ago, on October 1, 2012, Samsung filed a Motion for Leave to Supplement its
5  Infringement Contentions to add the then newly-released iPhone 5.  (Dkt. 267.)  On October 5,
6  2012, Apple filed a Motion for Leave to Amend its Disclosure of Asserted Claims and
7  Infringement Contentions seeking leave to add, *inter alia*, products and operating systems released
8  after Apple's original contentions.  (Dkt. 269.)
9       The Court heard argument on those motions on November 6, 2012.  During oral argument,
10 Apple informed the Court that, in light of the effect it would have on the litigation, Apple **opposed**
11 the addition of any new products beyond those already accused by either Apple or Samsung,
12 stating that, "barring further guidance from this court, our view would be now that the claim
13 construction is underway, ***we don't think it would be appropriate to continue to add additional***
14 ***products*** as well."  (Thakur Decl. Ex. 1, Nov. 6, 2012 Hr'g Tr. at 6:2-5 (emphasis added).)  On
15 November 15, 2012, the Court granted the motions to amend, noting that there was "ample time
16 left on the pretrial clock" for discovery.  (Dkt. 302, at 5.)
17      The Federal Circuit's Decision:  On October 11, 2012, the Federal Circuit reversed and
18 remanded the district court's order granting-in-part Apple's motion for a preliminary injunction.
19 *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370 (Fed. Cir. 2012).  The Federal Circuit's
20 October 11 claim construction unambiguously rejected Apple's proposed construction of "each" in
21 claim 6 of the '604 patent.  On February 7, 2013, the Federal Circuit issued the formal mandate in
22 accordance with the judgment of October 11, 2012.  (No. 12-1507, Dkt. 114.)
23      The Court's Case Management Orders Requiring That Issues Be Narrowed:  On April 24,
24 2013, the Court issued a Case Management Order requiring that "[b]y May 8, 2013, each side
25 shall file a Case Narrowing Statement with a revised list of no more than 22 accused products."
26 (Dkt. 471, at 1.)  The April 24 Case Management Order also sets forth a detailed schedule for
27 narrowing the case, including requiring both parties to drop 3 patents each by September 2, 2013.
28

-3- Case No. 12-CV-00630-LHK (PSG)
SAMSUNG'S PARTIAL OPP. TO APPLE'S MOT. FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS

1  The parties must also reduce the number of accused products to 18 per side by June 28, 2013, to
2  15 per side by September 2, 2013, and to 10 per side by February 6, 2014.  (*Id.* at 2.)
3         <u>Samsung's Release of the New Galaxy S4 Phone</u>:  Samsung recently launched its new
4  Galaxy S4.  The Galaxy S4 incorporates a number of new features, including touch free
5  interaction (called "Air Gesture"); "Group Play" that allows up to 8 phones to be connected
6  wirelessly to play games and share music and photos; and a large "stunning 5-inch Full HD Super
7  AMOLED™ display."  (*See* Thakur Decl. Ex. 2.)

## ARGUMENT

9         Patent Local Rule 3-6 allows the parties to amend their infringement contentions only "by
10 order of the Court upon a timely showing of good cause."  Pat L.R. 3-6.  The text of the local rule
11 provides a list of circumstances which, absent prejudice to the non-moving party, may support a
12 finding of good cause, including "(a) [a] claim construction by the Court different from that
13 proposed by the party seeking amendment; (b) [r]ecent discovery of material, prior art despite
14 earlier diligent search; and (c) [r]ecent discovery of nonpublic information about the Accused
15 Instrumentality which was not discovered, despite diligent efforts, before the service of the
16 Infringement Contentions."  *Id.*  None are present here, and in any event, the prejudice to Samsung
17 from Apple's belated amendments would be overwhelming.  Apple's motion should be denied.[1]

18 **I.     The Court Should Deny Apple's Motion to Add New Products to the Case**

19        **A.     Apple Is Judicially Estopped From Seeking to Add New Products**

20        The Court can and should deny Apple's motion to add new products to the case, which
21 Apple is judicially estopped from bringing.  In this Court's prior case between Apple and
22 Samsung, with six weeks left in fact discovery, Samsung moved to amend its infringement
23 contentions to add allegations regarding the iPhone 4S.  (No. 11-1846, Dkt. 658.)  Apple opposed,
24 and the Court denied Samsung's motion, noting that it had "reservations about adding a new

