| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552) <br> jkrevitt@gibsondunn.com <br> H. MARK LYON (CA SBN 162061) <br> mlyon@gibsondunn.com <br> GIBSON, DUNN & CRUTCHER LLP <br> 1881 Page Mill Road <br> Palo Alto, California  94304-1211 <br> Telephone:  (650) 849-5300 <br> Facsimile:  (650) 849-5333 | WILLIAM F. LEE (*pro hac vice*) <br> william.lee@wilmerhale.com <br> WILMER CUTLER PICKERING <br>   HALE AND DORR LLP <br> 60 State Street <br> Boston, Massachusetts  02109 <br> Telephone:  (617) 526-6000 <br> Facsimile:  (617) 526-5000 |
| MICHAEL A. JACOBS (CA SBN 111664) <br> mjacobs@mofo.com <br> RICHARD S.J. HUNG (CA SBN 197425) <br> rhung@mofo.com <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, California  94105-2482 <br> Telephone:  (415) 268-7000 <br> Facsimile:  (415) 268-7522 | MARK D. SELWYN (CA SBN 244180) <br> mark.selwyn@wilmerhale.com <br> WILMER CUTLER PICKERING <br>   HALE AND DORR LLP <br> 950 Page Mill Road <br> Palo Alto, California  94304 <br> Telephone:  (650) 858-6000 <br> Facsimile:  (650) 858-6100 |

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 12-cv-00630 (LHK) <br><br> **APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION TO AMEND THE CASE MANAGEMENT ORDER AND FOR LEAVE TO AMEND ITS ANSWER TO APPLE'S COUNTERCLAIMS IN REPLY** <br><br> **PUBLIC REDACTED VERSION** <br><br> Date:   July 11, 2013 <br> Time:  1:30 p.m. <br> Place:  Courtroom 8, 4th Floor <br> Judge:  Hon. Lucy H. Koh |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................1

    A. Summary of Apple's Counterclaims .........................................................................1

    B. Summary of the Prior *Apple I* Case .........................................................................2

    C. Summary of License Negotiations ............................................................................4

III. ARGUMENT .........................................................................................................................5

    A. Samsung Cannot Establish Good Cause Under FRCP 16 For Its Untimely Proposed Amendment ................................................................................................5

        1. Legal Standard ..............................................................................................5

        2. Samsung Fails To Establish "Good Cause" For Its Eight-Month Delay .........5

    B. Samsung's Motion To Amend Should Be Denied Under Rule 15 Because Its Defense Is Futile ........................................................................................................8

        1. Legal Standard ..............................................................................................8

        2. Apple's Breach Of Contract Claim Based on Samsung's Non-Disclosure Of The '087 And '596 Patents Is Not Precluded By Apple I ..............................10

        3. Apple's Breach of Contract Claim Based on Samsung's Violation of Its FRAND Licensing Obligation Is Not Precluded By Apple I ........................10

        4. Apple's Antitrust Claims Are Not Precluded by Apple I ..............................12

IV. CONCLUSION ....................................................................................................................13

CERTIFICATE OF SERVICE .....................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Aldan v. World Corp.*,
   267 F.R.D. 346 (N.M.I. 2010) ...................................................................................................7

*Apple Inc. v. Samsung Electronics Corp.*,
   11-cv-1846 (N.D. Cal.) ("*Apple I*") ................................................................................. passim

*California v. Chevron Corp.*,
   872 F.2d 1410 (9th Cir. 1989) ...............................................................................................9, 11

*Central Delta Water Agency v. U.S.*,
   306 F.3d 938 (9th Cir. 2002) ....................................................................................................9

*CF v. Capistrano Unified Sch. Dist.*,
   654 F.3d 975, 984 (9th Cir. 2011) ("*Capistrano II*") ..................................................................6

*CF v. Capistrano Unified Sch. Dist.*,
   656 F. Supp. 2d 1190 (C.D. Cal. 2009) ("*Capistrano I*") ...........................................................6

*Chao v. A-One Med. Servs., Inc.*,
   346 F.3d 908 (9th Cir. 2003) ....................................................................................................9

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) ..................................................................................................5

