QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG'S REPLY BRIEF IN SUPPORT OF SAMSUNG'S MOTION TO AMEND THE CASE MANAGEMENT ORDER**<br><br>**PROPOSED REDACTED VERSION**<br><br>Date: July 11, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

02198.51981/5359211.10

I.  **INTRODUCTION**

Samsung sought leave to amend its pleadings once it became clear that this Court would not overturn a jury verdict denying Apple's counterclaims and its attempts to reach a settlement with Apple came to naught. Apple contends that Samsung was required to bring its motion immediately after the jury verdict, regardless of whether bringing the motion at that juncture would have wasted Court resources. The Federal Rules do not require this senseless result. Samsung should be permitted to raise a defense that will prevent Apple from relitigating its contentions that Samsung has breached obligations to ETSI that have already decided against Apple in this Court. Samsung's defense also accords with a recent decision by the International Trade Commission, which concluded that Apple's claims of misconduct lacked merit.

The timing of Samsung's motion satisfies the requirements of Rule 16, which allow courts to efficiently adjudicate the matters before them. Samsung sought leave to amend its pleadings as soon as it became clear that such a motion would not be futile or needless. Samsung moved for leave to amend after the Court denied Apple's motion for judgment as a matter of law, which otherwise would have removed the grounds for Samsung's motion. ███████████████████████████████████████████████████████████████████████████████████ The timing of Samsung's motion prevented the Court from considering an unnecessary motion and is thus in keeping with the purpose of Rule 16.

Apple concedes by its silence that permitting Samsung leave to amend its pleadings would cause no prejudice to Apple, and certainly not the type of undue prejudice that Apple is required to show under Rule 15. Apple has known for months of Samsung's contention that Apple cannot pursue the same counterclaims it advanced in the prior suit. Samsung's requested amendment will require *no* additional discovery and will cause *no* disruption to the case schedule, and ultimately will provide the Court with an opportunity to decide whether Apple should be permitted to retry its FRAND-related claims and defenses.

Although Apple contends that Samsung's motion would be futile, its own opposition highlights the viability of Samsung's issue preclusion defense. Once again, Apple faults

1  Samsung's "earlier 2.4% royalty demand" for a license to Samsung's portfolio of declared
2  essential UMTS patents—a patent portfolio that extends equally to both the declared essential
3  patents litigated in *Apple I* as well as those at issue here.  The merits of this portfolio-based
4  offer—i.e., whether Samsung breached an obligation to ETSI by offering it—were fully
5  considered by the jury in *Apple I* and rejected, with the jury concluding Samsung had not breached
6  any obligation it might have owed to ETSI and its members like Apple.  Apple now seeks to
7  relitigate the very same issue in the context of the very same claims and defenses here.  Samsung's
8  motion is aimed precisely at precluding Apple from doing so.  Why waste valuable judicial
9  resources and the jury's time to provide Apple with yet another opportunity to raise its baseless
10 FRAND-related assertions?  Apple has had its chance to try these issues, not only here but before
11 the ITC, and has now failed each time.  Samsung should be permitted at least to have the
12 opportunity of persuading the Court at an appropriate time that further litigation on these same
13 issues should be precluded.  Samsung's motion to amend should be granted.

14 II.    **ARGUMENT**

15        A.    **Good Cause Exists to Modify the Case Management Order, and Samsung's**
16              **Amendment Will Assist in the Fair Adjudication of This Case**

17        Apple seeks to interpret Samsung's cases in an overly narrow way to limit the
18 circumstances under which modification of a scheduling order is permissible.  (Opp. at 5-7.)
19 Apple's overly stringent interpretation of Rule 16 loses sight of the goal of that rule—to permit a
20 Court to provide for the orderly management of litigation.  Apple seeks to disrupt that order by
21 presenting the same claims, issues, and evidence as it did in *Apple I*.  Permitting Samsung to
22 amend its pleadings in this instance will narrow the scope of proceedings without causing any
23 disruption to the case schedule.

