1           IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5

   APPLE, INC.,                    )   CV-12-00630-LHK
6                                   )
                  PLAINTIFF,        )   SAN JOSE, CALIFORNIA
7                                   )
            VS.                     )   JUNE 11, 2013
8                                   )
   SAMSUNG ELECTRONICS CO. , LTD., )   PAGES 1-72
9  ET AL,                          )
                                    )
10                DEFENDANT.        )

11

12              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE PAUL S. GREWAL
13             UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16  FOR THE PLAINTIFF:     WILMER HALE
                           BY:  MARK SELWYN
17                              JOHN PETTIT
                           950 PAGE MILL ROAD
18                         PALO ALTO, CA 94304

19  FOR THE DEFENDANT:     QUINN EMANUEL
                           BY:  VICTORIA MAROULIS
20                         KEVIN JOHNSON
                           TODD BRIGGS
21                         555 TWIN DOLPHIN DRIVE, 5TH FL
                           REDWOOD SHORES, CA 94065
22  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
    PRODUCED WITH COMPUTER.

23

24          APPEARANCES CONTINUED ON THE NEXT PAGE

25  OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185

```
 1      FOR THE DEFENDANT:        QUINN EMANUEL
                                  BY:  AMARDEEP THAKUR
 2                                865 S. FIGUEROA STREET, 10TH FL
                                  LOS ANGELES, CA 90017
 3

 4      FOR THE PLAINTIFF:        GIBSON DUNN & CRUTCHER, LLP
                                  BY:  MARK LYON
 5                                1881 PAGE MILL ROAD
                                  PALO ALTO, CA 94304
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    JUNE 11, 2013
 2                  P R O C E E D I N G S
 3       (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS
 4    WERE HELD:)
 5              THE CLERK:  YES, YOUR HONOR.
 6       CALLING APPLE, INC. VERSUS SAMSUNG ELECTRONICS, ET AL.
 7    CASE CV-12-630-LHK.
 8       MATTER ON FOR SAMSUNG MOTION FOR LEAVE TO AMEND AND
 9    SUPPLEMENT ITS INFRINGEMENT CONTENTIONS AND MOTIONS TO COMPEL.
10       COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.
11              MR. JOHNSON:  GOOD MORNING, YOUR HONOR.
12       KEVIN JOHNSON FOR SAMSUNG.  AND WITH ME IS VICKI MAROULIS
13    AND TODD BRIGGS.
14              THE COURT:  ALL RIGHT.  GOOD MORNING TO EACH OF YOU.
15    MR. JOHNSON, IT'S BEEN A WHILE.
16              MR. JOHNSON:  IT HAS BEEN A WHILE.  GOOD TO SEE YOU.
17              THE COURT:  GOOD TO SEE YOU AS WELL.
18              MR. SELWYN:  GOOD MORNING, YOUR HONOR.
19       MARK SELWYN FOR APPLE.  AND WITH ME TODAY IS MARK LYON,
20    PETER KOLOVOS AND JOHN PETTIT.
21              THE COURT:  GOOD MORNING, MR. SELWYN, AND GOOD
22    MORNING TO YOUR COLLEAGUES AS WELL.
23       ALL RIGHT.  WHERE TO BEGIN.  I WANT TO JUST NOTE I HAVE A
24    NUMBER OF MOTIONS BEFORE ME THIS MORNING.  AND AS I HAVE
25    ATTEMPTED TO TRY TO ORGANIZE AND STRUCTURE THE PAPERS, I THINK
```

1          IT MAKES SENSE FOR US TO START WITH THE CONTENTIONS MOTION.

2               SO MR. JOHNSON, I WILL BEGIN WITH YOU.  AND I WILL BEGIN

3     IN PARTICULAR BY ASKING, AM I RIGHT IN UNDERSTANDING THAT

4     JUDGE KOH'S CLAIM CONSTRUCTION ORDER IS ONE BASIS FOR THE

5     REQUEST BUT NOT THE ONLY BASIS?

6               MR. JOHNSON:  THAT'S CORRECT.

7               THE COURT:  SO WHY DON'T YOU TAKE IT FROM THERE.

8               MR. JOHNSON:  AND I WILL TRY TO BE BRIEF, YOUR HONOR.

9     AND IF YOU HAVE QUESTIONS AS I GO THROUGH, PLEASE LET ME KNOW.

10              BUT OBVIOUSLY THE AMENDMENTS THAT WE SEEK FALL INTO FIVE

11    BASIC CATEGORIES.  AND THE FIVE CATEGORIES ARE:

12              AMENDMENTS -- TO JUST TO REFRESH YOUR HONOR'S

13    RECOLLECTION, ARE ON THE SAMSUNG SIDE, THAT SAMSUNG IS

14    ASSERTING.

15              THE FIRST CATEGORY IS TO AMEND SOME OF THE CONTENTIONS ON

16    THE '239 AND '757 PATENT DUE TO THE COURT'S CLAIM CONSTRUCTION

17    WHICH ISSUED ON APRIL 11TH.  AND WE SERVED AMENDED CONTENTIONS

18    ON APRIL 26TH.  THEN WE FILED THIS MOTION ON APRIL 30TH.

19              WE ALSO HAVE AMENDMENTS RELATED TO THE '757, '449, '556

20    BASED ON NOW DOCUMENTS PRODUCED BOTH BY APPLE AND THIRD PARTIES

21    IN THE CASE.

22              WE ALSO HAVE AMENDMENTS WITH RESPECT TO DOCTRINE OF

23    EQUIVALENCE WHICH FLY FROM THOSE SAME DOCUMENTS AND THE CLAIM

24    CONSTRUCTION.

25              THEN S II, NOTE 2 ADDED IN LIGHT OF THE DECISION THAT THE

1    COURT GRANTED IN THE STIPULATION FOR APPLE TO BE ALLOWED TO ADD

2    THOSE PRODUCTS.

3        THEN WE HAVE THE INDIRECT INFRINGEMENT THEORY FOR CLAIMS

4    1 AND 7 ON THE '239 DUE TO THE AKAMAI CASE THAT'S COME DOWN.

5        BRIEFLY TALK ABOUT THE '757 AMENDMENTS DUE TO CLAIM

6    CONSTRUCTION.  THE COURT CAME UP WITH THE CLAIM CONSTRUCTION

7    THAT WAS NOT PROPOSED BY SAMSUNG AND FRANKLY WASN'T PROPOSED BY

8    APPLE EITHER.

9        AND THE AMENDMENTS WE ARE SEEKING WITH RESPECT TO THE

10   '757 PATENT RELATE TO THE COURT'S CLAIM CONSTRUCTION OF THE

11   STORAGE INTERFACE DEVICE THAT RESIDES IN AN AREA SUCH AS A

12   RECOMMEND OR SIMILAR LOCATION.

13       SO WHAT WE ARE SEEKING TO DO IS EXPLAIN HOW THE APPLE

14   DEVICES RESIDE AND MEET THAT LIMITATION.  WE'VE ALSO ATTACHED

15   EVIDENTIARY SUPPORT FOR HOME SHARING, USING THE MAC.

16       THE MAC USED HOME SHARING, THAT WAS IN OUR ORIGINAL

17   CONTENTIONS.  AND WE PROVIDE ADDITIONAL EVIDENTIARY SUPPORT IN

18   LIGHT OF THAT.

19       WE ALSO ADDED DOCTRINE OF EQUIVALENCE TO EXPLAIN THAT

20   MOBILE DEVICES ARE EQUIVALENT TO THE DEVICES THAT RESIDE IN AN

21   AREA SUCH AS A ROOM OR SIMILAR LOCATION.

22       SO THOSE FLOW DIRECTLY FROM WHAT WE BELIEVE TO BE THE

23   LOCAL RULE ALLOWING GOOD CAUSE IN LIGHT OF THAT.

24           THE COURT:  PERHAPS WE MIGHT JUST START THERE SINCE

25   WE'VE GOT A LOT OF ISSUES TO COVER.

1        YOU POINT OUT THAT JUDGE KOH ADOPTED A CONSTRUCTION FOR

2   THE ZONE SPECIFIC STORAGE AND INTERFACE DEVICE TERM THAT WAS

3   PROPOSED BY NEITHER PARTY, CORRECT?

4        MR. JOHNSON:  CORRECT.  RIGHT.

5        THE COURT:  AND AS I UNDERSTAND IT, WHAT SHE

6   BASICALLY CONCLUDED WAS THAT TERM WAS, BEST UNDERSTOOD AS

7   SOMETHING OTHER THAN THE PROPOSAL THAT YOU HAD OFFERED WHICH

8   WAS A DEVICE ASSOCIATED WITH A PARTICULAR VIEWING AREA.  IS

9   THAT GENERALLY CORRECT?

10        MR. JOHNSON:  GENERALLY.

11        BASICALLY, APPLE WAS PROPOSING THAT IT BE FIXED.  WE

12   PROPOSED SOMETHING BROADER THAN THAT.  AND THE JUDGE CAME UP

13   WITH A HYBRID, SO TO SPEAK.

14        THE COURT:  OKAY.

15        AND IF I HAVE THIS RIGHT, THIS WAS A MEANS PLUS FUNCTION

16   TERM, CORRECT?

17        MR. JOHNSON:  NO, IT WAS NOT A MEANS PLUS FUNCTION

18   TERM, NOT THIS ONE.

19        THE COURT:  OKAY.  I'M SORRY.  I'M REFERRING TO THE

20   '239 TERM.  OKAY.

21     SO WHETHER IT'S A MEANS PLUS FUNCTION TERM OR OTHERWISE, I

22   TAKE IT THAT IF THE CONSTRUCTION CAME OUT ON THE 17TH, YOU'VE

23   SUBMITTED OR SHARED WITH APPLE YOUR PROPOSED AMENDMENTS ON THIS

24   ISSUE, SOMETHING LIKE A WEEK OR TWO LATER.

25        MR. JOHNSON:  RIGHT.

1          ACTUALLY, IT CAME DOWN ON APRIL 11TH AND WE GAVE THEM OUR

2     AMENDED CONTENTIONS 2 WEEKS LATER.

3               THE COURT:  OKAY.  ALL RIGHT.

4          IF WE COULD TURN TO THE '757 CONSTRUCTION, I WANTED TO

5     TALK ABOUT THOSE IN PARTICULAR.  AND IN PARTICULAR, AS I

6     UNDERSTAND IT, THERE ARE A NUMBER OF DETAILS YOU ARE LOOKING TO

7     ADD.

8          COULD YOU JUST EXPLAIN TO ME EXACTLY WHAT THESE DETAILS

9     ARE?

10               MR. JOHNSON:  ARE YOU REFERRING TO '757 OR THE '239?

11               THE COURT:  I WAS TALKING ABOUT THE '757.  THE

12     RESIDING IN THE AREA LIMITATION IN PARTICULAR.

13               MR. JOHNSON:  RIGHT.

14          WHAT WE ARE SEEKING TO ADD IS BASICALLY THE NOTION,

15     ESSENTIALLY, THAT, AND LET ME PULL IT UP FOR A SECOND.

16               THE COURT:  YEAH, GO AHEAD.

17               MR. JOHNSON:  SO THE NOTION ESSENTIALLY IS THAT THE

18     PRODUCTS HAVE, MEET THIS LIMITATION THAT THERE IS ACTUALLY,

19     THAT RESIDES IN AN AREA SUCH AS A ROOM OR SIMILAR LOCATION.

20          SO AS YOUR HONOR POINTED OUT, WE HAD THE ARGUMENTS THAT

21     THINGS WERE ASSOCIATED, IT WAS BROADER.  SO NOW THERE'S A MORE

22     RESTRICTED LIMITATION, THAT RESIDES IN AN AREA, THAT STILL

23     LEAVES SOME QUESTION ABOUT WHAT THAT MEANS.  BUT WHAT WE TRIED

24     TO DO WAS EXPLAIN WHEN THE SERVICES, WHEN THE ACCUSED PRODUCTS

25     ARE OPERATING THAT -- IF YOUR HONOR HAS THE CONTENTIONS IN

1      FRONT OF YOU.

2          I REPAIRED A RED LINE, AND THIS WOULD HAVE BEEN HELPFUL

3      TO PROVIDE TO YOUR HONOR.  I COULD HAND YOU UP MY COPY SO YOU

4      UNDERSTAND WHERE WE ARE TRYING TO ADD --

5              THE COURT:  IF YOU HAVE IT, I WOULD LOVE TO HAVE A

6      COPY.

7              MR. JOHNSON:  UNFORTUNATELY, I DON'T HAVE A COPY FOR

8      YOU, MR. SELWYN, BUT IF YOU'RE HAPPY WE CAN LOOK ALONG

9      TOGETHER.

10         SO IF YOU GO TO EXHIBIT D.

11             THE COURT:  OKAY.  THANK YOU.  D AS IN DOG.

12             MR. JOHNSON:  D AS IN DOG.

13             THE COURT:  OKAY.

14             MR. JOHNSON:  SO IF YOU START JUST AT THE BOTTOM, FOR

15     EXAMPLE ON PAGE 2, YOU WILL SEE WHAT WE ARE ADDING THERE

16     HIGHLIGHTED IN YELLOW IS THE NOTION THAT IT'S, THAT IT'S ALSO

17     UNDER THE DOCTRINE OF EQUIVALENCE.

18         AND THAT THE PREVIOUSLY ACCUSED DEVICES VARY FROM THE

19     PRODUCTS DESCRIBED AND CONTINUE TO ALLEGE INFRINGEMENT UNDER

20     PREVIOUSLY DISCLOSED THEORIES.  AS YOU THUMB THROUGH THIS YOU

21     WILL SEE THAT THERE ARE LIMITATIONS THAT ARE HIGHLIGHTED IN

22     GREEN AND THOSE ARE LIMITATION -- THOSE ARE CHANGES, AMENDMENTS

23     THAT WE UNDERSTAND NOT TO BE OBJECTED TO BY APPLE.

24             THE COURT:  I SEE.  OKAY.

25             MR. JOHNSON:  AND THE YELLOW STANDS FOR THOSE

1     SECTIONS THAT THEY ARE OBJECTING TO.

2         SO IF YOU TURN TO PAGE 5 AT THE BOTTOM YOU WILL SEE IN

3     YELLOW.  TO THE EXTENT APPLE ARGUES THE ACCUSED DEVICES ARE NOT

4     CENTRAL STORAGE INTERFACE DEVICES BECAUSE THEY COMPRISE MORE

5     THAN ONE GUISE THIS LIMITATION IS STILL MET UNDER THE DOCTRINE

6     OF EQUIVALENCE BECAUSE APPLE'S DEVICES ACT NOTHING CONCERT IS

7     AN INSUBSTANTIAL DIFFERENCE.

8         AND THAT IS AN EXAMPLE OF A SITUATION WHERE WE RECEIVED

9     DISCOVERY FROM APPLE ON THE CENTRAL STORAGE AND INTERFACE

10    DEVICE ON APRIL 13TH IN RESPONSE TO AN INTERROGATORY WHERE THEY

11    IDENTIFIED THEIR BILL OF MATERIALS, AFTER -- THERE'S BEEN A LOT

12    OF DISCOVERY HERE.  BUT THEY FINALLY RESPONDED TO AN

13    INTERROGATORY LINKING THE ACCUSED PRODUCTS TO ACTUAL DOCUMENTS

14    THAT ESTABLISH WHAT THE BILL OF MATERIALS WERE.

15        WE STARTED TO SEE ALSO THEIR EXPLANATION IN APRIL IN

16    THEIR RESPONSES, ON APRIL 13TH WHERE THEY IDENTIFIED HOW THEIR

17    CENTRAL STORAGE AND INTERFACE DEVICES OPERATE.  SO WHEN WE GOT

18    THAT WE AMENDED IT AND WE PUT THAT IN.  AND WE CAN GO THROUGH

19    THESE ONE AT A TIME.

20        BUT IF YOU LOOK AT THE -- IF YOU LOOK AT THE NEXT, ON

21    PAGE SIX AT THE TOP, APPLE HAS NOT PROVIDED ANY ADEQUATE

22    EVIDENCE AND CONTENTION THAT IS IT DOESN'T LITERALLY INFRINGE

23    THE ASSERTED CLAIMS.

24        YOU SAW IN OUR BRIEF, YOUR HONOR, WE ASKED THEM FOR THEIR

25    NON INFRINGEMENT THEORIES AND WHAT WE GOT BACK IN RESPONSE WAS

1    BASICALLY A REGURGITATION OF THE CLAIM LANGUAGE SAYING EVERY

2    LIMITATION WASN'T THERE WE DIDN'T GET A DETAILED EXPLANATION OF

3    WHAT THEY REALLY THINK IS NOT THERE.

4         SO WE WERE NOT IN A POSITION WHERE WE COULD COME IN AND

5    THEN SAY, WELL, IF THEY'VE IDENTIFIED A PARTICULAR PART OF A

6    COMPONENT AS NOT BEING PRESENT AND BECAUSE OF THAT IT DOESN'T

7    MEET A CLAIM LIMITATION, WE WEREN'T IN THE SITUATION WHERE WE

8    COULD COME BACK AND THEN SAY WELL IT'S MET UNDER THE DOCTRINE

9    OF EQUIVALENCE BECAUSE NOW YOU IDENTIFIED A LEVEL OF DETAIL IN

10   AN ACCUSED COMPONENT THAT'S NOT THERE.  WE THINK THERE'S

11   EQUIVALENCE AND HERE'S WHY.

12        SO WHAT WE DID WAS WHEN WE GOT THEIR RESPONSES WE

13   PROVIDED THEM WITH AN EXPLANATION OF THE DOCTRINE OF

14   EQUIVALENCE AND REQUEST WHY WE THINK DOCTRINE OF EQUIVALENCE IS

15   THERE.  WE GO INTO SOME DETAIL AS BEST WE CAN WHY IT'S THERE.

16   BUT IT'S STILL A GUESSING GAME IN SOME RESPECTS.

17        WE HAVE A BETTER UNDERSTANDING OF SOME OF THEIR NON

18   INFRINGEMENT ARGUMENTS BASED ON THE MARKMAN PROCESS AND NOW THE

19   MARKMAN ORDER AND SOME OF THE DISCUSSIONS THAT HAVE BEEN SINCE

20   THEN.

21        AND WHAT WE TRIED TO DO IN OUR DOCTRINE OF EQUIVALENCE

22   ANALYSIS IS LAY OUT THE FUNCTION WAVE RESULT TEST AND

23   SUBSTANTIAL DIFFERENCE TEST AND EXPLAIN WHY THERE ARE

24   EQUIVALENT.

25        FOR EXAMPLE, GOING BACK TO THE CENTRAL STORAGE SERVER.

1    THEY TAKE THE POSITION THERE'S NO ONE STORAGE SERVER THEY ARE

2    SPREAD OUT.  NOW WE UNDERSTAND THAT TO BE THEIR CASE AND THAT'S

3    THEIR ARGUMENT BASED ON THE INTERROGATORY RESPONSES WE GOT IN

4    APRIL.  WE NOW EXPLAINED WHY ONE CENTRAL STORAGE UNIT IS

5    EQUIVALENT TO STORAGE UNITS THAT ARE SPREAD OUT, SO TO SPEAK.

6         THE COURT:  SO ON THE CONSTRUCTION AND NEW DISCOVERY

7    ARGUMENTS, I TEND TO APPRECIATE THAT THE BIND OR THE PICKLE YOU

8    ARE IN, IN TERMS OF UNDERSTANDING WHAT'S APPROPRIATELY ACCUSED

9    AND WHAT THEORIES MIGHT APPLY.

10        I'M LESS PERSUADED AT LEAST AT THIS POINT ON THE ISSUE OF

11   THEIR NON INFRINGEMENT POSITIONS.  WHAT ARGUMENT ARE YOU MAKING

12   THAT SOMEHOW THEIR LACK OF CLARITY ON NON INFRINGEMENT WOULD

13   JUSTIFY A DOE ADDITION.

14        MR. JOHNSON:  LET ME BACK UP.

15      ON THE DOE, THE VERY FIRST CONTENTIONS WE SUBMITTED BACK IN

16   JUNE OF 2012, WE SAID THAT TO THE EXTENT THAT ANY ELEMENT OR

17   LIMITATION IS NOT FOUND LITERALLY, IT'S THERE UNDER THE

18   DOCTRINE OF EQUIVALENCE.

19        THE COURT:  WHICH OF COURSE IS KIND OF BOILER PLATE.

20        MR. JOHNSON:  IT IS BOILER PLATE BUT WE THINK THAT'S

21   STILL THE LOCAL RULES BASICALLY SAY, TELL US IF YOU ARE GOING

22   TO RELY UPON IT AND LIKE WE DO IN EVERY CASE, EVERYBODY DOES,

23   YOU SAY YOU ARE GOING TO RELY UPON IT.

24        THE COURT:  I THINK THAT'S MORE OF A NONWAIVER THAN

25   ASSERTION, BUT I HEAR WHAT YOU ARE SAYING.

1    WE KEPT OUR FOOT IN THE DOOR.  THEN ON SEPTEMBER 25TH

2  WE SERVED THEM ON AN INTERROGATORY IN NON INFRINGEMENT.

3    ON NOVEMBER 8TH THEY COPIED THE CLAIM LANGUAGE, GAVE IT

4  BACK TO US.  WE MET AND CONFERRED ON NOVEMBER 30TH AND

5  COMPLAINED ABOUT THEIR LACK OF DETAIL ON NON INFRINGEMENT

6  ARGUMENTS.  THEY THEN RESPONDED ON DECEMBER 20TH AND BASICALLY

7  SAID THAT OUR RESPONSE WASN'T DETAILED ENOUGH.  WE THEN CAME

8  BACK AND COMPLAINED AGAIN TO THEM ON JANUARY 3RD.

9    AND MY POINT SIMPLY IS FOR A LOT OF THESE AND IT'S NOT

10  ALL THE DOCTRINE OF EQUIVALENCE ARGUMENTS BECAUSE THERE ARE

11  SPECIFIC DOCTRINE OF EQUIVALENCE ARGUMENTS IN HERE IN OUR

12  CONTENTIONS WHICH I WILL GO THROUGH WHERE WE ARE RELYING ON NEW

13  EVIDENCE AND WE ARE RELYING ON THE CLAIM CONSTRUCTION ISSUES.

14    BUT WE DID ADD DOCTRINE OF EQUIVALENCE AS WE GOT FURTHER

15  INTO THE PROCESS WHERE WE STARTED TO UNDERSTAND THROUGH THE

16  PROCESS THROUGH DEPOSITIONS THROUGH DISCOVERY WHAT THEIR

17  POSITIONS ARE GOING TO BE MOST LIKELY ON SOME OF THESE CLAIM

18  LIMITATIONS.

19    SO FOR THOSE WE'VE ARTICULATED FUNCTION WAVE RESULT AND

20  INSUBSTANTIAL DIFFERENCE TEST.

21    THE COURT:  RIGHT.

22    MR. JOHNSON:  THERE ARE TWO REAL CATEGORIES OF

23  DOCTRINE OF EQUIVALENCE.  THERE'S THE SORT OF MORE GENERAL

24  DOCTRINE OF EQUIVALENCE BASED ON DISCOVERY AND THEN THERE ARE

25  SPECIFIC DOCTRINE OF EQUIVALENCE ARGUMENTS THAT WE ARE ADDING

1       BASED UPON NEW EVIDENCE, NEW CLAIM CONSTRUCTION.

2                   THE COURT:  YEAH.

3           AND AS TO THAT LATTER CATEGORY THOSE LATTER CATEGORIES, AS

4       I SAID I TEND TO BE SYMPATHETIC TO THE POSITION YOU ARE IN.

5       YOU DIDN'T KNOW WHAT JUDGE KOH WAS GOING TO SAY ABOUT A

6       SPECIFIC TERM.  ONCE SHE TOLD YOU WHAT SHE MEANT, YOU ARE

7       STEPPING FORWARD WITH THE NEW CONSTRUCTION.  AT THE SAME TIME

8       YOU DIDN'T GET CERTAIN DOCUMENTS FROM APPLE.

9                   THE MORE GENERAL ISSUE IS MORE TROUBLING.

10                  MR. JOHNSON:  THAT'S THE HARDER ISSUE.

11          AND AS I SAID, IN EVERY CASE, AND IT'S HAPPENED ON BOTH

12      SIDES AND YOU WILL BE HEARING IN A FEW WEEKS ON APPLE'S MOTION

13                  THE COURT:  I DID SEE THAT.

14                  MR. JOHNSON:  SO IT'S A PROCESS OF TRYING TO

15      UNDERSTAND THROUGH DISCOVERY -- I MEAN, THERE ARE A LOT OF

16      CLAIMS, THE JUDGE ORDERS US TO REDUCE THE CASE AS WE GO

17      FORWARD.

18          SO WHAT WE HAVE BEEN TRYING TO DO AS BEST WE CAN, THERE'S A

19      LITTLE BIT OF GUESSING ON BOTH SIDES.  BUT AS THE POSITIONS

20      HAVE GELLED IN THE CASE, WE HAVE TAKEN AS BEST WE COULD AND AS

21      DILIGENTLY AS WE COULD.  WE LAID OUT THE FUNCTION WAVE RESULT

22      TEST FOR THOSE LIMITATIONS WE THINK ARE GOING TO BE AT ISSUE.

23                  AND THERE'S NO REAL PREJUDICE HERE IN THAT SENSE.

24                  THE COURT:  AND ON THIS ISSUE, CAN I ASK YOU, WHERE

25      ARE YOU IN TERMS OF EXPERT DISCOVERY.

```
 1              MR. JOHNSON:  WE HAVEN'T STARTED.

 2         SO -- THE CLOSE OF DISCOVERY, FACT DISCOVERY IS JULY 8TH.

 3    AND EXPERT DISCOVERY HAPPENS AFTER THAT.

 4         AND FRANKLY, THROUGH THIS PROCESS WE ARE WHITTLING DOWN THE

 5    PATENTS WE ARE ON A VERY STRICT DIET OF THE WHAT TO DROP WHEN.

 6              THE COURT:  AND DO YOU HAVE ANY UPCOMING -- AS I

 7    UNDERSTAND JUDGE KOH'S FRAMEWORK, YOU HAVE MILESTONES AT WHICH

 8    YOU HAVE TO DROP CLAIMS AND OTHER THINGS.

 9              MR. JOHNSON:  THAT'S RIGHT.

10              THE COURT:  DO YOU KNOW ROUGHLY WHEN YOUR NEXT

11    MILESTONE IS?

12              MS. MAROULIS:  JUNE 28TH.  TWO MORE PATENTS.

13              MR. JOHNSON:  AND THAT'S ALSO PART OF THE ISSUE IS,

14    FRANKLY, WE MAY BE TALKING ABOUT PATENTS HERE WHICH END UP

15    GETTING DROPPED ON BOTH SIDES AND THAT'S JUST THE WORLD WE ARE

16    IN, I THINK.

17              THE COURT:  OKAY.

18         CAN YOU TALK A LITTLE BIT ABOUT THE ADDITIONAL CATEGORY OF

19    THE S3 AND THE NOTE 2.

20              MR. JOHNSON:  SURE.

21         SO WE HAD NO INTENTION OF BRINGING THOSE PRODUCTS INTO THE

22    CASE.  ON YET, AS I SAID, WE HAD BOTH HAD COMPETING MOTIONS TO

23    AMEND THE INFRINGEMENT CONTENTIONS BACK IN THE LATE FALL.  AND

24    WANTED TO ADD THE IPHONE 5, WANTED TO ADD THE S3 AND THE NOTE

25    2.
```

1        WE REACHED AGREEMENT, THE COURT ENTERED A STIPULATION ON

2   JANUARY 16TH ADDING THEM INTO THE CASE IN EXCHANGE FOR US

3   ADDING THE IPHONE 5.

4        AND ON FEBRUARY 28TH WE INDICATED TO APPLE THAT WE WANTED

5   TO ADD THESE PRODUCTS TO, NOW THAT THEY WERE IN THE CASE WE

6   WANTED TO BE ABLE TO RELY UPON THOSE PRODUCTS AS, YOU KNOW, AS

7   COMMERCIAL SUCCESS.

8        AND THE TO THE POINT IF THEY ARE GOING TO ACCUSE THEM OF

9   INFRINGEMENT AND THEY ARE GOING TO HAVE A CLAIM OF WILLFULNESS

10  AND COPYING WHICH I'VE SEEN BEFORE, WE SHOULD BE ABLE TO AT

11  LEAST ARGUE THAT WE HAVE PATENTS THAT COVER THESE SAME

12  PRODUCTS.

13        AND THAT'S AN ISSUE THAT'S GOING TO PROBABLY BE SUBJECT

14  TO MOTIONS IN LIMINE DOWN THE ROAD AT SOME POINT.

15        BUT IN TERMS OF DISCOVERY AND BEING ABLE TO AT LEAST SAY

16  THAT WE HAVE PRODUCTS THAT EMBODY OUR PATENTS, WHICH IS WHAT

17  THE LOCAL RULES REQUIRE, WE THINK WE SHOULD BE ABLE TO, IT

18  WOULD BE INCREDIBLY PREJUDICIAL TO US IF THEY WERE ABLE TO ADD

19  THE S3 AND THE NOTE 2 ON THEIR SIDE AND WE CAN'T SAY ANYTHING

20  ABOUT THEM ON OUR SIDE.

21        THE COURT:  AND I'M -- I'M HEARING IN YOUR ARGUMENT

22  AN APPEAL TO THE PREJUDICE ISSUE.  BECAUSE AS I UNDERSTAND IT,

23  UNDER THE AGREEMENT, THIS WAS A STIPULATION YOU ALL REACHED

24  THAT I SIGNED, IF I REMEMBER CORRECTLY.

25        MR. JOHNSON:  RIGHT.

```
 1              THE COURT:  THESE TWO PRODUCTS IN PARTICULAR ARE NOW

 2     IN THIS CASE ONE WAY OR THE OTHER.  WHETHER I GRANT THIS MOTION

 3     OR NOT, THERE'S GOING TO BE DISCOVERY THERE HAS BEEN DISCOVERY.

 4              MR. JOHNSON:  THERE'S BEEN A LOT OF DISCOVERY.

 5              THE COURT:  SO WE ARE NOT TALKING ABOUT OPENING UP AN

 6     ENTIRELY NEW CAN OF WORMS ON PRODUCT SOURCE CODE AND ALL OF

 7     THAT.

 8              MR. JOHNSON:  THAT'S CORRECT.

 9              THE COURT:  I'M EAGER TO HEAR YOUR THEORY ON AKAMAI.

10     AS I UNDERSTAND AKAMAI WAS A METHOD CLAIM CASE.  BUT TELL ME

11     WHY THAT DOESN'T MATTER.

12              MR. JOHNSON:  IT IS A METHOD CLAIM CASE BUT I DON'T

13     THINK IT'S RESTRICTED TO METHOD CLAIMS.

14         SO TO REVIEW THE BIDDING ON IT, I MEAN, BASICALLY WE --

15     EVEN IN OUR ORIGINAL INFRINGEMENT CONTENTIONS WE DISCLOSED AND

16     HAD A CLAIM OF INDUCEMENT AND INDIRECT INFRINGEMENT IN THERE.

17         AND WHAT WE'RE SAYING, SIMPLY DOING WITH THIS LATEST

18     AMENDMENT, IS MAKING IT CRYSTAL CLEAR THAT WE ARE ASSERTING AN

19     INDUCEMENT CLAIM WHERE THE DIRECT INFRINGEMENT IS CAUSED BY

20     POTENTIALLY TWO DIFFERENT USERS OF APPLE'S PRODUCTS.

21         AND YOU KNOW, IF YOU LOOK AT CLAIM 1 THAT'S AT ISSUE THAT

22     WE TALK ABOUT, AND THIS IS AT OUR PAPERS AT 11, AND THIS IS

23     EXHIBIT H, PAGE TWO, YOU KNOW, THERE'S AN ARGUMENT THAT THE

24     MOBILE REMOTE UNIT IS CONTROLLED BY A FIRST USER, THEN THE

25     SECOND PORTION WHICH IS BASICALLY THE HOST AND PLAYBACK UNIT IS
```

1    CONTROLLED BY A SECOND USER.

2        WE THINK THAT WAS COVERED IN OUR ORIGINAL INFRINGEMENT

3    CONTENTIONS.  BUT THE AKAMAI CASE I THINK GIVES US A HOOK TO

4    ALLOW TO BASICALLY SAY THAT YOU COULD HAVE TWO USERS PERFORMING

5    THE SAME LIMITATIONS UNDER THE -- IT WOULD MEET AT LEAST THE

6    TEST FOR INDUCEMENT.

7            THE COURT:  SO YOUR THINKING THEN IS THAT EVEN WHEN

8    WE ARE TALKING ABOUT APPARATUS CLAIMS.  WHEN YOU ARE CHARGED

9    AGAINST APPLE WHEN THEY ARE INDUCING INFRINGEMENT, AKAMAI GIVES

10   YOU LEAVE OR THE AUTHORITY TO ARGUE THAT THE DIRECT INFRINGER

11   AS APPLE IS INDUCING CAN BE DIFFERENT PEOPLE.

12       IN OTHER WORDS, THEY CAN SUPPLY DIFFERENT COMPONENTS OF THE

13   APPARATUS.  AND UNDER AKAMAI, THAT'S OKAY.

14           MR. JOHNSON:  UNDER AKAMAI YOU COULD HAVE EXACTLY --

15   YOU COULD HAVE TWO DIFFERENT USERS THAT MEET THE LIMITATIONS OF

16   THE CLAIMS.

17       IT'S THE SAME DEVICE, BOTH ARE USING THE SAME DEVICE BUT

18   THEY ARE USING DIFFERENT LIMITATIONS WITHIN THE CLAIM.

19       SO ONE IS BASICALLY, YOU KNOW, IS -- IF YOU LOOK AT CLAIM

20   ONE OF THE '239 IT TALKS ABOUT A MOBILE UNIT THAT CAPTURES

21   DIGITIZES COMPRESSES, THE SIGNAL, FOR EXAMPLE VIDEO.  THEN THE

22   HOST UNIT RECEIVES IT AND PLAY ITS BACK.

23       IF I'M SENDING A PHOTO OR A VIDEO TO MY 14-YEAR OLD, THE

24   SAME BASIC, WE BOTH HAD IPHONES THE SAME BASIC DEVICE SAME

25   ASPECTS BUT WE ARE PERFORMING DIFFERENT LIMITATIONS WITHIN THAT

1    CLAIM.

2            THE COURT:  SO MY FIRST QUESTION TO YOU ON THAT

3    SUBJECT, SAYS ANYONE SINCE AKAMAI, I DON'T THINK THE CIRCUIT

4    SPOKE TO THIS, BUT HAS THE DISTRICT COURT EXTENDED OR APPLIED

5    AKAMAI AS YOU SUGGESTED, YOUR HONOR.  I DON'T KNOW THE ANSWER

6    TO THAT.  I HAVEN'T SEEN IT APPLIED THAT WAY.

7            THE COURT:  I DON'T THINK IT'S FATAL IF NO ONE HAS.

8    I'M JUST CURIOUS IF THERE'S A CASE OF IT.

9            MR. JOHNSON:  I DON'T KNOW IF WE'VE DONE A FULLY

10   COMPREHENSIVE SEARCH YET, YOUR HONOR.  I HAVEN'T SEEN A CASE

11   THAT SAYS THAT.

12           THE COURT:  MY SECOND QUESTION IS, DIDN'T AKAMAI COME

13   OUT LAST SUMMER.  SO WHY ARE WE HERE IN JUNE OF 2013?

14           MR. JOHNSON:  WHEN I STARTED LOOKING AT THIS I HAD

15   THE SAME QUESTION, YOUR HONOR.

16      THE INFRINGEMENT CONTENTIONS CAME DOWN IN JUNE, THAT'S WHEN

17   THE ORIGINAL CONTENTIONS WERE DONE.  AUGUST IS WHEN THE

18   DECISION COMES DOWN.

19      THERE ARE, AS I SAID FROM -- WE LOOK AT THE LIMITATIONS WE

20   LOOK AT THE ORIGINAL INFRINGEMENT CONTENTIONS.  WE THINK THIS

21   IS COVERED IN THERE.

22      ALL WE ARE TRYING TO DO IS MAKE IT CRYSTAL CLEAR THROUGH

23   THIS PROCESS -- AND BY THE WAY, THE OTHER INFRINGEMENT

24   CONTENTIONS AMENDMENTS ADDED NEW PRODUCTS.  WE ARE LOOKING AT

25   THINGS A LITTLE BIT DIFFERENTLY IN THAT SENSE.

1          THE COURT:  OKAY.  ALL RIGHT.

2      WELL, BEFORE WE TURN TO THE MOTION TO COMPEL, I WANT TO

3  SORT OF NAIL THIS ONE DOWN.

4          MR. JOHNSON:  THE WILLFUL INFRINGEMENT ISSUE ON THE

5  '757 IS AN IMPORTANT ISSUE FOR US BECAUSE I WANT TO GO THROUGH

6  AGAIN THE CHRONOLOGY OF WHAT HAPPENED WHEN.

7      WE DID KNOW ABOUT A LETTER THAT REFERENCED APPLE TRYING TO

8  TAKE A LICENSE UNDER THE '757 PATENT.  BUT WE SERVED DISCOVERY

9  ON APPLE BACK ON JULY 31ST OF LAST YEAR, REQUEST FOR

10  PRODUCTIONS, '149 AND '142, COMMUNICATIONS WITH REQUEST WAS

11  '149.  REQUEST FOR PRODUCTION '142, ALL OPINIONS OF COUNSEL.

12      WE GOT DOCUMENTS FINALLY PRODUCED BY REQUEST ON

13  FEBRUARY 7TH OF 2013.  AND IN THERE WE SAW THERE WERE DOCUMENTS

14  WHERE THERE WERE COMMUNICATIONS DIRECTLY WITH APPLE WHICH WE

15  DID NOT KNOW BEFOREHAND.

16          THE COURT:  I TAKE IT WHAT YOU ARE REALLY SAYING IS

17  EVEN THOUGH YOU ASKED FOR THE DOCUMENTS LAST SUMMER YOU NEVER

18  GOT THEM FROM APPLE.

19          MR. JOHNSON:  ON MARCH 12TH WE SENT APPLE A LETTER

20  SAYING THEY HAVEN'T PRODUCED A SINGLE DOCUMENT RELATED TO

21  REQUESTS.  AND WE KNOW ABOUT THESE DOCUMENTS NOW BECAUSE WE GOT

22  SOME FROM THE REQUEST.

23      ON MARCH 21ST THEY PRODUCED A FEW DOCUMENTS AND THOSE

24  DOCUMENTS FRANKLY ARE WITHIN 1 MILLION PAGES OF DOCUMENTS THEY

25  PRODUCE ON THE SAME DAY.  WE FIND THOSE.  AND WE TELL APPLE

1    THAT WE ARE GOING TO MOVE TO AMEND TO ASSERT WILLFUL

2    INFRINGEMENT ON MARCH 29TH.  EIGHT DAYS AFTER WE FIND THE

3    DOCUMENTS AFTER THEY PRODUCED THE DOCUMENTS.

4         AND WE FILED A MOTION TO AMEND ON APRIL 30TH.

5         THEN ON MAY 30TH JUST ABOUT TEN DAYS AGO, RIGHT, THEY

6    PRODUCE ADDITIONAL DOCUMENTS INCLUDING NOW OPINIONS OF COUNSEL

7    AND DRAFT LICENSING AGREEMENT AND NEGOTIATION DOCUMENTS.  WE

8    HADN'T SEEN ANY OF THESE BEFORE.

9         SO, YOU KNOW, AND WE ARE CAREFUL ABOUT ASSERTING CLAIMS,

10   YOU KNOW, WILLFULNESS WAS NOT IN THE ORIGINAL CONTENTIONS

11   BECAUSE FRANKLY WE DIDN'T HAVE A LOT OF EVIDENCE TO SUPPORT IT.

12        SO AS THE EVIDENCE BECAME, CAME OUT AND WE STARTED TO SEE

13   THERE WAS A REAL SITUATION HERE, WE HAVE MOVED TO AMEND TO ADD

14   WILLFULNESS TO THE CASE.

15        THE COURT:  IS THIS WILLFULNESS CHARGE LIMITED TO THE

16   '757 OR ARE THERE OTHER PATENTS IMPLICATED AS WELL.

17        MR. JOHNSON:  IT'S REALLY THE '757.

18        THE COURT:  OKAY.  ALL RIGHT.

19   WELL, I MAY HAVE UNDOUBTEDLY WILL HAVE MORE QUESTIONS BUT

20   I WILL GIVE YOU A CHANCE FOR RESPONSE BEFORE WE TURN TO THE

21   OTHER ISSUE.

22        MR. JOHNSON:  THANK YOU.

23        THE COURT:  MR. SELWYN?

24        MR. SELWYN:  GOOD MORNING, YOUR HONOR.

25        THE COURT:  GOOD MORNING.

1          MR. SELWYN:  YOUR HONOR, WE ARE NOW FOUR WEEKS FROM

2     THE CLOSE OF FACT DISCOVERY, SIX WEEKS FROM THE DEADLINE FOR

3     OPENING EXPERT REPORTS.

4          AND WHAT SAMSUNG IS PROPOSING TO DO BY THESE CONTENTIONS IS

5     ADD SWEEPING SUBSTANTIVE CHANGES TO ITS THEORYS INSTEAD OF

6     FOCUSSING THE CASE AS JUDGE KOH HAS VERY CLEARLY STATED THE

7     PARTIES SHOULD DO, SAMSUNG IS SEEKING TO DRAMATICALLY EXPAND

8     ITS THEORIES.

9          AS I THOUGHT ABOUT HOW TO PREPARE FOR THIS ARGUMENT, I

10    WENT THROUGH AND LISTED EACH AND EVERY ONE OF THE NEW THEORIES.

11    IT'S 20, 30 DIFFERENT NEW THEORIES.

12         MANY OF THOSE ARE NOT EVEN ADDRESSED IN SAMSUNG'S MOTION

13    AT ALL.  AND WE POINT THAT OUT IN OUR OPPOSITION THAT HOW CAN

14    THEY SHOW GOOD CAUSE THEY HAVEN'T PROVIDED ANY EXPLANATION

15    WHATSOEVER.

16         THEY THEN USE THE REPLY BRIEF TO TRY TO PROVIDE SOME

17    EXPLANATION.  SO THAT PUTS US IN A POSITION, APPLE OF HAVING

18    NOW TO TRY TO ADDRESS ARGUMENTS THAT SHOULD HAVE BEEN IN THE

19    OPENING BRIEF, IF AT ALL.

20         LET ME JUST POINT TO YOUR HONOR'S DECISION LAST DECEMBER

21    IN THE DYNETIX DESIGN CASE BECAUSE I THINK IT'S INFORMATIVE OF

22    HOW TO THINK ABOUT THESE VERY LATE MOTIONS TO AMEND.

23         THAT CASE WAS SIMILAR TO OTHER CASES IN THIS DISTRICT IN

24    THAT THE TYPE OF EXPANSION OCCURRED LATE AFTER CLAIM

25    CONSTRUCTION AND YOUR HONOR FOUND THAT THERE WAS REAL PREJUDICE

1    TO THE DEFENDANT IN THAT SITUATION.

2         HERE THE PROPOSED EXPANSION IS FAR, FAR GREATER AND FAR,

3    FAR LATER THAN OCCURRED IN THAT CASE.  AND THAT CASE THE

4    PARTIES STILL HAD FIVE MONTHS LEFT IN FACT DISCOVERY.  WE HAVE

5    ONE MONTH LEFT IN FACT DISCOVERY AND BOY IS IT GOING TO BE A

6    BUSY MONTH AS IS.

7              THE COURT:  FOR YOU OR FOR ME?

8              MR. SELWYN:  HOPEFULLY NOT FOR YOUR HONOR BECAUSE OF

9    US.

10             THE COURT:  I'M GUESSING FOR ALL OF US.

11        ON THAT ISSUE, AS YOU MIGHT GUESS, I HAVE SOME

12   FAMILIARITY WITH DYNETIX MYSELF, AND AS I THOUGHT ABOUT THAT

13   CIRCUMSTANCE AND OTHERS LIKE IT THAT I'VE HAD TO DEAL WITH IN

14   THIS CASE, IT SEEMS TO ME ONE FUNDAMENTAL DIFFERENCE THAT WE

15   NEED IS TO DEAL WITH IS THE FACT THAT YES, THERE MAY BE SOME

16   PREJUDICE GENERATED FROM THIS LATE AMENDMENT, BUT MUCH OF THAT

17   PREJUDICE IS A RESULT OF THE TIMING OF THE CLAIM CONSTRUCTION.

18        I DON'T THINK THAT WAS AN ISSUE IN DYNETIX, BUT TELL ME

19   WHY I OUGHT NOT WEIGH AT LEAST THE FACT THAT IT WASN'T

20   SAMSUNG'S PROBLEM THAT THE COURT'S ORDER ONLY CAME OUT IN

21   APRIL, THAT WAS JUST A FUNCTION OF ALL THE OTHER THINGS IN THE

22   COURT MANAGING ITS DOCKET.  SO TELL ME WHY THAT SHOULDN'T GIVE

23   SOME WEIGHT?

24             MR. SELWYN:  I THINK THE TIMING IS ACTUALLY VERY

25   SIMILAR BETWEEN THE TIME THE CLAIM CONSTRUCTION ORDER CAME OUT

1    IN DYNETIX AND WHEN THE PLAINTIFF MOVED TO AMEND.  I THINK IT

2    WAS ABOUT A MONTH APART.

3            THE COURT:  OKAY.  I WILL GO BACK AND CHECK MY NOTES.

4            MR. SELWYN:  I THINK THEIR CHRONOLOGY IS ACTUALLY

5    QUITE SIMILAR TO WHAT WE ARE FACING HERE.

6        AND THE CHANGES THAT SAMSUNG WANTS TO MAKE IN LIGHT OF

7    THE MARKMAN ORDER ARE JUST A FRACTION, AND I MEAN A FRACTION OF

8    WHAT THEY PROPOSE TO AMEND BY THEIR MOTION.

9        LET ME TRY TO UNPACK A LITTLE BIT THEIR MOTION AND THE

10   ISSUES WE FACE WITH IT.  FIRST, DOCTRINE OF EQUIVALENCE,

11   SAMSUNG ISN'T PROPOSING TO CHANGE DOCTRINE OF EQUIVALENCE

12   BECAUSE OF THE MARKMAN ON '239 AND '757.  THEY WANT TO ADD

13   DOCTRINE OF EQUIVALENCE THEORIES FOR EVERYTHING.

14       AND AS YOUR HONOR NOTED THEY HAD A RESERVATION, THE

15   BOILER PLATE RESERVATION, THAT REALLY COUNTS FOR NOTHING UNDER

16   THE CASE LAW OF THIS DISTRICT.

17       SAMSUNG ARGUES RATHER STRENUOUSLY IT CANNOT SEVEN IT'S

18   EQUIVALENCE THEORY EARLIER BECAUSE APPLE HAD NOT DISCLOSED NON

19   INFRINGEMENT THEORIES UNTIL NOVEMBER.  WITH RESPECT THAT HAS

20   THE SEQUENCE BACKWARDS.  LOCAL RULE 3.1 REQUIRES THE PLAINTIFF

21   TO DISCLOSE INFRINGEMENT THEORIES WITHOUT REGARD TO WHETHER THE

22   DEFENDANT HAS IDENTIFIED LIMITATIONS IT CONTENDS IT DOESN'T

23   INFRINGE.

24       IN ANY EVENT, THE PARTIES REACHED THE AGREEMENT ABOUT THE

25   TIMING OF NON- INFRINGEMENT CONTENTIONS.  WE HAVE AGREED ON

1       SOME THINGS IN THE COURSE OF THE CASE.  AND WE AGREED IN

2       NOVEMBER WE WOULD EXCHANGE NON INFRINGEMENT CONTENTIONS ON THE

3       DATE THE PARTIES SET.

4            AT NO TIME OVER THE FIVE MONTHS FOLLOWING THAT EXCHANGE

5       DID SAMSUNG ATTEMPT TO ADD A DOCTRINE OF EQUIVALENCE THEORY.

6       MOREOVER, THERE WAS NO POINT AT WHICH SAMSUNG CAME TO US AND

7       SAID, HEY, WE ARE CONSIDERING DOCTRINE OF EQUIVALENCE BUT WE

8       HAVE A PROBLEM.  YOU HAVEN'T PROVIDED US ENOUGH DETAIL IN YOUR

9       NON INFRINGEMENT CONTENTIONS.

10           SECOND POINT ON DOCTRINE OF EQUIVALENCE.  WHAT THEY WANT

11      TO ADD IS ENTIRELY CONCLUSORY FOR EACH AND EVERY ONE OF THE

12      PATENTS.  IF YOU GO THROUGH IT AND TRY TO UNPACK WHAT THEY SAY,

13      IT ALL COMES DOWN TO BAILER PLATE FUNCTION WAVE RESULT WITHOUT

14      ANY TYPE OF ANALYSIS THAT THE CASES IN THIS DISTRICT HAVE

15      REQUIRED.

16           FOR THE '449 AND '757 PATENT, SAMSUNG CLAIMS IT'S RELYING

17      ON NONPUBLIC INFORMATION AS SUPPORT FOR ITS DOE THEORIES.  AS

18      WE POINT OUT IN OUR OPPOSITION BRIEF AND I WON'T GO THROUGH AND

19      CITE THE DOCUMENTS HERE, SAMSUNG HAD THOSE SAME DOCUMENTS AT

20      THE OUT SET THAT IT COULD HAVE USED.

21           FOR THE '449 PATENT EXHIBIT 9 AND 10 TO OUR OPPOSITION

22      BRIEF ARE DOCUMENTS PRODUCED BY APPLE AUGUST 28TH, 2012,

23      SHOWING THE EXISTENCE OF THE VERY THING SAMSUNG IS USING AS THE

24      BASIS TO AMEND FOR DOE.

25           AT THIS LATE DATE ADDING DOCTRINE OF EQUIVALENCE WOULD

1   CAUSE SERIOUS PREJUDICE TO APPLE.  WE HAVE BEEN PROCEEDING ON

2   THIS CASE FOR NEARLY A FULL YEAR ON THE BASIS OF LITERALLY

3   INFRINGEMENT ONLY.

4        DOE THEORIES WERE CERTAINLY MAKE THE TRIAL MORE

5   COMPLICATED.  IT WOULD REQUIRE APPLE AT THIS POINT TO REVISIT

6   CLAIM CONSTRUCTION TO THINK ABOUT THE PRIOR ART THAT HAS BEEN

7   USED TO MAKE A NEW INVESTIGATION WITH ITS FACTS AND WITH ITS

8   EXPERT WITNESSES.

9        LET ME TURN NOW IF I COULD TO THE POINTS ABOUT PROPOSED

10  AMENDMENTS BASED ON THE MARKMAN ORDER.

11       AND AGAIN, WITH THE '757 PATENT WHICH IS WHERE YOUR HONOR

12  STARTED, SAMSUNG PROPOSES TO ADD A VARIETY OF NEW THEORIES

13  BASED ON THE COURT'S CONSTRUCTION OF ZONE SPECIFIC STORAGE AND

14  INTERFACE DEVICE.

15       OUR POINT IS THAT SAMSUNG TOOK THE POSITION DURING

16  MARKMAN AND THROUGHOUT THE CASE THAT ANYTHING IS A ZONE.  WHAT

17  THAT MEANS IS ALL THE THEORIES THAT SAMSUNG WANTS TO ADVANCE

18  WORKS UNDER ITS PREVIOUS CLAIM CONSTRUCTION UNDER IT'S PREVIOUS

19  --

20       THE COURT:  LET ME ASK YOU ABOUT THAT, MR. SELWYN.

21  BECAUSE THE THOUGHT DID OCCUR TO ME IN PREPARING FOR THIS

22  HEARING.

23       CONCEPTUALLY, LET'S STEP BACK FROM THIS PARTICULAR

24  DISPUTE FOR A MOMENT AND TALK A BIG PICTURE STUFF.  IF A

25  PATENTEE OFFERS A VERY BROAD COMMUNICATION TO THE DISTRICT

1    COURT AND AS IS COMMON, THE DEFENDANT HAS A MUCH NARROWER VIEW

2    OF WHAT FALLS WITHIN THE SCOPE OF THE DISPUTED TERM.

3         LET'S ASSUME EITHER THE DISTRICT JUDGE ADOPTS THE

4    DEFENDANT'S VIEW OR SPLITS THE BABY IN SOME SENSE, TO USE MR.

5    JOHNSON'S TERM, ADOPTS A HYBRID.

6         IT WOULD SEEM THAT UNDER APPLE'S THEORY BECAUSE THE

7    PLAINTIFF OR PATENTEE WAS RELYING UPON A MUCH BROADER

8    CONSTRUCTION, THAT IN ALMOST NO CIRCUMSTANCE, IF NOT -- NO

9    CIRCUMSTANCE PERIOD, COULD I A PATENTEE JUSTIFY AN AMENDMENT

10   BECAUSE THE BROADER SWEEP WOULD NECESSARILY GIVE THEM THE

11   OPPORTUNITY TO INCLUDE ADDITIONAL PRODUCT IT IS OR ADDITIONAL

12   ACCUSATIONS THAT WOULD FALL WITHIN THE SCOPE OF THE ORIGINAL

13   POSITION.

14        SO DO YOU DISAGREE WITH THAT OR DO YOU BELIEVE THAT THERE

15   ARE IN FACT -- WHAT I'M GETTING AT HERE IS I'M LEERY OF

16   ADOPTING A STANDARD THAT WOULD BASICALLY SAY ANY TIME A

17   PATENTEE LOSES A CLAIM CONSTRUCTION THEY'RE EFFECTIVELY BARRED

18   FROM AMENDING THEIR CONTENTIONS BECAUSE THEY WERE COMING IN

19   WITH A BROAD CONSTRUCTION, THE JUDGE WENT NARROWER AND THERE'S

20   NOTHING THAT COULD BE ASSERTED NOW THAT COULDN'T HAVE BEEN

21   ASSERTED EARLIER.

22        TELL ME WHERE I'M GETTING IT.

23        MR. SELWYN:  SURE.

24     I THINK THE ANALYTIC QUESTION IS ASSESSING WHETHER THE

25   CLAIM CONSTRUCTION WAS ADVERSE IS WHETHER THE CLAIM

1    CONSTRUCTION DID SOMETHING TO UNDERMINE THE THEORY THAT

2    PLAINTIFF HAD ADVANCED.

3         AND IN THIS CASE IT DIDN'T BECAUSE THE PLAINTIFF COULD

4    HAVE ALWAYS ADVANCED THE VERY SAME THEORY THEY WANT TO ADD NOW.

5         SO I'M NOT TRYING TO PROPOSE A NEW BROAD PRINCIPLE, I'M

6    FOCUSED ON THE QUESTION ABOUT WHETHER IT ISN'T ADVERSE.  I

7    THINK IN THE CIRCUMSTANCES HERE UNDER THE CONSTRUCTIONS AND

8    THEORIES THEY'VE PROPOSED FROM THE OUTSET IT'S NOT.  THERE'S NO

9    PREJUDICE TO THEM BY THAT CONSTRUCTION BECAUSE IT'S CONSISTENT

10   WITH THE THEORY THAT THEY WERE ASKING THE COURT TO ADOPT.

11        THE COURT:  CONSISTENT IN THE SENSE THAT THAT WHICH

12   THEY WISH TO ACCUSE IN THEIR PROPOSED AMENDMENTS WOULD HAVE

13   ALSO BEEN PROPERLY ACCUSED UNDER THE CONSTRUCTION THEY HAD

14   OFFERED BEFORE JUDGE KOH RULED.

15        MR. SELWYN:  THAT'S CORRECT.

16        AND THE SAME IS TRUE FOR THEIR PROPOSED ADDITION OF

17   DOCKING STATIONS AS PART OF THE INFRINGING COMBINATION.  UNDER

18   SAMSUNG'S CLAIM CONSTRUCTION, THIRD PARTY DOCKING STATIONS

19   COULD BE ZONE SPECIFIC STORAGE UNITS OR DEVICES AT ANY TIME.

20   THERE'S NOTHING ADVERSE IN THAT CLAIM CONSTRUCTION THAT

21   NECESSITATES OR TRIGGERS THAT KIND OF ADDITION.

22        LET ME TURN TO THE QUESTION OF THE WILLFUL INFRINGEMENT

23   CONTENTIONS FOR THE --

24        THE COURT:  BEFORE YOU TURN, I WILL GIVE YOU THAT

25   CHANCE, I JUST WANT TO MAKE SURE WE FLUSH OUT THIS IMPORTANT

1   POINT.

2        SO IN YOUR VIEW THEN, IN THIS SITUATION BECAUSE SAMSUNG

3   COULD HAVE ACCUSED EACH OF THESE ADDITIONAL COMPONENTS UNDER

4   ITS PREVIOUS CONSTRUCTION, THE FACT THAT JUDGE KOH RULED THAT A

5   MORE NARROW CONSTRUCTION WAS APPROPRIATE, DIDN'T REALLY IMPOSE

6   ANY KIND OF ADVERSE EFFECT OR IMPACT ON SAMSUNG AT ALL.

7        SHE SIMPLY SAID THAT SOME PORTION OF THE SCOPE THAT WAS

8   INITIALLY PROPOSED BY SAMSUNG IS OFF THE TABLE.  IS THAT WHAT

9   YOU ARE SAYING?  I WANT TO MAKE SURE I APPRECIATE YOUR POINT.

10        MR. SELWYN:  IT'S CLOSE.

11        THE COURT:  GIVE ME ANOTHER SHOT.  TELL ME --

12        MR. SELWYN:  SURE.  THE THEORY SAMSUNG ADVANCED IS

13   THAT ANYTHING COULD BE A ZONE.  WHAT THEY ARE NOW PROPOSING TO

14   ADD IS PERFECTLY CONSISTENT WITH THAT THEORY, AND CONSISTENT

15   WITH THE CLAIM CONSTRUCTION THAT THE COURT ADOPTED.

16        THE COURT:  SO LET ME TRY ONE MORE TIME.

17        SO SAMSUNG'S ORIGINAL POSITION SAYS APPLE, ANYTHING COULD

18   BE A ZONE.  UNDER THAT THEORY SAMSUNG HAD SORT OF CARTE BLANCHE

19   ACCUSED WHATEVER IT WANTED AS THE ACTUAL COMPONENT PRACTICING

20   THAT LIMITATION.

21        MR. SELWYN:  UH-HUH.

22        THE COURT:  RIGHT.  IT MADE ITS CHOICE, AS IT MADE

23   ITS BED.

24        JUDGE KOH RULES -- JUDGE KOH SAYS NO, IT'S NOT REALLY

25   ANYTHING, IT'S LESS THAN ANYTHING, IT'S SOMETHING.

1    THAT RULING SAYS APPLE IS NOT ADVERSE OR IS NOT

2    ESSENTIALLY PREJUDICING SAMSUNG'S ABILITY TO PURSUE THAT WHICH

3    IT COULD HAVE PURSUED IN THE FIRST INSTANCE.

4         MR. SELWYN:  CORRECT.

5         THE COURT:  OKAY.

6         MR. SELWYN:  CORRECT.

7         THE COURT:  YOU WERE GOING TO TURN TO YOUR NEXT

8    POINT.

9         MR. SELWYN:  I WAS.  I APOLOGIZE.

10    WITH RESPECT TO THE WILLFUL INFRINGEMENT'S PROPOSED

11    AMENDMENT FOR THE '757 PATENT.

12    THE ISSUE HERE IS, HAS SAMSUNG ACTED WITH DILIGENCE.  AND

13    IF YOUR HONOR FINDS THAT NO, IT HAS NOT, THEN THE AMENDMENT

14    SHOULD NOT BE ALLOWED.

15    HERE IT'S UNDENIABLE THAT SAMSUNG KNEW BEFORE FILING ITS

16    CLAIM FOR INFRINGEMENT OF THE '757 PATENT, THAT APPLE WAS AWARE

17    OF THE '757 PATENT AS OF JULY 2001.

18    HOW DO WE KNOW THAT?  BECAUSE SAMSUNG WAS TOLD IT IN

19    WRITING AND ORALLY IN RESPONSE TO ITS OWN QUESTION IN

20    NEGOTIATIONS WITH THE SELLER OF THE PATENT.

21    SAMSUNG INDISPUTABLY KNEW THAT BEFORE COMMENCING THIS

22    CASE.  HAVING THAT IN WRITING IN ITS OWN FILES, THERE'S NO

23    BASIS NOW TO SAY, APPLE, YOU PRODUCED SOMETHING THAT SAYS THE

24    VERY SAME THING.

25    AND BY THE WAY, WITH RESPECT TO THE TIMING OF APPLE'S

```
1      PRODUCTION, THE REASON THAT WE PRODUCED THESE DOCUMENTS LAST

2      WEEK IS BECAUSE IT WAS 50 DAYS AFTER THE CLAIM CONSTRUCTION

3      ORDER.

4           WE WAIVED -- WE DISCLOSED THE OPINION OF COUNSEL.  WE

5      PRODUCED THE ASSOCIATED DOCUMENTS.  THERE WAS NO UNTIMELINESS

6      WHATSOEVER TO THAT PRODUCTION.  WE WERE COMPLYING WITH THE

7      LOCAL RULE.

8           THE COURT:  ARE YOU SAYING THEN THAT EVEN IF CERTAIN

9      EVIDENCE REGARDING APPLE'S KNOWLEDGE OF THE PATENT WAS PRODUCED

10     RELATIVELY RECENTLY, THE FACT THAT APPLE KNEW WAS KNOWN TO

11     SAMSUNG YEARS AND YEARS AGO?

12          MR. SELWYN:  CORRECT.

13          WHAT THEY WANT TO AMEND TO ADD IS THE FACT THAT APPLE WAS

14     AWARE AS OF JULY 2011, AND THEY POINT TO NO NEW EVIDENCE

15     PRODUCED BY APPLE THAT SAMSUNG DIDN'T HAVE AT THE OUTSET OF

16     THIS CASE.

17          THE COURT:  OKAY.  ALL RIGHT.

18          MR. SELWYN:  LET ME TALK FOR A MINUTE ABOUT THE

19     AMENDMENT TO THE '239 CONTENTIONS IN VIEW OF THE AKAMAI

20     DECISION.

21          I THINK YOUR HONOR HIT ON THE RIGHT POINT.  FIRST, THAT

22     THE IN AKAMAI, THEY ASSERTED -- AKAMAI APPLIED TO METHOD

23     CLAIMS.  THE ASSERTED '239 CLAIMS ARE APPARATUS CLAIMS.

24          SECOND, EVEN IF AKAMAI COULD BE READ TO COVER APPARATUS

25     CLAIMS, SAMSUNG'S PROPOSED CONTENTIONS IF YOU READ THEM, DO NOT
```

1    ALLEGE THAT TWO OR MORE UNSPECIFIED CUSTOMERS COLLECTIVELY

2    INFRINGE THE CLAIMS THEY DON'T MEET THE TESTS AS SET FORTH IN

3    AKAMAI.

4        THIRD, AKAMAI WAS DECIDED IN AUGUST OF 2012.  SAMSUNG HAS

5    DEVICE AMENDED SINCE THEN.  THEY GIVE NO EXPLANATION FOR THEIR

6    DELAY IN TRYING TO AMEND.

7        AND FOURTH, PATENT LOCAL RULE 3.1(D) REQUIRED SAMSUNG AT

8    THE OUTSET, IF IT WAS ALLEGING DIRECT INFRINGEMENT BASED ON

9    JOINT ACTS OF MULTIPLE PARTIES TO SAY SO.  THEY DIDN'T.

10        THE COURT:  CAN I ASK YOU, I APPRECIATE THE MORE

11    MECHANICAL POINTS ABOUT WHAT THEY KNEW AND WHEN THEY KNEW IT

12    REGARDING AKAMAI.

13      I WOULD LIKE YOUR VIEW OF WHETHER IN FACT AKAMAI COULD

14    PROPERLY EXTEND IN THE WAY THAT SAMSUNG SUGGESTS.

15      IS IT APPLE'S POSITION THAT AKAMAI ONLY APPLIES TO METHOD

16    CLAIMS?  DO YOU READ AKAMAI THAT WAY?

17        MR. SELWYN:  I THINK AKAMAI DOES ONLY APPLY TO METHOD

18    CLAIMS AS A DECISION AS WRITTEN AND HAS NOT BEEN APPLIED BY THE

19    FEDERAL CIRCUIT TO APPARATUS CLAIMS.

20      SO YES, UNDER THE CURRENT STATE OF THE LAW.

21        THE COURT:  YOU ARE NOT AWARE OF ANY DISTRICT COURT

22    THAT HAS MAYBE TAKEN A BROADER VIEW OF AKAMAI SINCE ITS ISSUE.

23        MR. SELWYN:  I'M NOT.  I LOOKED AT THIS ISSUE A FEW

24    MONTHS AGO, NOT RECENTLY, HOWEVER.

25        THE COURT:  OKAY.  ANY OTHER POINTS ON THIS

1    PARTICULAR MOTION, MR. SELWYN?

2         MR. SELWYN:  IF I MAY, JUST BRIEFLY.

3      THERE'S REALLY SO MUCH THEY ARE TRYING TO ADD HERE, AND I

4    UNDERSTAND THAT TIME IS SHORT SO I WILL PICK MY SPOTS.

5         BUT WITH RESPECT TO THE AMENDMENTS OF THE '087, '596, 449

6    BASED ON NEW EVIDENCE, I WOULD POINT TO WHAT WE CITE IN OUR

7    BRIEF AS EXAMPLES OF WHERE ALL THE INFORMATION THAT SAMSUNG

8    CONTENDS WAS LATE PRODUCED WAS IN THEIR HANDS MONTHS AGO, WELL

9    BEFORE THEIR PRIOR AMENDMENTS.

10         THEY GIVE ONE EXAMPLE, SAMSUNG WANTS TO AMEND ITS

11    CONTENTIONS FOR THE '087 TO SAY THAT THAT PATENT READS ON

12    VARIOUS 3GPP STANDARDS.  THESE ARE PUBLIC STANDARDS THAT THEY

13    KNEW AT THE OUTSET EXISTED.  THERE'S NOTHING IN A THIRD PARTY'S

14    DISCOVERY OR CONFIDENTIAL DISCOVERY, IN ANYTHING TO JUSTIFY A

15    LATE AMENDMENT.

16         THE COURT:  I TAKE IT SAMSUNG AND APPLE PARTICIPATED

17    IN THE STANDARD SETTING ORGANIZATION.

18         MR. SELWYN:  APPLE DID NOT.

19         THE COURT:  BUT SAMSUNG DID?

20         MR. SELWYN:  SAMSUNG DID.

21      IN FACT, WE PROBABLY DON'T HAVE TIME FOR IT NOW BUT I CAN

22    HAND YOUR HONOR A DOCUMENT SHOWING SPECIFIC AWARENESS OF THAT

23    STANDARD AND CONNECTING IT TO THE PATENT THAT WAS ASSERTED.

24    THIS GOES BACK TO 2006.

25         THERE ARE A NUMBER OF AMENDMENTS THAT SAMSUNG TRIES TO

1    EXPLAIN FOR THE FIRST TIME IN ITS REPLY BRIEF THAT WE HAVEN'T

2    HAD ANY OPPORTUNITY WHATSOEVER TO ADDRESS.  I KNOW I DON'T HAVE

3    AN HOUR TO GO THROUGH THEM, BUT LET ME POINT TO ONE OF THEM

4    THAT'S IMPORTANT TO US.

5         WITH RESPECT TO THE '449 PATENT.  YOU WILL NOTE SAMSUNG

6    IS TRYING TO ADD SOMETHING CALLED EXIF DATA AS CLASSIFICATION

7    DATA STORED WITHIN AN IMAGE.  AND THAT'S BECAUSE CLAIM 25 OF

8    THE '449 PATENT REQUIRES A RECORDING CIRCUIT THAT RECORDS EACH

9    ONE OF SAID PLURALITY, WITH A CLASSIFICATION DATE.

10        AND THE EXISTING CONTENTIONS THEY POINT TO ALBUM AS THE

11   CLASSIFICATION DATA, AND NOW THEY WANT TO ADD THIS EXIF DATA.

12   AND THEY SAY IT'S JUST ANOTHER EXAMPLE, THEY JUST WANT TO CITE

13   ANOTHER EXAMPLE.

14        IN FACT, IT'S A VERY DIFFERENT TYPE OF DATA THAN ALBUM

15   DATA.  AND THE FACT THAT EXIF DATA IS CAPTURED WITH IMAGES,

16   IT'S PUBLIC INFORMATION, IT'S ALWAYS BEEN AVAILABLE TO SAMSUNG.

17   IT'S A WELL KNOWN PUBLIC STANDARD.  THEY CITE TO NOTHING TO

18   JUSTIFY ITS ADDITION NOW.  IT WAS NOT A SECRET.

19        ANOTHER ADDITION THEY WANT TO MAKE FOR THE '449 PATENT

20   RELATES TO THE LIMITATION, A REPRODUCING CIRCUIT WHICH

21   REPRODUCES A SOUND SIGNAL SYNCHRONOUS TO SAID MOVING IMAGE

22   SIGNAL.

23        THEY ARGUE THEY ONLY LEARN OF THE FEATURE THEY WANT TO

24   ADD WHEN THEY OBTAINED AUDIO KODAK DOCUMENTS FROM A THIRD

25   PARTY, CIRRUS LOGIC.  BUT IN FACT, THEY POINT TO THOSE SAME

1    DOCUMENTS FOR A DIFFERENT PATENT IN THEIR OWN CONTENTIONS

2    SERVED MUCH EARLIER IN THIS CASE.  THERE'S NOTHING TO JUSTIFY

3    THIS AMENDMENT NOW THAT THEY DID NOT HAVE BEFORE.

4            THE COURT:  SO WHEN DID CIRRUS LOGIC PRODUCE THESE

5    DOCUMENTS, ROUGHLY?

6            MR. SELWYN:  THEY WERE PRODUCED ROUGHLY IN THE LAST

7    COUPLE OF MONTHS.  BUT OUR POINT IS THEY HAD AN INDEPENDENT

8    BASIS FROM APPLE'S DOCUMENTS.

9            THE COURT:  I SEE THAT.

10           MR. SELWYN:  THAT JUSTIFIED IT.

11      AND WE KNOW THAT BECAUSE FOR THE '470 PATENT, THEY RELY ON

12   THE VERY SAME DOCUMENTS THEY WANT TO RELY ON FOR ADDING THE

13   '470.

14           THE COURT:  SO WHAT YOU ARE SAYING IS THE INFORMATION

15   THAT ARGUABLY WAS REVEALED BY CIRRUS LOGIC WAS REVEALED IN

16   EARLIER DOCUMENTS WHICH APPLE PRODUCED.

17      WE KNOW THAT SAMSUNG WAS AWARE OF THOSE DOCUMENTS BECAUSE

18   IN OTHER INFRINGEMENT CONTENTIONS THEY REFER TO THOSE SAME

19   DOCUMENTS.

20           MR. SELWYN:  I WILL POINT YOU TO THE NOVEMBER 19TH,

21   2012 SAMSUNG SECOND AMENDED CONTENTIONS EXHIBIT C, PAGES 11

22   THROUGH 13.  THERE THEY RELY ON AUDIO KODAK INFORMATION REPORTS

23   TO THE CIRRUS LOGIC HARDWARE.  THAT'S THE VERY SAME THING THEY

24   ARE RELYING ON HERE.

25           THE COURT:  AGAIN, ANOTHER BIG PICTURE ISSUE I WANT

```
 1      TO EXPLORE.

 2          I WANT TO GIVE MR. JOHNSON A CHANCE TO WEIGH IN ON THIS ONE

 3      AS WELL.

 4              THE COURT:  IF JUDGE KOH HAS SET UP THE FRAMEWORK

 5      WHERE YOU ALL ARE SUPPOSED TO BE FUNNELING DOWN TO A MORE

 6      DISCREET SET OF CLAIMS AND PRODUCTS AND EXPERTS AND EVERYTHING

 7      ELSE, WHAT IS THE PREJUDICE FROM ALLOWING SAMSUNG, JUST LIKE

 8      APPLE FOR THAT MATTER, TO SET THE TABLE AS TO WHAT IT WOULD

 9      LIKE IT PURSUE IN ADVANCE OF THAT NEXT MILESTONE?

10          AND THEN OBVIOUSLY, UNDER JUDGE KOH'S RUBRIC THERE WILL BE

11      CUTS MADE THAT WILL BRING THE CASE INTO GREATER FOCUS.

12              THIS IS AN UNUSUAL CASE FOR LOTS OF REASONS, BUT THAT

13      PARTICULAR FEATURE OF CASE MANAGEMENT IS SOMETHING I HAVE BEEN

14      THINKING ABOUT.

15          WHAT ARE YOUR THOUGHTS ABOUT THAT?  DOES IT AFFECT THE

16      ANALYSIS, IF ANY, THAT WE HAVE THIS SORT OF HACKING GOING ON

17      AND PARALLEL TO THE DISCOVERY?

18              MR. SELWYN:  WELL, WHAT I THINK AFFECTS THE ANALYSIS

19      IS THE JUDGE'S INSTRUCTION THAT THIS CASE NEEDS TO BE NARROWED

20      AND NEEDS TO BE MANAGEABLE FOR TRIAL.  AND AT THE SAME TIME WE

21      HAVE THE OVERLAY OF THE PATENT LOCAL RULES.

22              THE COURT:  IT'S THAT COMBINATION OR COUPLING THAT

23      I'M STRUGGLING WITH.

24              MR. SELWYN:  RIGHT.

25          AND NORMALLY WHEN YOU LOOK AT MOTIONS TO AMEND,
```

1    INFRINGEMENT CONTENTIONS THEY RELATE TO ONE OR TWO THINGS.  AND

2    YOU CAN READ DECISION AFTER DECISION WHERE PEOPLE ARE DEBATING

3    AN ADDITION OF ONE THING OR ANOTHER THING.

4         HERE IT'S DOZENS OF THINGS.  IT'S DOCTRINE OF

5    EQUIVALENCE, IT'S LITERAL INFRINGEMENT, IT'S SUBSTANTIVE NEW

6    THEORIES ACROSS THE BOARD.  IT'S NEW PRACTICING PRODUCTS, IT'S

7    NEW WILLFUL CONTENTIONS.

8         WE ARE NOT AT A POINT IN THE CASE WHERE WE CAN JUST SWAP

9    IN ENTIRELY NEW SUBSTANTIVE THEORIES BECAUSE THE REALITY IS, IS

10   FOR A DEFENDANT IT'S A LOT OF WORK TO GO ABOUT INVESTIGATION

11   AND TO THINK STRATEGICALLY ABOUT HOW YOU ARE GOING TO RE CRAFT

12   YOUR CASE TO ADJUST TO THAT.  AND THAT'S WHAT WE WOULD HAVE TO

13   DO IN THE FEW WEEKS REMAINING.

14        THE COURT:  ALL RIGHT.

15        ALL RIGHT, WELL I SHOULD NOTE AT THE OUTSET.  YOU ALL

16   HAVE RAISED MANY ISSUES IN THE PAPERS.  AND BY NOT ADDRESSING

17   THEM TODAY, I'M NOT GOING TO INTERPRET ANY WAIVER FROM IT.  I

18   HAVE THE PAPERS TO DEAL WITH THE REST OF THE ISSUES.

19        THANK YOU VERY MUCH, MR. SELWYN.

20        MR. JOHNSON, DO YOU WANT TO RESPOND BRIEFLY?

21        MR. JOHNSON:  SURE.

22        STEPPING ASIDE FROM THIS CASE, I DO THINK THERE'S A

23   TENSION.  IT'S SOMETHING THAT I THINK THE COURT STRUGGLES WITH,

24   WE STRUGGLE WITH.

25        AND WHEN YOU LOOK AT ADDING NEW PRODUCTS TO CASES, I MEAN,

1    I THINK THAT DOING IT BACK IN JANUARY LIKE BOTH PARTIES DID

2    WITH THE 7, 8 MONTHS LEFT IN DISCOVERY, THAT'S ONE THING.

3         YOU WILL HEAR ABOUT THIS, WHERE IT'S COMING -- ADDING A NEW

4    PRODUCT LIKE SAMSUNG'S NEW PRODUCT WITH THE CLOSE OF DISCOVERY

5    RIGHT UPON US, THAT'S DIFFERENT.

6         THEORIES THAT GET BASICALLY FINE-TUNED AS A RESULT OF THE

7    CLAIM CONSTRUCTION, I THINK ARE NATURAL AND FRANKLY NEITHER

8    SIDE IS REALLY PREJUDICED.  PEOPLE KNOW WHERE PEOPLE ARE COMING

9    FROM AND WE HAVE BEEN TAKING DEPOSITIONS AND ARGUING ABOUT

10   THESE ISSUES FOR A YEAR AND A HALF NOW.

11        AND IF I WERE REPRESENTING APPLE AND IF MR. SELWYN WAS

12   REPRESENTING SAMSUNG, YOU WOULD HAVE AN IDEA WHAT HE WOULD BE

13   ARGUING ON BOTH SIDES.  THAT'S WHAT WE DO AS LAWYERS.

14        SO BUT I DO TAKE ISSUE WITH MR. SELWYN SAYING THAT WE ARE

15   TRYING TO REDO AND ADD A WHOLE BUNCH OF NEW SUBSTANTIVE

16   ARGUMENTS IN THESE AMENDMENTS BECAUSE THAT'S NOT THE CASE.

17        WHAT WE'VE DONE IS TRIED TO FINE TUNE SOME OF THE

18   ARGUMENTS WITH RESPECT TO CLAIM CONSTRUCTION THAT CAME DOWN AND

19   WE HAVE BEEN IN A BIT OF A BIND HERE.

20        AND I WANT TO JUST ADDRESS A COUPLE OF THE POINT THAT IS

21   MR. SELWYN RAISED.  BECAUSE WE DID GET DISCOVERY LATE IN THE

22   CASE.  AND WE ARE REACTING TO IT.

23        SO WITH RESPECT TO THE WILLFUL INFRINGEMENT ISSUE, AND I

24   JUST WANT TO GO BACK TO THAT.  YOU KNOW, WANTED TO MAKE SURE

25   THAT WE HAD A GOOD FAITH BASIS TO ASSERT WILLFUL INFRINGEMENT.

1       WE DIDN'T HAVE ANY DOCUMENTS FROM APPLE.  NOTHING.  UNTIL

2   THEY STARTED PRODUCING THESE DOCUMENTS TO US ON MARCH 21ST.

3       AND AT THAT POINT THAT WASN'T 50 DAYS AFTER THE CLAIM

4   CONSTRUCTION ORDER, THAT WAS JUST BEFORE THE CLAIM CONSTRUCTION

5   ORDER CAME DOWN.  THOSE WERE NOT PRIVILEGED DOCUMENTS, THAT'S

6   THE FIRST TIME WE SAW THAT THEY HAD A HISTORY OF A DIALOG

7   DIRECTLY WITH REQUEST.

8       HEARING IT FROM REQUEST IS SEPARATE FROM HEARING IT FROM

9   THE DEFENDANT IN THIS, WITH RESPECT TO THE APPLE PATENTS.  AND

10  THEIR ADMISSIONS THAT ARE APPLE'S ADMISSIONS THAT WE ARE GOING

11  TO RELY UPON.

12      THE COURT:  IS HE RIGHT THAT YOU HAD SOME

13  DOCUMENTATION FROM REQUESTS THAT MADE CLEAR APPLE WAS INFORMED

14  ABOUT THE '757, AT LEAST BY THE DATE YOU SAY THEY WERE?

15      IN OTHER WORDS, DID YOU HAVE SOMETHING IN WRITING WHICH AT

16  LEAST TIPPED YOU OFF TO THAT POINT BEFORE THE APPLE PRODUCTION

17  CAME IN?

18      MR. JOHNSON:  I'M SORRY, I DON'T UNDERSTAND THE

19  QUESTION.

20      THE COURT:  MAYBE I JUST DON'T UNDERSTAND THE STATE

21  OF AFFAIRS.

22      I HAD UNDERSTOOD FROM APPLE'S PAPERS AND FROM MR. SELWYN'S

23  COMMENTS THAT WELL BEFORE APPLE HAD PRODUCED THESE DOCUMENTS,

24  MAKING CLEAR THEY KNEW ABOUT THE '757 AS OF A CERTAIN DATE,

25  SAMSUNG HAD BEEN PRESENTED WITH AT LEAST ONE DOCUMENT MAYBE

1    MANY DOCUMENTS FROM REQUESTS SHOWING THAT IT HAD DISCUSSED THE

2    '757 WITH APPLE.

3              MR. JOHNSON:  YEAH.  WE KNEW THAT APPLE HAD DISCUSSED

4    THE '757 WITH REQUEST.  WE KNEW THAT SOME MONTHS AGO.  WE

5    SERVED THEM WITH DOCUMENT REQUESTS.  AND WE GOT THAT

6    INFORMATION FROM REQUESTS.  THAT'S WHERE WE GOT IT FROM.

7         SO WE THEN SERVED APPLE WITH REQUEST FOR PRODUCTION ON

8    JULY 31ST, 2012.  THEY DIDN'T PRODUCE A SINGLE DOCUMENT IN

9    RESPONSE TO THOSE REQUESTS.

10        WE THEN GOT DOCUMENTS PRODUCED BY REQUESTS ON

11   FEBRUARY 7TH.  WE THEN SENT APPLE A LETTER ON MARCH 12TH

12   SAYING, WHERE ARE THESE DOCUMENTS FROM APPLE'S FILES,

13   BECAUSE -- AND WE GOT DIFFERENT DOCUMENTS THAT WERE PRODUCED ON

14   MARCH 21ST.

15        AND THEN WHEN WE GOT THOSE DOCUMENTS WE THEN SAW THAT

16   THERE WERE, THERE WAS A HISTORY THERE THAT WAS A LOT MORE

17   DETAILED ABOUT, KNOWLEDGE OF A PATENT IS ONE THING.

18        THAT DOESN'T, I DON'T THINK, ESTABLISH WILLFULNESS,

19   RIGHT.  I MEAN, WE ARE VERY CAREFUL ABOUT LEVELLING

20   ACCUSATIONS.  WE SAW IN THE DOCUMENTATION THAT THEY PRODUCED A

21   MORE -- MORE FACTS THAT SUPPORT A WILLFULNESS CLAIM.  ALL

22   RIGHT.

23        AND SO AT THAT POINT WE THEN SOUGHT, WE TRIED TO AMEND

24   THE CONTENTIONS TO ADD WILLFULNESS TO THE CASE.  AND YOU KNOW,

25   ALLOWING THEM PRECLUDING US FROM ADDING WILLFULNESS AT THIS

1    POINT, ALMOST REWARDS THEM FOR NOT PRODUCING DOCUMENTS WHEN

2    THEY SHOULD HAVE BEEN PRODUCED AND WHEN YOU LOOK AT THE

3    PREJUDICIAL EFFECTS OF IT, THERE'S NO PREJUDICE TO APPLE HERE.

4         I MEAN, THIS IS A SITUATION THAT THEY HAVE MADE, THEY'VE

5    KNOWN ABOUT.  WE ARE NOW LEARNING ABOUT.  AND THERE'S STILL

6    DEPOSITIONS OCCURRING AND ALL WE WANT TO DO IS ADDING TO THE

7    CASE.

8         I KNOW I WANT TO GO QUICKLY BECAUSE I KNOW WE ARE OUT OF

9    TIME, TO A COUPLE OTHER POINTS.

10        WITH RESPECT TO THE '087 AND '596 AMENDMENTS, YOU ARE

11   CORRECT.  AND WE DON'T, WE -- SAMSUNG WAS INVOLVED IN THE 3G

12   STANDARD.  THAT CAME OUT DURING THE FIRST TRIAL.  AND THAT'S

13   COME UP REPEATEDLY IN DEPOSITIONS.

14        BUT THIS, THE DOCUMENT THAT IS TS25.309, THE IMPORTANCE

15   OF THAT PART OF THE SPEC AND THAT INFORMATION WAS NOT KNOWN

16   UNTIL ALCATEL AND QUALCOMM PRODUCED DOCUMENTS ON MARCH 13TH AND

17   APRIL 13TH, RESPECTIVELY.

18        AND THOSE ARE EXHIBITS 5 AND 6 TO OUR MOTION.  AND IT'S

19   BECAUSE WE GOT THE DOCUMENTS FROM THE CHIP COMPANIES AT THAT

20   POINT THAT THEN REFERENCED BACK TO THAT PORTION OF THE SPEC

21   THAT WE ADDED IT.

22        AND FRANKLY, THAT'S NOT A NEW THEORY, IT'S MORE

23   EVIDENTIARY SUPPORT, THERE'S NO NEW SUBSTANTIVE THEORY THAT'S

24   BEEN PRESENTED HERE, IT'S FURTHER EVIDENTIARY SUPPORT.

25        AND FRANKLY, YOU KNOW, UNDER THE VASUDEVAN V. IBM CASE,

1    THE DOCUMENT IS EVIDENTIARY SUPPORT FOR AN EXISTING THEORY.

2    THAT'S ALL IT IS.  AND THERE'S NO PREJUDICE TO APPLE IN THAT

3    SENSE EITHER.

4        THE ADD CONVERTER AND CLASSIFICATIONS DOCTRINE OF

5    EQUIVALENCE ISSUE UNDER THE '449 PATENT.  WE HEARD ABOUT THAT.

6    THAT, AGAIN, CAME UP IN THE CONTEXT OF APPLE'S INTERROGATORY

7    RESPONSES IN APRIL WHERE THEY FINALLY LINKED THEIR BILL OF

8    MATERIALS TO THE PRODUCTS.

9        AND WE THEN WERE ABLE TO UNDERSTAND WHERE THEIR

10   ARGUMENTS -- WHERE THE DOCUMENTS ARE THAT EXPLAIN -- I MEAN

11   THEY CAN SAY, YEAH THESE DOCUMENTS WERE PRODUCED THESE

12   DOCUMENTS WERE PRODUCED.  BUT FINALLY WHEN THEY RESPONDED TO

13   THE INTERROGATORY THAT LINKED THE BILL OF MATERIALS.

14        THE COURT:  SO IT MAY HAVE BEEN THE CASE THAT WELL

15   BEFORE THE INTERROGATORY RESPONSE YOU HAD THE ACTUAL BOMBS.

16        MR. JOHNSON:  WE DID HAVE THE BOMBS, WE HAD TEN BOXES

17   OF BOMBS.

18        THE COURT:  YEAH, YEAH.  I REMEMBER THEM WELL.

19        SO YOU HAVE REAMS OF BILLS OF MATERIAL BUT THEY

20   WEREN'T -- BUT UNTIL THE INTERROGATORY RESPONSE WAS SERVED, YOU

21   DIDN'T HAVE ANYTHING LINKED --

22        MR. JOHNSON:  ON APRIL 13TH.  RIGHT.

23        AND JUST BRIEFLY, YOUR HONOR, GOING BACK TO THE '757

24   BECAUSE THAT'S WHERE MR. SELWYN STARTED, IF YOUR HONOR LOOKS AT

25   THE BINDER THAT I HANDED TO YOU ON EXHIBIT D, PAGE 6, THIS

1    NOTION OF RESIDES IN.

2         YOU KNOW, IF YOU LOOK THERE ON THE MIDDLE OF THE PAGE

3    THERE'S A HIGHLIGHTED PORTION THAT SAYS, FOR EXAMPLE, EACH OF

4    THESE DEVICES MAY RESIDE IN A ROOM OR SIMILAR LOCATION.

5         THIS IS NOT A NEW THEORY.  THIS IS US IN LIGHT OF THE

6    COURT'S CLAIM CONSTRUCTION FROM APRIL 11TH, EXPLAINING IN

7    DETAIL, FURTHER DETAIL, YOU KNOW, WHAT THE THEORY IS ASSOCIATED

8    WITH RESIDES IN AND WHY IT MEETS THE LIMITATIONS AS CONSTRUED

9    BY THE COURT.

10        SO TO GO BACK TO YOUR HYPOTHETICAL.  I AGREE WITH YOU.

11   FROM PLAINTIFF'S STANDPOINT UNDER APPLE'S THEORY, ANY

12   PLAINTIFF, STEPPING BACK FROM THIS CASE, WOULD HAVE TO DISCLOSE

13   EVERY POSSIBLE THEORY UNDER THE SUN AND NEVER BE ALLOWED TO

14   AMEND ITS CONTENTIONS.  AND THAT'S NOT WHAT THE LOCAL RULES ARE

15   REALLY THERE FOR TO ESTABLISH OR SAY.

16        I MEAN, THE LOCAL RULES ARE THERE TO GIVE THE OPPORTUNITY

17   TO THE PARTIES TO, ESPECIALLY IN A SITUATION WHERE THIS IS A

18   CONSTRUCTION THAT NEITHER SIDE CAME UP WITH, TO BE ABLE TO

19   RESPOND TO.

20           THE COURT:  IT'S INTERESTING.  I APPRECIATE THAT.

21        WE DO NEED TO MOVE ON TO THE REMAINING MOTIONS.  I JUST

22   HAVE TO OBSERVE YOU HAVE GIVEN ME SOMETHING TO THINK ABOUT IN

23   MY OWN CLAIM CONSTRUCTIONS WHEN I ADOPT A PROPOSAL THAT NEITHER

24   SIDE HAS PRESENTED, IT WOULD SEEM THAT IN MANY WAYS I'M

25   INVITING FOR MOTIONS FOR LEAVE TO AMEND THAT MAY NOT OTHERWISE

1    HAVE BEEN PRESENTED.

2              MR. JOHNSON:  AND JUST ONE FINAL POINT, YOUR HONOR.

3         THIS LAST POINT THAT MR. SELWYN RAISED WITH RESPECT TO THE

4    EXIF DATA, AGAIN, THAT'S NOT A NEW THEORY.

5         IF YOUR HONOR LOOKS AT THE EXHIBIT G AT PAGES 5 AND 6, YOU

6    KNOW, WE ARE SEEKING TO AMEND THE CONTENTIONS MERELY TO CITE

7    THE EXIF DATA AS ANOTHER EXAMPLE OF DATA THAT'S STORED BY

8    ACCUSED PRODUCTS WHEN YOU RECORD OR CAPTURE AN IMAGE.

9         AND WHAT HAPPENED HERE IS THAT ON APRIL 10TH, APPLE --

10   AND YOU WILL HEAR ABOUT THE SOURCE CODE ISSUE IN CONNECTION

11   WITH THE MOTION TO COMPEL.

12        ON APRIL 10TH, AS FAR AS THE PHOTOS PORTION OF THE IPHONE

13   THAT'S ACCUSED WITH RESPECT TO THIS PARTICULAR PATENT, APPLE

14   HAD PRODUCED 2.5 MEGABITS OF SOURCE CODE, NOT VERY MUCH.  ON

15   APRIL 11TH THEY PRODUCED 112 MEGABITS OF SOURCE CODE.

16        WE SAW THE SOURCE CODE.  WE HAD OUR EXPERT GO THROUGH

17   EVERYTHING.  AND AT THAT POINT THEN WE REALIZED WE SHOULD ADD

18   EXIF AS ANOTHER EXAMPLE OF DATA.

19        SO WE TRIED TO BE AS DILIGENT AS WE CAN, RESPONDING TO

20   DISCOVERY WHEN THEY PRODUCED IT, LOOK AT THE MATERIALS AND TRY

21   IT MAKE AMENDMENTS TO PUT THEM ON AS MUCH NOTICE AS WE CAN.

22        IF WE LOOK AT EACH OF THESE AMENDMENTS THEY ARE NOT

23   WHOLESALE NEW SUBSTANTIVE ARGUMENTS.  IT'S NOT LIKE WE ARE

24   SAYING THIS IS A WHOLE NEW PRODUCT CATEGORY.  WE ARE REFINING

25   THINGS IN LIGHT OF THE CLAIM CONSTRUCTION AND ADDING NEW

1    EVIDENCE BASED ON DOCUMENTS APPLE PRODUCED.

2              THE COURT:  ALL RIGHT.  THANK YOU.

3              MR. SELWYN:  CAN I MAKE A VERY BRIEF POINT?

4              THE COURT:  YOU MAY, MR. SELWYN.

5              MR. SELWYN:  FIRST, ON THE EXIF DATA, THEY DIDN'T SAY

6    ANYTHING IN THEIR MOTION TO JUSTIFY WHY THEY ARE ADDING IT NOW.

7    THIS IDEA OF SOURCE CODE, IS THE FIRST WE HEARD ABOUT IT, AND

8    IT'S NOT SO.  EXIF DATA IS PUBLIC INFORMATION.  THEY HAVE TO

9    SHOW DILIGENCE.  THAT'S THE THRESHOLD THEY SHOULD -- WE NEVER

10   GET TO PREJUDICE UNLESS THEY GET THROUGH DILIGENCE.

11             THE COURT:  IS THERE PUBLIC INFORMATION WHICH WOULD

12   INFORM SAMSUNG THAT THIS PARTICULAR DATA IS RELIED UPON OR

13   IMPLEMENTED IN THE APPLE PRODUCTS?

14             MR. SELWYN:  YES, ABSOLUTELY.  I CAN GIVE YOU A WEB

15   PAGE.

16             THE COURT:  GO AHEAD.

17             MR. SELWYN:  YES.

18        ITUNES.APPLE.COM/US/APP/EXIFEDITORANDVIEWER.  I'M SORRY

19   THAT'S SO LONG.

20        SECOND POINT.  MR. JOHNSON REFERENCES THAT THEY WEREN'T

21   AWARE OF IT, TS25.309 AND ITS RELATIONSHIP TO THE '087 PATENT

22   UNTIL THEY HAD THE THIRD PARTY DISCOVERY.

23        WITH THE COURT'S PERMISSION, I WOULD JUST HAND UP THE

24   DOCUMENT THAT I REFERENCED A MOMENT AGO, AND THIS IS FROM

25   SAMSUNG'S FILES.  PAGE -- WITH THE BATES NUMBER 14.  THIS IS

1    SAMSUNG IDENTIFYING THIS STANDARD AS RELEVANCE TO THE VERY

2    PATENT THAT HAS BEEN ASSERTED.

3        JUST THE FINAL POINT I WOULD MAKE IS WITH RESPECT TO WHAT

4    MR. JOHNSON HANDED YOU, HE HAD SAID THAT THERE ARE PORTIONS

5    THAT THEY HIGHLIGHTED THAT WE DON'T OBJECT TO.  THAT'S NOT

6    CORRECT.  WE OBJECT TO ALL OF THE ADDITIONS.

7            THE COURT:  ALL RIGHT.  THANK YOU.

8        LET'S TURN TO THE MOTION TO COMPEL.

9        LET'S START WITH THE RELATED LITIGATIONS.  MS. MAROULIS, IT

10   LOOKS LIKE YOU ARE GOING TO ARGUE THIS ONE.

11           MS. MAROULIS:  YES, YOUR HONOR.

12           THE COURT:  AS YOU ARE GATHERING YOUR THOUGHTS, I

13   WILL JUST OBSERVE THAT CASES OTHER THAN THIS ONE INCLUDING

14   CASES OTHER THAN THE 1846 CASE, THIS STANDARD HAS GIVEN ME MORE

15   PROBLEMS THAN I THOUGHT I WOULD EVER SEE.

16       OTHER PARTIES HAVE BEEN COMING TO THE COURT LOOKING TO

17   APPLY IT, AND I WILL JUST NOTE IT HAS GENERATED A LOT MORE

18   MOTION PRACTICE THAN I WOULD HAVE EXPECTED.

19           MS. MAROULIS:  YOUR HONOR, PERHAPS WE CAN ASSIST THAT

20   BY FOCUSSING AWAY FROM THAT.

21           THE COURT:  YOU WANT TO TAKE MY ATTENTION IN A

22   DIFFERENT DIRECTION?

23           MS. MAROULIS:  AND REALIZING THAT YOU HAVE OTHER

24   PARTIES IN THE COURTROOM, I WILL GO FAIRLY QUICK.

25       SO SAMSUNG IS SEEKING SUBSTANTIVE DOCUMENTS FROM THREE

1    OTHER LITIGATIONS IN WHICH APPLE IS A LITIGANT.  THEY ARE

2    VIRNETX CASE IN THE DISTRICT COURT AND THE KODAK AND NOKIA

3    CASES IN ITC.

4         AND THE REASON WE BELIEVE THE DOCUMENTS SHOULD BE

5    PRODUCED IS FIRST THEY ARE UNDISPUTEDLY RELEVANT BECAUSE THEY

6    CONCERN SAME PRODUCTS OR FEATURES SIMILAR TECHNOLOGY AND

7    OVERLAPPING ACTUAL EXPERT AND LAY WITNESSES.  THE SAME PEOPLE

8    WHO ARE TESTIFYING IN THIS CASE WHO ARE TESTIFYING PREVIOUSLY.

9         FURTHERMORE, THE PRODUCTION WOULD NOT BE BURDENSOME

10   BECAUSE IT'S -- RESIDES PRIMARILY WITH APPLE'S COUNSEL.  IN

11   FACT, IN ONE OF THE CASES WILMER HALE WAS COUNSEL OF RECORD AND

12   THE VERY SAME FOLKS WE SEE HERE, MR. SELWYN, MR. LEE AND

13   MR. MUELLER WERE THE ACTUAL ATTORNEYS WHO HAVE THIS

14   INFORMATION.

15        SO GOING TO CASES ONE BY ONE, THE VIRNETX CASE WAS

16   PENDING IN TEXAS.  AND WE KNOW SOME INFORMATION ABOUT IT BUT

17   MOST OF IT HAS BEEN FILED UNDER SEAL.

18        SO WE KNOW ABOUT 20 PERCENT OF WHAT WENT ON THERE.  BUT

19   WHAT WE DO KNOW IS THE ACCUSED FEATURE WAS FACETIME.  THE VERY

20   SAME FEATURE SAMSUNG IS ACCUSING WITH THE '239 PATENT.

21        MOREOVER, WE KNOW THAT CHRIS VELLTURO WHO WAS THE DAMAGES

22   EXPERT FOR APPLE IN THAT CASE IS ALSO PRESUMABLY THE DAMAGES

23   EXPERT IN THIS CASE BECAUSE HE OPINED DURING THE PRELIMINARY

24   INJUNCTION STAGES AND MOST LIKELY WILL APPEAR AT TRIAL AGAIN.

25        AND WE ALSO KNOW TECHNOLOGY OVERLAPS BECAUSE BOTH CASES

1    CONCERN TRANSMISSION OF DATA OVER CELLULAR OR WIFI.

2         SO EVEN WITHOUT TECHNOLOGICAL NEXUS AT ALL, THERE'S A

3    HUGE AMOUNT OF OVERLAP BETWEEN THESE TWO CASES.

4         IN THE DAMAGES AREA, FOR EXAMPLE MR. VELLTURO WAS PLAYING

5    DEFENSE.  SO HE WAS EXPLAINING WHY FACETIME, WHICH ADMITTEDLY

6    IS ONE OF APPLE'S KEY FEATURES, DOES NOT DRIVE SALES, WHY IT'S

7    NOT SOMETHING IMPORTANT FOR CONSUMER.  AGAIN, WE KNOW THIS FROM

8    THE PUBLIC RECORD.

9         IN THIS CASE WE EXPECT HIM ON THE OFFENSIVE SIDE TO TAKE

10   THE OPPOSITE PERSPECTIVE WHICH IS THAT SMALL FEATURES SUCH AS

11   SLIDE TO UNLOCK OR OTHER WHAT ONE CAN CHARACTERIZE AS TRIGGER

12   FEATURES, ACTUALLY DO DRIVE SALES.

13        SO MR. VELLTURO'S TESTIMONY, HIS EXPERT REPORTS AND OTHER

14   DOCUMENTS RELATED TO HIM, WOULD BE CRUCIAL FOR US TO HAVE IN

15   EXAMINING HIM AT DEPOSITIONS, AT TRIAL AND OTHERWISE BUILDING

16   OUR EXPERT DISCOVERY.

17        THE COURT:  SO YOUR BASIC THINKING ON THIS ONE,

18   MS. MAROULIS, IF THIS EXPERT IS GOING TO TESTIFY ABOUT WHAT

19   DRIVES DEMAND IN THIS CASE, HIS STATEMENTS AND OPINIONS ABOUT

20   WHAT DRIVES DEMAND IN OTHER CASES IS DISCOVERABLE.

21        MS. MAROULIS:  YOUR HONOR, THAT'S ONE OF THE ISSUES.

22   BUT ALSO HE WILL TAKE SPECIFIC POSITIONS ABOUT WHAT CUSTOMERS

23   ARE ATTRACTED TO HOW THE PROFIT MARGINS RELATE TO VARIOUS

24   PRODUCT FEATURES.

25        IT'S BASICALLY, IF YOU GO THROUGH GEORGIA PACIFIC FACTORS

1    AS YOU LIKELY WOULD IN BOTH CASES, THERE WILL BE A LOT OF

2    POSITIONS THAT APPLE TOOK THAT WE EXPECT TO BE CONTRARY JUST BY

3    VIRTUE OF KNOWING WHAT WE KNOW FROM PUBLIC RECORD TO WHAT THEY

4    ARE GOING TO TAKE HERE.

5         THERE ARE SOME OTHER ASPECTS THAT THE COURT'S IN

6    VIRNETX'S OPINION ADDRESSES THAT ARE OF INTEREST TO US.

7         FOR EXAMPLE, APPLE TOOK CERTAIN POSITIONS ON WILLFULNESS

8    OR THEY WERE ACCUSED OF WILLFUL INFRINGEMENT AND ALSO INDIRECT

9    INFRINGEMENT THAT INCLUDES WILLFULNESS ASPECT.  AND THE OPINION

10   TALKS ABOUT APPLE ENGINEERS REVIEWING OR NOT REVIEWING PATENTS,

11   APPLE MANUALS INSTRUCTING CUSTOMERS IN A PARTICULAR WAY.

12        AGAIN, THOSE DOCUMENTS ARE GOING TO BE HELPFUL FOR

13   SAMSUNG AND THEY ARE CLEARLY RELEVANT TO THIS CASE.

14        AND FINALLY IN TERMS OF OVERLAPPING TECHNOLOGY, THE

15   PROBLEM WITH APPLE'S ARGUMENT IS THAT THEY ARE TRYING TO

16   UNNATURALLY CONSTRICT YOUR HONOR'S REQUIREMENT OF TECHNOLOGICAL

17   NEXUS.

18        WHAT HAPPENS IS THAT APPLE SEEKS FOR US TO COMPARE TWO

19   PATENTS.  AND TO COMPARE THE CLAIM LIMITATIONS AND THE

20   INVENTIVE STEPS, IF YOU WILL, TO BORROW EUROPEAN TERMINOLOGY,

21   WHETHER THEY ARE THE SAME.  THAT'S NOT REALLY THE STANDARD.

22        THE PATENTS ARE IN VERY SIMILAR TECHNOLOGICAL AREAS.

23   THEY BOTH ADDRESS TRANSMISSION AND COMMUNICATION THROUGH THESE

24   CELLULAR NETWORK OF DATA.  WE ARE NOT TALKING ABOUT DNA CASE ON

25   THE ONE HAND AND A BICYCLE SUSPENSION CASE IN ANOTHER.  THEY

1    ARE SIMILAR TECHNOLOGIES.  WHETHER YOU APPLY YOUR HONOR'S

2    TECHNOLOGICAL NEXUS TEST TO SOMETHING MORE PLAIN VANILLA FROM

3    RULE 26.

4         TURNING OUR ATTENTION TO THE KODAK AND NOKIA CASES.

5    THOSE ARE CASES RELEVANT TO SAMSUNG'S '239 AND '449 PATENTS.

6    THOSE ARE BOTH ITC INVESTIGATIONS DIRECTED TO DIGITAL CAMERA

7    TECHNOLOGY.

8         AND AGAIN, WE HAVE OVERLAP OF PRODUCTS.  WE ARE LOOKING

9    AT IPHONE 3, IPHONE 3G AND IPHONE 4 ACCUSED IN BOTH INSTANCES.

10        AND EVEN THOUGH WE DO NOT BELIEVE THE COURT SHOULD LOOK

11   AT CLAIM BY CLAIM ANALYSIS, IF YOU ACTUALLY DO LOOK AT THE

12   CLAIM TERMS IN OUR PATENTS HERE AND THE PATENTS IN KODAK AND

13   NOKIA, SOME OF THE CLAIM LOCATIONS ARE THE SAME.  WE ARE

14   TALKING ABOUT IMAGE CENSORS, PROCESSORS AND DISPLAY AND DIGITAL

15   MEMORY.

16        SO EVEN UNDER APPLE'S CONSTRUCTION, WE STILL COME OUT THE

17   SAME WHICH IS IT'S OVERLAPPING TECHNOLOGY.

18        AND ONCE AGAIN YOU HAVE THE SAME FOLKS TESTIFYING.  THERE

19   ARE SOME EXPERTS IN THIS CASE, DR. YANG, MR. PARULSKI,

20   MR. STORER WHO ALSO GAVE TESTIMONY IN THOSE CASES AS WELL.  AND

21   MR. PARULSKI, FOR EXAMPLE, IS ALSO AN INVENTOR ON THE PATENT

22   THAT APPLE IS ASSERTING AS PRIOR ART.

23        SO WE ARE CLEARLY TALKING ABOUT VERY SAME NARROW

24   TECHNOLOGICAL GROUP.

25             THE COURT:  WHAT WOULD YOU THINK, MS. MAROULIS, IF I

1     WERE TO MORE CAREFULLY DELINEATE WHAT OUGHT TO BE PRODUCED IN

2     THESE CASES AND USED AS THE STANDARD WHETHER THE SAME WITNESSES

3     WHO WERE TESTIFYING THERE WHO ARE LIKELY TO TESTIFY HERE, YOU

4     DON'T KNOW WHAT WILL ACTUALLY HAPPEN AT TRIAL.

5          WOULD THAT TYPE OF CUT GET YOU 80, 90 PERCENT OF WHAT'S

6     GOING TO MATTER?

7               MS. MAROULIS:  YOUR HONOR, THAT WILL GET US SOME OF

8     WHAT'S GOING TO MATTER.  IT WILL GET US VELLTURO'S TESTIMONY AS

9     WELL AS TESTIMONY OF SOME OF APPLE'S WITNESSES THAT YOU WILL

10    HEAR ABOUT IN SOURCE CODE MOTIONS AND SUBMITTED SOURCE CODE

11    DECLARATIONS.

12         BUT THAT DOES NOT GO FAR ENOUGH BECAUSE THERE MIGHT BE

13    DOCUMENTS WE LIST OUT IN THE PROPOSED ORDER THAT ARE NOT

14    CAPTURED BY THE INDIVIDUALS WHO ARE BEING DEPOSED.

15         CERTAINLY THE INDIVIDUAL WITNESSES IS A GREAT STARTING

16    POINT BECAUSE EVERYONE KNOWS THAT THERE'S NO BETTER WAY TO

17    IMPEACH SOMEONE IS WITH THEIR PRIOR INCONSISTENT STATEMENT,

18    WHETHER IN A SIMILAR OR IDENTICAL CASE.

19         SO WE DO RESPECTFULLY ASK FOR BROADER APPLICATION.

20              THE COURT:  AND I APPRECIATE YOUR REQUEST IS MUCH

21    BROADER, I'M JUST TRYING TO THINK THROUGH HOW TO MAYBE BALANCE

22    THE CONSIDERATIONS.

23         IT WOULD SEEM TO ME THE PARTICULAR, IF YOU ARE TALKING

24    ABOUT EXPERT REPORTS FROM THESE EARLIER CASES, THERE ARE

25    MILLIONS OF DOLLARS OF INTELLIGENCE REFLECTED IN THE DOCUMENTS

1   THAT ARE CITED AND ATTACHED TO THOSE REPORTS, SO IT MIGHT BE A

2   MORE STREAMLINED WAY TO GET AT.

3           AGAIN, WE ARE GOING TO LEAVE SOME THINGS ON THE CUTTING

4   ROOM FLOOR BUT AT LEAST GET MOST OF WHAT YOU NEED.

5               MS. MAROULIS:  YES.

6       YOUR HONOR, AGAIN, THE EXPERT REPORTERS WOULD BE MOST

7   USEFUL FOR WHAT YOU DESCRIBED AND THE REASONS WE DISCUSSED AS

8   WELL.

9           SO FINALLY, THE NEXUS ISSUE, THE OTHER POINT APPLE MAKES

10  IS THE BURDEN.  AND AS WE ALREADY DISCUSSED, THE BURDEN IN THIS

11  INSTANCE IS NOT SUBSTANTIAL BECAUSE THE DOCUMENTS ARE ALREADY

12  COLLECTED, THEY ARE SITTING IN SOME OUTSIDE COUNSEL'S OFFICE,

13  AND THIS PARTICULAR COUNSEL WHO IS SITTING RIGHT HERE.

14          SO COLLECTING DECLARATIONS AND EXPERT REPORTS WOULD NOT

15  BE DIFFICULT.  WE MADE THE POINT IN OUR BRIEFS, AND WE'LL NOT

16  BELABOR IT BUT THIS IS THE FOURTH TIME WE ARE HERE BEFORE YOU

17  SEEKING TO COMPEL APPLE OVER THE LAST TWO YEARS TO PRODUCE

18  DOCUMENTS FROM OTHER LITIGATIONS, AND THERE WERE MOTIONS TO

19  ENFORCE, MOTION FOR SANCTIONS, AND WE HOPE THAT TODAY WE WILL

20  GET THE RELIEF AND NOT BRING ANY SUBSEQUENT MOTIONS ON THIS

21  TOPIC.

22              THE COURT:  THAT FACT DID NOT ESCAPE MY ATTENTION BUT

23  I APPRECIATE YOUR UNDERSCORING IT.

24      I WILL GIVE YOU A CHANCE TO REPLY IF IT BECOMES

25  NECESSARY.

```
 1              MR. SELWYN?

 2              MR. SELWYN:  THANK YOU, YOUR HONOR.

 3         YOUR HONOR, TO BE SURE, THIS IS A LINE DRAWING EXERCISE.

 4    AND I WANT TO EXPLAIN WHY APPLE BELIEVES THAT THE VIRNETX,

 5    NOKIA AND KODAK PATENTS DO NOT BEAR A TECHNOLOGICAL NEXUS TO

 6    THE SAMSUNG PATENTS IN SUIT.

 7              FIRST, IN THE 1846 CASE AND ALSO FOR THE ASSERTED APPLE

 8    PATENTS IN THIS CASE, THE PARTIES AGREED TO TAILOR DESCRIPTIONS

 9    OF WHAT A TECHNOLOGICAL NEXUS IS; THAT IS, THE PARTIES TALKED

10    ABOUT AND DISCUSSED WHAT ARE THE INVENTIVE FEATURES THAT CREATE

11    A TECHNOLOGICAL NEXUS.

12              THE COURT:  IF I REMEMBER, ONCE YOU ALL DID THAT THEN

13    FIGHT WAS OVER WHETHER SOMETHING FELL UNDERNEATH THAT

14    DEFINITION OR NOT, BUT THAT WAS A DIFFERENT KETTLE OF FISH ALL

15    TOGETHER.  HERE I DON'T HAVE THAT, RIGHT?

16              MR. SELWYN:  CORRECT.

17         SO WHAT WE HAVE HERE, AND THE PARTIES DIDN'T ENGAGE IN THAT

18    KIND OF DISCUSSION, WAS SAMSUNG SERVING DOCUMENT REQUESTS

19    SEEKING MATERIALS FROM THREE LITIGATIONS THAT ARE AT ISSUE IN

20    THEIR MOTION.

21              AND IF YOU LOOK AT THE TYPES OF REQUESTS ON WHICH THEY

22    ARE MOVING TO COMPEL, MOST OF THEM ARE DIVORCED FROM THE

23    PARTICULAR PATENTS THAT ARE AT ISSUE.

24              ALL DOCUMENTS SERVED BY ANY PARTY IN THE 701

25    INVESTIGATION RELATED TO APPLE'S DEFENSES AND COUNTERCLAIMS.
```

```
 1        ALL DOCUMENTS FILED UNDER SEAL BY ANY PARTY IN THE 703

 2     INVESTIGATION.  ALL DOCUMENTS PREPARED BY ANY EXPERT IN THE 703

 3     INVESTIGATION.  AND THE LIST GOES ON.

 4             THE COURT:  IT'S EVERYTHING.

 5             MR. SELWYN:  IT'S EVERYTHING.  DIVORCED FROM ANY

 6     TECHNOLOGY.  SO THAT'S ONE POINT.

 7             SAMSUNG DOESN'T DISPUTE THAT APPLE HAS ACCURATELY

 8     CHARACTERIZED WHAT THE VIRNETX, NOKIA AND KODAK PATENTS CLAIM

 9     AS THEIR INVENTIVE CONCEPTS.  THEY DON'T DISPUTE WE HAVE

10     ACCURATELY CHARACTERIZED WHAT THOSE PATENTS ARE.  THEY ARE

11     IGNORING THE CENTRAL IDEAS OF THOSE PATENTS, AND I WANT TO TALK

12     A LITTLE BIT ABOUT THOSE.

13             INSTEAD, WHAT SAMSUNG IS POINTING TO ARE CONCEPTS THAT

14     ARE GENERIC IN THOSE PATENTS THAT, FOR EXAMPLE, EVERY DIGITAL

15     CAMERA WOULD HAVE AND SAYING THAT IS SUFFICIENT TO CREATE A

16     NEXUS.

17             AND TO BE SURE, IF YOUR HONOR FINDS THAT BECAUSE TWO

18     PATENTS BOTH MENTION IMAGE CENSORS --

19             THE COURT:  OR COMMUNICATING OVER THE INTERNET.

20             MR. SELWYN:  OR COMMUNICATING OVER THE INTERNET, THEN

21     WE LOSE AND WE HAVE TO PRODUCE THEM.

22             BUT OUR ARGUMENT TO YOU, YOUR HONOR, IS THAT'S THE NOT

23     THE RIGHT LEVEL OF DETAIL TO BE LOOKING AT.

24             LET ME BEGIN BRIEFLY WITH THE VIRNETX PATENTS.  YOU WILL

25     NOTE IF YOU LOOK THROUGH THEIR BRIEFS THAT SAMSUNG NEVER
```

1    ACTUALLY SAYS THE VIRNETX PATENTS COVER THE SAME OR SIMILAR

2    TECHNOLOGIES AS THE '239 PATENT, AND THERE'S GOOD REASON FOR

3    THAT.  THAT'S BECAUSE THE VIRNETX PATENTS RELATE TO METHODS FOR

4    SECURE COMMUNICATIONS OVER THE INTERNET.

5         THEY FOCUS ON ESTABLISHING A DOMAIN NAME SERVICE, STORING

6    DOMAIN NAMES, NETWORK ADDRESSES, RECEIVING A QUERY FOR NETWORK

7    ADDRESS AND SO ON.

8         THE CLAIMS HAVE NOTHING TO DO WITH VIDEO OR EVEN WITH THE

9    TYPE OF DATA THAT WILL BE TRANSMITTED BY A NETWORK.

10        IN CONTRAST, THE '239 PATENT RELATES TO CAPTURING,

11   TRANSMITTING AND COMPRESSING VIDEO USING A REMOTE UNIT, A HOST

12   UNIT AND A PLAYBACK UNIT.

13        THE '239 PATENT HAS NOTHING TO DO WITH DNS, NOTHING TO DO

14   WITH SECURED COMMUNICATIONS OVER THE INTERNET, HAS NOTHING TO

15   DO WITH THE INTERNET.

16        THE '239 PATENT ISSUED -- ISSUED FOUR YEARS BEFORE THE

17   EARLIEST OF THE VIRNETX PATENTS.

18        SO YOU MIGHT THINK IF THERE'S ANY RELATIONSHIP BETWEEN

19   THE TWO, IT'S GOING TO BE CITED SOMEWHERE ALONG THE 400 PRIOR

20   ART PATENTS AND THE VIRNETX PATENTS.  IT ISN'T.

21        THERE'S ALSO NO OVERLAP IN THE PATENT CLASSIFICATIONS

22   BETWEEN THE VIRNETX PATENTS AND THE '239 PATENTS.

23        SO THAT'S ONE OBJECTIVE MEASURE FOR FINDING A

24   DISSIMILARITY BETWEEN THE TWO.

25        SAMSUNG APPEARS TO WALK AWAY FROM THAT ASPECT OF THE

1       TECHNOLOGICAL NEXUS AND POINTS TO THE DAMAGES RELATIONSHIP AND

2       MR. VELLTURO, ETC., THAT'S SORT OF A LATE BREAKING ARGUMENT

3       BECAUSE IT WASN'T IN THE MEET AND CONFER.

4            THEY NEVER STATE IN THEIR BRIEFS HOW THE VIRNETX

5       LITIGATION MATERIALS WOULD BE RELEVANT TO THE ISSUES OF

6       WILLFULNESS AND INDIRECT INFRINGEMENT, BUT THEY DO FOCUS ON

7       DAMAGES.

8            THEY ARGUE THAT TO THE EXTENT TO WHICH FACETIME

9       CONTRIBUTES TO CONSUMER DEMAND FOR APPLE PRODUCTS THAT THAT'S A

10      RELEVANT ISSUE IT'S GOING TO BE RELEVANT HERE BECAUSE FACETIME

11      IS ALSO AT ISSUE HERE.

12           THAT'S NOT QUITE RIGHT.  BECAUSE THE FOCUS IS NOT ON

13      FACETIME PER SE BUT ON THE PATENTED FEATURE.  AND THE LEGAL

14      QUESTION IS GOING TO BE THE EXTENT TO WHICH THE ALLEGEDLY

15      PATENTED FEATURE DRIVES DEMAND.  AND THEY HAVEN'T CONNECTED THE

16      ALLEGEDLY PATENTED FEATURE AT ALL.

17              THE COURT:  SO IF I'M HEARING YOU RIGHT MR. SELWYN,

18      IF I THINK ABOUT MS. MAROULIS'S POINT, UNDER THE TECHNOLOGICAL

19      NEXUS STANDARD I NOW ESSENTIALLY HAVE TO CONSTRUE OTHER PATENTS

20      IN OTHER CASES AND THEN I ALSO HAVE TO THINK ABOUT THE

21      APPLICATION OF THE ENTIRE MARKET VALUE ROLE IN OTHER CASES AND

22      HOW IT COMPARES TO ISSUES IN THIS GIVEN CASE.

23              MR. SELWYN:  I HOPE NOT.

24              THE COURT:  WELL, BUT IT SEEMS LIKE I REALLY HAVE

25      LITTLE CHOICE THOUGH, RIGHT, BECAUSE IF I'M TO TRULY UNDERSTAND

```
1    HOW SIGNIFICANT THE OVERLAP IS BETWEEN A SECURED COMMUNICATION

2    AND A METHOD FOR COMPRESSING THE DATA WHICH MAKES UP OR

3    COMPRISES THAT COMMUNICATION, I HAVE IT GET INTO CLAIM

4    CONSTRUCTION AT SOME LEVEL, DON'T I?

5            MR. SELWYN:  AS I STATED AT THE START, IT'S A LINE

6    DRIVE EXERCISE.

7        IT MAY HAD BEEN TO LOOK AT THE CLAIMS OR PATENTS.  I DON'T

8    THINK YOU CAN DO THE ANALYSIS WITHOUT FOCUSSING ON WHAT IS

9    CLAIMED IN THE PATENTS AND MAKING A COMPARISON.

10           THE COURT:  THAT'S HOW WE KNOW WHAT THE PATENT

11   COVERS, RIGHT?

12           MR. SELWYN:  RIGHT.  AND MY ARGUMENT TOO, YOUR HONOR,

13   IS IT'S NOT AS SUBTLE AS HAVING TO DO WITH CLAIMS CONSTRUCTION

14   ANALYSIS BETWEEN --

15           THE COURT:  IT'S NOT QUITE AS GRIM AS I'M SUGGESTING.

16           MR. SELWYN:  YEAH.

17       IF WE WERE ARGUING WHAT A WORD MEANT IN THE CLAIMS, WE

18   WOULDN'T BE HAVING THIS FIGHT.

19           OUR POINT IS THERE'S NO RELATIONSHIP BETWEEN THESE TWO

20   PATENTS.

21           NOKIA'S '256 PATENT IN THE 701 INVESTIGATION, THAT

22   RELATES TO A SINGLE CHIP CAMERA MODULE, INTEGRATED MOBILE

23   TERMINAL PROCESSOR AND HOW THOSE RELATE AND CONTROL ONE

24   ANOTHER.  IT DOESN'T HAVE ANYTHING TO DO WITH THE '449 PATENTS

25   IN THIS CASE WHICH HAS TO DO WITH ORGANIZING AND STORING
```

1    IMAGES.  IT DOESN'T HAVE ANYTHING TO DO WITH THE '239 PATENT

2    ABOUT SENDING VIDEO.

3         THE KODAK 218 PATENT AND THE 703 INVESTIGATION RELATES TO

4    OPERATING A DIGITAL CAMERA IN A PREVIEW MODE AND IN A STILL

5    IMAGE MODE.

6         AND AGAIN, WHEN YOU LOOK AT THOSE CLAIMS, THERE'S NO

7    SIMILARITY BETWEEN THEM EXCEPT THAT THE HIGHEST LEVEL, THAT IS

8    THAT THEY DO HAVE THE WORDS PROCESSOR, THEY HAVE THE WORD

9    MEMORY AND DISPLAY, BUT YOU KNOW SOMETHING, EVERY DIGITAL

10   CAMERA HAS AN IMAGE CENSOR AND THAT IS HOW IT CAPTURES LIGHT,

11   IT'S NOT GOING TO WORK WITHOUT IT.  EVERY DIGITAL CAMERA IS

12   GOING TO HAVE A PROCESSOR AND IT'S GOING TO HAVE A MEMORY.

13        AND WE DON'T DISPUTE THAT OUR PRODUCTS HAVE THAT.  WHEN

14   THEY SAY THEY NEED THIS DISCOVERY TO FIND ADMISSIONS BY US,

15   THERE'S NO DISPUTE ABOUT THOSE BASIC BUILDING BLOCKS.

16        ANALYTICALLY THE QUESTION IS, ARE THERE COMMON

17   LIMITATIONS THAT THE PARTIES DO DISPUTE.  AND THEY HAVEN'T

18   POINTED TO ANY COMMON LIMITATIONS THAT ARE IN DISPUTE.

19        FINAL THING I WILL SAY IS JUST ABOUT THE PURPORTED

20   OVERLAP OF WITNESSES.

21        FIRST, THEY SAY DR. STORER IS A WITNESS IN BOTH THE 701

22   INVESTIGATION AND HE'S ONE OF APPLE'S EXPERTS HERE.  THAT'S NOT

23   RIGHT.  DR. STORER WAS NOT DEPOSED IN 701.  THE NOKIA

24   INVESTIGATION.  HE DIDN'T PREPARE ANY EXPERT REPORTS.  AS FAR

25   AS WE CAN TELL, HE DIDN'T DO ANY WORK ON THE '256 PATENTS, THE

1    ONE SAMSUNG ALLEGES.  SO THERE'S NO EXPERT REPORT FROM

2    DR. STORER.

3         WITH RESPECT TO MR. PARULSKI, HE'S AN INVENTOR ON ONE OF

4    THE PIECES OF PRIOR ART THAT APPLE IS RELYING ON FOR ITS

5    INVALIDITY CASE TO SAMSUNG'S '449 PATENTS.  BUT IN THIS VERY

6    CASE SAMSUNG IS DISTINGUISHING MR. PARULSKI'S PATENT AND SAYING

7    IT DOES NOT ADDRESS THE SAME PROBLEMS ADDRESSED BY THE '449

8    PATENT.

9         I'M QUOTING NOW FROM SAMSUNG'S VALIDITY CONTENTIONS WHERE

10   THEY TAKE ISSUE WITH ANY SUGGESTION THAT THERE'S A RELATIONSHIP

11   BETWEEN THE TWO.  AND CONTRARY TO WHAT SAMSUNG SAYS IN ITS

12   BRIEF, APPLE DID NOT SUBPOENA MR. PARULSKI FOR DOCUMENTS AND

13   TESTIMONY REPORTED TO THE '239 PATENT, APPLE ISN'T ASSERTING

14   ANYTHING FROM MR. PARULSKI WITH RESPECT TO THE '239 PATENT.

15        THE LAST POINT IS WITH RESPECT TO MR. VELLTURO.

16        THE COURT:  THIS REALLY HAS TO BE THE LAST POINT

17   BECAUSE I DO NEED TO TURN TO OTHER MATTERS.

18        MR. SELWYN:  VERY WELL.

19        WITH RESPECT TO MR. VELLTURO, WHAT APPLE'S EXPERTS SAID

20   ABOUT THE VALUE OF FACETIME DOES NOT SHED ANY LIGHT ON THE

21   VALUE OF DIFFERENT FEATURES THAT ARE ASSERTED IN THIS CASE.

22        BUT THAT SAID, AND THIS IS SOMETHING WE MADE CLEAR TO THEM

23   THIS THE MEET AND CONFER.  IF THE ISSUE IS YOU WANT AN EXPERT

24   REPORT OR YOU KNOW, YOU CAN IDENTIFY SPECIFIC DOCUMENTS YOU

25   WANT, WE ARE NOT GOING TO FIGHT ABOUT THAT.  WE ARE NOT GOING

1    TO BRING A MOTION TO YOU ABOUT THAT ISSUE.  THE ISSUE HERE IS

2    ENTIRELY TOO SWEEPING TO ASK FOR EVERYTHING FROM THOSE THREE

3    CASES BECAUSE WHAT THEY REALLY WANT IS AN EXPERT REPORT.

4         THE COURT:  ALL RIGHT.  THANK YOU, MR. SELWYN.

5      MS. MAROULIS, I WILL GIVE YOU A CHANCE TO GIVE A BRIEF

6    REPLY THEN I WANT TO VERY BRIEFLY TALK ABOUT SOURCE CODE.

7         MS. MAROULIS:  YOUR HONOR, VERY BRIEFLY.

8    YOUR HONOR DOES NOT NEED TO CONDUCT MARKMAN ANALYSIS BETWEEN

9    BETWEEN THIS CASE AND ANOTHER CASE.

10        THE COURT:  I'M VERY GRATEFUL FOR THAT.

11        MS. MAROULIS:  WITH RESPECT TO VIRNETX, THE FACETIME

12   IS AN ACCUSED PRODUCT IN THIS CASE AND FACETIME WAS AN ACCUSED

13   PRODUCT IN THE OTHER CASE.  THE PATENTS ARE SIMILAR ENOUGH THAT

14   THE ELUCIDATION OF HOW APPLE DISCUSSED IN ITS EXPERT REPORTS

15   AND OTHER SUBMISSIONS FACETIME IS GOING TO BE VERY IMPORTANT

16   AND VERY RELEVANT HERE.

17        MOREOVER WITH RESPECT TO DAMAGES AND WILLFULNESS MATTERS,

18   THEY DON'T NECESSARILY NEED TO HAVE TECHNOLOGICAL NEXUS.  IN

19   THE LAST CASE, APPLE MOVED TO COMPEL SAMSUNG PRODUCTION FROM

20   OTHER CASES RELATING TO FRAND.  AND SAMSUNG ULTIMATELY AGREED

21   AND WE TOOK THE MOTION OFF CALENDAR BECAUSE WHETHER OR NOT WE

22   HAVE TECHNOLOGICAL NEXUS, IF YOU HAVE VERY SIMILAR POSITIONS OR

23   CONFLICTING POSITIONS OR DAMAGES OR OTHER NONTECHNICAL ISSUES

24   IS IMPORTANT AND IS RELEVANT.

25        THE COURT:  YOU ALSO GUESSED RIGHT, FOR WHAT IT'S

```
 1    WORTH.  I WILL LEAVE IT AT THAT.

 2         IN ANY EVENT --

 3              MS. MAROULIS:  BUT THE MOST IMPORTANT THING IS,

 4    YOUR HONOR, IS THE STANDARD FOR DISCOVERY IS, IS IT GOING TO BE

 5    REASONABLY CALCULATED TO DISCOVERY OF ADMISSIBLE EVIDENCE.

 6         WE DON'T NEED TO PRE-TRY THE CASES NOW, COMPARE AND

 7    CONTRAST THEM, HAVE MARKMAN ON WHICH LIMITATIONS OVERLAP OR

 8    NOT.

 9              CLEARLY SAMSUNG HAS ESTABLISHED THAT THE DISCOVERY OF

10    THIS EVIDENCE WOULD LEAD TO SOMETHING ADMISSIBLE AND RELEVANT.

11              WITH RESPECT TO NOKIA AND KODAK I HEARD COUNSEL SAY THAT

12    SAMSUNG -- THAT APPLE DOES NOT DISPUTE CERTAIN LIMITATIONS.

13    THAT IS NOT OUR UNDERSTANDING.  OUR UNDERSTANDING IS APPLE

14    DISPUTES EVERY SINGLE LIMITATION FROM THE ASSERTED PATENTS

15    INCLUDING VERY GENERIC ONES.  AND SPECIFICALLY, WE CITE

16    YOUR HONOR TO APPLE'S INTERROGATORY RESPONSES WHICH IS

17    EXHIBIT 9 TO THE PRIOR MOTION.

18              THE COURT:  YOU ARE SAYING EVERY LIMITATION IS DENIED

19    IN EACH OF THOSE ASSERTED PATENTS.

20              MS. MAROULIS:  THAT IS OUR UNDERSTANDING, YOUR HONOR.

21              THE COURT:  OKAY.

22              MR. JOHNSON:  JUST I WOULDN'T SAY EACH AND EVERY ONE

23    OF THEM, FOR EXAMPLE MR. SELWYN WAS TALKING ABOUT THE '239.

24              THE COURT:  I'M SORRY.  WITH RESPECT TO THE '239.

25              MR. JOHNSON:  YEAH.  IT'S PRETTY AMAZING.
```

1          THE COURT:  OKAY.

2          MR. JOHNSON:  SO EXHIBIT 6 TO THE -- EXHIBIT 9

3     RATHER, TO THE MOTION TO AMEND HAS THE INTERROGATORY RESPONSE

4     BY APPLE AND NON INFRINGEMENT.

5          THE COURT:  ALL RIGHT.

6        WELL LET'S VERY BRIEFLY TALK ABOUT SOURCE CODE.  DO I STILL

7     HAVE A DISPUTE IN FRONT OF ME ON SOURCE CODE?

8          MS. MAROULIS:  YES, YOUR HONOR.

9          THE COURT:  APPLE CERTAINLY SUGGESTED THAT THERE'S

10    NOTHING LEFT TO TALK ABOUT.  I TAKE IT YOU HAVE A DIFFERENT

11    VIEW.

12         MS. MAROULIS:  YES, YOUR HONOR.  WE DO HAVE A

13    DISPUTE.  AND THAT HAS BEEN OUR PROBLEM WITH THE SOURCE CODE.

14       PRIOR TO US FILING THIS MOTION APPLE PRODUCED ONLY ABOUT

15    THREE GIGABYTES OF SOURCE CODE AND TOLD US THAT'S ALL THAT'S

16    RELEVANT AND WE ARE NOT GOING TO GET ANYTHING ELSE.

17       AFTER WE FILED THE MOTION THEY PRODUCED MORE THAN 90

18    GIGABYTES OF SOURCE CODE AND THEY ARE CONTINUING TO DO THAT.

19    THERE'S BEEN SOURCE CODE PRODUCED THIS PAST FRIDAY AND SATURDAY

20    AND I HAVE PEOPLE TRYING TO FIGURE OUT WHAT'S IN IT.  I CAN'T

21    TELL YOUR HONOR WHAT'S IN IT BECAUSE WE DON'T HAVE THE RESULTS

22    YET.

23       BUT THE TWO MAIN ISSUES WE HAVE HAD WITH THIS PRODUCTION

24    WITH APPLE'S POSITION IS, ONE, SELECTIVE RELEVANCE; AND TWO,

25    APPLE'S VERY NARROW CONSTRUCTION OF OUR CONTENTIONS.

```
 1        WITH RESPECT TO SELECTIVE RELEVANCE, APPLE DECIDED THEY

 2   WILL BE THE JUDGE OF WHAT'S RELEVANT WITH EACH PARTICULAR

 3   APPLICATION.

 4        AND AS A RESULT THEY HAVE BEEN PRODUCING SLIVERS OR VERY

 5   NARROW SLICES OF SOURCE CODE.  IT WOULD BE LIKE ME GIVING YOU A

 6   BRIEF BUT ONLY GIVING YOU A CERTAIN SECTION YOU MIGHT BE

 7   INTERESTED IN WITHOUT THE FACT SUCCESSION OR CONTENTS OR

 8   ANYTHING ELSE.

 9        THE COURT:  WORSE THAN THAT, IT'S THE CERTAIN SECTION

10   YOU THINK I OUGHT TO BE INTERESTED IN.

11        MS. MAROULIS:  EXACTLY.  AND I'M NOT SUBMITTING THE

12   SECTION WHERE I'M EXPLAINING OTHER ISSUES AND PROBLEMS WITH OUR

13   POSITION.

14        SO BASICALLY WHAT WE NEED IS -- WHAT SAMSUNG IS SEEKING

15   IS SOURCE CODE FOR THE ACCUSED FUNCTIONALITY, SOFTWARE AND

16   HARDWARE THAT OPERATES OR ENABLES THESE ACCUSED MODULES.

17        AND WHAT APPLE IS DOING IS THEY ARE SUBMITTING US

18   SOMETHING THAT THEY HAND PICKED, CHERRY PICKED, BY TALKING TO

19   35 DIFFERENT ENGINEERS, THAT IS EXTREMELY NARROWLY CONSTRUED.

20        AND EVEN THE DECLARATIONS OF THE ENGINEERS BASICALLY SAY

21   I PICKED OUT A FILE THAT IS RESPONSIBLE FOR CONDUCTING THE

22   SOURCE CODE.  THAT DOES NOT ALLOW SAMSUNG TO FULLY REVIEW AND

23   UNDERSTAND HOW THAT PARTICULAR MODULE OPERATES TO FULLY

24   PROSECUTE ITS INFRINGEMENT CASE.

25        THAT'S A NUMBER OF CASES WE CITE IN OUR BRIEFS THAT
```

1    BASICALLY SAY THE PARTY CANNOT BE THE JUDGE OF WHAT'S RELEVANT

2    TO THE OTHER PARTY.  YOU CAN ARGUE ABOUT THAT, BUT A PARTY

3    CANNOT SELF RELY.

4            THE COURT:  SO THE FUNDAMENTAL PROBLEM YOU HAVE

5    MS. MAROULIS, AND AGAIN I RECOGNIZE THIS IS A MOVING TARGET SO

6    YOU MAY NOT HAVE COMPLETELY UPDATED INFORMATION, IS THE

7    FUNDAMENTAL PROBLEM YOU HAVE THAT YOU ARE UNABLE TO LOOK AT

8    THAT, EVEN TO LOOK AT THAT WHICH APPLE DEEMS RELEVANT BECAUSE

9    OTHER SOFTWARE WHICH IS ENABLING HASN'T BEEN PRODUCED?

10           MS. MAROULIS:  THAT IS ONE OF THE ISSUES.

11       THE SECOND ISSUE IS THAT WE HAVE BEEN PREVIOUSLY TOLD THAT

12   EVERYTHING THAT'S RELEVANT HAS ALREADY BEEN PRODUCED AND NOW WE

13   ARE GETTING MORE PRODUCTION.  SO IT'S A LITTLE BIT DIFFICULT TO

14   TRUST AND UNDERSTAND WHAT IS GOING TO BE THE FINAL.

15           THE COURT:  THE PRODUCTION IS OVER 30 TIMES WHAT WAS

16   INITIALLY PRESENTED.

17           MS. MAROULIS:  EXACTLY.

18       SO THE SHEER VOLUME OF THAT GETS US CONCERNED.  AND I'M

19   TOLD BY MY TEAM WE'RE STILL MISSING CERTAIN SUBSETS OF THE

20   MODULE.

21       IN OUR REPLY BRIEF WE IDENTIFIED ITEMS THAT WE'RE MISSING,

22   AND LOW AND BEHOLD THEY WERE PRODUCED AFTER THE REPLY.  THAT'S

23   WHAT I UNDERSTAND, AT LEAST SOME OF THEM.

24           SO EVENTUALLY WE MIGHT GET TO SOME POINT WHERE MORE WOULD

25   BE PRODUCED, BUT BECAUSE WE'RE TOWARD THE END OF DISCOVERY AND

1    DEPOSITIONS ARE CONTINUING AND WE HAD TO CANCEL TWICE

2    DEPOSITIONS OF CERTAIN SOURCE CODE RELATED PERSONNEL BECAUSE WE

3    DIDN'T HAVE THE SOURCE CODE.

4         WE NEED TO PUT AN END TO THIS, HAVE AN ORDER COMPELLING

5    APPLE TO PRODUCE THE SOURCE CODE THAT WE ARE REQUESTING AND

6    MOVE FORWARD WITH THE DEPOSITION SO WE CAN CLOSE OUT DISCOVERY

7    ON JULY 8TH.

8         THE COURT:  ALL RIGHT.  THANK YOU.

9       MR. SELWYN?

10        MR. SELWYN:  YOUR HONOR, I NEED TO SPEND A FEW

11   MINUTES ROLLING BACK THE CLOCK AND UNPACKING THIS MOTION

12   BECAUSE IT'S ONE THAT WE HAVE TAKEN VERY SERIOUSLY AS SHOWN BY

13   THE 35 ENGINEERING DECLARATIONS WE PRESENTED.

14        THE FIRST QUESTION FOR YOUR HONOR IS WHAT DOES THE MOTION

15   ASK FOR?  WHAT'S THE RELIEF THAT'S REQUESTED?

16        AND THE RELIEF THAT'S REQUESTED IN THE MOTION AND THE

17   PROPOSED ORDER IS THAT APPLE PRODUCE A COMPLETE PRODUCTION OF

18   ALL SOURCE CODE FOR ALL VERSIONS OF THE ACCUSED PRODUCTS

19   INCLUDING ALL VERSIONS OF IOS AND MAC OSX AS WELL AS SOFTWARE

20   APPLICATIONS, HARDWARE RELATED SOURCE CODE AND SERVER BASED

21   CODES.

22        IN OUR OPPOSITION BRIEF WE PROVIDED A NUMBER OF REASONS

23   WHY SAMSUNG'S SWEEPING REQUEST IS NOT SUPPORTABLE IN THAT THEY

24   SEEK CLEARLY IRRELEVANT CODE, CODE THAT'S UNRELATED TO ACCUSED

25   FUNCTIONALITY.

1          THE COURT:  BUT WHAT'S A GREATER BURDEN FOR APPLE,

2    MR. SELWYN, FIGHTING OVER THAT WHICH IS IRRELEVANT OR GOING TO

3    THE TROUBLE AND PAINS OF EXTRACTING FROM THE CODE BASE THE VERY

4    SAME CODE?

5          IN OTHER WORDS, I TAKE YOUR POINT THAT UNDOUBTEDLY, I CAN

6    ALMOST GUARANTEE, IF NOT GUARANTEE, UNDER WHAT SAMSUNG HAS

7    REQUESTED YOU WOULD BE PRODUCING MATERIAL WHICH IS NEVER GOING

8    TO SEE THE LIGHT OF DAY IN THIS CASE AND IS NOT EVEN

9    DISCOVERABLE UNDER THE GENERAL STANDARDS OF RULE 26 BUT FOR THE

10   FACT IN ORDER TO GET TO THAT YOU ARE GOING TO HAVE TO SPEND TO

11   MORE TIME AND ENERGY THAN YOU WOULD SIMPLY TURNING IT OVER.

12         WHAT'S THE PROBLEM WITH SIMPLY SAYING, LOOK, HAVE A LOOK

13   AT IT AND WE WILL RELY ON THE PROTECTIVE ORDER.

14         MR. SELWYN:  WELL, TWO FOLD.

15         FIRST, WITH RESPECT, IT COULD ALWAYS BE EASIER JUST TO GIVE

16   THE KEYS TO THE BUILDING TO THE OTHER SIDE.

17         THE COURT:  UNDERSTOOD.

18         MR. SELWYN:  IT'S A BURDEN ASSOCIATED WITH THAT AND

19   THAT'S ESSENTIALLY WHAT THEY ARE ASKING US TO DO.  THAT'S NOT

20   THE WAY DISCOVERY WORKS, THERE'S ALWAYS A THRESHOLD QUESTION OF

21   RULE 26 AND RELEVANCE.

22         SO BURDEN ASIDE, IF THEY CANNOT SHOW RELEVANCE FOR THE

23   BREADTH OF THEIR REQUEST, IT SHOULD BE DENIED.

24         SECOND, AS TO BURDEN, IT IS A SUBSTANTIAL BURDEN.  IT'S A

25   SUBSTANTIAL BURDEN IN TERMS OF THE SECURITY ISSUES THAT ARE

1    RAISED BY THIS TYPE OF SWEEPING REQUEST.

2         FRANKLY, I CAN'T IMAGINE HOW THAT COULD BE HOSTED IN THE

3    SAME WAY WE HOST THE SOURCE CODE.  WE WOULDN'T.  I MEAN, OUR

4    LAW FIRM IS NOT FORT KNOX, THERE'S NO WAY WE ARE EQUIPPED TO DO

5    THAT.  IF CERTAIN OF THE SOURCE CODE WERE, FOR WHATEVER REASON,

6    STOLEN, SEIZED, IT WOULD BE A CRISIS SITUATION.

7         THE APPROACH THAT SAMSUNG IS PROPOSING IN ITS MOTION IS

8    INCONSISTENT WITH THE PATENT LOCAL RULES.  IT'S INCONSISTENT

9    WITH ITS OWN DOCUMENT REQUESTS.  AND I THINK SAMSUNG NOW

10   REALIZES THAT BECAUSE IN THEIR OPPOSITION BRIEF THEY WALK AWAY

11   FROM THEIR PRAYER FOR RELIEF.  AND CONTRARY TO WHAT THEY SAY

12   EXPLICITLY IN THEIR MOTION, THEY SAY THEY NEVER ASK FOR ALL

13   SOURCE CODE.  THEY SAY WE HAVE MISCHARACTERIZED THE RELIEF

14   SOUGHT BY SAMSUNG'S MOTION.

15        SAMSUNG'S MOTION SHOULD BE DENIED BECAUSE SAMSUNG NO

16   LONGER EVEN SEEKS THE RELIEF THEY ARE REQUESTING.  AND INSTEAD

17   OF DEFENDING THE MOTION ON THE BASIS IN WHICH IT WAS BROUGHT

18   AND WITHOUT OFFERING EVEN A SINGLE EXPERT DECLARATION

19   JUSTIFYING A REQUEST FOR MORE CODE, THEY BASICALLY SPEND THE

20   REPLY BRIEF AND THIS MORNING TAKING SHOTS AT APPLE'S

21   PRODUCTION.

22        SO LET ME TALK TO YOU FOR A MINUTE ABOUT APPLE'S

23   PRODUCTION BECAUSE IT'S INCREDIBLY COMPREHENSIVE.  FIRST, LET

24   ME TALK ABOUT THE PRODUCTION, THE ORIGINAL PRODUCTION PRIOR TO

25   THE SUPPLEMENTATION TO INCLUDE ALL VERSIONS.

1    ORIGINALLY BEGINNING WITH OUR RULE 4.2 PRODUCTION IN

2    AUGUST 2012, APPLE PRODUCED RELEVANT CODE FROM THE MOST RECENT

3    SOFTWARE VERSIONS.  WHY DO WE DO THAT?  IT'S THE SAME THING WE

4    DID IN THE LAST CASE.  DID SAMSUNG OBJECT IN THE LAST CASE?

5    NOT AT ALL.  THERE WAS NEVER THIS TYPE OF ISSUE IN THE LAST

6    CASE.

7        SAMSUNG COMPLAINS THAT THE ORIGINAL PRODUCTION WAS SMALL,

8    THREE GIG BITES THEY SAY, IN A WAY TO KIND OF DENIGRATE IT.

9    THAT'S A HUGE AMOUNT OF CODE, THAT'S MORE THAN 300 BOXES OF

10   CODE.  BY COMPARISON, IN THE PRIOR CASE WE PRODUCED 3.2

11   GIGABYTES OF CODE.  SO ESSENTIALLY THE SAME AMOUNT OF CODE.

12       THAT CODE INCLUDED FUNCTIONALITY FOR NUMEROUS APPS, MUSIC

13   PLAYER, NOTES, MAIL, SAFARI, CALENDAR, CONTACTS, PHOTOS.  AND

14   INCLUDED THE UI LAYER CODE, AUDIO PROCESSING CODE, VOLUME

15   DISPLAY CODE, ITUNES CODE, APPLE TV CODE, SPRINGBOARD CODE.  I

16   CAN GO ON WITH THAT LIST.

17       WE THEN HAD MEET AND CONFERS REALLY BEGINNING IN MARCH,

18   BECAUSE THE VERY FIRST TIME SAMSUNG MADE THE REQUEST ON WHICH

19   THEIR MOTION IS PREDICATED IS MARCH 1ST.

20       THEY SENT US A LETTER AND THEY SAID WE WANT EVERYTHING.

21   WE WANT ALL CODE.  WE MET AND CONFERRED OVER A SERIES OF WEEKS

22   AND SAID, WE DON'T THINK YOU NEED EVERYTHING, WE DIDN'T GIVE

23   YOU EVERYTHING IN THE LAST CASE, YOU WERE HAPPY WITH JUST THE

24   MOST RECENT VERSIONS.

25       BUT I WILL TELL YOU WHAT, WE WILL GIVE YOU EACH AND EVERY

1   VERSION FOR THE ACCUSED FUNCTIONALITY.  AND THAT'S WHAT WE SET

2   ABOUT TO DO WE PRODUCED MORE THAN 80 DIFFERENT VERSIONS OF

3   CODE.

4        SO WHEN THEY SAY WE DUMPED LOTS OF CODE ON THEM, WELL THE

5   REASON THERE'S SO MUCH CODE NOW IS BECAUSE THEY ARE GETTING 80

6   VERSIONS OF THE CODE.  IT'S NO SURPRISE WE ARE TALKING ABOUT

7   NOW 90 PLUS GIGABYTES OF CODE.

8        LET ME JUST TALK ABOUT THE REMAINING ALLEGATIONS IN THEIR

9   REPLY BRIEF WHICH ARE RAISED FOR THE FIRST TIME.

10        THE COURT:  I WILL GIVE YOU ONE LAST MINUTE, AND I DO

11   NEED TO MOVE ON.

12        MR. SELWYN:  FAIR ENOUGH, I CAN DO THIS QUICKLY.

13        FIVE OF THE ALLEGEDLY MISSING CODE IS ON THE COMPUTER --

14   WAS ON THE SOURCE CODE COMPUTER WHEN THEY SAID THEY COULDN'T

15   FIND AT THIS TIME.  CURRENT VERSION OF PHOTO STREAM, CAMERA

16   APP, MEME CS FUNCTIONALITY, CHC TRANSITION CODE, RENDERING

17   CONTEXT METHOD.

18        THERE ARE FIVE OTHER THINGS THEY CITE IN THE REPLY BRIEF WE

19   DON'T THINK ARE RELEVANT.  BUT YOU KNOW WHAT, WE SAID IF THAT'S

20   WHAT WE ARE TALKING ABOUT NOW, WE ARE JUST GOING TO GIVE IT TO

21   YOU.  THAT'S WHAT WE PUT ON THE MACHINE THE LAST THURSDAY AND

22   FRIDAY.

23        WE DON'T THINK THEY ARE RELEVANT, AND I CAN EXPLAIN TO

24   YOU WHY ARE NOT RELEVANT.  BUT WE ARE NOT GOING TO FIGHT ABOUT

25   IT BECAUSE IF THAT'S WHAT WE ARE TALKING ABOUT, THEY CAN HAVE

1     IT.

2          I WILL SAY TO YOU NOW THE SAME THING THAT I SAID TO

3     SAMSUNG BEFORE.  IF THERE'S ANY CODE THEY CAN GIVE A COLORABLE

4     JUSTIFICATION OF HOW IT RELATES TO THIS CASE, WE ARE GOING TO

5     PRODUCE IT.  OKAY.  THAT DOESN'T GIVE THEM CARTE BLANCHE TO SAY

6     WE WANT ALL CODE.

7          BUT IF THERE'S ANY CODE THEY CAN GIVE A COLORABLE

8     EXPLANATION OF HOW IT RELATES TO FUNCTIONALITY, WE ARE GOING TO

9     PRODUCE IT AND THAT'S WHAT WE HAVE DONE

10          THE COURT:  ALL RIGHT.  THANK YOU, MR. SELWYN.

11          LAST WORD TO YOU MS. MAROULIS.

12          MS. MAROULIS:  YOUR HONOR, IS CORRECT.

13          APPLE SPENT FAR MORE TIME TRYING TO FIGURE OUT HOW NOT TO

14     GIVE US CODE THAN IT WOULD BE TO JUST PROVIDE THE CODE THAT WE

15     REQUESTED.

16          CONTRARY TO HOW APPLE BEHAVED WITH RESPECT TO THIS ISSUE,

17     SAMSUNG ACTUALLY GAVE THEM THE KEYS TO THE BUILDING.  WE

18     PROVIDED ALL OF OUR SOURCE CODE REAL TIME TO APPLE BECAUSE WE

19     HAD NO MANY ISSUES WITH BOTH PARTIES PRODUCTIONS.

20          WE HAVE VERY ROBUST SECURITY MEASURES IN THE PROTECTIVE

21     ORDER AND EVERYONE INVOLVED HAS BEEN TAKING THE PROCEDURE VERY

22     SERIOUSLY.  SO THE SECURITY CONCERNS ARE SIMPLY NOT THE REASON

23     NOT TO PRODUCE RELEVANT CODE.

24          WE HAVE INFORMED APPLE OF ON A NUMBER OF OCCASIONS OF

25     WHICH SPECIFIC MODULES WE WANT.  MOST RECENTLY WAS IN A LETTER

1    FROM MR. THAKUR HERE ON MAY 31ST WHERE WE LIST THEM OUT.

2         CONTRARY TO WHAT APPLE SAYS IN ITS MOTION, IT'S NOT EVERY

3    SINGLE LINE OF CODE, IT'S A LOT LESS.  AND WITH RESPECT TO IOS

4    CODE, THERE'S BEEN A NUMBER OF DIFFERENT MODULES WE SAID WE

5    NEED.

6         I DO NOT WANT TO GO INTO THE CONFIDENTIAL SOURCE CODE

7    STRUCTURE HERE, BUT IT IS NOT ALL CODE AND IT IS NOT TOO

8    BURDENSOME NOT AT ALL IRRELEVANT.

9         SO -- AND AS THEIR CONTINUING PRODUCTION INDICATES, OUR

10   CONCERNS WERE CORRECT.  WE STILL DID NOT HAVE VARIOUS MODULES

11   THAT WERE SPECIFICALLY REFERENCED IN VARIOUS APPLE'S

12   INTERROGATORIES AND OTHER DISCOVERY RESPONSES.

13        SO WE DO NEED RELIEF IN THIS CASE.

14            THE COURT:  ALL RIGHT.  THANK YOU.

15            MR. SELWYN:  30 SECONDS?

16            THE COURT:  15, MR. SELWYN.

17            MR. SELWYN:  MAY 31ST LETTER THAT SAMSUNG REFERENCES,

18   THEY WROTE US A LETTER WITH A CHART AND THEY SAID TO US, FILL

19   IN THE CHART TO SAY WHAT YOU HAVE PRODUCED SO WE CAN PRESENT IT

20   AS PART OF OUR REPLY BRIEF TO CRYSTALLIZE THE ISSUES FOR YOUR

21   HONOR.

22      WE DID THAT.  WE RECEIVED A LETTER FRIDAY NIGHT.  MONDAY

23   MORNING WE SENT IT BACK TO THEM.  IT WAS NEVER FOUND IN THE

24   REPLY BRIEF, AND I THINK THERE'S A REASON WHY.

25            THE COURT:  ALL RIGHT.  THANK YOU.

1          THE MATTER IS SUBMITTED WE WILL HAVE AN ORDER OUT SHORTLY.

2          (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                      **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9      REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10     THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11     FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12     CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14     CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15     CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16     SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17     HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18     TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24     _____

25     SUMMER A. FISHER, CSR, CRR
       CERTIFICATE NUMBER 13185          DATED: 6/17/13