1  Amy H. Candido (Bar No. 237829)
   amycandido@quinnemanuel.com
2  Matthew S. Warren (Bar No. 230565)
   matthewwarren@quinnemanuel.com
3  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   50 California Street, 22nd Floor
4  San Francisco, California   94111-4788
   (415) 875-6600
5  (415) 875-6700 facsimile

6  *Attorneys for Non-Party Google Inc.*

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12  APPLE INC., a California Corporation,        Civil Case No. 5:12-cv-630-LHK-PSG

13                Plaintiff,                     **GOOGLE'S MOTION TO QUASH
                                                 APPLE'S SUBPOENAS FOR THE**
                                                 **PRODUCTION OF DOCUMENTS AND**
14        v.                                     **TESTIMONY**

15  SAMSUNG ELECTRONICS CO., LTD., a
    Korean corporation; SAMSUNG                  **HIGHLY CONFIDENTIAL—
16  ELECTRONICS AMERICA, INC., a New             ATTORNEYS' EYES ONLY**
    York  corporation; and SAMSUNG
17  TELECOMMUNICATIONS AMERICA,                  **Hearing:**
    LLC, a Delaware limited liability company,
                                                 Date:     TBD
18                Defendants.                    Time:     TBD
                                                 Place:    Courtroom 5, Fourth Floor
19                                               Judge:    Hon. Paul S. Grewal

20  ────────────────────────────────

21  SAMSUNG ELECTRONICS CO., LTD., a
    Korean corporation; SAMSUNG
22  ELECTRONICS AMERICA, INC., a New
    York  corporation; and SAMSUNG
23  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited liability company,
24
                  Counterclaim-Plaintiffs,
25        v.

26  APPLE INC., a California corporation,

27                Counterclaim-Defendant.

28  ────────────────────────────────

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 2, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, non-party Google Inc. ("Google") shall and hereby does move the Court for an order to quash the subpoena for documents and the subpoena for testimony served June 4, 2013 by Apple Inc. ("Apple") on Google. These subpoenas mark Apple's fifth and sixth subpoenas to Google in this action.

Concurrently with this motion to quash, Google has filed an administrative motion to shorten time for briefing and hearing. As set forth therein, Google has no objection to the Court deciding Google's motion to quash without a hearing once briefing is completed under the proposed shortened schedule.

This motion is based on this notice of motion and supporting memorandum of points and authorities; the Declaration of Kristin J. Madigan ("Madigan Decl."); and such other written or oral argument as may be presented at or before the time the Court deems this motion submitted.

**RELIEF REQUESTED**

Google seeks an order quashing the subpoena for documents ("Fifth Subpoena") and the subpoena for testimony ("Sixth Subpoena") that Apple served on Google on June 4, 2013. Fed. R. Civ. P. 26(b)(2)(C); 45(c)(3).

**STATEMENT OF ISSUES TO BE DECIDED**

Under Federal Rules of Civil Procedure 26(b)(2)(C) and 45(c)(3), non-party Google seeks an order quashing in their entirety Apple's subpoenas for documents and testimony served on Google on June 4, 2013, on the grounds that the subpoenas are unduly burdensome. The discovery sought by Apple's Fifth Subpoena and Sixth Subpoena seek irrelevant and cumulative material that could have been sought long ago, rather than at the eleventh hour. The Fifth and Sixth Subpoenas are not reasonably calculated to lead to the discovery of admissible evidence; seek information that could more easily and inexpensively be obtained from sources other than

1  non-party Google; call for the disclosure of information protected from disclosure by the attorney-

2  client privilege, the attorney work product doctrine, or other applicable privileges and immunities;

3  and seek discovery non-party Google already provided in response to Apple's first two subpoenas

4  served April 5, 2012 ("First and Second Subpoenas") or Apple's next two subpoenas served

5  October 1, 2012 ("Third and Fourth Subpoenas").

6

7  DATED:  June 18, 2013                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

8                                           By: /s Matthew S. Warren

9                                               Amy H. Candido
                                                amycandido@quinnemanuel.com
10                                              Matthew S. Warren
                                                matthewwarren@quinnemanuel.com
11                                              QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                50 California Street, 22nd Floor
12                                              San Francisco, California  91111-4788
                                                (415) 875-6600
13                                              (415) 875-6700 facsimile

14
                                                Attorneys for Non-Party Google Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE INC.'S MOTION TO QUASH APPLE INC.'S SUBPOENAS FOR DOCUMENTS AND TESTIMONY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

    A.    Apple Serves the First and Second Subpoenas in April 2012 And Google
    Satisfies Its Discovery Obligations .............................................................. 1

    B.    Apple Serves the Third and Fourth Subpoenas in October 2012 and Google
    Again Satisfies Its Discovery Obligations .................................................. 2

    C.    Despite Google's Productions in Response to the Existing Subpoenas and
    the Parties' Agreements, Apple Serves the Fifth and Sixth Subpoenas
    Which Include Over Sixty Discovery Requests ........................................... 4

    D.    Google's Efforts to Meet and Confer With Apple ....................................... 5

ARGUMENT .................................................................................................................. 5

I.    The Court Should Quash Apple's Last-Minute Subpoenas As Untimely ............................ 6

II.    Apple's Fifth and Sixth Subpoenas are Unduly Burdensome, Overbroad,
Duplicative, and Seek Irrelevant Materials ............................................................. 7

    A.    Apple's Requests Concerning Google's Confidential Patent Licenses and
    Related Communications are Not Tailored to Apple's Damages Case ................... 7

    B.    Apple's Requests Concerning Discussions And Agreements Between
    Google and Samsung Seek Information That Has No Relevance to Any of
    Apple's Claims or Defenses ......................................................................... 8

    C.    Apple's Requests For Communications Between Google And Samsung
    About Apple's Patents Beyond Those At Issue In This Action Are
    Irrelevant, Overly Burdensome and Cumulative .......................................... 9

    D.    Apple's Requests Concerning Consumer Demand and Google's Market
    Analysis Are Not Narrowly Tailored to the Issues in the Case ............................... 10

    E.    Apple's Requests Concerning Desirability of the Accused Features Are
    Unduly Burdensome and Cumulative of Discovery Already Provided ................. 12

    F.    Apple's Requests Concerning Accused Functionality and Alterations
    Thereto Are an Improper Attempt to Redo Discovery Google Already
    Provided .................................................................................................... 13

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page

## CASES

*Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*,
  649 F.2d 646 (9th Cir. 1980)...............................................................13

*Echostar Satellite LLC v. Freetech Inc.*,
  Case No. 07-6124, 2008 WL 4460236 (N.D. Cal. Sept. 29, 2008)..................13

███████████████████████████████████████ .................................9

*Gonzales v. Google, Inc.*,
  234 F.R.D. 674 (N.D. Cal. 2006) ..........................................................5

*Haber v. ASN 50th St., LLC*,
  272 F.R.D. 377 (S.D.N.Y. 2011)..........................................10, 12, 13

*Haworth, Inc. v. Herman Miller, Inc.*,
  998 F.2d 975 (Fed. Cir. 1993)..............................................................13

███████████████████████████████████████ .................................9

███████████████████████████████████████ .................................9

*Int'l Coal Grp., Inc. v. Tetra Fin. Grp., LLC*,
  Case No. 09-115, 2010 WL 2079675 (D. Utah May 24, 2010) ...............10, 12, 13

*Intermec Techs. Corp. v. Palm, Inc.*,
  Case No. 09-80098 (N.D. Cal. May 15, 2009).........................................6

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
  206 F.R.D. 525 (D. Del. 2002)..............................................................5

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003)...............................................................11

███████████████████████████████████████ .................................9

*Micro Motion Inc. v. Kane Steel Co., Inc.*,
  894 F.2d 1318 (Fed. Cir. 1990).............................................................5

*Moon v. SCP Pool Corp.*,
  232 F.R.D. 633 (C.D. Cal. 2005) ..........................................................5, 6

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)............................................................8, 11

*Robinson v. Stanley,*
   Case No. 06-5158, 2010 WL 1005736 (N.D. Ill. Mar. 17, 2012) ........................................ 10

*Rombeiro v. Unum Life Ins. Co. of Am.,*
   Case No. C 02-04018, 2011 WL 1152270 (N.D. Cal. Mar. 27, 2011) ............................... 13


**STATUTES**

Fed. R. Civ. P. 26(b)(2)(C)(i) .......................................................................................................... 10

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) ................................................................................................... 5

Fed. R. Civ. P. 45(c)(3)(A)(iv) ......................................................................................................... 5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3    Plaintiff and counter-claim Defendant Apple Inc. ("Apple") has already subpoenaed non-

4  party Google Inc. ("Google") four times in this action.  Now, at the close of fact discovery, Apple

5  served fifth and sixth subpoenas on Google seeking sixty-three new discovery requests, including

6  significant document production and extensive deposition testimony on multiple topics, all of

7  which must occur before the close of fact discovery on July 8.

8    The Court should quash Apple's fifth and sixth subpoenas.  These new requests, served at

9  the eleventh hour, have no connection to the technology actually at issue in this case.  They target

10  information unrelated to Apple's claims or defenses, including a wide array of patent licenses for

11  non-accused technologies; generalized analysis of consumer demand for smartphones, without any

12  connection to the accused technologies; and irrelevant communications regarding common interest

13  agreements, indemnity agreements, and Apple patents not asserted in this action.  These requests

14  would impose an undue burden on Google if served at *any* point in the case—but do so

15  particularly now, when they seek extensive document collection and review in advance of

16  numerous depositions, all in a matter of days before July 8.  Worse still, many of these new

17  discovery requests simply rehash topics Google *already fully addressed* in its response to Apple's

18  earlier four subpoenas.  Apple's fifth and sixth subpoenas would unduly burden Google, and the

19  Court should grant Google's motion to quash them in their entirety.

20

## BACKGROUND

21

22

**A.     Apple Serves the First and Second Subpoenas in April 2012
And Google Satisfies Its Discovery Obligations**

23    Apple served its first subpoena for documents ("First Subpoena") and subpoena for

24  testimony ("Second Subpoena") on Google on April 5, 2012, each including twelve requests for

25  production and twelve topics for deposition.  (Docket No. 135-4.)  Among many other requests,

26  the First Subpoena included the following:

27       •    DOCUMENT REQUEST NO. 5: *All documents that comprise, refer, or relate to
communications between you and Samsung relating to Apple*, including but not

28

-1-    Case No. 5:12-cv-630-LHK-PSG

1    limited to communications relating to Apple's products incorporating any version of the iOS operating system.

2
3    •    DOCUMENT REQUEST NO. 11:  All documents constituting, reflecting or otherwise relating to *any analysis, review, research, survey, consideration, or evaluation of the importance to consumers and consumer purchasing decisions*
4    of Slide to Unlock, Text Correction, Unified Search, and/or Special Text Detection on a phone or other mobile device.

5
6    •    DOCUMENT REQUEST NO. 12:  All documents constituting, reflecting, or otherwise relating to any analysis, review, research, survey, consideration or evaluation of the importance to consumers and consumer purchasing decisions of
7    the ability or capability to search the Internet on a phone or other mobile device.

8    (*Id.*, at 5, 7.)  On April 16, 2012, Google timely objected to Apple's document requests and

9    deposition topics.  (Docket No. 135-5.)  Following meet and confer discussions between Google

10   and Apple and this Court's partial grant of Apple's first motion to compel against Google (Docket

11   No. 135), all outstanding issues concerning the First and Second Subpoenas were resolved.

12   Google produced documents to Apple (Docket No. 418-5, Ex. 12 at 1) including highly

13   confidential source code (*id.*, Ex. 12 at 2) and offered witnesses for deposition in both California

14   and Hong Kong.  (Docket No. 145-3.)

15   **B.    Apple Serves the Third and Fourth Subpoenas in October 2012 and Google Again Satisfies Its Discovery Obligations**
16

17       On October 1, 2012, Apple issued two more subpoenas on Google, included an additional

18   thirty-eight requests for production ("Third Subpoena") and fifteen topics for deposition.  ("Fourth

19   Subpoena," Docket No. 418-5, Ex. 1.)  On October 15, 2012, Google timely objected to the Third

20   Subpoena and the Fourth Subpoena (*Id.*, Ex. 2 at 14-19, 26, 28), but again offered witnesses for

21   deposition and agreed to produce voluminous documents including source code, documents

22   showing the design and development of the accused functionality, and all other non-privileged

23   documents relating to the accused functionality located in its search.  (Docket No. 418-5, Ex. 2 at

24   15-16, 19; Ex. 12 at 1-3; Docket No. 445-1, Exs. A-B.)  In addition, Google offered eight

25   witnesses for deposition, including witnesses in California, Texas, Hong Kong, and the U.K.

26   (Madigan Decl. Exs. 1-3.)  During this production effort, Google repeatedly sought to satisfy

27   Apple's seemingly-endless demand for additional discovery.  Since October 1, 2012, Apple and

28   Google exchanged more than thirty-eight letters regarding Apple's existing subpoenas, and held

1   two in-person lead trial counsel meet and confer sessions to discuss the scope of non-party

2   Google's subpoena responses, one of which lasted more than eight hours.  Google continued to

3   work with Apple to resolve any issues relating to Apple's Third and Fourth Subpoenas, offering to

4   produce documents that it did not believe were even relevant and offering to re-search (and

5   sometimes re-re-search) for certain types of documents when Apple asserted Google had not

6   located and produced enough.  All of Google's effort was for the sole and explicit purpose of

7   concluding the third-party subpoena process and avoiding meritless motion practice.  (*E.g.,*

8   Madigan Decl. Exs. 4-5 (Mar. 22 Letter from M.Warren to M.Valek; "If it will resolve disputes on

9   this issue, we will search again for documents regarding consumer demand for the functionality

10  accused in Apple's infringement contentions.").)

11          During the last two months, Google has gone even further.  Although Apple *never*

12  demonstrated a *single deficiency* in Google's production, following the Court's order that Google

13  disclose its search terms to Apple, Apple responded with a massive list of 100 *additional* search

14  terms it requested Google run—and run immediately, so as not to disrupt the close of discovery by

15  July 8.  Following a marathon, day-long meet and confer session with Apple, Google bent over

16  backwards and agreed to collect, review, and produce additional documents in response to 71

17  additional search terms and nine additional custodians hand-picked by Apple.  (Madigan Decl. Ex.

18  6-8.)  These search terms yielded a massive number of "hits," or documents that must be

19  reviewed.  Faced with repeated protestations of urgency from Apple's counsel, Google not only

20  agreed to undertake this massive additional review of documents, but did so on a highly expedited

21  basis, and in the order and manner Apple dictated.  (Madigan Decl. Ex. 7 at 5-7.)  After all that,

22  Apple's additional search terms proved largely fruitless, locating only 3,048 pages of responsive

23  documents compared to the 60,684 pages of documents Google found using its own search terms.

24  (*Compare* Docket No. 418-5, Exs. 1-2, Docket No. 445-1, Exs. A-B, and Madigan Decl. Ex. 9

25  *with* Madigan Decl. Exs. 10-12.)

26          Google was willing to agree to Apple's demands and expedited schedule because Apple's

27  counsel repeatedly represented to Google that their chief concern was to *finish* Google's document

28  production in time for depositions—not to drag out discovery.  For this reason, Google met every

1  single one of Apple's unilateral demands and deadlines.  (Madigan Decl. Exs. 9-12.)  At no time

2  during this extensive negotiation process, or in the eight months since Apple issued its Third and

3  Fourth Subpoenas, did Apple inform Google it would serve *further* subpoenas or seek additional

4  discovery *beyond* the scope of the parties' ongoing discussions.

5        **C.**    **Despite Google's Productions in Response to the Existing Subpoenas and the Parties' Agreements, Apple Serves the Fifth and Sixth Subpoenas Which**

6             **Include Over Sixty Discovery Requests**

7        On June 4, 2013, less than five weeks before the fact discovery cut-off, Apple served

8  Google with two new subpoenas—its fifth and sixth subpoenas to Google in this action—

9  including *thirty-two* requests for production ("Fifth Subpoena") and *thirty-one* topics for

10  deposition ("Sixth Subpoena").  (Madigan Decl. Ex. 13.)  Apple's new requests broadly seek

11  discovery on a variety of irrelevant issues, including patent licenses "relating to Android" in its

12  entirety—not limited to the technology in this case—as well as irrelevant common interest

13  agreements, indemnity agreements, communications with Samsung, and generalized consumer

14  demand information.  For example, Apple's new subpoenas include the following requests:

15       •    Request No. 1: *All Documents and Communications relating to actual or perceived competition among mobile device operating systems*, including but not

16          limited to Android, Apple's iOS, Microsoft's Windows Phone, and RIM's BlackBerry OS or BlackBerry 10.

17       •    Request No. 4: *All Documents and Communications* relating to *the likelihood*

18          *that a user of a mobile device operating system* (e.g., Android or iOS) will, if purchasing another mobile device, *purchase another mobile device that utilizes*

19          *the same operating system*.

20       •    Request No. 7: *All Documents and Communications* relating to *the importance*, or lack thereof, *of sales to first-time buyers of smartphones or tablets*.

21

22       •    Request No. 26: *All patent licenses* between you and any third party *relating to Android*.

23       •    Request No. 27: *All Documents and Communications* relating to *any patent license* between you and any third party *relating to Android*.

24

25       •    Request No. 31: *All Communications* between Google and Samsung relating to *any Apple patent* occurring prior to August 18, 2010.

26  (Madigan Decl. Ex. 13 at 11-16.)  Apple's requests are not narrowly tailored to seek information

27  that is relevant to any claim or defense in the case.

28

1    **D.    Google's Efforts to Meet and Confer With Apple**

2         On June 18, 2013, Google and Apple met and conferred regarding the Fifth and Sixth

3    Subpoenas.  During that conference, Google requested that Apple withdraw the subpoenas due to

4    their unduly burdensome nature, to avoid burdening the Court with additional and unnecessary

5    motion practice.  Apple refused.  (Madigan Decl. ¶ 15.)  Accordingly, Google timely objected to

6    Apple's new document requests and deposition topics, and filed the instant motion to quash.

7    (Madigan Decl. Ex. 14-15.)

8                                    **ARGUMENT**

9         Rule 26 and Rule 45 protect a non-party from any subpoena that subjects the non-party to

10   "undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683

11   (N.D. Cal. 2006) ("Undue burden to the non-party is evaluated under both Rule 26 and Rule 45.").

12   "[U]nder Rule 45(c)(3)(A), an evaluation of undue burden requires the court to weigh the burden

13   to the subpoenaed party against the value of the information to the serving party . . . and, in

14   particular, requires the court to consider such factors as relevance, the need of the party for the

15   documents, the breadth of the document request, the time period covered by it, the particularity

16   with which the documents are described and the burden imposed."  *Moon v. SCP Pool Corp.*, 232

17   F.R.D. 633, 637 (C.D. Cal. 2005) (internal quotations and citations omitted).  Similarly, Rule 26

18   requires that discovery methods be limited where "the discovery sought is unreasonably

19   cumulative or duplicative, or is obtainable from some source that is more convenient, less

20   burdensome, or less expensive," "the party seeking discovery has had ample opportunity to obtain

21   the information by discovery in the action," or "the burden or expense of the proposed discovery

22   outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  "[D]iscovery is not allowed

23   where no need is shown, or where compliance is unduly burdensome, or where the potential harm

24   caused by production outweighs the benefit."  *Mannington Mills, Inc. v. Armstrong World Indus.,*

25   *Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (citing *Micro Motion Inc. v. Kane Steel Co., Inc.*, 894

26   F.2d 1318, 1323 (Fed. Cir. 1990)).  "[N]on-parties should not be burdened in discovery to the

27   same extent as the litigants themselves."  *Intermec Techs. Corp. v. Palm, Inc.*, Case No. 09-80098,

28

1  slip op. at 4 (N.D. Cal. May 15, 2009). "Requests to non-parties should be narrowly drawn to
2  meet specific needs for information." *Id.*

3  **I.       The Court Should Quash Apple's Last-Minute Subpoenas As Untimely**

4          The Court can and should quash Apple's Fifth and Sixth Subpoenas based on two facts,
5  neither of which Apple can contest: first, there is nothing in either the Fifth or Sixth Subpoenas
6  that Apple could not have served months ago; and second, while the many requests in the Fifth
7  and Sixth Subpoenas would require extraordinary time and resources to complete on any schedule,
8  the burden posed by the more than sixty discovery requests in the Fifth and Sixth subpoenas is
9  compounded by requesting this discovery now, in the few days remaining before the July 8 fact
10 discovery cut-off.  The breadth of Apple's more than *sixty* new requests for documents and
11 depositions, and the burden they would impose, far outweigh whatever claimed need or
12 questionable relevance Apple may identify.  The Court should quash the Fifth Subpoena and Sixth
13 Subpoena in their entirety because their burden outweighs any potential relevance.  *See Moon*, 232
14 F.R.D. at 637.

15         Apple's Fifth and Sixth Subpoenas are particularly problematic for at least two reasons.
16 First, Apple did not serve the Fifth and Sixth Subpoenas—indeed, its counsel did not even
17 mention their existence—throughout Google's extensive negotiations with Apple regarding
18 Apple's request that Google voluntarily assume additional discovery burdens, despite its already-
19 complete production.  Google met and conferred in good faith, and in the spirit of cooperation and
20 transparency that this Court urged.  (*See supra* at D.)  While Google was negotiating a procedure
21 with the explicit intent of extinguishing its discovery obligations to Apple, however, Apple was
22 silently preparing the additional Fifth and Sixth Subpoenas.  Second, the Fifth and Sixth
23 Subpoenas request extensive new discovery efforts while Google's responses to Apple's Third and
24 Fourth Subpoenas are still underway as a result of Apple's continued demands.  As Apple knows,
25 Google has already offered 10 witnesses for deposition on various topics literally around the
26 world, including testimony to occur in California, Texas, Hong Kong, and the U.K. (Madigan
27 Decl. Exs. 1-3.)  By filing the Fifth and Sixth Subpoenas, Apple now unreasonably demands that
28 Google offer multiple witnesses for deposition on three continents in response to Apple's Third

1 and Fourth subpoenas *while simultaneously* fielding more than sixty *new* requests for *additional*

2 documents and *additional* depositions via Apple's Fifth and Sixth subpoenas.  Apple cannot

3 unnecessarily and unduly increase Google's burden by waiting until the eleventh hour to request

4 extensive discovery it could have sought months ago, and particularly not at the same time it seeks

5 extensive additional and unnecessary discovery regarding Apple's Third and Fourth subpoenas.

6 Given Apple's inexplicable failure to request this extensive discovery earlier in the case, including

7 as part of the Court-ordered meet and confer process, and given Apple's own recent request for

8 extensive additional search terms, custodians, and depositions, the Court should quash Apple's

9 Fifth and Sixth Subpoenas.

10 **II.     Apple's Fifth and Sixth Subpoenas are Unduly Burdensome, Overbroad, Duplicative,**

11 **         and Seek Irrelevant Materials**

12         In addition to the undue burdens imposed by the inexplicable timing of Apple's discovery

13 requests, Apple's requests are improper on their face.  They seek irrelevant information, are

14 duplicative of prior requests in the first four subpoenas and, despite this Court's contrary

15 instruction, seek information unrelated to the accused functionality.  Google addresses these

16 improper requests by category below.

17         **A.     Apple's Requests Concerning Google's Confidential Patent Licenses and**

18 **                Related Communications are Not Tailored to Apple's Damages Case**

19         Apple's subpoenas broadly seek unbounded categories of documents and testimony

20 concerning Google's patent licenses with any other parties if those licenses or those discussions

21 are arguably "relating to Android"—including licenses that have no conceivable relevance to the

22 technologies at issue in this lawsuit.  (Madigan Decl. Ex. 13 at 15-16 (Document Request Nos. 25-

23 28; Deposition Nos. 25-27).)  For example, Apple's subpoenas seek, "*[a]ll* patent licenses

24 between you and any third party relating to Android" (*id.* (Document Request and Deposition

25 Topic No. 26)); "*[a]ll* Documents and Communications relating to any patent license between you

26 and any third party relating to Android" (*id.* (Document Request No. 27)); "[r]oyalties paid by or

27 to you for patent licenses relating to Android" (*id.* (Document Request No. 28; Deposition Topic

28 No. 27)); and "[c]ommunications between you and *any* third party relating to *any* actual,

1 | considered, or potential suspension of, or modification to, *any* feature or functionality in Android

2 | relating to possible or actual infringement of third party patent rights" (*id.* (Document Request and

3 | Deposition Topic No. 25)).

4 |       The requests are facially overbroad and seek discovery that is irrelevant to any of Apple's

5 | claims or defenses in the case, including any claim for a reasonable royalty. Apple cannot

6 | credibly claim that *all* of Google's patent licenses covering any technology somehow arguably

7 | "relating to Android" are pertinent here: only *particular accused features relevant to Apple's*

8 | *asserted patents* are at issue in this case. As this Court previously instructed Apple: "[T]he court

9 | can think of no line it can draw, other than one focused on the accused features, that would respect

10 | the norms of proportionality applicable under Rule 26 even in a well-resourced, high-stakes case

11 | like this." (Docket. 163 at 7.) Apple has not accused each and every aspect of every release of

12 | Android, and so its pan-Android, pan-version request for license information is improper. As the

13 | Federal Circuit has emphasized, damages proof must be narrowly tailored to the technologies at

14 | issue. *See, e.g.*, *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("the trial

15 | court must carefully tie proof of damages to the claimed invention's footprint in the market place.

16 | . . . Any evidence unrelated to the claimed invention does not support compensation for

17 | infringement but punishes beyond the reach of the statute.") (internal citations and quotations

18 | omitted). Apple would unduly burden Google with demands for information unrelated to the

19 | accused functionality—precisely the type of license information that the Federal Circuit will not

20 | allow in a damages analysis—and these topics are therefore improper.

21 |     **B.**    **Apple's Requests Concerning Discussions And Agreements Between Google and Samsung Seek Information That Has No Relevance to Any of Apple's**
22 |                **Claims or Defenses**

23 |       Apple's Fifth and Sixth Subpoenas also seek a variety of information regarding privileged

24 | communications and irrelevant issues, including agreements between Google and Samsung which

25 | have nothing to do with any claim or defense in this lawsuit.

26 |

27 |

28 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      **C.**    **Apple's Requests For Communications Between Google And Samsung About**
    **Apple's Patents Beyond Those At Issue In This Action Are Irrelevant, Overly**

19      **Burdensome and Cumulative**

20          Apple seeks discovery of Google's communications with Samsung regarding Apple's non-

21  asserted patents, as opposed to communications involving the patents-in-suit, which Google

22  previously already agreed to provide.  Apple's Fifth and Sixth Subpoenas broadly seek discovery

23  of "[a]ll Communications between Google and Samsung relating to *any* Apple patent occurring

24  prior to August 18, 2010" (Madigan Decl. Ex. 13 at 16 (Document Request No. 31; Deposition

25  Topic No. 30)) (emphasis added).  These requests are facially overbroad, as they are not limited to

26  patents *actually at issue* in this case, and Apple has offered no explanation for their relevance.

27          To the extent Apple does seek discovery on patents actually at issue here, Apple's new

28  requests are duplicative of Google's prior responses to Apple's First and Third Subpoenas—

1  efforts Apple agreed were sufficient.  For example, with respect to the Third Subpoena, Google

2  already searched for *exactly these documents*—using search terms that Apple *itself requested*—by

3  agreeing to run Apple-selected search terms, such as **"patent /3 Apple"**, on Apple's hand-selected

4  list of custodians.  (Madigan Decl. Ex. 7 at 2.)  Likewise, Apple's First Subpoena already included

5  requests for "All documents that comprise, refer, or relate to communications between you and

6  Samsung relating to Apple."  (Docket No. 135-4.)  Apple's new subpoenas seek to *reopen*

7  discovery on these topics after they have already been *resolved*.  Google ran Apple's requested

8  search terms against all of Apple's requested custodians, capturing any non-privileged, responsive

9  documents Apple could legitimately want regarding the asserted patents or the accused

10  functionalities.  Apple knew this long before serving its Fifth and Sixth Subpoenas.  (Madigan

11  Decl. Ex 7-8.)  It would be unduly burdensome to make Google undertake this exercise for a third

12  time.  *Robinson v. Stanley*, Case No. 06-5158, 2010 WL 1005736, at *3 (N.D. Ill. Mar. 17, 2012)

13  (granting motion to quash where non-party had "already testified twice on the matter of the

14  investigation"; "a third time would not only be cumulative and duplicative, it would be an undue

15  burden for a non-party"); *see also Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y.

16  2011) (quashing a subpoena that was duplicative of already answered document requests); *Int'l*

17  *Coal Grp., Inc. v. Tetra Fin. Grp., LLC*, Case No. 09-115, 2010 WL 2079675, at *2 (D. Utah May

18  24, 2010) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)'s limitation on unreasonably cumulative and

19  duplicative discovery to quash a subpoena that sought documents "likely" already produced).

20  **D.  Apple's Requests Concerning Consumer Demand and Google's Market**
21  **Analysis Are Not Narrowly Tailored to the Issues in the Case**

22  Apple's subpoenas broadly seek *any* analysis of the smartphone market, including analysis

23  of demand for mobile devices or operating systems generally.  (Madigan Decl. Ex. 13 at 11-13

24  (Document Request and Deposition Topic Nos. 1-8)), including "actual or perceived competition

25  among mobile device operating systems," (*id.* (Document Request and Deposition Topic No. 1));

26  "the likelihood that a user of a mobile device operating system (*e.g.*, Android or iOS) will, if

27  purchasing another mobile device, purchase another mobile device that utilizes the same operating

28  system" (*id.* (Document Request and Deposition Topic No. 4)); "any attempt to quantify, or any

1   quantification of, the monetary value to Google from a user using an Android smartphone or

2   tablet" (*id.* (Document Request and Deposition Topic No. 6)); and "the importance, or lack

3   thereof, of sales to first-time buyers of smartphones or tablets" (*id.* (Document Request and

4   Deposition Topic No. 7)).  Google has already agreed to produce, and has searched for and

5   produced, documents concerning consumer demand for the functionalities accused of infringement

6   in this action.  (Madigan Decl. Ex. 4 at 4.)  Apple still wants more, however, now seeking *any*

7   documents about *any* kind of consumer demand for *anything*.

8       These overbroad requests are in no way tailored to the issues in this case.  As noted above,

9   the Federal Circuit prohibits damages theories based on generalized evidence unrelated to the

10  technologies actually claimed in particular patents.  *See, e.g., ResQNet.com*, 594 F.3d at 869 ("the

11  trial court must carefully tie proof of damages to the claimed invention's footprint in the market

12  place. . . .  Any evidence unrelated to the claimed invention does not support compensation for

13  infringement but punishes beyond the reach of the statute").  And the Federal Circuit specifically

14  instructed Apple – in this very case – not to use generalized market data unconnected to the

15  accused features of accused devices as the basis for any theories of relief.  *Apple Inc. v. Samsung*

16  *Electronics Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012) (evidence of customer demand for a

17  generalized feature in the marketplace, as opposed to evidence of demand for a specific feature in

18  a specific product, was not sufficient).  Apple's request for *any* and *all* analysis of the smartphone

19  and tablet market *generally*—tied in no way to the technologies actually claimed in Apple's

20  patents or any demand for those particular technologies—are facially overbroad and should be

21  quashed.  *See, e.g., Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003)

22  (affirming district court's motion to quash where district court concluded subpoena was "way too

23  broad" and where district court found "no attempt had been made to try to tailor the information

24  request to the immediate needs of the case," including requests for information on "advertising

25  markets" and "sales channels" generally).

26

27

28

1

2

**E.      Apple's Requests Concerning Desirability of the Accused Features Are Unduly Burdensome and Cumulative of Discovery Already Provided**

3      Apple's subpoenas seek generalized "pre-marketing surveys, focus group studies, or other

4   marketing analyses related to the ***desirability of features or capabilities*** of any of the Accused

5   Products." (Madigan Decl. Ex. 13 at 13 (Document Request and Deposition Topic No. 13)).

6   Again, as this Court already noted, to the extent these requests extend beyond the features of

7   Android actually accused by Apple of patent infringement in this case, they are overbroad.

8   (Docket. 163 at 7.)  To the extent these requests *do* concern the features actually accused of

9   infringement, Apple merely seeks to re-open discovery sought and provided *four times before*, in

10   response to each of Apple's first four subpoenas.  Apple's First and Second Subpoenas sought

11   Google's marketing analyses related to the four features accused at the preliminary injunction

12   phase: "any analysis, review, research, survey, consideration, or evaluation of the importance to

13   consumers and consumer purchasing decisions of Slide to Unlock, Text Correction, Unified

14   Search, and/or Special Text Detection on a phone or other mobile device." (Docket No. 135-4, at

15   7.)  Apple's Third and Fourth Subpoenas made nearly identical requests, merely modified to

16   include three additional accused features:  "any analysis, review, research, survey, consideration,

17   or evaluation of the importance to consumers and consumer purchasing decisions of Slide to

18   Unlock, Text Correction, Unified Search, Special Text Detection, Historical Lists, Alternative Call

19   Return, and/or Data Synchronization on a phone or other mobile device."  (Docket No. 418, Ex.

20   1.)  The parties resolved these requests through extensive meet and confer negotiations, and

21   Google searched for and produced documents.  Apple's attempt to reopen this topic now through

22   Fifth and Sixth Subpoenas is improper. *See, e.g.*, *Haber*, 272 F.R.D. at 382; *Int'l Coal Grp., Inc.*,

23   2010 WL 2079675, at *2.  And to the extent Apple seeks discovery beyond the scope of these

24   earlier topics, by seeking discovery on non-accused functionality, the requests are plainly

25   improper, as this Court has already ruled.  (Docket. 163 at 7.)

26      Finally, despite the immense burden on Google to search for and produce responsive

27   documents and prepare a witness to testify about such broad topics, Apple has made no showing

28   whatsoever that the generalized market analysis information it seeks is not available from another

1   less burdensome source. "While the requested information might assist in determining the extent

2   of damages incurred by plaintiffs," courts in this district have refused to allow broad and invasive

3   non-party discovery where "alternate, less intrusive avenues to obtain the information needed for

4   that purpose are available." *Echostar Satellite LLC v. Freetech Inc.*, Case No. 07-6124, 2008 WL

5   4460236, at *3 (N.D. Cal. Sept. 29, 2008) (granting motion for protective order); *see also Dart*

6   *Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) (discovery

7   restrictions may be even broader where target is non-party); *Haworth, Inc. v. Herman Miller, Inc.*,

8   998 F.2d 975, 978 (Fed. Cir. 1993) (affirming order requiring party to first attempt to obtain

9   documents from opposing party rather than non-party); *Rombeiro v. Unum Life Ins. Co. of Am.*,

10  Case No. C 02-04018, 2011 WL 1152270, at *4 (N.D. Cal. Mar. 27, 2011) ("While discovery is a

11  valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be

12  broader when a nonparty is the target of discovery.") (internal citations and quotations omitted).

13
14  **F.      Apple's Requests Concerning Accused Functionality and Alterations Thereto
             Are an Improper Attempt to Redo Discovery Google Already Provided**

15      Apple's subpoenas broadly seek information about Google's alterations of any accused

16  functionalities, which Apple defines as "Accused Feature Alterations" (Madigan Decl. Ex. 13 at

17  13-14 (Document Request and Deposition Topic Nos. 9-12 and 14-17).)  Additionally, Apple's

18  subpoenas seek information about certain versions of the accused "Quick Search Box" application

19  (*id.* (Document Request and Deposition Topic Nos. 18-23).)

20      As Apple well knows, however, Google already produced material on these topics in

21  response to Apple's First, Second, Third, and Fourth Subpoenas. (Docket No. 145-3; Docket No.

22  418-5, Ex. 12; Docket Nos. 445-1, Exs. A-B (Document Request and Deposition Topic Nos. 9-12

23  and 14-17).)  For this reason alone, these topics in the Fifth Subpoena and Sixth Subpoena should

24  be quashed. *See Haber*, 272 F.R.D. at 382; *Int'l Coal Grp., Inc.*, 2010 WL 2079675, at *2.

25  Apple's request to redo this discovery, including new depositions on topics already addressed in

26  earlier subpoenas, can only serve to harass and burden Google.  In response to Apple's first *four*

27  subpoenas, Google produced voluminous documents and source code regarding the accused

28  functionality and offered numerous witnesses to testify regarding the accused functionality,

1 || including documents, source code, and multiple depositions regarding the "Quick Search Box."

2 || (Docket No. 418-5, Exs. 1-2; Docket No. 445-1, Exs. A-B; Madigan Decl. Ex. 9.)  There is no

3 || good cause to revisit this discovery for a fifth and sixth time.

4 ||        Indeed, if Apple wanted additional discovery on these topics, it should have raised those

5 || issues during the parties' Court-ordered meet and confer sessions regarding the Third and Fourth

6 || Subpoenas.  (Docket No. 501.)  Pursuant to the Court's order regarding search terms and

7 || custodians, Apple knew *exactly* which search terms and *exactly* which custodians Google

8 || employed when responding to those Third and Fourth Subpoenas, including in its response to

9 || requests for information on the accused functionalities.  Indeed, Apple and Google negotiated in

10 || person for an entire day about additional search terms and custodians Google might utilize

11 || regarding these issues, and in that process Apple specifically requested nine additional document

12 || custodians (Madigan Decl. Ex. 7), and over seventy-one new search terms that Apple believed—

13 || incorrectly—were necessary to obtain complete discovery on the accused functionality.  (*Id.*)

14 || Even though Google's existing production was complete, and Apple had not shown any deficiency

15 || in that production, Google collected materials from Apple's requested custodians, including

16 || several custodians Apple believed were relevant to the "Quick Search Box" application (Madigan

17 || Decl. Ex. 7), and Google ran all seventy-one new search terms, including eight new Apple-

18 || requested search terms targeting specific aspects of the "Quick Search Box," against more than

19 || sixty custodians.  (*Id.*)  This extraordinary cooperation was not an invitation to serve additional

20 || subpoenas and reopen discovery on the accused functionality.  If Apple wanted to propose

21 || alternative search terms or custodians for these issues, it should have done so previously, during

22 || negotiations over Apple's *first four* subpoenas—including the Court-ordered meet and confer

23 || process regarding Apple's Third and Fourth Subpoenas.  Because Google already ran the search

24 || terms Apple itself requested, against the custodians Apple itself requested, Google's production

25 || regarding the accused functionality is complete, and these topics should be quashed.

26

27

28

**CONCLUSION**

For all the foregoing reasons, the Court should grant Google's motion to quash.

DATED:  June 18, 2013                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s Matthew S. Warren
    Amy H. Candido
    amycandido@quinnemanuel.com
    Matthew S. Warren
    matthewwarren@quinnemanuel.com
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
    50 California Street, 22nd Floor
    San Francisco, California  91111-4788
    (415) 875-6600
    (415) 875-6700 facsimile

    *Attorneys for Non-Party Google Inc.*