# EXHIBIT 19

Michael R. Heimbold
310 734 3225 direct
310 734 1931 fax
mhelmbold@steptoe.com

2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
310 734 3200 main
www.steptoe.com



October 16, 2012

**VIA ELECTRONIC MAIL**

| | |
|---|---|
| AppleMoFo@mofo.com | JOSHUA R. BENSON |
| WHAppleSamsungNDCalService@wilmerhale.com | jbenson@tcolaw.com |
| HAROLD J. MCELHINNY | JASON R. BARTLETT |
| HMcElhinny@mofo.com | JasonBartlett@mofo.com |
| ALISON M. TUCHER | WILLIAM F. LEE |
| atucher@mofo.com | william.lee@wilmerhale.com |
| MICHAEL A. JACOBS | DEOK KEUN MATTHEW AHN |
| MJacobs@mofo.com | dahn@mofo.com |
| STEPHEN E. TAYLOR | MARK D. SELWYN, ESQ. |
| staylor@tcolaw.com | mark.selwyn@wilmerhale.com |
| JENNIFER LEE TAYLOR | GRANT L. KIM |
| JLeeTaylor@mofo.com | gkim@mofo.com |
| STEPHEN MCG. BUNDY | RICHARD S.J. HUNG |
| sbundy@tcolaw.com | rhung@mofo.com |

Re:   *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-cv-00630-LHK (N.D. Cal.)

Dear Counsel:

Pursuant to Fed. R. Civ. P. 45(b)(1), please take notice that Samsung Electronics, Co., Ltd. ("Samsung") will serve Qualcomm Inc. ("Qualcomm") the attached Subpoena to Produce Documents, Information, or Objects, issued from the United States District Court for Southern District of California. These documents are being sought by Samsung in connection with litigation against Apple Inc., *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-cv-00630-LHK (N.D. Cal.).

Doc. # CC-273703 v.1

October 16, 2012  
Page 2



      Please also note that Samsung will serve Qualcomm with the separate attached Subpoena to Testify at a Deposition. This subpoena seeks deposition testimony in connection with the same litigation.

Very truly yours,

Michael R. Heimbold

MRH/lyc  
Encls.

cc:   John Caracappa *(Steptoe DC Office)*  
       Paul Lall *(Steptoe DC Office)*  
       Paul McAdams *(Steptoe CC Office)*

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | | |
|---|---|---|
| Apple Inc. | ) | |
| *Plaintiff* | ) | |
| | ) | Misc. |
| v. | ) Civil Action No. | 12-cv-00630-LHK |
| | ) | (ND California) |
| | ) | |
| Samsung Electronics Co., Ltd. et al. | ) | |
| *Defendant* | | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Qualcomm Inc.
5775 Morehouse Drive, San Diego, CA 92121

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Attachment A.

| Place: | Coast Law Group LLP<br>1140 South Coast Highway 101<br>Encinitas, CA. 92024 | Date and Time:<br>Oct. 27, 2012 at 12 p.m. |
|---|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: Oct.16, 2012

*CLERK OF COURT*                                OR             *[signature]*

_____                                 _____
*Signature of Clerk or Deputy Clerk*                            *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Samsung Electronics Co., Ltd. et al.                    , who issues or requests this subpoena, are:
Michael R. Heimbold, Steptoe & Johnson LLP, 2121 Avenue of the Stars, Suite 2800, Los Angeles, CA 90067; Email: mheimbold@steptoe.com; Telephone: 310-734-3200

Case 5:12-cv-00630-LHK   Document 633-20   Filed 06/25/13   Page 5 of 19

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    12-cv-00630-LHK

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## ATTACHMENT A

## DEFINITIONS

The following definitions shall apply where used in this Attachment:

1.  "Qualcomm," "You," and "Your" means Qualcomm Inc., including all of its present and former corporate locations; all of Qualcomm's predecessors, predecessors-in-interest, successors and assigns; all of Qualcomm's present and former affiliates, direct or indirect subsidiaries, parents, and trusts; all firms, corporations, and other entities acting under common control with Qualcomm Inc., in joint venture with Qualcomm Inc., or under licensing or partnership agreements with Qualcomm Inc.; all entities that own are owned by Qualcomm Inc. in whole or in part; and all divisions and operating units thereof. Qualcomm Inc. further includes all of Qualcomm Inc.'s present and former employees, agents, servants, representatives, directors, officers, accountants, consultants, attorneys, investigators, and all other currently or formerly acting or purporting to act on behalf of Qualcomm Inc. or subject to the direction and control of Qualcomm Inc.

2.  "Plaintiff" and "Apple" mean Apple Inc., and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Apple's control, or which controls Apple.

3.  "Defendant" and "Samsung" mean Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

4.  "This Lawsuit" shall mean the action entitled Apple, Inc. v. Samsung Electronics Co., Ltd., Case No. 12-cv-00630-LHK.

5.  "Software" shall include source code, hardware code, machine code, object code, assembly code, or code written in any programming language, and code that can be compiled or acted upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code. With regard to Software, "Related Documentation" further includes the architecture designs, logic diagrams, flow

diagrams, technical descriptions and flowcharts associated with, or used in the design of, such Software, and all descriptive or explanatory documentary documents relating to it.

6. "Executable Software" shall mean computer files containing encoded instructions capable of being executed by a processing unit (e.g., central processing unit, micro-controller), and any release notes describing the features or modifications of such files. The term shall include, without limitation, firmware, executable binary files, operating systems, applications, and programs. With regard to Executable Software, "Related Documentation" further includes the architecture designs, logic diagrams, flow diagrams, technical descriptions and flowcharts associated with, or used in the design of, such Executable Software, and all descriptive or explanatory documentary documents relating to it.

7. "Hardware" includes all constituent parts of a device including, but not limited to, assemblies, subassemblies, modules, individual integrated circuits, chipset, chipsets, software, hardware-based capabilities, and/or application specific integrated circuits.

8. "Patents-in-Suit" refers to U.S. Patent Nos. 7,756,087 and 7,551,596.

9. "087 Patent" refers to U.S. Patent No. 7,756,087.

10. "596 Patent" refers to U.S. Patent Nos. 7,551,596.

11. "Related Patent/Application" refers to any U.S. or foreign patent or patent application related to the Patent-in-Suit, including all parent, divisional, continuation, continuation-in-part, reissue, reexamination, extension, and foreign counterpart patents and applications thereof.

12. "Apple Accused Instrumentality" or "Apple Accused Instrumentalities" refers to the iPhone 4, iPhone 4S, iPhone 5, iPad 2 3G, and New iPad, and all versions and models thereof.

13. "Apple Manufacturer(s)" refers collectively and individually to the manufacturers of the Apple Accused Instrumentalities, including but not limited to Foxconn Electronics, Inc., Quanta Computer, Inc., Hon Hai Precision Industry Co. Ltd.,

Pegatron Corp., and all their predecessors, successors, parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on their behalf, or any other person or entity subject to their control or which controls them.

14. "Qualcomm Baseband Processor(s)" refers to any circuit, chip, or processor that is capable of or sold for use in implementing, supporting, processing, or providing wireless communications functions and that is or has been sold to or purchased by Apple or Apple Manufacturers or provided for use in, or otherwise known by You to be used in, an Apple Accused Instrumentality, and all versions or models thereof.  This includes, but is not limited to, the following: Qualcomm MDM6610; Qualcomm MDM9615M, and any other baseband or RF transceiver component sold to or purchased by Apple or Apple Manufacturers, or provided for use in or otherwise known by you to be used in an Apple Accused Instrumentality.

15. "Wireless Standard(s)" shall mean any wireless standard or wireless technical specification, including WCDMA, UMTS, HSUPA, HSDPA, HSPA+, 3GPP Release 5, 3GPP Release 6, and 3GPP Release 7.

16. "Communication(s)" shall mean, without limitation, any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including but not limited to electronic communications and electronic mail.

17. "Document(s)" shall have the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.  The term shall include within its meaning, by way of example and not limitation, any and all accounts, analyses, books, CDs, calendars, commercial paper, communications, correspondence, DVDs, e-mail, films, financial statements, floppy disks, hard disks, inter-office memoranda, invoices, ledgers, letters, licenses, logs, memoranda, microfilms, minutes, notes, notes of conversations, notes of meetings, notes of telephone calls, office communications,

photographs, printouts, recordings of conversations (whether written or electronic), reports, schedules, storage tape, task lists, telegrams, telephone bills, videotapes or other video recordings, and any differing versions of the foregoing whether denominated formal, informal or otherwise, as well as copies of the foregoing which differ from the original in any way, including handwritten notations or other written or printed matter. The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently in documentary form or not. A draft or non-identical copy of a Document is a separate Document within the meaning of this term.

    18.    "Identify" when used in reference to:

    (1)    An individual, means to state his or her full name, present or last known residential and business addresses, present or last known position and business affiliation, and if applicable, history of employment of that individual;

    (2)    A firm, partnership, corporation, proprietorship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation and to identify each agent that acted for it with respect to the matters relating to the request or answer;

    (3)    A Document, means to state the date, title, if any, subject matter, each author, each addressee or recipient if practicable, and otherwise a general description of the persons to whom the writing was distributed, the production number, and the type of document, i.e., publication, letter, memorandum, book, telegram, chart, etc., or some other means of identifying the document, and its present location and custodian;

    (4)    A Communication, means to state its date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it;

    (5)    A date, means to state the date and set forth the basis for Your contention that the date is responsive to the request; and

    (6) A product, service, or intellectual property, means to state all names and numbers related to the product, service, or intellectual property, and the owner, manufacturer, distributor, licensor, or dealer of the product, service, or intellectual property during the relevant time period and currently. For a product, provide all designations for the product, from the most specific to the most general, including any model numbers or designations, version numbers or designations, and internal numbers or designations.

  19. "Person(s)" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies. The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

  20. "Any," "all," "every," and "each" shall each mean and include the other as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

  21. The terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

  22. "Thing" refers to any physical specimen or tangible item in Your possession, custody or control, including research and development samples, prototypes, productions samples and the like.

  23. The terms "referring to," "relating to," "concerning" or "regarding" shall mean containing, describing, discussing, embodying, commenting upon, identifying, incorporating, summarizing, constituting, comprising or are otherwise pertinent to the matter or any aspect thereof.

  24. The use of the singular form of any word includes the plural and vice versa, as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

25. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

## INSTRUCTIONS

1. This subpoena seeks Documents in existence as of the date of service hereof and to the full extent permitted by the Federal Rules of Civil Procedure.

2. This subpoena shall apply to all Documents in your possession, custody or control as of the date of service hereof or coming into your possession, custody, or control before the date of the production.

3. In the event that any Document called for by these requests or subsequent requests has been destroyed or discarded, that Document is to be identified by stating: (i) the author(s), addressee(s) and any indicated or blind copyee(s); (ii) the Document's date, number of pages and attachments or appendices; (iii) the Document's subject matter; (iv) the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (v) the persons who were authorized to carry out such destruction or discard; and (vi) whether any copies of the Document presently exist and, if so, the name of the custodian of each copy.

4. Should you seek to withhold any Document based on some limitation of discovery (including privilege), you must supply a list of the Documents for which limitation of discovery is claimed, indicating:

   a. the identity(ies) of each Document's author(s), writer(s), sender(s), or initiator(s) and their positions;

   b. the identity(ies) of each Document's recipient(s), addressee(s), or party(ies) for whom it was intended and their positions;

   c. the date of creation or transmittal indicated on each Document, or estimate of that date, indicated as such, if no date appears on the Document;

   d. the general subject matter as described on each Document, or, if such description does not appear, then some other description sufficient to identify the Document; and

   e. the claimed ground(s) for limitation of discovery (e.g., "attorney-client privilege" or "work product privilege").

  5. If any of the Documents are considered "confidential business information" or "source code," as those terms are defined in the protective order attached as Exhibit 1 ("Protective Order"), such Documents should be produced subject to the terms and provisions of the Protective Order.

  6. If no Documents are responsive to a particular request, you are to state that no responsive Documents exist.

  7. If you propound any written answers to the requests for Documents to be Produced, repeat verbatim, immediately before each answer, the request being answered.

  8. Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

  9. File folders with tabs or labels identifying Documents called for by these requests must be produced intact with such Documents.

  10. Documents attached to each other must not be separated.

## DOCUMENTS TO BE PRODUCED

  1. Documents sufficient to Identify—including the internal and external part name and number, model name or number, manufacturer, source, supplier and any version number—each Qualcomm Baseband Processor sold to or purchased by Apple or Apple Manufacturers, or provided for use in or otherwise known by you to be used in an Apple Accused Instrumentality.

  2. For each Qualcomm Baseband Processor, Documents sufficient to describe the structure, function, and operation of the Qualcomm Baseband Processor, including all specification sheets, datasheets, schematics, technical drawings, pinouts, compliance and testing documentation, manuals, or related technical documentation associated with each Qualcomm Baseband Processor.

3. For each Qualcomm Baseband Processor, Documents sufficient to describe the design, development, manufacture, certification, and testing of the Qualcomm Baseband Processor, including documentation created during the conception, design, development, research, testing, simulation, reduction to practice, fabrication, manufacturing, packaging, certification, and analysis of each Qualcomm Baseband Processor.

4. For each Qualcomm Baseband Processor, Documents sufficient to describe the parties involved in the design, development, manufacture, certification, and testing of the Qualcomm Baseband Processor, including any of Qualcomm's subsidiaries, Apple or Apple Manufacturers.

5. For each Qualcomm Baseband Processor, Documents sufficient to identify the origin and ownership of the design, schematics, technical drawings, specifications and/or working drawings used for its manufacture.

6. For each Qualcomm Baseband Processor, all Documents and things relating to any communications with Apple or Apple Manufacturers concerning its design, manufacture, testing, schematics, technical drawings, specifications and/or working drawings.

7. For each Qualcomm Baseband Processor, all Documents concerning any certifications of compliance with or support for any wireless standard or technical specification including the Wireless Standards, and any testing with respect to wireless standards or technical specifications compliance including the Wireless Standards.

8. For each Qualcomm Baseband Processor, the Software associated, tested, sold, distributed, packaged, or integrated with each Qualcomm Baseband Processor along with any Related Documentation.

9. For each Qualcomm Baseband Processor, the Executable Software associated, tested, sold, distributed, packaged, or integrated with each Qualcomm Baseband Processor along with any Related Documentation.

ATTACHMENT "A"

10. For each Qualcomm Baseband Processor, hardware description languages (HDL) code, register programming manuals, build instructions associated with the Software and/or Executable Software used to operate or enable each Qualcomm Baseband Processor.

11. For each Qualcomm Baseband Processor, Documents or materials regarding the firmware architecture for the Qualcomm Baseband Processor and/or Executable Software.

12. For each Qualcomm Baseband Processor, training materials used to teach new employees about the firmware architecture for the Qualcomm Baseband Processor and/or Executable Software.

13. All Documents provided by Qualcomm to Apple or Apple Manufacturers regarding the structure, operation, function, or testing of the Qualcomm Baseband Processors, including documents provided in order to assist Apple or Apple Manufacturers in integrating the Qualcomm Baseband Processors into any Apple Accused Instrumentality.

14. All Documents, Communications, Software, Executable Software, HDL code, and things relating to performing non-scheduled transmissions in the Qualcomm Baseband Processors.

15. All Documents, Communications, Software, Executable Software, HDL code, and things relating to transmitting control information for uplink packet data in the Qualcomm Baseband Processors.

16. All Documents, Communications, and things related to the Qualcomm Baseband Processors' compliance with 3GPP Technical Specification 25.331.

17. All Documents, Communications, and things related to the Qualcomm Baseband Processors' compliance with 3GPP Technical Specification 25.321.

18. All Communications with or from Apple or Apple Manufacturers regarding the use or testing of Qualcomm Baseband Processors in any Apple Accused Instrumentality.

19. All Communications with or from Apple regarding this Lawsuit, the Apple Accused Instrumentalities, or the Qualcomm Baseband Processors.

20. All Communications with or from Apple regarding the Patents-in-Suit.

21. All licenses or agreements between Apple and Qualcomm concerning or related to the Apple Accused Instrumentalities or the Qualcomm Baseband Processors.

22. All Documents and things including but not limited to work orders, statements of work or requests for bid, that describe or relate to the actual or intended use of the Qualcomm Baseband Processor(s) sold to Apple or an Apple Manufacturer.

23. Documents sufficient to identify the Qualcomm subsidiary or subsidiaries that sell(s) the Qualcomm Baseband Processor to Apple or Apple Manufacturer(s) (e.g. the specific entity that sells the Qualcomm MDM6610 and the MDM9615M), including the country or countries in which the sale(s) take place.

24. Documents sufficient to identify whether Apple and/or Apple Manufacturer(s) purchase the Qualcomm Baseband Processors from Qualcomm (including Qualcomm's subsidiary or subsidiaries) (e.g. the specific entity that purchases the Qualcomm MDM6610 and the MDM9615M), including the country or countries in which the sale(s) take place.

25. For each Qualcomm Baseband Processor, Documents and things sufficient to identify the chain of possession, custody or commerce, including each entity involved, concerning the provision of Qualcomm Baseband Processors to Apple or Apple Manufacturers.

26. For each Qualcomm Baseband Processor, Documents and things sufficient to describe the involvement or activity of each entity (including any Qualcomm subsidiaries) in the chain of possession, custody or commerce, concerning the provision of Qualcomm Baseband Processors to Apple or Apple Manufacturers, including the geographic location of each such activity or involvement.

27. For each Qualcomm Baseband Processor, Documents and things sufficient to identify and describe any contracts, licenses, agreements, or informal understandings

ATTACHMENT "A"

between Qualcomm (including any Qualcomm subsidiaries) and another, including, without limitation, Apple, concerning the design, manufacture, testing, assembly, sale and chain of distribution of Qualcomm Baseband Processors to Apple or Apple Manufacturers.

28. For each Qualcomm Baseband Processor, all sales invoices to Apple or Apple Manufacturers.

29. Documents sufficient to identify all persons knowledgeable about the design, development, and/or operation of any Qualcomm Baseband Processors sold to or purchased by Apple or Apple Manufacturers.

30. Documents sufficient to Identify—including the internal and external part name and number, model name or number, manufacturer, source, supplier and any version number—all chips Qualcomm manufactured for or have been sold to, provided to, purchased by, or used by Samsung.

31. For each chip identified in response to Request No. 30 above, Documents sufficient to describe the structure, function, and operation of the chips, including all specification sheets, datasheets, schematics, technical drawings, pinouts, compliance and testing documentation, manuals, or related technical documentation associated with each chip.

32. For each chip identified in response to Request No. 30 above, Documents sufficient to describe the design, development, manufacture, certification, and testing of each chip, including documentation created during the conception, design, development, research, testing, simulation, reduction to practice, fabrication, manufacturing, packaging, certification, and analysis of each chip.

33. For each chip identified in response to Request No. 30 above, all Documents concerning any certifications of compliance with or support for any wireless standard or technical specification including the Wireless Standards, and any testing with respect to wireless standards or technical specifications compliance including the Wireless Standards.

34. For each chip identified in response to Request No. 30 above, the Software associated, tested, sold, distributed, packaged, or integrated with each chip along with any Related Documentation.

35. For each chip identified in response to Request No. 30 above, the Executable Software associated, tested, sold, distributed, packaged, or integrated with each chip along with any Related Documentation.

36. For each chip identified in response to Request No. 30 above, hardware description languages (HDL) code, register programming manuals, build instructions associated with the Software and/or Executable Software used to operate or enable each chip.

37. For each chip identified in response to Request No. 30 above, Documents or materials regarding the firmware architecture for the chip and/or Executable Software.

38. All Documents, Communications, Software, Executable Software, HDL code, and things relating to performing non-scheduled transmissions in each chip identified in response to Request No. 30.

39. All Documents, Communications, Software, Executable Software, HDL code, and things relating to transmitting control information for uplink packet data in each chip identified in response to Request No. 30.

40. For each chip identified in response to Request No. 30, Documents, Communications, and things related to the chips' compliance with 3GPP Technical Specification 25.331.

41. For each chip identified in response to Request No. 30, Documents, Communications, and things related to the chips' compliance with 3GPP Technical Specification 25.321.

42. For each of the Documents produced in response to this subpoena, all Documents necessary to understand, determine, and interpret the meaning of all codes, acronyms, symbols, abbreviations, or other methods of identification necessary to completely and fully interpret those Documents.

43. All existing English translations of each foreign language Document produced in response to this subpoena.

# EXHIBIT 1
## [PROTECTIVE ORDER]