# EXHIBIT 20

# UNITED STATES DISTRICT COURT
for the

Southern District of California

| | | |
|---|---|---|
| Apple Inc. | ) | |
| *Plaintiff* | ) | |
| | ) | Civil Action No.   Misc. |
| v. | ) | 12-cv-00630-LHK |
| | ) | (ND California) |
| | ) | |
| Samsung Electronics Co., Ltd. et al. | ) | |
| *Defendant* | | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Qualcomm Inc.
5775 Morehouse Drive, San Diego, CA 92121

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: See Attachment A.

| Place: | Veritext | Date and Time: |
|---|---|---|
| | 402 West Broadway, Suite 700 | Nov. 2, 2012 at 9 a.m. |
| | San Diego, CA 92101 | |

The deposition will be recorded by this method: The deposition will be videotaped and recorded stenographically.

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: Oct. 16, 2012

*CLERK OF COURT*

OR  _____

_____        _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Samsung Electronics Co., Ltd. et al. , who issues or requests this subpoena, are:

Michael R. Heimbold, Steptoe & Johnson LLP, 2121 Avenue of the Stars, Suite 2800, Los Angeles, CA 90067; Email: mheimbold@steptoe.com; Telephone: 310-734-3200

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.     12-cv-00630-LHK

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# ATTACHMENT A
# DEFINITIONS

The following definitions shall apply where used in this Attachment:

1. "Qualcomm," "You," and "Your" means Qualcomm Inc., including all of its present and former corporate locations; all of Qualcomm's predecessors, predecessors-in-interest, successors, assigns, affiliates, direct or indirect subsidiaries, parents, and trusts; all firms, corporations, and other entities acting under common control with Qualcomm Inc., in joint venture with Qualcomm Inc., or under licensing or partnership agreements with Qualcomm Inc.; all entities that own are owned by Qualcomm Inc. in whole or in part; and all divisions and operating units thereof. Qualcomm Inc. further includes all of Qualcomm Inc.'s present and former employees, agents, servants, representatives, directors, officers, accountants, consultants, attorneys, investigators, and all other currently or formerly acting or purporting to act on behalf of Qualcomm Inc. or subject to the direction and control of Qualcomm Inc.

2. "Plaintiff" and "Apple" mean Apple Inc., and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Apple's control, or which controls Apple.

3. "Defendant" and "Samsung" mean Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

4. "This Lawsuit" shall mean the action entitled Apple, Inc. v. Samsung Electronics Co., Ltd., Case No. 12-cv-00630-LHK.

5. "Software" shall include source code, hardware code, machine code, object code, assembly code, or code written in any programming language, and code that can be compiled or acted upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code. With regard to Software, "Related Documentation" further includes the architecture designs, logic diagrams, flow

diagrams, technical descriptions and flowcharts associated with, or used in the design of, such Software, and all descriptive or explanatory documentary documents relating to it.

6. "Executable Software" shall mean computer files containing encoded instructions capable of being executed by a processing unit (e.g., central processing unit, micro-controller), and any release notes describing the features or modifications of such files. The term shall include, without limitation, firmware, executable binary files, operating systems, applications, and programs. With regard to Executable Software, "Related Documentation" further includes the architecture designs, logic diagrams, flow diagrams, technical descriptions and flowcharts associated with, or used in the design of, such Executable Software, and all descriptive or explanatory documentary documents relating to it.

7. "Hardware" includes all constituent parts of a device including, but not limited to, assemblies, subassemblies, modules, individual integrated circuits, chipset, chipsets, software, hardware-based capabilities, and/or application specific integrated circuits.

8. "Patents-in-Suit" refers to U.S. Patent Nos. 7,756,087 and 7,551,596.

9. "087 Patent" refers to U.S. Patent No. 7,756,087.

10. "596 Patent" refers to U.S. Patent Nos. 7,551,596.

11. "Related Patent/Application" refers to any U.S. or foreign patent or patent application related to the Patent-in-Suit, including all parent, divisional, continuation, continuation-in-part, reissue, reexamination, extension, and foreign counterpart patents and applications thereof.

12. "Apple Accused Instrumentality" or "Apple Accused Instrumentalities" refers to the iPhone 4, iPhone 4S, iPhone 5, iPad 2 3G, and New iPad and all versions and models thereof.

13. "Apple Manufacturer(s)" refers collectively and individually to the manufacturers of the Apple Accused Instrumentalities, including but not limited to Foxconn Electronics, Inc., Quanta Computer, Inc., Hon Hai Precision Industry Co. Ltd.,

1  Pegatron Corp., and all their predecessors, successors, parents, divisions, subsidiaries,
2  and affiliates thereof, and all officers, agents, employees, counsel and other persons
3  acting on their behalf, or any other person or entity subject to their control or which
4  controls them.

5      14. "Qualcomm Baseband Processor(s)" refers to any circuit, chip, or processor
6  that is capable of or sold for use in implementing, supporting, processing, or providing
7  wireless communications functions and that is or has been sold to or purchased by Apple
8  or Apple Manufacturers or provided for use in, or otherwise known by You to be used in,
9  an Apple Accused Instrumentality, and all versions or models thereof. This includes, but
10 is not limited to, the following: Qualcomm MDM6610; Qualcomm MDM9615M, and
11 any other baseband or RF transceiver component sold to or purchased by Apple or Apple
12 Manufacturers, or provided for use in or otherwise known by you to be used in an Apple
13 Accused Instrumentality.

14     15. "Wireless Standard(s)" shall mean any wireless standard or wireless
15 technical specification, including WCDMA, UMTS, HSUPA, HSDPA, HSPA+, 3GPP
16 Release 5, 3GPP Release 6, and 3GPP Release 7.

17     16. "Communication(s)" shall mean, without limitation, any transmittal,
18 conveyance or exchange of a word, statement, fact, thing, idea, Document, instruction,
19 information, demand, question or other information by any medium, whether by written,
20 oral or other means, including but not limited to electronic communications and
21 electronic mail.

22     17. "Document(s)" shall have the broadest meaning ascribed to it by Federal
23 Rule of Civil Procedure 34 and Federal Rule of Evidence 1001. The term shall include
24 within its meaning, by way of example and not limitation, any and all accounts, analyses,
25 books, CDs, calendars, commercial paper, communications, correspondence, DVDs, e-
26 mail, films, financial statements, floppy disks, hard disks, inter-office memoranda,
27 invoices, ledgers, letters, licenses, logs, memoranda, microfilms, minutes, notes, notes of
28 conversations, notes of meetings, notes of telephone calls, office communications,

| | |
|---|---|
| 1 | photographs, printouts, recordings of conversations (whether written or electronic), |
| 2 | reports, schedules, storage tape, task lists, telegrams, telephone bills, videotapes or other |
| 3 | video recordings, and any differing versions of the foregoing whether denominated |
| 4 | formal, informal or otherwise, as well as copies of the foregoing which differ from the |
| 5 | original in any way, including handwritten notations or other written or printed matter. |
| 6 | The foregoing specifically includes information stored electronically, whether in a |
| 7 | computer database or otherwise, regardless of whether such documents are presently in |
| 8 | documentary form or not. A draft or non-identical copy of a Document is a separate |
| 9 | Document within the meaning of this term. |
| 10 |     18.    "Identify" when used in reference to: |
| 11 |           (1)    An individual, means to state his or her full name, present or last |
| 12 | known residential and business addresses, present or last known position and business |
| 13 | affiliation, and if applicable, history of employment of that individual; |
| 14 |           (2)    A firm, partnership, corporation, proprietorship, joint venture, |
| 15 | association, or other organization or entity, means to state its full name, present or last |
| 16 | known address and place of incorporation or formation and to identify each agent that |
| 17 | acted for it with respect to the matters relating to the request or answer; |
| 18 |           (3)    A Document, means to state the date, title, if any, subject matter, |
| 19 | each author, each addressee or recipient if practicable, and otherwise a general |
| 20 | description of the persons to whom the writing was distributed, the production number, |
| 21 | and the type of document, i.e., publication, letter, memorandum, book, telegram, chart, |
| 22 | etc., or some other means of identifying the document, and its present location and |
| 23 | custodian; |
| 24 |           (4)    A Communication, means to state its date and place, the person(s) |
| 25 | who participated in it or who were present during any part of it or who have knowledge |
| 26 | about it; |
| 27 |           (5)    A date, means to state the date and set forth the basis for Your |
| 28 | contention that the date is responsive to the request; and |

(6) A product, service, or intellectual property, means to state all names and numbers related to the product, service, or intellectual property, and the owner, manufacturer, distributor, licensor, or dealer of the product, service, or intellectual property during the relevant time period and currently. For a product, provide all designations for the product, from the most specific to the most general, including any model numbers or designations, version numbers or designations, and internal numbers or designations.

19. "Person(s)" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies. The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

20. "Any," "all," "every," and "each" shall each mean and include the other as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

21. The terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

22. "Thing" refers to any physical specimen or tangible item in Your possession, custody or control, including research and development samples, prototypes, productions samples and the like.

23. The terms "referring to," "relating to," "concerning" or "regarding" shall mean containing, describing, discussing, embodying, commenting upon, identifying, incorporating, summarizing, constituting, comprising or are otherwise pertinent to the matter or any aspect thereof.

24. The use of the singular form of any word includes the plural and vice versa, as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

25.   The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

**DEPOSITION TOPICS**

1.   The operation, structure, function, and implementation of Wireless Standards in the Qualcomm Baseband Processors, including the source, operation, function, and implementation of Software and Executable Software therein.

2.   The function and operation of Software and Executable Software associated, tested, sold, distributed, packaged, or integrated with the Qualcomm Baseband Processors.

3.   The design, development, certification, and testing of the Qualcomm Baseband Processors.

4.   The origin and ownership of the design, schematics, specifications, technical drawings and/or working drawings used to manufacture the Qualcomm Baseband Processors.

5.   The specification of and compliance with Wireless Standards related to the Qualcomm Baseband Processors.

6.   The process by which Software or Executable Software for the Qualcomm Baseband Processors is designed, written, tested, created, licensed, implemented, and incorporated for storage or execution on the Qualcomm Baseband Processors.

7.   The identity, location, organization, revision history, and custodians of all Documents concerning Topics 1-6, and the identity of the persons most knowledgeable about Topics 1-6.

8.   The organization and personnel at Qualcomm responsible for the design, development, fabrication, and deployment of the Qualcomm Baseband Processors.

9.   The involvement of Apple or an Apple Manufacturer in the development of the design, schematics, specifications, technical drawings and/or working drawings used to manufacture the Qualcomm Baseband Processors.

10. Apple's or Apple Manufacturer's access to or possession, custody, or control of any documentation or Software or Executable Software relating to the Qualcomm Baseband Processors.

11. The identity, nature, extent, and intent of any and all agreements and licenses between Apple or Apple Manufacturers and Qualcomm concerning the Apple Accused Instrumentalities or Qualcomm Baseband Processors.

12. Qualcomm's relationship with Apple or Apple Manufacturers with respect to the Apple Accused Instrumentalities or Qualcomm Baseband Processors.

13. The design, manufacture, testing, assembly, sale, and chain of distribution of Qualcomm Baseband Processors that are ultimately incorporated in Apple Accused Instrumentalities, including identification of all entities involved (including all intermediaries), a description of the involvement of each entity (including any Qualcomm subsidiaries) in the activities that are the subject of this topic, including the geographic location of each such activity, and the identification and description of any contracts, licenses, agreements, or informal understandings between Qualcomm and another, including, without limitation, Apple, concerning these activities.

14. The ability of Qualcomm Baseband Processors to perform non-scheduled transmissions.

15. The ability of Qualcomm Baseband Processors to transmit control information for uplink packet data.

16. The ability of Qualcomm Baseband Processors to comply with 3GPP Technical Specification 25.331.

17. The ability of Qualcomm Baseband Processors to comply with 3GPP Technical Specification 25.321.

18. Communications between Apple or Apple Manufacturers and Qualcomm regarding the Apple Accused Instrumentalities or the Qualcomm Baseband Processors.

19. Communications between Apple or Apple Manufacturers and Qualcomm regarding the Patents-in-Suit and Apple's infringement thereof, or this Lawsuit.

20. The design, development, certification, and testing of each Qualcomm Baseband Processor, including the parties involved.

21. The origin and ownership of the design, schematics, technical drawings, specifications and/or working drawings used to manufacture the Qualcomm Baseband Processors.

22. The identification of the Qualcomm subsidiary or subsidiaries which sell(s) the Qualcomm Baseband Processors to Apple or Apple Manufacturer(s) (e.g. the specific entity that sells the Qualcomm MDM6610 and the MDM9615M), including the country or countries in which the sales take place.

23. Identification of whether Apple or Apple Manufacturer(s) purchase(s) the Qualcomm Baseband Processors from Qualcomm (e.g. the specific entity that purchases the Qualcomm MDM6610 and the MDM9615M), including the country or countries in which the sales take place.

24. Identification of all chips Qualcomm manufactured for or have been sold to, provided to, purchased by, or used by Samsung.

25. The operation, structure, function, and implementation of Wireless Standards, including the source, operation, function, and implementation of Software and Executable Software therein, in the chips identified in response to Topic No. 24 above.

26. The function and operation of Software and Executable Software associated, tested, sold, distributed, packaged, or integrated with the chips identified in response to Topic No. 24 above.

27. The design, development, certification, and testing of the chips identified in response to Topic No. 24 above.

28. For each chip identified in response to Topic No. 24 above, the ability of the chip to perform non-scheduled transmissions.

29. For each chip identified in response to Topic No. 24 above, the ability of the chip to transmit control information for uplink packet data.

30. For each chip identified in response to Topic No. 24 above, the ability of the chip to comply with 3GPP Technical Specification 25.331.

31. For each chip identified in response to Topic No. 24 above, the ability of the chip to comply with 3GPP Technical Specification 25.321.

32. The names, locations, titles, and responsibilities of the persons most knowledgeable about each of the topics above.

33. The identity and location of all persons, documents, and things consulted, reviewed, communicated with or relied on in preparation for testifying about each of the topics above, including, on a topic-by-topic basis, an identification by production number or range of each document or thing associated with each topic and, for each person, his or her name, location, title, and responsibilities.

| | |
|---|---|
| 1 | **EXHIBIT 1** |
| 2 | **[PROTECTIVE ORDER]** |

ATTACHMENT "A"