1

2

3

4

5

6

7                             UNITED STATES DISTRICT COURT

8                           NORTHERN DISTRICT OF CALIFORNIA

9                                   SAN JOSE DIVISION

10

**United States District Court**
For the Northern District of California

11 | APPLE INC., a California corporation | Case No.: 12-CV-0630-LHK (PSG)

12 |                   Plaintiff, | **ORDER RE: SAMSUNG'S AND**
   |        v. | **APPLE'S MOTIONS FOR LEAVE TO**

13 |                               | **FILE AMENDED INFRINGEMENT**
   | SAMSUNG ELECTRONICS CO. LTD., a | **CONTENTIONS AND SAMSUNG'S**

14 | Korean business entity; SAMSUNG | **MOTIONS TO COMPEL**
   | ELECTRONICS AMERICA, INC., a New York

15 | corporation; SAMSUNG | **(Re: Docket Nos. 476, 496, 498, 525)**
   | TELECOMMUNICATIONS AMERICA, LLC,

16 | a Delaware limited liability company,

17 |                   Defendants.

18            Relying upon an analogy to property deeds, patent claims are often said to define the

19 "metes and bounds" of the patented invention.[1]  The metes and bounds of a patent suit, in turn, are

20 supposed to be set by the infringement and invalidity contentions mandated by our Patent Local

21 Rules.  These rules were designed to avoid the shifting of infringement and invalidity theories that

22 had come to be a feature in too many cases before their adoption.  And yet, as we make our way

23 through the second decade of these rules, it seems that parties continue to struggle to take positions

24 and stick with them.

25

26

27

28

---

[1] Or at least they are supposed to.  In real estate cases the undersigned has yet to spend hours upon
hours construing the meaning of a given compass bearing or "rods or poles."

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

To be fair, the rules themselves contemplate that even the well-intentioned need to change course every now and then.  Claims constructions may issue. New discovery may be uncovered. And yet it seems that contention amendments, and motions surrounding their propriety, have become the "new normal" in the curious world of patent litigation.

This case is no exception.

Plaintiff Apple, Inc. ("Apple") and Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung"), both move for leave to file amended infringement contentions.  Samsung also moves to compel Apple to produce various documents, presenting still other grievances that are now a regular part of the patent litigation landscape: access to discovery from other patent cases and supplementation of source code citations.  Because the underlying facts of this case are familiar to the parties and are widely available, the court dispenses with an explanation of that background here.  Instead, the court begins with a recitation of the applicable legal standards and then addresses the merits of each motion in turn.

## I.        LEGAL STANDARDS

### A.        Leave to Amend Infringement Contentions

The Patent Local Rules of this District provide for a "streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in its absence."[2] These rules and their various contention obligations "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed."[3] They

---

[2] *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06770 RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *Network Caching Tech., LLC v. Novell Inc.*, No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)).

[3] *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006); *see also Atmel Corp. v. Info. Storage Devices, Inc.*, C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998).

Case No: 12-0630 LHK (PSG)
ORDER

"provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."[4]

Amendment of contentions requires leave from the court upon a showing of "good cause."[5] Good cause requires requesting parties to show in part that they "acted with diligence promptly when new evidence is revealed."[6] If the court finds that the moving party has acted with diligence, it then must determine whether the non-moving party "would suffer prejudice if the motion to amend were granted."[7] Because "the focus of the inquiry is upon the moving party's reasons for seeking modification," "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," but if the moving party was not diligent, "the inquiry should end."[8] And so, "[o]nly if the moving party is able to show diligence may the court consider the prejudice to the non-moving party."[9] "Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include: (a) [a] claim construction by the Court different from that proposed by the party seeking amendment; (b) [r]ecent discovery of material, prior art despite earlier diligent search; [and] (c) [r]ecent

---

[4] *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp.2d 558, 560 (E.D. Tex. 2005); *cf. Network Caching Tech.*, Case No. C-01-2079-VRW, 2002 WL 32126128 at *5 (noting that the infringement contention requirement of Patent Local Rule 3-1 is designed to "facilitate discovery").

[5] *See* Patent L.R. 3-6.

[6] *O2 Micro Int'l Ltd.*, 467 F.3d at 1363.

[7] *Acer, Inc. v. Tech. Prop. Ltd.*, Case No. 08-cv-0877 JF (HRL), 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010).

[8] *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, Case No. C 01-4925 SBA, 2004 WL 5363616, at *4 (N.D. Cal. Mar. 2, 2004).

[9] *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 11-cv-1846-LHK (PSG), 2012 WL 1067548, at *2 (N.D. Cal. Mar. 27, 2012).

Case No: 12-0630 LHK (PSG)
ORDER

discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions."[10]

**B.    Motion to Compel**

Rule 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[11]

Fed. R. Civ. P. 26(b)(2) in turn provides that the court must limit the frequency or extent of discovery if it determines that: (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the burden or expense of the proposed discovery outweighs its likely benefit."  Upon a motion to compel pursuant to Fed. R. Civ. P. 37(a)(3), the moving party has the burden of demonstrating relevance.[12]

**II.        DISCUSSION**

**A.    Samsung's Motion for Leave to Amend Infringement Contentions**

Samsung wants to amend its infringement contentions for four patents at issue by adding doctrine of equivalents claims and supplementing its indirect infringement claims.  In support of its request, Samsung points to Judge Koh's claim construction order entered on April 11, 2013,[13]

---

[10] Patent L.R. 3-6.

[11] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

[12] *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

[13] *See* Docket No. 447.

Case No: 12-0630 LHK (PSG)
ORDER

recent discovery from Apple and third parties, and a 2012 Federal Circuit decision purportedly supporting its new indirect infringement theory.  Other than Samsung's request to add details to its existing contentions, Apple opposes the motion on the grounds that Samsung has not established good cause to amend the contentions.  Both parties previously have amended their infringement contentions twice.

### 1.    Addition of Doctrine of Equivalents Theories

The court first addresses Samsung's general request to add doctrine of equivalents ("DOE") theories for all of its asserted patents.  According to Samsung, although it would like to have added specific DOE theories earlier, Apple failed to provide sufficient noninfringement theories.  Absent adequate noninfringement theories, Samsung contends, it could not provide its DOE theories addressing the claims of noninfringement.  Apple objects that Samsung's obligation to disclose its DOE theories does not turn on Apple's disclosure of its noninfringement theories.  Instead, Apple argues, Samsung had an obligation under Patent L.R. 3-1 to disclose its DOE claims as soon as it had a good-faith basis to do so and so Samsung's late amendment is not excused for good cause.  Apple further argues that even if Samsung somehow had good cause to amend, the addition of DOE theories at this stage would be prejudicial given the approaching close of discovery.

Apple is right that DOE contentions are not dependent on the opposing party's noninfringement theories.  The Patent Local Rules provide a schedule for infringement contentions, production of documents supporting those contentions, a schedule for invalidity contentions and production of those supporting documents.[14]  The rules notably do not require disclosure of theories of noninfringement nor do they provide that a party's failure to disclose noninfringement theories justifies amendment to include DOE theories.[15]

___

[14] *See* Patent L.R. 3-1, 3-2, 3-3, 3-4.

[15] For that matter, the rules do not even provide that noninfringement theories justify amendment of infringement contentions at all.  *See* Patent L.R. 3-6.

Case No: 12-0630 LHK (PSG)
ORDER

The purpose of infringement contentions further undercuts Samsung's argument. Infringement contentions serve as substitutes for interrogatories, but they also act as forms of pleading that disclose the parties' theories of their case and thereby shape discovery and the issues to be determined at trial. Parties accordingly need not "prove up" their theories by providing evidence beyond the material they have at the time they make their contentions.[16] On the other hand, parties should proffer all of the theories of infringement that they in good faith believe they can assert.[17] As with other forms of pleadings, the infringement contentions should become more specific and fine-tuned as the case progresses, not more sprawling and encompassing.[18] Nothing in this process, however, suggests that infringement contentions are intended to be a running dialogue between the parties, with additions of theories as one side asserts that a particular argument is unsustainable. Samsung's argument of good cause on the grounds of Apple's purportedly deficient noninfringement theories therefore is unavailing.

But Samsung raises an issue that warrants further explanation, namely how and when parties should assert DOE theories in their contentions to provide notice to their opposition beyond merely preserving alternative theories with boilerplate language. Resolution of that question turns on the grounds for the patentee's good-faith basis that the accused product infringes. For example, to the extent a patentee has a good-faith basis to believe that the accused product includes an apparatus that meets every limitation of the patent and also a good-faith basis to believe that the structure performs the same function in the same way with the same result as the patented product

---

[16] *See DCG Sys. v. Checkpoint Tech., LLC*, Case No. 11-cv-03729-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).

[17] *See* Patent L.R. 3-1(e).

[18] *See O2 Micro Int'l Ltd.*, 467 F.3d at 1365-66 (noting that through discovery and diligent amendment of infringement contentions, the contentions serve "as a mechanism for shaping the conduct of discovery and trial preparation").

Case No: 12-0630 LHK (PSG)
ORDER

even if the apparatus is not the same, the patentee should assert literal infringement and DOE theories.

On the other hand, if a patentee has a good-faith basis to believe only that the accused product contains an apparatus that meets all of the claim limitations but the apparatus does not perform the same function in the same way with the same result, the patentee should not assert a DOE theory.  In that situation, the patentee's theory of infringement arises only from the structure and so it cannot maintain a DOE theory, which must satisfy the function-way-result test.[19]  And as a further corollary, if a patentee has a good-faith basis to believe that the accused product only meets the function-way-result test without a structure meeting each of the patent's limitations, the patentee should assert only DOE theories of infringement.

The purpose of infringement contentions is to alert the alleged infringer which of these theories the patentee believes its pre-filing investigation supports.  As previously noted, the Patent Local Rules recognize that because patentees must provide their theories early in the case, situations may arise that require adjustment of those contentions.[20]  But absent a change in circumstances (and the diligence of the party who needs to amend), a change in theory after the case has progressed is unjustified.

Here, Samsung should have provided its DOE theories in its contentions at the beginning of this case if it had a good-faith basis to assert them.  As the court explained above, deficiencies in Apple's noninfringement theories do not justify Samsung's delay in asserting all of the infringement theories it reasonably believed it could assert.  And Samsung has not explained why it has a good faith basis to assert DOE theories only now rather than when it first provided its contentions or during its previous two amendments.  According to Samsung, nothing has changed besides the case nearing the point of no return for altering infringement theories.

---

[19] *See Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950).

[20] *See* Patent L.R. 3-6.

Case No: 12-0630 LHK (PSG)
ORDER

The court finds the same flaws in Samsung's decision to assert at this time equivalence theories for all of the means-plus-function terms that have yet to be construed. Samsung argues that because Apple may later seek narrowly-defined structures for each of the terms – as it did for the '757 Patent and the '239 Patent – and Judge Koh may adopt those narrow structures, Samsung now has good cause to add DOE and Section 112(f) equivalents theories. But again, what has changed? Was the likelihood of Apple arguing for narrow structures for the means-plus-functions claim terms unforeseeable to Samsung earlier in this case? Or does Samsung now appreciate that it may not obtain the constructions it desires? Concern over the possibility of a loss at claim construction does not amount to good cause. If and when Samsung faces an adverse construction, it may seek leave to amend in light of that adverse construction, at which point the court can consider whether its proposed amendments arise from a material difference in the claim construction and the prejudice, if any, Apple may suffer as a result. Samsung's request is premature.

Other than lamenting Apple's disclosure of its noninfringement theories and its concerns about possible adverse claim construction, Samsung provides no other justification for its proposed DOE additions. Samsung's general request to add doctrine of equivalents theories on those grounds therefore is DENIED. Samsung makes specific arguments for the addition of DOE theories for particular claims in light of new discovery or claim construction or both. The court will consider each of those requests in its discussion below and so limits its denial here only to Samsung's general request to add DOE contentions based on nothing more than Apple's supposedly deficient noninfringement theories or based on concerns about narrow claim construction positions.

### 2.        Amendments based on Claim Construction Order

Samsung seeks to amend its infringement contentions for U.S. Patent Nos. 5,579,239 ("'239 Patent") and 7,577,757 ("'757 Patent") on the grounds that the April 11 claim construction

Case No: 12-0630 LHK (PSG)
ORDER

order differed from the constructions Samsung proffered for three terms.  To provide context for Samsung's request, the court first describes the constructions at issue and Samsung's positions for those terms.

a.      '757 Patent

For the '757 Patent, Judge Koh construed the term "zone specific storage and interface device" as "a storage and interface device that resides in an area, such as a room or similar location."[21]  Samsung proposed the construction "a storage and interface device associated with a particular viewing and/or listening zone," and Apple offered "a device fixed in a room, or similar bounded location, for multimedia playback."

In response to the '757 Patent construction, Samsung wants to add details about how each accused device "resides in an area," including "when they are within Apple stores, connected to a dock or other apparatus, or residing in a room generally."  Samsung also wants to amend its contentions to provide "additional evidentiary support" that Mac computers (which it included in its original contentions) and iPhone and iPod devices all satisfy Judge Koh's construction.

Apple objects to Samsung's proposed '757 Patent amendments because, according to Apple, Samsung could have asserted its theories under its proposed – and broader – construction. As Apple sees it, because the theories Samsung now seeks to add fell under the umbrella of its construction, Judge Koh's narrower construction does not provide sufficient good cause for the proposed amendments.

The court begins with a clarification of the standard for amending infringement contentions. It is true that Patent L.R. 3-6(a) lists a "claim construction by the Court different from that proposed by the party seeking amendment" as an illustration of a "good cause" for amendment, but Samsung appears to read that example as providing good cause any time the court's construction is

---

[21] Docket No. 447.

Case No: 12-0630 LHK (PSG)
ORDER

not verbatim to the requesting party's proposition, stating that because Judge Koh "construed the term 'zone specific storage device' in a manner that neither Samsung nor Apple proposed," the construction is "adverse" and thus amendments are appropriate.[22]

In urging a broad right to amend after construction, Samsung misses the logic of the rule. The decision by the court to adopt a particular construction gives rise to good cause not because the construction happens to be different but because that difference is material to a party's theory of infringement.  Because those theories are reflected in the contentions, amendment of the contentions to address the material difference in the claim construction is appropriate.  But to the extent that a theory of infringement falls within the party's proffered construction and also falls within the court's construction, the difference is not material and does not provide good cause to amend the contentions.[23]

In its second amended contention, Samsung identified several Mac computers and Apple mobile devices as "storage and interface devices that a user can use in a specific zone and are capable of storing or interfacing with information stored in a central storage and interface device."[24]  In the proposed amendments, Samsung tweaks its language, identifying the same devices but explaining that they are "storage and interface devices *that reside in a specific location* and are capable of storing or interfacing with information stored in a central storage and interface device."[25]  Samsung explains that "each of these devices may reside in a room or similar location, or be coupled to devices residing in a room or similar location, such as a dock, including docks

---

[22] *See* Docket No. 528.

[23] *See Genentech, Inc. v. Univ. of Penn.*, Case No. C 10-2037 LHK (PSG), 2011 WL 3204579, at *2 (N.D. Cal. July 27, 2011) (noting that a change in claim construction alone is insufficient grounds for amendment – the proposed amendment must be related to the construction).

[24] *See* Docket No. 305 Ex. 4.

[25] Docket No. 476 Ex. 8.

Case No: 12-0630 LHK (PSG)
ORDER

sold on Apple's website."[26]   It then adds an equivalency theory, asserting that to the extent the "accused devices are not 'zone specific storage and interface devices' because they do not reside in a room or similar location, or are otherwise mobile or portable devices, this limitation is still met under the doctrine of equivalents because the use of a mobile device instead of a device residing in a room or similar location is an unsubstantial difference."[27]

At claim construction, Samsung argued for a broad definition of "zone specific storage and interface device" that would encompass mobile devices.[28]   Judge Koh rejected that construction and found that the mobile device itself could not generate the "zone" as Samsung appeared to assert.[29]   The construction precludes literal infringement by mobile devices that do not "reside in an area," a theory that Samsung initially asserted.[30]   The difference therefore is material and provides good cause for Samsung's addition of the descriptor "reside in a specific location," which serves to tailor the theories to the claim construction order.   The materiality of the difference also supports Samsung's added assertion of an equivalence theory, presumably with the goal of nevertheless including mobile devices not residing in an area under the new construction.

The court finds that good cause likewise supports the addition of the third-party docks to the extent that they illustrate how the accused products can "reside in an area."   Apple argues that the claim construction does not provide good cause because Samsung could have included the docks under its broader proposed construction.   The court finds, however, that Samsung's addition of the docks is nothing more than an example of how the devices can meet the limitation as constructed by Judge Koh.   The addition of the docks is responsive to a material difference in the

---

[26] *Id.*

[27] *Id.*

[28] *See* Docket No. 447.

[29] *See id.*

[30] *See id.*

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

claim construction order – namely that the "zone specific storage and interface device" must reside in an area.  Samsung has good cause to add this amendment.

The court also finds that Apple would not be prejudiced by these amendments.  Apple has had notice that Samsung believes Apple's mobile devices infringe the patent and so it presumably already produced discovery regarding the products.  That Samsung now contends the mobile devices infringe under an equivalency argument instead does not appear to require any new fact discovery, or at least Apple has not explained how it would.  The addition of the "reside in a specific location" likewise does not prejudice Apple as Samsung's addition of that language narrows its theory of literal infringement in line with the construction.  And as to the docks, Apple has not explained how adding references to docks, third party or otherwise, would lead to additional discovery on its part.  Samsung may need additional material to support its theory but then the cut-off presumably would aid Apple because Samsung is limited in the amount of new facts it can uncover.  Samsung therefore may amend its contentions for the '757 Patent in line with the changes the court described in this section.

### b.    '239 Patent

From the '239 Patent, Judge Koh construed the means-plus-function term "means for capturing, digitizing and compressing at least one composite signal" to include as the structure "an audio capture card, and a video card having a video capture module."  Samsung in contrast argued that the corresponding structure should comprise "a video and/or audio capture module and equivalents."  Judge Koh construed the structure for the '239 Patent means-plus-function term "means for transmitting said composite signal" as "one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and software performing a software sequence of initializing one or more communication ports on the remote unit, obtaining the stored data file, and transmitting the stored data file."  Samsung sought the construction "one or more

Case No: 12-0630 LHK (PSG)
ORDER

cellular telephone transmitters, radio frequency transmitters, telemetric frequency transmitters, and/or standard telephone line transmitters and equivalents."

i.   **"Means for Capturing, Digitizing, and Compressing" Structure**

For the "means for capturing, digitizing, and compressing" term, Samsung seeks to amend its contentions by adding a theory that the accused products, which Samsung terms "mobile remote units" ("MRUs") in accordance with the claim,[31] either literally infringe because they contain "equivalents" of the cards described in the construction order[32] or infringe under a DOE theory because as a whole they satisfy the function-way-result test.[33]

For the Section 112(f) equivalents argument, Samsung explains that the MRUs "perform the identical function of capturing, digitizing, and compressing data in substantially the same way of providing chips within the [MRUs] that perform these limitations, with substantially the same result."[34] "The chips used within the [MRUs] are equivalents to the structure construed by the Court because they perform the same functions as the 'cards' as construed by the Court."[35]

Samsung asserts much the same language in its DOE contention: the MRUs "still infringe under the doctrine of equivalents because they capture, digitize, and compress data in substantially the same way by receiving data and capturing, digitizing, and compressing it, to obtain substantially the same result, of providing a component of the remote device to perform the claimed function" and "to the extent there even are any differences, the differences between the [MRUs] and the claims is insubstantial because the chips in the [MRUs] operate in the same way

---

[31] *See* Docket No. 476 Ex. 8.

[32] *See* 35 U.S.C. § 112(f) ("An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.").

[33] *See Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1099 (Fed. Cir. 2008).

[34] Docket No. 476 Ex. 8.

[35] *Id.*

13

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

as construed by the Court."[36]  Samsung includes images and descriptions of the iPad mini's camera and processor to illustrate how the accused products meet the limitations, but it does not identify the "chips" in either the iPad mini or any of the other accused products.

Although not the paragon of detailed disclosure, Samsung's amendment addresses a concern raised by the claim construction order, namely that the limitation requires audio and video "cards" and to the extent the accused products do not contain "cards" per se, according to Samsung, they nevertheless infringe under equivalence theories.  Samsung sought a construction that the required structure consisted of audio and/or video capture modules only.  By its own argument – one that the court will most assuredly hold it to in the future – Samsung alleges nothing more than that the components it previously identified (to the extent it identified them, to which Apple did not object in earlier amendments) still infringe under equivalence theories even though Judge Koh construed the term to require different structures.  Apple furthermore is not prejudiced given that Samsung already has notified it of at least one illustrative component, namely the iPad Mini camera, that Samsung believes meets the structure.  Samsung may amend its contentions in this respect.

### ii.    "Means for Transmitting" Structure

Samsung also wants to amend its contentions to add equivalents arguments for the "one or more modems" and "software" structure requirements for the "means for transmitting said composite signal" term in the '239 Patent and to add equivalents and DOE theories.  Apple responds that Samsung's proposed '239 Patent amendments include only conclusory language that the devices include equivalent structures.

---

[36] *Id.*  The court notes that although Samsung articulates the different equivalents theories that can arise when considering a means-plus-function claim, *see Welker Bearing*, 550 F.3d at 1099, it does not specify whether it believes the components existed at the time of the patent issuance or are after-arising.

14

Case No: 12-0630 LHK (PSG)
ORDER

The proposed amendment adds references to components that Samsung contends address the construction of the term.  Samsung references "an applications processor, a baseband chip, a Wi-Fi chip, and one or more cellular or radio frequency transmitters and software sequences for transmitting the composite signal, including software sequences contained in, initialized by, implemented by, or otherwise related to software and/or firmware such as Camera, Photos, Messages, Mail, YouTube, Phone, Contacts, FaceTime, Voice Memos, Email, iTunes, iPod and /or other processes."[37]   According to Samsung, the components "are one or more modems" in line with the claim construction order.[38]

It further asserts that "software and/or firmware" in the identified apps satisfy the software element of the construction.[39]  Samsung concludes with an assertion that "[t]o the extent Apple argues that the [MRUs] do not contain the corresponding structure disclosed by the specification and determined by the Court in the Markman Order, the [MRUs] still literally infringe because they contain equivalents" or because they "still infringe under the doctrine of equivalents because they perform the substantially similar function of transmitting a composite signal in substantially the same way" in accordance with the claim construction order.[40]

Judge Koh construed the structure for the "means for transmitting" term to require a modem and a software sequence, which Samsung did not include in its proposed construction.  The order therefore materially differs from Samsung's proffered construction.  Samsung's proposed amendments address the construction order by identifying the components it alleges meet the modem and software sequence requirements. According to Samsung, those components – the applications processor, the baseband chip, the Wi-Fi chip, and the cellular or radio transmitters –

---

[37] *Id.*

[38] *See id.*

[39] *See id.*

[40] *Id.*

Case No: 12-0630 LHK (PSG)
ORDER

"are one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters."[41] And Samsung asserts that the "software sequence" from the construction appears in the various apps it lists.

Apple argues that Samsung's amendments are nothing more than "generic placeholder[s]" that would prejudice Apple because Samsung could shift its infringement theories. The court disagrees in part. Samsung has provided Apple with notice that it believes the components it identifies satisfy the "one or more modems" requirement, and that the software sequence requirement can be satisfied by one or more of the apps listed. Whether those components in fact comprise a modem or those apps actually provide the software sequence is an issue for the experts to determine – Samsung need only posit its theories. And given that at least the broadband chip, the Wi-Fi chip, and the cellular and radio transmitters were part of Samsung's second amended contentions and that Samsung there alleged that apps such as YouTube and FaceTime provided software to initiate the transmission,[42] Apple has had notice that at least those components and software were part of Samsung's infringement theory. Apple has not persuaded the court that Samsung's addition of extra components and apps would unduly prejudice it, especially because it possesses all of the information about those components and apps.

On the other hand, Samsung adds at the tail end of its list of apps that potentially meet the limitation the phrase "and/or other processes."[43] Apple is right regarding this placeholder language. If Samsung believes that other processes contain or somehow practice the software sequence needed for the required structure, it should assert them. That placeholder is too vague for this stage of the case.

---

[41] *Id.*

[42] *See* Docket No. 305 Ex. 4.

[43] *See* Docket No. 467 Ex. 4.

16

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Turning to the new equivalence theories, as with its amendments for the "means for capturing" term, Samsung adds both a Section 112(f) theory and a DOE theory.[44]  For the Section 112(f) theory, it states that "[t]o the extent Apple argues that none of the components of the [MRUs] are 'modems,' the components . . . are equivalent to a 'modem'" and that "to the extent Apple argues that the [MRUs] do not perform the software limitations that are part of the Court's construction, the methods performed by the [MRUs] are equivalent."[45]  Samsung further asserts that even if Apple argues the MRUs "do not literally satisfy this limitation, the [MRUs] still infringe under the doctrine of equivalents because they perform the substantially similar function of transmitting a composite signal in substantially the same way by using a modem or substantially equivalent component, and performing the Court's software sequence, to obtain substantially the same result of transmitting the video and audio data."[46]

As with the new equivalence theories that Samsung added in the "means for capturing" term, the court finds that the claim construction order provides good cause for the proposed amendments.  Samsung essentially argues that the components it identified are "modems" and the apps it identified include the software sequence but, if nothing else, both meet the tests under Section 112(f) or DOE.  Given that the construction is materially different from Samsung's proposal, the court finds that it has good cause to add these equivalence contentions as alternative liability theories to address that material difference.  And, as noted above, because these are

---

[44] Samsung again fails to explain whether it believes the components were in existence at the time of the patent issuance or were after-arising.

[45] Docket No. 467 Ex. 4.

[46] *Id.*

Case No: 12-0630 LHK (PSG)
ORDER

Apple's products, it most likely has information about these components and apps and so will not suffer undue prejudice if Samsung adds these alternative theories.[47]

In summary, Samsung may add its proposed equivalence contentions and it may add the components and apps that it asserts meet the structure as construed by Judge Koh.  It may not include the vague phrase "and/or other processes" because at this stage, it needs to be more specific.

### 3.   Amendment based on Discovery

Samsung next seeks to amend contentions for the '757 Patent as well as U.S. Patent Nos. 6,226,449 ("'449 Patent"), 7,756,087 ("'087 Patent"), and 7,551,596 ("'596 Patent") on the grounds that Apple and third parties only recently provided certain discovery.  Apple does not oppose to the extent that Samsung only seeks to add citations to discovery provided in March or April of this year, but it objects to the extent that Samsung's amendments involve substantive changes with information that Samsung had in its possession any earlier than March or April.

### a.   '757 Patent Willful Infringement

For the '757 Patent, Samsung seeks to amend its willful infringement contention because it only recently learned that Apple knew about the '757 Patent from document production from third-party ReQuest Inc. ("ReQuest") in February 2013.  Samsung further asserts that Apple withheld documents revealing potential willful infringement.  Apple contends that Samsung knew about its communications with ReQuest both through its own inquiry when it purchased the '757 Patent from ReQuest and from a document that Apple produced to Samsung in March 2013.  Apple thus argues that Samsung does not have good cause to amend its contentions.  Samsung responds that the document was buried within a one million-page production and that Apple's response in March 2013 to Samsung's July 2012 inquiry into the relationship was late.  On a policy note, Samsung

---

[47] The court notes that Apple argued at the hearing for its motion for leave to file amended infringement contentions that Samsung would not be prejudiced by the addition of the Galaxy S4 in part because it possessed the relevant documents about the new product.

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

argues that finding it did not have good cause would encourage parties to assert willfulness theories even without sufficient factual bases.

After filing its reply, Samsung sought leave to file supplemental briefing with further discovery from Apple regarding its communications with ReQuest.[48]   Apple opposes the request.[49]   The court GRANTS Samsung's motion and takes the additional evidence into account in considering Samsung's request.

Samsung does not dispute that it had notice of discussions between Apple and ReQuest when Samsung purchased the patent – in fact, it does not address its knowledge at all.  But in an email dated July 26, 2011, which is Bates-stamped by Samsung, Peter Cholnoky ("Cholnoky"), ReQuest's CEO, informed Julie Shin ("Shin"), a Samsung employee, that ReQuest first offered the '757 Patent to Apple a month prior in June 2011.[50]   The email also states that Apple was interested in licensing but not purchasing the patent.[51]   Shin in fact specifically asked Cholnoky whether ReQuest had engaged in any discussions with Apple regarding the patent.[52]   Samsung thus appears not only to have known about the negotiations between Apple and ReQuest but to have anticipated the connection.

Samsung's notice in July 2011 about Apple's interest in the '757 Patent undercuts its arguments for good cause.  It not only knew about Apple's negotiations, it specifically raised the issue with ReQuest in July 2011 before it purchased the patent.  Samsung relies heavily on Apple's late production of documents confirming the communications to excuse its late amendment to the infringement contentions.  But Samsung had all of the information it needed to assert a willful

---

[48] *See* Docket No. 577.

[49] *See* Docket No. 582.

[50] *See* Docket No. 516 Ex. 4.

[51] *See id.*

[52] *See id.*

19

Case No: 12-0630 LHK (PSG)
ORDER

infringement theory when this case began, specifically that Apple knew about the patent and even sought to license the patent.[53]  The new information that Apple provided regarding its discussions with ReQuest add details regarding its knowledge, its desire to license the patent, and its consultation with outside counsel regarding the patent.[54]  Although this information certainly would aid Samsung in proving that Apple willfully infringed, they do not provide good cause for Samsung's delay in asserting that Apple willfully infringed.

Samsung has not made a showing of good cause to amend its contentions to add a willful infringement theory to the '757 Patent infringement contentions.  Its request for leave to make that amendment is DENIED.

### b.    '087 and '596 Patents Evidentiary Amendments

Samsung seeks to amend its contentions for the '087 Patent and the '596 Patent to add what it claims is evidentiary support, namely to add citations to source code produced by Apple, Intel, and Qualcomm, citations to third-party confidential documents, and additional details regarding the 3GPP standards that Samsung's patents cover.  Apple objects that several of the citations Samsung seeks to add are to publicly available documents that Samsung could have accessed earlier or to source code of which Samsung has had possession for several months.  Apple also objects that Samsung should have known the standards its own patents cover and so it has not shown good cause to include now the standards it seeks to add.  Samsung responds that for the 3GPP standards, the relevance of at least the TS 25.309 standard did not become apparent until after Samsung received confidential documents from third parties.  It further argues it is not asserting any new theories but rather supplementing the evidentiary support for theories it previously disclosed.

---

[53] *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) ("[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.").

[54] *See* Docket No. 582.

Case No: 12-0630 LHK (PSG)
ORDER

1
2
3
4
5
6
7
8
9
10

United States District Court
For the Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Before it addresses Samsung's requests and Apple's objections, the court cannot help but observe that with contentions as lengthy and unwieldy as the ones in this case, the parties should better aid the court in navigating the contentions to identify the minute differences between them. The court sympathizes that each party believes these changes are mission critical to their case (but not so mission critical as to prejudice the other side and warrant exclusion), but ferreting through not only one set of contentions hundreds of pages long but four sets of contentions – each one hundreds of pages long – to uncover when a party happened to include a citation and in what way and then to determine prejudice requires far more of the court's resources than the parties have a right to expect.

And to that end, the court will not go through all of the different infringement contentions to check, for example, whether Samsung happened to include a particular version of the 3GPP standard in its original or first amended contentions but in not its second amended contentions. Samsung specifically alerted Apple in its amendments that it intended to supplement the contentions with new accused devices.  To the extent that Samsung, for example, cited only a particular 3GPP standard in its second amended contentions because it was adding accused products that run on that standard, Samsung can continue to assert the standard identified in its earlier contentions with different products.  Apple has had notice throughout that the standard was "in play" in the case.  Because the court tacitly approved this strategy of updating and amending contentions, Samsung may rely on its earlier contentions because they were incorporated within its amended versions.

The court notes, however, that this process is highly flawed because it leads to sprawling and shifting theories of infringement.  Going forward, the parties should provide their full contentions with the changes highlighted, not just submit a document with additions.  Otherwise, neither the parties nor the court has a clear understanding of what theories remain, what theories are disclaimed, or what theories are being added.

Case No: 12-0630 LHK (PSG)
ORDER

The court is not going to go line-by-line through the various amendments – this order is long enough already.  It instead provides general guidelines and Samsung shall amend its contentions accordingly.  To the extent that Samsung adds citations to source code it received after its January amendment of its contentions, it has shown sufficient diligence and thus good cause to add those citations.  It has had the source code for about four months, a time period admittedly other courts have found fails to suffice for diligence.[55]  But given the size of this case and the necessity of processing thousands of lines of code, the court finds that time period is sufficiently diligent to establish good cause.  Apple does not describe any prejudice that would result from these additions other than its general concern that fact discovery closes in a matter of weeks.  As these citations are to documents presumably in both parties' possession, the court does not agree that Apple will be unduly prejudiced by the additional citations.

Turning to Samsung's argument that it already disclosed many of the citations in earlier versions of its contentions, as the court explained above, as long as the citation was in an earlier contention, it may be included in this contention (and in fact should be included).  If a citation that Samsung did not discuss in its motion was not in a previous version, it cannot come in now because Samsung has not shown good cause for its addition.

Samsung has not shown diligence and therefore good cause to add citations to documents of which Samsung either had possession or which were publicly available before its second amendment of its contentions in January 2013.   Documents that were not part of Samsung's earlier contentions but were publicly available or in its possession before the January 2013 amendment may not be added because Samsung has not shown why it failed to include those references earlier.  With regards to the deposition testimony in support of Samsung's proposed DOE amendments, as it explained above, the court will not permit those amendments in any event and so the deposition testimony likewise cannot be added.

---

[55] *See, e.g., Acer, Inc.*, 2010 WL 3618687, at *4 (finding three month delay too long for diligence).

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

As to the citations to additional 3GPP standards, the court finds Samsung has not provided sufficient good cause for amending its contentions.  Samsung points to references in production from Intel, AT&T, and Alcatel mentioning TS 25.309 and claims that until receiving those documents Samsung had no notice of the relevance of the TS 25.309 standard to Apple's alleged infringement.  But Samsung does not explain why references in the Intel, AT&T, or Alcatel production provided notice that Samsung did not have before.  As Apple points out, Samsung presumably knows which standards its patent covers.  From the court's review of the documents, the third-party documents describe user equipment standards[56] but Samsung has not explained in which products the components appear or why Samsung could theorize that other standards were appropriate earlier but did not know that these standards were necessary.  Because Samsung has the burden to show good cause to amend and it has not done so, the request to add new citations to additional standards is DENIED.

The court also finds that Samsung has not met its burden of showing good cause to add citations to the XGOLD 61x Product Specification document ("XGOLD document") apparently produced by Intel in the ITC 794 Investigation between Apple and Samsung.  Samsung maintains that it could not use the document in this litigation without permission from Intel, but it provides no evidence to the court regarding when it sought permission to use the document or when it obtained that permission.  The court therefore has insufficient information from which to determine whether Samsung acted diligently and with good cause.  As the party with the burden of showing good cause, Samsung bears the consequences of this lack of evidence.  The request to add citations to the XGOLD document is DENIED.

### c.     '449 Patent

For the '449 Patent, Samsung wants to identify components in Apple's accused products that satisfy the "recording circuit" and "reproducing circuit" claim terms.  According to Samsung,

---

[56] *See* Docket No. 528 Ex. 9.

Case No: 12-0630 LHK (PSG)
ORDER

it uncovered the components only after a recent interrogatory response from Apple and document production from third-party Cirrus Logic Inc. ("Cirrus"). Apple responds that Samsung received the Bill of Materials ("BOM") to which Apple's interrogatory refers in November 2012. According to Apple the BOM also discloses the audio codec chips that the Cirrus documents identify. Apple maintains that Samsung's possession of the BOM back in November precludes its argument that it has good cause to amend its contentions. Samsung responds that without Apple's interrogatory response and until Cirrus's production, Samsung had little notice that among Apple's million-plus page production, the information showing the structure was in its possession.

Samsung does not deny that it received the BOM in November 2012 or that the BOM contains the information that the Cirrus documents disclose and that Apple's interrogatory identifies. Samsung instead points to the size of the production of which the BOM was a part and argues that absent Apple's interrogatory response and Cirrus' production, it could not uncover the information. But that argument is unavailing. Samsung had the information in its possession since November 2012; the information was not recently turned over to Samsung as Patent L.R. 3-6(c) anticipates. Rule 3-6(c) describes situations where nonpublic information "was not discovered, despite diligent efforts, before the service" of earlier infringement contentions. Samsung's failure to process Apple's production does not justify its amendment now.

Because Samsung has not shown sufficient good cause, Samsung's request for leave to amend its contentions to add components that it believes infringe the '449 Patent is DENIED.

### 4.    '757 Patent and '449 Patent Addition of Doctrine of Equivalents Theories

For both the '757 Patent and the '449 Patent, Samsung seeks to add DOE theories, and it points to source code review, ongoing discovery from third-parties Omnivision and Sony, and ongoing discovery from Apple to support its good cause requirement. Apple objects that Samsung has not shown the receipt of any new information supporting its assertion that it acted with the requisite diligence to show good cause.

Case No: 12-0630 LHK (PSG)
ORDER

**United States District Court**
For the Northern District of California

For the '449 Patent, Samsung justifies its addition of a doctrine of equivalents theory at this stage because it continues to pursue discovery regarding whether Apple's products have an A/D converter separate from a CMOS image sensor or an integrated A/D converter. Although not explicit in the proposed amendments, Samsung asserts in its papers that the DOE theory covers the integrated A/D converter just in case integrated converters do not literally infringe the patent. Apple responds that Samsung has had documents from Apple showing which converters the accused products have and so it cannot show good cause now to amend.

Samsung has not explained why it could not have asserted this theory earlier. From its representations, it still does not know which kind of converter the accused products use. The court can only speculate how Samsung's position now is different from its position before its second amended contentions. And if Apple is correct, Samsung had notice in documents served on it in 2012 that describing the component. Samsung appears only to be covering its bases in the event that the third parties reveal different components than Samsung predicted. That reasoning, whatever its merit, does not create good cause for Samsung's late amendments. The request to add doctrine of equivalents theories on those grounds is DENIED.

For the '757 Patent, Samsung wants to add two doctrine of equivalents theories: (1) that iTunes, iCloud, and iTunes Match suffice as a "central storage and interface device," and (2) that Apple's software includes "classifications" as described in the patent even if the software does not use that terminology. But again Samsung fails to explain why it could not have asserted these theories earlier, especially given its argument that Apple still has not provided the necessary discovery for Samsung to assert with specificity its doctrine of equivalents theory. Samsung's argument is just another attempt to muster all of its possible theories as the case nears the point of no return for the parties' contentions. On that basis, the court DENIES Samsung's request.

25

United States District Court
For the Northern District of California

### 4.    New Products

In addition to adding new citations and equivalents theories, Samsung seeks to add two of its products that practice its patents.  According to Samsung, it did not originally include the Galaxy S III (Jelly Bean) or the Galaxy Note II because they were not "part of the lawsuit" until Apple added them to its own infringement contentions.  In a tit-for-tat argument, Samsung asserts that it should be allowed to show the products practice its patents if Apple may show that they infringe Apple's patents.  Samsung also suggests that the claim construction order excuses its late addition, although it provides nothing from the order that affects these products.  Apple notes that its infringement theories are independent from Samsung's obligation to assert its practicing products and that Samsung has not shown how the claim construction order affects the new products.

The court agrees with Apple.  Samsung claims it will be prejudiced if Apple can assert that the Galaxy S III and the Galaxy Note II infringe Apple's patents while Samsung is precluded from asserting that the products practice Samsung's own patents.  Whether that is true or not is irrelevant to the standard the court must apply in determining the appropriateness of amending infringement contentions.  Other than referencing Apple's late addition of the products to its infringement contentions – an addition to which Samsung stipulated in exchange for its addition of Apple products that it alleges infringe[57] – Samsung provides no other justification for the delay in alleging the products practice its patents.  In other words, Samsung has not shown good cause.  Apple's late introduction of the products for a theory of infringement is not grounds for Samsung's even later introduction that the products practice.  The request is DENIED.

---

[57] *See* Docket Nos. 347, 348.

26

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

### 5.   *Akamai Technologies, Inc. v. Limelight Networks, Inc.*

Samsung finally points to the decision by the Federal Circuit in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*[58] to support its recent addition of a theory of multiple indirect infringers.  In *Akamai*, the Federal Circuit held that for method claims, a patentee may assert that multiple parties completing various steps of the method can support an indirect infringement theory.[59]  Samsung perfunctorily argues that its new theories address the *Akamai* decision and so amendment is proper.  Samsung does not explain, however, why it did not assert theories under *Akamai* in either its November 2012 or January 2013 amendments, even though the Federal Circuit issued the opinion in August 2012.  Samsung thus fails to provide good cause for this amendment.

The court also notes that *Akamai* suggested that its holding was limited to method claims,[60] and Samsung has not provided any case law suggesting a recent decision applying *Akamai*'s reasoning to apparatus claims.  Samsung's request to amend its contentions to add this theory is DENIED.

### 6.   Additional Changes

Apple points to several other changes in Samsung's proposed infringement contentions that it asserts are substantive and for which Samsung provides no argument.  Samsung argues that the changes are not substantive and that the proposed amendments provide only additional detail and evidence to support its theories.  According to Samsung, the amendments merely illustrate theories it disclosed in its original contentions.

---

[58] 692 F.3d 1301 (Fed. Cir. 2012).

[59] *See id.* at 1306.

[60] *See id.* at 1305-06.

Case No: 12-0630 LHK (PSG)
ORDER

For most of the changes, the court refers the parties to its lengthy discussion above because the decisions regarding those changes can be found there.[61]  As to Samsung's argument regarding theories or citations included in earlier contentions, the court already has explained that to the extent citations were in prior contentions they carry through to this contention.  Samsung incorporated its original contentions into its second amended contentions and again in its third amended contentions, and so the court finds that Apple has sufficient notice of Samsung's ongoing pursuit of those theories and Samsung therefore may include those references.

Samsung also argues that several of the changes are not new arguments but merely clarifications of its earlier theories.  But amendment of the infringement contentions requires good cause, regardless of whether the amendment is a substantively different theory, additional citations, or clarification of a theory.  The court briefly addresses these remaining changes:

- '179 Patent: Footnote 1 to Samsung's contentions is an appropriate clarification that the screen shots and product-specific allegations are exemplary.  Samsung may make that amendment.  Samsung has not explained why it alleges only now that the Chinese and Japanese keyboards function in the same way.  Leave for that change is DENIED.

- '757 Patent: Samsung may add the exemplary operation of Home Sharing in response to the claim construction order.

- '470 Patent: Samsung may amend the "processor" term to say "application processor" only to the extent that it is in line with Apple's internal descriptions first disclosed to Samsung in April 2013.

- '449 Patent: Samsung has not provided good cause for its addition of Exif data as an additional example of "classification data," regardless of whether it discloses a new theory.  Leave for that change is DENIED.  Samsung may include album screenshots to the extent they were disclosed in earlier contentions.

Samsung shall file amended contentions in line with the court's analysis within seven days of this order.

---

[61] For example, discussions about the 3GPP standards, the A/D converter chip, the "reproducing circuit" amendments, additional equivalents arguments, and new Section 112(f) structure arguments.

Case No: 12-0630 LHK (PSG)
ORDER

**B.      Apple's Motion for Leave to File Amended Infringement Contentions**

Apple requests leave to file several amendments to its contentions, but Samsung opposes only a subset of those changes.  The court addresses only the amendments to which Samsung objects.[62]  For the rest of the amendments, the court considers Samsung's nonopposition as an effective stipulation to the changes and approves Apple's request to make amendments to which Samsung does not object.

Turning to the amendments in contention, Apple seeks to add the Galaxy S4, which Samsung released on April 27, 2013, to its contentions and to add certain source code citations to claims 24, 25, and 27 of U.S. Patent No. 6,847,959 ("'959 Patent").  Samsung objects to both amendments on various grounds.

**1.      Galaxy S4**

Apple seeks leave to add the Galaxy S4, which Samsung released in April 2013, as an accused product.  According to Apple, it diligently sought to add the product because it filed its request within a matter of weeks after the Galaxy S4 was available for purchase.  Apple contends that Samsung will suffer no prejudice from the late addition because Apple believes that the Galaxy S4 infringes in the same way as the other accused products and so Samsung's resulting discovery obligations will not be substantial.

Samsung objects, asserting several grounds that it argues preclude Apple from adding the Galaxy S4 at this stage of the case.  Samsung first points to Apple's position at a similar point in discovery in the 11-1846 case, when Apple objected to Samsung's attempt to add the iPhone 4S and argued that the late addition was prejudicial.[63]  Apple won that battle,[64] and Samsung argues

---

[62] Apple withdrew its request to amend any of the contentions in the '959 Patent or U.S. Patent No. 8,086,604 ("'604 Patent") that include the "each" term that the Federal Circuit interpreted in *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370 (Fed. Cir. 2012).

[63] *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 11-1846 LHK (PSG), 2012 WL 1067548, at *8 (N.D. Cal. Mar. 27, 2012).

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

that it cannot now reverse course and argue that the same limited amount of time for discovery is not prejudicial to Samsung. Apple responds that the issues in the 11-1846 case and the issues here are markedly different. Apple asserts that unlike in the 11-1846 case, in which Samsung sought to add a product running on separate hardware and with separate software than the other accused products, the Galaxy 4S has essentially the same hardware and functionality.

Samsung also highlights that Judge Koh has ordered the parties to narrow the size and scope of this case, making Apple's attempt to add a new product at this point a violation of her order. Apple assures the court that no such violation has occurred as it merely will substitute one of the currently accused products for the Galaxy S4 when the time comes to drop a product or patent. Apple notably has not identified which of the products it will remove from its contentions; it just promises that by the deadline Judge Koh set it will winnow the products accordingly.

In the event that both of these arguments fail, Samsung raises a third – that addition of the Galaxy S4 will require "massive additional discovery," including source code collection and identification and investigation of witnesses. Samsung also asserts that the Galaxy S4 is not in fact a "product" but rather a "product line" with different models for each of the cellular carriers who carry service for the phone. According to Samsung, models for some of the carriers have not yet been released. Apple's new contentions, Samsung asserts, ignore the differences in functionality and the possibility that Apple again will need to amend its contentions once it obtains discovery on the different versions of the product. Samsung also argues that if Apple can add the Galaxy S4, it will have little time to develop its defenses to Apple's infringement allegations and particularly its theories regarding damages and other post-trial remedies. As Samsung points out, the Galaxy S4 has been available for sale for less than two months and so detailed evidence regarding sales, consumer demand, and marketing are unavailable.

---

[64] *See id.*

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

Apple responds that because Samsung possesses information about its own product and that because its infringement theories for the Galaxy S4 essentially parallel its theories for the accused products already in the case, Samsung's arguments are meritless.  As Apple emphasized at the hearing, Samsung had six weeks to present plausible differences between the Galaxy S4 and the products already accused in the case, and yet it has failed to show how it would be prejudiced by radically different infringement theories.  Apple also contends that Samsung has sufficient information regarding sales and marketing and that any extra discovery will not be an undue burden even at this stage in the case.

Were liability the only issue in this case, the court might be inclined to agree with Apple, but as with most issues involving this suit, things are not that simple.  Samsung may not have shown differences in how the products infringe, but damages and post-trial remedies are a significant part of this case.[65]  As Samsung highlights, the Galaxy S4 is new to market and so Samsung would be put to the task of marshaling evidence of consumer preferences through surveys as well as sales and marketing data on the newly released product to defend itself against Apple's damages claims.  Apple's response that Samsung only need ask if and when it wants to add additional reports glibly avoids the realities of this case.  Before Samsung could even seek relief from the court, it would need to meet and confer with Apple, obtain Apple's response, and only then engage in motion practice.[66]

The court also is not persuaded by Apple's assurances that any additional discovery is minimal.  Apple claims to seek only source code and financial data, but as the court just explained, production of financial data for such a new product does not involve merely a "push of a button" as

---

[65] *See* Docket No. 261 (requesting damages and a permanent injunction); Docket No. 480 at 23:9-14 (Apple's counsel observing that parties are "head-to-head competitors" and that damages and an injunction are remedies Apple is pursuing because of the harm it currently is suffering).  Although Apple did not raise the issue, the court notes that to the extent that Apple believes it is irreparably harmed by Samsung's sale of the Galaxy S4, a new case might actually be the better option to prevent sales as the time for a preliminary injunction in this case has long passed.

[66] *See* Civil L.R. 37-1(a).

Case No: 12-0630 LHK (PSG)
ORDER

Apple claims.  And Apple admits that although it does not seek any additional depositions, it does want the remaining deponents to be prepared to testify about the Galaxy S4 in addition to the accused products.  Preparation of witnesses to testify as to an additional product is not an insubstantial task.

Even assuming that the armies of lawyers on each side of this suit could collect, review, and exchange the necessary documents and prepare the remaining deponents within the waning hours of fact discovery and not suffer any prejudice, the tax on the court's resources warrants pause before allowing another product into this case.  Since April, this court has had nine fully briefed discovery motions to resolve[67] and there are four more to hear in the next month.[68]  Adding a new product at this late stage in the fact discovery period invites disputes between the parties about what discovery each side is entitled to, whether Apple disclaimed certain rights to discovery because of its claims that infringement is exactly the same, and how prepared the deponents are to testify about the new product.  Each time these parties appear in the courtroom, they consume considerable amounts of the court's time and energy, which takes time away from other parties who also require and are entitled to the court's attention.[69]

Judge Koh has been explicit with both parties that this case must be streamlined, which requires reducing the number of products and patents at issue – not increasing them.[70]  Apple's promise to substitute an already-accused product for the Galaxy S4 does not solve the problem.

---

[67] *See* Docket Nos. 395, 398, 401, 404, 418, 476, 496, 498, 525.  At least one other dispute was calendared but then resolved and withdrawn.  *See* Docket Nos. 433.  The court has not counted the numerous sealing motions filed concurrently with these briefs that the court also must address, or any motions whatsoever from the 11-1846 case.

[68] *See* Docket Nos. 540, 543, 614, 633.

[69] Counsel's jokes to Judge Koh that this case "always takes precedence," *see* Docket No. 480 at 31:25 – 32:1, reveal intentionally or otherwise the degree to which both this case and the earlier 11-1846 case confiscate time and energy away from other cases involving legitimate, albeit less high profile, disputes.

[70] *See* Docket No. 480 at 19:20-22.

32

Case No: 12-0630 LHK (PSG)
ORDER

Apple conflates a quantitative analysis with a qualitative one.  The number of products may be the same, but as the court described, the potential disputes revolving around Galaxy S4 are greater than whatever product it will replace because of its late addition.

Throughout the hearing, Apple warned that excluding the Galaxy S4 would result in yet another case with more claims of infringement and would require Apple to continue to play, in counsel's words, "whack-a-mole" with Samsung.  Apple presented the exact same argument to Judge Koh during an April 23, 2013 hearing during which she required them to set a schedule to drop products and patents.[71]  Judge Koh was not persuaded by this argument and neither is the undersigned.  Apple already needs to dismiss without prejudice several products from this case[72] and so a new trial would be likely regardless.

Given the likely undue prejudice to Samsung and Judge Koh's directives regarding the management and progression of this case, the court DENIES Apple's request to add the Galaxy S4 to its contentions.

2.      **Addition of Citations to Source Code**

Apple initially sought to amend its infringement theories for the '604 and the '959 Patents with respect to the "each" term and the "heuristic" term and relied on the Federal Circuit's rejection of Apple's claim construction argument in *Apple, Inc. v. Samsung Electronics Co* to justify the amendments.[73]  Samsung strongly opposed.  Apple indicated in its reply that it is withdrawing those proposed amendments and now seeks only to add citations to source code recently produced by Google, Inc to claims 24, 25, and 27 of the '959 Patent.

---

[71] *See* Docket No. 480 at 15:5 – 17:17 ("We will one day have to have another trial on the exact same patents with the exact same proof when we're all here and the proofs at trial will be identical.").

[72] *See* Docket No. 471 (setting schedule for dismissing patents and products).

[73] 695 F.3d 1370 (Fed. Cir. 2012).

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

At the hearing Samsung maintained that Apple's changes still amounted to a substantive difference in their theories of infringement.  According to Samsung, Apple's proposed amendments effectively shift their infringement theory from a theory that the products infringe because of how they search, which aligns with Judge Koh's construction of the term, to a theory that the products infringe because of what they search.  Samsung asserts that such an alteration at this stage of the case is untimely because it presents a new theory with no good cause for doing so.

Apple responded at the hearing that it has no intention of changing its theories and seeks only to add source code revealing the location of the heuristics within the source code.  Apple agreed to remove the language from claims 24, 25, and 27 that suggest its theory of infringement involves the location rather than the method of the search.  It seeks only to include citations to source code that it believes reveal the infringing functionality.

The court will permit the citations to source code, but Apple shall remove the references to location of searches to ensure that it later does not rely on those statements to posit a new theory of infringement.  Given that compromise, the court finds Samsung is not unduly prejudiced from the addition of citations from source code from its products.  Apple shall file amended contentions in line with these directions within fourteen days.

## C.  Motion to Compel Documents from Related Litigation

Samsung moves to compel from Apple to produce documents from one case, *VirnetX, Inc. v. Cisco Systems, Inc.*, and two investigations, *In the Matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players and Computers* ("Nokia Investigation") and *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof* ("Kodak Investigation") that Samsung asserts are related to this case.  Apple objects that the disputes from which Samsung seeks documents do not fit within the technological nexus standard that the parties agree applies to this case.

34

The parties again agree that the "technological nexus" standard applies and even initially agreed as to the substance of the technological nexus that would govern their discovery.  According to Apple, the parties agreed that patents covering "touch-sensitive user interaction to perform unlock functions, asynchronous sync functionality, word correction and recommendation functions, missed call management functionality, search functionality, historical list functions, and special text detection" fall within the nexus.

Samsung asserts that the earlier disputes sufficiently overlap with the technology at issue in this case and, in any event, are relevant under the typical Rule 26 assessment.  And so, according to Samsung, it is entitled to deposition transcripts, trial transcripts, court rulings, infringement and invalidity contentions, expert reports, responses to requests for admission, responses to interrogatories, documents referenced in responses to interrogatories, and all documents submitted in connection with claim construction or motions other than discovery motions. Apple asserts that the disputes from which Samsung seeks documents are outside of the ambit of the parties' agreed definition and outside of the "technological nexus" standard generally.

The court adopted the "technological nexus" standard in *Apple Inc. v. Samsung Electronic Communications Inc.* ("11-1846 case"), at Apple's request, because the court agreed that with regards to discovery of documents from other litigation, the appropriate standard for determining the relevance of documents from those other cases turned on the similarity between the patents in the disputes.  To satisfy the standard, the other case must involve "the patents-in-suit or patents covering the same or similar technologies, features, or designs as the patents-in-suits."  As the court noted in the 11-1846 case, the starting point of the "technological nexus" inquiry is the patents at issue, not the products at issue.  And so, to ascertain the degree to which the technology overlaps, the necessary comparison here is between the patents involved in this case and the patents in the earlier disputes.

Case No: 12-0630 LHK (PSG)
ORDER

Since that time, the court has attempted to clarify the standard as other parties have turned to it to determine the boundaries of discovery from other litigation. For example, in *Vasudevan v. MicroStrategy*, the court noted that the technological nexus standard is not a substitute for the relevance inquiry under Fed. R. Civ. P. 26(b) but rather is shorthand for the balancing inquiry in which the court ordinarily must engage.[74] The court observed there that it also must consider the use to which the moving party intends to put the documents to determine the relevance of the requested documents.[75]

The parties' dispute highlights that further explanation of the standard is necessary to guide both these parties and others who may rely on the standard. In the 11-1846 case, once a party showed that other litigation satisfied the technological nexus standard, it could require production of all documents from that litigation.[76] The court explained that the technological nexus did not apply on a document-by-document or witness-by-witness basis.[77] The court makes explicit here what was implicit in the 11-1846 case: when other litigation shares a technological nexus with the patents in the case, a presumption of relevance for all documents in that case arises. To meet the technological nexus – and to enjoy that presumption – the patents in the two cases must meet a high degree of similarity. But once that similarity is shown, the court is justified in presuming the documents produced in litigation involving such similar patents falls within the broad scope of relevance under Rule 26(b). The failure to meet the technological nexus standard, however, does not preclude discovery from other litigation. The party seeking discovery instead must show that each category of documents it seeks is relevant under the traditional Rule 26(b) standard.

---

[74] Case No. 11-6637-RS (PSG), 2013 WL 597655, at *3-4 (N.D. Cal. Feb. 15, 2013).

[75] *See id.*

[76] *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. C 11-1846 LHK (PSG), 2012 WL 1232267, at *5 (N.D. Cal. Apr. 12, 2012) (hereinafter "April 12 Order"); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. C 11-1846-LHK (PSG), 2012 WL 2862613, at *5 (N.D. Cal. July 11, 2012) (hereinafter "July 11 Order").

[77] *See* April 12 Order, 2012 WL 1232267 at *5.

36

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

The court ordinarily would engage in an analysis of the similarity between the patents at issue in this case and the patents at issue in the other litigation to determine whether they fall within the nexus.[78] For convenience, the court employs the parties' substantive definition of the technological nexus applicable to this case.[79] The court first considers determine whether the patents at issue in *VirnetX*, the Nokia Investigation, and the Kodak Investigation meet that definition. If they do, Apple must produce all documents from the litigation; if they do not, the court will then consider if they are sufficiently similar to fall under the technological nexus in any event. If they are not sufficiently similar, Samsung must show relevance for the categories of documents it seeks.

### 1.     *VirnetX*

Samsung asserts that documents from the *VirnetX* litigation are relevant to this case because FaceTime, an accused feature in this case, also was at issue there. In *VirnetX*, Apple was found to infringe on five patents describing means for communicating securely over the internet. According to Samsung, because the accused features in *VirnetX* and this case overlap, the documents in *VirnetX* are relevant here. Samsung further asserts that the invention described in the '239 Patent and the inventions described in the patents at issue in *VirnetX* involve similar technology, namely the transmission of data over cellular technology. Beyond the technology similarities, Samsung claims that information about how Apple instructed its customers that Apple presented in *VirnetX* is relevant to Samsung's willfulness and indirect infringement claims and that Apple's damages theories regarding FaceTime are also relevant to Samsung's damages defenses.

Apple responds that the technology described in *VirnetX* involves transmission only over the internet, whereas the '239 Patent describes "capturing, compressing, and transmitting video."

---

[78] *See Vasudevan Inc.*, 2013 WL 597655 at *3-4.

[79] The court expressly does not pass on the merits of this definition.

Case No: 12-0630 LHK (PSG)
ORDER

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

It points to the classification of the '239 Patent, including "Television" and "Motion video signal processing for recording or reproducing," which none of the *VirnetX* patents fall within. As Apple describes them, the '239 Patent and the *VirnetX* patents have nothing in common – the '239 Patent describes treatment of video data, whereas the *VirnetX* patents describe internet transmission. Given the disparity in the inventions they describe, Apple argues, the patents in the two cases are not sufficiently similar to meet the technological nexus standard. And without that technological nexus, they cannot be relevant to Samsung's willfulness, indirect infringement, or damages theories.

The court agrees with Apple that the *VirnetX* patents do not fall within the technological nexus that the parties defined, and in fact they do not exhibit the high degree of similarity to the patents at issue in this case required to provide unfettered access to the documents in that case. The '239 Patent describes a "remote video transmission system for digitizing and compressing an audio/visual signal, transmitting that signal over low band width lines, such as land telephone lines, cellular telephone lines, or radio frequencies, decompressing the digitized data and converting it to an audio/visual signal for broadcast."[80] The patents at issue in *VirnetX*, in contrast, describe secure internet communications. For example, U.S. Patent No. 6,502,135 describes a "secure mechanism for communicating over the internet, including a protocol referred to as the Tunneled Agile Routing Protocol (TARP), [which] uses a unique two-layer encryption format and special TARP routers."[81] U.S. Patent No. 6,839,759 describes a "technique . . . for establishing a secure communication link between a first computer and a second computer over a computer network."[82] U.S. Patent Nos. 7,188,180, 7,418,504, and 7,490,151 likewise describe methods or apparatuses

---

[80] Docket No. 107 Ex. 8.

[81] Docket No. 531 Ex. 16.

[82] Docket No. 531 Ex. 17.

Case No: 12-0630 LHK (PSG)
ORDER

that ensure secure internet communications.[83]   Although the patents superficially overlap as to

transmission of data, the court finds that the patents in fact describe two different types of

inventions.[84]   They do not satisfy the technological nexus.

Samsung nevertheless may obtain documents to the extent that it can show traditional Rule

26(b) relevance.  Samsung asserts that documents from *VirnetX* are relevant to this case because

FaceTime is at issue in both suits.  From that overlap, Samsung argues that: (1) the *VirnetX*

documents will shed light on how FaceTime transmits video data because data transmission is at

issue in both cases; (2) documents describing how Apple instructed customers to use FaceTime is

relevant to Samsung's indirect infringement claims; (3) documents regarding "Apple's efforts to

stay apprised of patents relating to FaceTime" are relevant to the willful infringement and indirect

infringement claims here; and (4) Apple's damages theories regarding FaceTime in *VirnetX* are

relevant to Samsung's damages theories in this case.

Samsung notably did not request just these categories of documents – it sought essentially

all documents relating to infringement of the five patents at issue in *VirnetX*.[85]   And Samsung

believes that because the documents describing these topics may be relevant to its case, it is

entitled to all documents from the *VirnetX* litigation.  On the other hand, Apple objected to

---

[83] *See* Docket No. 531 Exs. 18, 19, 20.

[84] Samsung cites *Alloc, Inc. v. Unilin Beheer B.V.*, Case No. 03-1266, 2006 WL 757871, at *5 (E.D. Wisc. Mar. 24, 2006) for the proposition that an overlap in accused products can justify production from other litigation.  In *Alloc*, the court appears to have placed the burden of showing the irrelevance of the related litigation on the party opposing the motion to compel, and because the party did not make that showing, to have granted the motion.  *See* 2006 WL 757871 at *2, 5 (noting that the "objecting party bears the burden of demonstrating why a particular discovery request is improper" and that because the opposing party did not explain why the request for other litigation materials was "outside the scope of discoverable material for the present case" it had "failed to meet its burden in opposition").  In this district, the party moving to compel has the burden of showing relevance.  *See Soto*, 162 F.R.D. at 610.  In any event, the moving party in that case sought documents "concerning the development, operation, function, design changes, manufacture, sales and marketing of the accused products."  *Alloc*, 2006 WL 757871 at *5.  The moving party did not seek all litigation materials on the grounds that the accused products appeared in the case.

[85] *See* Docket No. 496.

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Samsung's requests only on the grounds that they did not comply with the technological nexus or require Apple to produce third-party confidential information.[86]  Apple asserts in its opposition – but not in its objections – that it already produced documents describing FaceTime functionality and so documents from *VirnetX* describing the same functionality would be duplicative.[87]

The court agrees that the categories Samsung listed in its motion fall within the broad scope of relevance but finds that Samsung has met its burden of relevance only as to those categories. Apple's argument that because the functionalities of the patents at issue in the two cases are not the same any information from the *VirnetX* case would not be relevant is unpersuasive.  First, relevance under Rule 26(b) does not require that the discovery be admissible, only that it may lead to admissible evidence.  Second, Apple's positions regarding customer instructions for FaceTime, its damages expert's opinions about the demand for FaceTime, and evidence about its methods for apprising itself about patents relating to FaceTime are all relevant to Samsung's claims.  FaceTime may practice several different patents, but Apple's policies regarding FaceTime and Apple's theories regarding the FaceTime's effect on Apple's profitability would aid Samsung in its preparation of its willful and indirect infringement theories and its damages theories for the accused functionalities within the application.

The relevance of those categories, however, does not support a finding that all documents from the *VirnetX* litigation are relevant.  Samsung has not shown how the entire litigation record is relevant to its claims or defenses.  And given the differences in the patents at issue in the two cases, the court doubts all of the record is relevant.  The court also finds that to the extent the documents from *VirnetX* duplicate production Apple already has made to Samsung, it need not repeat its

---

[86] *See id.*

[87] *See* Docket No. 531 Ex. 2.

Case No: 12-0630 LHK (PSG)
ORDER

efforts.  And so, Apple shall produce documents from *VirnetX* falling within the four categories Samsung identifies as relevant.  Apple shall make its production by the close of fact discovery.

### 2.    Nokia and Kodak Investigations

Samsung also wants Apple to turn over documents from its ITC disputes with Nokia and Kodak because, as Samsung maintains, the patents at issue in those cases, Nokia's U.S. Patent No. 6,895,256 ("'256 Patent") and Kodak's U.S. Patent No. 6,292,218 ("'218 Patent"), include many of the same limitations as the '239 Patent and the '449 Patent in this case.  According to Samsung, the overlap in the claim limitations renders the two ITC disputes within the technological nexus of this case.[88]

Apple responds that the overlapping claim limitations are "generic camera requirements" that do not speak to the different problems that the patents are attempting to address.  According to Apple, the '256 Patent involves "control" between a camera module and a mobile terminal process rather than the organizing invention of the '449 Patent or the transmission invention described by the '239 Patent.  Apple likewise asserts that the '218 Patent concerns the different modes of image capture between the motion apparent on a view finder before the image is captured and the better resolution of the actual captured image.  Samsung's arguments, Apple maintains, amount to no more than a claim that the patents all deal with digital cameras, a similarity that is broader than the technological nexus allows.

As the court explained above, the '239 Patent describes a "remote video transmission system" that essentially digitizes, compresses, and transmits audio/visual signals and then

---

[88] Samsung also asserts in a footnote that Nokia's '735 Patent, which describes an ability to detect text as having meaning to another application and launching that application, closely resembles Apple's '647 Patent, which instructs a similar invention.  Apple responds in a footnote that Samsung failed to address that argument during the parties' correspondence or meet-and-confer. The court follows suit and observes in this footnote that arguments not raised between the parties during meet-and-confer and arguments presented exclusively in footnotes do not strike the court as well-considered.  The court does not address further Samsung's '735 Patent argument.

41

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

decompresses the data and converts it into a signal to broadcast.[89]  The invention of the '449 Patent is an apparatus with "a recording and reproducing unit for a moving image signal, a recording and reproducing unit for a still image signal, a recording and reproducing unit for a digital speech signal operated in synchronous to the image, a display for displaying the image for said moving image signal or said still image signal, a recording condition recording unit for recording … conditions containing data information about recorded data for distinguishing said moving image from said still image and recording time information for recording an image or a speech."[90]  The '449 Patent basically describes an apparatus that improves the retrieval, classification, and ability to erase images in electronic cameras through the recording of certain information at the time of the recording of the video or still images and the separation of those images into "classifications."

The '256 Patent describes an invention with "a mobile terminal having a lens filter combination that responds to an image, for providing an optical image signal" and "a single-chip camera module and an integrated mobile terminal processor."[91]  With that apparatus, the digital camera's processing gets shifted to a mobile phone's integrated circuits and makes a "single chip camera module" possible.[92]  The '218 Patent describes an "electronic camera us[ing] a relatively more complex digital image processing technique in a still image mode to produce high quality still images, and a relatively more simple image processing technique in a motion preview mode to produce preview images of acceptable quality prior to initiation of the still image mode."[93]  In other words, the '218 Patent invention involves the difference between the lower-quality moving

---

[89] *See* Docket No. 107 Ex. 8.

[90] Docket No. 107 Ex. 7.

[91] Docket No. 496 Ex. 20.

[92] *Id.*

[93] Docket No. 496 Ex. 23.

42

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

images seen on a digital camera viewfinder before taking a still image and the higher-quality image produced when taking the picture.

To be sure, all of these patents describe digital camera technology and improvements to cameras in mobile devices.  Apple and Samsung dispute how similar they are and at what level the court should look to determine whether they satisfy the technological nexus.  The patents definitely do not fall within the parties' agreed definition, in part because that definition does not include digital imaging technology at all.  The court must instead consider whether the '256 and '218 Patent are similar enough to the '239 and '449 Patents to meet the technological nexus standard.

The court finds that the '256 and '218 Patents are not sufficiently similar to the '239 or '449 Patents to meet the technological nexus standard and thereby to entitle Samsung to discovery of all documents related to the Nokia or Kodak Investigations.  Although certain claim limitations between the patents overlap, the inventions described by each of the patents target different improvements to digital cameras.  Those improvements do not overlap – the '256 Patent improves digital cameras by more efficiently spreading the control of the camera to different preexisting components, the '218 Patent describes differences in viewfinder images and captured images, the '449 Patent aids in storage and retrieval of files, and the '239 Patent involves the transmission of video from a remote unit.  Given those differences, a presumption of relevance does not arise.

To the extent that the claim language does overlap between the patents, however, Samsung can establish relevance under Rule 26(b).  Apple may be right that those overlapping claim terms are just "generic camera requirements" but to the extent Apple argued in the Nokia or Kodak Investigations that its products did not meet those limitations, those arguments are relevant to Samsung's claims.

But aside from any actual overlap in the claim terms, Samsung has not shown how Apple's defenses to accusations of infringement of the '256 Patent and the '218 Patent are relevant to Samsung's claims of infringement of the '449 Patent or the '239 Patent.  If Samsung wants to

43

Case No: 12-0630 LHK (PSG)
ORDER

know the functionality of Apple's products, presumably it can and in fact has requested that information from Apple.  But as the court described above, the patents at issue in the ITC investigations differ from the patents at issue here in the technologies they describe to such an extent that the court is not persuaded that Apple's defenses to infringement allegations in those cases is relevant to Samsung's allegations of infringement of here.  Experts and third-party component manufacturers may overlap – the patents do describe digital camera technology – but those similarities do not amount to "relevance" even broadly construed.

To the extent Apple has documents from the Kodak and Nokia Investigations describing its defenses to claim limitations that overlap with claim limitations in the '239 Patent and the '449 Patent, Apple shall produce those documents to Samsung within fourteen days of this order.  In all other respects, Samsung's request for documents from the Nokia and Kodak Investigations is DENIED.

**D.      Motion to Compel Source Code**

Samsung also moves to compel Apple to produce source code that Samsung asserts is responsive but which Apple has not yet provided.  Apple responds that it has provided all of the relevant source code involving accused features, albeit after Samsung filed this motion, and so the motion is moot.  Samsung replies that, despite the recent production, Apple still has produced only source code according to its overly narrow definition of relevance rather than based on the relevance to Samsung's contentions.

Samsung in particular seeks code that operates or enables the software and hardware it identified in its infringement contentions, which apparently includes not only the entire source code for the software and hardware in the infringement contentions but also source code for iOS and Mac OS X operating systems and "any server-based source code that supports or interacts with

Case No: 12-0630 LHK (PSG)
ORDER

those software applications and hardware components."[94]  According to Samsung, even after its cursory review of the late production, Apple continues to withhold code relevant to the '058 Patent and server code relevant to the '757 Patent.

Samsung also identifies several categories of information for which it believes Apple has not yet provided all responsive documents:

- Audio Chips and Video Chips: Apple purportedly has not provided Samsung with code that enables the hardware that Apple should understand Samsung to mean from its references to "chips."

- Applications Processor: Apple purportedly has not provided code that controls how the application processor sends data to the baseband processor or Wi-Fi chips.

- Camera App: The Camera App, according to Samsung, is accused and it has functionality like the Photo App that is alleged to infringe.  Samsung maintains that source code for the app should be produced.

- YouTube App: Samsung alleges that the YouTube App serves as software that performs the functions described in the '239 Patent, and so Apple should produce all of the source code for the app.

Apple maintains that it has produced all relevant code for these categories and that any additional code that Samsung requests is irrelevant to its infringement contentions or its claims in general.  According to Apple, it needs to produce only source code regarding Samsung's accused functionalities.

Apple further objects that Samsung really wants all source code for all versions of all accused products, a request Samsung failed to make earlier and one to which it is not entitled and to which Apple should not have to respond because of the accompanying security concerns. Samsung responds that Apple's objection is nothing more than a straw-man argument and that it has never sought anything more than source code for the accused functionalities, either the code directly governing the functionality or how that functionality interacts with the hardware.  Samsung

---

[94] *See* Docket No. 496.

Case No: 12-0630 LHK (PSG)
ORDER

further contends that it needs the iOS and OSX source code because the operating systems are the only way for Samsung to track how apps interact with hardware.

The court first disposes of Apple's objections on security grounds.  It negotiated a protective order in this case to which it stipulated and that protective order has specific sections governing source code production.[95]  Apple's interests are sufficiently protected.  The court also notes that several of Apple's objections arise from the fact that Samsung did not have certain hardware or software listed in its infringement contentions.  Apple shall produce source code relating to any new components or apps the court granted Samsung leave to add to its infringement contentions.

The court is somewhat unclear what source code Samsung believes Apple has not yet produced.  But to the extent that Apple has produced only lines of code specifically targeted at the functionalities and has offered no contextual source code, the court finds that production insufficient under Rule 26(b)'s broad definition of relevance.  Apple need not produce all of its source code, but it does need to produce all of the source code for an accused functionality.  And the court is persuaded that the iOS and OSX is necessary for Samsung to understand how accused software communicates with the device hardware.

As to the audio and video "chips," the court holds Samsung to the definition it provided in its reply: chips include "integrated circuits, modules, cards, graphical processing units, codecs, encoders, decoders, image sensors, CMOS sensors, CCD sensors, and camera modules."[96]  Apple has no obligation to produce code for third-party provided components over which it does not have possession, custody, or control, but it must produce any code that it created to allow the third-party components to interact with the software or other hardware in the accused devices.  Samsung is also entitled to source code governing how the applications processor interacts with the baseband

---

[95] *See* Docket No. 328.

[96] *See* Docket No. 563 Ex. 1.

46

Case No: 12-0630 LHK (PSG)
ORDER

processor and/or the WiFi chip given Samsung's amended contention that these components comprise the "modem" required for the "means for transmitting" claim term.

Apple shall produce any outstanding source code that it has not yet produced according to the guidelines the court provides here. Apple shall make its production within fourteen days of this order.

**IT IS SO ORDERED.**

Dated: June 26, 2013

PAUL S. GREWAL
United States Magistrate Judge

Case No: 12-0630 LHK (PSG)
ORDER

United States District Court
For the Northern District of California