JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S OPPOSITION TO GOOGLE INC.'S MOTION TO QUASH APPLE'S SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND TESTIMONY**<br><br>**REDACTED**<br><br>**HEARING:** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br>Counterclaim-Defendant. | Date:      July 23, 2013<br>Time:      10:00 a.m.<br>Place:     Courtroom 5, 4th Floor<br>Judge:    Hon. Paul S. Grewal |

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO GOOGLE'S MOTION TO
QUASH APPLE'S SUBPOENAS FOR THE PRODUCTION
OF DOCUMENTS AND TESTIMONY
CASE NO. 5:12-cv-00630-LHK (PSG)

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND AND PROCEDURAL HISTORY ............................................... 2

        A.      The Preliminary Injunction Subpoenas ..................................................... 2

        B.      The Technical Issues Subpoenas................................................................ 4

        C.      The Damages Issues Subpoenas................................................................. 5

        D.      Google Moves To Quash The Damages Subpoenas Without Meeting And
                Conferring ................................................................................................. 6

        E.      Google Refuses To Comply With Apple's Deposition Subpoena ............... 7

        F.      A Post-Filing Meet And Confer Did Not Resolve The Dispute ................. 7

III.    LEGAL STANDARD ............................................................................................ 7

IV.     ARGUMENT......................................................................................................... 8

        A.      The Damages Subpoenas Are Not Untimely .............................................. 8

        B.      Google's Motion Should Be Denied Because Of Its Failure To Meet And
                Confer In Good Faith Before Filing Its Motion ....................................... 10

        C.      Google's Substantive Objections Are Without Merit ............................... 11

                1.      Apple's Requests Seek Relevant Information................................. 12

                2.      The Subpoenas Are Not Overbroad Or Duplicative, But Any Such
                        Concerns Could And Should Have Been Resolved Through Meeting
                        And Conferring With Apple........................................................... 15

                3.      Apple's Need for This Discovery Outweighs Google's Generalized
                        Assertions of Burden..................................................................... 17

        D.      Google's Failure To Comply With Apple's Properly Issued Deposition
                Subpoena Was Improper............................................................................ 17

V.      CONCLUSION..................................................................................................... 18

Gibson, Dunn &

Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allen v. United States*,
Case No. 2:03–cv–01358–DAE–RJJ, 2012 WL 5354943 (D. Nev. Oct. 26, 2012) ................... 11

*Apple Inc. v. Samsung Elecs. Co.*,
695 F.3d 1370 (Fed. Cir. 2012) .......................................................................................... 4

*Apple Inc. v. Samsung Elecs. Co.*,
Case No. 12-CV-00630-LHK (PSG), 2012 WL 1595793 (N.D. Cal. May 4, 2012) ................... 3

*Apple, Inc. v. Samsung Elecs. Co.*,
877 F. Supp. 2d 838 (N.D. Cal. 2012) .................................................................................. 4

*Barnes & Noble, Inc. v. LSI Corp.*,
Case No. C 11–02709 EMC (LB), 2012 WL 1029939 (N.D. Cal. Mar. 26, 2012) ................... 14

*Brocklesby v. United States*,
767 F.2d 1288 (9th Cir. 1985) ............................................................................................ 13

*Bryant v. Mattel, Inc.*,
Case Nos. C 04-09049 SGL (RNBx), CV 04-09059, CV 05-2727, 2007 WL 5430893
(C.D. Cal. May 18, 2007) .................................................................................................... 13

*Concepcion v. City of New York*,
Case No. 05Civ.8501(KMK)(JCF), 2006 WL 2254987 (S.D.N.Y. Aug. 4, 2006) ................... 13

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) .......................................................................................... 14

*E.E.O.C. v. ABM Indus. Inc.*,
Case No. 1:07-cv-01428-LJO-TAG, 2008 WL 5385618 (E.D. Cal. Dec. 23, 2008) ................... 8

*Elan Microelectronics Corp. v. Apple, Inc.*,
Case No. C 09–01531 RS (PSG), 2011 WL 4048378 (N.D. Cal. Sept. 09, 2011) ................... 15

*Flanagan v. Wyndham Int'l Inc.*,
231 F.R.D. 98 (D.D.C. 2005) ............................................................................................... 15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ..................................................................................... 13

*Hertenstein v. Kimberly Home Health Care, Inc.*,
189 F.R.D. 620 (D. Kan.1999) ............................................................................................ 11

*In re Coan*,
Case No. C 06-80350 MISC SI, 2007 WL 128010 (N.D. Cal. Jan. 12, 2007) ..................... 7, 18

*In re Google Litig.*,
Case No. C 08–03172 RMW (PSG), 2011 WL 286173 (N.D. Cal. Jan. 27, 2011) ............... 8, 12

*In re Lloyd's Am. Trust Fund Litig.*,
Case No. 96-1262, 1998 WL 50211 (S.D.N.Y. Feb. 6, 1998) ................................................. 13

*Integra Lifesciences I, Ltd. v. Merck LGaA*,
190 F.R.D. 556 (S.D. Cal. 1999) ........................................................................................... 9

*King v. Fidelity Nat'l Bank of Baton Rouge*,
712 F.2d 188 (5th Cir. 1983) ............................................................................................... 18

Gibson, Dunn &

Crutcher LLP

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) ................................................................................ 15

*Pioche Mines Consol., Inc. v. Dolman*,
  333 F.2d 257 (9th Cir. 1964) ............................................................................. 7, 18

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
  Case No. 11–cv–2226 SI (KAW), 2013 WL 1209338 (N.D. Cal. Mar. 25, 2013) .................... 14

*Powerlift, Inc. v. Mark Indus., Inc.*,
  Case No. 86 C 2055, 1987 WL 12177 (N.D. Ill. June 9, 1987) .................................. 13

*Quiroz v. Cate*,
  Case No. C 11–0016 LHK (PR), 2012 WL 3236490 (N.D. Cal. Aug. 6, 2012) ....................... 8

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ............................................................................ 14

*Rice v. United States*,
  164 F.R.D. 556 (N.D. Okla. 1995) ......................................................................... 9

*Siano Mobile Silicon, Inc. v. Mavcom, Inc.*,
  Case No. C–10–04783 LHK (PSG), 2011 WL 1483706 (N.D. Cal. Apr. 19, 2011) ................... 8

*Spectralytics, Inc. v. Cordis Corp.*,
  649 F.3d 1336 (Fed. Cir. 2011) .......................................................................... 16

*Viacom Int'l, Inc. v. YouTube, Inc.*,
  Case No. C 08-81029 SI, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ....................... 8, 16, 17

*Viacom Int'l, Inc. v. YouTube, Inc.*,
  Case No. C–08–80211 MISC. JF (PVT), 2009 WL 102808 (N.D. Cal. Jan. 14, 2009) ................ 7

*Visto Corp. v. Smartner Info. Sys., Ltd.*,
  Case Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL
  218771 (N.D. Cal. Jan. 29, 2007) ....................................................................... 16

*Vondersaar v. Starbucks Corp.*,
  2013 WL 1915746 (N.D. Cal. May 8, 2013) .............................................................. 8

*Wiwa v. Royal Dutch Petroleum Co.*,
  392 F.3d 812 (5th Cir. 2004) ............................................................................. 15

**Rules**

Fed. R. Civ. P. 26(b) .......................................................................................... 8, 17

Fed. R. Civ. P. 45(a) .......................................................................................... 7, 8

Fed. R. Civ. P. 45(c) .......................................................................................... 8, 18

Fed. R. Evid. 702 ............................................................................................... 15

Gibson, Dunn &
Crutcher LLP

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

In its motion to quash Apple's properly served June 4, 2013 subpoenas, Google professes to be shocked that Apple would seek discovery from it through subpoenas allegedly served "at the eleventh hour" (more accurately, 34 days prior to the close of fact discovery), given that Google has previously been required to provide other discovery in this case, and claims to have done so with an "explicit intent of extinguishing its discovery obligations to Apple." *See* Google Memorandum of Points and Authorities ("Google Mem.") at 6-7.  Google's posture as a discovery victim is sharply at odds with reality.

Apple has twice before sought discovery from Google through document subpoenas, in each instance served with an accompanying deposition subpoena seeking testimony from a corporate witness on subject matters directly corresponding to the categories of documents to be produced.  On both prior occasions, Apple was required to seek judicial intervention to obtain discovery of relevant information from Google, first on issues limited to Apple's motion for a preliminary injunction against the sale of the Galaxy Nexus, and subsequently in regard to technical issues critical to infringement, *viz*, the design, development and/or implementation of the accused functionality in Android operating systems manufactured for Samsung by Google.  Apple's third set of document and deposition subpoenas—focused primarily on damages and injunctive relief-related issues—were timely served and seek relevant, non-cumulative evidence from Google.  Once again, however, Apple has been forced into motion practice in order to obtain discoverable information from Google; this time as a result of Google's motion to quash Apple's June 4, 2013 subpoenas on the asserted ground that the subpoenas are unduly burdensome.

In defiance of this Court's rules, Google made a tactical choice to affirmatively avoid any negotiation whatsoever over the scope of Apple's allegedly burdensome requests before filing its motion.  Although Google advances the perfunctory assertion that it met and conferred with Apple's counsel before filing its motion (Google Mem. at 5), in fact, there was no meeting and there was no conferring.  Instead, on the very day that compliance with the document subpoena was due, Google's counsel issued an ultimatum to Apple's counsel to withdraw the subpoenas, which was followed by

filing a motion to quash the subpoenas at literally the last possible moment.  Critically, at no point before filing its motion did Google make any attempt to inform Apple of specifically what it contends is unduly burdensome about the requested categories of discoverable information.  In response to Google's telephonic ultimatum, Apple's counsel sought just such a discussion, but was rebuked by Google's counsel, who categorically refused to confer on that central issue.  Denial of Google's motion based on its refusal to meet and confer before resorting to motion practice is entirely justified.

No doubt because Google refused to even discuss the alleged burden that compliance with the June 4, 2013 subpoenas would require, Google chose to frame its motion to quash in absurdly absolutist terms.  *See, e.g.*, Google Mem. at 7, 11 (Apple's requests "have no conceivable relevance to the technologies at issue," and "are in no way tailored to the issues in this case").  As shown below, the requests themselves belie such hyperbole.  But, more importantly, even if Google's claims of overbreadth were well taken, which they are not, the proper resolution would be to modify the subpoena to eliminate only those aspects of the requests that subject Google to an undue burden.  Google's arguments thus only underscore how important it would have been to meet and confer, and how inappropriate it was for Google to maintain complete silence for two weeks after service of the subpoenas, then demand that the subpoenas be dropped, and immediately file a motion to quash.

Finally, Google's election to not attend the subpoenaed deposition on June 28 was improper under the Federal Rules of Civil Procedure.  Unlike document subpoenas, as to which compliance initially is excused solely by the timely assertion of written objections, a deposition subpoena requires compliance unless the subpoenaed party moves for a protective order or to quash *and* such motion is granted before the scheduled deposition date.  In this instance, Apple provided Google with 24 days' notice for the deposition.  But by waiting so long to bring its motion, Google did not obtain a timely protective order, and its refusal to produce a corporate representative for questioning on the return date was improper.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    The Preliminary Injunction Subpoenas

On February 8, 2012, Apple filed suit against Samsung, alleging that multiple Samsung smartphones and tablets infringe eight of Apple's patents.  Concurrent with the filing of its complaint,

1   Apple filed a motion for preliminary injunction seeking to enjoin Samsung from making, using,

2   offering to sell, selling within the United States, or importing into the United States, Samsung's

3   Galaxy Nexus smartphone.  *See Apple Inc. v. Samsung Elecs. Co.*, Case No. 12-CV-00630-LHK

4   (PSG), 2012 WL 1595793, at *1 (N.D. Cal. May 4, 2012).

5        On April 5, 2012, Apple served a document and deposition subpoena on Google (the "PI

6   Subpoenas").  Apple's PI Subpoenas sought documents and testimony relating to the accused

7   functionality in the Galaxy Nexus, including discovery relating to Android version 4.0 ("Ice Cream

8   Sandwich" or "ICS"), the operating system that provided much of the accused functionality in the

9   Galaxy Nexus.  For instance, Apple sought the following discovery:

10       •   A copy of the Android mobile platform, in source code form, provided to Samsung for

11          use in the Samsung Galaxy Nexus;

12       •   Documents sufficient to show any and all differences between the Android mobile

13          platform source code provided in response to above request and the Android 4.0 Ice

14          Cream Sandwich code publicly available; and

15       •   Documents sufficient to show the design, development, and implementation in

16          Android 4.0 Ice Cream Sandwich of the Slide to Unlock, Text Correction, Unified

17          Search, and Special Text Detection software, features, or functionality.

18   *See* Declaration of Shannon Mader ("Mader Decl."), Ex. 2.

19        Importantly, during the preliminary injunction phase of this action, Judge Koh entered an

20   order limiting discovery to "discovery relevant to the preliminary injunction motion."  *See* Order

21   Setting Briefing and Hearing Schedule for Preliminary Injunction Motion, filed 02/22/13, Dkt.

22   No. 37, at 2.  Google objected to the PI Subpoenas, in part, on the purported ground that they sought

23   discovery outside the scope of Judge Koh's Order.  *See Apple*, 2012 WL 1595793, at *3.  While this

24   Court ultimately ordered Google to comply with the PI Subpoenas, it expressly limited Apple's right

25   to discovery to "the four accused features as they are contained on [the Galaxy Nexus]," and

26   cautioned that Apple could not take discovery "beyond the scope of the Galaxy Nexus smartphone

27   and the four accused features."  *Id.*

28

APPLE'S OPPOSITION TO GOOGLE'S MOTION TO
QUASH APPLE'S SUBPOENAS FOR THE PRODUCTION
OF DOCUMENTS AND TESTIMONY
CASE NO. 5:12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

### B.     The Technical Issues Subpoenas

On June 29, 2012, Judge Koh granted Apple's motion for a preliminary injunction.  *See Apple, Inc. v. Samsung Elecs. Co.*, 877 F. Supp. 2d 838, 854 (N.D. Cal. 2012).[1]  Discovery then began as to issues outside the scope of the preliminary injunction motion.

On October 1, 2012, Apple served a document and deposition subpoena on Google (the "Technical Subpoenas").  *See* Mader Decl., Ex. 9.  In general, the Technical Subpoenas sought documents relating to the design, development, and implementation of the accused functionality in Android as well as source code for the same.  *Id.*, Ex. 9 at 2-5.  Other requests were directed to evidence to rebut Samsung's attacks on the validity of Apple's patents, including documents demonstrating the commercial success (and thus non-obviousness) of the accused functionality, *see, e.g.,* Request Nos. 16-17 and 35, and documents pertaining to the reexamination of Apple's '604 patent and Samsung's material support of the same, *see, e.g.*, Request Nos. 18-27.  On October 15, 2012, Google served objections.  *See* Mader Decl., Ex. 9.  Google refused to produce documents in response to several requests and severely limited its production in response to others.  *Id.*

Over the next several months, Apple corresponded at length with Google regarding its objections.  For months, Apple attempted to schedule a meet and confer, but each time Google's counsel refused.  Finally, on March 19, 2013, Google's and Apple's lead counsel met and conferred in person in Palo Alto.  During that meeting, Apple expressed its concerns about the adequacy of Google's document production, and explained that the disclosure of Google's search terms and custodians was necessary to provide visibility into its document production.  But Google refused, and Apple was forced to move to compel disclosure of Google's search terms and custodians.  *See* Apple's Motion to Compel, filed 3/26/2013, Dkt. No. 418.

The Court granted Apple's motion.  *See* Order Granting Motion to Compel, filed 5/9/2013, Dkt. No. 501.  On May 10, 2013, Google disclosed its search terms and custodians.  Those search terms and custodians proved to be overly narrow, as they failed to encompass the full scope of the functionality covered by Apple's infringement contentions.  So counsel for Google and Apple

---

[1]  Judge Koh's order was later reversed on appeal.  *See Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370 (Fed. Cir. 2012).

subsequently met and conferred in person and agreed on a set of additional search terms and custodians. Despite Google's protestations that Apple's additional search terms and custodians were unduly burdensome, Google produced only about 3,000 pages of additional documents in response to the same. *See* Google Mem., at 3.

### C. The Damages Issues Subpoenas

On June 4, 2013, Apple served a document and deposition subpoena on Google seeking documents and testimony relating to Apple's claim for damages (the "Damages Subpoenas"). *See* Declaration of Kristen J. Madigan ("Madigan Decl."), Ex. 13. Among other things, the Damages Subpoenas seek documents and testimony relating to: (1) the market for smartphones and smartphone operating systems, and the value of smartphone users, including first-time buyers (relevant to lost profits, reasonable royalties, and other remedies); (2) contemplated or implemented modifications to the accused features, and the acceptability of modified features as a substitute for accused features (relevant to damages and permanent injunctive relief); (3) Google's communications and agreements with Samsung, including communications regarding Apple's patents and communications regarding modifications to accused features (relevant to damages), as well as the production of any indemnity agreements between Google and Samsung (relevant to bias).

Contrary to Google's unfounded allegations, Apple had no "secret plan" to serve a third set of subpoenas on Google seeking the same information it had sought before. *See* Google Mem., at 4, 6.

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████ For instance, Apple's Interrogatory No. 9 asked Samsung to identify consumer demand studies relating to the accused features. Mader Decl., Ex. 4, at 13. Samsung responded that the accused features "were developed by Google, not Samsung," and that "Samsung is presently unaware of any consumer studies, analyses, or reports regarding these features." *Id.* Samsung also objected to numerous requests for production on the ground that the request "seeks documents that are not within Samsung's possession, custody or control," to the extent

it seeks information regarding "devices in which the accused features were designed by Google or another third party."  *Id.*, Ex 7 ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████

### D. Google Moves To Quash The Damages Subpoenas Without Meeting And Conferring

Production of documents pursuant to the June 4, 2013 document subpoena was due on June 18, 2013.  Minutes before the midnight deadline, Google filed its motion to quash the Damages Subpoenas.  *See* Google's Motion to Quash Apple's Subpoenas for the Production of Documents and Testimony filed 6/18/13, Dkt. No. 614.  Google filed the motion without once having made any attempt to meet and confer with Apple regarding the scope of the Damages Subpoenas, or to propose steps that could be taken to mitigate any allegedly undue burden in responding to the same—even though Apple and Google were communicating on an almost daily basis between June 4 and June18 regarding deposition scheduling and other discovery issues.  *See* Valek Decl., ¶ 4.

As early as June 8, 2013, Apple asked Google if it intended to produce documents and testimony in response to the Damages Subpoenas.  *Id.*, ¶ 3.  But Google's counsel refused to provide a response.  *Id.*  Indeed, Google made no attempt to even contact Apple regarding the subpoenas until midday on June 18, 2013—the day on which its response was due.  *Id.*, ¶ 5.  When Google did call Apple's counsel, it was only to state that Google would move to quash the subpoenas that day if Apple did not agree to withdraw the subpoenas in their entirety.  *Id.*  The only basis that Google gave for its demand was "undue burden," and Google's counsel refused to engage in any discussion beyond those two words.  When Apple's counsel affirmatively requested to discuss the specifics of the alleged burden, Google's counsel categorically refused.  *Id.*  In other words, what Google's

1   motion describes as an effort to meet and confer consisted of nothing more than the issuance of an

2   ultimatum intended to foreclose, not invite, discussion.

### E.   Google Refuses To Comply With Apple's Deposition Subpoena

4   Apple's deposition subpoena noticed Google's deposition for June 28, 2013.  Madigan Decl.,

5   Ex. 13.  In advance of that deposition, Apple wrote to Google explaining that it intended to proceed

6   with the deposition as noticed because under governing law the mere filing of a motion to quash does

7   not excuse timely compliance with a deposition subpoena.  Valek Decl., Exs. 3, 5 (citing *Pioche*

8   *Mines Consol.*, *Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964); *In re Coan*, Case No. C 06-80350

9   MISC SI, 2007 WL 128010, at *2 n.3 (N.D. Cal. Jan. 12, 2007)).  But despite not having obtained an

10   order quashing or staying the deposition, Google refused to comply with Apple's subpoena and

11   informed Apple that it would not appear for deposition on June 28, 2013.  *See* Valek Decl., Ex. 4.

### F.   A Post-Filing Meet And Confer Did Not Resolve The Dispute

13   Subsequent to the filing of Google's Motion, *Apple* reached out to Google and requested to

14   meet and confer regarding the Damages Subpoenas.  *Id.*, Ex. 3 ("While Apple is unwilling to simply

15   withdraw the important discovery requests in its subpoenas, we are willing to meet in order to

16   understand, and explore ways to mitigate, the alleged burden to Google on a request-by-request

17   basis.")  Finally, on July 1, 2013, the parties met and conferred by phone.  *Id.*, ¶ 14.  During that call,

18   Apple repeatedly attempted to elicit information about the specific burden that the Damages

19   Subpoenas allegedly imposed.  *Id.*  Rather than provide a substantive response, however, Google

20   repeatedly directed Apple to the arguments that it made its motion to quash, and sought to have

21   Apple unilaterally propose restrictions on the scope of its subpoenas.  The meet and confer call ended

22   without Google agreeing to produce a single document.  *See* Valek Decl., ¶ 14.

### III.   LEGAL STANDARD

24   Federal Rule of Civil Procedure 45 "authorizes issuance of a subpoena to command a

25   nonparty to produce designated documents, electronically stored information, or tangible things in its

26   possession, custody or control."  *Viacom Int'l, Inc. v. YouTube, Inc.*, Case No. C–08–80211 MISC.

27   JF (PVT), 2009 WL 102808, at *2 (N.D. Cal. Jan. 14, 2009) (citing Fed. R. Civ. P. 45(a)(1)(A)(iii)).

28

1   Rule 45 also authorizes issuance of a subpoena to command a nonparty to attend and testify at a

2   specified time and place.  Fed. R. Civ. P. 45(a)(1)(A)(iii).

3        The recipient of a subpoena may timely move for an order quashing or modifying a subpoena

4   that "subjects [the recipient] to undue burden."  Fed. R. Civ. P. 45(c)(3)(A).  In deciding whether a

5   subpoena imposes an undue burden, a court must consider "'the needs of the case, the amount in

6   controversy, the parties' resources, the importance of the issues at stake in the action, and the

7   importance of discovery in resolving the issues.'"  *Viacom Int'l, Inc. v. YouTube, Inc.*, Case No. C

8   08-81029 SI, 2008 WL 3876142, at *5 (N.D. Cal. Aug. 18, 2008) (quoting Fed. R. Civ. P. 26(b)

9   (2)(C)(iii)).  "The party moving to quash a subpoena bears the burden of persuasion."  *Vondersaar v.*

10  *Starbucks Corp.*, Case No. C 13–80061 SI, 2013 WL 1915746, at *2 (N.D. Cal. May 8, 2013).

11       To meet its burden, the moving party must provide more than generic attorney argument and

12  unsupported assertions that responding to the subpoena imposes an undue burden.  *See, e.g.*, *Quiroz*

13  *v. Cate*, Case No. C 11–0016 LHK (PR), 2012 WL 3236490, at *4 (N.D. Cal. Aug. 6, 2012) ("A

14  recitation that the discovery request is 'overly broad, burdensome, oppressive and irrelevant' is not

15  adequate to voice a successful objection."); *Siano Mobile Silicon, Inc. v. Mavcom, Inc.*, Case No.

16  C 10–04783 LHK (PSG), 2011 WL 1483706, at *4-5 (N.D. Cal. Apr. 19, 2011) (rejecting claims of

17  undue burden where resisting party supported its claims of undue burden only "by way of attorney

18  argument"); *E.E.O.C. v. ABM Indus. Inc.*, Case No. 1:07-cv-01428-LJO-TAG, 2008 WL 5385618, at

19  *8 (E.D. Cal. Dec. 23, 2008) ("Defendants have not offered a declaration or an affidavit sufficiently

20  describing the particulars of the burden compliance with such a request would impose on Defendants.

21  A bare assertion of undue burden without factual allegations does not suffice.").  As this Court has

22  explained, "particularized evidence regarding the undue burden" is required, and in the absence of

23  such evidence a court may "conclude that no such undue burden is present."  *See In re Google Litig.*,

24  Case No. C 08–03172 RMW (PSG), 2011 WL 286173, *5 (N.D. Cal. Jan. 27, 2011).

25  **IV.   ARGUMENT**

26       **A.   The Damages Subpoenas Are Not Untimely**

27       Google first moves to quash the Damages Subpoenas on the ground that they are untimely.

28  *See* Google Mem. at 6-7.  But the fact discovery cutoff is July 8, 2013, and Apple served the

APPLE'S OPPOSITION TO GOOGLE'S MOTION TO
QUASH APPLE'S SUBPOENAS FOR THE PRODUCTION
OF DOCUMENTS AND TESTIMONY
CASE NO. 5:12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

subpoenas on June 4, 2013—over a month earlier.  This is hardly "last-minute," and it is certainly not untimely.  In effect, Google is claiming that third-party subpoenas are subject to some sort of "pre-cutoff cutoff."  But the case law is clear that subpoenas under Rule 45 are discovery and, thus, subject to the same time limits that apply to all other methods of discovery.  *See, e.g.*, *Integra Lifesciences I, Ltd. v. Merck LGaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999) ("Case law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case."); *Rice v. United States*, 164 F.R.D. 556, 558 (N.D. Okla. 1995) ("[T]he Rule 45 *subpoenas duces tecum* at issue before the Court are a form of discovery and, therefore, are subject to the Court's discovery deadline.").  Google's claim of untimeliness is thus pure fiction, and Google's counsel is poorly positioned to even suggest untimeliness, as the same counsel served nearly ***fifty*** subpoenas on third parties on Samsung's behalf on June 18, 2013, the same day they moved on Google's behalf to quash Apple's Subpoenas (two weeks after the subpoenas at issue were served by Apple).  *See* Mader Decl., Ex. 15.  Indeed, since June 4, Samsung has served approximately 95 subpoenas.  *See* Mader Decl., ¶ 16.

At bottom, Google's complaint seems to be that Apple delayed serving the new subpoenas until after the parties had reached a compromise as to the scope of Google's production in response to the Technical Subpoenas.  Google's assertion that Apple did not "inform Google it would serve further *subpoenas* or seek additional discovery *beyond* the scope of the parties' ongoing discussions" rings hollow.  (Google Mem. at 4).  Google is a highly sophisticated company with vast resources at its disposal, including the same sophisticated counsel who represent Samsung in this lawsuit.  Obviously, Google knew and understood that Apple could serve a new subpoena before the fact discovery cutoff.  Yet, at no point during the parties' extensive negotiations over compliance with the Technical Subpoenas did Google seek assurances that Apple would not serve another subpoena, or condition its production on Apple's agreement not to serve another subpoena.  *See* Valek Decl., ¶ 15.  Indeed, Google does not even attempt to offer any evidence that it communicated to Apple's counsel its alleged "intent" to be immune from proper third-party discovery, much less that it obtained Apple's agreement.  Thus, the July 8, 2013 fact discovery cut-off date provided the only timing

APPLE'S OPPOSITION TO GOOGLE'S MOTION TO
QUASH APPLE'S SUBPOENAS FOR THE PRODUCTION
OF DOCUMENTS AND TESTIMONY
CASE NO. 5:12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

limitation on Apple, and Apple abided by that deadline through service of its Damages Subpoenas more than one month earlier than the cut-off date.

Google's suggestion that Apple's service of three document subpoenas and three related deposition subpoenas on it somehow exceeds the *numerical limit* of subpoenas that can be served on a non-party is also utterly baseless.  Samsung, through the same counsel it shares with Google, has served two or more subpoenas on over *sixty* non-parties.  Samsung has served *eight* subpoenas on Microsoft alone, including one on June 6, 2013—two days after Apple served the Damages Subpoenas on Google.  *See* Mader Decl., Ex. 16.[2]  Indeed, Samsung has served multiple subpoenas on individual third parties, including five on Tim Harrington and four on Steve Wolfe—both of whom Samsung subpoenaed most recently on June 18, 2013.  *Id.*

There is no "non-party" with a greater connection to the subject matter of this case than Google.  Google developed Android, which is the operating system used in the accused devices and which provides much of the accused functionality.  Moreover, Google and Samsung jointly developed the Galaxy Nexus, which is the accused product that was the subject of Apple's motion for a preliminary injunction.  Indeed, unlike any other third party in this case, Google affirmatively chose to involve itself in this action by providing declarations from its engineers to support Samsung's positions during the preliminary injunction phase of the case.  Google cannot pretend that it is a disinterested non-party or that because of its "non-party" status it does not need to provide the relevant and discoverable information that Apple seeks.

**B.      Google's Motion Should Be Denied Because Of Its Failure To Meet And Confer In Good Faith Before Filing Its Motion**

Google's counsel, who also represents Samsung in this case and who met and conferred at length with Apple's counsel regarding the Technical Subpoenas, is well aware of this Court's meet and confer requirements.  *See* Order Setting Briefing and Hearing Schedule for Preliminary Injunction Motion, filed 02/22/13, Dkt. No. 37, at 2.  Indeed, in a previous dispute with Apple over the PI Subpoenas, Google took the position that the word "parties" in the Court's order requiring pre-

---

[2]  Attached as Exhibit 16 to the Declaration of Shannon Mader is a chart listing third parties on which Samsung has served two or more subpoenas.

Gibson, Dunn &
Crutcher LLP

motion meet and confer discussion applies to "any party to a discovery dispute, ***whether or not also a party to the case.***"  *See* Non-Party Google Inc.'s Opposition to Apple Inc.'s Motion to Compel Discovery of Documents, Information or Objections, filed 4/28/12, Dkt. No. 142, at 11 (emphasis added).  Yet, in complete disregard of the very meet and confer requirement on which it previously relied, Google filed its motion to quash without having made any attempt to meet and confer with Apple in good faith.  For this reason alone, the Court should deny Google's motion.  *See, e.g.*, *Allen v. United States*, Case No. 2:03–cv–01358–DAE–RJJ, 2012 WL 5354943, at 82 (D. Nev. Oct. 26, 2012) (denying motion to quash for failure to meet and confer); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999) (same).

Google's failure to meet and confer is particularly egregious here.  Google is not claiming that the Damages Subpoenas are defective on their face, that service was invalid, or that the discovery Apple seeks is precluded by the attorney-client or other privilege.  Instead, Google's objections— relevance, burden, overbreadth and duplicativeness (the exact same boilerplate objections that Google lodged in response to Apple's prior subpoenas)—are precisely the kind of objections that can be substantially narrowed and even resolved through the meet and confer process, as Google's recitation of the prior meet and confers with Apple clearly demonstrates.

Ignoring the rules of this Court, however, Google decided not to meet and confer, but to wait until the eleventh hour—indeed minutes before the midnight hour—to move to quash.  Google's disregard for the procedures of this Court should not be rewarded and, in any event, its objections are meritless.

### C.    Google's Substantive Objections Are Without Merit

Google offers no evidence to support its conclusory assertion of undue burden.  The only facts Google alleges in its motion relate to the effort it undertook to respond to Apple's Technical Subpoenas.  No declaration or other evidence is submitted by Google to support its conclusory assertion of undue burden by describing the process or resources it would take to comply with the requests in Apple's Damages Subpoenas.  Indeed, the declaration of Kristen J. Madigan, submitted by Google in support of its motion to quash, is almost entirely a vehicle for attaching correspondence about previous discovery requests.  Ms. Madigan does not state, nor could she, that Google

Gibson, Dunn &
Crutcher LLP

communicated the basis for its allegation that the Damages Subpoena is unduly burdensome to Apple before filing its motion to quash.

The discovery demands made on Google to date, including the June 4, 2013 document subpoena and the accompanying deposition subpoena, have been modest in scope (although it continues to produce documents, as recently as June 30, 2013, Google's total production in this case so far remains less than 65,000 pages), particularly when compared to the extraordinary amount of discovery provided by the parties to this case. With respect to the alleged burden of responding to Apple's Damages Subpoenas, Google provides no particularized allegations, much less the actual evidence that this Court's precedent requires. Google has no excuse for this failure. This Court has rejected Google's past attempts to avoid discovery by claiming undue burden in other cases where, like here, "Google offers no *evidence*—no declaration, no deposition testimony, nothing—providing a concrete or particularized assessment of the risk or burden of such a production." *In re Google Litig.*, 2011 WL 286173, at *5 (emphasis in original). Indeed, in just that one opinion this Court rebuked Google on precisely this point three separate times. *Id.* at *5-6. Google's failure to learn from its past mistakes and provide particularized evidence, rather than just generalized attorney argument, dooms its motion here.

### 1.   Apple's Requests Seek Relevant Information

Although the purported basis for its motion is burden, Google also claims that *some* of Apple's requests are irrelevant and therefore that *all* of the requests in Apple's Damages Subpoenas should be quashed. Even putting aside that relevance is not enumerated as a basis for quashing a subpoena under Rule 45, Google's argument is without foundation or logic. Even Google does not dispute that many of Apple's requests, for example, those relating to "Accused Feature Alternations," *i.e.,* Google's attempts to implement alternatives to the accused functionalities after the learning of Apple's infringement allegations in this case, and consumer reaction thereto (Request Nos. 9-12, 18-23 and Topic Nos. 14-17, 18-23), are highly relevant to issues such as damages and injunctive relief.

Moreover, Google is wrong when it says that Apple's other requests, including its requests for any indemnification agreements, are not relevant to issues in this case. Specifically, Apple's requests relating to any indemnification agreements that may exist between Google and Samsung with respect

Gibson, Dunn &
Crutcher LLP

to the subject matter of this case (Request Nos. 24, 29 and Topic Nos. 24, 28) are relevant to explaining potential bias of trial witnesses employed by Google.  Samsung has identified dozens of Google employees as persons with knowledge that it may rely on to support its case—if Google is obligated to indemnify Samsung with respect to any aspect of this case, Apple should be able to use evidence of that obligation to show the bias of those Google witnesses at trial.  Bias is a well-established basis to allow the discovery of indemnity agreements.  *See, e.g.*, *Brocklesby v. United States*, 767 F.2d 1288, 1293-94 (9th Cir. 1985) (affirming admission of indemnity agreement at trial to show the "relationship of the parties" and "to attack the credibility" of witnesses).[3]  The cases relied on by Google on pages 8 and 9 of their motion to support the proposition that information concerning indemnity is not within the scope of discoverable material where the case does not arise out of an indemnity obligation are entirely distinguishable.  Only one of Google's cited cases, *In re Lloyd's Am. Trust Fund Litig.*, Case No. 96-1262, 1998 WL 50211 (S.D.N.Y. Feb. 6, 1998), even addresses the issue of bias.  In that case, the court held that an indemnification agreement between Lloyd's and Citibank did not need to be produced because the "relationship that exists between Lloyd's and Citibank, as defined by the [Lloyd's American Trust Deed] is, in itself, sufficient to demonstrate potential bias."  *Id.* at *20.  That is not the case here.  Absent discovery into communications between Google and Samsung, including in regard to known possible indemnity agreements, the existence of bias on the part of Google employees who testify for Samsung will not be obvious to the jury merely from the relationship between Google and Samsung.  Thus, discovery of all such agreements should be permitted.

Apple's requests for information regarding Google's Android-related patent licenses (Request Nos. 26-28 and Topic Nos. 26-27) are likewise relevant.  The royalty rate paid for comparable licenses is one of the key factors considered in calculating reasonable royalty damages.  *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Google's argument

---

[3]  *See also Bryant v. Mattel, Inc.*, Case Nos. C 04-09049 SGL (RNBx), CV 04-09059, CV 05-2727, 2007 WL 5430893, at *6 (C.D. Cal. May 18, 2007) ("Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility."); *Concepcion v. City of New York*, Case No. 05 Civ. 8501 (KMK) (JCF), 2006 WL 2254987, at *4 (S.D.N.Y. Aug. 4, 2006) (finding an indemnification agreement relevant to bias); *Powerlift, Inc. v. Mark Indus., Inc.*, Case No. 86 C 2055, 1987 WL 12177, at *2 (N.D. Ill. June 9, 1987) (finding indemnification agreements "relevant to credibility issues and the appropriate subject of discovery").

that the Federal Circuit's decision in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), limits the discoverability of license agreements has been rejected by courts in this District. *See Positive Techs., Inc. v. Sony Elecs., Inc.*, Case No. 11–cv–2226 SI (KAW), 2013 WL 1209338 (N.D. Cal. Mar. 25, 2013) (*ResQNet.com* "address[es] *admissibility* at trial, not discoverability." (emphasis added)); *Barnes & Noble, Inc. v. LSI Corp.*, Case No. C 11–02709 EMC (LB), 2012 WL 1029939, at *4 n.5 (N.D. Cal. Mar. 26, 2012) ("[*ResQnet*] dealt with license agreements that were entered into evidence at trial and did not deal with what license agreements are discoverable."). Consistent with these cases, Google is not entitled to determine unilaterally what technologies are "non-comparable," much less to refuse to produce licenses that *are* comparable in the event that Apple's requests also encompass licenses for any non-comparable technologies.

Finally, Apple's requests for information relating to the market for smartphones and smartphone operating systems is highly relevant to Apple's lost profit damages and injunctive relief claims. *See* Madigan Decl., Ex. 13 (Request and Topic Nos. 1-8). Consumer demand for the patented product generally, as opposed to just the specific patented features, is one of the *Panduit* factors for proving lost profit damages. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("[T]he first *Panduit* factor simply asks whether demand existed for the patented product, i.e., a product that is covered by the patent in suit or that directly competes with the infringing device.") (internal quotations omitted). Therefore, documents showing competition between the Android and iOS platforms and relative market share (Request and Topic Nos. 1-3) are relevant because they tend to show that sales of Android devices, like the accused Samsung products, result in lost sales of Apple's iOS products. Indeed, on behalf of Samsung, Quinn Emanuel has served nearly identical requests on Apple. *See* Mader Decl., Exs. 1, 3 (Request Nos. 22-24, 35-37, 74-76). In addition to damages, documents relating to platform stickiness and the tendencies of first-time buyers to stay with a particular mobile operating system (Request and Topic Nos. 4-8) are relevant to Apple's claim for injunctive relief and particularly the irreparable harm Apple suffers from Samsung's infringement. Again, confirming the relevancy of such information, Quinn Emanuel propounded almost identical requests on Apple. *Id.* (Request Nos. 41 and 75).

Gibson, Dunn &
Crutcher LLP

The fact that Samsung contends that non-accused features drive the market for Android and its accused products does not shield Google's documents pertaining to the mobile device marketplace from discovery.  Quite the opposite, Apple should be allowed to discover Google's own analyses of the market for mobile devices and mobile operating systems in order to test Samsung's contention. Indeed, as noted above, Google's lawyers have sought and obtained exactly such discovery from Apple in this case, on behalf of their other client, Samsung.  Apple is entitled to discover similar information from Google, if it exists, regardless of whether Google agrees with Apple's theories for damages and injunctive relief.  *See, e.g., Elan Microelectronics Corp. v. Apple, Inc.*, Case No. C 09–01531 RS (PSG), 2011 WL 4048378, at *2 (N.D. Cal. Sept. 9, 2011) ("Apple might be right that Elan's damages theory is unsound, and perhaps even inadmissible under Fed. R. Evid. 702.  The discovery sought is nevertheless appropriate.  A *Daubert* challenge is the proper vehicle to test the validity of Elan's damages theory, not an opposition to a motion to compel that invites the undersigned to usurp the authority of the presiding judge to determine what damages theories should or should not go before the jury.").[4]

> **2.     The Subpoenas Are Not Overbroad Or Duplicative, But Any Such Concerns Could And Should Have Been Resolved Through Meeting And Conferring With Apple**

The Damages Subpoenas are not overbroad or duplicative, and Google's objections on those grounds are not a proper basis for quashing the subpoenas in their entirety.  *See, e.g., Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) ("The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances."); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("Generally, modification of a

---

[4]  The facts of *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003), are completely distinguishable.  In that case, Mattel served a subpoena on the San Francisco Museum of Modern Art ("MOMA"), which employed one of the defendant's experts.  *Id.* at 797.  In addition to seeking documents relating to the defendant and his work, however, the subpoena sought documents relating to the sales channels and advertising markets for artworks that *MOMA* owned. *Id.* at 797-98.  Because MOMA's own business practices were completely irrelevant to the credibility of the defendant's expert, the district court quashed the subpoena and the Ninth Circuit affirmed.  *Id.* at 813-14.  These facts bear no similarity to the situation here.  Apple did not subpoena Google because it employs one of Samsung's experts; it subpoenaed Google because Google designed and developed the operating system that provides much of the accused functionality.  *Mattel* is completely inapposite.

subpoena is preferable to quashing it outright."). Google's overbreadth claim depends on an overly restrictive understanding of the scope of discoverability, and its claim of duplicativeness ignores the fact that the Damages Subpoenas target an entirely different subset of Google employees—marketing and licensing people and business executives, not software engineers. The one exception is for the requests relating to the accused feature alterations, including the unified search alteration. But Google fails to identify a single request from Apple's prior subpoenas that sought such information. And even if Google had produced documents relating to some of the technical details of such alterations previously, Apple is not asking Google to reproduce the same documents again. Indeed, the requests and topics in the Damages Subpoenas on the subject of accused feature alterations are substantially drawn to non-technical, but highly relevant, details regarding those alternatives such as "public opinion" and "desirability to users" of those alternatives (*see, e.g.,* Request and Topic Nos. 10, 15, 19 and 21) and cost associated with implementing them (*see, e.g.*, Request and Topic Nos. 14 and 20). Such information is highly relevant as it pertains to the both the acceptability and availability to consumers to any alternatives to the accused functionality that Samsung or Google may have introduced into the accused products. *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1346 (Fed. Cir. 2011) (affirming the jury's rejection of alleged non-infringing alternatives based on evidence that they were not acceptable, nor available, to consumers). Nevertheless, to the extent there was a legitimate concern about breadth or duplicativeness, Apple has expressed its willingness to meet and confer to try to mitigate the same—just as it did with respect to the Technical Subpoenas. But Apple should not wholly be denied discovery into these topics based on Google's argument that some aspects of them may be overbroad. [5]

---

[5] Apple certainly should not be denied relevant discovery based on the misleading argument that such information is equally available from unidentified other sources. *See* Google Mem. at 12-13. If Google has proprietary information responsive to Apple's requests, then Apple should be allowed to discover the same from Google. *See, e.g., Visto Corp. v. Smartner Info. Sys., Ltd.*, Case Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007) ("[I]n appropriate circumstances, production from a third party will be compelled in the face of an argument that the 'same' documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions."); *Viacom Int'l, Inc. v. YouTube, Inc.*, Case No. C 08-81029 SI, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008) ("[T]here is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession.").

### 3.     Apple's Need for This Discovery Outweighs Google's Generalized Assertions of Burden

Even if attorney argument regarding the alleged burden of responding to Apple's past subpoenas was relevant to quashing Apple's Damages subpoenas (and it is not), there is nothing about the amount of discovery that Google has provided that is extraordinary given the scope of its involvement in and the magnitude of this case.  Specifically, Google complains that it has produced almost 65,000 pages of documents and provided witnesses for deposition on multiple continents.  But it ignores that most of those depositions so far are the direct result of Google's decision to materially aid Samsung's defense through the provision of declarations from Google's engineers.  And Google's 65,000-page production is remarkably small given its intimate involvement in developing the accused functionality and helping to position Android as a direct competitor to iOS.  By comparison, Apple has produced over a million and a half pages of documents in response to the over 1,000 requests for production that Samsung has served.  *See* Mader Decl., ¶ 18.

Moreover, any generalized claim of Google's burden is more than outweighed by "'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues.'"  *Viacom*, 2008 WL 3876142, at *5 (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)).  In *Viacom*, for instance, the court found no undue burden where the amount in controversy was large, the issues at stake were important, and the resources of the parties were significant.  *Id.*  These same circumstances are present here.  The amount in controversy is massive, the issues at stake are just as important as the issues in *Viacom*, Google's resources are substantial, and the discovery at issue directly relates to critical issues, including the extent of damages and the availability of injunctive relief.

### D.     Google's Failure To Comply With Apple's Properly Issued Deposition Subpoena Was Improper

Google does not claim that Apple's deposition subpoena was improperly served or facially invalid.  Yet, despite not having obtained an order quashing the subpoena or staying compliance therewith, Google failed to appear on the date for which its deposition was noticed.  Google's actions are plainly improper under the Federal Rules of Civil Procedure.

Gibson, Dunn &
Crutcher LLP

1    Rule 45 treats deposition and document subpoenas very differently in one important respect.

2    As to document subpoenas, Rule 45 requires the moving party to seek an order compelling

3    compliance if the responding party timely serves written objections.  *See* Fed. R. Civ. P. 45(c)(2)(B).

4    For deposition subpoenas, however, there is no corresponding rule.  Accordingly, while "written

5    objection[s] may excuse compliance with a subpoena *duces tecum*," they do not "excuse compliance

6    with a deposition subpoena."  *In re Coan*, Case No. C 06-80350 MISC SI, 2007 WL 128010, at *2

7    n.3 (N.D. Cal. Jan. 12, 2007).  Rather, "a deposition subpoena may only be challenged by moving to

8    quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving

9    for a protective order pursuant to Rule 26(c)."  *Id.* at *2.  In either case, the motion "must be made

10   promptly," allowing it to "be heard *and granted before* the scheduled deposition."  *Id.* (internal

11   quotations omitted) (emphasis in original).  *See also Pioche Mines Consol.*, *Inc. v. Dolman*, 333 F.2d

12   257, 269 (9th Cir. 1964) ("Rule 30(b) places the burden on the proposed deponent to get an order, not

13   just make a motion."); *King v. Fidelity Nat'l Bank of Baton Rouge*, 712 F.2d 188, 191 (5th Cir. 1983)

14   ("[A] motion to quash must be not only made but *granted* before the scheduled deposition to excuse

15   compliance.") (emphasis in original).

16   Here, Google filed a motion to quash, but did not obtain an order quashing the subpoena or

17   staying compliance therewith.  As such, Google was required to attend its properly noticed deposition

18   or obtain a continuance.  It did neither.  Google's actions are improper and without justification.

19   **V.    CONCLUSION**

20   For the foregoing reasons, Apple respectfully requests that the Court DENY Google's Motion

21   to Quash Apple's Subpoenas for the Production of Documents and Testimony.

22                                          GIBSON, DUNN & CRUTCHER LLP

23

24   Dated:  July 2, 2013              By:  _____*/s/ H. Mark Lyon*_____

25                                               H. Mark Lyon

26                                          ***Attorneys for Plaintiff Apple Inc.***

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil Local Rule 5.1, and will be served on all counsel for Google, Inc. who have consented to electronic service in accordance with Civil Local Rule 5.1 via the Court's ECF system.

Dated:  July 2, 2013                          By:   _____*/s/ H. Mark Lyon*_____

                                                                H. Mark Lyon

Gibson, Dunn &

Crutcher LLP