# EXHIBIT A

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Apple Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    12-cv-00630-LHK |
| | ) | |
| Samsung Electronics Co., Ltd. et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Intel Corporation
   2200 Mission College Boulevard, Santa Clara, CA 95054-1549

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Attachment A.

| Place:    Quinn Emanuel Urquhart & Sullivan, LLP<br>        555 Twin Dolphin Drive, 5th Floor<br>        Redwood Shores, California 94065 | Date and Time:<br>Oct. 26, 2012 at 12 p.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   Oct. 15, 2012

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____ Samsung Electronics Co., Ltd. et al. _____ , who issues or requests this subpoena, are:
Michael L. Fazio, Quinn Emanuel Urquhart and Sullivan, LLP,  865 S. Figueroa Street, 10th Floor, Los Angeles, California, 90017; Email: michaelfazio@quinnemanuel.com; Telephone: 213-443-3000

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.      12-cv-00630-LHK

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# ATTACHMENT A

## DEFINITIONS

The following definitions shall apply where used in this Attachment:

1.      "Intel," "You," and "Your" means Intel Corporation, and all its predecessors and successors (merged, acquired, or otherwise), and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, or other representative of Intel, including counsel and patent agents, in any country.   "Intel" includes, but is not limited to, Intel Americas, Inc. ("IAI"), Intel Mobile Communications ("IMC") and Infineon Technologies AG's former Wireless Solutions Business.

2.      "Infineon," means Infineon Technologies AG and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Infineon's control, or which controls Infineon.

3.      "Plaintiff" and "Apple" mean Apple Inc., and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Apple's control, or which controls Apple.

4.      "Defendant" and "Samsung" mean Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

5.      "This Lawsuit" shall mean the action entitled *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 12-cv-00630-LHK.

6.      "Software" shall include source code, hardware code, machine code, object code, assembly code, or code written in any programming language, and code that can be compiled or acted upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code.   With regard to Software, "Related Documentation" further includes the architecture designs, logic diagrams, flow diagrams, technical descriptions

1

and flowcharts associated with, or used in the design of, such Software, and all descriptive or explanatory documentary documents relating to it.

7.      "Executable Software" shall mean computer files containing encoded instructions capable of being executed by a processing unit (e.g., central processing unit, micro-controller), and any release notes describing the features or modifications of such files.   The term shall include, without limitation, firmware, executable binary files, operating systems, applications, and programs.   With regard to Executable Software, "Related Documentation" further includes the architecture designs, logic diagrams, flow diagrams, technical descriptions and flowcharts associated with, or used in the design of, such Executable Software, and all descriptive or explanatory documentary documents relating to it.

8.      "Hardware" includes all constituent parts of a device including, but not limited to, assemblies, subassemblies, modules, individual integrated circuits, chipset, chipsets, software, hardware-based capabilities, and/or application specific integrated circuits.

9.      "Patents-in-Suit" refers to U.S. Patent Nos. 7,756,087 and 7,551,596.

10.      "087 Patent" refers to U.S. Patent No. 7,756,087.

11.      "596 Patent" refers to U.S. Patent Nos. 7,551,596.

12.      "Related Patent/Application" refers to any U.S. or foreign patent or patent application related to the Patent-in-Suit, including all parent, divisional, continuation, continuation-in-part, reissue, reexamination, extension, and foreign counterpart patents and applications thereof.

13.      "Apple Accused Instrumentality" or "Apple Accused Instrumentalities" refers to the iPhone 4, iPhone 4S, iPhone 5, iPad 2 3G, and New iPad, and all versions and models thereof.

14.      "Apple Manufacturer(s)" refers collectively and individually to the manufacturers of the Apple Accused Instrumentalities, including but not limited to Foxconn Electronics, Inc., Quanta Computer, Inc., Hon Hai Precision Industry Co. Ltd., Pegatron Corp., and all their predecessors, successors, parents, divisions, subsidiaries, and affiliates thereof, and all officers,

agents, employees, counsel and other persons acting on their behalf, or any other person or entity subject to their control or which controls them.

15.     "Intel Baseband Processor(s)" refers to any circuit, chip, or processor that is capable of or sold for use in implementing, supporting, processing, or providing wireless communications functions and that is or has been sold to or purchased by Apple or Apple Manufacturers or provided for use in, or otherwise known by You to be used in, an Apple Accused Instrumentality, including any product or product line acquired from Infineon by Intel, further including Intel re-branded, re-labeled, or re-named versions of Infineon products, and all versions or models thereof.   This includes, but is not limited to, the following: Infineon PMB 9801; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by Apple or Apple Manufacturers, or provided for use in or otherwise known by you to be used in an Apple Accused Instrumentality.

16.     "Samsung/Intel Agreement" shall mean the Patent Cross License Agreement Between Samsung Electronics Co., LTD. and Intel Corporation having an effective date of January 1, 1993 and all Amendments thereto, including but not limited to the Amendment signed in 2003 (Amendment 1) and the Amendment signed in 2004 (Amendment 2).

17.     "Wireless Standard(s)" shall mean any wireless standard or wireless technical specification, including WCDMA, UMTS, HSUPA, HSDPA, HSPA+, 3GPP Release 5, 3GPP Release 6, and 3GPP Release 7.

18.     "Communication(s)" shall mean, without limitation, any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including but not limited to electronic communications and electronic mail.

19.     "Document(s)" shall have the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.   The term shall include within its meaning, by way of example and not limitation, any and all accounts, analyses, books, CDs, calendars, commercial paper, communications, correspondence, DVDs, e-mail, films, financial

3

statements, floppy disks, hard disks, inter-office memoranda, invoices, ledgers, letters, licenses, logs, memoranda, microfilms, minutes, notes, notes of conversations, notes of meetings, notes of telephone calls, office communications, photographs, printouts, recordings of conversations (whether written or electronic), reports, schedules, storage tape, task lists, telegrams, telephone bills, videotapes or other video recordings, and any differing versions of the foregoing whether denominated formal, informal or otherwise, as well as copies of the foregoing which differ from the original in any way, including handwritten notations or other written or printed matter.   The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently in documentary form or not. A draft or non-identical copy of a Document is a separate Document within the meaning of this term.

      20.    "Identify" when used in reference to:

      (1)    An individual, means to state his or her full name, present or last known residential and business addresses, present or last known position and business affiliation, and if applicable, history of employment of that individual;

      (2)    A firm, partnership, corporation, proprietorship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation and to identify each agent that acted for it with respect to the matters relating to the request or answer;

      (3)    A Document, means to state the date, title, if any, subject matter, each author, each addressee or recipient if practicable, and otherwise a general description of the persons to whom the writing was distributed, the production number, and the type of document, *i.e.*, publication, letter, memorandum, book, telegram, chart, etc., or some other means of identifying the document, and its present location and custodian;

      (4)    A Communication, means to state its date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it;

(5)     A date, means to state the date and set forth the basis for Your contention that the date is responsive to the request; and

(6)     A product, service, or intellectual property, means to state all names and numbers related to the product, service, or intellectual property, and the owner, manufacturer, distributor, licensor, or dealer of the product, service, or intellectual property during the relevant time period and currently.   For a product, provide all designations for the product, from the most specific to the most general, including any model numbers or designations, version numbers or designations, and internal numbers or designations.

21.     "Person(s)" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.   The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

22.     "Any," "all," "every," and "each" shall each mean and include the other as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

23.     The terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

24.     "Thing" refers to any physical specimen or tangible item in Your possession, custody or control, including research and development samples, prototypes, productions samples and the like.

25.     The terms "referring to," "relating to," "concerning" or "regarding" shall mean containing, describing, discussing, embodying, commenting upon, identifying, incorporating, summarizing, constituting, comprising or are otherwise pertinent to the matter or any aspect thereof.

26.     The use of the singular form of any word includes the plural and vice versa, as necessary to bring within the scope of these requests for production all responses that might

5

otherwise be construed to be outside of their scope.

27.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

## <u>INSTRUCTIONS</u>

1.      This subpoena seeks Documents in existence as of the date of service hereof and to the full extent permitted by the Federal Rules of Civil Procedure.

2.      This subpoena shall apply to all Documents in your possession, custody or control as of the date of service hereof or coming into your possession, custody, or control before the date of the production.

3.      In the event that any Document called for by these requests or subsequent requests has been destroyed or discarded, that Document is to be identified by stating: (i) the author(s), addressee(s) and any indicated or blind copyee(s); (ii) the Document's date, number of pages and attachments or appendices; (iii) the Document's subject matter; (iv) the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (v) the persons who were authorized to carry out such destruction or discard; and (vi) whether any copies of the Document presently exist and, if so, the name of the custodian of each copy.

4.      Should you seek to withhold any Document based on some limitation of discovery (including privilege), you must supply a list of the Documents for which limitation of discovery is claimed, indicating:

      a.      the identity(ies) of each Document's author(s), writer(s), sender(s), or initiator(s) and their positions;

      b.      the identity(ies) of each Document's recipient(s), addressee(s), or party(ies) for whom it was intended and their positions;

      c.      the date of creation or transmittal indicated on each Document, or estimate of that date, indicated as such, if no date appears on the Document;

      d.      the general subject matter as described on each Document, or, if such description does not appear, then some other description sufficient to identify the Document; and

       e.      the claimed ground(s) for limitation of discovery (e.g., "attorney-client privilege" or "work product privilege").

5.      If any of the Documents are considered "confidential business information" or "source code," as those terms are defined in the protective order attached as Exhibit 1 ("Protective Order"), such Documents should be produced subject to the terms and provisions of the Protective Order.

6.      If no Documents are responsive to a particular request, you are to state that no responsive Documents exist.

7.      If you propound any written answers to the requests for Documents to be Produced, repeat verbatim, immediately before each answer, the request being answered.

8.      Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

9.      File folders with tabs or labels identifying Documents called for by these requests must be produced intact with such Documents.

10.      Documents attached to each other must not be separated.

## DOCUMENTS TO BE PRODUCED

1.      Documents sufficient to Identify—including the internal and external part name and number, model name or number, manufacturer, source, supplier and any version number— each Intel Baseband Processor sold to or purchased by Apple or Apple Manufacturers, or provided for use in or otherwise known by you to be used in an Apple Accused Instrumentality.

2.      For each Intel Baseband Processor, Documents sufficient to describe the structure, function, and operation of the Intel Baseband Processor, including all specification sheets, datasheets, schematics, technical drawings, pinouts, compliance and testing documentation, manuals, or related technical documentation associated with each Intel Baseband Processor.

3.      For each Intel Baseband Processor, Documents sufficient to describe the design, development, manufacture, certification, and testing of the Intel Baseband Processor, including documentation created during the conception, design, development, research, testing, simulation, reduction to practice, fabrication, manufacturing, packaging, certification, and analysis of each Intel Baseband Processor.

4.      For each Intel Baseband Processor, Documents sufficient to describe the parties involved in the design, development, manufacture, certification, and testing of the Intel Baseband Processor, including any of Intel's subsidiaries including IAI or IMC, Apple or Apple Manufacturers.

5.      For each Intel Baseband Processor, Documents sufficient to identify the origin and ownership of the design, schematics, technical drawings, specifications and/or working drawings used for its manufacture.

6.      For each Intel Baseband Processor, all Documents and things relating to any communications with Apple or Apple Manufacturers concerning its design, manufacture, testing, schematics, technical drawings, specifications and/or working drawings.

9

7.      For each Intel Baseband Processor, all Documents concerning any certifications of compliance with or support for any wireless standard or technical specification including the Wireless Standards, and any testing with respect to wireless standards or technical specifications compliance including the Wireless Standards.

8.      For each Intel Baseband Processor, the Software associated, tested, sold, distributed, packaged, or integrated with each Intel Baseband Processor along with any Related Documentation.

9.      For each Intel Baseband Processor, the Executable Software associated, tested, sold, distributed, packaged, or integrated with each Intel Baseband Processor along with any Related Documentation.

10.     For each Intel Baseband Processor, hardware description languages (HDL) code, register programming manuals, build instructions associated with the Software and/or Executable Software used to operate or enable each Intel Baseband Processor.

11.     For each Intel Baseband Processor, Documents or materials regarding the firmware architecture for the Intel Baseband Processor and/or Executable Software.

12.     For each Intel Baseband Processor, training materials used to teach new employees about the firmware architecture for the Intel Baseband Processor and/or Executable Software.

13.     All Documents provided by Intel to Apple or Apple Manufacturers regarding the structure, operation, function, or testing of the Intel Baseband Processors, including documents provided in order to assist Apple or Apple Manufacturers in integrating the Intel Baseband Processors into any Apple Accused Instrumentality.

14.     All Documents, Communications, Software, Executable Software, HDL code, and things relating to performing non-scheduled transmissions in the Intel Baseband Processors.

10

15.     All Documents, Communications, Software, Executable Software, HDL code, and things relating to transmitting control information for uplink packet data in the Intel Baseband Processors.

16.     All Documents, Communications, and things related to the Intel Baseband Processors' compliance with 3GPP Technical Specification 25.331.

17.     All Documents, Communications, and things related to the Intel Baseband Processors' compliance with 3GPP Technical Specification 25.321.

18.     All Communications with or from Apple or Apple Manufacturers regarding the use or testing of Intel Baseband Processors in any Apple Accused Instrumentality.

19.     All Communications with or from Apple regarding this Lawsuit, the Apple Accused Instrumentalities, or the Intel Baseband Processors.

20.     All Communications with or from Apple regarding the Patents-in-Suit.

21.     All licenses or agreements between Apple and Intel concerning or related to the Apple Accused Instrumentalities or the Intel Baseband Processors.

22.     All licenses or agreements between Apple and Infineon concerning or related to the Apple Accused Instrumentalities or the Intel Baseband Processors.

23.     All Documents and things relating to the Samsung/Intel Agreement and the negotiation of that Agreement.

24.     All Documents and things relating to the extension of any rights under the Samsung/Intel Agreement to any subsidiary or affiliate of Intel Corporation (including IAI and/or IMC).

25.     All Documents and things reflecting or otherwise corroborating any extension of any right provided to Intel Corporation under the Samsung Intel/Agreement to any of its subsidiaries or affiliates.

26.     All Documents and things including but not limited to work orders, statements of work or requests for bid, that describe or relate to the actual or intended use of the Intel Baseband Processor(s) sold to Apple or an Apple Manufacturer.

11

27.     Documents sufficient to identify the Intel subsidiary or subsidiaries that sell(s) the Intel Baseband Processor to Apple or Apple Manufacturer(s) (e.g. the specific entity that sells the Infineon X-GOLD 616 or 618), including the country or countries in which the sale(s) take place.

28.     Documents sufficient to identify whether Apple and/or Apple Manufacturer(s) purchase the Intel Baseband Processors from Intel (including Intel's subsidiary or subsidiaries) (e.g. the specific entity that purchases the Infineon X-GOLD 616 or 618), including the country or countries in which the sale(s) take place.

29.     For each Intel Baseband Processor, Documents and things sufficient to identify the chain of possession, custody or commerce, including each entity involved, concerning the provision of Intel Baseband Processors to Apple or Apple Manufacturers.

30.     For each Intel Baseband Processor, Documents and things sufficient to describe the involvement or activity of each entity (including any Intel subsidiaries such as IAI or IMC) in the chain of possession, custody or commerce, concerning the provision of Intel Baseband Processors to Apple or Apple Manufacturers, including the geographic location of each such activity or involvement.

31.     For each Intel Baseband Processor, Documents and things sufficient to identify and describe any contracts, licenses, agreements, or informal understandings between Intel (including any Intel subsidiaries such as IAI or IMC) and another, including, without limitation, Apple, concerning the design, manufacture, testing, assembly, sale and chain of distribution of Intel Baseband Processors to Apple or Apple Manufacturers.

32.     All documents and things sufficient to describe the business activities of IAI and IAI's role, if any, in the design, manufacture, sale or distribution of Intel Baseband Processors to Apple or Apple Manufacturers, including when IAI assumed such a role.

33.     All documents and things sufficient to describe the business activities of IMC and IMC's role, if any, in the design, manufacture, sale or distribution of Intel Baseband Processors to Apple or Apple Manufacturers.

34.     All documents and things sufficient to describe changes in the design, manufacture, sale or distribution of Intel Baseband Processors resulting from Intel's acquisition of Infineon.

35.     For each Intel Baseband Processor, all sales invoices to Apple or Apple Manufacturers.

36.     Documents sufficient to identify all persons knowledgeable about the design, development, and/or operation of any Intel Baseband Processors sold to or purchased by Apple or Apple Manufacturers.

37.     Documents sufficient to Identify—including the internal and external part name and number, model name or number, manufacturer, source, supplier and any version number— all chips Intel manufactured for or have been sold to, provided to, purchased by, or used by Samsung.

38.     For each chip identified in response to Request No. 37 above, Documents sufficient to describe the structure, function, and operation of the chip, including all specification sheets, datasheets, schematics, technical drawings, pinouts, compliance and testing documentation, manuals, or related technical documentation associated with each chip.

39.     For each chip identified in response to Request No. 37 above, Documents sufficient to describe the design, development, manufacture, certification, and testing of each chip, including documentation created during the conception, design, development, research, testing, simulation, reduction to practice, fabrication, manufacturing, packaging, certification, and analysis of each chip.

40.     For each chip identified in response to Request No. 37 above, all Documents concerning any certifications of compliance with or support for any wireless standard or technical specification including the Wireless Standards, and any testing with respect to wireless standards or technical specifications compliance including the Wireless Standards.

41.     For each chip identified in response to Request No. 37 above, the Software associated, tested, sold, distributed, packaged, or integrated with each chip along with any Related Documentation.

42.     For each chip identified in response to Request No. 37 above, the Executable Software associated, tested, sold, distributed, packaged, or integrated with each chip along with any Related Documentation.

43.     For each chip identified in response to Request No. 37 above, hardware description languages (HDL) code, register programming manuals, build instructions associated with the Software and/or Executable Software used to operate or enable each chip.

44.     For each chip identified in response to Request No. 37 above, Documents or materials regarding the firmware architecture for the chip and/or Executable Software.

45.     All Documents, Communications, Software, Executable Software, HDL code, and things relating to performing non-scheduled transmissions in each chip identified in response to Request No. 37.

46.     All Documents, Communications, Software, Executable Software, HDL code, and things relating to transmitting control information for uplink packet data in each chip identified in response to Request No. 37.

47.     For each chip identified in response to Request No. 37, Documents, Communications, and things related to the chips' compliance with 3GPP Technical Specification 25.331.

48.     For each chip identified in response to Request No. 37, Documents, Communications, and things related to the chips' compliance with 3GPP Technical Specification 25.321.

49.     For each of the Documents produced in response to this subpoena, all Documents necessary to understand, determine, and interpret the meaning of all codes, acronyms, symbols, abbreviations, or other methods of identification necessary to completely and fully interpret those Documents.

14

50.    All existing English translations of each foreign language Document produced in response to this subpoena.