# EXHIBIT B

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | | |
|---|---|---|
| Apple Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   12-cv-00630-LHK |
| | ) | |
| Samsung Electronics Co., Ltd. et al. | ) | |
| *Defendant* | ) | |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:  Intel Corporation
2200 Mission College Boulevard, Santa Clara, CA 95054-1549

☒  *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:  See Attachment A.

| Place: | Quinn Emanuel Urquhart & Sullivan, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065 | Date and Time:<br>Nov. 2, 2012 at 9 a.m. |
|---|---|---|

The deposition will be recorded by this method:  The deposition will be videotaped and recorded stenographically.

☐  *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

       The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   Oct. 15, 2012

                            *CLERK OF COURT*

                                                OR

_____            _____
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Samsung Electronics Co., Ltd. et al.                              , who issues or requests this subpoena, are:

Michael L. Fazio, Quinn Emanuel Urquhart and Sullivan, LLP,  865 S. Figueroa Street, 10th Floor, Los Angeles, California, 90017; Email: michaelfazio@quinnemanuel.com; Telephone: 213-443-3000

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.     12-cv-00630-LHK

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information;
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
     **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# ATTACHMENT A

## DEFINITIONS

The following definitions shall apply where used in this Attachment:

1.  "Intel," "You," and "Your" means Intel Corporation, and all its predecessors and successors (merged, acquired, or otherwise), and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, or other representative of Intel, including counsel and patent agents, in any country.  "Intel" includes, but is not limited to, Intel Americas, Inc. ("IAI"), Intel Mobile Communications ("IMC") and Infineon Technologies AG's former Wireless Solutions Business.

2.  "Infineon," means Infineon Technologies AG and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Infineon's control, or which controls Infineon.

3.  "Plaintiff" and "Apple" mean Apple Inc., and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Apple's control, or which controls Apple.

4.  "Defendant" and "Samsung" mean Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

5.  "This Lawsuit" shall mean the action entitled *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 12-cv-00630-LHK.

6.  "Software" shall include source code, hardware code, machine code, object code, assembly code, or code written in any programming language, and code that can be compiled or acted upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code.  With regard to Software, "Related Documentation" further includes the architecture designs, logic diagrams, flow diagrams, technical descriptions

and flowcharts associated with, or used in the design of, such Software, and all descriptive or explanatory documentary documents relating to it.

7. "Executable Software" shall mean computer files containing encoded instructions capable of being executed by a processing unit (e.g., central processing unit, micro-controller), and any release notes describing the features or modifications of such files. The term shall include, without limitation, firmware, executable binary files, operating systems, applications, and programs. With regard to Executable Software, "Related Documentation" further includes the architecture designs, logic diagrams, flow diagrams, technical descriptions and flowcharts associated with, or used in the design of, such Executable Software, and all descriptive or explanatory documentary documents relating to it.

8. "Hardware" includes all constituent parts of a device including, but not limited to, assemblies, subassemblies, modules, individual integrated circuits, chipset, chipsets, software, hardware-based capabilities, and/or application specific integrated circuits.

9. "Patents-in-Suit" refers to U.S. Patent Nos. 7,756,087 and 7,551,596.

10. "087 Patent" refers to U.S. Patent No. 7,756,087.

11. "596 Patent" refers to U.S. Patent Nos. 7,551,596.

12. "Related Patent/Application" refers to any U.S. or foreign patent or patent application related to the Patent-in-Suit, including all parent, divisional, continuation, continuation-in-part, reissue, reexamination, extension, and foreign counterpart patents and applications thereof.

13. "'Apple Accused Instrumentality" or "Apple Accused Instrumentalities" refers to the iPhone 4, iPhone 4S, iPhone 5, iPad 2 3G, and New iPad and all versions and models thereof.

14. "Apple Manufacturer(s)" refers collectively and individually to the manufacturers of the Apple Accused Instrumentalities, including but not limited to Foxconn Electronics, Inc., Quanta Computer, Inc., Hon Hai Precision Industry Co. Ltd., Pegatron Corp., and all their predecessors, successors, parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on their behalf, or any other person or entity

subject to their control or which controls them.

15. "Intel Baseband Processor(s)" refers to any circuit, chip, or processor that is capable of or sold for use in implementing, supporting, processing, or providing wireless communications functions and that is or has been sold to or purchased by Apple or Apple Manufacturers or provided for use in, or otherwise known by You to be used in, an Apple Accused Instrumentality, including any product or product line acquired from Infineon by Intel, further including Intel re-branded, re-labeled, or re-named versions of Infineon products, and all versions or models thereof.   This includes, but is not limited to, the following: Infineon PMB 9801; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by Apple or Apple Manufacturers, or provided for use in or otherwise known by you to be used in an Apple Accused Instrumentality.

16. "Samsung/Intel Agreement" shall mean the Patent Cross License Agreement Between Samsung Electronics Co., LTD. and Intel Corporation having an effective date of January 1, 1993 and all Amendments thereto, including but not limited to the Amendment signed in 2003 (Amendment 1) and the Amendment signed in 2004 (Amendment 2).

17. "Wireless Standard(s)" shall mean any wireless standard or wireless technical specification, including WCDMA, UMTS, HSUPA, HSDPA, HSPA+, 3GPP Release 5, 3GPP Release 6, and 3GPP Release 7.

18. "Communication(s)" shall mean, without limitation, any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including but not limited to electronic communications and electronic mail.

19. "Document(s)" shall have the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.   The term shall include within its meaning, by way of example and not limitation, any and all accounts, analyses, books, CDs, calendars, commercial paper, communications, correspondence, DVDs, e-mail, films, financial statements, floppy disks, hard disks, inter-office memoranda, invoices, ledgers, letters, licenses,

logs, memoranda, microfilms, minutes, notes, notes of conversations, notes of meetings, notes of telephone calls, office communications, photographs, printouts, recordings of conversations (whether written or electronic), reports, schedules, storage tape, task lists, telegrams, telephone bills, videotapes or other video recordings, and any differing versions of the foregoing whether denominated formal, informal or otherwise, as well as copies of the foregoing which differ from the original in any way, including handwritten notations or other written or printed matter.  The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently in documentary form or not. A draft or non-identical copy of a Document is a separate Document within the meaning of this term.

      20.    "Identify" when used in reference to:

          (1)    An individual, means to state his or her full name, present or last known residential and business addresses, present or last known position and business affiliation, and if applicable, history of employment of that individual;

          (2)    A firm, partnership, corporation, proprietorship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation and to identify each agent that acted for it with respect to the matters relating to the request or answer;

          (3)    A Document, means to state the date, title, if any, subject matter, each author, each addressee or recipient if practicable, and otherwise a general description of the persons to whom the writing was distributed, the production number, and the type of document, *i.e.*, publication, letter, memorandum, book, telegram, chart, etc., or some other means of identifying the document, and its present location and custodian;

          (4)    A Communication, means to state its date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it;

          (5)    A date, means to state the date and set forth the basis for Your contention that the date is responsive to the request; and

(6) A product, service, or intellectual property, means to state all names and numbers related to the product, service, or intellectual property, and the owner, manufacturer, distributor, licensor, or dealer of the product, service, or intellectual property during the relevant time period and currently. For a product, provide all designations for the product, from the most specific to the most general, including any model numbers or designations, version numbers or designations, and internal numbers or designations.

21. "Person(s)" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies. The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

22. "Any," "all," "every," and "each" shall each mean and include the other as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

23. The terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

24. "Thing" refers to any physical specimen or tangible item in Your possession, custody or control, including research and development samples, prototypes, productions samples and the like.

25. The terms "referring to," "relating to," "concerning" or "regarding" shall mean containing, describing, discussing, embodying, commenting upon, identifying, incorporating, summarizing, constituting, comprising or are otherwise pertinent to the matter or any aspect thereof.

26. The use of the singular form of any word includes the plural and vice versa, as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

27. The use of a verb in any tense shall be construed as the use of the verb in all other

tenses.

**DEPOSITION TOPICS**

1. The operation, structure, function, and implementation of Wireless Standards in the Intel Baseband Processors, including the source, operation, function, and implementation of Software and Executable Software therein.

2. The function and operation of Software and Executable Software associated, tested, sold, distributed, packaged, or integrated with the Intel Baseband Processors.

3. The design, development, certification, and testing of the Intel Baseband Processors.

4. The origin and ownership of the design, schematics, specifications, technical drawings and/or working drawings used to manufacture the Intel Baseband Processors.

5. The specification of and compliance with Wireless Standards related to the Intel Baseband Processors.

6. The process by which Software or Executable Software for the Intel Baseband Processors is designed, written, tested, created, licensed, implemented, and incorporated for storage or execution on the Intel Baseband Processors.

7. The identity, location, organization, revision history, and custodians of all Documents concerning Topics 1-6, and the identity of the persons most knowledgeable about Topics 1-6.

8. The organization and personnel at Intel responsible for the design, development, fabrication, and deployment of the Intel Baseband Processors.

9. The involvement of Apple or an Apple Manufacturer in the development of the design, schematics, specifications, technical drawings and/or working drawings used to manufacture the Intel Baseband Processors.

10. Apple's or Apple Manufacturer's access to or possession, custody, or control of any documentation or Software or Executable Software relating to the Intel Baseband Processors.

11. The identity, nature, extent, and intent of any and all agreements and licenses between Apple or Apple Manufacturers and Intel concerning the Apple Accused Instrumentalities or Intel Baseband Processors.

12. Intel's relationship with Apple or Apple Manufacturers with respect to the Apple Accused Instrumentalities or Intel Baseband Processors.

13. The design, manufacture, testing, assembly, sale, and chain of distribution of Intel Baseband Processors that are ultimately incorporated in Apple Accused Instrumentalities, including identification of all entities involved (including all intermediaries), a description of the involvement of each entity (including any Intel subsidiaries such as IAI or IMC) in the activities that are the subject of this topic, including the geographic location of each such activity, and the identification and description of any contracts, licenses, agreements, or informal understandings between Intel and another, including, without limitation, Apple, concerning these activities.

14. The extension of any right provided to Intel Corporation under the Samsung/Intel Agreement to any of its subsidiaries or affiliates, including IAI and/or IMC.

15. The identification of any documents, or other evidence, reflecting or otherwise corroborating any extension of any right provided to Intel Corporation under the Samsung/Intel Agreement, to any of its subsidiaries or affiliates.

16. The provisions of the Samsung/Intel Agreement and the negotiation of that Agreement.

17. The business activities of IAI relating to the design, manufacture and sale or distribution of Intel Baseband Processors.

18. The business activities of IMC relating to the design, manufacture and sale or distribution of Intel Baseband Processors.

19. The ability of Intel Baseband Processors to perform non-scheduled transmissions.

20. The ability of Intel Baseband Processors to transmit control information for uplink packet data.

21. The ability of Intel Baseband Processors to comply with 3GPP Technical Specification 25.331.

22. The ability of Intel Baseband Processors to comply with 3GPP Technical Specification 25.321.

23. Communications between Apple or Apple Manufacturers and Intel regarding the Apple Accused Instrumentalities, Intel Baseband Processors, Infineon.

24. Communications between Apple or Apple Manufacturers and Intel regarding the Patents-in-Suit and Apple's infringement thereof, or this Lawsuit.

25. Changes in the design, manufacture, sale or distribution of Intel Baseband Processors resulting from Intel's acquisition of Infineon.

26. The design, development, certification, and testing of each Intel Baseband Processor, including the parties involved.

27. The origin and ownership of the design, schematics, technical drawings, specifications and/or working drawings used to manufacture the Intel Baseband Processors.

28. The identification of the Intel subsidiary or subsidiaries which sell(s) the Intel Baseband Processors to Apple or Apple Manufacturer(s) (e.g. the specific entity that sells the Infineon X-GOLD 616 or 618), including the country or countries in which the sales take place.

29. Identification of whether Apple or Apple Manufacturer(s) purchase(s) the Intel Baseband Processors from Intel (e.g. the specific entity that purchases the Infineon X-GOLD 616 or 618), including the country or countries in which the sales take place.

30. Identification of all chips Intel manufactured for or have been sold to, provided to, purchased by, or used by Samsung.

31. The operation, structure, function, and implementation of Wireless Standards, including the source, operation, function, and implementation of Software and Executable Software therein, in the chips identified in response to Topic No. 30 above.

32. The function and operation of Software and Executable Software associated, tested, sold, distributed, packaged, or integrated with the chips identified in response to Topic No. 30 above.

33. The design, development, certification, and testing of the chips identified in response to Topic No. 30 above.

34. For each chip identified in response to Topic No. 30 above, the ability of the chip to perform non-scheduled transmissions.

35. For each chip identified in response to Topic No. 30 above, the ability of the chip to transmit control information for uplink packet data.

36. For each chip identified in response to Topic No. 30 above, the ability of the chip to comply with 3GPP Technical Specification 25.331.

37. For each chip identified in response to Topic No. 30 above, the ability of the chip to comply with 3GPP Technical Specification 25.321.

38. The names, locations, titles, and responsibilities of the persons most knowledgeable about each of the topics above.

39. The identity and location of all persons, documents, and things consulted, reviewed, communicated with or relied on in preparation for testifying about each of the topics above, including, on a topic-by-topic basis, an identification by production number or range of each document or thing associated with each topic and, for each person, his or her name, location, title, and responsibilities.