# EXHIBIT D

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3263**

WRITER'S INTERNET ADDRESS
**amarthakur@quinnemanuel.com**

May 23, 2013

Intel Corporation
2200 Mission College Blvd. RNB 5 125
Santa Clara, CA 95054

Re:     Apple Inc. v. Samsung Electronics Co. et al., Case No. 12-cv-00630-LHK (N.D. Cal.)

Dear Sir or Madam:

Enclosed please find a Subpoena to Testify at Deposition in a Civil Action, issued by the United States District Court for the Northern District of California.  This deposition, and the accompanying documents, are sought by Samsung Electronics, Co., Ltd. ("Samsung") in connection with litigation against Apple Inc. in *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-cv-00630-LHK (N.D. Cal.).

We look forward to working with you to make this process as expedient and convenient for you as possible.  Please don't hesitate to contact me with any questions or concerns.

Very truly yours,

*/s/ Amar Thakur*

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139  | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510  | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany  | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia  | TEL +7 499 277 1000  FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| Apple, Inc. | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.   5:12-cv-00630-LHK |
| Samsung Electronics Co., LTD, et al. | ) |
| | ) (If the action is pending in another district, state where: |
| _Defendant_ | )                                                              ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Intel Corporation, 2200 Mission College Blvd. RNB 5 125, Santa Clara, California 95054

☑ _Testimony:_  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is _not_ a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| | |
|---|---|
| Place:  Quinn Emanuel Urquhart and Sullivan LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065 | Date and Time:<br><br>06/07/2013 10:00 am |

The deposition will be recorded by this method:   stenographically and by video

☑ _Production:_  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Attachment A

        The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     05/23/2013

| _CLERK OF COURT_ | OR | _Amar L. Thakur_ |
|---|---|---|
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_      Samsung Electronics Company, LTD                                                                     , who issues or requests this subpoena, are:

Amar Thakur amarthakur@quinnemanuel.com (213) 443-3263
865 S. Figueroa St., 10th Floor, Los Angeles, California 90017

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   5:12-cv-00630-LHK

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                        *Server's signature*

                                       _____
                                                        *Printed name and title*

                                       _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# ATTACHMENT A

## DEFINITIONS

1.      "You," "Your," and "Intel" mean and refer collectively to Intel Corporation, its predecessors in interest, subsidiaries, joint ventures, affiliates, and other legal entities that are or were wholly or partially owned or controlled by Intel Corporation either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

2.      "Infineon," means Infineon Technologies AG and all its predecessors or successors (merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on its behalf, or any other person or entity subject to Infineon's control, or which controls Infineon.

3.      "Apple" means Apple, Inc. and its principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys.

4.      "Apple Products" means all models and generations of the iPhone, iPad, iPad Mini, iPod Touch, iMac, Mac Mini, Mac Pro, Macbook Pro, Macbook Air or other computers sold by Apple.

5.      "Baseband Processor" and "Transceiver" refer to any circuit, chip, processor or product that is capable of or sold for use in implementing, supporting, processing, or providing wireless communications functions including processing, transmitting, and receiving signals, that is or has been sold to or purchased by Apple or Apple Manufacturers or provided for use in, or otherwise known by You to be used in, an Apple Product.  This includes, but is not limited to, all baseband processors and transceivers, including those marked as follows: Infineon X-Gold 61X Baseband Processor (PMB 9801); Infineon X-GOLD 616; Infineon X-GOLD 618; Infineon

1

338S0626 Transceiver; Infineon 337S3833 Baseband Processor (PMB 9801); Infineon PMB

8878 Baseband Processor, and any other product or component sold to or purchased by Apple or

Apple Manufacturers, or provided for use in or otherwise known or understood by you to be used

in an Apple Product.

6.      The "'239 Patent" means United States Patent No. 5,579,239, titled "Remote

Video Transmission System," issued November 26, 1996, and all related patents and patent

applications, including foreign counterpart patents and applications, and related foreign patents

and applications.  The '239 Patent is attached as Exhibit 3.

7.      For purposes of this subpoena only, "'239 Patent Functionality" means the ability

of a device to perform any of the following functions:

- Obtaining or receiving a signal or data for transmission;

- Processing a signal or data;

- Initializing a port, such as a connection to an antenna, other device utilized
  for transmission, channel, or frequency;

- Transmitting a signal or data on a channel;

- Transmitting signals or data on more than one channel; and/or

- Transmitting signals or data on more than one frequency.

8.      "The '636 Patent" shall mean and refer to United States Patent No. 5,859,636,

entitled "Recognition of and Operation on Text Data," and assigned on its face to Intel

Corporation (attached as Exhibit 4).

9.      For purposes of these discovery requests, the "IUI Reference" means and refers to

an article from the International Conference on Intelligent User Interfaces, co-authored by

2

Milind S. Pandit and Sameer Kalbag, and entitled "The Selection Recognition Agent: Instant

Access to Relevant Information and Operations," (attached as Exhibit 5).

10.     "SRA" means and refers to the Selection Recognition Agent as described, for

example, by Milind Pandit and Sameer Kalbag in the IUI Reference.

11.     "Pandit Product" means and refers to any system, software, source code,

application programming interfaces (APIs), communication protocols, hardware, prototype,

project, and/or product related to systems for automatically recognizing data structures in text

and linking actions to those data structures that were designed, developed, tested, demonstrated,

made available to the public, sold, and/or offered for sale by or for Intel before February 1, 1996,

and that were developed, designed, and/or tested at least in part by Milind Pandit or Sameer

Kalbag, including but not limited to the Selection Recognition Agent.

12.     The term "Software" shall include source code, hardware code, machine code,

assembly code, or code written in any programming language, and code that can be compiled or

acted upon by a processor, any listings or printouts thereof, and any release notes describing the

features or modifications of such code.

13.     The term "Executable Software" shall mean computer files containing encoded

instructions capable of being executed (by, e.g., central processing unit, microcontroller, digital

signal processor or any other component), and any release notes describing the features or

modification of such files.  The term shall include, without limitation, firmware and executable

binary files.

14.     The term "source code" shall mean human-readable programming language text

that defines Software, firmware, or electronic hardware descriptions.  Source code files include,

but are not limited to, files containing source in "Java", "C", "C++", assembler, VHDL, Verilog,

3

and digital signal processor ("DSP") programming languages.  Source code files further includes "Include" files, "make" files, link files, and other human-readable text files used in the generation or building of Software directly executed on an application processor, baseband processor, transceiver, microcontroller, or DSP.

15.     The term "Documents" includes all things within the meaning and scope of that term as used in the Federal Rules of Civil Procedure and the Federal Rules of Evidence and includes without limitation the following items, whether printed, recorded, microfilmed, or reproduced by any process, or written or produced by hand, or recorded in any other way, and whether or not claimed to be privileged or confidential or personal:  letters; correspondence; memoranda; notes; reports; records; agreements; working papers; communications (including intradepartmental and interdepartmental communications); summaries or records of personal conversations; calendars; diaries; forecasts; statistical statements; graphs; laboratory or research reports and notebooks; charts; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigations; opinions or reports of consultants; patents and patent application materials; patent appraisals; printed publications; trademark applications, certificates of registration, opinions of counsel; memoranda of agreements, assignments, licenses; reports of or summaries of either negotiations within or without the corporation or preparations for such; bulletins; material and manufacturing specifications; material packaging; manufacturing logs; equipment specifications and operating information; product packaging; designs; instructions; advertisements; literature; work assignments; memoranda of conversations; notes; notebooks; drafts; data sheets; worksheets; contracts; memoranda of agreements; assignments; licenses; minute books of account; orders; invoices; statements; bills; checks; vouchers; photographs;

drawings; charts; catalogs; brochures; computer files; computer discs; software; articles; manuals; pamphlets; advertisements; circulars; press releases; drafts of any documents; books; instruments; accounts; bills of sale; tapes; electronic communications including E-mails; telegraphic communications and all other material of any tangible medium of expression; and original or preliminary notes.  Any comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "document."

16.     "Thing(s)" has the broadest meaning allowable under Federal Rule of Civil Procedure 34, and includes any tangible object other than a document and, without limitation, objects of every kind and nature, as well as prototypes, models, or physical specimens thereof.

17.     The term "including" means including, but not limited to.

18.     "Communication" means any document received by, transmitted to, conveyed to, or delivered to you from any person or entity or from you to any person or entity including electronic mail and oral communications reduced to writing.

19.     Unless otherwise indicated by the context, the term "identify":

    a.     when used in connection with documents, means to furnish a brief description of the nature of the document, its title or identifying symbol, its date, and the name and address of the person, if any, to whom it was directed, the location thereof, and its present custodian;

    b.     when used in connection with a person or persons, means to furnish a statement of the full name, job title or function, the last known business address and telephone number and the last known home address and telephone number;

    c.     when used in connection with things, including products or other physical objects, means to furnish a complete description of the things, including its common designation, its composition, its physical characteristics, its present or last known location, and any other distinguishing characteristics.

20.     "Date" means the exact day, month, and year if ascertainable, or if not, your best approximation thereof.

21.     The term "concerning," in addition to its usual and customary meaning, shall also mean relating to, alluding to, referring to, constituting, describing, discussing, evidencing, or regarding.

22.     The terms "and," "or," and "and/or" shall be construed in the conjunctive or the disjunctive, whichever makes the request more inclusive.

23.     The use of the singular form of any word includes the plural and vice versa.

24.     All pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case makes the request more inclusive.

25.     The "630 Litigation" shall mean the action entitled *Apple, Inc. v. Samsung Electronics Co., Ltd. et al.*, No. 12-cv-00630-LHK (N.D. Cal.)

26.     "Apple Manufacturer(s)" refers collectively and individually to the manufacturers of the Apple Products, including but not limited to Foxconn Electronics, Inc., Quanta Computer, Inc., Hon Hai Precision Industry Co. Ltd., Pegatron Corp., and all their predecessors, successors, parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on their behalf, or any other person or entity subject to their control or which controls them.

## <u>INSTRUCTIONS</u>

1.      This subpoena seeks all documents and testimony in existence to the full extent permitted by the Federal Rules of Civil Procedure.

2.      Should you seek to withhold any responsive document based on some limitation of discovery (including privilege), you must supply a list of the documents for which limitation of discovery is claimed, indicating:

   a.      the identity(ies) of each document's author(s), writer(s), sender(s), or initiator(s) and their positions;

   b.      the identity(ies) of each document's recipient(s), addressee(s), or party(ies) for whom it was intended and their positions;

   c.      the date of creation or transmittal indicated on each document, or estimate of that date, indicated as such, if no date appears on the document;

   d.      the general subject matter as described on each document, or, if such description does not appear, then some other description sufficient to identify the document; and

   e.      the claimed ground(s) for limitation of discovery (e.g., "attorney-client privilege" or "work product privilege").

To the extent such information is contained within a document for which a claim of privilege has been made, you must provide a privileged document list within 10 calendar days of the date upon which answers and objections to these document requests are due.

3.      If any of the documents requested by this subpoena are considered confidential information within the meaning of the attached Protective Order issued by the United States District Court for the Northern District of California ("Protective Order"), such documents should be produced subject to the terms and provisions of the Protective Order.  The Protective Order is Attached as Exhibits 1 and 2.

4.      If no documents are responsive to a particular request, you are to state that no responsive documents exist.

5.      If you propound any written answers to the requests in Attachment A, repeat verbatim, immediately before each answer, the request being answered.

6.     Where an identified document is in a language other than English, state whether an English translation of such document exists.  If a document is in a language other than English and an English translation exists, identify and provide both documents.

7.     Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which they were derived sufficient to permit rendering the materials intelligible.  For example, if a document is originally an Excel spreadsheet, then the document should be produced in Excel format.  If a document contains color-coding, then the document should be produced in a format that preserves the color-coding.

8.     File folders with tabs or labels identifying documents called for by these requests must be produced intact with such documents.

9.     Documents attached to each other must not be separated.

## DOCUMENTS TO BE PRODUCED

1.      For each Baseband Processor and Transceiver, Documents sufficient to describe the structure, function, and operation of the Baseband Processor and Transceiver, including all specification sheets, data sheets, schematics, technical drawings, pinouts, register maps, designer guides, compliance and testing documents, manuals, user guides, related technical documentation, brochures, and promotional materials associated with each Baseband Processor and Transceiver as those documents relate to the '239 Patent Functionality.

2.      All Documents concerning the '239 Patent Functionality in the Baseband Processor and Transceiver, or enabled by the Baseband Processor and Transceiver.

3.      For each Baseband Processor and Transceiver, all Software, including source code, associated, tested, sold, distributed, packaged, or integrated with each Baseband Processor and Transceiver along with any related documentation, as those documents relate to the '239 Patent Functionality.

4.      For each Baseband Processor and Transceiver, Documents or materials regarding the Software or firmware architecture for the Baseband Processor and Transceiver and/or Executable software, as those documents relate to the '239 Patent Functionality.

5.      For each Baseband Processor and Transceiver, all Documents and Things related to any Communication with Apple or Apple Manufacturers concerning its design, manufacture, testing, schematics, technical drawings, specifications, sale, chain of distribution, and/or working drawings.

6.      All Documents provided by Intel and/or Infineon to Apple or Apple manufacturers regarding the structure, operation, function, or testing of the Baseband Processor

and Transceiver, including Documents provided in order to assist Apple or Apple manufacturers in integrating the Baseband Processor and Transceiver into any Apple Product.

7.     Documents sufficient to show the chain of title of each of the Baseband Processors and Transceivers incorporated into an Apple Product, from the time of manufacture until the time they are incorporated into an Apple Product, including where title changes, between what parties, and on what terms.

8.     Documents sufficient to show the locations where each of the Baseband Processors and Transceivers incorporated into an Apple Product are manufactured.

9.     Documents sufficient to show the locations where each of the Baseband Processors and Transceivers incorporated into an Apple Product are shipped, from the time of manufacture until the time they are incorporated into an Apple Product.

10.    Documents sufficient to show the role of any Apple manufacturer in ordering Baseband Processor and Transceivers, negotiating price or quantity of orders, or setting product requirements for Baseband Processor and Transceivers.

11.    Any Communications with or from Apple concerning the '239 Patent or '239 Patent Functionality.

12.    Documents sufficient to identify the Baseband Processors and Transceivers incorporated into each Apple Product, including by product model and generation, and the quantity of each Baseband Processor and Transceiver sold or otherwise provided to Apple or Apple manufacturer, including sales invoices to Apple or Apple manufacturers and any documents showing location of delivery of each Baseband Processor.

13.     All licenses, agreements, product purchase agreements, purchase orders or other contracts with Apple or Apple manufacturers that refer to or in any way relate to Baseband Processors and Transceivers.

14.     All Documents and Things including but not limited to work orders, statements of work or requests for bid, that describe or relate to the actual or intended use of the Baseband Processors and Transceivers sold to Apple or an Apple manufacturer.

15.     Documents sufficient to identify all persons knowledgeable about the design, development, structure and/or operation of any Baseband Processor and Transceiver sold to or purchased by Apple or Apple manufacturers.

16.     Documents that reference the 630 Litigation, including all Communications with Apple regarding the 630 Litigation.

17.     Documents sufficient to identify each Intel product or prototype described in the IUI Reference.

18.     All Documents, including without limitation algorithms, source code, and/or software, relating to the design, structure and/or operation of each Intel product or prototype described in the IUI Reference, including without limitation the following functionality described in the IUI reference:

> a.  "recogniz[ing] geographical names, dates, email addresses, Usenet newsgroup name components, world-wide web site names (URLs), and phone numbers";
>
> b.  "perform[ing] operations that are relevant to the recognized text object…[such as] start[ing] a web browser on a page referenced by a selected URL, or download[ing] a Usenet newsgroup's list of Frequently Asked Questions (FAQs)"; and

c.   "automatically turn[ing] plain text into a kind of hypertext, by quickly
recognizing selected text, and then linking it to related information and
applications."

19.    Documents sufficient to identify each Pandit Product.

20.    All Documents relating to the design, structure and/or operation of each Pandit
Product.

21.    All Documents relating to the design, structure and/or operation of each Intel
product or prototype described in or claimed by the '636 patent (including without limitation the
operation, structure, and/or function disclosed by Figures 1a, 1b, 1c, 1d, 1e, and 1f of the '636
patent), including without limitation source code, software, libraries and any corresponding
subroutines.

22.    Documents relating to any invention disclosure statement or form submitted by
Milind Pandit that led to the issuance of the '636 patent, or Intel's decision to file the patent
application that led to the issuance of the '636 patent, and the timing of any such submission.

23.    Documents sufficient to identify any monetary amounts paid to Milind Pandit by
Intel in connection with the submission of any invention disclosure statement or form by Milind
Pandit that led to the issuance of the '636 patent, or Intel's decision to file the patent application
that led to the issuance of the '636 patent, and the timing of any such payments.

24.    For each of the Documents produced in response to this subpoena, all Documents
necessary to understand, determine, and interpret the meaning of all codes, acronyms, symbols,
abbreviations, or other methods of identification necessary to completely and fully interpret
those Documents, including all existing English translations of each foreign language Document
produced in response to this Subpoena.

12

25.     All existing English translations of each foreign language Document produced in response to this Subpoena.

## DEPOSITION TOPICS

1.       The functionality and operation of each Baseband Processor and Transceiver, and associated Software, including source code, related to the '239 Patent Functionality.

2.       The Software, including source code, for each Baseband Processor and Transceiver responsible for any '239 Patent Functionality.

3.       The structure of each Baseband Processor and Transceiver, including all specification sheets, data sheets, schematics, technical drawings, pinouts, register maps, and circuit diagrams describing the components of the Baseband Processor and Transceivers and their function, related to the '239 Patent Functionality.

4.       The structure and function of each pin of the Baseband Processor and Transceivers as related to the '239 Patent Functionality.

5.       Apple's product requirements, including engineering requirements specifications, for the Baseband Processor and Transceivers.

6.       The design, development, manufacture, certification, research, simulation, reduction to practice, fabrication, manufacturing, packaging, and testing of each Baseband Processor and Transceiver.

7.       The '239 Patent Functionality in the Baseband Processor and Transceivers, or enabled by the Baseband Processor and Transceivers.

8.       The '239 Patent Functionality in each Apple Product.

9.       All communications with Apple or Apple Manufacturers.

10.      The role of Apple Manufacturer(s) in ordering Baseband Processor and Transceivers, negotiating price or quantity of orders, and setting product requirements for Baseband Processor and Transceivers.

11.     Negotiation of Intel's 1993 license agreement with Samsung, including the 2003 and 2004 amendments thereto.

12.     All persons knowledgeable about the design, development, structure and/or operation of any Baseband Processor and Transceivers.

13.     An identification of each Baseband Processor and Transceiver incorporated into each Apple product, including product model and generation, and the quantity of each Baseband Processor and Transceiver sold or otherwise provided to Apple or Apple Manufacturers.

14.     All proposals and sales of Baseband Processor and Transceivers to Apple or Apple Manufacturers.

15.     The chain of possession, custody, or commerce of each Baseband Processor from manufacture to integration into an Apple Product.

16.     All Documents and Software, including source code, produced in response to this subpoena.

17.     The content of all Documents and Software, including source code, produced in response to this subpoena.

18.     Authentication of all Documents and Software, including source code, produced in response to this subpoena.