```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5

     APPLE, INC.,                    )  CV-12-00630-LHK
 6                                   )
                      PLAINTIFF,     )  SAN JOSE, CALIFORNIA
 7                                   )
              VS.                    )  AUGUST 13, 2013
 8                                   )
     SAMSUNG ELECTRONICS CO., LTD.,  )  PAGES 1-28
 9   ET AL,                          )
                                     )
10                    DEFENDANT.     )

11

12               TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE PAUL S. GREWAL
13              UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:      GIBSON DUNN & CRUTCHER, LLP
                             BY:  MARK LYON
17                           1881 PAGE MILL ROAD
                             PALO ALTO, CA 94304
18

19   FOR THE DEFENDANT:      QUINN EMANUEL
                             BY:  MICHAEL FAZIO
20                           50 CALIFORNIA STREET, 22ND FL
                             SAN FRANCISCO, CA 94111
21

22   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED WITH COMPUTER.
23

24            APPEARANCES CONTINUED ON THE NEXT PAGE

25   OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185
```

```
 1    SAN JOSE, CALIFORNIA                  AUGUST 13, 2013

 2                    P R O C E E D I N G S

 3       (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4    WERE HELD:)

 5             THE COURT:  MR. RIVERA, WOULD YOU CALL THE NEXT

 6    MATTER ON THIS MORNING'S CALENDAR.

 7             THE CLERK:  YES, YOUR HONOR.

 8       CALLING APPLE, INC. VERSUS SAMSUNG ELECTRONICS, ET AL.

 9    CASE CV-12-630-LHK.

10       MATTER ON FOR SAMSUNG'S MOTION TO COMPEL ENFORCING THE

11    APRIL 12, 2013 ORDER.

12       COUNSEL, PLEASE STATE YOUR APPEARANCES.

13             MR. FAZIO:  GOOD MORNING, YOUR HONOR.

14       MICHAEL FAZIO ON BEHALF OF THE SAMSUNG DEFENDANTS.

15             THE COURT:  MR. FAZIO, GOOD AFTERNOON.  WELCOME BACK.

16             MR. LYON:  GOOD AFTERNOON.

17       MARK LYON ON BEHALF OF APPLE.

18             THE COURT:  MR. LYON, GOOD AFTERNOON TO YOU AS WELL.

19             MR. LYON:  BEFORE WE GET STARTED CAN I MAKE A REQUEST

20    OF THE COURT, YOUR HONOR?

21             THE COURT:  WHY DON'T YOU MAKE THE REQUEST AND THEN I

22    WILL MAKE A RESPONSE.

23             MR. LYON:  WE OBVIOUSLY HAVE A LOT OF CONFIDENTIAL

24    INFORMATION INVOLVED HERE, THIS IS VERY SENSITIVE FINANCIAL

25    INFORMATION.  THIS IS WHY, I APPRECIATE THE COURT PUTTING US
```

1    LAST ON THE CALENDAR, ONE OF THE THINGS WE WOULD ASK IF WE

2    COULD MAKE THIS A CONFIDENTIAL RECORD AND CLOSE THE COURTROOM

3    SO WE COULD HAVE A FRANK DISCUSSION ABOUT THIS BECAUSE

4    OTHERWISE IT MAY BE GET DIFFICULT TO TALK AROUND THE CONCEPTS

5    WHETHER OR NOT THEY ARE CATEGORIZED IN THE NORMAL TRACK OF

6    ACCIDENT.

7              THE COURT:  MR. FAZIO, DO YOU WANT TO SPEAK TO THIS

8    AS WELL?

9              MR. FAZIO:  WE DON'T OPPOSE THE REQUEST, YOUR HONOR.

10   WE THINK IT'S SOMEWHAT OF AN ELLIPTICAL DISCUSSION IF WE CAN'T

11   HAVE A FRANK CONVERSATION ABOUT WHAT PARTICULAR INDIVIDUALS

12   TESTIFIED ABOUT, WHAT DOCUMENTS SHOW AND SO ON AND SO FORTH.

13      WE WOULD LIKE TO HAVE AS FRANK AND FORTHRIGHT A

14   CONVERSATION AS WE CAN, SO WE THINK THAT WOULD BE HELPFUL

15             THE COURT:  I APPRECIATE THE REQUEST AND I WOULD LIKE

16   EACH SIDE TO HAVE AN OPPORTUNITY TO MAKE ITS RECORD.

17      I'M GOING TO DECLINE THE REQUEST.  AND I WANT TO BE VERY

18   CLEAR ABOUT MY REASONS FOR IT.  AS YOU ALL UNDOUBTEDLY CAN SEE

19   FOR YOURSELF THERE'S A GREATER PUBLIC INTO THIS CASE AT MOST.

20   I'VE EXHAUSTED IN DETAIL MY VIEWS ABOUT THAT SUBJECT FOR SOME

21   TIME IN THE WRITTEN RECORD.

22      I CAN FULLY SEE WE MAY NEED TO BUTT UP AGAINST

23   CONFIDENTIAL MATTERS, MATTERS THAT ARE TRULY CONFIDENTIAL IN

24   OUR CONVERSATIONS.  HERE'S WHAT I WOULD LIKE TO DO TO BALANCE

25   ALL THESE COMPETING CONCERNS.

1       LET'S TRY TO HAVE A CONVERSATION AND ARGUMENT WITHOUT

2   TRAIPSING INTO THE CONFIDENTIAL MATERIAL THAT HAS BEEN

3   REQUESTED FOR SEALING.

4       IF WE NEED TO GO THERE, I WILL CONSIDER IF AT THAT POINT

5   IT MAKES SENSE TO ASK THE COURTROOM BE CLEARED.  MY STRONG

6   PREFERENCE IS NOT TO DO THAT, AND I THINK YOU ALL CAN

7   APPRECIATE WHY.

8           MR. LYON:  I UNDERSTAND, YOUR HONOR.

9       I ACTUALLY ANTICIPATED THAT MIGHT BE THE DIRECTION.  I HAVE

10  ONE OTHER SUGGESTION I MIGHT MAKE THAT MAY BE HELPFUL.

11      I PREPARED, AND I'VE GIVEN COUNSEL A COPY OF THIS, A

12  LISTING OF SOME OF THE TYPES OF FAMILIAR INFORMATION THAT WE

13  MAY GET TO.

14      AND A LOT OF PROBLEMS WITH THE CONFIDENTIALITY HAS TO DO

15  WITH HOW IT'S KEPT AND WHAT'S KEPT AND WHERE.  SO PERHAPS WE

16  COULD REFER TO CATEGORY 1, FOR EXAMPLE, SO IF I COULD HAND THIS

17  TO THE COURT JUST TO SEE.

18          THE COURT:  YOU MAY.

19          MR. LYON:  WOULD YOU CARE FOR THIS AS WELL.

20      WE CAN TRY IT AND SEE IT THAT WILL HELP FACILITATE

21  DISCUSSION IF THAT'S THE CASE.

22          THE COURT:  OKAY.

23      LET ME JUST SO THAT EVERYONE IS CLEAR AS TO HOW I WANT TO

24  TRY TO DO THIS.  I DON'T CONSIDER THE FACT THAT APPLE HAS A

25  GROSS MARGIN ON A PRODUCT LINE OR A GIVEN PRODUCT TO BE A

1    CONFIDENTIAL MATTER.  WHAT THAT GROSS MARGIN IS OR PERHAPS EVEN

2    HOW DATA REGARDING THAT GROSS MARGIN IS STORED IS CONFIDENTIAL.

3         BUT I HAVE NO QUALMS AND INVITE COUNSEL TO TALK ABOUT THE

4    GENERAL ECONOMIC CONCEPTS WITHOUT FEAR OF RUNNING INTO ANY

5    CONFIDENTIALITY ISSUES.

6         SO WITH THAT LET'S DO OUR BEST TO GO THROUGH THIS.

7         MR. FAZIO, THIS IS YOUR MOTION SO I WILL BEGIN WITH YOU.

8              MR. FAZIO:  THANK YOU, YOUR HONOR.

9         I WILL JUST START BY BASICALLY SAYING THAT WHAT WE ARE

10   TALKING ABOUT TODAY IS SORT OF TWO CATEGORIES TWO BROAD

11   CATEGORIES OF FINANCIAL INFORMATION.

12        THE FIRST CONSISTS OF EIGHT TYPES OF FINANCIAL

13   INFORMATION AND THOSE EIGHT TYPES ARE IN OUR REPLY BRIEF ON

14   PAGE 2.

15              THE COURT:  I HAVE THEM.

16              MR. FAZIO:  SO THEY ARE IN A BULLET POINT FORMAT.

17        AND THOSE PARTICULAR CATEGORIES OF FINANCIAL INFORMATION

18   ACTUALLY COME VERY CLOSE TO MIRRORING WHAT APPLE'S COUNSEL

19   HANDED UP TO YOUR HONOR SO THAT WE ARE ALL SORT OF ON THE SAME

20   PAGE.

21        THOSE ARE EIGHT TYPES OF FINANCIAL INFORMATION FOR WHICH

22   APPLE'S 30(B)(6) DESIGNEE ON FINANCIAL TOPICS, MARK BUCKLEY, OR

23   APPLE'S DOCUMENTS INDISPUTABLY SHOW THAT APPLE MAINTAINS THOSE

24   DOCUMENTS IN THE ORDINARY COURSE OF BUSINESS.

25        THEY MAY MAINTAIN THEM IN A CERTAIN WAY AND THIS IS SORT

1    OF PART OF THAT ELLIPTICAL DISCUSSION I'M NOT SURE HOW MUCH I

2    WANT TO GET INTO IT, BUT IT'S OUR POSITION AS WE SET FORTH IN

3    OUR REPLY PAPERS THESE TYPES OF DOCUMENTS, FINANCIAL

4    INFORMATION ARE OBTAINED BY APPLE IN THE ORDINARY COURSE OF

5    BUSINESS AND AT A MINIMUM THESE THINGS HAVE BEEN PRODUCED AS

6    THEY HAVE NOT BEEN PRODUCED THUS FAR.

7              THE COURT:  WELL, LET ME DIG RIGHT IN IN A WAY THAT

8    IS LESS ELLIPTICAL PRANCE AND MORE CONCEPTUAL AND GENERAL.

9              WE ARE TALKING ABOUT DATABASES AMONG OTHER THINGS.  AND

10   INTELLIGENCE, DATABASE APPLICATIONS WHICH CAN BE USED TO QUERY

11   THE DATABASE IN ORDER TO EXTRACT CERTAIN INFORMATION.

12             YOU ALL SEEM TO HAVE A DIFFERENCE OF OPINION ABOUT HOW

13   RULE 34 APPLIES IN THE CONTEXT OF DATABASE REPORTING AND USE OF

14   APPLICATIONS TO EXTRACT INFORMATION FOR PURPOSES OF PREPARING

15   REPORT.

16             I TAKE IT YOUR POSITION, MR. FAZIO, IS THIS:  THAT IF

17   THERE'S A DATABASE WITH DIFFERENT FIELDS DIFFERENT ENTRIES IN

18   THOSE FIELDS AND REPORTS CAN BE RUN USING EXISTING SOFTWARE AT

19   APPLE, FRANKLY AT SAMSUNG OR ANY OTHER COMPANY, THAT IF THAT IS

20   THE CASE, THEN IT IS NOT ACCURATE TO SUGGEST THAT YOUR REQUEST

21   FOR REPORT IS A REQUEST FOR A DOCUMENT THAT DOES NOT YET EXIST;

22   IS THAT GENERALLY CORRECT?

23             MR. FAZIO:  THAT IS CORRECT, YOUR HONOR.

24             THAT IS CORRECT.  AND I THINK IN ORDER TO FOCUS THAT

25   INQUIRY A THE LITTLE BIT MORE I STARTED OFF MY PRESENTATION BY

1    SAYING THERE ARE TWO CATEGORIES I WANTED TO DISCUSS.

2         THIS IS THE FIRST CATEGORY.  THESE EIGHT BULLET POINTS

3    WHICH APPLE'S 30(B)(6) ADMITS THEY HAVE THE FINANCIAL

4    INFORMATION IN THE ORDINARY COURSE OF BUSINESS.

5         THERE'S A SECOND CATEGORY OF FINANCIAL DOCUMENTS WHICH

6    HITS UPON WHAT YOUR HONOR JUST HIT UPON WHICH IS APPLE SAYS WE

7    NEED TO GO AHEAD AND GET FOLKS IN A ROOM AND FIGURE OUT HOW TO

8    QUERY THE DATA, AND THAT'S GOING TO TAKE SEVERAL MONTHS TO DO

9    IT.

10        THAT SECOND CATEGORY OF FINANCIAL DOCUMENTS IS ACTUALLY

11   LOCATED ON PAGE 8 OF OUR REPLY BRIEF IN A FOOTNOTE.  AND AS I

12   SAY, IT'S IN A FOOTNOTE, I WISH WE WOULD HAVE PUT IT MORE

13   PROMINENTLY IN THE BRIEF, BUT THESE ARE FOUR ADDITIONAL AREAS

14   OF FINANCIAL INFORMATION IN FOOTNOTE 3 ON PAGE 8 OF OUR REPLY

15   FOR WHICH APPLE SAYS THEY HAVE TO ACTUALLY HAVE COORDINATION

16   AMONGST MULTIPLE GROUPS QUERY DATABASES IN ORDER TO FIGURE OUT

17   WHAT THE DATABASE IS.

18        AND IT IS OUR POSITION, YOUR HONOR, AS YOU CORRECTLY

19   POINTED OUT THAT FALLS SQUARELY WITHIN APPLE'S DISCOVERY

20   OBLIGATIONS TO DO JUST IS THAT.  WE CITED IN OUR PAPERS THE

21   GONZALES V. GOOGLE CASE WHICH WE SQUARELY ON POINT IN THIS

22   SCENARIO.

23        IN GONZALEZ V. GOOGLE YOU HAD THE GOVERNMENT MOVING TO

24   COMPEL PRODUCTION ABOUT 50,000 URL'S.  AND GOOGLE IN THAT CASE

25   MADE THE EXACT SAME ARGUMENT THAT APPLE IS MAKING HERE TODAY

1    AND HAS MADE IN THEIR PAPERS WHICH IS THEY DID NOT MAINTAIN

2    THOSE DOCUMENTS IN THE ORDINARY COURSE AND TO REQUIRE THEIR

3    PRODUCTION WOULD BE TO REQUIRE THE CREATION OR GENERATION OF

4    NEW DOCUMENTS.

5         AND THE COURT IN THE GONZALEZ CASE MADE A VERY CAREFUL

6    DISTINCTION BECAUSE WHAT THE COURT SAID THERE IS THAT GOOGLE

7    DOES NOT REPRESENT THAT IT IS UNABLE TO EXTRACT THAT

8    INFORMATION THAT WAS REQUESTED, WHAT GOOGLE MADE IN THIS CASE

9    WHICH IS WHAT APPLE MAKES IN THIS CASE IS AN UNDUE BURDEN

10   ARGUMENT.

11        THEY SAY IT'S GOING TO TAKE TIME TO DO THIS WE GOT TO GET

12   THE RIGHT PEOPLE IN THE ROOM.  MAYBE IN THE GOOGLE CASE THEY

13   HAVE TO QUERY MULTIPLE COMPUTER DATABASES, THEY HAVE TO WRITE

14   NEW CODE.

15        BUT AS TO THIRD PARTY GOOGLE IN THAT CASE, THE COURT HELD

16   THAT WAS ALL WITHIN THE AMBIT OF THE THIRD PARTY DISCOVERY

17   OBLIGATIONS.

18             THE COURT:  RIGHT.

19        SO THE DISTINCTION YOU ARE MAKING OR HIGHLIGHTING THAT WAS

20   DISCUSSED IN GONZALES WAS THIS:  IF -- UNDER RULE 34 IF THE

21   DOCUMENT DOES NOT EXIST, THAT'S THE END OF THE INQUIRY, THERE

22   IS NO BURDEN OR PREDICATE TO THAT ARGUE MENT.  IF THE DOCUMENT

23   TRULY DOES NOT EXIST, THERE'S NO OBLIGATION TO CREATE IT.

24        THE POINT OF GONZALEZ AS I READ IT AND IN OTHER CASES LIKE

25   IT, IS THAT IT IS NOT ACCURATE TO SAY THAT A DOCUMENT DOESN'T

1    EXIST REGARDING DATA KEPT IN THE VARIOUS SILO WITHIN A COMPANY

2    WHEN THERE'S APPLICATION SOFTWARE IN PLACE THAT CAN ALLOW THAT

3    REPORT TO BE CREATED.

4         MR. FAZIO:  I THINK THAT'S EXACTLY RIGHT, YOUR HONOR.

5    I THINK THAT'S THE POINT, THE GONZALES CASE.

6         AND IF WE LOOK AT THE OTHER CASES --

7         THE COURT:  IT STILL CAN BE OVERLY BURDENSOME, IT'S

8    JUST NOT ACCURATE TO SAY IT DOESN'T EXIST.

9         MR. FAZIO:  THAT'S CERTAINLY CORRECT, YOUR HONOR.

10   AND THAT'S A DIFFERENT ARGUMENT ALL TOGETHER.  AND WITH

11   RESPECT TO THE UNDUE BURDEN ARGUMENT, OUR POSITION ON THAT IS

12   APPLE DOES HAVE THE BURDEN IN MAKING THE UNDUE BURDEN ARGUMENT

13   TO MAKE A PARTICULARIZED AND SPECIFIC SHOWING OF FACT AS

14   OPPOSED TO CONCLUSORY AND STEREOTYPE STATEMENTS.

15        AND I UNDERSTAND THAT THE OVERWHELMING MAJORITY OF

16   MR. BUCKLEY'S DECLARATION IS UNDER SEAL.  I DON'T WANT TO

17   INVADE THAT IN THE COURTROOM HERE TODAY, BUT WE DO NOT THINK

18   THAT MR. BUCKLEY'S AVERMENT IN HIS DECLARATION COMES CLOSE TO

19   SATISFYING THAT STANDARD.

20        HE DOES NOT SAY IT'S GOING TO TAKE X NUMBER OF ENGINEERS,

21   Y NUMBER OF HOURS AT A COST OF THIS MANY DOLLARS TO GO AHEAD

22   AND WRITE SOURCE CODE TO QUERY THESE MULTIPLE COMPUTER BANKS TO

23   GET THIS DATA.  WE DON'T HAVE THAT INFORMATION.

24        WHAT WE HAVE IS SOMETHING FAR, FAR MORE GENERAL THAN

25   THAT.  GOING BACK TO A POINT THAT YOUR HONOR HIT UPON WITH

1    RESPECT TO THE GONZALES CASE, THERE ARE A NUMBER OF CASES THAT

2    APPLE CITES TO IN THEIR PAPERS THAT SAY CORRECTLY SO, THAT

3    APPLE DOES NOT HAVE AN OBLIGATION TO CREATE DOCUMENTS FOR

4    PURPOSES OF LITIGATION.

5         BUT I THINK FAIRLY READ, ONE OF THOSE CASES THAT COMES TO

6    MIND THAT THEY CITE IS THE CHANDLER V. CARROLL CASE WHERE IN

7    THAT CASE YOU ESSENTIALLY HAD AN INMATE MOVING TO COMPEL

8    PRODUCTION OF MEDICAL RECORDS FOR MEDICAL TREATMENT THAT WAS

9    NEVER GIVEN IN THE FIRST PLACE.

10        SO IT'S THAT TYPE OF CREATION OF A DOCUMENT WHERE TO

11   CREATE THE DOCUMENT IS GOING TO REQUIRE THE CREATION OF A

12   FICTION, IN EFFECT, THAT THOSE CASES ARE TALKING ABOUT.

13        THE THOMAS V. LAWLER CASE WAS NOT NECESSARILY A SIMILAR

14   SITUATION BUT IT HAD -- IT WAS A MOTION TO COMPEL WHERE THE

15   MOVING PARTY WANTED DEFENDANT TO GO OUT AND TAKE A PICTURE OF A

16   CHAPEL AND THEN PRODUCE THE PICTURE IN THE COURSE OF

17   LITIGATION.  AND THE COURT SAID WELL EITHER PARTY CAN DO THAT.

18        BUT THIS CASE IS DIFFERENT, YOUR HONOR.  WE CAN'T QUERY

19   APPLE'S FINANCIAL DATA.  THAT FINANCIAL DATA IS PARTICULARLY

20   WITHIN APPLE'S DOMAIN AND CONTROL.  WE RELY UPON THEM TO DO IT,

21   IT'S NOT THE EQUIVALENT OF GOING ON AND TAKING A PICTURE OF

22   SOMETHING THEN PRODUCING IT BACK IN LITIGATION.

23        THE COURT:  MR. FAZIO, THIS IS AN ISSUE THAT I HAVE

24   WRESTLED WITH IN A NUMBER OF PATENT CASES IN PARTICULAR BECAUSE

25   SO MANY OF THESE REQUESTS YOU ARE INTERESTED IN SEEMS TO ME ARE

1    DRIVEN BY THE REQUIREMENTS OF GEORGIA PACIFIC REQUIREMENTS OF

2    PANDUIT AND SO ON AND SO FORTH.

3         IT WOULD SEEM TO ME GIVEN THAT THERE'S A MISMATCH BETWEEN

4    THE CASE LAW ON THE ONE HAND AND THE WAY IN WHICH FINANCIAL

5    DATA IS MAINTAINED AT SO MANY TECHNOLOGY COMPANIES OR COMPANIES

6    THAT ARE RELATIVELY LOW TECH IN THE PRESENT AGE.  BUT ONE EASY

7    SOLUTION HERE WHETHER WE ARE TALKING ABOUT ORACLE DATABASES,

8    SAP DATABASES, ZYLINC, PICK YOUR PROVIDER, ONE PRACTICAL

9    SOLUTION TO ALL THIS WOULD BE TO SAY LOOK, IF WHAT YOU ARE

10   ASKING FOR IN THIS CASE SAMSUNG, IS A NEW SET OF REPORTS MAYBE

11   MANY REPORTS, YOU MAY BE ENTITLED TO IT.

12        YOU MAY HAVE TO SHOW THAT INFORMATION OR PRESENT THAT

13   INFORMATION IN ORDER TO MEET YOUR BURDEN ON DAMAGES, BUT YOU

14   OUGHT TO MAYBE PAY FOR IT.

15        SO WHY WOULDN'T THIS BE THE EXACTLY THE KIND OF SCENARIO

16   WHERE SOME TYPE OF COST SHIFTING GETS US AROUND THE PROBLEM?

17             MR. FAZIO:  WELL YOUR HONOR, I THINK AS A PRELIMINARY

18   MATTER WE HAVE A BRIEF COST SHIFTING BUT --

19             THE COURT:  THIS IS ME JUST THINKING OUT LOUD HERE.

20   BUT I'M INTERESTED IN YOUR THOUGHTS AND MR. LYON AS WELL

21   BECAUSE IT JUST SEEMS TO ME THAT THAT IS A THAT IS AN

22   ALTERNATIVE THAT IS NOT TYPICALLY ADDRESSED IN MOST OF THE

23   CASES IF NOT ANY OF THE CASES.

24             MR. FAZIO:  SURE, YOUR HONOR.

25        WELL, I THINK THERE WAS ACTUALLY COST SHIFTING IN THE

1    GONZALES V. GOOGLE CASE AND I THINK COST SHIFTING MAY HAVE BEEN

2    APPROPRIATE THERE BECAUSE YOU WERE TALKING ABOUT A THIRD PARTY

3    AS OPPOSED TO A PARTY.

4         TO REALLY GET TO THE POINT YOUR HONOR'S QUESTION FROM

5    WHERE I'M COMING FROM IS SAMSUNG HAS PRODUCED THIS EXACT SAME

6    TYPE OF DATA IN THIS EXACT SAME FORMAT THAT APPLE HAS

7    REQUESTED.

8         THE COURT:  YOU ARE TALKING 1846 NOW.

9         MR. FAZIO:  CORRECT, YOUR HONOR.

10        WE HAVE PRODUCED DATA ON A U.S. MARKET BASIS ON A

11   PER-PRODUCT BASIS.  AND WE DID THAT AT NO SMALL EXPENSE, YOUR

12   HONOR.  AND WE DID NOT ENGAGE IN ANY COST SHIFTING THERE THERE.

13        NOW WE THINK THIS IS WELL WITHIN A PARTY'S DISCOVERY

14   OBLIGATIONS TO DO WITHOUT ENGAGING IN COST SHIFTING BECAUSE,

15   QUITE FRANKLY, WE DID IT.  WE DIDN'T GET REIMBURSED FOR IT.

16        IF THE COURT HAS ANY FURTHER QUESTIONS, I'M HAPPY TO

17   ANSWER THEM, BUT I CERTAINLY DO NOT WANT TO ALSO TALK FOR THE

18   SAKE OF TALKING BECAUSE I CAN APPRECIATE THE HOUR IS GETTING

19   QUITE LATE AS WELL.

20        THE COURT:  I WILL UNDOUBTEDLY HAVE MORE QUESTIONS.

21        BUT BEFORE I TURN TO MR. LYON, I DID WANT TO ASK YOU

22   ABOUT THE APRIL 12, 2013, ORDER AND GET YOUR THOUGHTS ABOUT

23   THAT.

24        IS THERE A DISPUTE REMAINING FOR THE COURT TO RESOLVE?

25        MR. FAZIO:  NO, YOUR HONOR.

1      I KNOW IT MAY NOT SEEM SO FROM WHERE THE COURT IS SITTING,

2   BUT WE HAVE BEEN ABLE TO RESOLVE A LARGE NUMBER OF THE DISPUTES

3   BETWEEN THE PARTIES AND THAT WAS FORTUNATELY ONE OF THEM, SO

4   THERE'S NOTHING FOR THE COURT TO DECIDE ON THAT.

5          THE COURT:  SAY NO MORE ABOUT THAT MR. FAZIO, I WILL

6   GIVE YOU A CHANCE FOR REBUTTAL.

7      MR. LYON.

8          MR. LYON:  THANK YOU, YOUR HONOR.

9      SO I WOULD LIKE TO ADDRESS ALL THE POINTS WE ARE

10  DISCUSSING, BUT I WOULD ALSO LIKE TO IF WE COULD, TAKE A LITTLE

11  BIT OF PERSPECTIVE AS TO WHERE WE ARE HERE AND HOW WE GOT HERE

12  BECAUSE THAT'S IMPORTANT.

13      THERE WAS INITIALLY A MEET AND CONFER BETWEEN THE PARTIES

14  BACK IN APRIL AND MARCH TIME FRAME TO TALK ABOUT WHAT KIND OF

15  FINANCIAL INFORMATION WOULD BE PRODUCED, AND THERE WAS QUITE A

16  FEW MEET AND CONFER SECTIONS.

17      WE AGREED ON THE TYPES OF INFORMATION P&L TYPE OF

18  INFORMATION FOR THE PARTICULAR PRODUCTS AS THE PARTIES KEPT

19  THEM IN THE COURSE OF BUSINESS.

20      SO THAT'S -- BOTH OF THOSE WERE EXCHANGED MONTHS AND

21  MONTHS AGO.  SAMSUNG HAS HAD THAT INFORMATION FOR A COUPLE OF

22  MONTHS NOW, AND THEY FILED A MOTION LITERALLY ON THE LAST DAY

23  OF THE CLOSE OF DISCOVERY.  BEFORE THEY HAD THE DEPOSITION OF

24  MR. BUCKLEY.  THEY HAD SOME ISSUES WITH THE LEVEL OF DETAIL

25  THAT WE HAD.

1      AND WE SAID LOOK, WE JUST DON'T KEEP DOCUMENTS AND

2  FINANCIAL INFORMATION IN THE LEVEL OF DETAIL THAT YOU ARE

3  TALKING ABOUT, MR. BUCKLEY WILL TELL YOU THAT.

4      THEY FILED THIS MOTION ANYWAY.

5      SO WHAT'S REALLY INTERESTING, IF YOU LOOK AT THE MOTION

6  AS FILED, IT'S VERY DIFFERENT THAN THE MOTION YOU ARE NOW

7  SEEING IN FRONT OF YOU AS OF THE REPLY.

8      THESE EIGHT CATEGORIES THAT MR. FAZIO TALKED ABOUT, THEY

9  ARE NOT EVEN DISCUSSED IN THE MOTION.  THOSE ARE THINGS THAT

10  ARE VERY SPECIFIC, THEY ALL COME OUT OF MR. BUCKLEY'S

11  DEPOSITION WHICH DIDN'T OCCUR UNTIL LATER.

12      FRANKLY, THEY FILED A MOTION TO COMPEL IN THEIR RELY ON

13  THE BUCKLEY DEPOSITION AS OPPOSED TO HAVING IT BE A REPLY IN

14  THIS CASE.

15      SO PART OF WHAT YOU ARE HEARING MR. FAZIO SAYING THAT THE

16  DECLARATIONS AREN'T SUFFICIENTLY DETAILED IS THE AMOUNT OF

17  INFORMATION IT WOULD TAKE FOR US TO GATHER, WELL WE DIDN'T HAVE

18  THE DETAILS AS TO WHAT THEY WERE REALLY SEEKING, SO THAT'S PART

19  OF THE ISSUE.

20      I WOULD ALSO SUBMIT IF YOU REALLY LOOK AT HIS DEPOSITION

21  IT'S PRETTY SPECIFIC.  IT TALKS ABOUT THE BURDEN AND THAT WE

22  DON'T HAVE THIS DATA, THAT MUCH OF THE DATA WE ARE TALKING

23  ABOUT HERE IS CALCULATIONS OR ALLOCATIONS THAT ARE MADE AND

24  THEY ARE MADE NOT NECESSARILY REGULARLY, SOMETIMES THEY ARE

25  MADE AD HOC FOR CERTAIN PRESENTATIONS THAT ARE MADE TO VARIOUS

1    PEOPLE AS WE ARE MAKING DECISIONS.

2         AND TO BE HONEST WITH YOU, REASONABLE MINDS CAN DIFFER ON

3    THESE THINGS.  SO THERE ISN'T -- THE INFORMATION WE COLLECT AND

4    ROLL UP INTO A DATABASE WE HAVE GIVEN THEM THE ROLL UPS AS TO

5    THE LEVEL WE KEEP IN THE ORDINARY COURSE.

6         BUT WHEN YOU TALK ABOUT A LOT OF THESE THINGS IF I

7    BUOYANT YOU TO THE LIST I HANDED UP, ESSENTIALLY EVERYTHING

8    REALLY WHEN YOU ARE LOOKING AT THIS FOR THE MOST PART THERE ARE

9    GAPS MISSING FOR US TO BE ABLE TO GIVE COMPLETE DATA FOR SURE,

10   BUT SOME OF IT THERE JUST ISN'T -- IF YOU LOOK AT ITEMS 2

11   THROUGH 8, EFFECTIVELY, THERE ARE NOT REGULAR DATA THAT IS

12   COLLECTED AND STORED IN THE DATABASE WHERE WE CAN SAY HERE'S A

13   BUTTON, LET'S PUSH IT OR HERE'S A QUERY, GENERATE IT.

14        WHAT IT WOULD REQUIRE IS GET LARGE NUMBERS OF FINANCIAL

15   STAFF TOGETHER TO FIGURE OUT HOW ARE WE GOING TO MAKE THE

16   CALCULATIONS, HOW ARE WE GOING TO COME UP WITH THESE

17   CALCULATIONS, WHAT I KIND OF NUMBERS WOULD WE GENERATE IN ORDER

18   TO ANSWER THE QUESTIONS BECAUSE WE JUST DON'T IN THE ORDINARY

19   COURSE OF BUSINESS.

20        APPLE IS A WORLDWIDE COMPANY THAT LOOKS AT EVERYTHING AS

21   A WHOLE.  IT ISN'T ORGANIZED DIVISION-WISE BY PRODUCTS, BY

22   PRODUCT LINES, IT'S ALL SORT OF ONE BIG THING.

23        SO A LOT OF THESE DETAILS THAT SAMSUNG IS ASKING FOR HERE

24   IS A SITUATION WHERE WE JUST DON'T TRACK IT IN THE REGULAR

25   BASIS.

1      TO THE EXTENT THERE ARE ESTIMATES THAT ARE NEEDED FOR

2    PROJECTIONS WE SOMETIMES TRY TO CREATE THOSE AND OFTEN THERE

3    ARE FUDGE FACTORS JUST BECAUSE THEY ARE FORWARD LOOKING

4    ESTIMATES AND JUST A GUESS.

5      SO THIS INFORMATION WE ARE TALKING ABOUT I WOULD SUBMIT

6    AT THE END OF THE DAY DISCOVERY HAS GOT TO END.  WE SUBMITTED

7    OUR EXPERT REPORTS YESTERDAY ON DAMAGES.  THIS IS GOING INTO

8    THIS KIND OF A LEVEL, AND FRANKLY, I WOULD SAY IF APPLE HAS TO

9    PRODUCE IT, SAMSUNG SHOULD HAVE TO PRODUCE IT TOO BECAUSE IT'S

10   REALLY AT A RECIPROCAL BASIS HERE.

11     IF WE GET INTO THAT, WE ARE REALLY REOPENING A LARGE

12   AMOUNT OF DISCOVERY.  I'M CONFIDENT IN GENERATING MORE

13   DEPOSITION REQUESTS, I'M CONFIDENT THERE WILL BE SUPPLEMENTAL

14   EXPERT REPORT REQUESTS.

15     SO I THINK AT THIS POINT IN TIME IT DOESN'T MAKE SENSE.

16   WE HAD AGREED TO THE LEVEL OF DETAIL WE HAD AND WE WOULDN'T GET

17   INTO BACKUP, AND NOW EFFECTIVELY THAT'S WHAT SAMSUNG IS TRYING

18   TO DO IS GO BACK ON A LOT OF THESE AGREEMENTS AND GET THIS

19   UNDERLYING DATA.

20           THE COURT:  SO MR. LYON, LET ME ASK YOU HOW YOU SEE

21   THIS PLAYING OUT GOING FORWARD.

22     LET'S ASSUME WE ARE TALKING ABOUT A REQUEST FROM SAMSUNG

23   FOR GROSS MARGIN, U.S. MARKET, INDIVIDUAL IPHONE RELEASE OF 5,

24   LET'S PICK ONE FOR THE SAKE OF CONVERSATION.

25           AND LET'S ASSUME THAT YOU ARE TELLING ME AS YOU'VE TOLD

```
 1      SAMSUNG, GEE, WE WOULD LIKE TO HELP YOU OUT IF WE HAD THAT

 2      REPORT IT'S YOURS BUT WE DON'T RUN REPORTS THAT WAY.  WE CAN'T

 3      REPORT ON A PARTICULAR GEOGRAPHIC FOR A PARTICULAR PRODUCT DOWN

 4      TO THE LEVEL OF A GROSS MARGIN HYPOTHETICALLY SPEAKING.

 5           IF THAT'S TRUE, AND NOTHING PERHAPS IS IMPOSSIBLE, NOT

 6      EVERYTHING IS IMPOSSIBLE.  LET'S ASSUME YOU COULD DO IT BUT IT

 7      WOULD COST AN ARM AND A LEG AND TAKE MONTHS AND ALL THAT.

 8      WHAT'S THE CONSEQUENCE GOING FORWARD?

 9           I'M JUST THINKING ABOUT WHAT THIS WILL LOOK LIKE AT TRIAL

10      WITH A DAMAGES EXPERT IN THE WITNESS CHAIR.  WILL APPLE BE IN A

11      POSITION FOR EXAMPLE TO CHALLENGE OR QUESTION THE ANALYSIS OR

12      THE ALLOCATION OF THAT EXPERT HAS DONE ON HIS OWN WHEN IT'S

13      SAID IT CAN'T PRODUCE THE INFORMATION ITSELF?

14                MR. LYON:  I THINK AS A PRACTICAL MATTER IT WOULD BE

15      VERY DIFFICULT FOR US TO COME UP AND SAY WE CAN'T GIVE YOU THIS

16      INFORMATION NOW THEN SUDDENLY POP IT OUT OF THE WOODWORK AND

17      SAY HERE IT IS, YOU JUST DIDN'T USE THE RIGHT INFORMATION.

18           OBVIOUSLY IF SAMSUNG IS RELYING ON THE INFORMATION WE

19      PRODUCED, WE MAY CHALLENGE HOW THEY ALLOCATE IT, WE MAY

20      CHALLENGE HOW THEY BREAK IT DOWN, BUT THE ACTUAL NUMBERS WE ARE

21      NOT GOING TO CHALLENGE.

22           AND OBVIOUSLY THEY CAN ONLY GO TO A CERTAIN LEVEL, JUST

23      AS MR. FAZIO SAID, THEY PRODUCED THE SAME LEVEL.  THAT'S NOT

24      ACTUALLY TRUE.  IT DEPENDS ON WHAT YOU MEAN BY PRODUCT OR

25      PRODUCT LINE.
```

1        AS THE COURT MAY KNOW WE HAVE THIS DISPUTE.  THEY

2   PRODUCED INFORMATION THAT WE WOULD VIEW AS A PRODUCT AND THEY

3   DON'T BREAK IT DOWN BY MODELS CARRIERS AND THINGS LIKE THAT.

4        SO WE HAVE THE SIMILAR ISSUES ON OUR SIDE WITH THE DATA

5   THAT HAS BEEN ROLLED UP INTO A LEVEL THAT MAY BE LESS GRANULAR

6   THAN WHAT THEY NEED.

7        IF AT SOME POINT WE ALL NEED TO GET TO THAT POINT AND WE

8   ARE DOWN INTO THE FINE GRANULARITY, THERE MAY BE TIME FOR BOTH

9   SIDES TO SUPPLEMENT PRODUCTIONS.  BUT THE OTHER OPTION WOULD BE

10  WE JUST WORK WITH THE NUMBERS WE'VE GOT WITH WHATEVER

11  DEFINITIONS WE ARE GOING TO END UP HAVING AS FAR AS WHAT THE

12  PRODUCT IS REPRESENTATIVE OF A PRODUCT.

13       ALL OF THOSE THINGS THAT HAVE YET TO BE DECIDED AND THEN

14  WE WILL DEAL WITH THEM AS THEY ARE.

15       I DON'T THINK EITHER SIDE CAN FAIRLY CHALLENGE ANYBODY'S

16  EXPERT, WHETHER IT'S TECHNICAL OR DAMAGES, WITH A DOCUMENT THAT

17  THEY WITHHELD FROM PRODUCTION THAT WAS RESPONSIVE, THAT SHOULD

18  HAVE BEEN PRODUCED.

19            THE COURT:  SO I THINK WE WOULD ALL AGREE THAT, LET

20  ME JUST SAY IT THIS WAY, I'M PICTURING AGAIN HYPOTHETICALLY

21  SAMSUNG'S DAMAGES EXPERT TESTIFYING WITH JUDGE KOH AND

22  EVERYBODY HERE AND THE WORLD WATCHING, MR. LEE JUST LAYING INTO

23  HIM FOR THE FACT THAT HE DOESN'T HAVE THE GROSS MARGIN DATA FOR

24  THE IPHONE 4 IN THE U.S. AND HOW COULD YOU CALL YOURSELF AN

25  EXPERT WITHOUT EVEN CONSIDERING -- AND THE WHOLE LIST OF

1    CROSS-EXAMINATION THAT WOULD JUST GUT THE POOR FELLOW IN FRONT

2    OF THE JURY.

3        I ASSUME WE WOULD ALL AGREE THAT THAT WOULD NOT BE FAIR

4    GAME IN LIGHT OF THE POSITION APPLE IS TAKING IN THIS DISCOVERY

5    DISPUTE.

6            MR. LYON:  IN THAT ABSTRACT, I THINK THAT'S PROBABLY

7    FAIR.  I THINK THAT'S CORRECT.

8            THE COURT:  THE QUESTION I HAVE, SO IF THAT'S FAIRLY

9    REASONABLE AND SOMETHING REASONABLE MINDS CAN GENERALLY AGREE

10   ON, IT WOULD SEEM THAT THE NEXT QUESTION IS, WELL, WHAT'S FAIR

11   AND REASONABLE FOR SAMSUNG'S EXPERT TO DO IN LIGHT OF THAT

12   REALITY?

13       IN OTHER WORDS, IF THEY TRIED TO GET THE EXACT

14   INFORMATION IN A PARTICULAR WAY FROM APPLE AND APPLE SAYS,

15   CAN'T DO IT.  IS IT UNREASONABLE THEN FOR SAMSUNG THEN TO TAKE

16   SOME FAIRLY GENEROUS READS ON HOW TO ALLOCATE MARGIN AND

17   PROFITABILITY?

18           MR. LYON:  I THINK EXPERTS DO THIS ALL THE TIME,

19   PARTICULARLY FINANCIAL EXPERTS BECAUSE YOU DON'T HAVE PERFECT

20   DATA EVER IN ANY CASE.  THERE'S ALWAYS SOMETHING YOU DO TO MAKE

21   ASSESSMENTS OR SUBMITS OR ALLOCATIONS BASED ON.

22       I HAVE ACTUALLY NOT LOOKED AT SAMSUNG'S DAMAGES EXPERT

23   REPORT YET, IT WAS FILED YESTERDAY.  BUT MY GUESS WOULD BE AND

24   MR. FAZIO MAY BE ABLE TO CONFIRM IT, THERE WERE SOME

25   ALLOCATIONS MADE AND THEY MADE ALLOCATIONS BASED ON SOME

1    OBJECTIVE SAYING THAT THEY BELIEVE IS A GOOD WAY TO DO IT.

2         WE MAY CHALLENGE WHETHER THAT WAS REALLY THE RIGHT WAY TO

3    MAKE THE ALLOCATION THERE MAY BE SOME OF THAT.  BUT THE FACT

4    THEY MADE AN ALLOCATION, I DON'T THINK WOULD BE SOMETHING,

5    GIVEN THE FACT THEY DON'T HAVE DATA BELOW THAT.  AND I THINK AT

6    THE END OF THE DAY OUR EXPERTS ARE PROBABLY DOING THE SAME

7    THING WHEN YOU REALLY LOOK AT IT.

8         SO IT WOULDN'T BE A SITUATION WHERE I THINK IT WOULD BE

9    FAIR FOR EITHER SIDE TO COME IN AND SAY, WELL, WE HAVE DATA

10   THAT WE DIDN'T GIVE YOU THAT YOU SHOULD HAVE LOOKED AT.  IT IS

11   FAIR FOR EITHER SIDE TO BE ABLE TO CHALLENGE THE EXPERTS ON THE

12   RIGOROUSNESS OF THEIR ANALYSIS AND HOW THEY APPROACHED IT AND

13   WHETHER IT'S REALLY THE RIGHT APPROACH OR NOT.

14             THE COURT:  RIGHT.

15        AGAIN, I TAKE IT THAT IN TAKING THE POSITION THAT IT IS

16   UNABLE TO PRODUCE THESE PARTICULAR REPORTS, APPLE IN SOME WAYS

17   IS DOING SO AT ITS OWN PERIL BECAUSE IT MAY BE THAT DOWN THE

18   ROAD THAT TYPE OF ANALYSIS IS EXACTLY WHAT SAMSUNG'S EXPERT

19   SHOULD HAVE DONE IN ORDER TO GET TO THE RIGHT RESULT AND APPLE

20   IS GOING TO BE PRECLUDED FROM CHALLENGING.

21             MR. LYON:  THAT VERY WELL MAY BE.  IT COULD BE THAT

22   KIND OF A SITUATION.

23             THE COURT:  OKAY.  THANK YOU VERY MUCH.

24        MR. FAZIO, DO YOU WANT TO RESPOND?

25             MR. FAZIO:  YES, YOUR HONOR.  THANK YOU.

1          YOUR HONOR, I WANTED TO START OFF BY RESPONDING TO A

2     POINT REGARDING THE PARTY'S AGREEMENT BECAUSE I THINK WE JUST

3     HAVE A FUNDAMENTAL DIFFERENCE OF OPINION REGARDING WHAT THE

4     PARTY'S AGREEMENT WAS.

5          AND WE DID ADDRESS THIS IN THE LAST SECTION OF OUR REPLY

6     BRIEF, ROMAN III OF OUR REPLY BRIEF AT PAGES 12 AND 13.

7          BUT I WANTED TO EMPHASIZE IT AGAIN BECAUSE WHAT THE

8     CORRESPONDENCE SHOWED, AND SAMSUNG WAS THE PARTY THAT ACTUALLY

9     CAME FORWARD WITH THIS CORRESPONDENCE EVIDENCING THE PARTY'S

10    AGREEMENT IN THIS REGARD.

11         WE SAID IN OUR CORRESPONDENCE THAT "SAMSUNG AGREED TO

12    PRODUCE THESE FINANCIAL DOCUMENTS FOR THE ACCUSED SAMSUNG

13    PRODUCTS SOLD IN THE U.S."  AND THEN WE WENT ON IN THAT SAME

14    LETTER AND SAID, "THIS AGREEMENT TO PRODUCE IS WITH THE

15    UNDERSTANDING THAT APPLE HAS AGREED TO PRODUCE COMPARABLE

16    FINANCIAL DATA FOR THE ACCUSED APPLE PRODUCTS."

17         SO YOUR HONOR, WE CERTAINLY THOUGHT WE WERE GETTING A

18    CERTAIN GRANULARITY OF DATA COMPARABLE TO WHAT WE WERE GIVEN,

19    AND WE DIDN'T GET THAT.  AND I THINK IT'S A FUNDAMENTAL

20    DIFFERENCE OF OPINION WE HAVE WITH APPLE ON THAT PARTICULAR

21    POINT.

22         BUT THERE WAS A SUGGESTION THAT PERHAPS WE DIDN'T ACT

23    DILIGENTLY ON THIS, AND I RESPECTFULLY SUBMIT WE ABSOLUTELY

24    DID, YOUR HONOR.

25         WE RECEIVED APPLE'S FINANCIAL DOCUMENT PRODUCTION ON

```
1    APRIL 15TH, TAX DAY.  AND WE MET AND CONFERRED ON IT IN WRITING

2    OVER THE COURSE OF THE NEXT MONTH.  WE HAD LEAD TRIAL COUNSEL

3    MEET AND CONFER ON JUNE 20TH AND WE FILED OUR MOTION TO COMPEL

4    ABOUT TWO WEEKS THEREAFTER.

5         AND IN SOME LEVEL IT DOES REPRESENT A COMPLICATED ISSUE

6    THAT INVOLVES A LOT OF DOCUMENTS AND WE HAD TO WORK THROUGH

7    THOSE AND WE REACHED AGREEMENT ON MANY ASPECTS OF IT.  BUT WHAT

8    REMAINS IN THIS MOTION IS WHAT WE HAVE NOT BEEN ABLE TO REACH

9    AGREEMENTS ON.

10        THE COURT:  MR. FAZIO, MAY I ASK YOU SINCE YOUR

11   EXPERT REPORTS HAVE NOW BEEN SERVED, WHAT DID YOUR EXPERT DO

12   WITHOUT THE BENEFIT OF THIS INFORMATION?  WHAT WERE THE

13   POSITIONS TAKEN AS A RESULT OF IT?

14        MR. FAZIO:  YOUR HONOR, UNFORTUNATELY I'M NOT AS

15   FAMILIAR WITH THOSE REPORTS AS I WOULD LIKE TO BE BUT I'M GOING

16   TO GUESS THAT HE DID THE BEST THAT HE POSSIBLY COULD, BUT I

17   DON'T THINK THAT ABROGATES OUR NEED FOR THAT DATA.

18        AND APPLE'S COUNSEL SAID THEY DON'T HAVE PERFECT DATA.

19        AND I WOULD RESPECTFULLY SUBMIT, YOUR HONOR, THAT THERE'S

20   CASE LAW OUT THERE THAT SAYS WHEN YOU ARE QUERYING THESE

21   FINANCIAL DATABASES, THAT IT MAY NOT BE PERFECT AT THE END OF

22   THE DAY.  AND ONE OF THE CASES THAT WE CITED IN OUR MOVING

23   PAPERS, THE BURKYBILE V. MITSUBISHI CASE WAS EXACTLY ABOUT THIS

24   EXACT POINT.

25        IN THAT CASE YOU HAD MITSUBISHI THAT WAS COMPELLED BY THE
```

1    COURT TO PRODUCE CERTAIN DATA COMPILATIONS AND DATA SUMMARIES.

2         AND THEY CAME BACK A COUPLE OF MONTHS AFTER THE COURT

3    ISSUED ITS ORDER AND SAID, WE CAN'T ACTUALLY PRODUCE WHAT THE

4    COURT ORDERED US TO PRODUCE, BECAUSE FOR US TO PRODUCE THAT

5    INFORMATION IS GOING TO REQUIRE US TO RECREATE DATA AND WE

6    DON'T THINK WE CAN ACCURATELY RECREATE IT.

7         AND THE COURT IN THE BERKYBILE V. MITSUVISHI CASE SAID,

8    YOU KNOW, THAT'S OKAY, IF YOU CAN'T GET IT DOWN TO THE EXACT

9    SET, BUT IF YOU CAN DO A "REASONABLE APPROXIMATION" THEN THAT'S

10   SUFFICIENT.

11        SO WE CAN APPRECIATE THE FACT THAT APPLE MAY HAVE TO

12   QUERY A LOT OF DATABASES OVER A DESCENT PERIOD OF TIME

13   INVOLVING SEVERAL PRODUCTS TO COME UP WITH THIS DATA.  AND IT

14   MAY NOT BE PERFECT DOWN TO THE LAST SET, BUT IT'S CERTAINLY

15   BETTER THAN WHAT WE HAVE SO FAR WHICH IS AGGREGATING ENTIRE

16   PRODUCT LINES TOGETHER, ENTIRE PRODUCT LINES TOGETHER.

17        AND NO MATTER WHAT THE PARTY'S DIFFERENCES OF OPINION MAY

18   BE AT THIS POINT IN THE LITIGATION REGARDING WHAT CONSTITUTES A

19   PRODUCT AND WHAT DOESN'T CONSTITUTE A PRODUCT, WHATEVER IT IS

20   WE DON'T THINK A PRODUCT IS SAYING, WELL, ALL OF IPHONE IS A

21   PRODUCT AND THEREFORE YOU CAN AGGREGATE ALL OF YOUR FINANCIAL

22   DATA FOR ALL OF IPHONE SINCE THE BEGINNING OF THE IPHONE AND

23   GIVE US THAT AND MAKE US SORT THROUGH IT.

24        WE DON'T THINK THAT'S ENOUGH, YOUR HONOR.

25        THERE WAS ONE FINAL POINT THAT I DID WANT TO MAKE WITH

 1    RESPECT TO THE LIST THAT WAS HANDED UP AT THE BEGINNING OF THE

 2    HEARING BECAUSE WE THINK THAT THE EVIDENTIARY RECORD IN THIS

 3    CASE SHOWS THAT THIS DATA THAT IS ON THIS LIST IS NOT DATA THAT

 4    NEEDS TO BE GENERATED PER SE, IT'S ALREADY BEING KEPT IN THE

 5    ORDINARY COURSE OF BUSINESS AT APPLE.

 6         AND I DON'T WANT TO DO THIS IN A WAY WHERE I'M READING

 7    TESTIMONY AND THINGS LIKE THAT.  SO I WOULD SAY FOR REVENUE

 8    ADJUSTMENTS, WE HAVE A BLOCK QUOTE OF TESTIMONY AT PAGES 3 AND

 9    4 OF OUR REPLY THAT WE THINK SHOWS THAT REVENUE ADJUSTMENTS ARE

10    PLAINLY MAINTAINED AT APPLE IN A CERTAIN WAY.  WE THINK WE ARE

11    ENTITLED TO THAT.

12         THE SAME THING FOR STANDARD MARGINS WHERE THERE'S

13    TESTIMONY CITED ON PAGE 4 OF OUR REPLY.

14         THE COURT:  CAN I ASK YOU, BY THE WAY, PLEASE FORGIVE

15    MY IGNORANCE, I'M FAMILIAR WITH GROSS MARGINS, BUT WHAT'S A

16    STANDARD MARGIN?

17         MR. FAZIO:  STANDARD MARGIN, AS I UNDERSTAND IT

18    YOUR HONOR, IS REVENUE LESS STANDARD COSTS.

19         AND THAT IS SOMETHING THAT HAS NOT BEEN PRODUCED IN THE

20    CASE AND WE THINK WE ARE ENTITLED TO IT.

21         AND APPLE HAS SAID IN MR. BUCKLEY'S TESTIMONY THAT THEY

22    MAINTAIN IT IN A CERTAIN WAY.

23         THE COURT:  AND ARE STANDARD COSTS DIFFERENT FROM

24    COSTS OF GOODS SOLD?

25         MR. FAZIO:  YOUR HONOR, THIS IS STARTING TO GET

1    DEEPER THAN MY LEVEL OF KNOWLEDGE.

2         THE COURT:  FAIR ENOUGH.  IT'S NOT REASONABLE FOR ME

3    TO SPECULATE.

4         ALL RIGHT.  I THINK I UNDERSTAND THE POSITION.  I

5    CERTAINLY HAVE THE TESTIMONY IN FRONT OF ME.

6         ONE LAST QUESTION IS IN TERMS OF THE SCHEDULE, OBVIOUSLY

7    YOU ALL HAVE SERVED INITIAL REPORTS.  IS THERE A PERIOD FOR

8    REBUTTAL REPORTS THAT WOULD BE IMPLICATED HERE?

9         MR. FAZIO:  THERE IS ALREADY A PREDETERMINED DATE FOR

10   REBUTTAL REPORTS AND THE DATE ESCAPES ME.

11        AND I THINK FURTHER TO YOUR HONOR'S POINT, WHAT WE DO WITH

12   THIS INFORMATION IN ANY EVENT, EVEN IF WE DON'T GET IT IN TIME

13   FOR THE REBUTTAL REPORTS, IN THE 1846 ACTION WE HAD A TRIAL IN

14   AUGUST OF 2012 AND WE HAD SUPPLEMENTAL EXPERT REPORTS THAT WENT

15   IN THE MONTH BEFORE IN JULY AND AGAIN EARLIER IN APRIL TO

16   ACCOUNT FOR THIS EXACT SAME CONTINGENCY WHICH WAS THE

17   PRODUCTION OF ADDITIONAL FINANCIAL DATA.

18        SO IT WAS DONE THERE, YOUR HONOR, WE THINK IT COULD BE

19   DONE HERE REGARDLESS OF WHETHER OR NOT WE COULD GET IT IN IN

20   THE REBUTTAL REPORT.

21        THE COURT:  ALL RIGHT.

22   MR. LYON, GO AHEAD, I WILL GIVE YOU THE LAST WORD.

23        MR. LYON:  THANK YOU VERY MUCH.

24   I WANTED TO ADDRESS A COUPLE OF THE ISSUES GOING THROUGH

25   THE ITEMS ON THIS LIST BECAUSE I THINK THERE IS SOME DISCONNECT

1    OF WHAT IS KEPT AND WHAT IS NOT.

2         WITH REGARD TO ITEM NUMBER 2, IF YOU LOOK THE AT BUCKLEY

3    DEPOSITION AT PAGE 28, VERY CLEARLY THIS IS SOMETHING THAT IS

4    GENERATED AND CREATED, IT IS SOMETHING THAT COULD BE COME BACK

5    TO BUT IT'S NOT SOMETHING THAT'S KEPT.

6         AND IN FACT WHILE THERE'S SOME DISCUSSION IN THE FIRST

7    ITEMS 2A-2D IN THIS DISCUSSION, ALL THE OTHER ITEMS UNDER E,

8    NONE OF THAT IS KEPT.

9         SO IN ORDER TO REALLY GET A FULL ON UP TO NUMBER 2, YOU

10   HAVE TO HAVE ALL OF THAT INFORMATION AND NONE OF THAT IS KEPT.

11        THE ITEM 3 THAT MR. FAZIO REFERENCED TO, I ACTUALLY DID

12   PRODUCE.  I GUESS THIS IS -- WE PRODUCED THE REVENUES AND THE

13   STANDARD COSTS.

14        SO THAT'S A CALCULATION.  I MEAN, WE COULD DO IT, THEY

15   COULD DO IT, BUT IT'S SOMETHING THAT DOESN'T SEEM TO ME WE

16   SHOULD BE FORCED TO HAVE TO DO THAT.

17        AND ALL OF THE REST OF THESE, THERE ARE THINGS, IT'S -- I

18   WOULD LOVE TO SAY IT'S ALL IN THIS ONE NICE BIG DATABASE, BUT

19   IT'S NOT.

20        WHAT YOU SEE IS THERE'S SOME THAT ARE KEPT BY EXCEL

21   SPREADSHEETS.  THERE ARE CLAIMS THAT ARE MADE THAT ARE ACTUALLY

22   LITERALLY CALL-INS FROM CERTAIN PARTIES, SO PEOPLE WILL KEEP

23   TRACK OF THE CALL-INS.

24        THEN AT SOME POINT THE NUMBERS GET AGGREGATED AND THROWN

25   UP INTO THE DATABASE.

1          BUT GOING BACK TO TRACK THE BACKUP WOULD REQUIRE AN

2     EXTENSIVE GOING BACK THROUGH MANY, MANY PEOPLE, COLLECTING

3     DOCUMENTS AND TRYING TO GO THROUGH IT.

4          SO THE BURDEN IS VERY HIGH.  AND I WOULD SAY THAT TO THE

5     EXTENT WE NEED TO DO THAT THEN WE WOULD ASK RESPECTIVELY

6     SAMSUNG ALSO BE ORDERED TO DO THAT BECAUSE OTHERWISE THERE

7     WOULD BE THIS DISPARITY OF INFORMATION BETWEEN THE PARTIES

8               THE COURT:  ALL RIGHT.

9          THE MATTER IS SUBMITTED.  I APPRECIATE THE ARGUMENTS TODAY.

10         I WILL DO MY BEST TO GET AN ORDER OUT QUICKLY.  I WISH YOU

11    ALL A GOOD AFTERNOON.

12         ALL RIGHT.  WE WILL STAND IN RECESS.

13         LET ME JUST INFORM THE PARTIES WHO MAY BE HERE FOR THE 1:30

14    HEARING, I'M GOING TO NEED TO START A LITTLE BIT LATER TO GIVE

15    MYSELF A LITTLE BIT TO GIVE ME SOME ENERGY FROM THE BENCH.

16         SO WE WILL START AT 2:00 AND GO FROM THERE.

17              MR. LYON:  THANK YOU, YOUR HONOR.

18         (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 8/22/13