```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN JOSE DIVISION

 4


 5

        APPLE INC., A CALIFORNIA        )  C-12-00630 LHK
 6      CORPORATION,                     )
                                         )  SAN JOSE, CALIFORNIA
 7                   PLAINTIFF,          )
                                         )  JULY 31, 2013
 8            VS.                        )
                                         )  PAGES 1-64
 9      SAMSUNG ELECTRONICS CO., LTD.,   )
        A KOREAN BUSINESS ENTITY;        )
10      SAMSUNG ELECTRONICS AMERICA,     )
        INC., A NEW YORK CORPORATION;    )
11      SAMSUNG TELECOMMUNICATIONS       )
        AMERICA, LLC, A DELAWARE         )
12      LIMITED LIABILITY COMPANY,       )
                                         )
13                   DEFENDANTS.         )
        _____ )

14

15

16              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17            UNITED STATES DISTRICT JUDGE

18

19

20             APPEARANCES ON NEXT PAGE

21

22

23   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1

 2      A P P E A R A N C E S:

 3      FOR APPLE:              GIBSON, DUNN & CRUTCHER
                                BY:   JOSH A. KREVITT
 4                              200 PARK AVENUE
                                NEW YORK, NEW YORK  10166
 5
                                BY:  H. MARK LYON
 6                              1881 PAGE MILL ROAD
                                PALO ALTO, CALIFORNIA  94304
 7
                                WILMER, CUTLER, PICKERING,
 8                              HALE AND DORR
                                BY:   WILLIAM F. LEE
 9                              60 STATE STREET
                                BOSTON, MASSACHUSETTS  02109
10
                                BY:  MARK D. SELWYN
11                              950 PAGE MILL ROAD
                                PALO ALTO, CALIFORNIA  94304
12

13      FOR SAMSUNG:            QUINN, EMANUEL, URQUHART,
                                OLIVER & HEDGES
14                              BY:   KEVIN P.B. JOHNSON
                                      VICTORIA F. MAROULIS
15                                    ALEXANDER D. BAXTER
                                555 TWIN DOLPHIN DRIVE, 5TH FLOOR
16                              REDWOOD SHORES, CALIFORNIA  94065

17                              BY:  MARISSA R. DUCCA
                                1299 PENNSYLVANIA AVENUE NW #825
18                              WASHINGTON, D.C.  20004

19                              BY:  MAXIM PRICE
                                51 MADISON AVENUE, 22ND FLOOR
20                              NEW YORK, NEW YORK  10010

21

22

23

24

25
```

```
1     SAN JOSE, CALIFORNIA                    JULY 31, 2013
2                  P R O C E E D I N G S
3       (COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)
4              THE COURT:  PLEASE BE SEATED.
5              THE CLERK:  CALLING CASE NUMBER C-12-00630 LHK,
6     APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY,
7     LIMITED, ET AL.
8              MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.
9     KEVIN JOHNSON ON BEHALF OF SAMSUNG.  WITH ME IS VICKY MAROULIS.
10             MS. MAROULIS:  GOOD AFTERNOON.
11             MR. JOHNSON:  MARISSA DUCCA, MAX PRICE, AND
12    ALEX BAXTER.
13             THE COURT:  OKAY.  I'M SORRY.  LET ME JUST CATCH THAT
14    ONE MORE TIME.
15        SO WE HAVE MR. JOHNSON.
16             MR. JOHNSON:  MS. MAROULIS.
17             THE COURT:  MS. MAROULIS.  MY LIST IS NOT IN ORDER.
18    HANG ON ONE SECOND.  OKAY.
19        OKAY.  MS. MAROULIS, AND THEN WHO ELSE?
20             MR. JOHNSON:  WE HAVE MARISSA DUCCA, D-U-C-C-A.
21             THE COURT:  OKAY.
22             MR. JOHNSON:  MAX PRICE.
23             THE COURT:  THANK YOU.
24             MR. JOHNSON:  AND ALEX BAXTER.
25             THE COURT:  OKAY.  THANK YOU.
```

1            MR. KREVITT:  GOOD AFTERNOON, YOUR HONOR.

2    JOSH KREVITT FROM GIBSON DUNN FOR APPLE.  WITH ME IS MY

3    PARTNER, MARK LYON.

4            THE COURT:  OKAY.  THANK YOU.

5            MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE AND

6    MARK SELWYN FROM WILMER, HALE FOR APPLE.

7            THE COURT:  OKAY.  THANK YOU.

8        ALL RIGHT.  PLEASE GO AHEAD AND TAKE A SEAT.

9        LET'S TALK ABOUT THE CASE NARROWING FIRST, AND FOR THAT LET

10   ME ASK, WHEN DO YOU PLAN TO FILE YOUR STIPULATION OF DISMISSAL

11   WITHOUT PREJUDICE AS TO THE PATENTS, CLAIMS, AND PRODUCTS THAT

12   YOU'VE ALREADY SORT OF ELIMINATED?

13           MS. MAROULIS:  YOUR HONOR, THE NEXT CASE NARROWING

14   DEADLINE IS IN SEPTEMBER, AND ONCE THE PARTIES DROP THAT LAST

15   PATENT, OR ADDITIONAL PATENTS, WE CAN FILE A JOINT STIPULATION,

16   OR EARLIER IF THE COURT PREFERS.

17           THE COURT:  WELL, I WOULD PREFER, FOR THE ONES YOU'VE

18   ALREADY MADE A DECISION ON, TO GO AHEAD WITH THAT.

19           MR. KREVITT:  WE CAN GO AHEAD AND DO THAT.

20           THE COURT:  AND THEN YOU CAN SUPPLEMENT IT AT THE END

21   OF SEPTEMBER.

22           MS. MAROULIS:  YES, YOUR HONOR.  WE'LL DO THAT AT THE

23   END OF THIS WEEK.

24           THE COURT:  OKAY.  SHALL WE JUST SAY AUGUST 2ND?

25           MR. KREVITT:  THAT'S FINE, YOUR HONOR.

```
 1                THE COURT:  OR DO YOU WANT NEXT WEEK?  IT DOESN'T
 2      MATTER TO ME.
 3                MR. KREVITT:  WE KNOW WHAT THEY ARE, YOUR HONOR.
 4      IT'S EASY ENOUGH TO DO, SO WHATEVER YOUR HONOR WISHES.
 5                THE COURT:  ALL RIGHT.  LET'S PLEASE DO THAT ON
 6      AUGUST 2ND OF 2013.
 7           THIS IS WHAT I WAS PLANNING TO DO WITH REGARD TO PRODUCTS,
 8      AS WELL AS THE PRIOR ART COMBINATIONS, AND I WILL LET YOU BE
 9      HEARD ON THIS.
10           I WAS PLANNING TO JUST REQUIRE THAT ANY PRODUCT HAS TO BE
11      IDENTIFIED BY CARRIER AND BY OPERATING SOFTWARE VERSION, BUT I
12      WOULD INCREASE THE TOTAL NUMBER OF PRODUCTS GOING TO TRIAL TO
13      15.
14           AS FAR AS PRIOR ART REFERENCES, THE COMBINATION -- EACH
15      COMBINATION HAS TO BE IDENTIFIED SEPARATELY.  SO IF YOU WANT TO
16      SAY A AND B COUNTS AS ONE, A PLUS B PLUS C COUNTS AS ONE, I'D
17      LIKE TO DO IT THAT WAY.
18           AND I ALSO MIGHT BE OPEN TO INCREASING THAT LIMIT BY FIVE
19      IF THAT MAKES IT ANY EASIER FOR YOU.
20                MR. KREVITT:  YOUR HONOR, IF I MAY, WITH RESPECT TO
21      THE PRIOR ART --
22                THE COURT:  YES.
23                MR. KREVITT:  -- I BELIEVE THE PARTIES HAVE REACHED
24      AN UNDERSTANDING REGARDING THAT AND NO LONGER HAVE A DISPUTE TO
25      PRESENT TO THE COURT.
```

```
1              THE COURT:  OH, OKAY.

2              MR. KREVITT:  WITH RESPECT -- AND OBVIOUSLY I WILL

3    BE -- THERE'S PLENTY OF PEOPLE HERE THAT WILL CORRECT ME IF I'M

4    WRONG.

5              WITH RESPECT TO PRODUCTS, WE WOULD HAVE AN ISSUE WITH WHAT

6    YOUR HONOR SUGGESTED AND WANT TO ADDRESS IT, BUT I WANTED TO

7    REPORT AT THE OUTSET THAT THERE, TOO, SAMSUNG AND APPLE HAVE

8    MET AND HAVE BEEN CONFERRING AND BELIEVE THAT CONTINUING TO

9    CONFER -- GIVEN THAT THE EXPERT REPORTS WILL BE ISSUED NOW IN

10   NINE DAYS, THE PARTIES WOULD BENEFIT FROM AN OPPORTUNITY OF

11   SEEING OPENING EXPERT REPORTS, CONTINUING TO CONFER,

12   IDENTIFYING WHETHER ANY OUTSTANDING ISSUES REMAIN REGARDING

13   PRODUCTS, AND IF SO, IF ANY ISSUES REMAIN, TO PRESENT THOSE TO

14   YOU.

15             BUT AT THIS TIME, YOUR HONOR, OBVIOUSLY YOUR HONOR HAS

16   TAKEN THE TIME TO READ THROUGH THE SUBMISSIONS AND WE

17   APPRECIATE THAT, BUT WE HAVE CONTINUED TO CONFER UP TO MOMENTS

18   BEFORE WE RETURNED FROM THE RECESS AND REQUEST THAT THE PARTIES

19   HAVE AN OPPORTUNITY TO CONTINUE TO CONFER, WORK WITH EACH

20   OTHER, GET THE EXPERT REPORTS OUT, AND AT THAT TIME DETERMINE

21   IF THERE REALLY ARE ANY DISPUTES AND, IF SO, WHAT THEY ARE AND

22   PRESENT THOSE TO THE COURT AT THAT TIME.

23             THE COURT:  AND SO WHAT DO YOU ANTICIPATE THE EXPERT

24   DISCOVERY RESOLVING?  JUST WHETHER THE INFRINGEMENT IS DONE BY

25   THE SAME -- IN THE SAME MANNER?
```

1    MR. KREVITT:  THAT'S RIGHT, YOUR HONOR.  SO -- AND

2    IDENTIFYING -- SOME OF WHAT SAMSUNG HAS SAID IS THAT THERE ARE

3    MEANINGFUL DIFFERENCES AND THERE'S AN OPEN QUESTION AS TO

4    WHETHER THERE ARE, AND THAT RELATES ALSO TO HOW THE APPLE

5    PRODUCTS ARE COUNTED AND HOW THEY ARE IDENTIFIED.

6        SO THE PARTIES BELIEVE THAT IF WE PROCEED WITH PREPARING

7    EXPERT REPORTS IN THE MANNER THAT THEY HAVE ALREADY

8    ANTICIPATED, WE WOULD PROVIDE AN INFRINGEMENT EXPERT REPORT ON

9    THE 9TH, AND THERE'S SOME DISCUSSION OF REQUESTING A SLIGHT

10   EXTENSION ON THAT, BUT PRODUCING AN EXPERT REPORT IN THE TIME

11   THAT IT IS DUE ON THE 18 PRODUCTS THAT WE HAVE IDENTIFIED; THEN

12   SAMSUNG WOULD DO SO ON THE 18 PRODUCTS THAT IT HAS IDENTIFIED;

13   AND THEN THE PARTIES WOULD BE IN A BETTER POSITION TO MAKE A

14   JUDGMENT ABOUT WHETHER THERE REALLY IS ANY DISPUTE OR WHETHER,

15   ON BALANCE, THE PARTIES ARE ABLE TO WORK THIS OUT TOGETHER.

16       THAT'S A JOINT REQUEST, YOUR HONOR, THAT WE WOULD MAKE AT

17   THIS TIME AND BELIEVE THAT WE WOULD ALL BENEFIT FROM HAVING THE

18   EXPERT REPORTS AND AN OPPORTUNITY TO SEE WHETHER THERE REALLY

19   ARE, IN FACT, ANY DISPUTES THAT REQUIRE THE COURT'S

20   INTERVENTION.

21       MR. JOHNSON:  WHAT MR. KREVITT, I THINK, ALSO IS

22   ALLUDING TO IS THE FACT THAT ONCE WE HAVE THE EXPERT REPORTS,

23   YOUR HONOR --

24       THE COURT:  UM-HUM.

25       MR. JOHNSON:  -- BOTH SIDES CAN FAIRLY ASSESS WHERE

1    THE REAL INFRINGEMENT ALLEGATIONS ARE.  THE APPROPRIATE TEAM,

2    WHICH WOULD INCLUDE MYSELF, MS. MAROULIS, MR. KREVITT, AND

3    MR. LEE, WOULD SIT DOWN AND TALK ABOUT REALLY THE

4    REPRESENTATIVE PRODUCTS ISSUE AND SEE IF WE CAN REACH AGREEMENT

5    ON IT AND THEN REPORT BACK TO YOUR HONOR WITH WHETHER THERE'S

6    AGREEMENT OR NOT.

7        BUT RIGHT NOW, WITH SORT OF TALKING A LITTLE BIT ABOUT

8    THINGS IN THE ABSTRACT, I THINK WE BOTH FELT THAT IT WAS A

9    LITTLE BIT DIFFICULT FOR US TO REACH AGREEMENT ON

10   REPRESENTATIVE PRODUCTS UNTIL WE SEE WHAT THE EXPERT REPORTS

11   SAY AND HOW THE PROOF IS LAID OUT.

12            THE COURT:  OKAY.

13            MR. KREVITT:  AND THIS RELATES, YOUR HONOR, AS WELL

14   TO THE ISSUE OF PRODUCTS GENERALLY.  SO IT'S BOTH THE

15   IDENTIFICATION OF PRODUCTS AND THE ISSUE OF THE IDENTIFICATION

16   OF REPRESENTATIVE PRODUCTS AND HOW THOSE SHOULD BE HANDLED.

17            THE COURT:  OKAY.  WELL, YOU KNOW, OBVIOUSLY I WOULD

18   BE ELATED IF YOU COULD REACH AN AGREEMENT ON REPRESENTATIVE

19   PRODUCTS.

20       AND ANY REQUIREMENT IS GOING TO BE, YOU KNOW, BILATERAL.

21   IT'LL BE ON BOTH SIDES, WHATEVER THE REQUIREMENTS ARE.

22       WHAT DID YOU DECIDE WITH REGARD TO THE REFERENCES?  WHAT

23   WAS THE AGREEMENT THERE?

24            MR. JOHNSON:  I THINK WE ARE --

25            MR. KREVITT:  I'M GOING TO STEP AWAY, YOUR HONOR.

1          THE COURT:  OKAY.

2          MR. SELWYN:  I DON'T THINK THERE'S ANY DISPUTE ABOUT

3    IT.  I BELIEVE WE HAD ANTICIPATED THAT THERE MIGHT BE A DISPUTE

4    AND, THEREFORE, APPLE'S STATEMENT INCLUDED AN EXPLANATION OF

5    HOW WE THOUGHT IT WAS APPROPRIATE TO COUNT PRODUCTS.

6        BUT THEN WHEN THE SUBMISSIONS WERE MADE, IT APPEARED THAT

7    BOTH SIDES WERE COUNTING -- I'M SORRY -- COUNTING PRIOR ART IN

8    THE SAME MANNER.

9          THE COURT:  OKAY.

10          MR. JOHNSON:  I THINK BOTH SIDES UNDERSTAND YOUR

11   HONOR'S GUIDANCE WITH RESPECT TO 45 THEORIES, WHATEVER THE

12   COMBINATIONS ARE, AND THAT'S THE WAY WE'VE BEEN OPERATING AND

13   THAT'S THE WAY I THINK APPLE IS NOW OPERATING, AND SO WE -- NOW

14   THAT WE'VE SEEN EACH OTHER'S CONTENTIONS, WE REALIZE THERE'S NO

15   REAL DISPUTE THERE.

16          THE COURT:  OKAY.  ALL RIGHT.  GOOD.

17       BUT I AGREE THAT EVERY SINGLE COMBINATION COUNTS AS ONE.

18          MR. JOHNSON:  RIGHT.

19          MR. SELWYN:  RIGHT.

20          THE COURT:  I'M NOT GOING TO ALLOW SINGLE REFERENCES

21   AND THEN INFINITE COMBINATIONS.  IF THERE'S ANY PERMUTATION YOU

22   WANT TO PRESENT TO THE JURY, IT'S GOING TO HAVE TO COUNT AS

23   ONE.

24          MR. JOHNSON:  RIGHT.

25          MR. SELWYN:  RIGHT.

1        THE COURT:  GOOD.  THAT MAKES THAT MORE SIMPLE.

2      IS THERE ANYTHING MORE THEN FOR CASE NARROWING, OR DOES

3    THAT CARE OF IT?

4      NOW, I GUESS THERE WAS SOME ISSUE ABOUT WHETHER YOU WANTED

5    TO DISMISS THE ONE PATENT BEFORE SEPTEMBER 30TH, I ASSUME TO

6    CREATE A LITTLE MORE CUSHION BEFORE THE DISPOSITIVE MOTION

7    FILING DATE OF OCTOBER 3RD.

8      DID YOU REACH AGREEMENT ON THAT?

9        MS. MAROULIS:  YOUR HONOR, THIS IS ALSO SOMETHING

10   WE'VE BEEN DISCUSSING AND CAN RESOLVE AFTER THIS CONFERENCE IN

11   A FEW DAYS.

12       THE COURT:  OKAY.

13       MS. MAROULIS:  BASICALLY WHAT HAPPENED IS THE PARTIES

14   MOVED OUT ONE DEADLINE, BUT NEGLECTED TO MOVE OUT THE PRIOR ART

15   NARROWING, SO THERE'S ASYMMETRY RIGHT NOW AND WE NEED TO

16   SYNCHRONIZE THEM TOGETHER.

17       THE COURT:  OKAY.  SO WHAT CHANGES DO YOU WANT TO THE

18   SCHEDULE?  ANYTHING?

19       MR. KREVITT:  YOUR HONOR, I ALLUDED TO CHANGES IN THE

20   SCHEDULE.  A REQUEST HAD BEEN MADE SHORTLY BEFORE THE HEARING.

21   WE DON'T HAVE ANY REQUEST TO MAKE TO YOUR HONOR AT THIS TIME.

22   THE PARTIES WILL CONFER AND PROMPTLY MAKE ANY SUBMISSION TO

23   YOUR HONOR.

24      WE WOULD BE TALKING, AS I UNDERSTAND THE REQUEST, ABOUT A

25   VERY MODEST MODIFICATION TO THE SCHEDULE.

1          THE COURT:  AND AS TO WHICH DEADLINES?

2          MR. KREVITT:  EXPERT REPORTS, YOUR HONOR.  I DON'T

3    THINK ANYONE WOULD ENVISION IT AFFECTING DISPOSITIVE MOTIONS.

4          MR. JOHNSON:  ALL THE PARTIES WERE DISCUSSING, YOUR

5    HONOR, WAS TO MOVE THE DEADLINE FROM A FRIDAY TO THE MONDAY.

6          THE COURT:  OKAY.  FROM AUGUST 9TH TO THE 12TH?

7          MR. JOHNSON:  SOMETHING LIKE THAT.

8          THE COURT:  OKAY.  WHY DON'T WE JUST TAKE CARE OF

9    THAT NOW?  THAT WAY I DON'T HAVE TO DEAL WITH A STIPULATION AND

10   YOU DON'T HAVE TO PREPARE ONE.

11      IS THERE ANY PROBLEM WITH THAT?

12          MR. KREVITT:  NO, YOUR HONOR.

13          MR. JOHNSON:  THAT'S FINE.

14          THE COURT:  OKAY.  SO THAT'S MOVED TO AUGUST 12TH FOR

15   OPENING EXPERT REPORTS.

16      ANY OTHER CHANGES?

17          MR. KREVITT:  THE REBUTTAL REPORTS, YOUR HONOR, ARE

18   DUE ON A FRIDAY.  WE WOULD JUST REQUEST THAT THOSE BE SHIFTED

19   TO THAT FOLLOWING MONDAY AS WELL.  I THINK IT'S THE 10TH.

20          THE COURT:  THE 10TH LOOKS LIKE A TUESDAY.

21          MR. KREVITT:  IT'S TUESDAY TO A FRIDAY.

22          THE COURT:  TUESDAY TO THE 13TH.

23      IS THERE ANY AGREEMENT AS TO THAT?

24          MR. JOHNSON:  THAT'S FINE.

25          MS. MAROULIS:  THAT'S FINE.

```
 1              THE COURT:  OKAY.  SO YOU'LL HAVE NO WEEKEND
 2    AUGUST 10TH AND 11TH.
 3              MR. KREVITT:  THAT'S MR. JOHNSON'S REQUEST, YOUR
 4    HONOR.
 5        (LAUGHTER.)
 6              MS. MAROULIS:  THAT HAS HAPPENED BEFORE, YOUR HONOR.
 7              MR. JOHNSON:  SOME THINGS NEVER CHANGE.
 8        (LAUGHTER.)
 9              THE COURT:  ALL RIGHT.  WHAT ABOUT -- YOU'RE STILL
10    OKAY WITH A CLOSE OF EXPERT DISCOVERY SEPTEMBER 27TH?  THAT
11    ONLY GIVES YOU 14 DAYS.  IS THAT ENOUGH?  THAT'S OKAY?
12              MR. JOHNSON:  THAT'S FINE.
13              THE COURT:  ALL RIGHT.
14              MR. KREVITT:  I BELIEVE IT IS, YOUR HONOR.  WE WILL
15    LOOK AT THE SCHEDULE, WE HAVE NOT HAD A CHANCE TO DO THAT, BUT
16    I BELIEVE THAT SHOULD BE ENOUGH TIME.
17              THE COURT:  OKAY.  NOW, WHAT ABOUT THE DISMISSAL
18    WITHOUT PREJUDICE OF THE ONE PATENT BEFORE SEPTEMBER 30TH?  IS
19    THERE ANY AGREEMENT TO PERHAPS MOVE THAT DATE UP A LITTLE BIT
20    SO THAT --
21              MR. KREVITT:  IF WE MAY CONFER, YOUR HONOR, AND
22    REPORT BACK TO YOUR HONOR BY THE END OF THIS WEEK EVEN AS TO
23    WHETHER THE PARTIES ARE ABLE TO REACH AGREEMENT AND, IF SO,
24    WHAT THAT AGREEMENT IS, OR VERY BRIEFLY SET OUT THE PARTIES'
25    POSITIONS?
```

1          THE COURT:  WELL, YOU KNOW, I'D LIKE TO TAKE CARE OF

2     THIS NOW.  YOU ALREADY BRIEFED IT.  I MEAN, YOU ALL ARE -- YOU

3     KNOW, YOU HAD, WHAT, LIKE SIX OR SEVEN INCHES OF STUFF YOU

4     FILED FOR TODAY.  NOW IS THE TIME.  LET'S DO IT.

5          SO ARE YOU GOING TO AGREE OR NOT AGREE?  WHAT'S THE

6     RESPECTIVE PRO'S AND CON'S OF ACCELERATING THAT DEADLINE AND BY

7     HOW MUCH?

8          MS. MAROULIS:  YOUR HONOR, WE'RE HOPING TO COMPLETE

9     DROPPING OF THE PATENTS AFTER THE EXPERT REPORTS ARE IN AND

10    AFTER DISCOVERY HAS TAKEN PLACE.  THAT IS WHY THE PARTIES MOVED

11    THE INITIAL SEPTEMBER 2, I THINK, DEADLINE TO SEPTEMBER 30TH.

12         SO IF WE CAN CONFER WITH SOME COLLEAGUES AND CLIENTS AFTER

13    THAT, AFTER THIS CONFERENCE AND GET BACK TO THE COURT NEXT

14    WEEK, THAT WOULD BE PREFERABLE.

15         IF WE NEED TO DECIDE RIGHT NOW, WE WILL.

16         BUT THE REASON FOR CHOOSING THAT DATE, AND APPLE WILL

17    CONFIRM THAT, WAS TO -- WAS FOR IT TO HAPPEN AFTER EXPERT

18    DISCOVERY.

19         THE COURT:  UM-HUM.  AND HOW MUCH -- YOU NEVER SAID

20    HOW MUCH YOU ARE ASKING THAT THAT DATE BE ACCELERATED.

21         MR. KREVITT:  I'M SORRY, YOUR HONOR.

22         THE COURT:  IN YOUR FILINGS, YOU NEVER SAID HOW MUCH

23    YOU WANTED THAT SEPTEMBER 30TH DEADLINE ACCELERATED.

24         MR. KREVITT:  RIGHT.  DO YOU --

25         MR. LYON:  YOUR HONOR, I THINK THE -- PARDON ME, YOUR

1        HONOR.

2             THE ISSUE, I THINK, COMES UP IN THE SENSE THAT THERE WAS A

3        CONCERN ABOUT THE INVALIDITY REDUCTION, THE REDUCTION IN THE

4        INVALIDITY THEORIES, AND THE WAY IT WAS COMING RIGHT NOW, IT

5        WAS GOING TO HAPPEN BEFORE WE DROPPED THE LAST PATENT, SO WE

6        NEED TO MOVE THE DROP EARLIER.

7             WE'VE HAD DISCUSSIONS, I DON'T KNOW THAT WE SETTLED ON A

8        DATE, BUT WE WERE THINKING SOMEWHERE, I BELIEVE, TO HAVE THE

9        INVALIDITY DROPPED BEFORE SUMMARY JUDGMENT MOTIONS AND ENOUGH

10       TIME -- MAYBE ABOUT A WEEK OR TEN DAYS BEFORE THE SUMMARY

11       JUDGMENT MOTION DATE SO THAT WE WOULD KNOW WHAT INVALIDITY

12       REFERENCES AND COMBINATIONS ARE BEING ASSERTED.

13            THAT WOULD REQUIRE US TO MOVE THE PATENT DROP, SAY -- I

14       THINK IT WAS A WEEK OR TEN DAYS, I FORGET THE RELATIONSHIP NOW

15       OFF THE TOP OF MY HEAD, BUT A WEEK OR TEN DAYS BEFORE THAT

16       INVALIDITY REFERENCE DROP.

17            (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFF'S COUNSEL.)

18            MR. LYON:  SO I THINK WHAT WE HAD PROPOSED, AND I

19       DON'T KNOW IF WE RESOLVED IT, WAS SOMETHING ABOUT DROPPING THE

20       INVALIDITY REFERENCES ON SEPTEMBER 27TH, WHICH IS THE LAST DAY

21       OF EXPERT DISCOVERY, AND THEN PUSHING THE LAST PATENT DROP,

22       WHICH WOULD INCLUDE PRODUCTS AND CLAIMS, SOMEWHERE AROUND THE

23       17TH OR SO.  SO THAT'S TEN DAYS BEFORE.

24            YEAH, THE 17TH OF SEPTEMBER IS WHAT WE HAD PROPOSED, BUT I

25       DON'T KNOW IF WE'VE REACHED AGREEMENT ON THOSE DATES YET.

1      THE COURT:  SO YOU WANTED SEPTEMBER 17TH AND

2   SEPTEMBER -- WHAT WAS THE OTHER DATE?

3      MR. LYON:  27TH, THE END OF EXPERT DISCOVERY.

4      THE COURT:  OKAY.  WELL, LET ME ASK, WHAT IF WE

5   SHAVED OFF A DAY OR TWO FROM YOUR BRIEFING SCHEDULE ON SUMMARY

6   JUDGMENT MOTIONS?  WOULD THAT -- OH, NO.  YOU WANT THE

7   INVALIDITY REFERENCES BEFORE THE CLOSE OF EXPERT DISCOVERY?  IS

8   THAT --

9      MR. LYON:  I THINK IT WAS THE DATE -- AS OF THE DATE

10   OF THE CLOSE OF EXPERT DISCOVERY IS WHAT WE WERE PROPOSING.  SO

11   THE INVALIDITY REFERENCE REDUCTION WOULD BE THE SEPTEMBER 27TH

12   CLOSE OF DISCOVERY FOR EXPERTS DATE.

13      THE COURT:  OKAY.  AND THEN WHEN WOULD YOU DO THE

14   DROPPING OF THE PATENT AND THE CLAIMS AND THE ACCUSED PRODUCTS?

15      MR. LYON:  TEN DAYS BEFORE THAT, SO SEPTEMBER 17TH.

16      MR. JOHNSON:  YOUR HONOR, ONE WAY TO POTENTIALLY

17   HANDLE IT IS TO MOVE THE DISPOSITIVE MOTIONS DATE OF

18   OCTOBER 3RD BACK JUST A LITTLE BIT.

19      THE COURT:  HOW MUCH?

20      MR. JOHNSON:  SAY A WEEK.  FOR EXAMPLE, MOVE IT FROM

21   THE 7TH -- MOVE IT FROM -- MOVE IT FROM THE 3RD TO THE 10TH.

22    I THINK ALSO WE COULD -- WE COULD MOVE THIS DATE UP, THE

23   SEPTEMBER 17TH DATE.

24    WE COULD -- JUST -- IF YOU COULD LOOK AT THIS?  INSTEAD OF

25   DOING IT ON THE 17TH, WE DON'T NEED TEN FULL DAYS TO FIGURE OUT

```
1    WHICH INVALIDITY THEORIES --

2              MS. MAROULIS:  HOW ABOUT THE 23RD AND THE 30TH?

3              MR. JOHNSON:  YEAH, IF WE DO THE 23RD AND THE 30TH,

4    AND THEN WE FILE MOTIONS ON THE 10TH --

5              MR. LYON:  WHAT DOES THAT DO?

6         (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

7              MR. JOHNSON:  OKAY.  SO, YOUR HONOR, I THINK WE HAVE

8    AGREEMENT THAT THE PARTIES WOULD DROP THE REMAINING PATENT ON

9    THE 27TH OF SEPTEMBER, AND THEN THE PARTIES WOULD REDUCE THE

10   INVALIDITY COMBINATIONS BY SEPTEMBER 30TH.

11             THE COURT:  OKAY.  SO RIGHT NOW THERE'S A REDUCTION

12   OF INVALIDITY REFERENCES SCHEDULED FOR SEPTEMBER 9TH.  ARE YOU

13   NOT PLANNING TO DO THAT, OR YOU ARE?

14             MS. MAROULIS:  THAT'S WHAT WE NEEDED TO MOVE, YOUR

15   HONOR.  THAT'S -- I STARTED EXPLAINING THAT WHEN WE MOVED THE

16   PATENT DROPPING DEADLINE, WE SHOULD HAVE ALSO MOVED THE

17   INVALIDITY DEADLINE AND THAT DID NOT HAPPEN.

18             THE COURT:  OKAY.

19             MS. MAROULIS:  SO WE NEED TO MOVE THE SEPTEMBER 9TH

20   TO SEPTEMBER 30TH --

21             THE COURT:  OKAY.

22             MS. MAROULIS:  -- AND ADVANCE THE PATENT DROPPING TO

23   SEPTEMBER 27TH.

24             MR. JOHNSON:  THE REASON --

25             THE COURT:  OKAY.  SO SEPTEMBER 27TH WOULD BE NOT
```

1    ONLY DROPPING ONE PATENT --

2              MS. MAROULIS:  BUT CLAIMS AND PRODUCTS.

3              THE COURT:  -- BUT CLAIMS TO 10 PER SIDE AND ACCUSED

4    PRODUCTS TO 15 PER SIDE?

5              MR. JOHNSON:  RIGHT.

6              THE COURT:  OKAY.  AND THEN THE 30TH WOULD BE THE

7    REFERENCES TO 25 PER SIDE?

8              MS. MAROULIS:  CORRECT.

9              THE COURT:  OKAY.  THAT'S FINE.  CAN -- IS EVERYONE

10   AGREED AS TO THAT?  CAN WE JUST GO AHEAD AND INCORPORATE THAT?

11   I'LL ISSUE A NEW CASE MANAGEMENT ORDER THAT'LL HAVE THESE NEW

12   DEADLINES.

13             MR. LYON:  THAT WOULD BE FINE, YOUR HONOR.  THANK

14   YOU.

15             THE COURT:  OKAY.  SO WHAT ELSE -- ANYTHING ELSE THAT

16   NOW NEEDS TO BE CHANGED?  OR THEN DO WE KEEP OUR BRIEFING

17   SCHEDULE ON THE DISPOSITIVE MOTIONS?

18             MR. LYON:  I THINK WE'RE KEEPING --

19             MS. MAROULIS:  THE PARTIES PROPOSE TO KEEP THE

20   CURRENT SCHEDULE.

21             THE COURT:  THAT'S FINE.  THAT'S FINE.

22        OKAY.  SO I WOULD LIKE TO SET -- IN THE LAST CASE IT WAS

23   JUST NOT POSSIBLE TO HANDLE THE SUMMARY JUDGMENT MOTIONS WITH

24   ALL THE DAUBERT MOTIONS.  NOW, GRANTED, IT'S GOING TO BE MORE

25   LIMITED THIS TIME, HOPEFULLY, BUT I'D LIKE TO SET ANOTHER DATE

```
 1        SO WE CAN BIFURCATE THE TWO.

 2           NOW, DOES IT MAKE SENSE TO DO DAUBERTS FIRST AND THEN

 3        SUMMARY JUDGMENTS SECOND?  OR -- RIGHT NOW WE HAVE SUMMARY

 4        JUDGMENT ON DECEMBER 12TH AND ANOTHER POSSIBLE HEARING DATE

 5        WOULD BE JANUARY 23RD, BUT I DON'T KNOW IF ANY OF THE SUMMARY

 6        JUDGMENT RULINGS WILL DEPEND ON THE DAUBERT RULINGS.  THAT'S MY

 7        ONLY QUESTION.

 8           BLESS YOU.

 9              MS. MAROULIS:  LAST YEAR, YOUR HONOR, THEY WERE

10        LARGELY INDEPENDENT, BUT IT'S NOT TO SAY IT WON'T COME UP IN

11        THIS CONTEXT.  BUT THE DAUBERT RULINGS WERE MORE GEARED TOWARD

12        TRIAL TESTIMONY AND LESS FOR SUMMARY JUDGMENT.

13              THE COURT:  UM-HUM.

14              MR. JOHNSON:  THERE COULD BE -- THERE COULD BE

15        OVERLAP ON THE DAMAGES --

16              THE COURT:  UM-HUM.

17              MR. JOHNSON:  -- THEORIES.  AND SOME OF THE -- THAT

18        DID HAPPEN A LITTLE BIT LAST TIME.

19              THE COURT:  UM-HUM.

20              MR. JOHNSON:  BUT BY AND LARGE I THINK THAT THERE

21        WILL BE INDEPENDENCE BETWEEN THE SUMMARY JUDGMENT MOTIONS AND

22        THE DAUBERT, EXCEPT FOR SOME POTENTIAL OVERLAPPING DAMAGES.

23              THE COURT:  OKAY.  SO WHAT DO YOU WANT TO DO?  DO YOU

24        WANT TO DO DAUBERTS FIRST?  AND, I MEAN, YOU KNOW, TO THE

25        EXTENT WE CAN, WE WILL LOOK AT EVERYTHING.  LAST TIME I THINK
```

1      THE DAUBERT HEARING WAS JUST LIKE A WEEK OR TEN DAYS AFTER THE

2      SUMMARY JUDGMENT HEARING.

3            MR. JOHNSON:  RIGHT.

4            THE COURT:  SO WE CERTAINLY TRY TO LOOK AT EVERYTHING

5      ALL AT THE SAME TIME.

6            MR. JOHNSON:  RIGHT.

7            THE COURT:  BUT WE JUST COULD NOT, FOR HUMAN

8      RESOURCES REASONS, GET RULINGS OUT SIMULTANEOUSLY.

9            MR. JOHNSON:  I THINK IT MAKES SENSE TO HAVE THE

10     SUMMARY JUDGMENT HEARING OCCUR FIRST.

11           THE COURT:  FIRST, OKAY.

12           MR. JOHNSON:  AND THEN ADDRESS WHATEVER THE REMAINING

13     ISSUES ARE IN THE CONTEXT OF DAUBERT, AND PERHAPS WE CAN SET

14     THAT HEARING FOR JANUARY 23RD.

15           MR. LYON:  AND WE AGREE.  WE THINK THAT HAVING THE

16     SUMMARY JUDGMENTS FIRST MAKES SENSE.

17           THE COURT:  ALL RIGHT.  SO WE'LL GO AHEAD AND KEEP

18     DECEMBER 12TH AS SUMMARY JUDGMENT.

19        I'M GOING TO ASK YOU ALL, PLEASE BE KIND.  PLEASE BE KIND

20     TO MY LAW CLERKS, EXTERNS, AND TO ME IN YOUR SUMMARY JUDGMENT

21     MOTIONS.

22        AND, YOU KNOW, IF SOMETHING IS DEPENDENT UPON THE DAUBERT,

23     THEN I GUESS A RULING MAY HAVE TO WAIT UNTIL JANUARY 23RD.  BUT

24     IF NOT, WE'LL JUST HANDLE THEM INDEPENDENTLY.

25           MR. JOHNSON:  RIGHT.

1          THE COURT:  OKAY.  WAS THAT IT FOR CASE NARROWING?

2          MR. LYON:  YES, I BELIEVE SO, YOUR HONOR.

3          THE COURT:  OKAY.  ALL RIGHT.  LET'S -- OKAY.  AS FAR

4     AS -- DOES THE CHANGING OF THE DEADLINE TO DROP THAT ONE

5     ADDITIONAL PATENT, DOES THAT TAKE CARE OF YOUR CLAIM

6     CONSTRUCTION REQUEST?

7          MR. SELWYN:  I DON'T THINK IT DOES, YOUR HONOR.

8          THE COURT:  UM-HUM.

9          MR. SELWYN:  I THINK THE PARTIES ARE IN AGREEMENT

10    THAT FURTHER CLAIM CONSTRUCTION WILL BE NECESSARY.  I THINK

11    THAT THERE'S SOME DISAGREEMENT ABOUT WHAT THE APPROPRIATE

12    TIMING FOR THAT MIGHT BE, AND BOTH PARTIES RECOGNIZE THE BURDEN

13    THAT THIS PUTS ON THE COURT TO DO ADDITIONAL CLAIM

14    CONSTRUCTION, BUT WE WANTED TO RAISE IT AND SEEK THE COURT'S

15    GUIDANCE BECAUSE, AS YOU MAY RECALL, AT THE LAST TRIAL WE WERE

16    DOING CLAIM CONSTRUCTION ON THE EVE OF TRIAL AND THOUGHT THAT

17    THERE MIGHT BE A WAY THAT'S MORE EFFICIENT AND ORDERLY FOR THE

18    COURT AND FOR THE PARTIES.

19          THE COURT:  WELL, I'M NOT GOING TO DO ANY ADDITIONAL

20    CLAIM CONSTRUCTION UNTIL AFTER YOU'VE FULLY NARROWED THE CASE

21    BECAUSE I DON'T WANT TO DO ANY HYPOTHETICAL CLAIM CONSTRUCTION

22    ON ISSUES THAT AREN'T GOING TO BE TRIED, SO I'M NOT ANXIOUS TO

23    DO THEM BEFOREHAND.

24          MR. SELWYN:  OUR THOUGHT ON THAT, YOUR HONOR, WAS IF

25    THE PARTIES STARTED TO MEET AND CONFER NOW ON TERMS AND TRY TO

1    REACH AGREEMENT ON WHAT TERMS DID NEED TO BE CONSTRUED, BY THE

2    TIME IT REACHED YOUR HONOR, IT WOULD BE AFTER THE DROPPING OF

3    THE PATENT ANYHOW.

4        SO WE WOULDN'T BE PUTTING ANY ADDITIONAL WORK ON THE COURT,

5    BUT WE COULD GET STARTED NOW WITH THE PROCESS RATHER THAN

6    WAITING UNTIL, WAITING UNTIL A LATER TIME WHEN WE'RE GETTING

7    READY FOR TRIAL AND ALL OF THAT WORK.

8        MR. JOHNSON:  THE ISSUE, AS YOU POINT OUT, YOUR

9    HONOR, IS THAT WHEN -- AS THE PARTIES MOVE FORWARD AND DROP

10   ADDITIONAL CLAIMS, AND NOT JUST PATENTS, BUT ADDITIONAL CLAIMS,

11   WE MAY BE TALKING ABOUT -- FOR EXAMPLE, APPLE SAYS THAT THEY

12   WANT US -- THAT THE MEANS-PLUS-FUNCTION CLAIMS NEED TO BE

13   CONSTRUED.

14       WELL, YOU KNOW, ONE OF THE CLAIMS HAS FIVE

15   MEANS-PLUS-FUNCTION ELEMENTS IN IT.  ANOTHER ONE ONLY HAS ONE.

16   SO IF WE ASSERT THE ONE THAT ONLY HAS ONE MEANS-PLUS-FUNCTION

17   ELEMENT, THEN YOUR HONOR'S TIME LOOKING AT THE OTHER FIVE TERMS

18   WILL HAVE BEEN WASTED, AS WELL AS THE PARTIES' DURING THE

19   PROCESS.

20       SO DOING IT IN THE CONTEXT OF WHEN THE PATENTS GET DROPPED

21   AND DOING IT POTENTIALLY IN CONNECTION WITH THE DISPOSITIVE

22   MOTIONS, I THINK THAT'S WHEN THE ISSUES WILL REALLY BE GELLED

23   IN PEOPLE'S MINDS AND WE WILL BE FIGHTING OVER THE ONE OR TWO

24   TERMS THAT REALLY MATTER FOR DISPOSITIVE MOTIONS.

25       MR. SELWYN:  AND WE CERTAINLY AGREE THAT WE DON'T

1    WANT TO PRESENT ANY CLAIMS OR TERMS FOR CONSTRUCTION THAT MIGHT

2    LATER BE DROPPED, AND OUR SUGGESTION WAS ONLY THAT THE PARTIES

3    START THE PROCESS NOW SO IT'S TEE'D UP AFTER THE DROPPING OF

4    THE CLAIMS FOR YOUR HONOR TO DECIDE.

5         THE COURT:  BUT BY STARTING THAT PROCESS NOW WHEN THE

6    PARTIES HAVEN'T EVEN DECIDED WHAT FINAL CLAIMS WILL BE IN THE

7    TRIAL, WHAT IS THE POINT OF THAT?  TO GET A PREVIEW OF WHAT THE

8    OTHER SIDE IS LIKELY THINKING IN TERMS OF WHAT'S GOING TO BE

9    DROPPED?

10        MR. SELWYN:  WELL --

11        THE COURT:  I MEAN, I DID THE LAST CLAIM CONSTRUCTION

12   AND THAT TOOK AN IMMENSE AMOUNT OF RESOURCES AND TIME.

13       IF YOU WANT ANOTHER FULL-BLOWN CLAIM CONSTRUCTION, I'M

14   HAPPY TO DO THAT, BUT I'M GOING TO MOVE THIS TRIAL DATE AND I

15   WILL TURN THE TIME THAT I HAD DEDICATED TO THIS TRIAL TO

16   DEDICATE IT TO CLAIM CONSTRUCTION AND WE'LL PUSH THIS TRIAL

17   OFF.

18        MR. SELWYN:  AND WE'RE CERTAINLY NOT ASKING FOR THAT.

19        THE COURT:  OKAY.  WELL, I MEAN, I'M NOT GOING TO DO

20   UNNECESSARY CLAIM CONSTRUCTION.

21        MR. SELWYN:  CERTAINLY.

22        THE COURT:  SO --

23        MR. SELWYN:  THE REASON THAT WE THOUGHT NOW MIGHT BE

24   AN APPROPRIATE TIME FOR THE PARTIES TO BE MEETING AND

25   CONFERRING IS BECAUSE WE'RE GOING TO BE EXCHANGING EXPERT

1    REPORTS WHERE WE'RE GOING TO BE ADDRESSING ALL OF THE CLAIMS

2    THAT ARE CURRENTLY IN DISPUTE, AND AS PART OF THAT, INEVITABLY

3    CLAIM CONSTRUCTION ISSUES WILL BE DISCUSSED BY THE EXPERTS.

4         SO THE ISSUES ARE STARTING TO BE GELLED AND IT SEEMED TO US

5    TO BE AN APPROPRIATE TIME TO BEGIN THE DISCUSSION WITH THE

6    PARTIES SO THAT WHEN THE CLAIMS ARE DROPPED, WE'RE IN A

7    POSITION TO RAISE IT WITH THE COURT AND WE KNOW WHAT THE ISSUES

8    WILL BE AND WHAT THE DISPUTES WILL BE FOR THOSE TERMS THAT

9    REMAIN.

10            MR. JOHNSON:  AND THE RISK WITH THAT IS THAT THERE

11   WILL BE ALL KINDS OF ISSUES THAT GET DISCUSSED THAT SIMPLY HAVE

12   NO BEARING ON THE MERITS OF THE CASE OR ON A PARTICULAR PATENT.

13        IF YOUR HONOR WILL RECALL, IN THE FIRST CASE THERE WAS A

14   SUMMARY JUDGMENT MOTION IN CONNECTION WITH ONE OF THE STANDARD

15   ESSENTIAL PATENTS THAT MR. LEE AND I ARGUED AND THERE WAS

16   ONE -- THERE WAS ESSENTIALLY ONE TERM THAT WAS FOUGHT OVER

17   DURING THE CONTEXT OF SUMMARY JUDGMENT, AND YOUR HONOR

18   CONSTRUED THAT TERM AS PART OF THAT PROCESS.

19        AND SO DOING CONSTRUCTION -- CLAIM CONSTRUCTION ON THE ONE

20   OR TWO TERMS AS PART OF THE SUMMARY JUDGMENT PROCESS HERE, I

21   THINK, IS THE MOST EFFICIENT WAY TO PROCEED RATHER THAN DOING

22   IT ALL ON THE FRONT SIDE WHEN WE MAY BE DROPPING A BUNCH OF

23   THESE CLAIMS ON BOTH SIDES.

24        AND SO GOING THROUGH AN EXERCISE WHEN WE'VE GOT A

25   RELATIVELY TIGHT SCHEDULE WITH ALL THE EXPERTS THAT ARE GOING

1    TO BE DEPOSED IN THE CASE IN ANY EVENT, AND WE'RE GOING TO BE

2    STARTING THE PROCESS ANYWAY, YET DOING IT MORE FORMALLY AS PART

3    OF THE SUMMARY JUDGMENT MOTION IS PROBABLY THE RIGHT WAY TO GO.

4        I THINK WHAT WE HEARD APPLE SAYING IS THAT THEY WANTED A

5    MORE FORMAL PROCESS THAT WOULD INVOLVE EXCHANGE OF

6    CONSTRUCTIONS, THAT WOULD INVOLVE POTENTIALLY A HEARING ON IT,

7    AND, YOU KNOW, THAT -- THEN YOU RUN INTO THE SAME SITUATION

8    THAT YOUR HONOR -- FROM OUR STANDPOINT, THAT TRIAL DATE'S GOT

9    TO SLIP BECAUSE THERE'S NO -- THERE ISN'T ENOUGH TIME IN THE

10   SCHEDULE TO DO ALL THAT.

11            MR. SELWYN:  I THINK WE'RE ACTUALLY SAYING THE SAME

12   THING, AND MAYBE I'M NOT ARTICULATING IT WELL.

13        BUT BY THE TIME IT COMES FOR SUMMARY JUDGMENT BRIEFING,

14   WHICH IS GOING TO BE COME IN OCTOBER, WE AGREE THAT THAT IS THE

15   APPROPRIATE TIME.

16        BUT IN ORDER FOR THAT TO HAPPEN, GIVEN THAT WE'RE NOW IN

17   AUGUST, WE NEED TO BEGIN THE DISCUSSION BEFORE OCTOBER, AND

18   THAT'S ALL WE'RE PROPOSING.

19        BUT WE'RE VERY MUCH IN AGREEMENT WITH WHAT MR. JOHNSON IS

20   SAYING, THAT THE CLAIM CONSTRUCTION PROCESS SHOULD BE AT THE

21   SAME TIME AS SUMMARY JUDGMENT.  WE THINK THAT'S SENSIBLE.

22            THE COURT:  WELL, IF YOU'RE PLANNING ON TURNING THE

23   SUMMARY JUDGMENT MOTIONS INTO ANOTHER CLAIM CONSTRUCTION

24   HEARING, THEN I WILL PROBABLY JUST POSTPONE THE TRIAL BECAUSE

25   I'M NOT GOING TO DO THAT.  IF THERE IS SOMETHING THAT

```
 1      ABSOLUTELY, NECESSARILY HAS TO BE CONSTRUED, THEN I MIGHT DO

 2      IT.

 3              MR. JOHNSON:  RIGHT.

 4              THE COURT:  BUT IF APPLE IS BASICALLY ASKING FOR A

 5      SECOND ROUND OF CLAIM CONSTRUCTION, I WILL GIVE IT TO YOU, BUT

 6      YOU WILL NOT HAVE THE TRIAL DATE THAT I'VE SET.  OKAY?

 7              MR. SELWYN:  AND -- I UNDERSTAND, YOUR HONOR.

 8              THE COURT:  SO, YOU KNOW, I DO NOT WANT TO HAVE THE

 9      SAME TYPE OF SUMMARY JUDGMENT SITUATION THAT I HAD LAST SUMMER,

10      WHICH WAS JUST PROVE UP EVERY SINGLE CLAIM IN THE CASE.  I'M

11      JUST NOT GOING TO -- I DON'T HAVE THE RESOURCES TO DEAL WITH

12      THAT, AND I'M NOT GOING TO KEEP DEVOTING ALL OF THE COURT'S

13      RESOURCES ON THIS CASE.

14          SO IF IT'S ABSOLUTELY NECESSARY, DO IT.

15          BUT IF YOU'RE JUST TRYING TO GET ANOTHER MARKMAN HEARING

16      IN, YOU DO SO AT THE RISK OF LOSING YOUR TRIAL DATE.

17              MR. SELWYN:  I UNDERSTAND, YOUR HONOR, AND THAT

18      WASN'T OUR GOAL OR POINT AT ALL.

19              THE COURT:  UM-HUM.

20              MR. SELWYN:  WE WERE JUST RAISING IT NOW IN THE HOPES

21      OF GETTING SOME GUIDANCE BECAUSE BOTH PARTIES HAD IDENTIFIED

22      THE LIKELIHOOD THAT THERE WOULD BE TERMS THAT WERE STILL IN

23      DISPUTE.  THAT'S ALL.

24              THE COURT:  WELL, I'M NOT GOING TO -- IF WHAT YOU'RE

25      REQUESTING IS THAT I ORDER SAMSUNG TO MEET AND CONFER NOW, I'M
```

```
 1        NOT GOING TO DO THAT.

 2            IF YOU GET THEM, OF THEIR OWN FREE WILL, TO START DOING

 3        THAT, THEN THAT'S GREAT.

 4            BUT I ALSO DON'T SEE, WHEN THE PARTIES HAVEN'T DECIDED

 5        WHICH PATENTS AND WHICH CLAIMS ARE GOING TO BE DROPPED, THE

 6        NEED TO DO THAT RIGHT NOW.

 7                MR. SELWYN:  AND THAT'S FINE.  I'M NOT SEEKING AN

 8        ORDER FROM YOUR HONOR, EITHER.  WE'RE JUST SUGGESTING A PROCESS

 9        SO THAT THE PARTIES ARE READY AT THE APPROPRIATE TIME.

10                THE COURT:  WELL, WORK OUT THAT PROCESS DIRECTLY

11        BETWEEN THE PARTIES BECAUSE I'M NOT GOING TO ORDER ONE.

12                MR. SELWYN:  CERTAINLY.

13                THE COURT:  OKAY?  ALL RIGHT.

14            LET'S GO TO THE LAST TWO ISSUES I HAVE, WHICH ARE SAMSUNG'S

15        MOTION TO AMEND THE CASE MANAGEMENT ORDER, AND SAMSUNG'S MOTION

16        FOR LEAVE TO AMEND ITS ANSWER.

17            WAS THERE ANYTHING -- OH, I'M SORRY.  I SHOULD ALSO SAY THE

18        MOTION FOR RECONSIDERATION OF JUDGE GREWAL'S ORDER.

19            ANYTHING OTHER THAN THOSE TWO THAT WE NEEDED TO COVER?

20                MR. LEE:  I THINK THAT'S IT.

21                MS. MAROULIS:  NO, YOUR HONOR.

22                THE COURT:  OKAY.  AND I BELIEVE JUDGE GREWAL IS

23        GOING TO ISSUE AN ORDER ON EXTENDING THE FACT DISCOVERY

24        DEADLINE FOR A FEW NARROW DEPOSITIONS.  IS THAT RIGHT?

25                MS. MAROULIS:  I THINK HE ALREADY SIGNED THE
```

```
 1        STIPULATION, SO WE'RE JUST FINISHING UP A HANDFUL OF

 2        DEPOSITIONS.

 3               MR. LEE:  YES.

 4               MS. MAROULIS:  BUT MOSTLY EVERYTHING IS DONE.

 5               THE COURT:  OKAY.  BECAUSE FROM READING ONE OF THE

 6        JOINT CASE MANAGEMENT STATEMENTS, I WASN'T SURE IF THAT HAD

 7        BEEN RESOLVED OR NOT.

 8         OKAY.  LET ME JUST -- AS THE LAST CASE MANAGEMENT ISSUE

 9        BEFORE I HANDLE THE MOTIONS, I'LL JUST SET A FURTHER CASE

10        MANAGEMENT CONFERENCE.  I THINK IT'S USEFUL TO KIND OF CLEAR

11        OUT THE UNDERBRUSH OF DISPUTES PERIODICALLY.

12         WHAT ABOUT OCTOBER 30TH?  THAT WOULD BE AFTER EXPERT

13        DISCOVERY.  IT WOULD BE AFTER THE OPPOSITION BRIEFS ON

14        DISPOSITIVE MOTIONS.  IT WOULD BE BEFORE THE REPLIES.

15         IS THAT -- OR YOU ALL TELL ME, WHEN DOES IT MAKE SENSE TO

16        GET TOGETHER AGAIN?

17               MR. LEE:  THAT'S FINE WITH APPLE, YOUR HONOR.

18               MR. JOHNSON:  I THINK THAT'S GOOD TIMING.

19               THE COURT:  OKAY.  SO WE'LL HAVE IT ON OCTOBER 30TH,

20        AND THAT'LL BE AT 2:00 O'CLOCK.

21         OKAY.  LET'S -- OKAY.  LET'S GO TO NOW -- WE'VE DEALT WITH

22        THAT AND THAT.  I DON'T NEED THE CASE NARROWING STUFF ANYMORE.

23         OKAY.  SO LET'S GO AHEAD AND DO FIRST, PLEASE, THE MOTION

24        FOR A BRIEFING SCHEDULE FOR RECONSIDERATION OF JUDGE GREWAL'S

25        NON-DISPOSITIVE PRETRIAL ORDER.
```

1          MR. JOHNSON:  YES, YOUR HONOR.

2      SO SAMSUNG REQUESTS THAT THE COURT SET A BRIEFING SCHEDULE

3  WITH RESPECT TO SEEKING RELIEF FROM JUDGE GREWAL'S ORDER

4  REGARDING THE MOTION FOR LEAVE TO FILE AMENDED INFRINGEMENT

5  CONTENTIONS TO ADD WILLFUL INFRINGEMENT ON THE '757 PATENT.

6      AND JUST TO REVISIT THAT JUST BRIEFLY IN THAT RESPECT, BACK

7  IN JUNE OF LAST YEAR, JUNE 2012, SAMSUNG SERVED ITS INITIAL

8  CONTENTIONS AND DID NOT INCLUDE A WILLFUL INFRINGEMENT

9  ALLEGATION WITH RESPECT TO THE '757 PATENT IN THERE BELIEVING

10 THAT WE DID NOT HAVE THE REQUIRED AMOUNT OF PROOF TO, TO

11 INCLUDE WILLFUL INFRINGEMENT AT THAT POINT.

12     WE SERVED DISCOVERY ON APPLE IN JULY AND WE DIDN'T RECEIVE

13 ANY DOCUMENTS RELATING TO THE '757 THAT SHOWED WILLFUL

14 INFRINGEMENT, IN PARTICULAR APPLE'S KNOWLEDGE OF THE '757.

15 APPLE DIDN'T PRODUCE ANY DOCUMENTS ALONG THOSE LINES.

16     WE RECEIVED DOCUMENTS FROM A THIRD PARTY NAMED REQUEST,

17 WHICH WAS THE ORIGINAL OWNER OF THE '757 PATENT.  THOSE

18 DOCUMENTS WERE FINALLY PRODUCED IN FEBRUARY OF 2013.

19     AND AFTER RECEIVING THOSE DOCUMENTS, WE CONTACTED APPLE

20 RIGHT AWAY BECAUSE THOSE DOCUMENTS IDENTIFIED APPLE RECIPIENTS

21 ON THOSE DOCUMENTS.

22     SO WE NOW HAD PARTY, THIRD PARTY DOCUMENTS THAT SHOWED

23 APPLE HAD ITS OWN DOCUMENTS THAT TALKED ABOUT THE '757 PATENT,

24 BUT APPLE HAD NOT PRODUCED THOSE DOCUMENTS IN THIS CASE.

25     SO WE CONTACTED APPLE AND APPLE PRODUCED, FINALLY PRODUCED

1    DOCUMENTS RELATED TO THE '757 PATENT ON MARCH 21ST OF 2013, AND

2    THOSE DOCUMENTS INCLUDED INFORMATION ABOUT THE '757 PATENT,

3    SHOWED THAT APPLE WAS AWARE OF IT AND THAT IT HAD LOOKED

4    CAREFULLY AT THE '757 PATENT, AND THEY EVEN HAD AN OPINION OF

5    COUNSEL RELATED TO IT.

6        ON MARCH 29TH, ONLY EIGHT DAYS LATER AFTER RECEIVING THOSE

7    DOCUMENTS, WE INFORMED APPLE THAT WE INTENDED TO FILE FOR LEAVE

8    TO AMEND TO ADD WILLFUL INFRINGEMENT ALLEGATIONS TO OUR

9    CONTENTIONS BACK FROM A YEAR EARLIER BASICALLY.

10        AND SO WE ARGUED THIS IN FRONT OF JUDGE GREWAL, AND

11   JUDGE GREWAL DISAGREED WITH US AND SAID THAT, YOU KNOW,

12   APPLE -- THAT SAMSUNG HAD INFORMATION BEFORE JUNE OF 2012 THAT

13   SHOWED APPLE HAD KNOWLEDGE OF THE '757 PATENT.

14        WHAT SAMSUNG HAD WAS SOME INFORMATION FROM THIS THIRD

15   PARTY, REQUEST, FROM THE CEO, THAT BASICALLY SAID APPLE WAS

16   AWARE OF THE '757 PATENT.

17        THAT'S COMPLETELY DIFFERENT FROM HAVING APPLE'S OWN

18   INTERNAL DOCUMENTS AND OWN ADMISSIONS AND OWN ANALYSIS OF THE

19   '757 PATENT, WHICH WE FINALLY DID NOT GET FROM APPLE ITSELF

20   UNTIL MARCH OF THIS YEAR.

21        WE ONLY RECEIVED THE INTERNAL DOCUMENTS FROM REQUEST IN

22   FEBRUARY OF THIS YEAR, AND ONCE WE GOT THE DOCUMENTS FROM

23   APPLE, WE, WITHIN A WEEK, LET THEM KNOW THAT WE INTENDED TO

24   MOVE TO AMEND TO ADD WILLFUL INFRINGEMENT ALLEGATIONS.

25        AND, YOUR HONOR, APPLE POINTS OUT THE FACT THAT, YOU KNOW,

1    WE FILED THIS REQUEST, WE FILED OUR OBJECTIONS TO MAGISTRATE

2    JUDGE GREWAL'S ORDER -- AND WE ARE TRYING TO BE AS JUDICIOUS AS

3    WE CAN IN WHAT TO FILE OBJECTIONS ON, THIS IS THE ONLY ISSUE

4    THAT WE FILED OBJECTIONS ON -- AND 14 DAYS HAS PASSED SINCE WE

5    FILED A REQUEST, AND APPLE POINTS TO THE FACT THAT BECAUSE 14

6    DAYS HAS NOW PASSED, THE MOTION IS DEEMED DENIED.

7    AND, YOUR HONOR, I'LL JUST POINT TO LOCAL RULE 72-2, WHICH

8    REQUIRES THAT THE CLERK SHALL NOTIFY A PARTY WHEN A MOTION IS

9    DEEMED DENIED.

10    AND YOUR HONOR WAS CONFRONTED WITH A VERY SIMILAR SITUATION

11    IN THE ABAXIS VERSUS CEPHEID CASE, WHICH IS 2012 WEST LAW

12    3255601 AT STAR 1 WHERE, SIMILARLY, A BRIEFING SCHEDULE -- EVEN

13    THOUGH 14 DAYS HAD PASSED SINCE A REQUEST HAD BEEN MADE,

14    OBJECTIONS HAD BEEN MADE, THE CLERK HAD NOT FILED OR SERVED

15    NOTICE THAT THE MOTION WAS DEEMED DENIED AND YOUR HONOR

16    ALLOWED -- SET A BRIEFING SCHEDULE ESSENTIALLY.

17    AND SO ALL WE'RE SAYING HERE IS WE'D LIKE TO BE GIVEN AN

18    OPPORTUNITY TO BRIEF THE ISSUE.

19    THERE'S NO PREJUDICE TO APPLE HERE.  APPLE HAS BEEN AWARE

20    OF ITS OWN KNOWLEDGE OF THE '757 PATENT FROM THE BEGINNING OF

21    THE CASE, MUCH MORE SO THAN US, AND SAMSUNG HEARING ABOUT

22    APPLE'S KNOWLEDGE FROM A THIRD PARTY IS DIFFERENT THAN HEARING

23    ABOUT IT FROM APPLE AND HAVING APPLE'S OWN INTERNAL DOCUMENTS

24    RELATED TO THE SITUATION.

25    SO, YOUR HONOR, WE'D REQUEST THAT A BRIEFING SCHEDULE BE

```
 1        SET.
 2              THE COURT:  OKAY.
 3              MR. SELWYN:  YOUR HONOR, THIS ISSUE WAS THOROUGHLY
 4        CONSIDERED BY JUDGE GREWAL AND A CRITICAL FACT, WHICH
 5        MR. JOHNSON HAS NOT EMPHASIZED, IS THAT TEN MONTHS BEFORE
 6        SAMSUNG FILED THE CASE AGAINST APPLE, SAMSUNG WAS TOLD BY THE
 7        SELLER THAT THE SELLER HAD ALSO APPROACHED APPLE ABOUT THE
 8        PATENTS.
 9           SO INDISPUTABLY SAMSUNG WAS AWARE, TEN MONTHS BEFORE IT
10        COMMENCED THIS CASE, THAT APPLE HAD AWARENESS OF THE PATENT.
11           SO JUDGE GREWAL ANALYZED WHETHER THERE WAS GOOD CAUSE TO
12        JUSTIFY THE VERY EXTENSIVE DELAY THAT SAMSUNG HAD IN ASSERTING
13        WILLFUL INFRINGEMENT, ESSENTIALLY SAMSUNG WANTED TO ALLEGE
14        WILLFUL INFRINGEMENT AT THE END OF FACT DISCOVERY, AND HE
15        LOOKED AT WHETHER THERE WAS ANY JUSTIFICATION FOR THIS DELAY,
16        AND HE CONCLUDED NO, BECAUSE SAMSUNG WAS ON NOTICE FROM THE
17        SELLER, IN WRITING, THAT APPLE HAD BEEN MADE AWARE OF THE '757
18        PATENT BECAUSE THE SELLER ALSO APPROACHED APPLE.  SAMSUNG WAS
19        TOLD THAT IN WRITING AND ORALLY BY THE SELLER.
20           AND FOR THAT REASON, JUDGE GREWAL SAID, "THERE IS NO GOOD
21        CAUSE TO JUSTIFY YOUR EXTENSIVE DELAY, REGARDLESS OF WHEN APPLE
22        MAY HAVE PRODUCED DOCUMENTS, BECAUSE YOU KNEW, YOU INDISPUTABLY
23        KNEW BEFORE YOU COMMENCED THIS CASE, BEFORE YOU FILED YOUR
24        INFRINGEMENT CONTENTIONS IN THE FIRST PLACE, OF APPLE'S
25        AWARENESS," AND THAT WAS THE BASIS FOR HIS DENIAL AND WE THINK
```

```
 1    THAT WAS THE RIGHT DECISION AND THERE SHOULD BE NO FURTHER

 2    BRIEFING AT THIS POINT AND NO REASON TO BURDEN THE COURT WITH

 3    ADDITIONAL PAPER.

 4            MR. JOHNSON:  JUST VERY BRIEFLY, YOUR HONOR.

 5            THE COURT:  OKAY.

 6            MR. JOHNSON:  WHAT -- WHY DIDN'T APPLE PRODUCE

 7    DOCUMENTS WHEN WE SERVED DISCOVERY BACK IN JULY?  THEY WAITED

 8    EIGHT MONTHS TO PRODUCE DOCUMENTS.

 9        HAVING INFORMATION FROM A THIRD PARTY ABOUT APPLE'S

10    KNOWLEDGE IS VERY DIFFERENT THAN HAVING INFORMATION FROM APPLE

11    ITSELF THAT IDENTIFIES WHAT THIS KNOWLEDGE IS AND WHAT THEIR --

12    THE EXTENT OF THEIR KNOWLEDGE AND THE EXTENT OF THEIR ANALYSIS

13    OF THE '757 PATENT.

14        THIS IS THE ONE ISSUE -- WITH ALL DUE RESPECT, WE THOUGHT

15    MAGISTRATE JUDGE GREWAL JUST DIDN'T GET THIS ONE RIGHT.

16        AND SO ALL WE'RE ASKING FOR HERE IS TO SET A BRIEFING

17    SCHEDULE SO THAT WE HAVE THE OPPORTUNITY TO LAY THE ISSUES OUT

18    IN FRONT OF YOUR HONOR.

19        AND WE'RE VERY, VERY MINDFUL OF NOT OVERBURDENING THE COURT

20    WITH YET MORE PAPER ON THIS.  THIS WON'T TAKE A LOT OF PAPER

21    AND WON'T TAKE A LOT OF TIME.  WE JUST WANT TO LAY THE ISSUES

22    OUT BEFORE YOUR HONOR SO THAT YOUR HONOR CAN APPRECIATE THEM

23    AND HEAR US ON THESE PARTICULAR ISSUES.

24            MR. SELWYN:  AND IF I COULD JUST BRIEFLY ADDRESS THE

25    REASON FOR THE APPLE'S TIMING ON THE PRODUCTION OF THOSE
```

1     DOCUMENTS?

2          APPLE DECIDED TO WAIVE PRIVILEGE AND RELY ON THE OPINION OF

3     COUNSEL.  SO APPLE, 50 DAYS AFTER THE COURT ISSUED ITS CLAIM

4     CONSTRUCTION, PURSUANT TO THE LOCAL RULE, DECIDED TO WAIVE

5     PRIVILEGE, PRODUCED THE OPINION OF COUNSEL, AND PRODUCED THE

6     OTHER DOCUMENTS.

7          SO THERE WAS NO WITHHOLDING OF DOCUMENTS.  ALL THOSE

8     DOCUMENTS WERE TIMELY PRODUCED.

9          IN ANY EVENT, THEY'RE IRRELEVANT TO WHETHER SAMSUNG KNEW,

10    BEFORE COMMENCING THE CASE, ABOUT APPLE'S AWARENESS.

11          THE COURT:  I GUESS I DON'T SEE HOW THIS RELATES TO

12    ADVICE OF COUNSEL.

13          MR. SELWYN:  BECAUSE THAT'S HOW SAMSUNG SAYS THEY

14    LEARNED THAT APPLE WAS AWARE OF THE '757 PATENT, WHEN WE

15    PRODUCED AN OPINION OF COUNSEL DATED IN THE SUMMER OF 2011, AND

16    THEY POINT TO THAT AND SAY APPLE WAS AWARE.

17          AND WE SAY, "YES, APPLE WAS AWARE, AND YOU KNEW APPLE WAS

18    AWARE BECAUSE THE SELLER TOLD YOU THAT THE SELLER HAD ALSO

19    APPROACHED APPLE."

20          MR. JOHNSON:  ACTUALLY, WHAT HAPPENED WAS WE GOT

21    DOCUMENTS FROM REQUEST, A THIRD PARTY, FINALLY THAT IDENTIFIED

22    APPLE HAVING -- APPLE PEOPLE BEING ON THESE DOCUMENTS.  THERE

23    WERE APPLE EMPLOYEES ON THESE DOCUMENTS.

24          WE THEN WENT TO APPLE AFTER THAT AND SAID, "HERE, WE'VE GOT

25    THESE DOCUMENTS THAT SHOW APPLE EMPLOYEES ON THESE DOCUMENTS.

```
1        WHY HAVEN'T YOU PRODUCED THESE DOCUMENTS?  THEY SHOULD HAVE

2        BEEN PRODUCED EIGHT MONTHS AGO."

3             AND AT THAT POINT APPLE WENT BACK, LOCATED DOCUMENTS, AND

4        ALSO WAIVED OPINION -- WAIVED ADVICE OF COUNSEL.

5             BUT YOUR HONOR IS EXACTLY RIGHT.  WHY -- HOW DO THESE OTHER

6        DOCUMENTS RELATE TO THE ADVICE OF COUNSEL?

7              THEY ARE SIMPLY DOCUMENTS THAT SHOULD HAVE BEEN PRODUCED

8        AT THE OUTSET OF THE LITIGATION, THEY IDENTIFY THE EXTENT TO

9        WHICH APPLE ANALYZED THIS PARTICULAR PATENT, AND THEY'RE THE

10       DOCUMENTS THAT GO RIGHT TO THE HEART OF OUR WILLFUL ALLEGATIONS

11       AND THEY'RE DOCUMENTS THAT WE DIDN'T HAVE FROM APPLE UNTIL

12       MARCH 21ST OF THIS YEAR.

13               THE COURT:  OKAY.  LET ME JUST ANALYZE THE DIFFERENT

14       STANDARDS THAT THE COURT WOULD HAVE TO CONSIDER IN DECIDING HOW

15       TO RULE ON THIS.

16        THE FIRST ONE IS -- TO PREVAIL ON A MOTION FOR LEAVE TO

17       FILE A MOTION FOR RECONSIDERATION, THE MOVING PARTY HAS TO SHOW

18       A MATERIAL DIFFERENCE IN FACT OR LAW EXISTS FROM THAT WHICH WAS

19       PRESENTED BEFORE JUDGE GREWAL; THAT THERE IS AN EMERGENCE OF

20       NEW MATERIAL, FACTS, OR A CHANGE OF LAW AFTER THE TIME OF SUCH

21       ORDER; OR A MANIFEST FAILURE BY THE COURT TO CONSIDER MATERIAL

22       FACTS OR DISPOSITIVE LEGAL ARGUMENTS.

23        I DON'T THINK THAT ANY OF THOSE STANDARDS HAVE BEEN MET.

24        BUT SEPARATE FROM THAT IS THE QUESTION OF IF THIS IS AN

25       OBJECTION TO JUDGE GREWAL'S ORDER, WHICH I BELIEVE IT IS, THEN
```

1        UNDER FEDERAL RULE OF CIVIL PROCEDURE 72, THIS COURT WOULD BE

2        REQUIRED TO SET ASIDE THAT ORDER IF IT'S CLEARLY ERRONEOUS OR

3        CONTRARY TO LAW.

4             AND HAVING REVIEWED JUDGE GREWAL'S ORDER AND SEEING WHAT HE

5        REVIEWED, HE REVIEWED SAMSUNG'S MOTION TO AMEND ITS

6        INFRINGEMENT CONTENTIONS, APPLE'S OPPOSITION, SAMSUNG'S REPLY,

7        SAMSUNG'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF,

8        APPLE'S OPPOSITION TO THAT, AND HE ALSO HAD A HEARING ON

9        JUNE 11TH, 2013.

10            IF I LOOK AT PATENT LOCAL RULE 3-6, THE PARTIES ARE

11       PERMITTED TO AMEND THEIR INVALIDITY CONTENTIONS BY ORDER OF THE

12       COURT UPON TIMELY SHOWING OF GOOD CAUSE, AND GOOD CAUSE HAS

13       BEEN INTERPRETED BY THE FEDERAL CIRCUIT AS A SHOWING THAT THE

14       PARTY SEEKING LEAVE TO AMEND ACTED WITH DILIGENCE IN PROMPTLY

15       MOVING TO AMEND WHEN NEW EVIDENCE IS REVEALED IN DISCOVERY, AND

16       ONLY IF THE MOVING PARTY IS ABLE TO SHOW DILIGENCE MAY THE

17       COURT CONSIDER THE PREJUDICE TO THE NON-MOVING PARTY.

18            SO IN THIS CASE, I WILL TELL YOU WHAT PARTS OF

19       JUDGE GREWAL'S ORDER THAT I THOUGHT WERE MOST SALIENT.  HE

20       FOCUSES ON AN E-MAIL DATED JULY 26TH, 2011, WHICH IS BATES

21       STAMPED BY SAMSUNG.  IT'S AN E-MAIL FROM PETER CHOLNOKY,

22       C-H-O-L-N-O-K-Y, WHO IS THE CEO OF REQUEST, WHO'S THE OWNER OF

23       THE '757 PATENT WHO SOLD IT TO SAMSUNG.

24            AND MR. CHOLNOKY INFORMED JULIE SHIN, A SAMSUNG EMPLOYEE,

25       THAT REQUEST FIRST OFFERED THE '757 PATENT TO APPLE A MONTH

1    PRIOR IN JUNE OF 2011; THAT APPLE WAS INTERESTED IN LICENSING,

2    BUT NOT PURCHASING THE PATENT; AND MS. SHIN ASKED MR. CHOLNOKY

3    WHETHER REQUEST HAD ENGAGED IN ANY DISCUSSIONS WITH APPLE

4    REGARDING THE PATENT.

5        SO JUDGE GREWAL FOUND THAT SAMSUNG'S NOTICE IN JULY OF 2011

6    ABOUT APPLE'S INTEREST IN THE '757 PATENT SHOWS THAT SAMSUNG

7    KNEW ABOUT APPLE'S NEGOTIATIONS WITH REQUEST ABOUT THE '757

8    PATENT AND THAT SAMSUNG SPECIFICALLY RAISED THE ISSUE BEFORE

9    SAMSUNG ITSELF PURCHASED THE '757 PATENT FROM REQUEST.

10       SO WHILE IT IS TRUE THAT APPLE'S PRODUCTION OF DOCUMENTS

11   CONFIRMING THE COMMUNICATIONS WERE LATER, JUDGE GREWAL FINDS

12   THAT AT LEAST AS OF JULY OF 2011, SAMSUNG DID HAVE INFORMATION

13   THAT FORMED THE BASIS OF A WILLFULNESS CLAIM AND THAT THIS IS

14   NOT A SHOWING OF GOOD CAUSE TO AMEND INVALIDITY CONTENTIONS TO

15   ADD A WILLFULNESS -- TO AMEND ITS CONTENTIONS TO ADD A

16   WILLFULNESS INFRINGEMENT THEORY -- I'M SORRY -- TO THE

17   INFRINGEMENT CONTENTIONS, EXCUSE ME, NOT THE INVALIDITY

18   CONTENTIONS.

19       SO ON THAT BASIS, JUDGE GREWAL FOUND THAT GOOD CAUSE HAD

20   NOT BEEN SHOWN, AND I SIMPLY CANNOT FIND THAT THAT'S CLEARLY

21   ERRONEOUS OR CONTRARY TO LAW.

22       SO THE REQUEST FOR RELIEF FROM JUDGE GREWAL'S ORDER IS

23   DENIED AND I THINK THE REQUEST FOR A BRIEFING SCHEDULE IS

24   DENIED AS MOOT.  OKAY?  THAT'S A VERY HIGH STANDARD, CLEARLY

25   ERRONEOUS OR CONTRARY TO LAW, TO OVERTURN JUDGE GREWAL'S

1    DECISION, AND I CAN'T, BASED ON THESE FACTS, MAKE THAT FINDING.

2    OKAY?

3         ALL RIGHT.  LET'S GO TO THE NEXT ISSUE.  LET ME ASK YOU,

4    HOW WOULD -- IF THIS COLLATERAL ESTOPPEL AND RES JUDICATA IS

5    LITIGATED IN THIS CASE, WHAT WOULD IT TAKE THE FORM OF?  A

6    SUMMARY JUDGMENT MOTION, OR -- I'M JUST NOT CLEAR.

7         MS. MAROULIS:  YOUR HONOR, THIS MOTION IS AIMED AT

8    NARROWING AND SIMPLIFYING THE CASE.

9         THE COURT:  OKAY.

10        MS. MAROULIS:  SO THE TWO WAYS IT CAN COME UP, ONCE

11   THIS DEFENSE IS ADDED, IS EITHER SUMMARY JUDGMENT, AND WE'LL

12   NEED TO MAKE A CHOICE AS TO WHAT TO BRING TO YOUR HONOR FOR

13   SUMMARY JUDGMENT.

14        THE COURT:  UM-HUM.

15        MS. MAROULIS:  OR -- AND ALSO IN THE FORM OF MOTIONS

16   IN LIMINE IN TERMS OF WHAT GETS PRESENTED BEFORE THE JURY.

17        THE COURT:  OKAY.

18        MS. MAROULIS:  AND THE WHOLE PURPOSE OF THIS MOTION

19   IS WE'VE BEEN FOCUSSING A LOT IN THIS CASE ON NARROWING,

20   DROPPING PATENTS, DROPPING CLAIMS, DROPPING REFERENCES.

21       THIS IS ANOTHER WAY TO NARROW AND STREAMLINE THE CASE FOR

22   JURY PRESENTATION, BECAUSE WE HAD A VERY LONG TRIAL LAST AUGUST

23   AND SOME OF THE ISSUES WERE VENTED AND -- VETTED AND DECIDED,

24   AND WHEN THE SAME ISSUES AND CLAIMS COME UP IN THIS CASE, IT

25   WOULD BE BENEFICIAL FOR THE COURT AND FOR THE JURY AND FOR THE

```
 1     PARTIES NOT TO RELITIGATE THEM.

 2         SO AT THIS STAGE, TODAY, ALL WE'RE ASKING IS TO ADD A

 3     SPECIFIC AFFIRMATIVE DEFENSE, BASICALLY ONE LINE TO OUR REPLY

 4     TO THE COUNTERCLAIM, BUT LATER ON IN THE CASE, WE WILL BE

 5     EITHER BRINGING A SUMMARY JUDGMENT MOTION ON THE ISSUE OR

 6     BRINGING IT IN THE FORM OF PRETRIAL MOTIONS, SUCH AS MOTIONS IN

 7     LIMINE, IN HOPES OF SHORTENING AND SIMPLIFYING THE PRESENTATION

 8     AT TRIAL.

 9             THE COURT:  OKAY.  LET ME HEAR FROM MR. LEE.  YOU

10     DON'T NEED ANY DISCOVERY ON THIS?

11             MR. LEE:  NO, YOUR HONOR.

12             THE COURT:  OKAY.

13             MR. LEE:  BUT I THINK THAT TO DESCRIBE THIS AS CASE

14     NARROWING ISN'T QUITE FAIR.

15         WHAT IT'S GOING TO DO IS ADD A WHOLE SERIES OF MOTIONS

16     PRACTICE THAT YOUR HONOR IS GOING TO BE REQUIRED TO ADDRESS.

17         AND IF I COULD REMIND THE COURT, ABOUT A YEAR AGO, WE

18     ACTUALLY WERE ADDRESSING THE ISSUES OF THE FRAND CONTRACT

19     CLAIMS, THE FRAND DISCLOSURE CLAIMS, AND THE ANTITRUST CLAIMS,

20     AND THE ISSUE THAT I WAS UNSUCCESSFUL IN CONVINCING YOUR HONOR

21     OF AT THE TIME WAS THAT THERE WAS A BROADER SET OF ISSUES.

22         THERE WERE SEVEN PATENTS, YOUR HONOR WILL RECALL,

23     ORIGINALLY, AND WHILE SOME OF THEM HAD DROPPED, WE HAD

24     DISCLOSURE CLAIMS THAT RELATED TO ALL OF THEM.

25         I URGED YOUR HONOR THAT WE SHOULD BE ABLE TO TRY THE FULL
```

```
 1        SET OF DISCLOSURE CLAIMS.  YOUR HONOR SAID NO -- THAT'S WHAT WE

 2        WERE UNSUCCESSFUL ON AT THAT MOMENT IN TIME -- AND YOU ASKED

 3        THAT WE DISMISS ANY DISCLOSURE CLAIMS, OTHER THAN THE TWO

 4        PATENTS THAT WERE AT ISSUE, WITHOUT PREJUDICE, AND WE DID THAT.

 5            AND THEN WHEN YOUR HONOR CHARGED THE JURY ON THE TWO

 6        PATENTS, THE '516 AND THE '941, YOU SPECIFICALLY CHARGED THAT

 7        THE CLAIMS, CONSISTENT WITH THE JULY HEARING, CONSISTENT WITH

 8        OUR DISMISSAL, WERE FOCUSSED ON THOSE TWO PATENTS.

 9            WE HAD THE BURDEN OF PROVING THE ELEMENTS THAT YOUR HONOR

10        CHARGED ON.  THAT'S ALL THAT WAS LITIGATED.

11            THE CLAIMS IN THIS CASE ARE BASED UPON TWO DIFFERENT

12        PATENTS.  SO THEY ARE DIFFERENT PATENTS, THEY'RE DIFFERENT

13        TECHNOLOGIES, THEY ARE DIFFERENT DISCLOSURE FACTS, THEY ARE

14        DIFFERENT LICENSING NEGOTIATIONS, AND THEY ARE DIFFERENT

15        CONSEQUENCES.

16            SO IF YOUR HONOR ALLOWS THIS ONE SENTENCE ADDITION, WE'RE

17        GOING TO HAVE A SUBSTANTIAL SUMMARY JUDGMENT MOTION, WHICH

18        ACTUALLY IS GOING TO DIVERT BOTH THE COURT'S AND THE PARTIES'

19        RESOURCES FROM WHAT YOUR HONOR DESCRIBED EARLIER AS FOCUSSED

20        SUMMARY JUDGMENT MOTIONS.  IT WILL RESULT IN IN LIMINE

21        PRACTICE, AND THIS ISN'T REALLY CASE NARROWING.

22            THIS IS -- THESE ARE CLAIMS THAT RELATE TO, AS I SAID,

23        DIFFERENT PRODUCTS, DIFFERENT TECHNOLOGIES, DIFFERENT PATENTS.

24            BUT MORE IMPORTANTLY, A YEAR AGO, IN THE FIRST CASE, WHEN

25        WE DISCUSSED A BROADER SET OF CLAIMS, THE SET OF CLAIMS THAT
```

1    MIGHT HAVE RAISED SOME OVERLAPPING ISSUES, YOUR HONOR SAID THAT

2    WE WEREN'T GOING TO BE ABLE TO PURSUE THEM, BOTH FOR TIME AND

3    RESOURCE PURPOSES.  WE DISMISSED THOSE WITHOUT PREJUDICE ON THE

4    RECORD.  THAT'S BEFORE YOUR HONOR NOW.

5        AND THEN WHEN YOUR HONOR CHARGED THE JURY INSTRUCTION

6    NUMBER 75, YOU CHARGED VERY SPECIFICALLY THAT WE WERE

7    ADDRESSING JUST THE CONTRACT CLAIMS, JUST THE DISCLOSURE

8    CLAIMS, JUST THE ANTITRUST CLAIMS RELATED TO THOSE TWO PATENTS.

9        THESE ARE TWO DIFFERENT PATENTS.  IT WILL HAVE A JURY

10   CHARGE THAT'S ALMOST IDENTICAL TO WHAT YOUR HONOR GAVE BEFORE,

11   BUT THE JURY CHARGE, INSTEAD OF SAYING '516 AND '941, WILL SAY

12   '087 AND '596, AND THERE WILL BE AN ENTIRELY DIFFERENT SET OF

13   FACTS.

14       SO BY BRINGING THIS MOTION -- AND THIS IS A MOTION THAT

15   SAMSUNG -- THIS IS AN ALLEGATION THAT SAMSUNG COULD HAVE MADE

16   IN SEPTEMBER OF LAST YEAR, COULD HAVE MADE IN JANUARY WHEN YOUR

17   HONOR RULED ON JMOL.

18       BY BRINGING IT NOW, WHAT WILL RESULT IS A WHOLE SERIES OF

19   MOTION PRACTICE BEFORE YOUR HONOR THAT SHOULDN'T HAPPEN, NOT

20   ONLY BECAUSE IT'S TOO LATE, BUT ALSO BECAUSE IT WOULD BE

21   FUTILE.

22       AND IN ADDITION TO THAT, IT WOULD BE INCONSISTENT WITH THE

23   SET OF RULINGS THAT YOUR HONOR MADE IN THE FIRST CASE THAT TOLD

24   US THAT TO THE EXTENT WE HAVE OTHER DISCLOSURE CLAIMS BASED

25   UPON MISCONDUCT BEFORE THE STANDARD SETTING BODY, LITIGATE THAT

1    IN ANOTHER CASE.

2         THAT'S WHAT WE'RE DOING NOW.

3              MR. JOHNSON:  YOUR HONOR, MAY I --

4              THE COURT:  I HAVE QUESTIONS.  ONE SECOND, PLEASE.

5         SO -- BUT THE OFFER THAT SAMSUNG MADE WAS TO THE ENTIRE

6    PORTFOLIO, WHICH WOULD HAVE INCLUDED THESE TWO PATENTS, AND THE

7    EVIDENCE THAT CAME OUT IN THE TRIAL LAST YEAR INCLUDED THE FULL

8    PORTFOLIO OFFER.  IT WASN'T LIMITED TO THE TWO PATENTS THAT

9    WERE IN THAT TRIAL.

10             MR. LEE:  BUT, YOUR HONOR, THERE ARE THREE IMPORTANT

11   POINTS FOR FOCUSSING ON CLAIM PRECLUSION AND ISSUE PRECLUSION.

12        THE QUESTION BECOMES, WHAT WERE THE CLAIMS THAT WERE

13   LITIGATED?  AND ON THE ISSUE PRECLUSION SIDE, WHAT ARE THE

14   ISSUES THAT COULD BE PRECLUDED?

15        THE CLAIMS -- THEY CLAIM TO HAVE MADE A PORTFOLIO LICENSE,

16   AS YOUR HONOR ADDRESSED IN THE JMOL, BUT THE DISCLOSURE CLAIMS

17   RELATED TO THE TWO PATENTS.

18        NOW, WE LOST THOSE CLAIMS, AS YOUR HONOR KNOWS.

19        BUT YOUR HONOR WILL ALSO RECALL THAT YOU INSTRUCTED THE

20   JURY THAT IN ORDER TO FIND FOR US, THEY HAD TO FIND THAT THOSE

21   TWO PATENTS WERE ESSENTIAL TO THE UMTS STANDARD, AND I RECALL

22   WHEN I ARGUED TO YOUR HONOR ON THE JMOL MOTIONS, ONE OF THE

23   POSSIBLE RESOLUTIONS, WITHOUT LOOKING BEHIND THE CURTAIN AND

24   TRYING TO FIGURE OUT WHAT THE JURY DID, WAS THAT THE JURY FOUND

25   THOSE PATENTS NOT INFRINGED, WHICH THEY DID FIND AND WHICH YOUR

1    HONOR UPHELD ON JMOL, AND AS A CONSEQUENCE, THEY FOUND THAT WE

2    HAD NOT SUSTAINED OUR BURDEN OF DEMONSTRATING THAT THEY WERE

3    ESSENTIAL TO THE UMTS STANDARD.

4         THE COURT:  I THOUGHT YOU ARGUED IN THE ALTERNATIVE,

5    THAT YOU THOUGHT IT WASN'T ESSENTIAL, BUT IF IT WAS, THEN

6    SAMSUNG VIOLATED FRAND OBLIGATIONS.  DIDN'T YOU ARGUE IN THE

7    ALTERNATIVE?

8         MR. LEE:  WE DID DURING THE COURSE OF THE TRIAL, YOUR

9    HONOR.

10        THE COURT:  UM-HUM.

11        MR. LEE:  BUT THE QUESTION THEN BECAME -- WHEN YOUR

12   HONOR HAD TO LOOK AT THE JURY'S VERDICT AND ALL THEY SAID WAS

13   THAT WE HAD NOT SUSTAINED OUR BURDEN --

14        THE COURT:  UM-HUM.

15        MR. LEE:  -- IT'S POSSIBLE -- AND TO BE FAIR TO

16   SAMSUNG, IT'S POSSIBLE THAT THEY ACCEPTED THIS CONTENTION THAT

17   THERE HAD BEEN A 2.4 PERCENT PORTFOLIO OFFER AND THAT WAS

18   SUFFICIENT.

19      BUT IT IS EQUALLY POSSIBLE THAT THEY FOUND THAT WE DIDN'T

20   SUSTAIN OUR BURDEN OF DEMONSTRATING -- THAT WE DID NOT SUSTAIN

21   OUR BURDEN OF DEMONSTRATING THE PATENTS WERE ESSENTIAL.

22      WHEN -- THE CASE LAW IS CLEAR, WHERE YOU CAN'T TELL WHAT

23   ISSUE THE JURY DECIDED, THERE'S NO ISSUE PRECLUSION.

24      SO IF I WERE TO TAKE, YOUR HONOR, THIS ONE SENTENCE THAT

25   THEY'RE TRYING TO ADD, THERE ARE TWO DIFFERENT BOXES.  THE

1    FIRST IS CLAIM PRECLUSION, ARE THE CLAIMS IDENTICAL?  AND THERE

2    ARE TWO PARTS.  THE BROAD QUESTION OF WHETHER, BY PORTFOLIO

3    LICENSES AND PORTFOLIO OFFERS, THERE WERE BREACHES OF FRAND IS

4    ONE OF THE CLAIMS THAT WE WITHDREW WITHOUT PREJUDICE IN THE

5    FIRST CASE.

6        THE SECOND SET OF CLAIMS, THE SECOND POSSIBLE SET OF CLAIMS

7    THAT YOU COULD COMPARE ARE THE PATENTS THAT ARE BEING COMPARED

8    IN THE TWO.

9            THE COURT:  BUT WHAT IS OVERLAPPING -- I'M SORRY TO

10   INTERRUPT YOU -- WHAT IS OVERLAPPING?  YOU SAID THAT SOME OF

11   THE CLAIMS THAT YOU DIDN'T PURSUE LAST YEAR MAY HAVE BEEN MORE

12   LIKELY TO BE OVERLAPPING WITH THE TWO THAT ARE IN THIS CASE

13   THAN THE TWO THAT ACTUALLY WENT TO TRIAL.

14           MR. LEE:  NO.  I'M SORRY.  IF THAT'S WHAT I

15   COMMUNICATED, I DIDN'T INTEND TO.

16       THERE WERE FIVE LAST YEAR IN ADDITION TO THE TWO THAT WENT

17   TO TRIAL.

18           THE COURT:  UM-HUM.

19           MR. LEE:  AND WE HAD OFFERED TO YOUR HONOR, AND WE

20   HAD PURSUED IN DISCOVERY, THE NONDISCLOSURE FACTS.

21       THOSE FACTS OVERLAP TO SOME EXTENT WITH THE TWO THAT WERE

22   PURSUED LAST YEAR, AND ONE OF THE ARGUMENTS WE MADE IS EVEN

23   THOUGH THE PATENTS WERE NOT -- THE PATENTS DIDN'T REMAIN IN THE

24   CASE, THERE WAS SUFFICIENT OVERLAP THAT, ON THE FACTS, THAT WE

25   SHOULD BE ABLE TO PURSUE THE BROADER NONDISCLOSURE CLAIMS.

1        YOUR HONOR SAID AT THE TIME, NO, IT WOULD COMPLICATE THE

2    CASE UNDULY AND, THEREFORE, WE FILED THE DISMISSAL WITH

3    PREJUDICE -- WITHOUT PREJUDICE.

4        IF IT WOULD HAVE BEEN DONE WITH PREJUDICE, IT WOULD HAVE

5    SIMPLIFIED EVERYTHING TODAY.  BUT WE DID IT WITHOUT PREJUDICE.

6        THE COURT:  YOU ALL CAN DO IT IN THIS CASE, DISMISS

7    THEM ALL WITH PREJUDICE.

8        (LAUGHTER.)

9        MR. LEE:  WE KNOW THAT FOR SURE.

10   BUT WE WITHDREW THE BROAD PORTFOLIO CLAIM.  WE WITHDREW THE

11   CLAIMS IN THE OTHER FIVE PATENTS.  WE DISMISSED THEM WITHOUT

12   PREJUDICE, AND THEN YOUR HONOR'S JURY INSTRUCTION NUMBER 75 IS

13   CONSISTENT.

14       SO IF YOU THINK ABOUT IT THIS WAY, THERE'S CLAIM PRECLUSION

15   AND THERE ARE TWO POSSIBLE WAYS THAT THERE COULD BE CLAIM

16   PRECLUSION.  ONE IS THAT WE LITIGATED THE BROAD PORTFOLIO OF

17   CLAIMS IN THE FIRST CASE AND, THEREFORE, IT WOULD BE CLAIM

18   PRECLUDED, BUT THAT'S SPECIFICALLY THE CLAIM THAT YOU SAID A

19   YEAR AGO WE COULDN'T PURSUE.

20       THE OTHER POSSIBLE --

21       THE COURT:  BUT YOU STILL ALLEGE JUST ONE MONOPOLY,

22   RIGHT?  YOU DIDN'T ALLEGE A MONOPOLY PER PATENT.  IT WAS STILL

23   ONE OVERARCHING SCHEME.

24       MR. LEE:  NO, ACTUALLY, WE PROVED -- WE PROVED

25   MONOPOLY BY TECHNOLOGY MARKET.

1       AND YOUR HONOR MAY RECALL THAT FOR THESE PURPOSES, YOU HAVE

2   TO PROVE THAT THERE'S A TECHNOLOGY MARKET THAT RESULTS FROM THE

3   PATENT AND THE STANDARD, AND THAT PORTION OF THE TECHNOLOGY

4   MARKET BECOMES THE MARKET THAT IS MONOPOLIZED UNDER SECTION 2

5   AS A RESULT OF THE ACTIVITY.

6       THAT'S WHY, WHEN I VERY QUICKLY SAID THAT THERE ARE

7   DIFFERENT PATENTS, THOSE DIFFERENT PATENTS COVER DIFFERENT

8   PORTIONS OF THE STANDARD.

9       BY DEFINITION UNDER OUR THEORY, BUT ALSO THE LAW THAT HAS

10  ADDRESSED THESE ISSUES NOW, THOSE DIFFERENT PORTIONS OF THE

11  STANDARD RESULT IN DIFFERENT TECHNOLOGY MARKETS.

12          THE COURT:  BUT THE NAMES OF THE TECHNOLOGIES SOUND

13  AWFULLY SIMILAR FOR THE ONES THAT ARE IN THIS CASE AND THE ONES

14  THAT WERE IN LAST YEAR'S TRIAL.

15          MR. LEE:  I -- YOUR HONOR, THE UMTS STANDARD IS ABOUT

16  40,000 PAGES LONG.

17          THE COURT:  UM-HUM.

18          MR. LEE:  THE STANDARDS THAT YOUR HONOR SAW LAST YEAR

19  WERE ABOUT FIVE PAGES OF THAT 40,000 PAGE STANDARD.

20      THE PATENTS THAT ARE AT ISSUE IN THIS CASE ARE DIFFERENT

21  PORTIONS OF THAT 40,000.  THERE ARE A DIFFERENT SET OF PAGES.

22  THEY ARE A DIFFERENT PART OF THE STANDARD.

23          THE COURT:  BUT THEY ALL -- THE NAMES -- I CAN'T

24  RECALL IT RIGHT NOW, BUT I READ IT AND IT LOOKED VERY SIMILAR,

25  YOU KNOW, THE TRANSMISSION AND --

1          MR. LEE:  THEY -- YOU KNOW, YOUR HONOR, TWO THINGS:

2     IF THERE WAS SO MUCH IDENTITY, THEN THE NON-INFRINGEMENT

3     VERDICT IN THE FIRST CASE SHOULD SAY SOMETHING ABOUT THIS CASE.

4          THE FACT OF THE MATTER IS THEY'VE ALLEGED THE -- THEY'VE

5     ALLEGED THAT THESE PATENTS ARE INFRINGED BY DIFFERENT ASPECTS

6     OF OUR PRODUCTS.  THEY CLAIM THAT THESE ARE DIFFERENT PORTIONS

7     OF THE STANDARDS.

8          I DON'T THINK, FAIRLY, THAT EITHER OF US WOULD STAND UP

9     HERE AND TELL YOU THAT THESE TWO PATENTS RELATE TO THE SAME

10     PARTS OF THE STANDARD AS THE '516 AND THE '941.

11          THE COURT:  WHAT ABOUT -- I ASSUME THAT YOU ARE GOING

12     TO ALLEGE THE SAME WHAT YOU VIEW AS MISCONDUCT IN TERMS OF

13     YOU'RE GOING TO STILL ALLEGE THE SAME WHAT YOU BELIEVE ARE

14     NON-FRAND OFFERS BY SAMSUNG IN 2010, 2011, ALL OF THAT'S GOING

15     TO BE OVERLAPPING EVIDENCE.

16          MR. LEE:  THE ONLY THING --

17          THE COURT:  RIGHT?

18          MR. LEE:  SO TO BE CLEAR, THE ONLY -- THERE IS SOME

19     OVERLAPPING EVIDENCE.

20          BUT THERE HAVE BEEN -- AS YOUR HONOR KNOWS FROM THE TWO

21     DECLARATIONS THAT HAVE BEEN PUT BEFORE YOU, THERE HAVE BEEN

22     ADDITIONAL DISCUSSIONS THAT WOULD BECOME PART OF THAT FRAND

23     PROOF.

24          BUT IF I TAKE YOUR HONOR BACK IN TIME, THE PEOPLE WHO WERE

25     ATTENDING THE STANDARD SETTING BODY --

```
 1              THE COURT:  WELL, WHY COULDN'T THERE BE A FINDING

 2    THAT, WELL, AS FAR AS THE OVERLAPPING ALLEGED MISCONDUCT,

 3    THERE'S ALREADY BEEN A JURY FINDING THAT WHATEVER ALLEGEDLY

 4    NON-FRAND OFFERS WERE MADE IN 2010 AND 2011, THAT DOES NOT

 5    SUPPORT A FINDING OF BREACH OF CONTRACT OR AN ANTITRUST CLAIM?

 6              MR. LEE:  YOUR HONOR, THAT WOULD ACTUALLY REQUIRE YOU

 7    TO TAKE YOUR INSTRUCTION NUMBER 75 AND TRY TO DISASSEMBLE THE

 8    JURY VERDICT AND DECIDE WHAT THEY ACTUALLY FOUND TO REACH THAT

 9    DETERMINATION.

10        IT IS POSSIBLE, PROBABLY PROBABLE, THAT THEY DETERMINED

11    THAT WE HAD NOT PROVED -- AND LET ME QUOTE FROM YOUR HONOR'S

12    JURY INSTRUCTION NUMBER 75.  YOU SAID THAT WE HAD THE BURDEN OF

13    PROVING THAT THE IPR'S, THE PATENTS, QUOTE, "REMAIN ESSENTIAL

14    TO THE UMTS STANDARD."

15        NOW, IF WE HAD PROVED NON-INFRINGEMENT, WHICH WE DID --

16    AND YOU'LL RECALL, YOUR HONOR, THAT THEIR PROOF, THROUGH

17    DR. WILLIAMS, ON BOTH THESE PATENTS WAS THAT BECAUSE WE WERE

18    PRACTICING THE STANDARD, WE WERE PRACTICING THE PATENT.

19            AND WHAT WE PROVED TO THE JURY WAS THAT WE WEREN'T

20    PRACTICING -- WE WEREN'T PRACTICING THE STANDARD AND IT WASN'T

21    IDENTICAL TO THE PATENT.

22            NOW, HAVING PROVED THAT, WE ACTUALLY, IF YOU -- IF WE WERE

23    TO TRY TO DISASSEMBLE THE JURY VERDICT, THE MOST LIKELY

24    DETERMINATION THEY MADE IS, WELL, YOU PROVED YOU DIDN'T

25    INFRINGE, AND THE INFRINGEMENT CONTENTION WAS BASED UPON THE
```

1    PROPOSITION THAT YOU HAD TO COMPLY -- YOU WERE COMPLYING WITH

2    THE STANDARD.  YOU CAN'T PROVE THAT THE PATENTS ARE ESSENTIAL

3    TO THE UMTS STANDARD.

4         TO GO WHERE YOUR HONOR WANTS TO GO -- IT WOULD BE ONE

5    THING IF THERE HAD BEEN SPECIAL INTERROGATORIES THAT ASKED THEM

6    TO MAKE THOSE SPECIFIC FINDINGS OF FACT.

7         BUT WHAT YOU WOULD BE DOING IS ADOPTING AN ALTERNATIVE

8    UNDERSTANDING OF HOW THEY REACHED THEIR VERDICT, AND THEN

9    DETERMINING THAT FACTS HAD BEEN FOUND BASED UPON THAT VERDICT.

10        AND THAT, I THINK, THE LAW IS VERY CLEAR ON.  FOR ISSUE

11   PRECLUSION PURPOSES -- AND IN FACT, YOUR HONOR, AS YOU SAID IN

12   DECIDING THE JMOL MOTIONS, YOU CAN'T GO IN AND TAKE A LOOK AT A

13   JURY VERDICT THAT COULD BE REACHED ON MULTIPLE GROUNDS AND

14   DECIDE HOW YOU THOUGHT IT WAS REACHED.  YOU CAN'T DISASSEMBLE

15   IT IF THERE ARE MULTIPLE DIFFERENT EXPLANATIONS.

16        THERE ARE MULTIPLE DIFFERENT EXPLANATIONS HERE.  I'M NOT

17   TELLING YOU THAT I KNOW WHAT THEY DID.  I'M TELLING YOU THAT,

18   OR I'M SUGGESTING TO YOU THAT ONE OF THE EXPLANATIONS IS PRETTY

19   OBVIOUS, IT'S ONE THAT WE'VE DISCUSSED BEFORE, AND EVEN IF

20   THERE ARE OTHER EXPLANATIONS, THERE CAN'T BE ISSUE PRECLUSION

21   AS A MATTER OF LAW ON ANY OF THEM.

22             THE COURT:  SO IF YOU DON'T NEED ANY DISCOVERY,

23    WHAT'S THE PREJUDICE OF ALLOWING THIS IN THIS LATE IN THE GAME?

24             MR. LEE:  THE PREJUDICE, YOUR HONOR, IS THAT WE'RE

25    GOING TO HAVE ANOTHER SUMMARY JUDGMENT MOTION.  I'M NOT SURE

```
 1        WHAT THE LIMITATIONS ARE THAT YOUR HONOR IS GOING TO PLACE ON

 2        SUMMARY JUDGMENT MOTIONS.  ONE CLEAR LIMITATION WHICH WE

 3        UNDERSTAND IS DON'T FILE PROVE IT UP SUMMARY JUDGMENT MOTIONS.

 4             BUT YOU'RE GOING TO HAVE A SUMMARY JUDGMENT MOTION THAT'S

 5        GOING TO BRIEF THE ISSUES THAT HAVE ALREADY BEEN BRIEFED TO

 6        YOUR HONOR.

 7             AS I HEAR MS. MAROULIS, WE'RE GOING TO HAVE IN LIMINE

 8        MOTIONS ON WHO CAN TESTIFY TO WHAT.

 9             THIS IS AN ISSUE THAT COULD HAVE BEEN RAISED ALMOST NINE

10        MONTHS AGO.  TO HAVE IT BE AN ISSUE THAT COMES IN AT THE END OF

11        THE CASE, A MONTH OR TWO BEFORE SUMMARY JUDGMENT MOTIONS GET

12        FILED THAT'S GOING TO PLACE ANOTHER SIGNIFICANT SUMMARY

13        JUDGMENT MOTION BEFORE YOUR HONOR IS PREJUDICIAL.

14             AND, YOUR HONOR --

15                  THE COURT:  THAT'S PREJUDICIAL TO ME.  IT'S NOT

16        PREJUDICIAL TO YOU, RIGHT?

17                  MR. LEE:  WE -- WELL, IT MAY BE MORE PREJUDICIAL TO

18        YOU, BUT WE'VE GOT TO BRIEF IT AND THERE'S AN AWFUL LOT GOING

19        ON IN THE CASE.

20                  THE COURT:  THAT'S GOOD FOR BILLING, ISN'T IT?

21             (LAUGHTER.)

22                  MR. LEE:  YOUR HONOR, I ACTUALLY WOULD PREFER NOT TO

23        BILL IT AND NOT HAVE TO FILE IT OR I WOULDN'T BE MAKING THE

24        ARGUMENT TO YOU, REALLY.

25                  THE COURT:  UM-HUM.  BUT IT DIDN'T AFFECT YOUR
```

```
1    NARROWING OF THE CASE --

2              MR. LEE:  NO.

3              THE COURT:  -- WHETHER THIS IS IN OR OUT, RIGHT?

4              MR. LEE:  IT HASN'T.

5         BUT, YOUR HONOR, IF THAT'S THE STANDARD, THAT IF THERE IS A

6    DEFENSE OR AN ASSERTION, BOTH AFFIRMATIVELY OR NEGATIVELY, THAT

7    CAN BE ADDED WITHOUT ADDITIONAL DISCOVERY AT THE CLOSE OF

8    DISCOVERY THAT WILL REQUIRE THE COURT AND THE PARTIES TO

9    ADDRESS SUMMARY JUDGMENT MOTIONS, THERE'S A HOST OF THINGS THAT

10   COULD BE ADDED.

11        BUT THIS IS ONE -- THE VERDICT WAS IN A YEAR AGO.  THE

12   DEADLINE FOR AMENDING PLEADINGS OCCURRED AFTER THE VERDICT CAME

13   IN.

14        ON SEPTEMBER 15TH, ALMOST A MONTH AFTER THE VERDICT CAME

15   IN -- AND WE ALL KNEW EVERYTHING THAT WE KNOW TODAY -- SAMSUNG

16   FILED AN AMENDED PLEADING AND THIS WASN'T IN IT.

17        YOUR HONOR RULED IN JANUARY ON JMOL AND YOU DIDN'T SET

18   ASIDE THE JURY VERDICT.  YOU AFFIRMED THE JURY VERDICT ON JMOL.

19   THERE WAS NO MOTION FILED.

20        THE MOTION WAS FILED THREE MONTHS LATER.

21        SO THERE'S BOTH A QUESTION OF JUMPING THROUGH THE CORRECT

22   PROCEDURAL HOOPS, BUT THERE'S ALSO A QUESTION OF WHETHER THE

23   AMENDMENT IS FUTILE OR NOT.

24        IT'S THE SAME ARGUMENT YOU WOULD HEAR ON SUMMARY JUDGMENT.

25   THE BURDEN WILL BE THAT WE'LL HAVE TO BRIEF IT ON SUMMARY
```

```
 1     JUDGMENT.

 2          AND YOU'RE RIGHT, THE GREATER BURDEN WILL BE THAT YOU'LL

 3     HAVE TO DECIDE IT.

 4              THE COURT:  LET ME HEAR FROM MS. MAROULIS.

 5          I MEAN, I CERTAINLY HAVE READ EVERYTHING THAT'S BEEN

 6     BRIEFED.  WHAT'S YOUR POSITION, WHEN APPLE IS SAYING, "LOOK,

 7     IT'S NOT THE SAME PATENTS, IT'S NOT THE SAME ALTERNATIVE

 8     TECHNOLOGY, IT'S NOT THE SAME TECHNOLOGY MARKET, IT'S NOT THE

 9     SAME SECTION OF THE STANDARD," OTHER THAN I KNOW ONE OF YOUR

10     POSITIONS IS, "WELL, LOOK, THE OFFER FOR LICENSE WAS TO THE

11     FULL PATENT PORTFOLIO, WHICH INCLUDED ALL OF THESE PATENTS."

12          OTHER THAN THAT, WHAT IS YOUR RESPONSE?  DO YOU THINK THAT

13     IT IS THE SAME TECHNOLOGY?  DO YOU THINK IT IS THE SAME

14     ALTERNATIVE TECHNOLOGY?  OR YOU THINK THAT JUST DOESN'T MATTER,

15     IT'S IRRELEVANT?

16              MS. MAROULIS:  YOUR HONOR, THE QUESTION IS POSED THIS

17     WAY.  THERE ARE TWO FACTUAL PREDICATES TO APPLE'S FRAND AND

18     ANTITRUST CLAIMS.  ONE OF THEM IS THESE NONDISCLOSURE CLAIMS

19     WHERE THEY ALLEGE THAT SAMSUNG SHOULD HAVE DISCLOSED SOMETHING

20     EARLIER TO ETSI, AND WE'RE NOT ADDRESSING THOSE.

21          WHAT WE ARE ADDRESSING IS WHAT YOUR HONOR PUT YOUR FINGER

22     ON IN QUESTIONING COUNSEL, WHICH IS AT TRIAL, APPLE ARGUED THAT

23     A FRAND VIOLATION, ANTITRUST VIOLATION WAS OFFERING APPLE A

24     LICENSE TO A PORTFOLIO-WIDE BASIS FOR 2.4 PERCENT, AND THAT IS

25     THE NUMBER THAT THEY PUT FRONT AND CENTER, BOTH THE NUMBER AND
```

1       THE FACT THAT IT WAS OFFERED ON END PRODUCTS AS OPPOSED TO

2       CHIPS.

3           AND THIS IS THE SAME THEORY THAT THEY'RE PURSUING NOW IN

4       DISCOVERY.  IN EVERY DEPOSITION WE'VE HAD, THEY'VE ADDRESSED

5       THAT.  SO WE KNOW THAT AT TRIAL, THEY WANT TO RELITIGATE THE

6       ENTIRE HISTORY OF NEGOTIATIONS AND LICENSING NEGOTIATIONS.

7           AND SAMSUNG'S POSITION IS THAT THE 2011 OFFER, THE 2.4

8       OFFER, AND ANYTHING THAT HAPPENED UP TO THE VERDICT, IS OFF THE

9       TABLE BECAUSE THE JURY HAS ALREADY DECIDED THAT THAT IS NOT A

10      FRAND VIOLATION.

11          ONE OF THE THINGS THAT I HEARD COUNSEL MENTION IS THAT THE

12      JURY WASN'T ASKED TO PASS ON THAT QUESTION.  THAT IS NOT

13      CORRECT.

14          THERE'S A SPECIFIC INTERROGATORY THAT THE PARTIES

15      NEGOTIATED AND INSERTED IN THE VERDICT, AND IT'S NUMBER 30, AND

16      IT WAS, "HAS APPLE PROVEN BY A PREPONDERANCE OF THE EVIDENCE

17      THAT SAMSUNG BREACHED ITS CONTRACTUAL OBLIGATIONS BY FAILING TO

18      TIMELY DISCLOSE INTELLECTUAL PROPERTY RIGHTS (IPR) DURING THE

19      CREATION OF THE UMTS STANDARD OR BY FAILING TO LICENSE ITS

20      DECLARED ESSENTIAL PATENTS ON FAIR, REASONABLE, AND

21      NON-DISCRIMINATORY (FRAND) TERMS?"

22          IT'S THAT SECOND HALF OF THAT INTERROGATORY THAT HAS BEEN

23      SQUARELY DECIDED IN THE LAST TRIAL AND SHOULD NOT BE

24      RELITIGATED AS TO THE 2011 OFFER AND ANY OFFERS UP TO THE TIME

25      OF TRIAL.

```
 1          AND THIS WILL --

 2              THE COURT:  WELL, HOW SHOULD I SQUARE -- I DID ALLOW

 3      EVERYONE TO DISMISS WITHOUT PREJUDICE, SO I'M A LITTLE BIT IN

 4      AN AWKWARD POSITION NOW TO SAY, "I ASKED YOU TO DISMISS WITHOUT

 5      PREJUDICE, YOU DID SO, NOW I'M GOING TO BACKTRACK AND SAY THAT

 6      WAS WITH PREJUDICE."

 7          I FEEL LIKE THAT WOULD NOT BE FAIR FOR ME TO DO THAT NOW.

 8              MS. MAROULIS:  YOUR HONOR, APPLE'S THEORY APPLIED TO

 9      THE TWO PATENTS THAT REMAINED, SO THEY WEREN'T SAYING THAT THE

10      WHOLE PORTFOLIO IS AFFECTED.  THEY WERE BASICALLY SAYING -- IF

11      YOU RECALL, MR. DONALDSON, THEIR EXPERT, GOT ON THE STAND AND

12      SAID IT WAS NOT FRAND BECAUSE IT WAS 2.4 PERCENT, BECAUSE IT

13      WAS ON THE PORTFOLIO, AND BECAUSE IT APPLIED TO PRODUCT, THE

14      END PRODUCT, NOT THE CHIPS.  THAT WAS THEIR TESTIMONY.

15          AND THAT IS WHAT WE DON'T WANT REPEATED HERE IN THIS CASE

16      BECAUSE APPLE ALREADY HAD A CHANCE TO LITIGATE ITS THEORY THAT

17      THAT OFFER AND ANYTHING UP TO LITIGATION WAS NOT FRAND AND THE

18      JURY REJECTED THAT.

19          THE JURY WAS NOT ASKED --

20              THE COURT:  BUT WHAT ABOUT -- WHAT IF THEY SAID,

21      "HEY, WE WANT TO NOW RESURRECT TWO OF THE FIVE PATENTS THAT

22      APPLE DROPPED LAST YEAR, WE WANT TO RESURRECT OUR CLAIMS OF

23      ANTITRUST VIOLATION AND BREACH OF CONTRACT AS TO THOSE."

24          I DON'T THINK I COULD SAY THEY CAN'T BECAUSE I ALLOWED THEM

25      TO DISMISS IT WITHOUT PREJUDICE LAST YEAR.  THAT'S WHY I'M IN A
```

1    DIFFICULT POSITION FORECLOSING THEM NOW BECAUSE I THINK THAT'S

2    INCONSISTENT WITH WHAT I HAD ALLOWED THEM TO DO LAST YEAR.

3         AND SIMILARLY SAME FOR SAMSUNG.  IF YOU NOW WANTED TO

4    ASSERT SOMETHING THAT YOU DISMISSED WITHOUT PREJUDICE LAST

5    YEAR, I DON'T THINK I'M IN A POSITION TO SAY YOU CAN'T DO THAT

6    BECAUSE THAT WOULD BE UNFAIR, UNFAIR TO BOTH SIDES IF I NOW,

7    YOU KNOW, SUDDENLY CHANGED THE RULES.

8         MS. MAROULIS:  YOUR HONOR, I DON'T THINK THAT

9    PRECLUSION OF THIS THEORY REQUIRES EITHER RESUSCITATING OR NOT

10   ALLOWING TO RESUSCITATE THE OTHER PATENTS.

11        THE COURT:  UH-HUH.

12        MS. MAROULIS:  BECAUSE WHETHER APPLE ASSERTED TWO

13   PATENTS LAST YEAR OR SEVEN PATENTS, LIKE THEY HAD UP FRONT, THE

14   COUNTERCLAIMS AS TO THOSE, THEY WOULD HAVE ARGUED THE SAME

15   THING, WHICH IS THAT THE OFFER WAS NOT FRAND BECAUSE OF THE

16   TYPE OF OFFER IT WAS.

17        THEY CLAIM THAT IT WAS TOO BIG, AND IT WASN'T JUST BECAUSE

18   THERE WERE TWO PATENTS AS OPPOSED TO MANY PATENTS.  THEY CLAIM

19   THAT THAT NUMBER WAS TOO HIGH AND THEY CLAIM THAT, IN

20   PARTICULAR, IT SHOULD HAVE BEEN ON THE SMALLER SUBSET OF THE

21   PRODUCT THAN THE END PRODUCT.

22        SO THEY DIDN'T REALLY GIVE UP ANYTHING IN THAT SENSE.  THEY

23   DID DISMISS THOSE OTHER PATENTS.

24        AND WE'RE NOT TALKING ABOUT NONDISCLOSURE, WHICH MAY BE

25   SPECIFIC TO EACH PATENT.  WE ARE TALKING ABOUT THE BREACH OF

1      FRAND AND ANTITRUST THAT RELATES TO NEGOTIATIONS.

2          AND THAT WAS THE OVERLAP AND THAT IS SOMETHING THAT WILL

3      SIMPLIFY THIS TRIAL.

4          NOW, COUNSEL COMPLAINS ABOUT PREJUDICE IN TERMS OF BRIEFING

5      SUMMARY JUDGMENT.  I ASSUME THE COURT WILL GIVE US THE SAME

6      STRICT LIMITS AS LAST YEAR AND WE WILL HAVE TO MAKE CHOICES AS

7      A PARTY ABOUT WHICH SUMMARY JUDGMENT TO SEEK.

8          WE MAY CHOOSE TO MOVE ON THIS ONE OR NOT, BUT THAT WOULD

9      HAVE BEEN THE SAME NO MATTER WHEN WE WOULD HAVE BROUGHT THIS

10     MOTION.

11         I DID WANT TO BRIEFLY ADDRESS THE PREJUDICE AND DELAY

12     POINTS.

13         AS TO PREJUDICE, THERE'S REALLY NO PREJUDICE BECAUSE THE

14     DISCOVERY IS NOT REQUIRED.  APPLE TOOK ALL DISCOVERY THEY

15     NEEDED AND THIS IS AN AMENDMENT THAT DOESN'T ADD CLAIMS, BUT,

16     IN FACT, CONTRACTS THINGS.  THERE'S NO OTHER PREJUDICE BECAUSE

17     THEY WOULD NEED TO BRIEF SUMMARY JUDGMENTS ANYWAY, WHETHER IT'S

18     ON THIS GROUND OR OTHER GROUNDS.

19         WITH RESPECT TO DELAY, AS WE EXPLAINED IN THE PAPERS, YOUR

20     HONOR, WE WERE TRYING TO BE PRUDENT AND WAIT UNTIL THE JMOL

21     MOTIONS WERE COMPLETELY RESOLVED, BECAUSE HAD WE ASSERTED THIS

22     DEFENSE RIGHT AFTER THE JURY VERDICT AND THE COURT

23     HYPOTHETICALLY WOULD OVERTURN THE JURY VERDICT AS TO THIS

24     ISSUE, THEN OUR DEFENSE WOULD NOT STAND.  WE NEED TO EITHER

25     WITHDRAW IT OR DISMISS IT.

1     SO WE WAITED UNTIL THEN, AND THE REASON WE WAITED A FEW

2     MORE MONTHS WAS TO LET THE PARTIES' NEGOTIATIONS PLAY OUT, AND

3     THEY'RE ALL CONFIDENTIAL, SO I'LL REFER YOUR HONOR RESPECTFULLY

4     TO DECLARATIONS OF KEN KOREA AND B.J. WATROUS.  THEY DISAGREE

5     AS TO WHO SAID WHAT AND WHEN, BUT THEY BOTH ESSENTIALLY SAY THE

6     SAME THING.  THERE WERE LIVE DISCUSSIONS UNTIL THE VERY TIME

7     WHEN WE FILED OUR MOTION AND, OF COURSE, FIRST APPROACHED APPLE

8     TO SEE IF WE CAN SAVE THE COURT THE BURDEN OF THIS MOTION, BUT

9     THEY REFUSED TO STIPULATE, SO WE'RE LEFT WITH A REQUEST TO FILE

10    A MOTION.

11        AND, YOUR HONOR, THE TWO DIFFERENT RULES THAT WE NEED TO

12    SATISFY, RULE 16 FOR CASE SCHEDULING ORDER AND RULE 15 FOR

13    AMENDING PLEADINGS, BOTH ARE EXTREMELY LIBERAL.  RULE 16 ALLOWS

14    THE COURT TO AMEND THE ORDER TO MAKE THE CASE MORE EFFICIENT,

15    AND AS WE ARGUED IN THE PAPERS AND TODAY, THIS WILL MAKE THE

16    CASE MORE EFFICIENT.

17        AND RULE 15 HAS THE FOUR BASIC FACTORS.  WE ALREADY KNOW

18    THAT THERE'S NO PREJUDICE, APPLE DID NOT STATE IN THEIR PAPERS

19    THAT THEY WOULD BE PREJUDICED; THEY DID NOT ALLEGE BAD FAITH;

20    THEY DID MENTION DELAY, BUT WE THINK THAT DELAY WAS PRUDENT

21    GIVEN THAT THE COURT WAS STILL RULING ON THE VARIOUS MOTIONS

22    AND GIVEN THAT THE PARTIES WERE TALKING TO EACH OTHER.

23        SO THERE'S BEEN MANY CASES WHERE RULE 15 ALLOWED AMENDMENTS

24    ON THE EVE OF TRIAL, SO AMENDING IT NOW BEFORE EVEN EXPERT

25    DISCOVERY BEGINS IS NOT TOO LATE AND IS NOT PREJUDICIAL BY WAY

1    OF DELAY.

2        AND IF YOUR HONOR HAS SPECIFIC QUESTIONS, COUNSEL COVERED A

3    LOT OF GROUND, SO IF IT WOULD BE HELPFUL TO FOCUS ON SOMETHING

4    SPECIFIC, I WOULD LIKE TO DO THAT.

5          THE COURT:  I THINK I'M ACTUALLY READY TO RULE, SO

6    I'LL GIVE YOU THE LAST WORD IF THERE'S ANYTHING ELSE YOU'D LIKE

7    TO SAY.

8          MS. MAROULIS:  THE ONLY THING I WOULD LIKE TO ADD IS

9    THAT WHILE APPLE FACES NO PREJUDICE BY THIS MOTION BECAUSE NO

10   ADDITIONAL DISCOVERY WILL TAKE PLACE, SAMSUNG DOES FACE

11   PREJUDICE IF IT HAS TO RELITIGATE THE SAME CLAIMS AND PROVE

12   ITSELF AGAIN TO THE JURY.

13       APPLE LOST LAST TIME ON THE ISSUES AT HAND HERE, AND

14   SAMSUNG BELIEVES THAT IT WOULD BE UNFAIR TO IT TO HAVE TO

15   RELITIGATE THESE ISSUES AGAIN AND GO BEFORE THE JURY AND TAKE

16   THE TIME THAT IT COULD ALLOCATE TO OTHER PARTS OF THE CASE TO

17   REVISIT THE SAME ISSUES THAT WERE PREVIOUSLY ADDRESSED AND

18   LITIGATED IN ITS FAVOR.

19          THE COURT:  OKAY.  LET ME STATE THE BASIS OF MY

20   RULING.

21       I AGREE THAT THERE'S NO ALLEGATION OF BAD FAITH AND I

22   CERTAINLY DON'T SEE ANY EVIDENCE OF BAD FAITH HERE.

23       APPLE RAISES THE ISSUE OF FUTILITY AND I THINK THAT IS A

24   COMPLICATED QUESTION.  I DON'T THINK THAT YOU COULD VERY EASILY

25   FIND FUTILITY HERE.  I THINK IT'S A MORE COMPLICATED QUESTION.

1     WITH REGARD TO UNDUE DELAY, I DO HAVE SOME CONCERNS.  THE

2     BASIS FOR THIS MOTION IS THE VERDICT THAT WAS ISSUED ON

3     AUGUST 24TH OF 2012.

4         SAMSUNG DID AMEND ITS ANSWER ON SEPTEMBER 14TH, 2012.  I

5     THINK IT HAD THE INFORMATION AT THAT TIME TO MAKE THESE

6     ALLEGATIONS OF COLLATERAL ESTOPPEL AND RES JUDICATA.

7         I'M NOT CONVINCED THAT THE S.F. VERSUS CAPISTRANO CENTRAL

8     DISTRICT OF CALIFORNIA CASE IS REALLY COMPELLING AS TO WHY

9     SAMSUNG WOULD WAIT FOR THIS COURT'S JMOL RULING WHICH WAS

10    ISSUED IN JANUARY.

11        I DON'T THINK THAT RULING CHANGED THE TENOR OF THE CASE.

12    IT WAS UPHOLDING A JURY VERDICT WHICH I DON'T THINK WAS THAT --

13    IT WAS DIFFICULT TO PREDICT A DENIAL OF A JMOL MOTION AS TO A

14    JURY VERDICT.

15        AND I DON'T FIND LICENSING NEGOTIATIONS TO BE GOOD CAUSE

16    FOR DELAY.  AND THIS IS THE POSITION I TAKE IN ALL OF MY CASES.

17    IF A PARTY CHOOSES TO GIVE THEMSELVES A UNILATERAL STAY OF

18    LITIGATION, THEN THEY BEAR THE RISK OF DOING THAT AND THEY BEAR

19    THE CONSEQUENCES, BECAUSE IF I HAVEN'T GRANTED A STAY, THEN

20    YOU'VE GOT TO KEEP GOING, AND I NEVER GRANTED A STAY IN THIS

21    CASE.

22        SO WHETHER YOU'VE BEEN ENGAGED IN NEGOTIATIONS OR NOT, YOU

23    HAVE TO KEEP LITIGATING THIS CASE.

24        AND OTHERWISE YOU DID.  ALL THE OTHER RECORD IN THIS CASE

25    SAYS THAT SAMSUNG WAS VERY ZEALOUSLY ADVOCATING AND LITIGATING

1    THIS CASE THROUGHOUT, I MEAN, THOSE SIX HOUR CLAIM CONSTRUCTION

2    HEARINGS WE DID BACK IN FEBRUARY.

3        SO I DON'T SEE A UNILATERAL GRANT TO ONE'S SELF OF A STAY

4    OF LITIGATION TO PURSUE SETTLEMENT NEGOTIATIONS AS A BASIS NOT

5    TO RAISE THIS CLAIM.

6        I AGREE WITH YOU THAT THERE'S NO PREJUDICE TO APPLE.  I

7    MEAN, HAVING TO OPPOSE A SUMMARY JUDGMENT MOTION, I THINK AFTER

8    ALL OF THE LITIGATION THAT APPLE HAS INITIATED, IS A MINOR

9    IMPOSITION.

10       BUT I AM CONCERNED THAT I DON'T THINK THIS IS GOING TO MAKE

11   THIS CASE MORE EFFICIENT, AND THAT IS ONE OF THE THINGS THAT

12   THE COURT IS TO CONSIDER.  YOU KNOW, WE'RE -- FACT DISCOVERY

13   CUT OFF HAPPENED JULY 8TH.  WE HAD ALL THIS NARROWING THAT

14   HAPPENED MAY 8TH, JUNE 28TH, AND IT'S GOING TO CONTINUE TO

15   HAPPEN.

16       AND HAVING TO BASICALLY RELITIGATE LAST YEAR'S TRIAL AND

17   THIS YEAR'S TRIAL, WHICH IS EVIDENT THAT IT WILL HAVE TO HAPPEN

18   BASED ON THIS HEARING, THAT WE'RE GOING TO HAVE TO BE COMPARING

19   EVIDENCE IN THAT TRIAL VERSUS EVIDENCE IN THIS TRIAL, JURY

20   INSTRUCTIONS IN THAT CASE VERSUS JURY INSTRUCTIONS IN THIS

21   CASE, I DON'T THINK THAT ADDS EFFICIENCY.

22       SO ON -- I WOULD SAY ON THE BASIS OF UNDUE DELAY AND LACK

23   OF DUE DILIGENCE, I DON'T FIND GOOD CAUSE TO ALLOW THIS

24   AMENDMENT AND THAT'S MY RULING.

25           MS. MAROULIS:  YOUR HONOR, MAY I BE HEARD VERY

```
 1          BRIEFLY?

 2                    THE COURT:  GO AHEAD.

 3                    MS. MAROULIS:  YOUR HONOR, THE DELAY ITSELF, ABSENT

 4          PREJUDICE, SHOULD NOT BAR A PARTY FROM ASSERTING A DEFENSE.

 5          THERE'S A NUMBER OF CASES WHERE PARTIES AMEND PLEADINGS AT

 6          TRIAL TO CONFORM TO PROOF.

 7              SO HERE WHERE THERE'S NO PREJUDICE AND THERE'S NO

 8          ADDITIONAL DISCOVERY AND WE'RE NOT ONLY SEVERAL MONTHS OUT FROM

 9          SUMMARY JUDGMENT, BUT ALSO MORE THAN SIX MONTHS AWAY FROM

10          TRIAL, THE ABSENCE OF PREJUDICE PARTICULARLY IS SIGNIFICANT.

11              SO ALTHOUGH WE UNDERSTAND THE COURT'S RULING, WE

12          RESPECTFULLY SUGGEST THAT THE ABSENCE OF PREJUDICE --

13                    THE COURT:  WELL, BUT LET ME ASK YOU SOMETHING.  LAST

14          YEAR WHEN I REQUIRED THE PARTIES, OR CORDIALLY EXPECTED THE

15          PARTIES TO NARROW THE CASE FOR TRIAL, I SAID WHATEVER DOESN'T

16          GO TO TRIAL CAN BE DISMISSED WITHOUT PREJUDICE, AND THERE WAS

17          NEVER AN UNDERSTANDING THAT YOU WERE PRECLUDED FROM EVER

18          LITIGATING THOSE CLAIMS AGAIN.

19              IN FACT, BY ALLOWING YOU TO DISMISS IT WITHOUT PREJUDICE, I

20          WAS SPECIFICALLY ALLOWING YOU TO RELITIGATE IT.

21              I THINK -- YOU KNOW, MAYBE THIS DOESN'T QUITE CONSTITUTE

22          FUTILITY, OR MAYBE IT DOES.  I THINK IT WOULD BE UNFAIR AT THIS

23          POINT TO SAY THAT THE NARROWER ANTITRUST, BREACH OF CONTRACT

24          CLAIMS THAT WENT TO TRIAL LAST YEAR ARE THE ONE AND ONLY TIME

25          THAT APPLE CAN BRING THOSE CLAIMS EVER AND THEY'RE PRECLUDED
```

```
 1        FROM OTHERWISE DOING SO.

 2            YOU KNOW, I THINK THAT MAYBE THAT DOES CONSTITUTE FUTILITY,

 3        BECAUSE I WOULD FEEL UNCOMFORTABLE REQUIRING THAT OF EITHER

 4        PARTY HERE.  I ALLOWED YOU TO DISMISS IT WITHOUT PREJUDICE.

 5        THERE'S AN UNDERSTANDING AND AN ASSUMPTION THAT YOU CAN

 6        LITIGATE THOSE CLAIMS IN THE FUTURE IF YOU WANT TO.

 7            I'M NOT INVITING YOU ALL TO NOW, YOU KNOW, REINSTITUTE AND

 8        RESURRECT ANY OF THOSE CLAIMS, BUT I FEEL UNCOMFORTABLE, HAVING

 9        MADE THAT REPRESENTATION TO ALL THE PARTIES IN THIS CASE, TO

10        NOW PRECLUDE YOU EITHER WAY.  I THINK THAT WOULD NOT BE JUST TO

11        EITHER SIDE.

12            AND I CAN'T INTERPRET A DISMISSAL WITHOUT PREJUDICE IN ANY

13        OTHER WAY OTHER THAN THAT APPLE WOULD HAVE THE RIGHT TO

14        RELITIGATE THOSE CLAIMS THAT IT DISMISSED WITHOUT PREJUDICE IN

15        THE FORM OF A BREACH OF CONTRACT AND ANTITRUST CAUSE OF ACTION.

16            AND SO I THINK THE SAME WOULD APPLY HERE, THAT THESE APPEAR

17        TO BE DIFFERENT PATENTS -- WELL, THEY ARE DIFFERENT PATENTS,

18        BUT I HAVEN'T HEARD ANYTHING OTHERWISE SAYING THAT THEY'RE NOT

19        DIFFERENT -- THAT THEY ARE NOT DIFFERENT TECHNOLOGY MARKETS,

20        NOT DIFFERENT TECHNOLOGY, NOT DIFFERENT ALTERNATIVE

21        TECHNOLOGIES, NOT DIFFERENT STANDARD SETTING DISCLOSURES, NOT

22        DIFFERENT STANDARD SETTING MEETINGS, NOT DIFFERENT ENFORCEMENT

23        ACTIONS.

24            I AGREE THAT I THINK SOME OF THE ALLEGED WRONGDOING WILL BE

25        OVERLAPPING.
```

1      BUT THERE WILL BE ADDITIONAL EVIDENCE BEYOND WHAT WAS

2   PRESENTED TO THE JURY IN AUGUST OF LAST YEAR UPDATING IT FOR

3   THE LAST HOWEVER MANY MONTHS.

4      SO I -- ON THIS BASIS, I THINK IT WOULD BE UNFAIR, AND

5   PERHAPS FUTILE, FOR US TO ENGAGE IN EXTENSIVE SUMMARY JUDGMENT

6   AND MOTION IN LIMINE PRACTICE TO PRECLUDE SOMETHING THAT I

7   EFFECTIVELY ALLOWED TO BE DISMISSED WITHOUT PREJUDICE LAST

8   YEAR.

9      I WOULDN'T FEEL IT WAS FAIR TO EITHER PARTY IF I DID THIS.

10   SO THAT'S MY BASIS AS WELL.

11      (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

12      MS. MAROULIS:  YOUR HONOR, MAY WE REVISIT THIS ISSUE

13   IN THE MOTION IN LIMINE CONTEXT WHEN WE SEE -- ONCE THE EXPERT

14   REPORTS ARE IN, WE'RE CONFIDENT THAT THERE WILL BE SIGNIFICANT

15   OVERLAP.  AND WE UNDERSTAND YOUR RULING NOW.  WE'LL, OF COURSE,

16   ABIDE BY IT.

17      BUT WE DO WANT TO REVISIT THIS AT THE LATER STAGE, AGAIN,

18   IN THE COURSE OF SIMPLIFYING THE TRIAL AND MAKING THIS EASY FOR

19   THE JURY TO APPRECIATE IT.

20      THE COURT:  I THINK AT THAT POINT YOU WOULD HAVE TO

21   FILE A MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION,

22   AND YOU WOULD HAVE TO MEET THAT CRITERIA, THAT THERE'S BEEN,

23   YOU KNOW -- I THINK I ALREADY STATED WHAT THAT IS, BUT, YOU

24   KNOW, A CHANGE IN THE LAW, A CHANGE IN -- A MATERIAL CHANGE IN

25   THE FACT OR THE LAW, THE EMERGENCE OF NEW MATERIAL, FACTS OR

```
 1    CHANGE IN THE LAW, OR MANIFEST FAILURE BY THE COURT TO CONSIDER

 2    MATERIAL FACTS OR DISPOSITIVE LEGAL ARGUMENTS.

 3         I MEAN, YOU ARE FREE TO FILE A MOTION FOR LEAVE, BUT YOU

 4    WILL HAVE TO MEET ONE OF THOSE CRITERIA IN CIVIL LOCAL RULE 7-9

 5    BEFORE I'LL ACTUALLY RECONSIDER IT.

 6         MS. MAROULIS:  THANK YOU, YOUR HONOR.  WE'LL ADDRESS

 7    THAT AT THAT POINT.

 8         THE COURT:  OKAY.  ALL RIGHT.  WELL, THANK YOU ALL.

 9         MR. LEE:  THANK YOU, YOUR HONOR.

10         THE COURT:  I'LL SEE YOU IN OCTOBER THEN, UNLESS --

11    OH, LET ME ASK MY LAST QUESTION.

12         WHAT IS HAPPENING WITH REGARD TO SETTLEMENT NEGOTIATIONS?

13    I'M ASSUMING THE PRELIMINARY INJUNCTION HEARING THAT THE

14    FEDERAL CIRCUIT IS HAVING ON AUGUST 9TH IS SOMEWHAT IMPORTANT

15    TO THE PARTIES.

16         WHAT --

17         MR. JOHNSON:  THE PARTIES HAVE BEEN DISCUSSING

18    SETTLEMENT, BUT THERE'S NO AGREEMENT.

19         THE COURT:  I SEE.

20         MR. LEE:  RIGHT.

21         THE COURT:  OKAY.  AND YOU DON'T THINK THAT THE

22    FEDERAL CIRCUIT'S INJUNCTION HEARING OR RULING WILL BE A

23    PARTICULARLY IMPORTANT FOCAL POINT, OR --

24         MR. LEE:  THERE ARE A NUMBER OF EVENTS THAT ARE GOING

25    TO OCCUR OVER THE NEXT MONTH OR TWO.
```

```
 1          BUT I THINK MR. JOHNSON IS CORRECT, THE PARTIES HAVE BEEN

 2     ABLE TO TALK DIRECTLY TO EACH OTHER FACE-TO-FACE.

 3              MR. JOHNSON:  AND PROBABLY WHAT MR. LEE AND I THINK

 4     IS PROBABLY IRRELEVANT.

 5              THE COURT:  OKAY.  BUT ARE THE IN-PERSON MEETINGS

 6     CONTINUING?  BECAUSE BASED ON WHAT MR. KOREA SUBMITTED AND WHAT

 7     MR., IS IT WATROUS.

 8              MR. JOHNSON:  WATROUS.

 9              THE COURT:  -- SUBMITTED, IT SOUNDS LIKE THINGS HAVE

10     JUST NOT REALLY CONTINUED IN THAT FORM.

11              MR. LEE:  YOUR HONOR, I THINK THERE HAVE BEEN --

12     THERE HAVE BEEN DISCUSSIONS AFTER THAT, BUT THERE'S NOTHING --

13     THERE'S NO RESOLUTION.

14              THE COURT:  I SEE.  OKAY.  AND -- ALL RIGHT.  SO I

15     WAS JUST WONDERING IF I WAS GOING TO GET A DISMISSAL OF

16     DISMISSAL BY AUGUST 9TH OR SOMETHING, BUT I GUESS THAT'S

17     UNLIKELY.

18              MR. LEE:  YOU'LL BE THE FIRST TO KNOW.

19              THE COURT:  OKAY.  THANK YOU.  THEN I'LL SEE YOU ON

20     OCTOBER 30TH.

21              MR. JOHNSON:  THANK YOU, YOUR HONOR.

22              MR. LEE:  THANK YOU, YOUR HONOR.

23          (THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

24

25
```

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____
    LEE-ANNE SHORTRIDGE, CSR, CRR
17  CERTIFICATE NUMBER 9595

18       DATED:  AUGUST 28, 2013

19

20

21

22

23

24

25