RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
Menlo Park, CA 94025
Telephone:    650-838-2000
Facsimile:    650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:    404-881-7000
Facsimile:    404-881-7777

Attorneys for Non-Party
NOKIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.:  5:11-CV-01846-LHK (PSG)<br>              5:12-CV-00630-LHK (PSG)<br><br>**NON-PARTY NOKIA'S RESPONSE OPPOSING SAMSUNG'S EMERGENCY MISCELLANEOUS REQUEST TO STAY OCTOBER 2, 2013 ORDERS** |

NON-PARTY NOKIA'S RESPONSE OPPOSING
SAMSUNG'S REQUEST TO STAY.

Case No.: 5:11-CV-01846
5:12-CV-00630

Samsung's request to stay Judge Grewal's October 2, 2013 orders pending appeal should be denied because it misapplies the applicable legal standards. Samsung glosses over critical details, and none of the relevant factors weigh in favor of granting the stay.[1]

## BACKGROUND

During discovery in the first case pending in the Northern District of California between Apple and Samsung (Case No. 5:11-CV-01846), Apple produced copies of certain highly confidential license agreements, including a June 2011 agreement between Apple and Nokia. Apple properly designated that license agreement as "Highly Confidential" and "Attorneys' Eyes Only."

Later, Samsung's outside counsel sent dozens of Samsung employees, among others, a draft report from their retained expert, David Teece. The report contained, among other things, highly confidential licensing terms in the current license between Nokia and Apple. The licensing terms had previously been designated as Highly Confidential − Attorney's Eyes Only under this Court's protective order. There can be no serious dispute that it was a violation of the Court's protective order for Samsung's outside counsel to provide Samsung employees, and others not covered by the protective order, with the highly confidential terms of the Nokia/Apple license.

Then, as Judge Grewal's order reported, at a June 4, 2013 meeting with Nokia, Samsung executive Dr. Seungho Ahn informed Nokia licensing executives that he knew the terms of the Apple-Nokia license agreement. (Dkt. No. 2483 at 3, Case No. 5:11-CV-1846.) According to Dr. Ahn, the agreement had been received by Samsung's attorneys in the course of litigation, and that the terms had been provided to Samsung's in-house team. (*Id.*) Dr. Ahn said that "all information leaks," and ultimately tried to use the terms of the Apple-Nokia license to attempt to gain an advantage in negotiations with Nokia. (*Id.*)

When a request to produce additional Nokia confidential information came up in the context of the second pending case between Apple and Samsung (Case No. 5:12-CV-0630), Nokia

---

[1] This response brief is limited to Nokia's opposition to Samsung's request to stay the effects of the October 2, 2013 orders. (Dkt. No. 789, Case No. 5:12-CV-630; Dkt. No. 2494, Case No. 5:11-CV-1846.) Nokia has separately responded to Samsung's motions for relief from those orders. (Dkt. No. 790, Case No. 5:12-CV-630; Dkt. No. 2495, Case No. 5:11-CV-1846.)

1 responded by moving for a protective order on July 1, 2013. (Dkt. No. 647, Case No. 5:12-CV-630.) Following negotiations and certain confirmations about admitted inappropriate disclosures by Samsung's outside counsel, Nokia and Samsung filed a stipulation and proposed order on August 18, 2013, providing, among other things, that Samsung agreed not to use Nokia's confidential business information in several pending cases, and that Samsung would initiate an investigation into the subject matter of the improper disclosures. (Dkt. No. 742, Case No. 5:12-CV-630.) Within forty-five days, Samsung agreed to: (1) retain a computer forensics firm to independently audit Samsung employee files to collect and preserve documents evidencing Samsung's receipt, dissemination, or use of the disclosed information; and (2) request the computer forensics firm to prepare a log of all instances where the disclosed information was disseminated, referenced or used by Samsung employees—including the author of the document, the recipient, the date and time, the subject line, and a brief description of the subject matter. (*Id.* at 3-4.) Preparation of the log was an interim step before Samsung would have to produce documents reflecting its transmission and use of Nokia's confidential business information and the depositions of the relevant Samsung employees. The Stipulated Order would have ultimately led to a similar result embodied in the Apple Order. The only difference is the timing.

The stipulation also provided for several additional steps. Specifically, Samsung agreed under the stipulation: (1) "not to use in any legal or business matter any Nokia Confidential Business Information ("CBI") designated as Confidential or higher under the protective orders" of the NDCA cases or the 794 ITC investigation, (2) "to provide Nokia with a sworn statement reporting on . . . and identifying any further dissemination of the Disclosed Information" by other Samsung law firms and "also explain the reasons why the Disclosed Information was forwarded" to the firms, (3) that "Stroz Friedberg will conduct an independent review of Quinn Emanuel's investigation and collection process as is necessary to ensure that Quinn Emanuel's search of its own firm Documents is complete and accurate," and (4) that "[i]f Nokia seeks the courts assistance to enforce the stipulation or resolve disputes regarding its implementation, Nokia shall be entitled to its reasonable attorneys' fees and costs associated with the any such meritorious motion." (Dkt. No. 785 at 1-2, 4-5, Case No. 5:12-CV-630.) These are all important and

1  necessary procedures which were specifically negotiated and agreed upon by Samsung, and they
2  are not duplicative of the Apple Order.

3   On October 2, 2013, Judge Grewal signed and entered the stipulation as the Stipulated
4  Order. (Dkt. No. 785, Case No 5:12-CV-630.) In the companion case, Judge Grewal issued an
5  order on Apple's August 23, 2013 motion for sanctions ("Apple Order"). (Dkt. No. 2483, Case
6  No. 5:11-CV-1846.) In doing so, Judge Grewal found that further expedited and court-supervised
7  discovery about the improper disclosures was needed in addition to the procedures negotiated by
8  Nokia and Samsung. (*Id.* at 4.) To that end, Judge Grewal ordered Samsung to produce certain
9  emails and other communications related to Apple's license agreements and provide up to seven
10 employees—including Dr. Ahn and a Rule 30(b)(6) witness—for deposition no later than October
11 16, 2013. (*Id.* at 5.)

12  Five days later, Samsung filed its motions to stay and for relief from both the Apple Order
13 and the Stipulated Order to which Samsung had already agreed.

## ARGUMENT

15  Courts consider four factors in determining whether to grant a stay pending appeal: "(1)
16 whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
17 (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay
18 will substantially injure the other parties interested in the proceeding; and (4) where the public
19 interest lies." *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Coleman v. Schwarzenegger*,
20 No. C01-1351, 2008 WL 2468492, at *4 (N.D. Cal. June 17, 2008) (applying same standard to
21 motion to stay magistrate judge's discovery order pending appeal). Here, each factor points
22 toward a denial of Samsung's request for a stay of the Stipulated Order and Apple Order.

23  Samsung cannot show that it has a strong likelihood to succeed in vacating either order.
24 Samsung **negotiated for**, **agreed to**, and **jointly proposed** the discovery procedures outlined in the
25 Stipulated Order. Samsung cannot now be heard to complain about those same procedures
26 because "a party cannot appeal from an order which it consented to have entered against it."
27 *Christian Sci. Reading Room Jointly Maintained v. City & County of San Francisco*, 784 F.2d

NON-PARTY NOKIA'S RESPONSE OPPOSING
SAMSUNG'S REQUEST TO STAY.

3

Case No.: 5:11-CV-01846
5:12-CV-00630

1010, 1017 (9th Cir. 1986).[2] Moreover, Samsung's suggestion that the Stipulated Order "is fundamentally flawed in light of Apple's insistence . . . that the procedure set forth in the Stipulation would result in waiver of privilege" is off the mark. Samsung does not even attempt to explain why Apple's arguments about waiver of privilege should undo Samsung's agreement with Nokia and allow Samsung to avoid all of its various obligations under the Stipulated Order, such as Samsung's agreement to cease using Nokia's confidential information in various lawsuits.[3] (*See also supra* at 3-4.) Any potential for waiver based on the Stipulated Order is the product of Samsung's own voluntary, calculated decision to enter into it.

As to the Apple Order, Samsung's argument that "the failure to redact a handful of lines among many other redactions in a 295-paragraph report is a far cry from an intentional crime or fraud" rests on faulty premises. (Dkt. No. 2483, Case No. 5:11-CV-1846.) Despite Samsung's circular reasoning, Samsung has failed to offer any ***evidence*** on critical questions about the scope of the disclosures and Samsung's use of the disclosed information. The core purpose of the Apple Order is to provide prompt answers to these questions. And the Nokia declaration of Paul Melin, submitted with Nokia's protective order motion and cited by Judge Grewal, supports the notion that there is more to this picture than a simple "failure to redact a handful of lines." This unrebutted evidence indicates that Samsung intentionally used its ill-gotten information to leverage an unfair advantage in negotiations with at least Nokia and potentially others.

The second and third factors—requiring balancing of harm—also weigh in favor of denying the stay. Samsung seeks to stay all obligations to do anything in response to its admitted

---

[2] *See also Hoa Hong Van v. Barnhart*, 483 F.3d 600, 610 n.5 (9th Cir. 2007) ("In general, a party cannot appeal a judgment entered with its consent."); *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F. Supp. 585, 592 (E.D.N.Y. 1997) ("The Court finds that because the plaintiffs expressly signed the consent judgment . . . in which they agreed that '[t]here shall be no live music nor dancing on the subject premises' and 'there shall be no sound, noise or music emanation disturbing to the adjoining residents,' they have no likelihood of success on the merits.").

[3] Samsung also argues that the Stipulated Order "has been effectively abrogated" by the Apple Order. (Dkt. No. 790 at 5, Case No. 5:12-CV-630.) That is plainly false. Judge Grewal made clear his intent that Samsung be bound by the independent obligations outlined in each – he entered both the Apple Order and the Stipulated Order on the same day. Also, the orders have different requirements and scope: The Apple Order addresses not only disclosures about the Apple-Nokia license, but also the Apple-Ericsson, Apple-Phillips, and Apple-Sharp licenses. (Dkt. No. 2483 at 4, Case No. 5:11-CV-1846.) Moreover, Samsung agreed to additional proceedings in the Stipulated Order that are not required by the Apple Order.

and repeated violations of this Court's Protective Orders. In the absence of a stay of the Stipulated Order, Samsung will simply have to perform the agreed upon preliminary investigation into its disclosures—nothing more, nothing less. It cannot possibly be irreparably harmed by doing that which it has agreed to do. As for the Apple Order, any alleged irreparable harm to Samsung is outweighed by the injuries that a stay would cause the other parties. For instance, a stay of the October 2 orders would create a situation in which ***nothing*** is being done to investigate or remedy the improper disclosures. As recognized by Judge Grewal, "allow[ing] this situation to fester for weeks, let alone months . . . would be unfair to those," such as Nokia and Apple, "who may have ultimately been significantly harmed by improper conduct." (Dkt. No. 2483 at 4-5, Case No. 5:11-CV-1846.) It is likewise important to recall that scores of Samsung employees continue to have possession of Nokia's highly confidential business information even today.

Finally, the public interest favors denial of Samsung's request to stay. First, as to the Stipulated Order, there is a "compelling public interest" in requiring Samsung to live up to its end of the bargain and conduct its preliminary investigation into its disclosures under the negotiated procedures. *See, e.g.*, *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) ("there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into"); *Bianchi v. Perry*, 140 F.3d 1294, 1297 (9th Cir. 1998) (same). Second, and more importantly, staying either or both orders would harm the public's interest in "expeditious resolution of litigation" by allowing Samsung to delay the investigation of its improper disclosures. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). Third, a stay of either Order would harm "the public interest in the enforcement of court orders that is essential to the effective functioning of our judicial process." *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989). As Judge Grewal explicitly recognized, "confidential information remains confidential because counsel and clients alike follow court orders. If parties breach this basic rule, the court's assurances become meaningless." (Dkt. No. 2483 at 2, Case No. 5:11-CV-1846.) Protective orders have been breached, and the public has a paramount interest in deterring future misconduct by the Court promptly investigating those breaches and, if necessary, issuing appropriate sanctions and other remedies.

1   Accordingly, Samsung's request to stay the effects of Judge Grewal's October 2, 2013
2   orders should be denied.

4   DATED: October 9, 2013

5                                                 Respectfully submitted,

6   By: */s/ Randall L. Allen*
    Randall L. Allen
7   ALSTON & BIRD, LLP
    275 Middlefield Road, Suite 150
8   Menlo Park, CA  94025-4008

9   *Attorneys for Non-Party Nokia Corporation*

NON-PARTY NOKIA'S RESPONSE OPPOSING SAMSUNG'S REQUEST TO STAY.

6

Case No.: 5:11-CV-01846
5:12-CV-00630

## ATTESTATION OF E-FILED SIGNATURES

I, Ryan W. Koppelman, am the ECF user whose ID and password are being used to file this RESPONSE OPPOSING SAMSUNG'S EMERGENCY MISCELLANEOUS REQUEST TO STAY OCTOBER 2, 2013 ORDERS on behalf of non-party Nokia Corporation.  In compliance with Civil L.R. 5-1(i) (3), I hereby attest that Randall L. Allen has concurred in this filing.

Dated: October 9, 2013                              By: */s/ Ryan W. Koppelman*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil L.R. 5-1(h)(1).  As such, this document was served on all counsel who have consented to electronic service, Civil L.R. 5-1(h)(1) and 5-5(a).

DATED: October 9, 2013                 */s/ Randall L. Allen*