| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552)<br>jkrevitt@gibsondunn.com<br>H. MARK LYON (CA SBN 162061)<br>mlyon@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, California  94304-1211<br>Telephone:  (650) 849-5300<br>Facsimile:  (650) 849-5333 | WILLIAM F. LEE (*pro hac vice*)<br>william.lee@wilmerhale.com<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000 |
| MICHAEL A. JACOBS (SBN 111664)<br>mjacobs@mofo.com<br>RICHARD S.J. HUNG (CA SBN 197425)<br>rhung@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California  94105-2482<br>Telephone:  (415) 268-7000<br>Facsimile:  (415) 268-7522 | MARK D. SELWYN (SBN 244180)<br>mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100 |

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>             Defendants. | Case No. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S COMBINED OPPOSITION TO SAMSUNG'S (1) MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DOCKET NO. 790) AND (2) EMERGENCY REQUEST TO STAY** |

# INTRODUCTION

Unapologetic about its massive breaches of the Court's Protective Order, Samsung asks the Court to stay and re-consider Judge Grewal's October 2, 2013 Order and effectively permit Samsung to investigate itself.[1]  This would be inappropriate under any circumstance, but is especially so here given the scope of Samsung's breaches of the Protective Order.  As Judge Grewal found, Quinn Emanuel disclosed highly sensitive Apple and third-party license information—the exact information that this Court had previously ordered sealed (Dkt. 1649 at 23 ("the Court GRANTS Nokia's motion with regards to the 'Monetary Considerations' column of the summary contained in PX77")—"to over fifty Samsung employees, including high-ranking licensing executives" (Oct. 2 Order at 3) as well as numerous Samsung outside counsel around the world.  These disclosures occurred repeatedly, over a period of sixteen months.

When Samsung first conceded that improper disclosures had occurred—in letters to Nokia, dated July 16, 2013—it did not notify Apple, even though paragraph 18 of the Protective Order required Samsung to "immediately notify" Apple and "provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure."  Instead, Samsung waited over two weeks, until August 1, 2013, to inform Apple.  During those same two weeks, the United States Trade Representative was in the final stages of considering whether to disapprove the International Trade Commission's exclusion order in a parallel case between Apple and Samsung.  Perhaps Samsung did not want its Protective Order breaches raised at that time.  But whatever its motives, on July 16 Samsung knew that Quinn Emanuel had improperly disclosed to Samsung information that was confidential to *both* Nokia *and* Apple—yet Samsung only told Nokia.

---

[1]  Samsung filed both a Motion for Relief and an Emergency Motion for Stay, but to minimize the volume of briefing before the Court, Apple herewith files a combined opposition to both motions. Under Local Rule 7-3, the normal page limit for an opposition brief is 25 pages; under Local Rule 7-11, the page limit for an opposition to a motion for administrative relief (such as a stay) is 5 pages. This combined opposition brief is 12 pages long, and only a small fraction of the brief discusses stay issues.

1    Judge Grewal was correct to order immediate, court-supervised discovery, in which
2 Apple is a full participant.  That is the only path to uncovering the full truth as to how
3 these many breaches occurred, as to the manner, if any, that Samsung used the improperly
4 disclosed confidential information, and as to whether Apple and other third parties stand to
5 suffer any further harm as a result of Samsung's breaches.
6    Samsung's attempts to reverse or stay the decision are unavailing.  Samsung has
7 not demonstrated any aspect of Judge Grewal's Order to be "clearly erroneous or contrary
8 to law," the standard that this Court must apply in order to reconsider the ruling, Civil
9 Local Rule 72-2; 28 U.S.C. § 636(b)(1)(A), nor shown any proper ground for a stay.
10 Samsung had a full opportunity to present any evidence it wanted to Judge Grewal to
11 demonstrate that it had taken any prompt and reasonable steps to disclose the extent of its
12 violations, but, as Judge Grewal correctly determined, "three months after the breach was
13 brought to counsel's attention, Samsung is unable to provide evidence on even the most
14 basic questions."  (Order at 4.)
15    This is far from the first time that Samsung has contravened this Court's orders in
16 this case.  Samsung has been sanctioned repeatedly, including for (1) failing to comply
17 with discovery orders requiring production of design and copying documents, Dkt. No.
18 880, at 9 ("Samsung's belated production of these documents directly contradicts counsel's
19 multiple representations to this court that the type of documents Apple sought did not exist.
20 Even more troubling is Samsung's failure to address the inaccuracy of these earlier
21 representations to the court."); (2) withholding source code, Dkt. No. 898, at 5-6 (finding
22 that Samsung "plainly violated the court's December 31 deadline" requiring Samsung to
23 produce source code, and did not product some source code until "after the close of fact
24 discovery—knowing full well that the court would not grant the parties any exceptions"),
25 at 8-9 ("Samsung offer[ed] precisely zero evidence to show that its actions were in good
26 faith, or otherwise justified"); (3) withholding financial information, Dkt. No. 880, at 10
27 (ordering evidentiary sanctions after Samsung failed to comply with a Court-ordered
28

1  deadline to produce financial documents, despite having "unequivocally stated" to the
2  Court that it had "'agreed to produce all of the financial information' that Apple requested"
3  by the deadline); (4) delaying disclosure of liability theories, Dkt. Nos. 1144 (striking
4  portions of Samsung's expert reports that included "theories never previously disclosed to
5  Apple during discovery") and 1545 (affirming sanction).  And at trial, after Samsung's
6  counsel authorized the release to the media of demonstratives that this Court had excluded,
7  the Court recognized the "real and possible danger that Samsung and Quinn, Emanuel
8  made the decision to take the risk of tainting the jury." (Trial Tr. 575.)  The Court further
9  found that Mr. Quinn "left this courtroom and deliberately and willfully, with Samsung,
10 issued a press release to highlight evidence that they both knew was excluded and was
11 inadmissible in this trial," in a "willful and deliberate attempt to further propagate that
12 excluded evidence the day after a jury had been impaneled." (*Id.*)

13         This Court should affirm Judge Grewal's Order, and make clear to Samsung that
14 there shall be no further tolerance for its litigation misconduct.

15                                    **ARGUMENT**

16         Judge Grewal's conclusion that Samsung and its counsel should not be left to their
17 own devices to self-investigate is unquestionably correct given Samsung's pattern of
18 inaction and refusal to answer basic questions since these issues first surfaced.  Judge
19 Grewal's discovery orders are critical to developing the factual record and should not be
20 stayed.  Nokia filed a motion and supporting factual declaration on July 2, 2013, accusing
21 a top Samsung licensing executive of misusing Apple-Nokia license information in a
22 Samsung-Nokia negotiation—information that we now know was improperly disclosed by
23 Quinn Emanuel to this Samsung executive and dozens of other Samsung employees.  Since
24 then, Samsung has done virtually nothing to investigate the scope of its misuse, and after
25 belatedly notifying Apple (on August 1, almost a month after Nokia's motion, and two
26 weeks after Samsung gave notice of the breaches to Nokia) that improper disclosures
27 occurred, rebuffed Apple's attempts to obtain even the most basic information.  Yet now,
28

Samsung suggests the Court should let Samsung continue stonewalling and avoid taking the steps necessary to reveal the full facts.  Indeed, remarkably, Samsung even asks the Court to reject the stipulation that Judge Grewal entered *at Samsung's request* to set a floor on the steps that Samsung would take to investigate itself.

The Court should reject Samsung's requests for eight reasons.

**1.    Samsung Has Refused To Investigate Or Answer Questions:**  Judge Grewal correctly found that Samsung's foot-dragging and diversion had persisted long enough:

> In fact, despite acknowledging that many dozens of individuals at Samsung and its other counsel have knowledge of confidential license terms that they had no right to access, at yesterday's hearing, Samsung's counsel repeatedly denied even one violation of the protective order, asserting that such a violation can only occur willfully.  Counsel further denied the need for any formal discovery into the matter, even though three months after the breach was brought to counsel's attention, Samsung is unable to provide evidence on even the most basic questions, such as: who has now had access to the confidential licensing information?  For what purpose?  When?  Where?  How?  Has Samsung relied on any of the confidential information in taking any position before any other court or jurisdiction?  Exactly what steps has Samsung taken to prevent dissemination and use of the confidential information in the future?  In each instance, the only response available seems to be, "We're working on it."

(Order at 3-4.)

Indeed, Samsung has yet to produce so much as a single document to Apple that might shed light on what use Samsung made of the confidential information of Apple and other parties (Nokia, Ericsson, Sharp, Philips).  As Judge Grewal found, it would be "intolerable to allow this situation to fester for weeks, let alone months, with a second trial approaching."  (Order at 4.)  Samsung's proposed alternative of providing Apple with a log of documents "at some indeterminate point in the future" is clearly, as Judge Grewal found, "insufficient."  (*Id.* at 4.)

Furthermore, since Judge Grewal issued his Order, Samsung has reneged on multiple assurances it made to the Court about actions it would take to investigate the breach.  For example, at the October 1 hearing, Samsung's counsel made the following

commitment: "We have contacted foreign counsel in each case where we know that a Teece report might have been sent or used, and ask[ed] them to prepare a declaration for us to document what happened, [w]hat was done, what remedial steps were taken, et cetera. *And we intend to provide that information to Nokia and Apple within a matter of days.*" (Tr. at 48 (emphasis added).)  After multiple letters from Apple inquiring when Samsung would provide the promised declarations, Samsung yesterday responded that it no longer intends to provide them at all.  (*See* Declaration of Mark D. Selwyn in Support of Apple Inc.'s Combined Opposition ("Selwyn Decl."), Ex. 1 (10/8/13 Letter from Estrich to Selwyn).)  Equally troubling, Samsung now asks this Court to re-consider and undo the stipulation between Nokia and Samsung that Judge Grewal entered as an order—*at Samsung's urging*—to set forth "a process for addressing the issues in Nokia's Motion for Protective Order."  (Case No. 12-cv-00630, Dkt. No. 785, at 1.)

        **2.**      **Immediate Discovery Is Needed To Uncover The Full Record Of Samsung's Past And Ongoing Misuse Of Confidential Information:**  There is an urgent need to determine the full extent of Samsung's breach, including all improper uses that Samsung has made of the confidential information, to prevent Samsung from engaging in further misuse in legal proceedings and business transactions.  A stay would enable Samsung to perpetuate and exacerbate ongoing harm caused by Samsung's misuse.  The Melin declaration cited by Judge Grewal shows that Samsung may be misusing Apple— and third party—confidential business information in ongoing business dealings.  This is manifestly prohibited by the Protective Order.  Samsung may dispute that it has occurred, but immediate discovery is necessary to test that position.

      Moreover, the information at issue—namely, the monetary terms of Apple licenses—bears directly on positions that Samsung has taken in both litigations against, and negotiations with, Apple.  For example, Samsung has been crafting arguments that Apple is an "unwilling licensee," and relying on these arguments in this Court and courts and agencies around the world.  If in-house Samsung employees helped develop

1  Samsung's arguments and licensing positions by using confidential Apple information that
2  they were not permitted to have, this would establish that Samsung had effectively used
3  "inside information"—which would itself be bad-faith licensing conduct.  Again,
4  Samsung's lawyers may dispute that this has occurred, but no Samsung employee has
5  submitted a sworn declaration denying that it did, and so immediate discovery is required
6  to determine what has happened.[2]

7  The need for immediate discovery is particularly acute given the sheer number of
8  recipients of improperly-disclosed information, and the lack of any credible explanation for
9  why these disclosures were made.  And while Samsung repeatedly insists that the breach
10 was "inadvertent," the evidence considered by Judge Grewal suggests that it was not.
11 (Order at 3 (quoting unrebutted declaration of Nokia's Chief Intellectual Property Officer
12 Paul Melin that Samsung executive Dr. Seungho Ahn "recited the terms of the license, and
13 even went so far as to tell Nokia that 'all information leaks'").)  Even by its own account,
14 Samsung knew by December 2012 that it been circulating the improperly redacted Teece
15 report since March 2012 to Samsung employees and its foreign litigation teams (Selwyn
16 Decl., Ex. 2 (8/16/13 Letter from Becher to Lee)); nonetheless, Samsung inexplicably
17 persisted in making further disclosure of the document into the spring of 2013.[3]

---

[2]  Samsung makes the remarkable argument that Apple's request to learn the extent to which Samsung used Apple confidential information produced in this case in the parties' litigations outside the U.S. "is forbidden by both the Protective Order . . . and this Court's order closing discovery in the 630 case." (Samsung Mot. at 5 n.4.)  Needless to say, nothing in the Protective Order constrains the Court's ability to investigate a breach of its own order.  And if Samsung has used *Apple* confidential information produced by *Apple* pursuant to this Court's Protective Order in foreign proceedings, nothing in the Protective Order would bar *Apple* from bringing that to the attention of foreign tribunals and agencies.

[3]  Samsung tries to downplay its breach by suggesting that the disclosure involved only "a few lines" from an expert report.  (Samsung Mot. at 1; *see also id.* at 4 ("a handful of lines").)  That is untrue.  In fact, the disclosure involved eight paragraphs from the report.  Even the most cursory review would have identified those paragraphs as containing highly confidential Apple and third-party information—nevermind the type of careful scrutiny that should be applied as a matter of course when dealing with such highly confidential materials of others.

1    **3.    Samsung Cannot Use The Privilege To Shield And Facilitate Rule-**
2   **Breaking:**   Samsung's attorney-client privilege and work product claims are all
3   predicated on one fundamental, false premise: communications between Samsung and its
4   lawyers disclosing, discussing, or using the confidential information of Apple, Nokia, and
5   other parties are shielded from disclosure.  This, of course, would render protective orders
6   meaningless as counsel could transmit and discuss protected information to clients with
7   impunity, confident that the privilege would shield this misconduct.
8          The law is not so impractical.  Where an attorney and client engage in
9   communications that become part of a subsequent unlawful course of action, the crime-
10  fraud exception to the attorney-client privilege applies—the violations of the Protective
11  Order are a form of law breaking—and the communications are not subject to the
12  privilege.  *See, e.g.*, *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 337 F.
13  Supp. 2d 862, 868 (N.D. Tex. 2004), *rev'd on other grounds*, 476 F.3d 278 (5th Cir. 2007)
14  (granting, under the crime-fraud exception, access to otherwise privileged communications
15  reflecting violations of a protective order).  The policy behind the crime-fraud exception is
16  squarely implicated here.  The crime-fraud exception reflects a recognition that the
17  attorney-client privilege is not absolute, and that the legal system has a greater interest in
18  detecting, stopping, and preventing ongoing and future wrongdoing than it has in
19  protecting the confidentiality of attorney-client communications regarding that activity.
20         Here, Samsung seeks to use the privilege to prevent Apple and the Court from
21  discovering how Samsung has used and may yet use Apple's highly confidential
22  information received in violation of this Court's Orders.  Permitting privilege claims to
23  prevent discovery into improper disclosures of information conveyed by a law firm to a
24  client would allow law firms and clients to freely breach protective orders in their
25  communications—assured that with the privilege as a shield, they would never be held
26  accountable for their misconduct.  The crime-fraud exception is intended to defeat such
27  abuse of the privilege.  Judge Grewal recognized just what Samsung is trying to
28

1  accomplish with its privilege claims.  The issue was briefed and argued, and he correctly
2  rejected Samsung's sweeping and unspecific claims of privilege.  Even if the Court were
3  now to revisit these issues—and Samsung presents no cause for doing so—at a bare
4  minimum, any document Samsung sought to withhold in whole or in part would need to be
5  produced to the Court for *in camera* review.

   **4.** **Discovery Into Breaches Of This Court's Protective Order Would Not Violate Any ITC Protective Order:**  Samsung's argument that the discovery sought would run afoul of the ITC protective order (or some unspecified "other protective orders") is nonsensical.  The discovery ordered concerns Apple's confidential information produced under the Protective Order in this case, and its unauthorized disclosure in an expert report submitted in this case.  To the extent that information in the Teece report is considered Confidential Business Information under the 794 ITC Investigation protective order—such that attorneys would need to subscribe to the ITC protective order to receive this information and work on the discovery process ordered by Judge Grewal—Quinn Emanuel has 152 attorneys who have subscribed to the ITC protective order in the 794 Investigation, nearly one quarter of the attorneys at Quinn Emanuel.  Samsung thus cannot claim any ITC impediment to moving forward with the Court's discovery process.

   **5.** **Samsung Cannot Avoid Discovery By Claiming The Basic Facts Would Be Too Burdensome To Produce:**  The amount that Samsung claims compliance with the Order would cost ("million dollars or more") is modest when compared with Samsung's (or Apple's) litigation costs for this case, and trivial when compared with Samsung's overall profitability.  Samsung has offered no evidence that the costs of compliance with the Order is disproportionate to the scale of this case, much less to the scale of the Protective Order breach.  Perhaps more importantly, Judge Grewal's discovery order is aimed at uncovering the basic facts as to what has happened.  Whatever the cost, Samsung should bear the burden of allowing these facts to finally be revealed.  Indeed, if complying

with Judge Grewal's Order is as burdensome as Samsung purports, it only underscores the breadth of Samsung's Protective Order violations.

**6.     Judge Grewal's Order Is Appropriately Tailored To Developing The Full Record:**   The discovery required by Judge Grewal's Order is reasonably tailored to investigate the scope of the breach.  Samsung complains that the Order requires production of documents not only related to Apple's license agreement with Nokia, but also to Apple's license agreements with Ericsson, Sharp, and Philips, and that "[t]his goes well beyond the extensive discovery that Samsung and Nokia had already agreed was sufficient for purposes of Nokia's motion."  (Samsung Mot. at 5.)  First of all, a private agreement reached between Samsung and Nokia cannot trump the Court's enforcement of its own order.  Furthermore, Samsung offers absolutely no reason why Judge Grewal should have overlooked Samsung's Protective Order violation relating to Apple's license agreements with Ericsson, Sharp, and Philips, and limited discovery only to the Nokia license.   Again, Samsung has not provided the Court with any sworn declarations from its employees, or even its lawyers, stating that no breach occurred with respect to Ericsson, Sharp, or Philips.

**7.     Samsung Did Not Have Access To The Confidential Licensing Information Before The Breaches Occurred:**  Samsung's argument that it had "access to the terms of the Apple-Nokia license even without the inadvertent disclosure from public reports over two years ago, and from a review of the terms of 10 Apple licenses that Apple voluntarily permitted senior Samsung executives in litigation in the Netherlands" (Samsung Mot. at 1 (citation omitted)) is incorrect.  Apple and Nokia themselves have always kept those terms confidential, and press accounts varied widely, *e.g.*:

- "Nokia . . . did not disclose the financial terms of the settlement, but said that the agreement would have a 'positive financial impact.'"[4]

---

[4]     Kevin J. O'Brien, "Nokia Settles 2-Year Fight With Apple on Patents," The New York Times (June 14, 2011)).

- "The exact terms of the Nokia/Apple deal were never publicly released, so it's impossible to say whether the entire €430m came from Steve Jobs' purse or just a portion of it."[5]

- "Apple opted to enter a cross-licensing agreement, which some estimated could involve hundreds of millions of dollars in licensing payments to Nokia.  But here's the interesting thing:  Nobody knew what the settlement was worth, as Apple did not disclose it in its legal mandated financial filings."[6]

- "But with Apple paying up for what could be as much as much as 5 years of licensing in one lump sum—estimates range from $600 million to as much as $900 million—it gives Nokia some breathing room as it transitions from Symbian to Windows Phone 7."[7]

- "The Finnish phone-maker Nokia could receive a one-off payment of more than €800m (£700m) from Apple and receive further royalties of €8 per iPhone sold in future."[8]

As these quotations show, speculation as to what those terms might be varied considerably among analysts—leaving the actual, confirmed terms confidential, valuable information.

Samsung's further argument that Apple "voluntarily" disclosed these terms to Samsung executives is also incorrect.  Samsung is referring to disclosures that were expressly requested by a Dutch court for a Dutch litigation.  Those disclosures were anonymized to remove the license counter-parties' names, preventing confirmation of the terms of the agreement with any particular party.  The Dutch disclosures were also limited

---

[5] Chris Davies, "Apple contributes to Nokia's €430m patent settlement income," Slashgear (July 21, 2011)  *available at* http://www.slashgear.com/apple-contributes-to-nokias-e430m-patent-settlement-income-21166543/).

[6] Jason Mick, "Apple Fights to Keep Details of Nokia Settlement From the Public," Daily Tech (Oct. 3, 2011) *available at* http://www.dailytech.com/Apple+Fights+to+Keep+Details+of+Nokia+Settlement+From+the+Public/article22909.htm.

[7] Chris Foresman, "Nokia buries patent hatchet with Apple to help fund WP7 switch," Ars Technica (June 14, 2011) *available at* http://arstechnica.com/apple/2011/06/nokia-agrees-to-bury-patent-hatchet-with-apple-for-lump-sum/.

[8] Charles Arthur, "Apple to pay Nokia big settlement plus royalties in patent dispute," THE GUARDIAN (June 14, 2011) *available at* http://www.theguardian.com/technology/2011/jun/14/apple-nokia-patent-case.

to a group of at most 10 Samsung employees (far fewer than received the information disclosed in breach of the Protective Orders). Moreover, their use was strictly limited to that case only, similar to disclosure of confidential information under the Court's Protective Order. Thus, the Dutch materials were requested by the Dutch court, and were restricted and anonymized. As with the press accounts, the Dutch materials provided no way to definitively know the terms of the Apple-Nokia license.

Apple has repeatedly asked Samsung to concede that it did not have definitive confirmation of the terms of the Nokia-Apple license until receiving the improper disclosures, and Samsung has failed to meaningfully answer these questions. Moreover, not even Samsung argues that any of the highly confidential Apple-Ericsson, Apple-Sharp, or Apple-Philips information—that was widely disseminated to Samsung employees—was ever publicly known.

**8.     The Public Interest Strongly Supports Immediate Enforcement Of Discovery Rules:** The public interest strongly militates against a stay (let alone a stay pending any mandamus briefing in the Federal Circuit). As Judge Grewal observed, the discovery system in competitor patent cases critically depends on the court's assurance that "confidential information remains confidential because counsel and clients alike follow court orders. If parties breach this basic rule, the court's assurances become meaningless." (Order at 2.) Indeed, "[r]eliance on protective orders and the diligence of counsel in observing them is fundamental to litigation between competitors," and where a party engages in serious breaches of a protective order, "[s]anctions are needed to preserve the integrity of the system." *Systemic Formulas, Inc. v. Kim,* No. 1:07-cv-159, 2011 WL 9509, at *2 (D. Utah Jan. 3, 2011). As explained above, Apple has a compelling need for immediate discovery to uncover the facts showing the full scope of Samsung's misuse of the improperly-disclosed information—including any ongoing business or litigation misuse. The public, likewise, has a compelling interest in the prompt vindication of the Court's rules. Samsung has no cause for delay or discovery.

## **CONCLUSION**

Samsung's conduct shows a remarkable and flagrant disrespect for the Court's discovery rules and orders.  Apple has not, however, precipitously sought broad sanctions, but rather has asked that the Court wait until the full factual record is developed before making final decisions regarding remedial orders and sanctions.  Much remains unknown, and the first step is the discovery that Judge Grewal has ordered.  Apple respectfully requests that the Court not disturb or stay Judge Grewal's order, but rather permit that critical fact-finding process to continue.

Dated:  October 9, 2013

*/s/* William F. Lee
William F. Lee (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Mark D. Selwyn (SBN 244180)
(mark.selwyn@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

Harold J. McElhinny (SBN 66781)
(HMcElhinny@mofo.com)
Michael A. Jacobs (SBN 111664)
(MJacobs@mofo.com)
Rachel Krevans (SBN 116421)
rkrevans@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: ( 415) 268-7000

Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on October 9, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5-1.

>  */s/* Mark D. Selwyn
>  Mark D. Selwyn