QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS**<br><br>Date:  January 23, 2014<br>Time:  1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Honorable Lucy H. Koh<br><br>PUBLIC REDACTED VERSION |

<u>**NOTICE OF MOTION AND MOTION**</u>

PLEASE TAKE NOTICE that on January 23, 2014, at 1:30 p.m., or as soon as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court for an order excluding the testimony of expert witnesses designated by Apple:  Dr. Christopher Vellturo, Dr. John Hauser, Dr. Todd Mowry, Dr. Alex Snoeren, and Dr. James Storer.

PLEASE TAKE FURTHER NOTICE that Samsung requests an evidentiary hearing pursuant to Fed. R. Evid. 104 on the admissibility of the testimony of each of the experts prior to any testimony by that expert at trial.  This Motion is made pursuant to the Federal Rules of Evidence 403 and 702, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) on the grounds that the testimony Apple seeks to elicit from these experts is not relevant to any issue in this matter, and is otherwise unreliable, incorrect, and unhelpful.  This motion is based on the following Memorandum, supporting declarations, the record, and such other matters that may be presented at or before the hearing on the motion.

DATED:  October 10, 2013          QUINN EMANUEL URQUHART &
                                  SULLIVAN, LLP

                                  By */s/ Victoria F. Maroulis*
                                  _____
                                      Charles K. Verhoeven
                                      Kevin P.B. Johnson
                                      Victoria F. Maroulis
                                      William C. Price
                                      Michael L. Fazio

                                      Attorneys for
                                      SAMSUNG ELECTRONICS CO., LTD.,
                                      SAMSUNG ELECTRONICS AMERICA, INC.,
                                      and SAMSUNG TELECOMMUNICATIONS
                                      AMERICA, LLC

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................................ i

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 1

I.  APPLE'S DAMAGES CALCULATIONS REST ON DR. HAUSER'S
    UNRELIABLE CONJOINT SURVEY USED IN A MANNER NEVER
    PREVIOUSLY ACCEPTED ...................................................................................................... 1

    A.  No Court Has Allowed The "Willingness To Buy" Results of A Conjoint
        Survey To Be Used As The Central Basis For Calculating Patent Damages ............ 1

    B.  Apple's Damages Calculations Rest on Dr. Hauser's Conjoint Survey .................. 6

    C.  Dr. Hauser's Conjoint Analysis Measures An Impermissibly Larger
        Footprint Than The Patented Features ...................................................................... 8

    D.  The Methodology Used Results In Unreasonable and Unreliable
        Calculations ............................................................................................................ 10

    E.  Dr. Hauser's Outside Option Cannot Account For The Role Of The Tested
        Features In Consumer Purchase Decisions ............................................................. 11

II. DR. VELLTURO'S ANALYSIS CONTAINS MULTIPLE, ADDITIONAL
    INDEPENDENT FLAWS .......................................................................................................... 12

    A.  Dr. Vellturo's Reasonable Royalty Is an Impermissible Attempt To Recover
        Lost Profits on Units For Which Apple Cannot Satisfy The *Panduit* Test ............ 12

    B.  Dr. Vellturo Incorrectly Uses the Notice Date To Set The Design Around
        Period for Lost Profit Damages ................................................................................ 13

    C.  Dr. Vellturo's Calculations Rest on Counter-Factual Assumptions and Fail
        To Consider Relevant Evidence ............................................................................... 13

III. THE COURT SHOULD EXCLUDE THE OPINIONS OF APPLE'S '647
     PATENT EXPERT, DR. TODD MOWRY ............................................................................ 15

    A.  Failure to Disclose and Consistently Apply Principles to the Facts Renders
        an Expert's Opinion Unhelpful and Inadmissible ................................................... 16

    B.  Dr. Mowry Applies Two Separate Sets of Claim Interpretations to
        Infringement and Invalidity ..................................................................................... 17

    C.  Dr. Mowry Is Willing To Change His Opinions To Suit His Needs,
        Illustrating His Inconsistent Application of Claim Interpretations and
        Exacerbating His Failure to Consistently Apply His Claim Requirements ............ 19

IV. THE COURT SHOULD EXCLUDE THE PURE *IPSE DIXIT* OPINIONS OF
    DR. ALEX SNOEREN REGARDING APPLE'S ALLEGED PRACTICE OF THE

'414 PATENT ............................................................................................. 21

V.      THE COURT SHOULD EXCLUDE THE OPINIONS OF DR. JAMES STORER
        REGARDING CLAIM CONSTRUCTION FOR THE '239 AND '449 PATENTS. ........ 23

CONCLUSION ............................................................................................................... 24

-ii-

SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*,
   135 F. Supp. 2d 1031 (N.D. Cal. 2001) ................................................................14

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) ...........................................................................16

*Amstar Corp. v. Envirotech Corp.*,
   730 F.2d 1476 (Fed. Cir. 1984) .............................................................................9

*Apple, Inc. v. Motorola, Inc.*,
   2012 WL. 1959560 (N.D. Ill. May 22, 2012) ........................................................11

*DSU Med. Corp. v. JMS Co.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ................................................................21

*DataQuill Ltd. v. Handspring, Inc.*,
   2003 WL. 737785 (N.D. Ill. Feb. 28, 2003)..........................................................17

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ...................................................................................1, 3, 21

*Diviero v. Uniroyal Goodrich Tire Co.*,
   114 F.3d 851 (9th Cir. 1997).................................................................................22

*Dynetic Design Solutions, Inc. v. Synopsys, Inc.*,
   Case No. 5:11-CV-05973-PSG, 2013 WL. 4537838 (N.D. Cal. Aug. 22, 2013) ......................23

*EZ Dock, Inc. v. Schafer Sys.*,
   2003 U.S. Dist. LEXIS 3634 (D. Minn. 2003)........................................................23

*Elder v. Tanner*,
   205 F.R.D. 190 (E.D. Tex. 2001)......................................................................21, 22

*Fail-Safe, LLC v. A.O. Smith Corp.*,
   744 F. Supp. 2d 870 (E.D. Wis. 2010) ..................................................................14

*Gable v. Nat'l Broad. Co.*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010) *aff'd sub nom.*
   *Gable v. Nat'l Broad. Co., Inc.*, 438 F. App'x 587 (9th Cir. 2011) ...........................21

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .............................................................................................21

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
   185 F.3d 1341 (Fed. Cir. 1999).............................................................................13

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .............................................................................................21

-iii-

Case No. 12-CV-00630-LHK (PSG)

SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS

*Laser Dynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ...................................................................................14

*NTP, Inc. v. R.I.M., Ltd.*,
   2003 U.S. Dist. LEXIS 14338 (E.D. Va. May 23, 2003) ........................................24

*Oracle Am., Inc. v. Google, Inc.*,
   798 F. Supp. 2d 1111 (N.D. Cal. 2011) ...........................................................1, 4, 5, 6

*Oracle Am., Inc. v. Google Inc.*,
   2012 WL. 850705 (N.D. Cal. Mar. 13, 2012) ...........................................................5

*Oxford Gene Technology Ltd. vs. Mergen Ltd.*,
   345 F. Supp. 2d 431 (D. Del. 2004) ...................................................................17, 19

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l*,
   711 F.3d 1348 (Fed. Cir. 2013) ...............................................................................13

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) .................................................................................12

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
   926 F.2d 1161 (Fed. Cir. 1991) ...............................................................................12

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ...............................................................................23

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ...................................................................................9

### **Statutes**

Fed. R. Evid. 104 ................................................................................................................ i

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   APPLE'S DAMAGES CALCULATIONS REST ON DR. HAUSER'S UNRELIABLE CONJOINT SURVEY USED IN A MANNER NEVER PREVIOUSLY ACCEPTED**

**A.   No Court Has Allowed The "Willingness To Buy" Results of A Conjoint Survey To Be Used As The Central Basis For Calculating Patent Damages**

No court has allowed patent damages to be calculated based on "willingness to buy" results of a conjoint survey, much less one riddled with design problems that produce facially irrational results. *Daubert* exists to prevent exactly this:  Faulty methodology, largely inscrutable to a jury, used to post massive damages numbers.[1]  Dr. Hauser's survey should be excluded.

Dr. Hauser's conjoint survey purports to measure the relative value of the patented features and a non-infringing alternative by showing survey participants phones and asking questions about their preferences. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████

---

[1]   Where a damages methodology involves "complex mathematical formulas and equations that would surely be incomprehensible to the average juror," courts must be careful to avoid permitting a "miscarriage of justice" to be hidden behind an "impenetrable façade of mathematics."  *Oracle Am., Inc. v. Google, Inc.*, 798 F. Supp. 2d 1111, 1120 (N.D. Cal. 2011).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



As discussed in more detail below, this process omits the vast majority of features of a smartphone, mentioning only a few, specific (mostly minor) ones.

23
24
25
26
27
28

2

(footnote continued)

-2-                Case No. 12-CV-00630-LHK (PSG)

SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS



1

2

3

4

5

6

7

8 Apple's damages expert, Dr. Vellturo, then

9 simply applied these to sales and market share data to calculate damages.

10 The absurd results of Apple's methodology are illustrated by the willingness to pay numbers

11 Dr. Hauser's survey generates.

12

13

14

15

16 While willingness to pay numbers are not strictly additive, these results

17 are so facially implausible they provide strong evidence that Dr. Hauser's entire methodology is

18 flawed.

19 The Court allowed Apple to present a conjoint survey in the prior trial because it was explicitly

20 offered for an entirely different purpose.  There, as Apple argued in opposing Samsung's *Daubert*

21 motion, the conjoint was merely being used "to confirm 'there is demand for the specific patented

22 features in suit and that their presence (or absence) will affect consumer decision making,' not to

23 calculate a specific market share or a precise value for the patented feature in suit." (Case No. 11-cv-

24 1846 (LHK), Dkt. No. 991-3, at 13.)  Then Apple expressly *disclaimed* precisely what it now seeks to

25

26

27

28

1   do: use such survey results to forecast a hypothetical decline in Samsung market share if the features

2   were absent.  (*Id.*)  It is one thing to use the artificial construct of a conjoint survey to show there is an

3   generalized preference for a phone feature; it is something entirely different to use that same survey to

4   project a lost market share and a ▬▬▬▬ damages claim.  This is an unprecedented and improper

5   use of conjoint methodology.[4]

6        In explaining why the *Oracle* ruling did not bar Dr. Hauser's conjoint survey in the prior

7   action, this Court noted that "Dr. Hauser's conjoint analysis is used for a willingness to pay analysis,

8   not to predict market share, and Samsung has not separately attacked 'the conjoint study's own

9   irrational results,' as was the case in *Oracle*."  (Case No. 11-cv-1846 (LHK), Dkt. No. 1157, at 14.)

10  Neither of these qualifications now applies.  Samsung emphatically objects to the irrational results of

11  the Hauser survey.   And, the survey *is* being used to predict market share to calculate damages,

12  despite established authority that conjoint analysis should not be used for this purpose.  *Getting*

13  *Started With Conjoint Analysis*, a book written by Bryan Orme, the President of Sawtooth Software --

14  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

15  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

16  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

17  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

18  ▬ *see also* Orme Comment to *Current Issues and a "Wish List' for Conjoint Analysis* (2005), Fazio

19  Dec. Ex. H ("Conjoint analysis cannot capture many real-world effects that influence actual market

20  shares. It assumes (among other things) equal information, availability, time on the market,

21  effectiveness of sales force—not to mention the critical question of whether we've included all

22  relevant attributes that affect buyer behavior. Thus, validation in terms of correspondence to market

23  share is a difficult proposition.").

24        Mr. Orme's comment is particularly apt here: there is overwhelming evidence that ▬▬▬

25  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

26  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

27  ▬▬▬

28  ▬▬▬▬▬

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████   The impact of advertising on consumer choice cannot be modeled in a survey response in which a respondent is asked to pick between Phone A and Phone B in a vacuum.

Dr. Hauser's conjoint survey has the very same flaws that led Judge Alsup to exclude a conjoint survey in *Oracle v. Google*.  That survey was offered to allegedly estimate "Android's increase in market share due to infringement," (*Oracle Am., Inc. v. Google Inc.*, 2012 WL 850705, at *9 (N.D. Cal. Mar. 13, 2012)), the mirror image of what Apple does here.  Judge Alsup excluded the survey because it tested too few features, did not test "important product features, such as battery life, WiFi, weight, and cellular network" and the expert "had no reasonable criteria for choosing the four non-patented features to test."  *Id.* at *10-11.  Judge Alsup recognized that by focusing respondents on a limited number of small features of devices that have hundreds of features, conjoint surveys yield unreliable results.  *Id.* ("If the conjoint analysis had been expanded to test more features that were important to smartphone buyers (instead of the four non-patented features selected for litigation purposes), then the study participants may not have placed implicit attributes on the limited number of features tested.")[5] ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████████████████████

---

[5]   In finding the *Oracle* conjoint results "irrational," Judge Alsup noted that "one quarter of all participants preferred (9%), or were statistically indifferent between (16%), a smartphone costing $200 to a theoretically identical smartphone costing $100."  *Oracle*, 2012 WL 850705, at *11. ██████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

1

2

3

4   Like the expert in *Oracle*,

5

6

7   This kind of feature selection is exactly what the *Oracle* opinion rejected.

8   **B.      Apple's Damages Calculations Rest on Dr. Hauser's Conjoint Survey[7]**

9   Apple's      damages claim rests on Dr. Hauser's conjoint survey for both the lost

10  profit and reasonable royalty calculations.   At the heart of Apple's      lost profits

11  calculation is an estimate of the sales Samsung supposedly *would not have made but for* the alleged

12  use of five Apple patents.  (Vellturo Rpt. at ¶ 325, Exs. 3, 19A, Fazio Dec. Exs. M-O.)[8] To estimate

13  the amount of the sales Samsung would have lost due to not using the patented features, Dr. Vellturo,

14  took the "willingness to buy" results of Hauser's conjoint study and simply translated them into

15  Samsung market share declines.[9]

16

17

18  Dr. Vellturo then assumes that Apple would capture Samsung's reduced sales

19  in direct proportion to Apple's market share and concludes that Apple would incur up to

20  _____

21  [7] Given the length of the Vellturo report and the volume of confidential Apple and Samsung
22  financial information contained therein, and to avoid burdening the court with an unnecessarily
    complex and burdensome sealing procedure, Samsung has submitted only excerpts in connection with
23  this motion, but will submit the full report if the Court believes doing so would aid its consideration of
    the motion.

24  [8]

25

26  Fazio

    Dec. Ex. P.

27  [9]

28



1    in lost profits by virtue of Samsung's alleged infringement.

2    In his

3    reasonable royalty analysis, Dr. Vellturo concludes Apple would not license the patents unless it

4    received a payment that compensated it for its expected lost profits.  As Dr. Vellturo explains his

5    reasonable royalty calculation, he first purports to estimate the extent to which Samsung's sales would

6    have declined if Samsung did not practice the patents, a number which "is based on results of Dr.

7    Hauser's survey and conjoint analysis." (Vellturo Rpt. ¶ 395, Fazio Dec. Ex. M.)  Dr. Vellturo asserts

8    that Apple's posture at the hypothetical negotiation would then be driven by two factors – "(1)

9    assessing the incremental sales Samsung would gain as a result of the license (which is, of course, the

10   direct analog to what Samsung would expect to lose absent that license); and (2) what proportion of

11   the incremental sales Samsung would make that would come at Apple's expense, and what Apple

12   would expect to lose in profits as a result of such ceded sales." (*Id.* at ¶ 415, Fazio Dec. Ex. M.)

13   Thus, Dr. Vellturo's reasonable royalty analysis once again rests on the Hauser conjoint analysis to

14   calculate market share impact of the patents and he derives his number directly from the conjoint

15   results.[11]  Ultimately, Dr. Vellturo concludes that Apple would require a *per smartphone license of*

16   *for just the 5 patents at issue.  Id.* at Table 7.[12]  This, he concedes, is substantially more than

17   Samsung would have been willing to pay (which he calculates at          per unit), but ultimately he

18   concludes Samsung would *simply raise its prices* and accede to Apple's demand.  (*Id.* at ¶ 431, Fazio

19   Dec. Ex. M.)

20

21

22

23

24

25
     <hr>
     ---
     11    Dr. Vellturo also adjusts Apple's minimum willingness to accept number upward to account

26   for what he calls "ecosystem" impacts – expected lost future sales flowing from anticipated lost sales
     derived from Dr. Hauser's survey.  (Vellturo Rpt. ¶¶ 421-26, Fazio Dec. Ex. M.)

27   12    This number subtracts the value Dr. Vellturo found for the '760 patent as it is no longer being
     asserted for infringement.  For tablets, the per unit number is            .  (*Id.*)

28   13    Dr. Vellturo followed the same procedures for evaluating damages for tablets and his opinions
     (footnote continued)

1    **C.     Dr. Hauser's Conjoint Analysis Measures An Impermissibly Larger Footprint
          Than The Patented Features**



The improperly broad footprint that Dr. Hauser's conjoint survey tests

renders Dr. Vellturo's calculations useless: they do not properly apportion value between the patented

_____

should be excluded for the same reasons.

[14] Samsung's technical experts have described the inaccuracies in Dr. Hauser's descriptions of the
accused features and non-infringing alternatives.  Jeffay Report ¶¶ 108-110, Fazio Dec. Ex. R ('647);
Chase Report ¶¶ 46-62, Fazio Dec. Ex. S ('414); Rinard Report ¶¶ 524-535, Fazio Dec. Ex. T ('959);
Greenberg Report ¶¶ 199-209, Fazio Dec. Ex. U ('721); Wigdor Report ¶¶ 41-43, Fazio Dec. Ex. V
('172).

1    and non-patented features of the products.

2         Dr. Hauser also fails to test the desirability of the claims asserted for infringement.[18]  For

3    example, claim 11 of the '414 Patent is broadly directed to what Apple calls "background

4    synchronization" – the alleged ability to "allow[] users to use and interact with an application while

5    data from the same application is being synchronized."  (Vellturo Report ¶¶ 404-05, Fazio Dec. Ex.

6    M.)  Claim 20 is much narrower. ███████████████████████████

7    ██████████████████████ ██ Indeed, ███████████████████████

8    ██████████████████ ██ Apple is no longer asserting claim 11 – the

9    broader claim[21] – and instead is now asserting only narrow claim 20. █████████████

10   █████████████████████████████████████████████

11   █████████████████ ████ █████████████████████████████

12   █████████████████████████████████████████████

13   █████████████████████████████████████████████

14   ████████████████████ Yet Dr. Vellturo relies on Dr. Hauser's

15   survey to assert Apple is owed lost profits for Samsung's alleged infringement of claim 20 of the '414

16   Patent.  (*See*, *e.g.*, Vellturo Rpt. ¶¶ 164, 255-58, 280-88, 293, 310-17, 324, Fazio Dec. Ex. M.)  A

17   survey testing a patent claim not asserted for infringement is useless and inadmissible.[23]

18   ────────────────────

19   [18]  *See*, *e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996) ("A
     literal patent infringement analysis involves two steps:  the proper construction of the *asserted* claim
20   and a determination as to whether the accused method or product infringes the *asserted* claim as
     properly construed.") (emphasis added); *cf. Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482
21   (Fed. Cir. 1984) ("Thus an accused product could not be found non-infringing because it lacked a
     flared outlet feed pipe, that element being irrelevant because it is present only in *non-asserted*
22   claim.").

     [19] ███████████████████████████████
23   ██ ████████████████████████████████

     [21]  On October 4, 2013, Apple dropped its infringement allegations for claim 11.  Dkt. No. 786.
24   [22]  Dr. Vellturo analysis of *Panduit*'s first factor repeatedly conflates claim 20's narrow alleged
     "plug-in" technology, ████████████████████████████████████

25   ████████████████████████████████████████████

     [23]  This is a pervasive error that extends beyond the '414 Patent:  Apple's damages are based on
26   allegations that its products practice claims *not* asserted for infringement. ███████████

     █████████████████████████████████████████████
27   █████████████████████████████████████████████

     █████████████████████████████████████████████
28        (footnote continued)

SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS

1

2

3   Nonetheless, Dr. Vellturo used the results from the tablet survey to assess damages on accused

4   smartphones.  (Vellturo Rpt. at 104, n.508, Fazio Dec. Ex. M.)

5   **D.      The Methodology Used Results In Unreasonable and Unreliable Calculations**

6   Dr. Hauser failed to perform any external test of the validity of his conjoint model to determine

7   how well it could predict the real world.

8

9

10

11

12

13

14   Dr. Vellturo ignored, for example, the parties' prior

15   licensing negotiations as well as licenses between Apple and another Android manufacturer licensing

16   the patents at issue.  Instead, Dr. Vellturo's analysis relies only on the Hauser conjoint analysis to the

17   exclusion of all other methodologies, including those Apple employed (and continues to employ) in

18   the predecessor action and other cases involving the same patents.  A comparison of reasonable

19   royalty calculations highlights the inappropriate methodology Apple offers here.

20   The unreasonableness of the Hauser conjoint analysis (and Dr. Vellturo's use of it) is also

21   shown by Dr. Vellturo's conclusion as to what would be a reasonable royalty for the '647 Patent –

22   per unit.  (Vellturo Rpt. ¶ 428, Fazio Dec. Ex. M.)  This is more than          the royalty

23

24

25   X.)  Dr.

26   Vellturo relied on Dr. Hauser's survey as well as on consumer demand for Apple products that
    purportedly practice the '172 patent.  (*See, e.g.*, Vellturo Rpt. ¶¶ 164, 241-246, 256-258, 330, 470-
    471, 480, Fazio Dec. Ex. M.

27   . (Cockburn Opening
    Rpt. ¶ 470, Fazio Dec. Ex. HHH.)

28

SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS

1   Apple's expert in the Motorola litigation attached to the '647 Patent – 60 cents.  *Apple, Inc. v.*

2   *Motorola, Inc.* 2012 WL 1959560, at *10 (N.D. Ill. May 22, 2012).  In excluding that expert's

3   opinion, Judge Posner found that even the 60 cents per device royalty was "senseless."  (*Id.*)[24]

4           Apple's behavior in the real world confirms the unreliability of Apple's present damages

5   calculations.  ████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████ █

7   ██████████████████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████████████

11  ████████████████████  These real world licensing negotiations show that Dr. Hauser's survey results are

12  nonsensical.

13      **E.      Dr. Hauser's Outside Option Cannot Account For The Role Of The Tested
                  Features In Consumer Purchase Decisions**

14  ██████████████████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████████████████████████

20  ████████████████████  But by failing to properly construct the option, Dr. Hauser's survey simply

21  provides no insight on this issue.

22  ██████████████████████████████████████████████████████████████████████████

    _____

23  [24] ███████████████████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████████████████████

25  ██████████  Here, reliance on the Hauser conjoint analysis generates a per unit royalty of ██████ for just
    five patents.  (Vellturo Rpt. ¶ 428, Fazio Dec. Ex. M.)

26  [25] ███████████████████████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████████████████████████

28  █████████████

The "outside option" thus included the accused products, which Dr. Hauser's screening criteria ensured the respondents already owned, and newer Samsung smartphones that were on the market at the time the survey was conducted.  Respondents picking the outside option (i.e., the choice to not buy the featured phone in the survey question) could merely be expressing a preference for a new phone or the phone they already have.

## II.   DR. VELLTURO'S ANALYSIS CONTAINS MULTIPLE, ADDITIONAL INDEPENDENT FLAWS

### A.   Dr. Vellturo's Reasonable Royalty Is an Impermissible Attempt To Recover Lost Profits on Units For Which Apple Cannot Satisfy The *Panduit* Test

Dr. Vellturo calculates a reasonable royalty on all infringing sales that he concludes are not eligible for lost profits damages.  This includes sales of Samsung products that even the Hauser conjoint analysis concludes would not be impacted by the removal of the allegedly patented features, and thus do not meet the requirement of *Panduit* factor one.   (Chevalier Rpt. ¶¶ 279-282, Fazio Dec. Ex. D).  Yet, as explained above, Dr. Vellturo proceeds to calculate a reasonable royalty that is entirely based on "what Apple would expect to lose in profits" from licensing to Samsung.  (Vellturo Rpt. ¶ 415, Fazio Dec. Ex. M; *see also*                                    In so doing, he dispenses with consideration of the *Panduit* factors for these units.  As a matter of law, this is improper.  *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1576 (Fed. Cir. 1995) (Nies, dissenting in part) ("[W]here a patentee is not entitled to lost profits damages, lost profits may not, in effect, be awarded by merely labeling the basis of the award a reasonable royalty."); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp*., 926 F.2d 1161, 1165, 1168 (Fed. Cir. 1991) (rejecting a party's proposed use of its lost profits figure as a reasonable royalty, stating that "SKD sought actual damages based on

lost profits…SKD used the same purported lost profit figure translated into a percent of Helena's sales to yield a reasonable royalty figure of 48%. The district court found SKD's profit figures incredible in either context."). Apple cannot avoid the *Panduit* requirements by simply asserting that in a hypothetical negotiation Apple would not agree to any number less than its own estimate of its expected lost profits.

### B. Dr. Vellturo Incorrectly Uses the Notice Date To Set The Design Around Period for Lost Profit Damages

One component of Dr. Vellturo's lost profits damages is a time period when he assumes Samsung will simply be forced to remove its products from the market in order to implement design arounds—a "blackout period." Dr. Vellturo more than doubles Apple's off-the-market lost profits damages by incorrectly commencing the design-around period at the notice date. This is contrary to the law: when calculating lost profits, courts look to whether non-infringing design arounds are available *starting on the date of first infringement* – even if it is earlier than the notice date. *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 185 F.3d 1341, 1347 n.3 (Fed. Cir. 1999) (upholding denial of lost profits because the design around would have been complete before notice); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l,* 711 F.3d 1348, 1379 (Fed. Cir. 2013) ("while the marking statute precludes . . . damages for pre-notice infringement, we must assess damages for post-notice infringement relative to market conditions at the point in time when infringement began."). The impact of this legally improper choice has on the lost profits damages number is staggering – by changing start date of the design around periods and the corresponding lost profits periods to start later, Dr. Vellturo increases Apple's claimed lost profits for a four-month design around period by more than ████████████████████████████████), and increases Apple's lost profits from a one-month design around period from ██████████████. (Vellturo Rpt. Exs. 21A, 22A, Fazio Dec. Exs. FF, GG; Chevalier Rpt. Ex. 53A, Fazio Dec. Ex. HH.) Dr. Vellturo's failure to use the date of first infringement for his lost profits calculations is improper under *Grain Processing* and *Power Integrations*, and his opinions on lost profit damages in the post-notice design around periods should be excluded.

### C. Dr. Vellturo's Calculations Rest on Counter-Factual Assumptions and Fail To Consider Relevant Evidence

1    Experts cannot rely on counter-factual assumptions or turn a blind eye to contradictory

2  relevant evidence.  *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041

3  (N.D. Cal. 2001) ("[W]hen an expert opinion is not supported by sufficient facts to validate it in the

4  eyes of the law, or when indisputable record facts contradict or otherwise render the opinion

5  unreasonable, it cannot support a jury's verdict.") (internal citations omitted); *Fail-Safe, LLC v. A.O.*

6  *Smith Corp.*, 744 F. Supp. 2d 870, 889-90 (E.D. Wis. 2010) (finding expert unreliable for various

7  reasons, including because of how he "uniformly treated all evidence that undermined his underlying

8  conclusion: unwarranted dismissal of the evidence or outright blindness to contrary evidence" and

9  noting that fact that he "all but 'cherry picked' the data he wanted to use[] provid[es] the court with

10  another strong reason to conclude that the witness utilized an unreliable methodology").   Dr.

11  Vellturo's opinions are contrary to undisputed facts.  His refusal to consider relevant evidence that

12  undercuts his findings or that would have required him to adjust his calculations downwards renders

13  them unreliable.



14

15

16

17

18

19

20

21

22

23

24

25

26

27    Dr. Vellturo's willful refusal to consider evidence

28  suggesting his royalty numbers are inflated warrants excluding his opinion.  *See Laser Dynamics, Inc.*

1   *v. Quanta Computer, Inc.*, 694 F. 3d 51, 79-80 (Fed. Cir. 2012) (excluding expert's reasonable royalty

2   testimony on the grounds that he relied on "irrelevant evidence to the exclusion of many licenses

3   expressly for the [patent at issue]" which "served no purpose other than 'to increase the reasonable

4   royalty rate above rates more clearly linked to the economic demand for the claimed technology.'").

5       Dr. Vellturo also ignored evidence that directly contradicts his conclusion that *Panduit* factor

6   three was met, which requires evidence Apple had capacity to manufacture the sales it claims to have

7   lost.  Dr. Vellturo states that his review of the data "indicates that Apple has historically had sufficient

8   excess manufacturing capacity to exploit the additional demand for its products that Apple would have

9   experienced, but for Samsung's infringement."  (Vellturo Rpt. ¶ 301, Fazio Dec. Ex. M.)  He claims

10  this is "a highly conservative assessment of Apple's manufacturing capacity" and that he saw "no

11  evidence that the supply of any resource required to expand production could not be increased quickly

12  enough to allow Apple to exploit additional demand."  (*Id.*)

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮[6]  Again, Dr. Vellturo's willful disregard of undisputed

15  facts warrants exclusion.

16  **III.   THE COURT SHOULD EXCLUDE THE OPINIONS OF APPLE'S '647 PATENT
        EXPERT, DR. TODD MOWRY**

17

18      Apple's expert on the '647 patent, Dr. Todd Mowry, should be excluded under Rule 702

19  because he fails to apply consistent claim interpretations for the disputed claim elements, making his

    reports and testimony unhelpful to the trier of fact.

20

21  [26] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮  Apple's CEO has discussed Apple's supply constraints on earnings calls, responding to
    investors concerns.  (*See, e.g.*, Q1 FY 2013 Earnings Call Transcript, Sexton Dep. Ex. 7, at p. 7, Fazio

26  Dec. Ex. LL ((Tim Cook) ("If you look at the iPhone sales across the quarter, we were very
    constrained for much of the quarter on iPhone 5. . . .iPhone 4 was actually in constraint for the entire

27  quarter.").  He has also expressed concerns internally.  (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮

1   Dr. Mowry has applied two sets of claim interpretations in forming his opinions in this case—

2   one for infringement, another for invalidity.  In analyzing invalidity, Dr. Mowry applied a slew of

3   negative and alternative claim interpretations to distinguish the prior art.  Yet Dr. Mowry never even

4   mentions his restrictive interpretations in analyzing infringement, let alone applies them to the accused

5   products.  This inconsistent analysis, detailed below and in Ex. UU, renders Dr. Mowry's opinion

6   unhelpful and unreliable under Rule 702.

7   Making matters worse, Dr. Mowry told this Court, in his sworn Reply Declaration during the

8   PI phase of this case ("PI Reply Declaration"), that certain "requirements" were "written in the claim

9   limitation[s]" of the '647 patent and required by the "plain language."  (*See, e.g.*, Ex. WW (Mowry PI

10  Reply), ¶¶ 25, 140-141, 217.)  Dr. Mowry distinguished prior art based on these "requirements."  (*Id.*)

11  And the Court relied on Dr. Mowry's validity opinions in issuing its Preliminary Injunction Order.

12  Dkt. #221 at 37-42. ████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████

16  The record, however, demonstrates that Dr. Mowry did not make an "error."  Rather, Dr.

17  Mowry changed his testimony about what is "written in the claim limitations" and required by the

18  claims' "plain language" because Samsung's new "Jelly Bean" products, introduced after the PI

19  phase, plainly do not meet the claim requirements Dr. Mowry originally relied on and later tried to

20  disavow.  This exposes his opinion for what it is—the opinion of an unreliable expert who will change

21  his sworn testimony to suit Apple's needs.  Dr. Mowry should not be allowed to testify at trial, given

22  his willingness to ignore the consistency, reliability, and open disclosure that is required of an expert

23  under the Federal Rules.

24  **A.      Failure to Disclose and Consistently Apply Principles to the Facts Renders an Expert's Opinion Unhelpful and Inadmissible**

25  The first step in a patent infringement or validity analysis is to determine the scope of the

26  claims, followed by an element-by-element comparison of each claim to the accused product or prior

27  art.  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).  Claims

28

are not to be treated "like 'a nose of wax,' to be twisted one way to avoid anticipation and another to find infringement." *Id.* (citation omitted). Instead, "claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses." *Id.*

Because of this requirement, courts have previously found that failure to disclose and apply clear and consistent claim interpretations as part of a technical expert's analysis renders an expert's testimony "less than helpful to the trier of fact, in contravention of Federal Rule of Evidence 702," and have excluded testimony on this ground. For instance, in *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003), the court granted a motion to strike a technical experts report under Rule 702 in part because it was not clear what or whose interpretation of the claims the expert applied in his analysis, and because he failed to state the basis and reasons for his opinion under Rule 26(a)(2)(B). Similarly, in *Oxford Gene Technology Ltd. vs. Mergen Ltd.*, 345 F. Supp. 2d 431, 436-37 (D. Del. 2004), the court granted a motion to strike an expert's testimony in part because the expert applied a set of "negative or alternative constructions" to the prior art and because the expert failed to then take the second step of the analysis: an element-by-element comparison of the claims to the facts. *Id.*

## B.   Dr. Mowry Applies Two Separate Sets of Claim Interpretations to Infringement and Invalidity

Violating the requirement that "claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses," Dr. Mowry's Rebuttal Report applies a slew of negative and alternative claim requirements to distinguish the prior art. The following table sets forth a few examples of "requirements" of the claims applied by Dr. Mowry. Dr. Mowry did not disclose a *single* one of these requirements in his Opening Report:

| Mowry's Alleged Claim Requirements | Mowry's Statement Distinguishing Prior Art Based on Alleged Claim Requirements |
|---|---|
| "Selection of a detected structure" in Claim 1 requires that a detected structure can be chosen from a set of structures. | "First, the 'selection of a detected structure,' as written in the claim limitation, requires that a particular detected structure can be chosen from a set of structures." Ex. YY (Mowry Rebuttal) ¶ 151. |
| "Structures" in Claim 1 requires multiple *types* of structures to be detected, not just multiple structures. | "[T]he '647 patent discloses, and claim 1 claims, a system able to detect multiple types of structures in data." *Id.* at ¶ 144. |
| "Structures" in Claim 1 must have "semantic significance." | "The '647 patent claims cover the detection of recognizable structures with *semantic significance*." *Id.* at ¶¶ 37 (emphasis in original), 52, 165, 168, 292, 340. |

| Claim 4 is limited to a specific definition of "grammar." | "The term 'grammar' as understood by one of ordinary skill at the time of the invention of the '647 patent is generally synonymous with 'context-free grammar,' such as a grammar that can be written in Backus-Naur form." *Id*. at ¶ 367. |
|---|---|
| Claim 6 is limited to a specific definition of "string search." | "String search involves comparing a sequence of input characters against a target sequence of multiple characters that are literal constants." *Id*. at ¶¶ 157, 281. |

Of the limitations listed above, ***none*** are applied in Dr. Mowry's infringement report in this case. For instance, in his Rebuttal Report, Dr. Mowry distinguished the art by using a highly technical, restrictive definition of grammar: "The term 'grammar' as understood by one of ordinary skill at the time of the invention of the '647 Patent is generally synonymous with 'context-free grammar,' such as a grammar that can be written in Backus-Naur form." Ex. YY (Rebuttal Report) ¶ 367. Dr. Mowry's Opening Report, on the other hand, contains absolutely no analysis on whether the code he accuses of being a grammar is a "context-free grammar" or whether it is written in "Backus-Naur form." Indeed, those concepts appear nowhere in his infringement report. Ex. ZZ (Mowry Opening) ¶¶ 166, 217. Similar examples abound throughout Dr. Mowry's Reports. *See* Ex. UU (collecting examples of inconsistent claim interpretation).

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████. This renders cross-examination of Dr. Mowry an unsatisfactory solution, because Dr. Mowry merely claims to have applied these restrictive constructions in evaluating infringement, despite not disclosing any of the alleged analysis in his report. But without Dr. Mowry's alleged analysis – that is, regardless of whether Dr. Mowry applied these constructions in his head – Dr. Mowry's failure to disclose any analysis (or even a recitation of the alleged claim requirements) in his infringement reports renders his opinions impossible to evaluate or cross-examine, and thus necessarily unreliable.[27] Dr. Mowry is required by

---

[27] As just one example, Dr. Mowry alleges throughout his analysis of the prior art that for "detection" to be performed, the structures detected must have "semantic significance." Ex. YY (Mowry Rebuttal) ¶¶ 37, 52, 165, 168, 292, 340. ████████████████████████████████

████████████████████████████████████████████. Dr. Mowry should not be able to rely on unsupported analysis and blanket statements to mask the inconsistencies in his approach.

1   the Federal Rules to disclose the full basis for his opinions, which, in the patent context means clearly

2   setting out the claim constructions he is applying and his analysis under those constructions. *Oxford*

3   *Gene Technology Ltd. vs. Mergen Ltd.*, 345 F. Supp. 2d 431, 436-37 (D. Del. 2004).  He has failed to

4   do so.

5           **C.      Dr. Mowry Is Willing To Change His Opinions To Suit His Needs, Illustrating**
             **His Inconsistent Application of Claim Interpretations and Exacerbating His**
6           **Failure to Consistently Apply His Claim Requirements**

7           Nothing illustrates the unreliability of Dr. Mowry's opinion as well as comparing Dr. Mowry's

8   PI Reply Declaration with his September 2013 Rebuttal Report and recent deposition testimony.  The

9   table below collects, in the column on the left, statements Dr. Mowry made in his sworn PI Reply

10  Declaration to the Court regarding requirements "written in the claim limitation" or "required" by "the

11  plain language of claim 1" that he used to distinguish the prior art.  The Court relied on this

12  Declaration in issuing its Preliminary Injunction Order.  Dkt. #221, 37-42.  The column on the right

13  collects Dr. Mowry's recent sworn deposition testimony disavowing his opinion that these are

14  requirements of the claim:

| Mowry's PI Reply Declaration | Mowry's Sworn Deposition Testimony |
|---|---|
| "The 'selection of a detected structure,' as written in the claim limitation, necessarily requires that a particular detected structure can be chosen from a set of detected structures…. At no point does Sidekick allow a user to select from a multitude of detected structures" Ex. WW (PI Reply) at ¶ 140. | |
| This, again, is contrary to the teachings of the '647 Patent, in which multiple structures are detected, after which a user can choose any one on which to perform an operation via the user interface.<br>….<br>This argument makes no sense in view of the plain language of claim 1, which, as explained, requires that the user be able to pick or choose a detected structure *after* the system identifies such structures for the user. Ex. WW (PI Reply) at ¶ 140-141. | |

25          The full-text of these exchanges, including Dr. Mowry's further equivocation regarding other

26  requirements of the claims, is included in Ex. XX (Mowry Dep.) at, *e.g.*, 108:21-110:2; 113:1-21;

27  121:5-126:8; 128:2-141:8; 150:17-152:7; 154:17-164:2.

28

1   Dr. Mowry appears to have changed his opinions because Samsung changed its products.

2   After the PI phase, Samsung released the "Jelly Bean" version of its Browser application.  As detailed

3   in Samsung's concurrently filed Motion for Summary Judgment, that Jelly Bean Browser application

4   does not infringe the claims of the '647 patent because, among other things, ████████████

5   ███████████████████████████████████████████████████████████

6   ████.  *See* Samsung Motion for Summary Judgment, Section III.A.2 & III.B.2.

7   Dr. Mowry's change in opinion about the "requirements" of the claim is further borne out by

8   changed opinions set forth in his Rebuttal Report.  For instance, in his PI Reply Declaration, Dr.

9   Mowry attempted to distinguish the Sidekick prior art reference by claiming that the '647 patent

10   taught that "multiple structures are detected, after which a user can choose any one on which to

11   perform an operation via the user interface."  *Id*. at ¶141 (*see also* ¶217 (stating this is required by

12   language of the claim).  In his Rebuttal Report, however, Dr. Mowry removed this argument entirely.

13   *See* Ex. AAA (illustrating changes to Sidekick opinion).  Similarly, Dr. Mowry opined in his PI Reply

14   Declaration that selection must occur from a "set of ***detected*** structures" (Ex. WW (Mowry Reply

15   Decl.) ¶ 140 (emphasis added)), but modified that opinion in his Rebuttal Report to state only that

16   selection must occur from a "set of structures," regardless of whether they have been detected.  Ex.

17   YY (Mowry Rebuttal) ¶ 151 (removing related opinion that art must "allow a user to select from a

18   multitude of detected structures.").  Again, despite having told the Court—under oath—what was

19   required by the words "written in the claim limitation," Dr. Mowry is demonstrably willing to change

20   that opinion in order suit his infringement read.

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ███████████████Dr. Mowry's change of opinion regarding claim 1—and his refusal to

27   ──────────────

28   [28] ████████████████████████████████████████████████

(footnote continued)

1   acknowledge that change—is a window into the fundamental unreliability of his opinions in this case.

2   His testimony should be excluded from trial.

3   **IV.    THE COURT SHOULD EXCLUDE THE PURE *IPSE DIXIT* OPINIONS OF DR. ALEX SNOEREN REGARDING APPLE'S ALLEGED PRACTICE OF THE '414 PATENT**

4

5          Dr. Snoeren's opinion on Apple's alleged practice of claim 11 of the '414 Patent is supported

6   by nothing but Dr. Snoeren's say-so, and will not help the jury.  Expert testimony that consists of

7   conclusory opinions, supported by no explanation or analysis beyond an expert's say-so, should be

8   excluded under *Daubert* as insufficiently reliable under Rule 702.  *See*, *e.g.*, *Kumho Tire Co. v.*

9   *Carmichael*, 526 U.S. 137, 157 (1999) (stating that the expert "himself claimed that his method was

10  accurate, but, as we pointed out in *Joiner*, 'nothing in either *Daubert* or the Federal Rules of Evidence

11  requires a district court to admit opinion evidence that is connected to existing data only by the *ipse*

12  *dixit* of the expert'" (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))); *DSU Med. Corp. v.*

13  *JMS Co.*, 296 F. Supp. 2d 1140, 1158-59 (N.D. Cal. 2003) (excluding expert testimony on patent

14  damages where the expert's "analytic process" was "classic *ipse dixit*"); *Gable v. Nat'l Broad. Co.*,

15  727 F. Supp. 2d 815, 830-31 (C.D. Cal. 2010) *aff'd sub nom. Gable v. Nat'l Broad. Co., Inc.*, 438 F.

16  App'x 587 (9th Cir. 2011) (excluding expert testimony where the expert had "not identified the

17  principles and methods that he used to form his opinion, making it impossible for the court to evaluate

18  whether such methods are reliable," and where the expert testimony was "entirely unsupported and

19  conclusory"); *Elder v. Tanner*, 205 F.R.D. 190, 194 (E.D. Tex. 2001) (excluding expert reports

20  opining on infringement, anticipation, and obviousness; reports listed evidence and authorities relied

21  upon, but contained no "elaboration or reasoning," and would "not assist the trier of fact").

22          Like the expert reports in *DSU Med. Corp.*, *Gable*, and *Elder*, Dr. Snoeren's "opinion" is four

23  short paragraphs that contain no citations to any evidence.  Ex. __ (Opening Snoeren Report

24  (8/12/13)) ¶¶ 525-28.)[29] ████████████████████████████████████████████████

25  █████████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████ Ex. XX (Mowry Dep.) 144:24-148;14.

        [29] In his rebuttal report, served on September 13, 2013, Dr. Snoeren simply refers back to his
27  opening report for the proposition that Apple practices claim 11. Ex. __ (Snoeren Rebuttal
    Report) ¶ 627.

28

1

2

3

4

5    Rather than provide any reasoning the jury could evaluate, Dr. Snoeren simply asserts that he

6    reviewed source code before forming this opinion (Ex. __ (Opening Snoeren Report (8/12/13)) ¶ 525)

7    – yet Dr. Snoeren does not name a single source code file, or identify a single line of code, as

8    allegedly corresponding to *any* limitations in claim 11.  *Id.*  Instead, he asserts without explanation

9    that "[i]t is my opinion that version 6.1 of iOS practices claim 11 of the '414 Patent." *Id.*  Dr. Snoeren

10   then claims that

11

12

13

14

15

16

17

18

19

20   . *See*

21   *id.* ¶¶ 526-27.

22    Dr. Snoeren's *ipse dixit* assertion that Apple practices claim 11 of the '414 Patent should be

23   excluded.  Dr. Snoeren disclosed no "elaboration or reasoning" to buttress his claim.  *Elder*, 205

24   F.R.D. at 194.  His opinions will be of no assistance to the jury, and cannot be fairly evaluated by the

25   jury.  Under these circumstances, they should not be admitted under Rule 702.  *Id.*; *see also Diviero v.*

26   *Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) ("The district court has the obligation

27   to ensure that the testimony is reliable and will help the trier of fact.  Rule 702 demands that expert

28   testimony relate to scientific, technical or other specialized knowledge, which does not include

-22-    Case No. 12-CV-00630-LHK (PSG)

SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS

1    unsubstantiated speculation and subjective beliefs.").

2    **V.     THE COURT SHOULD EXCLUDE THE OPINIONS OF DR. JAMES STORER
         REGARDING CLAIM CONSTRUCTION FOR THE '239 AND '449 PATENTS.**

3

4          Apple's technical expert on Samsung's '239 and '449 Patents, Dr. Storer, flouts well-

5    established law and the Court's *Markman* Order by failing to articulate his understanding of the claims

6    and ignoring the Court's *Markman* order.

7

8

9

10

11

12

13

14

15

16

17

18   TT identifies the opinions that should be stricken.

19         Dr. Storer also re-construed terms already construed by the Court, such as "port" and "file,"

20   from the '239 Patent.  This is improper and all opinions based on Dr. Storer's re-construed terms

21   should be stricken.  *See Dynetic Design Solutions, Inc. v. Synopsys, Inc.*, Case No. 5:11-CV-05973-

22   PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) (any "expert testimony must adhere to the court's

23   constructions and must not apply alternative claim constructions."); *EZ Dock, Inc. v. Schafer Sys.*,

24   2003 U.S. Dist. LEXIS 3634, *34-35 (D. Minn. 2003) ("parties are not entitled to 'construe' the

25   Court's claim construction.")  Specific examples of Dr. Storer's improper attempts to re-construe the

26   Court's constructions are demonstrated in Exhibit TT.

27   _____
        [30]  *See, e.g.*, *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002), *reh'g
        and reh'd en banc denied* 2002 U.S. App. LEXIS 19256 (Fed. Cir. Aug. 30, 2002) (the first step in an
28   infringement analysis requires construction of the claims).

1    Finally, Dr. Storer ignored the Court's constructions. ███████████████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████ *Markman* order at 60, n. 13; Ex. SS (Storer Dep. Tr.) at

5    346:1-352:20; 351:21-352:20.  Dr. Storer's opinions and testimony regarding "modems" are irrelevant

6    and unreliable and should be stricken.  *NTP, Inc. v. R.I.M., Ltd.*, 2003 U.S. Dist. LEXIS 14338, *23-

7    24 (E.D. Va. May 23, 2003) ("Once claims are construed, it would be folly to allow an expert to

8    testify as to opinions at odds with the Court's construction.").

9    Accordingly, the Court should preclude all opinions and testimony from Dr. Storer that are

10   either inconsistent with legal precedent, or inconsistent with the Court's claim constructions.

11                                 **<u>CONCLUSION</u>**

12   For the foregoing reasons, Samsung respectfully asks the Court to grant its Motion to Exclude

13   Opinions of Certain of Apple's Experts in its entirety.

14   DATED:  October 10, 2013              QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
15

16                                         By */s/ Victoria F. Maroulis*
                                           _____
17                                             Charles K. Verhoeven
                                               Kevin P.B. Johnson
18                                             Victoria F. Maroulis
                                               William C. Price
19                                             Michael L. Fazio

20                                             Attorneys for
21                                             SAMSUNG ELECTRONICS CO., LTD.,
                                               SAMSUNG ELECTRONICS AMERICA, INC.,
22                                             and SAMSUNG TELECOMMUNICATIONS
                                               AMERICA, LLC
23

24

25

26

27

28