JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE (pro hac vice)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street Boston,
Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

***Attorneys for Plaintiff Apple Inc.***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants.<br><hr>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br>Counterclaim-Defendant. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S MOTION TO EXCLUDE CERTAIN UNRELIABLE AND IMPERMISSIBLE SAMSUNG EXPERT TESTIMONY**<br><br>**HEARING:**<br><br>Date:      January 23, 2013<br>Time:      1:30 p.m.<br>Place:     Courtroom 4, 5th Floor<br>Judge:    Hon. Lucy H. Koh<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**PUBLIC REDACTED VERSION** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 23, 2013, or as soon as the matter may be heard by the Court, Lucy H. Koh, in Courtroom 4, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Apple, Inc. ("Apple") shall and hereby does move the Court for an order excluding certain expert testimony proffered by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC ("Samsung").

**RELIEF REQUESTED**

Apple seeks an order precluding Samsung from relying on certain impermissible and unreliable expert testimony.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Samsung's damages expert, Dr. Judith A. Chevalier, should be precluded from offering unreliable testimony about license agreements and/or offers to license.

2.      Whether Dr. Kearl, Samsung's affirmative damages expert, should be precluded from offering certain unreliable testimony that violates established mathematical principles.

3.      Whether Dr. Schonfeld, a Samsung technical expert, should be precluded from offering testimony that is based on improper claim constructions for Samsung's '757 and '239 patents.

4.      Whether Dr. Rinard, Samsung's technical expert on issues relating to Apple's '959 patent, should be precluded from testifying about misleading demonstrations concerning certain purported prior art systems.

5.      Whether Dr. Chevalier, and any other Samsung expert, should be precluded from testifying about the opinions of Apple's experts expressed in past cases.

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 23, 2013, or as soon as the matter may be heard by the Court, Lucy H. Koh, in Courtroom 4, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Apple, Inc. ("Apple") shall and hereby does move the Court for an order excluding certain expert testimony proffered by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC ("Samsung").

**RELIEF REQUESTED**

Apple seeks an order precluding Samsung from relying on certain impermissible and unreliable expert testimony.

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Samsung's damages expert, Dr. Judith A. Chevalier, should be precluded from offering unreliable testimony about license agreements and/or offers to license.

2.     Whether Dr. Kearl, Samsung's affirmative damages expert, should be precluded from offering certain unreliable testimony that violates established mathematical principles.

3.     Whether Dr. Schonfeld, a Samsung technical expert, should be precluded from offering testimony that is based on improper claim constructions for Samsung's '757 and '239 patents.

4.     Whether Dr. Rinard, Samsung's technical expert on issues relating to Apple's '959 patent, should be precluded from testifying about misleading demonstrations concerning certain purported prior art systems.

5.     Whether Dr. Chevalier, and any other Samsung expert, should be precluded from testifying about the opinions of Apple's experts expressed in past cases.

1   Dated:  October 10, 2013                    GIBSON, DUNN & CRUTCHER LLP

2

3                                               By:   /s/ H. Mark Lyon

4
                                                Attorneys for Plaintiff
5                                               APPLE, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     LEGAL STANDARDS .......................................................................................1

III.    ARGUMENT .......................................................................................................1

        A.    Dr. Chevalier Should Be Precluded from Offering Unreliable Testimony
              Concerning Patent Licenses ....................................................................1

              1.    Dr. Chevalier's Use of Licenses.................................................2

              2.    None of Dr. Chevalier's Proffered Licenses Are Comparable .................3

              3.    Dr. Chevalier's Methodology For Determining a Royalty Rate Is
                    Unsound ....................................................................8

        B.    Samsung's Damages Expert Should Be Precluded from Offering
              Mathematically Unsound and Unreliable Testimony .................................11

              1.    Dr. Kearl Uses a Mathematically Unsound Methodology to
                    Calculate Damages for the '239, '757, and '449 Patents    11

              2.    Dr. Kearl Uses a Mathematically Unsound Methodology to
                    Calculate Damages for the '087 and '596 Patents    14

        C.    Samsung's Expert Should Be Precluded From Offering Unreliable
              Testimony Based on Improper Claim Constructions For the '757 and '239
              Patents ....................................................................16

              1.    ███████████████████████████████
                    ███████████ ....................................................16

              2.    ███████████████████████████
                    ███ ....................................................17

              3.    █████████████████████
                    ██ ....................................................19

              4.    Dr. Schonfeld's Opinion Improperly Alters the Court's
                    Construction of "Means for Capturing, Digitizing, and
                    Compressing At Least One Composite Signal" in Claim 1 of the
                    '239 Patent ....................................................20

              5.    Dr. Schonfeld Fails to Apply the Correct Claim Construction and
                    Infringement Standards to Means-Plus-Function Limitations .................20

D.      Dr. Rinard Should be Precluded From Creating Unreliable and Misleading
        Demonstrations Concerning Certain Purported Prior Art Systems......................23

E.      Samsung's Experts Should be Precluded From Testifying About the
        Opinions of Apple's Experts Expressed in Past Cases .......................................24

IV.     CONCLUSION ..............................................................................................................25

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES

Page

### Cases

*Apple, Inv. v. Samsung Elecs., Co., Ltd.*,
No. 11-CV-01846-LHK, 2012 WL 2571332 (N.D. Cal. 2012)......................... 4

*Applied Med. Research Corp. v. United States Surgical Corp.*,
448 F.3d 1324 (Fed. Cir. 2006) ......................... 21

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009) ......................... 20

*Dataquill Ltd. v. High Tech Computer Corp.*,
887 F. Supp. 2d 999 (S.D. Cal. 2011) ......................... 3, 5, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ......................... 1, 23

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ......................... 24

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010) ......................... 15

*KSR v. Teleflex*,
550 U.S. 398 (2007) ......................... 23

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ......................... 1

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ......................... 3

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ......................... 3, 7

*ResQNET.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ......................... 3, 4

*TV Interactive Data Corp. v. Sony Corp.*,
929 F. Supp. 2d 1006 (N.D. Cal. 2013) ......................... 3

*Utah Med. Prods., Inc. v. Graphic Controls Corp.*,
350 F.3d 1376 (Fed. Cir. 2003) ......................... 3

*Welker Bearing Co. v. PHD, Inc.*,
550 F.3d 1090 (Fed. Cir. 2008) ......................... 21

### Statutes

35 U.S.C. § 103 ......................... 23

### Rules

Fed. R. Evid. 702 ......................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Samsung has served over a dozen expert reports in this case, each of which contains numerous methodological, factual, and legal flaws.  In accordance with this Court's order, however, Apple has limited this motion to five areas where Samsung has clearly crossed the bounds of permissible expert testimony established by *Daubert v. Merrill Dow*, and proffered opinions that are unreliable on their face.  As discussed below, the proffered testimony is not the product of reliable principles and methods, is not tied to the facts of this case, will not assist the trier of fact, and accordingly should be excluded.

## II.    LEGAL STANDARDS

The admissibility of expert testimony is governed by Fed. R. Evid. 702, as informed by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and their progeny.  Under Fed. R. Evid. 702, the trial judge serves as a gatekeeper, tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597.  These rules apply to all expert testimony, regardless of whether that testimony is scientific or technical in nature.  *Kumho Tire*, 526 U.S. at 148.

## III.   ARGUMENT

### A.     Dr. Chevalier Should Be Precluded from Offering Unreliable Testimony Concerning Patent Licenses

Samsung's damages expert, ███████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████  Yet she has not even said, much less shown, that any of her proffered licenses are technically or economically comparable to a license to the patents-in-suit.  The Federal Circuit, this Court, and many other courts have consistently held that opinions based on-non comparable licenses are

Gibson, Dunn &
Crutcher LLP

impermissible under *Daubert*.

Dr. Chevalier has also applied a wholly unreliable methodology for extracting royalty rates from these irrelevant licenses, and has done so without any factual basis. ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████  These defects render Dr. Chevalier's entire analysis of patent licenses unreliable and inadmissible under *Daubert*.[1]

### 1.    Dr. Chevalier's Use of Licenses

Dr. Chevalier uses licenses in three primary areas in her report, all in support of her calculation of a reasonable royalty for the Apple patents-in-suit.  Below is a brief summary of her analysis:

- ████████████████████████████████████████████████
████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████



**2.      None of Dr. Chevalier's Proffered Licenses Are Comparable**

The Federal Circuit has made it abundantly clear that license agreements that are not comparable to a license to the patents-in-suit that the parties would have agreed to at the hypothetical negotiation cannot form a reliable basis of a damages opinion. *See ResQNET.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("This court has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit."). *See also Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009) ("[A] lump-sum damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when it is doubtful that the technology of those license agreements is in any way similar to the technology being litigated here.").

The Federal circuit, this Court, and other courts, have consistently recognized opinions grounded on non-comparable licenses are unreliable and inadmissible under *Daubert*.  Indeed, in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79-81 (Fed. Cir. 2012) the Federal Circuit held that an expert's royalty opinion was "unreliable under Federal Rule of Evidence 702 and should have been excluded" where it relied on non-comparable licenses.  *See also, e.g., Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385-86 (Fed. Cir. 2003) (affirming district court's exclusion of expert testimony relying on non-comparable licenses); *TV*

*Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal. 2013) (excluding expert from referring to royalty rates associated with licenses "for technologies that are not comparable to the technology of the patents-in-suit."); *Dataquill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1024 (S.D. Cal. 2011) (excluding expert testimony where licenses, although technically comparable, were not economically comparable to the hypothetical negotiation).[2]

Dr. Chevlier has, throughout her analysis, simply ignored the Federal Circuit's mandate in *ResQnet*, and has ████████████████████████████████████████ ████████ Chev. Rep., ¶ 322 (Ex. A-1)████████████████████████ ████████████████████████████████████).[3] ██████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████ As discussed below, none of Dr. Chevalier's licenses meet the standard set forth in *ResQnet*.

**Apple's Licenses-In**. ████████████████████████████████ █████████████████████████████████████████████ █████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████████ *See, e.g,* *ResQNet*, 594 F.3d at 869 ("The first Georgia-Pacific factor requires considering past and present royalties received by the patentee for the licensing of the *patent in suit* . . . By its terms, this factor considers only past and present licenses to the actual patent and the actual claims in litigation") (emphasis in original).[4]  In any event, these agreements are neither economically or

---

[2]  Indeed, Samsung has advocated for this exact same position in the 1846 case, and successfully moved to strike a portion of Dr. Musika's opinion on the basis that testimony about non-comparable licenses is inadmissible under *Daubert*.  *Apple, Inv. v. Samsung Elecs., Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 2571332, at *8 (N.D. Cal. 2012).

[3]  Citations in the form "Ex. A-_," "Ex. B-_," etc. are citations to documents appended to the Declaration of Casey J. McCracken submitted  in support of this Motion.

[4]  Although *Georgia Pacific* factor 2 allows exploration into licenses of patents that are *comparable* to the patent in suit, rather than licenses to the patent in suit itself, that is in the context of analyzing the *licensee's* agreements (i.e., Samsung's) not the licensor's.

1  technically comparable to a license to the patents-in-suit, and should be excluded.



8  The same is true for many of the agreements she includes in her

9  table of licenses.  *See id.*, Ex. 70 at, *e.g.*, rows 2a

16  *See, e.g., Dataquill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d

17  999, 1023 (S.D. Cal. 2011) ("Mr. Gemini has failed to establish economic comparability and his

18  testimony regarding [license agreements] should be excluded on this ground alone.").



None of these licenses are economically or technically comparable to a license to the Apple patents in suit.

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
CASE NO. 12-cv-00630-LHK (PSG)

1

2

3

4

5

6           Nor are any of these agreements technically comparable to a license to the Apple patents-

7    in-suit.

8

9

10

11

12

13

14

15

16

17                                                              None of her

18   Samsung agreements are comparable, and they should be excluded.

19

20

21                                                      Because they relate to

22   rights to large numbers of patents going in both directions, they are by definition very different

23   from the one-way license to a limited number of patents-in-suit that the parties would agree to at

24   the hypothetical negotiation.  *See Lucent,* 580 F.3d at 1328-29; *see also Dataquill*, 887 F. Supp.

25   at 1023 (excluding expert reliance on "worldwide license" covering "hundreds of patents"

26   because such license was "radically different from the hypothetical agreement under

27   consideration.").

28

None of them are comparable, and her opinions concerning them should be excluded.[6]

### 3. Dr. Chevalier's Methodology For Determining a Royalty Rate Is Unsound

Dr. Chevalier's testimony should also be excluded because her methodology for determining her royalty rates is unsound.

*Id.* at ¶¶ 309-10.

*Id.* at ¶¶ 311-13.

*Id.* at ¶ 314.

[6]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17    Dr. Chevalier's approach is entirely arbitrary.

18

19

20

21

22    or otherwise manipulate this agreement to arrive at a royalty rate for Apple's patents

23    in this case.

24

25

26

27    7

28

Gibson, Dunn &
Crutcher LLP

1   ████████████████████████████   *See id.* at ¶¶ 318-21.  This Court already ruled, in

2   the 1846 case, that these discussions could not come into evidence for purposes of establishing

3   the amount of damages.  *See* D.I. 1695 (Trial Tr. in 11-CV-01846) at 1969 (limiting instruction

4   that evidence could not be used to determine "the amount of the disputed claim").  Even if this

5   settlement discussion were to be considered for its substance, Dr. Chevalier's analysis of it

6   should be stricken because it is based on the same type of guesswork discussed above.

7   ████████████████████████████████████████████████

8   ██████████████████████████████████████   *Id.* at ¶ 319;

9   Chevalier Tr., 281-82 (Ex. A-2)████████████████████████

10  ████████████████████████████████████████

11  ██████████████████████████████████████

12  ██████████████████████   Chev. Rep., ¶ 320 & Ex. 76 (Ex. A-1).  ████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████████

15  ██████████████████████████   Teksler Tr., 52-59, 71-72

16  (Ex. A-3).  Dr. Chevalier has no basis for extracting a flat royalty rate applicable to each of the

17  Apple patents-in-suit from this settlement discussion.

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████

21  ████████████████   Her methodology for doing so is flawed at the most basic levels.

22  ████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████

25  ████████████████████████████████████████████

26  ████████████████████████████   Dr. Chevalier clearly has no factual basis for

27  opining that any of these ████████████ reflect a value for Apple's patents in this case.

28  Moreover, Dr. Chevalier's suggestion that these ████████████████ implied per-unit

1   rates, even with respect to Samsung's products, is also completely without factual basis. ████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████

7                           *        *        *

8          Dr. Chevalier's entire analysis of licenses in her report is undermined by these defects,

9   and no portion of it should survive.  Accordingly, Apple requests that the Court preclude Dr.

10  Chevalier from offering the opinions concerning licenses set forth in ¶¶ 298-299 ████████

11  ████████ ¶¶ 303-334 (Dr. Chevalier's '████████████████████████'); ¶¶ 367-68, and

12  404 (*Georgia Pacific* factors 1, 2 and 15), the tables of licenses found at Exs. 69-73, and the

13  tables performing various calculations and analyses of those licenses at Exs. 74-85, along with

14  any testimony referring or relating to this material.[8]

15        **B.     Samsung's Damages Expert Should Be Precluded from Offering
              Mathematically Unsound and Unreliable Testimony**
16

17           **1.     Dr. Kearl Uses a Mathematically Unsound Methodology to Calculate
                    Damages for the '239, '757, and '449 Patents**

18  ████████████████████████████████████████████████

19  ██████████████████████████████████

20  █████████████████████████████████████████████████

21        ████████████████████████████████████████

22  Kearl Rep., Tables 17a-f, 21a-e, and 25a-b (Ex. B-1).[10]

23  ███████████████████████████████████████████████████

24  ████████████████

25        █████████████████████████████████████████████████

26  ─────────────────────
    [8] ████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  [10] All citations to "Kearl Rep." are to Dr. Kearl's Corrected Opening Expert Report served on
    August 19, 2013, including errata dated October 4, 2013.

1    Kearl Tr., 141:20-24 (Ex. B-2).

2    Rao Rep., Tables 2b, 3b, 4b, and 5b (Ex. B-3).

3

4    Rao Rep., ¶¶ 40-43 (Ex.

5    B-3); Rao App. B1 (Ex. B-3).

6

7    Rao Rep., Tables 2b, 3b, 4b, and 5b (Ex. B-3).

8

9

10    Kearl Tr., 34:5-17, 41:2-11 (Ex. B-2); Rao Rep., Tables 2b, 3b, 4b, and 5b (Ex. B-3).

11

12

13

14    Kearl Tr., 19:23-20:12, 27:13-28:7 (Ex. B-2).

15

16

17    Kearl Tr., 142:8-

18    24 (Ex. B-2).

19

20

21

22

23

24

25

26

27

28



1  *Id.* ████████████████████████████████████████████████

2  ██████████████████████████████████████████████

3  ██████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████ (Rao Tr., 66:5-8, 94:6-22 (Ex. B-4)), ███

7  ██████████████████████████████████████████████

8  ██████████████████████████████████████████████

9  ████████████████████████████████████████████████

10  ████████████████████ Rao Tr., 98:1-10 (Ex. B-4).  A ratio scale, such as a monetary scale, has

11  a meaningful zero (e.g., $0) such that ratios of ratio scale values have meaning (e.g., $10 is twice

12  as much as $5).  ██████████████████████████████████████████████

13  ██████████████████████████████████████████████

14  ████████████████████████████████████████ Kearl Tr., 142:25-

15  143:5; 302:7-303:13 (B-2).

16       Unlike a ratio scale, an interval scale indicates rank and distance from an arbitrary zero,

17  or anchor.  *Statistics for Business and Economics* at 13 (Ex. B-5).  It is a well-established

18  principle of statistics that ratios of values on an interval scale are neither valid nor meaningful.

19  *Statistics for Business and Economics* at 13 (Ex. B-5); *Marketing Research: Methodological*

20  *Foundations* at 269 (Ex. B-6).  ██████████████████████████████████████

21  ████████████████████████████████ (Rao Tr., 66:5-8, 94:6-22 (Ex. B-4), Dr.

22  Kearl's damages methodology is mathematically unsound and unreliable.[15]

23       The following example illustrates why ratios of interval scale values are not valid or

24  meaningful.  Examples of interval scales are the Fahrenheit and Celsius temperature scales.  *Id.*

25  _____

26  [14] ████████████████████████████████████████████████ Rao

    De ███████████████████████████████████████████████

27  [15] ██████████████████████████████████████████████

28  ████████████████████████████████████████████████ Rao Tr.,

    36:24-37:2, 37:25-38:15, 209:15-21 (Ex. B-4).

Both of these scales measure a distance in degrees from an arbitrarily set zero, which is different for each of these scales.  While we can say that 80° F is warmer than a 40° F, we cannot say that 80° F is twice as warm as 40° F because the ratio 80° F to 40° F is 2.  *Marketing Research: Methodological Foundations* at 269 (Ex. B-6).  Further, whereas the ratio of 80° F to 40° F is 2, the ratio of those same temperatures on the Celsius scale (i.e,. 26.6° C to 4.4° C) is about 6.  *Id.* The fact that the exact same temperatures on the Fahrenheit and Celsius scales have different ratios shows that one cannot draw valid and meaningful conclusions from ratios of interval scale values.

Similarly, ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████  Rao Tr., 54:5-56:20, 69:21-70:8 (Ex. B-4); Ex. B-7, (RAONDCA630-00001750).  ██████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████  Ex. B-8.  This is analogous to the ratio of the same two temperatures differing based on whether the temperature is expressed in Fahrenheit or Celsius.  ████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████[17]

For these reasons, Dr. Kearl's calculation of damages for the '239, '757, and '449 patents is based on an invalid and unreliable methodology, and he should be precluded from offering his royalty damages conclusions for the '239, '757, and '449 patents at trial.

**2.    Dr. Kearl Uses a Mathematically Unsound Methodology to Calculate Damages for the '087 and '596 Patents**

Similarly, Dr. Kearl's damages calculation for the two declared essential patents is



1   mathematically unsound because it ████████████████████████████████

2   ████████████████████████████████████████████

3   ██████████████████████████████████████████████████

4   ███████████████████████████████████████████

5   ████████████████████████████████████████████

6   ████████████████████████████████████████████

7   ██████████████████████████████████████████████

8   █████████████████████████████████████████████

9   ████████████████████████████████████

10  ███████████████████████████████████████████

11  ██████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████   The study includes no analysis of upload bandwidth at all.  *Id.*

14  ████████████████████████████████████████████

15  ███████████████████████████████████████████████████

16  ██████████████████████████████████████████████████

17  █████████████████████████████████████████████████

18  ██████████   A simple example illustrates the flaw in this analysis.  Take a data plan with 100

19  Mbps download speed and 50 Mbps upload speed that sells for $100 per month. ████████

20  ████████████████████████████████████████████

21  █████████████████████████████████████████████████

22  ██████████████████████████████████████[18]

23      "[W]here significant variables that are quantifiable are omitted from a regression

24  analysis, [a] study may become so incomplete that it is inadmissible as irrelevant and unreliable."

25  *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273 (S.D. Cal. 2010).  Given that the '087

26

27  [18] ████████████████████████████████████████████████

28  ████████████████████████████████████



and '596 patents relate to upload speed, and given that consumers pay for *both* upload and

download, ███████████████████████████████████████████████

███████████████████ .[19]

**C.**   **Samsung's Expert Should Be Precluded From Offering Unreliable Testimony Based on Improper Claim Constructions For the '757 and '239 Patents**

In his expert reports for the '757 and '239 patents, Samsung's expert, Dr. Schonfeld, rests

his opinions on several flawed new claim constructions:  (i) that directly conflict with the

constructions this Court has already issued; (ii) that apply a special and previously undisclosed

meaning for terms that Dr. Schonfeld agrees should have their plain meaning, and that do not

require any construction; and/or (iii) that rest on unreasonable readings of the intrinsic record and

an incorrect application of the law.  Accordingly, as set forth more fully below, the Court should

preclude Dr. Schonfeld from offering the opinions that are premised on these improper

constructions, which are inherently unreliable.

**1.**





**2.**



1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████

4 ███████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 █████████████████████.

### 3.   "Zone Specific Storage and Interface Device" Cannot be Construed to Cover a Mobile Device

The Court construed "zone specific storage and interface device" to mean "a storage and interface device that resides in an area, such as a room or similar location." D.I. 447 at 45. The Court further added that "resides" reflects "some degree of being contained within a certain location rather than moving around freely." *Id.* at 43. The Court also disagreed with several aspects of Samsung's proposed construction. For example, the Court rejected Samsung's use of "associated" because it could "potentially include highly transitory associations with an infinite series of locations, ***as with a mobile device, thereby evading the limitation of 'zone specific.'***" *Id.* at 45 (emphasis added). Moreover, the Court rejected "viewing or listening zone" because it could incorporate "an infinite series of locations, for example, the zone in which a personal mobile device is carried." *Id.*

Despite this clear ruling, ██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████

2 ██████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ███████████████████████████████████████████████

7 █████████████████████████████████

### 4.    Dr. Schonfeld's Opinion Improperly Alters the Court's Construction of "Means for Capturing, Digitizing, and Compressing At Least One Composite Signal" in Claim 1 of the '239 Patent

The Court construed the "means for capturing, digitizing, and compressing at least one composite signal" limitation in claim 1 of the '239 patent to require the function of "capturing, digitizing, and compressing at least one composite signal" (and the structure of "an audio capture card and a video card having a video capture module").  That construction—which requires capture of an existing composite signal—is consistent with the specification's description of the video card receiving the video signal "from any device having the capacity to output a video signal 1, such as a video camera, video cassette recorder/player, laser disc player, etc." '239 patent, 4:28-31, 4:39-45 (Ex. C-6) (emphasis added); *see id.*, 2:59-3:1.

But Dr. Schonfeld's infringement opinion is based on a different function:  that the accused devices ██████████████████████████████████████████ ████████████████████ Schonfeld Rep., ¶ 1303 (Ex. C-5) (emphasis added); Schonfeld Tr., at 353:14-21 (Ex. C-2) (testifying that claim 1 requires ███████████████████████ (emphasis added).  Dr. Schonfeld's attempt to change the claimed function impermissibly changes the Court's construction (to which Samsung agreed).  There is no discussion anywhere in the patent about how the signal captured by the card is ████████████████████

### 5.    Dr. Schonfeld Fails to Apply the Correct Claim Construction and Infringement Standards to Means-Plus-Function Limitations

Dr. Schonfeld's flawed constructions of some means-plus-function limitations in the '239

patent (that have not been construed by the Court) also render his opinions unreliable.[21]  Rather

than identifying the "particular structure used to perform the recited function" as required, *see*

*Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009), Dr. Schonfeld

ignores structure in the specification and includes structure that is not found in the specification.

He also applies the incorrect standard in his infringement opinions regarding supposed structural

"equivalents" of the means-plus-function limitations.

      For example, Dr. Schonfeld's structure for the "means for exchanging data with said host

unit" is ███████████████████████████████████████

Schonfeld Rep., ¶ 60 (Ex. C-5).  But that construction incorrectly changes the claimed function

from ████████████████████ and ignores the only structure disclosed in the

specification for exchanging data between host and playback units (i.e., a 16-bit Ethernet card,

Novell Netware Lite software, and the Host Boot Sequence).  '239 patent, 10:55-61 (Ex. C-6).

The patent makes ***no*** mention of a ███████████████████

███████████

      Dr. Schonfeld's attempt to attribute the structure of ████████████████

███████████████████████████ for the "means for transmission"

limitation of claim 15 is equally flawed.  Schonfeld Rep., ¶ 72 (Ex. C-5).  ***First***, the phrase

████████████████ does not appear in the specification.  ***Second***, Dr. Schonfeld's

rationale for including this component—that ████████████████████████

██████████████████ (*id.*, ¶ 75)—is directly contradicted by the patent's explanation

that radio transmitters are used "[i]n areas which are inaccessible to standard telephone lines and

outside cellular telephone 'cell[s]'."  '239 patent, 9:38-45 (Ex. C-6).  ***Third***, Dr. Schonfeld

opines that ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

21 Indeed, Dr. Schonfeld's report fails to identify the law regarding construing means-plus-function limitations.  (*See* Schonfeld Rep., ¶¶ 36-39 (Ex. C-5).)

1    ███████████████████████. Schonfeld Rep., ¶¶ 78, 81 (Ex. C-5).  This "analysis" has no

2    basis in the law, and is also incorrect.  ***First***, ██████████████████████████████ ***Second***,

3    the '239 patent describes the software required by the Court's construction of "means for

4    transmitting" in a section describing how "***[t]ransmission*** of a data file is accomplished by

5    selecting the 'TRANSFER' button," which initiates that software sequence.  '239 patent, 8:23-42

6    (Ex. C-6).  The patent makes no distinction between "transmitting" and "transmission," and the

7    same software sequence applies to both terms.  Dr. Schonfeld's failure to follow the Court's

8    construction of "means for transmitting" and to include the software steps—which the Court

9    describes as "necessary for any transmission" (DI 447 at 63)—is incorrect and renders his

10   opinions unreliable.

11         ***Finally***, Dr. Schonfeld repeatedly argues that ████████████████████████████

12   ████████████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████ Schonfeld Rep., ¶¶ 1308, 1314,

14   1316, 1342, 1350, 1352, 1359, 1361, 1364, 1366, 1372, 1374, 1380, 1382, 1396, 1476, 1495 (Ex.

15   C-5).  This is not the correct standard under 35 U.S.C. § 112, ¶ 6.  Literal infringement based on

16   an "equivalent" structure requires that the ***identical*** function be performed, not "substantially the

17   same" function.  *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1099-100 (Fed. Cir. 2008)

18   ("Literal infringement of a claim limitation in means-plus-function format 'requires that the

19   relevant structure in the accused device perform the identical function recited in the claim and be

20   identical or equivalent to the corresponding structure in the specification.'") (quoting *Applied

21   Med. Research Corp. v. United States Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006)).

22   Because Dr. Schonfeld applied the wrong standard to arrive at his conclusions, these conclusions

23   should be stricken as unreliable.[22]

24

25

26   ────────────────────
     [22] ████████████████████████████████████████████████████████████████████

27   ██████████████████████████████████████████████████████████

28                                             Apple is moving to strike most of these
     opinions because Samsung was denied leave to amend its infringement contentions to add these
     new theories and has not shown good cause to add them now.

Gibson, Dunn &
Crutcher LLP

### D.    Dr. Rinard Should be Precluded From Creating Unreliable and Misleading Demonstrations Concerning Certain Purported Prior Art Systems

Samsung's '959 Patent expert, Dr. Martin Rinard, should be precluded from presenting purported "demonstration systems" that he built for this litigation as part of his invalidity analysis.  Dr. Rinard alleges that claims 24 and 25 of Apple's '959 Patent are anticipated or rendered obvious by the "WAIS system" and the "AppleSearch system."  In particular, Dr. Rinard asserts anticipation based on specific combinations and configurations based on various components that he then calls a "WAIS system" and an "AppleSearch system." As described in detail in Apple's Motion for Summary Judgment, Samsung has no evidence that the specific combinations and configurations he identifies were known, used or on sale in the U.S.  Apple's Mot. for Summary Judgment, Oct. 10, 2013 at 15-19.  Samsung knows this, and so had Dr. Rinard construct a "demonstration system," in 2013, based on his own combination of older, pre-2000 parts.  *See* Rinard Rep. ¶¶ 480-491, Rho Decl. ISO Apple's Motion for Summary Judgment, Oct. 10, 2013, Ex. D-1.

Samsung's cobbled-together system is not prior art, of course, because it did not exist as a complete system before the patent was filed.  This Court already found as much when it held, during the preliminary injunction phase, that Samsung's "post-hoc, reconstructed interpretation of how a WAIS system might have been constructed does not constitute prior art for purposes of anticipation."  D.I. 230 at 6.  Samsung now suggests, however, that so long as Samsung will not offer these systems as actual prior art evidence, Samsung can nevertheless still use them as "demonstrations" that are "representative" of what could have been built at the time.[23]

Samsung's suggestion that it could appropriately present this concoction to the jury is both an attempt to end-run this Court's prior order, and is completely outside the bounds of the permissible use of expert testimony.  Expert testimony is permitted only insofar as it will "help the trier of fact to understand the evidence or to determine a fact in issue."  F.R.E. 702.  The question of anticipation turns upon the analysis of evidence of what was ***actually done prior to***

---

[23] ██████████████████████████████████████████████ Rinard Dep. Tr. at 204:8-205:23, Rho Decl. ISO Apple's Motion for Summary Judgment, Oct. 10, 2013, Ex. D-2.

*the invention*, whereas the question of obviousness focuses on whether a person of ordinary skill in the art *at the time of the invention* would have been led to combine the known elements in a certain manner. 35 U.S.C. § 103. Dr. Rinard's litigation-built systems do the opposite of assisting the trier of fact in deciding these questions—they instead only mislead the jury into believing that a system that did not exist before the patent might have existed, or might have been easily constructed. Testimony of this sort, proffered by an expert witness, could be "both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. That is particularly true here, where a juror could easily think that these "demonstration" systems are themselves prior art, or conclude that the combination of elements they suggest must have been obvious. Indeed, the clear and impermissible hindsight bias that Dr. Rinard employed to construct these systems could be very difficult for the jury to recognize. *See KSR v. Teleflex*, 550 U.S. 398, 421 (2007). For all of these reasons, Samsung should not be permitted to present this "demonstration" to the jury.

### E.    Samsung's Experts Should be Precluded From Testifying About the Opinions of Apple's Experts Expressed in Past Cases

Samsung's experts should be precluded from testifying about the opinions of Apple's experts expressed in past cases, including experts that are not testifying in this case, as such testimony from other cases is not probative of any issue in this case and would cause confusion of the issues and a mini-trial on expert opinions not given in this case. ███████████████

███████████████████████████████████████

████████ Chevalier Rep. ¶¶ 343-347. ████████████████

█████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████████████ *Id.* at ¶ 344. ████████

██████████████████████████████████████████

████████████████████████ *Id.* at ¶ 317 & Ex. 75. ████████

████████████████████████████ *Id.* at ¶ 289 n.674, ¶ 301 n.

690, ¶ 322, n. 725, ¶ 342, n. 761.

Expert opinions on damages in prior cases are not relevant to opinions given in this case. The Federal Circuit has made clear that there are many ways to calculate a damages award. *See, e.g.*, *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("[C]ourts have given patentees significant latitude to prove and recover lost profits for a wide variety of foreseeable economic effects of the infringement."). Thus, it is unsurprising, and of no evidentiary value, that different experts in different cases, or the same expert in different cases, have tackled the problem differently.

Moreover, even if opinions regarding the methodology and conclusions of experts in other cases have some relevance, they are far more prejudicial than probative and would cause substantial confusion of the issues. The opinions of Mr. Musika and Ms. Davis ████ ████████████████████ were given in a different case regarding different products over a different time period, and more importantly, involved entirely different patents. If Samsung plans to attack Apple's experts regarding differences between their opinions in this case and opinions of other experts in a different case, Apple will be entitled to put forth evidence of what theories were pursued in those previous cases, what analysis was done by Apple's experts, what positions Samsung (or other parties) and its experts took, and what the jury found. A full analysis of the theories and opinions given in other cases would result in a mini-trial regarding economic analysis that is not pertinent to this case. Further, Mr. Musika and Ms. Davis will not be testifying at trial in this case to defend their analysis or to explain why it was appropriate under the facts and circumstances of an entirely different case.

There is substantial debate between the parties' experts as to how damages should be awarded in *this* case. To add to that a debate about how damages should be awarded in the 1846 case—which is still being disputed in that case—would muddle already complicated issues. The Court should avoid this confusion by precluding testimony regarding expert opinions given in other litigation.

## IV.    CONCLUSION

For the foregoing reasons, Apple respectfully requests the Court grant this Motion.

Dated:  October 10, 2013

Respectfully Submitted,


By:   /s/ H. Mark Lyon

Attorneys for Plaintiff
APPLE, INC.

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        The undersigned hereby certifies that the foregoing document, and all supporting

4   documents and exhibits, was filed electronically in compliance with Civil Local Rule 5-1, and

5   will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America,

6   Inc., and Samsung Telecommunications America, LLC who have consented to electronic service

7   in accordance with the Northern District of California Local Rules via the Court's ECF system.

8

9

10

11   Date        October 10, 2013                    /s/ Mark Lyon

12                                                   Mark Lyon

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28