# EXHIBIT WW

Case5:12-cv-00630-LHK Document177 Filed05/14/12 Page1 of 116

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

***Attorneys for Plaintiff Apple Inc.***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

CASE NO. 12-cv-00630-LHK

**REPLY EXPERT DECLARATION OF DR. TODD C. MOWRY CONCERNING U.S. PATENT NO. 5,946,647**

**<u>Hearing</u>:**
Date:
Time:
Place:
Judge:

REPLY EXPERT DECLARATION OF DR .TODD C. MOWRY CONCERNING U.S. PATENT NO. 5,946,647 – CASE NO. 12-cv-0630-LHK

Gibson, Dunn & Crutcher LLP

Case5:12-cv-00630-LHK Document177-7 Filed05/14/12 Page16 of 116

- Perspective does not "link[] actions to the detected structures." This is true even if Perspective were found to "perform[] actions" within the meaning of claim 1, because Perspective simply associates user profile information to a particular area of the screen, as opposed to any particular "structure" that might appear on the screen.
- Perspective further does not disclose "link[ed] actions" because the events that Dr. Cohen believes to be "actions" are merely gestures that a user must perform on Perspective's screen using a specially designed pen. Such gestures are not "actions" within the meaning of the '647 Patent.
- For similar reasons, Perspective does not disclose "a user interface enabling the selection of a detected structure and a linked action" because simply performing a gesture with a pen over a particular name displayed on Perspective's screen does not constitute "selection" of either a "structure" or an "action" within the meaning of the '647 Patent claims.

**3. Pandit**

25. Pandit was also considered by both the ITC and the PTO during reexamination. The ITC found Pandit did not render claims 1 and 8 invalid, and both the ITC and PTO found that the inventors of the '647 had conceived and reduced to practice the claimed invention before Pandit's priority date. As explained below, I agree that Pandit does not render the '647 patent invalid, and also is not prior art to the '647 patent.

26. Pandit discloses a method and apparatus for recognizing text that has already been marked by a user, associating that text with a predetermined "class", and performing an "operation" based on that class identification. Pandit does not anticipate or render obvious claims 1 and 8 of the '647 Patent for at least the following reasons:

- First, Pandit is not prior art. Based on a declaration submitted in reexamination, the Patent Office found that the inventors and conceived and reduced to practice the claimed invention before Pandit's priority date. *See* Exs. 4; 5, at 3-6. The ITC also found that the inventors and conceived and reduced to practice the claimed invention

before Pandit's priority date. *See* Mowry Original Decl., Ex. 15, at 179; *see also* Ex. 9 (claim chart submitted in the '710 Investigation showing conceptions and reduction to practice).

- Pandit does not disclose "detecting structures" within the meaning of the '647 Patent claims because Pandit requires that a user manually locate and mark, or "accent," any text for which the user wishes to perform an operation. This contrasts with the '647 Patent's use of an analyzer server that automatically finds structures within unstructured data.
- Pandit also does not disclose "detecting structures" within the meaning of the '647 Patent claims because the apparatus disclosed in Pandit operates on only a single piece of text manually identified by a user at any given time. In other words, Pandit does not detect more than one structure in data.
- Pandit does not disclose "a user interface enabling the selection of a detected structure" because Pandit requires that a user manually select text ***before*** Pandit attempts to recognize that text as performing to a particular class. This reverses the steps disclosed in the '647 patent in a material, and critical, way.

**4. Nokia**

27. Nokia's European Patent Publication No. 0 458 563 A2 ("Nokia") does not anticipate or render obvious claims 1 and 8 of the '647 Patent. Nokia discloses a "telephone apparatus" capable of receiving text messages and isolating potential phone numbers that can be transferred to the phone's register for dialing. Nokia does not anticipate or render obvious claims 1 and 8 of the '647 Patent for at least the following reasons:

- Nokia detects only one type of "structure", as that term is taught by the '647 Patent – a phone number. By contrast, the '647 Patent requires that multiple different types of structures must be detected.
- Nokia does not disclose "linking actions to detected structures" as claimed in the '647 Patent. Instead, Nokia teaches that when a user accepts a phone number displayed in a

text message (by pressing a key on the phone's keypad), the phone apparatus eliminates extraneous text surrounding the phone number from the display so that the number is then present both in the phone's display and its register. At that point, a user can initiate a call by additionally pressing a button on his or her telephone. Because this activity is, essentially, simply cutting and pasting a telephone number from a text message into the telephone's register, it does not involve "linking" any actions to phone numbers, or to any other piece of data that might be construed as a "detected structure". For similar reasons, Dr. Cohen's reliance on Nokia's editing or storing of telephone numbers does not constitute "linking actions to detected structures."

- Nokia does not disclose "a user interface enabling the selection of . . . a linked action" because the telephone "keys" for calling (or modifying, or storing) a phone number are not linked to that phone number. Dr. Cohen relies on the keys of the Nokia phone for linking, but the keys of the telephone disclosed in Nokia are not linked to telephone numbers (or anything else).

**5. Sidekick**

28. Sidekick, and in particular its so-called "Dialer" function, does not anticipate or render obvious claims 1 and 8 of the '647 Patent. Sidekick's Dialer function highlights phone numbers that appear on Sidekick's screen after the user enters a series of keyboard prompts. After a phone number is highlighted, a user may press "Enter" to begin dialing that number, or may press an arrow key to signal to Sidekick to highlight another phone number on the screen, if one is available. Sidekick does not anticipate or render obvious claims 1 and 8 of the '647 Patent for at least the following reasons:

- Sidekick's Dialer feature does not automatically "detect[] structures in data," as required by claim 1 of the '647 Patent , but rather relies on user prompts to highlight a single phone number appearing on the screen at any given time.
- Even if Sidekick's Dialer could be said to perform automatic detection, it arguably detects only one type of "structure", as that term is claimed in the '647 Patent. By

Case5:12-cv-00630-LHK Document177 Filed05/14/12 Page19 of 116

contrast, the ’647 Patent requires that multiple different types of structures must be detected.

- Sidekick’s Dialer feature links only one purported “action” – dialing – to any “structure” it allegedly recognizes. Claim 1 of the ’647 Patent, by contrast, requires that multiple actions must be linked to multiple detected structures.
- Sidekick’s Dialer feature does not disclose “a user interface enabling the selection of a detected structure and a linked action”, as required by claim 1, because the feature highlights only one phone number at a time; the user is never allowed to “select[]” one structure or one action from a set of structures or actions.
- Sidekick’s Dialer feature does not have a user interface that “highlights detected structures”, as required by claim 8 of the ’647 Patent. Instead, Sidekick only ever highlights a single phone number and prompts the user to command the system to find and highlight the next phone number, if one even exists.

**6. MHonArc + Mosaic Web Browser**

29. Finally, the combination of the Mosaic web browser and MHonArc program, which Dr. Cohen discusses in only a single paragraph of his declaration, does not render claims 1 and 8 obvious. MHonArc combined with Mosaic allowed for the conversion of plain text emails into hypertext markup language (HTML), specifically converting any text appearing in an email header field into an email link, and any text containing certain prefixes (e.g., “http://”, or “ftp://”) into a URL recognizable by an internet browser. The combination of MHonArc and Mosaic does not render obvious claims 1 and 8 of the ’647 Patent for at least the following reasons:

- MHonArc combined with Mosaic does not “detect[]” any “structures” as required in the ’647 Patent. Instead, MHonArc simply converted anything that appeared in an email header (i.e., in the “To” or “From” fields) into an email link. Similarly, MHonArc would convert any text containing specified prefixes (such as “http://”) in the body of an email into a hyperlink. Thus, MHonArc does not “detect” anything, but rather simply converts pre-marked (here by prefixes or by location in a header)

prior art references similar to Sidekick by including in the body of the patent a discussion of the limited functionality of these systems. ’647 Patent at 1:52-65. Indeed, the patentees gave the specific example of systems only able to detect telephone numbers, and only able to allow dialing of those numbers, as prior art systems over which they were inventing. ’647 Patent at 1:52-65. The patent was therefore granted over background art that was functionally identical to Sidekick.[6]

**4. “a user interface enabling the selection of a detected structure and a linked action; and;”**

139. The Sidekick Dialer does not disclose a “user interface enabling the selection of a detected structure and a linked action.”

140. The “selection of a detected structure,” as written in the claim limitation, necessarily requires that a particular detected structure can be chosen from a set of detected structures. Sidekick, however, highlights only one structure at a time. Cohen Decl., ¶ 131. Should the user then hit an arrow key on his or her keyboard, Sidekick will detect the next structure, to the extent one exists in the document. Cohen Decl., ¶ 131. At no point does Sidekick allow a user to select from a multitude of detected structures. This can be seen from the screenshot that Dr. Cohen relies upon in paragraph 131 of his declaration, wherein only one phone number has been identified by Sidekick and highlighted for the user, with no indication that Sidetrack has recognized, or will recognize, a second phone number appearing further down on the screen (beneath the name “John Smith”):

---

[6] Notably, claims 1 and 8, among others, were recently reaffirmed in reexamination as well.



Case5:12-cv-00630-LHK Document177-3 Filed05/14/12 Page59 of 116

**Sidekick Screenshot**

141. Thus, at any given time, the Sidekick system detects and selects only one telephone number, and chooses to present that number to the user. Sidekick Handbook, at 30 ("If you have more than one number on the screen that looks like a phone number, the first one will be chosen."). This, again, is contrary to the teachings of the '647 Patent, in which multiple structures are detected, after which a user can choose any one on which to perform an operation via the user interface. '647 Patent at 3:5-14 ("In a display-type environment, application program interface 230 retrieves the locations in document 210 of the presentation regions for the detected structures from application 167. Application program interface 230 then transmits this location information to user interface 240, which highlights the detected structures, although other presentation mechanisms can be used. User interface 240 enables selection of an identified structure by making the presentation regions mouse-sensitive, i.e. aware when a mouse event such as mouse-down operation is performed while the cursor is over the region.").

142. Similarly, Sidekick does not perform the claim limitation of a "user interface enabling the selection of . . . a linked action." As with the selection of a detected structure, the selection of an action requires that there be a set of multiple actions from which to select. When the Sidekick Dialer recognizes a telephone number, however, only a single operation – using the computer's modem to

208. First, Pandit does not disclose "detecting structures in the data". Rather, than detect structures, Pandit teaches that a user must manually find text that may contain a structure. Indeed, Pandit repeatedly states that the user must "accent," i.e., find/select, the relevant text ***before*** the system operates on that piece of text. *See, e.g.*, '636 Patent, 2:5-8 ("a date 11 in text appearing on a video monitor is ***accented*** (step 21 of FIG. 2) ***for example by shading, underlining or pointing to and clicking on the text***. The invention recognizes the accented text . . . .") (emphasis added); cl. 1 ("A computer-implemented method for processing a selected text, comprising the steps of: (a) recognizing the selected text as belonging to . . .").) Figure 2 of Pandit further makes clear that the user must ***first*** manually select a piece of text before any potential recognition occurs:

**Fig. 2 of Pandit.**

209. In one of the examples, the '636 patent similarly explains that the user must manually find and "accent" otherwise undetected text, as opposed to computer program routines finding and identifying instances of a pattern that have semantic significance:

> "In a preferred embodiment, ***in the event the accented text is not recognized***, i.e., the text is not of the specific type or class recognizable by any of the libraries provided, a menu bar having a list of one or more menu names of default operations can be made to appear (step 27)."

’636 Patent, 3:23-27 (emphasis added).

210. Pandit also consistently states that the system attempts to recognize “***the*** accented text,” not structures *within* the accented text. ‘636 patent, 2:8 (emphasis added); *see also* ’636 patent, 2:33-35 (“The pull-down menus provided by the invention identify the operations and/or programs which relate to the class of text accented, highlighted, or otherwise indicated.”); 3:23-27 (“in the event the accented text is not recognized, i.e., the text is not of the specific type or class recognizable by any of the libraries provided . . .); cl. 1 (“recognizing the selected text as belonging to a predetermined class . . .”); Figs. 1a-f.

211. Pandit therefore teaches a computer-based method that requires, as input, text that has been manually selected by a user. ’636 Patent, claim 1 (“A computer-implemented method for processing ***selected*** text . . .”) (emphasis added). This is precisely the type of background art that the ’647 Patent teaches over. ’647 Patent, 1:19-22 (“visually searching data files or documents to find these structures is laborious and cognitively disruptive, especially if the document is lengthy and hard to follow.”).

212. By contrast, “detecting” as taught by the ’647 Patent involves an analyzer server that automatically locates structures within a body of text. *See, e.g.*, ’647 Patent, 3:61-64 (“Analyzer server 220 comprises one or more pattern analysis units, such as a parser and grammars or a fast string search function and dictionaries, which uses patterns to parse document 210 for recognizable structures.”) Because Pandit does not disclose automatically finding structures within data, the patent does not disclose “detecting structures”.

213. Additionally, Pandit does not disclose “detecting ***structures*** [i.e., more than one structure] in the data.” The plain and ordinary meaning of “structures” in claim 1 requires the analyzer server to be capable of detecting more than one structure in the data. As mentioned in the previous paragraph, Pandit only discloses manually selecting text, wherein the entirety of what is manually selected is either that either recognized or not. ’636 Patent, claim 1 (“A computer-implemented method for processing a selected text, comprising the steps of: (a) recognizing the select text . . .”). Pandit therefore does not detect more than one structure in data as required by claim 1.

214. Pandit also does not disclose "an analyzer server for . . . for linking actions to the detected structures" for at least the reason that structures are not "detected" in text as described in the preceding paragraphs of this section.

**4. "a user interface enabling the selection of a detected structure and a linked action;"**

215. Pandit does not disclose a user interface enabling the selection of a detected structure and a linked action.

216. First, Pandit does not disclose this element of claim 1 for at least the reason that it does not detect structures, as explained above.

217. Pandit also does not disclose "user interface" program routines "enabling the selection of a detected structure." The plain and ordinary meaning of "a user interface enabling the selection of a detected structure" requires the user interface to enable selection of a structure, by the user, ***after*** the structure has already been detected. Pandit, by contrast, reverses these steps. For example, Dr. Cohen cites to one portion of Pandit that discusses the invention "recogniz[ing]" text that the user has previously "accented", or selected. Cohen Decl., ¶ 217 (quoting '636 Patent 2:3-23). Dr. Cohen thus argues that the above element of claim 1 is satisfied when (1) the user first selects undetected text and, (2) ***after*** such selection, structures are detected in that text. This argument makes no sense in view of the plain language of claim 1, which, as explained, requires that the user be able to pick or choose a detected structure ***after*** the system identifies such structures for the user. Pandit, therefore, does not disclose picking or choosing a detected structure but rather accenting (i.e., manually selecting) undetected text.

**5. "an action processor for performing the selected action linked to the selected structure; and"**

218. Pandit does not disclose "action processor" program routines for "performing the selected action linked to the selected structure" because, as explained above, it does not disclose selecting a detected structure.

**6. "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines."**

Case5:12-cv-00630-LHK Document177 Filed05/14/12 Page116 of 116

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 14, 2012

Todd C. Mowry

REPLY EXPERT DECLARATION OF DR .TODD C. MOWRY CONCERNING U.S. PATENT NO. 5,946,647 – CASE NO. 12-cv-0630-LHK

111

Gibson, Dunn & Crutcher LLP