# EXHIBIT 3

| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552)<br>jkrevitt@gibsondunn.com<br>H. MARK LYON (CA SBN 162061)<br>mlyon@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, California 94304-1211<br>Telephone: (650) 849-5300<br>Facsimile: (650) 849-5333 | WILLIAM F. LEE (*pro hac vice*)<br>william.lee@wilmerhale.com<br>WILMER CUTLER PICKERING<br> HALE AND DORR LLP<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000 |
| MICHAEL A. JACOBS (CA SBN 111664)<br>mjacobs@mofo.com<br>RICHARD S.J. HUNG (CA SBN 197425)<br>rhung@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California  94105-2482<br>Telephone:  (415) 268-7000<br>Facsimile:  (415) 268-7522 | MARK D. SELWYN (SBN 244180)<br>mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING<br> HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100 |

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>         Plaintiff,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>         Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>         Counterclaim-Plaintiffs,<br><br>   v.<br><br>APPLE INC., a California corporation,<br><br>         Counterclaim-Defendant. | Civil Action No. 12-CV-00630-LHK (PSG)<br><br>**REBUTTAL EXPERT REPORT OF PROFESSOR ANDREW COCKBURN**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

      b.    **Apple's Commercial Success, the Praise and Acclaim for the Claimed Subject Matter, and Initial Skepticism regarding such Claimed Subject Matter**

250.    Dr. Wigdor claims that Apple "does not attempt to link [the sales of the iPhone generally] to the subject matter of the asserted claim of the '172 Patent." (Wigdor at ¶ 527.) I disagree. Rather, I believe that there is substantial evidence of the link between the subject matter of the asserted claim with the commercial success of the iPhone and its successor iOS products, and particularly in Apple's Supplemental Interrogatory Responses cited by Dr. Wigdor. Moreover, this evidence explains and substantiates the substantial praise and acclaim that was experienced by the first iPhone, which practiced the '172 Patent, and the considerable skepticism that the iPhone had faced. Similarly, and contrary to Dr. Wigdor's assertions (Wigdor at ¶¶ 527-530), the claimed invention of the '172 Patent faced substantial skepticism at its outset, but ultimately experienced significant praise and acclaim.

251.    Preliminarily, in its Supplemental Response to Interrogatory No. 5, Apple cited a substantial amount of evidence of the success of Apple's iPhone and iPad products. As discussed in my opening report, Apple's iPhone and iPad products each practice a claim of the '172 Patent, using many of the features described in the '172 Patent. I have reviewed this evidence, and believe that it, in addition to the information and opinions discussed in the reports of Professor Hauser and Dr. Vellturo, as well as the discussion below demonstrate the

commercial success, consumer approval and demand and industry recognition of the claimed invention of the '172 Patent, and the nonobviousness of such invention.

252. Apple has released a number of products that practice the '172 Patent – all of which have experienced enormous commercial success. These products include the first and iconic iPhone. I have seen information indicating that it took Apple only 74 days to sell one million units of the original iPhone in 2007, only three days to sell one million units of the iPhone 3G, and only three days to sell 1.7 million units of the iPhone 4. (APLNDC630-0000170919-21, APLNDC630-0000170924-25). I understand that the iPad enjoyed similar and immediate success and sales volume upon its initial release. (APLNDC-Y0000238573.) Moreover, I understand that Apple's iPhone and iPad products have continued to enjoy very high volumes of sales. I understand that in 2010, Apple sold nearly 40 million iPhones and over 7 million iPads, while in 2011, Apple sold over 72 million iPhones and over 32 million iPads. See Apple Inc. Form 10-K, Oct. 31, 2012, at 30. In fiscal year 2012, Apple sold over 125 million iPhone units and over 58 million iPad units. See id. at 30. Moreover, net sales of iPhone and related products and services were $80.5 billion in 2012, while net sales of iPad and related products and services were $32.4 billion in 2012. See id. at 31.

253. I understand that the claimed invention of the '172 Patent was a significant and necessary aspect to the commercial success of Apple's iPhone and iPad products. Indeed, I have reviewed materials indicating that, without the autocorrect feature, the iPhone, with its touchscreen keyboard, may not have enjoyed the success that it did. Rather, it was considered critical to enabling Apple's customers to transition from a conventional keyboard to a touchscreen keyboard. For example, Steven Sinclair, an iPhone product marketing manager at Apple, testified that Apple made a "very concerted effort . . . to overcome this belief that a … phone that didn't have a keypad, a physical hard keyboard, was really usable. So we spent a lot of effort to educate consumers about the fact that you could use a touch

-93-

screen and still be very accurate, and the ability to correct and suggest words is a very important element of that capability." (April 4, 2012 Deposition of Steven Sinclair at 65:7-16; see also APLNDC630-0000129659-61.) Both Greg Joswiak and Phil Schiller, senior members of Apple's marketing team, have testified as to their understanding of the key significance of this functionality; Mr. Joswiak testified that, without autocorrect, typing on a glass keyboard would be a "horrible experience" and that he had thus instituted a rule requiring autocorrect and a dictionary for every language, while Mr. Schiller testified that the virtual keyboard added to the ease of use of the iPhone. (July 9, 2013 Deposition of Greg Joswiak at 28:4-9, 177:22-178:6; July 23, 2013 Deposition of Phil Schiller at 311:17-312:5.)

254. Similarly, Apple's public materials confirmed the focus on and the importance of the claimed '172 functionality to the success of the iPhone. For example, in a 2007 iPhone Reviewer's Guide, as well as other materials released to the public explaining the operation of the iPhone and other iOS products, Apple lauds its autocorrect functionality, explaining that it would permit iPhone users to, in "less than a week [] likely be typing faster on iPhone than on any other small keyboard – especially if you trust the intelligence of the keyboard." (APLNDC630-0000128231 at 238; APLNDC630-000056520 at 521; APL-ITC796-0000436056 at 63.)

255. Third parties also agreed, after initially experiencing heavy skepticism about the iPhone (which is consistent with my personal experience that the general public and those of ordinary skill in the art were skeptical about the viability and success of a touch-screen keyboard in 2007, when the iPhone first debuted). (See, e.g., APLNDC-Y0000238313 (noting that "[m]any analysts are skeptical on the appeal of an iPhone"); APLNDC-Y0000238318-19) ("for businesspeople the touch-sensitive screen without a physical button keyboard will be a challenge . . . We've learned and struggled for a few years here figuring out how to make a decent phone. PC guys are not going to just figure this out. They're not

-94-

going to just walk in".) As Greg Joswiak testified, he recalls Walt Mossberg, a prominent Wall Street Journal technology columnist, before the iPhone was released, had publicly stated that he felt Apple had made a mistake in using a glass keyboard, as opposed to a physical (Chiclet) keyboard, in the iPhone. (April 17, 2012 Deposition of Greg Joswiak at 30:2-22.) Mr. Joswiak's memory is bourne out by Mr. Mossberg's subsequent review of the iPhone, in which he stated "The iPhone's most controversial features, the omission of a physical keyboard in favor of a virtual keyboard on the screen, turned out in our tests to be a nonissue, despite our deep initial skepticism." (APLNDC630-0000171814 at 815 (Walter Mossberg, "The iPhone Is a Breakthrough Handheld Computer," All Things D, June 26, 2007).) Mr. Mossberg then went on to explain, as I have discussed above, that the autocorrect functionality was a critical part of this success, stating: "After five days of use, Walt – who did most of the testing for this review – was able to type on it as quickly and accurately as he could on the Palm Treo he has used for years. This was partly because of smart software that corrects typing errors on the fly." *Id.* And others concurred. David Pogue explained that the specific '172 claimed functionality was key to the use of the virtual keyboard: "Tapping the skinny little virtual keys on the screen is frustrating, especially at first. Two things make the job tolerable. First, some very smart software offers to complete words for you, and, when you tap the wrong letter, figures out what word you intended. In both cases, tapping the Space bar accepts its suggestion." (APLNDC630-0000171819 at 21 (David Pogue, "The iPhone Matches Most of Its Hype," New York Times, June 27, 2007; see also APLNDC-Y0000234932; APLNDC0001244544-45 (naming the iPhone the "Invention of the Year"); APLNDC-Y0000147846-49 ("[T]he iPhone is still the most sophisticated, outlook-changing piece of electronics to come along in years."); APLNDCY0000142002-12 (naming the iPhone one of "ten gadgets that defined the decade"). Apple's iPad has also been the subject of high acclaim from industry observers.

## XI. CONCLUSION

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

Dated: September 13, 2013

_____
Andrew Cockburn