# EXHIBIT C-4

**H**

USITC Inv. No. 337-TA-796, USITC Order No. 16, 2012 WL 754088 (U.S.Intern.Trade Com'n)

USITC Inv. No. 337-TA-796, Order No. 16

United States International Trade Commission (U.S.I.T.C.)

**\*1** Administrative Law Judge Order

IN THE MATTER OF CERTAIN ELECTRONIC DIGITAL MEDIA DEVICES AND COMPONENTS THEREOF
ORDER NO. 16: CONSTRUING TERMS OF THE ASSERTED PATENTS

USITC Inv. No. 337-TA-796

March 6, 2012

The claim terms construed in this Order are done so for the purposes of this Investigation. Hereafter, discovery and briefing in this Investigation shall be governed by the construction of the claim terms in this Order. Those terms not in dispute need not be construed. *See Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1323 (Fed. Cir. 2004) (noting that the administrative law judge need only construe disputed claim terms) Any claim terms not discussed herein shall be deemed undisputed and shall be interpreted by the undersigned in accordance with "their ordinary meaning as viewed by one of ordinary skill in the art." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003), cert. denied, 540 U.S. 1073 (2003).

**Table of Abbreviations**

| | |
|---|---|
| CMIB | Complainant's Initial Markman Brief |
| CMRB | Complainant's Reply Markman Brief |
| CMSB | Complainant's Supplemental Markman Brief |
| RMIB | Respondents' Initial Markman Brief |
| RMRB | Respondents' Reply Markman Brief |
| RMSB | Respondents' Supplemental Markman Brief |
| SMIB | Staff's Initial Markman Brief |
| SMRB | Staff's Reply Markman Brief |
| SMSB | Staff Supplemental Markman Brief |
| Tr. | Transcript of the Markman Hearing |

**Table of Contents**

**I. INTRODUCTION**

**II. RELEVANT LAW**

**\*2 III. THE '949 PATENT**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**A. Overview**
**B. Ordinary Skill In The Art**
**C. Undisputed Claim Terms**
    **1. "next item heuristic" / "next item command"**
    **2. "two-dimensional screen translation"**
    **3. "vertical screen scrolling"**
    **4. "based on an angle of initial movement"**
**D. Disputed Claim Terms**
    **1. "heuristic"**
**2. "one or more heuristics"**

**IV. THE '922 PATENT**
    **A. Overview**
    **B. Ordinary Skill In The Art**
    **C. Undisputed Claim Terms**
        **1. "translucent image"**
        **2. "receiving input in said displayed base image"**
        **3. "selectably active"**
        **4. "feature of interest"**
        **5. "partially visible"**
        **6. "said base image is active to receive user inputs"**
    **D. Disputed Claim Terms**
        **1. "image operation"**

**V. THE '533 PATENT**
    **A. Overview**
    **B. Ordinary Skill In The Art**
    **C. Undisputed Claim Terms**
        **1. "cantilevered push button"**
        **2. "pivots"**
        **3. "dome button type electrical contact"**
        **4. "first distal end" / "second distal end"**
        **5. "disposed about an exterior surface"**
        **6. "fulcrum"**
        **7. "substantially rigid"**
    **D. Disputed Claim Terms**
        **1. "actuated simultaneously" / "simultaneous actuation"**

**VI. THE '697 PATENT**
    **A. Overview**
    **B. Undisputed Claim Terms**
        **1. "detection circuitry"**
        **2. "control circuitry"**
        **3. "debris"**
        **4. "detect contact"**
        **5. "communicate with"**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

      6. "signal path"
      7. "gap in the signal path"
      8. "detect signal"
      9. "first receptacle contact"
   C. Disputed Claim Terms

VII. THE '501 PATENT
   A. Overview
   B. Undisputed Claim Terms
      1. "CODEC circuitry"
      2. "microphone detection circuitry"
      3. "switch activation event"
      4. "HEADSET DETECT signal"
      5. "left connector"
      6. "right connector"
   C. Disputed Claim Terms

## I. INTRODUCTION

By publication of notice in the Federal Register, this Investigation was instituted by the Commission on August 5, 2011, to determine whether certain electronic digital media devices and components thereof infringe one or more of claims 1, 3-6, and 9-20 of U.S. Patent No. 7,479,949 ("the '949 patent"); claims 29-35 of U.S. Patent No. RE41,922 ("the '922 patent"); claims 1, 4, 7, 9, 11, 12, 15-17, 19, and 20 of U.S. Patent No. 7,863,533 ("the '533 patent"); claims 1-3, 11-16, and 21-27 of U.S. Patent No. 7,789,697 ("the ' 697 patent"); claims 1-4 and 8 of U.S. Patent No. 7,912,501 ("the '501 patent"); the claim of U.S. Patent No. D558,757 ("the '757 patent"); and the claim of U.S. Patent No. D618,678 ("the '678 patent"), and whether an industry in the United States exists as required by subsection (a)(2) of section 337. 76 Fed. Reg. 47610 (August 5, 2011.)The Complainant is Apple, Inc. ("Apple"). The Respondents are Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America ("Samsung"). The Commission Investigative Staff ("Staff") is also a party. *Id.*

**\*3** On November 21-22, 2011, a Markman hearing was held in this Investigation. In connection with the Markman hearing, the parties submitted a joint proposed claim construction chart outlining their proposed constructions. The joint proposed claim construction chart is attached hereto as Appendix A.

## II. RELEVANT LAW

"An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*) (internal citations omitted), *aff'd*, 517 U.S. 370 (1996). Claim construction is a "matter of law exclusively for the court."*Id.* at 970-71. "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims."Embrex, *Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000).

Claim construction focuses on the intrinsic evidence, which consists of the claims themselves, the specification, and the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*); *see also Markman*, 52 F.3d at 979. As the Federal Circuit in *Phillips* explained, courts must analyze each of these components to determine the "ordinary and customary meaning of a claim term" as understood by a person of ordinary skill in art at the time of the invention. 415 F.3d at 1313. "Such intrinsic evidence is the most significant source of the legally operative meaning of dis-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

puted claim language."*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004))."Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claims terms."*Id.* at 1314; *see also Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to "'particularly point [] out and distinctly claim [] the subject matter which the patentee regards as his invention."). The context in which a term is used in an asserted claim can be ""highly instructive." *Phillips*, 415 F.3d at 1314. Additionally, other claims in the same patent, asserted or unasserted, may also provide guidance as to the meaning of a claim term. *Id.*

*4 The specification "is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term."*Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996))."[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."*Id.* at 1316. "In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor."*Id.* As a general rule, however, the particular examples or embodiments discussed in the specification are not to be read into the claims as limitations. *Id.* at 1323. In the end, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be ... the correct construction."*Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

In addition to the claims and the specification, the prosecution history should be examined, if in evidence. *Id.* at 1317; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). The prosecution history can "often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317; *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.").

When the intrinsic evidence does not establish the meaning of a claim, then extrinsic evidence (*i.e.*, all evidence external to the patent and the prosecution history, including dictionaries, inventor testimony, expert testimony, and learned treatises) may be considered. *Phillips*, 415 F.3d at 1317. Extrinsic evidence is generally viewed as less reliable than the patent itself and its prosecution history in determining how to define claim terms. *Id.* at 1317. "The court may receive extrinsic evidence to educate itself about the invention and the relevant technology, but the court may not use extrinsic evidence to arrive at a claim construction that is clearly at odds with the construction mandated by the intrinsic evidence."*Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999).

If, after a review of the intrinsic and extrinsic evidence, a claim term remains ambiguous, the claim should be construed so as to maintain its validity. *Phillips*, 415 F.3d at 1327. Claims, however, cannot be judicially rewritten in order to fulfill the axiom of preserving their validity. *See Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999). Thus, "if the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then the axiom does not apply and the claim is simply invalid."*Id.*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

## III. THE '949 PATENT

### A. Overview

**\*5** The '949 patent is titled "Touch Screen Device, Method, and Graphical User Interface for Determining Commands by Applying Heuristics." The '949 patent issued on January 20, 2009, to named inventors Steven P. Jobs, Scott Forstall, Greg Christie, Stephen O. Lemay, Scott Herz, Marcel van Os, Bas Ording, Gregory Novick, Wayne C. Westerman, Imran Chaudhri, Patrick Lee Coffman, Kenneth Kocienda, Nitin K. Ganatra, Freddy Allen Anzures, Jeremy A. Wyld, Jeffrey Bush, Michael Matas, Paul D. Marcos, Charles J. Pisula, Virgil Scott King, Chris Blumenberg, Francisco Ryan Tolmasky, Richard Williamson, Andre M. J. Boule, and Henri C. Lamiraux and was assigned to Apple Inc. The ' 949 patent has 20 claims, claims 1, 3-6 and 9-20 of which are asserted against the Respondent. Claims 1, 11 and 17 are independent claims. Claims 3-6, 9-10, 12-16 and 18-20 are dependent claims. These claims read as follows (with the disputed terms highlighted in bold):

1. A computing device, comprising: a touch screen display; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including: instructions for detecting one or more finger contacts with the touch screen display; instructions for applying **one or more heuristics** to the one or more finger contacts to determine a command for the device; and instructions for processing the command; wherein the **one or more heuristics** comprise: a vertical screen scrolling **heuristic** for determining that the one or more finger contacts correspond to a one-dimensional vertical screen scrolling command rather than a two-dimensional screen translation command based on an angle of initial movement of a finger contact with respect to the touch screen display; a two-dimensional screen translation **heuristic** for determining that the one or more finger contacts correspond to the two-dimensional screen translation command rather than the one-dimensional vertical screen scrolling command based on the angle of initial movement of the finger contact with respect to the touch screen display; and a next item **heuristic** for determining that the one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items.

3. The computing device of claim 1, wherein the **one or more heuristics** include a **heuristic** for determining which user interface object is selected when two user interface objects have overlapping hit regions.

4. The computing device of claim 1, wherein, in one **heuristic** of the **one or more heuristics**, a contact comprising a finger swipe gesture that initially moves within a predetermined angle of being perfectly vertical with respect to the touch screen display corresponds to the one-dimensional vertical screen scrolling command.

**\*6** 5. The computing device of claim 1, wherein, in one **heuristic** of the **one or more heuristics**, a contact comprising a moving finger gesture that initially moves within a predefined range of angles corresponds to the two-dimensional screen translation command.

6. The computing device of claim 1, wherein, in one **heuristic** of the **one or more heuristics**, a contact comprising a finger swipe gesture that initially moves within a predetermined angle of being perfectly horizontal with respect to the touch screen display corresponds to a one-dimensional horizontal screen scrolling command rather than the two-dimensional screen translation command.

9. The computing device of claim 1, including: instructions for detecting one or more first finger contacts with the touch screen display while a web browser application is displayed on the touch screen display; instructions for applying a first set of **heuristics** for the web browser application to the one or more first finger contacts to determine a first command for the device; and instructions for processing the first command; wherein the first set of **heuristics** comprises: the vertical screen scrolling **heuristic**; and the two-dimensional screen translation **heuristic**; and instructions for detecting one or more second finger contacts with the touch screen display while a photo album application is displayed on the touch screen display; instructions for applying a second set of **heuristics** for the photo album application to the one or more second finger contacts to determine a second command for the device; and instructions

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

for processing the second command; wherein the second set of **heuristics** comprises: the next item **heuristic**, wherein the respective item in the set of items is a respective image in a set of images; and a **heuristic** for determining that the one or more second finger contacts correspond to a command to transition from displaying the respective image in the set of images to displaying a previous image in the set of images.

10. The computing device of claim 9, wherein the first set of **heuristics** comprises a **heuristic** for determining that the one or more first finger contacts correspond to a one-dimensional horizontal screen scrolling command rather than the two-dimensional screen translation command based on the angle of initial movement of the finger contact with respect to the touch screen display.

11. A computer-implemented method, comprising: at a computing device with a touch screen display, detecting one or more finger contacts with the touch screen display; applying **one or more heuristics** to the one or more finger contacts to determine a command for the device; and processing the command; wherein the **one or more heuristics** comprise: a vertical screen scrolling **heuristic** for determining that the one or more finger contacts correspond to a one-dimensional vertical screen scrolling command rather than a two-dimensional screen translation command based on an angle of initial movement of a finger contact with respect to the touch screen display; a two-dimensional screen translation **heuristic** for determining that the one or more finger contacts correspond to the two-dimensional screen translation command rather than the one-dimensional vertical screen scrolling command based on the angle of initial movement of the finger contact with respect to the touch screen display; and a next item **heuristic** for determining that the one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items.

**\*7** 12. The computer-implemented method of claim 11, including: while displaying a web browser application, detecting one or more first finger contacts with the touch screen display; applying a first set of **heuristics** for the web browser application to the one or more first finger contacts to determine a first command for the device; and processing the first command; wherein the first set of **heuristics** comprises: the vertical screen scrolling **heuristic**; and the two-dimensional screen translation **heuristic**; and while displaying a photo album application, detecting one or more second finger contacts with the touch screen display; applying a second set of **heuristics** for the photo album application to the one or more second finger contacts to determine a second command for the device; and processing the second command; wherein the second set of **heuristics** comprises: the next item **heuristic**, wherein the respective item in the set of items is a respective image in a set of images; and a **heuristic** for determining that the one or more second finger contacts correspond to a command to transition from displaying the respective image in the set of images to displaying a previous image in the set of images.

13. The computer-implemented method of claim 12, wherein the first set of **heuristics** comprises a **heuristic** for determining that the one or more first finger contacts correspond to a one-dimensional horizontal screen scrolling command rather than the two-dimensional screen translation command based on the angle of initial movement of the finger contact with respect to the touch screen display.

14. The computer-implemented method of claim 11, wherein, in one **heuristic** of the **one or more heuristics**, a contact comprising a finger swipe gesture that initially moves within a predetermined angle of being perfectly vertical with respect to the touch screen display corresponds to the one-dimensional vertical screen scrolling command.

15. The computer-implemented method of claim 11, wherein, in one **heuristic** of the **one or more heuristics**, a contact comprising a moving finger gesture that initially moves within a predefined range of angles corresponds to the two-dimensional screen translation command.

16. The computer-implemented method of claim 11, wherein, in one **heuristic** of the **one or more heuristics**, a contact comprising a finger swipe gesture that initially moves within a predetermined angle of being perfectly horizontal with respect to the touch screen display corresponds to a one-dimensional horizontal screen scrolling command rather than the two-dimensional screen translation command.

17. A computer readable storage medium having stored therein instructions, which when executed by a device with a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

touch screen display, cause the device to: detect one or more finger contacts with the touch screen display; apply **one or more heuristics** to the one or more finger contacts to determine a command for the device; and process the command; wherein the **one or more heuristics** comprise: a vertical screen scrolling **heuristic** for determining that the one or more finger contacts correspond to a one-dimensional vertical screen scrolling command rather than a two-dimensional screen translation command based on an angle of initial movement of a finger contact with respect to the touch screen display; a two-dimensional screen translation **heuristic** for determining that the one or more finger contacts correspond to the two-dimensional screen translation command rather than the one-dimensional vertical screen scrolling command based on the angle of initial movement of the finger contact with respect to the touch screen display; and a next item **heuristic** for determining that the one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items.

**\*8** 18. The computer readable storage medium of claim 17, wherein the computer readable medium has stored therein instructions, which when executed by a device with a touch screen display, cause the device to: while displaying a web browser application, detect one or more first finger contacts with the touch screen display; apply a first set of **heuristics** for the web browser application to the one or more first finger contacts to determine a first command for the device; and process the first command; wherein the first set of **heuristics** comprises: the vertical screen scrolling **heuristic**; and the two-dimensional screen translation **heuristic**; and while displaying a photo album application, detect one or more second finger contacts with the touch screen display; apply a second set of **heuristics** for the photo album application to the one or more second finger contacts to determine a second command for the device; and process the second command; wherein the second set of **heuristics** comprises: the next item **heuristic**, wherein the respective item in the set of items is a respective image in a set of images; and a **heuristic** for determining that the one or more second finger contacts correspond to a command to transition from displaying the respective image in the set of images to displaying a previous image in the set of images.

19. The computer readable storage medium of claim 17, wherein, in one **heuristic** of the **one or more heuristics**, a contact comprising a finger swipe gesture that initially moves within a predetermined angle of being perfectly vertical with respect to the touch screen display corresponds to the one-dimensional vertical screen scrolling command.

20. The computer readable storage medium of claim 17, wherein, in one **heuristic** of **the one or more heuristics**, a contact comprising a moving finger gesture that initially moves within a predefined range of angles corresponds to the two-dimensional screen translation command.

## B. Ordinary Skill In The Art

Apple does not address the level of ordinary skill in the art in its Markman briefs. Samsung argues a person of ordinary skill in the art relevant to the '949 patent at the time of the alleged invention, has at least a Bachelor's degree in computer science or a related field, and either (1) a Master's degree or higher in computer science or a related field with an emphasis on human-computer interaction, or (2) two to three years experience in the field of user interface design for computers or mobile devices. (RMIB, Ex. A (Kreitzberg Dec.) at ¶ 15.)

There apparently being no dispute, I find a person of ordinary skill in the art relevant to the '949 patent has at least a Bachelor's degree in computer science or a related field, and either (1) a Master's degree or higher in computer science or a related field with an emphasis on human-computer interaction, or (2) two to three years experience in the field of user interface design for computers or mobile devices.

## C. Undisputed Claim Terms

### 1. "next item heuristic" / "next item command"

**\*9** The parties agree that the terms "next item heuristic" and "next item command" do not require construction and should be accorded their plain and ordinary meaning.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

### 2. "two-dimensional screen translation"

The parties agree that the proper construction of the term "two-dimensional screen translation" is "movement of screen content in two dimensions."

Accordingly, I construe the term "two-dimensional screen translation" to mean "movement of screen content in two dimensions."

### 3. "vertical screen scrolling"

The parties agree that the proper construction of the term "vertical screen scrolling" is "movement of screen content in the vertical direction."

Accordingly, I construe the term "vertical screen scrolling" to mean "movement of screen content in the vertical direction."

### 4. "based on an angle of initial movement"

The parties agree that the term "based on an angle of initial movement" does not require construction and should be accorded its plain and ordinary meaning.

### D. Disputed Claim Terms

### 1. "heuristic"

The parties dispute the proper construction of the term "heuristic," which appears in independent claims 1, 11, and 17, as well as dependent claims 2-3, 6-10, 12-16, 18-20, of the '949 patent. The parties construe the term """"""heuristic" as follows:

| Apple | Samsung | Staff |
| --- | --- | --- |
| One or more rules to be applied to data to assist in drawing inferences from that data | Indefinite | One or more rules to be applied to data to assist in drawing inferences from that data |

Apple asserts that the term "heuristic" is defined within the patent's intrinsic evidence as a rule used to translate imprecise data into a precise command. (CMIB at 7.) Specifically, Apple argues that the claims define ""heuristic" as a rule for drawing an inference from the data, or a user's finger contact, and applying the appropriate command. (*Id.* at 8.) Additionally, Apple argues that the specification elaborates on the definition of "heuristic" by further stating "heuristics are used to translate imprecise finger gestures into actions desired by the user." (*Id.* at 8 (citing '949 patent at 109:50-51).) Apple also cites specific rules listed in the '949 specification as examples of a heuristic. (*Id.* at 9.)

**\*10** Samsung argues that the term "heuristic" is indefinite under 35 U.S.C. § 112 ¶ 2. (RMIB at 35.) Samsung argues that the claim only recites heuristic functionally without defining the algorithm for the heuristic. (*Id.* at 34.) Additionally, Samsung argues that heuristic is indefinite, because the term is a means-plus-function limitation and the specification provides no supporting structure. (*Id.* at 36.) Samsung further argues that heuristic is not limited in scope by the '949 specification or prosecution history. (*Id.*)

The Staff agrees with Apple and contends that the '949 claims provide detailed descriptions of heuristics involved in the invention. (SMIB at 6.) The Staff contends that the functional examples of heuristics defined within the claims provide one of ordinary skill in the art with the meaning of the term heuristic. (*Id.* at 7.) The Staff also contends that Samsung's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

indefiniteness argument is misplaced, because the exemplary embodiments in the specification and claims allow one of ordinary skill in the art to appreciate the claimed subject matter. (*Id.* at 9.)

Based on the intrinsic evidence, including the claims, specification and prosecution history, I find for the reasons discussed below that properly construed the term "heuristic" means "one or more rules to be applied to data to assist in drawing inferences from that data."

First, the language of the claims suggests that a heuristic is one or more rules applied to data that assist in drawing inferences from that data. Claim 1 includes several examples of heuristics, including:

> a vertical screen scrolling heuristic for determining that the one or more finger contacts correspond to a one-dimensional vertical screen scrolling command rather than a two-dimensional screen translation command based on an angle of initial movement of a finger contact with respect to the touch screen display;
>
> a two-dimensional screen translation heuristic for determining that the one or more finger contacts correspond to the two-dimensional screen translation command rather than the one-dimensional vertical screen scrolling command based on the angle of initial movement of the finger contact with respect to the touch screen display; and
>
> a next item heuristic for determining that the one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items.

('949 patent, claim 1.) Each of these examples describes a rule used to infer a user's intention based on the user's finger movement. In each example, the heuristic performs a different function based on the direction of the finger movement. Thus, in the claims, a heuristic is described in light of the function accomplished by the heuristic. Accordingly, I find the claims support a construction of "heuristic" as "one or more rules to be applied to data to assist in drawing inferences from that data."

**\*11** The specification also suggests that a heuristic is one or more rules applied to data that assist in drawing inferences from that data. For example, '949 patent specification states that "[t]he device applies one or more heuristics to the one or more finger contacts to determine a command for the device."('949 patent at 109:60-62.) Here, the specification equates heuristics to rules used to determine a command based on the user's finger contacts. The specification also defines heuristic through specific examples. (*See Id.* at 64:17-24.) One example heuristic is the vertical screen scrolling command. (*Id.*) This heuristic takes a user's imprecise vertical finger swipe and, if the swipe is within a predetermined angle range, sends a command to vertically scroll the screen. (*Id.*) In this example, the heuristic is the rule applied to the imprecise finger swipe to determine whether the swipe is meant to be a vertical screen scroll command. Thus, I find that the specification also supports a construction of heuristic as one or more rules to be applied to data to assist in drawing inferences from that data.

Neither party relies on the prosecution history to support their proposed construction of the term "heuristic" and I have found nothing therein that would further elucidate the proper meaning of this term. In particular, I note that there is nothing in the prosecution history that cuts against the construction of heuristic suggested by the claims and specification.

The extrinsic evidence also supports a construction of heuristic as one or rules applied to data that assist in drawing inferences from that data. For example, the term "heuristic" is defined in the dictionary as "denoting a rule of thumb for solving a problem without the exhaustive application of an algorithm: a heuristic solution."(CMIB, Ex. 2 (Collins English Dictionary 726 (5th ed. 2000)).)

According to Samsung, heuristic cannot be properly construed and is indefinite under 35 U.S.C. § 112 ¶ 2. I disagree. A claim is indefinite only if it is "insolubly ambiguous" and no narrowing construction can properly be adopted. (*See Exxon Research and Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).) Here, however, the claims and the spe-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

cification clearly define a heuristic. Samsung also argues that the term heuristic is too broad, because the patent does not disclose the exact algorithm for accomplishing the function claimed. A broad term, however, is not impermissible under Section 12, paragraph 2, so long as the term has meaning to one of ordinary skill in the art at the time of the invention ( *i.e.*, a person of ordinary skill would know an algorithm or rule that could accomplish the claimed subject matter). *See Miles Lab, Inc. v. Shandon, Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993). The evidence shows that a person of ordinary skill in the art at the time the invention was made would know an algorithm or rule to use to accomplish the claimed subject matter. (*See* '949 patent at 109:49-110:6.) Therefore, I find ""heuristic" is not indefinite under 35 U.S.C. § 112 ¶ 2.

**\*12** Samsung also argues that the term heuristic is an improper mean-plus-function limitation under 35 U.S.C. § 112 ¶ 6. (RMIB at 36.) Specifically, Samsung argues that the term is purely functional and there is no structural support for the limitation in the specification. (*Id.*) I disagree.

A limitation not using the word "means" is presumed not to be "means-plus-function." *See Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1356 (Fed. Cir. 2006); *see also Iventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1359 (Fed. Cir. 2011). Thus, the term "heuristic" is presumed not be a means-plus-function limitation. Samsung fails to rebut that presumption. Contrary to Samsung's argument, the claim language recites specific structural elements, including "touch screen display," "processors" and "memory." ('949 patent at claim 1.) These structural limitations suggest the claim is not purely function and hence not means-plus-function. Accordingly, I find that the term "heuristic" does not invoke Section 112, paragraph 6.

For the reasons discussed above, I find that based on both the intrinsic and extrinsic evidence that the term "heuristic" is properly construed to mean "one or more rules to be applied to data to assist in drawing inferences from that data."

### 2. "one or more heuristics"
The parties disagree on the proper claim construction for the term "one or more heuristics," which appears in independent claims 1, 11, and 17, as well as dependent claims 2-3, 6-8, 14-17, 19-20, of the '949 patent. The parties construe the term "one or more heuristics" as follows:

| Apple | Samsung | Staff |
|---|---|---|
| No construction required | Indefinite. Alternatively, "A recited set of heuristics" | No construction required in light of proposed construction for heuristics |

Apple asserts that the term "one or more heuristics" does not require construction in light of its proposed construction for "heuristic." (CMIB at 14.) Apple argues that the phrase "one or more" should be accorded its plain and ordinary meaning. (*Id.*) Apple cites the '949 specification in support of its argument. (*Id.* at 15.) In particular, Apple notes that specification of the '949 patent gives three examples of heuristics used by the device: a one dimensional screen scrolling heuristic; a two-dimensional screen translation heuristic; and a next item heuristic. (*Id.*) Apple contends that each of these heuristics demonstrate the "one or more heuristics" term in the claims.

**\*13** Samsung argues that the term "one or more heuristics" is indefinite for the same reasons "heuristic" is indefinite. (RMIB at 37.) However, Samsung argues that, if "heuristic" is not found to be indefinite, then "one or more heuristics" should be construed to mean "a recited set of heuristics." (*Id.*) Samsung relies on the claim language that starts "wherein the one or more heuristics comprise" in support of its argument. (*Id.*) Samsung contends that the '949 patent consistently refers to "one or more heuristics" comprising a set of heuristics and not just one heuristic. (*Id.* at 38.) Additionally, Samsung argues that the set of heuristics are contained within one program. (RMRB at 27.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Staff agrees with Apple's construction and asserts that "one or more heuristics" does not require further construction. (SMIB at 9.) The Staff asserts that "one or more" is easily understood and does not require additional construction when included with "heuristic." (*Id.*)

Based on the intrinsic evidence, including the claims, specification and prosecution history, I find for the reasons discussed below that the term "one or more heuristics" need no further construction and should be accorded its plain and ordinary meaning to one of ordinary skill in the art at the time of the invention."

Beginning with the claims, I note that the language of the claims suggests that the "one or more heuristics" refers to one or more heuristics for accomplishing different operations. ('949 patent at 122:51.) The claim language states "wherein the one or more heuristics comprise: a vertical screen scrolling heuristic...a two-dimensional screen translation heuristic...and a next item heuristic." (*Id.*) While the claim further limits "one or more heuristics" to require at least three heuristics, the phrase "one or more heuristics" alone does not require a set of at least three heuristics. (*Id.*) Contrary to Samsung's argument, there is simply nothing in the language of the claims to suggest that the phrase "one or more heuristics" should be given anything other than its plain and ordinary meaning of "one or more."

The specification also supports this conclusion. (*See e.g.*, '949 patent at 109:60-62.) The specification provides examples of "one or more heuristics" as including "a vertical screen scrolling heuristic," "a two-dimensional screen translation heuristic," and multiple "next item heuristics." (*Id.* at 123:33-67.) Contrary to Samsung's argument, there is nothing in the specification that would require the "one or more heuristics" to be included in a single program. In fact, the specification clearly discloses other embodiments of the invention where the one or more heuristics are in a plurality of different programs. (*Id.*) Thus, I find nothing in the specification to insinuate that the term """one or more heuristic" should be construed outside of its plain and ordinary meaning.

**\*14** Neither party relies on the prosecution history in support of their construction of "one or more heuristic" and having examined the prosecution history I too find nothing in the prosecution history that aids in the proper construction of the limitation. I also note that I found nothing it the prosecution history that would cut against adopting the plain and ordinary meaning of the term.

Samsung argues that the phrase "one or more heuristics" cannot be properly construed, because "heuristic" is indefinite under 35 U.S.C. § 112 ¶ 2. However, I have already found hereinabove that the term "heuristic" is not indefinite. Therefore, I find Samsung's argument not persuasive. Accordingly, I find that in light of construction of "heuristic," the limitation "one or more heuristics" is not indefinite under Section 112, paragraph 2.

Samsung argues in the alternative that if the term "heuristic" is found to be definite, that the phrase, "one or more heuristics" should be construed as "a recited set of heuristics." (RMIB at 37.) I find that Samsung's proposed construction improperly limits the scope of the phrase and is not supported by the claims, specification or prosecution history. Contrary to Samsung's argument, the examples of heuristics found in claim 1 after the language "one or more heuristics comprising" do not require the phrase "one or more heuristics" to be limited to the recited set of examples. As previously discussed, there is nothing in the claim language or specification to suggest that the phrase "one or more heuristics" should be accorded anything other than its plain and ordinary meaning.

For the reasons discussed above, I find that based on the intrinsic evidence that the phrase "one or more heuristics" should be given its plain and ordinary meaning. I find no further construction is necessary.

## IV. THE '922 PATENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

## A. Overview

The '922 patent is titled "Method and Apparatus for Providing Translucent Images on a Computer Display." The '922 patent issued on November 9, 2010, to named inventors Michael L. Gough, Joseph J. MacDougald, Gina D. Venolia, Thomas S. Gilley, Greg M. Robbins, Daniel J. Hansen, Jr., and Abhay Oswal and was assigned to Apple Inc. The '922 patent has 35 claims, claims 29-35 of which are asserted against Samsung in this Investigation. Claims 29, 31 and 33 are independent claims. Claims 30, 32 and 34-35 are dependent claims. These claims read as follows (with the disputed terms highlighted in **bold**):

> 29. A method for displaying images on a display screen of an electronic device, comprising the steps of: displaying a base image on a display screen of the electronic device; and displaying a translucent image on said screen such that portions of said base image which are covered by said translucent image are at least partially visible through said translucent image, wherein said translucent image and said base image are selectably active to receive user input and the base image remains at least partially covered by said translucent image even when selected.

> **\*15** 30. A method as recited in claim 29, wherein the electronic device is a handheld device.

> 31. A method of performing **image operations** in an electronic device, including the steps of: presenting a first selected image with respect to which **image operations** are desired, producing a translucent image effective for overlapping at least a portion of said first selected image, wherein said translucent image contains at least one feature of interest, and conducting an **image operation** on said first selected image using said feature of interest while the translucent image overlaps at least a portion of the first selected image.

> 32. A method as recited in claim 31, wherein the electronic device is a handheld device.

> 33. A method for displaying images on a display screen of an electronic device, comprising the steps of: displaying a base image on a display screen of said electronic device; displaying a translucent image on said screen such that portions of said base image which are covered by said translucent image are at least partially visible through said translucent image; and receiving input in said displayed base image while said base image remains at least partially covered by said translucent image.

> 34. A method as recited in claim 33, wherein said base image is active to receive user inputs.

> 35. A method as recited in claim 33, wherein the electronic device is a handheld device.

## B. Ordinary Skill In The Art

Apple does not address the level of ordinary skill in the art relevant to the '922 patent in its Markman briefs.

Samsung argues a person of ordinary skill in the art relevant to the '922 Patent at the time of the alleged invention is one having at least a Bachelor's degree in computer science or related field and either (1) an advanced degree with an emphasis on human-computer interaction or a related field, or (2) three to five years of experience, including programming in a windowing graphical user interface, with a basic understanding of how graphics are rendered and displayed. (RMIB, Ex. A (Kreitzberg Dec.) at ¶ 48.)

There apparently being no dispute, I find that a person of ordinary skill in the art relevant to the '922 at the time of the invention would have at least a Bachelor's degree in computer science or related field and either: (1) an advanced degree with an emphasis on human-computer interaction or a related field; or (2) three to five years of experience, including programming in a windowing graphical user interface, with a basic understanding of how graphics are rendered and displayed.

## C. Undisputed Claim Terms

### 1. "translucent image"

The parties agree that properly construed the term "translucent image" means "an image that can be seen but can also be

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

seen through."

Accordingly, I construe the term "translucent image" to mean "an image that can be seen but can also be seen through."

**2. "receiving input in said displayed base image"**
**\*16** The parties agree that the phrase "receiving input in said displayed base image" does not require construction and should be accorded its plain and ordinary meaning.

**3. "selectably active"**
The parties agree that the term "selectably active" does not require construction and should be accorded its plain and ordinary meaning.

**4. "feature of interest"**
The parties agree that the term "feature of interest" does not require construction and should be accorded its plain and ordinary meaning.

**5. "partially visible"**
The parties agree that the phrase "partially visible" does not require construction and should be accorded its plain and ordinary meaning.

**6. "said base image is active to receive user inputs"**
The parties argue that phrase "said base image is active to receive user inputs" is properly construed to mean "the base image is active to accept user input."

Accordingly, I construe the phrase "said base image is active to receive user inputs" to mean" the "base image is active to accept user input."

**D. Disputed Claim Terms**

**1. "image operation"**

| Apple | Samsung | Staff |
|---|---|---|
| "Any kind of operation conducted on an image or window" | "Creating or modifying an image" | "Any kind of operation conducted on an image or window" |

Apple argues that the definition of image operation is explicitly stated in the specification. (CMIB at 27.) Apple argues that the specification defines the "image operation" as "any kind of operation conducted on an image or window."(*Id.*) Additionally, Apple argues the specification gives examples of image operations, including "[d]rawing an image, placing an image, or for that matter modifying, moving, expanding, or changing an image or window."(*Id.*) Thus, Apple argues the patentee explicitly defined the term "image operation" to be "any kind of operation conducted on an image or window" and that definition must control. (CMSB at 3.) Additionally, Apple contends that the prosecution history supports its proposed construction. (*Id.* at 4.) In overcoming the applied prior art during prosecution, Apple argues that it relied on the requirement that an operation be conducted "on" an image or window. (*Id.* at 6.) Apple argues that selecting an image is not within the scope of image operation as defined by the specification, because it does not conduct an operation "on" the image. (*Id.* at 7.) Therefore, Apple asserts that the proper construction for "image operation" is "any kind of operation conducted on an image or window."

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*17** Samsung argues that the proper construction of "image operation" requires "creating or modifying an image." (RMSB at 3.) Samsung argues that the patentee did not act as his own lexicographer, because the sentence relied on by Apple for the definition of image operation is too abstract. (*Id.* at 4.) Thus, according to Samsung, the entire specification must be considered in determining the proper construction of the term. (*Id.*) Samsung also argues that the prosecution history further limits the construction of "image operation." (*Id* at 6.) During prosecution, Samsung asserts that Apple argued to the patent examiner to overcome the applied prior art that image operation must include ""creating or modifying an image." Samsung argues that Apple required the image operation to create a new image file or modify an existing image file saved in memory. (*Id.* at 7.) Relying on the intrinsic record as a whole, Samsung argues that properly construed the term "image operation" requires creating or modifying an image.

The Staff agrees with Apple and asserts that "image operation" is "any kind of operation conducted on an image or window."(SMSB at 5.) The Staff asserts that this construction is fully supported by the intrinsic record. (*Id.*) The Staff argues that Apple expressly defined "image operation" in the specification and that definition must control. (*Id.* at 6.) The Staff also argues that the specification provides examples that further support its construction of "image operation." (*Id.*) The Staff asserts that each of the examples in the specification comport with a construction of image operation as "any kind of operation conducted on an image or window," because each example specifically requires the operation be conducted "on" the image. (*Id.*) The Staff argues that the prosecution history further supports its proposed construction and does not limit the definition provided in the specification. (*Id.*) The Staff argues Apple consistently relied on the definition of image operation as "any kind of operation conducted on an image or window" to overcome the applied prior art. (*Id.*) Thus, the Staff asserts that the proper construction of "image operation" is "any kind of operation conducted on an image or window."

Based on the intrinsic evidence, including the claims, specification and prosecution history, I find for the reasons discussed below that properly construed the term "image operation" means "any kind of operation conducted on an image or window."

First, the language of the claims suggests "image operation" includes any kind of operation conducted on the selected image or window. Specifically, independent claim 31 states "conducting an image operation on said first selected image using said feature of interest while the translucent image overlaps at least a portion of the first selected image."('922 patent at claim 31.) Contrary to Samsung's argument, nothing in the language of the claims suggests that the term "image operation" should include the act of selecting. In fact, Samsung's notion that the term "image operation" should include ""selecting" is flatly contradicted by the express language of the claims, which already requires the image to be selected before conducting the image operation on it. (*Id.*)

**\*18** While the claims suggest that an image operation includes any operation conducted on an image or window, the specification explicitly defines an image operation as such. In particular, the specification states "[i]mage operations can be any kind of operation conducted on an image or window. Drawing an image, placing an image, or for that matter modifying, moving, expanding or changing an image or a window, are considered to be image operations."(*Id.* at 9:53-57.) By expressly defining an image operation in the specification, the patentee acted as his own lexicographer and his definition controls. Notably, each example of an image operation in the specification (*i.e.*, "[d]rawing an image, placing an image, or for that matter modifying, moving, expanding, or changing an image or a window") falls within the scope of the applicant's definition of "image operation" as "any kind of operation conducted on an image or window."

Turning to the prosecution history, I find it too supports a construction of ""image operation" as "any kind of operation conducted on an image or window."During prosecution, in distinguishing the claims over the applied prior art references, Apple described an "image operation" to be an operation "on" an image and argued that "selecting" an image did not

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

meet this definition, because "selecting" was not an operation "on" the image.

Samsung argues that an "image operation" requires "creating or modifying an image." (RMSB at 3.) However, I find this construction improperly limits the claim term and contradicts the construction of image operation suggested by the claims, specification and prosecution history. For example, Samsung's construction would read out the specific image operation examples in the specification, which include "[d]rawing an image, placing an image, or for that matter modifying, moving, expanding, or changing an image or a window."Under Samsung's proposed construction, at least "placing an image" and "moving an image" would not be considered "image operations." Accordingly, I am not persuaded by Samsung's argument.

Equally not persuasive is Samsung's argument regarding the prosecution history. Contrary to Samsung's argument, I find, as discussed above, that the prosecution history supports the construction of "image operation" mandated by the claims and specification. Apple's arguments throughout the prosecution history clearly indicate that "image operation" is an operation "on" an image and that the mere act of selecting an image or window is not an "image operation" as required by the claims.

Samsung's argument that the prosecution history requires an image operation to modify the image saved in memory is also not persuasive. While the proper construction of a claim limitation is determined in light of the claims, specification and prosecution history, the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes."*Philips v. AWH Corp.*, 415 F.3d 1303, 1313, 1317 (Fed. Cir. 2005) (*en banc*). While Apple asserted during prosecution that the Philips reference (European Patent No. 0280582) does not teach the claimed image operations for failing to save the image in memory, this argument was based on distinguishing the hardware system of Philips from the claimed software system. (CMSB, Ex. B at 18.) Therefore, I do not find Apple's statements impact the proper construction of the term "image operation." I find this especially true in light of the clarity provided in the claims and specification regarding the proper construction of the term "image operation."

**\*19** Similarly, I find Samsung's reliance on Apple's statements made to the examiner to overcome a rejection based on the Pike reference (U.S. Patent 4,555,775) do not limit the scope of the term "image operation." Apple's statements distinguishing the claimed invention over the Pike reference were concerned with the selection of the base window and not with the image operation term. (CMSB, Ex. B at 19.) Thus, I do not find Apple's statements to limit the proper construction of the term "image operation" mandated by the claims and specification.

For the reasons discussed above, I find that based on the intrinsic evidence, including in particular the specification and claims, that properly construed the term "image operation" means "any kind of operation conducted on an image or window."

## V. THE '533 PATENT

### A. Overview

The '533 patent is titled "Cantilevered Push Button Having Multiple Contacts and Fulcrums." The '533 patent issued on January 4, 2011, to named inventors Bradley J. Hamel, Tang Yew Tan, Erik Wang and assigned to Apple Inc. The '533 patent has 20 claims, claims 1, 4, 7, 9, 11-12, 15-17, and 19-20 of which are asserted against the Respondent. Claims 1, 11 and 19 are independent claims. Claims 4, 7, 9, 12, 15-17, and 20 are dependent claims. These claims read as follows (with the disputed terms highlighted in **bold**):

> 1. A cantilevered push button adapted for accepting one or more inputs on an electrical or electronic device, comprising: a button top component having a first distal end associated with a first user input and a second distal end opposite said first distal end and associated with a second user input separate from said first user input, wherein said

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

button top component is disposed about an exterior surface of an electrical or electronic device and is accessible to a user, and wherein both of said first and second distal ends can be **actuated simultaneously** by a user during ordinary use of said electrical or electronic device; a first fulcrum located at said first distal end or between said first distal end and the midpoint of said button top component; a second fulcrum located at said second distal end or between said second distal end and said midpoint of said button top component; a first electrical contact associated with said first distal end of said button top component, wherein said button top component pivots about said second fulcrum and said first electrical contact is actuated when a user presses on said first distal end; and a second electrical contact associated with said second distal end of said button top component, wherein said button top component pivots about said first fulcrum and said second electrical contact is actuated when a user presses on said second distal end.

4. The cantilevered push button of claim 1, wherein said button top component is comprised of a substantially rigid material.

**\*20** 7. The cantilevered push button of claim 1, wherein said first and second electrical contacts comprise dome button type electrical contacts.

9. A method as recited in claim 29, wherein the electronic device is a handheld device.

11. An electrical device, comprising: a housing adapted to contain one or more internal electrical device components therein; one or more user interface regions; and a cantilevered push button located at one of said one or more user interface regions and adapted for accepting one or more inputs on said electrical device, wherein said cantilevered push button includes an elongated button top component having a first distal end associated with a first user input and a second distal end opposite said first distal end and associated with a second user input separate from said first user input, wherein said elongated button top component is disposed about an exterior surface of an electrical or electronic device and is accessible to a user, and wherein both of said first and second distal ends can be **actuated simultaneously** by a user during ordinary use of said electrical device, a first fulcrum located at said first distal end or between said first distal end and the midpoint of said elongated button top component, a second fulcrum located at said second distal end or between said second distal end and said midpoint of said elongated button top component; a first electrical contact associated with said first distal end of said elongated button top component, wherein said elongated button top component pivots about said second fulcrum and said first electrical contact is actuated when a user presses on said first distal end, and a second electrical contact associated with said second distal end of said elongated button top component, wherein said elongated button top component pivots about said first fulcrum and said second electrical contact is actuated when a user presses on said second distal end.

12. The electrical device of claim 11, wherein said electrical device comprises an electronic device.

15. The electrical device of claim 11, wherein said elongated button top component is comprised of a substantially rigid material.

16. The electrical device of claim 11, wherein said first and second electrical contacts comprise dome button type electrical contacts.

17. The electrical device of claim 11, wherein said **simultaneous actuation** results in the entire cantilevered push button being pressed inward toward said electrical device.

19. An electronic device, comprising: a housing adapted to contain one or more internal electrical device components therein; a processor located within said housing; one or more user interface regions having one or more user interface components in communication with said processor; and one or more cantilevered push buttons located at [FN1] least one of said one or more user interface regions and adapted for accepting a plurality of inputs on said electronic device, wherein each of said one or more cantilevered push buttons includes an elongated button top component having a first distal end associated with a first user input and a second distal end opposite said first distal end and associated with a second user input separate from said first user input, wherein said elongated button top component is disposed through an opening in said housing, does not contact said housing, and is accessible to a user, a first fulcrum and a second fulcrum about which said elongated button top pivots when actuated by a user, a first elec-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

trical contact associated with said first distal end of said elongated button top component, wherein said elongated button top component pivots about said second fulcrum and said first electrical contact is actuated when a user presses on said first distal end, and a second electrical contact associated with said second distal end of said elongated button top component, wherein said elongated button top component pivots about said first fulcrum and said second electrical contact is actuated when a user presses on said second distal end.

**\*21** 20. The electronic device of claim 19, wherein both of said first and second distal ends can be **actuated simultaneously** by a user during ordinary use of said electronic device.

## B. Ordinary Skill In The Art

Apple does not address the level of ordinary skill in the art in its Markman briefs. Samsung argues a person of ordinary skill in the art relevant to the '533 Patent at the time of the alleged invention would have at least a bachelor's degree in Mechanical Engineering, Mechanical Engineering Technology or a similar field, and one to two years of work experience in the field of Mechanical Engineering design and analysis. (RMIB, Ex. N (Rice Dec.) at ¶ 10.)

There apparently being no dispute, I find that a person of ordinary skill in the art relevant to the '533 patent at the time of the invention would have at least a Bachelor's degree in Mechanical Engineering, Mechanical Engineering Technology or similar field, and one or two years of work experience in the field of Mechanical Engineering design and analysis.

## C. Undisputed Claim Terms

### 1. "cantilevered push button"

The parties agree that the term "cantilevered push button" does not require construction and should be accorded its plain and ordinary meaning.

### 2. "pivots"

The parties agree that properly construed the term "pivots" means "to turn or rotate about a point."

Accordingly, I construe the term "pivots" to mean "to turn or rotate about a point."

### 3. "dome button type electrical contact"

The parties agree that the term "dome button type electrical contact" does not require construction and should be accorded its plain and ordinary meaning.

### 4. "first distal end" / "second distal end"

The parties agree that the terms "first distal end" and "second distal end" do not require construction and should be accorded their plain and ordinary meaning.

### 5. "disposed about an exterior surface"

The parties agree that the phrase "disposed about an exterior surface" does not require construction and should be accorded its plain and ordinary meaning.

### 6. "fulcrum"

The parties agree that the term "fulcrum" is properly construed to mean "a support about which a button may pivot."

Accordingly, I construe the term "fulcrum" to mean "a support about which a button may pivot."

### 7. "substantially rigid"

The parties agree that the term "substantially rigid" does not require construction and should be accorded its plain and or-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

dinary meaning.

**D. Disputed Claim Terms**

**1. "actuated simultaneously" / "simultaneous actuation"**

| Apple | Samsung | Staff |
|-------|---------|-------|
| "Causing the first and second distal ends to move so that more than one contact may be actuated at the same time" | "Caused to move or depressed at the same time" | "Caused to move or depressed at the same time" |

**\*22** Apple argues that "simultaneous actuation" / "actuated simultaneously" is properly construed as "causing the first and second distal ends to move so that more than one contact may be actuated at the same time."(CMSB at 9.) Apple argues that this construction is proper, because the specification discloses that the "respective electrical or electronic device can be designed or programmed to accept and act upon simultaneous inputs from multiple inputs on a single cantilevered button."(*Id.*) Apple also argues that the prosecution history supports its construction. (*Id.* at 10.) Apple argues that during prosecution the patentee amended the claim to require "simultaneous actuation" to overcome a rejection based on U.S. Patent No. 5,584,380 to Naitou and U.S. Patent No. 6,246,019 to Nakamura. (*Id.*) Apple argues that its proposed construction is proper in light of this amendment and its statements to the Examiner about simultaneously actuating the electrical contacts. (*Id.*)

Samsung argues that the terms "simultaneous actuation" and "actuated simultaneously" are properly construed to mean "caused to move or depressed at the same time."Samsung argues that this construction comes directly from the claim language. In particular, Samsung relies on the claim language referring to the distal ends of the "button component" that can be "actuated simultaneously." (RMSB at 10.) Samsung also relies on the specification's description of actuated simultaneously as "both of the first and second distal ends can be actuated simultaneously by a user during ordinary use of the device, and such simultaneous actuation can result in the entire cantilevered push button being pressed inward toward the device."(*Id.* at 11.) Finally, Samsung argues that the prosecution history does not disavow the scope of the terms "simultaneous actuation" and "actuated simultaneously," because the statements relied upon by Apple are statements by the Examiner. (*Id.* at 12.) Samsung also argues that the statements by the patentee were statements about the prior art references and did not limit the scope of the claim or the proper construction of "simultaneous actuation" and "actuated simultaneously." (*Id.*)

The Staff agrees with Samsung arguing that the terms "simultaneous actuation" and "actuated simultaneously" are properly construed as "caused to move or depressed at the same time."(SMSB at 1.) The Staff argues that the claim language explicitly limits "actuated simultaneously" to the distal ends and not the electrical contacts. (*Id.* at 2.) In support for its claim construction, the Staff relies on the additional and separate claim limitation requiring the contacts to be actuated. (*Id.* at 3.) The Staff contends that this limitation demonstrates an intention to limit the terms "simultaneous actuation" and ""actuated simultaneously" to the distal ends and not the contacts. (*Id.*) The Staff also argues that the specification supports its interpretation, noting that the specification indicates that the actuation of the distal ends is distinct from actuation of the contacts. (*Id.*) With regard to the prosecution history, the Staff argues that there is nothing in the prosecution history to indicate a clear disavowal of the claim scope. (*Id.* at 4.) The Staff argues that it is unclear from the prosecution history what was the exact point of distinction that the applicant made to overcome the examiner's rejection of the claims of the '533 patent in view of the Nakamura reference. The Staff argues that since there is no clarity the statements made by the applicant do not represent a clear disavowal of claim scope. (*Id.*)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*23** Based on the intrinsic evidence, including the claims, specification and prosecution history, I find for the reasons discussed below that properly construed the terms "simultaneous actuation" and "actuated simultaneously" means "caused to move or depressed at the same time."

First, the claims suggest the terms "simultaneous actuation" and "actuated simultaneously" should be accorded their plain and ordinary meaning as "caused to move or depressed at the same time."Specifically, independent claim 1 states "both of said first and second distal ends can be actuated simultaneously by a user during ordinary use of said electrical or electronic device."('533 patent at claim 1.) All this claim language requires is that the distal ends are "simultaneously actuated" during ordinary use of the device. Contrary to Apple's argument, there is nothing in the language of the claims to suggest that the terms "simultaneous actuation" and "actuated simultaneously" should be limited to require "the first and second distal ends to move so that more than one contact may be actuated at the same time."(*Id.*)

The specification also suggests that the terms "simultaneous actuation" "and """"""actuated simultaneously" should be given their plain and ordinary meaning as ""caused to move or depressed at the same time." For example, in the specification, "simultaneous actuation" of the distal ends is distinct from """"""simultaneously actuating" the contacts. ('533 patent at 2:40-45, 5:1-4.) While the actuating of the distal ends simultaneously may result in the contacts being simultaneously actuated, the specification clearly differentiates the two acts and thus the specification suggests that the terms """"""simultaneous actuation" and "actuated simultaneously" do not require the contacts be simultaneously actuated.

Turning to the prosecution history, I find nothing therein that suggests that the terms "simultaneous actuation" and "actuated simultaneously" should be given anything other than their plain and ordinary meaning. During prosecution, the patent examiner rejected the claims in view of the Nakamura reference. (CMSB, Ex. C (Office Action Dated June 2, 2010) at 2.) In its traverse of the examiner's rejection, Apple distinguished the claimed invention over the Nakamura reference based on the fact that the claimed invention required the simultaneous actuation of the distal ends, while Nakamura only taught the center depression of the button. (CMSB, Ex. E (Response to Office Action of June 2, 2010) at 9.) Contrary, to Apple's argument, I find nothing in the exchange between the applicant and the examiner to suggest that "actuated simultaneously" and "simultaneous actuation" require "causing the first and second distal ends to move so that more than one contact may be actuated at the same time" and certainly nothing that would amount to a clear disavowal of claim scope.

**\*24** Apple argues that the terms "simultaneous actuation" and "actuated simultaneously" require "causing the first and second distal ends to move so that more than one contact may be actuated at the same time."(CMSB at 9.) However, I find this construction improperly limiting. Contrary to Apple's argument, the prosecution history does not support this construction. During prosecution, the applicant did not clearly disavow the claim's scope so as to limit it to "causing the first and second distal ends to move so that more than one contact may be actuated at the same time."Rather, the applicant distinguished the applied reference by arguing it only taught center depression of the button and not simultaneous actuation of the distal ends. This characterization of the applied prior art reference does not meet the standard of a clear expression of disavowal. Apple also argues that the amendment adding "actuated simultaneously" to the claim resulted in a general disclaimer. However, I find this argument not persuasive, because the "actuated simultaneously" amendment only serves to require the distal ends being moved or depressed at the same time. The amendment does not require the additional limitation of "so that more than one contact may be actuated at the same time."

For the reasons discussed above, I find that based on the intrinsic evidence that the terms "simultaneous actuation" and "actuated simultaneously" are properly construed in accordance with their plain and ordinary meaning as "caused to move or depressed at the same time."

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

## VI. THE '697 PATENT

### A. Overview

The '697 patent is titled "Plug Detection Mechanism." The '697 patent issued on September 7, 2010 to named inventor Hugo Fiennes and assigned to Apple Inc. The '697 patent has 29 claims. Claims 1-3, 11-16, and 21-27 are asserted against the Respondent. Claims 1 and 12 are independent claims. Claims 2-3, 11, 13-16, and 21-27 are dependent claims. These claims read as follows (with the disputed terms highlighted in **bold**):

1. A plug detect apparatus for detecting the presence of a plug, wherein the plug has at least a first plug contact, the plug detect apparatus comprising: a receptacle configured to accept the plug; a first receptacle contact disposed in the receptacle, wherein the first receptacle contact is configured to communicate with the first plug contact; a detect contact disposed in the receptacle relative to the first receptacle contact so that the presence of the plug within the receptacle creates a signal path through the plug and between the detect contact and the first receptacle contact, wherein the detect contact and the first receptacle contact both contact the same first plug contact when the plug is present in the receptacle; and detection circuitry coupled to the detect contact and the first receptacle contact to detect that the signal path is a low or a high impedance path.

\*25 2. The plug detect apparatus of claim 1, wherein the signal path is a low impedance path created by the first receptacle contact and the detect contact.

3. The plug detect apparatus of claim 1, wherein the first receptacle contact is a ground contact.

11. The plug detect apparatus of claim 1, wherein any debris in a space between the detect contact and the first receptacle contact is removed from the space between the detect contact and the first receptacle contact by the plug when the plug is inserted into the receptacle.

12. An electronic device capable of detecting the presence of a plug of an accessory component, wherein the plug includes a first plug contact, the electronic device comprising: a receptacle configured to accept the plug; a first receptacle contact disposed in the receptacle, wherein the first receptacle contact is configured to communicate with the first plug contact; a detect contact disposed in the receptacle relative to the first receptacle contact so that the presence of the plug within the receptacle creates a plug signal path through the plug and between the detect contact and the first receptacle contact, wherein the detect contact and the first receptacle contact both contact the same first plug contact when the plug is present in the receptacle; and detection circuitry coupled to the detect contact and the first receptacle contact to detect that the signal path is a low or a high impedance path.

13. The electronic device of claim 12, wherein the electronic device further comprises: a first input/output component; and control circuitry coupled to the detect contact, wherein the control circuitry is configured to instruct the electronic device to utilize the first input/output component when a detect signal on the detect contact has a first value, and wherein the control circuitry is configured to instruct the electronic device to utilize the accessory component when the detect signal has a second value.

14. The electronic device of claim 13, wherein the plug signal path is configured to make the detect signal have the second value.

15. The plug detect apparatus of claim 12, wherein the plug signal path is a low impedance path.

16. The electronic device of claim 12, wherein the first receptacle contact is one of a ground contact and a functional contact.

21. The plug detect apparatus of claim 2, wherein the first plug contact is a metal and the low impedance path has approximately zero resistance.

22. The electronic device of claim 15, wherein the first plug contact is a metal and the low impedance path has approximately zero resistance.

23. The plug detect apparatus of claim 1, wherein the detection circuitry includes circuitry to detect the presence of the plug by detecting that the signal path is a low impedance path.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

24. The plug detect apparatus of claim 1, wherein the detection circuitry includes circuitry to detect that the plug is not present in the receptacle by detecting that the signal path is a high impedance path caused by a gap in the signal path.

**\*26** 25. The electronic device of claim 12, wherein the detection circuitry includes circuitry to detect the presence of the plug by detecting that the signal path is a low impedance path.

26. The electronic device of claim 12, wherein the detection circuitry includes circuitry to detect that the plug is not present in the receptacle by detecting that the signal path is a high impedance path caused by a gap in the signal path.

27. The electronic device of claim 12, wherein any debris in a space between the detect contact and the first receptacle contact is removed from the space between the detect contact and the first receptacle contact by the plug when the plug is inserted into the receptacle.

## B. Undisputed Claim Terms

### 1. "detection circuitry"

The parties agree that the term "detection circuitry" does not require construction and should be accorded its plain and ordinary meaning.

### 2. "control circuitry"

The parties agree that the term "control circuitry" does not require construction and should be accorded its plain and ordinary meaning.

### 3. "debris"

The parties agree that the term "debris" does not require construction and should be accorded its plain and ordinary meaning.

### 4. "detect contact"

The parties agree that properly construed the term "detect contact" means "a contact in the accessory jack of an electronic device that is used to detect a plug."

Accordingly, I construe the term "detect contract" to mean "a contact in the accessory jack of an electronic device that is used to detect a plug."

### 5. "communicate with"

The parties agree that properly construed the phrase "communicate with" means "establish electrical contact with."

Accordingly, I construe the term "communicate with" to mean "establish electrical contact with."

### 6. "signal path"

The parties agree that the term "signal path" does not require construction and should be accorded its plain and ordinary meaning.

### 7. "gap in the signal path"

The parties agree that properly construed the phrase "gap in the signal path" means "an open circuit in the signal path."

Accordingly, I construe the term "gap in the signal path" to mean "an open circuit in the signal path."

### 8. "detect signal"

The parties agree that properly construed the term "detect signal" means "a signal that indicates presence or absence of a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

plug."

Accordingly, I construe the term "detect signal" to mean "a signal that indicates presence or absence of a plug."

**9. "first receptacle contact"**
**\*27** The parties agree that properly construed the term "first receptacle contact" means "a contact in the receptacle of an electronic device that is different from the detect contact."

Accordingly, I construe the term "first receptacle contact" to mean "a contact in the receptacle of an electronic device that is different from the detect contact."

**C. Disputed Claim Terms**
The parties do not dispute the construction of any claim terms in the '697 patent.

**VII. THE '501 PATENT**

**A. Overview**
The '501 patent is titled "Audio I/O headset plug and plug detection circuitry." The '501 patent issued on March 22, 2011, to named inventors Timothy Johnson and Achim Pantfoerder and assigned to Apple Inc. The '501 patent has 26 claims. Claims 1-4, and 8 are asserted against Samsung. Claim 1 is an independent claim. Claims 2-4, and 8 are dependent claims. These claims read as follows (with the disputed terms highlighted in **bold**):

    1. A system for detecting which type of plug is received by a portable electronic device, the system comprising: a jack constructed to receive a plug selected from at least a microphone type and a non-microphone type, wherein the jack comprises a microphone connector electrically coupled to CODEC circuitry and microphone detection circuitry, a ground connector coupled to a ground source, a right connector coupled to the CODEC circuitry, and a left connector coupled to the CODEC circuitry, and wherein the ground connector is positioned between the microphone connector and either the left connector or the right connector; the microphone detection circuitry operative to: determine whether the received plug is the microphone type or the non-microphone type; and provide a signal indicative of whether the received plug is the microphone type or the non-microphone type.

    2. The system of claim 1, wherein the device is a mobile telephone.

    3. The system of claim 1, wherein the detection circuitry is operative to monitor the microphone connector for a switch activation event.

    4. The system of claim 3, wherein the detection circuitry is operative to change the state of the signal in response to a monitored switch action event.

    8. The system of claim 1, further comprising: a processor electrically coupled to receive at least the signal and a HEADSET DETECT signal.

**B. Undisputed Claim Terms**

**1. "CODEC circuitry"**
The parties agree that the term "CODEC circuitry" is properly construed to mean "coder/decoder capable of converting a digital audio signal into an analog audio signal and capable of converting an analog audio signal into a digital audio signal."

Accordingly, I construe the term "CODEC circuitry" to mean "coder/decoder capable of converting a digital audio signal into an analog audio signal and capable of converting an analog audio signal into a digital audio signal."

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**2. "microphone detection circuitry"**

**\*28** The parties agree that the term "microphone detection circuitry" is properly construed to mean "circuitry that de-termines whether a received plug is a microphone type or a non-microphone type."

Accordingly, I construe the term "microphone detection circuitry" to mean "circuitry that determines whether a received plug is a microphone type or a non-microphone type."

**3. "switch activation event"**

The parties agree that the term "switch activation event" is properly construed to mean "activation of one or more access-ory switches."

Accordingly, I construe the term "switch activation event" to mean "activation of one or more accessory switches."

**4. "HEADSET DETECT signal"**

The parties agree that properly construed the term "HEADSET DETECT signal" means "a signal that indicates whether a plug has been inserted into the jack."

Accordingly, I construe the term "HEADSET DETECT signal" to mean "a signal that indicates whether a plug has been inserted into the jack."

**5. "left connector"**

The parties agree that properly construed the term "left connector" means "a connector that carries an audio signal com-ponent."

Accordingly, I construe the term "left connector" to mean "a connector that carries an audio signal component."

**6. "right connector"**

The parties agree that the term "right connector" is properly construed to mean "a connector that carries an audio signal component."

Accordingly, I construe the term "right connector" to mean "a connector that carries an audio signal component."

**C. Disputed Claim Terms**

The parties do not dispute the construction of any claim terms in the '697 patent.

**SO ORDERED.**

Thomas B. Pender
Administrative Law Judge

FN1. This is as it appears in the patent.

### Appendix A

#### Disputed Terms

| Heuristic | "One or more rules to be ap-plied to data to assist in drawing inferences from that | Indefinite | "One or more rules to be ap-plied to data to assist in drawing inferences from that |
|---|---|---|---|

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | data" | | data" |
|---|---|---|---|
| One or more heuristics | No construction required | Indefinite Alternatively, "A recited set of heuristics" | No construction required in light of proposed construction for heuristics |

| | **Undisputed Terms** | | |
|---|---|---|---|
| Next item heuristic; next item command | No construction required; plain meaning | No construction required; plain meaning | No construction required; plain meaning |
| Two-dimensional screen translation | "Movement of screen content in two dimensions" | "Movement of screen content in two dimensions" | "Movement of screen content in two dimensions" |
| Vertical Screen Scrolling | "Movement of screen content in the vertical direction" | "Movement of screen content in the vertical direction" | "Movement of screen content in the vertical direction" |
| Based on an angle of initial movement | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| | The alternate proposed construction of "The movement of the finger contact is used by the computing device to determine which of the two commands should be processed" was not adopted by the ALJ. (*See* Markman Tr. at 124:19-23.) | The alternate proposed construction of "The movement of the finger contact is used by the computing device to determine which of the two commands should be processed" was not adopted by the ALJ. (*See* Markman Tr. at 124:19-23.) | The alternate proposed construction of "The movement of the finger contact is used by the computing device to determine which of the two commands should be processed" was not adopted by the ALJ. (*See* Markman Tr. at 124:19-23.) |

| | **Disputed Terms** | | |
|---|---|---|---|
| Image operation | "Any kind of operation conducted on an image or window" | "Creating or modifying an image" | "Any kind of operation conducted on an image or window" |

| | **Undisputed Terms** | | |
|---|---|---|---|
| Translucent image | "An image that can be seen but can also be seen through" | "An image that can be seen but can also be seen through" | "An image that can be seen but can also be seen through" |
| Receiving input in said displayed base image | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Selectably active | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Feature of interest | No construction required; | No construction required; | No construction required; |

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | plain and ordinary meaning | plain and ordinary meaning | plain and ordinary meaning |
|---|---|---|---|
| Partially visible | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Said base image is active to receive user inputs | "The base image is active to accept user input" | "The base image is active to accept user input" | "The base image is active to accept user input" |

| | **Disputed Terms** | | |
|---|---|---|---|
| Actuated simultaneously/Simultaneous actuation | "Causing the first and second distal ends to move so that more than one contact may be actuated at the same time" | "Caused to move or depressed at the same time" | "Caused to move or depressed at the smae time" |

| | **Undisputed Terms** | | |
|---|---|---|---|
| Cantilevered push button | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Pivots | "To turn or rotate about a point" | "To turn or rotate about a point" | "To turn or rotate about a point" |
| Dome button type electrical contact | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| First / second distal end | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Disposed about an exterior surface | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Fulcrum | "A support about which a button may pivot" | "A support about which a button may pivot" | "A support about which a button may pivot" |
| Substantially rigid | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Detection circuitry | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Control circuitry | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Debris | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |
| Detect contact | "A contact in the accessory jack of an electronic device that is used to detect a plug" | "A contact in the accessory jack of an electronic device that is used to detect a plug" | "A contact in the receptacle of an electronic device that is used to detect a plug" |
| Communicate with | "Establish electrical contact with" | "Establish electrical contact with" | "Establish electrical contact with" |
| Signal path | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning | No construction required; plain and ordinary meaning |

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

| Gap in the signal path | "An open circuit in the signal path" | "An open circuit in the signal path" | "An open circuit in the signal path" |
|---|---|---|---|
| Detect signal | "A signal that indicates presence or absence of a plug" | "A signal that indicates presence or absence of a plug" | "A signal that indicates presence or absence of a plug" |
| First receptacle contact | "A contact in the receptacle of an electronic device that is different from the detect contact" | "A contact in the receptacle of an electronic device that is different from the detect contact" | "A contact in the receptacle of an electronic device that is different from the detect contact" |
| CODEC circuitry | "Coder/decoder capable of converting a digital audio signal into an analog audio signal and capable of converting an analog audio signal into a digital audio signal" | "Coder/decoder capable of converting a digital audio signal into an analog audio signal and capable of converting an analog audio signal into a digital audio signal" | "Coder/decoder capable of converting a digital audio signal into an analog audio signal and capable of converting an analog audio signal into a digital audio signal" |
| Microphone detection circuitry | "Circuitry that determines whether a received plug is a microphone type or a non-microphone type" | "Circuitry that determines whether a received plug is a microphone type or a non-microphone type" | "Circuitry that determines whether a received plug is a microphone type or a non-microphone type" |
| Switch activation event | "Activation of one or more accessory switches" | "Activation of one or more accessory switches" | "Activation of one or more accessory switches" |
| HEADSET DETECT signal | "A signal that indicates whether a plug has been inserted into the jack" | "A signal that indicates whether a plug has been inserted into the jack" | "A signal that indicates whether a plug has been inserted into the jack" |
| Left connector | "A connector that carries an audio signal component" | "A connector that carries an audio signal component" | "A connector that carries an audio signal component" |
| Right connector | "A connector that carries an audio signal component" | "A connector that carries an audio signal component" | "A connector that carries an audio signal component" |

USITC Inv. No. 337-TA-796, USITC Order No. 16, 2012 WL 754088 (U.S.Intern.Trade Com'n)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.