# EXHIBIT C-5

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            IN THE UNITED STATES DISTRICT COURT
 2       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4   APPLE, INC., a California        )
     corporation,                     )
 5                                    )
                  Plaintiff,          )
 6                                    ) Case No.
                                      ) 12-cv-00630-LHK (PSG)
 7            vs.                     )
                                      ) Volume 2
 8   SAMSUNG ELECTRONICS CO., LTD., a )
     Korean corporation; SAMSUNG      )
 9   ELECTRONICS AMERICA, INC., a New )
     York corporation and SAMSUNG     )
10   TELECOMMUNICATIONS AMERICA, LLC, a)
     Delaware limited liability       )
11   company,                         )
                                      )
12                                    ) Pages 312 to 477
                  Defendants.         )
13   _____)
14
15
16
17        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
18
19         VIDEOTAPED DEPOSITION OF ALEX SNOEREN
20                San Diego, California
21             Thursday, September 26, 2013
22
23   Reported by:
24   ELIZABETH BORRELLI, CSR No. 7844, CCLL, CLR
25   JOB NO. 65776
```

## Page 313

Videotaped Deposition of ALEX SNOEREN, Volume 2, taken on behalf of the Defendants, at 501 West Broadway, Suite 800, San Diego, California, commencing at 8:39 a.m., Thursday, September 26, 2013, before Elizabeth Borrelli, a Certified Shorthand Reporter in the State of California, License No. 7844.

\* \* \*

## Page 314

APPEARANCES OF COUNSEL:

For the Plaintiff:
  GIBSON DUNN & CRUTCHER
  BY: BRIAN BUROKER
  Attorney at Law
  1050 Connecticut Avenue, N.W.
  Washington, D.C. 20036

For the Defendants:
  QUINN EMANUEL URQUHART & SULLIVAN
  BY: SEAN PAK
  BY: JORDAN JAFFE
  BY: DEREK TANG
  Attorneys at Law
  50 California Street
  San Francisco, California 94111

Also Present:
  MARTIN RINARD
  CHRISTOPHER BROOKS, Videographer

## Page 315

INDEX

WITNESS                              EXAMINATION
ALEX SNOEREN

BY MR. PAK                                 317

EXHIBITS

| EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 8 | Deposition Transcript of Mr. Freedman | 347 |
| Exhibit 9 | Expert Report of Jeffrey Chase, Ph.D. regarding the invalidity of the asserted claims of U.S. Patent No. 7,761,414 | 365 |
| Exhibit 10 | E-mail from Gordie Freedman to Henri Lamiraux, February 24, 2006 | 385 |
| Exhibit 11 | Information Retrieval: Algorithms and Heuristics textbook by David Grossman and Ophir Frieder | 460 |

INFORMATION REQUESTED
  (None.)
UNANSWERED QUESTIONS
  (None.)

## Page 316

SAN DIEGO, CALIFORNIA; THURSDAY, SEPTEMBER 26, 2013
                8:39 A.M.

THE VIDEOGRAPHER: This is the start of tape labeled No. 1 of the videotaped deposition of   08:38
Alex Snoeren, Volume II, in the matter Apple, Incorporated, versus Samsung Electronics Company, Limited, et al., in the United States District Court, Northern District of California, San Jose Division. Case Number is 12-cv-00630-LHK.   08:38
    This deposition is being held at 501 West Broadway, Suite 800, San Diego, California, on September 26th, 2013, at approximately 8:39 a.m. My name is Christopher Brooks from TSG Reporting, Incorporated, and I am the legal video specialist.   08:39
The court reporter is Liz Borrelli in association with TSG Reporting.
    Will counsel please introduce yourself.
    MR. PAK: Sean Pak of Quinn Emanuel representing Samsung, and with me is Derek Tang,   08:39
Jordan Jaffe, and Dr. Martin Rinard.
    MR. BUROKER: Brian Buroker, Gibson Dunn, on behalf of Apple.
    THE VIDEOGRAPHER: Thank you. Will the court reporter please swear in the witness.   08:39

Page 429

1  Claim 24 and the WAIS system that Dr. Rinard          11:40
2  described, correct?
3      A.  Again, you're asking me what those
4  paragraphs do.  And as I stipulated, it's not the
5  totality my response, but yes, those paragraphs do   11:40
6  opine upon my opinions regarding Claim 24 of Dr. --
7  Dr. Rinard's analysis of the WAIS system as
8  pertaining to Claim 24.
9      Q.  Can you confirm for me that all the
10 analyses and opinions that you set forth there are   11:40
11 focused on a plurality of heuristics as you have
12 interpreted that phrase?
13         MR. BUROKER:  Objection.  Vague.
14         THE WITNESS:  So, again, I can confirm for
15 you that all of my analysis in the entire body of my 11:40
16 report, unless specified otherwise, depends upon my
17 interpretation of the claims as I've set them up.
18 So to that extent, yes.
19 BY MR. PAK:
20     Q.  I'm talking about these -- these specific   11:40
21 sections.  So please read them if you need to,
22 Dr. Snoeren.
23         What I'm asking you to do is confirm that
24 these paragraphs 133 through 146 are directed to the
25 limitation of a plurality of heuristics as you have  11:41

Page 430

1  defined it with respect to the alleged WAIS system?  11:41
2      A.  Again, I believe that these paragraphs are
3  directed to the totality of Claim 24, and in
4  particular I start off by saying "I do not believe
5  an analysis is necessary because I don't even        11:41
6  believe that the system that Dr. Rinard alleges
7  existed.  For the sake of completeness, I am
8  providing some additional points regarding, even if
9  that system existed, how it might differ."
10         So I don't agree that I'm focused on any     11:41
11 particular point.  I'm addressing the entire claim
12 as requested.
13     Q.  Your analysis of the WAIS system depends
14 on your interpretation of a plurality of heuristics,
15 correct?                                              11:42
16         MR. BUROKER:  Objection.  Vague.
17         THE WITNESS:  Again, my analysis depends
18 on a proper construction of the terms, which
19 includes incorporating guidance from the court.  So
20 yes, all of the analyses, including the analysis in  11:42
21 this section of my report, depends upon the proper
22 construction of the claims.
23 BY MR. PAK:
24     Q.  You have not provided any written opinions
25 rebut -- rebutting Dr. Rinard's analysis of the WAIS 11:42

Page 431

1  system as he described it under an alternative       11:42
2  definition of a plurality of heuristics which does
3  not require modules and which does not require them
4  to be located on a local device, correct?
5          MR. BUROKER:  Objection.  Vague.             11:42
6          THE WITNESS:  I'm going to need a moment
7  to look.
8          So I disagree.  So on paragraph 144 I say
9  in part "In addition, it is my opinion that
10 Dr. Rinard has failed to meet his burden in          11:44
11 explaining how the functionality he identifies
12 implements a search algorithm that employs some rule
13 of thumb and does not consist solely of constraint
14 satisfaction parameters."
15         I can continue if you'd like.                11:44
16 BY MR. PAK:
17     Q.  Okay.  Well, let's hit that point.
18         So WAIS system included the capability of
19 doing something called synonym matching, correct?
20         MR. BUROKER:  Objection.  Vague.             11:44
21 Undefined.
22         THE WITNESS:  So you're asking me to say
23 correct or not.  As we've already discussed, there's
24 dispute about what the WAIS system is, so I can't
25 confirm or deny that statement.                      11:45

Page 432

1  BY MR. PAK:                                          11:45
2      Q.  Look, I'm not going to go through and
3  repeat all the assumptions.  I'm trying to -- I'm
4  happy to do that if it works, but I'm -- I've
5  already stipulated on the record that when I talk    11:45
6  about the WAIS system I'm talking about Dr. WAIS's
7  -- Dr. Rinard's description of that system, and I
8  acknowledge that you have some challenges to that
9  description, okay?
10         So will you agree with me that the WAIS      11:45
11 system, as described by Dr. Rinard, discloses the
12 use of synonym matching?
13         MR. BUROKER:  Objection.  Vague.
14 Incomplete hypothetical.
15         THE WITNESS:  I will agree with you that     11:45
16 Dr. Rinard alleges that the system that he describes
17 discloses that.
18 BY MR. PAK:
19     Q.  And you agree that synonym matching is a
20 form of heuristic, correct?                          11:45
21         MR. BUROKER:  Objection.  Vague.
22         THE WITNESS:  I don't know that I agree or
23 disagree.  I would have to look at a particular
24 implementation of synonym matching.  If you have a
25 specific one in mind, I'd be happy to check whether  11:45

Page 433

1   or not that might or might not be heuristic. I          11:46
2   think the particular goal could be done in a
3   deterministic way, could be done in a way that
4   consisted solely of satis -- constraint satisfaction
5   parameters.                                              11:46
6   BY MR. PAK:
7       Q.  You don't recall ever opining that there
8   are heuristics like synonym matching, correction of
9   incomplete spellings and compensation for missing
10  words?                                                   11:46
11      MR. BUROKER:  Objection.  Incomplete
12  hypothetical.  Vague.
13      THE WITNESS:  It's possible that I did.
14  If you want to point out the context we could -- we
15  could discuss it.                                        11:46
16  BY MR. PAK:
17      Q.  I will show you the context, but I just
18  want to know your understanding sitting here today,
19  do you agree or disagree that synonym matching,
20  correction of incomplete spellings and compensation     11:46
21  from missing words are forms of heuristics?
22      MR. BUROKER:  Objection.  Vague.
23      THE WITNESS:  Again, as I've mentioned, it
24  would depend on how those things are actually
25  implemented and what they did.  If you have a           11:47

Page 434

1   particular context, a particular implementation of       11:47
2   those goals, they may or may not be heuristic.  I do
3   not recall as I sit here today opining about any
4   particular implementation of those functionalities.
5   But to the extent that I did, if you'd like to          11:47
6   refresh my memory, I'd be happy to talk to you about
7   those details.
8   BY MR. PAK:
9       Q.  So you're saying synonym matching alone is
10  not heuristic; is that your testimony today?            11:47
11      MR. BUROKER:  Objection.  Vague and
12  argumentative.
13      THE WITNESS:  What I'm saying is synonym
14  matching is describing a goal.  I want to match
15  synonyms.  You haven't described to me how I'd do       11:47
16  it.  As Judge Koh stated in her order, it is
17  insufficient to just claim that something is
18  heuristic.  One has to describe how it works, that
19  it implements some rule of thumb and does not
20  consist solely of constraint satisfaction               11:47
21  parameters.
22      So by the court's guidance, I can't answer
23  that question without more information.
24  BY MR. PAK:
25      Q.  Do you believe that you could do synonym        11:47

Page 435

1   matching in a nonheuristic manner?                       11:47
2       MR. BUROKER:  Objection.  Vague.
3       THE WITNESS:  That's hypothetical.  I have
4   not tried to implement synonym matching in a
5   nonheuristic fashion.  If you're asking "you" in         11:48
6   general, as I sit here today that would be
7   speculation about whether you or some arbitrary
8   person could do it, because we haven't set up the
9   context of the constraints, what they're doing it
10  in, their implementation requirements and so forth.      11:48
11  BY MR. PAK:
12      Q.  If you had synonym matching that satisfied
13  Judge Koh's definition in that it employed a rule of
14  thumb, and it was not solely consisting of
15  constraint satisfaction parameters, would you agree      11:48
16  that that form of synonym matching is a heuristic?
17      A.  Again, I think you just constructed a
18  topology.  What you just asked me is if I have an
19  implementation that meets your definition, does it
20  meet your definition?  Yes.                              11:48
21      Q.  I'm just clarifying that the synonym
22  matching application does not somehow disqualify
23  that technique from being a heuristic, that's not
24  your testimony, right?
25      A.  I don't know what a synonym matching            11:49

Page 436

1   application is.  I don't believe we've been talking     11:49
2   about a synonym matching application.
3       Q.  Dr. Snoeren, listen to my question,
4   please.
5       I'm asking you whether you think -- let             11:49
6   me -- let me step back.
7       If Judge Koh's construction is satisfied
8   that technique, regardless of the purpose of that
9   technique or function of that technique, would
10  qualify as a heuristic, correct?                         11:49
11      MR. BUROKER:  Objection.  Calls for a
12  legal conclusion.  Vague.
13      THE WITNESS:  You're using heuristic.  In
14  what context is that heuristic?  Are you using that
15  in the context of the 414, in a particular claim of     11:49
16  the 414 or generally?
17  BY MR. PAK:
18      Q.  I'm talking about the 959 and I'm talking
19  about heuristic algorithm as Judge Koh defined it.
20      A.  I apologize for my confusion.                    11:49
21      Q.  If a technique meets her definition of
22  heuristic algorithm, it would qualify as a heuristic
23  algorithm regardless of the specific function or
24  purpose of that algorithm, correct?
25      A.  Thank --                                         11:50

Page 437

1    MR. BUROKER: Calls for a legal    11:50
2 conclusion. Vague.
3    THE WITNESS: Thank you for clarifying
4 your question. I apologize for my confusion.
5    So your question, as I understand it now,    11:50
6 is if you have something that meets her definition
7 of a heuristic algorithm, would it be a heuristic
8 algorithm? And the answer to that question is yes.
9 BY MR. PAK:
10    Q. And Dr. Snoeren, it's possible to use    11:50
11 heuristics to perform synonym matching, correct?
12    MR. BUROKER: Objection. Vague.
13    THE WITNESS: Again, I haven't analyzed
14 any particular implementation of synonym matching.
15 In general, hypothetically, I don't see why it would    11:50
16 not be possible to implement synonym matching using
17 a heuristic algorithm.
18 BY MR. PAK:
19    Q. Is it possible to use a heuristic
20 algorithm to conduct phonetic searches?    11:50
21    MR. BUROKER: Objection. Incomplete
22 hypothetical.
23    THE WITNESS: Again, it's a hypothetical
24 question not in the context of any particular
25 embodiment. In that entirely disconnected way, I    11:51

Page 438

1 don't see in the question you've provided me any    11:51
2 barriers to implementing that -- a solution to that
3 in a heuristic fashion.
4 BY MR. PAK:
5    Q. And can you implement a heuristic    11:51
6 algorithm to perform relevance ranking?
7    MR. BUROKER: Same objection.
8    THE WITNESS: In much the same way, it's a
9 hypothetical question without any constraints on how
10 I must implement it, so I see no reason why one    11:51
11 couldn't implement it in a heuristic fashion.
12 BY MR. PAK:
13    Q. And just to be clear on the record, do you
14 believe that synonym matching itself is a heuristic?
15    MR. BUROKER: Objection. Asked and    11:51
16 answered. Vague.
17    THE WITNESS: Again, synonym matching, I
18 don't know what you mean by "synonym matching." In
19 other words, is it the goal of matching synonyms,
20 i.e., taking one word and finding other words that    11:51
21 mean the same thing? That's a problem description.
22 Heuristics are an attribute of a solution to a
23 problem. So we need to talk about a particular
24 implementation that performs the function of synonym
25 matching, and then we can talk about whether that    11:52

Page 439

1 was heuristic or not.    11:52
2 BY MR. PAK:
3    Q. Correction of incorrect spellings, is that
4 in and of itself a heuristic?
5    MR. BUROKER: Same objections. Vague.    11:52
6 Calls for a legal conclusion.
7    THE WITNESS: Again, in and of itself
8 that's a functionality, at least in the way that you
9 use it and I'm understanding you to use it, which
10 doesn't disclose in the way that you've used it how    11:52
11 that functionality is provided. It could be
12 implemented in a heuristic fashion. I imagine it
13 could be implemented in a nonheuristic fashion.
14 BY MR. PAK:
15    Q. Compensation for missing words, is that in    11:52
16 and of itself a heuristic?
17    A. Again --
18    MR. BUROKER: Same objections.
19    THE WITNESS: -- in the entirely
20 disembodied phrase that you're giving me with no    11:52
21 context, not referring to any particular system, not
22 referring to any particular embodiment of providing
23 that functionality, I imagine it's possible to
24 implement it in a heuristic fashion. I also imagine
25 it might be possible to implement it in a    11:53

Page 440

1 nonheuristic fashion.    11:53
2 BY MR. PAK:
3    Q. As part of your analysis, did you consider
4 a textbook by Mark Grossman?
5    A. I considered it in so far as Dr. Rinard    11:53
6 cites that textbook in his report. And so I did
7 evaluate and I did consider Dr. Rinard's opinions
8 based on that textbook, and I did review that
9 textbook as cited by Dr. Rinard.
10    Q. I'm going to bring out a copy of that    11:53
11 textbook, but before we do that let me just ask you
12 a few more questions about your infringement
13 analysis.
14    Can you turn to paragraph 150 of your
15 opening report.    11:54
16    A. I have that here.
17    Q. In your paragraph 150 you state "The
18 Google suggestion provider is --"
19    [Reporter requests clarification.]
20 BY MR. PAK:    11:54
21    Q. "The Google suggestion provider is used to
22 query Google servers" to search -- "for search
23 suggestions based on content from Google search
24 engine on the internet."
25    Do you see that statement?    11:55

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 473

1  we didn't get into details about where those other          12:44
2  threads came from.  And without discussing the
3  alternative design, we can't talk about what the
4  technological trade-offs might be, what
5  ramifications that might have on the functionality          12:44
6  of the system.
7       Just like your other one where you did get
8  specific, and I appreciated that and I was able to
9  give you a specific ramification, if you wanted to
10 get specific about what might be providing those            12:45
11 threads and how that occurs, I might be able to give
12 you a specific thing that even a layperson could
13 appreciate.
14      But I will agree with you, that at the
15 level of specificity you provided, a layperson is           12:45
16 probably not able to understand the ramifications of
17 that.  One would more effectively describe to a
18 layperson the user visible effects of an alternative
19 design.
20      MR. BUROKER:  Counsel, I think you're at               12:45
21 10 hours.
22      MR. PAK:  Okay.  So I think with that, I
23 thank you for your patience.
24      THE WITNESS:  You're welcome.
25      THE VIDEOGRAPHER:  Counsel, off the                    12:45

Page 474

1  record?                                                    12:45
2       MR. BUROKER:  I don't have any redirect,
3  sorry.
4       THE VIDEOGRAPHER:  Off the record at
5  12:46 p.m., and this concludes today's deposition.         12:45
6  (Whereupon, the deposition adjourned at 12:46 p.m.)
7                         -oOo-

                                                              12:45

Page 475

8       I, ALEX SNOEREN, do hereby declare under
9  penalty of perjury that I have read the foregoing
10 transcript; that I have made any corrections as
11 appear noted, in ink, initialed by me, or attached
12 hereto; that my testimony as contained herein, as
13 corrected, is true and correct.
14      Executed this _____ day of
15 _____, 20____, at
16 _____, _____.
17      (City)          (State)

22        _____
           ALEX SNOEREN
23         Volume 2

Page 476

1  STATE OF CALIFORNIA    )
                          ) ss.
2  COUNTY OF LOS ANGELES  )

4       I, Elizabeth Borrelli, Certified Shorthand
5  Reporter, Certificate No. 7844, for the State of
6  California, hereby certify:
7       I am the deposition officer that
8  stenographically recorded the testimony in the
9  foregoing deposition;
10      Prior to being examined the deponent was
11 first duly sworn by me;
12      The foregoing transcript is a true record
13 of the testimony given;
14      Before completion of the deposition,
15 review of the transcript [ ] was [X] was not
16 requested.  If requested, any changes made by the
17 deponent (and provided to the reporter) during the
18 period allowed are appended hereto.

20 Dated 9/26/2013

23        _____
           ELIZABETH BORRELLI, CSR 7844