UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**DECLARATION OF DR. KEVIN JEFFAY IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR SUMMARY JUDGMENT CONCERNING U.S. PATENT NO. 5,946,647**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

1      1.      My name is Kevin Jeffay. I am a tenured professor in the Department of Computer

2  Science at the University of North Carolina at Chapel Hill where I currently hold the position of

3  Gillian T. Cell Distinguished Professor of Computer Science.

4      2.      I have been retained on behalf of defendants Samsung Electronics Co., Ltd.,

5  Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, (hereafter

6  collectively referred to as "Samsung"), to offer an expert opinion on the alleged infringement of

7  claims 1, 4, 6, 8, and 9 (hereafter, "the asserted claims") of U.S. Patent No. 5,946,647 (hereafter,

8  "the '647 Patent").  I previously submitted reports to describe my opinions on these matters.  I

9  hereby submit this declaration regarding the same; my opinions herein mirror my opinions

10  presented in my report in relevant part.

11  **I.      CLAIM CONSTRUCTION**

12      3.      I understand the District Court for the Northern District of Illinois (Judge Posner)

13  has previously issued claim construction rulings in *Apple v. Motorola*, Case No. ND-IL-08540,

14  that construe the terms "an analyzer server" and "linking actions to the detected structures."  I

15  understand that those constructions are currently being appealed by Apple to the Federal Circuit.

16      **A.      "an analyzer server"**

17      4.      Judge Posner construed the phrase "analyzer server" as "a server routine separate

18  from a client that receives data having structures from the client."  Motorola had proposed this

19  construction.  Apple had proposed an alternative construction that was rejected:   "a program

20  routine(s) that receives data, uses patterns to detect structures in the data, and links actions to the

21  detected structure." *Apple Inc. v. Motorola*, Order of March 19, 2012, Case No. 1:11-cv-08540, at

22  9.

23      **B.      "linking actions to the detected structures"**

24      5.      Judge Posner construed the phrase "linking actions to the detected structures" as

25  "creating a specified connection between each detected structure and at least one computer

26  subroutine that causes the CPU to perform a sequence of operations on that detected structure."

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

Motorola had proposed this construction.  Apple had proposed an alternative construction that was rejected:  "associating detected structures to computer subroutines that cause the CPU to perform a sequence of operations on the particular structures to which they are associated."  *Apple Inc. v. Motorola*, Order of March 19, 2012, Case No. 1:11-cv-08540, at 10.

### C.  "an action processor"

6.     The Court in this matter has issued a claim construction for the term "action processor."  I understand the Court found that the correct construction of that term is "program routine(s) that perform the selected action on the detected structure."  Additionally, the Court rejected Samsung's proposed construction, which I understand was "a program routine separate from a client that performs the selected action on the detected structure."  Specifically, I understand that the Court rejected Samsung's contention that the "action processor" must be separate from client applications.  Dkt. #447 at 15-16.  I have applied the Court's construction throughout my analysis.

## II.     OVERVIEW OF THE ACCUSED SAMSUNG PRODUCTS

7.     I understand that Dr. Mowry (and Apple) is accusing a number of Samsung Android phones and tablets running Android versions Froyo through Jelly Bean of infringing the asserted claims of the '647 patent.  In paragraph 93 of his Report, Dr. Mowry provides the following list of accused products, which he calls the "Accused Browser Products": Admire, Captivate Glide, Conquer 4G, Dart, Exhibit II 4G, Galaxy Nexus, Galaxy Note, Galaxy Note II, Galaxy Rugby Pro, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III, Illusion, Stratosphere, and Transform Ultra.

8.     In paragraph 94 of his report, Dr. Mowry provides the following list of accused products, which he calls the "Accused Messaging Products": Admire, Captivate Glide (Ice Cream Sandwich), Conquer 4G, Galaxy Note, Galaxy Note II, Galaxy Rugby Pro, Galaxy S II (Ice Cream Sandwich, Jelly Bean), Galaxy S II Epic 4G Touch (Ice Cream Sandwich, Jelly Bean), Galaxy S II Skyrocket (Ice Cream Sandwich), Galaxy S III, Illusion, Stratosphere, and Transform Ultra.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

9.      In footnote 10 of his report, Dr. Mowry provides an additional list of products which he alleges "also infringe the '647 patent through the Browser application under claim constructions adopted in the *Motorola* litigation requiring only a single action for each detected structure.": Samsung Galaxy Tab 2 and Galaxy Note 10.1.

10.     In footnote 11 of his report, Dr. Mowry provides an additional list of products which he alleges "also infringe the '647 patent through the Messenger application under claim constructions adopted in the *Motorola* litigation requiring only a single action for each detected structure": Samsung Captivate Glide (Gingerbread), Dart, Exhibit II 4G (Gingerbread), Galaxy Nexus, Galaxy S II (Gingerbread), Galaxy S II Epic 4G Touch (Gingerbread), and Galaxy S II Skyrocket (Gingerbread).

**A.      The Browser Application – Froyo, Gingerbread, and Ice Cream Sandwich**

11.     The Browser application is a software program that runs on Android and allows the user to retrieve and view web pages. Users may enter a URL address into the address bar in the application. The application then retrieves the web page, renders it, and displays it to the user.

12.     When the application displays a web page, the user can often tap or press on a phone number, e-mail address, or U.S. Postal address within the text of the page. These items are not displayed to the user any differently than any other text on the page unless they have HTML anchors. They therefore may appear the same as other text. ████████████████

████████████████████████████████████████

████████████████████████████      ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████      ████████

████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1   ████████████████████████████████████████████████████████

2   ████████████████████████████████████

3        13.     In a displayed web page, the user can select an item using a "long-press," causing

4   the selected item to be outlined in a different color and causing a context or options menu to

5   appear that lists descriptions of certain operations.  The options displayed depend on the type of

6   item that was selected.  The user can choose one of the menu items.  ████████████████

7   ████████████████████████████████████████████████████████

8   ███  ███  ██████  ██  █████  ████████  ████████  ████  ████  ███

9   ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████  ███

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████

16     ██  ████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████  An

19  Intent object "is basically a passive data structure holding an abstract description of an action to be

20  performed."  Ex. 7 to Mowry PI Declaration – Android Developers Reference – Intent, *available*

21  *at*  http://developer.android.com/reference/android/content/Intent.html.  There are two primary

22  forms of intents:

23          •      Explicit Intents have specified a component (via

24                setComponent(ComponentName) or setClass(Context, Class)), which

25                provides the exact class to be run. Often these will not include any other

              information, simply being a way for an application to launch various

26                internal activities it has as the user interacts with the application.

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

- Implicit Intents have not specified a component; instead, they must include enough information for the system to determine which of the available components is best to run for that intent.

When using implicit intents, given such an arbitrary intent we need to know what to do with it. This is handled by the process of Intent resolution, which maps an Intent to an Activity, BroadcastReceiver, or Service (or sometimes two or more activities/receivers) that can handle it.

*Id.* In an explicit Intent object, the "component" field specifies a specific program that will be called to perform the activity specified by the Intent object. In an implicit Intent object, there is no "component", and thus the system does not determine what programs are available to perform the specified activity until the Intent resolution process performed.



18.     In paragraphs 133 to 134 and 139 to 143 of his Report, Dr. Mowry provides a cursory analysis of the source code for the accused functionality in the Browser application of the

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

accused Samsung products running Android versions Froyo, Gingerbread, and Ice Cream Sandwich.  Dr. Mowry's analysis omits a considerable amount of detail that is relevant to the infringement analysis.  In my opinion, as detailed below, when this additional detail is considered, the only reasonable conclusion is that the accused Samsung products do not infringe.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



9

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



Counter to the teachings of the '647 patent, there is therefore no sharing at run-time of a routine, server or otherwise, that performs detection.

12

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



17

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



18

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



19

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1    ███ ████████████████████████████████████████

2 ████████████████████████████████████ █████████████████

3 ████████████████████████████████████████████████████████

4 ██████████████████████ █████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8       **B.**      <u>**The Browser Application – Jelly Bean**</u>

9      31.     The Browser application is a software program that runs on Android and allows the

10 user to retrieve and view web pages. Users may enter a URL address into the address bar in the

11 application. The application then retrieves the web page, renders it, and displays to the user.

12      32.     When the application displays a web page, the user can often tap or press on a

13 phone number, e-mail address, or U.S. Postal address within the text of the page. These items are

14 not displayed to the user any differently than any other text on the page unless they have HTML

15 anchors. They therefore may appear the same as other text. ████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 █████████████████ ██████████████████████████████████████

20 █████████████████ ██████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ███████████████████ █████████████████████ ███ ███████████

24 ████████████████████████████████████████████████████████

25 █████████████████████ ██████████████████████████████████

26 ████████████████████████████████████████████████████████

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'**
**EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

34.     In pararaphs 135 to 137 and 139 to 143 of his Report, Dr. Mowry provides a cursory analysis of the of the source code for the accused functionality in the Browser application of the accused Samsung products running Android version Jelly Bean.  Dr. Mowry's analysis

22

omits a considerable amount of detail that is relevant to the infringement analysis.  In my opinion, as detailed below, when this additional detail is considered, the only reasonable conclusion is that the accused Samsung products do not infringe.

23

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



24

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



Counter to the teachings of the '647 patent, there is therefore no sharing at run-time of a routine,

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1  server  or  otherwise,  that  performs  detection.  ███████████████████████

2  ████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6         ██   ███████████████████████████████████████████

7         ██████████████████████████████████████

8  ██    ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████████   ████

15         41.      The basic user interface element on Android is called a "View".  Views are used to

16 draw elements on a display, and also to allow a user to interact with the display.  ████████

17 ████████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████████

20 ██████████████████████████████   ███████████████████████████████████

21 █████  ███   ████  ██  ██  ██████  ██████  ████  ██  ████   ████  ██

22 ████████████████████████████████████████████████████████████████████

23 ───────────────────────

24 █    ███████████████████████████████████████████████████

25 █    ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████████

27 ████████████████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



28

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



31

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



Accordingly, the source code demonstrates that the Browser application does not infringe claim 1.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



This

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

[REDACTED]

46.     I note that the '647 patent specifically contemplates that selection occurs at the time the coordinates of a user's input have been determined:

> User interface 240 communicates with application 167 through application program interface 230 to determine if a user has performed a mouse-down operation in a particular mouse-sensitive presentation region, **thereby selecting the structure presented at those coordinates**. Upon selection of this structure, user interface 240 presents and enables selection of the linked candidate actions using any selection mechanism, such as a conventional pull-down or pop-up menu.

'647 patent, Col. 4:22-31.

[REDACTED]

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1 ▮▮ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

2 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3 ▬▬▬▬▬▬▬▬   Thus, as explained in more detail below, the Browser

4 application in devices running the Jelly Bean version of Android, ▬▬▬▬▬▬▬

5 ▮▮▮ which operates as just described, does not infringe because it does not "enable the selection

6 of a detected structure" as required by claim 1 of the '647 patent.

7 **C.    The Messenger Application**

8     49.    The Messenger application is a software program that runs on Android and allows

9 users to send and receive text messages. Users are able to send text messages in the Messenger

10 application by selecting or typing a cellular telephone number or e-mail address and entering text

11 using the on-screen keyboard.  When the user chooses to send the message, the text of the message

12 appears on the screen along with a list of previous messages, both SMS and MMS, exchanged

13 between the user and the recipient.  If a user receives a message, the user can view the message by

14 entering the Messenger application and selecting the phone number or contact identifier from a list.

15 When the user selects the appropriate phone number or contact identifier, the message along with

16 a list of previous messages, both SMS and MMS, exchanged between the user and the sender are

17 displayed.  When a user sends or receives a text message including a phone number, URL address,

18 email address, or a U.S. Postal address, that portion of the data is colored blue and underlined

19 when displayed on the screen, just like an HTML link  in a conventional web browser.

20     50.    In some versions of the Messenger application, the user can long press on a

21 message, causing a context or options menu to appear that provides possible operations.  The

22 options depend on the type of structures included in the message.  The user cannot select the

23 structures in the message, but only the message as a whole.  The user can choose one of the menu

24 items.

25     51.    In other versions of the Messenger application, the user can long press on a

26 structure in a message, causing a context or options menu to appear that provides possible

27

28

41

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

operations.  The options depend on the type of structure selected in the message.  The user can choose one of the menu items

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

An Intent object "is basically a passive data structure holding an abstract description of an action to be performed."  Ex. 7 to Mowry PI Declaration – Android Developers          Reference          –          Intent,          *available          at* http://developer.android.com/reference/android/content/Intent.html.   There are two primary forms of intents:

- Explicit Intents have specified a component (via setComponent(ComponentName) or setClass(Context, Class)), which provides the exact class to be run. Often these will not include any other information, simply being a way for an application to launch various internal activities it has as the user interacts with the application.

- Implicit Intents have not specified a component; instead, they must include enough information for the system to determine which of the available components is best to run for that intent.

When using implicit intents, given such an arbitrary intent we need to know what to do with it. This is handled by the process of Intent resolution, which maps an Intent to an Activity, BroadcastReceiver, or Service (or sometimes two or more activities/receivers) that can handle it.

*Id*.  In an explicit Intent object, the "component" field specifies a specific program that will be called to perform the activity specified by the Intent object.  In an implicit Intent object, there is no "component", and thus the system does not determine what programs are available to perform the specified activity until the Intent resolution process is performed.

43

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

59.    In pararaphs 179 to 186, 194 to 197 and 199 to 200 of his Report, Dr. Mowry provides a cursory analysis of the of the source code for the accused functionality in the Messenger application of the accused Samsung products.   Dr. Mowry's analysis omits a considerable amount of detail that is relevant to the infringement analysis.   In my opinion, as detailed below, when this additional detail is considered, the only reasonable conclusion is that the accused Samsung products do not infringe.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



46

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



48

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



52

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



Counter to the teachings of the '647 patent, there is therefore no sharing at run-time of a routine, server or otherwise, that performs detection.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



Counter to the teachings of the '647 patent, there is therefore no sharing at run-time of a routine, server or otherwise, that performs detection.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

73.    The basic user interface element on Android is called a "View".  Views are used to draw elements on a display, and also to allow a user to interact with the display.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



61

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'**
**EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Accordingly, the source

24   code demonstrates that the Messenger application does not infringe claim 1.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



71

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



73

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



Accordingly, the source code demonstrates that the Messenger application does not infringe claim 1.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



83

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1 ███████████████   ████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ███████████████████████   The source code therefore demonstrates that the Browser

6 and Messenger applications do not infringe claim 1.

### III.   SAMSUNG ACCUSED PRODUCTS WITH BROWSER DO NOT INFRINGE THE ASSERTED CLAIMS OF THE '647 PATENT

9     93.   For the reasons set forth below and in my expert reports, it is my opinion that Samsung Accused Products with Browser do not infringe the asserted claims of the '647 patent.

#### A.   Samsung Accused Products with Browser Do Not Infringe Claim 1

##### 1.   Browser (Froyo, Gingerbread, and Ice Cream Sandwich) Does Not Satisfy Claim 1 Because Browser Does Not Have "An Analyzer Server for Detecting Structures in the Data and for Linking Actions to Detected Structures"

94.   In paragraphs 132-134, 138-143, 227, 229, and 231, Dr. Mowry opines that Froyo, Gingerbread, Ice Cream Sandwich Accused Devices with Browser satisfy the limitation "an analyzer for detecting structures in the data and for linking actions to the detected structures."  For the reasons set forth below, I disagree.  I understand that Apple proposes that the claim term "analyzer server" be construed to mean "a program routine(s) that receives data, uses patterns to detect structures in the data, and links actions to the detected structures."  I understand Judge Posner rejected this construction.  I discuss Dr. Mowry's analysis under both constructions in this section, and the construction adopted by Judge Posner more specifically in the section following.

95.   As an initial matter, Dr. Mowry nowhere squares his analysis with the fact he does not identify anything a person of ordinary skill in the art would consider a "server."  Dr. Mowry's entire analysis is premised on first finding the presence of functions for "analyzing" (e.g.,

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1   functions for detecting and linking) and then simply calling whatever it is he found a "server."

2   That is, Dr. Mowry appears to believe that if the functions of an "analyzer" are present then an

3   analyzer server is necessarily present. Never does Dr. Mowry actually identify any server

4   functions or other indicia of a "server" in the Accused Devices as that term would be understood

5   by a person of ordinary skill in the art.  I do not believe Dr. Mowry has applied any objective

6   criteria that would be accepted by persons in the community of experts to determine whether there

7   is a server that is the claimed "analyzer server" in the Accused Devices.

8         96.   ████████████████████████████████████

9   ██████████████████████████████████████████████

10  ██████████████████████████████████████████████

11  █████████████████████████   A person of ordinary skill in the art would not find that a "shared

12  library" is a "server."  "Shared libraries" and "servers" are different, well-known concepts in

13  computer science, and even a computer science major (for instance, a student of Dr. Mowry's at

14  Carnegie Mellon University) would not confuse the two. Shared libraries exist solely as a

15  convenience to the programmer.  A shared library is a collection of routines that provide functions

16  that are expected to be used in multiple applications. And when an application uses a shared

17  library, the code of that library is integrated into the application and becomes part of the

18  application. In particular, at run-time, code in a shared library used by an application is

19  indistinguishable from any other piece of application code. Shared libraries save the programmer

20  the effort of having to write routines to implement common functions. Beyond this time saving

21  convenience (that can be achieved in other ways without using a shared library), there is no

22  functional benefit to using a shared library. For example, had the programmer not used a shared

23  library and had instead written or incorporated routines found in a shared library as part of her

24  application, then one could not tell the difference between one program using routines from the

25  shared library and another program using the same routines that were part of the application. As

26  such, the use of shared libraries (versus code placed in the application directly) adds no value to

27

28

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

the user experience. Moreover, a shared library is passive; it does nothing by itself. Until the library is integrated into the application and used by the application, the code in the shared library does nothing (and is incapable of doing anything).

97.     In contrast, a server is an active component of a computer system. It is the execution of program that communicates with (provides services to) and is separate from, programs interacting with the server. *The Authoritative Dictionary of IEEE Standard Terms* (7th Ed., 2000) at 1031 (entry for "server"(5)).  A server is a program whereas a shared library is a part of a program. Without a program to execute a shared library, a shared library is not capable of performing any function; a server, however, provides functions on its own. I note that in the computer science field in September 1994, as well as today, computer science and engineering students would typically first encounter the concept of a "server" in an operating systems or networking/distributed systems course. I taught such courses in September 1994 and I know that texts commonly used in that period, such as Abraham Silberschatz & Peter Galvin, *Operating System Concepts*, Addison Wesley (4th Ed. 1994), Andrew S. Tanenbaum, *Distributed Operating Systems*, Prentice Hall (1994), Douglas E. Comer, *Internetworking with TCP-IP: Principles, Protocols and Architecture* (1988), all described a server in manner consistent with the IEEE Dictionary and my explanations here. ***None*** of these texts teach or suggest that a shared library is ever considered a server.  It is a basic error to conflate a shared library with a server.

98.     Accordingly, it is my opinion Dr. Mowry's analysis is insufficient to show an "analyzer server" under any construction.  Dr. Mowry has failed to apply any discernible, objective criteria that would be accepted by persons in the community of experts in the field to determine if there is an "analyzer server" in the Accused Devices.  His entire analysis appears to be driven by a search for functionality without any application of the sort of expertise that would be available to a person operating in this field.  Merely citing to functions in code and related functionality does not demonstrate the existence of an "analyzer server," and my own analysis demonstrates that in fact there is no indicia of an "analyzer server" in the Accused Devices.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

99.     I further note that Apple's construction, in stating that the analyzer server "links actions to the detected structure" appears to require that multiple actions be linked to a detected structure.

Thus, it is not possible for the Accused Devices to "links actions [plural] to the detected structure." Dr. Mowry nowhere addresses this in his report.  For this additional reason, Dr. Mowry's analysis does not show an "analyzer server" under any construction.

(a)     Browser (Froyo, Gingerbread, and Ice Cream Sandwich) Does Not Satisfy the Analyzer Server Limitation Under Apple's Construction

100.     Apple's construction of "analyzer server" is "a program routine(s) that receives data, uses patterns to detect structures in the data, and links actions to the detected structure."  Under Apple's construction of analyzer server, the analyzer server must be "program routine(s) that receive[] data," but, as set forth below, Dr. Mowry does not even attempt to show that the routines he identifies receive data.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

101.    A person of ordinary skill in the art would understand that the notion of the claimed analyzer server "receiving" data in the   '647 patent is a server receiving data from a sending/requesting entity. In particular, that the analyzer server "receives" requires that the server be an active entity such as a program, an entity capable of performing actions on its own (unlike a shared library which cannot perform any operations on its own). ██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████    For this reason, Browser in the accused Froyo, Gingerbread and Ice Cream Sandwich system do not contain program routine(s) that receives data, and hence do not contain the "analyzer server" limitation of claim 1 under Apple's construction of the term "analyzer server."

(b)    Browser (Froyo, Gingerbread, and Ice Cream Sandwich) Does Not Satisfy the Analyzer Server Limitation Under Judge Posner's Construction For Multiple Reasons

102.    In paragraphs 144-152, and 227-228, Dr. Mowry purports to analyze whether or not Browser on Froyo, Gingerbread, and Ice Cream Sandwich Devices satisfies Judge Posner's construction of the "analyzer server" term.  Judge Posner of the District Court for the Northern District of Illinois has construed this term to mean "a server routine separate from a client that receives data having structures from the client."  Under Judge Posner's construction of this term, it is my opinion that the Accused Products do not satisfy the "analyzer server" limitation, for a number of reasons.

(i)    The Detection and Linking Code Dr. Mowry Identifies Is Not Separate From the Browser Application

103.    ██████████████████████████████

██████████████████████████████████████████████

██████████    ██████████████████████████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

18       ████████████  Accordingly, it is my opinion that the

19   routines identified by Dr. Mowry as forming the "analyzer server" are not "separate from a client."

20       104.   Dr. Mowry addresses his finding of "separateness" in paragraph 145 of his report.

21   He states, without providing any explanation or evidence, that "[t]hese shared libraries which are

22   generally available for different applications to use, exist independently of—that is, they are

23   'separate from'—the 'client' required by Samsung's construction." There appears to be no dispute

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1   that the "client" at issue here is Browser. ████████████████████

2   ████████████████████████████████████████████████

3   ████████████████████████████████████████████████

4   ████████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ████████████████

11   ████   ████████████████████████████████████

12  ████████████████████████   ████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████

19      106.   In the same paragraph, Dr. Mowry also states that "there must be interface 'glue

20  code'" in any client-server relationship.  This is nonsense, both as a matter of computer science

21  and as applied to the Browser.  "Glue code" is jargon and not an accepted term of art with any

22  definite, or agreed upon meaning. For example, I note that an authoritative source of accepted

23  definitions in the computing field, *The Authoritative Dictionary of IEEE Standard Terms* (7th Ed.,

24  2000), contains no entry for "glue code." I take Dr. Mowry's use of such jargon, a term that

25  essentially Dr. Mowry can use to mean whatever he wants it to mean, to be a tacit admission that

26  in fact there is no client/server relationship between routines he has identified in a shared library

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

and the rest of Browser. If there were a client/server relationship it would be plainly obvious from an examination of the code. There are well accepted means of interfacing clients to servers in the art and were such an interface present between Browser and the shared library relied on by Dr. Mowry, Dr. Mowry should have no trouble pointing precisely and specifically to the client/server interface. To date, he has never been able to do so. █████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

There is no need for "glue code," and in my opinion Dr. Mowry is simply trying to explain away large holes in his analysis via hand-waving while trying to sound credible through the use of jargon. Nonetheless, a person of ordinary skill in the art would not find Dr. Mowry's analysis credible, and would not consider any of the code he identifies to be "glue code" that serves the purpose Dr. Mowry claims.

107.    In fact, I note that the '647 patent uses a very different term for the type of code Dr. Mowry claims must exist—an "application programming interface." '647 patent, Col. 2:41-54 ("Since the program may be executed during the run-time of another program, *i.e.*, the application which presents the document, such as Microsoft Word, an application program interface provides mechanisms for interprogram communications. The application program interface retrieves and transmits relevant information from the other program to the user interface for identifying, presenting and enabling selecting of detected structures."). This is because the '647 patent generally conceives of the "analyzer server" as part of a program that is separate from other programs (*i.e.*, applications) on the claimed computer-based system and thus provides for code— which is still part of the claimed program, not the application—for interfacing with applications. This is demonstrated in Figures 1 and 2 of the '647 patent, which depict the program of the claimed invention separate from applications, and containing an application programming interface to allow applications to communicate with it. Dr. Mowry chooses to refer to code that allows applications to communicate with the analyzer server in the '647 patent as "glue code," and

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

claims it exists in the applications, however, because, I presume, he is aware that the patent's repeated discussion of an application programming interface and a separate program generally reinforces that the inventors conceived of the "analyzer server" as separate from the clients it served, and thus reinforces that he is wrong in his opinion that the "analyzer server" need not be separate from applications in the first place.

108.   At paragraph 226-229 of his report, Dr. Mowry purports to address this noninfringement argument in general (without referring specifically to Browser).  I do not find any of his points persuasive.  Dr. Mowry's technical arguments boil down to the exact same points as recited above regarding "shared libraries" and "glue code."  As I set forth above, (a) Dr. Mowry appears to have failed to even perform the necessary analysis to support the claims he makes, (b) Dr. Mowry has failed to apply or disclose any objective criteria by which one can determine when routines that perform "detection" and "linking" form a "server routine," (c) Dr. Mowry's opinion that a shared library is the same as a "server" is far outside the professional norm, (d) Dr. Mowry's analysis is factually wrong, and ███████████████████████████████████ ███████████████████████████████████ ████████████████████████ ███ ████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ██████████████████████████.  If the Accused Devices contained server routines separate from a client the code would clearly show this. In fact the code does not show this and Dr. Mowry has never cleanly or clearly articulated any substantive measure by which the shared libraries he relies on are separate from the rest of Browser.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

(ii)     The Routines Dr. Mowry Identifies Do Not Form a "Server Routine"

110.     As was the case with "server," Dr. Mowry nowhere squares his analysis with the fact that he does not identify anything a person of ordinary skill in the art would consider a "server routine."  Dr. Mowry's entire analysis is premised on first finding the presence of functions for "analyzing" (*e.g.*, functions for detecting and linking) and then simply calling whatever it is he found a "server" and therefore he finds "server routines."  That is, Dr. Mowry appears to believe that if the *functions* of an "analyzer" are present then an analyzer server is necessarily present and any routines employed by the alleged server must therefore be "server routines."  Never does Dr. Mowry actually identify any server functions or other indicia of a "server" in the Accused Devices as that term would be understood by a person of ordinary skill in the art.  I do not believe Dr. Mowry has applied any objective criteria that would be accepted by persons in the community of experts to determine whether the server routines required by Judge Posner's construction of the analyzer server are present in the Accused Devices.

111.     ███████████████████████████████████████

██████████████████████   ████████████   ████████████

████████████████████████████████████████████████████████

Moreover, there is no server in the Accused Devices that performs the functions of detecting structures and linking actions to detected structures.  For these reasons, there can be no "server routines" as required by Judge Posner's construction of "analyzer server" in Browser.

(iii)     The "Analyzer Server" Routines Dr. Mowry Identifies Do Not Receive Data from a Client

112.     Dr. Mowry nowhere addresses the requirement of Judge Posner's construction that the "server routine" Dr. Mowry purports to identify must "receive data from a client."  Therefore, Dr. Mowry does not appear to claim that this part of Judge Posner's construction is met. This is not surprising because in fact, the required "receive data from a client" is not met. This is because the

98

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1   routines Dr. Mowry identifies in fact do not receive data from a client. ███████

2   █████████████████████████████████████████████████████████████████

3   █████████████████████████████████████████████████████████████████

4   ███████████████████████████████████████████

5        113.   A person of ordinary skill in the art would understand that the notion of the server

6   routine in Judge Posner's construction receiving data from a client requires that the server routine

7   be executed by an active entity such as a server, an entity capable of performing actions on its own

8   (unlike a shared library which cannot perform any operation on its own). ███████████

9   █████████████████████████████████████████████████████████████████

10  █████████████████████████████████████████████████████████████████

11  █████████████████████████████   For this reason, Browser in the accused Froyo,

12  Gingerbread and Ice Cream Sandwich system do not contain program routine(s) that receives data,

13  and hence do not contain the "analyzer server" limitation of claim 1 under Judge Posner's

14  construction of the term "analyzer server."

15        **2.**   **<u>Browser (Jelly Bean) Does Not Satisfy Claim 1 Because Browser Does</u>**

16          **<u>Not Have "An Analyzer Server for Detecting Structures in the Data</u>**

17          **<u>and for Linking Actions to Detected Structures"</u>**

18       114.   In paragraphs 132, 135-137, 138-143, 227, 229 and 231, Dr. Mowry opines that

19  Jelly Bean Accused Devices with Browser satisfy the limitation "an analyzer for detecting

20  structures in the data and for linking actions to the detected structures."  For the reasons set forth

21  below, I disagree.  I understand that Apple proposes that the claim term "analyzer server" be

22  construed to mean "a program routine(s) that receives data, uses patterns to detect structures in the

23  data, and links actions to the detected structures."  I understand Judge Posner rejected this

24  construction.  I discuss Dr. Mowry's analysis under both constructions in this section, and the

25  construction adopted by Judge Posner more specifically in the section following.

26

27

28

99

115.    As an initial matter, as with pre-Jelly Bean products, Dr. Mowry nowhere squares his analysis with the fact he does not identify anything a person of ordinary skill in the art would consider a "server."   Dr. Mowry's entire analysis is premised on first finding the presence of functions for "analyzing" (*e.g.*, functions for detecting and linking) and then simply calling whatever it is he found a "server." That is, Dr. Mowry appears to believe that if the functions of an "analyzer" are present then an analyzer server is necessarily present. Never does Dr. Mowry actually identify any server functions or other indicia of a "server" in the Accused Devices as that term would be understood by a person of ordinary skill in the art.  I do not believe Dr. Mowry has applied any objective criteria that would be accepted by persons in the community of experts to determine whether there is a server that is the claimed "analyzer server" in the Accused Devices.

116.    ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████   A person of ordinary skill in the art would not find that a "shared library" is a "server."   "Shared libraries" and "servers" are different, well-known concepts in computer science, and even a computer science major at Carnegie Mellon university would not confuse the two. A shared library is a collection of routines that provide functions that are expected to be used in multiple applications. And when an application uses a shared library, the code of that library is integrated into the application and becomes part of the application. In particular, at run-time, code in a shared library used by an application is indistinguishable from any other piece of application code. Shared libraries exist solely as a convenience to the programmer. Shared libraries save the programmer the effort of having to write routines to implement common functions. Beyond this time saving convenience (that can be achieved in other ways without using a shared library), there is no functional benefit to using a shared library. For example, had the programmer not used a shared library and had instead written or incorporated routines found in a shared library as part of her application, then one could not tell the difference

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

between one program using routines from the shared library and another program using the same routines that were part of the application.  As such, the use of shared libraries (versus code placed in the application directly) adds no value to the user experience.  Moreover, a shared library is passive; it does nothing by itself. Until the library is integrated into the application and used by the application, the code in the shared library does nothing (and is incapable of doing anything).

117.    In contrast, a server is an active component of a computer system. It is the execution of program that communicates with (provides services to) and is separate from, programs interacting with the server. *The Authoritative Dictionary of IEEE Standard Terms* (7th Ed., 2000).  A server is a program whereas a shared library is a *part* of a program. Without a program to execute a shared library, a shared library is not capable of performing any function; a server, however, provides functions on its own. I note that in the computer science field in September 1994, as well as today, computer science and engineering students would typically first encounter the concept of a "server" in an operating systems or networking/distributed systems course. I taught such courses in September 1994 and I know that texts commonly used in that period, such as Abraham Silberschatz & Peter Galvin, *Operating System Concepts*, Addison Wesley (4th Ed. 1994), Andrew S. Tanenbaum, *Distributed Operating Systems*, Prentice Hall (1994), Douglas E. Comer, *Internetworking with TCP-IP: Principles, Protocols and Architecture* (1988), all described a server in manner consistent with the IEEE Dictionary and my explanations here.  ***None*** of these texts teach or suggest that a shared library is ever considered a server.  It is a basic error to conflate a shared library with a server.

118.    Accordingly, it is my opinion Dr. Mowry's analysis is insufficient to show an "analyzer server" under any construction.  Dr. Mowry has failed to apply any discernible, objective criteria that would be accepted by persons in the community of experts in the field to determine if there is an "analyzer server" in the Accused Devices.  His entire analysis appears to be driven by a search for functionality without any application of the sort of expertise that would be available to a person operating in this field.  Merely citing to functions in code and related

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

functionality does not demonstrate the existence of an "analyzer server," and my own analysis demonstrates that in fact there is no indicia of an "analyzer server" in the Accused Devices. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████

119.    I further note that Apple's construction, in stating that the analyzer server "links actions to the detected structure" appears to require that multiple actions be linked to a detected structure. ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ ███████. For this additional reason, Dr. Mowry's analysis does not show an "analyzer server" under any construction.

120.    I also note that under Apple's own construction of analyzer server, the analyzer server must be "program routine(s) that receive[] data," but, as set forth below, Dr. Mowry does not even attempt to show that the routines he identifies receive data.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'**
**EYES ONLY – SOURCE CODE**
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1

2

3

4

5

6

7

8

9    ████████   While I disagree with Dr. Mowry that multiple *types* of structures must be detected in

10   the data, the language is plain that the routine must be capable of detecting and linking

11   "structures" (*i.e.*, more than one instance of a structure).   In fact, when attempting to dismiss

12   anticipatory prior art, Apple argued that detecting only one structure at a time was not sufficient

13   for "detection," particularly when it requires user input ███████████████

14

15   Unlike the system disclosed in the '647 Patent, Sidekick does not
     itself perform any detection. Instead, Sidekick's Dialer feature

16   requires a user to enter various prompts to enable a single
     telephone number to be highlighted at any given time. Thus, unlike

17   the '647 Patent, the Sidekick system requires user prompts to select
     a single piece of data

18   Apple's Supplemental Response to Interrogatory No. 26 (at page 104-105).   ███████████

19

20

21

22

23

24

25

26

27

28

103

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

(b)    Browser (Jelly Bean) Does Not Satisfy the Analyzer Server

Limitation Under Judge Posner's Construction For Multiple Reasons

125.    In paragraphs 144-152, and 227-228, Dr. Mowry purports to analyze whether or not Browser on Jelly Bean (and other) Devices satisfies Judge Posner's construction of the "analyzer server" term.  Judge Posner of the District Court for the Northern District of Illinois has construed this term to mean "a server routine separate from a client that receives data having structures from the client."   Under Judge Posner's construction of this term, it is my opinion that the Accused Products do not satisfy the "analyzer server" limitation, for a number of reasons.

(i)    The Detection and Linking Code Dr. Mowry Identifies Is

Not Separate From the Browser Application

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

Accordingly, it is my opinion that the routines identified by Dr. Mowry as forming the "analyzer server" are not "separate from a client."

127.    Dr. Mowry address his finding of "separateness" in paragraph 145 of his report. He states, without providing any explanation or evidence, that "[t]hese shared libraries which are generally available for different applications to use, exist independently of—that is, they are 'separate from'—the 'client' required by Samsung's construction." There appears to be no dispute

---

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

that the "client" at issue here is Browser. ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████

██   ████████████████████████████████████████████

██████████████████████████████   ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

129.   In the same paragraph, Dr. Mowry also states that "there must be interface 'glue code'" in any client-server relationship.  This is nonsense, both as a matter of computer science and as applied to the Browser.  "Glue code" is jargon and not an accepted term of art with any definite, or agreed upon meaning. For example, I note that an authoritative source of accepted definitions in the computing field, *The Authoritative Dictionary of IEEE Standard Terms* (7th Ed., 2000), contains no entry for "glue code." I take Dr. Mowry's use of such jargon, a term that essentially Dr. Mowry can use to mean whatever he wants it to mean, to be a tacit admission that in fact there is no client/server relationship between routines he has identified in a shared library

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

and the rest of Browser. If there were a client/server relationship it would be plainly obvious from an examination of the code. There are well accepted means of interfacing clients to servers in the art and were such an interface present between Browser and the shared library relied on by Dr. Mowry, Dr. Mowry should have no trouble pointing precisely and specifically to the client/server interface. To date, he never been able to do so. ████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ There is no need for "glue code," and in my opinion Dr. Mowry is simply trying to explain away large holes in his analysis via hand-waving while trying to sound credible through the use of jargon. Nonetheless, a person of ordinary skill in the art would not find Dr. Mowry's analysis credible, and would not consider any of the code he identifies to be "glue code" that serves the purpose Dr. Mowry claims.

130.     In fact, I note that the '647 patent uses a very different term for the type of code Dr. Mowry claims must exist—an "application programming interface."  '647 patent, Col. 2:41-54 ("Since the program may be executed during the run-time of another program, *i.e.*, the application which presents the document, such as Microsoft Word, an application program interface provides mechanisms for interprogram communications.  The application program interface retrieves and transmits relevant information from the other program to the user interface for identifying, presenting and enabling selecting of detected structures.").  This is because the '647 patent generally conceives of the "analyzer server" as part of a program that is separate from other programs (*i.e.*, applications) on the claimed computer-based system and thus provides for code— which is still part of the claimed program, not the application—for interfacing with applications. This is demonstrated in Figures 1 and 2 of the '647 patent, which depict the program of the claimed invention separate from applications, and containing an application programming interface to allow applications to communicate with it.  Dr. Mowry chooses to refer to code that allows applications to communicate with the analyzer server in the '647 patent as "glue code," and

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

claims it exists in the applications, however, because, I presume, he is aware that the patent's repeated discussion of an application programming interface and a separate program generally reinforces that the inventors conceived of the "analyzer server" as separate from the clients it served, and thus reinforces that he is wrong in his opinion that the "analyzer server" need not be separate from applications in the first place.

131.    At paragraph 226-229 of his report, Dr. Mowry purports to address this noninfringement argument in general (without referring specifically to Browser).  I do not find any of his points persuasive.  Dr. Mowry's technical arguments boil down to the exact same points as recited above regarding "shared libraries" and "glue code."  As I set forth above, (a) Dr. Mowry appears to have failed to even perform the necessary analysis to support the claims he makes, (b) Dr. Mowry has failed to apply or disclose any objective criteria by which one can determine when routines that perform "detection" and "linking" form a "server routine," (c) Dr. Mowry's opinion that a shared library is the same as a "server" is far outside the professional norm, (d) Dr. Mowry's analysis is factually wrong, and ██████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████████ ████ ███████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████████ If the Accused Devices contained server routines separate from a client the code would clearly show this. In fact the code does not show this and Dr. Mowry has never cleanly or clearly articulated any substantive measure by which the shared libraries he relies on are separate from the rest of Browser.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

(ii)     <u>The Routines Dr. Mowry Identifies Do Not Form a "Server Routine"</u>

133.   As was the case with "server," Dr. Mowry nowhere squares his analysis with the fact he does not identify anything a person of ordinary skill in the art would consider a "server routine."  Dr. Mowry's entire analysis is premised on first finding the presence of functions for "analyzing" (*e.g.*, functions for detecting and linking) and then simply calling whatever it is he found a "server" and therefore found "server routines." That is, Dr. Mowry appears to believe that if the functions of an "analyzer" are present then an analyzer server is necessarily present and any routines employed by the alleged server must therefore be "server routines." Never does Dr. Mowry actually identify any server functions or other indicia of a "server" in the Accused Devices as that term would be understood by a person of ordinary skill in the art.  I do not believe Dr. Mowry has applied any objective criteria that would be accepted by persons in the community of experts to determine whether the server routines required by Judge Posner's construction of the analyzer server are present in the Accused Devices.

134.   █████ ████ ████ █ ████ ████ ████ █ █ ████ █ ███
████████████████████████████████████████████████████ ██
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████ For these reasons, there can be no "server routines" as required by Judge Posner's construction of "analyzer server" in Browser.

(iii)    <u>The "Analyzer Server" Routines Dr. Mowry Identifies Do Not Receive Data from a Client</u>

135.   Dr. Mowry nowhere addresses the requirement of Judge Posner's construction that the "server routine" Dr. Mowry purports to identify must "receive data from a client."  Therefore, Dr. Mowry does not appear to claim that this part of Judge Posner's construction is met. This is not surprising because in fact, the required "receive data from a client" is not met. This is because the

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

routines Dr. Mowry identifies in fact do not receive data from a client. ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████

136.    A person of ordinary skill in the art would understand that the notion of the server routine in Judge Posner's construction receiving data from a client requires that the server routine be executed by an active entity such as a server, an entity capable of performing actions on its own (unlike a shared library which cannot perform any operation on its own). ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ For this reason, Browser in the accused Jelly Bean systems do not contain program routine(s) that receives data, and hence do not contain the "analyzer server" limitation of claim 1 under Judge Posner's construction of the term "analyzer server."

**3.    Browser (All Versions) Does Not Satisfy the Analyzer Server Limitation Because It Does Not Link Actions to Detected Structures**

137.    Accused Products using all versions of Browser do not satisfy the limitation "an analyzer server… for linking actions to detected structures."  I understand that Apple proposes that the claim term "linking actions to the detected structures" be construed to mean "associating the detected structures to computer subroutines that cause the CPU to perform a sequence of operations on the particular structures to which they are associated."  I understand Judge Posner rejected this construction.  I discuss Dr. Mowry's analysis under both constructions in this section, and the construction adopted by Judge Posner more specifically in the section following. ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

1 ████████████████████████████████████████████████████

2 ██████████████    ██████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ██████    One of ordinary skill in the art would not consider what the Accused Products do to be

6 "linking actions to detected structures."

7        138.    As an initial matter, I note that Dr. Mowry's analysis once again searches for a

8 function—this time, performing the task of determining how to respond to a user's input—and

9 then tries to shoehorn the function into the claims of the '647 patent.  In this instance, Dr. Mowry's

10 functional analysis is particularly ill-founded, however, as he does not even look for the right

11 function.  Instead of looking for the creation of a "link" between structures and actions a user

12 desires to have performed (*i.e.*, "linking"); Dr. Mowry looks instead at the fact that the system

13 performs a determination task in response to user interaction.  But simply performing a task in

14 response to user interaction does not show "linking."  Yet Dr. Mowry's entire analysis depends on

15 how the system responds *after* user interaction, and nowhere actually identifies a "link" that is

16 created between a structure and an action.  The concept of a link is not a difficult or obscure

17 concept in computer science.  In its simplest and most straightforward realization, a link is a

18 pointer.  In the context of the '647 patent, the simplest realization of a link would be a pointer to a

19 function to perform an action on a detected structure. If the claimed "linking" or "linked action"

20 were present in Browser it should be easy to point to with precision (because we have the source

21 code). Dr. Mowry does not do this.  Moreover, the '647 patent does not require—nor even

22 contemplate—that user interaction would be necessary for the creation of a "link" (for "linking to

23 be performed").[21]  To the point, it is simply incorrect to mistake, as Dr. Mowry's entire analysis

24 does, "performing a task as requested by a user" with "linking actions to detected structures."  The

25 ─────────────────────

26     [21]  As discussed below, the patent requires "a user interface enabling the selection of a detected structure and a linked action," and there cannot be a linked action selected by a user,

27 given Dr. Mowry's analysis.

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

two are, in fact, completely different.  In the former case the system must determine which action is requested by the user (*i.e.*, request processing is required) while in the latter case no such processing is required at the time of a user selection because the action to be performed is known and linked to the selection.

139.  In paragraphs 138-143, 146, and 234-247, Dr. Mowry discusses what he identifies as the routines that perform "linking" in the Accused Devices (his allegations are essentially the same against each version of Browser).  And in no case does Dr. Mowry identify a "link" between detected structures and actions.  Dr. Mowry's analysis hides this fact by obscuring the timing of the operations he identifies, and by ignoring what "actions" Dr. Mowry claims are being linked.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



141.   Dr. Mowry's description of this process is not particularly clear.

Intents are not links and instead are "abstract

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

description[s] of [] operation[s] to be performed."   Ex. 7 to Mowry PI Declaration – Android Developers              Reference           –           Intent,        *available*          *at* http://developer.android.com/reference/android/content/Intent.html.       In particular, Intents are descriptions (text strings) of actions, they are not actions themselves. Intents are a distinct alternative to links and are used instead of links to delay the binding between functions and user inputs.  Intents do not "link" what sequence of operations the CPU will perform on the structure to the structure—

Given an implicit Intent, the application must determine which of the system components available to perform the action described by the Intent is the best component to use.  Ex. 7 to Mowry PI Declaration – Android Developers Reference – Intent, *available at* http://developer.android.com/reference/android/content/Intent.html. That this determination of the best component to use is performed is further evidence of a lack of linking.  If actions were linked, no determination would be necessary.

142.   In my opinion, as compared to a system that "link[s] actions to detected structures," the application accused of infringement by Dr. Mowry uses a completely different mechanism to act on a user's input.

114

. Because there is
no "link" from a detected structure to any action, it is therefore not surprising that Dr. Mowry
cannot clearly point out any link.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

116

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

 (a)      <u>Browser (All Versions) Does Not Link Actions to Detected</u>

<u>Structures Under Judge Posner's Construction</u>

146.    Judge Posner construed the claim term "linking actions to detected structures" as "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on the detected structure."

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

**4.** **Browser (All Versions) Does Not Satisfy the User Interface Limitation Because the User Interface Dr. Mowry Accuses Does Not Enable Selection of a "Linked Action"**

148.    Accused Products using all versions of Browser do not satisfy the limitation "a user interface enabling the selection of a detected structure and a linked action" for at least two reasons.

149.    First, because the Accused Devices do not perform the claimed "linking," the user interface routines that Dr. Mowry accuses in paragraphs 153-158 of his report cannot enable selection of a "linked action."

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1　██　██████████████████████████████████

2　████████████████████████████████████████

3　████████████████████████████████████████

4　███　████████████████████████████████████

5　████████████████████████████████████████

6　████████████████████████████████████████

7　██████████████████████████

8　██　██████████████████████████████████

9　████████████████████████████████████████

10　████████████████████████████████████████

11　████████████████████████████████████████

12　████████████████████████████████████████

13　████████████████████████████████████████

14　████████████████████████████████████████

15　████████████████████████████████

16　██　██████████████████████████████████

17　████████████████████████████████████████

18　████████████████████████████████████████

19　██████████████████████　█████████████████

20　████████████████████████████████████████

21　████████████████████████████████████████

22　████████████████████████████████████████

23　████████████████████████████████████████

24　████████████████████████████████████　███

25　████████████████████████████████████████

26　████████████████████████████████████████

27

28

119

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'**
**EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



Accordingly, the Accused Devices do satisfy the "user interface" limitation even under Dr. Mowry's analysis because the user interface does not enable "the selection of a detected structure and a linked action."

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

**5.**     **Browser (Jelly Bean) Does Not Satisfy the User Interface Limitation Because the User Interface Does Not Enable Selection of a "Detected Structure."**

155.    Accused Jelly Bean Devices with Browser do not satisfy the limitation "a user interface enabling the selection of a detected structure and a linked action" for an additional reason.  Dr. Mowry opines that this limitation is met in paragraphs 157-158, 232-233, and 250-255 of his report, but his discussion is misleading because he obscures when the routines he identifies are called in relation to the "detection" that Dr. Mowry alleges takes place.  To put the discussion above in plain terms, the user first makes a "selection" of a structure the user has identified on the screen.  ███████████████████████████████████████████████ ███████████████████████████  *After* Dr. Mowry's "detection" has taken place, the user cannot somehow re-select the structure Dr. Mowry says has been "detected"—the user input has already been made, and then detection has been performed according to Dr. Mowry.

156.    At this point, a context menu is then presented to the user, and the user *cannot* select the structure that Dr. Mowry alleges has been detected.  Although the structure the user originally detected is presented to the user (as shown below), the user is only ever selecting one of the displayed menu items and is not selecting any detected structure.  In fact, it would make no sense for the user to select the structure displayed in the menu because the user has already previously made their selection.  Such a redundant selection would serve no purpose.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

**Screenshot of the Browser application in the Samsung Galaxy Nexus, after a user long presses on a phone number in a web page**

In other words, it is *impossible* for a user to select a "detected structure," because after the structure has been "detected" by Browser, the only user interface that is presented to the user actually blocks the user from further selecting the "detected structure." The user can only make selections of options from the menu—not any "structures." Thus, though the "detected structure" identified by Dr. Mowry is displayed to the user, *it cannot be selected*. I have confirmed this both by using the accused devices and by examining the source code for the context menu that is created (the process of which is described in paragraph 158 of Dr. Mowry's report). Moreover, Dr. Mowry has provided no evidence, despite having ample access to the source code, that any "detected structure" is actually selected by the user via the context menu at issue. If selections were possible and occurring, Dr. Mowry would be able to prove this via a code trace. He has not done so because he cannot do so. For these reasons, it is my opinion that Accused Jelly Bean Devices with Browser do not satisfy the limitation "a user interface enabling the selection of a detected structure and a linked action."

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

157.    Dr. Mowry attempts to further address this limitation in paragraphs 232-233, and 250-255 of his report. ██████████████████████████

██████████████████████ Dr. Mowry compares this to Figure 5 and accompanying text in the '647 patent, and says the operation ████████████████ is equivalent to the use of the "Detect Structures" button in Figure 5.  But Dr. Mowry ignores that the "Detect Structures" button is specifically *not* described as the "user interface that enabling selection of a detected structure and a linked action."  In fact, the "Detect Structures" button is described as initiating the claimed program routines—*not*  as part of the user interface routines that would be initiated.  '647 patent, Col. 5:19-37.  The "user interface" is not depicted until Figure 6 (**240**), as described in Col. 5, lines 29-37, which isn't presented until *after* the "Detect Structures" button is selected and the program routines are run as described.  In other words, Dr. Mowry points to a portion of the '647 patent that only confirms that the user interface allow selection of a structure *after* it has been detected.

158.    In paragraphs 250-255, Dr. Mowry opines that the "structures are detected as the user makes the selection."  This is plainly false, as I demonstrated above. ██████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1   ███████████████████████████████████████████████████ Therefore,

2   *user selection occurs before detection.*

3       159.    I note that the '647 patent specifically contemplates that selection occurs at the time

4   the coordinates of a user's input have been determined:

> User interface 240 communicates with application 167 through
> application program interface 230 to determine if a user has
> performed a mouse-down operation in a particular mouse-sensitive
> presentation region, **thereby selecting the structure presented at
> those coordinates**. Upon selection of this structure, user interface
> 240 presents and enables selection of the linked candidate actions
> using any selection mechanism, such as a conventional pull-down or
> pop-up menu.

10  '647 patent, Col. 4:22-31.

11  ████    ████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████

13  ████████████████████████

14      **6.      Browser (All Versions) Does Not Satisfy the Action Processor**

15          **Limitation as Construed By the Court Because the Routines Dr. Mowry**

16          **Identifies Does Not "perform the selected action on the detected**

17          **structure."**

18      161.    The court has construed the "action processor" limitation as "program routine(s)

19  that perform the selected action on the detected structure."  In paragraphs 159-161 of his report, Dr.

20  Mowry purports to identify an "action processor" in the Accused Devices with Brower, but he

21  does not appear to apply the court's construction.  *See also*, Mowry paragraphs 257-262.

22  ████    ████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████

24  ██████████████████████████████████████████      ████████

25  ███████████████████████████████████████████████████████

26

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



125

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

IV.     **SAMSUNG ACCUSED PRODUCTS WITH MESSENGER DO NOT INFRINGE THE ASSERTED CLAIMS OF THE '647 PATENT**

166.    In my opinion, the Samsung Accused Products with Messenger do not infringe claim 1, for the reasons set forth below:

1.      **Messenger (All Versions) Does Not Satisfy Claim 1 Because Messenger Does Not Have "An Analyzer Server for Detecting Structures in the Data and for Linking Actions to Detected Structures"**

167.    In paragraphs 192-208, 227, 229, and 231, Dr. Mowry opines that Accused Devices with Messenger satisfy the limitation "an analyzer for detecting structures in the data and for linking actions to the detected structures."   For the reasons set forth below, I disagree.   I understand that Apple proposes that the claim term "analyzer server" be construed to mean "a program routine(s) that receives data, uses patterns to detect structures in the data, and links actions to the detected structures."  I understand Judge Posner rejected this construction.  I discuss Dr. Mowry's analysis under both constructions in this section, and the construction adopted by Judge Posner more specifically in the section following.

168.    As an initial matter, Dr. Mowry nowhere squares his analysis with the fact he does not identify anything a person of ordinary skill in the art would consider a "server."  Dr. Mowry's entire analysis is premised on first finding the presence of functions for "analyzing" (*e.g.*, functions for detecting and linking) and then simply calling whatever it is he found a "server." That is, Dr. Mowry appears to believe that if the functions of an "analyzer" are present then an analyzer server is necessarily present. Never does Dr. Mowry actually identify any server functions or other indicia of a "server" in the Accused Devices as that term would be understood by a person of ordinary skill in the art.  I do not believe Dr. Mowry has applied any objective criteria that would be accepted by persons in the community of experts to determine whether there is a server that is the claimed "analyzer server" in the Accused Devices.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

169. ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████   A person of ordinary skill in the art would not find that a "shared library" is a "server."  "Shared libraries" and "servers" are different, well-known concepts in computer science, and even a computer science major (for instance, a student of Dr. Mowry's at Carnegie Mellon University) would not confuse the two. A shared library is a collection of routines that provide functions that are expected to be used in multiple applications. And when an application uses a shared library, the code of that library is integrated into the application and becomes part of the application. In particular, at run-time, code in a shared library used by an application is indistinguishable from any other piece of application code. Shared libraries exist solely as a convenience to the programmer. Shared libraries save the programmer the effort of having to write routines to implement common functions. Beyond this time saving convenience (that can be achieved in other ways without using a shared library), there is no functional benefit to using a shared library. For example, had the programmer not used a shared library and had instead written or incorporated routines found in a shared library as part of her application, then a user could not tell the difference between one program using routines from the shared library and another program using the same routines that were part of the application. As such, the use of shared libraries (versus code placed in the application directly) adds no value to the user experience. Moreover, a shared library is passive; it does nothing by itself. Until the library is integrated into the application and used by the application, the code in the shared library does nothing (and is incapable of doing anything).

170. In contrast, a server is an active component of a computer system. It is the execution of program that communicates with (provides services to) and is separate from, programs interacting with the server. *The Authoritative Dictionary of IEEE Standard Terms* (7th Ed., 2000) at 1031 (entry for "server"(5)).  A server is a program whereas a shared library is a part

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

of a program. Without a program to execute a shared library, a shared library is not capable of performing any function; a server, however, provides functions on its own. I note that in the computer science field in September 1994, as well as today, computer science and engineering students would typically first encounter the concept of a "server" in an operating systems or networking/distributed systems course. I taught such courses in September 1994 and I know that texts commonly used in that period, such as Abraham Silberschatz & Peter Galvin, *Operating System Concepts*, Addison Wesley (4th Ed. 1994), Andrew S. Tanenbaum, *Distributed Operating Systems*, Prentice Hall (1994), Douglas E. Comer, *Internetworking with TCP-IP: Principles, Protocols and Architecture* (1988), all described a server in manner consistent with the IEEE Dictionary and my explanations here. ***None*** of these texts teach or suggest that a shared library is ever considered a server.  It is a basic error to conflate a shared library with a server.

171.    Accordingly, it is my opinion Dr. Mowry's analysis is insufficient to show an "analyzer server" under any construction.  Dr. Mowry has failed to apply any discernible, objective criteria that would be accepted by persons in the community of experts in the field to determine if there is an "analyzer server" in the Accused Devices.  His entire analysis appears to be driven by a search for functionality without any application of the sort of expertise that would be available to a person operating in this field.  Merely citing to functions in code and related functionality does not demonstrate the existence of an "analyzer server," and my own analysis demonstrates that in fact there is no indicia of an "analyzer server" in the Accused Devices.

172.    I further note that Apple's construction, in stating that the analyzer server "links actions to the detected structure" appears to require that multiple actions be linked to a detected structure.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1

2

3

4

5

6

7

8

9

10 For this additional

11 reason, Dr. Mowry's analysis does not show an "analyzer server" under any construction.

12 (a) Messenger (All Versions) Does Not Satisfy the Analyzer Server

13 Limitation Under Apple's Construction

14 173. Apple's construction of "analyzer server" is "a program routine(s) that receives data,

15 uses patterns to detect structures in the data, and links actions to the detected structure."  Under

16 Apple's construction of analyzer server, the analyzer server must be "program routine(s) that

17 receive[] data," but, as set forth below, Dr. Mowry does not even attempt to show that the routines

18 he identifies *receive* data.

19 174. A person of ordinary skill in the art would understand that the notion of the claimed

20 analyzer server "receiving" data in the '647 patent is a server receiving data from a

21 sending/requesting entity. In particular, that the analyzer server "receives" requires that the server

22 be an active entity such as a program, an entity capable of performing actions on its own (unlike a

23 shared library which cannot perform any operations on its own).

24

25

26 For this reason, Messenger in the accused Froyo, Gingerbread

27

28
HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

and Ice Cream Sandwich system do not contain program routine(s) that receives data, and hence do not contain the "analyzer server" limitation of claim 1 under Apple's construction of the term "analyzer server."

          (b)      <u>Messenger (All Versions) Does Not Satisfy the Analyzer Server</u>

                   <u>Limitation Under Judge Posner's Construction For Multiple Reasons</u>

     175.   In paragraphs 202 and 227-228, Dr. Mowry purports to analyze whether or not Messenger satisfies Judge Posner's construction of the "analyzer server" term.  Judge Posner of the District Court for the Northern District of Illinois has construed this term to mean "a server routine separate from a client that receives data having structures from the client."  Under Judge Posner's construction of this term, it is my opinion that the Accused Products do not satisfy the "analyzer server" limitation, for a number of reasons.

                (i)      <u>The Detection and Linking Code Dr. Mowry Identifies Is</u>

                   <u>Not Separate From the Messenger Application</u>

██ ████████████████████████████████████

███████████████████████████████████████

██████ ████████████████████████████████

████████████████████ ███████████████████

█████████████████████████████████████ █

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████ █████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

Accordingly, it is my opinion that the routines identified by Dr. Mowry as forming the "analyzer server" are not "separate from a client."

177.   Dr. Mowry addresses his finding of "separateness" in paragraph 202 of his report. He states, without providing any explanation or evidence, that "[t]hese shared libraries which are generally available for different applications to use, exist independently of—that is, they are 'separate from'—the 'client' required by Samsung's construction." There appears to be no dispute that the "client" at issue here is Messenger.

132

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

179.   In the same paragraph, Dr. Mowry also states that "there must be interface 'glue code'" in any client-server relationship.  This is nonsense, both as a matter of computer science and as applied to the Messenger.  "Glue code" is jargon and not an accepted term of art with any definite, or agreed upon meaning. For example, I note that an authoritative source of accepted definitions in the computing field, "The Authoritative Dictionary of IEEE Standard Terms" (7th Ed., 2000), contains no entry for "glue code."  I take Dr. Mowry's use of such jargon, a term that essentially Dr. Mowry can use to mean whatever he wants it to mean, to be a tacit admission that in fact there is no client/server relationship between routines he has identified in a shared library and the rest of Messenger. If there were a client/server relationship it would be plainly obvious from an examination of the code. There are well-accepted means of interfacing clients to servers in the art and were such an interface present between Messenger and the shared library relied on by

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1    Dr. Mowry, Dr. Mowry should have no trouble pointing precisely and specifically to the

2    client/server interface. To date, he never been able to do so. ████████████████████

3    ████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████

5    ████    There is no need for "glue code," and in my opinion Dr. Mowry is simply trying to explain

6    away large holes in his analysis via hand-waving while trying to sound credible through the use of

7    jargon.   Nonetheless, a person of ordinary skill in the art would not find Dr. Mowry's analysis

8    credible, and would not consider any of the code he identifies to be "glue code" that serves the

9    purpose Dr. Mowry claims.

10           180.    In fact, I note that the '647 patent uses a very different term for the type of code Dr.

11   Mowry claims must exist—an "application programming interface."   '647 patent, Col. 2:41-54

12   ("Since the program may be executed during the run-time of another program, *i.e.*, the application

13   which presents the document, such as Microsoft Word, an application program interface provides

14   mechanisms for interprogram communications.   The application program interface retrieves and

15   transmits relevant information from the other program to the user interface for identifying,

16   presenting and enabling selecting of detected structures.").   This is because the '647 patent

17   generally conceives of the "analyzer server" as part of a program that is separate from other

18   programs (*i.e.*, applications) on the claimed computer-based system and thus provides for code—

19   which is still part of the claimed program, not the application—for interfacing with applications.

20   This is demonstrated in Figures 1 and 2 of the '647 patent, which depict the program of the

21   claimed invention separate from applications, and containing an application programming

22   interface to allow applications to communicate with it.   Dr. Mowry chooses to refer to code that

23   allows applications to communicate with the analyzer server in the '647 patent as "glue code," and

24   claims it exists in the applications, however, because, I presume, he is aware that the patent's

25   repeated discussion of an application programming interface and a separate program generally

26   reinforces that the inventors conceived of the "analyzer server" as separate from the clients it

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

served, and thus reinforces that he is wrong in his opinion that the "analyzer server" need not be separate from applications in the first place.

181.    At paragraph 226-229 of his report, Dr. Mowry purports to address this noninfringement argument in general (without referring specifically to Messenger).  I do not find any of his points persuasive.  Dr. Mowry's technical arguments boil down to the exact same points as recited above regarding "shared libraries" and "glue code."  As I set forth above, (a) Dr. Mowry appears to have failed to even perform the necessary analysis to make the claims he makes, (b) Dr. Mowry has failed to apply or disclose any objective criteria by which one can determine when routines that perform "detection" and "linking" form a "server routine," (c) Dr. Mowry's opinion that a shared library is the same as a "server" is far outside the professional norm, (d) Dr. Mowry's analysis is factually wrong, and ████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████ █████ ███████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████. If the Accused Devices contained server routines separate from a client the code would clearly show this. In fact the code does not show this and Dr. Mowry has never cleanly or clearly articulated any substantive measure by which the shared libraries he relies on are separate from the rest of Messenger.

(ii)    <u>The Routines Dr. Mowry Identifies Do Not Form a "Server Routine"</u>

183.    As was the case with "server," Dr. Mowry nowhere squares his analysis with the fact he does not identify anything a person of ordinary skill in the art would consider a "server

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1  routine."  Dr. Mowry's entire analysis is premised on first finding the presence of functions for

2  "analyzing" (*e.g.*, functions for detecting and linking) and then simply calling whatever it is he

3  found a "server" and therefore claiming he found "server routines." That is, Dr. Mowry appears to

4  believe that if the functions of an "analyzer" are present then an analyzer server is necessarily

5  present and any routines employed by the alleged server must therefore be "server routines."

6  Never does Dr. Mowry actually identify any server functions or other indicia of a "server" in the

7  Accused Devices as that term would be understood by a person of ordinary skill in the art.  I do

8  not believe Dr. Mowry has applied any objective criteria that would be accepted by persons in the

9  community of experts to determine whether the server routines required by Judge Posner's

10  construction of the analyzer server are present in the Accused Devices.

11  ████  ███████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████

17         (iii)     The "Analyzer Server" Routines Dr. Mowry Identifies Do

18              Not Receive Data from a Client

19       185.    Dr. Mowry nowhere addresses the requirement of Judge Posner's construction that

20  the "server routine" Dr. Mowry purports to identify must "receive data from a client."  Therefore,

21  Dr. Mowry does not appear to claim that this part of Judge Posner's construction is met. This is not

22  surprising because in fact, the requirement that the "server routine" "receive data from a client" is

23  not met. This is because the routines Dr. Mowry identifies in fact do not receive data from a client.

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

186.   A person of ordinary skill in the art would understand that the notion of the server routine in Judge Posner's construction receiving data from a client requires that the server routine be executed by an active entity such as a server, an entity capable of performing actions on its own (unlike a shared library which cannot perform any operation on its own). ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████ For this reason, Messenger Accused Products does not contain program routine(s) that receives data, and hence do not contain the "analyzer server" limitation of claim 1 under Judge Posner's construction of the term "analyzer server."

### 2.   Messenger (All Versions) Does Not Satisfy the Analyzer Server Limitation Because It Does Not Link Actions to Detected Structures

187.   Accused Products using all versions of Messenger do not satisfy the limitation "an analyzer server… for linking actions to detected structures."   I understand that Apple proposes that the claim term "linking actions to the detected structures" be construed to mean "associating the detected structures to computer subroutines that cause the CPU to perform a sequence of operations on the particular structures to which they are associated."   I understand Judge Posner rejected this construction.  I discuss Dr. Mowry's analysis under both constructions in this section, and the construction adopted by Judge Posner more specifically in the section following. ████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

█████        One of ordinary skill in the art would not consider what the Accused Products do to be "linking actions to detected structures."

188.    As an initial matter, I note that Dr. Mowry's analysis once again searches for a function—this time, performing the task of determining how to respond to a user's input—and then tries to shoehorn the function into the claims of the '647 patent.  In this instance, Dr. Mowry's functional analysis is particularly ill-founded, however, as he does not even look for the right function.  Instead of looking for the creation of a "link" between structures and actions a user desires to have performed (*i.e.*, "linking"), Dr. Mowry looks instead at the fact that the system performs a determination task in response to user interaction. First, such a determination task, the task of determining which action the user would like to be performed, is not an action in the sense of the '647 patent which clearly relates actions to actions to be performed on detected structures (not actions to be performed on a menu selection). Second, simply performing a determination task in response to user interaction does not show "linking."  Yet Dr. Mowry's entire analysis depends on how the system responds *after* user interaction, and nowhere actually identifies a "link" that is created between a structure and an action.  The concept of a link is not a difficult or obscure concept in computer science. In its simplest and most straightforward realization, a link is a pointer. In the context of the '647 patent, the simplest realization of a link would be a pointer to a function to perform an action on a detected structure. If the claimed "linking" or "linked action" were present in Messenger it should be easy to point to with precision (because we have the source code). Dr. Mowry does not do this.  Moreover, the '647 patent does not require—nor even contemplate—that user interaction would be necessary for the creation of a "link" (for "linking to be performed").[28]  To the point, it is simply incorrect to mistake, as Dr. Mowry's entire analysis does, "performing a task as requested by a user" with "linking actions to detected structures."  The two are, in fact, completely different. In the former case the system must determine which action

---

[28]    As discussed below, the patent requires "a user interface enabling the selection of a detected structure and a linked action," and there cannot be a linked action selected by a user, given Dr. Mowry's analysis.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

is requested by the user (*i.e.*, request processing is required) while in the latter case no such processing is required at the time of a user selection because the action to be performed is known and linked to the selection.

189.    In paragraphs 198-200, and 234-247, Dr. Mowry discusses what he identifies as the routines that perform "linking" in the Accused Devices.  And in no case does Dr. Mowry identify a "link" between detected structures and actions.  Dr. Mowry's analysis hides this fact by obscuring the timing of the operations he identifies, and by ignoring what "actions" Dr. Mowry claims are being linked.  In plain terms, according to Dr. Mowry, "linking" to an action does not begin until *after* a user has selected a structure.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1  191.   Dr. Mowry's description of this process is not particularly clear. ████

2  ████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████

4  ████████████████  ██████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████

6  █████████████ █ ████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10 ███████████████████████████  Intents are not links and instead are "abstract

11 description[s] of [] operation[s] to be performed."  Ex. 7 to Mowry PI Declaration – Android

12 Developers          Reference          –          Intent,          *available          at*

13 http://developer.android.com/reference/android/content/Intent.html.    In  particular,  Intents  are

14 descriptions  (text  strings)  of  actions,  they  are  not  actions  themselves.  Intents  are  a  distinct

15 alternative to links and are used instead of links to delay the binding between functions and user

16 inputs.  Intents do not "link" what sequence of operations the CPU will perform on the structure to

17 the structure—████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21 ████████████████  Given an implicit Intent, the application must determine which of the

22 system components available to perform the action described by the Intent is the best component

23 to use.  Ex. 7 to Mowry PI Declaration – Android Developers Reference – Intent, *available at*

24 http://developer.android.com/reference/android/content/Intent.html. That this determination of the

25 _____

26  █ █████████████████████████████████████████████████████████████

27 ███████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1   best component to use is performed is further evidence of a lack of linking.  If actions were linked,

2   no determination would be necessary. ████████████████████████

3   ██████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████

5   ████████████████████████████████████████.

6        192.    In my opinion, as compared to a system that "link[s] actions to detected structures,"

7   the application accused of infringement by Dr. Mowry uses a completely different mechanism to

8   act on a user's input. ████████████████████████████████████

9   ██████████████████████████  ████████████████████████████████

10  ██████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████

12  ██████████████████████  ████████████████████████████████████

13  ██████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████

15  ████████████████████████████████████ Because there is

16  no "link" from a detected structure to any action, it is therefore not surprising that Dr. Mowry

17  cannot clearly point out any link.

18  ██  ████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████████

20  ████████████████████  ████████████████████████████████████

21  ██████████████████████████████████████████████████████████

22  ████████████████  █  ██████████████████████████████████████

23  ██████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████

25  _____

26  ██  ██████████████████████████████████████████████████████

27  ████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'**
**EYES ONLY – SOURCE CODE**
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

28



**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

(a)     <u>Messenger (All Versions) Does Not Link Actions to Detected</u>

<u>Structures Under Judge Posner's Construction</u>

196.    Judge Posner construed the claim term "linking actions to detected structures" as "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on the detected structure."

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1 ▮▮ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

2 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

4 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

5 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

6 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

7 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

8 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

9 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

10 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

11 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

12 ▬▬▬▬▬▬▬▬▬▬▬▬▬.

13     **3.     Messenger (All Versions) Does Not Satisfy the User Interface**

14         **Limitation Because the User Interface Dr. Mowry Accuses Does Not**

15         **Enable Selection of a "Linked Action"**

16     198.    Accused Products using all versions of Messenger do not satisfy the limitation "a

17 user interface enabling the selection of a detected structure and a linked action" for at least two

18 reasons.

19     199.    First, because the Accused Devices do not perform the claimed "linking," the user

20 interface routines that Dr. Mowry accuses in paragraphs 209-212 of his report cannot enable

21 selection of a "linked action." ▬▬▬▬▬▬▬▬

22 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

23 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

24 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

25 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

26 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**
DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

201.    In paragraphs 209-212, Dr. Mowry specifically identifies the program routines that he says "enable the selection of a linked action by displaying the context menu."  In other words, Dr. Mowry believes that the "linked actions" may be selected through the display of a context menu.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1  ██  ███████████████████████████████████████████

2  ████████████████████████████████████  ██████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ███████████████████████████████████████

6  ██  ███████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ██████████████████████████████████  Accordingly, the

10 Accused Devices do satisfy the "user interface" limitation even under Dr. Mowry's analysis

11 because the user interface does not enable "the selection of a detected structure and a linked

12 action."

        **4.**      **<u>Messenger (All Versions) Does Not Satisfy the Action Processor</u>**

                **<u>Limitation as Construed By the Court Because the Routines Dr. Mowry</u>**

                **<u>Identifies Does Not "perform the selected action on the detected</u>**

                **<u>structure"</u>**

     205.    The court has construed the "action processor" limitation as "program routine(s)

that perform the selected action on the detected structure."  In paragraphs 213-214 of his report, Dr.

Mowry purports to identify an "action processor" in the Accused Devices with Messenger, but he

does not appear to apply this construction.  *See also*, Mowry paragraphs 257-262.

21 ██  ███████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ███████████████████████████████████████  ████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████████████

27

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1        I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3

4

5    DATED:  October 31, 2013                                    _____

6                                                                    Kevin Jeffay

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          150        **HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'**
                                                      **EYES ONLY – SOURCE CODE**

DECLARATION OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647