UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**DECLARATION OF DR. DANIEL WIGDOR IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 8,074,172** |

I, Dr. Daniel Wigdor, declare as follows:

1. I have been retained by Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC (collectively "Samsung") to offer opinions regarding the non-infringement and invalidity of claim 18 of United States Patent No. 8,074,172.

2. I previously submitted reports to describe my opinions on these matters. I hereby submit this declaration regarding the same; my opinions herein mirror my opinions presented in my report in relevant part.

3. In my opinion, a person of ordinary skill in the art relevant to the '172 Patent would have had at least a Bachelor's of Science degree in computer science or equivalent coursework and at least two years of experience designing and/or implementing systems that enable user interaction and input, or the educational equivalent of at least two years experience, such as a Master's degree. Professor Cockburn asserts that a person of ordinary skill would have had at least a Bachelor of Science degree in Computer Science, and at least two to three years' experience in designing and/or implementing computer user interface systems, or the equivalent. I meet either criteria for a person of ordinary skill in the art. I would have been such a person at the time of the alleged invention of the '172 Patent.

4. A person of ordinary skill in the art at the time of the alleged invention of the '172 patent would have understood the phrase "portable electronic device with a keyboard and a touch screen display" in claim 18 of the '172 patent to mean the keyboard and touch screen display are both separate components of the portable electronic device, and that the keyboard is a physical keyboard, not a virtual one. The use of "and" is important, as it requires that the portable electronic device include a keyboard in addition to a touch screen display. Based on this language, a person of ordinary skill in the art at the time of the alleged invention would have understood it to exclude virtual keyboards, because a virtual keyboard must be *part of* the touch screen display rather than separate from it.

5. Further, a person of ordinary skill in the art at the time of the alleged invention of the '172 patent would have understood that the ordering of "portable electronic device with a

keyboard and a touch screen display", in which keyboard precedes touch screen display, means that they keyboard is not a part of the touch screen display. Every independent claim that explicitly recites the use of a virtual keyboard does so not as a component of the portable electronic device itself, but as a component of computer readable memory or a computer readable storage medium. *See, e.g.,* '172 patent at 15:39-50; 16:3-15. In each of these cases, the claims recite the use of instructions which perform the claimed limitations involving the keyboard. *See, e.g., id.* at 15:39-50; 16:3-15. Claim 21, the only other independent claim of the '172 patent that recites both a keyboard and a display in its preamble, flips these elements. *See, e.g., id.* at 13:58-62 ("portable electronic device with a display and a keyboard"). While claim 21 suggests that a keyboard might be part of a display, the context of the use of the term "keyboard" in the phrase "portable electronic device with a keyboard and a touch screen display" in claim 18 suggests the opposite: that the keyboard is separate from the touch screen display and is part of the portable electronic device whether the device includes a touch screen display or not.

6. Finally, claim 18 describes a "graphical user interface" distinct from a "portable electronic device with a keyboard". A virtual keyboard is part of a device's "graphical user interface", and not distinct from it. A person of ordinary skill in the art at the time of the alleged invention of the '172 patent would therefore understand that the preamble excludes devices where the keyboard is virtual. A person of ordinary skill in the art would recognize that a portable electronic device "with a keyboard" possesses that keyboard independently of software running on the device. That is not the case with a virtual keyboard, which requires instructions for its display and operation (i.e., software code). Like the "touch screen display" and "portable electronic device" recited in the preamble, the keyboard must be hardware. Therefore, the "keyboard" in claim 18 cannot be virtual, and must be physical.

7. Only two of the products currently accused of infringing the '172 patent include a physical keyboard: Stratosphere, and Transform Ultra. These products do not work in concert with either of the software input methods accused by Apple installed on those devices (Swype and the Android keyboard) or any software with the user interface elements necessary for infringement. I understand Apple does not accuse these physical keyboards of infringing the '172 patent.

-2-  Case No. 12-CV-00630-LHK
DECLARATION OF DR. DANIEL WIGDOR CONCERNING NONINFRINGEMENT OF U.S. PATENT 8,074,172

1  I declare under penalty of perjury under the laws of the United States of America that the
2  foregoing is true and correct.
3       Executed on October 31, 2013.

_____
Dr. Daniel Wigdor