# EXHIBIT A-22

*Oracle America v. Google – Expert Reply Report of Steven Shugan – October 10, 2011 – Subject to Protective Order (Contains Confidential and Highly Confidential/Attorneys' Eyes Only Material)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| ORACLE AMERICA, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-CV-03561-WHA |
| ) | |
| GOOGLE, INC. ) | |
| ) | |
| Defendant. ) | |

## EXPERT REPLY REPORT OF PROFESSOR STEVEN M. SHUGAN

**October 10, 2011**

*Oracle America v. Google – Expert Reply Report of Steven Shugan – October 10, 2011 – Subject to Protective Order (Contains Confidential and Highly Confidential/Attorneys' Eyes Only Material)*

A list of the materials that I have relied upon in forming my opinions is contained in Reply Appendix A.

This Reply Report summarizes the opinions I have formed on the arguments presented in the Leonard Report as they relate to my analyses.

### C) Summary of Conclusions

Dr. Leonard critiques the use of choice-based conjoint surveys by claiming that "hypothetical choice surveys are subject to various biases that can render the results unreliable,"[3] but his critiques are not supported by the academic literature. In fact, the literature – including those sources that Dr. Leonard cites – is nearly unanimous in concluding that conjoint surveys are a valuable, reliable, and widely accepted method with widespread commercial and other applications. Dr. Leonard mischaracterizes and confounds findings in the environmental economics and marketing literatures that he cites; for example, one exhaustive review article finds that hypothetical bias is minimized in conjoint studies, while Dr. Leonard implies the opposite. Furthermore, Dr. Leonard does not prove the existence of any purported bias or attempt to evaluate the extent or direction of any purported bias in the results of the 2011 Smartphone Survey.

Dr. Leonard claims that there are "problematic aspects" with the design of my 2011 Smartphone Survey, including, for example, the selection of features for the choice task and the omission of features that he claims would affect consumer demand. Dr. Leonard incorrectly asserts that the design of the survey has been driven solely by the current litigation and he mischaracterizes the support I provided to validate the design of the survey (as well as my

---

[3] Leonard Report, p. 109.

2

*Oracle America v. Google – Expert Reply Report of Steven Shugan – October 10, 2011 – Subject to Protective Order (Contains Confidential and Highly Confidential/Attorneys' Eyes Only Material)*

deposition testimony explaining the design). The 2011 Smartphone Survey was designed and conducted in an unbiased and reliable manner using methods based on proven scientific research.

Dr. Leonard claims that the feature preferences of the respondents to the 2011 Smartphone Survey are inconsistent with economic preferences that he believes all consumers should have. In fact, Dr. Leonard's analyses of the survey results are inaccurate, and he mischaracterizes the data collected from the survey. His analyses support the conservative nature of my analyses, as I did not exclude respondents who gave answers that were inconsistent with my prior beliefs or exclude respondents that would tend to increase the preference share losses associated with the copyright and patent infringements. Furthermore, I demonstrated that the results are reliable and robust and they are supported by market data.

Dr. Leonard claims that there are econometric issues in my report because I did not provide standard errors and confidence intervals on the point estimates of my preference share calculations. Dr. Leonard appears to be unaware that standard errors for the market simulations were included in the backup materials of my Expert Report, and that analysis of confidence intervals in conjoint simulations is not standard procedure.

## II. <u>OVERVIEW</u>

As I discussed in my Expert Report, I was asked to evaluate consumer preferences for various features of Smartphones. I developed a choice-based conjoint study, the 2011 Smartphone Survey, to measure the effect of specific functionality related to the patents-in-suit and Java copyrights on consumer demand and to estimate the effect of altering particular features. The features that I used in my study are application multitasking, application startup time, availability of third-party applications, mobile operating system brand, price, screen size,

3

Case 5:12-cv-00630-LHK Document 350-21 Filed 11/02/13 Page 5 of 9
Case3:10-cv-03561-WHA Document740-1 Filed02/24/12 Page15 of 34

Case 5:12-cv-00630-LHK Document 350-21 Filed 11/02/13 Page 5 of 9
Case3:10-cv-03561-WHA Document740-1 Filed02/24/12 Page15 of 34

*Oracle America v. Google – Expert Reply Report of Steven Shugan – October 10, 2011 – Subject to Protective Order (Contains Confidential and Highly Confidential/Attorneys' Eyes Only Material)*

Furthermore, the results of the 2011 Smartphone Survey are consistent with analyses of pricing data. It is my understanding that Professor Cockburn conducted a hedonic analysis of consumer willingness-to-pay for specific Smartphone attributes using data on Smartphone purchases from eBay that yields results that are consistent with the 2011 Smartphone Survey. In addition, the base case preference shares predictions from the 2011 Smartphone Survey are consistent with actual market shares at the time when the survey was conducted.[30]

## V. DR. LEONARD DOES NOT PROVIDE EVIDENCE THAT THE 2011 SMARTPHONE SURVEY IS BIASED

Dr. Leonard claims that aspects of the design of the 2011 Smartphone Survey contribute to hypothetical bias.[31] As I discussed above, the evidence cited by Dr. Leonard does not demonstrate that hypothetical bias would be present in my study.[32] In fact, if hypothetical bias were present, it would only serve to understate the value of the functionality enabled by the patents-in-suit and the Java copyrights.

In addition to making general assertions about hypothetical biases, Dr. Leonard mentions the potential for other biases in my study. Despite discussing such "biases" for four pages, Dr.

---

[30] Kellogg, Don, "In U.S. Market, New Smartphone Buyers Increasingly Embracing Android," *NielsenWire*, September 26, 2011, http://blog nielsen.com/nielsenwire/online_mobile/in-u-s-market-new-smartphone-buyers-increasingly-embracing-android/ and Exhibit 3a of my Expert Report. Note that Dr. Leonard tries to misrepresent the validation procedures that I conducted: "At his deposition, Dr. Shugan acknowledged that 'we didn't go through the additional task of validating the conjoint analysis on the real-world purchases' (Shugan Dep., p. 84)" (Leonard Report, p. 114, fn. 347). I was referring to an assessment of respondents' phones that were purchased prior to the survey in that quote. With regards to a validity check using aggregated market data, I stated in deposition: "One, I forecasted or predicted what the actual market shares could be from the conjoint analysis and found that the observed shares in the market were very close to what the conjoint analysis predicts they should be." (Shugan Deposition, p. 115).

[31] Leonard Report, p. 111.

[32] For example, Smith and Mansfield find "no significant differences between people's choices with real and hypothetical offers." (Smith, V. Kerry and Carol Mansfield, "Buying Time: Real and Hypothetical Offers," *Journal of Environmental Economics and Management*, Vol. 36, 1998, pp. 209-224.)

14

*Oracle America v. Google – Expert Reply Report of Steven Shugan – October 10, 2011 – Subject to Protective Order (Contains Confidential and Highly Confidential/Attorneys' Eyes Only Material)*

In Exhibit 7 of his report, Dr. Leonard counts the number of respondents who "prefer" higher prices to lower prices and asserts that such preferences are inconsistent with economic rationality. As noted, such preferences are likely to be exhibited in real world purchases. Furthermore, Dr. Leonard does not account for the minimal amount of noise around the estimated utilities that is to be expected from any estimation technique. If a respondent (for example, ID 146) has 0.208 utility points associated with a price level of $100 and 0.209 utility points associated with a price level of $200, then Dr. Leonard claims that the stated preference is inconsistent with what he considers economic preferences.

As a simple exercise, I excluded respondents with utilities associated with $100 and $200 that are within one standard deviation of the difference in utilities between levels. When these respondents with such utility comparisons are excluded from Dr. Leonard's analysis, only 8.8 percent of respondents, not 24 percent as claimed by Dr. Leonard, prefer a price of $200 over a price of $100.[43] This finding is consistent with real-world behavior where some percentage of the population is price-insensitive within a reasonable range of prices. Moreover, statistical theory suggests that small estimation errors will tend to cancel out across consumers when estimating preference shares and it is unwise to exclude observations merely because they deviate from values expected by the researcher.

As a further consideration of Dr. Leonard's Exhibit 7, I re-estimated the choice model described in my Expert Report excluding respondents with so-called non-economic preferences for price and application startup time. I then re-conducted the same market simulations using the same settings underlying Exhibit 3a of my Expert Report.[44] Excluding respondents that Dr.

---

[43] Leonard Report, p. 114.

[44] See Exhibit 3a in my original Expert Report and reproduced in this report as Reply Exhibit 1a.

19

*Oracle America v. Google – Expert Reply Report of Steven Shugan – October 10, 2011 – Subject to Protective Order (Contains Confidential and Highly Confidential/Attorneys' Eyes Only Material)*

Leonard claims have inconsistent economic preferences leads to a higher loss of preference share for Android Smartphones. As a result, Android sales but-for the feature enhancements enabled by the patents-in-suit and the Java copyrights would have been at least 9.6 (instead of 7.9) percent lower if availability of applications was reduced and at least 22.7 (instead of 19.9) percent lower if application startup time was increased. Collectively, Android sales would have been at least 29.9 (instead of 25.7) percent lower but-for these infringements.[45] In other words, even accepting Dr. Leonard's critique (which I do not), "correcting" for it leads to results that are, in fact, better for Oracle – demonstrating, yet again, that my opinion is conservative.

As another evaluation of Dr. Leonard's Exhibit 7, I imposed monotonic preferences on price, such that a price of $200 is always preferred to a price of $300, a price of $100 is always preferred to a price of $300, and a price of $100 is always preferred to a price of $200. I re-estimated the choice model with these price constraints and re-conducted all market simulations, using the same settings underlying Exhibit 3a of my Expert Report. According to these results, Android sales but-for the feature enhancements enabled by the patents-in-suit and the Java copyrights would have been at least 7.6 (instead of 7.9) percent lower if availability of applications was reduced and at least 20.0 (instead of 19.9) percent lower if application startup time was increased. Collectively, Android sales would have been at least 25.7 (compared to 25.7) percent lower but-for these infringements.[46] Once again, I emphasize that the issues that Dr. Leonard raises in his report are irrelevant to my analyses and entirely consistent with consumer behavior. Even if the issues he raises were relevant, an experiment that adopts his

---

[45] See Reply Exhibit 1b. See also Reply Exhibit 1c for the results excluding respondents preferring a slower application startup time and Reply Exhibit 1d for the results excluding respondents preferring a higher price or a slower application startup time.

[46] See Reply Exhibit 1e.

*Oracle America v. Google – Expert Reply Report of Steven Shugan – October 10, 2011 – Subject to Protective Order (Contains Confidential and Highly Confidential/Attorneys' Eyes Only Material)*

the average hit rate is 72.8 percent, indicating that the model has good predictive abilities. My robustness measures indicate that the results of the 2011 Smartphone Survey and market simulations with and without the functionality enabled by the patents-in-suit and Java copyrights are highly reliable.

*[signature]*

Steven M. Shugan
October 10, 2011

Case 5:12-cv-00630-LHK   Document 850-21   Filed 11/02/13   Page 9 of 9
Case3:10-cv-03561-WHA   Document740-21   Filed02/24/12   Page25 of 34
*Oracle America v. Google – Expert Reply Report of Steven Shugan – October 10, 2011 – Subject to Protective Order*
*(Contains Confidential and Highly Confidential/Attorneys' Eyes Only Material)*

**Reply Exhibit 1a**
**Formerly Exhibit 3a from my Expert Report**
**Android Preference Shares With and Without Select Feature Infringement**
**All Respondents (N = 784)**

| | Apple | BlackBerry | Windows | Android | | | |
|---|---|---|---|---|---|---|---|
| | | | | Base case: Android infringement | Scenario 1: Infringing but for application startup time | Scenario 2: Infringing but for availability of applications | Scenario 3: Not infringing both select features |
| | | All Scenarios | | | | | |
| **Features** | | | | | | | |
| Screen size *(inch)* | 3.5 | 3.5 | 4.5 | 4.0 | 4.0 | 4.0 | 4.0 |
| Price | $200 | $100 | $200 | $200 | $200 | $200 | $200 |
| Voice commands[2] | Voice dialing | Voice dialing | Voice dialing | Voice dialing & texting | Voice dialing & texting | Voice dialing & texting | Voice dialing & texting |
| App startup time *(seconds)* | 0.2 | 2 | 0.2 | 2 | 4 | 2 | 4 |
| Availability of applications[3] *(number of applications)* | 300,000 | 40,000 | 40,000 | 100,000 | 100,000 | 40,000 | 40,000 |
| Multitasking *(number of applications)* [4] | Up to 5 | Up to 5 | Up to 5 | Up to 5 | Up to 5 | Up to 5 | Up to 5 |
| **Preference shares** | | | | | | | |
| Base case: | 28.4% | 15.0% | 12.4% | 44.3% | | | |
| Scenario 1: | 31.2% | 17.2% | 16.1% | | 35.5% | | |
| Scenario 2: | 30.2% | 16.1% | 12.9% | | | 40.8% | |
| Scenario 3: | 32.5% | 18.1% | 16.5% | | | | 32.9% |
| **Loss of preference share for Android between base case and infringing/non-infringing scenarios:** | | | | | **19.9%** | **7.9%** | **25.7%** |

Note:
[1]   For notes and sources on base case feature levels, see Exhibit 3a from my Expert Report

Source: Fonkn_A Simulation1_RFC.xls