1  JOSH A. KREVITT (CA SBN 208552)
   jkrevitt@gibsondunn.com
2  H. MARK LYON (CA SBN 162061)
   mlyon@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
4  Palo Alto, California  94304-1211
   Telephone:  (650) 849-5300
5  Facsimile:  (650) 849-5333

6  MICHAEL A. JACOBS (CA SBN 111664)
   mjacobs@mofo.com
7  RICHARD S.J. HUNG (CA SBN 197425)
   rhung@mofo.com
8  MORRISON & FOERSTER LLP
   425 Market Street
9  San Francisco, California  94105-2482
   Telephone:  (415) 268-7000
10 Facsimile:  (415) 268-7522

   WILLIAM F. LEE (*pro hac vice*)
   william.lee@wilmerhale.com
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   60 State Street
   Boston, Massachusetts  02109
   Telephone:  (617) 526-6000
   Facsimile:  (617) 526-5000

   MARK D. SELWYN (CA SBN 244180)
   mark.selwyn@wilmerhale.com
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   950 Page Mill Road
   Palo Alto, California  94304
   Telephone:  (650) 858-6000
   Facsimile:  (650) 858-6100

11 *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

12
## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
13
## SAN JOSE DIVISION

14

15  APPLE INC., a California corporation,

16              Plaintiff,

17       vs.

18

19  SAMSUNG ELECTRONICS CO., LTD., a
    Korean business entity; SAMSUNG
20  ELECTRONICS AMERICA, INC., a New
    York corporation; SAMSUNG
21  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited liability company,

22
             Defendants.
23

Case No. 12-cv-00630 (LHK)

**APPLE INC.'S NOTICE OF MOTION
AND MOTION TO STRIKE
ARGUMENTS FROM SAMSUNG'S
INFRINGEMENT EXPERT REPORTS
REGARDING SAMSUNG PATENTS**

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED**

Date:   December 10, 2013
Time:   10:00 a,m.
Place:  Courtroom 5, 4th Floor
Judge:  Hon. Paul S. Grewal

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 10 a.m. on December 10, 2013, Plaintiff and Counterclaim-Defendant Apple Inc. ("Apple") shall and hereby does move to strike portions of Samsung's infringement expert reports that violate the Patent Local Rules and Orders of this Court for the reasons set forth in the accompanying memorandum.

## RELIEF REQUESTED

Apple seeks an order striking the portions of Samsung's infringement expert reports as identified in the accompanying memorandum, and ruling that neither Samsung nor its experts may rely in this litigation, including at trial, on the theories in the stricken portions.

ActiveUS 117576434v.5

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................ i

RELIEF REQUESTED ............................................................................................... i

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................... iii

I.      INTRODUCTION .......................................................................................1

II.     BACKGROUND .........................................................................................2

        A.     Samsung's Original, First Amended, and Second Amended Infringement
               Contentions ......................................................................................2

        B.     The Court's June 26, 2013 Order .....................................................3

        C.     Samsung's Infringement Expert Reports ...........................................5

III.    ARGUMENT ..............................................................................................6

        A.     The Court Should Strike the Doctrine of Equivalents Theories That It Already
               Barred in Its June 26, 2013 Order. ...................................................7

        B.     The Court Should Strike the Other Infringement Arguments That It Also Already
               Excluded in Its June 26, 2013 Order ................................................8

               1.     The '596 Patent .......................................................................8

               2.     The '239 Patent .......................................................................8

               3.     The '449 Patent .......................................................................9

        C.     The Court Should Strike the Portions of Samsung's Expert Reports Asserting
               Other Arguments That Samsung Did Not Disclose in Its Contentions, and for
               Which Samsung Lacks "Good Cause" to Add Now ..............................12

               1.     The '757 Patent .....................................................................12

               2.     The '239 Patent .....................................................................18

               3.     The '449 Patent .....................................................................21

               4.     The '087 and '596 Patents ....................................................22

IV.     CONCLUSION .........................................................................................24

CERTIFICATE OF SERVICE .................................................................................25

ActiveUS 117576434v.5

1

2

## TABLE OF AUTHORITIES

3
                                                                                        **Page(s)**
**FEDERAL CASES**
4

5   *Genentech Inc. v. Trustees of the University of Pennsylvania,*
       No. C 10-2037 LHK (PSG), 2012 WL 424985 (Feb. 9, 2012 N.D. Cal.) ........................6, 7, 8

6
   *O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.,*
7      467 F.3d 1355 (Fed. Cir. 2006)........................................................................................6

8   **FEDERAL STATUTES**

9   35 U.S.C. § 112(6) ...........................................................................................................6

10  **RULES**

11  Local Rule 5-1.................................................................................................25

12  Local Rule 3-1.......................................................................................... passim

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ActiveUS 117576434v.5

## I.      INTRODUCTION

Samsung has served expert reports for the five asserted Samsung patents that still remain in this litigation:  the '239, '757, '449, '087, and '596 patents.  In those reports, Samsung's experts have offered infringement opinions that violate the Patent Local Rules and Orders of this Court in the following three respects.

*First*, Samsung's first three rounds of infringement contentions did not allege *any* theory under the doctrine of equivalents for *any* asserted patent—as the Court confirmed in its June 26, 2013 Order (Dkt. 636), when it explicitly held that Samsung did *not* have "good cause" to amend its contentions to add equivalents theories (except for three claim limitations that the Court had recently construed).  Despite that plain and unequivocal ruling, each of Samsung's infringement expert reports improperly alleges doctrine of equivalents theories for multiple claim limitations. The Court should exclude these already-barred infringement theories once again by striking them from Samsung's reports (for the Court's convenience, these portions are highlighted in Exhibits A-C and annotated with a "1" in the margin).[1]

*Second*, Samsung's expert reports include several other infringement theories that the Court also expressly barred in its June 26, 2013 Order. Accordingly, these previously-rejected allegations also should be stricken from Samsung's expert reports (for the Court's convenience, these portions are highlighted in Exhibits A-C and annotated with a "2" in the margin).

[1]   All cited exhibits are attached to the Declaration of Mark D. Selwyn in Support of Apple's Motion to Strike Arguments from Samsung's Infringement Expert Reports.

ActiveUS 117576434v.5

1    ***Third***, on the eve of trial in the parties' -1846 case, the Court struck theories from many

2    of Samsung's expert reports because Samsung had not disclosed the theories in its contentions

3    (and had no "good cause" to add them).  Despite that ruling, Samsung has done the same thing

4    here by having its experts allege dozens of new infringement theories for the first time in their

5    expert reports, without any "good cause" to do so.  These new theories should be stricken from

6    Samsung's expert reports (for the Court's convenience, these portions are highlighted in Exhibits

7    A-C and annotated with a "3" in the margin).

8    As the Court observed in its June 26, 2013 Order, the Patent Local Rules play a critical

9    role by requiring patentees to form and articulate their infringement theories early in litigation,

10   and to adhere to those theories once disclosed (absent good cause to amend or supplement later).

11   Unless those Rules are enforced here, Apple will need to defend itself against new theories of

12   infringement that were not in dispute during the *Markman* process and that Apple had no

13   opportunity to test during discovery.  To avoid that highly unfair and prejudicial result, Apple

14   respectfully requests that the Court strike these many new infringement theories from Samsung's

15   expert reports and make clear that neither Samsung nor its experts may rely on the new theories

16   in this litigation, including at trial.

17   **II.    BACKGROUND**

18       **A.    Samsung's Original, First Amended, and Second Amended Infringement**
           **Contentions**

19

20   In June 2012, Samsung served infringement contentions pursuant to Local Patent Rule 3-

21   1 for each of its asserted patents, including the five patents still remaining in this case:  the '239,

22   '757, '449, '087, and '596 patents.  In those original contentions, Samsung did not articulate an

23   infringement theory under the doctrine of equivalents for ***any*** limitation of ***any*** asserted patent.

24   With the Court's permission, Samsung later amended its contentions in October 2012, and again

25   in November 2012.  (Dkt. 302, 348.)  Like Samsung's original contentions, however, neither set

26   of amended contentions alleged infringement under the doctrine of equivalents for ***any*** limitation

27   of ***any*** asserted claim.  (Dkt. 636 at 5-8 (discussing Samsung's prior failure to assert a doctrine of

28   equivalents theory).)

ActiveUS 117576434v.5

### B.    The Court's June 26, 2013 Order

Near the close of fact discovery, Samsung filed a motion requesting leave to amend its infringement contentions for a third time—seeking to add, among other things, new doctrine of equivalents arguments for almost every limitation of every asserted claim, and a host of other previously undisclosed infringement theories.  In its Order dated June 26, 2013, the Court largely denied that motion.  In so doing, the Court emphasized the important role that the Patent Local Rules play with respect to the timing and substance of infringement contentions:

> These rules and their various contention obligations "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed."  They "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."

(Dkt. 636 at 2-3 (citations omitted); *id.* at 6-7 (explaining that "[t]he purpose of infringement contentions [is to] . . . act as forms of pleading that disclose the parties' theories of their case and thereby shape discovery and the issues to be determined at trial," and that "absent a change in circumstances (and the diligence of a party who needs to amend), a change in theory after the case has progressed is unjustified.").)

Applying these principles to Samsung's motion for leave to amend, the Court rejected most of Samsung's proposed amendments, including the following:

***Doctrine of Equivalents***:  The Court held that "Samsung should have provided its DOE theories in its contentions at the beginning of the case if it had a good-faith basis to assert them," and that "Samsung has not explained why it has a good faith basis to assert DOE theories only now rather than when it first provided its contentions or during its previous two amendments." (*Id.* at 7.)  Accordingly, the Court precluded Samsung from adding its proposed doctrine of equivalents theories, except those directed to three claim limitations that the Court had recently construed.  (*Id.* at 8 ("Samsung's general request to add doctrine of equivalents theories on those grounds therefore is DENIED."); *id.* at 8-18 (permitting Samsung to add equivalents theories for the "means for capturing, digitizing, and compressing" and "means for transmitting" limitations

of the '239 patent, and for the "zone specific storage and interface device" limitation of the '757 patent).)

**Literal Infringement of the '239 Patent:**  For the '239 patent, Samsung sought leave to add a new theory that Apple **literally** infringed means-plus-function limitations based on certain components in the accused Apple products that Samsung characterized as "**equivalent**" to structures disclosed in the patent.  The Court rejected those proposed amendments, except for the recently-construed "means for capturing, digitizing, and compressing" and "means for transmitting" limitations.  (*Id.* at 8 ("The court finds the same flaws in Samsung's decision to assert at this time equivalence theories for all of the means-plus-function terms that have yet to be construed.").)

**Infringement of the '596 Patent Based on the X-Gold 61x Specification:**  For the '596 patent, Samsung sought leave to add new allegations that Apple infringed based on an "X-Gold 61x" specification that Intel had produced many months earlier in the parties' ITC investigation. The Court rejected that request, finding that Samsung did not have "good cause" to add it so late in the litigation.  (*Id.* at 23 ("The court also finds that Samsung has not met its burden of showing good cause to add citations to the XGOLD 61x Product Specification document ('XGOLD document') apparently produced by Intel in the ITC 794 Investigation between Apple and Samsung. . . . The request to add citations to the XGOLD document is DENIED.").)

**New Accused Components for the '449 Patent**:  For the '449 patent, Samsung sought leave to accuse new components of the accused Apple products as allegedly satisfying the "recording circuit" and "reproducing circuit" limitations of the asserted claims.  Observing that Samsung had Bills of Materials and other similar documents for the accused Apple products since at least November 2012, the Court denied that request as lacking "good cause":  "Because Samsung has not shown sufficient good cause, Samsung's request for leave to amend its contentions to add components that it believes infringe the '449 patent is DENIED."  (*Id.* at 24.) The Court further held that Samsung also lacked "good cause" to assert a new theory directed to the claimed "A/D converter" (which must convert an analog signal received from the claimed

"imaging device" into digital form), and noted that Samsung's proposed amendments revealed that—even just before the close of fact discovery—Samsung still did not know what component it was accusing as the "A/D converter" in Apple's products:

> ***From its representations, it still does not know which kind of converter the accused products use.*** The court can only speculate how Samsung's position now is different from its position before its second amended contentions. . . . ***Samsung appears only to be covering its bases in the event that the third parties reveal different components than Samsung predicted. That reasoning, whatever its merit, does not create good cause for Samsung's late amendments.***

(*Id.* at 25 (emphases added).)

After entry of the Court's June 26, 2013 Order, Samsung served its Third Amended Infringement Contentions in July 2013. (Dkt. 660.) Since then, Samsung has not sought leave to further amend its contentions.

**C.    Samsung's Infringement Expert Reports**

On August 12, 2013, Samsung served opening reports for its asserted patents, including for the '239 and '757 patents (Ex. A), '449 patent (Ex. B), and '087 and '596 patents (Ex. C). As detailed below, these reports ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

[2]

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████

1    These expert reports also included many new infringement theories that Samsung did not

2    disclose in its Third Amended Infringement Contentions, and for which Samsung has not

3    identified any "good cause" to raise for the first time in its expert reports.

4    **III.   ARGUMENT**

5    The Patent Local Rules of this District are designed "to provide the parties with certainty

6    as to the opposing party's legal theories," and "avoid the shifting of infringement and invalidity

7    theories that had come to be a feature in too many cases before their adoption."  (Dkt. 636 at 1

8    (*quoting O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir.

9    2006).).  Consistent with these goals, Rule 3-1 requires patentees "to crystallize" and disclose

10   their infringement theories "early in litigation and to adhere to those theories once they have

11   been disclosed," absent "good cause" to amend or supplement later.  Dkt. 636 at 2 (*quoting O2*

12   *Micro*, 467 F.3d at 1355 n.12); Pat. L.R. 3-1 (requiring infringement contentions to provide,

13   among other things, "as specific as possible" identification of the accused products and "[a] chart

14   identifying specifically where each limitation of each asserted claim is found within each

15   Accused Instrumentality, including for each limitation that such party contends is governed by

16   35 U.S.C. § 112(6), the identity of the structure(s) . . . in the Accused Instrumentality that

17   performs the claimed function.").)

18   When presented with a motion to strike portions of an expert report where the movant

19   alleges that the expert opinions are unsupported by the relevant contentions, the court "looks to

20   the nature and scope of the theory … disclosed and whether the challenged report section merely

21   provides an evidentiary example or complementary proof in support thereof, or itself advances a

22   new or alternate" theory.  *Genentech Inc. v. Trustees of the University of Pennsylvania*, No. C

23   10-2037 LHK (PSG), 2012 WL 424985 at *2 (Feb. 9, 2012 N.D. Cal.).  The court also considers

24   whether the contentions at issue could have been supplemented with the allegedly missing

25   information.  As this Court noted previously, "[a]t a minimum, a key consideration for the court

26   is the timing of the disclosure in relation to when the disclosing party had the information and

27

28

ActiveUS 117576434v.5

1    when the opposing party would have needed the information in order to fairly conduct discovery

2    or prepare a responsive strategy." *Id.*

3           As detailed below, Samsung has repeatedly violated these requirements by disclosing

4    new infringement theories for the first time in its expert reports, without "good cause" to do so,

5    including multiple theories that the Court already barred in its June 26, 2013 Order.  To prevent

6    Apple from unfairly having to defend itself against these many new infringement theories (which

7    Apple had no opportunity to address during *Markman* or discovery), the Court should strike the

8    newly-disclosed infringement theories from Samsung's expert reports and make clear that

9    neither Samsung nor its experts may advance the new theories in this case, including at trial.

10          **A.**     **The Court Should Strike the Doctrine of Equivalents Theories That It**
            **Already Barred in Its June 26, 2013 Order.**

11          In its April 2013 motion for leave, Samsung sought permission to amend its contentions

12   to add new doctrine of equivalents infringement theories for nearly every limitation of every

13   asserted claim.  (Dkt. 476.)  But the Court's denial of that request could not have been more

14   clear:

15                 Samsung should have provided its DOE theories in its contentions
16                 at the beginning of the case if it had a good-faith basis to assert
                   them. . . . Samsung has not explained why it has a good faith basis
17                 to assert DOE theories only now rather than when it first provided
                   its contentions or during its previous two amendments. . . .
18                 Samsung's general request to add doctrine of equivalents theories
                   on those grounds therefore is DENIED.
19

20   (Dkt. 636 at 7-8.)[3]



24

25   _____
     [3]     As noted above, the Court did allow Samsung to add doctrine of equivalents theories for the
26   "means for capturing, digitizing, and compressing" ('239 patent), "means for transmitting" ('239
     patent), and "zone specific storage and interface device" ('757 patent) limitations that the Court
27   had recently construed.  (*Id.* at 8-18.)  Apple does not seek to strike those theories, to the extent
     Samsung's experts have offered them.
28

**B.**   **The Court Should Strike the Other Infringement Arguments That It Also Already Excluded in Its June 26, 2013 Order.**

Samsung's expert reports also contain the following additional theories that this Court expressly excluded in its June 26, 2013 Order:

**1.**   **The '596 Patent**

Previously, the Court denied Samsung leave to amend its contentions to allege infringement of the '596 patent based on an "X-Gold 61x" specification that Intel had produced in the parties' ITC investigation.  (Dkt. 636 at 23 ("The request to add citations to the XGOLD document is DENIED.").)

**2.**   **The '239 Patent**

1

2

3

4

5

6              But the Court explicitly held in its June 26, 2013 Order that Samsung

7 could not make those arguments (except for the two recently-construed means limitations): "The

8 court finds the same flaws in Samsung's decision to assert at this time equivalence theories for

9 all of the means-plus-function terms that have yet to be construed." (Dkt. 636 at 8.) Because

10 Samsung has not (and cannot) identify any "good cause" to add these already-rejected

11 arguments, the Court should strike them from Dr. Schonfeld's report.

12                **3.**      **The '449 Patent**

13        In its June 26, 2013 Order, the Court barred Samsung from amending its contentions to

14 accuse new components for the '449 patent: "Because Samsung has not shown sufficient good

15 cause, Samsung's request for leave to amend its contentions to add components that it believes

16 infringe the '449 patent is DENIED." (Dkt. 636 at 23-25.)

17

18

19

20        ***"Imaging Device"; "A/D Converter":*** Claim 25 requires both (i) "an imaging device

21 which converts an optical image signal into an analog signal" and (ii) "an A/D converter which

22 converts said analog signal from said imaging device to a digital signal." In its infringement

23 contentions, Samsung accused an ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as the

24 "imaging device," and did not accuse any specific component as the "A/D converter." (Dkt. 660

25

26

27

28

ActiveUS 117576434v.5

1   [Third Amended Contentions], Ex. G at 2-3.)[6]  But Apple's

2

3                                                   as claim 25 requires for the "imaging device."  (Ex. D [Parulski

4   Dep.] at 70:19-20

5

6

7

8

9

10

11

12

13

14   Consistent with the Court's June 26, 2013 Order—which generally precluded Samsung from

15   accusing new components for the '449 patent,

16

17                                                                                      .  (Dkt. 636 at

18   25.)

19        *"Recording Circuit":*  Claim 25 also requires "a recording circuit which records

20   compressed data, said compressed data including a moving image signal, and a still image

21   ─────────────
     [6]    In the proposed amendments attached to its April 2013 motion for leave, Samsung sought to
22   amend its contentions for the "A/D converter" limitation to state:  "The captured image data is
     converted from an analog signal to a digital signal by *an A/D converter, which may be*
23   *incorporated into the image sensor chip*."  (Dkt. 476, Ex. 4 [Mot. to Amend Infringement
     Contentions], Ex. G at 3 (emphasis added).)  In its June 26, 2013 Order, the Court criticized
24   Samsung for this generic accusation, observing that Samsung apparently "still does not know
     which kind of converter the accused products use," and rejected the generic placeholder as an
25   improper attempt by Samsung to "cover[] its bases in the event that the third parties reveal
     different components than Samsung predicted."  (Dkt. 636 at 25.)
26

27

28
     ─────────────────────────────────────────────────



signal."  In its contentions, Samsung initially accused "a NAND flash module for storage" *alone* as meeting the "recording circuit" limitation, and later sought leave to add "an interface circuit" to the NAND flash module as well.  In its June 26, 2013 Order, the Court rejected that request. (Dkt. 636 at 23-24 ("For the '449 Patent, Samsung wants to identify components in Apple's accused products that satisfy the 'recording circuit' [limitation]. . . . Samsung has not shown sufficient good cause … to add components that it believes infringe the '449 Patent. . . .").)

 

 

 

 

 

 

 

*"Reproducing Circuit":*  Claim 25 further requires "a reproducing circuit which reproduces a moving image signal, a sound signal in synchronous to said moving image signal, and a still image signal."  In its contentions, Samsung only identified a "graphical processing unit" ("GPU") as the accused "reproducing circuit"—and identified *no* component that performs audio reproduction.  In its motion for leave, Samsung sought to add a ▮▮▮▮▮▮▮▮ ▮▮▮▮ to its contentions for the "reproducing circuit" limitation (claiming that it could not have identified the component earlier), but the Court found that argument "unavailing" because "Samsung had the information in its possession since November 2012 [when Apple produced its Bills of Materials and other information for the accused products]."  (Dkt. 636 at 24.)

 

 

 

 

 

1   ██████████████████████████  Consistent with the Court's June 26, 2013 Order,

2   however, Mr. Parulski should not be permitted to accuse these new components as the claimed

3   "reproducing circuit."  In fact, ████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████

6          In sum, because these new theories for the '596, '239, and '449 patents violate the

7   Court's June 26, 2013 Order, they should be stricken (these portions are highlighted in Exhibits

8   A-C and annotated with a "2" in the margin).

9          **C.   The Court Should Strike the Portions of Samsung's Expert Reports
              Asserting Other Arguments That Samsung Did Not Disclose in Its
10             Contentions, and for Which Samsung Lacks "Good Cause" to Add Now.**

11         As detailed below, Samsung's expert reports disclose many other infringement theories

12  that Samsung never disclosed in its contentions, and for which Samsung had no "good cause" to

13  raise for the first time in its expert reports.  These new theories also should be stricken (Exhibits

14  A-C highlight these portions and annotate them with a "3" in the margin).

15             **1.   The '757 Patent**

16         *New "Zone Specific Storage and Interface Device" Theory:*  As noted above, the Court

17  permitted Samsung to amend its infringement contentions for the '757 patent to address the

18  Court's then-recent *Markman* Order—which held that a "zone specific storage and interface

19  device" must "reside[] in an area, such as a room or similar location."  (Dkt. 636 at 9.)  In

20  response, Samsung amended its contentions, purportedly to explain how the accused Apple

21  products supposedly "reside in a specific location."  (Dkt. 660 [Third Amended Contentions],

22  Ex. D at 5-7 (adding allegations that the accused Apple products "may reside in a room or

23  similar location, or be coupled to devices residing in a room or similar location, such as a dock,

24  including docks sold on Apple's website" or "may reside in a location under Apple's ownership

25  and/or control, including but not limited to an Apple store, as they are being assembled, used

26  and/or sold by Apple by and at the direction of Apple's employees").)

27

28

1

2

3

4

5

6

7

8      In support of these new arguments, Dr. Schonfeld primarily relies on

9   documents produced prior to Samsung's service of its Third Amended Infringement Contentions.

10   Indeed, many of these documents were produced in prior litigation between Apple and Samsung.

11   (*See, e.g.*, APLNDC0002596538 and APL-ITC796-0000503007.)

12

13

14

15

16       ***New Theory That Mac OS Computers are "Zone Specific Storage and Interface***

17   ***Devices" When Using Photo Stream:***  In its contentions, Samsung advanced an infringement

18   theory based on the Photo Stream function—for which it accused ***only iOS devices*** as "Zone

19   Devices," and accused Mac OS X computers ***exclusively*** as "Central Devices."  (Dkt. 660 [Third

20   Amended Contentions], Ex. D. at 20-22 ("Because certain Zone Devices have limited memory,

21   Apple designed Photo Stream to allow the Central Device to be the 'master photo library.' . . .

22   But since your Mac has more storage than your iOS device, it automatically imports every

23   picture from your Photo Stream into your photo library so you can edit, delete, and share the

24   ones you want.").)

25

26

27

28

ActiveUS 117576434v.5

1    ░░░░░░░░░░░░░░░░░░░░░░░░░ Given an absence of any justification or

2    "good cause" for its late inclusion, this previously undisclosed theory should be stricken.

3         ***New "Automatic Transfer" Theory for Home Sharing:***   In its Second Amended

4    Infringement Contentions, Samsung had accused a specific aspect of Apple's Home Sharing

5    feature by alleging that computers (e.g., iMac, MacBook Air, MacBook Pro, Mac mini, Mac Pro,

6    and PC) are "zone specific storage and interface devices" when using the Home Sharing feature

7    to either "share" or "play[]" music that is stored on a different computer.  (Ex. E [Second

8    Amended Contentions], Ex. D at 11-12.)  In its June 26, 2013 Order, the Court allowed Samsung

9    to amend these contentions about its Home Sharing theory to "add the exemplary operation of

10   Home Sharing in response to the claim construction order."  (Dkt. 636 at 28.)  In other words, the

11   Court permitted Samsung to explain how accused Apple devices using the Home Sharing feature

12   supposedly "reside in an area, such as a room or similar location."

13   ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░

14   ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░

15   ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░

16   ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░

17   ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░

18   ░░░░░░░░░░░░░░░░░░░░░░ Because the Automatic Transfer feature

19   was ***not*** previously accused, has ***nothing*** to do with Samsung's original Home Sharing theory,

20   and has ***no*** bearing on whether Apple's computers "reside in a specific location" under the

21   Court's claim construction Order, this new infringement theory goes well beyond the scope

22   permitted by the Court's June 26, 2013 Order.  Moreover, the Automatic Transfer feature was

23   publicly available well before Samsung filed its counterclaims, and there is no justification why

24   Samsung could not have identified it in its initial infringement contentions.

25         ***New "Shared Photo Stream" Theory:***   As noted above, Samsung's contentions accuse

26   Apple of infringing the '757 patent based on the "Photo Stream" feature.  (Dkt. 660 [Third

27   Amended Contentions], Ex. D. at 20-22.)  ░░░░░░░░░░░░░░░░░░░░░░░░

28



1

2

3

4

5

6

7

8  The Shared Photo Stream feature

9  has been publicly available since September 19, 2012 and there is no justification why Samsung

10  could not have identified it in its Second Amended Infringement Contentions.  Therefore, the

11  Court should strike this new Shared Photo Stream theory from Dr. Schonfeld's report.

12  ***Dropped Theory Based on iTunes Running on a PC Computer:***

13

14

15

16

17  But in response to this

18  Court's case narrowing Orders, Samsung dropped "PC with iTunes" as an accused product on

19  April 22, 2013.  (Dkt. 468 at 2-3 (no longer listing it as an accused product).)

20

21

22  ***New "Central Storage and Interface Device" Theory:***  Claim 1 of the '757 patent

23  requires "at least one central storage and interface device, wherein audio, video, or photographic

24  data, including content information and content management information, relating to at least one

25  user, are stored in digital form."  In its contentions, Samsung identified "Apple's Mac Products,

26  including the iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, and Apple TV" as

27  accused devices supposedly meeting that limitation, and further stated that "Apple's iCloud

28

1   Service" and "Apple's iTunes Service . . . include[] at least a central storage and interface

2   device."  (Dkt. 660 [Third Amended Contentions], Ex. D at 2-5.)



22  , despite the fact that

23  none of them contains both "content information" and "content management information":[8]

24  [7]



Given the absence of any justification or "good cause" for their late inclusion, these eight new theories and four alternative theories—none of which appears in Samsung's contentions—should be stricken from Dr. Schonfeld's report.

---

[8] The express language of claim 1 also requires that each central storage and interface device must contain both "content information" and "content management information."

2.      The '239 Patent

*New "Logic Board" Theory:*

But Samsung's contentions for those limitations do not rely upon—*or even mention*—a logic board or any of its connections.  (Dkt. 660 [Third Amended Contentions], Ex. H at 3-10.)

Indeed, in its June 26, 2013 Order, the Court made clear that Samsung could not accuse new components for the '239 patent beyond those specifically set forth in its contentions:  "By its own argument – *one that the court will most assuredly hold it to in the future* – Samsung alleges nothing more than the components it previously identified . . . still infringe under equivalence theories even though Judge Koh construed the terms to require different structures." (Dkt. 636 at 14 ) (emphasis added).)

*New Audio Components Theory:*

9



1 █████████████████████

2 ██████████████████████  But Samsung's contentions do not

3 identify *any* audio components as satisfying that limitation—even though the Court's construed

4 the limitation to require "*an audio capture card*," and Samsung had notice of that construction

5 before its latest amendments.  (Dkt. 447 at 64; Dkt. 660 [Third Amended Contentions], Ex. H at

6 3 (Samsung acknowledging in July 2013 that the Court's construction requires "an audio capture

7 card").)  ████████████████████

8 ██████████████████████████

9 **New "Means for Exchanging" Theory:**  ██████████████

10 ████████████████████████

11 ██████████████████████████

12 ██████████████████████████

13 ██████████████████  These theories are new;

14 in fact, Samsung did not list *any* of these components in its infringement contentions, even

15 though there is no indication that Samsung was not aware of these components previously.

16 Rather, Samsung merely alleged "[o]n information and belief" that the "means for exchanging"

17 limitation was met by a generic and non-specific "circuit for exchanging the data received by the

18 host computer's interface with the playback unit," and that "Apple's software, such as Quicktime

19 and FaceTime, works in conjunction with that computer interface(s) and the circuit to allow a

20 host unit to receive data from a Mobile Remote Unit and transmit it to playback unit for playback

21 unit."  (Dkt. 660 [Third Amended Contentions], Ex. H at 17.)  ████████████████

22 ██████████████████████████

23 ██████████████████████

24 ████████████████

25     **New Accusations Against Mac Computers:**  In its infringement contentions, Samsung

26 listed Apple's iMac, MacBook Air, MacBook Pro, Mac mini and Mac Pro computers as meeting

27 the "host unit" and "playback unit" limitations of claim 1—but did not chart any components of

28

these computers (except a cursory mention of the Mac OS QuickTime application for the "means for exchanging" portion of the "playback unit" limitation).  (*Id.* at 13-19.)[10]



---

[10]     In its infringement contentions, Samsung only identified iOS devices as meeting the "mobile remote unit" limitation of claim 1.  (Dkt. 660 [Third Amended Contentions], Ex. H at 3.)

There is no dispute that Samsung had these computers prior to its last amended contentions and thus, there is no justification for delaying until its expert reports to introduce these allegations.  Because Samsung does not have "good cause" for Dr. Schonfeld to offer any of these new theories for the first time in his expert report, they should be stricken.

### 3.  The '449 Patent

*New "Compressor" Theory:*  Claim 25 of the '449 patent requires "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals." Samsung's contentions for that limitation only identify "a video encoder . . . utiliz[ing] at least the H.264 and MPEG-4 standards for compressing moving images and the JPEG standard for compressing still images."  (Dkt. 660 [Third Amended Contentions], Ex. G at 4.)

*New "Decompressor" Argument:*  Samsung's infringement contentions also identified a "video decoder" as the claimed "decompressor which decompresses said compressed data by

ActiveUS 117576434v.5

using a different decompressing method according to whether said recorded compressed data is a moving image signal or a still image signal." (Dkt. 660 [Third Amended Contentions], Ex. G at 5.)

Samsung cannot establish "good cause" for presenting these new "compressor" and "decompressor" theories for the first time in Mr. Parulski's expert report. To support these theories, Samsung relies on documents produced by Apple on or before April 17, 2013, but Samsung nonetheless failed to disclose these new theories in its April 30, 2013 motion to amend infringement contentions (*see* Dkt. 476, Ex. 4 [Mot. to Amend Infringement Contentions], Ex. G) or in its July 4, 2013 amended contentions, nor at any other time. Because Samsung did not identify these theories in its contentions, and because Samsung has no "good cause" to add them now, these new infringement allegations should be stricken from Mr. Parulski's report.

### 4. The '087 and '596 Patents



1

2

3       Samsung did not disclose either of these ██████████████ in its infringement

4   contentions, and does not have "good cause" to add them now.  There is no additional discovery

5   or evidence that Samsung and Dr. Min cite that could justify why Samsung added these theories

6   so late.[11]

7

8

9                                        Not only is this document irrelevant,

10  it was produced by AT&T on February 25, 2013 – over a month before Samsung's April 30,

11  2013 motion to amend infringement contentions, yet Samsung failed to disclose this new theory

12  in that motion to amend.  (*See* Dkt. 476 Ex. 4 [Mot. to Amend Infringement Contentions], Ex.

13  B.)

14

15

16

17

18                                        Because Samsung

19  did not identify these theories in its contentions, and because Samsung has no "good cause" to

20  add them now, these new infringement allegations should be stricken from Dr. Min's report.

21      ***New Testing Theories for the '087 and '596 Patents:***

22

23

24                                        But

25  _____
    11

26

27

28

Samsung did not disclose any of these testing-based theories in its infringement contentions, and has not identified any reason why it could not have done so.  Therefore, these new arguments should be stricken.

*New Indirect Infringement Theories for the '087 Patent:*  In its contentions, Samsung only alleged *direct* infringement of the '087 patent.  Accordingly, they should be stricken.

*New Indirect Infringement Theories for the '596 Patent:*  Samsung's contentions for the '596 patent did not even mention contributory infringement, and only included a single cursory sentence alleging inducement:  "Apple also infringes this claim by selling the Accused Apple Products to customers and encouraging those customers to use the products in a manner that meets each and every step of this claim."  (Dkt. 660 [Third Amended Contentions], Ex. B at 7.) However,  These new arguments, for which Samsung has no "good cause" to add now, should be stricken.

## IV.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court strike the portions of Samsung's expert reports identified above, and preclude Samsung and its experts from relying on these improper new infringement theories in this case, including at trial.

Dated:  November 5, 2013                                   /s Mark D. Selwyn
                                                           Mark D. Selwyn

ActiveUS 117576434v.5

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that a true and correct copy of the above and foregoing document has

3   been served on November 5, 2013 to all counsel of record who are deemed to have consented to

4   electronic service via the Court's ECF system per Civil Local Rule 5-1.

5

6                                         /s/ Mark D. Selwyn
                                          Mark D. Selwyn
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28