1  QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
2  Charles K. Verhoeven (Bar No. 170151)
   charlesverhoeven@quinnemanuel.com
3  Kevin A. Smith (Bar No. 250814)
   kevinsmith@quinnemanuel.com
4  50 California Street, 22nd Floor
   San Francisco, California 94111
5  Telephone: (415) 875-6600
   Facsimile: (415) 875-6700
6
   Kevin P.B. Johnson (Bar No. 177129)
7  kevinjohnson@quinnemanuel.com
   Victoria F. Maroulis (Bar No. 202603)
8  victoriamaroulis@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
9  Redwood Shores, California 94065
   Telephone: (650) 801-5000
10 Facsimile: (650) 801-5100

11 William C. Price (Bar No. 108542)
   williamprice@quinnemanuel.com
12 865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
13 Telephone:  (213) 443-3000
   Facsimile:  (213) 443-3100
14
   Attorneys for SAMSUNG ELECTRONICS
15 CO., LTD., SAMSUNG ELECTRONICS
   AMERICA, INC. and SAMSUNG
16 TELECOMMUNICATIONS AMERICA, LLC

17                    UNITED STATES DISTRICT COURT

18          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19
   APPLE INC., a California corporation,        CASE NO. 12-CV-00630-LHK (PSG)
20
                     Plaintiff,                 **SAMSUNG'S NOTICE OF MOTION AND**
21                                              **MOTION TO STRIKE EXPERT**
                 vs.                            **TESTIMONY BASED ON PREVIOUSLY**
22                                              **UNDISCLOSED THEORIES**
   SAMSUNG ELECTRONICS CO., LTD., a
23 Korean business entity; SAMSUNG              **REDACTED VERSION OF DOCUMENT**
   ELECTRONICS AMERICA, INC., a New             **SOUGHT TO BE SEALED**
24 York corporation; SAMSUNG
   TELECOMMUNICATIONS AMERICA,                  Date:  December 10, 2013
25 LLC, a Delaware limited liability company,   Time: 10:00 a.m.
                                                Place: Courtroom 5
26                   Defendants.                Judge: Honorable Paul S. Grewal

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 10, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court for an order striking portions of Alex Snoeren's opening and rebuttal expert reports, submitted on behalf of Apple Inc. ("Apple"), that introduce new contentions regarding U.S. Patent No. 6,847,959 ("the '959 Patent") and U.S. Patent No. 7,761,414 ("the '414 Patent"), and striking portions of Todd Mowry's opening and rebuttal expert reports that introduce new contentions regarding U.S. Patent No. 5,946,647 ("the '647 Patent").

This motion is based on this notice of motion and supporting memorandum of points and authorities; the Declaration of Michael L. Fazio ("Fazio Decl."); and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

**RELIEF REQUESTED**

Pursuant to Federal Rules of Civil Procedure 26(a) and 37, and Patent Local Rule 3-1, Samsung seeks an order striking portions of Alex Snoeren's opening and rebuttal expert reports that introduce new contentions regarding Apple's '959 Patent and '414 Patent, and striking portions of Todd Mowry's opening and rebuttal expert reports that introduce new contentions regarding Apple's '647 Patent.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether portions of the opening and rebuttal expert reports written by Apple's experts, Dr. Alex Snoeren and Dr. Todd Mowry, should be stricken because they introduce new contentions regarding Apple's '959 Patent, '414 Patent, and '647 Patent, in violation of the Federal Rules of Civil Procedure and the Patent Local Rules.

1   DATED:  November 5, 2013          QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
2

3                                        By /s/ Victoria F. Maroulis
4                                           Charles K. Verhoeven
                                            Kevin P.B. Johnson
5                                           Victoria F. Maroulis
                                            William C. Price
6

7                                        Attorneys for SAMSUNG ELECTRONICS CO.,
                                         LTD., SAMSUNG ELECTRONICS AMERICA,
8                                        INC., and SAMSUNG
                                         TELECOMMUNICATIONS AMERICA, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................... i

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 3

A.   In Dr. Snoeren's Reports, Apple For The First Time Mentions Claim 34 of
The '959 Patent, Alleging Apple Practices That Claim ............................................ 3

B.   Dr. Snoeren Discloses A New Accused Product and New Infringement
Theories, In Violation of This Court's June 26 Order, and Issues Untimely
Supplemental Reports ............................................................................................ 5

C.   Dr. Snoeren's Reports Propose New, Previously Undisclosed Validity
Contentions Based On New Claim Construction Theories For The
'414 Patent and '959 Patent .................................................................................... 7

1.   '414 Patent .................................................................................................... 8

2.   '959 Patent .................................................................................................... 9

D.   The Mowry Report Introduces New Infringement Theories Regarding The
Doctrine of Equivalents ......................................................................................... 9

E.   Dr. Mowry Relies For The First Time On Conversations With Two
Additional Apple Engineers To Support Allegations That Various Apple
Products Practice The '647 Patent .......................................................................... 9

LEGAL STANDARD ...................................................................................................... 10

ARGUMENT ................................................................................................................ 12

A.   The Court Should Strike Dr. Snoeren's New Allegation That Apple
Practices Claim 34 of The '959 Patent .................................................................. 12

B.   The Court Should Strike Dr. Snoeren's New Theories of Validity For The
'414 Patent and '959 Patent .................................................................................. 13

1.   '414 Patent .................................................................................................. 13

2.   '959 Patent .................................................................................................. 16

C.   The Court Should Strike Dr. Snoeren's New Infringement Theories For The
'959 Patent ............................................................................................................ 17

D.   The Court Should Strike Dr. Snoeren's Supplemental Reports ............................. 21

E.   The Court Should Strike All Portions of The Mowry Report That Introduce
New Theories of Infringement Under The Doctrine of Equivalents ...................... 21

SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES

F.      The Court Should Strike All Portions of The Mowry Reports That Rely On
        Discussions With Undisclosed Engineers To Allege Any Apple Products
        Practice The '647 Patent ......................................................................................... 22

CONCLUSION ...................................................................................................................... 24

Case No. 12-CV-00630-LHK (PSG)
SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*Akeva L.L.C. v. Minuzo Corp.*,
212 F.R.D. 306 (M.D.N.C. 2002) ..........................................20

*Apple Inc. v. Samsung Elecs. Co.*,
695 F.3d 1370 (Fed. Cir. 2012) .............................................16

*Apple Inc. v. Samsung Elecs. Co.*,
2012 WL 2499929 (N.D. Cal. June 27, 2012) .......................11

*Atmel Corp. v. Info. Storage Devices, Inc.*,
189 F.R.D. 410 (N.D. Cal. 1999) ..........................................20

*Digital Reg. of Texas LLC v. Adobe Sys. Inc.*,
2013 WL 633406 (N.D. Cal. Feb. 20, 2013)......................10, 12

*Docusign, Inc. v. Sertifi, Inc.*,
468 F. Supp. 2d 1305 (W.D. Wa. 2006) .................................17

*Dufresne v. Microsoft Corp.*,
2006 U.S. Dist. LEXIS 57423 (D. Mass. Apr. 28, 2006).........21

*GN Resound A/S v. Callpod, Inc.*,
2013 WL 1190651 (N.D. Cal. Mar. 21, 2013) ........................10

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
2009 WL 3353306 (N.D. Cal. Oct. 16, 2009) ............11, 17, 20, 22

*MOSAID Techs. Inc. v. Samsung Elecs. Co.*,
362 F. Supp. 2d 526 (D.N.J. 2005) ........................................21

*O2 Micro Int'l v. Monolithic Power Sys.*,
467 F.3d 1355 (Fed. Cir. 2006).........................................21, 23

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) .............................................17

*Oracle America, Inc. v. Google Inc.*,
2011 WL 4479305 (N.D. Cal. Sept. 26, 2011).................. *passim*

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*,
412 F.3d 1284 (Fed. Cir. 2005) .............................................12

*Richdel, Inc. v. Sunspool Corp.*,
714 F.2d 1573 (Fed. Cir. 1983) .............................................12

<u>Statutes</u>

Fed. R. Civ. P. 37(c)(1) ................................................................11

1

**INTRODUCTION**

2      From the outset of this litigation, Judge Koh repeatedly emphasized the need for timely

3  disclosures and an orderly narrowing of issues to be decided at trial.  To that end, Judge Koh

4  required the parties to whittle down their claims to court-ordered levels by certain specific

5  deadlines.  That narrowing process relied on the disclosure of each party's contentions on the

6  court-ordered schedule.  Dr. Alex Snoeren, Apple's technical expert on the '959 and '414 Patents,

7  and Dr. Mowry, Apple's expert on the '647 Patent, served reports that ignore the Court's carefully

8  crafted schedule and violate the Patent Local Rules and the Federal Rules of Civil Procedure.

9  Their untimely disclosures should be stricken.

10      First, Apple's expert reports radically change Apple's contentions regarding its alleged

11  practice of the '959 Patent and '647 Patent – changing not only the products Apple points to for

12  these contentions, but also the claims Apple asserts as practicing its patents, and the witnesses

13  Apple claims are relevant to these positions.  Rather than stick to the interrogatory responses

14  Apple provided long ago, Apple's experts now offer an entirely new story regarding Apple's

15  alleged practice of the asserted patents.  This new story is not the one Apple offered discovery on,

16  or produced source code to support, during fact discovery.  It is not the story Samsung relied on

17  when building its defenses, or proposing terms for claim construction, or selecting invalidating

18  prior art.  Apple's new positions on this issue should be stricken.

19      Second, Dr. Snoeren's reports repeatedly propose new, previously-undisclosed validity

20  contentions for the '414 Patent and '959 Patent.   Those new validity contentions turn entirely on

21  theories that were not disclosed to Samsung during fact discovery, including claim construction

22  positions never requested in the *Markman* process.  Apple's emphasis on late, extensive claim

23  construction is not only a violation of the procedural schedule, but an end-run around specific

24  guidance Judge Koh provided to Apple on this subject.

25      Third, Apple introduces extensive and untimely new infringement theories.  Dr. Snoeren

26  adds new infringement theories for the '959 Patent, including new "heuristics" never mentioned in

27  Apple's infringement contentions – a strategy that directly contravenes this Court's June 26 Order

28  rejecting Apple's attempt to insert new alleged "heuristics" at the eleventh hour.  Dr. Snoeren

1   followed these new theories with two untimely supplemental infringement reports, without leave

2   of court, including extensive new source code analysis, serving the last of these two supplements

3   one day before his deposition.  On the '647 Patent, Dr. Mowry introduces brand-new infringement

4   theories regarding the doctrine of equivalents.  Before Dr. Mowry's report Apple *never* alleged

5   any doctrine of equivalents theories for the '647 Patent.  Samsung had no notice of these

6   equivalence arguments when Samsung developed its defenses, proposed alternative designs, or

7   proposed invalidity defenses.  Apple has no basis to spring these new theories on Samsung.

8        Dr. Snoeren and Dr. Mowry threaten to disrupt Judge Koh's carefully constructed case

9   narrowing process.  The claim construction process finished long ago – and the Court explicitly

10   told Apple it should not get to revisit that process with extensive new claim construction requests.

11   (Fazio Decl. Ex. 1 (Hr'g Tr. at 22:11-20; 25:4-7, July 31, 2013).)  Apple's expert reports make an

12   end-run around the Court's instructions.  The myriad new theories in Apple's reports would force

13   Samsung to revisit anticipation, obviousness, non-infringing alternative designs, and a host of

14   other theories, long after the close of fact discovery.  It is not practical to reopen discovery at this

15   stage of the case.  Nor would doing so create sensible incentives for future litigants in patent cases:

16   if Apple is allowed to hold its theories of infringement, validity, and claim construction until the

17   last minute, *every* patentee will do so going forward, undermining the orderly exchange required

18   by this district's Patent Local Rules.

19        For the reasons that follow, and as detailed in the proposed order attached hereto, this

20   Court should strike all portions of Apple's opening and rebuttal reports that discuss or rely on new

21   and untimely theories, including:

22   •   New theories of infringement (paragraphs 148, 204, 252 of Dr. Mowry's report,

23       paragraphs 65-66, 123, 202, 251-259, 264-273, 277-278, 281, 286-293, 296, 299, 315 of

24       Dr. Snoeren's report, and untimely supplements served August 30 and September 24),

25   •   New theories of validity and claim construction (paragraphs 8, 99, 408, 472, 473, 475 of

26       Dr. Snoeren's report, and paragraphs 428, 454, 493, 565-566, 572, 606-607 of Dr.

27       Snoeren's rebuttal report), and

28

SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES

1    • New theories concerning Apple's use of the asserted patents in its products (paragraphs

2        360-367 of Dr. Snoeren's report, paragraphs 321-328 of Dr. Snoeren's rebuttal report, and

3        paragraphs 300-304, 391 of Dr. Mowry's report).

4                                    **BACKGROUND**

5    **A.    In Dr. Snoeren's Reports, Apple For The First Time Mentions Claim 34 of
             The '959 Patent, Alleging Apple Practices That Claim**

6

7        Apple brought this patent infringement suit against Samsung on February 8, 2012.

8    (Dkt. 1.)  It served initial infringement contentions on June 15, 2012.  (Dkt. 160.)  Those

9    disclosures accused Samsung of infringing 25 different claims of the '959 Patent, but claim 34

10   was not among them.  (Fazio Decl. Ex. 2 (Apple's June 15 contentions) at 2 (accusing Samsung of

11   infringing claims 1-5, 9-12, 14-17, 19-20, 22-25, 27-30, and 32-33 of the '959 Patent).)

12       Apple's initial disclosures on its alleged practice of the '959 Patent, pursuant to Patent

13   Local Rule 3-1(g), only asserted that the iPhone 4S allegedly practiced claims 1, 3-6, 12, 14-16,

14   19, 20, 24, 25, 29, and 30 of the '959 Patent.  (Fazio Decl. Ex. 3 (Apple's June 15 contentions,

15   Ex. 140).)  Apple did *not* assert claim 34 as a claim Apple's products allegedly practiced.  During

16   fact discovery, Apple likewise never argued that claim 34 of the '959 Patent was relevant to *any*

17   issues in this case, including claim construction.  (Dkt. 447.)

18       Apple's interrogatory responses likewise did not identify claim 34.  Apple's response to

19   Samsung's Interrogatory No. 25 purported to identify all Apple products that allegedly practiced

20   the asserted patents, including every claim in those patents that Apple's products allegedly

21   practiced:

22

23

24

25

26

27

28

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4       When Apple served the Snoeren Report on August 12, 2013, claim 34 unexpectedly

5 became the centerpiece of Apple's contentions regarding its alleged practice of the '959 Patent.

6 (Fazio Decl. Ex. 10 (Snoeren Report) ¶ 360 ("Apple practices claim 34 of the '959 Patent in the

7 Siri system used with iOS 5 and 6.").)  Claim 34 is now the *only* claim of the '959 Patent that Dr.

8 Snoeren alleges any Apple product practices, contrary to Apple's position throughout the case.

9 (*Id.*) ████████████████████████████████████

10 ██████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ██████████████████████████████████████████

14 ████████████████████████████████████████████

15 ██████████████████████████████████████

16 ██████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ————————————————

20     [1]  Samsung also repeatedly asked Apple for discovery regarding Apple's alleged practice

of the asserted patents, so that Samsung could evaluate Apple's allegations.  For example, for "any

21 Product sold or offered for sale at any time by APPLE that APPLE contends practices any of the

APPLE PATENTS" asserted in this case, Samsung sought "DOCUMENTS sufficient to show . . .

22 the functionality that allegedly practices the relevant APPLE PATENT, including without

23 limitation any documents on which APPLE intends to rely to demonstrate that the APPLE

COVERED PRODUCT practices the relevant APPLE PATENTS."  (Fazio Decl. Ex. 4 (Request

24 for Production No. 908, Mar. 1, 2013).)  Samsung also asked for "All DOCUMENTS RELATING

TO the extent to which YOU have made use of the PATENTED FEATURES, including

25 DOCUMENTS evidencing the value, if any, of that use."  (Fazio Decl. Ex. 5 (Request for

26 Production No. 320, Oct. 29, 2012).)  Apple agreed to produce such documents.  (Fazio Decl.

Ex. 6 (Apple's Objs. and Resp. to Samsung's Fourteenth Set of Requests for Production, Apr. 10,

27 2013) at 161; Fazio Decl. Ex. 7 (Apple's Objs. and Resp. to Samsung's Seventh Set of Requests

for Production, Nov. 28, 2012) at 31.)

28

Case No. 12-CV-00630-LHK (PSG)
SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES

1
2
3
4
5
6
7

8      Dr. Snoeren's Rebuttal Report (the "Snoeren Rebuttal Report"), served on September 13,

9      2013, expands on this late disclosure.

10

11

12      Dr. Snoeren also opines that

13

14

15

16      This is an entirely new contention.  Apple's interrogatory responses setting out its non-

17      obviousness contentions **never once** stated that

18

19      (Fazio Decl. Ex. 17 (Apple's Objs. and Resp. to Interrogatory No. 5, July 15,

20      2013) at 3-15, 20-22.)

21      **B.      Dr. Snoeren Discloses A New Accused Product and New Infringement
               Theories, In Violation of This Court's June 26 Order, and Issues Untimely**

22      **Supplemental Reports**

23      Dr. Snoeren's report adds a new accused product for the '959 Patent, without explanation:

24      the Tab 2 10.1.  (*See, e.g.*, Fazio Decl. Ex. 10 (Snoeren Report) ¶¶ 65-66, 123 n.7, 315.)[2]  It also

25      _____

26      [2]   The Court's case management orders required Apple to identify accused products long ago.

27      (Dkt. 160, 394, 471.)  In response to the Court's order (Fazio Decl. Ex. 22 (Hr'g Tr. Feb. 14,
       2013) at 11:9-12:22), Apple stated on February 15, 2013 that the Tab 2 10.1 product was *not*

28      (footnote continued)

**SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES**



1   adds multiple new theories of "heuristic" search, not mentioned in Apple's infringement

2   contentions.  Yet on June 26, 2013, this Court *rejected* Apple's effort to identify a new theory of

3   "heuristic" search, ordering Apple to file revised amended infringement contentions that did *not*

4   alter Apple's theories of alleged "heuristic" infringement.  (Dkt. 636 at 33-34.)  The Court

5   expressly forbade Apple from alleging new "heuristics" at the eleventh hour, "to ensure that

6   [Apple] later does not rely on those statements to posit a new theory of infringement."  (*Id.* at 34.)

7          Notwithstanding this clear guidance, Dr. Snoeren repeatedly accuses "heuristics" Apple

8   never pointed to in its infringement contentions, *even in its final July 10 contentions*.  (*See, e.g.*,

9   Fazio Decl. Ex. 10 (Snoeren Report) ¶¶ 257-59, 270-73, 277-78, 281, 292-93, 296, 299.)  For

10  example, Apple's infringement contentions ███████████████████████████

11  █████████████████████████████████████████████

12  █████████████████████████████████████████████

13  █████████████████████████████████████████████

14  ████████████████████████████████████  (Fazio Decl.

15  Ex. 23 (July 10 contentions – Galaxy S III Infringement Chart) at 11-12.)  But according to Dr.

16  Snoeren, the Google Search component ████████████████████████

17  █████████████████████████████████████████████

18  █████████████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████████

21  █████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ██████████████████████████████  This new theory of "heuristic" search

24

25

26  _____

27  accused of infringing the '959 Patent.  (Dkt. 381.)  Apple's infringement contentions likewise did
    *not* accuse the Tab 10.1 of infringing the '959 Patent.  (Dkt. 681.)

28

1  is precisely the sort of allegation this Court instructed Apple not to include in its infringement

2  contentions.  (Dkt. 636 at 34.)[3]

3       Dr. Snoeren's new infringement theories did not stop when he served reports on the Court-

4  ordered deadline.  On September 24, 2013, one day before his deposition and over *one month* after

5  the August 12, 2013 due date for his infringement report, Dr. Snoeren issued a *new* infringement

6  report.  (Fazio Decl. Ex. 14 (Snoeren Errata to Report, Sept. 24, 2013); Ex. 15 (Snoeren Errata to

7  Ex. 3 (clean)).)  This new September 24 report revised Dr. Snoeren's analysis of the accused

8  Google Search Application, including new source code analysis and new theories regarding the

9  operation of this code.  (Fazio Decl. Ex. 16 (Snoeren Errata to Ex. 3 (redline)).)  This was Dr.

10 Snoeren's second supplement; an earlier supplement already amended opinions on the '414 Patent.

11 (Fazio Decl. Ex. 12 (Snoeren Errata to Report, Aug. 30, 2013).)  Apple did not move for leave to

12 serve either of these two supplemental reports:  it simply served them without leave, captioning

13 them as "errata" despite substantive changes.  (Fazio Decl. Ex. 14 (Snoeren Errata to Report, Sept.

14 24, 2013); Ex. 12 (Snoeren Errata to Report, Aug. 30, 2013).)

15     **C.    Dr. Snoeren's Reports Propose New, Previously Undisclosed Validity
             Contentions Based On New Claim Construction Theories For The '414 Patent
16           and '959 Patent**

17     Dr. Snoeren's rebuttal validity opinions for the '414 Patent and '959 Patents turn entirely

18 on contentions that were not disclosed to Samsung during fact discovery.  These new contentions

19 are frequently grounded in new claim constructions Apple never requested, or even disclosed, in

20 the *Markman* process or in Apple's interrogatory responses.

21

22

23 _____

24      [3]  Dr. Snoeren's report also introduces a previously undisclosed theory:  adding a new
    "Google" heuristic for particular products.  In Apple's final infringement contentions, Apple
25  alleged that the Galaxy S II Skyrocket, Galaxy SII Epic 4G Touch, Galaxy SII, Illusion, and
    Galaxy Note, include included six "heuristics":  (1) "Apps," (2) "Contacts," (3) "Messaging," (4)
26  "Play Books," (5) "Play Music," and (6) a "Web" heuristic.  (*See, e.g.*, Fazio Decl. Ex. 34 (July 10
    contentions – Galaxy SII).)  Apple never alleged a "Google" heuristic.  (*Id.*)  Yet Dr. Snoeren's
27  report introduces a new theory, that some software versions for these products include a "Google"
    heuristic.  (Fazio Decl. Ex. 11 (Snoeren Report Ex. 4).)

28

1.   '414 Patent

The '414 Patent relates to "systems and methods for synchronizing data between two or more data processing systems." (Fazio Decl. Ex. 18 ('414 Patent) at 1:6-8.)  Claim 20 depends from claim 11, and requires that "the synchronization software component [of claim 11] is configured to synchronize structured data of a first data class and other synchronization software components are configured to synchronize structured data of other corresponding data classes." (*Id.* at 34:18-22.)

Dr. Snoeren claims that the prior art does not satisfy claim 20, on the new theory that claim 20 requires "synchronization software components" that "*plug[ ] into a consistent synchronization framework.*"  (*See, e.g.*, Fazio Decl. Ex. 13 (Snoeren Rebuttal Report) ¶¶ 428, 572 (emphasis added).)  Dr. Snoeren also asserts that claim 20 requires each claimed "synchronization software component" to "*provide[] its own synchronization processing thread(s)* to synchronize a corresponding data class."  (*Id.* ¶ 493 (emphasis added); *see also id.* ¶¶ 565, 566.)  And Dr. Snoeren offers a new construction for the term "provided by," arguing that each "synchronization software component" must "cause the generation" of a thread.  (*See, e.g.*, Fazio Decl. Ex. 19 (Snoeren Dep. 300:14-23, Sept. 25, 2013).)

These theories are absent from Apple's validity contentions.  (Fazio Decl. Ex. 20 (Apple's Objs. and Resp. to Interrogatory No. 26, July 15, 2013) at 59-300.)  Yet these theories are Apple's *entire basis* for alleging that claim 20 is valid.  Dr. Snoeren admits the prior art contains components configured to synchronize multiple data classes, but argues these synchronization components do not satisfy claim 20 because they do not "plug-in" to a "consistent synchronization framework."  (*See, e.g.*, Fazio Decl. Ex. 13 (Snoeren Rebuttal Report) ¶¶ 428, 454.)  Dr. Snoeren also admits the prior art discloses software components configured to synchronize structured data, but argues they cannot be the "synchronization software components" required by claim 20 because they do not "create" or "instantiate" their own separate thread, as opposed to running instructions on a thread that already exists.  (*Id.* at ¶¶ 606 & 607.)

2.    '959 Patent

Dr. Snoeren's opinions on the '959 Patent rely extensively on a previously-undisclosed construction of the term "heuristic" – a term that Apple did not select for construction in the *Markman* proceedings, and that was not considered in the Court's February 10, 2013 claim construction order.  (Dkt. 447.)  Dr. Snoeren claims that to anticipate, there must be more than a "heuristic" software algorithm; a "heuristic" must also be implemented *as a "module,"* even though the word "module" does *not* appear in claim 24 of the '959 Patent. (*See, e.g.*, Fazio Decl. Ex. 13 (Snoeren Rebuttal Report) ¶ 63 ("to anticipate claim 24, there must be two heuristics *and the two heuristics must be implemented in a module on the device*") (emphasis added).)

**D.    The Mowry Report Introduces New Infringement Theories Regarding The Doctrine of Equivalents**

Apple's final infringement contentions for the '647 Patent, filed with the Court on May 21, 2013, do not allege infringement under the Doctrine of Equivalents.  (Dkt. 526-5.)  These claim charts do not provide any analysis of the Doctrine of Equivalents, and indeed the words "equivalent," "equivalents," and "equivalence" are found nowhere in the claim charts.  (*Id.*)

On August 12, Apple served the opening Mowry Report.  In that report, Dr. Mowry alleges for the first time for certain claim limitations that, to the extent those limitations are not met literally, they are met under the Doctrine of Equivalents.  (Fazio Decl. Ex. 27 (Mowry Report) ¶¶ 148, 204, 252.)  These Doctrine of Equivalents theories were not disclosed to Samsung as part of Apple's Patent Local Rule disclosures, and do not appear in Apple's final infringement contentions for the '647 Patent.  (Dkt. 526-5.)

**E.    Dr. Mowry Relies For The First Time On Conversations With Two Additional Apple Engineers To Support Allegations That Various Apple Products Practice The '647 Patent**

On November 30, 2012, Samsung served Apple with Interrogatory No. 25, seeking a complete identification of any products by which Apple is or was allegedly practicing the asserted claims of the '647 Patent.  Apple responded to Samsung's Interrogatory No. 25 on January 14, 2013, and supplemented its response regarding the '647 Patent twice, on May 28, 2013 and July 15, 2013.  (Fazio Decl. Ex. 8 (Apple's Objs. and Resp. to Interrogatory No. 25) at 42-59.)

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ██████████████████████████████████

4          Dr. Mowry now opines, based on his "review of certain iOS code and [] ***discussions with***

5 ***Apple engineers***", that Apple devices with iOS 3.0 through 6.0 practice the asserted claims.

6 (Fazio Decl. Ex. 27 (Mowry Report) ¶ 300 (emphasis added).)  Dr. Mowry offers no evidence

7 other than these discussions to support his opinions that versions of iOS other than 3.1.3 practice

8 the '647 Patent. ████████████████████████████████

9 ████████████████████████████████████████████

10 ██████████████████████████████████████████

11 ██████████████████████████████████████████████

12 ██████████████████████████████████████████████

13 ██████████████████████████████████████████████

14 ███████████  (Fazio Decl. Ex. 27 (Mowry Report) ¶ 300.)  Instead Dr. Mowry merely opines

15 that "the Apple iPhone 3GS running iOS 3.1.3 practices at least claim 1 of the '647 patent," citing

16 to his expert reports in another matter.  (*Id.* ¶ 299.) ████████████████████████

17 ███████████████████████████████  Dr. Mowry does not identify the

18 engineers he spoke with or explain the substance of those conversations.  (*Id.* ¶ 300.)

19          In addition, Dr. Mowry now opines for the first time that ████████████████

20 ██████████████████████████████████████████████

21 ██████████████████████  At no point during fact discovery did Apple allege that any

22 device, operating system, or other Apple product prior to ███████ practiced any claim of the '647

23 Patent.  Apple has identified no evidence that ████████████████████████

24 ██████████████████████████████

25                              **LEGAL STANDARD**

26          The Federal Rules of Civil Procedure and the Patent Local Rules are in place to prevent

27 late disclosure of parties' contentions and legal theories.  *See GN Resound A/S v. Callpod, Inc.*,

28 No. C 11–04673 SBA, 2013 WL 1190651, at *2 (N.D. Cal. Mar. 21, 2013) ("The purpose of Rule

3-1 is to be 'nit picky, to require a plaintiff to crystallize its theory of the case and patent claims.'") (internal citation omitted); *Digital Reg. of Texas LLC v. Adobe Sys. Inc.*, No. CV 12–01971–CW, 2013 WL 633406, at *2 (N.D. Cal. Feb. 20, 2013) ("The purpose of Patent L.R. 3-1 is 'to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'") (internal citation omitted); Patent Local Rule 3-6 ("Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause."); Fed. R. Civ. P. 37(c)(1) (a party "fail[ing] to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").  As this Court previously informed the parties, "expert trial testimony in a patent case should be no different than in other cases:  the testimony is supported by a report which in turn reliably *applies* the theories *disclosed in the contentions* to evidence *disclosed during fact discovery*."  *Apple Inc. v. Samsung Elecs. Co.*, No. C 11–1846 LHK (PSG), 2012 WL 2499929, at *1 (N.D. Cal. June 27, 2012) (emphasis added).

Courts routinely strike new theories asserted for the first time in expert reports.  *See, e.g.*, *Oracle America, Inc. v. Google Inc.*, No. C 10–03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) (granting in part Google's motion to strike portions of Oracle's expert report, where the expert report "referenced three devices that were not specifically named" in the Rule 3-1(b) disclosures, and where the report accused those new devices of infringement); *id.* at *4-5 (finding that a theory in Oracle's expert report of how a software process practiced an asserted claim "simply was not supported by Oracle's infringement contentions," holding that "Oracle may not raise a new infringement theory at this late date," and granting Google's motion to strike that theory from the expert report); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C 08–04567 CW, 2009 WL 3353306, at *3 (N.D. Cal. Oct. 16, 2009) (striking the portions of expert reports that addressed additional products not mentioned in infringement contentions).

1

## ARGUMENT

2

**A.      The Court Should Strike Dr. Snoeren's New Allegation That Apple Practices Claim 34 of The '959 Patent**

3

4        The Patent Local Rules required Apple to explain its assertions on its practice of its patents

5   "[n]ot later than 14 days after the Initial Case Management Conference" if Apple wanted "to

6   preserve the right to rely, *for any purpose*, on the assertion that its own . . . product . . . practices

7   the claimed invention."  (Patent L.R. 3-1(g) (emphasis added).)  Pursuant to Rule 3-1(g), Apple

8   identified 15 claims it asserted its products practiced:  14 claims that Samsung was alleged to

9   infringe, and one claim (claim 6) that Samsung was not alleged to infringe.  (Fazio Decl. Ex. 3

10  (Apple's June 15 contentions, Ex. 140).)  Claim 34 was *not* present in this list.  (*Id.*)

11

12

13     

14

15

16

17                                    – depriving Samsung of the chance to analyze this contention and

18  understand its implications for claim construction and for invalidity.

19        Apple's new reliance on claim 34 frustrates the purpose behind the Patent Local Rules and

20  the discovery process:  to force parties to "crystallize" their infringement and invalidity theories

21  early on, rather than sandbag their opponents with new theories at the eleventh hour.  *Digital Reg.*

22  *of Texas LLC*, 2013 WL 633406, at *2.  Samsung had no warning of, or access to, Apple's new

23  theory on this issue before the close of fact discovery.  For example, Samsung had no notice of the

24  need to press constructions for terms that appear in claim 34, but not in the asserted claims of the

25  '959 Patent, such as a "global heuristic" for "selectively providing the information identifier to a

26  plurality of heuristics."  (Fazio Decl. Ex. 30 ('959 Patent) at 10:2-11.)  Samsung also had no

27  chance to prove claim 34 is invalid, despite the obvious relevance of that issue:  A party cannot

28  "practice" an invalid claim.  *Cf. Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1291

1   (Fed. Cir. 2005) ("[T]here can be no . . . induced infringement of invalid patent claims."); *Richdel,*

2   *Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) ("The claim being invalid there is

3   nothing to be infringed.").  Samsung also had no notice of Dr. Snoeren's new, and highly strained,

4   non-obviousness theory for the '959 Patent, which hinges on Apple's alleged practice of claim 34:

5   ███████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████

8   ███████████████████████

9       None of these theories were disclosed while Samsung had an opportunity to consider them

10  during fact discovery.  These theories, and their implications for claim construction or invalidity,

11  were not known to Samsung during the prior art narrowing process.  Nor were these theories

12  known to Samsung when it investigated and proposed non-infringing alternative designs, or when

13  it selected terms for claim constructions.  Because Apple's new theories regarding whether and

14  how its products practice the '959 Patent were not disclosed in a timely manner, they should be

15  stricken.  *See, e.g.*, *Oracle*, 2011 WL 4479305, at *2.

16  **B.     The Court Should Strike Dr. Snoeren's New Theories of Validity For The '414**
        **Patent and '959 Patent**

17

18      Dr. For the '414 Patent and the '959 Patent , Dr. Snoeren's new validity theories – and the

19  new claim constructions designed to support those late validity theories – should be excluded.

20          **1.    '414 Patent**

21      Dr. Snoeren's new theories of validity for the '414 Patent, based on new constructions for

22  the '414 Patent that Apple neither requested nor obtained from the Court, are improper.  First, Dr.

23  Snoeren opines that claim 20 requires a "consistent" "architecture" made up entirely of not just

24  "components" but only "plug-in" components – even though these terms appear nowhere in the

25  claims.  (*See* Fazio Decl. Ex. 10 (Snoeren Report) ¶ 408 ("[O]ne of skill in the art would

26  understand claim 20 to require the use of a plug-in model architecture such that additional

27  synchronization software components corresponding to other classes of structured data are

28  plugged into that architecture to handle the synchronization of such data in addition to the

1  requirements of claim 11 discussed above"); Ex. 13 (Snoeren Rebuttal Report) ¶ 572 ("[C]laim 20

2  requires a plug-in model architecture such that additional synchronization software components

3  corresponding to other classes of structured data are plugged into that architecture to handle the

4  synchronization of such data"); *id.* ¶ 428 (claiming prior art plug-ins do not anticipate because

5  those plug-ins do not use a "consistent" architecture).)[4]  Second, Dr. Snoeren  limits claim 20 by

6  requiring each synchronization software component to "provide its own synchronization

7  processing thread," again without support in the claim itself or patent specification.  (*See* Fazio

8  Decl. Ex. 13 (Snoeren Rebuttal Report) ¶ 493 ("[C]laim 20 requires at least three distinct

9  synchronization software components ***each of which provides its own synchronization processing***

10  ***thread(s)*** to synchronize a corresponding data class.") (emphasis added).)[5]  And compounding his

11  new, narrow take on this claim limitation, Dr. Snoeren now claims that a component must not only

12  supply instructions for execution on a thread; the component must further "cause the *generation* of

13  the thread on which it's going to execute," even though this notion appears nowhere in the patent

14  or the claims.[6]

15

16      [4]  Dr. Snoeren's report also alleges the accused products infringe claim 20 because they

17  implement a "plug-in architecture" for synchronization.  (*See* Fazio Decl. Ex. 10 (Snoeren Report)
   ¶¶ 472, 473, 475.)  Apple never disclosed this theory in its Patent Local Rule 3.1 disclosures or

18  infringement charts, offering no notice of Dr. Snoeren's opinions on this new "plug-in" limitation.

19      [5]  The term "provided by" appears in *only* non-asserted claim 11, from which asserted claim 20
   depends, and the "provided by" limitation in claim 11 applies *only* to "a synchronization software

20  component" that synchronizes "structured data from a first database" as recited in claim 11.  (*See*
   Fazio Decl. Ex. 18 ('414 Patent) at 33:48-50.)  Claim 20 explains that this antecedent limitation

21  from claim 11 – the one component described in claim 11 as "provid[ing]" a thread – is the
   component "configured to synchronize structured data of a first data class."  (*Id.* at 34:18-22.)  The

22  "other synchronization software components configured to synchronize structured data of other
   corresponding data classes" recited in claim 20 do *not* refer back to any antecedent in claim 11,

23  and are *not* described as "provid[ing]" anything.  (*Id.*)  Thus, Dr. Snoeren rewrites claim 20 as,
   "The storage medium of claim 11 wherein the synchronization software component is configured

24  to synchronize structured data of a first data class and **[wherein]** other synchronization software
   components **[each provide their own at least one synchronization processing thread and]** are

25  configured to synchronize structured data of other corresponding data classes."  The bracketed
   language appears nowhere in the claim, and would significantly limit claim scope if it was present.

26      [6]  Dr. Snoeren disclosed for the first time in his deposition that his opinions assume the term

27  "provided by" in claim 11 of the '414 Patent means "*cause the generation of.*"  (*See*, *e.g.*, Fazio
   Decl. Ex. 19 (Snoeren Dep. 300:14-23 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉

28      (footnote continued)

As a result of these new constructions, Dr. Snoeren transformed claim 20 into a "plug-in architecture" that is part of a "consistent synchronization framework," where each of three synchronization software components must "cause the generation of" a "synchronization processing thread."  Dr. Snoeren's validity opinions are grounded *entirely* in these new and previously undisclosed constructions.  Yet Apple did not give Samsung notice of these arguments *anywhere* in its validity contentions.  (Fazio Decl. Ex. 20 (Objs. and Resp. to Interrogatory No. 26) at 59-300.)  For example, Apple did not rely on the concept of a "plug-in architecture" or a "consistent synchronization framework" to distinguish the prior art, or rely on a construction that requires each synchronization software component of claim 20 to "provide its own thread," or attempt to distinguish *any* prior art on the basis that its synchronization software components do not "cause the generation of" the synchronization processing thread they provide instructions to. Nor did Apple pursue these constructions during *Markman* or raise them in its responses to Samsung's interrogatory regarding claim construction.  (Fazio Decl. Ex. 21 (Apple's Objs. and Resp. to Interrogatory No. 46).)  ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████  ████████████████████  In fact, Apple never raised its new theories of validity before Dr. Snoeren served his reports.  Apple is not only improperly importing limitations into claim 20 to distinguish the prior art, but is also doing so long after the deadline to disclose theories of validity, long after Samsung's opportunity to take third-party discovery closed, and long after Samsung was required to drop most of its prior art references.  Dr. Snoeren's new theories of validity for claim 20 of the '414 Patent should be stricken.[7]

_____

████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████

[7]   Should the Court determine not to strike Dr. Snoeren's opinions, Samsung requests leave to supplement its interrogatory responses and expert reports to explain the implications of
(footnote continued)

SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES

2.    '959 Patent

Dr. Snoeren now states that "heuristics" in the '959 Patent means "modules that implement a heuristic algorithm."  (Fazio Decl. Ex. 10 (Snoeren Report) ¶ 8.)  Dr. Snoeren does *not* claim that the plain and ordinary meaning of "heuristic" is a "module."  Instead, Dr. Snoeren claims that in light of the '959 Patent specification, "heuristic" should be *construed* as a "module."  (*Id.* ¶ 99.) This simply imports limitations from other claims into claim 24 to avoid invalidity.  As Judge Koh pointed out, the terms "heuristic" and "module" are two distinct terms with two distinct meanings: a "module" is not "heuristic" just because it implements a heuristic algorithm, and a "heuristic" is not a "module" simply because it is "heuristic."  (Dkt. 221 at 16:10-22.)  Most claims of the '604 and '959 Patents require a "module," and further require that "each" module implement a *different* heuristic algorithm – a standard that the Federal Circuit found Apple could not satisfy for infringement.  *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1377-78 (Fed. Cir. 2012).  Apple therefore dismissed all the asserted claims of the '604 and '959 Patents that require a "module," yet Apple is now attempting to insert the word "module" into claims where it does *not* appear, by interpreting "heuristic" as "module," even though these two separate words have two separate meanings and are used separately throughout the '959 Patent.

Apple's long delay is unjustifiable, and highly prejudicial to Samsung.  The deadline to drop prior art references, or seek additional discovery on third-party prior art, has long since passed.  Samsung served interrogatories requesting Apple's contentions on how the prior art did not anticipate claims 24 and 25 of the '959 Patent, ████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████  Samsung was entitled to, and did, rely on Apple's interrogatory responses.  Apple cannot radically depart from them now.

---

Dr. Snoeren's late-disclosed theories regarding the '414 Patent, including the implications of Dr. Snoeren's narrow new claim interpretation on invalidity, non-infringement, non-infringing alternative designs, and damages.  Samsung also requests the opportunity to conduct third-party discovery for prior art purposes and to revisit the list of prior art it will rely on, as it had no notice of these new narrow constructions by the Court's initial deadline for prior art narrowing.

1    Apple's new theories of claim constructions are not only late, but directly contrary to

2    Judge Koh's clear instructions.  At the July 31, 2013 case management conference, Apple tried to

3    launch a new second round of claim construction.  Judge Koh explained this proposal was

4    unworkable this far along in the case, and would require releasing the trial date set for March 31,

5    2014.  (Fazio Decl. Ex. 1 (Hr'g Tr. at 25:4-7, July 31, 2013) (THE COURT:  "But if Apple is

6    basically asking for a second round of claim construction, I will give it to you, but you will not

7    have the trial date that I've set.  Okay?").)  Having asked the Court *not* to conduct further claim

8    construction in lieu of trial, and instead to *maintain* the current trial date, Apple now tries an end-

9    run around the Court's instructions, by introducing new claim constructions *through its experts*.

10   This is improper.[8]  If Apple wanted to construe additional terms, Apple should have requested

11   another *Markman* hearing, as Judge Koh suggested.  It cannot ignore the Court and pack its expert

12   reports with new claim construction theories, converting the trial into a claim construction hearing.

### C.    The Court Should Strike Dr. Snoeren's New Infringement Theories For The '959 Patent

15      In the Snoeren Report, Apple accuses a new Samsung product of infringing the

16   '959 Patent:  the Tab 2 10.1.  (*See, e.g.*, Fazio Decl. Ex. 10 (Snoeren Report) ¶¶ 65-66, 123 n.7,

17   315.)  Apple is using the Snoeren Report to accuse the Tab 2 10.1 of infringement despite Apple's

18   failure to disclose this product in its '959 infringement contentions.  (Dkt. 681.)  Apple cannot use

19   this expert report to insert a new accused product, long after the close of fact discovery.[9]

---

[8]   An expert is not permitted to engage in pure claim construction.  (*See* Dkt. 221 at 10 (stating that "[w]here the parties dispute the scope of a claim term," it is the *court* that "has a duty to construe the term" (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008))); *see also Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1308 (W.D. Wa. 2006) ("Claim construction is a matter of law for the Court, not for the Plaintiff's expert.") (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996)).)

[9]   *Oracle*, 2011 WL 4479305, at *3 ("As to the accused products newly identified in the Mitchell report, Google's motion is GRANTED.  Oracle's infringement theories may be directed only toward accused products that were specifically named in its April 2011 disclosure of infringement contentions.  Because the LG Optimus, the HTC Droid Incredible 2, and the Motorola Atrix were not among the products specifically listed therein, Oracle may not now accuse them of infringement."); *Monolithic Power Sys., Inc.*, 2009 WL 3353306, at *3 (similar).

1    Dr. Snoeren also introduces new theories of infringement, identifying multiple new

2  "heuristics" that allegedly infringe.  Claim 24 of the '959 Patent requires "a plurality of heuristics

3  to locate information in the plurality of locations which include the Internet and local storage

4  media."  (Fazio Decl. Ex. 30 ('959 Patent) at 9:19-21.)  Apple's infringement contentions claimed



6  (*See, e.g.*, Fazio Decl. Ex. 23 (July 10

7  contentions – Galaxy S III Infringement Chart) at 11-12.)  More specifically,

Case No. 12-CV-00630-LHK (PSG)
SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES

1



2

3

4

5

6

7

8    Apple never disclosed this alleged "heuristic" before it served the

9    Snoeren Report on August 12, after the close of fact discovery.

10

11

12

13

14

15

16

17    (Fazio Decl. Ex. 10 (Snoeren Report) ¶¶ 264-267 (emphases added); *see also id*. ¶¶ 251-255, 286-

18    290.)  None of these theories of "heuristic" search appear in Apple's July 10 contentions.

19        Dr. Snoeren's new "heuristics" also include new allegations regarding

20

21

22

23

24

25    The theory was *entirely absent* from Apple's infringement contentions served July 10.

26    (Dkt. 681.)  Dr. Snoeren's report also introduces a previously undisclosed theory that the Galaxy S

27    II Skyrocket, Galaxy SII Epic 4G Touch, Galaxy SII, Illusion, and Galaxy Note, include an

28

alleged "Google" heuristic.  (*See, e.g.*, Fazio Decl. Ex. 34 (July 10 contentions – Galaxy SII).)

Though this theory too was *entirely absent* from Apple's infringement contentions served July 10,

Dr. Snoeren's report contends that for some software versions these products include a "Google"

heuristic.  (Fazio Decl. Ex. 11 (Snoeren Report Ex. 4).)

Apple's attempt to introduce these new theories after the close of fact discovery directly contravenes the Local Rules of this Court, which "require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity."  *O2 Micro Int'l v. Monolithic Power Sys.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006).  Apple knew that it was not to add any new infringement theories to its contentions.  Indeed, the Court allowed Apple to file new infringement contentions on July 10, but emphasized that Apple could ***not*** include any language concerning new alleged "heuristics" in those new contentions, precisely "to ensure that [Apple] later does not rely on those statements to posit a new theory of infringement."  (Dkt. 636 at 34.) Dr. Snoeren ignored that directive.  He posits many new theories of infringement, based on "heuristics" that were not in Apple's July 10 contentions.

Dr. Snoeren's new theories of infringement are improper not only because they violate this Court's order, but also because they offer late allegations with obvious implications for claim construction, for non-infringement, and for noninfringing alternative designs.  They also implicate validity, since prior art disclosing the functions Dr. Snoeren now accuses of infringement would anticipate on Dr. Snoeren's new reading of the claims.  It is far too late to restart discovery and order new rounds of expert reports and depositions to address these new, late theories of infringement.  As courts have observed, "[i]t would disrupt the orderly process of trial preparation to require a new round of expert reports and a new round of expert depositions.  And the Court does not have resources to spare in order to manage cases in which counsel create foreseeable delay through violation of the rules."  *Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D. Cal. 1999).  Similarly, this Court should strike all portions of the Snoeren Reports that discuss new theories of "heuristic" search not disclosed in Apple's July 10 infringement contentions.  *See Oracle*, 2011 WL 4479305, at *4-5; *Monolithic Power Sys. Inc.*, 2009 WL 3353306, at *3.

**D.     The Court Should Strike Dr. Snoeren's Supplemental Reports**

Dr. Snoeren's two supplemental reports, served August 30 and September 24, came without warning and without authorization. Apple never sought leave for either of these supplements. Thus, they should be stricken: "[Rule 26(e)] does not cover failures of omission because the expert did an inadequate or incomplete preparation. To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." *Akeva L.L.C. v. Minuzo Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (citations omitted); *see also Dufresne v. Microsoft Corp.*, 2006 U.S. Dist. LEXIS 57423, at *25 (D. Mass. Apr. 28, 2006) (finding no good cause for supplemental expert report on infringement where "the vast majority of support appears to come from materials that were in Plaintiff's possession at the time of the original exchange of expert reports"); *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 544 (D.N.J. 2005) (striking late expert declaration as "an improper attempt to circumvent the expert discovery schedule established by this Court").

**E.     The Court Should Strike All Portions of The Mowry Report That Introduce New Theories of Infringement Under The Doctrine of Equivalents**

Dr. Mowry introduced a new theory concerning alleged infringement under the Doctrine of Equivalents in his opening report. (Fazio Decl. Ex. 27 (Mowry Report) ¶¶ 148, 204, 252.) During fact discovery, Apple did not disclose infringement theories under the Doctrine of Equivalents. (Dkt. 526-5.) Dr. Mowry, for the first time, alleges for certain limitations that "to the extent that this limitation it is not met literally, … it is met under the Doctrine of Equivalents because the limitation and the corresponding components in the Accused Products corresponding to this limitation are insubstantially different." (Fazio Decl. Ex. 27 (Mowry Report) ¶¶ 148, 204, 252.)

Apple's attempt to introduce these new theories after the close of fact discovery directly contravenes the Local Rules, which "require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." *O2 Micro Int'l*, 467 F.3d at 1359-60. It is also ***directly contradictory*** to positions Apple previously took in this Court. On April 30, 2013, Samsung filed a Motion seeking to amend its infringement contentions to add

1   Doctrine of Equivalents theories.  (Dkt. 476-3 (Samsung's Notice of Motion and Motion for Leave

2   to Amend and Supplement Its Infringement Contentions)).)  Apple strenuously opposed, claiming

3   that "Samsung had an obligation under Patent L.R. 3-1 to disclose its DOE claims as soon as it

4   had a good-faith basis to do so." ( Dkt. 636 at 5.)  Relying on those arguments, this Court

5   concluded that Samsung "should have provided its DOE theories in its contentions at the

6   beginning of this case if it had a good-faith basis to assert them." (*Id.* at 7.)

7        Dr. Mowry's report attempts to do exactly what Apple asked this Court to prevent

8   Samsung from doing:  adding Doctrine of Equivalents theories.  Apple cannot have it both ways.

9   It cannot preclude Samsung from using the Doctrine of Equivalents, while at the same time

10  burdening Samsung with the very same prejudice that it previously complained of.  (Dkt. 516-2 at

11  18 ("Forcing Apple to defend against new equivalents theories now . . . would be extremely

12  burdensome to Apple by requiring it to re-evaluate prior art and claim construction (to determine

13  whether Samsung is now interpreting the claims in a way that would ensnare prior art), to launch

14  extensive new consultation and investigation with its experts, and potentially to re-depose party

15  and third-party witnesses, such as inventors.").)  This Court should therefore strike all portions of

16  the Mowry Report that discuss infringement under the Doctrine of Equivalents as set out above.

17  *See Oracle*, 2011 WL 4479305, at \*4-5; *Monolithic Power Sys. Inc.*, 2009 WL 3353306, at \*3.

18  **F.    The Court Should Strike All Portions of The Mowry Reports That Rely On
            Discussions With Undisclosed Engineers To Allege Any Apple Products
19          Practice The '647 Patent**

20        Dr. Mowry has only ever attempted to demonstrate that Apple products using iOS version

21  3.1.3, and not any other version, practice any claim of the '647 Patent.  Dr. Mowry's analysis is

22  allegedly "based upon" his "work in the ITC Investigation No. 337-TA-710", where he

23  "personally reviewed the Apple source code for the 'data detectors' functionality." (Fazio Decl.

24  Ex. 27 (Mowry Report) ¶ 302.)  According to Dr. Mowry, in that investigation he "set forth . . .

25  [his] opinion that the Apple iPhone 3GS running iOS 3.1.3 practices at least claim 1 of the '647

26  Patent." (*Id.* ¶ 299.)  Yet now Dr. Mowry claims that "Apple devices running iOS 3.0 through 6.0

27  practice the asserted claims of the '647 Patent" based on his "review of certain iOS code and [his]

28

1   discussions with Apple engineers." (*Id.* ¶ 300; *see also id.* ¶¶ 301-303.)  Dr. Mowry, however, did

2   not identify the specific code he reviewed or the Apple engineers with whom he spoke.  Only *after*

3   Dr. Mowry's deposition and in response to requests from Samsung's counsel did Apple's counsel

4   reveal that Dr. Mowry spoke with Olivier Bonnet, Thomas Deniau, and Alexandre Moha.  (Fazio

5   Decl. Ex. 32 (Sept. 30, 2013 Email from Robert Vincent to Zachariah Summers).) ██████

6   ████████████████████████████████████████████████████████████████

7   Indeed, neither Olivier Bonnet nor Alexandre Moha can be found in Apple's Initial Disclosures or

8   supplements thereto, and consequently neither were deposed.[10]  Accordingly, Dr. Mowry's

9   opinions regarding Apple's alleged practice of the '647 Patent by any version of iOS other than

10  version 3.1.3 rest on new evidentiary support not previously disclosed to Samsung.

11       Samsung did not have an opportunity to depose Messrs. Bonnet and Moha and explore the

12  alleged bases for how Apple is practicing the '647 Patent through later versions of iOS.  ██████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  Dr. Mowry's reliance on this new information, first disclosed to Samsung well after the close of

16  fact discovery, is highly prejudicial and inhibited Samsung's ability to depose Dr. Mowry on these

17  issues.  As such, Dr. Mowry's opinions on Apple's alleged practice of the asserted claims by all

18  but version 3.1.3 of iOS should be stricken.

19             ████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24

25

---

26      [10]  Accordingly, Apple has waived its ability to rely on Messrs. Bonnet and Moha for any

27  purpose in this case.  To the extent Dr. Mowry's opinions are not stricken, as Samsung requests,
    Samsung should be permitted to take the depositions of Messrs. Bonnet and Moha out of time.

28

1
2
3

## CONCLUSION

4      For the foregoing reasons, Samsung respectfully requests that the Court strike all of

5 Dr. Snoeren's and Dr. Mowry's improper new opinions, as set forth in the proposed order.

6

7 DATED:  November 5, 2013          QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP
8

9                                   By /s/ Victoria F. Maroulis

10                                     Charles K. Verhoeven
                                       Kevin P.B. Johnson
11                                     Victoria F. Maroulis
                                       William C. Price
12
                                       Attorneys for
13                                     SAMSUNG ELECTRONICS CO., LTD.,
                                       SAMSUNG ELECTRONICS AMERICA, INC.,
14                                     and SAMSUNG TELECOMMUNICATIONS
                                       AMERICA, LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION OF E-FILED SIGNATURE

I, Patrick D. Curran, am the ECF user whose ID and password are being used to file Samsung's Notice of Motion and Motion to Strike Expert Testimony Based on Previously Undisclosed Theories.  In compliance with Civil L.R. 5-1(i), I hereby attest that Victoria F. Maroulis has concurred in this filing.

Dated:  November 5, 2013

/s/ Patrick D. Curran
Patrick D. Curran

Case No. 12-CV-00630-LHK (PSG)
SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES