JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 5:12-cv-00630-LHK<br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE ARGUMENTS FROM SAMSUNG'S INVALIDITY AND NON-INFRINGEMENT EXPERT REPORTS REGARDING APPLE PATENTS**<br><br>Date:    December 10, 2013<br>Time:   10:00 a.m.<br>Place:   Courtroom 5, 4th Floor<br>Judge:  Hon. Paul S. Grewal |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Counterclaim-Defendant. | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**<br><br>**HIGHLY CONFIDENTIAL – SOURCE CODE - ATTORNEYS' EYES ONLY**<br><br>**HIGHLY CONFIDENTIAL – THIRD PARTY SOURCE CODE – ATTORNEYS' EYES ONLY**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 10 a.m. on December 10, 2013, Plaintiff and Counterclaim-Defendant Apple Inc. ("Apple") shall and hereby does move the Court pursuant to Federal Rule of Civil Procedure 37(c)(1) and the Patent Local Rules to strike certain portions of the expert reports of Jeffrey Chase, Martin Rinard, Kevin Jeffay, Saul Greenberg, and Daniel Wigdor, each of whom has been retained by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung").

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 37(c)(1) and the Patent Local Rules, Apple seeks an order striking portions of certain reports submitted by Jeffrey Chase, Martin Rinard, Kevin Jeffay, Saul Greenberg, and Daniel Wigdor, directed at Apple's patents as identified in detail in the accompanying Memorandum of Points and Authorities and Proposed Order.  For the convenience of the Court, Apple has highlighted in pink highlighting the portions of each report that it is moving to strike in Samsung's expert reports that are attached as Exhibits 1-8 to the Declaration of Joshua Furman submitted with this Motion.

Gibson, Dunn & Crutcher LLP

APPLE'S MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE          CASE NO. 12-CV-630-LHK (PSG)

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 1

III.  ARGUMENT ...................................................................................................... 2

    A.   New Invalidity Theories First Disclosed in Samsung's Experts' Reports
       Should be Stricken ..................................................................................... 3

       1.   The Court Should Strike Invalidity Theories Disclosed for the First Time
           in Samsung's Opening Expert Reports........................................... 3

           a.   The Chase Opening Report regarding the '414 Patent ................... 3

           b.   The Jeffay Opening Report regarding the '647 Patent ................... 7

       2.   The Court Should Strike Invalidity Theories Based on Improper
           Demonstration Systems .............................................................. 10

           a.   The WAIS and AppleSearch "demonstration systems" in the Rinard
               Opening Report regarding the '959 Patent.................................... 10

           b.   The Evolution and Windows Mobile "demonstration systems" in the
               Chase Opening Report regarding the '414 Patent .......................... 11

       3.   The Court Should Strike Invalidity Theories in Samsung's Experts'
           Rebuttal Reports That Were Not Timely Disclosed in Samsung's Experts'
           Opening Reports........................................................................ 12

           a.   The Jeffay Rebuttal Report regarding the '647 Patent................... 13

           b.   The Wigdor Rebuttal Report regarding the '172 Patent ................ 13

           c.   The Rinard Rebuttal Report regarding the '959 Patent ................. 14

           d.   The Chase Rebuttal Report regarding the '414 Patent................... 15

    B.   The Court Should Strike Samsung's New Non-Infringement Theory in the
       Greenberg Rebuttal Report regarding the '721 Patent..................................... 16

    C.   The Court Should Strike Samsung's New Non-Infringing Alternative Theory
       That Was Added In The Jeffay Rebuttal Report Regarding the '647 Patent
       Experts' Report But Missing from Samsung's Interrogatory Responses ...................... 17

    D.   The Court Should Strike Samsung's Experts' Reliance In the Rinard Rebuttal
       Report Regarding The '959 Patent On Google Source Code That Neither
       Samsung Nor Google Produced to Apple During Discovery............................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.    The Court Should Strike Samsung's Experts' Reliance In The Rinard Rebuttal Report Regarding the '959 Patent On An Undefined and Undisclosed Set Of Google Source Code ................................................................................................ 19

IV.    CONCLUSION ............................................................................................................ 22

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
   2012 WL 3155574 (N.D. Cal. Aug., 2, 2012) ................................................................. 5

*Genentech, Inc. v. The Trustees of the Univ. of Pennsylvania*,
   2012 WL 424985 (N.D. Cal. Feb 9, 2012) (Grewal, J.).............................................. 2, 3

*Zenith Electronics Corp. v. PDI Communications Systems, Inc.*,
   522 F.3d 1348 (Fed. Cir. 2008)................................................................................. 15, 16

**Statutes**
35 U.S.C. § 102 ............................................................................................................ 9

35 U.S.C. § 103 ............................................................................................................ 9

Gibson, Dunn & Crutcher LLP

# I.   INTRODUCTION

Apple respectfully moves to strike portions of Samsung's experts' reports directed to the asserted Apple patents.[1]   Specifically, Apple moves to strike portions in those reports that describe theories that were either not timely disclosed or that rely on information that was not timely produced to Apple during fact discovery.  Absent justification, portions of an expert report that introduce new opinions or rely on information that was not timely produced should be stricken.  The improper matter in these reports falls into five categories:  (1) Samsung's experts issued opinions based on previously undisclosed invalidity theories, (2) Samsung's '721 Patent expert relies on a new non-infringement theory that Samsung failed to disclose during fact discovery, (3) Samsung's '647 Patent expert introduced a new alleged non-infringing alternative disclosed for the first time in his rebuttal report, (4) Samsung's '959 Patent expert relied on versions of Google proprietary source code that were never produced by Google during discovery; and (5) Samsung's '959 Patent expert was provided a hard drive containing Google source code to prepare his report when that hard drive was not produced by Samsung or Google to Apple.

# II.   BACKGROUND

The Court's Scheduling Order and the Local Rules set forth a clear sequence of fact and expert discovery.  Samsung was required to serve Invalidity Contentions and did so on August 10, 2012 ("August 10, 2012 Invalidity Contention") (Ex. 19), followed by four amendments:  December 27, 2012 ("First Amended Invalidity Contentions") (Ex. 21); April 25, 2013 ("Second Amended Invalidity Contentions") (Ex. 22); May 24, 2013 ("Third Amended Invalidity Contentions") (Ex. 23); and June 27, 2013 ("Fourth Amended Invalidity Contentions") (Ex. 24).  In addition, Apple served contention interrogatories on Samsung including Apple's Third Set of Interrogatories to Samsung (Interrogatories No. 24 (non-infringement) and No. 29 (non-infringing alternatives)) (served Aug. 13, 2012).  Samsung served initial responses and then amended these responses several times up until the close of fact discovery on July 15, 2013.  Samsung's Further Supplemental Responses To Apple's

---

[1]  At issue are five Apple Patents: U.S. Patent Nos. 5,946,647 (the "'647 Patent"); 7,761,414 (the "'414 Patent"); 6,847,959 (the "'959 Patent"); 8,074,172 (the "'172 Patent"); and 8,046,721 (the "'721 Patent").

First, Third, And Tenth Sets Of Interrogatories (Interrogatory Nos. 4, 5, 6, 8, 20, 23, 24, 27, 29, 45) (served July 15, 2013).

Turning to expert discovery, the parties' opening reports should have covered all issues on which that party bears the burden of proof; then, the rebuttal reports were to be limited to rebutting issues raised in the opening reports for which the party did not bear the burden of proof.  D.I. 160 at 2.  The parties exchanged opening expert reports on August 13, 2013 and rebuttal expert reports on September 12, 2013.  For the convenience of the Court, a chart showing the technical experts in this case and their respective reports on the five Apple patents is shown below:

| Patent | Samsung's Experts | Apple's Experts |
|--------|-------------------|-----------------|
| '414 | Dr. Jeffrey Chase | Dr. Alex Snoeren |
| '959 | Dr. Martin Rinard | |
| '647 | Dr. Kevin Jeffay | Dr. Todd Mowry |
| '721 | Dr. Saul Greenberg | Dr. Andrew Cockburn |
| '172 | Dr. Daniel Wigdor | |

As discussed in detail below, Samsung's experts included opinions in their reports that were untimely without good cause to do so or otherwise improper.  As the parties move into pre-trial preparation, it is important to clarify what testimony the experts will be permitted to offer and thus, Apple is moving now to have those improper sections stricken to narrow the issues for trial.

### III.    ARGUMENT

When an expert report presents "a new or alternate means by which the jury could find the claim at issue invalid," a party may move to strike that section of the report and preclude reliance on those theories at trial.  *Genentech, Inc. v. The Trustees of the Univ. of Pennsylvania*, 2012 WL 424985 at *2 (N.D. Cal. Feb 9, 2012) (Grewal, J.) (citations omitted).  This is not a *per se* rule, where any new material is automatically stricken.  Rather, the Court will assess whether there is in fact a new theory, rather than an instance where "the challenged report section merely provides an evidentiary example or complementary proof in support" of a previously disclosed theory.  The Court also considers whether the contentions at issue could have been supplemented with the allegedly missing information.  *Id.*  As this Court noted previously, "[a]t a minimum, a key consideration for

1   the court is the timing of the disclosure in relation to when the disclosing party had the information

2   and when the opposing party would have needed the information in order to fairly conduct discovery

3   or prepare a responsive strategy." *Id.*

4          Samsung has repeatedly violated these requirements by withholding theories during discovery

5   and then disclosing them first time in its expert reports, without good cause to do so.  To prevent

6   Apple from unfairly having to defend itself against these new theories (which it had no opportunity to

7   explore during discovery), the Court should strike the newly-disclosed invalidity, non-infringement,

8   non-infringing alternative theories and a new opinion based on material not produced during

9   discovery to preclude Samsung's experts from advancing them at trial.

10  **A.     New Invalidity Theories First Disclosed in Samsung's Experts' Reports Should be
            Stricken**

11

12          **1.     The Court Should Strike Invalidity Theories Disclosed for the First Time
                     in Samsung's Opening Expert Reports**

13                  **a.     The Chase Opening Report regarding the '414 Patent**

14          For three of Samsung's key invalidity "systems" asserted against the '414 Patent – Windows

15  Mobile, Evolution and iSync – Samsung's expert on the '414 Patent presents a new invalidity theory

16  not found in Samsung's invalidity contentions.  Those new opinions were introduced in the Expert

17  Report of Jeffrey Chase, Ph.D. Regarding The Invalidity of the Asserted Claims of U.S. Patent No.

18  7,761,414 ("Chase Rep.").  In each of these instances Samsung cannot provide any justification for

19  this change and these theories should therefore be stricken.

20          ***Windows Mobile with ActiveSync***.  In Samsung's opening expert report on the '414 Patent,

21  Dr. Chase opines that the "Windows Mobile with ActiveSync system" is prior art to asserted claim

22  20.  For this claim, Samsung introduced a new theory of invalidity based on Windows Mobile that

23  was not disclosed to Apple in any of its invalidity contentions.

24          The parties agree that claim 20 requires *both*: (1) multiple "synchronization software

25  components" each configured to synchronize a different class of data (*e.g.*, mail or calendar data);

26  and (2) a synchronization processing thread that "is provided by a synchronization software

27  component."  To prove anticipation, Samsung must show that Windows Mobile discloses *both*

28

1   multiple, data class-specific synchronization software components *and* that those components provide

2   a synchronization thread.

3          For the first time in Dr. Chase's opening expert report, to meet the "software

4   synchronization components" limitation of claim 20, Samsung points to ███████ data class-specific

5   components in Windows Mobile — the ████████████████████████

6   ████████████████████████████████████████████████ (the "New

7   Components").[2] Dr. Chase opines that each of the New Components meet the requirement of claim

8   20 to "provide" a synchronization thread simply by █████████████████████████████

9   ██████████████████ Chase Rep., ¶¶ 290-622 and pages 9-18 of Exhibit 3 thereto (Ex. 1).[3]

10          None of the New Components Samsung now relies upon were disclosed anywhere within the

11   hundreds of pages of Windows Mobile invalidity contentions Samsung repeatedly amended during

12   discovery.  To the contrary, Samsung's contentions for claim 11 on which claim 20 depends and

13   which requires a single "synchronization software component" stated that a single "Sync client"–not

14   any of the █████████████████████████████████████████████████████

15   ███████████████████ components identified in the Chase Report – "provides a synchronization

16   thread that executes in the background concurrently with the one user-level non-synchronization

17   processing thread."  Samsung's Fourth Amended Invalidity Contentions, Ex. D-11 at 30 (Ex. 43).[4]

18   Yet, Samsung has now abandoned its reliance on the "sync client" as the sole basis of its invalidity

19   contentions undoubtedly because Samsung and its expert know that the "sync client" cannot satisfy

20   the "synchronization software component" requirements of claim 20 for at least two reasons,

21   including (1) it is only one component (there is only one sync client) while claim 20 requires multiple

22   components, and (2) it is not specific to the synchronization of any data class, as the claim also

23   _____

24   [2]  Samsung has moved for summary judgment of invalidity based entirely on these new theories.  *See*
     D.I. 804, Exh. 2 at 9-16.  Apple opposes that motion both on its merits as well as Samsung's failure
     to disclose these theories in its invalidity contentions and Apple hereby incorporates its response

25   herein.  D.I. 853 at 7-16.
     [3]  References to (Ex.__) in this motion refer to exhibits to the Declaration of Joshua Furman submitted

26   herewith unless otherwise specified.
     [4]  The "sync client" is identified as the "synchronization software component" for independent claim

27   11 of the '414 Patent.  Samsung's contentions do not identify any additional synchronization software
     components for the limitations added by dependent claim 20.  Samsung's Fourth Amended Invalidity

28   Contentions, Ex. D-11 at 111-12 (Ex. 43).

1   requires.  D.I. 853 at Ex. B-3 (Rebuttal Expert Report of Dr. Alex C. Snoeren ¶¶ 541-44) and B-4

2   (Deposition of Gary Hall ("Hall Tr.") at 74:2-7, 75:2-17, 76:23-77).

3           While Apple does not know why Samsung changed horses only after its final invalidity

4   contentions were served and discovery had closed, what Samsung has done is both impermissible and

5   highly prejudicial.  During discovery, Apple focused its examination of the Windows Mobile fact

6   witnesses subpoenaed by Samsung on Samsung's contentions regarding the "sync client."  By doing

7   so, Apple obtained evidence demonstrating that Windows Mobile is fundamentally different from

8   claim 20 because it █████████████████████████████████████████████████

9   █████████████████████████    Hall Tr. at 74:2-7; 75:2-17; 76:23-77 (D.I. 853, Ex. B-4).  Apple

10  would have examined the same witnesses regarding the failings in Samsung's new invalidity theory

11  had it been included in Samsung's contentions.  *See Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL

12  3155574, *5 (N.D. Cal. Aug., 2, 2012) (affirming decision to strike new invalidity position).

13  Accordingly, Samsung should be held to its contentions by striking these two new theories from the

14  opinions its expert may offer in this case.

15          ***Evolution***.  Samsung also introduced a new invalidity theory for the first time in its opening

16  expert report regarding another alleged prior art system called Evolution.  Specifically, as described

17  above, claim 20 of the '414 Patent requires three "software synchronization components," each

18  assigned to a different data class, and at least one of those components has to provide a thread.  For

19  the Evolution "system," one of the data classes identified by Samsung is the calendar data class.  For

20  the required "synchronization software component" that handles the calendar data class, Samsung for

21  the first time through Dr. Chase's opening report points to three elements of the Evolution system he

22  calls the (1) Exchange Connector process, (2) EDataCal object and (3) Exchange Calendar backend

23  as the alleged "software synchronization components" configured to synchronize the calendar data

24  class (Chase Rep., ¶ 300 and Section II of Exhibit 1 thereto (Ex. 1).

25          Like with Windows Mobile, none of the three components Dr. Chase now relies upon as the

26  synchronization software component for the calendar data class was disclosed anywhere within the

27  hundreds of pages of Evolution invalidity contentions Samsung amended during discovery.  Instead,

28  Samsung's contentions specifically pointed to something called the "libecal" and "calendar conduit"

Gibson, Dunn &
Crutcher LLP

APPLE'S MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        5        CASE NO. 12-CV-630-LHK (PSG)

1  as what it contended to satisfy the "synchronization software components" that are "configured to

2  synchronize local calendar data (second data class)."  Samsung's Amended Invalidity Chart D-1 at

3  105-106 (Ex. 20).

4         No good cause exists for Samsung to switch its theories in its expert report.  When Samsung

5  asked, in an interrogatory, for Apple's position regarding whether Evolution anticipated claim 20,

6  Apple clearly informed Samsung that its contentions "failed to meet its burden in demonstrating how

7  Evolution discloses a synchronization software component" and that "merely point[ing] to certain

8  software files" (*e.g.*, libecal and calendar conduit) was insufficient to do so.  Apple's First Supp.

9  Response to Samsung's Third Interrogatories at 91 (Ex. 13).  But Samsung never corrected its

10  contentions, nor identified any other elements in Evolution as being an alleged software

11  synchronization component for the calendar data class.  Samsung's omission has prejudiced Apple,

12  which subsequently took discovery of Evolution witnesses, but was unable to focus its examination

13  or its analysis on the particular components Samsung's expert now relies on because those

14  components were never identified in Samsung's contentions.  Moreover, Samsung had ample time to

15  develop its new theories, as Samsung obtained the Evolution source code early in discovery and

16  discussed it at length in its invalidity contentions.  Samsung's Fourth Amended Invalidity

17  Contentions, Ex. D-1 at 1 (Ex. 41).  Samsung can point to no new discovery or change in

18  circumstances that would warrant the identification of three entirely different components as the

19  "software synchronization components" for the calendar data class.  Accordingly, Samsung's expert

20  should not now be permitted to testify at trial regarding his theory that any of these newly-identified

21  components disclose the "software synchronization component" limitations of claim 20.

22         ***iSync***.  Samsung further introduced a new invalidity theories in its opening expert report of

23  Dr. Chase related to Apple's own iSync system.  Specifically, for the first time in the invalidity

24  report, Samsung alleges through Dr. Chase's opening report that iSync's bookmarks are a data class

25  that is synchronized.  Dr. Chase states that iSync is configured to synchronize "bookmarks" using a

26  component Samsung refers to as the ███████████ and that bookmarks constitute one of the "other

27  corresponding data classes" required by claim 20.  *See* Chase Rep., ¶¶ 383-384 (Ex. 1).  That theory

28  was never disclosed during discovery.

There is no mention of bookmarks or the ██████████ nywhere within the hundreds of pages of iSync invalidity contentions Samsung amended during discovery.  Samsung contended that the iSync software invalidated claim 20 (Samsung's Fourth Amended Invalidity Contentions, Ex. D-10 at 115-120 (Ex. 28) (discussion of alleged classes of data other than bookmarks) and 156 (for claim 20, referring to the description in claim 10 of the invalidity chart)).  At no time during fact discovery did Samsung allege that iSync provided a software synchronization component that is specially configured for the "bookmark" data class.

There is no good cause for Samsung to present this new invalidity theory through its expert now.  As early as January 2013, Samsung knew that iSync allowed synchronization of bookmarks used by Safari—having extensively questioned the '414 Patent inventor, Gordon Freedman, about this subject in his deposition.  Freedman Dep., 37:22-38:6; 44:10-15 (Ex. 15).  Nevertheless, when Samsung later amended its iSync invalidity contentions in April, it offered no contention whatsoever regarding the synchronization of bookmark data.  Having failed to identify this new invalidity contention when it had both the opportunity and requisite information to do so during fact discovery, Samsung should be precluded from presenting testimony in reliance on this theory first disclosed in an expert report.

### b.      The Jeffay Opening Report regarding the '647 Patent

Samsung's expert, Dr. Jeffay, asserts that the '647 Patent is invalid under new invalidity theories based on the Sidekick Manual, the MhonArc system/Mosaic system and his own alleged prior work.  Those theories were not disclosed by Samsung during fact discovery as part of its invalidity contentions.   Rather, they were disclosed for the first time in the opening expert report of Dr. Jeffay.  Expert Report Of Dr. Kevin Jeffay Concerning Invalidity Of U.S. Patent No. 5,946,647 ("Jeffay Rep.").  As Samsung did with Dr. Chase on the '414 Patent, Samsung's expert is attempting to cure clear deficiencies in Samsung's invalidity contentions by adding new theories for the first time in his expert report.  Samsung is not permitted to add new invalidity theories after fact discovery without good cause and it has no such good cause here.

*Sidekick*.  For the first time in Dr. Jeffay's expert report, Samsung introduced new invalidity theories based on a document called the "Sidekick Handbook."  Namely, Samsung now contends that

(1) the Sidekick Handbook anticipates claims 6 and 9 of the '647 Patent as a printed publication and (2) that the Sidekick Handbook publication anticipates and/or renders other claims obvious by itself under anticipation and obviousness theories.  *See, e.g.*, Jeffay Rep., ¶¶ 349-374, 690-703 and Exhibit 2 thereto (Ex. 4).

Dr. Jeffay's invalidity theories differ from those presented by Samsung during discovery. During discovery, Samsung was focused on a product and associated software that was sold in various versions under the name Sidekick.  Throughout its invalidity contentions, Samsung contended that claims were invalid based on the Sidekick "system" allegedly being on sale, publicly known and/or in public use.  *See* Samsung's Fourth Amended Invalidity Contentions, Ex. B-3 at 28-29, 31-33 (Ex. 26).  It never once indicated that it believed the Sidekick Handbook was a printed publication that itself was sufficient to anticipate or render obvious any of the asserted claims. Indeed, for claims 6 and 9, Samsung never even mentioned the Sidekick Handbook.  And for the other asserted claims, at most Samsung's invalidity contentions merely mentioned the Handbook as a piece of evidence being used to "describe[] the operation of the Sidekick software program."

Samsung has no good cause for modifying its invalidity contentions to add a new printed publication theory of invalidity based on the Sidekick.  It clearly was aware of the Sidekick Handbook.  Yet, with discovery over, Apple has no mechanism to take any additional discovery related to the Sidekick Handbook and whether it truly qualifies as a printed publication.  The prejudice here is clear and Samsung should not be permitted to refer to or rely on these new theories.

***MhonArc system/Mosaic system***.  Dr. Jeffay introduces another new invalidity theory for the first time in his invalidity report based on what he calls the "MHonArc system/Mosaic system." Specifically, Samsung now contends that there was a single solitary system it calls "MHonArc system/Mosaic system" on which it bases a new anticipation argument.  *See, e.g.*, Jeffay Rep., ¶¶ 375-441, 717-732 and Exhibit 4 thereto (Ex. 4).  Yet, Samsung never contended in its invalidity contentions that the MHonArc and Mosaic were part of the same single system.  Instead, during fact discovery, Samsung's invalidity contentions assert that (1) the "Mosaic System" alone anticipates the asserted claims under 35 U.S.C. § 102 and (2) that the "Mosaic System" renders the claims obvious under § 103 "alone and/or in combination with one or more of the following references that describe

1   the MHonArc System."  Samsung's Fourth Amended Invalidity Contentions, Ex. B-1 at 1-2 (Ex. 25).

2   Indeed, by arguing that it would have been obvious to modify the Mosaic System to combine it with

3   the MHonArc System, Samsung recognized that those two systems are distinct – not a single solidary

4   anticipatory system.

5         Again, Samsung has no excuse as to why it did not include this theory in its original invalidity

6   contentions or any of its numerous supplements.  Samsung obtained discovery about the MHonArc

7   program from its alleged author, Earl Hood (who was represented by Samsung's counsel), and then

8   amended its invalidity contentions to include information it obtained from Mr. Hood.  *See* Samsung's

9   Fourth Amended Invalidity Contentions, Ex. B-1 at 1-2 (Ex. 25).  Yet Samsung still did not assert

10  that Mosaic and MHonArc were part of the same system.  *Id.*  Specifically, on May 21, 2012,

11  Samsung amended its invalidity contentions to identify Mr. Hood as having relevant information on

12  the Mosaic system, yet did not assert that the "Mosaic System/MHonArc System" is a single

13  invalidating "system."  Nor did it attempt to do so the two additional times it amended its

14  contentions.  As a result, these new theories introduced late without justification should be stricken.

15        ***Jeffay Alleged Prior Art***.  Dr. Jeffay does not stop with adding new invalidity theories for

16  Sidekick and MHonarc/Mosaic.  Indeed, Dr. Jeffay provides several pages of description of various

17  examples of systems that Dr. Jeffay contends to have personally written or been aware of prior to the

18  filing date of the '647 Patent ("collectively "Jeffay Alleged Prior Art").  For example, Dr. Jeffay

19  purports to describe "programs [he wrote] to automate [his] processing of email using the freely

20  available MH ("Message Handling") email software from the Rand Corporation, and standard Unix

21  tools" as an "example of detecting structures and automatically performing actions on detected

22  structures in email disclosed in the '647 patent."  Jeffay Rep., ¶¶ 175-182 (Ex. 4).  Dr. Jeffay also

23  discusses an alleged "simple system [he] built to automate processing of USENET messages posted

24  to news groups" as a purported "second example of detecting structures in documents and

25  automatically performing processing on the detected structures."  *Id.* ¶¶ 183-187.  Finally, Dr. Jeffay

26  describes a "demonstration" he anticipates performing at trial "illustrating how well-known, off-the-

27  shelf tools from the 1980s, including at least the Unix tools csh, sed, awk, grep, tee, more, cat, and vi,

28  [none of which were properly disclosed in Samsung's Invalidity Contentions] could be used to create

Gibson, Dunn &
Crutcher LLP

APPLE'S MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE          9          CASE NO. 12-CV-630-LHK (PSG)

a system for detecting structures in documents, and performing actions on the detected structures." *Id.* ¶¶ 204-209.  Dr. Jeffay even purports to include source code he wrote this year specifically for his report.  *Id.*  None of these examples were ever disclosed by Samsung in its invalidity contentions.

These so-called "examples" disregard this Court's requirement to disclose invalidity theories during discovery.  Had Samsung wished to assert these so-called "systems" in its invalidity case, it should have produced evidence of them during discovery, disclosed them in its invalidity contentions and properly charted where each claim element was allegedly disclosed.  It did not do so (likely because it has no actual evidence for any of these "examples"), and cannot do so now under the guise of the "state of the art" with uncorroborated and conclusory statements by its expert.

\*            \*            \*

Dr. Jeffay's attempts to cure Samsung's invalidity deficiencies by introducing new invalidity theories should be stricken.  Samsung has no excuse for its failure to timely disclose these theories in its invalidity contentions.

### 2.   The Court Should Strike Invalidity Theories Based on Improper Demonstration Systems

#### a.   The WAIS and AppleSearch "demonstration systems" in the Rinard Opening Report regarding the '959 Patent

Apple moves to strike Dr. Rinard's reliance on his alleged WAIS and AppleSearch demonstration systems on two grounds:  (1) those demonstration systems were not produced during discovery and (2) Dr. Rinard's reliance on those systems is improper.[5]

The Court should strike the Improper Rinard Demonstration Materials from Dr. Rinard's report because they were not produced during discovery and Samsung never moved to amend its Invalidity Contentions to indicate its intention to rely on these demonstrations to prove invalidity. While two of Samsung's invalidity contentions are based on the alleged WAIS and AppleSearch

---

[5]  Specifically, the proffered testimony related to those demonstrations should be stricken from the Expert Report of Martin Rinard, Ph.D. Regarding the Validity of Claims 24 and 25 of U.S. Patent No. 6,847,959 ("Rinard Rep."), including paragraphs ¶¶ 479-491, Video Exhibits 1-11, 14-20 (video demonstrations created by Dr. Rinard) and discussion of those demonstrations contained in Rinard Report Exh. 1 and 9, including Exhibit 1 thereto (pages 2, 13, 16, 18-21, 35-42, 45, 50-55, 61-62, 68, 72-75, 89, 101-104), and Exhibit 9 thereto (pages 1, 22, 39-40, 49, 57, 60, and 83-84) ("Improper Rinard Demonstration Materials") (Exs. 6 and 10).

systems [*see* Samsung's Invalidity Contentions, Ex. C-9 (Ex. 20) (alleging anticipation by the "WAIS system"); Samsung's Fourth Amended Invalidity Contentions, Ex. C-21 (Ex. 27) (alleging anticipation by the "AppleSearch system")[6]; D.I. 658], none of Samsung's invalidity contentions ever relied on or even mentioned the demonstration systems produced by Samsung as part of Dr. Rinard's opening report.  Indeed, on June 27, 2013 Samsung sent a letter inviting Apple to inspect "Prior Art Demo Installations" related to freeWAIS-sf and AppleSearch (seemingly related to its WAIS and AppleSearch invalidity theories).  *See* June 27, 2013 Email from Amar Thakur (Ex. 39).  However, Dr. Rinard's Opening Report cites to and relies on an entirely different set of WAIS and AppleSearch demonstration systems — including eighteen videos of someone allegedly using those systems — that are not the ones Samsung offered for inspection and called the "Prior Art Demo Installations." This was only discovered when Apple requested to inspect these new WAIS and AppleSearch demonstration systems and Apple was informed that the "Prior Art Demo Installations" were different from the ones in Dr. Rinard's report.  *See* August 30, 2013 Email From Michael Fazio (Ex. 40).  Samsung has no justification for springing these systems and videos on Apple for the first time during expert discovery.

Second, as discussed in detail in Apple's Motion to Exclude Certain Unreliable and Impermissible Expert Testimony (D.I. 806, Ex. 3 at 23-24), the Rinard Opening Report attempts to rely on "systems" and "demonstrations" in an improper manner.  Specifically, Dr. Rinard built systems in 2013 that he claims to represent what someone in 2000 *might* have been able to construct. *Id.*  As described in Apple's motion these systems are highly misleading and not prior art.  Reliance on the Improper Rinard Demonstration Materials should be stricken from Dr. Rinard's Opening and Rebuttal Reports.[7]

### b.     The Evolution and Windows Mobile "demonstration systems" in the Chase Opening Report regarding the '414 Patent

Similarly, Dr. Chase created demonstration videos of systems that he contends to be prior art

---

[6]  Before this amendment Samsung's AppleSearch theory was part of its WAIS theory.  *See* Invalidity Contentions at Ex. C-9 (Ex. 20).

[7]  Dr. Rinard also improperly included invalidity discussions in his rebuttal report that should be stricken because they are untimely and not "rebuttal" material as discussed below in Section III.A.3.c.

to the '414 Patent.  *See, e.g.,* Chase Rep., ¶¶228-239, 290, 295, 297, 301, 330, 387, 422, 516, 529, 550, 560, 577, 596, Video Exhibits 1-15, and Exhibit 1 thereto (pages 1, 3, 9, and 17-19) (Ex. 1 and 9).  These systems too should be stricken because they were not produced during discovery and because Dr. Chase's reliance on them is improper.  Dr. Chase created these systems in 2013 with components he claims to be prior art versions of Evolution and Windows Mobile with ActiveSync.[8] *Id.*  As with the Improper Rinard Demonstrative Materials, Samsung did not amend its invalidity contentions to cite to the Evolution and Windows Mobile with ActiveSync demonstrations upon which Dr. Chase now relies.  Indeed, the demonstration systems used by Dr. Chase were never even made available for inspection during fact discovery in this case.

Dr. Chase, in his report, demonstrates how his 2013-created systems might have worked during the prior art time period by creating emails, calendar entries and contacts and videotaping what he claims to be the behavior of the Evolution and Windows Mobile with ActiveSync.  *Id.*  Namely, he created video demonstrations of the Evolution and Windows Media with ActiveSync "systems."  *Id.*  Systems created in 2013 are not prior art.  *See,* D.I. 806, Ex. 3 at 23-24.  Yet, if Dr. Chase is able to present these demonstration systems to the jury, there is a real chance the jury could think they are prior art.  For all of these reasons, because the "demonstration" systems Dr. Chase created are not prior art, not disclosed in Samsung's invalidity contentions and were not produced before the close of discovery, they should be stricken from Dr. Chase's report.

### 3. The Court Should Strike Invalidity Theories in Samsung's Experts' Rebuttal Reports That Were Not Timely Disclosed in Samsung's Experts' Opening Reports

Samsung included invalidity opinions in its rebuttal reports – testimony that was supposed to be limited to rebutting infringement contentions.  The testimony related to invalidity in Samsung's rebuttal reports should be stricken.  The Court required that any invalidity theory Samsung intended to present at trial should be included in its opening expert reports.  D.I. 160 at 2.

Specifically, two of Samsung's experts offered new indefiniteness arguments for the first time

---

[8] Dr. Chase also created videos based on the iTunes system.  Samsung dropped reliance on the iTunes system as prior art and thus, those videos should be stricken to preclude their use at trial.  D.I. 793.

Gibson, Dunn & Crutcher LLP

APPLE'S MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        12        CASE NO. 12-CV-630-LHK (PSG)

in rebuttal reports.  In two other rebuttal reports, Samsung rewrote portions of its opening invalidity reports and in so doing introduced new theories and characterizations of the prior art that should have been disclosed, if Samsung intended to rely on them, in opening expert reports.  All of those opinions are simply too late and must be stricken.

### a.    The Jeffay Rebuttal Report regarding the '647 Patent

In his rebuttal report, Dr. Jeffay for the first time asserts a new theory that claim 1 of the '647 Patent is indefinite as a "mixed apparatus and method claim."  *See* Rebuttal Expert Report Of Dr. Kevin Jeffay Concerning Noninfringement Of U.S. Patent No. 5,946,647 ("Jeffay Reb. Rep."), ¶¶ 480-483 (Ex. 5).  If Dr. Jeffay wanted to offer an indefiniteness opinion, it should have been included in its opening expert report on invalidity.  He did not so do.  And, Samsung cannot claim that it was not aware of that issue.  Samsung asserted this same "mixed apparatus and method claim" theory for claims in two other asserted patents in its invalidity contentions (the '172 and '760 Patents).  Yet, despite indefiniteness being a question of law for this Court to decide, Samsung never contended that claim 1 of the '647 Patent was indefinite during the preliminary injunction phase of this case, during claim construction, or during its invalidity contentions.  In comparison, Samsung has no excuse for its failure to timely disclose this theory and therefore, it should be stricken.

### b.    The Wigdor Rebuttal Report regarding the '172 Patent

Similarly, for the '172 Patent, Samsung added an invalidity theory asserting that claim 18 of the '172 Patent is indefinite as a hybrid apparatus/method claim in its rebuttal expert report.  Rebuttal Expert Report Of Dr. Daniel Wigdor Concerning Invalidity Of U.S. Patent No. 8,074,172 ("Wigdor Reb. Rep."), ¶¶ 177-79 (Ex. 8).  Dr. Wigdor could have, but did not, offer that opinion in his opening expert report on invalidity.  As a result, Apple's expert did not have an opportunity to address the indefiniteness point in his rebuttal report.  Samsung likely added the opinion only in its rebuttal report to preclude Apple from addressing it because it knows it is wrong.  Indeed, this Court has already rejected that very argument.

Specifically, in response to Apple's motion for preliminary injunction on the '172 Patent last year, Samsung contended that claim 18 was indefinite as a hybrid apparatus/method claim.  D.I. 114, Ex. 1 at 19-20.  The Court soundly rejected that argument.  D.I. 221 at 61-63 (order denying

preliminary injunction) ("Claims 18 and 27 are not indefinite hybrid claims.").  Despite this ruling,

Samsung continued to maintain that claim 18 is an indefinite hybrid claim in its invalidity

contentions.  Samsung's Invalidity Contentions at 128-129 (Ex. 19).  When the time came for

Samsung's expert on the '172 Patent, Dr. Wigdor, to detail every invalidity theory on which he would

offer testimony, Dr. Wigdor's opening report did not even contain a hint of this argument.  Allowing

Samsung to add such a theory now in a way that precludes Apple from addressing it is improper and

therefore, that theory should be stricken.

### c.       The Rinard Rebuttal Report regarding the '959 Patent

Dr. Rinard's "rebuttal" report contains 158 paragraphs, spanning sixty pages of the report,

that purport to explain how the prior art discloses the elements of asserted claims 24 and 25 based on

Samsung's theory that it "practices the prior art."  *See* Rebuttal Expert Report of Martin Rinard,

Ph.D. Regarding Noninfringement of Claims 24 and 25 of U.S. Patent No. 6,847,959 "Rinard Reb.

Rep."), ¶¶ 342-500 (Ex. 7).  This discussion is divided into five sections specifically detailing Dr.

Rinard's invalidity theories for which Samsung has the burden and therefore should have appeared in

his opening report.  In the first section, Dr. Rinard presents an "Overview" of how the prior art

allegedly meets the various claim elements of claims 24 and 25 of the '959 Patent.  *Id.*, ¶¶ 342-360.

The second, third and fourth sections discuss how certain prior art meets the "heuristic" limitation of

claim 24.  *Id.*, ¶¶ 361-429.  The last is a section called "To the Extent 'Heuristics' Requires 'Modules

that Implement the Heuristic on the Local Device,' The Identified Prior Art Still Satisfies The

'Heuristics' Limitation."  *Id.,* ¶¶ 430-500.

While couched as "practicing the prior art," these arguments are actually cryptic invalidity

theories, then they should have been included in Dr. Rinard's opening report.  Otherwise, its section

is legally flawed and should be stricken for that reason.  The Federal Circuit has held in no uncertain

terms that "practicing the prior art" is not a proper non-infringement defense.  *See Zenith Electronics

Corp. v. PDI Communications Systems, Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008).  Therefore, this

section has no place in a non-infringement rebuttal report.

This lengthy explanation of the prior art in the "rebuttal report" is plainly an attempt to cure

deficiencies in the invalidity positions Dr. Rinard included in his opening report.  For example, Dr.

Rinard relies on new references not cited in his opening report. *See, e.g.,* Rinard Reb. Rep. (Ex. 7), ¶ 370 (discussing a new Lycos document), ¶ 379 (discussing a document by Zobel and Moffat), ¶ 434 (discussing new documents by Parnas and Liskov), ¶ 435 (discussing new documents by Liskov and Zilles), ¶ 439 (discussing new documents by Liskov and Wirth), ¶ 440 (discussing new documents by Dahl and certain computer languages). Further, when discussing the "AppleSearch system" in the rebuttal report, Dr. Rinard for the first time identifies the "WAIS Gateway" as allegedly being a "heuristic that searches the Internet," yet Dr. Rinard's opening report never identifies that instrumentality as meeting that required element. Rinard Reb. Rep., ¶¶ 450-459 (Ex. 7). In another example, Dr. Rinard further attempts to cure deficiencies in his invalidity analysis related to the Evans reference by pointing to certain alleged "modules" in Evans that he did not identify in his opening expert report. *Id.*, ¶¶ 460-465. Dr. Rinard should not be permitted to use his rebuttal report to craft new invalidity arguments under the guise of an argument that Samsung practices the prior art. Any invalidity opinions should have been included in his opening report.

### d. The Chase Rebuttal Report regarding the '414 Patent

Similarly, Samsung's '414 Patent expert issued a "rebuttal" report, that includes 43 paragraphs, spanning twenty pages, of a discussion of how the prior art allegedly teaches all of the elements of claim 20 of the '414 Patent. *See* Chase Reb. Rep., ¶¶ 212-247 (Ex. 2). As with Dr. Rinard's report, all of Samsung's invalidity opinions on the '414 Patent should have been offered in its opening report.

Again recognizing the impropriety of including an invalidity analysis in a rebuttal report on non-infringement, Samsung attempts to justify this new analysis by characterizing the disclosure as an explanation of how Apple's expert is "accusing the prior art" of infringement. That characterization is nonsense. Dr. Snoeren accuses Samsung's accused products of infringement – he does not mention the prior art. Even if that were true, practicing the prior art is not a non-infringement defense – it is an invalidity defense. *See Zenith Electronics Corp.*, 522 F.3d at 1363. Therefore, there is no justification for Dr. Chase getting a second bite at the apple to present his invalidity positions in a rebuttal report when Samsung bear's the burden of proof on that issue.

**B.    The Court Should Strike Samsung's New Non-Infringement Theory in the Greenberg Rebuttal Report regarding the '721 Patent**

For the first time in an expert report, Samsung contends that it does not infringe the '721 Patent because Apple did not identify the source code file names that perform the functions that the user can plainly see and experience on the accused Samsung phones.  Rebuttal Expert Report of Saul Greenberg, Ph.D., regarding Noninfringement of the Asserted Claim 8 of U.S. Patent No. 8,046,721 ("Greenberg Reb. Rep."), ¶¶172-176 (Ex. 3).  Yet, during fact discovery, Samsung never identified this theory of non-infringement.  Apple issued an interrogatory to require identification of all bases why the accused products did not infringe the asserted claims.  Samsung's Further Supplemental Responses to Apple's First, Third and Tenth Sets of Interrogatories at 59 (Interrogatory No. 24) (Ex. 36).  For the '721 Patent, Samsung identified several non-infringement bases and even supplemented its non-infringement contentions two times.  *Id.* at 67-68, 97-100, 137-141.  Yet, Samsung never alleged that Apple's Infringement Contentions were deficient because Apple failed to identify source code in its infringement analyses.  *Id.*

There is no good cause for Samsung to add this new non-infringement theory for the first time in expert discovery.  Indeed, in this case, Samsung has had multiple opportunities to argue that Apple was required to identify source code to prove infringement.  Apple moved for a preliminary injunction based on the Samsung Galaxy Nexus' infringement of the '721 Patent.  D.I. 10.  Facing a possible preliminary injunction that could have foreclosed the sale of one of its flagship products, Samsung responded with a wide variety of defenses, including allegations that Samsung did not infringe the '721 Patent claims.  D.I. 114, Ex. 1 at 16 (Samsung's opposition to the preliminary injunction alleging that it did not infringe on two grounds, neither of which related to Apple's alleged failure to identify source code); D.I. 130, Ex. 1 at 22-31 (Declaration of Samsung's Expert Dr. Cohen alleging that Samsung did not infringe based on four grounds, none of which related to Apple's alleged failure to identify source code).  Thus, despite the extremely high stakes at issue in the preliminary injunction, Samsung never alleged that proof of infringement of claim 8 would require identification of specific source code files.  Indeed, Judge Koh's Preliminary Injunction Order found that Apple was likely to prove infringement of the '721 Patent by the Galaxy Nexus and never once

1   indicated that Apple had failed to meet its burden on the claims in that patent because it did not

2   identify source code.  D.I. 114, Ex. 1 at 16; D.I. 130, Ex. 1 at 22-31.

3          Had Samsung wanted to raise a non-infringement defense based on an alleged source code

4   proof requirement, the time to do so has long since passed.  Indeed, Samsung is in possession of its

5   own products and source code.  Thus, had Samsung wanted to raise this issue earlier, it was in

6   possession of all of the information it needed to present this argument.  And, had it been done earlier,

7   Apple could have taken additional discovery, including reviewing and identifying source code

8   citations from the Google and Samsung source code for the accused features.  Because Samsung

9   raised this defense too late, paragraphs 172-176 of Dr. Greenberg's rebuttal report should be stricken.

10  **C.     The Court Should Strike Samsung's New Non-Infringing Alternative Theory That Was
           Added In The Jeffay Rebuttal Report Regarding the '647 Patent Experts' Report But
11         Missing from Samsung's Interrogatory Responses**

12         In his rebuttal report, Dr. Jeffay describes a purported "design around" or non-infringing

13  alternative that was not disclosed in Samsung's interrogatory responses.  *See* Jeffay Reb. Rep., ¶¶

14  119, 124, 487, 492-493 (Ex. 5).  Specifically, in Dr. Jeffay's rebuttal report he purports to identify a

15  new "design around" for the analyzer server limitation mentioned by the court in the *Apple v.*

16  *Motorola* litigation; specifically, he alleges that Samsung could avoid infringement of the '647 Patent

17  by "creating copies of the code that performs structure detection and linking for each particular

18  program rather than by using a common-code module for all programs."  *Id.*  Yet, that alleged non-

19  infringing alternative was not disclosed to Apple during discovery despite Apple requesting Samsung

20  to disclose all non-infringing alternatives on which it intended to rely.  Apple's Interrogatory No. 29

21  asked Samsung to "explain in detail each design around and/or alleged alternative technology or

22  method that can be used as an alternative to the patented technology."  Samsung served an original

23  response and two supplemental responses to this interrogatory, identifying at least seven purported

24  non-infringing alternatives to the '647 Patent and this new theory was never disclosed.  *See*

25  Samsung's Supplemental Responses to Interrogatory No. 29, at 147-174 (Ex. 36).  Apple's expert,

26  Dr. Mowry, addressed each of these alleged alternatives in his opening report but was not able to

27  respond to this new alleged non-infringing alternative, to Apple's detriment.  *See* Initial Expert

28  Report Of Dr. Todd C. Mowry Regarding Infringement Of U.S. Patent No. 5,946,647 ("Mowry

Gibson, Dunn &
Crutcher LLP

APPLE'S MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE      17      CASE NO. 12-CV-630-LHK (PSG)

Rep."), ¶¶ 269-288 (Ex. 11).  Samsung has no basis for its belated assertion of this new alleged

design around.  The Motorola court issued its order in June 2012.  Samsung responded to Apple's

Interrogatory No. 29 three separate times, including July 15, 2013, over a year after the Motorola

court's order.  But Samsung never mentioned this alternative in any of its responses.  Samsung

cannot now, in expert discovery, assert new arguments it withheld from its interrogatory responses.

**D.    The Court Should Strike Samsung's Experts' Reliance In the Rinard Rebuttal Report Regarding The '959 Patent On Google Source Code That Neither Samsung Nor Google Produced to Apple During Discovery**

Dr. Rinard's Rebuttal Report relies on a number of versions of the Google Quick Search Box

(also called the Google Search Application, or GSA) that have never been produced to Apple, not by

Samsung and not by Google.  *See* Rinard Reb. Rep., ¶¶196-200, 301-307, 338 (Ex. 7).  All such

testimony should be stricken.

Apple alleges that a number of versions of the Quick Search Box functionality on Samsung

products infringes claims 24 and 25 of the '959 Patent.  Samsung incorporates versions of the Quick

Search Box/Google Search Application into its products that it receives from Google.  As of the last

day of fact discovery, the most recent version of the Google Quick Search Box source code that

Google produced is version 2.3.11.  *See* Expert Report Of Dr. Alex C. Snoeren Concerning U.S.

Patent Nos. 6,847,959 And 7,761,414 ("Snoeren Rep."), at ¶¶ 131-133 (Ex. 12).[9]

Dr. Rinard's Rebuttal Report, however, offers opinions directed at entirely different and more

recent versions of the Google Quick Search Box/GSA that Google has not produced source code for.

For example, in paragraphs 196-202 and 338, Dr. Rinard discusses ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████  Rinard Reb. Rep., ¶¶ 196-200, 338 (Ex. 7).  This new opinion is

apparently intended to enable Samsung to offer a non-infringement opinion as to a non-produced

version of the Quick Search Box.  Rinard Reb. Rep., ¶¶ 196-200 (Ex. 7).  Yet, Google never

produced the source code for that version of the Quick Search Box and Samsung never indicated an

---

[9]  Unfortunately Apple cannot attach a copy of the printout it made from Google's source code computer listing the versions of the Google Quick Search Box produced by Google as that document, GOOG-NDCAL630-S-00004226, was intentionally withheld from production by Google and Samsung's counsel.  *See* June 10, 2013 Letter from Lindsay Cooper (Ex. 38).

intention to present a non-infringement argument based on newer versions of the source code.  Then, in paragraphs 301-307 and 322, Dr. Rinard offers an opinion regarding the acceptability of potential design changes; in support of which he cites to a document produced by Google ███████████ ██████████████████████████████████████████████████████████ ██████████████████  Rinard Reb. Rep., ¶¶ 301-307 (Ex.7).   Moreover, Dr. Rinard opines on this alleged design-around by referring to the same unproduced Quick Search Box version 2.7 from his earlier paragraphs.  *Id.* at 338.

It is improper and highly prejudicial to Apple for Dr. Rinard to rely on documents describing the operation of versions of the Quick Search Box that were not produced in discovery.  Without those versions on which Dr. Rinard relies, Apple was unable to seek further discovery from Google on these undisclosed versions, cross-examine Dr. Rinard or to test the functionality of those versions to understand whether they infringe or not.  Thus, Dr. Rinard's allegation that these later versions do not infringe or that they represent non-infringing alternatives cannot be properly tested and thus his testimony and reliance on those non-produced versions of the Quick Search Box and the document discussing them should be stricken.

**E.     The Court Should Strike Samsung's Experts' Reliance In The Rinard Rebuttal Report Regarding the '959 Patent On An Undefined and Undisclosed Set Of Google Source Code**

Sections of the Rinard Rebuttal Report are based on an analysis of source code found on a disk that was not provided to Apple and for which Dr. Rinard cannot identify its source.  Rinard Reb. Rep., ¶¶ 117-136, 141-169, 174-195, 222, 229, 231, 252-253, 254-257, 269-279 (Ex. 7).  At his deposition Dr. Rinard testified that his review and analysis of Google proprietary source code relied on a "disk attached to [his] computer."  Rinard Dep., 56:12-20 (Ex. 14).  When asked how he came to be in possession of Google proprietary source code on the disk, he testified that "someone handed me a box containing that disk."  *Id.* at 58:12-18.  When asked whether it was attorneys from Quinn Emanuel, Dr. Rinard did not know.  *Id.* at 56:24-57:12.  This mysterious box with a disk that showed up at Dr. Rinard's doorstep was never produced to Apple.  As such, Apple has not been provided the opportunity to evaluate what exactly Dr. Rinard has based his opinion on.  Moreover, Dr. Rinard has failed to provide the factual basis for his opinion required by the Federal Rules since he could

Gibson, Dunn & Crutcher LLP

APPLE'S MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        19        CASE NO. 12-CV-630-LHK (PSG)

identify the origin of the source code on which his analysis was based.  *See* Fed. R. Civ. P.

26(a)(2)(B)(ii).  These sections should therefore be stricken.

Throughout the course of this litigation Samsung and Google have operated in concert to deny Apple the ability to properly obtain the necessary discovery in this case.  In response to discovery requests and subpoenas from Apple requesting production of the Quick Search Box source code that operates on the accused phones, both Samsung and Google produced source code related to the Quick Search Box.  *See, e.g.,* Apple's First Set of Preliminary Injunction Requests For Production to Defendants; Apple's Second Set of Requests for Production to Defendants; Apple's April 5, 2012 and September 28, 2012  Subpoenas to Google (Exs. 29-32).  In response to this seemingly overlapping production, Apple served discovery seeking to determine which version of the produced Quick Search Box source code was actually used on the Samsung products.  *See* Apple's Sixth Set of Interrogatories to Samsung (No. 41) (served March 6, 2013) (Ex. 34).  Despite Apple's repeated attempts through discovery to obtain the relevant information, Samsung never confirmed whether or not the Quick Search Box source code produced by Samsung was the version used by the accused devices.  Indeed, on April 5, 2013 and, through multiple repeated supplements to Samsung's Response to Apple's Interrogatory No. 41, Samsung repeatedly pointed to ███████████████████████ ████████████████████████████████████████████████  *See* Samsung's Third Supplemental Objections And Responses To Apple's Sixth Set Of Interrogatories (No. 41) (served July 15, 2013) (Ex. 33).  However, just two weeks before the close of fact discovery, Samsung's 30(b)(6) witness ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████  *See* Park Dep., 148:17-149:5, 51:2-55:24 (Ex. 17).  Samsung's corporate representative further testified that Samsung had no access to Google's source code and therefore cannot be questioned on it. *See* Park Dep. at 148:17-149:5 (Ex. 17) ██████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

1   █████   On the very last day of discovery, Samsung finally responded to Apple's renewed attempt to

2   ascertain this information through an interrogatory and informed Apple definitively that ████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████   Samsung's Responses to Apple's Twelfth Set of

5   Interrogatories (Nos. 47-50) at 12-41 (Ex. 42).

6        Google, for its part, has fought Apple in discovery at every turn requiring two motions to

7   compel granted by the Court to produce source code and documents.  D.I. 135 (April 24, 2012 Apple

8   Motion to Compel Google Production); D.I. 164 (Order granting-in-part D.I. 135); D.I. 418 (March

9   26, 2013 Apple Motion to Compel Google Production); D.I. 501 (Order granting D.I. 418).  Google

10  has consistently maintained that it is just a third-party to this litigation and should be treated as such;

11  this despite being represented by the same counsel as Samsung.  *See* Dec. 3, 2012 Notice of

12  Appearance of Mr. Warren for Samsung (D.I. 310); May 5, 2012 Transcript of Proceedings Before J.

13  Grewal at 67 (Ex. 18) (In discovery dispute with Google, "COURT: …Your firm represents

14  Samsung, right? Therefore, you do represent Samsung, don't you?  MR. WARREN: I do not, your

15  honor.  THE COURT: So you're telling me under rules of professional responsibility and everything

16  else that applies here, you can represent Google but not Samsung, even though Quinn Emanuel

17  represents Samsung in this very same case? MR. WARREN: Yes, your honor.").   Following this

18  representation to the Court, Google argued that as an apparent third party to this case it was entitled

19  to impose an even more restrictive protective order regarding the use of its source code.  D.I. 151.

20        Yet, for purposes of expert reports, Samsung's expert, Dr. Rinard, was provided unfettered

21  access to Google source.  It is unclear if the code that was on this mysterious disk given to Samsung's

22  expert is the same or different than what was being made available for inspection for Apple's experts

23  under very strict access and printing restrictions by Google's counsel at Quinn Emanuel under the

24  Protective Order Google specifically requested this Court to enter in this case.  D.I. 154.  The

25  prejudice here is clear.  Dr. Rinard's unfettered access to the undisclosed and unproduced source code

26  made his task of seeking to criticize Dr. Snoeren's source code analysis much easier.  Apple has been

27  deprived of the same ability to easily respond or to even evaluate that Apple's expert and Dr. Rinard

28  were examining the same thing.  Accordingly, Apple moves to strike all analysis Dr. Rinard offered

Gibson, Dunn &
Crutcher LLP

APPLE'S MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        21        CASE NO. 12-CV-630-LHK (PSG)

based on the unproduced Google source code drive.

## IV.   CONCLUSION

For the foregoing reasons, this Court should strike the identified portions of Samsung's expert's reports.


Dated: November 5, 2013                                        GIBSON, DUNN & CRUTCHER LLP

                                                               By:   /s/      H. Mark Lyon
                                                                     **Attorney for Apple Inc.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document and its supporting documents were filed electronically in compliance with Civil Local Rule 5.1, and will be served upon all counsel of record for the parties who have consented to electronic service in accordance with Civil Local Rule 5.1 via the Court's ECF system.

Dated: November 5, 2013                     /s/   H. Mark Lyon

Gibson, Dunn &
Crutcher LLP

APPLE'S MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        CASE NO. 12-CV-630-LHK (PSG)