**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 5:12-cv-00630-LHK<br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S CORRECTED OPPOSITION TO SAMSUNG'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   December 12, 2013<br>Time:   1:30 p.m.<br>Place:   Courtroom 4, 5th Floor<br>Judge:   Hon. Lucy H. Koh |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Counterclaim-Defendant. | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

# TABLE OF CONTENTS

Page

MEMORANDUM AND POINTS AND AUTHORITIES ..............................................1

A.    Samsung's Jelly Bean Products Infringe the '647 Patent .......................1

    1.    The Functionality Apple Accuses of Infringement
       Demonstrates Selection of a Detected Structure ........................2

    2.    Samsung Did Not "Rely" on Prior Statements of Apple's
       Expert ...........................................................5

B.    Claims 11 and 20 of the '414 Patent Are Not Anticipated .....................7

    1.    The Only Theory in Samsung's Invalidity Contentions
       Fails as a Matter of Law; Samsung Should Not Be Allowed
       to Substitute a New One in Its Place........................8

    2.    Samsung's New Invalidity Theory Also Fails as a Matter of
       Law ..........................................................10

    3.    Windows Mobile Also Fails to Anticipate Other
       Requirements of Claim 20 .....................................15

    4.    Samsung's Motion Against Un-asserted Claim 11 Should
       Be Denied.....................................................15

C.    Claims 24 and 25 of the '959 Patent Are Not Indefinite.....................16

D.    Claim 13 of the '596 Patent Is Not Entitled to a Priority Date of
    November 9, 2004 .............................................21

    1.    The 11/9/04 Application Does Not Describe or Mention a
       "DDI" Field .................................................21

    2.    As Properly Construed, the "DDI Field" Lacks Written
       Description Support in the 11/9/04 Application ...............22

        a.    A "DDI Field" is a "Logical Identifier for Identifying
           a Logical Channel, a MAC-d Flow, and an RLC PDU
           Size" ...............................................22

        b.    The 11/9/04 Application Does Not Disclose a
           "Logical Identifier for Identifying a Logical Channel,
           a MAC-d Flow, and an RLC PDU Size" ..................25

CONCLUSION .................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Electronics Co., Ltd.,*
    695 F.3d 1370 (Fed. Cir. 2012)..................................................................18

*Apple v. Motorola,*
    No. 11-CV-08540, Dkt. 526 (N.D. Ill. January 17, 2012) ...........................18

*Apple, Inc. v. Samsung Elecs. Co.,*
    2012 WL 3155574 (N.D. Cal. Aug., 2, 2012)..........................................9, 10

*Aristocrat Techs. v. Int'l Game Tech.,*
    709 F.3d 1348 (Fed. Cir. 2013)..................................................................13

*Baran v. Med. Device Techs., Inc.,*
    616 F.3d 1309 (Fed. Cir. 2010)..................................................................24

*Datamize, LLC v. Plumtree Software, Inc.,*
    417 F.3d 1342 (Fed. Cir. 2005)..................................................................19

*Default Proof Credit Card Sys. v. Home Depot,*
    412 F.3d 1291 (Fed. Cir. 2005)..................................................................14

*Edward Lifesciences LLC v. Cook Inc.,*
    582 F.3d 1322 (Fed. Cir. 2009)..................................................................24

*Ernie Ball, Inc. v. Earvana, LLC,*
    502 Fed. Appx. 971 (Fed. Cir. 2013) .........................................................19

*Finisar Corp. v. DirecTV Group,*
    523 F.3d 1323 (Fed. Cir. 2008)..................................................................10

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.,*
    488 F.3d 982 (Fed. Cir. 2007)....................................................................23

*Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.,*
    540 F.3d 1337 (Fed. Cir. 2008)..................................................................14

*ICU Med., Inc. v. Alaris Med. Sys., Inc.,*
    558 F.3d 1368 (Fed. Cir. 2009)..................................................................23

*In the Matter of Certain Electronic Digital Media Devices and Components
    Thereof,* Inv. No. 337-TA-796, Order No. 16, 2012 WL 754088
    (U.S.I.T.C. Mar. 6, 2012) ...........................................................................18

*Kyocera Wireless v. Int'l Trade Com'n,*
    545 F.3d 1340 (Fed. Cir. 2008)..................................................................16

*Northern Telecom v. Samsung Elecs.,*
    1996 WL 532122 (N.D. Cal. Sept. 16, 1996) ........................................7, 15

*Oracle Am., Inc. v. Google, Inc.,*
    2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ...........................................10

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,*
    182 F.3d 1298 (Fed. Cir. 1999)....................................................................5

*PowerOasis, Inc. v. T-Mobile USA, Inc.,*
    522 F.3d 1299 (Fed. Cir. 2008).......................................................21, 22, 25

*Rexnord Corp. v. Laitram Corp.,*
    274 F.3d 1336 (Fed. Cir. 2001)..................................................................10

*Rite-Hite v. Kelley*,
    56 F.3d 1538 (Fed. Cir. 1995) ................................................................... 15

*Sinorgchem Co. v. Int'l Trade Comm'n*,
    511 F.3d 1132 (Fed. Cir. 2007) .......................................................... 23, 24

*Solomon v. Kimberly-Clark Corp.*,
    216 F.3d 1372 (Fed. Cir. 2000) ................................................................. 21

*Source Search Technologies, LLC v. LendingTree, LLC*,
    588 F.3d 1063 (Fed. Cir. 2009) ................................................................. 19

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) .......................................................... 22, 25

*Thorner v. Sony Comp. Entertainment Am.*,
    699 F.3d 1362 (Fed. Cir. 2012) ................................................................. 12

*TypeRight v. Microsoft*,
    374 F.3d 1151 (Fed. Cir. 2004) ................................................................. 16

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009) ................................................................. 19

**Rules**

Fed. R. Civ. P. 56(f)(1) ....................................................................................... 7

**Other Authorities**

Merriam-Webster Dictionary, available at http://www.merriam-
    webster.com/dictionary/provide .............................................................. 11

## MEMORANDUM AND POINTS AND AUTHORITIES

Samsung's Motion for Summary Judgment (D.I. 805) ("Samsung MSJ") should be denied for the reasons discussed in detail below.

**A.     Samsung's Jelly Bean Products Infringe the '647 Patent**

The accused products with Jelly Bean clearly infringe the '647 Patent, and as a result Apple moved for summary judgment of infringement.  Samsung's MSJ further demonstrates that its Jelly Bean products infringe.  In fact, Samsung attempts to obtain a ruling of non-infringement by focusing on functionality Apple does not even accuse.  It does so because the functionality that Apple *actually* does accuse indisputably infringes the '647 Patent.

Samsung's motion rests on a single claim element—*i.e.,* whether Samsung's Jelly Bean products have a user interface that enables "selection of a detected structure."  The parties agree that an infringing system must enable a structure to be "detected," then "selected."  Thus, the issue for infringement is whether the Jelly Bean devices enable a structure that has been detected to be selected.  They clearly do: as explained below (and in Apple's motion for summary judgment), Samsung's products are enabled ████████████████████████████████ ████████████████████████

Specifically, when a user touches the screen on a structure (*e.g.*, a phone number), the system is enabled to ████████████████████████████████████ ███████████████████████████████████████ ████████████████████ the user can continue to press on that detected structure. Continuing to press (called a "long-press") on the detected the structure will then cause the device to select the detected structure and invoke specific, accused functionality—the user interface will display a menu of actions associated with that structure (*e.g.*, "Dial," "Add to contacts").  As a result, ████████████████████ the system enables the user to make a purposeful decision to access further functionality by selecting a detected structure through a long-press.  Apple's infringement allegations are based on the post-detection selection of a structure through a long-press; Samsung ignores that process entirely.

Instead of rebutting Apple's contentions, Samsung misdirects its argument to non-

accused functionality that occurs before the detection of a structure even takes place.  The whole

basis for Samsung's non-infringement defense is its claim that in the Jelly Bean products, a

structure is selected when a user first taps on it (before it has been detected), and thus the device

is not enabled to select a structure that has already been detected.  This is sophistry.  Samsung

tries to show that its products cannot select a detected structure simply by pointing to an instance

in which they do not.  Samsung has merely identified some non-accused *pre*-detection

functionality and claims it does not infringe—all while ignoring the functionality that *does*

infringe.  Samsung does not address, let alone rebut, Apple's contentions ███████████████

███████████████ that occurs when a user long-presses on a detected structure.

Put simply, ███████████████ the system enables the detected structure to be

selected through a long-press.  Samsung's arguments about what happens before detection prove

nothing about what happens after detection; in focusing on the non-accused event when the user

first touches the screen, Samsung ignores that a user's long-press is a distinct, purposeful act of

selection ███████████████  The user's post-detection long-press on a structure

is indisputably "selection of a detected structure," and, as a result, Samsung's Jelly Bean

products (like its other products) infringe the '647 Patent.[1]

### 1. The Functionality Apple Accuses of Infringement Demonstrates Selection of a Detected Structure

Samsung's non-infringement argument is based on a change in how its ███████████

███████████████████████████

███████████████████████████

███████                  ████████████

███████████████████████████

███████████████████████████

---

[1]  As Apple's summary judgment motion shows, all of Samsung's accused products meet all of
the elements of claim 1.  *See* Samsung MSJ at 4-10.  Unlike Apple's motion, Samsung's
motion addresses only one theory of infringement for one OS version of its products; it (1) does
not address the infringement based on the accused Messaging application, and (2) only
addresses literal infringement through the Browser application for the Jelly Bean products, and
(3) does not address Apple's infringement allegations under the doctrine of equivalents as to
the Browser application on Jelly Bean-based products.  Samsung's motion provides no basis to
find that any OS version of any product does not infringe the '647 Patent.
[2]  Citations refer to exhibits to Declaration of Joshua Furman ("Furman Decl.") filed herewith.

1

2

3

4    *Id.*, ¶¶ 187-191.  If the user taps near a detectable structure,

5    if the user taps near no structures, nothing will be detected.

6    Samsung argues that the user's initial touch is a "selection," and thus this so-called

7    "selection" occurs before "detection."[3]  But, Apple does not point to the user's initial touch as

8    the accused "selection."  The issue is not whether Samsung can point to some functionality that

9    *does not* infringe.  The issue is whether Apple can show functionality that *does* infringe.  Apple

10   has done that, but Samsung ignores Apple's actual allegations

11

12   As noted above, there is no dispute that

13

14

15   —that is, touching *and then holding down* on the detected structure long

16   enough to constitute a long-press, as opposed to a short tap.  The device is programmed (*i.e.,*

17   enabled) to perform actions when the detected structure is selected through the long-press.

18   In fact, when the user selects the detected structure through the long-press, the user

19   interface presents a menu of linked actions for the user to subsequently select.  This menu

20   satisfies another claim element, namely enabling selection of a "linked action."  A simple

21   touch or tap in the accused Jelly Bean Browser application will *not* bring up the accused menu

22   of candidate actions, contrary to Samsung's inaccurate description and figures.  *See* Samsung

23   MSJ at 2.  Instead, a mere tap on a structure will simply launch a default action (such as a

24   "dial" action on a phone number), but it will not provide a menu "enabling the selection of . . .

25   a linked action" as required by claim 1.  For this reason, too, Apple does not accuse a simple

26   ────────────────

27   [3]  Samsung argues that the mere act of touching the screen constitutes "selection" of a structure.
     Samsung MSJ at 2-3.  Apple disagrees, as does Samsung's own expert.  Jeffay Reb. Rep.,¶¶ 188-

28   189 (opining that "selection" of a structure requires the user action *and* the system performing
     additional steps after the user's touch to enable a user's selection of a detected structure).

1   touch action in the Jelly Bean Browser application of infringing.

2       Rather, the long-press is the act of "selection" Apple accuses, ███████████

3   ███████████   In the accused Jelly Bean products, the following sequence of events

4   occurs: ████████████████████████████████

5   ████████████████████████████████████████

6   ████████████████████████████████

7      In other words, ███████████████████████

8   ████████████████████████████████████████

9   ██████████████   Expert Report of Todd Mowry ("Mowry Rep."), ¶ 157-58,

10  250-51 (Ex. A-2).  As Samsung's expert explained, ██████████████████

11  ████████████████████████████████████████

12  ████████████████████████

13  Jeffay Reb. Rep., ¶ 175 (Ex. A-1).  This functionality is shown in the images below:

  

21  **User Long-Presses a Detected Structure,**          **Context Menu of Candidate Actions**
    **Highlighted in Blue**                               **Displayed**

22  The structure (highlighted in blue) has been detected, and the user is "selecting" that detected

23  structure through a long-press that continues after the detection has occurred.

24      Thus, contrary to Samsung's motion, Apple's argument does not simply turn on the fact

25  that "the user's finger will remain on the screen."  Samsung MSJ at 5.  Long-pressing on a

26  detected structure, as Apple accuses, is a distinct act of selection ████████████████

27  that invokes entirely different functionality than a mere touch or tap.  A simple hypothetical is

28  instructive.  There would be no dispute as to infringement if the action of selecting a detected

structure involved the following two steps: (1) detecting a structure when a user touched a structure on the screen, and (2) enabling the user to press a second time again to select the detected structure and launch the menu of linked actions.  This second touch—a deliberate operation by the user after the structure is detected— would indisputably be a "selection of a detected structure."  The same is true for the long-press in the Jelly Bean products.  The user touches the screen which allows the structure to be detected, and then continues to press (like a second press in the hypothetical) in order to select the detected structure and launch the menu of linked actions.

By virtue of incorporating the long-press—the functionality Apple actually accuses and Samsung ignores—the Jelly Bean products clearly do enable selection of detected structures. As this is the only claim element on which Samsung relies for non-infringement, Samsung's motion should be denied, and Apple's summary judgment motion should be granted.

### 2.    Samsung Did Not "Rely" on Prior Statements of Apple's Expert

Samsung also argues that it "should be able to rely" on statements made by Dr. Mowry during the preliminary injunction phase that claim 1 requires that the user be able to select a detected structure "from a set of detected structures."  *See* Samsung MSJ at 6-8. ██████████ ████████████████████████████████████████████████████ ██████████████████████████████ But no party asserts that the claims actually require a set of detected structures.  Samsung knows it infringes under the properly construed claims, and its motion simply relies on mischaracterizations of Dr. Mowry's prior statements to concoct a legally unsupported estoppel theory.

What the claims do or do not require is an issue of law for the Court.  The Court may consider expert testimony "to educate itself about the patent and the relevant technology," but the Court must construe the claims relying primarily on the intrinsic record.  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999) (quotation omitted).  The parties agree that the intrinsic record does not support construing the claims to require a "set of detected structures."  Samsung's products infringe the correctly construed claims.

Samsung argues that even though no party believes that the claims require a "set of

detected structures," the Court must nevertheless adopt this incorrect construction because Dr. Mowry included these words in his preliminary injunction declaration in distinguishing the prior art Sidekick system.  Samsung cites no law supporting its contrived estoppel theory, because there is none.  Nor did anyone "rely" on these statements.  The Court did not rely on them; rather, the Court agreed with Dr. Mowry that Sidekick does not anticipate for other reasons.  *See* Order Granting Preliminary Injunction (D.I. 221) ("PI Order") at 38 (finding Sidekick does not anticipate because it only discloses, at most, detecting a single type of structure (phone numbers) and performing a single action (dialing)).  Samsung also did not rely on these statements. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Samsung's imagined "reliance" on Dr. Mowry's prior statements does not support a non-infringement finding based on an incorrect claim construction position with which no party agrees.

Moreover, Dr. Mowry addressed these alleged inconsistencies in his validity report and in his deposition.  Dr. Mowry explained that the Sidekick system does not "enable[e] the selection of a detected structure" because the Sidekick system will only detect and highlight a single phone number selected by the *system*, not the user.  *See* Mowry Reply Decl., ¶¶ 139-141 (D.I. 177); *see also* Mowry Reb. Rep. ¶¶ 151-152 (Ex. A-3).  *Id.*  Unlike the '647 Patent, which requires that the system enable the *user* to select a detected structure, the Sidekick system itself makes the selection of the first number it recognizes.  *Id.*  It is in this context that Dr. Mowry stated in prior declaration during the preliminary injunction phase that a particular detected structure can be chosen from a "set of detected structures."  Mowry Reply Decl., ¶ 140 (D.I. 177).  Dr. Mowry made the point, as he did in his rebuttal report in distinguishing the Sidekick system, that "selection of a detected structure" requires that the user be able to select a particular structure from among the "set of structures" visible on the screen.  *See id.*, Mowry Reb. Rep., ¶ 151 (Ex. A-3).  If Samsung believes that Dr. Mowry's explanation is insufficient,

1   it is free to cross-examine Dr. Mowry at trial on any perceived inconsistencies.  But any such

2   inconsistencies—real or imagined—do not mandate the claims be incorrectly construed.

3   **B.      Claims 11 and 20 of the '414 Patent Are Not Anticipated**

4           Samsung's motion for summary judgment that Windows Mobile 5.0 anticipates claim

5   20 of the '414 Patent should be denied for two independent reasons.  First, Samsung's motion

6   is based entirely on a new theory that indisputably was never disclosed in its invalidity

7   contentions, and should be denied on this basis alone.  Second, even if the Court were to

8   consider Samsung's new theory, Samsung's motion must be denied because it is based *entirely*

9   on a clearly impermissible claim construction of the term "provided by."  As a result, not only

10  should Samsung's motion be denied, but summary judgment that Windows Mobile 5.0 does *not*

11  anticipate should be *granted in Apple's favor*.  *See* Fed. R. Civ. P. 56(f)(1); *Northern Telecom*

12  *v. Samsung Elecs.*, 1996 WL 532122, *6 (N.D. Cal. Sept. 16, 1996) (denying Samsung's

13  motion for summary judgment of anticipation and *sua sponte* granting summary judgment in

14  favor of the non-moving party).

15          The parties agree that claim 20 requires *both*: (1) multiple "synchronization software

16  components" each configured to synchronize a different class of data (*e.g.*, mail or calendar

17  data); and (2) a synchronization processing thread that "is provided by a synchronization

18  software component."  To prove anticipation, Samsung must show that Windows Mobile 5.0

19  discloses *both* multiple, data class-specific synchronization software components *and* that those

20  components provide a synchronization thread.  Samsung cannot do so.

21          In its invalidity contentions, Samsung identified a *single* component, the "sync client,"

22  as the alleged "synchronization software component."  The "sync client" does not meet claim

23  20's requirement for *multiple* components (let alone multiple data-class specific components)

24  and thus does not anticipate.  Undoubtedly, but belatedly realizing this, Samsung abandoned

25  this sole basis in its contentions, and has now moved for summary judgment on a new theory

26  based on four other components in Windows Mobile 5.0, *i.e.*, ▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "New

28  Components").  None of the New Components were identified in Samsung's contentions.

Even if Samsung is allowed to assert its new theory, that theory fails as a matter of law. None of Samsung's four New Components "provide" a synchronization thread, as claim 20 explicitly requires.  To the contrary, there is no factual dispute that the New Components only *use* threads that are created and provided to them by *other* components in Windows Mobile 5.0. As a result, Samsung now urges this Court to adopt a nonsensical claim construction—*i.e.*, that a component "provides" a thread merely by using it.  That construction is contrary to the plain meaning of the term "provided by"—in the claims and in the English language—and also is precluded by the specification.  Accordingly, Samsung's motion should be denied, and summary judgment that Windows Mobile 5.0 does *not* anticipate should be *granted for Apple*.

Samsung's motion should also be denied with respect to claim 11 because that claim is no longer asserted in this case.  And, in any event, there are material issues of fact as to both claims 11 and 20 that would preclude summary judgment in Samsung's favor.

1.   **The Only Theory in Samsung's Invalidity Contentions Fails as a Matter of Law; Samsung Should Not Be Allowed to Substitute a New One in Its Place**

As noted above, claim 20 requires multiple, distinct synchronization software components, each of which is dedicated to the synchronization of a specific data class.  Claim 20 requires one component that is "configured to synchronize structured data of a first data class" and at least two "*other* synchronization software components are configured to synchronize structured data of *other corresponding data classes*."  '414 Patent at 34:18-22 (Ex. B-1) (emphasis added).  Samsung does not dispute claim 20 requires multiple, data class-specific "synchronization software components."  Indeed, Samsung's motion is wholly premised on its theory that there are four such components in Windows Mobile 5.0, *i.e.*, ███████████████████████████████████████████████████████████████████████████. Samsung MSJ at 12-13.  But, as noted above, Samsung's invalidity contentions did not identify *any* one of the New Components, much less Samsung's new theory that those components satisfy the "synchronization software components" requirements of claim 20.

Instead, Samsung's contentions point to a different component, the "sync client," as the alleged "synchronization software component" in Windows Mobile 5.0.  *See* Samsung's

Amended Invalidity Chart D-11 ("Samsung's Contentions") at 29-30 (Ex. B-2).  According to

Samsung's Contentions, it is this single "sync client" component that "provides a

synchronization thread" and is "configured to synchronize" the user's data.  *Id.*[4]  Samsung no

longer relies on the "sync client" which was the basis for its invalidity contentions; in fact,

Samsung's summary judgment motion does not even mention the "sync client."

     Samsung's belated shift away from the "sync client" as the sole basis of its invalidity

contentions undoubtedly is because Samsung and its expert know that the "sync client" cannot

satisfy the "synchronization software component" requirements of claim 20 for several reasons,

including (1) it is only one component (there is only one sync client) and claim 20 requires

multiple components, and (2) it is not specific to the synchronization of any data class, as the

claim also requires.  Rebuttal Expert Report of Dr. Alex C. Snoeren ("Snoeren Reb. Rep."), ¶¶

541-44 (Ex. B-3); Deposition of Gary Hall ("Hall Tr.") at 74:2-7, 75:2-17, 76:23-77 (Ex. B-4).

     As a result, when it came time for Samsung's expert to opine on Windows Mobile

5.0—after final invalidity contentions were served and discovery closed—Samsung abandoned

the "sync client" and identified the New Components, and its new invalidity theory based on

them, for the first time.  While Apple does not know why Samsung changed horses so late,

what Samsung has done is both impermissible and highly prejudicial.  During discovery, Apple

focused its examination of the Windows Mobile fact witnesses subpoenaed by Samsung on

Samsung's contentions regarding the "sync client."  By doing so, Apple obtained evidence

demonstrating that Windows Mobile 5.0 is fundamentally different from claim 20 because it

███████████████████████████████████████████████████████

████████████████████  Hall Tr. at 74:2-7; 75:2-17; 76:23-77 (Ex. B-4).  Apple would have

examined the same witnesses regarding the failings in Samsung's new invalidity theory had it

been included in Samsung's contentions.  *See Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL

3155574, *5 (N.D. Cal. Aug., 2, 2012) (affirming decision to strike new invalidity positions

---

[4] The "sync client" is identified as the "synchronization software component" for the independent claims of the '414 Patent.  Samsung's contentions do not identify any additional synchronization software components for the limitations added by claim 20.  Samsung's Contentions at 111-12 (Ex. B-2).

1  presented for the first time in Samsung's expert reports because "Apple did not have the

2  opportunity to conduct additional fact discovery regarding Samsung's new theories.").

3         Samsung does not even try to argue that there is good cause for its failure to identify the

4  New Components prior to its expert's report.  Nor could it.  Samsung had access to the same

5  Windows Mobile 5.0 source code its expert analyzed for over seven months before serving its

6  expert's report.  *See* Jan. 23, 2013 Letter from G. Levin to J. LeRoy (Ex. B-5).  During that

7  time, Samsung had repeated opportunities to amend its contentions and, in fact, did so

8  regarding Windows Mobile in other respects.  *See* Samsung's Contentions at 112 (Ex. B-2).

9  Having chosen not to timely disclose its new invalidity theory when it had the chance (and

10  benefiting from the resulting prejudice to Apple), Samsung should not now be rewarded by

11  being allowed to seek summary judgment on the same.  *See, e.g., Apple*, 2012 WL 3155574 at

12  *5; *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 4479305 at *4 (N.D. Cal. Sept. 26, 2011).

13         If Samsung is held to the theory in its invalidity contentions, as it should be, summary

14  judgment of no anticipation should be entered in Apple's favor because the "sync client"

15  clearly does not meet claim 20's requirement for multiple, data class-specific synchronization

16  software components—and even Samsung does not contend otherwise in its motion.

17         **2.      Samsung's New Invalidity Theory Also Fails as a Matter of Law**

18         Even if the Court were to allow Samsung to rely upon its new, previously-unidentified

19  theory regarding Windows Mobile 5.0, it depends entirely upon an impermissible claim

20  construction and, thus, fails *as a matter of law*.  Claim 20 (through dependency on claim 11)

21  requires "at least one synchronization processing thread . . . wherein the at least one

22  synchronization processing thread is *provided by* a synchronization software component."

23  '414 Patent at 33:47-52 (Ex. B-1).  Thus, in order to anticipate, at least one of the four New

24  Components in Windows Mobile 5.0 must provide at least one synchronization processing

25  thread.[5]  *See Finisar Corp. v. DirecTV Group*, 523 F.3d 1323, 1336 (Fed. Cir. 2008) ("[T]o

26  

27  ───────────────────

[5] All of the "synchronization software components" required by claim 20 must provide their own synchronization thread because that claim term should be construed consistently between claims 11 and 20.  *See, e.g., Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).  Samsung disputes that point, but it acknowledges (as it must) that at least the

28

anticipate, there must be no differences").  There is no *factual* dispute regarding how these

components function and whether any one of them provides a thread as required.  In fact, *none*

of the four New Components provide a synchronization thread.  Rather, each of the New

Components merely executes on (*i.e.*, uses) pre-existing threads that are provided to them by

*other* components in Windows Mobile 5.0.  Snoeren Reb. Rep. ¶¶ 547-49 (Ex. B-3); *see also*

Deposition of Jeffrey Chase ("Chase Tr.") at 239:9-239:11 (Ex. B-6) (███████████████

████████████████████████████████).

Samsung does not dispute any of these facts in its motion and there is nothing in its

expert's declaration to the contrary.  Instead, Samsung's *only* argument is that even though the

New Components do not supply, make available, or otherwise provide a synchronization

thread, they nevertheless should be deemed to "provide" a thread because they "execute on" a

thread.  *See* Samsung MSJ at 16.  Therefore, Samsung's new invalidity theory—and the sole

basis of its summary judgment motion—depends *entirely* on the Court accepting Samsung's

claim construction position regarding the meaning of "provided by" in the claims, and

specifically whether a component provides a thread when it merely *uses* a thread supplied by

another component.  If the Court does not accept Samsung's construction (equating using with

providing), there can be no anticipation as a matter of law, and summary judgment of *no*

anticipation should be granted in Apple's favor.

Samsung's proposed construction of "provided by" to mean "using or executing" is

wrong.  First, it is contrary to the plain meaning of the claim language "provided by."  The

plain meaning of "provided by" is to supply something or to make something available.[6]  For

example, a component may make a thread available by creating or causing it to be generated—

which, incidentally, is how Samsung described the operation of the "sync client" in its

---

synchronization software component referenced in claim 11 and further defined in claim 20 as
being "configured to synchronize structured data of a first data class" must provide a thread.
*See* Samsung MSJ at 15 n.11. The Court need not resolve whether all or just one of the multiple
components required by claim 20 must provide a thread because *none* of the New Components
provide a thread and thus Samsung's new theory fails under either interpretation.
[6] For example, the dictionary defines "provide" as meaning "to make (something) available:  to
supply (something that is wanted or needed)."  Merriam-Webster Dictionary, available at
http://www.merriam-webster.com/dictionary/provide (Ex. B-7).

invalidity contentions.  Samsung, however, seeks to do away with any sort of requirement that the synchronization software component must provide a thread as the term "provide" is plainly understood—*i.e.*, must make it available or supply it or generate it.

Because none of the four New Components actually provide a thread, but rather act on threads provided by other components, Samsung conflates providing a thread with using one. But both in claim 20 and as a matter of plain English, providing a thread and using a thread (provided by something else) are two very different things.  Samsung's motion does not point to anything in the intrinsic record that could possibly support the sharp deviation Samsung asks this Court to take from the plain meaning of "provided by."  *See Thorner v. Sony Comp. Entertainment Am.*, 699 F.3d 1362, 1365-66 (Fed. Cir. 2012) (claim language is given its plain meaning, unless the intrinsic record "clearly express[es] an intent" to redefine the term).

Not only is Samsung's claim construction contrary to the plain meaning, it is precluded by the specification.  Samsung argues that a synchronization software component "necessarily would provide" a synchronization thread "simply by executing" in that thread.  Samsung MSJ at 14.  But it cannot be the case that the synchronization software component *necessarily* provides a synchronization thread (as Samsung contends) because the specification specifically teaches that it is only in "certain embodiments" that the "synchronization processing thread *may be provided* by a synchronization software component." '414 Patent at 2:42-44 (Ex. B-1) (emphasis added).  It is those embodiments where the synchronization software component does provide a synchronization thread that are claimed in claim 20.

In fact, the only part of the specification Samsung cites provides no support for its proposed construction.  *See* Samsung MSJ at 14 (citing '414 Patent at 25:3-5).  Samsung cites the following passage from the description of the preferred embodiment: "The synchronization threads or processes are synchronization tasks performed by one or more synchronization software components." *Id.*  This passage has nothing to do with the meaning of "provided by," let alone support Samsung's effort to change the plain meaning of the term.  The passage merely relates to the types of "tasks performed" on synchronization threads, not what components provide those threads in the first place.

Finally, Samsung's construction is wrong because it reads the "provided by" limitation out of the claim.  Claim 20 states that the "synchronization processing thread is *provided by* a synchronization software component which is *configured to synchronize*" data.  '414 Patent at 33:49-52 (Ex. B-1).  Thus, the claimed synchronization software component must *both* "provide" a synchronization thread *and* be "configured to synchronize" by executing operations on that thread.  Samsung's construction would have the Court improperly combine these two separately claimed requirements into one, rendering "provided by" meaningless.  In fact, even Samsung's expert admits that under Samsung's construction ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Chase Tr. at 245:11-246:11 (Ex. B-6).  But well-established claim construction precedent bars Samsung from reading "provided by" out of the claim as it seeks to do here.  *See, e.g., Aristocrat Techs. v. Int'l Game Tech.*, 709 F.3d 1348, 1356-57 (Fed. Cir. 2013) (holding that the claim term "awarding prize" cannot be met "simply by displaying the amount of the prize won" because that would render other claim language superfluous).

In order to distract from the fact that it is taking a claim construction position that is so wrong, Samsung tries to argue that Apple and its expert previously took the same incorrect position.  First, nothing Samsung says is actually true.  Both Apple's infringement contentions and Dr. Snoeren's infringement report make clear that the Sync Adapter components in Samsung's products meet the "provided by" limitation per its plain and ordinary meaning by actually making a synchronization thread available.  Specifically, each of the Sync Adapters in Samsung's accused products ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.,* Galaxy S III Infringement Contentions at 8 (Ex. B-8); Expert Report of Dr. Alex C. Snoeren ("Snoeren Rep."), Ex. 7N at 8 (Ex. B-9).[7]  Indeed, both Apple's contentions and Dr. Snoeren's report go on to explain that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*  Samsung ignores all of this in its motion.

---

[7] Likewise, Dr. Snoeren's report explains that the user applications provide a user level, non-synchronization thread or "UI thread" by causing that thread to be generated "when the user invokes the application."  Snoeren Rep., ¶¶ 416, 441 (Ex. B-9).

Instead, it cites exactly one paragraph (¶ 455) that does not actually address the "provided by" limitation, from the hundreds in Dr. Snoeren's infringement report, and deliberately mischaracterizes it in a parenthetical, to argue that Apple's expert previously applied the same erroneous construction of "provided by" that Samsung asks the Court to adopt now.  That paragraph and the rest of Dr. Snoeren's infringement report say nothing of the sort.  Second, *all* of Samsung's arguments regarding what the experts have said are irrelevant to the proper interpretation of "provided by" in light of the intrinsic record.  *See, e.g., Default Proof Credit Card Sys. v. Home Depot*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) ("[E]xtrinsic evidence cannot be used to vary the plain meaning of the patent document").

Samsung's attempt to impugn Dr. Snoeren by charging that he waited until his rebuttal report to apply a "new requirement" to distinguish Samsung's new anticipation theory is even more outrageous and revealing.  *See* Samsung MSJ at 16.  The "provided by" limitation is part of the claim.  It is not a new requirement and it is Samsung's burden to prove that it is anticipated by clear and convincing evidence.  Dr. Snoeren had no reason to explain how the New Components fail to meet the "provided by" limitation because those New Components were first identified in Samsung's expert's invalidity report.

Finally, Samsung tries to support its clearly impermissible claim construction with the testimony of the '414 Patent inventor, Mr. Freedman.  Mr. Freedman was deposed over the course of three days and testified regarding his (not Apple's) understanding of the claim language.[8]  Samsung plucks one out of the hundreds of answers he gave to try to support its attempt to construe "provided by" contrary to its plain meaning and the rest of the intrinsic record.  Even if that answer could be read to support Samsung's position, it is clear that "the testimony of an inventor cannot be relied on to change the meaning of the claims."  *Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008).

In sum, Samsung's claim construction—changing "provided by" to mean "used by"—

---

[8] Mr. Freedman was designated only "as to what the claim terms mean to him." Jan. 14, 2013 Letter from B. Buroker (Ex. B-10).  Apple reiterated at the deposition that Mr. Freedman would testify only to his understanding of the claims—not Apple's legal position as to how any term should be construed in light of the intrinsic record.  *See* Freedman Tr. at 11:10-19 (Ex. B-11).

1    fails for a myriad of reasons.  It is contrary to the plain meaning of "provide."  It is precluded

2    by the specification.  And it is barred by precedent because it reads the express "provided by"

3    claim limitation out of the claim.  Because the New Components do not meet the "provided by"

4    limitation under any reasonable construction of the term, Samsung's new invalidity theory fails

5    as a matter of law.  Therefore, summary judgment that Windows Mobile 5.0 does *not* anticipate

6    should be granted in Apple's favor.  *See Northern Telecom,* 1996 WL 532122 at *6.

7        **3.    Windows Mobile Also Fails to Anticipate Other Requirements of Claim 20**

8            The "provided by" limitation is not the only reason Samsung's new theory fails.

9    Windows Mobile uses a single Sync Client to synchronize all the data classes in a single loop.

10   *See* Snoeren Rep. ¶¶ 541-44 (Ex. B-3); Hall Tr. at 74:2-7; 75:2-17; 76:23-77 (Ex. B-4).  In

11   contrast, claim 20 requires separate synchronization software components each of which is

12   dedicated to a particular data class.  The '414 Patent distinguishes prior art (like Windows

13   Mobile 5.0) that "does not have the facilities and architecture described in this disclosure,

14   including, for example, providing a plug-in model on both the handheld and the host for

15   different data classes."  '414 Patent at 1:61-64 (Ex. B-1); *see* Snoeren Reb. Rep., ¶¶ 540-553

16   (Ex. B-3) (explaining how Windows Mobile fails to disclose the claimed architecture).  For this

17   reason, too, Windows Mobile 5.0 does not anticipate and Samsung's motion should be denied.

18       **4.    Samsung's Motion Against Un-asserted Claim 11 Should Be Denied**

19           Apple withdrew claim 11 in compliance with the Court's case narrowing order, and

20   consequently did not submit an expert report regarding the validity of claim 11.  Nevertheless,

21   Samsung seeks a ruling regarding claim 11 because Apple contends that it practices the claim.

22           The only two cases Samsung cites for its assertion that "a patentee cannot 'practice' an

23   invalid claim" say nothing of the sort.  *See* Samsung MSJ at 10 n.6.  Instead, these cases stand

24   for the unremarkable proposition that an accused infringer cannot be liable for infringement of

25   an invalid claim.  Samsung's assertion that Apple's damages claim "crumbles if claim 11 is

26   invalid" is also wrong.  Apple can recover lost profits even if it did not practice any claim of

27   the '414 Patent.  *See Rite-Hite v. Kelley,* 56 F.3d 1538, 1548-49 (Fed. Cir. 1995) (en banc).

28

Even if the Court considered the validity of claim 11 despite the fact that it no longer is asserted and that Apple did not submit an expert report on the issue, Samsung does not meet the "high burden" for anticipation because it cannot establish among other things, the requisite "background synchronization" functionality in Windows Mobile 5.0,[9] as well as whether Windows Mobile 5.0 allowed the user to edit data "concurrently with" synchronization.[10]  For all these reasons, Samsung's motion should be denied.

## C.    Claims 24 and 25 of the '959 Patent Are Not Indefinite

With no serious non-infringement defenses and its primary "anticipation" prior art legally impermissible (and, thus, the subject of an Apple summary judgment motion), Samsung attempts to avoid the '959 Patent altogether by asking this Court to declare the claims indefinite because of the term "heuristic."  Samsung's indefiniteness argument is so clearly without merit, and inconsistent with the record in this case, that it perfectly captures the lengths to which Samsung will go—and repeatedly has gone—to avoid judgment on the merits at all costs.

Incredibly, while Samsung argues that the term "heuristic" is incapable of sufficient definition and application, Samsung never once mentions in the seven-page section of its brief that this Court *already* construed and applied the term in its preliminary injunction orders.  Nor does Samsung mention that it never claimed that the term or the Court's construction was indefinite in the preliminary injunction phase in any one of its multiple briefs to this Court or the Federal Circuit; nor does Samsung mention that the Federal Circuit also had no trouble construing and applying a claim element with "heuristic" in it *twice*.  Even worse, although Samsung now contends that the claim is insolubly ambiguous to one skilled in the art, Samsung

---

[9]  The "TechNet" article Samsung quotes for this proposition does *not* mention Windows Mobile 5.0; it refers to Pocket PC 2003 and Windows Mobile 2003.  *See* Fazio Decl., Ex. 22.  Thus, this article does not evidence a "single prior art reference" (here, Windows Mobile 5.0) necessary to show anticipation.  *Kyocera Wireless v. Int'l Trade Com'n*, 545 F.3d 1340, 1351-52 (Fed. Cir. 2008).  The testimony cited for this point is also inapposite and uncorroborated.  *See TypeRight v. Microsoft*, 374 F.3d 1151, 1159 (Fed. Cir. 2004) ("Corroboration is required of any witness whose testimony alone is asserted to invalidate a patent.").

[10]  The video exhibits Samsung's expert cites do not show a Windows Mobile 5.0 user being allowed to edit concurrently with synchronization.  *See* Chase Decl., ¶ 76 (Fazio Decl. Ex. 24).  Instead, Samsung's expert waits until the sync icon stops spinning before he attempts to actually edit any data.  *See id.,* Exs. 5-7.  Plus, Dr. Snoeren disagreed with Dr. Chase based on his inspection.  Snoeren Reb. Rep. ¶¶ 410-411 (Ex. B-3).

1   fails to mention that its first expert in this case (in the P.I. phase) did not agree, and instead

2   applied it for both infringement and validity.  Samsung also does not mention that its second

3   expert (the one it uses now) submitted two reports applying the supposedly insolubly

4   ambiguous claims to render opinions as to both infringement and invalidity.

5          Samsung's contention that the claims are insolubly ambiguous is belied—and

6   precluded—by the fact that its own expert never suggested that he had any trouble

7   understanding and applying the claims or the Court's construction.  Specifically, when

8   Samsung faced the threat of a preliminary injunction against its then-flagship product on the

9   '959 Patent's continuation, neither Samsung nor its expert ever claimed that "heuristic" could

10  not be understood or that the claims with the term were indefinite.  *See* Samsung's Opp. to

11  Apple's Motion for P.I. at 9-12 (D.I. 114).  Nor did Samsung or its expert have any trouble

12  arguing that the accused product *did not* contain a "heuristic," and that certain prior art *did*.  *See*

13  Carbonell Dec. at ¶ 107; ¶¶ 84, 102-108 (D.I. 117).  Samsung's expert also was able to apply

14  the term "rule of thumb" used in the Court's construction to opine that certain searches in the

15  accused devices "do not incorporate a rule of thumb or any particular human knowledge

16  specific to the problem or the data or to the user, and they are not heuristic."  *Id.* at ¶ 107.

17         Indeed, this Court in issuing the injunction was able to apply the construed term

18  "heuristic" (found in the phrase "heuristic algorithm") in connection with infringement and

19  invalidity.  P.I. Order at 7-30.  The Court did so again in its order denying Samsung's motion to

20  stay the preliminary injunction.  *See* D.I. 230.  In fact, after this Court entered a preliminary

21  injunction based on the '959 Patent's continuation , Samsung moved to stay that ruling on

22  multiple grounds (and filed two briefs), but never claimed that the term "heuristic"—or the

23  Court's construction—rendered the '604 Patent claims indefinite.  Samsung's Motion to Stay at

24  6-9 (D.I. 219).  Facing an injunction, and desperate to obtain a stay, Samsung surely would

25  have mentioned that the claims are indefinite and thus invalid, at least as construed by the

26  Court.  Samsung did not because the claims are not.

27         After the Court granted a preliminary injunction and denied the stay, Samsung

28  submitted *four* briefs to the Federal Circuit addressing, among other things, claim construction.

1   But, never once in those briefs—or at oral argument—did Samsung even hint to the Federal

2   Circuit that it believed the claims are indefinite, even though it is a question of law.  The

3   Federal Circuit itself did not have any trouble addressing the claim with the word "heuristic"

4   repeated throughout, and specifically applied the term "heuristic" in its analysis.  *Apple Inc. v.*

5   *Samsung Electronics Co., Ltd.,* 695 F.3d 1370, 1380-81 (Fed. Cir. 2012) (holding that Apple

6   "distinguished Andreoli not just because the apparatus uses heuristics, but also because it

7   employs different heuristic algorithms in different search areas.").[11]

8          Likewise, since then, both Apple's and Samsung's experts have provided lengthy

9   opinions on whether or not certain functionality (in the accused products and the prior art)

10  meets the heuristic limitation of the claims, as construed by the Court.  *See, e.g.,* Snoeren Rep.,

11  ¶¶103-08, 233-305 (Ex. B-9); Expert Report of Martin Rinard, Ph.D. ("Rinard Rep."), ¶¶ 291,

12  323-25, 445-78, 562-75 (Ex. C-1); Expert Rebuttal Report of Martin Rinard, Ph.D. ("Rinard

13  Reb. Rep."), ¶¶ 220-68 (Ex. C-2).  In fact, despite giving lip-service to Samsung's allegations

14  that the term is somehow subjective, Samsung's expert provides a sixteen paragraph discussion

15  of the history of heuristics in his expert report, saying "I note that 'heuristics' have long been

16  discussed and employed in information retrieval."  Rinard Rep., ¶ 106; *see also id.,* ¶¶ 103-19

17  (Ex. C-1).[12]

18          Nevertheless, Samsung now asserts that the claims are indefinite for several reasons.

19  First, Samsung contends that the "intrinsic record of the '959 patent does not explain to one of

20  ordinary skill how to identify a 'heuristic' for purposes of claim 24" because the specification

21  does not define or give examples of a "heuristic."  Samsung MSJ at 18.  A term is not indefinite

22  because the specification does not provide examples or a definition, and not surprisingly

---

[11] Notably, Samsung and its counsel have tried twice (and failed both times) to convince other
Courts that the term "heuristic" is indefinite in an unrelated Apple patent.  *Apple v. Motorola*,
No. 11-CV-08540, D.I. 526 at 6 (N.D. Ill. January 17, 2012) (Posner, J.) (Ex. C-3) (rejecting
Motorola's argument that "heuristic" is indefinite where Motorola was represented by the same
firm as Samsung here); *In the Matter of Certain Electronic Digital Media Devices and
Components Thereof*, Inv. No. 337-TA-796, Order No. 16, 2012 WL 754088 at *11 (U.S.I.T.C.
Mar. 6, 2012) (Ex. C-4) (rejecting Samsung's argument that "heuristic" is indefinite).

[12] Dr. Rinard's only example of the term "heuristic" being allegedly ambiguous is in the
context of his own research, not how the term is used in the '959 Patent.  *See* Rinard Rep.,
¶ 741 (Ex. C-1).

1    Samsung does not cite a case to support such a proposition.  Rather, a term is indefinite only if

2    it cannot be understood and applied.  *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg.*

3    *Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009); *Source Search Technologies, LLC v.*

4    *LendingTree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009) ("absolute clarity is not required").

5    That is not the case here.[13]  This Court construed the claims based on the specification—and

6    four different experts have applied those claims.

7          Samsung also asserts that Apple's response to certain Requests for Admission ("RFAs")

8    shows that the term "heuristic" is ambiguous.  Samsung's RFAs asked Apple to admit that

9    certain functionality, such as "locating information on the basis of names of files," is a

10   "heuristic."  *See* Samsung MSJ at 18.  Apple responded that such questions could not be

11   answered without more information because, for example, the fact that a system searches using

12   a file name reveals nothing about how it searches, *i.e.*, whether it uses a heuristic.  That is, a

13   system can search using a rule of thumb that incorporates searching for a file name and thus

14   would be using a heuristic; or a system can search using only a constraint satisfaction

15   parameter that includes searching for a file name and thus would not be using a heuristic.

16         What makes Samsung's complaint about Apple's RFA responses so egregious is that

17   Apple's responses are based on—and track precisely—this Court's prior PI Order, which again

18   Samsung fails to mention.  Specifically, this Court explained:

19              As discussed above in the Court's claim construction analysis, the sheer fact that
                the Browser module "search[es] this list for a match" reveals nothing about how
20              it searches, *i.e.*, whether it searches heuristically or not.

21   PI Order at 20-21.  This is exactly why Apple could not answer Samsung's simplistic RFAs—

22   not because of any alleged ambiguity in the word heuristic, but because the RFAs were

23

24   ---
     [13] Similarly, Samsung's reliance on *Ernie Ball, Inc. v. Earvana, LLC*, 502 Fed. Appx. 971 (Fed.
     Cir. 2013) (unpublished) and *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed.
25   Cir. 2005) is misplaced.  Here, a person of ordinary skill in the art is able to determine whether
     an operation meets the claim limitation if provided sufficient information, as all experts here
26   have done.  In contrast, the Court found indefiniteness because the meaning of the term was
     "pinned 'solely on the unrestrained, subjective opinion of a particular individual purportedly
27   practicing the invention.'"  *Source Search*, 588 F.3d at 1076 (citing *Datamize*); *Datamize*, 417
     F.3d at 1350 (the term "aesthetically pleasing" had "no objective definition identifying a
28   standard for determining" if something infringed).

meaningless without more information.

Samsung next moves from omission to outright mischaracterization when it argues that Apple's expert was not able to apply the Court's construction.  Samsung MSJ at 20.  In his two reports and at his deposition, Dr. Snoeren understood and applied the term "heuristic" to find that Samsung's products infringe and the prior art does not invalidate.  *See, e.g.,* Snoeren Rep., ¶¶103-108, 244-301 (Ex. B-9).  How, then, does Samsung contend otherwise?  It misrepresents a single portion from Dr. Snoeren's deposition where he was asked what he recalled about whether something called "synonym matching" was heuristic.  Dr. Snoeren stated that he would need more information regarding that functionality to answer the question.  Snoeren Tr., 433:7-434:7 (Ex. C-5).  Dr. Snoeren explained:

> As Judge Koh stated in her order, it is insufficient to just claim that something is heuristic.  One has to describe how it works, that it implements some rule of thumb and does not consist solely of constraint satisfaction parameters.  So by the court's guidance, I can't answer that question without more information.

*Id.*, 434:13-23; *see also id.*, 438:22-439:1 ("Heuristics are an attribute of a solution to a problem.  So we need to talk about a particular implementation that performs the function of synonym matching, and then we can talk about whether that was heuristic or not.") (Ex. C-5).  Thus, Dr. Snoeren never said that he could not determine whether "synonym matching" or anything else is heuristic; he simply requested more information in order to do so.

Finally, Samsung cherry-picks certain deposition testimony from the inventors and a third party in order to show that persons skilled in the art disagree on whether something is heuristic.  The actual testimony shows no such thing.  Samsung asked dozens of litigation-inspired questions about whether abstract hypothetical processes are "heuristic."  Samsung did not provide this Court's "rule of thumb" construction; nor did Samsung provide sufficient information about the hypothetical processes, leaving each deponent to make certain unspecified assumptions and, as expected, to reach different views based on those assumptions.  Even if Samsung's questions had not been incomplete, and thus meaningless, the inventors' testimony is irrelevant because "inventor testimony, obtained in the context of litigation, should not be used to invalidate issued claims under section 112, paragraph 2."  *Solomon v. Kimberly-*

1    *Clark Corp.*, 216 F.3d 1372, 1379-80 (Fed. Cir. 2000).[14]

2    **D.      Claim 13 of the '596 Patent Is Not Entitled to a Priority Date of November 9, 2004**

3            Samsung's motion for summary judgment that claim 13 of the '596 patent is entitled to

4    a priority date of November 9, 2004 should be denied.[15]  Support for the "data description

5    indicator (DDI) field" of claim 13 is new matter added in Samsung's 12/21/04 Application.

6    The "DDI field" limitation, as properly construed, lacks support in the 11/9/04 Application.

7            **1.      The 11/9/04 Application Does Not Describe or Mention a "DDI" Field**

8            The '596 patent relates to the "MAC-e PDU," a type of data unit used in cellular

9    communications.  *See* '596 Patent at 3:25-30 (Fazio Decl. Ex. 37).  The '596 patent describes

10   three embodiments of the MAC-e PDU, each having a different format.  *Id.* at 5:9-39, 7:53-60,

11   10:61-65, 13:54-56 & Figs. 5, 9, 12.  Embodiments 2 and 3 include a "data description

12   indicator" or "DDI" field; embodiment 1 does not, and instead includes a "multiplexing

13   identifier" or "Mux-ID" field.  *Id.*

14           The 11/9/04 Application does not include the discussion of embodiments 2 and 3 found

15   in the '596 patent, and does not use the terms "data description indicator" and "DDI."  Rather,

16   embodiments 2 and 3 were first added to the *12/21/04 Application* to which the '596 patent also

17   claims priority.  Expert Report of Thomas Fuja ("Fuja Rep."), ¶ 466 (Ex. D-1); 12/21/04

18   Application at 62-21–62-30 [APL630DEF-WH0000097199-208] (Ex. D-2).

19           Samsung must establish that the earlier application discloses the "DDI" field, despite

20   never mentioning it, for claim 13 to have priority to the 11/9/04 Application.  *See PowerOasis,*

21   *Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (to satisfy written description

22   requirement, the "prior application must convey with reasonable clarity" that the inventor "was

23   in possession *of the invention*") (internal quotations omitted) (emphasis in original).

24           Samsung cannot make this showing.  The specification of the '596 patent itself

25   _____

26   [14]  The testimony from a third party fact witness Tim Oren is even less relevant than the
     inventors' testimony, particularly since he was only asked what the term "heuristic" means
     generally, not what it means in the context of the '959 Patent claims.  Samsung MSJ at 21.

27   [15]  November 9, 2004 is the filing date of Korea Patent Application No. 2004-91093 (hereafter,
     the "11/9/04 Application").  The '596 patent also claims priority to a second patent application

28   filed by Samsung in Korea on December 21, 2004 ("12/21/04 Application").

distinguishes embodiment 2 from embodiment 1 *because* it uses a "DDI":

> **Different from the first embodiment**, the second exemplary implementation of an embodiment of the present invention uses a **data description indicator (DDI)** in order to identify a MAC-d flow instead of the reordering queue.

'596 Patent at 10:48-65 (emphases added) (Fazio Decl. Ex. 37).[16]  That the '596 patent itself distinguishes the "DDI" field from embodiment 1 (which is the only embodiment disclosed in the 11/9/04 Application) establishes that claim 13 is not entitled to the priority of the earlier application.  *See PowerOasis*, 522 F.3d at 1306 ("Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed."); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1331-32 (Fed. Cir. 2008).  Indeed, if the 11/9/04 Application had disclosed the "DDI" field, Samsung would not have needed to add the discussions of the "DDI" in the subsequent 12/21/04 Application.[17]

> **2.      As Properly Construed, the "DDI Field" Lacks Written Description Support in the 11/9/04 Application**

> **a.      A "DDI Field" is a "Logical Identifier for Identifying a Logical Channel, a MAC-d Flow, and an RLC PDU Size"**

The '596 patent defines the "DDI" field as a "logical identifier for identifying a logical channel, a MAC-d flow, and an RLC PDU size."  *See* Fuja Rep., ¶ 511 (Ex. D-1).  Indeed, the *only* definition of "DDI" in the '596 patent specification is as follows:

> The second exemplary implementation of an embodiment of the present invention uses a **DDI, which is a logical identifier for identifying a logical channel, a MAC-d flow, and an RLC PDU size**[.]

'596 Patent at 10:61-64 (Fazio Decl. Ex. 37) (emphasis added); *see also* Deposition of Thomas Fuja ("Fuja Tr.") at 356:23-357:4 ("DDI is not a general term of art") (Fazio Decl. Ex. 38); ("DDI is not a general term of art") (Fazio Decl. Ex. 38); *Honeywell Int'l, Inc. v. Universal*

---

[16] This passage specifically discusses embodiment 2, but embodiment 3 also uses a "DDI" field, and so it differs from embodiment 1 for the same reason.  *Id.* at 13:54-56 & Fig. 12.

[17] Contemporaneous documentary evidence also demonstrate that the "DDI"-related disclosures are "new matter" added by Samsung over the 11/9/04 Application.  *See* Fuja Rep., ¶¶ 433-439, 444-446, 453-457, 461-466, 508-511 (Ex. D-1).  Shortly after Samsung filed its 11/9/04 Application, it submitted a related proposal to the 3GPP working group responsible for developing the relevant standard.  *Id.* ¶¶ 453-456, 461-466.  It was *after* the working group *rejected* Samsung's proposal and adopted another approach that Samsung filed the 12/21/04 Application and its U.S. patent application that added material relating to the "DDI field," in an apparent attempt to capture the work being done by the 3GPP working group.  *Id.*

*Avionics Sys. Corp.,* 488 F.3d 982, 991 (Fed. Cir. 2007) ("Without a customary meaning of a term within the art, the specification usually supplies the best context for deciphering claim meaning.").

Samsung's arguments in support of its broad construction of "DDI field," designed to allow claim 13 to claim priority to the 11/9/04 Application, are inconsistent with the specification of the '596 patent and applicable Federal Circuit precedent in several ways.

*First*, Samsung improperly omits the complete definition of "DDI" provided in the patent. Samsung's motion quotes the first portion of the definition—"a logical identifier"—but omits the rest of the definition. Samsung MSJ at 22-23. *See Sinorgchem Co. v. Int'l Trade Comm'n,* 511 F.3d 1132, 1136-38 (Fed. Cir. 2007) (rejecting claim construction of term omitting complete definition in specification).

*Second*, Samsung's proposed construction conflicts with—and eviscerates—the very difference between the embodiments highlighted by the '596 specification. The '596 patent describes the "multiplexing identifier" or "Mux-ID" of embodiment 1 as follows:

> The multiplexing identifier 532 may be a **logical identifier**, which is obtained by combining a logical channel identifier, a reordering queue identifier, and PDU size information.

*Id*. at 8:22-24 (emphasis added). Although the "DDI" and the "multiplexing identifier" are both "logical identifiers," each represents *different* combinations of information. The '596 patent distinguishes embodiment 2 from embodiment 1 specifically on this basis:

> Different from the first embodiment, the second exemplary implementation of an embodiment of the present invention **uses a data description indicator (DDI) in order to identify a MAC-d flow instead of the reordering queue**.

*Id*. at 10:48-55 (emphasis added). A "DDI" identifies a "MAC-d flow," which differs from the "reordering queue" identified by the "multiplexing identifier." *See* Fuja Rep., ¶¶ 482-511 (Ex. D-1); Expert Rebuttal Report of Thomas Fuja, ¶¶ 96-110 (Ex. D-3).

*Third*, Samsung misapplies the doctrine of claim differentiation in arguing that Apple's construction should be rejected because it would cause claims 13 and 18 to have the same scope. This doctrine is "a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368,

1376 (Fed. Cir. 2009) (affirming claim construction rendering a claim superfluous).  Apple's

construction of "DDI field" is based on the only meaning of the term provided in the '596

patent (*see* Fuja Tr. at 355:14-18, 358:2-3 (Fazio Decl. Ex. 38)), and is thus correct even if it

would render claim 18 superfluous.  And Apple's construction would not result in claims 13

and 18 having the same scope.  For instance, claim 18 recites that the "DDI field" represents "a

size of the uplink packet data," but Apple's construction does not.  Samsung has not established

that the language of claim 18 has the same meaning as Apple's construction.[18]

  *Fourth*, Samsung is incorrect that Apple's construction of "DDI field" improperly limits

the term to a preferred embodiment.  Apple's construction is properly based on the only

definition of "DDI" provided in the specification of the '596 patent.  *See Edward Lifesciences

LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) ("the location within the specification

in which the definition appears is irrelevant").  Samsung's contention that "DDI field" should

be construed broadly as "logical identifier" is at odds with the '596 patent's description of

"DDI" as a specific type of logical identifier and its usage of the specific "DDI" language in

claim 13.  If a patentee uses "different language" to distinguish embodiments in the

specification, claims using language specific to an embodiment are properly construed to

encompass only that embodiment.  *See Baran M.D. v. Med. Device Techs., Inc.*, 616 F.3d 1309,

1314-16 (Fed. Cir. 2010); *see also Sinorgchem*, 511 F.3d at 1138-39.  Here, claim 13 expressly

recites "DDI field" rather than a more general term like "logical identifier" that could apply to

all embodiments.  If the inventors had intended to cover any "logical identifier," they could

have drafted claim 13 using that broader language.

  *Fifth*, Samsung is incorrect that Apple's construction narrows the scope of the 11/9/04

Application based on an "added example" in a later-filed application.  Samsung MSJ at 25.

---

[18] Samsung claims that Apple's expert Dr. Fuja admitted at his deposition that claim 18 is
rendered redundant under his construction.  However, Dr. Fuja actually affirmed that his
construction of "DDI" is based on the definition set forth in the '596 patent.  *See* Fuja Tr. at
355:14-18; 356:23-357:4, 358:16-360:2 (Fazio Decl. Ex. 38).  Contrary to Samsung's assertion,
none of the passages it cites from Dr. Fuja's deposition demonstrates that he ever changed his
construction or equated the scope of claims 13 and 18.  Instead, Dr. Fuja specifically pointed
out the "unusual" language in claim 18 that differed from claim 13.  *Id.* at 358:9-15; *see also id.*
at 351:5-20 ("It doesn't say 'PDU size.'  It says 'a size of the uplink packet data.'").

1   The claim term in dispute is not a more general term like "logical identifier," but "DDI field,"

2   which has a specific definition in the '596 patent (and no definition in the 11/9/04 Application).

3   Apple's construction properly and accurately reflects this definition.

4            **b.      The 11/9/04 Application Does Not Disclose a "Logical Identifier for
                       Identifying a Logical Channel, a MAC-d Flow, and an RLC PDU
5                      Size"**

6            The 11/9/04 Application nowhere refers to "data description indicator" or "DDI," and

7   does not define the "multiplexing identifier" as a "logical identifier for identifying a logical

8   channel, a MAC-d flow, and an RLC PDU size." *See* Section D.2.a, *supra*.  Therefore, the

9   "multiplexing identifier" of the 11/9/04 Application is not, as Samsung asserts, the "same" as a

10  "DDI field."  *See* Samsung MSJ at 25.  As the '596 patent itself states, the "multiplexing

11  identifier" is "different" from the "DDI field" because each identifies different information.

12  '596 Patent at 10:48-65 (Fazio Decl. Ex. 37).  Nothing in the 11/9/04 Application demonstrates

13  that the inventors had possession of the claimed "DDI field."  Indeed, Samsung itself cites

14  exclusively from the new matter in the '596 patent in its attempt to equate "DDI" with the

15  disclosures of the 11/9/04 Application.  *See* Samsung MSJ at 22-24.  The 11/9/04 Application

16  therefore cannot provide priority to claim 13.  *See PowerOasis*, 522 F.3d at 1306 ("all the

17  limitations must appear in the specification" of the claimed priority application); *Tech.*

18  *Licensing*, 545 F.3d at 1333-34 (a person skilled in the art must understand "from the earlier

19  application alone, without consulting the new matter" added to later applications, that the

20  inventor had possession of the claimed invention when the earlier application was filed).

21                                    **CONCLUSION**

22           The Court should deny Samsung's motion, confirming that the Jelly Bean products

23  infringe the '647 Patent, that Windows Mobile fails to anticipate '414 Patent claim 20, that

24  claims 24 and 25 of the '959 Patent are not indefinite and that claim 13 of  the '596 patent is

25  not entitled to a priority date of November 9, 2004.

26  Dated: November 11, 2013                    GIBSON, DUNN & CRUTCHER LLP

27
                                               By:  ___/s/   H. Mark Lyon_____
28                                                    ***Attorney for Apple Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document and its supporting documents were filed electronically in compliance with Civil Local Rule 5.1, and will be served upon all counsel of record for the parties who have consented to electronic service in accordance with Civil Local Rule 5.1 via the Court's ECF system.

Dated: November 11, 2013                    */s/   H. Mark Lyon*