# EXHIBIT D-8

VIDEOTAPED DEPOSITION OF NORBERT FUHR
CONDUCTED ON FRIDAY, JULY 12, 2013

1 (Pages 1 to 4)

Page 1

```
 1        UNITED STATES DISTRICT COURT
 2   NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION
 3   -----------------X
 4   APPLE INC., a California        :
 5   Corporation,                    :
 6          Plaintiff,               :
 7   v.                              :
 8   SAMSUNG ELECTRONICS CO., LTD., a :
 9   Korean corporation; SAMSUNG     :Civil Action No.
10   ELECTRONICS AMERICA, INC., a New :12-cv-00630-LHK(PSG)
11   York corporation; and SAMSUNG   :
12   TELECOMMUNICATIONS AMERICA, LLC, :
13   A Delaware limited liability    :
14   Company,                        :
15          Defendants.              :
16   -----------------X
17   (Caption continued on next page)
18
19       Videotaped Deposition of NORBERT FUHR
20              London, United Kingdom
21              Friday, July 12, 2013
22                  9:00 a.m.
23
24   Job No.: 40426         Pages 1 - 212
25   Reported by: Georgina Ford, ACR, CLR, MAVSTTR, MBIVR
```

Page 2

```
 1   (Caption continued from previous page)
 2   -----------------X
 3   SAMSUNG ELECTRONICS CO., LTD., a :
 4   Korean corporation; SAMSUNG     :
 5   ELECTRONICS AMERICA, INC., a New :
 6   York corporation; and SAMSUNG   :
 7   TELECOMMUNICATIONS AMERICA, LLC, :
 8   A Delaware limited liability    :
 9   Company,                        :
10         Counterclaim-Plaintiffs,  :
11   V.                              :
12   APPLE INC., a California        :
13   Corporation,                    :
14         Counterclaim-Defendant.   :
15   -----------------X
16
17   Videotaped Deposition of NORBERT FUHR held at the
18   offices of:
19
20       QUINN EMANUEL URQUHART & SULLIVAN
21           One Fleet Place,
22           London EC4M 7RA
23           London, WC1H 8AG
24            United Kingdom
25
```

Page 3

```
 1              A P P E A R A N C E S
 2   ON BEHALF OF PLAINTIFF AND
 3   COUNTERCLAIM-DEFENDANT APPLE INC.:
 4       JOSHUA FURMAN, ESQUIRE
 5       GIBSON, DUNN & CRUTCHER LLP
 6       200 Park Avenue
 7       New York, NY 10166-0193
 8       (212) 351-2461
 9
10   ON BEHALF OF DEFENDANT SAMSUNG ELECTRONICS CO., LTD.,
11   SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG
12   TELECOMMUNICATIONS AMERICA LLC:
13       JOSHUA JAFFE, ESQUIRE
14       QUINN EMANUEL URQUHART & SULLIVAN, LLP
15       51 Madison Avenue, 22nd Floor
16       New York, New York 10010
17       (212) 849-7124
18
19
20
21   ALSO PRESENT:
22       ULRIKE DEHMEL, Interpreter
23       MARK ROSS, Videographer
24
25
```

Page 4

```
 1                C O N T E N T S
 2   EXAMINATION OF NORBERT FUHR
 3     BY MR. FURMAN                    6
 4     BY MR. JAFFE                   146
 5     BY MR. FURMAN                  193
 6     BY MR. JAFFE                   207
 7              E X H I B I T S
 8          (Attached to transcript)
 9   FUHR DEPOSITION EXHIBIT              PAGE
10
     Exhibit 1   Document entitled: "Searching ...47
11               structured documents with the
                 enhanced retrieval
12               functionality of freeWAIS-sf
                 and SFgate"
13
     Exhibit 2   Document entitled: .............118
14               "Information Retrieval in
                 Networked Heterogeneous
15               Databases"

16   Exhibit 3   Document Bates stamped .........181
                 SAMNDCA630-07601359
17
     Exhibit 4   Document, in German, entitled ..190
18               "Erweiterung des
                 FreeWAIS-Servers"
19
20
21
22
23
24
25
```

VIDEOTAPED DEPOSITION OF NORBERT FUHR
CONDUCTED ON FRIDAY, JULY 12, 2013

5 (Pages 17 to 20)

---

Page 17

BY MR. FURMAN:
Q. And approximately how many hours have you spent having conversations with attorneys from Quinn Emanuel, either in person or on the telephone?
A. Yes, over the phone it might have been three to five hours altogether and yesterday I met with Joshua and we had a meeting for about two hours or so.
Q. Other than the meeting yesterday with Mr. Jaffe, have you met with anyone from Quinn Emanuel in person?
A. No.
Q. After that first phone call which was with the attorney from Germany; is that correct?
A. Yes.
Q. When did you -- strike that.
When did you begin your consulting relationship with Quinn Emanuel?
MR. JAFFE: Objection: assumes facts not in evidence.
THE WITNESS: Well, a few weeks later -- so I think it was after the second phone conference -- and he offered how we -- we talked about a contract.
BY MR. FURMAN:
Q. The first phone conference was with a German attorney from Quinn Emanuel. Who was the second phone

---

Page 18

conference with?
A. I don't know if it was the second or third phone call. Then we had people from the U.S. also, from Quinn Emanuel from U.S. also involved.
Q. Do you remember who those attorneys were?
A. Lance Young was involved but that's the only name I can remember. I cannot recollect exactly who was involved in which phone conference, so ...
Q. I understand. So do you have a consulting relationship or other financial relationship with Quinn Emanuel?
A. Yes.
Q. Do you have a consulting relationship or other financial relationship with Samsung or any Samsung entity?
A. No.
Q. When did the financial or consulting relationship with Quinn Emanuel begin; do you know the specific date?
A. No, I don't remember the specific dates. I think it was in May, some point in May, yes.
Q. That would be May of this year?
A. Yes.
Q. And Quinn Emanuel pays you for consulting; is that correct?

---

Page 19

A. Yes.
MR. JAFFE: Objection to form.
BY MR. FURMAN:
Q. Do you bill them by the hour?
A. Yes.
Q. What is your hourly rate?
A. It's -- I asked for EUR 120 and they offered me the equivalent in U.S. dollars.
Q. And what is that equivalent in U.S. dollars?
A. I think about USD 160.
Q. To date, how many hours have you billed Quinn Emanuel for work on this litigation?
A. I haven't sent them a bill yet; so I haven't added up.
Q. When you do send them a bill, what's your best estimate for how many hours you're going to send them a bill for?
A. So before yesterday it was about ten hours or so.
Q. Do you anticipate doing any work with Quinn Emanuel relating to this litigation in the future?
A. Well, I'm not acquainted with these legal procedures; so in case they need additional consulting I can do that but I don't know if there's any need for that.

---

Page 20

Q. Have they given you any indication of their need for your consulting services going forward?
A. The only thing they indicated was that I might be asked to go to the trial as a witness.
Q. Do you know why they asked you to go to trial as a witness?
MR. JAFFE: I'll -- that's attorney/client privileged information. I'll object on that basis and instruct the witness not to answer.
BY MR. FURMAN:
Q. If you are called as a witness at trial, what would you testify about?
A. Well --
MR. JAFFE: Objection: speculation and I'll caution the witness not to speculate.
A. More or less the same thing as what is this testimony today about.
BY MR. FURMAN:
Q. And what is your understanding of what the testimony today is about?
A. It's about FreeWAIS-sf.
Q. Is there anything in particular about FreeWAIS-sf that you are prepared to testify about today?
MR. JAFFE: Objection to form.

49

1  FTP server was not touched at all and I even wasn't
2  aware that we were running the FTP server because
3  nowadays everything goes through the web server and my
4  staff -- when I asked them and we found that out, they
5  told me that on specific occasions they put some
6  material on the FTP server.
7       I don't use it.
8  BY MR. FURMAN:
9       Q. So you yourself did not post the versions of
10 the source code onto the FTP server?
11      **A. No, no.**
12      Q. And when Quinn Emanuel showed you the source
13 code that was on the FTP server, how were you able to
14 verify that it was an accurate copy of the source code
15 as it existed the date of those particular releases?
16      **A. Because it contained still original dates**
17 **from the late '90s.**
18      Q. And when you say "contained original dates",
19 what do you mean by that?
20      **A. So the file still had timestamps from the**
21 **late '90s and that means that the files were just --**
22 **were not touched during after that date.**
23      Q. Did you review the substance of the source
24 code to verify that the timestamps were in fact
25 accurate?

50

1       MR. JAFFE: Objection: vague.
2       THE WITNESS: What do you mean by a
3  substance?
4  BY MR. FURMAN:
5       Q. Did you review the source code itself? Look
6  at particular files, look at functionality that was
7  either there or not there to verify that the dates
8  indicated by the timestamps were accurate?
9       **A. No.**
10      Q. So you relied solely on the timestamps from
11 the FTP server to verify the date of that --
12      **A. On the version numbers and the timestamps so**
13 **they made sense.**
14      Q. So you have no independent basis other than
15 the information provided by the file names or the
16 timestamps for ascertaining that the date on which
17 that source code was made available?
18      MR. JAFFE: Objection: mischaracterizes
19 witness's previous testimony.
20      THE WITNESS: Of course we have the
21 announcements on the news groups and one could
22 synchronize the announcements with the dates on the
23 FTP server if one just looked it up, but I did not do
24 that.
25 BY MR. FURMAN:

51

1       Q. Do the announcements from the news group
2  contain a link or copies of the entirety of the source
3  code for the software?
4       **A. Yes, they contained links to the FTP server**
5  **only since the main -- only the main address of the**
6  **FTP server changed from Dortmund to Duisburg but**
7  **within the FTP server the address is the same,**
8  **remained unchanged.**
9       Q. So the links provided in the news group
10 announcements, if one were to follow that link, the
11 source code would no longer be available at that link;
12 is that correct?
13      **A. Yes, because one would have to replace the**
14 **machine name of the Dortmund machine, something like**
15 **LS6 FTP, with only Dortmund only. So the domain, just**
16 **replace the domain name of Dortmund by the Duisburg**
17 **domain name and then can get access to these versions.**
18      Q. And the files were not made available in the
19 Duisburg domain name until 2003; is that correct?
20      **A. Yes, because we moved the FTP server in**
21 **early 2003 from Dortmund to Duisburg.**
22      Q. But you were not involved with moving the
23 FTP server; is that correct?
24      **A. No.**
25      MR. JAFFE: Objection: mischaracterizes

52

1  witness's previous testimony; assumes facts not in
2  evidence.
3       THE WITNESS: No, not directly. I just,
4  well, told my staff to move things from Dortmund to
5  Duisburg.
6  BY MR. FURMAN:
7       Q. Do you ever verify that it was done?
8       **A. Not in all aspects, just for the sources --**
9  **for the resources that I needed I certainly verified**
10 **implicitly.**
11      Q. And in 2003 or subsequent did you have any
12 need for the resources -- strike that.
13      In 2003 and after, did you have any chance
14 to verify that the SFgate or FreeWAIS-sf source code
15 was posted correctly to the newer FTP site?
16      **A. No. As I said before, I was not even aware**
17 **that it was there, just has been sitting around during**
18 **the past ten years.**
19      Q. Besides the link in the news group posting
20 to the Dortmund FTP site, is there any other
21 indication of or copy of the source code in that news
22 group posting?
23      **A. Can you repeat the second part?**
24      Q. Would one be able to take the news group
25 posting and use that to verify that the source code

VIDEOTAPED DEPOSITION OF NORBERT FUHR
CONDUCTED ON FRIDAY, JULY 12, 2013

14 (Pages 53 to 56)

### Page 53

1  one was looking at corresponded to that particular
2  announcement other than following the link provided in
3  the news group posting?
4         MR. JAFFE:  Objection: vague; calls for
5  speculation.
6         THE WITNESS:  I don't know if there are any
7  other methods.  Maybe or maybe not.
8  BY MR. FURMAN:
9     Q.  Did the news group posting, for example,
10 contain a full copy of the source code in the posting
11 itself?
12    A.  No.
13    Q.  Did the news group posting contain some type
14 of hash or other mechanism for verifying the accuracy
15 of the source code when downloaded?
16       MR. JAFFE:  Objection: vague; calls for
17 speculation.
18       THE WITNESS:  I don't know.
19 BY MR. FURMAN:
20    Q.  Did you do anything to verify that the
21 source code that Quinn Emanuel found on the FTP site
22 actually corresponds to the source code released in
23 conjunction with that particular news group
24 announcement?
25    A.  No.

### Page 54

1         MR. FURMAN:  We've been going for about an
2  hour and 20 minutes now and I just want to know if
3  you'd like to take a break.
4         MR. JAFFE:  Yes.
5         MR. FURMAN:  If we could go off the record,
6  please.
7         THE VIDEOGRAPHER:  This is the end of tape
8  1, volume 1 in the video deposition of Norbert Fuhr.
9  Now going off the record at 10:20 a.m. as indicated on
10 the video screen.
11       (10:21 a.m.)
12            (Recess taken.)
13       (10:34 a.m.)
14       THE VIDEOGRAPHER:  This is the beginning of
15 tape 2, volume 1 in the video deposition of Norbert
16 Fuhr and the time as indicated on the video screen is
17 10:35 a.m.
18 BY MR. FURMAN:
19    Q.  Professor Fuhr, before the break we were
20 discussing source code that Quinn Emanuel had provided
21 to you from an FTP site.  Are you aware that Quinn
22 Emanuel has produced to us as files from your records
23 that are source code?
24       MR. JAFFE:  I'll just object to the
25 characterization that Quinn Emanuel provided that

### Page 55

1  source code to Mr. Fuhr.  You can answer.
2         THE WITNESS:  No, they did not inform me
3  what they gave to you, so if you say so, then ...
4  BY MR. FURMAN:
5     Q.  Do you know if the source code that's been
6  provided to us bearing the Bates stamps
7  FUHRNDCA630000001 through 06 is the source code that
8  Quinn Emanuel found on that FTP site?
9         MR. JAFFE:  Objection: assumes facts not in
10 evidence.
11       THE WITNESS:  I don't know what they gave to
12 you.
13 BY MR. FURMAN:
14    Q.  Did you provide any source code to Quinn
15 Emanuel to produce to Apple in this litigation?
16    A.  No.  Besides running the FTP server as such,
17 I did not help them with respect to the source code.
18    Q.  Did you review any of the versions of the
19 source code that were provided to Apple in this
20 litigation to verify that those were accurate copies
21 of the source code as they existed the date that
22 particular source code was allegedly released?
23       MR. JAFFE:  Objection: vague.
24       THE WITNESS:  I did not get the beginning of
25 your statement.

### Page 56

1  BY MR. FURMAN:
2     Q.  Did you review any of the versions of the
3  source code that --
4     A.  No, I did not review any source code at all.
5     Q.  I'm sorry, let me just repeat the full
6  question.
7         Did you review any of the versions of the
8  source code that were provided to Apple in this
9  litigation to verify that those were accurate copies
10 of the source code as they existed on the date that
11 the particular source code was allegedly released?
12       MR. JAFFE:  Objection: vague.
13       THE WITNESS:  I did not review any source
14 code.
15 BY MR. FURMAN:
16    Q.  So as you sit here today, you are unaware or
17 not familiar -- strike that.
18       As you sit here today, you are unfamiliar
19 with the source code that Quinn Emanuel provided to us
20 bearing Bates stamps that indicate that that source
21 code is from your files?
22    A.  Yes.
23       MR. JAFFE:  Just objection to form.
24 BY MR. FURMAN:
25    Q.  And when you said "yes", that is yes, you

VIDEOTAPED DEPOSITION OF NORBERT FUHR
CONDUCTED ON FRIDAY, JULY 12, 2013

53 (Pages 209 to 212)

---

209

1  ACKNOWLEDGMENT OF DEPONENT
2  I, NORBERT FUHR, do hereby
3  acknowledge that I have read and examined the
4  foregoing testimony, and the same is a true, correct
5  and complete transcription of the testimony given by
6  me and any corrections appear on the attached Errata
7  sheet signed by me.
8
9
10  _____  _____
11     (DATE)              (SIGNATURE)

---

210

1  CERTIFICATE OF COURT REPORTER
2
3  I, GEORGINA FORD, an Accredited LiveNote Reporter,
4  hereby certify that the testimony of the witness
5  NORBERT FUHR in the foregoing transcript, numbered
6  pages 1 through 211, taken on Friday, July 12, 2013
7  was recorded by me in machine shorthand and was
8  thereafter transcribed by me; and that the foregoing
9  transcript is a true and accurate verbatim record of
10  the said testimony.
11
12  I further certify that I am not a relative, employee,
13  counsel or financially involved with any of the
14  parties to the within cause, nor am I an employee or
15  relative of any counsel for the parties, nor am I in
16  any way interested in the outcome of the within cause.
17
18
19
20
21  Signed: _____
22  GEORGINA FORD, ACR, MAVSTTR, MBIVR
23  Dated:   Friday, July 12, 2013

---

211

1  E R R A T A   S H E E T
2  IN RE:  Apple Inc. -v- Samsung Electronics
3  WITNESS:  Norbert Fuhr
4  PAGE   LINE    CORRECTION AND REASON
5  ____   ____   _____
6  ____   ____   _____
7  ____   ____   _____
8  ____   ____   _____
9  ____   ____   _____
10  ____   ____   _____
11  ____   ____   _____
12  ____   ____   _____
13  ____   ____   _____
14  ____   ____   _____
15  ____   ____   _____
16  ____   ____   _____
17  ____   ____   _____
18  ____   ____   _____
19  ____   ____   _____
20  ____   ____   _____
21  ____   ____   _____
22  ____   ____   _____
23  ____   ____   _____
24  _____    _____
25     (DATE)              (SIGNATURE)

---

212

1  E R R A T A   S H E E T   C O N T I N U E D
2  IN RE:  Apple Inc. -v- Samsung Electronics
3  WITNESS:  Norbert Fuhr
4  PAGE   LINE    CORRECTION AND REASON
5  ____   ____   _____
6  ____   ____   _____
7  ____   ____   _____
8  ____   ____   _____
9  ____   ____   _____
10  ____   ____   _____
11  ____   ____   _____
12  ____   ____   _____
13  ____   ____   _____
14  ____   ____   _____
15  ____   ____   _____
16  ____   ____   _____
17  ____   ____   _____
18  ____   ____   _____
19  ____   ____   _____
20  ____   ____   _____
21  ____   ____   _____
22  ____   ____   _____
23  ____   ____   _____
24  _____    _____
25     (DATE)              (SIGNATURE)