**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE (pro hac vice)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street Boston,
Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br>Counterclaim-Defendant. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN UNRELIABLE AND IMPERMISSIBLE SAMSUNG EXPERT TESTIMONY**<br><br>**HEARING:**<br><br>Date:    January 23, 2013<br>Time:    1:30 p.m.<br>Place:    Courtroom 4, 5th Floor<br>Judge:    Hon. Lucy H. Koh<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

1

**TABLE OF CONTENTS**

Page

I.     Dr. Chevalier's Analysis of Licenses Is Unreliable and Inadmissible............................1

       A.     Samsung Does Not Even Attempt to Established that Any of its Proffered
              Licenses, Apart from the HTC Agreement, Are Comparable ............................2

       B.     Samsung Has Not Rebutted Apple's Showing That Dr. Chevalier Had No
              Factual Basis for Extracting Royalty Rates from Her Proffered Licenses ...........5

II.    Dr. Kearl Should Be Precluded from Offering Unreliable Testimony on Damages ........7

III.   Samsung's Expert Should Be Precluded From Offering Unreliable Testimony
       Based on Improper Claim Constructions For the '757 and '239 Patents........................9

       A.     ██████████████████████████████████████████
              ███████████████.................................................................10

       B.     █████████████████████████████████..............11

       C.     ██████████████████████████..........................12

       D.     Dr. Schonfeld Improperly Alters the Court's '239 Patent Constructions............12

       E.     Dr. Schonfeld Fails to Apply the Correct Legal Standards to the '239
              Patent .............................................................................13

IV.    Dr. Rinard Should be Precluded From Creating Unreliable and Misleading
       Demonstrations Concerning Certain Purported Prior Art Systems ...............................13

V.     Samsung's Experts Should be Precluded From Testifying About the Opinions of
       Apple's Experts Expressed in Past Cases ..........................................................15

VI.    Conclusion.............................................................................................15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## Cases

*ActiveVideo Networks v. Verizon Communications*,
694 F.3d 1312 (Fed. Cir 2012) ..................................................................................... 4

*Bazemore v. Friday*,
478 US 385 (1986) .......................................................................................................... 9

*Daubert v. Merrell Dow Pharms, Inc.*,
509 U.S. 579 (1993) ....................................................................................................... 2

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*,
No. C 11-05973 PSG, 2013 WL 4538210 (N.D. Cal. Aug. 22, 2013) ........................... 6

*Eolas Tech. Inc. v. Microsoft Corp.*,
399 F.3d 1325 (Fed. Cir. 2005) .................................................................................... 14

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed Cir. 2010) ..................................................................................... 13

*Finjan, Inc. v. Symantec Corp.*,
10-CV-593 (GMS), 2013 WL 5302560 (D. Del. Sept. 19, 2013) ................................ 14

*HTC Corp. v. Tech Props., Ltd.*,
2013 WL 4787509 (N.D. Cal. 2013) ........................................................................ 5, 6

*i4i Ltd. P'Ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ........................................................................................ 4

*Interwoven, Inc. v. Vertical Computer Sys.*,
2013 WL 3786633 (N.D. Cal 2013) ............................................................................... 4

*LaserDynamics, Inc., v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .......................................................................................... 4

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006) .................................................................................... 10

*LP Matthews LLC v. Bath & Body Works, Inc.*,
458 F. Supp. 2d 198 (D. Del. 2006) ............................................................................. 12

*Lucent Techs., Inc., v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................... 1

*MultiMedia Patent Trust v. Apple, Inc.*,
2012 WL 5873711 (S.D. Cal. 2012) ............................................................................... 4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .................................................................................... 10

*Poly-America, Inc. v. Serrot Int'l, Inc.*,
2002 U.S. Dist. LEXIS 15995 (N.D. Tex. Aug. 26, 2002),
*reversed and remanded on other grounds*, 383 F.3d 1303 (Fed. Cir. 2004) ............... 12

Page

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)................................................................................ 1

*ResQNet.com, Inc. v. Lansa, Inc.*,
  828 F. Supp. 2d 688 (S.D.N.Y. 2011) .................................................................. 6

*Ricoh v. Quanta*,
  2010 WL 1233326 (W.D. Wis. 2010) .................................................................. 5

*TiVo, Inc. v. Echostar Communs. Corp.*,
  516 F.3d 1290 (Fed. Cir. 2008)........................................................................... 10

*Trading Techs. v. eSpeed*,
  2007 WL 704525 (N.D. Ill 2007) ......................................................................... 3

*TV Interactive v. Sony Corp.*,
  929 F. Supp.2d 1006 (N.D. Cal 2013) .................................................................. 4

*Versata Software, Inc. v. Internet Brands, Inc.*,
  902 F. Supp. 2d 841 (E.D. Tex 2012).................................................................. 14

*Wilson v. Maricopa Cnty.*,
  No. CV-04-2873 PHX-DGC, 2007 WL 686726 (D. Ariz. Mar. 2, 2007).............................. 15

**Rules**

Rule 702 ................................................................................................................. 2

I.      **Dr. Chevalier's Analysis of Licenses Is Unreliable and Inadmissible**

Samsung's damages expert, Dr. Judith Chevalier, improperly ███████████

███████████████████████████████████████████████████████████████████

███████████████████████  Apple's claim for damages will require the jury to

consider what would have happened if Apple and Samsung had held a series of license

negotiations occurring immediately before Samsung was set to bring its infringing smartphone

and tablet products to market, under circumstances in which Samsung recognized that Apple's

patents were valid and that Samsung could not market its products without taking a license from

Apple.  Of course, nothing of the sort has happened in the "real world."  Apple and Samsung

have never entered into any licensing agreement with each other over any patents.  Nor do

license agreements that Apple and Samsung have reached with other parties compare to the

hypothetical license at issue here.  Given those circumstances, Apple's damages expert, Dr.

Christopher Vellturo, reached the opinion that prior licenses between Apple and third parties,

and between Samsung and third parties, were uniformly uninformative of the license terms that

would have resulted from the hypothetical negotiation in this case.  Dr. Chevalier, on the other

hand, ignores those market realities, and instead she relies on, and misuses, irrelevant agreements

that she does not even profess to be comparable.

Apple's motion to exclude Dr. Chevalier's unprecedented use of clearly non-comparable

licenses is firmly rooted in Federal Circuit authority, most notably *ResQNet.com, Inc. v. Lansa,*

*Inc.,* 594 F.3d 860 (Fed. Cir. 2010) and *Lucent Techs., Inc., v. Gateway, Inc.*, 580 F.3d 1301

(Fed. Cir. 2009), which prohibit recitation of licensing numbers divorced from evidence that

such prior licenses are comparable to the hypothetical license at issue.  In response to Apple's

motion, Samsung attacks Dr. Vellturo instead of defending Dr. Chevalier, arguing that Dr.

Vellturo's damage calculations are "completely fantastical" and that, for that reason, Dr.

Chevalier should be allowed "to show what really happens in the marketplace" (Sams. Br. at 1-

2), *without regard to whether anything comparable has ever happened in the marketplace.*  That

simply is not the law.  Dr. Vellturo's opinions are irrelevant to the admissibility of Dr.

Chevalier's opinions under Federal Rule of Evidence 702 and *Daubert*.  Because Samsung

cannot show that Dr. Chevalier's licensing opinions are based on sufficient facts, that her analysis is the product of reliable principles and methods, or that she has reliably applied principles and methods to the actual facts of this case, Dr. Chevalier's licensing opinions are inadmissible under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

A.    **Samsung Does Not Even Attempt to Established that Any of its Proffered Licenses, Apart from the HTC Agreement, Are Comparable**

With the sole exception of the HTC agreement, Samsung spends its entire brief trying to justify its use of non-comparable agreements, rather than attempting to demonstrate the comparability of those agreements.  Samsung breaks its agreements into three groups: (1) the superset of ██ licenses at issue, (2) a "winnowed-down" subset of ██ agreements, and (3) the HTC agreement.  As discussed below, none of these agreements is comparable, and none of Samsung's attempts to justify their use is supported by Dr. Chevalier's report or by the law.

*Dr. Chevalier's superset of* ██ *licenses.*  As Apple showed in its motion, Dr. Chevalier's ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████, is not comparable to the hypothetical five-patent license at issue.  Apple Br. at 4-7. Samsung has not offered valid bases for having its expert testify about them.

Samsung instead mischaracterizes Dr. Chevalier's report, and suggests that Dr. Chevalier used these agreements "for one affirmative purpose—to establish industry practices regarding the *form* of licenses." Sams. Br. at 2 (emphasis in original).  That is inaccurate. ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████  Chev. Rep., ¶ 326-327 (Ex. A-1) (████████████████████████████████████████ ██████  [1]  Samsung's assertion that Dr. Chevalier uses these agreements for purposes of form

---

[1] Citations to Exhibits A-1 through A-3, B-1 through B-10, and C-1 through C-6 are citations to documents attached to the Declaration of Casey J. McCracken in Support of Apple's Motion to

1    alone is a *post-hoc* justification intended to save her opinion by changing it for the purpose of

2    opposing Apple's motion.

3           Samsung does not, in any event, have a shred of legal support for its suggestion that

4    *ResQnet* does not apply merely because licenses are to be used to demonstrate the "form" of a

5    royalty.  Indeed, the one case that Samsung cites in support of that proposition, *Trading Techs. v.*

6    *eSpeed*, 2007 WL 704525 at *2 (N.D. Ill 2007), is completely inapt.  There the court merely

7    noted, in the context of ordering the licenses at issue to be *produced in discovery*, that courts

8    apply the concept of comparability broadly.  *Trading Techs.*, 2007 WL 704525 at *2.  The court

9    explicitly stated that the question of *admissibility* in that case would come at a later stage, and

10   went on to distinguish cases striking non-comparable licenses on the basis *that they were not*

11   *discovery cases*.  *Id*. at *2 n.2.  The court never suggested that comparability need not be shown

12   when using licenses to prove form.  Samsung's only other citation is to a section of Chisum on

13   Patents, for the unremarkable proposition that courts give weight to "licensing customs in the

14   industry."  Sams. Br. at 2.  Samsung downplays the very next portion of the sentence, which

15   states that with respect to "actual licenses," courts give weight to those that are on "*comparable*

16   *patents*."  *Id.*  The whole point of *ResQnet* is to prevent parties from drawing spurious

17   conclusions about damages from licenses that have no relation to the subject of the hypothetical

18   negotiation, and that concern clearly applies to Dr. Chevalier's spurious conclusions about form.[2]

19          **Samsung's "winnowed down" set of** ▓ **licenses**.  Dr. Chevalier did not opine that these

20   ▓ Samsung licenses are comparable; nor did she present any evidence or analysis suggesting

21   that they are comparable.  Indeed, all that she ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

22   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

23

24   Exclude Certain Unreliable and Impermissible Samsung Expert Testimony.  D.I. 806.  Citations
     to Exhibits B-11 and B-12, and C-7 through C-12 are citations to documents attached to the
25   Declaration of Mark D. Selwyn in Support of Apple Inc.'s Reply In Support of Motion to
     Ex
26   [2] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

27   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ple Br. at 4-5.  The fact that
     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ says nothing about the form of
28   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

APPLE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY        -3-        CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

1
2 ▮▮▮▮▮▮  Chev. Rep., ¶¶ 326, 328-30 (Ex. A-1).  That is not a comparability analysis.  Dr.

3 Chevalier did not make any comparison between the economic circumstances of these ▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—and the

5 license Apple and Samsung would enter into at the hypothetical negotiation.  Nor did she look at

6 the patents and determine that they were comparable, or rely on a technical expert to do so.

7 Samsung's argument that "Apple may disagree with her conclusions regarding comparability or

8 the depth of her analysis, but that is a matter for cross examination" (Sams. Br. at 5),

9 conveniently overlooks the fact that Dr. Chevalier's report nowhere provides *any* showing of

10 comparability.

11      Samsung's suggestion that its failure to demonstrate comparability goes solely to weight

12 and not admissibility is flatly contrary to the law.  In *LaserDynamics, Inc., v. Quanta Computer,*

13 *Inc.*, the Federal Circuit held that an expert's royalty opinion was "unreliable under Federal Rule

14 of Evidence 702 and should have been excluded" where it relied on non-comparable licenses.

15 694 F.3d 51, 79-81 (Fed. Cir. 2012).  Even the cases that Samsung cites make it clear that a

16 threshold determination of comparability is required.  For example, in *ActiveVideo Networks v.*

17 *Verizon Communications*, the Federal Circuit explained that a "minimum threshold" of reliability

18 is required before disputes about "the degree of relevance to or accuracy" are sent to the jury.

19 694 F.3d 1312, 1333 (Fed. Cir 2012) (citing *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831

20 (Fed. Cir. 2010).  Although the *ActiveVideo Networks* court affirmed the denial of a motion to

21 exclude, it never found or suggested that a threshold showing of comparability was not required.

22 Indeed, this Court in *TV Interactive* made that exact observation when it excluded the opinion of

23 Sony's expert who, just like Dr. Chevalier, was not willing to opine that his proffered licenses

24 were comparable.  *See TV Interactive v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal.

25 2013) (citing *LaserDynamics* and *ActiveVideo*).[3]  Samsung has not cited a single case where a

26

---

27 [3] Similarly, Samsung's other cases are entirely consistent with *LaserDynamics* and *TV*
*Interactive* because they involve situations where the proffering party—unlike Samsung here—

28 *actually made a threshold showing of comparability.  See, e.g., Interwoven, Inc. v. Vertical*
*Computer Sys.*, 2013 WL 3786633, at *11 (N.D. Cal. 2013) (finding that "these license
agreements were entered during the same time period and dealt with the technology using the

court has ruled that an analysis of patent licenses can be admitted without a predicate showing of comparability.

   **The HTC Agreement**. As Apple explained in its motion, the HTC agreement is not comparable because it is a broad cross license that does not completely or clearly quantify the value Apple received ███████████████████████████████████████████████ This Court found the HTC agreement inadmissible in the 1846 case for these same reasons:

> The Court concludes that the HTC Agreement is insufficiently related to the parties' hypothetical negotiation to give it a role in the retrial. ***As an initial matter, the HTC Agreement does not fully or clearly quantify the benefit Apple received.*** It includes a broad cross license through which Apple receives not only royalty payments, but also a fully paid-up license to practice certain HTC patents. Neither the HTC Agreement itself nor the parties' experts attempt to place a dollar amount on the value of the license to Apple. ***Even for the quantified benefit Apple received for the license to HTC, the agreement does not specify how much of that benefit, if any, is due to the utility patents-in-suit.***

Case No. 11-01846, D.I. 2667 at 7. These same considerations apply here. In sum, none of Samsung's agreements are comparable, and none of its attempts to justify its use of them are recognized under the law.

   **B.    Samsung Has Not Rebutted Apple's Showing That Dr. Chevalier Had No Factual Basis for Extracting Royalty Rates from Her Proffered Licenses**

   Apple showed in its motion that Dr. Chevalier has no factual basis for extracting royalty rates from the HTC agreement, from the Apple-Samsung settlement discussion, and from her Samsung licenses. Samsung has utterly failed to address any of these points in its opposition.

   **The HTC Agreement**. Apple demonstrated that ███████████████████████████ ████████████████████████████████████████████████████████████ Samsung has not denied, or even directly addressed, any of these fatal flaws. Samsung's *only* argument in response is that Apple cannot attack these defects in a motion to exclude, but only through cross-examination. Samsung relies primarily on Judge Grewal's decision in *HTC Corp. v. Tech*

patents in suit"); *MultiMedia Patent Trust v. Apple, Inc.*, 2012 WL 5873711, at *7 (S.D. Cal. 2012) (explaining that "the testimony of a damages expert who relies on non-comparable licenses in reaching his royalty rate should be excluded" but denying the motion where the plaintiff's expert showed that the agreements were sufficiently comparable); *Ricoh v. Quanta*, 2010 WL 1233326 at *10 (W.D. Wis. 2010) (denying post-trial motion where the expert "testified in detail why he believed the ten licensing agreements on which he relied were comparable…").

1     *Props., Ltd.*, in support of that argument.  2013 WL 4787509, at *2 (N.D. Cal. 2013).  That case,

2     if anything, supports Apple's position.  The Court explained that agreements that are broader

3     than one for the patents-in-suit can be used "so long as this broader scope is accounted for."  *Id.*

4     at *2.  But Dr. Chevalier nowhere accounts for the differences in scope between a ██████

5     ████████ and damages on five valid and infringed patents.  ████████████████████

6     ████████████████████████████████████████████  Apple Br.

7     at 8-9.  When accounting for these differences—as Samsung now admits Dr. Chevalier was

8     required to—she is, of course, *bound by the requirements of Rule 70*2.  She cannot simply make

9     numbers up.  *See Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C 11-05973 PSG, 2013

10    WL 4538210, at *4 (N.D. Cal. Aug. 22, 2013) (excluding expert's "arbitrary" damages

11    assumptions under *Uniloc*); s*ee also ResQNet.com, Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 695

12    (S.D.N.Y. 2011) (rejecting expert's "straight up division method" in which he "simply divided

13    [license agreement] rates by the number of patents that the licenses covered" because it "is

14    supported by nothing other than its simplicity").

15         ***The Apple-Samsung Settlement Discussions***.  As Apple explained in its motion, the

16    Samsung and Apple settlement negotiations should be excluded under Rule 408 for purposes of

17    determining liability or damages.  Samsung does not deny that these are indeed Rule 408

18    settlement discussions, but, incredibly, argues that Dr. Chevalier may still rely on them because

19    "the offer is merely a data point used in Dr. Chevalier's analysis."  Sams. Br. at 11█

20    █████████████████████████████████████████████████

21    ██████████  Chevalier Rep., ¶ 320 (Ex. A-1).

22    █████████████████████████████████████████████

23    ████████  *Id.*, ¶¶ 313, 317.  Dr. Chevalier thus uses the substance of the negotiations to come

24    up with numerical royalty figures for damages, and that is exactly what Rule 408 prevents.  The

25    fact that Dr. Chevalier also considered other evidence to determine her damages assessment does

26    not make the portion of her testimony relying on them admissible.[4]

27

28

---

[4] Even if Dr. Chevalier could properly rely on these Rule 408 discussions, her methodology for determining a royalty rate based on them is, as Apple explained in its motion, arbitrary and unsound for many of the same reasons as her analysis of the HTC agreement.  Apple Br. at 10.

APPLE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

1    ***Dr. Chevalier's*** ▓ ***Samsung Licenses***.  As Apple explained in its motion, Dr.

2  Chevalier's analysis of these agreements contains many of the same inherent flaws as her

3  analysis of the HTC agreement and Apple-Samsung settlement discussions. ████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ██████████████████████████████ (*see* Chevalier Rep., ¶¶ 329-31 (Ex. A-1)), as

7  if the experience of Samsung in negotiating non-comparable licenses somehow cabins the value

8  of the five specific patents at issue in this case.  It does not.  For the same reasons already

9  discussed, her analysis is unreliable and inadmissible.

10  **II.     Dr. Kearl Should Be Precluded from Offering Unreliable Testimony on Damages**

11          ***'239, '757, and '449 Patents***.  Samsung's opposition ignores the fundamental flaw in Dr.

12  Kearl's analysis for the '239, '757, and '449 patents: the use of a relative value factor to

13  calculate a ***dollar*** value for the accused features.[5]  ***First***, Dr. Rao's MaxDiff surveys cannot be

14  used to determine the ***monetary*** value of features.  ████████████████████████

15  ████████████████████████████████████████████████████████████

16  ██████████████████████████████ Rao Rep., Att. B-1, (Ex.

17  B-3).  While such questions can be used to rank features (i.e., Feature A is more "valuable" than

18  Feature B), they cannot be used to determine how much more valuable a feature is in ***monetary***

19  terms. ████████████████████████████████████████████████

20  ████████████████ Kearl Tr. 34:5-17; 41:2-11 (Ex. B-2), Rao Rep., (Ex. B-3).

21          ***Second***, Dr. Kearl's methodology yields ***different damages figures*** based on the choice

22  of an admittedly arbitrary anchor for the HB relative value scores, which renders his calculations

23  _____

24  In fact, her                                                          Dr.
     ██ er ████████████████████████████████████████████████████

25  ⁵ ████████████████ *Id.*

26  ██████████████████████████████████████████████████████████

27  ████████████████████████████████████████ ▌ Kearl Tr., 142:8-24
     (Ex. B-2).

28  ████████ Kearl Tr., 27:13-28:7 (Ex. B-2).

1  *per se* unreliable.[6] ███████████████████████████████████

2  Rao Tr., 54:5-56:20, 69:21-70:8 (Ex. B-4).  It is also undisputed that Dr. Kearl's relative value

3  factors differ depending on whether an anchor of 0 or 100 is used.  Apple Br., Ex. B-7.  Because

4  the relative value factors are a key part of his calculations, Dr. Kearl's damages figures also

5  differ based on whether an arbitrary anchor of 0 or 100 is used, rendering them unreliable.

6       ***Third***, while Samsung cites several articles regarding MaxDiff surveys, Samsung has not,

7  and cannot, cite to any scientific literature to support the use of a MaxDiff survey to calculate the

8  relative value of a feature in ***monetary*** terms.[7] ████████████████████████████

9  ██████████████████  Rao Tr., 36:24-37:2; 210:1-12 (Ex. B-4).  Further, the textbook cited by

10  Samsung for the proposition that an interval scale may also be a ratio scale directly contradicts

11  Samsung's assertion.[9] ███████████████████████████████████████████

12  ███████████████████████████████████████████  Kearl Tr.,

13  147:4-147:10 (Ex. B-11). ████████████████████████████████.

14  Kearl Tr., 299:17-300:3 (Ex. B-2). ████████████████████████████

15  ██████████████████  Rao Tr., 180:16-181:5 (Ex. B-12).  As a result, Dr.

16  Rao's MaxDiff survey results were used for a purpose for which they do not fit, resulting in

17  [6] Rather than address the fact that the relative value factors change based on the choice of an
18  arbitrary anchor, Samsung attempts to confuse the issue by only discussing Dr. Rao's HB
    relative value scores ***not*** Dr. Kearl's relative value factor calculations based on those scores.

19  [7] For example, Samsung cites several articles regarding the popularity of MaxDiff surveys.
20  Sams. Br. at 12.  This misses the point.  Apple does not dispute that MaxDiff surveys are used.
    Rather, Apple's position is that the results of a MaxDiff survey cannot be used in the way that
21  Dr. Kearl's used the results of Dr. Rao's surveys.

22  [8] Samsung incorrectly contends that the 0 and 100 anchors are meaningful, natural origins (like
    the 0 on a ratio scale).  Sams. Br. at 15.  Because there can be multiple arbitrary anchors (e.g., 0
23  and 100), these anchors are not natural origins.  A ratio scale (e.g., monetary scale) has only one
    meaningful, natural origin (e.g., $0) not multiple arbitrary origins.  The parties agree that the
24  Celsius scale is ***not*** a ratio scale and has an arbitrary origin with a real meaning (i.e., 0 C° is the
    freezing point of water).  The 0 and 100 anchors are analogous to the arbitrary 0 C° on the
25  Celsius scale ***not*** the absolute zero origin of a ratio scale (e.g., $0 origin of a monetary scale).

26  [9] The textbook cited by Samsung states that the nominal, ordinal, interval, and ratio scales are
    hierarchical such that a scale higher up the hierarchy (e.g., ratio scale) would include the
27  comparison properties of the scales below them (e.g., nominal, ordinal, and interval scales).
    Apple Br., Ex. B-6, 268.  The textbook is clear that the interval scale (below the ratio scale in the
28  hierarchy) would ***not*** include the properties of a ratio scale.  *Id.*

Gibson, Dunn &
Crutcher LLP

APPLE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          -8-          CASE NO. 12-CV-00630-LHK (PSG)

1    damages conclusions for the '239, '757, and '449 patents that are unreliable and speculative.

2        ***'596 and '087 Patents.***  Dr. Kearl's testimony regarding the '087 and '596 patents also

3    should be excluded because his valuation of "bandwidth" ignores the impact of upload speed,

4    the very subject matter of these patents.  ***First***, citing *Bazemore v. Friday*, 478 US 385 (1986),

5    Samsung argues that Dr. Kearl's valuation is reliable despite the failure to include upload speed

6    in the BLS regression analysis, because in Samsung's view such a regression need not control for

7    all variables.  However, *Bazemore* makes clear that an admissible regression must "account[] for

8    the *major* factors."  *Id.* at 400.  Here, Dr. Kearl seeks to measure the value of upload speed, but

9    uses a study that omits the self-evidently "major factor"—upload speed.

10       ***Second***, Samsung argues that Dr. Kearl's omission of upload speed was proper

11   ████████████████████████████████████████████ and are not "independently

12   quantifiable."  Sams. Br. at 16-17.  Yet Dr. Kearl's own sources separately quantify upload and

13   download speeds, so those are clearly "independently quantifiable."  *See* Vellturo Reb. Rep., ¶

14   173 (Ex. B-10).  And the entire purpose of a hedonic regression such as the BLS study is to

15   separately value distinct attributes of a product or service.  Thus, while the technique could have

16   been used to separately value upload, even though it is sold in a bundle of upload and download

17   services, Dr. Kearl instead ignored upload speed—the key quantity—altogether.

18       ***Third***, Samsung argues that Dr. Kearl's analysis should be admitted, even if the BLS

19   regression that underpins his damages calculation is unreliable, because he performed a second

20   analysis to support his conclusions.  But this alternative analysis suffers from precisely the same

21   flaw—it omits any reference to upload speeds.  *See* Kearl Rep. at Table 28 (Ex. B-1) (listing

22   download speeds only).  While Samsung acknowledges this error, and proposes to remedy it by

23   simply "dividing these values by two, to 'account' for upload" (Sams. Br. at 17), ████████

24   ████████████████████████████████████████████████████████████

25   ████████    Kearl Tr., 259:24 – 261:7 (Sams. Br., Ex. 2).

26   **III.    Samsung's Expert Should Be Precluded From Offering Unreliable Testimony Based
            on Improper Claim Constructions For the '757 and '239 Patents**

27       Dr. Schonfeld bases his opinions for the '239 and '757 patents on claim interpretations

28

Gibson, Dunn &
Crutcher LLP

APPLE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY        -9-        CASE NO. 12-cv-00630-LHK (PSG)

1   that rest on unsupportable readings of the intrinsic evidence, incorrect applications of the law,

2   and mischaracterization of the Court's claim construction.  Yet Samsung now insists that the

3   Court should ignore its gatekeeper responsibility to exclude these unreliable opinions because (1)

4   Apple's motion would require consideration of the meaning of the claim language and (2) in any

5   event, Samsung may eventually drop the claims for which Dr. Schonfeld depends on improper

6   constructions.  In taking these positions, rather than seek to abide by the Court's prior limitation

7   on the number of claims to be construed, Samsung seeks to exploit it to avoid any scrutiny of its

8   expert's opinions, however unmoored they may be.

9           Contrary to Samsung's argument, it *is* the Court's role to ensure that an expert does not

10  present opinions that rely on an improper claim construction.  *See Liquid Dynamics Corp. v.*

11  *Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (district court properly "excluded the

12  expert opinion evidence as irrelevant because it was based on an impermissible claim

13  construction"); *TiVo, Inc. v. Echostar Communs. Corp.*, 516 F.3d 1290, 1311-12 (Fed. Cir. 2008)

14  (affirming exclusion of expert opinion evidence based on an impermissible claim construction);

15  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("a court should discount any

16  expert testimony 'that is clearly at odds with . . . the written record of the patent'").  Here, Dr.

17  Schonfeld has treated the claims as a nose of wax in a result-driven attempt to ensnare the

18  accused products while trying to sustain patent validity.  While Samsung insists that it may drop

19  these claims on February 6, 2014, Apple has no way of knowing that.  It is Samsung that is

20  needlessly imposing work on the Court (and on Apple) if Samsung plans eventually to drop

21  claims implicated by Apple's motion.

22      **A.**   ██████████████████████████████████████

23  ███████████████████

24  Samsung's two-sentence argument fails to respond to Apple's argument that ██

25  ███████████████████████████████████████████████

26  _____

27  [10] Samsung states that the issues discussed in sections C.1 and C.2 are further addressed in
    Samsung's opposition to Apple's motion for summary judgment.  This is a clear attempt to
    circumvent the Court's page limitations without leave.  To the extent the Court considers

28  Samsung's summary judgment arguments, Apple requests that the Court also consider Apple's
    summary judgment briefs.

1 ████████████████████████████████████████████

2 ███████████ Samsung merely observes that the claim also uses the term "the zone specific

3 storage and interface *devices*."  But that simply shows that claim 1 *also* covers systems that

4 include more than one zone specific storage and interface device.  Apple Br. at 16-17.  As Dr.

5 Schonfeld acknowledges, ████████████████████████████████████

6 ████████████████████████████████████████ *Id.*; Schonfeld Tr. 326:16-

7 25 (Ex. C-2).

8      Samsung also fails to respond to Apple's point that during prosecution, the applicants

9 amended claim 1 to replace "a plurality of zones each having a zone specific storage and

10 interface device" – which would have required at least two zone specific storage and interface

11 devices – with "at least one zone, each zone having at least one zone specific storage and

12 interface device," which again confirms that the claimed systems require only one zone specific

13 storage and interface device.  Apple Br., Ex. C-3, 2.

14      **B.** ███████████████████████████████████████

15      Samsung's cursory response wholly fails to respond to Apple's argument that Dr.

16 Schonfeld has ████████████████████████████████████████

17 As Apple has explained, the claim language is silent on how devices are to be updated, and the

18 specification explicitly contemplates updates that occur automatically, periodically, and on

19 demand.  Apple Br. at 18; '757 Pat., 9:4-7 (Ex. C-4).  Indeed, at his deposition, Dr. Schonfeld

20 admitted that claim 1 also covers at least periodic updates. Schonfeld Tr. 185:13-186:2 (Ex. C-7).

21      Samsung's only response is to wrongly suggest that Dr. Taylor agreed that "automatic"

22 update is required.  Not so.  In both his reports and his testimony, Dr. Taylor explained that

23 synchronization can occur in a non-automatic way (*e.g.* "periodic" or "on demand"

24 synchronization).  Taylor Supp. Reb. Rep., ¶ 5 (Ex. C-8); Taylor Tr., 43:9-44:2 (Ex. C-9).

25      Samsung does not dispute Apple's argument that "updated in relation to" cannot be

26 performed using a deletion function only.  As discussed in Apple's motion, a delete-only system

27 does not meet the elements of claim 1.  Apple Br. at 18-19.

28

Gibson, Dunn &
Crutcher LLP

**C.**  ███████████████████████████████

Samsung does not dispute that Dr. Schonfeld's infringement opinion ████████████

██████████████████████████████

████████████  The Court construed "zone specific storage and interface device" to mean "a

storage and interface device that resides in an area, such as a room or similar location," and

explained that "resides" reflects "some degree of being contained within a certain location rather

than moving around freely." D.I. 447 at 43, 45. The Court also rejected Samsung's use of

"associated" because it could "potentially include highly transitory associations with an infinite

series of locations, *as with a mobile device, thereby evading the limitation of 'zone specific.'*"

*Id.* at 45 (emphasis added). Accordingly, the Court should exclude Dr. Schonfeld's opinion

because it evades the limitation of "zone specific" by covering mobile devices – an interpretation

the Court specifically rejected. *See Poly-America, Inc. v. Serrot Int'l, Inc.*, 2002 U.S. Dist.

LEXIS 15995 (N.D. Tex. Aug. 26, 2002) ("the court grants Poly-America's request to preclude

Struve from testifying on the basis of a blown-film limitation that varies from the one the court

has construed"), *reversed and remanded on other grounds*, 383 F.3d 1303 (Fed. Cir. 2004); *LP

Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 198, 210 (D. Del. 2006) ("to the

extent that the court's claim construction and related decisions are inconsistent with the opinions

expressed in their respective expert reports, such opinions will not be admitted at trial").[11]

**D.    Dr. Schonfeld Improperly Alters the Court's '239 Patent Constructions**

Samsung's assertion that Dr. Schonfeld's opinion "*is based on the agreed upon function*"

and citation to paragraph 1302 fail to address Apple's arguments. Dr. Schonfeld merely recited

the Court's construction in paragraph 1302. That recitation does not transform his *application* of

the wrong function in paragraph 1303—which Apple actually cited—into a reliable opinion. Dr.

---

[11] ███████████████████████████████████████████ Schonfeld Decl., ¶ 65.
However, the documents actually indicate where Apple users use the accused laptops and iOS
devices. The many places in which the accused laptops and iOS devices are used actually
indicate that the accused products are not contai████████████████████████████
███████ C-10, APLNDC0002956018 at 36-37 █
███████; Apple Br., Ex. C-11, APLNDC0001759006 at 24 (same); Apple Br., Ex. C-12,
APLNDC 0001416346 at 60 (same). Samsung's conclusory assertion that "users use the accused
Apple devices in a contained way in certain locations" does not cure this fact. Sams. Br. at 19.

APPLE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

Gibson, Dunn &
Crutcher LLP

1   Schonfeld's opinions *are* inconsistent the claimed function, which requires *capturing*, digitizing,

2   and compressing "at least one composite signal."  "Forming" and "producing" connote the

3   creation of a composite signal, and are *not* "receiving" or "capturing" a composite signal, as

4   Samsung implies.  Sams. Br. at 18.[12]

### E.   Dr. Schonfeld Fails to Apply the Correct Legal Standards to the '239 Patent

6          Rather than address the numerous instances cited by Apple in which Dr. Schonfeld

7   ignored the law governing construction of means-plus-function limitations and applied the

8   incorrect test in his structural equivalents analysis, Samsung cites different paragraphs in Dr.

9   Schonfeld's report, some of which discuss equivalents, and argues that he recited the correct test

10  for that analysis at his deposition.  *See* Sams. Br. at 21.  First, Samsung does not even mention,

11  much less defend, Dr. Schonfeld's improper constructions or the fact that they render his

12  infringement opinions unreliable.  Second, regardless of whether Dr. Schonfeld is able to recite

13  the correct structural equivalents test "from memory," he applied the *incorrect* test in his report

14  at least *seventeen times*.  Apple Br. at 22.  These fundamental flaws in Dr. Schonfeld's opinions

15  are not addressed – and indeed, appear to be conceded by Samsung.

### IV.   Dr. Rinard Should be Precluded From Creating Unreliable and Misleading Demonstrations Concerning Certain Purported Prior Art Systems

17         The Court should exclude Samsung's '959 Patent expert Dr. Martin Rinard from

18  testifying about or based on systems he built in 2013 to demonstrate how the prior art "might

19  have worked."  That testimony is not based on "evidence" but conjecture and will mislead the

20  jury into believing that Dr. Rinard's creations are prior art when they clearly are not.

21         The law does not support Samsung's attempt to use a 2013-created system to prove

22  invalidity.  As in its summary judgment opposition, Samsung twists the holding of *Finjan, Inc. v.*

23  *Secure Computing Corp.*, 626 F.3d 1197 (Fed Cir. 2010), a case about infringement, to create a

24  new standard that a computer readable medium claim can be anticipated by prior knowledge or

---

[12] Contrary to Samsung's assertion that Apple is seeking to add a new limitation to "composite signal" (Sams. Br. at 19), Apple's motion merely explains how the required capture cards work. *See, e.g.*, App. Br., Ex. C-6, 4:28-31, 4:39-4.  Samsung seeks to mischaracterize those cards and to prevent Dr. Storer from testifying about how they operate because the accused video camera components are very different from the required cards and *cannot* perform the claimed function.

APPLE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

Gibson, Dunn &
Crutcher LLP

use of software that was merely capable of being cobbled together into the claimed arrangement. As shown in Apple's Reply in support of its Motion for Partial Summary judgment, *Finjan* does not support that proposition and is not applicable here.[13]  Further, Samsung's reliance on *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1329 (Fed. Cir. 2005) as alleged authority for using a litigation-built demonstration system as proof of prior art is misplaced.  The demonstration in *Eolas* was of actual prior art—"an archived file"—not something built during the litigation to resemble something that might have been built during the prior art period.  *Id.*[14] Rather than supporting Samsung, all of Samsung's cases prove Apple's point; it is only appropriate to demonstrate to the jury how an actual prior art system worked—not what could have been built.

Perhaps recognizing its error, Samsung now claims that its expert relies on "distributions" of alleged WAIS and AppleSearch systems and that the "demonstration systems" Dr. Rinard created will only be used to "verify" the functionality in the distributed software. Sams. Br. at 22.  However, as Apple details in its reply for its Motion for Partial Summary Judgment, Samsung's expert cannot simply rely on the AppleSearch software or WAIS "distributions" as he found them in his effort to prove invalidity of the claim; instead, he requires a specific configuration—one Samsung has no evidence ever existed.  Reply at 9-10.  Contrary to Samsung's representations to the Court, there is no doubt that Samsung's expert relies on the demonstrations systems he built, not just to verify, but to *establish* the alleged invalidity of the claims.  Throughout Samsung's Exhibits 1 and 9, allegedly proving invalidity in light of the specially-built WAIS and AppleSearch system, Samsung's expert presents screenshots of these litigation-built systems alongside other "evidence" and does not make any effort to distinguish between proof and alleged "verification."  *See* Rinard Rep. Ex. 1 at 2, 13, 16, 18-21, 35-42, 45,

---

[13] *See* Reply in Support of Apple's Motion for Partial Summary Judgment at 10-11 ("Reply").
[14] Similarly, in another *Finjan* case the demonstration was of how the system actually "operated and functioned at the relevant time," not how it could have operated, as Samsung argues now. *Finjan, Inc. v. Symantec Corp.*, 10-CV-593 (GMS), 2013 WL 5302560 at *17 (D. Del. Sept. 19, 2013).  *See also Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 847-48 (E.D. Tex 2012) (fact witness with firsthand knowledge of the prior art (not an expert) demonstrated actual software that existed in the prior art and then testified about an accompanying manual).

50-55, 61-62, 68, 72-75, 89, 101-104; Ex. 9 at 1, 22, 39-40, 49, 57, 60, and 83-84 (Declaration of Jennifer Rho ISO Apple's Mot. for Partial Summary Judgment, D.I. 803-10, Ex. D-1).  Even were the demonstration systems created by Dr. Rinard permissible merely as "verification," these exhibits conclusively show that Samsung clearly intends to blur lines between "evidence" and any such "verification" when presenting Dr. Rinard's opinions, thereby confusing the issues for the jury.

For all these reasons, as well as those set forth in Apple's opening brief, the Court should exclude Samsung's expert from testifying based on or about the demonstration systems he built for this litigation.

## V.  Samsung's Experts Should be Precluded From Testifying About the Opinions of Apple's Experts Expressed in Past Cases

Samsung wrongly argues that Apple is seeking to "hid[e]" alleged inconsistencies between its damages methodologies in this case and prior cases, including Case No. 11-cv-01846 (the "1846 case").  In fact, there are no inconsistencies.  The mere fact that different damages approaches were taken in different cases involving different issues is not an "inconsistency" and is not relevant to any issue in this case.  Expert testimony about these prior cases should be excluded because rebutting a claim of inconsistency would require substantial testimony about the prior analysis and the prior case, including the likely need to call expert witnesses from the 1846 case to testify as fact witnesses in this case.  Allowing Dr. Chevalier to opine on supposed inconsistencies in the testimony of Apple's experts in different cases would inevitably result in a number of mini-trials to compare different opinions from different experts regarding different accused products and different patents.  These collateral issues would be confusing and unhelpful to the jury, which did not hear the 1846 case, and should not be permitted.  *Cf. Wilson v. Maricopa Cnty.*, No. CV-04-2873 PHX-DGC, 2007 WL 686726, at *13 (D. Ariz. Mar. 2, 2007) (excluding evidence of prior lawsuits because "[t]he case would devolve into a series of mini-trials concerning the relevancy and outcome of these other cases[.]").

## VI.  Conclusion

For the foregoing reasons, Apple respectfully requests the Court grant this Motion.

APPLE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     -15-     CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn & Crutcher LLP

Dated:  November 14, 2013

Respectfully Submitted,


By:  /s/ H. Mark Lyon


Attorneys for Plaintiff
APPLE, INC.

1

## CERTIFICATE OF SERVICE

2

3           The undersigned hereby certifies that the foregoing document, and all supporting

4   documents and exhibits, was filed electronically in compliance with Civil Local Rule 5-1, and

5   will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America,

6   Inc., and Samsung Telecommunications America, LLC who have consented to electronic service

7   in accordance with the Northern District of California Local Rules via the Court's ECF system.

8

9

10

11   Date ___November 14, 2013___            _/s/ Mark Lyon_____

12                                           Mark Lyon

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28