QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  December 12, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Honorable Lucy H. Koh<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.   THE ACCUSED "JELLY BEAN" BROWSER PRODUCTS DO NOT INFRINGE
     THE '647 PATENT .............................................................................................. 1

     A.   The Accused Products Fall Outside The Scope Of The Claims................................ 1

          1.   Apple's Dual Selection Argument Has No Evidentiary Support .................. 1

          2.   The User's Selection Is Not Effected By The Duration of The Touch ......... 3

     B.   The Accused Products Do Not Allow A User To Select From Multiple
          Detected Structures ................................................................................. 4

II.  WINDOWS MOBILE ANTICIPATES CLAIMS 11 AND 20 OF THE '414
     PATENT............................................................................................................ 5

     A.   Windows Mobile 5 Anticipates Claim 11 .................................................... 5

     B.   Windows Mobile 5 Anticipates Claim 20 .................................................... 6

     C.   Samsung's Invalidity Theory Was Timely Disclosed ...................................... 9

III. CLAIMS 24 AND 25 OF THE '959 PATENT ARE INVALID AS INDEFINITE............ 9

IV.  CLAIM 13 OF THE '596 PATENT HAS A PRIORITY DATE OF
     NOVEMBER 9, 2004 ......................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.,*
    932 F. Supp. 2d 1076 (N.D. Cal. 2013) ...................................................12

*CBT Flint Partners, LLC v. Return Path, Inc.,*
    654 F.3d 1353 (Fed. Cir. 2011) ...............................................................12

*Cleveland v. Policy Mgmt. Sys. Corp.,*
    526 U.S. 795 (1999) ...................................................................................4

*Datamize v. Plumtree Software, Inc.,*
    417 F.3d 1342 (Fed. Cir. 2005) .........................................................10, 11

*Enzo Biochem, Inc. v. Gen-Probe, Inc.,*
    424 F.3d 1276 (Fed. Cir. 2005) .................................................................2

*Fin Ctrl. Sys. Pty., Ltd. v. OAM, Inc.,*
    265 F.3d 1311 (Fed. Cir. 2001) .................................................................5

*Geneva Pharm., Inc. v. GlaxoSmithKline PLC,*
    349 F.3d 1373 (Fed. Cir. 2003) ...............................................................13

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
    355 F.3d 1327 (Fed. Cir. 2004) ...............................................................15

*Halliburton Energy Servs., Inc. v. M-I LLC,*
    514 F.3d 1244 (Fed. Cir. 2008) ...............................................................10

*InterDigital Commc'ns, LLC v. ITC,*
    690 F.3d 1318 (Fed. Cir. 2012) ...............................................................14

*Martek Biosciences Corp. v. Nutrinova, Inc.,*
    579 F.3d 1363 (Fed. Cir. 2009) .........................................................14, 15

*Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.,*
    __ Fed. App'x __, 2013 WL 4269406 (Fed. Cir. Aug. 16, 2013) .............5

*MySpace, Inc. v. Graphon Corp.,*
    756 F. Supp. 2d 1218 (N.D. Cal. 2010) ....................................................6

*Northern Telecom Ltd. v. Samsung Elecs. Co.,*
    215 F.3d 1281, 1999 WL 33614442 (Fed. Cir. 2000)................................5

*Northern Telecom Ltd. v. Samsung Elecs.Co.,*
    1996 WL 532122 (N.D. Cal. Sept. 16, 1996)............................................5

*Source Search Techs., LLC v. LendingTree, LLC,*
    588 F.3d 1063 (Fed. Cir. 2009) ...............................................................13

*Ultimax Cement Mfg. Corp v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009) ................................................................................. 13

*Univ. of Texas v. Camenisch*,
    451 U.S. 390 (1981) ..................................................................................................... 11

## **Statutes**

Fed. R. Civ. P. 56(f) ........................................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      THE ACCUSED "JELLY BEAN" BROWSER PRODUCTS DO NOT INFRINGE THE '647 PATENT

Claim 1 of the '647 patent requires "a user interface enabling the selection of a *detected structure* . . ." (Ex. 3 ('647 patent) at 7:18-19.)[1]  The parties agree that a "structure" must be detected *before* being selected by a user.  (Opp. at 1.)  The parties also agree that for the Accused Jelly Bean Browser Products, when a user selects a structure by touching it on a screen, ███ ████████████████████████████████████████████.  This should end the inquiry.  Apple instead contends a user's single touch encompasses multiple "selections," one before detection and one after.  This tortured interpretation strains credibility, lacks support, and should be rejected.

#### A.      The Accused Products Fall Outside The Scope Of The Claims

There is no dispute about the operation of the accused products.  ████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████  This warrants a finding of non-infringement:  the claim requires "enabling the selection of a *detected structure*," ██████████████████████████████████████████████████████ Apple's own expert says "[t]he plain and ordinary meaning of 'a user interface enabling the selection of a detected structure' requires the user interface to enable selection of a structure, by the user, *after* the structure has already been detected."  (Dkt. 177 (Mowry Reply Decl.) ¶ 217 (emphasis in original).)[2]

##### 1.      Apple's Dual Selection Argument Has No Evidentiary Support

Apple acknowledges that a user touching a structure on a screen is a non-infringing

---

[1]    References to Apple's Corrected Opposition to Samsung's Motion For Summary Judgment, Dkt. 919-2, are cited as (Opp. at _.).  References to the Declaration of Michael L. Fazio In Support of Samsung's Motion for Summary Judgment, Dkt. 805-5, are cited as (Ex. _.).  References to the Supplemental Declaration of Michael L. Fazio In Support of Samsung's Motion for Summary Judgment, filed herewith, are cited as (Supp. Ex. _.).

[2]    Apple's response to Samsung's Interrogatory No. 26 concerning the alleged validity of the '647 patent similarly states that ████████████████████████████████████████████ ████████████████████████ (Supp. Ex. 1 (Apple's Supp. Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41)) at 126.)

1  selection (*i.e.*, a short tap gesture),[3] but argues that a user can somehow make multiple selections

2  through a single-gesture "long press":  ████████████████████████████████████████████

3  ████████████████████████████████████████.[4]  (Opp. at 2.)  Apple offers no

4  factual support for this alleged dual selection process in the Accused Jelly Bean Browser,

5  particularly any evidence of a second selection.  Nor does Apple identify *when* it claims the

6  second "selection" occurs, ████████████████████████.  Apple instead relies on

7  guesswork:  the subjective intent of each user for this phantom second selection.  (Opp. at 2 ("a

8  user's long-press is a distinct, purposeful act of selection ████████████████████.")

9  (emphasis in original).)  Apple's dual-selection argument is pure conjecture and counter to the

10  claim language; it cannot manufacture a material issue of fact where none exists.  *Enzo Biochem,*

11  *Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute

12  for evidence" and is insufficient to "establish the existence of a genuine issue of material fact

13  sufficient to avoid summary judgment.").

14         Nothing illustrates the unreasonableness of Apple's position as well as Apple's own

15  hypothetical.  Apple argues that *if* "the action of selecting a detected structure" involved first

16  selecting the structure which triggers detection, then detecting that structure, and finally "enabling

17  the user to press a second time again to select the detected structure" there would be no dispute as

18  to infringement.  (Opp. at 4-5.)  Unlike the hypothetical, ████████████████████████ in

19  the Accused Jelly Bean Browser.[5]

---

21  3  Apple claims that Samsung's expert Dr. Jeffay disagrees with Samsung's position that
touching a structure on a screen is the selection of that structure.  (Opp. at 3 n.3.)  Apple is wrong.

22  Dr. Jeffay actually notes, in the paragraphs cited by Apple, that the '647 patent contemplates that
"selection occurs at the time the coordinates of a user's input have been determined"—i.e. when

23  the user touches the screen.  (Furman Decl. Ex. A-1 (Jeffay Rebuttal Rep.) ¶ 189.)  Thus, Dr.
Jeffay opines that "████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ████████████████." (*Id.* ¶ 187.)

26  4  Apple somehow claims that Samsung did not address Apple's dual selection argument in
Samsung's Opening Brief.  (Opp. at 1-2.)  Not so.  Samsung not only addressed it but explained

27  why it was nonsensical and should be rejected.  (*See* Mot. at 5-6.)  Apple even acknowledges this
later in its brief.  (*See* Opp. at 4.)

28  5  Apple claims that Samsung did not address its doctrine of equivalents arguments for the
(footnote continued)

## 2.    The User's Selection Is Not Effected By The Duration of The Touch

Apple also argues, again without support, that the user's choice of a long press rather than a short tap somehow confirms the user's intent to make "a distinct, purposeful act of selection ████████████████████████."  (Opp. at 2; *see also id.* at 4.)  But with both the short tap and the long press, a user selects a structure by choosing that structure with a finger-touch; the selection of the structure has nothing to do with how long the user's finger remains on the screen.  As Apple acknowledges, depending on duration, the system will either enable a single action to be performed on a structure (*e.g.*, directly dialing a selected phone number) or will provide a menu of multiple choices for ***the same structure*** (the menu Apple accuses).  (*See id.* at 3.)  In both cases ***the user's finger-touch will select the structure***, regardless of the duration of the touch.  (*See id.* ("Instead, a mere tap on a structure will simply launch a default action (such as a 'dial' action on a phone number), but it will not provide a menu 'enabling the selection of . . . a linked action' as required by claim 1.").)  "Long-pressing" does not enable a user to make a second selection of a structure (after detection); the user selects the structure when the user touches the screen, regardless of duration, and the only question is whether the system will invoke a single action or allow the user to choose multiple options.

Apple similarly mischaracterizes the system.  Apple argues – with no support whatsoever – that, after the user touches the screen and the system detects the selected structure, "the system determines if the user is selecting that structure by holding her touch on that detected structure; and [] if so, the system presents the menu of actions."  (*Id.* at 4.)  But the system does not work this way.  The user has already selected the structure through the finger touch.  The system does not "re-determine" whether the user is actually making this selection.  Rather, as explained above and as both parties agree, the system evaluates the duration of the touch to assess whether to invoke a single action or present a menu of options.

---

Jelly Bean Browser Application.  But Apple offered no such arguments in its infringement contentions; Apple has waived any such arguments.  (*See* Dkt. 880-5 at 21-22.)

## B.    The Accused Products Do Not Allow A User To Select From Multiple Detected Structures

Apple does not dispute that in the Accused Jelly Bean Browser Products, a user ***cannot***

████████████████████████████████████████████████████████████ Instead, Apple

alleges that "no party asserts that the claims actually require a set of detected structures."  (Opp. at

5.)  This is false.  Apple and its expert Dr. Mowry argued at the PI phase that these were required

by the claim in order to overcome prior art:

- "'[t]he selection of a detected structure,' as written in the claim limitation, necessarily requires that a particular detected structure can be chosen from a set of detected structures." (Dkt. 177 (Mowry Reply Decl.) ¶ 140);

- the prior art "does not itself perform any detection" because "unlike the '647 Patent, the [prior art] requires user prompts to select a single piece of data" (*Id.* ¶¶ 122-124);

- "[a]t no point does [the prior art] allow a user to select from a multitude of detected structures" (*Id.* ¶ 140); and

- "This, again, is contrary to the teachings of the '647 Patent, in which multiple structures are detected, after which a user can choose any one on which to perform an operation via the user interface." (*Id.* ¶ 141).[6]

Apple makes little effort to explain these contradictions or resolve the disparity.[7]  *See Cleveland v.*

*Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("The lower courts. . . . have held with virtual

unanimity that a party cannot create a genuine issue of fact sufficient to survive summary

judgment simply by contradicting his or her own previous sworn statement . . . . without

explaining the contradiction or attempting to resolve the disparity.").  That Apple now claims to

reject this position does not remove or erase Apple's representations to the Court during the PI

---

[6]    Apple also appears to have repeated this argument in a muddled form in its Interrogatory responses.  (Supp. Ex. 1 (Apple's Supp. Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41)) at 126 ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████.").

[7]    Apple states that "Dr. Mowry addressed these alleged inconsistencies in his validity report and in his deposition."  (Opp. at 6.)  But Dr. Mowry did not address these inconsistencies at all.  Instead, despite the plain difference between his PI opinions pre-Jelly Bean and his recent opinions post-Jelly Bean, under oath at deposition, ████████████████████████ (Dkt. 807-40 (Mowry Dep.) at 128:2-141:8.)

1    phase.[8]

2    ## II.    WINDOWS MOBILE ANTICIPATES CLAIMS 11 AND 20 OF THE '414 PATENT

3          Apple cannot dispute that Windows Mobile 5 anticipates the '414 patent.  And so its

4    arguments avoid the merits, instead asking the Court not to decide them.  All these arguments fail.

5    The Court should invalidate claims 11 and 20.[9]

6          ### A.    Windows Mobile 5 Anticipates Claim 11

7          The Court should make quick work of Claim 11.  Apple's expert admitted at his deposition

8    that after examining the limitations of claim 11 he found no "██████████████████████

9    ████████████" (Ex. 25 (Snoeren Dep.) at 243:2-15.)   Apple therefore asks the Court to

10   ignore Claim 11's invalidity, because Apple does not assert the claim is *infringed*.  (Opp. at 15.)

11   But Apple asserts its products practice claim 11 and relies on that assertion for damages.  (Dkt.

12   804-03 at 5.)  Claim 11 is not a litigation trump card:  fully available to assert, but immune to any

13   attack.  Moreover, claim 20 depends from claim 11, and contains every limitation of claim 11.

14   Invalidating claim 11 now can only streamline issues for trial and simplify the jury's task.

15          Aside from its ill-fated "trump card" argument, Apple claims in passing that Samsung has

16   _____

17   [8]   Apple's specious claim that the Court "did not rely on [Dr. Mowry's statements]" is
18   troubling.  Apparently Apple believes it can say whatever it wants in support of an injunction
     against Samsung's products, so long as the Court does not ultimately rely on Apple's unequivocal
19   statements.  (Opp. at 6.)  One can only wonder how would Apple respond to this motion had the
     Court expressly relied on Apple's sworn representations.

20   [9]   Apple argues that the Court should deny Samsung's motion for summary judgment of
     anticipation and *sua sponte* grant summary judgment for Apple on this issue.  (Opp. at 7.)  Besides
21   the fact that Samsung has shown it should win summary judgment of anticipation, the Court
     cannot *sua sponte* grant summary judgment for Apple without giving Samsung "notice and a
22   reasonable time to respond."  Fed. R. Civ. P. 56(f).  Indeed, "grants of summary judgment to
     a nonmoving party are generally disfavored, because they risk depriving a losing party" of this
23   opportunity.  *Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*, __ Fed. App'x __, 2013 WL
     4269406, at *7-9 (Fed. Cir. Aug. 16, 2013).  The only case Apple cites in support of its
24   argument, *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 1996 WL 532122 (N.D. Cal. Sept. 16,
     1996), was not appealed to the Federal Circuit on the relevant issue.  *See* Brief for Plaintiff-
25   Appellant, *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1999 WL 33614442, at
     *4-5 (Fed. Cir. 2000).  *Northern Telecom* cannot be reconciled with *Mikkelsen* or other recent
26   Federal Circuit decisions overturning *sua sponte* grants of summary judgment where the losing
     party was not given an adequate opportunity to argue its case.  *Mikkelsen*, 2013 WL 4269406, at
27   *9 ("Because Zund did not have adequate notice or opportunity to oppose the district court's grant
     of summary judgment of no invalidity to MGE, we hold that summary judgment on this issue was
28   procedurally improper."); *see also Fin Ctrl. Sys. Pty., Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1321
     (Fed. Cir. 2001).

1  not shown "the requisite 'background synchronization' functionality in Windows Mobile 5.0," or

2  that demonstrative videos did not show "Windows Mobile 5.0 allowed the user to edit data

3  'concurrently with' synchronization." (Opp. at 16.) This is meritless misdirection. The words

4  "background synchronization" appear nowhere in the claim. Samsung's motion showed Windows

5  Mobile 5.0 anticipates the words that *are* in the claim, including "executing at least one

6  synchronization processing thread concurrently with the executing of the at least one user-level

7  non-synchronization processing thread," through extensive source code analysis. (Mot. at 11; Ex.

8  24 (Chase Decl.) ¶¶ 45-94.) Apple's complaints about demonstrative videos never challenge, and

9  cannot undo, that code analysis. Moreover, ex-Microsoft employees confirmed that Windows

10  Mobile 5.0 ███████████████████████ (*see* Mot. at 11), testimony corroborated by

11  contemporaneous documents. (Ex. 23 (Hall Dep.) at 29:2-20; Ex. 22 (SAMNDCA630-00948288)

12  at 5.) Even the videos Apple complains of show "background synchronization" where the user

13  can "edit data concurrently." (Ex. 24 (Chase Decl.) Video Exs. 3-7.) Apple's expert only

14  disputed ███████████████████████████████████████████

15  ███████████████████████████████████████ (Supp. Ex. 9 (Snoeren Rebuttal

16  Report) ¶ 411) – a claim that makes *no difference* as a matter of law.[10] The Court should grant

17  summary judgment of invalidity.

18  **B.      Windows Mobile 5 Anticipates Claim 20**

19  The '414 patent's architecture for synchronization ***exactly*** matches the architecture for data

20  synchronization in Windows Mobile 5. The '414 patent discloses (i) a ***Sync Agent*** coordinating

21  central synchronization activity, and (ii) multiple ***Data Sources***, which perform class-specific sync

22  operations: "open[ing] the database on the device," or "send[ing] changed/new/deleted records"

23  to and "process[ing] and committ[ing] data" received from the host. (Dkt. 803-4 at 12.) ███████

24  ███████████████████████████████████████████████████

25  ███████████████████████████████████████████████████

26  ███████████████████████████████████████████████████

27  ──────────────────
     [10] *See, e.g.*, *MySpace, Inc. v. Graphon Corp.*, 756 F. Supp. 2d 1218, 1240 (N.D. Cal. 2010)

28  ("[A] claim limitation can be invalidated by a single public use") (citations omitted).



1  ▮▮▮▮▮▮▮.  (Ex. 24 (Chase Decl.) ¶¶ 78, 87-88.)  ▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮  (*Id.*)

4      Apple does not dispute that these ▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮ are "synchronization software components" each "configured to

6  synchronize . . . data classes" in accordance with claim 20.  Instead, Apple argues that ▮▮▮

7  ▮▮▮▮▮ do not each "provide" a thread.  (Opp. at 10.)  While Samsung disagrees with Apple's

8  interpretation, Windows Mobile 5 anticipates even on Apple's reading.  ▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  (Ex. 24 (Chase Decl.) ¶¶ 97-98.)  The parties agreed long ago that the plain and ordinary meaning

11  of "thread" is "a series of steps that a computer process needs to complete."  (Dkt. 333 at 19.)  A

12  synchronization software component logically provides a synchronization processing thread by

13  providing the steps (or instructions) that the synchronization process needs to complete.  This is

14  what the '414 patent's Data Sources do, ▮▮▮▮▮▮▮▮▮.  The '414

15  patent confirms; it defines threads as "tasks performed by one or more synchronization software

16  components" (Ex. 8 ('414 patent) at 25:3-5.)  Inventor testimony further confirms (Ex. 28

17  (Freedman Dep.) at 129:6-15 ),[11] as does Apple's infringement analysis, which applied this same

18  reading.  (Mot. at 14-15; *see also* Supp. Ex. 7 (Snoeren Opening Report) ¶ 374 ("[A] simple

19  computer program can be thought of as a sequence of instructions, and the computer simply

20  executes them in order . . . . Each one of these individual tasks – or sequences of instructions – is

21  called a thread of control, or simply a thread.").)

22      Apple now tries to introduce a new, extrinsic, dictionary definition of "provide" to say

23  synchronization software component must somehow "make [the thread] available or supply it or

24  generate it."  (Opp. at 11 n.6, 12.)  This definition is nowhere in Apple's contentions, interrogatory

---

[11] ▮▮▮▮▮▮▮ (Opp. at 14 n.8), ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮

1    responses, or infringement report.[12]  Knowing this, Apple argues that "what the experts have said

2    [is] irrelevant to the proper interpretation of 'provided by' in light of the intrinsic record" – but

3    Apple does not even **attempt** to argue that its new construction is supported by the '414 patent

4    specification.  (Opp. at 14.)  Nor can it.  The specification never says "making available,"

5    "supplying" or "generating" a thread.  And for good reason – Apple's non-computing dictionary

6    definition is nonsense in the computing context.  Apple suggests that a synchronization software

7    component must "supply" or "generate" the capacity to execute sync threads or tasks concurrently

8    – a function performed only by a computer operating system itself, not by a synchronization

9    software component.  (*See, e.g.*, Supp. Ex. 7 (Snoeren Opening Report) ¶ 376 ("[T]ypically the

10   operating system's scheduler decides which thread(s) will receive the CPU(s) at any given

11   time.").)

12        Finally, Apple argues Samsung's interpretation would "read[] the 'provided by' limitation

13   out of the claim" because "any component that is 'configured to synchronize data' . . . will

14   necessarily provide a synchronization thread."  (Opp. at 13.)  But Apple's argument ignores the

15   claim language.  The term "provided by" identifies the **specific** synchronization processing thread

16   – the one "provide[d] by" the component – that executes concurrently with a non-synchronization

17   processing thread.  (Ex. 8 ('414 patent) at 33:37-54.)

18        Apple's claim that ██████████████████████████████████████████████

19   ██████████████  is thus groundless.  So too are Apple's other complaints.  Apple's claims "██████████

20   ██████████████████████████████████████████████████████████"  (Opp. at 15),

21   ignoring that ██████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████████████

23   Indeed, as Apple itself argued in its motion for summary judgment, nothing in the patent requires

24   synchronization software components to "perform all of the steps of synchronization" on their

25

26        [12]   Apple points twice to a single sentence in its infringement contentions that describes the
     act of "creat[ing] and start[ing]" a thread.  (Opp. at 13.)  However, this isolated sentence appears
27   in a separate portion of Apple's contentions and is unrelated to the limitation of "provid[ing]" a
     synchronization processing thread.  Similarly, Apple's citation to Dr. Snoeren's report is unrelated
28   to Dr. Snoeren's  infringement analysis of claim 20.

1   own.  (Dkt. 803-4 at 12.)  And as noted in Samsung's motion to strike, Apple's accusation that

2   Windows Mobile 5 does not "provide[] a plug-in model" is both incorrect and irrelevant.  (Dkt.

3   880-5 at 13-14.)  Because Apple cannot identify a single disputed material issue of fact, the Court

4   should grant Samsung's motion for summary judgment of invalidity of claim 20.

5           **C.      Samsung's Invalidity Theory Was Timely Disclosed**

6           Apple seeks to preclude Samsung's invalidity theory entirely, arguing that it was not

7   disclosed in Samsung's invalidity contentions.  (Opp. at 8.)  This repackages Apple's motion to

8   strike (Dkt. 882-4), and should be disregarded, as this Court specifically instructed the parties to

9   file such motions with Judge Grewal.  Apple has filed such a motion (*id.*) and it will be resolved

10  separately.  In any event, Apple's claim that Samsung "changed horses" and "███████████████

11  ████████████████████████████████████████████████████" is entirely incorrect.

12  (Opp. at 9.)  As discussed above ████████████████████████████████ that

13  provide the data class-specific synchronization Samsung described in its invalidity contentions.

14  (Furman Decl. Ex. B-2 at 37-38.)  Samsung disclosed ███████████████ implementing this

15  functionality to Apple, including identifying the filenames and locations of each specific ████████

16  in interrogatory responses.  (Supp. Ex. 12 (Samsung's Further Supplemental Response to Apple's

17  Third Set of Interrogatories) at 52-53.)  Apple's suggestion that it has somehow been prejudiced in

18  preparing its rebuttal is entirely unfounded.  Apple's statement that it "would have examined the

19  [relevant fact] witnesses regarding the failings in Samsung's new invalidity theory had it been

20  included in Samsung's contentions" is particularly perplexing, as Apple in fact ***did*** question

21  Windows Mobile fact witnesses █████████████████.  (See Supp. Ex. 2 (Hall Dep.)

22  at 69:19-74:12.)  And Apple's expert offered opinions on ████████████████ in his rebuttal

23  report, and testified that his opinions were "full and complete," with no need for further

24  information to form opinions.  (Supp. Ex. 3 (Snoeren Dep.) at 22:25-23:19.)  Summary judgment

25  of invalidity of claims 11 and 20 of the '414 patent should be granted.

26  **III.    CLAIMS 24 AND 25 OF THE '959 PATENT ARE INVALID AS INDEFINITE**

27          Apple's opposition relies on ignoring settled Federal Circuit precedent.  A patent claim

28  must convey clear *boundaries* to a person of ordinary skill.  *Halliburton Energy Servs., Inc. v. M-I*

1   *LLC*, 514 F.3d 1244, 1253 (Fed. Cir. 2008) ("While patentees are allowed to claim their

2   inventions broadly, they must do so in a way that distinctly identifies the boundaries of their

3   claims.").  A claim term can be defined by words, but ***still indefinite***, if the term does not convey

4   objective notice of the claim's boundaries.  *Id*. ("fragile gel" indefinite); *Datamize v. Plumtree*

5   *Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005) ("aesthetically pleasing" indefinite).

6           Apple never confronts these rules.  Instead it says "heuristic" is definite in *some* patents, so

7   must be definite in *every* patent.  (Opp. at 18 n.11.)  This is wrong.  In *Halliburton*, the term

8   "fragile," used to describe "fragile gel," was indefinite because the patentee "fail[ed] to identify

9   the degree of the fragility of its invention," making it "unclear" to one of skill what "upper bound"

10  separated fragile and non-fragile substances.  *Halliburton*, 514 F.3d at 1253.  The word "fragile"

11  has a dictionary definition, and the word is used in other patents.[13]  But that did not save

12  Halliburton's patent from indefiniteness, because as used in *that* patent, "fragile" did not convey a

13  clear boundary.  *Halliburton*, 514 F.3d at 1256.[14]  The same is true here:  "heuristic" can be

14  defined by words, and can be definite in *other* patents, but can still be indefinite in *this* patent.[15]

15          Apple then argues that experts here opined *some* algorithms were "heuristic," and asserts

16  on that basis that the term must be definite.  (Opp. at 18.)  Not so.  *Some* substances were clearly

17  fragile in *Halliburton*, including gels named in the specification.  *Halliburton*, 514 F.3d at 1248;

18  *see also* Supp. Ex. 6 (U.S. Pat. No. 6,887,832) at 5:3-7.  But the term did not provide an "upper

19  bound" explaining where "fragile" *ends* and "non-fragile" *begins*.  *Halliburton*, 514 F.3d at 1253.

20  In *Datamize*, experts identified *some* "generally accepted" parameters for aesthetic design,

21  including designs with "symmetry, consistency, predictability, simplicity, cleanliness, and non-

22  crowdedness."  *Datamize*, 417 F.3d at 1353-54.  But this was not enough:  even if *some* designs fit

23  neatly within these criteria, others remained ambiguous.  *Id*. at 1354.

---

25      [13]   *See, e.g.*, Supp. Ex. 4 (U.S. Pat. No. 8,539,795 (claiming "fragile material")); Supp. Ex. 5
    (U.S. Pat. No. 5,775,530 (claiming "fragile object")).

26      [14]   Though *Halliburton* is cited repeatedly in Samsung's motion (*See* Samsung Mot. at 16, 17,
    21), Apple did not even attempt to distinguish it in its opposition.

27      [15]   Indeed, Apple cites to an unrelated patent regarding touchscreens – the '949 patent – but
    courts examining that patent noted that "the claims and the specification *clearly define a*

28  *heuristic*."  (Furman Decl. Ex. C-4 at 9-10 (emphasis added).)

1          Unable to confront these rules, Apple's last gasp is the claim that "heuristic algorithm" in

2    the '604 patent immunizes "heuristic" in the '959 patent.  (Opp. at 16-18.)  According to Apple, if

3    "heuristic algorithm" was not *sua sponte* ruled indefinite at the preliminary injunction phase, the

4    term "heuristic" must be definite in the '959 patent.  This again ignores the law:  terms can be

5    defined and *still* be indefinite.[16]  It also severely distorts the record.  The comparison between

6    these patents is inapposite:  Apple itself denied that the term "heuristic" has the same meaning in

7    the '604 patent and '959 patent's claims.  (Ex. 32 (Apple's Supplemental Responses to Samsung's

8    First Requests for Admission) at 2-3.)  In addition, at the preliminary injunction phase, the Court

9    considered "heuristic" as an adjective modifying "heuristic module" and "heuristic algorithm" – it

10   did not construe "heuristic" alone, used as a noun.  (Dkt. 221 at 10.)  Apple's expert, Dr. Snoeren,

11   himself believes that "heuristic" should be construed differently from "heuristic algorithm."

12   (*Compare* Supp. Ex. 7 (Snoeren Opening Report) ¶ 97 (proffered construction of "heuristic"

13   includes "modules") *with* Dkt. 221 at 18:26-19:2 ("modules" not included in construction of

14   "heuristic algorithm").   Most importantly, this Court was *not* faced with an indefiniteness defense,

15   and did not rule on that defense in the preliminary injunction phase.  (Dkt. 221 at 7-30 (not

16   considering indefiniteness).)[17]  The Court did note, however, that "Apple has been less than clear

17   as to how, exactly, it defines 'heuristic,'" and "[t]he specification is not particularly illuminating"

18   on the issue, because "[a]lthough the specification refers frequently to the use of 'heuristics' to

19   conduct the searches . . . the specification does not provide further explanation as to how

20   'heuristics' is defined."  (*Id.* at 15-17.)[18]  The Court's preliminary construction was only "for

21   purposes of ruling on the pending motion" (*id*. at 18) – a motion that did not present an

22   indefiniteness defense.  The preliminary injunction ruling on the '604 patent thus did not resolve

23   _____

24   [16]    *See, e.g.*, *Datamize*, 417 F.3d at 1348-50 (claim term "aesthetically pleasing" was construed as "beautiful" or "having beauty that gives pleasure or enjoyment," but still indefinite).

25   [17]    In fact, Samsung was not required to oppose a preliminary injunction based on
26   indefiniteness in order to preserve that defense for trial:  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. . . . A party thus is not required to prove his case in full at a preliminary-injunction hearing."  *Univ. of*
27   *Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

28   [18]    *See also* Dkt. 221 at 15 ("Apple has been less than clear as to how, exactly, it defines 'heuristic.'").

or reject indefiniteness defenses on the '959 patent.  Indeed, this Court raised the same concerns

that Samsung is raising now:

> Mr. Krevitt: Your Honor, what I am telling you is the patent itself identifies
> specific examples of heuristic algorithms. Both experts agree that what the concept
> of heuristic in this context means is that you don't know exactly what you're
> looking for. . .
>
> **The Court: So is this like pornography?**
>
> Mr. Krevitt: Not at all, your honor.
>
> **The Court: We know it when we see it, but we can't define it?**

(Supp. Ex. 8 (Hr'g Tr. 33:2-16, June 7, 2012).)

Now, long after the preliminary injunction phase, clear and convincing evidence confirms

what this Court suggested early on:  this patent does not define "heuristic" *at all*, leaving the term

indefinite.  There is no other conclusion to draw from the undisputed facts.  The inventors could

not themselves determine what ███████████████████████████████████████████

███████████████████████ (Mot. at 19-20.)[19]  Apple's own ex-employees likewise could ███

██████████████████████████████████████████████████████████████████████████████

█████████████████"[21]  Expert testimony

confirms:  no objective, consistent boundary divides what is and is not "heuristic."[22]

---

[19]  As previously explained by this Court, "[t]he testimony of an inventor can also shed light
on the meaning of a term insofar as the inventor is a person of ordinary skill in the art."  *Apple,
Inc. v. Samsung Elecs. Co., Ltd.*, 932 F. Supp. 2d 1076, 1082 (N.D. Cal. 2013) (citing *CBT Flint
Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1360 (Fed. Cir. 2011) (considering an
inventor's testimony as testimony of one of skill in the art)).

[20]  Ex. 29E (Capps Dep.) at 104:11-12; *see also id*. at 104:12-17 ("██████████████████
████████████████████████████████████).  Steven Capps, a former Apple employee, is
one of ordinary skill for purposes of the '959 patent.  *See, e.g., id*. at 11:20-12:3, 14:2-17:16, 19:5-
20:18, 27:24-30:25 (describing education and work experience).

[21]  Ex. 29D (Oren Dep.) at 220:21-22.  Timothy Oren, a former Apple employee, is one of
ordinary skill for purposes of the '959 patent.  *See, e.g., id*. at 91:21-92:18, 315:8-316:17.

[22]  See Mot. at 20.  Dr. Rinard also identified a undergraduate textbook on "heuristics" in
information retrieval, right down to the title: D. Grossman and O. Frieder, *Information Retrieval:
Algorithms and Heuristics* (1998).  (Furman Decl. Ex. C-1 (Rinard Opening Report) at ¶¶ 445-
452.)  Yet Dr. Snoeren says the textbook *did not disclose any "heuristics" whatsoever* in the
context of the '959 patent:  "In my reading of Grossman, I see no explicit disclosure of even a
single heuristic."  (Supp. Ex. 9 (Snoeren Rebuttal Expert Report) at ¶ 186.)  This disagreement is
highly instructive, and only possible because the '959 patent fails to explain what, exactly,
constitutes a "heuristic" in that patent.  *Cf. Halliburton*, 514 F.3d at 1253 (indefinite where
        (footnote continued)

1    Even Apple's discovery responses compel the same conclusion.  Apple says the search

2  techniques in the specification, like "locat[ing] items of information on the basis of names of

3  files," are "heuristic" in some cases, but not "heuristic" in other cases.[23]  The Federal Circuit calls

4  this the "epitome of indefiniteness."[24]  The relevant law supports indefiniteness,[25] the uncontested

5  fact testimony supports indefiniteness,[26] and the Court should enter summary judgment.

6  **IV.    CLAIM 13 OF THE '596 PATENT HAS A PRIORITY DATE OF
           NOVEMBER 9, 2004**

7

8    Apple's opposition confirms summary judgment of a priority date of November 9, 2004 is

9  appropriate.  Apple does *not* dispute the priority application discloses "a header part that is a

10  logical identifier representing the first PDU."  (*See* Opp. at 25.)  Apple stands on its incorrect

11  construction:  independent claim 13 is limited to the limitations of dependent claim 18.  (*See id.*)

12    This is a legal issue that must be resolved by the Court.  Apple cannot present invalidity

13  references that are not prior art.  Resolving this legal issue will reduce the number of questions for

14  the jury by eliminating improper "prior art" combinations, and will avoid reversible error.

15    Apple devotes the first part of its Opposition to the fact that the priority application does

16  not use the term "DDI field."  (*Id.* at 25.)  This is a red herring.  It should go without saying that

17  _____

18  "degree of fragility" not sufficiently conveyed by specification); *see also* Supp. Ex. 10 (Rinard
    Rebuttal Expert Report) at ¶¶ 32, 39 (noting other ambiguities).)

19    [23]    *See* Ex. 32 (Apple's Supplemental Responses to Samsung's First Requests for Admission)

20  at 4-5 (searching by names of files "can be what a 'heuristic' does, but there may be certain
    circumstances in which [this] is not what a 'heuristic' does").

21    [24]    *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) ("[A]
    given embodiment would simultaneously infringe and not infringe the claims, depending on the

22  particular bacteria chosen for analysis.  Thus, one of skill would not know from one bacterium to
    the next whether a particular composition standing alone is within the claim scope or not.  That is
    the epitome of indefiniteness.").

23    [25]    Apple's reliance on inapposite case citations is unavailing.  *Ultimax Cement Mfg. Corp v.*

24  *CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009) dealt with a claim to "over 5000
    combinations" of a chemical compound.  Though broad, the claim was definitively bounded, as

25  one of skill would know whether a compound fell inside or outside those 5000 combinations.  *Id.*
    In *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009), the

26  Court expressly found that "a person having ordinary skill in the art will possess an understanding
    of the system that will supply an objective definition" greatly distinguishing its analysis from that

27  of "heuristic" in the '959 patent, where the record shows the exact opposite.

    [26]    For convenience, a compendium of testimony from persons of ordinary skill (already filed

28  with Samsung's opening brief as Ex. 29A-G) is attached as Supp. Ex. 13.

1   there are lots of different ways to say the same thing.[27]  The fact that Samsung used certain words

2   in its priority application, and then used the words "DDI field" in its later application, does not

3   mean that new matter was added.  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363,

4   1369 (Fed. Cir. 2009) ("[T]he earlier application need not describe the claimed subject matter in

5   precisely the same terms as found in the claims at issue.") (citations omitted).  It is irrelevant

6   whether the term "DDI field" appears in the priority application.  The only relevant question is the

7   legal question of what "DDI field" means.  If, as Samsung urges, it means a "logical identifier

8   representing the first PDU," there is no factual dispute that the priority application discloses

9   exactly that.

10        Apple argues in its Opposition that a DDI field *must* identify three things:  (i) a logical

11   channel; (ii) a MAC-d flow; and (iii) an RLC PDU size.  (*See* Opp. at 22.)  Apple does not dispute

12   that this limitation appears in dependent claim 18.  Obviously the term "DDI field" does *not*

13   require this limitation.  Otherwise, it renders dependent claim 18 superfluous.  For this reason, the

14   presumption that independent claims are not limited to their dependent claims is a high bar.

15   *InterDigital Commc'ns, LLC v. ITC*, 690 F.3d 1318, 1324-26 (Fed. Cir. 2012) (holding that the

16   "strong presumption" created by claim differentiation is "especially strong" where the limitation

17   sought to be read into an independent claim already appears in a dependent claim).  Nothing in the

18   intrinsic record of the '596 patent overcomes this bar.  In fact, the file history is completely silent

19   on this point.  Apple's Opposition only points to two sentences in the specification to support its

20   claim construction.  As demonstrated below, Apple misreads both sentences.

21        In its Opposition, Apple misrepresents the following sentence from the '596 patent:

22        The second exemplary implementation of an embodiment of the present invention
          uses a DDI, which is a logical identifier for identifying a logical channel, a MAC-d

23        flow, and an RLC PDU size, in order to represent a MAC-e control SDU.

24   (*See* Opp. at 22.)  This sentence does not define "DDI field" to include the limitation in claim 18.

25

26   _____

     27   This situation is analogous to the term "nonscheduled transmission" in the '087 patent.
     Samsung initially used the term "autonomous transmission," and later used the term "non-

27   scheduled transmission."  The parties agree that these different terms have the same meaning and
     that no new matter was added.  (Supp. Ex. 11 (Fuja Dep.) at 30:24-32:3.)  As the patentee,

28   Samsung is permitted to use different words to describe the same thing.

1  The specification simply explains that the DDI is a logical identifier and that is used to represent a

2  MAC-e PDU.  It also discloses that the DDI *may* be used to identify a logical channel, a MAC-d

3  flow, and an RLC PDU size.  This is what is claimed in dependent claim 18.  The specification

4  uses the word "for" (as opposed to "must," "necessarily," or "has to").  The word "for" means that

5  the DDI field is capable of, or may identify these things; the specification never says the "DDI

6  field" *must* identify these three things.  *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327,

7  1332-35 (Fed. Cir. 2004) (holding that the claimed drive mechanism did not require rotating 360º

8  despite the specification's sole embodiment disclosing a "drive mechanism *for* rotating[] at least

9  360º" because rotating 360º was explicitly recited in other claims).

10      Apple's reliance on the different embodiments in the '596 patent is also misplaced.  Apple

11  misquotes the '596 specification to hide the fact that a DDI field and a Mux-id are different terms

12  for the same thing.  (*See* Opp. at 23.)  Immediately following the sentence that Apple misquotes,

13  the specification makes clear that the DDI field and the Mux-id identify *identical* information:

> Different from the first embodiment, the second exemplary implementation of an
> embodiment of the present invention uses a data description indicator (DDI) in
> order to identify a MAC-d flow instead of the reordering queue.  <u>The combination
> of a logical channel, a reordering queue, and  an RLC PDU size is **identical** to the
> combination of a logical channel, a MAC-d flow, and an RLC PDU size, in view
> that both include information about the size of RLC PDUs contained in a MAC-es
> PDU and information about an upper layer to which the RLC PDUs will be
> transmitted.</u>

19  (Ex. 37 ('596 patent) at 10:52-61 (emphasis added).)  The underlined sentence, which Apple chose

20  to omit, confirms the '596 patent uses "DDI field" and "Mux-Id" interchangeably.  They are both

21  a "logical identifier representing a first PDU," and they both may disclose the three things in

22  dependent claim 18.  The fact that the specification uses different terms to describe the same thing

23  does not mean there is new matter.  *Martek*, 579 F.3d at 1369.  Nor does it mean independent

24  claim 13 should be limited to the limitations in dependent claim 18.

25      Apple points to no other portions of the intrinsic record to support its erroneous claim

26  construction.  Since both of Apple's arguments fail, there is no way that Apple can overcome the

27  strong presumption that claims are not limited to their dependent claims.  Accordingly,  Samsung

28  is entitled to summary judgment that claim 13 has a priority date of November 9, 2004.

1    DATED:  November 14, 2013            QUINN EMANUEL URQUHART &
2                                         SULLIVAN, LLP

3                                         By /s/ Victoria F. Maroulis

4                                            Charles K. Verhoeven
                                             Kevin P.B. Johnson
5                                            Victoria F. Maroulis
                                             William C. Price
6                                            Michael L. Fazio

7                                            Attorneys for
8                                            SAMSUNG ELECTRONICS CO., LTD.,
                                             SAMSUNG ELECTRONICS AMERICA, INC.,
9                                            and SAMSUNG TELECOMMUNICATIONS
                                             AMERICA, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 12-CV-00630-LHK
SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**ATTESTATION OF E-FILED SIGNATURE**

I, Patrick D. Curran, am the ECF user whose ID and password are being used to file Samsung's Reply In Support of Its Motion For Summary Judgment.  In compliance with Civil L.R. 5-1(i), I hereby attest that Victoria F. Maroulis has concurred in this filing.

Dated:  November 14, 2013

*/s/ Patrick D. Curran*
Patrick D. Curran