# EXHIBIT 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**REBUTTAL EXPERT REPORT OF DR. ALEX C. SNOEREN CONCERNING U.S. PATENTS NOS.  6,847,959 AND 7,761,414**<br><br><br>**HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE** |

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

186.   Dr. Rinard writes that "To the extent vector space search techniques are found not to be necessarily heuristic, or the vector space search techniques disclosed by Evans are not heuristics, it would have been obvious to use the numerous heuristic vector space models disclosed in Grossman, for example, those in Grossman Section 2.1, or, for that matter, other search heuristics disclosed in Chapter 2 of Grossman." RR Ex. 2 at 23.  More pointedly, he claims "A person of ordinary skill in the art would understand that disclosing `a vector space search technique' discloses the use any of [sic] the many known vector space search heuristics, such as any of the vector space search heuristics identified in, for example, Grossman." RR Ex. 2 at 13.  I disagree.  In my reading of Grossman, I see no explicit disclosure of even a single heuristic.  Rather, in Chapter 2 Grossman describes a set of "retrieval strategies" including the "Vector Space Model" in Section 2.1 called out by Dr. Rinard. Grossman offers no guidance on whether any of his proffered strategies—either within Section 2.1 or elsewhere in Chapter 2—are heuristic or not.  While some, like the Neural Networks and Genetic Algorithms described in Sections 2.6—7 seem clearly heuristic (although not related to a vector space search technique), in my opinion the same cannot be said for all of the strategies in Section 2.1.

Indeed, my constraint satisfaction-based technique above uses Grossman's "simplest means of constructing a vector" (SAMNDCA630-00936991).

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

411.    The video exhibits attached to the Chase Report are consistent with my observations and provide no evidence that the Windows Mobile "test system" Dr. Chase relied upon is capable of reliable synchronization functionality through the ActiveSync application.  Chase Video Exhibits 11-13 begin with the device booting and end after the first synchronization attempt.   No further synchronization attempts are shown in these videos and presumably any subsequent attempt to sync data using the ActiveSync application would have failed as I observed through inspection of this "test system."  Accordingly, these video exhibits are misleading in that they suggest the synchronization functionality in Dr. Chase's "testing and demonstration" system is reliable, repeatable, and that it demonstrates the functionality he ascribes to the "Windows Mobile with ActiveSync" reference in his report—which was certainly not the case when I observed that system.

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Dated: September 13, 2013

_____
Alex C. Snoeren