1  QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
2  Charles K. Verhoeven (Bar No. 170151)
    charlesverhoeven@quinnemanuel.com
3  Kevin A. Smith (Bar No. 250814)
    kevinsmith@quinnemanuel.com
4  50 California Street, 22nd Floor
    San Francisco, California 94111
5  Telephone: (415) 875-6600
    Facsimile: (415) 875-6700
6
    Kevin P.B. Johnson (Bar No. 177129)
7  kevinjohnson@quinnemanuel.com
    Victoria F. Maroulis (Bar No. 202603)
8  victoriamaroulis@quinnemanuel.com
    555 Twin Dolphin Drive, 5th Floor
9  Redwood Shores, California 94065
    Telephone: (650) 801-5000
10 Facsimile: (650) 801-5100

11 William C. Price (Bar No. 108542)
    williamprice@quinnemanuel.com
12 865 South Figueroa Street, 10th Floor
    Los Angeles, California  90017-2543
13 Telephone:  (213) 443-3000
    Facsimile:  (213) 443-3100
14
    Attorneys for SAMSUNG ELECTRONICS
15 CO., LTD., SAMSUNG ELECTRONICS
    AMERICA, INC. and SAMSUNG
16 TELECOMMUNICATIONS AMERICA, LLC

17                            UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 12-CV-00630-LHK (PSG) |
| Plaintiff, | **SAMSUNG'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| | Date:  January 23, 2013 |
| | Time:  1:30 p.m. |
| | Place: Courtroom 8, 4th Floor |
| Defendants. | Judge: Honorable Lucy H. Koh |

Case No. 12-CV-00630-LHK (PSG)
SAMSUNG'S REPLY ISO MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS

# TABLE OF CONTENTS

**Page**

I. APPLE FAILS TO REBUT SAMSUNG'S SHOWING THAT ITS DAMAGES METHODOLOGIES SHOULD BE EXCLUDED AS UNRELIABLE .............................. 1

    A. Apple's Use Of Hauser's Conjoint Surveys To Calculate Market Share Is Unsupported And Directly Contrary To *Oracle v. Google* ...................................... 1

        1. Apple Uses Hauser's Conjoint Surveys To Predict Market Share ................ 1

        2. Hauser's Surveys Suffer From The Same Methodological Flaws As The Survey Excluded In *Oracle* .................................................................. 2

        3. Apple Has Adduced No Authority Supporting Its Use Of Hauser's Conjoint Survey ........................................................................................... 4

    B. Dr. Hauser's Materially Overbroad Descriptions Of The Patented Features Provide An Additional Basis For Exclusion Of His Conjoint Surveys .................... 6

    C. Apple's Damages Calculations Should Be Excluded For The Independent Reason That They Conflict With The Undisputed Facts ......................................... 8

    D. *Georgia Pacific* Does Not Permit Apple To Backdoor Lost Profits In The Form Of A Reasonable Royalty .................................................................................. 9

    E. The Court's Recent Ruling Confirms Dr. Vellturo's Opinions On Lost Profit Damages In The Post-Notice Design Around Periods Should Be Excluded ......................................................................................................... 9

II. DR. MOWRY'S UNRELIABLE OPINIONS SHOULD BE EXCLUDED ........................ 10

    A. Apple Does Not Explain Dr. Mowry's Inconsistent Testimony, Or Justify Dr. Mowry's Inconsistent Claim Constructions ..................................................... 10

    B. Dr. Mowry Made Affirmative Misrepresentations About His Inconsistent Interpretations .......................................................................................................... 12

    C. Apple's Opposition To Samsung's Summary Judgment Motion Demonstrates The Severity Of The Issue .............................................................. 13

III. DR. SNOEREN'S *IPSE DIXIT* ASSERTIONS REGARDING APPLE'S ALLEGED PRACTICE OF THE '414 PATENT SHOULD BE EXCLUDED ................. 13

IV. DR. STORER'S '239 AND '449 OPINIONS SHOULD BE EXCLUDED ....................... 15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc.*,
 2010 WL 1930569 (N.D.N.Y. May 11, 2010) ........................................................................13

*Apple Inc. v. Motorola, Inc.*,
 Case No. 11-cv-8540 (N.D. Ill. June 7, 2012) ........................................................................12

*Clicks Billiards Inc. v. Sixshooters Inc.*,
 251 F.3d 1252 (9th Cir. 2001)...................................................................................................5

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
 618 F.3d 1025 (9th Cir. 2010)...................................................................................................5

*Fractus, S.A. v. Samsung*,
 2011 WL 7563820 (E.D. Tex. Apr. 29, 2011) ..........................................................................8

*HTC Corp. v. Tech. Props. Ltd.*,
 2013 WL 4782598 (N.D. Cal. Sept. 6, 2013).........................................................................13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
 694 F.3d 51 (Fed. Cir. 2012).....................................................................................................9

*Microsoft Corp. v Motorola, Inc.*,
 904 F. Supp. 2d 1109 (W.D. Wash. 2012) ...............................................................................4

*NetAirus Techs., LLC v. Apple, Inc.*,
 Case No. LA CV10-03257 (C.D. Cal. Oct. 23, 2013) ..............................................................7

*Oracle Am., Inc. v. Google, Inc.*,
 2012 WL 850705 (N.D. Cal. Mar. 13, 2012) ...........................................................1, 2, 3, 4, 5

*Oxford Gene Tech. Ltd. vs. Mergen Ltd.*,
 345 F. Supp. 2d 431 (D. Del. 2004) .......................................................................................10

*Schwab v. Philip Morris*,
 449 F. Supp. 2d 992 (E.D.N.Y. 2006).......................................................................................4

*Southland Sod Farms v. Stover Seed Co.*,
 108 F.3d 1134 (9th Cir. 1997)...................................................................................................5

*TV Interactive Data Corp. v. Sony Corp.*,
 929 F. Supp. 2d 1006 (N.D. Cal. 2013) ....................................................................................4

**Other Authorities**

Sawtooth Software, Inc., *The CBC System for Choice-Based Conjoint Analysis*
 (Version 8 2013)....................................................................................................................5, 6

K. Jedidi and Z. Zhang, *Augmenting Conjoint Analysis to Estimate Consumer Reservation Price*,
    48 Mgmt. Sci. 10, 1350 (2002) ................................................................................................5

I. **APPLE FAILS TO REBUT SAMSUNG'S SHOWING THAT ITS DAMAGES METHODOLOGIES SHOULD BE EXCLUDED AS UNRELIABLE**

    A. **Apple's Use Of Hauser's Conjoint Surveys To Calculate Market Share Is Unsupported And Directly Contrary To *Oracle v. Google***

Apple does not dispute that the "willingness to buy" calculations derived from Dr. Hauser's conjoint analysis are central to its ▮▮▮▮ damages claim. Nor does Apple challenge the reasoning of the *Oracle* decision holding that conjoint surveys are not suitable for predicting changes in market share resulting from the removal of minor features in complex products. *Oracle Am., Inc. v. Google, Inc.*, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012). In fact, Apple offers no authority supporting the use of conjoint surveys to make such market share predictions. Yet that – predict market share – is exactly what Apple seeks to do here. Dr. Hauser's conjoint surveys are unreliable and should be excluded.

        1. **Apple Uses Hauser's Conjoint Surveys To Predict Market Share**

Apple seeks to avoid Judge Alsup's ruling in *Oracle* by claiming Dr. Hauser did not predict market share. Dr. Hauser, Apple asserts, merely "estimate[s] the willingness of Samsung owners to buy Samsung devices when one or more of the patented features are removed" and thus "do[es] not predict market share." (Opp. 2:17-19.) Apple seeks to hide behind the fact that Dr. Hauser did not *himself* do the market share calculations; instead, Apple delivered Dr. Hauser's output to Dr. Vellturo, who used simple arithmetic to predict the market share Samsung would lose as a result of the removal of the patented features based only on Dr. Hauser's willingness to buy conclusions.

There is no meaningful difference between what Dr. Hauser and Dr. Vellturo did jointly and what Oracle's expert, Dr. Shugan, did alone. Dr. Hauser acknowledges Apple used his survey results to measure impact on market share. (*See* Dkt. 802-7, Hauser Rpt. ¶ 15 ▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮ Specifically, ▮▮▮▮

▮▮▮▮

▮▮▮▮ *d.* ¶¶ 118, 119, 121); ▮▮▮▮

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 802-20, Vellturo Rpt.
2 ¶¶ 311, 317), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶
3 319.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This is what Oracle's expert, Dr. Shugan, did. Dr. Shugan "calculated changes in Android market share if the patented functionalities were removed." 2012 WL 850705, at *9. He and Dr. Hauser employed the same method to measure market share reductions resulting from diminished demand. (Fazio Dec. Ex. A at ¶¶ 8-9 ("Exhibit 3a to the Shugan Report concludes that an incremental change to the application start time on an Android device from two to four seconds would decrease sales by 20 percent.").) *Oracle* is directly on point.[1] It is simply not possible to reliably predict diminution in market share by asking survey respondents whether they would still buy a complex product with numerous features if a minor feature were removed.

### 2. Hauser's Surveys Suffer From The Same Methodological Flaws As The Survey Excluded In *Oracle*

Nor is Apple able to distinguish the choice of features used for Dr. Hauser's conjoint surveys from the choices made for the excluded *Oracle* survey. (Opp. 5-7.) As in *Oracle*, Hauser's conjoint surveys are ***not*** a reliable measure of consumers' willingness to buy Samsung smartphones or tablets because they do not test important features that, as is undisputed, *do* affect purchasing decisions. Apple does not dispute that features such as "battery life, WiFi, weight and cellular network," are unquestionably important to consumers and that these features were not included in Hauser's surveys. (Mot. 6:4-7; *see also Oracle,* 2012 WL 850705, at *10.) Like the survey excluded in *Oracle,* which tested a small group of minor features (7) in the face of evidence that consumers take into account many more features (39), Dr. Hauser's studies tested only a handful of features (such as a particular way of implementing autocorrect) while ignoring

---

[1] While Apple relies on *Mor-Flo* to defend Dr. Vellturo's allocation of sales to Apple based on actual market share (Opp. 4), that does not change the fact that the market share he reallocates comes directly from Dr. Hauser's improper conjoint analysis.

main purchase drivers. (*See, e.g.*, Dkts. 807-47—807-50.)  Dr. Hauser's conjoint surveys suffer from the same problem that concerned Judge Alsup: testing small features (selected for litigation purposes) in a complex product without including the "important product features" in the survey "warp[s] what would have been [consumers'] real-world considerations."  *Oracle*, 2012 WL 850705, at *10.  "In the real world, a consumer is faced with many features when making a decision to purchase, not artificially focused on a particular feature."  *Id.*

Dr. Hauser's failure to include important factors and product features in his surveys is not a "technical detail," as Apple suggests (Opp. 5:16-17), but rather a ***major design flaw*** that renders his surveys unreliable.  Although Apple devotes substantial space (Opp. 5-8) to defending the number of features tested, it misses the point: the problem with Dr. Hauser's surveys is that they fail to include *important* factors that influence purchasing decisions (such as battery life) while testing very *minor* features (such as a particular version of autocorrect).  Requiring survey respondents to choose smartphones and tablets based on the absence or presence of *minor* features cannot recreate consumers' actual purchasing processes.[2]  As in *Oracle*, Hauser's design "forced participants to focus on the patented functionalities, warping what would have been their real-world considerations."  *Oracle*, 2012 WL 850705, at *10.

Apple's response (Opp. 6:16-17) that conjoint methodology limits the number of features that can be tested simply proves Samsung's point: *conjoint analysis is not properly employed with complex products such as smartphones that contain a multitude of features*.[3]  Such survey results cannot reliably predict the number of consumers who would alter their purchasing decisions if particular features were removed.

Finally, like Oracle's expert, Dr. Hauser had "no reasonable criteria for choosing" the distraction features he decided to test.  *Oracle*, 2012 WL 850705, at *10.  He merely made some "guesses" and "judgments based upon what we found out there that these studies – these distraction features would be of some reasonable importance."  (Hauser Dep. Tr. at 79:11-81:12,

---

[2] Indeed, as Samsung's expert Dr. Tülin Erdem explained in her report (which Apple has not challenged) consumers faced with such complex choice exercises employ heuristics that preclude consideration of any features on this level. (Erdem Rpt. ¶¶ 56-63, Fazio Dec. Ex. B.)

[3] *See* Reibstein Rpt. ¶¶ 205-223, Fazio Dec. Ex. C.

Fazio Dec. Ex. D.)[4]  Apple ignores this criticism, providing an independent basis for exclusion.

### 3. Apple Has Adduced No Authority Supporting Its Use Of Hauser's Conjoint Survey

Not only is Apple's use of the conjoint surveys here squarely contrary to *Oracle*, it finds no support in any of the authorities upon which Apple relies.  In the only two patent cases Apple cites (Opp. 5), the expert sponsoring the conjoint analysis relied on "willingness to pay" calculations—*not* "willingness to buy" calculations like those at issue here.  *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1021 (N.D. Cal. 2013) (conjoint analysis used to calculate willingness to pay values that plaintiff's damages expert "used as a baseline . . . in his calculation of a reasonable royalty rate"); *Microsoft Corp. v Motorola, Inc.*, 904 F. Supp. 2d 1109, 1119-20 (W.D. Wash. 2012); *see* Microsoft's Rule 702 Motion [Redacted Version], Case No. C10-1823-JLR, Dkt. 395, dated Aug. 27, 2012, at 24, Fazio Dec. Ex. E (defendant's conjoint survey "attempted to determine how much the respondents would be willing to pay" for the patented features).  Those cases are inapposite because "willingness to pay" and "willingness to buy" involve different methodologies that purport to measure different things.  As the Court has previously recognized, "willingness to pay" measures "the price premium over the base price Samsung consumers are willing to pay for the patented features," but does not reflect the impact a tested feature's absence would have on whether a consumer would purchase the product.  *Apple v. Samsung I*, Dkt. 2197, at 11, Fazio Dec. Ex. F.  Thus, Apple's "willingness to pay" cases do not involve an effort to calculate diminished sales—which is what Dr. Hauser's "willingness to buy" calculations purport to do.  (Dkt. 802-7, Hauser Rpt. ¶ 121 ███████████████████████████████████████████████████████████████████████████████████████████ ).)  Accordingly, cases allowing a "willingness to pay" analysis have no bearing here.[5]

---

[4] ███████████████████████████████████████████████████████████████████████████████████████████

[5]  The remaining cases upon which Apple relies (Opp. 5) are also inapposite.  *Schwab v.* (footnote continued)

1    Apple's reliance (Opp. 3) on "published literature" to support its damages methodology is
2 likewise misplaced, as neither article involves using a conjoint survey to value minor features in a
3 complex device, much less for the purpose of calculating patent infringement damages.
4 Specifically, that a conjoint analysis might be useful to show that "price increases" "can have a
5 negative impact on demand" for a simple product like a car battery does not support using such an
6 analysis for features much less significant than price for products far more complex than car
7 batteries.  (Opp. 3:17-19 (citing Dkt. 859-15, K. Jedidi and Z. Zhang, *Augmenting Conjoint*
8 *Analysis to Estimate Consumer Reservation Price,* 48 Mgmt. Sci. 10, 1350 (2002).)  In any event,
9 the cited article addresses a methodology to "examine the *market share impact* of a product's
10 price" (*id.* at 1352 (emphasis added))—making clear that, contrary to *Oracle*, Apple *is* relying on
11 Hauser's conjoint surveys to calculate changes in market share.

12    Apple is also wrong to rely on a second article for the proposition that a "no choice" (or
13 "outside") option enables a conjoint survey to offer insight into the market impact of varying an
14 attribute.  (Opp. 3:13-17 (citing Dkt. 859-19, Sawtooth Software, Inc., *The CBC System for*
15 *Choice-Based Conjoint Analysis* (Version 8 2013).)  Samsung does not dispute that a conjoint
16 survey without a "no choice" option cannot measure relative demand for a product as compared to
17 competitive products.  But that does not help Apple here, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮   (*See* Mot. 11:14-12:12.)  Nor does the existence of a "no choice" option cure the
20 shortcomings of the conjoint analysis when applied to a complex product like a smartphone, as
21 noted by Judge Alsup in *Oracle*, 2012 WL 850705 at *10-11, and recognized in the very article

22 ———————————————————————

23 *Philip Morris*, 449 F. Supp. 2d 992 (E.D.N.Y. 2006), is not a patent case and did not involve any "willingness to buy" calculations.  Instead, the "willingness to pay" calculations were intended to
24 provide "insight on the price discount that would be needed to sell a cigarette with perceived health risks greater than regular cigarettes."  *Id.* at 1168-69 (alterations omitted).  And the three
25 other cases do not even involve conjoint surveys.  *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1036-38 (9th Cir. 2010) (non-conjoint survey conducted
26 to support likelihood of confusion element in trademark infringement case); *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1262-64 (9th Cir. 2001) (non-conjoint survey evidence offered in
27 trade dress infringement action); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142-43 (9th Cir. 1997) (non-conjoint survey conducted to gauge consumers reactions to advertisements
28 in Lanham Act false advertising case).

Apple cites (Dkt. 859-19, *CBC System for Choice-Based Conjoint Analysis*, 13 (acknowledging "problems" with using CBC where "the number of attributes is very large").)

Apple is left without a single authority, legal or otherwise, supporting the use of the damages methodology it employs here.

### B. Dr. Hauser's Materially Overbroad Descriptions Of The Patented Features Provide An Additional Basis For Exclusion Of His Conjoint Surveys

The surveys should further be excluded due to Dr. Hauser's overbroad descriptions of the patented features. Apple makes no meaningful effort to defend those descriptions—and fails to respond to Samsung's specific critiques of them (*see* Mot. 8:2-9:17)[6]—instead merely asserting, without explanation, that Samsung's "technical" arguments are "baseless" and that "such granular criticisms go to weight and not admissibility." (Opp. 8:3-10.) Neither argument has merit.

*First*, the survey's expansive treatment of the '414 patent is illustrative. Apple glosses over Dr. Hauser's failure to account for the limited value of claim 20 of the '414 patent, arguing that "all that claim 20 adds is *one discrete limitation* to claim 11 that does not in any way require separate survey questions." (Opp. 9:15-16 (emphasis added).) This is a new interpretation of claim 20, in stark contrast to Apple's prior representations that claim 20, unlike claim 11, requires three distinct data classes synced by three distinct software components, which together form a "plug-in architecture" where each component "provides its own [] thread[]." (*See*, *e.g.*, Snoeren Rebuttal Rpt. ¶¶ 416, 449, 493, Fazio Dec. Ex. G; Apple's Opp. to Samsung's MSJ at 8:14-26, Dkt. No. 853-4.)

In any event, Dr. Hauser's survey did not seek to value or address *any* limitation of claim 20 under *any* interpretation. Instead, it addressed only a single data class (contacts) and described the broad feature of the '414 patent (so-called "background synchronization") with, at best, only a single limitation of *claim 11* explained (concurrent thread execution). (Dkt. No. 853-4; Dkt. 859-1, Hauser Rpt. ¶¶ 42-43, 74.) But claim 20—not claim 11—is asserted for infringement. Dr. Hauser's survey made no attempt to test the basic value of what Apple now characterizes as claim

---

[6] Apple also fails to defend Dr. Vellturo's use of ███████████████████████████████████████████████████ (Mot. 10:1-4.)

20's "*one discrete limitation*": synchronizing *three* different data classes (like contacts, calendar, and email) with *three* separate components.

Moreover, Apple's technical experts admit "background synchronization" for *one* data class, or even *two* data classes, could never infringe claim 20.[7] Yet Dr. Hauser told consumers that without the surveyed feature, *no* background synchronization could *ever* happen for even *one* data class, like contacts.[8] Dr. Hauser was either testing for claim 11, or was significantly overstating claim 20's footprint. Either way, the results are unreliable.[9]

*Second*, Apple's argument that Samsung's criticisms go to weight, not admissibility, is directly opposed to the position it took very recently in the Central District in another patent case. Less than a month ago, Apple obtained an exclusion order of damages survey evidence because the survey descriptions were broader than the patents-in-suit. *NetAirus Techs., LLC v. Apple*, *Inc.*, Case No. LA CV10-03257, Dkt. No. 524, Order Re Apple's Mtn. to Exclude (C.D. Cal. Oct. 23, 2013), Fazio Dec. Ex. I. In that case, NetAirus had two experts "conduct surveys regarding consumer use of the accused iPhone products." *Id.* at 1. Apple argued the survey question "designed to assign some value" to the patented feature "broadened the focus" to valuing a much larger attribute. *Id.* at 4-5. The district court agreed, ruling the surveys inadmissible because they

---

[7] *See, e.g.*, Snoeren Rebuttal Rpt. ¶¶ 416, Fazio Dec. Ex. G ("Claim 20 requires *at least three* synchronization software components: one configured to synchronize data for a first data class, and at least two other synchronization software components each configured to synchronize data of other corresponding data classes."), 493 ("claim 20 requires *at least three* distinct synchronization software components each of which provides its own synchronization processing thread(s) to synchronize a corresponding data class.") (emphases added).

[8] *See* Dkt. 859-1, Hauser Rpt. ¶ 74 ("Without this feature, you would have to wait to use an app, for example the contacts app, while the data for the app is synchronizing with a remote computer, and that wait may be long or short.") Thus, Dr. Hauser told consumers not even *one* app – like contacts – could background sync even *one* kind of data without "this feature."

[9] It is no answer for Apple to argue that the differences between claims 20 and 11 are "technical." (Opp. 8:4.) Of course they are technical; this is a patent case concerning complex products, and the technical differences matter. (*See, e.g.*, Snoeren Dep. Tr. 265:23-266:17, 269:7-23, Fazio Dec. Ex. H ███████████████████████████████████████████████████ ; *id.* at 277:13-278:12 ███████████████████████████████████████████████████ ).) And to the extent such additional detail would be confusing to the survey respondents (*see* Opp. 8:19-22), that only proves the impropriety of using a conjoint survey in this context.

sought "to value something that is significantly broader than the claimed invention without adequate justification." *Id.* at 5.  Other courts have likewise excluded survey evidence that tested more than the patented features.  *See, e.g.*, *Fractus, S.A. v. Samsung*, 2011 WL 7563820, *1 (E.D. Tex. Apr. 29, 2011) (excluding survey evidence that "attempt[ed] to quantify the estimated value of consumer preference for internal antennas in cell phones" even though the patents-in-suit "do not cover[] all internal cell phone antenna designs" but merely "one type of internal antenna," finding that "the surveys do not measure the value of Plaintiff's technology, but merely measure the perceived consumer value of cell phones with any internal antennas" and that such survey evidence that is "not tied directly to Plaintiff's technology confuses the issues and must be excluded").  This Court should do so too.

### C. Apple's Damages Calculations Should Be Excluded For The Independent Reason That They Conflict With The Undisputed Facts

Apple also fails to rebut Samsung's showing that Apple's damages methodology ignores real world objective evidence in favor of results derived from its flawed conjoint survey.  (Mot. 10-11, 14-15.)  And Apple concedes by its silence that an expert's reliance on counter-factual assumptions and willful blindness toward contradictory relevant information is grounds for exclusion of his testimony.  Three examples:

*First,* Apple ignores Samsung's argument (Mot. 10:20-11:3) that in the Motorola litigation Apple advocated per unit reasonable royalty numbers for the '647 patent ▬▬▬▬ than those Dr. Vellturo offers here for the *same* patent.  This unexplained inconsistency renders Hauser's conjoint analysis (and Dr. Vellturo's use of it) unreliable.

*Second*, Dr. Vellturo's analysis disregards both the HTC license[10] (▬▬▬▬

---

[10]   The Court's recent Order in NDCA I regarding the admissibility of the HTC license is not determinative of the relevance of the HTC license in this case for several reasons.  *Apple v. Samsung I,* Dkt. 2667, Fazio Dec. Ex. J.  *First*, the Court's procedural limitations for the NDCA I retrial are not applicable here.  Instead, Samsung has raised the HTC license in the *Daubert* context as part of Samsung's broader argument that Dr. Vellturo's opinion is unreliable because he failed to consider ▬▬▬▬
▬▬▬▬
▬▬▬▬  *Compare* Davis Rpt. ¶ 193, Fazio Dec. Ex. K ▬▬▬▬ *with* Vellturo Rpt. ¶ 332, Fazio Dec. Ex. L; Chevalier Rpt. ¶¶ 291-292, Fazio Dec. Ex. M (June 2011-December 2011 negotiation
     (footnote continued)

██████████████████████████████████████████████ and Apple's offer to Samsung ████████████████████████████████████████

████████████ In fact, his analysis fails to account for any smartphone patent license. (*See* Dkt. No. 856-3, Samsung's Opp. to Apple's *Daubert* at 1:8-10.) This refusal to consider relevant evidence served to inflate the reasonably royalty calculation and deprives it of any reliability. *See, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79-80 (Fed. Cir. 2012).

*Third*, Apple offers (Opp. 14:7-13) no meaningful response to Samsung's showing (Mot. 15:5-15 & n.26) that Dr. Vellturo ignored substantial evidence—including Apple's own public statements—contradicting his opinion that Apple had sufficient capacity to manufacture the additional units it claims it would have sold. This willful disregard of undisputed facts—particularly facts relevant to a *Panduit* factor—further supports excluding Dr. Vellturo's opinion.

### D. *Georgia Pacific* Does Not Permit Apple To Backdoor Lost Profits In The Form Of A Reasonable Royalty

Apple denies (Opp. 15:7-17) that its reasonable royalty analysis is an impermissible attempt to recover lost profits by noting that *Georgia-Pacific* allows consideration of anticipated lost profits. But, as Samsung explained (Mot. 12:16-23), Dr. Vellturo did not simply consider that Apple might have lost profits by licensing the patents—he abdicated the proper expert function by simply setting a floor "price" that Apple would accept, which he determined to be the lost profits that he predicted Apple would lose as a result of Samsung practicing the patents at issue.

### E. The Court's Recent Ruling Confirms Dr. Vellturo's Opinions On Lost Profit Damages In The Post-Notice Design Around Periods Should Be Excluded

Apple's efforts (Opp. 12-14) to justify Dr. Vellturo's design-around period for his lost profits calculation are contrary to the Court's recent ruling in NDCA I that, as a matter of law, the design-around period must commence on the date of the first infringement, not on the notice date. *See Apple v. Samsung I*, Dkt. 2660, at 2, Fazio Dec. Ex. N ("the Court concludes that Samsung's position that potential design arounds must be considered beginning on the date of first infringement is correct as a matter of law.") Accordingly, Dr. Vellturo's opinions on lost profit

---

date).) Third, there are no design patents at issue here, which alters the comparability analysis.

1  damages in the post-notice design around periods must be excluded.

2  Apple's footnoted request (Opp. 14 n.14) that Dr. Vellturo be permitted to submit a revised
3  lost profits analysis is improper and untimely.  Dr. Vellturo had the opportunity to calculate an
4  alternative design around period in his opening report but chose not to do so.  This Court has
5  previously rejected Apple's belated attempt to offer alternative design around periods not
6  disclosed in an opening report, and it should do so again here.  *See Apple v. Samsung I*, Dkt. 1690
7  at 2, Fazio Dec. Ex. O (excluding Apple's alternative notice theory because "Mr. Musika did not
8  discuss a two notice period theory, calculate damages based on the alternative theory, or otherwise
9  disclose the assumptions and analysis that he intended to rely on to calculate this alternative theory
10 of damages.").

11 **II.    DR. MOWRY'S UNRELIABLE OPINIONS SHOULD BE EXCLUDED**

12 Apple's Opposition is notable only for what Apple does not say: Apple barely attempts to
13 address or explain the multitude of inconsistently applied constructions documented in Samsung's
14 Opening Motion.  Apple's primary response is that Dr. Mowry's inconsistent approach is a matter
15 for cross-examination.  But Dr. Mowry has failed to apply basic claim construction principles; his
16 opinions are unreliable and should be excluded.  *See Oxford Gene Tech. Ltd. vs. Mergen Ltd.*, 345
17 F. Supp. 2d 431 (D. Del. 2004).

18
   **A.    Apple Does Not Explain Dr. Mowry's Inconsistent Testimony, Or Justify Dr.
19           Mowry's Inconsistent Claim Constructions**

20 Most conspicuously absent from Apple's Opposition is any explanation of the fact that, at
21 his recent deposition, [REDACTED]
22 [REDACTED] Apple's lack of response is not surprising given
23 the impossibility of explaining changes that, as documented in the charts in Samsung's motion,
24 amount to a substantive change of Dr. Mowry's positions in the PI phase.  Nor does Apple attempt
25 to show that Dr. Mowry disclosed any analysis in his infringement report for the claim
26 requirements he used to distinguish prior art.  (*See* Mot. 18-19.)  No such showing is possible: Dr.
27 Mowry relied on a set of highly technical, restrictive definitions of the claim language which he
28 applies to the prior art but *not* the Accused Products.

For the few limitations it addresses, Apple insists that the Accused Products meet Dr. Mowry's restrictive definitions—without pointing to any analysis in Dr. Mowry's report—and claims it does not matter if Dr. Mowry did not disclose his analysis. (*See, e.g.*, Opp. 18 ("There is no dispute that Samsung's accused devices satisfy this interpretation").) Apple misses the point: analysis of whether or not the products meet the limitations is what an infringement report is supposed to disclose. Dr. Mowry offers no such disclosure, as Apple implicitly admits by failing to cite any analysis, relying instead on attorney say-so. For instance, Apple suggests Dr. Mowry disclosed infringement analysis relating to the "set of detected structures," "semantic significance," and "multiple types of structures" restrictions he applied to the prior art. (Opp. 18.) But Apple merely cites discussion of *facts* that *Apple's attorneys now* claim meet these limitations; Dr. Mowry did not analyze these facts as they relate to the undisclosed restrictions.

The remainder of Apple's Opposition consists of unsupported claims that Dr. Mowry offered his numerous, inconsistently-applied claim constructions in response to Dr. Jeffay's report. *Id*. None of Dr. Mowry's restrictive interpretations, however, have any relationship to Dr. Jeffay's report. For instance, Apple claims that "[t]he first time Samsung argued the claims do not require multiple types of structures was in Dr. Jeffay's opening report (to which Dr. Mowry's rebuttal report properly responded.)". (Opp. 18:3-10.) But Dr. Mowry offered this restrictive position himself *during the PI phase* to distinguish prior art—long before Dr. Jeffay served his report here. (Dkt. 177, Mowry PI Reply ¶ 27 (distinguishing Nokia reference on these grounds); *id*. at ¶¶ 224, 229 (same); *id*. at ¶¶ 28, 135 (same argument regarding Sidekick).)[11]  Apple also suggests Dr. Mowry first provided his opinion that a detected structure be chosen from a set of detected structures only in response to Dr. Jeffay. (Opp. 18:10-16.) But again, Dr. Mowry opined this was a restriction in his PI Declaration—not in response to anything Dr. Jeffay said in his Opening Report.[12] (Dkt. 177, Mowry PI Reply ¶¶ 140-141, 217.)

---

[11] 

[12]  Apple's argument regarding "semantic significance" is similarly disingenuous. Apple (footnote continued)

███████████████████████████████████ Dr. Mowry relied on these restrictive constructions well before submitting his opening infringement report, but chose to ignore them and simply save them for the rebuttal report.

This would not be the first time a court struck Dr. Mowry's opinions. On November 12, 2013, Apple produced to Samsung an errata from Dr. Mowry's deposition in the *Apple v. Motorola* case that was, for whatever reason, not produced earlier. (APLNDC630-0001914460, Fazio Dec. Ex. P .) Incredibly, via that errata, Dr. Mowry sought to ████████████████████ ████████████████████████████ submitted two months after testifying and less than a week before trial:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Unsurprisingly, Judge Posner found that Dr. Mowry's new "declaration" did not consist of "proper corrections" and struck them from the record. *Apple Inc. v. Motorola, Inc.*, Case No. 11-cv-8540, Dkt. No. 1049, Transcript, (N.D. Ill. June 7, 2012), Fazio Dec. Ex. R. Dr. Mowry's attempt to correct ██████████ his deposition testimony, on the eve of trial, shows that the inconsistencies and changes in Dr. Mowry's opinions here are not isolated incidents but part of a pattern of bad faith, and good cause to preclude Dr. Mowry from testifying.

### B. Dr. Mowry Made Affirmative Misrepresentations About His Inconsistent Interpretations

By failing to address the inconsistencies in Dr. Mowry's opinion in any meaningful way, Apple acknowledges that there are inconsistencies ("real or perceived") in Dr. Mowry's opinions. But Apple asks the Court to allow Dr. Mowry to take the stand regardless, because Apple argues that what Dr. Mowry has done is a matter for cross-examination. (Opp. 19.) As detailed above, Dr. Mowry has demonstrated his willingness to change his sworn testimony when it suits his

---

claims Dr. Mowry stated his opinion that "structures" must be semantically significant in his Opening Report—yet Apple cites to a portion of Dr. Mowry's report discussing the file history of the '647 patent, not infringement. (Dkt. 859-22, Mowry Rep. ¶ 77.)

needs. The scope of the inconsistencies here—and Dr. Mowry's willingness to dissemble about them—is far beyond the "somewhat different" application of a single claim term at issue in *HTC Corp. v. Tech. Props. Ltd.*, 2013 WL 4782598, at *4 (N.D. Cal. Sept. 6, 2013).

Similarly, *Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc.*, 2010 WL 1930569 at *6 (N.D.N.Y. May 11, 2010) is instructive of the differences between Dr. Mowry's approach and what is required to render an opinion admissible. In *Advanced Fiber*, while the narrative portions of an expert's report lacked a full analysis of certain arguments, that full analysis was included in attached charts. Here in contrast, though Apple argues that Dr. Mowry's "infringement report and accompanying claim charts contain hundreds of pages of analysis" (Opp. 18), Apple only points to twelve paragraphs covering only three of the multitude of restrictive limitations documented in Samsung's Opening motion. None of these paragraphs show Dr. Mowry applying his restrictive limitations—they just contain facts Apple alleges support those restrictive limitations. (*See id.* (citing Dkt. 859-22, ¶¶ 77, 134-137, 147, 194-197, 326, 364).)

### C. Apple's Opposition To Samsung's Summary Judgment Motion Demonstrates The Severity Of The Issue

Apple points to its Opposition to Samsung's Summary Judgment Motion as an explanation for Dr. Mowry's changed testimony on certain claim interpretation issues. (Opp. 18-19.) But the only explanation offered is Apple's claim that "no party asserts that the claims actually require a set of detected structures." *Id.* Yet that is ***precisely*** what Dr. Mowry asserted during the PI phase. (*See, e.g.,* Dkt. 177, Mowry PI Reply ¶ 140.) Apple wants, on the one hand, for its expert to testify with impunity about highly restrictive interpretations when addressing the prior art, while ignoring those interpretations for purposes of infringement. That is not a proper application of the claims to the facts. Dr. Mowry should be precluded from testifying at trial.

### III. DR. SNOEREN'S *IPSE DIXIT* ASSERTIONS REGARDING APPLE'S ALLEGED PRACTICE OF THE '414 PATENT SHOULD BE EXCLUDED

Dr. Snoeren's claim that Apple practices the '414 patent is supported by nothing other than his *ipse dixit* as an expert. Apple identifies no analysis that would let the jury evaluate Dr. Snoeren's conclusions. In these situations, the law is clear: Dr. Snoeren's conclusory assertions

fail the *Daubert* standard and should be excluded.  (Mot. 21:6-21.)

First, Apple argues Dr. Snoeren's opinion is "based on a thorough analysis of the requirements of claim 11 that itself spanned 20 paragraphs," identifying ¶¶ 383-403 of his opening report.  (Opp. 20:11-12.)  But these paragraphs are *pure claim construction*; they contain no analysis of Apple's products, or how those products supposedly practice claim 11.  (*See* Dkt. 859-26, Snoeren Rpt. ¶¶ 383-403.)

Second, Apple says Dr. Snoeren "analyzed the pertinent portions of the iOS source code and Apple developer documents and expressly cited to that evidence in his report," identifying ¶¶ 525, 528.  (Opp. 20:13-16.)  Again, Apple points to no analysis. ███████████████████████████████████████████████████████████████████████████ (*See* Dkt. 807-12, Snoeren Rpt. ¶¶ 525-528.)

Third, Apple argues the named inventor's testimony regarding ████████████ ████ should somehow save Dr. Snoeren's opinions regarding ██████ (Opp. 20:22-21:1.)  Again, this misses the mark.  Dr. Snoeren did not analyze or even *cite* this fact testimony to support his opinions on Apple's practice of claim 11.[14]  Nor would it have mattered; this testimony concerned ████████████ (Dkt. 859-25, Freedman Dep. Tr. 81:16-21; 190:16-191:15; 216:20-218:11.)  The inventor's *fact* opinions are no substitute for analysis by Dr. Snoeren, and they do not qualify Dr. Snoeren to give *expert* opinion under Rule 702.

Finally, Apple claims Dr. Snoeren "calls out particulars of Apple's implementation" ██████████████████████████████████████████████████████████████████████████████ ██████ But this supports only one thing: ██████████████████████████ ████████████████████████████████████████████████████████

---

[13]   Dr. Snoeren cites two web pages in ¶ 528, regarding Address Book in iOS 4.0 and Calendar in iOS version 5.0.  But ████████████████████████████████████████ ████████████████████████████ Dr. Snoeren does not explain how these web pages are relevant to ████████ perhaps because they refer to functionality "deprecated" in iOS versions 6.0 and later.  In any event, these web pages never mention "threads" or "synchronization" at all, and Dr. Snoeren makes no attempt to tie their disclosures to the asserted claim limitations.  (APLNDC630-0001911803, Fazio Dec. Ex. S; APLNDC603-0001911812, Fazio Dec. Ex. T .)

[14]   Apple's opposition tellingly cites no analysis Dr. Snoeren offered based on the inventor's testimony – indeed, Apple only points generally to the list of materials considered for Dr. Snoeren's report, which includes one line listing the inventor's deposition.  (Opp. 20:26-28.)

██████████ Claim 11 requires far more than a ██████ as Apple argues vigorously. (*See* Dkt. 853-04, Apple SJ Opp. 10:20-11:7.) Dr. Snoeren's claim that ████████████████████████████████████████████████████████████████████████████ is the epitome of *ipse dixit* analysis.

## IV.  DR. STORER'S '239 AND '449 OPINIONS SHOULD BE EXCLUDED[15]

Dr. Storer did not "explain[] in detail" his understanding of plain meaning of the '449 patent claim limitations. (Opp. 22-23.) Rather, ████████████████████████████████████████████████████████████████████████████ And contrary to Apple's claims, Samsung is not seeking "precise definitions" for every claim term. Samsung is simply seeking a coherent basis for Dr. Storer's opinions, including his non-infringement opinions regarding "device," "list," "search," and "classifications." Finally, Dr. Storer's constructions do not "repeat almost verbatim the non-infringement positions Apple articulated in its non-infringement contentions." A comparison of Dr. Storer's deposition testimony with Apple's interrogatory responses demonstrates this is not true.

Apple's opposition confirms the fact that Dr. Storer re-construed terms in the '239 patent that were already construed by the Court. (Opp. 23-25.) Tellingly, in defending Dr. Storer's constructions, Apple itself provides detailed, limiting definitions for the terms "port," "file," "audio and video capture cards," and "composite signal." For example, Apple now claims that a "port" must be a physical as opposed to a logical port despite having no basis to import that limitation into the Court's construction.

Finally, Apple claims that Dr. Storer "clarified" the Court's definition of "modem." But Dr. Storer's deposition testimony clearly shows that he failed to recognize and apply the Court's definition for this term. That mistake renders his opinion unreliable on its face.

---

[15] Apple complains Samsung circumvented the Court's page limits. But Exhibit TT shows the *facts* that support Samsung's arguments in its brief. There is no argument, which is what the Court found objectionable in the *Think Village-Kiwi* case cited by Apple. The "Reason Unreliable" column simply shows which argument in the brief applies to that claim limitation.

1  DATED: November 14, 2013           QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3                                      By */s/ Victoria F. Maroulis*
                                           Charles K. Verhoeven
4                                          Kevin P.B. Johnson
                                           Victoria F. Maroulis
5                                          William C. Price
                                           Michael L. Fazio
6
                                           Attorneys for
7                                          SAMSUNG ELECTRONICS CO., LTD.,
                                           SAMSUNG ELECTRONICS AMERICA, INC.,
8                                          and SAMSUNG TELECOMMUNICATIONS
                                           AMERICA, LLC
9

10

11                           **GENERAL ORDER ATTESTATION**

12       I, Michael L. Fazio, am the ECF User whose ID and password are being used to file this

13  Declaration. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Victoria F.

14  Maroulis has concurred in this filing.

15

16  Dated: November 14, 2013              By: */s/ Michael L. Fazio*
                                              Michael L. Fazio
17

18

19

20

21

22

23

24

25

26

27

28