# EXHIBIT I

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | October 23, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**  (IN CHAMBERS) ORDER RE APPLE'S MOTION TO EXCLUDE THE SURVEYS, EXPERT REPORTS, AND OPINIONS OF HOWARD MARYLANDER AND JAMES BERGER AND REFERENCES THERETO BY JOSEPH GEMINI (DKT. 424)

## I.  INTRODUCTION

Plaintiff NetAirus Technologies, LLC ("NetAirus" or "Plaintiff") contends that Defendant Apple, Inc. ("Apple" or "Defendant") infringes U.S. Patent No. 7,103,380 (the "'380 Patent"). The '380 Patent claims methods whereby, *inter alia*, a "handset unit [ ] configured to a personal digital assistant (PDA)" wirelessly communicates over both a local area network ("LAN") and a wide area network ("WAN"). Apple asserts that the '380 Patent is invalid and that its products do not infringe. Trial is set for November 5, 2013. Apple filed a *Daubert* Motion Exclude The Surveys, Expert Reports, and Opinions Of Howard Marylander and James Berger and References Thereto by Joseph Gemini (the "Motion"). Dkt. 424. NetAirus opposed the Motion. Dkt. 438. A hearing on the Motion was conducted on October 21, 2013 at which the Court stated its tentative views, heard argument, and took the matter under submission. For the reasons stated in this Order, the Motion is GRANTED-IN-PART.[1]

## II.  BACKGROUND

During the course of this litigation, NetAirus retained two experts to conduct surveys regarding consumer use of the accused iPhone products. NetAirus's first survey expert, Howard Marylander, authored a report dated June 8, 2011 ("Marylander Report"). Decl. of Hannah Cannom in Supp. of Mot., ("Cannom Decl."), Dkt. 403 at ¶ 3. NetAirus's second survey expert, James T. Berger, authored a report dated July 31, 2013 ("Berger Report"), which NetAirus served on Apple on August 5, 2013. *Id*. at ¶6, Ex. E.

---

[1] Pursuant to the on-the-record discussion at the Final Pretrial Conference, which was held on October 21, 2013, Marylander will be authoring a brief supplement to his opinions based on recently-produced Apple surveys. NetAirus will serve that supplement no later than October 24, 2013, and Apple will depose Marylander concerning those supplemental opinions the following week. To the extent disputes arise with respect to the admissibility of any such supplemental opinions, they are to be raised with the Court prior to the November 1, 2013 hearing with respect to trial exhibits and other trial-related matters that remain in dispute. No supplemental opinions from Berger will be proffered.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | October 23, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

### III. ANALYSIS

#### A. Legal Standard

##### 1. Reliability Standard For Admission of Expert Testimony

"Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-92 (1993). Trial courts must conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. *Daubert*'s gatekeeping obligation applies to all expert testimony, not just "scientific" testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). In making a reliability determination, courts "scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendment).

The patentee bears the burden of proving damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "To properly carry this burden, the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (quoting *Daubert*, 509 U.S. at 591). "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852-856 (Fed. Cir. 2010) (citations omitted), *aff'd*, 131 S. Ct. 2238 (2011) (affirming admission of survey evidence over *Daubert* challenge). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

##### 2. Admissibility of Expert Opinion Without Live Testimony

Federal Rule of Civil Procedure 32(a)(1) provides that a deposition may be used against a party if:

> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
>
> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
>
> (C) the use is allowed by Rule 32(a)(2) through (8).

Federal Rule of Civil Procedure 32(a)(4)(B) provides that a party may use for any purpose the deposition of a witness, whether or not a party, if the court finds "that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-03257 JAK (Ex) | Date | October 23, 2013 |
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

procured by the party offering the deposition." Testimony properly admitted under Rule 32(a)(4)(B) need not also meet the requirements for admissibility set forth in Rule 804(b)(1). *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 914 (9th Cir. 2008) (citing Fed. R. Civ. P. 32 advisory committee's note explaining that new Rule 32(a) was intended to "eliminate[ ] the possibility of certain technical hearsay objections which are based, not on the contents of deponent's testimony, but on his absence from court").

      3.    <u>Disclosing Inadmissible Facts or Data to the Jury</u>

An expert may rely on inadmissible facts or data "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. . . . But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

    **A.**    **Application**

        1.    <u>Marylander's, Berger's, and Gemini's Assumption re the Satisfaction of the Claims' Transmission Power Level Limitations</u>

No portion of the Marylander and Berger surveys directly accounted for all of limitations of the asserted claims; specifically, the surveys did not ask consumers about the limitations concerning transmission power. Mot., Dkt. 424 at 3-4, 9-12. Apple argues that the failure to align the scope of the claimed invention with the scope of the features explored in the survey means that this case is on all fours with *Fractus, S.A. v. Samsung*, No. 6:09-cv-203-LED-JDL, 2011 WL 7563820 (E.D. Tex. Apr. 29, 2011). In *Fractus*, the plaintiff commissioned two surveys to value "incorporating internal antennas in cell phones in place of external antennas" and "the relative importance of internal antennas in cell phones to consumers." 2011 WL 7563820 at *1. The court excluded the surveys because they measured the value of something -- internal vs. external antennas – that was more broad than what was covered by the patents -- specific improvements to internal antennas. *Id*.

If considered in isolation, the Marylander and Berger surveys have the same defect as those that were excluded in *Fractus*. Neither Marylander nor Berger attempted to determine if consumers cared whether data formatted for computer email was sent to and from a local area network at a lower transmit power level than other data sent to a wide area network, as required by the asserted claims. However, NetAirus contends that the transmission power limitations are always met by iPhone 4 users. The Court has held that the nature of the transmission levels is a factual issue for the jury to determine. Order Granting-In-Part Apple, Inc.'s Motion In Limine No. 1, To Exclude Improper Opinion Testimony and Strike Expert Report of Thomas Blackburn, Dkt. 382-1 at 6-12.

NetAirus's experts are entitled to rely on NetAirus's version of the facts at this time:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-03257 JAK (Ex) | Date | October 23, 2013 |
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

Fed. R. Evid. 702 Advisory Committee Notes (2000 Amendment); *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003) (holding that expert's "testimony was not legally erroneous; it was merely based on [party's] version of the disputed facts."). Here, NetAirus has chosen not to attempt to value the transmit power limitation, and instead relies on the opinion of its technical expert that the limitation is always necessarily met. Should the jury reject that factual assertion in considering the damages evidence presented by NetAirus, then the surveys will be deemed flawed. But if the jury accepts NetAirus's technical evidence on transmit power levels, then the assumption in the Marylander, Berger, and Gemini reports that the transmit power requirements are met will be validated.

      2.      <u>Other Issues with the Marylander Survey</u>

Apple argues that only three of the questions in the Marylander survey have "even a vague relationship" to the claimed method, and that the others are general or background questions. Reply, Dkt. 490 at 2. This claim is not persuasive. Thus, the questions to which Apple objects appear to have been a key part of a careful study design intended to avoid bias in the answers provided.

The study was conducted on a nationally representative sample of respondents who had used a mobile phone in the past 30 days, who used an iPhone as their primary mobile device, and who sent or received emails on their iPhone in the past 90 days. However, data was also obtained from iPhone users who had not sent or received emails in the past 90 days to provide an overview of all iPhone users who had used their iPhones in the past 30 days. Marylander Report, Dkt. 403-2 at ¶ 10. Because it was determined that, as is usually the case in conducting such surveys, females were more likely than males to respond to the invitation to participate in the study, the invitations were sent to proportionately more males than females to obtain a representative sample. *Id.* at ¶12. After the survey respondents reported their demographic information, they were presented with a list of five types of electronic devices -- an approach intended to disguise the purpose of the study -- and asked whether they had used any of them in the past 30 days. *Id.* ¶ 18. Respondents who stated that they used a mobile phone within the past 30 days were told that they were randomly assigned to answer questions about their mobile phone use. The survey emphasized that it was acceptable for a respondent to say that he or she did not know the answer to a question. *Id.* at ¶ 19.

In the next step in the survey, Respondents were asked to select their phone type from a list of brands. By using this approach, it would not be apparent that the iPhone was the focus of the study. *Id.* at ¶ 20. They were then asked to estimate how often they used their iPhone for any purpose in the last 90 days, and then were presented a list of seven tasks, two of which were e-mail and FaceTime. *Id.* at ¶ 23. Those who reported email use were then asked whether they had connected to a Wi-Fi network in the past 90 days, whether they sent or received any emails via Wi-Fi in the past 90 days, and the number of emails they sent or received during that period. *Id.* at ¶ 24. Thus, the questions not directly pertinent to sending email via Wi-Fi were asked in order to enhance the reliability of the study.

In contrast to the questions designed to avoid suggesting an answer, the Marylander survey then asked a question "designed to assign some value to the Wi-Fi accessibility feature on the iPhone." *Id.* at ¶ 25. Thus, respondents were asked whether they would have preferred to pay $20 less for an iPhone without Wi-Fi capability or would have purchased their current phone at the price they paid." *Id.* This figure appears to have been selected without a sufficient factual basis: it was not in the first draft of Marylander's

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | October 23, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

survey, and was suggested by NetAirus's counsel. Aug. 16, 2011 Deposition of Howard Marylander, Cannom Decl., Dkt. 403 at ¶ 4, Ex. C. at 88:15-89:4. After having focused on email use while connected to Wi-Fi, this $20 question broadened the focus to valuing all Wi-Fi use on the iPhone. Doing so seeks to value something that is significantly broader than the claimed invention without adequate justification. *See Cornell University v. Hewlett-Packard Co.*, 609 F.Supp.2d 279 (N.D.N.Y 2009) (Rader, J.) (holding that a larger unit could not be used as measure of value of the invention, even though using smaller unit required estimations and hypothetical calculations because it had no listed price.).[2]

Because the $20 figure has no reliable basis and was tied in the survey to functionality far beyond the asserted claims, the Marylander Report's discussion of this amount is excluded. It is unreliable under the principles of *Daubert*. Thus, paragraph 25, the second sentence and third bullet point of paragraph 28, paragraph 33, and the second sentence and the third bullet point of paragraph 42 are excluded, as is any discussion of those paragraphs or the data, opinions, or conclusions expressed in them.

      3.      <u>Other Issues with the Berger Survey</u>

The Berger survey was not constructed in a reliable manner. This is in contrast to the Marylander survey. There was no effort made in connection with the Berger survey to shield participants from study goals. *See* Berger Rep., Dkt. 403-5 at NET8797-8800. The survey did not take measures to adjust for response rates to balance the gender of respondents. Berger Rep., Dkt. 403-5 at NET8774 (Berger survey population was 27% male and 73% female). "It is incumbent on the expert presenting the survey results to analyze the level and sources of nonresponse, and to assess how that nonresponse is likely to have affected the results." Reference Manual on Scientific Evidence 383 (3d ed. 2011). There is no showing that the Berger survey did so. As noted above, the Marylander survey did so effectively.

"In a carefully executed survey, each potential respondent is questioned or measured on the attributes that determine his or her eligibility to participate in the survey." Reference Manual on Scientific Evidence 386 (3d ed. 2011). Here, Berger included both iPhone 4 owners and prospective purchasers of the iPhone 4. Berger Rep., Dkt. 403-5 at NET8774. It is fundamentally flawed methodology to have asked prospective purchasers many of the questions posed that required present use of the iPhone 4, including:

- Why do you use the Apple iPhone4?
- Do you make use of Wi-Fi in conjunction with your Apple iPhone4?
- If your Apple iPhone4 could not connect to Wi-Fi networks, would you have purchased it?
- If your Apple iPhone4 cell phone could not connect to Wi-Fi networks, would you consider switching to another cellular telephone brand that could connect to Wi-Fi networks?

*Id.* at NET8774-8776 (emphasis added). Although issues of "methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions" can go to the weight accorded to the survey, that is only after a court has determined that the survey is "relevant and conducted according to

---

[2] Further, in asking respondents who already paid the $20 whether they would do so, the question invites confirmation bias, pursuant to which people tend to interpret evidence in a manner consistent with their previously-formed beliefs. See Andrew J. Wistrich & Jeffrey J. Rachlinski, *How Lawyers' Intuitions Prolong Litigation*, 86 S. Cal. L. Rev. 571, 595 (2013) (collecting studies on confirmation bias).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | October 23, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

accepted principles." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001). A survey that generates answers from respondents who have no basis to provide them is not one conducted according to accepted principles. Reference Manual on Scientific Evidence 386 (3d ed. 2011); *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1008 (N.D. Ill. 2010) *aff'd*, 412 F. App'x 304 (Fed. Cir. 2011) ("reliability of the survey is diminished if the universe of desired respondents is erroneous or undefined."). Further, those questions, and others, *e.g.,* "If you had to pay extra for Wi-Fi access to your Apple iPhone4 to connect to Wi-Fi networks would you pay the extra amount?," seek to value features that go beyond those circumscribed by the asserted claims. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1332 (Fed. Cir. 2009) (reversing damages award when claims covered "but a tiny feature of one part of a much larger software program" that was valued); *Fractus, S.A. v. Samsung*, No. 6:09-cv-203-LED-JDL, 2011 WL 7563820 (E.D. Tex. Apr. 29, 2011) (excluding surveys valuing feature that was broader than claims).[3]

For the foregoing reasons, Berger's testimony is excluded in its entirety.[4]

### 4. Gemini's Reliance on Marylander and Berger Surveys

Gemini may not testify about, or rely upon, portions of the Marylander and Berger surveys that have been excluded by this Order. Facts or data that are otherwise inadmissible, but that form the basis of the opinion of an expert, may be disclosed to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid 703. Here, the Court has concluded that the excluded material is inadmissible under rules of evidence, and unreliable under *Daubert*. Where "proposed testimony is based on the data collected from the survey . . . [t]he admissibility of the survey and experiment is therefore dispositive of the admissibility of the testimony itself." *Competitive Edge,* 763 F. Supp. 2d at 1007. For these reasons, Gemini will not be permitted to disclose any of the excluded facts or data to the jury.

---

[3] Apple also notes that in his eleven-page report, Berger made two significant misstatements concerning the data: (i) he reported that 66% of respondents said that they **would switch** to another brand if they couldn't connect to Wi-Fi, but the survey question was whether they would **consider** switching; and (ii) he stated that "other features showed various levels of importance but nothing came close to the Wi-Fi connectivity feature," when in fact, the contacts and calendar features ranked higher than the "sending e-mails using Wi-Fi connection feature." Mot., Dkt. 424 at 6 (citing Berger Rep., Dkt. 403-5 at NET8776, 8778). Berger admitted both of those mistakes at his deposition. *Id.* (citing Sept. 11, 2013 Berger Dep., Dkt, 403-6 at 11-12).

[4] Further, NetAirus served the Berger report on August 5, 2013. Cannom Decl. ¶ 6, Dkt, 403. General discovery had already closed at that time, but the court authorized "limited supplemental discovery necessary in light of the passage of time and the reexamination result" on April, 2013. Order Setting Schedule for Supplemental Discovery, Dkt. 311 at 4. Therefore, to have been timely, the Berger report must have been shown to have been "necessary in light of the passage of time and the reexamination result."   Because the iPhone 4 was studied in the Marylander survey, the Berger survey was not required for that purpose. The reexamination did result in the addition of the "configured to a PDA" limitation to the claims. Moreover, although the Berger survey asked respondents to rank the importance of various features, including contacts, calendars, notes, and reminders, it did not attempt to value any of those PDA features, but was instead designed to bolster the valuation of the Wi-Fi connectivity feature. Dkt. 403-5 at NET8777; Berger Dep., Dkt. 403-6 at 115:9-11 ("Q. And in this case what feature were you valuing? A. Wi-Fi connectivity primarily.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | October 23, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

      5.    <u>Using Marylander's Deposition Testimony in Lieu of Live Testimony</u>

NetAirus previously argued that Marylander's deposition testimony can be used in lieu of live testimony because he is "unavailable" as that term is used in Federal Rule of Civil Procedure 32(a)(4). But at the Final Pretrial Conference, NetAirus agreed that Marylander will testify live at trial. Accordingly, this issue is moot.

**IV.    CONCLUSION**

The Motion is GRANTED-IN-PART. The Court excludes the following portions of the Marylander report, as well as any discussion of the data, opinions, or conclusions expressed therein: paragraphs 25, the second sentence and third bullet point of paragraph 28, paragraph 33, the second sentence and the third bullet point of paragraph 42. The Berger report is excluded in its entirety. Gemini is prohibited from testifying about excluded portions of the Marylander report and prohibited from testifying about the Berger report in its entirety. Marylander must testify in person, if at all.

**IT IS SO ORDERED.**

                                                              :

Initials of Preparer   ak