# EXHIBIT N

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　　Defendants. | Case No.: 11-CV-01846-LHK<br><br>ORDER RE: DESIGN AROUND START DATES |

As part of its Motion to Strike Portions of Julie Davis's Expert Report, Samsung moves to strike Apple damages expert's, Julie Davis's ("Davis"), lost profits damages calculations to the extent they are based on an assumption that Samsung would have first attempted to develop noninfringing alternatives to, or to "design around," Apple's patents only upon receiving actual notice of infringement. ECF No. 2386 at 1-4. Samsung argues that a lost profits damages analysis must, as a matter of law, take into account any actions an infringer could have taken to design around the infringed patents starting on the date of first infringement and not on some later date, such as the date the infringer first receives notice of infringement. *Id.* at 3-4.[1] Apple opposes

---

[1] Samsung also contends that Davis's lost profits calculations based on design around periods beginning on the date of first notice are improper because they diverge from the lost profits

1
Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

Samsung's Motion on the grounds that the date on which to begin considering design arounds is a question of fact, not law, and that Davis's decision to begin considering design arounds on the date of first notice is, in any event, the more logical choice. *See* ECF No. 2407-3 at 2-4.

The Court heard argument concerning the appropriate date on which to begin considering potential design arounds in a lost profits analysis on October 10 and 17, 2013. *See* ("Oct. 10 Hr'g Tr.") ECF No. 2535 at 124:12-136:20; ("Oct. 17 Hr'g Tr.") ECF No. 2562 at 144:20-159:25. Following the October 17 Pretrial Conference, the Court ordered Apple to file an additional statement setting forth "its argument for why Davis should be permitted to present to the jury lost profits calculations based on design around periods that begin on the date of first notice and not of first infringement." ECF No. 2552 at 5. Apple filed its statement on October 21, 2013. ECF No. 2569. Samsung filed its response on October 25, 2013. ECF No. 2598. Having considered the submissions and oral arguments of the parties, the relevant law, and the record in this case, the Court concludes that Samsung's position that potential design arounds must be considered beginning on the date of first infringement is correct as a matter of law. Accordingly, for the reasons discussed below, the Court GRANTS Samsung's Motion to Strike Portions of Davis's Expert Report insofar as it relates to Davis's lost profits calculations that assume design around periods beginning on the date of first notice.

**I. WHETHER AN INFRINGER WOULD HAVE DEVELOPED AN ACCEPTABLE NONINFRINGING SUBSTITUTE FOR—*I.E.*, "DESIGNED AROUND"—THE PATENTEE'S INTELLECTUAL PROPERTY SHOULD BE CONSIDERED STARTING ON THE DATE OF FIRST INFRINGEMENT.**

A. *Grain Processing*

The Federal Circuit's opinion in *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999), is the starting point for the parties' dispute over whether a lost profits damages analysis must take into account the actions an infringer could have taken to design around the infringed patents starting at the point of first infringement (as opposed to the date of

---

methodology employed by Apple's original damages expert, Terry Musika, in his 2012 expert reports, and because the Court previously struck similar lost profits calculations on grounds of untimely disclosure at the 2012 trial. *See* ECF Nos. 2386 at 1-3; 2598 at 1-2. Because the Court concludes that Samsung's legal argument is correct, it will not address whether Davis's lost profits calculations are improper under either of these additional theories.

2

Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

first notice, or any other date). Samsung contends that *Grain Processing* establishes that any lost profits analysis requires reconstruction of a hypothetical "but for" world that would have existed had the infringer never infringed, and that an accurate reconstruction of this "but for" world requires one to consider the actions an infringer would have taken to avoid infringement starting on the date of first infringement. *See* ECF Nos. 2386 at 3; 2432 at 1-2; 2598 at 2-3. Apple, by contrast, asserts that *Grain Processing* establishes no such rule and actually supports Apple's own arguments that: (1) the proper start date for a design around period in a lost profits analysis is a question of fact, and (2) the most logical starting point for a design around period is the start of the "accounting period" for which the patentee seeks damages. *See* ECF Nos. 2407-3 at 3; 2569 at 2-4.

The patent at issue in *Grain Processing*, the '194 patent, covered a form of maltodextrin, a common food additive. 185 F.3d at 1343-44. Between 1979 and 1991, American Maize produced maltodextrin products that infringed the '194 patent.[2] *See id.* at 1344-46. Grain Processing first notified American Maize of its infringement by filing suit in 1981. *See id.* at 1347 & n.3. Because Grain Processing had not marked the '194 patent, Grain Processing was not entitled to damages for the 1979-1981 period during which American Maize was infringing '194 patent but did not yet have actual notice of infringement. *See id.*; *see also* 35 U.S.C. § 287(a).

The district court in *Grain Processing* denied Grain Processing's request for lost profits damages after concluding, following a bench trial, that Grain Processing failed to meet its burden to show that "but for the infringement, [it] would have made additional profits." *See* 185 F.3d at 1348-49 (internal quotation marks omitted). The district court reasoned that the facts in the record established that American Maize could have readily produced a version of maltodextrin that did not infringe the '194 patent even before the infringement period began in 1979. *See id.* at 1348. Because American Maize had a noninfringing alternative "available" to it over two years before Grain Processing became eligible to receive infringement damages, and because the district court found that this noninfringing alternative was an "acceptable" substitute for the infringing product,

---

[2] American Maize actually began selling maltodextrins in 1974. *Grain Processing*, 185 F.3d at 1344. Grain Processing, however, did not acquire the '194 patent rights until 1979. *Id.* Thus, the relevant infringement period in *Grain Processing* was from 1979 to 1991.

3
Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

1   the district court concluded that Grain Processing would not have made any additional sales were it

2   not for American Maize's infringement, and thus that Grain Processing could not recover lost

3   profits. *See id.*

4       The Federal Circuit affirmed. At the outset of its analysis, the *Grain Processing* court

5   confirmed that "[t]o recover lost profits, the patent owner must show causation in fact, establishing

6   that but for the infringement, he would have made additional profits." *Id.* at 1349 (internal

7   quotation marks omitted).[3] This "but for inquiry," the court went on, "requires a reconstruction of

8   the market, as it would have developed absent the infringing product." *Id.* at 1350 (internal

9   quotation marks omitted). The court explained that this test derives directly from the Supreme

10  Court's opinion in *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 406

11  (1964), in which the Supreme Court stated that "damages" under 35 U.S.C. § 284 consist of "'the

12  difference between [the patent owner's] pecuniary condition after the infringement, and what his

13  condition would have been if the infringement had not occurred,'" and thus that the "[t]he

14  determinative question . . . is: 'had the Infringer not infringed, what would the Patent Holder-

15  Licensee have made?'" *Id.* (first alteration in original) (quoting *Aro Mfg.*, 377 U.S. at 507).

16      The *Grain Processing* court acknowledged that "[r]econstructing the market" as it would

17  have existed absent infringement is "by definition a hypothetical exercise," but that this

18  reconstruction nevertheless "requires sound economic proof of the nature of the market and likely

19  outcomes with infringement factored out of the economic picture." *Id.* The court further stressed

20  that an accurate market reconstruction "must take into account, where relevant, alternative actions

21  the infringer foreseeably would have undertaken had he not infringed." *Id.* at 1350-51; *see also id.*

22  at 1351 ("'[w]here an infringer demonstrates that it could have chosen to market a noninfringing

23  alternative and that it would have done so had it known that it was infringing . . . the sales that it

24  made of the infringing products were not sales that the patentee would otherwise have made . . . .'"

25  (alteration and omissions in original) (quoting Martin J. Adelman, Patent Perspectives § 5.2[2] (2d

---

[3] Subsequent Federal Circuit cases have adopted *Grain Processing*'s "but for" language. *See, e.g.*, *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001).

4
Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

1   ed. 1998))).

2   Applying these principles, the Federal Circuit concluded that the district court did not err in
3   concluding that Grain Processing was not entitled to lost profits. *Id.* at 1353-55. The district court's
4   factual findings amply supported its conclusion that, absent the infringement, American Maize
5   would likely have produced an acceptable noninfringing substitute to the patented form of
6   maltodextrin and thus that Grain Processing would not have sold any additional maltodextrin were
7   it not for American Maize's infringement. *Id.*

8   Two aspects of *Grain Processing* support Samsung's argument that an accurate
9   reconstruction of the hypothetical "infringement-free" market in a lost profits damages analysis
10  requires consideration of steps the infringer could have taken to design around the patent beginning
11  on the date of first infringement. First, in describing the hypothetical market, the Federal Circuit in
12  *Grain Processing* repeatedly speaks of the market as it would have existed "had [the infringer] not
13  infringed," "absent the infringing product," or "with infringement factored out of the picture." *Id.*
14  at 1350-51. This language implies that reconstructing the hypothetical market requires one to factor
15  out infringement entirely. In order to do this when considering whether an infringer would have
16  been able to design around the patentee's intellectual property, one would have to start the inquiry
17  as of the date of first infringement. While the facts of any given case might ultimately lead to the
18  conclusion that the infringer would not have been able to begin to design around the patent starting
19  on the date of first infringement, one would need to begin the *analysis* at the date of first
20  infringement to avoid arbitrarily ignoring actions the infringer could have taken in lieu of
21  infringing. At the very least, it is hard to square this language from *Grain Processing* with a
22  decision to start considering design around periods only once the infringer receives actual notice of
23  its infringement.

24  Second, the facts of *Grain Processing* show that design arounds available to the infringer as
25  of the date of first infringement can preclude an award of lost profits. Since the alternative,
26  noninfringing maltodextrin product was available to American Maize well before American Maize
27  received notice of infringement, Grain Processing could not recover lost profits at all. *Id.* at 1353-
28  55. While the facts of *Grain Processing* are not themselves sufficient to establish a legal rule that

5

Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

potential design arounds must be considered beginning with the date of first infringement, they do suggest that this is the appropriate way to frame the inquiry into the availability of design arounds.

Apple argues that the significance of *Grain Processing* is far less than Samsung asserts. Apple also argues that, to the extent *Grain Processing* supports either party's position, the case actually favors Apple. Initially, Apple contends that *Grain Processing* treated the proper starting point for considering potential design arounds as a question of fact. *See* ECF Nos. 2407-3 at 2-3; 2569 at 4; Oct. 17 Hr'g Tr. at 145:9-146:18. The Court does not agree. Although there were questions of fact at issue in *Grain Processing*—namely, whether the noninfringing alternative was "available" to American Maize beginning no later than 1979, and whether that noninfringing alternative was "acceptable," 185 F.3d at 1353-55—nothing in the case suggests that the start date for considering whether an infringer would have successfully designed around the infringed patent was one of them. While the Court acknowledges that *Grain Processing* nowhere clearly states the opposite proposition that the start date for considering potential designs arounds is a question of law, the case provides no support for treating the design around start dates as a factual question for the jury.

Further, Apple suggests that *Grain Processing*'s statement that "[t]he critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.*, the 'accounting period,'" *id.* at 1353, supports Apple's position that the appropriate start date for a design around period is the date of first notice. *See* ECF No. 2569 at 4. But this statement from *Grain Processing* merely reflects the fact that a patentee's eligibility for lost profits hinges on whether acceptable noninfringing alternatives were available to the infringer *during the period for which the patentee seeks lost profits*. If an acceptable noninfringing alternative is available during this "accounting period," then the patentee may not recover lost profits; if not, then lost profits may be recoverable. This aspect of the lost profits analysis is intuitive and uncontroversial, and it is all that the above-quoted statement from *Grain Processing* addresses. This statement does not resolve the more difficult question of when one must begin to consider what actions the infringer would have taken to develop an acceptable noninfringing alternative, and it certainly provides no support for Apple's theory that this process would begin no

6

Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

1    earlier than the date of first notice.

2    Based on the foregoing, the Court concludes that a careful reading of *Grain Processing*

3    supports Samsung's position that a proper reconstruction of the "but for" world that would have

4    existed absent infringement must consider actions the infringer would have taken to avoid

5    infringement—including designing around the patented intellectual property—starting on the date

6    of first infringement, and not on some later date, such as the date of first notice. The Court

7    acknowledges, however, that *Grain Processing* is far from clear on this issue. The Court therefore

8    turns to other sources for guidance in resolving this dispute.

9    **B.    Additional Case Law**

10    Although neither the parties nor the Court have located any other Federal Circuit case that

11    addresses, even obliquely, the proper start date for considering potential design arounds in a

12    hypothetical market reconstruction analysis, Federal Circuit cases that address hypothetical market

13    reconstruction in other contexts support the conclusion that such reconstructions must account for

14    market conditions as they would have existed as of the date of first infringement. In *Power*

15    *Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013),

16    the Federal Circuit addressed the proper timing for considering price erosion when reconstructing

17    the hypothetical market in a lost profits analysis. Power Integrations, like Apple in this case, had

18    failed to mark its patents and thus could only seek lost profits for the period beginning after

19    Fairchild received actual notice of infringement. *See id.* at 1377. Given that lost profits were not

20    available prior to the notice date, the district court ruled that Power Integrations could not present

21    any lost profits evidence that relied on economic conditions predating actual notice. *Id.* at 1378. As

22    a consequence of this ruling, Power Integrations was precluded from presenting evidence that

23    Fairchild's "pre-notice infringing sales had depressed the market price of the patented products,

24    thus reducing Power Integrations' profits on sales *after* the notice date." *Id.* (emphasis in original).

25    The Federal Circuit reversed, holding "that a price erosion analysis relating to damages

26    arising from post-notice infringement must measure price changes against *infringement-free* market

27    conditions, and thus the proper starting point of such a price erosion analysis is the date of first

28    infringement." *Id.* at 1379-80 (emphasis in original). In reaching this conclusion, the *Power*

7

Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

1 *Integrations* court emphasized that while "[t]he marking statute provides a temporal limitation
2 on *damages* for infringement," the statute "does not define . . . acts of infringement." *Id.* at 1379
3 (emphasis in original). Because "pre-notice infringement is still infringement," and because the
4 purpose of the hypothetical market reconstruction in a lost profits analysis is to recreate economic
5 conditions as they would have existed "*but for the infringement*," an appropriate hypothetical
6 market reconstruction must account for the entire course of the infringement, not just the segment
7 of infringement occurring after the notice date. *Id.* (emphasis in original).

8       Although *Power Integrations* addressed price erosion and not design arounds, it supports
9 the general proposition that an accurate market reconstruction in a lost profits analysis necessarily
10 considers the full course of infringement. *Power Integrations* thus implies that Apple's
11 hypothetical market reconstruction, which considers only a portion of Samsung's infringement, is
12 erroneous as a matter of law. Thus, while *Power Integrations* is sufficiently distinguishable from
13 this case that the Court cannot deem it dispositive, *Power Integrations* nonetheless provides
14 additional support for Samsung's position.

15       The Federal Circuit has also emphasized the importance of reconstructing the hypothetical,
16 infringement-free market as it would have existed as of the date of first infringement in the
17 reasonable royalty context. Indeed, the Federal Circuit has long held that the hypothetical royalty
18 negotiation between a "willing licensor and willing licensee," must be assumed to have taken place
19 on the date of first infringement, even if the patentee is not eligible for damages on that date. *Wang
20 Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *see also LaserDynamics, Inc. v.
21 Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) ("In sum, '[a] reasonable royalty
22 determination for purposes of making a damages evaluation must relate to the time infringement
23 occurred, and not be an after-the-fact assessment.'" (alteration in original) (quoting *Riles v. Shell
24 Exploration & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002))). This rule from the reasonable
25 royalty context provides yet more support for Samsung's position that an accurate market
26 reconstruction necessarily takes account of conditions beginning on the date of first infringement.[4]

---

[4] Apple dismisses the Federal Circuit's reasonable royalty cases on the ground that the lost profits
and reasonable royalty analyses "ha[ve] nothing to do with [each] other." ECF No. 2569 at 4. Not

8

Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

**C.** **Additional Considerations**

Apple's damages expert, Davis, opined in both her expert report and deposition that a lost profits analysis that accounts for actions the infringer would have taken to design around the patentee's intellectual property starting on the date of first infringement would be "illogical." *See* ECF Nos. 2386-2 ¶ 93 n.107; 2544-1 at 134:8-11. To the contrary, while Davis apparently does not "see how Samsung can design around a patent until it's notified of its existence and the fact that it's infringing," ECF No. 2544-1 at 110:16-22, the entire point of reconstructing an infringement-free market in a lost profits analysis is that we are recreating a world that *did not* exist. Because market reconstruction in a lost profits analysis is "by definition a hypothetical enterprise," *Grain Processing*, 185 F.3d at 1350, there is nothing "illogical" about considering alternative actions an infringer could have taken in lieu of infringement even without knowing that it was infringing.

Indeed, when considered in light of the principles that emerge from the case law on lost profits and hypothetical market reconstruction—namely, that a lost profits analysis must reconstruct the market as it would have existed "had the [i]nfringer not infringed," *Aro Mfg.*, 377 U.S. at 507, and that this market reconstruction must the consider "the whole" of the infringer's infringement, *Power Integrations*, 711 F.3d at 1379—it is Apple's approach that is illogical. In particular, Apple has never convincingly articulated why it makes sense, in an analysis designed to factor infringement out of the picture entirely, to assume that an infringer would have infringed up until the point it received actual notice of infringement and thus became liable for damages. If the purpose of the hypothetical market reconstruction is to imagine an infringement-free world, what sense is there in assuming infringement? Moreover, as Samsung points out, it would be difficult, if not impossible, to create a coherent market reconstruction that simultaneously assumes both the absence of infringement for purposes of the price erosion analysis—as *Power Integrations* requires, *id.* at 1379-80—and the existence of infringement for purposes of design arounds. *See*

---

so. Both the reasonably royalty analysis and the lost profits analysis require a reconstruction of a hypothetical economic situation, one that asks what *would* have happened in a counterfactual world. Moreover, the Court notes that *Power Integrations* expressly relied on *Wang Laboratories*, a reasonable royalty decision, in reaching its conclusion that an accurate lost profits price erosion analysis must consider economic conditions beginning on the date of first infringement. *See* 711 F.3d at 1379-80.

9

Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

ECF No. 2598 at 5.

The Court further notes that Apple's approach to design around start dates is in tension with *Grain Processing*'s admonishment that the hypothetical market reconstruction in a lost profits analysis must take into account conditions that benefit the infringer as well as those that benefit the patentee. *See* 185 F.3d at 1350-51 ("[T]rial courts, with this court's approval, consistently permit patentees to present market reconstruction theories showing all of the ways in which they would have been better off in the "but for world" . . . . By the same token, a fair and accurate reconstruction of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed."). Ignoring economic conditions on the date of first infringement for purposes of when the design around period begins, but accounting for those conditions for purposes of price erosion or a reasonable royalty analysis presents a skewed economic picture of the "but for" world and is also unfair to the infringer. However, an accurate reconstruction of the infringement-free market should not be tilted in favor of either the patentee or the infringer. *See id.* at 1351. The Court thus finds that Samsung's position that potential design arounds ought to be considered as of the date of first infringement provides a more consistent reconstruction of the "but for" world and is also fair.

## II. THE PROPER TIME TO BEGIN CONSIDERING WHETHER AN INFRINGER WOULD HAVE DEVELOPED AN ACCEPTABLE NONINFRINGING SUBSTITUTE IS A QUESTION OF LAW, NOT FACT.

Apple has consistently taken the position that the proper date on which to begin considering what actions an infringer would have taken to design around the infringed patents is a question of fact that should go to the jury. *See* ECF Nos. 2407-3 at 2-4; 2569 at 2-4. As explained above, the Court is not persuaded that *Grain Processing* provides any support for Apple's position that the proper start date for a design around period is a question of fact. *See supra* Part I.A. The remaining cases on which Apple relies in support of this proposition, *Synqor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365 (Fed. Cir. 2013), and *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351 (Fed. Cir. 2012), are similarly unavailing. Whereas each of these cases affirms the established, uncontroversial notion that whether a noninfringing alternative was "available" to the infringer during the infringement period and whether that noninfringing

10

Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

alternative was an "acceptable" substitute for the patented product are both questions of fact,[5] neither case addresses, let alone holds, whether the proper time to begin considering potential design arounds is a question of fact.[6]

Nor has Apple satisfactorily explained why the proper date on which to begin considering potential actions an infringer could have taken to avoid infringement would be an issue for the jury. Selecting the proper start date for considering actions an infringer could have taken in the absence of infringement is required to establish the appropriate economic framework for the lost profits analysis. Apple has not explained, and the Court fails to see, how the proper structuring of the economic framework that guides the lost profits inquiry is a decision for the jury. Thus, while the Court acknowledges that certain questions related to design arounds—whether the design around was technically feasible, how much it would have cost, how long the infringer would have needed to implement it, whether any consumer would have purchased it, etc.—are undoubtedly questions of fact, the question of *when* one must begin to consider the *possibility* of design arounds is a question of law.[7]

---

[5] *See Synqor*, 709 F.3d at 1381 ("[T]he jury reasonably could have concluded that testimony from some of Defendants' witnesses indicated customers would not have switched to noninfringing alternatives in response to SynQor's higher prices."); *Presidio Components*, 702 F.3d at 1361 ("The record shows that the proposed non-infringing substitutes are not adequate substitutes in the same market at all.").

[6] *Callaway Golf Co. v. Acushnet Co.*, 691 F. Supp. 2d 566 (D. Del. 2010), a case on which Apple also relies, similarly does not treat the proper start date for considering potential design arounds as a question of fact. Rather, *Callaway Golf* stands for the proposition (not disputed here) that the reconstruction of the "but for" world in a lost profits analysis must be based on "sound economic proof," *Grain Processing*, 185 F.3d at 1350, and not mere "speculation." *See Callaway Golf*, 691 F. Supp. 2d at 575.

[7] In its most recent submission on this issue, Apple suggests that even if the Court disagrees that the proper date on which to begin considering design arounds in a lost profits analysis is a question of fact, the Court should nevertheless allow Apple to present its case to the jury and then remit the damages award if the jury accepts Davis's calculations based on design around periods that start as of first notice. ECF No. 2569 at 4 n.2. The Court cannot accept this suggestion. Neither the Court, nor Apple, nor anyone else can guarantee that the jury will return a verdict that reveals the design around period start dates on which the jury relied or that the jury's damages award will provide the Court with any means of calculating and deducting the portion of the award attributable to Apple's erroneous design around period assumptions. Indeed, under Apple's proposed verdict form for the retrial, ECF No. 2512, there is no guarantee that the Court will even be able to determine whether the jury awarded lost profits, infringer's profits, a reasonable royalty, or some combination of the three. In the absence of any reasonable strategy by which to ensure that the Court will be able to

11
Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES

### III. CONCLUSION

For the foregoing reasons, the Court concludes that an accurate reconstruction of the hypothetical market that would have existed "but for" an infringer's infringement must take into account actions the infringer could have taken in lieu of infringing, including designing around the patented intellectual property, as of the date of first infringement. Any other start date arbitrarily excludes economic conditions that are relevant in reconstructing this "but for" world. Because Davis's lost profits calculations based on design around periods that commence only once Samsung received actual notice of infringement fail to accurately reconstruct the hypothetical market, the Court concludes that they are erroneous as a matter of law. Samsung's Motion to Strike Portions of Davis's Expert Report is therefore GRANTED insofar as it relates to Davis's lost profits calculations that assume design around periods beginning on the date of first notice.

**IT IS SO ORDERED.**

Dated: November 7, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

discern the design around period start dates that factored into the jury's award, the Court will not take the risk of allowing Apple to present a legally erroneous damages analysis to the jury.

12

Case No.: 11-CV-01846-LHK
ORDER RE: DESIGN AROUND START DATES