# EXHIBIT R

1

<pre>
1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
2                         EASTERN DIVISION

3
     APPLE, INC., and NeXT SOFTWARE,    )   Docket No. 11 C 8540
4    INC. (f/k/a NeXT COMPUTER, INC.),  )
                                        )
5                        Plaintiffs,    )
                                        )
6               vs.                     )
                                        )   Chicago, Illinois
7    MOTOROLA, INC. and MOTOROLA        )   June 7, 2012
     MOBILITY, INC.,                    )   12:30 o'clock p.m.
8                                       )
                         Defendants.    )
9
                  TRIAL TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE RICHARD A. POSNER

11
     APPEARANCES:
12
     For the Plaintiff:    TENSEGRITY LAW GROUP LLP
13                         BY:  MR. MATTHEW D. POWERS
                           555 Twin Dolphin Drive, Suite 360
14                         Redwood Shores, CA  94065
                           (650) 802-6010
15

16                         WEIL, GOTSHAL & MANGES LLP
                           BY:  MR. BRIAN F. FERGUSON
17                              MR. STEPHEN SHAHIDA
                           1300 Eye Street NW, Suite 900
18                         Washington, DC   20005
                           (202) 682-7516
19

20                         COVINGTON & BURLING LLP
                           BY:  MR. ROBERT T. HASLAM
21                         333 Twin Dolphin Drive, Suite 700
                           Redwood Shores, CA  94065
22                         (650) 632-4700

23
     Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                         Official Court Reporter
                           219 S. Dearborn Street, Suite 1854-B
25                         Chicago, Illinois  60604
                           (312) 435-5639
</pre>

1  APPEARANCES CONTINUED:

2

3  For the Plaintiff:      COVINGTON & BURLING LLP
                           BY:   MR. ROBERT D. FRAM
                                 MS. CHRISTINE SAUNDERS HASKETT
4                                MR. WINSLOW BLODGETT TAUB
                           One Front Street
5                          San Francisco, CA  94111
                           (415) 591-6000

6

7                          SCHIFF HARDIN LLP
                           BY:  MS. STACIE R. HARTMAN
8                          6600 Sears Tower
                           Chicago, IL  60606
9                          (312) 258-5607

10

11 For the Defendants:     QUINN EMANUEL URQUHART & SULLIVAN, LLP
                           BY:   MR. BRIAN CANNON
                           555 Twin Dolphin Drive, 5th Floor
12                         Redwood Shores, CA  94065
                           (650) 801-5000

13

14                         QUINN EMANUEL URQUHART & SULLIVAN, LLP
                           BY:   MR. DAVE NELSON
15                               MR. STEPHEN A. SWEDLOW
                           500 West Madison Street, Suite 2450
16                         Chicago, IL  60661
                           (312) 705-7465

17

18                         QUINN EMANUEL URQUHART & SULLIVAN, LLP
                           BY:   MR. EDWARD J. DeFRANCO
19                         51 Madison Avenue, 22nd Floor
                           New York, NY  10010
20                         (212) 849-7000

21

22                         MOTOROLA MOBILITY
                           BY:  MR. ROBERT G. PLUTA
23                         600 N. U.S. Highway 45
                           Libertyville, IL  60048
                           (847) 523-3667

24

25

3

| | |
|---|---|
| 12:46:08 | 1 |
| 12:46:08 | 2 |
| 12:46:30 | 3 |
| 12:46:30 | 4 |
| 12:46:32 | 5 |
| 12:46:46 | 6 |
| 12:46:54 | 7 |
| 12:46:56 | 8 |
| 12:47:00 | 9 |
| 12:47:04 | 10 |
| 12:47:06 | 11 |
| 12:47:12 | 12 |
| 12:47:18 | 13 |
| 12:47:22 | 14 |
| 12:47:30 | 15 |
| 12:47:40 | 16 |
| 12:47:42 | 17 |
| 12:47:50 | 18 |
| 12:47:56 | 19 |
| 12:48:00 | 20 |
| 12:48:04 | 21 |
| 12:48:08 | 22 |
| 12:48:16 | 23 |
| 12:48:20 | 24 |
| 12:48:24 | 25 |

1    (The following proceedings were had in open court:)

2         THE CLERK:  11 C 8540, Apple v. Motorola.  Please be

3    seated.

4         THE COURT:  Good afternoon, everybody.

5         MR. NELSON:  Good afternoon, your Honor.

6         THE COURT:  What I thought I'd do to save time is to

7    give you -- I read all the things last night and this morning,

8    my law clerks have, and we discussed it.  I am going to give

9    you my tentative thoughts, and then I am going to give you a

10   chance, if you'd like, to respond.  This is really about the

11   issues of mootness, injunctive relief, and damages.

12        As far as the trial is concerned, well, you will see

13   I don't think there is going to be a trial, so I haven't spent

14   a lot of time on the instructions and the objections you made

15   to the instructions and to some of the voir dire.  There are

16   probably good objections.

17        I do want to, though, as one preliminary, I did want

18   to deal with the Mowry issue.  I don't think that those are

19   proper corrections.  I think that was a supplemental report.

20   Corrections are, you know, you misheard, you know, misspell,

21   things like that.  That's fine.  This was more than that.

22        And, of course, Apple argues that Mowry was -- he was

23   ambushed, he was confused, he was asked, but, of course,

24   that's why you have your lawyer there, you know, to help him

25   out.  I have nothing against a supplemental report, but that's

1   what it is.

2         Anyway, and now the important issues.  I am afraid --

3   again, I will give you a chance to argue with me, but I am

4   afraid I have to grant summary judgment on damages for the

5   three patents that remain as subject to damages because Apple

6   acknowledges under my Daubert ruling the '002 and '949 cannot

7   -- the damages claims for those two patents cannot remain.

8         So the three that are left, '263, '647, '089.

9         So the '263, Apple is trying to save its damages

10  claim by reference to Dr. Polish's statement -- Dr. Polish's

11  discovery of a chip that Motorola could have used to replace

12  the '263 that it allegedly had infringed by using -- well, the

13  problem is that -- the fact that Dr. Polish identifies a chip

14  that could be used to replace the '263, that doesn't mean that

15  using that chip was the cheapest way, the best way, the

16  necessary way for Motorola to avoid infringement.

17        So the notion is, well, if the chip costs -- the chip

18  that Dr. Polish's found cost X, then Apple's damages are X or

19  at least X because that's what Motorola saved by infringing;

20  otherwise, it would have had to have bought the chip.  But

21  that's just one chip that Dr. Polish identified, and he's not

22  in procurement, right?  He doesn't -- he's not someone that

23  goes shopping for chips for companies, so I don't think his

24  report can take the place of Napper's method of computing

25  damages.

1    I think also that my law clerk reminds me, he didn't

2  actually identify the chip.  He just said there was a chip in

3  his report, and it was later that there was a conversation

4  between him and Napper that provided some more detail.  So I

5  just don't think it complied.

6    Now, what Apple argues is that, well, really all the

7  expert has to do to create a tribal issue is put a number out

8  there, which isn't kind of totally ridiculous, and then the

9  burden of production shifts to the defendant.  I don't think

10  that's -- I don't think that's right.  That's a kind of

11  McDonnell Douglas approach where you set a very, very low

12  level for the prima facie case because you think, you know,

13  the information is really in the possession of the defendant

14  and you're trying to really force the defendant forward

15  because the plaintiff isn't going to be able to discover the

16  evidence on its own.

17    So in McDonnell Douglas, of course, it's

18  discrimination, a discrimination charge, and all the relevant

19  information or virtually all is going to be in the possession

20  of the defendant.  So plaintiff has this very light burden,

21  and that forces the defendant to produce evidence.

22    There are common-law analysis, famous Ybarra v.

23  Spangard case, the conspiracy of silence of the doctors,

24  someone is injured, he was unconscious during the operation

25  when the injury occurred, how much can he, you know, produce

| | |
|---|---|
| 12:53:38 | 1 |
| 12:53:40 | 2 |

1    in the way of evidence.  They have all the evidence.  So then

2    you have a very low level of burden of production.

3         But there is nothing like that here.  This is

4    information about, you know, chips on the market, what are

5    they, are there other ways of doing it.  It seems to me there

6    has to be more of a search.  Not surprising there wasn't here

7    because of the way that Apple tried to present its damages

8    claim in the '263.  That's '263.

9         So the '647, the structure detection patent, the main

10   argument, of course, presented by Mr. Napper was his use of

11   Clipboard manager to try to infer what this design-around

12   would have -- what the value of Apple's -- no, it's what it

13   would cost Motorola to -- anyway, that's over.  I threw that

14   out.

15        And what Apple says is, well, there is this

16   alternative measure of damages in fact mentioned, though very

17   briefly, by Mr. Napper and not the subject of the Daubert

18   exclusion, and that is this design-around by HTC which took

19   four months, in the course of which a lot of income was lost.

20   And so the contention is, well, would it have taken Motorola

21   four months and lost four months' worth of sales and profits

22   from selling its device?  Well, this is not satisfactory.

23   This is HTC.  HTC is not Motorola.  We don't know whether

24   Motorola could have -- whether Motorola is in the same

25   position as HTC with regard to whether it would take it four

1   12:56:10   months and so on.

2   12:56:18        There would be more of a case, I think, if you try

3   12:56:20   and argue that Apple had done all it could do to try to figure

4   12:56:30   out how the defendant would respond, but I don't think that's

5   12:56:34   true because this part of Mr. Napper's expert report is only

6   12:56:48   about a page, and it doesn't suggest any real effort to

7   12:56:52   establish this as an alternative.  It's the backup.  It's, you

8   12:56:58   know, to show that the Clipboard manager is not the only

9   12:57:04   evidence.

10  12:57:06        Of course, oddly, it produces a larger damages

11  12:57:10   estimate, and yet -- so I don't think there is any basis for

12  12:57:20   it.  So I think it has to go out.

13  12:57:22        So now turning to Motorola, Motorola's '898.  This, I

14  12:57:32   think, is like really weak because you start with Donohoe's

15  12:57:40   report, and he says the price -- the royalty for a single

16  12:57:48   patent in the package of the standards patents would be up to

17  12:57:58   40 to 50 percent of the price of the package, but up to, of

18  12:58:04   course, that's -- that could be much lower.  If you had a

19  12:58:06   thousand patents, then a royalty equal to 1 percent of the

20  12:58:18   value of the entire package would actually be -- it would be a

21  12:58:26   non-linear charge, it would be ten times the proportional

22  12:58:30   charge.  So you can read -- so you actually would start -- for

23  12:58:36   non-linear price, you go below the 1 percent and go up to 50

24  12:58:40   percent.  Well, there is nothing -- there is no way to draw a

25  12:58:44   line between that.  There is nothing -- there are no numbers

| | |
|---|---|
| 12:58:48 | 1 |
| 12:58:52 | 2 |

1  in Donohoe's -- I mean, no estimates, no dollar calculations

2  in Donohoe's report.

3  Then I think in his deposition, I think he said the

4  price would be 50 percent.  That can't be right.  There is no

5  basis for that.  And it's very implausible.  And certainly

6  that 20 percent figure from IBM from years earlier doesn't --

7  just isn't worth anything.

8  But there is another serious problem with Motorola's

9  damages theory for the '898, and that is that the way that you

10  should compute in a standards patent royalty is you look at

11  what the alleged infringer could have done before it became a

12  standards patent to acquire the required functionality because

13  that would -- that would give you a sense of the actual value

14  of the patent as a patent.  Once it becomes the standard, then

15  that confers the monopoly of power on the patentee above and

16  beyond the monopoly power designed to reward the patentee for

17  inventing something.  So that -- of course, it could lead to

18  extraordinary inflated estimates of the value of the patent.

19  Let's say the value can be conferred by making it a standard

20  rather than by the skill and investment of the inventors.  So

21  that's out.

22  Turning to the question of injunctive and declaratory

23  rule.  So I do think that if infringement is proved, the

24  patentee has a prima facie case for injunctive relief, but the

25  judge can, of course, substitute a reasonable royalty.  And

01:01:10  1  considering these patents, and, you know, what I have learned

01:01:14  2  about the case, I would substitute a royalty.  I would not

01:01:18  3  grant an injunction in any of these cases or any of these

01:01:24  4  claims.

01:01:26  5     Now, the problem is what would -- how would the

01:01:28  6  reasonable royalty be calculated?  Well, you'd go back to the

01:01:32  7  date of infringement, and you say if the infringer had not

01:01:38  8  infringed, instead had gotten a license, what would it have

01:01:46  9  had to pay, what would be reasonable to pay, again, because

01:01:48  10  you have hold up problems.  So there is a difference between

01:01:52  11  what they could have been forced to pay and what would be

01:01:54  12  reasonable.  What would be a reasonable royalty?  And that

01:01:58  13  would be the same number that you were supposed to be

01:02:04  14  calculating for the damages case.  What was the reasonable

01:02:10  15  royalty?  And since you couldn't prove that, I don't see why I

01:02:16  16  should give you a chance to prove the reasonable royalty as a

01:02:24  17  substitute for injunctive relief.

01:02:28  18     So the remaining question is whether the declaratory

01:02:32  19  judgment suit can somehow be kept alive even if there is no --

01:02:38  20  even if there is not going to be any injunctive or damages

01:02:42  21  remedy, and I don't see any real -- I don't see any real

01:02:50  22  argument here that there is.  Motorola is emphatic that there

01:02:56  23  isn't.  Apple's argument for why somehow declaratory judgment

01:03:00  24  can survive on its own is not consistent with basic notions of

01:03:08  25  federal jurisdiction.  In fact, it would be nice, you have

01:03:14  1  made a tremendous investment in getting the case this far, I

01:03:16  2  have and my law clerk have not made a financial investment, we

01:03:22  3  have made a time investment.  I don't regret it all, it's been

01:03:28  4  very interesting, but, you know, so there would be efficiency

01:03:30  5  in having the case tried, but that's not a basis for federal

01:03:36  6  jurisdiction.  You can't create a case in controversy because,

01:03:40  7  you know, all things considered, it would be better to get the

01:03:42  8  thing resolved, there's evidence prepared, and so I don't

01:03:50  9  think I can do that.

01:03:54  10  The declaratory judgment law is clear that you think

01:04:00  11  of declaratory judgment as sort of just bringing forward a

01:04:08  12  case which would be clearly within Article III.  So you're

01:04:14  13  pretty sure you're going to be sued for infringement, and you

01:04:18  14  don't want the damages for infringing to be mounting up

01:04:24  15  because the patentee is sitting there and rubbing his hands

01:04:28  16  with glee and waiting to sue you at some opportune time and be

01:04:34  17  able to put a great big figure in front of the jury and so on.

01:04:38  18  So you bring a declaratory judgment suit, and that's fine.

01:04:42  19  But I don't see that here.

01:04:46  20  Now, actually, there is floating around the Federal

01:04:50  21  Circuit some hints of the following little hole in the wall

01:05:04  22  that you might slip a case like this through, and that's the

01:05:08  23  argument that a suit is brought for infringement,

01:05:12  24  counterclaim, or in this case, that's essentially what it is,

01:05:16  25  it's two cases consolidated, we call a counterclaim for

01:05:22 1 invalidity. And I suppose the infringement drops out, damages

01:05:28 2 drops out, everything has dropped out, but, nevertheless,

01:05:30 3 there are hints that maybe the alleged infringer can still

01:05:36 4 maintain a declaratory judgment action for invalidity on the

01:05:42 5 theory that should it manufacture any new devices that

01:05:50 6 arguably infringed, the patentee could sue. And then you'd be

01:05:56 7 back and you would have this case starting all over again. I

01:06:02 8 suspect that isn't right, that you have to wait for the new

01:06:08 9 suit, because otherwise you get into arguments about how close

01:06:16 10 these devices are, there is a real danger of infringement.

01:06:22 11 Anyway, granting declaratory judgment relief is

01:06:32 12 discretionary with the judge, and even if there is this

01:06:38 13 jurisdiction, which I doubt, which no one has argued, I would

01:06:42 14 not grant it.

01:06:44 15 So if what I have said is right, then, unfortunately,

01:06:48 16 the case is moot and has to be dismissed, which I feel bad

01:06:52 17 about, but I don't see an alternative.

01:06:54 18 However, you know, I have given you a chance to

01:07:00 19 address these issues -- most of these issues, and you did so

01:07:06 20 very promptly, but if you'd like to make any oral statement

01:07:12 21 about it, I would be happy to hear it.

01:07:22 22 MR. POWERS: Briefly, your Honor?

01:07:24 23 THE COURT: Mr. Powers?

01:07:24 24 MR. POWERS: I understand your Honor's rulings and

01:07:34 25 the basis for them. I want to make just a couple of comments

01:07:36  1  because Apple would like very much to proceed forward with its

01:07:44  2  claims in this case.

01:07:44  3  Let's start with '263. I understand that the

01:07:52  4  standard your Honor is applying requires that our expert not

01:07:58  5  only identify a design-around and presumably the costs and

01:08:04  6  benefits relative to that, but also identify or be able to

01:08:10  7  opine that that is the absolute lowest cost best

01:08:16  8  design-around, so it is the best measure of damages.

01:08:20  9  I am not aware of any law to that effect. I believe

01:08:26  10  the law is -- and I won't repeat the discussion we had during

01:08:30  11  the Daubert hearing because your Honor has already ruled on

01:08:32  12  that, but our belief is the law is that as long as your expert

01:08:36  13  puts forth a cognizable, proper measure of damages, one that

01:08:40  14  if by itself were presented to a jury, it would be sustainable

01:08:44  15  as proper evidence, that that is sufficient to bear the burden

01:08:50  16  of proof by that party at that time. I understand your

01:08:52  17  Honor's ruled the opposite of that, but I wanted to note that

01:08:56  18  issue for the record.

01:08:58  19  With regard to '647, '647 I think is an interesting

01:09:04  20  case because that's a situation in which we have real world

01:09:08  21  evidence, not some hypothetical expert debating about a

01:09:12  22  hypothetical design-around. You have a sophisticated,

01:09:16  23  motivated party in the real world faced with the exact same

01:09:20  24  patent and faced with the decision of how to get around that

01:09:24  25  patent. And so you have real world evidence of the cost of

| | | |
|---|---|---|
| 01:09:28 | 1 | the sophisticated, motivated party to design-around.  And I |
| 01:09:36 | 2 | understand your Honor's point, but I would submit that that is |
| 01:09:38 | 3 | better than any form of design-around evidence that you would |
| 01:09:42 | 4 | get that's hypothetical, even that which your Honor required |
| 01:09:46 | 5 | for '263, which is a hypothetical expert who is not as steeped |
| 01:09:54 | 6 | in the industry as a real world party would be speculating |
| 01:09:58 | 7 | about what would be the best and cheapest design-around. |
| 01:10:00 | 8 | So with regard to '647, I think we have uniquely |
| 01:10:04 | 9 | superior evidence of exactly the type of estimate that your |
| 01:10:10 | 10 | Honor says is required, i.e., design-around evidence, based on |
| 01:10:14 | 11 | a motivated, sophisticated party. |
| 01:10:16 | 12 | Now, your Honor points out that that's HTC, not |
| 01:10:20 | 13 | Motorola, which is, of course, true, but HTC is not a mom and |
| 01:10:24 | 14 | pop sitting on the corner of Wabash and Adams.  It is a fairly |
| 01:10:30 | 15 | sophisticated global company with very sophisticated resources |
| 01:10:34 | 16 | and with at least an equal amount at stake.  And so to say |
| 01:10:40 | 17 | that that's HTC, not Motorola, all being true, I don't think |
| 01:10:46 | 18 | it's sufficient to wipe out the evidence completely. |
| 01:10:48 | 19 | With regard to '898, obviously, we agree with your |
| 01:10:54 | 20 | Honor's positions and think there's even more reasons, but |
| 01:10:58 | 21 | your Honor has, I think, covered it. |
| 01:11:00 | 22 | On the declaratory judgment question, I think there's |
| 01:11:04 | 23 | only two issues that I'd like to raise.  I understand your |
| 01:11:12 | 24 | Honor's points and understand them well. |
| 01:11:14 | 25 | The first is that I think there's authority cited in |

01:11:18　1　the Morrow v. Microsoft case out of the Federal Circuit, that

01:11:18　2　the act of infringement is itself injury, independent of and

01:11:24　3　beyond the damages that flow from that or anything else.  And

01:11:28　4　that, to me, puts this case arguably on the side of cases that

01:11:36　5　are more contract versus tort.  I know your Honor is quite

01:11:38　6　familiar with that line with respect to declaratory judgment

01:11:40　7　relief and damages, and there is a line of court cases, of

01:11:46　8　course, that say the breach of contract is itself the problem

01:11:48　9　and the fact that there are no damages does not mean that you

01:11:54　10　don't get to go forward because the breach is what you're

01:11:56　11　entitled to redress, even if there are no provable damages

01:12:00　12　flowing from it.  And there are cases contrasting that with

01:12:04　13　tort cases where without the damages, there is no tort.  And

01:12:06　14　my suggestion is the Morrow v. Microsoft case puts patent

01:12:12　15　infringement onto the contract side of that continuum, not on

01:12:16　16　the tort side of that continuum.  And the cases that I know

01:12:20　17　your Honor is very familiar with on the contract side go in

01:12:22　18　the direction that Apple has already formed.

01:12:26　19　　　　　The second point with regard to declaratory judgment

01:12:30　20　jurisdiction that I would make is that as I understand the

01:12:34　21　scenario going forward, based on your Honor's comments, there

01:12:38　22　would be no injunction and there would be no ongoing royalty.

01:12:44　23　And I would submit that that is effectively analytically

01:12:52　24　equivalent to a situation in which let's assume there was no

01:12:54　25　trial at all, there was no litigation, none of this had

| | |
|---|---|
| 01:12:58 | 1 |
| 01:13:02 | 2 |
| 01:13:06 | 3 |
| 01:13:10 | 4 |
| 01:13:12 | 5 |
| 01:13:16 | 6 |
| 01:13:18 | 7 |
| 01:13:22 | 8 |
| 01:13:28 | 9 |
| 01:13:30 | 10 |
| 01:13:36 | 11 |
| 01:13:38 | 12 |

1  happened, we were sitting here on June 7, Motorola was selling
2  the products it's selling, Apple -- they're going to be
3  selling them on June 8th, the day after whatever final
4  judgment is entered here, they are going to be selling them in
5  July and August without change, still, in Apple's view,
6  infringing those four patents, I don't think there is any
7  question that Apple would have declaratory judgment
8  jurisdiction or infringement jurisdiction to go after those
9  future sales.  We would be able to do that.  There is a
10  dispute right now as to the future because Motorola is selling
11  and continuing to sell products that Apple considers to be
12  infringing its patents.

13           Now, the only thing that is different between that
14  hypothetical and the real world is that your Honor has found,
15  based on a Daubert ruling and past evidence, that Apple and
16  Motorola have been unable to prove damages in a way that
17  satisfies you or Daubert's test.  That's the past.  There is
18  an ongoing dispute for the future, undoubtedly, I think, and I
19  think that distinguishes the case involved.

20           THE COURT:  Thank you, Mr. Powers.

21           Mr. Swedlow?

22           MR. SWEDLOW:  I think it goes without saying we agree
23  with all the rulings that are in our favor and disagree with
24  the ones that aren't.

25           With respect to the '263, what you ruled is that

01:14:30  1  Dr. Polish in a motion in limine was limited to what was in
01:14:34  2  his report, and what was in his report was that there was a
01:14:36  3  chip that could be used as a design-around but that
01:14:40  4  design-around would be rejected.  He didn't identify the chip
01:14:44  5  that would be used to calculate damages, he didn't identify
01:14:48  6  the price of the chip, and he did not identify how you would
01:14:52  7  take that price and then extrapolate it to the period of
01:14:54  8  infringement using some other chip.  So nowhere in his report,
01:14:58  9  which was dated March 1st, did he disclose any opinions that
01:15:02  10  Apple would now have them all.

01:15:06  11      What Apple is effectively doing is saying, We'd like
01:15:10  12  what Dr. Polish said in a conversation to Dr. Napper -- or
01:15:14  13  Mr. Napper which has been stricken to now just be said by
01:15:18  14  Dr. Polish at trial, but you already struck that theory.  So
01:15:22  15  it can't be that the Polish/Napper combination which you
01:15:26  16  struck as a theory that had fatal problems and didn't satisfy
01:15:30  17  Daubert can now be offered through Polish, who didn't disclose
01:15:34  18  it and Napper to close the loop on the part where you would
01:15:36  19  calculate from the chip to the cost.  Essentially, it's the
01:15:40  20  same damage theory offered again, just with Polish's name on
01:15:44  21  it, and he didn't disclose the damages theory, and he is not a
01:15:46  22  damages expert.

01:15:48  23      I would note that he was not disclosed as an expert
01:15:50  24  in the damages portion of the case under Rule 26 even though
01:15:54  25  he was listed on the witness list.  There was a date for

| | |
|---|---|
| 01:15:56 | 1 |
| 01:16:00 | 2 |
| 01:16:06 | 3 |
| 01:16:12 | 4 |
| 01:16:16 | 5 |
| 01:16:18 | 6 |
| 01:16:22 | 7 |
| 01:16:26 | 8 |
| 01:16:26 | 9 |
| 01:16:32 | 10 |
| 01:16:38 | 11 |
| 01:16:42 | 12 |
| 01:16:48 | 13 |
| 01:16:50 | 14 |
| 01:16:52 | 15 |
| 01:16:56 | 16 |
| 01:16:58 | 17 |
| 01:17:02 | 18 |
| 01:17:06 | 19 |
| 01:17:10 | 20 |
| 01:17:14 | 21 |
| 01:17:18 | 22 |
| 01:17:24 | 23 |
| 01:17:26 | 24 |
| 01:17:30 | 25 |

disclosure of damages experts, and he wasn't disclosed.

Switching to the '647, the entirety of the alternative or new theory at this point is that HTC had an inclusion order issued to it in the International Trade Commission based on a different claim construction, although it was the same patent.  It was not only a different company, but their design-round, if they did design-round, engineering would be different because it's a different claim construction.  And what the order says is that HTC cannot make -- or cannot -- excuse me -- there is an exclusion order for four months.  That four-month period wasn't set based on Motorola's ability to design-around and wasn't set on HTC's ability to design-around; it was a period of time in the exclusion order and had nothing to do with Motorola.

Obviously, you already pointed out that Motorola and HTC are different companies, but Apple has taken the position that HTC still hasn't designed around.  You can't use as a proxy for Motorola's design-around costs something that Apple said didn't work for HTC.  And there is no evidence from anyone what Motorola would have to spend to design around the '647 patent and thereby that would be the royalty that Motorola would otherwise pay to avoid those costs.  There is no evidence of that at all.

And, finally, and maybe I should have started with this, you already excluded all of the ITC orders relating to

01:17:32　1　the '263 and the '647 as irrelevant because Motorola wasn't a

01:17:36　2　party to those.  So you can't offer into evidence items that

01:17:40　3　have already been excluded from evidence.

01:17:42　4　　　　　Turning to the injunctive relief, I don't believe

01:17:48　5　that the contract tort distinction matters, it doesn't matter

01:17:52　6　what you compare a patent case to, because if you have a

01:17:56　7　contract case where the court has determined that you get no

01:17:58　8　damages or can't prove damages and you get no injunctive

01:18:04　9　relief, then you don't have the two requirements for a patent

01:18:08　10　case or controversy.  You need to have a right, and you need

01:18:12　11　to have some basis for relief.  If you fail to state a claim

01:18:16　12　upon which relief can be granted, which is what effectively

01:18:20　13　put our two cases in, then it doesn't matter theoretically

01:18:24　14　whether somebody has infringed or, in a contract case, whether

01:18:26　15　somebody has breached.  If somebody has committed a tort but

01:18:30　16　there is no remedy, then there is no case or controversy.

01:18:32　17　　　　　So you don't get psychic satisfaction in contract

01:18:36　18　cases, you don't get it in tort cases, and you don't get it in

01:18:40　19　patent cases as a substitute for Article III standards.  It

01:18:44　20　doesn't exist.  So the fact that Apple has tried to split its

01:18:48　21　affirmative infringement claim for damages and injunctive

01:18:52　22　relief into an affirmative infringement claim and a

01:18:54　23　declaratory judgment claim for the exact same thing doesn't

01:18:58　24　mean that when one dies, the declaratory judgment, which is

01:19:00　25　the same thing as the claim, continues to live, because you

01:19:04  1  could always split any two claims and say, Well, I lost the

01:19:08  2  affirmative claim, but now I want you to make a declaration

01:19:10  3  that even though I can't pursue my affirmative claim, I can

01:19:14  4  pursue a declaration, which is the same thing.  So I don't

01:19:18  5  think that that's a distinction that creates jurisdiction

01:19:20  6  where it doesn't otherwise exist.

01:19:24  7       Turning to our patents where I will respectfully

01:19:26  8  disagree with you, or our patent.  If you state that our

01:19:32  9  damage theory is implausible, I don't think I am going to be

01:19:36  10  in a position here today to convince you that it is plausible.

01:19:40  11  I could re-summarize it for you, but we have briefed it.  This

01:19:44  12  is a patent within a portfolio, and we believe that the only

01:19:50  13  logical outcome of a licensing hypothetical negotiation for a

01:19:54  14  standards-essential patent would be leading to a portfolio

01:20:00  15  license.  In fact, the experts, who are both stricken at this

01:20:02  16  point, both agree that that would be the only outcome.

01:20:06  17       THE COURT:  Is it correct that no single patent in a

01:20:10  18  standards portfolio has been separately licensed ever?

01:20:14  19       MR. SWEDLOW:  In fact -- I'm not going to say any

01:20:18  20  standards portfolio ever, but any wireless communications

01:20:20  21  standards portfolio ever.  For every company who has a

01:20:24  22  standards portfolio, no one has ever taken a license to an

01:20:28  23  individual or a smaller group of patents because you can't do

01:20:32  24  anything with it.  You can't practice the standard with a

01:20:34  25  subset of the patents.  And the theory that we have offered,

Case: 15-1547 Document: 40 Page: 20 of 32 Case 1:11-cv-08540-LHK Document #: 1049 Filed: 08/02/12 Page 20 of 32 PageID #:36048

20

| | |
|---|---|
| 01:20:40 | 1 |
| 01:20:44 | 2 |
| 01:20:48 | 3 |
| 01:20:50 | 4 |
| 01:20:54 | 5 |
| 01:20:58 | 6 |
| 01:21:02 | 7 |
| 01:21:08 | 8 |
| 01:21:12 | 9 |
| 01:21:14 | 10 |
| 01:21:14 | 11 |
| 01:21:18 | 12 |
| 01:21:22 | 13 |
| 01:21:26 | 14 |
| 01:21:28 | 15 |
| 01:21:32 | 16 |
| 01:21:34 | 17 |
| 01:21:36 | 18 |
| 01:21:38 | 19 |
| 01:21:40 | 20 |
| 01:21:44 | 21 |
| 01:21:48 | 22 |
| 01:21:54 | 23 |
| 01:21:58 | 24 |
| 01:21:58 | 25 |

which we believe makes sense, still do, is that nobody wants

that because there are a group of patents, some of which

obviously would be valid or invalid, some of which would be

infringed or not infringed within the group, and the licenses

for all of them, Motorola's licenses are, you pay --

THE COURT:  But Apple wasn't using -- it was just

using '898 and the '559; was that part of the same?

MR. SWEDLOW:  Apple -- this isn't in the case, but I

will tell you this -- I am telling you this as the truth.

THE COURT:  Right.

MR. SWEDLOW:  Apple is infringing all the

standards-essential patents that Motorola owns by selling its

cell phones that communicate on these wireless networks.  As I

think you recognized as a practical reality, we cannot sue on

a hundred patents in one case, or 75.

THE COURT:  Are there other cases?

MR. SWEDLOW:  There are other cases pending, and

there are cases in various stages of development at the

Internal Trade Commission.

But the ultimate result would have to be, as a result

of all the litigations, that Apple would pay Motorola whatever

the standards-essential license negotiated fee would be.  We

say it's 2.25 percent, but I'm not going to be able to prove

to you that that's the right number today.

But the results -- if it is not possible to pursue

01:22:02  1   what these companies call their proud list, which is our few

01:22:06  2   patents, in a litigation in the court system, what Motorola

01:22:08  3   would have to do to actually collect what it is owed, if it is

01:22:12  4   owed anything for its standards-essential portfolio, it would

01:22:16  5   have to file all of its remaining standards patents in one

01:22:18  6   case so that an argument that an apportionment should take

01:22:22  7   place won't exist anymore.  So that means 75 patents have to

01:22:26  8   be included in one case, and that's why the theory that

01:22:32  9   Mr. Donohoe is offering is you would get to a hundred percent

01:22:34  10  with the first few and then you wouldn't pay anything after

01:22:38  11  that because you didn't have a license.

01:22:38  12       THE COURT:  Isn't the implication of this analysis

01:22:42  13  that the $347 million that you were seeking, that that

01:22:48  14  represents 50 percent of the total value of the portfolio?

01:22:52  15       MR. SWEDLOW:  Of the portfolio license.

01:22:54  16       THE COURT:  So there are the other 99 patents instead

01:23:00  17  of four patents, it would be 347 million --

01:23:00  18       MR. SWEDLOW:  No.

01:23:00  19       THE COURT:  And after you brought another patent

01:23:02  20  case, right, then there would be nothing left.

01:23:04  21       MR. SWEDLOW:  Well, I mean, what Motorola's position

01:23:06  22  was and is in this litigation is once it got to a hundred

01:23:08  23  percent of the portfolio value that was the second or third

01:23:10  24  patent, they would be enjoined from collecting on any other

01:23:12  25  patents.

| | |
|---|---|
| 01:23:12 | 1 |
| 01:23:14 | 2 |
| 01:23:16 | 3 |
| 01:23:20 | 4 |
| 01:23:24 | 5 |
| 01:23:28 | 6 |
| 01:23:30 | 7 |
| 01:23:34 | 8 |
| 01:23:38 | 9 |
| 01:23:42 | 10 |
| 01:23:46 | 11 |
| 01:23:50 | 12 |
| 01:23:52 | 13 |
| 01:23:58 | 14 |
| 01:24:00 | 15 |
| 01:24:06 | 16 |
| 01:24:10 | 17 |
| 01:24:10 | 18 |
| 01:24:14 | 19 |
| 01:24:16 | 20 |
| 01:24:20 | 21 |
| 01:24:24 | 22 |
| 01:24:28 | 23 |
| 01:24:30 | 24 |
| 01:24:34 | 25 |

THE COURT:  So it could be just two.

MR. SWEDLOW:  And Apple would effectively have a license on the entire standards portfolio.  Motorola calls that in licensing terms an anti-stacking policy, meaning once you pay, you get all of them.  If Motorola comes out with new patents, which it does, you get a license to those too.  So once you are a licensee to the portfolio, you get it all.  And that -- in practical terms, that's where Motorola will be after we leave this courtroom today is that it still deserves, in its own mind, and I think legally, to get something for its portfolio, and it has to determine, how do we collect a hundred percent of our portfolio given the limitations of our legal system wherein you can't pursue every claim in every patent like a shotgun theory.  If we tried that before you, you would have probably been more frustrated by our lack of whittling because there would have been 75 or 150 patents pending in one case.

So the theory is driven by the practical realities of licensing.  No one ever takes a single license.  The only way anyone has licensed these standards patents is as a portfolio.

During the negotiation process, you identify particular patents because you can't have a technological discussion about a hundred patents at once.  Companies can't do that.  And then they negotiate over a period of time and they pay something.  In Apple's case, it's been five years and

| | |
|---|---|
| 01:24:38 | 1 |
| 01:24:42 | 2 |
| 01:24:46 | 3 |
| 01:24:48 | 4 |
| 01:24:50 | 5 |
| 01:24:54 | 6 |
| 01:24:58 | 7 |
| 01:25:00 | 8 |
| 01:25:00 | 9 |
| 01:25:02 | 10 |
| 01:25:04 | 11 |
| 01:25:04 | 12 |
| 01:25:08 | 13 |
| 01:25:10 | 14 |
| 01:25:12 | 15 |
| 01:25:16 | 16 |
| 01:25:22 | 17 |
| 01:25:22 | 18 |
| 01:25:26 | 19 |
| 01:25:28 | 20 |
| 01:25:32 | 21 |
| 01:25:34 | 22 |
| 01:25:38 | 23 |
| 01:25:38 | 24 |
| 01:25:42 | 25 |

it hasn't paid.  And so this case, be it alive or dead, won't be the end.

Okay.  That's it.

THE COURT:  Mr. Powers, anything further?

MR. DeFRANCO:  Your Honor, may I just add something?  It will shock you to hear that Mr. Swedlow's argument bled over into my piece.

THE COURT:  Sorry.

MR. DeFRANCO:  I want to add one point.  On the HTC design-around issue --

THE COURT:  Yes.

MR. DeFRANCO:  -- Apple actually filed an action in the Internal Trade Commission saying that they disagree that the design-around was effective.  So they have contested that, and this is -- you can do an Internet search, I don't have a site, but you can do an Internet search and find they filed an enforcement action with the commission itself saying products are coming in, they have a designation that they have been designed around, we have looked at the products, we don't think that design-around cuts muster.  We think the enforcement -- the exclusion order that was originally issued by the commission should stand and these products should stay out.

So they don't agree that that four-month window is a representative sample.  Four months didn't work.  More time is

24

01:25:46    1   needed.  That certainly can't stand.

01:25:48    2          To turn to the issue -- a couple things Mr. Powers

01:25:54    3   said, Well, infringement is injury; therefore, it's a

01:25:56    4   declaratory judgement action.  Again, we said in our brief

01:25:58    5   many, many times they don't have a case that says that.

01:26:00    6   That's not the law.  Saying I have an injury in fact doesn't

01:26:04    7   create a declaratory judgment.  You have to show monetary

01:26:08    8   damages, you have to show an injunction is possible, but,

01:26:10    9   otherwise, we are left with an advisory opinion.

01:26:14   10          And in the Federal Circuit I think, as your Honor

01:26:16   11   pointed out, some here and there, there is a little bit of

01:26:20   12   language because, you know, there is -- courts do want -- it

01:26:26   13   makes sense to give the court -- the trial court discretion to

01:26:28   14   hear declaratory judgment cases because, as your Honor pointed

01:26:32   15   out, the meter is running.  Somebody is standing by -- if that

01:26:36   16   threat is there, the meter is running.  It's not fair to have

01:26:40   17   that hanging over somebody's head.  They want resolution.

01:26:42   18   They don't want to be liable for these damages ultimately.

01:26:44   19          That's not the case here.  The meter is shut off.

01:26:46   20   There's been no question about it.  And that leads into why

01:26:50   21   Mr. Powers' second point is 100 percent wrong.  He said,

01:26:52   22   Motorola continues to infringe, they're making products, we

01:26:56   23   all walk out of this courtroom today, well, those damages for

01:26:58   24   the same products at issue in this case continue to accrue.

01:27:02   25   Absolutely wrong.  This case -- your Honor has ruled in this

01:27:04 1   case.  It's res judicata.  They had their chance at getting

01:27:10 2   damages for those products for current sales and future.  They

01:27:14 3   didn't meet their burden of proof.  They can't file another

01:27:16 4   lawsuit and say, Well, we'd like a second shot even though in

01:27:20 5   front of Judge Posner, we didn't meet the standard.  They can

01:27:26 6   certainly go out and sue on different products not at issue

01:27:28 7   here, but, again, that does not confer declaratory subject

01:27:34 8   matter jurisdiction on this court.

01:27:34 9   And by the way, one of the two points they raised in

01:27:36 10  the reply they filed this morning, they say, Well, for

01:27:40 11  example, there are other disputes brewing between the parties,

01:27:42 12  we asked Motorola to agree that there wouldn't be U.S. suits

01:27:48 13  filed on the Qualcomm chip, and they wouldn't agree, and

01:27:52 14  that's an issue that's hanging out there.

01:27:54 15  What they didn't tell this court is, once again, they

01:27:56 16  filed suit on the Qualcomm chips.  They filed a DJ action in

01:28:00 17  San Diego that, again, you can look up in the Internet, it's

01:28:08 18  pending in San Diego.  They filed that declaratory judgment

01:28:08 19  action.  It's pending now.  They want resolution.  They say

01:28:10 20  there is no infringement there because that license is

01:28:12 21  pending.  That case exists.  How can they possibly say we need

01:28:16 22  to go to trial there because it may lend clarity or

01:28:18 23  information on that case?  It's not true.  That case is

01:28:22 24  pending in the San Diego District Court.

01:28:26 25  THE COURT:  Thank you, Mr. DeFranco.

| | |
|---|---|
| 01:28:30 | 1 |
| 01:28:34 | 2 |
| 01:28:34 | 3 |
| 01:28:38 | 4 |
| 01:28:42 | 5 |
| 01:28:46 | 6 |
| 01:28:50 | 7 |
| 01:28:54 | 8 |
| 01:28:56 | 9 |
| 01:29:00 | 10 |
| 01:29:04 | 11 |
| 01:29:08 | 12 |
| 01:29:10 | 13 |
| 01:29:16 | 14 |
| 01:29:18 | 15 |
| 01:29:22 | 16 |
| 01:29:26 | 17 |
| 01:29:30 | 18 |
| 01:29:34 | 19 |
| 01:29:38 | 20 |
| 01:29:42 | 21 |
| 01:29:48 | 22 |
| 01:29:50 | 23 |
| 01:29:54 | 24 |
| 01:29:56 | 25 |

Mr. Powers?

MR. POWERS:  Thank you, your Honor.  Very briefly, two points.  I think the discussion from Mr. Swedlow helps put in sharp relief exactly why their damages theory on the '898 is highly implausible.  And it's really the distinction between a licensing campaign in the real world and litigation and damages in a patent litigation.  He is saying in the real world, we would get a royalty-free license because there is a stacking policy that a party like Motorola might give in a private licensing negotiation.  We don't get that in litigation.  That's why in litigation, they have to value that particular patent in suit.

And the silliness of their theory was made quite clear by even Mr. Swedlow's comments where he said, quote, a license to one patent is useless because in his view, we infringe the other standards-essential patents.  Yet under their theory, that useless license, which presumably means zero value, we have to pay 40 or 50 percent of the entire value of the entire portfolio even though it is useless.  And yet the analytic underpinning for their position is something that's irrelevant to patent litigation, i.e., that in a private licensing model, they would give us the others for free once we pay effectively what they think is what they are entitled to for the portfolio.

The reality is this is a patent litigation.  It is

01:29:58 1  not a licensing program.  In the patent litigation, they have

01:30:00 2  to prove the value of that patent.  They failed to do so.

01:30:04 3  The second -- the only second issue I want to raise

01:30:08 4  is the question regarding injunction, and I would note that

01:30:12 5  Apple would like to proceed.  I understand your Honor said you

01:30:14 6  don't think you need one, but Apple would request a hearing at

01:30:20 7  which the parties could attempt to satisfy the eBay factors

01:30:24 8  and do a traditional injunction hearing before you.  And I

01:30:28 9  would just note that request.

01:30:30 10  THE COURT:  All right.  Thank you.  Thank you very

01:30:32 11  much.

01:30:36 12  MR. POWERS:  Thank you, your Honor.

01:30:36 13  THE COURT:  Let me respond briefly.

01:30:44 14  With regard to the '263, I think Mr. Powers made a

01:30:54 15  good point that Apple didn't have to show that the chip

01:31:06 16  identified by Dr. Polish was the very best design-around.

01:31:14 17  Obviously, there are limits to how much a burden you place on

01:31:20 18  the -- Dr. Polish said this would be -- this is the standard

01:31:22 19  thing, this is what other people use.  That might well be

01:31:26 20  enough, but -- of course, that's not in his report, and I

01:31:38 21  don't think a computer scientist really is the expert that

01:31:40 22  you -- or the only expert you need on damages.  You need

01:31:46 23  someone who is involved more in a financial part of the

01:31:52 24  company or the selling part, the marketing, the procurement,

01:31:56 25  so I don't think it works.

01:31:58　　1　　　　　　I think with the '647, the point is not that I think

01:32:04　　2　　that HTC is some fly-by-night.  I know it's a substantial

01:32:08　　3　　company.  But that's all I know.  And that's all that's in the

01:32:12　　4　　record.

01:32:14　　5　　　　　　So Mr. Napper's expert report, his paragraph or maybe

01:32:20　　6　　his two paragraphs on the HTC, it doesn't tell you anything

01:32:22　　7　　about the HTC -- about HTC, which we say this is comparable to

01:32:28　　8　　Motorola facing the same situation and so on and Motorola

01:32:34　　9　　would have been in the same spot if it were importing, you

01:32:40　　10　　know -- but, of course, the limit -- it wouldn't be before the

01:32:44　　11　　ITC, so it wouldn't get the four-month exclusion.  So I think

01:32:50　　12　　that fails.

01:32:52　　13　　　　　　And with regard to the -- with the '898, I think what

01:33:00　　14　　Mr. Powers said was very powerful.  But in any event, as I

01:33:06　　15　　say, there just has to be more on -- again, I go back to the

01:33:10　　16　　problem of the alternatives.  The value is whether the

01:33:16　　17　　portfolio or the single patent, it's not the hold-up value,

01:33:22　　18　　it's the reasonable value of an individual patent.  And I just

01:33:28　　19　　don't see how one -- how each of the patents is worth -- in

01:33:32　　20　　some package of a hundred patents, how each of them is worth

01:33:38　　21　　-- what it would mean to say each of them is worth 347

01:33:42　　22　　million.  The first is worth 347 million, the second is worth

01:33:48　　23　　347, the other 98 are free.  Maybe I am just confused about

01:33:52　　24　　this, but that's as far as I get.

01:33:54　　25　　　　　　Now, with regard to Mr. Powers' suggestion, well,

| | |
|---|---|
| 01:34:02 | 1 |
| 01:34:06 | 2 |
| 01:34:12 | 3 |
| 01:34:20 | 4 |

1 maybe we should have an injunction hearing to go through the

2 eBay factors to see whether maybe there are grounds for an

3 injunction, I am not -- I don't think I would do anything, but

4 I don't want to foreclose that. I want to think about that.

5 So I will get out an order tonight. I am certainly

6 going to grant summary judgment on the damages; but with

7 regard to the injunctive relief, I will certainly consider

8 Mr. Powers' suggestion.

9 I am pretty sure -- if without such a hearing, I

10 think there couldn't be injunctions here. It would have to be

11 royalty substituting for the injunctions. I think -- if I am

12 positive of that, then there would be no reason to the

13 hearing, but I am open to the hearing. If there is such a

14 hearing, we could have it Monday. I don't see any use

15 whatsoever in deferring this. There is not going to be a big

16 production to go through the eBay factors. But I will think

17 about this. I will send out something tonight.

18 I do want to just remark briefly about the contract

19 tort contrast Mr. Powers points to. I don't see it in that

20 way. What is true in contract cases is, yes, the breach of

21 contract is the wrong; whereas in tort law, there is no wrong

22 without an injury. So no matter how negligent or reckless you

23 have been, if you haven't actually injured the plaintiff,

24 produced an injury for which damages or some other relief can

25 be awarded, then there is no claim, there is no cause of

| | |
|---|---|
| 01:36:10 | 1 |
| 01:36:14 | 2 |
| 01:36:18 | 3 |
| 01:36:22 | 4 |
| 01:36:28 | 5 |
| 01:36:34 | 6 |
| 01:36:38 | 7 |
| 01:36:42 | 8 |
| 01:36:50 | 9 |
| 01:36:54 | 10 |
| 01:36:58 | 11 |
| 01:37:04 | 12 |
| 01:37:06 | 13 |
| 01:37:12 | 14 |
| 01:37:14 | 15 |
| 01:37:18 | 16 |
| 01:37:22 | 17 |
| 01:37:28 | 18 |
| 01:37:32 | 19 |
| 01:37:34 | 20 |
| 01:37:38 | 21 |
| 01:37:42 | 22 |
| 01:37:46 | 23 |
| 01:37:48 | 24 |
| 01:37:52 | 25 |

1 action.  So that's fine.

2 Whereas in the case of contract, breach of contract

3 is considered wrong, not a serious wrong, but it's a wrong in

4 a technical sense.  And because it's a wrong, even if you fail

5 to prove damages, you get nominal damages as your booby

6 prize, $1, and then you can tell people, Well, you know, that

7 other guy, the defendant, he broke his contract, the court

8 said so, they gave me the dollar to prove that I won, but,

9 unfortunately, I couldn't prove damages.  Okay.  That's fine.

10 But I don't think you can have a trial in which the

11 victim of the breach says, Well, you know, your Honor, we'd

12 really like to have a trial, we know we can't prove damages,

13 we don't have any damages, but we want our dollar because --

14 not because we care about a dollar, since it's going to cost

15 us millions to try this case, but we want to be able to tell

16 people that we were the victim of a breach of contract and the

17 defendant is bad, we want everyone to know that.  No.  The

18 judge would say, No, you don't have a case, because the

19 nominal damages, it's not that the nominal damages represent

20 your injury, you were injured, you were just injured to the

21 dollar.  That's not the point.  The point of the nominal

22 damages is just to symbolize, to signify that you were the

23 victim of a breach of contract, though you were not injured.

24 Right?

25 So if you can come into court, come into a federal

01:37:56  1   court, you have to prove, you know, a case of controversy

01:38:00  2   within a meaning that the Supreme Court has had those terms

01:38:06  3   over the years, you have to prove an injury, even though

01:38:16  4   whereas you have a colorable claim for damages but you don't

01:38:16  5   succeed in proving any, you still get your dollar.  I don't

01:38:20  6   think that argument works.

01:38:22  7         So I am going to think about Mr. Powers' closing

01:38:28  8   suggestion, and I will issue an order tonight.  The damages

01:38:32  9   are out.  And I do want you to be prepared if I decide to --

01:38:40  10  if I accept Mr. Powers' suggestion, then I would like you to

01:38:46  11  be ready to have a hearing on Monday on injunctive relief.

01:38:54  12        Mr. Powers?

01:38:54  13        MR. POWERS:  May I ask two questions, your Honor?

01:38:56  14        THE COURT:  Sure, of course.

01:38:56  15        MR. POWERS:  There are a couple of deadlines tonight

01:38:58  16  in Dr. McLaughlin's deposition scheduled for tomorrow.

01:39:02  17        THE COURT:  You can forget all those.

01:39:04  18        MR. POWERS:  I assume we can cancel those?

01:39:06  19        THE COURT:  Yes.

01:39:06  20        I don't think there is anything else to discuss.

01:39:10  21        So, anyway, if this is the last time we meet, I have

01:39:16  22  certainly -- I have enjoyed the case so far.  You're excellent

01:39:20  23  lawyers.  I really enjoyed reading your stuff and listening to

01:39:22  24  you.  You know, I know you're at the top of your profession,

01:39:28  25  and it's been a pleasure for me and my law clerks.  I'm sorry

01:39:32   1   that it seems to be petering out like this, but I have been

01:39:38   2   trying to give it the best -- my best shot.

3        (Which were all the proceedings had in the above-entitled

4   cause on the day and date aforesaid.)

5        I certify that the foregoing is a correct transcript from
6   the record of proceedings in the above-entitled matter.

7   _____          _____
    Carolyn R. Cox                          Date
8   Official Court Reporter
    Northern District of Illinois

9   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25