QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE ARGUMENTS FROM SAMSUNG'S INVALIDITY AND NON-INFRINGEMENT EXPERT REPORTS REGARDING APPLE PATENTS**<br><br>Date: December 10, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 5<br>Judge: Honorable Paul S. Grewal<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

I.    LEGAL STANDARD ................................................................................................. 1

II.   THERE IS NO BASIS TO STRIKE SAMSUNG'S EXPERTS' OPINIONS ...................... 2

    A.    Samsung Timely Disclosed Its Theories Of Invalidity ............................................ 2

        1.    Dr. Chase Opined On Invalidity Theories That Samsung Disclosed
             In Its Contentions ....................................................................................... 2

            (a)    Windows Mobile ..................................................................... 2

            (b)    Evolution ................................................................................ 5

            (c)    iSync ...................................................................................... 7

        2.    Dr. Jeffay Opined On Invalidity Theories That Samsung Disclosed
             In Its Contentions ....................................................................................... 7

            (a)    Samsung timely disclosed its invalidity theory based on the
                  Sidekick Handbook ................................................................ 7

            (b)    Samsung's invalidity theory based on the MHonArc
                 System/Mosaic System was timely disclosed ................................ 10

            (c)    Background information in Dr. Jeffay's Report based on his
                 past experiences should not be stricken ......................................... 11

        3.    Demonstratives For WAIS And AppleSearch Prior Art Were
            Properly Disclosed; Apple Has No Legal Basis For Striking
            Demonstratives ......................................................................................... 12

            (a)    The AppleSearch and WAIS demonstration systems were
                 properly disclosed .......................................................................... 13

            (b)    The Windows Mobile and Evolution demonstration systems
                 were properly disclosed .................................................................. 14

        4.    Samsung's Rebuttal Reports Addressed New Theories And
            Opinions Presented In Apple's Opening Expert Reports ........................... 15

            (a)    Dr. Rinard's analysis of prior art in his Rebuttal Report could
                 not have been provided in his Opening Report due to
                 Apple's late disclosure of its claim construction theories ............... 16

            (b)    Dr. Chase's Rebuttal Report disclosed no new opinions
                 regarding prior art ......................................................................... 17

        5.    Samsung Properly Offered Certain Indefiniteness Theories In
            Rebuttal ................................................................................................... 17

SAMSUNG'S OPP. TO APPLE'S MOT. TO STRIKE ISSUES RELATED TO APPLE PATENTS

(a) Dr. Jeffay's Opinion That Claim 1 of the '647 Patent is Indefinite Was Properly Included in his Rebuttal Report .............. 17

(b) Dr. Wigdor's analysis of the indefiniteness of claim 18 in his rebuttal report was provided in response to Dr. Cockburn's interpretation of the claim ................................................. 18

6. The Court Should Not Strike The Portions Of Dr. Greenberg's Report Concerning Apple's Failure To Identify Any "Instructions" .......... 18

B. Dr. Jeffay's Use Of Judge Posner's Opinion In *Apple v. Motorola* Was Proper ................................................................................. 20

C. Dr. Rinard Did Not Rely On Unproduced Source Code ........................................ 21

1. Data Regarding User Preferences For Accused Features ........................... 21

2. Data Regarding Time Required To Carry Out Design Changes ................. 22

D. Dr. Rinard's Access To Google Source Code Was Proper ..................................... 23

III. CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amtel Corp. v. Info Storage Devices, Inc., No. C 95-1987 FMS,*
   1998 WL 775115 (N.D. Cal. Nov. 5, 1998) ..............................................................1

*Apple Inc. v. Samsung Elecs. Co., Ltd.,*
   No. 11-cv-1846-LHK, 2012 WL 2499929 (N.D. Cal. June 27, 2012) .....................12

*Apple Inc. v. Motorola Inc. et al.,*
   Case No. 1:11-cv-08540 (N.D. Ill.)..........................................................................20

*DCG Sys. v. Checkpoint Techs., LLC,*
   No. 11-CV-03729 ........................................................................................................1

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.,*
   287 F.3d 1108 (Fed. Cir. 2002) ................................................................................14

*Fenner Invs., Ltd. v. Hewlett-Packard Co.,*
   No. 08-CV-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ...................................2

*GenSci OrthoBiologics v. Osteotech, Inc.,*
   2001 WL 36239743 (C.D. Cal. Oct. 18, 2001) .................................................16, 23

*Genentech v. Trustees of Univ. of Penn., No. C 10-2037 (PSG),*
   2012 WL 424985 (N.D. Cal. Feb. 9, 2012)................................................1, 2, 14, 16, 23

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
   467 F.3d 1355 (Fed. Cir. 2006) ..................................................................................1

*Oracle Am., Inc. v. Google Inc.,*
   No. C 10-3561 (WHA), 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)..............1, 2, 4

*Prism Techs., LLC v. AT&T Mobility, LLC,*
   8 2013 WL 100390 (D. Neb. Jan. 8, 2013) ...............................................................25

*Stonebrae, L.P. v. Toll Bros., Inc.,*
   2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) .............................................................15

## Statutes

35 U.S.C. § 102 .................................................................................................................7

35 U.S.C. § 102(a) ............................................................................................................9

35 U.S.C. § 102(b) ............................................................................................................9

35 U.S.C. § 102(e) ............................................................................................................9

35 U.S.C. § 102(f) .............................................................................................................9

35 U.S.C. § 102(g) ...............................................................................................9

35 U.S.C. § 102(f) ...............................................................................................9

35 U.S.C. § 103 ...................................................................................................9

Fed. R. Evid. 703................................................................................................15

SAMSUNG'S OPP. TO APPLE'S MOT. TO STRIKE ISSUES RELATED TO APPLE PATENTS

## MEMORANDUM OF POINTS AND AUTHORITIES

Apple's motion to strike is a transparent attempt to manufacture reciprocal disputes, regardless of merit.   Apple did not raise even *one* of the complaints in its motion until two weeks *after* Apple learned Samsung would move to strike new theories in Apple's expert reports.   (Ex. 1 (Oct. 4, 2013 Thakur Letter to Buroker); Ex. 2 (Oct. 17, 2013 Buroker Letter to Thakur).)   But there is one problem with Apple's effort at tit-for-tat motion practice: Samsung *did not include new theories in its expert reports*.   Instead, Samsung's experts opined on the same theories disclosed in Samsung's contentions and interrogatory responses.   Apple's effort to manufacture disputes fails, and its motion should be rejected in short order.

## I.   LEGAL STANDARD

The purpose of the Patent Local Rules is to "require parties to crystallize their theories of the case early in the litigation."   *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Amtel Corp. v. Info Storage Devices, Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998)).   But the rules do not require parties to "'prove up' their theories . . . at the time they make their contentions."   (Dkt. 636 at 6 (*citing DCG Sys. v. Checkpoint Techs., LLC*, No. 11-CV-03729 (PSG), 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012)).   Thus, a party need not include in its contentions every piece of evidence it will use to support its already disclosed theories.   *See*, *e.g.*, *Oracle Am., Inc. v. Google Inc.*, No. C 10-3561 (WHA), 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011) ("That a particular document or source code file was not cited in a party's infringement disclosures does not automatically preclude the party from using that document or file to support a *theory* that was timely disclosed."); *see also Genentech v. Trustees of Univ. of Penn.*, No. C 10-2037 (PSG), 2012 WL 424985, at *1 n.7 (N.D. Cal. Feb. 9, 2012) (contentions and expert reports are not co-extensive, and contentions need not include all the evidence a party needs to prove its case).

## II.      THERE IS NO BASIS TO STRIKE SAMSUNG'S EXPERTS' OPINIONS

### A.      Samsung Timely Disclosed Its Theories Of Invalidity

Apple moves to strike multiple prior art references – not because they are new, but because they are "key."   (Mot. at 3.)[1]   But this "key" prior art was disclosed in Samsung's contentions. Its invalidating functionality was described there at length.   Apple complains Samsung did not prove up its invalidity case *in the contentions*, by citing each and every source code file that implemented the invalidating functionality.   This is meritless.   This Court regularly rejects similar motions.[2]   Apple's attempt to avoid invalidating prior art should likewise be rejected.

### 1.      Dr. Chase Opined On Invalidity Theories That Samsung Disclosed In Its Contentions

Apple asks the Court to strike Dr. Chase's citations to a few particular source code files for Microsoft's Windows Mobile software, Novell's Evolution software, and Apple's iSync software. (Mot. at 3.)   Samsung disclosed the invalidating functionality in each of these software programs as part of Samsung's invalidity contentions.   It then pursued discovery on those theories, obtained the source code files implementing the disclosed functionalities, and disclosed the names of those files in interrogatory responses during fact discovery.   Indeed, Samsung's interrogatory responses identify each and every file Apple now complains about.   Apple complains Samsung's invalidity contentions did not cite this code, but this is of no matter – Apple was on notice of the theory, and the evidence supporting that theory was disclosed during discovery.

### (a)      Windows Mobile

Samsung's invalidity contentions explained how Windows Mobile anticipates claim 20. For example, claim 20 requires synchronizing at least three data classes:   Samsung explained

---

[1]      References to Apple's Motion to Strike Arguments From Samsung's Invalidity and Non-Infringement Expert Reports Regarding Apple Patents, Dkt. 882-3, are cited as (Mot. at _.). References to the Declaration of Michael L. Fazio In Support of Samsung's Opposition to Apple's Motion to Strike, filed herewith, are cited as (Ex. _.).
[2]      *See, e.g.*, *Oracle*, 2011 WL 4479305, at *3; *Genentech*, 2012 WL 424985, at *1 n.7; *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 08-CV-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010).

1    how Windows Mobile synchronized Mail, Contacts, and Calendar data.[3]   Claim 20 also requires

2    at least three synchronization software components, one for each data class:   Samsung explained

3    how Windows Mobile's "Sync Client" application contained ████████████████████████████

4    ████████████████████[4]   That included a Microsoft diagram illustrating the "components of

5    the client and server communications model" for synchronization, including the Sync Client's

6    mail, contacts, and calendar components:



15    (Dkt. 853-12, Ex. D-11 at 29 (annotation added).)[5]   Samsung also identified the operations

16    performed by ████████████████████████ to sync mail, contacts, and calendar data in its

17    invalidity contentions.[6]   Samsung identified the folder on Microsoft's source code review

18    machine that contained the code implementing ██████████████████████████████████████

19

20       [3]    Furman MSJ Opp. Decl. Ex. B-2 (Dkt. 853-12, Samsung's Amended Invalidity
Contentions, Ex. D-11) at 26-27 ("ActiveSync enables you to synchronize data between your

21    mobile device and Exchange Server 2003.   E-mail, contacts, and calendar information (Personal
Information Manager, or PIM, data) can all be synchronized.").

22       [4]    *See, e.g., id.* at ██████████████████████████████████████████████
Decl.) ¶¶ 78, 87-88.)   ██████████████████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████████████████████████████████████████

24 ██████████████   (*Id.*)

25       [5]    As explained in ██████████████████ n support of its Motion for Summary
Judgment of Invalidity, ████████████████████████ s identical to the preferred embodiment of

26    the '414 patent, shown in Figure 4 of the patent.   (Dkt. 946-4 at 6-7.)
   [6]    Furman MSJ Opp. Decl. Ex. B-2 (Dkt. 853-12, Samsung's Amended Invalidity

27    Contentions, Ex. D-11) at 16-17 (describing creating and sending sync requests to the server, and
processing data received from the server); *id.* at 111-12 (describing separate Mail, Contacts, and

28    Calendar "Collections" on which the ████████████████████████ perform these operations).

1     ████████████████ (*id.* at 37-38) and added detailed descriptions of how ████████

2     ██████████████████████████ (*id.* at 111-12; *see also* Ex. 3 ████████

3     ███████████████ at MSFT-00630-000239-MSFT-00630-000240).

4         Apple nonetheless complains that "[f]or the first time in Dr. Chase's opening expert report

5     . . . Samsung points to ███ data class-specific components in Windows Mobile – ███

6     ██████████████████████████████████████

7     ████████ (Mot. at 4.)   These are simply the files implementing ████████

8     ████████████████████████████████████

9     ██████████████████████████ These

10     files were located in the source code directory Samsung identified by name in its invalidity

11     contentions.   (Furman MSJ Opp. Decl. Ex. B-2 (Dkt. 853-12, Samsung's Amended Invalidity

12     Contentions, Ex. D-11) at 37.)   Each file was also cited in interrogatory responses.   (Fazio MSJ

13     Reply Decl. Ex. 12 (Dkt. 946-13, Samsung's Further Supplemental Response to Interrogatory No.

14     28) at 52-53.)   There is no basis to strike portions of an expert report that merely describe

15     previously disclosed theories more fully with pinpoint citations to source code files.   *See, e.g.,*

16     *Oracle Am., Inc.*, No. C 10-3561 (WHA), 2011 WL 4479305, at *3 (denying motion to strike

17     expert's citations to specific source code files not named in the relevant portion of plaintiff's

18     infringement contentions because they did not constitute a new infringement theory; "Just as an

19     accused hammer may later be described as being located in a toolbox, the accused functions

20     disclosed in Oracle's infringement contentions are described more fully in the Mitchell report with

21     reference to the file DvmDex.h.").

22         Apple further complains that, without these file names, Apple could not adequately depose

23     _____

24     [7] ████████████████████████████████████ n notice that

25     Windows Mobile included ████████████████████████ Samsung

26     ████████████████████ in its interrogatory responses.   (*See* Furman MSJ

      Opp. Decl. Ex. B-2 ████████████████ d Invalidity Contentions, Ex. D-11) at 10-11

27     and 111-12; Ex. 3 ████████████████ at MSFT-00630-000239 through MSFT-
      00630-000240; Fazio MSJ Reply Decl. Ex. 12 (Dkt. 946-13, Samsung's Further Supplemental

28     Response to Interrogatory No. 28) at 52-53.)

SAMSUNG'S OPP. TO APPLE'S MOT. TO STRIKE ISSUES RELATED TO APPLE PATENTS

1  witnesses.   (Mot. at 5.)   But Apple *did* depose witnesses about this code:   ex-Microsoft

2  employee Gary Hall *specifically testified* ██████████████████████████████████████

3  ██████████████████████████████████ (Fazio MSJ Decl. Ex. 23 (Dkt. 809-2, Hall

4  Dep.) at 30:20-31:5 and 40:22-42:25), and Apple *did* examine Mr. Hall about ██████████

5  ████████   (Fazio MSJ Reply Decl. Ex. 2 (Dkt. 946-13, Hall Dep.) at 70:4-71:16.)   Apple's

6  expert presented nearly 20 paragraphs of analysis regarding Windows Mobile, and never once

7  argued additional discovery or testimony was necessary.   (Dkt. 853-13 at ¶¶ 537-553.)

8                    (b)    Evolution

9          Samsung's invalidity contentions explain how Novell's Evolution software anticipates

10  claim 20.   This includes explaining how ███████████████████████████████████

11  (Ex. 4 (Samsung's Initial Invalidity Contentions, Ex. D-1) at 6-22, 29-37, and 102-107.)   For

12  ███████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  █████████████████████████   (*See id*. at 29-37 and 102-107.)   Samsung

15  described ██████████████████████████████████████████████████

16  █████████████████████████[8]  and cited the directory of publicly-available Evolution

17  source code that contained the files implementing the Exchange Connector component.   (*See id*.

18  at 1.)[9]   Samsung then subpoenaed former Evolution developers Miguel de Icaza and Jeffrey

19  Stedfast, each of whom confirmed that █████████████████████████████████████

20  ████████████ (Ex. 6 (de Icaza Dep.) at 75:17-76:8; Ex. 7 (Stedfast Dep.) at 51:10-22), and

21  disclosed Daniel Winship, the lead developer of the Exchange Connector, as a witness with

22  relevant knowledge – a witness Apple subpoenaed and deposed about his work on the Exchange

23  _____

24  [8]   ███████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████

27  [9]   Samsung produced a copy of the Exchange Connector source code directory with its
    initial invalidity contentions on August 10, 2012.   (*See* Ex. 5 (August 10, 2012 Florance Email to
28  Apple).)

1  Connector (Ex. 8 (Winship Dep.) at 28:1-32:5.)

2        Despite this, Apple's Motion argues that "Samsung for the first time through Dr. Chase's

3  opening report points to three elements of the Evolution system he calls the (1) Exchange

4  Connector process, (2) EDataCal object and (3) Exchange Calendar backend."   (Mot. at 5.)

5  This is false.   The Exchange Calendar backend and EDataCal object are ██████████████

6  ████████████████████████████████████████ (Ex. 31 (Chase Opening Report, Ex.

7  1) at 19-22), and that functionality was clearly and repeatedly disclosed in Samsung's contentions.

8  (Ex. 5 (Samsung's Initial Invalidity Contentions, Ex. D-1) at 1, 2, 7, 8, 16, 19, 29-32, and 102-

9  106.)[10]   Again, Apple's argument about "new theories" is in fact a complaint that Samsung's

10  contentions did not enumerate by name every source code file that its technical expert relied on to

11  prove invalidity.   But this is simply evidence in support of a theory already disclosed – evidence

12  that Samsung nevertheless cited, by file name, in its interrogatory responses.   (Fazio MSJ Reply

13  Decl. Ex. 12 (Dkt. 946-13, Samsung's Further Supplemental Response to Interrogatory No. 28) at

14  52-53.)   And again, while Apple claims it could not depose witnesses without the names of these

15  source code files (Mot. at 6), Apple *did* examine Evolution developers about these very

16  components.[11]   Apple's expert presented over 40 paragraphs of analysis regarding Evolution, and

17  never once argued additional discovery or testimony was necessary to formulate his opinions.[12]

18

19  _____

20    [10]   As noted above, Samsung's invalidity contentions cite the public source code directory
21  for the Exchange Connector component.   (Ex. 5 (Samsung's Initial Invalidity Contentions, Ex.
    D-1) at 1.)   The "Calendar" folder in this directory contains code implementing the Exchange
22  Calendar backend and EDataCal object.   (*See* Evolution Exchange 2.4.2 source code, produced
    natively at SAMNDCA630-00944437.)
23    [11]   *See, e.g.*, Ex. 6 (de Icaza Dep.) at 242:12-243:18 ("████████████████████████
24  ██████████████████████"); Ex. 8 (Winship Dep.) at 36:14-38:17 ("Q. What handles the Exchange
    calendar and contacts?   A. The Evolution Exchange process."); *id*. at 46:18-47:21.)
25    [12]   Apple's reference to its interrogatory response "regarding whether Evolution anticipated
    claim 20" is misleading.   (Mot. at 6.)   The interrogatory response was boilerplate; it did not
26  identify *any* specific components of the Evolution system, despite the many detailed citations in
    Samsung's invalidity contentions; the result would have been no different if Samsung had
27  identified each and every source code file by name.   (Ex. 55 (Apple's Supplemental Response to
    Samsung's Third Set of Interrogatories, No. 26) at 89-91.))
28

1            (c)    iSync

2        Apple's iSync software was disclosed in Samsung's invalidity contentions, including

3  discussions of Apple's own presentations to developers on ███████████████████

4  █████████████████████████████  (*See* Ex. 9 (Samsung's April 22, 2012 Amended

5  Invalidity Contentions, Ex. D-10) at 103; *see also* Ex. 10 (Toby Paterson, *Sync Services:*

6  *Fundamentals of Data Synchronization* (WWDC 2004)) at APLNDC630-0000196250, 259, 269

7  and 278; Ex. 11 (Gordon Freedman, *Sync Services: Syncing Your Data With Sync Services*

8  (WWDC 2004)) at APLNDC630-0000196085-88 and 100-104.)    Samsung further explained that

9  iSync was configured to synchronize multiple different data classes.    (Ex. 9 (Samsung's April 22,

10 2012 Amended Invalidity Contentions, Ex. D-10) at 27-34, 103-106, and 115-120.)    Contrary to

11 Apple's Motion, Samsung specifically identified bookmarks as one of these data classes.    (*Id*. at

12 103.)    Apple now complains Samsung's contentions did not cite the source code for the ██████

13 ████████ that implements bookmark sync – but Apple *did not produce* this code until July 17,

14 2013, *after* the close of fact discovery.    (*See* Ex. 12 (July 18, 2013 Letter from Rho to Thakur).)[13]

15 Samsung could not cite code before Apple produced it.

16        **2.    Dr. Jeffay Opined On Invalidity Theories That Samsung Disclosed In
            Its Contentions**

17

18            (a)    <u>Samsung timely disclosed its invalidity theory based on the Sidekick
                    Handbook</u>

19        Apple seeks to exclude Dr. Jeffay's invalidity opinions concerning the Sidekick Handbook

20 because, according to Apple, it did not have notice of the Sidekick Handbook as invalidating prior

21 art.    This is false.    Samsung expressly disclosed the Sidekick Handbook in its invalidity

22 contentions and provided a limitation-by-limitation analysis in the accompanying charts, despite

23 Apple's insistence to the contrary.    Samsung explained that the Sidekick System anticipates

24 under 35 U.S.C. § 102 as described by, among other publications, the Sidekick Handbook.

25        Apple does not dispute that the Sidekick Handbook describes the Sidekick System.

─────────────────────────

26

27   [13]    The source code directory in which Apple produced the ██████████ indicates the
     ████████████████████████████████

28

1    Instead, Apple alleges that this is insufficient notice that the Sidekick Handbook *by itself*

2    anticipates.    Apple is off base.    Indeed, in Samsung's Third Amended Patent Local Rule 3-3 and

3    3-4 Disclosures, ***Samsung expressly identified the "Sidekick Version 1.5 Owner's Handbook" as***

4    ***a reference that "anticipate[s] under 35 U.S.C. § 102(a), (b), (e), (f) and/or (g) or render[s]***

5    ***obvious under 35 U.S.C. § 103 … the asserted claims of the '647 Patent."***    (Dkt. 540-16 at 20,

6    29.)    This alone defeats Apple's Motion.    But Samsung also separately described its invalidity

7    theory based on the Sidekick Handbook in detail in its invalidity chart for Sidekick.    (Ex. 13

8    (Samsung's Second Amended Invalidity Contentions, Ex. B-3).)    That chart states that "[t]he

9    Sidekick Handbook was published no later than March 1985" – long before the alleged invention

10   of the '647 patent – "in the United States and describes the operation of the Sidekick software

11   program, version 1.5."    (*Id.* at 1.)    For the limitations of the asserted claims, Samsung's charts

12   provide non-exhaustive cites to the Sidekick Handbook.    (*Id.*)    As such, Dr. Jeffay's opinions

13   regarding the Sidekick Handbook as an anticipatory reference do not constitute a new theory.[14]

14         Indeed, Apple has known about the Sidekick Handbook for years.    Motorola first

15   identified the Sidekick Handbook as prior art in early 2012 during the *Apple-Motorola* litigation in

16   the Northern District of Illinois,[15]  and Samsung also relied on it during the PI phase, also in 2012.

17   (*See* Cohen PI Decl. Ex. D (Dkt. 118-4) at 1 ("References cited:   SKOH – *Sidekick Version 1.5*

18   *Owner's Handbook*, Borland International, Inc, Scotia Valley, CA, March 1985.").)    Samsung's

19   expert during the PI phase prepared an invalidity chart specifically mapping the Sidekick

20   Handbook to the asserted claims (*id.*) and opined that the Sidekick Handbook anticipated the then-

21   asserted claims (Ex. 14 (Cohen PI Decl.) ¶ 118-120 ("Sidekick, as disclosed in the 1985

22   _____

23   [14]    Apple even asserts that Samsung's theory of anticipation by the Sidekick Handbook was
     not disclosed "during fact discovery" but instead "for the first time in the opening expert report of
24   Dr. Jeffay."    (Mot. at 7.)    Apple is once again wrong.    Prior to the July 15, 2013 close of fact
     discovery, Samsung expressly identified, in its July 8, 2013 Reduction of Invalidity References,
25   the "*Sidekick Version 1.5 Owner's Handbook*, Borland International, Inc, Scotia Valley, CA,
     March 1985 ('*Sidekick Handbook*')" as one of its nine invalidity references for the '647 patent.
26   (Dkt. 671 at 2.)
     [15]    *See* Supp. Fazio Daubert Decl. Ex. Q (Dkt. 948-25, Mowry Second Supp. Motorola
27   Report) at ¶¶ 50-78 ("Dr. Clark newly asserts the Sidekick Handbook, which describes an IBM-
     compatible Personal Information Management software . . . Dr. Clark cites for support . . . a
28   handbook published in March of 1985 ('Sidekick Handbook').").

1   Handbook, included all of the limitations of claims 1 and 8 of the '647 patent.")).   Furthermore,

2   Apple recognized during fact discovery that Samsung had disclosed that the Sidekick Handbook

3   alone as an invalidating reference, as evidenced by ███████████████████████████████

4   ██████████████████████████████████████   (*See, e.g.*, Supp. Fazio MSJ

5   Decl. Ex. 1 (Dkt. 946-13, Apple's Supplemental Responses to Samsung's Interrogatories (Nos. 1,

6   5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41)) at 286-87.)

7          In spite of all of this, Apple still claims to be prejudiced by its alleged lack of notice.   For

8   instance, Apple argues that it would require additional discovery to determine "whether [the

9   Sidekick Handbook] truly qualifies as a printed publication."   (Mot. at 8.)   But Apple, well

10   aware of the Sidekick Handbook as prior art, has already deposed at least one fact witness, third-

11   party Lars Frid-Nielsen, about the Handbook.   Samsung went out of its way to ensure Apple had

12   the opportunity to take discovery on Sidekick, including the Handbook, by offering Mr. Frid-

13   Nielsen for deposition in New York despite his permanent residency in Denmark.   (Ex. 15 (Frid-

14   Nielsen Dep.) at 5:11-15.)   At that deposition, Apple questioned Mr. Frid-Nielsen about the

15   Handbook, marking it as an exhibit and asking if the Sidekick Handbook was shipped with

16   purchased versions of Sidekick.   (*Id.* at 46:14-23 ("Q.   Do you know whether this manual was

17   the version that would have been shipped with the product absent the handwriting?   A.   I

18   believe so.") (objection omitted).)   Apple's prejudice claims lack merit.

19          Apple also alleges that Samsung's invalidity contentions did not provide specific citations

20   to the Sidekick Handbook for dependent claims 6 and 9.   But Apple was certainly on notice that

21   the Sidekick Handbook anticipated or rendered obvious those claims as evidenced by Samsung's

22   Rule 3-3 and 3-4 Disclosures, referenced above.   ((Dkt. 540-16 at 20, 29.) (identification of the

23   "Sidekick Version 1.5 Owner's Handbook" as a reference that "anticipates under 35 U.S.C. §

24   102(a), (b), (e), (f) and/or (g) or render[s] obvious under 35 U.S.C. § 103 . . . the asserted claims of

25   the '647 Patent.")) Dr. Jeffay's reliance on the Sidekick Handbook to show invalidity of

26   dependent claims 6 and 9 is consistent with Samsung's previous disclosures.   (*See id.*)   Indeed,

27   Apple's suggestion that Dr. Jeffay should be limited to exactly the citations identified by Samsung

28   in forming his opinions would defeat the entire point of having an independent expert testify; Dr.

Jeffay should not be limited to the exact portions of the Sidekick Handbook identified by Samsung prior to his involvement in the case.

(b)   <u>Samsung's invalidity theory based on the MHonArc System/Mosaic System was timely disclosed</u>

Apple claims "Samsung never contended in its invalidity contentions that [] MHonArc and Mosaic were part of the same single system."   (Mot. at 8.)   As with the Sidekick Handbook, this argument strains credulity, and indicates an apparent unwillingness on Apple's part to even attempt in good faith to understand Samsung's invalidity theories.   Notably, Apple admits that Samsung properly disclosed the Mosaic and MHonArc systems separately.   (*Id.* at 8-9.)   Apple argues, however, that Samsung "recognized that those two systems are distinct – not a single solidary [sic] anticipatory system."   (*Id.* at 9.)   This allegation misrepresents both Samsung's invalidity theories and the charts in which Samsung disclosed them.   Samsung disclosed early on its theory that it was "natural and obvious to use Mosaic in combination with MHonArc to process the MHonArc output data."   (Ex. 17 (Samsung's Amended Invalidity Contentions, Ex. B-1) at 8.) Apple conveniently ignores that at a deposition *conducted by Apple*, Earl Hood, the author of the MHonArc software, confirmed that MHonArc is used with Mosaic.   (Ex. 16 (Hood Dep.) at 50:17-51:10; 51:16-52:1.)

Like the Sidekick reference, Apple claims the MHonArc System/Mosaic System was not disclosed "during fact discovery" but instead "for the first time in the opening expert report of Dr. Jeffay."   (Mot. at 7.)   But during fact discovery Samsung *expressly disclosed*, in its July 8, 2013 Reduction of Invalidity References, the "MHonArc System/Mosaic System" as one of its nine invalidity references for the '647 patent.   (Dkt. 671 at 2.)

Apple does not dispute that MHonArc and Mosaic are used together.   Nor could it, as Apple previously addressed this system during fact discovery.   In its responses to Samsung's Interrogatory No. 26, Apple addressed ████████████████████████████████████████ ████████   (*See, e.g.*, Supp. Fazio MSJ Decl. Ex. 1, (Dkt. 946-13, Apple's Supplemental Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41)) at 114-120.)   Indeed, Apple's interrogatory responses, in which it argues that ████████████████

1    ▮▮▮▮▮▮▮▮▮▮   undermine Apple's ability to now argue that this was not disclosed as an

2    anticipatory system.   (*Id.* at 120.)   Clearly Apple understood it as such.

3         Moreover, Samsung's invalidity chart for Mosaic identified where individual limitations

4    were found in *both* the Mosaic and MHonArc systems.   (Ex. 17 (Samsung's Amended Invalidity

5    Contentions, Ex. B-1).)   As best Samsung can tell, Apple contends that Samsung should have

6    served an additional invalidity chart, with *exactly the same disclosures*, relabeling the prior art as

7    the "MHonArc system/Mosaic system" in the front matter.   Apple's complaint thus appears to be

8    one of semantics.   A dispute over the labeling of the information timely disclosed by Samsung

9    does not render those disclosures inadequate.   Samsung timely disclosed this invalidity theory.

10                    (c)    Background information in Dr. Jeffay's Report based on his past
                                experiences should not be stricken

11

12       Apple's complains about the so-called "Jeffay Alleged Prior Art" are similarly without

13   merit.   Apple essentially seeks to penalize Dr. Jeffay for *full disclosure* of the basis for his

     opinions.   Instead of simply *saying* that certain information would be available to one of ordinary
14
     skill in the art in performing a validity analysis, Dr. Jeffay proved it by setting forth evidence of
15
     publications and systems in existence at the time of the patent.[16]   This stands in stark contrast to
16
     the approach of Dr. Mowry, for instance, who relied at deposition on his "general knowledge" and
17
     "background and experience" with certain concepts, but admitted he did not set forth the content
18
     of that "experience" or "general knowledge" in his report.   (Ex. 19 (Mowry Dep.) at 250:16-
19
     251:3; 255:2-25; 263:13-266:13; 267:25-268:14.)
20
         Importantly, Dr. Jeffay is not arguing that *any* of the prior art software identified in
21
     Apple's motion invalidates the asserted claims of the '647 patent.   The Patent Local Rules do not
22
     require Samsung to cite every background or state-of-the-art reference in its contentions.   *See*
23

24   _____

25       [16]   Dr. Jeffay's description of the state of the art in 1994 pursuant to the first *Graham* factor
     spans over 100 paragraphs and references dozens of prior art references.   (Ex. 18 (Jeffay Opening
26   Report) ¶¶ 171-282).   Apple, however, only moves to strike a handful of those references.
     (Mot. at 9).   Apple does not dispute, and in fact ignores, that the *vast majority* of the art discussed
27   in this portion of Dr. Jeffay's report was disclosed in Samsung's invalidity contentions.   (*See*
     Mot. at 9.)   Instead, Apple only takes issue with the small subset of references that Dr. Jeffay
28   discussed based on his own personal knowledge.

Pat. Loc. R. 3-3(a) ("The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious.").   And there is no prohibition, in this Court's rules or otherwise, on an expert using his past experience in the relevant field (*i.e.*, his expertise) to form his invalidity opinion.   This is what Dr. Jeffay has done, describing additional materials related to the state of the art for the '647 patent that he, and not Samsung, was aware of and had previously used.

Indeed, in the prior case between these parties, Apple similarly moved to strike portions of the expert report of one of Samsung's experts, Dr. Andries Van Dam, arguing that Dr. Van Dam's report included "six alleged prior art references never previously disclosed in Samsung's Invalidity Contentions."   *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-1846-LHK, 2012 WL 2499929, at *3 (N.D. Cal. June 27, 2012).   This Court granted Apple's motion, but only insofar as the complained-about references were being used for "any purpose ***other than to provide background*** for the technology claimed."   *Id.* (emphasis added).   Just as in the previous case, the state-of-the-art references cited in Dr. Jeffay's report merely provide the background that a person of ordinary skill in the art would have been aware of at the time.   *Id.*

Apple suggests that only references which are "properly charted [to show] where each claim element [is] disclosed" are eligible for inclusion in an expert's report.   (Mot. at 10.)   Yet Apple ignores that its own experts did *exactly the same thing* Apple argues should be stricken from Dr. Jeffay's report.   For example, when attempting to establish the value of the invention of Samsung's '087 patent, Apple's expert Dr. Thomas Fuja describes a book – "'*HSDPA/HSUPA for UMTS: High Speed Radio Access for Mobile Communications*,' edited by Holma and Toskala"— never disclosed to Samsung.   (*See* Ex. 20 (Fuja Opening Rep.) at ¶ 861.)   Similarly, Dr. Richard Taylor, Apple's expert on Samsung's '757 patent, relied on numerous previously undisclosed references when describing what he considered to be well known in the art. (*See, e.g.*, Ex. 21 (Taylor Opening Rep.) at ¶ 46 (*citing* "Design, Implementation, and Evaluation of a Revision Control System"); ¶ 49 (*citing* "ISO/IEC 10918-1:1994" and "ISO/IEC 11172-3:1993").)

### 3.   Demonstratives For WAIS And AppleSearch Prior Art Were Properly Disclosed; Apple Has No Legal Basis For Striking Demonstratives

Apple moves to strike expert demonstratives that were timely disclosed, inspected by

Apple on multiple occasions, and the subject of questioning at expert depositions.    It does so even though these demonstratives are simply *installations of software* Samsung produced during fact discovery and cited in its invalidity contentions and interrogatory responses.    The court can quickly dismiss Apple's baseless complaints.

(a)   <u>The AppleSearch and WAIS demonstration systems were properly disclosed</u>

Apple moves to strike installations of AppleSearch and WAIS software that were produced in fact discovery, described in Samsung's invalidity contentions, and cited in Samsung's interrogatory responses, because Samsung "never moved to amend its Invalidity Contentions to indicate its intention to rely on these demonstrations to prove invalidity" and these installations "were not produced during discovery."    (Mot. at 10.)    This is legally and factually baseless.

The Patent Local Rules require contentions to set forth "[t]he identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious," "[w]hether each item of prior art anticipates each asserted claim or renders it obvious," and "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found."    Pat. Loc. R. 3-3(a-c).    They do not require contentions to set forth each document or demonstrative an expert will rely on.    And for good reason:    as this Court has explained, these rules are designed to "disclose the parties' *theories* of their case and thereby shape discovery and the issues to be determined at trial," and *not to "'prove up' their theories . . at the time they make their contentions.*"    (Dkt. No. 636 at 6 (emphases added).)    Apple does not even *cite* the Patent Local Rules, or any case law, as its legal argument is cut from whole cloth.    Indeed, Apple followed the same approach to demonstratives that it now complains of.[17]

Apple's claim that Dr. Rinard's demonstratives "were not produced during discovery"

---

[17]  ████████████████████████████████████████████████████ (*Compare* Dkt. No. 880, Ex. 23 (July 10 Contentions - Galaxy S III Infringement Chart) at 3-5, 7-8, 13 with Ex. 24 (Snoeren ████████████████████████████████████████████████████

1  (Mot. at 10) is equally baseless:    during expert discovery Apple inspected these demonstratives

2  multiple times before deposing Dr. Rinard.    (Ex. 22 (September 4, 2013 Furman Email to

3  Curran); *id.* Ex. 23 (September 9, 2013 Furman Email to Curran).)    These demonstratives were

4  installations of software produced during fact discovery, specifically identified in Samsung's

5  contentions and interrogatory responses, and made available to Apple for inspection.[18]    Dr.

6  Rinard did not modify the code for this software; he installed the software, chose from installation

7  options offered by the software, and documented his installation with detailed notes and videos

8  (Furman Decl. Ex. 6 (Dkt. 882-12, Rinard Opening Report) at ¶¶ 479-91; Rinard Decl. (Dkt. No.

9  855-8) Video Exs. 1-11, 14-38.)    This was entirely proper as a matter of law.[19]    And it in no

10  way disclosed a new theory; Dr. Rinard's decision to install this software himself and personally

11  verify its capabilities "merely provides . . . complementary proof in support of [invalidity]."

12  *Genentech, Inc.*, 2012 WL 424985, at *2.[20]

13              (b)       The Windows Mobile and Evolution demonstration systems were
                          properly disclosed

14

15        Apple says Dr. Chase's installations of prior art software, and prior art devices Dr. Chase

16  ───────────────

    [18]       Indeed, Samsung's invalidity contentions explained Samsung would "use physical
17  samples, executable software, or source code as evidence of the relevant functionality" for
    AppleSearch and WAIS.    (Ex. 25 (Samsung's Second Amended Pat. Loc. R. 3-3 and 3-4
18  Disclosures) at 60).)    Samsung obtained authentic WAIS software, produced that software,
    installed that software, and let Apple inspect that software.    (Ex. 26 (June 21, 2013 Zalduendo
19  Email to Lyon) (producing FUHRNDCA630-00000001 through FUHRNDCA630-00000012, the
    freeWAIS-sf 2.0.65 distribution); Furman Decl. Ex. 39 (Dkt. 882-45) (making the freeWAIS-sf
20  2.0.65 installation available for inspection).)    Likewise, after Apple finally produced its
    AppleSearch prior art software, Samsung installed that software and let Apple inspect that
21  software.    (Furman Decl. Ex. 39 (Dkt. 882-45) (making the AppleSearch 1.5 installation
    available for inspection).)    Samsung's interrogatory responses cited this software to support its
22  invalidity defenses (Ex. 27 at 42 (citing the AppleSearch 1.5 software produced at APLNDC630-
    Z000000003); *id.* at 44 (citing the freeWAIS-sf 2.0.65 software produced at FUHRNDCA630-
23  0000001/freeWAIS-sf-2.0.65.)    Samsung's amended invalidity contentions even included
    screenshots of this software in operation, long before expert discovery began.    (Ex. 28
24  (Samsung's Invalidity Contentions, Ex. Ex. C-21) at 3 n. 1, 9,13, 14, 22-24, 28, 33-36, 50, 54, 84,
    87, 90-91.)
25  [19]       *See Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir.
    2002) (finding a claim infringed where software "presents a user with the ability to select among a
26  number of different options," some of which performed the claimed functions without requiring
    the user to "alter the code to enable the computer to carry out those functions".)
27  [20]       Left with no basis to strike, Apple reiterates arguments from its summary judgment and
    *Daubert* motions.    Those arguments are baseless, and in any event are not motions to strike; they
28  will be decided as part of the summary judgment and *Daubert* proceedings.    (*See* Dkt. 803, 806.)

1   relied on, "were not produced during discovery."   (Mot. at 12.)   This is wrong.   All the

2   software Dr. Chase installed was produced in discovery, as were the prior art devices he used.

3   Samsung offered the HP iPaq RX 1950 devices and Palm TREO for inspection July 6.   (*See* Ex.

4   29 (July 6, 2013 Fernands Email to Stone).)   Apple used this same Palm TREO device during the

5   deposition of Robert Levy on June 13, 2013 (*See* Ex. 30 (Levy Dep.) at 64-68; Ex. 20).)   Samsung

6   produced the Microsoft Exchange 2003 Server software that Dr. Chase installed (Ex. 31 (Chase

7   Opening Rep.) ¶ 238) on June 18, 2013.   (*See* Ex. 32 (June 18, 2013 Zalduendo Email to Lyon).)

8   Samsung produced the SUSE Linux 10.0 software Dr. Chase installed on June 4.   (*See* Ex. 33

9   (June 4, 2013 Zalduendo Email to Lyon).)   And again, Samsung produced the Exchange Server

10  and SUSE Linux software for inspection on July 6, 2013.

11       Apple had ample opportunity to inspect these test systems during fact discovery.   It also

12  repeatedly inspected these demonstratives during expert discovery.   (Ex. 34 (August 29, 2013

13  Buroker Email to Fazio); Ex. 35 (September 1, 2013 Furman Email to Fazio); Ex. 23 (September

14  9, 2013 Furman Email to Curran).)   Apple's expert spent days analyzing these systems in

15  preparation of his rebuttal report.   His criticisms go to weight, not admissibility – and in any

16  event, admissibility is a question for trial, not a basis to strike Dr. Chase's opinions.[21]

17                    **4.      Samsung's Rebuttal Reports Addressed New Theories And Opinions
                              Presented In Apple's Opening Expert Reports**

18       Apple's infringement expert reports disclosed new infringement theories and claim

19  constructions, which Samsung has moved to strike.   (Dkt. 880-05.)   Apple now claims that

20  Samsung's experts must be precluded from responding to those new theories, even when those

21  new theories propose broad new claim interpretations that would result in invalidity.   (Mot. at 14-

22  15.)   The Court should reject this transparent ploy.   Apple's new theories of infringement,

23

24       [21]    *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that
         the expert has been made aware of or personally observed.   If experts in the particular field

25  would reasonably rely on those kinds of facts or data in forming an opinion on the subject, *they
         need not be admissible for the opinion to be admitted*.") (emphasis added); *see also Stonebrae,*

26  *L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, at \*4 (N.D. Cal. Apr. 7, 2011) (hearsay objection to
         expert declaration was "besides the point" because an expert is "allowed to rely on otherwise

27  inadmissible evidence as a basis for his expert opinions if . . . it is reasonable for experts to do so")
         (citing Fed. R. Evid. 703).

28

1    validity, and claim construction should be stricken.    But if the Court does not strike those new

2    theories, Samsung's experts should be allowed to respond and to demonstrate how Apple's new

3    claim interpretations impact the prior art.

4                    (a)    Dr. Rinard's analysis of prior art in his Rebuttal Report could not
                            have been provided in his Opening Report due to Apple's late
5                           disclosure of its claim construction theories

6          Dr. Snoeren's opening report for the '959 patent disclosed multiple new theories as to what

7    constitutes a "heuristic."    This included a new theory that combining Internet search results and

8    local results is a "heuristic" search (Dkt. 880 at 4-5), and a new claim that all "heuristics" must be

9    implemented as "modules."    (*Id.* at 9).

10         Dr. Rinard had no notice of these new theories at the time of his opening report.    In his

11   rebuttal report Dr. Rinard attempted to respond as best he could, given the late disclosure, by

12   comparing prior art to Dr. Snoeren's new theory that combining Internet search results and local

13   results is "heuristic" (Furman Decl. Ex. 7 (Dkt. 882-13, Rinard Rebuttal Report) ¶¶ 390-429) and

14   explaining how the prior art implemented "heuristics" as "modules."    *Id.* ¶¶ 430-500).[22]

15         Dr. Rinard could not have offered these opinions any sooner.    He, like Samsung, was not

16   aware of Dr. Snoeren's new theories any earlier, because *Apple had not disclosed them*.    Dr.

17   Snoeren's late disclosure caused prejudice to Samsung, and Dr. Rinard's best efforts to respond do

18   not alleviate this prejudice or excuse Apple's actions.    (Dkt. 880 at 17-20)    Dr. Snoeren's new

19   theories should be stricken.    (*Id.*)    If they are, Dr. Rinard's rushed attempt to respond becomes

20   irrelevant.    But if Dr. Snoeren's new theories are allowed, Dr. Rinard's response to them is also

21   admissible; it caused no prejudice to Apple and is justified under the circumstances.[23]

22   _____

23         [22]    *See also* Furman Decl. Ex. 7 (Dkt. No. 882-6, Rinard Rebuttal Report) at ¶¶ 342-389
     (noting "the Opening Snoeren Report accused functionality in the Accused Products that is present
24   in the prior art" and explaining how Dr. Snoeren's opinions support a finding of invalidity).
           [23]    *See GenSci OrthoBiologics v. Osteotech, Inc.*, 2001 WL 36239743, at *12 (C.D. Cal.
25   Oct. 18, 2001) (denying motion to strike supplemental report where supplemental report was
     "legitimately based on new information that could not have been disclosed in the initial report");
26   *Genentech*, 2012 WL 424985, at *2 ("a key consideration for the court is the timing of the
     disclosure in relation to when the disclosing party had the information and when the opposing
27   party would have needed the information in order to fairly conduct discovery or prepare a
     responsive strategy.").
28

Indeed, Apple's claims of prejudice are clearly manufactured.   Its complaints regarding "new references not cited in [the Rinard Opening Report]" (Mot. at 15) point to passages in Dr. Rinard's rebuttal report that repeat, word for word, portions of prior art references that had *already* been cited in the Rinard Opening Report.   For instance, Dr. Rinard's Opening Report quotes the same portion of the alleged "new Lycos document" and "document by Zobel and Moffat" that were quoted again in Dr. Rinard's Rebuttal Report.   (*Compare* Furman Decl. Ex. 7 (Dkt. No. 882-13, Rinard Rebuttal Report) at ¶¶ 370, 379 *with* Ex. 36 (Rinard Opening Report) at ¶¶ 90, 117-18.)   Likewise, the Rinard Opening Report discussed ████████████████████ ████████████████████████████████████████ citing the same ████████████ ██████████ document relied on in the Rinard Rebuttal Report.   (*Compare* Furman Decl. Ex. 7 (Dkt. 882-13, Rinard Rebuttal Report) at ¶ 454 *with* Ex. 36 (Rinard Opening Report) at Ex. 1, pp. 1-3 and 90-91.)   Apple's complaints of surprise ring hollow.

                (b)   <u>Dr. Chase's Rebuttal Report disclosed no new opinions regarding prior art</u>

Apple also seeks to strike ¶¶ 212-247 of Dr. Chase's rebuttal report, arguing that "all of Samsung's invalidity opinions on the '414 patent should have been offered in its opening report." (Mot. at 15.)   Yet every opinion Apple asks the Court to strike *was* disclosed in Dr. Chase's opening report.   (*Compare*, *e.g.*, Ex. 37 (Chase Rebuttal Report) ¶¶ 238-241 *with* Ex. 31 (Chase Opening Report) ¶¶ 696-700.)   As a result, there is no prejudice, and Apple's motion does not seriously contend otherwise.   Instead, Apple characterizes Dr. Chase's opinions as "nonsense" and a "practicing the prior art" defense.   (Mot. at 15.)   Apple is incorrect.   Dr. Chase explained why Dr. Snoeren's infringement opinions are admissions supporting invalidity; Dr. Snoeren's infringement opinions accuse subject matter known in the prior art.   Apple cites no legal precedent for why Dr. Chase should not be allowed to identify Dr. Snoeren's testimony as additional evidence supporting already-disclosed invalidity theories.

        **5.**   **Samsung Properly Offered Certain Indefiniteness Theories In Rebuttal**

                (a)   <u>Dr. Jeffay's Opinion That Claim 1 of the '647 Patent is Indefinite Was Properly Included in his Rebuttal Report</u>

Apple asks this Court to strike Dr. Jeffay's indefiniteness opinion on the grounds that it

1   should have been included in his opening invalidity report.   (Mot. at 13.)   Apple wrongly asserts

2   that this ground for invalidity was not disclosed in Samsung's invalidity contentions.    (*Id.*)

3   Samsung timely disclosed this theory; Samsung disclosed in its invalidity contentions that the

4   asserted claims of the '647 patent, including claim 1, are invalid as indefinite.   (Dkt. 540-16

5   (Samsung's Third Amended Patent Local Rule 3-3 and 3-4 Disclosures) at 39.)   Moreover, that

6   Apple persists in moving to strike this theory shows that Apple misunderstands Dr. Jeffay's

7   argument.   Dr. Jeffay is not arguing, in isolation, that claim 1 of the '647 patent is indefinite;

8   rather, he argues that it is indefinite ***as interpreted by Dr. Mowry***.   (*See* Furman Decl. Ex. 5 (Dkt.

9   882-11, Jeffay Rebuttal Report) ¶¶ 482-483.)   He could not have included this argument in his

10  invalidity report, as Apple suggests, because he had not yet received Dr. Mowry's opening report,

11  which provides the foundation for this indefiniteness opinion.

12               (b)    <u>Dr. Wigdor's analysis of the indefiniteness of claim 18 in his</u>
                        <u>rebuttal report was provided in response to Dr. Cockburn's</u>

13                        <u>interpretation of the claim</u>

14       Apple asks this Court to strike Dr. Wigdor's indefiniteness opinion on the grounds that it

15  should have been included in his opening invalidity report.    (Mot. at 13.)    Apple either

16  misunderstands or chooses to ignore why Dr. Wigdor included this theory in his rebuttal report.

17  Dr. Wigdor argues that claim 18 is indefinite only to rebut Dr. Cockburn's apparent interpretation

18  of that claim.    (*See* Furman Decl. Ex. 8 (Dkt. 882-14, Wigdor Rebuttal Report) ¶¶ 178-179.)

19       Counter to Apple's assertion, the Court has not "rejected [this] very argument" at the

20  preliminary injunction phase of this case (Mot. at 13) – it could not have, because Dr. Cockburn

21  had not yet interpreted the claim.    Dr. Wigdor's indefiniteness opinion properly rebuts Dr.

22  Cockburn's strained interpretation of claim 18 and should not be stricken.

23           **6.**      **The Court Should Not Strike The Portions Of Dr. Greenberg's Report**
                    **Concerning Apple's Failure To Identify Any "Instructions"**

24

25       Apple asks the Court to strike paragraphs 172-176 of Dr. Greenberg's non-infringement

26  rebuttal report concerning Apple's failure to identify instructions, in the form of source code, that

27  meet the specific claim limitations.    (Mot. at 16.)    In requesting this relief, Apple

28  mischaracterizes Dr. Greenberg's rebuttal opinion concerning "instructions" as a "new non-

SAMSUNG'S OPP. TO APPLE'S MOT. TO STRIKE ISSUES RELATED TO APPLE PATENTS

infringement theory," but identifying inadequacies in Apple's analysis is not a new "theory." (*Id.*)   And even if the failure to identify source code to satisfy the "instructions" were a separate non-infringement theory, Samsung's interrogatory responses adequately disclosed Samsung's position that the claimed "instructions" are not present in the accused devices. (Ex. 40 (Samsung's Objections and Responses to Apple's Interrogatory No. 24) at 19.)

Apple's failure to identify evidence of a particular claim limitation does not raise a new "theory" of non-infringement, but rather shows a failure of proof by Apple.   Asserted claim 8 of the '721 patent requires "instructions" "to detect. . ." "to continuously move . . ." "to unlock . . ." and "to display . . . ."   Apple's expert agrees ███████████████████████████████ (Ex. 38, ████████████████████   Apple's expert, Dr. Andrew Cockburn, had access to Samsung's source code, and reviewed that source code in connection with his opinions concerning other Apple patents.   (*See, e.g.*, Ex. 39 (Cockburn Opening Report, Ex. 2) at 5-6) ("Materials Relied Upon:   Source Code produced and made available for inspection by Samsung and Google.")   Yet Dr. Cockburn did not cite a single line of source code to show the "instructions" required by the '721 patent.   Paragraphs 172-176 of Dr. Greenberg's report merely point out that Apple has not identified any specific "instructions" concerning the functionality accused of infringing the '721 patent.

Moreover, Samsung more than adequately disclosed its position that the accused devices lack specific claimed "instructions," and that source code analysis informs this inquiry.   Indeed, in response to Apple's interrogatories, Samsung disclosed the same positions that Apple now seeks to strike from Dr. Greenberg's expert report.   For example, in its initial response to Apple's Non-Infringement Contention Interrogatory No. 24, Samsung asserted that the Accused Products lack "modules including. . . instructions. . .   to continuously move the unlock image on the touch-sensitive display in accordance with movement of the detected contact while continuous contact with the touch-sensitive display is maintained." (Ex. 40 (Samsung's Objections and Responses to Apple Interrogatory No. 24) at 19.)   Dr. Greenberg discussed this same limitation ("instructions . . .   to continuously move the unlock image on the touch-sensitive display") in the portions of his opinion that Apple now moves to strike.   (Ex. 41 (Greenberg Rebuttal Report) ¶ 174).   In

1  addition, Samsung included source code analysis in its non-infringement interrogatory responses.

2  (Ex. 42 (Samsung's Further Supplemental Objections and Response to Apple's First, Third, and

3  Tenth Sets of Interrogatories) at 137-141.)   Apple's claim that it did not understand that Samsung

4  believes source code analysis is necessary to show whether the specific claimed "instructions" are

5  present in the accused devices is simply not credible in light of Samsung's interrogatory

6  responses.[24]   Pointing out that a plaintiff has not met its burden is not, and cannot be, a "new

7  theory" – especially here, where Samsung explicitly and consistently disclosed that contention.

8  **B.**   **Dr. Jeffay's Use Of Judge Posner's Opinion In *Apple v. Motorola* Was Proper**

9  Apple moves to strike from Dr. Jeffay's rebuttal report any discussion of Judge Posner's

10  findings in *Apple Inc. v. Motorola Inc. et al.*, Case No. 1:11-cv-08540 (N.D. Ill.), Dkt. 1038

11  regarding the ease of designing around the '647 patent.   According to Apple, this is a "non-

12  infringing alternative [] not disclosed to Apple during discovery."   (Mot. at 17.)   As an initial

13  matter, Samsung did not explicitly identify the description in Judge Posner's opinion as a design

14  around because Samsung contends that its products *already* operate in the manner Judge Posner

15  described – that it, what is described by Judge Posner is not a design around but a reason the

16  Samsung products do not infringe.   Should the jury disagree with Samsung that its products

17  already operate in the manner described, any remaining modifications would be simple, as Judge

18  Posner found.

19  Regardless of how Samsung's devices work, there is no question that Apple was on notice

20  of the alternative Judge Posner described.   Indeed, Apple – and not Samsung – was a named

21  party to the opinion cited by Samsung and Dr. Jeffay.   Notably, *Apple's* expert relies on Judge

22  Posner's opinions in the Motorola litigation to support his opinions in this case – he just chose to

23  ignore those opinions that contradict his own.   (Ex. 43 (Mowry Opening Report) ¶ 5.)   To claim

24  lack of notice is counterfactual; Apple, and Apple's expert, were well aware of Judge Posner's

25  _____

26      [24]   Apple also cannot credibly contend that Samsung's choices with respect to arguments
made during the preliminary injunction phase concerning the single device addressed at that phase

27  have any bearing on Apple's understanding of Samsung's contentions as set forth in interrogatory
responses served since then.

28

1   varied opinions in the Motorola litigation but chose not to address them despite the fact they

2   directly contradict Apple's position that there are no acceptable non-infringing alternatives.

3         Moreover, contrary to Apple's assertions, Dr. Jeffay cites Judge Posner's findings

4   primarily to reinforce the "ease of designing around the patent claims at issue," *not* to introduce a

5   new design around or non-infringing alternative.   (Furman Decl. Ex. 5 (Dkt. 882-11, Jeffay

6   Rebuttal Report) ¶¶ 119, 124, 487.)   Apple leaves out the fact that its own expert, Dr. Mowry,

7   asserts that there are *no* acceptable non-infringing alternatives to the '647 patent.   (Ex. 43

8   (Mowry Opening Report) at ¶ 18 ("Samsung's identified non-infringing alternatives (to the extent

9   they are actually non-infringing) are clearly inferior to the technology claimed in the '647

10  Patent.").)   Judge Posner's opinion goes to the weight (or lack thereof) Dr. Mowry's opinions

11  should receive.

### C.        Dr. Rinard Did Not Rely On Unproduced Source Code

13        Apple asks the Court to strike Dr. Rinard's reliance "On Google Source Code That Neither

14  Samsung Nor Google Produced to Apple During Discovery."   (Mot. at 18.)   Notably absent is

15  any allegation that Dr. Rinard *actually relied on unproduced source code*.   This allegation is

16  missing for a simple reason:   Dr. Rinard did not rely on unproduced code.

#### 1.        Data Regarding User Preferences For Accused Features

18        Apple complains about ¶¶ 301-307 & 322 of Dr. Rinard's rebuttal report, but these

19  paragraphs do not analyze, rely on, or purport to analyze any source code at all.   (Mot. at 19)

20  They cite an internal Google email (Ex. 54 (GOOG-NDCAL630-00065845)) describing how often

21  users conduct Internet searches and local searches.   This internal email contains no detail on *how*

22  those searches are implemented in source code, and Dr. Rinard offers no opinions on that subject.

23  The document was produced in response to an Apple subpoena requesting Google's data on this

24  very issue:   user preferences for Internet search and user preferences for local search, *regardless*

25  of how those features are implemented in source code.   (Dkt. 614-17 (Apple's June 4, 2013

26  Subpoena to Google) at 8.)   Apple deposed the email's recipient – Google's corporate

27  representative on user preferences for these features – after receiving this document.   (Ex. 44

28  (July 23, 2013 Cooper Letter to Valek, producing document) and Ex. 53 (July 26, 2013

1   Lockheimer Dep., deposition of the document's recipient).)

2        Apple claims Dr. Rinard uses this document to "alleg[e] … later versions [of the accused

3   software] do not infringe or that they represent non-infringing alternatives," assertions that

4   "cannot be properly tested" without source code.   (Mot. at 19.)   Dr. Rinard makes no such

5   claim.   He cites the document only for "usage statistics compiled by Google" showing users are

6   much more likely "to search for information on the Internet than to search for phonetop [i.e., local]

7   results."   (Ex. 45 (Rinard Rebuttal Report) ¶ 322; *id.* ¶¶ 304-05 ████████████████████

8   ████████████████████████████████████████████████████████ .)

9   This is data Apple asked Google to provide, and that Apple received over Google's objection.[25]

10  Apple cannot erase the data by calling it "source code" – it is not – or strike Dr. Rinard's reference

11  to this data by concocting opinions Dr. Rinard does not offer.

            **2.       Data Regarding Time Required To Carry Out Design Changes**

13       As noted above, Dr. Snoeren's opening report springs a new, previously-undisclosed

14  infringement theory on Samsung, based on a new alleged "heuristic" – combining Internet search

15  results with local search history.   (*Supra* at 16.)   This new theory should be struck.   (Dkt. 880

16  at 5-7.)   If it is not, ¶¶ 196-200 and 338 of Dr. Rinard's rebuttal report should be allowed as a

17  response to this new theory.   (Ex. 45 (Rinard Rebuttal Report) at ¶¶ 196-200, 338.)

18  Specifically, Dr. Rinard opined that the local search history "could be removed in [the accused

19  software] in a very small amount of time, well less than eight hours," citing *specific source code*

20  *files Google had produced* as support for that opinion, and explaining the specific changes he

21  believed one could make to that code within eight hours.   (*Id.* ¶¶ 339-40.)   All of this code was

22  produced.

23       Dr. Rinard then noted, as additional support, engineer testimony indicating that similar

24  changes had in fact already been implemented in July 2013 – even before Dr. Snoeren first

25  _____

26  [25]   Google objected to Apple's request for this data, and moved to quash Apple's subpoena
    (Dkt. 614).   After Apple refused to withdraw the subpoena, Google and Apple resolved their
27  dispute by agreeing Google would produce certain information and provide certain depositions,
    and that no party would object to the timing of this discovery.   (Dkt. 666 at 4.)

28

1  accused this code in his August 2013 expert report – and that these changes were completed in a

2  single day.   (*Id.* ¶¶ 196, 338.)[26]   Specifically, Dr. Rinard noted that local search history had

3  already been disabled, confirming his opinion that local search history *could* be disabled.   (*Id.*)

4  To further independently confirm, Dr. Rinard downloaded the most recent, publicly-available

5  version of the accused Google Search Application software from the Google Play Store, and

6  confirmed that this software did not store local search history – further confirming that local

7  search history *could* be disabled.   (*Id.* ¶¶ 197-200.)

8        Before Dr. Snoeren offered brand-new infringement theories, Samsung and Dr. Rinard had

9  no reason to consider stored local search history.   If Dr. Snoeren's new infringement theory is

10 struck, as it should be (Dkt. 880 at 5-7), Dr. Rinard's rushed, best-efforts response to that excluded

11 opinion will be moot.   But if Dr. Snoeren's new infringement theory is allowed, Dr. Rinard's

12 response is also proper.  *See GenSci OrthoBiologics*, 2001 WL 36239743, at *12 (denying a

13 motion to strike where supplemental report was "legitimately based on new information that could

14 not have been disclosed in the initial report"); *Genentech*, 2012 WL 424985, at *2.

15      **D.**     **Dr. Rinard's Access To Google Source Code Was Proper**

16       Dr. Rinard is a full-time professor at M.I.T. in Cambridge, Massachusetts.   Google's

17 secure source code review facility is on the other side of the country, in California.   (Nardinelli

18 Decl. ¶ 2.)   Dr. Rinard received – with Google's consent – an encrypted hard drive that contained

19 the identical Google code available for review in California.   (*Id.* ¶ 6.)   Each and every file on

20 this drive was already available to Apple for inspection when Dr. Rinard received it.   (*Id.* ¶ 5,7.)

21       Apple's claim that it could not "evaluate what exactly Dr. Rinard had based his opinion

22 on" (Mot. at 19) is demonstrably false.   Apple knows full well that Dr. Rinard relied on the same

23 code Apple reviewed.   Dr. Rinard's report cited each and every file he relied on by name, down

24

25 _____

26     [26]    Dr. Rinard spoke with the software engineer who made these changes, Bjorn Bringert –
   the Google employee that Apple has twice deposed in this litigation as Google's corporate
27 representative on the accused Google Search Application software.   (*See* Ex. 46 (May 10, 2012
   Bringert Dep.) at 13:3-14:3; *id.* Ex. 47 (June 28, 2013 Bringert Dep.) at 10:3-18.).)
28

to the exact pathway for that file.[27]   Apple had printouts of the files Dr. Rinard relied on more

than a *month* before it filed this motion.   (Ex. 48 (September 22, 2013 Furman Letter to Thakur;

Ex. 49 (September 27, 2013 Thakur Letter to Buroker).)   Moreover, in September, with Dr.

Rinard's report in hand, Apple attorneys and Dr. Snoeren reviewed Google source code again to

prepare for Dr. Snoeren's deposition.   (Ex. 50 (September 21, 2013 Furman Email to Warren).)

Shortly thereafter, without leave of court, Dr. Snoeren issued a new report changing Dr. Snoeren's

original code analysis and correcting errors Dr. Rinard pointed out.   (Ex. 45 (Rinard Rebuttal

Report) at ¶¶ 137-202; Fazio Mot. to Strike Decl. Ex. 15 (Dkt. 880-21, Snoeren Errata) at 1-2, Ex.

3.)   Apple never claimed confusion about what source code Dr. Rinard referred to in his report.

During or after Dr. Rinard's deposition, Apple *never asked to see the drive Dr. Rinard used*,

perhaps preferring to file this motion.   In any event, that drive is available for Apple's inspection.

(Ex. 52 (November 19, 2013 Nardinelli Letter to Furman.)   Apple cannot point to one single

difference between the code Dr. Rinard reviewed and the code Apple inspected, because it is the

same code.   (Nardinelli Decl. ¶ 5, 7.)

        Despite this, Apple tries to strike *all* Dr. Rinard's source code analysis (Mot. at 19 (seeking

to strike ¶¶ 117-136-141-169, 174-195, 222, 229, 231, 252-253, 254-257, 269-279)), complaining

Google "made [Dr. Rinard's] task of seeking to criticize Dr. Snoeren's source code analysis much

*easier*."   (Mot. at 21 (emphasis added).)   Apple cites no authority – not one case, not one rule,

not one order – for the idea that this is a valid basis to strike.   It is not.   The Protective Order

that Apple agreed to *explicitly allows this*.   It states any "Producing Party," such as Apple or

Samsung or Google, can voluntarily provide access to its own confidential materials with any

restrictions and terms that party sees fit:   "[n]othing in this Protective Order shall prevent or

restrict a Producing Party's own disclosure or use of its own Discovery Material *for any purpose*."

(Dkt. 512 at 4 (emphasis added).)[28]

_____

[27]

██████████████████████████████████████████████

██████████████████████████████████████████████

[28]   Apple's assertion that it was unaware the relevant source code was in Google's
(footnote continued)

1    Apple could have sought a protective order that required identical access to source code for

2  each party, but it did not.    In *Prism Techs., LLC v. AT&T Mobility, LLC*, 8:12CV126, 2013 WL

3  100390 (D. Neb. Jan. 8, 2013), a party sought a protective order provision that stated "[r]egardless

4  of the means of production of source code as specified in section 9(a), outside experts for the

5  Producing Party and Receiving Party shall be limited to the same method and means for reviewing

6  source code."    *Id*. at *4.    The court in *Prism* granted that motion.    *Id*. at *5.    Apple sought no

7  such provision here.    It cannot impute one at this late stage.

8  **III.    CONCLUSION**

9    For the foregoing reasons, Apple's motion to strike should be denied.

10  DATED:    November 19, 2013         QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
11

12                                      By  */s/ Victoria F. Maroulis*

13                                        Charles K. Verhoeven
                                          Kevin P.B. Johnson
14                                        Victoria F. Maroulis
                                          William C. Price
15                                        Michael L. Fazio

16                                        Attorneys for
17                                        SAMSUNG ELECTRONICS CO., LTD.,
                                          SAMSUNG ELECTRONICS AMERICA, INC.,
18                                        and SAMSUNG TELECOMMUNICATIONS
                                          AMERICA, LLC
19

20

21  _____

22  possession is also false    (Mot. at 21.)    At a June 25, 2013 hearing (before the July 3, 2013
    deposition of Samsung's 30(b)(6) witness, Mr. Park, during which Apple claimed to have first
23  learned that the source code was in Google's possession), Apple's counsel acknowledged that
    Google provides the Google Search Application to Samsung "*in object code format*" as a "*binary
24  drop*."    (Ex. 51 (June 25, 2013 H'rg Tr.) at 31:17-25.)    Indeed, Apple has known since the
    preliminary injunction phase that Google maintains and compiles the source code for the Google
25  Search Application.    (*See, e.g.* Ex. 46 (May 10, 2012 Bringert Dep.) at 114:22-115:5 (Google
    Search Application "builds that, for example, run on the Galaxy Nexus that has [been] released to
26  the public are made from our [i.e., Google's] internal tree, our internal source tree.")    Mr.
    Bringert reiterated the same facts when Apple deposed him for a second time.    (Ex. 47 (June 28,
27  2013 Bringert Dep.) at 10:3-18, 68:11-20 ("For the current version of the Google Search App we
    do not provide source code for distribution by external partners").)
28

## ATTESTATION OF E-FILED SIGNATURE

I, Patrick D. Curran, am the ECF user whose ID and password are being used to file Samsung's Opposition to Apple's Motion to Strike Arguments From Samsung's Invalidity and Non-Infringement Expert Reports Regarding Apple Patents.    In compliance with Civil L.R. 5-1(i), I hereby attest that Victoria F. Maroulis has concurred in this filing.


Dated:    November 19, 2013                              */s/ Patrick D. Curran*
                                                                        Patrick D. Curran

SAMSUNG'S OPP. TO APPLE'S MOT. TO STRIKE ISSUES RELATED TO APPLE PATENTS