1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Cal. Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     50 California Street, 22nd Floor
3    San Francisco, California 94111
     Telephone: (415) 875-6600
4    Facsimile: (415) 875-6700

5    Kevin P.B. Johnson (Cal. Bar No. 177129)
     kevinjohnson@quinnemanuel.com
6    Victoria F. Maroulis (Cal. Bar No. 202603)
     victoriamaroulis@quinnemanuel.com
7    555 Twin Dolphin Drive 5th Floor
     Redwood Shores, California 94065
8    Telephone: (650) 801-5000
     Facsimile: (650) 801-5100
9
     William C. Price (Cal. Bar No. 108542)
10   williamprice@quinnemanuel.com
     865 S. Figueroa St., 10th Floor
11   Los Angeles, California 90017
     Telephone: (213) 443-3000
12   Facsimile: (213) 443-3100

13   Attorneys for SAMSUNG ELECTRONICS
     CO., LTD., SAMSUNG ELECTRONICS
14   AMERICA, INC. and SAMSUNG
     TELECOMMUNICATIONS AMERICA, LLC
15

16                    UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
17

18

19   APPLE INC., a California corporation,          CASE NO. 12-cv-00630-LHK

20                  Plaintiff,                       **SAMSUNG'S OPPOSITION TO APPLE'S
                                                     MOTION TO STRIKE ARGUMENTS
           vs.                                       FROM SAMSUNG'S INFRINGEMENT
21                                                   REPORTS REGARDING SAMSUNG
                                                     PATENTS**
22   SAMSUNG ELECTRONICS CO., LTD., a
     Korean business entity; SAMSUNG                 **REDACTED VERSION OF DOCUMENT
23   ELECTRONICS AMERICA, INC., a New                SOUGHT TO BE SEALED**
     York corporation; SAMSUNG
24   TELECOMMUNICATIONS AMERICA,                     Date:    December 10, 2013
     LLC, a Delaware limited liability company,      Time:    10:00 a.m.
25                                                   Place:   Courtroom 5, 4th Floor
                  Defendants.                        Judge:   Hon. Paul S. Grewal
26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .......................................................................................................... 1

II.    BACKGROUND ............................................................................................................. 2

    A.   Samsung's Original, First Amended, and Second Amended Infringement
       Contentions ............................................................................................................. 2

    B.   Samsung's Third Motion to Amend Infringement Contentions and the
       Court's Order .......................................................................................................... 2

    C.   Discovery Since Samsung's Third Motion to Amend Infringement
       Contentions ............................................................................................................. 3

    D.   Samsung's Infringement Expert Reports ............................................................... 4

III.   ARGUMENT .................................................................................................................. 4

    A.   Under the Guise of "New" Theories, Apple is Seeking To Exclude
       Evidence and Opinions in Support of "Old" Theories ........................................... 5

         1.   The '087 and '596 Patents ......................................................................... 5

         2.   The '757 Patent ........................................................................................ 10

         3.   The '449 Patent ........................................................................................ 16

         4.   The '239 Patent ........................................................................................ 17

    B.   Apple Seeks to Use the Court's Order to Exclude More Than What Was
       Excluded ............................................................................................................... 20

         1.   The '596 Patent ........................................................................................ 20

         2.   The '449 Patent ........................................................................................ 22

         3.   The '239 Patent ........................................................................................ 24

    C.   Samsung's Doctrine of Equivalents Opinions Should Be Allowed If the
       Court Denies Samsung's Motion to Strike Apple's Undisclosed Claim
       Constructions ........................................................................................................ 25

IV.    CONCLUSION ............................................................................................................. 25

SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS

# TABLE OF AUTHORITIES

**Page**

## Cases

*3Com Corp. v. Realtek Semiconductor Corp., No. C 03-2177 VRW,*
2008 WL 783383 (N.D. Cal. Mar. 24, 2008) ................................................................... 8

*Cummins-Allison Corp. v. SBM Co., Ltd.,*
No. 9:07-CV-196, 2009 WL 806753 (E.D. Tex. Mar. 19, 2009) ...................................... 5

*DCG Sys. v. Checkpoint Tech., LLC,*
No. 11-cv-03729-PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) .............................. 4

*Fenner Investments, Ltd. v. Hewlett-Packard Co.,*
No. 6:08-CV-273, 2010 WL 786606 (E.D.Tex. Feb. 26, 2010) ....................................... 5

*Linex Technologies, Inc. v. Belkin Intern., Inc.,*
628 F. Supp. 2d 703 (E.D. Tex. 2008) ........................................................................... 12

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC,*
No. 1:09-cv-02657-JKB, 2012 WL 664498 (D. Md. Feb. 27, 2012) ................................ 5

*Network Caching Tech., LLC v. Novell, Inc.,*
No. C-01-2079 VRW, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) ....................... 4, 12

*Orion IP, LLC, v. Staples, Inc.,*
407 F. Supp. 2d 815 (E.D. Tex. 2006) .................................................................... 4, 6, 10

*Sun Microsystems, Inc. v. Network Appliance, Inc.,*
690 F. Supp. 2d 1027 (N.D. Cal. 2009) ........................................................................... 7

## Statutes

35 U.S.C. 112(f) ..................................................................................................................... 24

## Rules

Fed. R. Civ. Proc. 26(e) ....................................................................................................... 7, 9

Fed. R. Civ. Proc. 26(e)(1) ....................................................................................................... 5

Patent Local Rule 3-1 ................................................................................................................ 2

## I.   **INTRODUCTION**

Apple's motion to strike takes an aggressive shotgun approach at attacking Samsung's infringement reports.   In Section III.C. of its brief, Apple identifies fourteen allegedly "new" infringement theories.   None of these, however, are new infringement theories.   Instead Apple is recasting "old" infringement theories as "new" infringement theories.   In other cases, Apple seeks to exclude "new" evidence in support of "old" infringement theories.   In both cases, there is absolutely no justification to strike anything from Samsung's expert reports.

When Samsung filed its motion for leave, the Court allowed Samsung to add source code and other evidence it received after its January amendment of its contentions.   (Dkt. 636 "Amended ICs Order" at 22).   The Court also provided helpful guidance about the role of infringement contentions in the present litigation.   The Court made clear that the parties do not need to "'prove up' their theories by providing evidence beyond the material they have at the time they make their contentions."   (*Id.* at 6.)   Following the Court's guidance, Samsung did not stray from its previously disclosed infringement theories, and Samsung did not attempt to "prove up" those theories by adding evidence that it received after its contentions.

Since the date of Samsung's Third Amended contentions dated April 25, 2013, Apple and third parties have produced more than 399,000 documents.   In addition, there have been more than 200 depositions.   (Drezdzon Decl., ¶¶ 15, 18.)   Much of this evidence was withheld by Apple or third parties until Samsung was forced to file motions to compel.   Much of the evidence that Apple now seeks to strike from Samsung's expert reports is from these document productions and depositions that occurred after Samsung's contentions.

Apple now seeks to turn the Court's Order on its head and hold Samsung to an impossible standard.   Apple attacks this new evidence and wrongly claims that it is a "new" theory.   Under the guise of a "new" theory, Apple then claims that Samsung should have disclosed this evidence before it was even in Samsung's possession.   In some cases, Apple goes so far as to attack evidence that was already "blessed" by the Court's Order and already in Samsung's contentions.   Moreover, Apple attempts to use the Court's order as a hammer to exclude additional evidence that

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS**

was not even at issue in the motion for leave.   Finally, Apple attempts to strike all doctrine of equivalents arguments despite the Court noting they would be allowed if circumstances changed.

## II.   BACKGROUND

### A.   Samsung's Original, First Amended, and Second Amended Infringement Contentions

On May 2, 2012, the Court set deadlines for service of Patent Local Rule 3-1 infringement contentions, ordering both parties to serve their contentions by June 15, 2012.   (Dkt. 160.)   The Court set the close of fact discovery for July 8, 2013, with expert discovery to take place after that. (*Id.*)   Samsung served its initial infringement contentions on the Court-ordered deadline.

On October 1, 2012, Samsung filed a motion to amend its infringement contentions to include the newly released iPhone 5.   (Dkt. 267.)   Four days later, Apple filed its own motion to amend infringement contentions to incorporate many changes, including the addition of the Galaxy Note 10.1, JellyBean operating system, and U.S. versions of the Galaxy S III.   (Dkt. 269.)   On November 15, 2012, the Court granted the parties' motions.   (Dkt. 302.)

On November 21, 2012, Samsung filed its second motion to amend infringement contentions, seeking leave to include the iPad 4, iPad mini, and iPod Touch (5th gen.).   (Dkt. 304.)   Two days later, Apple filed its second motion to amend, seeking leave to add Samsung products.   (Dkt. 306.)   After negotiations, the parties stipulated to allow amendments to add products, and the Court entered the stipulation on January 16, 2013.   (Dkt. 348.)

### B.   Samsung's Third Motion to Amend Infringement Contentions and the Court's Order

On April 30, 2013, Samsung filed its third motion to amend infringement contentions, seeking leave to include evidence in response to developments in the case such as: (i) the Court's April 11, 2013 claim Construction Order (Dkt. 447); (ii) Apple's interrogatory responses; and (iii) recent discovery from Apple and Third Parties, including documents and source code from at least Apple, ███████████████████████.   (Dkt. 476.)

On June 26, 2013, the Court issued its Order Regarding Samsung's and Apple's Motions for Leave to File Amended Infringement Contentions.   (Amended ICs Order.)   The Order stated

1   that the purpose of infringement contentions is to provide a form of pleading that discloses the

2   parties' theories.   The parties must make a good faith effort to disclose evidence in possession and

3   diligently amend contentions when new evidence is revealed.   (*Id*. at 3, 6.)   However, parties

4   need not "prove up" theories by providing evidence beyond that which they have at the time

5   contentions are made.   (*Id.*)   And there is no continuing duty to disclose all new evidence as

6   infringement contentions are not intended to be a "running dialogue."   (*Id.*)

7          On the merits, the Order stated that to the extent Samsung adds citations to source code it

8   received after its January amendment of its contentions, it has shown sufficient diligence and thus

9   good cause to add those citations.   (*Id.* at 22.)   By adding source code citations, Samsung fulfilled

10  the Order's stated purpose of amending infringement contentions to make them "more specific and

11  fine-tuned."   (*Id.* at 6.)

12  **C.      Discovery Since Samsung's Third Motion to Amend Infringement
            Contentions**

13

14         There has been substantial discovery since Samsung's Third Motion to Amend, including

15  202 depositions and extensive document production by both Apple and third parties.   Many of

16  these late-occurring depositions are directed solely to Samsung's infringement case.   For example,

17  the ███ deponents did not testify until June 24-25, 2013, while the ████████ deponents did not

18  testify until July 1 and 3, 2013.   This testimony regarding the meaning of technical documents and

19  source code relevant to the functionality of the '087, '596, and '239 patents is clearly instrumental

20  to Samsung's infringement case.   Moreover, ████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████ – just 10

22  days before the close of discovery.   (Drezdzon Decl., ¶ 16.)   Likewise, 30(b)(6) depositions

23  regarding iTunes and iCloud did not occur until June 27 and July 2, 2012.   (*Id.* at ¶¶ 24-25.)

24         Apple also made several voluminous document productions since Samsung filed its Third

25  Motion to Amend on April 30, 2013.   Apple *chose* to produce these documents after the date that

26  Samsung filed its motion for leave.   Having delayed its production, Apple cannot now benefit

27  from its delay.   For instance, Apple did not supplement its deficient production of ██████

28  documents until the last day of fact discovery—and only after Samsung's June 25, 2013 Motion to

1  Compel—when it produced over 800 documents that Samsung had been requesting since July of

2  2012.   In total, Apple produced more than 2 million pages on the final day of fact discovery.[1]

3  There have also been extensive document productions from third parties since Samsung's Third

4  Amended Infringement Contentions, including source code and technical documents from ███

5  ███████████████████.   (Drezdzon Decl., ¶ 17.)

6      **D.**     **Samsung's Infringement Expert Reports**

7          Samsung's Infringement Expert Reports use evidence received late in discovery to fine

8  tune and prove up the infringement theories laid out in its Initial and Amended Infringement

9  Contentions.   Regarding the '087 and '596 patents, Samsung applied previously inaccessible

10  documentation and source code to show how specific components in the Apple products practice

11  the claim language.   Regarding the '757 patent, Samsung applied documentation, deposition

12  testimony of Apple 30(b)(6) witnesses, and Apple's responses to written discovery.   Similarly, for

13  the '239 and '449 patents, Dr. Schonfeld and Mr. Parulski supplied and relied on technical

14  documents produced by Apple and third parties, deposition testimony from Apple 30(b)(6)

15  witnesses that occurred in June and July, and Apple's written discovery responses.

16  **III.**   **ARGUMENT**

17          This Court has stated that infringement contentions "are not meant to provide a

18  forum for litigation of the substantive issues; they are merely designed to streamline the

19  discovery process."   *Network Caching Tech., LLC v. Novell, Inc*., No. C-01-2079 VRW,

20  2003 WL 21699799, at *4-5 (N.D. Cal. Mar. 21, 2003).   Parties are thus not required to

21  "prove up" theories disclosed in their contentions.   *DCG Sys. v. Checkpoint Tech., LLC*,

22  

23  No. 11-cv-03729-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).   The parties

24  should work together if one believes the infringement contentions are unclear.   *Orion IP,*

25  _____

26  ▪ ██████████████████████████████

27  ████████████████████████████████

28  █████████████████    ██████████████

*LLC, v. Staples, Inc.*, 407 F.Supp. 2d 815, 818 (E.D. Tex. 2006).   And while infringement contentions should give notice of an expert report's infringement theories, the burden of notice on plaintiffs "is intended to be a shield for defendants, not a sword."   *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL 786606, at *3 (E.D.Tex. Feb. 26, 2010).

A.   **Under the Guise of "New" Theories, Apple is Seeking To Exclude Evidence and Opinions in Support of "Old" Theories**

1.   **The '087 and '596 Patents**

(a)   **Dr. Min Provides Additional Detail to Already Disclosed ▮▮▮▮▮▮▮▮ Theory**

Apple asks the Court to strike portions of Dr. Paul S. Min's infringement report on the ▮▮▮▮▮▮▮, which supports infringement of the "concatenating" limitation in claim 13 of the '596 patent, claiming that Samsung failed to disclose this infringement theory during fact discovery.   (Mot. [Apple's Motion to Strike, Dkt. 877], Ex. C, ¶¶ 338, 949, 1096, 968, 1127.)   As explained below, Samsung fully disclosed this theory in its infringement contentions.

A party is not required in its interrogatory responses to divulge its infringement arguments upon which it will rely at trial, since the deadline for expert reports on infringement serves this purpose.   *See Cummins-Allison Corp. v. SBM Co., Ltd.*, No. 9:07-CV-196, 2009 WL 806753, at *2 (E.D. Tex. Mar. 19, 2009).   Nor is a party required under Rules 26(e)(1) to supplement its responses to interrogatories (including contention interrogatories) unless the original responses are incorrect or incomplete, and the new information "has not otherwise been made known to the other parties during the discovery process or in writing."   *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, No. 1:09-cv-02657-JKB, 2012 WL 664498, at *13 (D. Md. Feb. 27, 2012).

Here, Samsung provided the required facts and basis for infringement (*i.e.*, source code, documents, and sufficient interrogatory responses) during fact discovery, and Dr. Min elaborated on these infringement theories in more detail in his expert report.   Far from Apple's assertion that Samsung hid infringement theories regarding the "concatenating" element, Samsung disclosed its infringements arguments well before serving its opening reports on August 12, 2013.   Apple

1    possesses the ██████████ source code that Samsung cites to support infringement of the

2    "concatenating" element.   In fact, *Apple* produced this source code in this case.   In addition, ████

3    ████████████████ source code to both Samsung and Apple.   After reviewing this source

4    code, Samsung disclosed its infringement theory for the "concatenating" element in its Third

5    Amended Infringement Contentions – contentions that this Court held were diligent and

6    permissible.   If Apple was unclear as to the scope of Samsung's contentions, it should have

7    worked with Samsung to clarify any issues.   *See Orion*, 407 F.Supp. 2d at 818 ("A defendant

8    cannot lay behind the log until late in the case and then claim it lacks notice as to the scope of the

9    case or the infringement contentions.").

10                    **(i)       Previous** ████ **Disclosure for** ██████████

11                                      ████████

12        Apple seeks to exclude paragraphs 338, 949, and 1096 from Dr. Min's Infringement Expert

13   Report.   In these paragraphs, Dr. Min provides detail for the infringement theory that the Intel

14   ████████████████████████████████████████████████████

15   ████.   Specifically, Dr. Min describes ████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████:

18        ████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████.

22   (Mot., Ex. C, ¶ 338.)

23        In its Third Amended Infringement Contentions, Samsung disclosed the exact

24   same theory:

25        ████████████████████████████████████████

26   ████████████████████████████████████████████

27   ████████████████████████████████████████████

28   ████████████████████████████████

1  ██████████████████████████████████   ████████████████

2  ██████████████████  █████████████████████████████████████

3  ████████████████████████████████████████████

4  █████████████████████

5  (Dkt. 476-8, Exhibit B at 18-19 (emphasis added).)   The disclosed ████████████████

6  ████████████████████████████  contains ███████████████████████████████████████

7  that Dr. Min discusses in his report.   By identifying how ██████████████████████████

8  ████████████████████████████████████████████████████████████████████████████████

9  ██████████████████, Samsung explicitly disclosed the ████████████████ theory to Apple.

10  Dr. Min's Infringement Expert Report merely provides additional detail to these already

11  disclosed theories.   (Mot., Ex. C, ¶¶ 338, 949, 1096.)

12      Furthermore, Dr. Min's citations to Mr. Kandasamy's deposition transcript are

13  simply new evidence to support Samsung's old infringement theory.   ████████████████

14  █████████████████████████████████████████████████████████

15  ███████████████████████████████████████████.   ███████████████████████████

16  ████████████████████████████████████████████████████████████████████

17  █████████████████████████████████████████████████████

18  ███████████████.

19  ██████████████████████████████████████████████████████

20  ███████████████████████████  ███████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ███████████████████.

    (Drezdzon Decl., Ex. 1, Kandasamy Depo. 243:5-12.)   This testimony further supports

23  that Samsung disclosed the ████████████████ theory in its Third Amended Infringement

24  Contentions when it disclosed ██████████████████████████.   Therefore, there is

25  no violation of Rule 26(e), and no basis for exclusion.   *Sun Microsystems, Inc. v.*

26  *Network Appliance, Inc.*, 690 F. Supp. 2d 1027, 1034-35 (N.D. Cal. 2009) (holding that

27  infringement contentions disclosing specific source code files gave proper notice of

28

1    infringement theory in expert report, which added details about the hardware invoked by

2    the source code); *3Com Corp. v. Realtek Semiconductor Corp*., No. C 03-2177 VRW,

3    2008 WL 783383, at *7 (N.D. Cal. Mar. 24, 2008) (denying motion to strike where the

4    contentions disclosed a RX-FIFO as the buffer element of claim 1 and the expert report

5    disclosed additional hardware (*i.e.*, a converter) as infringing the buffer element).

6                    **(ii)      Previous ███████ Disclosure for ███████**

7    ███████

8         Apple also seeks to exclude paragraphs 968 and 1127 from Dr. Min's

9    Infringement Expert Report.   In these paragraphs, Dr. Min provides detail for the

10   infringement theory that the ███████████████████████████████

11   █████████████████████████. Specifically, Dr. Min

12   describes the █████████████████████████:

13   █ ███████████████████████
     ████████████████████████
14   █████████████ ██████████████████
     ████████████████████████████
15   ████████████████████████
16   ████████████████████████
     █████████████████████.

17

18   (Mot., Ex. C, ¶ 338.)

19        In its Third Amended Infringement Contentions, Samsung disclosed the exact

20   same theory:

21   ████████████████████████
     ████████████████████████
22   ████████████████████████
23   ████████████████████████
     ████████████████████████
24   ████████████████████████
25   ████████████████████████
26   ████████████████████████
     ████████████████████████
27   ████████████████████

28

1    (Dkt. 476-8, Exhibit B at 19).   The contentions describe and cite to source code that ███

2    ████████████████████████████████████████████████████████████████████████

3    ██████████████████████████████████           █████████████████

4    █████, Dr. Min's Infringement Expert Report merely provides additional detail on ███

5    ███████████████████████████████████████████████████████

6    ████████████████████████████.   (Mot., Ex. C, ¶¶ 338, 949, 1096.)

7    Therefore, there is no violation of Rule 26(e), and no basis for exclusion.

8                      **(b)   Testing for the '087 and '596 Patents Was Disclosed in
                                Samsung's Original Contentions**

9

10              Contrary to Apple's assertions, Samsung's Infringement Contentions put Apple on notice

11   of its intention to argue that Apple directly infringes the '087 and '596 patents when ████████

12   ████████████████████████████████████████████ (Mot. at

13   23.)   Each of Samsung's Infringement Contentions, starting from its Initial Infringement

14   Contentions dated June 15, 2012 contains the following theory:

15              Apple infringes this claim because it has performed each and every step of this claim,
                including but not limited to through testing and use by its employees.

16   (Dkt. 267-3 at 6.)   Samsung's contentions practically mirror the language in Apple's brief that it

17   claims was not disclosed.

18              Dr. Min's expert report provides additional detail to this theory based on evidence that

19   Samsung had been demanding from Apple for months.   Instead, Apple chose to withhold this

20   evidence until the very end of discovery, requiring Samsung to file a motion to compel.

21   (Drezdzon Decl., ¶ 22.)   After months of demanding that Apple produce this information,

22   Samsung finally received █████████████████████████████ on the *last* day

23   of discovery.   (*Id.*, ¶ 19.)   Apple even requests the Court to strike parts of Dr. Min's Expert

24   Report consisting entirely of ████████████████████████████ whom

25   was not offered by Apple for deposition until 10 days before discovery closed.   The evidence

26   Apple complains about was evidence that *Apple* withheld from Samsung.   Had Apple wished for

27

28

1   earlier identification of this evidence, Apple should have satisfied its discovery obligations and

2   produced these documents to Samsung earlier in this case.

3            **(c)    Indirect Infringement for the '087 and '596 Patents
                      Was Disclosed in Samsung's Original Contentions**

4

5            Apple's assertion that Samsung failed to disclosed that Apple indirectly infringes the '087

6   and '596 patents is wrong.   Similar to testing,Samsung disclosed its theory of indirect

7   infringement in each of its Infringement Contentions, including its Initial Infringement

8   Contentions:

9            Apple also infringes this claim by selling Accused Devices to customers and encouraging
             those customers to use the products in a manner that meets each and every step of this
10           claim.

11   (*See*, *e.g.*, Dkt. 267-3 at 6-7, 10, 14, 17-20, 22-23.)

12           Again, the paragraphs that Apple asks this Court to strike merely add detail to this

13   previously disclosed indirect infringement theory.   *Orion IP*, 407 F. Supp. 2d at 817-18 (finding

14   infringement contentions disclosing only "Model Selector" on Toyota's website gave sufficient

15   notice for expert report to cite any other webpage on Toyota.com).   For example, ¶¶ 770, 772, and

16   775 in Dr. Min's Expert Report state that Apple indirectly infringes by encouraging its customers

17   to infringe the claims, mirroring the language of Samsung's Initial Infringement Contentions; ¶

18   ████████████████████████████████████████████ from Apple's corporate

19   representative, who Apple did not make available for deposition until June 28, 2013; ¶ 773 details

20   how Apple encourages customers by listing technical specification web pages for each of the

21   accused Apple products – web pages that are virtually identical to those cited on page 2 of

22   Samsung's Initial Infringement Contentions; and ¶ 774 provides evidence regarding Apple's

23   willful blindness of infringement, a prong of proving indirect infringement.   (Mot., Ex. C.)

24   Paragraphs 1150-55 that Apple also seeks to strike pertain to indirect infringement of the '596

25   patent.   These paragraphs are identical to ¶¶ 770-75 for the '087 patent.   (*Id.*)

26            **2.    The '757 Patent**

27            Apple's allegation that Dr. Schonfeld's expert report includes previously undisclosed

28   theories of Apple's infringement of the '757 patent is also without merit.   In certain instances,

1   Apple admits that Samsung properly disclosed the theories in Dr. Schonfeld's report, but

2   complains that Samsung should have previously disclosed the evidence cited to support his

3   opinions.   In other instances, Apple attempts to recast examples of accused functionality as a

4   wholly separate and previously undisclosed accused product.   Apple's allegations should be

5   rejected.

6                    **(a)      Samsung Contended That Laptop Computers, iPads,**
                              **iPod Touches, and iPhones Are "Zone [] Devices"**
7

8            Samsung's contention that laptop computers, iPod Touches, and iPhones are zone devices

9   that reside in a location was plainly disclosed in its Third Amended Infringement Contentions.

10  (*See* Dkt. 660-3 at 5 (Apple's accused products ███████████████████████████████████

11  ██████████████████████████████████████████████████████████████████████████

12  ████████████████████ ) (emphasis added).)   Apple complains, in effect, that Dr.

13  Schonfeld's application of evidence supporting previously disclosed infringement theories are

14  "new theories."   (Mot. at 12-15.)   Apple's allegations have no merit.

15           First, this Court has previously recognized that Samsung's Second Amended Infringement

16  Contentions disclose laptop computers, iPads, iPod Touches, and iPhones as "zone[] device[s],"

17  while Samsung's Third Amended Infringement contentions "tailor [those] theories to the claim

18  construction order."   (Amended ICs Order at 10-11.)   Samsung elaborated that "each of these

19  devices may reside in a room or similar location," and the Court permitted this amendment.

20           Apple understood Samsung's allegations included the same infringement theory.   Apple's

21  response to Samsung's interrogatory seeking Apple's non-infringement defenses states: ████████

22  ██████████████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████

24  (Drezdzon Decl., Ex. 2, Apple's Response to Samsung Rog. 12 at 174.)

25           The paragraphs that Apple seeks to strike contain Dr. Schonfeld's application of evidence

26  to support the theory that Apple's devices reside in a location.   Dr. Schonfeld explains that ████

27  ██████████████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████████████████████████

SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS



1

2

3

4

5

6

7             This explanation simply supports Samsung's theory that Apple's devices

8 do "reside," and are fully consistent with the Court's explanation of the meaning of that term in its

9 *Markman* Order.   (Dkt. 447 (explaining that the zone devices "reside[,] remain[][,]" or have

10 "some degree of being contained within a certain location rather than moving around freely.").)

11 This is not a new theory, but an application of fact evidence to Samsung's existing theory.  *See*

12 *Linex Technologies, Inc. v. Belkin Intern., Inc.*, 628 F. Supp. 2d 703, 712-13 (E.D.Tex. 2008)

13 ("[i]nfringement contentions 'are not meant to provide a forum for litigation of the substantive

14 issues; they are merely designed to streamline the discovery process.'") (*quoting Network Caching*

15 *Tech.*, 2003 WL 21699799, at *4–5).

16           **(b)**      **Samsung Contended That Mac OS X Computers are**

17                    **"Zone [] Devices" When Used For Photo Stream**

18            Apple contends Samsung did not disclose the theory that Mac OS X computers are "zone []

19 devices."   Apple's contention is without merit.[2]   In its Third Amended Contentions, Samsung

20 properly disclosed that it is accusing Mac OS X computers of being "zone [] devices" for the Photo

21 Stream feature.   (Dkt. 660-3 at 5 ("Apple's iPhone, iPod Touch, iPad, the iMac, MacBook Air,

22 _____

23     [2] Apple's motion contradicts its written discovery responses.   During discovery,
Apple stated that it could not ascertain if Samsung was accusing any devices of meeting

24 the "zone [] device" requirement.   In contrast, Apple's motion attempts to arbitrary
distinguish between iOS devices and Mac computers.   (*Compare* Mot. at 13 ("In its

25 contentions, Samsung advanced an infringement theory based on the Photo Stream

26 function—for which it accused only iOS devices as "Zone Devices," and accused Mac
OS X computers exclusively as "Central Devices."), *with* Drezdzon Decl., Ex. 2 at 178

27

28

SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS

1    MacBook Pro, Mac Mini, Mac Pro and Apple TV devices (collectively the 'Zone Devices') are

2    storage and interface devices.").)   Apple's argument simply ignores the fact that the term "Zone

3    Devices" was specifically defined in Samsung's infringement contentions.

4           Further, Samsung's Infringement Contentions did not limit "zone [] devices" to iOS

5    devices for the Photo Stream feature, as Apple suggests.   In fact, Samsung's infringement

6    contentions for this limitation include an excerpt, screenshot, and citation to an Apple webpage

7    instructing users how to set up Photo Stream on a Mac OS X computer.   (*Id.* at 23 ("For example,

8    Apple provides instructions to a user for activating Photo Stream for **Mac Computers** on its

9    website[.]") (emphasis added).) █████████████████████████████████████

10   ███████████████████████████████████████████████████████

11   ███████████ .

12           (c)    <u>The "Automatic Transfer" Feature of Home Sharing</u>
                    <u>Was Included in Samsung's Contentions</u>

13

14          Apple contends that Samsung's Infringement Contentions do not identify Home Sharing's

15   automatic transfer feature.   Apple's complaint is based on an unsupported attempt to recast

16   "automatic transfer" as a separate feature that "has nothing to do" with Samsung's clear allegations

17   against the broader Home Sharing functionality.   (Mot. at 14.)

18          Apple admits that Samsung's Second Amended Infringement Contentions properly

19   disclosed allegations against Home Sharing.   (*Id.*)   Samsung's Second Amended Infringement

20   Contentions included Samsung's theory, as stated below:

21          "Second, Apple's Home Sharing software allows a user with a second
            desktop or laptop computer (e.g, iMac, MacBook Air, MacBook Pro, Mac

22          Mini, Mac Pro or PC) **to operate it as a zone specific storage and
            interface device that is capable of storing or interfacing with**

23          **multimedia information stored on a Central Device.   As described on
            Apple's website, Home Sharing allows a user to share the user's**

24          **iTunes media libraries between up to 5 computers in your household**."

25   (Dkt. 304-4 at 11-12 (emphasis added).)   The webpage cited by Samsung's Original, First,

26   Second, and Third Amended Infringement Contentions explains that in Apple's parlance for Home

27   Sharing, "shar[ing]" includes "hav[ing] iTunes automatically import purchases you make on any of

28   your Home Sharing computers to your own library."   (*Id.* (citing

http://support.apple.com/kb/HT3819).)    Moreover, the Court has already granted Samsung's motion to amend its infringement contentions to elaborate on the automatic transfer feature, agreeing it was not a new feature.    (Amended ICs Order at 28 ("Samsung may add the **exemplary operation of Home Sharing in response to the claim construction order.") (emphasis added); *see also* Dkt. 660-3 at 13-14.)    Thus, Samsung's Infringement Contentions properly disclosed this theory of infringement using Apple's own terminology.

### (d) <u>The "Shared" Feature of Photo Stream Was Included in Samsung's Contentions</u>

Apple contends that Samsung's Infringement Contentions do not disclose the theory that Photo Stream, which includes Shared Photo Stream, infringes the '757 patent.    Here too, Apple attempts to recast a subpart (Shared Photo Stream) of an accused feature (Photo Stream) as a wholly different feature.    Apple's attempt lacks any support, is contrary to its own documents, and should be denied.

Samsung properly disclosed its theory regarding the shared stream feature of Photo Stream.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████    (Drezdzon Decl., Ex. 3, Schonfeld Depo. 100:6-18.)    Second, the Apple documents cited by Samsung's Infringement Contentions expressly identify both sub-features of Photo Stream – *i.e.*, a user can create "streams" for distributing photos to their own devices as well as "streams" to "share select photos with [others]."    (*Id.*; Dkt. 660-3 at 21 ("Photo Stream also lets you share select photos with friends and family, directly to their devices or on the web."); *id.* at 22 ("Shared Photo Streams require iPhoto 9.4, Aperture 3.4, and OS X v 10.8.2 or later.").)    Therefore, Samsung disclosed its infringement theory regarding Photo Stream including the Share Photo Stream functionality, and Apple's motion should be denied.

1

           **(e)**      **<u>iTunes For PCs is An Accused Product</u>**

2

        Apple further contends that Samsung is no longer accusing iTunes on PC and attempts to

3

exclude this accused product from Dr. Schonfeld's report.   (Mot. at 2-3.)   Apple mischaracterizes

4

Samsung's Case Narrowing Statement.

5

        Samsung's latest Case Narrowing Statement lists "iTunes (including iTunes Match)" as an

6

accused product.   (Dkt. 646 at 3).   ████████████████████████████████████

7

████████████████████████████████████████████.   ████████████████

8

███████████████████████████████████████████████████████████████

9

    ██  ████████████████████████████████████████████████

10

████████████████████████████████████████████   Thus, the iTunes product identified in

11

Samsung's case narrowing statement includes iTunes for PCs.

12

           **(f)**      **<u>Dr. Schonfeld Properly Applied Discovered Evidence</u>**

13

                  **<u>To Support Samsung's "At Least One Central Device"</u>**

14

                  **<u>Contentions</u>**

15

        Apple moves to strike eight allegedly "new" theories of infringement from Dr. Schonfeld's

16

report regarding the "at least one central device" limitation.   (Mot. at 16-18.)   ████████████

17

███████████████████████████████████████████████████████████████

18

████████████████████████.   (*Id.*)

19

        The '757 patent requires "<u>at least one</u> central storage and interface device."[3]   As Apple

20

concedes, Samsung's Infringement Contentions properly disclosed infringement theories that

21

iTunes and iCloud "include[] at least a central device."   (Mot. at 15-16.)   Further, Samsung's

22

Infringement Contentions expressly disclose Samsung's theories as to iTunes with iCloud, iTunes

23

Match, and Photo Stream (including Shared Photo Stream).   (Dkt. 660-3.)

24

        The purportedly new theories are nothing more than an identification of ████████████

25

███████████████████████████████████   as a result of Samsung's proper

26

      [3] Apple's motion takes the claim language out of context.   Claim 1 of the '757

27

patent requires, in part, "<u>at least one</u> central device," not "a 'central device,'" as phrased

28

in Apple's motion.

1  infringement contentions.   For example, Dr. Schonfeld's report identifies specific facts that were

2  obtained from █████████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████████████████████████████

4  █████████████████████████████████████████    ████████████████████

5  ████████████████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████████████

12 ████████████████████████████████    █████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████████

14 ██████████████████████████████████████    It is improper to strike Dr. Schonfeld's reliance on

15 evidence to support previously disclosed infringement contentions.

16      Finally, Apple was well aware of Samsung's theories.   For example, Apple's response to

17 Samsung's interrogatory seeking Apple's non-infringement defenses expressly addresses ███

18 ██████████████████████████████████    ██████████████████████████████████████████

19 █████████████████████████████████████████████████████████████████████████

20 ██████████████████████████████████████    █████████████████████████

21 ████████████████████████████████████████████████████████████████

22 ██████    ██████████████    Therefore, Apple's motion to strike should be denied.

        **3.      The '449 Patent**

        **(a)     <u>Samsung Is Not Presenting a New "Compressor" or
                "Decompressor" Theory</u>**

        Apple incorrectly argues that Mr. Parulski is presenting new "compressor" and

"decompressor" theories.   Apple is wrong because both Samsung's contentions and Mr. Parulski's

report identify ████████████████████████████████████████████████████████████████████

1   ▮▮▮▮▮▮▮▮▮▮ as meeting these claim limitations.   Samsung's contentions identify the

2   "compressor" as a portion of the SOC that is "video encoder that utilizes at least the H.264 and

3   MPEG-4 standards for compressing moving images and the JPEG standard for compressing still

4   images."  (Dkt. 660-5 at 4.)   Similarly, the contentions identify the "decompressor" as a portion of

5   the SOC that is a "video decoder that utilizes the H.264 and MPEG-4 standards for decompressing

6   moving images and the JPEG standard for decompressing still images."  (*Id.* at 5.)   Consistent

7   with those contentions, Mr. Parulski's report identifies ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple's argument that the contentions somehow identify ▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is meritless. Apple cannot point to any

12  language in Samsung's contentions that would exclude the ▮▮▮▮▮▮▮▮▮▮▮.

13          **4.       The '239 Patent**

14                  **(a)       Samsung Is Not Presenting a New "Logic Board"**
                              **Theory**

15

16          Apple incorrectly argues that Dr. Schonfeld is presenting a new logic board theory.   First,

17  Apple incorrectly equates Dr. Schonfeld's arguments regarding the claim 1 limitation "means for

18  capturing, digitizing, and compressing at least one composite signal" (which the Court construed to

19  require "an audio capture card, and video card having a video capture module) with the claim 15

20  limitation "a computer including a video capture module to capture and compress video in real

21  time."   The only paragraph cited by Apple regarding this limitation, ▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, any decision regarding this motion

25  to strike should be limited to claim 1.

26          Second, Samsung adequately disclosed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ███████████████████████████████   Samsung's infringement contentions include

2  photographs of torn down Apple iOS devices that include the front and back camera assemblies,

3  which connect to the iOS devices' logic board, as well as the application processor, which sits on

4  and is affixed to the accused logic board.   (*See, e.g.*, Dkt. 276-6 at 144-47, 155-56, 161-64; Dkt.

5  305-4 at 176-80, 189-90, 198-202; Dkt. 660-6 at 3-6, 18-19, 21-25.)  ████████████████

6  ██████████████████████████████████████████████████████████████████

7  █████   Indeed, the same contention citations include photographs of the application processor

8  sitting on and affixed to the logic board.   (*See* Drezdzon Decl., Exs. 11-12 (cited at Dkt. 305-4 at

9  177-78).)   Contrary to Apple's assertions, Dr. Schonfeld is not asserting a new theory or adding

10  additional components; rather, he is using documents and testimony in support of the theory

11  included in Samsung's contentions.

12          **(b)**   **<u>Samsung Is Not Presenting a New Audio Components
Theory</u>**

13

14        Apple incorrectly argues that Samsung failed to disclose that the structure for "means for

15  capturing, digitizing, and compressing at least one composite signal" is met, in part, by a ██████

16  ████████████████ that interfaces to a microphone.   (Mot. at 19.)   First, and contrary to Apple's

17  assertions, Samsung's Third Amended Infringement Contentions include multiple audio

18  components of the accused devices, including the Audio subsystem of the application processor

19  (Dkt. 660-6 at 6) and the microphone (*id.* at 8).   Second, Samsung's infringement contentions

20  repeatedly reference ████████████████████ for dependent claim 6, which depends from claim

21  1.   (Dkt. 267-3 at 148; Dkt. 267-6 at 160; Dkt. 305-4 at 196.)   During the *Markman* process,

22  Samsung consistently argued that independent claim 1 did not require audio components, based in

23  part on claim differentiation with claim 6.   (Dkt. 447 at 47.)   Apple argued that audio and video

24  components were required for claim 1.   The Court ultimately agreed with Apple and incorporated

25  these audio components into claim 1.   (*Id.* at 47, 52.)   Having prevailed on its claim construction

26  argument, Apple cannot be prejudiced when Samsung's expert accuses the components expressly

27  included in Samsung's prior contentions as part of the required audio structure for claim 1.

28

1        Third, any surprise expressed by Apple that Dr. Schonfeld included a ██████████

2   ████ as part of the required structure is disingenuous.   Since Samsung's Third Amended

3   Contentions were served on April 25, 2013, Samsung has continuously pursued discovery

4   regarding ███████████████ ███████████████.   For example, Samsung took the

5   deposition of █████████████████████████████

6   ████.   (Drezdzon Decl., Ex. 5.)   And during the meet and confer process regarding Apple's

7   failure to answer Samsung's interrogatories requesting identification of certain components of the

8   accused Apple products, Samsung repeatedly asked Apple to identify ████████████████

9   ███████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████

11  ████████████████████████████████████████ (Drezdzon Decl., Ex. 8,

12  August 1, 2013 Letter from Kolovos to Thakur).   Thus, Apple has long known that Samsung

13  accused the ██████████████ and cannot feign surprise or prejudice now.

              **(c)**   **Samsung Is Not Presenting a New "Means for Exchanging" Theory**

16       Apple is improperly attempting to exclude factual details in support of Samsung's "means

17  for exchanging" theory disclosed in its infringement contentions.   Samsung's contentions

18  consistently assert that each of the Accused Products contains a circuit and software that satisfy

19  this limitation (although Samsung maintains that software is not required for this limitation).

20  (*See, e.g.*, Dkt. 267-3 at 145; Dkt. 660-6 at 17.)   Dr. Schonfeld's report merely provides ████

21  █████████████████████████████ ████████████████████████

22  █████████████████████████████████ ██████████████

23  ███████████████████████████████████████████████████████████

24  █████████████████████████████.   Dr. Schonfeld's opinions are just

25  adding specific evidence and details regarding ████████████████████████████

26  ████████████████ as disclosed in Samsung's contentions.

27

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS**

**(d)** **Samsung Is Not Making New Accusations Against Mac Computers**

Apple's argument regarding Mac computers is a strawman.   Apple lists multiple grievances against opinions that were not expressed by Dr. Schonfeld.   First, Apple complains that Dr. Schonfeld is improperly accusing MacBook Pro devices satisfying the "means for transmitting" limitation of the mobile remote unit.   (Mot. 20.)   However, Dr. Schonfeld made clear ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████   Second, Apple makes a similar complaint that Dr. Schonfeld is improperly accusing MacBook Air and MacBook Pro devices of satisfying the "means for storing" limitation of the remote limitation.   (Mot. 20.)   Again, this complaint ignores Dr. Schonfeld's explicit understanding of ████████████████████████████████████████████████████████

████████████████████████████████████████████████   Finally, Apple reprises its argument regarding "means for exchanging."   (Mot. 20-21.)   Apple is incorrect, as explained above in Section III.A.4(c).

**B.** **Apple Seeks to Use the Court's Order to Exclude More Than What Was Excluded**

**1.** **The '596 Patent**

The Court simply excluded *one* ███████████████████ on the grounds that this specific specification was produced prior to Samsung's earlier contentions.   (Amended ICs Order at 23.)   The Court did not exclude *all* of the ███████████████.   Apple, however, is attempting to use the Court's order to exclude (i) ████████████████████████████████████████

_____

[4] While it appears Apple failed to include the correspondence between Apple and Samsung it mentions in footnote 10, Samsung pointed Apple to Dr. Schonfeld's report where it is clear that ████████████████████████████████████████ ██████████   In order to obviate the need for the Court's involvement, Samsung states that ████████████████████████████████████ ████████████████████████   ████████████ ██████████████████████████

1   ████████████████████████████████████, and (ii) ████████ that the

2   Court allowed Samsung to include in its contentions.

3          For example, Apple is trying to exclude paragraphs 243 and 334 of Dr. Min's Expert

4   Report.   There is no mention of ██████████████ in these paragraphs.   For example,

5   paragraph 243 refers to ██████████████████████████   ████████

6   ████████████████████████████████████   ████████

7   ██████████████   ████████████████████████████████

8   ████████████████████.   Apple's request overreaches the breadth of this Court's

9   Order to strike permissible evidence that simply disfavors Apple's non-infringement arguments.

10         Apple also attempts to exclude portions of Dr. Min's report that discuss ████████████

11  ████████████████████████████████.   For example,

12  paragraph 945 cites to ██████████████████████

13  ████████████████████████████████.   (Mot., ¶

14  945.)   Similarly, paragraph 1092 ████████████████████

15  ████████████████████████████████████

16  ██████████████████████   ████████████████

17  ████████████████████████.   Paragraph 1092 then states the

18  following text, which Apple moves to strike:

19         ██████████████████████████

20         ██████████

21  (Drezdzon Decl., Ex. 1, Kandasamy Depo. 183:3-184:23.)   Here, ████████████

22  ████████████████.   Furthermore, ████████████████

23  ████████████████.   Apple's attempt to strike this text is disingenuous; it has

24  *nothing* to do with ██████████████.

25         Apple similarly attempts to strike other paragraphs that have nothing to do with ████████

26  ████████████████████ but instead provide general statements regarding ████

27  ██████████████████.   These paragraphs are supported only by citations to

28  deposition testimony discussing source code or different documents (*e.g.*, ██████████████

1   ████████████████████████████).   (Mot., Ex. C ¶¶ 809, 943, 1003, 1090.)   Apple's

2   motion to strike these paragraphs clearly fails.

3        Apple is also trying to exclude *all* paragraphs, as opposed to moving to exclude reliance on

4   the evidence, that include a citation to ████████████.   The paragraphs themselves

5   relate and are supported by other documents that this Court did not deny in Order regarding

6   Samsung's motion for leave to amend its contentions.   For example, Apple attempts to exclude

7   the entirety of paragraph 335, except for the underlined citation to ████████████:

8   ██  ████████████████████████

9   ████████████████████████████

10  ████████████████████████

11  ████████████████████████████

12  ████████████████████████

13  ████████████████████████

14  (Mot., Ex. C.)   This paragraph ████████████████████, but is also

15  supported by other product specifications and deposition – testimony and documents that have

16  nothing to do with ████████████.   Thus, the Court should also deny Apple's motion to

17  strike paragraph 335 and other paragraphs like it.

         **2.    The '449 Patent**

18

             **(a)    The Court Never Previously Ruled on Samsung's**
19                   **Contentions Regarding the "Imaging Device" and "A/D**
                    **Converter", Which Are Proper**
20

21        Mr. Parulski's report explains that the "imaging device" and "A/D converter" limitations

22  are each met by ████████████████████████████████████

23  ████████████████████.   (*See, e.g.*, Mot., Ex. B, ¶¶ 146-147.)   Contrary to

24  Apple's representations, Samsung's infringement contentions also make clear that different

25  portions of the CMOS Image Sensor chip in each accused product meet each respective

26  limitation.   For example, Samsung's contentions expressly state that the "A/D converter"

27  limitation is met by the accused products because they "use a CMOS Image Sensor (or similar

28  device) *that has an A/D converter*."   (Dkt. 305-4 at 162 (emphasis added).)   There can be no

1   dispute that the quoted language identifies the CMOS Image Sensor chip as *containing* the claimed

2   A/D converter.   Therefore, Apple's argument that the contentions identify the *entire chip*

3   (including the A/D converter portion) as meeting the "imaging device" limitation is plainly

4   incorrect.   (Mot. at 9-10.)   Apple's motion to strike is grounded on that false premise, and should

5   be denied.   Similarly, nothing in the Court's June 26th Order warrants striking portions of the

6   expert report regarding *literal infringement* of the "A/D converter" limitation.   (Mot. at 10, fn.

7   6.)   The Court's order addresses only Samsung's request to make an alternative argument based on

8   the doctrine of equivalents.   (*See* Amended ICs Order at 25.)

9                           **(b)      "Recording Circuit"**

10          Apple admits that Samsung identified each device's "NAND flash module" as meeting the

11   "recording circuit" limitation of the asserted claims.   (Mot. at 11.)   Nothing in the Court's June

12   26th order prevents Samsung from asserting this properly disclosed theory.   Mr. Parulski's report

13   ███████████████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████████████████████████

15   ██████████████████████████████    ██████████████████████████████████████████

16   ██████████████████████████████████████████    ██████████████    ████

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████    ████████    ████

19   ████████████████████████████████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████████████████████

21   ██████████████████.   Samsung does not intend to rely on this separate, independent opinion

22   offered by Mr. Parulski.   Apple misleadingly ███████████████████████████████

23   ███████, and cites paragraphs 196-98, 200 and 202-206 of the infringement report ██████

24   █████████████████████████████████    █████████████      There is no

25   basis for striking any other sentence in Mr. Parulski's report.

26                           **(c)      "Reproducing Circuit"**

27          Apple's attempt to strike the entirety of Mr. Parulski's opinions regarding the "reproducing

28   circuit" limitation is also improper and should be denied.   Samsung's infringement contentions

1    identify the SOC or application processor component of the accused products as meeting this

2    limitation.   Mr. Parulski's expert report properly identifies ████████████████████████

3    ███████████████████████████████████, and there is no basis to strike his

4    opinions.[5]   Apple argues that Samsung's infringement contentions identify a graphical processing

5    unit ("GPU") as meeting this claim limitation.   This is incorrect.   Apple fails to explain to the

6    Court that ████████████████████████████████████████████

7    ██████████████████████.   Samsung's contentions properly identified the

8    SOC as meeting this limitation, and also went a step further by disclosing *an example* of relevant

9    circuitry—the GPU—in the accused component.   ████████████████████████

10   ████████████████████████████████████████████████████

11   ███████████████████████████████.   Similarly, the Court's June 26th order

12   does not preclude Samsung from asserting that ████████████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████   Mr. Parulski's report complies with the order.   (*Id.*)

> ### 3.     The '239 Patent

16          Dr. Schonfeld's opinions regarding infringement as "equivalents thereof" under 35 U.S.C.

17   112(f) should be preserved pending possible adverse claim constructions, as contemplated by this

18   Court's prior order.   (Amended ICs Order at 8.)   The Court in this case stated there will be no

19   further claim construction until after the case is fully narrowed.   (Dkt. 750 at 20.)   In anticipation

20   of Dr. Storer's adoption of Apple's restrictive claim interpretations, Dr. Schonfeld included

21   opinions regarding infringement as "equivalents thereof," and they should be preserved.[6]

22   _____

23          [5]     Samsung's contentions for this limitation read in part: "For example, the Accused
24   Devices include a processor, each processor also including a graphical processing unit."
     (Dkt. 660-5 at 5.)
25          [6] Samsung also notes that the patent local rules require that patentees assert
     "[w]hether each limitation of each asserted claim is alleged to be literally present or
26   present under the doctrine of equivalents in the Accused Instrumentality."   Patent L.R.
27   3-1(e).   Infringement under the "equivalents thereof" portion of 112(f) is literal
     infringement.   Thus, Samsung's accusations against certain portions of the Accused
28          (footnote continued)

C.    **Samsung's Doctrine of Equivalents Opinions Should Be Allowed If the Court Denies Samsung's Motion to Strike Apple's Undisclosed Claim Constructions**

Samsung filed a motion to strike Apple's claim constructions that were not disclosed in response to an interrogatory asking for the same.   After failing to satisfy its discovery obligations in this case and providing Samsung with a number of excuses as to why it would not respond substantively to Samsung's interrogatory, Apple's experts then ██████████████████████ ████████████████████████████████████████████████████████ ████████████   ████████████   ██████████████████████████ ██████████████████████████████, ██████████████████████████.   The Court should grant Samsung's motion to strike Apple's late disclosed claim constructions.   If, however, the Court denies Samsung's motion to strike, the Court should ████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████

IV.    **CONCLUSION**

For the foregoing reasons, Samsung respectfully requests that Apple's motion be denied.


DATED: November 19, 2013          QUINN EMANUEL URQUHART & SULLIVAN, LLP



                                          */s/ Victoria Maroulis*
                                          Charles K. Verhoeven
                                          Kevin P.B. Johnson
                                          Victoria F. Maroulis
                                          William C. Price
                                          Attorneys for SAMSUNG ELECTRONICS CO., I
                                          SAMSUNG ELECTRONICS AMERICA, INC., a
                                          SAMSUNG TELECOMMUNICATIONS
                                          AMERICA, LLC

---

Devices as meeting certain limitations constituted an allegation and put Apple on notice that these same portions qualified as equivalents thereof.