JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 5:12-cv-00630-LHK<br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE REGARDING APPLE PATENTS (D.I. 880)**<br><br>Date:    December 10, 2013<br>Time:    10:00 a.m.<br>Place:   Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Counterclaim-Defendant. | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**<br><br>**HIGHLY CONFIDENTIAL – SOURCE CODE - ATTORNEYS' EYES ONLY**<br><br>**HIGHLY CONFIDENTIAL – THIRD PARTY SOURCE CODE – ATTORNEYS' EYES ONLY**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

I.   Dr. Snoeren's Infringement Opinions Related to the '959 Patent Are Proper ............................... 3

   A.   Dr. Snoeren's Opinions about Heuristics Are Proper ........................................................ 3

      1.   Apple Modified its Analysis of Heuristics to Account for New Source Code That Samsung Did Not Identify Until the Very Last Day of Discovery ................................... 3

         a.   Samsung Refused to Identify the Proper Source Code During the Discovery Period .......................................................................................... 4

         b.   At the End of Discovery, Samsung Revealed that the ██████████████ ████████████████████████████████ ................................... 6

         c.   Apple Disclosed its Expert's Analysis of the ████████████████ ████████████████ Promptly ..................................................... 7

      2.   Dr. Snoeren's Report Does Not Disclose Any "New Theories" ................................... 7

         a.   Dr. Snoeren's Theory that the Google Suggestion Provider is a Heuristic is Not New .......................................................................................... 7

         b.   Dr. Snoeren's Alternative Argument that the Google Suggestions Server is a Heuristic is Not New ........................................................................ 8

   B.   Dr. Snoeren's Errata Were Appropriate Corrections to His Testimony ................................... 9

   C.   Apple Accused All Samsung Products Based on the Ice Cream Sandwich or Jelly Bean Operating System of Infringing, Including the Five Samsung Products Samsung Identifies ........................................................................................... 11

II.   Dr. Snoeren's Validity Positions Are Based on the Understandings of Claim Terms Apple Long Disclosed in Its Infringement Contentions ............................................................... 12

   A.   Dr. Snoeren's Allegedly "New" '414 Patent Validity Theories Directly Respond to New Invalidity Arguments Presented for the First Time by Samsung's Expert .................... 12

   B.   Dr. Snoeren's Invalidity Opinion Concerning Claim 24 of the '959 Patent Was Disclosed During Fact Discovery, and Thus Samsung Was Aware of That Position before Receiving Dr. Snoeren's Report ............................................................... 15

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE
REGARDING APPLE PATENTS (D.I. 880)
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        i        CASE NO. 12-CV-630-LHK (PSG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III. Dr. Mowry Properly Asserted Doctrine of Equivalents Theories In Response To Samsung's Non-Infringement Arguments ................................................................................. 16

IV. Samsung Has No Grounds to Challenge Dr. Mowry's Opinions Regarding Apple Products That Practice The '647 Patent ................................................................................................ 18

V. Dr. Snoeren's Opinions Regarding Apple's Practice of the '959 Patent and Samsung's Tab 2 10.1's Infringement of the '959 Patent Should Not be Stricken as Samsung Has Suffered No Prejudice From Either Allegation ............................................................................ 22

    A.  Apple's Siri Feature Practices the '959 Patent .......................................................... 22

    B.  Samsung's Tab 2 10.1 Product Infringes the '959 Patent ........................................ 22

CONCLUSION ..................................................................................................................... 23

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Hanmi USA, Inc.*,
   CIV.A. 11-760 JAP, 2011 WL 5526009 (D.N.J. Nov. 14, 2011)...............................................18, 19

*Genentech, Inc. v. The Trustees of the Univ. of Pennsylvania*,
   2012 WL 424985 (N.D. Cal. Feb 9, 2012) ............................................................................18, 22

*Health Grades, Inc. v. MDx Med., Inc.*,
   No. 11-CV-00520-PAB-BNB, 2013 WL 149760 (D. Colo. Jan. 14, 2013).......................................8

*Oracle America, Inc. v. Google Inc.*,
   No. C 10–3561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)..........................................8

*Seiko Epson Corp. v. Coretronic Corp.*,
   C 06-06946 MHP, 2008 WL 2563383 (N.D. Cal. June 23, 2008) ...............................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

By its "Motion to Strike Expert Testimony Based On Previously Undisclosed Theories (D.I. 880)," Samsung seeks to strike a total of 75 paragraphs from the expert reports submitted by Dr. Alex Snoeren, Apple's technical expert on the '759 and '414 Patents, and Dr. Todd Mowry, Apple's technical expert on the '647 Patent. Samsung complains that Drs. Snoeren and Mowry advanced new theories of infringement in their expert reports; that Dr. Snoeren raised new theories of validity and claim construction; and that Drs. Snoeren and Mowry raised new theories concerning Apple's use of the asserted patents in its products. Mot. at 2-3. With two minor exceptions, Samsung's arguments all share a common failure: Samsung seeks to label as "untimely" disclosures made by Apple after the July 15, 2013 close of discovery, without regard for the fact that Apple's "new theories" were *responses to disclosures first made by Samsung on the July 15 close of discovery date, or subsequently in Samsung's expert reports*. In some instances, Samsung's last-day-of-discovery disclosures should themselves be stricken, rendering moot any issue over Apple's post-July 15 responses to the same, but in no event should Samsung be able to leverage its own late disclosure into a means of preventing Apple from providing a response. Yet that is exactly what Samsung seeks to do by this motion.

Most notably, Samsung succeeded for months in deflecting Apple's repeated attempts to have Samsung identify the source code for the Quick Search Box feature that infringes Apple's '959 Patent. In fact, it was not until the last day of discovery, July 15, 2013, that Samsung informed Apple that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████. The protracted history of Apple's attempt to learn that simple fact reveals pure gamesmanship on Samsung's part, taking advantage of Google's ostensible status as a third party, notwithstanding that Google is represented by Samsung's own law firm, and Google ████████████████████████████████████████████ ████████████████████████████. Samsung's motion nowhere states the date by which Samsung alleges that Apple should have identified and inspected ████████████████████ ████████████████████████████, so as to be in position to provide Samsung with infringement theories based on that source code. The reason is simple—Samsung does not want to

expressly acknowledge that its motion seeks to penalize Apple for not formulating source code-based infringement theories before Samsung identified the actual source code at issue.  Presumably, Apple could have treated Samsung's belated disclosure as a nullity and embarked upon motion practice to avoid prejudice from Samsung's late disclosure.  Instead, Apple had its technical expert analyze the extensive source code at issue and provide expert opinions based on the same in his opening expert report—served less than one month after Samsung's last-day-of-discovery disclosure.  The simple chronology of the relevant disclosures precludes any finding that Apple was untimely in formulating responses to Samsung's arguments regarding the Quick Search Box feature.

Similarly, Samsung's accusation that Dr. Snoeren articulated two new validity positions in his expert report, regarding the '414 Patent, does not hold up to an examination of the relevant chronology.  Dr. Snoeren's so-called "new" positions concerned his discussion of the "provided by" language of Claim 20 in his expert report and his understanding that claim 20 requires a consistent "plug-in" model architecture.  Those portions of Dr. Snoeren's report were prompted by the invalidity report of Samsung's technical expert on the '414 Patent, which sought to advance invalidity arguments that are *nowhere present in Samsung's invalidity contentions*.  In his ensuing report, Dr. Snoeren had every right to respond Samsung's new arguments.  Samsung's motion is implicitly premised on the notion that Apple was required to anticipate and respond to Samsung arguments before they were made.

The story is remarkably similar with regard to Samsung's complaints about Dr. Mowry's doctrine of equivalents opinion in regard to the '647 Patent.  Again, as shown in the argument below, Samsung advanced a new theory of non-infringement in its Second Supplemental Responses to Interrogatory No. 24, *served on July 15, 2013*.  Dr. Mowry's doctrine of equivalents opinion is limited to that new theory.  Apple respectfully submits that the Court should either strike both Samsung's July 15, 2013 theory and Dr. Mowry's response thereto, or strike neither; but Samsung should not be permitted to wait until the last hours of the fact discovery period to advance new theories, and then complain that Apple did not respond to those theories before the fact discovery period expired.

# ARGUMENT

## I.     Dr. Snoeren's Infringement Opinions Related to the '959 Patent Are Proper

Samsung moves to strike portions of Dr. Snoeren's infringement expert report based on allegedly untimely disclosures that were in no sense untimely.  First, Samsung complains that the report includes infringement opinions about the use of "heuristics" in the accused products that were not disclosed in Apple's infringement contentions.  Apple could not have provided this information any earlier, because Samsung failed for months to identify critical Google source code relating to this functionality, misdirected Apple by pointing to files that Samsung knew to be irrelevant, and only revealed that it had not identified the relevant code on the very last day of discovery, shortly before Apple's expert reports were due.  Second, Samsung misleadingly alleges that Dr. Snoeren issued two "supplemental reports" that should be stricken.  Mot. at 7, 21.  But these documents are simply errata correcting discrete mistakes, not supplemental reports adding new opinions, and thus should be allowed.  Third, Samsung wrongly asserts that Apple never previously disclosed Dr. Snoeren's theory that five accused products infringe the '959 Patent because they use the particular "Google suggestion provider" supported by the Android Ice Cream Sandwich and Jelly Bean operating platforms.  Apple both timely disclosed its theory of infringement for those platforms in its contentions, and clearly stated that this theory applied to all products in the case that use those platforms.

### A.     Dr. Snoeren's Opinions about Heuristics Are Proper

#### 1.     Apple Modified its Analysis of Heuristics to Account for New Source Code That Samsung Did Not Identify Until the Very Last Day of Discovery

Samsung has filed an untenable motion to strike an analysis of source code that Samsung improperly refused to identify until the last day of discovery.  The procedural history should be determinative of this aspect of Samsung's motion.  Apple served a targeted interrogatory in which Apple asked Samsung to identify, with specificity, the source code that was used on the accused products.  Samsung responded to that interrogatory by identifying ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ Apple searched this morass of files, ████████████████████████████████████████ and prepared

1   its analysis in its infringement contentions based on those files.  Only on July 15, the last day of

2   discovery, did Samsung reveal for the first time that the files Samsung █████████████████

3   ████████████████████████████████████████  Samsung only then

4   suggested that ██████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████

6   ██████████████████  Apple promptly located those files, analyzed them, and included

7   that analysis in Dr. Snoeren's August 12, 2013, report.  There is no basis for Samsung's motion, and

8   it should be denied.

9              a.      **Samsung Refused to Identify the Proper Source Code During the
                       Discovery Period**

10          Apple alleged infringement of the '959 Patent by Samsung mobile phones and tablets that run

11  the Google-developed Android platform, and based those allegations on a feature called the Quick

12  Search Box (also called the Google Search Application or GSA).  The Quick Search Box/GSA has

13  been released in multiple versions, each generally associated with a different version of the Android

14  platform.  Apple accused Samsung phones and tablets that included versions of the Quick Search Box

15  associated with the Gingerbread (Android 2.3.x), Ice Cream Sandwich (Android 4.0.x) and Jelly

16  Bean (Android 4.1.x) versions of Android.  Apple diligently served requests for production on

17  Samsung, and a subpoena on Google, to obtain code for all of these versions of the Quick Search

18  Box.  Ex. DD (Apple's Second Set of Requests for Production to Defendants) at 6-7; Ex. EE (Apple

19  Inc.'s Notice of Third-Party Subpoenas to Google, Inc.) (April 5, 2012); Ex. FF (Apple Inc.'s Notice

20  of Third Party Subpoenas to Google, Inc.) (September 28, 2012).[1]  Three different variations of the

21  source code exist for the Quick Search Box: █████████████████████████████████

22  ████████████████████████████████████████████  All of these

23  variations were produced, but they resided in three different locations in Samsung's and Google's

24  source code production, and there was no way for Apple to discern on its own which variation was

25  used on any particular device.[2]

---

[1] Exhibits cited within are to the Rho Declaration filed concurrently herewith.
[2] As Samsung represented to this Court, it produced its entire build environment for each Accused
Device tha ██████████████████████████████████████████
provider.

*(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

As a result, Apple diligently sought discovery to identify which of these three source code variations was actually used by Samsung to generate the version of the Quick Search Box that was operating on the accused Samsung mobile phones and tablets. Apple's attempts to do so, however, were frustrated by Samsung's deliberate effort to mislead Apple by pointing to source code that Samsung ███████████. *See* Apple's Motion to Strike (D.I. 882 at 20). Specifically, on March 6, 2013, Apple served the following targeted interrogatory seeking that information:

> For each Samsung Accused Product, identify with specificity the Source Code Version of Source Code for the Android operating system for that Accused Product including all updates, releases, and post-initial release updates of the Source Code for that Accused Product, state the dates on which that software was available to be installed on that product, identify with specificity where the Source Code is located in Samsung's production, and state what publicly available version of Android the identified Source Code Version corresponds to.

*See* Ex. D (Apple Interrogatory No. 41) at 5. Samsung responded to this Interrogatory by directing Apple to source code that Samsung itself assembled on certain ██████████ which Samsung made available for Apple to inspect.[3] Ex. E (Samsung Responses to Interrogatory No. 41 (served April 5, 2013)) at 5.

Apple relied on Samsung's response, and ███████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████ *See, e.g.*, Ex. F (May 21, 2013 '959 Galaxy SIII Infringement Contentions) at 8 (pointing to code from the ████████████████████████████ and Ex. G (May 21, 2013 Galaxy SIII Source Code Appendix) at 1-2 (showing ██████████████████ ██████████████████████████ Apple thereafter provided its infringement analysis of the Quick Search Box and the included Google suggestion provider based on

---

*(Cont'd from previous page)*

███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ████████████████████████████ is the name of the server system Samsung produced for inspection. Therefore, this request asked where the files actually used for each accused product were located in Samsung's production.

the ███████████████████████ Accordingly, up until the day

that fact discovery closed, Apple had no basis to determine ████████████

████████████████████████████████ The best

information available to it was Samsung's answer to Interrogatory Number 41, in which Samsung

██████████████████████████████████

████, and never once pointed to the Google source code that Samsung actually used.

      **b.** ████████████████████

████████████

      On the very last day of fact discovery, Samsung stated, for the first time, that several of the files Apple cites to in its contentions "are universally incorrect for all devices and software versions." D.I. 882 Ex. 42 (Samsung's Responses to Apple's Twelfth Set of Interrogatories (Nos. 47-50)) at 27. Without admitting it, Samsung thus indicated that its earlier answer to Interrogatory Number 41 was incorrect with respect to the Quick Search Box and associated Google suggestion provider. Samsung's July 15, 2013 answer to Apple's Interrogatory Number 48 indicated that, ████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

█████████████████

      Consequently, it was not until, July 15, 2013, the last day of fact discovery, that Samsung finally informed Apple ████████████████████████████

███████████████████████████ and that Apple had, in reliance on Samsung's identification, used to prepare every one of its infringement contentions. *Id.* at 12-41; *accord id.* at 27 ("███████████████████████████

███████████████"). Instead, on that date, Apple confirmed for the first time that

████████████████████████████████████

████ that was only available for inspection and review at Quinn Emanuel's San Francisco offices

under the ████████████. In addition, it now became evident that ███████████████

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE
REGARDING APPLE PATENTS (D.I. 880)
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE    6    CASE NO. 12-CV-630-LHK (PSG)

1 ██████████████████████████████████████████████ at issue

2 before August 12, 2013 when opening expert reports were due.

3 **c.** █████████████ **lysis of the** ████████

**Promptly**

4 █████████████████████████████████████████████████

5 ████████████████████████, Dr. Snoeren and Apple immediately undertook the laborious

6 source code review that Samsung's late disclosure required.  As a result, Dr. Snoeren determined that

7 the ███████████████████████████████████████████

8 ████████████████████████████████████████████████

9 █████████████████████████████████████████████████████

10 ██████ Dr. Snoeren was able to confirm that the Google suggestion provider (module) in the

11 ████████████████████████████████ was still a "heuristic" according to the

12 Court's interpretation, and he provided a detailed analysis of the newly-identified ████████████

13 █████████████████████ in the '959 Patent infringement analysis in his expert report.  Mot. Ex.

14 10 at ¶¶ 123, 264-69, 286-91.  Apple served that report exactly four weeks after Samsung's July 15,

15 2013 disclosure.

16    That Samsung has actually filed a motion to strike Dr. Snoeren's analysis of the *correct code*,

17 which Samsung knowingly refused to identify, while purposely misdirecting Apple to the wrong

18 code, is nothing short of outrageous.  Apple promptly integrated the newly information and disclosed

19 it to Samsung as soon as possible, and there is consequently no basis for a motion to strike it.

20        **2.    Dr. Snoeren's Report Does Not Disclose Any "New Theories"**

21           **a.    Dr. Snoeren's Theory that the Google Suggestion Provider is a
               Heuristic is Not New**

22    Samsung's suggestion that Dr. Snoeren's new analysis regarding heuristics amount to an

23 entirely "new theory" of infringement is, in any event, incorrect.  First, Samsung contends that Dr.

24 Snoeren's infringement expert report introduced a new description of why the Google suggestion

25 provider qualifies as a "heuristic."  Samsung is wrong.  Starting with the very first set of infringement

26 contentions, Apple identified the Google suggestion provider or module as one of the plurality of

27 heuristics in the accused devices to which the Quick Search Box transmits a search query and always

28 asserted that the Google module employed a heuristic.  Ex. A (June 15, 2012 '959 Admire

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE
REGARDING APPLE PATENTS (D.I. 880)

Infringement Contentions) at 57-58; Ex. B (June 15, 2012 '959 Galaxy SIII Infringement Contentions) at 53; Ex. C (November 21, 2012 '959 Nexus Jelly Bean Infringement Contentions) at 46; Ex. F (May 21, 2013 '959 Galaxy SIII Infringement Contentions) at 11-12.  Samsung's complaint appears to be directed at the fact that Apple provided additional factual detail and explanation as to how Google's suggestion provider meets the claimed elements.  Yet, providing additional detail is the expected role for an expert, whose job is to explain his opinion as to not only what elements meet the claim limitation, but why that limitation is met.  Additional evidence and elaboration in an expert report are entirely proper.  *See Oracle America, Inc. v. Google Inc.*, No. C 10–3561 WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011); *Health Grades, Inc. v. MDx Med., Inc.*, No. 11-CV-00520-PAB-BNB, 2013 WL 149760, at *1 (D. Colo. Jan. 14, 2013) (applying N.D. Cal. Patent Local Rules).

In his infringement expert report, Dr. Snoeren not only properly explains what the heuristic module is—namely, the Google suggestion provider—but also why that provider is heuristic, using the Court's guidance on what it means to be heuristic.  Mot. Ex. 10 at ¶¶ 264-69, 286-91.  The examples cited in Samsung's brief (Mot. at 18) only serve to illustrate that point.[4]  Moreover, Samsung misrepresents Dr. Snoeren's opinion.  Dr. Snoeren does not, as Samsung suggests, argue that the Google suggestion provider's search is heuristic because it searches locally.  Mot. at 18.  Rather, he explains that ███████████████████████████████████████████████████████████████████████████████████████. Mot. Ex. 10 ¶ 264.  He explains that the ████████████████████████████████████████████████████ *Id.* ¶¶ 264-69.

**b.     Dr. Snoeren's Alternative Argument that the Google Suggestions Server is a Heuristic is Not New**

Apple's infringement contentions and Dr. Snoeren's report clearly set forth Apple's infringement positions, applying the correct reading of claim 24 of the '959 Patent to explain how the accused products provide the required plurality of heuristics on the same computer system where a

---

[4] ██████████████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE

8

Gibson, Dunn &
Crutcher LLP

user's inquiry is provided.  Apple was aware that Samsung contends that the plurality of heuristics are not required to reside on the same computer system where the user's inquiry is provided.  Dr. Snoeren thus offers an alternative theory that the Google Suggestions server, which does not reside on the accused phones, could qualify as one of the heuristics if Samsung's view of the claim is correct.  Ex. L (Snoern Rep.), ¶¶ 256, 269, 291.  Samsung now argues that Dr. Snoeren's alternative opinion is "new."  Mot. at 19.  Samsung is wrong.  It has been Apple's position since the preliminary injunction phase that ███████████████████████████████████████████████. *See* D.I. 179, ¶ 52 (Polish Reply Dec.) ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").  This is not a "new" allegation at all, but merely a recitation of an long-standing alternative position, taking into account Samsung's view of the claims.

### B.       Dr. Snoeren's Errata Were Appropriate Corrections to His Testimony

Samsung next complains about two errata served respectively on August 30, 2013, and September 24, 2013, by asserting that those errata are "supplemental" reports.  Yet Samsung does not explain what the errata actually "supplement" of substance to his opening report.  That is because the errata do not add anything of substance.  Rather, they are what they were called—errata to correct errors Dr. Snoeren found.

The first errata served on August 30, 2013, relates to the '414 Patent to clarify a potential misunderstanding in paragraph 474 of his opening report related to how he was applying claim 20 of the '414 Patent.  Claim 20 of the '414 Patent requires at least two "other synchronization software components" each corresponding to a different data class.  Paragraph 474 as originally drafted identified six "Sync Adapters" as synchronization software components but stated that "only two" from the set of Gmail, Google Calendar, Google Contacts, Exchange Mail, Exchange Calendar and Exchange Contacts are required to meet the "other synchronization software components" required by claim 20.   His errata only corrected that one paragraph and clarified that what was originally stated was true "provided the two each correspond to a different data class than the Sync adapter

1    configured to synchronize the first class of data."  The corrected paragraph further includes an

2    example, and it changes an earlier reference to "Gmail mail data" to "mail data" and "Exchange

3    calendar data" to "calendar data" for further clarity.  Clarification of one paragraph in a 528

4    paragraph report is not a supplemental report; it is what Apple called it—an errata.  That errata was

5    served fourteen days before Samsung's rebuttal report was due on September 13, 2013, providing

6    ample time for Samsung's expert on the '414 Patent, Dr. Chase, to respond to that correction in his

7    rebuttal report even if it was a supplemental report (which it is not).  The first errata thus should not

8    be stricken.

9         Samsung next asks the Court to strike the September 24, 2013, errata.  Its brief again labels

10   that errata as a supplemental report without identifying any specific information that it adds or

11   changes to the substantive opinions he offered.  Like the first errata, the second errata merely

12   corrected errors in his opening expert report, this time in the low-level details of a source code

13   analysis Dr. Snoeren provided to explain how the Google source code functions.  While Samsung

14   claims that this errata "provides new source code analysis and new theories regarding the operation of

15   this code," it cannot and does not argue that the corrected low-level detail Dr. Snoeren provided

16   changes his infringement opinion.  Indeed, Dr. Snoeren says just that:  "These changes do not change

17   my overall opinions I provided in my opening report" (Mot. Ex. 12 at 1) and Samsung does not

18   challenge that assertion in its motion.

19        Rather, in response to criticism by Samsung's expert (Dr. Rinard), Dr. Snoeren revisited the

20   source code analysis contained in his opening report and in Exhibit 3 thereto and realized that it

21   contained some mistakes as to names of files and source code components for a few versions of the

22   many versions of code that he reviewed and analyzed.[5]  To give Samsung an opportunity to question

23   _____

24   [5] Dr. Rinard criticizes Dr. Snoeren's source code analysis without pointing out the decidedly unfair
     advantage he enjoyed.  *See, e.g.,* Ex. I (Rinard Reb. Rep.) at ¶¶ 137-139.  Dr. Rinard, who was hired
25   by Samsung (not Google), was provided a mysterious disk of Google proprietary source code (not
     Samsung code).  Dr. Rinard was then able to perform searches, traces and other instructions used to
26   review source code whenever he wanted, without the restrictions the Protective Order imposed on
     Apple's experts.  That distinct advantage is the subject of a motion to strike by Apple.  D.I. 882 at 21-
27   22.  In contrast, Dr. Snoeren followed the Protective Order, which limited when he could access the
     source code, how many copies could be made and how long he had                          e
28   ███████████████████████████                       y identified ███████████
     ████████████████████████████████        on July 15, 2013—the source code for which

     *(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

1    Dr. Snoeren on how he understood the Google source code to work, Apple served the errata before

2    his two-day deposition.  (The deposition spanned ten hours of questioning on September 25 and 26,

3    2013.)  Yet Samsung did not ask Dr. Snoeren *any* questions in his deposition about the Google or

4    Samsung source code, much less any of the changes in file names, likely because it did not alter or

5    change his overall opinions.   For these reasons, Samsung's motion as to the errata should be denied.

6    **C.    Apple Accused All Samsung Products Based on the Ice Cream Sandwich or Jelly**
      **Bean Operating System of Infringing, Including the Five Samsung Products**
7    **Samsung Identifies**

8            Apple's infringement contentions clearly accuse, among others, the Galaxy S II Skyrocket,

9    Galaxy SII Epic 4G Touch, Galaxy SII, Illusion and Galaxy Note of infringing the '959 Patent.

10   Initially, those five Samsung products were sold with Gingerbread versions of the Android operating

11   system and thus, Apple pointed to the Web suggestion provider that is included on the Gingerbread

12   version of the Quick Search Box.  Later versions of Apple's infringement contentions indicated that

13   Apple was accusing all versions of those products, regardless of whether they included only the

14   Gingerbread operating system or "versions upgraded to later versions of the Android operating

15   system" (including the Ice Cream Sandwich and Jelly Bean versions).  Mot. Ex. 34 at 1 n.1.  And,

16   Apple asserted that its infringement theory for all accused Samsung products was the same across

17   operating system (except for those limited maintenance releases in which Google removed the

18   infringing functionality in response to this Court's issuance of a preliminary injunction on the '604

19   Patent (the '959 Patent's parent)).  For Ice Cream Sandwich and Jelly Bean, Apple identified the

20   Google suggestion provider as a Google heuristic.  *See, e.g.,* Fazio Decl. Ex. 23.  Thus, Apple clearly

21   contended during discovery (consistent with Dr. Snoeren's opinion) that the five Samsung products

22   pointed to in Samsung's motion included a Google heuristic when incorporating the Ice Cream

23   Sandwich or Jelly Bean versions of the Quick Search Box, contrary to Samsung's contention.  Mot. at

24

25   *(Cont'd from previous page)*

26   Samsung levied its criticisms.  At that time, Google had not produced printed copies of most of the
     relevant source code, thus requiring review at Quinn Emanuel's offices under the Protective Order
27   and the Google source code computer included almost forty versions of the Quick Search Box source
     code.  When Dr. Snoeren was alerted to his errors by Samsung's expert, Dr. Rinard, in his rebuttal
28   report, Dr. Snoeren promptly prepared his errata to correct the naming errors.

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE
REGARDING APPLE PATENTS (D.I. 880)
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        11        CASE NO. 12-CV-630-LHK (PSG)

19-20.

## II.   Dr. Snoeren's Validity Positions Are Based on the Understandings of Claim Terms Apple Long Disclosed in Its Infringement Contentions

Samsung next argues that Dr. Snoeren offered new validity theories in his expert reports on the '959 and '414 Patents that it alleges were missing from Apple's response to Samsung's interrogatory requesting Apple's validity positions.

### A.   Dr. Snoeren's Allegedly "New" '414 Patent Validity Theories Directly Respond to New Invalidity Arguments Presented for the First Time by Samsung's Expert

Samsung contends that Dr. Snoeren added two theories regarding claim 20 of the '414 Patent in order to avoid the prior art:  (1) that each of the claimed "synchronization software components" must "provide" synchronization processing threads by causing a thread to be created or instantiated (as the claims plainly require)[6] and (2) that claim 20 requires a consistent "plug-in" model architecture comprised of distinct synchronization software components each dedicated to a specific data class.  *See* Mot. at 14; Proposed Order (seeking to strike Ex. J (Snoeren Reb. Rep.) ¶¶ 493, 565-66, 606-607)[7] and *id.* (seeking to strike Ex. L (Snoeren Rep.) ¶¶ 408, 472-73, 475 and Ex. J (Snoeren Reb. Rep.) ¶¶ 428, 459 and 572).

Both of the validity opinions that Samsung seeks to strike are directly responsive to new invalidity arguments raised for the very first time in the opening report of Samsung's expert.  With respect to the first of these validity opinions, the claim language expressly requires the synchronization thread to be "provided by" a synchronization software component.  But Samsung took the position for the very first time in Samsung's opening expert report that providing a thread means nothing more than "executing on" (*i.e.*, using) a preexisting thread provided by a different component.  That *position was nowhere found in Samsung's invalidity contentions*.  Ex. M (October 1, 2013 Chase Deposition) at 245:11-246:14.  Indeed, as explained in Apple's co-pending motion to strike, Samsung did not even identify the alleged "synchronization software components" for some of

---

[6] Claim 11 (from which claim 20 depends) requires "executing at least one synchronization processing thread . . .  wherein the at least one synchronization processing thread is provided by a synchronization software component . . . ."  '414 Patent, col. 33:47-50 (emphasis added).
[7] Samsung's proposed order also seeks to strike Ex. J (Snoeren Reb. Rep.) ¶ 408.  This appears to be a typographical error as none of the arguments in Samsung's motion relate to that paragraph.

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE
REGARDING APPLE PATENTS (D.I. 880)
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        12        CASE NO. 12-CV-630-LHK (PSG)

its prior art references, much less its new theory regarding its interpretation of "provided by" until its expert's invalidity report.  *See* D.I. 882 at 4-5.  For the other references, Samsung merely parroted back the language of claim the "provided by" language of claim 20 without indicating its intent to deviate from the plain meaning of that term.[8]  In its *rebuttal* report, Apple's expert simply and properly *rebutted* the positions Samsung raised for the very first time in its opening expert report.

Similarly, Samsung did not identify the particular "synchronization software components" it now relies on in its contentions, and certainly did not indicate whether those components were part of a consistent plug-in model architecture.  Samsung took positions in that regard for the first time when Samsung's expert served his report and identified those alleged components.[9]  Once Samsung's new invalidity arguments were presented in its expert's invalidity report, Dr. Snoeren analyzed them and timely *rebutted* them in his *rebuttal* report.  For Samsung to move to strike validity opinions from a *rebuttal* expert report regarding new invalidity theories first raised by Samsung's expert in his opening report, and never previously disclosed in Samsung's contentions, is entirely inappropriate.

But this is not all; Samsung's claim that Dr. Snoeren's validity theories are based on a new interpretation of the claim language is demonstrably false.  Both of Apple's allegedly "new" validity theories are entirely consistent with the claim interpretation applied in Apple's infringement contentions and Dr. Snoeren's infringement report.  Specifically, both Apple's contentions and Dr. Snoeren's infringement report apply the plain meaning of "provided by" to the synchronization software components in the Accused Products (▮▮▮▮▮▮▮▮▮▮▮▮), explaining that these

---

[8] *See, e.g.*, Ex. BB (Samsung's Amended Invalidity Contentions (Vadlamani)) at 15; Ex. CC (Samsung's Amended Invalidity Contentions (Rashid)) at 21.  Apple responded to the fact that Samsung had merely parroted the claim language in its invalidity contentions by explaining in its interrogatory response that "Samsung has failed to meet its burden in demonstrating that [prior art reference] teaches executing at least one synchronization processing thread concurrently with the executing of the at least one user-level non-synchronization processing thread, wherein the at least one synchronization processing thread is provided by a synchronization software component." *See, e.g.*, D.I. 880-22 at 167, 173.

[9] Dr. Snoeren distinguishes four prior art references on this basis:  Windows Mobile, Evolution, Vadlamani and Rashid.  As explained in Apple's co-pending motion to strike, Samsung failed to disclose the alleged "software synchronization components" for the Windows Mobile and Evolution systems in its invalidity contentions.  D.I. 882 at 3-5 (Windows Mobile); 5-6 (Evolution).  With respect to the other references, Samsung merely parroted back the claim language and did not articulate its present invalidity theories until its expert's report.  *See* Ex. BB (Samsung's Amended Invalidity Contentions (Vadlamani)) at 107-118; Ex. CC (Samsung's Amended Invalidity Contentions (Rashid)) at 97-101.

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE
REGARDING APPLE PATENTS (D.I. 880)
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE          13          CASE NO. 12-CV-630-LHK (PSG)

1   components not only execute on, but actually ██████████████████████████

2   ████████████████████████" *See* Ex. K (May 21, 2013 '414 Galaxy SIII Infringement

3   Contentions) at 8; Ex. L (Snoeren Rep.) Ex. 7N at 7.  Apple's contentions and Dr. Snoeren's

4   infringement report further explain that ████████████████████████████████

5   ████████████████████████████████████████████

6   ██████████████████████████████████████

7   ████████   Further, Apple's infringement contentions explain that ████████████████

8   ██████████████████████████████████ and thus could be plugged into ██████████████

9   ██████████████████   Ex. K at 8, 16.

10          Finally, Samsung's claim that the validity theories it seeks to strike are based on "new" claim

11  interpretations is even belied by its expert's own report.  The opening report of Samsung's expert

12  expressly and specifically identifies both of the allegedly new positions that Samsung seeks to strike

13  now.  With respect to first allegedly "new" theory, Samsung's expert's opening report states: "████

14  ████████████████████████████████████████████████████

15  ██████████████████████████" Ex. N (Chase Rep.) ¶ 685; *see*

16  *also id*. at ¶ 686 (further explaining Samsung's expert's opinion regarding this contention).  As to the

17  second allegedly "new" theory, Samsung's expert's opening report states: "████████████████

18  ████████████████████████████████████████████████████

19  ██████████████████████████████████

20  ████████   *Id*. at ¶ 694.  From there, Samsung's expert goes on for five pages, offering his opinions

21  regarding all aspects of this theory.  *Id*. at ¶¶ 694-701.  Thus, Samsung's expert has already

22  responded to both of Apple's allegedly "new" validity rebuttal theories and he did so in his opening

23  invalidity report.  Since Samsung's expert's opening report was prepared *before* either of Dr.

24  Snoeren's reports was served, Samsung's claim that Dr. Snoeren somehow presented "new" theories

25

26

27  ―――――――――――――――――
    [10] Ex. K (May 21, 2013 '414 Galaxy SIII Infringement Contentions) at 8, 16; Ex. L (Snoeren Rep.)
28  Ex. 7N at 7, 15.

1   in his reports that Samsung was not previously able to address simply cannot be true.[11]

2   **B.      Dr. Snoeren's Invalidity Opinion Concerning Claim 24 of the '959 Patent Was**
3   **Disclosed During Fact Discovery, and Thus Samsung Was Aware of That**
    **Position before Receiving Dr. Snoeren's Report**

4           Samsung incorrectly argues that portions of Dr. Snoeren's report should be stricken since it

5   "now states that 'heuristics' in the '959 Patent means 'modules that implement a heuristic

6   algorithm,'" which is "a previously-undisclosed construction."  Mot. at 9, 16-17.  Samsung withholds

7   two important points from the Court that show this argument to be untrue.

8           First, Apple contended throughout discovery that the "plurality of heuristics"[12] were modules.

9   For each accused product, Apple's infringement contentions stated:  "For example, the [Accused

10  Product]'s Quick Search Box provides a plurality of heuristics, or *modules*."  *See, e.g.*, Galaxy SIII

11  Infringement Chart (served July 19, 2013) (D.I. 681), at 8 (emphasis added).  The same statement

12  appeared in every claim chart served for every accused product.  And, Apple indicated in its

13  responses to Samsung's Interrogatory No. 26 regarding validity that it was applying claim 24's

14  recitation of a plurality of heuristics "as that term is properly understood," putting Samsung on notice

15  that Apple was applying its understanding that required the heuristics to be modules as shown above

16  in the infringement contentions.  *See, e.g.*, Mot. Ex. 20 at 300.  For the remaining references in this

17  case for which Samsung requested a response to its validity interrogatory, Apple made similar

18  statements.[13]  *See id*. at 298 (Smith); *id*. at 147-48, 298 (Newton).  Thus, although Samsung does not

19  inform the Court, Apple has always contended that heuristics are modules; that is not a new position.

20          Second, Samsung's suggestion that it was not aware that Apple contended that claim 24

21  requires a plurality of modules is contradicted by its own discovery responses.  Specifically, Apple

22

23  [11] Samsung's request (in the alternative) for leave to supplement its expert's invalidity opinion to
    reply to Apple's expert rebuttal report should be denied because Samsung was already aware of each
    of these allegedly "new" positions.

24  [12] The other claim of the '959 Patent at issue—claim 25—depends on claim 24 and refers back to the
    heuristics of claim 24.

25  [13] Samsung also fails to inform the Court that the parties had an agreement to limit the number of
    references for which it would require a response to its respective validity interrogatory.  *See* Ex. GG

26  (April 24, 2013 Letter from Amar Thakur to Fred Chung).  For three of the six validity references left
    in this case related to the '959 Patent—AppleSearch, Evans, and Evans in combination with

27  Grossman—Samsung did not request that Apple provide a response and this motion, even if true, is
    therefore irrelevant with respect to those references.  *See id*.; D.I. 793 (Samsung's Reduction Of

28  Invalidity References).

served an interrogatory requiring Samsung to identify all proposed design changes that it contended were non-infringing alternatives.  Ex. O (Apple Interrogatory No. 29).  In response to that interrogatory, Samsung alleged that it could ███████████████████████████████████ ████████.  Specifically, Samsung wrote:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Ex. P (Samsung's Further Supplemental Response to Interrogatory No. 29 (served July 15, 2013)) at 159 (emphasis added).  Samsung's response clearly indicates that it understood Apple's position that the plurality of heuristics required two modules and, thus, it argued that it could avoid infringement by providing a single module rather than two.

Thus, Samsung not only was aware of Apple's position, it responded to it during discovery. The Court should therefore deny Samsung's motion to strike portions of Dr. Snoeren's report relating to whether heuristics require modules.[14]

## III.   Dr. Mowry Properly Asserted Doctrine of Equivalents Theories In Response To Samsung's Non-Infringement Arguments

Samsung seeks to strike Dr. Mowry's doctrine of equivalents argument regarding the '647 Patent, but does not advise the court that that argument was included in Dr. Mowry's report in direct response to a new, meritless non-infringement argument Samsung raised at the very end of discovery. Apple contends that the '647 Patent is infringed literally, and that is the basis for its infringement contentions.  In its expert report, however, Apple simply and properly responded to the belated non-infringement argument raised by Samsung.

Specifically, on July 15, 2013, the very last day of fact discovery, Samsung raised a brand-new non-infringement argument that had never before been identified.  Apple's expert, Dr. Mowry, responded to this argument in his expert report, explaining that Samsung's devices infringe both literally and under the doctrine of equivalents.  Samsung now moves to strike Dr. Mowry's doctrine

---

[14] Samsung also seems to be making what appears to be a claim construction argument in its motion, an issue not relevant to a motion to strike and that should be ignored by the Court.  Mot. at 16-17.

1   of equivalents opinions on the ground that Apple had not disclosed doctrine of equivalents theories in

2   its infringement contentions (Mot. at 9), which contentions were served well before Samsung raised

3   its new non-infringement argument.  Samsung should not be rewarded for delaying disclosure of its

4   non-infringement theories.  Dr. Mowry properly responded to new non-infringement arguments

5   Samsung never raised until the end of fact discovery.  If Dr. Mowry's doctrine of equivalents position

6   is too late, Samsung's new non-infringement argument to which it responds must be too late also.

7        Samsung introduced on the last day of fact discovery a new non-infringement theory that the

8   accused Samsung mobile phones and tables that operate on the Android Jelly Bean operating system

9   do not contain a "user interface enabling the selection of a detected structure," as required by the

10   asserted claims of the '647 Patent.  Ex. P (Samsung's Second Supplemental Responses to

11   Interrogatory No. 24 (served July 15, 2013)) at 114-115.  Specifically, Samsung alleged that in the

12   Jelly Bean-based products, ████████████████████████████████████████████

13   ██████████████████████████████████████████████████ *Id.*  Apple

14   served an interrogatory seeking all of Samsung's non-infringement positions in August 2012, but

15   Samsung never identified this argument until over eleven months later, in its second supplemental

16   responses served on the very last day of fact discovery.

17        Dr. Mowry's opening expert report, served less than a month later, offered a detailed opinion

18   why Samsung's interpretation of the claims and application of that interpretation to Jelly Bean

19   devices was wrong.  To be clear, Apple (and Dr. Mowry) asserts that Samsung literally infringes the

20   asserted claims.  But Dr. Mowry also offered an opinion that the Jelly Bean functionality would

21   nevertheless satisfy the "selection of a detected structure" element under the doctrine of equivalents

22   in response to Samsung's belated non-infringement positions.  Mot. Ex. 27, ¶ 252.  Samsung's

23   motion does not even mention that Dr. Mowry was responding to Samsung's late introduction of a

24   new non-infringement position, because that fact is fatal to its motion.[15]

25

26   ---

[15] Samsung also complains about Dr. Mowry's doctrine of equivalents opinions with respect to the

27   "analyzer server" limitation, which has not been construed in this case.  Again, Apple asserts that this
limitation is met literally under the claims as properly construed.  Dr. Mowry also offered an opinion

28   as to infringement under the doctrine of equivalents in the event the "analyzer server" term is
construed under the erroneous construction Samsung and its expert proposes.  Samsung was aware of

*(Cont'd on next page)*

Nor does Samsung attempt to explain how Apple's response to that new non-infringement position caused "material prejudice," and that failure alone is fatal to its motion to strike. *Genentech, Inc. v. The Trustees of the Univ. of Pennsylvania*, 2012 WL 424985, at *5 (N.D. Cal. Feb 9, 2012). Samsung cannot show prejudice, particularly given that Dr. Mowry's positions were stated in his opening expert report, to which Samsung's expert responded in his rebuttal expert report. Samsung simply argues that this Court struck Samsung's tardy doctrine of equivalents arguments in the prior case, so Apple should not be able to assert any "new" doctrine of equivalents theories. But Samsung ignores the critical difference between the situations – while Samsung belatedly asserted doctrine of equivalents theories that this Court properly struck, Dr. Mowry's opinions were in response to non-infringement positions Samsung withheld until the end of fact discovery. Samsung cannot make a late-in-the-game disclosure and then complain when Apple provides a response. *AstraZeneca AB v. Hanmi USA, Inc.*, CIV.A. 11-760 JAP, 2011 WL 5526009, at *2 (D.N.J. Nov. 14, 2011) (applying similar local rules).

## IV. Samsung Has No Grounds to Challenge Dr. Mowry's Opinions Regarding Apple Products That Practice The '647 Patent

Consistent with its belatedly raised non-infringement arguments, Samsung, on the last day of fact discovery, asserted brand-new positions regarding Samsung's copying of the patented invention as well as Apple's practice of the patent. Now Samsung moves to strike Dr. Mowry's opinions responding to those late-asserted arguments. Even worse, Samsung wants its expert to provide false information to the jury regarding Apple's practice of the '647 Patent, while precluding Apple's expert from providing the facts—facts that were disclosed by Apple during fact discovery. Indeed, Apple's discovery responses provided *exactly* the level of detail Samsung now moves to strike.

Dr. Mowry's opinions regarding Apple's practice of the '647 Patent properly responded to Samsung's (and Samsung's expert's) belatedly raised arguments and false statements regarding Apple's practice of the patent. On the last day of fact discovery, Samsung served its second

---

*(Cont'd from previous page)*

Apple's doctrine of equivalents theories, as they were disclosed in Dr. Mowry's preliminary injunction declarations. *See* D.I. 18 ¶¶ 35-36; D.I. 177 ¶¶ 19, 72, 76.

1    supplemental response to Interrogatory No. 20 regarding secondary considerations of non-

2    obviousness.  *See* Ex. P (Samsung Supplemental Responses to Interrogatory No. 20) at 45-46.

3    Samsung asserted, for the first time, that its Android devices could not have copied Apple's patent or

4    products because Apple's iOS version 3, released in 2009, was the first iOS version to practice the

5    patent, whereas Android was first released in 2008.[16]  Samsung's expert repeated this erroneous

6    argument in his opening report, falsely stating that "Apple contends that the first product it released

7    that incorporated this technology was iOS 3."  Ex. W (Jeffay Rep.) ¶ 814.

8         Dr. Mowry properly responded to these late arguments and false statements.  He explained

9    that Apple has never contended that iOS 3 was the "first" implementation of the patented technology.

10   Ex. X (Mowry Reb. Rep.) ¶ 391.  Dr. Mowry explained that the patented functionality was fully

11   implemented at least in Mac OS X (released in 2007).  Mot. Ex. 27, ¶ 304; Mot. Ex. 28, ¶ 391.  It was

12   appropriate for Dr. Mowry to correct the false statements of Samsung's expert and rebut Samsung's

13   new argument regarding Apple's practice of the patent.  *See AstraZeneca*, 2011 WL 5526009, at *2.

14        Moreover, Dr. Mowry's opinions were not based on any "new" information undisclosed to

15   Samsung.  Samsung falsely states that Apple "never claimed that Mac OS X practiced the claims of

16   the '647 Patent" and that Apple did not disclose Dr. Mowry's discussions with Apple engineers.

17   Mot. at 23.  To the contrary, Apple's interrogatory responses—as Samsung admits—"incorporated by

18   reference" Dr. Mowry's expert reports from prior litigations against HTC and Motorola (who were

19   represented by Samsung's present counsel).  Mot. at 10.  These documents expressly disclosed (1)

20   that versions of Mac OS, including Mac OS X, practiced the '647 Patent, and (2) identified an Apple

21   engineer—Olivier Bonnet—that Dr. Mowry spoke with regarding Apple's implementation of the

22   patented functionality.  Ex. V.  In fact, these documents, produced in discovery and disclosed in

23   Apple's interrogatory responses, track *almost verbatim* the very opinions Samsung moves to strike.

24   *Compare id. with* Mot. Ex. 27, ¶ 300-304, Ex. 28, ¶ 391.

25        In addition to Dr. Mowry's opinions regarding Mac OS' practice of the '647 Patent,

26   Samsung—based on demonstrably false statements—also moves to strike Dr. Mowry's opinions

27

28   ───────────────────

[16] iOS is Apple's mobile operating platform.  Mac OS is Apple's operating system for desktop and
laptop computers.

regarding all iOS versions except 3.1.3.  Samsung erroneously states that "Dr. Mowry has only ever attempted to demonstrate that Apple products using iOS version 3.1.3, and not any other version, practice any claim of the '647 Patent."  Mot. at 22.  Samsung also erroneously states that Dr. Mowry's opinions regarding Apple's practice by any version of iOS other than version 3.1.3 rest on "new evidentiary support."  *Id*. at 23.  In fact, Apple and Dr. Mowry have consistently taken the position that *all iOS products from version 3.0 forward* practice the '647 Patent, and Apple disclosed during fact discovery *all* of the information on which Dr. Mowry relied.

Apple's consistent disclosures in this regard date back to the very outset of this case.  In Dr. Mowry's PI-phase declarations and deposition, he opined that *all* of Apple's current iOS products practice the '647 Patent, including those running iOS 5.0.  D.I. 18 ¶¶ 84-87; D.I. 177 ¶¶ 286-287; Ex. R (April 4, 2012 Mowry Deposition) at 163:18-164:10.  In Apple's June 2012 Patent L.R. 3-1(g) disclosures, Apple identified all of its iOS products from version 3.0 forward as practicing the '647 Patent.[17]  Apple made the relevant source code files from iOS versions 3.0 to 6.0 available for inspection by Samsung.  In response to Samsung's Interrogatory No. 25, regarding Apple's practice of its patents, Apple identified all iOS products running versions 3.0 to 6.0 as practicing the '647 Patent.  Mot. Ex. 8 at 42, 44-49.  Apple identified exemplary source code files from iOS version 5.0 involved in implementing the patented functionality.  *Id.*  Apple further identified Thomas Deniau as "an individual with primary responsibility for creating and/or maintaining source code" implementing the patented functionality.  *Id.*  Mr. Deniau confirmed in his deposition that he had primary responsibility of the relevant iOS source code, including versions 5.0 and 6.0.  Ex. S (July 12, 2013 Deniau Deposition) at 13:17-14:5, 30:16-20.  Consistent with these disclosures and his prior opinions, Dr. Mowry opined, based on his personal review of the same source code and devices made available to Samsung, that iOS products running versions 3.0 to 6.0 practice the '647 Patent.  Ex. T (Mowry Rep.) ¶¶ 20, 298-305; Ex. R (September 19, 2013 Mowry Deposition) at 331:20-332:8.

---

[17] *See* Ex. U (June 15, 2012 Infringement Contentions Ex. 140).  Apple did not limit its disclosures to particular iOS versions, and Apple identified products that only ran iOS versions other than 3.1.3.  For example Apple identified the following as practicing the '647 Patent: iPad (released with iOS version 3.2), iPad 2 (released with iOS version 4.3), New iPad (released with iOS version 5.1), iPhone 4 (released with iOS version 4.0), and iPhone 4S (released with iOS version 5.0).  *Id.*

Samsung's motion to strike Dr. Mowry's opinions regarding iOS products rests entirely on Dr. Mowry's mention of "discussions with Apple engineers" in addition to his personal review of source code and Apple devices.  Mot. at 23.  Samsung argues that in addition to Mr. Deniau, Dr. Mowry spoke with other Apple engineers—Olivier Bonnet and Alexandre Moha—who were not previously disclosed by Apple.  *Id.*  Samsung's argument is misplaced.  Initially, as discussed above, Apple *did* disclose Mr. Bonnet in its discovery responses.  However, more importantly, Samsung has absolutely *no* evidence that Dr. Mowry relied on *any* information from Mr. Bonnet or Mr. Moha regarding his opinions in this case regarding practicing iOS products.  Samsung relies entirely on one email from counsel stating that Dr. Mowry "spoke" to each of these individuals on one occasion earlier this year, in addition to Mr. Deniau.  *Id.*  Samsung has no evidence that *any* of these discussions were relevant to Dr. Mowry's opinions regarding iOS, because Samsung did not ask Dr. Mowry a *single question* at his deposition regarding the substance of his conversations with *any* Apple engineers.

Samsung's argument that it was not able to "explore the alleged bases for how Apple is practicing the '647 Patent through later versions of iOS" is plainly wrong.  *Id.*  That is exactly what Samsung did with Mr. Deniau, who is the engineer primarily responsible for the practicing iOS code.  *See, e.g.*, Ex. S (July 12, 2013 Deniau Deposition) at 21:25-25:23 (discussing changes between iOS 4, 5 and 6).  Moreover, despite the fact that Samsung had all of the relevant code available to it, Samsung did not bring a *single line* of iOS code to Dr. Mowry's deposition and did not ask a *single question* regarding the practicing source code, despite the fact that Mr. Deniau testified that the best (and most obvious) indication of Apple's practice is in the source code.  *See id.* at 23:14-16.  Simply put, Samsung had all of the relevant information regarding Apple's practicing products, including the source code and testimony of the engineer primarily responsible for the source code.  Samsung chose not to ask Dr. Mowry about *any* of this evidence on which he relied, and Samsung cannot point to a single piece of "new information" informing Dr. Mowry's opinions.

**V.** **Dr. Snoeren's Opinions Regarding Apple's Practice of the '959 Patent and Samsung's Tab 2 10.1's Infringement of the '959 Patent Should Not be Stricken as Samsung Has Suffered No Prejudice From Either Allegation**

**A.** **Apple's Siri Feature Practices the '959 Patent**

Samsung's motion to strike Dr. Snoeren's opinion that Apple practices the '959 Patent should also be denied. Apple has contended that the Siri feature in iOS 5 practices the universal search functionality, as disclosed in the '959 Patent, from the outset of this case. Indeed, when Apple filed this lawsuit on February 8, 2012 and moved for a preliminary injunction, it contended that Siri practiced universal search functionality in the '604 Patent (the '959 Patent's parent). D.I. 10, at 12-13. During discovery, Apple identified claims that it believed to represent Apple's practice of that patent. Ex. Y (Apple Response to Samsung Interrogatory No. 4 (served November 8, 2012)); Ex. U (June 15, 2012 Infringement Contentions Ex. 140). Dr. Snoeren's expert opinion merely confirms that Apple's Siri practices the '959 Patent and points to claim 34 as support for his opinion. All along, Apple contended that Siri practiced the patent. Samsung cannot seriously claim prejudice from Apple's identification of claim 34 instead of claims 1, 3-6, 12, 14-16, 19, 20, 24, 25, 29 and 30. While Samsung alleges that it would have offered an invalidity opinion as to claim 34 of the '959 Patent, its failure to do so is not prejudicial given that the validity (or invalidity) of an unasserted claim is not properly at issue in this infringement action. *See* D.I. 919 at 15-16. Additionally, while Samsung alleges that it would have evaluated source code and other documents to determine whether Apple's claim that it practices claim 34 is accurate, Samsung's expert engaged in no such analysis regarding claims 1, 3-6, 12, 14-16, 19, 20, 29 or 30—claims that Apple no longer asserts. Because Samsung cannot show any prejudice from Apple's reference to claim 34 instead of other claims for its long-held position that Siri practices the '959 Patent, Samsung's motion should be denied. *See Genentech*, 2012 WL 424985, at *5.

**B.** **Samsung's Tab 2 10.1 Product Infringes the '959 Patent**

Samsung next complains that Dr. Snoeren's expert report adds the Tab 2 10.1 as a product accused of infringing the '959 Patent when that product was not so accused as part of Apple's infringement contentions. Although Apple has accused this product of infringing other patents, Apple omitted this product from its '959 Patent contentions because the Tab 2 10.1 sample Apple

1   initially examined ███████████████████████ Apple did not

2   discover that feature ████████████████████████████████

3   █████████████   *See, e.g.*, Ex. AA (Samsung Third Supplemental Responses to Interrogatory

4   No. 41 (served July 15, 2013)) at Attachment A at 16 (showing maintenance releases for Tab 2 10.1

5   based on Android 4.1 and 4.1.2 instead of 4.0.4).

6       It is clear that Dr. Snoeren's testimony about this product will not prejudice Samsung in any

7   way.  In his report, he indicates that the Tab 2 10.1 infringes claims 24 and 25 of the '959 Patent

8   ███████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████

10  ██████████████████████████ Adding an infringement

11  assertion against a product already in the case with respect to other patents, which product infringes

12  the '959 Patent for the same reasons as other identified products, does not in any way change the

13  scope of the case or the nature of the evidence to be presented.  Moreover, Samsung's expert, Dr.

14  Rinard, does not point to any additional bases why the Tab 2 10.1 does not infringe or any additional

15  information he would have needed to evaluate whether it infringes or not.  Like Dr. Snoeren, his

16  arguments regarding non-infringement are based on the version of the Google Quick Search

17  Box/Google Search Application a product uses, rather than anything specific to any particular

18  Samsung product.  Ex. I (Rinard Reb. Rep.) ¶ 91.  Because the additional product does not require

19  additional theories or information, Samsung cannot show prejudice.  *See Seiko Epson Corp. v.*

20  *Coretronic Corp.*, C 06-06946 MHP, 2008 WL 2563383, at *4 (N.D. Cal. June 23, 2008).

## CONCLUSION

21
22      For the foregoing reasons, this Court should deny Samsung's motion to strike.

23

24  Dated: November 19, 2013                    GIBSON, DUNN & CRUTCHER LLP

25                                              By:    /s/      *H. Mark Lyon*

26                                                  ***Attorney for Apple Inc.***

27

28

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE
REGARDING APPLE PATENTS (D.I. 880)
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE        23        CASE NO. 12-CV-630-LHK (PSG)

1

**CERTIFICATE OF SERVICE**

2      The undersigned hereby certifies that the foregoing document and its supporting documents

3 were filed electronically in compliance with Civil Local Rule 5.1, and will be served upon all counsel

4 of record for the parties who have consented to electronic service in accordance with Civil Local

5 Rule 5.1 via the Court's ECF system.

6

7 Dated: November 19, 2013            */s/   H. Mark Lyon*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP