1  JOSH A. KREVITT (SBN 208552)
   jkrevitt@gibsondunn.com
2  H. MARK LYON (SBN 162061)
   mlyon@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
4  Palo Alto, California 94304-1211
   Telephone: (650) 849-5300
5  Facsimile: (650) 849-5333

6  MICHAEL A. JACOBS (SBN 111664)
   mjacobs@mofo.com
7  RICHARD S.J. HUNG (SBN 197425)
   rhung@mofo.com
8  MORRISON & FOERSTER LLP
   425 Market Street
9  San Francisco, California  94105-2482
   Telephone:  (415) 268-7000
10 Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

11 *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

12              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
13                   SAN JOSE DIVISION

14 APPLE INC., a California corporation,
15 Plaintiff,
              v.
16 SAMSUNG ELECTRONICS CO., LTD., a
   Korean corporation; SAMSUNG
17 ELECTRONICS AMERICA, INC., a New York
   corporation; and SAMSUNG
18 TELECOMMUNICATIONS AMERICA, LLC, a
   Delaware limited liability company,
19 Defendants.
20

21 SAMSUNG ELECTRONICS CO., LTD., a
   Korean corporation; SAMSUNG
22 ELECTRONICS AMERICA, INC., a New York
   corporation, and SAMSUNG
23 TELECOMMUNICATIONS AMERICA, LLC, a
   Delaware limited liability company,
24 Counterclaim-Plaintiffs,
              v.
25 APPLE INC., a California corporation,
26 Counterclaim-Defendant.

CASE NO. 5:12-cv-00630-LHK (PSG)
**APPLE INC.'S OPPOSITION TO
SAMSUNG'S MOTION TO STRIKE
EXPERT TESTIMONY BASED ON
UNDISCLOSED THEORIES AND
CLAIM CONSTRUCTIONS**

Date:    December 10, 2013
Time:    10:00 a.m.
Place:   Courtroom 5, 4th Floor
Judge:  Hon. Paul S. Grewal

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

**REDACTED VERSION OF
DOCUMENT SOUGHT TO BE
SEALED**

27

28

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

ACTIVEUS 117706374v 11

# **TABLE OF CONTENTS**

I. BACKGROUND ............................................................................................................ 2

    A.  Samsung's Interrogatory No. 46 Did Not Broadly Seek All of Apple's
        Claim Constructions. .......................................................................................... 2

    B.  Apple Attempted to Reach a Reasonable Compromise with Samsung
        Regarding Supplemental Claim Construction Disclosures............................ 2

    C.  Apple Disclosed Its Claim Construction Positions During Discovery. ................... 3

II. LEGAL STANDARD ................................................................................................ 11

III. ARGUMENT ............................................................................................................. 12

    A.  Apple's Response to Interrogatory No. 46 Does Not Provide a Basis to
        Strike the Opinions of Apple's Experts. .......................................................... 12

        1.  The Plain Meaning Constructions that Samsung Seeks to Strike Are
            Not Called for by Interrogatory No. 46. .................................................. 12

        2.  Apple Disclosed Its Claim Construction Positions to Samsung In
            Response to Samsung's Non-Infringement Interrogatory..................... 13

        3.  Dr. Storer's Opinions Regarding The '449 Patent Are Not Based On
            Undisclosed Claim Construction Positions. ........................................... 14

        4.  There Has Been No Prejudice to Samsung. .................................................. 15

        5.  Apple's Response Was Justified. .................................................................. 18

    B.  Dr. Storer's Opinions Are Not Contrary to the Court's Constructions. ................. 18

    C.  Apple Disclosed the Non-Infringement Theories in Dr. Fuja's Expert
        Report During Fact Discovery. ................................................................... 23

        1.  Apple Timely Disclosed the Theory That a "Control SDU" Must
            Contain Control Information That Comes From a Higher Layer. ......... 23

        2.  Apple Timely Disclosed the Theory That the Claimed "Control
            Information" Must Be Used For an Uplink Packet Data Service. ......... 23

        3.  Apple Timely Disclosed the Theory That the Accused Products Do Not
            Satisfy the Claimed "N Field". ............................................................. 24

IV. CONCLUSION ........................................................................................................... 25

i

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Kraft*,
  2012 WL 1413384 (N.D. Cal. Apr. 23, 2012) .......................... 19

*Baran v. Med. Device Technologies, Inc.*,
  666 F. Supp. 2d 776 (N.D. Ohio 2009) .......................... 14

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
  227 F.R.D. 313 (C.D. Cal. 2004) .......................... 11

*Dominguez v. Excel Mfg. Co. Inc.*,
  2010 WL 5300863 (N.D. Cal. Dec. 20, 2010) .......................... 17

*Halaco Eng'g Co. v. Costle*,
  843 F.2d 376 (9th Cir. 1988) .......................... 11

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
  732 F.3d 1376 (Fed. Cir. 2013) .......................... 20

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
  589 F.3d 1179 (Fed. Cir. 2009) .......................... 19

*Kenneth v. Nationwide Mut. Fire Ins. Co.*,
  No. 03-CV-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007) .......................... 11

*Lanard Toys Ltd. v. Novelty, Inc.*,
  375 F. App'x 705 (9th Cir. 2010) .......................... 17

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
  695 F.3d 1285 (Fed. Cir. 2013) .......................... 20

*Rau v. State Farm Ins. Cos.*,
  2007 WL 7652826 (D. Mont. Aug. 14, 2007) .......................... 17

*Sanders v. Astrue*,
  2013 WL 1334238 (N.D. Cal. Mar. 28, 2013) .......................... 19

*SEC v. Research Automation Corp.*,
  521 F.2d 585 (2d Cir. 1975) .......................... 11

*Signature Combs, Inc. v. United States*,
  222 F.R.D. 343 (W.D. Tenn. 2004) .......................... 11

*U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*,
  582 F.3d 1131 (10th Cir. 2009) .......................... 13, 14

ii

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

**STATUTES**

35 USC Section 112(6) ........................................................................................................... 2

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26(e) ............................................................................ 12, 13

Federal Rule of Civil Procedure Rule 37(b) .......................................................................... 11

Federal Rule of Civil Procedure Rule 37(c) ..................................................................... 11, 12

Federal Rule of Civil Procedure Rule 37(d) .......................................................................... 11

Local Rule 4-1 ......................................................................................... 2, 3, 16, 18

Local Rule 4-2 ....................................................................................................... 2,3, 18

Local Rule 7-2(b) .................................................................................................... 19

Samsung's motion to strike is based on the principle that a party may not ambush its adversary with theories that it failed to disclose during discovery. Apple agrees with that principle and seeks to enforce it in its own motions to strike. Dkt. Nos. 882-4, 887-3. Unlike Samsung, however, Apple has complied with its disclosure obligations under the Federal Rules of Civil Procedure and this Court's Local Rules.

There is no merit to Samsung's contention that Apple's expert opinions are based on undisclosed claim constructions. As an initial matter, despite Samsung's attempt to re-write the interrogatory on which it relies (Interrogatory No. 46), that interrogatory does not broadly seek Apple's claim construction positions (as Samsung now suggests). Rather, the interrogatory seeks only constructions of those terms Apple contends have a meaning ***other than plain meaning***. But as Apple's experts stated in their reports and testified at their depositions, in all but a few instances Apple's experts give claim terms their plain meaning. In any event, Apple ***did disclose***, in its responses to Samsung's non-infringement interrogatory, the constructions Samsung now seeks to strike. Thus, Samsung cannot establish a failure to disclose, let alone prejudice. Indeed, because Apple disclosed its claim construction positions during discovery, Samsung was able to (and in many cases did) respond to these constructions in its opening expert reports.

Separately, Samsung argues that Dr. Storer relies on constructions that are inconsistent with the Court's *Markman* Order – the same argument that Samsung made in its *Daubert* motion still pending before Judge Koh (*see* Dkt. No. 802-4 at 23-24). As Apple explained in its opposition to that motion, Dr. Storer's opinions neither contradict nor re-interpret the Court's constructions. To the contrary, he ***applies*** the Court's constructions in analyzing whether the accused devices have the components required by the claims.

Samsung's argument that Dr. Fuja included three new non-infringement theories in his expert report is similarly misguided. This argument relies on a mischaracterization of Apple's interrogatory responses. Indeed, Samsung ***admits*** that Apple made timely disclosures relevant to all three theories prior to the service of Dr. Fuja's expert report.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

1

# I. BACKGROUND

In setting out the discovery requests and responses on which it bases its motion, Samsung omits critical facts (and mischaracterizes others) that undermine its positions.

### A. Samsung's Interrogatory No. 46 Did Not Broadly Seek All of Apple's Claim Constructions.

Samsung's Interrogatory No. 46 states:

> For each asserted claim for each Samsung Patent, and each Apple Patents-in-Suit identify: (1) a list of all claim terms *that YOU contend has a meaning other than plain meaning* and should be construed by the Court and identify any claim term which YOU contend should be governed by 35 USC Section 112(6); (2) YOUR construction *of each term identified for claim construction*, including for each term YOU contend is governed by 35 USC 112 (6), the structure(s), act(s), or material(s) corresponding to that term's function; and (3) *for each identified term*, all references from the specification or prosecution history that supports YOUR construction … .

Sams. Br., Ex. 1, 51 (emphasis added).  While Samsung now characterizes this interrogatory as broadly seeking "Apple's claim construction positions for the asserted claims" (Sams. Br. at 2) and "specifically seeking disclosure of Apple's claim construction theories" (*id.* at 12), this interrogatory is not so expansive.  Rather, the interrogatory only seeks constructions for claims that Apple contends have a meaning other than plain meaning.

### B. Apple Attempted to Reach a Reasonable Compromise with Samsung Regarding Supplemental Claim Construction Disclosures.

Apple responded to Interrogatory No. 46 on July 15, objecting on several grounds, including that it "seeks to circumvent the claim construction procedures set forth in the Court's Local Patent Rules."  Sams. Br., Ex. 1 (Response to Rog 46), 52-53.  To the extent the interrogatory seeks the identification and construction of means-plus-function claim terms governed by 35 U.S.C. § 112(6), that request is duplicative of Patent Local Rules 4-1 and 4-2, a disclosure process that the parties had completed months earlier.[1]  Nonetheless,

---

[1]  In its Patent Local Rule 4-1 disclosure, Apple disclosed all the claim terms that it contends are governed by 35 U.S.C. § 112(6), including those means-plus-function terms at issue in this motion.  Kolovos Dec, Ex. 1 (Apple's PLR 4-1 Disclosure), 3, 6-8.  The parties then met and conferred in advance of their Local Rule 4-2 disclosures and agreed that, in light of Judge Koh's Order that the Court would construe only ten terms in the *Markman* process,

Apple responded "that to the extent further claim construction proceedings are necessary, the parties can confer and address with the court at the appropriate time," noting further that "the parties participated in a similar late claim construction process in the 1846 Action to resolve claim construction issues that arose after the initial Markman hearing and prior to trial in that matter." *Id.* at 52-53.

As Samsung acknowledges, the parties then met and conferred regarding Interrogatory No. 46 and the possibility of further claim construction disclosures. Sams. Br. at 2-3. Apple expressed a desire to make further claim construction disclosures on a reciprocal basis, but Samsung declined, and chose not to pursue further action via a motion to compel. *Id.* Instead, in the Joint Supplemental Case Management Statement submitted to the Court soon after this meet and confer process, ***both parties*** advised the Court that additional claim constructions may be required, although the parties disagreed regarding when this supplemental claim construction process should take place. Dkt. No. 708, Joint Suppl. Case Management Conf. Stmt., at 2-3.[2]

**C. Apple Disclosed Its Claim Construction Positions During Discovery.**

Regardless of whether the claim constructions Samsung now seeks to strike were called for by Interrogatory No. 46, Apple nonetheless disclosed those constructions during discovery. In particular, in its response to Samsung's Interrogatory No. 12 seeking Apple's non-infringement contentions, Apple disclosed its non-infringement arguments and at least implicitly (as would be expected where Apple is relying on plain meaning), and in many cases explicitly (such as for means-plus-function terms), disclosed the claim constructions underlying those positions.

---

the parties would exchange preliminary constructions under Patent Local Rule 4-2 for only certain selected claim terms, rather than all terms identified in their Rule 4-1 disclosures. Kolovos Dec., Ex. 2 (10/2012 Email Correspondence). Apple met this agreed-upon obligation with respect to the disclosure of the parties' proposed constructions.

[2] While Samsung suggests that Apple unilaterally asked the Court at the July 31, 2013 Case Management Conference to undertake additional claim construction (Sams. Br. at 3), the joint case management conference statement makes clear that both parties sought a supplemental claim construction process.

'449 Patent:  According to Samsung, Dr. Storer offers opinions based on constructions for certain terms in the '449 patent that Apple allegedly failed to disclose during discovery.  Sams. Br. at 5-6.  But Apple is relying on plain meaning for all terms of the '449 patent, and Apple disclosed in detail its application and understanding of the claim language in response to Interrogatory No. 12, including the following:

| "Offending Opinion" Identified By Samsung[3] | Disclosure of "Claim Construction" By Apple |
|---|---|
| "A 'digital camera' cannot include other functionality, such as Phone, Maps, and Mail" (Sams. Br. at 5) | *See, e.g.*, Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response) at 59 ("The cameras of the accused products are merely component parts of a larger multimedia system that includes at least a phone, computer, digital music player, video player, global positioning device, game player, email device, online store, and numerous other component parts."); 164 ("The claimed 'digital camera' cannot be a system or device in which a digital camera is merely a component part.").[4] |
| "The 'imaging device' and 'A/D converter' cannot be part of the same integrated circuit, or part of an integrated circuit that performs additional functions" (Sams. Br. at 5) | *See, e.g.*, Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 164 ("the claims require an A/D converter to receive an analog signal from the imaging device, i.e., an A/D converter distinct from the imaging device"). |
| "The 'recording circuit' must be an interface circuit" (Sams. Br. at 5) | Apple distinguished NAND flash memory, which is a repository in which images and videos are stored, from an interface circuit that records data **to memory**.[5]  *See, e.g.*, Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 61 ("Samsung asserts … the accused devices have 'a recording circuit that records both compressed moving image data |

[3] Apple uses Samsung's characterization of Apple's expert's opinions in the following charts for clarity, but does not necessarily agree with these characterizations.

[4] By stipulation entered by the Court on July 8, 2013 (Dkt. No. 664), the parties agreed that all interrogatory responses could be supplemented on or before July 15, 2013.

[5] Samsung identified only a "recording circuit that records both compressed moving image data and compressed still image data to a NAND flash module" as the claimed "recording circuit" in its November 2012 infringement contentions. *See* Kolovos Dec., Ex. 4 at 5.  The Court denied Samsung leave to amend its contentions to identify both "a NAND memory module" and "an interface circuit thereto" as the claimed "recording circuit."  Dkt. 476-8 at 221 (proposed amended contentions); Dkt. No. 636 at 23-24 (Order denying leave to amend).  Despite the Court's Order, Mr. Parulski nonetheless opined that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮" Parulski Rep., ¶196 (Kolovos Dec. Ex. 5).

| "Offending Opinion" Identified By Samsung[3] | Disclosure of "Claim Construction" By Apple |
|---|---|
| | and compressed still image data to a NAND flash module for storage.' But Samsung has failed to identify any component(s) that supposedly meet the limitation 'a recording circuit which records compressed data, said compressed data including a moving image signal, and a still image signal.'); 62 ("In any event, ███████████████ ████████████████████████████ ██████████). |
| 1) "Each claimed 'list' must include text and conform to a top-down arrangement" (Sams. Br. at 5)<br>2) "The claimed 'search mode' cannot consist of scrolling through image thumbnails" (Sams. Br. at 5) | *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 62 ("The Camera Roll View of the accused products is neither a 'list,' nor does it incorporate a 'search mode.' Camera Roll does not allow users to search for particular images or videos and uses a thumbnail grid structure for displaying images and videos."). |
| "A 'classification' cannot consist of photos and videos taken with a device …, or that a photo or video must remain on the device even when deleted from a 'classification' …, or that the user must be able to rename a 'classification' …, rearrange the photos within the 'classification' …, or create the 'classification'" (Sams. Br. at 5-6) | In its infringement contentions, Samsung equated classifications with Albums. *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 62 ("█████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████"').<br><br>In response, Apple distinguished the Camera Roll, which—unlike an album—(1) includes all photos and videos taken with the device, (2) deletes photos or videos from the device when they are deleted from the Camera Roll, (3) cannot be renamed, and (4) does not allow photos to be rearranged from an Album (i.e. classification). *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 62 ("████████████████████████ ████████████████████████████ ████████████████████████████ ██████). |

***'757 Patent:*** Samsung asserts that Dr. Richard Taylor offers opinions based on constructions for certain terms in the '757 patent that Apple allegedly failed to disclose. Sams. Br. at 6. But Apple is relying on plain meaning for all terms of the '757 patent except

"zone specific storage and interface device," which the Court construed.  In addition, Apple

disclosed in detail its application and understanding of the claim language in its response to

Interrogatory No. 12, including the following:

| "Offending Opinion" Identified by Samsung | Disclosure of "Claim Construction" by Apple |
|---|---|
| 1) "the limitation 'updated in relation to' requires all of a user's audio, video and photographic information be synchronized or updated on the central and zone devices" <br> 2) "the limitation 'at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user' requires all of a user's audio, video and photographic information be synchronized or updated on the central and zone devices" (Sams. Br. at 6) | *See, e.g.*, Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 70:18-28 ("iTunes in the Cloud does not allow for updates from the zone specific storage and interface device to the central storage and interface device, and thus does not provide access to all the audio, video, or photographic data related to the user in any zone.  Likewise, iTunes Match does not provide for complete synchronization of a user's audio, video, or photographic information as a result of the update."), 71:11-15 ("The Photo Stream service only stores information for a limited time, and, thus, does not make all a user's content available in any zone."), 72:2-12 ("Moreover, as explained above, the claim requires that all the audio, video, or photographic data stored within the central storage and interface device or any zone specific storage and interface device must be made available on all the zone specific storage and interface devices as a result of the 'update[]'; Home Sharing does not make all a user's content and content management information be stored in every zone."); *see also id.* at 179:11-27; 180:5-9; 181:4-9. |
| "the limitation 'capable of storing or interfacing with information stored in the central storage and interface device' requires that capability to store and interface with the central storage and interface device" (Sams. Br. at 6) | *See, e.g.*, Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 69:7-8 ("Samsung contends that 'Apple's iCloud service allows a user to store, interface with, and access all of the user's multimedia information stored on the iCloud from a Zone Device.'"), 70:18-23 ("Moreover, the claim requires that 'audio, video, or photographic information, relating to at least one user' stored within both the zone specific storage and interface device and the central storage and interface device 'are updated in relation to' both the zone specific storage and interface devices and the central storage and interface devices. The claim further requires that the at least one user can be situated 'in any one of the zones' |

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

6

| "Offending Opinion" Identified by Samsung | Disclosure of "Claim Construction" by Apple |
|---|---|
| | and access '*the* audio, video, or photographic information related to the user.'"), 172:6-25 ("In addition, to the extent that the term 'storage and interface device' requires that the user 'ordinarily interface' with the media located on the device (*see* Samsung Supplemental Responses to Apple's Fifth Set of Interrogatories, p. 160 (█████████████████████████████████████████████ ██████████████████████████████████████████)), the user cannot 'ordinarily interface' directly with the media stored on any of servers used in the accused features."); 174:21-23 ("Nor has Samsung articulated any way in which the alleged coupling with a dock alters in any way the storage or interface functions of the devices."); *see also id.* at 177:5-7. |
| "the limitation 'relating to at least one user' does not require that the information be related to any particular user" (Sams. Br. at 6) | Samsung mischaracterizes Dr. Taylor's interpretation of the plain meaning of "relating to at least one user." Dr. Taylor actually states that "the plain meaning of 'at least one user' is not '*one particular* user.'" (Samsung Mot., Ex. 9, Taylor Opening Report, ¶ 97 (emphasis added).) Thus, the term "at least one" does not mean "one particular." This disagreement was reflected in Apple's interrogatory responses. *See, e.g.*, Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 173:4-22 ("Further, Samsung fails to identify any 'audio, video, or photographic data, including content information and content management information, relating to at least one user, are stored in digital form' on a central device. Samsung appears to construe this term to require that the audio, video, or photographic data stored on the central device relate to a 'particular user.' However, under that interpretation, ███████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████ The content information on Home Sharing likewise is not related to a user. Nor do iTunes automatic downloading of new purchases, iTunes in the Cloud (redownloading), or Photo Stream services store content or content management information related to a user under that interpretation, to the extent that they do not store playlists or photo albums related to a user. Moreover, Apple IDs are not necessarily related to a 'particular user,' but could be used by multiple users (e.g., a family). Similarly, iTunes Sync does not store 'audio, video, or photographic data . . . relating to a least one user' under Samsung's interpretation. (*See* Samsung Supplemental Responses to Apple's Fifth Set of Interrogatories, p. 170 (███████████████████████████████████████ ██████████████████████████████████████████████ |

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

7

| "Offending Opinion" Identified by Samsung | Disclosure of "Claim Construction" by Apple |
|---|---|
| | ▮ iTunes Sync transfers information based on device settings, not relating to a particular user. (*See, e.g.*, Wysocki Dep. 49:5-10.).") |

*'596 Patent:*  Samsung claims that Dr. Thomas Fuja offers opinions based on constructions for certain terms in the '596 patent that Apple allegedly failed to disclose. Sams. Br. at 4.  But Apple is relying on plain meaning for all terms of the '596 patent. Apple also disclosed in detail its application and understanding of the claim language in its response to Interrogatory No. 12, including the following:

| "Offending Opinion" Identified By Samsung | Disclosure of Claim Construction By Apple |
|---|---|
| "the asserted claims require the limitations to be constructed in a specific order: '[t]he process entails first forming constituent parts of the second PDU, including "forming a first protocol data unit (PDU) including uplink packet data" . . . and then forming the second PDU by concatenating a header and a payload'"  (Sams. Br. at 4) | *See, e.g.*, 7/15/13 Rog 12 Response (Sams. Ex. 11), 187 ("the asserted claims of the '596 patent require the use of specific apparatuses and methods, and do not broadly cover a PDU having a particular format"), 189-190 ("The '596 patent claims a method and apparatus in which a first PDU is formed prior to a concatenation that forms the second PDU."), 200 ("The '596 patent claims a method and apparatus in which the second PDU is formed by concatenating a header and a payload. ... This requires that the header and payload be formed by the time of the concatenation operation."), 200 ▮▮▮▮▮ |
| "a 'control SDU' must be generated at a higher layer than the layer that creates MAC-e PDUs"  (Sams. Br. at 4) | *See, e.g.*, 7/15/13 Rog 12 Response (Sams. Ex. 11), 192 ▮▮▮▮▮ |
| "'control information for an uplink packet data service' must be used by a scheduling component within the Node B"  (Sams. Br. at 4) | *See, e.g.*, 7/15/13 Rog 12 Response (Sams. Ex. 11), 192-193 ("Samsung has failed to show that the Scheduling Information of the standard cited by Samsung constitutes 'control information for an uplink packet data service'; ▮▮▮▮▮ |

| "Offending Opinion" Identified By Samsung | Disclosure of Claim Construction By Apple |
|---|---|
| | ████████████████████████████ |
| "an 'N field representing the number of uplink data' is an N field representing the number of bits or bytes contained in the MAC-es PDU" (Sams. Br. at 4) | Apple made clear its contention that "N field representing the number of uplink data" does not mean "number of consecutive MAC-d PDUs" as set forth in the 3GPP TS 25.321, but instead refers to the number of bits or bytes of data. *See, e.g.*, 7/15/13 Rog 12 Response (Sams. Ex. 11), 193-194 ("The standard ... does not show an N field 'representing the number of uplink packet data' included in the MAC-es PDU; rather, the standard provides that N indicates '[t]he number of consecutive MAC-d PDUs corresponding to the same DDI value.'"), 195 (" ████████ |
| "'forming a second data packet unit (PDU) by concatenating a header and a payload' requires the MAC-e header and MAC-e payload to be formed as standalone units prior to the concatenation operation" (Sams. Br. at 4) | *See, e.g.*, 7/15/13 Rog 12 Response (Sams. Ex. 11), 189-190 ("Third, this limitation is not satisfied by the Accused Products. The '596 patent claims a method and apparatus in which a first PDU is formed prior to a concatenation that forms the second PDU. ... ████████████ ), 200 ████████ |

**'087 Patent:** Samsung also complains that Dr. Fuja offers opinions based on a construction for a term in the '087 patent that Apple allegedly failed to disclose. Sams. Br. at 4. But Apple is relying on plain meaning for all terms of the '087 patent except "non-scheduled transmission" (construed by the Court) and "N" (which has a meaning stipulated to by the parties). Further, Apple disclosed in detail its application and understanding of the claim language in its response to Interrogatory No. 12, including as follows:

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

9

| "Offending Opinion" Identified By Samsung | Disclosure of Claim Construction By Apple |
|---|---|
| "'receiver receiving' requires actual receiving, rather than just capability of receiving" (Sams. Br. at 4) | *See, e.g.,* 7/15/13 Rog 12 Response (Sams. Ex. 11), 202-203 ("Samsung has failed to present any evidence of any Accused Product 'receiving non-scheduled transmission information indicating k transmission time intervals (TTIs) for transmitting non-scheduled data via the EDCH.' ... ███████ Accordingly, the Accused Products lack the "receiver receiving" limitation claimed in all the asserted claims of the '087 patent (method and apparatus).").|

**'239 Patent:** Similarly, Samsung argues that "Apple and Dr. Storer disclosed [means-plus-function] constructions for the first time in Dr. Storer's opening expert report." Sams. Br. at 5. But as shown below, Apple disclosed all these constructions in response to Interrogatory No. 12:

| Limitation | Disclosure of Claim Construction By Apple |
|---|---|
| "means for storing" | *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 102 ("The only corresponding structure disclosed in the '239 patent for performing the function required by the 'means for storing' limitation is a hard disk drive and the software identified at 3:1-5, 4:52-57, and 6:14-16."). |
| "means for receiving at least one composite signal transmitted by the remote unit" | *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 111 ("The only corresponding structure disclosed in the '239 patent for performing this limitation is one or more modems, corresponding to the number of modems used in the remote unit, connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and File Reception Software Sequence E. (*See* '239 patent at 10:33-61, 11:18-12:8.)"). |
| "means for exchanging data with said host unit" | *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 113 ("[T]he only structure disclosed in the specification for 'exchanging data with said host unit' is a 16-bit Ethernet card, Novell Netware Lite software, and Host Boot Software Sequence D."). |

| Limitation | Disclosure of Claim Construction By Apple |
|---|---|
| "means for storing the compost signal received by the host unit" | *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 114 ("The only corresponding structure disclosed in the '239 specification for performing the function required by the 'means for storing the composite signal received by the host unit' limitation is a hard disk drive and the software identified at 11:5-8, 12:19-22 and 12:48-51."). |
| "means for decompressing said composite signal" | *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 115 ("The only corresponding structure disclosed in the '239 patent for performing the claimed function is a 'video decompression card' ('239 patent at 12:3) that is 'similar to the video card installed in the remote unit 2 with the exception that the capture module is not necessary' ('239 patent at 12:37-42) and an 'audio decompression card' ('239 patent at 12:3-4)."). |
| "means for transmission of said captured video over a cellular frequency" | *See, e.g.,* Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 118 ("The only corresponding structure disclosed in the '239 patent for performing the claimed function is 'one or more modems connected to one or more cellular telephones, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file."). |

## II.  LEGAL STANDARD

Samsung moves to strike under Rules 37(c)(1), 37(b)(2)(A), and 37(d)(1) of the

Federal Rules of Civil Procedure.  For purposes of this motion, Rule 37(b)(2)(A) – which

provides sanctions for violation of a court order compelling discovery[6] – and Rule 37(d)(1)

– which does not apply to allegedly insufficient discovery responses (versus a failure to

respond altogether)[7] – both are inapplicable.  That leaves Rule 37(c)(1) as the only ground

---

[6] "Sanctions are available pursuant to Rule 37(b) only if a court has first entered a specific order compelling the discovery in question, and a party has disobeyed that order." *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 324 n.34 (C.D. Cal. 2004) There is no such order here, nor does Samsung suggest otherwise.  To the extent Samsung may point to the Case Management Order, that order merely established the deadlines by which discovery must be completed—it did not require Apple to provide any specific discovery.  As courts have frequently noted, "scheduling orders . . . are not the type of 'discovery orders' that provide grounds within the scope of Rule 37(b) sanctions."  *Kenneth v. Nationwide Mut. Fire Ins. Co.*, No. 03-CV-521F, 2007 WL 3533887, at *12 (W.D.N.Y. Nov. 13, 2007); *see also Signature Combs, Inc. v. United States*, 222 F.R.D. 343, 345 n.1 (W.D. Tenn. 2004) (same).

[7] Relief under Rule 37(d) is available only if a party fails to answer an interrogatory or fails to appear for a scheduled deposition.  See, *e.g., Halaco Eng'g Co. v. Costle*, 843 F.2d 376,

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

11

for Samsung's motion.  This provision prohibits a party from using at trial evidence that it refused to disclose in violation of Rule 26(e) unless the failure to disclose was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).  As set forth below, Apple did not fail to disclose its positions during discovery, but even if it did, the failure was justified and harmless.

## III. ARGUMENT

### A. Apple's Response to Interrogatory No. 46 Does Not Provide a Basis to Strike the Opinions of Apple's Experts.

There is no merit to Samsung's claim that portions of Apple's expert opinions should be stricken in light of Apple's response to Interrogatory No. 46.  As discussed above, Interrogatory No. 46 did not request all of Apple's claim construction positions, but instead sought constructions only for terms other than those to be given their plain meaning.  In any event, Apple disclosed its claim construction positions in response to Samsung's non-infringement interrogatory.  The only possible exceptions—Dr. Storer's opinions regarding imaging devices and compressors/decompressors—are analyses offered to rebut arguments Samsung improperly made for the first time in its opening expert reports.  Apple's has acted in good faith and its conduct has not prejudiced Samsung in any way.

#### 1. The Plain Meaning Constructions that Samsung Seeks to Strike Are Not Called for by Interrogatory No. 46.

Samsung argues that Apple "should not be permitted to present its claim constructions for the first time in its expert reports, when it failed to disclose these positions in response to Interrogatory No. 46." Sams. Br. at 12.  But Interrogatory No. 46 does not seek disclosure of all of Apple's claim construction positions.  Instead, Interrogatory No. 46 requests constructions and support only for claim terms that Apple contends *have a meaning other than plain meaning*.  *See* Sams. Br. Ex. 1, 51.

---

380 n.1 (9th Cir. 1988) (Rule 37(d) inapplicable where the "EPA did not fail to attend its own deposition, or serve answers to interrogatories, or respond to a request for an inspection" but instead failed to produce a favorable report and created and produced a false report during discovery); *see also SEC v. Research Automation Corp.*, 521 F.2d 585, 588-89 (2d Cir. 1975).

1

2

*With the exception of the means-plus-function terms (discussed further below), Apple's experts were applying plain meaning of the claim terms in their expert reports.*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

*See* Storer Tr., 277:5-16; 22:1-5 (Ex. 6) ("unlike the patent we talked about yesterday which had no court claim constructions, everything was plain meaning"); Fuja Reb. Rep., ¶ 113 (Ex. 7) ("the language in the asserted claims [of the '596 patent] should be given their plain and ordinary meaning"), Fuja Reb. Rep., ¶ 71 (Ex. 7) ("other than the term the Court has construed and the term the parties agreed to the construction of, the language in the asserted claims [of the '087 patent] should be given their plain and ordinary meaning"); Taylor Reb. Rep., ¶¶ 31-32 (Ex. 8) ("I have concluded that all elements of the claims of the '757 patent, other than 'zone specific storage and interface device,' should receive their plain meaning to one of ordinary skill in the art."); *see also* Fuja Reb. Rep., ¶¶ 424-425 (Sams. Ex. 6); Taylor Rep., ¶¶ 85-88, 90, 91, 95, 97, 108, 133, 152 (Ex. 9); Storer Reb. Rep, ¶¶ 308, 311, 324, 328 (Sams. Ex. 8).  Given that Interrogatory No. 46 does not call for Apple's understanding of the "plain meaning" of the claims, and instead specifically excludes those terms from its scope, Interrogatory No. 46 does not provided a basis for Samsung to strike the portions of Apple's expert reports that rely on the plain meaning of claim terms.

17

18

### 2.   Apple Disclosed Its Claim Construction Positions to Samsung In Response to Samsung's Non-Infringement Interrogatory.

19

20

21

22

23

24

25

26

27

28

Even if Interrogatory No. 46 broadly asked for Apple's constructions of all asserted claim terms, plain meaning or otherwise (which it does not), Apple already made those disclosures to Samsung elsewhere in its discovery responses.  Parties are only required to amend their interrogatory responses when "the additional or corrective information *has not otherwise been made known* to the other parties during the discovery process or in writing." Fed. R. Civ. Pro. 26(e)(1)(A).  For example, in *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1145 (10th Cir. 2009), Aviation served an interrogatory seeking Pilatus's contentions as to whether the lawsuit was governed by the law of a jurisdiction other than Colorado.  Pilatus answered that it did not so contend.  *Id.*  Aviation later argued that, given this response, Pilatus waived its right to rely on Idaho law.  *Id.*  But

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

13

the Court held that because the pretrial order provided notice of Pilatus's intent to rely upon Idaho law, Pilatus was not foreclosed from filing its motion to apply an Idaho statute. *Id.*

As detailed above, Apple notified Samsung of its claim constructions positions in its response to Samsung's Interrogatory No. 12. Thus, even if the claim constructions Samsung now seeks to strike are deemed to be called for by Interrogatory No. 46, that those constructions were disclosed elsewhere in discovery defeats Samsung's motion to strike.

### 3. Dr. Storer's Opinions Regarding The '449 Patent Are Not Based On Undisclosed Claim Construction Positions.

Samsung argues that Dr. Storer revealed for the first time in his rebuttal report a "new" claim construction opinion that ████████████████████████████████████ ████████████████████████████████████████████████████████████████ " Sams. Br. at 5. That is not so. In the challenged passage, Dr. Storer merely described how CCD image sensors (i.e., imaging devices) work as part of his non-infringement analysis. Storer Reb. Rep., ¶ 159 (Sams. Br., Ex. 8). Dr. Storer offered these opinions in response to Samsung's doctrine of equivalents argument – ████████████████████████████████ ████████████████████████████████████. Dkt. No. 636 at 5-8; Parulski Rep., ¶ 169 (Ex. 5). Samsung essentially asks this Court to bar Dr. Storer from rebutting Mr. Parulski's already-barred opinion. But it is entirely proper for Dr. Storer to explain why Mr. Parulski cannot satisfy the function-way-result test by explaining the differences in the operation of the claimed imaging device and the accused CMOS image sensor, and Samsung cites no authority to the contrary. *See, e.g.*, *Baran v. Med. Device Technologies, Inc.*, 666 F. Supp. 2d 776, 793-803, 820 (N.D. Ohio 2009) (relying on expert testimony and granting summary judgment of non-infringement after comparing the components of the accused device to the components of the claims as construed by the court).

Similarly, Samsung contends that Dr. Storer presented a "new" claim construction opinion that "[t]he 'compressor' or 'decompressor' must use common circuitry to perform compression or decompression of still and moving images, or cannot be part of an integrated circuit that performs additional functions." Sams. Br. at 5. Consistent with Dr. Storer's

opinion, Samsung's contentions for these limitations had identified components that

Samsung (incorrectly) alleged used common circuitry to perform compression and

decompression: "a video encoder . . . utiliz[ing] at least the H.264 and MPEG-4 standards

for compressing moving images and the JPEG standard for compressing still images" as the

"compressor," and a "video decoder" as the claimed "decompressor." (Dkt. No. 660 [Third

Amended Contentions], Ex. G at 4, 5.)  It was Samsung that then introduced a new claim

construction when Mr. Parulski offered new arguments (not made by Samsung in its

infringement contentions) that ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ (Parulski Rep.,

¶¶ 177-79, 185-87, 189, 191, 193, 208, 209, 212, 215, 217 (Kolovos Dec. Ex. 5).  Dr.

Storer's rebuttal report merely addressed these previously undisclosed arguments.  Storer

Reb. Rep. ¶¶ 163-166, 174, 179 (Sams. Br., Ex.  8).

### 4.  There Has Been No Prejudice to Samsung.

Samsung complains that Apple's failure to provide claim constructions in response to

Interrogatory No. 46 has prejudiced its ability to prepare its expert reports.[8] Sams. Br. at 14,

19.  However, as noted above, Apple set forth its claim construction positions in response to

Interrogatory No. 12.  And because Apple did so, Samsung's experts were able to (an in

many cases did) address Apple's claim constructions in their opening reports.

For example, Samsung asserts that "Apple and Dr. Storer disclosed [proposed

means-plus-function] constructions for the first time in Dr. Storer's opening expert report"

(Sams. Br. at 5), and that, as a consequence, "Samsung was unable to account for Apple's

---

[8] Samsung also complains that "it is simply too late for Samsung to take full discovery on
undisclosed claim construction positions and noninfringement positions, conduct analysis
based on Apple's positions, incorporate responses into its expert's opinions, dispositive
motions and trial strategy, and prepare expert reports."  Sams. Br. at 20.  Samsung again
ignores that Apple disclosed its claim construction positions in response to Samsung's non-
infringement interrogatory.  Thus, Samsung was able to take discovery on these positions
and respond to them in its expert reports and dispositive motions.

claim construction positions in preparing its opening expert reports." *Id.* at 14.  To the contrary, not only did Apple explain its constructions in its response to Interrogatory No. 12, but Samsung's expert, Dr. Schonfeld, responded to ***each*** of those constructions in his opening report – and even provided a table comparing his constructions to Apple's.  *See, e.g.*, Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 102 (providing structure for "means for storing" claim term), 111 ("means for receiving"), 113 ("means for exchanging"), 114 ("means for storing" for host unit), 115 ("means for decompressing"), 118 ("means for transmission over a cellular frequency"); Schonfeld Rep., ¶¶ 43, 47- 81 (responding to Apple's claim construction, and disclosing Samsung's constructions for the first time), 1630-1640 (rebutting Apple's 7/15/13 Rog 12 Response), 1689-1740 (same) (Kolovos Dec., Ex. 10).  Dr. Schonfeld also noted that "Apple's proposed constructions are taken ***from Apple's response to Samsung's Interrogatory 12***."  *Id.*, ¶ 43 (emphasis added).

The same is true of Dr. Storer's challenged description of the components required in the structure of the two construed terms, which Samsung mischaracterizes as an attempt by Dr. Storer to re-construe terms (Sams. Br. at 1, 9-12):  Apple discussed the characteristics and operation of these components in its non-infringement contentions, and Dr. Schonfeld included a section in his report rebutting those contentions.[9]  *See, e.g.*, Kolovos Dec., Ex. 3 (7/15/13 Rog 12 Response), 97 (describing a composite signal), 99 (describing audio/video cards as add-on components for PCs that connect to external devices), 106 (describing ports), 108 (describing files), 108-09 (describing modems);  Schonfeld Rep., ¶¶ 1327, 1597-1599, 1601, 1604, 1616, 1617, 1629, 1646, 1650, 1654 (Kolovos Dec., Ex. 10); *see generally* Schonfeld Rep. ¶¶ 47-81, 1597-1740 (Kolovos Dec., Ex. 10).  In short, Samsung ***did*** account for Apple's constructions of the means-plus-function limitations of the '239 patent and therefore cannot be prejudiced.[10]

---

[9] Moreover, Samsung was not entitled to any construction in response to Interrogatory No. 46 for "modem," "audio capture card," "video card having a video capture module," "port," and "file," as none of these is a claim term.  Interrogatory No. 46 requests constructions for "all claim terms" that have a meaning "other than plain meaning."  Sams. Br. at 2.

[10] It was Samsung (not Apple) that failed to timely disclose its constructions for these terms.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

16

Similarly, with respect to the '087 and '596 patents, Dr. Min (Samsung's expert) addressed the claim constructions underlying Apple's non-infringement positions in his report, showing that Samsung was on notice of these constructions as well.  *See, e.g.*, Min Rep. (Kolovos Dec., Ex. 11), ¶¶ 686-687 ("█████████████████████████

████████████████████████████████████████

███████████████████████████████████ 1137 █

████████████████████████████████████████

███████████████████████████████), 1138 █

████████████████████████████████████████

████████████████████████████████████), 1143

████████████████████████████████████████

████████████████████████████████████████

█████ 1144 ████████████████████████████

████████████████████████████████████████

█████████████████████████████

The Court should deny a motion to strike where, as here, the moving party has suffered no prejudice.  *See, e.g.*, *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (district court did not abuse its discretion in allowing plaintiff's expert to testify even though plaintiff did not serve a timely expert report because defendants were not prejudiced);  *Dominguez v. Excel Mfg. Co. Inc.*, 2010 WL 5300863, *2 (N.D. Cal. Dec. 20, 2010) (denying motion to strike industry standards expert because he was disclosed in initial disclosures and questioned during his deposition regarding industry standards); *Rau v. State Farm Ins. Cos.*, 2007 WL 7652826, at *10 (D. Mont. Aug. 14, 2007) (denying motion to

---

As Samsung acknowledges, "the means plus function claims necessarily required construction."  Sams. Br. at 5.  Yet despite having amended its infringement contentions *three times* after identifying the means-plus-function terms that needed construction (Samsung 9/21/12 L.R. 4-1(a) Disclosures (Ex. 12)) – Samsung disclosed its constructions *for the first time* in Dr. Schonfeld's Opening Report.  *See* Kolovos Dec., Ex. 13 (Ex H to Third Amend. Infr. Contentions); Schonfeld Rep. ¶ 43 (Kolovos Dec., Ex. 10).

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

17

strike expert report because late supplementation of expert witness disclosure was harmless). Because Apple disclosed its claim construction positions during fact discovery, Samsung has suffered no prejudice, and the Court should deny Samsung's motion.

### 5. Apple's Response Was Justified.

Samsung asserts that Apple's objections to Interrogatory No. 46 "can only be construed as purposeful concealment of critical evidence in bad faith." Sams. Br. at 20. But as described above, Apple fully disclosed its positions in its response to Samsung's Interrogatory No. 12. Apple's disclosure (during discovery) of the very constructions that Samsung now seeks to strike is dispositive, and requires denial of Samsung's motion.

In any event, Apple's objection that the interrogatory "seeks to circumvent the claim construction procedures set forth in the Court's Local Patent Rules" was appropriate, and Apple nonetheless sought in good faith to resolve Samsung's complaints by proposing reciprocity during the parties' meet and confers. Sams. Ex. 1 at 51-53. Although Samsung makes much of the fact that it served a claim construction interrogatory (while Apple did not), this ignores that service of an interrogatory to obtain claim constructions is unnecessary. Under Patent Local Rules 4-1 and 4-2, *both parties* had an obligation to provide claim constructions for all disputed claim terms; however, the parties agreed (as described in footnote one *supra*) that it would be a sufficient disclosure to provide proposed constructions for only a subset of those terms. Samsung's interrogatory cannot, on the one hand, lift this agreement only as to Apple while, on the other hand, relieve Samsung of its obligation under the Patent Local Rules. Given this context, Apple's objection, and subsequent meet and confer proposal that the parties engage in a reciprocal disclosure of supplemental claim constructions, was entirely justified.

### B. Dr. Storer's Opinions Are Not Contrary to the Court's Constructions.

Samsung's argument that Dr. Storer "unilaterally modified" the Court's constructions of two of the means-plus-function terms repeats the entirety of its *Daubert* motion with respect to the '239 patent. *Compare* Sams. Br. at 15-18 *with* Dkt. No. 802 at 23-24

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

18

(Samsung's *Daubert* Motion) and Dkt. No. 802, Ex. TT at 6-10.  This attempt to have a second chance at its *Daubert* arguments violates the Court's scheduling order, which limited each party to a single 25-page *Daubert* motion, to be filed no later than October 10, 2013.  *See* Dkt. No.713 at 2 (scheduling order).  The Court should disregard as procedurally improper Samsung's motion to the extent it concerns the '239 patent.  *See Sanders v. Astrue*, 2013 WL 1334238, *5 (N.D. Cal. Mar. 28, 2013) (striking all argument beyond the 25 page limit established by Civil Local Rule 7-2(b)); *Adams v. Kraft*, 2012 WL 1413384 (N.D. Cal. Apr. 23, 2012) (striking late-filed motions that would prejudice opposing party).[11]

Nor is there any merit to Samsung's arguments.  As discussed below (and in Apple's opposition to Samsung's *Daubert* motion), it is proper for Dr. Storer to discuss the required components, and Samsung cites no authority to the contrary.  ***First,*** contrary to Samsung's assertions (*see, e.g.*, Sams. Br. at 15-18), Dr. Storer did not "dramatically narrow," "significantly change," or "ignore" the constructions of "modem," "audio capture card," "video card having a video capture module," "port," "composite signal," and "file" because no such constructions exist – and Samsung does not cite ***any*** such constructions.  With the exception of "composite signal," these "terms" are not even claim terms.  Rather, they are components described in the specification and required by the Court's constructions of two mean-plus-function limitations.  For this reason, none of the cases cited by Samsung is applicable.

***Second,*** Dr. Storer's role as an expert is to analyze whether the accused devices have these required components—which are well-known and described in the specification—or their equivalents by explaining the characteristics and operation of the components.  *See Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (affirming summary judgment of non-infringement using a "comparison of [the means-plus-function] claim construction to the allegedly infringing devices" that included a discussion

---

[11] In its *Daubert* motion, Samsung relegated most of its argument to an exhibit, which itself was a violation of the local rules requiring argument to be in the brief and limiting the length of such briefs.  Dkt. No. 857-04, at 21.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

19

of the accused components and the patent specification); *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1381 (Fed. Cir. 2013) ("With means-plus-function claiming, the narrower the disclosed structure in the specification, the narrower the claim coverage."); *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1296 (Fed. Cir. 2013) ("exclusion of a technical expert may deprive the decision-maker of [relevant] knowledge and perspective").  At bottom, Samsung's motion attempts to prevent the jury from understanding the technology described in the patent, in an effort to broaden the patent far beyond what is disclosed.  Yet Samsung cites **no** authority that would preclude Dr. Storer from providing this type of opinion.

   ***Third,*** Samsung fails to set forth any reasons why Dr. Storer's opinions might be incorrect or unreliable.  The vast majority of Dr. Storer's descriptions are taken directly from the specification, and all of his opinions are extensively supported by the documents produced by the inventors and third parties, his own experience, and Dr. Schonfeld's (Samsung's expert) own descriptions.[12]  For example:

   <u>Port</u>:  The Court's construction of "means for transmitting said composite signal" requires, *inter alia*, "one or modems" and "initializing one or more ports on the remote unit."  Dkt. No. 447 at 64.  This construction requires a port **on the remote unit**, and by implication, that the modem connects to it.  *See* Storer Reb. Rep., ¶ 603 (Kolovos Dec., Ex. 14); '239 patent at 8:61-9:18 (program "automatically sends the cellular strings from each communications port to initialize the modems").  Moreover, the specification makes clear that the communications ports "on the remote unit" are physical ports, not the (very different) "logical ports" that Dr. Schonfeld uses in his infringement analysis.  *See id.* at 4:17-28 and 10:27-29 (remote and host units are "personal computer[s]" with "high speed serial ports"), 8:40-41 ("[e]ach modem interfaces through a different communications port"),

---

[12] As noted in the text above, Dr. Schonfeld included a Background Technology section in which he describes the components in a manner consistent with Dr. Storer's opinions.  His infringement analyses, however, abandon those descriptions and apply the structure to completely different accused components.

11:38-48; Schonfeld Rep., ¶¶ 181 (Kolovos Dec., Ex. 10) (describing logical ports as "denot[ing] an application or process software in an operating system" and as most commonly used with an IP address that identifies a device and the protocol), 1547.  Even Dr. Schonfeld describes "[p]orts on a computer device" as "the *physical interfaces* allowing for data exchange between the computer device and external devices" in his "Background of the Art." *Id.*, ¶ 245 (emphasis added).

*File:*  Samsung complains that Dr. Storer explained that a data file is able to be "stored, transmitted, played, or replayed."  Sams. Br. at 17.  That understanding is based on the plain meaning of "data file" and confirmed by the applicants' statements during prosecution in which they described the invention in exactly that manner.  Kolovos Dec., Ex. 15 (Excerpts from '239 Inventors' 8/2/95 Amend.) at SAMNDCA630-00832605-06 ("[The prior art] lacks a significant element. . . [,] [it] does not contemplate the creation of full-motion composite signal video information into digitized files which can be stored, transmitted, played or replayed. . . .  Thus, [the prior art] does not disclose the creation of a data file as required by Applicants' claims.").  In fact, both Dr. Storer and Dr. Schonfeld drew conclusions about the significance of statements made during prosecution.[13]  While Samsung may disagree with Dr. Storer's conclusions that the applicants disclaimed videoconferencing and are estopped from asserting the doctrine of equivalents, that is not a basis to strike his opinions.

*Audio and video capture cards; composite signal:*  Samsung cites various paragraphs of Dr. Storer's non-infringement report that analyze why the accused products lack the cards required by the Court's construction of "means for capturing, digitizing, and compressing at least one composite signal" and are incapable of performing the claimed function.  *See* Sams. Br. at 11; Storer Reb. Rep., ¶¶ 530-79 (Kolovos Dec., Ex. 14).  Dr. Storer explains what capture cards are and how they work, and his opinions are based on the patent

---

[13] *See* Storer Reb. Rep., ¶¶ 407-14, 418-21, 577-79, 643-44 (Kolovos Dec., Ex. 14); Schonfeld Rep. ¶¶ 357-59, 376-86 (Kolovos Dec., Ex. 10).

specification, Intel documents describing the disclosed video capture card, the inventors'
testimony describing their own use of the Intel card, and his own experience using capture
cards.  *See id.*, ¶¶ 371-88, 530-79; Storer Rep. ¶¶ 584-93, 603-05 (Kolovos Dec., Ex.
16); '239 patent at 4:28-41 (video capture card "available commercially from IBM/Intel"
"***receive[d]***" video signal from  "any device having the capacity to output a video signal 1,
***such as*** a video camera, video cassette recorder/player, laser disc player, etc.") (emphasis
added), 12:37-38 ("Playback unit 4 has a video card installed ***in an expansion slot***.").  Even
Dr. Schonfeld's opening report describes video capture cards and how they work in his
Background Technology section a manner consistent with Dr. Storer's description.
Schonfeld Rep., ¶ 241 (describing a video capture card as "obtaining" analog signals) and
n.8 (Kolovos Dec., Ex. 10); *see also* Schonfeld Tr., 339:24-344:13 (Kolovos Dec., Ex. 6)
(testifying that he has installed video capture cards in computer expansion slots).

  <u>*Modems*</u>:  Samsung also mischaracterizes – and misleadingly edits – Dr. Storer's
testimony about modems.  In the testimony that Samsung omitted from its quote (Sams. Br.
at  11) and elsewhere, Dr. Storer merely clarified that when modems "transform digital data
into analog," the data is still digital data but is encoded into analog signals for transmission:

> So again, I don't have a general problem with it as long as somehow you're
> not reading more into transform than merely the case that what you're trying
> to describe is the process of conveying.  There's nothing wrong with what
> you said except that we wouldn't want to imply that somehow the modem is
> doing some kind of changing of the digital information that's being
> conveyed.  The modem is a lossless device, barring errors or barring
> communication problems, that the receiver at the other end will get the same
> bits that were sent from the sending end.  But to the extent that you're just
> saying the modem is something that's using the analog machinery, if you
> will, to convey the digital bits, sure, that's fine.

Storer Tr., 346:4-19; 341:24-343:12 ("So there is an analog mechanism to encode the digital
information.  I don't think the information has changed.  It hasn't been transformed to
different information.") (Kolovos Dec., Ex. 6).  Samsung's expert describes modem
operation in exactly the same way: "[a] modem . . . is used to ***encode[s] and decode[s]
digital information*** for transmission as an analog signal over a communication medium."

Schonfeld Rep., ¶ 246 (Kolovos Dec., Ex. 10) (emphasis added).[14]

### C. Apple Disclosed the Non-Infringement Theories in Dr. Fuja's Expert Report During Fact Discovery.

Samsung's arguments that Dr. Fuja's expert report contains three undisclosed infringement theories (Sams. Br. at 7-9) rely on misreadings of Apple's detailed substantive discovery responses. Samsung *admits* that Apple made disclosures relevant to all three theories, and does not (because it cannot) support its contention that Apple's disclosures are nonetheless "different" from the opinions included in Dr. Fuja's expert report.

#### 1. Apple Timely Disclosed the Theory That a "Control SDU" Must Contain Control Information That Comes From a Higher Layer.

With respect to the "control SDU" claim limitation of the '596 patent, Samsung argues that Dr. Fuja's report contains a different "higher layer" theory than the theory disclosed by Apple during fact discovery. Sams. Br. at 7. But the theories are the same – *i.e.*, that the "control SDU" (as opposed to the "PDU"s of the claims) must come from a higher layer than the other elements of the claim. *Compare* 7/15/12 Rog 12 Response (Sams. Ex. 11) at 192 *with* Fuja Reb. Rep., ¶¶ 436-445 (Sams. Ex. 6). Samsung itself contends that claim 13 of the '596 patent relates to forming a MAC-e PDU; thus, by Samsung's own assertions, the "higher layer" has always been a layer higher than the MAC-e layer. Samsung was on notice of this theory from the time that Apple disclosed it in discovery, and Dr. Fuja's report sets forth this same theory. Indeed, Samsung's expert Dr. Min addressed this theory in his opening expert report. Min Rep., ¶¶ 1144, 1149 (Ex. 11).

#### 2. Apple Timely Disclosed the Theory That the Claimed "Control Information" Must Be Used For an Uplink Packet Data Service.

*First,* Samsung's attempt to strike Dr. Fuja's opinion regarding the "packet

---

[14] Other paragraphs of Dr. Storer's report cited by Samsung simply describe how modems available at the time operate, and are consistent with the specification and the Court's construction. For example, as Dr. Storer explains, modems at the time of invention operated on a dial-up basis and used AT commands, established a direct connection to the receiving modem, and used protocols available at the time. *See* Storer Rep., ¶¶ 639, 640 (Sams. Br., Ex. 8).'239 patent at 8:61-9:5 (describing the use of AT commands, dialing, and the Z-modem protocol).

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

23

scheduler" (Sams. Br. at 8) should be rejected because the opinion at issue responds to new evidence disclosed by Samsung for the first time in its own expert report on infringement. Samsung's infringement contentions do not mention a "packet scheduler" and do not cite the documents regarding the packet scheduler cited in its expert's report on infringement. *See* '596 Patent Infringement Contentions (Dkt. No. 660-2); Fuja Reb. Rep. ¶ 460 (Sams. Ex. 6); Min Rep. ¶ 1138 (Kolovos Dec., Ex. 11).[15]  Dr. Fuja was appropriately responding to arguments made for the first time in Samsung's expert report.

      **Second,** Dr. Fuja's opinion is consistent with Apple's "Scheduling Information" theory that it disclosed during fact discovery.  Samsung admits that Apple earlier contended that the Scheduling Information of the standard does not constitute "control information for an uplink packet data service" because ███████████████████████████

████████████  Sams. Br. at 8 (citing 7/15/13 Rog 12 Response at 12 (Sams. Ex. 11)). Consistent with Apple's contentions, Dr. Fuja opines in his report that:



Fuja Reb. Rep. ¶ 449 (Sams. Ex. 6); *see also id.* ¶¶ 450-451.  Dr. Fuja's opinions regarding the "packet scheduler" are thus consistent with Apple's earlier "Scheduling Information" non-infringement contentions, and also rebut the "packet scheduler" arguments that were made for the first time in Samsung's expert report.

               **3. Apple Timely Disclosed the Theory That the Accused Products Do Not Satisfy the Claimed "N Field".**

      Far from making only a "boilerplate contention," Apple disclosed in response to Samsung's interrogatories its theory that the accused products do not satisfy the limitation of

---

[15] The documents discussed in paragraph 1138 of Dr. Min's opening report, to which paragraph 460 of Dr. Fuja's rebuttal report responds, were produced by Samsung to Apple on August 10, 2013, *after the close of fact discovery* and only two days before opening expert reports were due.  Kolovos Decl., ¶ 18.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

24

an "N field representing the number of uplink packet data" *because* the limitation differs from the standard, which describes an N field that indicates the "number of consecutive MAC-d PDUs." *See*, *e.g.*, 7/15/13 Rog 12 Response (Sams. Ex. 11) at 194 ("The standard also does not show an N field 'representing the number of uplink packet data' included in the MAC-es PDU; rather, the standard provides that N indicates '[t]he number of consecutive MAC-d PDUs corresponding to the same DDI value.'"); *see also id.* at 195. Thus, Samsung was on notice of Apple's contention that "number of uplink packet data" differs from the number of MAC-d PDUs.

Dr. Fuja's opinions are consistent with Apple's disclosures. For instance, he states:



Fuja Reb. Rep. ¶ 422 (Sams. Ex. 6) (emphasis added). Dr. Fuja then explains why Dr. Min was mistaken in his analysis of this limitation:



*Id.* ¶¶ 424-425. Dr. Fuja's discussion of "bits or bytes" was offered in response to Dr. Min's interpretation of the claimed "N field," and mirrors the theory already disclosed by Apple – that the claimed "N field" does not have the same meaning as the N field in the standard.

## IV.  CONCLUSION

For all of these reasons, the Court should deny Samsung's motion to strike in its entirety.

Dated:  November 19, 2013                 WILMER CUTLER PICKERING
                                          HALE AND DORR LLP


                                          By:  _/s/ Mark D. Selwyn_


                                              Attorneys for Counterclaim-defendant
                                              APPLE, INC.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

26

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document and its supporting

documents were filed electronically in compliance with Civil Local Rule 5.1, and will be

served upon all counsel of record for the parties who have consented to electronic service in

accordance with Civil Local Rule 5.1 via the Court's ECF system.


Dated:  November 19, 2013                 */s/ Mark. D Selwyn*
                                          Mark D. Selwyn

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
CASE NO. 12-CV-630-LHK (PSG)

27