# Exhibit 3

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California  94304-1211
Telephone:  (650) 849-5300
Facsimile:  (650) 849-5333

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S FURTHER SUPPLEMENTAL OBJECTIONS AND RESPONSES TO SAMSUNG'S FIRST SET OF INTERROGATORIES TO APPLE (NO. 12)**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S FURTHER SUPPLEMENTAL OBJECTIONS AND RESPONSES TO SAMSUNG'S FIRST SET OF INTERROGATORIES (NO. 12)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rule 33, Apple Inc. ("Apple") hereby provides further supplemental responses to Interrogatory No. 12 served by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America LLC (collectively, "Samsung") on September 25, 2012. These responses are based on information reasonably available to Apple at the present time. Apple reserves the right to continue discovery and investigation into this matter and reserves the right to amend and supplement these responses when and if additional information becomes available. Apple's objections as set forth herein are made without prejudice to Apple's right to assert any additional or supplemental objections pursuant to Rule 26(e).

### GENERAL OBJECTIONS

The General Objections set forth in Apple Inc.'s Objections and Responses to Samsung's First Set of Interrogatories, served on November 8, 2012, are incorporated herein by reference.

### OBJECTIONS AND RESPONSES TO INTERROGATORIES

Subject to the foregoing qualifications and General Objections and the specific objections made below, Apple objects and responds to Samsung's First Set of Interrogatories as follows:

### INTERROGATORIES

**INTERROGATORY NO. 12:**

If YOU contend or believe that YOU do not infringe any asserted claim of the SAMSUNG PATENTS, state with specificity the complete factual and legal bases for such contention or belief.

**RESPONSE TO INTERROGATORY NO. 12:**

Apple objects to this Interrogatory as premature to the extent that it: (a) conflicts with the schedule entered by the Court, (b) conflicts with the obligations imposed by the Federal Rules of Civil Procedure, the Civil Local Rules and/or the Patent Local Rules of this Court, and/or any

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Based on Apple's current understanding of the asserted claims of the '449 patent, including how Samsung has applied those claims in its contentions Samsung cannot prove infringement of asserted claims 25 or 27 for at least the following reasons in addition to the reasons set forth above.

## VIII.   CLAIM 25

### A.      "A digital camera"

The accused products are not "digital cameras," as required by claim 25.  The cameras of the accused products are merely component parts of a larger multimedia system that includes at least a phone, computer, digital music player, video player, global positioning device, game player, email device, online store, and numerous other component parts.

### B.      "an A/D converter which converts said analog signal from said imaging device to a digital signal"

Samsung has failed to identify "an A/D converter which converts said analog signal from said imaging device to a digital signal," as required by claim 25.  Samsung identifies only a ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████  Because Samsung has failed to articulate an infringement theory with respect to each requirement of this limitation, Samsung cannot prove infringement and Apple cannot fully respond to Samsung's infringement contentions.  In any event, the accused Apple products do not have "an A/D converter which converts said analog signal from said imaging device to a digital signal." ███████████████████████████████████████████ ██████████████████████

### C.      "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals"

Samsung has failed to identify "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals," as required by claim

- 59 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**E.    "a recording circuit which records compressed data, said compressed data including a moving image signal, and a still image signal"**

Samsung asserts only that "[o]n information and belief," the accused devices have "a recording circuit that records both compressed moving image data and compressed still image data to a NAND flash module for storage."  But Samsung has failed to identify any component(s) that supposedly meet the limitation "a recording circuit which records compressed data, said compressed data including a moving image signal, and a still image signal."  Because Samsung has failed to articulate its infringement theory with respect to each requirement of this limitation, Samsung cannot prove infringement and Apple cannot fully respond to Samsung's infringement contentions.

**F.    "a reproducing circuit which reproduces a moving image signal, a sound signal in synchronous to said moving image signal, and a still image signal"**

Samsung has failed identify "a reproducing circuit which reproduces a moving image signal, a sound signal in synchronous to said moving image signal, and a still image signal" in any accused product, as required by claim 25.  Samsung asserts only that "[o]n information and belief," the accused devices have "a reproducing circuit which can reproduce a moving image signal, a sound signal that is synchronous to a moving image signal, and a still image signal," and generally mentions a "graphical processing unit" in some of the accused products' processors.  Samsung has not identified any "circuit" that allegedly performs the required functionality.  Because Samsung has failed to articulate its infringement theory with respect to each requirement of this limitation, Samsung cannot prove infringement and Apple cannot fully respond to Samsung's infringement contentions.

**G.    "a display which displays said moving image signals and still image signals outputted from said reproducing circuit, and a list of said moving image signal and still image signal as a search mode, and a list of classifications as a classification mode"**

Samsung has failed to show that the accused products contain "a display which displays said moving image signals and still image signals outputted from said reproducing circuit, and a

- 61 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

list of said moving image signal and still image signal as a search mode, and a list of classifications as a classification mode." Samsung contends that the "Camera Roll" View satisfies the "list of said moving image signal and still image signal as a search mode" limitation. The Camera Roll View of the accused products is neither a "list," nor does it incorporate a "search mode." Camera Roll does not allow users to search for particular images or videos and uses a thumbnail grid structure for displaying images and videos.

Samsung further contends that the Album List View of certain iPhone and iPod touch products satisfies the "list of classifications as a classification mode" limitation. Samsung omits iPad products from its infringement contentions for this limitation. Because Samsung has failed to articulate its infringement theory with respect to each requirement of this limitation, Samsung cannot prove infringement and Apple cannot fully respond to Samsung's infringement contentions. In any event, the iPad products do not display a "list of classifications as a classification mode." The iPad products display albums as thumbnails in a grid structure, and the Album List View does not allow users to designate Album settings for particular image or video files.

**H.    "wherein said recording circuit records each one of said plurality of image signals with classification data"**

Samsung asserts that "[o]n information and belief," the accused devices have "a

But Samsung has failed to identify any functionality or component(s) in the accused Apple products that supposedly satisfies the limitation "said recording circuit records each one of said plurality of image signals with classification data," as required by claim 25. In any event,

- 62 -

APPLE'S FURTHER SUPPLEMENTAL RESPONSES TO
SAMSUNG'S FIRST SET OF INTERROGATORIES (NO. 12)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

features: (1) iTunes in the Cloud, (2) iTunes Match, (3) Photo Stream, (4) Syncing with iTunes, and (5) Home Sharing.  With respect to each of these features, Samsung fails to articulate any infringement theory with respect to each requirement of this limitation.  Therefore, Samsung cannot prove infringement, and Apple cannot fully respond to Samsung's infringement contentions.

### D.      iTunes in the Cloud/iTunes Match

Samsung contends that "Apple's iCloud service allows a user to store, interface with, and access all of the user's multimedia information stored on the iCloud from a Zone Device." However, as noted above, "the iCloud" is not a central storage and interface device.

iCloud is a combination of many different features, including iTunes in the Cloud, and iTunes Match.  iTunes in the Cloud and iTunes Match operate in different ways, utilize different software, hardware, and services, and are available based on different criteria, and therefore cannot be lumped into a single accused instrumentality Samsung's failure to differentiate between iTunes in the Cloud and iTunes Match leaves Apple unable to fully respond to Samsung's contentions.  Even so, there are a number of reasons why Apple's devices do not infringe.

Samsung contends that "any of the user's songs stored in the iCloud can be streamed . . . to an iOS device or a computer running iTunes."  However, streaming is the transmission of audio or video data from one device to another, such that the data is, at most, only temporarily stored.  Because the data is, at most, only temporarily stored, a device receiving steamed audio or video information is not "updated in relation to" the device that transmits the audio or video information.  There is no such thing as a temporary update.

Similarly, Samsung appears to contend that merely making audio, video, or photographic information available for download or selecting particular files to download meet this limitation. Neither meets the requirements of the limitation.  The claim language makes clear that the update must enable a user "to be situated in any of the zones and access the audio, video or photographic information."  If the user must still manually download the content in order to

- 69 -

APPLE'S FURTHER SUPPLEMENTAL RESPONSES TO
SAMSUNG'S FIRST SET OF INTERROGATORIES (NO. 12)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

access it on the device, the device has not been updated in relation to that content.  The specification also makes this point clear: "The system allows multiple devices to synchronize its internal collection with each other, so that the end result is that all the devices have the same content and content management means (playlists, settings, etc.)."  ('757 Patent, col. 9, ll. 61-65.) In the same way, selecting and downloading particular files manually through a drag-and-drop or point-and-click method does not constitute "synchronizing" as used throughout the '757 patent, and in claim 1.

In addition, Samsung contends that "[u]pdates resulting from new music purchases or changes to the user's existing multimedia library are automatically downloaded to a Zone Device."  However, the patent makes clear that to practice claim 1, more is required.  One additional requirement is that the audio, video, or photographic information "contained within the zone specific storage and interface device *and* the central storage and interface, are updated in relation to the zone specific storage and interface devices *and* the central storage and interface device."  Thus, it requires the capacity to update both devices based on the information on the other.  Samsung fails to identify any way in which the audio, video, or photographic information contained within the central storage and interface device is updated in relation to the zone specific storage and interface device.

Moreover, the claim requires that "audio, video, or photographic information, relating to at least one user" stored within both the zone specific storage and interface device and the central storage and interface device "are updated in relation to" both the zone specific storage and interface devices and the central storage and interface devices.  The claim further requires that the at least one user can be situated "in any one of the zones" and access "*the* audio, video, or photographic information related to the user."  iTunes in the Cloud does not allow for updates from the zone specific storage and interface device to the central storage and interface device, and thus does not provide access to all the audio, video, or photographic data related to the user in any zone.  Likewise, iTunes Match does not provide for complete synchronization of a user's audio, video, or photographic information as a result of the update.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

iTunes in the Cloud does not provide a user the ability to update the audio or video

multimedia stored in the central server. ███████████████████████████

█████████████████████████████████████████████████████

████████████████

Also, Samsung fails to describe how the iTunes Match service meets this limitation

entirely.

### E.  Photo Stream

Samsung contends that "Apple designed Photo Stream to allow the Central Device to be

the 'master photo library.'"  However, Samsung fails to identify how the devices update in

relation to each other, nor is it clear what devices Samsung is claiming are the zone devices.

Moreover, as explained above, the claim requires that all the audio, video, or photographic data

stored within the central storage and interface device or any zone specific storage and interface

device must be made available on all the zone specific storage and interface devices as a result of

the "update[]."  The Photo Stream service only stores information for a limited time, and, thus,

does not make all a user's content available in any zone.  Therefore, Samsung cannot prove

infringement and Apple cannot fully respond to Samsung's infringement contentions.

### F.  Synching With iTunes

Samsung contends that a user can sync music, photos and video between a zone specific

storage and interface device and a central storage and interface device using iTunes.  However,

the only feature Samsung describes is Syncing with iTunes, which allows an iOS device to copy

information from a computer.  However, as described above, iOS devices are not zone specific

storage and interface devices.  Therefore, Samsung fails to identify a zone specific storage and

interface device with respect to Synching with iTunes.

### H.  Home Sharing

Samsung contends that "Apple's Home Sharing software allows a user with a second

desktop or laptop computer . . . to operate it as a zone specific storage and interface device that is

capable of storing or interfacing with multimedia information stored on a Central Device."

- 71 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

However, as articulated above, neither the streaming feature nor the drag-and-drop feature of Home Sharing meets the limitation language.  Moreover, the patent requires that the audio, video, or photographic information "contained within the zone specific storage and interface device **and** the central storage and interface, are updated in relation to the zone specific storage and interface devices **and** the central storage and interface device."  Home Sharing does not allow a device to update its content in relation to a second device **and** to update the second device in relation to the content on the first device.  Both are required by the patent.  Moreover, as explained above, the claim requires that all the audio, video, or photographic data stored within the central storage and interface device or any zone specific storage and interface device must be made available on all the zone specific storage and interface devices as a result of the "update[]"; Home Sharing does not make all a user's content and content management information be stored in every zone.

## XI.  CLAIM 3

As an initial matter, Samsung has not explained how the accused Apple products "compris[e] a wide area network (WAN)."  The only WAN mentioned by Samsung, the Internet, is not under the control of Apple.  None of the accused products is a WAN.

Samsung contends that the "Apple iCloud service allows a user to couple a Zone Device to the ▮▮▮▮▮ (i.e., the Central Device) using a wide area network (e.g., the Internet)."  However, as discussed above, Samsung has not shown that an ▮▮▮▮▮ meets the limitations of a central storage and interface device.  Also, Samsung articulates no theory as to how the claim limitation is met with respect to other accused central storage and interface devices.  In addition, aside from iTunes in the Cloud, Samsung has not described how the other accused features couple Zone Devices and Central Devices over a WAN (Wide Area Network).  Neither Home Sharing nor iTunes Sync operates over a wide area network.  Therefore, Samsung cannot prove infringement and Apple cannot fully respond to Samsung's infringement contentions.

## XII.  CLAIM 4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

input signal."); SAMNDCA630-00832632 [5/20/96 Amend.] at 9, 12; Boss 6/19/13 Tr. at 96:14-21; 97:6-15; M.C. Freeman 6/19/13 Tr. at 71:6-16; R. Freeman 6/18/13 Tr. at 95:5-9, 153:9-20; ZINGERMANNDCA630-00000149; APL630DEF-WH-A0000032341; APL630DEF-WH-A0000032199-201; APL630DEF-WH-A0000020896; SAMNDCA630-00830180; SAMNDCA630-00829683-84; SAMNDCA630-00829773; SAMNDCA630-00829896-97; SAMNDCA630-00829903; SAMNDCA630-00831181; SAMNDCA630-00831182; SAMNDCA630-00831185-88; SAMNDCA630-00831190; SAMNDCA630-00831474; SAMNDCA630-00831478; SAMNDCA630-00831775; SAMNDCA630-00832131; SAMNDCA630-0082155; SAMNDCA630-00828677; SAMNDCA630-00828679; APL630DEF-WH-A0000004783- 940; APL630DEF-WH-A0000004704 at 13; APL630DEF-WH-A0000004734 at 36.)

A "composite signal" is an analog signal that contains the components of a full-motion video that has already been created. In other words, the video must already exist before it is captured. (*See, e.g.*, '239 patent at Abstract ("The audio/visual signal can either be NTSC, PAL, or Y/C."), 2:26-28 ("It is the purpose of the present invention to provide a method and means for capturing full-color, full-motion audio/video signals . . ."), 4:31-34 ("The video signal received by the remote unit can be of any generally known format, such as NTSC, PAL, and Y/C video (or S video)."); SAMNDCA630-00832590 [Affidavit] ¶ 2 (describing invention as an apparatus that captures, digitizes and compresses a "full motion composite signal"); SAMNDCA630-00832592 [¶ Ex. A to Affidavit] ("Remote unit digitizes and compresses video/audio NTSC signal"); SAMNDCA630-00832596 [2/2/96 Amend.] at 6; Docket No. 447 [Claim Const. Order] at 51-52; APL630DEF-WH-A0000036852 at 54.) A CMOS image sensor has thousands of individual pixels, each containing a photodetector, arranged in an array that receive light through a lens. (*See, e.g.*, Millet Tr. at 14:13-15:11 ▮▮▮▮▮▮▮▮▮).) The light received by each pixel is converted into a digital value. These values are then compiled into a stream of image (pixel) data. (*See, e.g.*, APL630DEF-WH0005226539 ▮▮▮▮▮▮▮▮▮ ]; APL630DEF-WH0005224613 [ ▮▮▮▮▮▮▮▮▮ APL630DEF-

- 97 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  WH0000097566 [████████████████████        APL630DEF-WH0000097306;

2  APL630DEF-WH0000097401; APL630DEF-WH0000097728; APL630DEF-WH0000097835;

3  APL630DEF-WH0000097942; APL630DEF-WH0000098046; APL630DEF-WH0000098144;

4  [████████████████████████████████████.) A CMOS image sensor

5  cannot receive a composite signal from an external device, as required by the term "capture" in

6  the patent, nor is the CMOS sensor capable of receiving an audio signal. The "processor with a

7  graphical processing unit (GPU)" also cannot receive a composite signal from an external device.

8  [████████████████████████████████.

9        Moreover, even under Samsung's apparent construction of "capture," the accused

10  components do not perform the identical function of "capturing, digitizing, and compressing at

11  least one composite signal." The light received by the CMOS image sensor and the image

12  stream it creates are not "composite signals," nor do they have any audio component. In fact, no

13  video yet exists during the creation and processing of the image stream. (*See, e.g.*, Millet Tr. at

14  14:13-15:11 (████████████████████████), 48:24-49:16 (████████████████

15  [████████████.) In addition, because the claimed function requires digitization of the composite

16  signal, that signal is necessarily analog; otherwise, there would be no need for the composite

17  signal to be digitized. None of the accused components is capable of receiving an analog

18  composite signal and digitizing and compressing that signal. The accused devices also do not

19  use a separate "A/D converter" as Samsung contends. Rather, each image sensor contains an

20  A/D converter for each column of pixels (*See, e.g.*, Millet Tr. at 16:15-17:3; APL630DEF-

21  WH0005226539 [████████████████████]; APL630DEF-WH0005224613 [████████████

22  [████████████████; APL630DEF-WH0000097566 [████████████████████];

23  APL630DEF-WH0000097306; APL630DEF-WH0000097401; APL630DEF-WH0000097728;

24  APL630DEF-WH0000097835; APL630DEF-WH0000097942; APL630DEF-WH0000098046;

25  APL630DEF-WH0000098144; [████████████████████████████████████

26  [████████

27

28                                    - 98 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Samsung also cannot prove that the accused components constitute the same structure required by the Court.  Samsung asserts only that the components listed above "infringe this claim both literally and under the doctrine of equivalents," but fails to explain how any of these components (or combinations thereof) is an audio capture card, a video card having a video capture module, or both.  Nor are the accused components the same structure.  The audio capture card and video card with video capture module identified by the Court as the corresponding structure that performs the claimed function are (outdated) add-on components for personal computers that can be connected to an external device (such as a video camera) and used to receive ("capture") a "composite signal" representing a full-motion video as input from that device.  The accused components, by contrast, are chips (or blocks on chips) integrated into the accused iOS devices, not add-on cards, as Samsung admits.  (*See, e.g.*, Samsung's Third Am. Infr. Contentions at 10 (describing the components as "chips")**;** APL630DEF-WH0005226539 ██████████████████████████]; APL630DEF-WH0005224613 [██████████████████████ ████████████ APL630DEF-WH0000097566 ████████████████████████████]; APL630DEF-WH0000097306; APL630DEF-WH0000097401; APL630DEF-WH0000097728; APL630DEF-WH0000097835; APL630DEF-WH0000097942; APL630DEF-WH0000098046; APL630DEF-WH0000098144:████████████; APL630DEF-WH0001749889 ██████████████); APL630DEF-WH0001738776 (████████████); APL630DEF-WH0003890052 (████████████); APL630DEF-WH0001732791; APL630DEF-WH0004002318 ████████████ APL630DEF-WH0005307879 ██████████████); APL630DEF-WH0001708681 ████████████); APL630DEF-WH0001726602 ██████████████ Samsung has also failed to identify any audio components of any kind in its amended infringement contentions.

Samsung similarly cannot prove that the accused components are structures equivalent to the audio capture card and video card having a video capture module under 35 U.S.C. § 112, ¶ 6.  The accused components were not in existence at the time of the filing of the '239 patent application, and therefore cannot be equivalents under 35 U.S.C. § 112, ¶ 6.  (*See* Docket No. 447 [Claim Constr. Order] at 60, n.13 (citing *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090,

- 99 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

camera 22A or 228, the frame grabber, the CODECs, the modem, and the encryptor/decryptor" –
in other words, with the same or very similar hardware as the '239 patent.  (SAMNDCA630-
00832570 [8/2/95 Office Action] at 6-7.)  The applicants responded by arguing that the frame
grabber (which performs the capture in the Gattis device) "only contemplates an uninterrupted,
continuous stream of information digitized on a line by line of resolution basis that ultimately
represents a sequence of 'pictures.'  Gattis does not contemplate the creation of full-motion
composite signal video information into digitized files which can be stored, transmitted, played
or replayed. . . . [I]n Applicants' invention, full-motion composite signal is captured into
digitized files . . . ."  (SAMNDCA630-00832596 [2/2/96 Amend.] at 10-11; *see also*
SAMNDCA630-00832632 [5/20/96 Amend.] at 9 ("The present invention includes an apparatus
capable of capturing a full-color, full motion composite signal in real time; digitizing that
composite signal into a data file; compressing the data file and transmitting it through a computer
interface via telephone lines, cellular, radio, and other telemetric frequencies from a remote unit
to a host unit.").)  Through these argument, the applicants relinquished any device that does not
create a data file, such as FaceTime.

        For each of the above reasons, Samsung cannot prove infringement under the doctrine of
equivalents.

        **B.      "means for storing said composite signal"**

        Samsung contends that the "Mobile Remote Unit has a means for storing the composite
signal, such as a NAND flash module or RAM."  But Samsung has failed to provide a means
plus function analysis for this limitation.  The only corresponding structure disclosed in the '239
patent for performing the function required by the "means for storing" limitation is a hard disk
drive and the software identified at 3:1-5, 4:52-57, and 6:14-16.  None of the Apple iOS devices
has a hard disk drive, and neither NAND flash memory nor RAM is a hard disk drive.  (*See, e.g.*,
APL630DEF-WH0005285127; APL630DEF-WH0001809981; APL630DEF-WH0001593264;
and other Bills of Material for iOS devices cited below.)  Moreover, both the NAND flash
memory and RAM store only digital data and does not store a "composite signal."  (*See, e.g.*,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

First, a "communications port" in the required structure and as described in the patent connects the modem to the remote unit.  Samsung improperly lists numerous components -- "a modem, a port on the modem, an antenna, and/or a port on the phone" – without choosing any or identifying any of these components in any accused iOS device.  In any event, the accused products do not have a "communications port":  because all the accused functionalities in each iOS device are integrated into a single device, there is no need for a "communications port" to connect a modem to the device.  Moreover, none of the accused software satisfies this limitation for at least of the following reasons:

- None of the applications or functions "initialize[s] a communications port." Indeed, Samsung has failed to identify any portion of any of the applications or functions that satisfies the required software sequence.

- As discussed above, FaceTime uses buffering and never creates or stores a data file, and therefore cannot "obtain" or "transmit" the stored data file.  (*See, e.g.*, Garcia Tr. at  42:4-14, 44:21-45:5, 46:12-47:4.)  In addition, FaceTime encrypts the packets before they are transmitted.  Thus, even if the packets could be considered a "stored data file" after they are encoded, FaceTime does not transmit those encoded packets (the "stored data file").  (Garcia Tr. at 58:10-23, 89:12-25, 121:8-122:3.)

- Wi-Fi sync with iTunes is incapable of syncing videos taken by the iOS device with iTunes, and therefore cannot "transmit the stored data file."

- Apple's YouTube application included in versions of iOS prior to iOS 6 did not provide the ability to upload videos to YouTube.

- The accused Voice Memos, Camera and Photos applications do not perform any of the functions of the required software.  To the extent that Samsung's contentions are based on the Share button of those apps, these applications merely use the same mechanisms of the Mail and Messages applications.

- 106 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- The accused Contacts application does not perform any of the functions of the required software.  To the extent that Samsung's contentions with respect to Contacts are based on the FaceTime button in Contacts, that button merely launches FaceTime. ████████████████████████████ ████████████████████

- Moreover, the accused iOS products without cellular capabilities (discussed above) do not have a Phone application.

- Finally, there are no applications called Email, iTunes or iPod on the accused iOS devices.

Samsung similarly cannot prove that the accused hardware and software components are structures equivalent to those required by the Court under 35 U.S.C. § 112, ¶ 6.  First, the accused components were not in existence at the time of the filing of the '239 patent application, and therefore cannot be equivalents under 35 U.S.C. § 112, ¶ 6.  (*See* Docket No. 447 [Claim Constr. Order] at 60, n.13 (citing *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1099-1100 (Fed. Cir. 2008)).)  Moreover, Samsung has failed to demonstrate that the accused components perform the identical claimed function in substantially the same way to achieve substantially the same result as the hardware and software components required by the Court.  Samsung contends that the "way" is "using transmitters and means as construed by the Court," but provides no explanation of the way any accused component performs any function or how that way is substantially similar to the way the required hardware and software components.  Samsung also fails to explain how the only component it mentions – an undefined "transmitter" – corresponds to the required structure of one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters."  To the extent the "transmitter" is a "radio transmitter," Samsung still fails to identify any of the other elements of the structure.  Samsung also states that "[t]he components identified above are modems" or equivalent to a modem, without any analysis or identification of how any other element of the required structure is satisfied by any component of the accused iOS devices.  Samsung does not mention software at

- 107 -

APPLE'S FURTHER SUPPLEMENTAL RESPONSES TO
SAMSUNG'S FIRST SET OF INTERROGATORIES (NO. 12)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

all.  In any event, as discussed above, none of the accused components (to the extent they can be identified) or combinations thereof perform the function of "transmitting said composite signal" in substantially the same way as the required structure, for at least the following reasons:

- To transmit the composite signal (stored in a data file), the software must first 'initializ[e] one or more communications ports on the remote unit."  But the accused iOS devices do not have a communications port or any similar structure to which a modem is connected, nor do any of the accused applications and functions initialize such a port.  The lack of any hardware structure or software sequence comparable to the required devices and software sequence is substantial.

- As described above, FaceTime uses buffering and never creates or stores a data file, and therefore cannot "obtain" or "transmit" the stored data file.  (*See, e.g.*, Garcia Tr. at  42:4-14, 44:21-45:5, 46:12-47:4.)

- Buffering of video and audio streams is substantially different from a stored data file:  a stored data file can be manipulated, edited, and retrieved at any time – including long after it has been created – for transmission.  In contrast, the buffered video used by FaceTime only exists as long as is needed to transmit it.  (Garcia Tr. at 47:20-48:4.)  Moreover, the stored data file described in the patent contains the entire video, whereas the FaceTime buffers contains only portions of video.  FaceTime never creates a full video of the call.

- None of the accused applications and functions performs the step of "transmitting the stored data file."

- Modems connected to cellular telephones, telephone lines, and/or radio transmitters are substantially different from the components in the accused iOS devices.  For example, communications with a modem as described in the patent are accomplished use Hayes AT (Attention) commands originating in the PC.  ('239 patent at 8:61-9:2; APL630DEF-WH-A0000026969, APL630DEF-WH-A0000033941, APL630DEF-WH-A0000033781.)  Before the stored data file

- 108 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

could be begin, the communications port connected to the modem must be initialized (as required by the Court), which is also accomplished by AT commands. ('239 patent at 8:61-9:2.)  The modem can then dial the telephone number of the host unit, which would establish a dedicated connection to the host. AT commands were used to dial the number.  ('239 patent at 8:23-30 ("Transfer software sequence B contains all of the instructions necessary to initialize the communications ports on the remote, obtain a cellular connection with each cellular telephone to the host unit . . ."), 11:19-24; M.H. Freeman 6/20/13 Tr. at 101:11-22.)  For transmitting, the modem uses a modem protocol such as – ZMODEM ('239 patent at 9:1-2), XMODEM or YMODEM – which transmits the data in a series of packets.  In contrast, the accused iOS devices do not have ports to be initialized, and use very different protocols for transmission (such as LTE for cellular and 802.11 for Wi-Fi).

- The accused iOS devices do not establish a connection with the host unit (the recipient of the video) in order to transmit video, as a modem does.  When an accused iOS device with cellular capabilities comes in range of a base station that it can connect to, it will connect to a base station in the cellular network (assuming the cellular capabilities are enabled).  Similarly, when an accused device with its Wi-Fi capabilities enabled comes in range of a Wi-Fi network that it can connect to, it will connect to the Wi-Fi network, which is connected to an Internet Service Provider via a local Wi-Fi access point.  When a video is sent via the Messages, Mail, or ███████████ or uploaded to YouTube, the video is routed through the network to a server – a carrier server for MMS, an Apple iMessage server for iMessages, ████████████, a YouTube server for YouTube upload, or a mail server for Mail. ████████████, the video remains on the server until the recipient retrieves it. ██████████ ████████████████████████████. The device

- 109 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

sending the video never connects to the device receiving the video, as is required with a modem described in the patent.  Given the complexities of the routing that must occur that are not present in a modem, these differences are not insubstantial.

- The baseband and Wi-Fi chips are not "modems connected to" a cellular telephone – they are part of the cellular telephone (the accused iOS devices).  The chips are not standalone devices as are the modems described in the '239 patent.

Samsung also cannot prove that the accused Apple products satisfy this limitation under the doctrine of equivalents.  Samsung asserts only that the accused products infringe "by using a modem or substantially equivalent component, and performing the Court's software sequence, to obtain substantially the same result of transmitting the video and audio data."  As with equivalents under § 112, ¶ 6, Samsung's conclusory statement fails to provide any analysis, fails to identify which components it is accusing, and fails to even mention most of the required structure.  Because Samsung has failed to provide a specific analysis of any prong or even describe how either the claimed components or accused components work, Samsung cannot demonstrate that any accused Apple product infringes under the doctrine of equivalents.  In any event, as described in detail above, the accused Apple products do not perform substantially the same function in substantially the same way for substantially the same result as claim 1 requires for at least the reasons set forth above.

Finally, for the same reason discussed above with respect to "means for capturing, digitizing, and compressing, Samsung is estopped from asserting the doctrine of equivalents with respect to this limitation for videos taken with FaceTime.

For each of the above reasons, Samsung cannot prove infringement under the doctrine of equivalents.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**D.     "means for receiving at least one composite signal transmitted by the remote unit"**

Samsung asserts that "[o]n information and belief," the accused devices "each have a computer interface(s) for receiving a composite signal transmitted by the remote unit either over cellular or Wi-Fi frequencies," and that the accused iOS devices each have a baseband chip and a wireless chip "for receiving the compressed composite video."  Samsung has also identified Wi-Fi sync with iTunes and FaceTime as "software [that] . . . works in conjunction with that computer interface(s) to allow a host unit to receive information from a Mobile Unit such as an iPad mini."  Samsung has failed to provide a means plus function analysis for this limitation. The only corresponding structure disclosed in the '239 patent for performing this limitation is one or more modems, corresponding to the number of modems used in the remote unit, connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and File Reception Software Sequence E.  (*See* '239 patent at 10:33-61, 11:18-12:8.)  But Samsung has failed to identify any such structure in the accused devices.  Because Samsung has failed to articulate its infringement theory with respect to each requirement of this limitation, Samsung cannot prove infringement of claim 1 and Apple cannot fully respond to Samsung's infringement contentions.

In any event, for the same reasons discussed above with respect to the "means for transmitting" limitation, none of the accused iOS devices has the required hardware structure.  In addition, Samsung cannot prove infringement with respect to this limitation by Wi-Fi sync with iTunes because it is incapable of syncing videos taken by the iOS device using the camera (Samsung's theory of "capturing" "at least one composite signal") with iTunes or by FaceTime because it does not use data files.  ('239 patent at 6:14-16, 3:1-5, 4:52-57; *see also e.g. id.* at Figure 3, 2:26-38, 2:46-58, 2:66-3:21, 3:26-60, 4:42-46, 4:52-5:7, 5:46-54, 6:9-18, 6:27-29, 6:31-39, 7:21-33, 8:17-40, 9:3-24, 9:65-10:54, 11:1-8, 11:11-14, 11:26-12:23, 12:27-51; SAMNDCA630-00832596 [2/2/96 Amend.] at 10-11; SAMNDCA630-00832632 [5/20/96 Amend.] at 9; Docket No. 447 [Claim Const. Order] at 64 (requiring transmission of the "stored

APPLE'S FURTHER SUPPLEMENTAL RESPONSES TO
SAMSUNG'S FIRST SET OF INTERROGATORIES (NO. 12)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

data file").)  FaceTime uses buffering and never creates or stores a data file.  (*See, e.g.*, Garcia

Tr. at  42:4-14, 44:21-45:5, 46:12-47:4.)  Nor do any of the accused Mac computers satisfy this

limitation.  The accused Mac computers do not have a baseband chip.  For the same reasons

discussed above with respect to the "means for transmitting" limitation, the Wi-Fi chip in the

accused Mac computers do not satisfy this limitation.  In addition, Samsung cannot prove

infringement with respect to this limitation by Wi-Fi sync with iTunes because it is incapable of

syncing videos taken by the iOS device using the camera (Samsung's theory of "capturing" "at

least one composite signal") with iTunes or by FaceTime because it does not use data files.

('239 patent at 6:14-16, 3:1-5, 4:52-57; *see also e.g. id*. at Figure 3, 2:26-38, 2:46-58, 2:66-3:21,

3:26-60, 4:42-46, 4:52-5:7, 5:46-54, 6:9-18, 6:27-29, 6:31-39, 7:21-33, 8:17-40, 9:3-24, 9:65-

10:54, 11:1-8, 11:11-14, 11:26-12:23, 12:27-51; SAMNDCA630-00832596 [2/2/96 Amend.] at

10-11; SAMNDCA630-00832632 [5/20/96 Amend.] at 9; Docket No. 447 [Claim Const. Order]

at 64 (requiring transmission of the "stored data file").)  FaceTime uses buffering and never

creates or stores a data file.  (*See, e.g.*, Garcia Tr. at  42:4-14, 44:21-45:5, 46:12-47:4.)   Because

the required components do not exist in the accused Mac computers or iOS devices, Apple does

not infringe.

Samsung also cannot prove infringement with respect to this limitation for composite

signals "transmitted by the remote unit" using Mail, Messages or YouTube.  Samsung has failed

to identify any structure that performs corresponding functionality on the accused Mac

computers for receiving videos transmitted by Mail, Messages, or YouTube.  To the extent

Samsung is allowed to accuse Mail, Messages, or YouTube upload of satisfying the software

structure required to perform the claimed function, those applications do not infringe for the

same reasons as discussed with respect to the "means for transmitting" limitation.

Samsung has also failed to articulate any theory of equivalents under 35 U.S.C § 112 ¶ 6

or the doctrine of equivalents, and the accused devices do not contain the equivalent of the

disclosed structure.  For this reason, Samsung cannot prove infringement under any theory of

equivalents.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**E.       "a playback unit including means for exchanging data with said host unit"**

Samsung contends only that "[o]n information and belief," the accused products "each have a playback unit for playing the composite signal and displaying it to the user" but fails to identify any such unit in any of the accused Mac computers.  Because Samsung has failed to articulate its infringement theory with respect to each requirement of this limitation, Samsung cannot prove infringement of claim 1, and Apple cannot fully respond to Samsung's infringement contentions.

For the "means for exchanging data with said host unit," Samsung asserts that "[o]n information and belief," the accused products "each have a circuit for exchanging the data received by the host computer's interface with the playback unit" and "Apple's software, such as QuickTime and FaceTime, works in conjunction with that computer interface(s) and the circuit to allow a host unit to receive data from an iPhone . . . and transmit it to playback unit."  But Samsung has failed to identify any such "circuit" or "interface" or software in any purported playback unit that "exchanges data with the host unit."  Because Samsung has failed to articulate its infringement theory with respect to each requirement of this limitation, Samsung cannot prove infringement of claim 1, and Apple cannot fully respond to Samsung's infringement contentions.

Samsung has also failed to provide a means plus function analysis for this limitation.  To the extent this limitation is definite, the only structure disclosed in the specification for "exchanging data with said host unit" is a16-bit Ethernet card, Novell Netware Lite software, and Host Boot Software Sequence D.  But Samsung has failed to identify any such card or software. Moreover, Samsung cannot identify any such components because none of accused products uses the required components.  Video playback functionality is incorporated into the accused products, thereby eliminating any need for networking components for exchanging data between a "host unit" and "playback unit" within the accused products.  Because the required components do not exist in the accused Mac computers, Apple does not infringe claim 1.

Samsung has also identified QuickTime and FaceTime as "[o]n information and belief" "working in conjunction with that computer interface(s) and the circuit to allow a host unit to

- 113 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  receive data [from an iOS device] and transmit it to playback unit for [the] playback unit."

2  Samsung has failed to articulate a theory of how QuickTime and FaceTime on a playback unit

3  exchanges data with the host unit.  Moreover, neither QuickTime nor FaceTime exchanges data

4  between a host unit and a playback unit, either using an Ethernet card and Novel Netware Lite or

5  otherwise.  Because the required components do not exist in the accused Mac computers, Apple

6  does not infringe claim 1.

7      Samsung has also failed to articulate any theory of equivalents under 35 U.S.C § 112 ¶ 6

8  or doctrine of equivalents, and the accused devices do not contain the equivalent of the disclosed

9  structure.  For this reason, Samsung cannot prove infringement under any theory of equivalents.

10     **F.      "means for storing the composite signal received by the host unit"**

11     Samsung asserts only that "[o]n information and belief" the accused products "each have

12  a hard drive or NAND flash module for storing the composite signal that is received by the host

13  unit's interface from a Mobile Remote Unit and then exchanged with the playback unit."

14  Samsung has failed to provide a means plus function analysis for this limitation.  The only

15  corresponding structure disclosed in the '239 patent for performing the function required by the

16  "means for storing the composite signal received by the host unit" limitation is a hard disk drive

17  and the software identified at 11:5-8, 12:19-22 and 12:48-51.  The storage devices in the Mac

18  computers store only digital data and cannot store an analog "composite signal."  For these

19  reasons, Samsung cannot prove infringement of claim 1 with respect to this limitation.

20     Samsung also identifies FaceTime and iTunes Wi-Fi sync as part of the "means for

21  storing."  As discussed above, the FaceTime application does not store a data file in NAND flash

22  memory, and iTunes Wi-Fi sync does not sync videos taken on the devices and therefore cannot

23  store them on a playback unit.  For these reasons, Samsung cannot prove infringement of claim 1

24  by FaceTime or iTunes Wi-Fi sync with respect to this limitation.

25     Samsung also asserts that "composite signals that are received by the host unit via email

26  [or] messaging" satisfy this limitation. But as discussed above, Samsung has failed to identify

27  Mail or Messages as a "means for receiving" the composite signal transmitted by the remote unit.

28                                    - 114 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   Because Samsung has failed to articulate its infringement theory with respect to this limitation,

2   Samsung cannot prove infringement of claim 1, and Apple cannot fully respond to Samsung's

3   infringement contentions.

4        Samsung has also failed to articulate any theory of infringement of equivalents under 35

5   U.S.C § 112 ¶ 6 or doctrine of equivalents, and the accused devices do not contain the equivalent

6   of the disclosed structure.  For this reason, Samsung cannot prove infringement under any theory

7   of equivalents.

8        **G.    "means for decompressing said composite signal"**

9        Samsung asserts that "[o]n information and belief" the accused products "each have a

10  graphical processing unit such as a video card, including a video decoder, for decompressing the

11  compressed composite signal for playback" and also identifies FaceTime as "software [that] . . .

12  decompresses the composite signal."  Samsung has failed to provide a means plus function

13  analysis for this limitation.  The only corresponding structure disclosed in the '239 patent for

14  performing the claimed function is a "video decompression card" ('239 patent at 12:3) that is

15  "similar to the video card installed in the remote unit 2 with the exception that the capture

16  module is not necessary" ('239 patent at 12:37-42) and an "audio decompression card" ('239

17  patent at 12:3-4).  But Samsung has failed to identify any video decompression card or audio

18  decompression card in the accused Apple products.  Nor does any accused product use a video

19  card or audio card.  Because the required components do not exist in the accused products, Apple

20  does not infringe claim 1.

21       Samsung has also failed to articulate any theory of infringement equivalents under 35

22  U.S.C § 112 ¶ 6 or the doctrine of equivalents, and the accused devices do not contain the

23  equivalent of the disclosed structure.  For this reason, Samsung cannot prove infringement under

24  any theory of equivalents.

25  **II.    CLAIM 7**

26       Claim 7 is a dependent claim that depends on claim 1.  The accused Apple devices do not

27  infringe claim 7 at least for the reasons set out above for claim 1.

28                                   - 115 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   capture module.  A video capture module is an (outdated) add-on component for personal

2   computers that is used to receive video signals ("capture") from an external device (such as a

3   video camera).  (*See* '239 patent at 4:28-31, 4:39-40, 5:44-46, 12:37-42; SAMNDCA630-

4   00832632 [5/21/96 Amend.] at 12 ("Yurt does not disclose the use of a video card including a

5   video capture module in order to accomplish its capture. The frame grabber technology of Gattis

6   and Palmer is likewise significantly different from a video card having a video capture module as

7   recited in claim 19.  The differences between a video card and frame grabber were discussed in

8   Applicant's Amendment and Response to the Office Action dated August 2, 1995, incorporated

9   herein by reference. In light of the fact that a video capture card having a video capture module

10  is not contemplated by Yurt nor Gattis or Palmer, the rejection of claim 19 under 35 U.S.C. §103

11  is believed overcome.").)[4]  For the same reasons discussed above with respect to "means for

12  capturing, digitizing, and compressing," the accused products do not have a "video capture

13  module" under either party's construction of "capture."

14        Samsung also cannot prove infringement with respect to to this limitation for FaceTime

15  on Mac computers ███████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ██████████████████████████████████.

18        Samsung has also failed to articulate any theory of infringement under the doctrine of

19  equivalents, and the accused devices do not contain the equivalent of the disclosed structure.  For

20  this reason, Samsung cannot prove infringement under any theory of equivalents.

21        **B.        "means for transmission of said captured video over a cellular frequency"**

22        Samsung contends that the accused products "allow[] for the transmission of a captured

23  video over a cellular frequency in a variety of ways," states that "[o]n information and belief, the

24  Accused Devices have at least one cellular antenna and supporting hardware and software,

25  _____

26  [4] Although the applicants amended the claim to remove the "video card" from the claim, they
    disclaimed any construction of the term "video capture module" other than those that can be
    included on video cards by arguing that the prior art did not disclose a video card including a
27  video capture module.  Through this argument, the applicants defined the type of "video capture
    module" they intended to claim.

28                                          - 117 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

including a baseband chip, for transmitting the captured video over a cellular frequency," and also identifies Mail, Message, FaceTime, and YouTube applications. But Samsung fails to provide a proper means plus function analysis.  The only corresponding structure disclosed in the '239 patent for performing the claimed function is  "one or more modems connected to one or more cellular telephones, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file."

Samsung also states that "[t]o the extent Apple argues that the term 'means for transmission' in claim 15 is the same as 'means for transmitting' in claim 1, Samsung's amended contentions set forth with respect to claim 1 apply in a similar manner to this term.  But for the same reasons discussed above with respect to "means for transmitting," Samsung cannot prove infringement of claim 15 with respect to this limitation.  In addition, the accused Mac products do not have baseband chips.

Samsung also cannot prove infringement with respect to this limitation by FaceTime because, as discussed above, FaceTime does not use stored data files and therefore cannot "obtain" or "transmit" "the stored data file."

Finally, Samsung is estopped from asserting the doctrine of equivalents with respect to this limitation for videos taken with FaceTime for the same reasons discussed above for the "means for transmitting" limitation.  Applicants added claim 15 (original claim 19) in the same Amendment in which the limiting argument was made, and stated "[t]he arguments contained herein in response to the rejections under 35 U.S.C. §112, 102(a), and 103 apply to new claims 16-20."  (SAMNDCA630-00832596 [2/2/96 Amend.] at 12; *see also* SAMNDCA630-00832632 [5/20/96 Amend.] at 9 ("The present invention includes an apparatus capable of capturing a full-color, full motion composite signal in real time; digitizing that composite signal into a data file; compressing the data file and transmitting it through a computer interface via telephone lines, cellular, radio, and other telemetric frequencies from a remote unit to a host unit.").)  Thus, the applicants relinquished any argument that a device that does not create a data file, such as

- 118 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    Apple reserves the right to supplement and/or amend its response as appropriate.

2    **'449 PATENT:**

3    Samsung cannot prove infringement of claim 1 of the '449 patent for at least the

4    following reasons:

5    **CLAIM 25**

6    **A.    "A digital camera"**

7    The accused products are not "digital cameras," as required by claim 25.    The claimed

8    "digital camera" cannot be a system or device in which a digital camera is merely a component

9    part.  Claim 25 was narrowed from "[a]n image recording and reproducing apparatus" to a

10   "digital camera" to overcome certain prior art cited during prosecution, and Samsung may not

11   now recapture what was surrendered.  *See, e.g.,* '449 File History, July 31, 2000 Amendment at

12   10-11, 15-17.  Apple engineer Tim Millet unequivocally testified that the accused products are

13   not "digital cameras" as required by the asserted claims.  *See* Millet Dep. at 44-45.

14   **B.    "an A/D converter which converts said analog signal from said imaging
       device to a digital signal"**

15

16   As an initial matter, Samsung has failed to comply with the Court's order denying

17   Samsung's attempt to pursue an infringement theory premised on an A/D converter that is

18   integrated into a CMOS image sensor, as opposed to separate and apart from the image sensor as

19   the asserted '449 claims require.  Samsung attempted to amend its contentions to state that the

20   A/D converter "may be incorporated into the image sensor chip."  Samsung's Motion for Leave

21   to Amend and Supplement Infringement Contentions, Apr. 30, 2013, Exh. G at 3.  The Court

22   concluded that Samsung did not have good cause to assert its integrated A/D converter theory.

23   Order re: Samsung's and Apple's Motions for Leave to File Amended Infringement Contentions

24   and Samsung's Motions to Compel [Dkt. No. 636], June 26, 2013, at 25.  Samsung's continued

25   assertion of its "integrated A/D converter" theory is improper.

26   In any event, the claims require an A/D converter to receive an analog signal ***from*** the imaging

27   device, *i.e.*, an A/D converter distinct from the imaging device.  ████████████████████

28

- 164 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

2

3

4

5

6

. *See* Samsung's Third Amended

Infringement Contentions, July 4, 2013, Exh. G at 3.  Accordingly, the accused products do not

have "an A/D converter which converts said analog signal from said imaging device to a digital

signal." *See, e.g.*, Image Sensor Datasheets at APL630DEF-WH0000097306-97400,

APL630DEF-WH0000097401-97727, APL630DEF-WH0000097728-97941, APL630DEF-

WH0000097942-98045, APL630DEF-WH0000098046-98143, APL630DEF-WH0000098144-

98243, APL630DEF-WH0001708357-1708434, APL630DEF-WH0001712049-1712162,

APL630DEF-WH0001712166-1712279, APL630DEF-WH0001712281-1712348, APL630DEF-

WH0001712349-1712426, APL630DEF-WH0001712430-1712507, APL630DEF-

WH0001712508-1712583, APL630DEF-WH00017261801726248, APL630DEF-

WH0001726252-1726351, APL630DEF-WH0001726353-1726452, APL630DEF-

WH0001726464-1726601, APL630DEF-WH0005214335-5214457, APL630DEF-

WH0005224613-5224751, APL630DEF-WH0005224752-5224847, APL630DEF-

WH0005226539-5226707, OMNI0001-1385.

**C.      "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals"**

In its third supplemental infringement contentions, Samsung contends that the accused

products have "

- 165 -

APPLE'S FURTHER SUPPLEMENTAL RESPONSES TO
SAMSUNG'S FIRST SET OF INTERROGATORIES (NO. 12)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    iTunes Match: ███████████████████████████████████████

2    ████████████████████████████████████████████████████████

3    ██████████████████████████████████

4    Photo Stream:  Photo ████████████████████████████████████

5    ████████████

6         In addition, to the extent that the term "storage and interface device" requires that the

7    user "ordinarily interface" with the media located on the device (*see* Samsung Supplemental

8    Responses to Apple's Fifth Set of Interrogatories, p. 160 ████████████████████████

9    ████████████████████████████████████████████████████████)), the

10   user cannot "ordinarily interface" directly with the media stored on any of servers used in the

11   accused features.  For example, with respect to Photo Stream, ██████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████

16   ████████████████████████████████████████████

17         Samsung also accuses the iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, and

18   Apple TV, without identifying any "content information and content management information,

19   relating to at least one user" stored in digital form on the device, or articulating any theory of

20   infringement.  Nor has Samsung articulated how these devices ever interface with zone devices

21   through the accused features.  Indeed, with regard to iTunes automatic downloading of new

22   purchases, iTunes in the Cloud (redownloading), iTunes Match, and Photo Stream all the

23   accused iOS/OS X devices interact with the various servers, not with each other.  Further, ███

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████

26         With respect to the accused AppleTV device, Samsung has failed to present any theory of

27   how the product could meet the claim limitations.  The accused AppleTV device does not

- 172 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

support iTunes in the Cloud, iTunes Match, Photo Stream, or Home Sharing services.  Therefore, Samsung cannot prove infringement, and Apple cannot fully respond to Samsung's amended infringement contentions.

Further, Samsung fails to identify any "audio, video, or photographic data, including content information and content management information, relating to at least one user, are stored in digital form" on a central device.  Samsung appears to construe this term to require that the audio, video, or photographic data stored on the central device relate to a "particular user." However, under that interpretation, the audio information for iTunes automatic downloading of new purchases and iTunes in the Cloud (redownloading) is ██████████████ ████████████████████████████████████████████████████ ██████████████████████████████ The content information on Home Sharing likewise is not related to a user.  Nor do iTunes automatic downloading of new purchases, iTunes in the Cloud (redownloading), or Photo Stream services store content or content management information related to a user under that interpretation, to the extent that they do not store playlists or photo albums related to a user.  Moreover, Apple IDs are not necessarily related to a "particular user," but could be used by multiple users (e.g., a family).

Similarly,  iTunes Sync does not store "audio, video, or photographic data . . . relating to a least one user" under Samsung's interpretation.  (*See* Samsung Supplemental Responses to Apple's Fifth Set of Interrogatories, p. 170 (████████████████████████ ████████████████████████████████████").)  iTunes Sync transfers information based on device settings, not relating to a particular user.  (*See, e.g.*, Wysocki Dep. 49:5-10.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   relation to the audio, video, or photographic information on any iOS or OS X device.  Nor can it,

2   █████████████████████████████████████████████████████████

3   █████████████████████████████████████████████████████████

4   █████████████████████████████████████████████████████████

5   █████████████████████████████████████████████████████

6   ██████████████.  The iTunes in the Cloud redownload service likewise does not provide any

7   means for updating any  server associated with iTunes in the Cloud in relation to the audio,

8   video, or photographic data located on any of the accused products.  And, iTunes Match does not

9   update any accused device in relation to servers associated with iTunes Match, at most it makes

10  certain songs in the iTunes store available for manual streaming or download.

11      Moreover, the claim requires that "audio, video, or photographic information, relating to

12  at least one user" stored within both the zone specific storage and interface device and the central

13  storage and interface device "are updated in relation to" both the zone specific storage and

14  interface devices and the central storage and interface devices.  The claim further requires that

15  the at least one user can be situated "in any one of the zones" and access "*the* audio, video, or

16  photographic information related to the user."  iTunes in the Cloud does not allow for updates

17  from the zone specific storage and interface device to the central storage and interface device,

18  and thus does not provide access to all the audio, video, or photographic data related to the user

19  in any zone.  Likewise, iTunes Match does not provide for complete synchronization of a user's

20  audio, video, or photographic information as a result of the update.  iTunes in the Cloud does not

21  provide a user the ability to update the audio or video multimedia stored in any of the servers.

22  █████████████████████████████████████████████████████████

23  ███████████████████████████████████████████.  In addition, Samsung

24  appears to construe this term to require updating of one zone device in relation to the audio,

25  video, or photographic information contained on another zone device.  iTunes in the Cloud does

26  not provide any means for synchronizing the content on one user device with the content on

27  another user device.

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**E.     Photo Stream**

Samsung contends that "Apple designed Photo Stream to allow the Central Device to be the 'master photo library.'"  However, Samsung fails to identify how the devices update in relation to each other, nor is it clear what devices Samsung is claiming are the zone devices.  Moreover, as explained above, the claim requires that all the audio, video, or photographic data stored within the central storage and interface device or any zone specific storage and interface device must be made available on all the zone specific storage and interface devices as a result of the "update[]."  The Photo Stream service only stores information for a limited time, and, thus, does not make all a user's content available in any zone.  In addition, like the drag-and-drop features discussed above, Photo Stream copies selected files to multiple devices; it does not synchronize devices.  Therefore, Samsung cannot prove infringement and Apple cannot fully respond to Samsung's infringement contentions.

**F.     Synching With iTunes**

Samsung contends that a user can sync music, photos and video between a zone specific storage and interface device and a central storage and interface device using iTunes.  However, the only feature Samsung describes is Syncing with iTunes, which allows an iOS device to copy information from a computer.  However, as described above, iOS devices are not zone specific storage and interface devices.  Therefore, Samsung fails to identify a zone specific storage and interface device with respect to Synching with iTunes.  Nor has Samsung provided any theory regarding how the accused AppleTV device could meet the claim through this feature.

**G.     Home Sharing**

Samsung contends that "Apple's Home Sharing software allows a user with a second desktop or laptop computer . . . to operate it as a zone specific storage and interface device that is capable of storing or interfacing with multimedia information stored on a Central Device."  However, for the reasons articulated above, neither the streaming feature nor the drag-and-drop feature of Home Sharing meets the limitation language.  Moreover, the patent requires that the audio, video, or photographic information "contained within the zone specific storage and

- 180 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   interface device ***and*** the central storage and interface, are updated in relation to the zone specific

2   storage and interface devices ***and*** the central storage and interface device." Home Sharing does

3   not allow a device to update its content in relation to a second device ***and*** to update the second

4   device in relation to the content on the first device. Both are required by the patent. Moreover,

5   as explained above, the claim requires that all the audio, video, or photographic data stored

6   within the central storage and interface device or any zone specific storage and interface device

7   must be made available on all the zone specific storage and interface devices as a result of the

8   "update[]"; Home Sharing does not make all a user's content and content management

9   information be stored in every zone.

10  **CLAIM 14**

11          Samsung contends that the "iPhone, iPad, iPad mini and iPod touch are each wireless

12  mobile devices that can be coupled to a Central Device via LAN (e.g., a hardwired connection or

13  Wi-Fi)." However, the "hardwired" USB connection used by the iOS devices does not constitute

14  a local area network. Samsung has failed to articulate a theory under which these devices couple

15  with a central storage and interface device via a LAN. Similarly, Samsung has not articulated

16  any theory regarding how the iCloud connects with a wireless mobile device via a LAN.

17

18  **CLAIM 15**

19          Samsung contends that the "iPhone, iPad, iPad mini and iPod Touch are each wireless

20  mobile devices that can be coupled to a Central Device via WAN (i.e., the Internet)." However,

21  as discussed above, Samsung has failed to articulate how Home Share or iTunes Sync allows a

22  central storage and interface device to couple with a wireless mobile device over a wide area

23  network.

24          Apple identifies the following documents and other evidence to support its contentions

25  set forth for claims 1, 14, and 15 above:

26  •   Additional_Samsung630_Def_20120928/675-SamsungiTunes 2012-09-24

27  •   Additional_Samsung630_Def_20130520/1009-SourceDrop_13894940

28                                            - 181 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Dated:  July 15, 2013

*/s/ Mark D. Selwyn*
Mark D. Selwyn (CA SBN 244180)
(mark.selwyn@wilmerhale.com)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

*Attorneys for Plaintiff and*
*Counterclaim-Defendant Apple Inc.*

- 207 -

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## **CERTIFICATE OF SERVICE**

I, Andrew Liao, hereby certify that on July 15, 2013, a true and correct copy of the

foregoing document, Apple Inc.'s Further Supplemental Objections and Responses to Samsung's

First Set of Interrogatories (No. 12), was served on counsel for Samsung via electronic mail.

*/s/ Andrew Liao*
Andrew Liao