# Exhibit 9

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

**CONTAINS INFORMATION DESIGNATED AS APPLE, SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil Action No. 12-cv-00630-LHK |

**Expert Report of Richard Newton Taylor, Ph.D.
Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,577,757**

CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

at least one central storage and interface device, wherein audio, video, or photographic data, including content information and content management information, relating to at least one user, are stored in digital form; and

at least one zone, each zone having at least one zone specific storage and interface device capable of storing or interfacing with information stored in the central storage and interface device, wherein audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and interface device and the central storage and interface device, are updated in relation to the zone specific storage and interface devices and the central storage and interface device, whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.

14. The system of claim 1 wherein the central storage and interlace device is disposed to be coupled to a wireless mobile device via LAN.

15. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via WAN.

## VIII. Claim Constructions Used In This Expert Report

84.     I understand that the Court has construed the term "zone specific storage and interface device" to mean "a storage and interface device that resides in an area, such as a room or similar location." (Order Construing Disputed Claim Terms 38-45.) I understand that the Court has not construed any other word or phrase of the asserted claims of the '757 patent.

85.     I understand that Samsung has provided no construction for any term for this patent other than "plain meaning." I, likewise, have concluded that all other elements of the claims of the '757 patent should receive their plain meaning to one of ordinary skill in the art.

86.     However, from Samsung's infringement contentions and validity interrogatory responses, it is apparent that my understanding of the plain meaning of certain claim elements differs from Samsung's. In those instances where I understand there to be a difference, I have endeavored to set forth my understanding of Samsung's construction in this report. However, with respect to certain terms it is not possible to discern how Samsung could be construing the terms. For example, it is unclear how Samsung is construing "information," "interface," and "content information." (Samsung's Supplemental Responses to Apple's Fifth Set of Interrogatories (No. 38) ("Samsung's Validity Interrogatory Response" at 159-185, May 13,

CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1  2013.)  To the extent that I am unable to discern how Samsung's construction or Samsung's
2  expert's infringement report uses a "plain meaning" different from the meaning employed in
3  Samsung's infringement contentions as I have described it below, I reserve the right to
4  supplement this report to respond to Samsung's most current construction.

     **A.**     **"Interface" and "Interfacing"**

6       87.     Claim 1 of the '757 patent uses both the term "interface" and its gerund form
7  "interfacing."  A person of skill in the art would understand these terms to have their plain
8  meaning.

9       88.     There is nothing in the claims or specification of the '757 patent to suggest an
10  interpretation other than plain meaning.  The specification uses "interface" with respect to
11  communication (i) between the user (or device) and an output device (e.g., "interfaces for
12  television display, for audio amplification, as well as for infrared connections," '757 patent, col.
13  9:28-30), (ii) with a user (e.g., "menu driven interface," '757 patent, col. 6:6), and (iii) with
14  another storage and interface device (e.g., "interfacing with the information stored in the central
15  storage and interface device," '757 patent, col. 4:25-26).  In addition, the specification is
16  consistent with this plain meaning understanding of interface: "[I]t is desirous to have a
17  consumer digitally encode their entire audio, video, and photographic collections . . . and have
18  the entire collection synchronized automatically by having the devices *communicate to and*
19  *from each other* so that the content is available in multiple locations or zones." ('757 patent, col.
20  3:1-6 (emphasis added).)

21       **B.**     **"Information"**

22       89.     Claim 1 of the '757 patent uses the term "information" alone, as well as "content
23  information" and "content management information."  The claim also refers to "audio, video, or
24  photographic data."

25       90.     There is nothing in the claims or specification to suggest an interpretation of
26  "information" other than plain meaning, or to distinguish "information" from "data."  In the
27  claim itself the two terms are both used to refer to the digital multimedia collections being
28

**CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

1  synchronized.  The parent patent refers to "information" throughout the claims.  Shortly after the
2  '757 patent was filed, the first instance of "audio, video, and photographic information" was
3  amended to "audio, video, *or* photographic *data*"; however, the second instance of the same term
4  was not amended. (*See* Preliminary Amendment [SAMNDCA630-04259471] at 2.)  No
5  explanation was provided, and none is discernible from the specification.

      **C.**      **"Content Information"**

      91.      Claim 1 of the '757 patent includes the statement "audio, video, or photographic data, including content information and content management information," which uses the term "content information" as a subset of "audio, video, or photographic data."  This term, as used in the specification and file history, comports with the plain meaning of the term.  For example, the specification repeatedly refers to "content" as the substance of the multimedia data.  For example, "it is desirous to have a consumer digitally encode their entire audio, video, and photographic collections . . . and have the entire collection synchronized automatically by having the devices communicate to and from each other so that the *content* is available in multiple locations or zones." ('757 patent, col. 3:1-6).

      92.      ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (Carter Dep., 69:10 ("■■■■■■■■■■■■■■■■■■."); *id.*, 70:24-71:1 ("■■■■■■■■■■■■■■■■■■■■■■■■■■?"); Piech Dep., 84:8-14 ("■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■"), *id.* 85:14-20 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■").)

      **D.**      **"Content management information"**

- 32 -

93. Claim 1 of the '757 patent uses the term "content management information" as a subset of "audio, video, or photographic data." The specification gives "playlists" as an example of "content management information." (See, e.g., '757 patent, col. 9:62-65.)

94. The inventor testimony comports with the patent. (See, e.g., Carter Dep., 69:12-13 ███████████████████████████████████ id., 71:7 ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████"").

E. **"Audio, video, or photographic data . . . relating to at least one user"**

95. Claim 1 of the '757 patent uses the term "audio, video, or photographic data . . . relating to at least one user." Samsung appears to construe "audio, video, or photographic data . . . relating to a least one user" in a manner other than plain meaning so as to require both ███ ███████████████████████████████████ ████████████████" (See Samsung's Validity Interrogatory Response at 161; id. at 164.) I do not see anything in the patent or its file history that would suggest the plain meaning should be narrowed in this manner.

96. The phrase "at least one" means a system involving only one user meets the claim limitation. Indeed, the patent describes the operation of a single user system: "[I]t is desirous to have *a consumer* digitally encode their entire audio, video, and photographic collections to be stored on multimedia storage devices, and have the entire collection synchronized automatically by having the devices communicate to and from each other so that the content is available in multiple locations or zones that *the consumer* may go." ('757 patent, col. 3:1-7 (emphasis added).) In this system, the audio, video, and photographic collections relate to the consumer because the consumer encoded his or her collections and stored them on the devices in the system.

97. No "means of identifying" files are needed. Neither the patent nor the specification discloses any means for identifying which files are related to which users. The

word "identify" only appears once in the specification, and that is in relation to a prior art device identifying desirable programming. ('757 patent, col. 2:36.) Similarly, the plain meaning of "at least one user" is not "one particular user." Although there are two references to a "particular user" with respect to the prior art, and one reference to information "used by a particular user" in the flowchart related to the method claims that were dropped during the prosecution, the term simply does not appear in the claim.

## IX. Samsung's Claimed Priority Date

98. Samsung is alleging that ███████████████████████████████████████ ███ (*See* Samsung's Further Supplemental Responses to Apple's Second, Third, Fourth, Eighth, and Eleventh Sets of Interrogatories at 9-10.)

## X. Prior Art Anticipates the Asserted Claims of the '757 Patent

99. Although I have cited particular portions of the references discussed, these citations are intended to assist the reader in understanding the various bases and prior art teachings used in my conclusions. They are not intended to be an exhaustive recitation of every portion of these references in which these teachings may be found. A person of ordinary skill in the art would understand that the citations are merely exemplary, and that similar teachings may be found at other pages or places in the references discussed, as well as in other prior art references. Additional detail is provided in the claim charts attached hereto as exhibits C-E.

### A. Claims 1, 14, and 15 of the '757 patent are anticipated by U.S. Patent No. 7,587,446 to Onyon et al.

#### 1. Description of U.S. Patent No. 7,587,446

100. U.S. Patent No. 7,587,446 to Onyon et al. (the '446 patent) was filed on November 10, 2000, and issued on September 8, 2009. The '446 patent is entitled "Acquisition and Synchronization of Digital Media to a Personal Information Space." The '446 patent expressly incorporates by reference U.S. Patent No. 6,671,757 to Multer et al. ("the Multer patent"), which was filed on January 26, 2000, and issued December 30, 2003. The '757 (Multer) patent is titled "Data Transfer and Synchronization System." Both the '446 and Multer

**CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

and are therefore coupled to "User Device Including Media Data" 400. Upon a user request and as discussed above, media data is transferred from one device to another via synchronization.

*[Figure 4 diagram showing User Device Including Media Data (400) with uP 410, Data Including Media Data 415, Net Interface 420, connecting via Internet 250/308 to Storage Server(s) 200, Home PC, Office PC, Hand Held PC, and device 300 with Net Interface 325, uP 312, Volatile and/or Non-Volatile Storage 320, connected to car audio and stereo systems.]*

### 2. Opinions Regarding the '446 Patent

107. I have been informed and understand that the '446 patent qualifies as prior art because it was filed on November 10, 2000, which is before the alleged conception date of the '757 patent. ('446 Patent, cover page.) I also understand that the '446 patent was not cited by Samsung or located by the PTO during the prosecution of the '757 patent. Samsung does not dispute that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Samsung's Validity Interrogatory Response at 169-173.)

108. It is my opinion that the '446 patent anticipates claims 1, 14, and 15 of the '757 patent. For my analysis of the '446 patent, I applied the Court's claim construction for "zone specific storage and interface device" and the plain meaning for the remaining terms. The claim chart attached as exhibit C also sets forth how the '446 patent anticipates these claims.

**CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

133. It is my opinion that the '442 publication anticipates claims 1, 14, and 15 of the '757 patent. For my analysis of the '442 publication, I applied the Court's claim construction for "zone specific storage and interface device" and the plain meaning for the remaining terms. The claim chart attached as exhibit D also sets forth how the '442 publication anticipates these claims.

      (a)    "a system for synchronizing devices in a multimedia environment" [Claim 1]

134. The '442 publication discloses a system for synchronizing devices in a multimedia environment. (*See, e.g.*, '442 pub. at ¶ 9 ("The server computer 100 allows for synchronization and replication of a user's licensed assets with each of the user's media player devices 110."), Fig. 1.)

      (b)    "at least one central storage and interface device" [Claim 1]

135. The '442 publication discloses both a media player device and a server computer as central storage and interface devices.

136. The publication discloses a media player device that "may be a home consumer device that connects to a television or other monitor as well as a home stereo (amplifier/tuner, etc.) which in turn is connected to speakers, a personal computer (PC) (laptop or desktop), a vehicle-based electronic device, a portable media player device, or a wireless electronic device. An example of still another type of media player device 110 is a cable set-top box." ('442 Pub., at ¶ 11.) Fig. 2, below, shows a diagram of a media player device.

CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

151.　I have been informed and understand that the '704 patent qualifies as prior art because it was filed on October 5, 2000, which is before the alleged conception date of the '757 patent. ('704 patent, cover page.) I also understand that the '704 publication was not cited by Samsung or located by the PTO during the prosecution of the '757 patent. Samsung does not dispute that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Samsung's Validity Interrogatory Response at 173-176.)

152.　It is my opinion that the '704 patent anticipates claims 1, 14, and 15 of the '757 patent. For my analysis of the '704 patent, I applied the Court's construction of "zone specific storage and interface device" and apply plain meaning for the rest of the terms. The claim chart attached as exhibit E also sets forth how the '704 patent anticipates these claims.

　　　　(a)　"a system for synchronizing devices in a multimedia environment" [Claim 1]

153.　The '704 patent discloses a system for synchronizing devices in a multimedia environment. (See, e.g., '704 patent, title, abstract, col. 3:17-24 ("The portal 300 is [a] computer server or group of servers that functions to allow for the storage, stream and download of media assets to a media player 200. . . . The portal 300 allows for synchronization and replication of a user's licensed assets with each of the user's media player devices 200.").)

154.　Samsung contends that the '704 patent fails to disclose this limitation because it fails to disclose a system that "consists of multiple user devices." However, to the extent that synchronization of multiple devices is required, the '704 patent discloses multiple devices and complete two-way synchronization of multiple user devices with the central device, which would result in the assets on the user devices being synchronized. (See, e.g., '704 patent, Fig. 1, Fig. 2, Fig. 3; '704 patent, col. 10:28-10:42 (describing complete two-way synchronization between the user device and portal).)

　　　　(b)　"at least one central storage and interface device" [Claim 1]