# Exhibit 14

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation, | |
|      Plaintiff, | |
|      vs. | Civil Action No. 12-CV-00630-LHK |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
|      Defendants. | |
| | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
|      Counterclaim-Plaintiffs, | |
|      v. | |
| APPLE INC., a California corporation, | |
|      Counterclaim-Defendant. | |

**CORRECTED EXPERT REPORT OF JAMES A. STORER, PH.D.
REGARDING NON-INFRINGEMENT OF THE ASSERTED CLAIMS OF
U.S. PATENT NOS. 5,579,239 AND 6,226,449**

**VOLUME I**

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

**2.     Dr. Schonfeld Incorrectly States That The Inventors Did Not
Relinquish Any Claimed Subject Matter During Prosecution**

407.     ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████. I disagree with Dr.

Schonfeld's conclusions.

408.     ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████. The term "composite signal" replaced "audio and/or

video." █████████████████████████████████████

█████████████████████ I disagree.  The Court said that they *necessarily*

gave up audio alone or video alone when they amended to overcome the 112 rejection.  Claim

Construction Order [Docket No. 447] at 51 ("[C]onstruing "composite signal so broadly

completely disregards the Examiner's reason for initially rejecting Claim 1, which was to avoid

covering 'audio and/or visual signal' and thereby render the claim 'vague and indefinite.'").

409.     ███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████ I disagree.

410.     The examiner rejected claim 1 as obvious, citing Gattis, among others.  Gattis

discloses capturing, digitizing, and compressing video and transmitting that video using a

modem and telephone line, just like the '239 patent.  *See, e.g.*, Gattis at 3:63-5:7.  But the system

217

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

disclosed in Gattis does not store the video in a file because it is a videoconferencing system.

Rather, the system immediately transmits the frames without storing them in files, and indeed,

Gattis does not mention files.  The receiver in Gattis receives a full video so it can be played.

*See, e.g.,* Gattis at Abstract ("A teleconferencing system includes desktop computers, external

cameras and peripheral apparatus to allow interconnection of two or more terminals to engage in

teleconferencing via digital data networks."), 4:25-31 ("The encoded and compressed signals

may then be input to an encryptor 32A. The encryptor 32A is used if encryption is desired to

prevent unauthorized access to the signals being transmitted. After encryption, the signals to be

transmitted are then input to a modem 34A, which then performs the operations necessary to

send the signals on a telephone line."), Fig. 2.  The examiner also described Gattis as "#1 or #2

desktop computer 26A or 26B in combination with the video camera 22A or 228, the frame

grabber, the CODECs, the modem, and the encryptor/decryptor" – in other words, with very

similar hardware to that described in the '239 patent.  '239 File History, 8/2/95 Office Action

[SAMNDCA630-00832570] at 6-7.

411.    In response to the rejection, the applicants argued that Gattis in view of Dykes

and Guillou lacked the means for capturing, compressing, digitizing, storing, and transmitting at

least one composite signal as recited in claim 1.  Specifically, the applicants argued:

> The Gattis et al ('136) patent lacks a significant element contained
> within Applicants' independent claims 1 and 12 which is not
> supplied by Dykes et al or Guillou. . . .
>
> Significantly, Gattis et al as referenced on page 7 of the Office
> Action, and in column 3, line 67 – column 4, line 3, of Gattis,
> discloses the usage of a frame grabber 24A.  This device only
> contemplates an uninterrupted, continuous stream of information
> digitized on a line by line of resolution basis that ultimately
> represent a sequence of "pictures."  Gattis does not contemplate
> the creation of full-motion composite signal video information into
> digitized files which can be stored, transmitted, played or replayed.

218

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

> This is a very significant difference. . . . Thus, Gattis does not
> disclose the creation of a data file as required by Applicants'
> claims. . . .  [I]n Applicants' invention, full motion composite
> signal is captured into digitized files and transmitted over narrow
> (slow) and/or intermittent band widths while and still maintaining
> the original captured quality of the video.

'239 File History, 2/2/96 Amendment [SAMNDCA630-00832596] at 10-11.  The applicants

emphasized that the "significant difference" between claims 1 and 12 and Gattis was that "Gattis

does not contemplate the creation of full-motion composite signal video information into

digitized files which can be stored, transmitted, played or replayed."  *Id.*; *see also id.* at 11

("Gattis does not disclose the creation of a data file as required by Applicants' claims").  The

applicants also discussed claim 1 and claim 12 as if they had the same scope, even though claim

12 contained the "data file" limitation that claim 1 lacked.  *See id.* at 10 ("The Gattis et al ('136)

patent lacks a significant element contained within Applicants' independent claims 1 and 12

which is not supplied by Dykes et al or Guillou.").  Through these arguments and the similarity

between Gattis and the'239 patent, it is my opinion that the applicants relinquished the ability to

assert that at least claim 1 (and its dependent claims) cover any device that does not create a full-

motion composite signal video data file, such as the accused Apple products when running

FaceTime.[17]

      412.    In addition, I disagree with Dr. Schonfeld ████████████████████████

████████████ discloses a teleconferencing system including exactly that.  *See, e.g.,* Gattis at

Abstract ("A teleconferencing system includes desktop computers, external cameras and

peripheral apparatus to allow interconnection of two or more terminals to engage in

[17] ██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████

219

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

teleconferencing via digital data networks.").  In Gattis, live video is compressed and transmitted

from sender to receiver.  *See, e.g.,* Gattis at 4:15-31.[18]  Furthermore, unlike the '239 patent,

which claims  real-time compression but does not describe real-time transmission, Gattis

describes a real-time compression and transmission system.

413.    In this same amendment, Applicants also added asserted claim 15 (original claim

19), and asserted that "[t]he arguments contained herein in response to the rejections under 35

U.S.C. §112, 102(a), and 103 apply to new claims 16-20."  '239 File History, 2/2/96 Amendment

[SAMNDCA630-00832596] at 12.  In a second amendment on May 21, 1996, the applicants

reaffirmed that they were disclaiming video calls with similar language:  "The present invention

includes an apparatus capable of capturing a full-color, full motion composite signal in real time;

digitizing that composite signal ***into a data file***; compressing the data file and transmitting it

through a computer interface via telephone lines, cellular, radio, and other telemetric frequencies

from a remote unit to a host unit."  '239 File History, 5/21/96 Amendment [SAMNDCA630-

00832632] at 9 (emphasis added).  Thus, the applicants also relinquished the ability to assert that

claim 15 covers any device that does not create a full-motion composite signal video data file,

such as the accused Apple products when running FaceTime.

414.    This makes sense in the context of the '239 patent as it is replete with references

to storing the video in a data file before transmission, which is inconsistent with video

conferencing or video calls.  *See, e.g.*, '239 patent at Abstract, 2:26-31, 2:35-39, 2:46-58, 2:66 –

3:21, 3:29-60,  4:6-16, 4:41-45, 4:49-58, 4:62 – 5:6, 5:11-16, 5:21 – 6:18, 6:24-61, 7:4-10, 7:17-

---

[18]    Gattis also discloses using a "standard video signal" of "about 200,000 pixels," which is
consistent with NTSC signals.  Gattis at 4:5-7; *see also id*. at Background of the Invention
(discussing NTSC signals throughout).  The FirstLook Video system also captured NTSC
signals.  FirstLook Video Brochure [SAMNDCA630-00828677] at 1 ("NTSC, S-Video or PAL
input / output").

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

30, 8:13-30, 8:38-40, 8:46-49, 8:55-60, 9:3-29, 9:39-41, 9:46-48, 9:61-67, 10:4-61, 11:1-8, 11:11-32, 11:45-61, 12:5-8, 12:15-23, 12:27-34, 12:40-51.  For this same reason, I disagree with Dr. Schonfeld's assertion ██████████████████████████████████. Neither video conferencing nor "infinite" videos are described in the '239 patent.  Although the length of a video that is being recorded by a camera is not predetermined and can be captured by a video capture card, that video is still stored in a data file as it is captured and compressed. Once the recording stops, the file is then of determinate length.  It is then stored and can be played, replayed, edited, split, or transmitted.  That is all that is disclosed in the '239 patent, and it is in nearly every paragraph (see previous set of citations).

415.    The applicants also relinquished additional subject matter – i.e., devices without a video capture module that is not on or integrated into a video card – during prosecution of issued claim 15.  In response to the examiner's rejection of the claim 19 (issued claim 15) as obvious over U.S. Patent No. 5,253,275 (Yurt et al.) in view of Gattis et al. or U.S. Patent No. 5,375,068 (Palmer et al.), the applicants argued the importance of a video card having a video capture module to the invention:

> Real time capture is significantly different than the method described by Yurt.  Yurt contemplates a system which takes a video sequence such as a motion picture of known length characteristics and then subjecting that signal to a complex mathematical algorithm which captures, digitizes, and compresses that signal. This method disclosed by Yurt is very time consuming and requires complex and expensive hardware to accomplish.  As stated above, the Yurt disclosure contemplates a storage library of known files.  This library is precompressed (col. 7, line 47--col. 8, line 26). In the Yurt disclosure, it is desirable to perform this substantive precompression so as obtain a data file which is as small as possible so as to reduce transmission time.  Yurt does not disclose the use of a ***video card including a video capture module*** in order to accomplish its capture. The frame grabber methodology of Gattis and Palmer is likewise significantly different from ***a video card having a video capture module*** as recited in claim 19.

221

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

meeting, that fact does not change my opinion.  The video capture module on the video card

actually performs the capture.  It does not change what a video capture module is, as confirmed

by the patent and the file history.  There is no description in the patent of any other type of video

capture module.  Only a video capture module on a video card is described.[20]

### 3.    The '239 Patent Does Not Describe Video Calls or Streaming

418.   ███████████████████████████████████████████

███████████████████.  Not only did the applicants relinquish videoconferencing and

video calls during prosecution, as discussed above, the patent teaches away from this subject

matter.  As I also explained above, the '239 patent repeatedly describes transmitting a stored data

file, and not a video stream.  Indeed, the '239 patent's discussion that adding audio will require a

bigger file and require longer transmission time further supports that videoconferencing was not

contemplated because it would not be useful without audio.  *See* '239 patent at 5:46-51 ("Capture

with audio makes the data file longer since the audio signal must also be digitized, compressed,

and stored in the remote unit's hard disk.  It is evident that the longer the data file, the longer the

time required for transmission of the entire data file from the remote unit to the host unit.").  In

addition, the '239 patent's explanation that the remote unit could be used to edit the captured

video file, to store the captured video file on the hard drive, and to split the captured video file --

all are inconsistent with video calls.  *See, e.g.,* '239 patent at 3:6-7 ("After the video file has been

captured, it may be edited as desired prior to transmission to the host unit."); 3:3-6 ("A software

sequence then instructs the computer central processing unit to store the captured data file on the

---

[20] ████████████████████████████████████████████████
█████████████████████████████████████████████.  In any
event, as discussed above, in my opinion the claim cannot be broader than the what is described
in the patent or than what they argued to overcome the rejection over Gattis, Palmer, and Yurt.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

computer's hard disk drive."); 3:12-14 ("The data file is split and organized so as to reduce the

amount of time of transmission of the data file.").

419.    Figure 2 of the '239 patent also demonstrates that streaming and video calls are

not covered by the '239 patent.  As that figure indicates,

> [a]fter the video sequence is captured, it may be viewed, edited, or
> transferred to the host unit.  Each bit map file box 22 has a
> "VIEW" selection button 24 and a "TRANSFER" selection button
> 24.  Upon selection of "VIEW" button 24, a captured video data
> file may be retrieved from the remote hard disk and the video
> sequence run.  The video sequence is displayed in its respective bit
> map file box 22. . . .
>
> Selection of "TRANSFER" button 26 initiates the transfer software
> sequence B and the file splitting software sequence, discussed
> below.  The captured, digitized, and compressed data file is then
> automatically transmitted to the host unit.

'239 patent at 6:24-39.  These TRANSFER buttons are outlined in red below:

225

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION



*Fig. 2*

This figure also shows that "[t]he remote unit is capable of storing and displaying up to (8) bit map files." *Id*. at 5:29-31. The file history further shows the need to be able to replay a video file. For example, the applicants attempted to distinguish Gattis by arguing that "Gattis does not contemplate the creation of full-motion composite signal video information into digitized files which can be *stored*, transmitted, played or *replayed*. This is a very significant difference." '239 File History, 2/2/96 Amendment [SAMNDCA630-00832596] at 10-11 (emphasis added); *see also* '239 File History, 2/2/96 Aff. [SAMNDCA630-00832590] ¶ 2 (describing Ex. A and FirstLook Video product in Exs. C and D as "our invention"), Ex. C ("Just plug the camera into the unit, and you can edit the tape frame-by-frame with a mouse. . . . The average 15-second file takes two to three minutes to transmit"), Ex. D ("The system is capable of storing eight different clips of varying lengths in its database, all of which can be quickly retrieved and edited."). The

226

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

ability to edit and replay video and to save up to eight video clips are all inconsistent with streaming video and video calls, as is the need to select a TRANSFER button before the video is sent and the slow speed of the transmission.

420.    Conversely, there is no disclosure in the '239 patent of transmission of video as it is being captured and compressed, as would be required for video streaming, or any disclosure of two-way sending and receiving, as would be required by video calls.  There is no discussion of the host unit or any other receiving unit being able to send back a video.  In fact, the host unit does not even have the ability to participate in a video call, ██████████████████ – because it does not include the capture module.  ████████████████.  The '239 patent also does not disclose any software displaying video of the participants in the call on the remote unit and the host unit or for managing the call.

421.    The documents describing the named inventors' FirstLook Video product support this understanding.  The FirstLook Quick Start Guide provides step-by-step operating instructions for the FirstLook Video from power up, connecting a camera to a video capture cable to capture video, and clicking on a "Transfer" button to transfer any of the last eight recorded video clips back to the Host.  The Guide contains the same screen as shown in Figure 2 of the patent, with video clips in the VIEW screens:

227

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION



Fonet Quick Start Guide [SAMNDCA630-00832075] at SAMNDCA630-00832091.  The guide also describes how to transmit video:

## Sending a Video Clip

a.  To transfer any of the last eight (8) video clips back to the Host Unit, position the mouse pointer on the Transfer button directly beneath the desired clip and click the left mouse button once. This macroplexes the files and dials the Host Unit automatically, requiring no further interface by the user.

*Id*. at SAMNDCA630-00832095.  The FirstLook Video brochure describes how many minutes it took to transmit video clips – far longer than the video play time.  FirstLook Video Brochure [SAMNDCA630-00828677] at 1 ("Field Test Sample Results":  "Time delay video transfer over cellular of a 15-second clip at 7 frames per second – *5 minutes*").  All these disclosures are

228

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1.   **"means for capturing, digitizing, and compressing at least one composite signal" (claim 1)**

529.   The Court has construed this limitation as a means-plus-function limitation, in which the function is "capturing, digitizing, and compressing at least one composite signal" and the corresponding structure that performs this function is "an audio capture card and a video card having a video capture module."  Claim Construction Order [Docket No. 447] at 64.

530.   ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ As discussed in detail below, I disagree with Dr. Schonfeld.

274

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

531.    In Section VI.C. above, I described the components and operation of video and audio capture cards and image sensors.  As discussed in detail below, the accused products do not have capture cards or anything like them, nor do the accused components have the ability to perform the claimed functions.  ████████████████████████████

████████████████████████████████████████████

████  Although a video camera is disclosed in the specification, it is not part of the structure as construed by the Court that performs the function.  *See, e.g.*, '239 patent at Figure 1, 3:66-67 ("FIG. 1 depicts the components and the sequence of the process of the present invention."), 4:7-8 ("The drawings represent the present invention . . . ."), 4:28-32 ("A signal is input into remote unit 2 from any device having the capacity to output a video signal 1, such as a video camera, video cassette recorder/player, laser disc player, etc.  The video signal received by the remote unit can be of any generally known format, such as NTSC, PAL, and Y/C video (or S video)."), 4:39-41 ("The video signal input into the remote unit is received by a video card having a video capture module therein.  Such a card is available commercially from IBM/Intel."); *see also* '239 File History, 2/2/96 Aff. [SAMNDCA630-00832590] ¶ 2 (describing Ex. A as "our invention"), Ex. A (depicting video camera as distinct from the claimed remote unit).  The patent does not describe the function of the video camera.  *See* R. Freeman 6/18/13 Tr. at 148:6-12 (████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████  Yet Dr. Schonfeld never explains the patent's disclosures, or even mention whether the accused products can  perform the claimed functions in the way that the required captures do

275

(and as described in the patent).  Dr. Schonfeld is essentially attempting to eliminate the

requirement of an audio capture card and a video card having a video capture module.

> a)   *The accused products do not have an "audio capture card and video card having a video capture module" or equivalent structure*

532.    The accused iOS products do not have the required audio capture card or video

card having a video capture module.  As discussed above in Section VI.C.1, audio and video

capture cards are optional, add-on components that can be inserted into an expansion slot in a

computer to add video or audio (or both) capture functionality.  The iOS devices do not have any

expansion capabilities and are not shipped with audio or video capture cards, as evidenced by the

fact that none of the ███████████ for any of the accused products lists any capture cards (or

video capture modules).  *See, e.g.*, ████████████████████████████

████████████████████████████.  *See also*

http://www.apple.com/iphone/specs.html; http://www.apple.com/ipad-mini/specs/;

http://www.apple.com/ipad/specs/; http://www.apple.com/ipod-touch/specs.html. ████████

██████████████████████████████

533.    Nor do the accused components in the accused iOS devices constitute an audio

capture card.  First, none of the accused components – ████████████████████

█████████████████████████████████ and

applications processor ██████████████████████████

████████████ is an audio capture card. ██████████████████

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

As discussed above in Section VI.C.1, an audio capture card is an optional, add-on component for computers. It is installed in an expansion slot of the motherboard of a computer and contains all the hardware needed to add specialized functionality to the computer – namely, the ability to capture, digitize, and compress audio signals from an analog device and decompress and play those audio signals. An audio capture card connects to the motherboard and therefore is a distinct component; it is not also a motherboard. As shown in the images of audio capture cards in Section VI.C.1 above, an audio capture card adds external connectors to the device to allow connection to an audio source. In contrast, and the other accused components are not the same structure as an audio capture card. The

. Moreover, as discussed in detail below in Section VI.G.1.b, the accused components are not capable of performing the capture, digitization, and compression function of an audio capture card. To the extent the audio codec and audio subsystem are accused as an audio capture card

30

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

██████████ (either with or without the microphone), they do not form an audio capture card

for the similar reasons:  they are not add-on components, do not provide the connectors required

for audio capture, and do not perform the claimed functions (as discussed in detail below in

Section VI.G.1.b.).

534.    The fact that the collection of components are not audio capture cards can also be

illustrated by viewing the components.  For the iPhone 5, there are ██████████

███████████████████████████████████

███ The other two components – ██████████████████████

████████████████



CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

Only a portion of the SOC is accused.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

██████████████████████████████████████████████████.  This collection of components and portion of the main processor is not an audio capture card.  In addition to the reasons already discussed, an audio capture card includes components for capture and playback functionality, and does not have functions unrelated to audio capture, digitization, or compression on it.  Nor does an audio capture card contain a general purpose processor, such as the SOC.  *See, e.g.,* ███████████████████████████████████████████ ██████████████████████████████  Dr. Schonfeld does not even attempt to explain how these components (and subcomponents), scattered throughout the product with many components between them, form an audio capture card.

535.    The same is true of the components in the accused products that allegedly constitute a "video card having a video capture module."  None of the accused components – a ███████████████████████████████████████████████ that includes . . . ████████████████████████████████████ – is a video card having a video capture module.  █████████████████████████████████████ ████████████████████████████ discussed above in Section VI.C.1, a video capture card is an optional, add-on component for computers.  It is installed in an expansion slot of the motherboard of a computer and contains all the hardware needed to add specialized functionality to the computer – namely, the ability to capture, digitize, and compress video signals from an analog device and decompress and play those video signals.  A video capture card connects to the motherboard and therefore is a distinct component; it is not also a motherboard.  As shown in the images of video capture cards above, the card adds external connectors to the device to allow connection to the video source device.  In contrast, ████████████ ███████████████████████████ and the other accused components are not the same

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

structure as a video card having a video capture module for the same reasons discussed in

connection with "audio capture card."  Moreover, as discussed in detail above in Section

VI.G.1.b, the accused components are not capable of performing the capture, digitization, and

compression function of a video capture card.  To the extent the image sensor and ███████

are accused of being a video card having a video capture card without ████████████, they

do not form an audio capture card for the similar reasons:  they are not add-on components, do

not provide the connectors required for video capture, and do not perform the claimed functions

(as discussed in detail below in Section VI.G.1.b).

536.    The fact that the collection of components are not video capture cards can also be

illustrated by viewing the components. ████████████████████

█████████████████████████████

█████████████████████████████

███

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION



CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

284

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1   addition to the reasons already discussed, a video capture card includes components for capture

2   and playback functionality, and does not have components unrelated to capture, digitization, and

3   compression on it.  Nor does a video capture card contain a general purpose processor, such as

4   the SOC.  *See, e.g.,* ███████████████████████████████

5   ████████████████████████  Dr. Schonfeld does not even attempt to

6   explain how these components (and subcomponents), scattered throughout the product with

7   many components between them, form a video card having a video capture module.[31]

8
9        537.    For each of these reasons, the accused components are not the same structure

10   required by claim 1, namely an audio capture card and a video card having a video capture

11   module.

12        538.    The accused components are also not structures equivalent to an audio capture

13   card and a video card having a video capture module because they do not perform the identical

14   function of the limitation in substantially the same way as the required structure to achieve

15   substantially the same result.  First, the accused components were not available at the time of the

16   invention.  For example, the technology was not yet available in 1994 to integrate a camera into

17   a handheld device.  *See* Boss 6/19/13 Tr. at 157:25-158:9 ████████████████████

18   ██████████████████████████████████

19   Moreover, digital video cameras that compressed video had just been introduced, and also were

20   not yet integrated into computers or handheld devices.  It is my understanding that because the

21
22
---
23   [31] ████████████████████████████████
24   ████████████████████████████████████
25   ██████████████████████

26                                     285

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

accused products use after-arising technology, they cannot literally infringe, even as equivalent structure.

539.     In addition, for the reasons discussed above in Section VI.G.1.b, the accused components are incapable of performing the identical function of "capturing, digitizing, and compressing at least one composite signal."

540.     Moreover, the accused components do not perform any function in substantially the same way as the audio and video capture cards.  As already discussed, each row of photodetectors in the image sensor captures light that is immediately digitized by each analog-to-digital converter associated with each pixel column.  This process occurs on a rolling basis – that is, a row may be digitizing while the next row is being captured.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The microphone captures sound, converts the sound into electrical signals, and sends them to the audio codec to be digitized.  The image sensor and microphone do not capture any kind of analog electrical signal, and none of the components captures a composite signal.  In contrast, the claimed composite signal is captured by connecting a computer to an external video source.  The video and audio capture cards first capture and digitize a complete image (a frame) and associated audio from the analog electrical signal (the composite signal) into random access memory in the computer by the video and audio capture cards, and then compresses the frame of video.  *See, e.g.,* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These differences are substantial, as shown by the fact that the '239 patent itself discloses both a video camera and the video and audio capture

286

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

cards:  there would be no need to disclose both if they performed the same or equivalent

function.

> b)   *The accused components do not perform the function of
> "capturing, digitizing, and compressing at least one composite
> signal"*

541.   The accused components in the accused iOS devices do not perform the function

of "capturing, digitizing, and compressing at least one composite signal" because they cannot

capture a composite signal.  A person of ordinary skill in the art would understand "capture" to

mean to receive information as an input into the device.  That is what the patent describes.  For

example, the '239 patent describes the process of "capturing" as receiving a composite signal

into the video capture card and audio capture card in the mobile remote unit "from any device

having the capacity to output a video signal 1, such as a video camera, video cassette

recorder/player, laser disc player, etc."  '239 patent at 4:28-32; *see also id*. at 4:39-40 ("The

video signal input into the remote unit is received by a video card having a video capture module

therein."), 2:59-61 ("In one preferred embodiment, an audio/visual signal is input into the remote

unit from a video camera at a remote location."), 5:44-46 ("An audio capture card installed in the

remote unit captures the audio of an input signal."); *see also* R. Freeman 6/18/13 Tr. at 91:3-11,

94:20-95:19 ██████████████████████████████████████████████

████████████████████████████████████████).  The input is the composite

signal, which is an analog electrical signal with both video and audio components, such as those

that conform to a standard such as NTSC.  *See* '239 File History, 2/2/96 Amend.

[SAMNDCA630-00832596] at 6 ("The term 'composite signal' is generally known to mean a

signal which includes components such as audio and/or video.  With regard to the present

invention, the composite signal which is captured by the remote unit may have both audio and

287

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

video components as is commonly known to be a 'composite signal.'"); '239 patent at claim 1 (requiring digitization of the composite signal). The composite signal is an analog electrical signal created and output by the "device having the capacity to output video signal 1," such as the image sensor in the video camera. '239 patent at Abstract ("The audio/visual signal can either be NTSC, PAL, or Y/C."), 2:26-28 ("It is the purpose of the present invention to provide a method and means for capturing full-color, full-motion audio/video signals . . ."), 4:31-34 ("The video signal received by the remote unit can be of any generally known format, such as NTSC, PAL, and Y/C video (or S video)."); ████████████████████████████████

████████████████████████████████████████ That analog electrical signal is received by the video and audio capture cards in the mobile remote unit when the video camera is attached to the unit. As discussed above in Section VI.C.1, this is how video and audio capture cards work. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████

542.    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

█████████████████████████ The only accused components that receive any kind of input into the accused device that will eventually become part of a video are the image sensor and the microphone, and neither receives a composite signal

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

as input.  A person of ordinary skill in the art would understand that an image sensor receives

light and a microphone receives sound.  As discussed above in Section VI.C.2, an image sensor

has an array of pixels containing photodetectors that samples a scene by scanning the scene and

capturing light, converting the light at each pixel into a voltage representing the pixel value, and

converting the voltage to a digital signal, one row at a time.  7/17/13 Cheng Tr. at 9:14-12:8

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████Sasson

7/31/13 Tr. at 170:13-171:10; Millet Tr. at 14:13-21 ████████████████████).

543.    The light and sound received by the accused components are not "composite

signals."  Composite signals are well known.  A "composite signal" is an analog electrical signal

that represents the series of frames that make up a full-motion video, as well as the audio

component.  Known composite signal standard formats are NTSC (National Television System

Committee), which is the analog television standard used in the United States, and PAL (Phase

Alternating Line), which is the analog television standard in other countries.  The patent explains

that the signal received by the audio and video capture cards can be one of these formats or S-

video.  *See, e.g.*, '239 patent at Abstract ("The audio/visual signal can either be NTSC, PAL, or

Y/C."), 2:26-28 ("It is the purpose of the present invention to provide a method and means for

capturing full-color, full-motion audio/video signals . . ."), 4:31-34 ("The video signal received

by the remote unit can be of any generally known format, such as NTSC, PAL, and Y/C video

(or S video).").  *See also* '239 File History, 2/2/96 Affidavit [SAMNDCA630-00832590] ¶ 2

(describing invention as an apparatus that captures, digitizes and compresses a "full motion

composite signal"), claims 1 and 9 (requiring digitization of the composite signal); '239 File

289

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

History, 2/2/96 Affidavit, SAMNDCA630-00832592] at Ex. A ("Remote unit digitizes and

compresses video/audio NTSC signal"), 2/2/96 Amend. at [SAMNDCA630-00832596] at 6

("With regard to the present invention, the composite signal which is captured by the remote unit

may have both audio and video components as is commonly known to be a 'composite signal.'");

Claim Construction Order [Docket No. 447] at 51-52 (requiring composite signal to have both

video and audio components); Microsoft Press Computer Dictionary [APL630DEF-WH-

A0000036852] at 54.  A composite signal is a viewable image output from a video source, such

as a video camera or VCR.  *See* Sasson 7/31/13 Tr. at 165: 7-20, 171:16-172:17; '239 File

History, 5/21/96 Amend. [SAMNDCA630-00832632] at 11 (arguing that real-time capture

includes "capture of a composite signal previously stored").[32]  In contrast, the light received and

output by an image sensor is not a viewable image.  The light is contained in photons, which

become a voltage at each photodiode site that represents a pixel value.  Each row of charges is

converted into a digital stream and sent to the ISP one by one.  At no time during this process is

there ever a viewable frame represented by analog signals.  For audio capture, the microphone

captures the sound accompanying the scene and then converts that sound into electrical signals.

The audio codec then converts the electrical signals to a digital signal.  *See* ███████

████████████████████████████████████████████

████████████████████  For these reasons, the function of "capturing" using an image

sensor and a microphone is very different from capturing a composite signal.

---

[32]     The fact that a composite signal represents viewable frames is inherent in the fact that it
is produced by a video camera, VCR, or other video output device.  The inventors also
acknowledged this when stated during prosecution that real-time capture includes "capture of a
composite signal previously stored."  '239 File History, 5/21/96 Amend. [SAMNDCA630-
00832632] at 11.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

544.

545.    For each of these reasons, the accused components do not perform the claimed

function and therefore do not infringe claim 1.

> c)    *The accused components do not meet this limitation under the
> doctrine of equivalents*

546.    The accused components also do not perform the same or substantially the same

function of "capturing, digitizing, and compressing at least one composite signal" under the

doctrine of equivalents.  First, as discussed at length above, the accused image sensors capture

light (photons), and the accused microphone captures sound, neither of which is part of a

composite signal.  The image sensor and microphones cannot capture a composite signal nor do

they create a composite signal.  A composite signal is an analog electrical signal that represents

291

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

viewable video frames output from an analog video source such as a video camera or VCR, whereas no video yet exists when the image sensor and microphone capture photons and sound waves. These differences are substantial, as shown by the fact that the '239 patent itself discloses both a video camera and the video and audio capture cards:  there would be no need to disclose both if they performed the same or equivalent function.

547.    Moreover, for the reasons just discussed in the previous section, the accused components do not perform any function in substantially the same way as the audio and video capture cards or achieve substantially the same result.

548.    In addition, Samsung is estopped from asserting the doctrine of equivalents with respect to FaceTime.  As discussed above in Section VI.D.2, during prosecution, the examiner rejected claim 1 as obvious light of Gattis, Dykes, and Guillou.  Gattis discloses "[a] teleconferencing system include[ing] desktop computers, external cameras and [p]eripheral apparatus to allow interconnection of two or more terminals to engage in teleconferencing via digital data networks."  U.S. Patent No. 5,062,136 ("Gattis") at Abstract.  The "video signal" received by the computer in Gattis is digitized, compressed and transmitted in "a continuous fixed rate binary digital data stream" without creating a data file.  *Id*. at 3:33-44, 5:36-37.  The applicants argued that:

> The Gattis et al ('136) patent lacks a significant element contained within Applicants' independent claims 1 and 12 which is not supplied by Dykes or Guillou. . . . .
>
> Gattis does not contemplate the creation of full-motion composite signal video information into ***digitized files which can be stored, transmitted, played or replayed***.  This is a ***very significant difference***. . . . Thus, Gattis does not disclose the creation of a data file as required by Applicants' claims. . . .  [I]n Applicants' inventions, full motion composite signal ***is captured into digitized files*** and transmitted over narrow (slow) and/or intermittent band

292

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

widths while and still maintaining the original captured quality of
the video.

'239 File History, 2/2/96 Amendment [SAMNDCA630-00832596] at 10-11 (emphasis added).

Through these arguments, the applicants relinquished the ability to assert that at least claim 1

(and its dependent claims) cover any device that does not create a full-motion composite signal

video data file that can be "stored, transmitted, played or replayed," such as the accused Apple

products when running FaceTime.  As discussed in Section VI.F.4, FaceTime creates packets

containing the video frames (or portions thereof) and audio, not files, and discards them

immediately after sending so they cannot be replayed.

> d)  *Dr. Schonfeld has failed to demonstrate that the accused products*
> *have an "audio capture card and a video card having a video*
> *capture module" or equivalent structure*

549.    Dr. Schonfeld has failed to identify an audio capture card or a video card having a

video capture module in any of the accused products.  Although he baldly states that "the '239

Accused Products have an audio capture card and video card having a video capture module," he

does not cite any evidence of any such card. ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ He states that

these components are the required cards, but he does not explain why they are cards, cite any

evidence that they perform the same function as the cards, or even show them. ████████████

█████████████████████████████████████████████████████████

---

[33] It is unclear whether Dr. Schonfeld intends to include a microphone as an accused component.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

███████████████████████████████████████████████████████

███████████████████████████████████ Dr. Schonfeld never identifies

any processor in the Mac computers, never identifies the "graphics unit" in any Mac computer,

and never explains how they are purportedly the required cards.  Nor could he – the accused

components are not cards, as explained above.  Moreover, Dr. Schonfeld does not identify any

Mac hardware component that performs audio compression.  As discussed above, Macs perform

audio compression entirely in software.

550.    Rather than limit his analysis to what audio capture cards and video capture cards

are and how they operate, █████████████████████████████████████

████████████████████ – as demonstrated by the fact that the '239 patent

discloses both a video camera and capture cards but only describes the cards as performing the

capture, digitization, and compression functions.  As discussed above in Section VI.C.1 (and as

is clear from the patent), the terms "audio capture card" and "video card having a video capture

module" refer to well-known, specific components that perform specialized functions, and they

are required structure.  The terms are not merely labels that they can be applied to any collection

██████████████████████████

███  ████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████.  It is not a

specialized, optional card as the required cards are, and it is not removable.  For these same

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1   reasons, the fact that the accused components are either on or connected to ███████████

2   ███████████████████████████████████████

3       552.    Dr. Schonfeld has also failed to demonstrate that the accused components are

4   equivalent structures to the required cards. ████████████████████████████

5   ███████████████████████████████████████████

6   ███████████████████████████████████████

7                               I also disagree with his conclusions.

8       553.    As an initial matter, it is my understanding that Samsung is barred from asserting

9   that the accused components are equivalent structure because the components are after-arising

10  technology.[34]  As discussed above, the accused camera modules and image sensors were not

11  available at the time of the invention, and therefore constitute after-arising technology that

12  cannot literally infringe as equivalent structure.

13      554.    Nor are Dr. Schonfeld's other assertions correct. ████████████████

14  ███████████████████████████████████████████

15  ███████████████████████████████████████

16  ████████████  This is improper:  Dr. Schonfeld must identify the purportedly equivalent structure

17  and demonstrate that it is an equivalent.  He has not done so.  Second, it is my understanding that

18  this is the wrong test for showing literal infringement by structural equivalents:  the accused

19  components must perform the identical function.  Dr. Schonfeld has not even attempted to show

20  ───────────────────

21  [34]     The Court recognized this issue in the claim construction order and in the order on
    Samsung's Motion for Leave to File Amended Infringement Contentions.  *See* Claim
22  Construction Order [Docket No. 447] at 60, n.13; Order re Motion for Leave [Docket No. 636] at
    14, n.36 ("The Court notes that . . . [Samsung] does not specify whether it believes the
23  components existed at the time of the patent issuance or are after-arising."), 17, n.44 ("Samsung
    again fails to explain whether it believes the components were in existence at the time of the
24  patent issuance or were after-arising.").

25

26

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

that the accused components perform the identical function as the claimed cards.  Moreover, as

discussed above, the accused components do not perform the identical function as the claimed

cards. ███████████████████████████████████████████

████████████████████████████████

555.   ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

As with his other literal infringement discussion, Dr. Schonfeld provides no explanation or

evidence to support this conclusion.  He does not even assert that the accused *components*

perform the claimed substantially the same way, relying instead on the accused *products*.  I also

disagree with this conclusion.  As discussed at length above in Section G.1.b, the accused

components (and the accused products) do not perform the claimed functions at all, and the

functions Dr. Schonfeld has identified are performed very differently from the functions

performed by required cards.[35]  The accused components perform camera functions – described

above – and do not have the ability to capture a composite signal from an analog video device

and digitize and compress that signal.

556.   Finally, ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████ Again,

---

[35]      As already mentioned, video capture cards do not perform camera functions and audio
capture cards do not perform the functions of a microphone.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

Dr. Schonfeld provides no explanation or evidence to support this conclusion.  He is also wrong – as discussed above in Sections VI.C. and VI.G.1b, the accused components capture very different information than the audio capture card and video card having a video capture module, and therefore produce very different results.  Dr. Schonfeld has not shown otherwise.

> e) *Dr. Schonfeld has failed to demonstrate that the accused components perform the function of "capturing, digitizing, and compressing at least one composite signal"*

557.   Dr. Schonfeld has also failed to demonstrate that any accused component performs the identical function of "capturing, digitizing, and compressing at least one composite signal" for several reasons.  First, he has not identified any evidence that contradicts any of the facts discussed above, or cited any evidence that the accused components perform the same "capture" function as the required capture cards.  Indeed, the evidence he cites in other parts of his report supports my opinion, not his.  Dr. Schonfeld even describes the accused image sensor and required video capture card as having different functions and inputs.  Because he admits that the accused components perform functions different from the required components, Dr. Schonfeld cannot demonstrate that the accused products literally infringe claim 1 of the '239 patent.

558.   Dr. Schonfeld's infringement "analysis" for this limitation is fundamentally flawed ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████        *See* '239 patent at 4:28-32, Figure 1; Claim Construction Order [Docket No. 447] at 64.  In other words, he is treating the structure as requiring a video camera while ignoring the capture cards.  This approach is impermissible.  The Court has already

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

construed this limitation to require an audio capture card and a video card having a video capture

module.  Thus, any infringement analysis must compare the accused components to the functions

of the required structure.  But Dr. Schonfeld never even discusses how capture cards perform the

claimed functions.[36]

559.  ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  I disagree:  that is not the claimed function.  Rather,

the claim function is "capturing, digitizing, and compressing *at least one* composite signal."

Because a composite signal that does not already exist cannot be captured, I understand the term

"at least one composite signal" to mean that the composite signal must already have been

formed.  This understanding is consistent with the patent's description of "capturing" as

receiving a composite signal into the mobile remote unit "from any device having the capacity to

output a video signal 1, such as a video camera, video cassette recorder/player, laser disc player,

etc." '239 patent at 4:28-32; *see also id*. at 4:39-40 ("The video signal input into the remote unit

is received by a video card having a video capture module therein."), 2:59-61 ("In one preferred

embodiment, an audio/visual signal is input into the remote unit from a video camera at a remote

location."), 5:44-46 ("An audio capture card installed in the remote unit captures the audio of an

input signal.").  Moreover, the patent does not describe "forming" a composite signal.  Dr.

---

[36]    Because these components are distinct from a video camera and the video camera is not
part of the required structure that performs the claimed function, the functions of the video
camera are irrelevant.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1   Schonfeld cannot prove that the accused components perform the claimed function by rewriting

2   the function.

3          560.    Dr. Schonfeld has failed to demonstrate that the accused components can capture

4   a composite signal. ██████████████████████████████████████████

5   ███████████████████████████████████████████

6   ████████████████████████████████████████████

7   ████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████

9

10  ███████████████████████████, Dr. Schonfeld does not describe the "audio

11  signal" and "video signal" he refers to in these sentences.  To the extent "audio signal" means the

12  audio portion of the composite signal and "video signal" means the video portion of the

13  composite signal, I disagree with his statements.  Second, as discussed above in Section

14  VI.G.1.a, the image sensor captures light and the microphone captures sound waves – ████

15  █████████████████████████████████████████████

16  █████████████████

17         561.    Dr. Schonfeld also misstates the function of the accused components. ████

18  █████████████████████████████████████████████

19  █████████████████████████████████████████████

20  ████████████████████████████████████████

21  ████████████████  This is incorrect.  Unlike a video capture card, the image sensor does

22  not capture a "video frame that is recorded":  it captures the light representing a scene during

23  each exposure period. ████████████████████████████████████

24  ████████████████████████████████████████████████████

25

26

███. Again, I disagree.  As discussed above, the only components that capture any information

that can become part of a video into the device are the image sensor and a microphone, and they

are not capable of capturing a composite signal as the claim requires.  The main processor does

not receive an analog electrical signal representing the video – i.e., "capture" a "composite

signal" – as required by the claim.  To the extent the main processor receives any information

that will become part of a video, it is received from another component and it is already

digitized.

      *f)*      *Dr. Schonfeld has failed to rebut Apple's non-infringement
contentions or to demonstrate that the accused components meet
this limitation under the doctrine of equivalents*

562. ███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████.  Dr. Schonfeld has failed to rebut Apple's non-infringement

contentions.  In many cases, he does not even address Apple's argument, and in others, he

mischaracterizes Apple's contention.  For example, Samsung's infringement contentions failed

to provide any means-plus-function analysis for the many means-plus-function terms that have

not been construed by the Court. ███████████████████

███████████████████████████████

███████████████████████████████

███████.  He does the same for many other contentions, ███████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

I disagree – the Court's identification of an audio capture card and a video card having a video capture module requires exactly those characteristics.  As I discussed in detail above in Section VI.C.1, these cards are add-on components that receive input from an external device.  The patent itself describes them in this manner, and Dr. Schonfeld has not identified any evidence to contrary.  Moreover, as described below,

564.    Where Dr. Schonfeld does address Apple's arguments, he fails to rebut those arguments and often contradicts the patent, the file history, the Court's claim construction, and his own report.  Many of Dr. Schonfeld's arguments are also unclear and contradictory.

565.    For example, in response to Apple's argument that the accused components do not perform the identical function of the required capture cards,

301

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1  ████████████████████████████████. Dr. Schonfeld is incorrect: the Court only

2  construe the term "means for capturing, digitizing, and compressing at least one composite

3  signal" and "means for transmitting said composite signal," and did not construe the term

4  "capture."

5       566.    Moreover, █████████████████████████████████

6  ██████████████████████████████████████████████████

7  ██████████████████████████████. Rather, Apple merely stated what the patent

8  describes and what video and audio capture cards do – capture analog audio and video signals as

9  input *from* a video source such a video camera or VCR.  Neither Apple nor I suggest any

10 "specialized meaning" of any term.  Apple and I have applied the plain meaning of the term

11 "capture" and the Court's construction requiring an audio capture card and video card having a

12 video capture card to perform the claimed functions.  That plain meaning merely reflects how

13 capture cards work, ████████████████████████████

14       567.    ██████████████████████████████████

15 ██████████████████████████████████████████████████

16 ██████████████████████████████████████████████████

17 ██████████████████████████████████████████████████

18 ██████████████████████████████████████████████████

19 ████████████████████████████████ But it also irrelevant: the Court's

20 construction required an audio capture card and a video card having a video capture module.

21 The video camera – which is disclosed in the fpatent and presumably also has a microphone – is

22 not part of the structure required by the Court's construction to perform the claimed functions.

23 Samsung never requested inclusion of the video camera in the structure, nor does Dr. Schonfeld

24

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1  cite anything in the specification or provide any explanation why the video camera (and its

2  image sensor and microphone) has any relevance to the required structure.  He simply ignores

3  the required structure and attempts to rewrite the construction to require completely different

4  components.  It is also unclear how the fact that the patent describes an external camera and

5  microphone supports Dr. Schonfeld's opinions.  He does not say.

6      568.

7

8

9                First, I disagree with the statement that

10

11

12                The camera module in the accused devices contains a lens and the

13  image sensor, and the ISP connects to the camera module.

14

15                                                              The image sensor captures light

16  through the lens.

17

18

19

20

21

22

23

24

25                                          Dr. Schonfeld does not explain how the image sensor

26                                   303

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1   can capture from itself.  Second, as discussed above in Sections VI.C. and VI.G.1.a-b, the image

2   sensor and microphone do not capture video or a composite signal as required by the claim.

3   Finally, I do not understand the relevance of Dr. Schonfeld's assertion ██████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   ██████  Apple made no such assertion.

7        569.  ████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████████████████████

12  ██████  Again, I do not understand what Dr. Schonfeld means by this statement.  First, Apple has

13  never argued that a "completely separate recording device" is part of the claim.  Second, the

14  structure required by the Court's claim construction is an audio capture card and a video card

15  having a video capture module to perform the claimed function.  For this reason, ██████████

16  ████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████  █  ████████████████████████████████████████

19  ████████████████████████████████████████████████████

20       570.  ████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████████████████████, he

22

23  ──────────────────
    [37] ████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████  other devices that do not have these

    components are also described in the patent, including a VCR and laser disc player.  *See* '239

25  patent at 4:28-31.

26                                          304

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

has failed to demonstrate that the accused components meet this limitation under the doctrine of

equivalents.  First, Dr. Schonfeld's "analysis" has several errors and omissions. ████████

████████████████████████████████████████████████████████████████████████

████████████  I disagree.  The image sensor and microphone capture light and sound from

a live scene, not from any recording device.  For this same reason, his statement ████████

████████████████████████████████████████████████  incorrect.  Dr.

Schonfeld also asserts that ████████████████████████████████████████████

but fails to explain how the *accused components* compare to the required structure.  Nor does

Dr. Schonfeld explain how the accused components capture the "composite signal," a claim term

that he does not mention.  Finally, his statement that ████████████████████████

████████████████████████████████████████████████████████

████████████████████████  is irrelevant to the question of the whether the

accused components are equivalent to the required capture cards.  Second, for the reasons

discussed above in Section VI.G.1.a-b, the accused components do not meet this limitation under

the doctrine of equivalents.

571.    With respect to the term "composite signal," ████████████████████

████████████████████████████████████████████████████████

████████████████  Neither assertion is correct.  As discussed above, "composite

signal" is a well-known concept.  A composite signal is an analog electrical signal with both

video and audio components, such as those that conform to a standard such as NTSC.  '239 File

History, 2/2/96 Amend. [SAMNDCA630-00832596] at 6 ("The term 'composite signal' is

generally known to mean a signal which includes components such as audio and/or video.  With

regard to the present invention, the composite signal which is captured by the remote unit may

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1   have both audio and video components as is commonly known to be a 'composite signal.'").

2   Composite signals are output by video devices such as video cameras and VCRs, and are

3   viewable images.  Notably, Dr. Schonfeld does not explain what he understands the term

4   "composite signal" to mean.

5        572.   ████████████████████████████████

6   ████████████████████████████████████████████

7   ████████████████████████████████████

8   ██████████████████████████████.  Dr. Schonfeld is incorrect.  First, there

9   is no single voltage that represents the video.  As discussed above, each photodiode contains a

10  voltage representing a pixel value.  In addition, I disagree with Dr. Schonfeld's conclusion for

11  the reasons discussed throughout this report.  In fact, Dr. Schonfeld does not even mention any

12  of the required components of the analysis, including "composite signal," audio capture card, or

13  video card having a video capture module, much less explain how they exist in the accused

14  products.

15       573.   ████████████████████

16



23  But Dr. Schonfeld provides no analysis or support whatsoever for his assertions.  He does not

24  even identify the accused components, referring instead to "accused products," "accused

25

26                                    306

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

functionality," and "they."  And again, Dr. Schonfeld does not even mention any of the required

components of the analysis, including "composite signal," audio capture card, or video card

having a video capture module, much less explain how they exist in the accused products.  It is

impossible to know what Dr. Schonfeld is comparing.  In any event, I disagree with Dr.

Schonfeld's conclusions.  As already discussed, the accused components do not "receive a digital

signal recorded by a camera."  Moreover, the accused components do not infringe under the

doctrine of equivalents, as discussed in Section VI.G.1.C.  For these same reasons, ███████████

████████████████████████████████████████████████████████

███████████████████████████████████

574.  █████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  I disagree.  First, the applicants

actually confirmed during prosecution that a composite signal could have both audio and video

components when they argued that with regard to the present invention, the composite signal

which is captured by the remote unit may have both audio and video components as is commonly

known to be a 'composite signal.'"  *See* '239 File History, 2/2/96 Amend. [SAMNDCA630-

00832596] at 6.  Second, although the Court did not construe the term "composite signal," the

Court expressly rejected Samsung's argument that the composite signal need only contain audio

*or* video.  Claim Construction Order [Docket No. 447] at 51.  Finally, ████████████████

███████████████████████████████████████████

████  .  In fact, it was known in the art at the time of the invention that a single capture card (such

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1   as an ActionMedia II Capture Module, discussed above in Section VI.C.1,) could capture both

2   video and audio signals.  In any event, even if Dr. Schonfeld is correct ███████████████

3   ███████████████████████████ he has still failed to prove infringement by the accused

4   components for the same reasons already discussed.  In fact, Dr. Schonfeld does not even

5   identify two distinct sets of components – ███████████████████████████████████

6   ██████

7           575.   ███████████████████████████████████████

8   ███████████████████████████████████████████████

9   ███████████████████████   I disagree.  First, Dr. Schonfeld misquotes the

10  claim:  the claim requires the function of "digiti*zing*," ███████████████████████

11  There is no need to digitize a signal that is not analog.  Second, Dr. Schonfeld again ignores the

12  term "composite signal," which is an analog signal, as explained above.  As with most of his

13  opinions, Dr. Schonfeld never explains the meaning of this term. █████████████████

14  ███████████████████████████   I disagree: the image sensor

15  captures light, and converts the light in each pixel into a voltage representing the pixel value, as

16  discussed above.

17

18          576.   █████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████   Dr.

21  Schonfeld is correct. ███████████████████████████████

22  █████████████████████████████████████████

23                 Technology advances and resource expenditures that permitted

24  the development of the cameraphone were substantial, as evidenced by the fact that the first

25

26                                          308

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

cameraphone was sold in 2000, years after the purported invention.  Moreover, merely shrinking

an image sensor and a system-on-a-chip is not sufficient to create the accused products.  Each

component must be designed to work with each, and integrated a fully-functional handheld or

table smartphone system.  All these technologies arose long after the purported invention of the

'239 patent.[38]

577.   Finally, ███████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████.  I disagree with his arguments.

578.   ████████████████████████████████████████████

███████████████████████████████  Dr. Schonfeld is incorrect:  as discussed

in Section VI.F.4, FaceTime packetizes the video and audio frames, but never creates or stores a

file.  FaceTime has no need to store a file because the packets are discarded after transmission.

Dr. Schonfeld has not provided any evidence to the contrary.

579.   ███████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████  Again, Dr. Schonfeld is incorrect.  The Applicants argued to

the examiner "Gattis does not contemplate the creation of full-motion composite signal video

information *into digitized files* which can be stored, transmitted, played or replayed.  This is a

very significant difference. . . . *[I]n Applicants' invention*, full-motion composite signal is

captured *into digitized files* . . . ."  '239 File History, 2/2/96 Amend. [SAMNDCA630-

00832596] at 10-11 (emphasis added).  In the next amendment, the applicants again argued that

---

[38] ██████████████████████████████████████████████

██████████████████.  He does not explain how this cite supports his

argument.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

"*[t]he present invention* includes an apparatus capable of capturing a full-color, full motion composite signal in real time; digitizing that composite signal *into a data file*; compressing *the data* file and transmitting it through a computer interface via telephone lines, cellular, radio, and other telemetric frequencies from a remote unit to a host unit." '239 File History, 5/20/96 Amend. [SAMNDCA630-00832632] at 9 (emphasis added).  It is unclear why ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████   In short, Dr. Schonfeld admits that any accused product (like FaceTime) that does not store in a data file cannot meet  this limitation.  As explained in Section VI.F.4, FaceTime does not store a data file.

### 2. "means for storing said composite signal" (claim 1)

580.   The parties agree that the function of this limitation is "storing said composite signal."  In addition, under Apple's construction, the required structure is a hard disk drive and the software identified at 3:1-5, 4:52-57, and 6:14-16 in the '239 patent.  ███████████

██████████████████████████████████████████████████████████

███████████████████

581.   ████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

### a) The accused components are not hard disk drives, literally or under the doctrine of equivalents

582.   The accused DDR SDRAM and NAND flash memory are not hard disks, nor do any of the accused iOS devices contain a hard disk.  Rather, all the accused iOS devices use a NAND flash memory.  ███████████████████████████████████████

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

     b)    *The accused components do not have software performing a*
*software sequence of initializing one or more communications*
*ports on the remote unit, obtaining the stored data file, and*
*transmitting the stored data file.*

601.

602.    Dr. Schonfeld has failed to illustrate that the accused products meet this software structure.  As discussed below, Dr. Schonfeld's "analysis" of the source code he cites is both superficial and inaccurate.

     (i)    Initializing One or More Communications Ports on the Remote Unit

603.    The "communications port" in the required structure is a physical hardware port on the remote unit (a personal computer) that connects the modem to the remote unit.

But he fails to identify any such port for transmitting a composite signal.

320

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

they do not provide a physical outlet or an interface to any external device.  Instead, these are internal connections between different chips within the accused products.

He similarly fails to provide any evidence

604.    Nor has Dr. Schonfeld identified any software that initializes these alleged "ports."

As discussed in detail below, none of the source code identified by Dr. Schonfeld contains

---

44

I disagree.  The Court required that the software initialize "one or more communications ports on the remote unit."

Apple has made no such argument.  The Court has already implicitly required these connections with the "one or more modems" and "one or more communications ports" language, as well as the required software.  The number of ports correspond to the number of modems, and there would be no need to initialize the ports if the modems were not connected to them.

321

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

operates according to the 802.11 specification, which allows multiple users in the network to use the wireless channel at one time.

640.    The accused baseband chip is not structurally equivalent to the required modem. The baseband processor in the accused devices uses the data services (as opposed to voice) of the cellular network to send data such as video.  The modems described in the '239 patent, however, modulate the digital video data so that it can be transmitted over the voice frequencies in telephone lines and cellular networks available at the time.  These differences are substantial, as evidence by the number of years that were required to develop and implement cellular data services that were capable of reliably handling high data throughput required by uses such as video calls.

641.    For each of the above reasons, the accused components do not literally meet this limitation.

c)    *The accused devices do not infringe under the doctrine of equivalents*

642.    For the reasons discussed above, the accused hardware components are not equivalent to the required structure.

643.    ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████.  As the inventors' explained, a data file can be "*stored, transmitted, played or replayed.*"  '239 File History, Feb. 2. 1996 Amend. [SAMNDCA630-00832500] at 12.  ███████████████████████████

335

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1

2   ███████████████████████████████████████████████████ .

3   Finally, the result is different.  As discussed above in Section VI.D.4, the patent explains that

4   "[t]he remote unit is capable of storing and displaying up to eight (8) bit map files."  '239 patent

5   at 5:29-31.  This description is consistent with the inventors' description of their invention

6   during prosecution when they sought to overcome the examiner's rejection of the claim based on

7   videoconferencing prior art.  But FaceTime cannot operate in this manner.  It does not store

8   video in a data file, and therefore there is no way for up to eight separate videos to co-exist at

9   one time and to be viewable, as the patent describes.  A person of ordinary skill in the art would

10  understand that creating a data file for storage is very different than buffering data for a video

11  call.  A video of a scene is recorded precisely to preserve it for later use, whereas the purpose of

12  a video call is for short term, two-way communications (just like a telephone call), not for

13  memorializing a scene.  Once the call ends, there is no video and therefore no memorialization of

14  the call.

15

16  644.    In addition, as explained above in section VI.D.3, Samsung is estopped from

17  asserting the doctrine of equivalents over FaceTime because of the named inventors' arguments

18  to overcome the videoconferencing system of Gattis.

19  645.    For each of these reasons, the accused components do not satisfy this limitation

20  under the doctrine of equivalents.

21      4.    "a host unit"

22  646.  ████████████████████████████████

23  ███████████████████████████████████████

24  ████████████████████████████████████

25

26                                                    336