Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page1 of 20

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

***Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

---

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Counterclaim-Plaintiffs,

v.

APPLE INC., a California corporation,

Counterclaim-Defendant.

CASE NO. 5:12-cv-00630-LHK

**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE ARGUMENTS FROM SAMSUNG'S INVALIDITY AND NON-INFRINGEMENT EXPERT REPORTS REGARDING APPLE PATENTS**

Date: December 10, 2013
Time: 10:00 a.m.
Place: Courtroom 5, 4th Floor
Judge: Hon. Paul S. Grewal

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**HIGHLY CONFIDENTIAL – SOURCE CODE - ATTORNEYS' EYES ONLY**

**HIGHLY CONFIDENTIAL – THIRD PARTY SOURCE CODE – ATTORNEYS' EYES ONLY**

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE CASE NO. 12-CV-630-LHK (PSG)

# TABLE OF CONTENTS

**Page**

I. Samsung's New Invalidity Theories Should Be Stricken ........ 1
  A. New Invalidity Theories in Samsung's Opening Expert Reports ........ 1
    1. New Theories of Invalidity on the '414 Patent ........ 1
    2. New Invalidity Theories on the '647 Patent ........ 4
  B. New Invalidity Theories Based on Improper Demonstration Systems ........ 9
    1. The WAIS and AppleSearch "Demonstration Systems" in the Rinard Opening Report regarding the '959 Patent ........ 9
    2. The '414 Patent "Demonstration Systems" Should Be Stricken ........ 10
  C. New Invalidity Theories in the Rebuttal Expert Reports ........ 11
    1. New Invalidity Theories in the '647 Patent Rebuttal Report ........ 11
    2. New Invalidity Theories in the '172 Patent Rebuttal Report ........ 11
    3. New Invalidity Theories in the '959 Patent Rebuttal Report ........ 12
    4. New Invalidity Theories in the '414 Patent Rebuttal Report ........ 13
II. Dr. Greenberg's New Non-Infringement Theory for the '721 Patent Should Be Stricken ........ 13
III. Dr. Jeffay's New '647 Patent Non-Infringing Alternative Theory Should Be Stricken ........ 13
IV. Opinions Based on Unproduced Versions of the Quick Search Box Should Be Stricken ........ 14
V. Dr. Rinard's Use of an Undisclosed Google Source Code Drive Should Be Stricken ........ 15
CONCLUSION ........ 15

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page3 of 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-1846-LHK, D.I. 939-1 (N.D. Cal. May 17, 2012).......... 9

*Apple Inc. v. Samsung Electronics Co., Ltd.*, 11-cv-1846, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012).......... 15

*Life Techs. Corp. v. Biosearch Techs., Inc.*, C 12-00852 WHA, 2012 WL 4097740 (N.D. Cal. Sept. 17, 2012).......... 5, 9

**Rules**

Pat. LR 3-3(c).......... 3, 4, 5

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE ii CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page4 of 20

## I. Samsung's New Invalidity Theories Should Be Stricken

### A. New Invalidity Theories in Samsung's Opening Expert Reports

#### 1. New Theories of Invalidity on the '414 Patent

Apple moved to strike invalidity theories introduced for the first time in Dr. Chase's expert report on the '414 Patent that were not identified in Samsung's Invalidity Contentions. Claim 20 of the '414 Patent requires at least three separate "synchronization software components, and requires that each of the three components be "configured to synchronize" data of a specific data class, such as the email data class or the contacts data class. In its Invalidity Contentions, Samsung identified prior art that it alleged anticipates claim 20, including the Window Mobile, Evolution and iSync prior art systems. Those Invalidity Contentions identify components and data classes for each of those three systems. But the disclosure in those contentions is insufficient to meet all of claim 20's requirements. Belatedly recognizing that fact, Samsung submitted an expert report from Dr. Chase that points to entirely different components as the "synchronization software components" from Windows Mobile and Evolution and points to an entirely new data class for the iSync system. These entirely new components and data classes are central to Samsung's expert's new anticipation theories and result in a wholesale change from what was in the Invalidity Contentions. Samsung is not entitled to introduce new invalidity theories through Dr. Chase's expert report, which is precisely what it has done.

***Windows Mobile with ActiveSync***. In its Invalidity Contentions for Windows Mobile, Samsung pointed to only a single "synchronization software component" – [redacted]" despite the clear language of claim 20 that requires three such components. Mot. at 4 (citing Ex. 43 at 29-30). In order to cure the deficiency in their Invalidity Contentions, Dr. Chase, proposed a new theory in his expert report, pointing for the first time to different components namely the [redacted] (five "New Components"), as the alleged "synchronization software components" required by claim 20. Ex. 1 at ¶¶ 619-620.[1] Samsung does not deny that its Invalidity Contentions failed to name any of these five New Components.

---

[1] Exs. 1 to 43 were filed as part of D.I. 882; Exs. 44-53 are filed herewith as exhibits to the Reply Declaration of Joshua Furman.

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 1 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page5 of 20

Instead, Samsung presents a series of inaccurate and inconsistent arguments, none of which show that its Invalidity Contentions identified three separate synchronization software components and three data classes that those components allegedly synchronize. First, Samsung argues that its Invalidity Contentions "explained how Windows Mobile synchronized Mail, Contacts, and Calendar data" through the [REDACTED] of ActiveSync (Opp. at 2-3 and fn.3) but, on its face, such a disclosure is insufficient – *claim 20 requires three specific components, not one component with the functionality to synchronize three separate classes of data*. D.I. 919 at 9 (a single component is insufficient to satisfy the requirement of three separate components). Samsung realizes this, which is why Dr. Chase relies on the five New Components in his report. *Compare* Ex. 43 at 29-30 (Invalidity Contentions pointing only to the [REDACTED] as synchronization software component) *with* Ex. 1 (Chase Report) at ¶¶ 619-620 ("Windows Mobile contains … multiple synchronization software components … including [the five New Components]").

Samsung also asserts that its Invalidity Contentions explained how Window Mobile's [REDACTED] contained multiple, unnamed "components for Mail, Contacts and Calendar synchronization" (Opp. at 3 and fn.4) but the pages it cites from its Invalidity Contentions (pages 26-30 and 111-12) do no such thing.[2] Pages 26-30 refer to only a single component – [REDACTED] – and pages 111-12 merely parrot back the language of method claim 10 (which parallels asserted system claim 20), again never mentioning *any* of the five New Components. Samsung also points to the Microsoft diagram copied in its contentions, alleging that this diagram somehow illustrates each of the five New Components. Opp. at 3. But that diagram merely illustrates some of the data classes being synchronized (E-Mail, Contacts, Calendar); it does not identify any components that are allegedly configured to synchronize those data classes—other than the [REDACTED] Indeed, even Samsung's expert does not claim that the "Email, Contacts, Calendar" boxes in that diagram are synchronization software components. *See* Ex. 1 at ¶¶ 536-37.

Samsung next argues that its Invalidity Contentions cite locations of source code in which the five New Components can be found. Opp. at 3. But Local Rule 3-3(c) requires much more than the

---

[2] Samsung's reliance on the Chase Declaration supporting its summary judgment motion is misplaced; that declaration is not part of its Invalidity Contentions. Opp. at 3 fn.4.

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 2 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page6 of 20

identification of a mass of source code. It requires a party asserting invalidity to provide "a chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found." Pat. LR 3-3(c). Samsung provided nothing of the sort and its bulk identification of source code is legally insufficient to constitute the identification of any of the components that may be buried in that code. Ex. 43 at 112. *See Apple Inc. v. Samsung Elecs*. Co., Ltd., 2012 WL 2499929, * 1 (N.D. Cal. June 27, 2012) (Grewal, J.) (finding it "unacceptable" to expect the other party to "comb through the extraordinarily voluminous record" to try to "glean what is at issue").

Samsung's real argument appears to be that Apple is not prejudiced by Samsung's failure to comply with the rules because Apple deposed a Windows Mobile witness who made reference to some of the New Components. That misses the point entirely. Apple was clearly prejudiced because Samsung's contentions did not inform Apple that any of those New Components were relevant. Apple had no reason to focus its questioning on those New Components and thus did not do so.

***Evolution***. In its Invalidity Contentions for the Evolution system, Samsung asserted that Evolution provided several synchronization software components for different data classes. For the calendar data class, Samsung's Invalidity Contentions pointed only to elements called "libecal" and "calendar.conduit."[3] Ex. 20 at 105-106. When it served its expert report, however, Samsung's expert abandoned that theory. Instead, Samsung's expert pointed to three completely new components that it now contends each serve as a synchronization software component for the calendar data class – namely the Exchange Connector process, the EDataCal and the Exchange Calendar backend (the "New Evolution Components"). Ex. 1 at ¶ 300 and Section II of Ex. 1 thereto.

Samsung does not even attempt to argue that it identified the EDataCal or the Exchange Calendar backend as calendar-specific "synchronization software components." Rather, Samsung asserts that its Invalidity Contentions point to source code locations where EDataCal and the Exchange Calendar backend may be found. Opp. at 6 and fn.10. Again, pointing to a host of source code locations, generally, does not "specifically" identify the EDataCal object and Exchange

---

[3] But those elements have nothing to do with the synchronization of calendar data with an Exchange server – the theory its expert urges. "calendar.conduit" and "libecal" relate to the synchronization of data with iCalendar and Groupwise – not Exchange.

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 3 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page7 of 20

Calendar backend as required by Local Rule 3-3(c). With respect to the Exchange Connector, Samsung claims that it identified the Exchange Connector as one of the "synchronization software components" for claim 20, but that is not true. The pages it cites from its Invalidity Contentions do not even mention the Exchange Connector let alone identify it as one of the "synchronization software components." Instead, they simply refer to ability to synchronize different data classes (*see* pp. 29-37) or to entirely different components (*see* pp. 105-106 identifying "libecal" and "calendar.conduit" as the "synchronization software components" for the calendar data class).[4]

Having failed to comply with the rules, Samsung again tries to argue that Apple is not prejudiced because it deposed Evolution witnesses. But because Samsung's Invalidity Contentions did not point to the New Evolution Components as "synchronization software components," Apple did not focus its questioning on them. Thus, Apple was prejudiced by Samsung changing its theory to rely on the New Evolution Components and their inclusion in its expert report must be stricken.

***iSync***. Samsung's Invalidity Contentions did not mention bookmarks as a data class being synchronized in its analysis of '414 Patent claim 20. Samsung's expert introduced that argument for the first time in his expert report. Although Samsung argues that its Invalidity Contentions pointed to bookmarks (Opp. at 7 (lines 8-11)), the disclosures at page 103 of its Invalidity Contentions, upon which Samsung relies, concern an entirely different claim (claim 7) that does not contain a data class limitation. Samsung thus clearly knew about bookmarks and chose not to include them in its Invalidity Contentions for claim 20. Samsung also did not identify the [REDACTED] omponent as a component to synchronize bookmarks in its Invalidity Contentions and does not explain why it could not identify that component then, as its expert does now.[5] As a result, reliance in Samsung's expert's report on bookmarks as a data class and the related [REDACTED] omponent should be stricken.

**2. New Invalidity Theories on the '647 Patent**

***Sidekick Handbook***. The Court should strike the Sidekick Handbook as an anticipatory

[4] And even if the Exchange Connector had been identified, that component is not specific to the calendar data class and therefore cannot read on the limitations in claim 20.

[5] While Samsung contends that it did not have the source code for the [REDACTED] until the last day of fact discovery, Samsung could have identified that component without any reference to the source code. Indeed, Samsung's expert does not point to any source code relating to what he calls the [REDACTED] in his expert report. Ex. 1 at ¶ 383.

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 4 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page8 of 20

reference because Samsung never identified or disclosed it as such. Samsung's Invalidity Contentions unmistakably provided only a *single* chart for a *single* anticipation theory based on the "Sidekick System." *See* Ex. 53 at 1; D.I. 540-16, at 36-37. Samsung's expert, by contrast, submitted *two* charts for *two separate* anticipation theories—one for the Sidekick System and, for the very first time, one for the Sidekick Handbook. *See* Ex. 49. In Samsung's own words, its contentions "explained that the Sidekick *System* anticipates . . . as described by, among other publications, the Sidekick *Handbook*." Opp., at 7 (emphasis added). That proves Apple's point. Samsung's contentions cited the Handbook only as *supporting evidence* for the Sidekick System. *Nowhere* does Samsung's claim chart state that the Sidekick *Handbook* independently anticipates the asserted claims; in fact, Samsung does not dispute that it did not cite the Handbook *at all* for two of the asserted claims. Opp. at 9. Nor did Samsung *ever* provide a separate chart for the Sidekick Handbook during discovery. Samsung cannot—for the first time in its opening expert report—assert a *new anticipatory reference* not properly disclosed in Samsung's contentions.

Samsung advances a parade of ineffective excuses for Dr. Jeffay's new anticipation reference. Samsung first argues that it "*expressly identified*" the Sidekick Handbook as a reference that "*anticipate[s] under 35 U.S.C. § 102(a), (b), (e), (f) and/or (g) or render[s] obvious under 35 U.S.C. § 103*." Opp. at 8, 9 (emphasis in original). This "identification" does not come close to satisfying the Local Rules. Consistent with its use of the Handbook as evidence of the Sidekick System, Samsung listed the Handbook—*buried among all 239 patents, publications, and systems* that Samsung asserts as prior art. D.I. 540-16 at 21-33. Samsung's "broad[] state[ment]" that this prior art "anticipate[s] and/or render[s] obvious" the claims "is insufficient under [the] local rules" to preserve Samsung's new anticipation theory. *Life Techs. Corp. v. Biosearch Techs., Inc.*, C 12-00852 WHA, 2012 WL 4097740, at *3 (N.D. Cal. Sept. 17, 2012). Samsung provided claim charts—as it was required to under Pat. L.R. 3-3(c)—for each of its "primary references," which included the Sidekick *System* but not the Sidekick *Handbook*. D.I. 540-16 at 36-37.

In light of its deficient contentions, Samsung argues that its disclosure obligations should be excused because it listed the Sidekick Handbook in its "Reduction of Invalidity References," filed

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 5 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page9 of 20

just before fact discovery closed. Opp. at 8, fn.14 (citing D.I. 671).[6] Samsung is wrong—that document is not a substitute for proper contentions under the Local Rules. Even if Samsung's "Reduction of Invalidity References" disclosed the Handbook as a separate anticipation theory (it does not), the Court ordered Samsung to *limit* its *previously submitted* contentions. D.I. 671. The Court did not invite Samsung to add *new* anticipatory references in violation of the Local Rules.

Samsung also argues that Apple "has known about the Sidekick Handbook for years." Opp. at 8. Specifically, Samsung relies on disclosures made by a different defendant (Motorola) in a different case (the Apple-Motorola litigation) in which Apple asserted the '647 Patent and Motorola argued that Sidekick Handbook anticipated claims 1 and 8. *Id.* That Apple was "aware" of the Sidekick Handbook from the *Motorola* case could not be more irrelevant. Samsung's counsel—who represented Motorola—was also aware of the Sidekick Handbook, and Samsung purposely chose *not* to advance it as an anticipatory reference in *this* case. Samsung further argues that during the preliminary injunction phase of this case it argued that the Sidekick Handbook anticipates, so its expert can assert that theory now. *Id.* Samsung's argument contradicts its own motion to strike Apple's doctrine of equivalents arguments that were disclosed in the PI phase but not expressly included in Apple's contentions. *See* D.I. 964-25, at 17, fn.15. By Samsung's logic, PI phase-disclosures are sufficient, and the Court should deny Samsung's motion to strike.

Samsung next erroneously argues that *Apple's interrogatory responses* somehow relieve Samsung from complying with the Local Rules. Opp. at 9. Samsung states that "Apple recognized … that Samsung had disclosed that the Sidekick Handbook alone as an invalidating reference." *Id.* That assertion is false. Apple *never* provided a discovery response acknowledging the Sidekick Handbook as an anticipatory reference. Instead, Samsung identified a subset of the invalidity theories previously disclosed in Samsung's contentions, and Apple provided validity contentions limited to those specific theories. *See* Ex. 44 (April 26, 2013 Letter from Amar Thakur to Fred Chung). Samsung's list *did not identify the Sidekick Handbook* (or the Sidekick System, for that

---

[6] Samsung's Reduction of Invalidity References simply identified the Sidekick Handbook among the "45 references/systems/combinations for use in [Samsung's previously disclosed invalidity] defenses." D.I. 671 at 2. This document *never* states that Samsung was asserting the Handbook as an anticipatory reference, nor does it provide a claim chart or attempt to comply with the Local Rules.

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 6 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page10 of 20

matter) as an anticipatory reference. *Id.* Samsung only mentioned "Sidekick" as a secondary reference in an obviousness combination Samsung has since dropped. *See id.* Thus, Apple did not even address, let alone recognize, *any* invalidity theory based solely on Sidekick.[7]

Samsung argues that Apple suffered no prejudice because Apple deposed third party Lars Frid-Nielsen "about the Handbook." Opp. at 9. That is false. Apple deposed Mr. Frid-Nielsen because he was involved in [REDACTED] Ex. 47 at 18:17-19 (Frid-Nielsen Tr.). Mr. Frid-Nielsen [REDACTED] *Id.* at 42:18-24. He testified that a different individual [REDACTED] and [REDACTED] was not deposed by Apple because Samsung never disclosed him. *Id.* at 43:1-3.

***MHonArc system + Mosaic system***. Apple moves to strike the "MHonArc System/Mosaic System" as an anticipatory system because Samsung never disclosed that such a "system" even existed, let alone anticipated the '647 Patent. Samsung's Invalidity Contentions repeatedly and unambiguously argued that *two separate systems*—the "Mosaic System" in *combination* with the "MHonArc System"—render the asserted claims *obvious*. Ex. 25 at 1; D.I. 540-16, at 36-37. Samsung's expert, however, asserts for the first time in his report that the "MHonArc System/Mosaic System" is a single "system" that *anticipates* the asserted claims of the '647 Patent. Mot. at 8. This "system" was *never* disclosed in Samsung's contentions (or otherwise). To the contrary, Samsung charted the "Mosaic System" as one of Samsung's "primary references" and argued that it renders the claims "*obvious* . . . *in combination with* . . . the MHonArc System." Ex. 25 at 1. Samsung's contentions provided alleged "motivations to combine" the Mosaic System with MHonArc. D.I 540-16, at 167-172. In Samsung's own words, it "disclosed early on its theory that it was 'natural and *obvious* to use Mosaic *in combination with* MHonArc.'" Opp. at 10 (emphasis added). Samsung could not have more clearly articulated its *obviousness* theory based on *two* systems, rather than the single anticipatory "system" Dr. Jeffay now asserts. Despite Samsung attempts to downplay its

[7] Instead, Apple grouped the Sidekick Handbook with the Sidekick System—just like Samsung's contentions—and explained that the primary reference does not render the claims obvious when combined with Sidekick. *See* D.I. 946-13 at 103-108, 286-287.

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 7 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page11 of 20

deficient contentions, the difference between anticipation and obviousness is considerably more than mere "semantics." Opp. at 11.

Samsung recycles most of the same excuses it used for its new Sidekick theory. Samsung argues that listing "MHonArc System/Mosaic System" on its "Reduction of Invalidity References" allows Samsung to introduce a new anticipation theory in violation of the Local Rules. Opp. at 10. It does not. Samsung again argues that Apple's discovery responses excuse Samsung's deficient disclosures. Opp. at 10-11. They do not. Apple's responses consistently treated the Mosaic System and the MHonArc system as *two separate systems*—just as Samsung disclosed. *See* D.I. 946-13, at 114-120; Ex. 25.

Samsung next wrongly argues that Apple "conveniently ignores" that Earl Hood, "the author of the MHonArc software," allegedly testified that "MHonArc is used with Mosaic." Opp. at 10. First, Mr. Hood's testimony is entirely consistent with the only theory disclosed in Samsung's contentions—that it would be obvious to combine Mosaic with MHonArc. Second, Apple is not required to divine Samsung's invalidity theories from third-party deposition testimony. That is what Invalidity Contentions are for. Third, Samsung fails to inform the Court that it retained Mr. Hood as a consultant, *amended its contentions* to include additional information about MHonArc, but *still* never asserted that Mosaic and MHonArc were a single anticipatory "system." Ex. 25. Samsung had the burden—and the opportunity—to explicitly disclose its new anticipatory "system" in its contentions. It chose not to do so, and its expert cannot reverse that choice now.

***Jeffay Alleged Prior Art***. Samsung's expert provided over ten pages of substantive analysis regarding prior art "systems" he personally created, but which (1) were never disclosed at any point during discovery, and (2) have absolutely no corroborating evidence—no documentation, no source code, no third-party testimony. The Court should strike any discussion of these undisclosed and uncorroborated "systems."

Samsung argues that Dr. Jeffay's analysis is simply "background" information he provides from his own experience. Opp. at 12. To the contrary, Dr. Jeffay relies on his "systems"—not for "background" to the patented technology—but to provide a ten-page substantive invalidity analysis. Samsung made (and the Court rejected) this very argument in the last case. Apple's motion to strike

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 8 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page12 of 20

(which the Court granted) explained that Samsung's expert used six previously undisclosed references in a "substantive manner," not as "background" as Samsung claimed. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-1846-LHK, D.I. 939-1, at 6-7 (N.D. Cal. May 17, 2012). Here, the '647 Patent covers "[a] system and method [that] causes a computer to *detect* and *perform actions on structures* identified in computer data." D.I. 333-3 ('647 Patent), Abstract (emphasis added); *see also id.* claim 1. Dr. Jeffay asserts that his "systems" are "example[s] of detecting structures and automatically performing actions on detected structures," then argues—for 10 pages—that his "systems" demonstrate these key claim limitations "were well known in the prior art."[8] Ex. 4 at ¶¶ 175-187, 204-209 (Jeffay Rep.). Samsung cannot "elude patent local rules by defining [Dr. Jeffay's ten-page substantive analysis] as 'background' or 'context.'" *Life Tech. Corp. v. Biosearch Tech., Inc.*, C 12-00852 WHA, 2012 WL 4097740, at *1-2. (N.D. Cal. Sept. 17, 2012).

Apple's prejudice is even more acute given that Dr. Jeffay provided no corroborating support in the form of any documentation, source code, or otherwise. Contrary to Samsung's false comparisons, Apple's experts described background technology using three actual publications that Samsung's expert can independently review and analyze.[9] Apple has no such ability, because Dr. Jeffay's "systems" exist only in his memory.

**B. New Invalidity Theories Based on Improper Demonstration Systems**

**1. The WAIS and AppleSearch "Demonstration Systems" in the Rinard Opening Report regarding the '959 Patent**

Samsung's opposition incorrectly asserts that Apple is seeking to strike references to "installations" of "software" that was produced during fact discovery. Opp. at 13, 14.[10] That is not correct. Apple is moving to strike systems built by its expert, Dr. Rinard. *See* D.I. 803 at 15-19; D.I.

[8] Samsung argues that "Dr. Jeffay is not arguing that *any* of the prior art software identified in Apple's motion invalidates the asserted claims of the '647 patent." Opp. at 11. None of these "systems" are prior art under 35 U.S.C. § 102; they exist only in Dr. Jeffay's 20-year-old memories or were specifically created for purposes of this litigation. Mot. at 9-10. Samsung cannot use these systems under the guise of Dr. Jeffay's "experience" without meeting its burden under the Local Rules.

[9] Apple's experts mentioned a total of three previously undisclosed references in a total of four sentences in their description of background technology. *See* D.I. 962-8, Ex. 20, 21. Dr. Jeffay, in stark contrast, provided ten pages of substantive analysis that his prior art "systems" demonstrated that key claim elements were well known in the art.

[10] Apple's motion omitted Rinard Video Exhibits Nos. 21-38 but those too should be stricken. Mot. at fn.5; Ex. 45 (Nov. 14, 2013 Furman Letter explaining omission); Ex. 52 (omitted video exhibits).

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 9 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page13 of 20

944 at 9-12. While those systems are based on pieces of source code and software that were produced during discovery (and on which Apple is not moving to strike),[11] the Rinard-created systems clearly were not produced during discovery.[12] The Rinard-created systems were built in 2013 through a complicated, multi-step, multi-computer process and do not qualify as prior art. *Id.*

Samsung attempts to justify its reliance on Rinard's systems by calling them "demonstratives" in its opposition. Opp. at 13. But Samsung uses those systems in its claim charts. Throughout his report, Dr. Rinard relies on those Rinard-built WAIS and AppleSearch systems as if they were actual prior art, incorporating screenshots and descriptions of them alongside other "evidence" from other sources.[13] That is an entirely improper use of Dr. Rinard's 2013 creations under any circumstances, but is particularly egregious (and deserving of being stricken) given that they were not identified in Samsung's Invalidity Contentions or produced during discovery, as is required by the local patent rules.[14] *See* Patent L. R. 3-4(b) (requiring production of all facts relied upon to prove a prior art system during fact discovery); *Apple Inc. v. Samsung Electronics Co., Ltd.*, 11-cv-1846, 2012 WL 2499929, at *4-5 (N.D. Cal. June 27, 2012) (Grewal, J.) (precluding opinions that "improperly reference[] certain devices never previously disclosed to Samsung during discovery.").

**2. The '414 Patent "Demonstration Systems" Should Be Stricken**

Like Dr. Rinard above, Dr. Chase also includes with his invalidity expert report a number of videos of systems he created in 2013 in an attempt to prove how the Windows Mobile and Evolution prior art from 2000 could have been set up. These too were never produced to Apple during fact discovery and were never identified in its Invalidity Contentions. That Samsung may have produced the parts of the system misses the point. Opp. at 15. Dr. Chase is not relying on the parts alone in his videos – he created a new system and cites to the system he created in 2013. *See* Ex. 50 at ¶¶ 230-31,

---

[11] Samsung appears to suggest that screenshots in its Invalidity Contentions relate to an AppleSearch demonstration system (Opp. at 14 fn.18), but that demonstration system is not the same as Dr. Rinard's. *See* Ex. 40.

[12] Samsung wrongly suggests that Apple complained that the Rinard-built systems were withheld during "discovery" (Opp. at 14) when Apple clearly argued they were withheld during *fact* discovery.

[13] *See* Ex. 6 (Rinard Report Ex. 1 at 2, 13, 16, 18-21, 35-42, 45, 50-55, 61-62, 68, 72-75, 89, 101-104; Ex. 9 at 1, 22, 39-40, 49, 57, 60, and 83-84).

[14] Samsung's failure to produce Dr. Rinard's systems is not the same as Apple providing screenshots from Samsung's own products as Samsung now argues. Opp. at 13 fn.17. The accused products are not demonstratives and Apple made its copies of Samsung phones available for inspection during fact discovery (starting on July 1, 2013). *See* Ex. 46 (July 1, 2013 email from Quincy Lu).

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 10 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page14 of 20

238 (Chase Rep.). Samsung's response that it is merely creating demonstratives is also inaccurate. Like Dr. Rinard's systems, Samsung and Dr. Chase clearly rely on these "demonstration systems" as if they are prior art. As such, they must be stricken because they were not disclosed in Samsung's Invalidity Contentions or produced during discovery. Apple was clearly prejudiced by Samsung's failure to identify these Chase-created systems during fact discovery. As a result of Samsung's failure, Apple was unable to question Microsoft or Evolution witnesses about Dr. Chase's systems.[15]

### C. New Invalidity Theories in the Rebuttal Expert Reports

#### 1. New Invalidity Theories in the '647 Patent Rebuttal Report

Samsung admits that its contentions did not disclose Dr. Jeffay's argument—first made in his rebuttal report— that the claims are indefinite as "mixed apparatus and method claims." Opp. at 18. Samsung's excuse is that Dr. Jeffay is only arguing the claims are indefinite "as interpreted by Dr. Mowry," and so could not have asserted this theory before he received Dr. Mowry's opening report. *Id.* This is false. Dr. Mowry's report contains the same infringement theory and analysis as Apple's infringement contentions, served on Samsung seventeen months ago (not to mention Dr. Mowry's identical opinions in the PI phase). Samsung had all of the information it needed to assert this indefiniteness theory long ago, it amended it Invalidity Contentions multiple times, but *never* asserted this theory in its contentions—where it properly belonged—or even in its opening expert report.

#### 2. New Invalidity Theories in the '172 Patent Rebuttal Report

Samsung also admits that it did not disclose Dr. Wigdor's hybrid system/method claim indefiniteness theory in his opening invalidity expert report. Opp. at 18. Instead, Samsung argues that it can introduce a new indefiniteness theory based on an allegedly new claim interpretation offered by Apple's opening expert report. However, that argument fails because Samsung does not and could not point to any differences in how Apple applied claim 18 during the preliminary injunction phase, during fact discovery, or in its expert's infringement report. And this Court explicitly rejected Samsung's and Dr. Wigdor's opinion that claim 18 is an indefinite hybrid claim based on that same, consistent application of claim 18 offered by Apple's expert, Dr. Cockburn. D.I.

[15] That Dr. Snoeren was able to inspect the Windows Mobile and Evolution systems during expert discovery misses the point. Apple had no reason and no opportunity to pursue fact discovery about those systems because it did not know about them during fact discovery. The cases Samsung cites are thus entirely inapposite. Opp. at 15 fn.21.

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 11 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page15 of 20

221 at 61-63 (denying preliminary injunction) ("Claims 18 and 27 are not indefinite hybrid claims.")

**3. New Invalidity Theories in the '959 Patent Rebuttal Report**

Dr. Rinard improperly uses his rebuttal report to present over sixty pages of invalidity arguments that could have been brought in his opening report. *See* Ex. 7 at ¶¶ 342-500 (Rinard Reb.). By presenting these arguments in rebuttal, Samsung has deprived Apple's expert of the opportunity to respond. For example, Samsung uses Dr. Rinard's rebuttal report as an opportunity to add arguments about how the alleged prior art discloses heuristics embodied in "modules." Opp. at 16; *see* Ex. 7 at ¶¶ 430-500 (Rinard Reb. section IX.E addressing the "module" argument). Samsung attempts to justify its inclusion of invalidity arguments in a rebuttal report by saying that Apple's expert report added a new contention that "heuristics" must be "modules." Opp. at 16. But that is simply wrong. As Apple showed in opposing Samsung's motion to strike on this issue, Apple has maintained since its infringement contentions that "heuristics" must be "modules." D.I. 964-25 at 15-16. Apparently recognizing that, Samsung's opposition also says that Dr. Rinard's rebuttal report presents arguments already in the Rinard opening report. Opp. at 17. If that opinion was in fact in Dr. Rinard's opening report then Samsung would face no prejudice in having it stricken from his later report. But Samsung did add new material to the discussion in its rebuttal report. For example, with regards to Dr. Rinard's new contention that the WAIS Gateway discloses modules, Samsung alleges that the Rinard opening report describes "AppleSearch's WAIS Gateway and instructions in that software to query a WAIS server" and cites "Ex. 1, pp. 1-3 and 90-91." But pages 1-3 are just a list of documents with no narrative and pages 90-91 never mention the WAIS Gateway. *See* Fazio Decl. Ex. 36. It is for the first time in his rebuttal report (in the same ¶ 454 cited by Samsung) that Dr. Rinard argues that the WAIS Gateway and CPL are both separate modules and that the WAIS Gateway has "heuristics" as required by claim 24. *See,* Ex. 7 at ¶¶ 453-59 (Rinard Reb.).[16] Because these invalidity arguments should have been raised in his opening invalidity report, they should be stricken.

[16] Samsung also incorrectly argues that certain documents Apple is seeking to strike were in fact discussed in Dr. Rinard's opening report. Opp. at 17. Four of the six documents cited by Apple appear nowhere in Dr. Rinard's opening report and the others are only mentioned in a background section. *See* Mot. at 15; Fazio Decl. Ex. 36 at ¶¶ 90, 117-18 (Rinard Rep.) (using references in background).

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 12 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page16 of 20

**4. New Invalidity Theories in the '414 Patent Rebuttal Report**

Samsung's inclusion of invalidity opinions in Dr. Chase's rebuttal expert report for the '414 Patent must also be stricken because such opinions should not have been made in a rebuttal report. If the rebuttal opinions only repeat the exact same opinions, then the Court should strike the repeated opinions as redundant and unnecessary. But Samsung's opposition suggests that the rebuttal report opinions differ from the opening report and that it is entitled to have its expert show that Dr. Snoeren's infringement opinions would read on the prior art. Yet Samsung does not show that Dr. Snoeren's infringement opinions differ from Apple's infringement contentions. There is thus no reason why those opinions were not included in Samsung's invalidity report.

## II. Dr. Greenberg's New Non-Infringement Theory for the '721 Patent Should Be Stricken

Samsung's expert, Dr. Greenberg, introduced a new non-infringement theory in his rebuttal report that was not identified by Samsung during discovery. Namely, Dr. Greenberg contends that Samsung does not infringe because Apple failed to cite to specific portions of the accused devices' source code. Samsung has no justification for raising this new non-infringement theory now.

Samsung argues that it disclosed this position in its response to Apple's interrogatory number 24. Opp. at 19. While Samsung's interrogatory response parroted the claim's requirement for instructions that cause certain actions to take place in claim 8, Samsung never mentioned the absence of a '721 Patent source code analysis as a basis for non-infringement, despite amending its interrogatory response three times. Ex. 48 at 70, 100-103 and 140-144 (Samsung's Response to Interrogatory No. 24). By contrast, Samsung timely asserted a non-infringement position predicated on Apple's alleged failure to provide a source code analysis by Apple regarding the '172 Patent. *Id.* at 71, 103-104 and 144-148 (asserting non-infringement for the '172 Patent based on its allegation that a source code analysis is required). Samsung's own conduct with regard to the '172 Patent shows that their rebuttal effort regarding the '721 Patent is an untimely assertion of a new theory, which is appropriately stricken.

## III. Dr. Jeffay's New '647 Patent Non-Infringing Alternative Theory Should Be Stricken

Samsung's expert's report addresses a purported "non-infringing alternative" mentioned in an order by Judge Posner in Apple's prior case against Motorola. Mot. at 17-18. Even though Apple

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 13 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page17 of 20

asked a specific interrogatory seeking all alleged design-arounds and non-infringing alternatives, Samsung admits that it "did not explicitly identify the description in Judge Posner's opinion as a design around." Opp. at 20. Samsung's first excuse is that Apple had "notice" of this alleged design-around because Apple was a party to the *Motorola* case. *Id.* But Samsung is not entitled to assert any potential argument ever mentioned in any prior litigation involving Apple. That is why Apple served an interrogatory—to make Samsung identify all alleged design-arounds it would assert so that Apple could take discovery on their availability and acceptability.

Samsung also argues that "Dr. Jeffay cites Judge Posner's findings primarily to reinforce the 'ease of designing around the patent claims at issue,' not to introduce a new design around or non-infringing alternative." Opp. at 21. That is nonsense. It is impossible to discuss the "ease of designing around the patent" without referring to a particular design-around. Samsung did not disclose the design-around mentioned in *Motorola*, and its expert cannot do so now.

## IV. Opinions Based on Unproduced Versions of the Quick Search Box Should Be Stricken

Samsung's expert, Dr. Rinard, offers three opinions in his expert report that are based on his understanding of recent versions of the Quick Search Box ([REDACTED] that were never produced, not as an executable, source code or described in technical documents. Those opinions should be stricken because such critical technical information on those versions was never produced to Apple. Samsung does not dispute this but merely alleges that since Dr. Rinard did not rely on source code Apple does not need it either. Opp. at 21-23. Samsung is wrong. Dr. Rinard opines that the latest *unproduced* version of GSA/Quick Search Box [REDACTED][17] [REDACTED]. *See* Ex. 51 at ¶¶ 196-200 (Rinard Reb.). Second he opines that [REDACTED] *See id.* ¶ 338 (Ex. 51).[18] Third, Dr.

---

[17] Samsung's argument that Dr. Rinard's reliance on unproduced versions is justified due to Apple's alleged "previously-undisclosed infringement theory" is wrong. Opp. at 22. Dr. Rinard's opinions related to a later version [REDACTED] of the Quick Search Box are irrelevant to infringement by versions [REDACTED] and earlier. *See* Ex. 51 at ¶¶ 196-200 (Rinard Reb.).

[18] Samsung alleges that due to Dr. Snoeren's "new" theories it needed these undisclosed versions to present alleged non-infringing alternatives. See Opp. at 21. However, Dr. Rinard could have alleged that a non-infringing alternative existed without referring to the later versions of the Quick Search Box that were not disclosed. *See* Ex. 51 at ¶¶ 301-307, 322, 338 (Rinard Reb.).

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 14 CASE NO. 12-CV-630-LHK (PSG)

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page18 of 20

Rinard relies on an email describing how users used [redacted] In so doing, Dr. Rinard makes an implicit assumption that [redacted] re similar.[19] *See id.* ¶¶ 301-307, 322. Because Samsung/Google did not produce source code or technical materials for versions [redacted] Apple is prejudiced since it is unable to challenge either of the two premises of Dr. Rinard's opinions—that version [redacted] perates similar to version [redacted] and that version [redacted] iffers from version [redacted] *See Apple Inc. v. Samsung Electronics Co., Ltd.*, 11-cv-1846, 2012 WL 3155574 at *4 (N.D. Cal. Aug. 2, 2012) (precluding expert opinion based on failure to produce evidence relied upon).

**V. Dr. Rinard's Use of an Undisclosed Google Source Code Drive Should Be Stricken**

Dr. Rinard based his non-infringement analysis on a disk of Google source code that was not produced to Apple and only offered to Apple when Samsung filed its opposition to Apple's motion to strike.[20] *See* D.I. 962-9, Fazio Decl. Ex. 52 (Nov. 19 Letter from Nardinelli to Furman). Samsung now submits a fact declaration from a Quinn Emanuel attorney alleging that the disk provided to Dr. Rinard only contained a subset of the source code Google made available to Apple's experts. *See* Nardinelli Decl. ¶ 5 (declaring that the disk only contained code from an April 3 and May 13, 2013 production made by Google). Apple was not informed that Samsung asked its expert to focus on that subset of code—information that would have been useful to Apple's expert—and was not given access to the disk in advance to be able to confirm or refute Samsung's claim that it is the same.[21] Dr. Rinard's testimony based on his use of that unproduced disk should thus be stricken.

**CONCLUSION**

For these reasons, the identified portions of Samsung's expert's reports should be stricken.

---

[19] The [redacted] (Opp. at 21) discusses [redacted] uced in this litigation. *See* Ex. 51 at ¶ 303 (Rinard Reb.).

Samsung's offer to make the disk available now (Opp. at 23-24) is too late; it should have been produced during fact discovery. And Apple is not required to have asked for it when Samsung's expert is going to rely on the disk. *See Apple*, 2012 WL 3155574 at *4.

[21] Samsung ironically argues that Apple is not prejudiced because its expert was able to submit an errata to fix errors regarding the Google source code. Opp. at 24. But Samsung is moving to strike that very errata. D.I. 880 at 21. Its argument against Apple's motion suggests that its motion should be denied.

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE 15 CASE NO. 12-CV-630-LHK (PSG)

Dated: November 26, 2013

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *H. Mark Lyon*

***Attorney for Apple Inc.***

Case5:12-cv-00630-LHK Document1011-3 Filed11/26/13 Page20 of 20

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document and its supporting documents were filed electronically in compliance with Civil Local Rule 5.1, and will be served upon all counsel of record for the parties who have consented to electronic service in accordance with Civil Local Rule 5.1 via the Court's ECF system.

Dated: November 26, 2013 *(/s/ H. Mark Lyon)*

Gibson, Dunn & Crutcher LLP

APPLE'S REPLY ISO ITS MOTION TO STRIKE ISSUES RELATED TO APPLE PATENTS
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY- SOURCE CODE CASE NO. 12-CV-630-LHK (PSG)