| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552)<br>jkrevitt@gibsondunn.com<br>H. MARK LYON (CA SBN 162061)<br>mlyon@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, California  94304-1211<br>Telephone:  (650) 849-5300<br>Facsimile:  (650) 849-5333 | WILLIAM F. LEE (*pro hac vice*)<br>william.lee@wilmerhale.com<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>60 State Street<br>Boston, Massachusetts  02109<br>Telephone:  (617) 526-6000<br>Facsimile:  (617) 526-5000 |
| MICHAEL A. JACOBS (CA SBN 111664)<br>mjacobs@mofo.com<br>RICHARD S.J. HUNG (CA SBN 197425)<br>rhung@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California  94105-2482<br>Telephone:  (415) 268-7000<br>Facsimile:  (415) 268-7522 | MARK D. SELWYN (CA SBN 244180)<br>mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, California  94304<br>Telephone:  (650) 858-6000<br>Facsimile:  (650) 858-6100 |

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC., a California corporation,

    Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

    Defendants.

Case No. 12-cv-00630-LHK (PSG)

**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE ARGUMENTS FROM SAMSUNG'S INFRINGEMENT EXPERT REPORTS REGARDING SAMSUNG PATENTS**

Date: December 10, 2013
Time: 10:00 a.m.
Place: Courtroom 5, 4th Floor
Judge: Hon. Paul S. Grewal

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

I.  ARGUMENT .........................................................................................................................1

    A.  The Court Should Strike the Doctrine of Equivalents Theories That It Already Barred in Its June 26, 2013 Order. ............................................................................1

    B.  The Court Should Strike the Other Infringement Arguments That It Also Already Excluded in Its June 26, 2013 Order. ........................................................................2

        1.  The '596 Patent ...............................................................................................2

        2.  The '239 Patent ...............................................................................................3

        3.  The '449 Patent ...............................................................................................3

    C.  The Court Should Strike the Portions of Samsung's Expert Reports That Assert Other New Infringement Arguments ..........................................................................5

        1.  The '757 Patent ...............................................................................................5

        2.  The '239 Patent ...............................................................................................9

        3.  The '449 Patent .............................................................................................12

        4.  The '087 and '596 Patents ............................................................................13

II.  CONCLUSION ....................................................................................................................15

CERTIFICATE OF SERVICE .....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Fujitsu Ltd. v. Belkin Intern., Inc.*,
  2012 WL 4497966 (N.D. Cal. Sept. 28, 2012) .......................................................................15

*Johnson v. Kriplani*,
  2008 WL 2620378 (E.D. Cal. July 2, 2008) ....................................................................2, 14

*O2Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006)..............................................................................................13

**RULES**

Patent Local Rule 3 ................................................................................................................10, 13

Samsung's Opposition confirms that its new infringement theories should be stricken. *First*, Samsung acknowledges that its experts assert the same DOE arguments that the Court precluded in its June 26 Order. *Second*, Samsung fails to explain its continued reliance on documents, theories, and components that also were precluded by the Court's June 26 Order. *Finally*, Samsung fails to provide any legitimate justification for the many other new theories advanced in its expert reports—incorrectly claiming it is merely adding new evidence rather than new theories, and blaming Apple even though Samsung had all the necessary information to include such theories in its infringement contentions long ago.

I.   ARGUMENT

   A.   The Court Should Strike the Doctrine of Equivalents Theories That It Already Barred in Its June 26, 2013 Order.

Samsung admits that its experts "relied on DOE" in violation of this Court's June 26 Order, but argues that this should be excused because it was "left blind by Apple's failure to disclose" claim construction in a response to an interrogatory. (Opp. at 25.)[1] This argument has no merit. *First*, the Court's June 26 Order already considered and *rejected* Samsung's argument that it may amend its contentions to add DOE based on the mere possibility of a future claim construction. (*See* Dkt. 636 at 8 ("Concern over the possibility of a loss at claim construction does not amount to good cause [to amend]"; the issue is only ripe "[i]f and when Samsung faces an adverse construction.").) *Second*, the interrogatory (No. 46) provides no basis for Samsung's experts to rely on DOE theories never disclosed in Samsung's contentions. As explained in Apple's opposition to Samsung's motion to strike, Interrogatory No. 46 sought constructions for *only* those terms that Apple contends have a meaning *other than plain meaning.* For nearly all claim terms, Apple's experts relied on the plain meaning in their reports. In the case of the '239 patent, Apple disclosed its constructions of the means-plus-function terms not yet construed by the Court in response to Samsung's contention interrogatory on non-infringement. (Dkt. 965-4

---

[1] Citations to "Mot." are to Apple's opening brief (Dkt. 877-4); citations to "Opp." are to Samsung's Opposition (Dkt. 963-3); citations to "Selwyn Decl." are to Dkt. 877-5; citations to "Drezdzon Decl." are to Dkt. 963-4; and citations to "Kolovos Decl." are to the Declaration of Peter J. Kolovos in Support of Apple's Reply in Support of its Motion to Strike, filed concurrently herewith.

at 10-11, 15-16; see also Kolovos Decl., Ex. 1, 115, 117, 119-20, 123.) *Finally*, Samsung's request to allow its DOE arguments "on a case-by-case basis" if the Court denies its motion to strike makes no sense; the denial of Samsung's motion would be a *rejection* of Samsung's claim that Apple relied on previously undisclosed constructions, which in no way could support Samsung's late addition of DOE arguments.

**B.    The Court Should Strike the Other Infringement Arguments That It Also Already Excluded in Its June 26, 2013 Order.**

**1.    The '596 Patent**

After the Court's Order excluding the Intel X-Gold 61x Specification from Samsung's infringement contentions, Samsung ███████████████████████████████████████████████████████████████████████████████████████████████. Samsung should not be allowed to make an end-run around the Court's Order in this fashion.

Samsung's Opposition does not respond to Apple's arguments that the following material should be stricken from Dr. Min's report: (1) citations to the X-Gold 61x Specification; and (2) paragraphs 227, 255, 332, 336, 339, 458, 539, 654, 783, 946-47, 950, 976, 1093-94, 1097, 1131, and 1132 of Dr. Min's report. Thus, Samsung has conceded that Apple's motion should be granted at least as to these materials. *Johnson v. Kriplani*, 2008 WL 2620378, at *2 (E.D. Cal. July 2, 2008) (treating party's failure to address certain documents in opposition to motion to strike as a concession that the documents were not properly disclosed).

The few arguments Samsung does raise are unavailing. *First*, Samsung argues that "the Court did not exclude *all* of the X-Gold Specifications" (Opp. at 20), but never explains why citations for the X-Gold 618 Specification should not be stricken.[2] *Second*, Samsung argues that paragraph 335 of Dr. Min's report (and unidentified "other paragraphs like it") relate to and are supported by other documents not excluded in the Court's prior Order. (Opp. at 22.) But aside from the X-Gold 61x Specification excluded in that Order, the only document cited in this paragraph is the X-Gold 618 Specification that also should be stricken. (Selwyn Decl., Ex. C ¶

---

[2] ███████████████████████████████████████████████████████████████████████████████ and was never cited in Samsung's contentions.

1 335.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Kolovos Decl., Ex. 2 at 183:3-11), and in

3 any event does not support the text of paragraph 335 (*see id.* 183:3–184:23 ▮▮▮▮▮

4 ▮▮▮▮▮▮)). The cited testimony of Mr. Mennchen also does not support the text of

5 paragraph 335. (*See* Kolovos Decl., Ex. 3 at 14:11-23, 63:13-21.) **Third**, the other paragraphs

6 Samsung addresses in its Opposition should be stricken because they each cite to ▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Selwyn Decl., Ex. C ¶¶ 243, 809,

8 943, 1003, 1090 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮)

### 2. The '239 Patent

11 Samsung's argument that its equivalents theory under section 112(f) should be

12 "preserved pending possible adverse claims constructions" (Opp. at 24) also fails. As discussed

13 above, this Court already rejected the argument that concern over a possible future claim

14 construction provides a basis to add equivalents arguments. (Dkt. 636 at 8.) Moreover,

15 Samsung's argument that its disclosure was sufficient because section 112(f) equivalents

16 constitutes literal infringement (Opp. at 24 n.6) is disingenuous. If this were the case, Samsung

17 would not have sought leave to amend to add these theories in the first place; instead, it sought

18 leave to amend and was denied. (Dkt. 636 at 8.)[3] These are new theories that should have been

19 included in Samsung's original contentions ("OCs"), not for the first time in its expert report.

### 3. The '449 Patent

21 ***"Imaging Device"; "A/D Converter":*** Tellingly, Samsung does not address the actual

22 language of its contentions, which allege that the "imaging device" in the accused Apple

23 products is the ***entire*** "CMOS Image Sensor (or similar device)"—not any particular ***portion*** of

24 that device. (Opp. at 22-23.) Samsung argues instead that it should have been obvious to Apple

25 that it was not referring to the entire CMOS Image Sensor as the "imaging device." (*Id.* at 22.)

---

[3] As discussed above, Apple disclosed its means-plus function constructions for the '239 patent in its non-infringement contentions. Indeed, Samsung's expert responded to them in his opening report. (Dkt. 965-19 ¶¶ 43, 47-81, 1630-1640, 1689-1740.)

1  But Samsung does not argue—because it cannot—that its contentions ever allege that the

2  "imaging device" is ███████████████████████████████████. This is a

3  new theory disclosed for the first time in Mr. Parulski's expert report, and foreclosed by the

4  Court's June 26 Order holding that Samsung had not established "good cause" to add new

5  theories in the event the "A/D converter" is within the CMOS Image Sensor. (Dkt. 636 at 25.)

6  Indeed, Mr. Parulski admitted that in his report he had ████████████████

7  ████████████████████████████████████████. (Selwyn

8  Decl., Ex. D at 59:25-60:4.)

9      *"Recording Circuit":* Samsung does not dispute that Mr. Parulski's "interface circuit"

10  opinion is a new theory that is plainly foreclosed by the Court's June 26 Order, but instead

11  claims that it does not intend to rely on this theory. (Opp. at 23.) Thus, there is no dispute that

12  the Court should strike this previously undisclosed theory.

13      However, Samsung contends that its previously disclosed "NAND flash module for

14  storage" was actually ██████████████████████████████

15  ████████████████████████ in its contentions. Once again, Samsung

16  is seeking to accuse new components of meeting a limitation after being confronted with Apple's

17  non-infringement contentions and after the close of fact discovery—without any showing of

18  "good cause." The Court should reject Samsung's belated effort and strike this new opinion.

19      *"Reproducing Circuit":* Samsung does not dispute that its contentions specifically

20  mention only the ████████████████████████████████

21  ████████—as the alleged "reproducing circuit" in the accused Apple products. (Opp. at 23-

22  24.) Instead, Samsung argues that it identified ██████████████████████

23  ██████████████████████████████████ as potentially

24  infringing. (*Id.* at 24.) This argument should be rejected. *First*, as Apple explained in its

25  opening brief, the GPU identified by Samsung in its contentions cannot be the accused

26  "reproducing circuit." Mr. Parulski did not even "study" the GPU in his infringement analysis.

27  (Mot. at 11-12.) Samsung makes a mockery of the local rules contention process when the only

28

specific component it identifies in its contentions is not even a subject of its expert's analysis. *Second*, Samsung's belated claim that it meant to accuse the entire SOC should be rejected because the SOC includes *dozens* of different components that perform a wide variety of unrelated functions. (███████████████████████████████████████████████████████) Samsung might as well have said that "the iPhone contains a 'reproducing circuit'" and been done with it—but obviously such meaningless disclosures are not contemplated by the Local Patent Rules. Indeed, Samsung's belated attempt to identify the ███████████████████████ of the SOC in Mr. Parulski's report confirms that even Samsung does not believe identification of the SOC alone would be sufficiently specific. Samsung has offered no "good cause" for its failure to identify ███████████████████████████████ as the supposed "reproducing circuit" in its infringement contentions, and these opinions should be stricken from Mr. Parulski's report.

### C. The Court Should Strike the Portions of Samsung's Expert Reports That Assert Other New Infringement Arguments.

#### 1. The '757 Patent

*New "Zone Specific Storage and Interface Device" Theory:* Samsung does not dispute that, although given the opportunity to amend its contentions following the *Markman* order, it did not include any theory that Apple's laptop computers are "zone specific storage and interface devices" because they are "typically used in the home," and that Apple's iOS devices are "zone specific storage and interface devices" when "confined to a residence (e.g. home or office network) [when] for example connected to a Wi-Fi zone." (Opp. at 11-12.) Instead, Samsung's Third Amended Infringement Contentions ("3rd ACs") offer a completely different contention, namely, that the accused devices are "zone specific storage and interface devices" when "coupled to devices residing in a room" or when they "reside in a location under Apple's ownership and/or control." (Dkt. 660-3 at 5-7.) Samsung offers no explanation for why it did not or could not include Dr. Schonfeld's new theories (or supporting evidence) in its 3rd ACs. Samsung's attempt to justify its expert's new theories by suggesting they are supported by

1  Apple's documents (Opp. at 12) proves nothing: Apple produced these documents before
2  Samsung served its 3rd ACs—many were in fact produced in the prior litigation. (Mot. at 13.)

3  ***New Theory that Mac OS Computers are "Zone Specific Storage and Interface***
4  ***Devices" When Using Photo Stream:*** In Samsung's contentions, the particular devices
5  identified as "Zone Devices" vary by feature. For example, iOS devices are the only "zone
6  specific storage and interface devices" identified for the "Syncing With iTunes" feature. (Dkt.
7  660-3 at 22-24.) Likewise, Samsung only identified iOS devices as the "zone specific storage
8  and interface devices" for the Photo Stream feature. (*Id.* at 20-22.) Samsung nonetheless now
9  suggests that it did disclose Mac OS computers as "zone specific storage and interface devices"
10 for Photo Stream because its contentions "include an excerpt, screenshot, and citation to an
11 Apple webpage instructing users how to set up Photo Stream on a Mac OS computer." (Opp. at
12 13.) However, the claim limitation for which Samsung includes this support addresses both the
13 "central storage and interface device" and the "zone specific storage and interface device."
14 Indeed, this support explicitly identifies a Mac OS computer as a "Central Device." (Dkt. 660-3
15 at 20 ("Because certain Zone Devices have limited memory, Apple designed Photo Stream to
16 allow the Central Device to be the 'master photo library.' As further described on Apple's
17 website: Master photo library. On your Mac or PC.").)

18 ***New "Automatic Transfer" Theory for Home Sharing:*** Samsung claims that it
19 disclosed the "Automatic Transfer" function of Home Sharing in two sentences of its OCs, First
20 Amended ("1st ACs"), and Second Amended Infringement Contentions ("2nd ACs"). (Opp. at 13
21 (quoting Dkt. 304-4 at 11-12).) But those sentences do not mention Automatic Transfer or
22 discuss any of its features. Samsung also claims that Automatic Transfer was disclosed by a
23 webpage cited in its various contentions. (*Id.* at 13-14.) However, the portion of this webpage
24 Samsung now relies on was neither quoted nor discussed in Samsung's contentions. In fact,
25 Samsung's contentions quoted a different section of this webpage, in support of its accusation of
26 the "play" feature of Home Sharing. (*See* Dkt. 304-4 at 12.)

27 In addition, Samsung mischaracterizes the Court's June 26 Order when it claims that "the
28

Court has already granted Samsung's motion to amend its infringement contentions to elaborate on the automatic transfer feature, agreeing it was not a new feature." (Opp. at 14.) The Court's Order was silent about Automatic Transfer, and did not address (let alone "agree") whether it was a new feature. The Court permitted Samsung to amend its 2nd ACs to "add the exemplary operation of Home Sharing in response to the claim construction order." (Dkt. 636 at 28.) Samsung's Automatic Transfer infringement theory, however, is unrelated to how the accused devices "reside in a room or similar location," and therefore is in no way "in response to the claim construction order." Because the Court did not approve of Samsung's amendment regarding Automatic Transfer and because it is unrelated to the Court's construction of "zone [] device," Dr. Schonfeld's arguments based on this theory should be stricken.

***New "Shared Photo Stream" Theory:*** Samsung's Opposition points to no place in any of its four sets of contentions where it said anything about Shared Photo Stream. Instead, Samsung argues, based on Dr. Schonfeld's deposition testimony, that Shared Photo Stream is "just one part of [] Photo Stream." (Opp. at 14.) But Samsung's contentions nowhere include such a statement, or in any way suggest that the discussion of Photo Stream should somehow be read to cover Shared Photo Stream. That is not surprising. The Shared Photo Stream feature involves different functions and uses different software and hardware from the Photo Stream feature.[4] (Mot. at 15.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Selwyn Decl., Ex. A ¶¶ 2196-209 ("Photo Stream") and ¶¶ 2210-22 ("Shared Photo Stream").)

Recognizing that its contentions are silent about Shared Photo Stream, Samsung points to two Apple documents cited in its contentions that mention Shared Photo Stream. (Opp. at 14.) But Samsung used these documents to support its argument regarding Photo Stream, not Shared Photo Stream. (*See* Dkt.660-3 at 21-22.) In fact, the page following the cited pages of the

---

[4] In describing "Photo Stream," Samsung's contentions state that a user can "take a photo" and that photo will "automatically" appear on the user's other devices. (Dkt. 660-3 at 20.) "Shared Photo Stream" requires that a user manually select photos already on a user's device and then share them. Samsung's contentions do not describe this very different functionality.

iPhone User Guide for iOS 6.1 Software has a section titled "Shared photo stream," yet Samsung omitted this portion from its contentions. (Kolovos Decl., Ex. 4 at 72.)

***Dropped Theory Based on iTunes Running on a PC Computer:*** In its February 18, 2013 Identification of Asserted Claims and Accused Products, Samsung named "PCs with iTunes" as an accused product. (Dkt. 383 at 3.) In its April 22, 2013 Case Narrowing Statement, Samsung dropped "PCs with iTunes" as an accused product and included "iTunes"; there was no mention of PCs on the list. (Dkt. 468 at 2-3.) In its June 28, 2013 Case Narrowing Statement, Samsung named "iTunes (including iTunes Match)" as an accused product. (Dkt. 646 at 2-3.) Samsung's Opposition now appears to claim that "iTunes (including iTunes Match)" is actually four different products—iTunes Match, iTunes Server, iTunes Client for Mac, and iTunes Client for PC. (Opp. at 15.) This violates the Court's Scheduling Order, which required the parties to reduce their accused products to 18. (Dkt. 471 at 2.) Further, Samsung's disclosure of "iTunes (including iTunes Match)" gave Apple no notice that Samsung was actually accusing "PCs with iTunes"—especially where Samsung had expressly dropped "PCs with iTunes" as an accused product two Case Narrowing Statements earlier.[5][6] Because Samsung clearly dropped "PC with iTunes" as an accused product and replaced it with "iTunes (including iTunes Match)," the Court should strike Dr. Schonfeld's arguments based on "iTunes on PC."

***New "Central Storage and Interface Device" Theory:*** Samsung does not dispute that its contentions nowhere disclose any of the eight multi-server configurations that Dr. Schonfeld now contends each constitute a "central storage and interface device." Indeed, Samsung's contentions do not even hint at the possibility that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—could constitute a "central storage and interface device." But that is precisely the theory that Dr. Schonfeld now advances. It is a

---

[5] Samsung cites a sentence from Chris Wysocki's deposition testimony to suggest that when it dropped PCs with iTunes from its April 22, 2013 Case Narrowing Statement, Apple should have known it was still an accused product. (Opp. at 15.) That is a non sequitur. Nothing in Mr. Wysocki's testimony has anything to do with Samsung's identification of accused products.

[6] Samsung's contentions distinguish "iTunes" from "PCs with iTunes" (Dkt. 660-3 at 5), further indicating that it did not intend "iTunes" to include PCs once "PCs with iTunes" was dropped.

1 theory that is fundamentally different from the one advanced in Samsung's contentions, which identify single devices ("Apple's Mac products, including the iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, and Apple TV"), or a device within Apple's "iCloud Service" and "iTunes Service," as the "central storage and interface device." (Dkt. 660-3 at 2-3.)

Contrary to Samsung's argument, Apple was not "well aware of Samsung's theories" for what it alleges to constitute a "central storage and interface device" before receiving Dr. Schonfeld's report.[7] Samsung had never disclosed any of the eight server combinations. To the extent Samsung wanted to offer a new theory for what constitutes a "central storage and interface device" based upon discovery produced by Apple (and Samsung points to no discovery on this issue that Apple did not timely produce), it could have moved to amend. Having failed to do so, it cannot now offer eight completely new theories through Dr. Schonfeld.

Finally, Samsung fails to respond to Apple's point that the alternative theories expressed by Dr. Schonfeld at paragraphs 2107 n.10, 2124 n.11, and 2142 n.12 of his report are nowhere disclosed in its infringement contentions, and therefore should be stricken.

### 2. The '239 Patent

*New "Logic Board" Theory:* Samsung suggests that it met its obligation under the Patent Local Rules of "identifying specifically where each limitation of each asserted claim is found" merely by including photographs in its contentions of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But Samsung does not dispute that its contentions do not identify ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as satisfying the video card having a video capture module and the video card structures of claim 1 or the "video capture module" limitation of claim 15, as Dr. Schonfeld contends. Indeed, Samsung's contentions ***never mention*** the logic board or that the applications processor is "sitting on and affixed to the logic board," and ***do not even include a photograph*** of the logic board. Nor does Samsung dispute that it has known about the "logic board" since at least

---

[7] Samsung argues that Apple's non-infringement contentions, which describe iCloud's multi-server configuration, should cure Samsung's non-disclosure. (Opp. at 16.) However, Apple's non-infringement defenses are not a substitute for Samsung's proper contentions.

November 2012, based on documents produced by Apple by that time. (Opp. at 17-18.)

Moreover, Samsung's claim that Dr. Schonfeld is merely "using documents and testimony in support of the theory included in Samsung's contentions" is unsupported and belied by Dr. Schonfeld's own report. ████████████████████████████████████████████████████████████████████████████████████ ████████████ Indeed, at his deposition, Dr. Schonfeld admitted that when performing his infringement analysis, he ***did not even look for a video capture card in Apple's documents***. (Kolovos Decl., Ex. 5 at 397:19–401:1.)

*New Audio Components Theory:* Samsung's assertion that its contentions identified "the Audio subsystem of the application processor" (Opp. at 18) is simply untrue. As with its "video capture card" claims, Samsung's contentions make ***no mention*** of any audio subsystem or how any component constitutes the required "audio capture card." (*See* Dkt. 660, Ex. H at 6.) At most, the contentions show only an annotated processor on page 6 and an external photograph of an iPhone annotated to show the microphone on page 8. There is no language that attempts to connect the two in any way. (*Id*. at 6, 8.)

Nor is it true that Apple is not prejudiced because Samsung sought discovery of audio components and because Apple argued during *Markman* that claim 1 required an "audio capture card."[8] (Opp. at 18-19.)[9] The accused products bear no resemblance to the 20-year-old structure described in the '239 patent, and certainly do not contain audio capture cards (or video capture cards), which are add-on components for personal computers. (*See, e.g.*, Dkt. 806-9 at 4:28-41 (video capture cards are "available commercially from IBM/Intel"), 12:37-38 ("Playback unit 4 has a video card installed in an expansion slot.").) Apple was entitled to know how Samsung

---

[8] Samsung suggests that Apple is not prejudiced because it prevailed on its claim construction argument, and therefore Dr. Schonfeld should be permitted to identify new audio components even when Samsung's contentions did not. (Opp. at 18.) Samsung has it backwards. Because Apple prevailed on its claim construction, Samsung should have sought to amend its contentions for this limitation under Patent L.R. 3-6(a), but did not.

[9] Samsung accused audio codecs as infringing components for the '470 patent (Dkt. 476 at 82), and requested "Audio Chips/codec" information for both the '239 and '449 accused products (Drezdzon Decl., Ex. 6 at 2). Samsung's contentions (had they not been deficient) were the only mechanism for Apple to know which components were accused for which patents.

intended to show that the "audio capture card" requirement would be satisfied by the accused products. Moreover, this Court already found that Samsung had documents about the Cirrus codec as early as November 2012 (Dkt. 636 at 24), yet it has never made *any* attempt to identify the codec in any of its contentions. Apple's arguments during *Markman* proceedings and the fact that Samsung sought additional discovery about the codec have no bearing on Samsung's failure to provide notice of its infringement arguments.[10]

*New "Means for Exchanging" Theory:* Samsung claims that Dr. Schonfeld just "add[s] specific evidence" to its disclosed "means for exchanging" theory. (Opp. at 19.) But Samsung's contentions merely state that "on information and belief" the accused products contain "a circuit for exchanging data received by the host computer's interface with the playback unit." (Dkt. 660, Ex. H at 17.) The contentions do not identify any such circuit, any such "interface," how the units exchange data, or even the host unit or playback unit themselves. The contentions are nothing more than conclusory statements that each of the limitations must exist *somewhere* in the accused product, and provide *no notice* that Dr. Schonfeld—far from merely "adding specific evidence"—would later identify a laundry list of new components, including "wires and busses," a "USB cable," a "Wi-Fi network," a "cellular network," and an "Ethernet network." (Opp. at 19; Selwyn Decl., Ex. A ¶¶ 60-65, 1355-61, 1362-66.) Nor has Samsung even attempted to explain why it could not identify these components in its 3rd ACs, especially where the use of USB cables and networks with the accused products is publicly-available information.

*New Accusations Against Mac Computers:* In a footnote, ███████ ████████████████████████████████████████████████ ███████ However, Samsung completely ignores Apple's argument regarding Dr. Schonfeld's previously undisclosed contentions concerning Mac computers as host units and

---

[10] Samsung claims that Apple was on notice regarding audio codecs because Samsung had identified them for dependent claim 6. (Opp. at 18.) However, the codecs identified for claim 6 were for an "audio capture *device*," not the "audio capture *card*" of claim 1. Moreover, Samsung dropped claim 6 prior to amending its contentions, so these disclosures are no longer part of Samsung's contentions. (*See* Dkt. 646.) Further, that Samsung identified the codecs for claim 6 demonstrates that Samsung was aware of their existence and could have disclosed them in its original contentions.

playback units. (*Compare* Mot. at 19-21 *with* Opp. at 20.)   Samsung's silence confirms that the Court should strike these theories as well.[11]

### 3. The '449 Patent

*New "Compressor"/ "Decompressor" Theories:*  Samsung admits that its contentions identified the "video encoder" portion of the SOC as the claimed "compressor" and the "video decoder" portion of the SOC as the claimed "decompressor," and that Mr. Parulski's report contends instead that these limitations are met by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp. at 16-17.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but includes many other components as well. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Samsung has broadened its infringement theory to include these other components in response to Apple's non-infringement contentions, which demonstrate that the "video encoder" and "video decoder" *alone* cannot meet the "compressor" and "decompressor" limitations. (Kolovos Decl., Ex. 6 at 165-166; *see also* Mot. at 21-22.)  But Samsung never sought leave to amend its contentions in this way, nor does it purport to establish "good cause" for doing so now.

Samsung suggests that its infringement theory has never changed because it previously identified *some portion* of the SOC as including the "compressor" and "decompressor." (Opp. at 16-17.)  But Samsung did not simply identify the entire SOC—it identified specific components of the SOC (the "video encoder" and "video decoder") and now seeks to accuse a broader, previously unidentified range of components. In any event, that Samsung happened to mention the SOC in its contentions is meaningless given that Samsung did so for *three different limitations* ("compressor," "decompressor," and "reproducing circuit") and that the Apple SOCs contain *dozens* of components, most of which are wholly unrelated to any compression or decompression functionality.  (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[11] Samsung implies that it clarified in correspondence that Mac computers were not accused as "mobile remote units" by pointing Apple to Dr. Schonfeld's reports.  Far from clarifying the issue, that correspondence never identified any specific paragraphs in Dr. Schonfeld's report (Kolovos Decl., Ex. 7; Ex. 8), and as explained in Apple's motion, Dr. Schonfeld's report is inconsistent on this issue (Mot. at 20 n.10).

1 ██████████████████████████████████████████████)

2     **4.**     **The '087 and '596 Patents**

3     *New* ███████████ ***Theory for the '596 Patent:*** Samsung cites case law from other districts to argue that it is "not required in its interrogatory responses to divulge its infringement arguments upon which it will rely at trial." (Opp. at 5.) But this Court's rules require a party to identify "as specific[ally] as possible" in its infringement contentions "each accused apparatus, product, device, process, method, act, or other instrumentality." (Patent L.R. 3-1(b).) Samsung did not disclose its ███████████ theory in its contentions and has not shown good cause for asserting it for the first time in its expert report. *See O2Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1364-66 (Fed. Cir. 2006).

    There is no explicit reference to a ███████████ in Samsung's contentions, and Samsung does not suggest otherwise. (Opp. at 6-9.) While Samsung is apparently arguing that it *implicitly* disclosed the ███████████ theory in its contentions, this claim also lacks merit. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (*Id.* at 7.) However, Samsung cites *no* evidence for its assertion that ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Kolovos Decl., Ex. 9 at 593DOC000417 (emphasis added); *see also id.* at 593DOC000390, 593DOC000417, 593DOC000420 (██████████████████████████████████) Samsung thus did not ████████████████████████████ Moreover, contrary to Samsung's argument that its ████████████████████████████████████████████████████████████, none of this source code is discussed in Dr. Min's discussion of the ███████████. (Selwyn Decl., Ex. C ¶¶ 338, 949, 1096.) Thus, his expert report ██████████████████████████████████████████████ in its contentions. (Opp. at 7.)

███████████████████████████████████████████

███████████████████████████████████████████

████████████ (*id.*), none of which Dr. Min cites in discussing ████████████████, again showing that he was not "provid[ing] additional detail" on a theory disclosed in the contentions.[12] (Selwyn Decl., Ex. C ¶¶ 968, 1127.)

***New Testing Theories for the '087 and '596 Patents:*** Samsung argues that it properly disclosed its testing theories with *a single conclusory sentence* in its contentions,[13] but this single sentence provides no detail as to its allegations. Unlike Dr. Min's report, ████████ ███████████████████████████████████████████ ████████████████████.[14]

Samsung could have included more detail in its contentions, as it possessed the facts underlying its testing allegations. For one, the 3GPP TS 34.123 test specification is publicly available. The testimony of Apple witness Jason Shi ████████████████████ █████████████████████ (Selwyn Decl., Ex. C ¶¶ 1157, 1173-75, 1182-83) came from depositions taken in 2012. Samsung also misrepresents the record to the extent it suggests that it received relevant documents only on the last day of discovery. (Opp. at 9.) For example, Apple produced several Cetecom documents in the 794 ITC Investigation and the 1846 case before this Court, and identified them in an interrogatory response on February 14, 2013.[15] (Kolovos Decl., Ex. 10.) Similarly, several Qualcomm and AT&T documents ████████ ████ were produced in 2012 in the 794 ITC Investigation. (Selwyn Decl., Ex. C ¶¶ 1180, 1181

---

[12] In fact, the only support Dr. Min offers for his discussion of the ████████████████ is a ████████████████████ (Selwyn Decl., Ex. C ¶¶ 968, 1127). ████

[13] "Apple infringes this claim because it has performed each and every step of this claim, including but not limited to through testing and use by its employees." (Opp. at 9.)

[14] ████████████████████████████████████████ ████████████████████████████████████. *See Johnson*, 2008 WL 2620378, at *2.

[15] Additional Cetecom documents were produced on April 25, 2013 and identified by Apple on May 25, 2013. (Kolovos Decl. ¶ 12; *id.*, Ex. 11.) Similarly, many AT&T documents were produced on June 21, 2013 and identified by Apple on July 1, 2013. (*Id.*, ¶ 14; *id.*, Ex. 12.)

1 (█████████████████████████████████)[16] Accordingly, the Court should strike all portions of Dr. Min's report discussing testing.[17]

**New Indirect Infringement Theories for the '087 and '596 Patents:** Samsung did not disclose its indirect infringement allegations for the '087 patent prior to Dr. Min's expert report. Samsung cites to its OCs (Dkt. 267-3), but its **actual** 3rd ACs do not include a theory of indirect infringement for the '087 patent (Dkt. 660-1). Given that Samsung's minimal allegations were deleted from later versions of its contentions, Apple lacked notice that Samsung was pursuing a theory of indirect infringement for the '087 patent.[18]

Samsung's one-sentence allegation that Apple *induced* infringement of the '596 patent (Dkt. 660-2 at 7) does not disclose a *contributory* infringement theory. And this sentence also does not adequately disclose an inducement theory. *See Fujitsu Ltd. v. Belkin Intern., Inc.*, 2012 WL 4497966, at *9 (N.D. Cal. Sept. 28, 2012) ("Infringement Contentions must identify the alleged third-party direct infringers in order to allege indirect infringement."). Four of the five depositions Dr. Min cites in paragraphs 1151 and 1155 of his report took place in 2012. Further, none of the Apple webpages cited in paragraph 1153 of his report are mentioned in Samsung's contentions, despite being publicly available long beforehand.[19]

## II. CONCLUSION

For all of these reasons and those set forth in its opening brief, Apple respectfully requests that the Court grant its motion to strike.

Dated: November 26, 2013          /s Mark D. Selwyn
                                   Mark D. Selwyn

---

[16] An additional Qualcomm document relied up on by Dr. Min was produced on June 14, 2013. (Selwyn Decl., Ex C ¶¶ 1180-81 (citing █████████████████████████); Kolovos Decl. ¶ 15.)

[17] This Court at least should strike all discussion of testing that relates to T-Mobile, Intel, 3GPP TS 34.123, or that cites testimony taken or documents produced prior to April 30, 2013.

[18] Even if Apple were on notice, paragraphs 771, 773, and 775 are identical to paragraphs 1151, 1153, and 1155. Accordingly, for the same reasons, there is no good cause for Samsung's failure to provide Apple with details regarding its indirect infringement claim for the '087 patent.

[19] Although Samsung cited two Apple webpages in its contentions, neither document was discussed in the context of indirect infringement.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on November 26, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

/s/ Mark D. Selwyn
Mark D. Selwyn