1  QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
2  Charles K. Verhoeven (Bar No. 170151)
   charlesverhoeven@quinnemanuel.com
3  Kevin A. Smith (Bar No. 250814)
   kevinsmith@quinnemanuel.com
4  50 California Street, 22nd Floor
   San Francisco, California 94111
5  Telephone: (415) 875-6600
   Facsimile: (415) 875-6700
6
   Kevin P.B. Johnson (Bar No. 177129)
7  kevinjohnson@quinnemanuel.com
   Victoria F. Maroulis (Bar No. 202603)
8  victoriamaroulis@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
9  Redwood Shores, California 94065
   Telephone: (650) 801-5000
10 Facsimile: (650) 801-5100

11 William C. Price (Bar No. 108542)
   williamprice@quinnemanuel.com
12 865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
13 Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
14
   Attorneys for SAMSUNG ELECTRONICS
15 CO., LTD., SAMSUNG ELECTRONICS
   AMERICA, INC. and SAMSUNG
16 TELECOMMUNICATIONS AMERICA, LLC

17              UNITED STATES DISTRICT COURT

18       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19 APPLE INC., a California corporation,          CASE NO. 12-CV-00630-LHK (PSG)

20              Plaintiff,                         **SAMSUNG'S REPLY IN SUPPORT OF
                                                  ITS MOTION TO STRIKE EXPERT
21 vs.                                            TESTIMONY BASED ON PREVIOUSLY
                                                  UNDISCLOSED THEORIES**
22 SAMSUNG ELECTRONICS CO., LTD., a              Date: December 10, 2013
   Korean business entity; SAMSUNG              Time: 10:00 a.m.
23 ELECTRONICS AMERICA, INC., a New             Place: Courtroom 5
   York corporation; SAMSUNG                     Judge: Honorable Paul S. Grewal
24 TELECOMMUNICATIONS AMERICA,
   LLC, a Delaware limited liability company,   **REDACTED VERSION OF DOCUMENT
25                                               SOUGHT TO BE SEALED**
                Defendants.
26

27

28

# TABLE OF CONTENTS

**Page**

I.  THE COURT SHOULD STRIKE DR. SNOEREN'S NEW ALLEGATION THAT
    APPLE PRACTICES CLAIM 34 OF THE '959 PATENT .................................................. 1

II. THE COURT SHOULD STRIKE DR. SNOEREN'S LATE THEORIES OF
    VALIDITY ON THE '414 PATENT ............................................................................... 2

    A.  Apple Did Not Disclose A Theory That The "Synchronization Software
        Components" Of Claim 20 Must Comprise A "Plug-in Model Architecture" ......... 2

    B.  Dr. Snoeren's New Theory Regarding "Providing" A Thread Is New, And
        Directly Contradicts Binding Testimony By Apple's Corporate
        Representative ........................................................................................................ 3

III. THE COURT SHOULD STRIKE DR. SNOEREN'S NEW THEORIES OF
     VALIDITY FOR THE '959 PATENT ............................................................................ 4

IV.  THE COURT SHOULD STRIKE DR. SNOEREN'S NEW INFRINGEMENT
     THEORIES FOR THE '959 PATENT ........................................................................... 5

    A.  Apple Has Long Known That The GSA Is Built By Google, Using Source
        Code Apple Requested From Google ....................................................................... 5

        1.  Samsung Did Not Mislead Apple As To The Location Of Google
            Search Application Source Code .................................................................... 6

    B.  Dr. Snoeren Abandoned The "Internet Heuristic" Theory In Apple's
        Contentions, Replacing It With Two Brand-New Infringement Theories ............... 7

        1.  Blending Theory:  combining local search history with web
            suggestions ................................................................................................... 8

        2.  Server Theory:  Google's suggestion server ................................................. 9

        3.  New Theories Of Infringement For Five Samsung Devices ......................... 9

    C.  Apple Should Not Be Permitted To Add A New Accused Product During
        Expert Discovery ................................................................................................... 10

V.   THE COURT SHOULD STRIKE DR. SNOEREN'S SUPPLEMENTAL
     REPORTS ................................................................................................................... 10

VI.  THE COURT SHOULD STRIKE DR. MOWRY'S NEW DOCTRINE OF
     EQUIVALENTS THEORIES ...................................................................................... 10

    A.  Apple Failed To Abide By This Court's Patent Local Rules ................................ 11

    B.  Apple Is Attempting To Secure A Strategic Advantage By Amending Its
        Contentions Late And Without Good Cause .......................................................... 12

C.     Apple Made Contrary Statements To This Court When Moving To Strike
       Samsung's Doctrine Of Equivalents Positions........................................................ 13

VII.   THE COURT SHOULD STRIKE PORTIONS OF THE MOWRY REPORTS
       THAT RELY ON DISCUSSIONS WITH UNDISCLOSED ENGINEERS..................... 14

A.     Dr. Mowry's Understandings Are Based On Conversations With Two
       Apple Engineers Who Were Never Disclosed To Samsung ................................... 14

VIII.  CONCLUSION ................................................................................................................ 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

<u>Cases</u>

*AstraZeneca AB v. Hanmi USA, Inc.*,
  2011 WL 5526009 (D.N.J. Nov. 14, 2011) ............................................................................. 13

*CBS Interactive, Inc. v. Etilize, Inc.*,
  257 F.R.D. 195 (N.D. Cal. 2009) ........................................................................................... 11

*Crocs, Inc. v. Int'l Trade Comm'n*,
  598 F.3d 1294 (Fed. Cir. 2010) .............................................................................................. 15

*Genentech, Inc. v. The Tr. of the Univ. of Pennsylvania*,
  2012 WL 424985 (N.D. Cal. Feb. 9, 2012) ............................................................................ 13

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
  370 F.3d 1131 (Fed. Cir. 2004) ................................................................................................ 1

*Jones v. Hardy*,
  727 F.2d 1524 (Fed. Cir. 1984) ................................................................................................ 1

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
  2013 WL 5955548 (N.D. Cal. Nov. 6, 2013) ......................................................................... 12

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys, Inc.*,
  2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) ........................................................................ 10

*Oracle Am., Inc. v. Google Inc.*,
  2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ....................................................................... 10

## I. THE COURT SHOULD STRIKE DR. SNOEREN'S NEW ALLEGATION THAT APPLE PRACTICES CLAIM 34 OF THE '959 PATENT

Apple violated the Patent Local Rules, and the Federal Rules, by failing to disclose its new theory that Apple's products practice claim 34 of the '959 patent.  (Mot. at 3.)[1]  Apple *never* alleged claim 34 of the '959 patent was relevant to any part of its case before Dr. Snoeren served his opening report.  Yet in that report, Dr. Snoeren said Siri practiced never-before-mentioned claim 34, on the theory that Siri ███████████████████████" and that Siri ████████████████████ ████████████████████████████████████████████████ (Mot. at 12-13.)

The limitations in claim 34 that Dr. Snoeren suddenly injected into the case – a "global heuristic" that "selectively provid[es]" the information identifier to only some heuristics, but not others – do not exist in *any* '959 patent claim Apple asserted for infringement.  Samsung had no chance to evaluate claim 34, or to propose claim constructions, or to obtain discovery on Apple's alleged practice of these limitations, or to show these limitations were present in the prior art, because Samsung had no notice – none at all – of this theory.  (*Id.*)  Yet Apple now bases its entire theory of use for the '959 patent on claim 34, and even says its alleged use of claim <u>34</u> somehow shows claims <u>24</u> and <u>25</u> are ███████ (Mot. at 5) and ███████ (Dkt. 802-3 at 9-10 & n.23).

Apple never says it disclosed this specific theory, because it cannot.  It instead responds with generalities:  it said Siri practiced *the patent* (Opp. at 22), and "the Siri feature in iOS 5 practices the universal search functionality" (*id.*), somehow making claim-by-claim analysis irrelevant.  This is legally baseless:  "***[e]ach claim defines a separate invention***."  *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1148 (Fed. Cir. 2004).[2]  Apple cannot switch inventions mid-stream, or treat a claim for "a plurality of locations including local storage media and the Internet" as somehow interchangeable with a different claim for a "global heuristic" that "selectively provid[es]" a query.  (Mot. at 13.)

---

[1]   References to the Declaration of Michael L. Fazio In Support of Samsung's Motion to Strike Expert Testimony Based on Previously Undisclosed Theories, Dkt. 880-6, are cited as (Ex. _.).  References to the Supplemental Declaration of Michael L. Fazio In Support of Motion to Strike Expert Testimony Based on Previously Undisclosed Theories, filed herewith, are cited as (Supp. Ex. _.).

[2]   *Accord Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984) ("each claim must be considered as defining a separate invention").

1    Apple's only remaining argument – that its sandbagging did not prejudice Samsung – fails

2    the barest of scrutiny.  Had Apple disclosed these contentions, Samsung could have investigated

3    and tried to rebut Apple's alleged practice of claim 34, explaining that Siri does not practice the

4    claim, and also explaining why claim 34 is invalid.[3]  Instead, Apple switched horses after fact

5    discovery closed.  It bases its entire Siri theory on a claim Samsung had no reason to analyze,

6    ████████████████████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████  (Mot. at 4-5.)  This is obviously

8    prejudicial.  Apple's belated disclosures are far from harmless and should be stricken.

9    **II.    THE COURT SHOULD STRIKE DR. SNOEREN'S LATE THEORIES OF
          VALIDITY ON THE '414 PATENT**

10

11    Apple's expert, Dr. Snoeren, offered the new theory that claim 20 of the '414 patent requires

12    a "consistent plug-in model architecture" (words that appear nowhere in the patent itself) as well as

13    multiple synchronization software components that each "create" their own unique threads.  These

14    theories were never disclosed before Dr. Snoeren's report.  Apple responds with two contradictory

15    arguments:  (1) its new theory was "directly responsive to new invalidity arguments raised for the

16    very first time in the opening report of Samsung's expert," but also (2) its "responsive" arguments

17    were "long disclosed in its infringement contentions."  Neither argument is correct.

18    **A.    Apple Did Not Disclose A Theory That The "Synchronization Software
           Components" Of Claim 20 Must Comprise A "Plug-in Model Architecture"**

19    Samsung's motion established (and Apple's opposition freely admits) Dr. Snoeren's report

20    is the first time Apple disclosed its theory that Claim 20's "synchronization software components"

21    also somehow require "a plug-in model architecture."  (Mot. at 15; Opp. at 13.)  But Apple says its

22    late arguments were "responsive to new invalidity arguments raised for the very first time in the

23    opening report of Samsung's expert," and could not have been raised earlier.  (*Id.*)  This is wrong.

24    Samsung's theories are not new:  by April 2013, Samsung's contentions on Evolution, iSync,

25    Windows Mobile, Rashid, Vadlamani, and other prior art (Supp. Ex. 1 at 69-70 and 78-79)

26

27    ───────────────────────

[3]  Apple says claim 34's validity "is not properly at issue" (Opp. at 22), but Apple itself put this at issue:  Apple cannot practice an invalid claim, and cannot base its damages positions or its commercial success contentions on an invalid claim.  (Mot. at 12-13.)

28

identified in detail the "synchronization software components" required by Claim 20 (*see*, *e.g.*, Dkt. 962-10 at 33-36, 102-107 (identifying ten different synchronization software components in the Evolution prior art)).  Apple's complaint that Samsung failed to identify synchronization software components in the prior art is meritless; Apple *admits* Samsung's contentions identified these components.  (Dkt. 882-3 at 5-6 (noting examples from Samsung contentions on Evolution, such as "libecal" and "calendar conduit").)  Yet Apple's discovery responses never said the prior art failed to anticipate because the synchronization software components Samsung identified lacked a "plug-in model architecture."  (*See* Ex. 20 at 156-158, 289.)  Apple never mentioned any theory of validity based on a "plug-in model architecture" until Dr. Snoeren's report.  (*E.g.*, Ex. 13 ¶¶ 428, 454.) Apple now complains that Samsung's invalidity contentions "did not indicate whether those [synchronization software] components were part of a consistent plug-in model architecture" (Opp. at 13 (emphasis added)), but this proves the point:  Samsung could not have responded to *Apple's undisclosed theory*.  That theory should be stricken.

### B.   Dr. Snoeren's New Theory Regarding "Providing" A Thread Is New, And Directly Contradicts Binding Testimony By Apple's Corporate Representative

Dr. Snoeren's new theory is that the synchronization software components of claim 20 must not only "provide a thread" by supplying instructions that comprise the thread (or "task") – they must also *themselves create a brand new thread object* each time.  (Ex. 13 ¶¶ 493, 565-566.)  As with the "plug-in model architecture," Dr. Snoeren claims this opinion is based entirely on the '414 patent itself – not on any new theory from Samsung.  (Ex. 13 ¶ 493.)  Indeed, Samsung merely applies Apple's *own prior contention* on this term.  Apple designated Gordon Freedman, the '414 patent inventor and a person of ordinary skill, as Apple's corporate representative on the meaning of each claim of the '414 patent.  (Supp. Ex. 2 at 11:5-16.)[4]  Mr. Freedman testified that the synchronization software components of claim 20 "provide a thread" when they ███████████████ ███████████████████████ (*id*. at 129:6-15) – exactly Samsung's position.  Likewise, during claim construction, Apple defined a "thread" as a "series of steps" to execute a "series of instructions"

---

[4]  Apple now claims it qualified Mr. Freedman's corporate designation as "what *he* understands the claim terms to mean" (*id*. at 11:14-16), but this is the point:  as one of skill in the art, he testified for Apple on the meaning of the claim terms, and his testimony on that issue binds Apple.

1  (Dkt. 333 at 19) – exactly what Samsung says synchronization software components "provide."

2  Even Dr. Snoeren agrees:  to persons of skill, a "thread" is the "sequence of instructions" for a task.

3  (Dkt. 946-9, Ex. 7 ¶ 374.)  Apple, not Samsung, deviates from plain and ordinary meaning.[5]

4        Apple's late disclosures were not harmless.  They robbed Samsung of a meaningful chance

5  to respond.  Samsung could not conduct third party discovery and develop invalidity arguments in a

6  timely fashion to show the prior art invalidates under Apple's new construction.  And they kept

7  Samsung explaining how Apple's last-minute change implicates non-infringing alternatives (*e.g.*,

8  how one can easily and effectively perform synchronization operations using synchronization

9  software components that do *not* "create" or "generate" threads).  Apple should not be rewarded for

10  sandbagging Samsung and contradicting Apple's own 30(b)(6) witness at the last moment.  The

11  Court should strike Dr. Snoeren's new theories outright, or at a minimum, allow Samsung to submit

12  additional expert testimony responding to these late new theories.

13  **III.   THE COURT SHOULD STRIKE DR. SNOEREN'S NEW THEORIES OF**
    **VALIDITY FOR THE '959 PATENT**

14

15        Apple never said all "heuristics" must be implemented as client-side "modules" in order to

16  be "heuristics" in the context of the '959 patent, or that the patent was valid over prior art because

17  "heuristics" in the prior art were not client-side "modules," until it served Dr. Snoeren's expert

18  reports.  (Mot. at 16-17.)  Apple cannot cite *any* earlier disclosure of that theory.  (Opp. at 15-16.)

19  Apple can only point to one vague phrase in its July 10, 2013 infringement contentions:  "the

20  [Accused Product]'s Quick Search Box provides a plurality of heuristics, or modules."  (Opp. at 15

21  (quoting July 10, 2013 contentions).)  Even this vague phrase does not say heuristics *must be*

22  modules; at best, it says Apple is accusing heuristics that *are* allegedly modules.  A heuristic *may be*

23  ────────────
    [5]   Similarly, nowhere in Apple's infringement contentions does Apple contend that the accused
    Sync Adapters "provide" threads by "creating or instantiating" thread objects.  Apple offers *no*

24  explanat█████████████████████████████████████████████████████████████████ds.
    Instead ████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████  Moreover,
    during claim construction, Apple agreed that the term "thread" in the '414 patent ████████████o

26  a "series of steps" to execute a "series of instructions," a definition that supports █████████████
    ███████████ not Apple's new claim interpretation.  (Dkt. 333 at 19.)  While Apple now points to a

27  single statement in its contentions regarding "creat[ing] and start[ing]" a thread (Opp. at 13-14), this
    statement appears in reference to an *entirely different claim limitation* and provides no notice that

28  Apple would later change course on this term's meaning.

implemented as a module; that does not mean all heuristics *must* be so implemented to satisfy the claim.  Having failed to say at any point that "modules" are a claim requirement, where "modules" are not mentioned in the claims, Apple's expert cannot spring that new contention on Samsung.[6]

## IV.   THE COURT SHOULD STRIKE DR. SNOEREN'S NEW INFRINGEMENT THEORIES FOR THE '959 PATENT

Apple violated the Local Rules and Federal Rules by packing a host of new infringement theories in Dr. Snoeren's report.  (Mot. at 17-20.)  In large part, Apple does not dispute that those theories were new.  Instead it says its late theories are justified, because Apple could not tell what source code implemented the accused Google Search Application ("GSA" – sometimes also called the "Quick Search Box" or "Google Now")[7] until July 15, 2013.  (Opp. at 1-2.)  Apple's tale is total fiction.  Apple has known that Google provides the GSA since the earliest stages of this case.

### A.   Apple Has Long Known That The GSA Is Built By Google, Using Source Code Apple Requested From Google

In May 2012, Apple deposed Bjorn Bringert, ██████████████████████████ ████████████████████████████████████  (Supp. Ex. 5 at 64:22-65:24.)  Google designated Mr. Bringert as its 30(b)(6) witness ██████████████████████  (*Id.* at 11:6-14:7.)  Mr. Bringert ████████████████████████████████████████████████ ████████████████████████████████"  (*Id.* at 193:21-194:2.)  He testified that the GSA versions on Samsung devices ████████████████████████████████████████████ ████  (*Id.* at 114:22-115:5.)  He further stated that ████████████████████████ ████████████████████"  (*Id.* at 208:22-209:8.)  He then told Apple that the ███████████ ███████████████████████████████████████████████████

---

[6]  Apple says Samsung "understood … that the plurality of heuristics required two modules" based on a Samsung interrogatory response on a non-infringing alternative to claim 24.  (Opp. at 16.)  But that response does not state, or even imply, that to meet the claim limitation "plurality of heuristics," one or more modules is required.  It says that if there is a single module that performs "all searches" in the exact same way, then there is obviously no plurality of heuristics:  there is only one module using one heuristic.  (Dkt. 964-13 at 159.)

[7]  Some refer to only the Gingerbread and Ice Cream Sandwich versions of the Google Search application as the "Quick Search Box," while referring to the Jelly Bean version as "Google Now."  (*See* Supp. Ex. 4 at 45, n.21 (describing Google Now as the "Jelly Bean version of the QSB").)  To avoid confusion, Samsung will use the term Google Search Application to encompass all versions of this application from Gingerbread through Jelly Bean.

1  ███████████████████████████████████████████████████████████████████"

2  (*Id.* at 121:20-122:6.)  Documents produced early in the case, which Apple's expert cited in his

3  expert report, confirm Mr. Bringert's 2012 testimony.[8]  Thus, more than 18 months ago, Apple had

4  everything it needed to know that Google's code is the code for the Google Search Application.[9]

5        Apple knew Google held the relevant GSA code long before Samsung's July 15 discovery

6  responses.  Apple subpoenaed Google for this code in September 2012, requesting Google code

7  implementing the accused "Unified Search" feature.  (Rho Ex. FF at 7 at 6-9.)  In March 2013,

8  Apple itself stated that the ███████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████████████

10  █████  (Supp. Ex. 7 at 1.)  Apple then relied on Google's production of GSA code to justify its May

11  2013 motion to amend its infringement contentions for the '959 patent.  (Dkt. 525 at 8.)  And in the

12  June 2013 hearing on that motion, Apple admitted Samsung only had a ***"binary drop"*** of the

13  executable – not source code.  (Dkt. 962-9, Ex. 51 at 31:10-25 ("The Court:  Why do you need

14  source code from Google?  Isn't this available on the web? . . . Mr. Lyon:  No.  What we're talking

15  about are ***modules that Google provides to Samsung in object code format*** as I understand it . . .

16  The Court:  ***So these are binary drops?***  Mr. Lyon:  ***Binary drops, right.***  The Google Playbooks,

17  Play Movies, Play Music, the ***Google Now***, those are the types of modules we're talking about

18  here.") (emphases added).)  It is simply false for Apple to now claim it thought Samsung had the

19  source code for the Google Search Application until July 15, 2013.

            **1.**      **Samsung Did Not Mislead Apple As To The Location Of Google Search**
                     **Application Source Code**

21        Apple claims it was misled all throughout discovery regarding the operative source code.

22  Not so.  As described above, Apple knew which code was operative.  Moreover, Apple served its

---

[8]  For example, these documents explain Google provides compiled GSA executables (in Android parlance, an "application package" or APK) to Samsung, and not source code.  Apple's expert described one document, SAMNDCA630-01038734, as "████████████████████████████ ███████████████████████████████████████████████████████████████████" (Supp. Ex. 4 at 50, n.37.)  Samsung produced this document on September 11, 2012.  (Supp. Ex. 6 (Sept. 11, 2012.)

[9]  *See* Supp. Ex. 4 ¶ 129 (citing Bringert's May 2012 deposition testimony as proof that ████████████████████████████████████████████████████" and ██████████████████ ████████████████████████████████████████████").)

Case No. 12-CV-00630-LHK (PSG)
SAMSUNG'S REPLY ISO SAMSUNG'S MOT. TO STRIKE BASED ON UNDISCLOSED THEORIES

1  only discovery request on this topic June 7, 2013 – the *very last day to serve new discovery*.  (Supp.

2  Ex. 8 at 7.)[10]  Apple waited until literally the very last minute to seek this discovery.  Its complaint

3  that Samsung did not respond until July 15 is bizarre; Samsung responded to this interrogatory *on*

4  *the first day a response was due*.

5          Apple appears to be rehashing arguments the Court already rejected when denying Apple's

6  request that Samsung – not Apple – identify the code implementing features Apple was accusing.

7  (Dkt. 450.)  Samsung produced its build directories with attendant makefiles, and Apple was able to

8  determine what code was built using those materials – as Samsung explained to Apple in briefing

9  on Apple's ill-fated request.  (*See* Dkt. 424 at 17-18.)  Samsung's interrogatory responses simply

10  performed the makefile analysis that Samsung told Apple to perform itself, many months ago –

11  using only the materials Samsung produced to Apple over a year ago.  (Supp. Ex. 9 at 27.)[11]

12      **B.      Dr. Snoeren Abandoned The "Internet Heuristic" Theory In Apple's**
              **Contentions, Replacing It With Two Brand-New Infringement Theories**

13          Apple agrees Claim 24 of the '959 patent requires at least two heuristics, one of which must

14  be an "Internet heuristic" to heuristically locate content on the Internet.  (*See, e.g.*, Dkt. 944-3 at 12,

15  n. 21.)  During fact discovery, Apple's contentions said this "Internet heuristic" was code that

16  "constructs a query to be properly handled by the Google search suggestion engine."  (Dkt. 880-22,

17  Ex. 23 at 11-12.)  Dr. Snoeren's expert report abandoned that theory, in favor of two ***new*** theories:

18  (1) performing a *local* search, and locally *blending* local search results with web suggestions, is

19  heuristic (Mot. at 18-19), and (2) the Google suggestions server itself is a "heuristic."  Neither

20  theory was disclosed during fact discovery.  Both new theories should be stricken.

21

22

23

---

24      [10]   Apple claims its Interrogatory No. 41 asked Samsung to identify the Google source code
     used for the GSA.  (Opp. at 4-5.)  Not true.  This interrogatory requested *no* information about the

25  GSA, or any other accused application.  It asked for the location of the source code for the version
     of the "Android *operating system*" on each device.  (Rho Ex. D at 5.)  That is *exactly* the
     information Samsung provided.  Tellingly, Apple did not move to c████████████████e.

26      [11]   Apple claims to have relied on Samsung source code in the ██████████████████████████

27  at 5), but the makefiles in Samsung's build directories made clear that the ██████████████████████████
     ████████████████████████████████████████ packages, depending on the device.

28  (Supp. Ex. 9 at 27.)

---

### 1.     Blending Theory:  combining local search history with web suggestions

Apple's contentions said the "Internet heuristic" was satisfied because the GSA *constructs* a query and then *sends* that query to the Google suggestion server.  (*Id.* at 11-12.)  Apple now accuses a different "Internet heuristic," based on processing that occurs only after you *receive results* from a search – long after a query is constructed and sent.  Specifically, Apple now says the GSA includes an "Internet heuristic" because long *after* a query is constructed, transmitted, and executed, and even *after* remote search suggestions are received by the local device, the remote suggestions received from the server are then *blended* with local search suggestions stored on the local device. (Rho Ex. L ¶¶ 264-66, 286-88.)

This is a new theory:  it targets local search history and blending functionality mentioned nowhere in Apple's contentions, and relates to a different step in the search process.  Dr. Snoeren does not simply add "additional factual detail and explanation" (Opp. at 8) to the theory in Apple's contentions.  (Mot. at 18-19.)  He *abandons* that theory.  He does not opine that constructing a query or sending a query, or even receiving the results of the query, is "heuristic."  It is only the blending operation – the combination of search results with local history – that Dr. Snoeren now identifies as "heuristic."  (*Compare* Opp. at 8 *with* Rho Ex. L ¶¶ 264-66, 286-88.)

Apple has no excuse for its late disclosure of this theory about combining local search history with remote search results.  Apple's own expert says this newly-accused functionality is "clearly demonstrated *through simply using the Accused Products*."  (Supp. Ex. 4 ¶¶ 155, 160 (emphasis added).)[12]  Thus, if this functionality was "heuristic," it was discoverable "through simply using the Accused Products," and Apple should have accused it much earlier, with no need for any source code analysis.  Moreover, Apple's claim that it could not "discover" this functionality earlier because of code confusion is absurd.  Apple says it could not allege this "blending" function was heuristic without knowing whether it was Google's proprietary code, or open-source code in Samsung's build directories, that was used to build the GSA.  (Opp. at 3-7.)

---

[12]   In fact, the Accused Products included a user-facing option to "Clear on-device search history" or "Clear shortcuts" (which included the on-device search history).  (Dkt. 882-13, Ex. 7 at ¶¶ 186, 194; Supp. Ex. 3 (Rinard Rebuttal Report) ¶ 172.)

This makes no sense; ***the same blending functionality is present in both sets of code.***  Indeed, Apple's late infringement theory ***accuses the open-source version*** of this blending code for some devices.[13]  Apple's "confusion" about proprietary and open-source code is a smokescreen:  both sets of code include this functionality, and so neither set of code excuses Apple's late theory.

### 2.  Server Theory:  Google's suggestion server

Dr. Snoeren launches a second brand-new theory:  although Apple's contentions only discussed a *client* (*i.e.*, the device), not the *server*, Dr. Snoeren now says the "Internet heuristic" is actually the Google suggestions *server*.  (Mot. at 19-20.)  Apple concedes its infringement contentions do not identify the Google suggestions server as a "heuristic."  (Opp. at 9.)  Apple's only claim to have disclosed this server infringement theory is a declaration from a prior expert witness, Dr. Polish, during the *preliminary injunction* phase, relating to a different limitation ("heuristic module") of a *different claim* (claim 6) of a *different patent* (the '604 patent).  (Opp. at 9.)  This is obviously not a substitute for infringement contentions – and even if it were, the declaration does not disclose the theory Apple now advances.  Dr. Polish did not argue that the Google suggestions *server* met the "heuristic module" claim limitation; Dr. Polish alleged that the "Google Search Suggestions module" *on the device* "is also a heuristic module."  (Dkt. 179 ¶ 52.) Apple does not claim good cause for its failure to disclose this theory in a timely manner, and the Court should strike it.

### 3.  New Theories Of Infringement For Five Samsung Devices

Apple's infringement contentions for five Samsung products disclose no infringement theory regarding any "Google heuristic" in Ice Cream Sandwich and Jelly Bean versions of those devices.  (Mot. at 19-20.)  Apple says it *did* disclose an infringement theory for these devices, but cites only to contentions for a *different* device as support for its claim.  (Opp. at 11.)  Apple cannot disclose its infringement theory for one product in contentions for another.

---

[13]  *See* Supp. Ex. 4 ¶¶ 158-251 (for Gingerbread devices, accusing "blending" functionality based on ███████████████████████████████████████████; Dkt. 882-13, Ex. 7 ¶¶ 1 ███████████████████████████me, and noting that accused functionality is provided by ███████████████████████████ ████.

C.    **Apple Should Not Be Permitted To Add A New Accused Product During Expert Discovery**

Incredibly, Apple seeks to add a new accused product for the '959 patent, the Tab 2 10.1, in expert discovery.  (Mot. at 5-6.)  This violates the basic tenets of the Court's Patent Local Rules and the Federal Rules of Civil Procedure.  Apple claims it was not aware the product had the allegedly infringing feature (Opp. at 22-23), citing to a Samsung interrogatory response served on July 15, 2013.  (Opp. at 23.)  Yet this same information was already included in an earlier response to the same interrogatory served on *April 5*, 2013.  (Supp. Ex. 10 at 14.)  Apple's allegation that the Tab 2 10.1 operates in the same way as other accused products is "irrelevant to the question of whether [Apple]'s disclosures adequately supported the infringement accusations in the [Snoeren] report." *Oracle Am., Inc. v. Google Inc.*, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011).

## V.    THE COURT SHOULD STRIKE DR. SNOEREN'S SUPPLEMENTAL REPORTS

Apple violated this Court's scheduling order by submitting two supplemental expert reports without seeking any leave of Court.  (Mot. at 21.)  Dr. Snoeren's opening report identifies a "███████████████" as the "module" that locates information on the Internet.  (Rho Ex. L at ¶¶ 268, 290.)  Dr. Snoeren correctly notes that, ████████████████████████████████ ███████████████" (Ex. 16 at 17 (emphasis added).)  The Rinard Rebuttal Report identified serious flaws in Dr. Snoeren's analysis, including that the ████████████████████ ██████ (Supp. Ex. 3 at ¶140; Rho Ex. I at ¶¶ 141-165.)  Dr. Snoeren, the day before his deposition, served a supplemental report opining that the ████████████████████ ██████ a new opinion that is entirely inconsistent with his statements regarding "entry points" to Content Providers.  (Ex. 16 at 13, 17-19, 24.)  This should not be permitted.[14]

## VI.   THE COURT SHOULD STRIKE DR. MOWRY'S NEW DOCTRINE OF EQUIVALENTS THEORIES

Apple does not dispute that it failed to abide by this Court's Patent Local Rules and did not disclose doctrine of equivalents theories at the required time, early in discovery.  Apple claims it

---

[14]  *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, 2008 WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008) ("A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report.").

should be given a pass for this failure because of a non-infringement position offered by Samsung in a supplemental interrogatory response.[15]   But the infringement contentions required by the Patent Local Rules are not conditioned on an accused infringer's responses.   The patentee has a plain obligation to disclose its infringement theories, including any under the doctrine of equivalents, early in discovery to put the accused infringer on notice and allow it to conduct the necessary discovery.   Apple did not do so.   Its expert's doctrine of equivalents opinions should therefore be stricken.

### A.   Apple Failed To Abide By This Court's Patent Local Rules

This Court's Patent Local Rules require a patentee to disclose early in discovery "[w]hether each limitation of each asserted claim is alleged to be literally present ***or present under the doctrine of equivalents*** in the Accused Instrumentality."   Pat. Loc. R. 3-1(e) (emphasis added).   Apple plainly failed to abide by this Rule.   Apple's only excuse is to claim that its late disclosure was proper based on a non-infringement theory offered by Samsung at the end of fact discovery.   But this puts the cart before the horse.   The Patent Local Rules require early disclosure so that an accused infringer is on notice and can conduct the necessary discovery to develop its defenses.   *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 200 (N.D. Cal. 2009) ("In general, the Patent Local Rules exist to further the goal of full and timely discovery and provide all parties with adequate notice and information with which to litigate their cases.").   The Rules allow a patentee to seek leave to amend its contentions for good cause – which Apple never did here – but not in response to a non-infringement position.   *See* Pat. Loc. R. 3-6.

Apple focuses on its doctrine of equivalents contentions for the "user interface" limitation, but relegates to a footnote its response about other untimely contentions.   For instance, Apple's expert offered new doctrine of equivalents theories for the "analyzer server" limitation.   In its footnote, Apple alleges that Dr. Mowry offered this new opinion "in the event the 'analyzer server'

---

[15]   Apple belatedly argues that if the Court strikes its doctrine of equivalents contentions, then the Court should also strike Samsung's non-infringement argument identified in its supplemental interrogatory response.   Aside from the fact that the two things are unrelated, Apple never previously complained about Samsung's supplemental interrogatory responses or timely moved to strike them.   Apple also fails to mention the 175,000 pages of documents it produced in the final week or the 32 interrogatory responses it supplemented on the last day of discovery.

term is construed under the erroneous construction Samsung and its expert proposes." (Opp. at 17 n.15.) This misrepresents the facts. Samsung never offered any construction for this term and Dr. Mowry's opinion is in his *opening* report, before he or Apple ever received anything from Samsung's expert. Apple has no basis for including these untimely opinions and this Court should strike them.

**B.** **Apple Is Attempting To Secure A Strategic Advantage By Amending Its Contentions Late And Without Good Cause**

Apple claims that Samsung suffered no material prejudice based on Apple's failure to timely disclose its infringement contentions. But that is not the question; the question is whether Apple had good cause to wait so long to disclose an infringement theory. The plain answer is that Apple did not. The Local Rules require Apple to show good cause because ***prejudice should be assumed*** when a party waits so long. *See Linex Techs., Inc. v. Hewlett-Packard Co.*, 2013 WL 5955548, at *1 (N.D. Cal. Nov. 6, 2013) (If "the moving party was not diligent in amending its infringement contentions, [the Court] does not need to consider the question of prejudice to the nonmoving party.").

Moreover, Apple is incorrect that Samsung suffered no prejudice. Samsung assumed throughout discovery that Apple was not relying on the doctrine of equivalents and conducted discovery accordingly. Apple's failure to disclose this theory until its expert report deprived Samsung of meaningful information in conducting discovery. Samsung prepared claim construction positions, selected prior art, and deposed inventors and other fact witnesses under the assumption that Apple was only pursuing literal infringement.[16] Apple's 180-degree switch after the close of fact discovery deprived Samsung of the ability to conduct the necessary discovery. Indeed, Samsung would suffer even worse prejudice than what Apple complained of when it opposed Samsung's motion to add doctrine of equivalents theories *during fact discovery*. (Mot. at 22; *see* Dkt. 516-2 at 18 ("Forcing Apple to defend against new equivalents theories now . . . would

---

[16] The Court required the parties to substantially narrow their invalidity theories before the end of fact discovery. (Dkt. 471 at 2 ("By July 5, 2013, the parties will be required to reduce their invalidity references/systems/combinations to 45 per side.").) Thus, Samsung was required to make hard choices that may have differed had Samsung known Apple was relying on the doctrine of equivalents.

1    be extremely burdensome to Apple by requiring it to reevaluate prior art and claim construction . . .

2    to launch extensive new consultation and investigation with its experts, and potentially to re-depose

3    party and third-party witnesses, such as inventors.").)

4           Apple's sole case in support of no prejudice is plainly distinguishable.  In *Genentech, Inc. v.*

5    *The Tr. of the Univ. of Pennsylvania*, 2012 WL 424985, at *3 (N.D. Cal. Feb. 9, 2012), this Court

6    denied the University of Pennsylvania's motion to strike portions of a Genentech expert report that

7    purportedly advanced theories or facts not set forth in Genentech's inequitable conduct claims.  The

8    University argued it had suffered prejudice based on Genentech's failure to disclose its theories

9    early enough for the University to undertake relevant fact discovery and scientific testing.  *Id.* at *4.

10   The Court determined that because Genentech's "interrogatory responses directly mirror[ed]" its

11   expert reports and there was opportunity for additional discovery, there was no prejudice.  *Id.* at *5.

12   Here, Apple failed to provide *any* notice of its doctrine of equivalents theories, thus allowing no

13   opportunity for any discovery at all.

14          **C.      Apple Made Contrary Statements To This Court When Moving To Strike
                    Samsung's Doctrine Of Equivalents Positions**

15          Apple barely addresses its objection to Samsung's motion for leave to add doctrine of

16   equivalents arguments in this case, attempting to distinguish those arguments by again alleging that

17   its untimely contentions were in response to a Samsung non-infringement position.[17]  (Opp. at 18.)

18   For all the reasons discussed above, this is simply wrong.  Apple may wish to ignore it, but it cannot

19   hide from the fact that it took contradictory positions earlier in ***this case***, and the Court relied on

20   those arguments to conclude that Samsung "should have provided its DOE theories in ***its***

21   ***contentions at the beginning of this case*** if it had a good-faith basis to assert them."  (Dkt. 636 at

22   7.)

23          Apple's reliance on a New Jersey district court case is inapposite.  In *AstraZeneca AB v.*

24   *Hanmi USA, Inc.*, 2011 WL 5526009, at *6,8 (D.N.J. Nov. 14, 2011), the district court granted

25   AstraZeneca's motion to add three new patent claims based on Hanmi's invalidity contentions.  The

---

27   [17]  Apple also misrepresents Samsung's argument as relying on the Court's striking of doctrine of equivalents arguments in the prior case.  (Opp. at 18.)  This is plainly false, Samsung cites to the Court's decision in ***this*** case denying Samsung's motion to amend.  (Mot. at 21-22.)

1   court determined that "not only . . . was [plaintiff] diligent in seeking to assert [the] claims after

2   receiving [the defendant's] Invalidity Contentions, but also that their efforts to move to amend after

3   learning that [the defendant] would not consent to the same were diligent too." *Id.* at *6.  The court

4   also determined that the defendant would have ample time during discovery to address the

5   plaintiff's new contentions.  *Id.*  Here, Apple waited until expert discovery to add its new

6   infringement contentions, with no justification, depriving Samsung of the opportunity to conduct

7   *any* discovery.

8   **VII.   THE COURT SHOULD STRIKE PORTIONS OF THE MOWRY REPORTS THAT RELY ON DISCUSSIONS WITH UNDISCLOSED ENGINEERS**

9
10          Apple acknowledges that it failed to disclose at least one Apple engineer, Alexandre Moha,

    whom Dr. Mowry allegedly spoke with concerning Apple's claimed practice of the '647 patent.
11
    Apple also does not dispute that another Apple engineer relied on by Dr. Mowry, Olivier Bonnet,
12
    was not explicitly identified by Apple in its initial disclosures, interrogatory responses, or Dr.
13
    Mowry's reports in this case.  Rather, Apple contends that it disclosed Mr. Bonnet by ███████
14
    ████████████████████████████████████████████████████████████████████████████████████
15
    Because Apple failed to properly disclose these engineers in its initial disclosures or interrogatory
16
    responses, Dr. Mowry's opinions concerning Apple's practice of the patent should be stricken, or
17
    Samsung should be afforded the opportunity to depose those engineers.[18]
18
19          **A.      Dr. Mowry's Understandings Are Based On Conversations With Two Apple Engineers Who Were Never Disclosed To Samsung**

20          Apple provides no explanation for why it did not identify Mr. Moha or Mr. Bonnet in its

21   initial disclosures, or otherwise make them available to Samsung for deposition.  (*See* Opp. at 21.)

22   Incredibly, Apple claims that it disclosed Mr. Bonnet, not in its initial disclosures or even in the

23   body of any of its discovery responses, but in the hundreds of pages of Dr. Mowry's reports from

24   past cases that Apple incorporated by reference in one of its interrogatory responses.  (*See* Opp. at

25   19, 21; *see also* Rho Ex. V at ¶¶ 184, 186; Ex. 8 at 51.)  Indeed, Apple did not provide any specific

26   _____
        [18]   Apple claims that Samsung was afforded the opportunity to "explore the alleged bases for
27   how Apple is pra███████████████████████████████████████████████████████████ Mr.
    Thomas Deniau██████
28   ████████████████████████████████████████████████████████████

1   cites to those reports, instead incorporating them wholly.  Apple could have simply included Mr.

2   Bonnet's name but chose not to.

3           Apple further claims that Samsung has no evidence Dr. Mowry relied on his conversations

4   with these individuals.  (*See id.*)  But Dr. Mowry unequivocally stated he relied on them:

5       •   "Based on my review of certain iOS code *and my discussions with Apple engineers,*
            it is my understanding that Apple devices running iOS 3.0 through 6.0 practice the
6           asserted claims of the '647 Patent."  (Ex. 27 at ¶ 300);

7       •   ████████████████████████████████████████████████████

8           ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████   It was not until after Dr. Mowry's deposition that Apple identified those names.  (Ex. 32.)

12          Apple claims that Dr. Mowry did not rely on those conversations to establish Apple's

13  alleged practice of the '647 patent, but Dr. Mowry offers no other basis for his opinion other than

14  "certain iOS code" that he failed to identify (except for iOS version 3.1.3).  Other than 3.1.3, Dr.

15  Mowry failed to provide any claim charts or any analysis whatsoever to demonstrate that Apple's

16  products practice the patent.  And Apple's assertion that it produced all the code is insufficient; it is

17  Apple's burden to show that it practices the patent, not Samsung's.  *See Crocs, Inc. v. Int'l Trade*

18  *Comm'n*, 598 F.3d 1294, 1311 (Fed. Cir. 2010) ("A prima facie case of nexus is made when *the*

19  *patentee shows* both that there is commercial success, and that the product that is commercially

20  successful *is the invention disclosed and claimed* in the patent.") (emphasis added).  If Apple is

21  willing to abandon its only support for this position, then Dr. Mowry's opinions should be stricken.

22  Otherwise, at a minimum, the Court should allow Samsung to depose Messrs. Bonnet and Moha.

23  **VIII.   CONCLUSION**

24          For the foregoing reasons, Samsung's motion to strike should be granted.

25

26

27

28

SAMSUNG'S REPLY ISO SAMSUNG'S MOT. TO STRIKE BASED ON UNDISCLOSED THEORIES

1   DATED:  November 26, 2013     QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

                        By */s/ Victoria F. Maroulis*

3                                Charles K. Verhoeven
                                Kevin P.B. Johnson

4                                Victoria F. Maroulis
                                William C. Price

5                                Michael L. Fazio

6

                                Attorneys for

7                                SAMSUNG ELECTRONICS CO., LTD.,
                                SAMSUNG ELECTRONICS AMERICA, INC.,

8                                and SAMSUNG TELECOMMUNICATIONS
                                AMERICA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S REPLY ISO SAMSUNG'S MOT. TO STRIKE BASED ON UNDISCLOSED THEORIES

**ATTESTATION OF E-FILED SIGNATURE**

I, Patrick D. Curran, am the ECF user whose ID and password are being used to file Samsung's Reply In Support Of Samsung's Motion To Strike Expert Testimony Based On Previously Undisclosed Theories.  In compliance with Civil L.R. 5-1(i), I hereby attest that Victoria F. Maroulis has concurred in this filing.

Dated:  November 26, 2013                            */s/ Patrick D. Curran*
                                                        Patrick D. Curran

SAMSUNG'S REPLY ISO SAMSUNG'S MOT. TO STRIKE BASED ON UNDISCLOSED THEORIES