# EXHIBIT 7

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation; SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation; and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

Defendants.

CASE NO. 12-cv-00630-LHK

**REPLY EXPERT DECLARATION OF DR.
TODD C. MOWRY CONCERNING U.S.
PATENT NO. 5,946,647**

**Hearing:**
Date:
Time:
Place:
Judge:

REPLY EXPERT DECLARATION OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-0630-LHK

Gibson, Dunn &
Crutcher LLP

before Pandit's priority date. *See* Mowry Original Decl., Ex. 15, at 179; *see also* Ex. 9 (claim chart submitted in the '710 Investigation showing conceptions and reduction to practice).

- Pandit does not disclose "detecting structures" within the meaning of the '647 Patent claims because Pandit requires that a user manually locate and mark, or "accent," any text for which the user wishes to perform an operation. This contrasts with the '647 Patent's use of an analyzer server that automatically finds structures within unstructured data.

- Pandit also does not disclose "detecting structures" within the meaning of the '647 Patent claims because the apparatus disclosed in Pandit operates on only a single piece of text manually identified by a user at any given time. In other words, Pandit does not detect more than one structure in data.

- Pandit does not disclose "a user interface enabling the selection of a detected structure" because Pandit requires that a user manually select text *before* Pandit attempts to recognize that text as performing to a particular class. This reverses the steps disclosed in the '647 patent in a material, and critical, way.

### 4. Nokia

27.    Nokia's European Patent Publication No. 0 458 563 A2 ("Nokia") does not anticipate or render obvious claims 1 and 8 of the '647 Patent. Nokia discloses a "telephone apparatus" capable of receiving text messages and isolating potential phone numbers that can be transferred to the phone's register for dialing. Nokia does not anticipate or render obvious claims 1 and 8 of the '647 Patent for at least the following reasons:

- Nokia detects only one type of "structure", as that term is taught by the '647 Patent – a phone number. By contrast, the '647 Patent requires that multiple different types of structures must be detected.

- Nokia does not disclose "linking actions to detected structures" as claimed in the '647 Patent. Instead, Nokia teaches that when a user accepts a phone number displayed in a

1    contrast, the '647 Patent requires that multiple different types of structures must be

2    detected.

3    • Sidekick's Dialer feature links only one purported "action" – dialing – to any

4    "structure" it allegedly recognizes.  Claim 1 of the '647 Patent, by contrast, requires

5    that multiple actions must be linked to multiple detected structures.

6    • Sidekick's Dialer feature does not disclose "a user interface enabling the selection of a

7    detected structure and a linked action", as required by claim 1, because the feature

8    highlights only one phone number at a time; the user is never allowed to "select[]" one

9    structure or one action from a set of structures or actions.

10   • Sidekick's Dialer feature does not have a user interface that "highlights detected

11   structures", as required by claim 8 of the '647 Patent.  Instead, Sidekick only ever

12   highlights a single phone number and prompts the user to command the system to find

13   and highlight the next phone number, if one even exists.

14        **6.    MHonArc + Mosaic Web Browser**

15   29.    Finally, the combination of the Mosaic web browser and MHonArc program, which

16   Dr. Cohen discusses in only a single paragraph of his declaration, does not render claims 1 and 8

17   obvious. MHonArc combined with Mosaic allowed for the conversion of plain text emails into

18   hypertext markup language (HTML), specifically converting any text appearing in an email header

19   field into an email link, and any text containing certain prefixes (e.g., "http://", or "ftp://") into a URL

20   recognizable by an internet browser.  The combination of MHonArc and Mosaic does not render

21   obvious claims 1 and 8 of the '647 Patent for at least the following reasons:

22   • MHonArc combined with Mosaic does not "detect[]" any "structures" as required in

23   the '647 Patent.  Instead, MHonArc simply converted anything that appeared in an

24   email header (i.e., in the "To" or "From" fields) into an email link.  Similarly,

25   MHonArc would convert any text containing specified prefixes (such as "http://") in

26   the body of an email into a hyperlink.  Thus, MHonArc does not "detect" anything,

27   but rather simply converts pre-marked (here by prefixes or by location in a header)

28   REPLY EXPERT DECLARATION OF DR .TODD C.
     MOWRY CONCERNING U.S. PATENT NO.
     5,946,647 – CASE NO. 12-cv-0630-LHK          14

Gibson, Dunn &
Crutcher LLP

fragments, etc.) of candidate actions to associate with, and thus perform, on each identified structure." '647 Patent at 2:12-20.

121.     As Dr. Cohen describes it, the Dialer function of Sidekick recognizes only a single type of data – phone numbers – and allows only one type of action associated with each phone number, as discussed further below. Cohen Decl., ¶ 127. Dr. Cohen nowhere claims, nor do the selected Sidekick materials that he appends to his declaration state, that the Sidekick Dialer recognizes any type of data other than phone numbers. Accordingly, the Sidekick system does not "detect[] structures in data" as required in the preamble to Claim 1.

122.     As explained in above, the '647 Patent teaches that the system itself detects structures in data prior to linking those structures to candidate actions (i.e., actions that a user would normally perform on those structures). *See* '647 Patent at 2:49-53 ("Upon selection of a detected structure, the user interface presents and enables selection of candidate actions."). Dr. Cohen fails to address the fact that, unlike the system disclosed in the '647 Patent, the computer-based system of Sidekick does not itself perform any detection.

123.     Instead, Sidekick's Dialer feature requires a user to enter various prompts to enable a single telephone number to be highlighted at any given time. Specifically, after installing the Sidekick application on a computer and opening a document, a user must enter a series of keystrokes – specifically, "Ctrl" and "Alt" – in order to activate Sidekick. *See* Cohen Exh. GG, Sidekick 1.5 Owner's Handbook, 1985, Borland International ("Sidekick Handbook"), at 13. Then, the user must activate the Dialer feature in particular by pressing, e.g., "Alt" and "D". Sidekick Handbook, at 29. Only then does the Sidekick Dialer highlight a single item – the first telephone number appearing in a document. Sidekick Handbook, at 30 ("If you have more than one number on the screen that looks like a phone number, the first one will be chosen.").

124.     Thus, unlike the '647 Patent, the Sidekick system requires user prompts to highlight a single piece of data, as shown in the Sidekick screenshots below:

Gibson, Dunn &
Crutcher LLP



**Figure 2-7: Dialer Window**

**Sidekick Handbook, at 29.**



**Cohen Decl., ¶ 131.**

125.     This is contrary to both the '647 Patent's teaching of a system that itself detects multiple structures in data, without a user having to prompt additional detection, and the preamble claim language "detect[] structures in data." ('647 Patent at Claim 1 ("A computer-based system for detecting structures in data and performing actions on detected structures"), 5:29-31 ("As illustrated in Fig. 6, analyzer server 220 identifies the phone number, post-office address, e-mail address and name."). This functionality is shown in Figure 6 of the '647 Patent, in which multiple data structures have been detected and presented to the user automatically:

REPLY EXPERT DECLARATION OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-0630-LHK          47

Gibson, Dunn &
Crutcher LLP

prior art references similar to Sidekick by including in the body of the patent a discussion of the limited functionality of these systems. '647 Patent at 1:52-65. Indeed, the patentees gave the specific example of systems only able to detect telephone numbers, and only able to allow dialing of those numbers, as prior art systems over which they were inventing. '647 Patent at 1:52-65. The patent was therefore granted over background art that was functionally identical to Sidekick.[6]

### 4.    "a user interface enabling the selection of a detected structure and a linked action; and;"

139.    The Sidekick Dialer does not disclose a "user interface enabling the selection of a detected structure and a linked action."

140.    The "selection of a detected structure," as written in the claim limitation, necessarily requires that a particular detected structure can be chosen from a set of detected structures. Sidekick, however, highlights only one structure at a time. Cohen Decl., ¶ 131. Should the user then hit an arrow key on his or her keyboard, Sidekick will detect the next structure, to the extent one exists in the document. Cohen Decl., ¶ 131. At no point does Sidekick allow a user to select from a multitude of detected structures. This can be seen from the screenshot that Dr. Cohen relies upon in paragraph 131 of his declaration, wherein only one phone number has been identified by Sidekick and highlighted for the user, with no indication that Sidetrack has recognized, or will recognize, a second phone number appearing further down on the screen (beneath the name "John Smith"):

---

[6]  Notably, claims 1 and 8, among others, were recently reaffirmed in reexamination as well.



**Sidekick Screenshot**

141.     Thus, at any given time, the Sidekick system detects and selects only one telephone number, and chooses to present that number to the user. Sidekick Handbook, at 30 ("If you have more than one number on the screen that looks like a phone number, the first one will be chosen."). This, again, is contrary to the teachings of the '647 Patent, in which multiple structures are detected, after which a user can choose any one on which to perform an operation via the user interface. '647 Patent at 3:5-14 ("In a display-type environment, application program interface 230 retrieves the locations in document 210 of the presentation regions for the detected structures from application 167. Application program interface 230 then transmits this location information to user interface 240, which highlights the detected structures, although other presentation mechanisms can be used. User interface 240 enables selection of an identified structure by making the presentation regions mouse-sensitive, i.e. aware when a mouse event such as mouse-down operation is performed while the cursor is over the region.").

142.     Similarly, Sidekick does not perform the claim limitation of a "user interface enabling the selection of . . . a linked action." As with the selection of a detected structure, the selection of an action requires that there be a set of multiple actions from which to select. When the Sidekick Dialer recognizes a telephone number, however, only a single operation – using the computer's modem to

would instead call a *number*. Likewise, the "Options" button is not linked – as required by the claim – to the words "Bob" or "Call" nor does it cause a sequence of operations to be performed on those words. Nor would the "Fax" button in the fax slip cause the CPU to perform a sequence of operations on "fax" or "Bob."

160.     Finally, under the two examples identified by Dr. Cohen, the Newton "system" does not disclose an analyzer server for linking actions to the detected structures because, even assuming Netwon did link an action, it did not link more than one action to a detected structure as required by claim 1.

### 4.     "a user interface enabling the selection of a detected structure and a linked action; and;"

161.     It is my opinion that Newton does not disclose a user interface enabling the selection of a detected structure and a linked action for at least the reason that it does not disclose linking actions to detected structures, as explained above. For example, neither the call menu nor the fax menu enable the selection of a linked action that causes the CPU to perform a sequence of operations on the structure to which it is linked.

162.     In addition, Newton does not disclose enabling the selection of a detected structure. In the examples above, the Intelligent Assistant was not activated unless the user hit the "Assist" button, at which point the Intelligent Assistant would retrieve any text the user recently wrote. Cohen Decl., ¶ 144. Even assuming that the Intelligent Assistant detected structures in this text, at no point did it allow the user to "select" a detected structure. At most, if the Assistant does not understand a particular command entered by the user, it will prompt the user to resolve the ambiguity. *See* Cohen Decl., ¶ 151 (citing Newton at 11-2) ("The task slip is one means by which the Assistant resolves ambiguity – for example, the user can correct the task slip if the Assistant chooses the wrong Bob from the Names soup, or the user can write Bob's fax number on the slip.") Asking a user to clarify which person he or she intended to contact (i.e., which entry might pertain to the single word, "Bob") is clearly not the same as "enabling the selection of a detected structure" among multiple detected structures, pulled from the text of a document, as taught by the '647 patent.

REPLY EXPERT DECLARATION OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-0630-LHK                    61

Gibson, Dunn &
Crutcher LLP

208.     First, Pandit does not disclose "detecting structures in the data". ==Rather, than detect structures, Pandit teaches that a user must manually find text that may contain a structure. Indeed, Pandit repeatedly states that the user must "accent," i.e., find/select, the relevant text *before* the system operates on that piece of text.== *See, e.g.*, '636 Patent, 2:5-8 ("a date 11 in text appearing on a video monitor is *accented* (step 21 of FIG. 2) *for example by shading, underlining or pointing to and clicking on the text*. The invention recognizes the accented text . . . .") (emphasis added); cl. 1 ("A computer-implemented method for processing a selected text, comprising the steps of: (a) recognizing the selected text as belonging to . . .").) Figure 2 of Pandit further makes clear that the user must *first* manually select a piece of text before any potential recognition occurs:



**Fig. 2 of Pandit.**

209.     In one of the examples, the '636 patent similarly explains that the user must manually find and "accent" otherwise undetected text, as opposed to computer program routines finding and identifying instances of a pattern that have semantic significance:

> "In a preferred embodiment, *in the event the accented text is not recognized*, i.e., the text is not of the specific type or class recognizable by any of the libraries provided, a menu bar having a list of one or more menu names of default operations can be made to appear (step 27)."

REPLY EXPERT DECLARATION OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-0630-LHK          84

Gibson, Dunn &
Crutcher LLP

'636 Patent, 3:23-27 (emphasis added).

210.     Pandit also consistently states that the system attempts to recognize "*the* accented text," not structures *within* the accented text. '636 patent, 2:8 (emphasis added); *see also* '636 patent, 2:33-35 ("The pull-down menus provided by the invention identify the operations and/or programs which relate to the class of text accented, highlighted, or otherwise indicated."); 3:23-27 ("in the event the accented text is not recognized, i.e., the text is not of the specific type or class recognizable by any of the libraries provided . . .); cl. 1 ("recognizing the selected text as belonging to a predetermined class . . ."); Figs. 1a-f.

211.     Pandit therefore teaches a computer-based method that requires, as input, text that has been manually selected by a user. '636 Patent, claim 1 ("A computer-implemented method for processing *selected* text . . .") (emphasis added).  This is precisely the type of background art that the '647 Patent teaches over.  '647 Patent, 1:19-22 ("visually searching data files or documents to find these structures is laborious and cognitively disruptive, especially if the document is lengthy and hard to follow.").

212.     By contrast, "detecting" as taught by the '647 Patent involves an analyzer server that automatically locates structures within a body of text. *See, e.g.,* '647 Patent, 3:61-64 ("Analyzer server 220 comprises one or more pattern analysis units, such as a parser and grammars or a fast string search function and dictionaries, which uses patterns to parse document 210 for recognizable structures.")  Because Pandit does not disclose automatically finding structures within data, the patent does not disclose "detecting structures".

213.     Additionally, Pandit does not disclose "detecting *structures* [i.e., more than one structure] in the data."  The plain and ordinary meaning of "structures" in claim 1 requires the analyzer server to be capable of detecting more than one structure in the data.  As mentioned in the previous paragraph, Pandit only discloses manually selecting text, wherein the entirety of what is manually selected is either that either recognized or not. '636 Patent, claim 1 ("A computer-implemented method for processing a selected text, comprising the steps of: (a) recognizing the select text . . .").  Pandit therefore does not detect more than one structure in data as required by claim 1.

214.    Pandit also does not disclose "an analyzer server for . . . for linking actions to the detected structures" for at least the reason that structures are not "detected" in text as described in the preceding paragraphs of this section.

### 4.    "a user interface enabling the selection of a detected structure and a linked action;"

215.    Pandit does not disclose a user interface enabling the selection of a detected structure and a linked action.

216.    First, Pandit does not disclose this element of claim 1 for at least the reason that it does not detect structures, as explained above.

217.    Pandit also does not disclose "user interface" program routines "enabling the selection of a detected structure." The plain and ordinary meaning of "a user interface enabling the selection of a detected structure" requires the user interface to enable selection of a structure, by the user, *after* the structure has already been detected. Pandit, by contrast, reverses these steps. For example, Dr. Cohen cites to one portion of Pandit that discusses the invention "recogniz[ing]" text that the user has previously "accented", or selected. Cohen Decl., ¶ 217 (quoting '636 Patent 2:3-23). Dr. Cohen thus argues that the above element of claim 1 is satisfied when (1) the user first selects undetected text and, (2) *after* such selection, structures are detected in that text. This argument makes no sense in view of the plain language of claim 1, which, as explained, requires that the user be able to pick or choose a detected structure *after* the system identifies such structures for the user. Pandit, therefore, does not disclose picking or choosing a detected structure but rather accenting (i.e., manually selecting) undetected text.

### 5.    "an action processor for performing the selected action linked to the selected structure; and"

218.    Pandit does not disclose "action processor" program routines for "performing the selected action linked to the selected structure" because, as explained above, it does not disclose selecting a detected structure.

### 6.    "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines."

REPLY EXPERT DECLARATION OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-0630-LHK                    86

Gibson, Dunn &
Crutcher LLP

1

2
      I declare under penalty of perjury that the foregoing is true and correct.

3
Dated:   May 14, 2012

4
                                       Todd C. Mowry

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY EXPERT DECLARATION OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-0630-LHK         111

Gibson, Dunn &
Crutcher LLP