# EXHIBIT 25

```
 1            IN THE UNITED STATES DISTRICT COURT
 2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4   APPLE, INC., a California         )
     corporation,                      )
 5                                     )
                Plaintiff,             )
 6                                     ) Case No.
                                       ) 12-cv-00630-LHK (PSG)
 7        vs.                          )
                                       ) Volume 1
 8   SAMSUNG ELECTRONICS CO., LTD., a  )
     Korean corporation; SAMSUNG       )
 9   ELECTRONICS AMERICA, INC., a New  )
     York corporation and SAMSUNG      )
10   TELECOMMUNICATIONS AMERICA, LLC, a)
     Delaware limited liability        )
11   company,                          )
                                       )
12                                     ) Pages 1 to 311
                Defendants.            )
13   _____)
14
15
16
17
18         VIDEOTAPED DEPOSITION OF ALEX SNOEREN
19                San Diego, California
20           Wednesday, September 25, 2013
21
22
23
24   Reported by:
     ELIZABETH BORRELLI, CSR No. 7844, CCLL, CLR
25   JOB NO. 65775
```

1  Q.  And so in order to analyze whether a piece    16:38
2  of prior art had all the limitations of Claim 20,
3  you also have to analyze necessarily whether that
4  piece of prior art had the limitations of Claim 11,
5  correct?    16:39
6  A.  Because it's a dependent claim that
7  requires all of those limitations, that is correct.
8  Q.  So you in fact did perform an analysis
9  analyzing all of the prior art cited by Dr. Chase
10 with respect to the limitations of Claim 11,    16:39
11 correct?
12 A.  Again, I performed an analysis with
13 respect to Claim 20, which as you say required me to
14 analyze the claims within 11, that is correct.
15 Q.  But what you have not done is provide an    16:39
16 expert opinion on whether the prior art references
17 cited by Dr. Chase discloses the limitations of
18 Claim 11 for anticipation purposes, correct?
19         MR. BUROKER:  Objection.  Vague.
20         THE WITNESS:  Again, to the extent that in    16:39
21 analyzing Claim 20 and forming opinions in Claim 20,
22 I had to address claims that are referenced in Claim
23 11.  I do provide opinions about the validity of
24 Claim 20.  I do not provide opinions about the
25 validity of Claim 11 independent.    16:40

Page 243

1  BY MR. PAK:                                                16:40
2      Q.  And there are, for example, specific
3  references, like Windows mobile, where you are not
4  disputing that the prior art discloses all the
5  limitations of Claim 11, correct?                          16:40
6          MR. BUROKER:  Objection to the
7  characterization of the Windows mobile.
8          THE WITNESS:  I do not see in my report
9  any explicit statement calling out a limitation in
10 Claim 11 that Windows mobile doesn't meet.                 16:42
11         [Reporter requests clarification.]
12         THE WITNESS:  Does not meet.  But again, I
13 wasn't asked to analyze Claim 11 independently, and
14 I don't express any opinions explicitly regarding
15 Claim 11.                                                  16:42
16 BY MR. PAK:
17     Q.  Take a look at paragraph 616 to 627 in
18 your rebuttal report.
19         Do you see those paragraphs?
20     A.  I'm sorry, I wasn't clear on the last              16:43
21 paragraph you wanted me to go to.
22     Q.  Basically looking at the secondary
23 consideration section going from paragraph 616 to
24 627.
25     A.  I do see those.  I haven't had a chance to         16:43

| | | |
|---|---|---|
| 1 | read them all again but I see them. | 16:43 |
| 2 | Q.   Okay. | |
| 3 | Now, for the 414 patent you are not | |
| 4 | opining that there was any industry recognition or | |
| 5 | praise for the claimed invention, correct? | 16:43 |
| 6 | A.   So, among other things, in paragraph 619 | |
| 7 | I'm -- I quote a paragraph from Dr. Hauser's | |
| 8 | reports, which we ever -- which we already | |
| 9 | discussed, which summarizes the results of his | |
| 10 | analysis.  In the end it says "Samsung consumers | 16:44 |
| 11 | place substantial positive value on the | |
| 12 | patent-related features at issue in this case." | |
| 13 | Which as we discussed earlier this morning, there | |
| 14 | were three issues.  We were talking about the | |
| 15 | universal search one, but there was another one with | 16:44 |
| 16 | respect to the 414 in that -- in that survey. | |
| 17 | Q.   And we're going to get to Dr. Hauser's | |
| 18 | survey of the consumers, but what I'm looking for is | |
| 19 | industry among skilled artisans and whether there | |
| 20 | was any recognition or praise for the invention | 16:45 |
| 21 | claimed in the 414 patent.  I don't see a | |
| 22 | description of that. | |
| 23 | Can you confirm? | |
| 24 | MR. BUROKER:  Objection.  Vague. | |
| 25 | THE WITNESS:  In paragraph 618 through | 16:45 |

Page 299

| | | |
|---|---|---|
| 1 | Q.  By something else.  So let me clarify. | 18:05 |
| 2 | So I have three threads, each of those | |
| 3 | three threads were provided or created by another | |
| 4 | component that is not a synchronization software | |
| 5 | component, okay.  And now I execute each of the | 18:05 |
| 6 | three synchronization software components on one of | |
| 7 | the three threads. | |
| 8 | Are you with me on the hypothetical? | |
| 9 | A.  I think I am, but because we are | |
| 10 | hypothetical, I'm going to need to nail something | 18:05 |
| 11 | down.  You used the word "created" and not | |
| 12 | "provided," and I'm just wondering if you're trying | |
| 13 | to make some distinction there. | |
| 14 | My interpretation of Claim 20 is that it | |
| 15 | meets limitations of Claim 11.  And so are you | 18:06 |
| 16 | saying that you have some thread that was created | |
| 17 | but not provided by those -- are you trying to draw | |
| 18 | a distinction? | |
| 19 | Q.  I understand there's a dispute among the | |
| 20 | experts, and I don't mean to necessarily have you | 18:06 |
| 21 | adopt Dr. Chase's construction.  So my understanding | |
| 22 | of the dispute is you say the word providing in | |
| 23 | Claim 11 requires creating a thread; is that fair? | |
| 24 | A.  I say it requires providing the thread, | |
| 25 | which is the plain language interpretation.  I'm not | 18:06 |

1  quite sure what you mean by "create."  I mean                18:06
2  technically there is no create.
3      Q.  Spawn, evoke, whatever you want to call
4  it.
5      A.  So in the context of particular                       18:06
6  instantiation of different language there's going to
7  be a different way to do that.  And again, I just
8  want to be sure to the extent that you're trying
9  draw a distinction between if I invoke, fork, you
10 know, where that thread gets created in a library or          18:07
11 not a library, means that this module didn't create
12 it.  I just -- hypotheticals are a wash in -- in
13 complexity, and so I --
14     Q.  I want to give you a chance, Dr. Snoeren,
15 when you say the word "providing a thread," your              18:07
16 interpretation of providing a thread in the context
17 of theses claims, what is your interpretation?
18     A.  My understanding of providing a thread is
19 that the software synchronization component, along
20 with all the other requirements in Claim 11, or               18:07
21 Claim 20 to the extent that's required, provides the
22 thread, meaning it causes the generation of the
23 thread on which it is going to execute.
24     Q.  Now, Dr. Chase, I understand has different
25 understanding of providing thread, as he stated in            18:07

1  his expert reports.  Is that your understanding?  18:07

2       A.  I'm not sure Dr. Chase's understanding.

3  My reading of his reports do not seem to square

4  with -- with my opinion, that's correct.

5       Q.  So let's use the causing the generation of  18:08

6  threads --

7           [Reporter requests clarification.]

8  BY MR. PAK:

9       Q.  -- causing the generation of threads as

10 your understanding of providing a thread.  Fair?  18:08

11      A.  So again, the synchronization software

12 component has to itself cause the generation of that

13 thread -- I mean you're putting words in, I'm not

14 sure what meaning you have -- you have to them, so I

15 just want to make sure that we're not creating a  18:08

16 record here that I didn't provide to you.

17          The module is providing a thread.  And

18 when I say it's providing a thread, I mean that

19 module is causing that thread to be created.

20      Q.  Perfect. That's all I'm getting at.  Now,  18:08

21 I want to -- I want to make sure the record is

22 clear.  I'm glad we're having this discussion.  Any

23 time you feel the need to elaborate or clarify

24 something, please do so.

25          With that definition of providing a  18:08

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              IN THE UNITED STATES DISTRICT COURT
 2       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4    APPLE, INC., a California         )
      corporation,                      )
 5                                      )
                   Plaintiff,           )
 6                                      ) Case No.
                                        ) 12-cv-00630-LHK (PSG)
 7            vs.                       )
                                        ) Volume 2
 8    SAMSUNG ELECTRONICS CO., LTD., a  )
      Korean corporation; SAMSUNG       )
 9    ELECTRONICS AMERICA, INC., a New  )
      York corporation and SAMSUNG      )
10    TELECOMMUNICATIONS AMERICA, LLC, a)
      Delaware limited liability        )
11    company,                          )
                                        )
12                                      ) Pages 312 to 477
                   Defendants.          )
13    _____)
14
15
16
17          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
18
19            VIDEOTAPED DEPOSITION OF ALEX SNOEREN
20                   San Diego, California
21               Thursday, September 26, 2013
22
23    Reported by:
24    ELIZABETH BORRELLI, CSR No. 7844, CCLL, CLR
25    JOB NO. 65776
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 348

1    I'm not trying to be evasive; I just -- I    09:29
2    want to be specific.
3         Q.   That's fair.  I want to just direct you to
4    a portion of the deposition transcript, and that's
5    on page 129 -- actually, beginning at page 128, line    09:29
6    25.
7         I'm going to read this into the record.
8         "Question:  What does it mean for there to
9    be at least one synchronization processing thread
10   provided by a synchronization software component?    09:30
11        "Answer:  That means there are one or more
12   threads which engage in synchronization or which are
13   part of what is considered the synchronization
14   component.
15        "Question:  And what does it mean for a    09:30
16   synchronization processing thread to be provided by
17   a synchronization software component?"
18        There's an objection.
19        "The Witness:  A component, which is some
20   software application, would have executing code and    09:30
21   that executing code must execute in a thread; thus,
22   that thread would be provided by the synchronization
23   component."
24        Sir, do you agree with that testimony from
25   the inventor of the 414 patent?    09:31

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 349

1    A.   I agree that you've read this testimony.    09:31
2    I cannot tell you what -- I don't know if it's
3    Dr. or Mr. Freedman meant by that testimony.  I
4    believe that in conducting an analysis, I've been
5    instructed by counsel that the statements of the    09:31
6    inventor are secondary to the patent itself.  When
7    the patent itself is clear, what the inventor says,
8    to the extent that it may be more confusing than
9    what's in the patent, don't negate what's clear from
10   the patent.    09:31
11        So again, I don't know what the opinion
12   was trying to say.  I will agree with you that you
13   appear to have accurately read this deposition
14   transcript.
15   Q.   Again, I don't need you to opine on the    09:32
16   law.  I'm just asking you, as a technical issue,
17   whether you agree with Mr. Freedman's testimony,
18   technologically, from page 128, line 25, to
19   page 129, line 15.
20        MR. BUROKER:  Objection.  Calls for a    09:32
21   legal conclusion.
22        Go ahead.
23        THE WITNESS:  And again, I would have to
24   talk to him to try and understand what he meant when
25   he said this.  Because as you and I can agree, the    09:32

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 350

1  words that are written here could be interpreted in          09:32
2  a different manner than the way I've explained to
3  you the process that I applied.
4         I don't know what he meant to say.  All I
5  can attest to, as I sit here today, is that you have          09:32
6  accurately read his deposition testimony.
7         I don't know whether I agree with him
8  because I don't know if this set of words
9  effectively expresses what he was thinking.
10 BY MR. PAK:                                                   09:33
11    Q.   Just to be clear on the record, do you
12 have an expert opinion, sitting here today -- and if
13 you don't, that's fine -- but do you have a
14 technical expert opinion on whether the testimony
15 provided by Mr. Freedman is technologically           09:33
16 accurate?  And that, again, is page 128, line 25, to
17 page 129, line 15.
18    A.   Again --
19         MR. BUROKER:  There's -- object to form.
20         THE WITNESS:  I don't have an expert          09:33
21 opinion on his testimony.  I can read his testimony
22 and I can tell you that his testimony seems to me to
23 be confusing with respect to what is clear and
24 evident from the patent itself.  So I would have to
25 speak to -- and I have not had the opportunity to          09:34

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 351

1  speak to -- Dr. Freedman to understand what he                09:34
2  actually meant to understand whether or not it's
3  accurate or correct.
4  BY MR. PAK:
5      Q.  Do you understand, sir, that Mr. Freedman,            09:34
6  in this deposition, was providing testimony as a
7  corporate witness of Apple?
8          MR. BUROKER:  Objection.  Lacks
9  foundation.
10         THE WITNESS:  Actually, sir, I'm not sure              09:34
11 I did.  If it's contained somewhere within this
12 deposition, I may have been aware of that.  As I sit
13 here, I don't recall whether I was aware or not.
14 BY MR. PAK:
15     Q.  Let's go to the infringement side of your              09:34
16 analysis on the 414 patent.  And can you pull out
17 your infringement report?
18         And please turn to paragraph 455 in your
19 opening report.
20         And just in that context, sir, on --                   09:35
21 actually, starting on page 168 with paragraph 453
22 and going on to paragraph 461 on page 170, do you
23 see that you're discussing a particular limitation
24 with respect to the accused Samsung products?
25     A.  I do.                                                  09:36

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 432

1  BY MR. PAK:  11:45
2      Q.   Look, I'm not going to go through and
3  repeat all the assumptions.  I'm trying to -- I'm
4  happy to do that if it works, but I'm -- I've
5  already stipulated on the record that when I talk  11:45
6  about the WAIS system I'm talking about Dr. WAIS's
7  -- Dr. Rinard's description of that system, and I
8  acknowledge that you have some challenges to that
9  description, okay?
10         So will you agree with me that the WAIS  11:45
11 system, as described by Dr. Rinard, discloses the
12 use of synonym matching?
13         MR. BUROKER:  Objection.  Vague.
14 Incomplete hypothetical.
15         THE WITNESS:  I will agree with you that  11:45
16 Dr. Rinard alleges that the system that he describes
17 discloses that.
18 BY MR. PAK:
19     Q.   And you agree that synonym matching is a
20 form of heuristic, correct?  11:45
21         MR. BUROKER:  Objection.  Vague.
22         THE WITNESS:  I don't know that I agree or
23 disagree.  I would have to look at a particular
24 implementation of synonym matching.  If you have a
25 specific one in mind, I'd be happy to check whether  11:45

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 433

1   or not that might or might not be heuristic.  I        11:46
2   think the particular goal could be done in a
3   deterministic way, could be done in a way that
4   consisted solely of satis -- constraint satisfaction
5   parameters.                                            11:46
6   BY MR. PAK:
7       Q.   You don't recall ever opining that there
8   are heuristics like synonym matching, correction of
9   incomplete spellings and compensation for missing
10  words?                                                 11:46
11          MR. BUROKER:  Objection.  Incomplete
12  hypothetical.  Vague.
13          THE WITNESS:  It's possible that I did.
14  If you want to point out the context we could -- we
15  could discuss it.                                      11:46
16  BY MR. PAK:
17      Q.   I will show you the context, but I just
18  want to know your understanding sitting here today,
19  do you agree or disagree that synonym matching,
20  correction of incomplete spellings and compensation    11:46
21  from missing words are forms of heuristics?
22          MR. BUROKER:  Objection.  Vague.
23          THE WITNESS:  Again, as I've mentioned, it
24  would depend on how those things are actually
25  implemented and what they did.  If you have a         11:47

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 434

1  particular context, a particular implementation of    11:47

2  those goals, they may or may not be heuristic.  I do

3  not recall as I sit here today opining about any

4  particular implementation of those functionalities.

5  But to the extent that I did, if you'd like to    11:47

6  refresh my memory, I'd be happy to talk to you about

7  those details.

8  BY MR. PAK:

9       Q.   So you're saying synonym matching alone is

10 not heuristic; is that your testimony today?    11:47

11           MR. BUROKER:  Objection.  Vague and

12 argumentative.

13           THE WITNESS:  What I'm saying is synonym

14 matching is describing a goal.  I want to match

15 synonyms.  You haven't described to me how I'd do    11:47

16 it.  As Judge Koh stated in her order, it is

17 insufficient to just claim that something is

18 heuristic.  One has to describe how it works, that

19 it implements some rule of thumb and does not

20 consist solely of constraint satisfaction    11:47

21 parameters.

22           So by the court's guidance, I can't answer

23 that question without more information.

24 BY MR. PAK:

25      Q.   Do you believe that you could do synonym    11:47

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 435

| | | |
|---|---|---|
| 1 | matching in a nonheuristic manner? | 11:47 |
| 2 | MR. BUROKER:  Objection.  Vague. | |
| 3 | THE WITNESS:  That's hypothetical.  I have | |
| 4 | not tried to implement synonym matching in a | |
| 5 | nonheuristic fashion.  If you're asking "you" in | 11:48 |
| 6 | general, as I sit here today that would be | |
| 7 | speculation about whether you or some arbitrary | |
| 8 | person could do it, because we haven't set up the | |
| 9 | context of the constraints, what they're doing it | |
| 10 | in, their implementation requirements and so forth. | 11:48 |
| 11 | BY MR. PAK: | |
| 12 | Q.  If you had synonym matching that satisfied | |
| 13 | Judge Koh's definition in that it employed a rule of | |
| 14 | thumb, and it was not solely consisting of | |
| 15 | constraint satisfaction parameters, would you agree | 11:48 |
| 16 | that that form of synonym matching is a heuristic? | |
| 17 | A.  Again, I think you just constructed a | |
| 18 | topology.  What you just asked me is if I have an | |
| 19 | implementation that meets your definition, does it | |
| 20 | meet your definition?  Yes. | 11:48 |
| 21 | Q.  I'm just clarifying that the synonym | |
| 22 | matching application does not somehow disqualify | |
| 23 | that technique from being a heuristic, that's not | |
| 24 | your testimony, right? | |
| 25 | A.  I don't know what a synonym matching | 11:49 |