# EXHIBIT 38

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 259

1       UNITED STATES DISTRICT COURT

2       NORTHERN DISTRICT OF CALIFORNIA

3             SAN JOSE DIVISION

4

5   APPLE, INC., a California        )
6   corporation,                     )
7         Plaintiff,                 )     Case No.
8                                    )12-cv-00630-LHK (PSG)
9         vs.                        )
10  SAMSUNG ELECTRONICS CO., LTD., a )
11  Korean corporation; SAMSUNG      )
12  ELECTRONICS AMERICA, INC., a New )
13  York corporation; and SAMSUNG    )    VOLUME II
14  TELECOMMUNICATIONS AMERICA, LLC, )
15  a Delaware limited liability     )
16  company,                         )
17        Defendants.                )
18  _____)

19         CONFIDENTIAL BUSINESS INFORMATION

20            OUTSIDE ATTORNEYS' EYES ONLY

21    VIDEOTAPED DEPOSITION OF THOMAS E. FUJA, Ph.D.

22          Friday, September 20, 2013

23             Boston, Massachusetts

24  Reported by:  Dana Welch, CSR, RPR, CRR, CBC, CCP

25  Job No. 65944

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 347

1  at all about node B scheduling.  So we want to be a     10:26
2  little bit careful about using terminology that         10:26
3  changed over time.  Remember, we said that -- we        10:26
4  said that a big innovation in the HSDPA and HSUPA       10:26
5  was node B scheduling.  And we've been using the        10:26
6  word "scheduling" in that context.                      10:26
7       But there was scheduling that existed              10:26
8  prior to versions 5 and 6.  It was called               10:26
9  scheduling but it's now what we are referring to as     10:26
10 non-scheduled transmission.                             10:26
11      Q.  Well, I want to understand your report.        10:26
12      A.  Okay.                                          10:26
13      Q.  In your report, you talk about the '294        10:26
14 patent and the scheduling assignment.                   10:27
15      A.  I do.                                          10:27
16      Q.  In your report when you discuss the '294       10:27
17 patent, you never mention autonomous transmission?      10:27
18      A.  That's correct.  It looks like I don't.        10:27
19      Q.  In your report when you discuss the '294       10:27
20 patent, you never mention non-scheduled                 10:27
21 transmissions?                                          10:27
22      A.  The '294 was not -- was not written and        10:27
23 developed in the con -- it was written and              10:27
24 developed prior to this distinction between             10:27
25 scheduled and non-scheduled transmission.               10:27

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 348

| | | |
|---|---|---|
| 1 | Q.  And you never mentioned non-scheduled | 10:27 |
| 2 | transmissions when you wrote your report about the | 10:27 |
| 3 | '294 patent? | 10:27 |
| 4 | A.  It appears I did not use the term | 10:28 |
| 5 | "non-scheduled transmission" in talking about the | 10:28 |
| 6 | '294, that's correct. | 10:28 |
| 7 | Q.  When you discuss the '294 patent in | 10:28 |
| 8 | your -- | 10:28 |
| 9 | MR. WHITEHURST:  Strike that. | 10:28 |
| 10 | Q.  When you discuss the '294 patent in your | 10:28 |
| 11 | report, you mention a scheduling assignment? | 10:28 |
| 12 | A.  I did. | 10:28 |
| 13 | Q.  You don't mention autonomous | 10:28 |
| 14 | transmissions? | 10:28 |
| 15 | A.  That's correct. | 10:28 |
| 16 | Q.  And you don't mention non-scheduled | 10:28 |
| 17 | transmissions? | 10:28 |
| 18 | A.  I don't see either of those words in | 10:28 |
| 19 | paragraphs 245 through 247.  Well, 247 just makes | 10:28 |
| 20 | sort of a boiler point observation that bitmaps are | 10:28 |
| 21 | no big deal. | 10:28 |
| 22 | Q.  But just so it's clear, when you discuss | 10:28 |
| 23 | the '294 patent, you mention scheduling | 10:28 |
| 24 | assignments, correct? | 10:28 |
| 25 | A.  I do. | 10:28 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 349

| | | |
|---|---|---|
| 1 | Q. But you never mention autonomous | 10:28 |
| 2 | transmissions or non-scheduled transmissions? | 10:28 |
| 3 | A. In retrospect, I maybe should have been a | 10:28 |
| 4 | little clearer, because the '294 was developed | 10:29 |
| 5 | outside of this scheduled/non-scheduled dichotomy, | 10:29 |
| 6 | so the term "non-scheduled mode" didn't apply to | 10:29 |
| 7 | the '294. So it didn't occur to me to clarify that | 10:29 |
| 8 | point. | 10:29 |
| 9 | Q. But when you wrote your report, you never | 10:29 |
| 10 | said that the '294 patent performs autonomous or | 10:29 |
| 11 | non-scheduled transmissions? | 10:29 |
| 12 | A. Well, the patent doesn't perform anything. | 10:29 |
| 13 | I don't think that the '294 describes user | 10:29 |
| 14 | equipment that -- I don't think it uses the term | 10:29 |
| 15 | either "autonomous" or "non-scheduled | 10:29 |
| 16 | transmission." | 10:29 |
| 17 | Q. And when you wrote your report, you never | 10:29 |
| 18 | said that the user equipment disclosed in the '294 | 10:29 |
| 19 | patent performs autonomous or non-scheduled | 10:29 |
| 20 | transmissions? | 10:29 |
| 21 | MS. SAXTON: Objection. | 10:29 |
| 22 | A. That's correct. | 10:29 |
| 23 | Q. Please find in front of you the '596 | 10:29 |
| 24 | patent. | 10:30 |
| 25 | A. Okay. | 10:30 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 350

| | | | |
|---|---|---|---|
| 1 | Q. | Please turn to claim 1. | 10:30 |
| 2 | A. | Okay. | 10:30 |
| 3 | Q. | Claim 1 is an independent claim? | 10:30 |
| 4 | A. | It is. | 10:30 |
| 5 | Q. | Claim 1 is a method claim? | 10:30 |
| 6 | A. | It is. | 10:30 |
| 7 | Q. | Do you see the forming step that begins on | 10:30 |
| 8 | line 54? | | 10:30 |
| 9 | A. | I do. | 10:30 |
| 10 | Q. | Would you please read it aloud? | 10:30 |
| 11 | A. | "Forming at least one header part | 10:30 |
| 12 | corresponding to the first PDU by using a data | | 10:30 |
| 13 | description indicator field representing the first | | 10:30 |
| 14 | PDU and an N field representing the number of | | 10:30 |
| 15 | uplink packet data included in the first PDU." | | 10:30 |
| 16 | Q. | So in claim 1, there's a first header | 10:31 |
| 17 | part? | | 10:31 |
| 18 | A. | There is. | 10:31 |
| 19 | Q. | Claim 1 also mentions a DDI field? | 10:31 |
| 20 | A. | It does. | 10:31 |
| 21 | Q. | The DDI field represents the first PDU? | 10:31 |
| 22 | A. | A DDI field representing the first PDU, | 10:31 |
| 23 | that's correct. | | 10:31 |
| 24 | Q. | Do you see in the next column, claim 6? | 10:31 |
| 25 | A. | I do. | 10:31 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 351

| | | |
|---|---|---|
| 1 | Q. Claim 6 is a dependent claim? | 10:31 |
| 2 | A. It is. | 10:31 |
| 3 | Q. Claim 6 depends from claim 1? | 10:31 |
| 4 | A. Yes. | 10:31 |
| 5 | Q. Claim 6 adds additional limitations to | 10:31 |
| 6 | claim 1? | 10:31 |
| 7 | A. That's correct. | 10:31 |
| 8 | Q. Claim 6 adds the additional limitation | 10:31 |
| 9 | that the DDI field represents three things? | 10:31 |
| 10 | A. It does. | 10:31 |
| 11 | Q. First, the DDI field represents a MAC-d | 10:31 |
| 12 | flow? | 10:32 |
| 13 | A. It does. | 10:32 |
| 14 | Q. Second, the DDI field represents a logical | 10:32 |
| 15 | channel? | 10:32 |
| 16 | A. Correct. | 10:32 |
| 17 | Q. Third, the DDI field represents a PDU | 10:32 |
| 18 | size? | 10:32 |
| 19 | A. It doesn't say "PDU size." It says "a | 10:32 |
| 20 | size of the uplink packet data." | 10:32 |
| 21 | Q. The third -- | 10:32 |
| 22 | MR. WHITEHURST: Strike that. | 10:32 |
| 23 | Q. The DDI field represents a size of the | 10:32 |
| 24 | uplink packet data? | 10:32 |
| 25 | A. That's correct. | 10:32 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 352

| | | |
|---|---|---|
| 1 | Q.  So claim 6 adds this limitation that the | 10:32 |
| 2 | DDI represents these three things to claim 1? | 10:32 |
| 3 | A.  Yes. | 10:32 |
| 4 | Q.  Have you heard of the doctrine of claim | 10:32 |
| 5 | differentiation?  I asked you about this yesterday. | 10:32 |
| 6 | A.  You did ask me about it yesterday.  So I | 10:32 |
| 7 | heard about it yesterday. | 10:32 |
| 8 | Q.  And what is -- do you have any | 10:32 |
| 9 | understanding of the doctrine of claim | 10:32 |
| 10 | differentiation? | 10:32 |
| 11 | A.  I don't recall. | 10:33 |
| 12 | Q.  Have you ever been told that an | 10:33 |
| 13 | independent claim should be construed broadly | 10:33 |
| 14 | enough to include its dependent claims? | 10:33 |
| 15 | MS. SAXTON:  Objection. | 10:33 |
| 16 | A.  I don't recall. | 10:33 |
| 17 | Q.  When you submitted your non-infringement | 10:33 |
| 18 | report -- | 10:33 |
| 19 | MR. WHITEHURST:  Strike that. | 10:33 |
| 20 | Q.  Before you submitted your reports in this | 10:33 |
| 21 | case, were you aware that an independent claim | 10:33 |
| 22 | should be construed broadly enough to include its | 10:33 |
| 23 | dependent claims? | 10:33 |
| 24 | A.  I'm -- no, no, I was not aware of that. | 10:33 |
| 25 | Q.  So you did not find out about that until | 10:33 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 353

| | | |
|---|---|---|
| 1 | after you submitted your reports. | 10:33 |
| 2 | MS. SAXTON: Objection. | 10:33 |
| 3 | A. Well, you're representing what the law is | 10:33 |
| 4 | to me. I still don't know it. | 10:33 |
| 5 | Q. So just so it's clear, when you submitted | 10:33 |
| 6 | both of your reports in this case, it was not your | 10:33 |
| 7 | understanding that an independent claim should be | 10:34 |
| 8 | construed broadly enough to include its dependent | 10:34 |
| 9 | claims. | 10:34 |
| 10 | A. I don't recall if I ever heard that -- | 10:34 |
| 11 | that doctrine articulated or not. | 10:34 |
| 12 | Q. When you submitted both of your reports in | 10:34 |
| 13 | this case, were you ever aware of the doctrine that | 10:34 |
| 14 | an independent claim is not limited to the | 10:34 |
| 15 | limitations in the dependent claims? | 10:34 |
| 16 | A. That the independent claim is not limited | 10:34 |
| 17 | to the... | 10:34 |
| 18 | Q. Limitations in the dependent claim? | 10:34 |
| 19 | A. That would seem to be self-evident. | 10:34 |
| 20 | Q. Do you know what I mean when I say the | 10:34 |
| 21 | independent claim is not limited to the limitations | 10:34 |
| 22 | in the dependent claim? | 10:34 |
| 23 | MS. SAXTON: Objection. | 10:34 |
| 24 | A. Well, generally speaking, the independent | 10:34 |
| 25 | claims are the broadest statement of what is | 10:34 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 354

| | | |
|---|---|---|
| 1 | claimed and the dependent claims add specificity, | 10:35 |
| 2 | again, speaking as layperson and not an attorney. | 10:35 |
| 3 | So I mean, that sort of seems self-evident that the | 10:35 |
| 4 | independent claim should not be limited to the more | 10:35 |
| 5 | specific case of the dependent claim. | 10:35 |
| 6 | Q.  And do you understand that if you see a | 10:35 |
| 7 | limitation in the dependent claim, the independent | 10:35 |
| 8 | claim is presumed to not have that limitation? | 10:35 |
| 9 | A.  No, I've not heard that. | 10:35 |
| 10 | Q.  Okay.  So when you submitted both of your | 10:35 |
| 11 | reports in this case, you did not have the | 10:35 |
| 12 | understanding that if you see a limitation in the | 10:35 |
| 13 | dependent claims the independent claim is presumed | 10:35 |
| 14 | to not have that limitation? | 10:35 |
| 15 | MS. SAXTON:  Objection. | 10:35 |
| 16 | A.  I did not rely on that in any way to | 10:35 |
| 17 | interpret any of the claim language.  I used the | 10:35 |
| 18 | specification to understand what a DDI is. | 10:36 |
| 19 | Q.  If you had been aware of the doctrine that | 10:36 |
| 20 | if a limitation appears in a dependent claim, the | 10:36 |
| 21 | independent claim is presumed to not have that | 10:36 |
| 22 | limitation, would that have changed any of your | 10:36 |
| 23 | opinions? | 10:36 |
| 24 | MS. SAXTON:  Objection. | 10:36 |
| 25 | A.  No. | 10:36 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 355

1  Q.  I want you to look at claim 6.  10:36
2  A.  Okay.  10:36
3  Q.  We see the limitation that the DDI field  10:36
4  represents three things, right?  10:36
5  A.  Yes.  10:36
6  Q.  The MAC-d flow, the logical channel, and  10:36
7  the size of the uplink packet data.  10:36
8  A.  Correct.  10:36
9  Q.  Do you understand that under the doctrine  10:36
10 of claim differentiation the DDI in claim 1 is not  10:36
11 limited to a DDI that represents the three things  10:36
12 claimed in dependent claim 6?  10:36
13     MS. SAXTON:  Objection.  10:36
14 A.  The question that I had, because I had no  10:37
15 construction of the term "DDI" from the court, was  10:37
16 how should I interpret it?  The specification  10:37
17 defines DDI pretty clearly, so that was what I  10:37
18 counted or for my understanding of DDI.  10:37
19 Q.  If DDI in claim 1 was limited to a DDI  10:37
20 that represents a MAC-d flow, a logical channel,  10:37
21 and the size of the uplink packet data, would you  10:37
22 need dependent claim 6?  10:37
23 A.  Well, claim 6 says, "Wherein, the DDI  10:37
24 field inserted into the first header part  10:37
25 represents a media access controlled data flow and  10:37

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 356

| | | |
|---|---|---|
| 1 | a logical channel relating to uplink packet data | 10:37 |
| 2 | included in the first PDU and the size of the | 10:37 |
| 3 | uplink packet data." | 10:37 |
| 4 | So you're saying that if DDI was limited | 10:37 |
| 5 | to what is described in 6, would we need 6.  And it | 10:38 |
| 6 | seems like the answer is self-evident and the | 10:38 |
| 7 | answer is no. | 10:38 |
| 8 | Q.  So if the DDI in claim 1 was limited to a | 10:38 |
| 9 | DDI that represented a MAC-d flow, a logical | 10:38 |
| 10 | channel, and a size of the uplink packet data, | 10:38 |
| 11 | claim 6 would be redundant or superfluous. | 10:38 |
| 12 | A.  Wouldn't be the first time I've seen a | 10:38 |
| 13 | dependent claim that seemed redundant or | 10:38 |
| 14 | superfluous.  But I agree with that. | 10:38 |
| 15 | Q.  So the fact that claim 6 is saying the DDI | 10:38 |
| 16 | has to represent these three things tells us that | 10:38 |
| 17 | the DDI in claim 1 does not have to represent these | 10:38 |
| 18 | three things. | 10:38 |
| 19 | MS. SAXTON:  Objection. | 10:38 |
| 20 | A.  You're asking questions that would be | 10:38 |
| 21 | appropriate to ask another attorney.  I don't know | 10:38 |
| 22 | the answer to your question. | 10:38 |
| 23 | All I know is that DDI is not a general | 10:38 |
| 24 | term of art.  I mean, if you just walked up to a | 10:39 |
| 25 | communication engineer who hadn't worked on this, | 10:39 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 357

| | | |
|---|---|---|
| 1 | they wouldn't necessarily know what DDI is.  So I | 10:39 |
| 2 | went to the specifications to try to understand | 10:39 |
| 3 | what a DDI is.  And the specification told me what | 10:39 |
| 4 | a DDI is. | 10:39 |
| 5 | Q.  And when you did this analysis, you didn't | 10:39 |
| 6 | look at dependent claim 6 and analyze what effect | 10:39 |
| 7 | that would have on the meaning of DDI in claim 1? | 10:39 |
| 8 | A.  I certainly looked at claim 6.  It seems | 10:39 |
| 9 | to me -- again, this is trying to put together what | 10:39 |
| 10 | my thought processes were six months ago, it would | 10:39 |
| 11 | seem to me that the definition from the | 10:39 |
| 12 | specification would seem to overwhelm whatever | 10:39 |
| 13 | issues claim 6 might present. | 10:40 |
| 14 | Q.  Having looked at claim 6 and talked it | 10:40 |
| 15 | through during the deposition today, do you agree | 10:40 |
| 16 | that in light of claim 6 that DDI in claim 1 should | 10:40 |
| 17 | be broader than the DDI in claim 6? | 10:40 |
| 18 | MS. SAXTON:  Objection. | 10:40 |
| 19 | A.  No. | 10:40 |
| 20 | Q.  So let me make sure I understand.  It's | 10:40 |
| 21 | your testimony today that DDI in claim 1 should | 10:40 |
| 22 | have the same meaning and scope as dependent claim | 10:40 |
| 23 | 6? | 10:40 |
| 24 | MS. SAXTON:  Objection. | 10:40 |
| 25 | A.  The only definition of DDI that I was able | 10:40 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 358

| | | |
|---|---|---|
| 1 | to find in this document, in the '596, is one in | 10:40 |
| 2 | which the DDI indicates the MAC-d flow, the logical | 10:41 |
| 3 | channel, and the RLC PDU size. | 10:41 |
| 4 | I don't know how else I could have | 10:41 |
| 5 | interpreted that. I think it's then perhaps more | 10:41 |
| 6 | likely that a redundant claim was written rather | 10:41 |
| 7 | than that I used an inappropriate definition of | 10:41 |
| 8 | DDI. | 10:41 |
| 9 | Q. So it's your testimony today that DDI in | 10:41 |
| 10 | claim 1 should have the same meaning as claim 6 | 10:41 |
| 11 | gives to DDI? | 10:41 |
| 12 | MS. SAXTON: Objection. | 10:41 |
| 13 | A. Essentially, yes, with the caveat that | 10:41 |
| 14 | they do use rather unusual language, that is a size | 10:41 |
| 15 | of the uplink packet data. | 10:41 |
| 16 | Q. So when you reached your understanding of | 10:41 |
| 17 | the term DDI, you looked at the preferred | 10:41 |
| 18 | embodiment in the '596 patent. You gave DDI the | 10:42 |
| 19 | exact same meaning as the preferred embodiment in | 10:42 |
| 20 | Figure 9, correct? | 10:42 |
| 21 | MS. SAXTON: Objection. | 10:42 |
| 22 | A. That was the only definition I could find. | 10:42 |
| 23 | Q. So you looked at the preferred embodiment | 10:42 |
| 24 | and then reached the conclusion that DDI in claim 1 | 10:42 |
| 25 | should be limited to the preferred embodiment? | 10:42 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 359

1    MS. SAXTON:  Objection.    10:42
2    A.  Again, that was the only definition of DDI    10:42
3    that I could find in the '596.  I was given no    10:42
4    guidance within the specification that it would be    10:42
5    possible to interpret DDI any more broadly than    10:42
6    that.    10:42
7    Q.  So you looked at the preferred embodiment    10:42
8    in the '596 patent, and then you limited DDI in    10:42
9    claim 1 to the preferred embodiment in the '596    10:42
10   patent?    10:42
11   A.  Because I had no other definition to work    10:43
12   with and it's not a term of the art.    10:43
13   Q.  And you looked at the '596 patent, and    10:43
14   gave DDI in claim 1 the exact same meaning as what    10:43
15   you saw in the preferred embodiment and what you    10:43
16   saw in dependent claim 6?    10:43
17   MS. SAXTON:  Objection.    10:43
18   A.  I gave DDI the definition, the only    10:43
19   definition that I could find.  Moreover, it was a    10:43
20   definition that was consistent with the other work    10:43
21   that was going on in this area at the same time,    10:43
22   that is that a DDI represented those three    10:43
23   parameters associated with a MAS-es.  There was no    10:43
24   indication in the specification that DDI could or    10:43
25   should be interpreted any more broadly than that.    10:43

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 360

| | | |
|---|---|---|
| 1 | Since it's not a term of art, I didn't feel I could | 10:43 |
| 2 | bring anything more to it than that. | 10:43 |
| 3 | Q. So you decided that DDI in claim 1 should | 10:43 |
| 4 | be limited to the preferred embodiment, given the | 10:44 |
| 5 | exact same meaning as dependent claim 6, and that | 10:44 |
| 6 | DDI in claim 1 should not be construed more broadly | 10:44 |
| 7 | than DDI in the dependent claim? | 10:44 |
| 8 | A. I could find nothing in the patent, either | 10:44 |
| 9 | in the specification -- in the specification or in | 10:44 |
| 10 | claim 1 that would allow me to interpret it any | 10:44 |
| 11 | more broadly than I did. | 10:44 |
| 12 | Q. And when you reached this meaning for DDI, | 10:44 |
| 13 | you were not aware of the doctrine of claim | 10:44 |
| 14 | differentiation? | 10:44 |
| 15 | MS. SAXTON: Objection. | 10:44 |
| 16 | A. No, I was not. | 10:44 |
| 17 | (Exhibit 12, SAMNDCA630-00833761 - 93, | 10:44 |
| 18 | Korean abstract, marked for identification.) | 09:54 |
| 19 | Q. I'm going to hand you what I've marked as | 10:44 |
| 20 | Exhibit 12. | 10:44 |
| 21 | Have you seen this document before? | 10:45 |
| 22 | A. I have. | 10:45 |
| 23 | Q. Can you tell me what this document is? | 10:45 |
| 24 | A. It is a Korean patent application that was | 10:45 |
| 25 | filed on November 9th, 2004. And it is, I believe | 10:45 |

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 361

1  indicated as the priority application for the '596.  10:45
2      Q.  So this is the priority application for   10:45
3  the '596 patent that was filed on November 9th,    10:45
4  2004?                                               10:45
5      A.  That's my understanding.                    10:45
6      Q.  And just so the record is complete,        10:45
7  Exhibit 12 is a document that begins on            10:46
8  SAMNDCA630-00833761, and ends on a document having 10:46
9  a Bates number ending in 793.                      10:46
10         Did you review this entire priority        10:46
11 application before you submitted your reports?     10:46
12     A.  I did.                                     10:46
13     Q.  Did you review the claims of this priority 10:46
14 application?                                       10:46
15     A.  I did.                                     10:46
16     Q.  Why did you review the claims of this      10:46
17 priority application?                              10:46
18     A.  I reviewed the entire document.  The       10:46
19 claims were part of the document.                  10:46
20     Q.  Do you understand that the claims are part 10:46
21 of the disclosure?                                 10:46
22     A.  Yes.                                       10:46
23     Q.  And that the claims are part of what the   10:46
24 inventors are teaching those of ordinary skill in  10:46
25 the art?                                           10:46

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 425

1    INDEX (continued)

2    EXHIBITS MARKED:

3    NO.           DESCRIPTION                          PAGE

4    Exhibit 17, SAMNDCA630-02197303 - 04,              394

5    HSUPA Stage 2 Conference Call 29-Oct-04

6    Exhibit 18, APL630DEF-WH-A0000004131 - 34,         396

7    3GPP TSG-RAN WG2 ad-hoc, Cannes, France,

8    21th to 24th June 2004

9    Exhibit 19, APL630DEF-WH0000012890, 3GPP           399

10   TSG-RAN2 Meeting #44, Sophia Antipolis,

11   France, 4th - 8th October, 2004

12

13   NOTATIONS:

14   Designation of the transcript as                   422

15   Confidential Business Information -

16   Outside Attorneys' Eyes Only

17

18

19

20

21

22

23

24

25

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

1  ERRATA SHEET

2  NAME OF CASE:

3  DATE OF DEPOSITION:

4  NAME OF WITNESS:

5  Reason codes:

6       1.  To clarify the record.

7       2.  To conform to the facts.

8       3.  To correct transcription errors.

9  Page _____ Line _____ Reason _____

10 From _____ to _____

11 Page _____ Line _____ Reason _____

12 From _____ to _____

13 Page _____ Line _____ Reason _____

14 From _____ to _____

15 Page _____ Line _____ Reason _____

16 From _____ to _____

17 Page _____ Line _____ Reason _____

18 From _____ to _____

19 Page _____ Line _____ Reason _____

20 From _____ to _____

21 Page _____ Line _____ Reason _____

22 From _____ to _____

23 Page _____ Line _____ Reason _____

24 From _____ to _____

25       _____