# EXHIBIT 39

**SUBJECT TO PROTECTIVE ORDER – HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY**
**Contains Apple, Samsung, and Third Party Confidential Business Information**

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 12-CV-00630-LHK |
| v. ) | |
| ) | |
| SAMSUNG ELECTRONICS CO., LTD., a ) | |
| Korean business entity, SAMSUNG ) | |
| ELECTRONICS AMERICA, INC., a New ) | |
| York corporation, and SAMSUNG ) | |
| TELECOMMUNICATIONS AMERICA, ) | |
| LLC, a Delaware limited liability company, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| SAMSUNG ELECTRONICS CO., LTD., a ) | |
| Korean business entity, SAMSUNG ) | |
| ELECTRONICS AMERICA, INC., a New ) | |
| York corporation, and SAMSUNG ) | |
| TELECOMMUNICATIONS AMERICA, ) | |
| LLC, a Delaware limited liability company, ) | |
| ) | |
| Counterclaim-Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| APPLE INC., a California corporation, ) | |
| ) | |
| Counterclaim-Defendant. ) | |
| _____ ) | |

**EXPERT REPORT OF DR. THOMAS E. FUJA
REGARDING INVALIDITY OF U.S. PATENT NOS. 7,756,087 AND 7,551,596**

**SUBJECT TO PROTECTIVE ORDER – HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY**
**Contains Apple, Samsung, and Third Party Confidential Business Information**

also the reordering queue shold be identified. Thus a queue id
(QID) should be added in the header.

(Nokia 10/29/04 Proposal, Section 4.1 (emphasis added).)  Thus, in both contemporaneous

proposals and in the ultimately-approved standard, specifying a reordering queue was not the

same as specifying a MAC-d flow.

510.    Finally, it should be noted that not only is a MAC-d flow a completely different

concept from a reordering queue, but the combination of (MAC-d flow, logical channel, RLC

PDU size) is different from the combination of (reordering queue, logical channel, RLC PDU

size).  The second combination carries information about the memory locations at the RNC that

will be used for reordering while the first combination does not.

511.    In summary, it is my opinion that the asserted claims describe something

substantially different from what was disclosed in the 11/9/04 Application.

- The asserted claims of the '596 patent require a "data description indicator (DDI)
  field" that the specification defines as "a logical identifier for identifying a logical
  channel, a MAC-d flow, and an RLC PDU size."  ('596 patent, 10:63-64.)

- The 11/9/04 Application includes no mention of a DDI.  The closest thing to a
  DDI field included in this application is a Mux-Id field, which is defined as "a
  logical identifier, which is obtained by combining a logical channel identifier, a
  sequence reordering buffer identifier, and PDU size information."  (11/9/04
  Application at 13 [SAMNDCA630-00833775].)

- Because Samsung claims that the asserted claims are entitled to the November 9,
  2004 priority date, Samsung must take the position that the 11/9/04 Application's
  description of a Mux-Id field discloses the DDI field of the asserted claims.  The
  difference between the two is that a Mux-Id field identifies a reordering queue
  instead of a MAC-d flow.  (Both also identify a logical channel and a RLC PDU
  size.)  As such, I presume Samsung will take the position that a reordering queue
  is the same as or equivalent to a MAC-d flow.

- A reordering queue and a MAC-d flow are different and not equivalent.  A
  reordering queue is a set of memory locations at the RNC used to place received
  MAC-es PDUs in the same order they were generated.  A MAC-d flow is a flow
  of data – a series of MAC-d PDUs – from logical channels with the same

SUBJECT TO PROTECTIVE ORDER – HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY
Contains Apple, Samsung, and Third Party Confidential Business Information

requested quality of service.  A MAC-d flow exists at the UE, the Node B, and the RNC, while a reordering queue exists only at the RNC.

- While the 11/9/04 Application cryptically suggests a relationship between these two very different things – "sequence reordering buffers 465 and 470 are configured for each of MAC-d flows" – the relationship is ambiguous at best.  At no point in the application do the inventors assert that specifying a reordering queue is the same thing as specifying a MAC-d flow.  Moreover, the claim language in the 11/9/04 Application includes nothing about MAC-d flows. (11/9/04 Application at 19-23 [SAMNDCA630-00833781-785].)

- Contemporaneous proposals make a clear distinction between indicating a reordering queue and indicating a MAC-d flow in the MAC-e header.

- The UMTS standards make it very clear that the reordering processes are organized per logical channel, not per MAC-d flow – thus teaching away from the sameness or equivalence that Samsung apparently wants to find.

## IX.  The State of the Art, or the Knowledge of the Person of Ordinary Skill, at the Relevant Time

512.    None of the concepts recited by the asserted claims were new at the time of the purported invention.

### A.    Transmission of Control Information

513.    The concept of a mobile device transmitting information on buffer status and transmission power to the base station to use in scheduling was known before Samsung filed the relevant applications.

514.    As I have already noted above, the transmission of control information for scheduling was specifically discussed in 3GPP TR 25.896 (released March 2004) as a potential technique to include in enhanced uplink, and numerous working group participants submitted proposals on this technique.

515.    This concept was also known outside the context of 3GPP's development of the HSUPA standards.  For instance, the transmission of buffer status and power headroom information from the mobile device to a base station, for use in scheduling, was incorporated into

**SUBJECT TO PROTECTIVE ORDER – HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**
**Contains Apple, Samsung, and Third Party Confidential Business Information**

the Qualcomm 10/29/04 Proposal includes the "first PDU" – namely, a set of "N" data-bearing MAC-d PDUs sharing certain characteristics.

700.    That is, the '656 patent and the Qualcomm 10/29/04 Proposal in combination disclose a MAC-e PDU composed of a header and a payload, wherein the header contains a first part containing DDI, N, and other fields associated with a data-bearing MAC-es PDU (or set of MAC-d PDUs) in the payload; and a second part containing a "special DDI value" that indicates the inclusion of control information in the payload.

701.    Given a MAC-e PDU format having these constituent parts, a person of ordinary skill would have found it obvious to form the MAC-e PDU using any one of a number of ways. One of the obvious ways would have been to use the claimed method – that is, by forming each of the subparts, combining them into a header and a payload, and then concatenating the header and payload.

702.    Accordingly, a person of ordinary skill would have found it obvious based on the teachings of each reference or the references in combination to "form[] a second data packet unit (PDU) by concatenating a header and a payload, and transmitting the second PDU to a Node B, wherein the header includes the header parts, and the payload includes the first PDU and the control SDU."

### D.    Combination 2: Claim 13 is obvious over the '656 patent and the Qualcomm 10/29/04 Proposal

703.    As I have already articulated with respect to the corresponding claim 13 analysis for the combination of the '656 patent and R2-042664 (Part 3, Section XI.B), apart from adding nominal structural limitations to the method steps of claim 1, claim 13 contains no additional requirements over claim 1.  Thus, claim 13 is rendered obvious by the combination of the '656

**SUBJECT TO PROTECTIVE ORDER – HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**
**Contains Apple, Samsung, and Third Party Confidential Business Information**

patent and the Qualcomm 10/29/04 Proposal for the same reasons that the combination renders

claim 1 obvious.

### E.   Combination 3: Claim 1 is obvious over the Choi '371 application and R2-042664 (25.309 CR)

704.    It would have been obvious to one of ordinary skill in the art to combine the Choi

'371 application with R2-042664 to arrive at the alleged invention of the '596 patent.

705.    The Choi '371 application was directed to technology designed to be

implemented on the HSDPA feature of Release 5 of the UMTS standard, while R2-042664 was a

change request relevant to the development of standards for the HSUPA feature of Release 6 of

the same standard.

706.    There were several similarities between the HSDPA and HSUPA that would have

suggested to one of ordinary skill in the art to combine the Choi '371 application and R2-042664

in formulating ideas for HSUPA.  For one, the MAC-hs PDU used for HSDPA multiplexed

MAC-d PDUs from multiple logical channels and having different sizes, and the analogous

multiplexing of disparate data was also under discussion (and agreed to) during the development

of the MAC-e PDU.  Other similarities included the fact that both HSDPA and HSUPA were

intended to facilitate higher speed communications in UMTS, and both entailed the development

of a new MAC sublayer to handle the required new processing – MAC-hs for the downlink and

MAC-es/e for the uplink – and corresponding new MAC-layer PDU formats.

707.    These similarities, together with the fact that it was the same technical working

groups that had designed the HSDPA that subsequently designed the HSUPA, mean that it would

have been obvious for a person of ordinary skill in the art tasked with designing a new (uplink-

enabling) MAC-e PDU format to look to formats that had been proposed for the (downlink-

enabling) MAC-hs layer.  Indeed, as I noted above, many working group participants, including

**SUBJECT TO PROTECTIVE ORDER – HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY**
**Contains Apple, Samsung, and Third Party Confidential Business Information**

# PART 5

## I.   Trial Exhibits

983.   If called as a witness at trial, I may rely on visual aids and demonstrative exhibits that demonstrate the bases of my opinions.  Examples of these visual aids and demonstrative exhibits may include, for example, claim charts, patent drawings, excerpts from patent specifications, file histories, interrogatory responses, deposition testimony and deposition exhibits, as well as charts, diagrams, videos and animated or computer-generated video.

984.   Other than as referred to in this report, I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

## II.   Compensation

985.   I am compensated for my time at the rate of $575 for each hour of service that I provide in connection with this case.  That compensation is not contingent upon my performance, the outcome of the case, or any issues involved in or related to this case.

## III.   Previous Testimony

986.   During the last five years I have testified at one trial: *Ripmax Ltd. v. Horizon Hobby, Inc.*, Case No. 2:07-cv-2133 in the U.S. District Court for the Central District of Illinois. This was a jury trial, and it was held in April 2009.

## IV.   Supplementation of Opinions

987.   I reserve the right to adjust or supplement my analysis in light of any critique of or comments on my report or alternative opinions advanced by or on behalf of Samsung.

August 12, 2013

Thomas E. Fuja, Ph.D.