# EXHIBIT A-1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK |

**REBUTTAL EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  BASIS FOR OPINIONS ....................................................................................... 1

   A.  Qualifications ................................................................................................ 1

   B.  Materials Considered..................................................................................... 1

   C.  Level Of Ordinary Skill in the Art ............................................................... 2

III.  LEGAL STANDARDS ......................................................................................... 3

   A.  Infringement .................................................................................................. 3

   B.  Doctrine of Equivalents ................................................................................ 3

   C.  Prosecution History Estoppel ....................................................................... 4

   D.  Indirect Infringement .................................................................................... 4

   E.  Indefiniteness ................................................................................................ 5

IV.  THE '172 PATENT .............................................................................................. 5

   A.  Asserted Claim .............................................................................................. 6

   B.  Other Claims ................................................................................................. 7

   C.  Reexamination ............................................................................................... 9

   D.  Apple's Characterization of the Patented Feature Is Misleading............................ 12

   E.  Apple Does Not Practice Claim 18 .............................................................. 14

V.  CLAIM CONSTRUCTION .................................................................................. 15

   A.  Plain and Ordinary Meaning of Terms Not Construed ................................. 15

      1.  "Portable Electronic Device With A Keyboard And A Touch Screen Display" .................................................................................... 15

VI.  OVERVIEW OF THE SAMSUNG PRODUCTS .................................................. 17

   A.  The Samsung Input Method Is Not Accused And Does Not Infringe.................... 19

      1.  Samsung Dart .................................................................................... 22

      2.  Samsung Galaxy S II Epic 4G Touch ................................................ 25

      3.  Samsung Stratosphere ....................................................................... 28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

          4.      Samsung Galaxy S III (Verizon, LHE) ...................................... 31

          5.      Samsung Galaxy S III (Verizon, MB1) ...................................... 36

   B.     The Android Input Method Does Not Infringe And Has Many Features
          Which Are Not Accused ...................................................................... 40

          1.      Samsung Stratosphere ............................................................... 40

          2.      Samsung Galaxy Nexus ............................................................. 45

   C.     The Swype Input Method Does Not Infringe And Has Many Features
          Which Are Not Accused ...................................................................... 49

          1.      Samsung Dart ............................................................................ 52

          2.      Samsung Galaxy S II Epic 4G Touch ........................................ 56

          3.      Samsung Galaxy S III (Verizon, MB1) .................................... 64

   D.     The Physical QWERTY Keyboard ...................................................... 69

VII.  SUMMARY OF OPINIONS ............................................................................ 72

VIII. SAMSUNG'S ACCUSED PRODUCTS DO NOT INFRINGE THE ASSERTED
      CLAIM OF THE '172 PATENT ...................................................................... 72

   A.     Samsung's Accused Products Do Not Satisfy the Preamble of Claim 18 .............. 72

   B.     Indirect Infringement ......................................................................... 75

IX.   NON-INFRINGING ALTERNATIVES ........................................................... 77

   A.     The Samsung And Swype Input Methods In The Samsung Galaxy S III,
          Model SCH-i535, Software Ver. MB1 ............................................... 78

   B.     The Samsung Input Method In The Samsung Dart ............................. 85

   C.     Continuous Contact Typing Methods (Swiftkey Flow, T9 Trace, and
          Swype) ................................................................................................ 90

   D.     U.S. Patent Application Publication No. 2007/0040813 to Kushler et al. ............. 95

X.    As Prof. Cockburn Accuses CLAIM 18, IT Is A Mixed Apparatus / Method Claim
      And Is Invalid ................................................................................................. 97

XI.   OTHER COMMENTS ..................................................................................... 98

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

## LIST OF REPORT APPENDICES AND EXHIBITS

| Number | Description |
| --- | --- |
| Appendix 1 | List of materials considered |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

I.      **INTRODUCTION**

1.      My name is Daniel Wigdor, Ph.D. I have been retained by counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC. (collectively "Samsung") as an expert in this matter.

2.      As part of that engagement I have been asked to provide my expert opinions on the non-infringement of claim 18 of U.S. Patent No. 8,074,172 (the "'172 patent").

3.      I am being compensated for my work on this case at my standard consulting rate of $450.00 per hour. I am also being reimbursed for expenses that I incur. My compensation is not contingent upon the results of my study or the substance of my testimony.

4.      I expect to be called to provide expert testimony at trial regarding the opinions contained in this report. If asked to do so, I may also provide testimony describing portable touch-screen devices, graphical user interface design, user interface software, computer programming, as well as the field of human interface interaction generally. I may also discuss the use of hardware and devices related to these technologies. Additionally, I may discuss my own work, teachings, and publications in the field, and knowledge of the state of the art in the relevant time period. I may rely on handbooks, textbooks, technical literature, and the like to demonstrate the state of the art in the relevant period and the evolution of relevant technologies.

5.      In reaching the conclusions described in this report, I have considered the documents and materials identified in Appendix 1. My opinions are also based upon my education, training, research, knowledge, and personal and professional experience.

II.     **BASIS FOR OPINIONS**

A.      **Qualifications**

6.      A detailed description of my professional qualifications, including a list of publications, awards, and professional activities, is contained in my *curriculum vitae*, a copy of which is attached as Appendix 2 to my expert report concerning invalidity of U.S. Patent No. 8,074,172. My qualifications are also summarized in that report.

B.      **Materials Considered**

7.      As part of my preparation for writing this report, I reviewed the materials listed in

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

## V.     CLAIM CONSTRUCTION

45.     In conducting my analysis of the '172 patent claims, I have applied the legal understandings set out in Section III.B of my invalidity report.

46.     I understand that on April 10, 2013, the Court issued an order ("Claim Construction Order") construing various claim terms in the asserted patents in this litigation, but the Court did not construe any terms or phrases from the '172 patent.

47.     I have applied to my analysis my understanding of the claim terms' ordinary and accustomed meaning in the art, except where otherwise indicated. In addition, I have considered and applied to my analysis the apparent application of claim terms by Apple in this litigation.

48.     I reserve the right to amend my opinions if and when Apple provides further clarification on what it understands to be the plain and ordinary meaning of the claim terms.

### A.     Plain and Ordinary Meaning of Terms Not Construed

#### 1.     "Portable Electronic Device With A Keyboard And A Touch Screen Display"

49.     The term "portable electronic device with a keyboard and a touch screen display" appears in the preamble of asserted claim 18. To the extent that "portable electronic device with a keyboard and a touch screen display" requires interpretation, I have applied the plain and ordinary meaning of the term. The plain and ordinary meaning of this term requires that the keyboard and touch screen display both be separate components of the portable electronic device. I understand that the terms "keyboard" and "touch screen display" in this term form the antecedent basis for the use of those terms in later claim limitations, which recite "the keyboard" and "the touch screen display". *See, e.g.,* '172 patent at 12:49 – 13:4. It is my understanding that the use of these terms as antecedent basis renders the preamble limiting.

50.     Prof. Cockburn takes the position that "portable electronic device with a keyboard and a touch screen display" means a virtual keyboard that is displayed on a touch screen display. *See* Cockburn Report at ¶ 396 ("Because the keyboard can be a soft keyboard displayed on the touch screen display, the '172 Patent Accused Products satisfy the preamble of Claim 18."); *see also* Apple's May 20, 2013 claim chart entitled Infringement by Samsung Galaxy S II of U.S.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1    Patent No. 8,074,172 at 2 ("The Samsung Galaxy S II provides a graphical user interface and a

2    virtual keyboard on a touch screen"). Apple's apparent interpretation of "portable electronic

3    device with a keyboard and a touch screen display" is inconsistent with the plain and ordinary

4    meaning in the art.

5         51.    Claim 18 describes a "graphical user interface" distinct from a "portable electronic

6    device with a keyboard". A virtual keyboard is part of a device's "graphical user interface", and

7    therefore the plain and ordinary meaning of the preamble excludes devices where the keyboard is

8    virtual. A person of ordinary skill in the art would recognize that a portable electronic device

9    "with a keyboard" possesses that keyboard independently of software running on the device, and

10   would continue to include a keyboard even if all software were removed from the device. That is

11   not the case with a virtual keyboard, which requires instructions for its display and operation (i.e.,

12   software code).

13        52.    Nothing in the '172 patent suggests that it applies anything other than the plain and

14   ordinary meaning of "portable electronic device with a keyboard and a touch screen display."

15   Every independent claim that explicitly recites the use of a virtual keyboard does so not as a

16   component of the portable electronic device itself, but as a component of computer readable

17   memory or a computer readable storage medium. *See, e.g.,* '172 patent at 15:39-50; 16:3-15. In

18   each of these cases, the claims recite the use of instructions which perform the claimed limitations

19   involving the keyboard. *See, e.g., id.* at 15:39-50; 16:3-15. The '172 patent describes certain

20   keyboards that are comprised of instructions:

21           Also included in the memory 102 are **a keyboard module (or a set
             of instructions) 131**, a word recommendations module (or a set of
22           instructions) 133, and a dictionary 136. The keyboard module 131
             operates one or more soft keyboards.
23

24                                    * * *

25           Memory 102 may include additional modules and/or sub-modules,
             or fewer modules and/or sub-modules. Memory 102, therefore, may
26           include a subset or a superset of the above identified modules and/or
             sub-modules. Various functions of the device 100 may be
27           implemented in hardware and/or software, including in one or more
             signal processing and/or application specific integrated circuits.
28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   *Id.* at 6:50 – 7:5 (emphasis added).

2       53.     Further, the ordering of "portable electronic device with a keyboard and a touch

3   screen display", in which keyboard precedes touch screen display, supports the plain and ordinary

4   meaning of this claim term. Claim 21, the only other independent claim of the '172 patent that

5   recites both a keyboard and a display in its preamble, flips these elements. *See, e.g., id.* at 13:58-62

6   ("portable electronic device with a display and a keyboard"). While claim 21 suggests that a

7   keyboard might be part of a display, the plain and ordinary meaning of "portable electronic device

8   with a keyboard and a touch screen display" in claim 18 suggests the opposite: that the keyboard is

9   separate from the touch screen display and is part of the portable electronic device whether the

10  device includes a touch screen display or not.

11  **VI.     OVERVIEW OF THE SAMSUNG PRODUCTS**

12      54.     I understand that Prof. Cockburn (and Apple) are accusing a number of Samsung

13  Android phones and tablets running Android versions Gingerbread through Jelly Bean of

14  infringing claim 18 of the '172 patent. In paragraph 381 of the Cockburn Report, Prof. Cockburn

15  provides the following list of accused products, which he calls the "'172 Patent Accused Devices":

16              • Admire

17              • Captivate Glide

18              • Conquer 4G

19              • Exhibit II 4G

20              • Galaxy Nexus

21              • Galaxy Note (excluding I717UCMD3 release)

22              • Galaxy SII (excluding T989UVMC6 release)

23              • Galaxy SII Epic 4G Touch (excluding GB27 release)

24              • Galaxy SII Skyrocket (excluding I727UCMC1 release)

25              • Stratosphere

26              • Transform Ultra

27      55.     For his infringement analysis, Prof. Cockburn identifies three "exemplary devices"

28

-17-

## VII.   SUMMARY OF OPINIONS

123.   It is my opinion that Samsung's accused products do not literally infringe asserted claim 18 of the '172 patent. Samsung's accused products do not satisfy limiting elements of the preamble of claim 18: at a minimum, the accused products do not contain "a keyboard and a touch screen display" that have the other limitations of claim 18.

124.   It is also my opinion that Samsung's accused products do not infringe asserted claim 18 of the '172 patent under the doctrine of equivalents because the accused components identified by Prof. Cockburn as satisfying the "keyboard and a touch screen display" limitation are substantially different from the claimed "keyboard and a touch screen display." As explained in more detail below, the accused components perform different functions in different ways to achieve a different result from the claimed "keyboard and a touch screen display" of claim 18.

125.   It is also my opinion that numerous acceptable non-infringing alternatives to claim 18 of the '172 patent exist and have already been implemented in Samsung devices. As explained in more detail above, all of the accused Samsung devices include functionality that is not accused of infringing claim 18 of the '172 patent and, in my opinion, could not be.

## VIII.   SAMSUNG'S ACCUSED PRODUCTS DO NOT INFRINGE THE ASSERTED CLAIM OF THE '172 PATENT

### A.   Samsung's Accused Products Do Not Satisfy the Preamble of Claim 18

126.   The preamble of claim 18 of the '172 patent recites a "graphical user interface on a portable electronic device with a keyboard and a touch screen display." As described above in Section V, in my opinion the plain and ordinary meaning of this term is a keyboard that is separate from a touch screen display. Prof. Cockburn asserts that this "is directly contradicted by the specification of the '172 Patent, which specifically describes implementing [the] user interfaces on virtual keyboards displayed on a touch screen." Cockburn Report at ¶ 21. For the reasons below, I disagree.

127.   Prof. Cockburn specifically asserts that "[b]ecause the keyboard can be a soft keyboard displayed on the touch screen display, the '172 Patent Accused Products satisfy the preamble of Claim 18." Cockburn Report at ¶ 396. This misses the point. In addition to describing

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1   use of the '172 patent's user interface with a soft keyboard, the '172 patent also describes a

2   "physical keyboard that includes a set of push buttons, a keypad, or the like" which is not part of

3   the touch screen display. '172 patent at 7:33-36. The very language cited by Prof. Cockburn

4   describing the use of a soft keyboard says merely that the user interface "*may* include one or more

5   keyboard embodiments displayed on a touch screen." *Id.* at 4:11-12 (emphasis added). Further, the

6   '172 patent states that "in *some embodiments*, the touch screen *may* display one or more trays",

7   which "*may* include … a virtual or soft keyboard." *Id.* at 7:10-15 (emphasis added). But unlike the

8   touch screen, which the '172 patent describes unambiguously as always part of the purported

9   invention, *see id.* at 7:10, nowhere does the '172 patent recite that a soft keyboard must be

10   included in a device practicing the purported invention, let alone the embodiment of the invention

11   described in claim 18 – only that it *may* be included. Accordingly, the pertinent question is not

12   whether the '172 patent discloses use with a soft keyboard, but instead whether claim 18 requires a

13   physical keyboard. In my opinion it does.

14        128.    As described in Section V, above, the ordering of "portable electronic device with a

15   keyboard and a touch screen display", in which "keyboard" precedes "touch screen display",

16   supports my conclusion that claim 18 requires a keyboard in addition to a touch screen display,

17   and not a keyboard that is part of or displayed on a touch screen display. While claim 21 suggests

18   that a keyboard might be part of a display, *see, e.g., id.* at 13:58-62 ("portable electronic device

19   with a display and a keyboard"), the language of claim 18, "portable electronic device with a

20   keyboard and a touch screen display", does not. The plain and ordinary meaning of that term to

21   one of ordinary skill in the art requires a touch screen display that is separate from a keyboard.

22        129.    Moreover, Apple's apparent interpretation of "portable electronic device with a

23   keyboard and a touch screen display", in which the keyboard is a soft or virtual keyboard ***on*** the

24   touch screen display, ignores the use of the conjunctive "and" in this claim element. The use of

25   "and" is important, as it requires that the portable electronic device include a keyboard in addition

26   to a touch screen. By interpreting the claim element to be met by a keyboard on a touch screen,

27   instead of a keyboard and a touch screen, Prof. Cockburn is attempting to read one embodiment

28   (the use of a soft keyboard) into a claim that by its very terms excludes it, all while reading out

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1    another embodiment clearly disclosed in the '172 patent. *See* '172 patent at 7:33-36. Prof.

2    Cockburn's motivation for this strained reading of claim 18 is apparent: to allege infringement

3    where there is none.

4          130.    As further described above in Section VI.D, only three of the products accused of

5    infringing the '172 patent include a physical keyboard: the Captivate Glide, Stratosphere, and

6    Transform Ultra. And as described in Section VI.D, while the physical keyboards of these devices

7    *do* perform automatic replacement of certain misspelled words when a delimiter such as a space is

8    selected on the keyboard, they *do not* work in concert with either of the software input methods

9    accused by Prof. Cockburn installed on those devices (Swype and the Android keyboard) or any

10    software with the user interface elements necessary for infringement. Not surprisingly, then, Apple

11    does not accuse these physical keyboards of infringing the '172 patent. Accordingly, since none of

12    the devices accused of infringing the '172 patent include a keyboard separate from a touch screen

13    display that practices the other limitations of the claims, none of these devices infringe the '172

14    patent.

15          131.    Furthermore, because the accused devices lack a "keyboard", these devices also do

16    not practice the limitations "a first area of the touch screen display that displays a current character

17    string being input by a user with the keyboard" and "the current character string in the first area is

18    replaced with the suggested replacement character string if the user activates a key on the

19    keyboard associated with a delimiter" of claim 18.

20          132.    Furthermore, claim 18 recites "activating a key on the keyboard associated with a

21    delimiter." To the extent Prof. Cockburn or Apple argues that products infringe through the use of

22    a virtual keyboard instead of a separate physical keyboard, these devices would not "activate a key

23    on [a] keyboard". Activation implies a mechanical keyboard because in a mechanical keyboard a

24    user is typically completing a circuit when a key is depressed, thus "activating a key". In a virtual

25    keyboard, on the other hand, there is nothing to activate. Instead, on these keyboards, a user

26    "performs a gesture", as recited in the other limitations of claim 18. If the asserted claim was in

27    fact directed to a virtual keyboard, this language would instead read "performing a gesture on a

28    key on the keyboard." This is apparent from the consistent use of language relating to gestures

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1   throughout the claims of the '172 patent. Indeed, when referring to soft keyboards, the '172 patent

2   describes a "plurality of icons" which each "include one or more symbols." '172 patent at 7:13-15.

3   The '172 distinguishes the soft keyboard from a physical keyboard. The physical keyboard, which

4   is "not a part of the touch screen display", "includes **keys that correspond to the plurality of icons**

5   described above." *Id.* at 7:35-37. The '172 patent specifically compares the soft and physical

6   keyboards, because the soft keyboard only has icons, and not keys. A user, therefore, can never

7   "activate a key" on a soft keyboard, because there is no such thing. For this reason as well, the

8   accused devices do not infringe the '172 patent. In fact, Prof. Cockburn seems to agree, as he cites

9   to the very same language that a soft keyboard "includes a plurality of icons." Cockburn Report at

10  ¶ 396.

11      133.    Nowhere in his opening report does Prof. Cockburn allege that the accused

12  products infringe the '172 patent under the doctrine of equivalents. Accordingly, I understand that

13  Prof. Cockburn has waived any doctrine of equivalents argument, and that his infringement

14  position rests entirely on literal infringement. However, if Prof. Cockburn were to assert that the

15  accused products infringe claim 18 of the '172 patent under the doctrine of equivalents, in my

16  opinion he would be incorrect. The accused products, which operate the Swype and Android

17  keyboard input methods using a virtual or soft keyboard, are substantially different from the

18  claimed "portable electronic device with a keyboard and a touch screen display" of claim 18,

19  which requires **both** a keyboard **and** a separate touch screen display. Software input methods using

20  a virtual keyboard operate in a substantially different way from input methods using a physical

21  keyboard. When using a physical keyboard, there is no need to display a virtual keyboard on a

22  touch screen display, and there accordingly a user interacts with the system using a mechanical

23  input method in addition to an input method implemented on a touch screen. On the other hand,

24  when using a virtual keyboard, all input is performed on a touch screen. By using a virtual

25  keyboard therefore, the accused products perform a different function in a different way from the

26  claimed "portable electronic device with a keyboard and a touch screen display" of claim 18.

27      **B.    Indirect Infringement**

28      134.    In paragraphs 467-469 of his Report, Prof. Cockburn provides opinions concerning

-75-

1      179.   Based on Prof. Cockburn's description, it is unclear to me whether infringement

2  occurs when one creates a system that allows the user to perform a function or when the user

3  actually uses the system to perform a function. Accordingly, the asserted claim of the '172 patent

4  is a mixed method and apparatus claim, and is indefinite.

5  **XI.**    **OTHER COMMENTS**

6      180.   My opinions are subject to change based on additional opinions that Apple's

7  experts may present and information I may receive in the future or additional work I may perform.

8  With this in mind, based on the analysis I have conducted and for the reasons set forth below, I

9  have preliminarily reached the conclusions and opinions in this report.

10      181.   At trial and as discussed above, I may rely on visual aids and may rely on analogies

11  concerning elements of the '172 patent, the accused products, the prior art referenced in this

12  report, or any related technologies.

13      182.   In connection with my anticipated testimony in this action, I may use as exhibits

14  various documents produced in this case that refer or relate to the matters discussed in this report. I

15  have not yet selected the particular exhibits that might be used. In addition, I may create or assist

16  in the creation of certain demonstrative evidence to assist me in testifying, and I reserve the right

17  to do so.

18

19

20  DATED:   September 12, 2013          _____

21                                            Daniel Wigdor

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172