# EXHIBIT C-10

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC. AND<br>SAMSUNG TELECOMMUNICATIONS<br>AMERICA, LLC | Case No. 12-cv-00630-LHK |

**REBUTTAL EXPERT REPORT OF JEFFREY CHASE, PH.D
REGARDING NONINFRINGEMENT OF THE ASSERTED CLAIMS OF
U.S. PATENT NO. 7,761,414**

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

    B.2.    <u>Claim 20.</u>

        (a)    *"The storage medium as in claim 11 wherein the synchronization software component is configured to synchronize structured data of a first data class and other synchronization software components are configured to synchronize structured data of other corresponding data classes."*

42.    In ¶ 405 of his report, Dr. Snoeren opines that "[a]s required by the language of claim 11, from which claim 20 depends, each of these synchronization software component[s of claim 20] provides at least one synchronization processing thread to affect synchronization of its corresponding data class."  I disagree with Dr. Snoeren's opinion.  The plain language of claim 20 requires that the ***one*** synchronization software component of claim 11 is configured to synchronize structured data of a first class, and discloses that the storage medium of claim 11 also contains other synchronization software components that are "configured to synchronize structured data of other corresponding data classes."  Nothing in the language of claim 20 requires that these other synchronization software components also provide at least one synchronization processing thread.  Indeed, claim 20 does not even require that these other synchronization software components run on any particular thread at all.  The other synchronization software components in claim 20 may, for example, also run on the synchronization processing thread described in claim 11.

43.    In ¶ 409 of his report, Dr. Snoeren opines that "in light of the specification, one of skill in the art would understand claim 20 to require the use of a plug-in model architecture such that additional synchronization software components corresponding to other classes of structured data are plugged into that architecture to handle the synchronization of such data in addition to the requirements of claim 11."  I disagree with Dr. Snoeren's opinion.  As Dr. Snoeren appears to recognize, nothing in the language of claim 20 describes or requires "a plug-in model architecture."  Moreover, nothing in the specification of the '414 patent suggests that all

EXPERT REPORT OF J. CHASE REGARDING NONINFRINGEMENT OF '414 PATENT
14

"synchronization software components" must contain the same functionality. Indeed, the '414 patent explicitly describes multiple synchronization software components that perform different functions; *e.g.*, a Data Source, a Sync Agent, a Sync Client, and a Data Class Handler. (*See* '414 patent tbls. A-D.)[3]

**Intentionally Omitted from Exhibit/Record**

---

[3] I also note that Dr. Snoeren served an errata to his report, suggesting that the "other synchronization software components" of claim 20 must "correspond to a different data class than the [synchronization software component] configured to synchronize the first class of data." (*See* Errata at ¶ 474.) For purposes of both my invalidity analysis and non-infringement analysis, I have applied the plain language of claim 20 noted above.

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

258. At hearings and at trial, and as discussed above, I may rely on visual aids and may rely on analogies concerning elements of the '414 patent, the Accused Products, the prior art referenced in this report, or any related technologies.

Date: September 13, 2013

_____
Jeffrey S. Chase