# EXHIBIT C-1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>      Plaintiff,<br><br>   vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>      Defendants. | CASE NO. 12-cv-00630-LHK |

**EXPERT REPORT OF MARTIN RINARD, PH.D.**
**REGARDING THE VALIDITY OF**
**CLAIMS 24 and 25 OF U.S. PATENT NO. 6,847,959**

## TABLE OF CONTENTS

**Page**

LIST OF REPORT APPENDICES AND EXHIBITS...............................................................VIII

I.      INTRODUCTION ...............................................................................................................1

II.     BASIS FOR OPINIONS......................................................................................................2

    A.      Qualifications...........................................................................................................2

    B.      Materials Considered .............................................................................................15

    C.      Level of Ordinary Skill in the Art..........................................................................15

III.    TECHNOLOGY BACKGROUND ...................................................................................16

    A.      Searching for Information in Different Locations Using a Universal
        Interface .................................................................................................................16

    B.      Searching Distributed Databases and the Internet .................................................26

        1.      Operating Systems Mechanisms................................................................35

        2.      Run-Time System Layer ............................................................................37

    C.      Heuristics ...............................................................................................................38

    D.      SQL ........................................................................................................................46

IV.     SUMMARY OF OPINIONS .............................................................................................47

V.      LEGAL STANDARDS .....................................................................................................47

    A.      Legal Standard for Prior Art ..................................................................................47

    B.      Legal Standard for Anticipation.............................................................................49

    C.      Legal Standard for Obviousness ............................................................................49

    D.      Person of Ordinary Skill in the Art........................................................................54

    E.      Legal Standard for Written Description and Enablement.......................................54

    F.      Legal Standard for Claim Construction .................................................................55

    G.      Legal Standard for Indefiniteness ..........................................................................59

    H.      Legal Standard for Inventorship ............................................................................61

    I.      Legal Standard for Conception, Diligence and Reduction to Practice ..................61

    J.     Legal Standard for Priority Date .................................................62

    K.    Incorporation By Reference ........................................................63

VI.    THE '959 PATENT ...............................................................................63

    A.    The '959 Patent Generally ..........................................................63

    B.    The '959 Patent Specification .....................................................64

        1.    The '959 Patent File History ...........................................67

            (a)    January 5, 2000, Application [APLNDC630-0000041194] ..........67

            (b)    March 10, 2003, Non-Final Office Action [APLNDC630-0000041234 – 1242] ...............67

            (c)    June 17, 2003 Response to March 10, 2003 Non-Final Office Action [APLNDC630-0000041244 – 1254] ....................68

            (d)    July 12, 2003 Final Office Action [APLNDC630-0000041257 – 1269] ...............68

            (e)    November 7, 2003 Brief of the Appellant [APLNDC630-0000041278 – 1309] ...............68

            (f)    January 15, 2004, Non-Final Office Action in Response to Brief of the Appellant /APLNDC630-0000041310 – 1322] .........69

            (g)    June 15, 2004, Notice of Appeal and Supplemental Brief of January 15, 2004, Office Action [APLNDC630-0000041324 – 1351] ...............71

            (h)    September 7, 2004, Notice of Allowability [APLNDC630-0000041352 – 1355] ...............71

        2.    The '604 Patent File History ...........................................72

            (a)    December 1, 2004, Application [APLNDC630-0000040382] ...............72

            (b)    February 7, 2007, Non-Final Rejection [APLNDC630-0000040416 - 40420] ...............72

            (c)    May 7, 2007, Response to Non-Final Rejection [APLNDC630-0000040425 - 40436] ...............73

            (d)    July 23, 2007, Final Rejection [APLNDC630-0000040450 - 40458] ...............73

            (e)    October 23, 2007, Request for Continued Examination and Amendment[APLNDC630-0000040464 - 40478] ...............74

(f)  January 25, 2008, Non-Final Rejection [APLNDC630-0000040491 - 40500]................................................77

(g)  April 23, 2008 Amendment [APLNDC630-0000040504 - 40512]........................................................77

(h)  July 11, 2008, Final Rejection [APLNDC630-0000040516 - 40528]..............................................................78

(i)  December 11, 2008, Amendment [APLNDC630-0000040547 - 40558]..............................................................79

(j)  December 26, 2008 Non-Final Rejection [APLNDC630-0000040562 - 40576]....................................................81

(k)  April 27, 2009, Amendment [APLNDC630-0000040594 - 40604].......................................................................82

(l)  July 8, 2009, Final Rejection [APLNDC630-0000040611 - 40627]...........................................................82

(m)  October 8, 2009, Request for Continued Examination [APLNDC630-0000040642 - 40647] ...........................................83

(n)  February 5, 2010, Appeal Brief [APLNDC630-0000040667 - 40686]........................................................83

(o)  May 7, 2010, Rejection [APLNDC630-0000040692 - 40703]...............................................................84

(p)  September 13, 2010, Amendment and Remarks [APLNDC630-0000040723 - 40735] ...........................................85

(q)  November 29, 2010, Final Office Action [APLNDC630-0000040743 - 40758].......................................................87

(r)  January 31, 2011, Reply After Final Action [APLNDC630-0000040772 - 40774]..............................................87

(s)  February 12, 2011, Non-Final Rejection [APLNDC630-0000040777 - 40790]...................................................87

(t)  June 14, 2011, Request for Reconsideration [APLNDC630-0000040807 - 40812]..............................................87

(u)  September 2, 2011, Notice of Allowance [APLNDC630-0000040820 - 40828].................................................88

3.  Priority Date.................................................88

VII.  ASSERTED CLAIM SCOPE AND CLAIM INTERPRETATION ................................88

A.      "Heuristic" ......................................................................................... 90

VIII.   THE PRIOR ART ................................................................................... 95

A.      WAIS ................................................................................................... 95

1.      The Client.................................................................................. 98

2.      The Server ............................................................................... 104

3.      Searching in WAIS ................................................................. 112

4.      The Communication Protocol ................................................. 114

5.      FreeWAIS-sf ........................................................................... 114

B.      Sherlock ............................................................................................. 122

C.      Newton running Hemlock ................................................................. 130

1.      Newton 2.0 Was Designed as a Mobile Internet Device ....... 130

2.      The Newton Operating System .............................................. 132

3.      The Universal or Global Find on the Newton ........................ 133

4.      The Newton Intelligent Assistant........................................... 142

5.      Hemlock Search Tool on the Newton ..................................... 144

D.      Metacrawler ...................................................................................... 146

1.      Overview ................................................................................ 147

2.      MetaCrawler Architecture ..................................................... 148

3.      MetaCrawler Integration with Clio Local Search.................. 151

E.      AppleSearch ...................................................................................... 154

1.      History of AppleSearch........................................................... 155

2.      AppleSearch Architecture ...................................................... 156

3.      Locating Information in Local Storage Media........................ 160

4.      Locating Information on the Internet ...................................... 161

5.      Searching Local Storage Media and Internet Storage Media In
        Parallel ................................................................................... 162

F.      Evans.................................................................................................. 163

G.      Jensen ........................................................................................................165

H.      U.S. Patent No. 7,653,614 to Smith ........................................................165

I.      Legall ........................................................................................................166

J.      Grossman ..................................................................................................168

K.      U.S .Patent No. 5,855,015 to Shoham .....................................................171

L.      Analysis and Video Demonstrations of Prior Art Software ....................180

    1.      WAIS .............................................................................................180

    2.      AppleSearch ...................................................................................182

    3.      Newton version 2.0 running Hemlock ...........................................184

    4.      Sherlock 2 ......................................................................................185

IX.     ANALYSIS OF THE VALIDITY OF THE '959 PATENT .................................186

A.      Anticipation ..............................................................................................186

    1.      AppleSearch System ......................................................................186

    2.      U.S. Patent No. 5,926,808 to Evans ..............................................186

    3.      MetaCrawler System ......................................................................187

    4.      WAIS System .................................................................................187

B.      Obviousness ..............................................................................................188

    1.      The Scope and Content of the Prior Art ........................................190

        (a)      The AppleSearch System .....................................................191

        (b)      U.S. Patent No. 5,926,808 to Evans .....................................191

        (c)      U.S. Patent No. 6,834,276 to Jensen .....................................191

        (d)      U.S. Patent 6,005,565 to Legall ...........................................192

        (e)      MetaCrawler System ............................................................192

        (f)      Newton running Hemlock ....................................................192

        (g)      The Sherlock System ...........................................................193

        (h)      U.S. Patent No. 7,653,614 to Smith .....................................193

(i)    The WAIS System ..................................................................193

(j)    The Asserted '959 Patent Claims Are A Combination of Well Known Prior Art Elements..............................................194

      (i)    Receiving an information identifier was well known ......194

      (v)    Applying an information identifier separately to each heuristic was known .................................................210

2.    The Combinations in the '959 Asserted Patent Claims are Predictable...........................................................................211

3.    The Combinations In The '959 Asserted Patent Claims do not Yield any Unpredictable Results ............................................212

4.    One of Ordinary Skill in the Art would have been Motivated to Pursue the Claimed Combinations through Market Forces and Trends ..................................................................................212

    (a)    Differences Between the Prior Art and the Claims at Issue........217

      (i)    AppleSearch in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious .......................................218

      (ii)    Evans in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious...................................................219

      (iii)    Evans in Combination with Grossman, further in Combination with Sherlock, further in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious ........219

      (iv)    Jensen in Combination with Shoham, further in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious..............................................................220

      (v)    Legall in Combination with Shoham, further in Combination with Sherlock, further in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious ........221

      (vi)    MetaCrawler in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious .......................................221

      (vii)    Newton running Hemlock in Combination with Sherlock, further in Combination with the

Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious ...................222

(viii)   Smith in Combination with Shoham, further in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious...............................................223

(ix)   Sherlock in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious..................................................225

(x)   WAIS in Combination with the Knowledge of a Person of Ordinary Skill in the Art Renders the '959 Asserted Claims Obvious..................................................226

(b)   Level of Ordinary Skill in the Art.............................................227

(c)   Secondary Considerations Set Forth in *Graham* Do Not Alter the Conclusion of Obviousness ..........................................228

(i)   No Commercial Success Attributed to the Purported Invention ...........................................................................229

(ii)   No Evidence of Industry Recognition Or Praise..............240

(iii)   No Evidence of Copying..................................................242

(iv)   No Evidence of Failure of Others ...................................245

(v)   No Evidence of Long-Felt but Unsolved Need...............247

(vi)   Other Secondary Considerations.....................................249

C.   Lack of Written Description and Enablement ...................................251

1.   Lack of Written Description ...................................................251

2.   Non-Enablement ....................................................................257

D.   Indefiniteness .............................................................................258

X.   OTHER COMMENTS..................................................................................269

## LIST OF REPORT APPENDICES AND EXHIBITS

| Appendix No. | Description |
|---|---|
| Appendix 1 | List of materials relied upon |
| Appendix 2 | Curriculum Vitae of Martin Rinard, Ph.D. |
| Exhibit 1 | Invalidity Claim Chart for AppleSearch |
| Exhibit 2 | Invalidity Claim Chart for Evans |
| Exhibit 3 | Invalidity Claim Chart for Jensen |
| Exhibit 4 | Invalidity Claim Chart for Legall |
| Exhibit 5 | Invalidity Claim Chart for MetaCrawler |
| Exhibit 6 | Invalidity Claim Chart for Newton Running Hemlock |
| Exhibit 7 | Invalidity Claim Chart for Sherlock |
| Exhibit 8 | Invalidity Claim Chart for Smith |
| Exhibit 9 | Invalidity Claim Chart for WAIS |
| Video Exhibits 1-11 | Video demonstration of AppleSearch |
| Video Exhibit 12 | Video demonstration of Sherlock |
| Video Exhibit 13 | Video demonstration of Newton running Hemlock |
| Video Exhibits 14-38 | Video demonstration of WAIS |

way the Jade implementation (and many other implementations of distributed object systems) enabled Jade tasks to transparently access both local information stored in the local machine and remote information available via the Internet.

**C.** **Heuristics**

103.   The term "heuristic" was used, loosely, by computer scientists to mean a variety of things for many years before the priority date of the '959 patent.   *See, e.g. Grossman; Shoham, Selberg Thesis, SenseMaker paper, Rama,* P. Dagupta et al., Multi-Objective Heuristic Search, An Introduction to Intelligent Search Methods for Multicriteria Optimization, Vieweg & Sohn (1999); O. Grillmeyer, Exploring Computer Science with Scheme (Undergraduate Texts in Computer Science), Springer-Verlag New York, Inc. (1998); A. Bagchi and A. Mahanti, Search Algorithms Under Different Kinds of Heuristics – A Comparative Study, Journal of the Association for Computing Machinery, Vol. 30, No. 1, January 1983, pp. 1-21; Kirsch at 2:23-3:11.   Persons of skill will often use this term to characterize some "rule of thumb" that may assist in the completion of some task.

104.   However, persons of ordinary skill can and often do disagree whether a given search technique does or does not constitute a heuristic.   As one example, here, the two named inventors of the '959 patent, Yan Arrouye and Keith Mortensen, gave directly conflicting answers whether certain search techniques were heuristics or not:

| Search Technique | '959 Inventor<br><br>Keith Mortensen | '959 Inventor<br><br>Yan Arrouye |
|---|---|---|
| Searching the Names of files | Q.   Okay.   Is searching for a file name heuristic?<br><br>THE WITNESS:   Yes.<br><br>(Mortensen Dep.   at 187:2-5 (objections omitted).) | Q.   But searching -- but searching by file name itself is not a heuristic?<br><br>A.   I wouldn't say that is heuristic, no, absolutely not.<br><br>Arrouye II at 47:25 - 48:3 |
| Searching the Content of Files | Q.   Okay.   Is searching the content of files a heuristic? | Q.   And searching the content of files is not a heuristic; is that right? |

| | A.   Yes.<br><br>(Mortensen Dep. at 187:11-13.) | THE WITNESS:   As an engineer, I would not -- I would call that a task, not a heuristic.<br><br>Arrouye II at 50:4-8 (objection omitted). |
|---|---|---|
| Searching using an Internet Search Engine | Q.  Is searching an Internet search engine a heuristic?<br><br>THE WITNESS:   Yes.<br><br>(Mortensen Dep. at 188:4-9 (objection omitted).) | Q.   Okay.   Is searching the Internet a heuristic?<br><br>THE WITNESS:   Again, follow those -- I think you can employ heuristics to perform the task you are trying to do. So I would call that a task for which you can use or not use a heuristic.<br><br>(Arrouye   II   50:10-16   (objection omitted).) |

105.    As shown in these above examples, the named inventors of the '959 patent cannot even agree among themselves as to whether certain search techniques are heuristics or not. This is a fundamental characteristic of the term "heuristic" in computer science, where some persons of skill might call a given technique a heuristic, while others would not call that same technique a heuristic.   The testimony of the '959 inventors highlights this point.   In my opinion, nothing in the '959 patent specification appears to resolve the subjective nature of the term "heuristic" or the resulting disputes over this term's meaning in the field.

106.    Subject to these issues, I note that "heuristics" have long been discussed and employed in information retrieval.   Indeed, Dr. Gerard Salton, considered by many as the father of modern information retrieval, conducted decades of work in using "heuristics" for information searching.   *See*, *e.g.*, *Automatic Information Organization and Retrieval*, Salton, 1968; *Dynamic File Organization and Heuristic Search Strategies in Information Retrieval*, Salton, 1969.

107.    Others have likewise long discussed the use of "heuristics" in information retrieval, in a variety of contexts.   *See, e.g., Search Algorithms Under Different Kinds of Heuristics – A Comparative Study*, Bagchi, 1983; *A Theory of Indexing. Society for Industrial*

*and Applied Mathematics*; Salton, 1975; *Automatic Text Processing*, Salton, 1989; *Combining Model-Oriented and Description-Oriented Approaches for Probabilistic Indexing*, Fuhr and Pfeiffer, 1991 ("We distinguish model-oriented and description-oriented approaches in probabilistic information retrieval. . . . Experiments with the purely theoretical approach and with several heuristic variations show that heuristic assumptions may yield significant improvements."); *Probabilistic Information Retrieval as a Combination of Abstraction, Inductive Learning, and Probabilistic Assumptions*, Fuhr and Pfeiffer, 1994 ("We show that former approaches in probabilistic information retrieval are based on one or two of the three concepts abstraction, inductive learning, and probabilistic assumptions, and we propose a new approach which combines all three concepts . . . . Experimental results for the pure theoretical model as well as for heuristic variants are given. Furthermore, linear and logistic regression are compared."); *Information Retrieval: Algorithms and Heuristics*, Grossman, 1998; *A Decision-Theoretic Approach To Database Selection In Networked IR*, Fuhr, 1999 ("In networked IR, a client submits a query to a broker, which is in contact with a large number of databases. . . . If there are several brokers knowing different databases, a preselection of brokers can only be performed heuristically, but the computation of the optimum can be done similarly to the single-broker case."); *Multi-Objective Heuristic Search, An Introduction to Intelligent Search Methods for Multicriteria Optimization*, Dasgupta, 1999.

108. Indeed, as Grossman discloses: "Our objective is to describe the techniques or algorithms and heuristics used to find documents that are relevant to the user request and to find them quickly. ***Academic research since the late 1950s has focused on this problem***." *INFORMATION RETRIEVAL Algorithms and Heuristics*, Grossman, 1998, SAMNDCA630-00936965 at 7176; *see also Multi-Objective Heuristic Search, An Introduction to Intelligent Search Methods for Multicriteria Optimization*, Dasgupta, 1999, SAMNDCA630-00938936 at

47:

> *In the past three decades*, researchers in the area of heuristic search have focussed [sic]on the central theme of *knowledge versus search* in some form or the other.   The major attention has been towards quantifying problem specific knowledge in terms of a heuristic evaluation function and developing algorithmic frameworks for solving problems in an efficient manner.   *The nature of the heuristic function and its effect on the search mechanism has been a subject of considerable interest.*

109.   Heuristics were well known in the area of information retrieval because of the known challenges associated with obtaining a computerized understanding of documents and queries sufficient to always identify documents that are relevant to the search. In the absence of any such computerized understanding, researchers and practitioners have turned to heuristic search techniques.

> [A] user enters a query that describes a request for information, and an information retrieval system responds by identifying documents that are relevant to the query.   Of course, the computer cannot understand documents and queries the way a human can, so *methods other than full natural language understanding of the text must be employed*.   We cover the various techniques used to quickly find relevant documents, with the necessary introduction, technical details, and examples to illustrate the approach.

INFORMATION RETRIEVAL Algorithms and Heuristics, Grossman, 1998, SAMNDCA630-00936965 at 973.

110.   Indeed, Grossman characterizes an Information Retrieval approach as follows:

> With this approach, no real attempt is made to have the computer understand the document-instead techniques that *use pattern matching, statistical sampling, machine learning, and probability theory are used to guess which documents are relevant*.   These systems are not perfect, but they offer users the opportunity to sift through large volumes of text.   The key problem is that *simply matching on query words is not sufficient to satisfy user requests*.

INFORMATION RETRIEVAL Algorithms and Heuristics, Grossman, 1998, SAMNDCA630-00936965 at 974.

111.   Searching using heuristics was taught in undergraduate computer science courses:

*See*, *e.g. Undergraduate Texts in Computer Science*, *Exploring Computer Science with Scheme*,

Grillmeyer, 1998, SAMNDCA630-00936349 at 790:

> A *heuristic* is a strategy or rule-of-thumb that is applicable in certain situations. Using heuristics in addition to straight search methods may lead to a solution more quickly.

112.    The term has often been applied to describe certain kinds of algorithms – in general, computer scientists aspire to develop algorithms that 1) produce a result that is guaranteed to be correct or optimal and 2) produce this result efficiently. In some cases, however, there may be fundamental limitations on how efficiently any algorithm can produce a result that is guaranteed to be correct or optimal for the problem at hand.   For example, it is widely known that no algorithm exists to solve the "halting problem" – determining if a given computer program will always halt.   Computer scientists also believe that efficient algorithms do not exist to solve so-called "NP-complete" problems such as the "traveling salesperson problem" (determining the shortest path that visits a list of cities).

113.    Computer scientists often respond to these situations by deploying heuristics to obtain an algorithm that may not always be optimal, correct, or efficient, but tends to work well in practice. For example, program analysis researchers have developed heuristics that allow a program analysis system to detect cases in which the program under analysis does halt. Similarly, algorithm designers have developed heuristics for the traveling salesperson problem that produce an efficient algorithm that may not give the shortest path. Even though the resulting algorithms may not be optimal or correct in all cases, they may be efficient and work well enough often enough for practical use.

114.    In other cases an optimal or correct algorithm may require information that is not available. For example, an algorithm that schedules airplane takeoffs and arrivals may benefit from information about how future weather conditions may affect the availability of runways at airports that may experience severe weather conditions.   Clearly this information may not be

fully available until the weather conditions actually occur.

115.   Many search systems used heuristics to locate relevant information before the application for the '959 was filed.   For example, WAIS used heuristics to locate documents that would, hopefully, be relevant to the user.   "To improve . . . retrieval effectiveness, WAIS uses *a heuristic ranking* method, which sorts the documents according to decreasing *relevance*." *Expansion of the FreeWAIS Server*, Tung, 1994, SAMNDCA630-06029163 at 87-88.   "A ranking number, which is generated by the server using a heuristic ranking method, indicates the ordinal position of a headline in the set of responses to a query."   *Id.* at 247.

> **How does WAIS work?**
>
> The servers take a users question and ***do their best to find relevant documents***. The servers, at this point, ***do not "understand" the users English language question***, rather they try to find documents that contain those words and phrases and ranks them ***based on heuristics***.

*Overview of Wide Area Information Servers*, Kahle, April 1991, SAMNDCA630-00821974; *see also WAIS – Making it Easier to Access Internet Resources*, Link Letter, 1992, Reprinted from CERFnet News, Volume 3 Number 6, KAHLENDCA630-00001343 at 45; *Wide Area Information Servers*, 1991, KAHLENDCA630-00009871 at 72; Proceedings for Wide Area Information Server Workshop, February 3-4, 1992, MCNC Conference, KAHLENDCA630-00013891 at 903, CORNELLNDCA630-00000058 at 72.

116.   As another example, Shoham discloses a variety of heuristics for locating information:

> For example, the heuristic may identify several features, each feature taking values from a given scale.   The ranking scale may be a simple binary scale, such as yes/no, or a scale with a number of gradations, such as a numeric scale, or a scale with values such as poor, good, better, best, etc.   For example, in one embodiment of the present invention operating in the Web environment, the input to the heuristics initialization, i.e. the training examples, consists of 20 information resources each having a ranking between zero and ten indicative of their relevance or "interestingness" to the user.   The output of the initialization process would be a function that takes any Web information resource and returns

a ranking within the range of zero to ten.   The exploration and presentation heuristics are then based on these ranking functions.   Preferably, the heuristics developed based on the training examples continually adapt to the user's interests as determined by the user feedback, described below.   Alternatively, once the heuristics are developed, the system may continue to explore the network and present results using those heuristics until the system is reinitialized and a new set of training examples are presented.

. . .

Of course, any of a number of other features may be utilized to characterize a particular information resource and to evaluate its probable relevance to the user. For example, structural features, such as the length of a document, the number of pictures it contains, or when it was last updated, may be used to evaluate how interesting the document will be to the user.   In one embodiment of the present invention, words used within HTML tags are rated higher than other words.   For example, in HTML, embedded codes are used to structure the information.   Thus, a word to be emphasized may be encoded as "&lt;E&gt;emphasize&lt;/E&gt;" which the system and method of the present invention would interpret to be more indicative of the content of the resource.   Similarly, if a word appears in a heading, it is rated higher than if it is found in the middle of a sentence. A higher rating corresponds to a higher weight in evaluating the search heuristic.

*        *        *

"Stemming" reduces words to their "stems" and diminishes redundancy.   For example, "computer," "computers," "computing" and "computability" all reduce to "comput."   For this the Porter suffix-stripping algorithm was utilized, as disclosed in M. F. Porter, "An Algorithm For Suffix Stripping," PROGRAM 14(3): 130-37, July 1980, and as implemented in Frakes, W. B. Frakes, Stemming Algorithms, INFORMATION RETRIEVAL DATA SOURCES AND ALGORITHMS, pp. 131-160 (Prentiss Hall 1992).

Shoham at 8:3-24, 10:26-41, 11:42-51.

117.    Vector space search techniques inherently use "similarity heuristics" to determine which documents to return in response to a query. There are many different known similarity heuristics that vector space search techniques use. See, for example:

"Ranked queries are used to locate relevant documents in text databases. In a ranked query a list of terms is specified, then the documents that most closely match the query are returned—in decreasing order of similarity—as answers. Crucial to the efficacy of ranked querying is the use of a similarity heuristic, a mechanism that assigns a numeric score indicating how closely a document and the query match."

Zobel and Moffat, "Exploring the Similarity Space", Abstract, SAMNDCA630-07389413.

"Many similarity measures have been proposed, based on the vector space model and the probabilistic model as well as naive co-occurrence of terms between document and query. In this section we describe several standard similarity measures, mostly based on the vector space model, in a consistent framework and notation."

Zobel and Moffat, "Exploring the Similarity Space", SAMNDCA630-07389414.

118.    Table 1, in conjunction with Table 5 in "Exploring the Similarity Space" by Zobel and Moffat discloses specific known similarity heuristics:

| | Description | Formulation |
|---|---|---|
| A | Inner product. | $S_{q,d} = \sum_{t \in \mathcal{T}_{q,d}} (w_{q,t} \cdot w_{d,t})$ |
| B | Cosine measure. | $S_{q,d} = \dfrac{\sum_{t \in \mathcal{T}_{q,d}} (w_{q,t} \cdot w_{d,t})}{W_q \cdot W_d}$ |
| C | Simple probabilistic measure. The variable $C$ is a tuning constant, set to 0 in this context [Frakes and Baeza-Yates 1992, p. 369]. | $S_{q,d} = \sum_{t \in \mathcal{T}_{q,d}} (C + w_t)$ |
| D | More sophisticated probabilistic measure. Variable $C$ is again a tuning constant set to 0. | $S_{q,d} = \sum_{t \in \mathcal{T}_{q,d}} (C + w_t) \cdot r_{d,t}$ |
| E | Alternative inner product. | $S_{q,d} = \sum_{t \in \mathcal{T}_{q,d}} \dfrac{w_{d,t}}{W_d}$ |
| F | Dice formulation. (Ozkarahan [1986, p. 496] and Salton and McGill [1983, pp. 202-3] use $W_x = \sum_{t \in \mathcal{T}_x} w_{x,t}$ rather than $W_x^2$, for Dice, Jaccard, and overlap.) | $S_{q,d} = \dfrac{2 \sum_{t \in \mathcal{T}_{q,d}} (w_{q,t} \cdot w_{d,t})}{W_q^2 + W_d^2}$ |
| G | Jaccard formulation. | $S_{q,d} = \dfrac{\sum_{t \in \mathcal{T}_{q,d}} (w_{q,t} \cdot w_{d,t})}{W_q^2 + W_d^2 - \sum_{t \in \mathcal{T}_{q,d}} (w_{q,t} \cdot w_{d,t})}$ |
| H | Overlap formulation. | $S_{q,d} = \dfrac{\sum_{t \in \mathcal{T}_{q,d}} (w_{q,t} \cdot w_{d,t})}{\min(W_q^2, W_d^2)}$ |

Table 1: Combining functions $S_{q,d}$

| | Description | Formulation |
|---|---|---|
| A | Unit length. $SB = x$ | $W_d = 1$ |
| B | Vector space formulation. $SB = c$ | $W_d = \sqrt{\sum_{t \in \mathcal{T}_d} w_{d,t}^2}$ |
| C | Approximate formulation. | $W_d = |\mathcal{T}_d|$ |
| D | Another approximate formulation. | $W_d = \sqrt{|\mathcal{T}_d|}$ |
| E | Yet another approximate formulation. | $W_d = \log_2 |\mathcal{T}_d|$ |
| F | Byte size. (Alternatively, $W_d = b_d$ can be used, where $b_d$ is the length of $d$ in bytes.) | $W_d = f_d$ |
| G | Further alternative approximate formulation. | $W_d = \sqrt{f_d}$ |
| H–N | Pivoted cosine method (used only for document weights), where $W_d'$ is calculated using another length formulation such as method A (to get method H) or method B (to get method I) and where $s$ is the slope, typically about 0.7. | $W_d = (1 - s) + s \cdot \dfrac{W_d'}{av_{d \in D} W_d'}$ |

Table 5: Document lengths $W_d$ and query lengths $W_q$

*Zobel and Moffat*, "Exploring the Similarity Space", SAMNDCA630-07389414, SAMNDCA630-07389419.

119.    Many other universal interfaces that used heuristics to locate information existed before the '959 patent, including those discussed in my Report below.

**D.    SQL**

120.    Structured Query Language ("SQL") is a language designed for describing and querying data stored in a database.   Relational databases and SQL have existed for decades. *See, e.g.*, D. Chamberlin, *A Complete Guide to DB2 Universal Database*, Kaufmann Press, 1998, SAMNDCA630-07883785.

> The data world has long had SQL (Structured Query Language), a neutral language (and an official standard) for describing databases and querying data that works across platforms and databases . . .   It's a description language, not a programming language, and can't do much by itself.
>
> *Client-Server Standards for Text: Foundation for Innovation*, Dyson, Release 1.0, 1991, KAHLENDCA630-00000487.

121.    The SQL language includes common operators, such as = and LIKE (which

time of the filing of the '959 Patent. *See Client-Server Standards for Text: Foundation for Innovation*, Dyson, Release 1.0, 1991, KAHLENDCA630-00000487 ("The data world has long had SQL (Structured Query Language), a neutral language (and an official standard) for describing databases and querying data that works across platforms and databases"); Grossman at, e.g.,  SAMNDCA630-00936976.   To the extent Apple's apparent interpretation of the claims is correct, any prior art that utilizes the like operator or similar constraint satisfaction algorithms would practice this limitation.

291.     Generally throughout my anticipation and obviousness analysis, I have applied the construction of "heuristic" as construed by the Court during the preliminary injunction phase. While the term "heuristic" is ambiguous even under this construction, there are techniques that have been recognized, are generally recognized, or would generally be recognized by the computer scientists and one of skill in the art as "rules of thumb" that do not consist solely of constraint satisfaction parameters and are therefore unambiguously heuristics. I have, in general, identified such techniques as heuristics during my anticipation and obviousness analysis.

292.     I note that Apple's infringement contentions are far from clear on what, if any, "rules of thumb" Apple believes to have found in the accused devices. Apple's infringement contentions never explicitly identify any technique deployed in the accused devices as comprising a "rule of thumb." Given the absence of any such identification, it is difficult for me to determine what, if any, "rules of thumb" Apple may believe to be present in the accused devices. When appropriate, and to the extent possible, I have nevertheless attempted to identify techniques in the prior art that Apple may, based on the same theories that they may eventually use to identify techniques in the accused devices as "heuristics," believe also to be heuristics. I reserve the right to update and supplement this report should Apple or its expert provide any

client process to query the -- the systems, or by using an IP address and having it be referred back to itself.

July 25, 2013 Deposition of Brewster Kahle at 53:23-54:2.

322.    When creating a database, the –export command determines whether to create a databases accessible locally and remotely, or just locally.    If the waisindex program is given the -export option, it generates a source description file that contains a host name and tcp port for remote access.    Otherwise, the source description file contains no connection information and is intended only for local searches.

> -export    This causes the resulting source description file to include the host-name and tcp-port for use by the clients. Otherwise the file contains no connection information, and is expected to be used only for local searches.

*freeWAIS-sf – UNIDO Edition 0.5*, University of Dortmund, Pfeifer, 1995, SAMNDCA630-00822283 at 97;*see also* FUHRNDCA630-00000009; FUHRNDCA630-00000001/SAMNDCA630-05349929 at doc/SF/fwsf.ps.

### 3.    Searching in WAIS

323.    WAIS allows users to use natural English language to enter in queries.    WAIS attempts to locate documents that would be relevant to the user's queries.

**How does WAIS work?**

The servers take a users question and ***do their best to find relevant documents***. The servers, at this point, ***do not "understand" the users English language question***, rather they try to find documents that contain those words and phrases and ***ranks them based on heuristics***.

324.    *Overview of Wide Area Information Servers*, Kahle, April 1991, SAMNDCA630-00821974; *see also WAIS – Making it Easier to Access Internet Resources*, Link Letter, 1992, Reprinted from CERFnet News, Volume 3 Number 6, KAHLENDCA630-00001343 at 45; *Wide Area Information Servers*, 1991, KAHLENDCA630-00009871 at 72; Proceedings for Wide Area Information Server Workshop, February 3-4, 1992, MCNC Conference, KAHLENDCA630-00013891/CORNELLNDCA630-00000058/SAMNDCA630-07330038    at 903.

325.    "To improve . . . retrieval effectiveness, WAIS uses ***a heuristic ranking*** method,

which sorts the documents according to decreasing *relevance*." *Expansion of the FreeWAIS Server*, Tung, 1994, SAMNDCA630-06029163 at 87-88. "A ranking number, which is generated by the server using a heuristic ranking method, indicates the ordinal position of a headline in the set of responses to a query." *Id.* at 247.

**Dig Those Heuristical Algorithms**

. . .

WAIS, an experimental project of Thinking Machines Corporation in Cambridge, Massachusetts, ***will search any compatible system on a network, then prioritize the results, based on simple heuristical algorithms***. Prioritizing search results according to the degree of relevance will become increasingly important over time as the growing number of compatible nodes on a virtual network dump more and more data into the ocean of navigable information.

*Beyond the Theory: Knowledge Networking in Practice*, Information Today, May 1992, KAHLENDCA630-00008314 at 27; *see also For Shakespeare, Just Log On*, Markoff, New York Times, July 3, 1991, KAHLENDCA630-00011172 at 73 ("While current systems like Dialog and Nexis require users to specify precisely the information they want," WAIS "can respond to ***a user's inferences***."); *Client-Server Standards for Text: Foundation for Innovation*, Dyson, Release 1.0, 1991, KAHLENDCA630-00000487 at 96 ("The server makes its ***best effort*** to answer the user's query and sends back a list of texts, identified fully according to the WAIS syntax, with an ID, a title, score, types and date. (The ID includes the originating source, the copyright owner, and a unique ID, as well as the server supplying the document and the ID given it by that server.)"); *Collective Dynabases*, COMMUNICATION OF THE ACM, vol. 35, No. 6, June 1992, KAHLENDCA630-199 at 200-01, 203, also at KAHLENDCA630-1487, ([T]he length of the gray bar before the listed titles ***indicates the strength of a heuristic index of the degree of relevance***. . . . [A]n interim dynabase ***can use heuristics and file inversion to index text*** (as WAIS does).")

One very useful feature . . . is that the user sees documents listed in a ranked order based on relative score assigned to documents by the servers . . . . In a sense, ***the***

*scoring algorithm is where judgment is applied about the likelihood that a particular document will be seen as relevant by the user.   The public domain version of WAIS has a fairly simplistic scoring algorithm which stresses the frequency of occurrence of the searched for words.   It does include differential weighing for where in the document the words occur and whether the words occur so often as to be non-specific.*

*Wide Area Information Servers (WAIS)*, Christian, Information Systems Development, 1992, KAHLENDCA630-00000403

### 4.    The Communication Protocol

326.    "Communication between the WAIS client and the WAIS server is enabled via the WAIS protocol."   *Expansion of the FreeWAIS Server*, Tung, 1994, SAMNDCA630-06029163 at 88.   "On the client side, questions are formulated as English-language questions. The client application then translates the query into the WAIS protocol, and transmits it over a network to a server.   The server receives the transmission, translates the received packet into its own query language, and searches for documents satisfying the query."   *An Information System for Corporate Users: Wide Area Information Servers*, Kahle, Reprinted from ONLINE, September 1991, KAHLENDCA630-00000593/SAMNDCA630-00943190 at 94; *see also Wide Area Information Servers: An Executive Information System for Unstructured Files*, Kahle, Electronic Networking: Research, Applications and Policy; Vol. 2, No. 1, Spring 1992, KAHLENDCA630-00000101 at 165.

### 5.    FreeWAIS-sf

327.    I understand that "[t]he fundamental concepts of WAIS were developed by Brewster Kahle" at Thinking Machines, Inc. released the first free version of WAIS in 1991. *Expansion of the FreeWAIS Server*, Tung, 1994, SAMNDCA630-06029163 at 88; *see also*, *WAIS:   Wide Area Information Servers*, Thinking Machines, KAHLENDCA630-00009500.

328.    I understand that later, "support and further development" was transferred to the Clearinghouse for Networked Information Discovery and Retrieval ("CNIDR").   *Expansion of*

include other resources, and furthermore, that one, some, or all of the resources can be selected for searching." ('565 2:66-3:4)

"In the present embodiment, the user can select 428 to search the World Wide Web 430 or an electronic program guide 432. It is readily apparent to one skilled in the art the other resources may be used." ('565 4:12-15)

444.    The '565 patent also discloses that the invention is designed to work with a wide variety of search tools and search engines, including specially created search engines and tools written specifically to search different kinds of data.

"Using the filter specified, the system automatically generates the query to perform the search on the web and/or on the EPG. This can be performed a number of ways recognized by those skilled in the art. For example, a script can be generated that executes the sequence of commands needed to access the web and perform the search using existing search engines or a specially created search engine. Similarly, the search is performed on the EPG using a search tool. The search tool may be a simple text search tool or database search tool, or a tool specifically written for searching the EPG." ('565 4:24-34)

**J.    Grossman**

445.    I understand that D. Grossman and O. Frieder, Information Retrieval: Algorithms and Heuristics, Kluwer Academic Publishers (1998) ("Grossman") was published before the critical date of the Asserted Patents, and is therefore prior art to the Asserted Patents.

446.    According to Google Scholar, there are at least two editions of this book, the most recent of which has been cited over 700 times. (See http://scholar.google.com/scholar?cites=8728675633414253349&as_sdt=2005&sciodt=0,5&hl=en, last accessed Aug. 3, 2013.)   Grossman is a textbook describing the technology of information retrieval, including "heuristics" used to locate information.

447.    Grossman explains in its introduction:

This book focuses on the technology of information retrieval: a user enters a query that describes a request for information, and an information retrieval system responds by identifying documents that are relevant to the query. **Of course, the computer cannot understand documents and queries the way a human can, so methods other than full natural language understanding of the text must**

**be employed.** We cover the various techniques used to quickly find relevant documents, with the necessary introduction, technical details, and examples to illustrate the approach.

Grossman at SAMNDCA630-00936973 (emphasis added).

448.    One of the main focuses of the Grossman book is the use of "heuristics" to provide more relevant results, a technique Grossman made clear has been known in the field for decades:

> Our objective is to describe the techniques or algorithms and heuristics used to find documents that are relevant to the user request and to find them quickly. Academic research since the late 1950s has focused on this problem.

Grossman at SAMNDCA630-00936974.

449.    Grossman is primarily intended as an undergraduate textbook, but is also intended to be used by practitioners to build information retrieval systems.    Grossman at SAMNDCA630-00936975.    Grossman further states that "to our knowledge, the basic strategies used by the majority of commercial products are described in the book."    Grossman at SAMNDCA630-00936976.    Grossman calls out its chapter concerning SQL as of particular interest to practitioners in building information retrieval systems.    *Id.*

450.    Amongst other detailed disclosure, Grossman explains the use of heuristics integrate multiple sources into one results set:

> Lee describes several heuristics developed to merge search results that areo btained from multiple independent search engines [Lee, 1997]. His findings demonstrate that using his CombMNZ fusion heuristic results in higher retrieval accuracy than any of the individual search engines used. Aloui, et. al. expanded these findings and concluded that to best capitalize on result fusion techniques, as individual input search engines greatly differ in their processing strategies and utilities [Alaoui et al., 1998]. Most current web servers use a very detailed, full-text index, but if the Web continues to grow it may not be practical to use a single index.

Grossman at SAMNDCA630-00937188.

451.    Grossman goes on to describe WAIS as an early implementation of this type of heuristic approach:

Early work in the area of web-based distributed query processing was done by [Duda and Sheldon, 1994] in which a system that used the Wide Area Information Service (WAIS) only sent queries to certain servers based on an initial search of the content of those servers. The content was described by some specific fields in the documents that exist on each server such as *headline* of a news article or *subject* of an e-mail message. The use of a content index is the middle ground between sending the request to all of the servers, or providing a very detailed full-text index, and sending the request to only those servers that match the index.

Grossman at SAMNDCA630-00937188.

452.    Grossman thus makes clear that the use of heuristics in information retrieval has been a known technique since the 1950's.   Moreover, undergraduate textbooks in the 1990's included this information and different heuristic techniques were well known to those in the art.

453.    Grossman also dedicates a chapter to the integration of structured data in information retrieval and the effect of trying to search unstructured data.   For example, Grossman states,

Similarly, information retrieval systems typically have large quantities of structured information, (i.e., author of a document, publication date, etc.) and usually have the ability to store data in *zoned* fields. These fields have a particular start and stop delimiter that identifies a *zone* in a document. The problem is that these structured fields cannot be efficiently accessed. Access methods for structured data (e.g., B-trees) and query optimization techniques that determine the best access method to the data are not usually found in IR systems.

Grossman at SAMNDCA630-00937130.

454.    Grossman thus describes how to integrate information retrieval techniques and heuristics for structured data to be able to query large quantities of structured information. Grossman does this in the context of relational databases, and using SQL, which Grossman describes has been since 1982.

SQL became popular with IBM's adoption in its commercial database system, SQL/DS, in 1982 and with ANSI's adoption of the first SQL standard in 1985. Today, SQL is one of the few standards that is agreed upon by industry, academia, and various international standards committees.

Grossman at SAMNDCA630-00937137.

455.    Grossman has another chapter dedicated to distributed information retrieval

systems:

> In the previous chapters, we focused on the use of a single machine to provide service to run an information retrieval. In Chapter 6, we discussed the use of a single machine with multiple processors to improve performance. Today, document collections are often scattered across many different geographical areas. Distributed Information Retrieval Systems (DIRS) provide access to data located in many different geographical areas on many different machines (see Figure 7.1). The search engines that exist on the World Wide Web (WWW) are examples of distributed information retrieval systems.

Grossman at SAMNDCA630-00937176.

456.    As described above, Grossman already described that the motivation to search across data in many different locations and on many different machines is an important motivation.   This is in addition to using the search engines that already existed on the web.

**K.      U.S .Patent No. 5,855,015 to Shoham**

457.    U.S. Patent 5,855,015 to Shoham was filed on May 12, 1995 and issued on Dec. 29, 1998.   I understand that Shoam was filed and issued before the critical date of the '959 patent, and is therefore prior art to the '959 patent.

458.    Shoham discloses "A system and method for adaptively traversing a network of linked textual or multi-media information utilizes one or more heuristics to explore the network and present information to a user." (Shoham Abstract) One of the ways that the disclosed system and method can search is in response to query from the user:

> "The user may present an information query of various degrees of specificity or the system and method may search and present information resources based entirely on relevance feedback from the user." (Shoham Abstract)

459.    The search is performed over hyperlinked information resources using conventional heuristic search techniques. The invention is designed to work with a full range of heuristics and indeed, is independent of the specific heuristics.

> "A further object of the present invention is to provide a system and method for retrieval of hyperlinked information resources which utilizes conventional heuristic search techniques and relevance feedback but is independent of the particular heuristic techniques employed." (Shoham 4:5-9)

"Heuristic search techniques are well established in the artificial intelligence art. Since the present technique is independent of the actual heuristics utilized for exploration of the hyperlinked network, and presentation of information resources to the user, any of a number of known heuristic techniques may be employed in addition to those based on machine learning techniques." (Shoham 8:32-38)

460.   The World Wide Web is an example of the hyperlinked information networks that the system and method disclosed in the Shoham patent searches to retrieve information.

"One example of a distributed, dynamic hyperlinked network is known as the World-Wide Web (herein referred to as "the Web"). (Shoham 2:56-58)

461.   The system and method disclosed in the Shoham patent is also designed to work with a wide variety of hyperlinked information networks, including networks that reside within a single computer as well as networks that span multiple computers.

"Hyperlinked networks may be centralized, i.e. exist within a single computer or application, or distributed, existing over many computers separated by thousands of kilometers." (Shoham 2:42-45)

462.   The Shoham patent explicitly discloses hyperlinked information networks that reside at least partly or completely on local storage media.

"With continuing reference to FIG. 1, each computer on the network may contain information resources, indicated generally by reference numeral 30, having hyperlinks, indicated generally by reference numeral 32, to other information resources. Information resources represent various types of multimedia information, such as text 34, graphics 36, images 38, audio, and the like. An information resource may be an individual graphic, or portion of textual material, or may be an agglomeration of numerous other information resources, such as document 50. As illustrated, hyperlinks 32 may point to an information resource located on the same computer, such as hyperlink 40, to an information resource located in another computer, such as hyperlink 42, or to another portion of the same information resource, such as hyperlink 44." (Shoham 5:62-6:9)



(Shoham Fig. 1).

"Hyperlink systems allow authors or editors to embed links within their resources to other portions of those resources or to related resources in one or more collections which may be locally accessed, or remotely accessed via a network." (Shoham 2:13-17)

"A somewhat related system distributed by Lotus Development Corporation, LOTUS NOTES, provides mechanisms for linking between local or remotely accessible documents, and might be considered a hypertext system." (Shoham 3:13-18)

"In addition, many computer application programs utilize local hyperlinked information systems to implement on-line help functions." (Shoham 3:25-27)

463.   One of the disclosed objects of the invention is to locate information that is of interest to a user.

"A further object of the present invention is to provide a system and method for retrieval of hyperlinked information resources which utilizes heuristics to present resources of interest to a user." (Shoham 3:64-67)

464.   A disclosed advantage of the Shoham patent is that the invention limits the amount of information presented to the user so as to minimize time and effort required to review the information:

"Furthermore, rather than inundating the user with information selected from a general, broad query, the present invention limits the amount of information presented to the user so as to minimize the time and effort required to review the information." (Shoham 4:61-65)

465.    Another disclosed advantage is that the disclosed system and method can also accept feedback from the user to improve the search heuristics and therefore the relevance of the retrieved information items presented to the user. The invention is therefore suited for uses in which multiple searches are performed.

"The present invention also includes a method for retrieval of hyperlinked information resources which includes exploring the hyperlinked information resources using a first heuristic to select at least one information resource, presenting the at least one information resource to the user via a user interface based on a second heuristic, accepting feedback from the user via the user interface indicative of relevance of the at least one information resource, and modifying the first and second heuristics based on the feedback." (Shoham 4:33-41)

466.    Additionally, Shoham discloses receiving an information identifier from the user in the form of an information query.

"The user may present an information query of various degrees of specificity or the system and method may search and present information resources based entirely on relevance feedback from the user." – Shoham Abstract

"The user may also enter a specific or general query at block 120, or select an information resource of interest to initialize the heuristics. Alternatively, a null query indicates that the system should simply start exploring and use subsequent presentation and relevance feedback to shape the heuristics and determine which information resources to present to the user." Shoham 8:24-31

467.    Although the invention disclosed in the Shoham patent is designed to work with any number of known heuristics that may work with a variety of information identifiers, the Shoham patent also discloses a specific embodiment in which the claimed information identifier is a standard vector of search query terms M as used in standard vector space heuristic search algorithms:

"The search heuristic evaluated a score for each page by taking the dot product V.M, where V represents the page and M the current model of the user." 12:8-11

468.    The Shoham patent presents a system and method for using heuristics in a hyperlinked information resource network.

> "It is a further object of the present invention to provide a system and method for retrieval of hyperlinked information resources which actively explores a hyperlinked network to present interesting resources to a user." 3:56-59
>
> A further object of the present invention is to provide a system and method for retrieval of hyperlinked information resources which utilizes heuristics to present resources of interest to a user." 3:64-67.

469.    As shown in Claim 30, the Shoham patent discloses the use of an exploration heuristic and a presentation heuristic. The exploration heuristic retrieves information resources from the hyperlinked network. The presentation resource further filters the retrieved information resources for presentation to the user.

> "30.  A method for retrieval of hyperlinked information resources in an environment including a plurality of computers wherein each of the plurality of computers communicates with at least one other computer and wherein at least one of the plurality of computers contains a plurality of information resources having associated hyperlinks which define a hyperlinked network, the method comprising:
>
> exploring the hyperlinked network using a first heuristic, wherein the first heuristic characterizes relevance of at least one information resource on the hyperlinked network;
>
> selecting at least one information resource based on the associated relevance as determined by the first heuristic;
>
> presenting the at least one information resource to a user via a user interface based on a second heuristic, wherein the second heuristic filters the at least one information resource so as to present a limited number of information resources;" Shoham 15:36-55.

470.    The Shoham patent specification provides further detail regarding the exploration and presentation heuristics. One of these details is that the exploration and presentation heuristics can be the same, similar, of different from each other.

> "Block 124 begins exploring the hyperlinked network using the exploration heuristic established at block 120 or as subsequently modified by the system. The exploration process selects information resources which appear "interesting" or

relevant as determined by the exploration heuristic. The exploration process may be repeatedly executed to locate interesting information resources as determined by the system parameters and explained in greater detail with reference to FIG. 5.

Block 126 of FIG. 4 presents selected information resources to the user based on a presentation heuristic. The presentation heuristic may be the same, similar to, or different from the exploration heuristic. For example, if the heuristics are the same, the system functions as if there were only one heuristic and presents all of the information resources selected by the exploration heuristic to the user." Shoham 8:45-60.



*Fig. 4*

Shoham, Fig. 4.

471.    The Shoham patent notes that heuristic search techniques are well established and discloses that the system and method of the Shoham patent is designed to work with any known exploration and presentation heuristic.

> "Heuristic search techniques are well established in the artificial intelligence art. Since the present invention is independent of the actual heuristics utilized for exploration of the hyperlinked network, and presentation of information resources to the user, any of a number of known heuristic techniques may be employed in addition to those based on machine learning techniques." Shoham 8:32-38.

472.    The Shoham patent also discloses specific heuristics used in an implementation of the invention. These heuristics included, for example, the use of a vector space technique for determining the similarity between the document and the query, and stemming to diminish redundancy.

> "A vector space information retrieval paradigm was utilized in which each of the documents were represented as vectors. A dictionary vector D was assumed, where each element $d.sub.i$ was a word. Each document then had a Vector V, where element $v.sub.i$ was the weight of word $d.sub.i$ for that document. If the document did not contain $d.sub.i$ then $v.sub.i = 0$.

> In a typical information retrieval setting, an inverted index is created from a collection of documents. Particular documents can be retrieved based on a similarity measure between the document vector and a query vector, often just the angle between them. In the present framework, the query vector was analogous to the system's model of the user, which was designated M. The score for a page was calculated by measuring how well it matched the model, which was a comparison between the page's vector and M."| Shoham 11:21-37.

> "In order to create the vector representation of a web page, the page was parsed to extract individual words (ignoring HTML mark-up tags), to remove stop words (words so common as to be useless as discriminators, like "the"), and to stem the remainder of the words. "Stemming" reduces words to their "stems" and diminishes redundancy. For example, "computer," "computers," "computing" and "computability" all reduce to "comput." " Shoham 11:37-45.

> "The search heuristic evaluated a score for each page by taking the dot product V.M, where V represents the page and M the current model of the user." 12:8-11.

473.    The vector M is a standard vector of search query terms as used in standard vector space search algorithms. In this particular embodiment of the invention disclosed in the Shoham

patent, M is the claimed "information identifier" provided to the heuristics.

474.    Another example of a specific disclosed heuristic is selectively revisiting nodes with higher heuristic values:

> "Block 124d keeps track of the visited nodes including an optional time stamp so that these nodes can be selectively revisited in the future depending upon the system parameters. Even though there is not necessarily any correlation between nearby information resources and common subject matter, it is often beneficial to explore nodes with higher heuristic values. Similarly, these nodes may be periodically revisited since related information resources of interest are likely to be added." Shoham 10:52-60.

475.    The Shoham patent also discloses the use of existing web search engines such as Lycos, which was known to implement a variety of heuristics:

> "Further, the search engine could be replaced with a keyword lookup on one of the existing web indexes (e.g., the Lycos system); this would significantly reduce the computational and network cost, although is might compromise viewing the most up-to-date information." Shoham 12:61-65.

476.    In this particular embodiment of the Shoham invention, a disclosed selection heuristic selected a fixed number of highly ranked pages to present.

> "In alternate embodiments, the selection heuristic could be changed. For example, rather than selecting all size pages from the tallest peak in the feature space, only one document could be selected from the region of each peak." Shoham 12:56-59.

477.    The Shoham patent cites examples of hyperlinked information resources which include both local information and information remotely available via networks such as the Internet. One example of local information inherently available via the World-Wide Web is personal home pages stored on the user's local machine. Another example is LOTUS NOTES, in which the network includes local and remotely accessible documents.

> "Hyperlink systems allow authors or editors to embed links within their resources to other portions of those resources or to related resources in one or more collections which may be locally accessed, or remotely accessed via a network." Shoham 2:13-17.

> "One example of a distributed, dynamic hyperlinked network is known as the World-Wide Web (herein referred to as "the Web"). The Web is a recently developed hyperlinked network of information available on the Internet which

facilitates retrieval and presentation of information resources utilizing standard presentation (HyperText Markup Language or HTML) and transfer protocols (HyperText Transfer Protocol or HTTP). A number of user interfaces have been developed which accommodate these protocols so that information may be retrieved and presented to users regardless of their particular location or computer equipment." Shoham 2:56-68

"Another example of a hyperlinked information network is the INTERCHANGE online network. This network is a privately owned information service having hyperlinked documents. A somewhat related system distributed by Lotus Development Corporation, LOTUS NOTES, provides mechanisms for linking between local or remotely accessible documents, and might be considered a hypertext system. Similarly, the LEXIS/NEXIS legal research system supplied by Reed Elsevier utilizes a form of hyperlinking to automatically retrieve legal documents which are cited within the text of a reported case. Many companies have implemented internal hyperlinked information systems which are not publicly accessible. These systems may be utilized by customer-assistance personnel or for direct sale and use by customers. In addition, many computer application programs utilize local hyperlinked information systems to implement on-line help functions." Shoham 3:11-27

"As also illustrated in FIG. 1, the physical computer network exists independently of the logical information resource network created by hyperlinks 32." Shoham 6:21-23; *See* Shoham Fig. 1.

478.    The Shoham patent also discloses that information resources may be copied to the

local storage of the machine (at block 124 of FIG. 4 and more specifically at block 124c of FIG.

5) for later presentation to the user after processing by the presentation heuristic (at block 126 of

FIG. 4).   These information resources, once copied, are stored in local storage media.

"Information resources that appear to be interesting based on the extracted feature or features are selected for subsequent presentation to the user as represented by block 124c. Typically, only the location of the selected information resource is stored to conserve storage resources. During presentation to the user, the information resource is retrieved and displayed via the user interface. However, due to the rapidly changing nature of information resources on the Web, the selection process may retrieve the information resource by copying it to the local processor storage unit for later presentation to the user." Shoham 10:42-52

"Block 124 begins exploring the hyperlinked network using the exploration heuristic established at block 120 or as subsequently modified by the system. The exploration process selects information resources which appear "interesting" or relevant as determined by the exploration heuristic. The exploration process may be repeatedly executed to locate interesting information resources as determined by the system parameters and explained in greater detail with reference to FIG. 5.

Block 126 of FIG. 4 presents selected information resources to the user based on a presentation heuristic. The presentation heuristic may be the same, similar to, or different from the exploration heuristic. For example, if the heuristics are the same, the system functions as if there were only one heuristic and presents all of the information resources selected by the exploration heuristic to the user."
Shoham 8:45-60

### L.      Analysis and Video Demonstrations of Prior Art Software

479.      For certain of the prior art systems listed above I received a produced copy of or was otherwise able to obtain a copy of executable software or a device already running executable software disclosed by that prior art system.   As described below, I then directed the installation and configuration of that software where necessary, and operation of that software, in order to determine whether any inconsistencies with my opinions expressed below.   I also directed and supervised the preparation of videos demonstrating the operation of this software. The operation of the executable software confirmed my opinions that each of those prior art systems invalidates the asserted claims of the '959 patent.   I note that the particular hardware used, network configuration and software configuration, including the databases and indexes configured and/or connected to, information sources selected, and queries performed, were intended to be exemplary.   I reserve the right to rely on other searches of one or more information sources, other search queries, and connecting to other servers running other software produced in this litigation.   I also reserve the right to prepare additional video demonstrations based on other configurations.   I have provided the particular details concerning the installation, configuration and operation of the executable software of the prior art systems which I reviewed and analyzed below.

### 1.      WAIS

480.      In addition to analyzing the documentation and source code for the distribution of free-WAIS-sf 2.0.65 relied upon in my Report and Exhibit 9 to my Report, I also directed the installation   and   configuration   of   the   free-WAIS-sf   2.0.65   distribution   produced   at

Q. How about by 1995 or 1996? Were networks becoming important, mid to late '90s?

**A. By '93, I would be embarrassed if I wasn't thinking about this.**

Capps Depo. at   142:5-144:22 (objections omitted and emphasis added); see also Exhibit 6 to

Capps Depo, *Search . . . and . . . Destroy*, CAPPS00000113-116 ("If the computer and network

were infinitely fast the search scope would unbounded: you'd do a full-text search of both the

local and remote databases.")

561.    Accordingly, locating information on local storage media and the Internet was

disclosed in the prior art and well known to persons of ordinary skill in the art by January 2000.

> **(iii)    Providing an information identifier to a plurality of heuristics and determining a candidate item of information based on the plurality of heuristics was well known**

562.    As discussed in Section III of my Report, the term "heuristic" has been known in

the field of information retrieval for decades before the filing date of the '959 patent.

*Combining Model-Oriented and Description-Oriented Approaches for Probabilistic Indexing*,

Fuhr and Pfeiffer, 1991 ("We distinguish model-oriented and description-oriented approaches in

**probabilistic information retrieval**. . . . .   Experiments with the purely theoretical approach and

with **several heuristic variations** show that heuristic assumptions may yield significant

improvements.") (emphasis added); Shoham patent, filed on May 15, 1995, 8:32-38 ("**Heuristic**

**search techniques are well established in the artificial intelligence art.** Since the present

technique is independent of the actual heuristics utilized for exploration of the hyperlinked

network, and presentation of information resources to the user, **any of a number of known**

**heuristic techniques may be employed** in addition to those based on machine learning

techniques.") (emphasis added); *INFORMATION RETRIEVAL Algorithms and Heuristics*,

Grossman, 1998, SAMNDCA630-00936965 at 7176 ("Our objective is to describe the

techniques or algorithms and heuristics used to find documents that are relevant to the user

request and to find them quickly.   ***Academic research since the late 1950s has focused on this problem***.") (emphasis added); *see also generally* P. Dagupta et al., Multi-Objective Heuristic Search, An Introduction to Intelligent Search Methods for Multicriteria Optimization, Vieweg & Sohn (1999); O. Grillmeyer, Exploring Computer Science with Scheme (Undergraduate Texts in Computer Science), Springer-Verlag New York, Inc. (1998); A. Bagchi and A. Mahanti, Search Algorithms Under Different Kinds of Heuristics – A Comparative Study, Journal of the Association for Computing Machinery, Vol. 30, No. 1, January 1983, pp. 1-21; Kirsch at 2:23-3:11.   The number of papers which discuss heuristic techniques for locating information are voluminous.   *See, e.g. Grossman; Shoham, Selberg Thesis, SenseMaker paper, Rama,* P. Dagupta et al., Multi-Objective Heuristic Search, An Introduction to Intelligent Search Methods for Multicriteria Optimization, Vieweg & Sohn (1999); O. Grillmeyer, Exploring Computer Science with Scheme (Undergraduate Texts in Computer Science), Springer-Verlag New York, Inc. (1998); A. Bagchi and A. Mahanti, Search Algorithms Under Different Kinds of Heuristics – A Comparative Study, Journal of the Association for Computing Machinery, Vol. 30, No. 1, January 1983, pp. 1-21; Kirsch at 2:23-3:11.

563.   Professor Norbert Fuhr, the creator of freeWAIS-sf and recipient of ACM's Gerard Salton lifetime achievement award in information retrieval (Fuhr Tr. at 148:15-25, 150:25-151:11), explains that heuristics were a part of information retrieval since its very beginnings:

> Q. When did you first hear of the term "heuristic"?
>
> A. Well, the field of information retrieval always has been full of heuristics. So from the first day that I got into the field, there was a lot of talking about heuristics.
>
> (Fuhr Tr. at 153:12-17.)

564.   Similarly, Norbert Gövert, a protégé of Prof. Fuhr who also worked on the

freeWAIS-sf system (Gövert Tr., 78:16-80:3), learned of heuristics at one of Prof. Fuhr's lectures years before the priority date of the '959 patent.

> Q. Where did you first -- where did you gain that understanding of "heuristic" from?
>
> A. Again, it is mainly from the lecture in information retrieval held by Professor Fuhr.
>
> Q. This is at Dortmund university?
>
> A. That was at Dortmund University.
>
> Q. When was this lecture?
>
> A. It was held on a regular basis once a year. I have been visiting it in the year 95, 96 -- yes, 95 or 96 I can say.
>
> (Gövert Tr., 141:14-23.)

565.    Both Prof. Fuhr and Mr. Gövert repeatedly testified how "heuristics" were employed in the software code for freeWAIS-sf to locate information.   (Fuhr Tr. at 157/23-159/9, 160/4-161/21, 162/21-165/16, 175/5-12; Gövert Tr. at 131/24-134/21.).

566.    Even Apple employees knew that heuristics could be used to solve problems with information retrieval.   For example, David Casseres, sought to use heuristics to solve an information retrieval problem when developing AppleSearch.

| From: | David Casseres <casseres@apple.com> |
|---|---|
| Sent: | Monday, March 7, 1994 3:27 PM |
| To: | Eric J Bivona <ericb@baker.dartmouth.edu> |
| Subject: | Funny Dates and Funny Titles |

I got around to trying a search of comp.sys.mac.programmer with the query "information" -- i.e. same as Harry's.  Sure enough, I see in the Gateway's debug window that you are converting strings of the form yymmdd..  And sure enough, they're coming out correct except for the ones with 19 for the year.

I can't try the same thing with comp.archives as I'm getting a 5 from the Gateway when I try to search it.

Greg and I have talked about a heuristic for invalidating "unreasonable" dates, i.e. dates that parse OK but cannot be correct in the real world. The obvious part of the heuristic is to invalidate any date that is in the future by 24 hours or more.  The less-obvious part is to invalidate all dates that fall before some chosen date for "the beginning of WAIS."  1 Jan 1989 is my candidate, but maybe I'll ask Brewster for his thoughts.  The heuristic should be implmented in the Gateway, unless you convince me I should do it in the Server.

----------

Funny titles -- the "jargon" source (1st of two found from wais.com) is one example where we see garbage characters in the article titles.  I tried the WAIS client; it doesn't show garbage in the titles.  Greg suggests that we may be seeing garbage on short titles -- i.e. the string isn't cut off where it should be, but most are truncated because of length before we get to the garbage part.

Cheers,
David

(DARTMOUTHNDCA630-00001426) (emphasis added.)

567.    Based on my own experience in the field, I also know that using heuristics for accessing information was well known in the field prior to January 2000.   For example, my work on the Jade implementation employed a "locality heuristic" that attempted to minimize communication by scheduling tasks on workstations that already have a "locality object" (the first object that the task declares that it will access) stored in the local memory of the workstation.   "Communication Optimizations for Parallel Computing Using Data Access Information" (Rinard, Proceedings of Supercomputing '95, December 1995).   I also collaborated with my Ph.D. student Pedro Diniz, to develop "a heuristic that attempts to suppress the exploitation of unprofitable concurrency; this heuristic suppresses the exploitation of nested

concurrency within parallel loops." While the heuristic "works well for our current application set, in some cases it may generate excessively sequential code." See the paper "Commutativity Analysis: A New Analysis Framework for Parallelizing Compilers" (Rinard and Diniz, ACM Transactions on Programming Languages and Systems Volume 19, Number 6 (November 1997), pp. 942-991) for more detail.

568.   Accordingly, "providing an information identifier to a plurality of heuristics" and "determining a candidate item of information based on a plurality of heuristics" was disclosed in the prior art and well known to persons of ordinary skill in the art by January 2000.

569.   For example, as Grossman explains, "Our objective is to describe the techniques or algorithms and heuristics used to find documents that are relevant to the user request and to find them quickly.   *Academic research since the late 1950s has focused on this problem*." (*INFORMATION RETRIEVAL Algorithms and Heuristics*, Grossman, 1998.)

570.   Likewise, Shoham discloses that "Heuristic search techniques are well established in the artificial intelligence art. Since the present technique is independent of the actual heuristics utilized for exploration of the hyperlinked network, and presentation of information resources to the user, any of a number of known heuristic techniques may be employed in addition to those based on machine learning techniques." (Shoham 8:32-38.

571.   Shoham further discloses that "the heuristic may identify several features, each feature taking values from a given scale.   The ranking scale may be a simple binary scale, such as yes/no, or a scale with a number of gradations, such as a numeric scale, or a scale with values such as poor, good, better, best, etc.   For example, in one embodiment of the present invention operating in the Web environment, the input to the heuristics initialization, i.e. the training examples, consists of 20 information resources each having a ranking between zero and ten indicative of their relevance or 'interestingness' to the user.   The output of the initialization

process would be a function that takes any Web information resource and returns a ranking within the range of zero to ten.   The exploration and presentation heuristics are then based on these ranking functions.   Preferably, the heuristics developed based on the training examples continually adapt to the user's interests as determined by the user feedback, described below. Alternatively, once the heuristics are developed, the system may continue to explore the network and present results using those heuristics until the system is reinitialized and a new set of training examples are presented."   (Shoham 8:3-24.)

          **(iv)**    **Displaying a representation of a candidate item of information was well known**

572.   Displaying a representation of a candidate item of information was well known in the prior art.   For example, the '959 patent acknowledges file search engine and web search engine prior art which displayed a representation of a candidate item of information.

> The Windows® operating system, implemented by Microsoft Corporation, also employs a Find mechanism that allows a user to locate files stored in the computer system.   The application uses inputted search criteria to generate and display a list of possible files that satisfy the search criteria.   ('959 patent, 1:30-33.)

> Like the Find File utility discussed above, finding information on the Internet can prove frustrating because search criteria are often too broad. For example, when a keyword is entered, thousands of different web pages containing these keywords can be displayed in a list for a user to choose from.   ('959 patent, 1:54-58.)

573.   Additionally, displaying representations of items retrieved from a software application that searched for information was described in various prior art publications.   *See e.g.* Shoham, Shoham, col. 8:54-60 ("Block 126 of FIG. 4 presents selected information resources to the user based on a presentation heuristic. The presentation heuristic may be the same, similar to, or different from the exploration heuristic. For example, if the heuristics are the same, the system functions as if there were only one heuristic and presents all of the information resources selected by the exploration heuristic to the user."); Legall, '565, col. 4:35-55 ("Once

the search has been performed, the results are presented to the user. This is illustrated by the flow diagram of FIG. 2 and the exemplary display shown in FIG. 6. . . .   The results of the search performed on the electronic program guide 615 are displayed a variety of ways. For example, the EPG is modified to only display those programs that meet the search criteria. This is illustrated in FIG. 2 in window 220. Alternatively, the areas of the EPG corresponding to programs that meet the criteria are highlighted by a different color."); Evans, '808 at col. 2:39-51 ("The initial step in this method is to identify a search query.   Based on this identification, a search against multiple databases is initiated. . . .   Upon identification of these databases, the databases are then searched to identify those documents relating to the identified query.   The various sets of identified documents from multiple databases are then returned and processed to create an ordered ranking for the returned documents.   ***Text portions from the highest ranking documents across the multiple databases are then automatically displayed to the user***.") (emphasis added).

574.    Similarly, various systems predating the '959 patent displayed representations of candidate items of information to the user after a search of information was performed, including AppleSearch and WAIS.



(AppleSearch User's Guide at p. 35, APLNDC630-0000441874.)



FIG. 6.   The XWAIS interface, including the Questions and Sources windows, and an open question.

*Interfaces for Distributed Systems of Information Servers*, Kahle, 1993, SAMNDCA630-04524942 at 49.

575.    Accordingly, "providing displaying a representation of a candidate item of information" was disclosed in the prior art and well known to persons of ordinary skill in the art by January 2000.

<div align="center">

**(v)     Applying an information identifier separately to each heuristic was known**

</div>

576.    I note that the Examiner during prosecution of the '959 patent application recognized that this limitation existed in the prior art.   APLNDC630-0000041240, '959 File History, 10/03/2003 Office Action at p. 6; APLNDC630-0000041313, '959 File History, 1/11/2003 Office Action at p. 4 ("Regarding claim 19, the information identifier is clearly applied separately to each heuristic in the method of Stevens since the input modules differ.").

577.    Apple or its expert may take the position that the prior art discussed in Exhibits 1-9 to this Report does not disclose applying the information identifier separately to the heuristics. To the extent this position is held to be valid, it would be obvious to apply the information identifier separately to the heuristics for software engineering reasons, specifically to obtain good modularity and separation of concerns and to eliminate undesirable interactions, entanglement, and spaghetti code from the resulting system.   Because these are basic concepts in software development and programming and taught as good practice in undergraduate

741.    I agree with Apple's expert Dr. Polish and the former Apple employees that a "rule of thumb" is a vague and subjective term that has many different meanings and is heavily context dependent.   There are some implementations of a search mechanism that most persons of ordinary skill would agree are a "rule of thumb" and thus ***do*** implement a heuristic.   There are some implementations of a search mechanism that most persons of ordinary skill would agree are ***not*** a "rule of thumb" and thus ***do not*** implement a heuristic.   However, there are many implementations of a search mechanisms about which many persons of ordinary skill in the field would disagree as to whether they are a "rule of thumb" and thus heuristic.   For example, as described in the background section, I have also developed, with other members of my research group, a system "for dynamically adapting the behavior of running applications to respond to fluctuations in load, power, or any other event that threatens the ability of the underlying computing platform to deliver adequate capacity to satisfy demand." While this technique "heuristically establishes the time quantum," it is distinguished from previous systems that use heuristic control because it "uses a decision mechanism grounded in control science with provably good convergence and predictability properties" as discussed in the paper "Dynamic Knobs for Responsive Power-Aware Computation" (Hoffmann, Sidiroglou, Carbin, Misailovic, Agarwal, Rinard, Proceedings of the 16th International Conference on Architectural Support for Programming Languages and Operating Systems (ASPLOS 2011), March 2011). One of the computations we explored in this computation was Swish++, an open-source web search engine. As described above, this paper discusses some techniques that would be generally recognized in the field as heuristic and other techniques that would generally be recognized as not heuristic. However, the presented system also includes techniques, such as the influence tracing system, that some in the field would characterize as heuristic, while others would not characterize the technique as heuristic.

_____
Martin Rinard

Aug. 12, 2013
_____
Date