# EXHIBIT 14
# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**REBUTTAL EXPERT REPORT OF DR. ALEX C. SNOEREN CONCERNING U.S. PATENTS NOS. 6,847,959 AND 7,761,414**<br><br>**HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE** |

[Lines 1–22 redacted]

### 3. Claims 24 and 25 Satisfy Section 112, Second Paragraph

348. Again, as with the written description and enablement issues raised above, the Patent and Trademark Office also did not ever question whether claims 24 and 25 of the 959 Patent were sufficiently definite under section 112, second paragraph of the patent statute. Specifically, the Examiner here did not object to the specification or reject application claims 23 or 24 (which became

patented claims 24 and 25) under the enablement requirement of section 112.  Therefore, Samsung and Dr. Rinard would need to overcome the high presumption of validity that attaches to issued claims as well as explaining why those claims are invalid under a clear and convincing standard of proof when the Patent and Trademark Office never even questioned whether these claims complied with definiteness requirement.  I understand that requires a very significant burden, requiring clear and convincing evidence.

349.    Further, as discussed above, the term "heuristic algorithm" has already been interpreted by the Court in this case.  Samsung did not allege that the term "heuristic" was insoluably ambiguous during the Preliminary Injunction briefing on the meaning of that term.

350.    Regardless, I do not agree with the Rinard Report that a person of ordinary skill in the art would be unable to apply the Court's interpretation to specific systems.  I note that Dr. Rinard appears to be applying some understanding of the term "heuristic" in the substantive invalidity positions that he has taken in the Rinard Report.

351.    I also disagree that the term "heuristic" does not provide claims 24 and 25 with a meaningfully precise claim scope.  (RR at ¶ 728-747).  I agree with Dr. Rinard that as of 2000 when the '959 Patent was filed, the term "heuristic" was known to the computer science field generally (RR at ¶ 735).

352.    Importantly, however, here, the question is not what a "heuristic" is more generally, but what a heuristic to locate information is.  The Court defined the term and I do not believe that a person of skill in the art is unable to apply that definition.  The Rinard Report states that determining whether something is a "rule of thumb" is subjective.  I do not agree.  I believe that it is an objective inquiry from the perspective of a person of ordinary skill in the art when evaluating the circumstances, contexts and usage of the algorithm.

353.    I do not agree that the testimony of various witness included in the Rinard Report demonstrate that the term "heuristic" or "rule of thumb" is insoluably ambiguous.

354.    As discussed above, the testimony cited from Dr. Polish was provided before any claim interpretation by this Court.  Dr. Polish has not been asked to offer any opinions about whether

the term "heuristic" or "heuristic algorithm", as construed by the Court, is would be understood by a person of skill in the art. And, as I have indicated, I am offering my opinion that it would be understood in the context of claims 24 and 25.

355. The testimony of Dr. Polish in paragraph 735 on pages 260-261 indicates that when Samsung provided him with multiple dictionary definitions, he pointed out that he thought some of the definitions to be inconsistent with others, but nothing was inconsistent with his view of the term. Moreover, he indicated that he did not have a claim construction from the Court, which the parties now have.

356. Moreover, the Rinard Report appears to misread Dr. Polish's testimony when it states that Dr. Polish testified that heuristic is "a vague term with many different meanings." RR at ¶ 736. The quoted testimony from Dr. Polish indicates that the explanation of heuristic provided in the '604 Patent file history is consistent with what he taught as heuristic search in computer science classes. He then states that his *answer* is vague – not the term heuristic. Specifically, he states "I know it's a very vague answer. …" He then states that heuristic is "kind of a broad concept." Saying something is a broad concept is not the same as saying it is a vague term. The other passage cited states that it had a lot of different meanings but that he though "people generally understood what it mean." I read Dr. Polish's testimony differently than how the Rinard Report characterizes it. It appears to me that Dr. Polish is explaining that the term "heuristic" was generally as a broad term. In addition, those definitions were not provided in the context of the claims here. Again, 959 Patent claims 24 and 25 give further context on what heuristic means in the asserted claims and the specification.

357. The Rinard Report also cites to testimony from the inventors that he asserts demonstrate that the "inventors of the '959 patent could not identify what was and would not constitute a heuristic" (RR at ¶ 737-738). Yet, the inventors were not asked to apply the Court's claim interpretation. Indeed, the inventors were not even asked what they understood the term heuristic to mean in the context of claim 24 and 25. Plus, the testimony cited by Mortensen (RR at ¶ 737-738) is one question where he answered that he could not identify the "hard differences" between a heuristic algorithm and a non-heuristic algorithm. Mr. Mortensen was questioned at great length

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                            128

with a series of hypotheticals and out-of-context questions about heuristics, algorithms and recursion generally and not specifically as those terms are used in the claims of the '959 Patent. For example, the cited questions and answers followed a question and answer where Mortensen provided an explanation of what he understood a heuristic to mean in general (and not specifically in the context of the '959 Patent or claim 24 specifically:

```
1      Are you familiar with the word "heuristic"?
2    A. Yes.
3    Q. What does the word "heuristic" mean to you?
4      MR. BUROKER: Calls for a legal conclusion.
5      You can answer.
6      THE WITNESS: Heuristic is more like a set
7   of rules or algorithms to -- to function in a
8   specific way.
```

Mortensen at 66:1-8.

358.   In this same discussion, Mr. Mortensen then asked for clarification as to what context for the term heuristic Samsung's counsel was asking about. Mortensen at 79:16- 80:4. That was because, on further questioning, Mr. Mortensen testified that he has not worked specifically with heuristic search algorithms. Mortensen at 84:3-8. Mr. Arrouye had contributed the idea of using heuristic search algorithms to the 959 Patent invention. Thus, Mr. Mortensen's testimony was directed to the concept of heuristics more generally, rather than the specific use of heuristic in claims 24 and 25 of the '959 Patent as interpreted by this Court. Further, when provided a hypothetical example by Samsung's counsel, Mr. Mortensen identified that hypothetical as including a heuristic algorithm and then explained his analysis. Mortensen at 82:25-88:23. Thus, I do not believe that it is fair for the Rinard Report to state that Mr. Mortensen could not identify what constituted a heuristic in light of the full testimony rather than the snippets included in the Rinard Report in paragraphs 737-738.

359.   It is not clear why the Rinard Report cites to the testimony of Kenneth McLeod considering that he is not an inventor on the 959 Patent. Moreover, as discussed above, Mr. McLeod was not testifying about the meaning of heuristic in the context of the 959 Patent or with the benefit

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                             129

of this Court's claim interpretation. I do not believe that Mr. McLeod's out-of-context testimony about the word heuristic in isolation demonstrates that one of ordinary skill in the art would not be able to understand the term heuristic in the context of the 959 Patent or with the benefit of this Court's claim interpretation.

360.   I do not place much weight on the testimony of the former Apple employees for the same reason. RR at ¶ 740. These former Apple employees were not provided with the '959 Patent claims to read and understand or the Court's claim interpretation to provide context. And, the cited testimony only demonstrates that the term heuristic often needs a context because it could be used to describe a user interface design or a search algorithm.

361.   As to paragraph 741 of the Rinard Report, I do not agree that rule of thumb is vague and again, do not believe that Dr. Polish said that. I agree that heuristic can be context dependent, but here, the claim language itself provides sufficient context as discussed above. And, the claim indicates that two heuristics are used and a person of ordinary skill in the art would be able to determine whether there are different heuristics as well. That is a different context than the example Dr. Rinard then discusses in the remainder of paragraph 741.

362.   I thus disagree, with respect, with Dr. Rinard's conclusion in paragraph 742.

363.   As discussed above, it is my opinion that the patent specification, claims and prosecution history provide sufficient guidance to a person of ordinary skill in the art and that the specification need not give specific examples of how to implement a heuristic algorithm for the person of ordinary skill in the art to be able to apply the Court's claim interpretation, contrary to Dr. Rinard's opinions offered in paragraphs 743-747.

364.   I note that Dr. Rinard agrees that there are many search algorithms that he and other computer scientists would have agreed as implanting heuristics and others that he and others would have agreed were not heuristic. The Rinard Report thus appears to be arguing that there is a set of search algorithms that he and other computer scientists might dispute whether they are heuristic or not, but does not indicate that any such algorithms are at issue in this case, either for validity or infringement. Moreover, he does not identify or describe those search algorithms. I do not agree. I

1  believe that my opening report sets out an explanation of what qualifies as a heuristic algorithm under

2  the Court's claim interpretation.

3  █ ██████████████████████████████████████

4    █ ███████████████████████████████████

5  ████████████████████████████████████████

6  ████████████████████████████████████████

7  ████████████████████████████████████████

8  ████████████████████████████████████████

9  ████████████████████████████████████████

10 ██████

11   █ ██████████████████████████

12   █ ██████████████████████████████████

13 ██████████████████████████████████████

14 ████████████████████████████████████████

15 ████████████████████████████████████████

16 ████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19   █ ████████████████████████████████████

20 ████████████████████████████████████████

21 ████████████████████████████████████████

22 ████████████████████████████████████████

23 ████████████████████████

24   █ ██████████████████████████████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████

27 ████████████████████████████████████████

28



428. Finally, Dr. Chase's fourth theory that "the Evolution Mail Component and each of its Provider subcomponents are synchronization software components" (CR, ¶ 307, 317) could be interpreted in one of two ways. To the extent that Dr. Chase means to say that both the Evolution Mail Component and all of its Provider subcomponents are configured to synchronize the mail data class, I agree. But they do not each comprise a synchronization software component that plugs into a consistent synchronization framework as required in claim 20; indeed the Mail Component is structured vastly differently than its Providers, and does not interface with the rest of Evolution in the same manner. To the extent that Dr. Chase means to say that each pair of the Mail Component composed with an individual Provider are together synchronization software components configured to synchronize the mail data class, I also agree. But they similarly do not comprise a synchronization software component that plugs into a consistent synchronization framework as required by claim 20. When compared to the contacts and calendar providers discussed below, they utilize an entirely different (Camel) plug-in architecture and interface.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████
███████████████████████████████████████████
███████████████████████████████████████████
████
███████████████████████████████████████████
███████████████████████████████████████████
████

493.     As explained in my opening expert report, claim 20 requires at least three distinct synchronization software components each of which provides its own synchronization processing thread(s) to synchronize a corresponding data class. But according to Dr. Chase's own analysis, this requirement is not met. First, even assuming the software providing the ███████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                  168

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



547.

548.

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                    184

Gibson, Dunn & Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                    185

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



551. ■

552. ■

* * *

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                      186

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



572. As explained in my opening report, claim 20 requires a plug-in model architecture

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1  such that additional synchronization software components corresponding to other classes of
2  structured data are plugged into that architecture to handle the synchronization of such data.  That
3  opinion is based on the intrinsic record, including the claim language and statements from the '414
4  Patent specification.  While Dr. Chase in paragraph 694 states that he disagrees with me, the Chase
5  Report does not address the evidence from the intrinsic record that supports my opinion.

[Lines 6–27: redacted]

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                                 192

Gibson, Dunn & Crutcher LLP

627.  Finally, Dr. Chase makes several arguments and refers to documents relating to Apple's practice of the '414 Patent in the context of his "secondary considerations" analysis. *See* CR, ¶¶ 869-884; 886-887; 891; 895-898; 904.  While it is my opinion that iOS 6.1 practices claim 11 and therefore Apple does practice the '414 Patent, I do not have an opinion as to whether Apple practices claim 20. *See* Snoeren Report, ¶¶ 525-528.  In any event, none of the documents Dr. Chase cites suggest that the particular combination of elements in claim 20 was obvious as of either the filing or invention date.

[redacted]

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Dated: September 13, 2013

_____
Alex C. Snoeren