# EXHIBIT 4
# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**REBUTTAL EXPERT REPORT OF DR. ALEX C. SNOEREN CONCERNING U.S. PATENTS NOS. 6,847,959 AND 7,761,414**<br><br><br>**HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE** |

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

449.   In addition, it is my opinion that Evolution does not anticipate claim 20 because it does not disclose the plug-in model architecture required by that claim.  As explained in my opening expert report at paragraphs 404-408, claim 20 requires a plug-in model architecture such that additional synchronization software components corresponding to other classes of structured data are plugged into that architecture to handle the synchronization of such data in addition to the requirements of claim 11.  As explained herein, the implementation of the various synchronization functionalities in Evolution does not follow any consistent framework such that additional synchronization software components configured to synchronize data corresponding to other data classes could be plugged in to extend that functionality.

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

493.  As explained in my opening expert report, claim 20 requires at least three distinct synchronization software components each of which provides its own synchronization processing thread(s) to synchronize a corresponding data class. But according to Dr. Chase's own analysis, this requirement is not met. First, even assuming the software providing the ▬▬▬▬▬▬▬ was a synchronization software component ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**



**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND 7,761,414

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

566. Dr. Chase asserts that the claimed synchronization software components need not create or instantiate the synchronization processing thread. CR, ¶685. I disagree with that opinion because the claim language expressly requires that the synchronization processing thread be "provided by" the synchronization software component. '414 Patent, 33:49-51. Moreover, I have seen no reason why the term "synchronization software component" in claim 11 should have a different meaning than in claim 20. Thus, each of the "other synchronization software components" in claim 20 must also provide at least one synchronization processing thread specific to the synchronization of other corresponding classes of data.

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

572. As explained in my opening report, claim 20 requires a plug-in model architecture

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                  191

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

such that additional synchronization software components corresponding to other classes of structured data are plugged into that architecture to handle the synchronization of such data. That opinion is based on the intrinsic record, including the claim language and statements from the '414 Patent specification. While Dr. Chase in paragraph 694 states that he disagrees with me, the Chase Report does not address the evidence from the intrinsic record that supports my opinion.

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

620. Specifically, with respect to the ability to access and edit data while synchronization of that data is occurring (which is one of the benefits claim 20 provides), Professor Hauser found that Samsung smartphone consumers were between 4 and 17 percent less likely to buy a smartphone without this feature. Hauser Report, ¶ 116 and Table 8. Professor Hauser further found that "the percentage decline in willingness-to-buy upon removal of" this feature ranged from 5 to 23 percent for tablets. *Id.*, ¶ 119. Professor Hauser also conducted a market simulation that predicted a "price premium" customers would pay for this feature. *Id.*, ¶ 129 and Table 9.

**INTENTIONALLY OMITTED FROM EXHIBIT/RECORD**

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Dated: September 13, 2013

_____
Alex C. Snoeren