# EXHIBIT 1
# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>          Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br>          Counterclaim-Plaintiffs,<br>     v.<br><br>APPLE INC., a California corporation,<br><br>          Counterclaim-Defendant. | Civil Action No. 12-CV-00630-LHK (PSG)<br><br>**APPLE INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO SAMSUNG'S INTERROGATORIES (NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE** |

1  ████████████████████████████████████████████████

2  █████████████████████████████████████████

3  ██████████████████████████████████████████████████

4  █████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████████

7  ██████████████████████████████████████████

8  ██████████████████████████████████████████████████

9  ████████████████████████

10   Information responsive to this interrogatory may also be found in the transcript of the

11  July 12, 2013 deposition of Thomas Deniau.

12   Apple reserves the right to supplement and/or amend its response as appropriate.

13  **INTERROGATORY NO. 26:**

14   For each of the APPLE PATENTS-IN-SUIT, explain in detail all legal and factual

15  bases for APPLE'S contentions as to why each asserted claim of the PATENTS-IN-SUIT is

16  not invalid under 35 U.S.C. §§ 102, 103 and/or 112. To the extent that YOU disagree with

17  SAMSUNG'S invalidity contentions in whole or part, please include in YOUR answer a

18  point-by-point rebuttal of SAMSUNG'S invalidity contentions, including an

19

20  IDENTIFICATION of each element that is not allegedly present in the prior art cited in

21  SAMSUNG'S invalidity contentions, and why each claim is not allegedly obvious over the

22  prior art cited in SAMSUNG'S invalidity contentions (including any contentions based on

23  secondary considerations of nonobviousness).

24

25  **RESPONSE TO INTERROGATORY NO. 26:**

26

27                                     -59-

28  HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –
SOURCE CODE                     Case No. 12-CV-00630-LHK (PSG)

1    In addition to its General Objections above, which it hereby incorporates by

2  reference, Apple objects to this Interrogatory on the grounds and to the extent that it seeks

3  information that is neither relevant nor reasonably calculated to lead to the discovery of

4  admissible evidence. Apple further objects to this Interrogatory to the extent that it seeks

5  information protected from disclosure by the attorney-client privilege, work product doctrine,

6  or other applicable privilege or immunity against disclosure. Apple additionally objects to

7  this Interrogatory on the grounds and to the extent that it is overly broad and unduly

8  burdensome and not reasonably calculated to lead to the discovery of admissible evidence on

9  the grounds and to the extent that it (i) seeks "all legal and factual bases for APPLE'S

10  contentions as to why each asserted claim of the PATENTS-IN-SUIT is not invalid under 35

11  U.S.C. §§ 102, 103 and/or 112;" (ii) seeks Apple's contentions with respect to (a) invalidity

12  defenses other than those specifically identified in Samsung's invalidity contentions, (b)

13  obviousness defenses for which Samsung has not articulated a suggestion or motivation to

14  combine references, (c) obviousness combinations for which Samsung has failed to articulate

15  the specific combinations of references upon which it will rely, (d) references that Samsung

16  has merely listed without any supporting charts, explanation, or other support, (e) references

17  which Samsung has not yet produced to Apple during discovery, (f) references which

18  Samsung has failed to classify as either 35 U.S.C. §§ 102 and/or 103 prior art, (g) references

19  upon which Samsung may not rely in expert reports, dispositive motions, or at trial, and (h)

20  references which Samsung has not established as prior art under 35 U.S.C. §§ 102 and/or

21  103. Apple also objects to this Interrogatory on the grounds and to the extent that it is

22  compound and comprises discrete subparts resulting in separate interrogatories. Apple still

23  further objects to this Interrogatory on the grounds and to the extent that it calls for legal

24

25

26

27                                            -60-

28  HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –          Case No. 12-CV-00630-LHK (PSG)
    SOURCE CODE

conclusions, prematurely calls for expert testimony or opinions at this stage of litigation, and prematurely calls for Apple's position regarding the validity of its patents before sufficient discovery has been conducted, particularly in light of Samsung's failure to complete its production of the references that it lists in its invalidity contentions.

Subject to and without waiving the foregoing General and Specific Objections, Apple is willing to meet and confer to discuss the scope and relevance of the information sought by Samsung in this interrogatory.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 26:**

Subject to and incorporating its General Objections and its Specific Objections from Apple Inc.'s Objections and Responses to Samsung's Third Set of Interrogatories with regard to Samsung's Interrogatory No. 26, Apple provides the following supplemental response:

Pursuant to the parties' meet-and-confer discussions, Apple provides below an explanation of why the asserted claims are not invalid over the specific theories identified in Samsung's April 26, 2013 letter.  To the extent an identified theory lists a single reference or system, Apple assumes that Samsung is asserting an anticipation theory, and Apple's response does not address the deficiencies in any obviousness theory asserted by Samsung for that reference or system.  To the extent Samsung asserts any such obviousness theory, Apple reserves the right to offer additional explanation, both in fact or expert discovery, regarding the deficiencies in Samsung's theories.  In the cases where Samsung has not provided any citations to the primary reference for a claim limitation, we understand Samsung is conceding that reference does not disclose that limitation, and Apple agrees that the primary reference does not disclose these limitations.  A number of the theories identified in Samsung's April 26th letter point to certain charts without a clear indication whether the

-61-

theory identified in the letter is a single reference, a system or an obviousness combination. Unless otherwise indicated Apple's response assumes Samsung's identified theory is pointing to a single reference.   Apple reserves the right to offer additional explanation, both in fact or expert discovery, regarding the deficiencies in Samsung's theories to the extent the theories include a system or systems or an argument based on obviousness.

Apple's response to this interrogatory is based on its understanding, to the extent possible, of Samsung's invalidity contentions.  Samsung's contentions do not provide sufficient invalidity allegations, *e.g.*, as to why a particular reference or system (alone or in combination with other prior art) allegedly discloses the claim limitations of the asserted claims or as to why one of ordinary skill in the art would be motivated to combined any of the references.  As Samsung bears the burden to prove invalidity by clear and convincing evidence, Apple's response is not an exhaustive explanation of every reason that the asserted claims are valid; rather, Apple's response explains why Samsung's contentions are deficient. Apple reserves the right to offer additional bases of validity, both in fact and expert discovery, should Samsung provide further details regarding its invalidity theories (although Apple does not concede that any such supplementation or amendment by Samsung would be proper).  Also, Samsung has continued to supplement its invalidity contentions with additional details and arguments regarding its invalidity theories, including adding analysis of documents and things produced or made available by third parties.  Apple's analysis of Samsung' supplemental contentions and the third-party productions is ongoing, and Apple reserves the right to supplement its response, both in fact and expert discovery.

Nothing in Apple's response is an admission or a suggestion that any of Samsung's identified references or systems qualify as "prior art" under 35 U.S.C. §§ 102 or 103.  Also,

-62-

nothing in Apple's response or any purported failure to explicitly discuss a particular claim element or limitation should be taken as an admission that those elements or limitations are present in the prior art.  Moreover, Apple's response is limited to the eight invalidity theories per patent identified by Samsung in its April 26, 2013 letter.  Apple disputes all of Samsung's invalidity theories, including those under 35 U.S.C. §§ 101, 102, 103, and 112, and reserves the right to explain, both in fact and expert discovery, why all of Samsung's invalidity theories are without merit.

In addition, Samsung's asserted obviousness theories are devoid of any reasoning or support.  Samsung includes generic argument with respect to motivations to combine and factors identified in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), but Samsung does not identify the differences between the primary references and the asserted claims, nor does Samsung identify what the primary reference is missing with respect to a particular claim limitation, and what secondary reference provides with respect to the missing element to allegedly render the claim obvious—and thus does not provide any substantive analysis of why one of ordinary skill in the art would have been motivated to combine the respective teachings in this context.  Apple reserves the right to provide further background and discussion of the state of the art, the inventions embodied in Apple's patents, and each of the references by Samsung.

Moreover, to the extent Samsung has identified prior art systems as allegedly anticipating or rendering obvious the asserted claims, Samsung has often failed to meet its burden to prove that a system as described in Samsung's contentions actually existed or constitutes prior art.  Rather, Samsung relies on a combination of publications purportedly describing the "system," including different versions of a purported "system."  Such reliance

-63-

is improper.  Also, to the extent Samsung as not produced or made available prior art references or systems on which it relies, Apple reserves the right to update its response, both in fact and expert discovery, should Apple gain access to such prior art.

Apple incorporates by reference its response, including all supplements, to Interrogatory No. 5 regarding secondary considerations of non-obviousness.  Apple also incorporates by reference its preliminary injunction briefing and accompanying exhibits in this litigation, including the opening and reply declarations of Dr. Ravin Balakrishnan, Dr. Todd C. Mowry, Dr. Nathaniel Polish, and Dr. Karan Singh.

Subject to the foregoing, Apple provides its response to this interrogatory for the specific invalidity theories identified in Samsung's April 26, 2013 letter.

**U.S. Patent No. 5,666,502**

*Borland Turbo C++*

Samsung's Amended Exhibit A-9 purports to describe Borland Turbo C++ ("Turbo C++"); however, Samsung has not met its burden that any version of Turbo C++ constitutes prior art under 35 U.S.C. §§ 102(a), (b) or (g), or that any of the purported versions anticipate the asserted claims of the '502 patent.  Samsung impermissibly combines several different versions of Turbo C++, and has not met its burden to show that any particular version of Turbo C++ anticipates the asserted claims.  As Samsung has not met its burden to demonstrate that Turbo C++ is prior art, it cannot therefore anticipate.  Apple provides further explanation below of the deficiencies in Samsung's contentions as they relate to specific asserted claims.

Claim 8

-64-

For the reasons stated above, Samsung has not met its burden to demonstrate that Windows 95 teaches a form having at least one field associated with a field class or a history list associated with the field class.

**U.S. Patent No. 5,946,647**

Samsung's invalidity contentions rely to a large extent on arguments made in prior litigations involving the '647 patent, including *In re Certain Personal Data and Mobile Communications Devices and Related Software*, Inv. No. 337-TA-710, Apple *Inc. et al., v. Motorola, Inc., et al.,* No. 10-cv-662 (W.D. Wis.), *Apple Inc. et al., v. Motorola, Inc., et al.,* No. No. 11-CV-8540 (N.D. Ill.).  Apple incorporates by reference its arguments made in expert reports, depositions, and briefing in those prior litigations, including those found at APLNDC630-0000069204-69324, APLNDC630-0000069325-69460, APLNDC630-0000169908-170218, and documents cited therein.

*Clayton (U.S. Patent No. 5,101,424) + Brandt (U.S. Patent No. 5,261,042) + Koved, Embedded Menus: Selecting Items in Context*

The subject matter of the asserted claims of the '647 patent would not have been obvious under the mandates of *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), in light of the combination of the Clayton, Brandt, and Koved references as described in Exhibit B-8 to Samsung's L. Pat. R. 3-3 Disclosures.

Claim 1

To the extent that the preamble to claim 1 is limiting, Samsung has not met its burden to demonstrate that the combination of Clayton, Brandt, and Koved teaches "[a] computer-based system for detecting structures in data and performing actions on detected structures." Clayton does not disclose the detection of structures as used in the '647 patent.  The '647

-99-

patent discloses the detection of structures, where structures are instances of saved patterns (*e.g.*, grammars, regular expressions, strings) that represent classes of data that have a particular semantic significance (*e.g.*, telephone numbers, email addresses, postal addresses, etc.). By contrast, Clayton merely discloses scanning specific text. The purported patterns identified as described in Clayton are not classes of data having a particular semantic significance, and thus are not structures as described in the '647 patent.

Clayton also does not teach "performing [or linking] actions to structures." As Clayton does not disclose structures, it does not disclose "performing [or linking] actions to structures." Further, the "actions" purportedly disclosed by Clayton are not computer subroutines that cause the CPU to perform a sequence of operations on the particular structure to which they are linked, as taught by the '647 patent.

Clayton also does not teach "an output device for presenting the data." The purported "display" taught by Clayton may display messages generated as a result of information found in the input data. It does not present the data as claimed by the '647 patent.

Clayton also does not teach "a memory storing information including program routines including an analyzer server for detecting structures in the data, and for linking actions to the detected structures."[1] For the reasons stated above, Clayton does not teach program routines for "detecting structures in the data" or "linking actions to the detected structures."

---

[1] During the preliminary injunction phase, Samsung asserted incorrect constructions of "analyzer server" and "linking actions to the detected structures." To the extent Samsung continues advances these constructions, Apple notes that none of Samsung's invalidity contentions demonstrate that any of Samsung's invalidity theories invalidate the '647 patent under Samsung's constructions. Apple reserves the right to respond, in fact and expert discovery, to arguments propounded by Samsung based on its erroneous constructions.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE          Case No. 12-CV-00630-LHK (PSG)

APPLE'S SUPPLEMENTAL RESPONSES TO SAMSUNG'S INTERROGATORIES
(NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)

Clayton also does not teach "a user interface enabling the selection of a detected structure and a linked action."  For the reasons stated above, Clayton does not teach detecting structures or linking actions to the detected structures.  Also, Clayton does not teach a user interface for enabling the selection of any purported detected structures or linked actions.  Clayton provides no disclosure of how the system would display detected structures to the user for selection.  Further, Clayton provides no disclosure of enabling user selection of a linked action.  Samsung appears to contend that opening a text file containing purported "actions" in a text editor allows of the selection of a linked action.  Such a process does not disclose "selection of a linked action."

Nor does the combination of Clayton and Brandt and Koved render this limitation obvious to one of ordinary skill.  Neither Brandt nor Koved disclose detecting structures or linking actions to the detected structures.  Further, there would have been no motivation to combine Clayton with either Brandt or Koved.  Clayton is directed to monitoring log reports for telephone switches so that problems can be debugged.  Clayton does not teach the detecting of structures in data, such as phone numbers or email addresses, or the linking of useful actions to be performed on those structures.  Nothing in Clayton's disclosure indicates that the purported "menu management system" or "embedded menus" of Brandt or Koved would ameliorate any deficiencies in Clayton's teachings.

Clayton also does not teach "an action processor for performing the selected action linked to the selected structure."  For the reasons stated above, Clayton does not teach selecting structures or selecting actions linked to detected structures.

-101-

Clayton also does not teach "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines." For the reasons stated above, Clayton does not teach the claimed program routines of claim 1.

Claim 4

As claim 4 ultimately depends from claim 1, the combination of Clayton and Brandt and Koved does not render obvious claim 4 for at least the reasons stated above with respect to claim 1. Also, Clayton also does not teach that "the analyzer server includes grammars and a parser for detecting structures in the data." As discussed above, the purported "grammars" and "parser" allegedly disclosed by Clayton do not detect structures in the data.

Claim 6

As claim 6 ultimately depends from claim 1, the combination of Clayton and Brandt and Koved does not render obvious claim 6 for at least the reasons stated above with respect to claim 1. Also, Clayton also does not teach that "the analyzer server includes a string library and a fast string search function for detecting string structures in the data." As discussed above, Clayton does not teach detecting string structures in the data. Clayton also does not disclose a "fast string search function."

Claim 8

As claim 8 ultimately depends from claim 1, the combination of Clayton and Brandt and Koved does not render obvious claim 8 for at least the reasons stated above with respect to claim 1. Also, as discussed above, Clayton does not teach detected structures. Clayton also fails to teach highlighting any purported detected structures. Nor does the combination of Clayton and Koved render this limitation obvious to one of ordinary skill. As discussed above, there would have been no motivation to combine Clayton with Koved.

-102-

Claim 9

As claim 9 ultimately depends from claim 1, the combination of Clayton and Brandt and Koved does not render obvious claim 9 for at least the reasons stated above with respect to claim 1.  Also, Clayton also does not teach that user interface enables selection of an action by causing the output device to display a popup menu of the linked actions."  As discussed above, Clayton does not teach actions, nor does it teach a user interface for the selection of an action.  Nor does the combination of Clayton and Brandt and Koved render this limitation obvious to one of ordinary skill.  As discussed above, there would have been no motivation to combine Clayton with Brandt or Koved.

*Davoust (U.S. Patent No. 5,375,201) + Sidekick + Microsoft Foundation Class Primer*

The subject matter of the asserted claims of the '647 patent would not have been obvious under the mandates of *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), in light of the combination of the Davoust, Brandt, and Koved references as described in Exhibit B-10 to Samsung's L. Pat. R. 3-3 Disclosures.

Claim 1

To the extent that the preamble to claim 1 is limiting, Samsung has not met its burden to demonstrate that the combination of Davoust, Sidekick,[2] and Microsoft Foundation Class Primer teaches "[a] computer-based system for detecting structures in data and performing actions on detected structures."  Davoust does not disclose the detection of structures as used in the '647 patent.  The '647 patent discloses the detection of structures, where structures are

---

[2] Exhibit B-10 references the Sidekick Version 1.5 Owner's Handbook .  References to "Sidekick" herein refer to this document.  Should Samsung assert additional invalidity theories based on the Sidekick system, Apple reserves the right to respond to these arguments in fact and expert discovery.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

Case No. 12-CV-00630-LHK (PSG)

APPLE'S SUPPLEMENTAL RESPONSES TO SAMSUNG'S INTERROGATORIES
(NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)

instances of saved patterns (*e.g.*, grammars, regular expressions, strings) that represent classes of data that have a particular semantic significance (*e.g.*, telephone numbers, email addresses, postal addresses, etc.).  By contrast, Davoust merely discloses determining the data type of information in computer spreadsheets.

Davoust also does not teach "performing [or linking] actions to structures."  As Davoust does not disclose structures, it does not disclose "performing [or linking] actions to structures."  Further, the "actions" purportedly disclosed by Davoust are not computer subroutines that cause the CPU to perform a sequence of operations on the particular structure to which they are linked, as taught by the '647 patent.

Nor does the combination of Davoust with Sidekick render this limitation obvious. There would have been no motivation to combine Davoust with Sidekick, which relate to completely different technologies and which have different aims.  In addition, Sidekick also does not teach "[a] computer-based system for detecting structures in data and performing actions on detected structures."  The '647 Patent discloses the use of multiple saved "patterns" to detect different types of structures (e.g., phone numbers, email addresses, etc.), each of which being associated with candidate actions that a user would normally perform on such a structure. '647 Patent at 1:25-35.  Sidekick recognizes at most only a single type of data – phone numbers – and allows at most only one type of action associated with each phone number.  Accordingly, the Sidekick system does not "detect[] structures in data" or "perform actions on detected structures" as required in the preamble to Claim 1.  In addition, the '647 Patent teaches that the system itself detects structures in data prior to linking those structures to candidate actions (i.e., actions that a user would normally perform on those structures). See '647 Patent at 2:49-53 ("Upon selection of a detected structure, the user

-104-

interface presents and enables selection of candidate actions.").  Unlike the system disclosed in the '647 Patent, Sidekick does not itself perform any detection.  Instead, Sidekick's Dialer feature requires a user to enter various prompts to enable a single telephone number to be highlighted at any given time.  Thus, unlike the '647 Patent, the Sidekick system requires user prompts to select a single piece of data.  Also, Sidekick does not teach an "action."  Samsung has failed to identify any statement in the Sidekick Handbook that discloses that software is actually operating on a telephone number structure.

Davoust also does not teach "a memory storing information including program routines including an analyzer server for detecting structures in the data, and for linking actions to the detected structures."  For the reasons stated above, Davoust does not teach program routines for "detecting structures in the data" or "linking actions to the detected structures."  Also, as discussed above, the combination of Davoust with Sidekick does not render this limitation obvious.  Further, the combination of Davoust with Microsoft Foundation Class Primer does not render this limitation obvious.  Samsung has identified no motivation to combine Davoust with Microsoft Foundation Class Primer, and one of ordinary skill would not have been so motivated.  In addition, Microsoft Foundation Class Primer does not disclose "structures," "detecting structures" "actions," or "linking actions to the detected structures."

Davoust also does not teach "a user interface enabling the selection of a detected structure and a linked action."  For the reasons stated above, Davoust does not teach detecting structures or linking actions to the detected structures.  Also, Davoust does not teach a user interface for enabling the selection of any purported detected structures or linked actions.  Samsung's contention that structures are enabled for selection by the user's

-105-

selection of a series of cells upon which the analysis is performed is not "selection of a detected structure" as claimed in the '647 patent.  Further, Davoust provides no disclosure of enabling user selection of a linked action.

Nor does the combination of Davoust and Sidekick and Microsoft Foundation Class Primer render this limitation obvious to one of ordinary skill.  For the reasons stated above, neither Sidekick nor Microsoft Foundation Class Primer teaches detected structures or linked actions.  Also, neither Sidekick nor Microsoft Foundation Class Primer teaches the "selection of a detected structure" from a set of detected structures or the selection of a linked action from a set of actions.

Davoust also does not teach "an action processor for performing the selected action linked to the selected structure."  For the reasons stated above, Davoust, alone or in combination with Sidekick and Microsoft Foundation Class Primer, does not teach selecting structures or selecting actions linked to detected structures.

Davoust also does not teach "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines."  For the reasons stated above, Davoust, alone or in combination with Sidekick and Microsoft Foundation Class Primer, does not teach the claimed program routines of claim 1.

Claim 4

As claim 4 ultimately depends from claim 1, the combination of Davoust and Sidekick and Microsoft Foundation Class Primer does not render obvious claim 4 for at least the reasons stated above with respect to claim 1.  Also, Davoust also does not teach that "the analyzer server includes grammars and a parser for detecting structures in the data."  Nor does the combination of Davoust with Sidekick render this limitation obvious.  As discussed

-106-

above, Sidekick at most recognizes a single type of structure, and so does not teach grammars and a parser for detecting structures in the data.

Claim 6

As claim 6 ultimately depends from claim 1, the combination of Davoust and Sidekick and Microsoft Foundation Class Primer does not render obvious claim 6 for at least the reasons stated above with respect to claim 1.  Also, Davoust also does not teach that "the analyzer server includes a string library and a fast string search function for detecting string structures in the data."  As discussed above, Davoust does not teach detecting string structures in the data.  Davoust also does not disclose a "fast string search function."

Claim 8

As claim 8 ultimately depends from claim 1, the combination Davoust and Sidekick and Microsoft Foundation Class Primer does not render obvious claim 8 for at least the reasons stated above with respect to claim 1.  Also, as discussed above, Davoust does not teach detected structures.  Davoust also fails to teach highlighting any purported detected structures.  At most, Davoust teaches highlighting a cell selected by the user.  Nor does the combination of Davoust and Sidekick render this limitation obvious to one of ordinary skill.  As discussed above, there would have been no motivation to combine Davoust with Sidekick.  Also, Sidekick does not disclose "highlighting detected structures," as at most only a single purported structure is highlighted at any particular time.

Claim 9

As claim 9 ultimately depends from claim 1, the combination of Davoust and Sidekick and Microsoft Foundation Class Primer does not render obvious claim 9 for at least the reasons stated above with respect to claim 1.  Also, Davoust also does not teach that user

-107-

interface enables selection of an action by causing the output device to display a popup menu of the linked actions." As discussed above, Davoust does not teach detecting structures, actions, nor does it teach a user interface for the selection of an action. Nor does the combination of Davoust and Sidekick and Microsoft Foundation Class Primer render this limitation obvious to one of ordinary skill. As discussed above, there would have been no motivation to combine Davoust with Sidekick or Microsoft Foundation Class Primer. In addition, Sidekick does not teach "displaying a popup menu of the linked actions," but instead has a single menu that is persistently present to the user at the bottom of the screen when the Sidekick software is running.

*EmbeddedButtons*

Samsung's Exhibit A-15 purports to describe the EmbeddedButtons system; however, Samsung has not met its burden that any version of EmbeddedButtons constitutes prior art under 35 U.S.C. §§ 102(a), (b) or (g), or that any of the purported versions anticipate the asserted claims of the '647 patent. Samsung also appears to have improperly cobbled together at several different unauthenticated, non-public documents and source code, videos, patent documents, to evidence this "system." Samsung's reliance on numerous publications and non-public materials as a single anticipatory theory is improper. As Samsung has not met its burden to demonstrate *EmbeddedButtons* as charted by Samsung is prior art, it cannot therefore anticipate. Further, Samsung has not shown that any particular allegedly anticipating functionality was enabled or actually reduced to practice. Apple provides further explanation below of the deficiencies in Samsung's contentions as they relate to specific asserted claims. Should Samsung attempt to assert additional arguments based on a single prior art reference or a properly combined set of references, or to add additional explanation

-108-

1    regarding how these references allegedly invalidate the asserted claims, Apple reserves the

2    right to respond, both in fact and expert discovery.

3        Claim 1

4        To the extent that the preamble is limiting, EmbeddedButtons does not disclose "a

5    computer-based system for detecting structures in data and performing actions on detected

6    structures."  At most, EmbeddedButtons discloses a system in which a user may search for a

7    single type of structure—phone numbers.  Also, at most, EmbeddedButtons discloses only a

8    single action purportedly linked to the detected structure—Call.  But none of the evidence

9    cited by Samsung discloses that any such implementation ever existed.  Indeed, none of the

10   source code cited by Samsung demonstrates any such implementation.

11

12       EmbeddedButtons also does not teach "a memory storing information including

13   program routines including an analyzer server for detecting structures in the data, and for

14   linking actions to the detected structures."  For the reasons stated above,   EmbeddedButtons

15   does not teach program routines for "detecting structures in the data" or "linking actions to

16   the detected structures."  Also, as discussed above, EmbeddedButtons requires a user to

17   manually enter in search criteria for a specific type of structure—a phone number.  This is

18   contrary to the teaching of the '647 patent, where the stored program routines perform this

19   detection and linking automatically.

20

21       EmbeddedButtons also does not teach "an action processor for performing the

22   selected action linked to the selected structure."  As discussed above, none of the evidence

23   cited by Samsung evidences any subroutine that performed a sequence of operations on the

24   detected structure.

25

26

27                                      -109-

28   HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –          Case No. 12-CV-00630-LHK (PSG)
     SOURCE CODE

EmbeddedButtons also does not teach "processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines"  As discussed above, none of the evidence cited by Samsung evidences any system having the claimed program routines.

Claim 4

As claim 4 ultimately depends from claim 1, EmbeddedButtons does not invalidate claim 4 for at least the reasons stated above with respect to claim 1.  In addition, Samsung has not met its burden to demonstrate that EmbeddedButtons teaches that "the analyzer server includes grammars and a parser for detecting structures in the data."  The citations relied on by Samsung merely disclose the use of a "search-and-replace" feature of a generic text editor.

Claim 6

As claim 6 ultimately depends from claim 1, EmbeddedButtons does not invalidate claim 6 for at least the reasons stated above with respect to claim 1.  In addition, Samsung has not met its burden to demonstrate that EmbeddedButtons teaches that "the analyzer server includes a string library and a fast string search function for detecting string structures in the data."  As discussed above, none of the references, documents, or other evidence cited by Samsung disclose any implementation using a string library or a fast string search function.  At most, EmbeddedButtons discloses the manual detection of a single type of structure—a phone number.

Claim 8

-110-

As claim 8 ultimately depends from claim 1, EmbeddedButtons does not invalidate claim 8 for at least the reasons stated above with respect to claim 1.

Claim 9

As claim 9 ultimately depends from claim 1, EmbeddedButtons does not invalidate claim 9 for at least the reasons stated above with respect to claim 1.  Also, EmbeddedButtons does not disclose that "the user interface enables selection of an action by causing the output device to display a pop-up menu of the linked actions."  As discussed above, at most, EmbeddedButtons discloses only a single action purportedly linked to a detected structure— Call.  But none of the evidence cited by Samsung discloses that any such implementation ever existed.  Indeed, none of the source code cited by Samsung demonstrates any such implementation.

*Hypertext*

Exhibit B-14 to Samsung's L. Pat. R. 3-3 Disclosures purports to disclose "hypertext" as prior art under 35 U.S.C. § 102.  But Samsung appears to have improperly cobbled together at least ten different publications to evidence this "hypertext system." "Hypertext" is not prior art as defined in § 102, and Samsung's reliance on numerous publications as a single anticipatory theory is improper.  Moreover, Exhibit B-14 is especially deficient in its explanation of how the '647 patent's claim elements are disclosed by these disparate references.  Should Samsung attempt to assert additional arguments based on a single prior art reference or a properly combined set of references, or to add additional explanation regarding how these references allegedly invalidate the asserted claims, Apple reserves the right to respond, both in fact and expert discovery.

Claim 1

-111-

To the extent that the preamble to claim 1 is limiting, Samsung has not met its burden to demonstrate that Hypertext teaches "[a] computer-based system for detecting structures in data and performing actions on detected structures."   Samsung offers no citation or support, but merely relies on the conclusory and incorrect statement that persons of ordinary skill in the art would have been aware of hypertext systems and that these systems provided the ability to detect structures in data and perform actions on detected structures.

Samsung has not met its burden to demonstrate that Hypertext teaches "an input device for receiving data" or "an output device for presenting the data."  Samsung's citations for these elements are based on disparate publications and do not constitute a "system" under 35 U.S.C. § 102.

Samsung has not met its burden to demonstrate that Hypertext teaches "a memory storing information including program routines including an analyzer server for detecting structures in the data, and for linking actions to the detected structures."  Nothing in the disparate references cited by Samsung discloses "detecting structures" as taught by the '647 patent, *i.e.*, instances of saved patterns (*e.g.*, grammars, regular expressions, strings) that represent classes of data that have a particular semantic significance (*e.g.*, telephone numbers, email addresses, postal addresses, etc.).  At most, hypertext involves the creation of tag markups specifically created by the author of a document.  In addition, nothing in the disparate references cited by Samsung discloses "actions" as taught by the '647 patent, *i.e.*, computer subroutines that cause the CPU to perform a sequence of operations on the particular structure to which they are linked.  None of the citations disclose performing an action on a detected structure.

-112-

Samsung has not met its burden to demonstrate that Hypertext teaches "a user interface enabling the selection of a detected structure and a linked action."  For the reasons stated above, Hypertext does not teach detecting structures or linking actions to the detected structures.  Also, Hypertext does not teach a user interface for enabling the selection of any purported detected structures or linked actions.  None of the disparate references cited by Samsung teaches any "action" or the selection of an action linked to a detected structure.

Samsung has not met its burden to demonstrate that Hypertext teaches "an action processor for performing the selected action linked to the selected structure."  For the reasons stated above, Hypertext does not teach detecting structures or linking actions to the detected structures.

Samsung has not met its burden to demonstrate that Hypertext teaches "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines."  For the reasons stated above, Samsung has improperly combined a number of disparate references to evidence a single purported "system."  Also, as described above, Hypertext does not teach the claimed program routines.

Claim 4

As claim 4 ultimately depends from claim 1, Hypertext does not invalidate claim 4 for at least the reasons stated above with respect to claim 1.  In addition, Samsung has not met its burden to demonstrate that Hypertext teaches that "the analyzer server includes grammars and a parser for detecting structures in the data."  None of the disparate references cited by Samsung disclose detecting structures in data or disclose how one of ordinary skill could use grammars and a parser to do so.

Claim 6

-113-

As claim 6 ultimately depends from claim 1, Hypertext does not invalidate claim 6 for at least the reasons stated above with respect to claim 1.  In addition, Samsung has not met its burden to demonstrate that Hypertext teaches that "the analyzer server includes a string library and a fast string search function for detecting string structures in the data."  As discussed above, none of the disparate references cited by Samsung disclose detecting structures in data.  Also, the single reference cited by Samsung for this element does not disclose the use of a string library or a fast string search function.

Claim 8

As claim 8 ultimately depends from claim 1, Hypertext does not invalidate claim 8 for at least the reasons stated above with respect to claim 1.  In addition, Samsung has not met its burden to demonstrate that Hypertext teaches that "the user interface highlights detected structures."  As discussed above, none of the disparate references cited by Samsung disclose detecting structures in data.  Also, the single reference cited by Samsung for this element discusses highlighting "links," not detected structures as taught by the '647 patent.

Claim 9

As claim 9 ultimately depends from claim 1, Hypertext does not invalidate claim 9 for at least the reasons stated above with respect to claim 1.  As discussed above, none of the disparate references cited by Samsung disclose enabling the selection of a linked action. Also, the single reference cited by Samsung for this element merely discusses a "dialog box," not a pop-up menu of the linked actions.

*Mosaic + MHonArc*

Samsung's Exhibit B-1 purports to describe the Mosaic System ("Mosaic") and the MHonArc System ("MHonArc").  Samsung has not met its burden to demonstrate that

-114-

Mosaic and MHonArc are prior art under 35 U.S.C. § 102.  Also, as described below, Samsung has not met its burden to demonstrate that Mosaic + MHonArc anticipates or renders obvious the asserted claims of the '647 Patent.

For example, the combination of MHonArc and Mosaic described by Samsung requires cumbersome steps by the user to operate and does not solve the problems addressed by the '647 Patent.  Using this combination, a user would have to open a plain-text email or a set of plain-text documents in MHonArc and then prompt MHonArc to search for data, using the computer's command line.  MHonArc would then add specific HTML source code— anchors and tags—to the data so that the data would appear as a hyperlink in any web browser—as email addresses or web URLs.  To be clear, MHonArc does not link or associate any actions or computer operations to the data, MHonArc only convers certain data into hyperlinks to be recognized by web browsers.  After saving the file, the user would then have to open a web browser, such as Mosaic, locate the converted email file, open the converted file, and find the hyperlinked information of interest. This does not comprise or teach a system that looks for semantically significant data and associate candidate actions to perform on the detected data.  As described below, even at the end of this laborious process, Mosaic fails to associate any actions to the hyperlinks created by MHonArc. Instead, Mosaic presents a common context menu for any type of hyperlink.

Claim 1

Samsung has not met its burden to establish that all of the limitations of claim 1 are disclosed or rendered obvious by Mosaic, MHonArc, or the combination of the two.  For example, MHonArc, and any combination with Mosaic, does not perform detection of "structures" in data and linking of candidate actions to detected structures, as taught by the

-115-

'647 patent.  As described in '647 Patent, a "structure" is an instances of a pattern in a document, where a "pattern" "refers to data such as grammar, regular expression, string, etc., used by a pattern analysis unit to recognize information in a document such as dates, addresses, phone numbers, names, etc."  '647 Patent, 1:28-31.  The MHonArc system, and likewise a combination of that system with the Mosaic browser, would fail to detect such nuggets in data visible to the user.

For further example, if the preamble of claim one is limiting, Samsung fails to establish that the combination of MHonArc with Mosaic comprises a "computer-based system for detecting structures in data and performing actions on detected structures."  The combination of an application hosting a document and program routines that would analyze the documents to make certain things actionable was part of the novelty of the '647 Patent, allowing easily accessible functionality in an application hosting a document and link specific actions to usable data such as telephone numbers, email addresses, etc.  *See* '647 Patent, 2:4-20.

By way of further example, MHonArc does not "detect" anything, as the term is used in the '647 Patent.  Instead, MHonArc simply looks for data that includes specific prefixes, and adds to the data HTML anchor elements that can be used by any web browser to display the information as a hyperlink.  MHonArc only finds text that has already been marked with prefixes corresponding to URL code, such as "mailto:" and "http://."  Thus, MHonArc does not "detect" anything, but rather simply converts pre-marked (here by prefixes or by location in a header) data into hyperlinks.  Mosaic, in turn, merely recognizes the markings added by MHonArc (HTML "tags" or "anchors").  Performing simple search-and-replace operations on two very limited types of data that are effectively pre-marked, is

-116-

vastly different from detecting instances of interesting patterns in data (such as for phone numbers or email addresses), and requires less sophistication in a system. Since MHonArc, either independently or combined with Mosaic, does not detect structures as understood by the '647 Patent, it also cannot "perform[] actions on detected structures."

For further example, MHonArc blindly accepts any sequence of characters between one of the above-listed prefixes and an obvious delimiter (such as a white space) when attempting to identify a URL. This contrasts with the teachings of the '647 Patent, which illustrates the detection of a normal email address in unstructured text without a special hyperlink prefix (e.g. Jdoe@work.com in Figures 5 and 6 of the '647 Patent).

For further example, MHonArc's search-and-replace operation on email addresses in certain header fields of an email is also contrary to the teachings of the '647 Patent regarding detecting structures. The motivation for detecting structures in the '647 Patent was to recognize useful "nuggets" of data that might easily be missed by the user in a large body of unstructured text: for example, in the body of an email message. '647 Patent, 1:19-22 ("However, visually searching data files or documents to find these structures is laborious and cognitively disruptive, especially if the document is lengthy and hard to follow."). Hence Figures 5-7 of the '647 Patent show the invention being applied to the body of an email message, since this is the portion of an email message that may contain a large amount of unstructured text. In contrast, the header fields of an email message that contains the "From," "CC," and "To" information are designed specifically to contain email addresses; that is indeed their sole purpose. Hence they are example of structured text, since it is known ahead of time that their contents consist of email addresses. Although a user may overlook an email address that is buried somewhere inside the body of an email message,

-117-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

Case No. 12-CV-00630-LHK (PSG)

APPLE'S SUPPLEMENTAL RESPONSES TO SAMSUNG'S INTERROGATORIES (NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)

there is no guesswork regarding the fact that email header fields are designed to contain email addresses (e.g., "From," "To," "CC") do in fact contain email addresses.  Therefore, MHonArc's recognition of email addresses in the structured fields of email messages where email addresses are known to be located does not satisfy the limitation of "detecting structures in data."

By way of further example, the Mosaic web browser also fails to disclose the limitation of "detecting structures in data" because Mosaic recognizes only HTML tags or anchors specifically marked to be detected by a web browser.  This is in stark contrast to the '647 Patent's teaching of detection of data in patterns in otherwise unstructured data.  Thus, even when MHonArc is combined with Mosaic, the combination still fails to meet the limitations of detecting structures in data."

For further example, even if Mosaic did encounter "detected structures" of some kind, it does not offer customized sets of associated actions based on the type of structure detected, but instead presents only a single set of optional operations for all structures allegedly detected.  This does not constitute a "specified connection" between structures and actions because the available actions are not "candidate" actions for performance on the particular structure selected.

For further example, Mosaic provides only a single set of static actions to a user of every type of URL it detects in the body of the document, no matter what the URL is (e.g., "http://," "ftp://," etc.); i.e., the options provided are not meaningfully customized to any type of data that is allegedly detected.  Thus, Mosaic does not "creat[e] a specified connection" between each structure and application actions.  Nor does it meaningfully "link[]" particular actions to particular detected structure.  *See, e.g.*, '647 Patent, 2:30-34

-118-

("Upon detection of a structure, the analyzer server links to the detected structure.  Each action is a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked.").  Even if one were to consider Mosaic's finding of URLs in an email body as "detecting structures," there is no linking of actions to particular structures, as taught by the '647 Patent.  Instead, all alleged structures found in the body of an email are subject to the same list of operations.

Furthermore, the addition of MHonArc to Mosaic does not add relevant functionality regarding "linking actions to the detected structures."  MHonArc performs only the functionality of converting text to HTML documents (documents with hyperlinks recognizable by an HTML reading application), and does not associate or connect any computer operations with the data that it converts.

Claim 4

As claim 4 ultimately depends from claim 1, Mosaic and MHonArc, even in combination, do not anticipate or render obvious claim 4 for at least the reasons stated above with respect to claim 1.  For further example, as discussed above, the combination of Mosaic and MHonArc does not disclose or render obvious detecting "structures" within the meaning of the patent, nor does it disclose including grammars or parsers for the allegedly "detecting structures."

Claim 6

As claim 6 ultimately depends from claim 1, Mosaic and MHonArc, even in combination, do not anticipate or render obvious claim 6 for at least the reasons stated above with respect to claim 1.  For further example, as discussed above, the combination of Mosaic and MHonArc does not disclose  or render obvious detecting "structures" within the meaning

-119-

of the patent, nor does it disclose including a string library and fast string search for allegedly "detecting structures."

Claim 8

As claim 8 ultimately depends from claim 1, Mosaic and MHonArc, even in combination, do not anticipate or render obvious claim 8 for at least the reasons stated above with respect to claim 1. For further example, the combination of Mosaic and MHonArc does not detect "structures" within the meaning of the patent, nor does it allow for actions to be linked to particular structures. Additionally, the combination of MHonArc with Mosaic would not highlight "detected structures." Instead, the Mosaic browser would highlight only pre-marked data that had been converted to hyperlinks by the MHonArc system.

Claim 9

As claim 9 ultimately depends from claim 1, Mosaic + MHonArc does not anticipate claim 9 for at least the reasons stated above with respect to claim 1. For further example, as discussed above, the combination of Mosaic and MHonArc does not disclose linking actions to particular structures, nor does it disclose or render obvious providing a user interface enabling selection of the action "by causing the output device to display a pop-up menu of the linked actions."

*Newton Programmer's Guide*

Samsung's Exhibit B-5 purports to describe Newton Programmer's Guide ("Newton"). Samsung has not met its burden to demonstrate that Newton is prior art under 35 U.S.C. § 102. Also, as described below, Samsung has not met its burden to demonstrate that Newton anticipates the asserted claims of the '647 patent.

Claim 1

-120-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

Case No. 12-CV-00630-LHK (PSG)

APPLE'S SUPPLEMENTAL RESPONSES TO SAMSUNG'S INTERROGATORIES (NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)

Samsung has not met its burden to establish that Newton discloses all of the limitations in claim 1.  For example, if the preamble is considered a limitation, Samsung fails to establish that the Newton "system" comprises a "computer-based system for detecting structures in data and performing actions on detected structures."  As the '647 Patent makes clear, the term "structure" means "an instantiation of a pattern in the document," where a "pattern" "refers to data, such as grammar, regular expression, string, etc., used by a pattern analysis unit to recognize information in a document, such as dates, addresses, phone numbers, names, etc."  '647 Patent, 1:27:32.  Newton does not disclose causing a CPU to perform a sequence of operations on a detected structure to which it is linked.  See '647 Patent, 2:31-47.  ("Each action is a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked.").

For further example, Samsung does not establish that Newton discloses "an analyzer server for detecting structures in the data, and for linking actions to the detected structures."  While the Newton Intelligent Assistant will recognize a small set of verbs, it does not link actions to any detected structures within the meaning of the '647 Patent.  Instead, the Intelligent Assistant attempts to complete a task specified by the user.  Newton, at 11-2.  It does so by requiring the user to enter a verb, such as "call" or "fax," and the pressing a button marked "Assist" on the device running the Newton operating system.  Newton, at 1-9-10.  If the user does not provide a verb that the Intelligent Assistant understands, the Intelligent Assistant requires them to pick one.  Newton, at 11-2.  In this way, Newton's Intelligent Assistant is much like a command-line interpreter, or a program that is designed simply to read lines of text entered by a user. This is not the functionality disclosed in the '647 Patent.

-121-

For further example, Samsung fails to establish that Newton discloses a user interface enabling the selection of a detected structure and a linked action for at least the reason that Newton does not disclose linking actions to detected structures, as explained above.  Neither the call menu nor the fax menu enable the selection of a linked action that causes the CPU to perform a sequence of operations on the structure to which it is linked.  In addition, Newton does not disclose enabling the selection of a detected structure.  In the cited examples, the Intelligent Assistant is not activated unless the user hits the "Assist" button, at which point the Intelligent Assistant would retrieve any text the user recently wrote.  Even assuming that the Intelligent Assistant detected structures in this text, at no point did it allow the user to "select" a detected structure.  At most, if the Assistant does not understand a particular command entered by the user, it will prompt the user to resolve the ambiguity.  Newton at 11-2.  Asking the user to clarify which person he or she intended to contact is clearly not the same as "enabling the selection of a detected structure" among multiple detected structures, pulled from the text of a document, as taught by the '647 Patent.

By way of further example, Samsung does not establish that Newton practices "performing the selected action linked to the selected structure" for at least the reason described above that it does not disclose linking actions to the detected structures or selecting a linked action.  For further example, the Newton system does not disclose "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines" for at least the reason that the Newton system does not disclose the claimed program routines for the reasons described above.

Claim 4

-122-

As claim 4 ultimately depends from claim 1 Newton does not anticipate claim 4 for at least the reasons stated above with respect to claim 1.  For further example, the alleged analyzer server of the Newton system does not include grammars for detecting structures in the data.  Samsung fails to cite to any disclosure of detecting structures in data that is used by the Intelligent Assistant.

Claim 6

As claim 6 ultimately depends from claim 1 Newton does not anticipate claim 6 for at least the reasons stated above with respect to claim 1.  For further example, as discussed above Newton does not disclose detecting "structures" within the meaning of the patent, nor does it disclose including a string library and fast string search for allegedly "detecting structures."

Claim 8

As claim 8 ultimately depends from claim 1 Newton does not anticipate claim 8 for at least the reasons stated above with respect to claim 1.  For further example, the Newton system does not disclose "highlight[ing] detected structures."  Placing allegedly detected structures into a "task slip view" (i.e., a simple dialog box) is clearly contrary to the plain meaning of "highlights."

Claim 9

As claim 9 ultimately depends from claim 1 Newton does not anticipate claim 9 for at least the reasons stated above with respect to claim 1.  For further example, Newton does not disclose linking actions to particular structures, nor does it disclose providing a user interface enabling selection of the action "by causing the output device to display a pop-up menu of the linked actions."

-123-

1

*Pandit (U.S. Patent No. 5,859,636)*

2

Samsung's Exhibit B-12 purports to describe U.S. Patent No. 5,859,636 ("Pandit").

3

Samsung has not met its burden to demonstrate that Pandit is prior art under 35 U.S.C. § 102.

4

The inventions disclosed in the '647 patent were conceived of before the priority date of

5

Pandit and were diligently reduced to practice.  Also, as described below, Samsung has not

6

met its burden to demonstrate that Pandit anticipates the asserted claims of the '647 patent.

7

8

Claim 1

9

Samsung has not met its burden to establish that Pandit discloses all of the limitations

10

in claim 1.  For example, if the preamble is a limitation, Samsung fails to establish that

11

Pandit comprises a "computer-based system for detecting structures in data and performing

12

actions on detected structures."  As the '647 Patent makes clear, the term "structure" means

13

"an instantiation of a pattern in the document," where a "pattern" "refers to data, such as

14

grammar, regular expression, string, etc., used by a pattern analysis unit to recognize

15

information in a  document, such as dates, addresses, phone numbers, names, etc." '647

16

Patent, 1:27:32.  Pandit does not disclose causing a CPU to perform a sequence of operations

17

on a detected structure to which it is linked.  *See* '647 Patent, 2:31-47.  ("Each action is a

18

computer subroutine that causes the CPU to perform a sequence of operations on the

19

particular structure to which it is linked.").  In fact, Pandit requires the user to manually

20

locate and accent the text the user wishes to act upon.

21

22

For further example, Samsung fails to establish that Pandit discloses "a memory

23

storing information including program routines," for at least the reason that Pandit does not

24

disclose the claimed program routines.

25

26

27

-124-

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE     Case No. 12-CV-00630-LHK (PSG)

APPLE'S SUPPLEMENTAL RESPONSES TO SAMSUNG'S INTERROGATORIES
(NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)

For further example, Samsung fails to establish that Pandit discloses detecting structures in data.  Pandit does not disclose detecting structures in the data, but instead requires the user to manually find text that may contain a structure.  Pandit repeatedly states that the user must first "accent," or find, a piece of text before the Pandit's system operates on that piece of text.  *See, e.g.*, Pandit, 1:8 ("The invention recognizes the accented text . . ."), cl. 1 ("recognizing the selected text as belonging to . . .").  Further evidencing that Pandit is limited to the user manually finding unrecognized text, as opposed to program routines finding and identifying instances of a pattern that have semantic significance, is a preferred embodiment of the patent: "In a preferred embodiment, in the event the accented text is not recognized, i.e., the text is not of the specific type or class recognizable by any of the libraries provided, a menu bar having a list of one or more menu names of default operations can be made to appear (step 27)."  Pandit, 3:23-27.  Additionally, Pandit consistently states that it attempts to recognize "the accented text" and not structures within the accented text.  Pandit, 2:8; *see also* Pandit, 2:33-35 ("The pull-down menus . . . relate to the class of accented, highlighted, or otherwise indicated."), 2:36-37 ("FIG. 1a where date 11 has been accented and recognized by the invention . . ."), 3:19-20 ("in response to accenting and subsequent recognition of a URL . . ."), col. 3:23-27 ("in event the accented text is not recognized, i.e., the text is not of the specific type or class recognizable by any of the libraries provided . . ."), cl. 1 ("recognizing the selected text as belonging to a predetermined class . . ."), figs. 1a-f.  The "finding" aspect of detecting requires that the alleged prior art locate structures within a body of text that includes more than just the single structure itself.  In the case of Pandit, the user must manually find a single, yet-to-be-recognized "structure."

-125-

As Pandit does not disclose finding additional structures within data, the patent does not disclose detecting structures.

For further example, Pandit does not disclose "detecting structures in the data." The plain and ordinary meaning of "structures" in claim 1 requires the analyzer server to be capable of detecting more than one structure in the data. As mentioned above, Pandit discloses that either the entire selected text is recognized or not; it therefore cannot detect more than one structure in the data. Pandit further does not disclose "an analyzer server for . . . linking actions to the detected structures" for at least the reason that structures are not detected in the accented text as described in the preceding paragraphs of this section.

By way of further example, Samsung fails to establish that Pandit discloses a user interface enabling the selection of a detected structure and a linked action, for at least the reason that Pandit does not disclose detecting structures as explained above. Moreover, even if Pandit discloses detecting structures, it does not disclose user interface program routines establishing the selection of a detected structure. The plain and ordinary meaning of "a user interface enabling the selection of a detected structure" requires that the user interface to enable selection of a structure that has already been detected. Furthermore, the plain and ordinary meaning of "selection" requires the user to pick or choose a detected structure; Pandit does not disclose picking or choosing a detected structure but accenting undetected text.

For further example, Pandit does not disclose action processor program routines for performing the selected action linked to the structure for at least the reasons described above and that it does not disclose selecting a detected structure. Additionally, Pandit does not disclose "a processing unit coupled to the input device, the output device, and the memory

-126-

for controlling the execution of the program routines" for at least the reason that Pandit does not disclose the claimed program routines as described above.

Claim 4

As claim 4 ultimately depends from claim 1 Pandit does not anticipate claim 4 for at least the reasons stated above with respect to claim 1.  For further example, Samsung fails to establish that Pandit discloses an analyzer server that includes a parser for detecting structures in the data for at least the reason that Pandit does not disclose detecting structures, as explained above.

Claim 6

As claim 6 ultimately depends from claim 1 Pandit does not anticipate claim 6 for at least the reasons stated above with respect to claim 1.  For further example, Pandit does not detect "structures" within the meaning of the patent, nor does it include a string library and fast string search for allegedly "detecting structures."

Claim 8

As claim 8 ultimately depends from claim 1 Pandit does not anticipate claim 8 for at least the reasons stated above with respect to claim 1.  For further example, Samsung fails to establish that Pandit discloses "highlight[ing] detected structures."  Indeed, Samsung fails to cite to any disclosure by Pandit where the user interface highlights detected structures.

Claim 9

As claim 9 ultimately depends from claim 1 Pandit does not anticipate claim 9 for at least the reasons stated above with respect to claim 1.  For further example, Pandit does not disclose linking actions to particular structures, nor does it disclose providing a user interface

-127-

enabling selection of the action "by causing the output device to display a pop-up menu of the linked actions."

*Perspective System / EO Personal Communicator System*

Samsung's Exhibit B-4 purports to describe Pensoft Perspective system software running on AT&T's EO Personal Communicator ("Perspective").  Samsung has not met its burden to demonstrate that Perspective is prior art under 35 U.S.C. § 102.  Also, as described below, Samsung has not met its burden to demonstrate that Perspective anticipates the asserted claims of the '647 patent.

<u>Claim 1</u>

Samsung has not met its burden to establish that Perspective discloses all of the limitations in claim 1.  For example, if the preamble is a limitation, Samsung fails to establish that Perspective comprises a "computer-based system for detecting structures in data and performing actions on detected structures."  None of the examples that Samsung provides, however, disclose "detecting structures in data and performing actions on detected structures," as discussed in more detail below.

For further example, Perspective does not practice or disclose "a memory storing information including program routines . . ." for at least the reason that Perspective does not contain the claimed program routines.

By way of further example, Perspective does not practice or disclose "an analyzer server for detecting structures in data, and for linking actions to the detected structures" at least because the Perspective software does not link detected structures (whether names, dates, or otherwise) to a particular operation or even a user profile; instead, the perspective software links only the screen area in which a name appears to, e.g., a profile entry in an

-128-

address book.  In addition, the only connection between this screen area and the profile entry is an integer index number: at no point are the actual characters in the name used to retrieve a profile.  Furthermore, opening a profile through Perspective is not an "action" that is "link[ed] . . . to the detected structures," i.e., names, dates, or even verbs, as required by this claim element.  This is no different than opening a contact, i.e., name, address, phone number, saved in Microsoft Outlook—no action is offered or performed when the contact is opened; rather, the information saved in the contact is merely displayed by the user.

For further example, to the extent Perspective creates any links to operations such as opening a profile, or dialing a phone number, these links are not to the actual name written by the user, but rather they simply associate a profile entry index to an area of the screen on the device running Perspective.  Utilizing a particular area on a device's screen is not the same as a "detected structure" within the meaning of the '647 Patent, given that the characters of the name are never actually used in any way during the course of the alleged action.  Utilizing location on the screen, rather than a structure, i.e., "a pattern in the document" ('647 Patent, 1:32-33), conflicts with the teaching of the patent, which states, for example, that an "[a]ction processor 250 retrieves the sequence of operations that constitute the selected action, that performs the sequence using the selected structure as the object of the selected action." '647 Patent, 4:54-57.  Perspective, therefore, does not disclose an "analyzer server" for "linking actions to the detected structures" because no actions are actually linked to any structures being detected in a document.

For further example, Perspective does not disclose a "user interface enabling the selection of a detected structure and a linked action" because: (1) the user interface does not actually enable "selection of a detected structure;" (2) the user interface does not actually

-129-

Case No. 12-CV-00630-LHK (PSG)

APPLE'S SUPPLEMENTAL RESPONSES TO SAMSUNG'S INTERROGATORIES
(NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)

enable the "selection of . . . a linked action;" and (3) because performing gestures does not constitute "selection of . . . a linked action."  As a first example, the alleged "structure" is not actually used to perform the operation specified by the user; instead the integer that was stored in the location on the screen selected by user is what is actually being used by Perspective to blindly retrieve a profile or initiate a dialer operation, regardless of whether that profile or phone number has anything to do with the original information displayed.  As a second example, the alleged "user interface" never actually displays potential selections for linked candidate actions, as described in the '647 Patent.  As the '647 Patent discloses, "[u]pons lection of [a detected] structure, user interface 240 presents and enables the selection of the linked candidate actions using any selection mechanism, such as a conventional pull-down or pop-up menu."  '647 Patent, 4:27-31.  Even in embodiments described in the '647 Patent that are not visually based (which Perspective clearly is), the user interface still "present[s] the structures and associated actions to the user" using, e.g., voice synthesis.  '647 Patent, 4:34-38.  As a third example, the plain and ordinary language of the limitation "user interface enabling the selection of a detected structure and a linked action" requires that the user interface enable the independent selection of a detected structure and a linked action.  This selection must be separate because the system of the '647 Patent links candidate actions that are specifically customized to the type of data that has been detected (e.g., a "dial action may be unique to detecting a telephone number, a "Navigate to" option may be unique to detecting a postal address, etc.).  The selection of the structure must therefore be performed first, before the user interface of the '647 Patent can present the user candidate actions to perform using the selected structure.  Samsung wrongly

-130-

alleges that a "detected structure" and a "linked action" can be "selected" simultaneously via the performance of a gesture on a screen.

By way of further example, Perspective does not disclose "an action processor for performing the selected action linked to the selected structure" because Perspective does not perform operations on the alleged "detected structure" itself.  As the '647 Patent makes clear, a detected structure must be linked to an action, i.e., "a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked." '647 Patent, 2:31-34.  To the extent Perspective detects a structure (e.g., a proper name), a linked action must be performed on that structure—not on other data or information that might be "associated" with that structure.  Perspective does not perform operations on a detected structure itself; rather, it performs operations on an area of the screen in which the detected structure appeared.  This leads to the situation in which the operations performed by Perspective may not even be associated in any way with the detected structure.

For further example, Perspective does not disclose "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines" for at least the reason that Perspective does not include the claimed program routines as described above.

Claim 4

As claim 4 ultimately depends from claim 1 Perspective does not anticipate claim 4 for at least the reasons stated above with respect to claim 1.  For further example, Samsung fails to establish that Perspective discloses an analyzer server that includes a parser for detecting structures in the data for at least the reason that Perspective does not disclose detecting structures, as explained above. Additionally, Perspective considers any characters

-131-

after a keyword as unmatched text; it does not contain a grammar for detecting proper names. Furthermore, Perspective can, at most, only find names of people that are already entered in the address book; this is, at most, string matching.  A list of strings is not a finite state grammar as distinguished by the '647 Patent.  '647 Patent, 1:28-29 ("such as a grammar, regular expression, string, etc.").  In the field of Computer Science, "finite state grammar" is not a commonly used phrase.  Instead, "grammar" is synonymous with "context-free grammar," as understood by one of ordinary skill at the time of the '647 Patent.  String matching does not satisfy the plain and ordinary meaning of "grammar."  In fact, the '647 Patent explicitly distinguishes string matching, regular expressions, and grammars.  '647 Patent, 1:28-29 ("'pattern' refers to data, such as a grammar, regular expression, string, etc.").

By way of further example, while Perspective does contain a parser, the mere presence of a recursive descent parser does not prove or indicate the existence of a grammar. The Perspective source code does not contain a grammar for detecting any of the alleged "detected structures."

Claim 6

As claim 6 ultimately depends from claim 1 Perspective does not anticipate claim 6 for at least the reasons stated above with respect to claim 1.  For further example, Perspective does not detect "structures" within the meaning of the patent, nor does it include a string library and fast string search for allegedly "detecting structures."

Claim 8

As claim 8 ultimately depends from claim 1 Perspective does not anticipate claim 8 for at least the reasons stated above with respect to claim 1.

-132-

Claim 9

As claim 9 ultimately depends from claim 1 Perspective does not anticipate claim 9 for at least the reasons stated above with respect to claim 1.  For further example, Perspective does not disclose linking actions to particular structures, nor does it disclose providing a user interface enabling selection of the action "by causing the output device to display a pop-up menu of the linked actions."

Pursuant to Fed. R. Civ. P. 33(d), additional information relevant to this interrogatory may be found at APLNDC630-0000069204-69324, APLNDC630-0000069325-69460, APLNDC630-0000169908-170218, and documents cited therein.

**U.S. Patent. No. 6,847,959**

*Metacrawler System*

Samsung's Second Amended Exhibit C-3 purports to describe a Metacrawler System ("Metacrawler"); however, Samsung has not met its burden that any version of Metacrawler constitutes prior art under 35 U.S.C. §§ 102(a), (b) or (g).  Samsung also appears to have improperly cobbled together at several different unauthenticated, non-public documents and source code to evidence this "system."  Samsung's reliance on numerous publications and non-public materials as a single anticipatory theory is improper.  For example, Samsung impermissibly combines several different versions and releases of software named in its chart as "MetaCrawler, HuskySearch, CLIO and Collaborative Index Enhancement (CIE)," and various publications but has failed to demonstrate how the cited references are combined into or describe a single system and has failed to demonstrate that the alleged system was "known or used by others in this country" or that the alleged system was "in public use or on sale in this country" and has failed to meet its burden  Metacrawler is therefore not prior art.

-133-

As claim 11 ultimately depends from claim 10, the combination of Windows Mobile 5 and Jin does not anticipate claim 11 for at least the reasons stated above with respect to claim 10.  Also, neither Windows Mobile 5 nor Jin teaches "displaying, within a respective single item in the list, a number indicating a plurality of consecutive missed telephone calls." Nor is there any motivation to combine Windows Mobile 5 with Jin, which relate to different technologies and which have different aims.

Claim 19

For all the reasons stated above, Samsung has not met its burden that Windows Mobile 5 anticipates claim 19 of the '760 patent.

For the reasons stated above, Samsung has also not met its burden to demonstrate that the combination of Windows Mobile 5 and Jin teaches (1) "a touch screen display," (2) "detecting a finger tap input," and (3) "receive a finger tap input in the second interactive displayed portion of the interactive displayed item, and immediately in response to that input to completely substituting display of the list of interactive items with display of contact information."  Nor is there any motivation to combine Windows Mobile 5 with Jin, which relate to different technologies and which have different aims.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 26:**

Subject to and without waiving the foregoing General and Specific Objections, in addition to its prior response, Apple notes that it incorporates all arguments of its experts as to the validity of the asserted Apple patents that will be provided according to the scheduling order in response to Samsung's expert opinions related to invalidity.

In addition, Apple notes that for the six patents that are still at issue in this matter and for those claims that are still at issue, the following additional reasons for validity are

-283-

provided (in addition to those set forth above).  Apple reserves the right to supplement this response with all arguments and points addressed by Apple's experts and for all patents for which additional discovery is still ongoing.

**U.S. Patent No. 5,946,647**

As explained in Apple's prior responses, Samsung has failed to demonstrate by clear and convincing evidence that various claim limitations, as properly construed, are met by the alleged prior art asserted under each of Samsung's invalidity theories.  With respect to certain of Samsung's invalidity references, Apple further responds as follows.

*Perspective System / EO Personal Communicator System*

Claim 1

Since the date of Apple's last response additional evidence has come to light demonstrating that the Perspective System / EO Personal Communicator System ("Perspective") does not disclose "an analyzer server for detecting structures in the data, and for linking actions to the detected structures" or "a user interface enabling the selection of a detected structure and a linked action," as taught in the '647 patent and required in claim 1. For example, Perspective does not detect "structures" or link any actions to "detected structures" within the meaning of the '647 patent.  Further, given that Perspective does not link "actions" to "detected structures," it does not perform "the selected action linked to the selected structure," as recited in claim 1.  *See* Depositions of Diana Cohen and Michael Schaffer and exhibits thereto.

Claim 9

Since the date of Apple's last response additional evidence has come to light demonstrating that Perspective fails to disclose a user interface that "enables selection of an

-284-

action by causing the output device to display a pop-up menu of linked actions," as required by claim 9.  *See* Depositions of Diana Cohen and Michael Schaffer and exhibits thereto.

*Mosaic System + MHonArc System*

Claim 1

Since the date of Apple's last response additional evidence has come to light demonstrating that the Mosaic System in combination with the MHonArc System (or either system alone) fails to invalidate the claims of the '647 patent.  *See* Deposition of Earl Hood and exhibits thereto and documents produced by or related to that witness or witnesses.  For example, Earl Hood's deposition testimony confirms that MHonArc does not disclose "an analyzer server for detecting structures in the data, and for linking actions to the detected structures" or a "user interface enabling the selection of a detected structure and a linked action," as taught in the '647 patent and recited in claim 1.  *See id.*  In particular, MHonArc does not "detect[] structures" or link actions to detected structures within the meaning of the '647 patent.  *See id.*  Further, given that MHonArc does not detect structures, it cannot perform any actions on "detected structures," as described in claim 1.  *See id.*

Moreover, Mosaic also does not disclose an "analyzer server for detecting structures in the data, and for linking actions to the detected structures" or "a user interface enabling the selection of a detected structure and a linked action" because it does not "detect[] structures in the data," as required by claim 1 of the '647 patent.  *See id.*  Rather, Mosaic merely recognizes HTML "tags" or "anchors" that MHonArc adds during the text-to-HTML conversion process.  *See id.*

Claim 4

-285-

As described above, since Apple's last response to this interrogatory, additional evidence has come to light demonstrating that the MHonArc and Mosaic systems, either alone or in combination, fail to "detect[] structures" within the meaning of the '647 patent, and thus they do not disclose an architecture "wherein the analyzer server includes grammars and a parser for detecting structures in the data," as described in claim 4.  *See* Deposition of Earl Hood and exhibits thereto and documents produced by or related to that witness.

Claim 6

As indicated above, since Apple's prior response to this interrogatory, additional evidence has come to light showing that the MHonArc and Mosaic systems, either alone or in combination, fail to "detect[] structures" within the meaning of the '647 patent, and thus they do not disclose an architecture "wherein the analyzer server includes a string library and a fast string search function for detecting string structures in the data," within the meaning of claim 6.  *See* Deposition of Earl Hood and exhibits thereto and documents produced by or related to that witness or witnesses.

Claim 8

Further, given the additional evidence described above, the MHonArc and Mosaic systems, either alone or in combination, fail to disclose an architecture "wherein the user interface highlights detected structures," as required in claim 8, because MHonArc and/or Mosaic fail to "detect[] structures" within the meaning of the '647 patent.  *See* Deposition of Earl Hood and exhibits thereto and documents produced by or related to that witness or witnesses.

*Sidekick System or Sidekick Version 1.5 Owner's Handbook (1985)*

Claim 1

-286-

Since Apple's last response to Interrogatory No. 26, additional evidence has come to light demonstrating that the Sidekick system and the *Sidekick Version 1.5 Owner's Handbook* (collectively, "Sidekick") both fail to disclose "detecting structures in data and performing actions on detected structures," as described in the preamble of claim 1 of the '647 patent, and fail to disclose "an analyzer server for detecting structures in the data, and for linking actions to the detected structures."   *See* Deposition of Lars Frid-Nielsen and exhibits thereto and documents produced by or related to that witness or witnesses.  Sidekick does not "detect[] structures in the data" within the meaning of the '647 patent, as it, at most, recognizes only a single type of data (phone numbers); allows, at most, only one type of action associated with each phone number; and requires a series of user prompts to highlight a single phone number at any given time.  *See id.*

Claim 9

Additionally, since Apple's prior response to this interrogatory, additional evidence has come to light showing that Sidekick does not disclose an architecture "wherein the user interface enables the selection of an action by causing the output device to display a pop-up menu of the linked actions," as taught in the '647 patent and required in claim 9.  *See* Deposition of Lars Frid-Nielsen and exhibits thereto and documents produced by or related to that witness or witnesses.

*Embedded Buttons System*

Claim 1

Additional evidence has also come to light demonstrating that the Embedded Buttons System does not anticipate or render obvious the asserted claims of the '647 patent because, for example, it does not disclose or teach program routines for "detecting structures in the

-287-

data" or "linking actions to the detected structures," as required in claim 1 of the '647 patent. *See* Deposition of Eric Bier and exhibits thereto and documents produced by or related to that witness or witnesses.

Claim 4

As described above, since the Embedded Buttons System does not disclose or teach "detecting structures in the data," as required by claim 1 of the '647 patent, it cannot disclose an architecture "wherein the analyzer server includes grammars and a parser for detecting structures in the data," as described in claim 4.  *See* Deposition of Eric Bier and exhibits thereto and documents produced by or related to that witness or witnesses.

Claim 6

Further, as indicated above, given that the Embedded Buttons System does not "detect[] structures in the data," as required by claim 1, it does not disclose an architecture "wherein the analyzer server includes a string library and a fast string search function for detecting string structures in the data," within the meaning of claim 6.  *See* Deposition of Eric Bier and exhibits thereto and documents produced by or related to that witness or witnesses.

Claim 8

Finally, the Embedded Buttons System fails to disclose an architecture "wherein the user interface highlights detected structures," as required in claim 8, because the Embedded Buttons System fails to "detect[s] structures" within the meaning of the '647 patent.  *See* Deposition of Eric Bier and exhibits thereto and documents produced by or related to that witness or witnesses.

**U.S. Patent No. 7,761,414**

-288-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE

Case No. 12-CV-00630-LHK (PSG)

APPLE'S SUPPLEMENTAL RESPONSES TO SAMSUNG'S INTERROGATORIES (NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)

1

2    Dated:  July 15, 2013                      By:   /s/ H. Mark Lyon

3    _____

     JOSH A. KREVITT (CA SBN 208552)
4    jkrevitt@gibsondunn.com
     H. MARK LYON (CA SBN 162061)
5    mlyon@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP
6    1881 Page Mill Road
     Palo Alto, California 94304-1211
7    Telephone: (650) 849-5300
     Facsimile: (650) 849-5333

8    HAROLD J. MCELHINNY (CA SBN 66781)
     hmcelhinny@mofo.com
9    MICHAEL A. JACOBS (CA SBN 111664)
     mjacobs@mofo.com
10   RICHARD S.J. HUNG (CA SBN 197425)
     rhung@mofo.com
11   MORRISON & FOERSTER LLP
     425 Market Street
12   San Francisco, California  94105-2482
     Telephone:  (415) 268-7000
13   Facsimile:  (415) 268-7522

14   MARK D. SELWYN (SBN 244180)
     (mark.selwyn@wilmerhale.com)
15   WILMER CUTLER PICKERING
       HALE AND DORR LLP
16   950 Page Mill Road
     Palo Alto, California 94304
17   Telephone:  (650) 858-6000
     Facsimile:  (650) 858-6100

18

19   WILLIAM F. LEE (admitted pro hac vice)
     (william.lee@wilmerhale.com)
20   WILMER CUTLER PICKERING
       HALE AND DORR LLP
21   60 State Street
     Boston, Massachusetts 02109
22   Telephone:  (617) 526-6000
     Facsimile:  (617) 526-5000

23   **Attorneys for Plaintiff and Counterclaim-**
     **Defendant Apple Inc.**
24

25

26

27                                 -322-

28   HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –          Case No. 12-CV-00630-LHK (PSG)
     SOURCE CODE
     _____
             APPLE'S SUPPLEMENTAL RESPONSES TO SAMSUNG'S INTERROGATORIES
                         (NOS. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, AND 41)