REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL

# EXHIBIT B-1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**INITIAL EXPERT REPORT OF DR. TODD C. MOWRY REGARDING INFRINGEMENT OF U.S. PATENT NO. 5,946,647**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**<br><br>**GOOGLE'S HIGHLY CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY— SOURCE CODE** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Counterclaim-Plaintiffs,<br>    v.<br><br>APPLE INC., a California corporation,<br>        Counterclaim-Defendant. | |

INITIAL EXPERT REPORT OF DR.TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY
SOURCE CODE

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

# TABLE OF CONTENTS

I.   EXECUTIVE SUMMARY ........................................................................... 1

II.  INTRODUCTION ................................................................................ 10

III. BASES OF OPINIONS ........................................................................ 12

     A.   Qualifications .......................................................................... 12

     B.   Materials Considered ............................................................. 15

IV.  RELEVANT LEGAL PRINCIPLES AND GUIDELINES ........................... 16

     A.   Claim Construction ................................................................ 16

     B.   Infringement .......................................................................... 17

V.   OPINIONS REGARDING U.S. PATENT NO. 5,946,647 ........................ 18

     A.   Overview of the '647 Patent ................................................... 18

     B.   Asserted Claims of the '647 Patent ........................................ 20

     C.   Person of Skill in the Art ....................................................... 21

     D.   Claim Analysis ....................................................................... 21

          1.   "analyzer server" ........................................................ 22

          2.   "linking actions to the detected structures" .............. 27

     E.   Importance of the Patented Technology ................................. 29

VI.  OVERVIEW OF THE SAMSUNG ACCUSED PRODUCTS ........................ 33

     A.   The Android Operating System ............................................... 33

     B.   Samsung Accused Products .................................................... 34

     C.   Samsung Entities .................................................................... 40

VII. INFRINGEMENT OF THE '647 PATENT ............................................. 42

     A.   Infringement by the Accused Browser Products ...................... 42

          1.   Overview of the Android Browser ............................... 42

          2.   The Browser Has Already Been Found to Infringe the '647 Patent ........ 42

          3.   Infringement of Claim 1 of the '647 Patent ................ 44

INITIAL EXPERT REPORT OF DR. TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          i

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY
SOURCE CODE

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

3.  **Infringement of Claim 4 of the '647 Patent** ................................................. 62

4.  **Infringement of Claim 6 of the '647 Patent** ................................................. 62

5.  **Infringement of Claim 8 of the '647 Patent** ................................................. 64

6.  **Infringement of Claim 9 of the '647 Patent** ................................................. 65

B.  **Infringement by the Accused Messaging Products** ................................... 66

1.  **Overview of the Messaging Application** .................................................... 66

2.  **Infringement of Claim 1 of the '647 Patent** ................................................. 72

7.  **Infringement of Claim 4 of the '647 Patent** ................................................. 85

8.  **Infringement of Claim 6 of the '647 Patent** ................................................. 86

9.  **Infringement of Claim 8 of the '647 Patent** ................................................. 86

10. **Infringement of Claim 9 of the '647 Patent** ................................................. 87

B.  **Samsung's Non-Infringement Arguments and Alleged Non-Infringing Alternatives** ................................................................................................. 88

1.  **Samsung's Non-Infringement Arguments** .................................................. 88

2.  **Samsung's purported non-infringing alternatives** ................................... 107

C.  **Indirect Infringement** ............................................................................... 112

VI. **USE BY APPLE OF THE '647 PATENTED TECHNOLOGY** ...................... 115

VI. **CONCLUSION** ............................................................................................... 118

INITIAL EXPERT REPORT OF DR. TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          ii

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY
SOURCE CODE

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

## I.      EXECUTIVE SUMMARY

1.      This report contains my opinions related to infringement of U.S. Patent No. 5,946,647

("the '647 Patent") by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and

Samsung Telecommunications America, LLC (collectively, "Samsung").  Samsung sells smartphones

and tablets in the United States that run on the Android platform ("Android" or "Android OS")

developed by Google, Inc. ("Google").   It is my opinion that certain of Samsung's Android-based

smartphones and tablets infringe the '647 Patent through the pre-installed Browser and Messaging

applications.

2.      The '647 Patent relates generally to detecting "structures" in data (for example,

telephone numbers, postal addresses, or email addresses in a document or a web page), and linking

actions to those detected structures (for example, launching a dialer with a detected phone number,

adding a detected phone number to a user's contacts, or composing an email with a detected email

address).  Figures 6 and 7 of the '647 Patent depict the detection of a structures in a document and the

display of a menu of candidate actions linked to the detected structure  (in this case, a phone number):



**FIG. 6**

**Detected Structures**

**FIG. 7**

**Linked Actions**

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)        1

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

3.       Through my analysis of source code, Samsung and Google documents, deposition testimony, and other materials, as well as the accused devices, it is my opinion that Samsung's accused devices infringe claims 1, 4, 6, 8, and 9 of the '647 Patent.  Specifically, these devices detect structures in webpages (as displayed in the pre-installed Browser application) and text messages (as displayed in the pre-installed Messaging application) and allow a user to select actions linked to the detected structures.  While the accused devices may run on a number of wireless carriers (*e.g.*, AT&T, Verizon, Sprint, etc.) denoted by different model numbers, there are absolutely no differences in the accused functionality among these carrier versions.  Samsung has identified no carrier-based differences, its corporate representative could identify no carrier-based differences in his deposition, and none of Samsung's identified non-infringement arguments (which, I explain below, are erroneous) is carrier-based.  Also, even taking into account Samsung's non-infringement arguments, some of which are based on major Android OS versions, all of the accused devices fall into one of two major groups based on Android OS version for each of the Browser and Messaging applications. Within these groups, the Accused Products infringe in an identical way.  For example, for the Browser, all Froyo, Gingerbread, and Ice Cream Sandwich devices infringe in the same way, and all Jelly Bean devices infringe in the same way.  Further, while within each Android operating system there may be sub-versions (*e.g.*, Android Jelly bean 4.1 may have sub-versions 4.1.1 and 4.1.2), there are no differences in the accused functionality among these sub-versions.  My analysis below in Section VII and the attached infringement charts (Ex. 3) demonstrate these similarities.

4.       This report is not the first infringement opinion I have rendered regarding infringement of the '647 Patent by Android-based devices.  During the ITC investigation *In the matter of Certain Personal Data and Mobile Communications Devices and Related Software*, Investigation No. 337-TA-710 ("the 710 Investigation"), I provided an opinion that certain Android-

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

based smartphones manufactured by HTC infringe claims 1 and 8 of the '647 Patent.  These

smartphones automatically detected structures in a web page displayed on the stock Android web

browser shipped with the device.  When a user selected a detected structure, the user is presented

with a menu of actions linked to the detected structure.  The screenshots below are exemplary of the

functionality I found to infringe the '647 Patent in the 710 Investigation.   The Administrative Law

Judge, and later the ITC, agreed with my conclusion that these devices infringed the '647 Patent.





| **Browser on HTC Droid Incredible showing detected phone number** | **Menu of linked actions** |

     5.     Also, in *Apple Inc. v. Motorola, Inc. and Motorola Mobility, Inc.*, Case No. 10-CV-

662 (W.D. Wis.), transferred to Case No. 1:11-cv-08540 (N.D. Ill) ("the *Motorola* litigation"), I

provided my opinion that certain Android-based smartphones manufactured by Motorola, Inc. and

Motorola Mobility, Inc. infringed claims 1 and 8 of the '647 Patent.  These devices automatically

detected structures in a web page displayed on the browser and provided a user with a menu of

actions linked to a particular detected structure.  My analysis of the browser on these devices was

identical to my analysis in the 710 Investigation.  In addition to the browser, these Motorola devices

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

infringed by, among other things, automatically detecting structures displayed in a messaging application and linking actions to those detected structures.

6.      I also submitted declarations during the preliminary injunction phase of this case providing my opinion that the Android-based Samsung Galaxy Nexus infringes claims 1 and 8 of the '647 Patent.  As I described in those declarations, the Samsung Galaxy Nexus, like the HTC and Motorola Android-based smartphones, automatically detects structures in web pages displayed on the browser and provides a user a menu of actions linked to a particular structure.  Below are screenshots of the accused functionality in the Galaxy Nexus that I provided in my declaration.  I understand that the Court, in granting Apple's motion for preliminary injunction, found that Apple had shown a likelihood of success in proving infringement by the Galaxy Nexus based on my analysis.




**Browser on Samsung Galaxy Nexus**          **Menu of linked actions**
**showing detected phone number**

7.      As I explain below, the Android browser application on the accused Samsung devices (the "Browser") is virtually identical to that found on the infringing HTC Android-based

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          4

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

smartphones, the Motorola Android-based smartphones, and the Android-based Samsung Galaxy Nexus.  Although most of the accused Samsung devices run on different Android-based operating system versions (codenamed Gingerbread, Ice Cream Sandwich, and Jelly Bean)[1] than those at issue in the 710 Investigation (codenamed Eclair and Froyo), my infringement analysis for the Browser in the Samsung accused products is essentially the same as, if not identical to, my analysis in the 710 Investigation.  There are no differences across carriers, and only minor differences across Android OS versions that do not affect my infringement opinions.  Indeed, I understand that Samsung does not contend that there are any relevant differences in my Browser analysis among the Froyo, Gingerbread, and Ice Cream Sandwich accused devices.  And although Samsung identifies one non-infringement argument unique to the Browser on Jelly Bean devices, in my opinion Samsung is wrong and there is no difference in my infringement opinions.  Also, I understand that Samsung does not contend that there are any relevant differences among the different carrier versions.

8.      The similarity among the accused products is further illustrated by screenshots of the Browser.  For example, below are screenshots of the Browser on the AT&T Samsung Galaxy S III running Ice Cream Sandwich, the Verizon Mobile Galaxy S III running Jelly Bean, the Sprint Galaxy S II Epic 4G running Gingerbread, and the Samsung Dart running Froyo.  As illustrated below, while there have been some minor changes in the implementing source code, the relevant Browser operation is identical across device, carrier, and operating system version.[2]

---

[1]  One device, the Samsung Dart, runs Android version 2.2 (Froyo), which was an operating system at issue in the 710 investigation.

[2]  I include exemplary screenshots and images in my report and attached claim charts, and I reserve the right to provide additional screenshots or other demonstratives related to my opinions regarding the '647 Patent and the accused devices.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          5

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE




**AT&T Samsung Galaxy S III (Ice Cream Sandwich)**   **Verizon Samsung Galaxy S III (Jelly Bean)**




**Sprint Samsung Galaxy S II Epic 4G (Gingerbread)**   **T-Mobile Samsung Dart (Froyo)**

9.      Given these similarities, in my opinion, devices running Froyo, Gingerbread, and/or Ice Cream Sandwich infringe the '647 through the Android web browser in an identical way.  These devices include the Samsung Admire, Captivate Glide, Conquer 4G, Dart, Exhibit II 4G, Galaxy Nexus, Galaxy Note, Galaxy Rugby Pro, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III, Illusion, Stratosphere, and Transform Ultra.  In my analysis below, I use

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the Samsung Galaxy Nexus running Ice Cream Sandwich as a representative product for these devices.

10.     Also, the devices above that have been updated to the Jelly Bean version of Android and devices that have been released only on Jelly Bean infringe the '647 through the Android web browser in an identical way.  These devices include the Samsung Galaxy Nexus, Galaxy Note II, Galaxy Rugby Pro, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S III, and any other accused device that later updates to Jelly Bean.  I use the Samsung Galaxy S III running Jelly Bean as a representative product for these devices.

11.     In addition to the Browser, most of the accused devices come pre-installed with a Messaging application.  As I discuss in detail below, these devices infringe the '647 Patent by automatically detecting structures in text messages and providing the user a menu of linked actions, as illustrated in the representative screenshots below.



**Messaging app in Samsung Galaxy S III showing detected structures**



**Menu of linked actions**

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

12.     My analysis for the Messaging analysis is also substantially similar across devices, carriers, and operating system versions.   I understand that Samsung does not contend that there are any relevant differences among the different carrier versions of the accused devices.  And although Samsung identifies one non-infringement argument unique to the Messaging application on certain Gingerbread devices, in my opinion Samsung is wrong and there is no material difference in my infringement analysis.

13.     Given these similarities, in my opinion, certain of the accused devices running Froyo and/or Gingerbread infringe the '647 through the Messaging application in an identical way.  These devices include the Samsung Admire, Conquer 4G, Illusion, Stratosphere, and Transform Ultra.  In my analysis below, I use the Samsung Admire running Gingerbread as a representative product for these devices.

14.     Also, accused devices running the Ice Cream Sandwich and/or Jelly Bean version of Android infringe the '647 through the Android web browser in an identical way.  These devices include the Samsung Captivate Glide, Galaxy Note, Galaxy Note II, Galaxy Rugby Pro, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III, and Galaxy Tab 2 10.1, and any other accused device that later updates to Ice Cream Sandwich or Jelly Bean.  In my analysis below, I use the Samsung Galaxy S III running Jelly Bean as a representative product for these devices.

15.     I note that although it appears that Samsung has taken positions on the meaning of the asserted claims with which I disagree, the accused Samsung devices would also infringe under those (improper) claim constructions.  For example, Samsung has taken the position that the "analyzer server" element of claim 1 must be "separate from a client."  I understand that Samsung attempted to read in the same limitation in the "action processor" element during claim construction in this case,

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          8

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

and the Court rejected this construction in its claim construction order.  As I explain below, it is my opinion that the same reasons the Court relied on to reject this extra limitation for the "action processor" term apply similarly to the "analyzer server" term.  I also understand that Samsung has taken a position that the "linking" element of claim 1 should be construed narrowly to require a "specified connection"—a construction not supported by the intrinsic evidence.  In any event, as I found for the Samsung Galaxy Nexus during the preliminary injunction phase, it is my opinion that the other Samsung accused devices also infringe under either a proper claim construction or under Samsung's (improper) constructions.

16.     I also note that Samsung has identified several non-infringement arguments and purported non-infringing alternatives in its discovery responses.  Most of these arguments simply repeat arguments that have been advanced in other proceedings or previously in this case.  For example, ██████████████████████████████████████████████████████████████████████████████████████████████████████ I understand that in the *Motorola* litigation, Motorola made this very argument by summary-judgment motion, which was denied.  Samsung's expert also made this very argument during the preliminary injunction phase in this case, and I understand that the Court rejected this argument in light of my analysis that the Galaxy Nexus satisfied Samsung's construction of "analyzer server."

17.     As another example, Samsung appears to argue that the Accused Products do not meet the "analyzer server" element because there is no single routine that performs all of the claimed functions.  This argument is contrary to the court's claim construction order in the *Motorola* litigation, and the Court rejected this very argument during the preliminary injunction phase of this case.  I explain in detail below why I believe that all of Samsung's non-infringement arguments for the accused devices are without merit.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

18.     Also, Samsung's identified non-infringing alternatives (to the extent they are actually non-infringing) are clearly inferior to the technology claimed in the '647 Patent.  For example, Samsung argues that removing the "detecting" functionality altogether from the accused products constitutes a non-infringing alternative.  Of course, not detecting structures in data would avoid infringement, as well as all of the benefits of the invention.  For example, to do anything useful with a phone number in a web page, a user would have to manually find the phone number, manually select the entire number, copy it, open another application (such as a dialer), and paste the number into the new application.

19.     As another example, Samsung argues that only detecting a single type of structure (*e.g.*, only phone numbers), would avoid infringement.  The '647 Patent expressly noted these types of systems, and described how detecting multiple structures (*e.g.*, email addresses, postal addresses, etc.) was an improvement over these prior art systems.

20.     Finally, I provide below my opinion that Apple practices the '647 Patent.  I provided an extensive analysis of Apple's use of the '647 Patent technology in the 710 Investigation.  There, I understand that the ITC agreed with my analysis.  I also provided my opinions regarding Apple's practice of the '647 Patent during the preliminary injunction phase.  I understand that based on my analysis, the Court found that Apple practices the '647 Patent in its Order granting Apple's Motion for Preliminary Injunction.  *See* PI Order, at 85, 96.  I have updated my analysis based on new versions of iOS, Apple's mobile operating system, and conclude that Apple continues to practice the '647 Patent in the same way.

## II.     INTRODUCTION

21.     I have been retained by counsel for Apple, Inc. ("Apple") in *Apple Inc. v. Samsung Electronics Co., Ltd. et al*., Case No. 5:12-cv-00630-LHK (PSG) (N.D. Cal.) to provide analysis,

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

expert opinions, and testimony regarding the issue of infringement of the '647 Patent, including a discussion of the '647 Patent and the background technologies associated with the subject matter of this patent.  I have been asked to consider the design and operation of Samsung phones and other computing devices running versions of the Android platform, which are accused of infringing the '647 Patent (which I define below as "Samsung Accused Products" or "Accused Products").  I have also been asked to offer my opinions concerning whether the Samsung Accused Products infringe asserted claims 1, 4, 6, 8, and 9 of the '647 Patent (the "Asserted Claims").  Finally, I have been asked to offer my opinions concerning whether certain Apple devices practice the '647 Patent.

22.     This report sets forth my opinions and the bases for my opinions on the issue of Samsung's infringement and Apple's practice of the '647 Patent, including a summary and discussion of the '647 Patent, the design and operation of Samsung's phones and other computing devices that are accused of infringement, and the design and operation of certain Apple phones and other computing devices that practice the '647 Patent.  My analyses relating to infringement by the Samsung Accused Products are summarized in the claim charts for claims 1, 4, 6, 8, and 9 for the '647 Patent at Exhibit 3 to this report, which I incorporate by reference.

23.     I expect to testify at trial concerning these opinions, as well as any opinions provided in supplemental or rebuttal reports.  I also expect to rebut any opinions I disagree with that are provided by Samsung's expert(s) with respect to the '647 Patent, including but not limited to the opinions I express in this report and/or opinions expressed by Samsung's experts in their reports.

24.     My study is ongoing, and I reserve the ability to supplement or amend these opinions based on further discovery, including the production of additional evidence and depositions that have not yet been taken, as a result of further analysis, and in rebuttal or response to positions taken by Samsung and/or its experts, or to address any subsequent product developments by Samsung.

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

68.     I understand that the parties dispute the construction of two claim terms that are part of the same "analyzer server" claim limitation: an **analyzer server** for detecting structures in the data, and for **linking actions to the detected structures**.  The parties' proposed constructions are as follows:

| Term | Apple's Proposed Construction | Samsung's Proposed Construction |
|---|---|---|
| analyzer server | a program routine(s) that receives data, uses patterns to detect structures in the data, and links actions to the detected structure | a server routine separate from a client that receives data having structures from the client |
| linking actions to the detected structures | associating detected structures to computer subroutines that cause the CPU to perform a sequence of operations on the particular structures to which they are associated | creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure |

### 1.     "analyzer server"

69.     Based on my review of the intrinsic and extrinsic evidence, it is my opinion that Apple's construction is correct because one of ordinary skill in the art would consider Apple's construction consistent with how the "analyzer server" functionality is described in the intrinsic record of the '647 Patent.  In particular, for example, consistent with Apple's construction, the Summary of the Invention describes what the analyzer server does: it detects the data, parses the data to detect structures and links actions to the detected structure.  '647 Patent at 2:28-31.

70.     The function of "detecting structures" is distinct from the function of "linking actions" thereto, and one of skill in the art would recognize that the preferred manner for implementing these two functionalities would be with multiple program routines.  A person of ordinary skill in the art would understand based on the description of the "analyzer server" in the specification of the '647 Patent that the "analyzer server" requires that a large amount of functionality be embodied in software.  Further, for example, in the more detailed description of the preferred embodiment, the

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

specification describes the detection step as potentially using multiple pattern analyses units. '647 Patent at 3:61-64. ("Analyzer server 220 comprises one or more pattern analysis units, such as a parser and grammars or a fast string search function and dictionaries, which uses patterns to parse document 210 for recognizable structures.")  Any person of skill in the art who has written a parser, for example, would realize that it is a large and complex piece of software.  Further, Figure 10 shows structure detection occurring through grammars, string matching, and "other pattern analysis."  *See id.* at Fig. 10 and accompanying text.  Therefore, the detection piece alone is quite complex, and on top of that linking detected structures to actions is another complex task for the software, and it is different from pattern matching.  Therefore, one of ordinary skill in the art would understand that the multiple functionalities required of the analyzer server cannot be reasonably embodied in a single software subroutine.

71.     In addition, something that a lay person may not appreciate, but a person of ordinary skill in the art would necessarily understand, is that large pieces of software must be broken up into separate modules in order for the programming task to be tractable.  In my opinion, writing a single procedure that does everything described for the analyzer server without calling other procedures would be unthinkable for a person of ordinary skill.

72.     Further, the specification for the 647 Patent does not limit the "analyzer server" to a single program or software routine.  The claim language of the limitation in which the term "analyzer server" is found—"an analyzer server for detecting structures in the data and for linking actions to the detected structures"—shows that the analyzer server must include multiple software routines or subroutines because it performs multiple functions.  '647 Patent at claim 1.  Further, the specification consistently describes the analyzer server as a service that performs these multiple functions, and one of ordinary skill in the art would understand such service to involve much more than a single program

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

routine.  That is, the intrinsic record makes it clear that by "server" the inventors used this term in a generic sense intending to describe a service that includes various functionalities (such as, receiving the data, detecting the structure, and linking them to the candidate actions).  In fact, the claimed invention does not draw upon a narrow sub-field of computer science, but rather it brings together diverse computer science technologies that are rarely combined (*e.g.*, parsing, user interfaces, launching other applications via the operating system) and does so in a unique way.  Therefore, one of ordinary skill in the art would certainly read the description of the "analyzer server" and conclude that more than a single program routine is required for its claimed functionality of detecting and linking.

73.     The mention of plural program subroutine(s) in Apple's construction is also helpful because a lay person may not understand that the reference to a singular "program routine" in fact includes not only that specific routine, but also the code that that routine invokes while it executes.

74.     In addition to improperly limiting "analyzer server" to a single routine, I understand that Samsung has proposed that "analyzer server" be construed to mean "a server routine separate from a client."  As I describe above, the specification consistently describes the analyzer server as a service that performs the claimed functions.  The term "client" never appears in the entirety of the intrinsic record.

75.     To the extent that Samsung relies on Figure 1 to support its construction, specifically the separate boxes depicting the "program" containing the analyzer server and the "application," I note that this Figure depicts an embodiment of the invention, and I understand that claims are not properly limited to figures or abstract arrangements of boxes in figures.  Indeed, claim 1 makes no mention of an "application" at all; rather, dependent claims 3 and 10 claim the concurrent running of the application and the analyzer server.   I also note that in this case, Samsung relied on this very

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

argument based on Figure 1 to construe "action processor" as being "separate from a client," and the Court rejected that construction and reasoning.

76.     To the extent that Samsung relies on statements during prosecution to support its construction, Samsung has misunderstood the intrinsic record.  During the prosecution, the Examiner rejected several then-pending claims as being anticipated by U.S. Patent No. 5,574,843 to Gerlach et al. ("Gerlach"). April 28, 1998 Response ("Response") at 2.  Gerlach described a computer system for editing multimedia presentations in which the user was able to select icons on the screen to control the order and content of a presentation that is produced as a result of the user's editing. *Id.*  In response to the Examiner's rejection, Apple distinguished this piece of prior art by explaining repeatedly that the critical distinction between Gerlach and the '647 Patent's specification was that "structures" detected by the '647 Patent were entirely different from the "data structures" added to media files in Gerlach.  *Id.* at 1-6.  The Gerlach system involved adding "data structures" to media files, whereas linked list "data structures," which were internal to the Gerlach system, consisted of computer source code that specified the attributes of a media object and the manner of presenting the object, and the term "data structure" had the conventional meaning given to it in computer programming.  *See* Gerlach '843 Patent, at 36:12-14 ("Each data structure contains information describing one object and its attributes (e.g., coordinates for positioning on the display screen, width, height, and color)."); *Id.* at 3:36-45 ("Each one of the data structure includes an action identifier and a plurality of attributes. The process includes receiving a one of the plurality of data structures of the presentation, analyzing the received data structure to determine an action to be performed in response to the action identifier of the data structure, and performing the action corresponding to the action identifier in accordance with a plurality of the attributes of the received data structure"); *see also* Gerlach '843 Patent at 21:11-19 ("These icons are represented internally by event structures.  All

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

icons which cannot contain children are defined internally by command structures.  Command and event structures are similar with event structures being superset of the command structures.  While the complete details of these structures need not be described here the primary members are the parent list, the child list, the reference list, and the specific data pointer.")

77.     Apple explained that the Gerlach "data structures are generated and interpreted by, and totally internally to, Gerlach's system."  Response at 3.  The '647 Patent, however, uses the term "structures" in a different way, to instead refer to data with semantic significance to the user such as phone numbers, email addresses, post-office addresses, zip codes and dates, which come from an email or Word document and are analyzed by the patented system.  *See e.g.*, '647 Patent at 1:13-16 ("recognizable structures that have semantic significance such as phone numbers, email addresses, post office addresses, zip codes and dates").  That is, the '647 Patent's "structures can appear in any document or file and are generated externally to Applicants' system."  Response at 3, *see also id.* at 3-4, ("In fact ,the structures described in the claim language cited by the Examiner are internal linked list data structures that are never seen by the user and are therefore incapable of selection.  The selection process in Gerlach is directed to selecting files, icons and menus, not structures (*see* Figure 24, column 6 lines 31-32 and lines 48-49).  As discussed above, there is no teaching of detected structures as the term is used in Applicant's specification."); *id.* at 4 ("Figure 24 clearly shows that it is the icon, not a detected structure, that is selected and that the structure is generated in response to the icon selection. This is quite different from selecting a pre-existing structure detected from within externally generated data."); *id.* at 5, ("First, as discussed above, the structures used in Gerlach are linked lists that are internally generated and understood by the system. There is no concept of a detected structure in Gerlach.")

78.     The distinction Apple made is entirely consistent with my reading of the specification:

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the textual data received by the analyzer server is received from external sources and is not "internal" to the analyzer server.  That, however, does not mean by any stretch that the application like Word or email is a "client" and the analyzer server is a "server" in the traditional sense of client/server architectures in distributed systems.  I also note that in this case Samsung relied on this very argument based on the file history to construe "action processor" as being "separate from a client," and the Court rejected that construction and reasoning.

2. **"linking actions to the detected structures"**

79.     It is my opinion that Apple's construction for "linking actions to the detected structures" is consistent with the intrinsic record.  I agree with Apple that such construction should be helpful to the jury and that the intrinsic record makes clear that the meaning of this term is indeed "associating detected structures to computer subroutines that cause the CPU to perform a sequence of operations on the particular structures to which they are associated."  *See* '647 Patent at 2:31-34 ("Each action is a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked."); *see also id.* at 1:31-34; 2:36-41.  Further, Apple's construction defines "actions" directly from the "Summary of Invention" section of the specification of the patent.  '647 Patent at 2:30-41 ("Upon detection of a structure, the analyzer server links actions to the detected structure. Each action is a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked. An action may specify opening another application, loading the identified structure into an appropriate field, and closing the application. An action may further include internal actions such as storing phone numbers in an electronic phone book, addresses in an electronic address book, appointments on an electronic calendar, and external actions such as returning phone calls, drafting letters, sending facsimile copies and email, and the like.").

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

80.     Further, Apple relied upon this definition of an action during the prosecution history. In particular, Apple distinguished the claimed invention from prior art directed to linking data strings to other data strings, explaining "[t]he linked actions [in the 647 Patent] enable execution of an action (page 16, line 22 to page 17, line 1), which is a computer subroutine causing a CPU to perform a sequence of operations." Mar. 15, 1999 Response to Office Action, at 8. Apple therefore defined an action consistently in the specification and the prosecution history and this definition should govern.

81.     Samsung's construction—"creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure"— imports a specific, narrow, and improper requirement for how linking must be performed. Specifically, Samsung adds the requirement that "linking" means "creating a specified connection." One of ordinary skill in the art would not read this limitation into the claims. The '647 Patent does not use the word "link" to mean create a "specified" or "direct" connection." Instead, the '647 Patent consistently and repeatedly uses the words "link" and "associate" interchangeably. *See, e.g.*, '647 Patent at 1:66-2:2 (Description of the Background Art) ("Therefore, a system is needed that identifies structures, associates candidate actions to the structures, enables selection of an action and automatically performs the selected action on the structure."); 2:4-9 (Summary of the Invention) ("The present invention overcomes the limitations and deficiencies of previous systems with a system that identifies structures in computer data, associates candidate actions with each detected structure, enables the selection of an action, and automatically performs the selected action on the identified structure."); 2:12-20 (Summary of the Invention) ("The present invention has significant advantages over previous systems, in that the present system may incorporate an open-ended number and type of recognizable patterns, an open-

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

ended number and type of pattern analysis units, and further that the system may enable an open-ended number and type (i.e. scripts, macros, code fragments, etc.) of candidate actions to associate with, and thus perform, on each identified structure."); 3:38-44 (Detailed Description of the Preferred Embodiment) ("The program 165 of the present invention is stored in RAM 170 and causes CPU 120 to identify structures in the data presented by application 167, to associate actions with the structures identified in the data, to enable the user to select a structure and an action, and to automatically perform the selected action on the identified structure."); 4:34-38 (Detailed Description of the Preferred Embodiment) ("For example, in an audio environment, user interface 240 may present the structures and associated actions to the user using voice synthesis and may enable selection of a pattern and action using voice or sound activation.").

82.     To the extent that a connection is required, that connection is merely an association between a detected structure and candidate actions to be performed on that structure.  For example, the specification explains that "[u]pon identification of a structure in the text, parser 310 links the actions associated with the grammar to the identified structure . . . upon selection of the identified structure, user interface 240 can locate the linked actions.").  '647 Patent at 4:64-5:5.  Thus, the only linking that is required is between the detected structure and the candidate actions.

83.     Despite the disagreement regarding the proper construction of the Asserted Claims, as I explain below, the Samsung Accused Devices infringe under both Samsung's and Apple's constructions.  I reserve the right to provide further opinions regarding other claim terms should Samsung assert they have a particular meaning.

### E.     Importance of the Patented Technology

84.     As I described above, the invention of the '647 Patent is particularly useful in today's mobile devices, which often prevent multiple applications from being shown simultaneously.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

manufacturers, such changes would be made with a mind to maintain compatibility between the core system applications, new applications, and the same newer and older versions of the Android OS.  In other words, Samsung would be unlikely to change its version of Android in such a manner to make it incompatible with the expected functionality of the Android OS as a whole.

99.     In the course of my study, I have reviewed sections of source code from Android OS code base versions 2.2, 2.3, 4.0, 4.1, and 4.2 all accessible from http://android.git.kernel.org, or from http://source.android.com/, which is a website that is maintained by the Android Open Source Project.  *See* http://source.android.com/index.html.  I reserve the right to use portions of this code beyond those cited specifically in my expert report.  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

100.     ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

101.     In light of the similarities among Accused Products, I have identified certain products in my analysis below that are representative of my infringement analysis.  The Accused Browser Products fall into two groups: (1) devices running Froyo, Gingerbread, or Ice Cream

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          39

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Sandwich,[12] and (2) devices running Jelly Bean.[13]  Within each group, my infringement analysis is identical across devices, software releases, and carriers.

102.     The Accused Messaging Products also fall into two groups:  (1) devices running Froyo or Gingerbread,[14] and (2) devices running Ice Cream Sandwich or Jelly Bean.[15]  Again, within each group, my infringement analysis is identical across devices, software releases, and carriers.

103.     I reserve the right to supplement this report to accuse additional products in the event that Samsung makes, uses, sells, offers for sale, or imports other mobile devices running the Android OS that it has not yet identified or provided sufficient information for during discovery, or that are developed subsequent to this report.

### C.     Samsung Entities

104.     I understand that Samsung Electronics Co., Ltd. ("SEC") imports into the United States and sells the accused devices to Samsung Electronics America, Inc. ("SEA"), Samsung Telecommunications America, LLC ("STA"), and certain employees of Google Inc.   *See, e.g.,* Cheong 06/24/2013 Dep. Tr. at 19:4-20:23, 66:18-69:3, 76:24-77:8; SAMNDCA630-06643293

---

[12]  These devices include the Samsung Admire, Captivate Glide, Conquer 4G, Dart, Exhibit II 4G, Galaxy Nexus, Galaxy Note, Galaxy Rugby Pro, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III, Illusion, Stratosphere, and Transform Ultra.  In my analysis below, I use the Samsung Galaxy Nexus as a representative product for these devices.

[13]  These devices include the Samsung Galaxy Nexus, Galaxy Note II, Galaxy Rugby Pro, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S III, and any other accused device that later updates to Jelly Bean.  I use the Samsung Galaxy S III as a representative product for these devices.

[14]  These devices include the Samsung Admire, Conquer 4G, Illusion, Stratosphere, and Transform Ultra.  In my analysis below, I use the Samsung Admire as a representative product for these devices.

[15]  These devices include the Samsung Captivate Glide, Galaxy Note, Galaxy Note II, Galaxy Rugby Pro, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III, and Galaxy Tab 2 10.1, and any other accused device that later updates to Ice Cream Sandwich or Jelly Bean.  In my analysis below, I use the Samsung Galaxy S III as a representative product for these devices.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

██████████████████████████████████████████████████████████

████████████████████████████████  *See* Sheppard 01/24/2012 1843 Dep. Tr. at 62:18-63:1.

## VII.    INFRINGEMENT OF THE '647 PATENT

107.    I understand that Apple asserts that the Samsung Accused Products infringe claims 1, 4, 6, 8, and 9 of the '647 Patent.  The following discussion includes my analysis of how the Samsung Accused Products meet each limitation of the Asserted Claims.

### A.    Infringement by the Accused Browser Products

#### 1.    Overview of the Android Browser

108.    █████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████████████████

109.    In addition, Google corporate representatives submitted declarations and testified in this case that the accused Browser functionality has existed in Android since at least version 1.5 (Cupcake), and that there have been no changes in the accused functionality at least through Android version 4.0 (Ice Cream Sandwich) that are relevant to infringement of the '647 Patent.  *See* April 23, 2012 Declaration of Cary Clark ("Clark Declaration"), ¶ 26 ; April 23, 2012 Declaration of Dianne Hackborn ("Hackborn Declaration"), ¶ 14 .  I agree that there are accused functionality in the Accused Browser Products does not vary across Android OS versions.

#### 2.    The Browser Has Already Been Found to Infringe the '647 Patent

110.    The same web browser that is found in the Froyo, Gingerbread, and Ice Cream Sandwich versions of the Samsung Accused Devices was found to infringe claims 1 and 8 of the '647

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          42

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Patent when used in HTC's devices during the ITC investigation *In the matter of Certain Personal Data and Mobile Communications Devices and Related Software*, Investigation No. 337-TA-710 (*See* Ex. 15 to my Feb. 6, 2012 Declaration ("Initial Determination"), at 1, 133.)   I understand both the finding of infringement and the reasoning were affirmed by the Commission in the Final Determination.  (*See* Ex. 16to my Feb. 6, 2012 Declaration ("Commission Opinion"), at 31.)

111.    During the aforementioned investigation, the ITC found that the stock Android web browser application provided with HTC's accused products infringed at least claims 1 and 8 of the '647 Patent (*See* Initial Determination at 133-157).  I understand this was confirmed by the Commission in the Final Determination (*See* Commission Opinion at 31).

112.    ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████

113.    ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████

114.    Also, during the preliminary injunction phase of this case, I submitted declarations in support of Apple's Motion for Preliminary Injunction in which I found that the Browser on the Samsung Galaxy Nexus running Android OS version 4.0 (Ice Cream Sandwich) infringed claims 1 and 8 of the '647 Patent.  As stated in those declarations, my infringement analysis was identical in

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

all relevant respects to my analysis of the HTC Android phones found to infringe the '647 Patent.

115.　　I understand that in her Order granting Apple's Motion for Preliminary Injunction, the Court found, based on my analysis, that Apple had shown a likelihood of success of establishing infringement of claims 1 and 8. Again, in my opinion the Browser application on Jelly Bean devices infringes in a substantially similar way.

### 3. Infringement of Claim 1 of the '647 Patent

116.　　As an exemplary Accused Browser Product, I have described below the Samsung Galaxy Nexus running Android OS version 4.0.4 (Ice Cream Sandwich). I note that my description of the accused functionality below is consistent with the descriptions given by Google employees during the preliminary injunction phase. *See* Clark Declaration; Hackborn Declaration. Unless otherwise specified, my analysis for this representative device is identical in all respects to the other Accused Browser Products identified above. For certain relevant Jelly Bean source code files and methods, I describe the Samsung Galaxy S III running Jelly Bean. My analyses relating to infringement of all of the Samsung Accused Products are summarized in the claim charts at Exhibit 3.

### a. Claim 1 – Preamble to claim: "A computer-based system for detecting structures in data and performing actions on detected structures"

117.　　I understand that the preamble to a patent claim may or may not be limiting with regards to the scope of the claim. I do not provide an opinion as to whether or not the preamble to claim 1 of the '647 Patent is limiting. I do, however, opine that to the extent the preamble is a limitation, this limitation is met by the Samsung Accused Products. Thus, in my opinion, the Samsung Accused Products are computer-based systems for detecting structures in data and performing actions based on the detected structures.

118.　　Today's smartphones are more powerful than consumer computers from the mid-

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1990s.  By way of a representative example, the Samsung Galaxy Nexus contains a dual-core 1.2

GHz processor, 1 Gigabyte of random-access memory (RAM), 32 Gigabytes of memory for storage,

a 4.65-inch 1280 x 720-pixel Super AMOLED HD touchscreen display, and Wi-Fi and Bluetooth

connectivity.  (APLNDC630-0000879778 at APLNDC630-0000879778-79 (Samsung Galaxy Nexus

– Sprint); APLNDC630-0000879780 at APLNDC630-0000879780-81 (Samsung Galaxy Nexus –

Verizon); APLNDC630-0001903913 at APLNDC630-0001903913-15 (Samsung Galaxy Nexus –

Unlocked), hereinafter "Galaxy Nexus Specifications.")  The processor found in the Samsung Galaxy

Nexus phone allows it to run a Linux-kernel operating system.  The Linux kernel was first created for

desktop computers, and today can be found on not only Samsung Galaxy Nexus phones but also on

more than 90% of the systems on the Top 500 supercomputers list. (http://i.top500.org/stats).  As

discussed below, the Samsung Accused Products detect structures in data and performing actions on

detected structures.

119.     Specifications and User Manuals detailing that the Accused Products are also

computer-based systems can be found at Accused Products Specifications and Accused Products

User Manuals, referenced above.

b.     **Claim 1 – (a) "an input device for receiving data;"**

120.     In my opinion, the Samsung Accused Products contain an input device for receiving

data.

121.     By way of a representative example, the Samsung Galaxy Nexus includes a

touchscreen that receives data inputted by the user.  In particular, it contains a 4.65-inch 1280 x 720-

pixel Super AMOLED HD touchscreen display. (Galaxy Nexus Specifications.)  The touchscreen not

only allows the user to interact with applications running on the phone but also allows the user to

enter text via an onscreen keyboard.  The user simply taps a letter on the keyboard, which is

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          45

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

interpreted as textual input.  The below screenshot from a Samsung Galaxy Nexus depicts the

onscreen keyboard:



**Samsung Galaxy Nexus Onscreen Keyboard**

122.    Another input device contained in every Samsung Android phone is a radio.  This

hardware can be found in all cellular phones as it is what enables the phone to communicate with the

cellular towers.  Using this radio, the Samsung Galaxy Nexus phones can receive data from a

network provider.  The Android operating system includes a Radio Interface Layer ("RIL") that

"provides an abstraction layer between Android telephony services (android.telephony) and radio

hardware." ( Radio Layer Interface, *available at* http://www.android.org/online-

pdk/guide/telephony.html).  The phones' radio and accompanying circuitry receive data that is used

by, for example, the Browser and Messaging applications.

123.    The Samsung Galaxy Nexus phones also include wireless Internet (Wi-Fi) adapters

that allow the phones to connect to wireless local area networks.  Galaxy Nexus Specifications.)

The wireless Internet adapters allow the phones to receive data, such as web pages, that can be loaded

by the WebKit framework.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

124.     The Browser application's WebKit framework receives data from the cellular and wireless local area networks to load and display webpages. (WebKit Package Summary, APLNDC630-0001906646- 48 *available at* http://developer.android.com/reference/android/webkit/package-summary.html).  WebKit, including its sub-component WebCore, is responsible for making http connections, downloading webpages, and rendering those pages for display.

125.     Specifications and User Manuals detailing that the Accused Products include input devices for receiving data can be found at Accused Products Specifications and Accused Products User Manuals, referenced above.

<blockquote>

c.     **Claim 1 – (b) "an output device for presenting the data,"**
</blockquote>

126.     In my opinion, the Accused Products include an output device for presenting the data.

127.     By way of a representative example, the Samsung Galaxy Nexus phone includes an output device for presenting the data.  As discussed and cited above, the Samsung Galaxy Nexus phone contains a touchscreen that displays the data to the user.

128.     Specifications and User Manuals detailing that the Accused Products include output devices for presenting the data can be found at Accused Products Specifications and Accused Products User Manuals, referenced above.

<blockquote>

d.     **Claim 1 – (c) "a memory storing information including program routines including:"**
</blockquote>

129.     In my opinion, the Accused Products contain a memory storing information including program routines.

130.     By way of representative example, the Samsung Galaxy Nexus phone contains 1 Gigabyte of random-access memory (RAM) and 32 Gigabytes of memory for storage.  Galaxy Nexus

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Specifications.)

131.    Specifications and User Manuals detailing that the Accused Products include a memory storing information including program routines can be found at Accused Products Specifications and Accused Products User Manuals, referenced above.

e.    **Claim 1 – (d) "an analyzer server for detecting structures in the data and for linking actions to the detected structures"**

132.    As discussed above, the parties do not agree on the proper construction of this claim element.  Regardless of whose construction is adopted, as I discuss below, it is my opinion that the Samsung Accused Products contain an analyzer server for detecting structures in data and for linking actions to the detected structures.  To assist the reader I have organized this part of my declaration into two sub-sections: the first on the analyzer server's detection of structures in data, the second on its linking of actions to the detected structures.  But to be clear, it is my opinion that the analyzer server for detecting structures in the data and for linking actions to the detected structures is a single claim element.

i    **"detecting structures in the data"**

133.

134.



---

16

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)        48

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



135.

136.

---

[17] Text nodes are free text within a webpage.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



137.

ii       **"linking actions to the detected structures"**

138.      The Samsung Accused Products also contain an analyzer server for linking actions to the detected structures.

139.

---

[18] There was some minor refactoring of the code beginning in Ice Cream Sandwich, which moved the bulk of the original onCreateContextMenu() method of the BrowserActivity class into a new Controller class, which is called directly by the onCreateContextMenu() method of the

*(Cont'd on next page)*

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)     50

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



140.

141.

_____

*(Cont'd from previous page)*

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          51

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



142.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          52

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

143. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

        iii     **Samsung Accused Products Infringe Under Samsung's Proposed Construction**

144.      In my opinion, the Samsung Accused products meet the "analyzer server" claim limitation even under Samsung's construction.

145. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

146. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)     53

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

147.     I note that in the preliminary injunction phase of this case, the Court found that Apple had shown a likelihood of success in proving infringement, including this element, under Samsung's proposed construction.

148.     For the entirety of this limitation, to the extent that this limitation is not met literally, in my opinion it is met under the Doctrine of Equivalents because the limitation and the corresponding components in the Accused Products corresponding to this limitation are insubstantially different.  In particular, the function of this claim limitation is to locate structures of interest – such as telephone numbers, email addresses, and postal addresses – in data received by a device, and to allow a user to select structures in an application and launch a desired linked action on the structure. The corresponding components in the Accused Browser Products perform substantially that same function.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          54

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

149.     This function is performed substantially the same way as that of the claim limitation. Specifically the claim limitation performs its function by locating instances of email addresses, telephone numbers, and postal addresses in data, and allowing a user to select these structures and candidate linked actions to launch using the structures. The corresponding components in the

150.     The claim limitation and the corresponding components in the Accused Browser Products achieve substantially the same result.  Specifically, the result of this claim limitation is the detection of instances of data patterns (structures) on which a user may want to perform actions, and associating with the structures linked actions to perform on them. This result is substantially the same in the corresponding components in the Accused Products

151.     Also, with regard to Samsung's proposed construction, Samsung's expert during the preliminary injunction phase, Dr. Cohen, argued for invalidity purposes that even though a particular prior art system's "analyzer server" element is not "separate" from the client under his narrow interpretation, such a distinction is a mere "design choice."  Cohen Decl., ¶ 171.  He also admitted in his deposition that there is no fundamental difference in the implementation of the "analyzer server" as separate processes versus the same process.  (Cohen Tr.), 224:18-225:21.  Similarly, for invalidity

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)         55

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

purposes, Dr. Cohen argues that "creating a specified connection" would have been obvious given one of ordinary skill in the art's familiarity with the use of "pointers," a "standard technique" at the time.  See, e.g., Cohen Decl., ¶ 128.

152.     Thus, the Samsung Accused Products operate in a manner insubstantially different from providing a "program routine separate from a client" and "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure."  The Samsung Accused Products perform substantially the same function, in substantially the same way, to produce substantially the same result as this claim limitation, as one of skill in the art would understand it.

                f.     **Claim 1 – (e) "user interface enabling the selection of a detected structure and a linked action"**

153.     The Accused Browser Products contain program routines that provide a user interface that enables the selection of a detected structure and a linked action.

154.     The below figures consist of three images of the Browser application on a Samsung Galaxy Nexus running Android 4.0.   Figure (a) depicts a detected phone number that the user has begun to select through a long-press on the phone's touchscreen; (b) depicts a context menu of linked actions displayed to the user; and (c) depicts the phone application after the user has selected the linked "Dial" action.

**Browser on Samsung Galaxy Nexus running Android 4.0:**

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



**(a) user begins a long-press on a detected phone number in a webpage;**



**(b) a context menu of linked actions is displayed;**

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          57

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



**(c) selected action is performed**

155. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

156. ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)        58

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



157.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

158. ███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

g.      **Claim 1 – (f) "an action processor for performing the selected action linked to the selected structure"**

159.      In my opinion, the Accused Browser Products contain an action processor for performing selected actions linked to the selected structure.

160. ████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

161. ████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          60

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

h.    **Claim 1 – (g) "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines."**

162.    In my opinion, the Accused Products contain a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines.

163.    By way of representative example, the Samsung Galaxy Nexus contains a dual-core 1.2 GHz processor coupled to the input device, the output device, and the memory for controlling the execution of the program routines.  (*See* Galaxy Nexus Specifications.)  The processor is necessarily coupled to the output device, the touchscreen, as it must process the user's touches and processes instructions for displaying data.  The processor is also coupled to the memory of the Samsung Galaxy Nexus phone as the processor receives and acts on instructions from program routines loaded into memory.  The processor of the Samsung Galaxy Nexus phone also controls the execution of the program routines.  Finally, the processor is coupled to the input devices such as the touchscreen, radio, and memory containing the WebKit framework.

164.    Specifications and User Manuals detailing that the Accused Products include a processing unit coupled to the input device, the output device, and the memory for controlling the

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

execution of the program routines can be found at Accused Products Specifications and Accused Products User Manuals, referenced above.

### 3.    Infringement of Claim 4 of the '647 Patent

165.    Claim 4 recites, "The system recited in claim 1, wherein the analyzer server includes grammars and a parser for detecting structures in the data."

166.    It is my opinion that the Accused Browser Products infringe claim 4.  For the above reasons, the Accused Browser Products meet the requirement of a "system recited in Claim 1."  In addition, these products' analyzer server includes grammars and a parser for detecting structures in the data

### 4.    Infringement of Claim 6 of the '647 Patent

167.    Claim 6 recites, ""The system recited in claim 1, wherein the analyzer server includes a string library and a fast string search function for detecting string structures in the data."

168.    It is my opinion that the Accused Browser Products infringe claim 6.  For the above reasons, the Accused Browser Products meet the requirement of a "system recited in Claim 1."  In addition, these products' analyzer server includes a string library and a fast string search function for detecting structures in the data

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



**Messaging appliation on Samsung Galaxy S III – displaying pop-up menu of linked actions selectable by the user**

### B.   Samsung's Non-Infringement Arguments and Alleged Non-Infringing Alternatives

225.    I understand that in response to certain discovery requests by Apple, Samsung has identified certain bases for which it believes its products do not infringe the '647 Patent.  I also understand that Samsung has identified what it believes are non-infringing alternatives to the '647 Patent.  I have been asked to give my opinion regarding certain of these arguments.  I note that several of these purported non-infringement arguments are incomplete or otherwise unclear, but I have attempted to address them to the extent possible.  I also understand that some of these arguments were not raised until July 15, 2013, when Samsung served supplemental responses to certain of Apple's interrogatories.  I reserve the right to supplement my analysis should Samsung provide additional detail regarding their non-infringement arguments or purported non-infringing alternatives.

### 1.   Samsung's Non-Infringement Arguments

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          88

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

a.     **Samsung claims that the Accused Products lack an "analyzer server"**

226.     Samsung has stated in its interrogatory responses that the Accused Products lack "an analyzer server for detecting structures in the data, and for linking actions to the detected structures."

227.

228.     To the extent that Samsung argues that its construction requires the "analyzer server" routines to run in a separate process as the application, such a limitation is improper even under Samsung's construction.  During the preliminary injunction phase, Samsung's expert admitted that such an argument relies on a "strict" or "narrow" interpretation of Samsung's construction of "analyzer server."  Cohen Decl., ¶ 171; Ex. 10 (Cohen Tr.), 176:22-177:5, 221:19-222:5, 226:21-228:10, 234:24-235:9.  I

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          89

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

229. ██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

230. ██████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████

231. ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████ One of ordinary skill would not understand the

analyzer server to be so limited.  Again, I note that in the preliminary injunction phase of this case,

Judge Koh found that Apple had shown a likelihood of success in proving infringement based on my

analysis that the program routines described above for the Browser satisfied Samsung's construction

the "analyzer server" element, specifically rejecting this narrow interpretation of Samsung's

construction.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

232.        Finally, Samsung appears to argue that Accused Browser Products that use

████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████  Indeed, the '647 Patent

describes an embodiment in which structures are not detected when a document is first presented to

the user, but rather after a user initiates the analyzer server routines by clicking "Detect Structures."

*See* Fig. 5 and accompanying text.

233.        It appears Samsung relies on statements in the specification purportedly distinguishing

prior art systems where the user must identify information.  *See, e.g.,* '647 Patent, 1:19-23

("[V]isually searching data files or documents to find these structures is laborious and cognitively

disruptive, especially if the document is lengthy and hard to follow.   Furthermore, missing a

structure such as a date may lead to missing an important meeting or missing a deadline.").

Samsung, however, provides no basis for incorporating into the claims the requirement that structures

must be presented to the user.  Indeed, independent claim 8 requires highlighting of the detected

structures.  In certain cases, this may include visually indicating to the user the presence of a detected

structure.  There is no similar requirement in claim 1.  Even in the case of ████████████

████████████  the program routines I identify above detect structures in the text as required by

claim 1.

      b.  **Samsung claims that the Accused Products do not perform the**
        **claimed "linking"**

234.        Samsung has stated in its interrogatory responses that the Accused Products do not

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

perform the claimed "linking."  I disagree.

235.

236.

237.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

238.

239.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



240.

241.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          94

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

242.

243.     Chapter 7 of the textbook "Computer Systems: A Programmer's Perspective (2nd Edition)" ("Computer Systems"), by Bryant and O'Hallaron, is entitled "Linking".[26]  See below the first two sentences from that chapter:

> Linking is the process of collecting and combining various pieces of code and data into a single file that can be *loaded* (copied) into memory and executed.  Linking can be performed at *compile time*, when the source code is translated into machine code; at *load time*, when the program is loaded into memory and executed by the *loader*, and even at *run time*, by application programs."

Computer Systems, APLNDC630-0001911859, p. 654 (emphasis in original).

244.     Section 7.2 of this chapter is entitled "Static Linking", and it begins with the following sentence: "*Static linkers* such as the Unix ld program take as input a collection of relocatable object

---

[26]     I note that this textbook (and its 1st edition, which has a nearly identical Chapter 7, also entitled "Linking") has been widely adopted at many universities, including Carnegie Mellon University and Princeton University, for use in undergraduate courses that explain how computer systems work (http://csapp.cs.cmu.edu/public/adoptions.html).

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

files and command-line arguments and generate as output a fully linked executable object file that can be loaded and run."  Section 7.10 of this chapter is entitled "Dynamic Linking with Shared Libraries", and it begins with the following paragraph:

> The static libraries that we studied in Section 7.6.2 address many of the issues associated with making large collections of related functions available to application programs.  However, static libraries still have some significant disadvantages.  Static libraries, like all software, need to be maintained and updated periodically.  If application programmers want to use the most recent version of a library, they must somehow become aware that the library has changed, and then explicitly relink their programs against the updated library."

Computer Systems, p. 681.

245.     After discussing another disadvantage of static linking in the second paragraph (i.e. wasted memory space), the third paragraph of this section then says: "*Shared libraries* are modern innovations that address the disadvantages of static libraries.  A shared library is an object module that, *at run time*, can be loaded at an arbitrary memory address and linked with a program in memory. This process is known as *dynamic linking* and is performed by a program called a *dynamic linker*." Computer Systems, p. 682 (emphasis in original).  In section 7.11 of this chapter (entitled "Loading and Linking Shared Libraries from Applications"), it goes on to say: "Linux systems provide a simple interface to the dynamic linker that allows application programs to load and link shared libraries at run time."  Computer Systems, p. 684 (emphasis in original).  After an illustration that includes the interface code: "void *dlopen(const char *filename, int flag);", the book goes on to say: "The dlopen function loads and links the shared library filename.  The external symbols in filename are resolved using libraries previously opened with the RTLD_GLOBAL flag.  If the current executable was compiled with the –rdynamic flag, then its global symbols are also available for symbol resolution. The flag argument must include either RTLD_NOW, which tells the linker to resolve references to external symbols immediately, or the RTLD_LAZY flag, which instructs the linker to defer symbol

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

resolution until code from the library is executed.  Either of these values can be or'd with the

RTLD_GLOBAL flag." Computer Systems, at. p. 684 (emphasis in original).

246. ██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
█████████████████████████████

247. ██████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
█████████████

248. ██████████████████████████████████████
██████████████████████████████████
██████████████████████████████████

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1

2

3

4

5

6

7

8

9

10    249.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          98

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



c.

250.

251.

252.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



253.

254.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

255.

 

### d. Samsung claims that certain Accused Products lack an "analyzer server" under Apple's construction

256.      Samsung has stated in its interrogatory responses that the Accused Products that do not link multiple actions to a detected structure do not satisfy Apple's interpretation of the "analyzer server element."  As I have stated above, in my opinion, the '647 Patent requires that multiple actions (*e.g.*, Dial, Add to contacts) be linked to a detected structure (*e.g.,* a phone number).  I also note above that the court in *Motorola* disagreed with my interpretation, and so these products still infringe under the construction adopted in that case.

### e. Samsung claims that the Accused Products lack an "action processor"

257.      Samsung has stated in its interrogatory responses that the Accused Products lack "an action processor for performing the selected action linked to the selected structure."

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)    101

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

258.

259.



HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

260.     In both the Abstract and the Summary of the Invention, the '647 Patent uses similar language to describe the "action processor": "Upon selection of an action, the action processor *performs the action on the detected structure*." ('647 Patent Abstract, emphasis added); "When a candidate action is selected, the action processor *performs the selected action on the selected structure*." ('647 Patent, 2:51-53). In other words, the "action processor" is a software *mechanism* that is capable of performing *any* of the candidate actions. It is a static concept, meaning that you can identify it by pointing only to code and not to run-time data. ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████

261.     In contrast, an "action" is a dynamic concept that refers to a specific sequence of operations performed on a particular detected structure: *e.g.*, corresponding to "Call 415-555-1234", or "Email Jdoe@work.com". Hence, although "action" certainly involves a computer subroutine, it also implicitly includes any input data that is needed to exercise that computer subroutine such that it performs the appropriate sequence of operations on the appropriate detected structure (which at bare minimum would include the value of the structure itself) ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████

262.     The '647 Patent does not prohibit overlap between subroutines that comprise the action processor and subroutines that are the action. One reason why we observe some overlap

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

between code involved in the action processor and the code involved in the action in the Accused

Products is that one of the key principles of object-oriented programming (which is used extensively

in Android, and which was far less common back in the mid-1990's) is to achieve differentiated

behavior not by writing a new subroutine, but rather by having the same subroutine (or "method")

behave differently based upon runtime data ███████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ While it

would also be possible to implement the '647 invention with disjoint subroutines comprising the

action processor and the actions, the object-oriented programming style in Android leads to there

being overlap.

####   f.   Samsung claims that the Accused Products lack the claimed "memory"

263.   Samsung has stated in its interrogatory responses that the Accused Products lack the

claimed "memory."  Samsung appears to argue that the Accused Products lack the claimed "memory"

because the memory in the Accused Products does not store the claimed program routines (analyzer

server, user interface, and action processor).  For the reasons stated above, the Accused Products

contain all of these claimed program routines, and so also contain the claimed "memory" storing

these routines.

####   g.   Samsung claims that the Accused Products lack an "analyzer server" that includes grammars and a parser

264.   Samsung has stated in its interrogatory responses that the Accused Products lack

"grammars and a parser for detecting structures in the data" as required by claim 4.  To the extent this

argument is understandable, it appears to rely on Samsung's (erroneous) argument that products

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          104

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1

2

3

4

5

6

### h. **Samsung claims that the Accused Products lack an "analyzer server" with a string library and fast string search function.**

7    265.         Samsung has stated in its interrogatory responses that the Accused Products lack

8   "string library and a fast string search function for detecting string structures in the data" as required

9   by claim 6.  Samsung appears to argue that because Apple's infringement contentions point to the

10  same source code files and methods as satisfying both the "grammars and parser" element of claim 4

11  and the "string library and fast string search function" of claim 6, Apple is "ignoring the specific use

12  of those terms in the patent."  I disagree.  Those terms do not carry any special meaning in the '647

13  Patent, and one of ordinary would understand that the files and methods I identified above contain

14  both "grammars and a parser" of claim 4 as well as the ""string library and a fast string search

15  function" of claim 6.

16

17

### i. **Samsung claims that the Accused Products lack a "user interface" that "highlights" detected structures**

18

19    266.         Samsung has stated in its interrogatory responses that the Accused Products do not

20  infringe dependent claim 8 because they do not "highlight" detected structures.  First, with respect to

21  the Browser application in certain devices, Samsung appears to argue that this limitation is not met

22  because structures are highlighted after a user touches the screen.  Nothing in the language of claim 8

23  requires that structures be highlighted before a user performs a gesture on the screen.  While such

24  highlighting would allow a user to easily discern detected structures, highlighting after a user touch

25  also serves the helpful purpose of indicating that the information a user has touched is a detected

26

27

28

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

structure (as opposed to random text, for example).  I note that in the preliminary injunction phase of this case, Judge Koh found that Apple had shown a likelihood of success in proving infringement of claim 1, despite the fact that highlighting did not occur until after a user touched an area on the screen containing a detected structure.

267.     Second, with respect to the Messaging application, Samsung appears to argue that the claimed highlighting does not occur because the detected structures are displayed in blue font and underlined.  Samsung appears to be applying an understanding of "highlighting" different from that of one of ordinary skill.  Indeed, Figure 6 shows detected structures "highlighted" by a box drawn around the structures.  *See* '647 Patent Fig. 6 and accompanying text at 5:35-37.  In addition, this understanding of "highlighting" comports with the plain and ordinary meaning.  *See, e.g.,* Merriam-Webster Online Dictionary (defining "highlight" as "to cause (as text or an icon) to be displayed in a way that stands out on a computer screen.") (*available at* http://www.merriam-webster.com/dictionary/highlight).  This definition comports with the understanding of one of ordinary skill at the time of the invention.  The display of detected structures in underlined blue font causes the detected structures to stand out on the screen when compared to other text.

> j.     **Samsung claims that the Accused Products lack a "user interface" that enables selection of an action by causing the output device to display a pop-up menu of the linked actions**

268.     Samsung appears to argue that the Accused Products do not infringe dependent claim 9 because they do not contained "linked actions," and therefore cannot contain a "pop-up menu of linked actions."   As discussed above, the Accused Products do contain actions linked to the detected structures, and so the pop-up menu displayed in the Accused Products displays a list of linked actions.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

2. **Samsung's purported non-infringing alternatives**

a. **Only analyze text and provide a context menu when the text string was selected by the user**

269.     Samsung has stated in its interrogatory responses that a non-infringing alternative to the '647 Patent would be to "only analyze text and provide a context menu when the text string was first selected by the user."  According to Samsung, such an alternative would lack "an analyzer server for detecting structures in the data," and "a user interface enabling the selection of a detected structure and a linked action."

270.     To the extent I can understand it, I disagree that this alternative would be non-infringing.   For example, the example provided by Samsung states that "such a non-infringing alternative can detect an area around a user's contact with the screen to determine the information the user has found of interest."  First, I disagree that this example fits the description of the supposed alternative.  In Samsung's example the user simply touches an area of the screen; the user does not select a text string ███████████████████████████████████████████████████
███████████████████████████████████████████████████

271.     Samsung also discusses the use of user "gestures over text in combination with this alternative in order to recognize the text as being of a certain type and perform a task."  Samsung's explanation of this alternative is unclear, but to the extent a device does not allow selection of a structure and a linked action, it does not literally infringe the '647 Patent.  However, this alternative is not without disadvantages.  I describe those disadvantages in subsection (c), below.

b. **Restrict the actions a user can perform**

272.     Samsung has stated in its interrogatory responses that a non-infringing alternative to the '647 Patent would be to "restrict the actions a user can perform after tapping on a text, in accord

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

with Apple's theories (disputed) regarding the necessity of multiple actions being linked to each structure."

273.     I have stated my opinion in prior cases and in this case that it is my opinion that claim 1 requires that multiple actions be provided for a detected structure.  I understand that the court in the *Motorola* litigation disagreed with my opinion, finding that "the ability to link a structure to a single action still comports with the patent's plural reference, so long as other structures are linked to other actions.  An analyzer that links dates to the calendar and phone numbers to the phone book still 'links structures to actions.'"  Samsung's proposed alternative would still infringe under this construction.

274.     In addition, such an alternative would be inferior to the implantation providing multiple actions for a detected structure.  As the '647 Patent explained, one of the disadvantages of prior art systems that attempted to detect phone numbers and allow a user to dial was that "they do not enable the performance of other candidate actions, such as moving the number to an electronic telephone book."  '647 Patent, 1:58-60.  Thus, this alternative would limit the functionality available to a user and would decrease a device's ease of use, essentially returning the device to the prior art.  Limiting the actions available in this way would frustrate users.  Accordingly, this alternative lacks the benefits and advantages of the patented invention.

c.     **Allow the user to link actions to a structure**

275.     Samsung has stated in its interrogatory responses that a non-infringing alternative to the '647 Patent would be to "to allow the user to link actions to a structure," for example, using a "a glyph-drawing model."  According to Samsung, such an alternative would lack "an analyzer server for detecting structures in the data, and for linking actions to the detected structures."

276.     The scope of this purported alternative is unclear from Samsung's response, but it appears they rely on arguments I made in the preliminary injunction phase regarding the Perspective

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

prior art.  In my reply declaration, I stated that the Perspective system does not disclose "link[ed] actions" because the events Samsung's expert identified to be "actions" are merely gestures that a user must perform on Perspective's screen using a specially designed pen.   I explained that such gestures are not "actions" within the meaning of the '647 Patent.  I stand by that opinion.

277.    To the extent I understand it, such an alternative would be inferior to the technology claimed in the '647 Patent.  For example, forcing a user to memorize a set of gestures to perform over a piece of information that may or may not be a detected structure is inferior to the claimed invention, which automatically detects structures and provides a user interface enabling the selection of a candidate action.  In the latter case, among other things, the user does not have to memorize or know beforehand the particular gestures that might do something useful with a particular piece of information.  This alternative would frustrate and confuse users, and would decrease a device's ease of use.  Moreover, the alternative would be more cognitively demanding on users, requiring them to memorize new commands.  Accordingly, this alternative lacks the benefits and advantages of the patented invention.

d.    **Restrict the type of information that can be detected**

278.    Samsung has stated in its interrogatory responses that a non-infringing alternative to the '647 Patent would be to "to restrict the type of information that can be detected by an application, in accord with Apple's theories (disputed) regarding the necessity that the analyzer server detect multiple types of structures."  According to Samsung, such an alternative would lack "an analyzer server for detecting structures in the data, and for linking actions to the detected structures."

279.    As stated above, it is my opinion that the '647 Patent requires detection of multiple structures (*e.g.*, email addresses, phone numbers, postal addresses, etc.)  I understand that the court in the *Motorola* litigation agreed with that construction of claim 1.  While he did not agree with my

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

opinion that multiple actions are required for a particular structure, he did find that a single action for each structure could satisfy claim 1, "so long as other structures are linked to other actions," for example, "link[ing] dates to the calendar and phone numbers to the phone book."

280.    Such an alternative would be inferior to the technology claimed in the '647 Patent. For example, the '647 Patent specifically highlighted prior art that detected only phone numbers as art which the patent overcame. *See* '647 Patent 1:52-65 (describing a system that is only able to detect telephone numbers and only able to allow dialing of those numbers). Obviously, the ability to detect multiple types of structures allows a user to take useful actions with different types of information. If a device only detected phone numbers, a user would encounter all of the problems associated with the prior art in order to take action on other pieces of information, such as sending an email to a detected email address. Thus, this alternative represents a pure reduction in functionality as compared to the patented invention, as well as a reduction in ease of use. Accordingly, this alternative lacks the benefits and advantages of the patented invention.

e.    **Provide the same context menu of options regardless of what text the user has selected**

281.    Samsung has stated in its interrogatory responses that a non-infringing alternative to the '647 Patent would be to "provide the same context menu of options to the user regardless of what text the user has selected in the Browser and Messaging applications." According to Samsung, such an alternative would lack "an analyzer server for detecting structures in the data, and for linking actions to the detected structures."

282.    To the extent I can understand it, I disagree that this alternative would be non-infringing. The scope of this purported alternative is unclear from Samsung's response, especially given the example provided by Samsung. Samsung states that "in such a situation, the user could be

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

presented with a menu combining the current options provided for email addresses, phone numbers, and street addresses when selecting one of those structures." Even in that scenario (to the extent I can understand it), a user can still select a detected structure (*e.g.*, a phone number), and the user will be presented with a menu of actions linked to the phone number. The fact that other actions linked to other detected structures may be present does not make the device non-infringing.

f. 

283.

284.

285.

be infringing. But such an alternative would be vastly inferior to the infringing technology. Indeed, one of the main purposes of the '647 Patent is to automatically detect structures and to allow the user to choose from a set of linked actions. Removal of the detection functionality would defeat the purpose of the invention. The user would be left with a device similar to that available in the prior art—the user would have to manually search for interesting pieces of information, manually copy any such information, open the application the user wanted to use, and paste the relevant information into the separate application. This is precisely what the '647 Patent was designed to overcome. As such,

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the alternative would decrease a device's ease of use, and would lack the benefits and advantages of the patented invention.

### g.    Use a user interface different from a pop-up menu for displaying choices of actions to a user

286.    Samsung has stated in its interrogatory responses that a non-infringing alternative to the '647 Patent would be to "not use a pop-up menu for displaying choices of actions to a user, but would instead use a different user interface, such as a list of actions at the bottom of the screen that can be pulled-up by the user." According to Samsung, such an alternative would lack all claim limitations reciting "selection."

287.    To the extent I can understand it, I disagree that such an alternative would be non-infringing. Samsung provided no explanation regarding how such an alternative would avoid the "selection" limitation. Indeed, Samsung's example, "a list of actions at the bottom of the screen that can be pulled-up by the user," would still allow the user to "select" from the list of actions.

288.    At most, the absence of a pop-up menu would avoid infringement of claim 9, which expressly claims a pop-up menu to display the linked actions. But it is not clear from Samsung's description that its proposed example would not constitute a "pop-up menu." Also, other presentation mechanisms may be inferior to the claimed pop-up menu, which allows the user to easily select a candidate action.

### C.    Indirect Infringement

289.    In my opinion, Samsung contributorily infringes claims 1, 4, 6, 8, and 9 of the '647 Patent by providing carriers, retailers and other sellers of the Accused Products with the Accused Products in a configuration that includes the accused functionality as well as the carriers and other companies that sell the Accused Products in the United States. I understand that Samsung has known

INITIAL EXPERT REPORT OF DR .TODD C. MOWRY CONCERNING U.S. PATENT NO. 5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)    112

Gibson, Dunn & Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

of the '647 Patent at least as of Aug. 4, 2010.  As discussed above, it is my opinion that the Accused

Products infringe claims 1, 4, 6, 8, and 9 of the '647 Patent.   The Accused Products is sold as an

apparatus in the United States to customers through a variety of sales channels, including stores

operated by U.S. carriers, retailers and online sites.  The accused functionality, as included in the

Accused Products, has no substantial non-infringing uses in my opinion.

290.        Also in my opinion, Samsung actively induces infringement of claims 1, 4, 6, 8, and 9

of the '647 Patent by the users of the Accused Products.  As discussed above with respect to

contributory infringement, the Accused Products as sold are apparatus that facilitate detection of

structures in received data and selection by a user and performance by the system of a linked action

to perform on selected structures.  Each of the Accused Products is sold as an apparatus in the United

States to customers through a variety of sales channels, including stores operated by U.S. carriers,

retailers and online sites.

291.        I understand that SEC induces infringement by SEA and STA through importing the

Accused Devices into the United States and encouraging the sale of the Accused Devices by SEA and

STA.  SEC sells the Accused Devices to SEA, STA, and certain employees of Google Inc.   SEC

further induces infringement through encouraging the sale of the Accused Devices by SEA and STA.

*See, e.g.,* Cheong 06/24/2013 Dep. Tr. at 19:4-20:23, 66:18-69:3, 76:24-77:8; SAMNDCA630-

06643293 (Cheong 06/24/2013 Dep. Ex. 11) at 302; Denison 07/18/2013 Dep. Tr. at 24:10-18.

292.        SEA is a wholly-owned subsidiary of SEC, and STA is a wholly-owned subsidiary of

SEA.  *See* Dkt. No. 41.

293.        In addition to importing the accused devices from SEC into the United States, STA

and SEA sell and offer to sell them in the United States. ██████████████████████

██████████████████████████████████████████████

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          113

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

*See* Cheong 06/24/2013 Dep. Tr. at 19:4-20:23; Denison 07/18/2013 Dep. Tr. at 17:6-18:16; Sheppard 12/21/2011 ITC Dep. Tr. at 77:5-15, 119:5-121:22, 139:7-140:1; Sheppard 01/24/2012 1846 Dep. Tr. at 27:11-28:10, 86:18-87:2.

294.

295.       In addition, the User Guides provided by Samsung to purchasers of the Accused Produce provide instructions on how to use Accused Products in a manner, such as calling phone numbers detected in the installed the Browser and Messaging applications, that infringe claims 1, 4, 6, 8, and 9 as discussed above. *See, e.g.*, Accused Product User Manuals.

296.       Further, I understand that, despite knowing of the '647 Patent since 2010, Samsung has modified the publicly available Android messaging application to remove what Samsung contends is a non-infringing alternative.  Specifically, the publicly available Android messaging application provides a single context menu for multiple structures detected in a text message.  While Samsung contends (and I disagree) that this is a non-infringing alternative, Samsung nevertheless modified the publicly available messaging app so that it provides separate context menus for each structure identified in a text message.

297.       Based on my experience, once functionality such as the infringing functionality that is

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)       114

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

embodied in several parts of the smartphone or tablet system is in place, it is rather difficult to remove or disable it.  Removing or disabling is not an impossible task but it would be time-consuming.  It would involve significant expenditure of time in engineering and testing.  Given that the infringing functionality infrastructure both for the Browser and Messaging applications appears to have originated from Google's Android code, it appears that it would involve having both Google and Samsung involved in the removal or disabling of the features.  Finally, given that the feature at issue is helpful to making the smartphone "smart" by making certain desired tasks seamless for the user and giving the user multiple choice of options (instead of, for example, a single option of merely dialing a phone number), one would expect that if a company embarked upon a design around, that the options it would then be able to give its user would be suboptimal and less desirable.

## VI.    USE BY APPLE OF THE '647 PATENTED TECHNOLOGY

298.     I am aware that the ITC has already found that Apple practices at least claim 1 of the '647 Patent.  Specifically, during the ITC investigation *In the matter of Certain Personal Data and Mobile Communications Devices and Related Software*, Investigation No. 337-TA-710 the ITC found that the Apple iPhone 3GS running iOS version 3.1.3 met the technical prong of the domestic industry requirement (*See* [Initial Determination at 157-164).  I understand that this was affirmed by the Commission in the Final Determination (*See* [Commission Opinion at 6).

299.     For the reasons set forth in my expert report submitted in that investigation it is my opinion that the Apple iPhone 3GS  running  iOS 3.1.3 practices at least claim 1 of '647 Patent .  The relevant portions of that report may be found at APLNDC630-0000069204-69324; APLNDC630-0000069325-69460; APLNDC630-0000169870-169907.

300.     Based on my review of certain iOS code and my discussions with Apple engineers, it is my understanding that Apple devices running iOS 3.0 through 6.0 practice the asserted claims of

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

addresses.

## VI.    CONCLUSION

306.     For the reasons above I conclude that the Samsung Accused Products meet each limitation of claims 1, 4, 6, 8, and 9 of the '647 Patent and thus infringe those claims.

307.     I understand that there is still additional discovery taking place, and that there are current outstanding discovery issues relating to Samsung's and third-party document production.  I understand there are also still depositions remaining to be completed.  I therefore reserve the right to supplement my report should additional information be produced that is relevant to my analysis.

308.     My opinions are subject to change based on additional opinions that Samsung's experts may present and information I may receive in the future or additional work I may perform.  With this in mind, based on the analysis I have conducted and for the reasons set forth below, I have preliminarily reached the conclusions and opinions in this report.

309.     In connection with my anticipated testimony in this Action, I may use as exhibits various documents produced in this Action that refer or relate to the matters discussed in this report.  I have not yet selected the particular exhibits that might be used.  In addition, I may create or assist in the creation of certain demonstrative exhibits to assist me in testifying.  Again, those exhibits have not yet been created.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          118

Gibson, Dunn &
Crutcher LLP

I declare under penalty of perjury that the foregoing is true and correct.

Dated:    August 12, 2013

Todd C. Mowry

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP