REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL

# EXHIBIT B-5

Attorneys' Eyes Only - Pursuant to Protective Order

Page 1

```
 1        UNITED STATES DISTRICT COURT
 2       NORTHERN DISTRICT OF CALIFORNIA
 3
    APPLE INC. a California,       )
 4  Corporation,                    )
                                    )
 5              Plaintiff,          )
                                    )
 6          vs.                     ) Case No.
                                    ) 12-CV-00630-LHK
 7  SAMSUNG ELECTRONICS CO., LTD., )
    a Korean business entity;       )
 8  SAMSUNG ELECTRONICS AMERICA,    )
    INC., a New York corporation;   )
 9  SAMSUNG TELECOMMUNICATIONS      )
    AMERICA, LLC, a Delaware        )
10  limited liability company,     )
                                    )
11              Defendants.         )
    -------------------------------)
12
13
14            ATTORNEYS' EYES ONLY
15       PURSUANT TO PROTECTIVE ORDER
16               VIDEOTAPED
17       DEPOSITION OF KEVIN JEFFAY
18            New York, New York
19        Tuesday, September 24, 2013
20
21
22
23
24  Reported by:
    FRANCIS X. FREDERICK, CSR, RPR, RMR
25  JOB NO. 65990
```

Page 2

```
               September 24, 2013
               9:12 a.m.




     ATTORNEYS' EYES ONLY videotaped deposition
     of KEVIN JEFFAY, held at the offices of
     Quinn, Emanuel, Urquhart & Sullivan,
     LLP, 51 Madison Avenue, New York, New
     York, pursuant to Notice, before Francis
     X. Frederick, a Certified Shorthand
     Reporter, Registered Merit Reporter and
     Notary Public of the States of New York
     and New Jersey.
```

Page 3

```
 1  A P P E A R A N C E S:
 2
 3    GIBSON DUNN & CRUTCHER
 4    Attorneys for Plaintiffs
 5       2100 McKinney Avenue
 6       Dallas, Texas 75201
 7    BY: ROBERT VINCENT, ESQ.
 8
 9    QUINN EMANUEL URQUHART & SULLIVAN
10    Attorneys for Defendants
11       51 Madison Avenue
12       New York, New York 10010
13    BY: RICHARD ERWINE, ESQ.
14        ZACHARIAH SUMMERS, ESQ.




24  ALSO PRESENT:
25    CARLOS LOPEZ, Videographer
```

Page 4

```
 1      THE VIDEOGRAPHER: This is the
 2  start of tape labeled number one of the
 3  video deposition of Dr. Kevin Jeffay in
 4  the matter Apple Inc. versus Samsung.
 5  This deposition is being held at 51        09:11
 6  Madison Avenue, New York, New York, on
 7  September 24, 2013 at approximately
 8  9:12 a.m. My name is Carlos Lopez. I
 9  am the legal video specialist. The
10  court reporter is Francis Frederick in   09:11
11  association with TSG Reporting. Will
12  counsel please introduce yourself.
13      MR. VINCENT: Robert Vincent for
14  Gibson Dunn on behalf of Apple.
15      MR. ERWINE: Richard Erwine of       09:11
16  Quinn Emanuel on behalf of Samsung. And
17  with me is Zach Summers.
18      THE VIDEOGRAPHER: Will the court
19  reporter please swear in the witness.
20          * * *
```

Page 5

```
 1  K E V I N   J E F F A Y, called as a
 2      witness, having been duly sworn by a
 3      Notary Public, was examined and
 4  testified as follows:
 5  EXAMINATION BY
 6  MR. VINCENT:
 7      Q.  Good morning.
 8      A.  Good morning.
 9      Q.  Can you please state your full
10  name and address for the record.          09:11
11      A.  My name is Kevin Jeffay and my
12  address is 207 Faison, which is F-A-I-S-O-N
13  Road in Chapel Hill, North Carolina.
14      Q.  So you live in North Carolina?
15      A.  I'm sorry?                        09:12
16      Q.  You live in North Carolina.
17      A.  I do.
18      Q.  Is there any reason that you can't
19  provide complete and accurate testimony today
20  such as taking medications or other reasons?  09:12
21      A.  None that I know of.
22      Q.  Have you given a deposition
23  before?
24      A.  I have.
25      Q.  How many times?                    09:12
```

2 (Pages 2 to 5)

Attorneys' Eyes Only - Pursuant to Protective Order

Page 38

1   First, I want to ask, you
2   understand that the Galaxy Note and the Galaxy
3   Note 10.1 are two different devices, correct?
4       (Document review.)
5   A.  Okay.  This refreshes my memory.     09:57
6   Q.  Okay.
7   A.  And, yes, the Note and the Note
8   10.1 are different devices.
9   Q.  Dr. Mowry differentiates between
10  the Galaxy Note and the Galaxy Note 10.1,      09:58
11  correct?
12  A.  He does.
13  Q.  So let's go back.
14      You mentioned Galaxy -- you
15  mentioned that, in paragraph 144 of your       09:58
16  rebuttal report, two devices have an impact on
17  claim 1, the Galaxy Tab II 10.1 and the Galaxy
18  Note 10.1.  Is that accurate?
19  A.  Yes.
20  Q.  So again, back to paragraph 138,   09:58
21  Accused Browser Products, those products don't
22  appear in that list, correct?
23  A.  They do not.
24  Q.  Okay.  So let me go back to my
25  question.  My question was regarding this      09:59

Page 39

1   first group of accused browser products,
2   meaning the accused browser products listed in
3   paragraph 138 running Froyo, Gingerbread or
4   Ice Cream Sandwich, are there any differences
5   among any of these devices that are relevant     09:59
6   to the infringement or non-infringement of
7   claim 1?
8   A.  I guess the thing I was actually
9   citing to my report doesn't appear to be in
10  this snippet.                                    09:59
11  Q.  Where are you -- what are you
12  referring to?
13  A.  Well, -- maybe it is actually.
14      So I guess the issue is on page 36
15  of Exhibit 4, footnote 10, Dr. Mowry is saying   10:00
16  that the Galaxy Note 10.1 also infringes
17  through the browser application under
18  constructions adopted in the Motorola
19  litigation.
20      So it's -- so he certainly doesn't    10:00
21  list it in the larger footnote --
22  Q.  You mean the larger paragraph?
23  A.  Sorry.  Then let me start over.
24      So paragraph 93 of Exhibit 4 is
25  where Dr. Mowry is saying that the accused       10:00

Page 40

1   products infringe claims 1, 4, 6, 8 and 9
2   through the browser application and he lists
3   the products there and that's what I have
4   reproduced in paragraph 138 of Exhibit 3.
5       But there's a footnote here and    10:01
6   the footnote says that he has an opinion that
7   these further products, the Tab II and the
8   Note 10.1 also infringe.
9       So I guess what I'm saying is to
10  the extent he's claiming that these infringe,  10:01
11  then his -- then there are differences -- then
12  his product is not -- his representative
13  product is not representative.
14  Q.  I'm not asking about what Dr.
15  Mowry said was representative.  If you'd       10:01
16  listen to my question, please, and answer the
17  question I actually asked I'd appreciate it.
18      My question was simply the accused
19  browser products that you identified in
20  paragraph 138 of your report, are there any    10:02
21  relevant differences among any of these
22  devices running Froyo, Gingerbread or Ice
23  Cream Sandwich, any differences that are
24  relevant to the infringement or
25  non-infringement of claim 1 of the '647        10:02

Page 41

1   patent?
2       THE WITNESS:  Sorry.  Can you just
3   read the question back.
4       (Record read.)
5   A.  No.  Excuse me.  No, I don't         10:02
6   believe there are.
7   Q.  Again, regarding that same group
8   of accused browser products listed at 138,
9   that run Froyo, Gingerbread or Ice Cream
10  Sandwich, are there any differences among       10:03
11  these devices relevant to the infringement or
12  non-infringement of claim 4?
13  A.  Would it be possible to get a copy
14  of the patent so respond we could just --
15  Q.  No problem.                          10:03
16  A.  Just keep the claims out.
17      MR. VINCENT:  We're on 5.  Is that
18  right?
19      THE COURT REPORTER:  Yes.
20      (Deposition Exhibit 5, United        09:36
21  States Patent Number 5,946,647, marked
22  for identification as of this date.)
23  BY MR. VINCENT:
24  Q.  So now that you have Exhibit 5,
25  Exhibit 5 is the '647 patent; is that right?    10:04

Page 50

1      10:22 a.m.  We're going off the record.
2           (Recess taken.)
3           THE VIDEOGRAPHER:  The time is
4      10:35 a.m.  We're back on the record.
5      BY MR. VINCENT:                          10:34
6      Q.   Welcome back.
7      A.   Thank you.
8      Q.   So I'd like to turn back to the
9   discussion of the accused browser products
10  that are listed in paragraph 138.  I believe   10:34
11  that you said that you agree that there are --
12  there are no relevant differences across the
13  accused browser products for Froyo,
14  Gingerbread or Ice Cream Sandwich as it
15  relates to infringement of claims 1, 4, 6 or   10:35
16  9; is that accurate?
17          MR. ERWINE:  Objection.
18      Mischaracterizes the witness's
19      testimony.
20      A.   I think that's what I said.      10:35
21      Q.   For those products, the accused
22  browser products running Froyo, Gingerbread,
23  Ice Cream Sandwich, is the Samsung Galaxy
24  Nexus representative of those products for
25  purposes of the infringement or                10:35

Page 51

1   non-infringement analysis of claims 1, 4, 6
2   and 9?
3           MR. ERWINE:  Objection.  Calls for
4       legal conclusion.
5       A.   And are we speaking of browser       10:35
6   or --
7       Q.   Browser.
8       A.   Okay.
9           Right.  So the question limited to
10  the devices that are listed in paragraph 138,  10:37
11  I believe that's correct.
12      Q.   Okay.  I guess I'm a little
13  confused.  If you look at the end of paragraph
14  144, the last sentence, "For example,
15  accordingly, the Galaxy Nexus is not           10:37
16  representative and Dr. Mowry has presented no
17  evidence to support his incorrect conclusion
18  that it is."
19          Do you see that sentence?
20      A.   I do.                                10:37
21      Q.   In what way is Dr. Mowry incorrect
22  in his representative products assertions that
23  you cite?
24      A.   Well, the analysis that's done in
25  paragraph 144 is a broader -- your questions   10:37

Page 52

1   have been limited to devices listed in
2   paragraph 138.
3       Q.   Um-hum.
4       A.   And the analysis that is in
5   paragraph 144 is premised on the assumption    10:37
6   that Dr. Mowry is also accusing additional
7   devices as we talked about, given the footnote
8   in his -- in his expert report.
9       Q.   Those additional devices are the
10  Galaxy Tab II, 10.1 and Galaxy Note 10.1?      10:38
11      A.   Correct.
12      Q.   Can you point to me where in the
13  portions that you cite of Dr. Mowry's report
14  where he says the Galaxy Nexus is
15  representative of those devices?               10:38
16          And that's the excerpt I believe
17  in Exhibit 4.
18      A.   Well, it's a little unclear.  I
19  mean, as we've discussed, paragraph 93 of
20  Exhibit 4 lists devices that are referred to   10:39
21  as the accused devices.  And there is a
22  footnote in that paragraph where he references
23  other devices.  So if he's including those
24  devices in the list of accused browser
25  products, then I would assume that when he's   10:39

Page 53

1   referring to representative product he's
2   bringing in the Tab II and the Note 10.1.  If
3   his footnote is not meant to include those
4   products in the -- in the set of accused
5   browser products, then -- then my analysis    10:39
6   is -- then paragraph 144 would be different.
7       Q.   Okay.  Well, you said it's
8   unclear.  Let's see if we can't clear it up
9   for you.  If you look at paragraph 101 and the
10  excerpts from Dr. Mowry's report -- it's on    10:40
11  page 39 of the report, paragraph 101.
12          Do you see that?
13      A.   Okay.
14      Q.   It says:  "In light of the
15  similarities among the accused products, I've  10:40
16  identified certain products in my analysis
17  below that are representative of my
18  infringement analysis.  The accused browser
19  products fall into two groups; one, devices
20  running Froyo, Gingerbread Ice Cream           10:40
21  Sandwich," and then there's a foot and then a,
22  two, devices running Jelly Bean.
23          Do you see that?
24      A.   I do.
25      Q.   And then footnote 12 after the       10:40

14 (Pages 50 to 53)

Page 58

1  products, then no, I don't have an issue.
2     Q.   So, again, keeping in mind the
3  accused browser products, we talked about
4  dividing it into two groups, one being devices
5  running Froyo, Gingerbread and Ice Cream          10:46
6  Sandwich on the one hand, and then the second
7  group running Jelly Bean.
8          I want to talk about that second
9  group.  Accused browser products listed in
10 paragraph 138 running Jelly Bean.                 10:46
11         Are you with me?
12    A.   Yes.
13    Q.   Regarding the second group of
14 accused browser products, the ones listed in
15 paragraph 138 running Jelly Bean, are there       10:46
16 any differences among these devices that are
17 relevant to the infringement or
18 non-infringement of claim 1 of the '647
19 patent?
20         (Document review.)                        10:47
21         THE WITNESS:  Could you just read
22 the question back.
23         (Record read.)
24    A.   No.
25    Q.   What about claims 4, 6 or 9?  Are         10:48

Page 59

1  there any differences among those accused
2  browser products running Jelly Bean that are
3  relevant to the infringement or
4  non-infringement of claims 4, 6 or 9?
5     A.   No.                                       10:48
6     Q.   Is the Galaxy S3 running Jelly
7  Bean representative of the accused browser
8  products listed in paragraph 138 running Jelly
9  Bean as it relates to the infringement or
10 non-infringement of claims 1, 4, 6 and 9?         10:48
11         MR. ERWINE:  Objection.  Calls for
12 a legal conclusion.
13    A.   The answer is no.
14    Q.   And why not?
15    A.   Perhaps I misunderstood the               10:49
16 question.
17    Q.   My question was is the Galaxy S3
18 running Jelly Bean representative of the
19 accused browser products listed in paragraph
20 138 running Jelly Bean as it relates to the      10:49
21 infringement or non-infringement of claims 1,
22 4, 6 and 9?
23    A.   I'm wondering if now I've buggered
24 this up.
25         THE WITNESS:  I'm sorry.  Could           10:50

Page 60

1  you just read the question.
2          (Record read.)
3     A.   Yes.
4          Sorry.  I did bugger it up.
5     Q.   That's okay.  I'd like to talk            10:50
6  about -- if you look in paragraph 139 of your
7  report.
8     A.   Okay.
9     Q.   You identify what Dr. Mowry has
10 called the accused messaging products.           10:50
11         Do you see that?
12    A.   Yes.
13    Q.   There is a list of products in
14 certain cases limited to a particular Android
15 release.  The second paragraph of 139.           10:51
16         Do you see that?
17    A.   Yes.
18    Q.   So when I'm referring to accused
19 messaging products I'm referring to the
20 products that are listed here in paragraph       10:51
21 139.  Is that okay?
22    A.   Oh, sure.
23    Q.   So -- and if you also look at
24 paragraph 146 of your rebuttal report.
25    A.   Okay.                                     10:51

Page 61

1     Q.   You note that Dr. Mowry has
2  divided these accused messaging products
3  mentioned in paragraph 139 into two groups; on
4  the one hand, devices running Froyo or
5  Gingerbread; and on the other hand, devices      10:51
6  running Ice Cream Sandwich and Jelly Bean.
7          Do you see that?
8     A.   I do.
9     Q.   So let's talk about the first
10 group, the accused messaging products            10:51
11 identified in paragraph 139 running Froyo or
12 Gingerbread.
13         Regarding this group of accused
14 messaging products, are there any differences
15 among these devices that are relevant to the     10:52
16 infringement or non-infringement of the '647
17 patent?
18         (Pause on the record.)
19         THE WITNESS:  Could you just read
20 back the question.                               10:55
21         (Record read.)
22    A.   I believe there are.
23    Q.   And what are they?
24    A.   The fact that in some of the Froyo
25 products such as the Admire you can't            10:56

16 (Pages 58 to 61)

Attorneys' Eyes Only - Pursuant to Protective Order



Page 185

```
 1      Q.  Is your understanding that in
 2   applying -- in applying the claims to the
 3   accused products in the prior art, that
 4   detecting structures and data as that term is
 5   used in the '647 patent, requires that the        02:38
 6   system detect multiple structures at the same
 7   time?
 8         MR. ERWINE:  Objection.  Calls for
 9   a legal conclusion.
10      A.  I haven't offered an opinion on           02:38
11   that.
12      Q.
13
14
15
16         MR. ERWINE:  Mischaracterizes
17   witness's testimony.
18      A.
19
20      Q.
21
22      A.
23      Q.
24
25
```

47 (Pages 182 to 185)

TSG Reporting - Worldwide    877-702-9580

Attorneys' Eyes Only - Pursuant to Protective Order

Page 186

9  A.

Page 187

```
16      Q.  Show me anywhere in the patent --
17  so take the patent.  And I want you to explain
18  to me on what basis you require that the data
19  that's required by claim 1 means the whole
20  document in your words.                     02:40
21          Please go ahead and find that for
22  me --
23      A.  I object to this line of question.
24  You asked how I'd explain it to the jury,
25  okay?                                       02:40
```

Page 188

```
1       Q.  Sure.
2       A.  I gave you a truthful answer.
3   That is how I would explain it to the jury.  I
4   am not doing claim construction here.  I am
5   not stating requirements here.  What I did was   02:40
6   explain to you how I would explain it to the
7   jury.
8       Q.  Okay.  So it's not required that
9   the data be the whole document?  Is that your
10  opinion?                                     02:41
11          MR. ERWINE:  Objection.
12      Mischaracterizes the witness's
13      testimony.
14      A.  No.  What I'm saying is the
15  limitation as plainly worded.  Says detecting  02:41
16  structures in the data.  So I interpret that
17  to mean that if there are multiple structures
18  in the data you have to detect multiple
19  structures.
20      Q.  Okay.  Thank you.                    02:41
21          So let's go back to paragraph 174
22  of your rebuttal report --
23          MR. ERWINE:  Rob, I don't mean to
24      interrupt, but I know we're about to
25      change tapes.                            02:41
```

Page 189

```
1           MR. VINCENT:  Oh, yeah.  Sorry
2       about that.  Let's take a break.
3           THE VIDEOGRAPHER:  The time is
4       2:42.  We're going off the record.
5           (Recess taken.)                      02:41
6           THE VIDEOGRAPHER:  The time is
7       2:56 p.m.  We're back on the record.
8       Video number four.
9   BY MR. VINCENT:
10      Q.
21      Q.
23      A.
```



48 (Pages 186 to 189)

TSG Reporting - Worldwide    877-702-9580