**Redacted Version of Document to be Filed Under Seal**

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>       Plaintiff,<br><br>     v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>       Defendants. | CASE NO. 5:12-cv-00630-LHK<br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:   December 12, 2013<br>Time:   1:30 p.m.<br>Place:   Courtroom 4, 5th Floor<br>Judge:   Hon. Lucy H. Koh |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>       Counterclaim-Plaintiffs,<br><br>     v.<br><br>APPLE INC., a California corporation,<br><br>       Counterclaim-Defendant. | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – THIRD PARTY SOURCE CODE** |

# TABLE OF CONTENTS

Page

A.   Infringement of U.S. Patent No. 8,074,172 (Word Recommendations) .......................... 1

B.   Infringement of U.S. Patent No. 5,946,647 (Links for Structures) .................................. 2

    1.   Samsung's Products Include the "Analyzer Server" Limitation .......................... 2

    2.   Samsung's Products Include the "User Interface" Limitation ............................. 5

    3.   Samsung's Products Include the "Action Processor" Limitation ........................ 5

C.   Infringement of U.S. Patent No. 7,761,414 (Synchronization) ....................................... 6

    1.   All of Samsung's Sync Adapters Are "Configured to Synchronize" .................. 6

    2.   Samsung's Other Attempts to Avoid Summary Judgment Also Fail .................. 7

D.   U.S. Patent No. 6,847,959 (Unified Search) Is Not Invalidated ..................................... 9

    1.   Samsung Failed to Prove Actual Use or Knowledge ........................................... 9

    2.   Samsung Does Not Even Meet the New "Capability" Test It Created .............. 10

    3.   WAIS and AppleSearch Also Cannot Render the Asserted Claim Obvious ...................................................................................................... 12

E.   Invalidity of U.S. Patent No. 7,577,757 .......................................................... 12

    1.   The '446 Patent Properly Incorporates the Multer Patent in Its Entirety ...................................................................................................... 12

    2.   "Automatic Synchronization" Is Not Required and Is Disclosed in Any Event ................................................................................................ 13

    3.   The '446 Patent Discloses Bi-directional Synchronization ............................... 14

    4.   Claim 1 Requires Only One Zone Device and the '446 Patent Syncs All Devices .................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Display v. Kent State Univ.*,
212 F.3d  1272 (Fed Cir. 2000)..................................................................................12

*Becton, Dickinson & Co v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010)..................................................................................2

*Chiron Corp. v. SourceCF Inc.*,
431 F. Supp. 2d 1019 (N.D. Cal. 2006) .....................................................................13

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
948 F.2d 1264 (Fed Cir. 1991)....................................................................................9

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010).........................................................................10, 11

*Gaus v. Conair Corp.*,
363 F.3d 1284 (Fed. Cir. 2004)....................................................................................2

*Harari v. Lee*,
656 F.3d 1331 (Fed. Cir. 2011)..................................................................................13

*Kennedy v. Applause, Inc.*,
90 F.3d 1477 (9th Cir. 1996).......................................................................................8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)......................................................................................2

*Malico, Inc. v. Cooler Master USA, Inc.*,
2013 U.S. Dist. LEXIS 118119 (N.D. Cal. Aug. 29, 2013).......................................15

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002)..............................................................................9, 10

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008)..................................................................................14

*Sys. Div. Inc. v. Teknek LLC*,
59 Fed. Appx. 333 (Fed. Cir. 2003) ..........................................................................13

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)....................................................................................2

*Ultradent Prods. v. Life-Like Cosmetics. Inc.*,
127 F.3d 1065 (Fed. Cir. 1997)..................................................................................13

*Versata Software, Inc. v. SAP America, Inc.*,
717 F.3d 1255 (Fed.Cir. 2013)..................................................................................10

**Statutes**

35 U.S.C. § 102(a) ........................................................................................................9

35 U.S.C. § 102(b) ........................................................................................................9

Civil Local Rule 5.1 .....................................................................................................2

## MEMORANDUM AND POINTS AND AUTHORITIES

### A.    Infringement of U.S. Patent No. 8,074,172 (Word Recommendations)

Samsung concedes that there is no *factual* dispute regarding the '172 Patent, and that its *only* basis for non-infringement requires this Court to limit claim 18 to a physical keyboard.  This claim construction argument (which it never raised during the PI phase) clearly lacks merit.[1]

Samsung does not deny that claim 18 is not explicitly limited to physical keyboards; claim 18 recites a "keyboard," which can be physical or virtual, and the word "physical" appears nowhere in the claim.  In contrast, when Apple wanted to limit the keyboard to a physical or virtual keyboard, the claims explicitly say so, such as in claim 7 ("wherein the keyboard is a physical keyboard") and claim 23 ("wherein the keyboard is a virtual keyboard").  Nothing in the specification suggests, much less requires, that claim 18 is limited to physical keyboards; rather, *every* one of the embodiments actually described in the specification, and *every* one of the figures, has a virtual, not physical, keyboard.  Apple Br. Ex. A-3,'172 Patent, 7:6-32, 7:50-65, 8:59-10:59, Figs. 2-5B. Samsung's rewrite of claim 18 would impermissibly exclude these embodiments.

Samsung's *only* basis for limiting "keyboard" to physical keyboards (to avoid infringement) is the claim's recitation of a "keyboard and a touch screen display," which Samsung claims precludes the keyboard from being part of the touch screen device and thus means it has to be physical.[2]  This argument fails for numerous reasons.

First, as Samsung concedes, the plain meaning of "keyboard" in the '172 Patent includes virtual keyboards, and it must be given that meaning "unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest

---

[1]  Samsung's non-infringement arguments for the '172 Patent (as well as the'647 and '414 Patents) and validity argument for the '757 Patent are based on clearly erroneous claim constructions. Incredibly, Samsung seeks to benefit from that by arguing that the Court should deny Apple's motions, or even delay the trial, because of the claim construction issues implicated. Apple's motions should not be denied—and Samsung should not be rewarded—just because Samsung has attempted to avoid infringement and invalidity by distorting the claims. Apple is entitled to summary judgment, as a matter of law, because there are no factual disputes regarding infringement of the '172, '647, and '414 claims and invalidity of the '757 claims as written (as opposed to how Samsung seeks to have them revised).

[2]  Contrary to Samsung's assertion, Apple only agrees that claim 18 requires a keyboard and a touch screen device, but does not agree that the "portable electronic device" is limiting.

1   exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa*

2   *N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). Nothing in claim 18 demonstrates the

3   requisite clear intent necessary to limit "keyboard" to physical keyboard. *Id.; see also Liebel-*

4   *Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

5          Second, numerous '172 Patent claims recite *both* a touch screen display *and* a keyboard,

6   but are *not* limited to physical keyboards. Claim 23, for example, recites: "a touch screen display,

7   and wherein the keyboard is a virtual keyboard displayed on the touch screen display." So does

8   Claim 29. These claims recite exactly what Samsung argues claim 18 must be read to exclude: a

9   virtual keyboard displayed on, and not separate from, the touch screen display. Claims 2 and 7 in

10  the '172 Patent also preclude the very argument that Samsung advances here—*i.e.,* that the

11  keyboard must be physical and not a part of the touch screen. Claim 2 recites both a keyboard and

12  a touchscreen display, and to limit the keyboard to a physical one Apple added claim 7: "wherein

13  the keyboard is a physical keyboard that is not a part of the touch screen display." Apple did not

14  write claim 7's limitation into claim 18; this Court should reject Samsung's request to do so now.

15         Finally, the fact that claim 18 recites both a "keyboard" and a "touch screen device" does

16  not mean that the keyboard cannot be part of the touch screen device in any event. The '172

17  Patent specification clearly does not require separate structures for the keyboard and the touch

18  screen; in fact, in *every* figure, the virtual keyboard is part of the touch screen.[3]

19  **B.     Infringement of U.S. Patent No. 5,946,647 (Links for Structures)**

20         There are no genuine disputes as to the operation of the accused devices with respect to the

21  '647 Patent. Samsung simply adds claim limitations to argue its devices do not infringe.

22         **1.     Samsung's Products Include the "Analyzer Server" Limitation**

23         Samsung argues that the analyzer server is not "separate from a client" under the (improper)

24  *Motorola* construction by adding claim limitations this Court already rejected. It is undisputed that

25  shared libraries are loaded in memory when the accused devices are turned on and that they

_____

26  [3] Samsung's cases are distinguishable because, unlike here, either the claim language or the
    specification demanded separate structures. *Becton, Dickinson & Co v. Tyco Healthcare Group,*
27  *LP,* 616 F.3d 1249, 1254-55 (Fed. Cir. 2010) (claim language made it physically impossible for
    elements to be together); *Gaus v. Conair Corp.,* 363 F.3d 1284, 1288 (Fed. Cir. 2004)
28  ("specification plainly describes the two components as separate.").

perform common operations available to all applications.  Jeffay Dec. (D.I. 855-1), ¶ 20-24, 36-39.

When an application launches, the shared libraries are mapped to the application's "address space"

in memory and run in the application's "process" at run-time.  *Id.*, ¶¶ 23-24, 38-39.  These shared

libraries are not limited to a single application; they are "present in every application's address

space."  *Id.*

This undisputed functionality satisfies any proposed construction.  Notwithstanding

Samsung's expert's so-called "substantially more advanced" analysis, he still argues that the

analyzer server must ███████████████████████████████████████████████████████  *See*

Ex. B-7.[4]  The Court already rejected Samsung's narrow construction.  *See* D.I. 221 at 34 (finding

that the analyzer server need not be "a program separate from the application in question, running

as a separate process" and that infringement can occur even though the accused program routines

"are all executed as part of the client application").  Thus, under any construction, this Court found

that the claims do not also require the analyzer server to "run[] in a separate process."  *Id.*

Apple neither ignores mischaracterizes Samsung's non-infringement arguments; each of

them is based on the same erroneous claim interpretation.  Samsung first asserts that Apple ignored

the argument that the accused analyzer server routines do not "receive data from a client."  Sams.

Br. (DI 854-4), at 2-3.  But this is not a new, separate argument.[5]  Samsung's expert argues that this

element is not met *because* those routines ██████████████████████████  Jeffay Dec., ¶¶

101, 113.  Similarly, Samsung's argument that the analyzer server routines are ████████████

████████████████████  rests on the undisputed, irrelevant fact that the accused routines ████████

████████████████████████████████████████████████████  *Id.*, ¶¶ 103, 106.

Samsung further attempts to create the appearance of disputes by arguing that some of the

accused code ██████████████████████[6] and is therefore not "separate" from the Browser.

Sams. Br. at 4.  This Court already found that the fact that some of the analyzer server code is

---

[4]  Citations to exhibits preceded by "Apple Br." are to the exhibits filed in support of Apple's
Motion for Partial Summary Judgment (D.I. 803), and preceded by "Sams. Br." are to exhibits
filed in support of Samsung's Opposition (D.I. 854); the remaining citations are to the Reply
Declaration of Jennifer Rho, filed concurrently hereto.
[5]  Samsung's expert made this exact argument in the PI phase.  *See* D.I. 118, ¶ 96.
[6]  Samsung fails to describe the "core application tasks" or their relevance to the claims.

1    "intertwined" with the application code does not excuse infringement, even under the more

2    stringent *Motorola* constructions.  *See* D.I. 221 at 34-35.  There is no dispute that accused routines

3    ███████████████████████████████████████████ [7]  Apple pointed to

4    exactly the same source code in the PI phase, and this Court rejected Samsung's argument that any

5    overlap between the Browser and the "analyzer server" is fatal.  *Id.*

6         Samsung further falsely accuses Apple of misrepresenting this Court's claim construction

7    order to avoid summary judgment.  This Court rejected Samsung's "separate from a client"

8    limitation for the "action processor" term under claim differentiation.  D.I. 447 at 16-17.  The

9    Court found that the action processor of claim 1 "is not necessarily separate from the application

10   containing the data" because the requirement of a separate application in dependent claims

11   "strongly suggest[s]" that a separate application is *not* required by independent claim 1.  *Id.*  As

12   Apple pointed out, the Court's logic applies to *all* elements of claim 1, including the analyzer

13   server.  Indeed, the Court rejected Samsung's reliance on the embodiments and figures to argue the

14   claimed "program routines" (which include both the action processor and analyzer server) act on a

15   separate application.  *Id.* at 17-18.  These embodiments and figures are precisely what Samsung's

16   expert relies on to argue non-infringement.  *See* Apple Br. at 6; Jeffay Dec., ¶ 107.

17        Apple also did not mischaracterize Samsung's argument regarding the claimed "linking."[8]

18   It is undisputed that, for example, the "Dial" option in the menu has an associated ████████████

19   ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████"  Mowry Rep., ¶ 141 (Ex. B-1); Jeffay Dec., ¶ 30.  It is also undisputed that

22   Samsung's devices██████████████████████████████████ *Id.*  Thus,

23   there is a "specified connection" or, in this Court's words, a "uniquely defined association between

24   ─────────────────

     [7] █████████████████████████████████████████████████████

25   ████████

     Jeffay Dec., ¶ 13-16.  Samsung takes issue with the term "glue code."  Sams. Br. at 3-4.  This is

26   not "jargon"; indeed, Android engineers use this term.  *See* D.I. 177-16.  Regardless, the parties
     do not dispute the accused code modules' operation.

27   [8] Samsung accuses Apple of mischaracterizing Dr. Jeffay's analysis as requiring a███████████
     Sams. Br. at 4-5.  But Dr. Jeffay's analysis is clear that he (improperly) requires some████████

28   ██████████████████████████████████  *See* Jeffay Dec., ¶ 138.

the detected structure and one or more actions." D.I. 221 at 36.

### 2. Samsung's Products Include the "User Interface" Limitation

Samsung argues that its Jelly Bean products lack a "user interface for selecting a detected structure" by pointing to functionality that Apple does not even accuse. Even worse, Samsung misquotes Apple's motion: "When a user initially touches a structure on the screen, [and logically makes his or her selection], ███████████████████████████████████████

███████████████████████████████████ Sams. Br. at 5-6. The bracketed language does *not* appear in Apple's motion, because Apple does *not* accuse the user's initial touch as the claimed "selection." Instead, as Apple explained, █████████████████ the detected structure is then selected when the user long-presses on the detected structure; that long-press on the detected structure is the claimed "selection." Apple Br. at 8-9. Thus, the accused Jelly Bean Products clearly enable the "selection" of an already "detected structure."

### 3. Samsung's Products Include the "Action Processor" Limitation

It is evident from the devices' functionality alone that they contain an "action processor," or "program routine(s) that perform the selected action on the detected structure," as the Court's construction requires. D.I. 447 at 15-17. Samsung's argument—that the program routines do not "actually 'perform[] the selected action' on the structures"—cannot be squared with the devices' operation. Sams. Br. at 6. For example, it is undisputed that when a user selects "Dial" or "Send Email" from the menu, program routines on the device launch the Dialer with the detected phone number filled in or initiate an email with the email address. *See* Jeffay Dec., ¶¶ 13-17, 29, 33, 42; Mowry Rep., ¶¶ 140-142, 160-161 (Ex. B-1). It cannot be genuinely disputed that these program routines "perform the selected action" (*e.g.*, "Dial," "Send email") "on the detected structure" (*e.g.*, the detected phone number or email address).

Samsung simply mischaracterizes Dr. Mowry's analysis to make a convoluted attempt to raise a factual dispute. Sams. Br. at 7-8. Further, Samsung incorrectly states that Dr. Mowry identifies one routine ██████████ as the 'action' as well as the 'action processor,' then argues that one routine cannot be both. Apple Br. at 8; Sams. Br. at 7, n.9. Apple's motion explained that not only did Dr. Mowry distinguish the "action" and "action processor," he also identified the

program routines, not limited to ████████ that "perform the selected action on the detected structure." *Id.*

**C.    Infringement of U.S. Patent No. 7,761,414 (Synchronization)**

    **1.    All of Samsung's Sync Adapters Are "Configured to Synchronize"**

All six of Samsung's Sync Adapters are "synchronization software components . . . configured to synchronize structured data."  Samsung's opposition raises no challenge to Apple's proof for two of these Sync Adapters.  As for the other four, Samsung does not dispute that each of those Sync Adapters ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████.[9]  Indeed, Samsung's own expert declaration concedes these facts.[10] The only challenge raised in Samsung's Opposition is not whether these four Sync Adapters are *configured to* synchronize (as the claim language recites)—but rather whether these components themselves "*perform* any synchronization operations on structured data" (as Samsung argues claim 20 should be rewritten to require).  Sams. Br. at 9.

    Samsung's entire opposition therefore boils down to its attempt to rewrite the claim.  The claim language does not dictate how the synchronization software components must be configured.  Thus, the plain meaning encompasses a component that is "configured to synchronize structured data" either by performing the synchronization operations itself or by *directing other parts of the software to perform the same*.  *See* Apple Br. at 12.  Yet, Samsung asks this Court to rewrite the claim language to exclude the latter.

    Samsung's argument is directly contrary to the specification ████████████████ ████████ the "Sync Agent" synchronization software component in the preferred embodiment is configured to synchronize by directing other components (called "Data Sources") to perform synchronization operations on the structured data.  *See* Apple Br., Ex. C-3, 8:65-9:2 (describing

---
[9] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ is alone sufficient for the Court to grant summary judgment of infringement.

[10] *See* Chase Decl. (D.I. 855-3), ¶¶ 25, 77 (Gmail Sync Adapter); 34, 84 (Exchange Contacts Sync Adapter); 43, 91 (Exchange Calendar Sync Adapter); and 49, 98 (Exchange Mail Sync Adapter).

an embodiment wherein the Sync Agent directs synchronization "by sending messages to the data sources").  But the Sync Agent does not itself perform any synchronization operations on structured data.  *See id.* at 11:60-12:10 (Table B describing Sync Agent functions).  To try to reconcile the preferred embodiment with its erroneous position, Samsung urges that the Sync Agent "actually perform[s] synchronization operations on structured data," pointing to two operations the Sync Agent performs:  "maintaining a data connection between the device and host" and "determining the order of synchronization of the various data classes."  Sams. Br. at 9.  But neither maintaining a connection, nor determining the order in which data will later be synced, are synchronization operations on the data itself.  Rather, *all* of the synchronization operations on structured data in the preferred embodiment are performed by the Data Source components acting at the Sync Agent's direction.  Apple Br., Ex. C-3,11:45-55 (Table A describing Data Source functions).  If "configured to synchronize structured data" were rewritten to require the component to "perform synchronization operations" on that data, as Samsung urges, the preferred embodiment's Sync Agent would be excluded from the claims.

Because the Sync Adapters need not themselves perform synchronization operations on structured data, and Samsung concedes its Sync Adapters ███████████████████ ██████████████████████████████████████████████ there is no material issue upon which Samsung can avoid summary judgment of infringement.

**2.      Samsung's Other Attempts to Avoid Summary Judgment Also Fail**

Samsung raises three other arguments (two of them brand new) that not even its own expert supports.  First, Samsung argues for the first time that its Sync Adapters do not ███████ ████████████████████████████████ Sams. Br. at 10.  This argument is directly belied by Samsung's own expert, who testified tha ███████████████ ████████████████████████████████████████████████ Apple Br., Ex. C-4, 60:13-23; 61:21-62:10 ██████ ██████████████████████████████ Samsung's source code confirms this, stating ████████████████████████████ █████████" Apple Br., Ex. C-2, 8; Ex. C-6, 7.  Samsung tries to impeach its expert's testimony

by citing a deposition of ███████████████.[11]  *See* Sams. Br. at 10.  But that testimony is not

corroborated by Samsung's expert, the source code, nor any other evidence.[12]  The same deponent

(Mr. Westbrook) did not mention this supposedly dispositive fact in the declaration he submitted

to support Samsung's Opposition.  *See* Westbrook Dec. (D.I. 855-4), ¶¶ 1-7.  Such

"uncorroborated and elf-serving" testimony cannot create a material issue.  *Kennedy v. Applause*,

90 F.3d 1477, 1481 (9th Cir. 1996).

Second, Samsung urges that there is a material issue as to whether the '414 Accused

Products use a "plug-in architecture."  Sams. Br. at 10.  Yet, both Samsung and its expert have

argued that claim 20 is not so limited.  D.I. 805-3, at 13; Chase Reb. Rep. ¶ 43 (Ex. C-10).  And

its expert has offered no non-infringement opinion on this basis.  Samsung cannot avoid summary

judgment based on a position it does not even advocate.

Finally, Samsung contends there is a material issue whether its products ███████████

█████████████████████████████████████████████████████████  *See* Sams.

Br. at 11 (citing Chase Dec., ¶¶ 63-71).  But Samsung's expert admits this is not a basis for non-

infringement because nothing in claim 20 excludes the use of database locks.[13]  Indeed, the '414

Patent's preferred embodiment locks the database during synchronization ███████████████

███████████████  *See* Apple Br., Ex. C-3, Figs. 13A-B (steps 579-595).  None of what Samsung

points to raises a material issue to avoid summary judgment of infringement.[14]

---

[11] ████████████████████████████████████████████████████████  Maccoun Tr., 40:4-14; 50:23-51:1 (Ex. C-7).

[12] ███████████████████  Rule 30(b)(6) witness testified that the ███████████████████████

████████████████████████████████████████████████  Westbrook Tr., 44:6-17 (Ex. C-9).

[13] ████████████████████████████████████████████████  Chase Decl. ¶ 63 (emphasis in original).  But

when deposed, he conceded this was irrelevant to whether claim 20 is infringed because the claim

contains no such requirement.  Apple Br., Ex. C-4,102:24-104:1.

[14] █████████████████████████████████████████████████████████████████████

████████████████████████████  *See* Sams. Br. at 11 n.12.  Whether the Accused Products operate in non-

infringing modes is irrelevant because they also operate in infringing ones.

**D.      U.S. Patent No. 6,847,959 (Unified Search) Is Not Invalidated**

**1.      Samsung Failed to Prove Actual Use or Knowledge**

Apple has established that it is entitled to summary judgment that WAIS and AppleSearch do not anticipate *as a matter of law* because Samsung has absolutely no evidence that anyone at any relevant time *actually knew of or used* either system configured to have the claimed functionality Samsung *concedes* is necessary for its validity case.  *See* 35 U.S.C. § 102(a) and (b); *see also Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) ("both [§ 102(a) and (b)] require actual use by someone at some point.").  To the contrary, Samsung's *entire* argument is based on how those systems *could have been configured* to have the claimed functionality.  But, as Apple explained—and this Court has already ruled—it is not sufficient to show what *could* have been done, or *could* have been known.  *See Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed Cir. 1991).  As this Court correctly held, a "post-hoc, reconstructed interpretation of how a WAIS system might have been constructed does not constitute prior art for purposes of anticipation."  D.I. 230 at 6.  Rather, Samsung must show that the invention was, in fact, *actually* known or used.  Apple is entitled to summary judgment because Samsung has no such evidence.

Tellingly, nothing in Samsung's opposition nor the attached declarations even attempts to argue—let alone prove—that there is any evidence of actual knowledge or use of the allegedly anticipating configuration.  Instead, Samsung now claims that such actual use or knowledge is not really necessary.  Without citing even a single anticipation case, Samsung declares that the law permits anticipation if prior art computer software was merely *capable* of performing the steps recited in the asserted claims, even if it is not configured to do so at the relevant time and even if *no one* ever knew of or used the necessary configuration.  Sams. Br. at 15.  Samsung, then, contends that WAIS and AppleSearch anticipate because its expert was able to build the necessary configuration proving, according to Samsung, that its prior art was *capable* of being so configured to perform the claimed steps.  *Id.*

Samsung's contention that it need not show actual knowledge or use of the patented invention for anticipation is wrong as a matter of law, and that is why Samsung is unable to cite a

1    single case regarding anticipation to support it.  Instead, Samsung cites two decisions addressing

2    when software can *infringe* a claim.[15]  These infringement cases do not address—much less

3    alter—the standard for anticipation or allow anticipation based on software that is merely capable

4    of anticipatory functionality.[16]  Nor do these infringement cases overrule the clear holdings of the

5    Federal Circuit requiring *actual* knowledge or use to meet the "knowledge or use" prongs of

6    Section 102.  *See, e.g., Minnesota Min.*, 303 F.3d at 1307.

7        **2.    Samsung Does Not Even Meet the New "Capability" Test It Created**

8        Because Samsung cannot establish anticipation as a matter of law, it is not necessary to

9    address its arguments based on infringement concepts.  Nevertheless, even if this Court were to

10   entertain Samsung's infringement-based contention, Samsung still cannot prove anticipation.

11   Under *Finjan* and *Versata,* Samsung would need to show that WAIS and AppleSearch *as sold or*

12   *distributed* already had all of the claimed functionality built into the software ready for use out of

13   the box.  *See Finjan*, 626 F.3d at 1205; *Versata*, 717 F.3d at 1261.  In *Finjan*, for example, the

14   Court found that at the time the accused product was sold, it already had *all* the necessary

15   functionality built in and configured, even if such functionality needed to be "unlocked" before it

16   could be used.  626 F.3d at 1205.  Such a product with all the necessary functionality "already

17   present" infringed, the Court held, because the "software for performing the claimed functions

18   existed in the products when sold—in the same way that an automobile engine for propulsion

19   exists in a car even when the car is turned off."  *Id.*

20       In contrast, neither WAIS nor AppleSearch had all the necessary functionality "already

21   present" when distributed.[17]  In fact, Samsung's own expert had to devote hours to building and

22   configuring the systems in order to create systems capable of performing the claimed functions.

23   Samsung's expert submitted dozens of videos showing all the work and time necessary to build

24   the systems.  *See* Rinard Video 1-11, 14-38 (Ex. D-7).  These videos alone prove that, unlike in

---

25   [15]  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) and *Versata Software,*
26   *Inc. v. SAP America, Inc.*, 717 F.3d 1255 (Fed. Cir. 2013).  Samsung also cites two indefiniteness
     decisions: this Court's 1846 decision and the *Yodlee* decision.
27   [16]  The infringement and validity provisions address different uses.  For anticipation, use must be
     accessible to the public, but not so for infringement.  *Minnesota Min.*, 303 F.3d at 1306.
28   [17]  Samsung's contentions regarding WAIS and AppleSearch are at Ex. D-10 and Ex. D-11.

*Finjan,* neither WAIS nor AppleSearch was capable of performing the claimed functionality when distributed.  Thus, even if *Finjan* applied, the fact that Samsung's expert needed to build new systems in order to be capable of performing the claimed functions means that the capability was not "already present" and eliminates the prior art as a matter of law.

       **WAIS.**  For WAIS, Samsung points to the source code FreeWAIS-sf version 2.0.65 as the allegedly anticipatory "distribution."  Sams. Br. at 15, 18, & n. 23.  Samsung misleadingly says Dr. Rinard only had to "install[]" or "execute" the software, ignoring the nearly hour long process of building and configuring shown in his video exhibits.  *See id.* at 18; *see also* Rinard Video 14-38 (WAIS) (Ex D-7); Rinard Rep. ¶¶ 486-91 (Ex. D-1).  It is undisputed, however, that FreeWAIS-sf out of the box does not provide any of the claimed functionality.  To build the allegedly anticipating WAIS and AppleSearch systems, Dr. Rinard spends hours of time, using multiple computers, building separate databases, selecting different compiling options and literally building several computer systems that had to then be connected over the Internet that was captured on a series of 26 different videos.[18]  The complexity of his demonstration proves that the FreeWAIS-sf source code distribution did not have the required functionality "out of the box" unlike the product or car engine in *Finjan*.  *See Finjan*, 626 F.3d at 1205.

       Samsung attempts to mask its lack of evidence with two declarations by paid consultants.  But these declarations establish *only* that people built their own version of FreeWAIS-sf version 2.0.65 – not one like Dr. Rinard did with the claimed functionality. *See* Pfeifer Decl. (D.I. 855-9) ¶¶ 12-24; Fuhr Decl. (D.I. 855-10) ¶¶ 12-13.  These declarations should not be considered because their testimony was not included in Samsung's invalidity contentions; they directly contradict sworn deposition testimony;[19] and they rely on hearsay, not firsthand knowledge.[20]

       **AppleSearch.**  Samsung's showing for AppleSearch similarly suffers because

---

[18] *See* Video Ex. 23 at 2:17-2:39, Ex. 14 at 2:38-2:56, Exs. 20, 29; and Ex. 30 (Ex. D-7).

[19] *Compare* Fuhr Decl., ¶¶ 12-13 (asserting persons in the U.S. used FreeWAIS-sf) *with* Fuhr Tr. 117:19-118:2 (Ex. D-3) (testifying he did not "have any other specific information or particular examples of people in the United States knowing about FreeWAIS-sf or particular features of FreeWAIS-sf"); *also compare* Fuhr. Decl. ¶¶ 1-11 (stating he was knew the origin of source code produced to Samsung) *with* Fuhr Tr., 52:11-18 (Ex. D-8) (testifying he "was not even aware that [the source code] was there…").

[20] Pfeifer Tr., 94:7-22, 95:15-96:13, 102:16-103:17 (Ex. D-9).

AppleSearch does not come with WAIS, as Samsung concedes, so its expert had to cobble on the same defective FreeWAIS-sf server to create a "second" heuristic to have the required functionality.[21]  *See* Rinard Rep. ¶ 486-91, Ex. 1 at 1-6, 13-16, 18-21, 26-55 (relying on FreeWAIS-sf 2.0.65) (Ex. D-1); Rinard Video Exhibits 1-11 (AppleSearch) (Ex. D-7).

### 3.     WAIS and AppleSearch Also Cannot Render the Asserted Claim Obvious

Samsung cannot allege obviousness based on WAIS or AppleSearch.  Samsung contends that it can argue "single reference" obviousness but the videos Samsung created show that Samsung had to combine multiple components, not a single reference.

### E.     Invalidity of U.S. Patent No. 7,577,757

Samsung does not dispute that the '446 patent discloses all but one limitation — namely, "updated in relation to"— of the asserted claims of the '757 patent.  For this limitation, Samsung argues that the '446 patent does not disclose (1) "automatic synchronization," and (2) syncing of "*all* zone devices."  Both arguments improperly add limitations to the asserted claims that are, in any event, disclosed in the '446 patent.

### 1.     The '446 Patent Properly Incorporates the Multer Patent in Its Entirety

Samsung's argument that the '446 patent does not incorporate the Multer patent is inconsistent with its earlier position and contrary to law.  Not only did Samsung waive this argument by not advancing it in its Validity Contentions, but *it argued the opposite*.  Samsung *admitted* that the Multer patent *is incorporated* and relied on its language to support validity arguments. Apple Br., Ex. E-4 at 170-172 ("[T]he *incorporated* [Multer] patent discloses…").

As a matter of law, the '446 patent incorporates the entire Multer patent.  A patent incorporates material by reference "by citing such material in a manner that makes clear that the material is effectively part of the host document."  *Advanced Display v. Kent State Univ.*, 212 F.3d  1272, 1282 (Fed Cir. 2000).  The '446 patent clearly states that the Multer patent and related applications are "*incorporated by reference in their entirety*."  '446 patent, 2:8-11.  Dr. Schonfeld concedes that.  Schonfeld Dec., ¶ 50 ('446 patent "incorporates the Multer Patent by

---

[21] Samsung wrongly suggests that "simultaneous access to local and Internet information sources" is "the very functionality Apple claims as is novel in the '959 patent."  Sams. Br. at 16.  Claims 24 and 25 require more; they require "a plurality of heuristics" that search the Internet and local storage media and AppleSearch does not have an Internet heuristic out of the box.

reference as part of general incorporation by reference").[22]

Only where a drafter chooses to incorporate less than the entire patent does the court address whether a specific portion is incorporated. *See Harari v. Lee*, 656 F.3d 1331, 1335 (Fed. Cir. 2011) (error to limit when patent incorporated "the entire disclosure"). Here, all portions were indisputably included by the incorporation of Multer in its entirety.[23]

**2.      "Automatic Synchronization" Is Not Required and Is Disclosed in Any Event**

Samsung's argument that claim 1 of the '757 patent requires "automatic synchronization" is inconsistent with the claim language, which says nothing about when an update is triggered, and the specification, which discloses sync schemes *other than automatic* ("[d]ifferent synchronization schemes are possible (automatic, daily, weekly, etc.)," and users can "update on a demand"). '757 patent, 9:4-6.  Instead, Samsung misrepresents Dr. Taylor's testimony. Taylor Suppl. Report Ex. E-10, ¶¶ 2-6.  Rejecting Dr. Schonfeld's construction, Dr. Taylor stated that sync activity "may be started at multiple times or different frequencies," and "the patent uses the word automatic *as one scheme of multiple that is possible*."  Taylor Dep. 44:15-46:11, Sams. Br. Ex. 18.  Dr. Taylor explains that "automatic synchronization" language in the '757 specification indicates that once sync is initiated, the sync algorithm performs "without manual intervention" (i.e., without "manual drag and drop" of selected material).  *Id.*

In any event, the '446 patent discloses synchronization triggered automatically by disclosing a device engine with an "events module" "to determine how and when to sync" and referring to Multer for "further detail" on "operation" of the device engine.  '446 patent, 9:65-10:3, 11:36-38.  Multer, using the same "events module," teaches sync "*triggered automatically*"[24] and

---

[22] By expressly stating that a patent is incorporated "in its entirety," the host makes clear that the entire contents are incorporated.  *Sys. Div. Inc. v. Teknek LLC*, 59 Fed. Appx. 333, 340 (Fed. Cir. 2003) (patent "incorporated by reference in its entirety" rendered entire contents intrinsic to the host patent); *Ultradent Prods. v. Life-Like Cosmetics. Inc.*, 127 F.3d 1065, 1069 (Fed. Cir. 1997) (improper to limit scope of incorporation where host "incorporate[d] by reference the entire contents"); *see also Chiron Corp. v. SourceCF Inc.*, 431 F. Supp. 2d 1019, 1031 (N.D. Cal. 2006) (patent incorporated in its entirety "must be deemed in its entirety to be part" of host).

[23] The '446 patent also identifies the specific material relied on from Multer: how "data can be synchronized," and "detail" on "operation" of device engines.  '446 patent, 5:25-29, 9:65-10:3.

[24] Sync triggers "automatically after another device syncs" not, as Samsung claims, only after one is "*manually* synchronized." Sams. Br. at 22. Samsung also ignores "time based triggers," which Dr. Schonfeld admits are automatic.  Schonfeld Tr., 210:15-23, Apple Br. Ex., E-5.

1    "[r]egular time based triggers." [25]   Multer Patent, 13:6-9; 35:12-22.

2         Samsung does not dispute that the '446 patent, properly incorporating Multer, discloses

3    automatic synchronization, but instead argues that the disclosure is in a "disparate" embodiment

4    that does not synchronize media data. [26]   Sams. Br. at 22.   But the '446 patent describes a "device

5    engine ... for synchronizing media data" and refers to the Multer patent for "detail" on the

6    "structure and operation" of the device engine – in other words, the automatic sync trigger in

7    Multer is in the same "device engine" embodiment.   '446 patent, 9:60-10:3-10.   Dr. Schonfeld

8    admits that the Multer passage gives "detail about the operation of the events module" of the

9    device engine.   Schonfeld Dec. ¶54.   Thus, the passage is "directly related ... by the teachings of"

10   the '446 patent to its device engine, *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371

11   (Fed. Cir. 2008), and Samsung's argument is incorrect as matter of law.

12        **3.      The '446 Patent Discloses Bi-directional Synchronization**

13        Samsung argues, for the first time and without any support, that the '446 patent does not

14   disclose that the storage server and user devices synchronize with each other.   Sams. Br. at 24.

15   Neither Samsung's Validity Contentions nor Dr. Schonfeld's expert report includes any such

16   argument.   *See* Apple Br. at 24.   In any event, the argument confuses synchronization with uni-

17   directional transfer by misreading the statement that data "may be synchronized or transferred

18   (uni-directionally)."   '446 patent, 9:53-55.   In context, it is clear that uni-directional transfer is

19   presented as an alternative to two-way synchronization.   *See*  Schonfeld Dec. ¶ 41 (describes

20   synchronization "***as an alternative*** to 'transfer[ring]' 'digital media files,'") (emphasis added).

21   Figure 4 and the discussion of it in the preceding paragraph make clear that synchronization is bi-

22   directional, illustrating that "difference information" is "***exchanged***" both ways "between devices

23   and the storage server" with arrows on either side of the "Δ."   *Id.* at 9:40-50, Fig. 4.   Multer

---

24   [25] Samsung contends that Apple cannot rely on this passage because it was not identified in
     Apple's Invalidity Contentions.   However, Samsung did not advance its "automatic

25   synchronization" interpretation until Dr. Schonfeld's rebuttal report.   Given that the claims
     contain no "automatic synchronization" requirement, there was no reason for Apple to identify in

26   its Invalidity Contentions the Multer patent disclosure of automatic synchronization.
     [26] Samsung claims that Multer syncs only non-multimedia data such as "email, calendars and

27   contacts."   But Multer "is not limited to … specific type[s] of data, such as contacts information
     or scheduling information" and expressly syncs "binary file information."   Multer patent, 8:17-26.

28   The '446 patent's media files are "binary information."   '446 patent, 5:20-26.

provides further detail on how difference data is exchanged by the device engines to "keep all the systems fully synchronized."  Multer patent, 10:65-11:6.  Samsung's unsupported argument to the contrary does not create a question of fact.  *See Malico, Inc. v. Cooler Master USA, Inc.*, 2013 U.S. Dist. LEXIS 118119 (N.D. Cal. Aug. 29, 2013) ("Attorney argument is no substitute for evidence and is not sufficient to create a genuine issue of material fact.").

> **4.**     **Claim 1 Requires Only One Zone Device and the '446 Patent Syncs All Devices**

Claim 1 requires "at least *one* zone ... device," and Samsung concedes that the '446 patent discloses updating at least one zone device with a central device (*see* Samsung Br. at 24 (Figure 4 "discloses updating between two … devices")).  To avoid anticipation, Samsung argues the claim requires at least two zone devices, based on a later use of "zone ... devices" (plural).  Samsung overlooks the "at least one" plain language and the fact that the antecedent basis for "zone ... devices" is "at least one," which Dr. Schonfeld admits.  *See* Apple Br. at 25.

In any event, the '446 patent teaches updating all devices by the exchange of difference data between each device and the storage server.  '446 patent, 9:40-50, Figs. 3, 4.  For example, files located only on an "Office PC" are copied to the storage server in a differenced transaction and then to a "Home PC" (or "other user device") when it syncs.[27]  As Multer explains, "each device engine" works to "keep the system fully synchronized."  Multer patent, 10:65-11:6.

Rather than address the sync method, Samsung claims—citing the background section describing the prior art[28] – that the '446 patent describes content stored collectively rather than on each user device.  Sams. Br. at 24.  To the contrary, the patent states that "once inserted into the private information space, the data can be synchronized to any number of *different devices* as described in" Multer.  *See* '446 patent, 6:25-29; *see also* 4:45-48 ("The system provides a mechanism for moving data *between different* network coupled devices.").

---

[27] The '446 patent at 1:34-41 explains that "a user may acquire and store digital media" on a work PC, "but may desire to transfer that information and maintain a library" on a home PC.
[28] The context shows that the language Samsung cites (1:50-55) describes the need for synching the "series of machines" in a "personal information space":  "*At present*, there is no way to ensure that all files … are the same throughout *a series of machines*."  '446 patent, 1:47-50.

Dated: November 14, 2013                    GIBSON, DUNN & CRUTCHER LLP

By:   */s/   H. Mark Lyon*
                    ***Attorney for Apple Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document and its supporting

documents were filed electronically in compliance with Civil Local Rule 5.1, and will be served

upon all counsel of record for the parties who have consented to electronic service in accordance

with Civil Local Rule 5.1 via the Court's ECF system.

Dated: November 14, 2013                    */s/  H. Mark Lyon*