**Redacted Version of Document to be Filed Under Seal**

# EXHIBIT A-1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

        Plaintiff,

    vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation; SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation; SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

        Defendants.

CASE NO. 12-cv-00630-LHK

**REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING
NONINFRINGEMENT OF U.S. PATENT NO. 5,946,647**

175.     In a displayed web page, the user can select an item using a "long-press," causing the selected item to be outlined in a different color and causing a context or options menu to appear that lists descriptions of certain operations.  The options displayed depend on the type of item that was selected.  The user can choose one of the menu items

176.     The following screenshots, copied from Exhibit 3M to Dr. Mowry's Report, show the Browser application on a Samsung Galaxy S III, selecting a phone number with a long press, and causing a context menu to appear:

87

**HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY   SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1    **3.**

2

3    187.

4

5

6

7

8

9

10

11

12

13

14

15    188.

16

17

18

19

20

21

22

23

24

25    10

26

27

28

99    **HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'**
      **EYES ONLY   SOURCE CODE**



100

HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY   SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



101

HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY    SOURCE CODE



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

102

**HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'**
**EYES ONLY   SOURCE CODE**

189.    I note that the '647 patent specifically contemplates that selection occurs at the time the coordinates of a user's input have been determined:

> User interface 240 communicates with application 167 through application program interface 230 to determine if a user has performed a mouse-down operation in a particular mouse-sensitive presentation region, **thereby selecting the structure presented at those coordinates**. Upon selection of this structure, user interface 240 presents and enables selection of the linked candidate actions using any selection mechanism, such as a conventional pull-down or pop-up menu.

'647 patent, Col. 4:22-31.

190.

103

HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY   SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



104

**HIGHLY CONFIDENTIAL    OUTSIDE ATTORNEYS'
EYES ONLY    SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



105

**HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY   SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647



106

**HIGHLY CONFIDENTIAL    OUTSIDE ATTORNEYS'
EYES ONLY    SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

191.

### E.      The Messenger Application

192.    The Messenger application is a software program that runs on Android and allows users to send and receive text messages. Users are able to send text messages in the Messenger application by selecting or typing a cellular telephone number or e-mail address and entering text using the on-screen keyboard.  When the user chooses to send the message, the text of the message appears on the screen along with a list of previous messages, both SMS and MMS, exchanged between the user and the recipient.  If a user receives a message, the user can view the message by entering the Messenger application and selecting the phone number or contact identifier from a list. When the user selects the appropriate phone number or contact identifier, the message along with a list of previous messages, both SMS and MMS, exchanged between the user and the sender are displayed.

193.    When a user sends or receives a text message including a phone number, URL address, email address, or a U.S. Postal address, that portion of the data is colored blue and underlined when displayed on the screen, just like an HTML link.

194.    In some versions of the Messenger application, the user can long press on a message, causing a context or options menu to appear that provides possible operations.  The options depend on the type of structures included in the message.  The user cannot select the structures in the message, but only the message as a whole.  The user can choose one of the menu items.

107

**HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY    SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

339.

340.

Accordingly, the Accused Devices do satisfy the "user interface" limitation even under Dr. Mowry's analysis because the user interface does not enable "the selection of a detected structure and a linked action."

**5.      Browser (Jelly Bean) Does Not Satisfy the User Interface Limitation Because the User Interface Does Not Enable Selection of a "Detected Structure."**

341.    Accused Jelly Bean Devices with Browser do not satisfy the limitation "a user interface enabling the selection of a detected structure and a linked action" for an additional reason.  Dr. Mowry opines that this limitation is met in paragraphs 157-158, 232-233, and 250-255 of his report, but his discussion is misleading because he obscures when the routines he identifies are called in relation to the "detection" that Dr. Mowry alleges takes place (as I detailed above in Section VIII.D.3).  To put the discussion in Section VIII.D.3 in plain terms, the user first makes a "selection" of a structure the user has identified on the screen.

*After* Dr.

223

Mowry's "detection" has taken place, the user cannot somehow re-select the structure Dr. Mowry says has been "detected"   the user input has already been made, and then detection has been performed according to Dr. Mowry.

342.    At this point, a context menu is then presented to the user, and the user *cannot* select the structure that Dr. Mowry alleges has been detected.  Although the structure the user originally detected is presented to the user (as shown below), the user is only ever selecting one of the displayed menu items and is not selecting any detected structure.  In fact, it would make no sense for the user to select the structure displayed in the menu because the user has already previously made their selection.  Such a redundant selection would serve no purpose.



**Screenshot of the Browser application in the Samsung Galaxy Nexus, after a user long presses on a phone number in a web page**

In other words, it is *impossible* for a user to select a "detected structure," because after the structure has been "detected" by Browser, the only user interface that is presented to the user actually blocks the user from further selecting the "detected structure." The user can only make selections of options from the menu   not any "structures."  Thus, though the "detected structure" identified by Dr. Mowry is displayed to the user, *it cannot be selected*.  I have confirmed this both

HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY   SOURCE CODE
EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

by using the accused devices and by examining the source code for the context menu that is created (the process of which is described in paragraph 158 of Dr. Mowry's report).  Moreover, Dr. Mowry has provided no evidence, despite having ample access to the source code, that any "detected structure" is actually selected by the user via the context menu at issue.  If selections were possible and occurring, Dr. Mowry would be able to prove this via a code trace.  He has not done so because he cannot do so.  For these reasons, it is my opinion that Accused Jelly Bean Devices with Browser do not satisfy the limitation "a user interface enabling the selection of a detected structure and a linked action."

343.   Dr. Mowry attempts to further address this limitation in paragraphs 232-233, and 250-255 of his report.  In paragraph 232.

But Dr. Mowry ignores that the "Detect Structures" button is specifically *not* described as the "user interface that enabling selection of a detected structure and a linked action."  In fact, the "Detect Structures" button is described as initiating the claimed program routines *not* as part of the user interface routines that would be initiated.  '647 patent, Col. 5:19-37.  The "user interface" is not depicted until Figure 6 (**240**), as described in Col. 5, lines 29-37, which isn't presented until *after* the "Detect Structures" button is selected and the program routines are run as described.  In other words, Dr. Mowry points to a portion of the '647 patent that only confirms that the user interface allow selection of a structure *after* it has been detected.

344.   In paragraphs 250-255, Dr. Mowry opines that the "structures are detected as the user makes the selection."  This is plainly false, as I demonstrated in Section VIII.D.3 above.

HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY   SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

345.    I note that the '647 patent specifically contemplates that selection occurs at the time the coordinates of a user's input have been determined:

> User interface 240 communicates with application 167 through application program interface 230 to determine if a user has performed a mouse-down operation in a particular mouse-sensitive presentation region, **thereby selecting the structure presented at those coordinates**. Upon selection of this structure, user interface 240 presents and enables selection of the linked candidate actions using any selection mechanism, such as a conventional pull-down or pop-up menu.

'647 patent, Col. 4:22-31.

346.

(a)    The "User Interface" Routines Dr. Mowry Identifies Do Not Infringe Under The Doctrine of Equivalents

347.    In paragraphs 252-254 Dr. Mowry purports to analyze this limitation of claim 1 under the doctrine of equivalents. I disagree. In my opinion, Dr. Mowry misstates the function from the one recited in this limitation. Dr. Mowry states "the function of this claim limitation is to present to the user a way to select structured data that is detected from a larger body of text, and to

226

**HIGHLY CONFIDENTIAL   OUTSIDE ATTORNEYS'
EYES ONLY   SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1

2

3    DATED:  September 13, 2013                    _____

4                                                  Kevin Jeffay

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647