**Redacted Version of Document to be Filed Under Seal**

# EXHIBIT B-3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**REBUTTAL EXPERT REPORT OF DR. ALEX C. SNOEREN CONCERNING U.S. PATENTS NOS. 6,847,959 AND 7,761,414**<br><br><br>**HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE** |

Nonetheless for the purpose of responding to his opinions, I will assume that each of the references Dr. Chase cites as a basis for invalidity in his report actually qualify as prior art, unless otherwise noted. My treatment of them as such should not be interpreted to suggest that I agree they do, in fact, qualify as prior art under the applicable legal standards.

### 2. The "Testing and Demonstration" Systems that Dr. Chase Built for this Case are Not Prior Art

407. In Section VIII(A) of his report, Dr. Chase refers to testing he says he conducted and directed others to conduct of "various prior art systems" discussed in his report. CR, ¶ 228.

408. Based on my understanding of the applicable legal standards, none of the test systems that Dr. Chase refers to in this section of his report are prior art. Specifically, none of them is a printed publication. Moreover, the particular systems he and Samsung built for purposes of testing and demonstration in this litigation, which involve the installation and configuration of software on various computers and devices, were not actually in public use, imported, sold or offered for sale prior to the filing date of the '414 Patent.

409. Moreover, I and others acting at my direction have inspected these systems and determined that some of the data observed in the video exhibits accompanying the Chase Report appear to be missing. Specifically, with respect to the Evolution "test system" depicted in Chase Video Exhibits 1-3, the mail data shown in those videos was not observed when the mail client was opened, thus I presume that data was deleted from the system prior to inspection. With respect to the Thunderbird "test system" depicted in Chase Video Exhibit 8, the mail data shown in that video was not observed when the mail client was opened, thus I presume that data was deleted from the system prior to inspection. With respect to the Windows Mobile "test system" depicted in Chase Video Exhibits 10, 14 and 15, the mail data shown in those videos was not observed when the mail client was opened, thus I presume that data was deleted from the system prior to inspection.

410. In addition, the Windows Mobile "test system" does not appear to provide reliable synchronization functionality through the ActiveSync application. Specifically, I observed that the HP iPAQ RX 1950 device in Dr. Chase's "test system" will not sync data via the ActiveSync

application more than once without removing the battery and rebooting the device. After the first sync, an attempt to synchronize data results in the sync icon spinning without any synchronization actually occurring.

411.    The video exhibits attached to the Chase Report are consistent with my observations and provide no evidence that the Windows Mobile "test system" Dr. Chase relied upon is capable of reliable synchronization functionality through the ActiveSync application. Chase Video Exhibits 11-13 begin with the device booting and end after the first synchronization attempt. No further synchronization attempts are shown in these videos and presumably any subsequent attempt to sync data using the ActiveSync application would have failed as I observed through inspection of this "test system." Accordingly, these video exhibits are misleading in that they suggest the synchronization functionality in Dr. Chase's "testing and demonstration" system is reliable, repeatable, and that it demonstrates the functionality he ascribes to the "Windows Mobile with ActiveSync" reference in his report—which was certainly not the case when I observed that system.

### 3.    Case Narrowing

412.    I understand that Samsung was required to limit the number of references or combinations on which it could rely. I understand that Samsung identified to the Court the following references or combinations upon which it intends to rely to allege invalidity of the '414 Patent (See July 8, 2013 Samsung's Reduction of Invalidity References (Dkt. No. 671)):

1)    Evolution

2)    iSync

3)    iTunes

4)    U.S. Patent Application Publication No. 2004/0139235 to Rashid et al. ("Rashid")

5)    Rashid, in combination with U.S. Patent No. 6,000,000 to Hawkins et al.

6)    Thunderbird

7)    U.S. Patent No. 7,506,006 to Vadlamani et al. in combination with Hill et al., Smart Client Architecture and Design Guide.

8)    Windows Mobile ActiveSync

model architecture for synchronizing multiple data classes. The Chase Report states that Mr. Bienvenu "testified that Thunderbird allowed programmers to create their own 'extensions' in order to 'plug in a different protocol class'." CR, ¶ 848. But Mr. Bienvenu did not actually testify that programmers could "plug in a different protocol class." *See* Bienvenu, 189:3-190:4. That quote came from the questioning attorney and Mr. Bienvenu qualified his answer by saying than an "extension author would have to write the code to do so" and he could not remember any such extensions other than Lightning (which, as explained above, did not predate the '414 Patent). *Id.* And Mr. Bienvenu subsequently testified that when the Lightning extension was eventually released it did not use any of the same architecture used for IMAP in Thunderbird. Bienvenu, 190:23-191:7. Accordingly, his testimony does not support that Thunderbird discloses the plug-in model architecture of claim 20.

535.   Fifth, even if it were Dr. Chase's opinion that Thunderbird disclosed a plug-in model like that of claim 20, the Chase Report does not identify any evidence to corroborate that opinion. As explained above, the only document cited in the Chase Report regarding Lightning does not evidence that it such an extension was available before the priority date of claim 20 of the '414 Patent. Moreover, the Mozilla Declaration cited in the Chase Report says nothing about when Lightning became available or the synchronization functionality, if any, it contained. And even if the oral testimony of Google employee, David Bienvenu, were legally sufficient to establish this point (which I understand it is not), Mr. Bienvenu's testimony does not actually support that Thunderbird disclosed the plug-in model architecture of claim 20.

536.   For all of these reasons, it is my opinion that Thunderbird does not anticipate claim 20 of the '414 Patent.

### 9.   Windows Mobile with ActiveSync

537.   The Chase Report refers to two different versions of Windows Mobile software, specifically Windows Mobile 2003 and Windows Mobile 5.0, but does not specifically define to its term "Windows Mobile" to refer to either or one or both of these versions. CR, ¶ 531. Moreover, for some of the documents and testimony cited in the Chase Report it is unclear whether they relate to

Windows Mobile 2003, Windows Mobile 5.0 or some other version. The Chase Report does not address this ambiguity, but appears to assume that all of these materials refer to Windows Mobile 5.0, which Dr. Chase says is the basis for his opinion. *See* CR, ¶ 543.

538. In addition, the Chase Report makes assertions regarding dates for the commercial availability of certain devices sold by HP and Palm that it says ran some version of Windows Mobile. CR, ¶ 534. However, the only cited basis for those statements are two documents produced, not by HP or Palm, but by Samsung. I have not seen any other support for Dr. Chase's assertion regarding the dates when any alleged Windows Mobile device were first sold in the United States. Thus, I do not agree that those dates are necessarily accurate or that the documents Dr. Chase cites are sufficient to establish those dates.

539. While, based on my understanding of the applicable legal principles, I disagree that materials describing different versions of the Windows Mobile software can combined and treated as a single reference for purposes of an anticipation analysis, I will use the term "Windows Mobile" below in the same sense as Dr. Chase in order to respond to his opinions regarding the same. Moreover, while I do not agree with the assertions in paragraph 534 of the Chase Report, I will assume those assertions are true for the purpose of responding to Dr. Chase's opinions regarding Windows Mobile. For the reasons explained below, I disagree with Dr. Chase's opinion that Windows Mobile (even when various references and versions are combined as in the Chase Report) discloses all of the limitations of claim 20.

540. In his report, Dr. Chase uses the term "Windows Mobile" to refer to the Microsoft Windows CE mobile operating system underlying Windows-based handheld devices, as well as the mobile software applications running on those devices. CR, ¶ 532. The term "ActiveSync" refers to an application on Windows Mobile that was used to synchronize data on the device. CR, ¶ 534 (citing Hall, 12:16-21; 13:5-7). The ActiveSync application uses Microsoft's ███████████ ███████████████████████████████████████████████████ *See* Hall, 12:14-21.

541.     The Chase Report refers to a diagram (shown here) of the architecture for ActiveSync communication between a client on a Windows Mobile device and an Exchange server.  *See* CR, ¶ 536.  This diagram appears in a document referred to the "TechNet Article" in the Chase Report.  It also appears in documents produced by Microsoft describing the ActiveSync protocol.  MSFT-00630-



000198 at 204.  As shown here, Windows Mobile has a ███████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████ *See* Hall, 73:24-74:4 ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Hall, 26:1-16; *see also* CR, ¶ 535 (concurring).

542.     According to the testimony of former Microsoft engineer, Gary Hall, whom Dr. Chase also relies on for his analysis, ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

543.     Mr. Hall's testimony is consistent with both my and Dr. Chase's analysis (to the extent such is clear from the Chase Report[44]) of the Windows Mobile 5 source code.[45]  Specifically, as Dr.

---

[44] Portions of the Chase Report are difficult to follow because they contain substantial grammatical and typographical errors.  *See* CR, ¶ 604.

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                                          182

Chase observes synchronization is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ CR, ¶ 587. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

544.   For these reasons, it is my opinion that Windows Mobile with ActiveSync does not disclose the "wherein the synchronization software component is configured to synchronize structured data of a first data class" limitation of claim 20. The Windows Mobile synchronization loop i▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

545.   In addition, it is my opinion that Windows Mobile with ActiveSync also does not disclose "other synchronization software components [that] are configured to synchronize structured data of other corresponding data classes" as required by claim 20. As explained herein▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

546.   The Chase Report does not appear to dispute that Windows Mobile ▇▇▇▇▇▇▇▇

---

*(Cont'd from previous page)*

[45]   The Chase Report states that Dr. Chase's source code analysis is based on the Windows Mobile 5 source code, produced at MSFT_CODE00000001-3251. CR, Ex. 3, page 1. I have reviewed the same.

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                    183

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



1  See CR, Ex. 3 at 7.  Instead, Dr. Chase

4  R, ¶ 619.  According to the Chase Report,

6  CR, ¶ 621.  I disagree with that opinion for two reasons.

7  547.

10  *See* CR, Ex. 3.I.11.e

13  548.  As Dr. Chase correctly observes in Ex. 3.I.11.e of his report,

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



549. In addition, I note that the Chase Report ▮▮▮ Should Dr. Chase or Samsung later change their position on such, I reserve the right to respond more fully at that time.

550. Second, with respect to the Chase Report's reliance on ▮▮▮

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                185

Gibson, Dunn & Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

551. In addition, it is my opinion that Windows Mobile with ActiveSync does not disclose the plug-in model architecture required by claim 20.

552. Moreover, the evidence demonstrates that Windows Mobile with ActiveSync did not disclose an extensible plug-in model architecture as required by claim 20. Mr. Hall's testimony is consistent with my analysis:

* * *

Hall, 81:1-20 (objections/interruption omitted); *see also* 89:18-90:5.

553. For all of these reasons, it is my opinion that Windows Mobile with ActiveSync does not anticipate claim 20 of the '414 Patent.

C.   **CLAIM 20 IS NOT OBVIOUS**

554. The Chase Report asserts that claim 20 of the '414 Patent is obvious in light of the

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Dated: September 13, 2013

_____
Alex C. Snoeren