**Redacted Version of Document to be Filed Under Seal**

# EXHIBIT B-6

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4   APPLE, INC., a California corporation,
 5                Plaintiff,
 6   vs.                        CASE NO: 12-cv-00630-LHK
 7   SAMSUNG ELECTRONICS CO., LTD., a
 8   Korean corporation; SAMSUNG
 9   ELECTRONICS AMERICA, INC., a New
10   York corporation; and SAMSUNG
11   TELECOMMUNICATIONS, AMERICA,
12   LLC, a Delaware limited liability
13   company,
14                Defendants.
15   _____
16
17      VIDEOTAPED DEPOSITION OF JEFFREY CHASE, Ph.D.
18                 (Taken by Plaintiff)
19                Durham, North Carolina
20              Tuesday, October 1, 2013
21           Reported in Stenotype by April Reid
22                   Job No. 66000
23
24
25
```

```
                                          Page 2                                                  Page 3
 1                                                 1         APPEARANCES
 2          ANNOUNCEMENT PAGE                      2
 3                                                 3    GIBSON DUNN & CRUTCHER
 4                                                 4    On behalf of the Plaintiff
 5   Tuesday, October 1, 2013                      5    2100 McKinney Avenue
 6   9:41 a.m.                                     6    Dallas, Texas  75201
 7   ███████████████                               7    BY:  MICHAEL VALEK, ESQUIRE
 8   ███████████████                               8
 9   Reported in Stenotype by April Reid           9
10                                                10    QUINN EMANUEL URQUHART & SULLIVAN
11                                                11    On behalf of the Defendants
12                                                12    50 California street
13                                                13    San Francisco, California 94111
14                                                14    BY:  MATTHEW WARREN, ESQUIRE
15                                                15    BY:  DEREK TANG, ESQUIRE
16                                                16
17                                                17
18                                                18    ALSO PRESENT:
19                                                19    BRENT TROUBLEFIELD, Videographer
20                                                20
21                                                21
22                                                22
23                                                23
24                                                24
25                                                25
```

```
                                          Page 4                                                  Page 5
 1            I N D E X                            1              E X H I B I T S
 2                                                 2                (Attached)
 3   THE WITNESS        JEFFREY CHASE, Ph.D        3   NO.          DESCRIPTION              PAGE
 4           EXAMINATION BY COUNSEL FOR            4
 5      PLAINTIFF         DEFENDANTS               5   Chase Exhibit 1   Rebuttal Expert Report   23
 6   By Mr. Valek         7                        6            Jeffrey Chase, Ph.D
 7                                                 7   Chase Exhibit 2   Patent No. US 7,761,414 B2   32
 8                                                 8   Chase Exhibit 3   Expert Report           136
 9                                                 9            Dr. Alex C. Snoeren
10                                                10   Chase Exhibit 4   Opening Report         174
11                                                11            Jeffrey Chase, Ph.D
12                                                12   Chase Exhibit 5   Snoeren Rebuttal Report   193
13                                                13
14                                                14
15                                                15
16                                                16
17                                                17
18                                                18
19                                                19
20                                                20
21                                                21
22                                                22
23                                                23
24                                                24
25                                                25
```

Page 234

1     And I just want to note that for the
2 record, that the statement I don't know what that
3 means, which I believe I made, is perhaps a little
4 bit too strong and that there is information in my
5 reports that bears on that question of what exactly
6 -- how exactly that should be interpreted.
7     Q.   Now, are you -- when you say there's
8 information in your reports that bears how that
9 should be interpreted, are you referring to the --
10 the term store or are you referring to the addition
11 of associated with the first database?
12    A.   I'm sorry.  I was referring to the term
13 store.
14    Q.   Okay.
15    A.   And the -- the question of the database
16 as distinct from the store, I can only believe that
17 it means the data contained within the store.
18    Q.   Okay.  And so given that interpretation
19 will you agree, sir, that the addition of --
20 associated with a first database does not add any
21 new requirement to what was already existing with
22 the claim when it said structured data in a store?
23        MR. WARREN:  Objection; lacks
24   foundation, asked and answered.
25        THE WITNESS:  I think the presumption

Page 235

1 is that the database is distinct from the
2 store by virtue of both being included in the
3 -- in the claim language and so that must be
4 interpreted in some way and that is a --
5 that's a legal question.
6 BY MR. VALEK:
7    Q.   And you're not offering an opinion on
8 that?
9        MR. WARREN:  Objection; asked and
10   answered.
11       THE WITNESS:  No.
12 BY MR. VALEK:
13   Q.   Because if you have an opinion I want
14 to hear it.  That's all I'm asking.
15       MR. WARREN:  I'm sorry, just to be
16   clear, you're asking if he is offering an
17   opinion on the claim or the change itself or
18   the partial change that you've asked in your
19   question?  I'm sorry, I'm tired.
20       THE WITNESS:  I'm tired, too.
21 BY MR. VALEK:
22   Q.   Now, your -- your prior answer was, I
23 think, the presumption of the -- in virtue of both
24 being included in the claim language and so that
25 must be interpreted in some way and that is a legal

Page 236

1 question and so my question is, do you have an
2 opinion as to how -- how the distinction between
3 those two should be interpreted from the viewpoint
4 of one of skill in the art?
5    A.   The interpretation that makes sense to
6 me is that the -- the database is referring to data
7 contained within the store and the exact
8 implications of that I think are a matter for
9 interpretation.
10       And I note that Dr. Snoeren has taken a
11 different view, that the store is actually some
12 project -- some piece of data contained within the
13 database that's relevant to a particular
14 application.  This seems to be a very vague
15 interpretation.
16       I think I will just stop there.
17       MR. VALEK:  Let's take that break.
18       THE VIDEOGRAPHER:  Off the record at
19   5:24 p.m.
20       (Recess in Proceedings).
21       THE VIDEOGRAPHER:  On record at 5:41.
22 BY MR. VALEK:
23   Q.   I'd like to ask you about some of Dr.
24 Snoeren's opinions regarding what -- specifically,
25 I'd like to ask you about paragraph 547 in his

Page 237

1 rebuttal report which is Exhibit 5.
2    A.   Yes.
3    Q.   Are you there?
4    A.   (Complies).
5        MR. WARREN:  I'm sorry, 547 you said?
6        MR. VALEK:  Yeah.
7 BY MR. VALEK:
8    Q.   Do you have it in front of you, sir?
9    A.   Yes.
10   Q.   Here Dr. Snoeren is referring to
11 that you identified in your analysis of the
12                          Do you see that?
13   A.   Yes.
14   Q.   Do you dispute Dr. Snoeren's analysis
15 that

19       MR. WARREN:  Objection; compound.
20 BY MR. VALEK:
21   Q.   And if you need to break it up, please
22 feel free to.
23   A.   Well, these

```
                                          Page 238
 1  [redacted]
 2
 3
 4
 5
 6
 7      Q.   That's not my question.  I'm going to
 8  move to strike.
 9           My question was, do you agree with him
10  that none of the providers that he's listed here, I
11  am not going to repeat them, they are in paragraph
12  547 of his report, none of those providers actually
13  create or instantiate the threads that you've
14  identified in your analysis?
15           MR. WARREN:  I will just pose a motion
16      that that was an answer, the question was
17      asked and answered.
18           THE WITNESS:  The text that you refer
19      me to does refer to language by the claim,
20      that you provide by and not the create and
21      instantiate language that you use in the
22      restatement of your question.
23           I'm sorry, I understood your question
24      to be referring to Dr. Snoeren's --
25
```

```
                                          Page 239
 1  BY MR. VALEK:
 2      Q.   Okay.
 3      A.   Opinion as stated in his report which
 4  uses the language provided by which is language
 5  from the claim --
 6      Q.   That's --
 7      A.   -- but I do not -- in answer to your
 8  question, I do -- I do not contend that any of
 9  those [redacted]
10  [redacted]                                     reates
11  or instantiates a thread.
12      Q.   Thank you.
13           Now, you've also identified --
14           MR. WARREN:  And I'll move to strike
15      that answer because it was not responsive to
16      the question because the question had to do
17      with Dr. Snoeren's opinion, but carry on.
18  BY MR. VALEK:
19      Q.   You also identifie [redacted]
20  a software synchronization component in -- in
21  Windows mobile.  Wha [redacted]       s the
22  [redacted]              configured to synchronize in your
23  opinion, sir?
24      A.   [redacted]        is configured to
25  synchronize mail data for the messaging
```

```
                                          Page 240
 1  application.
 2      Q.   Is the [redacted] synchronization
 3  functionality the point to -- in Windows mobile
 4  part of th [redacted]
 5           MR. WARREN:  Objection; lacks
 6      foundation, assumes facts not in evidence.
 7  BY MR. VALEK:
 8      Q.   Do you understand my question?
 9      A.   I do understand your question.
10           It's part of the functionality that is
11  contained in Windows mobile 5 with active sync.
12      Q.   All right.  But in your report, your
13  opening report you refer to the active sync
14  application and -- for example, in paragraph 537.
15      A.   Paragraph?
16      Q.   537.
17      A.   537.
18      Q.   Just an example.
19           Do you see that?
20      A.   Yes.
21      Q.   Is it your opinion that the [redacted]
22  synchronization functionality is part of that
23  [redacted]                hat you referred to it?
24  [redacted]    part of the [redacted]
25  [redacted]         which is part of the Windows mobile
```

```
                                          Page 241
 1  platform.
 2      Q.   Let me ask you again, sir, on page 188
 3   [redacted] ur report, paragraph 597 in describing the
 4  [redacted] thread and you say, [redacted]
 5  [redacted]
 6  [redacted]
 7  [redacted]
 8  [redacted]
 9           Do you see that?
10      A.   In paragraph?
11      Q.   597 of your report.
12      A.   I don't see the text that you quoted in
13  paragraph 597.
14      Q.   It's the first line, "In addition to
15  synchronizing to the [redacted]"
16           Do you see that?
17      A.   I see that at paragraph 596.
18           MR. WARREN:  As do I.
19           MR. VALEK:  Uh-oh.  Oh.  I -- okay.  I
20      see what the confusion is.
21           THE WITNESS:  Do you want to trade?
22           MR. WARREN:  Well --
23           MR. VALEK:  It looks like we have
24      marked -- you guys served --
25           MR. TANG:  Uncorrected version.
```

```
                                    Page 242                                           Page 243
 1     MR. VALEK: -- one version of the         1   determine if it's the text that's the same in
 2  report and then provided a corrected one    2     my copy.
 3  shortly thereafter and it looks like this one 3  BY MR. VALEK:
 4  is the --                                    4     Q.   Sure.
 5     MR. WARREN: Ah.                           5     A.   I actually apologize.
 6     MR. VALEK: -- uncorrected version        6     Q.   All right. So in the copy that you
 7  which is why there's highlighting in it.  I 7  have Exhibit 4, it's paragraph 596 and what I'm
 8  think that's what Mr. Tang is referring to as 8  asking you about is this first sentence here where
 9  well.                                        9  you say,
10     MR. WARREN: We'll --                    10
11     MR. VALEK: We'll replace this exhibit   11
12  -- we are looking at Exhibit 4, right? We'll 12
13  replace Exhibit 4 unless counsel reflects  13        Do you see that?
14  with the corrected version of the report.  14     A.   Yes.
15     MR. WARREN: Well, I guess my -- I       15     Q.   Okay. Do you agree, sir, that in your
16  mean, since this is the one we referred to we 16  report you characterize      ynchronization as
17  should keep this. If you want to mark      17  being
18  another one, we can do that, but this is the 18     MR. WARREN: Objection; lacks
19  one we've got so I don't want to replace the 19     foundation.
20  one that he didn't talk about -- I don't want 20     THE WITNESS: Yes.
21  to talk about the one that he did talk about 21     I'm sorry, I may have misspoken.
22  with the one that he didn't talk about.    22     See                   as part of the
23     MR. VALEK: Well --                      23                          which is not part of
24     THE WITNESS: If you could read me the   24  the ap
25  text that you're referring to we can        25

                                    Page 244                                           Page 245
 1  BY MR. VALEK:                                1     Sorry. Excuse me.
 2     Q.   We've test --                       2     I understand a synchronization
 3     A.   I don't know if it                  3  processing thread is provided by a synchronization
 4                                              4  software component when the component performs
 5     Q.   We've touched on it a few times today 5  operations that run on the synchronization
 6  --                                          6  processing thread which is consistent with the
 7     MR. WARREN: I'm sorry, were you done     7  deposition testimony of the inventor.
 8     with your answer or no?                  8     And also, it's the only interpretation
 9     THE WITNESS: I am done with my answer.   9  that in my view is supported by the written
10     MR. WARREN: Okay.                      10  description of the patent.
11  BY MR. VALEK:                              11     Q.   Okay. So your interpretation is that
12     Q.   We touched on it a few times today, but 12  so long as the synchronization software component
13  I understand that you and Dr. Snoeren have a 13  performs in operation on a thread that thread is,
14  different view of what the claim language provided 14  quote, provided by that component?
15  by means in -- in the context of the       15     A.   The component performs operations that
16  synchronization processing times; is that correct, 16  run on the thread which would be the same as saying
17  sir?                                       17  that the thread executes code to perform those
18     A.   Yes.                               18  operations within the component.
19     Q.   Okay. Now, what is your interpretation 19     Q.   Will you agree, sir, that under your
20  of the claim language provided by?         20  interpretation any software component that is
21     A.   I understand a thread provided by a 21  configured to synchronize data; that is, will --
22  synchronization software component to mean that the 22  that any software -- strike that.
23  synchronization software component performs 23     It's been a long one.
24  operations that run on the synchronization  24     Will you agree, Dr. Chase, that under
25  processing thread.                          25  your construction any software component that is
```

Page 246

```
 1  configured to synchronize data will necessarily
 2  provide one or more synchronization processing
 3  components?
 4          MR. WARREN:  Objection; lacks
 5      foundation.
 6          THE WITNESS:  Yes.
 7          As I've said, the patent is very vague
 8      in a number of respects, it's not in my
 9      opinion clear to one of skill in the art what
10      these terms would mean.  Certainly that's not
11      the only possible understanding, but it's one
12      that is consistent with the deposition
13      testimony of the inventor.  And my answer to
14      your question is yes.
15  BY MR. VALEK:
16      Q.   Thank you.
17          And in your opinion that will be true
18  even if the software component executes its
19  synchronization operations on a thread created by a
20  different component?
21          MR. WARREN:  Objection; incomplete
22      hypothetical, assumes facts not in evidence,
23      calls for a legal conclusion, vague.
24          THE WITNESS:  That understanding would
25      be consistent with Apple's apparent
```

Page 247

```
 1      interpretation of a thread being provided by
 2      a user application; that is, the thread
 3      executes code within the user application,
 4      it's provided by the user interface whether
 5      or not it's actually created by the user
 6      interface.
 7          For example, the main thread of a user
 8      interface is not created by the application,
 9      but it executes code within the application
10      and Apple and Dr. Snoeren and the inventor of
11      the patent apparently understand that to mean
12      that the thread is provided by the
13      application and that does seem to be
14      consistent with this understanding of this
15      rather strange and unusual language of a
16      thread being provided by a synchronization
17      software component, by my interpretation, if
18      the thread executes code from the
19      synchronization software component, whether
20      or not the component actually creates the
21      thread.
22  BY MR. VALEK:
23      Q.   Okay.  I'm going to ask the question
24  again because I don't think we got an answer.
25          I'm not asking about Apple's -- your
```

Page 248

```
 1  interpretation, Apple's interpretation or what the
 2  inventor said.  I'm asking your opinion as an
 3  expert in this case.
 4          In your view, is it the case that the
 5  synchronization software component is providing a
 6  synchronization processing thread when it executes
 7  a synchronization operation on the thread that was
 8  created by a completely different component?
 9          MR. WARREN:  Objection; asked and
10      answered, vague, incomplete hypothetical.
11          THE WITNESS:  That is the
12      interpretation that I applied in my
13      anticipation analysis and the construction
14      introduced by Dr. Snoeren in his rebuttal
15      report and in his deposition testimony
16      differs from that --
17  BY MR. VALEK:
18      Q.   Okay.
19      A.   -- but at the time that I performed my
20  anticipation analysis that was the best
21  understanding of how Apple interpreted it and
22  determined based on Apple's infringement
23  contentions.
24      Q.   Okay.  And are you sticking by the
25  interpretation that you applied in your
```

Page 249

```
 1  anticipation analysis today or are you abandoning
 2  that?
 3          MR. WARREN:  Objection; asked and
 4      answered, incomplete hypothetical, vague.
 5          THE WITNESS:  I think that it's a very
 6      vague claim term.  I don't believe there's
 7      any support in the specification or for any
 8      other interpretation and -- I think I'll just
 9      stop there.
10  BY MR. VALEK:
11      Q.   Okay.  I'm going to --
12      A.   If -- I'm sorry, if I may continue.
13      Q.   You're going to restart?
14      A.   Yeah.
15          Thank you.
16          And if the Court determines that the
17  new construction as provided by is allowable then I
18  reserve the right to provide additional analysis
19  with respect to the anticipation analysis of the
20  prior art references.
21      Q.   Let -- let me ask it a different way
22  because I just want to make sure I understand your
23  position today.
24          Is it your opinion, sir, that the
25  correct interpretation of the provided by claim
```

Page 250

```
 1   language, the correct interpretation of that would
 2   in -- strike that.
 3           Is it your opinion, sir, that under a
 4   correct interpretation of provided by a software
 5   synchronization component will provide a
 6   synchronization processing thread so long as it
 7   executes a synchronization operation on that thread
 8   even if it's a different component that actually
 9   has created that thread?
10           MR. WARREN:  Objection; lacks
11       foundation, incomplete hypothetical, asked
12       and answered.
13           THE WITNESS:  You're asking me a
14       question about a correct interpretation and
15       my response is that if the inventor of the
16       patent in his deposition testimony had said
17       that thread provided by a synchronization
18       software component means that the component
19       causes generation of the thread I would have
20       accepted that understanding, that
21       interpretation and applied it in my analysis.
22       That is not what the inventor said.
23           Apple gave no hint as to the
24       interpretation of this term in its
25       infringement contentions.  Certainly it
```

Page 251

```
 1       occurred to me that the term might be
 2       understood to mean that a synchronization
 3       component provides a thread only if the
 4       synchronization software component creates or
 5       instantiates the thread.  I think that's not
 6       an unreasonable interpretation.
 7       Nevertheless, it seems to be inconsistent
 8       with the understanding of an application
 9       providing a thread as understood by Apple.
10   BY MR. VALEK:
11       Q.   Okay.
12       A.   And so you're asking me a question
13   about what I think is the correct interpretation
14   and I think --
15       Q.   Yeah.  To be clear --
16           MR. WARREN:  Just let him finish.
17           MR. VALEK:  Let me clarify.
18           MR. WARREN:  No.
19           MR. VALEK:  Counsel --
20           MR. WARREN:  No.
21           MR. VALEK:  Counsel, you've been
22       interrupting this deposition all day.
23           MR. WARREN:  I have not been
24       interrupting all day.
25           MR. VALEK:  If you can't -- let the
```

Page 252

```
 1   witness finish.  You can redirect him.
 2       MR. WARREN:  Let him finish his answer.
 3       MR. VALEK:  Withdrawn.  I am going to
 4   ask a different question.
 5       MR. WARREN:  That's not how it works.
 6   He has to give a complete answer.
 7       MR. VALEK:  No.  No.  No.  He has to
 8   answer my questions.  I'm withdrawing the
 9   question.
10       MR. WARREN:  And you agree at no time
11   will you at trial play any portion of that
12   question?
13       MR. VALEK:  Counsel, I am going to ask
14   another question.
15       MR. WARREN:  No.
16       MR. VALEK:  Stop interrupting my
17   deposition.
18       MR. WARREN:  I am not interrupting your
19   deposition.
20       You can't interrupt my witness.  You
21   got to let him finish his answer.
22       MR. VALEK:  Sir --
23       MR. WARREN:  All I ask is that you let
24   him finish his question.
25       MR. VALEK:  I want to withdraw my
```

Page 253

```
 1   question.
 2       MR. WARREN:  Counsel, are you going to
 3   agree that that question and answer is
 4   stricken?  Because that's fine.
 5       MR. VALEK:  The question is withdrawn.
 6       MR. WARREN:  And the answer is
 7   stricken?
 8       MR. VALEK:  Yes.
 9       MR. WARREN:  And you agree to not use
10   it?
11       MR. VALEK:  Counsel, the question has
12   been withdrawn.
13       MR. WARREN:  And the answer?
14       MR. VALEK:  He hasn't been given a
15   question.  I want to ask a question and I
16   want you to be quiet.
17       MR. WARREN:  I just want you to say
18   yes, you won't rely on that partial answer?
19       MR. VALEK:  I already did.
20       MR. WARREN:  No, you didn't.
21       You won't rely on that partial answer?
22       MR. VALEK:  I will actually move to
23   strike his answer, Counsel, it has been
24   non-responsive.
25       MR. WARREN:  And you can't rely on it
```

Page 278

1     MR. WARREN:  So I will respond first on
2  the substance and then on --
3     MR. VALEK:  Sure.
4     MR. WARREN:  -- with regard to your
5  question.
6     With regard to the substance, I think
7  any analysis of this transcript, including
8  the number of questions you got to ask, the
9  number of times he gave very quick,
10 unqualified answers, particularly regarding
11 claim construction he was very helpful, I
12 think any analysis of this deposition and any
13 comparison of this particularly to Dr.
14 Snoeren would show that to the extent there
15 was some inevitable confusion, as there is
16 through every deposition, it was more than
17 made up for in terms of record saving in
18 terms of the witness being extremely
19 cooperative.
20    I know you don't agree, but you stated
21 your position so I got to state mine.  We
22 both each stated our positions on that.
23    I am going to follow the precedent in
24 the Taylor and Snoeren depositions, in both
25 depositions there was a request from Samsung

Page 279

1  for an additional ten minutes and in both
2  cases that was denied by Apple so I am going
3  to follow that precedent.
4     MR. VALEK:  Well, I am not going to
5  close the deposition, then.  I understand,
6  though, that you are going to take your
7  witness and take off.
8     MR. WARREN:  Yeah, you are right to
9  reserve, and that's what happened in the
10 Snoeren and Taylor depositions and,
11 obviously, to the extent that you want to
12 reopen this we are going to try to reopen
13 those other depositions, too.  I think it is
14 clear seven hours is seven hours.  You're --
15 I'm not, you know, barring you to make the
16 argument, you are not barring me from making
17 the argument in the future, but we're done.
18    MR. VALEK:  So if I try to ask a
19 question you are not going to let him answer?
20    MR. WARREN:  That is correct.
21    MR. VALEK:  Okay.  Thank you.
22    THE VIDEOGRAPHER:  This concludes the
23 deposition.  The time is 7:02 p.m.
24    (THEREUPON, the videotaped deposition
25 was concluded at 7:02 p.m.)

Page 280

1  STATE OF NORTH CAROLINA
2  COUNTY OF MECKLENBURG
3     I, April Reid, CLR, in and for the State of
4  North Carolina, do hereby certify that there came
5  before me on Tuesday, October 1, 2013, the person
6  hereinbefore named, who was by me duly sworn to
7  testify to the truth and nothing but the truth of his
8  knowledge concerning the matters in controversy in
9  this cause; that the witness was thereupon examined
10 under oath, the examination reduced to typewriting
11 under my direction, and the videotaped deposition is a
12 true record of the testimony given by the witness.
13    I further certify that I am neither attorney
14 or counsel for, nor related to or employed by, any
15 attorney or counsel employed by the parties hereto or
16 financially interested in this action.
17    This, the 2nd day of October, 2013.
18
19    _____
20
21         APRIL REID, RPR, CRR, CLR
22         Notary Public #2003237014
23
24
25

Page 281

1  NAME OF CASE: Apple Inc v. Samsung Electronics Company
          Limited (Case No: 12-CV-00630-LHK)
2  DATE OF DEPOSITION: 10/1/2013
3  NAME OF WITNESS: Jeffrey Chase, Ph.D.
4  Reason Codes:
5     1. To clarify the record.
6     2. To conform to the facts.
7     3. To correct transcription errors.
8  Page _____ Line _____ Reason _____
9  From _____ to _____
10 Page _____ Line _____ Reason _____
11 From _____ to _____
12 Page _____ Line _____ Reason _____
13 From _____ to _____
14 Page _____ Line _____ Reason _____
15 From _____ to _____
16 Page _____ Line _____ Reason _____
17 From _____ to _____
18 Page _____ Line _____ Reason _____
19 From _____ to _____
20 Page _____ Line _____ Reason _____
21 From _____ to _____
22 Page _____ Line _____ Reason _____
23 From _____ to _____
24
25         _____