**Redacted Version of Document to be Filed Under Seal**

# EXHIBIT B-9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**EXPERT REPORT OF DR. ALEX C. SNOEREN CONCERNING U.S. PATENT NOS. 6,847,959 AND  7,761,414**<br><br><br><br>**HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE**<br><br>**GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE** |

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................1

II. EXECUTIVE SUMMARY ..............................................................................................1

    A. The '959 Patent...................................................................................................1

        1. Overview of the '959 Patent ...................................................................1

        2. Usage of the '959 Patent Technology ....................................................3

        3. Infringement Overview ...........................................................................5

    B. The '414 Patent...................................................................................................7

        1. Overview of the '414 Patent ...................................................................7

        2. Usage of the '414 Patent Technology ....................................................9

        3. Infringement Overview .........................................................................10

III. BACKGROUND AND QUALIFICATIONS ..................................................................12

IV. MATERIALS REVIEWED ............................................................................................13

V. SUMMARY OF OPINIONS ..........................................................................................13

VI. LEGAL STANDARDS ..................................................................................................14

    A. Claim Construction...........................................................................................14

    B. Infringement.....................................................................................................14

VII. SAMSUNG ENTITIES ..................................................................................................16

VIII. The ACCUSED PRODUCTS .........................................................................................17

IX. THE '959 PATENT ........................................................................................................18

    A. One Of Ordinary Skill In The Art.....................................................................18

    B. Description and Technological Concepts of The '959 Patent ..............................18

        1. Technological Concepts In The '959 Patent...........................................19

        2. Description Of The '959 Patent .............................................................22

    C. Asserted Claims of The '959 Patent ..................................................................24

    D. Claim Analysis .................................................................................................24

        1. Claim 24..............................................................................................25

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

     2.     Claim 25.................................................................35

E.     Accused Instrumentalities.................................................36

     1.     The Accused Products...............................................36

     2.     The Google Search Application.................................38

     3.     The Operation of the QSB.........................................42

     4.     Content Providers.....................................................58

F.     Infringement.....................................................................87

     1.     Claim 24...................................................................89

     2.     Claim 25.................................................................105

     3.     Inducement.............................................................106

     4.     Contributory infringement.....................................110

G.     Samsung's Alleged Non-Infringing Alternatives To The '959 Patent.....................111

     1.     First Alleged Alternative (Page 156, line 24 – page 157, line 8)..................111

     2.     Second Alleged Alternative (Page 157, lines 9-28)................113

     3.     Third Alleged Alternative (Page 158, lines 1-20)........................114

     4.     Fourth Alleged Alternative (Page 159, line 21 – Page 160, line 2; page 174, line 9 – page 175, line 2)........................115

     5.     Fifth Alleged Alternative (Page 159, lines 3-6)........................117

     6.     Sixth Alleged Alternative (Page 159, lines 7-12)........................118

     7.     Seventh Alleged Alternative (Page 159, lines 13-16)..................118

     8.     Eighth Alleged Alternative (Page 159, lines 17-22)....................119

     9.     Ninth Alleged Alternative (Page 175, lines 3-5)........................120

     10.    Tenth Alleged Alternative (Page 175, lines 5-10)........................121

     11.    Eleventh Alleged Alternative (Page 175, lines 11-18)................122

H.     Samsung's Non-Infringement Contentions................................123

     1.     First Non-Infringement Contention...............................123

     2.     Second Non-Infringement Contention.........................124

     3.     Third Non-Infringement Contention............................124

4.      Fourth Non-Infringement Contention ........................................................124

5.      Fifth Non-Infringement Contention ..........................................................124

6.      Sixth Non-Infringement Contention ..........................................................124

7.      Seventh Non-Infringement Contention .......................................................125

8.      Eighth Non-Infringement Contention .........................................................125

9.      Ninth Non-Infringement Contention ..........................................................125

10.     Tenth Non-Infringement Contention ..........................................................125

11.     Eleventh Non-Infringement Contention ......................................................126

12.     Twelfth Non-Infringement Contention .......................................................126

13.     Thirteenth Non-Infringement Contention ...................................................126

14.     Fourteenth Non-Infringement Contention ...................................................127

15.     Fifteenth Non-Infringement Contention .....................................................127

16.     Sixteenth Non-Infringement Contention.....................................................128

17.     Seventeenth Non-Infringement Contention .................................................128

18.     Eighteenth Non-Infringement Contention ...................................................128

19.     Nineteenth Non-Infringement Contention ...................................................129

20.     Twentieth Non-Infringement Contention ....................................................129

21.     Twenty-first Non-Infringement Contention..................................................130

22.     Twenty-second Non-Infringement Contention .............................................130

I.      Use by Apple of The '959 Patented Technology ...................................................130

X.    THE '414 Patent .................................................................................................134

A.      One of Ordinary Skill in The Art...............................................................134

B.      Description and Technological Concepts of The '414 Patent .......................135

1.      Technological concepts of the '414 Patent ...................................135

C.      Asserted Claims of The '414 Patent ...........................................................138

D.      Claim Analysis........................................................................................138

1.      Claim 11................................................................................139

2.      Claim 20................................................................................148

E.      Accused Instrumentalities .................................................................149

        1.      Android Synchronization Framework...........................................151

        2.      The Gmail, Mail, Calendar and Contacts Applications .................152

F.      Infringement.............................................................................162

        1.      Claim 11 ....................................................................164

        2.      Claim 20 ....................................................................173

        3.      Inducement ..................................................................175

        4.      Contributory infringement ...................................................179

G.      Samsung's Alleged Non-Infringing Alternatives ...............................180

        1.      First Alleged Alternative (page 160, lines 3-17) ..........................181

        2.      Second Alleged Alternative (page 160, line 18 – page 161, line 3) ..............183

        3.      Third Alleged Alternative (page 161, lines 4-16)...........................183

        4.      Fourth Alleged Alternative (page 161, lines 17-28) .......................185

        5.      Fifth Alleged Alternative (page 162, lines 1-17)...........................186

        6.      Sixth Alleged Alternative (page 175, lines 20-26) ........................187

        7.      Seventh Alleged Alternative (page 175, line 27 – page 176, line 5) ...........188

        8.      Eighth Alleged Alternative (page 176, lines 6-12) ........................189

        9.      Ninth Alleged Alternative (page 176, lines 13-22)........................190

        10.     Tenth Alleged Alternative (page 176, line 23 – page 177, line 5)................191

H.      Samsung's Non-Infringement Contentions........................................192

        1.      First Non-infringement Contention ........................................192

        2.      Second Non-infringement Contention .....................................192

        3.      Third Non-infringement Contention .......................................192

        4.      Fourth Non-infringement Contention .....................................193

        5.      Fifth Non-infringement Contention .......................................194

        6.      Sixth Non-infringement Contention .......................................194

        7.      Seventh Non-infringement Contention ....................................194

        8.      Eighth Non-infringement Contention ......................................194

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

9.      Ninth Non-infringement Contention.................................................................195

10.     Tenth Non-infringement Contention.................................................................195

I.      Use by Apple of The '414 Patented Technology......................................................195

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

construed "heuristic algorithm" was employed by a "heuristic module."  In claim 1 of the '959 Patent there are "a plurality of plug-in modules each using a different heuristic."  Here, in claim 24 of the '959 Patent, the "plurality of heuristics" are two or more modules that each implement a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters, as defined by the Court.

102.    In its First Supplemental Response to Interrogatory No. 29[6] Samsung agrees that the '959 Patent (including claim 24) requires a plurality of modules to perform searches.  Specifically, Samsung states, "[a]nother non-infringing alternative to the '959 Patented technology would only use a single module to perform all searches and to interact with each possible set of data.  Such an alternative lacks the following elements of the asserted claims: 'a plurality of plug-in modules each using a different heuristic' [from claim 1] and '*plurality of heuristics*.' [from claim 24]" Samsung's Further Supplemental Responses to Apple's First, Third, And Tenth Sets of Interrogatories at 159 (emphasis added).  I agree with Samsung that in order to meet the claim limitation of a "plurality of heuristics" more than one module is required.

103.    The Court construed "heuristic algorithm" to mean "a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters." PI Order at 17.  In my opinion, in the context of the '959 Patent, one skilled in the art would consider such a "rule of thumb" to refer to a methodology that has been derived from past experience to produce useful search results in a reasonable period of time.  Moreover, such a heuristic is necessary because the information identifier provided by the user is typically insufficiently specified to uniquely indicate the piece of information he or she may be attempting to locate—in other words, applying straightforward constraint satisfaction would lead to unsatisfactory results.  Hence, each of the heuristics applies a rule of thumb that seeks to further specify the items to search for in a way likely to expediently lead to the user's desired result.

104.    There are a variety of ways in which one could encode a rule of thumb, but, at the end

---

[6] Samsung's most recent Second Supplemental Response to Interrogatory No. 29 states that Samsung is further supplementing its response, not replacing the response in the First Supplemental Response cited here.

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

of the day, it must be translated into a set of deterministic instructions that a computer program can execute. In the particular context of the '959 Patent, these instructions relate to searching the Internet and local storage media. One way to encode data on a local storage media is through a database, which can be subsequently accessed through the use of structured queries written in a query language such as SQL. Hence, one embodiment of a heuristic algorithm is a particular query (or set of queries) that has been carefully crafted to extract information most likely to be of interest to the user.

105.



106.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

107.

108.     These types of heuristics are not meant to be complete, but represent characteristics found in many effective heuristic algorithms.  In general, however, a heuristic algorithm is likely to combine aspects of each of the above into a carefully crafted heuristic most applicable to the particular location being searched.  Moreover, a heuristic algorithm is also likely to contain any number of non-heuristic sub-components (e.g., simply applying an exact match filter).  The defining characteristic, however, remains that the logic applied by the algorithm, when considered in totality, implements a rule of thumb.

### d.     Which include the Internet and local storage media

109.     In order to infringe claim 24 the "plurality of heuristics" are used to locate information in the plurality of locations which include the Internet and local storage media.  Each of the plurality of locations is searched using one "of the plurality of heuristics."

### (i)     Internet

110.     For the Internet location, one of the "plurality of heuristics" uses "a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters" on the device to find information corresponding to the information identifier.  That is, to infringe this claim the heuristic employed must be implemented in a module on the device, not remotely on a server on the Internet.

111.     This is how one of skill in the art would understand the claims and it is supported by the '959 Patent specification.  In distinguishing the prior art the '959 Patent says:

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



230.

231.

232.

(*Id.* lines 219—26);

(*Id.* lines 270—5).

**F.    Infringement**

233.    As explained below, it is my opinion that the Accused Products infringe claims 24 and 25 of the '959 Patent.  In particular the Accused Products infringe claims 24 and 25 through the use of the Google Search application (also called the Quick Search Box, or the Google Search Box) and

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the associated Content Providers described above. Claim charts detailing the bases for my opinion for each Accused Product are attached hereto as Exhibit 4.



234.

235.

236.

73

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

237.    As such, the analysis below, although expressly directed to the Samsung Galaxy S III SCH-I535 running Android 4.1.2, Maintenance Release MF1 that runs the Google Search application available with Google Now version 2.0.0.438695; the Samsung Galaxy Nexus SCH-I515 running Android 4.0.4, using software build IMM76K (the source code for the Galaxy Nexus is maintained by Google, which does not provide maintenance releases like Samsung), which runs the Google Search application version 1.4.0.235179; and the Samsung Galaxy S II Epic 4G Touch SPH-D710 running Android 2.3.6, Maintenance Release EL29, which runs Google Search application version 1.1.2.64376 applies to all the Accused Products in this litigation. A further description of how these three products are representative of all the Accused Products can be found in Exhibit 5.

**1.    Claim 24**

238.    It is my opinion that the Accused Products infringe claim 24 of the '959 Patent.  My opinions are summarized in the infringement claim charts attached here as Exhibit 4.  It is my opinion that each of the Accused Products literally infringes each element of Claim 24 of the '959 Patent.  To

---

[74] As noted, Samsung argues that specific versions of certain Accused Products have the Internet-Search Only version, which Apple does not content infringes any of the asserted claims of the '959 Patent.

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the extent that any element is found not to be literally infringed, it is my opinion that each of the Accused Devices performs substantially the same function as required by each element, in substantially the same way, to achieve substantially the same result.

### a.   "A computer readable medium for locating information from a plurality of locations containing program instructions to:"

239.    I understand that the preamble to a patent claim may or may not be limiting with regards to the scope of the claim.  I do not provide an opinion as to whether or not the preamble to claim 24 of the '959 patent is limiting.  I do, however, opine that to the extent the preamble is a limitation, this limitation is met by the Accused Products.  Thus, in my opinion, the Samsung Accused Products are a computer readable medium for locating information from a plurality of locations containing program instructions to perform the following elements.[75]

240.    By way of representative examples, the Samsung Galaxy S III, Samsung Galaxy Nexus and Samsung Galaxy S II Epic 4G Touch each include a processor, *see* fn. 7, *supra*, computer memory and a radio for communications over a wireless telephone  network and over Wi-Fi, *see* fn. 7, *supra*.  In addition these devices include the Google Search application for locating information from a plurality of locations containing program instructions to perform the following elements.  This is seen in the screen shots below showing the home screen of each product.

---

[75]  I have reviewed Samsung's response to Apple's Interrogatory No. 24 requesting Samsung to identify why it contends it does not infringe each of the asserted patents.  In particular, I have reviewed Samsung's Supplemental Responses to Interrogatory No. 24 related to the '959 Patent, dated July 15, 2013, including both a First and Second Supplemental Response to Apple's Interrogatory No. 24, the latter of which is dated July 15, 2013 ("Samsung Contentions").  In the Samsung Contentions Samsung does not dispute that the Accused Products meet this limitation.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



(Home Screen of the Samsung Galaxy S III, Samsung Galaxy Nexus, and Samsung Galaxy S II Epic 4G Touch from left to right)

241.    The Google Search application is computer software and therefore comprised of instructions to be executed by a processor. The Google Search application is started when the Product is powered on and therefore the instructions for the Google Search application are loaded from permanent flash memory into RAM memory so that the instructions can be executed by the processor on the device.

           **b.**        **"receive an information identifier;"**

242.    It is my opinion that the Accused Products contain program instructions to receive an information identifier.[76]

---

[76]  In the Samsung Contentions Samsung does not dispute that the Accused Products meet this limitation.



HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

243.    By way of representative example, as described above, a user can enter an information identifier into the Google Search application for the Samsung Galaxy S III, Samsung Galaxy Nexus and Samsung Galaxy S II  Epic 4G Touch  using the keyboard available on the device as shown in the screen shots below.  The search term being entered, here "app," identifies what information the user is searching for and is therefore an information identifier.



(Google Search application with keyboard and search term entered for Samsung Galaxy S III, Samsung Galaxy Nexus, and Samsung Galaxy S II Epic 4G Touch from left to right)

    **c.**    **"provide said information identifier to a plurality of heuristics to locate information in the plurality of locations which include the Internet and local storage media;"**

244.    It is my opinion that the Accused Products contain program instructions to provide said information identifier to a plurality of heuristics to locate information in the plurality of locations which include the Internet and local storage media.

245.    ████████████████████████████████████

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

246.

247.

        **(i)**      **Samsung Galaxy S II Epic 4G Touch**

248.

249.

77

78

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414           93

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



250.

1)      **Web**

252.

79

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                    94

253.

254.

255.



256.    I understand that Samsung has taken the position with regard to alleged prior art that the heuristic or rule of thumb may be performed on the remote server on the Internet.  I disagree.  However, to the extent that Court agrees with Samsung, the search suggestions provided by Google are heuristically derived (based on rules of thumb and does not consist solely of constraint satisfaction parameters) so the Web module would meet this claim limitation under this interpretation.  It is well known that Web search engines, of which Google is one, use heuristics to determine search results.  *See, e.g.* Xing, Ming, Doozan, Snoeren et al., Take This Personally: Pollution Attacks on Personalized Services, USENIX Security '13, Washington, DC (August 2013) *available at* http://cseweb.ucsd.edu/~snoeren/papers/pollution-usesec13.pdf *produced at* APLNDC630-0001911823; Search Engine Land, Google now personalizes everyone's search results *available at* http://searchengineland.com/google-now-personalizes-everyones-search-results-31195 *produced at* APLNDC630-0001911839.  Moreover, Google search suggestions, which provide suggested web searches, are also determined through rules of thumb and does not consist solely of constraint satisfaction parameters.  Google's web site describing search suggestions (called autocomplete here) says, "[t]he search queries that you see as part of autocomplete are a reflection of the search activity of all web users and the content of web pages indexed by Google." Google: Autocomplete, *available at* https://support.google.com/websearch/answer/106230?hl=en *produced at* APLNDC630-0001906232.  That is the rule of thumb employed provides users with suggestions that

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

are popular searches on the web and is based on the Google index for a page.

257.



258.

259.

260.     As such the Contacts Content Provider is a module having 'a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters.'   The Contacts Content Provider further locates information on local storage media as required by Claim 24.

261.

**(ii)     Samsung Galaxy Nexus**

262.     The Samsung Galaxy Nexus receives an information identifier as shown in the screen shot above. Also as described above, the Samsung Galaxy Nexus sends the information identifier to

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the modules enabled in the Search Settings screen.  The Samsung Galaxy Nexus therefore contains program instructions to provide said information identifier to a plurality of heuristics to locate information in the plurality of locations that include the Internet and local storage media.

263.     In this report I focus on the Google, Contacts, Browser and Google Play Music Content Providers.  As described above each of those Content Providers are modules.

**1)      Google**



264.

265.

266.

267.

268.

269.     I understand that Samsung has taken the position with regard to alleged prior art that the heuristic or rule of thumb may be performed on the remote server on the Internet.  I disagree.

Gibson, Dunn
& Crutcher LLP

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                                  97

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

However, to the extent that Court agrees with Samsung, as explained above the search suggestions provided by Google are heuristically derived (based on rules of thumb and does not consist solely of constraint satisfaction parameters) so the Google Content Provider would meet this claim limitation under this interpretation.

**2) Contacts**



270.

271.

272.

273.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                          98

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



274. As such the Contacts Content Provider is a module having 'a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters.'

275.

### 3)    Browser

276.

277.

278.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

279.    As such the Browser Content Provider is a module having 'a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters.'

280.

### 4)    Google Play Music

281.

282.    As such the Google Play Music Content Provider is a module having 'a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters.'

283.

### (iii)    Samsung Galaxy S III

284.    The Samsung Galaxy S III receives an information identifier as shown in the screen shot above. Also as described above, the Samsung Galaxy S III sends the information identifier to the modules enabled in the Search Settings screen.  The Samsung Galaxy S III therefore contains program instructions to provide said information identifier to a plurality of heuristics to locate information in the plurality of locations that include the Internet and local storage media.

285.    In this report I focus on the Google, Contacts, Browser and Google Play Music Content Providers.  As described above each of those Content Providers are modules.

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1) **Google**

286. 

287.

288.

289.    As such the Google Content Provider is a module having 'a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters.'

290.    The Google Content Provider further locates information on the Internet as required by Claim 24.  As discussed above, to infringe this claim the heuristic or 'rule of thumb' employed must be implemented in a module on the device, not remotely on a server on the Internet.  The rule of thumb implemented by the Google Content Provider is located and executed on the Samsung Galaxy Nexus itself and is not based on how the Google suggestions server chooses to return results.

291.    I understand that Samsung has taken the position with regard to alleged prior art that the heuristic or rule of thumb may be performed on the remote server on the Internet.  I disagree.  However, to the extent that Court agrees with Samsung, as explained above the search suggestions provided by Google are heuristically derived (based on rules of thumb and does not consist solely of constraint satisfaction parameters) the Google Content Provider would meet this claim limitation under this interpretation.

2) **Contacts**

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                101

Gibson, Dunn
& Crutcher LLP

292.



293.

294.    As such the Contacts Content Provider is a module having 'a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters.'

295.

**3)**     **Browser**

296.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

297. As such the Browser Content Provider is a module having 'a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters.'

298.

### 4) Google Play Music

299.

300. As such the Google Play Music Content Provider is a module having 'a search algorithm that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters.'

301.

### d. "determine at least one candidate item of information based upon the plurality of heuristics;"

302. It is my opinion that the Accused Products contain program instructions to determine at least one candidate item of information based upon the plurality of heuristics.[80]

---

[80] In the Samsung Contentions Samsung does not dispute that the Accused Products meet this limitation.

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                        103

303.    By way of representative example, as described above, each of the Content Providers provides search results to the Google Search application which determines at least one candidate item of information received from the plurality of heuristics.  The screen shots below for the Samsung Galaxy S III, Samsung Galaxy Nexus and Samsung Galaxy S II Epic 4G Touch shows at least one candidate item of information from plurality of heuristics.  For example, each shows a candidate item of information a search suggestion for Apple.



(Google Search application with keyboard and search term entered for Samsung Galaxy S III, Samsung Galaxy Nexus, and Samsung Galaxy S II Epic 4G Touch from left to right)

e.    **"and display a representation of said candidate item of information."**

304.    It is my opinion that the Accused Products contain program instructions to display a representation of said candidate item of information.[81]

305.    By way of representative example, as described above, the Google Search application displays the candidate items of information.  The screen shots above for the Samsung Galaxy S III,

---

[81] In the Samsung Contentions Samsung does not dispute that the Accused Products meet this limitation.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                    104

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Samsung Galaxy Nexus and Samsung Galaxy S II  Epic 4G Touch  shows at the display of the candidate item of information.  For example, each shows a candidate item of information a search suggestion for Apple.

## 2. Claim 25

306.    It is my opinion that the Accused Devices infringe claim 25 of the '959 Patent.  My opinions are summarized in the infringement claim chart attached here as Exhibit 4.  It is my opinion that each of the Accused Devices literally infringes each element of Claim 25 of the '959 Patent.  To the extent that any element is found not to be literally infringed, it is my opinion that each of the Accused Devices performs substantially the same function as required by each element, in substantially the same way, to achieve substantially the same result.

a.    **The computer readable medium of claim 24, wherein the information identifier is applied separately to each heuristic.**

307.    It is my opinion that the Accused Devices have a computer readable medium of claim 24, wherein the information identifier is applied separately to each heuristic.

308.    The Google Search application applies the information identifier to each module such that no module controls whether another module receives the information identifier.  As shown above the Google Search application sends the information identifier to each of the modules based on the list of selected modules in the Search Settings screen shown below.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                          105

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

413.    Android encourages users to use its framework of Sync Adapters, "Although you can design your own system for doing data transfers in your app, you should consider using Android's sync adapter framework. This framework helps manage and automate data transfers, and coordinates synchronization operations across different apps.  When you use this framework, you can take advantage of several features that aren't available to data transfer schemes you design yourself:" a plug-in architecture "[a]llows you to add data transfer code to the system in the form of callable components. . . ." Android Developers, Transferring Data Using Sync Adapters *available at* http://developer.android.com/training/sync-adapters/index.html.  This architecture allows the Android synchronization framework to be extended to additional data classes.  *See, e.g.,* GOOG-NDCAL630-00065335 at 401

GOOG-NDCAL630-00065054  at 123

GOOG-NDCAL630-00060860 at 864

414.    As described below in more detail, all versions of Android employed by the Accused Products use this framework to synchronize at least Exchange calendar, Exchange contact, Exchange mail, Google calendar, Google contact and Gmail data between the Mail, Calendar, Contacts and Gmail applications and an Exchange or Google servers.

### 2.    The Gmail, Mail, Calendar and Contacts Applications

415.    Each of Samsung's Accused Products include storage media that stores executable

program instructions code for the Mail, Gmail, Calendar, and Contacts[87] Applications.  *See* fn. 86,

*supra*;



HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

   

(The Gmail, Mail, Calendar and Contacts applications on the Samsung Galaxy S III)

416.     By default, each application runs in its own process, which is started by Android when the user invokes the application.  *See, e.g.,* Application Fundamentals, *available at* http://developer.android.com/guide/components/fundamentals.html and produced at APLNDC630-0000879654 ("By default, every application runs in its own Linux process."); GOOG-NDCAL630-00065628 at 631 ("each application in Android lives in its own process").  Within this process, there can be multiple threads of execution.  *See generally* Processes and Threads, *available at* http://developer.android.com/guide/components/processes-and-threads.html and produced at APLNDC630-0000879713.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

a.     **Android Databases**

417.



418.

Calendar Provider, *available at*

http://developer.android.com/guide/topics/providers/calendar-provider.html and produced at

APLNDC630-0000879641; Contacts Provider, *available at*

http://developer.android.com/guide/topics/providers/contacts-provider.html and produced at

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

APLNDC630-0000879662.

419.     The Content Provider for a particular application mediates requests to read or write to that application's data to the database.  *See* Content Providers, *available at* http://developer.android.com/guide/topics/providers/content-providers.html and produced at APLNDC630-0000879700 ("Content providers manage access to a structured set of data.").  When one of the applications needs to access a certain type of information from the database, it asks the Android framework for a reference to the particular Content Provider for that class of data.  This reference is returned in the form of a ContentResolver, which provides a proxy to the underlying Content Provider.  *See* Content Provider Basics, *available at* http://developer.android.com/guide/topics/providers/content-provider-basics.html and produced at APLNDC630-0000879683.

**b.     Sync Adapters**

420.

421.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



422

423

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                    157

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



424.

AbstractThreadedSyncAdapter, *available at*

http://developer.android.com/reference/android/content/AbstractThreadedSyncAdapter.html and

produced at APLNDC630-0000879625.

425.

*ee, e.g,* Running a Sync Adapter, *available at* http://developer.android.com/training/sync-

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                        158

adapters/running-sync-adapter.html; GOOG-NDCAL630-00061307.



426.

427.

d.

428.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



429.

---

[88] Protocol Buffers are a way of encoding structured data in an efficient yet extensible format." *See* "Protocol Buffers – Google's data interchange format," available at http://code.google.com/p/protobuf/.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

430.

431.



EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414

161

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

432.

**F.    Infringement**

433.    As explained below, it is my opinion that the Accused Products infringe claims 11 and 20 of the '414 Patent.  In particular, the Accused Products infringe claims 11 and 20 through the use of the Android synchronization architecture described above. Claim charts detailing the bases for my opinion for each Accused Product are attached hereto as Exhibit 7.

434.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

435.    Samsung periodically updates the software for the Accused Products, these updates are known as Maintenance Releases (as opposed to the Launch Release, which is the software available on the Accused Product when it is first launched).  These Maintenance Releases can include a new version of the Android platform and new versions of applications on the device.  In is response to Apple's Interrogatory No. 41 Samsung provided a list of all Maintenance Releases for each of the Accused Products, the date that Maintenance Release was available and the version of Android that the Maintenance Release corresponds to.  Additionally, Samsung indicated with asterisks those maintenance releases that Samsung contends changed functionality related to one of the patents-in-suit in this litigation.  Thus, according to the information provided by Samsung, when a Maintenance Release or Launch Release is found to infringe any subsequent Maintenance Releases without an asterisk would also infringe for the same reasons as such later Maintenance Release would provide no changes to any relevant functionality.

436.    The Claim charts attached as Exhibit 7 include references to the specific source code supporting my analysis for each Launch Release and each Maintenance Release designated by Samsung with an asterisk.  Moreover, although the

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1.      **Claim 11**

437.      As explained below, it is my opinion that each of the Accused Devices infringe each element of Claim 11 of the '414 Patent.

a.      **A computer readable storage medium containing executable program instructions which when executed cause a data processing system to perform a method comprising:**

438.      I understand that the preamble to a patent claim may or may not be limiting with regards to the scope of the claim.  I do not provide an opinion as to whether or not the preamble to claim 11 of the '414 Patent is limiting.  I do, however, opine that to the extent the preamble is a limitation, this limitation is met by the Accused Products.  Thus, in my opinion, the Samsung Accused Products contain "a computer readable storage medium containing executable program instructions which when executed cause a data processing system to perform a method" comprising the claimed elements.

439.      For example, the Samsung Galaxy S III, includes a processor, computer memory and a radio for communications over a cellular telephone network and over Wifi.  *See* fn. 86, *supra*. Moreover, I have reviewed Samsung's response to Apple's Interrogatory No. 24[89], which I understand identifies Samsung's non-infringement contentions, and Samsung does not dispute that the Accused Products meet this limitation.

---

[89]   In particular, I have reviewed Samsung's Supplemental Responses to Interrogatory No. 24 related to the '414 Patent, dated July 15, 2013, including both a First and Second Supplemental Response to Apple's Interrogatory No. 24, the latter of which is dated July 15, 2013.

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

b.  **executing at least one user-level non-synchronization processing thread, wherein the at least one user-level non-synchronization processing thread is provided by a user application which provides a user interface to allow a user to access and edit structured data in a first store associated with a first database;**

440.    It is my opinion that the Accused Products contain executable program instructions for "executing at least one user-level non-synchronization processing thread, wherein the at least one user-level non-synchronization processing thread is provided by a user application which provides a user interface to allow a user to access and edit structured data in a first store associated with a first database."

441.    Specifically, the Samsung Galaxy S III and other Accused Products include the Gmail, Email, Calendar and Contacts applications stored in memory on the device. ███████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████   Synchronization operations are performed by the Sync Adapters on separate threads.  Therefore the UI thread for the Gmail, Email, Calendar and Contacts application is a "user-level non-synchronization processing thread."

442.    The UI threads provided by the Gmail, Mail, Calendar, and Contacts applications on the Samsung Galaxy S III and other Accused Products each provide a user interface ("UI") that allows a user to access and edit structured data in a first store associated with a first database.  A screen shot of these four applications on the Samsung Galaxy S III is shown below:

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



(From left to right, the UI for the Gmail, Mail, Calendar and Contacts applications on the Smasung Galaxy S III)

443.    Data corresponding to each of these applications (*i.e.*, email for the Gmail and Mail apps, calendar items for the Calendar app and contacts for the Contacts app) is stored in a corresponding SQLite database.  SQLite databases use tables to store data in accordance with a schema.

444.

445.

446.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



447.

448.

449.

450.

451.

452.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                        167

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

  **c.**  **and executing at least one synchronization processing thread concurrently with the executing of the at least one user-level non-synchronization processing thread, wherein the at least one synchronization processing thread is provided by a synchronization software component**

453. It is my opinion that the Accused Products contain executable program instructions for "executing at least one synchronization processing thread concurrently with the executing of the at least one user-level non-synchronization processing thread, wherein the at least one synchronization processing thread is provided by a synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database."

454.

455.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414  168

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

456.

457.

disagree.  First, as I explained in the Claim Analysis section, the user-level non-synchronization processing thread need not directly write to the first database, but rather can allow for the editing of data in that database by communicating with other software to write to that database.

458.

---

[90]  Samsung's response to Apple's Interrogatory No. 24.

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                                169

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

459.

Moreover, I note that Samsung's argument is also inconsistent with the Patent Office examiner's observation that the claims "as written do not require both threads to modify the data structure concurrently." Office Action dated July 9, 2009 at 2.

460.

461.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

**d.** **which is configured to synchronize the structured data from the first database with the structured data from a second database.**

462. ███████████████████████████████████████

████████████████████████████████████████████ As explained more fully below, each of these services store the corresponding user data in a remote database that is synchronized with the data in corresponding database on the Accused Products. Thus, each of these Sync Adapters is a separate "synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database," wherein the second database is the database maintained by the corresponding remote service.

463. ███████████████████████████████

████████████████████████████████████████████ The Exchange server stores all this data in a database that imposes a structure on its version of the data based on a schema. *See, e.g.,* Balducci, 110:11-111:25; 117:2-5 (testifying that Microsoft Exchange Server 2011 and 2013 store user mail, calendar and contacts data in a database); Overview of Exchange Server Database Architecture and Database Engine, *available at* http://support.microsoft.com/kb/271987 and produced at APLNDC630-0000879859.

██████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████ n addition to my review of documents, source code and testimony, I have confirmed this by syncing a Galaxy SIII to a Microsoft Exchange account and observing the fact that changes to mail, calendar and contact data made on the device appear in Microsoft Outlook on a remote computer configured to access the same account and vice versa.  Accordingly, it is my opinion that the Exchange Mail, Calendar and Contacts Sync Adapters on the Galaxy SIII and other Accused Products are each a "synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database."

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                    171

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

465.

466.　　According to a recent Google publication, the storage system Google uses for Gmail and Google Calendar is called Megastore.  Corbett *et. al.*, "Spanner: Google's Globally-Distributed Database," *Proc. of OSDI.* 2012, available at http://research.google.com/archive/ spanner.html and produced at APLNDC630-0000879868 ("Spanner Paper") at 4.  The details of the MegaStore architecture are described in a separate Google publication:  Baker *et. al.*, "Megastore: Providing Scalable, Highly Available Storage for Interactive Services," *Proc. of CIDR 2011*, available at http://research.google.com/pubs/pub36971.html and produced at APLNDC630-0000879847 ("Megastore Paper").  In its Megastore Paper, Google describes the MegaStore architecture as a database.  *See, e.g.*, Megastore Paper at 223 and 227.  Based on my review of this paper as well as my experience, I agree that the Megastore architecture is a database.  In addition to Megastore, I am aware of other Google storage architectures called Spanner and BigTable.  Details of the Spanner architecture are described in Google's Spanner Paper, which describes Spanner as a "database."  *See, e.g.,* Spanner Paper at 1.  Details of the BigTable architecture are described in an earlier Google paper.  Chang *et. al.*, "Bigtable:  A Distributed Storage System for Structured Data," *Proc. of OSDI.* 2006, *available at* http://research.google.com/archive/bigtable.html.  Based on my review of these papers as well as my experience, it is my opinion that the Spanner and BigTable architectures are databases.

467.　　All three of these Google papers are well known in the art and considered to be reliable sources of information by experts in the field such as myself.  For example, the Spanner

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Paper that Google presented at OSDI in October 2012 won the Jay Lepreau Best Paper Award at that conference.  Moreover, as indicated above, Google continues to publish all three of these papers on its website.

468.  ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████  Similarly, I have seen no evidence to the contrary.

Moreover, the other published Google storage architectures, BigTable and Spanner, are also databases.   Accordingly, it is my opinion that the Gmail and Google calendar services use a database to store user data.  To the extent Google later identifies a different storage architecture for these services, I reserve the right to supplement my analysis.

469.  Mail, calendar and contacts data is synchronized between the Galaxy SIII and other Accused Products and data stored in the database utilized by the Gmail and Google Calendar services.  In addition to my review of documents, source code and testimony, I have confirmed this by syncing a Galaxy SIII to a Gmail and Google Calendar account and observing the fact that changes to mail, calendar and contact data made on the device appear when those services are accessed from a remote computer and vice versa.  Accordingly, it is my opinion that the Gmail, Google Calendar and Google Contacts Sync Adapters on the Galaxy SIII and other Accused Products are each a "synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database."

### 2. Claim 20

470.  It is my opinion that the Accused Devices literally infringe claim 20 of the '414 Patent.  Because claim 20 depends from claim 11, my analysis of claim 11 above also applies to claim 20.  Below I address Samsung's infringement of the additional limitations in claim 20.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

a. **The storage medium as in claim 11 wherein the synchronization software component is configured to synchronize structured data of a first data class and other synchronization software components are configured to synchronize structured data of other corresponding data classes.**

471. As explained above, the Samsung Galaxy S III and the other Accused Products contain the storage medium as in claim 11, which includes a synchronization software component," *i.e.*, the aforementioned Sync Adapters. Each of these Sync Adapters is configured to synchronize structured data corresponding to a particular data class, *i.e.*, Gmail mail, Google Calendar, Google Contacts, Exchange mail, Exchange calendar and Exchange contacts data.

472.

473.

474.



EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                              174

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

475.     Moreover, the Android synchronization architecture on the Galaxy SIII and other Accused Products is an extensible plug-in architecture.  New types of data can be synchronized using the existing framework simply by plugging in additional Sync Adapters.  Google's documents describe the benefits of this to application developers:  "Although you can design your own system for doing data transfers in your app, you should consider using Android's sync adapter framework.  This framework helps manage and automate data transfers, and coordinates synchronization operations across different apps.  When you use this framework, you can take advantage of several features that aren't available to data transfer schemes you design yourself:" a plug-in architecture "[a]llows you to add data transfer code to the system in the form of callable components…." Android Developers, Transferring Data Using Sync Adapters *available at* http://developer.android.com/training/sync-adapters/index.html

### 3.    Inducement

476.     In addition to directly infringing, it is also my opinion that Samsung actively induces infringement of claims 11 and 20 of the '414 Patent by the users of the Accused Products as well as the carriers and other companies that sell the Accused Products in the United States.  I understand that Samsung acknowledges that it has known of the '414 Patent at least since the date this lawsuit was filed in February 8, 2012.  As discussed above, it is my opinion that the Accused Products infringe claims 11 and 20 of the '414 Patent.  The Accused Products is sold as an apparatus in the

541.    The Chase Report refers to a diagram (shown here) of the architecture for ActiveSync communication between a client on a Windows Mobile device and an Exchange server.  *See* CR, ¶ 536.  This diagram appears in a document referred to the "TechNet Article" in the Chase Report.  It also appears in documents produced by Microsoft describing the ActiveSync protocol.  MSFT-00630-



000198 at 204.  As shown here, Windows Mobile has a single "Sync client," that is, the ActiveSync application, that uses a single "Sync protocol" to synchronize "PIM" data with the database in an Exchange server.  *See* Hall, 73:24-74:4 ("Q:  And so the ActiveSync architecture would use the same sync client for all the different PIM types, correct?  A:  Yes") . PIM data includes multiple data classes, specifically mail, calendar and contacts data.  Hall, 26:1-16; *see also* CR, ¶ 535 (concurring).

542.    According to the testimony of former Microsoft engineer, Gary Hall, whom Dr. Chase also relies on for his analysis, ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

543.    ███████████████████████████████████████████████████████

███████████████████████ ████████ █████████████████████ █ █████████████

---

[44]  Portions of the Chase Report are difficult to follow because they contain substantial grammatical and typographical errors.  *See* CR, ¶ 604.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

544.    For these reasons, it is my opinion that Windows Mobile with ActiveSync does not disclose the "wherein the synchronization software component is configured to synchronize structured data of a first data class" limitation of claim 20.  The Windows Mobile synchronization loop is not configured to synchronize any particular data class, but rather is abstracted out such that the same software component is used to synchronize all data classes.

545.    In addition, it is my opinion that Windows Mobile with ActiveSync also does not disclose "other synchronization software components [that] are configured to synchronize structured data of other corresponding data classes" as required by claim 20.  As explained herein, the ActiveSync application does not contain multiple synchronization software components each dedicated to a corresponding data class.

546.    The Chase Report does not appear to

*(Cont'd from previous page)*

---

45  The Chase Report states that Dr. Chase's source code analysis is based on the Windows Mobile 5 source code, produced at MSFT_CODE00000001-3251.  CR, Ex. 3, page 1.  I have reviewed the same.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1

2          I declare under penalty of perjury that the foregoing is true and correct.

3

4    Dated:   August 12, 2013                     _____

5                                                 Alex C.  Snoeren

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                    197

# EXHIBIT 7-N

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

| Claim 11 of the '414 Patent | Infringement by the Samsung Galaxy S III[1] |
|---|---|
| | |
| executing at least one synchronization processing thread concurrently with the executing of the at least one user-level non-synchronization processing thread, | The Samsung Galaxy S III is a computer readable storage media containing executable program instructions which, when executed, cause the products to perform the step of executing at least one synchronization processing thread concurrently with the executing of the at least one user-level non-synchronization processing thread.<br><br>For example, the Galaxy S III (T-Mobile) running Android Jelly Bean, includes software implementing the ████████████████ which provides "an abstract implementation of a ███████ that spawns a thread to invoke a sync operation.(███████████████ available at http://developer.android.com/reference/android/content/AbstractThreadedSyncAdapter.html.) Specifically, the ████████████████ |

---

[11]  All accused versions of the Galaxy S III implement the same functionality.  *See* Table for indicated file in 414 - Galaxy S III - Source Code Appendix.

[12]  All accused versions of the Galaxy S III implement the same functionality.  *See* Table for indicated file in 414 - Galaxy S III - Source Code Appendix.

[13]  All accused versions of the Galaxy S III implement the same functionality.  *See* Table for indicated file in 414 - Galaxy S III - Source Code Appendix.  In Android version 2.3, the Email application utilizes EmailSyncAlarmReceiver, which operates identically for relevant purposes.

[14]  All accused versions of the Galaxy S III implement the same functionality.  *See* Table for indicated file in 414 - Galaxy S III - Source Code Appendix.

[15]  All accused versions of the Galaxy S III implement the same functionality.  *See* Table for indicated file in 414 - Galaxy S III - Source Code Appendix.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

| Claim 11 of the '414 Patent | Infringement by the Samsung Galaxy S III[1] |
|---|---|
| | Use of the Galaxy S III (T-Mobile) running Android Jelly Bean demonstrates that the synchronization processing thread is active concurrently[16] with the non-synchronization processing thread. For example, a user can create an event using the Calendar application on the Galaxy S III (T-Mobile) running Android Jelly Bean, as seen in this screenshot: While the user is still accessing and editing Calendar data in the Calendar application, the same event then appears in the user's Google calendar, accessed from a computer, as seen in the screenshot below. This demonstrates that the synchronization processing thread executes concurrently with at least one non- |

---

16   The Court construed "concurrently" to mean ". . . during an overlapping time interval." Claim Construction Order, 4/10/13 (D.I. 447).

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

| Claim 11 of the '414 Patent | Infringement by the Samsung Galaxy S III[1] |
|---|---|
|  | synchronization processing thread.  The Email, Contacts, and Gmail applications behave similarly with respect to the infringing functionality.<br><br> |
| wherein the at least one synchronization processing thread is provided by a synchronization software component which is configured to synchronize the structured data from the first | The Samsung Galaxy S III is a computer readable storage media containing executable program instructions which, when executed, cause the products to perform the step of executing at least one synchronization processing thread concurrently with the executing of the at least one user-level non-synchronization processing thread, wherein the at least one synchronization processing thread is provided by a synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database. |