Redacted Version of Document to be Filed Under Seal

# EXHIBIT C-2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 12-cv-00630-LHK |
| Plaintiff, | |
| vs. | **HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

**REBUTTAL EXPERT REPORT OF MARTIN RINARD, PH.D.
REGARDING NONINFRINGEMENT OF
CLAIMS 24 AND 25 OF U.S. PATENT NO. 6,847,959**

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................................1

II.   BASIS FOR OPINIONS ..........................................................................................2

    A.    Qualifications .................................................................................................2

    B.    Materials Considered .....................................................................................2

    C.    Level of Ordinary Skill In The Art ................................................................3

III.  LEGAL UNDERSTANDINGS ...............................................................................4

    A.    Infringement...................................................................................................4

    B.    Doctrine of Equivalents .................................................................................4

    C.    Prosecution History Estoppel........................................................................5

    D.    Claim Construction ........................................................................................5

    E.    Indirect Infringement .....................................................................................5

IV.   OVERVIEW OF THE '959 PATENT .....................................................................6

V.    CLAIM CONSTRUCTION......................................................................................6

    A.    Dr. Snoeren's New Construction Of "Heuristics" Is Unsupported And
           Inaccurate .......................................................................................................7

         A.1.   There Is No Requirement That "Heuristics" Must Be Located On
                 The Device......................................................................................8

         A.2.   "Heuristics" Are Not "Modules" ..................................................10

         A.3.   If Dr. Snoeren's New Construction Is Accepted, It Requires A
                 "Module" That Is "Part Of The Application" and Not "Some
                 Service or Server To Which The Application Connects".................24

    B.    Claim 25 Does Not Require An "Information Retrieval Manager" .....................26

VI.   THE ACCUSED PRODUCTS .................................................................................26

    A.    Overview Of The Accused Products................................................................26

    B.    Applications In Android .................................................................................32

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

C.      The Google Search Application ...............................................................34

D.      "Google Now" .........................................................................................38

E.      Content Providers And Custom Suggestions To The Google Search
        Application ..............................................................................................39

F.      Applications That Provide Suggestions To The GSA ...........................42

G.      The Gingerbread Contacts Content Provider ........................................44

H.      The Ice Cream Sandwich And Jelly Bean Contacts Content Provider,
        Browser Contacts Provider, And Google Play Music Content Provider .............47

I.      Errors In The Opening Snoeren Report's Analysis Of The Accused
        Products ..................................................................................................52

        I.1.    The "Google Content Provider" ...............................................53

        I.2.    Local Search History In Google Search Application 1.1.x – 1.3.0 ...........65

        I.3.    ██████████ ...................................................................71

J.      The Accused Products' Use Of Local Search History ...........................71

        J.1.    Accused ICS Products ...............................................................72

        J.2.    Accused JB Products ..................................................................75

VII.    SAMSUNG DOES NOT INFRINGE THE ASSERTED CLAIMS OF THE '959
        PATENT ..................................................................................................81

A.      Apple and Dr. Snoeren Admit That The "Internet Search Only" Design
        Does Not Infringe ...................................................................................86

B.      Alleged "Aspects" In The Opening Snoeren Report ..............................89

C.      Claim 24 Of The '959 Patent .................................................................90

        C.1.    No accused heuristic "locate[s] information in the plurality of
                locations which include the Internet" .......................................90

        C.2.    Under Snoeren's Construction Of "Heuristic," The Accused
                Products Lack A "Plurality Of Heuristics" ...............................100

        C.3.    Gingerbread Devices Running Google Search Application Version
                1.3.3 ........................................................................................107

D.      Claim 25 Of The '959 Patent .................................................................110

E.      Indirect Infringement ................................................................111

VIII.   NON-INFRINGING ALTERNATIVES TO THE '959 PATENT .................................114

A.      Non-Infringing Alternatives Generally................................................114

B.      Internet-Only Google Search Application (the Opening Snoeren Report's
        "Fourth Alleged Alternative") ...........................................................116

C.      Local-Only Google Search Application (the Opening Snoeren Report's
        "Tenth Alleged Alternative").............................................................125

D.      Dual-Mode Google Search Application (the Opening Snoeren Report's
        "Eleventh Alleged Alternative").........................................................127

E.      Google Search Application Without Local Search History (the Opening
        Snoeren Report's "Second Alleged Alternative") .................................134

IX.     THE OPENING SNOEREN REPORT ACCUSES FUNCTIONALITY
        PRESENT IN THE PRIOR ART ......................................................................138

A.      Overview.......................................................................................138

        A.1.    Claim 24, Preamble.............................................................138

        A.2.    Limitation 24A....................................................................139

        A.3.    Limitation 24C and 24D .......................................................139

        A.4.    Limitation 24B, Local Storage Media .....................................139

        A.5.    Limitation 24B, Internet.......................................................140

        A.6.    Limitation 24B, Heuristics for Locating Items In Local Storage
                Media ...............................................................................143

        A.7.    Limitation 24B, Heuristics for Locating Items in the Internet................145

B.      Snoeren's Alleged "Heuristics" That Modify The Information Identifier
        Are Present in the Prior Art ...............................................................145

        B.1.    Stemming ..........................................................................146

        B.2.    Synonym Detection..............................................................149

C.      Sorting or Ordering Results ...............................................................149

D.      Snoeren's Alleged Heuristics Combining Results Are Present In The Prior
        Art ...............................................................................................155

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

D.1.   AppleSearch ............................................................................... 156

D.2.   Evans .......................................................................................... 157

D.3.   Evans in Combination With Grossman ...................................... 158

D.4.   Jensen in Combination with Shoham ........................................ 159

D.5.   Legall in Combination With Shoham ........................................ 160

D.6.   MetaCrawler .............................................................................. 162

D.7.   Newton ....................................................................................... 163

D.8.   Sherlock ..................................................................................... 164

D.9.   Smith .......................................................................................... 165

D.10.  Smith in Combination With Shoham ........................................ 166

D.11.  WAIS.. ....................................................................................... 168

E.   To the Extent "Heuristics" Requires "Modules that Implement the
Heuristic on the Local Device," The Identified Prior Art Still Satisfies The
"Heuristics" Limitation ............................................................................ 170

X.   THERE IS NO EVIDENCE THAT APPLE PRACTICES THE '959 PATENT ...........198

A.   There Is No Evidence That Apple Practices Claim 24 Or Claim 25 Of The
'959 Patent ............................................................................................... 198

B.   Claim 34 Of The '959 Patent ................................................................ 201

XI.   COMMENTS ON THE HAUSER REPORT'S AND VELLTURO REPORTS'
DESCRIPTIONS OF THE ASSERTED PATENTS AND ACCUSED
TECHNOLOGY ............................................................................................. 204

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

Google running on any version of Android, satisfy the "plurality of heuristics" limitation.

219.    I have also reviewed Apple's infringement contentions, served July 10, 2013 which identify a number of applications on each Accused Product.   These infringement contentions accuse a number of different applications as satisfying the "plurality of heuristics" limitation of Claim 24, including Google Books, Google Movies, among others.   Dr. Snoeren provides no analysis or opinions concerning any applications other than Contacts on the Accused GB Products and Contacts, Browser, and Play Music on the Accused ICS Products and Accused JB Products.   Therefore, to the extent that Dr. Snoeren opines that these applications satisfy the "plurality of heuristics" limitation (or any other limitation), he has failed to provide any support concerning that opinion.   Accordingly, to the extent that Dr. Snoeren relies on those applications, he has failed to show or even allege that they are "heuristics" as required by Claims 24 and 25.

      **C.**      **Claim 24 Of The '959 Patent**

      C.1.      No accused heuristic "locate[s] information in the plurality of locations which include the Internet"

220.    All of the Accused Products do not infringe Claim 24 of the '959 patent at least because they do not meet the limitation: "provide said information identifier to a plurality of heuristics to locate information in the plurality of locations which include the Internet and local storage media."

221.    In the Opening Snoeren report, Dr. Snoeren identifies heuristics, specifically the "Web module" in the Accused GB Products and the alleged "Google Content Provider" in the Accused ICS Products and Accused JB Products, that he alleges locate information in the Internet.

222.    ███████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

223.    hese alleged heuristics do not locate information in the Internet. They instead, at most, locate information in local databases stored on the device and process already located information that comes from Google suggestions servers. Dr. Snoeren has therefore failed to identify any heuristics that locate information in the Internet.

224.    Dr. Snoeren takes the position that the alleged "Web" module in the Accused GB Products and the alleged Google Search suggestions module in ICS and JB devices locate information "on the Internet."  (Opening Snoeren Report, ¶¶ 255, 268, 290.)

225.    The alleged "Web" module is the only alleged module in the Accused GB Products Dr. Snoeren claims locates information on the Internet.  (*See* Opening Snoeren Report, ¶ 255.)  The alleged "Web" module does not include any heuristic or aspect of a heuristic that locates information on the Internet.

226.    Dr. Snoeren contends that the "Web module" includes a "rule of thumb" "composed of several aspects."

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

227.    Dr. Snoeren further alleges that this aspect

Neither of these alleged "aspects" locate information on the Internet, nor does Dr. Snoeren allege that they do so.

228.    In light of the foregoing, the Accused GB Products do not infringe claim 24 because they lack any heuristic for locating information on the Internet.

229.    For the Accused ICS Products and Accused JB Products, Dr. Snoeren alleges that the "Google Content Provider" employs a rule of thumb that consists of three aspects.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**



230.   The second alleged aspect is that the alleged Google Content Provider ███████

231.   The third alleged aspect is that the alleged Google Content Provider ███████

232.   Alternatively, Dr. Snoeren may be alleging that at least one of the plurality of heuristics must only satisfy two distinct requirements: 1) it must implement some rule of thumb

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

and 2) it must locate information in the Internet. Dr. Snoeren may be taking the position that the asserted claims in this case do not require the "heuristic" to use some rule of thumb to locate information in the Internet.  To the extent that this is Dr. Snoeren's position, I do not agree with this position. In fact, it is my opinion that this position is contrary to the plain language of the claims, contrary to the specification of the '959 patent, and contrary to the positions that Applicants took during the prosecution of the '959 patent.

233.    The Opening Snoeren Report acknowledges that Claim 24 of '959 patent requires that the claimed heuristics search or locate information in a plurality of locations that include the Internet and local storage media.  (*See* Opening Snoeren Report, ¶¶ 89-90: the alleged invention recited in claims 24 and 25 "employs heuristics to locate information in the local and Internet locations.")  This position is consistent with the Court's construction of "heuristic algorithm" as a "***search algorithm*** that employs some 'rule of thumb' and does not consist solely of constraint satisfaction parameters."  (Dkt. No. 221 at 18-19 (emphasis added).)  This position is further consistent with the disclosures of the '959 patent, which state that the heuristics are employed to locate information.  (*See* '959 patent at col. 4, ll. 8-10: "Each plug-in module has an associated heuristic which it employs to locate information that corresponds to the user input.")  This position is further consistent with Apple's description of the "present invention" during prosecution of the '959 patent.  (APLNDC630-0000041281-82: "The heuristics employed in the present invention operate on user supplied information to search and locate information.")  This position is likewise consistent with Apple's arguments over the prior art during prosecution of the '959 patent.  (APLNDC630-0000041293: "[The identified steps of the Stevens method] do not involve any heuristics which locate data anywhere outside of this database"; APLNDC630-0000041293: "Merely possessing knowledge that the Internet provides a wealth of information

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

from remote sites would not have taught or suggested claimed subject matter concerning heuristics that locate information in a plurality of locations including the Internet and local storage media.")

234.    As a fallback position, Dr. Snoeren states that while he does not agree that "the heuristic or rule of thumb may be performed on the remote server on the Internet," "to the extent that Court agrees with Samsung, the search suggestions provided by Google are heuristically derived (based on rules of thumb and does not consist solely of constraint satisfaction parameters) so the Web module would meet this claim limitation under this interpretation." (Opening Snoeren Report, ¶ 256.)

235.    The Opening Snoeren Report cites no reliable technical evidence regarding the operation of the Google suggestions server in support of Dr. Snoeren's infringement allegations in paragraph 256.  Based on my analysis of the evidence that Dr. Snoeren does cite in support of this allegation, it appears that Dr. Snoeren has no reliable technical evidence, such as source code, design documents, or any other evidence, that would enable him to show that the Google suggestions server implements any heuristic to locate information in the Internet. If Dr. Snoeren is in possession of any such evidence, he does not cite this evidence in the Opening Snoeren Report.

236.    It also appears that Dr. Snoeren himself has no personal knowledge of the operation of the Google suggestions server from any source whatsoever.  If Dr. Snoeren is in possession of any such knowledge, he does not present this knowledge or any basis he may have for this knowledge in his report.

237.    Dr. Snoeren generally states that it is "well known that Web search engines, of which Google is one, use heuristics to determine results." (Opening Snoeren Report, ¶ 256.)

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

238.    Web search engines, of which Google is one, may return links to web pages in response to user queries. The accused Google suggestions functionality, in contrast, returns search suggestions, not links to web pages. Whether or not Web search engines use heuristics to determine results is therefore not relevant to Dr. Snoeren's infringement positions or any other issue in this case, because the accused instructions do not provide information identifiers to, or otherwise interact with, the Google search engine or any other web search engine.

239.    Apparently in support of the allegation that Web search engines use heuristics to determine search results, the Opening Snoeren Report goes on to cite three documents. These documents are completely silent regarding the accused Google Search Application and Google suggestions server.

240.    First, the Opening Snoeren Report cites a paper published in August 2013: "*Take This Personally: Pollution Attacks on Personalized Services*, Xing, Ming, Doozan, Snoeren et al., USENIX Security '13, Washington, DC (August 2013) available at http://cseweb.ucsd.edu/~snoeren/papers/pollution-usesec13.pdf produced at APLNDC630-0001911823. This paper does not mention the accused Google Search Application, Google suggestions server, or any functionality associated with the Google Search Application or Google Suggestions server. This paper is therefore irrelevant to the issue of whether the Google Suggestions server uses heuristics.

241.    Second, the Opening Snoeren Report cites Search Engine Land, *Google now personalizes everyone's search results* available at http://searchengineland.com/google-now-personalizes-everyones-search-results-31195 produced at APLNDC630-0001911839.   This article generally describes how the Google web search engine available at google.com personalizes the results it returns in response to user queries. This article does not mention the

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

accused Google Search Application, Google suggestions server, or any functionality associated with the Google Search Application or Google suggestions server. This paper is therefore irrelevant to the issue of whether the Google Suggestions server uses heuristics.

242.    Third, the Opening Snoeren Report cites a Google web page describing autocomplete functionality available from the google.com web site:

> Moreover, Google search suggestions, which provide suggested web searches, are also determined through rules of thumb and does not consist solely of constraint satisfaction parameters. Google's web site describing search suggestions (called autocomplete here) says, "[t]he search queries that you see as part of autocomplete are a reflection of the search activity of all web users and the content of web pages indexed by Google." Google: Autocomplete, available                                                                    at https://support.google.com/websearch/answer/106230?hl=en produced at APLNDC630-0001906232. That is the rule of thumb employed provides users with suggestions that are popular searches on the web and is based on the Google index for a page.

(Original Snoeren Report, ¶ 256)

243.    This web page describes autocomplete functionality available from google.com. I note that the word "suggestions" does not appear on this page. The web page does not mention the accused Google Search Application, Google suggestions server, or any functionality associated with the Google Search Application or Google suggestions server. This web page is therefore irrelevant to the issue of whether the Google Suggestions server uses heuristics.

244.    In addition, though I have no knowledge of the internal implementation or operation of either the autocomplete functionality on the Google web site or the Google suggestions servers used by the Accused Products, I performed a test and determined that the GSA suggestions server and Google autocomplete provide different suggestions.  Below are two screenshots from a Galaxy Nexus running Android 4.0.2 and GSA version 1.4.0.235179.  On the left are suggestions displayed by the GSA after typing in "George," while on the right are

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

autocompletions displayed in by google.com in the Browser after typing in "George":



245.    Below are two screenshots from a Galaxy Nexus running Android 4.1.1 and GSA version 2.0.0.424425.   On the left are suggestions displayed by the GSA after typing in "George," while on the right are autocompletions displayed in by google.com in the Browser after typing in "George":



246.    As is apparent from the above screenshots, the google.com autocomplete functionality does not provide identical output to the suggestions server employed by the GSA.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

247.   Based on the fact that Dr. Snoeren cites no corroborating evidence, it appears that Dr. Snoeren's allegations that the Google suggestions server use heuristics are simply mere speculation.

248.   In sum, Dr. Snoeren's Opening Report fails to identify any heuristic in the Accused Products that locates information in the Internet.   The only alleged heuristics Dr. Snoeren identifies relate, at most, to locating information in a local history database, not on the Internet.   To the extent that Dr. Snoeren relies on his fallback argument concerning Google search suggestions, he has failed to show that those suggestions are generated in a heuristic manner, as two of the three documents he cites discuss search results and not search suggestions—let alone search suggestions provided to the GSA.   The third document expressly is describing "autocomplete" on Google.com, and not search suggestions for the GSA.   Thus, Dr. Snoeren has failed to show that Google search suggestions are generated using heuristics.

249.   Finally, in Exhibit 4 to the Opening Snoeren Report, Dr. Snoeren additionally opines that "The Google heuristic takes the information descriptor and searches content on the Internet. More specifically, this heuristic constructs a query to be properly handled by the Google search suggestion engine."   Dr. Snoeren does not mention or analyze this type of alleged "heuristic" in the body of his report as one of his alleged "aspects" or otherwise.   Accordingly, it is unclear whether he is proffering an opinion that constructing a query to be properly handled by the Google search suggestion engine is a heuristic that satisfies the limitations of the asserted claims.   However, to the extent Dr. Snoeren is offering the opinion that "construct[ing] a query to be properly handled by the Google search suggestion engine" is a heuristic, Dr. Snoeren has failed to allege any sort of rule of thumb other than simply "constructing a query."   (*See* APLNDC630-0000040475-76: Apple argued that claims in the '959 patent application were

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

allowable over Andreoli because, though <u>Andreoli</u> "formulate[s] a search request," Andreoli did not disclose a heuristic algorithm because "the algorithms described in <u>Andreoli</u> and referenced by the Office go to the formation of the search request and not to how the local and remote search operations employed by the processor perform a search of repositories on the network"). Moreover, Dr. Snoeren points to no alleged rule of thumb used to construct this query in the Accused Products, apparently relying on the act of constructing a query – in and of itself – as a heuristic. This is inconsistent with the file history. The applicants made clear during prosecution that assembling a query is not heuristic in traversing rejections over Andreoli. (*See* APLNDC630-0000040475-76,)  Moreover, Snoeren does not identify any reason how or why formulating a query to be properly handled by the Google search suggestions server is a heuristic.

### C.2.   <u>Under Snoeren's Construction Of "Heuristic," The Accused Products Lack A "Plurality Of Heuristics"</u>

250.   As discussed in Section V, Apple and Dr. Snoeren have taken the position that the claimed heuristics must be modules, and that modules must be part of the application and not some service or server to which the application connects.

251.   The Opening Snoeren Report provides no analysis of why any of the alleged "heuristics" are part of the application and not some service or server to which the application connects.  The Opening Snoeren Report appears to be relying on the fact that a user may select "Content Providers" to search from a settings screen on the device.  (*See* Opening Snoeren Report, ¶ 148.)  But the Jelly Bean versions of the Google Search Application do not list any "Google" item.  (*Id*.)  For at least this reason, I disagree with the Opening Snoeren Report's allegation that all 1.3.2 through 1.4.x versions of the Google Search Application "behave identically to the Google Search application on the representative Galaxy S III – Google Search

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

version 2.0.0.438695.  (Opening Snoeren Report, Exh. 4, p. 8.)

252.   In addition, with the definition of "module" put forth by Apple in this litigation, Snoeren's infringement analysis fails because, as I detail further below, for each Accused Product, all but one of the alleged "modules" that Dr. Snoeren identifies are not part of the Google Search Application.  They instead reside in separate applications than the Google Search Application and, at least in some cases, other applications communicate with as clients to obtain suggestions. Dr. Snoeren has therefore failed to identify the claimed "plurality of heuristics" in any Accused Product.  (*See* Section VI.)

253.   I also note here, that as shown above, the remaining ████████████████████

████████████████████████████████████████████████████████████████████████

(a)   *The Alleged Contacts, Browser, and Play Music "Modules" Are Not Modules Under Apple's Definition of "Module"*

254.   The Accused Products do not infringe claim 24 of the '959 patent because they do not include a plurality of "heuristics" under the Opening Snoeren Report's construction of that term.  That is, the Accused Products do not infringe claim 24 of the '959 patent because they do not include a plurality of modules.  Specifically, the Contacts Provider in Gingerbread and Contacts Provider, Browser, and Play Music Content Providers in Ice Cream Sandwich and Jelly Bean are not "modules" because they are not part of the Google Search Application, but instead reside in separate applications. Moreover, the Google Search Application communicates with these separate applications using a client/server interaction mechanism, with the Google Search Application as a client and the separate applications as servers.

255.   The Opening Snoeren Report identifies the "Contacts module" as one of the alleged infringing heuristics. As discussed above, Apple has taken the position that, to meet the

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

limitations of the asserted claims, an alleged heuristic must not be in a different application. But in the Accused Products, the Contacts module is part of the Contacts Provider application (com.android.providers.contacts, ContactsProvider.apk), not part of the accused Google Search Application.  (*See* Sections VI.G and VI.H.)  The Google Search Application also communicates with the Contacts Provider application using a client/server interaction mechanism, with the Google Search Application as the client and the Contacts Provider application  as the server.

256.    Because Dr. Snoeren has taken the position that all of the alleged "heuristics" must be modules, and because Apple has taken the position that modules must be part of the same application, Dr. Snoeren's infringement analysis fails – under Apple's own interpretation, the Contacts Content Provider is not a module and therefore not a heuristic that meets the limitations of the asserted claims.

257.



258.    Because Snoeren has taken the position that all of the alleged "heuristics" must be

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

modules, and because Apple has taken the position that modules must be part of the same application and not some service or server to which the application connects, Snoeren's infringement analysis fails - under Apple's own interpretation, the Browser and the Google Play Music "modules" are not modules and therefore not heuristics that meet the limitations of the asserted claims.

259.    For each accused device, the Opening Snoeren Report only identifies one "module" in addition to the Contacts, Browser, and Play Music Content modules (which are not modules as set forth above).  Accordingly, the Opening Snoeren Report has failed to identify a plurality of "heuristics" under the Opening Snoeren Report's construction of "heuristic" as a module.

260.    I understand that, in the Preliminary Injunction Phase of this litigation, Samsung, in their Motion to Stay and Suspend the June 29, 2012 Preliminary Injunction Pending Appeal, advanced the argument that the Court's finding that the accused Google Search Application likely infringes claim 6 of the '604 Patent was inconsistent with the Court's construction of "modules" for purposes of invalidity. I understand that the primary argument was that "[t]he Quick Search Box works exactly the same way as WAIS" and that "[i]f the WAIS servers are not 'modules' then neither are People or Browser" because "People and Browser are 'not small software programs that are parts of' the Quick Search Box; they are separate programs to which the Quick Search Box connects. If the WAIS servers are not 'modules,'then neither are People and Browser." (Samsung's July 1, 2012 Motion to Stay the Preliminary Injunction, p. 6.)

261.    In support of this argument, Samsung presented the Court with two, and only two, citations, specifically Bringert Decl. paragraph 5-7 and Polish Reply paragraph 47.

262.    I also understand that, in its Order Denying Motion to Stay, the Court denied

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

Samsung's Motion to Stay, stating:

> Samsung asserts, without citation to evidence or law, that "[t]he Quick Search Box works exactly the same way as WAIS," arguing that "[i]f the WAIS servers are not 'modules,' then neither are People and Browser." Mot. at 6. The evidence speaks to the contrary.

(Order Denying Motion to Stay, p. 5.)

263.   The Court concluded that:

> Thus, the Court is not persuaded that its finding of infringement based on the People and Browser modules is inconsistent with the ground on which it distinguished WAIS as an allegedly anticipatory reference.

(Order Denying Motion to Stay, p. 5.)

264.   The Court's reasoning was that:

> The People and Browser functions of Android's Ice Cream Sandwich are relatively simple programs that search small, locally stored databases and provide ordered results. The specification contemplates that such simple programs used for local searches are "modules." See '604 Patent 4:15-17 ("one module 221 may search the names of files stored on the local storage media 12 and the LAN storage volumes 8, to find those which match the user input"); id. at 4:17-19 ("A second module 222 may index and search the contents of files on the local and/or network storage volumes"); id. at 4:19-21 ("A third module 223 can maintain a list of the files, applications and web sites which were most recently accessed, and search this list for a match.").

(Order Denying Motion to Stay, p. 5.)

265.   First, I note that nowhere do I advance the opinion that the Google Search Application works exactly the same way as WAIS. I have no opinion one way or the other whether the evidence cited by Samsung during the Preliminary Injunction Phase was sufficient to establish that the Google Search Application works exactly the same way as WAIS in the context of the '604 patent.

266.   Having examined the evidence that I cite in my Opening Report and this Report,

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

which includes evidence not before the Court when it considered Samsung's request to stay, in my opinion the technical evidence overwhelmingly demonstrates that Browser, Contacts Provider, and Google Play Music are each separate applications that are distinct from each other and from the Accused Google Search Application. For example, each of these applications is packaged in its own Android Application Package File, runs in its own separate process with its own separate virtual machine, and has its own separate user id.

267.    Far from being parts of the same application, these applications are isolated from each other using multiple abstraction barriers developed to isolate separate applications and tightly control their interaction. When these applications interact with other applications such as the Google Search Application, they use a narrowly defined remote method invocation service. In the relevant interactions, the Browser, Contacts Provider, and Google Play Music applications act as servers that accept queries from a remote client, process the query, then return the results to the remote client, as enabled by this remote method invocation service. (SAMNDCA630-07791816/docs/reference/android/os/package-summary.html.) This is evident from a review of the relevant source code and technical documentation, none of which was before the Court when it ruled on Samsung's Motion to Stay.  For instance, I rely on source code for multiple versions of the Google Search Application, ContactsProvider application, and Browser Application, source code for the Play Music Application, extensive Android documentation including SAMNDCA630-07791816/docs/guide/components/fundamentals.html,                    SAMNDCA630-07791816/docs/guide/topics/manifest/manifest-intro.html,                    SAMNDCA630-07791816/docs/guide/topics/security/permissions.html,                    SAMNDCA630-07791816/docs/guide/topics/providers/content-providers.html,                    SAMNDCA630-07791816/docs/reference/android/content/ContentProvider.html,                    SAMNDCA630-

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

07791816/docs/guide/topics/providers/content-provider-creating.html,                SAMNDCA630-

07791816/docs/guide/topics/search/adding-custom-suggestions.html,                SAMNDCA630-

07791816/docs/reference/android/os/IBinder.html,                SAMNDCA630-

07791816/docs/guide/topics/search/searchable-config.html, and the deposition transcripts of Nathaniel Polish, Bjorn Bringert and Hiroshi Lockheimer.

268.    I also note that, far from being part of the Google Search Application, ContactsProvider implements a "central repository of data about people" on the device and, via the standard Content Provider client/server interaction mechanism, functions as a server used by multiple client applications, including, for example, the contacts application, and not just the Google Search Application. *See*, for example:

> The Contacts Provider is a powerful and flexible Android component that manages the device's central repository of data about people. The Contacts Provider is the source of data you see in the device's contacts application, and you can also access its data in your own application and transfer data between the device and online services. The provider accommodates a wide range of data sources and tries to manage as much data as possible for each person, with the result that its organization is complex. Because of this, the provider's API includes an extensive set of contract classes and interfaces that facilitate both data retrieval and modification.

(SAMNDCA630-07791816/docs/guide/topics/providers/contacts-provider.html.)

(b)    *The Alleged Web And Google Search Suggestions Modules*

269.    The Opening Snoeren Report identifies the "Google Content Provider" on Ice Cream Sandwich and Jelly Bean devices as the alleged "module" that "locates information on the Internet as required by Claim 24." (Opening Snoeren Report, ¶¶ 268, 290.) ████████████████

████████████████████████████████████████████████████████████

████████████████████████████ ccordingly, the Opening Snoeren Report has not identified any heuristic that receives an information identifier to locate information on

_____
Name

_____
Date

Sept. 13, 2013