United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APLE INC., a California Corporation, ) | Case No.: 5:12-cv-0630-LHK-PSG |
| ) | |
| Plaintiff, ) | **ORDER RE: MOTIONS TO STRIKE** |
| v. ) | **AND SEAL** |
| ) | |
| SAMSUNG ELECTRONICS CO., LTD., a ) | **(Re: Docket Nos. 877, 878, 880, 882)** |
| Korean corporation; SAMSUNG ) | |
| ELECTRONICS AMERICA, INC., a New York ) | |
| corporation; and SAMSUNG ) | |
| TELECOMMUNICATIONS AMERICA, LLC, ) | |
| a Delaware limited liability company, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Imagine if Coach John Heisman had chosen to patent his signature play, the famous fumblerooski. Claim 1 might read:

A method of advancing a football through deception, comprising:

    (a) the quarterback deliberately placing the ball on the ground upon receiving it from the center;

    (b) one or more of the remaining offensive players running to the right; and

    (c) another offensive player picking up the ball and running to the left.

1

If Heisman sued a rival for infringement in this district, his Patent Local Rule 3-1 contentions might theorize that the rival practiced the final limitation using a tackle.  Now if Heisman's expert later pointed to video of a guard, few would doubt that the expert had inappropriately disregarded the earlier contentions. But if the contentions had merely set forth that a lineman had picked up the ball, and were never challenged as requiring more specific supplementation, the expert would be understood simply to have provided an example of the earlier contention, something she is perfectly free to do long after the rival passed on the chance to seek supplementation of the contentions to specify the particular lineman completing the trickery.

Replace Coach Heisman with Apple or Samsung, and "offensive player" with "imaging device," "recording circuit," and the like, and you get an idea of the circumstances before the court. In all but a few instances identified below, in challenging an expert's designation of the right guard, the party complaining has conflated a general lineman contention for one specifying a tackle. Because the time for challenging the generality of the earlier contention has passed, the present challenges are largely a matter of too little, too late.

## II. LEGAL STANDARDS

Our district's Local Patent Rules require that parties lay out their infringement and validity contentions early enough to give their opponents a fair shot at rebuttal.  The rule "exists to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases."[1] The rules replace the "series of interrogatories that [parties] would likely have propounded" without them.[2] They are "designed to require parties to crystalize theories of the case early in the litigation and to adhere to those theories once they have been

---

[1] *XYS Corp v. Advanced Power Tech*, Case No. 02-3942, 2004 WL 1368860, at *3 (N.D. Cal. June 16, 2004).

[2] *Network Coaching Tech L.L.C., v. Novell, Inc.*, Case No. 01-2079, 2002 WL 3216128,  at *4 (N.D. Cal. Aug.. 13,  2002).

disclosed."[3] They are also designed to "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."[4]

Expert reports may not introduce theories not set forth in contentions.[5] "The scope of contentions and expert reports are not, however, coextensive."[6] Contentions need not disclose specific evidence,[7] whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them.[8] When considering a challenge such as those now before the court, the question thus becomes, has the expert permissibly specified the application of a disclosed theory, or has the expert impermissibly substituted a new theory altogether?

With this framework and these standards in mind, the court turns to the unresolved issues in the four motions before it.[9]

### III. DISCUSSION

**A. Apple's Motion to Strike Arguments from Samsung's Infringement Expert Reports Regarding Samsung Patents (Docket No. 877)**

First, Apple moves to strike Parulski's opinion that the "imaging device" limitation of the '449 patent is met by a specific component found within the CMOS image sensor rather than the

---

[3] *Nova Measuring Inst., Ltd. V. Nanometrics, Inc.*, 417 F.Supp.2d 1121, 1123 (N.D. Cal. Mar. 6, 2006).

[4] *Creagri , Inc. v. Pinnacle, Inc., L.L.C.,* Case No. 11-6635, 2012 WL 5389975, at *2 (N.D. Cal. Nov. 2, 2012).

[5] *See Fenner Investments, Ltd., v. Hewlett-Packard Co.*, Case No. 08-0273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010).

[6] *See id.*

[7] *See Creagri,* 2012 WL 5389775, at *2.

[8] *See* Fed. R. Civ. P. 26(a)(2)(B).

[9] The court regrets that the press of time precludes a complete rehashing of the parties' respective positions here. The parties may presume that in ruling on any particular expert opinion, the court has adopted the proposed factual findings and legal conclusions of the party urging the ruling and rejected those in opposition.

3
Case No.: 5:12-cv-0630-LHK-PSG
ORDER RE: MOTIONS TO STRIKE AND SEAL

CMOS image sensor as a whole.[10] Apple argues that this court's order of June 26, 2013 precluded theories based on these components.[11] Apple is mistaken. That order only precluded doctrine of equivalence arguments regarding those components, which are not relevant to the literal infringement here.[12] Parulski is simply pointing to a specific example of the sensor that was disclosed in Samsung's infringement contentions.[13] That is entirely appropriate. Apple's motion is DENIED.

Second, Apple moves to strike Parulski's opinion that the "recording circuit" limitation of the '449 patent is met by an interface circuit and other components not previously identified.[14] Samsung does not contest that the last sentence of paragraph 202 of Parulski's report discussing the interface circuit propounds a new theory,[15] so Apple's motion is GRANTED as to that sentence. However, it is DENIED as to the remainder of Parulski's opinion regarding the recording circuit, as the memory and "controller" in question are specific examples of the NAND flash module previously disclosed in Samsung's contentions.

Third, Apple moves to strike Parulski's opinion that the "reproducing circuit" limitation of the '449 patent is met by a "display pipeline" and an "audio subsystem," which were not previously specifically identified.[16] Here, but for some artful drafting by Samsung, Apple might have a point. Unlike with the "imaging device limitation, Samsung's contentions disclosed the graphical processing unit, a specific subpart of the larger chip in question (the system-on-chip), and

---

[10] *See* Docket No. 877-4 at 10.

[11] *See id.* at 9.

[12] *See* Docket No. 636 at 25.

[13] *See* Docket No. 963-3 at 23.

[14] *See* Docket No. 877-4 at 11.

[15] *See* Docket No. 963-3 at 23.

[16] *See* Docket No. 877-4 at 11-12.

4
Case No.: 5:12-cv-0630-LHK-PSG
ORDER RE: MOTIONS TO STRIKE AND SEAL

now its expert is specifying a different component. However, the graphical processing unit was explicity disclosed as an "example" of a subpart of the system-on-chip that might infringe the patent. The contention itself was directed at the whole chip. Accordingly, Apple's motion must be DENIED.

Fourth, Apple moves to strike Schonfeld's opinion that Mac OS or iOS devices may satisfy the "zone specific storage and interface" limitation of the '757 patent if those devices are confined to a residence or connected to a Wifi network. This challenge is perplexing, given that Apple's own brief cites language from the contention indicating that an Apple product "may reside in a room or similar location" to satisfy this limitation, and the contention cited specifically lists both iOS devices and Mac OS devices.[17] Apple's motion is DENIED.

Fifth, Apple moves to strike Schonfeld's opinion that Mac OS devices can satisfy the "zone specific storage and interface" limitation of the '757 patent when used for the Photo Stream feature.[18] Apple argues that the contentions only disclose Mac OS devices as "central devices," and disclose iOS devices alone as "Zone Devices." By referencing Mac OS devices explicitly as "Zone Devices", the actual contentions belie this charge.[19] Apple's motion is DENIED.

---

[17] *See* Docket No. 660-3 at 5:

| and at least one zone, each zone having at least one zone specific storage and interface device capable of storing or interfacing | Apple's iPhone, iPod Touch, iPad, iPad Mini, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro and Apple TV devices, and PCs with iTunes (collectively the "Zone Devices") are storage and interface devices that reside in a specific location and are capable of storing or interfacing with information stored in a central storage and interface device. For example, each of these devices may reside in a room or similar location, or be coupled to devices residing in a room or similar location, such as a dock, including docks sold on Apple's website. For example, Apple markets and sells docks such as the Bose SoundDock Series II Digital Music System for the iPhone and iPod, or the XtremeMac InCharge X2 Charging Station for iPod, iPhone, or iPad. |

[18] *See* Docket No. 877-4 at 15-17.

[19] *See supra*, n. 17.

5
Case No.: 5:12-cv-0630-LHK-PSG
ORDER RE: MOTIONS TO STRIKE AND SEAL

Sixth, Apple moves to strike Schonfeld's opinion that the "automatic transfer" feature of Home Sharing is a functionality accused of infringing the '757 patent.[20] Samsung's contentions, however, specifically reference the automatic transfer feature in Apple's lingo,[21] and it prominently cited to a website discussing the feature in its Third Amended Infringement Contentions.[22] Apple's motion is DENIED.

Seventh, Apple moves to strike Schonfeld's opinion that the "shared photo stream" feature is a functionality accused of infringing the '757 patent, arguing that it introduces a new infringement theory.[23] Once again, the actual contentions tell a different story; Samsung's contentions disclose the ability to share photos manually selected with friends and family.[24] Apple's motion is DENIED.

Eighth, Apple moves to strike Schonfeld's opinion that PCs with iTunes are products accused of infringing the '757 patent, as it argues that PCs with iTunes were specifically dropped as an accused product earlier in the case.[25] However, "iTunes" more broadly remains as an accused product, which Apple's own expert defined as including both the server and the client for both Mac and Windows computers.[26] Samsung can hardly be faulted for using doing the same. Apple's motion is DENIED.

Ninth, Apple moves to strike Schonfeld's opinion that the "central storage and interface device" limitation of the '757 patent can be satisfied by groups of servers or by servers containing

---

[20] *See* Docket No. 877-4 at 14-15.

[21] *See* Docket No. 304-4 at 11-12.

[22] *See* Docket No. 660-3.

[23] *See* Docket No. 877-4 at 13.

[24] *See* Docket No. 660-3 at 21 ("Photo Stream lets you share select photos with friends and family, directly to their devices or on the web").

[25] *See* Docket No. 877-4 at 15.

[26] *See* Docket No. 963-3 at 15.

6
Case No.: 5:12-cv-0630-LHK-PSG
ORDER RE: MOTIONS TO STRIKE AND SEAL

only one of "content information" or "content management information."[27] Apple's primary complaint here is that Samsung's expert urges that multi-server configurations owned by and in the control of third parties may fulfill these roles, when Samsung's contentions focused only on the iCloud server and computers owned and produced by Apple.[28] In this instance, Apple appropriately points out the substitution of a theory, rather than just increased specificity; the contentions told Apple to look for evidence in one place (its iCloud servers); now the expert is relying on evidence gathered from somewhere else (third party servers, such as Amazon's cloud storage). Apple's motion is GRANTED.

Tenth, Apple moves to strike Schonfeld's opinion that the "audio capture card" and "video capture card having a video capture module" limitations of claim 1 and "video capture module" limitation of claim 15 of the '239 patent are met by certain previously unidentified components.[29] Samsung argues that it disclosed each of the components individually in its contentions, such that Apple was on notice and had the opportunity to take discovery on each.[30] Apple fails to identify any prejudice it has suffered, or any actions it would have/could have taken differently had this particular articulation of the contention come forth earlier. Apple's motion is therefore DENIED.

Eleventh, Apple moves to strike Schonfeld's opinion that the "means for exchanging" limitation of claim 1 of the '239 patent is met by newly disclosed components.[31] However, Samsung's contentions did disclose a general "circuit" to perform that function.[32] Apple's

---

[27] See Docket No. 877-4 at 15-17.

[28] See id.

[29] See Docket No. 877-4 at 18-19.

[30] See Docket No. 963-3 at 19-19.

[31] See Docket No. 877-4 at 19.

[32] See Docket No. 660-6 at 17:

> a.) means for exchanging data with said host unit; On information and belief, the iPod touch (5th generation), iPad 4, iPad mini, Apple's computers and non-Apple PCs, as well as previously charted Accused Devices, each have a circuit for exchanging the data received by the host computer's interface with the playback unit. Apple's software, such as Quicktime and FaceTime, works in conjunction with that computer interface(s) and the circuit to allow a host unit to receive data from a Mobile Remote Unit and transmit it to playback unit for playback unit.

Case No.: 5:12-cv-0630-LHK-PSG
ORDER RE: MOTIONS TO STRIKE AND SEAL

complaint is that the expert now specifies what that circuit entailed. This is fully proper.[33] Apple's motion is DENIED.

Twelfth, Apple moves to strike Schonfeld's opinion that the "host unit" and "playback unit" limitations of claim 1 of the '239 patent are met by previously unaccused Mac computers.[34] Samsung's opposition presents no arguments to defend them with respect to the "host unit" limitation, so the motion is GRANTED as to that limitation.[35] However, Samsung points out that Schonfeld specifically excluded laptop computers from his analysis of playback, mobile remote units in the infringement analysis, and Apple appears to be concerned only about laptop and not desktops in its briefs.[36] The motion is DENIED as to the playback unit opinions.

Thirteenth and finally, Apple moves to strike Parulski's opinion that the "compressor" and "decompressor" limitations of the '449 patent are met by certain previously unidentified components of a system-on-chip.[37] However, the actual contentions accused certain portions of the system-on-chip, and the portions identified were simply provided as examples.[38] These are, then, further examples of a broad contention being properly narrowed by an expert. Apple's motion is DENIED.

**B. Samsung's Motion to Strike Expert Testimony Based on Undisclosed Theories and Claim Constructions Inconsistent with the Court's *Markman* Order (Docket No. 878)**

Samsung moves to strike Apple's expert reports in general, and Storer's opinion specifically, because they rely on claim constructions that were not disclosed in respond to a

---

[33] This provides an excellent example of an instance where Apple might legitimately have complained of an overly broad contention earlier in the case. But the time for that has long since passed.

[34] *See* Docket No. 877-4 at 19-20.

[35] *See* Docket No. 963-3 at 20.

[36] *See id.*

[37] *See* Docket No. 877-4 at 21-22.

[38] *See* Docket 660-5 at 3.

8
Case No.: 5:12-cv-0630-LHK-PSG
ORDER RE: MOTIONS TO STRIKE AND SEAL

contention interrogatory.[39] Interrogatory 46 requested the following: "For each asserted claim for each Samsung Patent, and each Apple Patents-in-Suit identify: (1) a list of all claim terms that YOU contend has [sic] a meaning other than plain meaning and should be construe by the Court and identify any claim term which YOU contend should be governed by 35 USC Section 112(6); (2) YOUR construction of each term identified for claim construction . . . and (3) for each identified term, all references from the specification or prosecution history that supports [sic] YOUR construction."[40] Apple did not fully respond to this interrogatory, instead commenting that the parties could address claim construction at a later time. Apple now maintains that it is simply applying the plain and ordinary meaning of the terms at issue, whereas Samsung believes that it is further interpreting the claims.

In order to rule on this motion's merits, the undersigned would need to construe more terms than the presiding judge elected to consider. This would be an inappropriate exercise for the referral judge. The motion therefore is DENIED, but Samsung is free to seek relief from Judge Koh if its concerns persist.

### C. Samsung's Motion to Strike Expert Testimony Based on Previously Undisclosed Theories (Docket No. 880)

Apple moves to strike Mowry's theories regarding Apple's practice of the '647 patent based on his discussions with engineers not disclosed by Samsung.[41] Apple argues that Samsung's failure to disclose these witnesses denied them the opportunity to depose witnesses who may have helped to impeach the expert.[42] Samsung's primary response is that Mowry did not rely on the

---

[39] *See* Docket No. 878-4 at 12-18.

[40] *See* Docket No. 965-4 at 2.

[41] *See* Docket No. 880-5 at 22.

[42] *See* Docket No. 964-25 at 18.

9
Case No.: 5:12-cv-0630-LHK-PSG
ORDER RE: MOTIONS TO STRIKE AND SEAL

reports of these engineers, but Mowry's own testimony is to the contrary.[43] Apple's motion is GRANTED.

### D. Apple's Motion to Strike Arguments from Samsung's Expert Reports Regarding Apple Patents (Docket No. 882)

Apple moves to strike portions of Jeffay's opinions that the '647 patent is invalid based on the Sidekick Handbook, the "MHonArc System/Mosaic System," and Jeffay's alleged "systems."[44] Apple argues that although Samsung disclosed the Sidekick "System" and each of the "MHonArc" and "Mosaic" systems independently as prior art, it did not disclose the Sidekick Handbook or the use of the MHonArc and Mosaic systems together.[45] The documentation provided in Samsung's opposition refutes those allegations, at least in part,[46] such that Apple's motion is DENIED with respect to the Sidekick Handbook and MHonArc/Mosaic System. It is GRANTED, however, with respect to opinions based on Jeffay's undisclosed systems of his own creation.

Apple also moves to strike Jeffay's opinions regarding an alleged non-infringing alternative discussed in the *Apple v. Motorola* litigation.[47] Samsung argues that although this alternative was not disclosed in its contentions, Apple was on notice of the alternative based on its appearance in unrelated litigation.[48] Given the breadth and volume of litigation that these parties are involved in, it would be manifestly unreasonable to impute constructive notice of each and every contention from every case. Apple's motion is GRANTED.

---

[43] *See* Docket No. 1018-4 at 14-15.

[44] *See* Docket No. 882-3 at 7-9.

[45] *See id.*

[46] *See* Docket No. 962-4, at 7-10.

[47] *See* Docket No. 882-3 at 17-18.

[48] *See* Docket No. 962-4 at 20-21.

10
Case No.: 5:12-cv-0630-LHK-PSG
ORDER RE: MOTIONS TO STRIKE AND SEAL

## IV. SEALING

The sealing requests for all four motions before the court continue the parties' unfortunate course of redacting plainly non-confidential information. For example, both Apple and Samsung redact sections in which a witness provides the startling revelation that he has no information.[49] While embarrassing, perhaps, this is not confidential information worthy of the time and money required to request sealing from the court. In light of the overreach that both parties continue to demonstrate in keeping information from the public, the court DENIES the sealing motions.

**IT IS SO ORDERED.**

Dated: January 9, 2014

_Paul S. Grewal_

PAUL S. GREWAL
United States Magistrate Judge

---

[49] *See* Docket Nos. 877-4 at 23, 882-3 at 20.