1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA          )  C-12-00630 LHK
6  CORPORATION,                      )
                                     )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,            )
                                     )  DECEMBER 12, 2013
8          VS.                       )
                                     )  PAGES 1-179
9  SAMSUNG ELECTRONICS CO., LTD.,    )
   A KOREAN BUSINESS ENTITY;         )
10 SAMSUNG ELECTRONICS AMERICA,      )
   INC., A NEW YORK CORPORATION;     )
11 SAMSUNG TELECOMMUNICATIONS        )
   AMERICA, LLC, A DELAWARE          )
12 LIMITED LIABILITY COMPANY,        )
                                     )
13             DEFENDANTS.           )
   _____  )
14                                   )
                                     )

15

16            TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LUCY H. KOH
17            UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23

24 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                 CERTIFICATE NUMBER 9595

25

1

2      A P P E A R A N C E S:

3      FOR APPLE:              GIBSON, DUNN & CRUTCHER
                               BY:   JOSH A. KREVITT
4                              200 PARK AVENUE
                               NEW YORK, NEW YORK   10166
5
                               BY:  H. MARK LYON
6                              1881 PAGE MILL ROAD
                               PALO ALTO, CALIFORNIA  94304
7

8                              WILMER, CUTLER, PICKERING,
                               HALE AND DORR
9                              BY:  WILLIAM F. LEE
                               60 STATE STREET
10                             BOSTON, MASSACHUSETTS  02109

11                             BY:  MARK D. SELWYN
                               950 PAGE MILL ROAD
12                             PALO ALTO, CALIFORNIA  94304

13

14     FOR SAMSUNG:            QUINN, EMANUEL, URQUHART,
                               OLIVER & HEDGES
15                             BY:  VICTORIA F. MAROULIS
                                    KEVIN B. JOHNSON
16                             555 TWIN DOLPHIN DRIVE
                               SUITE 560
17                             REDWOOD SHORES, CALIFORNIA  94065

18                             BY:  SEAN PAK
                               50 CALIFORNIA STREET, FLOOR 22
19                             SAN FRANCISCO, CALIFORNIA  94111

20                             BY:  ALAN L. WHITEHURST
21                             777 6TH STREET, NW, 11TH FLOOR
                               WASHINGTON, DC  20001
22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                    DECEMBER 12, 2013

 2                      P R O C E E D I N G S

 3         (COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)

 4              THE COURT:  GOOD AFTERNOON AND WELCOME.  SORRY FOR MY

 5    DELAY.

 6              THE CLERK:  YOU MAY BE SEATED.

 7         CALLING CASE NUMBER C-12-00630 LHK, APPLE, INCORPORATED

 8    VERSUS SAMSUNG ELECTRONICS COMPANY LIMITED, ET AL.

 9         COUNSEL, STATE YOUR APPEARANCES, PLEASE.

10              MR. KREVITT:  GOOD AFTERNOON, YOUR HONOR.

11    JOSH KREVANS FROM GIBSON DUNN.  WITH ME THIS AFTERNOON IS MY

12    COLLEAGUE, MARK LYON.

13              MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE AND

14    MARK SELWYN FROM WILMER, HALE FOR APPLE.

15              MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.

16    KEVIN JOHNSON, VICKY MAROULIS, SEAN PAK, AND ALAN WHITEHURST OF

17    QUINN, EMANUEL ON BEHALF OF SAMSUNG.

18              THE COURT:  OKAY.  GOOD AFTERNOON.  THANK YOU FOR

19    BEING HERE.

20         LET ME ASK, I UNDERSTAND THAT YOU REACHED SOME AGREEMENTS

21    EARLIER TODAY.  CAN YOU TELL ME WHAT THE IMPLICATIONS ARE FOR

22    THE SUMMARY JUDGMENT MOTIONS OR THE DAUBERT MOTIONS, IF ANY?

23              MR. KREVITT:  YES, YOUR HONOR.  WITH RESPECT TO THE

24    SUMMARY JUDGMENT MOTION, APPLE HAD FILED MOTIONS WITH RESPECT

25    TO THE '414 PATENT TO STRIKE CERTAIN PRIOR ART.  THAT PRIOR ART
```

1    IS AT ISSUE IN A SUMMARY JUDGMENT MOTION PENDING BEFORE THE

2    COURT.  WE'VE RESOLVED THAT MOTION.

3         SO AS YOUR HONOR MAY RECALL, SAMSUNG HAS FILED A MOTION

4    FOR SUMMARY JUDGMENT OF INVALIDITY ON THE '414 PATENT WITH

5    RESPECT TO WINDOWS MOBILE 5.

6         APPLE RAISED, BROADLY, TWO DEFENSES TO THAT.  ONE IS THAT

7    SAMSUNG HAD CHANGED ITS THEORY AND THERE WAS NO ANTICIPATION ON

8    ITS OLD THEORY; AND SECONDLY, THAT ON ITS NEW THEORY, THERE'S

9    NO ANTICIPATION.

10        AS TO THAT FIRST PART, THE OLD THEORY, THAT'S NO LONGER AT

11   ISSUE BECAUSE WE'VE RESOLVED THAT MOTION.

12            THE COURT:  WAIT.  WHAT WAS THE EXACT AGREEMENT WITH

13   REGARD TO WINDOWS MOBILE 5.0?

14            MR. KREVITT:  WITH RESPECT TO WINDOWS MOBILE 5.0,

15   APPLE HAS AGREED NO LONGER TO SEEK TO HAVE STRICKEN SAMSUNG'S

16   NEW THEORY ON WHAT WE REFERRED TO IN OUR PAPERS AS THE NEW

17   COMPONENTS.

18            THE COURT:  OKAY.

19            MR. KREVITT:  SO IN OUR OPPOSITION BRIEF, YOUR HONOR,

20   YOU MAY RECALL THAT WE ADDRESSED BOTH THE OLD THEORY, WHICH WAS

21   BASED ON THE SYNC CLIENT, AND THE NEW THEORY ON THE NEW

22   COMPONENTS.

23            THE COURT:  OKAY.

24            MR. KREVITT:  THE ISSUES WITH RESPECT TO THE SYNC

25   CLIENT ARE NO LONGER AT ISSUE BECAUSE WE'VE RESOLVED -- WE HAVE

1    AGREED TO ALLOW SAMSUNG'S EXPERT TO OPINE, OR AT LEAST WE

2    AGREED NOT TO CHALLENGE SAMSUNG'S EXPERT'S OPINION WITH RESPECT

3    TO WHAT WE REFER TO AS THE NEW COMPONENTS, THE NEW THEORIES IN

4    THE EXPERT REPORT.

5         AND SO WITH RESPECT TO THE MOTION BEFORE YOUR HONOR, WHAT

6    REMAINS IS OUR OPPOSITION BASED ON NO ANTICIPATION OF THOSE NEW

7    COMPONENTS.

8         THE COURT:  OKAY.  ANYTHING ELSE?

9         MR. KREVITT:  THE ONLY OTHER THING, YOUR HONOR, IS --

10   AND THIS IS LESS OF A CLEAR CUT ISSUE.  THERE'S ANOTHER ISSUE

11   REGARDING THE '414 PATENT WITH RESPECT TO THE ISSUE OF

12   PROVIDING AND WHETHER OR NOT WINDOWS MOBILE 5 PROVIDES

13   CERTAIN -- WHETHER THE COMPONENTS PROVIDE A THREAD OR DO NOT

14   PROVIDE A THREAD.

15        THE COURT:  UM-HUM.

16        MR. KREVITT:  AND THERE WAS -- PART OF SAMSUNG'S

17   PAPERS ARGUE THAT THAT WAS A NEW THEORY ON APPLE'S PART.

18        SAMSUNG HAS GIVEN UP THAT POSITION WITH RESPECT TO APPLE'S

19   EXPERTS, SO THAT'S NO LONGER A BASIS FOR SAMSUNG'S MOTION, THAT

20   ANY ISSUES WITH RESPECT TO THE PROVIDING IS A NEW THEORY, THAT

21   SHOULDN'T BE CONSIDERED BY THE COURT.

22        THE CLERK:  ANYTHING ELSE?

23        MR. KREVITT:  I BELIEVE THOSE ARE THE ONLY ISSUES

24   THAT IMPACT THE SUMMARY JUDGMENT MOTIONS.

25        I'D LIKE TO TAKE A MOMENT AND THINK ABOUT YOUR QUESTION

```
 1        WITH RESPECT TO THE DAUBERTS.

 2              THE COURT:  HOW MUCH TIME DO YOU NEED ON THE

 3        DAUBERTS?

 4              MR. KREVITT:  NOT LONG.  WE'RE JUST GOING TO CONFER

 5        AND MAKE SURE.

 6              THE COURT:  OKAY.

 7          (DISCUSSION OFF THE RECORD AMONG COUNSEL.)

 8              MR. KREVITT:  WITH RESPECT TO THE DAUBERTS, THERE ARE

 9        SOME ISSUES, YOUR HONOR, THAT WE MAY RESOLVE.  WE HAVE NOT YET

10        REACHED AGREEMENT.  WE SOUGHT AND RECEIVED GUIDANCE FROM

11        JUDGE GREWAL IN THAT REGARD, AND THE PARTIES INTEND TO CONFER

12        PROMPTLY.  WE WERE JUST IN JUDGE GREWAL'S COURT RECENTLY, SO I

13        HAVEN'T HAD AN OPPORTUNITY TO DO THAT.

14          THE AGREEMENTS THE PARTIES MAY REACH WOULD, IF THE

15        AGREEMENTS ARE REACHED, HAVE AN IMPACT ON THE DAUBERT MOTIONS.

16          NOTHING -- THE BOTTOM LINE, YOUR HONOR, IS NOTHING TO

17        REPORT DEFINITIVELY AS OF THIS MOMENT.

18              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

19          LET'S JUST HANDLE AN ADMINISTRATIVE MATTER.  ON THE MOTION

20        TO SEAL, THE REQUESTS -- YOU KNOW, SOME OF WHAT YOU'RE SEEKING

21        TO REDACT IS COMPLETELY APPROPRIATE FOR REDACTION, BUT SOME OF

22        IT IS JUST OVERBROAD.  I'LL GIVE A COUPLE OF EXAMPLES.

23          ON PAGE 23 OF APPLE'S MOTION, LINE 12 THROUGH 13, YOU'RE

24        REDACTING WHAT DR. SCHONFELD SAID ABOUT A DICTIONARY DEFINITION

25        OF THE WORD "UPDATE."  THAT JUST CANNOT BE SEALABLE.
```

1          SIMILARLY, THERE'S A LOT OF REDACTIONS OF WHAT PUBLISHED

2     PATENTS SAY OR DON'T SAY.  THERE ARE REDACTIONS OF PLAIN AND

3     ORDINARY MEANING OF "SELECTION."  IT'S JUST -- IT'S OVERBROAD.

4          SO I'M GOING TO DENY THE MOTIONS TO SEAL WITHOUT PREJUDICE

5     AND I WOULD LIKE YOU TO FILE NEW MOTIONS TO SEAL WHICH DO NOT

6     SEEK TO SEAL DICTIONARY DEFINITIONS WHICH ARE PRESUMABLY

7     PUBLIC, AND, YOU KNOW, PLAIN AND ORDINARY MEANING, WHICH IS

8     ALSO PRESUMABLY PUBLIC.

9          AND ALSO, WHATEVER IS PUBLICLY DISCLOSED DURING THIS

10    HEARING TODAY IS NOW PUBLIC INFORMATION AND SHOULD NOT BE

11    SEALED.

12         SO CAN YOU REFILE A MORE NARROWLY TAILORED SEALING REQUEST

13    WITH REGARD TO THESE MOTIONS?

14              MR. KREVITT:  YES, YOUR HONOR.

15              MS. MAROULIS:  YES, YOUR HONOR.

16              THE COURT:  OKAY.  WHEN WOULD YOU LIKE TO DO THAT?

17              MS. MAROULIS:  CAN WE DO SO MONDAY?

18              THE COURT:  THAT'S FINE.

19              MR. KREVITT:  MONDAY, THAT'S FINE, YOUR HONOR, YES.

20              THE COURT:  ALL RIGHT.  SO THOSE MOTIONS TO SEAL ARE

21    DENIED WITHOUT PREJUDICE.  PLEASE FILE AMENDED NARROWLY

22    TAILORED MOTIONS.  AND I THINK MONDAY IS THE 18TH.  IS THAT

23    CORRECT?

24              MS. MAROULIS:  THE 16TH, YOUR HONOR.

25              THE CLERK:  I THINK IT'S THE 16TH.

```
 1            THE COURT:  THE 16TH, OKAY, THANK YOU.

 2        OKAY.  WHAT IS THE STATUS OF THE PERMANENT INJUNCTION?

 3            MS. MAROULIS:  YOUR HONOR, THAT --

 4            MR. LEE:  IN 1846, YOUR HONOR?

 5            THE COURT:  YES, IN THE FIRST CASE.

 6            MR. LEE:  A MANDATE HAS NOT ISSUED YET.

 7            THE COURT:  OKAY.

 8            MR. LEE:  SO I THINK WE'RE SUPPOSED TO FILE OUR

 9    POST-TRIAL MOTIONS WITH YOU TOMORROW.

10            THE COURT:  OKAY.

11            MR. LEE:  AND OUR PLAN WAS JUST TO PUT A PLACE HOLDER

12    IN THAT SAID WE WOULD INTEND TO MOVE, BUT THE MANDATE HASN'T

13    ISSUED, SO WE HAVEN'T MOVED YET.

14            THE COURT:  I SEE.  AND IS THERE A REQUEST TO SEEK EN

15    BANC REVIEW, OR WHAT -- WHAT'S THE SORT OF --

16            MR. LEE:  NOT THAT I --

17            THE COURT:  -- PROCEDURAL STATUS, OTHER THAN THE

18    MANDATE HAS NOT BEEN ISSUED?

19            MR. LEE:  I THINK IT'S IN THE PETITION FOR REHEARING

20    PERIOD.

21            MS. MAROULIS:  THE DEADLINE IS DECEMBER 18, SO SO FAR

22    NEITHER PARTY FILED EN BANC OR A HEARING REQUEST.

23            THE COURT:  I SEE.

24            MS. MAROULIS:  BUT BY THE 18TH WE'LL KNOW IF MANDATE

25    WILL COME DOWN SEVEN DAYS LATER OR AFTER THE EN BANC IS
```

1      RESOLVED.

2              MR. LEE:  I THINK THE MANDATE IS MOST LIKELY TO COME

3      DOWN RIGHT AFTER THE FIRST OF THE YEAR GIVEN THE HOLIDAYS.

4              THE COURT:  BUT THAT'S ONLY ASSUMING NO ONE SEEKS

5      REHEARING, REVIEW, OR EN BANC REVIEW; CORRECT?

6              MR. LEE:  THAT'S CORRECT.

7              MS. MAROULIS:  CORRECT.

8              THE COURT:  OKAY.  LET ME ASK YOU, I HAD PREVIOUSLY

9      SAID THAT IF YOU WOULD LIKE ADDITIONAL CLAIM CONSTRUCTIONS, TO

10     PLEASE SEEK A CLAIM CONSTRUCTION HEARING IN LIEU OF THE TRIAL

11     THAT'S CURRENTLY SCHEDULED FOR MARCH.

12         IS EITHER SIDE SEEKING A CLAIM CONSTRUCTION HEARING?

13             MR. KREVITT:  A CLAIM CONSTRUCTION HEARING?  I DIDN'T

14     HEAR THE LAST WORD.  A CLAIM CONSTRUCTION HEARING?

15             THE COURT:  I HAD PREVIOUSLY STATED THAT IF YOU WOULD

16     LIKE ADDITIONAL CLAIM TERMS TO BE CONSTRUED, WE WOULD SET

17     ANOTHER CLAIM CONSTRUCTION HEARING AND I COULD ISSUE THOSE

18     CONSTRUCTIONS AND WE WOULD JUST CONTINUE THE MARCH TRIAL DATE

19     TO INCORPORATE THAT INTO THE SCHEDULE.

20             MR. KREVITT:  WE ARE NOT SEEKING THAT, YOUR HONOR, ON

21     BEHALF OF APPLE.

22             THE COURT:  OKAY.  BUT YOU'RE SEEKING A LOT OF CLAIM

23     CONSTRUCTIONS IN THE SUMMARY JUDGMENT MOTIONS.

24             MR. KREVITT:  WELL, I THINK, YOUR HONOR, WE'RE HAPPY

25     TO ADDRESS THEM ON A CASE-BY-CASE BASIS OR ADDRESS THEM ALL

1    NOW.

2         IT'S OUR POSITION THAT WE'RE ACTUALLY NOT SEEKING CLAIM

3    CONSTRUCTIONS, BUT RATHER, WITH RESPECT TO APPLE'S MOTIONS, ARE

4    RESPONDING TO DEFENSES THAT HAVE BEEN RAISED BY SAMSUNG THAT

5    IMPLICATE CLAIM CONSTRUCTIONS, AND I THINK THAT'S A BIG

6    DIFFERENCE.

7         IF I MAY JUST GIVE ONE EXAMPLE, YOUR HONOR?  SO WITH

8    RESPECT TO THE '172 PATENT, THAT'S THE AUTO CORRECT PATENT,

9    SAMSUNG -- THE CLAIM SIMPLY SAYS "A TOUCHSCREEN DISPLAY" AND "A

10   KEYBOARD."

11        SAMSUNG'S NON-INFRINGEMENT ARGUMENT, SAMSUNG'S ENTIRE

12   NON-INFRINGEMENT DEFENSE IS THAT THE CLAIM SHOULD BE LIMITED TO

13   A PHYSICAL KEYBOARD.  THAT IS A CLAIM CONSTRUCTION ISSUE.

14        APPLE DOESN'T SEEK A CLAIM CONSTRUCTION.  WE DON'T BELIEVE

15   A CLAIM CONSTRUCTION IS NECESSARY.  WE DON'T THINK THE CLAIM

16   COULD BE ANY CLEARER.

17        BUT SAMSUNG IS SEEKING A CLAIM CONSTRUCTION TO HAVE THE

18   WORD "PHYSICAL" INSERTED INTO THE CLAIM.

19        SO YOUR HONOR IS QUITE RIGHT THAT SOME OF APPLE'S MOTIONS

20   ADDRESS CLAIM CONSTRUCTION ISSUES, ALONG THE LINES THAT I JUST

21   DESCRIBED.

22        BUT APPLE IS NOT SEEKING CLAIM CONSTRUCTIONS.  APPLE IS

23   RESPONDING TO ARGUMENTS THAT SAMSUNG HAS RAISED THAT, IN

24   APPLE'S VIEW, ARE CLEARLY CLAIM CONSTRUCTION BASED ARGUMENTS.

25             THE COURT:  ACTUALLY, LET ME DO ONE HOUSEKEEPING

1    MATTER ON THE SEALING.  SAMSUNG DID NOT FILE AN UNREDACTED

2    BRIEF IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION THAT HIGHLIGHTS

3    THE PORTIONS TO BE REDACTED.

4         SINCE I'M GOING TO DENY THE MOTION TO SEAL WITHOUT

5    PREJUDICE AT THIS POINT, WHEN YOU REFILE YOUR NEW SEALING

6    MOTIONS, WOULD BOTH SIDES PLEASE DO FILE THAT, A VERSION THAT

7    JUST LETS US KNOW SO WHEN WE'RE READING IT, WE CAN QUICKLY

8    IDENTIFY WHAT SHOULD BE SEALED?

9              MR. KREVITT:  YES, YOUR HONOR.

10             MS. MAROULIS:  YES, YOUR HONOR.

11             THE COURT:  OKAY.

12             MR. JOHNSON:  YOUR HONOR, JUST TO GO BACK TO THE

13   POINT WITH RESPECT TO CLAIM CONSTRUCTION.

14             THE COURT:  YES.

15             MR. JOHNSON:  AS YOUR HONOR SEES FROM THE PAPERS

16   SUBMITTED ON SAMSUNG'S SIDE, AND MR. KREVITT SAID THERE ARE NO

17   CLAIM CONSTRUCTION ISSUES ON THE MOTIONS THAT APPLE'S FILED,

18   WELL, WE BEG TO DIFFER.

19        AS WE LOOK AT AND AS WE GO THROUGH THE ARGUMENTS TODAY, I

20   THINK YOU'RE GOING TO HEAR THAT EVEN ON THE MOTIONS THAT

21   THEY'VE FILED, WHETHER IT'S ON INVALIDITY OF THE '757 PATENT,

22   WHICH IS A SAMSUNG PATENT, OR EVEN AS IT RELATES TO THE '647

23   PATENT AND SOME OF THE OTHER PATENTS, THERE ARE A NUMBER OF

24   ISSUES HERE THAT ARE CLAIM CONSTRUCTION ISSUES THAT WE BELIEVE

25   YOUR HONOR NEEDS TO RESOLVE.

1           AND THEY, BOTH IN LIGHT OF -- THEY RAISED NON-INFRINGEMENT

2    DEFENSES ON OUR PART AND THEY RAISED INVALIDITY ISSUES ON THE

3    OTHER SIDE.

4           AND SO WE BELIEVE THAT A CLAIM CONSTRUCTION HEARING WOULD

5    BE APPROPRIATE TO ADDRESS SOME OF THESE ISSUES.

6           THE COURT:  AND YOU WOULD LIKE THAT IN LIEU OF THE

7    TRIAL IN MARCH?

8           MR. JOHNSON:  YES, YOUR HONOR.

9           MR. KREVITT:  YOUR HONOR, AS YOU'LL SEE -- AND IT MAY

10   BE USEFUL TO DO THAT AS WE GO THROUGH THE ISSUES -- AS APPLE

11   THOUGHT ABOUT WHAT MOTIONS TO FILE BEFORE THE COURT, WE CHOSE,

12   IT WON'T SURPRISE THE COURT, ISSUES THAT WE BELIEVE THERE ARE

13   NO FACTUAL DISPUTES FOR, ISSUES THAT WE BELIEVE ARE RIPE FOR

14   RESOLUTION JUST APPLYING THE CLAIM.  THOSE ARE, OF COURSE, THE

15   ISSUES THAT SHOULD BE PRESENTED AS PART OF THE SUMMARY

16   JUDGMENT.

17          AND YOU WILL SEE, YOUR HONOR, THAT NECESSARILY, AS PART OF

18   THAT PROCESS, CERTAIN DEFENSES, AGAIN, HAVE BEEN RAISED BY

19   SAMSUNG THAT ARE -- IN WHICH THEY URGE THE COURT TO CONSTRUE

20   THE CLAIMS IN WAYS TO AVOID INFRINGEMENT.

21          IT WOULD BE, IN OUR VIEW, HIGHLY UNFAIR -- WE ADDRESSED

22   THIS IN OUR PAPERS -- FOR THE COURT TO DENY THE MOTIONS, FOR

23   THE COURT TO DELAY THE TRIAL SIMPLY BECAUSE DEFENSES RAISED BY

24   SAMSUNG ARE BASED ON, IN OUR VIEW, CLAIM CONSTRUCTIONS THAT ARE

25   CLEARLY ERRONEOUS.

1          AND WE CAN -- WE CAN ADDRESS IT AS WE GO THROUGH EACH

2     MOTION OR WE CAN ADDRESS THE ISSUES TOGETHER, ANY WAY YOUR

3     HONOR WISHES.

4          I GAVE THE '172 EXAMPLE BECAUSE, FROM OUR PERSPECTIVE,

5     THAT'S JUST A CLEAR ISSUE OF A CLAIM CONSTRUCTION BEING RAISED

6     AS PART OF A DEFENSE, AND IT'S A CLEAR ISSUE OF A CLAIM

7     CONSTRUCTION THAT DOESN'T HAVE MERIT BEING RAISED AS PART OF A

8     DEFENSE.

9               THE COURT:  WELL, LET ME ASK, WITH REGARD TO -- WHY

10    DIDN'T SAMSUNG RAISE, FOR EXAMPLE, "KEYBOARD" AS A TERM TO

11    CONSTRUE FOR THE '172 PATENT WHEN WE HAD CLAIM CONSTRUCTION?

12              MS. MAROULIS:  YOUR HONOR, WE WERE LIMITED TO A VERY

13    SMALL NUMBER OF TERMS ACROSS MANY PATENTS, SO WE COLLECTED THE

14    TERMS THAT WOULD MOST BENEFIT FROM THE COURT'S CONSTRUCTION.

15         THE TERM "KEYBOARD" IN THE '172 PATENT SHOULD BE GIVEN ITS

16    PLAIN MEANING, WHICH HERE IS PHYSICAL KEYBOARD BASED ON THE

17    EVIDENCE.  WE WILL SHOW THAT THROUGH THE CLAIM, THE SPEC, AND

18    THE DECLARATION OF THE EXPERT.

19         THIS IS NOT A TERM THAT WAS PRIORITIZED IN TERMS OF THE

20    COURT'S REVIEW BECAUSE THERE WERE SOME TERMS WHERE THERE WERE A

21    LOT OF DISPUTES.  AND THIS TERM IS ACTUALLY VERY SIMPLE BECAUSE

22    IF YOU LOOK AT THE CLAIM ITSELF AND IF YOU LOOK AT THE

23    SPECIFICATION, IT'S CLEAR THAT FOR THAT SPECIFIC CLAIM, CLAIM

24    18, IT'S A PHYSICAL KEYBOARD.

25              THE COURT:  WHAT -- WHAT ARE THE LIKELY PATENTS TO

1    SURVIVE AND THE LIKELY CLAIMS TO SURVIVE THE FURTHER NARROWING

2    THAT'S GOING TO HAPPEN ON FEBRUARY 6TH?  DO YOU SUSPECT THE

3    PATENTS THAT ARE THE SUBJECT OF THE SUMMARY JUDGMENT MOTIONS --

4            MR. KREVITT:  YES, YOUR HONOR.

5            THE COURT:  -- TO SURVIVE?

6            MR. KREVITT:  SO WE HAVE FIVE PATENTS AT ISSUE IN THE

7    CASE AND THE COURT HAS REQUIRED THE PARTIES TO NARROW TO FIVE

8    CLAIMS, SO OF COURSE WE CAN'T HAVE MORE THAN FIVE PATENTS.

9            BUT IT IS -- SUBJECT TO WHAT YOUR HONOR DOES ON SUMMARY

10   JUDGMENT OF COURSE, I DON'T KNOW WHETHER THERE WILL BE ANY

11   REDUCTION IN THE NUMBER OF PATENTS.  THERE CERTAINLY WILL BE A

12   REDUCTION IN THE NUMBER OF CLAIMS WITHIN THOSE PATENTS.

13           THE COURT:  I SEE.

14           MR. KREVITT:  OF COURSE, WITH THE COURT'S GUIDANCE ON

15   SUMMARY JUDGMENT, THAT MAY CHANGE.

16           FOR EXAMPLE, CONTINUING WITH THE '172 EXAMPLE, IF YOUR

17   HONOR AGREES WITH APPLE THAT THE CLAIM IS NOT LIMITED TO A

18   PHYSICAL KEYBOARD, THERE IS NOT A NON-INFRINGEMENT DEFENSE.

19           THERE MAY STILL BE A VALIDITY DEFENSE AND THAT MAY INFORM

20   SAMSUNG'S VIEW OF PURSUING THAT PATENT, DEFENSE OF THAT PATENT.

21           THE COURT:  LET ME ASK FOR SAMSUNG, DO YOU ALSO

22   BELIEVE THAT YOU WILL KEEP THE FIVE PATENTS THAT YOU CURRENTLY

23   ASSERTED AFTER THE NARROWING IN FEBRUARY?

24           MR. JOHNSON:  STANDING RIGHT HERE, YOUR HONOR, RIGHT

25   NOW, I BELIEVE THE ANSWER IS YES.  BUT WE'RE GOING TO SEE WHAT

1      HAPPENS WITH SUMMARY JUDGMENT MOTIONS, AND WE NEED TO CONFER

2       WITH OUR CLIENT, OF COURSE.

3           AND JUST TO GO BACK TO RESPOND TO AN ISSUE THAT

4      MR. KREVITT RAISED, YOU KNOW, THIS CLAIM CONSTRUCTION ISSUE

5      ISN'T JUST IN -- THAT DOESN'T JUST RELATE TO OUR DEFENSES.

6      THEY ALSO RELATE TO APPLE'S DEFENSES.

7           WE'RE GOING TO SEE ON APPLE'S SUMMARY JUDGMENT MOTION ON

8      THE '757 PATENT, THEY FILED AN INVALIDITY ANTICIPATION MOTION

9      AND THERE ARE A LOT OF ISSUES THAT RELATE TO WHAT THE TERM IN

10     THE CLAIMS "UPDATE IN RELATION TO" MEANS AND WHETHER THAT TERM

11     REQUIRES AUTOMATIC SYNCHRONIZATION, BI-DIRECTIONAL

12     SYNCHRONIZATION, ALL DEVICES BEING SYNCHRONIZED.

13          AND SO MY POINT IS THAT IT'S REALLY ON BOTH SIDES, AND I

14     BELIEVE THE PARTIES WOULD BENEFIT FROM, AND PARTICULARLY NOW

15     THAT THE CASE HAS BEEN NARROWED SO MUCH -- WHEN WE CHOSE THE

16     TEN TERMS FOR CLAIM CONSTRUCTION, THERE WERE A LOT MORE PATENTS

17      IN THE CASE.

18          NOW, AS THE CASE IS FUNNELED DOWN AND WE UNDERSTAND WHAT

19     THE REAL -- WHAT THE PRODUCTS ARE THAT ARE AT ISSUE AND WE

20     UNDERSTAND THE PATENTS AND THE CLAIMS THAT ARE AT ISSUE AND

21     REALLY WHAT THE VALIDITY DEFENSES ARE, WE BELIEVE WE WOULD

22     BENEFIT, BOTH SIDES WOULD BENEFIT FROM FURTHER CLAIM

23     CONSTRUCTION TO FURTHER NARROW.

24              THE COURT:  LET ME ASK, THE SUBSEQUENT FEDERAL

25      CIRCUIT CASES, AFTER O2 MICRO, FOR EXAMPLE, IN EPLUS V. LAWSON

1    WHERE A PARTY TRIED TO RAISE NEW CLAIM CONSTRUCTION IN A

2    POST-TRIAL MOTION, THE FEDERAL CIRCUIT SAID THAT THAT EFFORT TO

3    CONSTRUE THAT CLAIM HAD BEEN WAIVED AND THE JURY SHOULD HAVE

4    JUST USED PLAIN AND ORDINARY MEANING AT TRIAL FOR A TERM THAT

5    WAS NOT CONSTRUED BY THE COURT.

6        WHY SHOULDN'T I JUST HAVE THESE TERMS GO TO THE JURY AND

7    LET THEM USE PLAIN AND ORDINARY MEANING AND RESOLVE ANY FACTUAL

8    DISPUTES?

9            MR. PAK:  YOUR HONOR, THIS IS SEAN PAK.  IF I MAY

10    RESPOND?

11        SOME OF THE ISSUES IN THIS CASE, AS WE WILL SEE IN THE

12    SUMMARY JUDGMENT ARGUMENTS, ACTUALLY GO BEYOND WHETHER A TERM

13    HAS PLAIN AND ORDINARY MEANING OR NOT.

14        FOR EXAMPLE, AS APPLE HAS FILED IN RESPONSE TO OUR MOTION

15    FOR SUMMARY JUDGMENT ON THE '414 PATENT, THIS IS WHERE THEY'RE

16    MOVING TO INVALIDATE THE PATENT ON THE WINDOWS MOBILE 5 PIECE

17    OF PRIOR ART THAT WAS MENTIONED.  ONE OF THE POSITIONS APPLE

18    TAKES IS TO ARGUE THAT THE CLAIM LANGUAGE OF CLAIM 20 SHOULD BE

19    INTERPRETED TO ADD IN THE WORDS "PLUG-IN MODEL" OR "PLUG-IN

20    ARCHITECTURE."

21        THAT IS LANGUAGE THAT DOES NOT APPEAR ANYWHERE IN THE

22    CLAIMS, AND YET, THAT IS ONE OF THE DEFENSES THAT APPLE HAS

23    MAINTAINED.

24        SO, AGAIN, JUST GIVING PLAIN AND ORDINARY MEANING DOESN'T

25    RESOLVE THE ISSUE OF WHETHER THE CLAIM PHRASE SHOULD BE

1    INTERPRETED TO INCLUDE THAT EXTRA LIMITATION OR NOT.

2          AND AGAIN, I CONCUR WITH MR. JOHNSON HERE THAT HAVING A

3    MARKMAN HEARING ON ISSUES OF CLAIM SCOPE, WHETHER THE INTRINSIC

4    RECORD WARRANTS ADDING LIMITATIONS TO THE CLAIM LANGUAGE OR NOT

5    WOULD BENEFIT BOTH PARTIES AT THIS POINT AND I THINK WOULD BE

6    QUITE CRITICAL TO HOW THE ISSUES ARE PRESENTED TO THE JURY.

7          MR. JOHNSON:  AND THE OTHER PROBLEM IS THERE ARE

8    DISPUTES THAT REMAIN EVEN AS TO WHAT THE PLAIN AND ORDINARY

9    MEANING IS AS TO THESE CLAIMS.  SO BOTH SIDES MAY SAY PLAIN AND

10   ORDINARY MEANING, BUT THERE'S A DISTINCTION AND INCONSISTENCY

11   AND A DISPUTE AS TO WHAT THAT PLAIN AND ORDINARY MEANING IS.

12         AND ONE OF SAMSUNG'S PATENTS, THE '239 PATENT, HAS

13   MEANS-PLUS-FUNCTION ELEMENTS IN IT AND, YOUR HONOR, WE BELIEVE

14   THAT THOSE MEANS-PLUS-FUNCTION ELEMENTS NEED TO BE CONSTRUED AS

15   WELL TO DETERMINE WHAT THE FUNCTION AND THE STRUCTURE IS

16   ASSOCIATED WITH THOSE.

17         THE COURT:  ALL RIGHT.  WELL, LET'S GO TO THE '172

18   PATENT.  IS SAMSUNG CHALLENGING VALIDITY AS WELL AS

19   NON-INFRINGEMENT?

20         MS. MAROULIS:  YES, YOUR HONOR.  IT'S NOT SUBJECT TO

21   THE SUMMARY JUDGMENT MOTIONS, BUT WE HAVE VERY STRONG

22   INVALIDITY DEFENSES TO THIS PATENT.

23         MR. KREVITT:  YOUR HONOR, WE HAVE SLIDES FOR VARIOUS

24   PRESENTATIONS.  MAY I HAND THEM UP?

25         THE COURT:  YES, PLEASE.  I DON'T THINK WE'LL HAVE

```
1    TIME FOR THEM, BUT --

2            MR. KREVITT:  NO, I --

3            THE COURT:  THANK YOU.

4        ALL RIGHT.  SO LET ME ASK, FOR SAMSUNG, HOW THEY SQUARE A

5    KEYBOARD HAVING TO BE A PHYSICAL KEYBOARD WITH DEPENDENT CLAIM

6    29 --

7            MR. KREVITT:  I'M GOING TO SIT DOWN, YOUR HONOR.

8    IT'S OUR MOTION, BUT YOU'RE ASKING SAMSUNG THE QUESTION.  I

9    JUST DIDN'T WANT TO APPEAR RUDE TO BE WALKING AWAY FROM YOU.

10           THE COURT:  OH, THAT'S FINE.  THAT'S FINE.

11       -- WHERE DEPENDENT CLAIM 29 SAYS THAT "THE DISPLAY IS A

12   TOUCHSCREEN DISPLAY AND WHEREIN THE KEYBOARD IS A VIRTUAL

13   KEYBOARD DISPLAYED ON THE TOUCHSCREEN DISPLAY."

14           MS. MAROULIS:  YES, YOUR HONOR.  THIS HAS TO DO WITH

15   THE STRUCTURE OF THE CLAIMS, AND CLAIM 18 IS DIFFERENT FROM THE

16   OTHER CLAIMS IN THIS PATENT.  CLAIM 18 HAS A LIMITING PREAMBLE

17   WHERE YOU HAVE A SEPARATE GRAPHICAL USER INTERFACE ON A

18   PORTABLE ELECTRONIC DEVICE WITH A KEYBOARD -- AND THEN THIS IS

19   A KEY ISSUE -- AND A TOUCHSCREEN DISPLAY COMPRISING.

20       SO THE REST OF THE CLAIM ELEMENTS DEPEND FROM -- THEY GO

21   BACK TO THIS PREAMBLE AND THE PREAMBLE LIMITS IT IN THE WAY

22   THAT OTHER CLAIMS IN THE PATENT DO NOT.

23       SO IF WE LOOK AT THE SPECIFICATION, THE SPECIFICATION

24   DISCUSSES --

25           THE COURT:  WELL, WHERE IT SAYS IN CLAIM 29 THAT "THE
```

1    KEYBOARD IS A VIRTUAL KEYBOARD," HOW DO WE SQUARE THAT WITH

2    YOUR CONTENTION THAT KEYBOARD CAN NEVER BE A VIRTUAL KEYBOARD

3    AND ALWAYS HAS TO BE A PHYSICAL KEYBOARD?

4         MS. MAROULIS:  YOUR HONOR, THAT IS NOT SAMSUNG'S

5    CONTENTION, AND WE APOLOGIZE IF THAT IS THE IMPRESSION CONVEYED

6    BY THE BRIEFS.

7         INSTEAD, WHAT WE SUGGEST IN OUR BRIEFS, AND WHAT'S TRUE OF

8    THE PATENT, IS THAT THE PATENT COVERS DIFFERENT EMBODIMENTS.

9    THERE'S VIRTUAL KEYBOARDS AND THERE'S PHYSICAL KEYBOARDS, AND

10   SOME CLAIMS GO TO THE EMBODIMENTS THAT HAVE VIRTUAL KEYBOARDS,

11   SUCH AS CLAIM 29 AND, FOR EXAMPLE, CLAIMS THAT DEPENDS FROM

12   INDEPENDENT CLAIM 2 WHERE THEY SPECIFICALLY CALL OUT THE

13   VIRTUAL KEYBOARD; AND OTHER CLAIMS COVER THE EMBODIMENT THAT

14   COVERS PHYSICAL KEYBOARD, AND CLAIM 18 IS ONE OF THE CLAIMS

15   THAT COVERS PHYSICAL KEYBOARD BECAUSE IT HAS DISPLAY AND IT HAS

16   KEYBOARD AS TWO SEPARATE ELEMENTS.

17        AND THIS IS THE IMPORTANT PART, BECAUSE IN OUR BRIEFS WE

18   CITE A NUMBER OF CASES WHERE THE FEDERAL CIRCUIT LOOKED AT WHAT

19   HAPPENS WHEN YOU HAVE TWO OR MORE DIFFERENT SEPARATE ELEMENTS

20   SET OUT IN A CLAIM, AND THE CASES ARE GAUS AND BECTON

21   DICKINSON.

22        IN BOTH OF THOSE CASES, THE CLAIM WAS STRUCTURED WHERE YOU

23   HAD DIFFERENT ELEMENTS AND THE COURT BELOW CONSTRUED THEM AS

24   ONE, IN ONE INSTANCE, IN THE BECTON DICKINSON CASE WHERE THE

25   TECHNOLOGY WAS A RETRACTABLE NEEDLE, AND THE COURT BELOW

1    CONSTRUED THE ARM AND THE SPRING MEANS TOGETHER AND THE COURT

2    SAID --

3              THE COURT:  IS IT ESSENTIAL FOR YOUR INTERPRETATION

4    OF THIS INVENTION THAT THE KEYBOARD BE A PHYSICAL KEYBOARD?

5              MS. MAROULIS:  YES, YOUR HONOR, BECAUSE --

6              THE COURT:  WHY?

7              MS. MAROULIS:  BECAUSE IN THIS CASE, IT'S CLEAR THAT

8    THE DISPLAY IS SEPARATE FROM IT.  A VIRTUAL KEYBOARD IS ON OR

9    IN THE DISPLAY.  A PHYSICAL KEYBOARD IS SEPARATE, A SEPARATE

10   ELEMENT.

11         SO WHEN YOU LOOK AT CLAIM 18, IT TALKS ABOUT TWO DIFFERENT

12   ELEMENTS, A DISPLAY AND A PHYSICAL KEYBOARD.

13         IN OTHER CLAIMS WHERE IT TALKS ABOUT VIRTUAL KEYBOARD, IT

14   IS PART OF THE DISPLAY.

15         AND THIS ALSO IS CONFIRMED BY THE DECLARATION OF OUR

16   EXPERT, DR. WIGDOR, AT DOCKET NUMBER 855-5, WHO TALKS ABOUT HOW

17   THE FACT THAT THE LANGUAGE TALKS ABOUT PORTABLE ELECTRONIC

18   DEVICE WITH A KEYBOARD AND A TOUCHSCREEN DISPLAY MEANS TO HIM,

19   AS A PERSON OF ORDINARY SKILL, THAT THE KEYBOARD IS PHYSICAL

20   BECAUSE IT'S A SEPARATE BEING, IT'S A SEPARATE ELEMENT.

21         AND THE SAME WAS THE CASE ON THOSE TWO CASES THAT I

22   REFERENCED, ESPECIALLY GAUS, WHICH IS PROBABLY CLOSER TO THIS

23   CASE BECAUSE THERE WERE TWO ELEMENTS, PART OF THE HAIR DRYER,

24   BASICALLY, AND AN ELECTRONIC OPERATING ELEMENT AND THE

25   ELECTRONIC PROBES, AND ONE PARTY WAS ARGUING THAT ONE WAS A

1    PART OF THE OTHER, AND THE OTHER PARTY WAS ARGUING THAT THERE

2    ARE TWO OF THEM SEPARATELY.

3         AND THE FEDERAL CIRCUIT SAID, WHEN YOU HAVE THE CLAIM

4    SETTING OUT TWO ELEMENTS SEPARATELY, TWO OR MORE ELEMENTS

5    SEPARATELY, THEY ARE DIFFERENT ELEMENTS FROM EACH OTHER.

6         AND WHAT YOU SEE HERE --

7              THE COURT:  ALL RIGHT.  THANK YOU.

8         LET ME ASK -- I'LL GIVE APPLE JUST A MINUTE IF YOU WANT TO

9    RESPOND ON THIS ONE.  I DON'T NEED TO SPEND A LOT OF TIME ON

10   THE '172.

11             MR. KREVITT:  YOUR HONOR, I ONLY WANT TO BE HELPFUL.

12   WE DON'T BELIEVE YOU NEED TO SPEND TIME ON THE '172, EITHER.

13        IF I COULD JUST MAKE TWO QUICK POINTS FOR YOUR HONOR TO

14   CONSIDER?

15        ONE IS OTHER CLAIMS ALSO CLAIM TOUCHSCREEN DISPLAY AND

16   KEYBOARD, FOR EXAMPLE, CLAIM 2, AND THEN YOU HAVE CLAIM 6 AND

17   YOU HAVE CLAIM 7, AND FROM OUR PERSPECTIVE, THAT ANSWERS THE

18   QUESTION.

19        CLAIM 6 SAYS EVEN IN AN INDEPENDENT CLAIM WHERE YOU HAVE A

20   TOUCHSCREEN DISPLAY AND A KEYBOARD, CLAIM 6 SAYS IT IS A

21   VIRTUAL KEYBOARD THAT IS PART OF THE TOUCHSCREEN DISPLAY.

22        CLAIM 7 DOES EXACTLY THE OPPOSITE.  IT SAYS A PHYSICAL

23   KEYBOARD THAT IS NOT PART OF THE TOUCHSCREEN DISPLAY.

24        WHEN APPLE WANTS TO CLAIM IT AS A VIRTUAL KEYBOARD AND

25   LIMIT IT TO A VIRTUAL KEYBOARD, IT DOES.  WHEN APPLE WANTS TO

1      LIMIT IT TO A PHYSICAL KEYBOARD, IT DOES.

2           AND OF COURSE NOTHING IN CLAIM 18 LIMITS IT.

3           AND THE GAUS CASE, YOUR HONOR -- I KNOW YOU WANT TO MOVE

4      ON SO I'M SPEAKING QUICKLY -- THE GAUS CASE, TO THE EXTENT YOUR

5      HONOR HAS ANY REMAINING QUESTIONS ABOUT THIS, THE COURT SAID

6      VERY CLEARLY THAT THE PLAIN LANGUAGE OF THE CLAIM REQUIRED

7      THEM, THE TWO ELEMENTS, TO BE CONSIDERED AS TWO SEPARATE

8      ELEMENTS.

9           THE FEDERAL CIRCUIT HELD "NOTHING IN THE DESCRIPTIONS OF

10     THESE TWO COMPONENTS SUGGESTS THAT THEY'RE STRUCTURED OR

11     FUNCTIONS OVERLAP.  TO THE CONTRARY, THE SPECIFICATION PLAINLY

12     DESCRIBES THE TWO COMPONENTS AS SEPARATE."

13          IN THE '172 PATENT, EVERY SINGLE FIGURE, WITHOUT

14     EXCEPTION, SHOWS A VIRTUAL KEYBOARD.

15          THERE'S NOTHING IN THE PATENT TO SUGGEST THAT WHEN IT SAYS

16     KEYBOARD, IT'S A PHYSICAL KEYBOARD.  TO THE CONTRARY.  THERE

17     ARE CLAIMS THAT HAVE TOUCHSCREEN DISPLAY AND KEYBOARD, AND

18     FURTHER CLAIMS THAT LIMIT IT TO PHYSICAL AND DEPENDENT CLAIMS

19     THAT LIMIT IT TO VIRTUAL WHEN APPLE WANTED TO DO SO.

20          THE COURT:  LET ME ASK, I'M -- I'M SORRY.  GO AHEAD,

21      PLEASE.

22          MR. KREVITT:  THE ONLY OTHER THING I WANTED TO NOTE

23     WAS IN RESPONSE TO A QUESTION YOU ASKED EARLIER, WHY WASN'T

24     THIS CLAIM CONSTRUCTION RAISED EARLIER, I JUST WANTED TO NOTE,

25     THIS ISSUE WAS NEVER RAISED IN THE PRELIMINARY INJUNCTION.

```
 1          THIS WHOLE NOTION, THIS NON-INFRINGEMENT ARGUMENT OF
 2     PHYSICAL KEYBOARD, WE HAD A PRELIMINARY INJUNCTION PROCEEDING.
 3     AS YOUR HONOR IS WELL AWARE, THIS IS ONE OF THE PATENTS THAT
 4     YOUR HONOR CONSIDERED AND RULED UPON.
 5          SAMSUNG NEVER EVEN RAISED, SUGGESTED, HINTED THAT CLAIM 18
 6     COULD POSSIBLY BE LIMITED TO A PHYSICAL KEYBOARD.
 7          IT WAS ONLY AFTER YOUR HONOR REJECTED THE NON-INFRINGEMENT
 8     ARGUMENT THAT WAS RAISED IN THE PRELIMINARY INJUNCTION
 9     PROCEEDINGS DID WE SEE THIS CLAIM CONSTRUCTION ISSUE APPEAR IN
10     THE EXPERT REPORT.
11          THIS --
12          THE COURT:  LET ME ASK A QUESTION OF BOTH OF YOU.
13     DID YOU FINISH?  OTHERWISE I'LL LET YOU FINISH.
14          MR. KREVITT:  I DID, YOUR HONOR.
15          MS. MAROULIS:  YOUR HONOR --
16          THE COURT:  OKAY.  LET ME ASK A QUESTION.  I AM
17     CONSIDERING DOING A LIMITED NUMBER OF CLAIM CONSTRUCTIONS, BUT
18     LET ME ASK YOU ALL, WHICH TERMS DO YOU THINK NEED TO BE
19     CONSTRUED AND HOW WOULD I DISTINGUISH WHICH ONES TO CONSTRUE
20     AND WHICH ONES NOT TO?
21          THERE ARE CERTAIN ONES THAT I THINK THERE ARE GENUINE
22     FACTUAL ISSUES THAT CAN BE DECIDED BY THE JURY, AND THERE ARE
23     OTHERS WHERE I THINK ONE SIDE IS PERHAPS BEING OVERLY
24     AGGRESSIVE IN ITS CONSTRUCTION AND COULD POTENTIALLY LEAD THE
25     JURY TO POTENTIALLY ISSUE AN ERRONEOUS VERDICT WHICH WOULD HAVE
```

```
 1        TO BE REMEDIED ON JMOL, WHICH I DON'T THINK WOULD BE NECESSARY.

 2             SO TELL ME WHAT YOU THINK ABOUT KEYBOARD AND WHETHER THAT

 3        IS ONE IN WHICH A CONSTRUCTION WILL BE HELPFUL OR NOT.

 4             MR. KREVITT:  WELL, AGAIN, YOUR HONOR, WE NEVER WOULD

 5         HAVE THOUGHT SO.  THIS WAS -- THE CLAIM LANGUAGE CLEARLY

 6         DOESN'T LIMIT IT TO PHYSICAL.  IT'S NOT ONE THAT WE EVER WOULD

 7         HAVE THOUGHT WOULD HAVE NEEDED CONSTRUING.

 8             THIS IS SAMSUNG'S ONLY NON-INFRINGEMENT ARGUMENT.  SAMSUNG

 9        SHOULD NOT BE ABLE TO ARGUE TO THE JURY THAT ITS PRODUCTS DO

10        NOT INFRINGE BECAUSE THEY DO NOT HAVE A PHYSICAL KEYBOARD

11        BECAUSE THAT CLEARLY WOULD BE INVITING AN ERRONEOUS CLAIM

12        CONSTRUCTION.

13             SO THAT EXTENT, IT'S AN ISSUE THE COURT CAN, AND I BELIEVE

14        EASILY CAN, RESOLVE.

15             THE CLAIMS ARE NOT LIMITED TO PHYSICAL KEYBOARDS.  THEY

16        SHOULDN'T BE LIMITED TO PHYSICAL KEYBOARDS.

17             ONCE THAT ISSUE IS DISPOSED OF, SAMSUNG'S NON-INFRINGEMENT

18        CASE IS DISPOSED OF.

19             OF COURSE, AS MS. MAROULIS MENTIONED, SAMSUNG STILL HAS A

20        VALIDITY CASE.

21             THE COURT:  I'M GOING TO GIVE MS. MAROULIS THE LAST

22         WORD ON THIS ISSUE.

23             MS. MAROULIS:  YES, YOUR HONOR.

24             THE IMPORTANT POINT IS I THINK I UNDERSTOOD THE COUNSEL TO

25         SAY THAT THE SPECIFICATION DOES NOT HAVE ANY EMBODIMENTS THAT
```

1        COVER PHYSICAL KEYBOARD.

2              IN FACT, THAT'S NOT THE CASE.  THERE IS A SPECIFIC

3        EMBODIMENT IN SPECIFICATION ON PAGE -- COLUMN 7, LINES 33 TO 39

4        THAT TALKS ABOUT PHYSICAL KEYBOARD THAT IS NOT PART OF

5        TOUCHSCREEN DISPLAY.

6              SO THAT PART OF THE SPECIFICATION EXACTLY SUPPORTS CLAIM

7        18 AND SAMSUNG'S ARGUMENT BASED ON CLAIM 18.

8              THERE ARE MULTIPLE INTERPRETATIONS IN THIS PATENT.  THERE

9        ARE MULTIPLE EMBODIMENTS.  THERE'S NOT ACTUALLY A PREFERRED

10       EMBODIMENT.  THERE ARE SEVERAL DIFFERENT ONES.

11             ONE OF THEM IS A PHYSICAL KEYBOARD, AND NOT JUST ANY

12       PHYSICAL KEYBOARD, BUT ONE THAT IS NOT PART OF THE TOUCHSCREEN

13       DISPLAY.

14             APPLE CHOSE TO ASSERT CLAIM 18.  CLAIM 18 IS HOW IT IS

15       WRITTEN AND, BASED ON THE SPECIFICATION, BASED ON THE STRUCTURE

16       OF THE PREAMBLE, AND BASED ON THE SUPPORTING OPINION OF

17       SAMSUNG'S EXPERT, WE BELIEVE THAT IT IS CLEAR THAT THE CLAIM IS

18       LIMITED, IN THIS INSTANCE, TO THE PHYSICAL KEYBOARD.

19             THE COURT:  OKAY.  THANK YOU.

20             CAN WE MOVE TO THE '647, PLEASE?  LET ME ASK, WHAT IS THE

21       LIKELY TIMELINE OF WHEN THE FEDERAL CIRCUIT MAY RULE ON

22       JUDGE POSNER'S CLAIM CONSTRUCTION?

23             MR. LYON:  GOOD AFTERNOON, YOUR HONOR.  MARK LYON.

24             THE HEARING WAS HELD IN SEPTEMBER, I BELIEVE IT WAS

25       SEPTEMBER 11TH, SO GIVEN THE TYPICAL TIMELINE OF THESE THINGS,

1    WE WOULD EXPECT IT COULD BE AS EARLY AS A MONTH OR SO FROM NOW,

2    BUT IT'S OBVIOUSLY UP TO THE FEDERAL CIRCUIT AS TO WHEN IT

3    WANTS TO ISSUE A RULING.

4              THE COURT:  SO IF YOU'RE -- I UNDERSTAND THAT YOU'RE

5    CHALLENGING JUDGE POSNER'S CONSTRUCTION ON APPEAL.  WHY DIDN'T

6    YOU ASK FOR A CONSTRUCTION OF "ANALYZER SERVER" HERE DURING THE

7    MARKMAN PROCESS AND HEARING?

8              MR. LYON:  WELL, OUR VIEW, YOUR HONOR, IS THAT IT WAS

9    ACTUALLY PART OF WHAT HAPPENED AT THE P.I.  THERE WAS ONE OF

10   THE DEFENSES, AND IT WAS A DEFENSE RAISED BY SAMSUNG AS PART OF

11   THE PRELIMINARY INJUNCTION PHASE, THAT THERE WAS NOT THE

12   SEPARATENESS THAT WAS REQUIRED BY THE ANALYZER SERVER.  THERE

13   WAS NOT A SEPARATE FROM THE CLIENT ASPECT TO THE, THE DATA

14   DETECTION THAT'S DONE IN THE ANDROID PHONES.

15       AND THE COURT ACTUALLY FOUND THAT THAT WASN'T THE CASE,

16   THAT IT DIDN'T REQUIRE THAT TO BE A SEPARATENESS.  THE PRESENCE

17   OF SOME OF THIS GLUE CODE AND SOME OF THE OTHER CODES THAT BIND

18   WITH THE APPLICATIONS DOES NOT TAKE OUT THE PROCESS FROM BEING

19   AN ANALYZER SERVER.

20       SO OUR VIEW IS THAT IT'S ALREADY BEEN DECIDED BY THE

21   COURT, AND THAT IS CONSISTENT WITH THE POSITION WE'VE BEEN

22   ADVOCATING IN FRONT OF THE FEDERAL CIRCUIT NOW IN THE POSNER

23   CASE.

24              MR. JOHNSON:  YOUR HONOR, WE THINK THAT THE FEDERAL

25   CIRCUIT COULD RULE ANY DAY.  ACTUALLY, WE CHECKED IT THIS

```
1         MORNING BEFORE WE CAME IN.  LITERALLY IT COULD HAPPEN ANY DAY.

2              THE COURT:  UM-HUM.

3              MR. JOHNSON:  AND WE BELIEVE THAT THAT IS ONE OF THE

4    REASONS WHY THIS -- ANOTHER REASON WHY THIS MOTION SHOULD BE

5    DENIED.  WE'RE GOING TO GET A CONSTRUCTION FROM THE FEDERAL

6    CIRCUIT ON THIS PARTICULAR ISSUE OF "ANALYZER SERVER."

7         IN OUR MOTION -- IN OUR OPPOSITION TO THEIR MOTION ON THE

8    '647, BEYOND JUST THE TWO ANALYZER SERVER ISSUES THAT WE RAISED

9    IN CONNECTION WITH THE PRELIMINARY INJUNCTION, WE RAISED THREE

10   ADDITIONAL ANALYZER SERVER CONSTRUCTION SLASH, YOU KNOW,

11   NON-INFRINGEMENT ARGUMENTS THAT RELATE TO THE ACTUAL OPERATION

12   OF ALL OF THE ACCUSED PRODUCTS.

13        YOU KNOW, WE SAID -- AND DR. JEFFAY EXPLAINS IN GREAT

14   DETAIL IN HIS DECLARATION THAT THERE'S NO ANALYZER SERVER UNDER

15   ANY CONSTRUCTION.

16        BUT HE GOES FURTHER AND ALSO PROVIDES DETAIL ON THE FACT

17   THAT THE ANALYZER SERVER DOES NOT LINK MULTIPLE ACTIONS AS

18   REQUIRED BY THE CLAIM.  AT BEST, ONLY ONE ACTION IS EVER

19   LINKED.

20        AND WHEN YOU LOOK AT THE MOTOROLA COURT'S CONSTRUCTION,

21   THE ANALYZER SERVER DOES NOT RECEIVE DATA FROM THE CLIENT.

22        AGAIN, DR. JEFFAY GOES THROUGH A LOT OF DETAILS IN HIS

23   DECLARATION, AND I'M HAPPY TO PROVIDE THE CITES AS TO WHERE ALL

24   THAT ANALYSIS IS, BUT THAT IS --

25              THE COURT:  MAY I ASK YOU A QUESTION?  HOW MUCH DOES
```

```
 1        YOUR SEPARATE FROM THE CLIENT ARGUMENT ON SUMMARY JUDGMENT

 2        DIFFER FROM THE ARGUMENT YOU MADE AT THE PRELIMINARY INJUNCTION

 3        HEARING?

 4             MR. JOHNSON:  IT DIFFERS QUITE A BIT.  IT DIFFERS

 5        QUITE A BIT BECAUSE --

 6             THE COURT:  WHY IS THAT?

 7             MR. JOHNSON:  FIRST OF ALL, THERE'S NEW NEWS, AND THE

 8        NEW NEWS IS WE NOW HAVE SPENT AN INCREDIBLE AMOUNT OF TIME AND

 9        ENERGY RESEARCHING ALL THE SOURCE CODE ON ALL THE ACCUSED

10        PRODUCTS, AND DR. JEFFAY GOES -- DR. JEFFAY GOES THROUGH A LOT

11        OF DETAILS AT PARAGRAPHS 95 THROUGH 98 OF HIS DECLARATION, AND

12        AGAIN AT 115 THROUGH 118 -- AND PROVIDES AN IN-DEPTH ANALYSIS

13        THAT REALLY FOCUSES ON THE RUN TIME OPERATION OF THE CODE AND

14        HOW THE CODE ACTUALLY WORKS ON THE PHONE AS OPPOSED TO WHAT WAS

15        LOOKED AT IN CONNECTION WITH THE PRELIMINARY INJUNCTION, WHICH

16        WAS THE STOCK CODE THAT WAS PUBLICLY AVAILABLE.

17        THIS IS ACTUALLY THE CODE THAT RUNS ON THE DEVICES.

18        AND DR. JEFFAY CONCLUDES THAT THERE IS NO SERVER UNDER ANY

19        CONSTRUCTION AND PROVIDES THE DETAILS AS TO THE FACT THAT THE

20        CODE THAT APPLE ACCUSES ISN'T AN ACTIVE COMPONENT.  IT CAN'T

21        INTERACT WITH OTHER PROGRAMS, AND THERE'S NO PROGRAM THAT'S

22        CAPABLE OF PERFORMING THE FUNCTIONS OF A SERVER AS APPLE SAYS.

23        AND HE ALSO SAYS THAT -- AGAIN, GOING BACK TO THIS LINKING

24        ARGUMENT AT PARAGRAPHS 99 AND 119 OF HIS DECLARATION -- HE

25        EXPLAINS THAT THE ANALYZER SERVER DOES NOT LINK ACTIONS
```

1    BECAUSE, AT BEST, ONLY ONE ACTION IS LINKED.

2         YOU MAY RECALL, YOUR HONOR, THAT THEY HAVE THIS VIEW NOW

3    THAT YOU PRESS ON TO WHATEVER THE STRUCTURE IS, SO CERTAINLY

4    YOU CAN'T -- THERE'S NO LINKED STRUCTURE UNTIL YOU PRESS THE

5    PHONE NUMBER OR THE ADDRESS OR ANYTHING ELSE.

6         AND ONCE IT'S PRESSED, THERE'S -- YOU CAN'T CHANGE THE

7    STRUCTURE, SO AT BEST, ONLY ONE STRUCTURE IS EVER LINKED.

8    THERE'S NO LINKED --

9              THE COURT:  I'M GOING TO GET INTO THE LONG PRESS

10   ISSUE.

11             MR. JOHNSON:  OKAY.

12             THE COURT:  BUT LET ME JUST ASK, SO IS YOUR BEST FACT

13   SINCE PRELIMINARY INJUNCTION THE FACT THAT DR. JEFFAY HAS NOW

14   REVIEWED ALL THE OPERATING SOURCE CODE VERSIONS AND DONE THE

15   SOURCE CODE ANALYSIS?  OR ARE THERE OTHER --

16             MR. JOHNSON:  YEAH, THAT, AND HIS --

17             THE COURT:  OKAY.  AND WHAT ELSE?

18             MR. JOHNSON:  AND THERE ARE -- WHEN YOU LOOK AT IT

19   AND COMPARE IT TO ALSO THE MOTOROLA -- SO YOU'VE GOT THREE

20   ITEMS:  THE ANALYZER SERVER DOESN'T INFRINGE UNDER ANY

21   CONSTRUCTION ACCORDING TO HIS ANALYSIS; IT DIDN'T LINK MULTIPLE

22   ACTIONS AS REQUIRED BY THE CLAIM.

23         AND AGAIN, AFTER HIS ANALYSIS -- THIS IS AN ARGUMENT THAT

24   WAS NOT MADE PRELIMINARILY IN CONNECTION WITH THE P.I., AND HE

25   EXPLAINS THAT AT PARAGRAPHS 99 AND 119 OF HIS DECLARATION.

1          AND WHEN YOU CONSIDER THE MOTOROLA COURT'S CONSTRUCTION,

2    THAT THE ANALYZER SERVER DOES NOT RECEIVE DATA FROM A CLIENT,

3    THERE'S AN ADDITIONAL ARGUMENT THAT APPLE CAN'T SHOW THAT THE

4    SERVER ACTUALLY RECEIVES DATA FROM A CLIENT.  THAT'S BECAUSE

5    THERE'S NO SERVER AND NO CODE THAT CALLS A SERVER TO SEND DATA.

6          THERE'S JUST NO CLIENT-SERVER RELATIONSHIP, AND THAT'S

7    EXPLAINED AT JEFFAY DECLARATION PARAGRAPHS 112 TO 113 AND 135

8    TO 136.  THERE'S NO SERVER OR CODE THAT CALLS A SERVER TO SEND

9    DATA.

10          THE COURT:  SO LET ME GO TO APPLE NOW.

11          I THINK IT'S A LITTLE BIT DIFFICULT, THE POSITION YOU PUT

12    THE COURT IN, BECAUSE ON PRELIMINARY INJUNCTION YOU SAID,

13    "WELL, EVEN UNDER JUDGE POSNER'S CONSTRUCTION, WE WOULD PREVAIL

14    ON THE GALAXY NEXUS."

15          AND NOW ON APPEAL, YOU'RE OBVIOUSLY CHALLENGING THAT,

16    CHALLENGING JUDGE POSNER'S CONSTRUCTION TO THE FEDERAL CIRCUIT.

17          AND THEN IN YOUR SUMMARY JUDGMENT PLEADINGS, YOU PUT IN A

18    NEW CLAIM CONSTRUCTION AND YOU JUST PUT, BASICALLY, A SENTENCE

19    IN THE BRIEF AND THEN YOU TRY TO INCORPORATE 16 PARAGRAPHS FROM

20    YOUR INFRINGEMENT EXPERT'S REPORT.

21          IT'S REALLY NOT FAIR TO THE COURT TO GIVE SUCH A TRUNCATED

22    RECORD FOR CLAIM CONSTRUCTION.  I DON'T HAVE ALL OF THE FILE

23    HISTORY.  IT HASN'T BEEN FULLY BRIEFED.

24          AND YOU'RE SORT OF NOT ABIDING WITH ALL OF THE DIFFERENT

25    REQUIREMENTS, NUMBER ONE, THE PAGE LIMIT BY JUST INCORPORATING

 1     16 PARAGRAPHS FROM YOUR EXPERT'S REPORT.

 2          YOU'RE NOT ABIDING BY WHAT I SAID IN THAT IF YOU WANT A

 3     CLAIM CONSTRUCTION, THEN JUST ASK FOR A CLAIM CONSTRUCTION

 4     HEARING AND I WILL BE HAPPY TO PROVIDE THAT.

 5          SO KIND OF, YOU KNOW, TAKING THE COURT DOWN THE PATH OF,

 6     WELL, JUST ASSUME JUDGE POSNER'S CONSTRUCTION, AND THEN AT

 7     SUMMARY JUDGMENT NOW COMING IN WITH A NEW CONSTRUCTION JUST

 8     PUTS US IN A VERY DIFFICULT SPOT.  YOU WANT TO RESPOND TO THAT?

 9          MR. LYON:  YES, I DO.  AND LET ME APOLOGIZE.  WE DID

10     NOT INTEND BY ANY STRETCH TO PUT THE COURT IN DIFFICULTY WITH

11     THIS, SO LET ME RESPOND TO A COUPLE THINGS.

12          THE COURT:  OKAY.

13          MR. LYON:  ONE, MR. JOHNSON DID RAISE THE ISSUE OF

14     THIS LINKING, AND THAT WAS AN ISSUE THAT WAS PART OF THE P.I.

15     AND THAT WAS A PHRASE.  AND IF -- I HAVE SOME SLIDES SO I CAN

16     REFER YOU TO SOMETHING.  IF I MAY DO THAT, IF I CAN HAND THESE

17     UP TO YOU?

18          AND IN PARTICULAR, IF WE TURN TO SLIDE 19, THIS IS PART OF

19     THE COURT'S P.I. ORDER, AND THE COURT THERE FINDS, IN RESPONSE

20     TO SAMSUNG'S ARGUMENT THAT THE DEVICES, THE ACCUSED DEVICE IN

21     THIS CASE, THE GALAXY NEXUS, WHICH DR. JEFFAY DOES AGREE IS

22     REPRESENTATIVE OF ALL THE OTHER DEVICES FOR -- WITH SOME MINOR

23     EXCEPTIONS THAT WE CAN GET INTO IN A BIT.

24          BUT GENERALLY IT'S THE SAME TYPE OF ANALYSIS FOR THE JELLY

25     BEAN -- OR THE GALAXY NEXUS AS FOR ALL THE OTHER DEVICES, AND

1   SAMSUNG RAISED THIS LINKING DEVICE -- THIS LINKING DEFENSE AND

2   SAID THAT "WE DON'T LINK.  WE DON'T HAVE A SITUATION WHERE

3   WE'RE LINKING BECAUSE WE DON'T HAVE THESE POINTERS.  WE DON'T

4   HAVE THESE DIRECT RELATIONSHIPS."

5        AND WHAT THE COURT FOUND, PROPERLY I BELIEVE, IS YOU DON'T

6   HAVE TO BECAUSE ALL THE CLAIMS REQUIRE IS THERE BE THIS

7   ASSOCIATION, AN ASSOCIATION BETWEEN THE, THE ACTION YOU'RE

8   CHOOSING AND THE ACTION THAT'S PERFORMED.  IN OTHER WORDS,

9   MAKING A SELECTION AND WE'RE GOING TO LINK THAT SELECTION TO

10  SOME KIND OF AN ACTION.

11       AND THE LINKING IS JUST AN ASSOCIATION.  IT DOESN'T HAVE

12  TO BE A DIRECT POINTER, AN ADDRESS SPACE, SOME KIND OF A DIRECT

13  ACCESS, WHICH IS WHAT SAMSUNG URGED IN THE ORIGINAL P.I., AS

14  WELL AS IT'S URGING NOW HERE IN THIS MOTION.

15       SO FROM OUR PERSPECTIVE -- AND I APOLOGIZE IF THE COURT

16  DOES NOT BELIEVE THIS TO BE TRUE -- BUT WE BELIEVE THAT THE

17  COURT HAS ALREADY DECIDED THE CLAIM CONSTRUCTION ISSUES THAT

18  WOULD BE RELEVANT TO THIS.  THE COURT HAS DECIDED THE ANALYZER

19  SERVER ISSUE ABOUT SEPARATENESS FROM A CLIENT.

20       MR. JOHNSON TALKED ABOUT THE RECEIVING OF DATA AND --

21            THE COURT:  LET'S TALK ABOUT THE SHARED LIBRARIES OF

22  THE CLIENT.  AT THE TIME OF THE PRELIMINARY INJUNCTION, WE

23  DIDN'T HAVE THE BENEFIT OF ALL OF THE DISCOVERY AND EXPERT

24  DISCOVERY, BOTH FACT AND EXPERT, THAT HAS OCCURRED SINCE THAT

25  TIME.

```
 1              MR. LYON:  CORRECT.

 2              THE COURT:  SO I REALLY AM LOOKING AT THIS ANEW WITH

 3         ALL OF THE NEW DISCOVERY THAT WE HAVE.

 4              SO BASED ON DR. JEFFAY'S SOURCE CODE ANALYSIS OF ALL THE

 5         DIFFERENT OPERATING SOURCE CODE VERSIONS, WHY ISN'T THIS AN

 6         ISSUE FOR THE JURY?

 7              MR. LYON:  SO -- BECAUSE THERE REALLY ISN'T A

 8         DISPUTE, WHICH IS WHAT'S INTERESTING.  THERE'S A LOT OF

 9         ANALYSIS THAT DR. JEFFAY PUTS IN HIS DECLARATION.  IT'S ABOUT

10         150 PAGES LONG, I BELIEVE.  HALF OF IT IS TOTALLY IRRELEVANT TO

11         THE MOTION BECAUSE IT HAS TO DO WITH THE MESSAGING APPLICATION.

12              THE ONLY APPLICATION THAT WE'RE REALLY FOCUSSING IN ON FOR

13         THIS MOTION IS THE BROWSER, SO THERE'S A LOT OF INFORMATION --

14              THE COURT:  I WAS GOING TO ASK YOU, SO YOU'RE NOT

15         MOVING FOR SUMMARY JUDGMENT ON THE MESSENGER APPLICATION?

16              MR. LYON:  CORRECT.  THAT IS SOMETHING THAT WE BELIVE

17         IS SOMETHING THAT WAS NOT MOVED ON.  IT MAY BE AN ISSUE FOR THE

18         JURY DEPENDING ON HOW THE COURT RULES, BUT IT IS NOT AN ISSUE

19         THAT WE ARE PRESENTING TO THE COURT FOR SUMMARY JUDGMENT.

20              THE COURT:  WHAT IS THE DIFFERENCE BETWEEN THE

21         MESSENGER AND THE BROWSER APPLICATION?

22              MR. LYON:  SO THE BASIC DIFFERENCE IS THE BROWSER

23         APPLICATION -- THERE'S NOT REALLY A DISPUTE ABOUT WHAT THE CODE

24         IS DOING.  DR. JEFFAY GOES THROUGH AN ANALYSIS OF THE CODE AND

25         HE LISTS A LOT OF INFORMATION ABOUT IT, BUT THERE'S NOT MUCH
```

1    DISPUTE BETWEEN THE PARTIES ABOUT WHAT THE CODE IS, WHICH

2    ROUTINES ARE BEING CALLED, HOW THEY'RE BEING CALLED.

3         THE DISPUTE REALLY IS JUST ABOUT WHAT DOES THAT MEAN, AND

4    DR. JEFFAY AND SAMSUNG PUT FORWARD ARGUMENTS THAT ARE REQUIRING

5    THE COURT TO ADD IN SOME LIMITATIONS TO THE CLAIMS THAT AREN'T

6    THERE.  THEY WERE EITHER NOT PART OF THE COURT'S EARLIER

7    CONSTRUCTIONS, OR THEY'RE STRETCHING THE WORDS OF THE CLAIMS

8    QUITE A LONG WAYS IN ORDER TO TRY TO FIND SOME DIFFERENCE.

9         AND A GOOD EXAMPLE OF THIS IS THE SELECTING STEP, AND

10   WE'LL GET INTO THAT.  OBVIOUSLY SAMSUNG HAS A COUNTER, OR

11   ANOTHER MOTION FOR NON-INFRINGEMENT THAT'S A SUBSET OF THE

12   MOTION THAT WE FILED SINCE IT'S DIRECTED ONLY TO THE JELLY BEAN

13   BROWSER.

14            THE COURT:  RIGHT.  WE'LL GET TO THAT.

15            MR. LYON:  AND THIS ONE, YOU KNOW, THAT'S A SITUATION

16   WHERE IT'S REALLY THE DIFFERENCE BETWEEN WHEN IS THE SELECTION

17   OCCURRING VERSUS DETECTION.

18        BOTH SIDES AGREE THE CLAIMS REQUIRE A SELECTION TO CORRECT

19   THE DETECTION.  IT'S -- WHEN YOU LOOK AT, FOR EXAMPLE, THE

20   JEFFAY DECLARATION, AND YOU LOOK AT --

21            THE COURT:  SO WHAT IS YOUR VIEW ON THE MESSENGER

22   APPLICATION, THAT IT -- THAT THERE IS A DISPUTE AS TO WHAT THE

23   CODE AND THE VARIOUS OPERATING SOFTWARE VERSIONS PROVIDES?

24            MR. LYON:  THERE ARE -- THERE ARE DIFFERENT ARGUMENTS

25   AS FAR AS HOW THE CODE IS IMPLEMENTED.  THERE'S CHANGES BETWEEN

1    THE DIFFERENT OPERATING SYSTEMS AS FAR AS WHERE THE CODE IS

2    IMPLEMENTED THAT WE THOUGHT WOULD BE COMPLICATED FOR PURPOSES

3    OF SUMMARY JUDGMENT AND COULD LEAD TO SOME FACTUAL DISPUTES AS

4    TO WHAT'S REALLY GOING ON THERE, SO WE CHOSE NOT TO BRING THE

5    MESSAGING APPLICATION AS A SUMMARY JUDGMENT MOTION, FIGURING

6    THAT WE WOULD TARGET IT JUST ON THE BROWSER.

7         WE THOUGHT THAT THE BROWSER WAS ONE THAT WAS AMENABLE TO

8    SUMMARY JUDGMENT.  IT DIDN'T REALLY HAVE THOSE SAME KIND OF

9    FACTUAL DISPUTES.  IT WAS MOSTLY JUST AN INTERPRETATION ISSUE

10   THAT WE'RE TALKING ABOUT.

11        THE COURT:  ALL RIGHT.  CAN I ASK MR. JOHNSON, DO YOU

12   AGREE?  WHAT DO YOU THINK IS THE DIFFERENCE BETWEEN MESSENGER

13   APPLICATION AND BROWSER APPLICATION AND WHY DO YOU THINK THAT

14   APPLE ONLY MOVED FOR SUMMARY JUDGMENT ON THE BROWSER

15   APPLICATION?

16        MR. JOHNSON:  WELL, FIRST OF ALL, WE DISAGREE WITH,

17   WITH COUNSEL FOR APPLE.  THERE ARE MANY OF THE SAME DISPUTES

18   ABOUT BROWSER AND MESSENGER, AND DR. JEFFAY GOES THROUGH 150

19   PAGES EXPLAINING THE DETAIL OF THE SOURCE CODE AND EXPLAINING

20   THE DIFFERENCES, AND YOU'LL SEE THERE ARE VERY SIMILAR

21   ARGUMENTS FOR BROWSER AND FOR MESSENGER.

22        AND I THINK ONE OF THE FUNDAMENTAL DIFFERENCES, AND THIS

23   RELATES TO OUR MOTION ON JELLY BEAN PRODUCTS --

24        THE COURT:  WHICH WE'LL GET TO.

25        MR. JOHNSON:  -- WHICH WE'LL GET TO, I UNDERSTAND,

```
1    BUT JUST BECAUSE YOUR HONOR ASKED ME WHAT THE DIFFERENCE IS AND
2    WHY THEY DIDN'T MOVE ON IT, I DON'T THINK THERE'S ANY QUESTION
3    BUT THAT IN THE MESSENGER APPLICATION, THERE IS -- WHEN A PAGE
4    IS LOADED IN MESSENGER, THE PAGE STARTS BY LOOKING FOR
5    STRUCTURES.
6         HERE THERE ARE MANY DIFFERENCES THAT ARE IMPORTANT TO
7    APPLE'S MOTION FOR SUMMARY JUDGMENT.
8         AND, YOU KNOW, IF WE GO BACK JUST TO THE LINKING ISSUE FOR
9    A SECOND, THE PARTIES DID NOT ADDRESS WHETHER AN ACTION IS
10   LINKED WHEN --
11        THE COURT:  CAN I ASK YOU, WHAT DOES THAT MEAN?  WHEN
12   YOU LOAD A PAGE IN THE MESSENGER APPLICATION, IT LOADS FIRST
13   STRUCTURE, WHAT DOES THAT MEAN?
14        MR. JOHNSON:  SO AS YOU'RE GOING TO HEAR WHEN WE TALK
15   ABOUT JELLY BEAN, BUT JUST TO JUMP AHEAD BECAUSE IT IS
16   RELATED --
17        THE COURT:  OKAY.
18        MR. JOHNSON:  -- IN JELLY BEAN WHEN A WEB PAGE IS
19   LOADED, THERE'S NO -- IT DOESN'T LOOK FOR STRUCTURE AS, AS THE
20   '647 PATENT DESCRIBES.
21        SO, YOU KNOW, ONE OF THE IDEAS WITH THE '647 PATENT -- AND
22   IT'S LAID OUT IN FIGURES 6 AND 7 -- IS WHEN A PAGE IS LOADED,
23   THE CODE STARTS, RIGHT AWAY, LOOKING FOR -- LOOKING TO IDENTIFY
24   STRUCTURES, EXCUSE ME.
25        AND JELLY BEAN DOESN'T OPERATE THAT WAY.  JELLY BEAN, WHAT
```

1    IT DOES IS IT DOESN'T LOOK FOR ANYTHING UNTIL A USER GOES AND

2    SELECTS A STRUCTURE, PUTS HIS OR HER FINGER ON A PHONE NUMBER

3    OR AN ADDRESS, AND THE REASON IS QUITE SIMPLE ACTUALLY, BECAUSE

4    WHEN YOU LOAD A PAGE AND A ROUTINE STARTS TO RUN LOOKING FOR

5    STRUCTURES, AS IT DOES IN THE '647 PATENT, THAT USES BATTERY,

6    IT SLOWS THE PROCESS DOWN.

7        JELLY BEAN, WHICH WAS A NEW PRODUCT THAT CAME OUT AFTER

8    THE ORDER ON PRELIMINARY INJUNCTION BASICALLY CAME OUT, IT

9    OPERATES IN A DIFFERENT WAY COMPLETELY.  IT'S OPPOSITE.  WHAT

10   IT DOES IS IT STARTS TO FOCUS ON WHERE A USER PUTS HIS OR HER

11   FINGER, AND AT THAT POINT WHEN A USER TOUCHES A STRUCTURE, AT

12   THAT POINT THE STRUCTURE IS DETECTED.

13       SO WHEREAS IN PRODUCTS THAT WERE EARLIER THAT WERE IN

14   CONNECTION WITH THE PRELIMINARY INJUNCTION, PRODUCTS THAT

15   WERE -- WHEN A PAGE WAS LOADED, THE PAGE WOULD START TO LOOK

16   FOR STRUCTURES IMMEDIATELY.  THAT DOESN'T HAPPEN IN JELLY BEAN.

17       SO WHEN WE GO BACK TO APPLE'S MOTION --

18           THE COURT:  I HAVE THE SAME QUESTION THAT I HAD FOR

19   MR. LYON, AND THAT IS WHY ISN'T DR. MOWRY'S ANALYSIS OF THE

20   SOURCE CODE RELATING TO THIS LONG PRESS THEORY, WHY ISN'T THAT

21   SUFFICIENT TO HAVE THIS DISPUTE GO TO THE JURY?

22           MR. JOHNSON:  WELL, FIRST OF ALL --

23           MR. LYON:  SORRY.

24           MR. JOHNSON:  I THOUGHT YOU WERE ASKING ME.

25           THE COURT:  I'LL START WITH MR. JOHNSON.  WHY ISN'T

1     THAT SUFFICIENT?  JUST LIKE I'M ASKING MR. LYON, YOU HAVE

2     DR. JEFFAY'S SOURCE CODE ANALYSIS.  WHY SHOULDN'T THIS --

3                 MR. JOHNSON:  BECAUSE WE'RE TALKING ABOUT APPLE'S

4     MOTION HERE.  THERE'S A FUNDAMENTAL DISPUTE ON HOW THE CODE

5     OPERATES, AND DR. JEFFAY, AS I SAID, SPENDS A FAIR AMOUNT OF

6     TIME TALKING ABOUT -- IN CONNECTION WITH THIS LINKING ISSUE AND

7     THE ANALYZER SERVER, HE TALKS A LOT ABOUT THIS START ACTIVITY.

8                 THE COURT:  I'M SORRY.  I AM TALKING ABOUT YOUR

9     MOTION.  -

10                MR. JOHNSON:  YOU ARE TALKING ABOUT MY MOTION?

11                THE COURT:  YEAH.  WHY ISN'T DR. MOWRY'S ANALYSIS OF

12    THE SOURCE CODE AND HIM SAYING THIS IS LIKE, YOU KNOW, A TWO

13    TOUCH SELECTION, WHY ISN'T THAT ENOUGH TO HAVE THIS ISSUE GO TO

14    THE JURY?

15                MR. JOHNSON:  SO IF YOU LOOK AT, AND I THINK I HEARD

16    MR. LYON JUST SAY IT A SECOND AGO, THAT -- I DON'T THINK APPLE

17    DISPUTES THAT THE USER INTERFACE MUST ENABLE SELECTION AFTER

18    THE STRUCTURE HAS ALREADY BEEN DETECTED.

19          IT'S AFTER THE STRUCTURE HAS BEEN DETECTED, AND MR. MOWRY

20    AGREES WITH THAT.  APPLE AGREES WITH THAT.

21          AND THAT'S -- THAT CAME ESSENTIALLY OUT OF -- IT COMES OUT

22    OF THE SPEC, IT COMES OUT OF THE CLAIM LANGUAGE, AND APPLE

23    AGREES WITH IT.

24          AND JELLY BEAN OPERATES FUNDAMENTALLY DIFFERENT.  THE

25    OPERATION OF JELLY BEAN IS UNDISPUTED BECAUSE THERE'S NO

1    DETECTION THAT OCCURS UNTIL AFTER THE USER SELECTS A STRUCTURE,

2    A PHONE NUMBER OR AN E-MAIL ADDRESS, FOR EXAMPLE.

3         SO WHAT THEY DO, WHAT APPLE DOES IS THEY RELY ON THIS LONG

4    PRESS IDEA TO BASICALLY SAY THAT A LONG PRESS HAS DISTINCT

5    ACTIONS WITHIN IT.

6         AND THERE'S NO SUPPORT FOR THAT THAT'S EXPLAINED ANYWHERE

7    IN DR. MOWRY'S REPORT, LET ALONE A DECLARATION OPPOSING OUR

8    MOTION, AND WE HAVE LOTS OF TESTIMONY FROM DR. MOWRY WHERE HE

9    ADMITS -- AND WE CITED THIS IN OUR BRIEF -- WHERE THAT HE

10   ADMITS THAT THE USER DIRECTION OCCURS BEFORE THE DETECTORS TRY

11   TO FIND A STRUCTURE, RIGHT?

12        AND SO AS YOU MOVE FORWARD AND YOU LOOK AT THE ACTUAL

13   OPERATION AS IT RELATES TO LONG PRESS, THE DURATION OF THE

14   TOUCH, WHETHER IT'S A SHORT PRESS OR A LONG PRESS, IS

15   IRRELEVANT, AND THAT'S BECAUSE THE SAME STRUCTURE IS SELECTED,

16   IRRESPECTIVE OF HOW LONG YOU HOLD YOUR FINGER ON IT.

17        UNDER APPLE'S VIEW OF THESE DISTINCT ACTIONS, THE USER

18   CAN'T CHANGE THE STRUCTURE.  SO AS I SAID -- AND RYAN, IF WE

19   COULD PULL UP SLIDE 32 FROM THE '647 PRESENTATION -- ON THE

20   LEFT-HAND SIDE IN THE ACCUSED PRODUCT, IF I PUT MY FINGER ON

21   THE PAGE ON THE LEFT-HAND SIDE OVER THE PHONE NUMBER AND I

22   SELECT THAT STRUCTURE OF THE PHONE NUMBER -- AND AGAIN, THERE'S

23   NO SELECTION OF A DETECTED STRUCTURE UNTIL I PUT MY FINGER ON

24   THAT, AND APPLE ADMITS THAT.  THERE'S NO DISPUTE AS TO THE

25   OPERATION OF THIS.

1      IF I PUT MY FINGER ON IT AND I HOLD IT DOWN JUST FOR A

2   SECOND, IT PULLS THAT SAME PHONE NUMBER UP IN A SHORT PRESS UP

3   HERE.

4      IF I HOLD IT DOWN LONGER, IN A LONG PRESS, WHICH IS WHAT

5   THEY CALL DISTINCT ACTIONS, THAT SAME PHONE NUMBER -- IT'S HARD

6   TO SEE HERE -- BUT THERE'S NO DISPUTE THAT SAME PHONE NUMBER,

7   415-522-2000, APPEARS IN THE LONG PRESS ISSUE.

8      AND SO THERE'S NO CHANGE OF ANY STRUCTURE.  IT'S THE SAME

9   STRUCTURE.  WHETHER IT'S A SHORT PRESS OR A LONG PRESS, THE

10  SAME STRUCTURE IS SELECTED.

11     SO THIS IS A DISTINCTION THAT THEY'RE TRYING TO COME UP

12  WITH OUT OF THE AIR AND IT'S NOT SUPPORTED IN THE RECORD.

13  DR. MOWRY DOESN'T TALK ABOUT IT IN THAT SENSE.  HE DOESN'T DRAW

14  A DISTINCTION IN HIS REPORT TO SAY THAT THERE'S SOMEHOW THIS

15  DISTINCTION BETWEEN A SHORT PRESS AND A LONG PRESS AND SOMEHOW

16  THAT TAKES IT OUT.

17     THE CLAIM LANGUAGE IS WHAT'S INSTRUCTIVE, AND THE CLAIM

18  LANGUAGE SAYS -- AND RYAN, IF WE CAN JUST PULL THAT UP, SLIDE

19  33 -- OR 23, RATHER.

20         THE COURT:  CAN YOU PLEASE GIVE ME A COLUMN AND LINE

21   NUMBER?

22         MR. JOHNSON:  THIS IS CLAIM 1, YOUR HONOR --

23         THE COURT:  OKAY.

24         MR. JOHNSON:  -- A USER INTERFACE ENABLING THE

25   SELECTION OF A DETECTED STRUCTURE.

1        SO WHEN THE SELECTION OCCURS, THE STRUCTURE NEEDS TO

2    ALREADY HAVE BEEN DETECTED.  THERE'S NO DISPUTE BETWEEN APPLE

3    AND SAMSUNG ON THAT.  IT'S AFTER THE STRUCTURE IS SELECTED.

4        JELLY BEAN, WHICH WAS DESIGNED AND INTRODUCED AFTER THE

5    PRELIMINARY INJUNCTION, OPERATES DIFFERENTLY THAN ANY OF THE

6    PRODUCTS THAT WERE AT ISSUE IN THE PRELIMINARY INJUNCTION, AND

7    IT HAS TO DO WITH THE FACT THAT NO STRUCTURE IS SELECTED, NO

8    STRUCTURE IS DETECTED -- NO DETECTED STRUCTURE IS SELECTED

9    UNTIL A USER PUTS HIS OR HER FINGER ON THE PAGE.

10       AND THAT GOES BACK TO, AS I WAS SAYING, WHEN YOU LOOK AT

11    SLIDE 25, FOR EXAMPLE, THIS IS FIGURES 6 AND 7 OUT OF THEIR

12    PATENT, WHEN YOU LOOK AT -- WHEN A PAGE IS LOADED INITIALLY ON

13    THE LEFT-HAND SIDE, THE STRUCTURES ARE DETECTED.  RIGHT AWAY

14    THE PHONE NUMBER IS PICKED UP, THE ADDRESS IS PICKED UP, THE

15    E-MAIL ADDRESS IS PICKED UP.

16       THEN THE USER SELECTS A DETECTED STRUCTURE.  THE STRUCTURE

17    HAS ALREADY BEEN DETECTED OVER HERE.

18       IT'S FUNDAMENTALLY DIFFERENT, AND THE PATENT TALKS ABOUT

19    THE DISTINCTION.

20       NEXT SLIDE, PLEASE, 26.

21       LOOKING AT THE SPECIFICATION, IT REFERS TO THE FACT THAT

22    "VISUALLY SEARCHING DATA FILES OR DOCUMENTS TO FIND THESE

23    STRUCTURES IS LABORIOUS," AND THAT "MISSING A STRUCTURE SUCH AS

24    A DATE MAY LEAD TO MISSING AN IMPORTANT MEETING OR MISSING A

25    DEADLINE."

1          SO THE INTENT BEHIND THE '647 IS LOAD ALL THE STRUCTURES

2     SO THAT YOU'RE NOT GOING TO MISS THEM.

3          "AFTER IDENTIFYING STRUCTURES AND LINKING ACTIONS," AT

4     THAT POINT THE "USER INTERFACE CAN SUCCESSFULLY PRESENT AND

5     ENABLE SELECTION OF THE ACTIONS."

6          JELLY BEAN OPERATES EXACTLY THE OPPOSITE OF THIS.

7          THE COURT:  ALL RIGHT.  THANK YOU.

8          LET ME -- I'M GOING TO ALLOW MR. LYON TO RESPOND TO THAT,

9     BUT I ALSO WANT TO ASK YOU IF YOU COULD INCLUDE IN YOUR

10    RESPONSE WHEN THE SELECTION HAPPENS DURING THE LONG PRESS, AND

11    DOES DR. MOWRY IDENTIFY IN THE CODE WHERE THAT SELECTION

12    HAPPENS?  OR --

13          MR. LYON:  YES, HE DOES, YOUR HONOR.

14          THE COURT:  GO AHEAD, PLEASE.

15          MR. LYON:  IN THE SECTIONS OF THE REPORT THAT WE

16    IDENTIFY, HE GOES INTO THIS.

17          THE COURT:  SO WHEN DOES THE SELECTION HAPPEN?

18          MR. LYON:  SO THE SELECTION -- YOU CAN LOOK AT THIS

19    IN A COUPLE OF WAYS, BUT THE EASIEST WAY TO THINK ABOUT THIS IS

20    THAT ALL THAT THE CLAIM REQUIRES IS THAT THERE BE A SELECTION

21    AFTER THERE BE A DETECTION.  SO THERE'S --

22          THE COURT:  A SELECTION AFTER WHAT?  I'M SORRY.  I

23    COULDN'T HEAR THAT.

24          MR. LYON:  A SELECTION AFTER DETECTION.  THAT'S WHAT

25    I THINK WE'RE ALL AGREEING, THAT THERE IS A DETECTED STRUCTURE

1    AND THERE IS A SELECTION OF THAT DETECTED STRUCTURE THAT

2    OCCURS.

3        SO WHAT -- IF YOU LOOK AT -- IF WE PULL UP SLIDE, LET'S

4    SEE, I GUESS IT WOULD BE SLIDE 22 OF MINE -- SO IF YOU LOOK AT

5    THIS, AND THIS IS WHAT WE'RE KIND OF LOOKING AT, AND IT'S MUCH

6    LIKE WHAT MR. JOHNSON JUST MENTIONED.

7        YOU HAVE A SHORT TOUCH THAT LEADS TO ONE ACTION, AND

8    THAT'S SOMETHING THAT'S NOT BEING ACCUSED BECAUSE IT ALWAYS

9    GOES -- IT ALWAYS PERFORMS A PARTICULAR ACTION.  THERE ISN'T

10   THIS MENU THAT COMES UP THAT WE'RE TALKING ABOUT WITH RESPECT

11   TO LINKING AND THINGS THAT OCCUR WITH RESPECT TO THE OTHER

12   CLAIMS.

13       BUT THE LONG PRESS REQUIRES SOMETHING A LITTLE BIT

14   DIFFERENT.  THAT GIVES YOU THE MENU.

15       AND WHAT'S THE DIFFERENCE?  IF YOU LOOK AT DR. JEFFAY'S

16   ANALYSIS, IT'S LAID OUT THERE ACTUALLY ON PAGE 15 AROUND LINES

17   12 THROUGH 15 AND AGAIN AT PAGE 28 AROUND LINES -- IT MAY CARRY

18   OVER FROM PAGE 27, BUT THE FIRST EIGHT OR SO LINES, THERE IS A

19   SHIFT THAT OCCURS.

20       WHAT HAPPENS IS THE USER CAN SELECT THE STRUCTURE BY

21   TAPPING ON IT.  BUT THEN BY HOLDING, BY CONSCIOUSLY HOLDING ON

22   TO THAT POINT, THEY'RE MAKING A DIFFERENT SELECTION.  THEY ARE

23   SELECTING THE MENU TO COME UP.

24       AND IT IS THIS SELECTION THAT OCCURS AT THAT POINT, AND

25   IT'S CLEAR FROM THE CODE THAT THERE IS AN EVENT THAT OCCURS

```
 1          THAT CHANGES THE CHARACTER OF THIS WHOLE THING.

 2              AND IT'S THAT CONSCIOUS CARRYING THROUGH, MAKING IT A LONG

 3          PRESS --

 4                  THE COURT:  SO HOW MUCH TIME IS THAT?

 5                  MR. LYON:  IT'S NOT VERY MUCH.  I THINK IT'S ON THE

 6          ORDER OF HALF A SECOND, 500 MILLISECONDS.  I DON'T RECALL RIGHT

 7          OFF THE TOP OF MY HEAD.  IT'S NOT A LONG PERIOD OF TIME, BUT

 8          IT'S LONG ENOUGH FOR THE SYSTEM TO UNDERSTAND THAT THE USER IS

 9          NOT SELECTING THE STRUCTURE FOR ONE PURPOSE, IT'S SELECTING IT

10          FOR ANOTHER PURPOSE, AND SO THERE'S A DIFFERENT SELECTION

11          THAT'S OCCURRING BECAUSE OF THIS LONG PRESS.

12              AND THAT'S WHY THIS JELLY BEAN DOESN'T AVOID THIS IDEA BY

13          JUST HAVING THIS STRUCTURE DETECTED WHEN YOU DO WHAT THEY

14          SOMETIMES REFER TO AS A TOUCH EVENT OR SOMETHING ALONG THOSE

15          LINES.

16              YES, THE PATENT TALKS ABOUT BEING ABLE TO PRELOAD THESE

17          STRUCTURES, AND THAT'S A VERY CONVENIENT WAY BECAUSE IT ALLOWS

18          THE USER TO EASILY SEE WHERE THE STRUCTURES ARE.

19              BUT THERE'S NOTHING IN THE PATENT THAT SAYS YOU CAN'T DO A

20          DETECTION ONE AT A TIME.  THE ONLY IDEA IS THAT YOU NEED TO BE

21          ABLE TO HAVE THE USER SELECT THAT DETECTED STRUCTURE IN SOME

22          WAY, AND THAT'S WHAT JELLY BEAN ACCOMPLISHES AS WELL.

23                  MR. JOHNSON:  YOUR HONOR, JUST TO FOLLOW UP ON THAT

24          POINT, I JUST HEARD MR. LYON SAY THAT THERE'S -- ADMIT THERE'S

25          NO DIFFERENT SELECTION HERE, EVEN IN THESE DRAWINGS, IN THIS
```

1    DEMONSTRATIVE.  THE TOP -- THE TOP PRESS IS NOT ACCUSED, AND

2    THE BOTTOM ONE IS ACCUSED ACCORDING TO MR. LYON.  IN THE LONG

3    PRESS OR IN THE SHORT PRESS, IT'S THE SAME STRUCTURE THAT WAS

4    CHOSEN.  IT'S EXACTLY THE SAME PHONE NUMBER, 877-412-7753.

5         THAT'S EXACTLY THE SAME PHONE NUMBER THAT'S AT THE TOP

6    HERE IN BLUE.  THE SAME STRUCTURE IS CHOSEN.

7         AND WHAT WE HEARD MR. LYON TALK ABOUT, AND I HEARD YOUR

8    HONOR ASK HIM, WHERE DOES DR. MOWRY LAY THIS OUT?

9         AND IT'S NOT LAID OUT.  HE DOESN'T TALK ABOUT IT IN ANY OF

10   THE SPECIFIC DETAIL LIKE DR. JEFFAY DOES.

11        AND ATTORNEY ARGUMENT ON THIS POINT DOESN'T, DOESN'T CUT

12   IT TO AVOID SUMMARY JUDGMENT.

13        HERE WE HAVE ONE CLEAN ISSUE.  WE'RE TALKING ABOUT JELLY

14   BEAN AND THE BROWSER.  AND THE -- AGAIN, THE NEW NEWS IS JELLY

15   BEAN WAS DESIGNED AFTER THE PRELIMINARY INJUNCTION COMES DOWN,

16   AND WE LOOK AT THE EXPERIENCE ASSOCIATED WITH IT AND IT

17   OPERATES FUNDAMENTALLY DIFFERENT.

18        AND WHAT WE HAVE HERE NOW IS A MADE UP DISTINCTION THAT

19   SOMEHOW THERE'S DISTINCT ACTS BETWEEN A LONG PRESS AND A SHORT

20   PRESS.  NEVERTHELESS, IT'S THE SAME STRUCTURE THAT IS CHOSEN.

21        AND WHEN YOU LOOK AT THE CLAIM LANGUAGE, IT DOESN'T FIT

22   WITHIN THE CLAIM LANGUAGE.  THE CLAIM LANGUAGE SAYS, GOING BACK

23   TO USER INTERFACE, "A USER INTERFACE ENABLING THE SELECTION OF

24   A DETECTED STRUCTURE."  NO SELECTION OCCURS OF A DETECTED

25   STRUCTURE, WHETHER IT'S A LONG PRESS OR A SHORT PRESS.

```
 1            MR. LYON:  AND THAT'S WHERE I THINK WE DISAGREE, YOUR

 2    HONOR.  THIS IS WHERE YOU -- BY DOING THE LONG PRESS, THERE'S A

 3    CONSCIOUS SELECTION.  THAT IS A SELECTION THAT IS BEING MADE.

 4    THAT IS A CONSCIOUS SELECTION OF THE USER, AND IT MAY BE THE

 5    SAME STRUCTURE, IT MAY BE A DIFFERENT STRUCTURE, BUT IT IS A

 6    SELECTION OF A DETECTED STRUCTURE BECAUSE AT THAT POINT THERE'S

 7    NO QUESTION, NO DISPUTE, THE STRUCTURE HAS BEEN DETECTED.

 8            THE COURT:  WOULD YOU GIVE ME, PLEASE, A PAGE OR A

 9    PARAGRAPH NUMBER OR A LINE NUMBER TO WHERE DR. MOWRY PRECISELY

10    IDENTIFIES IN THE CODE WHERE THE SELECTION IS MADE?

11            MR. LYON:  THE -- I BELIEVE IT WOULD BE IN -- AND

12    I'LL HAVE SOMEONE CHECK ME ON THIS, BUT I BELIEVE IT WOULD BE

13    PARAGRAPHS --

14        OH, HOLD ON A MINUTE.  THAT'S A DIFFERENT SECTION.  SORRY.

15    I APOLOGIZE.

16        PARAGRAPHS 157 TO 158 AND 250 AND 251.

17            THE COURT:  WAIT, I'M SORRY.  157 THROUGH 158, AND

18    WHAT WAS THE --

19            MR. LYON:  250 AND 251.  LET ME SEE IF THERE ARE

20    OTHERS.

21            THE COURT:  LET ME ASK MR. JOHNSON, WHAT IS YOUR

22    VIEW?  DO YOU THINK 157 AND 158 DISCLOSE THAT?

23            MR. JOHNSON:  NO, YOUR HONOR, IT SIMPLY DOESN'T.

24            THE COURT:  LET ME ASK, IS THERE A PARTICULAR LINE?

25    I HAVE PARAGRAPHS 157 AND 158 IN FRONT OF ME.  IS THERE A
```

```
1     PARTICULAR LINE THAT YOU CAN POINT ME TO WHERE THAT SELECTION

2     WAS SHOWN OR MADE?

3              MR. LYON:  IF I MAY HAVE A MOMENT, YOUR HONOR?

4              THE COURT:  PLEASE, GO AHEAD.

5              MR. JOHNSON:  I'M NOT SURE 157 AND 158 ARE EVEN IN

6     THEIR BRIEF, YOUR HONOR, BUT I'M CHECKING.

7         (PAUSE IN PROCEEDINGS.)

8              MR. LYON:  SO IT'S -- I THINK DR. MOWRY'S REPORT

9     AROUND THE PARAGRAPHS I SELECTED, 157 AND 158, POINT TO THE

10    SECTIONS OF CODE WHERE THAT OCCURS, AND THEN 250 AND 251

11    DESCRIBE THE STATUS OF HOW THERE IS A DETECTION THAT OCCURS

12    BEFORE THE SELECTION HAPPENS.

13        HE GOES ON TO THEN TALK ABOUT THE VARIOUS STEPS THAT OCCUR

14    WITH INTENTS AND OTHER THINGS THAT TAKE YOU FROM THAT SELECTION

15    AND MOVE ON.

16             MR. JOHNSON:  YOUR HONOR, ONE -- SORRY.

17             MR. LYON:  SORRY.  I WAS JUST GOING TO SAY, THERE'S

18    ALSO CLAIM CHARTS AND THINGS THAT ATTACH TO THIS THAT IDENTIFY

19    VARIOUS SOURCE CODE FILES AND THINGS THAT HE LOOKED AT.  I

20    DON'T HAVE THOSE IN FRONT OF ME UNFORTUNATELY RIGHT NOW, BUT

21    THAT WOULD BE ALSO AREAS WHERE HE WENT THROUGH HIS ANALYSIS

22    THAT'S SUMMARIZED IN HIS REPORT.

23             MR. JOHNSON:  YOUR HONOR, I'M NOT SURE 157 AND 158

24    WERE EVEN REFERRED TO IN THE BRIEF.

25             BUT IN ANY EVENT, 157 AND 158 ARE TALKING ABOUT THE MENU.
```

1          THEY'RE TALKING ABOUT SETTING UP HOW THE MENU IS CREATED.

2          IT DOESN'T TALK ABOUT THIS TIMING ASSOCIATED WITH IT, A

3     LONG PRESS, SHORT PRESS.

4          THE ONLY STATEMENT THAT I'VE SEEN, YOUR HONOR, IF YOU LOOK

5     AT PARAGRAPH 251, IT REFERS TO -- AND THIS IS DR. MOWRY -- HE

6     TALKS ABOUT AT WHICH POINT STRUCTURES ARE DETECTED AS THE USER

7     MAKES THE SELECTION.

8          IT'S AN INCREDIBLY CONCLUSORY STATEMENT THAT DOESN'T

9     DISCUSS THE DETAILS OF HOW IT WORKS, DOESN'T DISCUSS WHAT I

10    HEARD MR. LYON SAY ABOUT THE FACT THAT THERE IS, YOU KNOW, A

11    DISTINCTION BETWEEN LONG PRESS AND SHORT PRESS AND SOMEBODY WHO

12    PRESSES A LONG PRESS REALLY INTENTIONALLY MEANS TO BRING UP A

13    DIFFERENT STRUCTURE ALTOGETHER.  NONE OF THAT IS LAID OUT IN

14    HERE.  NONE OF THAT IS DISCUSSED.  THAT HASN'T BEEN THEIR

15    POSITION.

16          THE COURT:  HOW IS THE JURY GOING TO MAKE A DECISION

17    ON INFRINGEMENT BASED ON THE SHORT AND THE LONG PRESS?  IS IT

18    BASED ON HOW THE -- WHAT SHOWS UP ON THE SCREEN OF A DEVICE AND

19    THAT LETS YOU KNOW WHETHER IT WAS A LONG OR SHORT PRESS?  OR --

20          MR. LYON:  WE THINK IT WOULD BE TWO THINGS, YOUR

21    HONOR.  WE THINK THAT WOULD BE PART OF IT OBVIOUSLY, BECAUSE

22    IT'S OBVIOUSLY SHOWING THE DIFFERENCE BETWEEN WHAT'S HAPPENING

23    BETWEEN THE TWO INDEPENDENT USER ACTIONS THERE.  ONE IS A

24    SHORT, ONE IS A LONG, AND THEY HAVE DIFFERENT RESULTS SO

25    THERE'S DIFFERENT CONSEQUENCES.

1   THE OTHER, THOUGH, IS WHEN YOU GET INTO THE CODE.  AND

2  DR. JEFFAY, IN HIS DECLARATION, HE DOES DO THIS ANALYSIS AND

3  IT'S -- AND THERE'S NOTHING THAT DR. MOWRY DISAGREES WITH WITH

4  RESPECT TO THE CODE THAT HE'S POINTING TO.

5   THIS IS THIS SHIFT IN EVENT THAT I POINTED TO.  WHEN YOU

6  LOOK AT THE PAGES THAT I CITED, 15 AND 28, THERE IS A SHIFT IN

7  EVENT.  THAT IS -- THAT IS THE CHANGE.  THAT IS THE SELECTION

8  POINT WHERE THE SYSTEM UNDERSTANDS THAT THE USER IS MAKING A

9  DIFFERENT SELECTION THAN A SHORT PRESS.  IT'S A DIFFERENT KIND

10  OF A SELECTION.

11    MR. JOHNSON:  AND I DON'T THINK YOU HEAR MR. LYON SAY

12  THAT THERE'S A DISPUTE AS TO HOW JELLY BEAN OPERATES.  THAT'S

13  ANOTHER REASON WHY, YOUR HONOR, WE BELIEVE THIS IS RIPE FOR

14  YOUR HONOR TO DECIDE.  THERE'S NO DISPUTE HERE AS TO THE

15  OPERATION.

16   THE QUESTION IS WHETHER IT'S COVERED BY THE LIMITATION OR

17  NOT GIVEN THE, GIVEN THE FACT THAT IT OPERATES FUNDAMENTALLY

18  DIFFERENTLY.

19   AND AS YOUR HONOR MAY ALSO RECALL, WE -- YOU KNOW, WE LAY

20  OUT IN OUR BRIEF ON SAMSUNG'S MOTION THE FACT THAT THERE'S AN

21  ADDITIONAL REASON WHY JELLY BEAN DOESN'T INFRINGE, AND THAT'S

22  BECAUSE ONLY ONE STRUCTURE IS DETECTED.

23   AND THAT'S AT SLIDE 37, PLEASE, RYAN, OF OUR PRESENTATION.

24   YOU KNOW, APPLE DISTINGUISHED, DURING THE PRELIMINARY

25  INJUNCTION PHASE, PRIOR ART ON THE BASIS THAT IT DIDN'T

1    DISCLOSE THE ANALYZER SERVER AND USER INTERFACE LIMITATIONS

2    BECAUSE THEY DID NOT ALLOW A USER TO SELECT ONE DETECTED

3    STRUCTURE FROM A SET OF PREVIOUSLY DETECTED STRUCTURES.

4         AND WE SAW IT IN THE CONTEXT -- IF WE GO TO SLIDE 39 --

5    DR. MOWRY SAID -- TOLD THE COURT IN THE PRELIMINARY INJUNCTION,

6    IN DISTINGUISHING SOME OF THE PRIOR ART THAT WE HAVE LOCATED,

7    "AT NO POINT DOES SIDEKICK ALLOW A USER TO SELECT FROM A

8    MULTITUDE OF DETECTED STRUCTURES."

9         "THE 'SELECTION OF A DETECTED STRUCTURE,' AS WRITTEN IN

10   THE CLAIM LIMITATION, NECESSARILY REQUIRES THAT A PARTICULAR

11   DETECTED STRUCTURE CAN BE CHOSEN FROM A SET OF DETECTED

12   STRUCTURES."

13        AND HE SAID IT ABOUT ANOTHER PIECE OF PRIOR ART, TOO --

14   THE NEXT SLIDE PLEASE, RYAN -- THE PANDIT PIECE OF PRIOR ART.

15   "THE PLAIN AND ORDINARY MEANING OF 'A USER INTERFACE ENABLING

16   THE SELECTION OF A DETECTED STRUCTURE' REQUIRES THE USER

17   INTERFACE TO ENABLE SELECTION OF A STRUCTURE, AFTER THE

18   STRUCTURE HAS ALREADY BEEN DETECTED."

19        AND NOW WHAT WE SEE IS AFTER JELLY BEAN WAS INTRODUCED AND

20   THE OPERATION IS DIFFERENT, IN THE CONTEXT OF THEIR

21   INFRINGEMENT READ, APPLE HAS COMPLETELY CHANGED ITS VIEW OF

22   WHAT THIS TERM MEANS.

23        SLIDE 42, PLEASE.

24        DESPITE ALL OF ITS REPRESENTATIONS, THEY NOW ASSERT, AT

25   PAGE 5 OF THEIR OPPOSITION, "NO PARTY ASSERTS THAT THE CLAIMS

1    ACTUALLY REQUIRE A SET OF DETECTED STRUCTURES."

2          WELL, WE JUST SAW DR. MOWRY'S PRELIMINARY INJUNCTION

3    REPORT SAY THE OPPOSITE.

4          IF WE GO BACK TO SLIDE --

5               THE COURT:  THIS HAS BEEN BRIEFED, SO --

6               MR. JOHNSON:  THIS IS IN THE BRIEF, YOUR HONOR, YES.

7               THE COURT:  IF IT'S BEEN BRIEFED, I'M GOING TO ASK

8    THAT WE MOVE ON TO ANOTHER PATENT BECAUSE I DO HAVE QUESTIONS

9    WITH REGARD TO OTHERS.

10              MR. JOHNSON:  JUST VERY QUICKLY GOING BACK TO APPLE'S

11   MOTION, VERY QUICKLY.

12              THE COURT:  OKAY.

13              MR. JOHNSON:  THERE ARE OTHER LIMITATIONS THAT WE

14   ASSERT AGAIN IN THE BRIEF THAT ARE NOT PRESENT IN ANY OF THE

15   ACCUSED PRODUCTS.

16         AND I JUST WANT TO GO TO SLIDE 4, BECAUSE THIS SUMMARIZES

17   THE NEW EVIDENCE THAT WE'VE DEVELOPED SINCE THE PRELIMINARY

18   INJUNCTION, AND OBVIOUSLY THERE ARE DIFFERENT STANDARDS BETWEEN

19   PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT MOTIONS HERE.

20         AND ON APPLE'S MOTION -- YOU KNOW, FIRST OF ALL, "ACTION

21   PROCESSOR" HAS NOW BEEN CONSTRUED WHICH PROVIDES ADDITIONAL

22   NON-INFRINGEMENT ARGUMENTS.

23         WE'VE ALSO DEVELOPED NEW NON-INFRINGEMENT DEFENSES FOR ALL

24   THE ACCUSED PRODUCTS, NOT JUST JELLY BEAN.

25         THERE'S NO ACTION PROCESSOR DECODE BECAUSE THE CODE THAT

1    APPLE IDENTIFIES DOES NOT PERFORM THE SELECTED ACTION ON THE

2    DETECTED STRUCTURE.

3          THERE'S NO USER INTERFACE BECAUSE NONE OF THE ACCUSED

4    PRODUCTS ENABLED THE SELECTION OF A LINKED ACTION.

5          AND THERE ARE THE THREE ANALYZER SERVER ARGUMENTS THAT WE

6    DISCUSSED EARLIER.

7          AND THE FACT IS THAT A LOT OF THIS CAME OUT OF THE

8    EXTENSIVE REVIEW AND ANALYSIS OF THE ACTUAL SOURCE CODE THAT'S

9    USED ON THE ACCUSED PRODUCTS.

10          THE COURT:  OKAY.  LET'S GO TO THE UNIFIED SEARCH,

11    PLEASE, THE '959.

12          MR. KREVITT:  YOUR HONOR, THERE ARE TWO MOTIONS

13    PENDING ON THE '959.

14          THE COURT:  UH-HUH.

15          MR. KREVITT:  APPLE HAS FILED A MOTION OF NO

16    ANTICIPATION, NO INVALIDITY OF THE WAIS --

17          THE COURT:  YES, LET'S HANDLE THAT ONE FIRST.

18          MR. KREVITT:  THAT'S THE ONE I ASSUMED YOU MEANT.

19          THE COURT:  LET'S DO THAT ONE FIRST AND THEN WE'LL DO

20    THE INDEFINITENESS SECOND.

21          MR. KREVITT:  I HAVE SOME SLIDES, YOUR HONOR, THAT

22    I'M GOING TO HAND UP, AND WE'LL GET TO THEM OR WE WON'T.

23          THE COURT:  THANK YOU.

24          MR. KREVITT:  WOULD YOU LIKE AN EXTRA SET?  WE

25    HAVE --

1          THE COURT:  WOULD YOU GIVE THOSE TO EMILY AND VIKRAM?

2     AND THEN WE'LL GIVE THEM TO YOU TO DO THE TRANSCRIPT.

3          OKAY.  WHY ISN'T IT ENOUGH THAT DR. RINARD -- CORRECT?

4          MR. KREVITT:  YES, YOUR HONOR.

5          THE COURT:  -- THAT HE TOOK THE PRE-2000 SOURCE CODE

6     AND THE PRE-2000 INSTRUCTIONS AND CREATED A SYSTEM?  WHY ISN'T

7     THAT SUFFICIENT?  WHY DO THEY HAVE TO FIND A PRISTINE ACTUAL

8     SURVIVING PRE-2000 FUNCTIONING SYSTEM?

9          MR. KREVITT:  THEY DON'T, YOUR HONOR.  AND I KNOW WHY

10    YOU ASKED THAT.  IT'S THE FIRST LINE OF THEIR OPPOSITION BRIEF.

11    IT'S A RED HERRING.

12         IF I CAN ANSWER THE QUESTION WHAT THEY HAVE TO DO.

13         THE COURT:  OKAY.  GO AHEAD, PLEASE.

14         MR. KREVITT:  102 REQUIRES -- 102(A), ON WHICH

15    THEY'RE RELYING, REQUIRES THAT SOMEONE IN THE UNITED STATES,

16    BEFORE THE PRIORITY DATE, JANUARY 2000, ACTUALLY KNEW OR

17    ACTUALLY USED THE INVENTION.  THAT'S STRAIGHT OUT OF 102,

18    ACTUALLY KNEW OR ACTUALLY USED THE INVENTION.

19         IT HAS TO BE ACTUALLY KNOWN OR USED BY OTHERS.  THERE HAS

20    TO --

21         THE COURT:  BUT WHY CAN'T A JURY INFER, BASED ON THE

22    FACT THAT THERE IS SOURCE CODE BEFORE THE CRITICAL DATE AND

23    INSTRUCTIONS BEFORE THE CRITICAL DATE, THAT SOMEONE DID THAT OR

24    SOMEONE KNEW THAT?

25         MR. KREVITT:  THE FEDERAL CIRCUIT HAS ADDRESSED THAT

 1       PRECISE QUESTION, YOUR HONOR, IN SEVERAL CASES, INCLUDING THE

 2       3M VERSUS CHEMQUE CASE AT 303 F.3D 1294.

 3           THE REASON, YOUR HONOR, IS THIS:  GIVEN THE CLEAR AND

 4       CONVINCING BURDEN AND THE REQUIREMENTS OF 102, THE DEFENDANT

 5       MUST PROVE THAT SOMEONE ACTUALLY USED -- IT'S NOT ENOUGH FOR A

 6       JURY TO INFER THAT SOMEBODY USED -- THEY MUST COME FORWARD WITH

 7       EVIDENCE, BY CLEAR AND CONVINCING EVIDENCE OF COURSE.

 8           BUT LEAVE THAT ASIDE.

 9           THE COURT:  BUT CIRCUMSTANTIAL EVIDENCE IS JUST AS

10       GOOD AS DIRECT EVIDENCE, RIGHT?

11           MR. KREVITT:  BUT YOUR HONOR, HERE'S THE KEY:  IN

12       THIS CASE, IN THIS CASE SAMSUNG HAS NOT IDENTIFIED A SINGLE

13       PERSON WHO KNEW OR USED THE INVENTION.

14           THE COURT:  BUT WHY DO THEY HAVE TO DO THAT?  CAN'T

15       THEY JUST PRESENT CIRCUMSTANTIAL EVIDENCE AND THE JURY CAN MAKE

16       AN INFERENCE?

17           MR. KREVITT:  NO, YOUR HONOR, FOR TWO REASONS.  THE

18       FIRST, AGAIN, IS THAT THE STATUTE REQUIRES THAT IT ACTUALLY BE

19       KNOWN, AND THE CASE LAW REQUIRES THAT IT ACTUALLY BE KNOWN OR

20       USED BY OTHERS.  IT IS NOT ENOUGH FOR CIRCUMSTANTIAL EVIDENCE.

21           IN FACT, THE 3M CASE ADDRESSED THAT VERY QUESTION.  THE

22       INFRINGING INSTRUMENTALITY HAD BEEN DISTRIBUTED TO VARIOUS

23       PEOPLE AND THERE WAS AN ARGUMENT MADE THAT BY HAVING DONE THAT,

24       IT WAS REASONABLE TO INFER, JUST AS YOUR HONOR IS POSITING,

25       THAT IT WAS USED.

1        THE CASE WENT TO TRIAL AND THE VALIDITY DEFENSE WAS -- THE

2   PATENT WAS FOUND, EXCUSE ME, INVALID ON THAT BASIS.

3        THE COURT, THE DISTRICT COURT DID NOT ENTER JMOL AND IT

4   WENT UP TO THE FEDERAL CIRCUIT AND THE FEDERAL CIRCUIT HELD

5   THAT THAT WAS ERROR BECAUSE UNLESS THERE IS ACTUAL, SPECIFIC

6   EVIDENCE OF SOMEONE ACTUALLY USING IT, A PERSON COMING FORWARD

7   WITH A PERSON WHO ACTUALLY USED THE INVENTION OR ACTUALLY KNEW

8   OF THE INVENTION, THERE CAN BE NO ANTICIPATION.

9        AND HERE, YOUR HONOR, THE INVENTION IS INSTRUCTIONS TO DO

10  CERTAIN THINGS, INSTRUCTIONS TO PERFORM THE STEPS THAT ARE IN

11  THE -- THE ACTIONS THAT ARE IN THE CLAIM.

12       SAMSUNG DEPOSED DOZENS OF PEOPLE.  THEY DEPOSED THE

13  FOUNDER OF WAIS, THEY DEPOSED THE DEVELOPER OF FREEWAIS-SF, THE

14  PRIOR ART ON WHICH THEY'RE RELYING.

15       NOT A SINGLE PERSON, NOT A SINGLE DOCUMENT SUGGESTS THAT

16  AT ANY TIME IN THIS COUNTRY ANYBODY KNEW OR USED THE

17  INSTRUCTIONS.

18       NOW, HERE'S WHY THE ISSUE OFTEN DOESN'T COME UP, BECAUSE

19  YOU OFTEN HAVE A SYSTEM THAT EXISTS -- AND I THINK IT GOES TO

20  THE QUESTION THAT IS ON YOUR HONOR'S MIND -- YOU HAVE A SYSTEM

21  THAT, IN FACT, IS FULLY BUILT, HAS ALL THE INSTRUCTIONS LOADED

22  IN, IS IMMEDIATELY, INSTANTLY CAPABLE OF PERFORMING ALL OF THE

23  STEPS OF THE CLAIM, AND IT'S OUT THERE AND LOTS OF PEOPLE USED

24  IT AND THERE MAY BE EVIDENCE OF THAT USE.

25       HERE THERE IS NO EVIDENCE UNTIL DR. RINARD CAME ALONG AND

```
 1        BUILT THE SYSTEM, AND YOUR HONOR ADDRESSED THE VERY --
 2              THE COURT:  YEAH, BUT UNDER YOUR READING OF THE CASE
 3        LAW, EVEN THAT SCENARIO WOULD NOT BE ENOUGH UNTIL THEY ACTUALLY
 4        FIND A LIVING BODY WHO ACTUALLY KNEW OR USED IT AND CAN
 5        IDENTIFY THAT SPECIFIC PERSON.
 6              MR. KREVITT:  WELL, YOUR HONOR, IT COULD BE A
 7        DOCUMENT THAT SUGGESTS PEOPLE KNEW OF IT.  THEY DON'T
 8        NECESSARILY NEED TO PRODUCE MR. SMITH.  IT COULD BE A DOCUMENT.
 9              THE COURT:  WHY CAN'T IT BE THE SOURCE CODE?
10              MR. KREVITT:  BECAUSE THE SOURCE CODE, YOUR HONOR --
11        AND THIS IS CRITICAL -- THE SOURCE CODE, EVEN IF IT WERE FULLY
12        PROGRAMMED -- AND WE DEMONSTRATE IN OUR BRIEF THAT IT ISN'T --
13        BUT EVEN IF IT WERE FULLY PROGRAMMED TO PERFORM THE STEPS, IT
14        DOES NOT CONSTITUTE ACTUAL KNOWLEDGE OR ACTUAL USE IN THIS
15        COUNTRY, AND HERE'S WHY:  THE SOURCE CODE WAS PRODUCED IN
16        GERMANY FOR THE FREEWAIS-SF, SO EVEN IF IT WAS CAPABLE -- AND
17        AGAIN, I WANT -- I KNOW I KEEP MENTIONING THIS, WE BELIEVE THAT
18        IT WAS NOT CAPABLE OF PERFORMING THE CLAIMED FUNCTIONS.  WE
19        BELIEVE IT WAS, AT MOST, CAPABLE OF BEING CONFIGURED TO PERFORM
20        THE CLAIMED FUNCTIONS, AND THAT'S WHAT DR. RINARD DID.  HE
21        SPENT HOURS BUILDING THIS.
22            SO EVEN IF WE GIVE SAMSUNG THE BENEFIT OF THE DOUBT THAT
23        THE SOURCE CODE WAS CAPABLE OF BEING CONFIGURED TO BE CAPABLE
24        OF PERFORMING THE CLAIMED FUNCTIONS, THE SOURCE CODE WAS
25        PRODUCED IN GERMANY AND SHIPPED INTO THE UNITED STATES.
```

1        IF NO ONE IN THE UNITED STATES KNEW OF THE CLAIMED

2    FUNCTIONALITY, KNEW OF INSTRUCTIONS TO PERFORM THE CLAIMED

3    ACTIONS, THERE IS NO ANTICIPATION.

4        IF NO ONE USED THE INSTRUCTIONS, THERE IS NO ANTICIPATION.

5        AND IT GOES, YOUR HONOR, TO THE VERY PURPOSE OF

6    ANTICIPATION, WHICH IS THAT WHEN THE INVENTION IS ALREADY IN

7    THE PUBLIC DOMAIN IN THE UNITED STATES, WHEN PEOPLE ALREADY

8    KNOW OF THE INVENTION OR HAVE USED THE INVENTION, IT'S NOT

9    APPROPRIATE FOR SOMEONE TO BE ABLE TO GO GET A PATENT.

10       WHEN THE INVENTION -- HERE INSTRUCTIONS TO DO VERY

11   SPECIFIC ACTIONS, THAT'S THE INVENTION -- HERE IF THERE IS NO

12   EVIDENCE THAT THE INVENTION WAS EVER KNOWN -- AND THERE IS NO

13   EVIDENCE THAT THE INVENTION WAS EVER KNOWN -- OR THERE IS NO

14   EVIDENCE THAT THE INVENTION WAS EVER USED -- AND THE SAME,

15   THERE IS NO SUCH EVIDENCE -- IN THAT EVENT, THERE CANNOT BE

16   ANTICIPATION.

17       AND THAT'S WHY THE LANGUAGE OF THE STATUTE IS SO

18   IMPORTANT, YOUR HONOR, 102.  IT'S NOT JUST THAT THE

19   INSTRUCTIONS EXIST OUT THERE SOMEWHERE.  IT'S THE INVENTION,

20   THE ACTUAL INVENTION -- AND THAT'S THE INSTRUCTIONS THAT DO

21   SPECIFIC THINGS -- THAT INVENTION MUST BE KNOWN BY OTHERS.

22       THOSE ARE PEOPLE.  SOMEBODY HAS TO KNOW THE INVENTION.

23   SOMEBODY HAS TO HAVE USED THE INVENTION.  THAT'S WHAT THE 3M

24   CASE HOLDS DIRECTLY, YOUR HONOR, AND ABSENT THAT PROOF, ABSENT

25   THAT EVIDENCE OF SOME PEOPLE KNOWING OF THE INVENTION OR USING

1    THE INVENTION, THERE CAN BE NO ANTICIPATION AS A MATTER OF LAW.

2         THIS IS WHY THIS IS THE ONLY MOTION THAT WE FILED OF NO

3    ANTICIPATION BECAUSE THIS MOTION IS A LEGAL QUESTION.

4         EVEN IF YOU ACCEPT WHAT'S IN SAMSUNG'S BRIEF AS CORRECT,

5    THAT THE WAIS-SF OR APPLESEARCH COULD BE CONFIGURED TO PERFORM

6    THE CLAIMED INVENTION, IT WAS CAPABLE OF BEING SO CONFIGURED --

7    RINARD DID IT, SO SOMEBODY COULD DO IT IS THEIR ARGUMENT --

8    THAT DOES NOT AMOUNT TO SATISFYING THE STATUTE OF ESTABLISHING

9    THAT SOMEBODY KNEW IT OR SOMEBODY USED IT.

10        IT WASN'T THE INVENTION.

11             THE COURT:  ALL RIGHT.

12             MR. KREVITT:  THAT'S THE KEY, YOUR HONOR.  THE

13    INVENTION, SPECIFIC INSTRUCTIONS TO DO THESE SPECIFIC THINGS,

14    WAS NOT IN THE PUBLIC DOMAIN.

15        AND AS I MENTIONED, YOUR HONOR, SAMSUNG HAS SPENT ALMOST

16    TWO YEARS LOOKING FOR THIS EVIDENCE.  THEY'VE DEPOSED DOZENS OF

17    PEOPLE.  WE TRAVELED ALL AROUND THE UNITED STATES, WE TRAVELED

18    TO EUROPE, DEPOSITIONS WERE TAKEN, DOCUMENTS FROM INSTITUTIONS

19    AND INDIVIDUALS ALL OVER THE WORLD WERE SOUGHT AND RECEIVED

20    SEARCHING FOR THAT ONE PIECE OF INFORMATION THAT THEY NEED TO

21    ESTABLISH ANTICIPATION, THAT SOMEONE IN THIS COUNTRY, AT THE

22    RELEVANT TIME, KNEW OF THE INVENTION, OR THAT SOMEBODY IN THIS

23    COUNTRY, AT THE RELEVANT TIME, USED THE INVENTION.

24        AND THE ONLY THING -- THEY'VE NOT BEEN ABLE TO UNCOVER

25    THAT.

```
 1              THE COURT:  ALL RIGHT.  THANK YOU.
 2          ALL RIGHT.  LET ME ASK SAMSUNG THEN, I'LL GIVE YOU AN
 3     OPPORTUNITY TO RESPOND, BUT ALSO I WANTED TO ASK YOU, IF YOU
 4     COULD NOT RELY ON THE SYSTEMS THAT DR. RINARD CREATED, COULD
 5     YOU PROVE INVALIDITY JUST WITH HIS TESTIMONY AND SOURCE CODE
 6     OR WITH THE INSTRUCTIONS OR OTHER DOCUMENTATION?
 7          GO AHEAD, PLEASE.
 8              MR. PAK:  THANK YOU, YOUR HONOR.  MAY I HAND UP SOME
 9      SLIDES?
10              THE COURT:  GO AHEAD, PLEASE.  HOW MANY DO YOU HAVE?
11      OKAY, GREAT.
12              MR. PAK:  YOUR HONOR, SEAN PAK ON BEHALF OF SAMSUNG.
13          YOUR HONOR, I THINK THERE ARE TWO FUNDAMENTAL THINGS THAT
14     I WOULD LIKE TO NOTE ON THE RECORD FIRST.
15          NUMBER ONE, THERE WAS A LOT OF TALK FROM MR. KREVITT ABOUT
16     WHAT THE INVENTION IS, AND THAT WAS REALLY IMPORTANT.  WE DO
17     AGREE WITH THE ANALYSIS THAT SAYS WE HAVE TO LOOK AT THE ACTUAL
18     CLAIM LANGUAGE TO DETERMINE WHAT IS THE INVENTION, BECAUSE AS
19     YOUR HONOR KNOWS, WHEN WE APPLY 102(A), WHAT WAS KNOWN OR
20     PUBLICLY USED IN THE UNITED STATES, OR 102(B), WHICH IS OFFER
21     FOR SALE, WE'RE LOOKING AT WHETHER THE CLAIMED INVENTION ITSELF
22     WAS EITHER USED OR KNOWN OR WHETHER IT WAS OFFERED FOR SALE.
23          AND THAT DIFFERS DEPENDING ON THE CLAIM LANGUAGE.
24          FOR EXAMPLE, IN THE CONTEXT OF THE P.I. PHASE, YOU LOOKED
25     AT A DIFFERENT PATENT, THE '604 PATENT, THAT USED VERY
```

```
1      DIFFERENT LANGUAGE ABOUT AN APPARATUS.

2           THE SPECIFIC CLAIMS AT ISSUE IN THIS CASE NOW, THERE ARE

3      ONLY TWO CLAIMS AT ISSUE IN THE '959 PATENT, AND BOTH OF THEM

4      ARE COMPUTER READABLE MEDIUM CLAIMS.

5           SO WE'RE LOOKING AT THE QUESTION OF, IS THE INVENTION OF

6      HAVING A CD OR SOME KIND OF ELECTRONIC MEDIUM THAT CONTAINS

7      INSTRUCTIONS, WAS THAT AVAILABLE IN THE UNITED STATES OR

8      OFFERED FOR SALE?

9           AND THAT'S A VERY IMPORTANT QUESTION BECAUSE THE FEDERAL

10     CIRCUIT LOOKED AT EXACTLY THIS QUESTION IN THE VERSATA CASE.

11     THIS IS A CASE, YOUR HONOR, THAT WE CITED IN OUR OPPOSITION.

12     YOU DIDN'T HEAR THAT MENTIONED IN THE ORAL ARGUMENT TODAY.

13     THERE'S NO REAL DISCUSSION OF THAT IN THEIR REPLY BRIEF.  IT'S

14     A FEDERAL CIRCUIT CASE, I BELIEVE IT WAS MARCH OF 2013.

15          THE LANGUAGE IN THAT CASE IS VIRTUALLY IDENTICAL TO THE

16     LANGUAGE AT ISSUE, THE CLAIM 24 LANGUAGE OF THE '959 PATENT.

17     IN THAT CASE, THE CLAIM WAS FOR A COMPUTER READABLE STORAGE

18     MEDIA THAT CONTAINED INSTRUCTIONS TO IMPLEMENT CERTAIN TYPES OF

19     CLAIMED FUNCTIONALITY.

20          WE HAVE THE SAME STRUCTURE IN CLAIM 24, COMPUTER READABLE

21     MEDIUM FOR LOCATING INFORMATION THAT CONTAINS INSTRUCTIONS TO

22     PERFORM A SERIES OF STEPS.

23          THIS IS IMPORTANT BECAUSE THE FEDERAL CIRCUIT DEALT WITH

24     EXACTLY THE SAME ARGUMENTS THAT APPLE IS MAKING HERE TODAY.

25     THE DEFENDANT IN THAT -- THE DEFENDANT IN THAT CASE MADE THE
```

1      ARGUMENT THAT BECAUSE THERE WAS A DEMONSTRATION OF A SYSTEM,

2      THEY COULD NOT PROVE INFRINGEMENT AS SHIPPED TO THE CUSTOMER

3      BASED ON THIS COMPUTER STORAGE MEDIA LANGUAGE BECAUSE THE

4      EXPERT HAD TAKEN THE CD, INSTALLED IT, FOLLOWED THE

5      INSTRUCTIONS, AND SET UP THE VARIOUS CONFIGURATIONS TO

6      ILLUSTRATE WHAT THE INSTRUCTIONS ON THE COMPUTER DID.

7           THAT IS PRECISELY WHAT DR. RINARD DID.  THERE IS NO

8      DISPUTE THAT NONE OF THE SOURCE CODE INSTRUCTIONS WERE MODIFIED

9      IN ANY WAY.  HE DID EXACTLY AS YOUR HONOR SUGGESTED DURING THE

10     INTRODUCTORY COMMENTS.  HE TOOK THE CD'S -- THERE WERE TWO

11     PRIOR ART SEARCHES, PRIOR ART SYSTEMS HERE, YOUR HONOR.  THERE

12     IS THE APPLESEARCH SYSTEM, WHICH APPLE PROVIDED, AS WELL AS THE

13     FREEWAIS SYSTEM.

14          IN BOTH INSTANCES, HE TOOK EXACTLY THE SAME SOURCE CODE,

15     FOLLOWED THE INSTRUCTIONS THAT CAME EITHER WITH THE APPLE

16     MANUALS OR THE WAIS SEARCH PROGRAM, AND PROVIDED THE

17     DEMONSTRATIVE TO SHOW THAT, IN FACT, THE INSTRUCTIONS, WITHOUT

18     ANY MODIFICATION, PERFORMED THOSE FUNCTIONS.

19          AND THE FEDERAL CIRCUIT FOUND THAT THAT WAS PERFECTLY

20     ACCEPTABLE FOR AN EXPERT TO LOOK AT THE COMPUTER INSTRUCTIONS,

21     INSTALL IT AS PROVIDED IN TERMS OF MANUALS AND OTHER

22     INSTRUCTIONS, INCLUDING SETTING UP THE DEVICE.  AS LONG AS HE'S

23     NOT MODIFYING THE CODE, THAT TYPE OF DEMONSTRATIVE IS ACTUALLY

24     THE MOST TELLING EVIDENCE OF WHAT THE INSTRUCTIONS ARE CAPABLE

25     OF DOING.

```
1            THE COURT:  DO YOU THINK THAT YOU HAVE TO PRODUCE A

2    DEMONSTRATIVE OR WORKING MODEL?

3            MR. PAK:  WE DON'T, YOUR HONOR, TO PROVE OUR

4    INFRINGEMENT.

5            THE COURT:  OKAY.

6            MR. PAK:  THE BASIC ANSWER TO YOUR QUESTION IS NO

7    BECAUSE THE CLAIM LANGUAGE IS ABOUT COMPUTER STORAGE READABLE

8    MEDIUM WITH INSTRUCTIONS TO.  THERE'S NO CONTEST HERE THAT THE

9    APPLESEARCH CODE ITSELF WAS OFFERED FOR SALE PRIOR TO THE

10   PATENT'S DATE.

11           THERE'S NO REAL DISPUTE THAT THE SOFTWARE FOR FREEWAIS-SF

12   WAS ACTUALLY DISTRIBUTED WORLDWIDE, AND IN FACT, THERE IS

13   CIRCUMSTANTIAL EVIDENCE TO SHOW THAT, IN FACT, THERE WERE

14   HUNDREDS OF INSTALLATIONS, INCLUDING AT STANFORD UNIVERSITY.

15           SO IN TERMS OF THE CODE AND THE ABILITY FOR US TO PROVE

16   PRIOR ART, WE DON'T NEED THE DEMONSTRATIVES.

17           HOWEVER, THE VERSATA CASE IS ALSO THE FEDERAL CIRCUIT CASE

18   THAT SAYS WHEN YOU HAVE A DEMONSTRATIVE BY AN EXPERT WHO

19   DOESN'T CHANGE THE CODE, YOU FOLLOW THE INSTRUCTIONS, THAT THAT

20   COULD BE THE MOST TELLING EVIDENCE TO A JURY, BECAUSE AS YOUR

21   HONOR KNOWS, IN A COMPLEX CASE LIKE THIS, IT'S VERY DIFFICULT

22   FOR THE JURY TO UNDERSTAND WHAT IT IS THAT THE CODE IS ACTUALLY

23   DOING.  THEY'RE NOT COMPUTER SCIENTISTS.

24           WHEN YOU CAN ACTUALLY SEE IT ON THE SCREEN, JUST FOR THE

25   SAME REASON THAT APPLE WOULD WANT, IN THEIR CASE-IN-CHIEF, TO
```

```
1    BE ABLE TO TAKE A PHONE, TO DEMONSTRATE INFRINGING USES FROM

2    THEIR PERSPECTIVE EVEN THOUGH THE CODE REQUIRES -- CODE

3    ANALYSIS IS REQUIRED TO PROVE INFRINGEMENT, WE BELIEVE THE SAME

4    STANDARD SHOULD APPLY.

5         IF THEY'RE PERMITTED TO USE DEMONSTRATIVES TO DEMONSTRATE

6    CAPABILITY WITH RESPECT TO THESE CLAIMS, WE SHOULD BE PERMITTED

7    TO DO THE SAME, AND THERE'S NOTHING WRONG WITH THAT IN TERMS OF

8    THE PRIOR ART SYSTEM.

9         THE COURT:  WHAT'S YOUR EVIDENCE OF NO KNOWLEDGE OR

10   USE IN THE UNITED STATES?

11        MR. PAK:  ABSOLUTELY, YOUR HONOR.  LET'S DIVIDE THAT

12   INTO TWO CATEGORIES.

13        WE HAVE APPLESEARCH, AND THIS IS AN APPLE PRODUCT THAT

14   MR. KREVITT DID NOT MENTION.  WE SOUGHT EXTENSIVE DISCOVERY

15   FROM APPLE ON THIS PRODUCT.  WE EVEN ACTUALLY HAVE THE BOX THAT

16   WAS MADE AVAILABLE.  IT WAS A COMMERCIAL PRODUCT.  HERE IS THE

17   APPLESEARCH BOX.

18        WE SOUGHT A STIPULATION -- THIS IS ON PAGE 7 OF OUR

19   PRESENTATION -- WHERE APPLE, IN DOCKET NUMBER 705, STIPULATED

20   THAT THIS APPLESEARCH SOURCE CODE WAS AVAILABLE IN THE

21   UNITED STATES AND OFFERED FOR SALE PRIOR TO JANUARY 5TH, 1999.

22        THIS BOX PROVIDES ALL OF THE INSTRUCTIONS IN THE FORM OF

23   CD'S TO PERFORM EACH OF THE CLAIMED CAPABILITIES.

24        THE ONLY LIMITATION, YOUR HONOR, THAT APPLE IS CONTESTING

25   IS WHETHER THIS BOX HAD THE INSTRUCTIONS TO BE ABLE TO ENABLE
```

1    SEARCHES TO THE INTERNET.

2        BUT ALL WE HAVE TO DO IS LOOK ON THE BACK SIDE OF THAT

3    BOX, AND ON THE BACK SIDE OF THAT BOX, OF COURSE I -- THERE'S A

4    LOT OF EXTENSIVE SOURCE CODE TESTIMONY AND ANALYSIS THAT GOES

5    HAND-IN-HAND WITH THIS, BUT LOOKING JUST AT THE BACK OF THIS

6    BOX, YOU SEE THAT THE APPLESEARCH PRODUCT WAS TOUTED AS HAVING

7    THE ABILITY TO CONNECT TO THE INTERNET, AND SPECIFICALLY TO

8    PROVIDE MAC OS-BASED PERSONAL COMPUTERS AND WINDOWS-BASED

9    PERSONAL COMPUTERS TO HAVE SIMULTANEOUS ACCESS TO LOCAL AND

10    INTERNET INFORMATION SOURCES THROUGH THE EASY-TO-USE

11    APPLESEARCH INTERFACE.

12        THIS IS THE UNIFIED SEARCH CAPABILITY THAT APPLE HAS BEEN

13    TALKING ABOUT, AND IT'S BEEN DESCRIBED AS HAVING THE ABILITY TO

14    SEARCH LOCAL AND INTERNET CONTENT THROUGH THE SAME SEARCH

15    INTERFACE.

16        THAT'S EXACTLY WHAT THEIR OWN PRODUCT DID THAT WAS OFFERED

17    FOR SALE MANY YEARS BEFORE THE FILING OF THEIR PATENT.

18        AND THEIR COMPLAINTS ABOUT THE CONFIGURATION OF THIS WITH

19    THE WAIS SYSTEM AS PART OF THE DEMONSTRATION FALLS SHORT AS

20    WELL BECAUSE THIS CODE ON THIS CD CONTAINED SOMETHING CALLED

21    THE WAIS GATEWAY MODULE THAT HAD ALL OF THE INSTRUCTIONS

22    NECESSARY TO CONFIGURE THE PRODUCT WITH A WAIS GATEWAY MODULE

23    TO BE ABLE TO ACCESS THE INTERNET.

24        AND IN FACT, ON THE BACK OF THE BOX, THE WAIS SYSTEM IS

25    DEPICTED SPECIFICALLY AS ONE WAY IN WHICH IT CAN PROVIDE ACCESS

```
 1      TO THE INTERNET.

 2           SO THAT'S THE APPLE SYSTEM.  IT'S THEIR OWN PRODUCT.  THEY

 3      ALREADY STIPULATED IT'S IN THE UNITED STATES.  THERE'S AMPLE

 4      EVIDENCE TO SHOW THAT, IN FACT, ALL THE CODE IS HERE.

 5           AND THEN WE ALSO HAVE E-MAILS FROM APPLE ITSELF THAT'S

 6      BEEN PRODUCED WHERE, AGAIN, ONE OF THE COMMENTS FROM APPLE IS

 7      THAT THERE WAS NO EVIDENCE THAT THE CLIENT AND THE SERVER COULD

 8      RUN ON YOUR OWN -- ON THE SAME MACHINE.

 9           WELL, THIS IS AN E-MAIL FROM APPLE SPECIFICALLY INDICATING

10      THAT FUNCTIONALITY WAS PART OF WHAT APPLESEARCH DID.

11           TURNING TO THE NEXT SYSTEM, WHICH IS THE FREEWAIS

12      SYSTEM --

13                THE COURT:  I THINK I'M GOOD ON THIS.

14                MR. PAK:  YEAH, YOUR HONOR.  THERE'S EXTENSIVE

15      TESTIMONY HERE.  WE HAVE -- THE ONE THING I WILL NOTE, JUST SO

16      THAT YOUR HONOR UNDERSTANDS, THERE WAS SOME SUGGESTION THAT

17      THERE'S NO CIRCUMSTANTIAL EVIDENCE WHATSOEVER, THAT WE SCOURED

18      THE WORLD AND WE COULDN'T FIND ANYTHING THAT SHOWED, IN FACT,

19      THERE WAS DISTRIBUTION IN THE UNITED STATES.

20           THAT'S CATEGORICALLY UNTRUE, YOUR HONOR.  THE CODE ITSELF

21      HAD SOMETHING CALLED A DIAL BACK, DIAL HOME FEATURE WHERE THESE

22      RESEARCHERS WERE TRACKING WHERE THE DISTRIBUTIONS WERE TAKING

23      PLACE, AND AS YOU CAN SEE ON SLIDE 14, THE SOFTWARE, WHEN YOU

24      INSTALLED IT, WOULD ASK YOU, "CAN I SEND A PACKET BACK TO THE

25      DEVELOPERS OF THE SOFTWARE TO INDICATE WHERE IT WAS BEING
```

1    INSTALLED?"

2         SO THE SOFTWARE ITSELF HAD THE CAPABILITY TO TELL THE

3    DEVELOPERS, WHO HAVE BEEN DEPOSED IN THIS CASE AND

4    AUTHENTICATED THE SOFTWARE, WHERE THE SPECIFIC INSTALLATIONS

5    WERE TAKING PLACE BACK IN THE MID-1990S TO THE EARLY 2000 TIME

6    PERIOD.  THAT'S MR. FUHR AND MR. PFEIFER.

7         WE HAVE E-MAIL RECORDS FROM THEIR FILES SHOWING THAT

8    THROUGH THIS SYSTEMATIC WAY OF TRACKING WHERE THE SOFTWARE WAS

9    BEING INSTALLED, WE HAVE HUNDREDS OF INSTALLATIONS IN THE

10   GOVERNMENT SECTOR, COMMERCIAL SECTOR, EDUCATION SECTOR FOR THE

11   VERY SAME SOFTWARE, THE FREEWAIS SOFTWARE BACK ON MARCH 14TH OF

12   1997.

13        WE HAVE E-MAILS FROM PROFESSORS AT STANFORD WRITING TO

14   THESE DEVELOPERS TELLING THEM THAT "WE'VE INSTALLED YOUR

15   SOFTWARE.  THE DOCUMENTATION SAYS THIS IS HOW I INSTALL IT.

16   HOW DO I FIX THIS?  HERE'S A BUG, HOW DO I REPORT THIS?"

17        THIS IS CIRCUMSTANTIAL EVIDENCE THAT, IN TOTALITY, SHOWS

18   THAT IT'S VERY RELIABLE.  THERE'S WIDESPREAD DISSEMINATION OF

19   INFORMATION.

20        WHEN OUR EXPERT WAS ASKED, "DO YOU PERSONALLY KNOW

21   SOMEBODY WHO ACTUALLY USED THE SYSTEM?" OF COURSE HE SAID "I

22   DON'T KNOW A LIVING PERSON BY NAME."

23        BUT THAT DOESN'T MEAN THAT THIS SOFTWARE WAS NOT

24   DISTRIBUTED.  THAT DOESN'T MEAN THERE ISN'T CIRCUMSTANTIAL

25   EVIDENCE ON ALL OF THIS.  I THINK IT'S A PRETTY CLEAR CUT CASE.

```
 1                  THE COURT:  I THINK I'M GOOD ON THIS.

 2             CAN WE GO TO INDEFINITENESS, PLEASE?

 3                  MR. KREVITT:  CAN I RESPOND TO THIS?

 4                  THE COURT:  VERY BRIEFLY.

 5                  MR. KREVITT:  VERY BRIEFLY, I ASSURE YOU.

 6             FIRST OF ALL, WE DON'T CHALLENGE WHETHER THE SOFTWARE WAS

 7        DISTRIBUTED IN THE UNITED STATES.  WE DON'T CHALLENGE ANY OF

 8        WHAT MR. PAK SAID WITH RESPECT TO THAT.

 9             THE ISSUE IS DIFFERENT AND SIMPLE AND, IN OUR VIEW,

10        DISPOSITIVE.  WHAT THEY NEED TO SHOW IS THAT SOMEONE IN THE

11        UNITED STATES USED THESE INSTRUCTIONS IN THIS WAY.  THEY CAN'T.

12        THERE IS NO EVIDENCE OF THAT.

13             AND WE KNOW THAT THE SYSTEMS, APPLESEARCH AND FREEWAIS-SF,

14        WERE NOT PRESENTLY CAPABLE OF PERFORMING THE CLAIMED INFERENCE

15        BECAUSE DR. RINARD HAD TO BUILD IT.

16             IN FACT, YOUR HONOR, IF YOU LOOK AT DR. RINARD'S CLAIM

17        CHARTS -- AND WE HAVE THEM AT SLIDE 13 -- YOU WILL SEE THAT

18        DR. RINARD DOESN'T SAY THE SOURCE CODE ANTICIPATES BECAUSE,

19        YOUR HONOR, IT DOESN'T.

20             WHAT DR. RINARD SAYS IS "WHEN THE COMPONENTS ARE INSTALLED

21        IN A COMPUTER READABLE MEDIUM, ACCORDING TO THE CONFIGURATION

22        AND INSTALLATION SOFTWARE DOCUMENTATION, THE COMPUTER READABLE

23        STORAGE MEDIUM SATISFIES ALL OF THE LIMITATIONS."

24             THE SOURCE CODE DOES IT, YOUR HONOR.  THE ONLY THING IT

25        DOES IS WHEN IT IS INSTALLED, WHEN IT IS CONFIGURED -- AND
```

```
 1        THERE IS NO EVIDENCE, YOUR HONOR -- AND THIS IS THE CRITICAL

 2        POINT -- ZERO EVIDENCE THAT ANYBODY EVER, AT THE RELEVANT TIME,

 3        CONFIGURED IT IN A MANNER TO PERFORM THE CLAIMED INVENTIONS,

 4        LET ALONE THAT ANYONE EVER THOUGHT TO, KNEW OF THAT

 5        CONFIGURATION, OR USED THAT CONFIGURATION.

 6             THE FACT IS, YOUR HONOR, AT MOST, AT MOST WHAT THEY HAVE

 7        SHOWN IS THAT THE FREEWAIS-SF SOFTWARE WAS WIDELY DISTRIBUTED

 8        AND INSTALLED, AT MOST.

 9             BUT THEY HAVE NOT SHOWN, AND THEY CANNOT SHOW DESPITE

10        ALMOST TWO YEARS OF SEARCHING, THAT ANYONE EVER CONFIGURED IT

11        IN A MANNER TO SATISFY THE CLAIM ELEMENTS, THAT ANYONE EVER

12        KNEW, IN THE UNITED STATES, TO DO SO, OR THAT ANYONE EVER USED

13        SUCH A CONFIGURATION.

14             AND ABSENT THAT EVIDENCE, YOUR HONOR, THE 3M CASE IS ON

15        ALL FOURS.  ABSENT THAT EVIDENCE, YOUR HONOR, THERE CAN BE NO

16        ANTICIPATION.

17                  THE COURT:  ALL RIGHT.  LET'S GO TO -- THANK YOU.

18             LET'S GO TO INDEFINITENESS, PLEASE.

19                  MR. PAK:  YOUR HONOR, I APOLOGIZE, BUT IN THE BINDER

20        UNDER THE TAB FOR THE '959 PATENT, THERE'S ACTUALLY A SECOND

21        SERIES OF SLIDES THAT CORRESPONDS TO OUR INDEFINITENESS MOTION.

22                  THE COURT:  YES.

23                  MR. PAK:  SO IF YOU'D LIKE TO TRACK THAT WITH THE

24        HARD COPIES, THEY'RE ALSO PROVIDED FOR YOU AS WELL.

25             SO YOUR HONOR MAY HAVE A SENSE OF DEJA VU ON THIS
```

```
1    PARTICULAR ISSUE WITH RESPECT TO THE WORD "HEURISTIC," AND WE
2    WANTED TO CLARIFY FOR YOU THE CONTEXT IN WHICH -- WHY WE WERE
3    BRINGING THIS MOTION, AND THIS BEGINS ON SLIDE 2.
4            THE COURT:  LET ME JUST ASK YOU WHETHER THIS IS A, A
5    QUESTION OF LAW OR DOES IS ALSO INVOLVE QUESTIONS OF FACT?
6            MR. PAK:  WELL, WE ACTUALLY THINK IT'S A QUESTION OF
7    LAW --
8            THE COURT:  OKAY.
9            MR. PAK:  -- AT THIS POINT, AND HERE'S THE REASON
10   WHY, YOUR HONOR.  WE DO UNDERSTAND THAT IF YOU WANTED FURTHER
11   BRIEFING ON THIS ISSUE AS PART OF A MARKMAN HEARING ON THE TERM
12   INDEFINITE -- ON "HEURISTIC" AS USED AS A NOUN IN THIS CASE, I
13   THINK WE WOULD BE AMENABLE TO THAT.
14       BUT WE DO THINK IT'S A FUNDAMENTAL QUESTION OF LAW,
15   BECAUSE THE QUESTION HERE IS LEGALLY, CAN THE TERM
16   "HEURISTICS," AS A NOUN, BE DEFINED, NUMBER ONE, AND BE APPLIED
17   IN A WAY THAT PROVIDES AN OBJECTIVE BOUNDARY BETWEEN WHAT
18   INFRINGES AND WHAT DOES NOT INFRINGE?
19       AND FEDERAL CIRCUIT CASES, INCLUDING THE HALLIBURTON CASE
20   WHICH WE CITE TO IN OUR BRIEFING ILLUSTRATED ON PAGE 3, IS
21   DIRECTLY ON POINT.  THIS IS A CASE THAT WE CITED IN OUR PAPERS,
22   NOT DISCUSSED BY APPLE AT ALL IN THEIR OPPOSITION BRIEF.
23       THE FACTS ARE VERY, VERY SIMILAR.  IN THAT CASE -- THIS IS
24   A FEDERAL CIRCUIT 2008 CASE -- THE TERM AT ISSUE WAS "FRAGILE
25   GEL."  THIS IS A PETROLEUM RIG, A GAS RIG WHERE CERTAIN KINDS
```

1       OF GEL HAD TO BE WHAT'S CALLED FRAGILE.  IT HAD TO BE ABLE TO

2       MOVE, BUT AT LEAST HAVE SOME LIQUID-LIKE PROPERTIES.

3                   THE COURT:  BUT IS THIS THE SAME SITUATION AS IN

4       HALLIBURTON --

5                   MR. PAK:  IT IS, YOUR HONOR.

6                   THE COURT:  -- WHERE "HEURISTIC" IS CRUCIAL TO

7       DISTINGUISHING THE PRIOR ART LIKE "FRAGILE GEL" WAS?

8                   MR. PAK:  ABSOLUTELY, YOUR HONOR.

9           IF YOU RECALL, THE REASON WHY YOU CAME UP WITH THE

10      ORIGINAL GUIDANCE IN THE EARLIER PATENT WAS THAT THE TERM

11      "HEURISTIC," AS USED AS AN ADJECTIVE FORM, HEURISTIC MODULE,

12      HEURISTIC ALGORITHM, WAS USED TO DISTINGUISH OVER PRIOR ART

13      THAT USED PURELY LOGICAL OR CONSTRAINT-BASED APPROACHES.

14          SO WHAT IS HEURISTIC AND WHAT IS NOT HEURISTIC IS

15      ABSOLUTELY CRITICAL TO OUR CASE IN DETERMINING WHAT QUALIFIES

16      AS PRIOR ART AND WHAT QUALIFIES AS INFRINGING DEVICES.

17          SO AS IN HALLIBURTON --

18                  THE COURT:  BUT THE FEDERAL CIRCUIT ALREADY LOOKED

19      AND REVERSED MY CLAIM CONSTRUCTION ON THIS PATENT AND CERTAINLY

20      DIDN'T SAY AT THAT TIME THAT "HEURISTIC" WAS INDEFINITE.

21                  MR. PAK:  THAT ISSUE WAS NEVER APPEALED, AND HERE IS

22      THE DIFFERENCE, YOUR HONOR.  AT THAT POINT YOU WERE ACTUALLY

23      LOOKING AT "HEURISTIC" AS AN ADJECTIVE, AS PART OF A LARGER

24      PHRASE, "HEURISTIC MODULE," "HEURISTIC ALGORITHM."

25          AND SINCE THE P.I. RULING, YOUR HONOR IDENTIFIED TWO

```
 1        CHARACTERISTICS THAT ARE IDENTIFIED WITH THE TERM "HEURISTIC."
 2        NUMBER ONE, THAT IT'S SOME TYPE OF RULE OF THUMB; AND NUMBER
 3        TWO, IT DOES NOT CONSIST SOLELY OF CONSTRAINT SATISFACTION
 4        PARAMETERS.  THOSE WERE THE GUIDANCE -- THAT WAS THE GUIDANCE
 5        THAT YOU PROVIDED TO US AS PART OF THAT P.I.
 6             SO WHAT WE DID, YOUR HONOR, IN THIS CASE WAS WE WENT
 7        SEARCHING FOR THAT BOUNDARY.  WE LITERALLY DEPOSED EVERYBODY WE
 8        KNEW HOW TO DEPOSE, INCLUDING THE INVENTORS, APPLE ENGINEERS,
 9        AND --
10             THE COURT:  SO WHY ISN'T THE CONSTRAINT SATISFACTION
11        PARAMETER ENOUGH TO JUST RELY ON ALL IMPLEMENTATIONS OF THE
12        CLAIM?
13             MR. PAK:  BECAUSE FOR TWO REASONS, YOUR HONOR.  ONE
14        IS WE'VE ACTUALLY PROVIDED THAT GUIDANCE TO THE EXPERTS IN THIS
15        CASE, AND THE EXPERTS IN THIS CASE HAVE DETERMINED, BASED ON
16        THE RESPONSES THAT THEY GIVE, THAT THE DEFINITION OR THE
17        APPLICATION OF THAT GUIDANCE CHANGES FROM ONE CIRCUMSTANCE TO
18        ANOTHER, THAT IT REALLY COMES DOWN TO A JUDGMENT CALL OF THE
19        EXPERTS.
20             AND SPECIFICALLY, AS YOU CAN SEE IN SLIDE 6, WE HAD
21        CONFLICTING, DIRECTLY CONFLICTING TESTIMONY FROM THE INVENTORS.
22        FOR EXAMPLE, WHEN WE ASKED ONE INVENTOR, IS SEARCHING BY A FILE
23        NAME, IS THAT A HEURISTIC?
24             "YES."
25             THE SECOND INVENTOR SAYS "I WOULDN'T SAY THAT IS A
```

```
 1      HEURISTIC, ABSOLUTELY NOT."

 2           WE HAVE TESTIMONY FROM ONE OF THE INVENTORS WHO

 3      SPECIFICALLY REFERENCED AN EXAMPLE THAT --

 4                THE COURT:  ALL OF THIS IS IN THE BRIEFS.

 5                MR. PAK:  YES.

 6                THE COURT:  I'VE READ IT.  YOU KNOW, I HAVE SPECIFIC

 7      QUESTIONS.  IF YOU ALL WANT TO JUST REGURGITATE WHAT'S IN THE

 8      BRIEFS, WE CAN DO THAT.  BUT, I MEAN, WE HAVE READ THEM.

 9                MR. PAK:  ABSOLUTELY.

10                THE COURT:  WE'VE READ THE TESTIMONY OF OREN, THE

11      TESTIMONY OF, YOU KNOW --

12                MR. PAK:  BUT THERE IS NO -- I GUESS I WILL JUST END

13      WITH THIS, YOUR HONOR, AND I WILL ANSWER ANY SPECIFIC

14      QUESTIONS.

15                THE COURT:  OKAY.

16                MR. PAK:  RULE OF THUMB:  IT'S CLEAR ON THE RECORD,

17      AS YOU SAW FROM THE BRIEFING, YOUR HONOR, THAT IT IS NOT

18      POSSIBLE FOR A PERSON SKILLED IN THE ART TO DETERMINE WHAT IS A

19      RULE OF THUMB VERSUS WHAT IS NOT WITH THE SAME FACTS.  THAT'S

20      EXPERTS OR INVENTORS.

21           YOUR HONOR SUGGESTED THE CONSTRAINT SATISFACTION

22      PARAMETER.  THERE ARE ALL KINDS OF ALGORITHMS THAT ARE NOT

23      RULES OF THUMB WHICH DO NOT USE CONSTRAINT SATISFACTION

24      PARAMETERS.  SO THAT PART OF THE GUIDANCE ALONE, AGAIN, DOESN'T

25      TELL US THE BOUNDARY.
```

```
 1              THIS IS THE HALLIBURTON CASE.  WE HAVE A CASE WHERE A

 2    DEFINITION HAS BEEN REDUCED TO WORDS.  WE'VE DEVELOPED A

 3    FACTUAL RECORD FOR YOUR HONOR WHERE THAT DEFINITION CANNOT BE

 4    APPLIED CONSISTENTLY, AND THAT'S WHY WE'RE SEEKING A SUMMARY

 5    JUDGMENT OF INDEFINITENESS, AND WE DO THINK AT THIS POINT IT'S

 6    A QUESTION OF LAW.

 7              THE COURT:  SO RELYING ON HALLIBURTON, WHERE IN THE

 8    FILE HISTORY DOES IT SAY THAT THE TERM "HEURISTIC" WAS

 9    IMPORTANT TO OBTAIN THE PATENT?

10              MR. PAK:  THAT'S ACTUALLY -- IF YOUR HONOR REFERS,

11    WILL REFER BACK TO THE -- WITH RESPECT TO THIS PARTICULAR FILE

12    HISTORY IN THE '959 PATENT?

13              THE COURT:  YES.  YES, PLEASE.

14              MR. PAK:  OKAY.

15              THE COURT:  IS THERE A SPECIFIC PAGE THAT WE CAN LOOK

16    TO?

17         (PAUSE IN PROCEEDINGS.)

18              MR. PAK:  SO I THINK WE CAN BEGIN WITH LOOKING AT THE

19    '959 PATENT SPECIFICATION ITSELF.

20              THE COURT:  OKAY.  DO YOU HAVE A COLUMN AND LINE

21    NUMBER I SHOULD LOOK AT?

22              MR. PAK:  YES, YOUR HONOR.  AND THIS BEGINS AT THE

23    BOTTOM, OR THE TOP OF COLUMN 2.

24              THE COURT:  OKAY.  ONE SECOND, PLEASE.

25              MR. PAK:  SURE.
```

```
 1              THE COURT:  ALL RIGHT.  THANK YOU.

 2         GO AHEAD, PLEASE.

 3              MR. PAK:  YES.  SO AT THE TOP OF COLUMN 2, AND

 4    ACTUALLY BEGINNING AT THE BOTTOM OF COLUMN 1, THERE IS

 5    EXTENSIVE DISCUSSION ABOUT THE PROBLEMS OF THE PRIOR ART, AND

 6    IT TALKS ABOUT HOW IF YOU USE SEARCH CRITERIA, THAT IT TAKES

 7    TOO LONG AND THERE IS NO PROGRAM WHICH IS ABLE TO PROCESS

 8    THROUGH A USER'S INPUT AND THEN DETERMINE, USING MANY DIFFERENT

 9    FACTORS, INCLUDING THE USE OF THE INTERNET, THE INTENT OF THE

10    USER AS TO THE FILE TO BE RETRIEVED.  THE INTENT OF THE USER IS

11    VERY IMPORTANT.

12         AND THAT'S WHERE THE SUMMARY OF THE INVENTION BEGINS, AND

13    AS YOU CAN SEE, IMMEDIATELY IN THE SUMMARY OF THE INVENTION, IT

14    TALKS ABOUT THE PRESENT INVENTION PROVIDES CONVENIENT ACCESS TO

15    ITEMS OF INFORMATION THROUGH A UNITARY INTERFACE THROUGH A

16    NUMBER OF DIFFERENT TECHNIQUES USING A PLURALITY OF HEURISTIC

17    ALGORITHMS TO OPERATE UPON INFORMATION DESCRIPTORS THROUGHOUT.

18         AND THIS ENTIRE SECTION OF THE SUMMARY OF THE INVENTION --

19              THE COURT:  BUT THAT'S JUST A SUMMARY OF THE

20    INVENTION.  THAT DOESN'T SAY HOW IT OVERCAME THE PRIOR ART.

21         IS THERE ANYTHING IN THE FILE HISTORY THAT SAYS --

22              MR. PAK:  IF YOUR HONOR RECALLS, NOT WITH RESPECT TO

23    THIS PARTICULAR PIECE OF FILE HISTORY, BUT THE RELATED '604

24    HISTORY IS WHERE YOU DERIVED YOUR DEFINITION OF "HEURISTIC" AS

25    AN ADJECTIVE.
```

```
 1            THE COURT:  UM-HUM.

 2            MR. PAK:  AND THAT WAS SPECIFICALLY IN OVERCOMING

 3       PRIOR ART, THE ANDRIOLI REFERENCE, THAT WAS DISCUSSED, AND AS

 4       YOUR HONOR KNOWS, RELEVANT FILE HISTORIES FROM RELATED PATENT

 5       SPECIFICATIONS CAN BE VERY USEFUL GUIDANCE AS PART OF THE

 6       RECORD IN DETERMINING THE MEANING OF TERMS.

 7            AND I THINK BOTH APPLE AND SAMSUNG WOULD AGREE THAT WHAT

 8       YOU DID IN THE P.I. DOES PROVIDE SOME GUIDANCE IN THIS REGARD

 9       AND WE'VE ACTUALLY TAKEN THAT GUIDANCE INTO ACCOUNT.

10            THAT CONSTRUCTION OF RULE OF THUMB DOES NOT SATISFY --

11       DOES NOT SOLELY CONSIST OF CONSTRAINT SATISFACTION PARAMETERS.

12       THAT CAME DIRECTLY OUT OF THE PROSECUTION HISTORY FOR THE '604

13       RELATED PATENT WHERE IT WAS DISTINGUISHING PRIOR ART.

14            THERE'S ALSO, IN COLUMN 5 --

15            THE COURT:  DO YOU THINK THAT BOTH PATENTS, THE '604

16       AND THE '959, USE "HEURISTIC" IN THE SAME WAY?

17            MR. PAK:  NO, AND THIS IS WHY WE'RE HAVING THIS ISSUE

18       NOW.

19            THE WORD "HEURISTIC" IS USED IN THE '959 PATENT AS A NOUN.

20       IF YOU LOOK AT THE CLAIMS AT ISSUE, YOUR HONOR, CLAIM 24 --

21       THIS IS AT LINE 20 -- AND AGAIN, IT TALKS ABOUT A COMPUTER

22       READABLE MEDIUM.  ONE OF THE THINGS THAT IT DOES IS PROVIDE

23       INFORMATION IDENTIFIER TO A PLURALITY OF HEURISTICS.  THAT IS A

24       NOUN.

25            THE CONTEXT IN WHICH THE WORD "HEURISTIC" WAS ADDRESSED IN
```

1    THE EARLIER CASE WAS AS AN ADJECTIVE TO DEFINE THE WORD

2    "MODULE" OR "ALGORITHM," AND IN YOUR PRELIMINARY ORDER, IF YOU

3    RECALL, YOU MADE A DISTINCTION BETWEEN HEURISTIC ALGORITHMS AND

4    HEURISTIC MODULES.  YOU STATED THAT SOMETHING -- THAT A MODULE

5    IS NOT SIMPLY HEURISTIC BECAUSE IT HAPPENS TO USE HEURISTIC

6    ALGORITHMS.

7         AND THE SAME IS TRUE IN THE CONVERSE FASHION.  SOMETHING

8    IS NOT -- AN ALGORITHM IS NOT HEURISTIC SIMPLY BECAUSE IT'S

9    PART OF A HEURISTIC MODULE.

10        SO YOU DREW A DISTINCTION BETWEEN THE WORD "HEURISTIC" AND

11   THE CONCEPT OF A MODULE.

12        IT IS APPLE'S CONTENTION IN THIS CASE THAT THE WORD

13   "HEURISTICS" AS A NOUN SHOULD BE REDEFINED TO INCLUDE THE WORD

14   "MODULE."  THAT IS ONE OF THE BASES ON WHICH THEY ARE ARGUING

15   FOR BOTH INFRINGEMENT PURPOSES AND VALIDITY PURPOSES.

16        SO IT'S CLEAR THAT APPLE SEES THE WORD "HEURISTICS" AS A

17   NOUN DIFFERENTLY THAN HOW IT WAS USED AS AN ADJECTIVE IN THE

18   EARLIER CASE.

19        WE OBVIOUSLY DISAGREE WITH THAT.

20        BUT MORE FUNDAMENTALLY, WE THINK WHEN YOU USE "HEURISTIC"

21   AS A NOUN AND APPLY IT IN THE GUIDANCE THAT WE'VE TALKED ABOUT,

22   IT'S IMPOSSIBLE FOR THE EXPERTS OR PEOPLE SKILLED IN THE ART TO

23   MAKE A DETERMINATION THAT IS OBJECTIVE ON WHAT QUALIFIES AS A

24   HEURISTIC IN THE FORM OF A NOUN.

25             THE COURT:  OKAY.  LET ME ASK A COUPLE OF QUESTIONS

1    OF APPLE AND THEN I'LL LET YOU HAVE THE LAST WORD SINCE THIS IS

2    YOUR MOTION --

3              MR. PAK:  THANK YOU, YOUR HONOR.

4              THE COURT:  -- ON INDEFINITENESS.

5              MR. LYON:  THANK YOU, YOUR HONOR.  I HAVE SOME SLIDES

6    TO HAND UP IF I MAY AS WELL, JUST IN CASE WE NEED TO REFER TO

7    THEM AS WE TALK IF THAT'S OKAY.  MAY I HAND THEM UP?

8              THE COURT:  OH, YES, PLEASE.  SORRY.

9              MR. LYON:  NO, THAT'S OKAY.

10        WOULD IT BE HELPFUL FOR ME TO TURN TO THE LAST POINT THAT

11   YOU WERE TALKING ABOUT WITH RESPECT TO THE NOUN VERSUS

12   ADJECTIVE?  I MAY BE ABLE TO SHED SOME LIGHT ON THAT IF THAT'S

13   HELPFUL.

14        BUT OBVIOUSLY IF YOU HAVE OTHER QUESTIONS, THAT'S FINE,

15   TOO.

16             THE COURT:  YEAH, YOU CAN -- I GUESS I'M UNCLEAR ON

17   WHETHER WE'RE SAYING THE PREVIOUS CONSTRUCTION WAS INDEFINITE

18   OR WHETHER WE NEED TO GIVE A NEW CONSTRUCTION TO "HEURISTIC"

19   HERE BECAUSE IT'S DIFFERENT THAN "HEURISTIC ALGORITHM" IN THE

20   '604.

21             MR. LYON:  WELL, I THINK WHAT SAMSUNG IS ARGUING, I

22   BELIEVE, IS NOT SO MUCH THAT THE TERM ITSELF IS INDEFINITE, BUT

23   THAT IT'S THE CONSTRUCTION THAT THEY'RE HAVING A PROBLEM WITH.

24             THE COURT:  UM-HUM.

25             MR. LYON:  IF YOU TURN TO SLIDE 4, PLEASE, THIS IS

1    THE '604 PATENT FROM THE P.I. PHASE AND THE CONSTRUCTION YOU

2    GAVE.  IT WAS -- THE CLAIM LANGUAGE YOU WERE TALKING ABOUT WAS

3    "A PLURALITY OF HEURISTIC MODULES WHEREIN EACH HEURISTIC

4    MODULE," ET CETERA, ET CETERA, "HAS A HEURISTIC ALGORITHM."

5        SO "HEURISTIC" THERE WAS BEING USED TO MODIFY "MODULES" OR

6    "ALGORITHMS" IN THAT PHRASE.

7        THE COURT DEFINED A "HEURISTIC ALGORITHM" TO BE A SEARCH

8    ALGORITHM AND EMPLOYED THE RULE OF THUMB.  SO IN OTHER WORDS,

9    IF YOU IGNORE THE SEARCH ALGORITHM PART, THE REST OF THAT

10   DEFINITION REALLY APPLIES TO "HEURISTIC" ITSELF.  IT'S WHAT'S

11   BEING DEFINED AS WHAT THE HEURISTIC IS BECAUSE THE COURT USED

12   THE WORD "ALGORITHM" WHEN DEFINING "HEURISTIC ALGORITHM."

13       SO REALLY THAT'S -- AND THAT'S WHAT THE PARTIES HAVE BEEN

14   USING IN THIS CASE.  WE'VE BEEN APPLYING THIS RULE OF THUMB

15   THAT DOES NOT CONSIST SOLELY OF CONSTRAINT SATISFACTION

16   PARAMETERS.

17       AND IT'S THAT LAST PART THAT REALLY BOUNDS THIS.  THE

18   THING THAT -- THE HALLIBURTON CASE SAYS THAT THERE WERE NO

19   BOUNDARIES TO WHAT A FRAGILE GEL WAS, AND THAT WAS THE PROBLEM

20   WITH THE DEFINITION.  THEY COULDN'T TELL WHEN SOMETHING WAS

21   FRAGILE ENOUGH OR NOT FRAGILE ENOUGH.

22       BUT BY PUTTING THE "DOES NOT CONSIST SOLELY OF CONSTRAINT

23   SATISFACTION" -- IN OTHER WORDS, IT'S NOT JUST SOMETHING WHERE

24   YOU'RE TYPING IN AND LOOKING FOR EVERYTHING THAT SAYS "ALPHA"

25   OR SOMETHING, THERE'S SOME VERY FIXED CONSTRAINT THAT YOU'RE

1     TRYING TO SATISFY.

2          IT HAS TO DO MORE THAN THAT.  IT HAS TO APPLY SOME KIND OF

3     SMART, SOME KIND OF RULE OF THUMB TO PROVIDE INFORMATION IN A

4     WAY THAT THE USER MAY BE LOOKING FOR, EITHER BECAUSE THEY'RE

5     LOOKING AT PAST HABITS THAT THEY'VE SEARCHED, PAST WAYS THAT

6     HAVE BEEN -- PERHAPS IT HAS TO DO WITH THE FACT THAT THERE ARE

7     SOME PEOPLE IN THE CONTACTS DATABASE THAT THEY MAY BE SEARCHING

8     FOR AND THAT MAY TAKE PRIORITY OVER SOMETHING ELSE, BUT THERE'S

9     SOME RULE OF THUMB THAT GOES IN THERE.

10          AND WHAT'S INTERESTING, AND IF YOU LOOK AT THE CASES --

11    AND TURN TO PAGE 9, PLEASE -- THE SOURCE SEARCH CASE I THINK IS

12    REALLY INSTRUCTIVE.  THIS IS A CASE WHERE IT WAS COMPLAINED

13    ABOUT WHETHER THE CLAIM TERM IS INDEFINITE, AND THE CLAIM TERM

14    THAT WE'RE TALKING ABOUT WAS "GOODS OR SERVICES."

15          THE COMPLAINT WAS, HOW DO WE KNOW WHEN SOMETHING IS A

16    STANDARD GOOD OR SERVICE OR SOMETHING IS UNSTANDARD?

17          AND IN THAT, THE FEDERAL CIRCUIT SAID, WELL, YOU MAY NOT

18    KNOW WHEN YOU'RE LOOKING AT THE TERM BY ITSELF, BUT WHEN YOU

19    APPLY IT, LOOK AT IT IN THE SPECIFIC CONTEXT OF THE MARKET OR

20    NETWORK THAT YOU'RE TALKING ABOUT, PEOPLE ARE GOING TO KNOW

21    WHAT A GOOD OR SERVICE IS.  IT'S SOMETHING THAT PEOPLE OF SKILL

22    IN THAT AREA ARE GOING TO KNOW.  SO IT BECOMES FOCUSSED.

23          WE DON'T HAVE A HOLDING WHERE YOU HAVE TO PROVIDE EVERY

24    POSSIBLE GOOD OR SERVICE IN THE PATENT.  THAT'S NOT WHAT

25    DEFINITENESS REQUIRES.  ALL IT REQUIRES IS SOMETHING THAT

1    PEOPLE OF SKILL IN THE ART CAN DO.

2         WHEN YOU LOOK AT THE TESTIMONY THAT MR. PAK WAS CITING --

3         THE COURT:  SO WHAT EVIDENCE DO YOU HAVE THAT A

4    PERSON OF ORDINARY SKILL IN THE ART WOULD UNDERSTAND

5    "HEURISTIC"?

6         MR. LYON:  WELL, I THINK IF YOU -- I CAN CITE SOME

7    HERE IF WE GO TO PAGE, I GUESS IT'S SLIDE NUMBER 12, THERE'S

8    QUITE A FEW PLACES.  SAMSUNG'S EXPERT, DR. CARBONELL, SAMSUNG'S

9    EXPERT DR. RINARD EVEN, WHEN HE'S NOT GIVING LIP SERVICE TO

10   THIS ARGUMENT, HAS NO PROBLEMS EMPLOYING THIS AND IDENTIFYING

11   HEURISTICS.

12        HE GOES ON FOR ABOUT 16 PAGES IN HIS REPORT IDENTIFYING

13   HEURISTICS IN THE PRIOR ART AND IDENTIFYING WHAT THEY ARE.

14        THE COURT:  WELL, BUT THAT'S -- I MEAN, HE'S AN

15   EXPERT IN THIS CASE.  HE HAS TO -- HE HAS TO PUT FORTH AN

16   OPINION.

17        MR. LYON:  AND THE --

18        THE COURT:  DO YOU HAVE ANY OTHER EVIDENCE THAT

19   ANYONE ELSE THAT WAS NOT A PAID EXPERT IN THE CASE WAS A PERSON

20   OF ORDINARY SKILL IN THE ART WHO WOULD UNDERSTAND THE SCOPE?

21        MR. LYON:  YES, YOUR HONOR.

22        THE COURT:  WHAT IS THAT?

23        MR. LYON:  I WOULD SAY THAT IT'S EVEN THE EXPERT --

24   WELL, OTHER THAN THE EXPERT, IT'S THE INVENTORS, THE PEOPLE

25   THAT THEY TESTIFIED, THEY TESTIFIED --

1          THE COURT:  WELL, THEY PRESENTED TESTIMONY FROM THE

2     INVENTORS THAT THEY DIDN'T KNOW.

3          MR. LYON:  BUT LET ME EXPLAIN WHY I THINK THAT'S

4     MISLEADING, OR AT LEAST IT'S NOT QUITE ACCURATE.

5          THE COURT:  OKAY.

6          MR. LYON:  BECAUSE THE REASON IS THEY DIDN'T ASK THE

7     RIGHT QUESTIONS.  THEY WERE ASKING THEM, "WHAT IS HEURISTIC IN

8     THE ABSTRACT?"

9          THEY WEREN'T ASKING THEM, "WHAT'S A RULE OF THUMB THAT'S

10    NOT SIMPLY A CONSTRAINT SATISFACTION PARAMETER?"

11         "HEURISTIC" BY ITSELF COULD MEAN DIFFERENT THINGS, AND

12    WHAT THEY WERE SAYING IN MANY CASES, IF YOU LOOK AT THE

13    TESTIMONY CAREFULLY, WHAT THEY WERE SAYING IS "YOU HAVEN'T

14    GIVEN ME ENOUGH INFORMATION TO MAKE THE DETERMINATION."  THAT'S

15    ALL.

16         IT'S NOT THAT THEY COULDN'T DETERMINE WHETHER SOMETHING

17    WAS HEURISTIC.  THERE WAS INSUFFICIENT INFORMATION TO KNOW,

18    WHAT'S THE CONTEXT OF THE PROBLEM?  WHETHER THIS IS JUST -- IF

19    IT'S LOOKING FOR NAMES, ARE YOU JUST TYPING IN A WORD AND

20    SEARCHING A LIST OF NAMES FOR A NAME?  THAT COULDN'T BE A

21    HEURISTIC.  THAT PROBABLY WOULDN'T BE A HEURISTIC THE WAY IT'S

22    SET UP.  YOU WOULD HAVE TO HAVE SOMETHING MORE.

23         IF IT WAS YOU'RE SEARCHING A CERTAIN GROUP OF NAMES

24    BECAUSE THEY HAVE SOME BEARING ON SOMETHING YOU'VE SEARCHED

25    BEFORE, YOU GIVE PRECEDENCE TO THAT, THAT MIGHT BE SOMETHING

1    THAT WOULD BE A HEURISTIC.

2         BUT THERE WASN'T ENOUGH INFORMATION IN ANY OF THOSE

3    QUESTIONS, AND THAT'S -- WHEN YOU LOOK AT -- A GOOD EXAMPLE OF

4    THIS IS WHEN THEY QUESTIONED APPLE'S EXPERT, DR. SNOEREN, AND

5    IF YOU GO TO SLIDE 14, HE EVEN SAID VERY CLEARLY, "I'M

6    APPLYING -- I'M TRYING TO APPLY JUDGE KOH'S DEFINITION IN HER

7    ORDER."

8         IT'S INSUFFICIENT TO JUST CLAIM THAT SOMETHING IS

9    HEURISTIC.

10              THE COURT:  I SAW THAT IN YOUR BRIEFS.

11              MR. LYON:  SO I WON'T BELABOR IT.

12              THE COURT:  LET ME ASK YOU, IS THERE ANY FACTUAL

13    QUESTION HERE FOR THE JURY?

14              MR. LYON:  WELL, THE --

15              THE COURT:  OR IS THIS JUST PURELY A QUESTION OF LAW

16    AND WHY DOES SAMSUNG HAVE A BURDEN?

17              MR. LYON:  THIS ISSUE IS DEFINITELY AN ISSUE OF LAW I

18    BELIEVE ON THIS ISSUE IN THE SENSE OF CAN YOU COME UP WITH A

19    CONSTRUCTION THAT HAS BOUNDARIES TO IT?

20              THE COURT:  UM-HUM.

21              MR. LYON:  AND I THINK THE SOFT SEARCH CASE, OR THE

22    SOURCE SEARCH CASE IS REALLY INSTRUCTIVE ON THAT.  THAT'S

23    PROBABLY -- AND THAT'S A POST-DATAMIZE CASE, WHICH IS THE ONE

24    THAT SAMSUNG RELIES ON SO HEAVILY HERE, AND IT DISTINGUISHES

25    THESE AREAS WHERE YOU DON'T HAVE TO BE CONCRETE.

```
 1          I THINK IT'S AN ISSUE THAT -- VERY CLEARLY WHERE ALL THE
 2     PARTIES HAVE BEEN ABLE TO DO THIS.  THE ONLY DISTINCTION HERE
 3     IS THAT BY TREATING IT AS A NOUN INSTEAD OF AN ADJECTIVE, NOW
 4     WE'RE SAYING THAT THERE IS SOME THING THAT HAS THIS HEURISTIC
 5     IN IT.
 6          THE THING IS JUST THE MODULE OF CODE, WHICH IS REPLETE
 7     THROUGH THE SPECIFICATION.  THAT'S EXACTLY WHAT IT IS.  IT'S
 8     THE HEURISTIC MODULE THAT'S REFERRED TO IN '604.  IT'S THE SAME
 9     THING.  IT'S JUST THIS CODE MODULE THAT HAS A HEURISTIC
10     ALGORITHM.
11          THERE'S NO DIFFERENCE IN THE SENSE OF THE DEFINITIONS
12     BETWEEN THE TWO PATENTS, OTHER THAN ONE IS USING IT IN THE
13     CONTEXT OF AN ADJECTIVE AND THE OTHER IS USING IT IN THE
14     CONTEXT OF A NOUN.
15          THE COURT:  IS THERE ANYTHING IN THE PROSECUTION
16     HISTORY FOR THIS PATENT, NOT FOR THE '604, THAT HELPS US DEFINE
17     "HEURISTIC"?
18          MR. LYON:  NOTHING I WOULD SAY THAT I THINK IS
19     PARTICULARLY PERTINENT.  I MEAN, THERE -- OTHER THAN THE FACT
20     THAT THE EXAMINER HAS NO PROBLEM WITH THE TERM.  IT'S A TERM
21     THAT THE EXAMINER USES, AS MR. PAK NOTED FOR THE '604 PATENT,
22     TO BE ABLE TO GET AROUND SOME OF THE PRIOR ART THAT WAS BEING
23     DISCUSSED.  THERE WAS SOME DISCUSSION THERE.
24          BUT CLEARLY IT'S, IT'S A TERM THAT EVERYBODY WAS
25     UNDERSTANDING AT THE TIME AND NOBODY HAS REALLY HAD A HARD TIME
```

1        APPLYING, OTHER THAN SAMSUNG'S EXPERT, WHO WANTS TO TRY TO

2        CREATE AN ISSUE HERE FOR THIS CASE.

3               THE COURT:  OKAY.

4               MR. LYON:  AS LONG AS -- AND I GUESS I SHOULD AMEND

5        THAT BY SAYING AS LONG AS CONTEXT IS GIVEN TO THE QUESTION.

6        THAT'S THE KEY.  IF YOU ASK IT IN THE ABSTRACT WITHOUT SOME

7        CONTEXT, THEN IT'S NOT A CLEAR QUESTION.

8               THE COURT:  OKAY.  ALL RIGHT.  LET'S GO AHEAD AND

9        TAKE A BREAK.  WHEN WE COME BACK, I HAVE A FEW QUESTIONS ON THE

10       '757, THE '596, AND THE '414, AND THEN I WOULD LIKE TO ASK

11       QUESTIONS ABOUT SAMSUNG'S MOTION TO ENFORCE THE CASE NARROWING

12       ORDER.

13            AS FAR AS THE CMC, I DON'T THINK -- WELL, LET ME JUST ASK,

14       WITH REGARD TO THE CMC, WHERE ARE YOU WITH REGARD TO

15       IDENTIFYING ACCUSED PRODUCTS?  WHERE IS THAT?

16              MR. PAK:  YOUR HONOR, JUST IF I COULD INTERRUPT,

17       WOULD YOU LIKE TO HAVE ME PROVIDE MY SHORT COMMENTARY IN

18       REBUTTAL NOW OR SHOULD I --

19              THE COURT:  GO AHEAD.

20              MR. PAK:  THANK YOU, YOUR HONOR.

21              THE COURT:  GO AHEAD.

22              MR. PAK:  BECAUSE I DO WANT TO ANSWER THE QUESTION

23       THAT YOU ASKED ME ABOUT THE PROSECUTION HISTORY.

24              THE COURT:  OKAY.  DO YOU HAVE ANYTHING FROM THE '959

25       AND NOT THE '604?

 1             MR. PAK:  YES, I DO.

 2             THE COURT:  OKAY.  WHAT DO YOU HAVE?

 3             MR. PAK:  YOUR HONOR, THIS IS PAGE 8 OF THE APPELLATE

 4   BRIEF.  THE '959 PATENT WENT THROUGH AN APPEAL PROCESS, AND

 5   THIS IS APPLICATION NUMBER 0947800 --

 6             THE COURT:  CAN YOU GIVE ME AN EXHIBIT NUMBER OR PAGE

 7   NUMBER?

 8             MR. PAK:  YES, I THINK WE CAN GET YOU AN EXHIBIT

 9   NUMBER, BUT I DON'T HAVE THE DOCKET NUMBER WITH ME.

10             THE COURT:  OKAY.  WAS IT FILED IN CONJUNCTION WITH

11   THE SUMMARY JUDGMENT PAPERS?

12             MR. PAK:  I DON'T THINK EITHER PARTY DISCUSSED THE

13   FILE HISTORY AS PART OF THE SUMMARY JUDGMENT MOTION.

14             THE COURT:  I SEE.  OKAY.

15             MR. PAK:  WE CAN PROVIDE A COPY FOR YOUR HONOR'S

16   CONSIDERATION IF YOU WOULD LIKE, BUT I CAN NOTE FOR THE RECORD

17   THE SECTION WHERE IT DOES TALK ABOUT THE IMPORTANCE OF THAT.

18             THE COURT:  AND THAT'S ALREADY IN THE DOCKET?

19             MR. PAK:  YES, I BELIEVE SO.

20        AND THIS IS ABOUT PROVIDING IDENTIFICATION IDENTIFIER TO A

21   PLURALITY OF HEURISTICS, AND IT'S DISCUSSING A PRIOR ART

22   REFERENCE CALLED BLUMENFELD.  "IN CONTRAST TO THE SYSTEM

23   DESCRIBED IN THE BLUMENFELD PUBLICATION, INDEPENDENT CLAIM 18

24   IS DIRECTED TO A METHOD FOR LOCATING INFORMATION FROM A

25   PLURALITY OF LOCATIONS IN A COMPUTER SYSTEM THAT INCLUDES," AND

```
 1        THEN IT DISCUSSES THE HEURISTICS STEP AS THE BASIS FOR

 2    DISTINGUISHING THE PRIOR ART.

 3            YOUR HONOR, IF I COULD --

 4                THE COURT:  SO WHAT WAS THAT AGAIN?  CAN YOU GIVE

 5    ME --

 6                MR. PAK:  THIS IS PAGE 8 OF APPLE'S APPEAL BRIEF AS

 7    PART OF THE --

 8                THE COURT:  APPLE'S BRIEF TO THE FEDERAL CIRCUIT?

 9                MR. PAK:  TO THE, I BELIEVE, PTO.  THERE WAS A

10    REJECTION THAT WAS APPEALED TO THE UNITED STATES PATENT OFFICE.

11                THE COURT:  OKAY.  I'M PROBABLY NOT GOING TO HAVE

12    THAT THEN.

13                MR. PAK:  AND YOUR HONOR, JUST ON THE ONE VERY BRIEF

14    POINT ON THE HEURISTICS, WE SAW ALL KINDS OF CONFLICTING

15    TESTIMONY ABOUT THE WORD "HEURISTICS" FROM VARIOUS PEOPLE.

16            IF I CAN BRING UP SLIDE, MR. FISHER, SLIDE 10.

17            YOUR HONOR, THIS IS THE BEST VISUAL ILLUSTRATION OF THE

18    PROBLEM THAT EXISTS, EVEN WITH YOUR HONOR'S GUIDANCE, BECAUSE

19    WHAT YOUR HONOR PROVIDED IS A TWO-PART TEST, RULE OF THUMB AND

20    THIS CONSTRAINT SATISFACTION PARAMETER.

21            WE ASKED, ON THE BOTTOM, DR. SNOEREN -- THIS IS APPLE'S

22    EXPERT -- USING HIS DEFINITION OF "HEURISTIC" AS DERIVED FROM

23    YOUR HONOR'S GUIDANCE, I ASKED HIM IN HIS DEPOSITION TO LOOK

24    AT -- HE ANALYZES A PIECE OF PRIOR ART, WHICH IS A 1998

25    TEXTBOOK TITLED "ALGORITHMS AND HEURISTICS," AND IT'S OVER 200
```

1    PAGES LONG, AND HE SAID, APPLYING YOUR HONOR'S GUIDANCE, "IN MY

2    READING OF GROSSMAN, I SEE NO EXPLICIT DISCLOSURE OF EVEN A

3    SINGLE HEURISTIC."

4         NOT ONE IN A TEXTBOOK TITLED "HEURISTICS."

5         SO THIS TELLS US THAT EVEN WITH YOUR HONOR'S GUIDANCE,

6    DR. SNOEREN, WHO IS APPLE'S EXPERT, CANNOT FIND A SINGLE

7    HEURISTIC IN A TEXTBOOK THAT IS ENTITLED "HEURISTICS," WHICH

8    MEANS NOW WE'RE DOWN TO A JUDGMENT CALL OF ONE EXPERT VERSUS

9    ANOTHER, AND THIS IS EXACTLY THE ISSUE I THINK THAT THE

10   HALLIBURTON CASE WAS DEALING WITH.

11        MR. LYON:  YOUR HONOR, I'M SORRY TO INTERRUPT, BUT I

12   WANT TO CORRECT ONE THING.  THEY ASKED HIM ABOUT A SPECIFIC

13   CHAPTER IN THAT BOOK, NOT THE WHOLE BOOK.  THEY WERE TALKING

14   ABOUT A SPECIFIC CHAPTER, SO HE SAID HE DIDN'T SEE ANY

15   HEURISTICS IN THAT SPECIFIC CHAPTER.

16        MR. PAK:  AND THAT CHAPTER WAS ENTITLED "HEURISTICS,"

17   AND HE DID CONSIDER THE ENTIRE TEXTBOOK, WHICH IS PART OF THE

18   DEPOSITION RECORD, YOUR HONOR.

19        THE COURT:  ALL RIGHT.  THANK YOU.

20        SO WHAT'S THE STATUS OF NARROWING THE ACCUSED PRODUCTS?

21   ARE YOU -- YOUR JOINT CASE MANAGEMENT STATEMENT SAYS YOU'RE

22   CONTINUING TO MEET AND CONFER.

23        MR. KREVITT:  YOUR HONOR, WE'VE HAD EXTENSIVE

24   DISCUSSIONS.  I PARTICIPATED, MR. JOHNSON HAS AS WELL, AS WELL

25   AS THE FOLKS FROM WILMER, HALE, AND WE HAVE MADE, WE BELIEVE,

```
 1        PROGRESS IN NARROWING THE ISSUE AND ARE REASONABLY OPTIMISTIC

 2    WE'LL BE ABLE TO REACH AN AGREEMENT THAT WE'LL BE ABLE TO

 3    PRESENT TO YOUR HONOR FOR YOUR HONOR'S CONSIDERATION.

 4             THE COURT:  GREAT.  THANK YOU.  I'D LIKE TO SET A

 5    FURTHER CASE MANAGEMENT CONFERENCE FOR FEBRUARY 20TH OF 2014 AT

 6    1:30.  YOU ALL REQUESTED TO HAVE A STATUS CONFERENCE AFTER THE

 7    DAUBERT HEARING, BUT BEFORE THE PRETRIAL CONFERENCE, SO I THINK

 8    THAT WILL WORK.

 9             THE REMAINING DATES IN THE CASE WILL REMAIN AS SET.

10         I DIDN'T THINK THERE WAS ANYTHING ELSE FOR THE CASE

11    MANAGEMENT CONFERENCE.  IS THERE ANYTHING ELSE?

12             MR. KREVITT:  NO, YOUR HONOR.

13             THE COURT:  OKAY.

14             MR. KREVITT:  THOSE WERE THE ISSUES THAT WE HAD

15    RAISED, AND OF COURSE ANYTHING YOUR HONOR WANTED TO ADDRESS.

16             THE COURT:  OKAY.  ALL RIGHT.  WELL, LET'S TAKE A

17    BREAK UNTIL 4:00 O'CLOCK NOW AND WE'LL HANDLE THE REMAINING

18    PATENTS AND THE MOTION TO ENFORCE THE CASE NARROWING ORDER.

19         OKAY.  THANK YOU.

20             MR. KREVITT:  THANK YOU.

21             MR. JOHNSON:  THANK YOU.

22         (RECESS FROM 3:48 P.M. UNTIL 4:05 P.M.)

23             THE COURT:  OKAY.  WELCOME BACK.  PLEASE TAKE A SEAT.

24         I'M GOING TO ASK MR. PAK AND MR. LYONS, CAN YOU FILE, AS A

25    JOINT SUBMISSION, WHATEVER THE RELEVANT PARTS OF THE FILE
```

1    HISTORY ARE FOR THE '959 AS TO "HEURISTIC"?  I DON'T KNOW HOW

2    USEFUL IT'S GOING TO BE, BUT I MIGHT AS WELL SEE THAT.

3            MR. PAK:  YES, YOUR HONOR.

4            THE COURT:  CAN YOU DO THAT BY MONDAY?

5            MR. PAK:  OF COURSE.

6            THE COURT:  THANK YOU.  SO IF YOU THINK THAT AN APPLE

7    RESPONSE AND A PTO EXAMINER RESPONSE IS RELEVANT TO THIS

8    QUESTION, JOINTLY SUBMIT THOSE SECTIONS.

9            MR. LYON:  WE'LL WORK TOGETHER.

10           THE COURT:  OKAY.  THANK YOU.

11       LET'S GO TO THE '757.

12       LET ME ASK SAMSUNG TO CLARIFY YOUR STATEMENT IN THE

13   OPPOSITION THAT APPLE FAILS TO IDENTIFY ANY INCORPORATION

14   LANGUAGE IN THE '446 PATENT, THE MULTER PATENT, BECAUSE THERE

15   ARE A LOT OF EXPLICIT INCORPORATIONS OF THAT PATENT, SO DO YOU

16   WANT TO JUST CLARIFY WHAT YOU MEANT BY THAT?

17           MR. JOHNSON:  SURE.  SO IF WE LOOK AT -- MR. FISHER,

18    IF WE COULD PULL UP SLIDE --

19           THE COURT:  LET ME JUST PULL UP THE '446 PATENT A

20    SECOND, PLEASE.

21        ALL RIGHT.  GO AHEAD.

22           MR. JOHNSON:  SURE.  LET'S PULL UP SLIDE 27, PLEASE.

23        SO THE STANDARD IS, YOU KNOW, ONE OF REASONABLE -- WHETHER

24   ONE OF REASONABLE -- "REASONABLY SKILLED IN THE ART SHOULD BE

25   USED TO DETERMINE WHETHER THE HOST DOCUMENT DESCRIBES THE

1    MATERIAL TO BE INCORPORATED BY REFERENCE WITH SUFFICIENT

2    PARTICULARITY."

3        THE SEGMENT -- WHEN WE LOOK AT APPLE'S BRIEF ON THE ISSUE,

4    THEY POINT TO -- THERE ARE THREE REFERENCES IN THE MULTER

5    PATENT -- SORRY -- IN THE ONYON PATENT TO THE MULTER PATENT,

6    AND ONE IN PARTICULAR THAT THEY POINT TO, WE'VE GOT SORT OF THE

7    VERY BROAD INCORPORATIONS BY REFERENCE AT COLUMN 1, LINES 1 TO

8    17 -- THIS IS SLIDE 28, PLEASE, RYAN -- AND IT SIMPLY SAYS "THE

9    FOLLOWING APPLICATIONS ARE CROSS-REFERENCED AND INCORPORATED BY

10   REFERENCE."

11       THERE'S ONE AT COLUMN 5, LINES 34 TO 41, AND IT TALKS

12   ABOUT PERSONAL INFORMATION.

13        THE COURT:  THERE'S COLUMN 2, LINE 44, THROUGH COLUMN

14   3, LINE 24.

15        MR. JOHNSON:  THAT'S RIGHT.

16     NOW, THE ONE THAT THEY RELY ON FOR THIS AUTOMATIC

17   SYNCHRONIZATION ISSUE IS COLUMN 9, 65 TO COLUMN 10, LINE 3.

18   AND THAT ONE SIMPLY SAYS, "THE SPECIFIC STRUCTURE AND OPERATION

19   OF THE SERVER AND CLIENT BASED DEVICE ENGINES ARE DESCRIBED

20   GENERALLY WITH RESPECT TO FIGURE 5 AND ARE DISCLOSED IN FURTHER

21   DETAIL IN PATENT APPLICATION" SO AND SO, NOW THE '757 PATENT.

22       IT DOESN'T SAY INCORPORATION BY REFERENCE THERE.  THEY SAY

23   ELSEWHERE MORE GENERALLY FOR THE WHOLE APPLICATION.

24       BUT ON THE ONE POINT THAT THEY NOW IN THEIR BRIEF SAY AND

25   THEY ACKNOWLEDGE --

```
 1              THE COURT:  WELL, LOOK AT COLUMN 5, LINE 40, 41,

 2     "EACH OF WHICH IS HEREBY SPECIFICALLY INCORPORATED BY

 3     REFERENCE."  THAT DOESN'T DO IT FOR YOU?

 4              MR. JOHNSON:  ONE SECOND PLEASE, YOUR HONOR.

 5              THE COURT:  OKAY.

 6              MR. JOHNSON:  YOUR HONOR, I'M SORRY, WHICH COLUMN?

 7     5?

 8              THE COURT:  COLUMN 5.

 9              MR. JOHNSON:  LINE?

10              THE COURT:  LINE 40 AND 41 IS WHAT I WAS QUOTING.

11              MR. JOHNSON:  RIGHT.  SO ON SLIDE 28, THESE ARE THE

12     THREE -- THESE ARE THE THREE REFERENCES IN THE ONYON PATENT

13     THAT APPLE RELIES ON, AND AS I SAID, HERE -- I ACKNOWLEDGE, I

14     MEAN, IT SAYS, "ONE EXAMPLE OF A PERSONAL INFORMATION SPACE IS

15     THE TRANSACTIONAL BASED EXTRACTION, TRANSFER, BROADCAST,

16     STORAGE AND SYNCHRONIZATION SYSTEMS," NOW IN THE U.S. '757,

17     "WHICH IS INCORPORATED BY REFERENCE."

18              THE COURT:  SO I'M UNCLEAR ON YOUR ARGUMENT.  ARE YOU

19     SAYING THAT IT'S JUST NOT SPECIFIC ENOUGH AS TO WHAT IS BEING

20     INCORPORATED, OR --

21              MR. JOHNSON:  IT'S NOT SPECIFIC ENOUGH AND NOT CLEAR

22     ENOUGH AND DOESN'T TELL A PERSON OF ORDINARY SKILL WHAT

23     SPECIFICALLY IS BEING INCORPORATED.

24          IF WE GO BACK TO SLIDE 27, PLEASE.

25          THE TEST IS WHETHER ONE REASONABLY SKILLED IN THE ART
```

1    WOULD UNDERSTAND THAT THE HOST DOCUMENT DESCRIBES THE MATERIAL

2    TO BE INCORPORATED BY REFERENCE WITH SUFFICIENT PARTICULARITY,

3    AND DR. SCHONFELD TESTIFIED AT PARAGRAPH 50 IN HIS DECLARATION

4    THAT ONE OF SKILL IN THE ART WOULD NOT UNDERSTAND THE

5    INCORPORATION OF MULTER TO BE SUFFICIENTLY PARTICULAR, AND

6    THAT'S THE TEST, IS IT SUFFICIENTLY PARTICULAR?

7         AND DR. SCHONFELD SAYS, IN REFERRING TO THAT SAME SECTION,

8    YOUR HONOR, THAT YOU WERE LOOKING AT, COLUMN 5, LINES 34 TO 41,

9    IT SAYS, QUOTE, "THIS REFERENCE IS SO BROAD THAT IT ESSENTIALLY

10   IS A GENERAL INCORPORATION.  IT IS NOT SUFFICIENTLY PARTICULAR

11   TO ASSIST ONE OF ORDINARY SKILL IN THE ART TO DETERMINE WHICH

12   PORTIONS OF THE 17 FIGURES AND 50 COLUMNS OF THE MULTER PATENT

13   ARE BEING DESCRIBED AND INCORPORATED INTO THE '446 PATENT,"

14   PARTICULARLY AS IT RELATES TO AUTOMATIC SYNCHRONIZATION.

15        AND THIS TESTIMONY, YOUR HONOR, IS UNREBUTTED.  THERE IS

16   NO DECLARATION, THERE IS NO TESTIMONY FROM APPLE'S EXPERT,

17   DR. TAYLOR, SAYING A PERSON OF ORDINARY SKILL IN THE ART WOULD

18   UNDERSTAND THIS TO BE SUFFICIENTLY PARTICULAR.  THIS IS WHAT'S

19   IN THE RECORD.

20        AND WE HAVE REASONS, AS WE EXPLAINED IN OUR BRIEF, AND I'M

21   PREPARED TO GO THROUGH, AS TO WHY MULTER IS --

22             THE COURT:  NO, THAT'S SUFFICIENT.

23        LET ME MOVE ON TO MY NEXT QUESTION --

24             MR. JOHNSON:  OKAY.

25             THE COURT:  -- AND THAT IS SAMSUNG REPLACED

1    "MULTIPLICITY OF ZONES" WITH "AT LEAST ONE ZONE" IN CLAIM 1 TO

2    OVERCOME A DOUBLE PATENTING REJECTION, BUT THEN DID FILE A

3    TERMINAL DISCLAIMER, SO IT'S JUST REALLY NOT CLEAR WHAT THE

4    EFFECT -- IT'S A LITTLE BIT CONFUSING, RIGHT?

5              MR. JOHNSON:  I AGREE THAT IT'S --

6              THE COURT:  YEAH.  SO WHAT DOES THAT MEAN?  IS THIS

7    ONLY ONE ZONE?  OR IS THIS MULTIPLE ZONES?  WHAT ARE WE

8    SUPPOSED TO DO --

9              MR. JOHNSON:  WELL, AGAIN --

10             THE COURT:  -- WITH THAT HISTORY WHICH IS SLIGHTLY

11   CONTRADICTORY?

12      GO AHEAD.

13             MR. JOHNSON:  SO IT'S THEIR MOTION ON ANTICIPATION.

14   THEY HAVE TO ESTABLISH, BY CLEAR AND CONVINCING EVIDENCE, THAT

15   ONYON MEETS, ON ALL FOUR CORNERS, EACH AND EVERY LIMITATION IN

16   THE '757 PATENT.

17        MR. FISHER, IF WE CAN GO TO SLIDE 22.

18        THE PROSECUTION HISTORY DOESN'T CHANGE THE FACT THAT

19   CLAIM 1 REQUIRES A SYSTEM THAT'S CAPABLE OF AUTOMATICALLY

20   SYNCHRONIZING MULTIPLE DEVICES.

21        YOU KNOW, WHAT THEY'RE ESSENTIALLY ARGUING IS THIS

22   STATEMENT IN THE FILE HISTORY IS SOME SORT OF DISCLAIMER

23   BECAUSE IT, BECAUSE IT BROADENED THE CLAIM, AND THAT'S

24   EXACTLY -- CLAIM 1 HERE WAS ALTERED TO OVERCOME AN OBVIOUSNESS

25   TYPE DOUBLE PATENTING, AND AS WE SEE DOWN HERE, IT SAYS, OUT OF

```
1          THE FILE HISTORY, "CLAIM 1 OF THE INSTANT APPLICATION BROADENS

2     THE CLAIM LANGUAGE TO INCLUDE THE SYSTEM HAVING A CENTRAL

3     STORAGE AND INTERFACE DEVICE AND ONLY ONE ZONE.  THUS, CLAIM 1

4     OF THE INSTANT APPLICATION CAN BE INFRINGED WITHOUT INFRINGING

5     CLAIM 1 OF THE '934 PATENT."

6          THAT DOESN'T CHANGE THE FACT THAT THE SYSTEM HAS TO BE

7     CAPABLE OF AUTOMATICALLY SYNCHRONIZING MULTIPLE DEVICES.  IF

8     THERE'S MORE THAN ONE ZONE, IT HAS TO SYNCHRONIZE AUTOMATICALLY

9     ALL OF THE DEVICES.

10         IT MAY ONLY HAVE ONE ZONE, AND THAT'S HOW CLAIM 1 WAS

11    AMENDED.  BUT IT HAS TO HAVE THIS CAPABILITY, AND THE CAPABLE

12    LANGUAGE COMES RIGHT OUT OF CLAIM 1.

13         IF WE LOOK AT THE CLAIM -- IF WE GO TO THE NEXT SLIDE, YOU

14    KNOW, DR. SCHONFELD --

15             THE COURT:  WHAT'S YOUR RESPONSE TO YOU BASICALLY

16    GAVE UP MULTIPLICITY OF ZONES TO OVERCOME THE DOUBLE PATENTING

17    REJECTION?

18             MR. JOHNSON:  LET'S GO BACK TO SLIDE 22.

19         TO ANSWER YOUR QUESTION, THEY DIDN'T GIVE THAT UP AT ALL,

20    YOUR HONOR.  IT SAYS HERE, BACK OUT OF THE FILE HISTORY, "THE

21    LANGUAGE OF CLAIM 1 OF THE INSTANT APPLICATION COVERS THIS SAME

22    PLURALITY OF ZONES HAVING A ZONE SPECIFIC STORAGE DEVICE,

23    SATISFYING THE FIRST PRONG OF THE OBVIOUSNESS-TYPE DOUBLE

24    PATENTING TEST."

25         THEY DIDN'T GIVE IT UP.  WHAT THEY DID WAS THEY BROADENED
```

1    THE CLAIM TO INCLUDE ONE ZONE, AND THEY SAID IF IT'S GOT MORE

2    THAN ONE ZONE, IF IT HAS A PLURALITY OF ZONES, THAT SYSTEM MUST

3    BE CAPABLE OF AUTOMATICALLY SYNCHRONIZING THOSE MULTIPLE

4    DEVICES.

5         IT'S THE CAPABILITY OF IT, AND THE CAPABILITY OF IT COMES

6    OUT OF CLAIM 1.  IT TALKS ABOUT AT LEAST ONE ZONE, "EACH ZONE

7    HAVING AT LEAST ONE ZONE SPECIFIC STORAGE AND INTERFACE DEVICE

8    CAPABLE OF STORING OR INTERFACING," AND THEN IT GOES ON.

9         SO THERE WASN'T ANY GIVING UP OF ANY MULTIPLE ZONES IN

10   THAT SENSE.

11             THE COURT:  OKAY.  THANK YOU.

12        LET ME ASK SOME QUESTIONS OF APPLE, AND THEN I'D LIKE TO

13   MOVE ON TO THE NEXT PATENT.

14             MR. SELWYN:  AND IF I COULD HAVE AN OPPORTUNITY TO

15   RESPOND BRIEFLY ON BOTH OF THOSE POINTS AFTER I ANSWER YOUR

16   OTHER QUESTIONS, YOUR HONOR?

17             THE COURT:  THAT'S FINE.  I GUESS IT SEEMS THAT YOUR

18   POSITION THAT CLAIM 1 IS LIMITED TO ONE ZONE, OR NEED ONLY BE

19   CAPABLE OF SYNCHRONIZING ONE ZONE DEVICE IS SOMEWHAT

20   AGGRESSIVE.

21        WHY DON'T YOU ADDRESS HOW TO HARMONIZE THAT WITH OTHER

22   LANGUAGE IN CLAIM 1 THAT TALKS ABOUT "UPDATED IN RELATION TO

23   THE ZONE SPECIFIC STORAGE AND INTERFACE DEVICES" AND "WHEREBY

24   THE AT LEAST ONE USER CAN BE SITUATED IN ANY ONE OF THOSE ZONES

25   AND ACCESS," ET CETERA.

```
 1                MR. SELWYN:  SURE.

 2                THE COURT:  IT SEEMS LIKE THERE ARE MULTIPLE DEVICES

 3       IN MULTIPLE ZONES.

 4                MR. SELWYN:  THERE ARE TWO SEPARATE QUESTIONS HERE.

 5       THE FIRST QUESTION IS WHETHER THE CLAIM REQUIRES MULTIPLE ZONE

 6       DEVICES OR, AS APPLE SAYS, AT LEAST ONE.

 7                APPLE'S VIEW IS IT CLEARLY REQUIRES ONLY AT LEAST ONE

 8       BECAUSE THAT'S THE PLAIN LANGUAGE THAT'S SUPPORTED BY THE FILE

 9       HISTORY.

10                I THINK THE QUESTION THAT YOUR HONOR IS RAISING IS, IN THE

11       EVENT THAT YOU DO HAVE MULTIPLE ZONE DEVICES, DO THEY ALL NEED

12       TO BE SYNCHRONIZED WITH THE CENTRAL DEVICE?

13                AND OUR ANSWER TO THAT QUESTION WOULD BE YES, UNDER THE

14       LANGUAGE OF THE CLAIM, ALL OF THE ZONE DEVICES ARE SYNCHRONIZED

15       WITH THE CENTRAL DEVICE SUCH THAT IN ANY ZONE YOU HAVE ACCESS

16       TO THE SAME MEDIA INFORMATION.

17                BUT IT'S A SEPARATE QUESTION -- AND THIS GOES TO THE

18       QUESTION THAT YOU ASKED MR. JOHNSON -- WHETHER THE LANGUAGE

19       REQUIRES MULTIPLE ZONES, AS SAMSUNG SAYS, OR AT LEAST ONE ZONE,

20       AS APPLE SAYS AND AS THE PLAIN LANGUAGE OF THE CLAIM READS.

21                THE COURT:  BUT I STILL THINK THERE'S ENOUGH LANGUAGE

22       IN THE PATENT THAT ALL THE DEVICES NEED TO BE SYNCHRONIZED.

23                MR. SELWYN:  THAT'S CORRECT.

24                THE COURT:  AND NOT JUST ONE.

25                MR. SELWYN:  ALL THE DEVICES DO NEED TO BE
```

1     SYNCHRONIZED.

2          BUT YOU CAN HAVE A SYSTEM THAT HAS ONE ZONE DEVICE AND ONE

3     CENTRAL DEVICE AND MEET THE CLAIM, BECAUSE THE CLAIM REQUIRES

4     AT LEAST ONE ZONE SPECIFIC STORAGE AND INTERFACE DEVICE.

5          SAMSUNG IS TRYING TO READ "AT LEAST ONE" TO MEAN "AT LEAST

6     TWO," TO CONTRADICT THE PLAIN LANGUAGE OF THE CLAIM LANGUAGE.

7          IT CLEARLY STATES "AT LEAST ONE."  THERE'S NO REASON TO

8     READ IT AS "AT LEAST TWO."  THE FILE HISTORY SHOWS THAT THEY

9     CHANGED THE CLAIM LANGUAGE FROM "MULTIPLICITY" TO "AT LEAST

10    ONE," AND NOW THEY WANT TO TURN IT BACK TO "MULTIPLICITY."

11          THE COURT:  UM-HUM.  WELL, WHAT ABOUT THE TERMINAL

12    DISCLAIMER, THOUGH?  DOESN'T THAT SEEM TO INDICATE THEY THOUGHT

13    THEY WERE OVERLAPPING THE "AT LEAST ONE" AND "THE

14    MULTIPLICITY"?

15          MR. SELWYN:  THEY THOUGHT THAT THEY WERE OVERLAPPING

16    AND THEY CHANGED THE LANGUAGE FROM "THE MULTIPLICITY" TO "AT

17    LEAST ONE."

18          SO APPLE'S VIEW IS THE CLAIM -- THE FILE HISTORY IS CLEAR

19    THAT WHAT THEY DID IS CHANGED A SYSTEM THAT HAD MULTIPLE ZONE

20    DEVICES AS A REQUIREMENT TO ONE THAT PERMITTED YOU TO SATISFY

21    THE CLAIM WITH AT LEAST ONE.

22          THE COURT:  BUT LATER THEY FILED A TERMINAL

23    DISCLAIMER, SO THEY WEREN'T SEEKING AN EXTENSION OF THE LIFE OF

24    THE PATENT.

25          MR. SELWYN:  YES.

```
 1            THE COURT:  SO IT SEEMS TO SORT OF UNDO THE CHANGE

 2     THEY MADE TO OVERCOME THE DOUBLE PATENTING REJECTION.

 3            MR. SELWYN:  WELL, EVEN UNDER THAT READING OF IT,

 4     THAT WOULD REQUIRE YOU TO OVERLOOK THE PLAIN LANGUAGE, AND THE

 5     FILE HISTORY CAN'T BE USED TO EXPAND THE CLEAR LANGUAGE OF THE

 6     CLAIM.

 7          THERE'S NO READING OF "AT LEAST ONE" ON ITS FACE THAT CAN

 8     MEAN TWO, OR THAT CAN REQUIRE AT LEAST TWO.  AT LEAST ONE, ONE

 9     ZONE DEVICE WOULD SATISFY THAT LIMITATION.

10            THE COURT:  DID YOU WANT TO RESPOND TO THAT ISSUE?

11            MR. SELWYN:  I DID --

12            THE COURT:  GO AHEAD.

13            MR. SELWYN:  -- BECAUSE I THINK IT'S A VERY IMPORTANT

14     ISSUE THAT YOU RAISED, AND THE REASON I THINK IT'S IMPORTANT IS

15     THAT IF YOUR HONOR CONCLUDES, AS WE THINK THAT YOU SHOULD, THAT

16     THE '446 PATENT INCORPORATES MULTER, THEN THERE REALLY IS NO

17     REMAINING DISPUTE OF FACT.

18          AND THE REASON THAT THE '446 PATENT INCORPORATES MULTER IN

19     ITS ENTIRETY IS BECAUSE IT SAYS IT DOES, AND IT SAYS IT DOES

20     REPEATEDLY.  IT SAYS IT DOES AT COLUMN 1, LINES 7 THROUGH 17,

21     AND AGAIN AT THE LANGUAGE THAT YOU FOCUSSED ON, YOUR HONOR, AT

22     COLUMN 5, LINES 40 AND 41.

23          AND THE INCORPORATION IN ITS ENTIRETY CLEARLY IDENTIFIES

24     WHAT IS INCORPORATED, THAT IS, ALL OF MULTER, AND WHERE IT IS

25     FOUND IN THE MULTER PATENT.  AND AS A MATTER OF LAW, MULTER IS
```

1    INCORPORATED FOR PURPOSES OF ANTICIPATION.

2         SAMSUNG, IN FACT, ADMITTED IN ITS VALIDITY CONTENTIONS

3    THAT THE '446 PATENT INCORPORATES THE MULTER PATENT, NEVER

4    DISPUTED APPLE'S CONTENTION THAT THE '446 PATENT AND MULTER ARE

5    A SINGLE REFERENCE AND, IN FACT, RELIED UPON MULTER TO SUGGEST

6    THAT THE PATENT IS VALID.

7         WE CITED, IN FOOTNOTE 23, A VARIETY OF CASES WHICH WE

8    WOULD ASK YOUR HONOR TO CONSIDER, INCLUDING A 2006 DECISION BY

9    JUDGE ALSUP THAT CONSIDERED THE SAME ISSUES IN LIGHT OF THE

10   ADVANCED DISPLAY CASE THAT SAMSUNG RELIES ON.

11        THE CHIRON CASE, WHICH IS THE JUDGE ALSUP CASE FROM 2006,

12   431 F.SUPP. 1019, CONSIDERED THIS SAME LANGUAGE.  THE PATENT AT

13   ISSUE EXPRESSLY INCORPORATED ANOTHER PATENT BY REFERENCE IN ITS

14   ENTIRETY, AND JUDGE ALSUP CONCLUDED THAT'S PLAIN AS DAY THAT

15   THAT INCORPORATES IT IN ITS ENTIRETY AND FOUND THAT THE TWO

16   PATENTS SHOULD BE CONSIDERED TOGETHER TO CONSTITUTE A SINGLE

17   REFERENCE.

18        AND IF YOUR HONOR AGREES WITH THAT, THEN THERE REALLY IS

19   NO DISPUTE OF FACT HERE BECAUSE THE MULTER PATENT INCLUDES ALL

20   OF THE THINGS THAT SAMSUNG SAYS ARE NOT PRESENT WITH THE '446

21   PATENT, EVEN UNDER ITS EXPANDED VIEW OF WHAT THIS CLAIM

22   REQUIRES.

23        SO EVEN IF SAMSUNG IS CORRECT ON ITS AUTOMATIC

24   SYNCHRONIZATION POINT, ON ITS MULTIPLE DEVICE POINT, IT

25   CONCEDES THAT ALL OF THAT IS FOUND IN MULTER.

```
 1          SO, YOUR HONOR, WE WOULD SUGGEST THAT THE PROPER PATH

 2     HERE, JUST STEPPING BACK FROM THE BRIEFS, FOR YOU TO RESOLVE

 3     THIS ISSUE IS FIRST TO RESOLVE THIS ISSUE OF INCORPORATION BY

 4     REFERENCE, AND WE BELIEVE IF YOU DO THAT, ALL OF THE OTHER

 5     DISPUTES FALL AWAY.

 6          AND IF THAT'S NOT THE CASE, THEN THE NEXT SUBSIDIARY LEGAL

 7     ISSUE IS, DOES THE CLAIM REQUIRE AUTOMATIC SYNCHRONIZATION AS

 8     SAMSUNG SAYS?

 9          AND THE NEXT ISSUE AFTER THAT, ANOTHER LEGAL QUESTION, IS

10     THE ONE THAT WE ALREADY TALKED ABOUT, ABOUT WHETHER THE CLAIM

11     REQUIRES AT LEAST ONE ZONE DEVICE OR AT LEAST TWO ZONE DEVICES.

12          THOSE ARE THE ISSUES THAT SAMSUNG IS USING TO TRY TO

13     CREATE AN ISSUE OF FACT HERE WHERE NONE REALLY EXISTS.

14          THE COURT:  SO IF I FIND THAT THE CLAIM DOES REQUIRE

15      THE SYNCHRONIZATION OF MULTIPLE ZONES, THEN DO YOU THINK THERE

16      IS A QUESTION OF FACT FOR THE JURY ON '446?

17          MR. SELWYN:  YOUR HONOR, WE AGREE THAT IN THE

18      INSTANCE WHERE YOU HAVE MULTIPLE ZONE DEVICES --

19          THE COURT:  UM-HUM.

20          MR. SELWYN:  -- THE CLAIM DOES REQUIRE

21      SYNCHRONIZATION OF MULTIPLE ZONES.

22          BUT THE QUESTION THAT'S BEING RAISED HERE IS WHETHER YOU

23      CAN HAVE A SYSTEM THAT HAS JUST ONE ZONE DEVICE.

24          SAMSUNG IS SAYING THAT THE '446 PATENT AT LEAST -- IT

25      DOESN'T SAY THE SAME THING FOR MULTER -- BUT THEY SAY FOR THE
```

1    '446 THAT THAT DOESN'T MEET THE CLAIM BECAUSE IT DOESN'T SHOW

2    MULTIPLE DEVICES SYNCHRONIZING.

3         WE, IN FACT, DISAGREE WITH THAT, BUT LET'S PUT THAT ASIDE

4    AND ASSUME THEY'RE CORRECT.

5              THE COURT:  SO THE LANGUAGE SAYS "UPDATED IN RELATION

6    TO THE ZONE SPECIFIC STORAGE AND INTERFACE DEVICES."

7         I DON'T AGREE WITH YOU THAT IT'S ONLY ONE DEVICE.

8              MR. SELWYN:  BUT IF I MAY, YOUR HONOR, THE ANTECEDENT

9    FOR THAT IS "AT LEAST ONE ZONE DEVICE," AND SAMSUNG'S EXPERT

10   AGREES, AS HE HAS TO, THAT THAT IS THE ANTECEDENT FOR IT.

11        SO IF YOUR HONOR IS TO REQUIRE MULTIPLE ZONE DEVICES IN

12   THIS CLAIM, THEN YOU'VE TRANSFORMED THE PLAIN LANGUAGE OF "AT

13   LEAST ONE ZONE DEVICE" TO "AT LEAST TWO ZONE DEVICES."

14        THE READING OF THE CLAIM THAT'S FAITHFUL TO IT IS ONE ZONE

15   DEVICE.  YOU CAN, IN FACT, CERTAINLY HAVE TWO ZONE DEVICES.

16   YOU COULD HAVE A HUNDRED ZONE DEVICES AND THAT WOULD SATISFY

17   THE PORTION OF THE CLAIM THAT YOU READ WHERE "ZONE DEVICES" IS

18   IN THE PLURAL.

19        BUT THERE'S NO REQUIREMENT OF HAVING MULTIPLE ZONE

20   DEVICES.  TO THE CONTRARY.  YOU CAN HAVE ONE ZONE DEVICE AND

21   SATISFY THE CLAIM LANGUAGE.

22              THE COURT:  OKAY.  THANK YOU.

23        LET'S GO TO THE '596 AND THEN I'D LIKE TO GO TO THE '414,

24   WHICH WILL BE OUR LAST ONE.

25              MR. SELWYN:  IF I COULD FOR COMPLETION, SINCE I'VE

1        REFERRED TO SOME OF MY SLIDES, IF I COULD HAND THEM UP?

2               THE COURT:  PLEASE.

3               MR. JOHNSON:  IF I COULD, YOUR HONOR, HAVE JUST A

4        COUPLE MINUTES TO RESPOND?

5               THE COURT:  GO AHEAD, PLEASE.

6               MR. JOHNSON:  PULL UP SLIDE 7, YOUR HONOR, OR

7        MR. FISHER.

8            ANTICIPATION IS A QUESTION OF FACT AND IT REQUIRES CLEAR

9        AND CONVINCING EVIDENCE.

10           WE DON'T CONCEDE THAT AUTOMATIC SYNCHRONIZATION IS

11       DISCLOSED IN MULTER.  OUR EXPERT SPENDS A LOT OF TIME IN HIS

12       DECLARATION EXPLAINING EXACTLY WHY MULTER DOES NOT DISCLOSE

13       AUTOMATIC SYNCHRONIZATION, AND THAT IS LAID OUT AT PARAGRAPHS

14       60 TO 61 AND 53 TO 60 AS WELL IN THE SCHONFELD DECLARATION.

15           WE -- WHEN YOU LOOK AT WHAT THEY'RE ARGUING, SOMEHOW TO

16       COMBINE ONYON WITH MULTER, AND THEY SAY, FIRST, INCORPORATED BY

17       REFERENCE AND SO MULTER IS IN, AND WE DON'T CONCEDE AUTOMATIC

18       SYNCHRONIZATION IS PRESENT, NOTHING COULD BE FURTHER FROM THE

19       TRUTH.

20           WE GO THROUGH A LOT OF DETAIL IN OUR BRIEF EXPLAINING WHY

21       AUTOMATIC SYNCHRONIZATION IS NOT DESCRIBED IN MULTER, EVEN IF

22       IT IS INCORPORATED BY REFERENCE.

23           BUT EVEN BEYOND THAT, YOUR HONOR, BEFORE YOU GET TO THIS

24       ISSUE AND YOU LOOK AT THE LANGUAGE THAT YOUR HONOR IDENTIFIED,

25       THE "UPDATED IN RELATION TO" LANGUAGE, "UPDATED IN RELATION TO"

1    REQUIRES BIDIRECTIONALITY, AUTOMATIC SYNC, AND SYNCHRONIZATION

2    ON ALL DEVICES.

3           DR. SCHONFELD SPENDS A FAIR AMOUNT OF TIME IN HIS

4    DECLARATION DISCUSSING THE FACT THAT THERE'S NO

5    BIDIRECTIONALITY THAT'S DISCLOSED IN ONYON, AND THAT'S NOT

6    REALLY DISPUTED.  THE REQUIREMENT OF BIDIRECTIONALITY IS NOT

7    REALLY DISPUTED BY APPLE.

8           AND SO WHEN YOU LOOK AT, FOR EXAMPLE, THE DECLARATION

9    OF -- THE SCHONFELD DECLARATION, PARAGRAPH 62 -- SLIDE 17 -- HE

10   TALKS ABOUT THE FACT THAT ONYON DOESN'T DISCLOSE BIDIRECTIONAL

11   SYNCHRONIZATION.

12          WHEN YOU LOOK AT SCHONFELD DECLARATION PARAGRAPHS 35, 41,

13   43 THROUGH 48, HE TALKS VERY CLEARLY ABOUT THE FACT THAT ONYON

14   DOES NOT DISCLOSE SYNCHRONIZATION OF ALL DEVICES.  IT'S AT

15   SLIDES 23 AND 20.

16          AND THEN WHEN YOU GET TO THE QUESTION OF AUTOMATIC

17   SYNCHRONIZATION, I THINK APPLE ACKNOWLEDGES THAT'S NOT IN

18   ONYON.  THE ONLY WAY THEY CAN ANTICIPATE, IN THEIR WORLD, THE

19   '757 PATENT IS TO COMBINE MULTER WITH ONYON.

20          THERE'S A QUESTION OF FACT, IN OUR BELIEF, YOU KNOW,

21   THERE'S UNREBUTTED TESTIMONY FROM OUR EXPERT SAYING A PERSON OF

22   SKILL IN THE ART WOULD NOT UNDERSTAND THOSE THREE REFERENCES IN

23   THE ONYON PATENT TO MULTER TO BE A SPECIFIC INCORPORATION BY

24   REFERENCE.

25          BUT EVEN IF YOUR HONOR DOESN'T AGREE WITH US ON THAT, WHEN

1    YOU GO TO LOOK AT WHAT MULTER ACTUALLY DISCLOSES, IT DOESN'T

2    DISCLOSE MULTIMEDIA INFORMATION.  IT DOESN'T DISCLOSE PHOTO,

3    VIDEO, OR AUDIO INFORMATION, WHICH IS WHAT'S REQUIRED IN THE

4    CLAIM.  EVEN APPLE ACKNOWLEDGES THAT.

5         MULTER DISCLOSES E-MAIL.

6         IF THIS IS ANTICIPATION, RIGHT, IT'S GOT TO MEET EACH AND

7    EVERY LIMITATION IN THE CLAIMS OF THE '757 PATENT, AND MULTER

8    DOESN'T DISCLOSE MULTIMEDIA, IT DOESN'T DISCLOSE AUDIO/VIDEO,

9    PHOTOGRAPHS.  THAT'S IN SCHONFELD DECLARATION PARAGRAPHS 55 AND

10   57.

11        AND MULTER, AT BEST, SHOWS SYNCHRONIZATION OF ONE DEVICE.

12        AND AS WE'VE HEARD, IT REQUIRES AT LEAST THE CAPABILITY,

13   THE '757 REQUIRES AT LEAST THE CAPABILITY OF AUTOMATIC

14   SYNCHRONIZATION OF ALL DEVICES, AND NOWHERE -- THERE'S NO

15   EVIDENCE IN THE RECORD THAT APPLE EVEN ASSERTS THAT MULTER

16   MEETS THAT LIMITATION, THE CAPABILITY ASPECT.

17        SO AT THE VERY LEAST, THERE ARE GENUINE ISSUES OF FACT AS

18   TO SEVERAL DIFFERENT ISSUES WITH RESPECT TO THEIR ANTICIPATION

19   DEFENSE.

20        THE COURT:  YEAH, I KNOW.

21   I'M GOING TO DENY SUMMARY JUDGMENT ON THIS.

22   CAN WE MOVE ON?

23        MR. JOHNSON:  THANK YOU.

24        THE COURT:  OKAY.  THANK YOU.

25   ALL RIGHT.  LET'S GO TO '596.

 1              MR. WHITEHURST:  GOOD AFTERNOON, YOUR HONOR,

 2     ALAN WHITEHURST FOR SAMSUNG, AND I'M PREPARED TO ADDRESS THE

 3     '596 PATENT.  I PREPARED SLIDES, BUT I'M GUESSING AT THIS LATE

 4     HOUR YOU HAVE SPECIFIC QUESTIONS THAT YOU WOULD LIKE ANSWERED.

 5              THE COURT:  YES, THANK YOU.

 6          FIRST, WHY DIDN'T SAMSUNG SEEK CONSTRUCTION OF THE "DDI"

 7     TERM?

 8              MR. WHITEHURST:  WE DO BELIEVE THAT THIS MOTION TURNS

 9     ENTIRELY ON A CLAIM CONSTRUCTION DISPUTE, BUT AS MS. MAROULIS

10     ADDRESSED EARLIER, WE HAD TO PRIORITIZE OUR CLAIMS.  WE DIDN'T

11     UNDERSTAND FULLY UNTIL DURING DISCOVERY AND EXPERT REPORTS THAT

12     THIS ISSUE TURNED ON THIS CLAIM CONSTRUCTION, AND THAT'S THE

13     REASON WHY, YOUR HONOR.  THIS --

14              THE COURT:  WHY SHOULDN'T THE JURY DECIDE WHETHER THE

15     EARLIER APPLICATION SUPPORTS THE CLAIM?

16              MR. WHITEHURST:  WE BELIEVE THAT IT WOULD BE IMPROPER

17     TO SUBMIT THIS QUESTION TO THE JURY.  WE DO BELIEVE IT'S A

18     PURELY LEGAL QUESTION THAT TURNS ON A CLAIM CONSTRUCTION

19     DISPUTE.  UNDER O2 MICRO, WE BELIEVE THIS SHOULD BE DECIDED BY

20     THE COURT, NOT BY THE JURY.  THIS IS A CLAIM TERM THAT MAY

21     BE --

22              THE COURT:  BUT UNDER EPLUS AND FUNCTION MEDIA,

23     O2 MICRO HAS BEEN SORT OF SUPERSEDED.  IF YOU WAIVED YOUR CLAIM

24     CONSTRUCTION RIGHTS AT THE TIME OF MARKMAN, THEN THE COURT

25     DOESN'T HAVE TO CONSTRUE IT.

```
1                    MR. WHITEHURST:  WE DON'T BELIEVE THAT'S THE CASE.

2       WE DON'T BELIEVE THAT WE'VE WAIVED THIS CLAIM CONSTRUCTION.

3             WE DO BELIEVE THAT THIS CLAIM TERM MAY BENEFIT FROM A

4       MARKMAN HEARING, BUT IF WE DON'T HAVE A SEPARATE MARKMAN

5       HEARING, WE BELIEVE IT'S BEEN FULLY BRIEFED.  IT'S RIPE TO BE

6       DECIDED BY THE COURT.  IT'S A RELATIVELY STRAIGHTFORWARD ISSUE.

7       IT'S A CLASSIC CASE OF CLAIM DIFFERENTIATION.

8             YOU HAVE CLAIM 13, THE INDEPENDENT CLAIM.  WHEN YOU LOOK

9       AT CLAIM 13 --

10                   THE COURT:  BUT YOU'RE RELYING ON MARTEK, BUT THAT

11      WAS A JURY FINDING OF THE APPLICATION --

12                   MR. WHITEHURST:  IF I COULD PUT UP SLIDE --

13                   THE COURT:  -- FILING DATE.

14                   MR. WHITEHURST:  SLIDE 8, PLEASE.  IT'S INTERESTING,

15      BECAUSE THE FEDERAL CIRCUIT HAS ALREADY LOOKED AT FACTS THAT

16      ARE ALMOST IDENTICAL TO THE SITUATION BEFORE THE COURT NOW.  IN

17      A CASE, GOLIGHT VERSUS WAL-MART, THERE WERE BOTH NARROW AND

18      BROAD CLAIMS.  THE SPECIFICATION CONTAINED LANGUAGE ABOUT A

19      MECHANISM FOR ROTATING 360 DEGREES.

20            THE FEDERAL CIRCUIT LOOKED AT THIS ISSUE AND THEY DECIDED

21      THAT WHEN THE SPECIFICATION TALKS ABOUT THE ADVANTAGE USING

22      "FOR" LANGUAGE, THAT YOU DON'T READ THE LIMITATIONS OF A NARROW

23      CLAIM INTO THE BROADER CLAIM.

24            AND IF YOU GO TO THE NEXT SLIDE, IT'S UNCANNY AND

25      REMARKABLE HOW SIMILAR THIS CASE IS TO THE GOLIGHT CASE WHERE
```

1    THE FEDERAL CIRCUIT LOOKED AT THIS ISSUE AND, UNDER A SITUATION

2    VERY SIMILAR TO THE ONE BEFORE THE COURT NOW, DECIDED THAT THE

3    INDEPENDENT CLAIM IS NOT LIMITED TO THE LIMITATIONS IN THE

4    DEPENDENT CLAIM.

5            THE COURT:  ALL RIGHT.  THANK YOU.

6        LET ME ASK, THERE ARE A NUMBER OF PLACES IN THE '596 WHERE

7    IT DOES APPEAR THAT THE DDI IS THE SAME AS THE MULTIPLEXING

8    IDENTIFIER.

9            MR. LEE:  YOUR HONOR, I THINK I CAN ANSWER THAT --

10           THE COURT:  YEAH.

11           MR. LEE:  -- AND THEN I'LL RESPOND TO WHAT

12    MR. WHITEHURST SAID QUICKLY.

13        IN THE SLIDES WE JUST GAVE YOU, IF YOU WOULD TURN -- IF

14    YOU COULD TURN TO SLIDE 11, AND I ACTUALLY THINK THESE --

15    WHAT'S ON SLIDE 11 EXPLAINS EVERYTHING IN THE FILE THAT'S IN

16    THE PATENTS.

17        AS BACKDROP, AS YOUR HONOR KNOWS, THERE WAS AN ORIGINAL

18    APPLICATION IN NOVEMBER.  THERE WAS AN APPLICATION A MONTH

19    LATER, AND I'LL BRIEFLY EXPLAIN WHY THAT OCCURRED.

20        THE DDI DIDN'T APPEAR UNTIL THE SECOND APPLICATION, AND

21    THE SECOND APPLICATION ADDED THE FOLLOWING THREE THINGS:  IT

22    ADDED THE TERM "DDI"; IT ADDED THE SECOND EMBODIMENT; AND IT

23    ADDED THE THIRD EMBODIMENT.

24        NONE OF THOSE WERE IN THE FIRST APPLICATION IN NOVEMBER.

25    ALL OF THEM WERE ADDED IN DECEMBER.

1        AND WHEN THEY WERE ADDED, THEY SPECIFICALLY DISTINGUISHED

2   THE DDI IN THE NEW APPLICATION FROM THE MUX ID IN THE FORMER

3   APP -- IN THE PRIOR APPLICATION.

4            THE COURT:  DOESN'T THE THIRD EMBODIMENT -- IT SAYS,

5   "ACCORDING TO THE FIRST EXEMPLARY EMBODIMENT, A SPECIAL DDI

6   VALUE REPRESENTING," ET CETERA, ET CETERA.  IT SEEMS TO BE

7   SAYING THIS IS THE SAME AS WHAT'S IN THE FIRST EMBODIMENT,

8   WHICH WAS IN THE KOREAN PATENT.

9            MR. LEE:  NO, YOUR HONOR.  AND IF YOU LOOK -- IF I

10  DRAW YOUR ATTENTION TO SLIDE 11, AND THEN I'M GOING TO GO TO

11  THE PART WHERE THEY SAY THAT THEY'RE IDENTICAL, YOU'LL SEE THAT

12  THEY HAVE -- THERE ARE THREE PARTS TO EACH.  THE DDI HAS A

13  LOGICAL CHANNEL, A MAC-D FLOW, AND AN RLC PDU SIZE.  THE MUX ID

14  HAS A LOGICAL CHANNEL, A REORDERING QUEUE, AND A PDU SIZE.

15       SO FOR SURE THEY HAVE TWO THINGS THAT ARE THE SAME, THE

16  LOGICAL CHANNEL AND THE PDU SIZE.

17       THEY DIFFER IN THAT ONE HAS A MAC-D FLOW AND THE OTHER HAS

18  A REORDERING QUEUE, AND THEY ARE DIFFERENT AS THE EXPERT

19  DECLARATION BEFORE THE COURT DEMONSTRATES.

20       IF YOU GO TO THE PART THAT I THINK YOUR HONOR IS REFERRING

21  TO ON SLIDE 10, WHICH IS WHAT SAMSUNG RELIES UPON TO SAY

22  THEY'RE THE SAME, THERE ARE TWO IMPORTANT POINTS ABOUT THIS

23  PORTION FROM COLUMN 10, LINES 55 TO 61.

24       THIS IS -- THE FIRST IS, IF YOU LOOK AT THE SENTENCE

25  IMMEDIATELY BEFORE WHAT WE'VE HIGHLIGHTED, IT SAYS THE SECOND

```
1    EMBODIMENT IS DIFFERENT FROM THE FIRST, AND IT SAYS IT'S

2    DIFFERENT FROM THE FIRST FOR THE REASONS I TRIED TO ARTICULATE

3    A MOMENT AGO.

4         SAMSUNG RELIES UPON THE NEXT SENTENCE TO SAY THAT THEY ARE

5    THE SAME.

6         AND THERE ARE TWO IMPORTANT ASPECTS TO THIS, YOUR HONOR.

7    THE FIRST IS THIS SENTENCE WAS ALSO ADDED IN THE DECEMBER

8    APPLICATION.

9         BUT THE MANNER IN WHICH THEY SAY THEY'RE THE SAME IS

10   WHAT'S HIGHLIGHTED IN GREEN, AND IT SAYS THEY'RE IDENTICAL IN

11   VIEW THAT BOTH INCLUDE INFORMATION ABOUT THE SIZE OF THE RLC

12   PDU'S AND INFORMATION ABOUT AN UPPER LAYER TO WHICH THE RLC PDU

13   WILL BE TRANSMITTED.

14        THE COURT:  LET ME ASK YOU ABOUT, I'M LOOKING AT

15   COLUMN 1, LINE 22 THROUGH 24, "THE MULTIPLEXING IDENTIFIER 532

16   MAY BE A LOGICAL IDENTIFIER WHICH IS OBTAINED BY COMBINING A

17   LOGICAL CHANNEL IDENTIFIER, A REORDERING QUEUE IDENTIFIER, AND

18   PDU SIZE INFORMATION."

19        AND ON COLUMN 11, LINES -- THIS IS REALLY LINES 17 AND 18,

20   "THE DDI FIELD WHICH REPRESENTS A LOGICAL CHANNEL, A REORDERING

21   QUEUE, AND AN RLC PDU SIZE."  IT LOOKS -- LOGICAL CHANNEL,

22   REORDERING QUEUE, PDU SIZE INFORMATION.  IT LOOKS THE SAME.

23        MR. LEE:  I'M WITH YOU ON THE FIRST ONE.

24   AND THEN THE SECOND ONE, YOUR HONOR, WAS?

25        THE COURT:  OKAY.  LINE 8 -- SORRY.  COLUMN 8, LINES
```

```
1     22 TO 24, AND THEN COLUMN 11, LINES 17 AND 18.

2              MR. LEE:  COLUMN 11, LINES 17 AND 18?

3              THE COURT:  YES.  IT'S THE PARENTHETICAL THAT

4     DESCRIBES THE DDI FIELD HAVING A LOGICAL CHANNEL, A REORDERING

5     QUEUE, AND RLC PDU SIZE.

6              MR. LEE:  AND YOUR HONOR, IF YOU READ THAT IN THE

7     CONTEXT OF WHAT'S IMMEDIATELY BEFORE THAT, IF I TURN YOU BACK

8     TO COLUMN 10, IF I COULD --

9              THE COURT:  OKAY.

10             MR. LEE:  -- BECAUSE THIS IS DESCRIBING WHAT FOLLOWS,

11    AND IF YOU LOOK AT COLUMN 10, WHAT IT SAYS IS THAT --

12             THE COURT:  YOU'RE LOOKING AT 63 THROUGH 64?

13             MR. LEE:  WELL, ACTUALLY, I'M GOING THROUGH --

14             THE COURT:  I AGREE WITH YOU.  I JUST THINK THAT

15    THERE ARE CONTRADICTORY STATEMENTS IN THIS SAME PATENT, SOME

16    INSTANCES WHERE THEY DO SEEM TO BE THE SAME, AND I AGREE WITH

17    YOU ON COLUMN 10, LINE 63 AND 64, IT APPEARS THAT THEY'RE

18    DIFFERENT.

19         BUT IT JUST SEEMS LIKE THERE'S CONTRADICTORY STATEMENTS,

20    SO WHAT AM I SUPPOSED TO DO WITH THAT?

21             MR. LEE:  YOUR HONOR, ACTUALLY I THINK IT GOES BACK

22    TO A QUESTION YOU ASKED OF MR. WHITEHURST.  I THINK ACTUALLY

23    THAT SAMSUNG HAD THE POWER OF THE PEN.  IT PUT THESE IN AND A

24    CONFUSION RESULTS, THE SENTENCE CONFUSION RESULTS FROM THEIR

25    HAVING THE POWER OF THE PEN.
```

1     TO THE EXTENT THERE'S A QUESTION, IT'S A QUESTION FOR THE

2     JURY TO DECIDE, AND THE JURY CAN DECIDE WHETHER THEY GET THE

3     BENEFIT OF THAT EARLIER APPLICATION OR NOT.

4     THE JURY IS GOING TO HEAR ABOUT THOSE QUESTIONS IN ANY

5     EVENT BECAUSE THIS IS A STANDARD ESSENTIAL PATENT, YOUR HONOR,

6     AND ONE OF THE DEFENSES THAT WILL BE LITIGATED -- IF I COULD GO

7     TO SLIDE 13?

8     YOUR HONOR, THE CHRONOLOGY, IF I START WITH NOVEMBER -- IF

9     I START WITH OCTOBER AND NOVEMBER OF 2004, QUALCOMM AND SOME

10    OTHERS PROPOSE THE STANDARD SETTING BODY'S USE OF A DDI.

11    SAMSUNG FILED THE APPLICATION DESCRIBING MUX ID IN

12    NOVEMBER OF 2004, AND THEN WHAT HAPPENED IN THE MONTH OF

13    NOVEMBER 2004 IS SAMSUNG PROPOSED THE MUX ID; THE WORKING GROUP

14    PROPOSED -- I'M SORRY.  QUALCOMM PROPOSED THE DDI, THE WORKING

15    GROUP DECIDED TO USE THE DDI, AND THEN ALL OF A SUDDEN, LIKE

16    MAGIC, IN DECEMBER OF 2004, THE NEW APPLICATION SAYS DDI.

17    THOSE FACTS ARE GOING TO GET LITIGATED IN ANY EVENT.

18    TO THE EXTENT THERE'S A QUESTION ABOUT THIS CONTRADICTION

19    THAT YOUR HONOR HAS IDENTIFIED, TO THE EXTENT THERE'S ANY LACK

20    OF CLARITY IN WHAT THEY'VE SAID AND WHAT THEY'VE ADDED, THAT'S

21    A QUESTION A JURY OUGHT TO RESOLVE AND THE JURY CAN THEN DECIDE

22    THE PRIORITY DATE.

23    THE COURT:  I AGREE WITH YOU.  YOU'RE GOING TO WIN ON

24    THIS ONE.

25    MR. LEE:  THANK YOU.

```
1              THE COURT:  ALL RIGHT.  LET'S GO TO THE '414 --

2              MR. WHITEHURST:  YOUR HONOR --

3              THE COURT:  -- WHICH I THINK IS THE HARDEST ONE.

4              MR. WHITEHURST:  -- MAY I BRIEFLY RESPOND, TWO

5     MINUTES?

6              THE COURT:  HOW ABOUT ONE MINUTE?

7              MR. WHITEHURST:  I'LL KEEP IT VERY BRIEF.

8         IF YOU'LL PUT UP SLIDE 10.

9         I THINK YOU HIT ON A VERY IMPORTANT POINT.  MR. LEE TALKED

10    ABOUT THE POWER OF THE PEN.  BUT WHAT HE DIDN'T MENTION IS

11    UNDER THE INTERDIGITAL CASE AND OTHER CASES LIKE IT, IT TALKS

12    ABOUT THE PRESUMPTION UNDER THE DOCTRINE OF CLAIM

13    DIFFERENTIATION THAT DEPENDENT CLAIMS ARE NOT READ INTO THE

14    INDEPENDENT CLAIMS, AND IN THIS SITUATION, IT'S APPLE, NOT

15    SAMSUNG, THAT NEEDS TO POINT TO THE INTRINSIC RECORD TO

16    OVERCOME THIS HIGH BAR.

17        AND WHEN YOU LOOK AT PARAGRAPHS LIKE THE ONE ON THE SCREEN

18    IN FRONT OF YOU THAT MR. LEE POINTED TO -- I WAS TRYING TO

19    THINK OF AN ANALOGY THAT WOULD HELP THE COURT.  WHAT THE

20    PARAGRAPH IS TALKING ABOUT HERE IS THE DDI, THE MUX ID.

21    THEY'RE CARS.  THEY'RE BOTH LOGICAL IDENTIFIERS.

22        AT OTHER POINTS IN THE SPECIFICATION, IT TALKS ABOUT

23    SLIGHT NUANCES OR SLIGHT DIFFERENCES DEPENDING ON THE CONTEXT.

24    FOR EXAMPLE, A CAR MAY BE AN SUV OR IT MAY BE A STATION WAGON,

25    BUT IT'S STILL SAYING THEY'RE CARS, CARS, CARS.  AND IN FACT,
```

```
1    IN SOME INSTANCES THE STATION WAGON AND SUV MAY BE ONE AND THE

2    SAME.

3         SO THAT'S WHAT THE SPECIFICATION IS DOING HERE.  IT'S

4    DRAWING ALL THESE SIMILARITIES BETWEEN THE DDI AND THE MUX ID,

5    AND APPLE CAN'T POINT TO ANYTHING TO OVERCOME THIS DOCTRINE OF

6    CLAIM DIFFERENTIATION WHERE IT'S PRESUMED THAT THE DEPENDENT

7    CLAIMS ARE NOT INCORPORATED INTO THE INDEPENDENT CLAIMS.

8              THE COURT:  ALL RIGHT.  THANK YOU.

9         OKAY.  LET'S GO TO THE LAST PATENT.

10             MR. KREVITT:  YOUR HONOR, THERE ARE TWO MOTIONS WITH

11   RESPECT TO THE '414, AS YOU KNOW.

12             THE COURT:  UM-HUM.

13             MR. KREVITT:  THE ONE THAT I THOUGHT I WOULD ADDRESS

14   FIRST IS APPLE'S MOTION FOR INFRINGEMENT OF CLAIM 20.

15        CAN WE HAVE THE SLIDES?

16        SO IF WE TURN, AND I'LL -- I WANT TO MAKE SURE I ADDRESS

17   ANY QUESTIONS YOUR HONOR HAS, OF COURSE, BUT MAYBE I'LL JUST

18   SET THE STAGE.

19             THE COURT:  WELL, WHY DON'T I ASK MY QUESTIONS?

20   SORRY.  IT'S JUST THAT WE HAVE QUITE A BIT TO COVER.

21             MR. KREVITT:  NO, NO.  PLEASE.

22             THE COURT:  AND IT WOULD JUST BE HELPFUL.

23        I'M UNCLEAR ON IF YOU'RE WANTING THE COURT TO HAVE A JURY

24   DISPUTE THE CLAIM AS AN ORDINARY MEANING OF "CONFIGURED TO

25   SYNCHRONIZE STRUCTURED DATA," OR IF YOU WANT A CONSTRUCTION OF
```

1    "CONFIGURED TO" THAT JUST SAYS YOU CAN CAUSE SOMETHING ELSE TO

2    DO THE SYNCHRONIZATION AND NOT DO THE SYNCHRONIZATION YOURSELF.

3    WHAT'S YOUR POSITION?

4         MR. KREVITT:  WE HAVE NOT AFFIRMATIVELY ASKED FOR A

5    CLAIM CONSTRUCTION, YOUR HONOR.

6         THE COURT:  OKAY.

7         MR. KREVITT:  IT IS OUR VIEW THAT THE

8    NON-INFRINGEMENT ARGUMENT THAT SAMSUNG IS ADVANCING, THE CHIEF

9    NON-INFRINGEMENT ARGUMENT -- THERE ARE A FEW AT THE END OF

10   THEIR BRIEF FOR WHICH THEIR EXPERT OFFERS NO OPINION -- BUT THE

11   CHIEF NON-INFRINGEMENT ARGUMENT REGARDING WHETHER THE

12   SYNCHRONIZATION SOFTWARE COMPONENTS MUST PERFORM THE

13   SYNCHRONIZATION OR IT'S SUFFICIENT TO CAUSE THE SYNCHRONIZATION

14   TO OCCUR --

15        THE COURT:  YEAH.

16        MR. KREVITT:  -- THAT THE NON-INFRINGEMENT ARGUMENT

17   IS BASED ON A CLAIM CONSTRUCTION ARGUMENT THAT SAMSUNG IS

18   OFFERING.

19        AND THE REASON I SAY THAT, YOUR HONOR, IS -- IF I CAN TURN

20   TO THE SLIDES -- THE CLAIM CLEARLY REQUIRES -- SLIDE 2 -- 3,

21   EXCUSE ME.

22        THE COURT:  SO IF YOU DON'T WANT A CONSTRUCTION OF

23   "CONFIGURED TO," THEN WHY CAN'T THIS JUST GO TO THE JURY AND

24   THE JURY CAN DECIDE WHETHER THERE HAS TO BE SYNCHRONIZATION

25   DIRECTLY OR WHETHER THE SYNCHRONIZING, WAS IT A SOFTWARE

1      COMPONENT, CAN JUST CAUSE THE SYNCHRONIZATION BY ANOTHER

2      COMPONENT.

3              MR. KREVITT:  AND HERE'S WHY, YOUR HONOR.  THERE'S NO

4      FACTUAL DISPUTE -- THERE'S NO FACT ISSUE FOR THE JURY TO

5      DECIDE.  THE -- IN THIS RESPECT:  APPLE CONTENDS THAT THE SYNC

6      ADAPTERS IN SAMSUNG'S PRODUCTS DO PERFORM SYNCHRONIZATION, NOT

7      ONLY CAUSE SYNCHRONIZATION, BUT ACTUALLY PERFORM

8      SYNCHRONIZATION.

9          BUT FOR PURPOSES OF THIS MOTION, IT IS ENOUGH THAT THEY

10     CAUSE THE SYNCHRONIZATION.

11         SO IF WE READ OUT THAT FACT ISSUE ALTOGETHER AND WE

12     ACCEPT, FOR PURPOSES OF THIS MOTION, THAT SAMSUNG HAS AT LEAST

13     THREE SYNC ADAPTERS AS REQUIRED BY THE CLAIMS, AND THE ONLY

14     QUESTION THEN -- AND THAT THOSE SYNC ADAPTERS CAUSE, DIRECT THE

15     SYNCHRONIZATION, IF WE ACCEPT THOSE FACTS AND THOSE ARE

16     SAMSUNG'S FACTUAL ALLEGATIONS REGARDING ITS OWN PRODUCT, IF WE

17     ACCEPT THOSE FACTS, THE PRODUCTS INFRINGE.

18         SO IT'S A CLAIM CONSTRUCTION QUESTION, OR IT'S AT LEAST A

19     LEGAL QUESTION, YOUR HONOR.  THERE ARE NO FACTS FOR THE JURY TO

20     DETERMINE.  WE ARE ACCEPTING, FOR PURPOSES OF THIS MOTION,

21     SAMSUNG'S FACTUAL ALLEGATIONS, AND THAT'S THE KEY FOR --

22             THE COURT:  BUT I THOUGHT YOU'RE ALSO ARGUING THAT

23     THE SPECIFICATION DOESN'T REQUIRE DIRECT SYNCHRONIZATION.

24             MR. KREVITT:  YES, YOUR HONOR, AND THAT'S PRECISELY

25     THE POINT.  SO I HAVEN'T MADE THAT CLEAR YET, I SEE.

1    SO THE POINT IS THERE ARE NO FACT ISSUES -- LET'S ACCEPT

2    FOR THE MOMENT THAT SAMSUNG'S PRODUCTS HAVE SYNC ADAPTERS AND

3    THOSE SYNC ADAPTERS DIRECT THE SYNCHRONIZATION.

4    SAMSUNG'S ARGUMENT IS THAT BY DIRECTING THE

5    SYNCHRONIZATION, THE PRODUCTS DON'T FALL WITHIN THE SCOPE OF

6    THE CLAIMS.  THEY ARE NOT CONFIGURED TO SYNCHRONIZE.

7    IF WE FLIP TO SLIDE 6, SO SAMSUNG CONTENDS THAT A

8    COMPONENT THAT DIRECTS OTHER COMPONENTS TO PERFORM THE

9    SYNCHRONIZATION IS NOT CONFIGURED TO SYNCHRONIZE.  THAT'S JUST

10   A CLAIM APPLICATION QUESTION AND THERE ARE NO FACT DISPUTES.

11   NOTHING IN CLAIM 20 REQUIRES THAT THE COMPONENTS ACTUALLY

12   PERFORM THE PARTICULAR OPERATIONS IN ORDER TO BE CONFIGURED TO

13   SYNCHRONIZE.

14   THE BLACKED OUT PORTION, YOUR HONOR, IF YOU TURN TO SLIDE

15   6 OF THE SLIDE DECK I HANDED UP, YOU'LL SEE THE NAME OF THE

16   OPERATION THAT THE SYNC ADAPTERS IN SAMSUNG'S PRODUCTS PERFORM.

17   THEY PERFORM THAT OPERATION ENTITLED WHAT IS SET FORTH

18   THERE, AND IN DOING SO, AT A MINIMUM -- AND AGAIN, ON THIS

19   POINT THERE IS NO FACTUAL DISPUTE -- THEY DIRECT THE

20   SYNCHRONIZATION.

21   IF WE TURN TO THE NEXT SLIDE.

22   SO SAMSUNG'S NON-INFRINGEMENT ARGUMENT IS NOT A FACTUAL

23   NON-INFRINGEMENT ARGUMENT.  IT IS A CLAIM CONSTRUCTION

24   NON-INFRINGEMENT ARGUMENT.

25   WHAT THEY HAVE DONE IS THEY HAVE CHANGED THE CLAIM FROM

```
 1      "CONFIGURED TO SYNCHRONIZE," WHICH THE SYNC ADAPTERS CLEARLY

 2      ARE INSOFAR AS THEY CAUSE THE SYNCHRONIZATION, TO REQUIRE THAT

 3      THE SYNC ADAPTERS ACTUALLY PERFORM THE SYNCHRONIZATION

 4      OPERATIONS.

 5           THAT'S NOT WHAT THE CLAIM SAYS.

 6           SO WHY ARE WE ADDRESSING THE SPECIFICATION AS YOUR HONOR

 7      ASKED?

 8           THE REASON WE'RE ADDRESSING THE SPECIFICATION IS BECAUSE

 9      SAMSUNG'S CLAIM CONSTRUCTION ARGUMENT THAT THE "CONFIGURED TO

10      SYNCHRONIZE" REQUIRES ACTUAL PERFORMANCE OF THE SYNCHRONIZATION

11      OPERATIONS IS DIRECTLY PRECLUDED BY THE SPECIFICATION.

12           IF WE GO TO THE NEXT SLIDE, THE SPECIFICATION DISCLOSES

13      SYNCHRONIZATION SOFTWARE COMPONENTS.  THEY'RE CALLED -- I'M

14      SORRY.  THEY'RE CALLED SYNC AGENTS IN THE SPECIFICATION, AND

15      THE SYNC AGENTS, WHICH AGAIN THE PATENT DESCRIBES EXPLICITLY AS

16      SYNCHRONIZATION SOFTWARE COMPONENTS, DO NOT PERFORM

17      SYNCHRONIZATION THEMSELVES.  RATHER, THEY DIRECT OTHER

18      COMPONENTS TO DO THE SYNCHRONIZATION.

19           AND HERE WE HAVE, YOUR HONOR -- THIS IS RIGHT OUT OF

20      SAMSUNG'S BRIEF, ALBEIT FROM THE OTHER '414 MOTION -- SAMSUNG

21      IS DESCRIBING THE SYNC AGENT THAT I JUST MENTIONED.  IT IS A

22      SOFTWARE SYNCHRONIZATION COMPONENT THAT DIRECTS OTHER

23      COMPONENTS TO PERFORM THE SYNCHRONIZATION.

24           THIS IS SAMSUNG'S BRIEF AT THE BOTTOM OF SLIDE 8.  "THE

25      '414 PATENT DISCLOSES A SYNC AGENT COORDINATING CENTRAL
```

```
1      SYNCHRONIZATION ACTIVITY, AND MULTIPLE DATA SOURCES, WHICH

2      PERFORM CLASS-SPECIFIC OPERATIONS."

3           SO YOU HAVE A SOFTWARE SYNCHRONIZATION COMPONENT DISCLOSED

4      EXPLICITLY IN THE SPECIFICATION THAT DIRECTS OTHER COMPONENTS

5      TO PERFORM THE SYNCHRONIZATION, AND YET FALLS WITHIN THE SCOPE

6      OF THE CLAIMS BECAUSE IT IS EXPLICITLY LABELED AS SOFTWARE

7      SYNCHRONIZATION COMPONENT.

8           IF WE GO TO THE NEXT SLIDE, YOU'LL SEE, YOUR HONOR, THIS

9      IS RIGHT OUT OF THE PATENT, AND THIS EXPLAINS HOW THE SYNC

10     AGENT --

11          THE COURT:  BUT I'M LOOKING AT CLAIM 20 AND I'M

12     LOOKING AT FIGURE 4 AND IT LOOKS LIKE FIGURES 13, 15 -- I MEAN

13     113, 115, AND 117 ARE THE SYNCHRONIZATION SOFTWARE COMPONENTS

14     AND THEY'RE THE ONES THAT ARE DOING THE ACTUAL SYNCHRONIZATION.

15          THE SYNC AGENT, WHICH IS 109, IS NOT THE SYNCHRONIZATION

16     SOFTWARE COMPONENT.  CLAIM 20 REQUIRES THAT THERE BE MULTIPLE

17     SYNCHRONIZATION SOFTWARE COMPONENTS, SO IT CAN'T BE 109 BECAUSE

18     THAT'S SINGULAR.

19          SO ON CLAIM 20, THE SYNCHRONIZATION SOFTWARE COMPONENTS

20     ARE PLURAL AND THEY ARE THE ONES THAT ARE DIRECTLY DOING THE

21     SYNCHRONIZATION WITH 119, 121, AND 123.

22          MR. KREVITT:  YOUR HONOR, SEVERAL RESPONSES.

23          THE COURT:  OKAY.

24          MR. KREVITT:  FIRST, CLAIM 20 DEPENDS FROM CLAIM 11

25     WHICH HAS A SINGULAR SOFTWARE SYNCHRONIZATION COMPONENT.  THE
```

1       SOFTWARE SYNCHRONIZATION COMPONENT IN CLAIM 11 IN TERMS OF WHAT

2       IS A SOFTWARE SYNCHRONIZATION COMPONENT NEED NOT BE PLURAL.

3               THE PATENT ITSELF AT COLUMN -- FOR EXAMPLE, AT COLUMN 25,

4       LINE 16 EXPLICITLY REFERS TO THE SYNC AGENT AS A

5       SYNCHRONIZATION SOFTWARE COMPONENT, AND SAMSUNG, IN ITS

6       BRIEFING, IN SAMSUNG'S BRIEFING, REFERS TO THE SYNC AGENT AS A

7       SYNCHRONIZATION SOFTWARE COMPONENT.

8               SO THERE IS NO DISPUTE IN THE PATENT OR BETWEEN THE

9       PARTIES THAT THE SYNC AGENT IN FIGURE 4 IS A SOFTWARE

10      SYNCHRONIZATION COMPONENT, AND THE SYNCHRONIZATION SOFTWARE

11      COMPONENT, THE SYNC AGENT, DIRECTS THESE OTHER DATA -- THESE

12      OTHER --

13              THE COURT:  I DON'T THINK THAT'S TRUE.  LOOK AT CLAIM

14      20, "THE STORAGE MEDIUM AS IN CLAIM 11 WHEREIN THE

15      SYNCHRONIZATION SOFTWARE COMPONENT IS CONFIGURED TO SYNCHRONIZE

16      STRUCTURED DATA OF A FIRST DATA CLASS AND OTHER SYNCHRONIZATION

17      SOFTWARE COMPONENTS ARE CONFIGURED TO SYNCHRONIZE STRUCTURED

18      DATA OF OTHER CORRESPONDING DATA CLASSES."

19              SO THERE HAS TO BE MULTIPLE SYNCHRONIZATION SOFTWARE

20      COMPONENTS IN CLAIM 20, AND IT'S CLEAR THERE'S ONLY ONE SYNC

21      AGENT IN FIGURE 4, SO IT JUST CANNOT BE PLURAL.  SO SYNC AGENT

22      CANNOT BE -- CANNOT CONSTITUTE THIS PLURALITY OF

23      SYNCHRONIZATION SOFTWARE COMPONENTS.

24              MR. KREVITT:  NO.  THAT'S RIGHT, YOUR HONOR.  CLAIM

25      20 REQUIRES MULTIPLE SYNCHRONIZATION SOFTWARE COMPONENTS.

```
 1            THE POINT IS DIFFERENT, AND SAMSUNG ADDRESSES IT IN A

 2     DIFFERENT WAY THAN YOUR HONOR DOES, WHICH I'D LIKE TO ADDRESS.

 3            THE POINT IS SIMPLY WHETHER THE PATENT DISCLOSES A

 4     SOFTWARE SYNCHRONIZATION COMPONENT.  THAT'S THE QUESTION,

 5     WHETHER A SOFTWARE SYNCHRONIZATION COMPONENT, IN ORDER TO BE

 6     CONFIGURED TO SYNCHRONIZE, WHICH IS IN EVERY CLAIM IN THE

 7     PATENT, INCLUDING CLAIM 11 WHEN IT'S SINGULAR FROM WHICH CLAIM

 8     20 DEPENDS, WHETHER THE WORDS "CONFIGURED TO SYNCHRONIZE" --

 9     AND THAT'S THE QUESTION BEFORE THE COURT -- REQUIRE ACTUAL

10     PERFORMANCE OF THE SYNCHRONIZATION.

11            AND THE PATENT MAKES CLEAR THAT THE SYNC AGENT IS A

12     SOFTWARE SYNCHRONIZATION COMPONENT, AND IT DIRECTS THE

13     SYNCHRONIZATION, BUT DOES NOT ITSELF PERFORM THE

14     SYNCHRONIZATION.

15            SO WE KNOW THAT SAMSUNG'S ARGUMENT CANNOT BE RIGHT THAT

16     THE SCOPE OF THE TERM "CONFIGURED TO SYNCHRONIZE" REQUIRES

17     PERFORMANCE OF THE SYNCHRONIZATION OPERATIONS.

18            AND IF YOU --

19            THE COURT:  OKAY.  I'D LIKE TO -- WHO IS -- OKAY.

20     I'D LIKE TO GIVE YOU AN OPPORTUNITY TO RESPOND.

21            APPLE'S NOT ASSERTING CLAIM 11, SO WHAT WE HAVE IS CLAIM

22     20, WHICH DOES REQUIRE A MULTIPLICITY OF SYNCHRONIZATION

23     SOFTWARE COMPONENTS.

24            SO --

25            MR. PAK:  ABSOLUTELY, YOUR HONOR, AND I WOULD JUST
```

1    LIKE TO ADD -- IF WE CAN BRING UP THE LANGUAGE OF CLAIM 20 ON

2    THE SCREEN -- YOUR HONOR IS ABSOLUTELY RIGHT THAT CLAIM 20

3    REQUIRES THREE DIFFERENT SYNCHRONIZATION SOFTWARE COMPONENTS,

4    AND THE LANGUAGE THAT IS CRITICAL TO THE ANALYSIS OF WHAT

5    CONSTITUTES THESE CLAIMED SYNCHRONIZATION SOFTWARE COMPONENTS

6    IS THE FOLLOWING:  "IS CONFIGURED TO SYNCHRONIZE STRUCTURED

7    DATA OF A FIRST DATA CLASS."

8        SO NOW THIS IS NOT JUST ANY TYPE OF SYNCHRONIZATION

9    COMPONENT, BUT IT'S A SYNCHRONIZATION COMPONENT THAT IS

10   SYNCHRONIZING DATA OF A FIRST DATA CLASS, AND THEN YOU HAVE TO

11   HAVE AT LEAST TWO OTHER SYNCHRONIZATION SOFTWARE COMPONENTS

12   THAT CORRESPOND TO SYNCHRONIZATION OF DATA OF OTHER

13   CORRESPONDING DATA CLASSES.

14       AND THIS IS IMPORTANT BECAUSE IF YOUR HONOR GOES BACK TO

15   THE SAME FIGURE YOU WERE EXAMINING, WHICH WAS FIGURE 4, APPLE'S

16   COUNSEL POINTED YOU TO THE SYNC AGENT, AND YOU CAN SEE, AS

17   DESCRIBED IN THIS FIGURE, AS WELL AS IN THE TEXT OF THE PATENT,

18   THE SYNC AGENT IS AGNOSTIC TO THE TYPE OF DATA.  IT IS A MIDDLE

19   LAYER COMPONENT THAT SITS ON THE TOP.

20       BUT AS YOU CAN SEE, THE CALENDAR DATA SOURCE, THE CONTACTS

21   DATA SOURCE, AND OTHER DATA SOURCES ARE THE ONES THAT ARE

22   CONFIGURED TO SYNCHRONIZE WITH DATA OF A PARTICULAR CLASS.  ALL

23   OF THOSE COMPONENTS PERFORM SYNCHRONIZATION TASKS.

24       AND, YOUR HONOR, TO THE BASIC ISSUE OF THIS IS A SUMMARY

25   JUDGMENT MOTION THAT APPLE HAS BROUGHT, IF THERE ARE ANY

```
 1      GENUINE FACTUAL DISPUTES AMONG EXPERTS OR BECAUSE OF TESTIMONY

 2      OR SOURCE CODE, THIS IS A PROPER ISSUE FOR A TRIAL.

 3           AND, YOUR HONOR --

 4                THE COURT:  WELL, LET ME ASK YOU A QUESTION.

 5                MR. PAK:  YES, ABSOLUTELY.

 6                THE COURT:  LET'S GO TO COLUMN 10 HERE, LINES 61

 7      THROUGH 67, "IN ONE EMBODIMENT, THE DATA CLASS HANDLERS MAY NOT

 8      DIRECTLY CAUSE THE STORAGE AND RETRIEVAL OF STRUCTURED DATA

 9      FROM DATA STORES ON THE POST.  THEY TRANSMIT MESSAGES TO THE

10      SYNC CLIENT 111 WHICH IN TURN REQUESTS THE SYNC SERVICES 141

11      WHICH MAY IN TURN DIRECTLY OR INDIRECTLY CAUSE RETRIEVAL AND

12      STORAGE FROM THE CALENDAR STORED DATABASE 143A OR THE CONTACTS

13      STORED DATABASE 145A OR OTHER STORED DATABASE 147A."

14           THAT SEEMS TO SUPPORT APPLE'S POSITION THAT THE

15      SYNCHRONIZATION SOFTWARE COMPONENT ITSELF DOESN'T HAVE TO DO

16      THE SYNCHRONIZATION, THAT IT CAN INDIRECTLY CAUSE SOME OTHER

17      COMPONENT TO ACTUALLY DO THE SYNCHRONIZATION.

18           WHAT'S YOUR RESPONSE TO THAT?

19                MR. PAK:  MY RESPONSE IS TWO-FOLD, YOUR HONOR.

20                THE COURT:  OKAY.

21                MR. PAK:  NUMBER ONE, THIS IS REALLY AN ISSUE THAT

22      TURNS ON WHETHER APPLE CONTENDED INITIALLY IN THEIR FILING OR

23      WE'RE CONTENDING THAT ALL SYNCHRONIZATION OPERATIONS HAVE TO BE

24      PERFORMED FOR A SYNCHRONIZATION COMPONENT.  THAT IS NOT TRUE.

25           WE AGREE THAT COMPONENT, ONE COMPONENT CAN DIRECT ANOTHER
```

```
 1          COMPONENT TO PERFORM CERTAIN TASKS.

 2              WHAT IS ABSOLUTELY TRUE IS IF YOU LOOK AT COLUMN -- SLIDE

 3          7 OF OUR SLIDES, MR. FISHER --

 4                  THE COURT:  WAIT, I'M SORRY.  I DIDN'T UNDERSTAND

 5          THAT.  YOU'RE SAYING YOU THINK THAT A SYNCHRONIZATION SOFTWARE

 6          COMPONENT CAN CAUSE ANOTHER COMPONENT TO DO THE

 7          SYNCHRONIZATION?

 8                  MR. PAK:  THE WORD "SYNCHRONIZATION" INVOLVES A

 9          NUMBER OF TASKS.

10                  THE COURT:  OKAY.

11                  MR. PAK:  THAT'S THE NUMBER ONE POINT.  SO

12          SYNCHRONIZATION IS NOT ONE THING.

13                  THE COURT:  OKAY.

14                  MR. PAK:  IT'S A SERIES OF TASKS.  IT INVOLVES, FOR

15          EXAMPLE, DETECTING WHETHER THERE ARE CHANGES IN THE DATA, IT

16          INVOLVES SETTING UP THE NEW DATABASE WHERE YOU WANT TO WRITE

17          THAT CHANGE, IT INVOLVES RECONCILING THE DATA.  THERE'S A HOST

18          OF OPERATIONS THAT ARE INVOLVED IN WHAT'S CALLED

19          SYNCHRONIZATION.

20              WHAT'S IMPORTANT IS THAT EVEN IN THE SYNC ADAPTER

21          COMPONENT THAT APPLE HAS IDENTIFIED, THAT SYNC AGENT DOES A

22          NUMBER OF THINGS.  ALL SYNCHRONIZATION OPERATIONS -- SOME OF

23          THOSE OPERATIONS MAY DIRECT OR CAUSE INDIRECT OPERATIONS TO

24          OCCUR.

25              BUT THERE'S NO QUESTION THAT THE SYNC AGENT ITSELF ALSO
```

1    PERFORMS SOME SYNCHRONIZATION OPERATIONS.  THAT'S WHAT MAKES IT

2    A SYNCHRONIZATION COMPONENT.  NUMBER ONE.

3        THE SECOND -- SO, YOUR HONOR, IF YOU --

4        THE COURT:  SO YOU'RE SAYING IN FIGURE 4, YOU DO

5    THINK THAT 109, THE SYNC AGENT, IS A SYNCHRONIZATION SOFTWARE

6    COMPONENT?

7        MR. PAK:  FOR CLAIM 11, BUT NOT OF CLAIM 20.

8        THE COURT:  OKAY.

9        MR. PAK:  CLAIM 20 IS THE CLAIM THAT WE'RE TALKING

10    ABOUT.  CLAIM 11 IS NOT ONE THAT THEY'RE ASSERTING.

11        THE COURT:  OKAY.  BUT WHAT DOES IT MATTER THAT CLAIM

12    20 IS A DEPENDENT CLAIM OF CLAIM 11?  WHAT'S THE CONSEQUENCE OF

13    THAT?

14        MR. PAK:  THE IMPORTANCE OF THAT, YOUR HONOR, IS THAT

15    CLAIM 20 NOW ADDS A SPECIFIC LIMITATION THAT THE

16    SYNCHRONIZATION IS NOT JUST A SYNCHRONIZATION COMPONENT.  IT'S

17    A SYNCHRONIZATION COMPONENT OF A PARTICULAR DATA CLASS.

18        AND SO ALL OF THE ELEMENTS IN FIGURE 4 THAT QUALIFY AS

19    CLAIM 20 SYNCHRONIZATION COMPONENTS --

20        THE COURT:  BLESS YOU.

21        MR. PAK:  -- THAT PERFORM SYNCHRONIZATION OF A

22    PARTICULAR DATA CLASS ALL PERFORM SYNCHRONIZATION TASKS THAT

23    ARE RELATED TO A PARTICULAR DATA CLASS.

24        AND THE FACTUAL DISPUTE, YOUR HONOR, IS THIS:  APPLE'S

25    EXPERT -- AND THIS IS REALLY THE ENTIRE FOUNDATION FOR THEIR

```
1        ARGUMENT IS SOMEHOW THAT WE'RE THE ONES THAT HAD COME UP WITH

2    THIS PERFORMS SYNCHRONIZATION ANALYSIS.

3            THAT'S NOT TRUE, YOUR HONOR.  IT'S ACTUALLY APPLE'S

4    EXPERT.

5            AND LET'S PUT UP SLIDE 3.

6            AND THIS IS WHY --

7            THE COURT:  I'M STILL KIND OF CONFUSED BY YOUR

8    ARGUMENT.  SO YOU'RE SAYING IT'S OKAY FOR THE SYNCHRONIZATION

9    SOFTWARE COMPONENT TO DIRECT OTHER COMPONENTS TO PERFORM THE

10   SYNCHRONIZATION --

11           MR. PAK:  IF I MAY --

12           THE COURT:  -- UNDER CLAIM 20, BUT THAT

13   SYNCHRONIZATION SOFTWARE COMPONENT HAS TO BE A SPECIFIC CLASS

14   OF DATA.

15           MR. PAK:  THERE ARE TWO --

16           THE COURT:  I GUESS I'M STILL NOT CLEAR ON WHAT

17   DISTINCTION YOU'RE MAKING.

18           MR. PAK:  YOUR HONOR, LET ME BE MUCH MORE PRECISE.

19   WHEN I SAY "SYNCHRONIZATION," I'M REFERRING TO A HOST OF

20   OPERATIONS AS WE TALKED ABOUT.

21           THE COURT:  OKAY.

22           MR. PAK:  WHAT IS ABSOLUTELY CLEAR IN THE RECORD IS

23   THAT EVERYTHING THAT'S BEEN IDENTIFIED AS A SYNCHRONIZATION

24   COMPONENT HAS TO DO AT LEAST SOME OF THE OPERATIONS THAT

25   PERFORM SYNCHRONIZATION.  IT MAY NOT HAVE TO DO ALL OF THEM.
```

1      IT MAY DIRECT OTHER COMPONENTS TO DO SOME OF THOSE OPERATIONS.

2              THE COURT:  OH, BUT IT HAS TO DO SOME?

3              MR. PAK:  ABSOLUTELY.

4              THE COURT:  OKAY.  BUT NOT UNDER CLAIM 11.  UNDER

5      CLAIM 11, YOU'RE SAYING IT'S OKAY TO ALMOST INDIRECTLY CAUSE

6      OTHER COMPONENTS TO DO SYNCHRONIZATION?

7              MR. PAK:  WELL, EVEN IN CLAIM 11 IT TURNS OUT -- AND

8      THIS IS WHERE I WAS GOING WITH THE CLAIMS -- EVEN IN CLAIM 11,

9      YOUR HONOR, THE SYNC AGENT, THAT'S THE COMPONENT THAT

10     CORRESPONDS TO CLAIM 11 --

11             AND LET'S BRING UP SLIDE 7 AGAIN.  IS THERE ANY WAY TO

12     ENLARGE THIS, THIS SECTION HERE, THE TABLE B?

13             AND THIS IS TABLE B FROM THE '414 PATENT, YOUR HONOR, FOR

14     YOUR REFERENCE.

15             APPLE'S ATTORNEY TOOK A SENTENCE OUT OF ONE OF OUR

16     MOTIONS, OTHER MOTIONS THAT WE'LL TALK ABOUT.  BUT IF YOU LOOK

17     AT THE ACTUAL TABLE B, YOU SEE THAT, YOUR HONOR, THERE ARE A

18     NUMBER OF DIFFERENT OPERATIONS THAT ARE LISTED UNDER EVEN THE

19     SYNC AGENT THAT CORRESPONDS TO CLAIM 11, AND THEY INCLUDE

20     MANAGING THE CONNECTION, MANAGING THE CONTROL FLOW, INTERFACE

21     TO DEVICE LINK, SETTING UP THE CORRECT DATA SOURCES, PROVIDING

22     PROCESS INFRASTRUCTURE.

23             THE COURT:  BUT THERE DOESN'T SEEM TO BE ANYTHING IN

24     HERE THAT REQUIRES THE SYNC AGENT TO DIRECTLY SYNCHRONIZE.

25             MR. PAK:  THESE ARE -- AGAIN, THE DIFFERENCE BETWEEN

```
 1        DIRECT AND INDIRECT, YOUR HONOR, IS WHETHER SOME OF THOSE

 2        SYNCHRONIZATION OPERATIONS WE TALKED ABOUT PERFORMED WITHIN A

 3        COMPONENT, OR WHETHER IT'S DIRECTING ANOTHER COMPONENT TO DO

 4        THAT.

 5            WHAT THIS SHOWS IN TABLE B IS THAT THE SYNC AGENT DOES

 6        PERFORM SYNCHRONIZATION OPERATIONS ON ITS OWN.

 7                THE COURT:  WHERE?  WHICH ONES SAY THAT?

 8                MR. PAK:  INTERFACE TO DEVICE LINK FOR CONNECTION

 9        LAYER ON DEVICE, SETTING UP THE CORRECT DATA SOURCE, PROVIDING

10        PROCESS INFRASTRUCTURE FOR SYNCHRONIZATION, THOSE ARE ALL STEPS

11        THAT ARE INVOLVED IN SYNCHRONIZATION.

12                THE COURT:  BUT IT SEEMS MORE LIKE TABLE A, SEND

13        CHANGED/NEW/DELETED RECORDS TO SYNC CLIENT, THAT'S MORE THE

14        SYNCHRONIZATION, ISN'T IT?

15                MR. PAK:  YES, I AGREE THAT THE FIRST TWO STEPS THAT

16        ARE ASSOCIATED WITH THE SYNC AGENT IS DIRECTING OTHER

17        COMPONENTS TO DO SOME OF THE SYNCHRONIZATION STEPS.

18            BUT THE REMAINING THREE ARE IMPORTANT ASPECTS OF THE

19        SYNCHRONIZATION OPERATION AS A WHOLE.  THESE ARE SPECIFIC STEPS

20        THAT THE SYNC AGENT IS PERFORMING.

21            BUT IN ANY EVENT, YOUR HONOR, REALLY WHAT WE'RE LOOKING AT

22        IS APPLE'S -- SO DOES THAT ANSWER THE QUESTION OF WHETHER THE

23        SYNC AGENT PERFORMS SYNCHRONIZATION OPERATIONS?  BECAUSE I

24        THINK THAT IS A FUNDAMENTAL POINT THAT WE WANT TO MAKE SURE --

25                THE COURT:  WELL, IT SEEMS LIKE THE SYNC AGENT MAY BE
```

1    DOING PRELIMINARY STEPS, BUT IS NOT DOING THE ACTUAL

2    SYNCHRONIZATION.

3              MR. PAK:  NONE OF THESE COMPONENTS HERE, YOUR HONOR,

4    DOES THE ENTIRE SYNCHRONIZATION.  THERE IS NO SUCH COMPONENT,

5    EVEN IN THIS DEVICE.

6         FOR EXAMPLE, IF YOU LOOK AT FIGURE 4, THE CONTEXT, AS YOU

7    SAW FROM THE CALENDAR DATA SOURCE, THE CALENDAR DATA SOURCE

8    COMPONENT ITSELF DIRECTS OR INTERFACES WITH OTHER COMPONENTS TO

9    CARRY OUT THE SYNCHRONIZATION AND ACCESSES THINGS LIKE THE

10   CALENDAR DATABASE.  THIS IS A MULTI-COMPONENT ARCHITECTURE

11   WHERE THESE DIFFERENT COMPONENTS DO DIFFERENT ASPECTS OF

12   SYNCHRONIZATION.

13        WHAT'S IMPORTANT, YOUR HONOR, THE REASON WHY IT'S A

14   FACTUAL ISSUE, NOT A LEGAL ISSUE, IS THAT THE RECORD THAT

15   APPLE'S EXPERT PROVIDED, NOT THE NEW ARGUMENTS THAT WE HEARD

16   TODAY, BUT WHAT APPLE'S EXPERT PROVIDED ON THE RECORD IS THE

17   FOLLOWING, AND THAT'S IN -- ON SLIDE 3 OF OUR ARGUMENT.

18        YOUR HONOR, THIS IS FROM THE EXHIBIT 3.  THIS IS

19   DR. SNOEREN, APPLE'S OPENING EXPERT.  HE IS THE ONE WHO

20   IDENTIFIED THE SIX SYNC ADAPTERS IN OUR PRODUCTS AND SAID THOSE

21   PERFORM SYNCHRONIZATION FUNCTIONS.

22        MAYBE WE CAN BLOW THAT UP, MR. FISHER, THE TOP PORTION.

23        THE SYNCHRONIZATION -- SO THESE ARE THE SIX SYNC ADAPTERS

24   THAT DR. SNOEREN ACCUSED.  HE SAID THEY PERFORM SYNCHRONIZATION

25   FUNCTIONS FOR THE DATA ASSOCIATED WITH THESE APPLICATIONS, AND

```
1        HE INCLUDED EXAMPLES OF THESE DIFFERENT TYPES OF

2   SYNCHRONIZATION FUNCTIONS.

3        HE ALSO SAID THAT THE SYNC ADAPTERS ARE EACH CONFIGURED TO

4   COMMUNICATE WITH THE REMOTE SERVICE AND STORE THE CORRESPONDING

5   USER DATA IN A REMOTE DATABASE.

6        HE NEVER, IN HIS ENTIRE REPORT, SAID THAT THE SYNC

7   ADAPTERS SATISFY CLAIM 20 BECAUSE THEY'RE MERELY DIRECTING

8   ACTIVITIES.  THAT IS NOT HIS ANALYSIS.

9        THERE IS NO EXPERT REPORT FROM DR. SNOEREN THAT USED THE

10  CAUSATION OR DIRECTING THEORY THAT WE HEARD FOR THE FIRST TIME

11  IN THEIR OPPOSITION.

12        INSTEAD, HE ACCUSED THESE ADAPTERS AND SAID THEY ARE

13  SYNCHRONIZATION COMPONENTS OF CLAIM 20 BECAUSE THEY PERFORM

14  EACH OF THESE RECITED FUNCTIONS.

15        AND, YOUR HONOR, IF YOU GO TO THE NEXT SLIDE, OUR EXPERT

16  ANALYZED, WENT THROUGH EXTENSIVE SOURCE CODE DISCOVERY,

17  ANALYZED THE SOURCE CODE, LOOKED AT THE GOOGLE TESTIMONY ON

18  THIS AND THERE ARE FOUR OUT OF SIX THAT ACTUALLY DO NOT PERFORM

19  THE SYNCHRONIZATION COMPONENTS THAT DR. SNOEREN SPECIFICALLY

20  IDENTIFIED.

21        THIS IS, AT A MINIMUM, A FACTUAL DISPUTE AMONG EXPERTS

22  ABOUT WHAT THE SOURCE CODE DOES AND DOES NOT DO.  OUR EXPERT

23  HAS OPINED THAT FOUR OUT OF THE SIX -- AND CLAIM 20 REQUIRES

24  THREE -- DO NOT PERFORM THE SPECIFIC THINGS THAT DR. SNOEREN

25  SAID CONSTITUTES THE SYNCHRONIZATION COMPONENT FUNCTIONALITY OF
```

1    CLAIM 20.

2         THEN, IF WE TURN TO THE NEXT SLIDE, APPLE ARGUED IN THEIR

3    OPENING BRIEF THAT IT WAS SAMSUNG'S POSITION THAT THE SYNC

4    ADAPTERS HAVE TO PERFORM ALL OF THE SYNCHRONIZATION ON THEIR

5    OWN.  AND THIS IS SIMILAR TO THE CONVERSATION YOU AND I WERE

6    JUST HAVING.

7         WE CLARIFIED IN OUR OPPOSITION THAT IS NOT TRUE, THAT IS

8    NOT OUR POSITION THAT ALL SYNCHRONIZATION HAS TO BE DONE BY ONE

9    COMPONENT.  IN FACT, THAT WOULD BE CONTRARY TO THE TEACHINGS OF

10   THE PATENT.

11        WHAT IS TRUE IS THAT EACH OF THE SYNCHRONIZATION SOFTWARE

12   COMPONENTS THAT IS CONFIGURED TO SYNCHRONIZE STRUCTURED DATA

13   MUST PERFORM SOME SYNCHRONIZATION OPERATIONS WITH THAT DATA.

14   THAT IS TRUE FOR THE SYNC AGENT.  THAT IS TRUE FOR EACH OF THE

15   THREE DATA SOURCES THAT WE LOOKED AT THAT TALKED TO THE SYNC

16   AGENT.

17        AND ONLY THEN DID WE GET IN THE REPLY BRIEF FROM APPLE THE

18   ARGUMENT THAT DIRECTING OTHER PARTS OF SOFTWARE TO PERFORM THE

19   SAME SOMEHOW SATISFIES THIS THEORY, SATISFIES THIS LIMITATION.

20        THAT IS A BRAND NEW THEORY, YOUR HONOR.  IT'S NEVER -- AS

21   YOUR HONOR POINTED OUT, NO ONE HAD, HAD CONSTRUED OR ASKED YOU

22   TO CONSTRUE "CONFIGURED TO."  WE USED THE NORMAL PLAIN AND

23   ORDINARY MEANING, WHICH MEANS THAT THERE HAS TO BE SOME

24   OPERATIONS THAT ARE SYNCHRONIZED OPERATIONS THAT ARE PERFORMED

25   BY THE COMPONENT.  THAT'S WHAT DR. SNOEREN PROVIDED IN HIS

1     EXPERT TESTIMONY.

2          WE REBUTTED THAT.  THAT'S A FACTUAL DISPUTE.

3          NOW THERE'S A BRAND NEW INTERPRETATION OF THAT "CONFIGURED

4     TO" LANGUAGE WHICH SAYS "DIRECTING," BUT THERE IS NO ANALYSIS

5     HERE ON THE RECORD BY DR. SNOEREN, WHO'S THEIR INFRINGEMENT

6     EXPERT, PROVIDING ANY TYPE OF INFRINGEMENT ANALYSIS UNDER THIS

7     NEW THEORY.

8          SO WE HAVE A LOT OF LEGAL ISSUES, AT A MINIMUM, ON WHAT

9     THE WORD "CONFIGURED TO" MEANS.  DOES IT REQUIRE SOME

10    SYNCHRONIZATION OPERATIONS?  OR CAN IT BE MERELY SATISFIED BY

11    DIRECTING ANOTHER COMPONENT TO DO SYNCHRONIZATION?

12         AND NUMBER TWO, MORE IMPORTANTLY, YOUR HONOR, THERE'S AN

13    ENORMOUS AMOUNT OF FACTUAL DISPUTE HERE ABOUT WHAT THE EXPERTS

14    HAVE SAID ABOUT THE ACCUSED PRODUCT COMPONENTS.  IT IS OUR VIEW

15    THAT OUT OF THE SIX THAT HE IDENTIFIED, FOUR OF THEM DO NOT DO

16    WHAT HE SAYS.

17         AND THEY DON'T REALLY CONTEST THAT POINT IN THEIR MOTION.

18    IF FOUR OUT OF SIX DO NOT PERFORM THE ACCUSED SYNCHRONIZATION

19    FUNCTIONALITY, THEN IT CANNOT POSSIBLY MEET CLAIM 20, WHICH

20    REQUIRES THREE OF THREE DIFFERENT DATA CLASSES.

21         THAT ALONE SAYS THAT WE DON'T HAVE LITERAL INFRINGEMENT.

22    THIS MOTION SHOULD BE DENIED ON THAT GROUND.

23         AND THEN WE'VE ALSO PROVIDED, AS YOUR HONOR SAW, A NUMBER

24    OF OTHER POSITIONS THAT APPLE HAS TAKEN THAT ARE INCONSISTENT

25    ON THE SAME CLAIM BETWEEN BRINGING THIS MOTION AND OPPOSING OUR

1    MOTION.

2         FOR EXAMPLE, WE TALKED AT THE VERY BEGINNING OF THIS

3    HEARING ABOUT THE PLUG-IN ARCHITECTURE, YOUR HONOR.  THAT

4    PLUG-IN ARCHITECTURE IS ANOTHER BASIS FOR WHY APPLE SAYS OUR

5    MOTION SHOULD BE DENIED, YET THEY DON'T HAVE ANY EVIDENCE THAT

6    THE PLUG-IN ARCHITECTURE LIMITATION IS SATISFIED IN THE ACCUSED

7    SAMSUNG PRODUCTS.

8         SO THERE ARE A HOST OF NEW ISSUES, LEGAL ISSUES, FACTUAL

9    ISSUES THAT CANNOT BE RESOLVED TODAY, AND SIMPLY HAVING A

10   REVISION OF THE LANGUAGE, WHICH DOESN'T SAY "DIRECTED TO

11   SYNCHRONIZE," "DIRECTING ANOTHER COMPONENT TO SYNCHRONIZE," IT

12   SAYS "CONFIGURED TO SYNCHRONIZE," BOTH EXPERTS ASSUMED THAT

13   MEANT YOU HAVE TO PERFORM SOME SYNCHRONIZATION OPERATIONS IN

14   THE COMPONENTS.

15        WE'VE PROVIDED FACT TESTIMONY AND EXPERT EVIDENCE SHOWING

16   THAT THAT'S NOT TRUE FOR FOUR OUT OF THE SIX.  THAT ALONE IS A

17   FACTUAL DISPUTE THAT SHOULD BE DECIDED BY THE JURY.

18             THE COURT:  OKAY.  CAN I MAKE SURE THAT I UNDERSTAND

19   WHAT YOUR ARGUMENT IS?

20             MR. PAK:  YES.

21             THE COURT:  SO YOU'RE SAYING THAT THE SYNCHRONIZATION

22   SOFTWARE COMPONENT CAN DIRECT OTHER PARTS OF THE SOFTWARE TO

23   PERFORM THE SYNCHRONIZATION, BUT IT MUST PERFORM AT LEAST SOME

24   OF THE SYNCHRONIZATION OPERATIONS ITSELF?

25             MR. PAK:  ABSOLUTELY.

```
1              THE COURT:  THAT'S YOUR POSITION?

2              MR. PAK:  AND THAT IS THE POSITION THAT DR. SNOEREN

3    TOOK.  THAT'S THE REASON WHY HE WAS -- IF YOU GO BACK TO THE

4    EARLIER SLIDE, THAT'S WHY DR. SNOEREN, APPLE'S EXPERT, ACCUSED

5    THE SYNC ADAPTERS OF PERFORMING CERTAIN TYPES OF

6    SYNCHRONIZATION OPERATIONS.

7              THE COURT:  AND THAT IS TRUE FOR BOTH CLAIM 11 AND

8    CLAIM 20?

9              MR. PAK:  CLAIM 11 AND CLAIM 20.  CLAIM 20 HAS SOME

10   ADDITIONAL REQUIREMENTS, AS WE TALKED ABOUT, WHERE CLAIM 20 HAS

11   TO BE DATA CLASS SPECIFIC, SO WE CAN'T LOOK TO THE SYNC AGENT

12   AS A BASIS IN THE INTRINSIC RECORD BECAUSE THAT IS NOT A

13   SYNCHRONIZATION COMPONENT THAT IS DATA SPECIFIC.

14        WE SHOULD BE LOOKING AT, AS YOUR HONOR DID, 113, 115, AND

15   117.  AND THERE IS NO QUESTION THAT 113, 115, AND 117 ALL

16   PERFORM AT LEAST SOME SYNCHRONIZATION OPERATIONS.  THEY DON'T

17   PERFORM ALL, BUT THEY PERFORM SOME.

18             THE COURT:  UM-HUM.

19             MR. PAK:  AND WHAT DR. SNOEREN DID IS SAID HE AGREED

20   WITH THAT.  HE AGREED WITH THAT INTERPRETATION, PUT IN HIS

21   EXPERT ANALYSIS ON THAT.

22        IT TURNED OUT HE BELIEVED HE WAS WRONG ON FOUR OUT OF THE

23   SIX, AND THAT IS THE REASON WHY WE'RE HEARING THIS DIRECTING

24   THEORY FOR THE FIRST TIME.  THAT WAS NEVER THE INTERPRETATION

25   THAT WAS OFFERED BY DR. SNOEREN.
```

```
 1          IF APPLE WANTED TO REINTERPRET THE WORDS "CONFIGURED TO"

 2     SYNCHRONIZE" TO MEAN SIMPLY DIRECTING SOMETHING ELSE TO

 3     SYNCHRONIZE, THEY SHOULD HAVE SOUGHT LEAVE TO DO THAT.  THIS

 4     REALLY ISN'T THE TIME TO DO THAT.

 5          I THINK YOUR HONOR'S SUGGESTION OF SAYING, LOOK, IF YOU

 6     DIDN'T RULE FOR IT AND IT HAS A PLAIN AND ORDINARY MEANING,

 7     LET'S LET THE JURY DECIDE ON THAT ISSUE.  THERE'S TWO FACT, AT

 8     LEAST MULTIPLE FACT DISPUTES HERE, THERE ARE TWO CREDIBLE

 9     EXPERTS FROM BOTH SIDES WHO'VE LOOKED AT THIS AND COME TO THEIR

10     CONCLUSIONS.

11          THE COURT:  SO YOU DON'T THINK THIS "CONFIGURED TO"

12     NEEDS TO BE CONSTRUED?

13          MR. PAK:  I DON'T THINK -- I THINK "CONFIGURED TO"

14     HAS THE MEANING THAT WAS USED BY BOTH EXPERTS IN THIS CASE,

15     WHICH IS IT HAS TO PERFORM AT LEAST SOME SYNCHRONIZATION

16     OPERATION.  I DON'T THINK IT REQUIRES CONSTRUCTION ON THAT

17     ISSUE.

18          BUT WITH THAT RESULT, THERE'S ALL KINDS OF DISPUTES

19     THAT -- BUT, YOUR HONOR, I DO WANT TO NOTE THAT, FOR EXAMPLE,

20     OTHER LIMITATIONS, THE PLUG-IN ARCHITECTURE, THE ONE THAT WE

21     TALKED ABOUT WHERE THAT LANGUAGE DOESN'T SHOW UP IN THE CLAIM

22     LANGUAGE --

23          THE COURT:  UM-HUM.

24          MR. PAK:  -- THAT IS SOMETHING THAT IF APPLE WAS

25     GOING TO SAY TO YOU, "HEY, DENY SAMSUNG'S MOTION TO INVALIDATE
```

```
1    BECAUSE THE CLAIM 20 REQUIRES A PLUG-IN, BUT I'M MOVING FOR

2    SUMMARY JUDGMENT OF INFRINGEMENT ON THE SAME CLAIM, BUT I'M

3    JUST GOING TO IGNORE THAT PLUG-IN REQUIREMENT," THAT'S NOT

4    CONSISTENT.

5         SO WE HAVE TO HAVE SOME RESOLUTION ON THAT ISSUE AS TO

6    WHETHER CLAIM 20 REQUIRES A PLUG-IN ARCHITECTURE OR NOT,

7    BECAUSE EITHER IT MEANS THEY HAVE A BURDEN OF PROOF PROBLEM ON

8    THEIR INFRINGEMENT THEORY BECAUSE THEY HAVEN'T -- NONE OF THEIR

9    EXPERTS HAVE ACTUALLY PROVIDED ANY EVIDENCE THAT THE ACCUSED

10   COMPONENTS ARE PLUG-INS, OR IF IT DOESN'T REQUIRE PLUG-INS,

11   THEN WE BELIEVE WINDOWS MOBILE AND THE OTHER SOFTWARE THAT

12   WE'VE MOVED ON ANTICIPATES THIS CLAIM.

13        BUT WE --

14            THE COURT:  LET'S GO TO THE ANTICIPATION.

15            MR. PAK:  YES.

16            THE COURT:  IS THERE A -- IS THERE A FACTUAL DISPUTE

17   ABOUT HOW WINDOWS MOBILE 5.0 OPERATES IN RELATION TO THREADS?

18            MR. PAK:  NO, YOUR HONOR.  THE -- AND, YOUR HONOR,

19   JUST TO BE CLEAR ON THE RECORD, YOUR HONOR, WE'VE MOVED ON TWO

20   CLAIMS, CLAIM 11 AND CLAIM 20.

21            THE COURT:  UM-HUM.

22            MR. PAK:  CLAIM 11 IS ONE OF THOSE UNIQUE SITUATIONS

23   WHERE ONE EXPERT HAS PROVIDED OPINIONS AND THE OTHER HAS NOT.

24        DR. SNOEREN, AFTER LOOKING AT EXTENSIVE FACTUAL ANALYSIS

25   AND SOURCE CODE ANALYSIS -- AND I HAD A CHANCE TO DEPOSE
```

1    DR. SNOEREN -- HE HAD TO ANALYZE ALL THE ELEMENTS OF CLAIM 11

2    BECAUSE IT'S AN INDEPENDENT CLAIM TO CLAIM 20, ON THE SAME

3    PIECES OF PRIOR ART THAT HE ANALYZED FOR CLAIM 20.

4        I ASKED HIM, BECAUSE I DIDN'T SEE ANYTHING IN HIS EXPERT

5    REPORT, HE DOESN'T CONTEST ANY ASPECT OF WHAT DR. RINARD SAID

6    ABOUT THE OPERATION OF THE WINDOWS MOBILE PRODUCT.  SO THERE'S

7    NO FACTUAL DISPUTE HERE ABOUT HOW THE PRODUCT OPERATES.

8        WHAT WE HAVE IS ONE EXPERT WHO HAS ANALYZED THE FACTS,

9    COMPARED IT TO THE CLAIMS --

10        THE COURT:  IS THERE A CLAIM CONSTRUCTION DISPUTE

11    THEN ON WHY "PROVIDED BY" MEANS "CREATE"?

12        MR. PAK:  NOT IN CLAIM 11, YOUR HONOR, BECAUSE UNDER

13    EITHER INTERPRETATION, THERE'S NO DISPUTE ON WINDOWS MOBILE 5.

14        AND, AGAIN, DR. SNOEREN HAS NOT CHALLENGED THAT.  SO

15    DR. SNOEREN IS THE EXPERT THAT -- IF THEY HAD A DISPUTE THAT

16    THEY WANTED TO RAISE, HE WAS THE EXPERT WHO, ON BEHALF OF

17    APPLE, SHOULD HAVE SAID, "UNDER THIS INTERPRETATION, I

18    DISAGREE.  WINDOWS MOBILE 5 DOES NOT ANTICIPATE."  HE NEVER

19    OFFERED THAT OPINION.

20        WE HAVE A RECORD, WE'VE GONE THROUGH EXPERT DISCOVERY,

21    THERE'S NO NEED FOR FURTHER DISCOVERY ON THIS ISSUE.

22        THEY SIMPLY HAVEN'T REBUTTED ANY OF OUR ALLEGATIONS ON

23    CLAIM 11.  THAT'S A CLEAR EXAMPLE, UNDER THE IMPLICIT CASE AND

24    A HOST OF OTHER CASES WHERE, IF AFTER THE FACTS HAVE BEEN

25    DISCOVERED AND THE EXPERTS HAVE HAD A CHANCE, FULL OPPORTUNITY

1    TO LOOK AT IT, ONE EXPERT SAYS IT PRACTICES THAT CLAIM AND THE

2    OTHER EXPERT HAS NO OPINION ON THAT, THEN ALL WE'RE LEFT WITH

3    IS MAYBE SOME ATTORNEY ARGUMENT OR SUGGESTION, AND WE ALL KNOW

4    THAT'S NOT GOOD ENOUGH TO CREATE A MATERIAL GENUINE ISSUE OF

5    FACT.

6         SO WE THINK ON CLAIM 11, YOUR HONOR, IT'S A PRETTY

7    STRAIGHTFORWARD CASE WHERE THEY JUST HAVEN'T CONTESTED CLAIM 11

8    FOR WHATEVER REASON.  WE THINK IT'S BECAUSE IT'S NOT CREDIBLE

9    TO CONTEST CLAIM 11 WITH RESPECT TO WINDOWS MOBILE.

10        IF YOU REMEMBER, YOUR HONOR, THIS IS THE CLAIM THAT WE

11   TALKED ABOUT IN MARKMAN WHERE THE IDEA IS STRAIGHTFORWARD.

12   IT'S, AM I SYNCHRONIZING IN THE BACKGROUND WHILE I'M STILL

13   USING THE APPLICATION?  THAT WAS THE IDEA THAT THEY TRIED TO

14   CLAIM IN CLAIM 11.

15        IT TURNED OUT MICROSOFT HAD A PRODUCT IN THE MARKET IN

16   2005 THAT DID EXACTLY THAT.  WE CAN DEMONSTRATE THAT.

17        THEY'RE NOT CONTESTING THAT.  THEY DEPOSED MULTIPLE FORMER

18   MICROSOFT ENGINEERS, LOOKED AT ALL THE SOURCE CODE.  THEIR

19   EXPERT HAS ZERO OPINIONS ON CLAIM 11.

20        THE COURT:  IF YOU INVALIDATE CLAIM 11, THAT DOESN'T

21   INVALIDATE CLAIM 20, RIGHT?

22        MR. PAK:  CORRECT, YOUR HONOR.  I DO ACKNOWLEDGE THAT

23   CLAIM 20 DOES HAVE SOME OF THE SAME CLAIM CONSTRUCTION ISSUES

24   THAT WE TALKED ABOUT.

25        FOR EXAMPLE, ONE OF THE ISSUES THAT WE NOTED IN THEIR

1    OPPOSITION IS WHEN WE ARE MOVING FOR ANTICIPATION BASED ON

2    WINDOWS MOBILE 5, THEY ARE SAYING NOW THAT CLAIM 20 REQUIRES A

3    PLUG-IN ARCHITECTURE.

4        AND IF YOU LOOK AT THE ACTUAL LANGUAGE -- AND LET'S LOOK

5    AT CLAIM, SLIDE 10, MR. FISHER, IN OUR SECOND PRESENTATION ON

6    THE '414 -- THIS IS, ON THE RIGHT-HAND SIDE, THE ACTUAL

7    LANGUAGE OF CLAIM 20.  THE WORD "PLUG-IN" NEVER APPEARS IN THAT

8    CLAIM.  THE WORD "FLEXIBLE" NEVER APPEARS IN THAT CLAIM.  THE

9    WORD "ARCHITECTURE" NEVER APPEARS IN THAT CLAIM.

10        CLAIM 20, AS AN ENTIRE CLAIM, WAS NEVER CONSTRUED BY YOUR

11   HONOR BECAUSE NO PARTY ASKED YOU TO DO THAT.

12        THE PLAIN AND ORDINARY MEANING OF CLAIM 20 WOULD NOT

13   INCLUDE THE WORDS "PLUG-IN," "ARCHITECTURE," OR "MODEL."

14        YET THEIR ARGUMENT IN OPPOSITION TO OUR MOTION IS WINDOWS

15   MOBILE 5 DOES NOT ANTICIPATE BECAUSE IT DOES NOT USE A PLUG-IN

16   ARCHITECTURE AS REQUIRED BY CLAIM 20.

17        SO THAT IS AN ISSUE WHERE, AS I EXPLAINED TO YOUR HONOR

18   EARLIER, TO THE EXTENT YOUR HONOR IS ENTERTAINING A MARKMAN

19   HEARING, BOTH SIDES, NOT WITHOUT ANY FAULT OF EITHER PARTY, BUT

20   BOTH SIDES HAVE GONE THROUGH DISCOVERY AND WE'VE GOTTEN TO A

21   POINT WHERE ARGUMENTS ARE NOW BEING MADE IN OPPOSITION TO OR IN

22   SUPPORT OF SUMMARY JUDGMENT MOTIONS WHERE CERTAIN TERMS COULD

23   BE CONSTRUED TO HELP THE PARTIES, AND I THINK THIS IS ONE

24   SITUATION WHERE MICROSOFT IS MAKING AN ARGUMENT BASED ON

25   LANGUAGE THAT IS NOT IN THE CLAIMS.

1        AND TO SIMPLY SAY WE SHOULD USE THE PLAIN AND ORDINARY

2    MEANING OF CLAIM 20 DOESN'T RESOLVE THE DISPUTE BECAUSE

3    "PLUG-IN MODEL" IS NOT IN THE LANGUAGE OF THE CLAIMS.

4        SO IF YOU LOOK THROUGH ALL OF THE PAPERS THAT WE'VE

5    OFFERED ON WINDOWS MOBILE 5, YOUR HONOR, WE THINK IF YOUR HONOR

6    IS ENTERTAINING A MARKMAN HEARING OF SOME TYPE ON A VERY

7    LIMITED SET OF TERMS, FRANKLY, OUR MOTION ON CLAIM 20, BASED ON

8    WINDOWS MOBILE 5, COULD BENEFIT FROM YOUR HONOR'S GUIDANCE ON

9    THAT.  SO THAT IS ONE WHERE WE THINK WE COULD DEFER OUR MOTION

10   PENDING RESOLUTION OF A MARKMAN HEARING.

11       OTHERWISE IF YOU WERE TO JUST GO WITH THE PLAIN AND

12   ORDINARY MEANING OF THE TERMS, WE WOULD SUBMIT, YOUR HONOR,

13   THAT THE ARGUMENTS MADE BY MICROSOFT, WHETHER IT'S "PLUG-IN

14   MODEL," "PROVIDE" AND OTHERS DO NOT SURVIVE SCRUTINY AT THIS

15   POINT BECAUSE THE LANGUAGE IS WHAT IT IS AND THEY REALLY HAVE

16   NOT CONTESTED THESE POINTS BEYOND MAKING CLAIM CONSTRUCTION

17   ARGUMENTS.

18       THE COURT:  DO YOU THINK IT'S IMPORTANT TO THE

19    INVENTION THAT THE SYNCHRONIZATION SOFTWARE COMPONENTS PROVIDE

20    A THREAD?

21       MR. PAK:  NO, YOUR HONOR.  IT'S, IN FACT, DESCRIBED

22    AS AN OPTION IN THE PATENT.

23       THE COURT:  OKAY.

24       MR. PAK:  AND IF YOU LOOK AT THE LANGUAGE, CLAIM 11,

25    THE WORD -- THAT'S A VERY GOOD POINT AS WELL.  YOU NOTE THAT IN

1    CLAIM 20, THERE IS NO "PROVIDE" LANGUAGE, PROVIDE A THREAD.

2           THE COURT:  UM-HUM.

3           MR. PAK:  WE'RE NOT TALKING ABOUT CLAIM 11.  WE'RE

4    TALKING ABOUT CLAIM 20 NOW.

5           THE COURT:  RIGHT.

6           MR. PAK:  CLAIM 20 DOESN'T EVEN RECITE PROVIDING A

7    THREAD, AND IF THEY -- THEIR ONLY ARGUMENT IS, WELL IT'S

8    DEPENDENT OFF OF CLAIM 11.

9           BUT IF YOU GO BACK TO CLAIM 11, THERE'S ONLY ONE SOFTWARE

10   COMPONENT THAT PROVIDES A SYNCHRONIZATION THREAD, AND SO THEY

11   CANNOT -- THIS IS OUR VIEW AGAIN -- THEY CANNOT TAKE A

12   LIMITATION OF ONE SOFTWARE COMPONENT AND INCORPORATE IT BY

13   REFERENCE, IF YOU WILL, INTO THE OTHER TWO SOFTWARE COMPONENTS

14   IN CLAIM 20 WHEN THE LANGUAGE IS SILENT ON THAT ISSUE.

15          THE ONLY REQUIREMENT ACTUALLY IN CLAIM 20 IS THAT THE

16   OTHER SYNCHRONIZATION SOFTWARE COMPONENTS ARE CONFIGURED TO

17   SYNCHRONIZE STRUCTURED DATA OF OTHER CORRESPONDING DATA

18   CLASSES.  THERE'S NO MENTION OF PROVIDING THREADS.

19          AGAIN, APPLE HAS TAKEN THAT POSITION IN CONTRAVENTION OF

20   OUR MOTION.

21          TO THE EXTENT THAT WE GO WITH PLAIN AND ORDINARY MEANING

22   OF THIS LANGUAGE, THERE IS NO REQUIREMENT THERE.

23          TO THE EXTENT THAT APPLE BELIEVES WE NEED TO HAVE THAT

24   LIMITATION BE INCLUDED, THEN WE SHOULD HAVE A MARKMAN HEARING

25   ON THAT AND MAKE A DECISION TO RESOLVE THAT DISPUTE.

1          BUT AS YOUR HONOR CAN SEE, IT'S NOT -- IT'S NOT IN THE

2     LANGUAGE OF CLAIM 20, WHICH IS THE CLAIM WE'RE TALKING ABOUT,

3     AND IT'S, AT MOST, DESCRIBED AS AN OPTIONAL FEATURE IN THE

4     SPECIFICATION, AND THAT IS NOT SOMETHING THAT WE READ INTO THE

5     CLAIM LANGUAGE.

6          THE COURT:  WHERE IS IT DESCRIBED AS AN OPTIONAL

7     FEATURE?  CAN YOU GIVE ME A COLUMN?

8          MR. PAK:  IT'S ACTUALLY CITED IN THEIR PAPERS.

9          THE COURT:  IF IT'S CITED IN THE PAPERS, WE'LL FIND

10    IT.

11         MR. PAK:  THEY ACTUALLY CITE THAT, YOUR HONOR, AND

12    I'LL BE HAPPY TO -- WHEN WE PROVIDE THE SUBMISSION ON THE

13    OTHER, I'M HAPPY TO PROVIDE A LINE QUOTE TO THAT.

14         THE COURT:  THAT'S OKAY.

15         MR. PAK:  OKAY.

16         THE COURT:  ALL RIGHT.  LET ME ASK WHETHER THERE'S

17    A -- IS THERE A FACTUAL DISPUTE AS TO HOW WINDOWS MOBILE 5.0

18    COMPONENTS OPERATE IN RELATION TO THREADS?

19         MR. KREVITT:  THERE IS NO --

20         THE COURT:  IS THERE?

21         MR. KREVITT:  THERE IS NO FACTUAL DISPUTE THAT

22    PREVENTS SUMMARY JUDGMENT.

23         IN FACT, YOUR HONOR --

24         THE COURT:  SUMMARY JUDGMENT OF ANTICIPATION?

25         MR. KREVITT:  CORRECT.  THIS IS THE FIRST TIME THAT I

1      CAN RECALL THAT I WAS OPPOSING A MOTION FOR SUMMARY JUDGMENT

2      AND MY ADVERSARY, WHO WAS MOVING, SUGGESTED THAT THE MOTION BE

3      PUT OFF, AND I RISE TO TELL YOU IT SHOULDN'T BE PUT OFF, IT

4      SHOULD BE RULED UPON AND SUMMARY JUDGMENT SHOULD BE GRANTED IN

5      OUR FAVOR.

6           THERE IS NO FACTUAL DISPUTE RELEVANT HERE AS TO WINDOWS

7      MOBILE.

8           THE ONLY QUESTION, YOUR HONOR, IS WHETHER OR NOT WHAT THE

9      COMPONENTS THAT SAMSUNG HAS IDENTIFIED, WHETHER OR NOT THOSE

10     PROVIDE A THREAD.  THEY DO NOT PROVIDE A THREAD, AND I'D LIKE

11     TO WALK YOU THROUGH THAT.

12          I'D ALSO LIKE TO HAVE AN OPPORTUNITY, BEFORE I SIT DOWN,

13     TO ADDRESS SOME OF THE POINTS ON INFRINGEMENT, WHICH I'LL DO

14     BRIEFLY.

15          BUT IF I CAN WALK YOU THROUGH QUICKLY THE ANTICIPATION

16     ISSUES, BECAUSE IT SEEMS THAT THAT'S FRONT OF MIND AT THE

17     MOMENT.

18          I HAVE THESE (HANDING).

19          SO, YOUR HONOR, CLAIM 11 AND CLAIM 20 HAVE THE PROVIDED

20     ELEMENT, FIRST OF ALL.  I KNOW THAT THAT WAS NOTED, BUT THE

21     QUESTION --

22          THE COURT:  I DON'T SEE IT IN CLAIM 20.  YOU'RE

23     SAYING BECAUSE IT'S DEPENDENT ON CLAIM 11?

24          MR. KREVITT:  CORRECT.  THAT'S RIGHT.  THAT'S WHAT I

25     MEAN, YOUR HONOR.

1      AND SO THE EXTENT TO WHICH THE COMPONENTS SAMSUNG HAS

2  IDENTIFIED DO NOT PROVIDE A THREAD, THAT'S NOT -- THAT'S AN

3  INVALIDITY ARGUMENT WITH RESPECT TO CLAIM 11, OF COURSE, JUST

4  AS MUCH AS WITH RESPECT TO CLAIM 20.  I'M GOING TO FOCUS ON

5  THAT ELEMENT.

6      THE CLAIM REQUIRES, PLAIN ENGLISH, THAT A SYNCHRONIZATION

7  PROCESSING THREAD MUST BE PROVIDED BY AT LEAST ONE COMPONENT.

8      THIS IS -- IF YOU GO TO SLIDE 2, MR. PAK SPENT TIME

9  TALKING WITH YOU ABOUT WHETHER OR NOT ONE COMPONENT MUST

10  PROVIDE A THREAD IN CLAIM 20, OR MULTIPLE COMPONENTS.

11      WHAT I AM HERE TO DO, AS WE'VE BEEN TRYING TO DO ALL DAY,

12  IS ELIMINATE ISSUES AND ISOLATE THE ONES THAT WILL ALLOW YOUR

13  HONOR TO RULE.

14      FOR PURPOSES OF THIS MOTION, WE CAN ACCEPT SAMSUNG'S

15  CONTENTION THAT CLAIM 20 REQUIRES ONLY ONE COMPONENT TO PROVIDE

16  A THREAD.  WE HAVE A DIFFERING VIEW, BUT THERE WILL BE A

17  DIFFERENT DAY TO RESOLVE THAT.

18      BUT FOR PURPOSES OF TODAY, WE ACCEPT SAMSUNG'S VIEW THAT

19  CLAIM 20 REQUIRES ONE COMPONENT TO PROVIDE A THREAD.

20      IF WE GO TO --

21      THE COURT:  WELL, THEIR VIEW IS THAT CLAIM 20 DOESN'T

22  REQUIRE ANY COMPONENT TO PROVIDE A THREAD, BUT GO AHEAD.

23      MR. KREVITT:  NO, NO, YOUR HONOR.  IT WASN'T ENTIRELY

24  CLEAR, BUT THEY DO NOT DENY THAT CLAIM 20 REQUIRES A

25  SYNCHRONIZATION PROCESSING THREAD TO BE PROVIDED BY A

```
1        SYNCHRONIZATION SOFTWARE COMPONENT.  THAT'S RIGHT IN CLAIM 11

2       FROM WHICH CLAIM 20 DEPENDS.

3            THERE IS AN OPEN QUESTION, YOUR HONOR, AT THE RISK OF

4       GOING TOO FAR INTO THE WEEDS, THERE'S AN OPEN QUESTION AS TO

5       WHETHER THE MULTIPLE COMPONENTS IN CLAIM 20 EACH MUST PROVIDE A

6       THREAD, SO WHETHER YOU NEED THREE COMPONENTS PROVIDING THREE

7       THREADS, OR WHETHER IT'S ENOUGH JUST TO HAVE ONE COMPONENT

8       PROVIDING ONE THREAD, NOTWITHSTANDING THE FACT THAT CLAIM 20

9       HAS MULTIPLE COMPONENTS.

10           SO THE QUESTION FOR US TODAY IS, IS THERE A

11      SYNCHRONIZATION PROCESSING THREAD PROVIDED BY A SYNCHRONIZATION

12      SOFTWARE COMPONENT?

13           SAMSUNG SAYS THAT THERE IS.  WE SAY THAT THERE ISN'T.

14           IF YOU TURN TO SLIDE 4 -- NOW, THIS IS MOSTLY BLACKED OUT,

15      YOUR HONOR, BUT IN YOUR BOOK, YOU WILL SEE WE IDENTIFY THE

16      COMPONENTS ON WHICH SAMSUNG IS RELYING, THE COMPONENTS IN

17      WINDOWS MOBILE 5 THAT SAMSUNG CLAIMS SATISFY THE SOFTWARE

18      SYNCHRONIZATION COMPONENT REQUIREMENT.

19           SO AT LEAST ONE OF THOSE -- AGAIN ACCEPTING SAMSUNG'S

20      READ -- AT LEAST ONE OF THEM MUST PROVIDE A THREAD.  THAT'S

21      RIGHT OUT OF THE CLAIM.

22           IF YOU SKIP A FEW SLIDES, BECAUSE WE ADDRESSED AN OLD

23      THEORY THAT WE RESOLVED EARLIER TODAY, TO SLIDE 7, AGAIN, THE

24      FIRST BULLET JUST IDENTIFIES THE COMPONENTS TO WHICH I REFERRED

25      A MOMENT AGO.  THERE'S NO ANTICIPATION BECAUSE NONE, NOT ONE OF
```

```
1       THOSE COMPONENTS PROVIDES A THREAD AS REQUIRED BY CLAIM 20.

2            SAMSUNG ADMITS -- THIS IS CRITICAL, YOUR HONOR -- SAMSUNG

3       ADMITS THAT THESE COMPONENTS MERELY EXECUTE ON PREEXISTING

4       THREADS THAT ARE CREATED BY DIFFERENT COMPONENTS.

5            THE SOFTWARE CONFIRMS THAT ALSO, YOUR HONOR, AND WE'LL

6       SHOW YOU.

7            SO WE HAVE A COMPONENT THAT CREATES THE THREAD AND

8       PROVIDES IT TO THE SOFTWARE SYNCHRONIZATION COMPONENTS ON WHICH

9       SAMSUNG IS RELYING, AND THOSE COMPONENTS MERELY EXECUTE ON THE

10      THREAD.  THEY DO NOT PROVIDE A THREAD.  THEY EXECUTE ON A

11      THREAD.  THIS IS, THIS IS CLEAR FROM SAMSUNG'S OWN CONTENTIONS,

12      AS WELL AS THE SOURCE CODE.

13           SAMSUNG'S ANTICIPATION ARGUMENT, AT THE BOTTOM YOU'LL SEE

14      WE SET IT OUT, IS BASED ON A CLAIM INTERPRETATION THAT MERELY

15      BY EXECUTING, THAT IS, USING A COMPONENT PROVIDES.

16           IT IS OUR VIEW THAT THAT IS INCORRECT.  BY PROVIDING --

17      PROVIDING REQUIRES MORE --

18               THE COURT:  THIS SOUNDS LIKE A CLAIM CONSTRUCTION

19       ISSUE, PROVIDING.

20               MR. KREVITT:  YOUR HONOR --

21               THE COURT:  PROVIDED BY IN CLAIM 11.

22               MR. KREVITT:  YOUR HONOR, THE REASON I SAID AT THE

23      OUTSET THAT WE REQUEST -- AND WE DO SO IN OUR PAPERS -- THAT

24      YOUR HONOR GRANT SUMMARY JUDGMENT, NOT ONLY DENY SAMSUNG'S

25      MOTION, BUT GRANT SUMMARY JUDGMENT IN APPLE'S FAVOR IS BECAUSE
```

1    WE BELIEVE THAT APPLYING THE PLAIN MEANING OF THE TERM

2    "PROVIDE," IT IS CLEAR THAT "EXECUTING" DOESN'T SATISFY IT.

3         AND IT IS UNFAIR, IN OUR VIEW, WE RESPECTFULLY SUBMIT, TO

4    ALLOW THAT ISSUE TO BE SUBMITTED TO A JURY.  "EXECUTING"

5    DOESN'T FALL WITHIN THE PLAIN MEANING OF THE CLAIMS, AND THERE

6    ARE NO FACTUAL DISPUTES --

7         THE COURT:  BUT "INSTANTIATE" DOES?  "INSTANTIATE"

8    STANDS FOR -- IS THE PLAIN AND ORDINARY MEANING OF "PROVIDE"?

9         MR. KREVITT:  IF YOU FLIP TO THE NEXT SLIDE, YOUR

10   HONOR -- OR NOT YOUR HONOR -- BUT AT THE TOP OF THE NEXT SLIDE

11   IN YOUR, IN YOUR BOOK, YOU WILL SEE THAT WHAT SAMSUNG'S MOTION

12   CONTENDS -- IT'S BLOCKED OUT BECAUSE IT WAS MARKED CONFIDENTIAL

13   IN SAMSUNG'S MOTION, SO WE HAVE OBVIOUSLY BLOCKED IT OUT

14   HERE -- BUT AT SLIDE 8, YOU WILL SEE WHAT THEIR ARGUMENT IS,

15   AND YOU WILL SEE IT IN SAMSUNG'S WORDS SO THERE'S NO QUESTION

16   AS TO WHETHER WE'RE MISCHARACTERIZING IT.

17        AND SAMSUNG'S EXPERT, SAMSUNG'S INVALIDITY EXPERT, BASED

18   HIS INVALIDITY OPINION, ANTICIPATION ON WINDOWS MOBILE 5, ON

19   THIS INTERPRETATION.

20        HE SAYS -- THIS IS SAMSUNG'S EXPERT, DR. CHASE.  "I

21   UNDERSTAND A SYNCHRONIZATION PROCESSING THREAD IS PROVIDED BY A

22   SYNCHRONIZATION SOFTWARE COMPONENT WHEN THE COMPONENT PERFORMS

23   OPERATIONS THAT RUN ON THE SYNCHRONIZATION PROCESSING THREAD.

24        "QUESTION:  IN YOUR VIEW, IS IT THE CASE THAT THE

25   SYNCHRONIZATION SOFTWARE COMPONENT IS PROVIDING A

1    SYNCHRONIZATION PROCESSING THREAD WHEN IT EXECUTES A

2    SYNCHRONIZATION OPERATION ON THE THREAD THAT WAS CREATED BY A

3    COMPLETELY DIFFERENT COMPONENT?

4        "ANSWER:  THAT IS THE INTERPRETATION THAT I APPLIED IN MY

5    ANTICIPATION ANALYSIS AND THE CONSTRUCTION INTRODUCED BY

6    DR. SNOEREN," THAT'S APPLE'S EXPERT, "IN HIS REBUTTAL REPORT

7    DIFFERS FROM THAT."

8        SO YOU HAVE AN EXPERT SAYING THERE'S NO FACTUAL DISPUTE

9    HERE AND, IN FACT, THERE ISN'T.

10       BUT YOU HAVE ONE EXPERT, SAMSUNG'S EXPERT, DR. CHASE, WHO

11   TESTIFIES THAT HIS UNDERSTANDING OF THE TERM, THE CONSTRUCTION

12   THAT HE APPLIED, WAS THAT A THREAD IS PROVIDED WHEN THE

13   COMPONENT PERFORMS OPERATIONS THAT RUN ON THE THREAD.

14       IF YOU GO TO THE NEXT SLIDE, PLEASE -- THIS IS SLIDE 9,

15   YOUR HONOR -- WE INCLUDED MATERIAL -- AND YOU'LL HAVE TO LOOK

16   IN YOUR BOOK AS OPPOSED TO ON THE SCREEN --

17           THE COURT:  WHY DIDN'T YOU ASK THAT "PROVIDED BY" BE

18    CONSTRUED DURING CLAIM CONSTRUCTION?

19           MR. KREVITT:  YOUR HONOR, THIS IS -- WITH RESPECT,

20    YOUR HONOR, THIS IS ANOTHER EXAMPLE, EXACTLY LIKE THE '172,

21    WHERE IT NEVER OCCURRED TO US -- AND I HAVE TO PROVIDE A LITTLE

22    BACKGROUND.  IT NEVER OCCURRED TO US THAT A PARTY WOULD TAKE

23    THE POSITION THAT A THREAD IS PROVIDED WHEN, WHEN A -- THAT A

24    COMPONENT PROVIDES A THREAD BY EXECUTING THE THREAD.  THAT IS,

25    WITH RESPECT, AN IMPROPER CONSTRUCTION.

```
 1        BUT HERE'S ANOTHER POINT, YOUR HONOR, AND I'M NOT -- WE

 2   ADDRESSED THIS.  WE DISCUSSED AT THE OUTSET THAT, IN OUR VIEW,

 3   SAMSUNG HAD HAD A DIFFERENT THEORY.  THAT ISSUE IS RESOLVED.

 4   WE'RE NOT ARGUING THAT ISSUE AT ALL.

 5        BUT THE DIFFERING THEORY THEY HAD, THE DIFFERING COMPONENT

 6   TO WHICH THEY POINTED, DID PROVIDE A THREAD.

 7        THERE WASN'T A DISPUTE ABOUT THAT.  THAT COMPONENT DID

 8   PROVIDE A THREAD.

 9        BUT THEY NO LONGER RELY ON THAT COMPONENT, BECAUSE THERE'S

10   ONLY ONE, SO IT DOESN'T SATISFY CLAIM 20'S REQUIREMENT OF

11   MULTIPLE COMPONENTS.

12        SO THEY SWITCHED -- AND WE'RE NOT CHALLENGING THAT -- THEY

13   SWITCHED NOW TO THESE NEW COMPONENTS WHICH SATISFY THE

14   NUMERICAL REQUIREMENT, THERE'S MORE THAN THREE, BUT THEY DO NOT

15   PROVIDE A THREAD.

16        AND IF YOU LOOK AT SLIDE 9, YOUR HONOR, THIS IS RIGHT OUT

17   OF SAMSUNG'S EXPERT'S REPORT.  IT TALKS ABOUT A DIFFERENT

18   COMPONENT, WHICH I CAN'T MENTION BUT IS IDENTIFIED AT SLIDE 9,

19   AN ENTIRELY DIFFERENT COMPONENT THAT CREATES THE THREAD AND

20   PASSES IT TO THE COMPONENTS ON WHICH SAMSUNG IS RELYING.

21        THE THREAD IS CREATED BY A DIFFERENT COMPONENT.  SAMSUNG

22   DIDN'T DENY THAT.  SAMSUNG'S EXPERT DOESN'T DENY THAT.

23        INSTEAD, SAMSUNG RELIES ON A CLAIM CONSTRUCTION APPROACH.

24   THEIR EXPERT IS VERY CANDID ABOUT IT.  HE IS APPLYING AN

25   INTERPRETATION -- THAT'S WHAT I READ TO THE COURT A MOMENT AGO
```

```
 1      AND IT'S SET FORTH AT SLIDE 8 -- THAT MERELY PERFORMING ON A

 2   THREAD CONSTITUTES PROVIDING.

 3          WE BELIEVE, YOUR HONOR, THAT THIS IS AN ISSUE THAT CAN BE

 4   RESOLVED EASILY.  "PROVIDING" MEANS SOMETHING DIFFERENT THAN

 5   MERELY EXECUTING.

 6          THE COMPONENTS -- AND, YOUR HONOR, YOUR HONOR NEED NOT

 7   CONSTRUE "PROVIDING."  YOUR HONOR NEED ONLY FIND THAT SAMSUNG

 8   CANNOT ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT A

 9   COMPONENT THAT MERELY PERFORMS AN OPERATION ON A THREAD

10   PROVIDES THE THREAD AS REQUIRED BY THE CLAIM.

11          THERE'S NO DISPUTE, AS I SAID, YOUR HONOR, THAT THE

12   COMPONENTS DO NOT CREATE OR GENERATE OR INSTANTIATE, A

13   DIFFERENT COMPONENT DOES THAT, AND THEY MERELY PERFORM.

14          AND SAMSUNG, AS I SAID, IS CANDID ABOUT --

15              THE COURT:  THIS IS GETTING REPETITIVE OF THE BRIEFS.

16   DO WE REALLY NEED TO DO THIS?

17              MR. KREVITT:  WELL, I WANTED TO ADDRESS THE --

18              THE COURT:  I JUST WANT WHATEVER YOU HAVE THAT'S

19   DIFFERENT FROM THE BRIEFS.

20              MR. KREVITT:  THAT'S FINE, YOUR HONOR.

21              THE COURT:  PLEASE.  PLEASE.

22              MR. KREVITT:  I WANTED TO ADDRESS YOUR HONOR'S

23   QUESTIONS.

24          IF WE CAN TURN TO -- UNLESS YOUR HONOR HAS ADDITIONAL

25   QUESTIONS ON ANTICIPATION?
```

```
1            THE COURT:  NO, I DON'T HAVE ANY MORE QUESTIONS.

2            MR. KREVITT:  OKAY.  IF WE CAN TURN QUICKLY BACK TO

3       INFRINGEMENT, YOUR HONOR, JUST A FEW POINTS.

4            THE COURT:  AND DON'T REPEAT WHAT'S IN THE BRIEFS,

5       PLEASE.  PLEASE.

6            MR. KREVITT:  I WON'T, YOUR HONOR.  I WON'T.

7          MR. PAK MENTIONED AT LEAST THREE TIMES THAT IN OUR BRIEF,

8       WE DID NOT -- OUR OPENING BRIEF -- WE DID NOT IDENTIFY THE

9       ARGUMENT THAT THE COMPONENTS IN SAMSUNG'S PRODUCTS DIRECT OTHER

10      COMPONENTS TO PERFORM THE SYNCHRONIZATION.

11         MR. PAK QUOTED A SENTENCE FROM OUR BRIEF, HE HAD IT ON THE

12      SCREEN AT LEAST TWICE, SUGGESTING THAT WE HAD CHANGED

13      POSITIONS.

14          IN FACT, YOUR HONOR, THE SENTENCE APPEARS, THAT MR. PAK

15      PUT ON THE SCREEN, AT PAGE 11, LINES 23 TO 24 OF OUR BRIEF.

16          THE IMMEDIATELY PRECEDING SENTENCE, WHICH MR. PAK DID NOT

17      MENTION, MUCH LESS PUT ON THE SCREEN, THE IMMEDIATELY PRECEDING

18      SENTENCE SAYS THAT THE ARGUMENT IS THAT THE COMPONENTS DIRECT

19      OTHER COMPONENTS TO PERFORM THE SYNCHRONIZATION.  IT WAS IN OUR

20      OPENING BRIEF.  IT'S SET FORTH IN THE SENTENCE IMMEDIATELY

21      PRECEDING THE ONE THAT MR. PAK MENTIONED.

22          THE SUBSTANTIVE POINT, YOUR HONOR, IS THIS:  THE BRIEFS

23      THAT THE PARTIES SUBMITTED TO YOUR HONOR ADDRESSED ONE

24      QUESTION, AND THAT IS THE "CONFIGURED TO SYNCHRONIZE" AND

25      WHETHER THE "CONFIGURED TO SYNCHRONIZE" IS SATISFIED BY AN
```

1    ELEMENT THAT MERELY DIRECTS OTHER COMPONENTS TO PERFORM THE

2    FUNCTIONS.

3         AS YOUR HONOR CORRECTLY TURNED TO THE SPECIFICATION AND

4    THE TABLES THAT SET OUT THE DIFFERING ACTIONS PERFORMED BY THE

5    DATA SOURCE, THAT'S AT TABLE A AT COLUMN 11, AND THE SYNC

6    AGENT, THAT'S AT TABLE B AT COLUMN 11 AND 12, THOSE BOTH ARE

7    SYNCHRONIZATION SOFTWARE COMPONENTS.

8         AND YOUR HONOR, IN SAMSUNG'S BRIEF, THEY ONLY IDENTIFIED

9    TWO THINGS THAT THEY SAID THE SYNC AGENT DOES, AND THOSE TWO

10   THINGS, YOUR HONOR, THAT SAMSUNG IDENTIFIED, NEITHER OF WHICH

11   ARE PERFORMING SYNCHRONIZATION OPERATIONS ON THE DATA ITSELF.

12        THE ONLY TWO OPERATIONS THAT SAMSUNG IDENTIFIED WHICH ARE

13   IN TABLE B ARE MAINTAINING A DATA CONNECTION BETWEEN THE DEVICE

14   AND THE HOST, AND DETERMINING THE ORDER OF SYNCHRONIZATION OF

15   THE VARIOUS DATA CLASSES BY SPECIFYING, DIRECTLY OR INDIRECTLY,

16   THE ORDER.  THAT'S SAMSUNG'S BRIEF AT 9.  AND THOSE TWO, THOSE

17   TWO ACTIONS ARE SET FORTH AT TABLE B.

18        NEITHER OF THOSE ARE OPERATIONS ON THE STRUCTURED DATA

19   ITSELF.  AS THE PASSAGE YOUR HONOR READ OUT OF COLUMN 10 AND AS

20   THE FIGURE 4 DEMONSTRATES AND AS THESE TABLES DEMONSTRATE, THE

21   SYNC AGENT, WHICH IS A SOFTWARE SYNCHRONIZATION COMPONENT

22   EXPLICITLY SET FORTH IN THE PATENT, DOES NOT PERFORM

23   SYNCHRONIZATION OPERATIONS ON THE DATA ITSELF.

24        RATHER, AS SAMSUNG'S BRIEF SAYS ELSEWHERE, JUST LIKE THE

25   ACCUSED PRODUCTS, IT MERELY DIRECTS OTHER COMPONENTS, THE DATA

1    SOURCES, TO PERFORM THE SYNCHRONIZATION OPERATIONS ON THE DATA

2    ITSELF.

3        AND IN THAT RESPECT, YOUR HONOR, THE SPECIFICATION

4    CONFIRMS THAT A SOFTWARE SYNCHRONIZATION COMPONENT CAN BE

5    CONFIGURED TO SYNCHRONIZE BY DIRECTING OTHER COMPONENTS TO DO

6    THE SYNCHRONIZATION, JUST AS THE ACCUSED PRODUCTS ARE

7    CONFIGURED TO SYNCHRONIZE BY DIRECTING OTHER COMPONENTS TO DO

8    THE SYNCHRONIZATION.

9        THE COURT:  LET ME ASK, WITH REGARD TO SAMSUNG'S

10   MOTION TO ENFORCE COMPLIANCE WITH THE COURT'S CASE NARROWING

11   ORDER, I WAS DISAPPOINTED THAT YOUR OPPOSITION DOESN'T SAY HOW

12   YOU'RE RELYING ON ASSERTED CLAIM 11 FOR DAMAGES.

13       MR. KREVITT:  I'M SORRY.  I DIDN'T HEAR THE END OF

14   THE QUESTION.  YOU WERE DISAPPOINTED THAT WE DID NOT SAY?

15       THE COURT:  YOU JUST HAVE A VERY GENERAL STATEMENT

16   THAT YOU WERE RELYING ON CLAIM 11, WHICH IS NOT ASSERTED --

17       MR. KREVITT:  CORRECT.

18       THE COURT:  -- FOR YOUR DAMAGES, BUT YOU DON'T GIVE

19   ANY EXPLANATION OF THAT.  WHAT'S YOUR THEORY?

20       MR. KREVITT:  I'M SORRY, YOUR HONOR.

21       THE COURT:  WHY IS CLAIM 11, WHICH IS UNASSERTED,

22   RELEVANT FOR YOUR DAMAGES FOR CLAIM 20?

23       MR. KREVITT:  SO LET ME ANSWER THAT.  THERE'S TWO

24   PARTS OF THE ANSWER.  ONE IS THE WAY WE'RE USING IT IS RELEVANT

25   TO DAMAGES, AND THE OTHER IS WHAT SAMSUNG SAYS WE'RE DOING,

```
 1        WHICH WE DISAGREE.

 2             THE FIRST IS IT IS POTENTIALLY RELEVANT, IN A LOST PROFITS

 3    ANALYSIS, TO BE PRACTICING THE CLAIMED INVENTION.  IT'S NOT

 4    ESSENTIAL.  RITE-HITE MAKES THAT CLEAR.

 5             BUT IT IS POTENTIALLY RELEVANT TO OUR DAMAGES ANALYSIS

 6    THAT WE ARE PRACTICING CLAIMS OF THE PATENT, EVEN IF THEY'RE

 7    NOT ASSERTED CLAIMS OF THE PATENT.

 8             AND AS I SAY, RITE-HITE MAKES THAT PERFECTLY CLEAR THAT

 9    THAT IS AN APPROPRIATE APPROACH.  IN FACT, IN RITE-HITE, IT WAS

10    AN UNASSERTED PATENT, IT WASN'T JUST AN UNASSERTED CLAIM OF THE

11    PATENT.

12             AND WHEN YOUR HONOR LIMITED THE NUMBER OF CLAIMS TO BE

13    ASSERTED IN THIS CASE -- AND OF COURSE WE FULLY COMPLIED WITH

14    THAT, WE ARE ONLY ASSERTING TEN CLAIMS IN THIS CASE -- WHEN

15    YOUR HONOR LIMITED THE NUMBER OF CLAIMS IN THE CASE, YOUR HONOR

16    DID NOT LIMIT THE ARGUMENTS THAT WE ARE ABLE TO MAKE IN THE

17    CASE REGARDING DAMAGES, FOR EXAMPLE, THAT MIGHT BE RELEVANT TO

18    THOSE CLAIMS THAT WE'LL BE ASSERTING BEFORE THE JURY.

19             THE COURT:  SO HOW MANY UNASSERTED CLAIMS ARE YOU

20    RELYING ON FOR DAMAGES AND WHICH ONES ARE THEY?

21             MR. KREVITT:  YOUR HONOR, THEY'RE SET FORTH IN OUR --

22    IN THE BRIEF.  IT IS CLAIM 34 OF THE '959 PATENT AND IT'S

23    CLAIM 11 OF THE '414 PATENT.

24             MS. MAROULIS:  AND IT'S CLAIM 27 OF '172 PATENT.

25             MR. KREVITT:  AND CLAIM 27 OF THE '172.
```

```
 1        WHAT I'M -- IF I CAN CONTINUE, YOUR HONOR?

 2        SAMSUNG, IN THEIR MOTION, SAYS THAT WE'RE DOING SOMETHING

 3   DIFFERENT WITH RESPECT TO CLAIM 11, AND WE STRONGLY DISAGREE AS

 4   TO THAT AND IT'S -- IT'S JUST WORTH MENTIONING AND ADDRESSING

 5   ANY QUESTIONS YOUR HONOR MAY HAVE.

 6        SAMSUNG CONTENDS THAT THE SURVEY THAT WE HAVE DONE IN THIS

 7   CASE THAT WILL BE RELEVANT TO DAMAGES AT TRIAL TESTED CLAIM 11.

 8        THAT IS NOT TRUE, YOUR HONOR.

 9        THAT QUESTION, THOUGH, IS THE SUBJECT OF A DAUBERT MOTION.

10   SAMSUNG FILED A DAUBERT MOTION ON THAT VERY ISSUE ASSERTING

11   THAT OUR SURVEY IS INAPPROPRIATE.

12        THE COURT:  CAN YOU GIVE ME A PARAGRAPH NUMBER FOR

13    WHERE DR. VELLTURO RELIES ON APPLE'S PRACTICE OF UNASSERTED

14    CLAIMS FOR LOST PROFITS?  CAN YOU DO THAT?

15        MR. KREVITT:  I DO NOT HAVE DR. VELLTURO'S REPORT.

16        THE ISSUE, YOUR HONOR, GOES TO -- THE ISSUE, AMONG OTHER

17   THINGS, GOES TO THE VARIOUS PANDUIT FACTORS, YOUR HONOR, AS

18   YOUR HONOR IS AWARE, AND IT IS IDENTIFIED IN DR. VELLTURO'S

19   REPORT, AS ARE THE OTHER CLAIMS.

20        WE ARE NOT, THOUGH -- AND THIS, AGAIN, IS THE SECOND --

21        THE COURT:  SO WHAT'S EXACTLY YOUR THEORY?  TELL ME

22    EXACTLY HOW IT WOULD COME OUT AT TRIAL.

23        MR. KREVITT:  WELL, YOUR HONOR --

24        THE COURT:  SAMSUNG PRACTICES CLAIM 34 OF THE '959,

25    THEREFORE --
```

1          MR. KREVITT:  YOUR HONOR, IT COULD BE RELEVANT TO

2    SEVERAL THINGS, INCLUDE DEMAND OF THE PATENTED PRODUCT, SO IN

3    CONNECTION WITH -- AMONG OTHER THINGS.

4          BUT IN CONNECTION WITH LOST PROFITS, YOUR HONOR, WE MAY

5    WISH TO SHOW THAT THERE'S DEMAND FOR A PATENT -- EXCUSE ME -- A

6    PRODUCT COVERED BY THE PATENT.

7          IN ADDITION TO SAMSUNG'S PRODUCTS THAT ARE COVERED BY THE

8    PATENT, APPLE'S PRODUCTS ARE COVERED BY THE PATENT.  SO APPLE'S

9    PRODUCTS FOR THE '959 PATENT, FOR EXAMPLE, ARE RELEVANT TO

10   CLAIM 34.

11         SO IT IS RELEVANT TO -- AND I DON'T WANT TO OVERSTATE OUR

12   RELIANCE ON THIS ISSUE -- BUT IT IS RELEVANT TO, POTENTIALLY,

13   DEMAND FOR THE PATENTED PRODUCT, DEMAND FOR PATENTED PRODUCTS.

14         THE COURT:  AND THESE ARE ALL INDEPENDENT CLAIMS

15   WHERE YOU'VE ASSERTED THE DEPENDENT CLAIMS?  IS THAT RIGHT?

16         MR. KREVITT:  NO, YOUR HONOR.  SO CLAIM 11 IS.

17         THE COURT:  CLAIM 11, OKAY.

18         MR. KREVITT:  CLAIM 11 IS.  THE OTHER TWO CLAIMS ARE

19    NOT RELATED TO THE ASSERTED CLAIMS.

20         AND AGAIN, YOUR HONOR, THE LOCAL RULES, AS YOUR HONOR IS

21   WELL AWARE, REQUIRE THE IDENTIFICATION OF ASSERTED CLAIMS.

22   YOUR HONOR LIMITED THE NUMBER OF ASSERTED CLAIMS THE PARTIES

23   COULD ASSERT, AND WE OF COURSE COMPLIED.

24         THE COURT:  WELL, YOU CAN'T HAVE IT BOTH WAYS.  YOU

25    CAN'T SAY, "WELL, WE NEED TO GET IN THAT APPLE PRACTICES CLAIM

 1    11 FOR DAMAGES PURPOSES, BUT IT'S NOT IN THE CASE, SO SAMSUNG

 2    CAN'T CHALLENGE ITS VALIDITY."

 3              MR. KREVITT:  THAT'S A DIFFERENT ISSUE, YOUR HONOR.

 4              THE COURT:  YOU CAN'T HAVE IT BOTH WAYS.  SO WHAT --

 5    I'M GOING TO GIVE YOU AN ELECTION.  WHAT DO YOU WANT?  DO YOU

 6    WANT US TO GO AHEAD AND INVALIDATE CLAIM 11?

 7              MR. KREVITT:  WELL, I DON'T THINK THAT'S THE RESULT,

 8    YOUR HONOR.  THAT'S CERTAINLY NOT WHAT WE WOULD WANT.

 9              THE COURT:  I THINK IT'S A WEAK ONE AND THAT'S WHY

10    YOU DIDN'T CHOOSE IT AND THAT'S WHY YOU CHOSE CLAIM 20.

11              MR. KREVITT:  CLAIM 20 IS INFRINGED EVERY BIT AS

12    CLAIM 11 AND IT HAS ADDITIONAL ELEMENTS.  WE MAKE --

13              THE COURT:  IF IT HAS ADDITIONAL ELEMENTS, THAT MIGHT

14    SAVE IT FROM AN INVALIDITY CHALLENGE.

15         BUT CLAIM 11 DOESN'T.  SO I WANT TO GIVE YOU AN ELECTION.

16    WHAT DO YOU WANT TO DO?  I MEAN, EITHER IT'S IN OR IT'S NOT IN.

17    AND IF IT'S IN, IT MIGHT BE INVALID, WHICH MEANS THE '414 GOES

18    BYE-BYE.

19         WELL, I GUESS CLAIM 20 WOULD STILL BE OKAY.

20              MR. KREVITT:  CORRECT, YOUR HONOR.

21              THE COURT:  OKAY.

22              MR. KREVITT:  THAT'S CORRECT, YOUR HONOR.

23         AS I SAID A MOMENT AGO -- AND I KNOW YOU DON'T WANT TO

24    HEAR FURTHER ARGUMENT ON IT -- BUT CLAIM 11 DID HAVE THE

25    PROVIDED ELEMENT THAT IS RELEVANT TO VALIDITY THAT WE JUST

```
1    DISCUSSED.

2         BUT OUR EXPERT HAS NOT PUT IN AN EXPERT REPORT ON

3    VALIDITY.  WE DROPPED THE PATENT AS AN ASSERTED -- EXCUSE ME.

4    WE DROPPED THE CLAIM, CLAIM 11, AS AN ASSERTED CLAIM BEFORE

5    REBUTTAL REPORTS ON VALIDITY WENT IN, SO OUR EXPERT DID NOT

6    SUBMIT AN EXPERT REPORT ON THE VALIDITY OF CLAIM 11, NOR DID HE

7    SUBMIT AN EXPERT REPORT ON ANY OTHER CLAIMS.

8         THE COURT:  YOU CAN'T HAVE IT BOTH WAYS.

9         MR. KREVITT:  I UNDERSTAND.

10        THE COURT:  YOU CAN'T HAVE IT BOTH WAYS.  SO DO YOU

11   WANT TO GO ON INVALIDITY ON CLAIM 11?

12        MR. KREVITT:  I'D LIKE AN OPPORTUNITY TO CONFER WITH

13   MY COLLEAGUES AND RESPOND, YOUR HONOR.

14        THE COURT:  WHY DON'T YOU DO THAT?

15        MS. MAROULIS:  WOULD THE COURT LIKE ME TO RESPOND TO

16   THE ARGUMENTS NOW OR AFTER COUNSEL CONFERS?

17        THE COURT:  NO.  I'D LIKE TO KNOW HOW APPLE WANTS TO

18   PROCEED.

19        YOU CAN'T HAVE IT BOTH WAYS.  YOU CAN'T SAY "I'M GOING TO

20   GET IT IN FOR DAMAGES, BUT THEN YOU CAN'T CHALLENGE IT BECAUSE

21   THAT'S NOT ACTUALLY ASSERTED IN THE CASE."

22        MR. KREVITT:  I UNDERSTAND, YOUR HONOR.

23        THE COURT:  I THINK THAT'S AN UNFAIR POSITION.

24        MR. KREVITT:  I UNDERSTAND.

25        THE COURT:  SO HOW DO YOU WANT TO PROCEED?
```

1   MR. KREVITT:  SO IF WE CONTINUE TO TAKE THE POSITION

2   THAT WE ARE PRACTICING IT, YOUR HONOR WILL CONSIDER ITS

3   VALIDITY?

4           THE COURT:  YEAH.  AND THE CLAIM MIGHT BE GONE.

5           MR. KREVITT:  I UNDERSTAND, YOUR HONOR.  WE WOULD

6   REQUEST AN OPPORTUNITY TO DO WHAT WE HAVE NOT YET DONE, WHICH

7   IS SUBMIT AN EXPERT REPORT ON VALIDITY.  OUR EXPERT HAS NOT

8   TAKEN A POSITION ON THE VALIDITY OF CLAIM 11.  IT WAS NOT, AS I

9   SAID, ASSERTED AT THE TIME HE PUT IN AN EXPERT REPORT.

10      WE IDENTIFIED NUMEROUS THINGS, INCIDENTALLY, IN OUR PAPERS

11  THAT WE BELIEVE RENDERED --

12          THE COURT:  WELL, THE OTHER OPTION IS I'M JUST GOING

13  TO LET YOU CHOOSE, OF YOUR CLAIMS, YOU HAVE TO CHOOSE CLAIM 11,

14  34, AND 27 IF YOU WANT THEM IN THE CASE.  I THINK THAT'S MORE

15  CONSISTENT WITH MY ORDER.  SO IF YOU WANT TO SWAP OUT ANOTHER

16  THREE TO PUT THESE IN, YOU'RE WELCOME TO DO THAT.

17          MR. KREVITT:  YOUR HONOR, AS I SAY, I WOULD PREFER TO

18  CONFER.

19      BUT AS TO THAT ISSUE, YOUR ORDER LIMITING THE NUMBER OF

20  CLAIMS DID NOT LIMIT THE ISSUES AND DEFENSES THAT CAN BE -- AND

21  CLAIMS THAT CAN BE MADE WITH RESPECT TO THOSE CLAIMS.  SO TO

22  THE EXTENT AN UNASSERTED CLAIM IS RELEVANT, FOR EXAMPLE, TO

23  DAMAGES OF AN ASSERTED CLAIM, WE SHOULD BE ABLE TO PROVIDE

24  ARGUMENT REGARDING THAT.

25      I UNDERSTAND YOUR HONOR'S COMMENT THAT IF WE DO, THAT

1    MEANS THE CLAIM IS LIVE AND ITS VALIDITY CAN BE CHALLENGED AND

2    RULED UPON.

3            THE COURT:  WELL, YOU AGREE THAT'S FAIR, RIGHT?  YOU

4    CAN'T SAY, "I'M NOT ASSERTING THIS CLAIM, SO YOU CAN'T ATTACK

5    IT; BUT YET, I'M GOING TO USE IT TO ENHANCE MY DAMAGES."

6        IT'S NOT FAIR AND THAT'S NOT WHAT I INTENDED, THAT YOU CAN

7    SNEAKILY GET CLAIMS IN BY NOT ASSERTING THEM SO THEY CAN'T BE

8    ATTACKED AND CHALLENGED, BUT YOU CAN USE THEM FOR INCREASING

9    YOUR DAMAGES AWARD.

10           MR. KREVITT:  I UNDERSTAND YOUR HONOR'S POSITION IN

11   THAT REGARD.  WE -- IT IS NOT UNCOMMON TO HAVE CLAIMS THAT ARE,

12   SUCH AS THIS SITUATION, THAT ARE UNASSERTED THAT YOU DON'T HAVE

13   ANCILLARY PROCEEDINGS REGARDING THE VALIDITY OF, FOR EXAMPLE.

14       BUT I UNDERSTAND YOUR HONOR'S POSITION THAT --

15           THE COURT:  WHY SHOULD YOU GET DAMAGES ON IT IF IT'S

16   INVALID?

17           MR. KREVITT:  WE'RE NOT GETTING -- I'M GLAD YOU ASKED

18   THAT BECAUSE MAYBE I HAVEN'T BEEN CLEAR.  WE ARE NOT GETTING

19   DAMAGES ON CLAIM 11.

20           THE COURT:  YOU'RE USING IT ENHANCE YOUR DAMAGES TO

21   CLAIM 20.

22           MR. KREVITT:  IT MAY BE RELEVANT TO DAMAGES FOR

23   CLAIM 20, THAT'S CORRECT.

24           THE COURT:  WELL, IF IT'S NOT RELEVANT TO DAMAGES ON

25   CLAIM 20, IT REALLY SHOULDN'T BE IN THE CASE AT ALL BECAUSE

1    THEN IT'S NOT RELEVANT AND UNDER 403 IT SHOULD BE EXCLUDED.

2    IT'S A WASTE OF TIME.  IT'S GOING TO MISLEAD AND CONFUSE THE

3    JURY.

4         SO IS IT RELEVANT OR NOT TO DAMAGES?

5              MR. KREVITT:  YOUR HONOR, WE DON'T --

6              THE COURT:  IF IT'S NOT, THEN THIS ISSUE IS MOOT AND

7    I'M JUST GOING TO GRANT THEIR MOTION AND THE ISSUE WILL BE

8    GONE.

9              MR. KREVITT:  YOUR HONOR, IT IS RELEVANT AT THIS

10   POINT.  IT MAY BE RELEVANT.  WE HAVE LIMITED TIME AT TRIAL.  I

11   CAN'T SIT HERE NOW AND TELL YOU WHAT ISSUES WE'LL PUT ON AT

12   TRIAL.  WHEN I SAID IT MAY BE RELEVANT, I WAS SIMPLY MEANING I

13   DON'T KNOW WHAT THE TRIAL PRESENTATION WILL LOOK LIKE.

14        CLAIM 11, UNASSERTED CLAIMS --

15             THE COURT:  WELL, I'M BEING ASKED TO RULE ON THIS

16   MOTION NOW AND YOUR OPPOSITION WAS NOT HELPFUL BECAUSE IT

17   DIDN'T EXPLAIN WHY YOU WANT THIS IN.

18             MR. KREVITT:  I UNDERSTAND, YOUR HONOR.  SO YOUR

19   HONOR WOULD LIKE AN ANSWER FROM US?

20             THE COURT:  NO, I'M NOT GOING TO GIVE YOU A SECOND

21   CHANCE TO BRIEF IT.  YOU HAD AN OPPOSITION.  YOU CHOSE TO BRIEF

22   IT THE WAY YOU DID.  YOU CHOSE TO BE VERY VAGUE ON WHY YOU

23   WANTED TO USE IT.  YOU DON'T GET A DO-OVER.

24             MR. KREVITT:  NO, I -- I WASN'T ASKING FOR THAT, YOUR

25   HONOR.

```
 1            THE COURT:  YEAH.

 2            MR. KREVITT:  I MEANT YOUR HONOR WISHES US TO TAKE A

 3    POSITION.  IF WE WANT TO CONTINUE TO BE ABLE TO ASSERT WE

 4    PRACTICE THE CLAIM, THEN YOUR HONOR -- THEN IT'S A LIVE CLAIM

 5    THAT CAN BE RULED UPON, AND IF WE -- OR WE CAN ELECT TO NOT

 6    HAVE IT AS A CLAIM IN THAT REGARD, AND I JUST WOULD LIKE AN

 7    OPPORTUNITY, PERHAPS AT A BREAK, TO CONFER WITH MY COLLEAGUES.

 8            THE COURT:  WELL, WHY DON'T YOU CONFER RIGHT NOW?

 9    IT'S A QUARTER TO 6:00.

10            MR. KREVITT:  OKAY.

11        (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

12            MR. KREVITT:  YOUR HONOR --

13            THE COURT:  YES.

14            MR. KREVITT:  -- SO WE WOULD, AT THIS TIME, AGREE TO

15    WITHDRAW THOSE CLAIMS --

16            THE COURT:  OKAY.

17            MR. KREVITT:  -- AS CLAIMS THAT WE'RE ASSERTING WE

18    PRACTICE, WITH ONE CAVEAT THAT I WOULD REQUEST THE COURT'S

19    INDULGENCE.  IN THE EVENT THAT SAMSUNG TAKES THE POSITION AT

20    TRIAL THAT WE DO NOT PRACTICE THE PATENTS, THAT WE HAVE AN

21    OPPORTUNITY TO RESPOND TO THAT.

22        BUT WE WILL NOT AFFIRMATIVELY TAKE THE POSITION THAT WE

23    PRACTICE THOSE CLAIMS ABSENT CIRCUMSTANCES ALONG THOSE LINES.

24            THE COURT:  SO WHAT -- IF SAMSUNG CHALLENGES WHETHER

25    YOU PRACTICE THE UN -- WHETHER APPLE PRACTICES THE UNASSERTED
```

```
 1         CLAIMS --

 2              MR. KREVITT:  WELL, CHALLENGES WHETHER WE PRACTICE

 3    THE PATENT, WHETHER WE PRACTICE ANY CLAIMS IN THE PATENT.

 4              THE COURT:  OKAY.  LET ME HEAR FROM SAMSUNG.  WHAT'S

 5    YOUR POSITION?  BECAUSE I THINK THAT SEEMS FAIR TO ME.  IF

 6    YOU'RE GOING TO CHALLENGE IT, THEN THEY SHOULD BE ABLE TO COME

 7    RIGHT BACK AT YOU WITH EXPERT TESTIMONY THAT THEY DO.

 8              MS. MAROULIS:  YOUR HONOR, THEY'RE LIMITED TO THE

 9    CLAIMS, TO THE TEN CLAIMS AND FIVE CLAIMS AS OF FEBRUARY.  THEY

10    CANNOT ASSERT OTHER CLAIMS.

11         THE CLAIMS THAT WILL REMAIN AFTER THEY WITHDRAW THIS CLAIM

12    ARE NOT PRACTICED BY APPLE, SO IT -- WE SHOULDN'T BE -- WE

13    SHOULD BE ABLE TO SAY, "APPLE, YOU DON'T PRACTICE CLAIM 18 OF

14    THE '172 PATENT."

15         WE SHOULD NOT BE PREVENTED FROM EXPLAINING TO THE JURY

16    THAT THEY DO NOT PRACTICE THE CLAIMS THAT THEY ASSERT FOR

17    INFRINGEMENT.

18              THE COURT:  OKAY.  YOUR POSITION IS THAT THEY DO NOT

19    PRACTICE CLAIM 18 OF THE '172, CLAIM 20 --

20              MS. MAROULIS:  OF THE '414.

21              THE COURT:  -- OF THE '414, OR CLAIMS 24 AND 25 OF

22    THE '959?

23              MS. MAROULIS:  THAT'S CORRECT.

24              THE COURT:  IS THAT YOUR POSITION?

25              MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR, AND I
```

1    DON'T THINK APPLE WOULD DISAGREE WITH THAT.

2              THE COURT:  WHAT'S YOUR RESPONSE?

3              MR. KREVITT:  WE AGREE WITH THAT POINT, YOUR HONOR.

4    WE ARE NOT ALLEGING THAT WE PRACTICE THOSE CLAIMS.  THAT'S THE

5    SIGNIFICANCE OF THIS ISSUE.

6              THE COURT:  OKAY.

7              MR. KREVITT:  AND FOR SAMSUNG TO BE ABLE TO SLICE IT

8    THAT FINELY AND MAKE AN ARGUMENT TO THE JURY WHEN THEY'RE GOING

9    TO TALK ABOUT IMPORTANCE OF THE TECHNOLOGY THAT WE DON'T

10   PRACTICE THESE CLAIMS, AND FOR APPLE NOT TO BE ABLE TO RESPOND

11   THAT, WELL, WE PRACTICE OTHER CLAIMS IS HIGHLY UNFAIR, YOUR

12   HONOR.

13        AS I SAID, WE HAVE HEARD YOUR HONOR LOUD AND CLEAR.  WE

14   ARE PREPARED AND ARE WITHDRAWING OUR AFFIRMATIVE ASSERTIONS

15   WITH RESPECT TO OUR PRACTICE OF THOSE CLAIMS.  YOU WON'T HEAR

16   THAT IN OPENING, JUST FOR EXAMPLE.

17        BUT TO THE EXTENT THAT SAMSUNG MAKES ARGUMENTS OR TRIES TO

18   CONVEY TO THE JURY THAT APPLE DOES NOT PRACTICE THE PATENTS,

19   EVEN IF THEY DO IT IN A WAY BY CONFINING THE SPECIFIC COMMENT

20   TO PRACTICE THE ASSERTED CLAIMS, IT'S MISLEADING AND UNFAIR AND

21   APPLE SHOULD HAVE AN OPPORTUNITY THEN TO SAY WE DO PRACTICE THE

22   PATENTS.

23             THE COURT:  ALL RIGHT.

24             MS. MAROULIS:  YOUR HONOR, THE CASE --

25             THE COURT:  IS THERE A STIPULATION THAT COULD BE

```
1      REACHED THAT APPLE DOES NOT PRACTICE THE SPECIFIC ASSERTED

2      CLAIMS, BUT DOES PRACTICE OTHER CLAIMS OF THE PATENTS?

3                 MR. KREVITT:  YES, YOUR HONOR.

4                 THE COURT:  LET ME ASK FROM SAMSUNG, WOULD YOU AGREE

5      TO THAT?

6                 MS. MAROULIS:  I'D HAVE TO DISCUSS WITH THE TEAM.

7           BUT VERY BRIEFLY, I DIDN'T HAVE A CHANCE TO RESPOND TO

8      COUNSEL, BUT THE MEANING OF THE ORDER WAS THAT A PARTY CANNOT

9      HELP ITSELF TO MORE CLAIMS THAN THE CASE NARROWING ORDER

10     REQUIRES IT TO HAVE.

11          SAMSUNG ABIDED BY THE ORDER AND APPLE IS, WAS DRAWING ON

12     ADDITIONAL CLAIMS.  NOW THEY'RE WILLING TO WITHDRAW THEM, WHICH

13     IS GREAT.

14          BUT IF THEY'RE STILL GOING TO PREVENT US FROM SAYING "YOU,

15     APPLE, DON'T PRACTICE THESE CLAIMS THAT YOU'RE ASSERTING AS

16     INFRINGEMENT IN THE TRIAL," THAT DEFEATS THE PURPOSE OF HAVING

17     THOSE CLAIMS WITHDRAWN BECAUSE THEY'RE GOING TO BE ABLE TO SAY,

18     "WELL, WE PRACTICE SOME OTHER CLAIMS," AND THEN WE'LL NEED TO

19     ATTACK THOSE CLAIMS AND EXPLAIN WHY THEY CANNOT RELY ON THEM

20     FOR DAMAGES PURPOSES.

21                MR. KREVITT:  YOUR HONOR, AGAIN, WE'VE HEARD YOU, AND

22     WHILE WE DON'T AGREE THAT WE DIDN'T COMPLY WITH YOUR HONOR'S

23     ORDER, I HOPE THAT'S CLEAR, BUT WE HAVE HEARD YOU AND WE ARE

24     NOT GOING TO AFFIRMATIVELY -- WE WILL AGREE NOT TO

25     AFFIRMATIVELY ASSERT THAT WE PRACTICE THOSE OTHER CLAIMS.
```

1          AGAIN, THOUGH, TO THE EXTENT THAT SAMSUNG OPENS THE DOOR

2     BY CONVEYING TO THE JURY THAT WE DO NOT PRACTICE THE PATENTS BY

3     ARGUING WE DON'T PRACTICE THESE PARTICULAR CLAIMS, WE HAVE TO

4     HAVE AN OPPORTUNITY TO EXPLAIN THAT WE DO PRACTICE THE PATENTS.

5          MS. MAROULIS:  IT IS UNDISPUTED, AND COUNSEL

6     CONFIRMED JUST NOW, THAT THEY DO NOT PRACTICE THE CLAIMS WHICH

7     SAMSUNG IS ACCUSED OF INFRINGING.  THAT IS A VERY SALIENT POINT

8     BECAUSE LAST TRIAL COUNSEL, MR. LEE, SPOKE AT LENGTH ABOUT HOW

9     SAMSUNG DIDN'T PRACTICE PARTICULAR CLAIMS AT ISSUE.

10         HERE WE DON'T WANT TO BE DEPRIVED OF THE OPPORTUNITY TO

11    SAY APPLE SHOULD NOT HAVE ASSERTED CLAIMS IN IT'S INFRINGEMENT

12    THAT IT ITSELF DOES NOT PRACTICE.

13         IF THEY GET --

14         MR. KREVITT:  JUST ONE POINT OF CLARIFICATION, YOUR

15    HONOR.

16         MS. MAROULIS:  EXCUSE ME COUNSEL.  I'M NOT FINISHED.

17    THANK YOU.

18         IT WOULD NOT BE FAIR TO SAMSUNG TO BRING IN THOSE

19    ADDITIONAL CLAIMS AND FOR US TO SPEND TIME CROSS-EXAMINING

20    WITNESSES, BRINGING IN EVIDENCE AND EXPLAINING WHY APPLE DOES

21    NOT PRACTICE THOSE OTHER CLAIMS OR WHY THEY'RE INVALID OR

22    OTHERWISE SHOULD NOT BE IN THE CASE.

23         MR. KREVITT:  JUST ONE POINT OF CLARIFICATION, YOUR

24    HONOR.  APPLE IS NOT SAYING WE DO NOT PRACTICE THOSE PATENTS,

25    THOSE OTHER CLAIMS.  WE'RE NOT TAKING AN AFFIRMATIVE POSITION

1        THAT WE DO NOT PRACTICE THE CLAIMS.

2            WE HAVE SIMPLY NOT TAKEN THE POSITION THAT WE DO PRACTICE

3        THE CLAIMS, AND IT IS A DIFFERENCE, YOUR HONOR.  I WANT THE

4        RECORD TO BE CLEAR THAT WE HAVE NOT ANNOUNCED THAT WE DO NOT

5        PRACTICE THE CLAIMS.  BUT WE HAVE NOT TAKEN THE POSITION, AND

6        WILL NOT TAKE THE POSITION, THAT WE DO PRACTICE THOSE CLAIMS.

7            TO THE EXTENT THAT SAMSUNG MAKES THE KINDS OF ARGUMENTS

8        THAT ARE BEING PREVIEWED, THOUGH, APPLE HAS TO HAVE AN

9        OPPORTUNITY, AND FAIRNESS, WE SUBMIT, REQUIRES US TO HAVE AN

10       OPPORTUNITY TO PAINT A FULL PICTURE THAT, IN FACT, WE DO

11       PRACTICE CLAIMS IN THE PATENT WITHOUT DOING SO, AGAIN,

12       AFFIRMATIVELY AND WITHOUT IT BEING PART OF OUR CASE-IN-CHIEF.

13               MR. JOHNSON:  YOUR HONOR, I THINK THE REAL PROBLEM IS

14       THAT ON THESE OTHER CLAIMS, WE CONTEST WHETHER THEY PRACTICE

15       THEM OR NOT, AND SO WE'RE TALKING ABOUT OPENING UP A WHOLE

16       OTHER LINE OF LITIGATION ON THESE CLAIMS THAT ARE NOT ASSERTED

17       NOW, LIKE CLAIM 11, AND WE'RE GOING TO BE IN A SITUATION WHERE

18       THERE'S GOING TO BE SATELLITE LITIGATION ON WHETHER THEY EVEN

19       PRACTICE THESE OTHER CLAIMS, AND WE CONTEST THAT.

20           AND SO, I MEAN, THAT'S -- WE UNDERSTOOD YOUR HONOR'S

21       RULING TO LIMIT THE CASE TO THE TERMS AND CLAIMS THAT ARE AT

22       ISSUE HERE, AND THAT'S THE WAY WE'VE ACTED.

23               MR. KREVITT:  YOUR HONOR, I JUST WOULD NOTE, WITH

24       RESPECT TO MR. JOHNSON'S CLAIM OF SATELLITE LITIGATION, THEY

25       DON'T HAVE EXPERT REPORTS THAT WE DO OR DON'T PRACTICE.  THIS

1      WASN'T ADDRESSED IN THE EXPERT REPORTS.  THIS -- THIS NOTION OF

2      SATELLITE LITIGATION IS, IS NOT REAL.

3           WHAT IS REAL, AGAIN, IN LIGHT OF WHAT WE HAVE DONE AT YOUR

4      HONOR'S -- WITH THE ELECTION THAT YOUR HONOR GAVE US IS WE HAVE

5      AGREED, AND DO AGREE, THAT WE WILL NOT MENTION THOSE CLAIMS AS

6      CLAIMS THAT APPLE PRACTICES IN APPLE'S CASE-IN-CHIEF, OR

7      PERIOD, UNLESS THE DOOR IS OPENED BY SAMSUNG.

8           WE JUST, WE THINK ANYTHING OTHER THAN THAT IS UNFAIR.  IT

9      IS --

10          THE COURT:  BUT SAMSUNG HAS ALREADY SAID THEY'RE

11     GOING TO ASSERT THAT YOU DID NOT PRACTICE THE ASSERTED CLAIMS

12     OF THE '959, '414, AND '172, SO YOU KNOW THE DOOR IS GOING TO

13     BE OPENED.

14          MR. KREVITT:  I THINK IT DEPENDS ON THE WAY IT'S

15     SAID, BUT YES, IT DOES -- THAT'S WHY I SAID THE ARGUMENT IS

16     BEING PREVIEWED.  IT CERTAINLY DOES SEEM THAT WAY, YOUR HONOR.

17          THE COURT:  ALL RIGHT.  WELL, THEN I'M INCLINED TO

18     MAKE YOU INCLUDE THEM AS PART OF YOUR TEN.

19          MR. KREVITT:  YOUR HONOR, OBVIOUSLY WE'LL DO WHATEVER

20     YOUR HONOR SAYS.

21          THE COURT:  YEAH.

22          MR. KREVITT:  THE CASE NARROWING ORDER LIMITING THE

23     NUMBER OF CLAIMS, OF COURSE WE OBJECTED TO THE NUMBER OF

24     CLAIMS, YOUR HONOR ENTERED THAT ORDER.  IT SHOULD NOT BE USED,

25     AGAIN, IN A WAY TO LIMIT CLAIMS THAT WE'RE ABLE TO MAKE WITH

1    RESPECT TO THOSE TEN.  YOUR HONOR HAS HEARD ME ON THAT AND WE

2    PROCEEDED IN THE WAY YOUR HONOR SAID.

3           THE COURT:  WELL, IT SOUNDS LIKE CLAIM 11 HAS NOT

4    BEEN THE SUBJECT OF EXPERT DISCOVERY, RIGHT?  THAT'S WHAT I'M

5    HEARING.

6           MR. KREVITT:  WELL, THAT --

7           MS. MAROULIS:  YOUR HONOR, THERE HAS BEEN A STATEMENT

8    BY APPLE'S EXPERT, VERY BRIEFLY IN THEIR REPORT, AND WE'RE

9    ACTUALLY CHALLENGING IT ON DAUBERT BECAUSE IT'S NOT A

10   SUPPORTABLE STATEMENT.

11          SO AS FAR AS SPAWNING SATELLITE LITIGATION, THERE ALREADY

12   HAVE BEEN SEVERAL MOTIONS BEFORE THIS COURT.  SO IT'S NOT ONLY

13   BURDENING SAMSUNG, IT'S BURDENING THE COURT BECAUSE APPLE IS

14   ASSERTING MORE CLAIMS THAN JUST THE INFRINGEMENT CLAIMS.

15          THE COURT:  BUT IT SOUNDS AS IF THERE'S GOING TO BE A

16   DISPUTE AS TO WHETHER APPLE PRACTICES CLAIM 11, OR NOT, OF THE

17   '414.

18          MR. KREVITT:  THERE --

19          THE COURT:  SO ARE WE GOING TO HAVE TO NOW REOPEN

20   DISCOVERY TO HAVE THIS FULLY FLESHED OUT?  YOU ALREADY SAID

21   THERE'S NO EXPERT REPORT ON INVALIDITY OF CLAIM 11.  SHOULD I

22   POSTPONE THE TRIAL IN MARCH --

23          MR. KREVITT:  NO, YOUR HONOR.

24          THE COURT:  -- TO GIVE YOU TIME TO --

25          MR. KREVITT:  NO, YOUR HONOR.

```
 1              THE COURT:  NO, NO.  I'M NOT GOING TO MAKE YOU -- IF

 2     I FORCE YOU TO GO TO AN INVALIDITY MOTION WITHOUT YOU HAVING AN

 3     EXPERT REPORT, I WILL BE REVERSED INSTANTANEOUSLY.  SO I DON'T

 4     WANT TO GO THAT DIRECTION WITHOUT GIVING YOU THE FULL

 5     OPPORTUNITY TO TAKE EXPERT DISCOVERY ON THIS.

 6          I WOULD RATHER CONTINUE THE TRIAL DATE AND GIVE YOU THE

 7     OPPORTUNITY TO FULLY BRIEF THIS, TAKE WHATEVER DEPOSITIONS YOU

 8     WANT, TO OBTAIN WHATEVER EXPERT REPORTS YOU THINK ARE

 9     NECESSARY.

10              MR. KREVITT:  YOUR HONOR, AS I SAID, WE -- AS I SAID

11     WHEN YOUR HONOR SAID A MOMENT AGO, OR A FEW MOMENTS AGO, THAT

12     YOU WOULD ADDRESS VALIDITY IF WE CONTINUED TO WANT TO

13     AFFIRMATIVELY ASSERT THAT WE PRACTICE THE CLAIM --

14              THE COURT:  RIGHT, BUT YOU ARE, BECAUSE YOU'RE SAYING

15     IF THEY OPEN THE DOOR, WHICH THEY'VE ALREADY SAID THEY'RE GOING

16     TO, THEN YOU WANT TO GET THIS CLAIM IN.

17              MR. KREVITT:  I HAVE REQUESTED --

18              THE COURT:  SO IT'S A HOLLOW OFFER.  IT'S A HOLLOW

19     OFFER.  THE ISSUE WILL BE RIPE.  SAMSUNG IS SAYING THEY ARE

20     GOING TO MAKE THE STATEMENT THAT THE ASSERTED CLAIMS ARE NOT

21     PRACTICED AS TO THESE PATENTS BY APPLE.

22              MR. KREVITT:  RIGHT.  I --

23              THE COURT:  SO --

24              MR. KREVITT:  I UNDERSTAND, YOUR HONOR.  IT IS NOT --

25     WE WANT TO DO NOTHING, OF COURSE, TO AFFECT THE TRIAL DATE.
```

```
 1              THE COURT:  UM-HUM.

 2              MR. KREVITT:  WITH RESPECT TO CLAIM 11 AND THE OTHER

 3      UNASSERTED CLAIMS, I HAVE MADE A REQUEST THAT WE HAVE AN

 4      OPPORTUNITY TO SAY WE PRACTICE THE PATENT.

 5              IF WE'RE NOT ABLE TO DO THAT WITHOUT IT IN TURN OPENING

 6      THE DOOR TO THESE OTHER ISSUES, THE SATELLITE ISSUES THAT WE'RE

 7      TALKING ABOUT, THEN WE WON'T SAY THAT.

 8              I'VE MADE A REQUEST THAT WE HAVE AN OPPORTUNITY TO SAY

 9      THAT WE PRACTICE THE PATENTS IN RESPONSE TO SAMSUNG'S ARGUMENT

10      THAT WE DON'T PRACTICE THE ASSERTED CLAIMS.

11              IF WE ARE NOT ABLE TO DO THAT WITHOUT OPENING THE DOOR TO

12      SATELLITE LITIGATION AND OTHER IMPACT OF THAT, THEN WE WON'T

13      MAKE THAT REQUEST TO YOUR HONOR TO BE ABLE TO SAY THAT.

14              IT WAS MY REQUEST TO YOUR HONOR BECAUSE --

15              THE COURT:  YOUR REQUEST WAS "WE WILL WITHDRAW THE

16      UNASSERTED CLAIMS IF AND ONLY IF SAMSUNG DOES NOT ARGUE THAT

17      APPLE DOES NOT PRACTICE THE CLAIMS OF THE PATENT," WHICH THEY

18      HAVE SAID EXPLICITLY THEY WILL MAKE THAT ARGUMENT, SO THEN THE

19      UNASSERTED CLAIMS WILL BE IN THE CASE, IN WHICH CASE I THINK

20      IT'S -- I MEAN, I'LL THINK ABOUT THIS MOTION FURTHER, BUT MY

21      TENTATIVE RIGHT NOW IS IT SEEMS ONLY FAIR THAT THEY THEN GET TO

22      CHALLENGE ITS VALIDITY.

23              MR. KREVITT:  THEN WE WOULD WITHDRAW THE CLAIMS, YOUR

24      HONOR, AND NOT REQUEST THE OPPORTUNITY TO SAY THAT WE PRACTICE

25      THE UNASSERTED CLAIMS.
```

```
 1              THE COURT:  EVEN IF SAMSUNG ARGUES AT TRIAL THAT THE
 2       CLAIMS YOU ARE ASSERTING AS TO THESE THREE PATENTS ARE NOT
 3       PRACTICED BY APPLE?
 4              MR. KREVITT:  YES, YOUR HONOR.  THAT -- YES.  I --
 5       AGAIN, YOUR HONOR, WHEN I CAME UP AND TOLD YOU WHAT OUR
 6       POSITION WAS, I WAS HOPING THAT THERE WOULD BE SOME
 7       ACCOMMODATION FOR THE FACT THAT, IN FACT, WE DO PRACTICE THE
 8       PATENTS AND IT WOULD BE, IN OUR VIEW, POTENTIALLY MISLEADING
 9       FOR SAMSUNG TO SUGGEST OTHERWISE.
10          IF THE IMPACT OF US BEING ABLE TO DO THAT IS THAT IT OPENS
11       THE DOOR TO ALL THESE OTHER ANCILLARY ISSUES AND IMPACTS
12       SCHEDULING, THEN WE WON'T DO THAT.
13              THE COURT:  OKAY.  THEN THERE'S THIS OTHER ISSUE.  I
14       THINK SAMSUNG IS OVERREACHING IN SAYING THAT DR. HAUSER,
15       DR. VELLTURO, AND OTHER EXPERTS ARE RELYING ON THE UNASSERTED
16       CLAIMS, AND IT'S NOT EVEN CLEAR FROM EITHER YOUR DAUBERT MOTION
17       OR YOUR MOTION TO ENFORCE COMPLIANCE WITH THE COURT'S NARROWING
18       ORDER EXACTLY WHAT IT IS THAT YOU'RE SEEKING TO STRIKE AND IT
19       DOES SEEM OVERBROAD.
20          NOW, I GUESS WE DON'T HAVE TO -- WE COULD HOLD OFF ON
21       THE -- THESE ARE PROBABLY DAUBERT ISSUES ANYWAY, BECAUSE --
22              MS. MAROULIS:  YOU KNOW, SOME OF THESE ISSUES ARE
23       BRIEFED IN DAUBERT, YOUR HONOR, SO WE CAN ADDRESS THEM IN
24       JANUARY.
25              BUT INITIALLY WHAT WE'RE SEEKING IS NOT TO HAVE THIS
```

```
 1    CASE -- THESE CLAIMS IN THE CASE, AND IT SOUNDS LIKE APPLE IS

 2    CONCEDING THAT THESE THREE CLAIMS WILL NOT BE PART OF THE CASE.

 3         WHAT WE BRIEFED IN THE DAUBERT MOTION IS THAT DR. HAUSER

 4    CONFLATES THE CLAIMS THAT ARE ASSERTED FOR INFRINGEMENT AND

 5    THESE UNASSERTED CLAIMS ARE, AS OF TODAY, I UNDERSTAND, NOT

 6    GOING TO BE PART OF THE CASE.

 7         AND THEN HE CREATES A DESCRIPTION FOR HIS SURVEY THAT IS

 8    NOT CLAIM SPECIFIC AS TO THE CLAIMS THAT ARE ASSERTED FOR

 9    INFRINGEMENT, BUT, FOR EXAMPLE, IN THE CASE OF '414 PATENT,

10    MUCH MORE AKIN TO CLAIM 11 THAT IS NOT GOING TO BE PART OF THE

11    CASE.

12         SO WE'RE PREPARED TO DISCUSS THAT AT LENGTH WHENEVER THE

13    COURT DESIRES AT THE DAUBERT HEARING, BUT THAT IS HOW APPLE IS

14    USING THEM TO OUR UNDERSTANDING.

15              MR. KREVITT:  YOUR HONOR, WE DISAGREE, BUT IT DOESN'T

16     SOUND LIKE THAT'S A TODAY ISSUE.

17         THE MOTION -- THERE WAS A MOTION TO ENFORCE COMPLIANCE, TO

18    FORCE US TO REDUCE THE NUMBER OF CLAIMS THAT SAMSUNG SAID WE

19    WERE ASSERTING.  WE HAVE AGREED TO DO THAT.

20         WE DISAGREE WITH THE CHARACTERIZATIONS THAT HAVE BEEN MADE

21    FOR THE DAUBERT REGARDING OUR EXPERT REPORT.  IT DOES NOT RELY

22    ON CLAIM 11, FOR EXAMPLE, AND WE'LL HAVE AN OPPORTUNITY TO

23    DISCUSS THAT NOW OR WHENEVER YOUR HONOR ADDRESSES THE DAUBERT.

24              THE COURT:  WELL, THE DAUBERTS ARE SET FOR

25     JANUARY 23RD.  I'M FINE WITH KEEPING THEM.
```

1          BUT ARE THE IMPLICATIONS OF THIS WITHDRAWAL OF THE

2     UNASSERTED CLAIMS, WILL THEY ARISE IN ANY OTHER CONTEXT OTHER

3     THAN EXPERT REPORTS?  OR WILL THAT BE THE ONLY CONTEXT, IN

4     WHICH CASE WE CAN CERTAINLY WAIT UNTIL JANUARY 23RD.

5               MR. KREVITT:  I BELIEVE THAT'S IT.

6               THE COURT:  IS THAT IT?

7               MS. MAROULIS:  MAY I CHECK WITH THE TEAM FOR ONE

8     SECOND?

9               THE COURT:  OKAY.

10        (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

11              MS. MAROULIS:  YOUR HONOR, JUST IN THE CONTEXT OF THE

12     EXPERT REPORTS THAT ARE THE SUBJECT TO DAUBERT RULINGS.

13              THE COURT:  ONLY EXPERT REPORTS, OKAY.  SO THAT WE

14     CAN -- I THINK THIS IS PROBABLY MORE APPROPRIATELY RAISED AT

15      THAT TIME ANYWAY VERSUS IN THIS TYPE OF PROCEDURALLY ODD

16      MOTION.

17        OKAY.  THE ONLY ISSUE I'M STILL NOT SETTLED ON IS WHETHER

18     WE NEED CLAIM CONSTRUCTION.  I KNOW BOTH SIDES ARE TAKING

19     DIFFERENT POSITIONS ON THAT ISSUE DEPENDING ON WHAT IS MOST

20     BENEFICIAL TO THEIR POSITION.

21        I'LL GIVE YOU ONE LAST WORD ON WHAT TERMS, IF ANY, YOU

22     THINK CLAIM CONSTRUCTION IS NECESSARY.

23              MR. JOHNSON:  YOUR HONOR, WE WERE GOING TO SUGGEST

24     THAT, GIVEN THE LATE HOUR, THAT IT MAY MAKE SENSE FOR US TO

25      SUBMIT A VERY SHORT, YOU KNOW, THREE-PAGE SUBMISSION JUST

1      EXPLAINING THE TERMS THAT WE WOULD LIKE TO HAVE REQUIRED --

2      LIKE TO HAVE CONSTRUED.

3              THE COURT:  NOPE.  IT'S NOW.

4              MR. JOHNSON:  IT'S NOW?

5              THE COURT:  IT'S NOW.

6              MR. JOHNSON:  OKAY.  CAN WE JUST HAVE A MINUTE?

7              THE COURT:  OKAY.  AND I'M GOING TO POSE THE SAME

8      QUESTION TO APPLE AS WELL.  IF THERE ARE ANY THAT YOU --

9          (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

10             MR. KREVITT:  I THINK, YOUR HONOR, AND AS I SAID

11     EARLIER, THERE'S A QUESTION OF WHETHER WE'RE ASKING FOR A CLAIM

12     CONSTRUCTION OR HAVE SIMPLY FILED A MOTION, THE DEFENSE OF

13     WHICH REQUIRES A CLAIM CONSTRUCTION.

14         BUT, FOR EXAMPLE, THE ONE --

15             THE COURT:  AND I'M NOT NECESSARILY GOING TO DO ANY

16     CLAIM CONSTRUCTION.  I JUST WANT TO GET AN UNDERSTANDING OF THE

17     PARTIES' POSITIONS.

18             MR. KREVITT:  I UNDERSTAND.  THE ISSUES THAT WERE

19     ADDRESSED TODAY THAT IMPLICATE CLAIM CONSTRUCTION ISSUES

20     POTENTIALLY ARE THE '172, THE PHYSICAL KEYBOARD.

21             THE COURT:  YES.

22             MR. KREVITT:  THE '414 MOTIONS THAT WE WERE JUST

23     DISCUSSING, SO MORE SPECIFICALLY AS TO INVALIDITY, WHETHER

24     EXECUTING ON --

25             THE COURT:  SO THE "PROVIDED BY"?

```
 1                    MR. KREVITT:  CORRECT, EXACTLY RIGHT, WHETHER

 2      "EXECUTING ON" OR "PERFORMING" CONSTITUTING "PROVIDING."

 3                    THE COURT:  SO YOU DON'T THINK "CONFIGURED TO" MEETS

 4      IT?

 5                    MR. KREVITT:  WELL, WE THINK, AGAIN, "CONFIGURED TO"

 6      IS CLEAR AND THAT WHEN SOMETHING DIRECTS SOMETHING ELSE TO

 7      SYNCHRONIZE, IT IS CON -- THAT COMPONENT IS CONFIGURED TO

 8      SYNCHRONIZE.

 9           SO IN THAT RESPECT, NO.  BUT THERE IS NO FACTUAL DISPUTE

10      BETWEEN THE PARTIES.

11                AND IN THAT REGARD, THE NON-INFRINGEMENT ARGUMENT THAT HAS

12      BEEN RAISED BY SAMSUNG THAT DIRECTING IS NOT -- A COMPONENT

13      THAT DIRECTS SYNCHRONIZATION IS NOT CONFIGURED TO SYNCHRONIZE

14      DOES IMPLICATE THEN A CLAIM CONSTRUCTION QUESTION.

15                    THE COURT:  ALL RIGHT.  SO "KEYBOARD" AND "PROVIDED

16      BY."

17           I'M NOT -- I'M NOT SAYING I'M GOING TO.  I THINK UNDER

18      EPLUS V. LAWSON AND FUNCTION MEDIA V. GOOGLE I DON'T HAVE TO.

19      I THINK YOU ALL HAVE WAIVED IT.  I'VE TOLD YOU BEFORE THAT IF

20      YOU WANTED AN ADDITIONAL CLAIM CONSTRUCTION HEARING, YOU NEEDED

21      TO ASK FOR ONE AND IT WOULD BE DONE IN LIEU OF THE TRIAL AND NO

22      ONE HAS MADE THAT REQUEST.

23           AND SO --

24                    MR. KREVITT:  WELL, IT'S --

25                    THE COURT:  BUT I DO WANT TO CONSIDER WHAT YOU'RE --
```

1          MR. KREVITT:  AND THE REASON -- AS I SAID EARLIER,

2     THE REASON WE DID NOT REQUEST CLAIM CONSTRUCTION ON THOSE

3     ISSUES IS "KEYBOARD," FOR EXAMPLE, WE NEVER WOULD HAVE IMAGINED

4     "PHYSICAL" WOULD BE ADDED, SO WE WOULDN'T REQUEST A

5     CONSTRUCTION ON THAT.

6          "PROVIDED" WE THINK IS CLEAR.  BUT GIVEN THE ARGUMENT THAT

7     "EXECUTING" EQUALS "PROVIDING," WE THINK THAT NEEDS

8     CLARIFICATION.

9          THE COURT:  UM-HUM.

10          MR. KREVITT:  AND THE SAME WITH "CONFIGURED TO

11     SYNCHRONIZE."  WE WOULDN'T HAVE REQUESTED A CLAIM CONSTRUCTION,

12     BUT GIVEN THE NON-INFRINGEMENT ARGUMENT THAT'S BEEN RAISED THAT

13     WHEN YOU DIRECT -- THAT A COMPONENT THAT DIRECTS THE

14     SYNCHRONIZATION IS NOT CONFIGURED TO SYNCHRONIZE, WE THINK THAT

15     ALSO REQUIRES CLARIFICATION GIVEN THE ABSENCE OF FACTUAL

16     ISSUES.

17          THE COURT:  OKAY.  THANK YOU.

18          LET ME HEAR FROM SAMSUNG.

19          MR. JOHNSON:  YOUR HONOR, ON THE '414 PATENT, WE

20     THINK THE TERM OUGHT TO BE "THREAD PROVIDED BY" IN ADDITION TO

21     "CONFIGURED TO SYNCHRONIZE" AND THE TERM "PLUG-IN."

22          ON THE '959, THE TERM "HEURISTIC."

23          ON THE '647 PATENT, THE TERMS "FAST STRING SEARCH,"

24     "GRAMMAR" --

25          THE COURT:  OH, THIS IS RIDICULOUS.  NOW YOU'RE

1    GETTING RIDICULOUS.  YOU DIDN'T EVEN BRIEF THIS IN YOUR SUMMARY

2    JUDGMENT MOTION.  THIS IS NOT -- I --

3         MR. JOHNSON:  THAT'S WHY I WANTED A MOMENT TO CONFER,

4    YOUR HONOR.

5         THE COURT:  THAT IS RIDICULOUS.  NOW I JUST GET THE

6    FEELING YOU JUST WANT TO DELAY THE TRIAL, SO NOW YOU'RE GOING

7    TO COME UP WITH, LIKE, 45 CLAIM TERMS THAT NEED TO BE

8    CONSTRUED.

9         YOU KNOW, I WOULD REALLY APPRECIATE SOME GOOD FAITH HERE.

10   I'M ASKING -- YOU DIDN'T EVEN BRIEF ANY OF THESE TERMS.  THEY

11   DIDN'T EVEN COME UP IN SUMMARY JUDGMENT.  YOU WANT ME TO JUST

12   CONSTRUE EVERY SINGLE TERM IN ALL THE PATENTS?

13        MR. JOHNSON:  NO, YOUR HONOR.

14        THE COURT:  COME ON.  I'M ASKING FOR A GOOD FAITH

15   HERE.  YOU DIDN'T EVEN RAISE THIS IN YOUR SUMMARY JUDGMENT

16   MOTION AND NOW YOU WANT CLAIM CONSTRUCTION?

17        OKAY.  HOW MANY TERMS DO YOU HAVE FOR EVERY PATENT?  FIVE?

18   SIX?

19        MR. JOHNSON:  NO.

20        THE COURT:  IT WASN'T EVEN RELEVANT TO SUMMARY

21   JUDGMENT AND NOW YOU'RE RAISING IT?

22        MR. JOHNSON:  NO, YOUR HONOR.  SO YOU ASKED -- AND WE

23   WERE OBVIOUSLY LIMITED IN PAGES IN THE SUMMARY JUDGMENT

24   MOTIONS.

25        THE COURT:  OKAY, FINE.  THEN I'M NOT ASKING.  I'M

```
 1          NOT ASKING.  I'M NOT ASKING.  YOU'VE WAIVED IT.

 2              UNDER EPLUS VERSUS LAWSON AND FUNCTION MEDIA V. GOOGLE I

 3      DON'T HAVE TO DO ANY FURTHER CLAIM CONSTRUCTION.

 4          SO THANK YOU.

 5                  MR. JOHNSON:  YOUR HONOR, IF I COULD --

 6                  THE COURT:  THANK YOU.

 7                  MR. JOHNSON:  WITH RESPECT TO THE MOTIONS THAT ARE

 8      PENDING, YOUR HONOR, I JUST --

 9                  THE COURT:  WHAT?

10                  MR. JOHNSON:  THE TERM "HEURISTIC" WE THINK NEEDS TO

11      BE CONSTRUED.

12          "THREAD PROVIDED BY" ON THE '414 PATENT.

13          ON THE '647 PATENT, "FAST STRING SEARCH."

14          AND ON THE '757 PATENT, "UPDATED IN RELATION TO."

15                  MR. KREVITT:  YOUR HONOR, I WOULD JUST NOTE THAT

16      "THREAD PROVIDED BY" WAS NEVER IDENTIFIED IN ANY BRIEFING

17      RELATING TO THIS SUMMARY JUDGMENT, OR OTHERWISE, AS A TERM THAT

18      REQUIRES CONSTRUCTION.

19          THE ONLY TERM THAT WAS -- THE ONLY WORD OF IT THAT WAS

20      RELEVANT WAS "PROVIDED BY."  THAT'S THE ONLY TERM THE PARTIES

21      BRIEFED.  THAT'S THE ONLY TERM THE EXPERTS ADDRESSED.

22                  MR. JOHNSON:  AND ON THE '596, "DDI."

23                  THE COURT:  ALL RIGHT.

24                  MR. JOHNSON:  THAT'S IT.

25                  THE COURT:  ALL RIGHT.  WELL, THANK YOU ALL VERY
```

1       MUCH.

2               MR. KREVITT:  THANK YOU, YOUR HONOR.

3               MR. JOHNSON:  THANK YOU, YOUR HONOR.

4           (THE PROCEEDINGS WERE CONCLUDED AT 6:10 P.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  JANUARY 14, 2014

19

20

21

22

23

24

25