1   [COUNSEL LISTED ON SIGNATURE PAGES]

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                SAN JOSE DIVISION

| | |
|---|---|
| 11  APPLE INC., a California corporation, | CASE NO. 5:12-cv-00630-LHK |
| 12            Plaintiff, | **JOINT SUBMISSION OF EXCERPTS OF THE DEPOSITION TESTIMONY OF DR. ALEX SNOEREN REGARDING U.S. PATENT NO. 7,761,414** |
| 13     v. | |
| 14  SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG | |
| 15  ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG | |
| 16  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 17 | |
| 18         Defendants. | |
| 19  SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG | |
| 20  ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG | |
| 21  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 22 | |
| 23        Counterclaim-Plaintiffs, | |
| 24     v. | |
| 25  APPLE INC., a California corporation, | |
| 26        Counterclaim-Defendant. | |

27

28

Pursuant to this Court's January 24, 2014 Order (Dkt. 1158) directing the parties to "file a joint submission related to Dr. Snoeren's deposition testimony regarding Dr. Hauser's survey's descriptions of the '414 patent," the parties respectfully submit the attached true and correct excerpts of the deposition testimony of Dr. Alex Snoeren.  Materials selected by Samsung are attached as Exhibit A.  Materials selected by Apple are attached as Exhibit B.

Apple's Addendum

For further context to the deposition designations, Apple also refers the Court to paragraphs 509-11 of the Snoeren Report (McCracken Ex. C-2, Dkt. No. 859-26) and pages 159:16-160:16 of the deposition of Samsung's expert Dr. Chase (McCracken Ex. A-11, Dkt. No. 859-11), both of which are discussed in Apple's Opposition to Samsung's Motion to Exclude Expert Testimony at page 9 n. 10 (Dkt. No. 857-4.)

Samsung's Response to Apple's "Addendum"

The Court's Order (Dkt. 1158) requested that the parties file "Dr. Snoeren's deposition testimony regarding Dr. Hauser's survey's descriptions of the '414 patent."  Apple's "addendum" references materials other than Dr. Snoeren's deposition testimony, and the Court should ignore it for that reason.  Should the Court consider Apple's "addendum" in determining whether to strike Dr. Hauser's opinion, however, the Court should also consider (1) paragraphs 47-48 to Dr. Chase's expert report, filed in support of Samsung's *Daubert* motion as Fazio Decl. Ex. S (Dkt. 807-05), as well as (2) the discussion of Dr. Snoeren's deposition testimony at page 7 & n.7 of Samsung's Reply in support of its *Daubert* motion (Dkt. 948-05).

1

Dated: January 26, 2014

By: _/s/ Rachel Krevans_        By: _/s/ Patrick Curran_

Attorney for Plaintiff and Counterclaim-Defendant APPLE INC.

Attorney for Defendants and Counterclaim-Plaintiff SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA,  INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

HAROLD J. McELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
JACK W. LONDEN (CA SBN 85776)
jlonden@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
RUTH N. BORENSTEIN (CA SBN 133797)
rborenstein@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Kevin P.B. Johnson
(Bar No. 177129 (CA); 2542082 (NY))
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

WILLIAM F. LEE (_pro hac vice_)
William.lee@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

**ATTESTATION OF E-FILED SIGNATURES**

I, Patrick D. Curran, am the ECF user whose ID and password are being used to file this Joint Submission of Excerpts of the Deposition Testimony of Dr. Alex Snoeren Regarding U.S. Patent No. 7,761,414.  In compliance with Local Rule 5-1, I hereby attest that Rachel Krevans has concurred in this filing.

Dated: January 26, 2014                                    _/s/ Patrick D. Curran__        _____

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil Local Rule 5.1, and will be served upon all counsel of record for the parties who have consented to electronic service in accordance with Civil Local Rule 5.1 via the Court's ECF system.

Dated: January 26, 2014                                    _/s/ Patrick D. Curran_        _____

# EXHIBIT A

1          IN THE UNITED STATES DISTRICT COURT
2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
3

4  APPLE, INC., a California          )
   corporation,                       )
5                                      )
6                  Plaintiff,          )
                                       ) Case No.
7                                      ) 12-cv-00630-LHK (PSG)
            vs.                        )
                                       ) Volume 1
8  SAMSUNG ELECTRONICS CO., LTD., a    )
   Korean corporation; SAMSUNG        )
9  ELECTRONICS AMERICA, INC., a New    )
   York corporation and SAMSUNG       )
10 TELECOMMUNICATIONS AMERICA, LLC, a) 
   Delaware limited liability         )
11 company,                           )
                                       )
12                                     ) Pages 1 to 311
                  Defendants.          )
13 _____)
14
15
16
17
18      VIDEOTAPED DEPOSITION OF ALEX SNOEREN
19           San Diego, California
20        Wednesday, September 25, 2013
21
22
23
24 Reported by:
   ELIZABETH BORRELLI, CSR No. 7844, CCLL, CLR
25 JOB NO. 65775

Page 269

1    tied behind my back with respect to just looking at          17:18

2    the device or prodding the device or something like

3    that.  I wouldn't want to speculate whether someone

4    could determine each one of these characterizations

5    through our means.                                            17:19

6    BY MR. PAK:

7        Q.   If somebody said this product is using

8    background synchronization.  I can synchronize my

9    device with another device in the background without

10   interrupting the user experience, that high level          17:19

11   description alone would not tell you whether that

12   system was practicing the specific implementation

13   techniques claimed in Claim 20, correct?

14          MR. BUROKER:  Objection.  Incomplete

15   hypothetical.                                                 17:19

16          THE WITNESS:  Again, Claim 20 has a number

17   of limitations.  The high level description you just

18   provided me doesn't speak to the details of these

19   particular limitations, so to the extent that your

20   hypothetical that you just provided to me didn't            17:19

21   speak to each one of these, I would say that no, I

22   can't do an infringement analysis based on your

23   hypothetical description.

24   BY MR. PAK:

25       Q.   And looking at Claim 20, specifically it's         17:19

Page 275

1   translate the implications of those implementation          17:35

2   details into user visible features in particular

3   with respect to having to wait to use an app.  I

4   think that speaks very directly to one of the

5   alternative noninfringing implementations that was          17:35

6   provided.  And so I believe he's drawing dichotomies

7   to the best of his ability that one -- a layperson

8   could understand, and I think he does a fair job of

9   representing some of those distinctions.

10       Q.   Let's be clear on the record, those.          17:35

11            Claim 20 requires a data class and -- a

12   series of data classes, and then it also talks about

13   software component is configured to synchronize

14   structure data of a first data class.

15            Do you see that?          17:36

16       A.   I do see that.

17       Q.   There's no mention of those concepts

18   explicitly in the background synching description

19   from Dr. Hauser, correct?

20       A.   Again, Claim 20 talks about synchronizing          17:36

21   first data class.  There is mention in the

22   description of list of contacts as an examplar of a

23   first data class.  So the concepts are embodied.

24   The specific -- specific details, I agree with you,

25   are not here because those details would be          17:36

Page 276

1   difficult for a layperson to understand the          17:36

2   implications.

3       Q.   Put it differently:  If I gave you just a

4   description of background synching that Dr. Hauser

5   provided to the survey participants, you would not   17:36

6   be able to tell whether Claim 20 is being practiced

7   or not, correct?

8          MR. BUROKER:  Objection.  Incomplete

9   hypothetical.

10          THE WITNESS:  I did not use this paragraph    17:37

11   in my infringement analysis.  To the extent that

12   this paragraph describes a hypothetical, I'm not

13   able to conduct that analysis.

14   BY MR. PAK:

15       Q.   It doesn't have enough technical details    17:37

16   in that description to tell whether you Claim 20

17   elements are satisfied or not, true?

18       A.   Again, I do not believe that was the

19   purpose of this paragraph.  I believe the purpose of

20   this paragraph was to allow a layperson to           17:37

21   distinguish between functionality that's represented

22   in Claim 11 and Claim 20 and purported noninfringing

23   alternatives as offered by Samsung.

24       Q.   Look, I'm going to depose Dr. Hauser or

25   somebody else will depose Dr. Hauser and we can      17:37

1  figure out what his purpose was.  I'm just asking        17:37

2  you as the technical expert, if I gave you this

3  description of background synching from Dr. Hauser's

4  report, based on that description alone, you cannot

5  tell me whether Claim 20 is being practiced or not,      17:37

6  true?

7      A.   Again, I did not use this paragraph in

8  determining infringement analysis.  This paragraph

9  is a layperson's description.  This paragraph does

10 not fully describe some of the details that would be     17:38

11 evident in any particular implementation of this

12 hypothetical.

13     Q.   Therefore, you cannot tell me, based just

14 on this highly level description in Dr. Hauser's

15 report of background synching, whether each and          17:38

16 every element of Claim 20 would be satisfied, true?

17     A.   Again, I didn't try to do that.  I don't

18 propose to try and do that right now.  This was not

19 the paragraph that I used for that analysis.

20     Q.   Take the time.  It's not a very long          17:38

21 paragraph.  Take a look at it.  You tell me right

22 now whether you think, as a technical expert, you

23 could take what is described here and what's

24 described here alone to make a determination that

25 all the elements of Claim 20 are satisfied?            17:38

Page  278

1          MR. BUROKER:  Objection.  Incomplete          17:38

2    hypothetical.

3          THE WITNESS:  I don't believe that the

4    timeframe we have here with this set of information

5    that I could conduct a proper infringement analysis.    17:39

6    I did not.  I'm offering no opinions on whether this

7    hypothetical would infringe.

8          However, your specific question to me is,

9    as I sit here today, looking at this paragraph, do I

10   accuse this hypothetical thing of infringing?  And     17:39

11   my answer is I don't have an opinion about whether

12   that would infringe or not.

13   BY MR. PAK:

14       Q.  Let's be specific.  What do you think is

15   required by Claim 20?                                   17:40

16       A.  So Claim 20 says the storage medium, as in

17   Claim 11, wherein the synchronization software

18   component is configured to synchronize structured

19   data of a first data class and other synchronization

20   software components are configured to synchronize       17:40

21   structured data of other corresponding data classes.

22       Q.  Do you understand the concept of

23   antecedent basis with respect to claims?

24       A.  I apologize.  It's late in the day.  If

25   you could give me a definition of that.                 17:40

Page 282

1    is referring back to that synchronization, and          17:45

2    specifically, that synchronization software

3    component has the software -- synchronization

4    software component that it's referring to when it

5    talks about configured for first class and           17:45

6    configured for additional classes.

7         Q.   Wait a minute.  I agree with you that the

8    first synchronization software component recited in

9    Claim 20 has the article "the."  Do you see that?

10        MR. BUROKER:  Objection.  Foundation          17:46

11   question.

12   BY MR. PAK:

13        Q.   Do you see the word "the" in front of the

14   first instance of synchronization software component

15   in Claim 20?                                            17:46

16        A.   I do.

17        Q.   There is no "the"software synchronization

18   components in front of the language "other

19   synchronization software components," correct?

20        A.   That is correct.  However, it's saying       17:46

21   "other synchronization software components" software

22   synchronization components after describing what it

23   meant by a software synchronization component, in

24   particular the one described in Claim 11.

25             So plain english language saying we got      17:46

Page 283

1    one of these things configured for first data class.        17:46

2    And then we've got additional of those same things

3    that are configured for other data classes.

4          My reading is, if it meant to distinguish

5    these additional ones as not descending from Claim        17:46

6    11, it would say so.  It doesn't.  It establishes

7    which software synchronization components referring

8    to, and then it goes on to talk about at least three

9    of them.

10         Q.   Are you an expert in construing claims?        17:47

11              MR. BUROKER:  Objection.  Argumentative.

12   Calls for a legal conclusion.

13              THE WITNESS:  I'm not a lawyer.

14         I follow the guidance given to me by

15   counsel on how to apply claim construction.  I        17:47

16   believe we've covered that.  I would be happy to go

17   through it again for you.

18         So I follow guidance from counsel on how

19   to apply claim construction, interpretation of the

20   claims and then conduct an infringement analysis.        17:47

21   BY MR. PAK:

22         Q.   Just to be clear, there are other

23   synchronization software components in the patent

24   that do not practice the specific limitations of

25   Claim 11, true?        17:47

Page 285

1  thread?                                                    17:49

2      A.    I just want to be a very particular:   It

3  requires them to provide a thread, which is

4  different, and I believe there's some discrepancy

5  between Dr. Chase's report and mine about precisely    17:49

6  that issue.  So I just want to -- make sure I'm

7  clear on the record.

8          I believe the plain english language of

9  Claim 11 says wherein the at least one software

10 synchronization components processing thread is      17:49

11 provided by a synchronization software component.

12 Not just operates on or executes.  It's actually

13 provided by that component.  So I believe that's a

14 very important distinction.  I just want to make

15 sure we are both saying the same thing.              17:49

16     Q.    So Dr. Snoeren, let's -- fine, but let's

17 take the language that you're talking about:

18 Provided -- "providing a thread."

19          Is it your contention that under your

20 interpretation of Claim 20 that each of the recited  17:49

21 software synchronization components must provide a

22 separate thread?

23     A.    Yes.  That's the plain language

24 interpretation of Claim 20.  It says the

25 synchronization software component from Claim 11 --   17:50

Page 286

1   I've got three of them:  One of them for the first          17:50

2   data class, an additional -- other data classes.

3        Q.   So if I have three software components

4   that each serve as different data classes, but they

5   only provide collectively two threads, not three,          17:50

6   that type of system would not practice Claim 20,

7   correct, under your interpretation?

8             MR. BUROKER:  Objection.  Incomplete

9   hypothetical.

10            THE WITNESS:  Again, you're hypothetical:          17:50

11  I don't know how the three would provide two

12  threads.  But under plain language interpretation of

13  Claim 20, the construction that I applied in my

14  analysis, each of the software synchronization

15  components must individually provide a                     17:51

16  synchronization thread.

17  BY MR. PAK:

18       Q.   And what I'm saying if that requirement

19  was not satisfied, so you have three software

20  components, but they each do not provide a separate        17:51

21  thread, so you end up with less than three threads

22  in that scenario, that system will not practice

23  Claim 20; is that correct?

24            MR. BUROKER:  Objection.  Incomplete

25  hypothetical and vague.                                    17:51

Page 296

1    Q.   Okay.  So we have a single thread of                    18:01

2    execution.

3              And now we are going to execute three

4    synchronization software components in interleaved

5    fashion on that single thread of execution.  Do you         18:02

6    understand?

7    A.   I think I do.

8    Q.   Would that scenario or system practice

9    Claim 20?

10   A.   Well, my clarification question for you is            18:02

11   whether when we were talking about software

12   synchronization components of Claim 11 your response

13   was we're not; so full stop, we're not going to meet

14   Claim 20.

15   Q.   Okay.  Now I'm going to modify the                    18:02

16   hypothetical one more time.  I have three

17   synchronization software components, and I have a

18   single thread of execution.  Are you with me?

19   A.   I think so.

20   Q.   One of those synchronization software               18:02

21   components does meet claim of 11.  It provided the

22   thread.  Do you understand?

23   A.   I think so.

24   Q.   The other two components do not provide

25   their own threads but are using the thread provided       18:03

Page 297

1   by the first synchronization software component.          18:03

2   Are you with me?

3        A.   So I think what you -- I heard you say,

4   I'm just trying to clarify, is that these other two

5   software synchronization components do not meet the       18:03

6   limitations of Claim 11; in particular, they at

7   least do not meet the requirements they provide the

8   software synchronization thread?

9        Q.   Correct.  And the reason for that is they

10  are using the thread that was created by the first        18:03

11  synchronization software component.

12       A.   Okay.

13       Q.   So does that hypothetical meet Claim 20?

14       A.   Again, I believe the hypothetical that you

15  set up, to the extent that I've clarified and             18:03

16  understood, is you have three software

17  synchronization components, one that you assert

18  meets limitations of Claim 11, two that you assert

19  do not.  Under the plain language interpretation of

20  Claim 20, it requires at least three components,          18:03

21  each of which meet the requirements of Claim 11, so

22  I believe the answer to your hypothetical is no.

23       Q.   Okay.

24            And now I'm going to give you another

25  hypothetical.                                             18:04

# EXHIBIT B

```
 1              IN THE UNITED STATES DISTRICT COURT
 2        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4   APPLE, INC., a California          )
     corporation,                       )
 5                                       )
                   Plaintiff,            )
 6                                       ) Case No.
                                         ) 12-cv-00630-LHK (PSG)
 7            vs.                         )
                                         ) Volume 1
 8   SAMSUNG ELECTRONICS CO., LTD., a    )
     Korean corporation; SAMSUNG        )
 9   ELECTRONICS AMERICA, INC., a New   )
     York corporation and SAMSUNG       )
10   TELECOMMUNICATIONS AMERICA, LLC, a )
     Delaware limited liability         )
11   company,                            )
                                         )
12                                       ) Pages 1 to 311
                   Defendants.           )
13   _____)
14
15
16
17
18         VIDEOTAPED DEPOSITION OF ALEX SNOEREN
19              San Diego, California
20           Wednesday, September 25, 2013
21
22
23
24   Reported by:
     ELIZABETH BORRELLI, CSR No. 7844, CCLL, CLR
25   JOB NO. 65775
```

Page 272

1    5:22 p.m.                                            17:22

2         (Recess.)

3         THE VIDEOGRAPHER:  We are back on the

4    record at 5:31 p.m. and this marks the beginning of

5    tape four.                                           17:30

6    BY MR. PAK:

7      Q.   All right.  Dr. Snoeren, take out the

8    Hauser report, and look at paragraph 74.

9         And take a look at the description of

10   "background synching," and I'll read that into the   17:31

11   record.

12        "Background synching feature allows you to

13   continue to use an app while data related to that

14   app that is stored on your smart phone tablet

15   synchronizes with data stored elsewhere, such as on  17:31

16   a remote computer.  For example, you can access and

17   edit data, such as a list of contacts on your smart

18   phone, tablet, even as your phone tablet is sending

19   data for those contacts to your work computer.

20        "Without this feature you would have to       17:32

21   wait to use an app, for example, the contacts app,

22   while the data for the app is synchronizing with a

23   remote computer and that wait may be long or short."

24        Do you understand what I read from Dr.

25   Hauser's report?                                     17:32

Page  273

1     A.   I understand that you read that paragraph          17:32

2  from paragraph 74 of Dr. Hauser's report yes, sir.

3     Q.   And do you understand what that means?

4     A.   I do understand that -- the meaning of

5  this paragraph, yes, sir.                                  17:32

6     Q.   And you would agree with me, sir, that the

7  background synching description from Dr. Hauser does

8  not describe specifically whether there are

9  synchronization components and how those

10  synchronization components could be configured as        17:32

11  taught in Claim 20, fair?

12     A.   Again, as we discussed with respect to the

13  universal search paragraph just below it, my

14  understanding is this paragraph is intended for a

15  lay audience to understand the ramifications of          17:33

16  instrumentality implementing the claims of Claim 11

17  and of Claim 20.  So in that sense I believe that

18  this paragraph does a fair job of describing the

19  user visible affects of an implementation that meets

20  those claim languages, and, in particular, I think       17:33

21  this paragraph does a fair job of distinguishing the

22  effects that an implementation of Claim 11 and Claim

23  20 provides vis-a-vis the suggested alternative

24  noninfringing implementations provided by Samsung.

25     Q.   I'm not sure that you responded to my            17:33

Page  274

```
 1   question specifically.                              17:33

 2          I'm looking at Claim 20.

 3          You have a particular interpretation of

 4   Claim 20 with respect to the elements of Claim 20

 5   that you set forth in your reports, correct?         17:34

 6      A.   Yes.   I applied the same principles that

 7   we discussed earlier today to Claim 20 as part of my

 8   analysis.

 9      Q.   There was no mention in the background

10   synching description --                              17:34

11          [Reporter requests clarification.]

12   BY MR. PAK:

13      Q.   -- background synching description of

14   Dr. Hauser's report of any particular arrangement of

15   synchronization software component.   There's no     17:34

16   mention of data class of any type, correct?

17      A.   Well, it does talk about data classes in a

18   layman's term.   It talks about such as the list of

19   contacts on your smart phones.   So that's an example

20   of a data class called out in the 414.               17:35

21          As you mentioned, there are technical

22   details of the architecture that are in Claim 20

23   that one skilled in the art would understand that

24   may not have significant implications for a

25   layperson.   So I believed Dr. Hauser attempted to   17:35
```

Page 275

1    translate the implications of those implementation        17:35

2    details into user visible features in particular

3    with respect to having to wait to use an app.  I

4    think that speaks very directly to one of the

5    alternative noninfringing implementations that was        17:35

6    provided.  And so I believe he's drawing dichotomies

7    to the best of his ability that one -- a layperson

8    could understand, and I think he does a fair job of

9    representing some of those distinctions.

10        Q.    Let's be clear on the record, those.           17:35

11              Claim 20 requires a data class and -- a

12   series of data classes, and then it also talks about

13   software component is configured to synchronize

14   structure data of a first data class.

15              Do you see that?                                17:36

16        A.    I do see that.

17        Q.    There's no mention of those concepts

18   explicitly in the background synching description

19   from Dr. Hauser, correct?

20        A.    Again, Claim 20 talks about synchronizing       17:36

21   first data class.  There is mention in the

22   description of list of contacts as an examplar of a

23   first data class.  So the concepts are embodied.

24   The specific -- specific details, I agree with you,

25   are not here because those details would be           17:36

Page 276

1  difficult for a layperson to understand the          17:36

2  implications.

3      Q.   Put it differently:  If I gave you just a

4  description of background synching that Dr. Hauser

5  provided to the survey participants, you would not     17:36

6  be able to tell whether Claim 20 is being practiced

7  or not, correct?

8          MR. BUROKER:  Objection.  Incomplete

9  hypothetical.

10          THE WITNESS:  I did not use this paragraph   17:37

11  in my infringement analysis.  To the extent that

12  this paragraph describes a hypothetical, I'm not

13  able to conduct that analysis.

14  BY MR. PAK:

15      Q.   It doesn't have enough technical details    17:37

16  in that description to tell whether you Claim 20

17  elements are satisfied or not, true?

18      A.   Again, I do not believe that was the

19  purpose of this paragraph.  I believe the purpose of

20  this paragraph was to allow a layperson to           17:37

21  distinguish between functionality that's represented

22  in Claim 11 and Claim 20 and purported noninfringing

23  alternatives as offered by Samsung.

24      Q.   Look, I'm going to depose Dr. Hauser or

25  somebody else will depose Dr. Hauser and we can      17:37

Page 277

1   figure out what his purpose was.   I'm just asking          17:37

2   you as the technical expert, if I gave you this

3   description of background synching from Dr. Hauser's

4   report, based on that description alone, you cannot

5   tell me whether Claim 20 is being practiced or not,          17:37

6   true?

7        A.   Again, I did not use this paragraph in

8   determining infringement analysis.   This paragraph

9   is a layperson's description.   This paragraph does

10  not fully describe some of the details that would be         17:38

11  evident in any particular implementation of this

12  hypothetical.

13       Q.   Therefore, you cannot tell me, based just

14  on this highly level description in Dr. Hauser's

15  report of background synching, whether each and              17:38

16  every element of Claim 20 would be satisfied, true?

17       A.   Again, I didn't try to do that.   I don't

18  propose to try and do that right now.   This was not

19  the paragraph that I used for that analysis.

20       Q.   Take the time.   It's not a very long          17:38

21  paragraph.   Take a look at it.   You tell me right

22  now whether you think, as a technical expert, you

23  could take what is described here and what's

24  described here alone to make a determination that

25  all the elements of Claim 20 are satisfied?              17:38

Page 284

1          MR. BUROKER:  Objection.  Vague.          17:47

2          THE WITNESS:  Just to be clear, a moment

3     ago we were talking about other software --

4     synchronization software components in Claim 20.

5     Claim 20 very clearly talks about which software     17:47

6     synchronization components it's referring to, which

7     are the ones described in Claim 11.

8          I agree with you that elsewhere in the

9     patent it describes software synchronization

10    components, some of which don't meet Claim 11, which  17:48

11    is why Claim 20 descends from Claim 11, because it's

12    very clearly talking about which of the software

13    synchronization components are we talking about.

14    BY MR. PAK:

15         Q.   So now let's assume for the following line   17:48

16    of questions that Claim 20 is interpreted the way

17    you're trying to interpret it, okay, which is each

18    of the synchronization software components recited

19    must independently meet the limitation of Claim 11.

20    Are you with me?                                      17:48

21         A.   That's the way I conducted my analysis,

22    yes, sir.

23         Q.   Under that interpretation of Claim 20,

24    would each of the software synchronization

25    components be required to operate in a separate       17:48

Page 285

1    thread?                                                17:49

2        A.   I just want to be a very particular:   It

3    requires them to provide a thread, which is

4    different, and I believe there's some discrepancy

5    between Dr. Chase's report and mine about precisely   17:49

6    that issue.   So I just want to -- make sure I'm

7    clear on the record.

8            I believe the plain english language of

9    Claim 11 says wherein the at least one software

10   synchronization components processing thread is     17:49

11   provided by a synchronization software component.

12   Not just operates on or executes.   It's actually

13   provided by that component.   So I believe that's a

14   very important distinction.   I just want to make

15   sure we are both saying the same thing.             17:49

16       Q.   So Dr. Snoeren, let's -- fine, but let's

17   take the language that you're talking about:

18   Provided -- "providing a thread."

19           Is it your contention that under your

20   interpretation of Claim 20 that each of the recited  17:49

21   software synchronization components must provide a

22   separate thread?

23       A.   Yes.   That's the plain language

24   interpretation of Claim 20.   It says the

25   synchronization software component from Claim 11 --  17:50

Page 286

1    I've got three of them:  One of them for the first          17:50

2    data class, an additional -- other data classes.

3         Q.   So if I have three software components

4    that each serve as different data classes, but they

5    only provide collectively two threads, not three,          17:50

6    that type of system would not practice Claim 20,

7    correct, under your interpretation?

8              MR. BUROKER:  Objection.  Incomplete

9    hypothetical.

10             THE WITNESS:  Again, you're hypothetical:         17:50

11   I don't know how the three would provide two

12   threads.  But under plain language interpretation of

13   Claim 20, the construction that I applied in my

14   analysis, each of the software synchronization

15   components must individually provide a                      17:51

16   synchronization thread.

17   BY MR. PAK:

18        Q.   And what I'm saying if that requirement

19   was not satisfied, so you have three software

20   components, but they each do not provide a separate        17:51

21   thread, so you end up with less than three threads

22   in that scenario, that system will not practice

23   Claim 20; is that correct?

24             MR. BUROKER:  Objection.  Incomplete

25   hypothetical and vague.                                    17:51

Page 287

1          THE WITNESS:  Again, you have a                    17:51

2    hypothetical.   So I don't know why you only got two

3    threads.   But what I'm saying is that each component

4    must provide a thread in Claim 20.   So yes, if I

5    have three components, each one of them provides      17:51

6    it's own separate thread.

7    BY MR. PAK:

8        Q.   And what I'm saying is if I end up with a

9    system with three software components but there are

10   only two threads, Claim 20 would not be satisfied,    17:51

11   right?

12          MR. BUROKER:  Same objections.

13          THE WITNESS:  Again, your hypothetical:  I

14   don't know why there are only two threads.  Are you

15   saying there were three, one died, one was killed,    17:52

16   one was stolen?  I don't know.  The claim language

17   requires that the -- each module provides a thread.

18   So if I have three modules, each one of them is

19   going to provide its own thread.  So there are going

20   to be three threads provided, one by each.            17:52

21   BY MR. PAK:

22       Q.   And that's -- and I understand that.  I'm

23   trying to get you to understand -- I'm trying to

24   understand the scope of Claim 20 as you understand

25   it.                                                   17:52

Page 288

 1          I understand what you think is covered by          17:52

 2   Claim 20, but I also want to understand what you

 3   think is not covered by Claim 20.   And I'm not

 4   entitled to know that if I can -- if you have an

 5   answer for me.                                            17:52

 6          Which is if I have three software

 7   components and each of them are servicing different

 8   data classes, but in the system for those three

 9   software components, whatever the reason might be,

10   there were only two threads corresponding to those     17:52

11   three software components, is Claim 20 satisfied or

12   not?

13          MR. BUROKER:   Same objections.   Asked and

14   answered.

15          THE WITNESS:   Again, you have three             17:53

16   software components.   Each one of them provides a

17   thread.   A system that meets the requirements of

18   Claim 20 that has three software components would

19   provide three threads.

20          Your hypothetical system with only two           17:53

21   threads, I don't know if there was a third thread or

22   what happened to it, so I can't answer your

23   question.

24          A system that infringes it must provide

25   three threads where each one of those threads was      17:53

1    provided by one of the three software                    17:53

2    synchronization components.

3    BY MR. PAK:

4         Q.    Okay.   Let me see if I can be more

5    specific.   I have a single thread of operation.   Are    17:53

6    you with me?

7         A.    Yes, sir.

8         Q.    And I'm going to share that single thread

9    of operation across three software components.   Do

10   you understand that?                                      17:53

11        A.    Yes, sir, I do.

12        Q.    Okay.   In that case, the three software

13   components are not each providing a separate thread.

14   Do you understand that?

15        A.    I know that you just told me that the time    17:54

16   three software components are not each providing a

17   thread.   By definition, you have a tautology.   They

18   do not each provide a separate thread.   They do not

19   meet Claim 20 in your hypothetical tautological

20   construction, yes.                                        17:54

21        Q.    And it's not tautological.   I'm explaining

22   to you a scenario that is technically possible,

23   correct, which is, I have a single thread of

24   execution.   Is it possible to have three software

25   components share that single thread of execution,        17:54

Page 290

1    yes or no?                                          17:54

2          MR. BUROKER:   Objection.   Incomplete

3    hypothetical.

4          THE WITNESS:   I don't know what you mean

5    by "share."   Any thread is executing one instruction   17:54

6    at a the time.

7          Did that instruction -- is that

8    instruction somehow shared across three modules?   Is

9    that instruction unique for one of the modules?   I

10   mean, you're asking a deep technical question, and    17:55

11   so I -- I'm not trying to be flip.   I want to make

12   sure that I get you the exact answer you're looking

13   for.

14   BY MR. PAK:

15      Q.   Absolutely.                                 17:55

16          Do you understand -- let's say -- let's

17   step back.  Do you understand what the 414 patent

18   actually talks about sequential execution of

19   software components used for synchronization?

20      A.   So you use the term "sequential"            17:55

21   execution."   It's ironic we have Dr. Rinard in the

22   room.

23          He could probably tell us a lot about

24   sequential execution.  That has a general meaning in

25   the computer science lexicon.  Is there a particular   17:55

Page 304

1    what's the significance.  Those are two different          18:11

2    ways that you just described.  One of them is

3    described and taught by this patent and implemented

4    by the accused products.

5    BY MR. PAK:                                                18:11

6        Q.   This goes to a lot of issues in the case.

7             [Reporter requests clarification.]

8    BY MR. PAK:

9        Q.   This issue goes to a lot of other issues

10   in the case.  I understand that you are not              18:11

11   necessarily opining on all the other aspects of the

12   case, but you are here as a technical expert for

13   Apple on the 414 patent.  And what I need to know

14   is, from your engineering perspective, is there a

15   meaningful difference technologically between having    18:12

16   a system where the three threads for the

17   synchronization software component is provided by

18   the components themselves versus a system that is

19   identical in all other respects but the threads are

20   provided by a component other than the three            18:12

21   synchronization software components?

22       A.   You described a hypothetical system.  I

23   don't think it's possible to have one that's

24   identified in all the respects, other aspects,

25   because what was this thing that created those three    18:12

Page 305

1   threads?  Presumably it didn't exist in the one          18:12

2   where they were created by the software

3   synchronization components themselves.  So the

4   existence of that has other ramifications.

5            Is that thing that created the threads          18:12

6   also in charge of scheduling those threads?  Does it

7   also have policy decisions about which threads get

8   to run?  How important they are?  All these things.

9            So I don't believe that it's possible to

10  create two systems that are identical in all other       18:13

11  respects.  I think that the choice of where the

12  threads are created has ramifications for

13  architecture of the system.

14           So it's not just, you know, I could make

15  that change and that change only.  It's going to        18:13

16  have impacts.  What are the impacts of those

17  hypothetical change?  I don't know unless we get

18  more specific about how you were to effect that

19  change.

20     Q.    I have two systems.  The one system is          18:13

21  where each of the three threads are provided by one

22  of the three synchronization software components.

23  So in fact would satisfy Claim 20 under your

24  construction of that term.

25           Are you with me?                                18:14

Page 306

1        A.    Well, it couldn't satisfy Claim 20 because      18:14

2     Claim 20 would require the three threads to be

3     provided by each of the thing.  So you said one of

4     them is going to provide all three.

5        Q.    No.                                             18:14

6        A.    Unless I misheard you.

7        Q.    Yeah, you misheard me; I'll just clarify

8     the record.

9              I have a system that practices Claim 20

10    under your interpretation, where each of the three   18:14

11    synchronization software components provides its own

12    thread.

13             Do you understand?

14       A.    I do.

15       Q.    Technologically speaking, what is the         18:14

16    difference between that system versus a system where

17    one of the threads is provided by a synchronization

18    software component; the second thread is provided by

19    a second synchronization software component, but the

20    third synchronization software component uses the     18:15

21    second thread?

22             MR. BUROKER:  Objection.  Vague.

23             THE WITNESS:  You haven't described how

24    those two -- the third and the second would share

25    their thread.  I could think of a number of           18:15

Page 307

1    situations.   One would be the performance of the          18:15

2    synchronization of the third class would be

3    intimately tied to the performance of the second,

4    and to the extent that the second was slow, the

5    third would suffer.                                          18:15

6             I could think of significant architectural

7    ramifications of having a disparate set of data

8    classes.   Some classes are somehow more important.

9    They're first priority because they get to make

10   their own thread.   Some are secondary because they          18:15

11   have to live off the threads of others.   I mean,

12   that's an interesting architecture that you've

13   proposed.   It's not what was proposed in the 414.

14   And indeed it doesn't enjoy the benefits of the

15   architecture described in the 414, where each one of         18:16

16   the data classes is handled by a discrete software

17   synchronization component that creates its own

18   thread, doesn't depend on these other software

19   synchronization components for its thread.   And so I

20   mean I have no idea why I would create an                    18:16

21   architecture that you've described.   It seems

22   awkward.   It seems fraught with complications.   I'd

23   need to have more details about why you think that

24   would be a beneficial thing to do, but I could see

25   number of potential ramifications.                           18:16