QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar No. 108542)
williamprice@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED CLAIM CONSTRUCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Date:      February 20, 2014<br>Time:      1:30 p.m.<br>Place:     Courtroom 8, 4th Floor<br>Judge:    Hon. Lucy H. Koh |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 20, 2014, or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Col., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") will, and hereby does, move the Court pursuant to Fed. R. Civ. P. 26 and 37 for an order striking portions of Apple's expert reports for the reasons set forth below.

This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Bill Trac dated January 16, 2014, the Declaration of Todd Briggs dated November 5, 2013, together with all accompanying exhibits, all pleadings on file in this action, and such other evidence or argument as may be presented at or before the time this Motion is deemed submitted by the Court, and such matters of which this Court may take judicial notice.

## RELIEF REQUESTED

Samsung seeks an order striking portions of Dr. Fuja's, Dr. Storer's and Dr. Taylor's expert reports based on undisclosed claim constructions.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should strike certain portions of Dr. Fuja's, Dr. Storer's, and Dr. Taylor's expert reports on the ground that they are based on claim constructions that Apple failed to timely disclose in response to Samsung's Interrogatory No. 46 under Rule 33 and 26(e)?

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: January 16, 2014

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By */s/ Victoria Maroulis*
    Charles K. Verhoeven
    Kevin P.B. Johnson
    Victoria F. Maroulis
    William C. Price
    Attorneys for SAMSUNG ELECTRONICS
    CO., LTD., SAMSUNG ELECTRONICS
    AMERICA, INC., and SAMSUNG
    TELECOMMUNICATIONS AMERICA, LLC

SAMSUNG'S NOTICE OF MOTION AND MOTION TO STRIKE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.     PRELIMINARY STATEMENT ......................................................................................... 1

II.    STATEMENT OF RELEVANT FACTS ........................................................................... 2

III.   ARGUMENT AND CITATION OF AUTHORITY .......................................................... 6

       A.     Apple's Expert's Opinions Should Be Stricken Because They Rely On
              Claim Constructions That Were Not Disclosed In Response To
              Interrogatory No. 46 ............................................................................................... 6

       B.     Apple's Experts Did Not Use Plain Meaning ........................................................ 6

       C.     Apple Did Not Disclose Its Claim Constructions in Response to
              Interrogatory 12 ..................................................................................................... 9

       D.     Neither the Local Rules Nor the Court's *Markman* Process Relieve Apple of
              Its Duty to Respond to a Properly Served Interrogatory ...................................... 13

       E.     Apple's Failure To Comply With The Federal Rules And The Court's
              Scheduling Order Is Neither Harmless Nor Justified ........................................... 14

              1.     Samsung Suffered Significant Prejudice from Apple's Conduct ............... 15

              2.     Samsung Is Unable to Cure the Prejudice Caused by Apple's
                     Conduct ..................................................................................................... 17

              3.     Likelihood of Disruption of the Trial ....................................................... 18

              4.     Apple's Failure to Disclose Was Willful ................................................... 18

IV.    CONCLUSION ................................................................................................................ 18

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
   No. 12-1531 (Fed. Cir. Aug. 9, 2013) ................................................................15

*Clintec Nutrition Co. v. Baxa Corp.*,
   1998 WL 560284 (N.D.Ill. Aug. 26, 1998) .........................................................15

*Cybor Corp. v. FAS Technologies, Inc.*,
   138 F.3d 1448 (Fed. Cir. 1998) ...........................................................................15

*DIRECTV, Inc. v. Puccinelli*,
   224 F.R.D. 677 (D. Kan. 2004) ...........................................................................16

*Dominguez v. Excel Mfg., Inc.*,
   2010 WL 5300863, 2010 U.S. Dist. LEXIS 137582 (N.D. Cal. Dec. 20, 2010) ..14, 15

*Epistar Corp. v. Int'l Trade Comm'n*,
   566 F.3d 1321 (Fed. Cir. 2009) ..............................................................................8

*Gonzales v. City of Albuquerque, No. CIV 09-0520*,
   2010 WL 553308 (D.N.M. Feb. 9, 2010) ............................................................13

*LG Electronics Inc. v. Q-Lily Computer Inc.*,
   211 F.R.D. 360 (N.D. Cal. 2002) .........................................................................15

*Michilin Prosperity Co., Ltd. v. Fellowes Mfg. Co.*,
   2006 WL 1441575 (D.D.C. May 23, 2006) .........................................................14

*Omega Eng'g v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ..............................................................................8

*Phillips v. AWH*,
   415 F.3d 1303 (Fed. Cir. 2005) ..............................................................................7

*Regents of University of Minnesota v. AGA Medical Corp.*,
   717 F.3d 929 (Fed. Cir. 2013) ..............................................................................15

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013) ..............................................................................7

*White v. Dunbar*,
   119 U.S. 47 (1886) .................................................................................................7

*Whitserve LLC v. Computer Patent Annuities N. Am., LLC*,
   No. 04-1897, 2006 WL 1273740 (D. Conn May 9, 2006) ...............................13, 14

*Williams v. Sprint/United Management Co.*,
   No. CIVA 03–2200, 235 F.R.D. 494 (D. Kan. 2006) ..........................................13

*Yeti by Molly, Ltd. V. Dechers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001)......................................................................................14

### **Statutes**

35 U.S.C. 112(6) ......................................................................................................................2

Fed. R. Civ. P. 26 ..............................................................................................................1, 14

Fed. R. Civ. P. 26(a) ..............................................................................................................6

Fed. R. Civ. P. 33 ..............................................................................................................1, 14

Fed. R. Civ. P. 37(b) ..............................................................................................................14

Fed. R. Civ. P. 37(b)(2)(A) ...................................................................................................14

Fed. R. Civ. P. 37(c)(1) ....................................................................................................6, 14

Fed. R. Civ. P. 37(d) ..............................................................................................................14

Fed. R. Civ. P. 37(d)(1) .........................................................................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     PRELIMINARY STATEMENT

On November 5, 2013, Samsung filed a motion to strike portions of Apple's expert reports with Judge Grewal.   The motion was fully briefed and heard on December 8, 2013.   On January 9, 2014, Judge Grewal issued an order addressing many of the issues raised in Samsung's motion. However, with respect to one issue, Judge Grewal denied the motion because it would require him to "construe more terms than the presiding judge elected to consider."   (Dkt. No. 1127 at 9.) Judge Grewal further stated that: "[t]his would be an inappropriate exercise for the referral judge. The motion therefore is DENIED, but Samsung is free to seek relief from Judge Koh if its concerns persist."   (*Id.*)

Samsung's concerns persist.[1]   Samsung served an interrogatory that required Apple to disclose its claim construction positions and Apple flat out refused to respond to the interrogatory without any credible justification.   The Federal Rules of Civil Procedure required Apple to divulge its claim constructions pursuant to Samsung Interrogatory 46, but Apple made a deliberate and strategic decision to withhold its constructions until it served its expert reports.   Drs. Fuja, Storer, and Taylor – Apple's technical experts for Samsung's patents – now predicate many of their non-infringement opinions on claim constructions that Apple failed to disclose in response to Samsung's Interrogatory 46.   Rather than respond to Samsung's interrogatory, Apple intentionally withheld its claim constructions until the service of its expert reports, when Samsung could no longer account for or respond to Apple's positions in its expert reports.   Because Samsung has been significantly prejudiced by Apple's strategic and unjustified decision to withhold its claim constructions from Samsung, the offending portions of Apple's expert reports should be stricken.

---

[1]    Samsung does not believe that resolution of this motion requires the Court to formally construe terms from Samsung's patents.   Rather, it only requires the Court to recognize that Apple has applied specialized constructions to the terms that should have been disclosed in response to Samsung Interrogatory 46.

## II.     STATEMENT OF RELEVANT FACTS

On June 7, 2013, Samsung served Interrogatory 46, which sought Apple's claim construction positions for the asserted claims.   Interrogatory 46 states:

> For each asserted claim for each Samsung Patent, and each Apple Patent-in-Suit identify: (1) a list of all claim terms that YOU contend has a meaning other than plain meaning and should be construed by the Court and identify any claim term which YOU contend should be governed by 35 U.S.C. Section 112(6); (2) YOUR construction of each term identified for claim construction, including for each term YOU contend is governed by 35 U.S.C. 112(6), the structure(s), act(s), or material(s) corresponding to that term's function; and (3) for each identified term, all references from the specification or prosecution history that supports YOUR construction and a designation of any supporting extrinsic evidence including, without limitation, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses. Extrinsic evidence shall be identified by production number or by producing a copy if not previously produced.   With respect to any supporting witness, percipient or expert, provide a description of the substance of that witness' testimony that includes a listing of any opinions to be rendered to support YOUR construction.

(Dkt. 878-06).

Samsung served Interrogatory 46 because Apple had repeatedly taken inconsistent claim construction positions during the course of discovery.   For example, Apple interpreted terms from Samsung's patents narrowly when disclosing its non-infringement positions, yet interpreted those same terms broadly when disclosing its invalidity positions.   The purpose of Interrogatory 46 was to determine Apple's real claim construction positions and prevent Apple from manipulating its interpretations of the claims during expert discovery and trial.

Apple served its responses and objections to Samsung's Interrogatory No. 46 on July 15, 2013, the same day fact discovery closed.   (Dkt. No. 878-6,[2] Apple's Objections and Responses to Interrogatory No. 46, July 15, 2013, at 51-53).   Apple failed, however, to provide a substantive response to this interrogatory.   (*Id.* at 52-53).

---

[2] Throughout this motion, Samsung has cited to the previously filed exhibits in an effort to avoid burdening the Court with a voluminous and duplicative filing of the same exhibits, many of which contain confidential Apple and third-party information that would require duplicative sealing motions.   Samsung will provide courtesy copies of the previously filed exhibits for the Court's convenience.

1    The parties subsequently met and conferred regarding Apple's response to Interrogatory

2    No. 46.   During that process, Apple would only agree to provide a response if Samsung provided

3    the information as well.   However, Apple never served an interrogatory or any other discovery

4    requesting Samsung's claim construction positions.

5    Apple then sought to delay the disclosure of its claim construction positions by stating it

6    would seek a schedule for such disclosures from the Court at the July 31, 2013 Case Management

7    Conference ("CMC").   (Dkt. No. 878-7, July 19, 2013 Letter) ("Apple presently intends to request

8    that Judge Koh set a schedule for a supplemental claim construction process at the July 31 case

9    management conference"). Samsung disagreed that Apple's proposed request to Judge Koh

10   relieved Apple of the duty to provide the requested information in response to Samsung's

11   interrogatory.   (Dkt. No. 878-8, July 19, 2013 Letter).

12   During the July 31 CMC, Apple requested that the Court either undertake additional claim

13   construction or order the parties to meet and confer regarding claim construction.   (Dkt. No. 750,

14   July 31, 2013 CMC Transcript, at 20:3-26:13).   The Court denied Apple's request, stating, "If

15   what you're requesting is that I order Samsung to meet and confer now, I'm not going to do that."

16   (*Id.* at 25:24-26:1).   Following the Court's denial of Apple's request, Apple continued its refusal

17   to provide a substantive response to Interrogatory 46.

18   The parties served their opening expert reports on August 12, 2013 and rebuttal expert

19   reports on September 13, 2013.   In their opening and rebuttal reports, Apple's experts set forth a

20   host of new claim constructions that were never disclosed during fact discovery, despite being

21   directly responsive to Samsung's Interrogatory 46.

22   ***Dr. Thomas E. Fuja***

23   On August 12, 2013, Apple served Dr. Fuja's opening expert report containing his

24   invalidity opinions on Samsung's '087 and '596 patents.   (Dkt. No. 878-10, Fuja Opening

25   Report).   On September 13, 2013, Apple served Dr. Fuja's rebuttal expert report containing his

26   non-infringement opinions on Samsung's '087 and '596 patents.   (Dkt. No. 878-11, Fuja Rebuttal

27   Report).   In his reports, Dr. Fuja disclosed non-infringement and invalidity opinions that were

28

based on constructions that were not disclosed in response to Interrogatory No. 46.   For example,

Dr. Fuja relied on the following previously undisclosed claim constructions:

### '596 Patent

- the asserted claims require the limitations to be constructed in a specific order: "[t]he process entails first forming constituent parts of the second PDU, including 'forming a first protocol data unit (PDU) including uplink packet data' . . . and then forming the second PDU by concatenating a header and a payload" (Dkt. No. 878-11, Fuja Rebuttal Report ¶¶ 379-420);

- a "control SDU" must be generated at a higher layer than the layer that creates MAC-e PDUs (*id*. ¶¶ 436-445);

- "control information for an uplink packet data service" must be used by a scheduling component within the Node B (*id*. ¶¶ 356, 446-460);

- an "N field representing the number of uplink data" is an N field representing the number of bits or bytes contained in the MAC-es PDU (*id*. ¶¶ 421-435);

- "forming a second data packet unit (PDU) by concatenating a header and a payload" requires the MAC-e header and MAC-e payload to be formed as standalone units prior to the concatenation operation (*id*. ¶¶ 393-402, 411-420); and

### '087 Patent

- "receiver receiving" requires actual receiving, rather than just capability of receiving (*id*. ¶¶ 316, 318, 328, 337-351).

### *Dr. James Storer*

On August 12, 2013, Apple served Dr. Storer's expert report containing his invalidity opinions on Samsung's '239 and '449 patents.   (Dkt. No. 878-12 and 878-13, Storer Opening Report).   On September 13, 2013, Apple served Dr. Storer's rebuttal report containing his non-infringement opinions on Samsung's '239 and '449 patents.   (Dkt. No. 878-14 and 878-15, Storer Rebuttal Report).   In both reports, Dr. Storer offers non-infringement and invalidity opinions based on claim constructions that were not disclosed in response to Interrogatory 46.

First, Dr. Storer offers opinions on previously undisclosed constructions for the means-plus-function terms in the '239 patent.   (Dkt. No. 878-12 and 878-13, Storer Opening Report ¶¶ 662-674).   Apple failed to disclose these constructions in response to Interrogatory No. 46 despite the fact that the means-plus-function claims necessarily require construction.   Dr. Storer also

revised and in some cases elaborated on these newly disclosed constructions in his rebuttal expert report.   (Dkt. No. 878-14 and 878-15, Storer Rebuttal Report, ¶¶ 428-462).

Second, Dr. Storer offers several non-infringement opinions based on previously undisclosed claim constructions for terms in the asserted '449 patent.   The newly disclosed constructions include:

- a "digital camera" cannot include other functionality, such as Phone, Maps, and Mail (Dkt. No. 878-14 and 878-15, Storer Rebuttal Report, ¶¶ 123-124);

- the "imaging device" must expose all pixels to an image at once, and/or capture the charge associated with each pixel concurrently (*id.* ¶¶ 159);

- the "imaging device" and "A/D converter" cannot be part of the same integrated circuit, or part of an integrated circuit that performs additional functions (*id.* ¶¶ 128, 154, 158);

- the "compressor" or "decompressor" must use common circuitry to perform compression or decompression of still and moving images, or cannot be part of an integrated circuit that performs additional functions (*id.* ¶¶ 163-166, 174, 179);

- the "recording circuit" must be an interface circuit (*id.* ¶¶ 227-228);

- each claimed "list" must include text and conform to a top-down arrangement (*id.* ¶¶ 300-306);

- the claimed "search mode" cannot consist of scrolling through image thumbnails (*id.* ¶¶ 308, 311-312, 321);

- a "classification" cannot consist of photos and videos taken with a device (*id.* ¶¶ 324-326), or that a photo or video must remain on the device even when deleted from a "classification" (*id.* ¶¶ 331), or that the user must be able to rename a "classification" (*id.* ¶¶ 331), rearrange the photos within the "classification" (*id.* ¶¶ 334-335), or create the "classification" (*id.* ¶¶ 336).

### Dr. Richard Taylor

On August 12, 2013, Apple served Dr. Taylor's expert report containing his invalidity opinions on Samsung's '757 patent.   (Dkt. No. 878-16, Taylor Opening Report).   On September 13, 2013, Apple served Dr. Taylor's rebuttal report containing his non-infringement opinions on Samsung's '757 patent.   (Dkt. No. 878-17, Taylor Rebuttal Report).   In both reports, Dr. Taylor offers non-infringement and invalidity opinions based on constructions that were not disclosed in response to Interrogatory No. 46.   Those new constructions include:

- the limitation "updated in relation to" requires all of a user's audio, video and photographic information be synchronized or updated on the central and zone devices (Dkt. No. 878-17, Taylor Rebuttal Report, ¶¶ 33-40, 159-162, 175-177, 183-189, 197-199, 204-207, 221-223,232-235);

- the limitation "at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user" requires all of a user's audio, video and photographic information be synchronized or updated on the central and zone devices (*id.* ¶¶ 169-171, 178, 192, 200, 213-215, 224, 236-238; Dkt. No. 878-16, Taylor Opening Report, ¶¶ 124, 143);

- the limitation "capable of storing or interfacing with information stored in the central storage and interface device" requires that capability to store **and** interface with the central storage and interface device (Dkt. No. 878-17, Taylor Rebuttal Report, ¶¶ 163-165, 208-210); and

- the limitation "relating to at least one user" does not require that the information be related to any particular user (Dkt. No. 878-16, Taylor Opening Report, ¶¶ 95-97).

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Apple's Expert's Opinions Should Be Stricken Because They Rely On Claim Constructions That Were Not Disclosed In Response To Interrogatory No. 46

Parties are obligated under the Federal Rules and Courts' Scheduling Orders to disclose all relevant facts and contentions in their responses to interrogatories.   Under the Federal Rules, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."   *See* Fed. R. Civ. P. 37(c)(1).   Because Apple failed to provide its claim constructions in response to Samsung Interrogatory 46, Apple's experts cannot rely on those undisclosed claim constructions at trial.   *Id.*

In response to Samsung's original motion before Judge Grewal, Apple advanced several excuses for its failure to respond to Interrogatory 46.   None have any merit.

### B.   Apple's Experts Did Not Use Plain Meaning

Apple's first excuse for why it failed to respond to Samsung's Interrogatory 46 is that its constructions are "plain and ordinary meaning."   (Dkt. 965-4, Apple's Opposition to Samsung's Motion, at 12-13.)   However, the first time Apple argued that its constructions were plain and ordinary meaning was *after* Samsung filed its motion to strike.   Indeed, Apple's response to

1   Interrogatory 46 did not state its constructions were plain and ordinary meaning (Dkt. No. 878-6 at

2   52-53).   And during the meet and confer process, Apple never once stated that it would not

3   respond to Interrogatory 46 or that its response was complete because its constructions are plain

4   and ordinary meaning.   Rather, Apple took the position that the parties should confer on a

5   schedule for further claim construction.   It was not until *after* Samsung filed its motion that Apple

6   came up with its plain and ordinary meaning excuse.   This argument is simply not credible.

7           The elaborate and detailed constructions in Apple's expert reports go far beyond "plain and

8   ordinary meaning."   These constructions improperly change the meaning of the words in the

9   claims such that they are unrecognizable to the public.  *See Phillips v. AWH*, 415 F.3d 1303, 1312

10  (Fed. Cir. 2005) (en banc) (it is "unjust to the public, as well as an evasion of the law, to construe it

11  in a manner different from the plain import of its [claim] terms.") (quoting *White v. Dunbar*, 119

12  U.S. 47, 52 (1886)).   Black letter patent law dictates that plain and ordinary meaning is the

13  meaning that one of ordinary skill in the art would give a claim term while *reading the*

14  *specification*.  *Phillips*, 415 F.3d at 1321 ("Properly viewed, the 'ordinary meaning' of a claim

15  term is its meaning to the ordinary artisan after reading the entire patent.").

16          Many of the constructions that Apple's experts rely on in their reports contradict and are

17  inconsistent with the specification and therefore cannot be plain and ordinary meaning.   For

18  example, Dr. Fuja opines that a "control SDU" must be generated at a higher layer than the layer

19  that creates MAC-e PDUs.   (Dkt. 878-11, ¶ 442.)   This construction *contradicts* the specification

20  that states that the "control service data unit (SDU) include[es] control information of a MAC-e

21  layer."   (Dkt. 0811-01 ('596 patent), Abstract.)   Dr. Fuja's construction does not allow for the

22  control SDU to be generated at the MAC-e layer, but the '596 specification clearly states that the

23  control information can be generated from the MAC-e layer.   A construction that contradicts the

24  specification cannot be plain and ordinary meaning.  *See Taurus IP, LLC v. DaimlerChrysler*

25  *Corp.*, 726 F.3d 1306, 1320 (Fed. Cir. 2013) ("We cannot look at the ordinary meaning of the

26  term[] in a vacuum.   Rather, we must look at the ordinary meaning in the context of the written

27  description.") (citations omitted).

28

1    Apple's experts also rely on the doctrine of prosecution history disclaimer to construe

2    terms in Samsung's patents.   However, the Federal Circuit has stated that a "[a] heavy

3    presumption exists that claim terms carry their full ordinary and customary meaning, *unless* it can

4    be shown the patentee expressly *relinquished* claim scope."   *Epistar Corp. v. Int'l Trade Comm'n*,

5    566 F.3d 1321, 1334 (Fed. Cir. 2009) (citing *Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1323

6    (Fed. Cir. 2003) (emphasis added).   Apple's prosecution history disclaimer arguments alone

7    demonstrate that Apple's constructions are not plain and ordinary meaning.   For example, Dr.

8    Storer makes a prosecution history disclaimer argument to craft a specialized meaning for "video

9    capture module" in the first limitation of claim 15.   (Dkt. No. 878-14 and 878-15, ¶¶ 701-11.)

10    This construction is not the plain and ordinary meaning of that term.

11    Apple and its expert also read the Court's construction from a means-plus function

12    limitation independent claim 1 (*i.e.*, "means for capturing, digitizing and compressing. . .") into a

13    non-means plus function limitation in claim 15 (*i.e.*, "a computer including a video capture module

14    to capture and compress video in real time.").   (*Id.* at 364.)   The Court found the corresponding

15    structure for the claim 1 means plus function term is, in relevant part, "a <u>video card</u> having a *video*

16    *capture module*."   (Dkt. No. 447 at 64 (emphasis added).)   The term in claim 15 uses some of the

17    language from the Court's construction, but not the entirety of the Court's claim 1 construction.

18    In his rebuttal report, Dr. Storer argues that "video capture module," which the Court found was

19    *part* of the corresponding structure for the means-plus-function limitation in claim 1, actually

20    means "video card having a video capture module."   (Dkt. No. 878-14 and 878-15, ¶¶ 702-705.)

21    Dr. Storer is unquestionably applying a very specialized (and incorrect) meaning to the term

22    "video capture module" that is not its plain and ordinary meaning.

23    Dr. Storer's rebuttal report regarding non-infringement of Samsung's '449 patent contains

24    other examples.   Dr. Storer construes the term "list" as requiring 1) text and 2) a top-down

25    arrangement.   (Dkt. No. 878-14 and 878-15, ¶ 300.)   But the plain meaning of the word "list"

26    does not exclude a list that carries over into two or more columns, or a list of symbols rather than

27    text.   In fact, in its invalidity contentions Apple cited purported prior art software—including its

28    own PhotoFlash software—as meeting the "list" limitation.   (Dkt. No. 473-2, Apple's Second

Amended Invalidity Contentions at 29.)   This software program displays a grid of thumbnails, not a top-down list of text.   Therefore, Apple's invalidity contention appeared consistent with the plain meaning of the term "list."   At the same time, Apple argued in its response to non-infringement Interrogatory 12 that the "Camera Roll" view in the accused products—which consists of a grid of thumbnails—is not a list. (Dkt. No. 965-9, at 62.)   Apple's response to Interrogatory 12 did not provide a proposed construction for the term "list" and did not explain, explicitly or implicitly, why Apple contended that a thumbnail grid met the claim element in the prior art but not in the accused products.   This type of inconsistency found throughout Apple's disclosures and discovery responses is what led Samsung to serve Interrogatory 46.

Finally, while Apple argued before Judge Grewal that its experts applied the "plain meaning" of terms not construed by the Court, Apple objected to the phrase "meaning other than plain meaning" as ambiguous in its response to Interrogatory 46.   (Dkt. No. 878-6, at 52-53.) Apple never sought clarification from Samsung regarding how the phrase should be interpreted. Had it done so, Samsung would have stated the obvious—that Interrogatory 46 calls for any construction that differs from the plain meaning a non-technical juror would apply to a term.

### C.   Apple Did Not Disclose Its Claim Constructions in Response to Interrogatory 12

Apple's next excuse for refusing to respond to Interrogatory 46 is that its claim constructions were disclosed in its response to Interrogatory 12.   (Dkt. 965-4, Apple's Opposition to Samsung's Motion, at 13-14.)   This excuse fails for several reasons.

*First*, Interrogatory 46 requested a clear, complete and explicit identification of each term that Apple would later construe, and a clear, complete and explicit construction for each of those terms.   Apple's response to Interrogatory 12 does not provide this information.   In its response to Interrogatory 12, Apple did not identify a single non-means-plus-function terms it was construing nor did it provide a single explicit construction for those unidentified terms.   And it is not possible for Samsung to divine Apple's claim construction positions from its Interrogatory response, which Apple left vague, open-ended, and minimal by design.   Even Apple admitted in its opposition before Judge Grewal that any claim constructions that were provided in its response to

Interrogatory 12 were "implicit."   (Dkt. No. 965-04, at 3:18-22.)   Interrogatory 46 did not call for hidden, open-ended or implicit claim constructions; it called for explicit identification of terms that required construction and explicit claim constructions for each of those terms.

The following examples illustrate why Apple's response to Interrogatory 12 fail to provide the information requested by Interrogatory 46.   For the '596 patent, Apple's opposition identified the following response from Interrogatory 12 as purporting to identify Apple's claim construction for the "N" limitation for the '596 patent:

> "to the extent any Intel or Qualcomm function generates an N field, it does not
> represent "the number of uplink packet data" included in the MAC-es PDU"

(*Id.* at 9.)   Apple's boilerplate response to Interrogatory 12 was merely a simple recitation that the '596 claim limitations of the asserted claims were not met and did not disclose the construction that Dr. Fuja ultimately relied on in his rebuttal non-infringement expert report:   an N field refers to the number of bits or bytes of data.   (Dkt. No. 878-11, ¶¶ 421-435.)

For the '757 patent, Apple argued before Judge Grewal that Interrogatory No. 12 disclosed its claim construction requiring that all of a user's multimedia data must be synchronized or updated on the central and zone devices.   However, Apple subtly shifts the supposed disclosures made in this interrogatory response.   Apple's response states several times that this limitation requires only a user have "access" to multimedia data on other devices, or that the data be "available."   (*See, e.g.,* Dkt. No. 965-9, Apple's July 15, 2013 Response to Interrogatory 12, 70:18-28 ("iTunes in the Cloud does not allow for updates from the zone specific storage and interface device to the central storage and interface device, and thus does not provide *access* to all the audio, video, or photographic data related to the user in any zone.") (emphasis added) ; *id.* at 72:5-12 ("Moreover, as explained above, the claim requires that the audio, video, or photographic data … must be made *available* on all the zone specific storage and interface devices as a result of the 'update[].'")   Having data be accessible or available for synchronization is different from saying that *all* the user's data must actually be synchronized across all devices.   Apple's supposed support for the "capable of storing or interfacing" limitation is even more ambiguous, as Apple seems to cite language related to entirely different limitations to indicate it disclosed its theories.

(*See* Dkt. No. 965-04 at 6-7 (citing discussion regarding the "updated in relation to" and "situated in any one of the zones" limitations)).   Finally, Apple cites only to statements describing *Samsung's* position on the meaning of "at least one user" as inferential evidence that Apple's position was different.   (*Id.* at 7.)   But Apple neither confirmed nor denied that the term "at least one user" actually required a particular user, and made several non-infringement arguments in reliance on Samsung's construction.   (*Id.*)   Dr. Taylor's report was the first time Apple presented these claim construction positions.

For the '449 patent claim term "classification," Apple's opposition suggested that its claim construction is implied in the following sentence: "In any event, none of the accused products has circuitry that records the identification of an image's corresponding Album when the image is captured.   All captured images and videos are stored in the default Camera Roll, not in an Album."   (*Id.* at 5.)   But nothing in the foregoing text explicitly or implicitly discloses that Apple construes the term "classification" as excluding classifications based on the device used to capture images, or classifications with names that cannot be edited,[3] or those that contain images until they are deleted from a device.   Apple's response to Interrogatory 12 merely discloses its position that the Camera Roll is not a classification.   It does not disclose why.   Samsung served Interrogatory 46 to learn why, but Apple never disclosed that information.

***Second***, the "implicit" constructions disclosed in its response to Interrogatory 12 contradicted the "implicit" constructions Apple disclosed in its invalidity contentions, leaving Samsung in the dark as to how Apple believed terms should really be construed.   For example, Apple identified the following response from Interrogatory 12 as purporting to identify Apple's claim construction for the "control SDU" limitation for the '596 patent:

> Samsung also has not shown that, in the Accused Products, a data unit containing control information is received from a higher layer and thus constituting an "SDU."

---

[3]   In an embodiment described in the '449 patent, the classification names are simply the numbers 1 through 5, and those names cannot be edited.

1   (*Id.* at 8.)    Apple's invalidity contentions, however, state that certain prior art references meet the

2   "control SDU" limitation because the multiplexing sublayer that forms the MAC-e PDU combines

3   information from various sources to form the claimed "control SDU."   (Dkt. No. 1009-7, Exhibit

4   B-03 to Apple's Invalidity Contentions, at 4-5.)    Thus, in one discovery response Apple claimed

5   that a "control SDU" must come from some higher layer, but in another discovery response Apple

6   claimed that a "control SDU" is formed at the same layer that forms the MAC-e PDU.   A

7   response from Apple to Interrogatory 46 would have resolved these inconsistencies and informed

8   Samsung of Apple's true position on the construction of this term.

9          Similarly, constructions Dr. Storer applies in his '239 expert report conflict with Apple's

10  response to Interrogatory 12.   In Interrogatory 12, Apple pointed to vague software sequences

11  allegedly disclosed in large parts of the specification as corresponding structure for certain means-

12  plus-function limitations.   Dr. Storer failed to identify these software sequences in his expert

13  reports, and instead made conclusory statements that the prior art disclosed them, and that the

14  accused products did not include them – without ever defining what these constructions were.

15  (*See, e.g.*, Dkt. No. 878-12 and 878-13, Storer Opening Report, ¶¶705 (failing to identify what

16  software steps are supposedly anticipated); 719 (vaguely referring to "a software sequence used in

17  typical modem communications"); 724-725 (failing to identify what "Host Boot Software

18  Sequence D" entails)).   To the contrary, Dr. Storer states unequivocally in his non-infringement

19  report that the accused products cannot include these undefined software structures, yet at the same

20  time he alleged these same software structures were so obviously disclosed in the prior art.   (*See,*

21  *e.g.* Dkt. No. 878-14 and 878-15, Storer Rebuttal Report, ¶¶ 587-588, 666).   In addition, Dr.

22  Storer took the position that the "means for storing the composite signal received by the host unit"

23  is a hard disk drive and nothing more. (Dkt. No. 878-12 and 878-13, ¶ 669).   In Interrogatory 12,

24  however, Apple took the position when crafting non-infringement positions that it is a hard disk

25  drive and the software identified at 11:5-8, 12:19-22, and 12:48-51 of the '239 patent**.**

26         **Third**, Apple cannot claim that Interrogatory 46 somehow incorporated by reference any

27  implicit claim constructions that may have been disclosed in its response to Interrogatory 12.   An

28  incorporation by reference requires an explicit incorporation of one interrogatory response into

another.   *See Gonzales v. City of Albuquerque*, No. CIV 09-0520, 2010 WL 553308, at *9 (D.N.M. Feb. 9, 2010) ("Responses to interrogatories must be self-contained within each Interrogatory answer and the Court finds that the Plaintiffs are entitled to a response specific to [this] Interrogatory . . . Defendants must not merely refer to the answer [to] another Interrogatory."); *see also Williams v. Sprint/United Management Co.*, No. CIVA 03–2200, 235 F.R.D. 494 at   501 (D. Kan. 2006) (granting motion to compel supplemental answer to Interrogatory where Plaintiffs incorporated by reference answers to other interrogatories because "Plaintiffs must indicate with specificity where the information can be found").   Indeed, Apple itself recognized this rule and incorporated its response to Interrogatory 12 into its response for a different interrogatory.   (*See* Dkt. No. 1009-09, Apple's Response to Interrogatory 16 ("Apple incorporates by reference its response to Interrogatory No. 12").)   Therefore, responding to Interrogatory 12 did not relieve Apple from its obligations to also respond to Interrogatory 46. Moreover, by incorporating its response to Interrogatory 12 into Interrogatory 16, but not Interrogatory 46, Apple made it clear that it did not intend to incorporate its Interrogatory 12 response into its Interrogatory 46 response.

There can be no doubt that Apple made a deliberate strategic choice not to provide any substantive answer to Interrogatory 46.   It withheld its claim construction proposals and waited to receive the infringement reports of Samsung's experts after the end of fact discovery.   It then offered elaborate claim constructions—for the first time—in its rebuttal expert reports.   The Court should not condone such gamesmanship.

**D.    Neither the Local Rules Nor the Court's *Markman* Process Relieve Apple of Its Duty to Respond to a Properly Served Interrogatory**

Yet another Apple excuse for not responding to Samsung's Interrogatory 46 was that the local rules relieve Apple of its duty to respond to such an Interrogatory.   (*See* Dkt. No. 965-04, Apple's Opposition to Samsung's Motion, at 18.)   This is a misapplication of the local rules.   The local rules provide a timeline for disclosure related to the *Markman* process.   However, courts have regularly compelled parties to respond to claim construction interrogatories *even when* the court's scheduling order sets forth deadlines for *Markman*.   *See, e.g., Whitserve LLC v. Computer*

SAMSUNG'S NOTICE OF MOTION AND MOTION TO STRIKE

1   *Patent Annuities N. Am., LLC*, No. 04-1897, 2006 WL 1273740, *1-2 (D. Conn May 9, 2006)

2   (granting motion to compel answers to claim construction Interrogatory prior to filing claim

3   construction briefs).   Apple cannot hide behind the local rules to justify its failure to respond to

4   Interrogatory 46.

5          Further, Apple misapplies the agreement between the parties.   The parties came to an

6   agreement limiting the number of terms presented at the *Markman* hearing.   This agreement,

7   however, was limited to only the *Markman* process.   While Apple may feel that service of an

8   Interrogatory requiring Apple to disclose its claim constructions is "unnecessary," (Opp. at 18) the

9   Interrogatory is nonetheless undeniably relevant and compliant with Rule 33.   *See, e.g.,*

10  *Whitserve*, No. 04-1897, 2006 WL 1273740, at *1-2 (holding that the opposing party's

11  interpretation of patent claims is clearly relevant and interrogatories asking for legal conclusions or

12  opinions are permissible).   What Apple fails to appreciate is that claim construction is not

13  intended *only* for the *Markman* process, and Apple cannot point to anything in the Court's

14  scheduling order or the local rules that makes such a limitation.   *See Michilin Prosperity Co., Ltd.*

15  *V. Fellowes Mfg. Co.*, 2006 WL 1441575 at *2 (D.D.C. May 23, 2006) (finding that nothing in the

16  court's supplemental scheduling order reserved discovery regarding claim construction only to

17  *Markman* proceedings).   Indeed, it was *Apple*, not *Samsung* that proposed a separate *Markman*

18  hearing before trial thereby admitting that additional claim construction is needed**.**

19      **E.    Apple's Failure To Comply With The Federal Rules And The Court's**
        **Scheduling Order Is Neither Harmless Nor Justified**

20

21         Failure to provide the information required under Fed. R. Civ. P. 26 results in exclusion of

22  the information "unless the failure was substantially justified or is harmless."   Fed. R. Civ. P.

23  37(c)(1); *Dominguez v. Excel Mfg., Inc.,* 2010 WL 5300863, at *5 (N.D. Cal. Dec. 20, 2010).

24  Rules 37(b) and (d) apply these preclusive sanctions equally where a party has failed to sufficiently

25  answer interrogatories.   Fed. R. Civ. P. 37(b)(2)(A), 37(d)(1).   The burden of proving an excuse

26  is on the party facing sanctions.   *See Yeti by Molly, Ltd. v. Dechers Outdoor Corp.,* 259 F.3d

27  1101, 1107 (9th Cir. 2001).   The four factors courts consider in evaluating harmlessness and

28  justification are:   "(1) prejudice or surprise to the party against whom the evidence is offered; (2)

the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."   *Dominguez,* 2010 U.S. Dist. LEXIS 137582 at *5.   Because all of these factors support Samsung's motion, the portions of Apple's experts' reports which rely upon and cite to previously undisclosed claim constructions should be stricken.

### 1.   Samsung Suffered Significant Prejudice from Apple's Conduct

#### (a)   Apple's Failure to Answer Interrogatory 46 Significantly Prejudiced Samsung

Apple's claim construction positions are crucial to the determination of Apple's non-infringement and invalidity positions.   The first step in determining infringement is to determine the scope and meaning of the patent claims asserted.   *See, e.g., Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*).   Similarly, to determine anticipation, "first, the disputed claim terms are construed, then the construed claims are compared to the prior art." *See Regents of University of Minnesota v. AGA Medical Corp.*, 717 F.3d 929, 940 (Fed. Cir. 2013). Thus, an infringement or invalidity finding premised on an incorrect claim construction is subject to reversal.   *See, e.g.*, *Aria Diagnostics, Inc. v. Sequenom, Inc.*, No. 12-1531, slip op. at 2 (Fed. Cir. Aug. 9, 2013).   The importance of claim construction is underscored by the Patent Local Rules, which are designed specifically to prevent the parties from altering their claim construction positions.   *See, e.g., LG Electronics Inc. v. Q-Lily Computer Inc.*, 211 F.R.D 360, 367 (N.D. Cal. 2002) (recognizing the need to "prevent the 'shifting sands' approach to claim construction"). Yet Apple has brazenly violated the Federal Rules by failing to disclose its claim construction positions.   Accordingly, Apple should be limited only to those claim construction theories it actually disclosed.   *See Clintec Nutrition Co. v. Baxa Corp.*, 1998 WL 560284 at *8 (N.D.Ill. Aug. 26, 1998) (holding that "[Plaintiff] may only offer those theories of claim interpretation it provided in its interrogatory answers.").

Here, Apple has simply failed to disclose its claim construction positions in response to Samsung's Interrogatory 46 prior to submission of its opening and rebuttal expert reports.   As a result, Samsung was denied the opportunity to address these positions in Samsung's own expert

1    reports.   Moreover, Apple preserved its ability to strategically alter these claim construction

2    positions in response to Samsung's expert reports.   Such tactics go against the fundamental

3    premise of the Federal Rules and the Court's Scheduling Order.   Expert opinions were submitted

4    *after* the close of fact discovery because they depend on facts disclosed *during* fact discovery.

5                    **(b)    Apple's Response to a Different Interrogatory Did Not
                              Cure the Prejudice**

6

7              As explained above, Apple's opposition before Judge Grewal rested on the position that it

8    responded to Samsung's non-infringement Interrogatory 12, and therefore Samsung was on notice

9    and was not prejudiced from Apple's failure to respond to Interrogatory 46.   However, it is not

10   Samsung's burden to review the hundreds of pages that make up Apple's responses to Samsung's

11   50 interrogatories to somehow glean Apple's admittedly "implicit[]" constructions to the asserted

12   claims and to speculate about every claim construction argument Apple may make.   *DIRECTV,*

13   *Inc. v. Puccinelli*, 224 F.R.D. 677, 680-81 (D. Kan. 2004) ("Plaintiff may not merely refer

14   Defendants to other pleadings or [Interrogatory] disclosures hoping that Defendants will be able to

15   glean the requested information from them.").

16             Apple claimed before Judge Grewal that Samsung's experts knew about Apple's

17   constructions and responded to these positions in their expert reports.   Simply because Samsung's

18   experts may have *attempted* to respond to potential claim constructions that they pieced together

19   from the evidence they reviewed does not mean Samsung's experts had a *meaningful* opportunity

20   to respond and address Apple's constructions.

21

22                                                              (Dkt. No. 965-20, Min

23   Opening Report, ¶ 1138)

24

25   Unsurprisingly, Apple does not even point to where Dr. Min provided opinions related to Dr.

26   Fuja's construction of the "N field" representing the number of bits or bytes contained in the

27   MAC-es PDU.   Dr. Min was therefore denied the chance to respond to Dr. Fuja's claim

28   construction positions because Apple failed to respond to Interrogatory 46.

With respect to the '239 patent, it is still not clear what claim constructions Apple is proposing.   For example, Apple identified certain portions of the '239 specification that are allegedly part of the structure of the means-plus-function claim terms.   But Apple did not define what software structures these are supposed to include.   Dr. Storer renders only vague and conclusory opinions to state that (1) the patents are invalid because these undefined software structures are disclosed or inherent in the prior art; and (2) the claims are not infringed because the software structures are not in the accused products.   Without defining these alleged software structures, Apple has created a moving target that it can use to broadly assert invalidity and non-infringement positions under whichever interpretation it chooses before trial.

Finally, Apple did not even attempt to argue that Dr. Schonfeld knew of Apple's claim construction positions with respect to the '757 patent.

Apple did not even make a good faith effort to respond to Samsung's interrogatory. Instead, Apple made a deliberate decision to prejudice Samsung by withholding its claim construction positions.   Samsung was prejudiced, as Samsung was hindered in its ability to understand and respond to these constructions, while Apple remained free to shift and modify its claim construction positions in its expert reports.   Apple's *post hoc* explanation of why Samsung has suffered no prejudice is without merit.

**2.      Samsung Is Unable to Cure the Prejudice Caused by Apple's Conduct**

At this point in the case, Samsung can do nothing to cure the prejudice caused by Apple's concealment of claim construction positions.   Following the close of discovery on July 15, 2013, Samsung met and conferred with Apple to seek a response to these interrogatories.   Had Apple responded in a timely fashion, Samsung's prejudice might have been lessened.   Instead, Apple delayed its response and sought relief from the Court during the July 31 case management conference.   When Apple's request for further Markman proceedings was denied, Apple *still* failed to supplement.   As a result, Samsung could not respond to these theories in either its opening or rebuttal expert reports.

3.    **Likelihood of Disruption of the Trial**

At this point, both fact and expert discovery is complete, and the parties have already filed dispositive motions regarding the patents.   It is simply too late for Samsung to take full discovery on undisclosed claim construction positions, conduct analysis based on Apple's positions, incorporate responses into its experts' opinions, dispositive motions and trial strategy, and prepare supplemental expert reports.   Apple has insisted on preserving the case schedule to maintain its trial date, and knew that its failure to disclose facts and theories would deprive Samsung the opportunity to respond.

4.    **Apple's Failure to Disclose Was Willful**

Apple's failure to substantively respond to Samsung's interrogatory requests can only be construed as purposeful concealment of critical evidence in bad faith.   Apple's claim construction positions could have been laid out long before Samsung served its interrogatories, simply based on the intrinsic evidence of the patent, the specification, and the prosecution history.   Samsung duly served an interrogatory seeking such information.   Yet Apple did not even attempt to provide a response, but set forth baseless objections to avoid providing any response.   Apple's continued failure to disclose its claim construction positions can only be described as deliberate and willful.

IV.    **CONCLUSION**

For the foregoing reasons, those portions of Apple's expert reports that rely on undisclosed claim constructions are improper, prejudicial, and should be stricken.

1   DATED: January 16, 2014                QUINN EMANUEL URQUHART &
2                                          SULLIVAN, LLP

3

4                                          /s/ Victoria Maroulis
                                           Charles K. Verhoeven
5                                          Kevin P.B. Johnson
                                           Victoria F. Maroulis
6                                          William C. Price
7                                          Attorneys for SAMSUNG ELECTRONICS CO., I
                                           SAMSUNG ELECTRONICS AMERICA, INC., a
8                                          SAMSUNG TELECOMMUNICATIONS
                                           AMERICA, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S NOTICE OF MOTION AND MOTION TO STRIKE