# EXHIBIT 1

**REDACTED VERSION
OF DOCUMENT SOUGHT TO BE
SEALED**

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation, | |
| Plaintiff, | |
| vs. | Civil Action No. 12-CV-00630-LHK |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |
| | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| APPLE INC., a California corporation, | |
| Counterclaim-Defendant. | |

**CORRECTED EXPERT REPORT OF JAMES A. STORER, PH.D.**
**REGARDING NON-INFRINGEMENT OF THE ASSERTED CLAIMS OF**
**U.S. PATENT NOS. 5,579,239 AND 6,226,449**

**VOLUME I**

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

**V.      U.S. PATENT NO. 6,226,449**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

23.      The claimed digital camera of the '449 patent uses an architecture that is outdated and fundamentally different from the technology of the accused Apple products, which are multimedia devices that offer users a variety of features and functions.  Samsung's and Mr. Parulski's infringement allegations suffer from multiple defects.  Specifically, I have concluded that:

- None of the accused Apple products is a "digital camera";

- None of the accused Apple products includes "an A/D converter which converts said analog signal from said imaging device to a digital signal";

- None of the accused Apple products includes "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals";

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

- None of the accused Apple products includes "a recording circuit which records compressed data, said compressed data including a moving image signal or a still image signal";

- None of the accused Apple products includes "a decompressor which decompresses said compressed data by using a different decompressing method according to whether said recorded compressed data is a moving image signal or a still image signal";

- None of the accused Apple products includes "a reproducing circuit which reproduces a moving image signal, a sound signal in synchronous to said moving image signal, and a still image signal";

- None of the accused Apple products includes "display[] a list of said moving image signal and still image signal as a search mode";

- None of the accused Apple products includes "recording circuit" "wherein said recording circuit records each one of said plurality of image signals with classification data."

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

57.     Users can remove photos and videos from albums, but removing a photo or video from an album does not delete that photo or video from the device.  *See, e.g.*, Titi Dep. at 102:5-23.  In contrast, as discussed above, deleting a still image or video from Camera Roll deletes the still image or video from the device.  *Id.*  As shown below, the user may "delete" photos from Camera Roll, but can only "remove" photos from albums:

23

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

**Editing in an Album**                    **Editing in Camera Roll**

          

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

24

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

63.     To perform further digital processing operations on the signal (and ultimately store the image in memory as digital data), the signals are converted to digital form using analog-to-digital converters integrated within the image sensors.  At the time of the alleged '449

27

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

invention, CCD image sensors output analog signals to a separate analog-to-digital converter

component in a serial manner.  *See* Parulski Dep. at 88:20-89:9; *see also* Parulski Rep. ¶ 73.  In

contrast, modern CMOS image sensors include analog-to-digital converter functionality built

directly into the image sensor chip.[5]

<span style="color:red">INTENTIONALLY OMITTED FROM EXHIBIT/RECORD</span>

28

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

107. ████████████████████████████████ they can be
accessed by the Photos App. ████████████████████
████████████████████████████████████████████████
████████████████████████ *See, e.g.*, Titi Dep. at 27:6-28:2.
████████████████████████████████████████████████
████████████ The file ███████ contains a class called ████

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

1 ████████████████████████████████████████████████████

2 *See, e.g.*, Titi Dep. at 26:12-14 ("… ████████████████████████████

3 ████████████████████

4     108. ████████████████████████████████████████

5 ████████████████████ a file called ████████████████████████████

6 ████████████████████ Titi Dep. at 11:11-12 ("When you take a photo, it will

7 be added to the Camera Roll."), 29:20-21 ("The Camera Roll contains all the photos and videos

8 taken with that device.")  Additionally, the Photos App provides functionality ████████████

9 ██████████████████████████████ *See* Titi 101:3-14 ████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████

15     109. ████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████

22     110.    The Photos App also provides functionality to view albums ████████████

23 such as Camera Roll.  The screen displaying albums and ████████████ is called the "Album

24 List View." ██████████████████████████████████████████████████

25 ██████████████████████████████████████████████████

52

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION



An example of the Album List View is shown in the screenshot below:



111.    The Photos App also provides functionality to view images and videos in albums

or in Camera Roll.  The screen displaying images within an album is called the "Album View."

The file █████████████ defines the Album View and specifies that images and

videos within an album or Camera Roll are displayed as a grid of thumbnails.

████████████████ also provides the user with functionality to make changes to an album,

53

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

such as changing the album name or adding/removing photos from that album. *Id.*; Titi Dep. at

65:20-66:3 (explaining that, in conjunction with other files, ███████████████ "is called

when a change is made to an album.").

    . <span style="color:red">INTENTIONALLY OMITTED FROM EXHIBIT/RECORD</span>

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

### 2.    Albums Can Be Displayed As A Grid Rather Than As A List

356.    Claim 25 of the '449 patent requires the display of "a list of classifications as a classification mode."  Mr. Parulski contends that the "Album List" view in the Photos App on the accused Apple products meets this claim limitation.  Parulski Rep. ¶¶ 235-236.  This view does not appear in the Photos App on the iPad products, however.  The Photos App on the iPad products displays albums as a thumbnail grid (shown below), not as a "list" as required by the asserted claims of the '449 patent.

183

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION



357.    As explained above in Section V.G.7 regarding the "list … as a search mode"

limitation, a grid does not meet the "list" limitation.  Given that Apple has already developed

iOS code for the iPads to display Albums in a grid or array—rather than "list"—format, Apple

could similarly modify the iPhone and iPod touch Photos App to use a grid or array format to

display albums.  Indeed, the iPhone and iPod touch Photos Apps already use the grid format in,

for example, the "Album View" screen for displaying the contents of an album.  *See, e.g.*,

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

184

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

413.     In this same amendment, Applicants also added asserted claim 15 (original claim 19), and asserted that "[t]he arguments contained herein in response to the rejections under 35 U.S.C. §112, 102(a), and 103 apply to new claims 16-20."  '239 File History, 2/2/96 Amendment [SAMNDCA630-00832596] at 12.  In a second amendment on May 21, 1996, the applicants reaffirmed that they were disclaiming video calls with similar language:  "The present invention includes an apparatus capable of capturing a full-color, full motion composite signal in real time; digitizing that composite signal ***into a data file***; compressing the data file and transmitting it through a computer interface via telephone lines, cellular, radio, and other telemetric frequencies from a remote unit to a host unit."  '239 File History, 5/21/96 Amendment [SAMNDCA630-00832632] at 9 (emphasis added).  Thus, the applicants also relinquished the ability to assert that claim 15 covers any device that does not create a full-motion composite signal video data file, such as the accused Apple products when running FaceTime.

414.     This makes sense in the context of the '239 patent as it is replete with references to storing the video in a data file before transmission, which is inconsistent with video conferencing or video calls.  *See, e.g.*, '239 patent at Abstract, 2:26-31, 2:35-39, 2:46-58, 2:66 – 3:21, 3:29-60,  4:6-16, 4:41-45, 4:49-58, 4:62 – 5:6, 5:11-16, 5:21 – 6:18, 6:24-61, 7:4-10, 7:17-

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

30, 8:13-30, 8:38-40, 8:46-49, 8:55-60, 9:3-29, 9:39-41, 9:46-48, 9:61-67, 10:4-61, 11:1-8, 11:11-32, 11:45-61, 12:5-8, 12:15-23, 12:27-34, 12:40-51.  For this same reason, I disagree with Dr. Schonfeld's assertion that the alleged invention is consistent with "video conferencing" because it can handle "infinite" videos.  Neither video conferencing nor "infinite" videos are described in the '239 patent.  Although the length of a video that is being recorded by a camera is not predetermined and can be captured by a video capture card, that video is still stored in a data file as it is captured and compressed. Once the recording stops, the file is then of determinate length.  It is then stored and can be played, replayed, edited, split, or transmitted.  That is all that is disclosed in the '239 patent, and it is in nearly every paragraph (see previous set of citations).

415.    The applicants also relinquished additional subject matter – i.e., devices without a video capture module that is not on or integrated into a video card – during prosecution of issued claim 15.  In response to the examiner's rejection of the claim 19 (issued claim 15) as obvious over U.S. Patent No. 5,253,275 (Yurt et al.) in view of Gattis et al. or U.S. Patent No. 5,375,068 (Palmer et al.), the applicants argued the importance of a video card having a video capture module to the invention:

> Real time capture is significantly different than the method described by Yurt.  Yurt contemplates a system which takes a video sequence such as a motion picture of known length characteristics and then subjecting that signal to a complex mathematical algorithm which captures, digitizes, and compresses that signal. This method disclosed by Yurt is very time consuming and requires complex and expensive hardware to accomplish.  As stated above, the Yurt disclosure contemplates a storage library of known files.  This library is precompressed (col. 7, line 47--col. 8, line 26). In the Yurt disclosure, it is desirable to perform this substantive precompression so as obtain a data file which is as small as possible so as to reduce transmission time.  Yurt does not disclose the use of a ***video card including a video capture module*** in order to accomplish its capture. The frame grabber methodology of Gattis and Palmer is likewise significantly different from ***a video card having a video capture module*** as recited in claim 19.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

> The differences between a ***video card*** and frame grabber were discussed in Applicant's Amendment and Response to the Office Action dated August 2, 1995, incorporated herein by reference. In light of the fact that ***a video card having a video capture module is not contemplated by Yurt nor Gattis***, or Palmer, the rejection of claim 19 under 35 U.S.C. §103 is believed overcome.

'239 File History, 5/21/96 Amend. [SAMNDCA630-00832632] at 12 (emphasis added).  This passage shows that the "video capture module" in the claim is the same as the video capture module on the video card described in the patent specification and required by claim 1.

416.    This makes sense in light of the prior art cited by the examiner.  In this argument, the applicants admitted that the system disclosed in Yurt captures, digitizes, and compresses a video signal.  *Id.*  In addition, as discussed above, Gattis not only discloses capture, digitization and compression, but the capture and compression is real time – which is not surprising since Gattis discloses a videoconferencing system.  Palmer – another video conferencing patent – also disclosed all aspects of this limitation (which the applicants appear to admit):  "Frame grabber 24 digitizes and stores each frame of video from an analog video source and can deliver up to 30 frames per second of digitized 640x480 true color (24 bits) of NTSC/SECAM/PAL video into video frame buffer 35.  A dedicated hardware compression subsystem 37 can also be connected to the backplane channel 26 to provide high performance video compression of the digitized video data."  U.S. Patent No. 5,375,068 ("Palmer"); *see also id.* at 3:39-53 ("video source includes a video camera, a video tape recorder, and/or a video laser disk player. . . . A video compressor may compress the video data using JPEG or MPEG compression.").  In short, the cited references disclosed every limitation of the claimed real-time capture and compression with the exception of performing that compression using a video card having a video capture module.  The inventors also acknowledged that video cards having a capture module were required when they described real-time capture as including "synchronous capture of a composite signal

222

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

*previously stored*" – i.e., such as from a VCR.  *Id.* at 11 (emphasis added).  That is how video cards having video capture modules work:  they can capture video previously stored such as from a VCR, as well as while a camera is taping.  The applicants, through these arguments that the disclosed references did not have a video card having a video capture module," thereby relinquished subject matter other than "a video card having a video capture module."[19]

417.    Moreover, the applicants also reconfirmed that the "video capture module" in claim 15 is the same as the video capture module on a video card.  In their argument regarding claim 15, the applicants not only described their "invention" in the same manner they did with respect to claim 1, but they referred to the arguments they made to overcome Gattis with respect to claim 1, which they also stated were intended to apply to claim 15.  '239 File History, 5/21/96 Amend. [SAMNDCA630-00832632] at 12 ("The differences between a *video card* and frame grabber were discussed in Applicant's Amendment and Response to the Office Action dated August 2, 1995, incorporated herein by reference.").  The applicants also demonstrated that they considered a "video card having a video capture module" was part of their invention when they faxed a draft amendment of the claim to the examiner the day before they met with the examiner. In that amendment, they had only added "in real time" to the claim, but had not dropped "video card having."  They also made the same argument discussed above, emphasizing the "video card having a video capture module."  *See* '239 File History, 5/20/96 Draft Amend. [SAMNDCA630-00832618] at 4, 12; '239 File History, Interview Summary [SAMNDCA630-00832617]. Although the applicants removed the phrase "video card having" from claim 15 after the

---

[19]        I note that Dr. Schonfeld states that "an example" of the device applicants were describing in their amendment is FaceTime.  *See* Schonfeld Report, ¶¶ 374 and 385.  That contention makes no sense as the applicants were describing hardware, not software.  In any event, FaceTime cannot capture a "previously stored video."

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

meeting, that fact does not change my opinion.  The video capture module on the video card

actually performs the capture.  It does not change what a video capture module is, as confirmed

by the patent and the file history.  There is no description in the patent of any other type of video

capture module.  Only a video capture module on a video card is described.[20]

### 3.    The '239 Patent Does Not Describe Video Calls or Streaming

418.    Dr. Schonfeld is incorrect that the '239 patent covers streaming and video calls.

*See* Schonfeld Report ¶¶ 409-11.  Not only did the applicants relinquish videoconferencing and

video calls during prosecution, as discussed above, the patent teaches away from this subject

matter.  As I also explained above, the '239 patent repeatedly describes transmitting a stored data

file, and not a video stream.  Indeed, the '239 patent's discussion that adding audio will require a

bigger file and require longer transmission time further supports that videoconferencing was not

contemplated because it would not be useful without audio.  *See* '239 patent at 5:46-51 ("Capture

with audio makes the data file longer since the audio signal must also be digitized, compressed,

and stored in the remote unit's hard disk.  It is evident that the longer the data file, the longer the

time required for transmission of the entire data file from the remote unit to the host unit.").  In

addition, the '239 patent's explanation that the remote unit could be used to edit the captured

video file, to store the captured video file on the hard drive, and to split the captured video file --

all are inconsistent with video calls.  *See, e.g.,* '239 patent at 3:6-7 ("After the video file has been

captured, it may be edited as desired prior to transmission to the host unit."); 3:3-6 ("A software

sequence then instructs the computer central processing unit to store the captured data file on the

---

[20]    Dr. Schonfeld asserts in paragraph 386 that "it is my opinion that the Applicant intended
to claim only a video capture module, which is broader than a video card."  It is unclear what Dr.
Schonfeld means by this assertion – the applicants never claimed a video card alone.  In any
event, as discussed above, in my opinion the claim cannot be broader than the what is described
in the patent or than what they argued to overcome the rejection over Gattis, Palmer, and Yurt.

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

computer's hard disk drive."); 3:12-14 ("The data file is split and organized so as to reduce the amount of time of transmission of the data file.").

419.    Figure 2 of the '239 patent also demonstrates that streaming and video calls are not covered by the '239 patent.  As that figure indicates,

> [a]fter the video sequence is captured, it may be viewed, edited, or transferred to the host unit.  Each bit map file box 22 has a "VIEW" selection button 24 and a "TRANSFER" selection button 24.  Upon selection of "VIEW" button 24, a captured video data file may be retrieved from the remote hard disk and the video sequence run.  The video sequence is displayed in its respective bit map file box 22. . . .
>
> Selection of "TRANSFER" button 26 initiates the transfer software sequence B and the file splitting software sequence, discussed below.  The captured, digitized, and compressed data file is then automatically transmitted to the host unit.

'239 patent at 6:24-39.  These TRANSFER buttons are outlined in red below:

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION



*Fig. 2*

This figure also shows that "[t]he remote unit is capable of storing and displaying up to (8) bit map files." *Id*. at 5:29-31.  The file history further shows the need to be able to replay a video file.  For example, the applicants attempted to distinguish Gattis by arguing that "Gattis does not contemplate the creation of full-motion composite signal video information into digitized files which can be ***stored***, transmitted, played or ***replayed***. This is a very significant difference." '239 File History, 2/2/96 Amendment [SAMNDCA630-00832596] at 10-11 (emphasis added); *see also* '239 File History, 2/2/96 Aff. [SAMNDCA630-00832590] ¶ 2 (describing Ex. A and FirstLook Video product in Exs. C and D as "our invention"), Ex. C ("Just plug the camera into the unit, and you can edit the tape frame-by-frame with a mouse. . . . The average 15-second file takes two to three minutes to transmit"), Ex. D ("The system is capable of storing eight different clips of varying lengths in its database, all of which can be quickly retrieved and edited.").  The

226

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

ability to edit and replay video and to save up to eight video clips are all inconsistent with streaming video and video calls, as is the need to select a TRANSFER button before the video is sent and the slow speed of the transmission.

420.     Conversely, there is no disclosure in the '239 patent of transmission of video as it is being captured and compressed, as would be required for video streaming, or any disclosure of two-way sending and receiving, as would be required by video calls.  There is no discussion of the host unit or any other receiving unit being able to send back a video.  In fact, the host unit does not even have the ability to participate in a video call, as Dr. Schonfeld himself admits – because it does not include the capture module.   *See, e.g.,* Schonfeld Report ¶ 70.  The '239 patent also does not disclose any software displaying video of the participants in the call on the remote unit and the host unit or for managing the call.

421.     The documents describing the named inventors' FirstLook Video product support this understanding.  The FirstLook Quick Start Guide provides step-by-step operating instructions for the FirstLook Video from power up, connecting a camera to a video capture cable to capture video, and clicking on a "Transfer" button to transfer any of the last eight recorded video clips back to the Host.  The Guide contains the same screen as shown in Figure 2 of the patent, with video clips in the VIEW screens:

227

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION



Fonet Quick Start Guide [SAMNDCA630-00832075] at SAMNDCA630-00832091.  The guide also describes how to transmit video:

### Sending a Video Clip

a.  To transfer any of the last eight (8) video clips back to the Host Unit, position the mouse pointer on the Transfer button directly beneath the desired clip and click the left mouse button once. This macroplexes the files and dials the Host Unit automatically, requiring no further interface by the user.

*Id*. at SAMNDCA630-00832095.  The FirstLook Video brochure describes how many minutes it took to transmit video clips – far longer than the video play time.  FirstLook Video Brochure [SAMNDCA630-00828677] at 1 ("Field Test Sample Results":  "Time delay video transfer over cellular of a 15-second clip at 7 frames per second – *5 minutes*").  All these disclosures are

228

CONTAINS INFORMATION DESIGNATED AS APPLE AND
THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION

consistent with the description of the purported invention in the '239, and none is consistent with streaming or video calls.  The inventors never developed a streaming or video call product.

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

229