# EXHIBIT 19

# Redacted Version of Document Sought to Be Sealed

Highly Confidential

Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                   SAN JOSE DIVISION
 3                     - - - - -
 4   APPLE, INC., a          )
     California corporation,)
 5                           )
            Plaintiff,       )
 6                           )
            vs.              ) Civil Action
 7                           ) No. 12-CV-00630-LHK
     SAMSUNG ELECTRONICS     )
 8   CO., LTD., a Korean     )
     corporation, et al.,    )
 9                           )
            Defendants.      )
10
                       - - - - -
11
        VIDEOTAPED DEPOSITION OF TODD CARL MOWRY
12
                       - - - - -
13
                 September 19, 2013
14
                       - - - - -
15
                  HIGHLY CONFIDENTIAL
16
                       - - - - -
17
18
19
20
21
22
23
24   Reported By: Ronda Weinell
25   Job No: 65971
```

Highly Confidential

Page 250

| | | |
|---|---|---|
| 1 | So if the shared libraries you | 17:00 |
| 2 | generally know about are different in Android | 17:00 |
| 3 | than the ones you are familiar with, then you | 17:00 |
| 4 | could be wrong; right? | 17:00 |
| 5 | MR. VINCENT: Objection. | 17:00 |
| 6 | Vague, calls for speculation. | 17:00 |
| 7 | A.   In Paragraph 85 of my Rebuttal | 17:00 |
| 8 | Report, I reference a presentation by Dan | 17:00 |
| 9 | Bornstein from Google who developed the virtual | 17:00 |
| 10 | machine for a Dalvik, and he described how | 17:00 |
| 11 | these things work. So I was taking that into | 17:00 |
| 12 | account, as well as my general knowledge of how | 17:00 |
| 13 | shared libraries work. So I was taking into | 17:00 |
| 14 | account the specifics of how things work in | 17:00 |
| 15 | Android. | 17:00 |
| 16 | Q.   So you're relying on a presentation | 17:00 |
| 17 | from Dan Bornstein, as well as your general | 17:00 |
| 18 | knowledge; right? | 17:00 |
| 19 | A.   Am I relying on? I am relying on my | 17:00 |
| 20 | general knowledge, and that I think is | 17:01 |
| 21 | sufficient. I gave this as another example | 17:01 |
| 22 | here in my response. I think "relying on" has | 17:01 |
| 23 | a specific legal meaning, and I don't have | 17:01 |
| 24 | legal training to split hairs about what that | 17:01 |
| 25 | means. But I was, in my initial report, I was | 17:01 |

Highly Confidential

Page 251

| | | |
|---|---|---|
| 1 | relying on the things that I said that I relied | 17:01 |
| 2 | on, including my background and experience in | 17:01 |
| 3 | the field. | 17:01 |
| 4 |     Q.   But you're not relying on any | 17:01 |
| 5 | specific code traces that establish this; is | 17:01 |
| 6 | that right? | 17:01 |
| 7 |           THE COURT REPORTER:  Code | 17:01 |
| 8 | traces? | 17:01 |
| 9 |     A.   Code traces or dynamic traces? | 17:01 |
| 10 |     Q.   Any evaluation of source code | 17:01 |
| 11 | whatsoever. | 17:01 |
| 12 |     A.   Oh, yes, I looked at the source code | 17:01 |
| 13 | in detail. | 17:01 |

Page 255

1  cited it.                                                    17:06
2       Q.   And is Paragraph 85, is what's                      17:06
3  referenced in Paragraph 85 and your experience                17:06
4  and knowledge, is that the extent of what                     17:06
5  you're relying on to prove this point?                        17:06
6            MR. VINCENT:  Objection.                            17:06
7  Vague.                                                        17:06
8       A.   This point?  What point are you                     17:06
9  referring to exactly?                                         17:06

12      A.   I -- well, I -- it's true, and I                    17:06
13 know that from my background and my experience.               17:06
14 I actually teach this to our undergraduates,                  17:06
15 for example, this kind of thing, and I refer                  17:06
16 to -- I mean,

          So I was just adding some additional                   17:07
20 material to respond to that.                                  17:07
21           But in terms of my infringement                     17:07
22 analysis, it was based upon what I described in               17:07
23 my Infringement Report, which includes my                     17:07
24 background and experience and the other things                17:07
25 I mentioned there.                                            17:07

Page 263

1          MR. VINCENT: Objection. 17:16
2  Misstates testimony. 17:16
3     A. No. That's not what I said. It 17:16
4  certainly contains my opinions, it is the 17:16
5  starting point of how I would do this. And I 17:16
6  hadn't given any thought of how I would present 17:17
7  something to the jury, so it's fairly premature 17:17
8  to talk about that. 17:17
9         But you asked me -- you asked me a 17:17
10 question, and I attempted to answer how I might 17:17
11 explain this to a layperson, and that's why I 17:17
12 gave that kind of answer. 17:17
13    Q. What I asked was what criteria you 17:17
14 applied and what you would tell the jury in 17:17
15 terms of what criteria you applied. What I am 17:17
16 asking you now is now that you've told me what 17:17
17 criteria you applied, where in your 17:17
18 Infringement Report do you actually apply this 17:17
19 criteria to reach that conclusion? 17:17
20    A. Where did I apply the criteria? I 17:17
21 apply the criteria from my background and my 17:17
22 experience and the other things I referred to 17:17
23 in the report to reach this conclusion. So 17:17
24 it's obvious to people who understand how 17:17
25 computer systems work how shared libraries 17:17

Highly Confidential

Page 264

| | | |
|---|---|---|
| 1 | operate within the memory of the computer, so I | 17:17 |
| 2 | was using that knowledge to do this. | 17:17 |
| 3 | Q. But you don't explicitly describe it | 17:18 |
| 4 | in your Infringement Report? | 17:18 |
| 5 | A. There are things that I did not | 17:18 |
| 6 | explicitly describe in my Infringement Report | 17:18 |
| 7 | regarding like how binary numbers work and | 17:18 |
| 8 | other aspects of computer systems. This is not | 17:18 |
| 9 | an exhaustive enumeration of everything I took | 17:18 |
| 10 | into account whenever I did this analysis. | 17:18 |
| 21 | Q. And if you did this analysis and | 17:19 |
| 22 | reviewed this code, where is there any | 17:19 |
| 23 | explanation of that in your Infringement | 17:19 |
| 24 | Report? | 17:19 |
| 25 | A. I'm sorry. You're suggesting that | 17:19 |

Page 265

1   did I -- did I not cite the code in my report?                17:19
2   I mean, is there no discussion of me looking at                17:19
3   code?  I thought that I had made it clear in my                17:19
4   report that I looked at -- I looked at source                  17:19
5   code to do this analysis.                                      17:19
6       Q.   Well, I'm asking you, it's your                       17:19
7   report, I'm asking you where --                                
                                        you confirmed              17:19
10  that's how they work, and I asked you where in                 17:19
11  your report does it show that?                                 17:19
12      A.   I don't recall a point where I made                   17:19
13  that specific point, but it's just pretty                      17:20
14  obvious.  I mean, I did confirm this and looked                17:20
15  at it.                                                         
                                        So I didn't                17:20
18  document everything that could have been                       17:20
19  documented.  I documented things that I thought                17:20
20  were important to reaching the conclusions that                17:20
21  I reached.                                                     17:20
22      Q.   But you didn't document anything                      17:20
23  about this in your report?                                     17:20
24           MR. VINCENT:  Objection.                              17:20
25  Vague.                                                         17:20

Highly Confidential

```
                                                       Page 266
1       A.    Can you describe "this"?                  17:20
2       Q.    Yes.  Establishing that the things        17:20
3    in Android that you are calling ▓▓▓▓▓              17:20
4    ▓▓▓▓▓▓▓ actually worked the way that you           17:20
5    think they work, that is apparently obvious to     17:20
6    someone?                                           17:20
7             MR. VINCENT:  Objection.                  17:20
8    Argumentative, misstates testimony.                17:20
9             THE COURT REPORTER:  Misstates            17:20
10   what?                                              17:20
11            MR. VINCENT:  Testimony.                  17:20
12      A.    I don't recall a place in the report      17:20
13   where I document that.                             17:20
14      Q.    So in your Infringement Report, you       17:20
15   refer to something as interface glue code; is      17:21
16   that right?                                        17:21
17      A.    That sounds familiar.  I believe so.      17:21
18      Q.    And if you're asked to explain to         17:21
19   the jury what is interface glue code, what         17:21
20   would you tell them?                               17:21
21            MR. VINCENT:  Objection.                  17:21
22   Assumes facts, calls for speculation.  Calls       17:21
23   for speculation and assumes facts.                 17:21
24      A.    Well, I don't really like questions       17:21
25   that begin with if you would like to explain       17:22
```

Page 267

| | | |
|---|---|---|
| 1 | this to the jury, just because I haven't given | 17:22 |
| 2 | any thought to how I would explain something to | 17:22 |
| 3 | the jury.  But let me answer it as potentially | 17:22 |
| 4 | how I would explain this to a layperson.  I | 17:22 |
| 5 | think that that was probably what you're | 17:22 |
| 6 | asking. | 17:22 |
| 7 | So for people -- so software | 17:22 |
| 8 | components interact with each other through | 17:22 |
| 9 | interfaces, and as part of that interaction, | 17:22 |
| 10 | one component is calling into or interacting or | 17:22 |
| 11 | exercising a second component, and as part of | 17:22 |
| 12 | exercising that interface, it has to do things | 17:22 |
| 13 | like get data values gathered up and put | 17:22 |
| 14 | together the right way to then pass over into | 17:22 |
| 15 | across the interface to the other component. | 17:22 |
| 16 | The component does its work, then it | 17:22 |
| 17 | responds and something comes back, and then | 17:22 |
| 18 | things are done with that.  So you need this | 17:22 |
| 19 | glue code because, otherwise, it has to be | 17:22 |
| 20 | something that connects these two components. | 17:22 |
| 21 | If there was nothing like this, then they would | 17:22 |
| 22 | just exist separately and not talk to each | 17:23 |
| 23 | other in any way or not interact with each | 17:23 |
| 24 | other.  So this is a normal part of programing. | 17:23 |
| 25 | Q.    Where does the term interface glue | 17:23 |

```
                                                          Page 268
1    code come from?                                      17:23
2         A.    I don't recall exactly where it came      17:23
3    from.  I think I -- I mean, I've heard glue          17:23
4    code mentioned in my experience a number of          17:23
5    times, and that seemed like the most                 17:23
6    appropriate way to describe it.                      17:23
7         Q.    Do you teach this term in your            17:23
8    courses?                                             17:23
9         A.    I don't recall using that term in my      17:23
10   classes.                                             17:23
11        Q.    Can I find it in any textbooks?           17:23
12              MR. VINCENT:  Objection.                  17:23
13   Calls for speculation.                               17:23
14        A.    I don't know.                             17:23
15        Q.    You do agree, sir, that certain of        17:23
16   the accused analyzer server subroutines are          17:23
17   ███████████████████████████  correct?                17:23
18        A.    There are -- yes.  Well, there are        17:24
19   these -- actually, I disagree with that, so can      17:24
20   you point -- can you point to an example?  Are       17:24
21   you referring to something in particular?            17:24
22   Because my recollection was that I did refer to      17:24
23   things that I considered to be glue code, which      17:24
24   ████████████████████████████████████████████         17:24
25   in those files, but I wouldn't characterize          17:24
```

Page 337

1    COMMONWEALTH OF PENNSYLVANIA    )   E R R A T A
     COUNTY OF ALLEGHENY             )    S H E E T
2

3    APPLE INC.
     vs.
4    SAMSUNG ELECTRONICS CO., LTD., et al.

5
         I, TODD C. MOWRY, have read the foregoing
6    pages of my deposition given on September 19,
     2013,and wish to make the following, if any,
7    amendments, additions, deletions or
     corrections:
8
     Pg. No.  Line No.    Change and reason for
9    change:
10
11
12
13
14
15
16
17
18
19
     In all other respects the transcript is true
20   and correct.
21                       _____
                         TODD C. MOWRY
22
     Subscribed and sworn to before me this
23   _____ day of _____, 2013.
24   _____
         Notary Public                           (rw)
25

1   COMMONWEALTH OF PENNSYLVANIA)
    COUNTY OF ALLEGHENY         )
2
3           I, Ronda J. Weinell, a notary public
    in and for the Commonwealth of Pennsylvania, do
4   hereby certify that the witness, TODD C. MOWRY,
    was by me first duly sworn to testify the
5   truth, the whole truth, and nothing but the
    truth; that the foregoing deposition was taken
6   at the time and place stated herein; and that
    the said deposition was recorded stenographically
7   by me and then reduced to typewriting under my
    direction, and constitutes a true record of the
8   testimony given by said witness, all to the
    best of my skill and ability.
9
            I further certify that the inspection,
10  reading and signing of said deposition were not
    waived by counsel for the respective parties
11  and by the witness and if after 30 days the
    transcript has not been signed by said witness
12  that the witness received notification and has
    failed to respond and the deposition may then
13  be used as though signed.
14          I further certify that I am not a
    relative, or employee of either counsel, and
15  that I am in no way interested, directly or
    indirectly, in this action.
16
            IN WITNESS WHEREOF, I have hereunto
17  set my hand and affixed my seal of office this
    20th day of September, 2013.
18
19
20
                    S/Ronda J. Weinell
21                  -----------------------------
22
                    -----------------------------
23
24
25