1   JOSH A. KREVITT (CA SBN 208552)
    jkrevitt@gibsondunn.com
2   H. MARK LYON (CA SBN 162061)
    mlyon@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
4   Palo Alto, California  94304-1211
    Telephone:  (650) 849-5300
5   Facsimile:  (650) 849-5333

6   MICHAEL A. JACOBS (CA SBN 111664)
    mjacobs@mofo.com
7   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
8   MORRISON & FOERSTER LLP
    425 Market Street
9   San Francisco, California  94105-2482
    Telephone:  (415) 268-7000
10  Facsimile:  (415) 268-7522

    WILLIAM F. LEE (*pro hac vice*)
    william.lee@wilmerhale.com
    WILMER CUTLER PICKERING
      HALE AND DORR LLP
    60 State Street
    Boston, Massachusetts  02109
    Telephone:  (617) 526-6000
    Facsimile:  (617) 526-5000

    MARK D. SELWYN (CA SBN 244180)
    mark.selwyn@wilmerhale.com
    WILMER CUTLER PICKERING
      HALE AND DORR LLP
    950 Page Mill Road
    Palo Alto, California  94304
    Telephone:  (650) 858-6000
    Facsimile:  (650) 858-6100

11  *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

12
## UNITED STATES DISTRICT COURT
13
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

14

15   APPLE INC., a California corporation,

16           Plaintiff,

17       vs.

18   SAMSUNG ELECTRONICS CO., LTD., a
19   Korean business entity; SAMSUNG
     ELECTRONICS AMERICA, INC., a New
20   York corporation; SAMSUNG
     TELECOMMUNICATIONS AMERICA,
21   LLC, a Delaware limited liability company,

22           Defendants.

23

Case No. 12-cv-00630 (LHK)

**APPLE INC.'S NOTICE OF MOTION
AND MOTION TO STRIKE
ARGUMENTS FROM SAMSUNG'S
INFRINGEMENT EXPERT REPORTS
REGARDING SAMSUNG PATENTS**

**REDACTED VERSION OF
DOCUMENT SOUGHT TO BE SEALED**

Date:   December 10, 2013
Time:   10:00 a,m.
Place:  Courtroom 5, 4th Floor
Judge:  Hon. Paul S. Grewal

24

25

26

27

28

ActiveUS 121404623v.1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 10 a.m. on December 10, 2013, Plaintiff and Counterclaim-Defendant Apple Inc. ("Apple") shall and hereby does move to strike portions of Samsung's infringement expert reports that violate the Patent Local Rules and Orders of this Court for the reasons set forth in the accompanying memorandum.

## RELIEF REQUESTED

Apple seeks an order striking the portions of Samsung's infringement expert reports as identified in the accompanying memorandum, and ruling that neither Samsung nor its experts may rely in this litigation, including at trial, on the theories in the stricken portions.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................................ i

RELIEF REQUESTED ............................................................................................................... i

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................................... iii

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND ..........................................................................................................2

      A.     Samsung's Original, First Amended, and Second Amended Infringement
            Contentions ......................................................................................................2

      B.     The Court's June 26, 2013 Order ..........................................................................3

      C.     Samsung's Infringement Expert Reports ................................................................5

III.   ARGUMENT ...............................................................................................................6

      A.     The Court Should Strike the Doctrine of Equivalents Theories That It Already
            Barred in Its June 26, 2013 Order. .........................................................................7

      B.     The Court Should Strike the Other Infringement Arguments That It Also Already
            Excluded in Its June 26, 2013 Order .......................................................................8

            1.     The '596 Patent .....................................................................................8

            2.     The '239 Patent .....................................................................................8

            3.     The '449 Patent .....................................................................................9

      C.     The Court Should Strike the Portions of Samsung's Expert Reports Asserting
            Other Arguments That Samsung Did Not Disclose in Its Contentions, and for
            Which Samsung Lacks "Good Cause" to Add Now ...............................................12

            1.     The '757 Patent ...................................................................................12

            2.     The '239 Patent ...................................................................................18

            3.     The '449 Patent ...................................................................................21

            4.     The '087 and '596 Patents ...................................................................22

IV.    CONCLUSION ..........................................................................................................24

CERTIFICATE OF SERVICE .................................................................................................25

1
2
## TABLE OF AUTHORITIES
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page(s)**

**FEDERAL CASES**

*Genentech Inc. v. Trustees of the University of Pennsylvania,*
No. C 10-2037 LHK (PSG), 2012 WL 424985 (Feb. 9, 2012 N.D. Cal.) ........................6, 7, 8

*O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.,*
467 F.3d 1355 (Fed. Cir. 2006).........................................................................................6

**FEDERAL STATUTES**

35 U.S.C. § 112(6) ............................................................................................................6

**RULES**

Local Rule 5-1.................................................................................................................25

Local Rule 3-1........................................................................................................ passim

ActiveUS 121404623v.1

1

## I.   INTRODUCTION

2    Samsung has served expert reports for the five asserted Samsung patents that still remain

3   in this litigation:  the '239, '757, '449, '087, and '596 patents.  In those reports, Samsung's

4   experts have offered infringement opinions that violate the Patent Local Rules and Orders of this

5   Court in the following three respects.

6

7

8    <span style="color:red">Portion is withdrawn with prejudice by agreement of the parties, as</span>

9    <span style="color:red">indicated in the Joint Chart Identifying Remaining Issues in Motions to</span>
     <span style="color:red">Strike, Dkt. 1056</span>

10

11

12

13

14

15    ***Second***, Samsung's expert reports include several other infringement theories that the

16   Court also expressly barred in its June 26, 2013 Order.

17   <span style="color:red">Portion is withdrawn with prejudice by agreement of the parties, as</span>
     <span style="color:red">indicated in the Joint Chart Identifying Remaining Issues in Motions</span>
     <span style="color:red">to Strike, Dkt. 1056</span>   For the '239 patent, Samsung's expert,

18

19   Dr. Schonfeld, alleges that Apple literally infringes multiple means-plus-function limitations

20   based on the ***same*** structural equivalence arguments that the Court precluded Samsung from

21   adding to its contentions.  And for the '449 patent, Samsung's expert, Mr. Parulski, accuses new

22   Apple components for multiple claim limitations, despite the Court's holding that Samsung lacks

23   "good cause" to accuse new components for that patent.  Accordingly, these previously-rejected

24   allegations also should be stricken from Samsung's expert reports (for the Court's convenience,

25   these portions are highlighted in Exhibits A-C and annotated with a "2" in the margin).

26

27   [1]    All cited exhibits are attached to the Declaration of Mark D. Selwyn in Support of Apple's

28   Motion to Strike Arguments from Samsung's Infringement Expert Reports.

ActiveUS 121404623v.1

*Third*, on the eve of trial in the parties' -1846 case, the Court struck theories from many of Samsung's expert reports because Samsung had not disclosed the theories in its contentions (and had no "good cause" to add them).  Despite that ruling, Samsung has done the same thing here by having its experts allege dozens of new infringement theories for the first time in their expert reports, without any "good cause" to do so.  These new theories should be stricken from Samsung's expert reports (for the Court's convenience, these portions are highlighted in Exhibits A-C and annotated with a "3" in the margin).

As the Court observed in its June 26, 2013 Order, the Patent Local Rules play a critical role by requiring patentees to form and articulate their infringement theories early in litigation, and to adhere to those theories once disclosed (absent good cause to amend or supplement later). Unless those Rules are enforced here, Apple will need to defend itself against new theories of infringement that were not in dispute during the *Markman* process and that Apple had no opportunity to test during discovery.  To avoid that highly unfair and prejudicial result, Apple respectfully requests that the Court strike these many new infringement theories from Samsung's expert reports and make clear that neither Samsung nor its experts may rely on the new theories in this litigation, including at trial.

## II.    BACKGROUND

### A.    Samsung's Original, First Amended, and Second Amended Infringement Contentions

In June 2012, Samsung served infringement contentions pursuant to Local Patent Rule 3-1 for each of its asserted patents, including the five patents still remaining in this case:  the '239, '757, '449, '087, and '596 patents.

Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues in Motions to Strike, Dkt. 1056

**B.    The Court's June 26, 2013 Order**

Near the close of fact discovery, Samsung filed a motion requesting leave to amend its infringement contentions for a third time—seeking to add, among other things, new doctrine of equivalents arguments for almost every limitation of every asserted claim, and a host of other previously undisclosed infringement theories.  In its Order dated June 26, 2013, the Court largely denied that motion.  In so doing, the Court emphasized the important role that the Patent Local Rules play with respect to the timing and substance of infringement contentions:

> These rules and their various contention obligations "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed."  They "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."

(Dkt. 636 at 2-3 (citations omitted); *id.* at 6-7 (explaining that "[t]he purpose of infringement contentions [is to] . . . act as forms of pleading that disclose the parties' theories of their case and thereby shape discovery and the issues to be determined at trial," and that "absent a change in circumstances (and the diligence of a party who needs to amend), a change in theory after the case has progressed is unjustified.").)

Applying these principles to Samsung's motion for leave to amend, the Court rejected most of Samsung's proposed amendments, including the following:

Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues in Motions to Str ke, Dkt. 1056

1

Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues in Motions to Strike, Dkt. 1056

2

3    ***Literal Infringement of the '239 Patent:***  For the '239 patent, Samsung sought leave to

4    add a new theory that Apple ***literally*** infringed means-plus-function limitations based on certain

5    components in the accused Apple products that Samsung characterized as "***equivalent***" to

6    structures disclosed in the patent.  The Court rejected those proposed amendments, except for the

7    recently-construed "means for capturing, digitizing, and compressing" and "means for

8    transmitting" limitations.  (*Id.* at 8 ("The court finds the same flaws in Samsung's decision to

9    assert at this time equivalence theories for all of the means-plus-function terms that have yet to

10   be construed.").)

11

12

13

14

Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues in Motions to Strike, Dkt. 1056

15

16

17

18

19   ***New Accused Components for the '449 Patent***:  For the '449 patent, Samsung sought

20   leave to accuse new components of the accused Apple products as allegedly satisfying the

21   "recording circuit" and "reproducing circuit" limitations of the asserted claims.  Observing that

22   Samsung had Bills of Materials and other similar documents for the accused Apple products

23   since at least November 2012, the Court denied that request as lacking "good cause":  "Because

24   Samsung has not shown sufficient good cause, Samsung's request for leave to amend its

25   contentions to add components that it believes infringe the '449 patent is DENIED."  (*Id.* at 24.)

26   The Court further held that Samsung also lacked "good cause" to assert a new theory directed to

27   the claimed "A/D converter" (which must convert an analog signal received from the claimed

28

ActiveUS 121404623v.1

1   "imaging device" into digital form), and noted that Samsung's proposed amendments revealed

2   that—even just before the close of fact discovery—Samsung still did not know what component

3   it was accusing as the "A/D converter" in Apple's products:

4           ***From its representations, it still does not know which kind of
            converter the accused products use.***  The court can only speculate
5           how Samsung's position now is different from its position before
            its second amended contentions. . . .  ***Samsung appears only to be***
6           ***covering its bases in the event that the third parties reveal***
            ***different components than Samsung predicted.  That reasoning,***
7           ***whatever its merit, does not create good cause for Samsung's late***
            ***amendments.***
8

9   (*Id.* at 25 (emphases added).)

10          After entry of the Court's June 26, 2013 Order, Samsung served its Third Amended

11  Infringement Contentions in July 2013.  (Dkt. 660.)  Since then, Samsung has not sought leave to

12  further amend its contentions.

13          **C.      Samsung's Infringement Expert Reports**

14          On August 12, 2013, Samsung served opening reports for its asserted patents, including

15  for the '239 and '757 patents (Ex. A), '449 patent (Ex. B), and '087 and '596 patents (Ex. C).  As

16  detailed below, these reports disclosed numerous new infringement theories, including:  (i) for

17  all patents,[2]

18  <span style="color:red">Portion is withdrawn with prejudice by agreement of the parties, as
    indicated in the Joint Chart Identifying Remaining Issues in Motions to
    Strike, Dkt. 1056</span>

19              (iii) for the '239 patent, that Apple literally infringes many means-plus-

20  function limitations based on components in the accused Apple products that are supposedly

21  "equivalent" to structures disclosed in the patent; and (iv) for the '449 patent, that Apple

22  infringes based on multiple new components in the accused Apple products that Samsung

23  accused for the first time in its expert's report.

25  <span style="color:red">Portion is withdrawn with prejudice by agreement of the parties, as
    indicated in the Joint Chart Identifying Remaining Issues in Motions to
    Strike, Dkt. 1056</span>

1    These expert reports also included many new infringement theories that Samsung did not

2    disclose in its Third Amended Infringement Contentions, and for which Samsung has not

3    identified any "good cause" to raise for the first time in its expert reports.

4    **III.    ARGUMENT**

5    The Patent Local Rules of this District are designed "to provide the parties with certainty

6    as to the opposing party's legal theories," and "avoid the shifting of infringement and invalidity

7    theories that had come to be a feature in too many cases before their adoption."  (Dkt. 636 at 1

8    (*quoting O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir.

9    2006).).  Consistent with these goals, Rule 3-1 requires patentees "to crystallize" and disclose

10   their infringement theories "early in litigation and to adhere to those theories once they have

11   been disclosed," absent "good cause" to amend or supplement later.  Dkt. 636 at 2 (*quoting O2*

12   *Micro*, 467 F.3d at 1355 n.12); Pat. L.R. 3-1 (requiring infringement contentions to provide,

13   among other things, "as specific as possible" identification of the accused products and "[a] chart

14   identifying specifically where each limitation of each asserted claim is found within each

15   Accused Instrumentality, including for each limitation that such party contends is governed by

16   35 U.S.C. § 112(6), the identity of the structure(s) . . . in the Accused Instrumentality that

17   performs the claimed function.").)

18   When presented with a motion to strike portions of an expert report where the movant

19   alleges that the expert opinions are unsupported by the relevant contentions, the court "looks to

20   the nature and scope of the theory … disclosed and whether the challenged report section merely

21   provides an evidentiary example or complementary proof in support thereof, or itself advances a

22   new or alternate" theory.  *Genentech Inc. v. Trustees of the University of Pennsylvania*, No. C

23   10-2037 LHK (PSG), 2012 WL 424985 at *2 (Feb. 9, 2012 N.D. Cal.).  The court also considers

24   whether the contentions at issue could have been supplemented with the allegedly missing

25   information.  As this Court noted previously, "[a]t a minimum, a key consideration for the court

26   is the timing of the disclosure in relation to when the disclosing party had the information and

27

28

ActiveUS 121404623v.1

1  when the opposing party would have needed the information in order to fairly conduct discovery

2  or prepare a responsive strategy."  *Id.*

3        As detailed below, Samsung has repeatedly violated these requirements by disclosing

4  new infringement theories for the first time in its expert reports, without "good cause" to do so,

5  including multiple theories that the Court already barred in its June 26, 2013 Order.  To prevent

6  Apple from unfairly having to defend itself against these many new infringement theories (which

7  Apple had no opportunity to address during *Markman* or discovery), the Court should strike the

8  newly-disclosed infringement theories from Samsung's expert reports and make clear that

9  neither Samsung nor its experts may advance the new theories in this case, including at trial.

10

11

12

13

14

15

16        Portion is withdrawn with prejudice by agreement of the parties, as
        indicated in the Joint Chart Identifying Remaining Issues in Motions
        to Strike, Dkt. 1056

17

18

19

20

21

22

23

24

25  _____

26        Portion is withdrawn with prejudice by agreement of the parties,
        as indicated in the Joint Chart Identifying Remaining Issues in
        Motions to Str ke, Dkt. 1056

27

28

ActiveUS 121404623v.1

1

2          *Portion is withdrawn with prejudice by agreement of the parties,*
           *as indicated in the Joint Chart Identifying Remaining Issues in*
3                        *Motions to Strike, Dkt. 1056*

4

5

6      **B.      The Court Should Strike the Other Infringement Arguments That It Also**
7              **Already Excluded in Its June 26, 2013 Order.**

            Samsung's expert reports also contain the following additional theories that this Court
8
   expressly excluded in its June 26, 2013 Order:
9

10

11

12

13                 *Portion is withdrawn with prejudice by agreement of the parties, as*
                   *indicated in the Joint Chart Identifying Remaining Issues in Motions*
14                               *to Str ke, Dkt. 1056*

15

16

17

18

19

20

21
            **2.      The '239 Patent**
22

23

24                 *Portion is withdrawn with prejudice by agreement of the parties, as*
                   *indicated in the Joint Chart Identifying Remaining Issues in Motions*
25                               *to Str ke, Dkt. 1056*

26

27

28
                        APPLE'S MOTION TO STRIKE ISSUES RELATED TO SAMSUNG PATENTS
                  -8-                              Case No. 12-cv-00630 (LHK)

1    In his expert report, Dr. Schonfeld repeatedly alleges that Apple has literally infringed

2    the asserted means-plus-function limitations of the '239 patent because the accused Apple

3    products purportedly contain components that are "equivalent" to structures disclosed in the

4    patent.  (Ex. A [Schonfeld Rep.] ¶¶ 1314, 1316, 1350, 1352, 1359, 1361, 1364, 1366, 1372,

5    1374, 1380, 1382, 1476, 1495, 1636-37, 1640, 1692-93, 1697, 1703, 1706, 1709, 1711, 1716-17,

6    1722, 1734, 1736, 1740.)  But the Court explicitly held in its June 26, 2013 Order that Samsung

7    could not make those arguments (except for the two recently-construed means limitations):  "The

8    court finds the same flaws in Samsung's decision to assert at this time equivalence theories for

9    all of the means-plus-function terms that have yet to be construed."  (Dkt. 636 at 8.)  Because

10   Samsung has not (and cannot) identify any "good cause" to add these already-rejected

11   arguments, the Court should strike them from Dr. Schonfeld's report.

### 3.    The '449 Patent

13   In its June 26, 2013 Order, the Court barred Samsung from amending its contentions to

14   accuse new components for the '449 patent:  "Because Samsung has not shown sufficient good

15   cause, Samsung's request for leave to amend its contentions to add components that it believes

16   infringe the '449 patent is DENIED."  (Dkt. 636 at 23-25.)  Yet, Mr. Parulski's expert report

17   alleges infringement based on some of the **same** components that the Court already excluded,

18   along with several additional components that Samsung never previously accused in its

19   contentions (and has no "good cause" to do so now), including the following:

20   ***"Imaging Device"; "A/D Converter":***  Claim 25 requires both (i) "an imaging device

21   which converts an optical image signal into an analog signal" and (ii) "an A/D converter which

22   converts said analog signal from said imaging device to a digital signal."  In its infringement

23   contentions, Samsung accused an ***entire*** "CMOS Image Sensor (or similar device)" as the

24   "imaging device," and did not accuse any specific component as the "A/D converter."  (Dkt. 660

25

26

27

28

1   [Third Amended Contentions], Ex. G at 2-3.)[6]  But Apple's ████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████" as claim 25 requires for the "imaging device."  (Ex. D [Parulski

4   Dep.] at 70:19-20 (Samsung's expert agreeing ████████████████████

5   ████████████████████).)

6          Given this deficiency, Mr. Parulski's report no longer identifies the *entire* CMOS sensor

7   as the claimed "imaging device"—as Samsung alleged in its contentions.  Instead, he claims that

8   the "imaging device" limitation is met by a specific "██████" component found within the

9   CMOS sensor (which includes many other components as well), and that the "A/D converter"

10  limitation is met by a ████████████████ found within the *same* CMOS sensor.

11  (Ex. B [Parulski Rep.] ¶¶ 145-58, 160-66; Ex. D [Parulski Dep.] at 59:25-60:4 ("[I]n my

12  analysis, I have gone to maybe the next level of detail in identifying the portion of the imaging

13  device that actually does the conversion from the optical image into an analog signal.").)

14  Consistent with the Court's June 26, 2013 Order—which generally precluded Samsung from

15  accusing new components for the '449 patent, and specifically precluded Samsung from alleging

16  that the "A/D converter [] may be incorporated into the image sensor chip"—these new "imaging

17  device" and "A/D converter" theories should be stricken from Mr. Parulski's report.  (Dkt. 636 at

18  25.)

19         ***"Recording Circuit":***  Claim 25 also requires "a recording circuit which records

20  compressed data, said compressed data including a moving image signal, and a still image

---

6   In the proposed amendments attached to its April 2013 motion for leave, Samsung sought to
amend its contentions for the "A/D converter" limitation to state:  "The captured image data is
converted from an analog signal to a digital signal by ***an A/D converter, which may be
incorporated into the image sensor chip***."  (Dkt. 476, Ex. 4 [Mot. to Amend Infringement
Contentions], Ex. G at 3 (emphasis added).)  In its June 26, 2013 Order, the Court criticized
Samsung for this generic accusation, observing that Samsung apparently "still does not know
which kind of converter the accused products use," and rejected the generic placeholder as an
improper attempt by Samsung to "cover[] its bases in the event that the third parties reveal
different components than Samsung predicted."  (Dkt. 636 at 25.)  The Court also rejected
Samsung's attempt to add the non-specific theory that the claimed "A/D converter" alternatively
"may be incorporated into the image sensor chip" (*id.*)—i.e., the same argument that Dr. Parulski
has now advanced in his report, as discussed above.

1    signal."  In its contentions, Samsung initially accused "a NAND flash module for storage" *alone*

2    as meeting the "recording circuit" limitation, and later sought leave to add "an interface circuit"

3    to the NAND flash module as well.  In its June 26, 2013 Order, the Court rejected that request.

4    (Dkt. 636 at 23-24 ("For the '449 Patent, Samsung wants to identify components in Apple's

5    accused products that satisfy the 'recording circuit' [limitation]. . . . Samsung has not shown

6    sufficient good cause … to add components that it believes infringe the '449 Patent. . . .").)

7            In his expert report, however, Mr. Parulski now accuses the *same* "interface circuit" that

8    the Court prohibited (along with other previously unspecified "controller" components) as the

9    "recording circuit."  (Ex. B [Parulski Rep.] ¶¶ 196-98, 200, 202-06 (alleging the "NAND Flash

10   *interface* and the DDR NAND Flash provide a recording circuit" and that "[the] NAND flash

11   memory *and controller combination* is also a recording circuit as claimed") (emphasis added).)

12   These new "interface" and "controller combination" arguments (along with parallel arguments

13   made for other products) should be stricken as inconsistent with the Court's June 26, 2013 Order.

14           ***"Reproducing Circuit":***  Claim 25 further requires "a reproducing circuit which

15   reproduces a moving image signal, a sound signal in synchronous to said moving image signal,

16   and a still image signal."  In its contentions, Samsung only identified a "graphical processing

17   unit" ("GPU") as the accused "reproducing circuit"—and identified *no* component that performs

18   audio reproduction.  In its motion for leave, Samsung sought to add a ████████████████

19   ████████ to its contentions for the "reproducing circuit" limitation (claiming that it could not

20   have identified the component earlier), but the Court found that argument "unavailing" because

21   "Samsung had the information in its possession since November 2012 [when Apple produced its

22   Bills of Materials and other information for the accused products]."  (Dkt. 636 at 24.)

23           In his report, Mr. Parulski does not accuse the GPU—i.e., the only component Samsung

24   *did identify* in its contentions—as the "reproducing circuit."  In fact, he testified that he did not

25   even "study" that component.  (Ex. D [Parulski Dep.] at 149:7-150:5 ("I did not study the -- the

26   GPU. . . .").)  Rather, his analysis of the "reproducing circuit" limitation is based on two new

27   components:  (i) a "display pipeline" for moving and still images, and (ii) an "audio subsystem"

28

for audio.  (Ex. B [Parulski Rep.] ¶¶ 220-29.)  Consistent with the Court's June 26, 2013 Order, however, Mr. Parulski should not be permitted to accuse these new components as the claimed "reproducing circuit."  In fact, because Mr. Parulski admits that he has *no* opinion based on the previously accused GPU (which he did not even "study"), the Court should strike all of his opinions regarding the "reproducing circuit" limitation of claim 25.

In sum, because these new theories for the '596, '239, and '449 patents violate the Court's June 26, 2013 Order, they should be stricken (these portions are highlighted in Exhibits A-C and annotated with a "2" in the margin).

### C.   The Court Should Strike the Portions of Samsung's Expert Reports Asserting Other Arguments That Samsung Did Not Disclose in Its Contentions, and for Which Samsung Lacks "Good Cause" to Add Now.

As detailed below, Samsung's expert reports disclose many other infringement theories that Samsung never disclosed in its contentions, and for which Samsung had no "good cause" to raise for the first time in its expert reports.  These new theories also should be stricken (Exhibits A-C highlight these portions and annotate them with a "3" in the margin).

### 1.   The '757 Patent

***New "Zone Specific Storage and Interface Device" Theory:***  As noted above, the Court permitted Samsung to amend its infringement contentions for the '757 patent to address the Court's then-recent *Markman* Order—which held that a "zone specific storage and interface device" must "reside[] in an area, such as a room or similar location."  (Dkt. 636 at 9.)  In response, Samsung amended its contentions, purportedly to explain how the accused Apple products supposedly "reside in a specific location."  (Dkt. 660 [Third Amended Contentions], Ex. D at 5-7 (adding allegations that the accused Apple products "may reside in a room or similar location, or be coupled to devices residing in a room or similar location, such as a dock, including docks sold on Apple's website" or "may reside in a location under Apple's ownership and/or control, including but not limited to an Apple store, as they are being assembled, used and/or sold by Apple by and at the direction of Apple's employees").)

In his report, however, Dr. Schonfeld advances two new theories for that term that do not appear in Samsung's Third Amended Infringement Contentions:  (i) that laptop computers "such as [Apple's] MacBook Pro and MackBook [sic] Air" are types of "zone specific storage and interface devices" because they are supposedly "typically used in the home"; and (ii) that Apple's iPads, iPod touches, and iPhones are "zone specific storage and interface devices" when "confined to a residence (e.g. home or office network) [when] for example connected to a Wi-Fi zone."  (Ex. A [Schonfeld Rep.] ¶¶ 2162, 2165, 2168, 2174, 2177, 2181, 2187, 2193, 2199, 2203, 2207, 2212, 2216, 2220.)  In support of these new arguments, Dr. Schonfeld primarily relies on documents produced prior to Samsung's service of its Third Amended Infringement Contentions.  Indeed, many of these documents were produced in prior litigation between Apple and Samsung.  (*See, e.g.*, APLNDC0002596538 and APL-ITC796-0000503007.)  Because Samsung's Third Amended Infringement Contentions do not advance *any* theory that identifies a "zone specific storage and interface device" based on its location of "typical use" or where it is "confined," despite the fact that Dr. Schonfeld relies on documents that Samsung has had in its possession for months, these new arguments should be stricken from Dr. Schonfeld's report.

**New Theory That Mac OS Computers are "Zone Specific Storage and Interface Devices" When Using Photo Stream:**  In its contentions, Samsung advanced an infringement theory based on the Photo Stream function—for which it accused **only iOS devices** as "Zone Devices," and accused Mac OS X computers **exclusively** as "Central Devices."  (Dkt. 660 [Third Amended Contentions], Ex. D. at 20-22 ("Because certain Zone Devices have limited memory, Apple designed Photo Stream to allow the Central Device to be the 'master photo library.' . . . But since your Mac has more storage than your iOS device, it automatically imports every picture from your Photo Stream into your photo library so you can edit, delete, and share the ones you want.").)  But in his report, Dr. Schonfeld now alleges that Mac OS X computers **also** are "zone specific storage and interface devices" when used for the Photo Stream feature (and the Shared Photo Stream feature, as discussed further below).  (Ex. A [Schonfeld Rep.] ¶¶ 2199-

201, 2203-05, 2207-09, 2212-14, 2216-18, 2220-22.)  Given an absence of any justification or "good cause" for its late inclusion, this previously undisclosed theory should be stricken.

*New "Automatic Transfer" Theory for Home Sharing:*  In its Second Amended Infringement Contentions, Samsung had accused a specific aspect of Apple's Home Sharing feature by alleging that computers (e.g., iMac, MacBook Air, MacBook Pro, Mac mini, Mac Pro, and PC) are "zone specific storage and interface devices" when using the Home Sharing feature to either "share" or "play[]" music that is stored on a different computer.  (Ex. E [Second Amended Contentions], Ex. D at 11-12.)  In its June 26, 2013 Order, the Court allowed Samsung to amend these contentions about its Home Sharing theory to "add the exemplary operation of Home Sharing in response to the claim construction order."  (Dkt. 636 at 28.)  In other words, the Court permitted Samsung to explain how accused Apple devices using the Home Sharing feature supposedly "reside in an area, such as a room or similar location."

Despite the narrow nature of that permitted amendment, Samsung's Third Amended Infringement Contentions and Dr. Schonfeld's expert report contend that Apple infringes the '757 patent based on the "Automatic Transfer" function of the Home Sharing feature—a very different function that causes music purchased on one computer to transfer automatically to another computer.  (Ex. A [Schonfeld Rep.] ¶¶ 1937-42, 1945, 1947-48, 2076-80, 2190, 2195; Dkt. 660 [Third Amended Contentions], Ex. D at 28.)  Because the Automatic Transfer feature was *not* previously accused, has *nothing* to do with Samsung's original Home Sharing theory, and has *no* bearing on whether Apple's computers "reside in a specific location" under the Court's claim construction Order, this new infringement theory goes well beyond the scope permitted by the Court's June 26, 2013 Order.  Moreover, the Automatic Transfer feature was publicly available well before Samsung filed its counterclaims, and there is no justification why Samsung could not have identified it in its initial infringement contentions.

*New "Shared Photo Stream" Theory:*  As noted above, Samsung's contentions accuse Apple of infringing the '757 patent based on the "Photo Stream" feature.  (Dkt. 660 [Third Amended Contentions], Ex. D. at 20-22.)  In his report, however, Dr. Schonfeld alleges for the

1    first time that Apple also infringes based on the "*Shared* Photo Stream" feature—a feature that

2    Samsung does not mention in its contentions, and that involves different functions and uses

3    different software and hardware than the Photo Stream feature.  (Ex. A [Schonfeld Rep.] ¶¶

4    1949, 1953, 1956, 1958, 1964, 1966, 1969-72, 1974, 1977-79, 1982, 1985, 1987, 1989, 1993,

5    1995, 1998-2004, 2033-37, 2041-42, 2044-46, 2048, 2098, 2146-53, 2210-22.)  In fact, Dr.

6    Schonfeld's report splits his infringement analysis for the two features into two different

7    sections:  one section for Photo Stream, and a different section for Shared Photo Stream.  (*Id.* ¶¶

8    2196-2209 (Photo Stream), 2210-22 (Shared Photo Stream).)  The Shared Photo Stream feature

9    has been publicly available since September 19, 2012 and there is no justification why Samsung

10   could not have identified it in its Second Amended Infringement Contentions.  Therefore, the

11   Court should strike this new Shared Photo Stream theory from Dr. Schonfeld's report.

12        ***Dropped Theory Based on iTunes Running on a PC Computer:***  In his report, Dr.

13   Schonfeld repeatedly accuses Apple of infringing the '757 patent based on "iTunes on PC."  (*Id.*

14   ¶¶ 1824, 1832-33, 1835, 1843, 1847, 1855-56, 1858, 1862-63, 1875, 1878, 1882, 1884, 1889,

15   1890-93, 1918, 1927, 1936, 1947, 1953-54, 1959, 2027, 2035-36, 2048-49, 2058-59, 2066, 2073-

16   74, 2081, 2111, 2115, 2126, 2129, 2130, 2134, 2158, 2161-71, 2174-79, 2181-84, 2189-90,

17   2193, 2196, 2199-2201, 2203-05, 2207-10, 2212-14, 2216-18, 2220-22.)  But in response to this

18   Court's case narrowing Orders, Samsung dropped "PC with iTunes" as an accused product on

19   April 22, 2013.  (Dkt. 468 at 2-3 (no longer listing it as an accused product).)  Because Dr.

20   Schonfeld's theories based on the iTunes application running on a PC computer rely on that

21   dropped accused product, these arguments should be stricken from his report.

22        ***New "Central Storage and Interface Device" Theory:***  Claim 1 of the '757 patent

23   requires "at least one central storage and interface device, wherein audio, video, or photographic

24   data, including content information and content management information, relating to at least one

25   user, are stored in digital form."  In its contentions, Samsung identified "Apple's Mac Products,

26   including the iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, and Apple TV" as

27   accused devices supposedly meeting that limitation, and further stated that "Apple's iCloud

28

Service" and "Apple's iTunes Service . . . include[] at least a central storage and interface device."  (Dkt. 660 [Third Amended Contentions], Ex. D at 2-5.)  But in his expert report, Dr. Schonfeld offers the entirely new theories that each of the following *eight* multi-server configurations is one central storage and interface device:

- ███████████████████████ as well as the ███████████ and ██████ ██████ in Apple's Data Centers" (Ex. A [Schonfeld Rep.] ¶ 2105);

- "a specific ██████████████████ as well as the ████████████ and ██████ ██████ in an Apple Data Center" (*id.* ¶ 2107);

- "the ████████████████████████████, and ██████████████ ██████ as well as the ██████████████████ in Apple's Data Centers" (*id.* ¶ 2122);

- "a specific ██████████████████████████████████ ██████ as well as the ████████████████ in an Apple Data Center" (*id.* ¶ 2124);

- "the ██████████████ and ████████████████████ as well as the ██████████ ██████ in Apple's Data Centers" (*id.* ¶ 2140);

- "a specific ██████████████ or ████████████████ as well as the ██████ ██████████ in an Apple Data Center" (*id.* ¶ 2142);

- "the ██████████████ and ████████████████████ as well as the ██████████ ██████ in Apple's Data Centers" (*id.* ¶ 2148); and

- "a specific ██████████████ or ████████████████ as well as the ██████ ██████████████ in an Apple Data Center" (*id.* ¶ 2150).[7]

Dr. Schonfeld further offers the entirely new *alternative* theories that each one of these eight multi-server configurations is a central storage and interface device, despite the fact that none of them contains both "content information" and "content management information":[8]

---

[7] ███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████  Thus, Dr. Schonfeld's new theory identifies a plurality of devices as one or more "central storage and interface devices," in which each device only contains either content information or content management information, but not both.

- To the extent the specific ███████████████ as well as the ████████ ████ and ██████████ in an Apple Data Center can be considered more than one central storage and interface devices, the claims only require "at least one" central storage and interface device. (*id.* ¶ 2107 n.10);

- To the extent the specific ████████████████████████ as well as the ████████████████ in an Apple Data Center can be considered more than one central storage and interface devices, the claims only require "at least one" central storage and interface device. (*id.* ¶ 2124 n.11);

- To the extent the specific ██████████████ or ██████████████████ as well as the ██████████████ in an Apple Data Center can be considered more than one central storage and interface devices, the claims only require "at least one" central storage and interface device. (*id.* ¶ 2142 n.12); and

- To the extent the specific ██████████████ or ██████████████████ as well as the ██████████████████████ in an Apple Data Center can be considered more than one central storage and interface device, the claims only require "at least one" central storage and interface device.  (*id.* ¶ 2150 n.13).

Given the absence of any justification or "good cause" for their late inclusion, these eight new theories and four alternative theories—none of which appears in Samsung's contentions—should be stricken from Dr. Schonfeld's report.  In fact, in its contentions, Samsung never even suggested that a single "central storage and interface device" (i) could consist of multiple devices

---

8    The express language of claim 1 also requires that each central storage and interface device must contain both "content information" and "content management information."

that are physically separated and controlled by different parties, or (ii) need not contain ***both*** content information and content management information.[9]

## 2.   The '239 Patent

***New "Logic Board" Theory:***   In his expert report, Dr. Schonfeld contends that the "means for capturing, digitizing, and compressing at least one composite signal" and "means for decompressing said composite signal" limitations of claim 1, and the "video capture module" limitation of claim 15, are met by a "logic board" and the connections of several components to that "logic board." (Ex. A [Schonfeld Rep.] ¶¶ 1307, 1308, 1379-82, 1463.) But Samsung's contentions for those limitations do not rely upon—***or even mention***—a logic board or any of its connections. (Dkt. 660 [Third Amended Contentions], Ex. H at 3-10.) Because Samsung has known about the "logic board" and its related connections since at least November 2012 (when Apple produced its Bills of Materials and other information for the accused products), this new theory should be stricken.

Indeed, in its June 26, 2013 Order, the Court made clear that Samsung could not accuse new components for the '239 patent beyond those specifically set forth in its contentions: "By its own argument – ***one that the court will most assuredly hold it to in the future*** – Samsung alleges nothing more than the components it previously identified . . . still infringe under equivalence theories even though Judge Koh construed the terms to require different structures." (Dkt. 636 at 14 ) (emphasis added).) Yet, that is precisely what Samsung and Dr. Schonfeld are now seeking to do now by adding the "logic board" and connections of several new components to their infringement theories. This is improper.

***New Audio Components Theory:***   Dr. Schonfeld argues for the first time that the "means for capturing, digitizing, and compressing at least one composite signal" limitation of claim 1 is

---

[9]   In his report, Dr. Schonfeld also contends that the '757 patent is infringed when a user performs a "USB Sync" by connecting the accused Apple iOS devices to a computer using a physical USB cable (Ex. A [Schonfeld Rep.] ¶ 2093 n.9), an assertion that does not appear in Samsung's infringement contentions. During the meet and confer process, Samsung agreed to withdraw this new "USB Sync" theory of infringement and confirmed that Dr. Schonfeld would not attempt to testify about it.

1   further met, in part, by ███████████████████████████████████████.”  (Ex. A

2   [Schonfeld Rep.] ¶¶ 1304, 1307, 1308, 1379-82, 1463.)  But Samsung’s contentions do not

3   identify *any* audio components as satisfying that limitation—even though the Court’s construed

4   the limitation to require “***an audio capture card***,” and Samsung had notice of that construction

5   before its latest amendments.  (Dkt. 447 at 64; Dkt. 660 [Third Amended Contentions], Ex. H at

6   3 (Samsung acknowledging in July 2013 that the Court’s construction requires “an audio capture

7   card”).)  Samsung should not be allowed to accuse these new audio components or press its new

8   “audio capture card” theory for the first time in Dr. Schonfeld’s report.  (Dkt. 636 at 14.)

9        ***New “Means for Exchanging” Theory:***  Dr. Schonfeld further argues that the “means for

10  exchanging” limitation of claim 1 is met by:  (i) a collection of wires, buses, DDR, flash

11  memory, Wi-Fi processors, baseband processors, and main processors; or (ii) a “USB cord or a

12  communication network such as a Wi-Fi network, cellular network, or Ethernet network.”  (Ex.

13  A [Schonfeld Rep.] ¶¶ 60-65, 1355-61, 1362-66 (listing components).)  These theories are new;

14  in fact, Samsung did not list *any* of these components in its infringement contentions, even

15  though there is no indication that Samsung was not aware of these components previously.

16  Rather, Samsung merely alleged “[o]n information and belief” that the “means for exchanging”

17  limitation was met by a generic and non-specific “circuit for exchanging the data received by the

18  host computer’s interface with the playback unit,” and that “Apple’s software, such as Quicktime

19  and FaceTime, works in conjunction with that computer interface(s) and the circuit to allow a

20  host unit to receive data from a Mobile Remote Unit and transmit it to playback unit for playback

21  unit.”  (Dkt. 660 [Third Amended Contentions], Ex. H at 17.)  Samsung cannot seek to cure its

22  insufficient contentions by using Dr. Schonfeld’s report to accuse new, previously unidentified

23  components for the “means for exchanging” limitation that it had full access to prior to its last

24  amended set of infringement contentions.

25       ***New Accusations Against Mac Computers:***  In its infringement contentions, Samsung

26  listed Apple’s iMac, MacBook Air, MacBook Pro, Mac mini and Mac Pro computers as meeting

27  the “host unit” and “playback unit” limitations of claim 1—but did not chart any components of

28

these computers (except a cursory mention of the Mac OS QuickTime application for the "means for exchanging" portion of the "playback unit" limitation).  (*Id.* at 13-19.)[10]  Nevertheless, in his report, Dr. Schonfeld now alleges that Apple's Mac computers satisfy multiple new limitations as well, including new theories:

- that "all MacBook Pro devices" using an "Ethernet network receiver" and "Ethernet transmitter" allegedly meet both the "means for transmitting" and "means for receiving" limitations—even though Samsung's contentions (i) only accused Apple's iOS devices (i.e., iPhones, iPad, iPad minis, and iPod touches) for the "means for transmitting" limitation, and (ii) identified a baseband chip as one of the corresponding structures for the two limitations, and MacBook Pro computers indisputably do not contain that type of chip (*id.* at 3, 10-11, 17; Ex. A [Schonfeld Rep.] ¶¶ 1321, 1322, 1324, 1347, 1348 n.110);

- that the first "means for storing" limitation is supposedly met by a "hard disk drive for laptop computers (including MacBook Air and MacBook Pro devices)"—even though Samsung's contentions for that limitation did not mention any computer (Samsung only accused iOS devices), or any "hard drive for laptop computers" (Samsung only identified "a NAND flash module or RAM") (*id.* ¶¶ 1311-13, 1315, 1318 n.97; Dkt. 660 [Third Amended Contentions], Ex. H at 10); and

- that an "Ethernet modem" in Mac computers meets the "means for exchanging" limitation—even though Samsung's contentions do not even mention an Ethernet

---

[10]    In its infringement contentions, Samsung only identified iOS devices as meeting the "mobile remote unit" limitation of claim 1.  (Dkt. 660 [Third Amended Contentions], Ex. H at 3.)  In his report, Dr. Schonfeld notes that "Samsung has accused [iOS devices] as infringing mobile units" (*id.* ¶ 1301), but also repeatedly mentions Mac computers throughout his discussion of that same limitation, including the "means for transmitting" and "means for storing" limitations discussed above (*id.* ¶¶ 1301, 1303, 1311, 1312, 1320-22, n.110; *cf. id.* nn.75, 76, 84.)  Despite repeated requests to confirm whether Dr. Schonfeld is accusing Apple's computer products as "mobile remote units," Samsung has refused to respond.  (Ex. F [Correspondence].)  To the extent Dr. Schonfeld is seeking to accuse Apple's Mac computers as "mobile remote units," those portions of his report should be stricken too.

modem for that limitation (instead, they just accuse a generic and unspecified "circuit for exchanging the data received by the host computer's interface with the playback unit") (Ex. A [Schonfeld Rep.] ¶¶ 1357, 1358, 1360, 1362-65; Dkt. 660 [Third Amended Contentions], Ex. H at 17).

There is no dispute that Samsung had these computers prior to its last amended contentions and thus, there is no justification for delaying until its expert reports to introduce these allegations.  Because Samsung does not have "good cause" for Dr. Schonfeld to offer any of these new theories for the first time in his expert report, they should be stricken.

### 3. The '449 Patent

*New "Compressor" Theory:*  Claim 25 of the '449 patent requires "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals." Samsung's contentions for that limitation only identify "a video encoder . . . utiliz[ing] at least the H.264 and MPEG-4 standards for compressing moving images and the JPEG standard for compressing still images."  (Dkt. 660 [Third Amended Contentions], Ex. G at 4.)  But that "video encoder" does *not* use "the JPEG standard," as claim 25 requires; instead, Apple's accused devices contain ██████████████████████████████████████. Faced with this fatal deficiency, Mr. Parulski contends for the first time in his report that ████████████ ██████████████████████████████████████████████ ████████████████ (Ex. B [Parulski Rep.] ¶¶ 177-79, 185-87, 189, 191, 193 (accusing "█ ███████████████████████████████████████████████████████ ████████████████████████████████████ Ex. D [Parulski Dep.] at 96:5-8 ("[W]hen I've looked into it in more detail, I've found that the ████████ portion of that is what I've identified as doing the ██████████████████████ ████████████

*New "Decompressor" Argument:*  Samsung's infringement contentions also identified a "video decoder" as the claimed "decompressor which decompresses said compressed data by

using a different decompressing method according to whether said recorded compressed data is a moving image signal or a still image signal."  (Dkt. 660 [Third Amended Contentions], Ex. G at 5.)  However, in his report, Mr. Parulski now asserts that the "decompressor" limitation is met by the "███████" or similar "blocks," and in some products by combining multiple separate and distinct "blocks."  (Ex. B [Parulski Rep.] ¶¶ 208, 209, 212, 215, 217; Ex. D [Parulski Dep.] at 135:3-5.)

Samsung cannot establish "good cause" for presenting these new "compressor" and "decompressor" theories for the first time in Mr. Parulski's expert report.  To support these theories, Samsung relies on documents produced by Apple on or before April 17, 2013, but Samsung nonetheless failed to disclose these new theories in its April 30, 2013 motion to amend infringement contentions (*see* Dkt. 476, Ex. 4 [Mot. to Amend Infringement Contentions], Ex. G) or in its July 4, 2013 amended contentions, nor at any other time.  Because Samsung did not identify these theories in its contentions, and because Samsung has no "good cause" to add them now, these new infringement allegations should be stricken from Mr. Parulski's report.

### 4.     The '087 and '596 Patents

Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues in Motions to Strike, Dkt. 1056

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Portion is withdrawn with prejudice by agreement of the parties, as indicated in
the Joint Chart Identifying Remaining Issues in Motions to Strike, Dkt. 1056

Portion is withdrawn with prejudice by agreement of the parties, as
indicated in the Joint Chart Identifying Remaining Issues in Motions to
Strike, Dkt. 1056

APPLE'S MOTION TO STRIKE ISSUES RELATED TO SAMSUNG PATENTS

-23-                                    Case No. 12-cv-00630 (LHK)

ActiveUS 121404623v.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Portion is withdrawn with prejudice by agreement of the parties, as
indicated in the Joint Chart Identifying Remaining Issues in Motions to
Strike, Dkt. 1056

19   **IV.      CONCLUSION**

20          For the foregoing reasons, Apple respectfully requests that the Court strike the portions of

21   Samsung's expert reports identified above, and preclude Samsung and its experts from relying on

22   these improper new infringement theories in this case, including at trial.

23

24

Dated:  November 5, 2013                           /s Mark D. Selwyn

25                                                  Mark D. Selwyn

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on November 5, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

/s/ Mark D. Selwyn
Mark D. Selwyn