# EXHIBIT 9

**CONTAINS INFORMATION DESIGNATED AS APPLE, SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Civil Action No. 12-cv-00630-LHK |

**Expert Report of Richard Newton Taylor, Ph.D.**
**Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,577,757**

**CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

93. Claim 1 of the '757 patent uses the term "content management information" as a subset of "audio, video, or photographic data." The specification gives "playlists" as an example of "content management information." (*See, e.g.,* '757 patent, col. 9:62-65.)

94. The inventor testimony comports with the patent. (*See, e.g.,* Carter Dep., 69:12-13 ("[content management information] is metadata and customer preferences like playlists."); *id.*, 71:7 ("And the content management information is the – is the associated metadata, you know, the name of the album, the name of the artist, the playlist that its associated to, et cetera. And that's required for the user interface capability, is what that part is.").

E. **"Audio, video, or photographic data . . . relating to at least one user"**

95. Claim 1 of the '757 patent uses the term "audio, video, or photographic data . . . relating to at least one user." Samsung appears to construe "audio, video, or photographic data . . . relating to a least one user" in a manner other than plain meaning so as to require both that the data relate to a *particular* user and that the system have a "means of identifying which files are related to which users." (*See* Samsung's Validity Interrogatory Response at 161; *id.* at 164.) I do not see anything in the patent or its file history that would suggest the plain meaning should be narrowed in this manner.

96. The phrase "at least one" means a system involving only one user meets the claim limitation. Indeed, the patent describes the operation of a single user system: "[I]t is desirous to have *a consumer* digitally encode their entire audio, video, and photographic collections to be stored on multimedia storage devices, and have the entire collection synchronized automatically by having the devices communicate to and from each other so that the content is available in multiple locations or zones that *the consumer* may go." ('757 patent, col. 3:1-7 (emphasis added).) In this system, the audio, video, and photographic collections relate to the consumer because the consumer encoded his or her collections and stored them on the devices in the system.

97. No "means of identifying" files are needed. Neither the patent nor the specification discloses any means for identifying which files are related to which users. The

- 33 -

**CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

word "identify" only appears once in the specification, and that is in relation to a prior art device identifying desirable programming. ('757 patent, col. 2:36.) Similarly, the plain meaning of "at least one user" is not "one particular user." Although there are two references to a "particular user" with respect to the prior art, and one reference to information "used by a particular user" in the flowchart related to the method claims that were dropped during the prosecution, the term simply does not appear in the claim.

## IX.     Samsung's Claimed Priority Date

98.     Samsung is alleging that the conception date for the '757 patent is March 1, 2001. (*See* Samsung's Further Supplemental Responses to Apple's Second, Third, Fourth, Eighth, and Eleventh Sets of Interrogatories at 9-10.)

## X.     Prior Art Anticipates the Asserted Claims of the '757 Patent

99.     Although I have cited particular portions of the references discussed, these citations are intended to assist the reader in understanding the various bases and prior art teachings used in my conclusions. They are not intended to be an exhaustive recitation of every portion of these references in which these teachings may be found. A person of ordinary skill in the art would understand that the citations are merely exemplary, and that similar teachings may be found at other pages or places in the references discussed, as well as in other prior art references. Additional detail is provided in the claim charts attached hereto as exhibits C-E.

### A.     Claims 1, 14, and 15 of the '757 patent are anticipated by U.S. Patent No. 7,587,446 to Onyon et al.

#### 1.     Description of U.S. Patent No. 7,587,446

100.    U.S. Patent No. 7,587,446 to Onyon et al. (the '446 patent) was filed on November 10, 2000, and issued on September 8, 2009. The '446 patent is entitled "Acquisition and Synchronization of Digital Media to a Personal Information Space." The '446 patent expressly incorporates by reference U.S. Patent No. 6,671,757 to Multer et al. ("the Multer patent"), which was filed on January 26, 2000, and issued December 30, 2003. The '757 (Multer) patent is titled "Data Transfer and Synchronization System." Both the '446 and Multer

**CONTAINS INFORMATION DESIGNATED AS APPLE, SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

devices. However, the '446 patent and incorporated Multer patent teach multiple embodiments of a system meeting this limitation. Samsung's argument is counter to both the alternate embodiments and the fact that the various devices in the user's personal information space can serve as a central device.

>   (g)  "whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user" [Claim 1]

124. The '446 patent discloses whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user. The synchronization system disclosed in the '446 patent and incorporated Multer patent are capable of the complete two-way synchronization. In fact, the '446 patent distinguishes between "synchroniz[ing]" of data using differencing transactions and unidirectional transfer. ('446 patent, col. 9:51-55.) The patent describes fixed devices that reside in a room or similar location, including "a personal office PC 602," a user's office PC 606," and "a home personal computer 606," which are synchronized so that a user situated in any of those zones (e.g., in a user's office or home) can access audio, video, or photographic information related to that user. (*See* Multer patent, col. 7:61-8:16, Fig. 7.)

125. Samsung contends that the '446 patent fails to disclose the limitation because it fails to disclose a "zone" or "audio, video, or photographic information." (Samsung Validity Interrogatory Response, at 171.) Both arguments have been addressed above. Samsung's argument that "audio, video, or photographic information" is distinct from its components "content information" and "content management information" is not supported by the claim language. Regardless, a person of skill in the art would understand an MP3 file to be audio information. ('446 patent, col. 5:11-26 (describing the components of MP3 files transferred by the disclosed system).)

>   (h)  "The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless device via LAN." [Claim 14]

**CONTAINS INFORMATION DESIGNATED AS APPLE,
SAMSUNG, AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

      (g)    "whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user"  [Claim 1]

143. The '442 publication discloses whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user. The '442 publication describes a system that "would allow the user to have access to any media asset stored on any of her/his media player devices." ('442 Pub., ¶ 2). To provide this ability, the '442 publication describes the "synchronization and replication of a user's licensed assets with each of the user's media player devices." ('442 Pub., ¶ 9; *see also* claims 3 and 10.) A person of skill in the art would know that the "synchronization and replication of a user's licensed assets" described in the publication would involve requesting transfer of all assets identified as being on the other media player devices or on the server computer. The user would be situated in the zone to access their media player device, such as their cable set-top box or desktop personal computer. ('442 pub., ¶ 11.)

144. Further, Samsung appears to construe this term to cover embodiments where the content is not stored on the zone-specific device residing in the user's zone, but instead the "audio, video, or photographic information" can be accessed from the central storage and interface device, or possibly another zone specific storage and interface device. (Samsung's Third Amended Patent L.R. 3-1(A)-(D) Disclosures for U.S. Patent No. 7,577,757 at 24-28.) To the degree the claim is construed to cover such a case, that mode of access is disclosed by the '442 publication. ('442 Pub., ¶ 9; *see also* claims 4, 11, and 16.)

      (h)    "The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless device via LAN." [Claim 14]

145. The '442 publication discloses the central storage and interface device disposed to be coupled to a wireless mobile device via LAN. The publication provides examples of media player devices including a laptop computer, a portable media player device, and a wireless electronic device. ('442 pub., ¶ 11.) The media player devices include a communication device

- 55 -