# EXHIBIT 10

## REDACTED VERSION
## OF DOCUMENT SOUGHT TO BE
## SEALED

**CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                Defendants. | Civil Action No. 12-cv-00630-LHK |

**Expert Report of Richard Newton Taylor, Ph.D.
Regarding Noninfringement of the Asserted Claims of U.S. Patent No. 7,577,757**

**CONTAINS APPLE AND THIRD PARTY**
**HIGHLY CONFIDENTIAL INFORMATION**

elements of the claims of the '757 patent, other than "zone specific storage and interface device," should receive their plain meaning to one of ordinary skill in the art.

32.     However, based on the Corrected Schonfeld Opening Report, it is apparent that Dr. Schonfeld and I have different understandings of the plain meaning of certain claim elements.  In those instances where I understand there to be a difference, I have endeavored to set forth my understanding of Dr. Schonfeld's construction in this report.

**A.     "Updated"**

33.     Claim 1 of the '757 patent uses the term "updated in relation to" with respect to "audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and interface device and the central storage and interface device."

34.     Dr. Schonfeld defines the term "updated" as the "automatic change used for synchronization of devices such that a change in one device reflects a change in another device, whereby the change includes both 'content information' and 'content management information' of audio, video, or photographic data."  (Corrected Schonfeld Opening Report at ¶ 2155.)

35.     I agree that the term "updated" in Claim 1 requires that ***both*** "content information" and "content management information," which together comprise "audio, video, or photographic information," be updated on the zone specific storage and interface device and the central storage and interface device.  That is, a system that "updates" content information *only* or a system that "updates" content management information *only* would not infringe the '757 patent.

36.     The '757 patent emphasizes throughout that both content information and content management information must be "updated" in the claimed system.  For example, the Background of the Invention claims as a drawback to existing multimedia devices that "the listener/viewer must individually purchase the cassette tapes, CDs, videotapes or DVDs" and "transport a large number of cassettes, CDs, videotapes or DVDs to provide a range of musical and video selections."  (1:36-40.)  The Background of the Invention states that, in light of these purported drawbacks, "it is desirous to have a consumer digitally encode ***their entire audio, video, and photographic collections*** to be stored on multimedia storage devices, and have ***the***

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

*entire collection* synchronized automatically by having the devices communicate to and from each other *so that the content is available in multiple locations or zones that the consumer may go.*"  (3:1-7 (emphasis added).)  The Background of the Invention also purports to distinguish certain prior art patents from the claimed invention on the basis that "substantially identical information related to a particular user are not synchronized and stored in all the zones."  (1:62-64.)

37.     The Summary of the Invention states that in the "central storage and interface device" of the "instant invention," "audio, video, and photographic information includ[es] content information and content management information," which "results in the at least one user can be situated at anyone of the zones and access substantially identical audio, video, and photographic information related to the at least one user."  (4:19-35.)

38.     Likewise, the embodiments described in the specification consistently describe both the content information and content management information being updated.  (*See, e.g.*, '757 Patent Claim 1 ("[W]herein audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and interface device and the central storage and interface device, are updated in relation to the zone specific storage and interface devices and the central storage and interface device, whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user."); 9:2-4 ("As can be appreciated, synchronization includes having devices in different zones store substantially identical content of entered music and playlists by a specific user."); 9:17-23 ("The AudioReQuest Pro and ARQ Multizone will have removable hard drives. This is desirous since if any one unit fails, a hard drive from another unit can be inserted and automatically work since they are synchronized such that the content of the hard drives are substantially the same. When an old hard drive is replaced with a new one, it will automatically synchronize and get the entire collection from the ARQ Pro."); 9:25-27 ("As can be appreciated, this system provides complete backup redundancy for the entire system protecting the user's multimedia investment."); 9:62-65 ("The system allows multiple devices to synchronize its internal collection with each other, so that the end result is that all the devices have the same

**CONTAINS APPLE AND THIRD PARTY**
**HIGHLY CONFIDENTIAL INFORMATION**

content and content management means (playlists, settings, etc.).").) Because the claims and specification describe a system where the user's devices are synchronized and at least substantially the same, the content information ***and*** content management information on each of the user's devices must update in relation to all of the user's other devices.

39.   Mr. Piech, one of the named inventors, confirmed that claim 1 relates to the synchronization of both multimedia data and multimedia metadata across a user's devices.  (*See* Piech Dep., 84:25-85:20 ("Q… So essentially, you're not sure exactly how that breaks down into the content information versus content management information, but somehow it's including the content like the photos, the videos and the audio, and it's what you're describing as the metadata, somehow those are in those two terms; is that right? . . .  THE DEPONENT:· I -- I believe what I said is, I don't know which of those words refers to which parts of it but this claim is – the spirit of it is trying to capture the fact that the product could store audios, video, photographs, as well as any data that would help, you know, the interface or the accessibility, search-ability of that – of that content."); 86:14-17 ("Q.  And is synchronizing both what you've been describing as the audio, video, photograph itself [and] the metadata or just one or the other?  THE DEPONENT: All --").)

40.   The file history of the UK counterpart patent application to the '757 patent offers further confirmation that the claimed system requires synchronization of both content information and content management information such that the same content is on all storage devices.  During the prosecution of the UK patent application, the named inventors confirmed that "[t]he essence of the invention is to synchronise the devices which reside in the zones, so that whenever any device in any one of the zones is accessed, the user can be provided with "substantially identical" information in the form of audio, video and/or photographic information, and thus the user of the system can obtain exactly the same experience, regardless of which zone specific device is utilized."  (Response to Examination Report of 4th August, 2005 [APL630DEF-WH-A0000009371] at 2.)

**B.**     **"Content Information" and "Content Management Information"**

41.   Claim 1 of the '757 patent uses the term "content information" as a subset of

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

the alleged zone specific storage and interface devices ("All-Servers Architecture").  (Corrected

Schonfeld Opening Report at ¶ 2101.)  In addition to the general arguments discussed above

(*see supra ¶¶ 133-156*), iTunes in the Cloud does not infringe claim 1 of the '757 patent for at

least the additional reasons discussed below.

### 1.    Conduit Architecture

158.    In the Conduit Architecture, Dr. Schonfeld contends that a Mac OS X computer

acts as the central storage and interface device, the user's remaining Mac OS X computers,

iTunes on PC, and iOS devices act as the zone specific storage and interface devices, and

iCloud acts as a "conduit" between them.  (Corrected Schonfeld Opening Report at ¶ 2111,

2168.)  There are four reasons that iTunes in the Cloud does not infringe claim 1 in this

architecture: 1) there is no synchronization of content information and content management

information, 2) the accused zone specific storage and interface devices are incapable of storing

or interfacing with information stored in the accused central storage and interface device, 3) the

accused central storage and interface device fails to meet the requirements of the claim, and 4)

the user cannot be situated in any one of the zones and access the audio, video, or photographic

information related to the at least one user.  In addition, as stated in Section IX.A.1above, Dr.

Schonfeld has not identified any users who have put the system into use in the manner that he

alleges would infringe.

### (a)    No Synchronization

159.    As described in my opening report, synchronization (such as required by the

"synchronizing" and "updated in relation to" language of claim 1) requires both comparing the

data in different locations at particular points in time, and addressing changes that occurred in

the data between those synchronization points in order to reestablish consistency.  Section VI.A.

Further describing the requirements of the claim, Dr. Schonfeld states that the "updated in

relation to" claim language requires a change to both "content information" and "content

management information," (Corrected Schonfeld Opening Report at ¶ 2155), with which I

agree.  Dr. Schonfeld also notes in his report that the synchronization must be two-way between

the central storage and interface device and the zone specific storage and interface device (*Id.* at

**CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION**

¶ 2099), and that the media files must be on each device.  (*See id.* at ¶ 1796; Response to Office Action dated 12/14/2005 [APL630DEF-WH-A0000009763] ("Applicants' claimed invention of course requires that any new multimedia content added to one of the storage and interface devices be accessible by any of the other storage and interface devices."); Response to Examination Report dated 12/5/05 [APL630DEF-WH-A0000009372] ("In contrast, applicants' claimed invention updates multiple storage and interface devices so that the same files reside on each of the said storage and interface devices.").)  In addition, the synchronization required by claim 1 requires more than a manual selection of media assets to be exchanged.  Dr. Schonfeld agrees.  (Corrected Schonfeld Opening Report at ¶ 2273 ("[M]anual downloading is the antithesis of such updates (or automatic changes), as manual downloading results in data being merely potentially accessible *only after the user takes additional manual steps of dragging and dropping or clicking to initiate a download.*") (emphasis in original).).

160.    However, as described above in Section VIII.B.1, automatic downloads in iTunes in the Cloud is no more than a manual selection of a song to be distributed.  The user manually selects a specific song for purchase, after which it may be made available for download on other devices.

161.    None of the hallmarks of synchronization is present in automatic download.  There is no attempt to compare the media on the two devices such that they can be made to be consistent (i.e., contain the same set of media or metadata).  That is to say, the claim language requiring that the devices are "synchroniz[ed]" and "updated in relation to" the other device is not met.  Neither device has any knowledge as to the content of the other device.  Synchronization requires more than just selecting one file to copy to two locations.

162.    In the end, the content information and content management information is never made consistent between the accused central storage and interface device and the accused zone specific storage and interface devices.    For example, music purchased prior to enabling automatic downloads on each device, as well as any music acquired by any means aside from purchasing it on the iTunes Store (e.g., ripping music from a CD) will never be reflected on the other device via the automatic downloads feature of iTunes in the Cloud.  Similarly, any

**CONTAINS APPLE AND THIRD PARTY**
**HIGHLY CONFIDENTIAL INFORMATION**

changes to metadata on either device will also not be reflected on the other.

(b)     No Access To The Information In The Central Storage And
Interface Device

163.    Claim 1 requires that the zone specific storage and interface device be "capable of storing or interfacing with information stored in the central storage and interface device."

164.    Dr. Schonfeld contends that this claim language is met in this architecture because the accused zone specific storage and interface devices (i.e., the "user's remaining Mac OS X computers, iTunes on PC, and iOS devices") "can transmit data for storage" and "can receive data for storage" from the central storage and interface device (a Mac OS X computer). (Corrected Schonfeld Opening Report at ¶ 2169.)

165.    As explained above in Section VIII.B.1, this is inaccurate.  No content information or content management information is ever sent from any one of the alleged zone specific storage and interface devices to any of the alleged central storage and interface devices (or vice-versa).  The device that purchased the song communicates some information about that purchase to one or more of the various iTunes in the Cloud servers.  The content information – the encoded song data – is then downloaded by the purchasing device from an ███████.  The purported "zone specific storage and interface devices" may also ultimately download the encoded song content from some ███████.  As such, no content information is ever communicated from one device to another, and therefore the alleged zone specific storage and interface device does not "interface" with the alleged central storage and interface device.  Even if the devices wanted to communicate with each other, they could not – with respect to iTunes in the Cloud, the devices do not know what other devices exist and are configured to receive automatic downloads.  In short, the alleged zone specific storage and interface devices are not capable of storing or interfacing with information stored in the alleged central storage and interface device.

(c)     No Central Storage and Interface Device At All

166.    Dr. Schonfeld and I agree that Claim 1 requires that the "central storage and interface device must meet two requirements (1) interface with at least one zone device and (2)

**CONTAINS APPLE AND THIRD PARTY HIGHLY CONFIDENTIAL INFORMATION**

store audio, video, or photographic data, including content information and content management information, relating to at least one user, . . . in digital form." (Corrected Schonfeld Opening Report at ¶ 2098.)

167.    In this accused architecture, Dr. Schonfeld contends that Mac OS X computer acts as the central storage and interface device, but, as discussed above, it does not interface with any of the accused zone specific storage and interface devices.  The devices are not aware of the existence of each other, and no content information or content management information is ever sent from one device to another.  There can be no interfacing between devices that do not connect to each other, exchange data with each other, or even know of the other's existence.

168.    Further, the characterization of iCloud as a "conduit" is nonsensical.  As an initial matter, Dr. Schonfeld does not explain what he means by "iCloud" in this instance.  iCloud is not a device or physical thing.  It is a marketing term used to refer to many disparate services, each with its own deployments and architectures.  (*See* Apple Marketing Document [MAL-000071609] at 59 (discussing the cloud as a term to describe various services).)  In any event, a conduit, as understood by one of skill in the art, is a pathway for passage of something between two or more places / things.  For example, "conduit" is defined as "someone or something that is used as a way of sending something (such as information or money) from one place or person to another." (Merriam-Webster, Conduit, http://www.merriam-webster.com/dictionary/conduit.).  That is to say, there could only be a conduit between the accused central storage and interface device and any accused zone specific storage and interface device if those devices could exchange data between them.  As discussed above, the accused devices do not send anything to each other (and, in fact, they are unaware of each other).  Rather, any content information or content management information received by either device is transmitted by some separate source, and so there is no conduit in this architecture.

(d)    A User in a Zone Cannot Access the Audio, Video, or Photographic Information

169.    The language of claim 1 requires that "at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one

**CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION**

user." As discussed above, the purpose of iTunes in the Cloud is not to synchronize the content information and content management information between the various devices; that information may differ. The Apple documents that Dr. Schonfeld cites do not refer to automatic downloads as syncing; in fact, the citations on which Dr. Schonfeld relies in iTunes in the Cloud section that mention synchronization are referring to unaccused iCloud services (e.g., Documents in the Cloud or apps like Contacts), iCloud generally, or iTunes USB/Wi-Fi Sync; there is no mention of automatic downloads in iTunes in the Cloud. (Corrected Schonfeld Opening Report at ¶¶1838-39, 1864.)

170. When mentioning iTunes in the Cloud, the Apple User Guides describe it as the ability to "[d]ownload previous iTunes music and TV show purchases to iPhone for free, anytime." (See, e.g., iPhone User Guide For iOS 6.1 Software at 15 (APL630DEF-WH0001758342); iPhone User Guide for iOS 6.0 Software at 15 (APL630DEF-WH0001557966); iPhone User Guide for iOS 5.1 Software at 16-17 (APL630DEF-WH0000030565); iPhone User Guide for iOS 5.0 Software at 16-17 (APL630DEF-0000061792); iPad User Guide For iOS 6.1 Software at 15-16 (APL630DEF-WH0001759242); iPad User Guide for iOS 5.1 Software at 19-20 (APL630DEF-WH0000026337); iPod touch User Guide For iOS 6.1 Software at 14-15 (APL630DEF-WH0001757964); iPod touch User Guide For iOS 6.0 Software at 14-15 (SAMNDCA630-07882417); and, iPod touch User Guide For iOS 5.1 Software at 16-17 (APL630DEF-WH0000031921).) Dr. Schonfeld acknowledges that manual downloading is not "updat[ing]" in the context of the '757 patent. (*See* Corrected Schonfeld Opening Report at ¶ 2273.)

171. As discussed above in Section VIII.B.1, automatic downloads at most will allow a manually selected song to be downloaded to multiple devices. None of the other content information or content management information on the device, either from prior purchases or songs acquired through another mechanism than purchase from the iTunes Store, will be made available on the other devices via the automatic download feature of iTunes in the Cloud. In the end, the various devices can have different content information and content management information on them, even after the purported synchronization of automatic downloads in

iTunes in the Cloud.  Therefore, a user cannot be "situated in any one of the zones and access the audio, video, or photographic information related to the at least one user."

### 2. Specific Servers Architecture

172.    In his Specific Servers Architecture, Dr. Schonfeld characterizes "a specific ███████████████████ as well as the ███████████ and ████████████ in an Apple Data Center" as the central storage and interface device (Corrected Schonfeld Opening Report at ¶ 2105), and the Mac OS X computers, iTunes on PC, and iOS devices as the zone specific storage and interface devices.  (Corrected Schonfeld Opening Report at ¶ 2168.)

173.    There are at least three reasons that iTunes in the Cloud does not infringe claim 1 in this architecture: 1) there is no central storage and interface device, 2) there is no synchronization of content information and content management information, and 3) the user cannot be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.  In addition, as stated in Section IX.A.1 above, Dr. Schonfeld has not identified any users who have put the system into use in the manner that he alleges would infringe.

### (a)    No Central Storage and Interface Device

174.    For the reasons discussed above Section VIII.B.1, the accused products do not infringe claim 1 as described in this architecture because "a specific ████████████ ██████ as well as the ███████████ and ████████████ in an Apple Data Center" is not a "central storage and interface device."

### (b)    No Synchronization

175.    As with the Conduit Architecture described above, the content information and content management information will not be made consistent between the accused central storage and interface device and the accused zone specific storage and interface devices, as required to satisfy the "synchroniz[ed]" or "updated in relation to" language of claim 1.

176.    The accused central storage and interface device – a specific ███████████ ██████ as well as the ███████████ and ████████████ in an Apple Data Center – will contain multimedia data (e.g., song data) for other users, and, moreover, a specific ██████████ would

- 58 -

**CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION**

not contain all of the media information for the particular user.  Further, the accused zone specific storage and interface device would contain media that is not reflected on any of those servers that are accused of being the central storage and interface device.  For example, any songs not purchased through iTunes, plus any changes to metadata, would not be reflected on the servers.

177.    In the end, the content information and content management information on the accused central storage and interface device is not made consistent with that on the accused zone specific storage and interface devices.

> (c)    A User in a Zone Cannot Access the Audio, Video, or Photographic Information

178.    As described in detail above in the context of the Conduit Architecture, a user will not have access to the same audio, video, or photographic information in each of the zones, as required by claim 1.

### 3.    All Servers Architecture

179.    The remaining iTunes in the Cloud architecture that Dr. Schonfeld accuses as infringing claim 1 is essentially the same as his Specific Servers Architecture, but it includes even more servers as combining to be the "central storage and interface device."  In this accused architecture, the "central storage and interface device" comprises all the "█████████████ █████ as well as the █████████ and ██████████ in Apple's Data Centers."  (Corrected Schonfeld Opening Report at ¶ 2106.)

180.    This architecture does not infringe claim 1 of the '757 patent for the same reasons as described above for the Specific Servers Architecture. In addition, as stated in Section IX.A.1 above, Dr. Schonfeld has not identified any users who have put the system into use in the manner that he alleges would infringe

### D.    iTunes Match Does Not Infringe Claim 1 of the '757 Patent

181.    The Schonfeld Opening Report describes three different accused configurations of iTunes Match: 1) iCloud as a "conduit" between an Apple computer as the alleged central storage and interface device and other Apple computers or devices as the alleged zone specific

**CONTAINS APPLE AND THIRD PARTY**
**HIGHLY CONFIDENTIAL INFORMATION**

1   storage and interface devices ("Conduit Architecture"), 2) a specific ███████

2   ██████████████████, or █████████████ as well as a ██████████████ in an

3   Apple Data Center as the alleged central storage and interface device and Apple computers or

4   devices as the alleged zone specific storage and interface devices ("Specific Servers

5   Architecture"), and 3) the ████████████████████████████, and ███████████

6   █████████ as well as the ██████████████ in Apple's Data Centers as the alleged central

7   storage and interface device and Apple computers or devices as the alleged zone specific

8   storage and interface devices ("All-Servers Architecture").  (Corrected Schonfeld Opening

9   Report at ¶ 2172.)  As stated in Section IX.A.1, Dr. Schonfeld has not identified any users who

10  have put the system into use in the manner that he alleges would infringe.  In addition to the

11  general arguments discussed above in Section IX.B, iTunes Match does not infringe claim 1 of

12  the '757 patent for at least the additional reasons discussed below.

13  **1.     Conduit Architecture**

14  182.     In his Conduit Architecture, Dr. Schonfeld contends that a Mac OS X computer

15  acts as the central storage and interface device, and the user's remaining Mac OS X computers,

16  iTunes on PC, and iOS devices act as the zone specific storage and interface devices, with

17  iCloud acting as a "conduit" between them.  (Corrected Schonfeld Opening Report at ¶¶ 2126,

18  2180, 2181.)  There are three reasons that iTunes Match does not infringe claim 1 in this

19  architecture: 1) there is no synchronization of content information and content management

20  information, 2) the accused central storage and interface device fails to meet the requirements of

21  the claim, and 3) the user cannot be situated in any one of the zones and access the audio, video,

22  or photographic information related to the at least one user.

23  (a)     No Synchronization

24  183.     As described above in paragraph 159, the "synchronizing" and "updated in

25  relation to" language of claim 1 requires that the "central storage and interface device" and the

26  "zone specific storage and interface device" must be made consistent automatically and in both

27  directions such that the same content information and content management information resides

28  on each device.

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

184.    Dr. Schonfeld admits that the addition of new music in iTunes Match is not synchronization.  (Corrected Schonfeld Opening Report ¶ 2114, 2115.)  To meet claim 1's synchronization requirements (from, for example, the "synchronizing" and "updated in relation to" language), Dr. Schonfeld accuses the distribution of playlists and metadata, as well as the ability to delete songs.  (Corrected Schonfeld Opening Report at ¶ 2183.)

185.    As mentioned above, Dr. Schonfeld and I agree that the "updated in relation to" language requires an update to both the "content information" and the "content management information."  As also discussed above in Section VII.B, "content information" requires encoded media information (such as an encoded song).  According to Dr. Schonfeld, deleting encoded media information is sufficient to show the synchronization of "content information."  The argument is flawed for three reasons.

186.    First, deleting does not cause any encoded media information to be exchanged.  In no part of the delete operation, even when propagated to other devices, is encoded media information exchanged in any way – this cannot satisfy the synchronization requirements of claim 1.

187.    Second, the delete is a manual step – the user is manually selecting a particular song for deletion, and the system may propagate that specific delete request to other devices.  Dr. Schonfeld has acknowledged that manual steps are not covered by the '757 patent, and I agree.  (Corrected Schonfeld Opening Report at ¶¶ 1819, 2273.)

188.    Third, a delete does not actually delete the encoded media information from the other devices.  As described above in section VIII.B.2, deleting a song from one device does not guarantee that the song will be deleted from the other devices.  For example, as shown in the video, deleting a song from an iOS device will not cause that song to be deleted from any other device.  Likewise, deleting a song from a Mac OS X device will not delete the song from other Mac OS X devices.

189.    In the end, the content information and content management information is never automatically made consistent between the accused central storage device and interface and the accused zone specific storage and interface devices.

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

(b)     No Central Storage and Interface Device At All

190.     As discussed above, the accused central storage and interface devices do not interface directly with any of the accused zone specific storage and interface devices.  In fact, the devices are unaware of the existence each other, and content information and content management information are never sent from one device to another.

191.     Further, as discussed above for iTunes in the Cloud, the classification of iCloud as a "conduit" is nonsensical and incorrect.

(c)     A User in a Zone Cannot Access the Audio, Video, or Photographic Information

192.     Deletion alone cannot enable that "at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user."  The presence of audio, video, or photographic information is required, and Dr. Schonfeld accuses no part of iTunes Match as synchronizing audio, video, or photographic information to the accused zone specific storage and interface device.  As discussed above, the various devices will have different "content information and content management information" on them, except when the individual songs are manually downloaded on each device independently.  Dr. Schonfeld agrees that manual download does not correspond to automatic changes.  (*See* Corrected Schonfeld Opening Report at ¶ 2273.)

## 2.     Specific Servers Architecture

193.     In his Specific Servers Architecture, Dr. Schonfeld characterizes "a specific ██████████████████████████████████, or ███████████████████ as well as the ████ █████████████ in an Apple Data Center" as the central storage and interface device, (Corrected Schonfeld Opening Report at ¶ 2124), and Mac OS X computers, iTunes on PC, and iOS devices as zone specific storage and interface devices.  (Corrected Schonfeld Opening Report at ¶ 2177).

194.     There are at least three reasons that iTunes Match does not infringe claim 1 in this architecture: 1) there is no central storage and interface device, 2) there is no synchronization of content information and content management information, and 3) the user cannot be situated in

**CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION**

1  any one of the zones and access the audio, video, or photographic information related to the at

2  least one user.

3  (a)  No Central Storage and Interface Device

4  195.  The accused products do not infringe claim 1 as described in this architecture

5  because there is no "central storage and interface device."  As discussed above, it is understood

6  by a person of skill in the art that a "central storage and interface device" is a single piece of

7  equipment.

8  196.  Therefore, for the same reasons as discussed above for iTunes in the Cloud, there

9  is no "central storage and interface device" for iTunes Match because "a specific ███████

10  ██████████████████████████, or ██████████████ as well as the ████████

11  ████ in an Apple Data Center" is not a "central storage and interface device."

12  (b)  No Synchronization

13  197.  As with the Conduit Architecture, the content information and content

14  management information will not be made consistent between the accused central storage and

15  interface device and the accused zone specific storage and interface devices, as required to

16  satisfy the  "synchroniz[ed]" or "updated in relation to" language of claim 1.

17  198.  The accused central storage and interface device – a specific █████████████

18  ██████████████, or ██████████████ as well as the ██████████████ in an

19  Apple Data Center – will contain media information for other users, and, moreover, a specific

20  ████████████████████████████ would not contain all the media information for

21  the particular user (e.g., aside from the fact that a user's music would be spread across multiple

22  servers, any specific server could only contain either purchased/matched songs, or non-matched

23  songs).  Further, Dr. Schonfeld is relying on the deletion of songs to provide the

24  synchronization of content information.  In addition to the flaws of deletion that were discussed

25  above for his Conduit Architecture, deleting a matched or purchased song will not delete that

26  song from, for example, the ███████████.

27  199.  In the end, the content information and content management information on the

28  accused central storage and interface device are not made consistent with that on the accused

**CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION**

zone specific storage and interface devices.

> (c)    A User in a Zone Cannot Access the Audio, Video, or
>        Photographic Information

200.    As described in detail above in the context of the Conduit Architecture, a user will
not have access to the same audio, video, or photographic information in each of the zones, as
required by claim 1.

### 3.    All Servers Architecture

201.    The remaining iTunes Match architecture that Dr. Schonfeld accuses as infringing
claim 1 is essentially the same as his Specific Servers Architecture, but it includes even more
third-party servers combining to be the "central storage and interface device."  In this accused
architecture, the "central storage and interface device" comprises all the "█████████████████
████████████████████, and ████████████████ as well as the ████████████████ in
Apple's Data Centers."  (Corrected Schonfeld Opening Report at ¶ 2122.)  This architecture
does not infringe claim 1 of the '757 patent for the same reasons as described above for the
Specific Servers Architecture.

### E.    Photo Stream Does Not Infringe Claim 1 of the '757 Patent

202.    The Schonfeld Opening Report describes three different accused configurations of
Photo Stream: 1) iCloud as a "conduit" between an Apple computer as the alleged central
storage and interface device and other Apple computers or devices as the alleged zone specific
storage and interface devices ("Conduit Architecture"), 2) a specific ████████████████ or
████████████████ as well as the ████████████████ in an Apple Data Center as the
alleged central storage and interface device and Apple computers or devices as the alleged zone
specific storage and interface devices ("Specific Servers Architecture"), and 3) the ████████
████████ and ████████████████ as well as the ████████████████ in Apple's Data
Centers as the alleged central storage and interface device and Apple computers or devices as
the alleged zone specific storage and interface devices ("All-Servers Architecture").  (Corrected
Schonfeld Opening Report at ¶ 2139, 2199, 2203, 2207.)  As stated in Section IX.A.1, Dr.
Schonfeld has not identified any users who have put the system into use in the manner that he

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

alleges would infringe.  In addition to the general arguments discussed above in Section IX.B, Photo Stream and Shared Streams do not infringe claim 1 for at least the additional reasons discussed below.

### 1.    Conduit Architecture

203.    In his Conduit Architecture, Dr. Schonfeld contends that a Mac OS X computer acts as the central storage and interface device, the user's remaining Mac OS X computers, iTunes on PC, and iOS devices act as the zone specific storage and interface devices, and iCloud acts as a "conduit" between them.  (Corrected Schonfeld Opening Report at ¶ 2144.) There are four reasons that Photo Stream does not infringe claim 1 in this architecture: 1) there is no synchronization of content information and content management information, 2) the accused zone specific storage and interface devices are incapable of storing or interfacing with information stored in the accused central storage and interface device, 3) the accused central storage and interface device fails to meet the requirements of the claim, and 4) the user cannot be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.

(a)    No Synchronization

204.    As described above in paragraph 159, the "synchronizing" and "updated in relation to" language of claim 1 requires that the "central storage and interface device" and the "zone specific storage and interface device" must be made consistent automatically and in both directions such that the same content information and content management information resides on each device.

205.    However, as described above, Shared Streams are no more than a manual selection of a photo to be distributed.  The user manually puts a photo into a Shared Stream, after which it may be made available for download on other devices.  Photo Stream is similar – each photo taken when Photo Stream is enabled is a request to push an indication that a photo is available for download on other devices.

206.    None of the hallmarks of synchronization is present in Photo Stream or Shared Streams. There is no attempt to compare the media on the two devices such that they can be

**CONTAINS APPLE AND THIRD PARTY**
**HIGHLY CONFIDENTIAL INFORMATION**

made to be consistent (i.e., contain the same set of media). That is to say, the claim language requiring that the devices are "synchroniz[ed]" and "updated in relation to" the other device is not met. Neither device has any knowledge as to the content of the other device. Synchronization requires more than just selecting one photo to copy to other locations.

207.    In the end, the content information and content management information is never made consistent between the accused central storage and interface device and the accused zone specific storage and interface devices. In fact, the very use of the term "stream" in photo stream and shared stream has aspects of temporality to it – a stream is transient, it is not intended to represent a consistent, persistent storage. For example, for shared streams, only the manually selected photos will be made available for download on other devices; otherwise, the media on the devices is completely different. Likewise for Photo Stream, photos taken on a device before enabling Photo Stream will not be made available on other devices. Further, as discussed above, different devices will contain different versions and different number of copies of the photos.

(b)    No Access To The Information In The Central Storage And Interface Device

208.    Claim 1 requires that the zone specific storage and interface device be "capable of storing or interfacing with information stored in the central storage and interface device."

209.    Dr. Schonfeld alleges that this claim language is met in this architecture because the accused zone specific storage and interface devices (i.e., the "user's remaining Mac OS X computers, iTunes on PC, and iOS devices") "can transmit data for storage" and "can receive data for storage" from the central storage and interface device (a Mac OS X computer). (Corrected Schonfeld Opening Report at ¶ 2208.)

210.    As explained above in Section VIII.B.3, this is inaccurate. No content information or content management information is ever sent from any one of the above devices to any of the others. The device that added the photo to the Photo Stream or the Shared Stream communicates that photo to one or more of the various ████████████████████ ████████████████. The content information, the photo, is then uploaded by the first device

- 66 -

1    to an ███████████████████████.  The purported "zone specific storage and interface

2    devices" may also ultimately download the photo from some ████████████████████

3    ███.  As such, no content information is ever communicated directly from one device to

4    another, and therefore the alleged zone specific storage and interface device does not "interface"

5    with the alleged central storage and interface device.  Even if the devices wanted to

6    communicate with each other, they could not – with respect to both Photo Stream and Shared

7    Streams, the devices do not know what other devices exist and are configured to receive any

8    uploaded photos.  In short, the alleged zone specific storage and interface devices are not

9    capable of storing or interfacing with information stored in the alleged central storage and

10   interface device.

11                    (c)       No Central Storage and Interface Device At All

12          211.    As discussed above, the accused central storage and interface devices do not

13   interface with any of the accused zone specific storage and interface devices.  The devices are

14   not aware of the existence of each other, and no content information or content management

15   information is ever sent directly from one device to another.

16          212.    Further, the characterization of iCloud as a "conduit" is nonsensical.  As an initial

17   matter, Dr. Schonfeld does not explain what he means by "iCloud" in this instance.  iCloud is a

18   marketing term used to refer to many disparate services, each with their own deployments and

19   architectures.  (*See* Apple Marketing Document [MAL-000071609] at 59 (discussing the cloud

20   as a term to describe various services ).)  In any event a conduit, as understood by one of skill in

21   the art, is a pathway that allows passage of something between two or more places / things.  For

22   example, "conduit" is defined as "someone or something that is used as a way of sending

23   something (such as information or money) from one place or person to another."  (Merriam-

24   Webster, Conduit, http://www.merriam-webster.com/dictionary/conduit.)  Here, content

25   information and content management information is not being passed by any possible conduit

26   between an accused central storage and interface device and an accused zone specific storage

27   and interface device; instead, any possible content information or content management

28   information is only ever later transmitted from some other server since the accused central

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

storage and interface device and an accused zone specific storage and interface device do not send anything to each other.

          (d)      A User in a Zone Cannot Access the Audio, Video, or Photographic Information

213.    The claim language requires that "at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user."  As discussed above, the various devices can have different content information and content management information on them, even after the purported synchronization of Photo Stream and Shared Streams.  Apple never refers to Photo Stream or Shared Streams as syncing; in fact, the citations that Dr. Schonfeld relies on generally refers to Photo Stream as "sending" or "pushing" photos to other devices – it never refers to synchronization.  (Corrected Schonfeld Opening Report ¶¶1950-87; APLNDC630-0000157371 at 2 ("Import new pictures to your computer from a digital camera, and the iCloud sends copies over Wi-Fi to your iPhone, iPad, and iPod touch.  There's no syncing, no email attachments, no file transfers."); *see also* APLNDC630-0000159277 ("Photo Stream is the iCloud service that uploads and stores the last 30 days of your photos and automatically pushes them to your iOS devices and computers.  Photo Stream lets you view all your recent photos on your devices without having to sync—all you have to do is turn it on."); APLNDC630-0000159284 ("With Photo Stream in iCloud, all your new photos are pushed to your devices. . . . You don't have to sync, email, or transfer anything.").)

214.    When mentioning Photo Stream, the Apple web pages describe it as the ability to "push a copy" of a photo to other devices.  (Corrected Schonfeld Opening Report at ¶ 1950.)  Dr. Schonfeld acknowledges that manual downloading is not "updat[ing]" in the context of the '757 patent.  (*See* Corrected Schonfeld Opening Report at ¶ 2273.)  Likewise for Shared Streams, it is described in the Apple web pages that the user must manually "select photos" to share them.  (Corrected Schonfeld Opening Report at ¶ 1953.)

215.    As discussed above, both Shared Streams and Photo Streams are just ways to distribute a photo to multiple devices.  The non-manually selected photos for Shared Photo

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

Stream, or photos in Photo Stream outside a certain window of time, will not be available to the user in each zone.

### 2. Specific Servers Architecture

216.    In his Specific Servers Architecture, Dr. Schonfeld characterizes "a specific ███████████████ or ███████████████ as well as the ███████████████ in an Apple Data Center" as the central storage and interface device (Corrected Schonfeld Opening Report at ¶ 2142), and the Mac OS X computers, iTunes on PC, and iOS devices as the zone specific storage and interface devices.  (Corrected Schonfeld Opening Report at ¶ 2203.)

217.    As discussed in the Apple Response to Interrogatory 38, and as I understand from my discussion with Eric Krugler, █████████████████████████████████████ ███████████████████████.  (*See* Krugler Dep. Tr. 63:22-64:4.)  Dr. Schonfeld does not include the Shared Stream server in any of his accusations ███████████████ ███████████████████████████████████████.  (Corrected Schonfeld Opening Report at ¶¶ 2035, 2036.)  For that reason alone, Dr. Schonfeld has not demonstrated a basis for infringement for Shared Stream under either his Specific Server Architecture or All-Servers Architecture.

218.    Further, there are at least three reasons that Photo Stream and Shared Stream do not infringe claim 1 in this architecture: 1) there is no central storage and interface device, 2) there is no synchronization of content information and content management information, and 3) the user cannot be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.

#### (a)    No Central Storage and Interface Device

219.    The accused products do not infringe claim 1 as described in this architecture because there is no "central storage and interface device."  As discussed above, it is understood by a person of skill in the art that a "central storage and interface device" is a single piece of equipment.

220.    Therefore, for the same reasons as discussed above for iTunes in the Cloud, there is no "central storage and interface device" for Photo Stream or Shared Streams because the

accused "central storage and interface device" ("a specific ███████████████████

████████████ as well as the ███████████████ in an Apple Data Center") is not a "central

storage and interface device."

(b)    No Synchronization

221.    As with the Conduit Architecture, the content information and content

management information will not be made consistent between the accused central storage and

interface device and the accused zone specific storage and interface devices, as required to

satisfy the  "synchroniz[ed]" or "updated in relation to" language of claim 1.

222.    The accused central storage and interface device – a specific ████████████

██████████████████ as well as the ███████████████ in an Apple Data Center – will

contain photo information for other users, and, moreover, a specific ██████████████████

████████████ would not contain all the photo information for the particular user.  Further, the

accused zone specific storage and interface device would contain photos that are not reflected

on any of those servers that are accused of being the central storage and interface device.  For

example, for Shared Stream, any photo not manually added to a shared stream will not be on the

specific server (and, even for selected photos, only a lower-resolution version is copied to the

server), and likewise for photos that are no longer part of the Photo Stream.

223.    In the end, the content information and content management information on the

accused central storage and interface device is not made consistent with that on the accused

zone specific storage and interface devices.

(c)    A User in a Zone Cannot Access the Audio, Video, or
Photographic Information

224.    As described in detail above in the context of the Conduit Architecture, a user will

not have access to the same audio, video, or photographic information in each of the zones, as

required by claim 1.

**3.    All Servers Architecture**

225.    The remaining Photo Stream architecture that Dr. Schonfeld accuses as infringing

claim 1 is essentially the same as his Specific Servers Architecture, but it includes even more

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

for iOS 6.1 Software at 16, 61, 136 (APL630DEF-WH0001758342-497) ("iPhone and your computer must both be on the same wireless network.").)

### G. Home Sharing Does Not Infringe Claim 1 of the '757 Patent

230. The Schonfeld Opening Report describes the use of Home Sharing generally, but focuses on the "automatic transfers" feature. (Corrected Schonfeld Opening Report at ¶ 1937-42, 1945, 2076-80.) Based on his infringement description, I understand that he is limiting his infringement opinion to the use of "automatic transfer." (Corrected Schonfeld Opening Report at ¶ 2195.) As stated in section IX.A.1, Dr. Schonfeld has not identified any users who have put the system into use in the manner that he alleges would infringe. In addition to the general arguments discussed above in Section IX.B, the automatic transfer feature of Home Sharing does not infringe claim 1 for at least the additional reasons discussed below.

231. Under the automatic transfer feature of Home Sharing, Dr. Schonfeld contends that a Mac OS X computer (or PC running iTunes) acts as the central storage and interface device and the user's remaining Mac OS X computers (or PCs running iTunes) act as the zone specific storage and interface devices. (Corrected Schonfeld Opening Report at ¶ 2134, 2192, 2193.) There are three reasons that Home Sharing does not infringe claim 1: 1) there is no synchronization of content information and content management information, 2) the accused zone specific storage and interface devices are incapable of storing or interfacing with information stored in the accused central storage and interface device, and 3) the user cannot be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.

### 1. No Synchronization

232. As described above in paragraph 159, the "synchronizing" and "updated in relation to" language of claim 1 requires that the "central storage and interface device" and the "zone specific storage and interface device" must be made consistent automatically and in both directions such that the same content information and content management information resides on each device.

233. However, as described above, the automatic transfer feature of Home Sharing is

CONTAINS APPLE AND THIRD PARTY
HIGHLY CONFIDENTIAL INFORMATION

no more than a manual selection of a song to be distributed. (*See supra* VIII.B.4.)  The user manually selects a specific song for purchase, after which it may be made available for transfer onto other Mac OS X computers running iTunes with Home Sharing and automatic transfers enabled for the purchased media type.

234.    None of the hallmarks of synchronization is present in this process. There is no attempt to compare the media on the two devices such that they can be made to be consistent (i.e., contain the same set of media).  In other words, the claim language requiring that the devices are "synchroniz[ed]" and "updated in relation to" the other devices is not met.  Neither device performs any comparisons as to the content of the other device.  Synchronization requires more than just selecting one file to distribute to two locations.

235.    In the end, the content information and content management information is never made consistent between the accused central storage and interface device and the accused zone specific storage and interface devices.  For example, any songs purchased on a purported "central storage and interface device" prior to enabling "automatic transfer" for music on the purported "zone specific storage and interface device" will not be available on that device.  Likewise, any non-purchased content will also not be transferred.  Further, any metadata or playlists changed on either of the two devices will not be reflected on the other device.

## 2.    A User in a Zone Cannot Access the Audio, Video, or Photographic Information

236.    The language of claim 1 requires that "at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user."  As discussed above, the various devices can have different content information and content management information on them, even after the purported synchronization of the automatic transfer feature of Home Sharing.  Apple never refers to automatic transfer as syncing; in fact, no citations that Dr. Schonfeld relies on in the Home Sharing sections mention synchronization at all.

237.    When mentioning Home Sharing, the Apple User Guides describe it as the ability to "transfer content to another computer."  (See, e.g., http://support.apple.com/kb/HT2688.)

**CONTAINS APPLE AND THIRD PARTY**
**HIGHLY CONFIDENTIAL INFORMATION**

238.    As discussed above, automatic transfer at most will allow a manually selected song to be transferred to multiple devices.  None of the other content information or content management information on the device, either from prior purchases or songs acquired through another mechanism than purchase from the iTunes Store, will be made available on the other devices via the automatic transfer feature of Home Sharing.  The document relied on by Dr. Schonfeld in paragraph 1938 states, "[p]reviously downloaded or non-iTunes Store content can only be manually transferred."  (See http://support.apple.com/kb/HT4620.)  And, as has been discussed above, Dr. Schonfeld has stated that manual steps are not covered by the '757 patent claims.  (*See* Corrected Schonfeld Opening Report at ¶ 2273 ("[M]anual downloading is the antithesis of such updates (or automatic changes), as manual downloading results in data being merely potentially accessible *only after the user takes additional manual steps of dragging and dropping or clicking to initiate a download*.") (emphasis in original).)

**H.    The Accused Functionalities Do Not Infringe Claims 14 or 15**

239.    Schonfeld's Opening Expert Report only alleges infringement of claims 14 and 15 under a subset of the theories described above.  Namely, for the iTunes in the Cloud, iTunes Match, and Photo Stream accusations, Dr. Schonfeld is only asserting infringement against his Conduit Architectures.

240.    For all functionalities accused of infringing claims 14 and 15, they do not infringe those claims for at least the reasons described above for independent claim 1, on which claims 14 and 15 depend.

**I.    Indirect Infringement**

241.    Dr. Schonfeld alleges that "Apple has induced infringement by third parties." (*See* Corrected Schonfeld Opening Report at ¶¶ 2239-47.)  For the same reasons discussed above, third parties do not directly infringe claims 1, 14, or 15.  In addition, Dr. Schonfeld has not identified any third parties who have put the system into use in the manner that he alleges would infringe.

242.    Dr. Schonfeld has not identified any evidence that Apple intended to infringe the '757 patent or encourage infringement of the '757 patent.  Dr. Schonfeld also has not identified