1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Cal. Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    50 California Street, 22nd Floor
3   San Francisco, California 94111
    Telephone: (415) 875-6600
4   Facsimile: (415) 875-6700

5   Kevin P.B. Johnson (Cal. Bar No. 177129)
    kevinjohnson@quinnemanuel.com
6   Victoria F. Maroulis (Cal. Bar No. 202603)
    victoriamaroulis@quinnemanuel.com
7   555 Twin Dolphin Drive 5th Floor
    Redwood Shores, California 94065
8   Telephone: (650) 801-5000
    Facsimile: (650) 801-5100

9
    William C. Price (Cal. Bar No. 108542)
10  williamprice@quinnemanuel.com
    865 S. Figueroa St., 10th Floor
11  Los Angeles, California 90017
    Telephone: (213) 443-3000
12  Facsimile: (213) 443-3100

13  Attorneys for SAMSUNG ELECTRONICS
    CO., LTD., SAMSUNG ELECTRONICS
14  AMERICA, INC. and SAMSUNG
    TELECOMMUNICATIONS AMERICA, LLC

15

16                    UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
17

18

19  APPLE INC., a California corporation,          CASE NO. 12-cv-00630-LHK

                       Plaintiff,                  **SAMSUNG'S OPPOSITION TO APPLE'S**
20                                                 **MOTION TO STRIKE ARGUMENTS**
             vs.                                   **FROM SAMSUNG'S INFRINGEMENT**
21                                                 **REPORTS REGARDING SAMSUNG**
    SAMSUNG ELECTRONICS CO., LTD., a               **PATENTS**
22  Korean business entity; SAMSUNG
    ELECTRONICS AMERICA, INC., a New               **REDACTED VERSION OF**
23  York corporation; SAMSUNG                      **DOCUMENT SOUGHT TO BE SEALED**
    TELECOMMUNICATIONS AMERICA,
24  LLC, a Delaware limited liability company,     Date:    December 10, 2013
                                                   Time:    10:00 a.m.
25                     Defendants.                 Place:   Courtroom 5, 4th Floor
                                                   Judge:   Hon. Paul S. Grewal
26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

    A. Samsung's Original, First Amended, and Second Amended Infringement Contentions ................................................................................................. 2

    B. Samsung's Third Motion to Amend Infringement Contentions and the Court's Order .............................................................................................. 2

    C. Discovery Since Samsung's Third Motion to Amend Infringement Contentions ................................................................................................. 3

    D. Samsung's Infringement Expert Reports ................................................... 4

III. ARGUMENT ...................................................................................................... 4

    A. Under the Guise of "New" Theories, Apple is Seeking To Exclude Evidence and Opinions in Support of "Old" Theories ............................... 5

        1. The '087 and '596 Patents ............................................................... 5

        2. The '757 Patent ............................................................................. 10

        3. The '449 Patent ............................................................................. 16

        4. The '239 Patent ............................................................................. 17

    B. Apple Seeks to Use the Court's Order to Exclude More Than What Was Excluded .................................................................................................. 20

        1. The '596 Patent ............................................................................. 20

        2. The '449 Patent ............................................................................. 22

        3. The '239 Patent ............................................................................. 24

    C. Samsung's Doctrine of Equivalents Opinions Should Be Allowed If the Court Denies Samsung's Motion to Strike Apple's Undisclosed Claim Constructions .......................................................................................... 25

IV. CONCLUSION ................................................................................................. 25

SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4

*3Com Corp. v. Realtek Semiconductor Corp., No. C 03-2177 VRW,*
5     2008 WL 783383 (N.D. Cal. Mar. 24, 2008) ................................................................... 8

6 *Cummins-Allison Corp. v. SBM Co., Ltd.,*
    No. 9:07-CV-196, 2009 WL 806753 (E.D. Tex. Mar. 19, 2009) ........................................ 5

7

*DCG Sys. v. Checkpoint Tech., LLC,*
8     No. 11-cv-03729-PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) .................................. 4

9 *Fenner Investments, Ltd. v. Hewlett-Packard Co.,*
    No. 6:08-CV-273, 2010 WL 786606 (E.D.Tex. Feb. 26, 2010) ......................................... 5

10

*Linex Technologies, Inc. v. Belkin Intern., Inc.,*
11     628 F. Supp. 2d 703 (E.D. Tex. 2008) ............................................................................... 12

12 *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC,*
    No. 1:09-cv-02657-JKB, 2012 WL 664498 (D. Md. Feb. 27, 2012) ................................... 5

13

*Network Caching Tech., LLC v. Novell, Inc.,*
14     No. C-01-2079 VRW, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) ........................... 4, 12

15 *Orion IP, LLC, v. Staples, Inc.,*
    407 F. Supp. 2d 815 (E.D. Tex 2006) ........................................................................... 4, 6, 10

16

*Sun Microsystems, Inc. v. Network Appliance, Inc.,*
17     690 F. Supp. 2d 1027 (N.D. Cal. 2009) ............................................................................... 7

18

### Statutes

19 35 U.S.C. 112(f) ......................................................................................................................... 24

20

### Rules

21 Fed. R. Civ. Proc. 26(e) ........................................................................................................... 7, 9

22 Fed. R. Civ. Proc. 26(e)(1) .......................................................................................................... 5

23 Patent Local Rule 3-1 ................................................................................................................... 2

24

25

26

27

28

## I.   <u>INTRODUCTION</u>

Apple's motion to strike takes an aggressive shotgun approach at attacking Samsung's infringement reports.   In Section III.C. of its brief, Apple identifies fourteen allegedly "new" infringement theories.   None of these, however, are new infringement theories.   Instead Apple is recasting "old" infringement theories as "new" infringement theories.   In other cases, Apple seeks to exclude "new" evidence in support of "old" infringement theories.   In both cases, there is absolutely no justification to strike anything from Samsung's expert reports.

When Samsung filed its motion for leave, the Court allowed Samsung to add source code and other evidence it received after its January amendment of its contentions.   (Dkt. 636 "Amended ICs Order" at 22).   The Court also provided helpful guidance about the role of infringement contentions in the present litigation.   The Court made clear that the parties do not need to "'prove up' their theories by providing evidence beyond the material they have at the time they make their contentions."   (*Id.* at 6.)   Following the Court's guidance, Samsung did not stray from its previously disclosed infringement theories, and Samsung did not attempt to "prove up" those theories by adding evidence that it received after its contentions.

Since the date of Samsung's Third Amended contentions dated April 25, 2013, Apple and third parties have produced more than 399,000 documents.   In addition, there have been more than 200 depositions.   (Drezdzon Decl., ¶¶ 15, 18.)   Much of this evidence was withheld by Apple or third parties until Samsung was forced to file motions to compel.   Much of the evidence that Apple now seeks to strike from Samsung's expert reports is from these document productions and depositions that occurred after Samsung's contentions.

Apple now seeks to turn the Court's Order on its head and hold Samsung to an impossible standard.   Apple attacks this new evidence and wrongly claims that it is a "new" theory.   Under the guise of a "new" theory, Apple then claims that Samsung should have disclosed this evidence before it was even in Samsung's possession.   In some cases, Apple goes so far as to attack evidence that was already "blessed" by the Court's Order and already in Samsung's contentions.   Moreover, Apple attempts to use the Court's order as a hammer to exclude additional evidence that

was not even at issue in the motion for leave.   Finally, Apple attempts to strike all doctrine of equivalents arguments despite the Court noting they would be allowed if circumstances changed.

## II.      BACKGROUND

### A.      Samsung's Original, First Amended, and Second Amended Infringement Contentions

On May 2, 2012, the Court set deadlines for service of Patent Local Rule 3-1 infringement contentions, ordering both parties to serve their contentions by June 15, 2012.   (Dkt. 160.)   The Court set the close of fact discovery for July 8, 2013, with expert discovery to take place after that. (*Id.*)   Samsung served its initial infringement contentions on the Court-ordered deadline.

On October 1, 2012, Samsung filed a motion to amend its infringement contentions to include the newly released iPhone 5.   (Dkt. 267.)   Four days later, Apple filed its own motion to amend infringement contentions to incorporate many changes, including the addition of the Galaxy Note 10.1, JellyBean operating system, and U.S. versions of the Galaxy S III.   (Dkt. 269.)   On November 15, 2012, the Court granted the parties' motions.   (Dkt. 302.)

On November 21, 2012, Samsung filed its second motion to amend infringement contentions, seeking leave to include the iPad 4, iPad mini, and iPod Touch (5th gen.).   (Dkt. 304.)   Two days later, Apple filed its second motion to amend, seeking leave to add Samsung products.   (Dkt. 306.)   After negotiations, the parties stipulated to allow amendments to add products, and the Court entered the stipulation on January 16, 2013.   (Dkt. 348.)

### B.      Samsung's Third Motion to Amend Infringement Contentions and the Court's Order

On April 30, 2013, Samsung filed its third motion to amend infringement contentions, seeking leave to include evidence in response to developments in the case such as: (i) the Court's April 11, 2013 claim Construction Order (Dkt. 447); (ii) Apple's interrogatory responses; and (iii) recent discovery from Apple and Third Parties, including documents and source code from at least Apple, ReQuest, Qualcomm, Intel, Alcatel-Lucent, and AT&T.   (Dkt. 476.)

On June 26, 2013, the Court issued its Order Regarding Samsung's and Apple's Motions for Leave to File Amended Infringement Contentions.   (Amended ICs Order.)   The Order stated

SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS

that the purpose of infringement contentions is to provide a form of pleading that discloses the parties' theories.   The parties must make a good faith effort to disclose evidence in possession and diligently amend contentions when new evidence is revealed.   (*Id*. at 3, 6.)   However, parties need not "prove up" theories by providing evidence beyond that which they have at the time contentions are made.   (*Id.*)   And there is no continuing duty to disclose all new evidence as infringement contentions are not intended to be a "running dialogue."   (*Id.*)

On the merits, the Order stated that to the extent Samsung adds citations to source code it received after its January amendment of its contentions, it has shown sufficient diligence and thus good cause to add those citations.   (*Id.* at 22.)   By adding source code citations, Samsung fulfilled the Order's stated purpose of amending infringement contentions to make them "more specific and fine-tuned."   (*Id.* at 6.)

**C.**   **Discovery Since Samsung's Third Motion to Amend Infringement Contentions**

There has been substantial discovery since Samsung's Third Motion to Amend, including 202 depositions and extensive document production by both Apple and third parties.   Many of these late-occurring depositions are directed solely to Samsung's infringement case.   For example, the Intel deponents did not testify until June 24-25, 2013, while the Qualcomm deponents did not testify until July 1 and 3, 2013.   This testimony regarding the meaning of technical documents and source code relevant to the functionality of the '087, '596, and '239 patents is clearly instrumental to Samsung's infringement case.   Moreover, Apple delayed its 30(b)(6) deposition regarding testing and compliance of Apple products with the 3GPP standard until June 28, 2013 – just 10 days before the close of discovery.   (Drezdzon Decl., ¶ 16.)   Likewise, 30(b)(6) depositions regarding iTunes and iCloud did not occur until June 27 and July 2, 2012.   (*Id.* at ¶¶ 24-25.)

Apple also made several voluminous document productions since Samsung filed its Third Motion to Amend on April 30, 2013.   Apple *chose* to produce these documents after the date that Samsung filed its motion for leave.   Having delayed its production, Apple cannot now benefit from its delay.   For instance, Apple did not supplement its deficient production of Qualcomm documents until the last day of fact discovery—and only after Samsung's June 25, 2013 Motion to

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS**

1   Compel—when it produced over 800 documents that Samsung had been requesting since July of

2   2012.   In total, Apple produced more than 2 million pages on the final day of fact discovery.[1]

3   There have also been extensive document productions from third parties since Samsung's Third

4   Amended Infringement Contentions, including source code and technical documents from AT&T,

5   T-Mobile, Intel, and Ericsson.   (Drezdzon Decl., ¶ 17.)

6        **D.**     **Samsung's Infringement Expert Reports**

7        Samsung's Infringement Expert Reports use evidence received late in discovery to fine

8   tune and prove up the infringement theories laid out in its Initial and Amended Infringement

9   Contentions.   Regarding the '087 and '596 patents, Samsung applied previously inaccessible

10  documentation and source code to show how specific components in the Apple products practice

11  the claim language.   Regarding the '757 patent, Samsung applied documentation, deposition

12  testimony of Apple 30(b)(6) witnesses, and Apple's responses to written discovery.   Similarly, for

13  the '239 and '449 patents, Dr. Schonfeld and Mr. Parulski supplied and relied on technical

14  documents produced by Apple and third parties, deposition testimony from Apple 30(b)(6)

15  witnesses that occurred in June and July, and Apple's written discovery responses.

16  **III.   ARGUMENT**

17       This Court has stated that infringement contentions "are not meant to provide a

18  forum for litigation of the substantive issues; they are merely designed to streamline the

19  discovery process."   *Network Caching Tech., LLC v. Novell, Inc*., No. C-01-2079 VRW,

20  2003 WL 21699799, at *4-5 (N.D. Cal. Mar. 21, 2003).   Parties are thus not required to

21  "prove up" theories disclosed in their contentions.   *DCG Sys. v. Checkpoint Tech., LLC*,

22  No. 11-cv-03729-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).   The parties

23  should work together if one believes the infringement contentions are unclear.   *Orion IP,*

24

25  ───────────────────

26       [1] Apple produced thousands of documents through September 2013 for custodian

27  Tim Millet, Apple's 30(b)(6) designee for portions of both the '239 and '449 patents—
    whom was deposed on June 26, 2013.   (Drezdzon Decl. ¶ 21; Exs. 9-10.)

28

1    *LLC, v. Staples, Inc.*, 407 F.Supp. 2d 815, 818 (E.D. Tex. 2006).    And while

2    infringement contentions should give notice of an expert report's infringement theories,

3    the burden of notice on plaintiffs "is intended to be a shield for defendants, not a

4    sword."   *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL

5    786606, at *3 (E.D.Tex. Feb. 26, 2010).

6    **Portion is withdrawn with prejudice by agreement of the parties, as indicated in the**
7    **Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE RELATED TO SAMSUNG'S PATENTS

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

1  **Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

1   **Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26            **2.      The '757 Patent**

27       Apple's allegation that Dr. Schonfeld's expert report includes previously undisclosed

28   theories of Apple's infringement of the '757 patent is also without merit.   In certain instances,

Apple admits that Samsung properly disclosed the theories in Dr. Schonfeld's report, but complains that Samsung should have previously disclosed the evidence cited to support his opinions.   In other instances, Apple attempts to recast examples of accused functionality as a wholly separate and previously undisclosed accused product.   Apple's allegations should be rejected.

(a)  <u>Samsung Contended That Laptop Computers, iPads,<br>iPod Touches, and iPhones Are "Zone [] Devices"</u>

Samsung's contention that laptop computers, iPod Touches, and iPhones are zone devices that reside in a location was plainly disclosed in its Third Amended Infringement Contentions. (*See* Dkt. 660-3 at 5 (Apple's accused products "**are storage and interface devices that reside in a specific location** and are capable of storing or interfacing with information stored in a central storage and interface device.") (emphasis added).)   Apple complains, in effect, that Dr. Schonfeld's application of evidence supporting previously disclosed infringement theories are "new theories."   (Mot. at 12-15.)   Apple's allegations have no merit.

First, this Court has previously recognized that Samsung's Second Amended Infringement Contentions disclose laptop computers, iPads, iPod Touches, and iPhones as "zone[] device[s]," while Samsung's Third Amended Infringement contentions "tailor [those] theories to the claim construction order."   (Amended ICs Order at 10-11.)   Samsung elaborated that "each of these devices may reside in a room or similar location," and the Court permitted this amendment.

Apple understood Samsung's allegations included the same infringement theory.   Apple's response to Samsung's interrogatory seeking Apple's non-infringement defenses states: "Samsung contends that Apple's iPhone, iPad, iPad mini, iPod touch, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro, and Apple TV devices are 'zone specific storage and interface devices.'" (Drezdzon Decl., Ex. 2, Apple's Response to Samsung Rog. 12 at 174.)

The paragraphs that Apple seeks to strike contain Dr. Schonfeld's application of evidence to support the theory that Apple's devices reside in a location.   Dr. Schonfeld explains that the devices meet the Court's construction because they are "typically used in the home and . . . that Apple's iPads, iPod touches, and iPhones are zone specific storage and interface devices when

confined to a residence[.]"   (Mot., Ex. A at ¶ 2162.)   Dr. Schonfeld supports his opinion with "Apple's own user surveys [which] show Mac OS X computers, iTunes on PC, and iOS devices are most frequently used within a home or other geographic location.   Apple's own user surveys show that most users utilize the '757 Accused Products in a zone, in accordance with the Court's construction."   (Mot., Ex. A at ¶¶ 2161-62, 2164-65 (iTunes in the Cloud), 2174-75, 2177, 2182 (iTunes Match), 2187 (iTunes Wi-Fi sync), 2193 (Home Sharing), 2199, 2203, 2207, 2212, 2216, 2220 (Photo Stream).)   This explanation simply supports Samsung's theory that Apple's devices do "reside," and are fully consistent with the Court's explanation of the meaning of that term in its *Markman* Order.   (Dkt. 447 (explaining that the zone devices "reside[,] remain[][,]" or have "some degree of being contained within a certain location rather than moving around freely.").)   This is not a new theory, but an application of fact evidence to Samsung's existing theory.   *See Linex Technologies, Inc. v. Belkin Intern., Inc.*, 628 F. Supp. 2d 703, 712-13 (E.D.Tex. 2008) ("[i]nfringement contentions 'are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process.'") (*quoting Network Caching Tech.*, 2003 WL 21699799, at *4–5).

> **(b)**      **Samsung Contended That Mac OS X Computers are "Zone [] Devices" When Used For Photo Stream**

Apple contends Samsung did not disclose the theory that Mac OS X computers are "zone [] devices."   Apple's contention is without merit.[2]   In its Third Amended Contentions, Samsung properly disclosed that it is accusing Mac OS X computers of being "zone [] devices" for the Photo Stream feature.   (Dkt. 660-3 at 5 ("Apple's iPhone, iPod Touch, iPad, the iMac, MacBook Air,

_____

[2] Apple's motion contradicts its written discovery responses.   During discovery, Apple stated that it could not ascertain if Samsung was accusing any devices of meeting the "zone [] device" requirement.   In contrast, Apple's motion attempts to arbitrary distinguish between iOS devices and Mac computers.   (*Compare* Mot. at 13 ("In its contentions, Samsung advanced an infringement theory based on the Photo Stream function—for which it accused only iOS devices as "Zone Devices," and accused Mac OS X computers exclusively as "Central Devices."), *with* Drezdzon Decl., Ex. 2 at 178 (In regard to Samsung's allegations against Photo Stream, Apple responded "nor is it clear what devices Samsung is claiming are the zone devices.").)

MacBook Pro, Mac Mini, Mac Pro and Apple TV devices (collectively the 'Zone Devices') are storage and interface devices.").)   Apple's argument simply ignores the fact that the term "Zone Devices" was specifically defined in Samsung's infringement contentions.

Further, Samsung's Infringement Contentions did not limit "zone [] devices" to iOS devices for the Photo Stream feature, as Apple suggests.   In fact, Samsung's infringement contentions for this limitation include an excerpt, screenshot, and citation to an Apple webpage instructing users how to set up Photo Stream on a Mac OS X computer.   (*Id.* at 23 ("For example, Apple provides instructions to a user for activating Photo Stream for **Mac Computers** on its website[.]") (emphasis added).)   Samsung's clarification that *certain*, not all, devices accused of being "zone [] devices" (e.g., iOS devices) have limited memory is not the blanket disclaimer Apple contends.

(c)   <u>The "Automatic Transfer" Feature of Home Sharing<br>Was Included in Samsung's Contentions</u>

Apple contends that Samsung's Infringement Contentions do not identify Home Sharing's automatic transfer feature.   Apple's complaint is based on an unsupported attempt to recast "automatic transfer" as a separate feature that "has nothing to do" with Samsung's clear allegations against the broader Home Sharing functionality.   (Mot. at 14.)

Apple admits that Samsung's Second Amended Infringement Contentions properly disclosed allegations against Home Sharing.   (*Id.*)   Samsung's Second Amended Infringement Contentions included Samsung's theory, as stated below:

> "Second, Apple's Home Sharing software allows a user with a second desktop or laptop computer (e.g, iMac, MacBook Air, MacBook Pro, Mac Mini, Mac Pro or PC) **to operate it as a zone specific storage and interface device that is capable of storing or interfacing with multimedia information stored on a Central Device.   As described on Apple's website, Home Sharing allows a user to share the user's iTunes media libraries between up to 5 computers in your household**."

(Dkt. 304-4 at 11-12 (emphasis added).)   The webpage cited by Samsung's Original, First, Second, and Third Amended Infringement Contentions explains that in Apple's parlance for Home Sharing, "shar[ing]" includes "hav[ing] iTunes automatically import purchases you make on any of your Home Sharing computers to your own library."   (*Id.* (citing

http://support.apple.com/kb/HT3819).)   Moreover, the Court has already granted Samsung's motion to amend its infringement contentions to elaborate on the automatic transfer feature, agreeing it was not a new feature.   (Amended ICs Order at 28 ("Samsung may add the **exemplary operation of Home Sharing in response to the claim construction order**.") (emphasis added); *see also* Dkt. 660-3 at 13-14.)   Thus, Samsung's Infringement Contentions properly disclosed this theory of infringement using Apple's own terminology.

### (d) The "Shared" Feature of Photo Stream Was Included in Samsung's Contentions

Apple contends that Samsung's Infringement Contentions do not disclose the theory that Photo Stream, which includes Shared Photo Stream, infringes the '757 patent.   Here too, Apple attempts to recast a subpart (Shared Photo Stream) of an accused feature (Photo Stream) as a wholly different feature.   Apple's attempt lacks any support, is contrary to its own documents, and should be denied.

Samsung properly disclosed its theory regarding the shared stream feature of Photo Stream. First, Photo Stream includes "My Stream," which allows a user to synchronize photos onto their own devices, and "Shared Photo Stream" (or shared stream), which allows a user to share photos with other users. As Dr. Schonfeld testified, shared streams are just one part of the Photo Stream feature.   (Drezdzon Decl., Ex. 3, Schonfeld Depo. 100:6-18.)   Second, the Apple documents cited by Samsung's Infringement Contentions expressly identify both sub-features of Photo Stream – *i.e.*, a user can create "streams" for distributing photos to their own devices as well as "streams" to "share select photos with [others]."   (*Id.*; Dkt. 660-3 at 21 ("Photo Stream also lets you share select photos with friends and family, directly to their devices or on the web."); *id.* at 22 ("Shared Photo Streams require iPhoto 9.4, Aperture 3.4, and OS X v 10.8.2 or later.").)   Therefore, Samsung disclosed its infringement theory regarding Photo Stream including the Share Photo Stream functionality, and Apple's motion should be denied.

### (e)    iTunes For PCs is An Accused Product

Apple further contends that Samsung is no longer accusing iTunes on PC and attempts to exclude this accused product from Dr. Schonfeld's report.   (Mot. at 2-3.)   Apple mischaracterizes Samsung's Case Narrowing Statement.

Samsung's latest Case Narrowing Statement lists "iTunes (including iTunes Match)" as an accused product.   (Dkt. 646 at 3).   The iTunes product includes at least iTunes (server) and iTunes (client)—namely the iTunes software used on both Macs and PCs.   Apple's 30(b)(6) witness for iTunes confirmed that iTunes (client) includes both iTunes on PC and iTunes on Mac:

> A.   And just -- just to clarify, when I – when I refer to iTunes, I'm referring to the iTunes client, which is the iTunes client for Mac OS X and Windows.

(Drezdzon Decl., Ex. 4, Wysocki Depo. 11:12-15.)   Thus, the iTunes product identified in Samsung's case narrowing statement includes iTunes for PCs.

### (f)    Dr. Schonfeld Properly Applied Discovered Evidence To Support Samsung's "At Least One Central Device" Contentions

Apple moves to strike eight allegedly "new" theories of infringement from Dr. Schonfeld's report regarding the "at least one central device" limitation.   (Mot. at 16-18.)   Apple contends that these theories, all related to the fact that Apple employs multiple servers as "central storage" devices, were not properly disclosed.   (*Id.*)

The '757 patent requires "<u>at least one</u> central storage and interface device."[3]   As Apple concedes, Samsung's Infringement Contentions properly disclosed infringement theories that iTunes and iCloud "include[] at least a central device."   (Mot. at 15-16.)   Further, Samsung's Infringement Contentions expressly disclose Samsung's theories as to iTunes with iCloud, iTunes Match, and Photo Stream (including Shared Photo Stream).   (Dkt. 660-3.)

The purportedly new theories are nothing more than an identification of servers within the iTunes and iCloud system identified by Apple during discovery as a result of Samsung's proper

---

[3] Apple's motion takes the claim language out of context.   Claim 1 of the '757 patent requires, in part, "<u>at least one</u> central device," not "a 'central device,'" as phrased in Apple's motion.

infringement contentions.   For example, Dr. Schonfeld's report identifies specific facts that were obtained from Apple and third parties through written discovery and deposition testimony to prove that the ██████████████████████████████████████████ ████████████████████ act as central storage and interface devices.   (Drezdzon Decl., Ex. 13, ¶¶ 1867-1872 (summarizing Apple's discovery responses and deposition testimony regarding the "at least one central device" limitation as to iTunes with iCloud), 1878-79 (summarizing documents produced by Apple as to iTunes Match), 1881, 1898-1903 (summarizing Apple's discovery responses and deposition testimony regarding the "at least one central device" limitation as to iTunes Match), 1988-1995 (summarizing documents produced by Apple as to Photo Stream, including Shared Photo Stream), 2010-2018 (summarizing Apple's discovery responses and deposition testimony regarding the "at least one central device" limitation as to Photo Stream, including Shared Photo Stream).)   Dr. Schonfeld applied this evidence to support his conclusion that iTunes with iCloud, iTunes Match, and Photo Stream (including Shared Photo Stream) meets the "at least one central device" limitation.   It is improper to strike Dr. Schonfeld's reliance on evidence to support previously disclosed infringement contentions.

Finally, Apple was well aware of Samsung's theories.   For example, Apple's response to Samsung's interrogatory seeking Apple's non-infringement defenses expressly addresses the multiple-server "theories" that Apple now complains of.   (*See, e.g.,* Drezdzon Decl., Ex. 2 at 171 ("Instead, Samsung appears to be using the term iCloud to refer to a set of different services and servers, some owned by Apple, some owned by third parties.").)   Apple understood that Samsung's use of the term "iCloud" includes iTunes in the Cloud, iTunes Match, and Photo Stream.   (*Id.* at 176.)   Therefore, Apple's motion to strike should be denied.

### 3.    The '449 Patent

#### (a)    Samsung Is Not Presenting a New "Compressor" or "Decompressor" Theory

Apple incorrectly argues that Mr. Parulski is presenting new "compressor" and "decompressor" theories.   Apple is wrong because both Samsung's contentions and Mr. Parulski's report identify portions of each accused device's application processor (also known as a system on

a chip or "SOC") as meeting these claim limitations.   Samsung's contentions identify the "compressor" as a portion of the SOC that is "video encoder that utilizes at least the H.264 and MPEG-4 standards for compressing moving images and the JPEG standard for compressing still images." (Dkt. 660-5 at 4.)   Similarly, the contentions identify the "decompressor" as a portion of the SOC that is a "video decoder that utilizes the H.264 and MPEG-4 standards for decompressing moving images and the JPEG standard for decompressing still images."  (*Id.* at 5.)   Consistent with those contentions, Mr. Parulski's report identifies ███████████████████████ ████████████████████████████████████████████████ utilizes H.264 for compressing and decompressing moving images and JPEG for compressing and decompressing still images.  (Mot., Ex. B, ¶ 178.)  Apple's argument that the contentions somehow identify █ ████████████████████████████████████ is meritless. Apple cannot point to any language in Samsung's contentions that would exclude the ████████████████████

### 4.      The '239 Patent

#### (a)      Samsung Is Not Presenting a New "Logic Board" Theory

Apple incorrectly argues that Dr. Schonfeld is presenting a new logic board theory.   First, Apple incorrectly equates Dr. Schonfeld's arguments regarding the claim 1 limitation "means for capturing, digitizing, and compressing at least one composite signal" (which the Court construed to require "an audio capture card, and video card having a video capture module) with the claim 15 limitation "a computer including a video capture module to capture and compress video in real time."   The only paragraph cited by Apple regarding this limitation, ¶ 1463, explicitly states that Dr. Schonfeld's arguments for claim 1 apply to claim 15 only if the Court ultimately requires that they have the same structure.   In fact, Dr. Schonfeld does not require the logic board to satisfy claim 15 because this claim does not require a "card."   Thus, any decision regarding this motion to strike should be limited to claim 1.

Second, Samsung adequately disclosed that the logic board on which the application processor (*e.g.*, A4, A5, A6) sits and to which both camera assemblies attach is part of the accused structure for a video card having a video capture module and the video card required by the

"means for decompressing" limitation of claim 1.   Samsung's infringement contentions include photographs of torn down Apple iOS devices that include the front and back camera assemblies, which connect to the iOS devices' logic board, as well as the application processor, which sits on and is affixed to the accused logic board.   (*See, e.g.*, Dkt. 276-6 at 144-47, 155-56, 161-64; Dkt. 305-4 at 176-80, 189-90, 198-202; Dkt. 660-6 at 3-6, 18-19, 21-25.)   ████████████

████████████████████████████████████████

████████   Indeed, the same contention citations include photographs of the application processor sitting on and affixed to the logic board.   (*See* Drezdzon Decl., Exs. 11-12 (cited at Dkt. 305-4 at 177-78).)   Contrary to Apple's assertions, Dr. Schonfeld is not asserting a new theory or adding additional components; rather, he is using documents and testimony in support of the theory included in Samsung's contentions.

**(b)**   **Samsung Is Not Presenting a New Audio Components Theory**

Apple incorrectly argues that Samsung failed to disclose that the structure for "means for capturing, digitizing, and compressing at least one composite signal" is met, in part, by a ████

████████████████████████   (Mot. at 19.)   First, and contrary to Apple's assertions, Samsung's Third Amended Infringement Contentions include multiple audio components of the accused devices, including the Audio subsystem of the application processor (Dkt. 660-6 at 6) and the microphone (*id.* at 8).   Second, Samsung's infringement contentions repeatedly reference ████████████████ for dependent claim 6, which depends from claim 1.   (Dkt. 267-3 at 148; Dkt. 267-6 at 160; Dkt. 305-4 at 196.)   During the *Markman* process, Samsung consistently argued that independent claim 1 did not require audio components, based in part on claim differentiation with claim 6.   (Dkt. 447 at 47.)   Apple argued that audio and video components were required for claim 1.   The Court ultimately agreed with Apple and incorporated these audio components into claim 1.   (*Id.* at 47, 52.)   Having prevailed on its claim construction argument, Apple cannot be prejudiced when Samsung's expert accuses the components expressly included in Samsung's prior contentions as part of the required audio structure for claim 1.

1    Third, any surprise expressed by Apple that Dr. Schonfeld included a ███████████

2  ████ as part of the required structure is disingenuous.   Since Samsung's Third Amended

3  Contentions were served on April 25, 2013, Samsung has continuously pursued discovery

4  regarding ██████████████████████████████.   For example, Samsung████

5  ████████████████████████████ which counsel for Apple

6  attended.   (Drezdzon Decl., Ex. 5.)   And during the meet and confer process regarding Apple's

7  failure to answer Samsung's interrogatories requesting identification of certain components of the

8  accused Apple products, Samsung repeatedly asked Apple to identify which ████████ is

9  incorporated in which Apple product (Drezdzon Decl., Ex. 6, July 18, 2013 Email from Ducca to

10  Kolovos; Ex. 7, July 22, 2013 Email from Thakur to Kolovos), and Apple finally identified these

11  ██████████████ 11 days before initial expert reports were due (Drezdzon Decl., Ex. 8,

12  August 1, 2013 Letter from Kolovos to Thakur).   Thus, Apple has long known that Samsung

13  accused the ████████████ and cannot feign surprise or prejudice now.

14            **(c)**    **Samsung Is Not Presenting a New "Means for**
                        **Exchanging" Theory**

15

16    Apple is improperly attempting to exclude factual details in support of Samsung's "means

17  for exchanging" theory disclosed in its infringement contentions.   Samsung's contentions

18  consistently assert that each of the Accused Products contains a circuit and software that satisfy

19  this limitation (although Samsung maintains that software is not required for this limitation).

20  (*See, e.g.*, Dkt. 267-3 at 145; Dkt. 660-6 at 17.)   Dr. Schonfeld's report merely provides further

21  factual details that show this circuit exists in the accused products.   Paragraphs 1355-61 show that

22  data wires and busses comprise the circuit accused in the infringement contentions.   And in an

23  alternative arrangement, paragraphs 1362-66 shows that a USB cable or a Wi-Fi network, cellular

24  network, or Ethernet network comprise the accused circuit.   Dr. Schonfeld's opinions are just

25  adding specific evidence and details regarding the circuit and software that performs the means for

26  exchanging limitation as disclosed in Samsung's contentions.

27

28

**(d)      Samsung Is Not Making New Accusations Against Mac Computers**

Apple's argument regarding Mac computers is a strawman.   Apple lists multiple grievances against opinions that were not expressed by Dr. Schonfeld.   First, Apple complains that Dr. Schonfeld is improperly accusing MacBook Pro devices satisfying the "means for transmitting" limitation of the mobile remote unit.   (Mot. 20.)   However, Dr. Schonfeld made clear his understanding of the accused mobile remote units and did "not include[] laptop computers as mobile remote units in the infringement analysis." (Mot., Ex. A, ¶¶ 1301, n.75, 1321-22 n.99-102.)   Second, Apple makes a similar complaint that Dr. Schonfeld is improperly accusing MacBook Air and MacBook Pro devices of satisfying the "means for storing" limitation of the remote limitation.   (Mot. 20.)   Again, this complaint ignores Dr. Schonfeld's explicit understanding of what products are accused of being mobile remote units and his statements that he did "not include[] laptop computers as mobile remote units in the infringement analysis." (Mot., Ex. A at 1311-13 n.84-86.)[4]   Finally, Apple reprises its argument regarding "means for exchanging."   (Mot. 20-21.)   Apple is incorrect, as explained above in Section III.A.4(c).

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

---

[4]   While it appears Apple failed to include the correspondence between Apple and Samsung it mentions in footnote 10, Samsung pointed Apple to Dr. Schonfeld's report where it is clear that Samsung is not accusing Mac computers of being mobile remote units.   (*See, e.g.* Mot., Ex. A at ¶ 1301.)   In order to obviate the need for the Court's involvement, Samsung states that it is only accusing the iPhone 4, iPhone 4S, iPhone 5, iPad 2, iPad 3, iPad 4, iPad Mini, iPod Touch 4th Generation, and iPod Touch 5th Generation as being mobile remote units for purposes of infringement of claim 1.

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

2.     **The '449 Patent**

(a)     <u>The Court Never Previously Ruled on Samsung's Contentions Regarding the "Imaging Device" and "A/D Converter", Which Are Proper</u>

Mr. Parulski's report explains that the "imaging device" and "A/D converter" limitations are each met by different circuitry contained within a CMOS Image Sensor integrated circuit (or "chip") supplied to Apple by third parties.  (*See, e.g.*, Mot., Ex. B, ¶¶ 146-147.)  Contrary to Apple's representations, Samsung's infringement contentions also make clear that different portions of the CMOS Image Sensor chip in each accused product meet each respective limitation.  For example, Samsung's contentions expressly state that the "A/D converter" limitation is met by the accused products because they "use a CMOS Image Sensor (or similar device) *that has an A/D converter*."  (Dkt. 305-4 at 162 (emphasis added).)  There can be no

dispute that the quoted language identifies the CMOS Image Sensor chip as *containing* the claimed A/D converter.   Therefore, Apple's argument that the contentions identify the *entire chip* (including the A/D converter portion) as meeting the "imaging device" limitation is plainly incorrect.   (Mot. at 9-10.)   Apple's motion to strike is grounded on that false premise, and should be denied.   Similarly, nothing in the Court's June 26th Order warrants striking portions of the expert report regarding *literal infringement* of the "A/D converter" limitation.   (Mot. at 10, fn. 6.)   The Court's order addresses only Samsung's request to make an alternative argument based on the doctrine of equivalents.   (*See* Amended ICs Order at 25.)

**(b)    "Recording Circuit"**

Apple admits that Samsung identified each device's "NAND flash module" as meeting the "recording circuit" limitation of the asserted claims.   (Mot. at 11.)   Nothing in the Court's June 26th order prevents Samsung from asserting this properly disclosed theory.   Mr. Parulski's report explains how the ████████████████████████, and properly opines that this ██████████████████ is a recording circuit as claimed. (*See, e.g.,* Mot., Ex. B, ¶ 200.)   The "controller" identified by Mr. Parulski is part of the ████ ████████████████████████ (Mot. at 11.)   Mr. Parulski identifies the ████████████████████████, and his opinions are therefore consistent with the Court's Order.   (*See id.*)   The last sentence of paragraph 202 of the report offers the additional opinion that ██████████ ████████████████████████ ██████████.   Samsung does not intend to rely on this separate, independent opinion offered by Mr. Parulski.   Apple misleadingly fails to distinguish between the two alternative opinions, and cites paragraphs 196-98, 200 and 202-206 of the infringement report as if they disclosed a single theory that improperly includes the ██████████.   They do not.   There is no basis for striking any other sentence in Mr. Parulski's report.

**(c)    "Reproducing Circuit"**

Apple's attempt to strike the entirety of Mr. Parulski's opinions regarding the "reproducing circuit" limitation is also improper and should be denied.   Samsung's infringement contentions

identify the SOC or application processor component of the accused products as meeting this limitation.   Mr. Parulski's expert report properly identifies specific circuitry in the SOC integrated circuit (or "chip") that perform the "reproducing" function, and there is no basis to strike his opinions.[5]   Apple argues that Samsung's infringement contentions identify a graphical processing unit ("GPU") as meeting this claim limitation.   This is incorrect.   Apple fails to explain to the Court that both the ███████████████████████████████████████████████████████ ███████████████████████████████.   Samsung's contentions properly identified the SOC as meeting this limitation, and also went a step further by disclosing *an example* of relevant circuitry—the GPU—in the accused component.   Apple was on notice that the SOC was accused of meeting the limitation, and the fact that Mr. Parulski identifies ███████████████████ ██████████████████ is not a basis for striking his opinions.   Similarly, the Court's June 26th order does not preclude Samsung from asserting that the SOC meets the "reproducing circuit" limitation. (*See* Dkt. 636 at 24.)   The order denied a request to accuse an additional, separate chip ███████ ███████████████████ and Mr. Parulski's report complies with the order.   (*Id.*)

### 3.      The '239 Patent

Dr. Schonfeld's opinions regarding infringement as "equivalents thereof" under 35 U.S.C. 112(f) should be preserved pending possible adverse claim constructions, as contemplated by this Court's prior order.   (Amended ICs Order at 8.)   The Court in this case stated there will be no further claim construction until after the case is fully narrowed.   (Dkt. 750 at 20.)   In anticipation of Dr. Storer's adoption of Apple's restrictive claim interpretations, Dr. Schonfeld included opinions regarding infringement as "equivalents thereof," and they should be preserved.[6]

---

[5]      Samsung's contentions for this limitation read in part: "For example, the Accused Devices include a processor, each processor also including a graphical processing unit." (Dkt. 660-5 at 5.)

[6] Samsung also notes that the patent local rules require that patentees assert "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."   Patent L.R. 3-1(e).   Infringement under the "equivalents thereof" portion of 112(f) is literal infringement.   Thus, Samsung's accusations against certain portions of the Accused
(footnote continued)

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

IV.      <u>CONCLUSION</u>

For the foregoing reasons, Samsung respectfully requests that Apple's motion be denied.

DATED: November 19, 2013          QUINN EMANUEL URQUHART &
                                  SULLIVAN, LLP


                                       */s/ Victoria Maroulis*
                                       Charles K. Verhoeven
                                       Kevin P.B. Johnson
                                       Victoria F. Maroulis
                                       William C. Price
                                       Attorneys for SAMSUNG ELECTRONICS CO., I
                                       SAMSUNG ELECTRONICS AMERICA, INC., a
                                       SAMSUNG TELECOMMUNICATIONS
                                       AMERICA, LLC

---

Devices as meeting certain limitations constituted an allegation and put Apple on notice that these same portions qualified as equivalents thereof.