1  QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
2  Charles K. Verhoeven (Bar No. 170151)
   charlesverhoeven@quinnemanuel.com
3  50 California Street, 22nd Floor
   San Francisco, California 94111
4  Telephone: (415) 875-6600
   Facsimile: (415) 875-6700
5
   Kevin P.B. Johnson (Bar No. 177129)
6  kevinjohnson@quinnemanuel.com
   Victoria F. Maroulis (Bar No. 202603)
7  victoriamaroulis@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
8  Redwood Shores, California 94065
   Telephone: (650) 801-5000
9  Facsimile: (650) 801-5100

10 William C. Price (Bar No. 108542)
   williamprice@quinnemanuel.com
11 865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
12 Telephone:  (213) 443-3000
   Facsimile:  (213) 443-3100
13
   Attorneys for SAMSUNG ELECTRONICS
14 CO., LTD., SAMSUNG ELECTRONICS
   AMERICA, INC. and SAMSUNG
15 TELECOMMUNICATIONS AMERICA, LLC

16

UNITED STATES DISTRICT COURT

17

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED THEORIES AND CLAIM CONSTRUCTIONS**<br><br>Date:  December 10, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Honorable Paul S. Grewal<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I. APPLE'S EXPERTS' OPINIONS SHOULD BE STRICKEN BECAUSE APPLE DID NOT RESPOND TO INTERROGATORY 46 ............................................................... 1

    A. Apple's Experts Did Not Use Plain Meaning ............................................................ 1

    B. Apple Did Not Disclose Its Claim Constructions in Response to Interrogatory 12 ............................................................................................................ 4

    C. Samsung Was Prejudiced By Apple's Failure To Disclose Claim Construction Positions ................................................................................................ 8

    D. Apple's Other Excuses for Failing to Responding to Interrogatory 46 Are Not Persuasive ............................................................................................................ 9

        1. Apple Never Served a Similar Claim Construction Interrogatory on Samsung ............................................................................................................ 9

        2. Apple's Response Was Far From Justified ................................................. 10

II. DR. STORER'S OPINIONS ARE CONTRARY TO THE COURT'S CONSTRUCTIONS .................................................................................................... 11

III. APPLE'S RESPONSE DEMONSTRATES THAT IT DID NOT DISCLOSE THE NON-INFRINGEMENT THEORIES IN DR. FUJA'S EXPERT REPORT .................... 12

    A.

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart identifying Remaining Issues In Motions to Strike, Dkt. 1056** .......... 13

    C. ........................................................................................................................... 14

IV. CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Atmel Corp. v. Info. Storage Devices, Inc.*,
 1998 WL 775115 (N.D. Cal. 1998) ................................................................................... 14

*DIRECTV, Inc. v. Puccinelli*,
 224 F.R.D. 677 (D. Kan. 2004) ......................................................................................... 8

*Epistar Corp. v. Int'l Trade Comm'n*,
 566 F.3d 1321 (Fed. Cir. 2009) ......................................................................................... 2

*Gonzales v. City of Albuquerque, No. CIV 09-0520*,
 2010 WL 553308 (D.N.M. Feb. 9, 2010) .......................................................................... 4

*Michilin Prosperity Co., Ltd. V. Fellowes Mfg. Co.*,
 2006 WL 1441575 (D.D.C. May 23, 2006) .................................................................... 10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
 467 F.3d 1355 (Fed. Cir. 2006) .................................................................................. 13, 14

*Omega Eng'g v. Raytek Corp.*,
 334 F.3d 1314 (Fed. Cir. 2003) ......................................................................................... 2

*Phillips v. AWH*,
 415 F.3d 1303 (Fed. Cir. 2005) ...................................................................................... 1, 2

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
 726 F.3d 1306 (Fed. Cir. 2013) ......................................................................................... 2

*White v. Dunbar*,
 119 U.S. 47 (1886) ............................................................................................................ 1

*Whitserve LLC v. Computer Patent Annuities N. Am., LLC*,
 No. 04-1897, 2006 WL 1273740 (D. Conn May 9, 2006) .............................................. 10

*Williams v. Sprint/United Management Co., No. CIVA 03-2200*,
 235 F.R.D. 494 (D. Kan. 2006) ......................................................................................... 4

## Statutes

Fed. R. Civ. P. 37(b) .................................................................................................................... 1

Fed. R. Civ. P. 37(c)(1) ............................................................................................................... 1

Fed. R. Civ. P. 37(d) .................................................................................................................... 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. APPLE'S EXPERTS' OPINIONS SHOULD BE STRICKEN BECAUSE APPLE DID NOT RESPOND TO INTERROGATORY 46

Apple *admits* that it did not provide a substantive response to Samsung's Interrogatory 46. (Opp. at 2-3.) Apple argues instead that it should somehow be excused from its discovery obligations. But Apple's excuses do not overcome the law: failure to disclose information in response to an Interrogatory can result in exclusion of the expert witness' testimony based on the undisclosed information. Fed. R. Civ. P. 37(c)(1), (b), and (d). Nor did Apple provide the information requested by Interrogatory 46 in its response to Interrogatory 12 as Apple now claims. Apple's should not be allowed to ambush Samsung with dozens of new claim constructions that should have been disclosed during discovery.

### A. Apple's Experts Did Not Use Plain Meaning

Apple's first excuse for why it failed to respond to Samsung's Interrogatory 46 is that its constructions are "plain and ordinary meaning." Tellingly, the first time Apple argued that its constructions were plain and ordinary meaning was *after* Samsung filed its motion to strike. Apple's response to Interrogatory 46 did not state its constructions were plain and ordinary meaning (Mot., Ex. 1 at 52-53). And during the meet and confer process, Apple never once stated that it would not respond to Interrogatory 46 or that its response was complete because its constructions are plain and ordinary meaning. Rather, Apple took the position that the parties should confer on a schedule for further claim construction. Now, after Samsung filed its motion, Apple suddenly takes the position that it did not have to respond because it is just applying plain meaning. This argument is simply not credible.

The elaborate and detailed constructions in Apple's expert reports go far beyond "plain and ordinary meaning." These constructions improperly change the meaning of the words in the claims such that they are unrecognizable to the public. *See Phillips v. AWH*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (it is "unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its [claim] terms.") (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)). In fact, Apple devotes almost a third of its opposition to identifying very

1  specialized constructions for terms from all 5 patents that Apple claims are "implicit" in its non-
2  infringement Interrogatory responses. (Opp. at 4-11.)  A cursory review of these "implicit"
3  constructions, to the extent any can be discerned, reveals that they are anything but plain meaning.
4       Black letter patent law dictates that plain and ordinary meaning is the meaning that one of
5  ordinary skill in the art would give a claim term while *reading the specification*.  *Phillips*, 415
6  F.3d at 1321 ("Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the
7  ordinary artisan after reading the entire patent.")  Many of the constructions that Apple's experts
8  rely on in their reports contradict and are inconsistent with the specification and therefore cannot
9  be plain and ordinary meaning.  For example, Dr. Fuja opines that a "control SDU" must be
10 generated at a higher layer than the layer that creates MAC-e PDUs.  (Mot., Ex. 6 ¶ 442.)  This
11 construction *contradicts* the specification that states that the "control service data unit (SDU)
12 include[es] control information of a MAC-e layer."  (Dkt. 0811-01 ('596 patent), Abstract.)  Dr.
13 Fuja's construction does not allow for the control SDU to be generated at the MAC-e layer, but
14 the '596 specification clearly states that the control information can be generated from the MAC-e
15 layer.  A construction that contradicts the specification cannot be plain and ordinary meaning.  *See*
16 *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1320 (Fed. Cir. 2013) ("We cannot
17 look at the ordinary meaning of the term[] in a vacuum.  Rather, we must look at the ordinary
18 meaning in the context of the written description.") (citations omitted).
19      Apple's experts also rely on the doctrine of prosecution history disclaimer to construe the
20 terms of Samsung's patents.  However, the Federal Circuit has stated that a "[a] heavy
21 presumption exists that claim terms carry their full ordinary and customary meaning, *unless* it can
22 be shown the patentee expressly *relinquished* claim scope."  *Epistar Corp. v. Int'l Trade Comm'n*,
23 566 F.3d 1321, 1334 (Fed. Cir. 2009) (citing *Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1323
24 (Fed. Cir. 2003) (emphasis added).  Apple's prosecution history disclaimer arguments alone
25 demonstrate that Apple's constructions are not plain and ordinary meaning.  For example, Dr.
26 Storer makes *a prosecution history disclaimer* argument to craft a specialized meaning for "video
27 capture module" in the first limitation of claim 15.  (Mot., Ex. 8 ¶¶ 701-11.)  This construction is
28 not the plain and ordinary meaning of that term.

1        Apple and its expert also read in the Court's construction from "means for capturing,
2   digitizing and compressing. . ." in independent claim 1 into "a computer including a video capture
3   module to capture and compress video in real time" in claim 15.  This limitation is not a means-
4   plus-function claim.  (*Id.* at pg. 364 (emphasis added).)  These terms include some similar
5   language, but are by far not the same.  The Court found the corresponding structure for the claim 1
6   means plus function term is, in relevant part, "a <u>video card</u> having a *video capture module*."  (Dkt.
7   No. 447 at 64 (emphasis added).)  The term in claim 15, therefore, uses some of the language from
8   the Court's construction, but not the entirety of the Court's claim 1 construction.  In his rebuttal
9   report, Dr. Storer argues that "video capture module," which the Court found was *part* of the
10  corresponding structure for the means-plus-function limitation in claim 1, actually means "video
11  card having a video capture module."  Dr. Storer is plainly applying a very specialized (and
12  incorrect) meaning to the term "video capture module" that is not its plain and ordinary meaning.
13       Other examples are found in the rebuttal report of Dr. Storer regarding non-infringement of
14  Samsung's '449 patent.  Dr. Storer construes the term "list" as requiring 1) text and 2) a top-down
15  arrangement.  But the plain meaning of the word "list" does not exclude a list that carries over into
16  two or more columns, or a list of symbols rather than text.  In fact, in its Interrogatory responses
17  describing its invalidity contentions Apple cited purported prior art software including Windows
18  95, ArcSoft PhotoStudio, and Apple's own PhotoFlash.  Each of these software programs displays
19  a grid of thumbnails, not a top-down list of text.  Therefore, Apple's invalidity contention
20  appeared consistent with the plain meaning of the term "list."  However, at the same time, Apple
21  argued in its response to non-infringement Interrogatory 12 that the "Camera Roll" view in the
22  accused products—which consists of a grid of thumbnails—is not a list.  Apple's response to
23  Interrogatory 12 did not provide a proposed construction for the term "list" and did not explain,
24  explicitly or implicitly, why Apple contended that a thumbnail grid met the claim element in the
25  prior art but not in the accused products.  This type of inconsistency is what led Samsung to serve
26  Interrogatory 46.
27       While Apple now argues that its experts applied the "plain meaning" of terms not
28  construed by the Court, its response to Interrogatory 46 also objects to the phrase "meaning other

than plain meaning" as ambiguous. Apple never sought clarification from Samsung regarding how the phrase should be interpreted. Had it done so, Samsung would have stated the obvious—that the Interrogatory calls for any construction that differs from the plain meaning a non-technical juror would apply to a term. Similarly, Apple now argues that its answers to Interrogatory 46 should be implied from its response to Interrogatory 12. However, an incorporation by reference requires an explicit incorporation of one Interrogatory response into another. *See Gonzales v. City of Albuquerque*, No. CIV 09-0520, 2010 WL 553308, at *9 (D.N.M. Feb. 9, 2010) ("Responses to interrogatories must be self-contained within each Interrogatory answer and the Court finds that the Plaintiffs are entitled to a response specific to [this] Interrogatory . . . Defendants must not merely refer to the answer [to] another Interrogatory."); *see also Williams v. Sprint/United Management Co.*, No. CIVA 03–2200, 235 F.R.D. 494 at 501 (D. Kan. 2006) (granting motion to compel supplemental answer to Interrogatory where Plaintiffs incorporated by reference answers to other interrogatories because "Plaintiffs must indicate with specificity where the information can be found"). Indeed, Apple itself recognized this rule. (*See* Ducca Ex. 3, 7/15/13 Apple's Supp. Resp. to Interrogatory No. 16 at 3 ("Apple incorporates by reference its response to Interrogatory No. 12").) Therefore, responding to Interrogatory 12 did not relieve Apple from its obligations to also respond to Interrogatory 46. Yet Apple did not incorporate its response to Interrogatory 12 to its response to Interrogatory 46. Had it done so, Samsung would have objected because Apple's response to Interrogatory 12 does not disclose all proposed constructions. There can be no doubt that Apple made a deliberate strategic choice not to provide any substantive answer to Interrogatory 46. It withheld its claim construction proposals and waited to receive the infringement reports of Samsung's experts after the end of fact discovery. It then offered elaborate claim constructions—for the first time—in its rebuttal expert reports. The Court should not condone such gamesmanship.

### B. Apple Did Not Disclose Its Claim Constructions in Response to Interrogatory 12

Apple spends a nearly eight pages of its opposition pointing to its response to the "claim constructions" it claims to have provided in response to Samsung's Interrogatory 12. Apple's

1  responses to Interrogatory 12 were anything but clear and complete recitations of its claim
2  constructions to put Samsung on notice of Apple's claim construction positions.  Furthermore, as
3  in the example of the term "list" discussed above, Apple took claim constructions positions that
4  were *inconsistent* with its response to Interrogatory 12.  This was the very reason Samsung served
5  this Interrogatory – to obtain Apple's claim construction proposals and to prevent Apple from
6  changing its positions after the close of discovery.

7    ***First***, Apple set forth inconsistent claim construction positions in its invalidity contentions
8  and its responses to Interrogatory 12.  Faced with these inconsistent positions, Samsung served
9  Interrogatory 46 to clarify Apple's positions prior to expert discovery.  For example, Apple's
10 opposition identifies the following response from Interrogatory 12 as purporting to identify
11 Apple's claim construction for the "control SDU" limitation for the '596 patent:

> Samsung also has not shown that, in the Accused Products, a data unit containing control information is received from a higher layer and thus constituting an "SDU."

(Opp. at 8.)  Apple's invalidity contentions, however, state that certain prior art references meet the "control SDU" limitation because the multiplexing sublayer that forms the MAC-e PDU combines information from various sources to form the claimed "control SDU."  (Ducca Ex. 1 (Exhibit B-03 to Apple's Invalidity Contentions) at 4-5.)   Thus, in one discovery response Apple claimed that a "control SDU" must come from some higher layer but in another discovery response Apple claimed that a "control SDU" is formed at the same layer that forms the MAC-e PDU.  A response from Apple to Interrogatory 46 would have resolved these inconsistencies.

  Similarly, Dr. Storer did not consistently apply the '239 patent constructions Apple identified in claim 12 in his invalidity and non-infringement expert reports.  In Interrogatory 12, Apple did not articulate its constructions, and instead pointed to vague software sequences allegedly disclosed in large parts of the specification.  Dr. Storer failed to identify these software sequences in his expert reports, instead broadly stating that the prior art disclosed them, and the accused products did not include them – without ever defining what these constructions were. *See, e.g.*, Mot. Ex. 7, Storer invalidity report ¶¶705 (failing to identify what software steps are supposedly anticipated); 719 (vaguely referring to "a software sequence used in typical modem

1  communications"); 724-725 (failing to identify what "Host Boot Software Sequence D" entails).
2  To the contrary, Dr. Storer states unequivocally in his noninfringement report that the accused
3  products cannot include these undefined software structures that he alleged were so obviously
4  included in the prior art.  *See, e.g.* Mot. Ex. 8, Storer noninfringement report ¶¶ 587-588, 666.

5     *Second*, Apple's experts took claim construction positions that were inconsistent with the
6  positions Apple set forth in response to Interrogatory No. 12.  For example, Apple took a shifting
7  sands approach to claim constructions when Dr. Storer took the position that the "means for
8  storing the composite signal received by the host unit" is a hard disk drive and nothing more.
9  Storer invalidity report at ¶669.  In Interrogatory 12, however, Apple took the position when
10 crafting noninfringement positions that it is a hard disk drive and the software identified at 11:5-8,
11 12:19-22, and 12:48-51.

12    *Third*, it is not possible to divine Apple's construction positions from its response to
13 Interrogatory 12, which is vague and minimal by design.  Even Apple admits that any claim
14 constructions that were provided in its response to Interrogatory 12 were "implicit."  (Opp. at
15 3:18-22.)  Interrogatory 46 did not call for hidden or implicit claim constructions; it called for
16 explicit claim constructions.

17    Apple's response did not provide a single claim construction proposal.  For example,
18 Apple's opposition identifies the following response from Interrogatory 12 as purporting to
19 identify Apple's claim construction for the "N" limitation for the '596 patent:

20    to the extent any Intel or Qualcomm function generates an N field, it does not represent
       "the number of uplink packet data" included in the MAC-es PDU"
21
22 (Opp. at 9.)  Apple's boilerplate response to Interrogatory 12 was merely a simple recitation that
23 the '596 claim limitations of the asserted claims were not met and did not disclose the construction
24 that Dr. Fuja ultimately relied on in his rebuttal non-infringement expert report:  an N field refers
25 to the number of bits or bytes of data.  (Mot., Ex. 6 at ¶¶ 421-435.)

26    For the '757 patent, Apple argues that Interrogatory No. 12 disclosed its claim construction
27 requiring that all of a user's multimedia data must be synchronized or updated on the central and
28 zone devices.  However, Apple subtly shifts the supposed disclosures made in this interrogatory

1  response.  Apple's response states several times that this limitation requires only a user have
2  "access" to multimedia data on other devices, or that the data be "available."  *See, e.g.,* Opp., Ex. 3
3  (7/15/13 Apple's Response to Samsung Rog. 12), 70:18-28 ("iTunes in the Cloud does not allow
4  for updates from the zone specific storage and interface device to the central storage and interface
5  device, and thus does not provide **access** to all the audio, video, or photographic data related to the
6  user in any zone.") (emphasis added); *id.* at 72:5-12 ("Moreover, as explained above, the claim
7  requires that the audio, video, or photographic data … must be made **available** on all the zone
8  specific storage and interface devices as a result of the 'update[].'")  Having data be accessible or
9  available for synchronization is different from saying that **all** the user's data must actually be
10 synchronized across all devices.  Apple's supposed support for the "capable of storing or
11 interfacing" limitation is even more ambiguous, as Apple seems to cite language related to entirely
12 different limitations to indicate it disclosed its theories.  *See* Opp. at 6-7 (citing discussion
13 regarding the "updated in relation to" and "situated in any one of the zones" limitations).  Finally,
14 Apple cites only to statements describing **Samsung's** position on the meaning of "at least one
15 user" as inferential evidence that Apple's position was different.  But Apple neither confirmed nor
16 denied that the term "at least one user" actually required a particular user, and made several
17 noninfringement arguments in reliance on Samsung's construction.  Dr. Taylor's report was the
18 first time Apple presented these claim construction positions.

19     For the '449 patent claim term "classification," Apple's opposition suggests that its claim
20 construction is implied in the following sentence: "In any event, none of the accused products has
21 circuitry that records the identification of an image's corresponding Album when the image is
22 captured.  All captured images and videos are stored in the default Camera Roll, not in an Album."
23 But nothing in the foregoing text explicitly or implicitly discloses that Apple construes the term
24 "classification" as excluding classifications based on the device used to capture images, or
25 classifications with names that cannot be edited,[1] or those that contain images until they are

---

[1]  In an embodiment described in the '449 patent, the classification names are simply the numbers 1 through 5, and those names cannot be edited.

1  deleted from a device.  Apple's response to Interrogatory 12 merely discloses its position that the
2  Camera Roll is not a classification.  It does not disclose why.  Samsung served Interrogatory 46 to
3  learn why, but Apple never disclosed that information.  Apple's experts cannot now rely on that
4  withheld information.

### C. Samsung Was Prejudiced By Apple's Failure To Disclose Claim Construction Positions

Samsung was significantly prejudiced by Apple's non-disclosure.  Apple's entire opposition rests on the sole position that it responded to Samsung's non-infringement Interrogatory 12, and therefore Samsung was on notice and was not prejudiced from Apple's failure to respond to Interrogatory 46.  However, it is not Samsung's burden to review the hundreds of pages that make up Apple's responses to Samsung's 50 interrogatories to somehow glean Apple's admittedly "implicit[]" constructions to the asserted claims and to speculate about every claim construction argument Apple may make.  *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680-81 (D. Kan. 2004) ("Plaintiff may not merely refer Defendants to other pleadings or [Interrogatory] disclosures hoping that Defendants will be able to glean the requested information from them.").

Apple claims that Samsung's experts knew about Apple's constructions and responded to these positions in their expert reports.  Simply because Samsung's experts may have *attempted* to respond to potential claim constructions that they pieced together from the evidence they reviewed does not mean Samsung's experts had a *meaningful* opportunity to respond and address Apple's constructions.  For example, Dr. Min thought that Apple may argue that the Accused Apple Products do not infringe the term "control information"                                   
                                          (Opp., Ex. 11 ¶ 1138), but Dr. Min did not know that Dr. Fuja would rely on an undisclosed construction of "control information" that
                    Unsurprisingly, Apple does not even point to where Dr. Min provided opinions related to Dr. Fuja's construction of the "N field" representing the number of bits or bytes contained in the MAC-es PDU.  Dr. Min was therefore denied the chance to respond to Dr. Fuja's claim construction positions because Apple failed to respond to Interrogatory 46.

With respect to the '239 patent, it is still not clear what claim constructions Apple is proposing. For example, Apple identified certain portions of the '239 specification that are allegedly part of the structure of the means-plus-function claim terms. But Apple did not define what software structures these are supposed to include. Dr. Storer renders only vague and conclusory opinions to state that (1) the patents are invalid because these undefined software structures are disclosed or inherent in the prior art; and (2) the claims are not infringed because the software structures are not in the accused products. Without defining these alleged software structures, Apple has created a moving target that it can use to broadly assert invalidity and noninfringement positions under whichever interpretation it chooses before trial.

Finally, Apple does not even attempt to argue that Dr. Schonfeld knew of Apple's claim construction positions with respect to the '757 patent.

Apple did not even make a good faith effort to respond to Samsung's interrogatory. Instead, Apple made a deliberate decision to prejudice Samsung by withholding its claim construction positions. Samsung was prejudiced, as Samsung was hindered in its ability to understand and respond to these constructions, while Apple remained free to shift and modify its claim construction positions in its expert reports. Apple's post hoc explanation of why Samsung has suffered no prejudice is without merit.

**D.   Apple's Other Excuses for Failing to Responding to Interrogatory 46 Are Not Persuasive**

**1.   Apple Never Served a Similar Claim Construction Interrogatory on Samsung**

Another Apple excuse for failing to respond to Samsung's Interrogatory 46 is that it attempted to compromise with Samsung. Apple's so-called "compromise" was no compromise at all. (Opp. at 2-3.) Apple never served a similar claim construction argument on Samsung. Apparently regretting its decision, Apple's "compromise" required Samsung to provide a response to such a non-existent Interrogatory anyway—in addition to responding to the 50 interrogatories that Apple already served Samsung. This "compromise" would effectively have given Apple a free pass to serve an extra Interrogatory on Samsung when it had already exhausted its

1  Interrogatory limit.  It is no surprise that Samsung rejected this "offer" since Samsung had already
2  fully responded to the 50 interrogatories Apple was permitted to serve on Samsung.  Apple's
3  attempt to "compromise" does not relieve Apple of its discovery obligations.

### 2. Apple's Response Was Far From Justified

Yet another Apple excuse for not responding to Samsung's Interrogatory 46 is that the local rules relieve Apple of its duty to respond to such an Interrogatory.  This is a misapplication of the local rules.  The local rules provide a timeline for disclosure related to the *Markman* process.  However, Courts have regularly compelled parties to respond to claim construction interrogatories *even when* the court's scheduling order sets forth deadlines for *Markman*.  *See, e.g., Whitserve LLC v. Computer Patent Annuities N. Am., LLC*, No. 04-1897, 2006 WL 1273740, *1-2 (D. Conn May 9, 2006) (granting motion to compel answers to claim construction Interrogatory prior to filing claim construction briefs).  Apple cannot hide behind the local rules to justify its failure to respond to Interrogatory 46.

Further, Apple misapplies the agreement between the parties.  The agreement the parties reached regarding the disclosure of claim constructions was related to the *Markman* process to limit the number of terms presented at the hearing.  This agreement, however, was limited to only the *Markman* process.  While Apple may feel that service of an Interrogatory requiring Apple to disclose its claim constructions is "unnecessary," (Opp. at 18) the Interrogatory is nonetheless undeniably relevant and compliant with Rule 33.  *See, e.g., Whitserve*, No. 04-1897, 2006 WL 1273740, at *1-2 (holding that the opposing party's interpretation of patent claims is clearly relevant and interrogatories asking for legal conclusions or opinions are permissible).  What Apple fails to appreciate is that claim construction is not intended *only* for the *Markman* process and Apple cannot point to anything in the Court's scheduling order or the local rules that makes such a limitation.  *See, e.g., Michilin Prosperity Co., Ltd. V. Fellowes Mfg. Co.*, 2006 WL 1441575 at *2 (D.D.C. May 23, 2006) (finding that nothing in the court's supplemental scheduling order suggested reserving claim construction only to *Markman* proceedings).  Indeed, it was *Apple*, not *Samsung* that proposed a separate *Markman* hearing before trial thereby admitting that additional claim construction is needed**.**

## II. DR. STORER'S OPINIONS ARE CONTRARY TO THE COURT'S CONSTRUCTIONS

As explained in Samsung's opening brief, Dr. Storer also applied constructions that are contrary to the Court's *Markman* constructions.  Apple first accuses Samsung of violating the Court's scheduling order based on this portion of Samsung's motion to strike because the opinions sought to be stricken overlap with Samsung's *Daubert* motion.  This is incorrect.  In its motion to strike, Samsung seeks to strike Dr. Storer's opinions applying claim constructions that differ from the constructions issued by the Court.[2]  That Dr. Storer's opinions also run afoul of *Daubert* and are not reliable does not preclude Samsung from moving to strike them in its present motion.  The cases cited by Apple are inapplicable because they either: (i) strike portions of motions that exceed the 25 page limit (Opp. 19, *Sanders*); or (ii) strike late filed motions *in limine* on the eve of a pretrial conference after repeated delays and continuances.  (Opp. 19, *Adams*.)  Samsung's motion to strike is undoubtedly timely, and Apple filed its own motion to strike on the same date.  (*See* Dkt. No. 877.)

Second, Apple's comment about what is and is not a claim term is irrelevant because Dr. Storer used modified claim constructions—including alternative functions and corresponding structures—and ignored the Court's guidance on the term, "modem."  The fact that certain terms in the Court's constructions are not claim terms does not permit Dr. Storer to substitute different terms and definitions into the Court's claim constructions.  Apple had the opportunity to propose whatever claim constructions it wanted.  Whether he is happy with that or not, Dr. Storer must now "adhere to the Court's claim constructions and must not apply alternative claims constructions." (Mot. at 16 (citing *Dynetix* and *EZ Dock*).)  Nor is Dr. Storer permitted to now reconstrue the Court's already issued constructions.  *Id*.

Third, Samsung is not seeking to prevent Dr. Storer from testifying as to background, technology, or the operation of components.  However, Dr. Storer should not be permitted to apply

---

[2] This is analogous to Apple moving to strike portions of Samsung's infringement reports for allegedly not adhering to Samsung's prior infringement contentions.  Both motions to strike seek to preclude testimony that is allegedly contrary to prior assertions and rulings in the case.

1  modified claim constructions to terms that have already been construed in order to support his
2  noninfringement opinions.  In fact, the paragraphs cited by Samsung (excerpts of which were
3  included in Samsung's motion) are from the section of Dr. Storer's report that provides Dr.
4  Storer's noninfringement arguments.  (Ducca Decl., Ex. 2 at 273) (Section "G.  The Accused
5  Products Do Not Infringe the Asserted claims of the '239 Patent" spans ¶¶ 528-714.)  They are not
6  from his background section.

7  Apparently realizing that it is indeed reconstruing the Court's construction, Apple argues
8  that Dr. Storer's modified constructions are correct.  These explanations further demonstrate how
9  Dr. Storer's opinions differ from the Court's constructions.  For example, Dr. Storer substitutes
10 "hardware port" for "port" in the Court's corresponding structure for "means for transmitting said
11 composite signal."  As explained in Samsung's initial motion, the time for presenting these claim
12 constructions was during the *Markman* process.  Having missed this opportunity, Apple and Dr.
13 Storer should be precluded from offering them now and should also be precluded from offering
14 noninfringement opinions premised on these modified constructions.

15 Finally, for "modem," Apple's opposition misses the point completely.  Dr. Storer failed to
16 apply the guidance from the Court's *Markman* order (Dkt. 447 at 60 n.13) in his infringement
17 analysis.  During his deposition, Dr. Storer agreed that the Court accurately described a modem
18 (Mot. at 10-11)  In the *very next question*, Samsung asked Dr. Storer "And is that the meaning of
19 modem that you applied in your reports?"  (Mot. at 10.)  And Dr. Storer responded "So I guess the
20 answer would have to be *'no'* in the following sense . . ."  (Mot. at 11.)  Contrary to Apple's
21 assertion, it is *Apple* that is mischaracterizing and omitting relevant testimony from Dr. Storer
22 about modems in order to confuse the issues and attempt to obscure Dr. Storer's improper
23 opinions.  Rather than apply the Court's definition of modem, Dr. Storer utilized an alternative,
24 construction and admitted as much during his deposition.  These opinions should be stricken.
25 **Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**
26
27
28

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

1 **Portion is withdrawn with prejudice by agreement of the parties, as indicated in the Joint Chart Identifying Remaining Issues In Motions to Strike, Dkt. 1056**

## IV. CONCLUSION

For each of the foregoing reasons, Samsung respectfully requests that the Court grant this motion, and strike the challenged portions of Apple's expert reports and related testimony.

DATED:  November 26, 2013            QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP


                                     By */s/ Victoria F. Maroulis*
                                        Charles K. Verhoeven
                                        Kevin P.B. Johnson
                                        Victoria F. Maroulis
                                        William C. Price
                                        Michael L. Fazio

                                        Attorneys for
                                        SAMSUNG ELECTRONICS CO., LTD.,
                                        SAMSUNG ELECTRONICS AMERICA, INC.,
                                        and SAMSUNG TELECOMMUNICATIONS
                                        AMERICA, LLC