JOSH A. KREVITT (SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

HAROLD J. McELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
JACK W. LONDEN (CA SBN 85776)
jlonden@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
RUTH N. BORENSTEIN (CA SBN 133797)
rborenstein@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-752

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br>Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br>Counterclaim-Defendant. | Case No. 5:12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED CLAIM CONSTRUCTIONS**<br><br>Date:     February 20, 2014<br>Time:    1:30 p.m.<br>Place:   Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh<br><br>**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 3

    A.      The Court-Ordered *Markman* Process ........................................................ 3

    B.      Samsung's Interrogatory No. 46 .................................................................. 4

    C.      Apple's Response to Interrogatory No. 46 and the Parties' Subsequent
        Meet and Confer Efforts ............................................................................. 5

    D.      Apple's Response to Interrogatory No. 12 .................................................. 5

    E.      Expert Reports and Discovery .................................................................... 6

    F.      Judge Grewal's Denial of Samsung's Motion to Strike ............................. 8

III.    ARGUMENT ........................................................................................................... 9

    A.      Apple's Response to Interrogatory No. 46 was "Substantially Justified." .. 9

        1.      Apple Properly Objected to Interrogatory No. 46—Which Conflicted
            With This Court's Case Management Order ........................................... 9

        2.      Apple Had No Obligation to Disclose Its Understanding of Terms That
            It Believed Were Entitled to Their Plain Meaning ............................... 10

    B.      Samsung Did Not Suffer Any Prejudice .................................................... 15

        1.      Interrogatory No. 12 Disclosed Apple's Constructions for the Means-
            Plus-Function Limitations of the '239 Patent ....................................... 16

        2.      Interrogatory No. 12 Sufficiently Disclosed Apple's Plain Meaning
            Constructions ........................................................................................ 17

        3.      Samsung's Cries of Prejudice Are Unfounded ..................................... 23

IV.     CONCLUSION ...................................................................................................... 25

1

## **TABLE OF AUTHORITIES**

2
**Page(s)**

3
**CASES**

4
*Aventis Pharms. Inc. v. Amino Chemicals Ltd.*,
    715 F.3d 1363 (Fed. Cir. 2013) ..................................................................... 14

5

6
*Carnathan v. Ohio Nat. Life Ins. Co.*,
    No. 1:06-CV-999, 2008 WL 4000392 (M.D. Pa. Aug. 25, 2008)................................... 10

7
*E-Pass Techs., Inc. v. 3com Corp.*,
    No. C-00-225, 2006 U.S. Dist. LEXIS 95914 (N.D. Cal. Mar. 17, 2006) ................ 14-15

8

9
*Mettler-Toledo, Inc. v. B-Tek Scales, LLC*,
    671 F.3d 1291 (Fed. Cir. 2012) ..................................................................... 17

10

11
*Phillips v. AWH*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 12, 14

12

13
*Plantronics, Inc. v. Aliph, Inc.*,
    724 F.3d 1343 (Fed. Cir. 2013) ..................................................................... 13

**STATUTES**

14

15
35 USC §112.......................................................................................... 1, 17

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

In May 2012, the Court established a *Markman* procedure under which the parties could identify a maximum of ten claim terms for construction, including any means-plus-function terms.  Pursuant to that directive, the parties engaged in lengthy meet and confer efforts to reduce the number of disputed terms, and agreed that each party would propose five terms for construction.  The parties then extensively briefed the meaning of the disputed terms, and after oral argument in February 2013, the Court issued a 64-page Order in which it construed the terms that the parties had identified for construction.

Nearly two months later, and just a few weeks before the close of fact discovery, Samsung served a new interrogatory (No. 46) seeking Apple's constructions for "all claim terms that [Apple] contend[s] has a meaning other than plain meaning and should be construed by the Court," including "any claim term which [Apple] contend[s] should be governed by 35 USC Section 112(6)."  Apple timely objected because, among other things, that new interrogatory—which asked Apple to identify all terms that it "contends … should be construed by the Court"—conflicted with the *Markman* procedure the Court had already completed for identifying and construing disputed terms.  Subsequently, the parties met and conferred regarding whether additional claim construction proceedings might be warranted, but they could not reach agreement on that issue, and Samsung never moved to compel any further response to Interrogatory No. 46.  The parties then served expert reports, conducted expert discovery, and are now preparing for the trial scheduled to start in just two months.

Largely ignoring this history, Samsung's motion asks to strike substantial portions of Apple's noninfringement and invalidity expert reports—solely because Apple objected to Interrogatory No. 46.  The Court should reject that extreme request for several reasons.

*First*, Interrogatory No. 46 merely asked Apple to identify terms that it "contends . . . should be construed by the Court."  But because the time to identify terms for construction had expired many months earlier, Apple correctly objected to Interrogatory No. 46 as an improper effort to bypass this Court's strict procedures governing the *Markman* process—as Samsung implicitly admitted at the time by never seeking to compel a further response.  The

motion should be denied on this ground alone.  In fact, that is precisely the reason that Judge Grewal recently denied this motion—because it would require him "to construe more terms than the presiding judge elected to consider"—and is consistent with the Court's even more recent observation that "the Court here, based on the parties' prior selection of terms in need of construction, has left many of the terms at issue to their plain and ordinary meaning."

**Second**, throughout its motion, Samsung repeatedly suggests that Interrogatory No. 46 asked Apple to propose constructions for every claim term of every patent that the parties and their experts now appear to dispute.  But on its face, Interrogatory No. 46 is directed to a much more narrow set of terms:  those that Apple **subjectively believed** have "a meaning **other than plain meaning**."  As such, Apple had no obligation to identify **any** of the non-means-plus-function claim terms that Samsung has raised in its motion—because Apple believed at the time, and continues to believe today, that each of those terms is entitled to its plain and ordinary meaning.  That result does not change simply because Samsung and its experts apparently believe that a different meaning should apply.

Nor can Samsung justify its motion based on sweeping generalities merely alleging nondisclosure.  Rather, given the **purely subjective** nature of Interrogatory No. 46, Samsung must allege for **each term at issue** that Apple had no good faith basis to believe that its construction was plain meaning, and the Court would need to construe **each of those terms** to assess Samsung's allegations.  There is no reason for the Court to undertake that onerous task given the complete lack of evidence showing any bad faith on Apple's part, and given Samsung itself has not identified even a single term at issue that it contends should have something other than its plain meaning.

**Third**, in an attempt to manufacture the appearance of prejudice, Samsung alleges that Apple's response to Interrogatory No. 46 somehow prevented it from testing Apple's claim construction positions during fact discovery.  But because Samsung waited until just a few weeks before the close of fact discovery to serve Interrogatory No. 46, Apple's response was not even due until the **last day** of fact discovery—meaning, that Samsung had no ability at the time to probe that timely response (or any other response) with further fact discovery.

Samsung also repeatedly contends that it suffered harm because Apple supposedly "made a deliberate and strategic decision to withhold its constructions until it served its expert reports."  But on the **same day** that it served objections to Interrogatory No. 46, Apple also served a 206-page supplemental response to Interrogatory No. 12, in which it provided a detailed update of its noninfringement positions—with vastly more detail than Samsung had provided in its required infringement contentions.  For each means-plus-function term of the asserted patents, Apple identified the claimed function and corresponding structure for the limitation:  the **same** information that Samsung sought for those terms in Interrogatory No. 46.  And although it had no obligation to do so, Apple identified the plain meaning that it attributed to most of the other claim terms at issue here as well.

There is no question that Apple's detailed noninfringement contentions put Samsung and its experts on full notice of Apple's understanding of the claims.  In their expert reports, Samsung's experts quoted from and directly responded to **all** the means-plus-function constructions that Apple had identified in response to Interrogatory No. 12, and to **nearly all** of Apple's plain meaning constructions.  During expert discovery, Samsung then extensively questioned Apple's experts about those meanings at their depositions.  Simply put, Samsung has long been aware of the plain meaning and means-plus-function constructions that it now complains about in its motion.

In sum, Samsung has asked this Court to take the extreme step of striking substantial portions of Apple's noninfringement and invalidity defenses on the eve of trial based on an improper interrogatory that Apple effectively answered.  That request should be denied, and at trial, Apple's experts should be permitted to compare the plain meaning of these claim terms to the accused products and prior art—consistent with the Court's recent ruling that the jury is "free to rely on the plain and ordinary meaning of [claim] terms."

## II.      BACKGROUND

### A.      The Court-Ordered *Markman* Process

In May 2012, the Court entered a Case Management Order pursuant to Patent Local Rule 4-1, in which it established a procedure for the parties to identify patent claim terms for

construction, and to brief and argue their respective positions.  (Dkt. 160 (setting disclosure, briefing, and *Markman* hearing schedule); Dkt. 259 (amending dates, but maintaining same *Markman* events).)  In that Order, the Court made clear that, during the *Markman* process, at most, it would construe only ten disputed terms across all asserted patents.  (Dkt. 160 at 2 ("max. 10 claim terms").)

In response, the parties met and conferred in an effort to narrow the number of terms in dispute, and agreed that each party would propose five terms for the Court to construe.  On April 10, 2013, the Court issued a 64-page Order construing the nine terms still in dispute (after the technology tutorial, the parties had reached agreement on the meaning of one disputed term).  (Dkt. 447.)

### B.    Samsung's Interrogatory No. 46

Samsung has never asked the Court to amend its Case Management Order to permit the parties to identify additional terms for construction.  Yet, on June 7, 2013—nearly four months after the *Markman* hearing, almost two months after the Court issued its *Markman* Order, and just weeks before the close of fact discovery—Samsung served Apple with Interrogatory No. 46, which states:

> For each asserted claim for each Samsung Patent, and each Apple Patents-in-Suit identify: (1) a list of all claim terms *that YOU contend has a meaning other than plain meaning and should be construed by the Court and identify any claim term which YOU contend should be governed by 35 USC Section 112(6)*; (2) YOUR construction *of each term identified for claim construction*, including for each term YOU contend is governed by 35 USC 112 (6), the structure(s), act(s), or material(s) corresponding to that term's function; and (3) *for each identified term*, all references from the specification or prosecution history that supports YOUR construction … .

(Dkt. 878-6 [Interrog. No. 46] at 51-52 (emphases added).)

Thus, the interrogatory asked Apple to identify additional terms that it *believed* the Court should construe—even though the parties had already proposed the maximum number of terms permitted under the Case Management Order, and even though the Court had already issued its *Markman* Order construing those terms.  For non-means-plus-function

terms, Interrogatory No. 46 was expressly limited to those terms that Apple *subjectively believed do __not__ have their plain meaning*. And for means-plus-function terms, it asked Apple to identify the terms along with their claimed functions and corresponding structures.

### C.   Apple's Response to Interrogatory No. 46 and the Parties' Subsequent Meet and Confer Efforts.

On July 15, 2013 (the last day of fact discovery), Apple timely served its response to Interrogatory No. 46.  Apple objected on multiple grounds, including because it "seeks to circumvent the claim construction procedures set forth in the Court's Local Patent Rules, and to the extent that this interrogatory seeks to impose obligations beyond those of the Federal Rules of Civil Procedure and this Court's Local Patent Rules."  (*Id.* at 52.)  Apple asserted that objection because the Court's Case Management Order had established a specific process for claim construction that had already concluded, and that did not allow the parties to identify any additional terms for construction.  Nonetheless, Apple further responded by noting that, "to the extent further claim construction proceedings are necessary, the parties can confer and address with the court at the appropriate time."  (*Id.* at 52-53.)

On July 18, 2013, the parties held a lead counsel meet and confer regarding Apple's response to Interrogatory No. 46, as well as numerous other discovery issues that remained open at the close of fact discovery.  (Kolovos Decl., ¶ 2, Ex. 1 [7/19/13 letter].)  The parties discussed making further claim construction disclosures on a reciprocal basis, but were unable to reach an agreement on that issue (though Samsung ultimately agreed that additional claim construction proceedings might be necessary).  (Dkt. 708 at 2-3.)[1]  Even so, Samsung never moved to compel a further response to Interrogatory No. 46.

### D.   Apple's Response to Interrogatory No. 12

On the same day that it responded to Interrogatory No. 46, Apple served a 206-page supplemental response to Interrogatory No. 12, in which it provided a detailed update of its

---

[1]     In its motion, Samsung suggests that only Apple later informed the Court that additional claim construction may be necessary.  (SBr. at 3.)  Samsung's own portion of the Joint Case Management Conference Statement confirms that is incorrect.  (Dkt. 708 at 3-4.)

noninfringement positions—even though Samsung's barebones infringement contentions were far less comprehensive.  (Dkt. 965-9 [Resp. to Interrog. No. 12].)  For each claim term that it was treating as a means-plus-function limitation, Apple specifically identified (i) the term, (ii) its claimed function(s), and (iii) the structures disclosed in the patent specifications corresponding to those claimed functions.  That supplemental response also identified and applied the plain meaning that Apple attributed to many of the claim terms at issue here.[2]

Samsung never moved to compel Apple to provide more information about the claim construction positions that Apple had identified in response to Interrogatory No. 12.

### E.     Expert Reports and Discovery

The parties served opening expert reports in August 2013, and rebuttal expert reports in September 2013.  In their reports—including opening reports—Samsung's experts made clear that they had read and understood the claim construction positions that Apple had detailed months earlier in its supplemental response to Interrogatory No. 12—by expressly responding to those constructions.  For instance, in his opening report for the '239 patent, Samsung's expert, Dr. Schonfeld, quoted constructions that he acknowledged were "taken from Apple's response to Samsung's Interrogatory 12" (Dkt. 965-19 [Schonfeld Rep.] ¶ 43), explained (across 38 paragraphs) why he disagreed with those constructions, and provided his own constructions for the same terms (that Samsung had never offered before) (*id*. ¶¶ 47-81).  Dr. Schonfeld also responded to Apple's plain meaning interpretation of "video capture module" in claim 15.  (*Id*. ¶¶ 1723-30.)

Likewise, in sections of his opening report captioned "Response to Apple Non-Infringement Arguments," Samsung's expert for the '449 patent, Mr. Parulski, specifically responded to the plain meaning claim construction positions that Apple had set forth in its supplemental response to Interrogatory No. 12—despite Samsung's present claim that each was a "new construction" that Mr. Parulski was not aware of at time.  (Kolovos Decl., Ex. 3 [Parulski Rep.] ¶ 128 ("Apple argues that the Accused Apple Products are not digital

---

[2]     These specific disclosures are discussed more fully below in Sections III(B)(1)-(2).

1    cameras, because the claimed 'digital camera' cannot be a system or device in which a

2    digital camera is merely a component part."), ¶¶ 216-17 ("As with the compressor limitation,

3    Apple argues that different components in the Accused Apple Products perform

4    decompression of photos and videos. . . . I note that the plain language of the claim does not

5    require that the 'decompressor' limitation must to [sic] correspond to a 'single

6    component.'"), ¶¶ 237-40 ("Nothing in the claims, specification or file history of the '449

7    Patent suggests that the claimed 'search mode' should exclude lists implemented as grids of

8    thumbnail images. . . . Finally, there is no support … to require that the claimed 'list …'

9    display the time or date the image or video was recorded to the user."), ¶ 248 ("[T]he

10   'Camera Roll' . . . corresponds to classification data. . . .").)

11       Similarly, the opening report of Samsung's expert, Dr. Min, addressed the plain

12   meaning claim constructions that Apple had applied in response to Interrogatory No. 12 for

13   the '087 and '596 patents.  (Dkt. 965-20 [Min Rep.] ¶¶ 686-87 ("I understand that Apple

14   argues that the Accused Products do not infringe claims 9 and 34 because Apple claims that

15   ██████████████████████████████████████████████████████

16   ███████████ ¶ 1137 ("I understand that Apple may argue that the Accused Apple Products

17   do not infringe because the ████████████████████████████████████████

18   ██████, ¶ 1138 ("I understand that Apple may argue that the Accused Products do not

19   infringe because Apple claims that the ████████████████████████████

20   ██████████████, ¶ 1143 ("I understand that Apple may argue that the Accused

21   Products do not infringe the asserted claims because the Accused Products do not

22   'concatenate' the MAC-e header and MAC-e payload."), ¶ 1144 ("I understand that Apple

23   may argue that the Accused Products do not infringe the asserted claims because the data

24   that forms the control service data unit (SDU) does not originate from a higher layer.").)

25       Samsung had more than sufficient opportunity to probe Apple's claim construction

26   positions during expert discovery, including the many hours that it spent asking Apple's

27   experts about the meaning of claim terms at their depositions.  For example, Samsung

28   questioned Apple's expert, Dr. Storer, about every limitation of the '449 patent at issue in its

1   motion.  (*See, e.g.,* Kolovos Decl., Ex. 4 [Storer Tr.] at 61:3-62:16 ("digital camera"), 84:8-

2   85:23 ("imaging device"), 99:13-101:21 ("compressor" and "decompressor"), 114:1-118:24

3   ("list"),  153:13-159:14 ("search mode"),  163:4-164:9 ("classification").  Samsung also

4   questioned Dr. Fuja, Apple's expert for the '596 and '087 patents, about the meaning of

5   terms he had opined should be accorded their plain meaning.  *See, e.g.*, Kolovos Decl., Ex. 5

6   [Fuja Tr.] at 94:9-97:6 ("receiver receiving"), 214:15-245:7 ("N field"), 245:19-254:9,

7   289:18-295:6 ("control SDU").

8          At no point during or after expert discovery did Samsung seek leave from the Court

9   to file a supplemental expert report on the basis that Apple had supposedly withheld its true

10  claim construction positions until after the service of expert reports.

11          **F.     Judge Grewal's Denial of Samsung's Motion to Strike**

12          In fact, Samsung waited until November 5, 2013 to first complain to the Court about

13  the sufficiency and timing of Apple's claim construction disclosures under Interrogatory No.

14  46—when it filed a motion seeking to strike portions of Apple's expert reports based on the

15  same arguments it raises here.  Judge Grewal denied that motion in light of the *Markman*

16  process that the Court established in its May 2012 Case Management Order, noting that a

17  resolution of the motion on the merits would require him to "construe more terms than the

18  presiding judge elected to consider."  (Dkt. 1127 at 9.)  Judge Grewal noted that "Samsung

19  is free to seek relief from Judge Koh if its concerns persist."  (*Id.*)  But Samsung's motion

20  goes well beyond the leave granted by Judge Grewal.  Although it is unclear precisely which

21  portions of Apple's expert reports Samsung seeks to strike, to the extent Apple can discern

22  from Samsung's proposed order,  Samsung seeks to strike nearly 500 paragraphs of Apple's

23  expert reports not included in its earlier motion to Judge Grewal.

24          Judge Grewal's ruling was consistent with the Court's recent ruling that, while it has

25  a "duty to resolve fundamental disputes regarding claim scope," it "fulfilled that duty when

26  it provided a thorough claim construction opinion earlier in these proceedings."  (Dkt. 1150

27  at 5-6.)  The Court also explained that, due to "the parties' prior selection of terms in need of

28  construction, [the Court] has left many of the terms at issue to their plain and ordinary

meaning," which is not an issue because the jury is "free to rely on the plain and ordinary meaning of terms."  (*Id.* at 6, 8.)

### III.    ARGUMENT

Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a court may impose sanctions that prohibit a party from using evidence at trial that it refused to disclose in violation of Rule 26(e), "unless the failure to disclose was substantially justified or is harmless."  According to Samsung, neither exception is present here because Apple refused to provide information in response to Interrogatory No. 46 without justification, and as a direct result, Samsung suffered extreme prejudice.  But Samsung is wrong on both counts.

As detailed below, Apple's response to Interrogatory No. 46 was "substantially justified."  Apple properly objected to that interrogatory as inconsistent with the *Markman* process that the Court had established and completed many months earlier—as Samsung implicitly conceded by never moving to compel a further response.  Moreover, by its own terms, Interrogatory No. 46 did not apply to *any* of the non-means-plus-function terms that Samsung has raised in its present motion because Apple subjectively believed then (and still believes today) that each of those terms has the plain meaning that a person of ordinary skill in the art would afford it in light of the intrinsic and extrinsic record.

Nor can Samsung establish prejudice—and certainly not the type of severe resulting harm required to justify its extreme requested sanctions.  On the same day Apple responded to Interrogatory No. 46, it served a lengthy supplement to Interrogatory No. 12 that provided Samsung with more than sufficient detail concerning Apple's interpretation of the asserted claims—a fact confirmed by Samsung's own expert reports, which addressed nearly all of those same claim construction positions at length.

Accordingly, the motion should be denied.

### A.    Apple's Response to Interrogatory No. 46 was "Substantially Justified."

#### 1.    Apple Properly Objected to Interrogatory No. 46—Which Conflicted With This Court's Case Management Order.

As a threshold matter, Samsung cannot prevail on its motion because Apple had no

obligation to provide ***any*** substantive response to Interrogatory No. 46—which merely asked Apple to identify those terms that it "contends . . . should be construed by the Court."  In its Case Management Order, the Court made clear that, at most, the parties could propose ten claim terms for construction.  Yet, by the time that Samsung served Interrogatory No. 46 in June 2013, the parties had already proposed that maximum number of terms, and the Court had already construed them—meaning that Apple had no basis to contend that ***any*** additional terms "should be construed by the Court" (absent amendment of the Case Management Order or other explicit leave from the Court).[3]

Apple also was justified in objecting to Interrogatory No. 46 in light of the parties' clear agreement that, in light of the Court's *Markman* procedure, they would only exchange proposed constructions for a small subset of terms (rather than for all disputed terms, as required by Patent Local Rules 4-1 and 4-2).  (Kolovos Decl., Ex. 6.)  Interrogatory No. 46 unilaterally and improperly sought to lift that argument—but only with respect to Apple.  Samsung should not be permitted to seek extreme sanctions based on an interrogatory that violated its own agreements.

Therefore, at the very least, Apple was "substantially justified" in objecting to Interrogatory No. 46 as an improper effort to avoid this Court's strict procedures governing the parties' ability to seek claim construction and its own negotiated agreements—as Samsung effectively admitted by never seeking to compel a further response.  *See Carnathan v. Ohio Nat. Life Ins. Co.*, No. 1:06-CV-999, 2008 WL 4000392, at *2 (M.D. Pa. Aug. 25, 2008) (denying motion to exclude evidence at trial when the moving party "knew there was an objection and did not pursue a motion to compel during the discovery process").

**2.     Apple Had No Obligation to Disclose Its Understanding of Terms That It Believed Were Entitled to Their Plain Meaning.**

---

[3]     The Court effectively expressed the same view when it rejected Apple's request for the parties to meet and confer for the purpose of developing a process that would allow the parties to identify additional terms for construction.

1    Throughout its motion, Samsung repeatedly casts Interrogatory No. 46 as seeking ***all***

2    of Apple's claim construction positions.  (*E.g.*, SBr. at 1 ("Samsung served an interrogatory

3    that required Apple to disclose ***its claim constructions***."); *id.* ("Apple made a deliberate and

4    strategic decision to withhold ***its constructions*** . . . ."); *id.* at 15 ("Apple has simply failed to

5    disclose ***its claim construction positions*** in response to Samsung's Interrogatory No.

6    46 . . . .").)  But by its own terms, Interrogatory No. 46 is limited to those (non-means-plus-

7    function) claim terms that Apple ***subjectively believed*** have "a meaning ***other than plain***

8    ***meaning***."  (Dkt. 878-6 at 51-52 (seeking Apple's constructions for "claim terms that ***YOU***

9    ***contend*** has a meaning ***other than plain meaning***") (emphases added).)

10    Accordingly, even if the Court finds that a response to Interrogatory No. 46 was

11    required, Apple had no obligation to identify those terms that it believed should be accorded

12    their plain meaning—which is precisely the belief that Apple and its experts held for ***all*** the

13    non-means-plus-function claim terms that Samsung has addressed in its motion.  (*E.g.*,

14    Kolovos Decl., Ex. 4 [Storer Tr.] at 277:5-16 ("[T]he ['449] patent we talked about

15    yesterday which had no court claim constructions, everything was plain meaning."); Dkt.

16    965-13 [Fuja Reb. Rep.] ¶ 113 ("[T]he language in the asserted claims [of the '596 patent]

17    should be given their plain and ordinary meaning."); *id*, ¶ 71 ("[O]ther than the term the

18    Court has construed and the term the parties agreed to the construction of, the language in

19    the asserted claims [of the '087 patent] should be given their plain and ordinary meaning");

20    Dkt. 878-11 [Fuja Reb. Rep.] ¶¶ 424-25 (same); Kolovos Decl., Ex. 7 [Storer Reb. Rep] ¶ 22

21    ("Based on my understanding of the accused Apple products, the legal standards set forth

22    above, and ***the plain and ordinary meaning of the claim terms***, the accused Apple products

23    do not infringe. . . .").)

24    Given the purely subjective nature of Interrogatory No. 46, a finding in Samsung's

25    favor would require the Court to determine on a ***term-by-term basis*** that Apple had no good

26    faith basis to believe that its understanding of the term was consistent with how a person of

27    ordinary skill in the art would understand the plain meaning of the term.  The Court recently

28    stated that it does not intend to perform this type of "Sisyphean task of providing definitive

1    guidance as to a term's plain and ordinary meaning," and Samsung has provided no reason

2    for the Court to depart from that position here.  (Dkt. No. 1150 at 7.)

3         In its motion, Samsung raises several arguments in an attempt to avoid Apple's plain

4    meaning understandings, but none has merit.

5         *First*, Samsung broadly argues (without reference to any specific terms) that Apple's

6    plain meaning constructions are not really "plain meaning" because they involve technical

7    detail "that differs from the plain meaning *a non-technical juror* would apply to a term."

8    (SBr. at 9 (emphasis added); *id.* at 7 (arguing that Apple's constructions are "unrecognizable

9    to *the public*") (emphasis added).)  But that is the wrong legal standard.  Rather, as Samsung

10   readily admits elsewhere in its brief, the Federal Circuit has made clear that, for purposes of

11   claim construction, "the 'ordinary meaning' of a claim term is its meaning to *the ordinary*

12   *artisan after reading the entire patent*."  (SBr. at 7 (quoting *Phillips v. AWH*, 415 F.3d 1303,

13   1312 (Fed. Cir. 2005) (en banc) (emphasis added)); *id.* (Samsung admitting that "[b]lack

14   letter patent law dictates that plain and ordinary meaning is the meaning that *one of*

15   *ordinary skill in the art* would give a claim term while *reading the specification*") (bold and

16   italics emphasis added).)

17        Thus, Samsung cannot establish that Apple's experts have supposedly relied on non-

18   plain meaning definitions simply because—after applying their extensive technical know-

19   how and studying the relevant intrinsic and extrinsic evidence—they defined terms using

20   technical words not easily understood by a "non-technical juror" and/or the "public."  That

21   is exactly what Apple's experts were supposed to do under *Phillips* and its progeny.

22        *Second*, Samsung suggests that Apple's definitions are not plain meaning because

23   Samsung and its experts have concluded that a different meaning should apply.  Again, what

24   matters for purposes of Interrogatory No. 46 is whether *Apple believed* that a term has its

25   plain meaning.  Indeed, that is especially true given that, for each term-at-issue, Samsung

26   *never* tells the Court what meaning Samsung and its experts believe should instead apply to

27   the term—plain meaning or otherwise.

28        *Third*, for the '596 patent, Samsung argues that Dr. Fuja's definition of the "control

SDU" limitation "cannot be plain and ordinary meaning" because it supposedly "*contradicts* the specification." (SBr. at 7.) But there is no contradiction—the passage Samsung cites does not refer to "control information of a ***MAC-e*** layer" as Samsung contends (*id.*), but "control information of a ***MAC*** layer." (Dkt. 811-1 ['596 patent], Abstract (emphasis added)). Samsung's attorney argument also fails because the specification makes clear that control SDUs (service data units) are formed in a different location and higher layer than MAC-e PDUs (protocol data units)—just as Apple's plain meaning construction states.[4] (*Id.*, Fig. 4A and 6:37-56 (describing the "E-DCH transmission control unit" that generates the control SDU at the MAC-es layer, and the separate "multiplexing and TSN setting unit" that generates the MAC-e PDU at the lower MAC-e layer).)

***Fourth***, for the '239 patent, Samsung complains that Dr. Storer's construction of "video capture module" cannot be plain meaning because it rests on "a prosecution history disclaimer argument to craft a specialized meaning." (SBr. at 8.) But Samsung ignores that, in his report, Dr. Storer explained that a person of ordinary skill in the art would understand that a "video capture module" is a "module either attached to or integrated into a video card for capturing signals from an analog video device," and that his understanding was based on (i) his own relevant experiences in the field, and (ii) the '239 specification, which describes video capture modules solely as a component of a video card. That is not prosecution history disclaimer—a doctrine that limits claim scope in a manner ***contrary to*** plain meaning and/or the patent itself, when the applicant has made a clear and unambiguous argument during prosecution that the claim does not cover certain features. *See Plantronics, Inc. v. Aliph, Inc*., 724 F.3d 1343, 1350 (Fed. Cir. 2013) ("[W]hen the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution

---

[4]    Samsung also incorrectly asserts that Apple inconsistently claimed in its invalidity contentions that "a 'control SDU' is formed at the same layer that forms the MAC-e PDU.'" (SBr. at 11-12.) The portion of the invalidity contentions cited by Samsung shows a prior art reference that describes a "multiplex sublayer" that receives an "Upper Layer Signaling" data block from a ***higher layer*** and combines it with other blocks to form a PDU. (Dkt. 1009-7, Ex. B-03 at 4-5.)

1  history disclaimer narrows the meaning of the claim consistent with the scope of the claim

2  surrendered.").

3        Dr. Storer also cited the prosecution history, but only as ***further confirmation*** of his

4  plain meaning construction—because the applicants argued repeatedly during prosecution

5  that certain prior art "[did] not disclose the use of a video card including a video capture

6  module in order to accomplish its capture."  (Dkt. 878-14, 878-15 [Storer Reb. Rep.] ¶¶ 702-

7  05 ("The prosecution history confirms my understanding. . . . [The applicants' argument]

8  shows that the "video capture module" in the claim is the same as the video capture module

9  on the video card described in the patent specification and required by claim 1.").)  Because

10 "the prosecution history is part of the intrinsic evidence," it was entirely proper—and indeed,

11 necessary—for Dr. Storer to consult and rely on it to confirm his understanding of the plain

12 meaning set forth in the specification.  *See Phillips*, 415 F.3d at 1317; *Aventis Pharms. Inc. v.*

13 *Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) ("The written description and

14 other parts of the specification . . . may shed contextual light on the plain and ordinary

15 meaning. . . .  The prosecution history . . . suppl[ies] context to the claim language."); Dkt.

16 No. 1150 at 7-8 (same).)[5]

17        ***Finally***, Samsung argues that Dr. Storer applied a non-plain meaning construction of

18 the term "list" because he interpreted it to require "text" and "a top-down arrangement," and

19 according to Samsung, "the plain meaning of the word 'list' does not exclude a list that

20 carries over into two or more columns, or a list of symbols rather than text."  (SBr. at 8.)

21 But a proper plain meaning analysis does not define the word "list" in the abstract.  Rather,

22 that analysis must be based on how the '449 inventors used that term ***in the specific context***

23 ***of their patent***—which only discloses lists that are textual and in a top-down arrangement,

24 just as Dr. Storer stated.  *See, e.g.*, *E-Pass Techs., Inc. v. 3com Corp.*, No. C-00-225, 2006

25 _____

26 [5]     In a later paragraph Dr. Storer also stated that "[t]he applicants, through these
   arguments, thereby relinquished a 'video capture module' that is not on or attached to a
27 video card."  (Dkt. 878-14 and 878-15) [Storer Reb. Rep.] ¶ 704.)  This statement is
   consistent with the plain meaning as set forth in the specification and confirmed by the
28 applicants.

1    U.S. Dist. LEXIS 95914, at *34 (N.D. Cal. Mar. 17, 2006) (plain meaning of "card" must be

2    understood in the specific context of the patent).  Again, that Samsung's attorneys offer a

3    different "plain meaning" interpretation of "list" does not render Dr. Storer's differing view

4    a non-plain meaning definition.[6]

5            Therefore, because Interrogatory No. 46 specifically *excludes* from its scope the

6    terms that Apple contends should be given their plain meaning, Samsung cannot rely on

7    Apple's response to that interrogatory to strike portions of Apple's expert reports that rely

8    on the plain meaning definitions of claim terms.[7]

9            **B.       Samsung Did Not Suffer Any Prejudice.**

10           Samsung's motion should be denied for the independent reason that Samsung did not

11   suffer any prejudice, as Apple timely has provided Samsung with more than sufficient detail

12   concerning Apple's interpretation of the asserted claims.  On the same day that Apple served

13   its response to Interrogatory No. 46, it served a 206-page supplemental response to

14   Interrogatory No. 12 that explained its noninfringement positions in detail.  As Samsung's

15   own expert reports confirm, that supplemental response provided Samsung with the

16   information it now says that Apple should have included in its response to Interrogatory No.

17   46.  Therefore, as set forth more fully below, Samsung cannot legitimately claim to have

18   suffered *any* prejudice resulting from Apple's response to Interrogatory No. 46, and

19   certainly not the type of *severe* prejudice necessary to justify the draconian sanctions that it

20

21   [6]      Samsung also argues that Apple "inconsistently" interpreted a "list" to include a

22   "grid" in its invalidity contentions.  (SBr. at 8-9.)  Samsung is wrong.  Dr. Storer did not
     interpret a "grid" as a "list," and instead asserted that it would have been *obvious* to a person

23   of ordinary skill in the art to convert a grid into a list given prior art disclosing both formats.
     (Kolovos Decl., Ex. 8 [Storer Init. Rep.] ¶ 249 ("Although the above thumbnails are

24   displayed in a grid format, not in a 'list' as required by claim 25, it would have been obvious
     to modify the software to display information regarding the thumbnails as a list. . . .").)

25   [7]      Samsung raises several similarly flawed arguments in seeking to strike portions of

26   the expert reports that Dr. Taylor submitted in connection with the '757 patent.  Apple
     previously responded to Samsung's arguments in its opposition to Samsung's original

27   motion to strike before Judge Grewal.  But there is no need to reach those arguments
     because they became moot when the Court recently held on summary judgment that the

28   asserted claims of the '757 patent are invalid.  (Dkt. 1150 at 48-49.)

1   seeks here.  *See Miniace v. Pac. Mar. Ass'n*, No. C 04-03506 SI, 2006 U.S. Dist. LEXIS

2   13726, at *15 n.5 (N.D. Cal. Mar. 10, 2006) (denying motion to strike where the opposing

3   party had obtained the sought-after information through documents or deposition testimony).

4          1.      **Interrogatory No. 12 Disclosed Apple's Constructions for the
                   Means-Plus-Function Limitations of the '239 Patent.**

5          In its motion, Samsung contends that Apple waited until Dr. Storer's expert reports

6   to first disclose the terms of the '239 patent that it believed should be treated as means-plus-

7   function limitations, along with the claimed functions and structures corresponding to those

8   terms.  (SBr. at 4.)  Samsung is incorrect.  As shown below, Apple disclosed all of that

9   information in its July 15, 2013 supplemental response to Interrogatory No. 12:[8]

| Limitation | Disclosure of Claim Construction By Apple |
|---|---|
| "means for storing" | Dkt. 965-9 [Resp. to Interrog. 12] at 102 ("The only corresponding structure disclosed in the '239 patent for performing the function required by the 'means for storing' limitation is a hard disk drive and the software identified at 3:1-5, 4:52-57, and 6:14-16."). |
| "means for receiving at least one composite signal transmitted by the remote unit" | *Id.* at 111 ("The only corresponding structure disclosed in the '239 patent for performing this limitation is one or more modems, corresponding to the number of modems used in the remote unit, connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and File Reception Software Sequence E.  (*See* '239 patent at 10:33-61, 11:18-12:8.)"). |
| "means for exchanging data with said host unit" | *Id.* at 113 ("[T]he only structure disclosed in the specification for 'exchanging data with said host unit' is a 16-bit Ethernet card, Novell Netware Lite software, and Host Boot Software Sequence D."). |
| "means for storing the compost signal received by the host unit" | *Id.* at 114 ("The only corresponding structure disclosed in the '239 specification for performing the function required by the 'means for storing the composite signal received by the host unit' limitation is a hard disk drive and the software identified at 11:5-8, 12:19-22 and 12:48-51."). |
| "means for decompressing said composite signal" | *Id.* at 115 ("The only corresponding structure disclosed in the '239 patent for performing the claimed function is a 'video decompression card' ('239 patent at 12:3) that is 'similar to |

---

[8]       Samsung states that Dr. Storer "revised and in some cases elaborated on these newly disclosed constructions" in his rebuttal report, yet points to *no* examples where he did so.  Nor could it.  In the cited paragraphs from both reports, Dr. Storer's constructions are *identical*.  (*Compare* Dkt. 878-12 and 878-13 [Storer Rep.] ¶¶ 663, 665, 667, 669, 671, 673 *with* Dkt. 878-14 and 878-15 [Storer Reb. Rep.] ¶¶ 430, 439, 443, 449, 454, 456.

| Limitation | Disclosure of Claim Construction By Apple |
|---|---|
| | the video card installed in the remote unit 2 with the exception that the capture module is not necessary' ('239 patent at 12:37-42) and an 'audio decompression card' ('239 patent at 12:3-4)."). |
| "means for transmission of said captured video over a cellular frequency" | *Id.* at 118 ("The only corresponding structure disclosed in the '239 patent for performing the claimed function is 'one or more modems connected to one or more cellular telephones, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file."). |

Therefore, there can be no dispute that, on the same day that Apple served its response to Interrogatory No. 46, Apple provided all the information that interrogatory sought with respect to means-plus-function terms.  (Dkt. 878-6 [Interrog. No. 46] at 51-52 (asking Apple to "identify any claim term which YOU contend should be governed by 35 USC Section 112(6) . . . including for each term YOU contend is governed by 35 USC 112 (6), the structure(s), act(s), or material(s) corresponding to that term's function").)[9]

>          2.          **Interrogatory No. 12 Sufficiently Disclosed Apple's Plain Meaning Constructions.**

Even if Samsung could properly demand a response to Interrogatory No. 46, and even if Samsung could re-write that interrogatory to ask Apple to provide its constructions for all asserted claim terms (plain meaning or otherwise),  Apple's supplemental response to Interrogatory No. 12 provided that information as well.

**The '449 Patent.**  Samsung contends that Apple waited until Dr. Storer filed his

---

[9]          Samsung complains that Apple "pointed to vague software sequences allegedly disclosed in large parts of the specification as corresponding structure for certain means-plus-function limitations."  (SBr. at 12, 17.)  As a matter of law, however, the structure that performs the claimed function of a means-plus-function limitation must be found *in the specification*.  Therefore, while Samsung may not agree that the required structure includes the specific software that Apple identified in the specification, that is not a basis to strike Dr. Storer's testimony.  *See Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1296 (Fed. Cir. 2012) ("Our case law is clear that a means-plus-function claim limitation is limited to the structures disclosed in the specification and equivalents.  A court must look to the specification to determine the structures that correspond to the claimed function.") (citations omitted).

1    expert report to first provide its understanding of eight claim limitations from the '449

2    patent.  (SBr. at 5.)   As detailed below, however, Apple explicitly disclosed that

3    information in its supplemental response to Interrogatory No. 12.

4          ***First***, Samsung asserts that Apple did not previously disclose its theory that "a

5    'digital camera' cannot include other functionality, such as Phone, Maps and Mail."  (*Id.*)

6    However, in response to Interrogatory No. 12, Apple explained that the accused Apple

7    products could not meet the "digital camera" limitation of the claims because those cameras

8    were "merely component parts of a larger multimedia system that includes at least a ***phone***,

9    computer, digital music player, video player, ***global positioning device***, game player, ***email***

10    ***device***, and numerous other component parts."  (Kolovos Decl., Ex. 9 at 59 (emphasis

11    added).)  Apple emphasized the same point in explaining that "[t]he claimed 'digital camera'

12    cannot be a system or device in which a digital camera is merely a component part."  (*Id.* at

13    164.)

14          ***Second***, Samsung asserts that Apple did not disclose that "the 'imaging device' and

15    'A/D converter' cannot be part of the same integrated circuit. . . ."  (SBr. at 5.)  Again,

16    Apple said precisely that in its supplemental response to Interrogatory No. 12:  "[T]he

17    claims require an A/D converter to receive an analog signal ***from*** the imaging device, *i.e.*, an

18    A/D converter ***distinct from*** the imaging device."  (Kolovos Decl., Ex. 9 at 164 (emphases

19    added).)

20          ***Third***, Samsung asserts that, before Dr. Storer's report, Apple never disclosed that

21    "the 'compressor' or 'decompressor' must use common circuitry to perform compression or

22    decompression of still and moving images, or cannot be part of an integrated circuit that

23    performs additional functions."  (SBr. at 5.)  That is incorrect too.  Apple's supplemental

24    response to Interrogatory No. 12 unequivocally stated that the asserted claims cannot be met

25    if still image (i.e., JPEG) and video compression are "performed by … ***separate and distinct***

26    ***component[s]*** supplied by … different third-part[ies]."  (Kolovos Decl., Ex. 9 at 165-66

27    (emphasis added).)  The same is true for decompression.  (*Id*. at 166.)

28          ***Fourth***, Samsung asserts that Apple did not previously disclose that "each claimed

1    'list' must include text and conform to a top-down arrangement." (SBr. at 5). But

2    Samsung's infringement contentions identified the "Camera Roll" feature of the accused

3    products as the claimed "list," and Apple's supplemental interrogatory response explained

4    that Camera Roll was not a "list" because it did not "display the ***time or date the image or***

5    ***video was recorded*** to the user" (i.e., text) and because it was "a ***grid*** of thumbnail images,"

6    as opposed to a top-down arrangement. (Kolovos Decl., Ex. 9 at 167.)

7        ***Fifth***, Samsung asserts that Apple did not disclose that "the claimed 'search mode'

8    cannot consist of scrolling through image thumbnails." (SBr. at 5.) But Apple specifically

9    stated that "Camera Roll" does not meet the "search mode" limitation because it "does not

10   allow users to search for particular images or videos, but rather uses a thumbnail grid

11   structure for allowing users to ***browse*** through all the images and videos that have been

12   recorded." (Kolovos Decl., Ex. 9 at 167.) Apple also quoted the testimony of software

13   engineer Justin Titi, who explained that Camera Roll only allows users "to ***browse and***

14   ***scroll*** through their photos." (*Id.*)

15       ***Sixth***, Samsung argues that Apple's contentions  "merely disclose[] its position that

16   the Camera Roll is not a classification," without any explanation why. (SBr. at 11.) This

17   also is incorrect. Apple's response to Interrogatory No. 12 specifically cited the portions of

18   Mr. Titi's deposition in which he explained ***precisely why*** the accused Camera Roll is not a

19   "classification." (Kolovos Decl., Ex. 9 at 167-68 (citing Titi Dep. at 18-19, 100-02);

20   Kolovos Decl., Ex. 2 [Titi Dep.] at 18-19 ("When you remove a photo from the Camera Roll,

21   it is removed from the device."); *id.* at 100-02 ("Users can also rename albums. They're not

22   able to rename the Camera Roll. Users are able to rearrange photos within an album but are

23   not allowed to rearrange photos in the Camera Roll.").)

24       ***Finally***, Samsung's remaining two arguments contend that Apple improperly waited

25   to disclose its theory that "the 'imaging device' must expose all pixels to an image at once,

26   and/or capture the charge associated with each pixel concurrently" and that "the 'recording

27   circuit' must be an interface circuit." (SBr. at 5.) But that is not so. Dr. Storer offered his

28   opinion regarding the "imaging device" limitation in response to a previously-undisclosed

doctrine of equivalents opinion that Samsung's expert, Mr. Parulski, first advanced in his opening report.  Samsung has since acknowledged that it cannot pursue its doctrine of equivalents theories, and Dr. Storer therefore does not need to respond to them at trial.  (Dkt. 1056.)  Similarly, Samsung has already conceded that Mr. Parulski's identification of an "interface circuit" as part of the accused "recording circuit" was a previously-undisclosed opinion, and that it will not pursue this argument at trial either.  (Dkt. 963-03 at 23 ("Samsung does not intend to rely on this separate, independent opinion offered by Mr. Parulski.").)  Accordingly, Dr. Storer's responses to these two arguments were timely, but are now both moot.

**The '239 Patent.**  As discussed above, Samsung incorrectly argues that Dr. Storer used a "specialized meaning"—rather than plain meaning—for the "video capture module" limitation of the '239 patent.   In fact, it is unclear that there is any disagreement between the parties at all because Dr. Schonfeld *also* opined that "the video capture module is a component of the video card," just as Dr. Storer did.  (Dkt. 965-19 ¶ 1726.)  In any event, Apple disclosed its understanding of this limitation its response to Interrogatory No. 12, citing the specification *and* file history.  (Dkt. 965-9 at 117 ("A video capture module is an (outdated) add-on component for personal computers that is used to receive video signals ("capture") from an external device (such as a video camera).") (citing specification and file history) and n.4 (by arguing that the prior art "does not disclose the use of a video card including a video capture module in order to accomplish its capture," applicants defined "video capture module" as a component "included on video cards").  Dr. Schonfeld responded to this interpretation in his report (Dkt. 965-19 ¶¶ 1723-30), and even provided an infringement analysis that mentioned Apple's construction.  (Dkt. 877-6, ¶ 1463.)

**The '087 Patent.**  For the '087 patent, Samsung contends that Dr. Fuja's expert report disclosed one new theory:  that "'receiver receiving' requires actual receiving, rather than just capability of receiving."  (SBr. at 4.)  As an initial matter, Samsung does not even attempt to explain how an argument directed to the *capability* requirement of a claim has any bearing on a non-plain meaning construction of a term—*i.e.*, the narrow scope of

1   Interrogatory No. 46.  But in any event, Apple disclosed that theory in its supplemental

2   response to Interrogatory No. 12 when it stated that, ██████████████

3   ████████████████████████████████████

4   ████████████████████████████████████

5   ████████   (Dkt. 965-9 at 202-03.)  Thus, Apple's response clearly addressed whether

6   its products have ever ***actually received*** the claimed information, rather than their ***capability***

7   to do so.

8   　　　　**The '596 Patent.**  For the '596 patent, Samsung lists five theories that Apple

9   supposedly failed to disclose before Dr. Fuja filed his report.  Samsung is incorrect with

10   respect to all of them.

11   　　　　***First***, Samsung asserts that Apple did not disclose that "the asserted claims require

12   the limitations to be constructed in a specific order: '[t]he process entails first forming

13   constituent parts of the second PDU, including "forming a first protocol data unit (PDU)

14   including uplink packet data" . . . and then forming the second PDU by concatenating a

15   header and a payload.'"  (SBr. at 4.)  But Apple made clear in its response to Interrogatory

16   No. 12 that the claims require a specific order by stating that the patent "claims a method

17   and apparatus in which a first PDU is formed ***prior*** to a concatenation that forms the second

18   PDU," and requires "that the header and payload be formed ***by the time*** of the concatenation

19   operation."  (Dkt. 878-18 at 189-90, 200 (emphases added).)  Apple further explained that

20   ████████████████████████████████████

21   ████████████████████   *Id.* at 200 (emphasis added).)

22   　　　　***Second***, Samsung asserts that Apple did not previously disclose that "a 'control SDU'

23   must be generated at a higher layer than the layer that creates MAC-e PDUs."  (SBr. at 4.)

24   But Apple disclosed just that in response to Interrogatory No. 12:  "Samsung also has not

25   shown that, in the Accused Products, a data unit containing control information is received

26   from a ***higher layer*** and thus constituting an 'SDU.'"  (Dkt. 965-9 at 192 (emphasis added).)

27   　　　　***Third***, Samsung asserts that Apple did not disclose that "'control information for an

28   uplink packet data service' must be used by a scheduling component within the Node B."

1   (SBr. at 4.)  But again, Apple's response to Interrogatory No. 12 disclosed that interpretation

2   of the claims:

3           Samsung has failed to show that the Scheduling Information of the
            standard cited by Samsung constitutes "control information for an
4           uplink packet data service";

5           ███████████████████████████████████████████████████

6           ███████████████████████████████████████████████████

7

8   (Dkt. 965-9 at 192-93 (emphasis added).)  This passage explicitly states that the claimed

9   "control information" ███████████████████████████████████████

10  ██████████████████████████████).  Samsung also contends

11  that Dr. Fuja relied on "an undisclosed construction of 'control information' that ████████

12  ██████████████████ of the Node B.  (SBr. at 16.)  But Dr. Fuja's discussion of

13  ████████████████ merely addressed *new evidence* that Samsung had disclosed for the first

14  time in Dr. Min's infringement report.[10]  Thus, Apple had no reason to address that issue in

15  its response to Interrogatory No. 12 (before Samsung disclosed its new theory).

16          ***Fourth***, Samsung asserts that Apple did not disclose that "an 'N field representing

17  the number of uplink data' is an N field representing the number of bits or bytes contained in

18  the MAC-es PDU."  (SBr. at 4.)  But in its infringement contentions, Samsung argued that

19  "an N field representing the number of uplink packet data" is found in the 3GPP TS 25.321

20  standard, even though the standard describes an N field in different terms:  as indicating the

21  "number of consecutive MAC-d PDUs corresponding to the same DDI value."  (Dkt. 660-2,

22  at 11-12.)  In its response to Interrogatory No. 12, Apple explained that the claimed "N field"

23  ─────────────────
    [10]     Samsung's infringement contentions did not mention or cite any document

24  concerning a ███████████████.  However, Dr. Min opined in his opening report that the

25  ███████████████████████████████ (Dkt. 965-20 [Min Op.] ¶ 1138.)  In his

26  rebuttal report, Dr. Fuja responded to that new theory by opining that the documents

27  ██████████████████████████████████" (Dkt. 878-11 [Fuja Reb.] ¶

28  460.)  Dr. Fuja's statement applied the same noninfringement theory that Apple had
    articulated during fact discovery, and simply responded to new evidence that Dr. Min had
    relied upon for the first time.

1   is not found in the standard or the accused products *because* the standard sets forth a

2   different meaning for the N field. (Dkt. 878-18 at 194-195.) Dr. Fuja further explained that

3   "[a] person of ordinary skill would understand that data is fundamentally enumerated in bits

4   or bytes," and so would understand the claimed "N field" to refer to bits or bytes of data.

5   (Dkt. 878-11 [Fuja Reb.] ¶¶ 424-25.) Far from relying on an "undisclosed claim

6   construction," Dr. Fuja's opinion was grounded in the plain meaning and consistent with

7   Apple's discovery responses.

8       *Fifth*, Samsung asserts that Apple did not disclose "'forming a second data packet

9   unit (PDU) by concatenating a header and a payload' requires the MAC-e header and MAC-

10  e payload to be formed as standalone units prior to the concatenation operation." (SBr. at 4.)

11  But Apple stated in response to Interrogatory No. 12 that the claims require "that the header

12  and payload be formed by the time of the concatenation operation," and that in the accused

13  Apple products, ████████████████████████████████

14  ████████████████████████████████████████

15  ████████████ (Dkt. 878-18 at 189-90, 200 (emphasis added).)

16          3.      **Samsung's Cries of Prejudice Are Unfounded.**

17      Despite this clear disclosure of claim construction positions set forth in Apple's

18  response to Interrogatory No. 12, Samsung contends that it suffered severe harm in several

19  respects. The record does not support those assertions.

20      *First*, Samsung argues that it suffered harmed because "[i]t is simply too late for

21  Samsung to take full discovery on undisclosed claim construction positions." (SBr. at 18.)

22  But Samsung waited until June 2013 to serve Interrogatory No. 46, and Apple's response

23  was not due until the last day of fact discovery on July 15, 2013. Therefore, Samsung had

24  no ability to take *any* fact discovery directed to the discovery responses that Apple served on

25  that date—including Apple's response to Interrogatory No. 46.

26      *Second*, Samsung's claims that "it [was] not possible for Samsung to divine Apple's

27  claim construction positions from its Interrogatory response," and as a result, "Samsung was

28  denied the opportunity to address these positions in Samsung's own expert reports." (SBr.

at 9, 15.)  But Samsung's own expert reports belie that argument.

The '449 Patent.  In his *opening* expert report, Mr. Parulski addressed each of the purported "new constructions" that, according to Samsung, Apple disclosed for the first time in Dr. Storer's *rebuttal* report.  (Kolovos Decl., Ex. 3 [Parulski Rep.] ¶¶ 128-29 ("digital camera" cannot be "merely a component part"), ¶¶ 166-68 ("imaging device" and "A/D converter"), ¶ 205 ("recording circuit" must include "interface"), ¶¶ 192-93, 216-17 ("compressor" and "decompressor" use "separate and distinct components" for compression/decompression of still images and videos), ¶ 239-40 ("list" can be a "grid" and not required to display text such as "the time or date"), ¶¶ 246-48 (Camera Roll is not a "classification").)  Mr. Parulski was able to address these theories in his opening report because Apple fully disclosed them in response to Interrogatory No. 12, as discussed above.

The '087 and '596 Patents.  The same is true with respect to the '087 and '596 patents.  Samsung now claims that before he filed his opening report, Dr. Min had no knowledge of Apple's claim construction positions—even though he *explicitly addressed* them in that very report.  (*Compare* SBr. at 4 *with* Dkt. 965-20 [Min Rep.] ¶¶ 686-87 ("I understand that Apple argues that the Accused Products do not infringe claims 9 and 34 because Apple claims that ████████████████████████████████████████ ████████████████████████████ ¶ 1137 ("I understand that Apple may argue that the Accused Apple Products do not infringe because ███████████████████████ ███████████████████████, ¶ 1138 ("I understand that Apple may argue that the Accused Products do not infringe because Apple claims that ████████████████ ████████████████████████), ¶ 1143 ("I understand that Apple may argue that the Accused Products do not infringe the asserted claims because the Accused Products do not 'concatenate' the MAC-e header and MAC-e payload."), ¶ 1144 ("I understand that Apple may argue that the Accused Products do not infringe the asserted claims because the data that forms the control service data unit (SDU) does not originate from a higher layer.").

The '239 Patent.  It is equally clear that, by the time he filed his (1,039-page) opening expert report, Dr. Schonfeld fully appreciated the claim construction positions that

1    Apple had detailed in its supplemental response to Interrogatory No. 12.  In fact, Dr.

2    Schonfeld responded to *each* of Apple's means-plus-function constructions with multiple

3    infringement theories, responded to Apple's interpretation of the "video capture module"

4    limitation, and even included a table that compared his constructions with Apple's.  (Dkt.

5    965-19 [Schonfeld Rep.] ¶¶ 43, 47-81, 1630-40, 1689-1740.)  Dr. Schonfeld also admitted

6    where he had obtained the information about Apple's competing claim constructions:

7    "Apple's proposed constructions are taken *from Apple's response to Samsung's*

8    *Interrogatory 12.*"  (*Id*. ¶ 43 (emphasis added).)

9            In the end, Samsung attempts to build its prejudice arguments around claims of

10   nondisclosure that the record does not support, and around claims of ignorance that cannot

11   be squared with the content of its own experts' reports.  To the contrary, those expert reports

12   confirm that Samsung and its experts were fully aware of, and able to respond to, the claim

13   construction positions that Apple had timely disclosed in its discovery responses.  There is

14   no legitimate basis to award sanctions of any kind under these circumstances, and certainly

15   no reason to grant the severe sanction of preclusion sought here—involving more than 540

16   paragraphs from Dr. Storer's reports and more than 130 paragraphs from Dr. Fuja's reports

17   (even though Samsung only addresses a handful of those paragraphs in its motion, and most

18   have nothing to do with claim construction at all).[11]  *See Miniace*, 2006 U.S. Dist. LEXIS

19   13726, at *15 n.5 (denying motion to strike where the opposing party had obtained the

20   information at issue through documents or deposition testimony).

21   **IV.    CONCLUSION**

22           For the foregoing reasons, Samsung's motion to strike should be denied in its

23   entirety.

24

25

26

27   _____

     [11]       In its original motion before Judge Grewal, Samsung's arguments only affected 88

28   paragraphs of Dr. Storer's reports.  (Dtk. 878-05 at 5-6, 10-12.)