PERKINS COIE LLP
Christopher L. Kelley, CSB No. 166608
CKelley@perkinscoie.com
3150 Porter Drive
Palo Alto, CA  94304
Telephone:  650.838.4300
Facsimile:   650.838.4350

Attorneys for Non-Party
INTEL CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 12-cv-00630-LHK (PSG) <br><br> **NON-PARTY INTEL'S DECLARATION IN SUPPORT OF APPLE'S ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL (DKT #1220)** |

Apple recently filed an Administrative Motion to File Documents Under Seal ("Apple Sealing Motion") (Dkt #1220). The documents that Apple has requested be sealed include portions of its Opposition to Samsung's Motion to Strike Expert Testimony ("Apple's Opposition") (Dkt #1227).

Intel supports sealing of four passages from Apple's Opposition (Dkt. #1227) that describe Intel proprietary technology implemented in its wireless radio devices. Passages on pages 7, 21, 23 and 24 all refer to specific features of Intel's implementation of the protocol stack software for its 3G wireless modems, which are used in certain Apple products. Intel's software design is proprietary to Intel, is not pre-determined by the relevant wireless standards, and is entitled to protection from disclosure to Intel's competitors and the public.

The Intel engineering material contained within these passages describes features incorporated within Intel's baseband software. As detailed in the accompanying declaration from Dr. Josef Hausner, Division Vice President of Intel Mobile Communications GmbH which designs the Intel products used by Apple, the Intel software details described in Apple's Opposition are kept confidential (Hausner Decl. at ¶¶ 3-5, 8), and are a proprietary design of tremendous value to Intel. (Hausner Decl. at ¶¶ 6-7) Intel has good cause to request that the details of this code be kept under seal.

Under Fed. R. Civ. P. 26(c), evidence filed in support of non-dispositive motions should be sealed when there is "good cause." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Courts in this circuit have often found that a party's interest in securing non-public engineering designs and other proprietary trade secrets constitutes not only "good cause" for sealing court records, *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, Case No. 11–CV–05973 PSG, 2013 WL 1366046, at 1 (N.D. Cal. Apr. 3, 2013), but also "compelling reason" when that heightened standard has been applied in the context of evidence attached to dispositive motions. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (compelling reason may be found in avoiding release of trade secrets); *Network Appliance, Inc. v. Sun Microsys., Inc.,* Case No. C-07-06053 EDL, 2010 WL 841274 (N.D. Cal. Mar. 10, 2010) (compelling reason to seal documents containing source code [at *5], detailed descriptions of

source code [*5] and other "proprietary technical information" [at *2]); *Dish Network, LLC v. Sonicview USA, Inc.*, Case No. 09CV1553-L(NLS), 2009 WL 2579052, at *1 (S.D. Cal. Aug. 20, 2009); *Upek, Inc. v. Authentec, Inc.*, Case No. C 10-00424 JF, 2010 WL 1980189, at *4 (N.D. Cal. May 17, 2010). This Court has previously found compelling reason to seal technical information pertaining to Intel software design in the litigation between Apple and Samsung tried last year. See *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846 (LHK), Order Granting-in-Part and Denying-in-Part Motions to Seal (Dkt. #1649) at 26-28 (N.D. Cal. Aug. 9, 2012) and Order re: Intel's Request for Clarification (Dkt. #1959) at 2-3 (N.D. Cal. Sept. 7, 2012).

The exhibits that are the subject of this motion identify how various wireless functions are implemented in Intel's modem software. Intel derives significant commercial value from the software. Hausner Decl. at ¶¶ 6-7. Part of the commercial advantage conferred by the software results from the manner in which the software is designed and organized. Hausner Decl. at ¶ 7. Intel can reasonably anticipate that disclosure of the discussion of its software in Apple's Opposition (Dkt. #1227) could cause Intel significant commercial harm. Intel's interest in avoiding that harm is more than sufficient to meet the good cause standard for sealing this information.

Intel's request is narrowly tailored. Civil L.R. 79-5(a). The material was submitted by Apple as part of its opposition to Samsung's motion to strike specific testimony. This is not a dispositive motion. Furthermore the point of citing to the passages containing the Intel proprietary information is to demonstrate that Apple's contentions were disclosed in a timely manner. The public does not need access to Intel's confidential information contained in those contentions to understand the nature of Apple's Opposition.

Intel respectfully requests that the Court seal the identified portions of Apple's Opposition (Dkt #1227) to prevent disclosure of design details of its proprietary and highly valuable software. Good case for this request has been demonstrated in the evidence from Dr. Hausner that

//

//

Intel will be significantly harmed if it cannot maintain its trade secrets and if its competitors have free access to the fruits of Intel's R&D investment.

Dated: February 4, 2014                Respectfully submitted,

By: */s/ Christopher L. Kelley*
       Christopher L. Kelley

*Counsel for Non-Party Intel Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 4, 2014, a true and correct copy of the foregoing was served on the parties via electronic mail pursuant to Civil Local Rule 5-1(h).

*/s/ Christopher L. Kelley*
Christopher L. Kelley

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 12-cv-00630-LHK (PSG) <br><br> **DECLARATION OF JOSEF HAUSNER, Prof. Dr.-Ing.** |

I, Josef Hausner, declare as follows:

1. I am employed by Intel Mobile Communications GmbH ("IMC") at Neubiberg, Germany. IMC is a wholly owned subsidiary of Intel, Corp. ("Intel"). My title is Division Vice President, and I am responsible for wireless architecture in IMC's Wireless System Engineering group. I received an Dipl.-Ing. (Diploma of Engineering) degree from Technical University of Munich, in 1986 and a Dr.-Ing. (Doctor of Engineering) degree from Technical University of Munich, in 1991. I began working at the Wireless Solutions business unit at Infineon Technologies AG ("Infineon") in 2006. In 2011, Intel acquired Infineon Technologies AG Wireless Solutions

1
2   (WLS) business, which became known as IMC.
3   2.   I am informed that in the above-named lawsuit, Samsung or Apple may wish to use Intel
4   confidential information, including source code and documents. In particular, I am informed that
5   Samsung and Apple may refer to exhibits that include Intel firmware and protocol stack software
6   in the presentation of their case. Intel's firmware is a type of software that is designed to control
7   the operation of Intel's modem hardware and to implement various protocol functions in the
8   modem. Intel does not typically provide the source code for its firmware to customers but instead
9   provides it only in binary executable form. Intel maintains its firmware source-code on internal
10  servers and implements network access security measures to prevent unauthorized access to this
11  code.
12  3.   Intel does not disclose the design of its firmware to its customers or the public. While Intel
13  provides some technical documentation to its customers, these documents are disclosed only after
14  the customer has signed a non-disclosure agreement (NDA). In addition, the type of
15  documentation that Intel provides to its customers discloses only enough information to configure
16  and use the Intel products. It does not detail the firmware or circuitry implementation.
17  4.   Intel also takes appropriate precautions when it deliveries firmware to its customers. Intel
18  only delivers precompiled firmware binaries and header files to most of its customers. The
19  precompiled firmware binaries are embedded into the modem software image before they are
20  delivered as a release to the customers. Most of Intel's customers cannot modify or recreate the
21  firmware binaries themselves. Intel employs network security measures to prevent unauthorized
22  access to the computer systems where the source code is stored. When Intel needs to share
23  portions of its firmware source code with a customer, Intel provides the source code only after the
24  customer signs an NDA protecting the confidentiality of the source code.
25  5.   Intel's protocol stack software implements modem functions that interact with the
26  firmware and hardware and allow the modem to implement the many protocols required to
27  operate successfully on modern 3G and 4G wireless networks. Intel maintains the protocol stack
28  software on secure servers and implements network access security measures to prevent
    unauthorized access. Before IMC makes any protocol stack software available to customers it

requires those customers to enter a license agreement that requires them to secure the code and take measures designed to prevent public release of uncompiled versions of the protocol stack software. Customers are allowed to use Intel's protocol stack software only with Intel's modem hardware products.

6. IMC's firmware and protocol stack software is extremely valuable to Intel because it represents a significant investment and contains numerous trade secrets that provide a competitive advantage to Intel. Purchasers of modem integrated circuits 3G and 4G for mobile devices expect the manufacturer to provide firmware and protocol stack software with these integrated circuits. Intel would be seriously harmed if potential competitors could shortcut their product development efforts by basing their work on Intel's source code designs.

7. Intel's firmware and protocol stack software also provides it with a competitive advantage. The 3GPP standards, which are publicly available, generally describe how mobile devices behave when interoperating with a wireless network. But the standards do not always specify how that behavior must be implemented; so each manufacturer generally creates a unique implementation using its trade secrets to optimize certain performance aspects. For example, a firmware or software implementation could optimize speed over power consumption, or vice-versa. Given the numerous trade secrets embedded in IMC's firmware and protocol stack software, public disclosure of IMC's design would permit competitors to copy it, along with the key features that give Intel a competitive advantage.

8. Intel does not disclose the design of its firmware or protocol stack software to the public. While Intel provides some technical documentation to its customers, these documents are disclosed only after the customer has signed a non-disclosure agreement (NDA). In addition, the type of documentation that Intel provides to its customers discloses only enough information to configure and use the Intel products. It does not detail the firmware or circuitry implementation.

//
//
//
//

1
2   I have personal knowledge of the facts set forth in this declaration and declare under
3   penalty of perjury under the laws of the United States of America that the foregoing is true and
4   correct. Executed at Neubiberg, Germany on May 5, 2013.
5
6                           i.V. [signature]
7   _____
    Josef Hausner
8
9
10
...
28