# EXHIBIT A



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,892 | 06/14/2013 | 8074172 | 0347207 | 1070 |

61725    7590    01/13/2014
MORGAN, LEWIS & BOCKIUS LLP / AI
2 PALO ALTO SQUARE
3000 EL CAMINO REAL, SUITE 700
PALO ALTO, CA 94306

| EXAMINER |
|---|
| PATEL, HETUL B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/13/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents<br>
United States Patents and Trademark Office<br>
P.O. Box 1450<br>
Alexandria, VA 22313-1450<br>
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS
BRYAN CAVE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104

Date:

**MAILED**

**JAN 1 3 2014**

**CENTRAL REEXAMINATION UNIT**

# EX PARTE REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. : 90012892
PATENT NO. : 8074172
ART UNIT : 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

| | | |
|---|---|---|
| MORGAN, LEWIS & BOCKIUS LLP / AI<br>2 PALO ALTO SQUARE<br>3000 EL CAMINO REAL, SUITE 700<br>PALO ALTO, CA 94306 | : : : : | (For Patent Owner) |
| | | |
| BRYAN CAVE LLP<br>1290 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10104 | : : : | (For Third Party<br>Requester) |
| *In re:* Kocienda et al.<br>*Ex Parte* Reexamination Proceeding<br>Control No.: 90/012,892<br>For: U.S. Patent No.: 8,074,172 | : : : : : | DECISION ON PETITION |

**MAILED**

**JAN 1 3 2014**

**CENTRAL REEXAMINATION UNIT**

This is a decision on a petition filed by the Third Party Requester "petitioner" on September 19, 2013, entitled "PETITION UNDER 37 C.F.R. §§ 1.515(c) AND 1.181 FOR THE DIRECTOR TO REVIEW THE PARTIAL DENIAL OF REEXAMINATION REQUEST NO. 90/012,892 ". Petitioner seeks review of the Order Granting in Part the Request for *ex parte* Reexamination mailed August 19, 2013, which denied the request for reexamination of claims 1-6, 8-15 and 17-20 of U.S. Patent 8,074,172. The petition was timely filed. No fee is required.

The petition is before the Director of the Central Reexamination Unit (CRU) for decision.

The petition is <u>granted-in part</u> for the reasons set forth below.

## REVIEW OF RELEVANT FACTS

- U.S. Patent No. 8,074,172 (hereinafter, the '172 patent) issued on December 6, 2011.

- On June 14, 2013 a request for *ex parte* reexamination of the '172 patent was deposited by a Third Party Requester, and this reexamination proceeding was assigned Control No. 90/012,892 (hereinafter, the '12,892 proceeding).

- An order granting-in-part the request for *ex parte* reexamination in the '12,892 proceeding was mailed on August 19, 2013.

- On September 19, 2013, the present petition was filed.

## DISCUSSION

Petitioner in the '12,892 proceeding has petitioned seeking relief from the Examiner's August 19, 2013 Order granting in part *ex parte* reexamination for all requested claims.

I. **Standard of Review**

37 CFR 1.515(c) and 1.181 provide for the filing of a petition to review an examiner's determination refusing to order *ex parte* reexamination. The CRU Director's review of the reexamination request on petition is *de novo*. Therefore, this review will determine whether the examiner's refusal to order reexamination for patent claims 1-6, 8-15 and 17-20 was correct.

The following rules and procedures are applicable to this review:

35 U.S.C. § 303(c) provides:

A determination by the Director pursuant to subsection (a) of this section that no substantial new question of patentability has been raised will be final and nonappealable. Upon such a determination, the Director may refund a portion of the reexamination fee required under section 302 of this title.

37 CFR § 1.515(c) provides:

The requester may seek review by a petition to the Director under 37 CFR § 1.181 within one month of the mailing date of the examiner's determination refusing *ex parte* reexamination. Any such petition must comply with 37 CFR § 1.181(b). If no petition is timely filed or if the decision on petition affirms that no substantial new question of patentability has been raised, the determination shall be final and nonappealable."

MPEP § 2242(I) provides, in pertinent part:

Where a second or subsequent request for reexamination of a patent is made before the conclusion of an earlier filed reexamination proceeding pending (ongoing) for that patent, the second or subsequent request for reexamination may provide information raising a substantial new question of patentability with respect to any new or amended claim

which has been proposed under 37 CFR 1.530(d) in the ongoing pending reexamination proceeding. However, in order for the second or subsequent request for reexamination to be granted, the second or subsequent requester must independently provide a substantial new question of patentability which is different from that raised in the pending reexamination for the claims in effect at the time of the determination. The decision on the second or subsequent request is thus based on the claims in effect at the time of the determination (37 CFR 1.515(a)). If a "different" substantial new question of patentability is not provided by the second or subsequent request for the claims in effect at the time of the determination, the second or subsequent request for reexamination must be denied since the Office is only authorized by statute to grant a reexamination proceeding based on a substantial new question of patentability "affecting any claim of the patent." See 35 U.S.C. 303. Accordingly, there must be at least one substantial new question of patentability established for the existing claims in the patent in order to grant reexamination.

Once the second or subsequent request has provided a "different" substantial new question of patentability based on the claims in effect at the time of the determination, the second or subsequent request for reexamination may also provide information directed to any proposed new or amended claim in the pending reexamination, to permit examination of the entire patent package. The information directed to a proposed new or amended claim in the pending reexamination is addressed during the later filed reexamination (where a substantial new question is raised in the later reexamination for the existing claims in the patent), in order to permit examination of the entire patent package. When a proper basis for the subsequent reexamination is established, it would be a waste of resources to prevent addressing the proposed new or amended claims, by requiring parties to wait until the certificate issues for the proposed new or amended claims, and only then to file a new reexamination request challenging the claims as revised via the certificate. This also prevents a patent owner from simply amending all the claims in some nominal fashion to preclude a subsequent reexamination request during the pendency of the reexamination proceeding.

<u>MPEP § 2242(II)(A) provides, in pertinent part:</u>

In a decision to order reexamination made on or after November 2, 2002, reliance on old art does not necessarily preclude the existence of a substantial new question of patentability that is based exclusively on that old art. See Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002), which expanded the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based. Determinations on whether a substantial new question of patentability exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a substantial new question of patentability may be based solely on old art where

the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier examination(s), in view of a material new argument or interpretation presented in the request.

MPEP § 2248 provides, in pertinent part:

If a petition seeking review of the examiner's determination refusing reexamination is filed, it is forwarded (together with the reexamination file) to the Office of the CRU Director for decision. Where a petition is filed, the CRU Director will review the examiner's determination that a substantial new question of patentability has not been raised. The CRU Director's review will be de novo. Each decision by the CRU Director will conclude with the paragraph:

> This decision is final and nonappealable. See 35 U.S.C. 303(c) and 37 CFR 1.515(c). No further communication on this matter will be acknowledged or considered.

If the petition is granted, the decision of the CRU Director should include a sentence setting a 2-month period for filing a statement under 37 CFR 1.530, the reexamination file will then be returned to the CRU Supervisory Patent Examiner (SPE) of the art unit that will handle the reexamination for consideration of reassignment to another examiner.

## II.  Summary of Patent Prosecution History and Reexamination History of the '172 Patent

*Patent Prosecution History (11/620,642)*

The '172 patent issued on December 6, 2011 to Kocienda et al. The relevant prosecution of the '172 patent proceeded as follows.

In response to the examiner's first office action, mailed on March 30, 2010, which rejected claims 1-11, 13-19 and 22-26 over Kushler et al. (U.S. Patent Pub. 2007/0040813); claims 12, 20 and 21 over Kushler and Knaven (U.S. Patent Pub. 2006/0152496) and an interview held on May 26, 2010, the applicant amended claims 6, 24 and 25, added new claims 27-43 and canceled claims 1-5.  In addition, the applicant maintained that Kushler fails to teach, "in a second area of the touch screen display, displaying the current character string or a portion thereof and a suggested replacement character string for the current character string" and "replacing the current character string in the first area with the suggested replacement character string if the user activates a key on the keyboard associated with a delimiter."

In response to the applicant's amendment, the examiner maintained the rejection of claims 6-11, 13-19 and 22-43 over Kushler et al. In addition, the rejection of claims 12, 20 and 21 was maintained over Kushler and Knaven.

In response to the examiner's final rejection, an interview was held on January 27, 2011 and an after final response was filed on January 31, 2011. In the after final response, the applicant maintained that Kushler does not teach or suggest a first area displaying the character string and a second area concurrently displaying the character string or a portion of the character string. In addition, the applicant stated that Kushler does not teach or suggest replacing the current character string with a suggested replacement character string in response to the user inputting a punctuation mark.

In response to the applicant's response, the examiner issued a non-final office action and rejected claims 27-43 over Longe U.S. Patent Pub. 2006/0274051. Claims 6-11 and 13-26 were rejected over Rainisto (U.S. Patent Pub. 2006/0265648) and Kushler. Claim 12 was rejected over Rainisto, Kushler and Knaven.

In response to the examiner's office action, the applicant issued another response and an interview was subsequently held. The applicant argued Longe discloses making an input in the row of a candidate word, but receiving input in the row of the candidate word does not teach or suggest "receiving a further user input through a punctuation mark key of the keyboard" because the row of the candidate word is not part of a keyboard, let alone a punctuation mark key in the keyboard. In addition, the applicant stated that Rainisto and Kushler do not teach or suggest "keeping the current character string in the first area and adding a space if the user performs <u>a second gesture in the second area on the current character string.</u>" In addition, the applicant maintained that Rainisto and Kushler do not teach or suggest "keeping the current character string in the first area if the user performs <u>a second gesture in the second area on the current character string</u>".

In response to the applicant's response, the examiner issued a notice of allowance and maintained the following:

> Regarding independent claims 6, 7, 23, 24, 25, 27, 32, 33, 37 and 38, the prior art of record neither anticipates nor suggests to a person of ordinary skill in the art, at the time the invention was made, the claimed method, device or computer readable media for text entry at a portable electronic device with a touch screen display comprising: in a first area of the touch screen display, displaying a current character string being input by a user with the keyboard; in a second area of the touch screen display that is between the first area and the keyboard, displaying the current character string or a portion thereof and a suggested replacement character string for the current character string on opposite sides of the second

*Reexamination Control Nos. 90/012,892*                                                                      Page 6

area; replacing the current character string in the first area with the suggested replacement character string if the user activates a space bar key on the keyboard; replacing the current character string in the first area with the suggested replacement character string if the user performs a first gesture on the suggested replacement character string displayed in the second area; and keeping the current character string in the first area and adding a space if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area.

I. *De Novo* Review of the Request for Reexamination - Findings and Analysis

In accordance with the requirements of the reexamination statue and rules, a review of the record as it appeared before the Examiner at the time of the order has been undertaken prior to the preparation of this decision. A *de novo* determination has been made as to whether the June 14, 2013 request for *ex parte* reexamination raises at least one SNQ. This review will focus on the correctness of the ultimate decision to grant or deny reexamination and will not review specific findings in the order denying reexamination. Specifically, in view of the submitted petition, it will be considered whether Ng raises a SNQ as to claims 2, 4-6, 8-15 and 17-20, whether King raises a SNQ as to claims 2-6, 8-15 and 17-20 and whether Ng in view of Robinson raises a SNQ as to claims 1 and 3.

Asserted SNQ over Ng Issue

As set forth in the Request, *Ng* relates to using letter and word choices to enhance text input especially on screens with sensors, sensor pads or pen based inputting on any keyboard systems or arrangement of characters and that the invention is especially relevant for touch screen or soft-key text-inputting applications in mobile devices, mobile phones, handhelds, PDAs, pocket computers, tablet PCs, sensor pads or any pen-based, virtual keyboard systems, or even hybrid physical keyboard and glove-based systems." See, e.g., *Ng* at p. 1, lines 1-12 and Figure 5.

Figure 5 of *Ng*, shown below, illustrates a current character string ("deva") being displayed in a first area and a second area of a touch screen display. *Ng* explains that the handheld device (250) therein includes a touch screen display (see item 258). See, e.g., *Ng* at p. 1, lines 1-12; and p. 16, lines 10-15. A current character string ("deva") located in the upper left portion of Figure 5 is displayed in a first area of the touch screen display. See, e.g., *Ng* at p. 5, lines 7-20. *Ng* also discloses displaying the same current character string ("deva") in a second area (i.e., a pre-determined window) of the touch screen display (see item 262).



It is determined that the pre-determined window which displays the current character string (262) also displays a plurality of word choices (e.g., 254; "devastating," "devalue," "devastate") that represent suggested replacement character strings. For example, *Ng* explains that "[i]n order to enhance choice selection and choice presentation, a predetermined window or display area is used to display the choices." See, e.g., *Ng* at p. 25, lines 3-4.

It is determined that *Ng* discloses displaying a current character string ("deva") in both a first area and a second area of a touch screen display, where the second area is separate from the first area.

In addition, *Ng* discloses that "FIG. 10 shows the concept of the letter and word choice text input method." See, e.g., *Ng* at p. 32, line 23. If the user presses an input key (step 700), a determination is made as to whether the key inputted is a character key (step 702). See, e.g., *Ng* at p. 32, line 24 - p. 33, line 7; and reference numerals 700 and 702 in Figure 10. "If the key inputted is not a character key and is a space, punctuation or carriage return 726," then the suggested "word choice" is selected (step 724). See, e.g., *Ng* at p. 32, line 30 - p. 33, line 5; and reference numerals 726 and 724 in Figure 10.

Reexamination Control Nos. 90/012,892                                                                                   Page 8

*Ng* also discloses that "[o]ne of the easiest and most powerful selection tools is the use of a screen input interface for choice selection." See, e.g., *Ng* at p. 26, lines 3-4. "This allows direct selection of the choice." See, e.g., *Ng* at p. 26, line 4. "Using a screen input interface for selection is not new and has been used in solutions like WordLogic and Microsoft® virtual keyboard." See, e.g., *Ng* at p. 26, lines 4-6. Thus, the touch screen interface allows users to make selections through gestures in *Ng*.

In consideration of the above comments, it is determined that the teachings of *Ng* shows a second area of the touch screen display that is between the first area and the keyboard, displaying the current character string or a portion thereof and a suggested replacement character string for the current character string. In addition, *Ng* shows replacing the current character string in the first area with the suggested replacement character string if the user activates a key on the keyboard and replacing the current character string in the first area with the suggested replacement character string if the user performs a first gesture on the suggested replacement character string displayed in the second area. It addition, *Ng* shows keeping the current character string in the first area if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area. It is determined that these features were emphasized by the applicant and the examiner, in part, during prosecution of the application which became the '172 patent. In addition, these features were in part relied upon in the request in its assertion of a substantial new question of patentability.

The petitioner maintained that **claims 2 and 18-20** do not require the "adding a space" limitation which was required in **claim 1**. In addition, the petitioner maintained that independent claims 2 and 18-20 require "keeping the current character string in the first area if the user performs a gesture in the second area on the current character string."

The teachings of *Ng* shows that a current character string in the first area is replaced with the suggested replacement character string if a user selects a space, punctuation or carriage return then the suggested "word choice" is selected. In addition, *Ng* discloses "replacing the current character sting in the first area with the suggested replace character string if the user performs a first gesture (selection using the touch screen interface) on the suggested replacing character.

With respect to "keeping the current character string in the first area if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area". *Ng* discloses at page 32, that "[i]f the word choice or the letter choice is what the user wants, the user simply selects it using any of the selection".

In view of the above comments and upon a *de novo* review of the record, it is determined that Ng raises a substantial new question of patentability with respect to claims 2, 4-6, 8-15 and 17-20.

*Reexamination Control Nos. 90/012,892*                                                                 Page 9

Asserted SNQ over Ng and Robinson Issue

It is determined that in addition to the comments set forth above with respect to *Ng* alone, the Request takes the position that claim 1 of the '172 Patent further recites "adding a space" to the current character string which is kept in the first area. As discussed above, making a selection through a gesture can result in a character string being displayed in the first area. *Ng* further discloses a space bar key that is configured to add a space to the text output in the first area. See, e.g., *Ng* at p. 29, lines 9-13; p. 31 line 1; and p. 32, lines 30 - p. 33, line 7. Thus, the act of selecting (e.g., through a gesture) a space bar key can add a space to the current character string (258) including in situations where the current character string (258) is kept in the first area in response to selecting the current character string (262) in the second area (i.e., the predetermined window).

The issue is whether a substantial new question is raised in part on teachings directed to "keeping the current character string in the first area and adding a space if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area". During prosecution, it was determined that the prior art failed to disclose, in part, "keeping the current character string in the first area and adding a space if the user performs a second gesture in the second area on the current character string."

As set forth in the Request, the *Robinson* prior art reference, explains that "the invention provides a reduced keyboard such as those implemented on a touch-sensitive panel or display screen and to mechanical keyboard systems, using word-level analysis to resolve inaccuracies (sloppy text entry) in user entries" and further that "[t]his invention is in the field of keypad input preferably for small electronic devices." See, e.g., *Robinson* at col. 1, lines 8-16 and Figure 1B.

*Robinson* also discloses a first area (i.e., output display region 104) that displays the current character string and a second area (i.e., word choice list region 150) that displays both the current character string (i.e., exact type word 154) and a suggested replacement string (e.g., default word 160). For example, *Robinson* explains that "[a]s a user enters a keystroke sequence using the keyboard, text is displayed on the computer display 103." See, e.g., *Robinson* at col. 16, lines 52-54. "An upper output text region 104 displays the text entered by the user and serves as a buffer for text input and editing." See, e.g., *Robinson* at col. 16, lines 56-58. "A word choice list region 150, which in a preferred embodiment shown in FIG. 1B is super-imposed on top of the text region 104, provides a list of words and other interpretations corresponding to the keystroke sequence entered by a user." See, e.g., *Robinson* at col. 16, lines 58-62. The word list region (150) includes an "'Exact Type' word 154 [which] shows the sequence of letters closest to the actual contact points of the input sequence ...." See, e.g., *Robinson* at col. 19, lines 5-9. The word choice list region 150 includes a "Default word 160 ('text' in the example of FIG. 1B) [which] is

*Reexamination Control Nos. 90/012,892*                                                          *Page 10*

the word from the vocabulary modules determined to have the lowest value of the matching metric (that is, the more likely the word corresponds to the user's intention), and ... is shown at the bottom of the word choice list ..." See, e.g., *Robinson* at col. 19, lines 13-19.

*Robinson* further discloses keeping the current character string in the first area if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area. For example, *Robinson* further discloses that, "for each input sequence of contact points, a word is constructed by identifying the character nearest each contact point and composing a word consisting of the sequence of identified characters." See, e.g., *Robinson* at col. 18, ll 47-51. "This 'Exact Type' word is then presented as a word choice in the word selection list ... [and] may then be selected in the usual manner by, for example, touching it in the word selection list." See, e.g., *Robinson* at col. 18, ll 51-54. "Once the user selects the Exact Type word, it is automatically 'accepted' for output and is added to the information being composed." See, e.g., *Robinson* at col. 18, ll 56-58.

The petitioner explains that the Request explicitly addresses modifying Ng with the teachings of Robinson to incorporate the functionality of "adding a space" upon the user performing a second gesture in the second area of the current character.

As explained above, claim 1 of the '172 Patent recites adding a space if the user performs a second gesture on the current character string displayed in the second area. With respect to this additional limitation, *Robinson* discloses that "the word selection list is presented as a vertical list of candidate words, with one word presented in each row, and wherein each row is further subdivided into regions or columns." See, e.g., *Robinson* at col. 30, lines 31-34. "The regions or columns define functions related to the acceptance of the candidate string displayed in the selected row, such as including or not including a trailing blank space, appending a punctuation mark or applying a diacritic accent." See, e.g., *Robinson* at col. 30, lines 34-38. "The function may be applied when the user touches the row of the intended string in the word selection list at a point contained in the region or column associated with the desired function." See, e.g., *Robinson* at col. 30, lines 39-42. "When the user selects the desired candidate word by contacting the row within certain regions or columns, the word is automatically 'accepted' for output and is added to the information being composed." See, e.g., *Robinson* at col. 30, lines 42-45. "For example, contacting a row within the region associated with appending a trailing space immediately outputs the associated word with a trailing space." See, e.g., *Robinson* at col. 30, lines 45-48.

In view of the above comments and upon a *de novo* review of the record, it is determined that *Ng* and *Robinson* raises a substantial new question of patentability with respect to claims 1 and 3.

Reexamination Control Nos. 90/012,892                                                                                                Page 11

Asserted SNQ over King

*King* explains that the "invention provides a reduced keyboard which uses word-level disambiguation to resolve ambiguities in keystrokes" and that "the system includes a display panel which is touch sensitive." See, e.g., *King* at col. 3, lines 11-13.

With reference to figure 1A, shown below, *King* discloses a current character string ("age") being displayed in a first area (66) and a second area (70) of a touch screen display (53), and that the second area (70) is separate from the first area (66). For example, *King* discloses that as "a user enters a keystroke sequence using the keyboard, text is displayed on the computer display 53." See, e.g., *King* at col. 9, lines 12-14. "An upper text region 66 displays the text entered by the user and serves as a buffer for text input and editing." See, e.g., *King* at col. 9, lines 15-17.



*Fig. 1A*

*King* explains that "[a] selection list region 70, located below the text region, provides a list of words and other interpretations corresponding to the keystroke sequence entered by a user." See, e.g., *King* at col. 9, lines 17-20. "Entries 78, 79, and 80 in the selection list are therefore words that correspond to the entered keystroke sequence, with the entries ordered so that the most common word corresponding to the keystroke sequence is listed first." See, e.g., *King* at col. 10,

lines 9-13. "The first entry 78 in the selection list is selected as a default interpretation and displayed in the text region 66 at an insertion point 88." See, e.g., *King* at col. 9, lines 63-65. Therefore, *King* discloses displaying a current character string in both a first area (66) and a second area (70) of a touch screen display (53).

As further shown in the Request, *King* discloses regardless of whether an entry in the second area (70) is the current character string (i.e., first entry 78) or a suggested replacement character string, "**the user may select the desired word from the selection list simply by touching it.**" See, e.g., *King* at col. 11, lines 20-23. Thus, touching or selecting the current character string (78) located in the second area (70) causes the current character string in the first area (66) to be kept.

During prosecution of the application which became the '172 patent, the applicant argued that the prior art do not teach or suggest "keeping the current character string in the first area and adding a space if the user performs <u>a second gesture in the second area on the current character string.</u>" In addition, the applicant maintained that the prior art do not teach or suggest "keeping the current character string in the first area if the user performs <u>a second gesture in the second area on the current character string</u>".

In conjunction with the comments set forth in the petition, it is acknowledged that with reference to claims 2 and 18-20, the claims do not require "adding a space if the user performs a second gesture" in the second area, however, other limitations such as "keeping the current character string in the first area if the user performs <u>a second gesture in the second area on the current character string</u>" was found to not be disclosed by the prior art of record. In view of the teachings set forth by *King*, it is agreed that the teachings raises a substantial new question of patentability over at least claims 2 and 18-20.

In addition, it is determined that with respect to "adding a space", this feature is required in claim 3. The Request asserts that *King* discloses automatically adding a space in response to a user selecting an entry in the selection list region. See, e.g., *King* at col. 27, lines 29-31. In addition, the Request asserts *King* further discloses that if the user performs a gesture on the current character string (78) located in the second area (70) (or any other entry the second area), "[t]he user may then press the Select key to generate a space that is immediately output to the text area at the insertion point 88." See, e.g., *King* at col. 11, lines 26-29.

The petitioner takes the position that like claims 2 and 18-20, dependent claims 3-6 and 8-15 *do not require* a "second area that is between the first area and the keyboard".

It is determined and agreed that *King* discloses that "following entry of the keystroke sequence corresponding to the desired word, the user may select the desired word from the selection list

Reexamination Control Nos. 90/012,892                                                              Page 13

simply by touching it. When a word is selected in this fashion *prior to any activation of the Select key*, the selected word is immediately output at the insertion point **without adding a space**, and the selection list is cleared. The user may then **press the Select key to generate a space** that is immediately output to the text area at the insertion point 88. See col. 11, lines 20-29.

The teachings of *King* show that a space is added *upon pressing the Select key*. In review of the Request, it is determined that the Request states that the second area is "i.e., the selection list region 70". The citations in the original Request specifically relied upon teachings of a first area, second area and a keyboard as being separate areas. Thus, while claims 2-6, 8-15 and 18-20 do not require a "second area that is between the first area and the keyboard", the Request, specifically indicated what it considers to be the second area of *King*. This area, as discussed above, is the selection list region 70. The citation relied upon in the Request (i.e. col. 27, lines 29-31) specifically shows the selection of the "Select key 60" for selecting the entry in the selection list and thus causing a space to be appended. It is clear that other teachings of *King* shows that a space is not added if a user select the word directly from the selection list as shown above and in col. 11, lines 20-29 of *King*. Since claim 3 specifically requires adding a space if the user performs the second gesture on the current character string <u>displayed in the second area</u> and since the Request took the position that the second area is the "selection list region 70", it is determined that <u>the Request failed to present a substantial new question with respect to at least the issue regarding adding a space in view of the teachings of *King*</u>.

The petitioner addresses the issue of "a second gesture is performed in the second area". The petitioner states that the discussion on pages 145-147 of the Request (which also references pages 137-140 of the Request) demonstrates how *King* discloses the performance of the second gesture in the second area. As explained therein, a current character string being input by a user is displayed in both a first area (e.g., the upper text region 66) and second area of the touch screen display (i.e., the selection list region 70). More specifically, *King* discloses that "[t]he first entry 78 in the selection list is selected as a default interpretation and displayed in the text region 66 at an insertion point 88" and that "the user may select the desired word from the selection list simply lines 20-23 and col. 9, lines 63-65; see also page 139 of the Request which illustrates the current character string being displayed in both the first and second areas of the display in Figure 1A of *King*. In other words, *King* discloses that the current character string is displayed as the first entry in the selection list region (i.e., the second area) and the upper text region (i.e., the first area), and that performing a gesture (i.e., by touching it) on the first entry in the selection list region (i.e., the second area) results in the current character string being kept in the upper text region (i.e., the first area). As set forth above, it is agreed that *King* raises a substantial new question with respect to teachings directed to "a second gesture is performed in the second area".

*Reexamination Control Nos. 90/012,892*                                                          *Page 14*

In view of the above comments and upon a *de novo* review of the record, it is determined that *King* raises a substantial new question of patentability with respect to claims 2, 4-6, 8-15 and 17-20 of the '172 patent.  It is **not** determined that King raises a SNQ over **claim 3**.

## CONCLUSION

1.   Based on a *de novo* review of the record as a whole, the petition is granted-in-part. Accordingly, the request for *ex parte* reexamination of claims 1-6, 8-15 and 17-20 (as well as claims 21-38 as previously granted in the August 19, 2013 Order) of the '172 patent is granted. Those claims will be reexamined.

2.   The decision is final and nonappealable.  See 35 USC 303(c) and 37 CFR 1.515(c).  No further communication on this matter will be acknowledged or considered.

3.   A 2-month period for filing a statement under 37 CFR 1.530 is set forth from the mailing date of this decision.

4.   The reexamination file will be returned to the CRU Supervisory Patent Examiner (SPE) of the art unit that will handle the reexamination for consideration of reassignment to another examiner at the discretion of the director.

5.   Telephone inquiries related to this decision should be directed to Alexander Kosowski, Supervisory Patent Examiner in Art Unit 3992, at (571)272-3744 or to the undersigned at (571) 272-0700.

_____
Irem Yucel, Director
Central Reexamination Unit