# EXHIBIT 3

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

SUBJECT TO PROTECTIVE ORDER – OUTSIDE ATTORNEYS' EYES ONLY
CONTAINS HIGHLY CONFIDENTIAL SOURCE CODE INFORMATION

**EXPERT REPORT OF KENNETH A. PARULSKI REGARDING INFRINGEMENT OF U.S. PATENT NO. 6,226,449**

Signed:   August 12, 2013

*[signature]*

**TABLE OF CONTENTS**

**Page**

TABLE OF EXHIBITS ...................................................................................................................1

I.   INTRODUCTION ...............................................................................................................2

II.  BASES OF OPINIONS .......................................................................................................3

    A.  Qualifications ..........................................................................................................3

    B.  Materials Considered ..............................................................................................6

III. UNDERSTANDING OF RELEVANT LEGAL STANDARDS........................................7

    A.  Claim Construction .................................................................................................7

    B.  Infringement ............................................................................................................8

        1.  Direct Infringement .....................................................................................8

            (a)  Literal Infringement ........................................................................9

            (b)  Doctrine of Equivalents ..................................................................9

    C.  Prosecution History Estoppel................................................................................10

IV.  THE ACCUSED APPLE PRODUCTS .............................................................................11

    A.  Overview of the Accused Apple Products............................................................11

    B.  iOS ........................................................................................................................12

    C.  Photos and Camera Applications ..........................................................................13

    D.  Source Code ..........................................................................................................15

V.   OVERVIEW OF THE '449 PATENT ...............................................................................20

    A.  The Specification ..................................................................................................20

    B.  The Hitachi MP-EG1 Product...............................................................................24

    C.  The Prosecution History .......................................................................................28

    D.  The Asserted Claims .............................................................................................42

    E.  Level of Ordinary Skill in the Art .........................................................................43

    F.    Claim Construction ................................................................................................43

VI.    THE ACCUSED APPLE PRODUCTS INFRINGE THE ASSERTED CLAIMS OF THE '449 PATENT ....................................................................................................44

    A.    The Accused Apple Products Infringe Claim 25 of the '449 Patent ........................44

        1.    Claim 25 Preamble: "A digital camera comprising": ...................................44

            (a)    Response To Apple Non-Infringement Arguments ..........................50

            (b)    Doctrine Of Equivalents Opinion .....................................................52

        2.    Claim 25[A]: "a lens" ..................................................................................52

        3.    Claim 25 [B]: "an imaging device which converts an optical image into an analog signal" .............................................................................57

        4.    Claim 25 [C]: "an A/D converter which converts said analog signal from said imaging device to a digital signal" ...........................................64

            (a)    Response To Apple Non-Infringement Arguments ..........................68

            (b)    Doctrine Of Equivalents Opinion .....................................................69

        5.    Claim 25 [D]: "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals" .......................................................................69

            (a)    Response To Apple Non-Infringement Arguments ..........................81

            (b)    Doctrine Of Equivalents Opinion .....................................................81

        6.    Claim 25 [E]: "a recording circuit which records compressed data, said compressed data including a moving image signal, and a still image signal" ............................................................................................82

        7.    Claim 25 [F]: "a decompressor which decompresses said compressed data by using a different decompressing method according to whether said recorded compressed data is a moving image signal or a still image signal" .................................................................................87

            (a)    Response To Apple Non-Infringement Arguments ..........................91

            (b)    Doctrine Of Equivalents Opinion .....................................................92

8.  Claim 25 [G]: "a reproducing circuit which reproduces a moving image signal, a sound signal in synchronous to said moving image signal, and a still image signal" .................................................................. 92

9.  Claim 25 [H]: "a display which displays said moving image signals and still image signals outputted from said reproducing circuit, and a list of said moving image signal and still image signal as a search mode, and a list of classifications as a classification mode" ..................... 98

    (a)  Response To Apple Non-Infringement Arguments ........................ 101

    (b)  Doctrine Of Equivalents Opinion .................................................... 103

10. Claim 25 [I]: "wherein said recording circuit records each one of said plurality of image signals with classification data" ......................... 104

    (a)  Response To Apple Non-Infringement Arguments ........................ 105

    (b)  Doctrine Of Equivalents Opinion .................................................... 106

11. Claim 25 [J]: "said display lists a plurality of classifications and a number of images belonging to each classification" ............................... 107

12. Claim 27: "A digital camera according to claim 25, wherein said classification is able to change by a direction of a user." ........................ 108

VII.  THE ALTERNATIVES PROPOSED BY APPLE LACK THE ADVANTAGES OF THE CLAIMED INVENTIONS ............................................................................... 111

VIII. TRIAL AND SUPPLEMENTAL OPINIONS ................................................................ 112

126. 

127.    In addition, I have inspected and used each of the Accused Apple Products and confirmed that they perform the functionality of a digital camera.  For example, I analyzed photo files generated by the Accused Apple Products and confirmed that they comprise compressed still image data.  Since the Accused Apple Products capture images and store them in compressed digital form, they necessarily must be digital cameras.

**(a)    Response To Apple Non-Infringement Arguments**

128.    Apple argues that the Accused Apple Products are not digital cameras, because the claimed "digital camera" cannot be a system or device in which a digital camera is merely a component part.  (*See* Apple Inc.'s Further Supplemental Objections And Responses To Samsung's First Set Of Interrogatories To Apple (No. 12), dated July 15, 2013, pp. 164-169.)  However, I understand that a product infringes a claim if it meets each limitation of the claim, even if the product contains additional components or features beyond those recited in the claim.  In my opinion, each Accused Apple Product is a digital camera as recited in claim 25 of the '449 Patent, even the products include additional components or features.

129.    In support of its argument, Apple states that the scope of claim 25 was narrowed from "[a]n image recording and reproducing apparatus" to a "digital camera" to overcome certain prior art cited during prosecution, and that Samsung may not now recapture what was

surrendered. For this proposition Apple cites the July 31, 2000 Amendment filed by the Applicant during prosecution of the '449 Patent. However, nothing in that Amendment, or in the claims, the specification, or the rest or the file history limits the scope of the "digital camera" claim term so as to exclude the Accused Apple Products. The amendment cited by Apple merely clarifies that the invention is directed at a digital camera, not at the type of conventional camera used, for example, in U.S. Pat. No. 5,613,032 ("Cruz"). The Cruz prior art reference used conventional cameras that were not capable of generating of storing digital data. The Cruz cameras lacked an analog-to-digital-converter, a compressor, or a digital memory, and could not store or output images in digital form. The Accused Apple Products, on the other hand, include the components and functionality of a digital camera as claimed.

130. I further disagree with Apple's argument because the file history shows that the July 31, 2000 amendments not only changed the preamble but added several new limitations in order to clarify that the invention is directed at a "digital camera" which captures images and stores them digitally. The limitations that were added in the July 31, 2000 amendment include a lens, an imaging device, an A/D converter, a compressor, and a decompressor. The Accused Apple Products include all of the digital camera-related limitations that were added in the amendment.

131. Apple cites the testimony of Apple corporate designee Tim Millet in support of its position. However, when Mr. Millet was asked whether the iPhone is the most popular camera in the world his response was "I hope so." (Millet Tr. 44:1-5.) When Mr. Millet later contradicted himself by testifying that he would not refer to the iPhone as a camera, he was clearly tailoring his answers to the positions taken by Apple in this litigation. (*See* Millet Tr. 44:6-45:2.) Mr. Millet went as far as stating that characterizing the iPhone as a camera—as

an A/D converter which converts the analog signal from the image array into a 10 bit digital signal.

### (a) Response To Apple Non-Infringement Arguments

166. Apple argues that its Accused Products don't meet this limitation because the analog-to-digital converters in its products are located within the image sensors. Apple's argument is based in an erroneous premise. The "imaging device" in the Accused Apple Products is the ███████████, not the entire CMOS image sensor integrated circuit. The analog-to-digital converter in each CMOS image sensor integrated circuit discussed above is a separate and distinct block from the ███████████, even if both are contained within a single integrated circuit "chip." Therefore, even if Apple were correct that "the claims require an A/D converter to receive an analog signal from the imaging device, *i.e.*, an A/D converter distinct from the imaging device," the Accused Apple Products literally meet this limitation. (*See* Apple Inc.'s Further Supplemental Objections And Responses To Samsung's First Set Of Interrogatories To Apple (No. 12), dated July 15, 2013, pp. 164-169.)

167. To the extent Apple argues that anything in the claims, specification, or file history of the '449 Patent suggests that the claimed "A/D converter" must be a "standalone component" that cannot be part of the same integrated circuit as the imaging device, I disagree. Nothing in the '449 Patent or its prosecution history suggests that the term should be so limited.

168. Each of the Accused Apple Products includes a CMOS image sensor integrated circuit which includes both an imaging device that converts an optical image into an analog signal and an A/D converter which converts the analog signal from the imaging device to a digital signal. The CMOS image sensor in each Accused Apple Product includes an image array, which is the claimed imaging device, and also includes an A/D converter, which converts the

analog signal from the image array to a digital signal. Therefore, the Accused Apple Products literally meet the "A/D converter" limitation of claim 25.

### (b) Doctrine Of Equivalents Opinion

169. To the extent the Accused Apple Products are determined not to meet the "A/D converter" limitation of claim 25 literally, it is my opinion that each Accused Apple Product meets the limitation under the doctrine of equivalents. Each analog-to-digital converter in the Accused Apple Products performs the function of the claimed "A/D converter"—converting the analog signal from an imaging device to a digital signal, in the same way—through quantization of the analog signal into digital values, to obtain the same result—a digital signal corresponding to the analog signal from the imaging device.

### 5. Claim 25 [D]: "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals"

170. In my opinion, each of the Accused Apple Products includes "a compressor which compresses said digital signal outputted from said A/D converter, and generates compressed data by using a different compressing method for moving image signals and for still image signals." Setting aside the evidence cited below, my testing of the Accused Apple Products demonstrates that each product captures photos and videos and stores them in compressed digital form. For example, I analyzed image files generated by the Accused Apple Products and confirmed that they contain compressed digital data. Videos are compressed using a different compression method than the one used for photos. Therefore, each Accused Apple Product must include a compressor as claimed.

**(a)  Response To Apple Non-Infringement Arguments**

192.  Apple states that " ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████ (*See* Apple Inc.'s Further Supplemental Objections And Responses To Samsung's First Set Of Interrogatories To Apple (No. 12), dated July 15, 2013, pp. 164-169.)  To the extent Apple argues that this is somehow a non-infringement argument, I disagree.

193.  First, I note that the plain language of the claim does not require that the "compressor" limitation must to correspond to a "single component."  Nothing in the claims, specification or file history of the '449 Patent prevents the "compressor" limitation from being met, for example, by more than one integrated circuit component.  Moreover, in the Accused Apple Products, both video and still image compression are performed using a portion of each device's single System On a Chip integrated circuit.  In the case of the █████████████ ███████████████████████████ k, as described above and as Apple engineer Tim Millet testified. (*See* Millet Tr. At 65-66).  The ████████████ performs compression and decompression of still and moving images using different compressing methods, just like the "MPEG/JPEG ENC/DEC" block 409 in FIG. 4 of the '449 patent.

**(b)  Doctrine Of Equivalents Opinion**

194.  To the extent the Accused Apple Products are determined not to meet the "compressor" limitation of claim 25 literally, it is my opinion that each Accused Apple Product meets the limitation under the doctrine of equivalents.  Each ████████████ or corresponding block in each Accused Apple Product performs the function of the claimed "compressor"—compressing a digital signal output by an A/D converter and generating compressed data using a different compressing method for moving or still images, in the same

81

204. The "⬛⬛⬛⬛" diagram, shown below (*see* APL630DEF-WH0004002038), depicts how processed still image signals are provided to a "JPEG Driver" in the iOS Kernel, which feeds a "JPEG Encoder." The JPEG Encoder provides "Compressed data" back to the JPEG Driver. A block titled "⬛⬛⬛⬛" in the "User Space" provides the compressed still image data to the NAND Flash Interface.



205. The ⬛⬛⬛ used in the iPod Touch (4th Gen) is described in the ⬛⬛⬛ ⬛⬛⬛ (*See* APL630DEF-WH0001726602 - 1732790). Section 4.3 of this document includes a block diagram (*See* APL630DEF-WH0001726634), a portion of which is shown below. This diagram depicts the "⬛⬛⬛⬛" which is connected to the "⬛⬛⬛⬛" and is used with "⬛⬛⬛⬛." In my opinion, this ⬛⬛⬛⬛ ⬛⬛⬛ provide a recording circuit which records compressed data, including a moving image signal and a still image signal, in the DDR NAND FLASH memory.

86



206. The ▊▊▊▊ used in the Apple iPhone 3GS is described in the ▊▊▊▊ ▊▊▊▊ (*See* APL630DEF-WH0001708681 - 1712045). The ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ which is depicted in a block diagram (*See* APL630DEF-WH0001710784). In my opinion, the "▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊" provide a recording circuit which records compressed data, including a moving image signal and a still image signal, in the NAND FLASH memory.



Figure 1. FMC Block Diagram

7. **Claim 25 [F]: "a decompressor which decompresses said compressed data by using a different decompressing method according to whether said recorded compressed data is a moving image signal or a still image signal"**

207. In my opinion, each of the Accused Apple Products includes "a decompressor which decompresses said compressed data by using a different decompressing method according to whether said recorded compressed data is a moving image signal or a still image signal." Setting aside the evidence cited below, my testing of the Accused Apple Products demonstrates

decompressing method according to whether said recorded compressed data is a moving image signal or a still image signal.

215. The ▮▮▮▮ used in the Apple iPhone 3GS is described in the ▮▮▮▮ ▮▮▮▮ (*See* APL630DEF-WH0001708681 - 1712045).  The features of the ▮▮▮▮ include "▮▮▮▮▮▮▮▮▮▮▮▮." (*See* APL630DEF-WH0001708699.)  The Block Diagram of the ▮▮▮▮ in the ▮▮▮▮▮▮ includes a ▮▮▮▮▮▮▮." (*See* APL630DEF-WH0001708700).  The ▮▮▮▮▮▮ includes an H.264 Video Decoder which decompresses videos (*see* APL630DEF-WH0001711190-1365) and a JPEG Encoder / Decorder which decompresses photos. (*See* APL630DEF-WH0001711131-189.)  In my opinion, the ▮▮▮▮ ▮▮▮▮ comprises a decompressor for moving and still image signals, and uses different decompressing methods for the moving and still image signals.

### (a)   Response To Apple Non-Infringement Arguments

216. As with the compressor limitation, Apple argues that different components in the Accused Apple Products perform decompression of photos and videos. (*See* Apple Inc.'s Further Supplemental Objections And Responses To Samsung's First Set Of Interrogatories To Apple (No. 12), dated July 15, 2013, pp. 164-169.)  To the extent Apple argues that this is somehow a non-infringement argument, I disagree.

217. First, I note that the plain language of the claim does not require that the "decompressor" limitation must to correspond to a "single component," or that it must be a separate and distinct component from the claimed "compressor."  Nothing in the claims, specification or file history of the '449 Patent prevents the "decompressor" limitation from being met, for example, by more than one logic circuit, including logic circuits that also perform compression.  Moreover, in the Accused Apple Products, both video and still image decompression are performed using a block of each device's application processor.  For

91

example, video and still image decompression functionality is included in the [REDACTED], as Apple engineer Tim Millet testified. (Millet Tr. At 65-66.). The [REDACTED] performs compression and decompression of still and moving images using different compressing methods, just like the "MPEG/JPEG ENC/DEC" block 409 in FIG. 4 of the '449 patent.

### (b) Doctrine Of Equivalents Opinion

218. To the extent the Accused Apple Products are determined not to meet the "compressor" limitation of claim 25 literally, it is my opinion that each Accused Apple Product meets the limitation under the doctrine of equivalents. Each [REDACTED] or corresponding block in each Accused Apple Product performs the function of the claimed "decompressor"—decompressing compressed image data using a different compressing method for moving or still images, in the same way—by executing a different decompression algorithm for still images or video, to obtain the same result—decompressed photo or video data that can be reproduced for display.

### 8. Claim 25 [G]: "a reproducing circuit which reproduces a moving image signal, a sound signal in synchronous to said moving image signal, and a still image signal"

219. In my opinion, each of the Accused Apple Products includes "a reproducing circuit which reproduces a moving image signal, a sound signal in synchronous to said moving image signal, and a still image signal." Setting aside the evidence cited below, my testing of the Accused Apple Products demonstrates that each product captures photos and videos and stores them in compressed digital form. Each product also displays or plays back the compressed photos and videos. In order to render and display photos and videos with audio, each product must include a reproducing circuit as claimed.



236.     The Albums List view provides a very valuable feature, which allows different users to classify the photos and videos they have captured in many different ways. Apple engineer Justin Titi stated that "There are many, many different ways that people use albums in their workflows" and that "A user may create an album for each major event that occurs throughout the year." (*See* Titi dep. 62:5-14.)

      **(a)**  **Response To Apple Non-Infringement Arguments**

237.     Apple contends that the Camera Roll album "does not allow users to search for particular images or videos, but rather uses a thumbnail grid structure for allowing users to browse through all of the images and videos that have been recorded using the device's front or back camera components." (*See* Apple Inc.'s Further Supplemental Objections And Responses To Samsung's First Set Of Interrogatories To Apple (No. 12), dated July 15, 2013, pp. 164-169.) The allegation that Camera Roll does not allow a user to search for particular images in demonstrably false, because the Camera Roll allows the user to search for a particular photo or video by browsing through the images captured with the Accused Apple Product's camera(s) to

101

find a particular photo or video, as I have done.  Nothing in the claims, specification or file history of the '449 Patent suggests that the claimed "search mode" should be limited so as to exclude this functionality.  Moreover, as Mr. Titi admitted, the user can use the Camera Roll to "find" a particular photo.  (Titi Tr. 60:11-61:1.)

238. Apple further argues that the Camera Roll does not "provide a data list from which a user may select and retrieve images or videos" and that it "does not, for example, display the time or date the image or video was recorded to the user." (*See* Apple Inc.'s Further Supplemental Objections And Responses To Samsung's First Set Of Interrogatories To Apple (No. 12), dated July 15, 2013, pp. 164-169.)   According to Apple, the Camera Roll is not a "list" as claimed, but rather a grid of thumbnail images.  I disagree with Apple's arguments.  The Camera Roll, in fact, lists the photos and videos it contains using thumbnail images, and therefore meets the limitation of a "list of said moving image signal and still image signal as a search mode."  Nothing in the claims, specification or file history of the '449 Patent suggests that the claimed "search mode" should exclude lists of thumbnail images; in fact, that functionality is explicitly depicted in Figure 8 of the '449 patent.

239. The Camera Roll implements the claimed as a grid of thumbnails.  The user may selects the thumbnail of the photo or video they want to view, and the Accused Product displays the still image or enables the user to play the video. (*See* Titi Tr at 59-64; 70:12-72:11.) Figure 8 of the '449 patent shows a list which includes "reduced images" (*i.e.* thumbnails) "so that the content of the data may be easily recognized" ('449 Patent at 9:19-20), and which allows the "reduced image" associated with a photo or video to be selected using up and down arrow controls (305a and 305c in FIG 3), and then allows a selected photo to video to be played using a right arrow control (305b in FIG. 3).  Both the Camera Roll View in the Accused Products and

FIG. 8 of the '449 patent are "search modes" comprising a list of moving image signals and still image signals. Nothing in the claims, specification or file history of the '449 Patent suggests that the claimed "search mode" should exclude lists implemented as grids of thumbnail images. For example, a "grocery list," or any other type of list, can be displayed as a grid, as shown below. Each item in a "list" does not need to be displayed on a separate line.

[Grocery List image]

240.    Finally, there is no support in the claims, specification or file history of the '449 Patent to require that the claimed "list of said moving image signal and still image signal as a search mode" display the time or date the image or video was recorded to the user.

### (b)    Doctrine Of Equivalents Opinion

241.    To the extent the Accused Apple Products are determined not to meet the "search mode" limitation of claim 25 literally, it is my opinion that each Accused Apple Product meets the limitation under the doctrine of equivalents. The Camera Roll in each Accused Apple Product performs the function of the claimed "search mode"—displaying a list of photos and videos, in the same way—by listing each photo and video as an item on the screen, to obtain the same result—a displayed list allowing the user to find a particular photo or video.

245. Moreover, the ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████  (*See* APL630DEF-WH-SC15136-156.)

      (a)      **Response To Apple Non-Infringement Arguments**

246. Apple argues that "images and videos are not associated with any user-created Albums when they are recorded, nor is the Camera Roll an Album." (*See* Apple Inc.'s Further Supplemental Objections And Responses To Samsung's First Set Of Interrogatories To Apple (No. 12), dated July 15, 2013, pp. 164-169.)  First, I note that it is irrelevant whether images and videos are associated with a user-created album when they are recorded.  The claim limitation simply requires the circuit to record each image with "classification data."  Nothing in the claims, specification or prosecution history of the '449 Patent suggests that "classification data" should be limited to user-defined albums.

247. It is also irrelevant whether Apple chooses to call the Camera Roll an "album" or not.  Apple refers to the Camera Roll as an album in its user manuals, source code, and other documentation.  I have not seen any evidence of Apple referring to the Camera Roll as something other than an album outside of the context of this litigation.  In any case, what is relevant to my infringement analysis is that each Accused Apple Product records each captured

image with "classification data" classifying the image as belonging to the Camera Roll. The Camera Roll is a different classification than, for example, the Photo Library. The Photo Library contains images imported to an Accused Apple Product from a computer, whereas the Camera Roll contains images captured with product. As another example, the Camera Roll classifies the still and video images as having been captured by an image sensor in the Accused Apple Product, rather than having been imported from a digital SLR using the Camera Import Kit. (*See* Titi Tr. 29:4-14.)

248. The Accused Apple Products list the "Camera Roll" as the top entry in the "Albums" list view of the Photos application. While the "Camera Roll" is not created by the user, and cannot be renamed, it corresponds to classification data recorded with each image captured with an Accused Apple Product. (*See* Titi Tr. at 42-44.) The Camera Roll is a classification for photos and videos captured by the user.

### (b)    Doctrine Of Equivalents Opinion

249. To the extent the Accused Apple Products are determined not to literally meet the limitation of recording "each one of said plurality of image signals with classification data," it is my opinion that each Accused Apple Product meets the limitation under the doctrine of equivalents. Adding each captured image to the Camera Roll in each Accused Apple Product performs the function recording the image with classification data—classifying each captured image at the time it is recorded, in the same way—by recording data in memory when the image is captured, to obtain the same result—each image is assigned a classification at the time it is recorded, and may be found later by browsing the contents of that classification in the device.