# EXHIBIT 5

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Confidential Business Information - Outside Attorneys' Eyes Only

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4

5     APPLE, INC., a California          )

6     corporation,                       )

7           Plaintiff,                    )      Case No.

8                                         )12-cv-00630-LHK (PSG)

9             vs.                         )

10    SAMSUNG ELECTRONICS CO., LTD., a )

11    Korean corporation; SAMSUNG        )

12    ELECTRONICS AMERICA, INC., a New )

13    York corporation; and SAMSUNG      )

14    TELECOMMUNICATIONS AMERICA, LLC, )

15    a Delaware limited liability       )

16    company,                           )

17           Defendants.                  )

18    _____ )

19    Confidential Business Information - Outside Attorneys' Eyes Only

20        VIDEOTAPED DEPOSITION OF THOMAS E. FUJA, Ph.D.

21              Thursday, September 19, 2013

22                 Boston, Massachusetts

23

24     Reported by:  Dana Welch, CSR, RPR, CRR, CBC, CCP,

25     Job No. 65943

Confidential Business Information - Outside Attorneys' Eyes Only

Page 94

| | | |
|---|---|---|
| 1 | -- no.  I misspoke. | 11:51 |
| 2 | Let's start over. | 11:52 |
| 3 | A.  Okay. | 11:52 |
| 4 | Q.  We're looking at claim 9. | 11:52 |
| 5 | A.  I'm there. | 11:52 |
| 6 | Q.  And we're now looking at column 16, line | 11:52 |
| 7 | 22. | 11:52 |
| 8 | A.  Okay. | 11:52 |
| 9 | Q.  And you see the claim language, "A | 11:52 |
| 10 | receiver receiving non-scheduled transmission | 11:52 |
| 11 | information"? | 11:52 |
| 12 | A.  I do. | 11:52 |
| 13 | Q.  Now, you say in your report that this | 11:52 |
| 14 | claim language requires actively receiving data, | 11:52 |
| 15 | correct? | 11:52 |
| 16 | A.  I do. | 11:52 |
| 17 | Q.  Now, you understand that it's the court's | 11:52 |
| 18 | job to construe claims, correct? | 11:52 |
| 19 | A.  I understand that. | 11:52 |
| 20 | Q.  And the court has never construed the | 11:52 |
| 21 | language "a receiver receiving non-scheduled | 11:52 |
| 22 | transmission information." | 11:52 |
| 23 | A.  Which as I understand it, means we're to | 11:52 |
| 24 | assign it the ordinary meaning. | 11:52 |
| 25 | Q.  The court has never said that the language | 11:52 |

Confidential Business Information - Outside Attorneys' Eyes Only

Page 95

1   a receiver receiving non-scheduled transmission       11:52

2   information requires actively receiving data?          11:52

3      A.  Is that a question?                             11:52

4      Q.  Yes.                                            11:52

5      A.  I am not aware of the court having made          11:52

6   that determination.                                    11:53

7      Q.  You're not aware of the court ever saying        11:53

8   that the language a receiver receiving                 11:53

9   non-scheduled transmission information requires        11:53

10  more than capability?                                  11:53

11     A.  I am not aware that the court has made          11:53

12  that determination.                                    11:53

13     Q.  ███████████████████████████   ██████           11:53

    █  ███████████████████████████████████ not 11:53

15  a receiver receiving non-scheduled transmission        11:53

16  information?                                           11:53

17      MS. SAXTON:  Objection.                            11:53

18     A.  Again, you're asking me what the court has      11:53

19  found, and I am not aware that the court has found     11:53

20  that.                                                  11:53

21     Q.  If the court says that ███████████  ██████      11:53

    █  ███████████████████████████████ a 11:53

23  receiver receiving non-scheduled transmission          11:53

24  information, your first non-infringement argument      11:53

25  for claimant 10 would no longer apply?                 11:53

Confidential Business Information - Outside Attorneys' Eyes Only

Page 96

1        MS. SAXTON:  Objection.                          11:53

2        A.  If the court were to decide -- if the        11:53

3    court were to hold that a receiver receiving         11:53

4    non-scheduled transmission information is language   11:53

5    that describes software that has the capability of   11:54

6    receiving non-scheduled transmission information,    11:54

7    then the first argument, the first non-infringement  11:54

8    argument would not apply.                            11:54

9        Q.  So if the court were to hold that a          11:54

10   receiver receiving non-scheduled transmission        11:54

11   information can be met by software that has the       11:54

12   capability of receiving non-scheduled transmission   11:54

13   information, then your first non-infringement         11:54

14   argument for claims 10, 35, and 40 would no longer   11:54

15   apply?                                               11:54

16       A.  It is my analysis, it is my understanding    11:54

17   of the term receiver receiving, to one of ordinary   11:54

18   skill in the art, that it requires something that    11:55

19   is actually receiving the non-scheduled              11:55

20   transmission information.  And I base my analysis    11:55

21   on that understanding of the ordinary -- of the      11:55

22   plain and ordinary meaning of the term.              11:55

23       If the court holds differently, then the         11:55

24   non-infringement argument would not be applicable.   11:55

25       Q.  If the court disagrees with you and says     11:55

Confidential Business Information - Outside Attorneys' Eyes Only

Page 97

1   that the language a receiver receiving does not        11:55

2   require more than the capability of receiving, then    11:55

3   your first non-infringement argument for claims 10,    11:55

4   35, and 40 would no longer apply?                      11:55

5        MS. SAXTON:   Objection.                          11:55

6   A.   I think that's correct.                           11:55

7   Q.   ███████████████████████████████     ████         11:55

    ██████████████████████████████████████     ████

    ██ ████████████                                       11:55

10  A.   That's my recollection.                           11:55

11  Q.   ██████████████████████████████████     ████      11:55

██  ████████████████████                                  11:56

13  A.   He did.                                           11:56

14  Q.   ████████████████████████████████████████     ████ 11:56

██  ████████████████████████████████████████████     ████

██     ███   ██████████████     █████████                 11:56

17  Q.   I'm going to hand you a document that you         11:56

18  cite in your report.                                   11:56

19       (Exhibit 5, TMO-APL-SMSNG-00004743 - 881,         11:56

20  RNC3267, Radio Resource Management of HSUPA, marked    11:56

21  for identification.)                                   11:56

22  Q.   I've marked it as Exhibit 5.  It has a            11:56

23  Bates number of TM0-APL-SMSNG-00004743, and it ends    11:56

24  on a page having a Bates number ending in 4881.        11:56

25       Have you seen this document before?               11:56

Confidential Business Information - Outside Attorneys' Eyes Only

Page 214

| | | |
|---|---|---|
| 1 | line 52 in the '596 patent. | 04:07 |
| 2 | A.  Line 52? | 04:07 |
| 3 | Q.  That's correct. | 04:07 |
| 4 | Do you see the header, "Exemplary | 04:07 |
| 5 | embodiment 1? | 04:07 |
| 6 | A.  I do. | 04:07 |
| 7 | Q.  Did you review exemplary embodiment 1 | 04:07 |
| 8 | before you formed your opinions about N? | 04:07 |
| 9 | A.  I did. | 04:07 |
| 10 | Q.  I want to look at exemplary embodiment 1 | 04:07 |
| 11 | in detail.  If you could now turn to the next | 04:07 |
| 12 | column, column 8, and direct your attention to line | 04:07 |
| 13 | 17 through 18. | 04:07 |
| 14 | A.  Okay. | 04:07 |
| 15 | Q.  Do you see where it says, "An N field 524 | 04:07 |
| 16 | or 534 for representing the number of PDUs"? | 04:07 |
| 17 | A.  I do. | 04:07 |
| 18 | Q.  In this first exemplary embodiment in the | 04:07 |
| 19 | '596 patent, N is representing the number of PDUs; | 04:08 |
| 20 | isn't that correct? | 04:08 |
| 21 | A.  It is. | 04:08 |
| 22 | Q.  Okay.  Let's now turn to column 9, lines 3 | 04:08 |
| 23 | through 4.  Can you please read aloud the sentence | 04:08 |
| 24 | that begins column 9, line 3. | 04:08 |
| 25 | A.  "The N field 534 contains information | 04:08 |

Confidential Business Information - Outside Attorneys' Eyes Only

Page 215

1   about the number of RLC PDUs 560 contained in the      04:08

2   MAC-es PDU 550."                                       04:08

3        Q.  So once again, we see that N is the number    04:08

4   of PDUs, don't we?                                     04:08

5        A.  In the first embodiment, yes, we do.          04:08

6        Q.  Let's now look at the next embodiment that    04:08

7   the '596 patent calls exemplary embodiment 2.  Can     04:08

8   you turn to column 10, line 45.                        04:08

9        A.  Okay.                                          04:08

10       Q.  And do you see where the description of        04:08

11  exemplary embodiment 2 begins?                         04:08

12       A.  I do.                                          04:09

13       Q.  I want you to turn to the next column,        04:09

14  column 11, lines 18 through 19.                        04:09

15       A.  Okay.                                          04:09

16       Q.  Do you see where it says, "An N field 825     04:09

17  for representing the number of RLC PDUs"?              04:09

18       A.  I do.                                          04:09

19       Q.  So in the second embodiment of the '596       04:09

20  patent, the N field is once again representing the     04:09

21  number of PDUs, isn't it?                              04:09

22       A.  It is.                                         04:09

23       Q.  Now, if you could look a little bit           04:09

24  farther down in column 11 to lines 52 through 53.      04:09

25  Do you see where the '596 patent says, "An N field     04:09

Confidential Business Information - Outside Attorneys' Eyes Only

Page 216

1    925 for representing the number of RLC PDUs"?        04:09

2        A.  I do.                                        04:09

3        Q.  So this is the fourth time now that we've    04:09

4    seen that the '596 patent says N field represents    04:09

5    number of RLC PDUs?                                  04:09

6        A.  That's correct.                              04:10

7        Q.  If you could please turn to column 13,       04:10

8    line 46.                                             04:10

9        A.  I'm sorry, where?                            04:10

10       Q.  Column 13, line 46.                          04:10

11       A.  Okay.                                        04:10

12       Q.  So do you see where it refers to exemplary   04:10

13   embodiment 3?                                        04:10

14       A.  Yes.                                         04:10

15       Q.  Now, in the first two exemplary             04:10

16   embodiments, we saw in both instances that N is the 04:10

17   number of PDUs, correct?                             04:10

18       A.  In the examples that you pointed out from    04:10

19   the text of the specification, those were examples   04:10

20   where N represented the number of PDUs.              04:10

21       Q.  Do you recall what N represents in the       04:10

22   third embodiment?                                    04:11

23       A.  Not right offhand.                           04:11

24       Q.  Would it surprise you that once again, N     04:11

25   represents the number of PDUs?                       04:11

Confidential Business Information - Outside Attorneys' Eyes Only

Page 217

1          MS. SAXTON:  Objection.                    04:11

2      A.  I know N is used for a variety of purposes  04:11

3  and is described using a variety of different      04:11

4  languages in the specification.  A number of them  04:11

5  -- in a number of those descriptions, N is a number 04:11

6  of PDUs, but not in all of them.                   04:11

7      Q.  Let's look at column 13, lines 64 through  04:11

8  65.                                                04:11

9      A.  Okay.                                      04:11

10     Q.  Do you see where the '596 patent is        04:11

11 describing the exemplary embodiment number three   04:11

12 and it says an N field 1225 for representing the    04:11

13 number of RLC PDUs?                                04:11

14     A.  I do.                                       04:11

15     Q.  So in this third embodiment, once again,   04:11

16 the N field is representing the number of PDUs?     04:12

17     A.  There are other examples in the            04:12

18 specification which N is used to describe something 04:12

19 else.                                             04:12

20     Q.  I want to turn to your rebuttal expert      04:12

21 report to paragraph 425.                           04:12

22     A.  Uh-huh.                                     04:12

23     Q.  Do you see here your argument about the     04:12

24 meaning of the claimed N field?                     04:12

25     A.  I do.                                       04:12

Confidential Business Information - Outside Attorneys' Eyes Only

Page 218

1    Q.  You talk about the plain meaning of the        04:12

2    language N field.                                  04:12

3    A.  I do.                                           04:12

4    Q.  But I don't see where you cite to the          04:12

5    patent.  Am I missing something?                   04:12

6    A.  I don't -- you mean is -- I'm not sure I       04:12

7    understand the question.                           04:13

8    Q.  We've seen here in all three embodiments       04:13

9    in the '596 patent that N is the number of PDUs.   04:13

10   But then in your report, you say the plain meaning 04:13

11   of N means the number of bits or bytes that make up 04:13

12   the MAC-es PDU.                                     04:13

13   A.  Uh-huh.                                         04:13

14   Q.  But you don't cite to anything in the          04:13

15   patent to support your construction of N.          04:13

16   MS. SAXTON:  Objection.                             04:13

17   A.  That's because the plain and ordinary          04:13

18   meaning of the term I think is self-evident.       04:13

19   Q.  Can you show me --                             04:13

20   MR. WHITEHURST:  Strike that.                       04:13

21   Q.  Your report never cites to the '596 patent     04:13

22   to support your construction of N, does it?        04:13

23   A.  The term number of uplink packet data          04:13

24   included in the first PDU is one of the ways that N 04:13

25   is defined in the specification as well as the     04:13

Confidential Business Information - Outside Attorneys' Eyes Only

Page 219

1    claim language.                                          04:13

2        Q.  But you don't cite to anywhere in the           04:13

3    patent, do you?                                          04:13

4        A.  In the specification, the -- the same           04:14

5    language that is used in the claim language is also 04:14

6    repeated in the specification.  I do not cite to        04:14

7    the specification for the plain and ordinary            04:14

8    meaning of the term, no.                                 04:14

9        Q.  So when you make your arguments about N,         04:14

10   you don't mention any of the passages that we just 04:14

11   looked at and then you don't cite anything from the 04:14

12   '596 patent to support your construction, do you?       04:14

13       A.  No, I do not.                                    04:14

14       Q.  Now, you know that claims are supposed to       04:14

15   be construed to include the preferred embodiments,      04:15

16   don't you?                                               04:15

17       MS. SAXTON:  Objection.                              04:15

18       A.  That's a legal question.  I'm not sure I        04:15

19   understand what is the point you're making.             04:15

20       Q.  Now, when you were forming your opinions,       04:15

21   did Apple's counsel ever inform you that claims         04:15

22   should be construed to include the preferred            04:15

23   embodiment?                                              04:15

24       A.  I don't recall that discussion.                 04:15

25       Q.  So when you formed your opinions, you were 04:15

Page 220

1    not aware of the canon of claim construction that    04:15

2    says that claims should be construed to include the 04:15

3    preferred embodiment?  Dr. Fuja --                   04:15

4        A.  Yes.                                         04:15

5        Q.  -- before today, had you ever heard the     04:15

6    principle that claims should be construed to         04:16

7    include the preferred embodiment?                    04:16

8        A.  I don't recall.                              04:16

9        Q.  So sitting here today, you don't recall      04:16

10   ever hearing the principle that claims should be     04:16

11   construed to include the preferred embodiment?       04:16

12       A.  I don't recall.                              04:16

13       Q.  Now, your arguments that you make in         04:16

14   paragraph 425 would exclude the preferred            04:16

15   embodiment, wouldn't they?                           04:16

16          MS. SAXTON:  Objection.                       04:16

17       A.  I don't know.  I haven't thought about       04:16

18   that.                                                04:16

19       Q.  All of the exemplary embodiments in the      04:16

20   '596 patent describe the N field as representing     04:16

21   the number of RLC PDUs, correct?                     04:16

22       A.  No.  I believe they use the N field to       04:16

23   other purposes as well.                              04:16

24       Q.  You don't cite anything in your report       04:16

25   that states that the N field is used in the '596     04:17

Confidential Business Information - Outside Attorneys' Eyes Only

Page 221

1    patent to mean the number of bytes or bits          04:17

2    contained in the MAC-es PDU?                         04:17

3        A.   Pardon me?                                  04:17

4        Q.   You don't cite any part of the '596 patent  04:17

5    in your report in support of the N field being the   04:17

6    number of bits or bytes contained in the MAC-es      04:17

7    PDU?                                                 04:17

8        A.   As I understand it, when one is confronted  04:17

9    with the plain and ordinary meaning of the term,     04:17

10   one does not have to look to the specification for   04:17

11   support of that.   There's an obvious meaning to the 04:17

12   term and I've applied that.                          04:17

13       Q.   So you selected a meaning for the term "N"  04:17

14   that would exclude the preferred embodiments that    04:17

15   we just looked at?                                   04:17

16       MS. SAXTON:   Objection.                         04:17

17       A.   I have not done that analysis.              04:17

18       Q.   So if N is the number of bits or bytes      04:17

19   that make up the MAC-es PDU as you argue in your     04:18

20   report, your understanding of the claims would       04:18

21   exclude exemplary embodiments 1, 2, and 3 that we    04:18

22   just looked at?                                      04:18

23       MS. SAXTON:   Objection.                         04:18

24       A.   I have not done that analysis.              04:18

25       Q.   So at trial, you're not going to offer any  04:18

Confidential Business Information - Outside Attorneys' Eyes Only

Page 222

1    opinion whether your understanding of the meaning    04:18

2    of N would exclude exemplary embodiments 1, 2, and   04:18

3    3?                                                    04:18

4         MS. SAXTON:   Objection.                        04:18

5      A.  I have not done that analysis to this          04:18

6    point.                                               04:18

7      Q.  So sitting here today, you are unable to       04:18

8    answer my question whether your construction of the  04:18

9    claim term "N" would exclude exemplary embodiments   04:18

10   1, 2, and 3?                                         04:18

11     A.  I am unable to provide that analysis at        04:18

12   this point.                                          04:19

13     Q.  And you're unable to point to anything in      04:19

14   your report citing to the '596 patent in support of  04:19

15   your construction of the term "N"?                   04:19

16     A.  The number of uplink packet data included      04:19

17   in the first PDU is to me self-evident.  It's a      04:19

18   very simple statement.  It's not complicated.  The   04:19

19   number of uplink packet data just means how many     04:19

20   uplink packet data are there.  Data being the        04:19

21   plural of datum and representing binary              04:19

22   information.                                         04:19

23        Therefore, it seems to me that the number       04:19

24   of uplink packet data included in the first PDU is   04:19

25   pretty unambiguous.  And so I did not feel the need  04:19

Confidential Business Information - Outside Attorneys' Eyes Only

Page 223

1    to go to the specification to -- in support of what   04:19

2    seems to me to be the obvious meaning of the term.   04:19

3       Q.  That was not my question.   04:20

4          In the '596 in exemplary embodiments 1, 2,   04:20

5    and 3, N is always used to mean the number of PDUs.   04:20

6       A.  I don't think that's correct.  I think it   04:20

7    uses N in other ways and within those exemplary   04:20

8    embodiments.   04:20

9       Q.  In all three of the exemplary embodiments   04:20

10   1, 2, and 3, we saw passages where N is used to   04:20

11   mean the number of PDUs.   04:20

12      A.  Within each embodiment, they provide an   04:20

13   example in which N is used in the way that you've   04:21

14   described, to represent the number of RLC PDUs.   04:21

15   But within each embodiment, there are other   04:21

16   examples provided in which N can take on other --   04:21

17   can be made -- can take on other values.   04:21

18      Q.  Now, I'm not going to argue with you   04:21

19   whether there are other examples provided in which   04:21

20   N can take on another value.  But you don't mention   04:21

21   any of those examples in your report, do you?   04:21

22      A.  That's correct.   04:21

23      Q.  So looking at your report, you never   04:21

24   mention anywhere in the '596 patent where N is used   04:21

25   to mean something other than the number of PDUs?   04:21

Confidential Business Information - Outside Attorneys' Eyes Only

Page 224

1        MS. SAXTON:  Objection.                    04:21

2     A.  I don't recall.                           04:21

3     Q.  In your construction of N, to mean that N  04:21

4  is the number of bits or bytes that make up the  04:21

5  MAC-es PDU, would exclude those passages that we  04:22

6  just looked at where N is the number of PDUs?    04:22

7        MS. SAXTON:  Objection.                    04:22

8     A.  Again, I have not done that analysis.     04:22

9     Q.  Let's go back to paragraph 432 of your    04:22

10 report.  Do you see where you say, "Additionally, 04:22

11 the N field of the standard is only 6 bits in    04:22

12 length.  A 6-bit field would not be very useful to 04:22

13 indicate the number of bits or bytes of data in a 04:22

14 PDU because the biggest size it could represent   04:22

15 would be 64 bits or bytes"?                       04:22

16    A.  I do.                                      04:23

17    Q.  And this is one of the reasons for why you 04:23

18 believe the standard does not read --             04:23

19       MR. WHITEHURST:  Strike that.               04:23

20    Q.  And this is one of the reasons for why you 04:23

21 believe the standard does not meet the claimed N  04:23

22 field in the asserted claims?                     04:23

23       MS. SAXTON:  Objection.                     04:23

24    A.  This is, I believe, indicative of the fact 04:23

25 that the standard -- that the definition of the N 04:23

Confidential Business Information - Outside Attorneys' Eyes Only

Page 225

1    field given in the claim language would not be        04:23

2    appropriate for the standard.                          04:23

3        Q.  So you think the Apple products when they      04:23

4    practice the 3GPP standard would not infringe          04:23

5    claims 1 and 13 because the N field in the standard    04:23

6    is only 6 bits?                                        04:23

7        MS. SAXTON:  Objection.                            04:23

8        A.  No.  I would not say that.                     04:23

9        Q.  But you believe that the 6-bit field in       04:23

10   the standard would not be useful to represent the      04:24

11   number of bits or bytes of data in a PDU?              04:24

12       A.  I believe that 6 bytes or 6 bits would not     04:24

13   be useful to indicate the number of -- excuse me --    04:24

14   6 bits is not going to be an appropriate field size    04:24

15   to indicate the number of bits or bytes in a MAC-es    04:24

16   PDU.                                                   04:24

17       Q.  You agree that to represent the number of      04:24

18   bits or bytes that make up the MAC-es PDU, you         04:24

19   would need a relatively large field?                   04:24

20       MS. SAXTON:  Objection.                            04:24

21       A.  Obviously, depending on whether we were        04:24

22   talking about bits or bytes, it would be larger or     04:24

23   smaller, but yes.                                      04:24

24       Q.  How big would the N field need to be to        04:24

25   represent the number of bits or bytes that make up     04:24

Confidential Business Information - Outside Attorneys' Eyes Only

Page 226

1    the MAC-es PDU?                                      04:24

2        A.  I'd have to go back and look and see.  The   04:25

3    MAC-es PDUs are made up of multiple MAC-d PDUs, so   04:25

4    what I would have to do is go back and see how big    04:25

5    each MAC-d PDU is and then multiply that times the    04:25

6    typical or large end of the scale number of MAC-d    04:25

7    PDUs in a MAC-es PDU to come up with that figure.     04:25

8    I don't have that figure on hand.                    04:25

9        Q.  Why don't you look at column 8, table 1.     04:25

10       A.  Okay.                                         04:25

11       Q.  Do you see the RLC PDU size?                  04:25

12       A.  I do.                                         04:25

13       Q.  What does it say?                             04:25

14       A.  From 168 bits to 336 bits in this            04:25

15   particular example.                                  04:25

16       Q.  So to represent the number of bits or        04:25

17   bytes that make up the MAC-es PDU, how big would     04:26

18   you want the N field to be?                          04:26

19       A.  Well, this isn't the only piece of           04:26

20   information I need.  Of course, I also need an       04:26

21   indication of how many RLC PDUs are contained in a   04:26

22   MAC-es PDU.                                          04:26

23       Q.  Now you say in paragraph 432 that 6 bytes    04:26

24   is not a large enough --                             04:26

25           MR. WHITEHURST:  Strike that.                04:26

Confidential Business Information - Outside Attorneys' Eyes Only

Page 227

1    Q.  You say in paragraph 432 that a 6-bit    04:26

2    field is not large enough to express the number of    04:26

3    bits or bytes that make up the MAC-es PDU.  Do you    04:26

4    recall that?    04:26

5    A.  I do.    04:26

6    Q.  Would a 7-bit field be large enough to    04:26

7    represent the number of bits or bytes that make up    04:26

8    the MAC-es PDU?    04:26

9    A.  I haven't done that analysis.    04:26

10    Q.  Would an 8-bit field be big enough to    04:26

11    represent the number of bits or bytes that make up    04:27

12    the MAC-es PDU?    04:26

13    A.  I have not done an analysis that allows me    04:26

14    to estimate what the required N field size would    04:27

15    be.    04:27

16    Q.  Do you agree that in order to represent    04:27

17    the number of bits or bytes that make up the MAC-es    04:27

18    PDU, the N field would need to be larger than 8    04:27

19    bits?    04:27

20    A.  I have not done that analysis.    04:27

21    Q.  If it was a 1-bit field, would that be    04:27

22    large enough to represent the number of bits or    04:27

23    bytes that make up the MAC-es PDU?    04:27

24    MS. SAXTON:  Objection.    04:27

25    A.  No.    04:27

Confidential Business Information - Outside Attorneys' Eyes Only

Page 228

1    Q.  Okay.  So you don't have an opinion          04:27
2    whether 7 bits or 8 bits would be large enough to   04:27
3    represent the number of bits or bytes that make up  04:27
4    the MAC-es PDU, but you'll agree with me that       04:27
5    anything less than 6 is not going to be large       04:27
6    enough?                                             04:27
7    A.  I have haven't done the analysis to            04:27
8    indicate -- that would indicate how big the N field 04:27
9    should be in order to provide a useful gauge of how 04:28
10   many bits or bytes would be included in a MAC-es    04:28
11   PDU.  However, 64 bits or 64 bytes seems to me to   04:28
12   be insufficient.  That's the only analysis that     04:28
13   I've done.                                          04:28
14   Q.  What is two to the eighth?                      04:28
15   A.  256.                                            04:28
16   Q.  And 256 is less than the sizes set forth        04:28
17   in table 1 in the '596 patent, isn't it?           04:28
18   A.  It is.                                          04:28
19   Q.  So you could not use an 8-bit N field to        04:28
20   represent some of the PDU sizes that you see in     04:28
21   table 1, could you?                                 04:28
22   A.  Only if you were using bits as the unit.        04:28
23   If you were using bytes, you could.                04:28
24   Q.  Now, in the preferred embodiment in the         04:28
25   '596 patent, do you recall how large the N field    04:28

Confidential Business Information - Outside Attorneys' Eyes Only

Page 229

1    is?                                                         04:29

2         A.  No.                                                04:29

3         Q.  Did you ever look at that before you made         04:29

4    your conclusions?                                          04:29

5         A.  I did.                                             04:29

6         Q.  But you don't recall what it is?                  04:29

7         A.  No.                                                04:29

8         Q.  So you agree that anything less than 6            04:29

9    would be too small to represent the number of bits        04:29

10   or bytes that make up the MAC-es PDU, correct?            04:29

11        A.  Yes.                                               04:29

12        Q.  Well, let's go look at what the '596              04:29

13   patent says about the size of the N field.  Can you       04:29

14   direct your attention to column 9, lines 3 through        04:29

15   5.                                                         04:29

16        A.  I'm sorry.  Column 9?                             04:29

17        Q.  Lines 3 through 5.                                04:29

18        A.  Uh-huh.                                           04:29

19        Q.  Do you see where it says, "The N field 534       04:29

20   contains information about the number of RLC PDUs         04:29

21   560 contained in the MAC-es PDU 550.  The N field        04:29

22   534 may have a variable size of 0 to 8 bits."  Do        04:29

23   you see that?                                             04:30

24        A.  I do.                                             04:30

25        Q.  So in the preferred embodiment of the '596       04:30

Confidential Business Information - Outside Attorneys' Eyes Only

Page 230

1    patent, the inventors of the '596 patent are          04:30

2    teaching those of ordinary skill in the art reading   04:30

3    their patent to use an N field that you, yourself,     04:30

4    agree is too small to represent the number of bits     04:30

5    or bytes that make up the MAC-es PDU; isn't that       04:30

6    true?                                                  04:30

7         MS. SAXTON:  Objection.                           04:30

8     A.  Well, I have said that 6 bits would be            04:30

9    insufficient.  This is talking about a variable        04:30

10   size of 0 to 8 bits.  Moreover, this embodiment is     04:30

11   using the N field indicating the number of RLC         04:30

12   PDUs.                                                  04:30

13    Q.  So in the preferred embodiment, the               04:30

14   inventors teach using an N field that's 0 to 8 bits    04:30

15   that represents the number of PDUs?                    04:30

16    A.  It is.                                             04:31

17    Q.  And your construction of N in your                04:31

18   rebuttal report, would exclude this preferred          04:31

19   embodiment?                                            04:31

20         MS. SAXTON:  Objection.                          04:31

21    A.  I have not done that analysis.                     04:31

22    Q.  The arguments that you make for N in your         04:31

23   rebuttal report are inconsistent with what the         04:31

24   inventors teach here in column 9, lines 3              04:31

25   through 5?                                             04:31

Confidential Business Information - Outside Attorneys' Eyes Only

Page 231

1    A.   Again, my primary reason for reading it        04:31

2    the way I do is the plain and ordinary meaning of   04:31

3    the term.  To me, it is not a complicated phrase.   04:31

4    Q.   That was not my question.                       04:31

5         My question is:  The arguments that you        04:31

6    make for N in your rebuttal report are inconsistent 04:31

7    with what the inventors taught in column 9, lines 3 04:31

8    through 5?                                           04:31

9    A.   I don't think that's true.  My primary         04:31

10   argument is the plain and ordinary meaning of the   04:32

11   language.  When I read it, I know what it says.      04:32

12   Q.   Your reading of N in claims 1 and 13 would     04:32

13   exclude the preferred embodiment that the inventors 04:32

14   describe in column 9, lines 3 through 5, where the  04:32

15   N field has a variable size of 0 to 8 bits and the  04:32

16   N field is used to represent the number of PDUs.    04:32

17        MS. SAXTON:  Objection.                         04:32

18   A.   I have not done that analysis.                  04:32

19   Q.   Did you look at the dependent claims when      04:32

20   you formed your opinions for claims 1 and 13?       04:32

21   A.   I did.                                          04:32

22   Q.   Before I go to the dependent claims, I         04:32

23   have one more question.  Your purported plain and   04:33

24   ordinary meaning of N does not include the          04:33

25   definition of N that the inventors used in the      04:33

Confidential Business Information - Outside Attorneys' Eyes Only

Page 232

1    exemplary embodiments that we looked at.          04:33

2          MS. SAXTON:  Objection.                      04:33

3      A.  Again, is that a question?                   04:33

4      Q.  Yes.                                         04:33

5          Let me ask the question again.  Your         04:33

6    definition of N is different from the definition of 04:33

7    N that the inventors use in the three exemplary     04:33

8    embodiments where they said N is the number of      04:33

9    PDUs?                                               04:33

10          MS. SAXTON:  Objection.                      04:33

11      A.  It is certainly different from that          04:33

12    particular definition.  They use multiple          04:33

13    definitions in the body of the specification.  It  04:33

14    is certainly different from that one.              04:33

15      Q.  But you don't cite to any other              04:33

16    definitions for N in your report?                  04:33

17      A.  That's correct.                              04:34

18      Q.  Let's look at claim 6, at column 16, lines   04:34

19    18 through 22.                                      04:34

20      A.  I'm sorry.  Claim 6?  Is that what you       04:34

21    said?                                              04:34

22      Q.  Yes.  Claim 6 of the '596 patent, which is   04:34

23    in column 16, lines 18 through 22.                 04:34

24      A.  Okay.                                        04:34

25      Q.  Can you please read claim 6 aloud?           04:34

Confidential Business Information - Outside Attorneys' Eyes Only

Page 233

1          A.   "The method is claimed in claim 1 wherein      04:34

2     the DDI field inserted into the first header part       04:34

3     represents a media access data MAC-d flow and a         04:34

4     logical channel relating to uplink packet data          04:34

5     included in the first PDU and the size of the            04:34

6     uplink packet data."                                    04:34

7          Q.   So in dependent claim 6 when the inventors     04:34

8     are describing the size of the uplink packet data,      04:34

9     they use the word "size," don't they?                   04:35

10         A.   That's correct.                                04:35

11         Q.   So in dependent claim 6, we see the word       04:35

12    "size," correct?                                         04:35

13         A.   That's correct.                                04:35

14         Q.   And dependent claim 6 depends from             04:35

15    claim 1.                                                 04:35

16         A.   Yes.                                           04:35

17         Q.   So when the inventors wrote claim 1, they      04:35

18    chose not to use the word "size," correct?              04:35

19         A.   You mean in terms of the N field?             04:35

20         Q.   That's correct.                                04:35

21         A.   N field representing the number of uplink      04:35

22    packet data included in the first PDU.                   04:35

23         Q.   The inventors chose not to use the word        04:35

24    "size" anywhere in claim 1, correct?                     04:35

25              MS. SAXTON:   Objection.                       04:35

Confidential Business Information - Outside Attorneys' Eyes Only

Page 234

1          A.  The word "size" does not appear in          04:36

2      claim 1.                                             04:36

3          Q.  "Size" does appear in dependent claim 6?     04:36

4          A.  That's correct.                              04:36

5          Q.  When the inventors wrote claim 1, they       04:36

6      said "N field representing the number of uplink      04:36

7      packet data included in the first PDU."  Do you see  04:36

8      that?                                                04:36

9          A.  I do.                                        04:36

10         Q.  And when they wrote claim 6, they said the   04:36

11     size of the uplink packet data, correct?             04:36

12         A.  Correct.                                     04:36

13         Q.  So in claim 1, they say "number," and in     04:36

14     claim 6, they say "size."                            04:36

15         A.  That's correct.                              04:36

16         Q.  Now, if N in claim 1 means the number of     04:36

17     PDUs as opposed to the size of the PDUs, would that  04:37

18     change any of the opinions in your report?           04:37

19             MS. SAXTON:  Objection.                      04:37

20         A.  I don't understand your question.  The       04:37

21     claim 1 does not refer to the N field representing   04:37

22     the number of PDU.  It says, "An N field             04:37

23     representing the number of uplink packet data        04:37

24     included in the first PDU."                          04:37

25         Q.  Now, look back at column 8, table 1.  In     04:37

Confidential Business Information - Outside Attorneys' Eyes Only

Page 235

1    table 1, do you see the word "RLC PDU size"?          04:37

2        A.  I do.                                          04:37

3        Q.  So in this table, the size is either          04:37

4    336 bits or 168 bits, correct?                         04:37

5        A.  Correct.                                       04:37

6        Q.  So you would agree with me that in this        04:37

7    table, size is the number of bits?                     04:38

8        A.  In this particular table, yes.                 04:38

9        Q.  And even though the word "size" does not       04:38

10   appear anywhere in claim 1, you're arguing in your     04:38

11   rebuttal report that N has to be the size of the       04:38

12   MAC-es PDU?                                            04:38

13       A.  That's not correct.                            04:38

14       Q.  Okay.  You argue in your report that N is      04:38

15   the number of bits or bytes that make up the MAC-es    04:38

16   PDU?                                                   04:38

17       A.  The MAC-es PDU.                                04:38

18       Q.  You argue in your report that N is the         04:38

19   number of bits or bytes that make up the MAC-es        04:38

20   PDU?                                                   04:38

21       A.  Correct.                                       04:38

22       Q.  And wouldn't the number of bits or bytes       04:38

23   that make up the MAC-es PDU be the size of the         04:38

24   MAC-es PDU?                                            04:38

25           MS. SAXTON:  Objection.                        04:38

Confidential Business Information - Outside Attorneys' Eyes Only

Page 236

1    A.   Again, the language in the claim is an N     04:38

2    field representing the number of uplink packet data 04:39

3    included in the first PDU.  It doesn't say N field  04:39

4    representing the number of uplink packet data.      04:39

5    Uplink packet data is a -- is a term -- is a plural 04:39

6    term, plural of datum meaning the number of -- the  04:39

7    size of the data that's included in the uplink      04:39

8    packet.  The number of uplink packet data is        04:39

9    indicative of -- is -- indicates the size -- excuse 04:39

10   me -- indicates the size in the sense of the number 04:39

11   of bits or bytes that are contained in that uplink  04:39

12   packet data.                                        04:39

13   Q.   When the applicants wished to claim the        04:39

14   size in bits, they specifically did so by claiming  04:39

15   the term "size," like they did in claim 6.          04:39

16        MS. SAXTON:   Objection.                       04:39

17   A.   Okay.                                          04:40

18   Q.   Do you agree with that?                        04:40

19   A.   They did that in claim 6.                      04:40

20   Q.   In claim 6, the applicants used the word       04:40

21   "size" to mean how large the packet is.             04:40

22   A.   I have not done any analysis with respect      04:40

23   to claim 6, so I don't want to -- I don't want to   04:40

24   offer any opinions on the constructions, how        04:40

25   claim 6 should be construed.                        04:40

Confidential Business Information - Outside Attorneys' Eyes Only

Page 237

1    Q.  So it's your testimony today that you did     04:40

2    no analysis on dependent claim 6 before you reached   04:40

3    your conclusion that N is the number of bits or    04:40

4    bytes that make up the MAC-es PDU?                 04:41

5        MS. SAXTON:  Objection.                        04:40

6    A.  I was aware that claim 6 used the phrase       04:40

7    and the size of the uplink packet data; however,  04:40

8    that fact did not dissuade me in my opinion that   04:40

9    the plain and ordinary meaning of the number of   04:41

10   uplink packet data is the number of bits or bytes. 04:41

11   Q.  Do you understand that when claims are         04:41

12   construed if one claim has a term, that another    04:41

13   claim uses that term out, it's presumed to have a  04:41

14   different meaning?                                 04:41

15       MS. SAXTON:  Objection.                        04:41

16   A.  I'm sorry.  Could you repeat that?             04:41

17   Q.  Do you understand that when claims are         04:41

18   construed if one claim uses a term but another     04:41

19   claim doesn't use that term, the claims are        04:41

20   presumed to have a different meaning?  Have you    04:41

21   ever heard that before today?                      04:41

22   A.  No, I have not.                                04:41

23   Q.  So you never heard of the doctrine of          04:41

24   claim differentiation before you submitted your    04:41

25   rebuttal report?                                   04:41

Confidential Business Information - Outside Attorneys' Eyes Only

Page 238

1        MS. SAXTON:  Objection.                    04:41

2     A.  I have not heard that term, no.            04:41

3     Q.  And you've never heard that claims that    04:41

4  use different terms are presumed to have different 04:42

5  claim scope?                                       04:42

6        MS. SAXTON:  Objection.                    04:42

7     A.  Again, I'm not familiar with that notion.  04:42

8     Q.  I want to go back and talk specifically    04:42

9  about claim 1.  Do you see where it says, "N field 04:42

10 representing the number of uplink packet data      04:42

11 included in the first PDU"?                         04:42

12    A.  I do.                                       04:42

13    Q.  If the court told you, Dr. Fuja, N in       04:42

14 claim 1 means the number of PDUs, would that change 04:42

15 the opinions in your rebuttal report?              04:42

16       MS. SAXTON:  Objection.                    04:42

17    A.  If you simply drop in number of PDUs, I     04:42

18 mean, what are PDUs in this context?  I'm not even  04:42

19 sure how -- I don't see how that could be the      04:42

20 construction, because what does that mean in this  04:43

21 context?                                           04:43

22    Q.  When the accused products transmit a MAC-e 04:43

23 PDU, do they use an N field that represents the    04:43

24 number of PDUs?                                     04:43

25    A.  I'm sorry.  Could you say that again.       04:43

Confidential Business Information - Outside Attorneys' Eyes Only

Page 239

1    Q.   In the accused products, the N field        04:43
2    represents the number of PDUs?                   04:43
3    A.   There are a lot of different PDUs in this    04:43
4    construction.  Maybe you could be a little more  04:43
5    clear about which PDUs you're talking about.     04:43
6    Q.   Let's look at the 321 specification, which  04:43
7    should be somewhere in front of you.             04:43
8         Do you see Figure 9.1.5.2A?                 04:44
9    A.   I do.                                        04:44
10   Q.   When the accused Apple products form a      04:44
11   MAC-e PDU like the ones shown in the 321         04:44
12   specification in Figure 9.1.5.2A, what does the N 04:44
13   field represent?                                 04:44
14   A.   The number of RLC PDUs in the associated    04:44
15   MAC-es PDU.                                       04:44
16   Q.   So if the court said that N in claim 1 is   04:44
17   the number of RLC PDUs in the associated MAC-es  04:44
18   PDU, this would mean that your non-infringement  04:44
19   argument based on claim N would no longer apply to 04:44
20   the accused products?                            04:44
21   MS. SAXTON:   Objection.                          04:44
22   A.   You're taking structures out of the         04:44
23   standard and dropping them into the claim language 04:44
24   where there's no antecedent.  All the claim      04:45
25   language refers to is a first PDU and a second PDU. 04:45

Confidential Business Information - Outside Attorneys' Eyes Only

Page 240

1    There is no MAC-e PDU, there is no MAC-es PDU.  So   04:45

2    I'm not quite sure how you're suggesting that the   04:45

3    court could construe a term that references   04:45

4    something that is not in the claim language.   04:45

5        Q.  Now, you said earlier today that a MAC-es   04:45

6    PDU is made up of MAC-d PDUs, correct?   04:45

7        A.  You hear it alternately referenced as   04:45

8    MAC-d -- excuse me -- MAC-d PDUs and RLC PDUs.  The   04:45

9    only difference between the two is a MAC-d PDU has   04:45

10   a logical channel associated with it.   04:45

11       Q.  Now, when the accused Apple products   04:45

12   transmit a MAC-e PDU to the node B, those products   04:45

13   use an N field that represents the number of MAC-d   04:46

14   PDUs in the MAC-es PDU, correct?   04:46

15       A.  That's correct.   04:46

16       Q.  And if the court said that N in claim 1 is   04:46

17   the number of PDUs in the first PDU, your   04:46

18   non-infringement would no longer apply to the   04:46

19   accused products?   04:46

20       MS. SAXTON:  Objection.   04:46

21       A.  The difficulty I would have with that is   04:46

22   the number of PDUs in the first PDU.  What does, in   04:46

23   that sentence, the number of PDUs, what does that   04:46

24   refer to?  I mean, again, it's basically taking   04:46

25   something out of the standard and inserting it into   04:46

Confidential Business Information - Outside Attorneys' Eyes Only

Page 241

1    the claim language where there's nothing there to      04:46

2    hang it on.                                            04:46

3        Q.  If the first PDU is the MAC-es PDU --          04:46

4        A.  Yes.                                           04:47

5        Q.  -- N is the number of MAC-d PDUs in the        04:47

6    MAC-es PDU in the preferred embodiments that we        04:47

7    looked at earlier?                                     04:47

8        A.  That's correct.                                04:47

9        Q.  And if the court said that claim 1 should      04:47

10   be construed to include that preferred employed        04:47

11   where N is the number of MAC-d PDUs in the MAC-es       04:47

12   PDU, then your non-infringement would no longer         04:47

13   apply to the accused products?                          04:47

14       MS. SAXTON:  Objection.                            04:47

15       A.  You're formulating -- you're hypothesizing     04:47

16   a court construction that I'm having a hard time --     04:47

17   that I'm having a hard time articulating -- that        04:47

18   I'm having a hard time articulating, because the --     04:47

19   you're referencing a structure which is not present    04:48

20   in the claim language.  And so it's just not clear     04:48

21   to me how the court could construe an N field in        04:48

22   such a way that an N field represents the number of    04:48

23   somethings that reside in the first PDU, when the      04:48

24   somethings are never defined in the claim language.    04:48

25   So I'm trying to understand.  You're asking me if      04:48

Confidential Business Information - Outside Attorneys' Eyes Only

Page 242

1   the court issues a construction, then does that          04:48

2   eviscerate the non-infringement argument with           04:48

3   regard to the N field.  I'm having a hard time          04:48

4   understanding exactly what the court construction       04:48

5   that you're proposing is.                               04:48

6       Q.  Let me see if I can help you out and ask        04:48

7   it a different way.                                      04:48

8       A.  Okay.                                            04:48

9       Q.  In the preferred embodiment, N is the           04:48

10  number of MAC-d PDUs in the MAC-es PDU, correct?        04:48

11      A.  It is.                                           04:49

12      Q.  In the accused Apple products, N is the         04:49

13  number of MAC-d PDUs in the MAC-es PDU, correct?        04:49

14      MS. SAXTON:  Objection.                              04:49

15      A.  It is.                                           04:49

16      Q.  So if claim 1 is construed to cover the         04:49

17  preferred embodiment, it would also cover the           04:49

18  accused Apple products?                                 04:49

19      MS. SAXTON:  Objection.                              04:49

20      A.  I haven't done that analysis.                    04:49

21      Q.  Okay.  So you're unable to answer my            04:49

22  question that if claim 1 is construed to cover the      04:49

23  preferred embodiment in the '596 patent, it would       04:49

24  also cover the accused Apple products?                   04:49

25      MS. SAXTON:  Objection.                              04:49

Confidential Business Information - Outside Attorneys' Eyes Only

Page 243

1    A.  So I don't know whether or not it covers      04:49

2    the preferred embodiment because I have not done   04:49

3    that analysis.  If it is construed in such a way   04:50

4    that it covers the preferred embodiment, then      04:50

5    presumably it would cover the accused products.    04:50

6    Q.  And I agree with that.                         04:50

7         Can you think of any logical reason why if    04:50

8    the preferred embodiment in the '596 patent is the 04:50

9    same as the accused Apple products, why claim 1    04:50

10   would cover the preferred embodiment in the '596   04:50

11   patent but not cover something that's the same?    04:50

12   A.  Well, I mean, you've basically said a          04:50

13   tautology by calling it the same.  So it's hard to 04:50

14   -- it's hard to come up with a reason why you would 04:50

15   discern two things, which you tell me are the same. 04:50

16   Q.  Well, I don't want to use a tautology.  I      04:50

17   want to use what you already said just a few       04:50

18   minutes ago, and that's why I'm struggling.  I     04:50

19   think this is easy, but you're not answering my    04:50

20   question.                                          04:50

21        So you testified a little while ago that      04:51

22   in the preferred embodiment and in the accused     04:51

23   products, N is the number of the MAC-d PDUs in the 04:51

24   MAC-es PDU.  Do you recall saying that?            04:51

25   A.  I do.                                          04:51

Confidential Business Information - Outside Attorneys' Eyes Only

Page 244

1    Q.  So if N in claim 1 is construed to cover        04:51
2    the preferred embodiment in the '596 patent, it     04:51
3    would also cover the accused Apple products,        04:51
4    wouldn't it?                                         04:51
5        MS. SAXTON:  Objection.                          04:51
6    A.  I actually think I answered that in the         04:51
7    affirmative a couple of minutes ago.                 04:51
8    Q.  So you agree that if N in the asserted          04:51
9    claims of the '596 patent are construed to cover    04:51
10   the preferred embodiment in the '596 patent, they   04:51
11   will also cover the accused Apple products?         04:51
12       MS. SAXTON:  Objection.                          04:51
13   A.  In both cases, in the preferred embodiment      04:51
14   and in the accused products, N is the number of RLC 04:52
15   PDUs or equivalent MAC-d PDUs in the MAC-es PDU.    04:52
16   If somehow the court were to construe that the      04:52
17   preferred embodiment is -- that the N field as      04:52
18   described in what I just described, as described in 04:52
19   the preferred embodiment, the N field in the claim  04:52
20   language covers that, then presumably it would      04:52
21   cover the same thing in the accused products.       04:52
22   Q.  And if the claim language in the asserted       04:52
23   claims, which reads, "N field representing the      04:52
24   number of uplink packet data included in the first  04:52
25   PDU," reads on the number of MAC-d PDUs in MAC-es   04:52

Confidential Business Information - Outside Attorneys' Eyes Only

Page 245

1    PDU, then this claim language would read on the        04:52

2    accused Apple products?                                04:53

3         MS. SAXTON:  Objection.                           04:53

4    A.   The accused Apple products have an N field        04:53

5    in which the -- that reflects the number of MAC-d      04:53

6    PDUs that are contained in the MAC-es PDU, so the      04:53

7    answer is yes.                                         04:53

8    Q.   The '596 patent has to do with creating          04:53

9    MAC-e PDUs?                                            04:53

10   A.   It does.                                          04:53

11   Q.   And these MAC-e PDUs are formed in the MAC        04:53

12   layer?                                                 04:53

13   A.   They are.                                         04:53

14   Q.   ████████████████████████████████     ████

     ██  ██████████████████████

     ██     ██  ████████                                    04:53

17   Q.   Let's turn to your rebuttal expert report         04:53

18   and turn to paragraph 442.                             04:54

19        Do you see where you wrote, ████████████     ████

     ██  ███████████████████████████████████████     ████

     ██  ████████████████████████████████████████████████

     ██  ██████████████████████████████████████     ████

     ██  ████████                                   ████

     ██     ██  ██████                                       04:54

25   Q.   Why do you believe the scheduling                 04:54

Confidential Business Information - Outside Attorneys' Eyes Only

Page 246

1    information must come from a higher layer than the    04:54

2    layer that creates the MAC-e PDUs?    04:54

3        A.   Because the claim language refers to a    04:54

4    control service data unit, and a control service    04:55

5    data unit is a data structure that is the input    04:55

6    from a higher layer into the given layer.  So    04:55

7    therefore, it is based on something that is passed    04:55

8    down from a higher layer.    04:55

9        Q.   It's your opinion that the claimed SDU in    04:55

10   the asserted claims are from a higher layer than    04:55

11   the MAC layer, correct?    04:55

12       A.   I'm sorry, what?    04:55

13       Q.   It's your opinion that the claimed SDU in    04:55

14   the asserted claims is from a higher layer than the    04:55

15   MAC layer?    04:55

16       A.   That's correct.    04:55

17       Q.   Now, when you formed that opinion and    04:55

18   wrote your report, you never cited to the '596    04:55

19   patent, did you?    04:55

20           MS. SAXTON:  Objection.    04:55

21       A.   Let me refresh my memory.    04:55

22           (Perusing document.)    04:56

23           That's correct.    04:56

24       Q.   So you formed a claim construction for    04:56

25   control SDU and you wrote in your report what    04:56

Confidential Business Information - Outside Attorneys' Eyes Only

Page 247

1    control SDU should mean and never cited to the '596   04:56

2    patent?                                               04:56

3          MS. SAXTON:   Objection.                        04:56

4       A.  I did not cite to the '596.                    04:56

5       Q.  Did you ever look at the '596 patent to        04:56

6    see what it says about control SDU?                   04:56

7       A.  I did.                                          04:56

8       Q.  And what does the '596 patent say about        04:56

9    the control SDU?                                       04:56

10      A.  It just uses the term.  It doesn't define      04:56

11   it.                                                    04:56

12      Q.  Did you look at everywhere where it            04:56

13   mentions control SDU?                                  04:56

14      A.  I don't -- I'm sure I did.  I don't recall     04:57

15   the details of that search.                           04:57

16      Q.  Okay.  Did you look to see where the '596      04:57

17   patent says the control service data unit comes       04:57

18   from?                                                  04:57

19      A.  Well, what they refer to, they talk about      04:57

20   the scheduling information and they indicate the      04:57

21   scheduling information is produced within the MAC     04:57

22   layer.                                                 04:57

23      Q.  Do they say where the control service data     04:57

24   unit comes from?                                       04:57

25      A.  I don't recall.                                 04:57

Confidential Business Information - Outside Attorneys' Eyes Only

Page 248

1       Q.  Let me help you out.  Let's look at the        04:57

2    abstract.  Did you read the abstract before you        04:57

3    formed --                                              04:57

4       A.  I did.                                          04:57

5       Q.  -- your opinions?                               04:57

6          And did you look to see what the abstract        04:57

7    says about the control SDU?                             04:57

8       A.  I did.                                          04:57

9       Q.  So if you would please read aloud the          04:57

10   sentence that begins on the fourth line.               04:58

11      A.  "MAC-es protocol data units, including          04:58

12   data of an upper layer and a control service data      04:58

13   including control information of a MAC layer, are       04:58

14   multiplex and contained in a MAC-e PDU transmitted      04:58

15   in an uplink from the UE during one transmission        04:58

16   period."                                               04:58

17      Q.  Do you see where it says, "Control              04:58

18   information of a MAC layer"?                            04:58

19      A.  I do.                                           04:58

20      Q.  So according to the abstract, the control       04:58

21   information is from the MAC layer, isn't it?           04:58

22          MS. SAXTON:  Objection.                         04:58

23      A.  It's coming from a layer or a sublayer of       04:58

24   the MAC layer, yes.                                     04:58

25      Q.  So according to the patent, the control         04:58

Confidential Business Information - Outside Attorneys' Eyes Only

Page 249

1   SDU contains control information from the MAC        04:58

2   layer.                                              04:58

3       A.   From one -- from a layer or a sublayer of  04:58

4   the MAC layer.                                      04:58

5       Q.   And when the '596 inventors wrote the '596 04:58

6   patent, they sometimes refer to data coming from an 04:58

7   upper layer, correct?                               04:59

8       A.   They do.                                   04:59

9       Q.   So when the inventors wanted to mean       04:59

10  something from an upper layer, they knew how to say 04:59

11  it?                                                 04:59

12       MS. SAXTON:   Objection.                       04:59

13      Q.   Do you understand my question?             04:59

14      A.   Again, it was a statement, not a question. 04:59

15      Q.   It was a question, and I wanted to know    04:59

16  whether you agreed with me.  When you look at the   04:59

17  sentence, "MAC-es protocol data units including     04:59

18  data of an upper layer," the inventors specifically 04:59

19  say that the data comes from an upper layer, don't  04:59

20  they?                                               04:59

21      A.   They do.                                   04:59

22      Q.   When the inventors talk about the control  04:59

23  service data unit, they don't say that the control  04:59

24  information comes from an upper layer, do they?     04:59

25      A.   They say control information of a MAC      04:59

Confidential Business Information - Outside Attorneys' Eyes Only

Page 250

1    layer.                                                    04:59

2        Q.  In fact, they say that the control           04:59

3    information comes from the MAC layer, not an upper    05:00

4    layer, don't they?                                    05:00

5        A.  It says MAC layer.                            05:00

6        Q.  So you would agree with me that something     05:00

7    that comes from the MAC layer is not something that   05:00

8    comes from an upper layer?                            05:00

9        A.  Again, there are sub layers within the MAC    05:00

10   layer.  There is the MAC-d layer, there is the        05:00

11   MAC-es layer, and there is the MAC-e layer.           05:00

12       Q.  And all of those are part of the MAC          05:00

13   layer, correct?                                       05:00

14       A.  They are.                                     05:00

15       Q.  And according to this sentence in the         05:00

16   abstract, the data comes from the upper layer, but    05:00

17   the control information doesn't come from the upper   05:00

18   layer?                                                05:00

19       A.  The control information comes from the MAC    05:00

20   layer.                                                05:00

21       Q.  And the control information comes from the    05:00

22   same layer in which the MAC-e PDU is formed?          05:00

23       A.  That is not clear.  The control               05:01

24   information, as indicated in Figure 4A, is -- shows   05:01

25   as going into both the multiplexing and TSN setting  05:01

Confidential Business Information - Outside Attorneys' Eyes Only

Page 251

1    block, which constitutes the MAC-es sublayer, and    05:01

2    then the HARQ entity which resides in the MAC-e    05:01

3    layer.    05:01

4        Q.  I didn't ask you about Figure 4.  And    05:01

5    Figure 4 is not cited in your report, is it?    05:01

6        A.  No, it isn't.    05:01

7        Q.  So I'm not going to ask you about    05:01

8    Figure 4.    05:01

9        A.  Okay.    05:01

10       Q.  What I want to ask you about is the    05:01

11   abstract.    05:01

12       A.  Okay.    05:01

13       Q.  In the abstract, it says that the data    05:01

14   comes from an upper layer and the control    05:01

15   information comes from the MAC layer.  Do you see    05:01

16   that?    05:01

17       A.  I see that.    05:01

18       Q.  So when you say that the control    05:01

19   information has to come from an upper layer, you're    05:02

20   saying something that's inconsistent with the    05:02

21   sentence that we just read in the abstract?    05:02

22       MS. SAXTON:  Objection.    05:02

23       A.  The control service data unit includes    05:02

24   control information of a MAC layer.    05:02

25       Q.  So you said the control information has to    05:02

Confidential Business Information - Outside Attorneys' Eyes Only

Page 252

1    come from something higher than the MAC layer.  But    05:02

2    this sentence says the control information comes        05:02

3    from the MAC layer.                                     05:02

4        A.  That's correct.                                 05:02

5        Q.  Your reading of control SDU is                  05:02

6    inconsistent with this sentence.                        05:02

7        A.  My reading of SDU is consistent with how        05:02

8    one of ordinary skill in the art would interpret        05:02

9    the term.                                               05:03

10       Q.  Now, we discussed earlier about claims          05:03

11   should be construed to include the preferred            05:03

12   embodiment, and you told me that you had never          05:03

13   heard that before today.                                05:03

14           MS. SAXTON:  Objection.                         05:03

15       A.  I think I said I don't recall.                  05:03

16       Q.  Okay.  So when you wrote the arguments          05:03

17   that you did for control SDU, you didn't construe       05:03

18   control SDU to include what's written here in the       05:03

19   second sentence of the abstract, did you?               05:03

20           MS. SAXTON:  Objection.                         05:03

21       A.  Again, I looked at the claim language, I        05:03

22   looked at it as one of ordinary skill in the art        05:03

23   would interpret the claim language.                     05:03

24       Q.  So in the second sentence in the abstract,      05:03

25   the control SDU is control information from the MAC     05:03

Confidential Business Information - Outside Attorneys' Eyes Only

Page 253

1   layer, correct?                                        05:04

2       A.  It doesn't say from a MAC layer.  It says      05:04

3   of a MAC layer.                                        05:04

4       Q.  Do you think of a MAC layer is something       05:04

5   different than from a MAC layer?                       05:04

6       A.  No.  I'm just making sure that we get the      05:04

7   language right.                                        05:04

8       Q.  Would you agree that control information       05:04

9   of a MAC layer is control information from a MAC       05:04

10  layer?                                                 05:04

11      A.  Yes.                                           05:04

12      Q.  Okay.  So in sentence two in the abstract,     05:04

13  the control SDU includes control information from      05:04

14  the MAC layer, correct?                                05:04

15      A.  I'm sorry.  Could you repeat that.             05:04

16      Q.  In the second sentence in the abstract,        05:04

17  the control SDU includes control information from      05:04

18  the MAC layer?                                         05:04

19      A.  Yes.                                           05:04

20      Q.  ██████████████████████████████████       ███████

    ██  ████████████████████████████████████████████   ███████

    ██  ████████████████                                 05:05

23      MS. SAXTON:  Objection.                           05:05

24      A.  ███████████████                         ███████

    ██      ██  █████████████████████████████████████    05:05

Confidential Business Information - Outside Attorneys' Eyes Only

Page 254

1   disclosed in the '596 patent and ████████████ ████

██ ███████████████████████████████ ████

██ ███████████████████████████ ████

██ ███ ████████████████ ████

██ ███ █████████████████████████████ ████

██ ████████████████████████████████████████

██ ████████████████████████████████ ████

██ ███████████████ ████

██ ███ █████████████████ 05:05

10  MR. WHITEHURST:  Let's take a quick break.  05:05

11  THE VIDEOGRAPHER:  Time is 5:05.  We're   05:05

12  off the record.                          05:05

13  (Deposition recessed at 5:05 p.m. and     05:05

14  reconvened at 5:19 p.m.)                  05:19

15  (Whereupon, this deposition was suspended  05:19

16  for the day at 5:19 p.m.)

17  _____

18  THOMAS E. FUJA, Ph.D.

19  Subscribed and sworn to before me

20  this _____ day of _____, 2013.

21  _____

22

23

24

25

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 259

1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5    APPLE, INC., a California          )

6    corporation,                       )

7         Plaintiff,                     )      Case No.

8                                        )12-cv-00630-LHK (PSG)

9            vs.                         )

10   SAMSUNG ELECTRONICS CO., LTD., a )

11   Korean corporation; SAMSUNG        )

12   ELECTRONICS AMERICA, INC., a New )

13   York corporation; and SAMSUNG      )      VOLUME II

14   TELECOMMUNICATIONS AMERICA, LLC, )

15   a Delaware limited liability       )

16   company,                           )

17         Defendants.                   )

18   _____)

19           CONFIDENTIAL BUSINESS INFORMATION

20             OUTSIDE ATTORNEYS' EYES ONLY

21      VIDEOTAPED DEPOSITION OF THOMAS E. FUJA, Ph.D.

22           Friday, September 20, 2013

23              Boston, Massachusetts

24   Reported by:  Dana Welch, CSR, RPR, CRR, CBC, CCP

25   Job No. 65944

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 289

1      MS. SAXTON:   Objection.                    08:44

2      A.   If the scheduling information is used by    08:44

3   the node B to control scheduling, then, yes, in   08:44

4   that case I would call it control information.     08:44

5      Q.   So under your reading of the '596 claims,  08:44

6   you see the words control information, and you have 08:44

7   come to the conclusion that in order to be control  08:44

8   information, the scheduling information has to not   08:44

9   only be control information, but it has to be used  08:44

10  by the node B.  Did I get that correct?            08:44

11     A.   You just said in order to be control      08:44

12  information, it has to not only be control         08:44

13  information.  So I'm not sure that I follow the    08:45

14  question.                                          08:45

15     Q.   Let me back up.  In your report, you argue 08:45

16  that in order for control --                        08:45

17     MR. WHITEHURST:   Strike that.                 08:45

18     Q.   In your report, you argue that in order   08:45

19  for scheduling information to be a control SDU, the 08:45

20  scheduling information has to be used by the node   08:45

21  B?                                                 08:45

22     A.   In order for the scheduling information to 08:45

23  be considered control information, I believe it has 08:45

24  to be used by the node B.                          08:45

25     Q.   Okay.  You agree that if the scheduling    08:45

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 290

1    information is used by the node B, it is a control      08:45

2    SDU?                                                    08:45

3        A.  Again, a control SDU is, I think another        08:45

4    issue.  It is control information.                      08:45

5        Q.  You agree that if scheduling information        08:45

6    is used by the node B, it's control information?        08:46

7        A.  I'm sorry.  Could you say that again.           08:46

8        Q.  You agree that if scheduling information        08:46

9    is used by the node B, it's control information?        08:46

10       A.  If it is used to control --                     

                                                             08:46

13   it's control information.                               08:46

14       Q.  You are arguing that if scheduling              08:46

15   information is not used by the node B, it's not         08:46

16   control information?                                    08:46

17       A.  That's correct.                                 08:46

18       Q.  But in your report, you don't cite             08:46

19   anywhere to the '596 patent where it says if           08:46

20   scheduling information is not used by the node B,       08:46

21   it's not control information.                           08:46

22       A.  That's correct.                                 08:46

23       Q.  When you read the '596 patent, you             08:46

24   couldn't find a single place where the '596 patent     08:46

25   said if scheduling information is not used by the      08:47

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 291

1   node B, it's not control information.                  08:47

2       A.  To me, the plain meaning of control            08:47

3   information is information that is used to control     08:47

4   something.  I did not need to cite to the '596         08:47

5   specification in order to come to that conclusion.     08:47

6       Q.  So it's your position that it's okay to        08:47

7   use a claim construction that is not found anywhere    08:47

8   in the '596 patent?                                    08:47

9           MS. SAXTON:  Objection.                         08:47

10      A.  Again, my understanding is there has been       08:47

11  no claim construction on this, so that I am to use      08:47

12  the plain and ordinary meaning of the term.  To me,    08:47

13  it's pretty self evident:  Control information is       08:47

14  information that is used to control.  It's not very    08:47

15  complicated.                                           08:47

16      Q.  So the '596 patent never says that if          08:47

17  scheduling information is not used by the node B,      08:47

18  it's not control information.                          08:47

19      A.  My recollection is the '596 refers to          08:48

20  scheduling information as essential, which it          08:48

21  clearly is not.                                        08:48

22      Q.  But the '596 patent never says that if         08:48

23  scheduling information is not used by the node B,      08:48

24  it's not control information.                          08:48

25      A.  No, I don't believe the '596 says that.        08:48

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 292

1    Q.   Yet you came to the conclusion that          08:48

2  control SDU means that scheduling information must  08:48

3  be used by the node B?                              08:48

4    A.   Again, we're conflating two issues here.     08:48

5  The SDU issue which we discussed yesterday, there   08:48

6  was a question of whether or not something can be   08:48

7  an SDU if it's generated within the same layer, and 08:48

8  whether or not scheduling information represents an 08:48

9  SDU.  So I want to isolate those two issues.        08:49

10     But there's nothing in the '596 that says       08:49

11  that if ███████████████████████████████████ to     08:49

12  control ████████████████████████████████ ██████    08:49

██    ████████████████████████.  That is based on my plain  08:49

14  interpretation -- my interpretation of the plain   08:49

15  meaning of control information, which is to say     08:49

16  information that is used to control.                08:49

17    Q.   So it's your testimony that the '596         08:49

18  patent never says that if scheduling information is 08:49

19  not used by the node B, it's not control           08:49

20  information?                                        08:49

21    A.   The '596 does not say that.                  08:49

22    Q.   And even though the '596 patent doesn't      08:49

23  say that, you've come to the conclusion that if     08:49

24  scheduling information is not used by the node B,   08:49

25  it's not control information?                       08:49

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 293

1     A.  That's correct.                              08:49

2     Q.  Let's take a look at the '596 patent.  It    08:49

3   should still be in front of you from yesterday.  If 08:50

4   you would please find column 10, lines 41 through   08:50

5   44.                                                 08:50

6     A.  Okay.                                         08:50

7     Q.  Do you see lines 41 through 44?               08:50

8     A.  I do.                                         08:50

9     Q.  If you would please read those lines          08:50

10  aloud.                                              08:50

11    A.  "The E-DCH reception control unit 445         08:50

12  reads control information included in the MAC-e     08:50

13  control SDU and performs appropriate operations     08:50

14  such as an operation for transmitting the control   08:50

15  information to a scheduler."                         08:50

16    Q.  So according to the '596 patent, a control    08:51

17  SDU contains control information that's forwarded    08:51

18  to a scheduler?                                      08:51

19       MS. SAXTON:  Objection.                        08:51

20    A.  It says, "Performs appropriate operations     08:51

21  such as an operation for transmitting the control   08:51

22  information to a scheduler."                         08:51

23    Q.  So in the preferred embodiment that we see    08:51

24  in the '596 patent, it's talking about forwarding   08:51

25  the scheduling information to a scheduler?          08:51

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 294

1    A.  Correct.                                           08:51

2    Q.  So when you read the '596 patent, it             08:51

3    doesn't ever say that the scheduling information     08:51

4    has to be used by the controller --                  08:51

5        MR. WHITEHURST:  Strike that.                     08:52

6    Q.  When you read the '596 patent, it never          08:52

7    says that the scheduling information has to be used  08:52

8    by the scheduler?                                     08:52

9    A.  Actually, I believe elsewhere in the             08:52

10   specification, it refers to that information as      08:52

11   being essential to the scheduling process.           08:52

12   Q.  In the sentence that we're looking at here       08:52

13   in this preferred embodiment, the only thing it      08:52

14   says is that the node B is transmitting the control  08:52

15   information to a scheduler.                           08:52

16   A.  In this sentence, that's what it says.           08:52

17   Elsewhere, before this in the specification, it      08:52

18   refers to scheduling information as being essential  08:52

19   to a scheduler.                                       08:52

20   Q.  So in column 10, lines 41 through 44, the        08:52

21   node B reads the scheduling information in the       08:52

22   MAC-e control SDU?                                    08:52

23   A.  Okay.  So that's a question.  Yes, I can         08:53

24   read that, yes.                                       08:53

25   Q.  And then the node B transmits the                08:53

** CONFIDENTIAL BUSINESS INFORMATION **
** OUTSIDE ATTORNEYS' EYES ONLY **

Page 295

1    scheduling information to a scheduler.                08:53

2         A.  That's what those lines say, yes.           08:53

3         Q.  So in column 10, lines 41 through 44, we     08:53

4    see ███████████████████████████████████████████       08:53

5    and ███████████████████████████████?                  08:53

6         A.  That's correct.                              08:53

7         Q.  Now, ███████████████████████████████      ████████  08:53

8    ██ ███████████████████████████████████████████.      08:53

9         A.  Uh-huh.                                      08:53

10        Q.  If you would please turn to the page         08:53

11   ending in 990.  We ████████████████████████       ████████

12   ██ █████████████████████████████████████████       ████████

13   ██ ███████████████                                   08:54

14        A.  Correct.                                     08:54

15        Q.  So in both column 10, lines 41 through 44    08:54

16   of the '596 patent and ██████████████████████       ████████

17   ██ ████████████████████████████████████████       ████████

18   ██ ████████████████████████████████████████       ████████

19   ██ ███████████████                                   08:54

20        MS. SAXTON:  Objection.                          08:54

21        A.  I'm sorry.  Could you repeat that.           08:54

22        Q.  In both column 10, lines 41 through 44 of    08:54

23   the '596 patent and ███████████████████████       ████████

24   ██ ███████████████████████████████████████       ████████

25   ██ ███████████████████████████████████             08:54