# EXHIBIT E

Highly Confidential - Attorneys' Eyes Only

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN JOSE DIVISION
 4
 5    APPLE INC., a California
      corporation,
 6
                     Plaintiff,
 7
      vs.                         CASE NO.  11-cv-01846-LHK
 8                                          12-cv-00630-LHK
      SAMSUNG ELECTRONICS CO.,
 9    LTD., a Korean business
      entity; SAMSUNG ELECTRONICS
10    AMERICA,INC., a New York
      corporation; SAMSUNG
11    TELECOMMUNICATIONS AMERICA,
      LLC, a Delaware limited
12    liability company,
13                   Defendants.
      _____/
14
15
16         H I G H L Y   C O N F I D E N T I A L
17         A T T O R N E Y S '  E Y E S   O N L Y
18
19      VIDEOTAPED DEPOSITION OF STEVEN SINCLAIR
20            REDWOOD SHORES, CALIFORNIA
21            WEDNESDAY, APRIL 4, 2012
22
23    BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR
24    CSR LICENSE NO. 9830
25    JOB NO. 47582
```

Highly Confidential - Attorneys' Eyes Only

Page 47

1    ease of use is an important factor in Apple sales?

2        A    Well, I think it's my own personal experience

3    in using the products and how -- how easy it is to use

4    a feature, how intuitive -- intuitive a feature seems

5    to be.  And, you know, we build products that we

6    ourselves think are -- are easy to use and that we

7    like to use and are beautiful.  And -- and -- and so

8    those -- those translate into sales.  We've seen that.

9        Q    All right.

10            Anything else?  I want to make sure I get a

11   complete list of the things on which you base your

12   opinion that ease of use is an important factor in

13   sales of Apple products.

14            Do I -- do I have everything now?

15       A    Those are the ones I can think of right now.

16       Q    All right.

17            Have you seen surveys or any type of studies

18   which indicate what features of Apple products

19   contribute to ease of use?

20       A    I don't believe we've broken down features in

21   a way that tie directly to ease of use.  We try and --

22   ease of use is a -- is an attribute of every feature.

23   So every feature we work on, we ask ourselves:  Is

24   this easy to use?  Does this contribute to the overall

25   ease of use of this product?

Highly Confidential - Attorneys' Eyes Only

1    A    Okay.

2    Q    Do you have any information at all about what

3  features consumers associate with ease of use?

4    A    It's all of the features.  All of the

5  features contribute to ease of use, either in the

6  most -- for the most part, for our products,

7  positively; in a few cases, like the examples I gave

8  you, negatively.

9    Q    You made -- you made a comment that you do do

10  surveys or some type of research to determine what

11  features influence purchase decisions.  Did I

12  understand that correctly?

13    A    Yes.

14    Q    What research are you referring to?  Could

15  you describe that, please.

16    A    So periodically, our research team does what

17  we call buyer surveys.  And so we usually do a buyer's

18  survey shortly after we launch a product, and then a

19  more complete version of that same survey several

20  months down the road from product launch and ask

21  questions about, you know, What -- what product did

22  you buy?  Why did you buy it?  Where did you buy it?

23  What influenced your decision to buy it?  And -- and

24  other details.  What country are you in?  So we can

25  break it down by country and demographics, that sort

Highly Confidential - Attorneys' Eyes Only

Page 58

1          MR. STONE:  John, we've been going over an
2    hour.  Whenever you get to a good breaking point.
3          MR. QUINN:  Let me just -- let me just do a
4    little bit and we'll break; okay?
5      Q    And similarly, word recommendations -- we've
6    heard, you know, in one of the patents -- you're aware
7    that your declaration -- you said you knew it related
8    to some patent issues.  You know there is an issue
9    relating to word recommendations when you're typing;
10   do you know that?
11     A    Now, you just reminded me of the fourth one I
12   couldn't think of.
13     Q    All right.
14          And is that one of the things that in -- in
15   surveys, the buyers -- one of the things -- the
16   options you can check as to why I bought the product
17   because of the -- this feature where you'll get word
18   recommendations when you're composing a message?
19     A    We don't ask that specific question.  That
20   falls, again, under ease of use of the product.
21     Q    Right.
22          Can you give me a complete list of all the
23   features that fall under ease of use.
24     A    I could go through a phone and -- and point
25   to many, many, many different features.

Highly Confidential - Attorneys' Eyes Only

Page 59

1    Q    Would it be fair to say that there are more

2    than five features that would be included within this

3    concept of ease of use?

4    A    I think that's fair to say.

5    Q    Would it be fair to say that there are more

6    than ten?

7    A    There are a lot of features that contribute

8    to ease of use, and if not done correctly, those

9    features can detract from ease of use.

10    Q    When you say there are many, many features

11    that are included under the category of ease of use,

12    can you give me an approximation of how many features

13    there are.

14    A    No, I can't.

15         MR. QUINN:  Okay.  Let's break.

16         THE VIDEOGRAPHER:  This marks the end of Disc

17    No. 1 in the deposition of Steven Sinclair.

18         The time is 10:36 a.m., and we are off the

19    record.

20         (Recess taken.)

21         THE VIDEOGRAPHER:  This marks the beginning

22    of Disc No. 2 in the deposition of Steven Sinclair.

23         The time is 10:47 a.m., and we are back on

24    the record.

25         MR. QUINN:  Q.  For how long have you worked

Highly Confidential - Attorneys' Eyes Only

Page 207

1                         J U R A T

2

3

4      I, STEVEN SINCLAIR, do hereby certify under

5      Penalty of perjury that I have read the

6      foregoing transcript of my deposition taken

7      on April 4, 2012; that I have made such

8      corrections as appear noted herein in ink,

9      initialed by me; that my testimony as

10     contained herein, as corrected, is true and

11     correct.

12

13

14     DATED this __4__ day of __May__, 2012,

15     at __Cupertino__, California.

16

17

18

19     _____

20              SIGNATURE OF WITNESS

21

22

23

24

25

Highly Confidential - Attorneys' Eyes Only

Page 208

CERTIFICATE OF REPORTER

1

2

3

4       I, ANDREA M. IGNACIO HOWARD, hereby certify

5  that the witness in the foregoing deposition was by me

6  duly sworn to tell the truth, the whole truth, and

7  nothing but the truth in the within-entitled cause;

8

9       That said deposition was taken in shorthand

10  by me, a Certified Shorthand Reporter of the State of

11  California, and was thereafter transcribed into

12  typewriting, and that the foregoing transcript

13  constitutes a full, true and correct report of said

14  deposition and of the proceedings which took place;

15

16       That I am a disinterested person to the said

17  action.

18

19       IN WITNESS WHEREOF, I have hereunto set my

20  hand this 4th day of April 2012.

21

22  _____

23  ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830

24

25

# EXHIBIT F

Highly Confidential - Attorneys' Eyes Only

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4    APPLE INC., a California

     Corporation,

5                              No. 5:12-CV-00630-LHK

                    Plaintiff,

6    vs.

7    SAMSUNG ELECTRONICS CO., LTD,

     a Korean business entity; SAMSUNG

8    ELECTRONICS AMERICA, INC., a

     New York corporation; SAMSUNG

9    TELECOMMUNICATIONS AMERICA, LLC,

     a Delaware limited liability

10   company,

11                   Defendants.

12   _____/

13

14   ** HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY **

15     VIDEOTAPED DEPOSITION OF ARTHUR RANGEL

16          Palo Alto, California

17        Tuesday, June 25, 2013

18

19

20

21

22

23   Reported By:

24   LINDA VACCAREZZA, RPR, CLR, CRP, CSR. NO. 10201

25   JOB NO. 62212

Highly Confidential - Attorneys' Eyes Only

Page 43

1    that go into ease of use that I think are there.

2    Battery, well, if you don't have -- if your phone has

3    no power, then, well, it doesn't allow you to use

4    it.  So that could fit in.  But again, we have never

5    really done any research that I'm aware of to break

6    down what all the components of ease of use are.

7    What I do know is that our customers view the iPhone,

8    all our iPhones as very easy to use.

9         Q.       And do you have any understanding as

10   to how many features on the iPhone 5 contribute to

11   ease of use?

12        A.       No.  And I'm kind of -- put it this

13   way.  OS X has over 200 features.  I probably don't

14   know what those 200 features are, but I know that OS

15   X is really easy to use for me.  So I would say the

16   same thing about iPhone.  There's probably hundreds

17   of features on an iPhone that make is easy to use.

18   Can I break it out into what are those components,

19   and how valuable are one versus another?  In an ease

20   of use, we have never researched that, so I wouldn't

21   know.

22             MR. STONE:  We have been going a

23             little over an hour, Scott.  I don't know if

24             now is a good time to take a quick break or

25             not.

**NAME OF CASE**: *Apple, Inc. v. Samsung Electronics Co., et al, Case No. 12-cv-630*
**DATE OF DEPOSITION**: June 25, 2013
**NAME OF WITNESS**: Arthur Rangel

**REASON CODES:**
**1. TO CLARIFY THE RECORD**
**2. TO CONFORM TO THE FACTS**
**3. TO CORRECT TRANSCRIPTION ERRORS**

      I have read the foregoing testimony of the pages of this deposition and hereby certify it to be a true and correct transcript subject to the corrections, if any, listed below.

| PAGE/LINE NUMBER | FROM | TO | REASON CODE |
|---|---|---|---|
| 8:1 | Are you're | Are you | 3 |
| 19:10 | reason | reasons | 3 |
| 22:4 | feature | features | 3 |
| 25:23 | LT support | LTE support | 3 |
| 31:7 | question | questions | 3 |
| 33:3-5 | and this is the ratings that they provide this by country on importance of this in their decision to purchase an iPhone | and this is the rating that they provide by country on the importance of this in their decision to purchase an iPhone | 1 |
| 34:14 | feature is in | feature in | 1 |
| 37:20 | important | importance | 3 |
| 43:17 | make is | make it | 3 |
| 56:3 | no asking | not asking | 3 |
| 56:4 | way long time | way long time ago | 1 |
| 64:2 | it was it | it was the | 3 |
| 71:8 | feature for | feature or | 3 |
| 73:18 | o | of | 3 |
| 79:10 | shows where the | show the | 1 |

| PAGE/LINE NUMBER | FROM | TO | REASON CODE |
|---|---|---|---|
| 79:25 | place | places | 3 |
| 90:17 | for a | for | 3 |
| 94:16 | see our share | see what our share | 1 |
| 110:9 | call | called | 3 |
| 117:18 | ask | asked | 3 |
| 119:23 | it's very | it's a very | 3 |

Arthur Rangel                    August 23, 2012
                                 Date

Highly Confidential - Attorneys' Eyes Only

Page 137

1          C E R T I F I C A T E

2     STATE OF CALIFORNIA      )

3                             )

4     COUNTY OF SAN FRANCISCO )

5          I, LINDA VACCAREZZA, a Certified

6     Shorthand Reporter for the State of

7     California, do hereby certify:

8          That ARTHUR RANGEL, the witness whose

9     deposition is hereinbefore set forth, was

10    duly sworn by me and that such deposition is

11    a true record of the testimony given by such

12    witness.

13         I further certify that I am not related

14    to any of the parties to this action by blood

15    or marriage; and that I am in no way

16    interested in the outcome of this matter.

17         IN WITNESS WHEREOF, I have hereunto set

18    my hand this 25th day of June 2013.

19

20    _____

21     LINDA VACCAREZZA, CSR. NO. 10201

22

23

24

25

# EXHIBIT G

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                  SAN JOSE DIVISION

 4

 5   APPLE INC., a California      )
     corporation,                  )
 6                                 )
             Plaintiff,            )
 7                                 )
             vs.                   ) Case No. 12-cv-00630-LHK
 8                                 )
                                   )
 9   SAMSUNG ELECTRONICS CO., a    )
     Korean corporation, SAMSUNG   )
10   ELECTRONICS AMERICA, INC.,    )
     a New York corporation; and   )
11   SAMSUNG TELECOMMUNICATIONS    )
     AMERICA, LLC, a Delaware      )
12   limited liability company,    )
                                   )
13           Defendants.           )
     _____)

14

15

16           HIGHLY CONFIDENTIAL TRANSCRIPT

17      VIDEOTAPED DEPOSITION OF PHIL SCHILLER

18

19

20              Palo Alto, California

21              Tuesday, July 23, 2013

22

23   Reported by:

24   Hanna Kim, CLR, CSR No. 13083

25   Job No. 63996
```

1    albums on this screenshot.

2        Q.  Do you know why Apple doesn't show the number

3    of photos in each album next to the album name in the

4    iPad photos app?

05:36 5      A.  No.  As I stated before, I have not been

6    involved in any discussion to show or not show numbers

7    on albums in the iPad photo app either, and I've never

8    talked to anyone about it.

9        Q.  How many features of the -- are there on the

05:36 10   iPhone that contribute to ease of use?

11       A.  Very many.  I don't have a count off the top

12   of my head.

13       Q.  Can you give me an approximate number?

14       A.  I would expect there are hundreds.  I don't

05:37 15   know any approximate number.

16       Q.  Are some of those features more important than

17   others in terms of their contribution to ease of use?

18           MR. KREVITT:  Objection.

19           THE WITNESS:  Again, I'm not sure.  I don't

05:37 20   think in terms of one thing more important than others.

21   I think some, you see and use more frequently than

22   others.  I think some may matter to certain customers

23   more than some other customer.  I'm not sure how to use

24   the word "important" in that question.

05:37 25   BY MR. QUINN:

Highly Confidential

Page 306

1          Q.  I mean, do you have the ability to rank in

2     terms of the extent to which a feature contributes to

3     ease of use?  Do -- can -- can you rank them in terms

4     of what features contribute the most and what features

05:37  5     contribute less to ease of use?  Can you do that?

6              MR. KREVITT:  Objection.  Form and foundation.

7              THE WITNESS:  I -- I've never thought of doing

8     that.  I -- I'm not sure how I would go about doing

9     that.

05:37 10     BY MR. QUINN:

11          Q.  Are you aware of any survey data or market

12     data or data of any nature that ranks what features are

13     more important in terms of their contribution to ease

14     of use?

05:38 15              MR. KREVITT:  Objection.

16              THE WITNESS:  I can't think of any myself off

17     the top of my head right now, no.

18     BY MR. QUINN:

19          Q.  Are you aware of any analysis or survey data

05:38 20     that's been done indicating that consumers purchase

21     either Samsung or Apple devices because of particular

22     features relating to ease of use?

23              MR. KREVITT:  Objection.

24              THE WITNESS:  I'm not sure.  I certainly don't

05:39 25     recall any survey of Samsung and Apple devices that

Highly Confidential

Page 312

1    to the ease of use of the product.  I think that's

2    another area.  To the extent that if Samsung products

3    have similar features, you can infer that they also

4    have end user benefits of ease of use like our products

05:46  5  do.

6    BY MR. QUINN:

7        Q.  You know, sir, you -- you can give lengthy

8    answers if you wish and talk about the features and why

9    you think they're great and how they came about.  My

05:47  10  question only really asks for identification of those

11   features.  You don't have -- to answer my question

12   fully and accurately, you don't have to do anything

13   other than identify a feature.  And I have got slide to

14   unlock and then I've got the multitouch keypad.

05:47  15      Would you care -- is there another feature

16   that -- of Samsung products that contributes to ease of

17   use that causes Samsung customers to buy Samsung

18   products?  And if so, please identify.

19           MR. KREVITT:  Same objections.  And

05:47  20  mischaracterizes his last answer.

21           THE WITNESS:  I think another feature of

22   iPhone that I believe, to the extent that Samsung

23   phones have similar products -- similar features may

24   have similar benefits, is our home screen design and

05:47  25  layout.  We have applications represented on the home

1    screen, and the way we have worked in those and

2    designed those certainly are -- contribute a lot to the

3    ease of use of the experience of using the iPhone.  And

4    to the extent that's similar on Samsung products, it

05:48  5   might have a similar benefit to their users.

6    BY MR. QUINN:

7        Q.  Any other feature?

8        A.  There are probably hundreds, but rather not

9    sit here and, off the top of my head, make too many

05:48 10   inferences of all different features, products I don't

11   use.  So I'll stop at that.

12       Q.  Sad -- sadly, I -- I have to ask you, have I

13   now exhausted your knowledge of features of Samsung

14   phones which contribute to ease of use which cause

05:48 15   Samsung customers to purchase Samsung products?

16           MR. KREVITT:  Objection.  Mischaracterizes the

17   testimony.  Lack of foundation.  And form.

18           THE WITNESS:  I -- it's all I can think of at

19   the moment of ideas of what might help you answer the

05:49 20   question, things that might benefit Samsung designs'

21   ease of use.

22   BY MR. QUINN:

23       Q.  It's true, isn't it, that you have no

24   way -- that -- isn't true, isn't it, that so far as

05:49 25   you're aware, there is no way of quantifying the number

Page 331

1                                JURAT

2

3          I, PHIL SCHILLER, do hereby certify under

4     penalty of perjury that I have read the foregoing

5     transcript of my deposition taken on Tuesday,

6     07/23/2013; that I have made such corrections as appear

7     noted herein in ink, initialed by me; that my testimony

8     as contained herein, as corrected, is true and correct.

9

10         Dated this 16th day of September,

11    2013, at Infinte Loop, Cupertino,

12    California.

13

14

15

16    _____
                  PHIL SCHILLER

17

18

19

20

21

22

23

24

25

Page 332

```
1                    CERTIFICATE OF REPORTER

2

3          I, Hanna Kim, a Certified Shorthand Reporter,

4    do hereby certify:

5          That prior to being examined, the witness in

6    the foregoing proceedings was by me duly sworn to

7    testify to the truth, the whole truth, and nothing but

8    the truth;

9          That said proceedings were taken before me at

10   the time and place therein set forth and were taken

11   down by me in shorthand and thereafter transcribed into

12   typewriting under my direction and supervision;

13         I further certify that I am neither counsel

14   for, nor related to, any party to said proceedings, not

15   in anywise interested in the outcome thereof.

16         In witness whereof, I have hereunto subscribed

17   my name.

18

19   Dated:  24th day of July, 2013

20

21

22

23         _____

                        Hanna Kim

24                 CLR, CSR No. 13083

25
```

# EXHIBIT H

Highly Confidential - Attorneys' Eyes Only

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5   APPLE INC., a California
    corporation,

6

                    Plaintiff,

7

    vs.                           CASE NO.  12-cv-00630-LHK

8

    SAMSUNG ELECTRONICS CO.,

9   LTD., a Korean business
    entity; SAMSUNG ELECTRONICS

10  AMERICA,INC., a New York
    corporation; SAMSUNG

11  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited

12  liability company,

13                  Defendants.
    _____/

14

15

16        H I G H L Y   C O N F I D E N T I A L

17        A T T O R N E Y S'  E Y E S   O N L Y

18

19      VIDEOTAPED DEPOSITION OF GREG JOSWIAK

20           REDWOOD SHORES, CALIFORNIA

21            TUESDAY, APRIL 17, 2012

22

23  BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

24  CSR LICENSE NO. 9830

25  JOB NO. 48577

Highly Confidential - Attorneys' Eyes Only

Page 22

1   there may be some aspects I haven't completely thought

2   about.

3       Q   Does the on/off button contribute to ease of

4   use of the iPhone?

5       A   It's part of the product experience, and as I

6   said, the ease of use is part of the entire

7   experience.  We're trying to make things easy to use.

8   We haven't, you know, created a list, which is, I

9   guess, what you're asking for, of which things make it

10  to that list or not.  It's an experience.  It doesn't

11  have an itemized list that you asked for, what

12  qualifies as ease of use and what doesn't.  Ease of

13  use is what we're trying to create as an experience

14  with our products.

15      Q   So you wouldn't be able to tell me which

16  features are within the category of ease of use or

17  contribute to ease of use and which ones don't?

18      A   I didn't --

19          MR. KREVITT:  Objection.

20          THE WITNESS:  -- I didn't say that.

21          MR. ELSBERG:  Okay.  Then please do.

22      Q   Which are the features --

23          MR. KREVITT:  Please do what?

24          MR. ELSBERG:  Q.  -- that do not contribute

25  to ease of use in the iPhone?

Highly Confidential - Attorneys' Eyes Only

Page 23

1          MR. KREVITT:  Objection.

2          THE WITNESS:  Which of the features do not

3     contribute to the ease of use?  That's a really absurd

4     question.

5          What I tried to explain to you earlier is

6     ease of use is at the core of our thinking with our

7     products and our experience.  It drives so much of

8     what we do.  I don't have a pre-itemized list for you

9     of which things would qualify under that or not.

10         MR. ELSBERG:  Okay.  So you -- you -- I know

11    you said it's an absurd question.  I apologize.  I --

12    it's an important one to me.

13       Q   I want to give you another chance.  If you

14    can list out features of the iPhone that do not

15    contribute to ease of use.

16         MR. KREVITT:  Objection; asked and answered;

17    foundation; outside the scope of his topics and object

18    to the form of the question.

19         THE WITNESS:  I think I've answered that

20    already.

21         MR. ELSBERG:  Okay.

22       Q   You're familiar with the feature slide to

23    unlock?

24       A   Yes, I am.

25       Q   And slide to unlock refers to a feature that

Highly Confidential - Attorneys' Eyes Only

```
1              J U R A T

2

3

4   I, GREG JOSWIAK, do hereby certify under

5   Penalty of perjury that I have read the

6   foregoing transcript of my deposition taken

7   on April 17, 2012; that I have made such

8   corrections as appear noted herein in ink,

9   initialed by me; that my testimony as

10  contained herein, as corrected, is true and

11  correct.

12

13

14  DATED this ____ day of _____, 2012,

15  at _____, California.

16

17

18

19  _____

20          SIGNATURE OF WITNESS

21

22

23

24

25
```

Highly Confidential - Attorneys' Eyes Only

Page 235

CERTIFICATE OF REPORTER

1
2
3
4      I, ANDREA M. IGNACIO HOWARD, hereby certify
5 that the witness in the foregoing deposition was by me
6 duly sworn to tell the truth, the whole truth, and
7 nothing but the truth in the within-entitled cause;
8
9      That said deposition was taken in shorthand
10 by me, a Certified Shorthand Reporter of the State of
11 California, and was thereafter transcribed into
12 typewriting, and that the foregoing transcript
13 constitutes a full, true and correct report of said
14 deposition and of the proceedings which took place;
15
16      That I am a disinterested person to the said
17 action.
18
19      IN WITNESS WHEREOF, I have hereunto set my
20 hand this 17th day of April 2012.
21
22      _____
23 ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830
24
25

# EXHIBIT I

** TRANSCRIPT MARKED CONFIDENTIAL **
** ATTORNEYS'EYES ONLY **

Page 1

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4    APPLE INC., a California
     Corporation,

5                                   No. 12: CV00630LHK

                      Plaintiff,

6    vs.

7    SAMSUNG ELECTRONICS CO., LTD,
     a Korean business entity; SAMSUNG

8    ELECTRONICS AMERICA, INC., a
     New York corporation; SAMSUNG

9    TELECOMMUNICATIONS AMERICA, LLC,
     a Delaware limited liability

10   company,

11                    Defendants.

12   _____/

13

14        ** TRANSCRIPT MARKED CONFIDENTIAL **

15            ** ATTORNEYS'EYES ONLY **

16

        VIDEOTAPED DEPOSITION OF GREG JOSWIAK

17

                 Palo Alto, California

18

               Tuesday, July 9, 2013

19

20

21

22

23   Reported By:

24   LINDA VACCAREZZA, RPR, CLR, CRP, CSR. NO. 10201

25   JOB NO. 63459

** TRANSCRIPT MARKED CONFIDENTIAL **
** ATTORNEYS'EYES ONLY **

Page 23

1    everybody in this room.                               09:42

2       Q.   Well, let's -- I would ask you please to do   09:42

3    the best you can for me, and list for me all the      09:42

4    features that you're aware of that contribute to ease 09:42

5    of use of Apple mobile devices.                       09:42

6          MR. KREVITT:   Objection.   Foundation.   And   09:42

7    outside the scope of the topics for which the witness 09:42

8    has been designated to testify.                       09:42

9          THE WITNESS:   As I said, to really approach    09:42

10   that, I would like to have multiple individuals and   09:42

11   more time to spend.   There are lots and lots of      09:42

12   features, if not thousands of features in our         09:42

13   products.                                             09:42

14      Q.   Well, do you have in your mind some features  09:42

15   that you're thinking of that contribute to ease of    09:42

16   use, other than those which you've told us are the    09:42

17   subject of the patents in this case?                  09:42

18      A.   Again, it would be a difficult assignment to  09:42

19   list all those features.   I would choose not to try  09:42

20   to even scratch the surface.                          09:42

21      Q.   How about if I asked you really nicely,       09:42

22   would you try?                                         09:42

23      A.   I assume you're a very nice person.   You     09:42

24   seem so, so far.   But I don't think that changes the 09:43

25   difficulty of the question.                           09:43

** TRANSCRIPT MARKED CONFIDENTIAL **
** ATTORNEYS'EYES ONLY **

Page 24

| | | |
|---|---|---|
| 1 | Q.    I understand it's difficult. | 09:43 |
| 2 | A.    Uh-huh. | 09:43 |
| 3 | Q.    But as you sit here, could you please give | 09:43 |
| 4 | me a list of the features that you can think of now | 09:43 |
| 5 | that contribute to ease of use of Apple mobile | 09:43 |
| 6 | devices? | 09:43 |
| 7 | MR. KREVITT:  Objection.  Asked and | 09:43 |
| 8 | answered.  Outside the scope of the topics for which | 09:43 |
| 9 | the witness has been designated to testify. | 09:43 |
| 10 | THE WITNESS:  Again, as I said, John, it | 09:43 |
| 11 | would be a difficult assignment, and it would be | 09:43 |
| 12 | something I would really want to gauge with multiple | 09:43 |
| 13 | people. | 09:43 |
| 14 | Q.    Would it be true to say, then, it's not | 09:43 |
| 15 | something really that you can do right now to list | 09:43 |
| 16 | the factors that contribute to ease of use of Apple | 09:43 |
| 17 | mobile devices? | 09:43 |
| 18 | MR. KREVITT:  Same objections.  Foundation. | 09:43 |
| 19 | Outside the scope of the topics for which the witness | 09:43 |
| 20 | has been designated to testify. | 09:43 |
| 21 | THE WITNESS:  As I said, it would be a | 09:43 |
| 22 | difficult assignment.  There are so many features in | 09:43 |
| 23 | a product.  So many features that, again, for us | 09:43 |
| 24 | contribute to ease of use, and that we design ease of | 09:44 |
| 25 | use into those features.  They are kind of | 09:44 |

** TRANSCRIPT MARKED CONFIDENTIAL **
** ATTORNEYS'EYES ONLY **

Page 25

1    symbiotic.  And it would be a very difficult          09:44

2    assignment to sit here and try to list all those for   09:44

3    you.                                                   09:44

4        Q.   Could you give me an estimate of the number   09:44

5    of features in any Apple mobile device which, in your  09:44

6    view, contribute to ease of use?                       09:44

7            MR. KREVITT:  Objection.  Lack of             09:44

8    foundation.  Calls for speculation.                    09:44

9            THE WITNESS:  I wouldn't know how to          09:44

10   estimate that, John.                                   09:44

11       Q.   Is it possible for you to -- may I ask        09:44

12   this?  Are there some features that contribute to      09:44

13   ease of use that are -- start over again.              09:44

14           Are there some features that are more         09:44

15   important in their contribution to ease of use than    09:44

16   other features?                                        09:44

17           MR. KREVITT:  Objection.  Foundation.         09:44

18   Outside the scope.                                      09:44

19           THE WITNESS:  As I said earlier, I don't      09:44

20   think all features are equal.  I don't think all       09:44

21   features as they contribute to ease of use are         09:44

22   equal.  So I guess that you could derive from that,    09:44

23   then, yes.                                             09:44

24       Q.   And could you tell me what you regard as the  09:44

25   most important features in terms of contributing to    09:45

** TRANSCRIPT MARKED CONFIDENTIAL **
** ATTORNEYS'EYES ONLY **

Page 181

1          THE VIDEOGRAPHER:  This marks the end of

2     Volume 2 Disc 2 and adjourns the deposition of Greg

3     Joswiak.  The time is 2:11 p.m. and we are off the

4     record.

5              (Time noted:  2:11 p.m.)

6

7

8

9     _____

10                    GREG JOSWIAK

11

12

13     Subscribed and sworn to before me

14     This    2   day of   October    , 2013.

15     _____

16

17

18

19

20

21

22

23

24

25

** TRANSCRIPT MARKED CONFIDENTIAL **
** ATTORNEYS'EYES ONLY **

Page 182

1                 C E R T I F I C A T E

2     STATE OF CALIFORNIA      )

3                              )

4     COUNTY OF SAN FRANCISCO )

5         I, LINDA VACCAREZZA, a Certified Shorthand

6     Reporter for the State of California, do hereby

7     certify:

8         That GREG JOSWIAK, the witness whose deposition

9     is hereinbefore set forth, was duly sworn by me and

10    that such deposition is a true record of the

11    testimony given by such witness.

12        I further certify that I am not related to any

13    of the parties to this action by blood or marriage;

14    and that I am in no way interested in the outcome of

15    this matter.

16        IN WITNESS WHEREOF, I have hereunto set my hand

17    this 8TH day of July 2013.

18

19    _____

20         LINDA VACCAREZZA, CSR. NO. 10201

21

22

23

24

25

# EXHIBIT M

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**EXPERT REPORT OF TERRY L. MUSIKA, CPA** |

**SUBJECT TO PROTECTIVE ORDER**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

INTENTIONALLY OMMITTED FROM EXHIBIT/RECORD

2

3

4

5

6   174. Apple participated in a series of licensing negotiations with Samsung that included the utility patents

7       in the Apple Intellectual Property In Suit.  I understand that the first meeting between Apple and

8       Samsung regarding Apple's concern that Samsung was "copying Apple's products" occurred in July

9       2010 in Cupertino, CA.[156]   The meeting included Apple's then CEO Steve Jobs and COO Tim Cook

10      as well as Samsung COO J.Y. Lee.[157]  The July 2010 meeting was followed up with August and

11      September 2010 meetings between other Apple and Samsung representatives[158] in which Apple

12      provided substantial additional information about the nature and scope of Samsung's infringement of

13      Apple's intellectual property.  These discussions led to an October 2010 meeting in Washington, DC

14      between Apple Senior Vice President and General Counsel, Bruce Sewell, Apple Senior Director and

15      former Chief Patent Counsel, Chip Lutton, and Apple Director of Patent Licensing and Strategy,

16      Boris Teksler, as well as Dr. Seung Ahn and KJ Kim from Samsung.[159]   The October 2010 licensing

17      discussion yielded a proposed framework for a license by Apple that included a proposed $30 per

18      Samsung licensed smartphone and $40 per licensed touchscreen tablet that would include some but

19      not all of the utility patents in suit and none of the design patents.[160]   Chip Lutton testified that the

20      tablet rate of $40 per licensed touchscreen tablet was to be reduced over some period of time to a

21      lesser royalty, proposed initially to be a $30 per unit royalty after two years.[161]

22   175. Apple indicated on multiple occasions throughout the licensing discussion meetings described above

23      that Apple had no interest in licensing its design patents or trade dress to Samsung and also indicated

24

25   [156] Deposition of Chip Lutton, Jr., July 26, 2011, pp. 21 and 24.
     [157] Deposition of Chip Lutton, Jr., July 26, 2011, p. 23.
     [158] Deposition of Chip Lutton, Jr., July 26, 2011, pp. 17 and 118.
26   [159] Deposition of Chip Lutton, Jr., July 26, 2011, p. 171.
     [160] Samsung-Apple Licensing Discussion, October 5, 2010 (APLNDC000010886-917 at APLNDC000010897); Discussion with
27   Boris Teksler.
     [161] Deposition of Chip Lutton, Jr., July 26, 2011, p. 192.; Samsung-Apple Licensing Discussion, October 5, 2010
28   (APLNDC000010886-917 at APLNDC000010897).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    that certain utility patents would need to be excluded.  When asked whether Samsung was offered a

2    license in the August 4, 2010 meeting, Chip Lutton stated "if Samsung wanted to continue to use

3    Apple's utility patents in its smartphones, as documented in the – in the infringement by the Android

4    – various layers of the Android system, the message to Samsung was that we were willing to work

5    with them on – on that.  We were not willing to license them the design patents or the design aspects

6    of our product."[162]  Mr. Teksler also confirmed that certain of the utility patents (including the '381,

7    '915, and '163 Patent) that have been asserted in this lawsuit would have been excluded from any

8    arrangement between Apple and Samsung.[163]

9    176.  INTENTIONALLY OMMITTED FROM EXHIBIT/RECORD

[167] INTENTIONALLY
OMMITTED FROM
EXHIBIT/RECORD

---

[162] Deposition of Chip Lutton, Jr., July 26, 2011, p. 52.
[163] Discussion with Boris Teklser.
[164] INTENTIONALLY OMMITTED FROM
EXHIBIT/RECORD

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

**S.  PROFESSIONAL ARRANGEMENT**

2

265.  INTENTIONALLY OMMITTED FROM EXHIBIT/RECORD

3

4

5  INTENTIONALLY OMMITTED
FROM EXHIBIT/RECORD

6

7  March 22, 2012                                        Terry L. Musika, CPA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT N

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.    11-cv-01846-LHK<br><br>**EXPERT REPORT OF JULIE L. DAVIS, CPA** |

SUBJECT TO PROTECTIVE ORDER

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    INTENTIONALLY OMMITTED FROM EXHIBIT/RECORD

2

3

4

5

6

7

8

9

10

11

12

13

14         186.    As a part of this analysis, Mr. Musika and I also evaluated the discussions between

15    Apple and Samsung in the summer and fall of 2010.  Apple and Samsung first met in July 2010

16    regarding Apple's concern that Samsung was "copying Apple's products."[275]  The attendees at

17    the meeting included Apple's then CEO, Steve Jobs, and then COO, Tim Cook, as well as

18    Samsung's COO, J.Y. Lee.[276]  Further discussions were held on August 4, 2010, and in

19    September of that year, at which Apple provided Samsung with additional information regarding

20    Samsung's infringement of Apple's intellectual property, including specific reference to the '381

21    _____

22    [274] INTENTIONALLY OMMITTED FROM EXHIBIT/RECORD

23

24

25

26

27    [275] Deposition of Chip Lutton, Jr., dated July 26, 2011, pp. 21 and 24.

28    [276] Deposition of Chip Lutton, Jr., dated July 26, 2011, p. 23.

Patent.[277]  In October 2010, Bruce Sewell, Apple's Senior Vice President and General Counsel,

Chip Lutton, Apple's former Chief Patent Counsel, and Boris Teksler, Apple's Director of Patent

Licensing and Strategy, met with Dr. Seung Ahn and K.J. Kim from Samsung.[278]  These

discussions resulted in a proposed framework for a license that included a royalty of $30 per

Samsung licensed smartphone and $40 per Samsung licensed touchscreen tablet (reducing to $30

per tablet over two years).[279]

187.    Importantly, this license offer excluded rights to *any* design patents or design

aspects of Apple's products as well as the utility patents included in my damages calculation.

When asked whether it was Apple's intent to offer Samsung a license at the August 4, 2010

meeting between the parties, Mr. Lutton testified that "if Samsung wanted to continue to use

Apple's utility patents in its smartphones, as documented in the – in the infringement by the

Android – various layers of the Android system, the message to Samsung was that we were

willing to work with them on – on that.  We were not willing to license them the design patents or

the design aspects of our product."[280]  I understand from my discussion with Mr. Teksler that the

utility patents at issue in the new trial are considered to be part of Apple's unique user experience

and that Apple would have also excluded these patents from any license with Samsung.

188.    A November 2010 presentation given by Samsung to Apple identifies, in

an illustration of hypothetical royalty mechanics, a 1% royalty rate for both Apple and Samsung

based on the assumption that "the patent positions for both Apple and Samsung are equal."[281]  In

this scenario, according to Samsung, Apple would have paid Samsung a balancing payment of

---

[277] Deposition of Chip Lutton, Jr., dated July 26, 2011, pp. 17, 48, and 118; Lutton Ex. 5 (APLNDC0000001103–APLNDC0000001125).

[278] Deposition of Chip Lutton, Jr., dated July 26, 2011, p. 171.

[279] Samsung-Apple Licensing Discussion, dated Oct. 5, 2010 (APLNDC000010886–APLNDC000010897 at APLNDC000010897); Deposition of Chip Lutton, Jr., dated July 26, 2011, p. 192.

[280] Deposition of Chip Lutton, Jr., dated July 26, 2011, p. 52.

[281] Deposition of Chip Lutton, Jr., dated July 26, 2011, p. 332; Lutton Deposition Exhibit 23: Apple-Samsung Licensing Discussion, p. 5.

1   $234 million.[282]  Regarding this presentation, Mr. Lutton testified that "Samsung took a strange

2   turn of talking about its own intellectual property, and – and had a view that – that Apple's

3   intellectual property and Samsung's intellectual property were of similar value, but because

4   Apple was selling more products than Samsung, that Apple should owe Samsung a net balancing

5   payment."[283]  Mr. Musika converted the 1% royalty rate in this scenario to a per unit royalty rate

6   by dividing the $67 million in Samsung royalties by the 16.1 million Samsung smartphone units

7   subject to those royalties.  This calculation would result in a per unit royalty rate for Samsung's

8   smartphones of $4.16.[284]

9        189.   Consistent with Mr. Musika's conclusions, my review of the licenses and

10  discussions detailed above did not identify any license that is comparable to the license that

11  Samsung would need to enter into for the asserted Apple Intellectual Property.  I did not identify

12  any other directly comparable licenses.  This is consistent with the testimony of Mr. Jun Won Lee

13  of Samsung, my discussions with Mr. Boris Teksler, and Mr. Teksler's testimony at trial.[285]

14        **5.**      INTENTIONALLY OMMITTED FROM
                        EXHIBIT/RECORD

---

[282] Lutton Deposition Exhibit 23: Apple-Samsung Licensing Discussion, p. 5.

[283] Deposition of Chip Lutton, Jr., dated July 26, 2011, p. 151.

[284] Lutton Deposition Exhibit 23: Apple-Samsung Licensing Discussion, p. 5.

[285] Deposition of Jun Won Lee, dated Mar. 5, 2012, pp. 79:2-81:15; discussions with Boris Teksler; Boris Teksler Trial Testimony, dated Aug. 13, 2012, pp. 2006:13-2007:10, 2009:4-18, and 2011:3-2012:16.

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

INTENTIONALLY OMMITTED FROM EXHIBIT/RECORD

Dated:  June 24, 2013

_____
JULIE L. DAVIS

INTENTIONALLY OMMITTED FROM EXHIBIT/RECORD

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

# EXHIBIT OO

Confidential Attorneys' Eyes Only

Page 1

```
1        IN THE UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF CALIFORNIA
3                 SAN JOSE DIVISION
4    APPLE, INC., a California        )
     corporation,                     )
5                                     )  CASE NO.
                    Plaintiff,        )  12-CV-00630-LHK
6                                     )
              vs.                     )
7                                     )
     SAMSUNG ELECTRONICS, CO., LTD.,  )
8    a Korean corporation; SAMSUNG    )
     TELECOMMUNICATIONS AMERICA,      )
9    LLC, a Delaware limited          )
     liability company,               )
10                                    )
                    Defendants.       )
11   -------------------------------)
12         * * *ATTORNEYS' EYES ONLY* * *
13       CONFIDENTIAL VIDEOTAPED DEPOSITION
14                      OF
15       CHRISTOPHER VELLTURO, PH.D.
16            New York, New York
17            September 25, 2013
18
19
20
21
22
23   Reported by:
24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR
25   JOB NO. 66028
```

Confidential Attorneys' Eyes Only

Page 10

1    A.    I understand.                          10:11:16:09

2          MR. THOMASCH:  Excuse me.  That's not

3    a question.  As to his legal

4    responsibilities, we will consult with him.

5    We're also happy to talk to you about        10:11:22:24

6    reciprocal disclosures if you think that

7    there's any disclosure that needs to be

8    made.

9    BY MR. QUINN:

10   Q.    Let me ask you this, sir:  By the time 10:11:29:15

11   of trial when you testify at trial, will you

12   come to trial prepared to answer the question

13   how much Apple has paid you in this case?

14         MR. THOMASCH:  Objection to form.

15   Q.    Yes or no?                             10:11:38:24

16   A.    Subject to legal exchanges that

17   generate that information as part of the record

18   here and that it can be part of the record, I --

19   I can come to trial with that information.

20   Q.    Thank you.  I mean, do you have any    10:11:54:27

21   problem, yourself, personally, have any problem

22   sharing with the jury how much Apple has paid

23   you in this case?

24   A.    No.

25   Q.    You've been retained by Apple some,    10:12:06:18

Confidential Attorneys' Eyes Only

Page 11

1    what, eight, nine, ten times previously?          10:12:08:27

2        A.     Approximately, yes.

3        Q.     What is the number?  Is it eight?  Is

4    it nine?  Is it ten?  Is it eleven?  How many

5    times have you been hired by Apple before?        10:12:20:18

6             MR. THOMASCH:  Objection to form.

7        A.     And I assume you are including in that

8    counsel hiring me on behalf of Apple?

9        Q.     Yes, of course.

10       A.     Fair enough.  Okay.                     10:12:29:06

11             A very rough estimate, probably

12   between ten and twelve times.

13       Q.     When you come to testify at trial,

14   will you be prepared to tell the jury how many

15   times Apple has retained you?                      10:12:45:18

16       A.     I can do that.

17       Q.     Thank you.  Is there any client you

18   have ever worked for doing this type of work,

19   that is to say consulting on litigation and

20   testifying where you are paid, that you have       10:12:59:24

21   worked for more times than Apple?

22       A.     I believe so, yes.

23       Q.     Would you identify those client or

24   clients, please?

25       A.     And this is on sheer number of cases? 10:13:20:00

Confidential Attorneys' Eyes Only

Page 307

```
1    Q.    Yes, sir.                          18:40:56:03
2    A.    I did not fill it out.
3         MR. QUINN:  Okay.  We'll designate
4    this attorney's eyes only, the entire
5    transcript, and with that, we've concluded  18:41:07:03
6    the deposition.
7         MR. THOMASCH:  All right.  Thank you,
8    Dr. Vellturo.
9         THE VIDEOGRAPHER:  The time is 6:42
10   P.M.  We're going off the record.         18:41:19:24
11                    oOo
12
13
14
15                                            18:41:20:27
16
17         _____
18             CHRISTOPHER VELLTURO, PH.D.
19    Subscribed and sworn to
     before me this    day
20   of         2013.                          18:41:20:27
21
22    _____
23
24
25
```

Confidential Attorneys' Eyes Only

1                                    18:41:20:27

2                    CERTIFICATE

3        STATE OF NEW YORK )

                              :  ss

4        COUNTY OF NEW YORK)

5             I, Kathy S. Klepfer, a Registered

6        Merit Reporter and Notary Public within and

7        for the State of New York, do hereby

8        certify:

9             That CHRISTOPHER VELLTURO, PH.D., the

10       witness whose deposition is herein before

11       set forth, was duly sworn by me and that

12       such deposition is a true record of the

13       testimony given by such witness.

14            I further certify that I am not

15       related to any of the parties to this action

16       by blood or marriage and that I am in no way

17       interested in the outcome of this matter.

18            In witness whereof, I have hereunto

19       set my hand this 25th day of September 2013.

20

21            -------------------------------

                    KATHY S. KLEPFER, RPR, RMR, CRR, CLR

22

23

24

25