**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE (pro hac vice)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street Boston,
Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants.<br><hr>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br>Counterclaim-Defendant. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN UNRELIABLE AND IMPERMISSIBLE SAMSUNG EXPERT TESTIMONY**<br><br>**HEARING:**<br><br>Date:      January 23, 2013<br>Time:      1:30 p.m.<br>Place:     Courtroom 4, 5th Floor<br>Judge:     Hon. Lucy H. Koh<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

**TABLE OF CONTENTS**

Page

I.    Dr. Chevalier's Analysis of Licenses Is Unreliable and Inadmissible ..............................1

      A.    Samsung Does Not Even Attempt to Established that Any of its Proffered
            Licenses, Apart from the HTC Agreement, Are Comparable ............................2

      B.    Samsung Has Not Rebutted Apple's Showing That Dr. Chevalier Had No
            Factual Basis for Extracting Royalty Rates from Her Proffered Licenses............5

II.   PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN
III.  THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT
      ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

IV.   Dr. Rinard Should be Precluded From Creating Unreliable and Misleading
      Demonstrations Concerning Certain Purported Prior Art Systems..................................13

V.    Samsung's Experts Should be Precluded From Testifying About the Opinions of
      Apple's Experts Expressed in Past Cases ...........................................................15

VI.   Conclusion ...................................................................................................15

# TABLE OF AUTHORITIES

Page

## Cases

*ActiveVideo Networks v. Verizon Communications*,
  694 F.3d 1312 (Fed. Cir 2012) ............................................................................... 4

*Bazemore v. Friday*,
  478 US 385 (1986) .................................................................................................. 9

*Daubert v. Merrell Dow Pharms, Inc.*,
  509 U.S. 579 (1993) ............................................................................................... 2

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*,
  No. C 11-05973 PSG, 2013 WL 4538210 (N.D. Cal. Aug. 22, 2013) ..................... 6

*Eolas Tech. Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005) ............................................................................ 14

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed Cir 2010) .............................................................................. 13

*Finjan, Inc. v. Symantec Corp.*,
  10-CV-593 (GMS), 2013 WL 5302560 (D. Del. Sept. 19, 2013) .......................... 14

*HTC Corp. v. Tech Props., Ltd.*,
  2013 WL 4787509 (N.D. Cal. 2013) ................................................................... 5, 6

*i4i Ltd. P'Ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ................................................................................ 4

*Interwoven, Inc. v. Vertical Computer Sys.*,
  2013 WL 3786633 (N.D. Cal 2013) ........................................................................ 4

*LaserDynamics, Inc., v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) .................................................................................. 4

*Liquid Dynamics Corp. v. Vaughan Co.*,
  449 F.3d 1209 (Fed. Cir. 2006) ............................................................................ 10

*LP Matthews LLC v. Bath & Body Works, Inc.*,
  458 F. Supp. 2d 198 (D. Del. 2006) ...................................................................... 12

*Lucent Techs., Inc., v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .............................................................................. 1

*MultiMedia Patent Trust v. Apple, Inc.*,
  2012 WL 5873711 (S.D. Cal. 2012) ....................................................................... 4

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 10

*Poly-America, Inc. v. Serrot Int'l, Inc.*,
  2002 U.S. Dist. LEXIS 15995 (N.D. Tex. Aug. 26, 2002),
  *reversed and remanded on other grounds*, 383 F.3d 1303 (Fed. Cir. 2004) ............ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page

*ResQNet.com, Inc. v. Lansa, Inc.,*
   594 F.3d 860 (Fed. Cir. 2010)..................................................................................... 1

*ResQNet.com, Inc. v. Lansa, Inc.,*
   828 F. Supp. 2d 688 (S.D.N.Y. 2011).......................................................................... 6

*Ricoh v. Quanta,*
   2010 WL 1233326 (W.D. Wis. 2010)........................................................................... 5

*TiVo, Inc. v. Echostar Communs. Corp.,*
   516 F.3d 1290 (Fed. Cir. 2008).................................................................................. 10

*Trading Techs. v. eSpeed,*
   2007 WL 704525 (N.D. Ill 2007) ................................................................................ 3

*TV Interactive v. Sony Corp.,*
   929 F. Supp.2d 1006 (N.D. Cal 2013) ......................................................................... 4

*Versata Software, Inc. v. Internet Brands, Inc.,*
   902 F. Supp. 2d 841 (E.D. Tex 2012) ........................................................................ 14

*Wilson v. Maricopa Cnty.,*
   No. CV-04-2873 PHX-DGC, 2007 WL 686726 (D. Ariz. Mar. 2, 2007) ................. 15

**Rules**

Rule 702 ............................................................................................................................ 2

I.      **Dr. Chevalier's Analysis of Licenses Is Unreliable and Inadmissible**

Samsung's damages expert, Dr. Judith Chevalier, improperly relies on ███ non-comparable licenses, from which she purports to reach an opinion that each of the patent claims in suit has an identical, and trivial, value.  Apple's claim for damages will require the jury to consider what would have happened if Apple and Samsung had held a series of license negotiations occurring immediately before Samsung was set to bring its infringing smartphone and tablet products to market, under circumstances in which Samsung recognized that Apple's patents were valid and that Samsung could not market its products without taking a license from Apple.  Of course, nothing of the sort has happened in the "real world."  Apple and Samsung have never entered into any licensing agreement with each other over any patents.  Nor do license agreements that Apple and Samsung have reached with other parties compare to the hypothetical license at issue here.  Given those circumstances, Apple's damages expert, Dr. Christopher Vellturo, reached the opinion that prior licenses between Apple and third parties, and between Samsung and third parties, were uniformly uninformative of the license terms that would have resulted from the hypothetical negotiation in this case.  Dr. Chevalier, on the other hand, ignores those market realities, and instead she relies on, and misuses, irrelevant agreements that she does not even profess to be comparable.

Apple's motion to exclude Dr. Chevalier's unprecedented use of clearly non-comparable licenses is firmly rooted in Federal Circuit authority, most notably *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860 (Fed. Cir. 2010) and *Lucent Techs., Inc., v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. 2009), which prohibit recitation of licensing numbers divorced from evidence that such prior licenses are comparable to the hypothetical license at issue.  In response to Apple's motion, Samsung attacks Dr. Vellturo instead of defending Dr. Chevalier, arguing that Dr. Vellturo's damage calculations are "completely fantastical" and that, for that reason, Dr. Chevalier should be allowed "to show what really happens in the marketplace" (Sams. Br. at 1-2), *without regard to whether anything comparable has ever happened in the marketplace.*  That simply is not the law.  Dr. Vellturo's opinions are irrelevant to the admissibility of Dr. Chevalier's opinions under Federal Rule of Evidence 702 and *Daubert*.  Because Samsung

cannot show that Dr. Chevalier's licensing opinions are based on sufficient facts, that her analysis is the product of reliable principles and methods, or that she has reliably applied principles and methods to the actual facts of this case, Dr. Chevalier's licensing opinions are inadmissible under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

**A.      Samsung Does Not Even Attempt to Established that Any of its Proffered Licenses, Apart from the HTC Agreement, Are Comparable**

With the sole exception of the HTC agreement, Samsung spends its entire brief trying to justify its use of non-comparable agreements, rather than attempting to demonstrate the comparability of those agreements.  Samsung breaks its agreements into three groups: (1) the superset of ███ licenses at issue, (2) a "winnowed-down" subset of ███ agreements, and (3) the HTC agreement.  As discussed below, none of these agreements is comparable, and none of Samsung's attempts to justify their use is supported by Dr. Chevalier's report or by the law.

***Dr. Chevalier's superset of* ███ *licenses*.**  As Apple showed in its motion, Dr. Chevalier's universe of ███ licenses, comprised of ████████████████████ ████████████████████ and agreements that have no relation to technology at issue, is not comparable to the hypothetical five-patent license at issue.  Apple Br. at 4-7. Samsung has not offered valid bases for having its expert testify about them.

Samsung instead mischaracterizes Dr. Chevalier's report, and suggests that Dr. Chevalier used these agreements "for one affirmative purpose—to establish industry practices regarding the *form* of licenses." Sams. Br. at 2 (emphasis in original).  That is inaccurate.  Nowhere does Dr. Chevalier say that these specific Apple and ████████████████████ ███████████ or limit her use of these licenses for the purposes of "form" alone.  In fact, she refers to these licenses as "illustrative of the amounts that Apple and Samsung are willing to pay for patent rights" and notes that "I observe that Dr. Vellturo's $1.024 billion royalty for rights to just 6 patents for 20 months ████████████████████ Chev. Rep., ¶ 326-327 (Ex. A-1) (referring to ███████ agreements, including many of the ███ license superset).[1]  Samsung's assertion that Dr. Chevalier uses these agreements for purposes of form

---

[1]  Citations to Exhibits A-1 through A-3, B-1 through B-10, and C-1 through C-6 are citations to documents attached to the Declaration of Casey J. McCracken in Support of Apple's Motion to

1   alone is a *post-hoc* justification intended to save her opinion by changing it for the purpose of

2   opposing Apple's motion.

3          Samsung does not, in any event, have a shred of legal support for its suggestion that

4   *ResQnet* does not apply merely because licenses are to be used to demonstrate the "form" of a

5   royalty.  Indeed, the one case that Samsung cites in support of that proposition, *Trading Techs. v.*

6   *eSpeed*, 2007 WL 704525 at *2 (N.D. Ill 2007), is completely inapt.  There the court merely

7   noted, in the context of ordering the licenses at issue to be *produced in discovery*, that courts

8   apply the concept of comparability broadly.  *Trading Techs.*, 2007 WL 704525 at *2.  The court

9   explicitly stated that the question of *admissibility* in that case would come at a later stage, and

10  went on to distinguish cases striking non-comparable licenses on the basis *that they were not*

11  *discovery cases*.  *Id*. at *2 n.2.  The court never suggested that comparability need not be shown

12  when using licenses to prove form.  Samsung's only other citation is to a section of Chisum on

13  Patents, for the unremarkable proposition that courts give weight to "licensing customs in the

14  industry."  Sams. Br. at 2.  Samsung downplays the very next portion of the sentence, which

15  states that with respect to "actual licenses," courts give weight to those that are on "*comparable*

16  *patents*."  *Id*.  The whole point of *ResQnet* is to prevent parties from drawing spurious

17  conclusions about damages from licenses that have no relation to the subject of the hypothetical

18  negotiation, and that concern clearly applies to Dr. Chevalier's spurious conclusions about form.[2]

19         ***Samsung's "winnowed down" set of ▌▌ licenses***.  Dr. Chevalier did not opine that these

20  ▌ Samsung licenses are comparable; nor did she present any evidence or analysis suggesting

21  that they are comparable.  Indeed, all that she did to "winnow down" the ▌ license superset to

22  this subset of ▌ is apply a wooden three-factor screen: (1) she excluded non-Samsung licenses,

23

24  _____

    Exclude Certain Unreliable and Impermissible Samsung Expert Testimony.  D.I. 806.  Citations
25  to Exhibits B-11 and B-12, and C-7 through C-12 are citations to documents attached to the
    Declaration of Mark D. Selwyn in Support of Apple Inc.'s Reply In Support of Motion to
26  Exclude Certain Unreliable and Impermissible Samsung Exp▌▌

    [2]  Dr. Chevalier relies, for example, on nu▌▌▌▌elevant ▌▌▌▌▌▌▌ in order to s▌▌▌st
27  ▌▌▌▌▌▌▌▌▌▌▌▌ple Br. at 4-5.  The fact that ▌▌▌
    ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ says nothing about the form of
    royalty that Apple would insist upon *from Samsung*, its key competitor.  Samsung also ignores
28  ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

Gibson, Dunn &
Crutcher LLP

1   (2) she excluded all licenses for ███████████████, and (3) she excluded licenses dated ████

2   ██████ Chev. Rep., ¶¶ 326, 328-30 (Ex. A-1).  That is not a comparability analysis.  Dr.

3   Chevalier did not make any comparison between the economic circumstances of these █

4   licenses—many of which indisputably involve licenses ███████████████—and the

5   license Apple and Samsung would enter into at the hypothetical negotiation.  Nor did she look at

6   the patents and determine that they were comparable, or rely on a technical expert to do so.

7   Samsung's argument that "Apple may disagree with her conclusions regarding comparability or

8   the depth of her analysis, but that is a matter for cross examination" (Sams. Br. at 5),

9   conveniently overlooks the fact that Dr. Chevalier's report nowhere provides *any* showing of

10  comparability.

11       Samsung's suggestion that its failure to demonstrate comparability goes solely to weight

12  and not admissibility is flatly contrary to the law.  In *LaserDynamics, Inc., v. Quanta Computer,*

13  *Inc.*, the Federal Circuit held that an expert's royalty opinion was "unreliable under Federal Rule

14  of Evidence 702 and should have been excluded" where it relied on non-comparable licenses.

15  694 F.3d 51, 79-81 (Fed. Cir. 2012).  Even the cases that Samsung cites make it clear that a

16  threshold determination of comparability is required.  For example, in *ActiveVideo Networks v.*

17  *Verizon Communications*, the Federal Circuit explained that a "minimum threshold" of reliability

18  is required before disputes about "the degree of relevance to or accuracy" are sent to the jury.

19  694 F.3d 1312, 1333 (Fed. Cir 2012) (citing *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831

20  (Fed. Cir. 2010).  Although the *ActiveVideo Networks* court affirmed the denial of a motion to

21  exclude, it never found or suggested that a threshold showing of comparability was not required.

22  Indeed, this Court in *TV Interactive* made that exact observation when it excluded the opinion of

23  Sony's expert who, just like Dr. Chevalier, was not willing to opine that his proffered licenses

24  were comparable.  *See TV Interactive v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal.

25  2013) (citing *LaserDynamics* and *ActiveVideo*).[3]  Samsung has not cited a single case where a

---

[3] Similarly, Samsung's other cases are entirely consistent with *LaserDynamics* and *TV*
*Interactive* because they involve situations where the proffering party—unlike Samsung here—
*actually made a threshold showing of comparability.  See, e.g.*, *Interwoven, Inc. v. Vertical*
*Computer Sys.*, 2013 WL 3786633, at *11 (N.D. Cal. 2013) (finding that "these license
agreements were entered during the same time period and dealt with the technology using the

court has ruled that an analysis of patent licenses can be admitted without a predicate showing of comparability.

*The HTC Agreement*.  As Apple explained in its motion, the HTC agreement is not comparable because it is a broad cross license that does not completely or clearly quantify the value Apple received ███████████████████████████████████████████████████.
This Court found the HTC agreement inadmissible in the 1846 case for these same reasons:

> The Court concludes that the HTC Agreement is insufficiently related to the parties' hypothetical negotiation to give it a role in the retrial. ***As an initial matter, the HTC Agreement does not fully or clearly quantify the benefit Apple received.*** It includes a broad cross license through which Apple receives not only royalty payments, but also a fully paid-up license to practice certain HTC patents. Neither the HTC Agreement itself nor the parties' experts attempt to place a dollar amount on the value of the license to Apple. ***Even for the quantified benefit Apple received for the license to HTC, the agreement does not specify how much of that benefit, if any, is due to the utility patents-in-suit.***

Case No. 11-01846, D.I. 2667 at 7.  These same considerations apply here.  In sum, none of Samsung's agreements are comparable, and none of its attempts to justify its use of them are recognized under the law.

**B.    Samsung Has Not Rebutted Apple's Showing That Dr. Chevalier Had No Factual Basis for Extracting Royalty Rates from Her Proffered Licenses**

Apple showed in its motion that Dr. Chevalier has no factual basis for extracting royalty rates from the HTC agreement, from the Apple-Samsung settlement discussion, and from her██ Samsung licenses.  Samsung has utterly failed to address any of these points in its opposition.

*The HTC Agreement*.  Apple demonstrated that Dr. Chevalier performed a number of arbitrary calculations on the HTC agreement in order to extract a royalty rate from it.  Samsung has not denied, or even directly addressed, any of these fatal flaws.  Samsung's *only* argument in response is that Apple cannot attack these defects in a motion to exclude, but only through cross-examination.  Samsung relies primarily on Judge Grewal's decision in *HTC Corp. v. Tech

---

patents in suit"); *MultiMedia Patent Trust v. Apple, Inc.*, 2012 WL 5873711, at *7 (S.D. Cal. 2012) (explaining that "the testimony of a damages expert who relies on non-comparable licenses in reaching his royalty rate should be excluded" but denying the motion where the plaintiff's expert showed that the agreements were sufficiently comparable); *Ricoh v. Quanta*, 2010 WL 1233326 at *10 (W.D. Wis. 2010) (denying post-trial motion where the expert "testified in detail why he believed the ten licensing agreements on which he relied were comparable...").

1    *Props., Ltd.*, in support of that argument.  2013 WL 4787509, at *2 (N.D. Cal. 2013).  That case,

2    if anything, supports Apple's position.  The Court explained that agreements that are broader

3    than one for the patents-in-suit can be used "so long as this broader scope is accounted for."  *Id.*

4    at *2.  But Dr. Chevalier nowhere accounts for the differences in scope between a portfolio

5    settlement and damages on five valid and infringed patents.  Instead, she has applied arbitrary

6    weights and relied on assumptions that have no basis in fact or in her own expertise.  Apple Br.

7    at 8-9.  When accounting for these differences—as Samsung now admits Dr. Chevalier was

8    required to—she is, of course, *bound by the requirements of Rule 70*2.  She cannot simply make

9    numbers up.  *See Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C 11-05973 PSG, 2013

10   WL 4538210, at *4 (N.D. Cal. Aug. 22, 2013) (excluding expert's "arbitrary" damages

11   assumptions under *Uniloc*); s*ee also ResQNet.com, Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 695

12   (S.D.N.Y. 2011) (rejecting expert's "straight up division method" in which he "simply divided

13   [license agreement] rates by the number of patents that the licenses covered" because it "is

14   supported by nothing other than its simplicity").

15        ***The Apple-Samsung Settlement Discussions***.  As Apple explained in its motion, the

16   Samsung and Apple settlement negotiations should be excluded under Rule 408 for purposes of

17   determining liability or damages.  Samsung does not deny that these are indeed Rule 408

18   settlement discussions, but, incredibly, argues that Dr. Chevalier may still rely on them because

19   "the offer is merely a data point used in Dr. Chevalier's analysis."  Sams. Br. at 11.  Dr.

20   Chevalier uses the licensing discussions to determine a royalty rate of ███████ per patent,

21   per smartphone.  Chevalier Rep., ¶ 320 (Ex. A-1).  She also uses the discussion in analyzing the

22   HTC agreement in order to arrive at a royalty rate in the range of ███████ per patent, per

23   smartphone.  *Id.*, ¶¶ 313, 317.  Dr. Chevalier thus uses the substance of the negotiations to come

24   up with numerical royalty figures for damages, and that is exactly what Rule 408 prevents.  The

25   fact that Dr. Chevalier also considered other evidence to determine her damages assessment does

26   not make the portion of her testimony relying on them admissible.[4]

27   

28   ---

[4] Even if Dr. Chevalier could properly rely on these Rule 408 discussions, her methodology for determining a royalty rate based on them is, as Apple explained in its motion, arbitrary and unsound for many of the same reasons as her analysis of the HTC agreement.  Apple Br. at 10.

APPLE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

1    ***Dr. Chevalier's*** ███ ***Samsung Licenses***.  As Apple explained in its motion, Dr.

2    Chevalier's analysis of these agreements contains many of the same inherent flaws as her

3    analysis of the HTC agreement and Apple-Samsung settlement discussions.  Dr. Chevalier

4    ignores the specific technology in any patent in favor of slicing and dicing an ████████

5    ███████████████████ n order to present meaningless median payments, interquartile ranges,

6    maximum payments, and 95th percentile amounts (*see* Chevalier Rep., ¶¶ 329-31 (Ex. A-1)), as

7    if the experience of Samsung in negotiating non-comparable licenses somehow cabins the value

8    of the five specific patents at issue in this case.  It does not.  For the same reasons already

9    discussed, her analysis is unreliable and inadmissible.

10   PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN
     THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
11   RELATED TO SAMSUNG PATENTS, D.I. 1145

12

13

14

15

16

17

18

19

20

21

22

23   ────────────────────────────────────────────

24   In fact, he ████                                                            Dr.

25   ███████ *Id.*

     PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE
26   STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
     RELATED TO SAMSUNG PATENTS, D.I. 1145

27

28

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

Gibson, Dunn &
Crutcher LLP

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

Gibson, Dunn &
Crutcher LLP

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN
THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
RELATED TO SAMSUNG PATENTS, D.I. 1145

**IV.     Dr. Rinard Should be Precluded From Creating Unreliable and Misleading
Demonstrations Concerning Certain Purported Prior Art Systems**

The Court should exclude Samsung's '959 Patent expert Dr. Martin Rinard from

testifying about or based on systems he built in 2013 to demonstrate how the prior art "might

have worked."  That testimony is not based on "evidence" but conjecture and will mislead the

jury into believing that Dr. Rinard's creations are prior art when they clearly are not.

The law does not support Samsung's attempt to use a 2013-created system to prove

invalidity.  As in its summary judgment opposition, Samsung twists the holding of *Finjan, Inc. v.*

*Secure Computing Corp.,* 626 F.3d 1197 (Fed Cir. 2010), a case about infringement, to create a

new standard that a computer readable medium claim can be anticipated by prior knowledge or

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE
STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
RELATED TO SAMSUNG PATENTS, D.I. 1145

use of software that was merely capable of being cobbled together into the claimed arrangement. As shown in Apple's Reply in support of its Motion for Partial Summary judgment, *Finjan* does not support that proposition and is not applicable here.[13]  Further, Samsung's reliance on *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1329 (Fed. Cir. 2005) as alleged authority for using a litigation-built demonstration system as proof of prior art is misplaced.  The demonstration in *Eolas* was of actual prior art—"an archived file"—not something built during the litigation to resemble something that might have been built during the prior art period.  *Id.*[14] Rather than supporting Samsung, all of Samsung's cases prove Apple's point; it is only appropriate to demonstrate to the jury how an actual prior art system worked—not what could have been built.

Perhaps recognizing its error, Samsung now claims that its expert relies on "distributions" of alleged WAIS and AppleSearch systems and that the "demonstration systems" Dr. Rinard created will only be used to "verify" the functionality in the distributed software. Sams. Br. at 22.  However, as Apple details in its reply for its Motion for Partial Summary Judgment, Samsung's expert cannot simply rely on the AppleSearch software or WAIS "distributions" as he found them in his effort to prove invalidity of the claim; instead, he requires a specific configuration—one Samsung has no evidence ever existed.  Reply at 9-10.  Contrary to Samsung's representations to the Court, there is no doubt that Samsung's expert relies on the demonstrations systems he built, not just to verify, but to *establish* the alleged invalidity of the claims.  Throughout Samsung's Exhibits 1 and 9, allegedly proving invalidity in light of the specially-built WAIS and AppleSearch system, Samsung's expert presents screenshots of these litigation-built systems alongside other "evidence" and does not make any effort to distinguish between proof and alleged "verification."  *See* Rinard Rep. Ex. 1 at 2, 13, 16, 18-21, 35-42, 45,

---

[13] *See* Reply in Support of Apple's Motion for Partial Summary Judgment at 10-11 ("Reply").
[14] Similarly, in another *Finjan* case the demonstration was of how the system actually "operated and functioned at the relevant time," not how it could have operated, as Samsung argues now. *Finjan, Inc. v. Symantec Corp.*, 10-CV-593 (GMS), 2013 WL 5302560 at *17 (D. Del. Sept. 19, 2013).  *See also Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 847-48 (E.D. Tex 2012) (fact witness with firsthand knowledge of the prior art (not an expert) demonstrated actual software that existed in the prior art and then testified about an accompanying manual).

50-55, 61-62, 68, 72-75, 89, 101-104; Ex. 9 at 1, 22, 39-40, 49, 57, 60, and 83-84 (Declaration of Jennifer Rho ISO Apple's Mot. for Partial Summary Judgment, D.I. 803-10, Ex. D-1).  Even were the demonstration systems created by Dr. Rinard permissible merely as "verification," these exhibits conclusively show that Samsung clearly intends to blur lines between "evidence" and any such "verification" when presenting Dr. Rinard's opinions, thereby confusing the issues for the jury.

For all these reasons, as well as those set forth in Apple's opening brief, the Court should exclude Samsung's expert from testifying based on or about the demonstration systems he built for this litigation.

## V.   Samsung's Experts Should be Precluded From Testifying About the Opinions of Apple's Experts Expressed in Past Cases

Samsung wrongly argues that Apple is seeking to "hid[e]" alleged inconsistencies between its damages methodologies in this case and prior cases, including Case No. 11-cv-01846 (the "1846 case").  In fact, there are no inconsistencies.  The mere fact that different damages approaches were taken in different cases involving different issues is not an "inconsistency" and is not relevant to any issue in this case.  Expert testimony about these prior cases should be excluded because rebutting a claim of inconsistency would require substantial testimony about the prior analysis and the prior case, including the likely need to call expert witnesses from the 1846 case to testify as fact witnesses in this case.  Allowing Dr. Chevalier to opine on supposed inconsistencies in the testimony of Apple's experts in different cases would inevitably result in a number of mini-trials to compare different opinions from different experts regarding different accused products and different patents.  These collateral issues would be confusing and unhelpful to the jury, which did not hear the 1846 case, and should not be permitted.  *Cf. Wilson v. Maricopa Cnty.*, No. CV-04-2873 PHX-DGC, 2007 WL 686726, at *13 (D. Ariz. Mar. 2, 2007) (excluding evidence of prior lawsuits because "[t]he case would devolve into a series of mini-trials concerning the relevancy and outcome of these other cases[.]").

## VI.   Conclusion

For the foregoing reasons, Apple respectfully requests the Court grant this Motion.

Gibson, Dunn & Crutcher LLP

1

2        Dated:  November 14, 2013            Respectfully Submitted,

3

4                                            By:   /s/ H. Mark Lyon

5                                                Attorneys for Plaintiff
                                                 APPLE, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document, and all supporting documents and exhibits, was filed electronically in compliance with Civil Local Rule 5-1, and will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have consented to electronic service in accordance with the Northern District of California Local Rules via the Court's ECF system.

Date     November 14, 2013                    /s/ Mark Lyon
                                              Mark Lyon