# EXHIBIT ZZ
# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK (PSG)<br><br>**INITIAL EXPERT REPORT OF DR. TODD C. MOWRY REGARDING INFRINGEMENT OF U.S. PATENT NO. 5,946,647**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**<br><br>**GOOGLE'S HIGHLY CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY— SOURCE CODE** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br>Counterclaim-Defendant. | |

INITIAL EXPERT REPORT OF DR.TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY
SOURCE CODE

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

### 3. Infringement of Claim 4 of the '647 Patent

165.    Claim 4 recites, "The system recited in claim 1, wherein the analyzer server includes grammars and a parser for detecting structures in the data."

166.    It is my opinion that the Accused Browser Products infringe claim 4. For the above reasons, the Accused Browser Products meet the requirement of a "system recited in Claim 1." In addition, these products' analyzer server includes grammars and a parser for detecting structures in the data. In the Accused Froyo, Gingerbread, and Ice Cream Sandwich Browser Products, for example ███████████████████████████████████████ which are used to detect structures in webpages, are parsers that are specific to the type of grammar that they are searching for.    In the Accused Jelly Bean Browser Products, for example, th ███████ ████████████████████████████████████████████████ ████████████████████████████████ which are used to detect structures in webpages) are parsers that are specific to the type of grammar that they are searching for.

### 4. Infringement of Claim 6 of the '647 Patent

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)       62

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

7.   **Infringement of Claim 4 of the '647 Patent**

216.        Claim 4 recites, "The system recited in claim 1, wherein the analyzer server includes grammars and a parser for detecting structures in the data."

217.        It is my opinion that the Accused Messaging Products infringe claim 4.  For the above reasons, the Accused Messaging Products meet the requirement of a "system recited in Claim 1."  In addition, these products' analyzer server includes grammars and a parser for detecting structures in the data.  In the Accused Messaging Products, for example, th ███████ lass described above uses the ████████████ classes.  The ██████████████████ arses its first argument (a grammar in the form of a regular expression) into a form that th ████████ can then use to apply that grammar to the data that is input to the analyzer server.  ███████████████████ ███████████████ SAMNDCA630-SC00070450-58; *see also* http://developer.android.com/reference/java/util/regex/Pattern.html, http://developer.android.com/reference/java/util/regex/Matcher.html.).  The specific grammars that are used in the Accused Messaging Products are passed as inputs in the instantiation of the

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1 ███████████████████████████████████████████ within the ███████

2 ██████████████████████████████████ In addition, the Accused Messaging Products also

3 invoke the ██████████████████████████████ mentioned above) via the

4 ████████████████████████████

5

6        8.       **Infringement of Claim 6 of the '647 Patent**

7

[remainder of page redacted]

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

## VI.    USE BY APPLE OF THE '647 PATENTED TECHNOLOGY

298.    I am aware that the ITC has already found that Apple practices at least claim 1 of the '647 Patent.  Specifically, during the ITC investigation *In the matter of Certain Personal Data and Mobile Communications Devices and Related Software*, Investigation No. 337-TA-710 the ITC found that the Apple iPhone 3GS running iOS version 3.1.3 met the technical prong of the domestic industry requirement (*See* [Initial Determination at 157-164).  I understand that this was affirmed by the Commission in the Final Determination (*See* [Commission Opinion at 6).

299.    For the reasons set forth in my expert report submitted in that investigation it is my opinion that the Apple iPhone 3GS  running  iOS 3.1.3 practices at least claim 1 of '647 Patent .  The relevant portions of that report may be found at APLNDC630-0000069204-69324; APLNDC630-0000069325-69460; APLNDC630-0000169870-169907.

300.    Based on my review of certain iOS code and my discussions with Apple engineers, it is my understanding that Apple devices running iOS 3.0 through 6.0 practice the asserted claims of

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the '647 Patent.  These products include the iPhone 3Gs, iPhone 4, iPhone 4S, iPhone 5, iPad, iPad 2, iPad Mini, and iPod Touch.  While there has been some refactoring of some of the practicing code, these devices practice the asserted claims in a manner substantially similar to the iPhone 3GS running iOS 3.1.3, which was found to practice the '647 Patent in the above-referenced ITC action against HTC.

301.     For example, the Mail application in all of these Apple products includes the claimed inventions.  Such functionality is particularly attractive on generally smaller, mobile devices, such as Apple's or Samsung's smartphones and tablets, because seamless integration of a functionality that provides several benefits in one (e.g., the ability to dial the number or store it in contacts without having to cut and paste or write numbers down) is even more attractive than on desktop or laptop computers.  I understand that this was one of the main drivers in Apple's implementation of the full features of claims 1 and 8 of the '647 Patent in Apple's iOS mobile devices.  Apple generally refers to the functionality covered by the asserted claims as "data detectors," and that term has also been used in numerous reviews and discussions of Apple products to describe this functionality.

302.     My opinion that the claimed inventions are implemented in the abovementioned Apple products is based upon the following.  As part of my work in the ITC Investigation No. 337-TA-710, I personally reviewed the Apple source code for the "data detectors" functionality (i.e., the claimed inventions) that runs in the Mail and Mobile Safari applications on the iPhone 3GS and the iPhone 4.  I personally own an iPhone 4, an iPad, an iPad2 (as well as a MacBook Air, a MacBook Pro, and a Mac Pro).  Not only have I extensively used and examined the Apple products that I own, but I have also personally used and examined all of the above-mentioned Apple products and have confirmed that all of them provide the functionality of the claimed inventions.

303.      In addition, Apple's user manuals that describe the claimed functionality.  *See, e.g.,*

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

iPad User Guide iOS 5.0, p. 43 ("iPad detects web links, phone numbers, email addresses, dates, and other types of information that you can use to open a webpage, create a preaddressed email message, create or add information to a contact, or perform some other useful action.  Detected data appears as blue underlined text.  Tap the data to use its default action or touch and hold to see other actions. For example, for an address, you can display the location in Maps, or add it to Contacts."); iPhone User Guide iOS 4.2 and 4.3, p. 78 ("iPhone detects web links, phone numbers, email addresses, and other types of information that you can use to open a webpage, make a phone call, create a preaddressed email message, create or add information to a contact, or perform some other useful action. Detected data appears as blue underlined text. Tap the data to use its default action, or touch and hold it to see other actions."); iPod touch User Guide, p. 97 ("iPod touch detects web links, phone numbers, email addresses, and other types of information that you can use to open a webpage, create a preaddressed email message, create or add information to a contact, or perform some other useful action. Detected data appears as blue underlined text. Tap the data to use its default action, or touch and hold it to see other actions.").

304.    From my discussions with Apple engineers, I also understand that the data detector functionality in iOS 3.0 originated from an existing functionality in Mac OS X, but that much of the functionality had to be redeveloped for iOS because of the processor and memory constraints of mobile devices that are not such a great concern in desktop computer systems.

305.    It is thus my opinion that Apple iOS devices incorporate features claimed in the '647 Patent.  For example, Apple iOS devices have an analyzer server for detecting structures in the data and for linking actions to the detected structures and a user interface enabling the selection of a detected structure and a linked action.  Specifically, the those devices detect phone numbers and email addresses in web pages and provides actions linked to detected phone numbers or email

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

addresses.

## VI.     CONCLUSION

306.       For the reasons above I conclude that the Samsung Accused Products meet each limitation of claims 1, 4, 6, 8, and 9 of the '647 Patent and thus infringe those claims.

307.       I understand that there is still additional discovery taking place, and that there are current outstanding discovery issues relating to Samsung's and third-party document production.  I understand there are also still depositions remaining to be completed.  I therefore reserve the right to supplement my report should additional information be produced that is relevant to my analysis.

308.       My opinions are subject to change based on additional opinions that Samsung's experts may present and information I may receive in the future or additional work I may perform. With this in mind, based on the analysis I have conducted and for the reasons set forth below, I have preliminarily reached the conclusions and opinions in this report.

309.       In connection with my anticipated testimony in this Action, I may use as exhibits various documents produced in this Action that refer or relate to the matters discussed in this report. I have not yet selected the particular exhibits that might be used.  In addition, I may create or assist in the creation of certain demonstrative exhibits to assist me in testifying.  Again, those exhibits have not yet been created.

Gibson, Dunn &
Crutcher LLP

1       I declare under penalty of perjury that the foregoing is true and correct.

2

3    Dated:   August 12, 2013

4                         Todd C. Mowry

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

# EXHIBIT BBB

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

| | |
|---|---|
| **From:** | Tamara Whiteside ▮ |
| **Subject:** | Fwd: Interesting Nielsen iphone/Samsung Ad effectiveness research |
| **To:** | Nick Bartle ▮, Sissie Twiggs ▮ Kelly Altick ▮, Stephanie Vidal ▮ |
| **Attachment:** | Brand Effect - iPhone 4S vs Samsung Long Line.pptx |
| **Date:** | 2012-03-02T15:01:48-08:00 |

hi ad team,

thought you'd like to see this. i let joz know i've moved on to a new role.

cheers,
tamara

Begin forwarded message:

> From: Greg Joswiak ▮
> Subject: Fwd: Interesting Nielsen iphone/Samsung Ad effectiveness research
> Date: March 2, 2012 2:49:18 PM PST
> To: Tamara Whiteside ▮
>
> fyi - joz
>
> Begin forwarded message:
>
>> From: John Brown ▮
>> Subject: Interesting Nielsen iphone/Samsung Ad effectiveness research
>> Date: March 2, 2012 2:45:01 PM PST
>> To: Greg Joswiak ▮, Stan Ng ▮
>> Cc: Arthur Rangel ▮
>>
>> Joz,
>> I was in a meeting yesterday with Nielsen and they shared with me some data that they recently pulled together on the effectiveness of the Samsung Long Line Ad campaign. The long and short of the data is that the Samsung campaigns, as bad as they look, have been effective in developing brand awareness since it has been launched.
>>
>> Note: The lines on the chart measure the brand recall the bars represent spend.
>>
>> Please let me know if you have any questions.
>>
>> Take care
>> John
>>
>
>>

Highly Confidential - Attorneys' Eyes Only

>> "Life is not measured by the number of breaths we take, but by the moments that take our breath away."
>> – George Carlin, American comedian
>>
>

---

hi ad team,

thought you'd like to see this. i let joz know i've moved on to a new role.

cheers,

tamara

Begin forwarded message:

From: Greg Joswiak ███████████
Subject: Fwd: Interesting Nielsen iphone/Samsung Ad effectiveness research
Date: March 2, 2012 2:49:18 PM PST
To: Tamara Whiteside ███████████

fyi - joz

Begin forwarded message:
From: John Brown ███████████
Subject: Interesting Nielsen iphone/Samsung Ad effectiveness research
Date: March 2, 2012 2:45:01 PM PST
To: Greg Joswiak ███████████, Stan Ng ███████████
Cc: Arthur Rangel ███████████

Joz,
I was in a meeting yesterday with Nielsen and they shared with me some data that they recently pulled together on the effectiveness of the Samsung Long Line Ad campaign. The long and short of the data is that the Samsung campaigns, as bad as they look, have been effective in developing brand awareness since it has been launched.

Note: The lines on the chart measure the brand recall the bars represent spend.

Please let me know if you have any questions.

Take care
John

"Life is not measured by the number of breaths we take,

APLNDC630-0001591038

but by the moments that take our breath away."
— George Carlin, American comedian

Highly Confidential – Attorneys' Eyes Only

APLNDC630-0001591039

# EXHIBIT CCC

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Highly Confidential – Outside Attorneys' Eyes Only

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5    APPLE INC., a California

     corporation,

6

                  Plaintiff,

7

     vs.                          NO. 12-CV-00630-LHK

8

     SAMSUNG ELECTRONICS CO., LTD.,

9    a Korean corporation; SAMSUNG

     ELECTRONICS AMERICA, INC., a

10   New York corporation; SAMSUNG

     TELECOMMUNICATIONS AMERICA, LLC,

11   a Delaware limited liability

     company,

12

                  Defendants.

13   _____/

14

15   **   HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY   **

16

17        GIBSON DUNN & CRUTCHER, LLP

18            2-4 Temple Avenue

19        Videotaped Deposition of THOMAS DENIAU

20              London, UK

21            July 12, 2013

22             9:00 A.M.

23

24   Reported by: Ailsa Williams

25   Job No: 63261

Highly Confidential - Outside Attorneys' Eyes Only

Page 2

1            A P P E A R A N C E S:

2    ON BEHALF OF PLAINTIFF AND

3    COUNTERCLAIM-DEFENDANT APPLE INC:

4            ROBERT VINCENT

5            GIBSON DUNN & CRUTCHER

6            2100 McKinney Avenue

7            Dallas, TX 75201

8

9

10

11   ON BEHALF OF DEFENDANT SAMSUNG ELECTRONICS CO., LTD.,

12   SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG

13   TELECOMMUNICATIONS AMERICA, LLC:

14            ZACHARIAH SUMMERS

15            QUINN EMANUEL URQUHART & SULLIVAN

16            51 Madison Avenue

17            New York, NY 10010

18

19

20

21   ALSO PRESENT:

22            TESSA MARKOVITCH (Interpreter)

23            FLORENCE MITCHELL (Check Interpreter)

24            VIDEOGRAPHER: SIMON ADDINSELL

25

Highly Confidential - Outside Attorneys' Eyes Only

Page 3

1                           I N D E X

2    THOMAS DENIAU (Sworn(

3    DIRECT EXAMINATION BY MR. SUMMERS        Pg. 6

4    CROSS-EXAMINATION BY MR. VINCENT        Pg. 104

5    RE-DIRECT EXAMINATION BY MR. SUMMERS   Pg. 105

6

7                        INDEX OF EXHIBITS

8    Deniau Exhibit 1  Apple Inc's Second Supplemental . .30

9              Objections and Responses

10

11   Deniau Exhibit 2  Expert Report of Dr. Todd Mowry . .87

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Outside Attorneys' Eyes Only

Page 67

| | |
|---|---|
| 1 | the position of the phone number. | 12:19:10 |
| 2 | A. Yes. | 12:19:11 |
| 3 | Q. So how does it tell Safari -- what form | 12:19:12 |
| 4 | does the position take? | 12:19:15 |
| 5 | A. Just one number for the start of the | 12:19:17 |
| 6 | phone number and one number for its length, or maybe | 12:19:23 |
| 7 | it is a start and end, or just a couple of numbers to | 12:19:29 |
| 8 | identify the range. | 12:19:34 |
| 9 | | 12:19:51 |
| 10 | | 12:19:54 |
| 11 | | 12:20:00 |
| 12 | | 12:20:03 |
| 13 | Q. Does Mobile Safari and iOS 5 not use | 12:20:30 |
| 14 | data detectors to find street addresses? | 12:20:33 |
| 15 | A. It doesn't. It just asks for phone | 12:20:38 |
| 16 | numbers. | 12:20:42 |
| 17 | Q. Do you know why it doesn't find street | 12:20:43 |
| 18 | addresses? | 12:20:45 |
| 19 | A. For performance reasons. The loading of | 12:20:46 |
| 20 | the web pages will be slower if we have to detect | 12:20:55 |
| 21 | addresses in them. | 12:20:59 |
| 22 | Q. Were you a part of any testing that | 12:21:06 |
| 23 | determined what the performance hit that you get when | 12:21:08 |
| 24 | you try to find addresses in web pages is? | 12:21:10 |
| 25 | A. That was done before I joined Apple. If | 12:21:13 |

Highly Confidential - Outside Attorneys' Eyes Only

Page 68

| | | |
|---|---|---|
| 1 | I remember correctly, it was like a hit of 2 or 3 | 12:21:21 |
| 2 | percent of the loading time of the web page and it was | 12:21:24 |
| 3 | unacceptable for the Safari team. | 12:21:31 |
| 4 | Q.  When you say 2 or 3 percent, are you | 12:21:44 |
| 5 | talking about the time to load a web page? | 12:21:45 |
| 6 | A.  Yes.  There might be other reasons too | 12:21:48 |
| 7 | why we don't detect addresses.  This is just one of | 12:21:50 |
| 8 | them. | 12:21:54 |
| 9 | Q.  Sure.  What about email addresses?  Is | 12:21:56 |
| 10 | there a reason that Safari does not use data detectors | 12:22:05 |
| 11 | to find email addresses? | 12:22:09 |
| 12 | A.  Email addresses are usually already | 12:22:12 |
| 13 | marked up as such in web pages.  When you send an | 12:22:15 |
| 14 | email you don't mark-up things but on a web page you | 12:22:21 |
| 15 | usually already have links for web pages and e-mails. | 12:22:24 |
| 16 | Q.  And that uses the mail to: scheme that | 12:22:30 |
| 17 | we were talking about earlier, is that correct? | 12:22:33 |
| 18 | MR. VINCENT:  Objection, calls for | 12:22:37 |
| 19 | speculation. | 12:22:38 |
| 20 | A.  The web page also when you want to link | 12:22:39 |
| 21 | to an email is probably going to use mail to: yes. | 12:22:42 |
| 22 | Q.  So when ⬛⬛⬛⬛⬛ returns the position | 12:23:05 |
| 23 | of the phone numbers, what code -- scratch that. | 12:23:10 |
| 24 | So what happens when a user long presses on | 12:23:22 |
| 25 | a phone number that has been detected in a web page on | 12:23:25 |

Highly Confidential - Outside Attorneys' Eyes Only

Page 101

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  Going off the record at | 14:17:39 |
| 2 | 2:17. | 14:17:40 |
| 3 | (A short break.) | 14:17:40 |
| 4 | THE VIDEOGRAPHER:  On the record, 2:25. | 14:25:48 |
| 5 | MR. SUMMERS : | 14:25:53 |
| 6 | | 14:25:54 |
| 7 | | 14:25:58 |
| 8 | | 14:26:05 |
| 9 | | 14:26:11 |
| 10 | | 14:26:18 |
| 11 | | 14:26:21 |
| 12 | | 14:26:22 |
| 13 | Q.   I think you said that you understood | 14:26:23 |
| 14 | there had previously been a study that had shown that | 14:26:30 |
| 15 | there was about a 2 to 3 percent hit if Safari tried | 14:26:33 |
| 16 | to detect more than phone numbers.  Is that correct? | 14:26:38 |
| 17 | A.   It is. | 14:26:41 |
| 18 | Q.   Do you have an estimate of about how | 14:26:41 |
| 19 | much time we are talking about when we talk about 2 to | 14:26:44 |
| 20 | 3 percent of that load time? | 14:26:49 |
| 21 | MR. VINCENT:  Objection to the extent it | 14:26:53 |
| 22 | calls for speculation. | 14:26:54 |
| 23 | A.   I don't understand.  If it is 2 or 3 | 14:26:56 |
| 24 | percent of the time, what do you want me to -- | 14:26:59 |
| 25 | Q.   I guess more specifically what I am | 14:27:04 |

# EXHIBIT DDD

## REDACTED
## DOCUMENT SOUGHT
## TO BE SEALED



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734025



# iPhone Buyer Survey

The information in this and related documents is strictly
Apple Confidential • Internal Use Only • Need to Know Basis

Apple Market Research & Analysis
FY10 - Q4

Highly Confidential - Attorneys' Eyes Only

APLNDC0002734026

# Why this report?

Purpose: Apple Market Research conducts monthly surveys of iPhone buyers. This report summarizes the results of the surveys fielded during FY10-Q4. Where appropriate and helpful, trended data for the previous quarters is provided.

The purpose of this study is to collect data on iPhone buyers in nine countries: US, Canada, UK, France, Germany, Italy, Spain, Japan, and Australia.

Key areas include:

- Acquisition
- Buy mix
- Purchase decision making
- Satisfaction
- Use
- Demographics

3

Highly Confidential - Attorneys' Eyes Only

# Understanding iPhone buyers

| **Collect** | **Measure** | **Profile** | **Examine** |
|---|---|---|---|
| **Data on recent iPhone buyers** | **Acquisition Buy mix Purchase Use Satisfaction Demographics** | **Buyers** | **Trends** |

**Method**: Customers who acquired an iPhone from June 24 thru FY10-Q4 were randomly selected from the Apple Customer Database and invited to participate in a short Web survey. Apple Market Research developed the questionnaire and used Advanis, an independent market research firm, to field the survey and tabulate results. Respondents were screened to exclude those under 14 years old, which is standard market research industry practice. Results are weighted by iPhone model, configuration, and channel purchased (Apple Retail Store, Apple Online Store, other retailer).

**Statistical testing** was conducted at a 95% confidence interval between quarterly data. If data reported for the current quarter is higher than the corresponding value for the previous quarter, it is indicated with an upward arrow next to the current quarter data. Similarly, if data reported for the previous quarter is higher than the corresponding value for the current quarter, it is indicated with a downward arrow next to the current quarter data. To simplify reporting, results of statistical testing is not shown for values under 5%.

**iPhone models included in this study**: iPhone 3GS and iPhone 4.

**Notes**: Data where the base of respondents is less than 50 are not reported and are noted "small base." "Top-2" and "Bottom-2" refer to the total of the top-2 or bottom-2 percentages in a scale. These may be off a percentage point or two due to rounding. Unless iPhone models are indicated, data represents both iPhone 3GS and 4.

4

Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734029



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734031



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734032



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734033



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734034

Web capabilities, ease of use, and apps are key features in the decision to purchase an iPhone

Highly Confidential - Attorneys' Eyes Only

APLNDC0002734035



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734037

# *Ease of use* is also high in importance

C6_B. How important were each of the following features or attributes in your decision to purchase the iPhone [3GS/4]? (Base: iPhone buyers)

Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734040



APLNDC0002734041



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734042



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734045



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734046



**On a top-2 box basis,** *Attractive appearance and design* **is higher in importance to iPhone 4 buyers than 3GS buyers**

C6_N. How important were each of the following features or attributes in your decision to purchase the iPhone (3GS/4)? (Base: iPhone buyers)
Question added FY10-Q4

23

Highly Confidential - Attorneys' Eyes Only

APLNDC0002734047



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734048



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734049



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734055



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734059



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734060



Highly Confidential - Attorneys' Eyes Only



APLNDC0002734062



APLNDC0002734063



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734064



<mark>Highly</mark> Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734066



APLNDC0002734067



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734068



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734070



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734073



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



APLNDC0002734077



APLNDC0002734078



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734080



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734083



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734085



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734086



APLNDC0002734087



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734089



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



APLNDC0002734092



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734093



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734095



APLNDC0002734096



APLNDC0002734097



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734099



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734101



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734105



Highly Confidential - Attorneys' Eyes Only



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734107



Highly Confidential - Attorneys' Eyes Only

APLNDC0002734108



Highly Confidential - Attorneys' Eyes Only

# EXHIBIT XX
# REDACTED VERSION
# OF DOCUMENT SOUGHT
# TO BE SEALED

Page 1

1            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
2                   SAN JOSE DIVISION
3                   - - - - -
4    APPLE, INC., a            )
     California corporation,)
5                             )
             Plaintiff,       )
6                             )
             vs.              ) Civil Action
7                             ) No. 12-CV-00630-LHK
     SAMSUNG ELECTRONICS      )
8    CO., LTD., a Korean      )
     corporation, et al.,     )
9                             )
             Defendants.      )
10

                    - - - - -
11

12       VIDEOTAPED DEPOSITION OF TODD CARL MOWRY

                    - - - - -
13

14                 September 19, 2013

                    - - - - -
15

16                 HIGHLY CONFIDENTIAL

                    - - - - -
17
18
19
20
21
22
23
24   Reported By: Ronda Weinell
25   Job No: 65971

Highly Confidential

Page 108

1    Q.   So for the user interface in          11:57
2  Figure 6, you said there's more to it than just  11:58
3  what you see.  What are you referring to there   11:58
4  when you say there's more to it than just what   11:58
5  you see?                                         11:58
6    A.   Actually, I was not referring to       11:58
7  Figure 6 as a user interface.  I was referring   11:58
8  to the claim element in Figure 1, which talks    11:58
9  about a user interface, which is a program       11:58
10 routine.  And so that's the user interface, and  11:58
11 it has to have certain functionality.            11:58
12       What we see in Figure 6 is simply a       11:58
13 screen shot that shows the result of             11:58
14 highlighting detected structures.  So Figure 6   11:58
15 is not inconsistent with an implementation of a  11:58
16 system that satisfies Claim 1.  But the user     11:58
17 interface, for example, you have to be able to   11:58
18 press or somehow indicate what you're            11:58
19 selecting, and a screen shot doesn't show us     11:58
20 how that works or that it does work.             11:58
21   Q.   Why don't we move back to Claim 1       11:59
22 then away from Figure 6, and let's go back and   11:59
23 look at the user interface limitation again.     11:59
24 For that limitation you agree that multiple      11:59
25 structures are first detected after which a      11:59

Highly Confidential

Page 109

| | | |
|---|---|---|
| 1 | user can choose any one of which to perform an | 11:59 |
| 2 | operation via the user interface; right? | 11:59 |
| 3 | MR. VINCENT:  Objection. | 11:59 |
| 4 | Vague, compound. | 11:59 |
| 5 | A.    The claim language does not include | 11:59 |
| 6 | that type of ordering.  It says the user | 11:59 |
| 7 | interface enables the selection of a detected | 11:59 |
| 8 | structure.  It does not say -- you said | 11:59 |
| 9 | multiple detected structures -- multiple | 11:59 |
| 10 | structures are detected ahead of time.  The | 11:59 |
| 11 | claim language doesn't say that. | 11:59 |
| 12 | Q.    So, in your opinion, the claim | 11:59 |
| 13 | language doesn't reflect that? | 11:59 |
| 14 | A.    There are a number of ways to | 11:59 |
| 15 | implement a user interface that would allow the | 12:00 |
| 16 | user to select a detected structure.  You may | 12:00 |
| 17 | detect multiple structures ahead of time and, | 12:00 |
| 18 | in fact, if you were going to highlight them | 12:00 |
| 19 | like in Figure 6 so that the user could see all | 12:00 |
| 20 | of them before they attempted to do any | 12:00 |
| 21 | selection, it would make sense to detect | 12:00 |
| 22 | multiple structures, and I think that's a nice | 12:00 |
| 23 | way to implement the invention. | 12:00 |
| 24 | But Claim 1 does not require what | 12:00 |
| 25 | you said.  It does not require that multiple | 12:00 |

Highly Confidential

Page 110

1   structures be detected prior to any selections    12:00

2   beginning.                                         12:00

3              MR. VINCENT:  We've been going          12:00

4   for another hour or so, so whenever you want to    12:00

5   stop at some point.                                12:00

6              MR. ERWINE:  Sure.  Let me              12:00

7   finish this line of questioning.                   12:00

8      Q.    So let me try and understand what         12:00

9   you're saying.  So are you saying that if          12:00

10  multiple structures are first detected after       12:01

11  which a user can choose any one of them to         12:01

12  perform and operate via the user interface,        12:01

13  that that would be covered by this limitation?     12:01

14     A.    You said choose any of them to            12:01

15  perform and operate?                               12:01

16     Q.    Uh-huh.  An operation.                    12:01

17     A.    Okay.  So if the user is -- I'm not       12:01

18  exactly sure what those words mean in this         12:01

19  context.  So maybe I can try to rephrase it,       12:01

20  and you can tell me if my rephrasing of your       12:01

21  question is correct.                               12:01

22              So if it's the case that the           12:01

23  analyzer server has detected multiple              12:01

24  structures and this happens to occur, and let's    12:01

25  say there's then highlighting of them, and then    12:01

Highly Confidential

Page 111

1    the user through the user interface selects one    12:01

2    of these structures, that is covered by    12:02

3    Claim 1.  Claim 1 is consistent with that    12:02

4    embodiment of the invention.    12:02

5        Q.    So you're saying that Claim 1 is    12:02

6    consistent within embodiment within which    12:02

7    multiple structures are detected after which    12:02

8    the user can choose any one of them to perform    12:02

9    an operation in the user interface?    12:02

10                   MR. VINCENT:  Objection,    12:02

11   vague.    12:02

12       A.    I'm sorry.  You're saying perform an    12:02

13   operation, and that's not -- I think that's not    12:02

14   the correct way to characterize it.  It's --    12:02

15   the language talks about selecting a linked    12:02

16   action, so the word operation is not a term    12:02

17   that's used in the patent that I recall.    12:02

18       Q.    Okay.  So you're saying that if a    12:02

19   system -- let me read that.  So you're saying    12:02

20   that Claim 1 is consistent with an embodiment    12:02

21   within which multiple structures are detected    12:03

22   after which the user can select a linked action    12:03

23   to perform the operation via the user    12:03

24   interface; is that right?    12:03

25                   MR. VINCENT:  Objection,    12:03

Highly Confidential

Page 112

1    vague.                                          12:03

2        A.    No.   I disagree with that.   There   12:03

3    are a couple of problems with that phrasing.    12:03

4    First of all, just to be clear, it has to be    12:03

5    analyzer server that's detecting structures.    12:03

6    And your question, I think you just said,       12:03

7    multiple structures were detected.   It would   12:03

8    have to be detected by the analyzer server.     12:03

9    And you also said that you perform an           12:03

10   operation.                                      12:03

11           And when you're selecting a detected    12:03

12   structure and you're going to select a linked   12:03

13   action -- and linked action means something     12:03

14   very specific in the context of this patent.    12:03

15   So I would not use the word operation.   I would 12:03

16   use the word linked action.                     12:03

17       Q.    I didn't use the word operation.   I  12:03

18   can repeat what I said.   But I specifically     12:03

19   took out performed an operation.                12:03

20       A.    Okay.   If you could repeat that,     12:03

21   that would be great.                            12:03

22       Q.    So you're saying that Claim 1 is      12:03

23   consistent within an embodiment within which    12:04

24   multiple structures are detected, after which   12:04

25   the user can select a linked action to perform  12:04

Highly Confidential

Page 113

| | | |
|---|---|---|
| 1 | the operation via user interface? | 12:04 |
| 2 | A.    Okay.  So the after which -- so if | 12:04 |
| 3 | it's the case that the analyzer server detects | 12:04 |
| 4 | multiple structures and the user, through the | 12:04 |
| 5 | user interface, selects a detected structure, | 12:04 |
| 6 | and then afterward they select a linked action, | 12:04 |
| 7 | that is consistent with assuming that the other | 12:04 |
| 8 | claim elements are also met, then that is | 12:04 |
| 9 | consistent with Claim 1. | 12:04 |
| 10 | Q.    Okay.  And you would say that's also | 12:04 |
| 11 | consistent with the teachings of the '647 | 12:04 |
| 12 | patent? | 12:05 |
| 13 | A.    The '647 patent does not require | 12:05 |
| 14 | that multiple structures be detected before the | 12:05 |
| 15 | user interface -- through the user interface | 12:05 |
| 16 | the user select the detected structure.  That's | 12:05 |
| 17 | not in Claim 1.  That's one way to do it in | 12:05 |
| 18 | order to do the highlighting ahead of time, | 12:05 |
| 19 | like illustrated in Figure 6.  I think it would | 12:05 |
| 20 | naturally occur that way, but that's not a | 12:05 |
| 21 | requirement of Claim 1. | 12:05 |
| 22 | MR. ERWINE:  Why don't we take | 12:05 |
| 23 | a break. | 12:05 |
| 24 | THE VIDEOGRAPHER:  We're going | 12:06 |
| 25 | off the record at 12:06 p.m. | 12:06 |

Highly Confidential

Page 114

1          (Lunch recess taken.)                    12:52

2          THE VIDEOGRAPHER:  We're back            13:09

3   on the record at 1:11 p.m.                      13:11

4   BY MR. ERWINE:                                  13:11

5       Q.    Dr. Mowry, just to reiterate, you're 13:11

6   not being compensated for your time at the     13:11

7   deposition today; is that right?               13:11

8       A.    That's correct, yes.                  13:11

9       Q.    I hope Mr. Vincent bought you lunch   13:11

10  to make up for it.  Can you turn to your        13:11

11  Rebuttal Report and, in particular, if you have 13:11

12  it there -- it's maybe Exhibit 12.              13:11

13      A.    13.                                   13:11

14      Q.    13.  And in particular can you turn   13:11

15  to Page 55.                                     13:11

16      A.    (Witness complies.)                   13:11

17      Q.    And I'm particularly interested in    13:11

18  the Sidekick section.  Do you see that, sir?    13:11

19      A.    Yes.                                  13:11

20      Q.    And I'm interested in your analysis   13:11

21  with respect to the user interface limitation.  13:11

22  Do you see that starting with Paragraph 151 and 13:11

23  152?  If you need to refresh your recollection  13:11

24  or refresh your memory in reading those two     13:12

25  paragraphs, please go ahead and do so, and let  13:12

Page 115

1    me know once you've read it.                              13:12

2          A.     Okay.  (Pause.)  Okay.                       13:12

3          Q.     And one of the things you say in             13:12

4    Paragraph 151 is that at no point does Sidekick           13:12

5    allow a user to select from a multitude of                13:12

6    structures.  Is that right?                               13:13

7          A.     It says that, yes.                           13:13

8          Q.     And in response to that in which you         13:13

9    lay out in Paragraph 151, in 152 you say that             13:13

10   this is contrary to the teachings of the '647            13:13

11   patent in which a user can select one structure          13:13

12   from among multiple structures and choose any            13:13

13   one of which could perform an operation via              13:13

14   user interface.  Do you see that?                        13:13

15         A.     I see that.                                  13:13

16         Q.     Is that an accurate reflection of           13:13

17   your opinion?                                             13:13

18         A.     That's what I wrote, yes.                    13:13

19         Q.     Okay.  So let's do this:  I'd like          13:13

20   to mark as an exhibit -- this is literally just          13:13

21   all I'm going to look at, is a couple of pages.          13:13

22   It's basically a copy from your Rebuttal                 13:13

23   Report, but I'm going to mark it separately.             13:13

24              MR. ERWINE:  If you can mark                   13:13

25   this as Exhibit 15.                                       13:13

Highly Confidential

Page 116

| | | |
|---|---|---|
| 1 | (Deposition Exhibit No. 15 was | 13:13 |
| 2 | marked for identification.) | 13:13 |
| 3 | Q.    Dr. Mowry, what I'd like you to do, | 13:14 |
| 4 | and you can verify that that's identical to the | 13:14 |
| 5 | paragraphs.  I am particularly interested in | 13:14 |
| 6 | Paragraph 152.  If you want to verify that it's | 13:14 |
| 7 | identical to your report. | 13:14 |
| 8 | A.    Appears to be, yes. | 13:14 |
| 9 | Q.    I'm going to hand you a pen.  Here's | 13:14 |
| 10 | what I'd like you to do:  In Paragraph 152 I'm | 13:14 |
| 11 | just going to have you write a few things in. | 13:14 |
| 12 | And so -- it's pretty straightforward.  I'll | 13:14 |
| 13 | describe what I want you to do, and then I'll | 13:14 |
| 14 | ask you a question. | 13:14 |
| 15 | So do you see in Paragraph 152 where | 13:14 |
| 16 | it says "This is contrary to the teachings of | 13:14 |
| 17 | the '647 patent in which"?  Do you see that? | 13:14 |
| 18 | A.    I see that. | 13:14 |
| 19 | Q.    After the word "which" I want you to | 13:15 |
| 20 | add as if you're adding this into your | 13:15 |
| 21 | language, "multiple structures are detected." | 13:15 |
| 22 | Actually, you have to write it in.  If you | 13:15 |
| 23 | don't want to do it, I can write it in. It | 13:15 |
| 24 | doesn't matter to me. | 13:15 |
| 25 | A.    Yeah, I haven't been asked before in | 13:15 |

Highly Confidential

Page 117

1   a deposition to write anything.  I just thought       13:15

2   this was a verbal and video record.                   13:15

3       Q.    I'm happy to do it.                          13:15

4       A.    I also understand that notes are            13:15

5   part of the record, and the notes that I'm            13:15

6   making --                                             13:15

7       Q.    No problem.  I'm happy to do it             13:15

8   myself.                                               13:15

9       A.    You're altering my opinions there;          13:15

10  is that correct?                                      13:15

11      Q.    Okay.  I'll hand this to you.  I'll         13:16

12  represent what I did was change the language a        13:16

13  bit, so that it now reads "This is contrary to        13:16

14  the teachings of the '647 patent in which," and       13:16

15  I've added the words "multiple structures are         13:16

16  detected, after which," and back to the text,         13:16

17  "a user," and then I've crossed out "can select       13:16

18  one structure from among multiple structures          13:16

19  and can."  That's all been crossed out.  And          13:16

20  then it continues, "choose any one of which to        13:16

21  perform an operation via the user interface."         13:16

22          So the sentence would read, the way          13:17

23  that I've edited it, "This is contrary to the         13:17

24  teachings of the '647 patent in which multiple        13:17

25  structures are detected, after which a user can       13:17

Highly Confidential

Page 118

1  choose any one of which to perform an operation        13:17

2  via user interface."  Do you see that?                 13:17

3      A.    I see that, yes.                             13:17

4      Q.    Do you agree with the language as            13:17

5  I've modified it in Paragraph 152?                     13:17

6             MR. VINCENT:  Objection,                    13:17

7  vague.                                                 13:17

8      A.    Well, this is talking about the              13:17

9  quote, which is not my quote, but your                 13:17

10 modification of my opinion is now referring to         13:17

11 the teachings of the '647 patent, which I              13:17

12 understand to be a broader concept than just           13:17

13 the claim language.  And as we were discussing         13:18

14 earlier, the claim language does not require           13:18

15 that multiple structures be detected before the        13:18

16 user selects structures in the preferred              13:18

17 embodiment illustrated in Figure 6, where you          13:18

18 highlight structures, you would, indeed,               13:18

19 detect the multiple structures first in order          13:18

20 to highlight them.  But the Claim 1 does not           13:18

21 require this.                                          13:18

22     Q.    Okay.  So let me ask the question            13:18

23 again, and it's a yes or no question.  Do you          13:18

24 agree with the language as I've modified it?           13:18

25 And I'll repeat it.  "This is contrary to the          13:18

Highly Confidential

Page 119

1   teachings of the '647 patent in which multiple        13:18

2   structures are detected after which a user can        13:18

3   choose any one on which to perform an operation       13:18

4   via user interface."  Yes or no?                      13:18

5                    MR. VINCENT:  Objection.              13:18

6   Vague, asked and answered.                            13:18

7        A.    Well, as I said, the Claim 1               13:19

8   language does not require this in terms of the        13:19

9   phrase -- I was using the phrase teachings of         13:19

10  the '647 patent, and the sentence has been            13:19

11  modified from what I wrote, of course.                13:19

12            And my understanding is that                13:19

13  includes also the patent specification, which         13:19

14  would include preferred embodiments.  So in the       13:19

15  preferred embodiment it would be he detecting         13:19

16  multiple structures, because it has to                13:19

17  highlight them.                                       13:19

18            So in that context of the preferred         13:19

19  embodiment, it is teaching -- the preferred           13:19

20  embodiment teaches that an instance of the            13:19

21  invention where multiple structures are               13:19

22  detected before you select among them, but            13:19

23  Claim 1 does not require this.                         13:19

24       Q.    So if I ask you for a yes or no            13:19

25  question, is that not clear?                           13:19

Highly Confidential

Page 120

1    A.    I heard what you said.                    13:19

2    Q.    So back to my question.  Does this        13:19

3    language, as I've modified it, is it your       13:20

4    opinion that that is correct?  And I'll read it 13:20

5    again.  Yes or no?                              13:20

6              MR. VINCENT:  Asked and               13:20

7    answered.                                       13:20

8    A.    You just asked me the same question,      13:20

9    so I will give you the same answer.             13:20

10   Q.    But I'm asking for a yes or no            13:20

11   answer, not for your explanation, which is not  13:20

12   a yes or no.  I'm asking for a yes or no         13:20

13   answer.  If I asked you, at trial, this         13:20

14   sentence, "This is contrary to the teachings of 13:20

15   the '647 patent in which multiple structures    13:20

16   are detected after which a user can choose any  13:20

17   one on which to perform an operation via the    13:20

18   user interface," is that accurate?  Yes or no?  13:20

19             MR. VINCENT:  Objection, asked        13:20

20   and answered.                                   13:20

21   A.    Well, what's shown here is not what       13:20

22   I wrote.  It's what was modified.  And it's a   13:20

23   modified sentence.  As I said, I agree that in  13:20

24   the context of the -- it's true that for the    13:20

25   example on the preferred embodiment, it is,     13:21

Highly Confidential

Page 121

1    indeed, teaching this example, where multiple          13:21

2    structures are detected, after which the user          13:21

3    chooses from among them, but Claim 1 does not          13:21

4    require this.                                           13:21

5        Q.    So does Claim 1 of the '647 patent           13:21

6    require that a user can select one structure           13:21

7    from among multiple detected structures?               13:21

8        A.    Claim 1 requires that the analyzer           13:21

9    server is able to detect multiple structures,          13:21

10   multiple kinds of structures.  The user                13:21

11   interface means that they have to be able to           13:22

12   select a structure.  It's possible that you            13:22

13   could have, for example, a document that only          13:22

14   has one detected structure in it, for example,         13:22

15   a text message that contains a phone number,           13:22

16   but nothing else that is recognized as a               13:22

17   detected structure.                                     13:22

18            So it's not a requirement that there          13:22

19   would have to actually be multiple structures          13:22

20   present in a document among which they select          13:22

21   one.                                                    13:22

22            For that matter it's possible in a            13:22

23   specific document there are no structures, so          13:22

24   there isn't a requirement necessarily in a             13:22

25   particular instance that you would have to be          13:22

Highly Confidential

Page 122

1    able to select one out of a multitude.          13:22

2        Q.    Well, let's assume that there is      13:22

3    multiple detecting structures.  In that         13:22

4    scenario does Claim 1 require that a user can    13:22

5    select one structure from among multiple        13:22

6    detected structures?                            13:22

7                MR. VINCENT:  Objection,            13:23

8    vague.                                           13:23

9        A.    Claim 1 simply requires that a user   13:23

10   interface enabling a selection of a detected    13:23

11   structure.  It doesn't discuss multiple         13:23

12   structures.  If there were, if there happened   13:23

13   to be multiple detected structures in some      13:23

14   implementation of the patent, then the user     13:23

15   needs to be able to select a detected           13:23

16   structure, but the claim itself doesn't discuss 13:23

17   the number of structures in a particular        13:23

18   document, for example.                          13:23

19       Q.    Let me ask you this:  Do you agree    13:23

20   that the selection of a detected structure, as  13:24

21   written in the claim limitation in Claim 1,     13:24

22   necessarily requires that a particular detected 13:24

23   structure can be chosen from a set of detected  13:24

24   structures?                                      13:24

25       A.    I'm not sure if you're emphasizing    13:24

Highly Confidential

Page 123

1  the particular or the set, so I'll deal with      13:24

2  both of those.  The interface, the description     13:24

3  says that -- Claim 1 says that you can select      13:24

4  the selection of a detected structure.  And       13:25

5  regarding a set of detected structures, the       13:25

6  system needs to be capable of detecting         13:25

7  multiple types of detected structures, clearly     13:25

8  refers to detected structures plural.          13:25

9       So depending on the actual content        13:25

10  of the document, there may or may not be        13:25

11  multiple structures to detect in a particular      13:25

12  instance.                      13:25

13      Q.   Okay.  Is it fair to say that the     13:25

14  preamble of Claim 1 refers to a computer-based     13:25

15  system for detecting structures in data and       13:25

16  performing actions on detected structures?       13:25

17      A.   It says that, yes.            13:25

18      Q.   And is it fair to say that the       13:25

19  analyzer server limitation says that an         13:25

20  analyzer server for detecting structures in the     13:25

21  data and linking actions in the detected        13:25

22  structures?                    13:25

23      A.   Yes, it says that.            13:25

24      Q.   So for the purposes of my question,     13:25

25  let's assume that there are multiple structures     13:25

Highly Confidential

Page 124

1    in the data.                                  13:26

2         A.     Okay.                             13:26

3         Q.     So my question is does the claim  13:26

4    language selection of a detected structure, as 13:26

5    written in the claim, necessarily require that 13:26

6    a particular detected structure can be chosen  13:26

7    from a set of detected structures?            13:26

8                    MR. VINCENT:   Objection, asked 13:26

9    and answered.                                 13:26

10        Q.     Yes or no question.               13:26

11                   MR. VINCENT:   Same objection. 13:26

12        A.     The word, the phrasing particular  13:26

13   detected structure is not here.  It says      13:26

14   enabling the selection of a detected structure. 13:26

15   If there were multiple structures that were   13:26

16   detected in a document, and if they were, for 13:26

17   example, highlighted, the user would be       13:26

18   surprised if they couldn't select any one of  13:26

19   them that were highlighted, for example.      13:26

20                But the claim language doesn't say 13:26

21   that you need to something -- it doesn't use  13:26

22   the word particular among the set, but --     13:26

23        Q.     I'm going to repeat my question,   13:27

24   because you're not answering my question.  I'm 13:27

25   going to ask you another time.  It's a yes or 13:27

Highly Confidential

Page 125

1   no question.  It's a very simple question.      13:27

2   Does the claim language, selection of a         13:27

3   detected structure, as written in the claim,    13:27

4   necessarily require that a particular detected   13:27

5   structure can be chosen from a set of detected   13:27

6   structures?  Yes or no.                          13:27

7            MR. VINCENT:  Objection.                13:27

8   Argumentative, asked and answered.              13:27

9       A.   Well, I think I've answered that at    13:27

10  least twice now, and it does not use that       13:27

11  language.  Now, it talks about selecting a      13:27

12  detected structure.  It does not say a          13:27

13  particular structure out of a set of detected   13:27

14  structures.                                      13:27

15      Q.   So your answer is, no, you don't       13:27

16  agree with that?                                 13:28

17            MR. VINCENT:  Objection.                13:28

18  Misstates testimony, asked and answered.        13:28

19      A.   No.  What I said was that the          13:28

20  language itself doesn't use words like          13:28

21  particular structure out of a set of            13:28

22  structures.  As I said a minute ago, if the --  13:28

23  in an example where there's highlighting and    13:28

24  where there were, in fact, multiple structures  13:28

25  in the data where multiple structures had been  13:28

Highly Confidential

Page 126

| | | |
|---|---|---|
| 1 | detected prior to selection or to highlight | 13:28 |
| 2 | them, the user would expect to be able to | 13:28 |
| 3 | select any of the structures out of the set. | 13:28 |
| 4 | So that would be a reasonable | 13:28 |
| 5 | expectation for the preferred embodiment | 13:28 |
| 6 | example.  But strictly speaking, Claim 1 | 13:28 |
| 7 | doesn't say that.  It just says selection of a | 13:28 |
| 8 | detected structure. | 13:28 |
| 9 | Q.   So I'd like to mark as another | 13:28 |
| 10 | exhibit, 16, this is -- Dr. Mowry, this is your | 13:28 |
| 11 | Reply Expert Declaration from, I guess, the PI | 13:29 |
| 12 | phase of the case. | 13:29 |
| 13 | (Deposition Exhibit No. 16 was | 13:29 |
| 14 | marked for identification.) | 13:29 |
| 15 | MR. ERWINE:  After she marks | 13:29 |
| 16 | it, we have to change the tape, so let's do | 13:29 |
| 17 | that real quick. | 13:29 |
| 18 | THE VIDEOGRAPHER:  We're at | 13:29 |
| 19 | the end of Tape 2.  We'll continue with Tape 3. | 13:29 |
| 20 | The time is 1:29 p.m. | 13:29 |
| 21 | (Off the record.) | 13:31 |
| 22 | THE VIDEOGRAPHER:  This marks | 13:32 |
| 23 | the beginning of Tape No. 3 of the Deposition | 13:32 |
| 24 | of Todd Mowry.  The time is 1:33 p.m. | 13:33 |
| 25 | BY MR. ERWINE: | 13:33 |

Highly Confidential

Page 127

1      Q.    Dr. Mowry, I have marked as an         13:33

2   exhibit your Reply Declaration from the PI     13:33

3   phase of this case, Exhibit 16.  Would you     13:33

4   please turn to Page 53.                        13:33

5      A.    (Witness complies.)                    13:33

6      Q.    In particular, I'm interested in      13:33

7   Section 4.  Do you see that where it says, in  13:33

8   quotes, "The user interface enabling the       13:33

9   selection of a detected structure and a linked 13:33

10  action"?                                        13:33

11     A.    Yes.                                    13:33

12     Q.    You understand that's the claim       13:33

13  language from Claim 1 of the '647 patent?      13:33

14     A.    Appears to be.  Let me check it.      13:33

15  Yes, that's right.                              13:33

16     Q.    And you see Paragraph 139, sir?       13:33

17     A.    I do.                                   13:33

18     Q.    You see that it says, "The Sidekick   13:33

19  dialer does not disclose a," quote, "'user     13:33

20  interface enabling the selection of a detected 13:33

21  structure and a linked action'"?               13:34

22     A.    I see that, yes.                       13:34

23     Q.    Do you agree with that statement?     13:34

24     A.    Yes.  That's my opinion.              13:34

25     Q.    That's your opinion?                  13:34

Highly Confidential

Page 128

| | | |
|---|---|---|
| 1 | A.    That's what I wrote. | 13:34 |
| 2 | Q.    And look at Paragraph 140.  Do you | 13:34 |
| 3 | see the sentence that says, in quotes, | 13:34 |
| 4 | "'Selection of a detected structure,'" end | 13:34 |
| 5 | quote, "as written in the claim limitation, | 13:34 |
| 6 | necessarily requires that a particular detected | 13:34 |
| 7 | structure can be chosen from a set of detected | 13:34 |
| 8 | structures"?  Do you see that? | 13:34 |
| 9 | A.    I see that. | 13:34 |
| 10 | Q.    Do you agree with that statement? | 13:34 |
| 11 | A.    Well, that's what I wrote at the | 13:34 |
| 12 | time.  And that was -- I'm not sure why I wrote | 13:35 |
| 13 | in the part where it says "as written in the | 13:35 |
| 14 | claim limitation."  I think it would have been | 13:35 |
| 15 | more correct for me to refer to the example of | 13:35 |
| 16 | the preferred implementation of the invention. | 13:35 |
| 17 | Q.    So you're changing your opinion? | 13:35 |
| 18 | Yes? | 13:35 |
| 19 | A.    Well, I wrote this -- I think that I | 13:35 |
| 20 | did not write this as precisely as I intended | 13:35 |
| 21 | to write it.  So you asked earlier if there | 13:36 |
| 22 | were any corrections, if I had noticed this. | 13:36 |
| 23 | This would be something that I would have | 13:36 |
| 24 | written more carefully. | 13:36 |
| 25 | Q.    So you disagree with the opinion | 13:36 |

Highly Confidential

Page 129

1  that you have in here, and you're now changing    13:36
2  your opinion; is that right?                       13:36
3              MR. VINCENT:   Objection.              13:36
4  Misstates testimony, asked and answered.           13:36
5      A.    What I said was I think this is true     13:36
6  with respect to the preferred embodiment in the    13:36
7  patent.   What I have written here is as written   13:36
8  in the claim limitation, and I could have          13:36
9  written that more carefully.   I think that        13:36
10 should not have said "as written in the claim      13:36
11 limitation."   I should have said "as             13:36
12 illustrated in the preferred embodiment."         13:36
13              So, yes, that is something that I     13:36
14 would like to -- yes, that is something that I     13:36
15 would, given the choice, have fixed that error     13:36
16 in what I wrote.                                    13:36
17     Q.    So you're saying that that is an         13:36
18 error; is that right?                              13:36
19     A.    Yes, that is an error.                   13:36
20     Q.    And you submitted this declaration       13:36
21 in support of Apple's Motion For Preliminary       13:36
22 Injunction; correct?                               13:37
23     A.    I believe that's the context in         13:37
24 which this is submitted.                           13:37
25     Q.    And if you turn to Page 111 of your     13:37

Highly Confidential

Page 130

1    report -- I'm sorry -- the declaration, please    13:37

2    turn to Page 111.  It should be the last page.    13:37

3         A.    Okay.                                  13:37

4         Q.    Do you see there it says, "I           13:37

5    declare, under penalty of perjury, that the       13:37

6    foregoing is true and correct"; right?            13:37

7         A.    Yes.                                    13:37

8         Q.    That's your signature?                 13:37

9         A.    That is.                                13:37

10        Q.    And you're saying this is not          13:37

11   correct, what you drafted here in Paragraph 140   13:37

12   is not correct?                                    13:37

13        A.    That was an error in what I wrote       13:37

14   down.  People make mistakes when they write       13:37

15   things down sometimes, so that is -- you asked    13:37

16   earlier at the beginning of the deposition if     13:37

17   there are any things that I wanted to correct     13:37

18   where I was aware of any mistakes.  And I did     13:37

19   not notice this before, but that is something     13:38

20   that I would prefer to amend.                     13:38

21        So that's -- I think of it as I              13:38

22   could have written that more precisely.  As I     13:38

23   said, that really should be referring to the      13:38

24   preferred embodiment rather than the claim        13:38

25   limitation language specifically.                 13:38

Highly Confidential

Page 131

1    Q.    And you're not saying that it could    13:38

2    be written more precise.  You're saying it's    13:38

3    wrong.  It's not your opinion; correct?    13:38

4              MR. VINCENT:  Objection,    13:38

5    misstates testimony.    13:38

6    A.    No, that's not what I said at all.    13:38

7    I said that I could have written this more    13:38

8    precisely, that what it says is correct for the    13:38

9    preferred embodiment in the patent, but in    13:38

10   terms of saying it specifically for the wording    13:38

11   of the claim limitation, I could have written    13:38

12   that more correctly.  I would not choose to    13:38

13   write it the way that I wrote it.    13:38

14   Q.    So as it's written in the Reply    13:39

15   Declaration, you're saying that is incorrect;    13:39

16   is that right?    13:39

17   A.    Okay.  Again, I think that's the    13:39

18   same question I just answered, so I'll give you    13:39

19   the same answer, which is I think that it is    13:39

20   correct with respect to the preferred    13:39

21   embodiment.  However, that's what I should have    13:39

22   written here.  I should have said "as    13:39

23   illustrated in the preferred embodiment."  But    13:39

24   I said the wording here that I wrote was "as    13:39

25   written in the claim limitation," and that is    13:39

Highly Confidential

Page 132

1    not written precisely.                          13:39

2            It should say "in the preferred         13:39

3    embodiment," rather than "in the claim          13:39

4    limitation."                                     13:39

5        Q.    But it doesn't say in this sentence   13:39

6    "the preferred embodiment"; correct?  It says   13:39

7    "the claim limitation"; right?                   13:39

8        A.    Yes.  As I said, I should have said   13:39

9    "in the preferred embodiment," and instead I    13:39

10   just said "in the claim limitation," so I       13:39

11   should have written that more precisely.         13:39

12       Q.    And when you compare prior art to a   13:39

13   claim to determine whether or not it's          13:40

14   invalidated, you look at the claim limitation;  13:40

15   correct?                                         13:40

16       A.    Whenever you consider prior art in a  13:40

17   patent, you always begin with the claim         13:40

18   limitations, that is correct.  However, to      13:40

19   understand the meaning of them, you also look   13:40

20   to the patent specification and to the          13:40

21   prosecution history.                            13:40

22       Q.    But in this particular declaration    13:40

23   you were distinguishing the Sidekick reference  13:40

24   from the claim limitation of Claim 1; correct?  13:40

25       A.    Let me double-check the beginning of  13:40

Highly Confidential

Page 133

1    this.  So I believe that there is -- yes, this    13:40
2    is Claim 1, and this was under the heading of    13:40
3    that claim limitation in Claim 1.  And as I    13:40
4    said, that was not written precisely.  I was    13:41
5    referring to an aspect of the preferred    13:41
6    embodiment that can -- that was related to this    13:41
7    part, this claim element, but I should have    13:41
8    been more precise and written that I was really    13:41
9    talking about the preferred embodiment rather    13:41
10   than the specific wording of the claim    13:41
11   limitation.    13:41
12        Q.    But you agree that the preferred    13:41
13   embodiment of the invention and how that    13:41
14   matches up with the prior art reference is    13:41
15   irrelevant for purposes of determining    13:41
16   invalidity; right?    13:41
17        A.    No, I disagree that preferred    13:41
18   embodiments are irrelevant.  The thing that is    13:41
19   most relevant is the claim language.  That's    13:41
20   what you begin with.    13:41
21           But sometimes in order to    13:41
22   understand, if you just read a claim in    13:41
23   isolation, it may not be clear what it's really    13:41
24   referring to.  So the specification of the    13:42
25   patent is also something that you should look    13:42

Highly Confidential

Page 134

1    to to understand the meaning of the patent.  So      13:42

2    that is what I had in mind here when I wrote          13:42

3    this sentence.  But as I said, it was not            13:42

4    written as precisely as I should have written        13:42

5    it.  I should not have said "claim limitation,"      13:42

6    I should have said "as illustrated in the            13:42

7    preferred embodiment."                               13:42

8         Q.    So let me ask the question one more       13:42

9    time, because it doesn't include the words           13:42

10   "preferred embodiment."  It includes the words       13:42

11   "claim limitation."                                  13:42

12              As written by you the selection of a      13:42

13   detected structure, as written in the claim          13:42

14   limitation, necessarily requires a particular        13:42

15   detected structure can be chosen from a set of       13:42

16   detected structures.  You're saying that is          13:42

17   incorrect; right?                                    13:43

18        A.    I'm saying that I should have             13:43

19   written that more precisely, because what I was      13:43

20   really referring to there was the preferred          13:43

21   embodiment in the patent and not just the            13:43

22   language in the claim limitation, so I could         13:43

23   have written that more precisely.                    13:43

24        Q.    So let's look at the scope a little       13:43

25   bit.  So you, in this declaration, distinguish       13:43

Highly Confidential

Page 135

1  Sidekick on the ground that Sidekick does not        13:43

2  allow a user to select from a multitude of           13:43

3  detected structures; correct?                        13:43

4        A.     There are a number of reasons why I     13:43

5  distinguish Sidekick from the '647, and this is       13:43

6  just one aspect of that discussion.  That is          13:43

7  not the sole reason why I distinguished it.           13:43

8  This is just part of my discussion.                   13:43

9        Q.     Not my question.  I said that was       13:43

10 one of the reasons that you distinguished             13:43

11 Sidekick; correct?                                    13:43

12       A.     So I didn't hear the word one in        13:43

13 your question.  Was that one of the reasons why       13:43

14 I distinguished Sidekick, yes, that was one of        13:44

15 the reasons why I distinguished it.                   13:44

16       Q.     And that was your written               13:44

17 declaration to the Court in support of Apple's        13:44

18 preliminary injunction motion; correct?              13:44

19       A.     Yes, this is my written declaration     13:44

20 to the Court in support of that, correct.             13:44

21       Q.     And now you're saying, after I          13:44

22 pointed out to you, that you no longer believe        13:44

23 that's one of distinctions of Sidekick from          13:44

24 Claim 1 in the '647 patent?                           13:44

25              MR. VINCENT:  Objection,                 13:44

Highly Confidential

Page 136

| | | |
|---|---|---|
| 1 | vague. | 13:44 |
| 2 | A. Can you reread that question? | 13:44 |
| 3 | MR. ERWINE: Can you read the | 13:44 |
| 4 | question, please. | 13:44 |
| 5 | (The Reporter read back as | 13:44 |
| 6 | requested.) | 13:44 |
| 7 | A. Regarding the specific language in | 13:44 |
| 8 | Claim 1, this discussion was not focused just | 13:44 |
| 9 | on the claim language but the broader context | 13:45 |
| 10 | of the patent, which included preferred | 13:45 |
| 11 | embodiment. So this was -- I think your | 13:45 |
| 12 | question said narrowly Claim 1, and if I focus | 13:45 |
| 13 | just on the language of Claim 1 and disconnect | 13:45 |
| 14 | it from the rest of the patent, then this -- | 13:45 |
| 15 | what I've written here can really only be | 13:45 |
| 16 | understood in the context of the preferred | 13:45 |
| 17 | embodiment and not just the Claim 1 language on | 13:45 |
| 18 | its own. | 13:45 |
| 19 | Q. I didn't understand that answer at | 13:45 |
| 20 | all. I am not sure what you're trying to say. | 13:45 |
| 21 | But I'll repeat. You're relying on the ground | 13:45 |
| 22 | that Sidekick does not allow a user to select | 13:45 |
| 23 | from a multitude of detected structures to | 13:45 |
| 24 | distinguish it from Claim 1; correct? | 13:45 |
| 25 | A. No, that's not correct. I'm not | 13:45 |

Highly Confidential

Page 137

1    relying on that.  There are a number of reasons        13:45
2    why Sidekick is distinguished from the '647            13:45
3    patent.                                                13:45
4        Q.    That was one of the reasons that you        13:45
5    distinguished Sidekick -- correct -- from Claim        13:45
6    1 of the '647 patent?                                  13:46
7        A.    As I wrote the text here, it does            13:46
8    appear that that's what I was writing, but I           13:46
9    did not mean to write it in this manner.  I            13:46
10   should have, to be more precise, I should have         13:46
11   distinguished this from -- I should have said          13:46
12   that this is what was discussed in the                 13:46
13   preferred embodiment.                                  13:46
14       Q.    So what you're saying is you meant           13:46
15   to distinguish it from the preferred embodiment        13:46
16   in this Reply Declaration as opposed to                13:46
17   distinguishing it from Claim 1; correct?               13:46
18              MR. VINCENT:  Objection,                     13:46
19   misstates testimony.                                   13:46
20       A.    Your question is a short question.           13:46
21   So in the broader context I am not relying on          13:46
22   the preferred embodiment to distinguish                13:46
23   Sidekick from the '647 patent.  The specific          13:46
24   sentence that you're referring to is one where         13:46
25   I should have been referring to preferred             13:47

Highly Confidential

Page 138

1    embodiment to inform this discussion here.  But      13:47

2    I, in my report, am distinguishing, for a            13:47

3    number of reasons, distinguishing Sidekick from      13:47

4    Claim 1 in the patent.                               13:47

5        Q.    Play all of the word games you want        13:47

6    I'm talking about this sentence.  In this            13:47

7    sentence you're distinguishing Sidekick from         13:47

8    the claim limitation; correct?                       13:47

9             MR. VINCENT:  Objection.                     13:47

10   Argumentative, asked and answered.                    13:47

11       A.    In this sentence, the sentence is           13:47

12   referring to claim limitation.  Yes, the             13:47

13   sentence does refer to claim limitation.  And        13:47

14   as I said, that was not written precisely.           13:47

15       Q.    Right.                                       13:47

16       A.    I should have written that                  13:47

17   differently.                                          13:47

18       Q.    But in that particular sentence you         13:47

19   were distinguishing Sidekick on at least this        13:47

20   one ground, that Sidekick does not allow users       13:47

21   to select from a multitude of selected               13:48

22   structures; correct?                                  13:48

23       A.    Yes, that was the general context of        13:48

24   this discussion.  And I was referring to the         13:48

25   broader patent when I was writing this, but I        13:48

Highly Confidential

Page 139

1  didn't write it that way.                          13:48

2      Q.    So now you're saying that -- strike      13:48

3  that.  So now you're saying that it really         13:48

4  should be distinguishing Sidekick for this         13:48

5  instance not from the claim, but from a            13:48

6  preferred embodiment; is that right?               13:48

7               MR. VINCENT:  Objection,               13:48

8  misstates testimony.                               13:48

9      A.    Sorry.  We've been focusing so much      13:48

10  on one sentence, I'm trying to remember now the   13:48

11  broader context of what I wrote.  Could you       13:48

12  repeat the question, please.                      13:48

13               (The Reporter read back as            13:49

14  requested.)                                       13:49

15      A.    Sidekick should be -- the relevant      13:49

16  discussion for Sidekick is how it compares with   13:49

17  respect to the claims.  That's what you start     13:49

18  with.  But you also look at the patent            13:49

19  specification to inform your understanding of     13:49

20  what the claims mean.                             13:49

21      Q.    And I'm not talking about that.         13:49

22  Once again, we're talking about this particular   13:49

23  sentence.  In this sentence in the reply brief    13:49

24  you are distinguishing Sidekick, at least here,   13:49

25  on the ground that Sidekick does not allow a      13:49

Highly Confidential

Page 140

1   user to select from a multitude of detected        13:49
2   structures; correct?                               13:49
3       A.    What is written on the page does --      13:49
4   is referring to comparing Sidekick.  Actually,     13:49
5   did you say multitude?  It doesn't say             13:50
6   multitude in that sentence.  But the sentence,     13:50
7   as written, is referring to the claim              13:50
8   limitation and selecting a particular detected     13:50
9   structure from a set of detected structures.       13:50
10           That's what the sentence, as             13:50
11  written, says.  And as I said earlier, I did       13:50
12  not write that.  That is a mistake in how I        13:50
13  wrote this sentence.  I should have written it     13:50
14  more precisely.                                    13:50
15      Q.    What you're saying now is that it        13:50
16  should be that the selection of the detected       13:50
17  structure as written in the preferred              13:50
18  embodiment necessarily requires that a             13:50
19  particular detected structures can be from a       13:50
20  set of detected structures; correct?              13:50
21      A.    Preferred embodiment doesn't require    13:50
22  anything.  Preferred embodiment just               13:50
23  illustrates one particular instance of an          13:50
24  invention.  So it would be inaccurate to just      13:50
25  edit the sentence that way and say that that       13:50

Highly Confidential

Page 141

1   requires something.                                    13:50

2        Q.    But in Paragraph 140 you're              13:51

3   comparing it to the claim language; right?            13:51

4        A.    As that sentence is written, which I     13:51

5   wrote it inaccurately and I wish I had written        13:51

6   it more precisely, it does talk about the claim       13:51

7   language as I wrote it in this sentence.  It          13:51

8   does say that.                                         13:51

9        Q.    So is it your opinion that if a          13:51

10  Samsung accused device does not allow the user        13:51

11  to select from a multitude of detected                13:51

12  structures, it does not infringe?                     13:51

13            MR. VINCENT:  Objection.                   13:51

14  Vague, incomplete hypothetical.                       13:51

15       A.    The patent requires that the user        13:51

16  interface enable the selection of a detected          13:51

17  structure, and there is also a requirement that       13:51

18  the analyzer server be able to detect multiple        13:52

19  structures.                                            13:52

20            So in the case where a particular         13:52

21  document has -- if there are multiple                 13:52

22  structures in it that have been detected, the         13:52

23  user needs to be able to select a detected           13:52

24  structure from among whatever set has been           13:52

25  detected.                                              13:52

Highly Confidential

Page 142

1    Q.    Putting aside whether or not any        13:52

2  structures have been detected, putting that      13:52

3  aside, does this limitation, this claim          13:52

4  limitation, the user interface enabling the      13:52

5  selection of a detected structure in a linked    13:52

6  action -- okay?                                  13:52

7    A.    Okay.                                    13:52

8    Q.    -- does that require a user to           13:52

9  select from a multitude of detected structures?  13:52

10             MR. VINCENT:   Same objection.       13:52

11   A.    Well, I think, as I discussed            13:52

12 earlier, there's not a requirement of selecting  13:52

13 from a multitude of detected structures,         13:53

14 because there could be a document that only has  13:53

15 a single detected structure or zero detected     13:53

16 structures, in which case it's not possible to   13:53

17 select from a multitude of detected structures.  13:53

18   Q.    Just assuming there are multiple         13:53

19 detected structures, then in that situation      13:54

20 it's their requirement that the user must be     13:54

21 able to select from a multitude of detected      13:54

22 structures.   Strike that.   Let me rephrase     13:54

23 that.  Assuming that there are multiple          13:54

24 structures in the document, according to the     13:54

25 claim language, must a user be able to select    13:54

Highly Confidential

Page 143

| | |
|---|---|
| 1 | from a multitude of those structures? | 13:54 |
| 2 | A.    The claim language says that the | 13:54 |
| 3 | user must be able to select the detected | 13:55 |
| 4 | structure.  And in your question you said there | 13:55 |
| 5 | are multiple structures and a set of | 13:55 |
| 6 | structures, but you didn't say detected | 13:55 |
| 7 | structures.  So the language clearly says that | 13:55 |
| 8 | you're selecting a detected structure. | 13:55 |
| 9 | Q.    So let me rephrase to make sure I | 13:55 |
| 10 | get that correct.  According to that claim | 13:55 |
| 11 | language, a user must be able to select from a | 13:55 |
| 12 | multitude of detected structures; correct? | 13:55 |
| 13 | MR. VINCENT:  Objection, | 13:55 |
| 14 | misstates testimony. | 13:55 |
| 15 | A.    No.  The language just says you need | 13:55 |
| 16 | to be able to select a detected structure.  If | 13:55 |
| 17 | there were multiple detected structures, for | 13:55 |
| 18 | example, to do highlighting of all of the | 13:55 |
| 19 | structures, then they would, indeed, be | 13:56 |
| 20 | selecting a detected structure from a multitude | 13:56 |
| 21 | of them.  But the language doesn't require | 13:56 |
| 22 | that. | 13:56 |
| 23 | Q.    So any instance where there's more | 13:56 |
| 24 | than one structure that's been detected, any | 13:56 |
| 25 | instance, then in your view the user must be | 13:56 |

Highly Confidential

Page 144

1   able to select from a multitude of detected        13:56

2   structures?                                         13:56

3                   MR. VINCENT:  Objection,            13:56

4   vague.                                              13:56

5        A.    That question was difficult to           13:56

6   follow.  So any time there are multiple             13:56

7   detected structures, the user must be able to       13:56

8   select among the multiple detected structures?      13:56

9        Q.    Uh-huh.                                   13:56

10       A.    Is that what you said?                    13:56

11       Q.    Yes.                                       13:56

12       A.    Well, if there were multiple              13:56

13   detected structures and if they were                13:56

14   highlighted, the user would expect that they        13:56

15   would be able to select any of the ones that        13:57

16   they can see.  So the language says enabling        13:57

17   the selection of a detected structure, so it        13:57

18   doesn't have the wording that you just              13:57

19   presented, but the user would expect that if        13:57

20   they were shown multiple -- if multiple             13:57

21   structures were highlighted, that they could        13:57

22   somehow navigate to or in some manner select        13:57

23   any one of them that they wanted to select.         13:57

24       Q.    So let's go back to your Reply            13:57

25   Declaration and Paragraph 140.                      13:57

Highly Confidential

Page 145

1     A.    Is that the one we were just looking    13:57

2  at?                                               13:57

3     Q.    Yes, that's the one we were looking      13:57

4  at.  Is it your understanding that this           13:57

5  declaration was viewed by Apple's attorneys       13:57

6  before it was submitted to the Court?             13:57

7     A.    I don't -- was it reviewed by -- if      13:57

8  it was my declaration, I don't recall -- I        13:57

9  remember finishing the declaration, signing it,   13:58

10  and then it got submitted, so I don't know what  13:58

11  happened after that.                             13:58

12     Q.    Did Apple's attorneys give you any      13:58

13  comments on it throughout the process of         13:58

14  preparing that declaration?                      13:58

15           MR. VINCENT:  I'm going to              13:58

16  caution the witness not to disclose any          13:58

17  attorney-client --                               13:58

18           MR. ERWINE:  It's a yes or no           13:58

19  question.                                        13:58

20           MR. VINCENT:  Can I caution my          13:58

21  witness?                                         13:58

22           MR. ERWINE:  Absolutely.                13:58

23           MR. VINCENT:  I'm going to              13:58

24  caution the witness not to disclose the          13:58

25  contents of any attorney-client privileged       13:58

Highly Confidential

Page 146

1   communication, but you can otherwise answer the      13:58

2   question.                                            13:58

3        A.   I did discuss, have discussions with       13:58

4   attorney -- the counsel during the process of        13:58

5   working on this.  But I think the contents of        13:58

6   what was discussed is covered by the protective      13:58

7   order.                                               13:58

8   BY MR. ERWINE:                                       13:58

9        Q.   This is a yes or no question.  Did         13:58

10  you provide drafts of your declaration to            13:58

11  Apple's attorneys?                                   13:58

12       A.   My understanding is that's covered         13:59

13  under the protected order.                           13:59

14       Q.   It's a yes or no question.  I don't        13:59

15  understand what you're referring to as the           13:59

16  protected order.  I'm just asking whether or         13:59

17  not, yes or no, you provided drafts.                 13:59

18       A.   My understanding is that the               13:59

19  interactions between myself and the counsel in       13:59

20  preparing this is covered by the protective          13:59

21  order.  It's not something that I need to            13:59

22  discuss.                                             13:59

23       Q.   So you're refusing to answer; is           13:59

24  that right?                                           13:59

25       A.   Well, my understanding is that             13:59

Page 147

1   that's not something that I'm supposed to be          13:59

2   asked about.                                          13:59

3       Q.    Your counsel is not objecting, so          13:59

4   I'm happy to have you talk to your counsel, if        13:59

5   you're concerned about it.  But I'm asking you        13:59

6   a specific question, and you're telling me            13:59

7   you're refusing to answer?                            13:59

8               MR. VINCENT:  If you'd like to            13:59

9   go off the record, I can clear this up.               13:59

10              MR. ERWINE:  Perfectly fine.              13:59

11  Let's go off the record.                              13:59

12              THE VIDEOGRAPHER:  Going off              13:59

13  the record at 2:00 p.m.                               13:59

14              (Whereupon, a recess was                  13:59

15  taken.)                                               14:09

16              THE VIDEOGRAPHER:  We're back             14:09

17  on the record at 2:09 p.m.                            14:09

18  BY MR. ERWINE:                                        14:09

19      Q.    So, Dr. Mowry, did you get                  14:09

20  clarification from your counsel?                      14:09

21      A.    Yes.                                        14:09

22      Q.    Can you answer the question?               14:09

23      A.    And the question was whether I gave         14:09

24  copies of drafts of my report to counsel in the       14:09

25  course of preparing the report?  Is that the          14:09

Page 148

1  question?                                          14:09

2      Q.    Whether or not you provided drafts      14:09

3  of your Reply Declaration to counsel.              14:09

4      A.    Yes, I did.                              14:09

5      Q.    And another yes or no question.  Did     14:09

6  Apple's counsel provide you with comments on       14:09

7  your Reply Declaration?                            14:09

8      A.    That was a long time ago.  It's          14:09

9  possible they gave me some comments.  I don't      14:09

10 remember, to be honest.  I think I wrote it --     14:09

11 I don't remember the details.  I think I wrote     14:10

12 it with a bit of a deadline, so I don't            14:10

13 remember -- I don't remember whether I did, but    14:10

14 I might have gotten comments.                       14:10

15     Q.    Do you understand that this was          14:10

16 Apple's attempt to ban particular Samsung          14:10

17 products from entering the United States?  Is      14:10

18 that right?                                         14:10

19     A.    I don't have legal training, but my      14:10

20 understanding was that was the point of the        14:10

21 preliminary injunction, yes.                        14:10

22     Q.    I want to go back to the claim for a     14:10

23 second.  And if you could look at the '647         14:10

24 patent, in particular Claim 1.  And you see the    14:10

25 analyzer server claim limitation?                   14:10

Highly Confidential

Page 149

1    A.    Yes.                                    14:10

2    Q.    You see where it says "analyzer        14:10

3  server for detecting structures in the data and  14:10

4  for linking actions to the detected            14:10

5  structures"?  Do you see that?                 14:11

6    A.    Yes, I do.                             14:11

7    Q.    So it's your understanding that in     14:11

8  order for a system to infringe Claim 1, there   14:11

9  must be an analyzer server that detects         14:11

10  structures in the data and then links actions  14:11

11  to the detected structures; correct?          14:11

12    A.    Yes, that's correct.                  14:11

13    Q.    So if there was not a direct          14:11

14  detected structure, then it wouldn't infringe  14:11

15  Claim 1?                                       14:11

16              MR. VINCENT:  Objection,          14:11

17  vague.                                         14:11

18    A.    Didn't say that.  I mean, this is     14:11

19  about a system.  If the system does not contain 14:11

20  an analyzer server for detecting structures and 14:11

21  the data for linking actions to the data, then 14:11

22  it would not infringe Claim 1.  But as I       14:11

23  recall, the statement of phrasing of the       14:11

24  question, you said if there was not a detected 14:11

25  structure, then it would not infringe.  I would 14:11

Highly Confidential

Page 150

1   disagree with that, because an infringing          14:12

2   system could be given a document that has no        14:12

3   structures in it, in which case there would be      14:12

4   no structures to detect.                            14:12

5       Q.    Is it your opinion that the analyzer      14:12

6   server must detect multiple structures?             14:12

7       A.    I believe I just answered that, so        14:12

8   I'll try again.  So the analyzer server must --     14:12

9   so the analyzer server must be capable of           14:12

10  detecting multiple structures, if the multiple      14:12

11  structures exist in the data.  If it is given       14:12

12  data that doesn't have any structures in it,        14:12

13  then it won't be able to detect any structures.     14:12

14  But it must be able to detect structures in the     14:12

15  data and also link actions to the detected          14:12

16  structures.                                         14:12

17      Q.    Assuming there are multiple               14:12

18  structures in the data, you agree that the          14:13

19  selection of a detected structure, as written       14:13

20  in Claim 1, necessarily requires that               14:13

21  particular detected structure can be chosen         14:13

22  from a set of detected structures; correct?         14:13

23              MR. VINCENT:  Objection.                14:13

24  Vague, asked and answered.                          14:13

25      A.    So that claim element requires the        14:13

Page 151

| | | |
|---|---|---|
| 1 | selection of a detected structure.  So I'm not | 14:13 |
| 2 | sure if particular has a specific meaning.  But | 14:13 |
| 3 | it must be able to select a detected structure. | 14:13 |
| 4 | That claim element does not say from a set of | 14:13 |
| 5 | detected structures.  It says that you have to | 14:13 |
| 6 | be able to select a detected structure. | 14:13 |
| 7 |     Q.    Are you finished? | 14:14 |
| 8 |     A.    Yes. | 14:14 |
| 9 |     Q.    So let me repeat the question. | 14:14 |
| 10 | Assuming there are multiple structures in the | 14:14 |
| 11 | document, you'll agree that the selection of a | 14:14 |
| 12 | detected structure as written in Claim 1 | 14:14 |
| 13 | necessarily requires that a particular detected | 14:14 |
| 14 | structure can be chosen from a set of detected | 14:14 |
| 15 | structures; right? | 14:14 |
| 16 |       MR. VINCENT:  Asked and | 14:14 |
| 17 | answered. | 14:14 |
| 18 |     A.    No.  I disagree with that.  Because | 14:14 |
| 19 | the part that you added was you said in the | 14:14 |
| 20 | beginning if your question, you said there are | 14:14 |
| 21 | multiple structures.  That's fine.  That's part | 14:14 |
| 22 | of the assumption of your scenario.  And you | 14:14 |
| 23 | said it requires it to detect -- sorry -- | 14:14 |
| 24 | select a detected structure from a set of, and | 14:14 |
| 25 | you said detected structures.  But, actually, | 14:14 |

Highly Confidential

Page 152

1    it would just require the detection -- sorry.    14:14

2    It would require the selection of a detected    14:14

3    structure from the structures.    14:14

4         The claim language does not require    14:14

5    that all of the structures be detected before    14:15

6    the user interface enables the user to select a    14:15

7    detected structure.    14:15

18        Q.    You understand that it was after you    14:17

19    submitted your Reply Declaration; correct?    14:17

20        A.    I don't remember if it was before or    14:17

21    after.  It may have been after.  I don't    14:17

22    remember when it was.    14:17

23        Q.    You understand that Jelly Bean was    14:17

24    not an issue in the PI stage of this case;    14:17

25    correct?    14:17

Highly Confidential

Page 153

1    A.    I'd have to -- that may be true.      14:17
2  I'd have to look through the document to       14:17
3  confirm that.  But I don't remember something   14:17
4  to the contrary.                               14:18
5    Q.    Let's go back -- let's go back again   14:18
6  to the claim language, and let's look at the   14:18
7  user interface connotation again.  You agree   14:18
8  again that Claim 1 cites a user interface      14:18
9  enabling the selection of a detected structure 14:18
10 linked action; right?                          14:18
11   A.    Yes, it says that.                      14:18
12   Q.    Now, that claim language, the user     14:18
13 interface enabling the selection of a detected 14:18
14 structure, requires the user interface to      14:18
15 enable selection of a structure by the user    14:18
16 after the structure has already been detected;  14:18
17 correct?                                       14:18
18   A.    It does say selection of the          14:18
19 detected structure, so the structure that      14:18
20 you're selecting has been detected.            14:18
21   Q.    So you're saying, yes, you agree      14:19
22 with what I just said?                         14:19
23   A.    The selection -- I think that I       14:19
24 agree with what you said.  I'm trying to       14:19
25 remember if I remember the question precisely. 14:19

Highly Confidential

Page 154

1    Q.    I can repeat it.                        14:19

2    A.    That would be great.                    14:19

3    Q.    The claim language of Claim 1, the      14:19

4  user interface enabling the selection of a     14:19

5  detected structure, requires the user interface 14:19

6  to enable selection of a structure by the user  14:19

7  after the structure has already been detected;  14:19

8  correct?                                         14:19

9    A.    Yes.  The selection of a detected       14:19

10 structure means that the structure has been     14:19

11 detected at some point.  By the time that the   14:19

12 user is selecting it -- in the selection        14:19

13 process, the structure has to be detected.  The 14:19

14 structure can't be detected after it's selected 14:20

15 somehow.  It has to be detected prior to         14:20

16 selection.  That's correct.                      14:20

17   Q.    So the user must be able to pick or     14:20

18 choose a detected structure after the system    14:20

19 identifies such structures for the user;        14:20

20 correct?                                         14:20

21         MR. VINCENT:  Objection,                14:20

22 vague.                                           14:20

23   A.    No.  I disagree.  As we discussed       14:20

24 earlier, you said that the system has already   14:20

25 identified such structures to the user.  And    14:21

Highly Confidential

Page 155

1   these structures, that would correspond to, in        14:21

2   my opinion, the scenario where you're                 14:21

3   highlighting structures, I mean, in the case          14:21

4   where you're highlighting the structures before       14:21

5   selection.  And that to implement that, you           14:21

6   would need to have detected the structures that       14:21

7   you're going to highlight.                            14:21

8           But Claim 1, since it doesn't                 14:21

9   require the highlighting, it's possible that          14:21

10  the system has not detected the structures            14:21

11  ahead of time, the set of structures.                 14:21

12      Q.    So you're saying the plain language         14:21

13  of Claim 1 does not require that?                     14:21

14      A.    Require what?                               14:21

15      Q.    What you just said.                         14:21

16              MR. VINCENT:  Objection.                  14:21

17      A.    Can you repeat what you just said?          14:21

18      Q.    Sure.  User must be able to pick or         14:21

19  choose a detected structure after the system          14:21

20  identifies such structures for the user.              14:21

21      A.    I disagree with that wording, as            14:21

22  just said, because you just said after the            14:21

23  system identifies such structures for the user        14:21

24  and there is not a requirement that has               14:21

25  identified such structures for the user.  If          14:22

Highly Confidential

Page 156

1    the system does not have any highlighting, in      14:22

2    my opinion, they have not been identified for      14:22

3    the user.                                          14:22

4        Q.    So let's go to your Reply               14:22

5    Declaration again.  And at this time if you can    14:22

6    refer to Page 86.                                  14:22

7        A.    This is from the preliminary            14:22

8    injunction?                                        14:22

9        Q.    Yes.  The same document.  I believe     14:22

10   it's Exhibit 16.  And do you see that on           14:22

11   Page 86 this is in reference to something          14:22

12   called Pandit?  Do you see that?                   14:23

13       A.    I do.                                    14:23

14       Q.    Do you recall that Pandit was a         14:23

15   prior art reference that was raised in the PI      14:23

16   stage?  Is that right?                             14:23

17       A.    That may be true.  It was a long        14:23

18   time ago, so I don't remember anything to the      14:23

19   contrary.                                          14:23

20       Q.    Okay.  You see on Line 4 on Page 86     14:23

21   refers to the same user interface limitation,      14:23

22   user interface enabling a selection of a           14:23

23   structure in a linked action?  Do you see that?    14:19

24       A.    I do.                                    14:23

25       Q.    In Paragraph 216 it says, "Pandit       14:23

Highly Confidential

Page 157

1    does not disclose a user interface enabling the    14:23

2    selection" --

3                    THE COURT REPORTER:  I'm

4    sorry.  You're going to have to speak up.

5    Pandit does not --

6                    MR. ERWINE:  Is it that you're

7    not hearing me?

8                    THE COURT REPORTER:  I'm

9    not hearing you.  Pandit does not --

10                   MR. ERWINE:  Pandit does          14:23

11   not -- is it the mic or just me?                  14:23

12                   THE COURT REPORTER:  I don't       14:23

13   have the mic.  So it's you.                       14:23

14                   MR. ERWINE:  All right.            14:23

15   BY MR. ERWINE:                                    14:23

16       Q.    "Pandit does not disclose a user        14:23

17   interface enabling the selection of the           14:23

18   detected structure in the linked action."         14:23

19       A.    Yes, I see that.                        14:23

20       Q.    And you understand that in this         14:23

21   Reply Declaration you're distinguishing Pandit    14:23

22   from Claim 1 of the '647 patent?                  14:24

23       A.    Yes.                                     14:24

24       Q.    And then you see that in the next       14:24

25   paragraph it says, "First, Pandit does not        14:24

Highly Confidential

Page 158

1    disclose this element of Claim 1 for at least        14:24
2    the reason that it does not detect structures         14:24
3    as explained above"?                                  14:24
4        A.    I see that.                                  14:24
5        Q.    And then you see "Pandit also does          14:24
6    not disclose user interface program routines          14:24
7    enabling the selection of the detected                14:24
8    structure."  Do you see that?                         14:24
9        A.    Yes, I do.                                   14:24
10       Q.    And then the next sentence says,            14:24
11   "The plain and ordinary meaning of," quote, "a        14:24
12   user interface enabling the selection of a            14:24
13   detected structure requires the user interface        14:24
14   to enable selection of a structure by the user        14:24
15   after the structure has already been detected."       14:24
16   Do you see that?                                       14:24
17       A.    I do.                                        14:24
18       Q.    And you agree with that?                     14:24
19       A.    Yes.  That's what I've been --              14:24
20       Q.    And then later on it says -- and I          14:24
21   can read the whole, or if you'd like to read          14:24
22   the whole paragraph.  But it says, "This              14:24
23   argument makes no sense in view of the plain          14:24
24   language of Claim 1, which, as explained,             14:24
25   requires that the user be able to pick or             14:25

Highly Confidential

Page 159

1    choose a detected structure after the system        14:25
2    identifies such structures for the user."  Do       14:25
3    you see that?                                        14:25
4         A.    I see that.                               14:25
5         Q.    And you agree with that statement?        14:25
6         A.    Yes.  So it says identify such            14:25
7    structures for the user, and it's maybe a            14:25
8    subtle thing, but in the question a minute ago,      14:25
9    I thought you said identified the structures to      14:25
10   the user.  I may have switched the for and to,       14:25
11   if you were saying for the user.                     14:25
12         But this -- it needs to detect a               14:25
13   structure that's selected before it's chosen.        14:25
14   But I'd say identifying something to the user,       14:26
15   I interpreted that to be conveying information       14:26
16   to the user visually through highlighting.  And     14:26
17   identifying such structures for the user --          14:26
18   again, I don't remember the exact, if you said       14:26
19   for or to before, but I think what I meant here      14:26
20   was the fact this was just essentially a             14:26
21   redundant way of saying it was detected.             14:26
22         So I think the gist of what I was              14:26
23   saying here is that in order to select a             14:26
24   detected structure, that structure has to be         14:26
25   detected prior to you selecting that structure.      14:26

Highly Confidential

Page 160

| | | |
|---|---|---|
| 1 | Q.    And what I said was a user must be | 14:26 |
| 2 | able to pick or choose a detected structure | 14:26 |
| 3 | after the system identifies such structures for | 14:26 |
| 4 | the user.  Correct? | 14:26 |
| 5 | A.    You're asking me what question you | 14:26 |
| 6 | asked me before? | 14:27 |
| 7 | Q.    Yes. | 14:27 |
| 8 | A.    Well, I don't remember whether you | 14:27 |
| 9 | said for the user or to the user.  I thought I | 14:27 |
| 10 | heard to the user.  So if you said for the user | 14:27 |
| 11 | before, then I misheard. | 14:27 |
| 12 | Q.    I'll repeat the question forgetting | 14:27 |
| 13 | what I said before.  A user must be able to | 14:27 |
| 14 | pick or choose a detected structure after the | 14:27 |
| 15 | system identifies such structures for the user; | 14:27 |
| 16 | correct? | 14:27 |
| 17 | MR. VINCENT:  Objection, asked | 14:27 |
| 18 | and answered. | 14:27 |
| 19 | A.    That's the opinion that I wrote | 14:27 |
| 20 | here, and what I meant by identifies such | 14:27 |
| 21 | structures for the user was essentially just | 14:27 |
| 22 | redundantly me saying detected that structure | 14:27 |
| 23 | that the user had chosen. | 14:27 |
| 24 | When you asked the question before, | 14:27 |
| 25 | I thought I heard identified such structures to | 14:27 |

Highly Confidential

Page 161

| | | |
|---|---|---|
| 1 | the user, which is why I disagreed with that | 14:27 |
| 2 | statement, whatever the question was earlier, | 14:27 |
| 3 | because I thought that was suggesting | 14:27 |
| 4 | highlighting, and Claim 1 does not require | 14:27 |
| 5 | highlighting. | 14:28 |
| 6 | Q.   So now the way that I've expressed | 14:28 |
| 7 | it, where I said a user must be able to pick or | 14:28 |
| 8 | choose a detected structure after the system | 14:28 |
| 9 | identifies such structures for the user, that | 14:28 |
| 10 | statement is correct; right? | 14:28 |
| 11 | MR. VINCENT:  Asked and | 14:28 |
| 12 | answered. | 14:28 |
| 13 | A.   Did something change between this | 14:28 |
| 14 | question and the previous time you asked it? | 14:28 |
| 15 | Or am I missing -- | 14:28 |
| 16 | Q.   All I'm asking for is a | 14:28 |
| 17 | confirmation.  I've asked you many times for a | 14:28 |
| 18 | yes or no question, so I'll ask you again for a | 14:28 |
| 19 | yes or no question.  I'll repeat the statement. | 14:28 |
| 20 | I'm asking for a yes or no.  Do you agree, a | 14:28 |
| 21 | user must be able to pick or choose a detected | 14:28 |
| 22 | structure after the system identifies such | 14:28 |
| 23 | structures for the user?  Correct. | 14:28 |
| 24 | MR. VINCENT:  Same objection. | 14:28 |
| 25 | A.   That's what I've written here, but | 14:28 |

Highly Confidential

Page 162

| | | |
|---|---|---|
| 1 | as I said, what I meant by identifies such | 14:28 |
| 2 | structures for the user was I was just | 14:28 |
| 3 | referring to detecting the structure.  And when | 14:28 |
| 4 | you posed the question earlier, I thought I | 14:28 |
| 5 | heard you say identifies such structures to the | 14:29 |
| 6 | user, and I interpreted that to mean | 14:29 |
| 7 | highlighting, which is why I disagreed with | 14:29 |
| 8 | that. | 14:29 |
| 9 | Q.   But now you agree; correct? | 14:29 |
| 10 | MR. VINCENT:  Same objection. | 14:29 |
| 11 | A.   So the phrase that you gave me is | 14:29 |
| 12 | what I wrote here, and as I said, what I was | 14:29 |
| 13 | referring to was the detection of the structure | 14:29 |
| 14 | that was selected being selected, and that's | 14:29 |
| 15 | what I meant by identify such structures for | 14:29 |
| 16 | the user.  I thought I heard you say identified | 14:29 |
| 17 | such structures to the user, when you asked me | 14:29 |
| 18 | the question before, which is why I disagreed | 14:29 |
| 19 | with it before. | 14:29 |
| 20 | Q.   And I've now changed it to for the | 14:29 |
| 21 | user.  And with that change do you now agree? | 14:29 |
| 22 | A.   I agree that is the opinion that I | 14:29 |
| 23 | wrote here, and I agree with that opinion.  And | 14:29 |
| 24 | as I said, the reason why I said identifies | 14:29 |
| 25 | such structures for the user is that I was | 14:30 |

Highly Confidential

Page 163

1   referring to the detection of the structure          14:30

2   prior to selection.                                   14:30

3            And when I heard you ask the                 14:30

4   question before, I thought you said to the            14:30

5   user, and that to me would suggest highlighting       14:30

6   it.  And that's why I disagreed with the              14:30

7   statement before.                                     14:30

8       Q.   So now that I've changed it from to          14:30

9   the user to for the user, do you agree?               14:30

10              MR. VINCENT:  Asked and                    14:30

11  answered.                                             14:30

12      Q.   Yes or no?                                    14:30

13              MR. VINCENT:  Asked and                    14:30

14  answered.                                             14:30

15      A.   Let's see.  This is the fifth time.          14:30

16  I will give the answer again.  So my answer is        14:30

17  that statement is the statement that I have in        14:30

18  my report, and I agree with that statement,           14:30

19  where what I meant by identifies such                 14:30

20  structures for the user is simply that that           14:30

21  structure that's being selected was detected          14:30

22  before it was selected.  And when you asked the       14:30

23  question earlier, I thought you said identifies       14:30

24  such structures to the user, which is why I           14:30

25  disagreed, because I thought that implied             14:31

Highly Confidential

Page 164

| | | |
|---|---|---|
| 1 | highlighting, which is not a requirement of | 14:31 |
| 2 | Claim 1. | 14:31 |
| 3 | Q.   So let's turn to -- before we go | 14:31 |
| 4 | there, so if a Samsung phone requires that the | 14:31 |
| 5 | user pick or choose a detected structure after | 14:31 |
| 6 | the system identifies such structures for the | 14:31 |
| 7 | user, it does not infringe Claim 1; correct? | 14:31 |
| 8 | MR. VINCENT:  Objection, | 14:31 |
| 9 | vague. | 14:31 |
| 10 | A.   If a product -- | 14:31 |
| 11 | Q.   Actually, let me -- I apologize. | 14:31 |
| 12 | Strike that question.  I'll, hopefully, phrase | 14:31 |
| 13 | it a little bit better.  So if a Samsung | 14:31 |
| 14 | accused phone requires that the user pick and | 14:32 |
| 15 | choose a detected structure before the system | 14:32 |
| 16 | identifies such structure, it does not infringe | 14:32 |
| 17 | Claim 1; correct? | 14:32 |
| 18 | MR. VINCENT:  Objection, | 14:32 |
| 19 | vague. | 14:32 |
| 20 | A.   In your question you said they're | 14:32 |
| 21 | picking a detected structure.  If it's a | 14:32 |
| 22 | detected structure, then it has to have been | 14:32 |
| 23 | detected when the user is selecting it.  And I | 14:32 |
| 24 | think there was a part at the end of your | 14:32 |
| 25 | question that I may not have caught every word, | 14:32 |

Page 165

1    and if you could repeat it.                    14:32

2         Q.    Yes, I can repeat the question.     14:32

3         A.    That would be great.                14:32

4         Q.    If a Samsung accused phone requires 14:32

5    that the user pick and choose a detected       14:32

6    structure before the system identifies such    14:32

7    structure, that does not infringe Claim 1;     14:33

8    right?                                          14:33

9              MR. VINCENT:  Objection,             14:33

10   vague.                                          14:33

11        A.    I'm not exactly sure what you mean   14:33

12   by identifies such structure.  So my guess is  14:33

13   that that would mean detects such a structure. 14:33

14   So in order to detect a structure, the         14:33

15   structure has to have been detected.           14:33

16             So my guess is that what you meant   14:33

17   when you said identify was detected, so it     14:33

18   clearly would have to have been detected in    14:33

19   order for you to be selecting something that   14:33

20   was already detected.                          14:33

21        Q.    I was using your words.             14:33

22        A.    Okay.                               14:33

23        Q.    So do you not understand what your  14:33

24   words were when you said identified?           14:33

25             MR. VINCENT:  Objection.             14:33

Highly Confidential

Page 166

1    Argumentative, misstates the document,              14:33

2    misstates the testimony.                            14:33

3         A.    You were using -- which words were       14:33

4    you referring to again?                             14:33

5         Q.    I was referring to that sentence on      14:33

6    217.  It says, "This argument make no sense in      14:33

7    view of the plain language of Claim 1 which, as     14:34

8    explained, requires that the user be able to        14:34

9    pick and choose detected structure after the        14:34

10   system identifies such structure for the user.      14:34

11        A.    Yes.  So as I just answered, I said      14:34

12   that assuming that identifies is the same as        14:34

13   detected, and the way -- when I wrote this,         14:34

14   that's what I meant.  So I really should have       14:34

15   said the system detects such structures.            14:34

16        The more precise wording would have            14:34

17   been required the user to be able to pick or        14:34

18   choose the structure after the system detects       14:34

19   such a structure.  I said identifies.  I meant      14:34

20   it to be the equivalent of detect.  And that's      14:34

21   what I believe I just said a minute ago in my       14:34

22   answer.  In that case, yes, I agree with the        14:34

23   answer I gave a minute ago, and I agree with        14:34

24   the statement.                                      14:34

25        Q.    That's a very different statement        14:34

Page 167

1    than what's written here.  So are you changing      14:34

2    your opinion again for this paragraph?               14:35

3          A.    I haven't changed my opinion for         14:35

4    this paragraph.                                       14:35

5          Q.    You're saying that the word detects      14:35

6    and the word identifies mean the same thing?         14:35

7                MR. VINCENT:  Objection,                  14:35

8    misstates testimony.                                  14:35

9          A.    I think I said just a minute ago          14:35

10   that that was not necessarily the case.               14:35

11   Detects has a specific meaning in the context         14:35

12   of this patent.  And when I wrote this, I may         14:35

13   have been just attempting to not keep reusing         14:35

14   the same word.  I probably -- I should have           14:35

15   used the word detects instead of identifies to        14:35

16   be more precise, but what I wrote is not wrong,       14:35

17   given that that's what I meant.                       14:35

18                I perhaps could have been a little       14:35

19   bit more precise, but I don't think that this         14:35

20   statement is incorrect.  In order for you to          14:35

21   select a detected structure, that systems that        14:35

22   have detected that structure, which is what I         14:35

23   meant when I wrote the system identifies such         14:35

24   structures for the user.  I meant that it             14:36

25   detected the structure.                               14:36

Highly Confidential

Page 168

1    Q.    That's not what you said; right?      14:36

2    You said identifies, not detects.           14:36

3              MR. VINCENT:  Objection, asked     14:36

4    and answered.                                14:36

5    A.    The wording says identifies here,      14:36

6    and as I said, I could have said that more   14:36

7    precisely.  I don't write with perfect       14:36

8    precision a hundred percent of the time.  I  14:36

9    strive to.  But that's what I intended when I 14:36

10   wrote identifies.  I meant for that to be     14:36

11   synonymous with detected, but I could have    14:36

12   written that more precisely.                  14:36

13   Q.    Well, in fact, you testified earlier    14:36

14   that under Claim 1 a structure could be       14:36

15   detected but not identified to the user; right? 14:36

16   A.    Identified to the user.  So that we     14:36

17   get back to that again.  So identified to the 14:36

18   user.                                         14:36

19   Q.    I'll rephrase it.  Identified for       14:36

20   the user, to use your language, identified for 14:36

21   the user.                                     14:37

22              MR. VINCENT:  What is the          14:37

23   question again?                               14:37

24   Q.    What I am saying is that you're now     14:37

25   saying that to be more precise in your        14:37

Highly Confidential

Page 169

1  declaration, you would have used the word        14:37

2  detects here instead of identifies.  Is that      14:37

3  right?                                            14:37

4      A.    I think it would have been more         14:37

5  precise to have said this argument made no        14:37

6  sense in view of the plain language of the        14:37

7  Claim 1 which, as explained, requires that the    14:37

8  user be able to pick or choose a detected         14:37

9  structure after the system detects that           14:37

10 structure.  And what I said was identifies such   14:37

11 structures for the user, and that's what I        14:37

12 meant, was detect the structure.                  14:37

13          And earlier I thought I heard, and       14:37

14 maybe you said the word for, but I heard to.      14:37

15 When I hear someone say identify structures to    14:37

16 the user, that takes on an entirely different     14:37

17 meaning.  It's not what I wrote here.  It's       14:37

18 what I heard and perhaps misheard in the          14:37

19 earlier question.  And that would be              14:38

20 something -- I would disagree with identifying    14:38

21 it to the user, which I would think would mean    14:38

22 highlighting, and that's not what I meant here.   14:38

23     Q.    So you're saying that if it says the    14:38

24 system identifies such structures for the user,   14:38

25 that's the same as the system detecting such      14:38

Highly Confidential

Page 170

1    structures for the user?                          14:38

2                    MR. VINCENT:  Objection.          14:38

3    Vague, asked and answered.                        14:38

4        A.    Detecting has a fairly specific         14:38

5    meaning in the context of the '647 patent.        14:38

6    Identifies is a looser term.  And I should have   14:38

7    written detects here rather than identifies.      14:38

8    I'm not going to equate identifies with detect.   14:38

9        Q.    So you're saying this is wrong?         14:38

10                   MR. VINCENT:  Objection.           14:38

11   Misstates testimony, asked and answered.          14:38

12       A.    No.  I'm not saying that this --        14:38

13   sorry.                                            14:38

14                   MR. VINCENT:  Go ahead.            14:38

15       A.    No.  I disagree.  I'm not saying         14:38

16   that this is wrong.  I'm saying that I could       14:38

17   have worded this more precisely.  Instead of       14:38

18   saying identifies, which could be interpreted      14:38

19   more loosely than detected, I should have said     14:39

20   detected, instead of using the word identifies.    14:39

21       Q.    So let me ask it this way:  If a         14:39

22   user mainly selects text before the accused        14:39

23   system attempts to recognize that text, it         14:39

24   would be reversing the steps disclosed in the      14:39

25   '647 patent; right?                                14:39

Highly Confidential

Page 171

1    A.    There were a lot of words that are        14:39

2    important in there.  Can the question be        14:39

3    repeated, please.                               14:39

4    Q.    I can say it again.  If a user            14:39

5    manually selects text before the accused system 14:39

6    attempts to recognize that text, it would be    14:39

7    reversing the steps disclosed in the '647       14:39

8    patent; right?                                  14:40

9    A.    The '647 patent does not -- okay.         14:40

10   Claim 1 does not require -- does not really     14:40

11   speak -- it describes functionalities.  There   14:40

12   are some orderings that are implied, but it     14:40

13   does not discuss many orderings.                14:40

14        The selection of a detected               14:40

15   structure means that the structure has to have  14:40

16   been detected when it is selected, prior to     14:40

17   being selected.  But regarding whether -- in    14:40

18   the case where there's no highlighting of -- so 14:40

19   for Claim 1, where there is no highlighting,    14:40

20   the user is going to select text.               14:40

21        And in terms of the precise timing        14:41

22   of when detection occurs, as long as that       14:41

23   satisfies the requirement that the selection    14:41

24   occurs after detection occurs, then it would    14:41

25   satisfy Claim 1.                                14:41

Highly Confidential

Page 172

1    Q.    Okay.  Let me restate it, because I    14:41
2    didn't understand your answer, and again it's a    14:41
3    yes, no question.  If a user manually selects    14:41
4    text before the accused system attempts to    14:41
5    recognize that text, that would be reversing    14:41
6    the steps disclosed in the '647 patent;    14:41
7    correct?    14:41
8            MR. VINCENT:  Asked and    14:41
9    answered.    14:41
10    A.    So if the user manually selects text    14:42
11    before it attempts to recognize the text, that    14:42
12    does sound like it would be difficult for there    14:42
13    to be detection prior to selection.    14:42
14            So I'd have to think more about the    14:42
15    specifics of timing, but that sounds -- there    14:42
16    were also some words in there that -- I think    14:42
17    you said recognize, attempting to recognize the    14:42
18    text, and I think it would need to say detect    14:42
19    the text.    14:42
20            But as it's worded, it would be    14:42
21    challenging for that to line up with having    14:42
22    detected a structure before it was selected.    14:42
23    But I'd have to think -- like I said, some of    14:42
24    the words that were in that statement perhaps    14:42
25    could have been a little more precise for me to    14:42

Highly Confidential

Page 173

1   understand the scenario exactly.  But it would      14:43

2   certainly be difficult for that to aline with       14:43

3   the Claim 1.                                         14:43

4       Q.    In fact, wouldn't it be that that         14:43

5   reversal of steps would be materially and           14:43

6   critically significant in terms of its              14:43

7   difference from Claim 1?                             14:43

8               MR. ERWINE:  Objection, vague.          14:43

9       A.    Well, Claim 1 doesn't really talk         14:43

10  about ordering.  It says, for example, "An          14:43

11  analyzer server detects structures in the data      14:43

12  and links actions to the detected structure;        14:43

13  so --                                               14:43

14              THE COURT REPORTER:  An                 14:43

15  analyzer server --                                  14:43

16      A.    "Detects structures in the data and       14:43

17  links actions" -- well, I'm rephrasing              14:43

18  slightly.  "An analyzer server for detecting        14:43

19  structures in the data and for linking actions      14:43

20  to the detected structures."  So there's an         14:43

21  ordering there which is -- you can't link the       14:43

22  action to the detected structure before it's        14:43

23  detected.  I would think that that would make       14:44

24  sense.                                              14:44

25              And, second, it says "A user            14:44

Highly Confidential

Page 174

1    interface enabling the selection of a detected    14:44

2    structure."  So the structure needs to be        14:44

3    detected before you can select the detected       14:44

4    structure.  So those -- as long as                14:44

5    something -- those are the orderings that I see    14:44

6    in Claim 1.                                        14:44

7        Q.    So selection before detection would     14:44

8    be a reversal of the steps in Claim 1; right?      14:44

9        A.    Selection before detection of the       14:44

10   particular structure that the user is trying to   14:44

11   select would appear to be a reversal, yes.  At    14:44

12   first glance that would appear to be the case.    14:44

13   I could look at a specific, more detailed         14:45

14   example to think more about that.                 14:45

15           But you have to be selecting a            14:45

16   detected structure.  So if the thing you're       14:45

17   selecting hasn't been detected yet, then if       14:45

18   it's not a detected structure yet, then you're    14:45

19   not selecting a detected structure.               14:45

20       Q.    And so if in the accused Samsung        14:45

21   phones a user manually selects text before the    14:45

22   Samsung phone attempts to detect that text, it    14:45

23   would not infringe; correct?                      14:45

24               MR. VINCENT:  Objection,              14:45

25   vague.                                            14:45

Highly Confidential

Page 175

1    A.    If the user manually selects text,    14:45
2    the user can use their mouse and select text at    14:45
3    any time.  And that could be before they, for    14:45
4    example, press the button that says please go    14:45
5    to text structures in this document.    14:45
6         So I would not want to say that as a    14:46
7    blanket statement the act of manually selecting    14:46
8    text somewhere before the system has detected    14:46
9    structures would mean necessarily that this    14:46
10   doesn't infringe the patent.    14:46
11   Q.    You referenced pressing a button    14:46
12   that says please go to detect structures;    14:46
13   right?    14:46
14   A.    I'm referring to the icon in    14:46
15   Figure 5.    14:46
16   Q.    Are you aware of any such icon in    14:46
17   any of the accused devices?    14:46
18   A.    In the accused devices, no, I am not    14:46
19   aware of such an icon in the accused devices.    14:46
20   Q.    So putting that into perspective,    14:46
21   realizing that there is no such icon, then if    14:46
22   in the accused phones the user manually selects    14:47
23   text before the phone attempts to detect that    14:47
24   text, it would not infringe Claim 1; correct?    14:47
25            MR. VINCENT:  Objection,    14:47

Highly Confidential

Page 176

| | | |
|---|---|---|
| 1 | vague. | 14:47 |
| 2 | A.    Well, as I said, this is a | 14:47 |
| 3 | hypothetical scenario.  So the case that I'm -- | 14:47 |
| 4 | so strictly speaking, I could be -- I could | 14:47 |
| 5 | have an e-mail message or a document that I'm | 14:47 |
| 6 | looking at somewhere, and I could highlight | 14:47 |
| 7 | some text in it where whatever thing I'm | 14:47 |
| 8 | viewing it in isn't trying to detect | 14:47 |
| 9 | structures, and then I could look at it in | 14:48 |
| 10 | something that's detecting structures. | 14:48 |
| 11 | So, strictly speaking, I have | 14:48 |
| 12 | highlighted text before the system has | 14:48 |
| 13 | attempted to detect it as a structure.  So I | 14:48 |
| 14 | wouldn't say that just having detected it at | 14:48 |
| 15 | some point in some other context upon the | 14:48 |
| 16 | system would mean that it wouldn't be | 14:48 |
| 17 | infringing Claim 1. | 14:48 |
| 18 | Q.    So now I'm confused.  Before I | 14:48 |
| 19 | thought we agreed that if a user mainly selects | 14:48 |
| 20 | text before an accused system attempts to | 14:48 |
| 21 | detect that text, that it would be reversing | 14:48 |
| 22 | the steps of Claim 1 in the '647 patent. | 14:48 |
| 23 | A.    So it's difficult to respond to | 14:48 |
| 24 | that, because there are parts of the scenario | 14:48 |
| 25 | that are not filled in.  Just as you phrased | 14:48 |

Highly Confidential

Page 177

| | | |
|---|---|---|
| 1 | it, that could mean -- a number of different | 14:48 |
| 2 | scenarios come to mind, and I could think of | 14:48 |
| 3 | cases where that could potentially not -- it | 14:48 |
| 4 | may or may not be consistent with Claim 1, | 14:49 |
| 5 | so -- but if the example was more precise, I | 14:49 |
| 6 | could speak to it more precisely.  But as I | 14:49 |
| 7 | said, just with that little snippet, there are | 14:49 |
| 8 | many ways to interpret what it means to | 14:49 |
| 9 | manually select text.  Where?  In what | 14:49 |
| 10 | application?  Like how?  That could mean a lot | 14:49 |
| 11 | of different things. | 14:49 |
| 12 | So if we talk about a specific | 14:49 |
| 13 | example, I might be able to give you a more | 14:49 |
| 14 | precise answer.  As a general statement, | 14:49 |
| 15 | though, that statement, I think we need more | 14:49 |
| 16 | context in order to say something as strongly | 14:49 |
| 17 | as does that snippet mean that something does | 14:49 |
| 18 | not infringe Claim 1. | 14:49 |
| 19 | Q.    Well, in the case you described, the | 14:50 |
| 20 | user isn't selecting text; right?  They're just | 14:50 |
| 21 | pointing to the screen? | 14:50 |
| 22 | MR. VINCENT:  Objection, | 14:50 |
| 23 | vague. | 14:50 |
| 24 | A.    Okay.  What I described earlier was | 14:50 |
| 25 | a case where in some context I am looking at, | 14:50 |

Highly Confidential

Page 178

| | | |
|---|---|---|
| 1 | say, an e-mail message or a text message, and | 14:50 |
| 2 | using my mouse or whatever, I have selected | 14:50 |
| 3 | some portion of text. | 14:50 |
| 4 | And then in some context where there | 14:50 |
| 5 | is an analyzer server, some other context, and | 14:50 |
| 6 | then it starts to detect that.  So I was not | 14:50 |
| 7 | simply pointing at the screen.  I was actually, | 14:50 |
| 8 | like, using the mouse to demarcate the | 14:50 |
| 9 | beginning and end of the structure.  That's | 14:50 |
| 10 | what I was referring to before. | 14:50 |
| 11 | Q.   So let me repeat the question in | 14:50 |
| 12 | that context.  So if this user is manually | 14:51 |
| 13 | selecting text, in that fashion, before the | 14:51 |
| 14 | accused system attempts to detect that text, | 14:51 |
| 15 | that would be reversing the steps of Claim 1 in | 14:51 |
| 16 | the '647 patent; right? | 14:51 |
| 17 | MR. VINCENT:  Objection, | 14:51 |
| 18 | vague. | 14:51 |
| 19 | A.   You said in the context of the | 14:51 |
| 20 | example that I just gave? | 14:51 |
| 21 | Q.   Yes. | 14:51 |
| 22 | A.   No, that would not be reversing the | 14:51 |
| 23 | steps.  Because in the example I just gave, I | 14:51 |
| 24 | was talking about two different ways in which I | 14:51 |
| 25 | was viewing a document, one where there wasn't | 14:51 |

Highly Confidential

Page 198

1    mentions things such as phone numbers, e-mail        15:26
2    addresses, and other types of things that are        15:26
3    shown in the examples in Figures 5, 6, and 7.        15:26
4         Q.    But that's a specific requirement         15:26
5    that you've applied to the term structure in         15:26
6    Claim 1, correct, that it must have semantic         15:27
7    significance?                                        15:27
8         A.    Yes.  Significance to the user, yes,      15:27
9    that's correct.                                      15:27
10        Q.    Now, the Claim, Claim 1 in                15:27
11   particular, but claim 1 and its appendix, don't      15:27
12   specify that a structure must have semantic          15:27
13   significance; right?                                 15:27
14        A.    Well, it doesn't say -- the claim --      15:27
15   the claim language just says structure.              15:27
16   Structure could mean a house, structure could        15:27
17   mean a sentence structure.  It could mean a          15:27
18   thousand different things, probably more.  So        15:27
19   in order to know what does structure mean, you       15:27
20   have to go look at the patent specification to       15:27
21   know what that means.                                15:27
22           There's no description in here of            15:27
23   what the structure is in Claim 1.  So you -- in      15:27
24   order to -- that's the reason why, as I              15:27
25   understand, you have to look not just at the         15:27

Highly Confidential

Page 199

1    claim language, you have to look at the patent        15:27

2    specification to understand the meaning of the        15:27

3    claim language in cases like this.                     15:27

4         Q.    So is semantic significance               15:27

5    significant to the user?                               15:28

6                    MR. VINCENT:   Objection.             15:28

7    Vague to the extent it calls for speculation.          15:28

8         Q.    I mean --                                   15:28

9         A.    Well, it means -- it does begin with       15:28

10   things that the user would recognize, so there         15:28

11   has to be some -- it's a category of type of           15:28

12   information.                                            15:28

13            So, for example, the users would              15:28

14   know what a phone number was or they would know        15:28

15   what an e-mail address is.  They wouldn't               15:28

16   know -- yeah, that's -- the examples that are          15:28

17   given here are things that would be meaningful         15:28

18   to a user as a type of category or data.               15:28

19        Q.    So let's go back to the spec, and          15:28

20   the description you referred to says that              15:28

21   structures have semantic significance; right?          15:28

22        A.    Recognizable structures that have          15:28

23   semantic significance, yes, it says that.              15:28

24        Q.    So there must be structures that do        15:29

25   not have semantic significance; correct?               15:29

Highly Confidential

Page 200

1    A.   Well, a house is a structure that        15:29

2    doesn't have -- I mean, the word structure can  15:29

3    mean other things.  In the context of this      15:29

4    patent, it's spelling out what they mean by      15:29

5    structure here.  It's an instance of these       15:29

6    types of patterns.                               15:29

7         They are categories of data, nuggets       15:29

8    that the user would normally want to just        15:29

9    search for in some way in a document, like a     15:29

10   phone number.                                    15:29

11   Q.   Well, the patent spells out a lot           15:29

12   things about structure; right?                   15:29

13        MR. VINCENT:  Objection.                    15:29

14   Vague.                                           15:29

15   A.   Well, a lot of things -- I don't            15:29

16   know -- I mean, it talks about what it is.  It   15:29

17   says it's an instance of a pattern, and it       15:29

18   gives examples of these types of structures.     15:29

19   Q.   Are you saying that anything that's         15:29

20   in the specification must be part of the claim?  15:29

21        MR. VINCENT:  Objection.                    15:30

22   Misstates testimony.                             15:30

23   A.   No.  I think I've very explicitly           15:30

24   said that that's not the case earlier today.     15:30

25   So the claim -- you begin with the claims, and   15:30

Highly Confidential

Page 201

1   where there's ambiguity in what the claim        15:30

2   language means, you look to the patent           15:30

3   specification.                                   15:30

4           And in the case of structure, if you     15:30

5   need to know what structure means, it's such a   15:30

6   generic term, having meaning in many, many       15:30

7   different contexts in the physical world and     15:30

8   society.  So like organizational structure,      15:30

9   like who reports to who, it doesn't mean that    15:30

10  at all.  It means -- it means a specific thing   15:30

11  here, and so that's why we need to look for it   15:30

12  to understand that term.                         15:30

13      Q.   So if we look at the preamble of        15:30

14  Claim 1 that says a computer-based system for    15:30

15  detecting structures and data and performing     15:30

16  actions on detected structures, doesn't that     15:30

17  give you significant context for what a          15:30

18  structure is?                                    15:30

19      A.    Not enough to understand it, no.       15:30

20  Not in my opinion.  I think you need to look to  15:30

21  the patent specification to understand what      15:30

22  that meant.                                      15:31

23      Q.    So that preamble doesn't limit it?     15:31

24  It can still be an organizational structure, a   15:31

25  house in the context of that preamble?           15:31

Highly Confidential

Page 202

1            MR. VINCENT:  Objection.        15:31

2    Vague.                                  15:31

3        A.    Well, it says, "in data," so it has   15:31

4    to be something in data, and it doesn't say   15:31

5    much beyond that.  So there's not really much   15:31

6    of a clue of what they're talking about.   15:31

7            I mean, they could be talking about   15:31

8    visual style of a background of a slide or   15:31

9    something.  It's not -- I mean, that's -- for   15:31

10   example, the border around your slide   15:31

11   presentation, one might call that a structure   15:31

12   in data.  That's not what they're referring to   15:31

13   here, for example.                      15:31

14       Q.    So you're saying that if you read   15:31

15   just the preamble -- actually, if you read the   15:31

16   whole claim -- that there isn't a plain and   15:31

17   ordinary meaning for the word structure?   15:31

18            MR. VINCENT:  Objection.        15:31

19   Misstates testimony.                    15:31

20       A.    I didn't say that.  The meaning of   15:32

21   structure is clear when you read the patent   15:32

22   specification, and that's -- that's my   15:32

23   understanding is that's what you're supposed to   15:32

24   do to understand these kinds of terms.   15:32

25            If they have to embed a complete   15:32

Highly Confidential

Page 203

1   definition of all of these terms into the claim        15:32

2   language, the claims would become unwieldy, I          15:32

3   imagine.  So that's why you can use shorthand          15:32

4   like this, because you can refer to the rest of        15:32

5   the document to understand what it's referring         15:32

6   to.                                                    15:32

7       Q.   So is the claim term structure               15:32

8   limited to items with semantic significance?           15:32

9       A.   In this case, I believe that is what          15:32

10  it's talking about, yes.                               15:32

11      Q.   And it must be a recognizable                 15:32

12  structure?                                             15:32

13      A.   A structure must be recognizable              15:32

14  structure -- yes, it must be recognizable              15:33

15  through some type of pattern such as it                15:33

16  describes here.  Well, right, it refers to             15:33

17  recognizable structures, and they are instances        15:33

18  of patterns, so they are recognizable.                 15:33

19      Q.   Now, in your Rebuttal Report, you             15:33

20  also refer to the '647 prosecution history for         15:33

21  semantic significance; correct?                        15:33

22      A.   Oh, I don't recall.  I may have.  If          15:33

23  you can point me to a part of the report, I'm          15:33

24  happy to look at it.                                   15:33

25      Q.   Sure.  Paragraph 39.                          15:33

Page 204

1    A.    This is of the preliminary objection    15:33
2  or more recent one?                              15:33
3    Q.    More recent one.                         15:33
4    A.    You said Paragraph 39?                   15:34
5    Q.    Uh-huh.                                  15:34
6    A.    Okay.                                    15:34
7    Q.    And it's Paragraph 39 and Paragraph      15:34
8  40 and Paragraph 41.  Do you see that?           15:34
9    A.    Yes.  I'm just reading through it        15:34
10 again here.                                      15:34
11   Q.    So, in your opinion, is this             15:34
12 requirement of semantic significance based on    15:34
13 prosecution history estoppel?                    15:34
14         MR. VINCENT:  Objection to the           15:34
15 extent it calls for a legal conclusion.          15:34
16   A.    I'm sorry, I'm just rereading the        15:34
17 paragraph here.  So can you please repeat the    15:34
18 question?  You mentioned estoppel.               15:35
19   Q.    Yes, yes.                                15:35
20   A.    I don't think I know what that word      15:35
21 means.                                           15:35
22   Q.    Just to clarify, you can turn to         15:35
23 your Opening Report and Paragraph 51 --          15:35
24   A.    Okay.                                    15:35
25   Q.    -- which is Pages 16 and 17.             15:35

Highly Confidential

Page 205

1    A.    Okay.                                    15:35

2    Q.    And you see the second sentence          15:35

3  where it says, for prosecution history to limit  15:35

4  a claim, the applicant must make a clear and      15:35

5  unambiguous disavowal of claim scope?             15:35

6              THE COURT REPORTER:  I'm              15:35

7  sorry, I couldn't hear.  To make a claim, the

8  applicant --

9    Q.    For the prosecution history to limit      15:36

10  a claim, the applicant must make a clear and      15:36

11  unambiguous disavowal of claim scope?             15:36

12    A.    Yes, I see that.                          15:36

13    Q.    And is it your position that the          15:36

14  applicant has made a clear and unambiguous        15:36

15  disavowal of claim scope in the prosecution       15:36

16  history for the term semantic significance?       15:36

17              MR. VINCENT:  Objection to the        15:36

18  extent it calls for a legal conclusion.           15:36

19    A.    Let's see.  I have to spend a little      15:36

20  of my time refreshing my memory on this.  So      15:36

21  we're talking about prosecution history, I        15:36

22  certainly follow that.  But this is in the        15:36

23  context of -- Paragraph 51 is regarding claim     15:36

24  construction, and I have to remember whether      15:36

25  what we're referring to was specifically the      15:36

Highly Confidential

Page 206

1  claim construction or if it was just regarding        15:36

2  the prosecution history.  I think this was            15:36

3  regarding it more generally but --                    15:36

4      Q.   What I'm trying to understand is             15:36

5  you're applying a particular claim construction       15:37

6  for the word structure, and I'm trying to             15:37

7  understand your basis for applying that claim         15:37

8  construction.                                          15:37

9      A.   Well, it certainly begins with the           15:37

10 patent itself.  So my understanding of               15:37

11 structure is not dependent just on the               15:37

12 prosecution history.  It's evident to me from        15:37

13 reading the patent what the structure meant.         15:37

14 And this was also something that was discussed       15:37

15 in the prosecution history as well.                  15:37

16         So that reinforces my understanding          15:37

17 of -- that's additional evidence that my             15:37

18 understanding is correct because of how it was       15:37

19 successfully argued with respect to that             15:37

20 Gerlach reference.                                    15:37

21     Q.   Now, you are aware that there were a         15:37

22 number of claim constructions in the HTC '710        15:37

23 investigation; correct?                               15:37

24     A.   Yes.                                          15:37

25     Q.   And you understand that there was an         15:37

Highly Confidential

Page 207

1    accepted construction for the term structure;      15:37

2    correct?                                           15:38

3         A.    Yes, uh-huh.  I believe so.             15:38

4         Q.    And you understand that Apple agreed    15:38

5    to that structure?                                 15:38

6         A.    Yes.                                     15:38

7         Q.    And you understand that the way that    15:38

8    you're construing structure here is different      15:38

9    than how that was constructed in the HTC '710      15:38

10   investigation; right?                              15:38

11        A.    I disagree with that.                    15:38

12        Q.    You disagree with that.  What's your    15:38

13   understanding -- your understanding is that the    15:38

14   construction from the '710 case included           15:38

15   structures with semantic significance?             15:38

16        A.    It's consistent with that.  It was,     15:38

17   I believe, off the top of my head, it said it's    15:38

18   an instance of a pattern such as a grammar,        15:38

19   regular expression, or a result of string          15:38

20   matching.  But it didn't go into additional        15:38

21   detail about it having semantic significance.      15:38

22             But the types of things described in     15:38

23   the patent such as e-mail addresses, phone         15:39

24   numbers, and so on, those are entirely             15:39

25   consistent with the claim construction of          15:39

Highly Confidential

Page 208

| | | |
|---|---|---|
| 1 | structure in the HTC case, and I don't -- I | 15:39 |
| 2 | agree with that claim construction. | 15:39 |
| 3 | Q.   But there's no mention in that claim | 15:39 |
| 4 | construction of anything with semantic | 15:39 |
| 5 | significance.  Those words don't exist in that | 15:39 |
| 6 | claim construction; correct? | 15:39 |
| 7 | A.   Those words don't exist in the claim | 15:39 |
| 8 | construction, but they exist in the patent. | 15:39 |
| 9 | And in order to understand the full meaning of | 15:39 |
| 10 | what, for example, what those patterns are for, | 15:39 |
| 11 | it says it's an instance of a pattern.  Well, | 15:39 |
| 12 | what is the pattern representing?  The pattern | 15:39 |
| 13 | is representing things that have semantic | 15:39 |
| 14 | significance such as phone numbers, e-mail | 15:39 |
| 15 | addresses, postal addresses. | 15:39 |
| 16 | Q.   But there is no requirement of | 15:39 |
| 17 | semantic significance in that construction; | 15:39 |
| 18 | right? | 15:39 |
| 19 | MR. VINCENT:  Objection. | 15:39 |
| 20 | Asked and answered. | 15:39 |
| 21 | A.   It does not contain those words. | 15:39 |
| 22 | But I think to understand what it means, you | 15:39 |
| 23 | would look to the scope of the patent | 15:39 |
| 24 | specification. | 15:40 |
| 25 | Q.   But you're saying here in this case | 15:40 |

Page 209

1   you're applying a construction for structure          15:40

2   where there is a requirement of semantic              15:40

3   significance; correct?                                15:40

4        A.    No.  I am using the constructions          15:40

5   that I lay out here.  I don't insert my own           15:40

6   construction language.  I mean, the word              15:40

7   construction, I think, has -- my understanding        15:40

8   is it means something very specific.  And I           15:40

9   understand that there's only been one term            15:40

10  that's been -- for which there is claim               15:40

11  construction in this case, which is action            15:40

12  processor.                                            15:40

13            I've used that construction.  I've          15:40

14  also used the other constructions including the       15:40

15  ones I believe from the HTC case and from the         15:40

16  Motorola case, as well.                               15:40

17            So I think I've described the               15:40

18  constructions I'm using, and I didn't represent       15:40

19  semantic significance as being part of a              15:40

20  construction, per se.                                 15:40

21       Q.    You agree, though, that in your            15:41

22  Rebuttal Report you distinguish prior art based       15:41

23  on the fact that they don't detect structures         15:41

24  with semantic significance; correct?                  15:41

25       A.    I think I did refer to that in some        15:41

Highly Confidential

Page 210

| | | |
|---|---|---|
| 1 | cases, yes. | 15:41 |
| 2 | Q.    And so, for example, you | 15:41 |
| 3 | distinguished the Stamps and Koved combination | 15:41 |
| 4 | from the '647 patent, because you say Stamps | 15:41 |
| 5 | and Koved spell-checking functionality involves | 15:41 |
| 6 | locating unrecognizable structures with no | 15:41 |
| 7 | semantic significance; correct? | 15:41 |
| 8 | A.    Among other things, yes, I think | 15:41 |
| 9 | that's something that I said.  Is there a | 15:41 |
| 10 | particular -- can you remind me of where -- | 15:41 |
| 11 | Q.    Yeah.  It's Paragraph 37 in your | 15:41 |
| 12 | Rebuttal Report if you want to confirm that. | 15:41 |
| 13 | A.    Okay. | 15:41 |
| 14 | Q.    And you also agree that you | 15:41 |
| 15 | distinguish other pieces of prior art on this | 15:41 |
| 16 | ground, as well; right? | 15:41 |
| 17 | A.    Potentially.  Off the top of my | 15:41 |
| 18 | head, I don't remember which one specifically, | 15:41 |
| 19 | but that may very well be the case. | 15:42 |
| 20 | Q.    Do you apply that definition of | 15:42 |
| 21 | structure in your Opening Report? | 15:42 |
| 22 | A.    For infringement, yes.  The things | 15:42 |
| 23 | that I identified as being structures for | 15:42 |
| 24 | infringement were things that had semantic | 15:42 |
| 25 | significance. | 15:42 |

Highly Confidential

Page 211

1    Q.    Okay.  Do you discuss that at all in    15:42

2  your Opening Report?                            15:42

3    A.    It's not part of claim construction.    15:42

4  So this falls under the broader category of     15:42

5  just understanding what patent is about.  So if 15:42

6  you want to understand the meaning of a word in 15:42

7  a patent, not everything, I think, has to be    15:42

8  claim constructed necessarily, if there's a     15:42

9  plain and ordinary meaning of it.  And if not,  15:42

10  you look to the specification to understand it. 15:42

11       So the specification speaks to what       15:42

12  structure means in the context of the patent,   15:42

13  so that's just part of understanding the        15:42

14  patent.                                         15:43

15    Q.    Are you aware of anywhere in your       15:43

16  Infringement Report where you rely on a         15:43

17  structure having semantic significance to       15:43

18  establish infringement?                         15:43

19    A.    I don't recall that off the top of      15:43

20  my head.  But I know that the -- all of the     15:43

21  structures that I've identified do have the     15:43

22  semantic significance.  I don't recall whether  15:43

23  I wrote that down anywhere.                      15:43

24    Q.    Now, let's talk about another term      15:43

25  in Claim 1 of the '647.  The term is action.    15:43