# EXHIBIT A-2

Confidential - Attorneys' Eyes Only

Page 1

```
 1            IN UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4   APPLE, INC., a California      )
     corporation,                   )
 5                                  )CASE NO.
                   Plaintiff,       )12-CV-00630-LHK
 6                                  )
     vs.                            )
 7                                  )
     SAMSUNG ELECTRONICS, CO., LTD.,)
 8   a Korean corporation; SAMSUNG  )
     ELECTRONICS AMERICA, INC., a   )
 9   New York corporation; SAMSUNG  )
     TELECOMMUNICATIONS AMERICA,    )
10   LLC, a Delaware limited        )
     liability company,             )
11                                  )
                   Defendants.      )
12   -------------------------------)
13
14
15      ***CONFIDENTIAL - ATTORNEYS' EYES ONLY***
16
17
18
19       CONFIDENTIAL VIDEOTAPED DEPOSITION OF
              JUDITH CHEVALIER, Ph.D.
20              New York, New York
             Thursday, October 3, 2013
21
22
23
24   Reported by:
     JOMANNA DeROSA, CSR
25   JOB NO. 66560
```

Confidential - Attorneys' Eyes Only

## Page 2

```
 1
 2              Thursday, October 3, 2013
 3                     7:30 a.m.
 4
 5
 6        Confidential Videotaped Deposition
 7   of JUDITH CHEVALIER, Ph.D., held at the
 8   offices of Quinn Emanuel Urquhart &
 9   Sullivan, LLP, 51 Madison Avenue, New York,
10   New York, before Jomanna DeRosa, a Certified
11   Shorthand Reporter and Notary Public of the
12   States of New York, New Jersey, California
13   and Arizona.
```

## Page 3

```
 1   APPEARANCES:
 2
 3      GIBSON DUNN & CRUTCHER
 4      Attorneys for Plaintiff
 5         200 Park Avenue
 6         New York, New York 10166
 7      BY:  DANIEL THOMASCH, ESQ.
 8
 9      GIBSON DUNN & CRUTCHER
10      Attorneys for Plaintiff
11         333 South Grand Avenue
12         Los Angeles, California 90071
13      BY:  JORDAN BEKIER, ESQ.
14
15      QUINN EMANUEL URQUHART & SULLIVAN
16      Attorneys for Defendants
17         865 S. Figueroa Street
18         Los Angeles, California 90017
19      BY:  SCOTT WATSON, ESQ.
20           VALERIE LOZANO, ESQ.
21
22
23   ALSO PRESENT:
24
25      SHA-LA HOLLIS, Legal Video Specialist
```

## Page 4

```
 1         THE VIDEOGRAPHER:  Here begins Tape    07:49AM
 2   No. 1 of the videotaped deposition of       07:49AM
 3   Ms. Judith Chevalier in the matter Apple,   07:49AM
 4   Inc., California Corporation, Plaintiffs vs. 07:49AM
 5   Samsung Electronics Company LTD, et al.,    07:49AM
 6   Defendants, in the United States District   07:49AM
 7   Court, Northern District of California, San 07:49AM
 8   Jose Division, Case No. 12-CV-00630-LHK (PSG). 07:49AM
 9         This deposition is being held at      07:49AM
10   Quinn Emanuel Urquhart & Sullivan, LLP,     07:50AM
11   located at 51 Madison Avenue, New York, New 07:50AM
12   York, on October the 3rd, 2013, at          07:50AM
13   approximately 7:51 a.m.                     07:50AM
14         My name is Sha-La Hollis, and I'm     07:50AM
15   the legal video specialist.  The court      07:50AM
16   reporter is Jomanna DeRosa.  We are both in 07:50AM
17   association with TSG Reporting, Inc.        07:50AM
18         Will counsel please introduce         07:50AM
19   yourselves for the record.                  07:50AM
20         MR. THOMASCH:  Daniel Thomasch,       07:50AM
21   Gibson Dunn & Crutcher, for Apple.          07:50AM
22         MR. BEKIER:  Jordan Bekier, Gibson    07:50AM
23   Dunn & Crutcher, for Apple.                 07:50AM
24         MR. WATSON:  Scott Watson, Quinn      07:50AM
25   Emanuel, for Samsung.                       07:50AM
```

## Page 5

```
 1                                               07:50AM
 2         MS. LOZANO:  Valerie Lozano, Quinn    07:50AM
 3   Emanuel, for Samsung.                       07:50AM
 4         THE VIDEOGRAPHER:  Will the court     07:50AM
 5   reporter please swear in the witness.       07:50AM
 6   J U D I T H  C H E V A L I E R, called as a
 7     witness, having been duly sworn by a Notary
 8     Public, was examined and testified as
 9     follows:
10   EXAMINATION BY
11   MR. THOMASCH:                               07:50AM
12     Q.  Good morning, Doctor.                 07:50AM
13     A.  Good morning.                         07:50AM
14     Q.  My name is Dan Thomasch.  We didn't   07:50AM
15   get a chance to be formally introduced, but we 07:50AM
16   made introductions on the record, and I represent 07:50AM
17   Apple in this case.                         07:50AM
18         I understand that you are serving     07:50AM
19   as an expert witness for Samsung.  Is that  07:50AM
20   correct?                                    07:51AM
21     A.  Correct.                              07:51AM
22     Q.  Have you ever been accepted by a      07:51AM
23   court as an expert for the purposes of giving 07:51AM
24   trial testimony?                            07:51AM
25     A.  I have never testified at trial.      07:51AM
```

Page 278

1   Perhaps I reversed them. I assumed you meant        04:23PM
2   Apple licensing someone else to use its             04:23PM
3   technology.                                         04:23PM
4        Q.   Do you understand what an                 04:23PM
5   in-license is and what an out-license is?           04:24PM
6        A.   I understand what a licensee is and       04:24PM
7   what a licensor is. I don't typically use the       04:24PM
8   terms "in-license" and "out-license."               04:24PM
9        Q.   [redacted]
10-18  [redacted]
19       A.   So I might have to look at the            04:25PM
20  deposition again to recall. I believe that --       04:25PM
21  that, if I recall correctly, the deposition he is   04:25PM
22  referring to Apple as a licensee there and          04:25PM
23  that's --                                           04:25PM
24       Q.   In which Apple is paying someone          04:25PM
25  else to acquire their technology.                   04:25PM

Page 279

1        A.   Their technology in -- yes.               04:25PM
2        Q.   Is this case on Apple's claim for         04:25PM
3   lost profits, which is more relevant, Apple's      04:25PM
4   preferences when licensing in or when licensing    04:25PM
5   out?                                                04:25PM
6        A.   So --                                     04:25PM
7        Q.   Can you answer that?                      04:25PM
8            MR. WATSON: Objection.                     04:25PM
9   Argumentative.                                      04:26PM
10           MR. THOMASCH: It's a question of A        04:26PM
11  or B. If you can't answer it, you can say "I        04:26PM
12  can't answer that."                                 04:26PM
13           MR. WATSON: Do you want the                04:26PM
14  witness to give you an answer or do you want        04:26PM
15  to badger her?                                      04:26PM
16           MR. THOMASCH: I don't -- I'm not           04:26PM
17  badgering her.                                      04:26PM
18           MR. WATSON: You were. She was              04:26PM
19  starting to speak, and you cut her off. It's        04:26PM
20  very clear in the transcript.                       04:26PM
21       Q.   You may answer?                           04:26PM
22           MR. WATSON: Please be respectful.          04:26PM
23           MR. THOMASCH: I am.                        04:26PM
24       A.   So Apple's preferences for both --        04:26PM
25  as licensee and as licensor I think are relevant    04:26PM

Page 280

1   here. But Apple's preferences as a licensor are    04:26PM
2   more analogous to the hypothetical negotiation.    04:26PM
3        Q.   And what you cited in your report        04:26PM
4   relates to their preferences as a licensee, not a  04:26PM
5   licensor. Correct?                                  04:26PM
6        A.   So in this specific sentence, what       04:26PM
7   I cite in my report refers to Apple's preferences  04:26PM
8   as a licensee rather than as a licensor.           04:26PM
9        Q.   Would you turn to paragraph 318,         04:27PM
10  please? I'm sorry. It's page 177, paragraph 318.   04:27PM
11       A.   Yes.                                      04:27PM
12       Q.   Do you see this is under offers to        04:27PM
13  license the patents in suit?                        04:27PM
14       A.   Yes.                                      04:27PM
15       Q.   The first sentence reads, "Although       04:27PM
16  offers to license technology are not the same as   04:27PM
17  consummated agreements, they too can provide       04:27PM
18  insight into the value of the underlying           04:27PM
19  technology."                                        04:27PM
20           Do you see that?                           04:27PM
21       A.   I do.                                     04:27PM
22       Q.   And to the extent that offers are        04:27PM
23  not the same as agreements, are they more          04:27PM
24  probative or less probative, in your mind, of the  04:27PM
25  issue of what the parties would have agreed to in  04:27PM

Page 281

1   a hypothetical negotiation?                         04:27PM
2            MR. WATSON: Objection. Vague and          04:27PM
3   ambiguous.                                          04:27PM
4        A.   So I believe that because these are      04:27PM
5   not consummated agreements, they are less -- they  04:27PM
6   provide less insight into what the parties would   04:27PM
7   have agreed -- what ultimately would have agreed   04:28PM
8   to. In particular, in this case, since Samsung     04:28PM
9   did not accept this license and I think it's clear 04:28PM
10  if you look at my exhibits, I think I would have   04:28PM
11  to think about it. But if I thought that this      04:28PM
12  license -- this licensing discussion, you know,    04:28PM
13  was -- I believe that this licensing discussion is 04:28PM
14  germane. If it were not germane, I would have to   04:28PM
15  think about it. But I think that would actually    04:28PM
16  put downward pressure on my -- on my licensing     04:28PM
17  rate analysis.                                      04:28PM
18       Q.   [redacted]
19-22  [redacted]
23           MR. WATSON: Objection. Compound.          04:29PM
24       Q.   Do you understand the question?           04:29PM
25       A.   [redacted]                                04:29PM

Page 282

```
10    Q.   Did you determine who at Samsung          04:29PM
11  was at the October 2010 meeting?                 04:29PM
12    A.   I don't recall who at Samsung was         04:30PM
13  at the 2010 meeting, though I believe I knew it at  04:30PM
14  the some time.                                   04:30PM
15    Q.   Did you ask anyone there at Samsung       04:30PM
16  what their factual understanding was as to what  04:30PM
17  patents were included and what patents were      04:30PM
18  excluded?                                        04:30PM
19    A.   I did not ask anyone at Samsung           04:30PM
20  about their factual understanding of what patents 04:30PM
21  were included or excluded.                       04:30PM
22    Q.   Did you review any deposition             04:30PM
23  testimony from any Apple employee present at that 04:30PM
24  meeting as to what patents were included and what 04:30PM
25  patents were excluded?                           04:30PM
```

Page 283

```
 1    A.
 ...
 7    Q.   Did you draw any conclusion as to         04:31PM
 8  the accuracy or the veracity of Mr. Texler's     04:31PM
 9  testimony?                                       04:31PM
10    A.   I did not draw any conclusions            04:31PM
11  about his testimony.                             04:31PM
12    Q.   There are large numbers of licenses       04:31PM
13  that were produced in this case that you reviewed 04:31PM
14  and you summarized certain characteristics in your 04:31PM
15  exhibits.  Do you recall that?                   04:31PM
16    A.   Yes, I do recall that.                    04:31PM
17    Q.   Did you read all of those licenses?       04:31PM
18    A.   I did not read all of those               04:31PM
19  licenses in their entirety.                      04:31PM
20    Q.   Do you believe that you possess any       04:31PM
21  specialized knowledge or expertise to allow you to 04:31PM
22  value with a reasonable degree of accuracy the   04:31PM
23  value of licenses to patents that you have not   04:31PM
24  reviewed?                                        04:31PM
25       MR. WATSON:  Objection.  Compound.          04:31PM
```

Page 284

```
 1  Vague and ambiguous.                             04:31PM
 2       MR. THOMASCH:  I'll withdraw it.            04:31PM
 3    Q.   Did you in any of the licenses, did       04:31PM
 4  you go to the underlying patents and see -- and  04:31PM
 5  read the patents themselves to see what was being 04:31PM
 6  licensed?                                        04:31PM
 7    A.   Since I'm not a technical expert,         04:31PM
 8  reading the patents themselves would have been   04:32PM
 9  difficult for me.  I read some of the license    04:32PM
10  agreements.  So I understand the license         04:32PM
11  agreements.                                      04:32PM
12    Q.   Do you believe Apple values all of        04:32PM
13  the patents in its portfolio, and it's equal in  04:32PM
14  value?                                           04:32PM
15    A.   No, nor does my -- nor does my            04:32PM
16  report or analysis rely on Apple valuing all of  04:32PM
17  the patents in its portfolio as equal in value.  04:32PM
18    Q.   Do you treat for purposes of your         04:32PM
19  patent royalty pricing, do you treat all patents 04:32PM
20  as being equal in value?                         04:32PM
21    A.   In some of my analyses, I treat all       04:32PM
22  patents as being equal in value.  I also present, 04:32PM
23  for example, an analysis in my report, which I can 04:32PM
24  find, that follows Ms. Davis and Mr. Musica's    04:33PM
25  methodology as Apple experts in -- in generating 04:33PM
```

Page 285

```
 1  the relative value of the patents.  And in my    04:33PM
 2  following of these Apple experts' analysis, I    04:33PM
 3  consider the situation, that is to summarize, most 04:33PM
 4  favorable to Apple regarding the relative value of 04:33PM
 5  these patents and the rest of the patents in     04:33PM
 6  Apple's patent portfolio.                        04:33PM
 7    Q.
 ...
14    Q.
15    A.
```

Page 286

1  Q. [REDACTED]
2  [REDACTED]
3  [REDACTED]
4  [REDACTED]
5  [REDACTED]
6  [REDACTED]
7  [REDACTED]
8  A. [REDACTED]
9  [REDACTED]
10 [REDACTED]
11 [REDACTED]
12 [REDACTED]
13 [REDACTED]
14                                    04:35PM
15     Q.   Two final focused questions.      04:35PM
16         Do you see a difference in the     04:35PM
17 value of a patent that would be licensed by Apple   04:35PM
18 to a competitor as opposed to a non-practicing      04:35PM
19 entity? Do you think that the person, the          04:36PM
20 licensee matters in determining the vale of an     04:36PM
21 Apple patent being licensed out?                    04:36PM
22     MR. WATSON: Incomplete                04:36PM
23 hypothetical.                              04:36PM
24     A.   So in my Georgia Pacific factors, I   04:36PM
25 discuss the fact that when Apple is licensing a    04:36PM

Page 287

1  direct competitor, that will put -- such as HTC,   04:36PM
2  that will put upward pressure on the license rate.  04:36PM
3      Q.   And would the more significant the       04:36PM
4  competitor, the more upward pressure be brought to 04:36PM
5  bear?                                      04:36PM
6      MR. WATSON: Incomplete                04:36PM
7  hypothetical.                              04:36PM
8      A.   I believe that -- I'm not going to   04:36PM
9  make a characteristic -- a characterization of    04:37PM
10 significance of competitors. I believe that both  04:37PM
11 Apple -- both HTC and Samsung are significant     04:37PM
12 competitors of Apple, and I believe that that puts 04:37PM
13 upward pressure on both of their licenses.        04:37PM
14     Q.   And how if at all --              04:37PM
15     MR. WATSON: Counsel, I think we're     04:37PM
16 over seven hours at this point by my clock, and I  04:37PM
17 understand that some of your colleagues have been  04:37PM
18 terminating depositions precisely at that point.   04:37PM
19 So I believe that's the practice in the case      04:37PM
20 established by your side of the case.             04:37PM
21     MR. THOMASCH: I have a final           04:37PM
22 question. Are you going to let me ask it or       04:37PM
23 not?                                       04:37PM
24     MR. WATSON: Can I have a time          04:37PM
25 count?                                     04:37PM

Page 288

1      THE VIDEOGRAPHER: Seven hours and     04:37PM
2  two minutes.                               04:37PM
3      MR. WATSON. Then, no, I am not.       04:37PM
4  Thank you.                                 04:37PM
5      MR. THOMASCH: Thank you, Doctor.      04:37PM
6      THE WITNESS: Thank you.               04:37PM
7      THE VIDEOGRAPHER: The time is 4:39    04:37PM
8  p m., and this completes tape No. 5, as well      04:37PM
9  as the videotape deposition of Dr. Judith         04:37PM
10 Chevalier.                                 04:37PM
11     (Time Ended: 4:37 p m.)

13 _____
14     JUDITH CHEVALIER, Ph.D.

16 Subscribed and sworn to
17 before me this      day
18 of October, 2013.

20 _____

Page 289

INDEX:
WITNESS          EXAM BY:              PAGE:
J. Chevalier     Mr. Thomasch          5


       EXHIBITS
Exhibit No.                       Page:
Chevalier Exhibit 1 Expert Report Vol. I    6
Chevalier Exhibit 2 Expert Report Vol. II   6