**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# EXHIBIT A-5

Confidential - Attorneys' Eyes Only

Page 1

```
 1              IN UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN JOSE DIVISION
 4   APPLE, INC., a California        )
     corporation,                     )
 5                                    )CASE NO.
                   Plaintiff,         )12-CV-00630-LHK
 6                                    )
     vs.                              )
 7                                    )
     SAMSUNG ELECTRONICS, CO., LTD.,  )
 8   a Korean corporation; SAMSUNG    )
     ELECTRONICS AMERICA, INC., a     )
 9   New York corporation; SAMSUNG    )
     TELECOMMUNICATIONS AMERICA,      )
10   LLC, a Delaware limited          )
     liability company,               )
11                                    )
                   Defendants.        )
12   -------------------------------- )
13
14
15       ***CONFIDENTIAL - ATTORNEYS' EYES ONLY***
16
17
18
19       CONFIDENTIAL VIDEOTAPED DEPOSITION OF
              JUDITH CHEVALIER, Ph.D.
20               New York, New York
              Thursday, October 3, 2013
21
22
23
24   Reported by:
     JOMANNA DeROSA, CSR
25   JOB NO. 66560
```

TSG Reporting - Worldwide    (877)702-9580

Page 2

```
 1
 2         Thursday, October 3, 2013
 3              7:30 a.m.
 4
 5
 6       Confidential Videotaped Deposition
 7  of JUDITH CHEVALIER, Ph.D., held at the
 8  offices of Quinn Emanuel Urquhart &
 9  Sullivan, LLP, 51 Madison Avenue, New York,
10  New York, before Jomanna DeRosa, a Certified
11  Shorthand Reporter and Notary Public of the
12  States of New York, New Jersey, California
13  and Arizona.
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1  A P P E A R A N C E S:
 2
 3     GIBSON DUNN & CRUTCHER
 4     Attorneys for Plaintiff
 5        200 Park Avenue
 6        New York, New York 10166
 7     BY:  DANIEL THOMASCH, ESQ.
 8
 9     GIBSON DUNN & CRUTCHER
10     Attorneys for Plaintiff
11        333 South Grand Avenue
12        Los Angeles, California 90071
13     BY:  JORDAN BEKIER, ESQ.
14
15     QUINN EMANUEL URQUHART & SULLIVAN
16     Attorneys for Defendants
17        865 S. Figueroa Street
18        Los Angeles, California 90017
19     BY:  SCOTT WATSON, ESQ.
20          VALERIE LOZANO, ESQ.
21
22
23  ALSO PRESENT:
24
25     SHA-LA HOLLIS, Legal Video Specialist
```

Page 4

```
 1          THE VIDEOGRAPHER:  Here begins Tape    07:49AM
 2  No. 1 of the videotaped deposition of         07:49AM
 3  Ms. Judith Chevalier in the matter Apple,     07:49AM
 4  Inc., California Corporation, Plaintiffs vs.  07:49AM
 5  Samsung Electronics Company LTD, et al.,      07:49AM
 6  Defendants, in the United States District     07:49AM
 7  Court, Northern District of California, San   07:49AM
 8  Jose Division, Case No. 12-CV-00630-LHK (PSG). 07:49AM
 9          This deposition is being held at      07:49AM
10  Quinn Emanuel Urquhart & Sullivan, LLP,       07:50AM
11  located at 51 Madison Avenue, New York, New   07:50AM
12  York, on October the 3rd, 2013, at            07:50AM
13  approximately 7:51 a.m.                       07:50AM
14          My name is Sha-La Hollis, and I'm     07:50AM
15  the legal video specialist.  The court        07:50AM
16  reporter is Jomanna DeRosa.  We are both in   07:50AM
17  association with TSG Reporting, Inc.          07:50AM
18          Will counsel please introduce         07:50AM
19  yourselves for the record.                    07:50AM
20          MR. THOMASCH:  Daniel Thomasch,       07:50AM
21  Gibson Dunn & Crutcher, for Apple.            07:50AM
22          MR. BEKIER:  Jordan Bekier, Gibson    07:50AM
23  Dunn & Crutcher, for Apple.                   07:50AM
24          MR. WATSON:  Scott Watson, Quinn      07:50AM
25  Emanuel, for Samsung.                         07:50AM
```

Page 5

```
 1                                                07:50AM
 2          MS. LOZANO:  Valerie Lozano, Quinn    07:50AM
 3  Emanuel, for Samsung.                         07:50AM
 4          THE VIDEOGRAPHER:  Will the court     07:50AM
 5  reporter please swear in the witness.         07:50AM
 6  J U D I T H  C H E V A L I E R, called as a
 7    witness, having been duly sworn by a Notary
 8    Public, was examined and testified as
 9    follows:
10  EXAMINATION BY
11  MR. THOMASCH:                                 07:50AM
12     Q.  Good morning, Doctor.                  07:50AM
13     A.  Good morning.                          07:50AM
14     Q.  My name is Dan Thomasch.  We didn't    07:50AM
15  get a chance to be formally introduced, but we 07:50AM
16  made introductions on the record, and I represent 07:50AM
17  Apple in this case.                           07:50AM
18          I understand that you are serving     07:50AM
19  as an expert witness for Samsung.  Is that    07:50AM
20  correct?                                      07:51AM
21     A.  Correct.                               07:51AM
22     Q.  Have you ever been accepted by a       07:51AM
23  court as an expert for the purposes of giving 07:51AM
24  trial testimony?                              07:51AM
25     A.  I have never testified at trial.       07:51AM
```

Confidential - Attorneys' Eyes Only

Page 186

1   it wasn't robust to a consumer preference for the   01:14PM
2   third or the second non-infringing alternative.   01:14PM
3       Q.   Do you have any opinion on how many   01:14PM
4   different alternatives it was feasible to test in   01:14PM
5   a single study of the type that Dr. Hauser   01:14PM
6   undertook in this case?   01:14PM
7       A.   So define "single study." So --   01:14PM
8   yes, define "single study."   01:14PM
9       Q.   Dr. Hauser did a study -- conjoint   01:14PM
10  study in this case in which, for five different   01:14PM
11  patents, he tested a description of the patented   01:15PM
12  feature against a single non-infringing   01:15PM
13  alternative.  Is that correct?   01:15PM
14          MR. WATSON:  Objection.   01:15PM
15      Mischaracterizes the record.   01:15PM
16      Q.   Is that your understanding or not?   01:15PM
17      A.   So he did a conjoint study in which   01:15PM
18  he tested his description of the patented feature   01:15PM
19  against his description of a non-infringing -- a   01:15PM
20  single non-infringing alternative?   01:15PM
21      Q.   Do you have an understanding as to   01:15PM
22  how many non-infringing alternatives have been   01:15PM
23  postulated by the experts for Samsung in this case   01:15PM
24  for the five patents at issue?   01:15PM
25      A.   I understand that it is a large   01:15PM

Page 187

1   number.   01:15PM
2       Q.   How many, approximately?   01:15PM
3       A.   Fifty or sixty.   01:15PM
4       Q.   Do you think it was possible to   01:15PM
5   test 50 or 60 non-infringing alternatives?   01:15PM
6       A.   I think -- I think it was possible   01:15PM
7   to test a number of non-infringing alternatives,   01:16PM
8   but possible -- possible in what sense?  Cost   01:16PM
9   effective?   01:16PM
10      Q.   No.  No, I'm not talking about cost   01:16PM
11  effective at all.  I'm talking about whether there   01:16PM
12  is an appropriate study methodology to perform a   01:16PM
13  conjoint study like what was done in this case but   01:16PM
14  to include 50 or 60 alternatives?   01:16PM
15      A.   So I think your question   01:16PM
16  presupposes that this would be done in a single   01:16PM
17  study.  So as you are perhaps alluding to, if you   01:16PM
18  give consumers too many choices in a conjoint   01:16PM
19  study, you will fatigue them and overwhelm them.   01:16PM
20  However, with considerable resources, one could   01:16PM
21  undertake a methodology in which a separate   01:16PM
22  study was under- -- separate studies were   01:16PM
23  undertaken in a different sample so that you   01:17PM
24  wouldn't fatigue a given sample of consumers.  You   01:17PM
25  could use separate consumers.  That would require   01:17PM

Page 188

1   a substantial amount of matching of the consumers   01:17PM
2   to assure people that the samples were similar.   01:17PM
3   But giving people too many choices would not be   01:17PM
4   feasible.   01:17PM
5       Q.   Do you have a view as to   01:17PM
6   approximately how many such studies would be   01:17PM
7   necessary in order to allow the testing of 50   01:17PM
8   alternatives without running into the problem of   01:17PM
9   respondent fatigue?   01:17PM
10          MR. WATSON:  Incomplete   01:17PM
11      hypothetical.   01:17PM
12      A.   I already replied that I would not   01:17PM
13  perform such an analysis by giving each respondent   01:17PM
14  numerous choices, that I would replicate the study   01:17PM
15  with different respondents --   01:17PM
16      Q.   I understand completely.   01:17PM
17      A.   -- and different samples.   01:17PM
18      Q.   I understand your answer   01:17PM
19  completely, and I'm asking you, if you only   01:18PM
20  replicated it one time, could you handle now 25 to   01:18PM
21  30 options in each of the two studies, or would   01:18PM
22  you need to replicate it multiple times?   01:18PM
23      A.   The more different -- the more   01:18PM
24  different choices, the more different comparisons   01:18PM
25  you wanted to make, the more studies you would   01:18PM

Page 189

1   have to run.  I think one could calculate exactly   01:18PM
2   how many would have to run, but it would be more.   01:18PM
3       Q.   Do you have an approximation of how   01:18PM
4   many studies could be appropriately run to address   01:18PM
5   50 or 60 options?   01:18PM
6           MR. WATSON:  Incomplete   01:18PM
7       hypothetical.   01:18PM
8       A.   Let me, again, say that I'm -- I'm   01:18PM
9   not necessarily saying that running 50 or 60   01:18PM
10  options would be necessary but that running   01:19PM
11  multiple options that -- that cover substantial   01:19PM
12  non-infringing alternatives, more than one would   01:19PM
13  be better with 50 being the ideal.  But it would   01:19PM
14  be on the order of fewer than 50 and more than   01:19PM
15  one.  So, you know, off the top of my head,   01:19PM
16  probably 25 or 30 studies, if you really wanted to   01:19PM
17  do 50, which is not my testimony that you would   01:19PM
18  necessarily need to do.   01:19PM
19      Q.   Do you have a view as to whether it   01:19PM
20  is ever appropriate to have more than one   01:19PM
21  non-infringing alternative presented against the   01:19PM
22  feature being tested in a conjoint study?   01:19PM
23          MR. WATSON:  Objection.  Beyond the   01:19PM
24      scope.   01:20PM
25      Q.   In other words, in regards to a   01:20PM

Page 290

```
 1       LITIGATION SUPPORT INDEX
 2
 3   DIRECTION TO WITNESS NOT TO ANSWER
 4      Page   Line   Page   Line
 5            (NONE)
 6
 7   REQUEST FOR PRODUCTION OF DOCUMENTS
 8      Page   Line   Page   Line
 9            (NONE)
10
11      INFORMATION TO BE FURNISHED
12      Page   Line   Page   Line
13       93     9
14
15     QUESTIONS MARKED FOR A RULING
16      Page   Line   Page   Line
17            (NONE)
18
19
20
21
22
23
24
25
```

Page 291

```
 1              CERTIFICATE
 2   STATE OF NEW YORK )
 3              )ss:
 4   COUNTY OF NEW YORK)
 5        I, JOMANNA DeROSA, a Certified
 6   Shorthand Reporter and Notary Public within
 7   and for the States of New York, New Jersey,
 8   California and Arizona, do hereby certify:
 9        That JUDITH CHEVALIER, Ph.D., the
10   witness whose deposition is hereinbefore set
11   forth, was duly sworn by me and that such
12   deposition is a true record of the testimony
13   given by such witness.
14        I further certify that I am not
15   related to any of the parties to this action
16   by blood or marriage, and that I am in no
17   way interested in the outcome of this
18   matter.
19        In witness whereof, I have hereunto
20   set my hand this 3rd day of October, 2013.
21
22              _____
                JOMANNA DeROSA
23
24
25
```

Page 292

```
 1         * * *ERRATA SHEET* * *
 2
 3   NAME OF CASE:  Apple Inc v. Samsung Electronics Company
              Limited (Case No: 12-CV-00630-LHK)
 4   DATE OF DEPOSITION:  10/3/2013
 5   NAME OF WITNESS:  Judith Chevalier, Ph.D.
 6   Reason codes:
 7      1. To clarify the record.
        2. To conform to the facts.
 8      3. To correct transcription errors.
 9   Page _____ Line _____ Reason _____
     From _____ to _____
10
     Page _____ Line _____ Reason _____
11   From _____ to _____
12   Page _____ Line _____ Reason _____
     From _____ to _____
13
     Page _____ Line _____ Reason _____
14   From _____ to _____
15   Page _____ Line _____ Reason _____
     From _____ to _____
16
     Page _____ Line _____ Reason _____
17   From _____ to _____
18   Page _____ Line _____ Reason _____
     From _____ to _____
19
20         _____
             JUDITH CHEVALIER, Ph.D.
21
22
23
24
25
```