**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# EXHIBIT A-6

```
 1              IN THE UNITED STATES DISTRICT COURT
 2       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4   APPLE, INC., a California         )
     corporation,                      )
 5                                     )
                   Plaintiff,          )
 6                                     ) Case No.
                                       ) 12-cv-00630-LHK (PSG)
 7            vs.                      )
                                       ) Volume 1
 8   SAMSUNG ELECTRONICS CO., LTD., a  )
     Korean corporation; SAMSUNG       )
 9   ELECTRONICS AMERICA, INC., a New  )
     York corporation and SAMSUNG      )
10   TELECOMMUNICATIONS AMERICA, LLC, a)
     Delaware limited liability        )
11   company,                          )
                                       )
12                                     ) Pages 1 to 311
                   Defendants.         )
13   _____)
14
15
16
17
18        VIDEOTAPED DEPOSITION OF ALEX SNOEREN
19              San Diego, California
20           Wednesday, September 25, 2013
21
22
23
24   Reported by:
     ELIZABETH BORRELLI, CSR No. 7844, CCLL, CLR
25   JOB NO. 65775
```

Page 2

         Videotaped Deposition of ALEX SNOEREN,
   Volume 1, taken on behalf of the Defendants, at
   501 West Broadway, Suite 800, San Diego,
   California, commencing at 10:02 a.m., Wednesday,
   September 25, 2013, before Elizabeth Borrelli, a
   Certified Shorthand Reporter in the State of
   California, License No. 7844.
                    * * *

Page 3

1  APPEARANCES OF COUNSEL:
2
3
   For the Plaintiff:
4      GIBSON DUNN & CRUTCHER
       BY:  BRIAN M. BUROKER
5      Attorney at Law
       1050 Connecticut Avenue, N.W.
6      Washington, D.C. 20036
7
8
9  For the Defendants:
       QUINN EMANUEL URQUHART & SULLIVAN
10     BY:  SEAN PAK
       BY:  JORDAN JAFFE
11     BY:  DEREK TANG
       Attorneys at Law
12     50 California Street
       San Francisco, California 94111
13
14
15
   Also Present:
16
       MARTIN RINARD
17
       CHRISTOPHER BROOKS, Videographer

Page 4

            I N D E X

WITNESS                    EXAMINATION
ALEX SNOEREN

BY MR. PAK                      7


            EXHIBITS

SNOEREN                              PAGE
Exhibit 1   Expert report of Dr. Alex      32
            Snoeren concerning U.S. patent
            numbers 6,847,959 and 7,761,414
Exhibit 2   Copy of Patent No. 6,847,959   44
Exhibit 3   Expert report of John R. Hauser 124
Exhibit 4   Preliminary injunction order  166
            from the judge

Exhibit 5   Reply expert declaration of Dr. 187
            Nathaniel Polish concerning
            U.S. Patent No. 8,086,604

Exhibit 6   Rebuttal Expert Report of Dr.  190
            Alex C. Snoeren concerning U.S.
            Patents Nos. 6,847,959 and
            7,761,414
Exhibit 7   Copy of Patent 7,761,414 issued 254
            to Apple

Page 5

        INFORMATION REQUESTED
              (None)

        UNANSWERED QUESTIONS

              (None)

2 (Pages 2 to 5)

Page 130

1  in a universal search feature without implementing a       13:01
2  plurality of heuristic modules on the local device,
3  right?
4      A.  Again, you're asking a general
5  hypothetical.  For all the reasons we've described,         13:01
6  there are possible alternative implementations.
7  Also, for all the reasons I've described in my
8  report, many of those alternative implementations
9  would have significant impacts of functionality,
10 usability of the device.  So yes, it's possible to          13:01
11 implement in different ways.
12     In abstract, in specific, for the ways
13 that have been suggested in the noninfringing
14 alternatives aspects of the report, I describe, you
15 know, negative ramification of those changes and            13:02
16 alternative implementations.
17     But the answer to your specific question
18 is yes, there are other ways one could attempt to
19 implement the same functionality.
20     Q.  Where does it state anywhere in this                13:02
21 description of universal search from Dr. Hauser that
22 the heuristics for a plurality of heuristic have to
23 be in modular form and stored on the local device?
24 Where does it say that in this survey?
25     A.  Okay.                                               13:02

Page 131

1        MR. BUROKER:  Objection.  Vague.                     13:02
2  Incomplete hypothetical.
3        THE WITNESS:  You're asking me in this
4  quote where does it say that.  Okay.  It doesn't say
5  that in this quote.  My understanding is the purpose       13:02
6  of this quote is to be used, as you described, to
7  give out to a survey of users regarding their
8  acceptance for this device and so forth.  As such,
9  it's not going out to experts.  Like I'm providing
10 expert opinion here requires all that level of             13:03
11 detail to understand the full implications, I
12 believe that this description attempts to capture as
13 many aspects of the patent claim language as
14 possible in way that a layperson could understand
15 it.  It is not offered, in my understanding, as --         13:03
16 for use in the an infringement analysis.
17     So with that caveat, you're right, that
18 language does not occur precisely in this paragraph
19 right here, but that does not form the basis of any
20 of my opinions regarding infringement.                     13:03
21 BY MR. PAK:
22     Q.  And I'm not trying to link it back to your
23 opinions necessarily, Dr. Snoeren.  What I'm trying
24 to understand is we have a statement that was
25 provided to the survey recipients by Dr. Hauser with       13:03

Page 132

1  respect to universal search.                              13:03
2      Do you see that?
3      A.  I do see the statement we've been
4  referring to.
5      Q.  Okay.  Based on Dr. Hauser's                      13:03
6  representation to the survey members, that universal
7  search feature is as follows in column -- in
8  paragraph 74.  There is no indication in this
9  description that the asserted Claim 24 of the 959
10 patent describes a particular implementation of           13:04
11 universal search that requires a plurality of
12 heuristic modules to be located on the local device,
13 correct?
14        MR. BUROKER:  Objection.  Vague.
15        THE WITNESS:  Again, my understanding of           13:04
16 the purpose of this paragraph and indeed of the
17 findings of this report were Dr. Hauser to express
18 his opinion about the suitability or acceptance of
19 alleged noninfringing alternatives.  So to the
20 extent that Dr. Hauser needed to differentiate the        13:04
21 infringe -- I'm sorry -- the accused devices,
22 functionality and implementation, against the
23 alleged noninfringing alternatives, he had to
24 provide a language that a layperson could understand
25 and appreciate the distinctions.                          13:05

Page 133

1      So I will grant you that this language is            13:05
2  not the patent specification language.  I don't
3  think that would have been very effective to hand to
4  a lay person.  This was Dr. Hauser's attempt, I
5  believe, to capture the distinctions of the salient      13:05
6  features of the claim that would have been user
7  visible and impact the user in his assess -- his or
8  her assessment of the distinction vis-a-vis the
9  offered noninfringing alternatives.
10 BY MR. PAK:                                               13:05
11     Q.  That's what I'm getting at, Doctor.  See,
12 we we've been talking about Claim 24.  And Claim 24,
13 you say, requires modular design for the heuristics
14 to be located on the local device, right?
15     A.  Yes, sir.                                         13:05
16     Q.  And you say now that you told either
17 Dr. Hauser or Dr. Vellturo that that was an
18 important part of the asserted Claim 24; is that
19 right?
20     A.  Yes, sir.                                         13:05
21     Q.  Yet in the description that Dr. Hauser
22 provided to the survey recipients, there is no
23 explicit mention here of a modular design where the
24 modules of heuristics are placed on the local
25 device.  You would agree with that, right?                13:06

34 (Pages 130 to 133)

Page 134

1    A.  Again --                                 13:06
2        MR. BUROKER:  Objection.  Vague.
3        THE WITNESS:  -- as I mentioned, that
4    distinction would be imminently relevant to somebody
5    who had to implement the system.  The functionality   13:06
6    of the resulting system is evident to the user.
7    Dr. Hauser, I believe, is attempting to distinguish
8    the functionality of the accused devices with the
9    functionality proposed that would result from
10   proposed noninfringing alternatives.              13:06
11       It is correct that this language has not
12   encompassed the full spectrum of the requirements of
13   Claim 24, which, as I discussed, I did inform
14   Dr. Hauser.
15       In his expert judgment, he crafted this       13:06
16   text to provide the salient features to the end
17   user.  I informed him of what was important about
18   the claims, as we've discussed.  Dr. Hauser drafted
19   this text.  In my opinion, it captures a number of
20   the salient distinctions between the accused devices  13:07
21   and the noninfringing alternatives.
22       It does not, as you stated and as I agree,
23   reiterate the claim language, because, in my
24   opinion, the claim language would not be effective
25   in communicating to a layperson the resultant     13:07

Page 135

1    implications of what each one of those things means.  13:07
2    BY MR. PAK:
3        Q.  But setting aside the claim language of
4    plurality of heuristics or not, there is no
5    indication here in the description of universal   13:07
6    search feature that what's important is a modular
7    design that places the heuristic modules on the
8    local device.  You would agree me, right?
9        MR. BUROKER:  Objection.  Vague.
10       THE WITNESS:  You said what's important.    13:07
11   There are a variety of things that are important.  I
12   agree with you that the modular design is important
13   and has significant implication for the way in which
14   one can design a system, the extensibility of the
15   system.  Indeed, as I cite in my report, the Android  13:07
16   design documents make it very clear that the fact
17   that it is extensible and modular is crystal --
18   crystal clear stated in plain English to their
19   designers.  Right.
20       That aspect of the software may not make    13:08
21   sense to express in that language to the end user.
22   Dr. Hauser is providing language to the end user
23   which, in my opinion, fairly represents the
24   distinction between the infringed devices -- sorry,
25   the accused devices and a number of the           13:08

Page 136

1    noninfringing alternatives.  It does not, as you've   13:08
2    stated and as I agree, include every limitation of
3    the claims.
4    BY MR. PAK:
5        Q.  Specifically, it doesn't talk about      13:08
6    modular design on the local device?
7        A.  Specifically, it does not include the
8    language about the plurality of heuristic modules.
9    As we've discussed, it does reference modular --
10   modular aspects of the phone.                     13:08
11       Q.  Well, as we talked about, whether you're
12   talking about a single search box or you're talking
13   about context in songs, those features that the user
14   can see could be implemented a number of different
15   ways, including ways that do not practice Claim 24,   13:09
16   correct?
17       MR. BUROKER:  Objection.  Incomplete
18   hypothetical.
19       THE WITNESS:  Again, in general, we would
20   have to talk about constraints.  In the specific   13:09
21   instances of some of the systems Dr. Rinard has
22   pointed out, they were implemented in different ways
23   with sometimes different effect.
24   BY MR. PAK:
25       Q.  Do you believe that presenting to the end  13:09

Page 137

1    users, or survey participants in this case, a     13:09
2    description of universal search feature without
3    going into the implementation detail of placing the
4    modular heuristics on the local device was a fair
5    summary of Claim 24 of the 959 patent?            13:09
6        MR. BUROKER:  Objection.  Vague.
7    Foundation.  Incomplete hypothetical.
8        THE WITNESS:  Are you asking for a lay
9    person's opinion?  Are you asking for an expert
10   opinion?                                          13:10
11   BY MR. PAK:
12       Q.  I'll ask for both.  I mean you -- you
13   talked to this person, Dr. Vellturo, to describe
14   what you thought was Claim 24 of the 959 patent.  He
15   then translated that into a description that he   13:10
16   provided to the end users.
17       And what I'm asking you is do you think
18   that what's described as universal search feature is
19   a fair description of the modular heuristic design
20   placed on local devices as you believe is required  13:10
21   in Claim 24?
22       MR. BUROKER:  Objection.  The first part
23   of that was statement, not a question, and I don't
24   think it's accurate.  Objection to the incomplete
25   hypothetical of the question.                     13:10

Page 138

1  THE WITNESS: You asked, I believe, for         13:10
2  two answers, my layperson's opinion and my expert
3  opinion.
4      My expert opinion is I'm here to offer an
5  expert opinion regarding infringement. I do not   13:10
6  believe that this language is offered to conduct an
7  infringement analysis. I do not believe this
8  language is proper for conducting an infringement
9  analysis. That is my expert opinion with respect to
10 infringement analysis.                            13:11
11     I am not an expert in conducting survey
12 design, in doing all the things that Dr. Hauser did.
13 I have no opinion, I do not believe I'm qualified to
14 offer an expert opinion, on whether this is an
15 appropriate summarization for those purposes.     13:11
16     I do have an opinion, a layperson's
17 opinion, about whether this description captures the
18 functionality that I, as an expert, understand from
19 the claim limitations. And as I've said multiple
20 times, I believe that this text fairly captures the 13:11
21 distinction between the functionality of the accused
22 devices relative to Claim 24 and 25, vis-a-vis a
23 number of the proposed noninfringing alternative
24 implementations.
25 BY MR. PAK:                                       13:12

Page 139

1  Q. One thing this description does not           13:12
2  provide is a differentiation between an
3  implementation of the universal search that uses a
4  modular design on local devices for the heuristics
5  versus a design that does not, correct?          13:12
6  A. To the extent that it was possible or
7  would be possible to implement identical
8  functionality in a different way, this description
9  may not capture that distinction that you would see
10 in the code. However, that distinction will have 13:12
11 significant ramifications to the people who have
12 implemented it. It may not even be possible. I
13 didn't analyze whether or not it was possible to do
14 that. Right.
15     Dr. Rinard has proposed a number of          13:12
16 noninfringing alternatives. For each one of those,
17 I've explained in my report, and I'd be happy to go
18 through them with you, why I think each one of
19 those, which Dr. Rinard suggests would be outside
20 the language of the claim, have significant        13:13
21 drawbacks vis-a-vis the functionality and, in most
22 cases, the user visible functionality, the
23 functionality that is captured in this description.
24 Q. Dr. Snoeren, if I had a system that
25 performed everything that is described in terms of 13:13

Page 140

1  what the user sees under the universal search    13:13
2  heading in Dr. Hauser's report in a way that did not
3  use modular heuristics on the local device, you
4  would agree that such a system would not practice
5  Claim 24, correct?                                13:13
6      MR. BUROKER: Objection. Incomplete
7  hypothetical and vague.
8      THE WITNESS: If I understood your
9  question, you said if I described one system that
10 was implemented using Claim 24, the user visible   13:13
11 aspects, and then I described another hypothetical
12 imaginary system which had identical user visible
13 effects, but was implemented in some other
14 hypothetical way, then I believe your question is a
15 tautology. Because you've told me that all the user 13:14
16 visible aspects are identical, by definition, it
17 would not be distinguishable.
18     However, your second thing is a
19 hypothetical, which we haven't discussed if it could
20 even exist. I take your question to mean you're    13:14
21 here now, you're going to be in London in six hours,
22 could you do that in an implementation that didn't
23 involve you going over 10 miles an hour? If you
24 could do it, I wouldn't able to tell the difference.
25 I think we can all agree that's physically         13:14

Page 141

1  impossible. So whether one could build a system  13:14
2  that had the same effect, I don't know.
3      But to the point of the -- of your
4  question, if you gave me two systems, one imaginary,
5  one concrete, they both have the same user visible 13:14
6  experience, could a user tell the difference? By
7  the construct of your question, no.
8  BY MR. PAK:
9  Q. And what Dr. Hauser was attempting to do
10 here in the universe search description for his   13:15
11 survey was to focus on what the user sees, not the
12 implementation details of whether the code is
13 implemented in modular fashion on a local device or
14 not. Is that at least a fair characterization?
15     MR. BUROKER: Objection. Foundation.          13:15
16 Vague.
17     THE WITNESS: I don't want to suppose what
18 Dr. Hauser was attempting to do. He's an expert.
19 He's attempting to follow his own craft.
20     My understanding, having read the report,    13:15
21 and only that, is that this paragraph was offered as
22 a way to distinguish between the functionality of
23 the accused devices and the functionality that would
24 be provided by a number of the noninfringing
25 alternatives proposed in Dr. Rinard's report. I do 13:15

```
                                                       Page 270
 1    about how the software component is configured in    17:20
 2    particular ways and whether certain data classes are
 3    being used or not; those are implementation details
 4    at the level of the source code, correct?
 5         MR. BUROKER:  Objection.  Vague.                17:20
 6         THE WITNESS:  So again, you --
 7    hypothetical if somebody said.  I don't know what
 8    this somebody is, I don't know what their context
 9    is, their background, so I don't know, you know,
10    what meaning they might be imbuing to individual     17:20
11    terms.  A lot of these limitations will have
12    manifestations in the source code, that's correct.
13    They will also have manifestations in the
14    functionality that may or may not be apparent.
15         Again, as I described, I did not attempt        17:20
16    to conduct the exercise of determining whether a
17    particular device met these limitations without
18    looking at source code.  I had the benefit of source
19    code.
20    BY MR. PAK:                                          17:20
21       Q.  So just to be clear, you're not opining
22    that by simply operating the device and looking at
23    the user interface of that device that one could
24    tell with certainty that Claim 20 is being practiced
25    from the 414 patent, that's not what you're saying?  17:21
```

```
                                                       Page 271
 1       A.  Just to be clear, I'm not saying one way      17:21
 2    or the other.  I haven't conducted the exercise.  I
 3    don't know hypothetically speaking if someone could
 4    conduct that analysis and come to a conclusion.
 5         As explained in my report, my conclusion        17:21
 6    is based on a number of different components,
 7    including the source code, including using the
 8    device.
 9         [Reporter requests clarification.]
10         THE WITNESS:  Using the device.                 17:21
11    BY MR. PAK:
12       Q.  Now, when you were speaking with either
13    Dr. Hauser or Dr. Vellturo about your understanding
14    of the 414 patent, did you explain to him
15    specifically what is meant by Claim 20 in the        17:21
16    specific implementation requirements of Claim 20?
17       A.  Again, as we discussed this morning, it's
18    been a while.  I don't recall the full details of
19    everything we talked about.  I'm quite sure that we
20    discussed the claims, my understanding of what the   17:22
21    claims meant.  But I don't remember the exact
22    details of exactly what I may have said to him.
23       Q.  Let's take our next break and we can pick
24    up at this time.
25         THE VIDEOGRAPHER:  Off the record at            17:22
```

```
                                                       Page 272
 1    5:22 p.m.                                            17:22
 2         (Recess.)
 3         THE VIDEOGRAPHER:  We are back on the
 4    record at 5:31 p.m. and this marks the beginning of
 5    tape four.                                           17:30
 6    BY MR. PAK:
 7       Q.  All right.  Dr. Snoeren, take out the
 8    Hauser report, and look at paragraph 74.
 9         And take a look at the description of
10    "background synching," and I'll read that into the   17:31
11    record.
12         "Background synching feature allows you to
13    continue to use an app while data related to that
14    app that is stored on your smart phone tablet
15    synchronizes with data stored elsewhere, such as on  17:31
16    a remote computer.  For example, you can access and
17    edit data, such as a list of contacts on your smart
18    phone, tablet, even as your phone tablet is sending
19    data for those contacts to your work computer.
20         "Without this feature you would have to         17:32
21    wait to use an app, for example, the contacts app,
22    while the data for the app is synchronizing with a
23    remote computer and that wait may be long or short."
24         Do you understand what I read from Dr.
25    Hauser's report?                                     17:32
```

```
                                                       Page 273
 1       A.  I understand that you read that paragraph     17:32
 2    from paragraph 74 of Dr. Hauser's report yes, sir.
 3       Q.  And do you understand what that means?
 4       A.  I do understand that -- the meaning of
 5    this paragraph, yes, sir.                            17:32
 6       Q.  And you would agree with me, sir, that the
 7    background synching description from Dr. Hauser does
 8    not describe specifically whether there are
 9    synchronization components and how those
10    synchronization components could be configured as    17:32
11    taught in Claim 20, fair?
12       A.  Again, as we discussed with respect to the
13    universal search paragraph just below it, my
14    understanding is this paragraph is intended for a
15    lay audience to understand the ramifications of      17:33
16    instrumentality implementing the claims of Claim 11
17    and of Claim 20.  So in that sense I believe that
18    this paragraph does a fair job of describing the
19    user visible affects of an implementation that meets
20    those claim languages, and, in particular, I think   17:33
21    this paragraph does a fair job of distinguishing the
22    effects that an implementation of Claim 11 and Claim
23    20 provides vis-a-vis the suggested alternative
24    noninfringing implementations provided by Samsung.
25       Q.  I'm not sure that you responded to my         17:33
```

Page 274

1  question specifically.                                17:33
2       I'm looking at Claim 20.
3       You have a particular interpretation of
4  Claim 20 with respect to the elements of Claim 20
5  that you set forth in your reports, correct?         17:34
6    A.  Yes.  I applied the same principles that
7  we discussed earlier today to Claim 20 as part of my
8  analysis.
9    Q.  There was no mention in the background
10 synching description --                              17:34
11      [Reporter requests clarification.]
12 BY MR. PAK:
13   Q.  -- background synching description of
14 Dr. Hauser's report of any particular arrangement of
15 synchronization software component.  There's no     17:34
16 mention of data class of any type, correct?
17   A.  Well, it does talk about data classes in a
18 layman's term.  It talks about such as the list of
19 contacts on your smart phones.  So that's an example
20 of a data class called out in the 414.              17:35
21      As you mentioned, there are technical
22 details of the architecture that are in Claim 20
23 that one skilled in the art would understand that
24 may not have significant implications for a
25 layperson.  So I believed Dr. Hauser attempted to   17:35

Page 275

1  translate the implications of those implementation   17:35
2  details into user visible features in particular
3  with respect to having to wait to use an app.  I
4  think that speaks very directly to one of the
5  alternative noninfringing implementations that was  17:35
6  provided.  And so I believe he's drawing dichotomies
7  to the best of his ability that one -- a layperson
8  could understand, and I think he does a fair job of
9  representing some of those distinctions.
10   Q.  Let's be clear on the record, those.          17:35
11      Claim 20 requires a data class and -- a
12 series of data classes, and then it also talks about
13 software component is configured to synchronize
14 structure data of a first data class.
15      Do you see that?                               17:36
16   A.  I do see that.
17   Q.  There's no mention of those concepts
18 explicitly in the background synching description
19 from Dr. Hauser, correct?
20   A.  Again, Claim 20 talks about synchronizing    17:36
21 first data class.  There is mention in the
22 description of list of contacts as an examplar of a
23 first data class.  So the concepts are embodied.
24 The specific -- specific details, I agree with you,
25 are not here because those details would be         17:36

Page 276

1  difficult for a layperson to understand the          17:36
2  implications.
3    Q.  Put it differently:  If I gave you just a
4  description of background synching that Dr. Hauser
5  provided to the survey participants, you would not  17:36
6  be able to tell whether Claim 20 is being practiced
7  or not, correct?
8       MR. BUROKER:  Objection.  Incomplete
9  hypothetical.
10      THE WITNESS:  I did not use this paragraph   17:37
11 in my infringement analysis.  To the extent that
12 this paragraph describes a hypothetical, I'm not
13 able to conduct that analysis.
14 BY MR. PAK:
15   Q.  It doesn't have enough technical details    17:37
16 in that description to tell whether you Claim 20
17 elements are satisfied or not, true?
18   A.  Again, I do not believe that was the
19 purpose of this paragraph.  I believe the purpose of
20 this paragraph was to allow a layperson to          17:37
21 distinguish between functionality that's represented
22 in Claim 11 and Claim 20 and purported noninfringing
23 alternatives as offered by Samsung.
24   Q.  Look, I'm going to depose Dr. Hauser or
25 somebody else will depose Dr. Hauser and we can    17:37

Page 277

1  figure out what his purpose was.  I'm just asking    17:37
2  you as the technical expert, if I gave you this
3  description of background synching from Dr. Hauser's
4  report, based on that description alone, you cannot
5  tell me whether Claim 20 is being practiced or not, 17:37
6  true?
7    A.  Again, I did not use this paragraph in
8  determining infringement analysis.  This paragraph
9  is a layperson's description.  This paragraph does
10 not fully describe some of the details that would be 17:38
11 evident in any particular implementation of this
12 hypothetical.
13   Q.  Therefore, you cannot tell me, based just
14 on this highly level description in Dr. Hauser's
15 report of background synching, whether each and     17:38
16 every element of Claim 20 would be satisfied, true?
17   A.  Again, I didn't try to do that.  I don't
18 propose to try and do that right now.  This was not
19 the paragraph that I used for that analysis.
20   Q.  Take the time.  It's not a very long        17:38
21 paragraph.  Take a look at it.  You tell me right
22 now whether you think, as a technical expert, you
23 could take what is described here and what's
24 described here alone to make a determination that
25 all the elements of Claim 20 are satisfied?         17:38

```
 1   STATE OF CALIFORNIA    )
                            ) ss.
 2   COUNTY OF LOS ANGELES  )
 3
 4          I, Elizabeth Borrelli, Certified Shorthand
 5   Reporter, Certificate No. 7844, for the State of
 6   California, hereby certify:
 7          I am the deposition officer that
 8   stenographically recorded the testimony in the
 9   foregoing deposition;
10          Prior to being examined the deponent was
11   first duly sworn by me;
12          The foregoing transcript is a true record
13   of the testimony given;
14          Before completion of the deposition,
15   review of the transcript [x] was [ ] was not
16   requested.  If requested, any changes made by the
17   deponent (and provided to the reporter) during the
18   period allowed are appended hereto.
19
20   Dated: 9/26/13
21
22
23          _____
            ELIZABETH BORRELLI, CSR 7844
24
25
```

```
 1   NAME OF CASE:
 2   DATE OF DEPOSITION:
 3   NAME OF WITNESS:
 4   Reason Codes:
 5      1. To clarify the record.
 6      2. To conform to the facts.
 7      3. To correct transcription errors.
 8   Page _____ Line _____ Reason _____
 9   From _____ to _____
10   Page _____ Line _____ Reason _____
11   From _____ to _____
12   Page _____ Line _____ Reason _____
13   From _____ to _____
14   Page _____ Line _____ Reason _____
15   From _____ to _____
16   Page _____ Line _____ Reason _____
17   From _____ to _____
18   Page _____ Line _____ Reason _____
19   From _____ to _____
20   Page _____ Line _____ Reason _____
21   From _____ to _____
22
23
24          _____
            Signature of Deponent
25
```