**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# EXHIBIT A-8

Highly Confidential

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                    SAN JOSE DIVISION
 3                      - - - - -
 4   APPLE, INC., a         )
     California corporation,)
 5                          )
             Plaintiff,     )
 6                          )
             vs.            ) Civil Action
 7                          ) No. 12-CV-00630-LHK
     SAMSUNG ELECTRONICS    )
 8   CO., LTD., a Korean    )
     corporation, et al.,   )
 9                          )
             Defendants.    )
10
                          - - - - -
11
        VIDEOTAPED DEPOSITION OF TODD CARL MOWRY
12
                          - - - - -
13
                   September 19, 2013
14
                          - - - - -
15
                   HIGHLY CONFIDENTIAL
16
                          - - - - -
17
18
19
20
21
22
23
24   Reported By: Ronda Weinell
25   Job No: 65971
```

TSG Reporting - Worldwide    (877) 702-9580

Page 2

```
 1      VIDEOTAPED DEPOSITION OF TODD CARL MOWRY
 2   a witness herein, called by the Defendants for
 3   examination, taken pursuant to the Federal
 4   Rules of Civil Procedure, by and before
 5   Ronda J. Weinell, a Registered Professional
 6   Reporter and Notary Public in and for the
 7   Commonwealth of Pennsylvania, at the law
 8   offices of Eckert Seamans Cherin & Mellott,
 9   LLC, U.S. Steel Tower, 44th Floor, 600 Grant
10   Street, Pittsburgh, Pennsylvania, on Thursday,
11   September 19, 2013, at 9:34 a.m.
12            -----
13   COUNSEL PRESENT:
14   For the Plaintiff:
15       Robert Vincent, Esq.
         Gibson Dunn & Crutcher
16       2100 McKinney Avenue
         Dallas, TX 75201
17
     For the Defendants:
18
         Richard Erwine, Esq.
19       Zachariah Summers, Esq.
         Quinn Emanuel Urquhart & Sullivan
20       51 Madison Avenue
         New York, NY 10010
21
22   ALSO PRESENT:
23   James Rumbaugh, Videographer
     Kevin Jeffay
24
25
```

Page 3

```
 1            I N D E X
 2            -----
 3       WITNESS:  TODD CARL MOWRY
 4
 5   E X A M I N A T I O N:         PAGE
 6
 7   BY MR. ERWINE                   5
 8   BY MR. VINCENT                  330
 9   BY MR. ERWINE                   333
10
11   E X H I B I T S:
12
13   EXHIBIT 12                      15
14   EXHIBIT 13                      15
15   EXHIBIT 14                      16
16   EXHIBIT 15                      116
17   EXHIBIT 16                      126
18   EXHIBIT 17                      315
19   EXHIBIT 18                      320
20
21
22
23
24
25
```

Page 4

```
 1           PROCEEDINGS
 2           -----             08:47
 3         THE VIDEOGRAPHER:  This is the    08:47
 4   start of tape labeled No. 1 of the videotaped  09:33
 5   deposition of Todd Mowry in the matter of      09:33
 6   Apple, Inc., a California corporation, versus  09:33
 7   Samsung Electronics Company, Limited, a Korean 09:33
 8   corporation, et al., in the United States      09:33
 9   District Court for the Northern District of    09:34
10   California, San Jose Division, Case            09:34
11   No. 12-CV-00630-LHK.                           09:34
12         This deposition is being held at         09:34
13   Eckert Seamans Cherin & Mellott, U.S. steel    09:34
14   Tower, 44th Floor, 600 Grant Street,           09:34
15   Pittsburgh, Pennsylvania 15219 on              09:34
16   September 19th, 2013, at 9:34 a.m.             09:34
17         My name is James Rumbaugh.  I'm a        09:34
18   legal video specialist from TSG Reporting,     09:34
19   Inc., headquartered at 747 Third Avenue, New   09:34
20   York, New York.  The court reporter is Ronda   09:34
21   Weinell in association with TSG Reporting.     09:34
22         Would counsel please introduce           09:34
23   yourselves.                                    09:34
24         MR. ERWINE:  Rich Erwine of              09:34
25   Quinn Emanuel on behalf of Samsung.  With me is 09:34
```

Page 5

```
 1   Zach Summers and Dr. Kevin Jeffay.             09:34
 2         R. VINCENT:  Robert Vincent of           09:35
 3   Gibson Dunn representing Apple and the witness. 09:35
 4         THE VIDEOGRAPHER:  Will the              09:35
 5   court reporter please swear in the witness.
 6            -----
 7         TODD CARL MOWRY
 8   a witness herein, having been first duly sworn,
 9   was examined and testified as follows:
10            -----
11         EXAMINATION
12   BY MR. ERWINE:
13      Q.   God morning.  Could you please state   09:35
14   your name and address for the record.          09:35
15      A.   Yes.  It's Todd Carl Mowry, and my     09:35
16   address is 6553 Beacon Street, Pittsburgh,     09:35
17   Pennsylvania 15217.                            09:35
18      Q.   Okay if I call you Dr. Mowry today?    09:35
19      A.   Okay.                                  09:35
20      Q.   Is there anything restricting you      09:35
21   from providing complete and truthful testimony 09:35
22   today?                                         09:35
23      A.   No.                                    09:35
24      Q.   Are you taking any medication that     09:35
25   would impede your ability to provide complete  09:35
```

Page 318

1  any indication in Paragraph 179 of anything     18:32
2  more than a single linked action to a detected  18:33
3  structure?                                      18:33
4      A.  Just looking at the Paragraph 179 in    18:33
5  isolation, which is a very short paragraph, it  18:33
6  only mentions making phone calls in this        18:33
7  paragraph.                                      18:33
8      Q.  So you agree that if it -- if the       18:33
9  functionality only allows a single linked       18:33
10 action, that that would not practice the        18:33
11 asserted claims in the '647 patent?             18:33
12     A.  Yes.  As I've said before, if the       18:33
13 system only allows a single linked action, then 18:33
14 it does not -- if it never allows multiple      18:33
15 linked actions, then, in my opinion, it doesn't 18:33
16 practice that.  I would note, however, that     18:33
17 Judge Posner had a slightly different view of   18:33
18 this.  He thought that you could have           18:33
19 multiple -- you could satisfy the multiple      18:33
20 linked actions by having different types of     18:33
21 detected structures, each have a different      18:33
22 single action.                                  18:34
23      Like you could dial a phone number         18:34
24 or you could send mail to e-mail, so even       18:34
25 though individually there's only one linked     18:34

Page 319

1  action for detected structure, collectively,   18:34
2  you see multiple actions.  That's not how I    18:34
3  view that, but that's what Judge Posner's      18:34
4  opinion was.                                   18:34
5      Q.  If you look at Paragraph 180 of the    18:34
6  Vellturo report, do you see any indication     18:34
7  there of anything other than a single linked   18:34
8  action?                                        18:34
9      A.  I only see discussion of dialing a     18:34
10 phone number in this paragraph.                18:35
11     Q.  And that functionality of a single     18:35
12 linked action in your view does not practice   18:35
13 the asserted claims of the '647 patent?        18:35
14         THE COURT REPORTER:  Does not          18:35
15 practice?                                      18:35
16         MR. ERWINE:  The asserted              18:35
17 claims of the '647 patent.                     18:35
18     A.  Well, this is just like the previous   18:35
19 cases we've been discussing, which is if that's 18:35
20 all the phone ever does, in my opinion, there  18:35
21 have to be at least one structure where it can 18:35
22 potentially have multiple linked actions.      18:35
23 Judge Posner had a different opinion, that     18:35
24 there is a way for a collection difference     18:35
25 types of structures to have different single   18:35

Page 320

1  actions, and that that would count.  That's not 18:35
2  how I view it, but that was Judge Posner's      18:35
3  opinion.                                        18:35
4      Q.  And Judge Posner's opinion required    18:35
5  that there were multiple types of different    18:35
6  structures?                                    18:35
7      A.  Yes, that's correct.                   18:35
8      Q.  And in any of these paragraphs, do     18:35
9  you see an indication of multiple types of     18:35
10 different structures?                          18:35
11     A.  No, I do not see that in here.  But    18:35
12 these paragraphs don't say what the phone      18:35
13 doesn't do.  I mean, they give an example, but 18:35
14 they don't say, the phone doesn't do anything  18:36
15 else; so --                                    18:36
16     Q.  Let me mark as another exhibit --     18:36
17 this is Exhibit 18.  This is the expert report 18:36
18 of John Hauser.                                18:36
19         (Deposition Exhibit No. 18 was        18:36
20 marked for identification.)                    18:36
21     Q.  If you look at this, Dr. Mowry, I'm    18:36
22 not sure if you've seen -- have you seen this  18:36
23 before?                                        18:36
24     A.  Yes.  I believe I've seen this, or     18:36
25 parts of this, at least.  I think I've seen it, 18:36

Page 321

1  yes.                                           18:36
2      Q.  Have you spoken to John Hauser?        18:36
3      A.  No, I have not as far as I know.  I   18:36
4  don't think so.                                18:36
5      Q.  Can you turn to Page 35 of his        18:36
6  report.                                        18:36
7      A.  Okay.                                  18:36
8      Q.  And, in particular, can you take a    18:36
9  look at the paragraph entitled Quick Links.    18:36
10     A.  Okay.  I see that.                     18:37
11     Q.  And do you agree that this is         18:37
12 describing the functionality of -- well, let me 18:37
13 ask it this way:  In your opinion, does this   18:37
14 describe the functionality of the asserted     18:37
15 claims of the '647 patent?                     18:37
16     A.  Does this -- this is -- this is not   18:37
17 inconsistent with that functionality, but it's 18:37
18 not a complete description of the              18:37
19 functionality.  You would have to go through   18:37
20 all of the different claim limitations to say  18:37
21 that something -- well, this is, like I said,  18:37
22 this is not inconsistent -- this is consistent 18:37
23 with the functionality, but it's not           18:37
24 descriptive of Claim 1 entirely, because Claim 18:37
25 1 goes into a little more detail about how the 18:38

Page 322

1  system works.    18:38
2      Q.  This says nothing about, for    18:38
3  example, the analyzer server; right?    18:38
4      A.  Well, it doesn't use the words    18:38
5  analyzer server.  But it does describe, for    18:38
6  example, phone numbers, and you've got a linked    18:38
7  action.  So it is -- it is describing what a    18:38
8  user would perceive when they're using a '647    18:38
9  invention, or one embodiment of it, at least.    18:38
10     Q.  Is there any description of an    18:38
11 action processor in this description?    18:38
12     A.  Well, it doesn't use the words    18:38
13 action processor.  But the point of this, as I    18:38
14 understand it, is for collecting information    18:38
15 about consumers and people who use the phone.    18:38
16 And then that's a term describing a piece of a    18:38
17 system that's not something that a user    18:38
18 would -- that wouldn't be meaningful to a user.    18:38
19     But what they would be aware of is    18:38
20 that when they choose one of these -- among    18:38
21 these multiple actions, the action they have    18:38
22 chosen occurs.  So it's very -- it's consistent    18:38
23 there with there being an action processor.    18:39
24     Q.  Is it your opinion that a phone    18:39
25 could practice this exact functionality and not    18:39

Page 323

1  practice the asserted claims in the '647    18:39
2  patent?    18:39
3         MR. VINCENT:  Objection.    18:39
4  Vague to the extent it calls for speculation.    18:39
5      A.  Well, if you -- a specific example    18:39
6  doesn't come to mind.  We could talk about some    18:39
7  specific examples if you want.    18:39
8      Q.  Let's say you had a phone that    18:39
9  practiced this exact functionality but didn't    18:39
10 have any analyzer server.    18:39
11        MR. VINCENT:  Same objections.    18:39
12     A.  Well, I don't know that I can really    18:39
13 completely reason about that scenario because,    18:39
14 for example, the scenario suggests to me that    18:39
15 it has detected structures and it's linked    18:39
16 actions to those structures.  So I don't know    18:39
17 what's going on, if there's no analyzer server    18:39
18 here.    18:40
19     Q.  What about if there is an analyzer    18:40
20 server but it doesn't meet the claim limitation    18:40
21 offered by Judge Posner, is that possible?    18:40
22        MR. VINCENT:  Objection.    18:40
23 Vague.    18:40
24     A.  Well, if there's something that you    18:40
25 consider to be an analyzer server but that is    18:40

Page 324

1  inconsistent with Judge Posner's claim    18:40
2  construction -- sorry, can you repeat the    18:40
3  question?  I missed the last part of that.    18:40
4      Q.  Yeah.  I said what about if there is    18:40
5  an analyzer server but it doesn't meet the    18:40
6  claim limitation offered by Judge Posner, is    18:40
7  that possible?    18:40
8         MR. VINCENT:  Same objection.    18:40
9      A.  Not if -- well, if you adopt Judge    18:40
10 Posner's claim limitation, claim construction    18:40
11 language, then by definition he defined what an    18:40
12 analyzer server was, so that would not    18:40
13 correspond to what he considered an analyzer    18:41
14 serve to be.    18:41
15     Q.  Let me go back a second to a phone    18:41
16 that has the exact same functionality that's    18:41
17 set forth here but doesn't have an analyzer    18:41
18 server.  So if it did not have an analyzer    18:41
19 server but it practiced exactly the same    18:41
20 functionality, then in your opinion that would    18:41
21 not infringe the asserted claims of the '647    18:41
22 patent; right?    18:41
23        MR. VINCENT:  Objection.    18:41
24 Vague, incomplete hypothetical.    18:41
25     A.  I can't imagine the details of this    18:41

Page 325

1  scenario, because I'm not exactly sure how it's    18:41
2  doing this functionality without detecting    18:41
3  structures or linking actions, because those    18:41
4  seem to be fundamental things.  So if you    18:41
5  provided more detail, perhaps I could speak to    18:41
6  a specific example.    18:41
7      Q.  You think those are fundamental    18:41
8  things to an analyzer server?    18:41
9      A.  Well, the patent itself says that    18:41
10 the analyzer server detects structures and    18:42
11 links actions to detected structure.  So those    18:42
12 certainly are fundamental things to an analyzer    18:42
13 server.    18:42
14     Q.  But there's other claims in the '647    18:42
15 patent that don't require an analyzer server    18:42
16 that talk about those things; right?    18:42
17     A.  Well, I assumed we were talking    18:42
18 about Claim 1 in this discussion.  Maybe you're    18:42
19 talking about some of the method claims that    18:42
20 don't specifically refer to an analyzer server.    18:42
21     Q.  Claim 15, for example.    18:42
22     A.  All right.  Well, my understanding    18:42
23 is that we're not -- Claim 15 isn't at issue in    18:42
24 this case.    18:42
25     Q.  Well, you've studied Claim 15;    18:42

Highly Confidential

Page 338

```
1   COMMONWEALTH OF PENNSYLVANIA)
    COUNTY OF ALLEGHENY        )
2
3        I, Ronda J. Weinell, a notary public
    in and for the Commonwealth of Pennsylvania, do
4   hereby certify that the witness, TODD C. MOWRY,
    was by me first duly sworn to testify the
5   truth, the whole truth, and nothing but the
    truth; that the foregoing deposition was taken
6   at the time and place stated herein; and that
    the said deposition was recorded stenographically
7   by me and then reduced to typewriting under my
    direction, and constitutes a true record of the
8   testimony given by said witness, all to the
    best of my skill and ability.
9
         I further certify that the inspection,
10  reading and signing of said deposition were not
    waived by counsel for the respective parties
11  and by the witness and if after 30 days the
    transcript has not been signed by said witness
12  that the witness received notification and has
    failed to respond and the deposition may then
13  be used as though signed.
14       I further certify that I am not a
    relative, or employee of either counsel, and
15  that I am in no way interested, directly or
    indirectly, in this action.
16
         IN WITNESS WHEREOF, I have hereunto
17  set my hand and affixed my seal of office this
    20th day of September, 2013.
18
19
20
              S/Ronda J. Weinell
21            ---------------------------
22
              ---------------------------
23
24
25
```