**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# EXHIBIT B-1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California Corporation, | |
| Plaintiff, | |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | CASE NO. 12-cv-00630-LHK (PSG) |
| Defendants. | **INITIAL EXPERT REPORT OF DR. TODD C. MOWRY REGARDING INFRINGEMENT OF U.S. PATENT NO. 5,946,647** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE** |
| Counterclaim-Plaintiffs, | **GOOGLE'S HIGHLY CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY— SOURCE CODE** |
| v. | |
| APPLE INC., a California corporation, | |
| Counterclaim-Defendant. | |

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY SOURCE CODE

Gibson, Dunn & Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

## TABLE OF CONTENTS

I.    EXECUTIVE SUMMARY ................................................................................. 1

II.    INTRODUCTION .......................................................................................... 10

III.    BASES OF OPINIONS .................................................................................. 12

    A.    Qualifications ...................................................................................... 12

    B.    Materials Considered .......................................................................... 15

IV.    RELEVANT LEGAL PRINCIPLES AND GUIDELINES ........................... 16

    A.    Claim Construction ............................................................................ 16

    B.    Infringement ...................................................................................... 17

V.    OPINIONS REGARDING U.S. PATENT NO. 5,946,647 ........................... 18

    A.    Overview of the '647 Patent .............................................................. 18

    B.    Asserted Claims of the '647 Patent .................................................... 20

    C.    Person of Skill in the Art .................................................................... 21

    D.    Claim Analysis ................................................................................... 21

        1.    "analyzer server" ................................................................... 22

        2.    "linking actions to the detected structures" ........................... 27

    E.    Importance of the Patented Technology .............................................. 29

VI.    OVERVIEW OF THE SAMSUNG ACCUSED PRODUCTS ........................ 33

    A.    The Android Operating System .......................................................... 33

    B.    Samsung Accused Products ................................................................ 34

    C.    Samsung Entities ................................................................................ 40

VII.    INFRINGEMENT OF THE '647 PATENT ................................................... 42

    A.    Infringement by the Accused Browser Products ................................. 42

        1.    Overview of the Android Browser ......................................... 42

        2.    The Browser Has Already Been Found to Infringe the '647 Patent ........ 42

        3.    Infringement of Claim 1 of the '647 Patent ............................ 44

INITIAL EXPERT REPORT OF DR.TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)    i

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY
SOURCE CODE

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

3.  **Infringement of Claim 4 of the '647 Patent** ................................. 62

4.  **Infringement of Claim 6 of the '647 Patent** ................................. 62

5.  **Infringement of Claim 8 of the '647 Patent** ................................. 64

6.  **Infringement of Claim 9 of the '647 Patent** ................................. 65

B.  **Infringement by the Accused Messaging Products** ........................ 66

   1.  **Overview of the Messaging Application** ................................... 66

   2.  **Infringement of Claim 1 of the '647 Patent** ........................... 72

   7.  **Infringement of Claim 4 of the '647 Patent** ........................... 85

   8.  **Infringement of Claim 6 of the '647 Patent** ........................... 86

   9.  **Infringement of Claim 8 of the '647 Patent** ........................... 86

   10. **Infringement of Claim 9 of the '647 Patent** ........................... 87

B.  **Samsung's Non-Infringement Arguments and Alleged Non-Infringing Alternatives** ................................................................................ 88

   1.  **Samsung's Non-Infringement Arguments** ............................... 88

   2.  **Samsung's purported non-infringing alternatives** ............... 107

C.  **Indirect Infringement** ................................................................... 112

VI.  **USE BY APPLE OF THE '647 PATENTED TECHNOLOGY** ..................... 115

VI.  **CONCLUSION** ................................................................................... 118

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY
SOURCE CODE

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

history to limit a claim, the applicant must make a clear and unambiguous disavowal of claim scope.

52.     I understand that the Court has construed one term of the '647 Patent in this case, and I apply that construction in my analysis below.  For other terms, I apply the meaning as understood by one of ordinary skill at the time of the invention in light of the intrinsic and extrinsic evidence.  To the extent that Samsung has taken certain claim construction positions for terms not construed by the Court, my analysis takes into account those constructions as detailed below.

### B.     Infringement

53.     I understand that to determine whether there is infringement of a patent:  (1) the claims of the patent must be construed; and (2) the properly construed claims must then be compared with the accused products.

54.     Where constructions have not been proposed, I have interpreted the claims as one of ordinary skill in the art would have at the time the relevant patent was filed.

55.     As the second step in the infringement analysis, I understand that the properly construed claim must be compared to the accused products.  I understand that an accused product may infringe a claim either literally or equivalently.  I understand from counsel that literal infringement exists when the accused product embodies each and every limitation of a given asserted claim.  If a product does not literally perform a limitation of the claim, it can still infringe under the doctrine of equivalents if the limitation it performs is insubstantially different from the claimed limitation.

56.     I understand that one test for determining equivalence is to determine whether the differences between the claimed limitation and the accused product are insubstantial.  I understand that another test for determining equivalence is to examine whether the step used by the accused product performs substantially the same function in substantially the same way to achieve

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

substantially the same result as the claimed step.

57.     I further understand that infringement of a claim can be either direct or indirect.  I understand that direct infringement occurs when a party makes, uses, sells, offers for sale, or imports an article covered by the claims of a patent.  I understand that an indirect infringement occurs either through inducement, where a party induces another to engage in acts that constitute direct infringement, or through contributory infringement, where a party sells an article that is made for use in an infringement of the patent's claims or, put otherwise, is not a staple article of commerce that has substantial non-infringing uses.  I further understand that a party can contributorily infringe by selling an article that contains a distinct and separate component that is made for use in an infringement of a patent's claims and that has no substantial non-infringing uses.

## V.     OPINIONS REGARDING U.S. PATENT NO. 5,946,647

### A.     Overview of the '647 Patent

58.     I have reviewed U.S. Patent No. 5,946,647, filed on Feb 1, 1996.  The '647 Patent is entitled "System and Method for Performing an Action on a Structure in Computer-Generated Data." I have also reviewed the prosecution history of the '647 Patent.  I also understand that the '647 Patent is currently involved in reexamination proceedings and I have reviewed the materials in that proceeding as well.

59.     Since before February 1996, computer users have received vast amounts of data in a wide variety of formats.  ('647 Patent, col. 1:13-20.)  Very often this data contains useful pieces of information that the user would like to use in performing a subsequent task.  (*Id.*)  For example, a user may receive an email that contains phone numbers, email addresses, web addresses, and dates. (*Id.*)  Prior technology required the user to visually search in files or documents for this information. (*Id.*, col. 1:20-24.)  This way of handling useful information was time-consuming and difficult,

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

especially if the user had to search a lengthy file or document. (*Id.*) Conventional systems were developed to help search a file or document for information using pattern analysis. (*Id.*, col. 1:25-28.) Upon finding a useful piece of information, the user still had to then copy-and-paste this information into whatever field or application the user wished in order to use the information. (*Id.*, col. 1:42-50.) However, copying-and-pasting the information into a different application can be a laborious, error-prone task. Users needed a system and method for identifying structures in computer data, enabling user selection of those structures, associating actions with those structures, enabling user selection of an action, and performing the user selected action. (*Id.*, col. 1:66-2:2.)

60.     The '647 Patent overcame the limitations and deficiencies of the prior systems. (*Id.*, col. 1:5-20.) Generally, the '647 Patent relates to a system and method for performing computer-based actions on structures identified in computer data. The patent claims a system and method of detecting structures, or instances of patterns, within various sources of computer data. Such sources include, for example, emails and word-processing documents. The patent further claims a system and method of enabling selection of a structure, linking actions to the structure, enabling selection of a linked action, and automatically performing the selected action.

61.     The '647 Patent allows the user to simply select the structure and select one of a number of linked actions for performance. This is particularly useful in today's mobile devices, which often prevent multiple applications from being shown simultaneously. Users no longer had to flip back and forth between screens or applications to copy a phone number from a web page to the phone dialer or to carefully highlight a number copy it into a device's memory and then paste it into a dialer application. Instead, the '647 Patent combined the Internet and communications functionality of mobile devices to provide a convenient interface to users. Thus, the '647 Patent provides a novel technology that increases user efficiency and enhances the computer system's functionality.

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

### B.  Asserted Claims of the '647 Patent

62.  I understand that Apple is asserting that the Samsung Accused Products infringe claims 1, 4, 6, 8, and 9 of the '647 Patent.

Claim 1 reads as follows:

1.  A computer-based system for detecting structures in data and performing actions on detected structures, comprising:

an input device for receiving data;

an output device for presenting the data;

a memory storing information including program routines including

an analyzer server for detecting structures in the data, and for linking actions to the detected structures;

a user interface enabling the selection of a detected structure and a linked action; and

an action processor for performing the selected action linked to the selected structure; and

a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines.

Claim 4 reads as follows:

4.  The system recited in claim 1, wherein the analyzer server includes grammars and a parser for detecting structures in the data.

Claim 6 reads as follows:

6.  The system recited in claim 1, wherein the analyzer server includes a string library and a fast string search function for detecting string structures in the data.

Claim 8 reads as follows:

8.  The system recited in claim 1, wherein the user interface highlights detected structures.

Claim 9 reads as follows:

9.  The system recited in claim 1, wherein the user interface enables selection of an action by causing the output device to display a pop-up menu of the linked actions.

63.  Claim 1 is an independent claim.  Claims 4, 6, 8, and 9 are dependent on independent

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

claim 1, meaning that to be infringed an accused product must meet each limitation of claim 1 as well as the additional limitations of claims 4, 6, 8, and 9.

### C.  Person of Skill in the Art

64.     I may offer testimony regarding the level of ordinary skill in the art relevant to the '647 Patent.  I understand that the relevant person of ordinary skill is the person of ordinary skill as of invention date of the patent.  For present purposes that person is no different whether the invention date is September of 1994 (as I understand that Apple is asserting), or the filing date of the application that resulted in the '647 Patent, February 1, 1996.

65.     It is my opinion that person of ordinary skill in the art relevant to the '647 Patent is a person with at least a Bachelor's of Science degree in computer science or equivalent coursework and at least two years of experience in the field.  I meet the aforementioned criteria and consider myself a person with at least ordinary skill in the art pertaining to the '647 Patent.  I was also at least one of ordinary skill as of September of 1994.

### D.  Claim Analysis

66.     In this section I present my understanding of the asserted claims of the '647 Patent. I understand that claim construction is a matter of law, and I reserve the right to provide additional analysis or opinions should the Court provide constructions of any terms of the '647 Patent.  I understand that the Court has adopted Apple's construction of the "action processor" term, which is "program routine(s) that perform the selected action on the detected structure."  I agree with this construction, and apply it in my analysis.

67.     I am also informed that the Samsung has taken a position on the construction of other terms not construed by the Court.  I have been asked to provide my opinion regarding how one of ordinary skill would understand these terms.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          21

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

68.    I understand that the parties dispute the construction of two claim terms that are part of the same "analyzer server" claim limitation: an ***analyzer server*** for detecting structures in the data, and for ***linking actions to the detected structures***.  The parties' proposed constructions are as follows:

| Term | Apple's Proposed Construction | Samsung's Proposed Construction |
|------|-------------------------------|----------------------------------|
| analyzer server | a program routine(s) that receives data, uses patterns to detect structures in the data, and links actions to the detected structure | a server routine separate from a client that receives data having structures from the client |
| linking actions to the detected structures | associating detected structures to computer subroutines that cause the CPU to perform a sequence of operations on the particular structures to which they are associated | creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure |

### 1.    "analyzer server"

69.    Based on my review of the intrinsic and extrinsic evidence, it is my opinion that Apple's construction is correct because one of ordinary skill in the art would consider Apple's construction consistent with how the "analyzer server" functionality is described in the intrinsic record of the '647 Patent.  In particular, for example, consistent with Apple's construction, the Summary of the Invention describes what the analyzer server does: it detects the data, parses the data to detect structures and links actions to the detected structure.  '647 Patent at 2:28-31.

70.    The function of "detecting structures" is distinct from the function of "linking actions" thereto, and one of skill in the art would recognize that the preferred manner for implementing these two functionalities would be with multiple program routines.  A person of ordinary skill in the art would understand based on the description of the "analyzer server" in the specification of the '647 Patent that the "analyzer server" requires that a large amount of functionality be embodied in software.  Further, for example, in the more detailed description of the preferred embodiment, the

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

specification describes the detection step as potentially using multiple pattern analyses units. '647 Patent at 3:61-64. ("Analyzer server 220 comprises one or more pattern analysis units, such as a parser and grammars or a fast string search function and dictionaries, which uses patterns to parse document 210 for recognizable structures.")  Any person of skill in the art who has written a parser, for example, would realize that it is a large and complex piece of software.  Further, Figure 10 shows structure detection occurring through grammars, string matching, and "other pattern analysis."  *See id.* at Fig. 10 and accompanying text.  Therefore, the detection piece alone is quite complex, and on top of that linking detected structures to actions is another complex task for the software, and it is different from pattern matching.  Therefore, one of ordinary skill in the art would understand that the multiple functionalities required of the analyzer server cannot be reasonably embodied in a single software subroutine.

71.    In addition, something that a lay person may not appreciate, but a person of ordinary skill in the art would necessarily understand, is that large pieces of software must be broken up into separate modules in order for the programming task to be tractable.  In my opinion, writing a single procedure that does everything described for the analyzer server without calling other procedures would be unthinkable for a person of ordinary skill.

72.    Further, the specification for the 647 Patent does not limit the "analyzer server" to a single program or software routine.  The claim language of the limitation in which the term "analyzer server" is found—"an analyzer server for detecting structures in the data and for linking actions to the detected structures"—shows that the analyzer server must include multiple software routines or subroutines because it performs multiple functions.  '647 Patent at claim 1.  Further, the specification consistently describes the analyzer server as a service that performs these multiple functions, and one of ordinary skill in the art would understand such service to involve much more than a single program

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          23

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

routine.  That is, the intrinsic record makes it clear that by "server" the inventors used this term in a generic sense intending to describe a service that includes various functionalities (such as, receiving the data, detecting the structure, and linking them to the candidate actions).  In fact, the claimed invention does not draw upon a narrow sub-field of computer science, but rather it brings together diverse computer science technologies that are rarely combined (*e.g.*, parsing, user interfaces, launching other applications via the operating system) and does so in a unique way.  Therefore, one of ordinary skill in the art would certainly read the description of the "analyzer server" and conclude that more than a single program routine is required for its claimed functionality of detecting and linking.

73.    The mention of plural program subroutine(s) in Apple's construction is also helpful because a lay person may not understand that the reference to a singular "program routine" in fact includes not only that specific routine, but also the code that that routine invokes while it executes.

74.    In addition to improperly limiting "analyzer server" to a single routine, I understand that Samsung has proposed that "analyzer server" be construed to mean "a server routine separate from a client."  As I describe above, the specification consistently describes the analyzer server as a service that performs the claimed functions.  The term "client" never appears in the entirety of the intrinsic record.

75.    To the extent that Samsung relies on Figure 1 to support its construction, specifically the separate boxes depicting the "program" containing the analyzer server and the "application," I note that this Figure depicts an embodiment of the invention, and I understand that claims are not properly limited to figures or abstract arrangements of boxes in figures.  Indeed, claim 1 makes no mention of an "application" at all; rather, dependent claims 3 and 10 claim the concurrent running of the application and the analyzer server.   I also note that in this case, Samsung relied on this very

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          24

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

argument based on Figure 1 to construe "action processor" as being "separate from a client," and the Court rejected that construction and reasoning.

76.     To the extent that Samsung relies on statements during prosecution to support its construction, Samsung has misunderstood the intrinsic record.  During the prosecution, the Examiner rejected several then-pending claims as being anticipated by U.S. Patent No. 5,574,843 to Gerlach et al. ("Gerlach"). April 28, 1998 Response ("Response") at 2.  Gerlach described a computer system for editing multimedia presentations in which the user was able to select icons on the screen to control the order and content of a presentation that is produced as a result of the user's editing. *Id.*  In response to the Examiner's rejection, Apple distinguished this piece of prior art by explaining repeatedly that the critical distinction between Gerlach and the '647 Patent's specification was that "structures" detected by the '647 Patent were entirely different from the "data structures" added to media files in Gerlach.  *Id.* at 1-6.  The Gerlach system involved adding "data structures" to media files, whereas linked list "data structures," which were internal to the Gerlach system, consisted of computer source code that specified the attributes of a media object and the manner of presenting the object, and the term "data structure" had the conventional meaning given to it in computer programming.  *See* Gerlach '843 Patent, at 36:12-14 ("Each data structure contains information describing one object and its attributes (e.g., coordinates for positioning on the display screen, width, height, and color)."); *Id.* at 3:36-45 ("Each one of the data structure includes an action identifier and a plurality of attributes. The process includes receiving a one of the plurality of data structures of the presentation, analyzing the received data structure to determine an action to be performed in response to the action identifier of the data structure, and performing the action corresponding to the action identifier in accordance with a plurality of the attributes of the received data structure"); *see also* Gerlach '843 Patent at 21:11-19 ("These icons are represented internally by event structures.  All

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

icons which cannot contain children are defined internally by command structures.  Command and event structures are similar with event structures being superset of the command structures.  While the complete details of these structures need not be described here the primary members are the parent list, the child list, the reference list, and the specific data pointer.")

77.     Apple explained that the Gerlach "data structures are generated and interpreted by, and totally internally to, Gerlach's system."  Response at 3.  The '647 Patent, however, uses the term "structures" in a different way, to instead refer to data with semantic significance to the user such as phone numbers, email addresses, post-office addresses, zip codes and dates, which come from an email or Word document and are analyzed by the patented system.  *See e.g.*, '647 Patent at 1:13-16 ("recognizable structures that have semantic significance such as phone numbers, email addresses, post office addresses, zip codes and dates").  That is, the '647 Patent's "structures can appear in any document or file and are generated externally to Applicants' system."  Response at 3, *see also id*. at 3-4, ("In fact ,the structures described in the claim language cited by the Examiner are internal linked list data structures that are never seen by the user and are therefore incapable of selection.  The selection process in Gerlach is directed to selecting files, icons and menus, not structures (*see* Figure 24, column 6 lines 31-32 and lines 48-49).  As discussed above, there is no teaching of detected structures as the term is used in Applicant's specification."); *id*. at 4 ("Figure 24 clearly shows that it is the icon, not a detected structure, that is selected and that the structure is generated in response to the icon selection. This is quite different from selecting a pre-existing structure detected from within externally generated data."); *id*. at 5, ("First, as discussed above, the structures used in Gerlach are linked lists that are internally generated and understood by the system. There is no concept of a detected structure in Gerlach.")

78.     The distinction Apple made is entirely consistent with my reading of the specification:

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the textual data received by the analyzer server is received from external sources and is not "internal" to the analyzer server. That, however, does not mean by any stretch that the application like Word or email is a "client" and the analyzer server is a "server" in the traditional sense of client/server architectures in distributed systems. I also note that in this case Samsung relied on this very argument based on the file history to construe "action processor" as being "separate from a client," and the Court rejected that construction and reasoning.

## 2.  "linking actions to the detected structures"

79.  It is my opinion that Apple's construction for "linking actions to the detected structures" is consistent with the intrinsic record. I agree with Apple that such construction should be helpful to the jury and that the intrinsic record makes clear that the meaning of this term is indeed "associating detected structures to computer subroutines that cause the CPU to perform a sequence of operations on the particular structures to which they are associated." *See* '647 Patent at 2:31-34 ("Each action is a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked."); *see also id*. at 1:31-34; 2:36-41. Further, Apple's construction defines "actions" directly from the "Summary of Invention" section of the specification of the patent. '647 Patent at 2:30-41 ("Upon detection of a structure, the analyzer server links actions to the detected structure. Each action is a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked. An action may specify opening another application, loading the identified structure into an appropriate field, and closing the application. An action may further include internal actions such as storing phone numbers in an electronic phone book, addresses in an electronic address book, appointments in an electronic calendar, and external actions such as returning phone calls, drafting letters, sending facsimile copies and email, and the like.").

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

80.     Further, Apple relied upon this definition of an action during the prosecution history. In particular, Apple distinguished the claimed invention from prior art directed to linking data strings to other data strings, explaining "[t]he linked actions [in the 647 Patent] enable execution of an action (page 16, line 22 to page 17, line 1), which is a computer subroutine causing a CPU to perform a sequence of operations." Mar. 15, 1999 Response to Office Action, at 8.  Apple therefore defined an action consistently in the specification and the prosecution history and this definition should govern.

81.     Samsung's construction—"creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure"— imports a specific, narrow, and improper requirement for how linking must be performed.  Specifically, Samsung adds the requirement that "linking" means "creating a specified connection."  One of ordinary skill in the art would not read this limitation into the claims.  The '647 Patent does not use the word "link" to mean create a "specified" or "direct" connection."  Instead, the '647 Patent consistently and repeatedly uses the words "link" and "associate" interchangeably.  *See, e.g.*, '647 Patent at 1:66-2:2 (Description of the Background Art) ("Therefore, a system is needed that identifies structures, associates candidate actions to the structures, enables selection of an action and automatically performs the selected action on the structure."); 2:4-9 (Summary of the Invention) ("The present invention overcomes the limitations and deficiencies of previous systems with a system that identifies structures in computer data, associates candidate actions with each detected structure, enables the selection of an action, and automatically performs the selected action on the identified structure."); 2:12-20 (Summary of the Invention) ("The present invention has significant advantages over previous systems, in that the present system may incorporate an open-ended number and type of recognizable patterns, an open-

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

ended number and type of pattern analysis units, and further that the system may enable an open-ended number and type (i.e. scripts, macros, code fragments, etc.) of candidate actions to associate with, and thus perform, on each identified structure."); 3:38-44 (Detailed Description of the Preferred Embodiment) ("The program 165 of the present invention is stored in RAM 170 and causes CPU 120 to identify structures in the data presented by application 167, to associate actions with the structures identified in the data, to enable the user to select a structure and an action, and to automatically perform the selected action on the identified structure."); 4:34-38 (Detailed Description of the Preferred Embodiment) ("For example, in an audio environment, user interface 240 may present the structures and associated actions to the user using voice synthesis and may enable selection of a pattern and action using voice or sound activation.").

82.     To the extent that a connection is required, that connection is merely an association between a detected structure and candidate actions to be performed on that structure.  For example, the specification explains that "[u]pon identification of a structure in the text, parser 310 links the actions associated with the grammar to the identified structure . . . upon selection of the identified structure, user interface 240 can locate the linked actions.").  '647 Patent at 4:64-5:5.  Thus, the only linking that is required is between the detected structure and the candidate actions.

83.     Despite the disagreement regarding the proper construction of the Asserted Claims, as I explain below, the Samsung Accused Devices infringe under both Samsung's and Apple's constructions.  I reserve the right to provide further opinions regarding other claim terms should Samsung assert they have a particular meaning.

### E.     Importance of the Patented Technology

84.     As I described above, the invention of the '647 Patent is particularly useful in today's mobile devices, which often prevent multiple applications from being shown simultaneously.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          29

Gibson, Dunn &
Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Specifications.)

131.     Specifications and User Manuals detailing that the Accused Products include a memory storing information including program routines can be found at Accused Products Specifications and Accused Products User Manuals, referenced above.

> e.     **Claim 1 – (d) "an analyzer server for detecting structures in the data and for linking actions to the detected structures"**

132.     As discussed above, the parties do not agree on the proper construction of this claim element.  Regardless of whose construction is adopted, as I discuss below, it is my opinion that the Samsung Accused Products contain an analyzer server for detecting structures in data and for linking actions to the detected structures.  To assist the reader I have organized this part of my declaration into two sub-sections: the first on the analyzer server's detection of structures in data, the second on its linking of actions to the detected structures.  But to be clear, it is my opinion that the analyzer server for detecting structures in the data and for linking actions to the detected structures is a single claim element.

> i     **"detecting structures in the data"**

133.     For the Browser applications in Froyo, Gingerbread and Ice Cream Sandwich devices, such as in the Ice Cream Sandwich versions of the Galaxy Nexus, the analyzer server program routines for detecting structures in data comprise the ███████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████

134.     ██████████████████████████████████████

---

[16]   Both Samsung and Google produced source code for the Galaxy Nexus.  While I cite to code produced by Samsung, I have also reviewed corresponding code produced by Google, including GOOG-NDCAL-630-S-00004833-5024, 5178-80, 5181-84.  I have also reviewed publicly available versions of the relevant source code.  There are no differences among the different code versions for purposes of my analysis.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE



135.     For the Browser applications in Jelly Bean, such as in Jelly Bean versions of the Galaxy S III, the analyzer server program routines for detecting structures in data include

136.

---

[17] Text nodes are free text within a webpage.

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

137.

        **ii**      **"linking actions to the detected structures"**

138.     The Samsung Accused Products also contain an analyzer server for linking actions to the detected structures.

139.     For the Accused Browser Products, the Browser application's analyzer server's program routines for linking actions to the detected structures consist of the

*(Cont'd on next page)*

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)     50

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

element.  Regardless of whose construction is adopted, as I discuss below, it is my opinion that the Samsung Accused Products contain an analyzer server for detecting structures in data and for linking actions to the detected structures.  To assist the reader I have organized this part of my declaration into two sub-sections: the first on the analyzer server's detection of structures in data, the second on its linking of actions to the detected structures.  But to be clear, it is my opinion that the analyzer server for detecting structures in the data and for linking actions to the detected structures is a single claim element.

i  **"detecting structures in the data"**

193.     For the Samsung Messaging application in all Android OS versions, the analyzer server program routines for detecting structures in data comprise the ███████████████████

███████████████████████████

194.     ████████████████████████████████████

██████████████████████████████████████

██

██████████████  (*See*  Android Developer's Reference – Linkify, APL-ITC796-0000314453 – 58, at http://developer.android.com/reference/android/text/util/Linkify.html.)  The Linkify class has the ability to find and identify four types of structures: web URLs, email addresses, phone numbers, and postal addresses ████████████████████████████

████████████████████████████████

██████████████████████  Pattern class objects "are compiled regular expressions." (*See* Android Developer's Reference – Pattern, at http://developer.android.com/reference/java/util/regex/Pattern.html; ███████████████

_____

25 ████████████████████████████████████████

████████████

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1

2

3

4

5

6    195.

7    The

8    Matcher class contains "[t]he result of applying a Pattern to a given input." (Matcher.java,

9    SAMNDCA630-SC00070450-58; *see also* Android Developer's Reference – Matcher, at

10   http://developer.android.com/reference/java/util/regex/Matcher.html.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   196.

26

27

28   INITIAL EXPERT REPORT OF DR .TODD C.
     MOWRY CONCERNING U.S. PATENT NO.
     5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          75

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

*See also* Android Developer's Reference –

WebView, at http://developer.android.com/reference/android/webkit/WebView.html)

197.    In the Ice Cream Sandwich and Gingerbread versions of Android.

As I describe in more detail below,

the

ii    **"linking actions to the detected structures"**

198.    The Samsung Accused Products also contain an analyzer server for linking actions to

the detected structures.

199.    For Android Gingerbread and Froyo versions of the Samsung Messaging application,

for example the Samsung Admire, the analyzer server program routines for linking actions to the

detected structures consist of

1       I declare under penalty of perjury that the foregoing is true and correct.

2

3    Dated:   August 12, 2013

4                      Todd C. Mowry

Gibson, Dunn &
Crutcher LLP