UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　　Defendants. | Case No.   11-cv-01846-LHK<br><br>**EXPERT REPORT OF JULIE L. DAVIS, CPA** |

SUBJECT TO PROTECTIVE ORDER

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the patented technology. Calculation of cost and income reference points is a widely accepted method when valuing intellectual property.[286]

191. I have examined the manner in which Mr. Musika calculated cost value reference points, which were described in paragraphs 162 to 167 of his Original Expert Report and in **Exhibits 39-S** to **39.4-S**. Mr. Musika prepared a calculation of the gross profits that Samsung would lose if it were forced to remove the infringing products that would be the subject of a hypothetical negotiation. Mr. Musika converted these losses to a per unit amount and allocated these amounts among the basket of intellectual property rights that Apple asserted in the amended complaint. I find Mr. Musika's analysis to be well-reasoned and robust. As such, I have considered these reference points when examining the results of a hypothetical negotiation based on the factors described below.

192. I have also examined the manner in which Mr. Musika calculated income value reference points, which are described in paragraphs 182 to 190 of his Original Expert Report and in **Exhibits 41-S** to **41.5-S**. Mr. Musika prepared an analysis of the difference in profitability between the iPad and iPhone and Apple's other products and an analysis of the profitability of the Samsung products. Mr. Musika revised these amounts downward to calculate a measure of economic value added associated with Apple's intellectual property. Mr. Musika also converted a valuation of Apple's brand from a well-known brand consulting firm, Interbrand, into a measure of profitability. Mr. Musika then allocated the resulting measure of economic value added among the basket of intellectual property rights that Apple asserted in the amended complaint. Again, I find Mr. Musika's analysis to be well-reasoned and robust. As such, I have considered these reference points when examining the results of a hypothetical negotiation based on the factors described below.

---

[286] AICPA Practice Aid 99-2, Valuing Intellectual Property & Calculating Infringement Damages, (1999), pp. 38 to 42.

brand.[336] He further testified regarding how other third-party studies recognized the importance of these elements to the iPhone's success and consumer appeal.[337] His testimony confirms my opinions regarding the per unit design patent royalty rate, the hypothetical negotiation between the parties, and the factors that would be considered in it, including at least the discussion regarding factors 4, 5, 10, and 13.

257.  The foregoing evidence confirms the accuracy of Mr. Musika's opinions and further supports the opinions regarding reasonable royalties that I have stated in this report.

## IX.  POSSIBLE REVISION

258.  I intend to review any new information provided after the production of this report and would supplement this report if asked to do so.

259.  I intend to read or attend the deposition of Mr. Wagner and intend to respond to any criticisms that he raises regarding my analysis.

Dated:  June 24, 2013

_____
JULIE L. DAVIS

---

[336] Russell Winer Trial Testimony, dated Aug. 7, 2012, pp. 1498:19-1508:16.

[337] Russell Winer Trial Testimony, dated Aug. 7, 2012, pp. 1525:7-1528:21; PX36: Gravity Tank, Touch Portfolio (SAMNDCA00191811–SAMNDCA00191987).

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

111