---

[1] In particular, Samsung opposes the addition of Exhibits B-23, C-23, D-20, E-23, and H-20 (exhibits focused exclusively on the Galaxy S4); Exhibits D1-D20 (all exhibits for the '604 patent); and Exhibits H1-H20 (all exhibits for the '959 patent).  Samsung does not oppose addition of the remaining new charts that Apple has proposed.

product at this late date . . ." and that it was "concerned that adding a new device at this point will disrupt the current case schedule." (No. 11-1846, Dkt. 836, at 11.) "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

Here, Apple opposed the addition of allegations regarding the iPhone 4S on the grounds that six weeks of fact discovery was too late to add newly released products. (No. 11-1846, Dkt. 713.) Having succeeded there, Apple cannot argue here that six weeks of fact discovery provides plenty of time to add newly released products, just because its interests have changed. *Baughman*, 685 F.3d at 1133. Indeed, the very purpose of judicial estoppel "is to protect the integrity of the judicial process by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 749-750).

**B.      Apple's Motion Conflicts With Judge Koh's Requirements to Narrow the Case**

Judge Koh has told the parties in no uncertain terms that this case is far too big and requires substantial narrowing. In fact, Judge Koh has issued multiple orders requiring the parties to drop patents, reduce the number of asserted claims and prior art, and most importantly, to reduce the number of accused products. (Dkts. 394, 471.) These orders recognize that the case is unmanageable at this size, will be impossible for any jury to comprehend, and must be streamlined. As Judge Koh recently remarked, "the number of products does increase the burden on the Court and on the parties and on the jury." (Thakur Decl. Ex. 4, Apr. 24, 2013 Hr'g Tr. at 14:18-21.)

Recognizing its failure to follow Judge Koh's orders, Apple offers to "substitute the Galaxy S4 for one of the twenty-two currently identified accused products." (Dkt. 525, at 9.) But this ignores that Samsung makes multiple products within the Galaxy S4 product line, each customized to carrier specifications. Apple admits that some carrier-specified products that will be sold under the Galaxy S4 product name *have not even been finalized or released*, and Apple's motion acknowledges that Apple asks for leave to add products that *do not yet exist* based on its

speculation about how those products might work.  (*See* Dkt. 525, at 2 n.2.)  Apple's self-serving offer would add an entire product *line* to the case, including unreleased products, under the rubric of adding a single "product."  This is exactly why the issue of what constitutes an accused product, as opposed to a product line, is currently before Judge Koh.  (Dkt. 539.)  The Court should decline Apple's invitation to add the Galaxy S4 product *line* as a single "product" here.

### C. Should the Court Allow Apple's Proposed Addition of the Galaxy S4 Product Line to the Case, It Would Require Extensive Additional Discovery That is Impossible in the Five Weeks of Fact Discovery Remaining

Adding the Galaxy S4 product line changes the scope of the litigation, re-opens discovery that has already taken place, and places an unjustifiable burden on Samsung to collect and produce documents, source code, and witnesses in an impossible time frame.  Apple's unsupportable contention, that adding the Galaxy S4 product line weeks before the close of discovery would not place a burden on Samsung (Dkt. 525, at 9), is demonstrably false.

#### 1. Apple's Amendment Will Require Massive Additional Discovery

Apple concedes, as it must, that additional discovery will be necessary if the Galaxy S4 is added to this case. (*See* Dkt. 525, at 9 (acknowledging that Apple would seek new documents regarding the Galaxy S4).)  Such discovery will be substantial.

With Apple seeking to assert five patents against Galaxy S4 products sold by four different carriers, collecting documents regarding the related functionality alone would require an enormous effort.  Source code would also need to be collected and made available for inspection.  Samsung would further need to supplement its discovery responses to address the Galaxy S4.  Apple has served several interrogatories concerning the accused products, including at least Interrogatory Nos. 21 (code names), 24 (non-infringement contentions), 30 (sales/revenue), and 41 (source code versions).  These interrogatories would require substantial effort to update for the Galaxy S4, including but not limited to identifying all non-infringement positions for these new devices.  The burden – especially in the last few weeks of discovery where the parties are engaged in numerous depositions across the globe – would be enormous.

Moreover, witnesses for each accused functionality would need to be investigated, identified, and deposed.  Apple has already deposed several Samsung fact witnesses and will

1   depose more in the next few weeks, many of them in Korea.  If the Galaxy S4 line is added to the
2   case, some of those witnesses will likely need to be re-deposed.  There is no way to conduct these
3   depositions given the already-crowded discovery schedule.  Indeed, in the prior case Apple argued
4   that if a new product were added "the parties' and the Court's activities during the final month of
5   discovery would be busier still." (No. 11-1846, Dkt. 713, at 6.)  In this case, Apple ignores the
6   fact that it alone has requested nearly 40 depositions that remain to be taken in the next five
7   weeks, across three continents, and that between the two parties, at least 80 depositions will be
8   taken in the coming weeks.
9       Although Apple alleges that the Galaxy S4 "infringes five of Apple's asserted patents in
10  the same ways as Samsung's already accused products," such allegations are offered without the
11  discovery Apple now seeks.  Apple also includes Galaxy S4 products not yet released.  For
12  instance, Apple seeks leave to add the Galaxy S4 product that will be sold by Verizon, even
13  though it does not yet exist.  Apple's justification is that it "expects" the infringement analysis will
14  be the same.  (*See* Dkt. 525, at 2 n.2.)  But Samsung's products, including the Galaxy S4, function
15  differently across different carriers (*see* Dkt. 513), suggesting that Apple's "expectation" is likely
16  false, at least for some of the asserted patents.  Once Apple actually reviews the relevant
17  documents and source code – a process that took almost a year for the other accused products –
18  Apple may change, drop, or even try to add new infringement theories at literally the last minute.

19              **2.      Samsung Will Have Little Time to Develop Its Defenses**

20      Adding the Galaxy S4 in the last weeks of discovery also substantively prejudices
21  Samsung by preventing it from adequately developing its defenses.  As just one example, the
22  question of what drives consumer demand for products is relevant to both Apple's claim for lost
23  profits and injunctive relief.  Yet unlike the other devices at issue in the case, which have been in
24  the market for a significant time, the Galaxy S4 will be in the market for a mere two months
25  before discovery closes.  Market research, sales results, consumer feedback and internal analyses
26  will still be in their infancy (or non-existent), leaving Samsung with an undeveloped record about
27  what factors have influenced consumers in their purchase.  Proceeding on the Galaxy S4 would
28  effectively deprive Samsung of its ability to raise one of its core defenses affecting lost profits and

Apple's request for injunctive relief. For this very reason, accused devices and products are set early in a case, such that each party is able to take discovery on a full record. As noted above, Apple already *admitted* that adding new products with six weeks left in discovery is prejudicial, necessitates discovery on core issues, and is impermissible. (No. 11-1846, Dkt. 836, at 11.)

Further, Samsung will have little time to search for and prepare additional invalidity contentions based on any new claim constructions that motivate Apple's new allegations against the S4. Samsung will similarly be unable to address potential claim construction inconsistencies or disputes raised by any new claim constructions motivating Apple's new allegations. Again, Apple's assertion that its infringement theories are the same rings hollow and has yet to be tested in discovery, and Samsung will plainly be prejudiced by any deviations in Apple's approach. This is precisely why this Court requires infringement contentions at the beginning of discovery.

Allowing Apple's eleventh-hour request will either put Samsung in the unduly prejudicial position of trying to produce full discovery and prepare its defenses in just a few days, or would force an extension of case deadlines. Either result is unfairly prejudicial. *See Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. 05-3117, 2007 WL 2221029, at *2 (N.D. Cal. July 30, 2007) (finding prejudice where "because less than two months remain before the September 12, 2007 termination of fact discovery, the addition of new product would likely derail the case management schedule, require additional claim construction, and delay trial"). In a case of this importance, Samsung should be able to rely upon the schedule set for discovery.

**II.    Apple's Proposed "Amendments" to Its Contentions for the '604 and '959 Patents Are An Improper Last-Minute Rewrite of Apple's Contentions, Motivated By Apple's New And Unsupported Definition of "Heuristic"**

Apple's two asserted search-related patents are deeply troubled: they face significant problems for infringement and for validity.[2] In a last-minute attempt to save these patents, Apple

---

[2]   The Federal Circuit held that Apple had not established a likelihood of success on its infringement theory for the '604 patent, *Apple Inc. v. Samsung Elecs. Co., Ltd*., 695 F.3d at 1377-80, and since that time, the PTO has rejected all asserted claims of the '604 patent as invalid in a pending reexamination (Detailed Action, Reexamination No. 95/000,685 (B.P.A.I. Oct. 15, 2012)
    (footnote continued)

appears to offer a new theory of infringement based on a new definition of "heuristic" search: anything that searches in an "appropriate" manner is "heuristic," and any two "heuristics" are "unique" if they search different files. This is a significant departure from Apple's prior theory. It is not based on source code analysis.

Indeed, Apple cites *no source code* in support of the theory for many alleged "modules," instead simply saying that they employ a "heuristic" because they perform an "appropriate" query for whatever data they search. Apple could have advanced this tautology of an infringement theory long ago – yet Apple waited *seven months* after the Federal Circuit's rejection of Apple's prior infringement theory, and did not put Samsung on notice of this new theory until only a few weeks remained in discovery. The Local Rules do not allow this gamesmanship, and do not require Samsung to revisit its non-infringement and invalidity defenses in the few weeks that remain.

### A.     Apple's Proposed Amendments Depend on a New Definition of "Heuristic"

Apple and its experts previously contended that a "heuristic" search described *how* to search: specifically, the algorithm to employ. (Dkt. 221, at 21 ("Apple's expert Dr. Polish asserts that the Google Search Suggestions module utilizes the Google search engine to generate results, and that the Google search module employs a different, predetermined heuristic algorithm than the one employed by the People or Browser modules.").) Judge Koh agreed that for the term "heuristic," the key question was *how* search occurred. (*Id.* at 20 ("[T]he sheer fact that the Browser module 'search[es] this list for a match' reveals nothing about *how* it searches, i.e., whether it searches heuristically or not.").) Thus, identifying a "heuristic" depended on the *specific algorithm* used to undertake the search. Apple's new contentions, however, are very different: they allege that heuristic search turns on where search occurs.

According to Apple's new contentions, it is "heuristic" simply to "formulate a query appropriate" for a particular set of files. The specific algorithm no longer matters: any software

---

at page 2), and has closed prosecution in that reexamination. (Action Closing Prosecution, Reexamination No. 95/000,685 (B.P.A.I. Mar. 5, 2013).)

that "formulates a query appropriate for searching" a particular collection of files is now allegedly "heuristic."  *See, e.g.*, Proposed Exhibit D-14, '604 Patent:  Samsung Galaxy S3 Infringement Chart (describing Apple's new theory as to why various software allegedly "employs a different, predetermined heuristic algorithm" for search):

- "The Voicemail heuristic module takes the information descriptor and formulates a query appropriate for searching a user's voicemails."  (*id.* at 14);
- "The Amazon heuristic module takes the information descriptor and formulates queries appropriate for searching products and services available from Amazon, but not other online vendors."  (*id.* at 12);
- "The Play Music heuristic module takes the information descriptor and formulates a query appropriate for searching a user's Play Store Music library. . . . This music library is separate and distinct from the music libraries searched by the Music Player and Music Hub heuristic modules."  (*id.* at 14.)

Because it is impossible to search an area of information, such as "products and services available from Amazon," without "formulat[ing] queries appropriate" for doing so, Apple's new contentions effectively render meaningless the word "heuristic."

This new theory turns "unique" "heuristic" into a tautology – any search is "heuristic" if Apple considers that search "appropriate," and every heuristic is "unique" as long as it targets different data.  Apple's new theory is that searching two different sets of data in any manner Apple deems "appropriate" for that data – like an "appropriate" search for voicemails, or an "appropriate" search for Amazon listings – inherently involves two different unique "heuristics."  Likewise, searching two different sets of music files – even though both are music – must be two different heuristic searches if each "music library is separate and distinct" from other music libraries searched in an "appropriate" way by other modules.  (*Id*. at 12.)  Apple argues that it must "conform its contentions to the Federal Circuit's claim construction."  (Dkt. 525, at 1.)  But Apple's new theory about the term "heuristic" is not responsive to the Federal Circuit's claim construction of the term "each."  And even if it were, Apple should have responded to this ruling last fall, when the Court issued it.

### B. Apple's New Contentions Are Grossly Untimely Under the Local Rules

The Local Rules require "a timely showing of good cause."  Pat L.R. 3-6.  Apple attempts to justify its late change on two grounds, neither of which succeeds.  First, Apple argues that

"[b]ecause the Federal Circuit's mandate, which issued on February 7, 2013, put into effect a ruling different from the one advocated by Apple, Apple seeks to clarify how the accused Samsung devices infringe under the Federal Circuit's construction." (Dkt. 525, at 8.) But Apple did not need the mandate to review the October 11, 2012 decision or consider its impact on Apple's infringement theory. Nor did Apple request that this Court construe any disputed claim terms from the '604 or '959 patents during claim construction proceedings. (Dkt. 356.)

Patent Local Rule 3-6 requires that a plaintiff disclose its infringement theory as early as possible, and that amendments then happen earlier than later; the Local Rules are designed to "mak[e] it difficult subsequently to revise claim charts through eleventh hour 'discovery' of facts. Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction [and] ensure that litigants put all their cards on the table up front." *Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co., Ltd.*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004) (*quoting Atmel Corp. v. Info. Storage Devices, Inc.*, No. 95-1987, 1998 WL 775115, at *2-3 (N.D. Cal. Nov. 5, 1998)); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-1366 (Fed. Cir. 2006) ("The local patent rules in the Northern District of California are designed to . . . requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery."). If Apple waited until the mandate technically issued before considering the import of the Federal Circuit's decision, it did so at its own peril. The Local Rules required Apple to act diligently upon *receiving* the Federal Circuit decision. They do not excuse Apple's seven-month delay in providing Samsung any insight into Apple's new theories of infringement.[3]

---

[3] Tellingly, Apple never even attempts to justify its proposed amendments to claim 24 of the '959 patent. Apple argues that because "the claim term 'each' [] appears in *claim 6* of the '604 patent and also *claim 1* of the '959 patent," its amendments to claim 1 of the '959 patent were justified by the Federal Circuit's decision. (Dkt. 525, at 2 (emphases added).) But the word
   (footnote continued)

Knowing this, Apple seeks to justify its belated contentions by arguing that "Google . . . did not make available the bulk of its source code until March 31, 2013, and did not complete its production until May 13, 2013." (Dkt. 525, at 3-4.)  For two reasons, this argument also fails.  First, although Apple claims that it could not advance its new theory without reviewing source code, this cannot be true:  Apple submits claims regarding many accused "modules" for which it analyzed no source code, simply stating that the "modules" perform an "appropriate" search:

- Exhibit II 4G:  "The Yelp heuristic module takes the information descriptor and formulates a query *appropriate* for searching shopping or business related information from Yelp."

- Stratosphere:  "The Amazon Kindle heuristic module takes the information descriptor and formulates queries *appropriate* for searching reading materials available in a user's Kindle library for reading using the Amazon Kindle application. . . .  The Slacker heuristic module takes the information descriptor and formulates a query *appropriate* for searching a user's music on the Slacker servers in addition to Slacker's various music stations."

- Illusion:  "The Verizon Video heuristic module takes the information descriptor and formulates a query *appropriate* for searching a user's videos in the Verizon Video Store database."

- S3:  "The Amazon heuristic module takes the information descriptor and formulates queries *appropriate* for searching products and services available from Amazon, but not other online vendors."

- Galaxy Note II:  "The YP Mobile heuristic module takes the information descriptor and formulates a query *appropriate* for searching addresses, phone numbers and other directory related information from Yellow Pages."

- S4:  "The Sprint Zone heuristic module takes the information descriptor and formulates a query *appropriate* for searching Sprint-related content on the device. . . .  The TripAdvisor heuristic module takes the information descriptor and formulates a query *appropriate* for searching travel related information from Trip Advisor."

(*See* Proposed Exhibits D5, D18, D17, D14, D7, and D20, '604 Patent.)  Apple's assertion that it needed to review source code before it could disclose its new theory is unsupportable because Apple *never bothered to obtain or review the source code for these accused "modules."*

These "modules" are written and maintained by third parties such as Amazon and Verizon, who send Samsung compiled executable files to include in its accused devices.  Apple could have subpoenaed these non-parties to obtain the underlying source code for these accused "modules" –

---

"each" never appears in independent claim 24 of the '959 patent, or in dependent claim 27 – yet Apple's theory of infringement has changed for these two claims as well, for reasons unexplained.

1  as it subpoenaed non-party Google – but did not do so.  Instead, Apple simply identified these
2  "modules" as using "heuristics" based on the fact that they could perform a search that Apple
3  considered "appropriate."  Thus Apple itself admits that its current theory requires no source code
4  analysis whatsoever.

5        This pulls back the curtain on Apple's claims of diligence – source code analysis is simply
6  the *pretext* for Apple's last-minute amendment.  Apple's real allegation is that any search
7  "appropriate" for a given set of data is somehow a "heuristic," and Apple was free to make that
8  allegation without source code – exactly as it has done for a variety of modules, including third-
9  party modules for which Apple has never even pursued source code.  Put simply, if Apple could
10 accuse these applications as "heuristic modules" without source code, diligence required that they
11 do so immediately after the Federal Circuit issued its opinion – not lie in wait for months, until
12 only a few weeks remain in discovery.  Apple's charts admit that Apple did not need source code
13 to advance its current infringement theory, leaving Apple no basis for waiting seven months since
14 the Federal Circuit's order issued before disclosing new theories and seeking leave to amend.  On
15 these facts, Apple's proposed amendment should be denied for lack of diligence.  *See, e.g.*, *O2*
16 *Micro*, 467 F.3d at 1367 (upholding denial of leave to amend where plaintiff "waited almost three
17 months . . . to serve its proposed amended contentions and two more weeks to formally move to
18 amend"); *Dynetix Design Solutions Inc. v. Synopsys Inc.*, No. 11-5973, 2012 WL 6019898, at *2
19 (N.D. Cal. Dec. 3, 2012) (denying leave to amend infringement contentions seven months after
20 service of original contentions for lack of diligence).

21       Apple next argues that Google did not make certain source code available until recently.
22 (Dkt. 525, at 8.)  This is a non-starter.  Samsung gave Apple access to Samsung code for the then-
23 accused devices by November 2012.  (Thakur Decl. Ex. 3.)  Even earlier, on May 3, 2012, non-
24 party Google produced the highly confidential source code for the Ice Cream Sandwich version of
25 the Samsung Galaxy Nexus.  (Furman Decl. Ex. 9, at 1.)  And by August 24, 2012, Google
26 produced source code for the later-released Jelly Bean version of the Galaxy Nexus.  (*Id.*)  This
27 source code included both the Android framework and applications appearing on the accused
28 versions of the Samsung Galaxy Nexus.  (Dkt. 418-5, Ex. 6.)  Yet Apple did not inspect Google's

1  source code *even once* in the *five months* between August 24, 2012 and January 31, 2013.  (Dkt.
2  445-4.)  Having failed to make a single inspection of Google's source code between August 24,
3  2012, when Google supplemented its source code production, and January 31, 2013, when the
4  Federal Circuit denied Apple's petition for rehearing *en banc*, Apple cannot demonstrate
5  diligence.
6  　　　　　Where they rely on source code at all, Apple's amended contentions do not rely on
7  recently-produced code – they rely on the same code that Apple had in August 2012, when Google
8  produced the Jelly Bean version of the Galaxy Nexus.  (Furman Decl. Ex. 9, at 1.)  In fact, Apple
9  asserts there *are no differences* between the source code Google produced by August 2012 and the
10 code Google produced in May 2013.  *See, e.g.*, Proposed Exhibit D-14, '604 Patent:  Samsung
11 Galaxy S3 Infringement Chart at 1 n.1 ("the infringing functionality outlined in this document
12 does not vary across any accused version of the Galaxy S III or their respective carriers"); at 2 n.4
13 ("'Google Now' includes the Google Search box which functions identically to the Quick Search
14 Box in all relevant respects for purposes of this document as shown in the following source code
15 files") and 12 n.20 ("All accused versions of the Galaxy S III implement the same functionality").
16 Apple's contention that all source code produced since May 2012 is the same for purposes of
17 infringement is conclusive.  If that is the case, Apple cannot justify changing its theory at this late
18 date.  *See, e.g.*, *Realtek*, 308 F. Supp. 2d at 1107; *Avocent Redmond Corp. v. Rose Elecs.*, No. 06-
19 1711, 2012 WL 4903278, at *2-3 (W.D. Wash. July 6, 2012) (finding lack of diligence and risk of
20 unfair prejudice where "plaintiff's unilateral decision to require responses to all outstanding
21 discovery before it would deign to amend its contentions [ ] turns the normal case management
22 paradigm on its head").
23 　　　　　**C.**　　　　**Samsung Will Suffer Undue Prejudice if the Court Grants Apple's Motion**
24 　　　　　Samsung will not have sufficient time to respond to Apple's belated and improper
25 amendments, or perhaps even time to analyze all of the ways in which Apple has completely
26 changed its theories of infringement, before the close of discovery or before the many other
27 deadlines the Court set to narrow this case for trial, including the impending deadline to
28 dramatically reduce the number of prior art theories at issue.  (Dkt. 471.)  Allowing Apple to

introduce this new theory of infringement in the last weeks of discovery will unduly prejudice Samsung by preventing it from adequately developing its defenses.

The prejudice to Samsung's noninfringement defense is obvious: Samsung has had twelve months to analyze and respond to Apple's prior infringement theory, and yet Samsung would have only a few weeks to analyze Apple's new theory. Invalidity defenses would likewise be substantially prejudiced. Apple's new infringement theory is based on new, broad constructions of key terms, including "heuristic." Apple cannot treat the '604 patent as a "nose of wax," twisting it one way for invalidity and then another for infringement. *White v. Dunbar*, 119 U.S. 47, 51 (1886). If the claims are as broad as Apple now proposes – and if a "heuristic" is simply a tautology requiring an "appropriate" search – Samsung must have the opportunity to compare Apple's new infringement theory to the prior art, identify prior art systems that also do an "appropriate" search on several different collections of data, and submit revised invalidity contentions that apply Apple's new apparent claim construction to the prior art. There is no time for Samsung to complete this undertaking on the current case schedule. Apple's eleventh-hour request will put Samsung in the impossible position of trying to prepare its defenses in just a few days. Requiring that rushed preparation of new invalidity defenses would be unfairly prejudicial, especially where it is the result of Apple's unjustified delay.

Because Samsung could only respond to Apple's new theories of claim scope by substantially revisiting its invalidity investigation and its non-infringement analysis at this late stage, Apple's motion should be denied. Indeed, the parties are required to shortly *narrow* the number of prior art references, which is directly affected by Apple's proposed amendments. (Dkt. 471.) Apple's own arguments summarize the issue succinctly: just as Apple claimed it would be unduly prejudicial to make Apple "develop its defenses to [] new [contentions] in short order (four weeks), ***and to its great prejudice***," (No. 11-1846, Dkt. 713, at 6 (emphasis added)), Apple cannot now impose that same burden on Samsung – particularly not after sitting on the Federal Circuit's opinion for more than seven months.

# CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court deny Apple's May 21, 2013 Motion for Leave to Amend its Disclosure of Asserted Claims & Infringement Contentions.

DATED: June 4, 2013            QUINN EMANUEL URQUHART &
                               SULLIVAN, LLP


                               By */s/ Victoria F. Maroulis*
                                   Charles K. Verhoeven
                                   Kevin P.B. Johnson
                                   Victoria F. Maroulis
                                   William C. Price
                                   Michael L. Fazio

                                   Attorneys for
                                   SAMSUNG ELECTRONICS CO., LTD.,
                                   SAMSUNG ELECTRONICS AMERICA, INC.,
                                   and SAMSUNG TELECOMMUNICATIONS
                                   AMERICA, LLC