*County of Santa Clara v. Astra USA, Inc.*,
   2009 WL 1765811 (N.D. Cal. June 22, 2009) ..........................................................................7

*Harkins Amusement Enters., Inc. v. Harry Nace Co.*,
   890 F.2d 181 (9th Cir. 1989) ....................................................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   Nos. M 07–1827 SI, C 10–1064 SI, 2012 WL 4858836 (N.D. Cal. Oct. 11, 2012) ................12

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
   -- F.3d --, 2013 WL 1449919 (9th Cir. 2013) ..........................................................................5

*Kamilche Co. v. U.S.*,
   53 F.3d 1059 (9th Cir. 1996) ....................................................................................................9

*Klamath-Lake Pharm. Assoc. v. Klamath Med. Serv. Bureau*,
   701 F.2d 1276 (9th Cir. 1983) ..................................................................................................8

*Kourtis v. Cameron*,
   419 F.3d 989 (9th Cir. 2005) ....................................................................................................9

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322 (1955) ......................................................................................................... 9

*Mpoyo v. Litton Electro-Optical Systems*,
  430 F.3d 985 (9th Cir. 2005) ......................................................................................... 8, 9

*Osakan v. Apple American Group*,
  2010 WL 1838701 (N.D. Cal. May 5, 2010) ................................................................... 7

*Resolution Trust Corp. v. Keating*,
  186 F.3d 1110 (9th Cir. 1999) ......................................................................................... 9

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ....................................................................................... 9, 11

*Sidhu v. Flecto Co.*,
  279 F.3d 896 (9th Cir. 2002) ........................................................................................... 8

*Taco Bell Corp. v. TBWA Chiat/Day Inc.*,
  552 F.3d 1137 (9th Cir. 2009) ....................................................................................... 12

*Villa v. Brass Eagle, LLC*,
  2007 WL 446349 (D. Ariz. February 7, 2007) ................................................................ 8

**RULES**

Federal Rule of Civil Procedure 15(a)(2) ................................................................................ 5

Federal Rule of Civil Procedure 16 ......................................................................................... 1

Federal Rule of Civil Procedure 16(b) .................................................................................... 5

## I. INTRODUCTION

Samsung's motion to amend its answer to add a *res judicata* defense – filed eight months after the Court's deadline for pleading amendments, and only seven weeks before the close of fact discovery – should be denied for three reasons.  **First**, Samsung provides no explanation for its failure to include this defense in its amended answer filed on September 14, 2012, weeks *after* the jury verdict that forms the basis for its new defense.  **Second**, Samsung fails to demonstrate the "good cause" required by Federal Rule of Civil Procedure 16 to justify its grossly untimely amendment.  **Third**, Samsung's proposed *res judicata* defense is futile.  Apple's claims in this action arise from a different nucleus of operative fact from that in *Apple Inc. v. Samsung Electronics Corp.*, 11-cv-1846 (N.D. Cal.) ("*Apple I*") – this case ("*Apple II*") involves different patents, different standard-setting meetings, different enforcement actions by Samsung, and different technology markets, among other things.  Samsung's motion should be denied.

## II. FACTUAL BACKGROUND

### A. Summary of Apple's Counterclaims

In this action, Samsung seeks to enjoin Apple from selling products that interoperate with UMTS networks based on alleged infringement of two patents that Samsung has irrevocably committed to license on fair, reasonable, and non-discriminatory ("FRAND") terms: the '087 and '596 patents.  Samsung's Counterclaims, Dkt. 263 at ¶¶ 60, 68.  In response to Samsung's abusive enforcement of its purported patent rights, Apple counterclaimed, alleging, *inter alia*, that Samsung failed to disclose the '087 and '596 patents to the European Telecommunications Standards Institute ("ETSI") during the standard-setting process as required by the ETSI Intellectual Property Rights ("IPR") Policy (Apple's Counterclaims in Reply to Samsung's Counterclaims ("Counterclaims"), Dkt. 262 at ¶ 63), that Samsung breached its promise to license the '087 and '596 patents declared essential to UMTS on FRAND terms (*id.* at ¶ 55), and that its actions constitute monopolization of the technology markets in which the technologies purportedly covered by those patents compete (*id.* at ¶ 104).

Apple's breach of contract and antitrust claims arise from specific facts related to the standardization and enforcement of the '087 and '596 patents.  In particular, Apple has alleged in

detail that the inventors of the '087 and '596 patents participated in certain specific 3GPP meetings and submitted proposals related to their pending patent applications, but failed to disclose Samsung's IPR until long after their proposals were submitted and the standard was set. *Id.* at ¶ 63. Apple has similarly alleged in detail which alternative technologies to the '087 and '596 patents were available to 3GPP for consideration if Samsung had complied with its disclosure obligations. *Id.* at ¶ 64. Based on these technologies and the available alternatives, Apple has alleged that Samsung monopolized the "Autonomous Transmission Technology Market" and the "Scheduling Information Transmission Technology Market." *Id.* at ¶ 104. Samsung's conduct illegally excluded alternative technologies from the relevant markets.[1] Moreover, Samsung refused to license the '087 and '596 patents on FRAND terms and instead sought to exclude Apple from selling products that Samsung says infringes them. *Id.* at ¶ 55. None of the facts relevant to the disclosure and enforcement of the '087 and '596 patents, the technological alternatives to the '087 and '596 patents, or the technology markets in which the '087 and '596 patents compete, was contested in *Apple I*.

On May 2, 2012, the Court entered a Case Management Order setting August 31, 2012 as the deadline to amend pleadings. (Dkt. 160.) Apple timely amended its counterclaims in reply on August 31, 2012 (Dkt. 262), and Samsung timely filed its answer to those amended claims on September 14, 2012 (Dkt. 263). Although the jury verdict in the *Apple I* case had been entered weeks before Apple's amendment, Samsung's amended answer did not raise *res judicata* as a defense.

**B.      Summary of the Prior *Apple I* Case**

In *Apple I*, Samsung initially sought to enforce seven patents it had declared essential to the UMTS standard. Samsung eventually withdrew its claims regarding four of the patents, *Apple I*, Dkt. 981 at ¶ 6, and the Court granted summary judgment of non-infringement as to a fifth, *Apple I*, Dkt. 1156 at 9. After Samsung withdrew these patents, the Court held a pretrial hearing on July 18, 2012. Apple argued that its antitrust claim was "a single claim of a

---

[1] Apple disputes Samsung's infringement allegations. But for present purposes, the key point is that the patents at issue here and Samsung's infringement allegations are completely different from those at issue in the *Apple I* case.

1  monopolistic scheme," *Apple I*, Dkt. 1272 at 142:8-9, that involved all seven patents wrongly
2  asserted against Apple in that case, including the four Samsung voluntarily dismissed and the
3  fifth that Apple succeeded in defeating before trial.  *Apple I*, Dkt. 1272 at 142:8-13; 145:9-16
4  ("For the unfair competition law claim, the antitrust claim, there are seven predicate patents.").
5  At the Court's urging, Apple thereafter stipulated to the dismissal, without prejudice, of its
6  contract, antitrust, and unfair competition claims with respect to the five declared essential
7  patents Samsung would not be asserting at the trial.  *Apple I*, Dkt. 1880 at ¶ 7.
8      At trial, Apple presented evidence specific to the two remaining declared-essential
9  patents, including Samsung's late disclosure of those patents (Walker Tr. 3497:24-3509:1-10
10 ('941 patent disclosed late); 3509:11-3516:15 ('516 patent disclosed late)), the technological
11 alternatives to those patents (Kim Tr. 3431:7-3432:13; Knightly Tr. 3460:15-25), the technology
12 markets in which those patents participated (Ordover Tr. 3581:25-3582:8), and Apple's damages
13 in being forced to defend itself against Samsung's improper infringement claims under those
14 patents (Kim Tr. 3326:11-18; Knightly Tr. 3439:14-19).  The trial evidence concerned licensing
15 negotiations related to Samsung's full portfolio of UMTS patents because the two declared
16 essential patents were part of that portfolio—and also because Samsung's damages expert argued
17 that Samsung was entitled to the same royalty for *one* patent as Samsung had sought for its entire
18 portfolio.  (Teece Tr. 3146:1-5; 3159:3-20.)  The Court also limited Apple's evidence with
19 respect to other patents declared essential to mobile wireless standards.  When Apple sought to
20 introduce evidence regarding Samsung's understanding of FRAND rates for technologies
21 declared essential to UMTS and other standards from other cases, the Court excluded the
22 evidence in part because it involved "different patents, and the setting of different industry-wide
23 standards" than *Apple I*.  *Apple I*, Dkt. 1749 at 4.
24     In the jury instructions, the Court in *Apple I* delineated the scope of Apple's claim that
25 Samsung breached its FRAND licensing obligations for the jury as follows:
26     > Samsung has submitted declarations to ETSI in which Samsung
     > identified **the '516 and '941 patents**, or related patents or
27   > applications, as IPRs that it believed may be considered essential
     > to the UMTS standard.  In those declarations, Samsung declared
28   > that it would be prepared to grant irrevocable licenses ***under those***

> ***IPRs*** on fair, reasonable and nondiscriminatory ("FRAND") terms and conditions to the extent the IPRs remain essential to the UMTS standard. In order to demonstrate breach of this provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

*Apple I*, Dkt. 1903 at 98 (emphasis added). The instruction confirms that the first trial did not involve claims for breach of contract beyond the two contracts covering the two declared-essential patents-in-suit.

On August 24, 2012, the jury found that Apple did not infringe Samsung's two asserted declared-essential patents, and found in Samsung's favor on Apple's antitrust and breach of contract claims using a general verdict form. *Apple I*, Dkt. 1931 at 17, 19. Following the verdict, Apple moved for judgment as a matter of law, which the Court denied on January 29, 2013. *Apple I*, Dkt. 2219 at 30-31.

**C.     Summary of License Negotiations**

[redacted]

### III. ARGUMENT

#### A. Samsung Cannot Establish Good Cause Under FRCP 16 For Its Untimely Proposed Amendment.

Samsung offers no good cause for its delay in asserting a *res judicata* defense based on a jury verdict returned more than eight months ago.

##### 1. *Legal Standard*

The Court's Case Management Order set a deadline of August 31, 2012 for amendments to any pleading. As a result, Samsung must demonstrate "good cause" to amend the scheduling order under Federal Rule of Civil Procedure 16(b). Fed. R. Civ. P. 16(b); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). "This standard primarily considers the diligence of the party seeking the amendment." *Id.* (internal quotation marks omitted). Prejudice to the non-moving party is "not required under Rule 16(b)," and if Samsung cannot show diligence, "the inquiry should end." *Id.* at 1295.

If good cause is shown, Samsung must also meet the requirements of Rule 15(a)(2). Although leave to amend should be "freely" given under this rule "when justice so requires," Fed. R. Civ. P. 15(a)(2), amendments should be rejected if the amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay. *See, e.g.*, *In re Western States Wholesale Natural Gas Antitrust Litig.*, -- F.3d --, 2013 WL 1449919 (9th Cir. 2013).

##### 2. *Samsung Fails To Establish "Good Cause" For Its Eight-Month Delay.*

Samsung filed an amended answer on September 14, 2012—three weeks ***after*** the jury verdict in *Apple I*—but did not include any *res judicata* defense. Samsung offers no explanation for why it could not include such a defense on September 14, 2012. Omitting from an amended answer a defense based on facts known at the time is the antithesis of diligence in complying with the Court's scheduling order, and defeats any argument that Samsung has shown good cause to amend the scheduling order. Nonetheless, Samsung claims that it was justified in

1  waiting for (1) the Court's JMOL ruling and (2) Apple's supposed "withdrawal" from licensing
2  negotiations on February 20, 2013 before deciding to seek leave to amend.  (Mot. at 7-8.)
3  Neither of the proffered justifications for its delay has any merit.
4        *First*, Samsung argues that it was "prudent" to amend only after the Court ruled on
5  Apple's JMOL motions in January, because an unfavorable ruling by the Court would have
6  mooted the defense.  (Mot. at 7.)  But the jury verdict that is the basis for Samsung's defense had
7  the same legal effect for *res judicata* purposes in August 2012—*before* the deadline to amend—
8  as it does now.[2]  Samsung cites *CF v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190 (C.D.
9  Cal. 2009) ("*Capistrano I*"), for the proposition that good cause to amend may be found once a
10 judicial ruling alters the likelihood of success on a particular defense, even if that defense were
11 technically available before the deadline to amend.  But that case is inapposite.  In *Capistrano*,
12 the plaintiff asserted a claim for a First Amendment violation based on a "barrage of allegedly
13 hostile remarks."  *CF v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011)
14 ("*Capistrano II*").  After the court found against plaintiff on summary judgment with respect to
15 all but one of the statements, the defendants raised a qualified immunity defense, arguing that it
16 was not well established that a single statement could constitute a First Amendment violation.
17 *Capistrano I* at 1193.  Because the defense was contingent on a ruling in defendant's favor on all
18 but one of plaintiff's allegedly improper statements, "it only became apparent that [defendant]
19 was entitled to qualified immunity after the May 1st ruling."  *Id*.  The Ninth Circuit explained
20 that "the tenor of the case changed significantly" after the summary judgment decision,
21 *Capistrano II* at 984, and that the change had been "difficult to predict," *Capistrano I* at 1193.
22 Here, in contrast, the Court simply denied Apple's motion for JMOL.  The "tenor of the case"
23 did not change because a jury verdict was upheld, nor was it "difficult to predict" that a motion
24 for JMOL might be denied.  Samsung's *res judicata* defense is without merit and futile, as
25 discussed below.  But under Samsung's theory, the availability of the defense was "apparent"

---

[2] Because final judgment has not been entered in *Apple I*, it is unclear that the jury verdict is sufficiently final to have any preclusive effect.  However, it is clear that any alleged preclusive effect that the verdict might have has not changed since its entry in August 2012.

once the jury verdict was entered, and nothing in the unusual circumstances of *Capistrano* supports Samsung's argument that it had good cause for delay.

   ***Second***, Samsung is wrong that the continuing licensing negotiations between the parties provide good cause for Samsung's delay.  *See, e.g.*, *Osakan v. Apple American Group*, 2010 WL 1838701, at *4 (N.D. Cal. May 5, 2010) (denying leave to amend because a "conscious decision to pursue settlement at the expense of preparing … for trial does not demonstrate excusable neglect").  Samsung's sole support for this theory is *Aldan v. World Corp.*, 267 F.R.D. 346 (N.M.I. 2010), and its reliance is misplaced.  (Mot. at 8.)  In *Aldan*, the plaintiff sought leave to amend its complaint after the scheduling order's deadline for amendment, but shortly after learning of additional relevant facts.  *Aldan*, 267 F.R.D. at 356.  The court observed that the plaintiff could have learned the newly discovered facts sooner through diligent discovery requests, but held that the failure to pursue discovery was excusable because both parties expected the case to settle.  *Id*. at 356-358.  The court explained that refraining from potentially pointless discovery was a "judicious decision about allocating or saving resources."  *Id.* at 358.  The court did not hold, as Samsung suggests, that omitting an *already-known* defense from a pleading conserves resources.  Here, Samsung knew about the jury verdict for weeks before it filed its amended answer in September 2012, and for eight months before it filed this motion.  It took no steps to reduce the discovery burden on either party related to Apple's contract and antitrust claims and instead waited until just weeks before the close of fact discovery to file this motion.  Such deliberate delay does not demonstrate Samsung's diligence—in fact, it shows just the opposite.

   In any event, Samsung's proffered excuses of settlement negotiations and the JMOL motion still do not explain the additional three months of Samsung's delay.  Samsung offers no explanation at all for its decision to wait from February 20 until May 23 to finally move to amend.  *See, e.g.*, *County of Santa Clara v. Astra USA*, *Inc.*, 2009 WL 1765811, at *2 (N.D. Cal. June 22, 2009) (denying leave to amend because "[e]ven accepting that defendants learned further details of the counterclaims in early March, moreover, they offer no basis for the additional delay of nearly three months thereafter"); *Villa v. Brass Eagle, LLC*, 2007 WL

446349, at *1 (D. Ariz. February 7, 2007) (unopposed motion to amend complaint to add punitive damages claim denied when motion filed three months after amendment deadline where "plaintiff does not argue that good cause exists for us to alter our scheduling order").

### B. Samsung's Motion To Amend Should Be Denied Under Rule 15 Because Its Defense Is Futile.

Samsung's motion should be denied for the additional reason that its untimely *res judicata* defense is futile. *See Klamath-Lake Pharm. Assoc. v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) ("futile amendments should not be permitted"). Apple's claims in this *Apple II* matter necessarily relate to different patents, different technology markets, and different allegations of abuse from those asserted in *Apple I*. Indeed, having successfully persuaded the Court to limit the evidence in the *Apple I* trial to that regarding the particular patents-in-suit, Samsung is now trying to cast that trial as having had broader scope. But because the *Apple I* trial was limited to the two declared-essential patents at issue there, none of the issues underlying Apple's current contract and antitrust claims was resolved by *Apple I*. An examination of each claim makes clear that this case presents new claims and new issues that are not precluded by the jury's verdict in *Apple I*.

#### 1. Legal Standard

Claim preclusion bars a litigant from re-litigating the same cause of action where "the earlier suit … (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)). "Whether the two suits involve the same claim or cause of action requires us to look at four criteria, which we do not apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Id.* (quoting *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir. 2003)). "[W]hen considering whether a prior action involved the same

1  'nucleus of facts' for preclusion purposes, we must narrowly construe the scope of that earlier
2  action." *Central Delta Water Agency v. U.S.*, 306 F.3d 938, 953 (9th Cir. 2002).
3      Claim preclusion can never apply to claims arising from events that occurred after the
4  first judgment. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) ("While the [first]
5  judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of
6  extinguishing claims which did not even then exist and which could not possibly have been sued
7  upon in the previous case."). Where continuing conduct occurs both before and after the filing of
8  the initial suit, *res judicata* does not apply to bar claims for the later time period. *Harkins*
9  *Amusement Enters., Inc. v. Harry Nace Co.*, 890 F.2d 181, 183 (9th Cir. 1989) (by winning the
10 prior action, defendants "did not acquire immunity in perpetuity from the antitrust laws") (citing
11 *California v. Chevron Corp.*, 872 F.2d 1410, 1415 (9th Cir. 1989)).
12     "Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three
13 requirements are met: (1) the issue necessarily decided at the previous proceeding is identical to
14 the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on
15 the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity
16 with a party at the first proceeding." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741,
17 746 (9th Cir. 2006) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005)). The Ninth
18 Circuit employs a four-factor test to determine whether issues are identical: "(1) is there a
19 substantial overlap between the evidence or argument to be advanced in the second proceeding
20 and that advanced in the first? (2) does the new evidence or argument involve the application of
21 the same rule of law as that involved in the prior proceeding? (3) could pretrial preparation and
22 discovery related to the matter presented in the first action reasonably be expected to have
23 embraced the matter sought to be presented in the second? (4) how closely related are the claims
24 involved in the two proceedings?" *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th
25 Cir. 1999) (quoting *Kamilche Co. v. U.S.*, 53 F.3d 1059, 1062 (9th Cir. 1996)).

        2.     *Apple's Breach Of Contract Claim Based on Samsung's Non-Disclosure Of The '087 And '596 Patents Is Not Precluded By Apple I.*

Apple's breach of contract claim arises from, among other facts, Samsung's violation of ETSI's IPR Policy in failing to timely disclose the *'087* and *'596* patents before 3GPP standardized technology that Samsung claims is covered by those patents. Counterclaims at ¶ 63. In *Apple I*, Apple alleged a separate breach of Samsung's obligations under the ETSI IPR Policy based on Samsung's failure to disclose the *'516* and *'941* patents. *Apple I*, Dkt. 381 at ¶ 57. Although Apple alleges a similar pattern of misconduct, the claims in this case arise from a different nucleus of facts—different standard-setting meetings, different technical proposals, different technologies, and different disclosures of IPR than those in *Apple I*. The issues decided with respect to the standardization and disclosure of the '516 and '941 patents were plainly not "identical" to those presented here regarding the standardization and disclosure of the '087 and '596 patents.

        3.     *Apple's Breach of Contract Claim Based on Samsung's Violation of Its FRAND Licensing Obligation Is Not Precluded By Apple I.*

Apple alleges in this case that Samsung breached its FRAND licensing obligations regarding the '087 or '596 patents ("patent-specific claims"), and regarding its full portfolio of declared-essential patents ("portfolio claim"). Neither theory is subject to claim or issue preclusion.

With respect to its patent-specific claims, Apple alleges that "Samsung has in fact violated its FRAND commitments by counterclaiming against Apple for infringement and seeking to enjoin Apple from selling its standards-compliant products without offering Apple a FRAND license…." Counterclaims at ¶ 55. Whether Samsung's attempt to enjoin Apple from practicing the '087 and '596 patents breached its FRAND obligations was obviously not at issue in *Apple I*, as Samsung has made those infringement claims and injunction requests for the first time in this proceeding. Thus, it is clear that Apple's patent-specific claims in this case arise out of a different "transactional nucleus of facts" from any claim in *Apple I*.

If the Court were to permit Apple to go to trial in this case on a broad FRAND licensing claim—not focused on the '087 and '596 patents but on Samsung's entire UMTS portfolio—this

1  broad claim would be distinct from the licensing claims tried in *Apple I*, which focused only on

2  the '516 and '941 patents. Apple expressly stipulated to the dismissal without prejudice of, *inter*

3  *alia*, its breach of contract claims relating to the patents Samsung had voluntarily dismissed from

4  *Apple I*. *Apple I*, Dkt. 1880 at 5. That dismissal would have been meaningless if Apple's claims

5  were predicated on Samsung's licensing of its full portfolio of declared-essential patents rather

6  than the individual patents in suit in that case. Samsung cannot escape this conclusion by

7  focusing on the verdict form and ignoring the jury instructions. (Mot. at 11.) The jury

8  instructions expressly identified Samsung's commitment to license the '516 and '941 patents as

9  the contracts underlying Apple's claim. *Apple I*, Dkt. 1903 at 98.

10  Moreover, even if both *Apple I* and this case were focused not on Samsung's conduct

11  with respect to the patents-in-suit but with respect to its entire portfolio of declared-essential

12  patents, Apple's current portfolio claim would not be precluded. Although certain evidence

13  relating to the early licensing negotiations would necessarily overlap in the two cases, Samsung's

14  failure to make a FRAND offer is an ongoing wrong that has never been remedied. Where

15  misconduct is continuous, "[s]imply alleging the same type of claims against the same

16  defendants for a later period does not guarantee a res judicata bar, because factual matters, such

17  as the conduct of the parties since the first judgment, must be considered." *Chevron Corp.*, 872

18  F.2d at 1415 (citing authorities). Many events relevant to Apple's current portfolio claim have

19  occurred since the jury's verdict in *Apple I*. As Samsung explains in its motion, ▬▬▬▬

20  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

21  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, which has only

22  reinforced that Samsung has breached its FRAND obligations.

23  Finally, the jury in *Apple I* did not "necessarily decide" any issue relevant to these claims

24  in reaching its decision, barring any finding of issue preclusion. *See Reyn's Pasta*, 442 F.3d at

25  746. Samsung argues that in *Apple I* "the jury unequivocally found that Samsung had not

26  breached any contractual obligation" (Mot. at 4), and apparently infers that the only possible

27  basis for that verdict was a finding that Samsung's portfolio-wide licensing offers were

28  consistent with Samsung's FRAND obligations. That is simply incorrect. In *Apple I*, the jury

1  was instructed that Samsung had committed to license the '516 and '941 patents on FRAND
2  terms "to the extent the IPRs remain essential to the UMTS standard." *Apple I*, Dkt. 1903 at 98.
3  The jury was also instructed that "Apple must prove that all of the conditions for performance of
4  this obligation occurred . . .." *Id*.  Given the jury's verdict of non-infringement for the '516 and
5  '941 patents, the jury likely did not view those patents as "essential" to the UMTS standard.  *See*
6  *Apple I*, Dkt. 1931 at 17.  Thus, the jury's rejection of Apple's contract claim may have stemmed
7  from a conclusion that Samsung had no obligation to license the non-essential '516 and '941
8  patents on FRAND terms, not that Samsung's licensing offers were consistent with FRAND
9  licensing principles.  Accordingly, even if one (erroneously) assumed that the *Apple I* jury issued
10 any verdict at all regarding Samsung's portfolio license offer, it did not "necessarily decide" that
11 Samsung's portfolio license offer was consistent with a FRAND obligation, and the verdict does
12 not give rise to preclusion on that issue.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M
13 07–1827 SI, C 10–1064 SI, 2012 WL 4858836, at *3 (N.D. Cal. Oct. 11, 2012) ("Issue
14 preclusion is inappropriate when a jury instruction raises a doubt or confusion as to the basis and
15 breadth of the jury's finding." (quoting *Taco Bell Corp. v. TBWA Chiat/Day Inc*., 552 F.3d
16 1137, 1145 (9th Cir. 2009)) (internal quotation marks omitted)).

17         **4.   *Apple's Antitrust Claims Are Not Precluded by Apple I.***

18         Lastly, Apple's antitrust claims are not precluded by the jury verdict in *Apple I*.  In this
19 action, Apple alleges that Samsung monopolized two technology markets that include the '087
20 and '596 patented technologies.  Counterclaims at ¶¶ 102-107.  In contrast, Apple's prior
21 antitrust claim was based on the monopolization of the technology markets in which the '941 and
22 '516 patents participated.  *Apple I*, Dkt. 381 at ¶¶ 97-102; (Ordover Tr. 3581:25-3582:8; Kim Tr.
23 3431:7-3432:13; Knightly Tr. 3460:15-25).  Apple's statements and the Court's instructions at
24 the July 2012 hearing make this clear.  Samsung notes that Apple characterized its claims at that
25 hearing as "a single monopolistic scheme…not seven different monopolistic scheme[s]."  *Apple*
26 *I*, Dkt. 1272 at 143:22-23; Mot. at 4, 10, but fails to mention that, moments later, Apple went on
27 to say that "[f]or the unfair competition law claim, the antitrust claim, there are ***seven predicate***
28 ***patents***."  *Apple I*, Dkt. 1272 at 145:9-10.  Thus, Apple never suggested that its monopolization

claim related to all technology markets that include technologies Samsung contends are covered by its declared-essential patents—including markets mentioned nowhere in its complaint. Rather, Apple argued that its monopolization claim encompassed all seven of the declared-essential patents Samsung originally asserted in that case.  In any event, Apple subsequently stipulated to dismissal without prejudice of its monopolization claims based on the patents Samsung did not assert at trial, and proceeded only on its claims with respect to the '516 and '941 patents.  *Apple I*, Dkt. 1880 at 5.  The claims in this action are clearly separate, and none of the issues related to the monopolization of the two technology markets alleged here was decided by the jury in *Apple I*, which considered two entirely different technology markets.

## IV.  CONCLUSION

Samsung's motion to amend is untimely, without good cause, and futile.  Samsung points to nothing that prevented it from including a *res judicata* defense in its amended answer filed the month after the jury rendered its verdict in *Apple I*.  And having been well aware of its defense since then, Samsung cannot establish diligence as required to amend under Rule 16.  Samsung's delay until now has a simple explanation:  it has no proper basis to assert *res judicata*.  Indeed, Samsung's attempt to bar Apple's counterclaims is futile.  Apple's claims here depend on different Samsung patent claims, different standardization meetings, different alternative technologies, and different allegations of wrongdoing from *Apple I*.

Apple respectfully requests that the Court deny Samsung's motion.

Dated:  June 6, 2013

WILMER CUTLER PICKERING
 HALE AND DORR LLP

*/s/ Mark D. Selwyn*
Mark D. Selwyn (SBN 244180)
(mark.selwyn@wilmerhale.com)
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

*Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on June 6, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

/s/ Mark D. Selwyn
Mark D. Selwyn