24        Apple ignores the cases cited in Samsung's opening motion demonstrating that courts have
25 the discretion to modify a scheduling order where the proposed amendment facilitates
26 management of the pending litigation. In *Rants v. WHPacific Inc.*, No. C 10-05273 RBL, 2010
27 WL 4622164 (W.D. Was. 2010), the court granted plaintiff's motion to add a defendant to the case
28 after the deadline for joinder had passed, despite the fact that the plaintiff knew the facts necessary

1  for joinder four months before the deadline.  *Id.* at *2.  The court did so because there would be
2  "no issue of case management" and allowing the amendment would "actually assist the efficient
3  adjudication of [the] action because adding [the new defendants] will prevent the potential for
4  multiple lawsuits."  *Id.*  The potential to assist in case adjudication established good cause under
5  Rule 16(b).  *Id.*  And in *Jones v. Marriott Hotel Servs.*, No. C 12–00587 WHA, 2013 WL 593656
6  (N.D. Cal. 2013), a court in this district allowed a plaintiff to add a defendant after a six-month
7  delay, because no prejudice would result and the defendant had fair notice.  *Id.* at *2-3.

8  Taken together, *Rants*, *Jones*, *C.F. v. Capistrano Unified School Dist.*, 656 F.Supp.2d 1190
9  (C.D. Cal. 2009), and *Aldan v. World Corp.*, 267 F.R.D. 346 (D.N.M.I. 2010)  are all consistent
10 with and representative of the broader purpose of Rule 16(b):  "[T]o facilitate judicial control over
11 a case and to set a schedule for pretrial steps."  *Capistrano*, 656 F. Supp. 2d at 1197 (*citing*
12 *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990)).
13 Amendments to pleadings that require modifications to the case schedule, require new discovery,
14 or cause prejudice are especially disfavored, while amendments that assist in the purpose of the
15 Rule are allowed.  The Court has broad discretion to control the case docket and modify the
16 scheduling order as appropriate.  *E.g.*, *Jones*, 2013 WL 593656 at *2.

17 In this light, Samsung's decision to wait until the Court had issued its JMOL order and to
18 attempt to settle the standards-patent elements of the case were prudent.  Had the Court overturned
19 the jury's verdict, there would be no basis to assert preclusion.[1]

---

[1]  Apple attempts to have it both ways, arguing that the jury verdict in fact has *no* preclusive effect.  (Opp. at 6 n.2.)  Apple thus undermines its own argument that Samsung's proposed amendment is untimely because it did not move for leave to amend immediately after the jury in *Apple I* rendered its verdict.

[2] 

(footnote continued)

1  ████████████████████████████████████████████████████████████████████

2  ████████ Other courts have concluded that parties that filed motions within a similar or longer period of time have been diligent. *E.g.*, *Palmer v. Arizona,* No. C 09-01791, 2011 WL 3290602 (D. Ariz. Aug. 1 2011) (granting leave for amendment filed six months after deadline and two months after discovery of evidence); *Lincoln Nat. Life v. Jackson Nat. Life Ins. Co.*, C 07-265, 2010 WL 1781013 (N.D. Ind. May 3, 2010) (nine months).

Critically, Apple fails even to acknowledge Samsung's argument that there will be ***no*** prejudice to Apple, ***no*** needed modifications to the case management schedule other than to permit Samsung's amendment, and ***no*** additional discovery needed to evaluate Samsung's preclusion defense. Instead, Samsung's proposed amendment has the potential to streamline this case, reduce the burden on the Court and the jury, and maintain judicial consistency by preventing Apple from re-litigating issues that have already been decided. Apple also concedes by silence that Samsung has already pled "claim-splitting," a defense to pleading the same claim in multiple suits, before one is finally adjudged, that uses the same legal test as claim preclusion. *Adams v. Calif. Dept. of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007). Apple has thus been on notice of Samsung's position that it is pursuing the same claims and issues in multiple cases since the filing of Samsung's original answer to Apple's counterclaims. *Cf. Jones*, 2013 WL 593656, at *2-3. For those reasons alone good cause exists to modify the case management order.

### B. **Samsung's Amendment Will Not Be Futile**

As is apparent from its complaint, Apple intends to present the same alleged non-FRAND licensing conduct as in *Apple I* to a new jury, and hope that it will be more receptive than the last. *Compare Apple II*, Dkt. 262, ¶¶ 83-94, *with Apple I*, Dkt. 381, ¶¶ 76-89. Apple's allegations regarding this conduct have been rejected not only by the *Apple I* jury but also the International Trade Commission, which recently found that Apple failed to prove that Samsung violated its

---

████████████████████████████████████████████████████████████████████████

1 FRAND obligations.  Baxter Decl. Ex. 1, at 2-3 (Inv. No. 337-TA-794 Notice of Final

2 Determination)[3]  Undeterred, Apple would seek to try this same conduct yet again to a new jury.

3 Apple must respect the prior jury's verdict.  Samsung's preclusion defense, which will bring the

4 verdict into these proceedings, will limit the issues that Apple may present at trial and therefore is

5 not futile.

6 An amendment is futile only if "no set of facts can be proved under the amendment to the

7 pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton,*

8 *Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  The test is equivalent to the one used to consider the

9 sufficiency of a pleading under Rule 12(b)(6).  *Id.*  Accordingly, the Court should consider here

10 whether the *Apple I* jury verdict has **any** preclusive effect on this case.  If Samsung is entitled to

11 claim or issue preclusion on at least some issues relating to *either* Apple's breach of contract

12 claims or antitrust claims, Samsung's amendment cannot be futile.

13         1.    **Samsung's Amendment with Respect to Its Breach of Contract Claims**
14               **Is Not Futile**

15 Apple makes clear that it seeks to relitigate issues already decided by the jury in *Apple I*.

16 In its opposition, Apple refers to the "egregiously non-FRAND nature of Samsung's earlier 2.4%

17 royalty demand."   Apple ignores that the jury in *Apple I* heard evidence regarding this offer and

18 concluded that Samsung had not breached its obligations to ETSI.  (Opp. at 4); *see Apple I*, Tr. at

19 3536:16-23.  Apple's intent is clear:  to re-try this issue and hope that a different jury will adopt its

20 flawed breach of contract and antitrust counterclaims.  The doctrine of issue preclusion is aimed

21 precisely at protecting Samsung from being repeatedly subject to the same claims and from

22 preserving judicial resources by precluding re-litigation of the same issues. *Reed v. Allen*, 286

23 U.S. 191, 198-199 (1932) (holding that the "doctrine of res judicata . . . is a rule of fundamental

---

[3]   The Commission's Final Determination contains statements relevant to Samsung's defense.  However, a public version of the Determination has not yet issued.  Samsung intends to submit these statements to this Court as soon as a public version is available.

1 and substantial justice, 'of public policy and of private peace,' which should be cordially regarded
2 and enforced by the courts").

3 Apple's attempt to distinguish the issues litigated in *Apple I* from those that it seeks to
4 litigate now on the basis that the two litigations involve different patents fails. (Opp. at 10-11.)
5 Regardless of the patents that Samsung asserted in *Apple I*, the conduct that Apple contends
6 constituted a breach of Samsung's obligations to ETSI and anticompetitive misconduct is the
7 same: Samsung's offers to license its ***entire portfolio*** of declared-essential UMTS patents. At
8 best, Apple's contention that its breach of contract claim was limited to the patents-at-issue in the
9 *Apple I* litigation, establishes that issue preclusion rather than claim preclusion applies in this
10 case.[4] *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (holding that issue preclusion attaches
11 where "the issue necessarily decided at the previous proceeding is identical to the one which is
12 sought to be relitigated"). Regardless of any differences in the claims, Apple cannot contend that
13 the offers already deemed by the jury in *Apple I* not to constitute a violation of Samsung's
14 obligations to ETSI constitute a violation of those same rules in this case.

15 Apple's contention that "Samsung's failure to make a FRAND offer is an ongoing wrong
16 that has never been remedied" simply ignores the *Apple I* jury's verdict. (Opp. at 11.) That jury
17 considered Samsung's negotiations with Apple, including offers to license Samsung's patents, and
18 found that Samsung had not breached its obligations to ETSI. *Apple I*, Dkt. 1931, at 19. Apple
19 cannot now ignore that earlier verdict to contend that there exists an ongoing wrong.[5]

20 Finally, Apple contends that the jury could have viewed Samsung's patents as non-
21 essential, thereby obviating any alleged contract and resulting in the jury's "NO" verdict for

---

[4] For the same reasons, granting Samsung's motion for leave to amend would not render Apple's previous dismissal of breach of contract claims based on other patents meaningless. (Opp. at 10-11.)

[5] Apple's reliance on *dicta* from *California v. Chevron Corp.*, 872 F.2d 1410 (9th Cir. 1989) is also misplaced. In *Chevron*, the court expressed doubt that judgment on anticompetitive acts for one time period could be preclusive of the claims regarding a different, non-overlapping timeperiod which necessarily involved distinct anticompetitive acts. *Id.* at 1414-15. In contrast, Apple's allegations rely on the very same acts—that is, Samsung's same licensing conduct and same alleged "anticompetitive scheme"—that were at issue in *Apple I*.

Apple's contract claims.  (Opp. at 11-12.)  Apple's argument is bare speculation about the verdict, divorced from any statement the jury actually made, and inconsistent with its own positions before this Court.  The jury verdict unequivocally found that Samsung's full-portfolio offer was not a breach of its FRAND obligations.  *Apple I*, Dkt. 1931, at 19; *see also Apple I*, Tr. at 3536:16-23 (Donaldson) (presenting evidence regarding Samsung's full-portfolio offer); Tr. at 3646:13-3647:25 (Teece) (rebutting Donaldson); Dkt. 2209, at 30 (denying Apple JMOL motion and evaluating evidence of full-portfolio offer).

First, the jury was never asked to determine whether Samsung's patents were essential to the UMTS standard.  Instead, it was asked to determine whether Apple's products ***infringed*** those patents.  *Apple I*, Dkt. 1931, at 17.   There is no basis to conclude that Samsung's patents were "not essential," and no reason to import that speculation into the jury's verdict regarding breach of contract.

Second, Apple has argued before this Court that the FRAND licensing obligation applies regardless of actual essentiality so long as the FRAND-declaring party asserts that the patent is essential.  *See Apple I*, Dkt. 1989 (Apple JMOL Motion), at 23 ("Samsung was bound by these commitments prior to the jury's non-infringement verdict (***and remains bound to offer FRAND licenses to IPR it claims to be essential***)." (emphasis added)).  Apple also presented testimony from its antitrust expert, Janusz Ordover, consistent with this position.  *See Apple I*, Tr. at 3586:2-3587:3.[6]  Indeed, the Court performed its JMOL analysis under the assumption that Samsung's FRAND commitments were in force regardless of Apple's infringement of the '516 and '941 patents.  *See Apple I*, Dkt. 2219 (Order on Apple's JMOL Mot.), at 27, 30 (denying Apple's

---

[6] Q: Sir, are you offering any opinion whether Samsung has patents that are truly essential to UMTS?
    A: No, I'm not.
    Q: From an economic standard, does it matter to your analysis?
    A: No, it does not. . . . The point is that even though it is not clear whether any of those patents actually is essential . . . the mere presence in the standard create [*sic*] itself a very potent effect on how people act and how they perceive the firm's ability to control price . . . . So the beauty of the standard is that it more or less tells you, under FRAND, if you want to implement the standard, you're going to get the technology on these FRAND rights.

motion).  Only now, when fighting for an opportunity to re-try this same issue, does Apple argue that essentiality—not determined by the jury in *Apple I*—is a "condition precedent" to Samsung's FRAND obligations.

Third, the precedent cited by Apple that issue preclusion should not be applied where jury instructions raise "doubt or confusion" as to the content of the jury verdict is inapposite here. (Opp. at 12.)  In *Flat Panel Antitrust Litig.*, the court denied a motion for partial summary judgment because the scope of the preclusion that the movant asked the court to find was broader than the scope of the underlying jury verdict.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, C 10-1064 SI, 2012 WL 4858836, at *2 (N.D. Cal. Oct. 11, 2012).  By contrast, the issue before this Court is simply whether "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Miller*, 845 F.2d at 214.  Here, at a minimum, Apple should be precluded from re-litigating a breach of contract claim based on the same conduct deemed by the *Apple I* jury not to constitute a breach of Samsung's ETSI obligations.  Accordingly, the case cited by Apple is not dispositive here.

### 2. **Samsung's Amendment with Respect to Its Antitrust Claims Is Not Futile**

Apple's contention that its *Apple II* antitrust claim is distinct from the claim litigated in Apple I is based on a revisionist interpretation of its earlier contentions.  (Opp. at 12.)  A complete review of Apple's position from the July 18, 2012, hearing demonstrates that Apple intended to demonstrate *one* antitrust violation through a "pattern and practice" that encompassed each of the Samsung patents.  Counsel for Apple stated:

> The antitrust claim is a single claim of a monopolistic scheme.  There were seven standard essential patents asserted against us, all of which had the same pattern and practice of nondisclosure, incorporation into the standard that Samsung is urging, and then a late disclosure. The pattern and practice is relevant to the antitrust claim . . . .  Here is what we intend to pursue: the pattern and practice of these seven patents . . . .  We don't have to prove alternative technologies for the dropped patents.  But we will prove that pattern for those four.  We will prove the alternative technologies for the three patents that remain in the case. . . . The only thing that will come in is the fact there were seven patents asserted, that the pattern and practice of nondisclosure was the same, and then for the substantive antitrust claim, we will demonstrate the alternative technologies only for the three that are left in. . . . It's a single monopolistic scheme. It's not seven different monopolistic scheme [*sic*].

*Apple I*, Dkt. 1272, at 142:8-143:23.  Thus, Apple contended that Samsung engaged in a pattern and practice of failing to disclose IPR to ETSI until after its technology had been incorporated into the standard and then, after adoption of the standard, refusing to license its patents on FRAND terms and conditions.  *Apple I*, Dkt. 381 ¶¶ 198-200.  The jury rejected that theory of a "monopolistic scheme," and found Samsung not liable for any antitrust violation.  Accordingly, Apple is precluded from re-arguing that this "pattern and practice" violated the antitrust laws.

III.  **CONCLUSION**

Apple's Opposition demonstrates that it will seek to re-litigate the issues also presented to the jury in *Apple I*, namely that Samsung's conduct before ETSI and its negotiations with Apple constituted a breach of its obligations and a violation of the antitrust laws.  The jury rejected these arguments and Apple should not be permitted to raise these issues a second time.  The ITC reached the same conclusions as the jury.  Baxter Decl. Ex. 1.  It would be improper and unfair to allow Apple to re-try, *seriatim*, the same alleged conduct, for the same alleged breach of contract, in case after case.  For the reasons stated herein and in Samsung's Motion to Amend the Case Management Order, Samsung respectfully requests the Court amend the case management order and grant Samsung leave to amend its pleadings.

DATED:  June 13, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Victoria F. Maroulis*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC