# EXHIBIT 3



**ETSI/GA29(97)/SCM/03**
1 June 2006
page 1 of 6

> **29th General Assembly**
> **Specially Convened Meeting**
> **Nice, 18-19 November 1997**

**Source:**       ETSI Director-General

**Title:**         Amendments of the ETSI Interim Intellectual Property Rights Policy

**Agenda item:** 4

**Document for:** Decision

# 1    Decision/action requested

> *The General Assembly is invited to approve the proposed modifications to*
> *Annex 6 of the ETSI Rules of Procedure allowing*
> *the ETSI Interim Intellectual Property Rights Policy to become definitive*

# 2    References

- ETSI/GA27(96)11 Rev.1 - Minutes of the ETSI 27th General Assembly meeting 11 December 1996 - Nice;

- Annex 6 Rules of Procedure - ETSI Interim IPR Policy approved by the General Assembly at its Specially Convened Meeting held on 23 November 1994;

# 3    Rationale

Article 15 of the Interim Intellectual Property Rights (IPR) Policy approved on 23 November 1994 requires the General Assembly to take a decision on the duration of the Interim IPR Policy by the 23 November 1998.

In light of the satisfactory functioning of the Interim IPR Policy, it is proposed that this specially convened General Assembly, adopts the following amendments of the Interim IPR Policy which would allow the Interim IPR Policy to become a permanent one.

# 4    Consequences and implications

As it can be seen below, the amendments needed for the Interim IPR Policy to become a permanent one, are only related to the following sections of Interim IPR Policy:

- Article 1
- Articles 15

S-ITC-003356882

# Annex 6:
# ETSI ~~Interim~~ Intellectual Property Rights Policy

---

**ETSI ~~INTERIM~~ IPR POLICY**

approved by

the ETSI General Assembly at its Specially Convened Meeting

held on 18-19~~23~~ November ~~1994~~ 1997, in Nice

---

## 1      Introduction

The General Assembly of ETSI has established the following ~~interim~~ Intellectual Property Rights POLICY.

## 2      Definitions

Terms in the POLICY which are written in capital letters shall have the meaning set forth in the ANNEX entitled DEFINITIONS.

## 3      Policy Objectives

3.1    STANDARDS shall be based on solutions which best meet the technical objectives of the European telecommunications sector, as defined by the General Assembly. In order to further this objective the ETSI IPR POLICY seeks to reduce the risk to ETSI, MEMBERS, and others applying ETSI STANDARDS, that investment in the preparation, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD being unavailable. In achieving this objective, the ETSI IPR POLICY seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs.

3.2    IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS.

3.3    ETSI shall take reasonable measures to ensure, as far as possible, that its activities which relate to the preparation, adoption and application of STANDARDS, enable STANDARDS to be available to potential users in accordance with the general principles of standardization.

## 4      Disclosure of IPRs

4.1    Each MEMBER shall use its reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs it becomes aware of. In particular, a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

4.2  The obligations pursuant to Clause 4.1 above do however not imply any obligation on MEMBERS to conduct IPR searches.

# 5   Procedures for Committees

ETSI shall establish guidelines for the chairmen of COMMITTEES with respect to ESSENTIAL IPRs.

# 6   Availability of Licences

6.1  When an ESSENTIAL IPR relating to a particular STANDARD is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory terms and conditions under such IPR to at least the following extent:
- MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;
- sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;
- repair, use, or operate EQUIPMENT; and
- use METHODS.

The above undertaking may be made subject to the condition that those who seek licences agree to reciprocate.

6.2  At the request of the European Commission and/or EFTA, initially for a specific STANDARD or a class of STANDARDS, ETSI shall arrange to have carried out in a competent and timely manner an investigation including an IPR search, with the objective of ascertaining whether IPRs exist or are likely to exist which may be or may become ESSENTIAL to a proposed STANDARD and the possible terms and conditions of licences for such IPRs. This shall be subject to the European Commission and/or EFTA meeting all reasonable expenses of such an investigation, in accordance with detailed arrangements to be worked out with the European Commission and/or EFTA prior to the investigation being undertaken.

# 7   Information on IPR by ETSI

7.1  Any published STANDARD shall include information pertaining to ESSENTIAL IPRs which are brought to the attention of ETSI prior to such publication.

7.2  ETSI shall establish appropriate procedures to allow access to information at any time with respect to ESSENTIAL IPRs which have been brought to the attention of ETSI.

# 8   Non-availability of Licences

8.1  MEMBERS' refusal to license

8.1.1  Where a MEMBER notifies ETSI that it is not prepared to license an IPR in respect of a STANDARD, the General Assembly shall review the requirement for that STANDARD and satisfy itself that a viable alternative technology is available for the STANDARD which:
- is not blocked by that IPR; and
- satisfies ETSI's requirements.

8.1.2  Where, in the opinion of the General Assembly, no such viable alternative technology exists, work on the STANDARD shall cease, and the Director-General of ETSI shall request that MEMBER to reconsider its position. If the MEMBER decides not to withdraw its refusal to license the IPR, it shall inform the Director-General of ETSI of its decision and provide a written explanation of its reasons for refusing to license that IPR, within three months of its receipt of the Director-General's request.
The Director-General shall then send the MEMBER's explanation together with relevant extracts from the minutes of the General Assembly to the ETSI Counsellors for their consideration.

8.2  Non-availability of licences from third parties

Where, in respect of a STANDARD, ETSI becomes aware that licences are not available from a third party in accordance with Clause 6.1 above, that STANDARD shall be referred to the Director-General of ETSI for further consideration in accordance with the following procedure:

i) The Director-General shall request full supporting details from any MEMBER who has complained that licences are not available in accordance with Clause 6.1 above.

ii) The Director-General shall write to the IPR owner concerned for an explanation and request that licences be granted according to Clause 6.1 above.

iii) Where the IPR owner refuses the Director-General's request or does not answer the letter within three months, the Director-General shall inform the General Assembly. A vote shall be taken in the General Assembly on an individual weighted basis to immediately refer the STANDARD to the relevant COMMITTEE to modify it so that the IPR is no longer ESSENTIAL.

iv) Where the vote in the General Assembly does not succeed, then the General Assembly shall, where appropriate, consult the ETSI Counsellors with a view to finding a solution to the problem. In parallel, the General Assembly may request appropriate MEMBERS to use their good offices to find a solution to the problem.

v) Where (iv) does not lead to a solution, then the General Assembly shall request the European Commission to see what further action may be appropriate, including non-recognition of the STANDARD in question.

In carrying out the foregoing procedure due account shall be taken of the interest of the enterprises that have invested in the implementation of the STANDARD in question.

# 9   ETSI ownership of IPRs

9.1 The ownership of the copyright in STANDARDS documentation and reports created by ETSI or any of its COMMITTEES shall vest in ETSI but due acknowledgement shall be given to copyrights owned by third parties that are identifiable in ETSI copyrighted works.

9.2 In respect of IPRs other than copyright in STANDARDS documentation and reports, ETSI shall only seek ownership of IPRs generated either by its employees or by secondees to ETSI from organizations who are not MEMBERS.

9.3 ETSI shall, on request by a non-member, grant licences to that non-member on fair and reasonable terms and conditions in respect of any IPRs, other than those referred to in Clause 9.1 above, owned by ETSI. MEMBERS shall be allowed to use IPRs owned by ETSI free of charge.

# 10   Confidentiality

The proceedings of a COMMITTEE shall be regarded as non-confidential except as expressly provided below and all information submitted to a COMMITTEE shall be treated as if non-confidential and shall be available for public inspection unless:

- the information is in written or other tangible form; and
- the information is identified in writing, when submitted, as confidential; and
- the information is first submitted to, and accepted by, the chairman of the COMMITTEE as confidential.

CONFIDENTIAL INFORMATION incorporated in a STANDARD shall be regarded as non-confidential by ETSI and its MEMBERS, from the date on which the STANDARD is published.

# 11   Reproduction of Standards Documentation

MEMBERS may make copies of STANDARDS documentation produced by ETSI for their own use free of charge but may not distribute such copies to others.

S-ITC-003356885

## 12      Law and Regulation

The POLICY shall be governed by the laws of France. However, no MEMBER shall be obliged by the POLICY to commit a breach of the laws or regulations of its country or to act against supranational laws or regulations applicable to its country insofar as derogation by agreement between parties is not permitted by such laws.

Any right granted to, and any obligation imposed on, a MEMBER which derives from French law and which are not already contained in the national or supranational law applicable to that MEMBER is to be understood as being of solely a contractual nature.

## 13      Policy Decisions

Without prejudice to ETSI's Statutes and Rules of Procedure, no decisions shall be taken by ETSI in relation to implementation of the POLICY unless supported by a 71% majority of the weighted individual votes cast by MEMBERS.

## 14      Violation of Policy

Any violation of the POLICY by a MEMBER shall be deemed to be a breach, by that MEMBER, of its obligations to ETSI. The ETSI General Assembly shall have the authority to decide the action to be taken, if any, against the MEMBER in breach, in accordance with the ETSI Statutes.

## 15      Duration and Development of Policy

~~ETSI and its MEMBERS shall use their best efforts to agree a definitive intellectual property rights policy. The efforts to formulate the definitive intellectual property rights policy shall include an evaluation of the application of the interim POLICY by the General Assembly to be completed not later than four years from the date of adoption of the interim POLICY and, if necessary, a modification of the present POLICY.~~

The present POLICY shall:

- come into effect on 20 ~~23~~ November 1997 ~~1994~~ for a minimum duration of two years;
- ~~remain in effect after said minimum duration unless terminated by the General Assembly by a 71% majority of a weighted individual member vote confirmed by a 71% majority of the weighted national vote;~~
- remain in effect and not be amended unless the termination or amendment is supported by a 71% majority of the weighted individual member vote.

S-ITC-003356886

# Annex to the ETSI ~~Interim~~ Intellectual Property Rights Policy

## Definitions

1. **"AFFILIATE"** of a first legal entity means any other legal entity:
   - directly or indirectly owning or controlling the first legal entity, or
   - under the same direct or indirect ownership or control as the first legal entity, or
   - directly or indirectly owned or controlled by the first legal entity,
   
   for so long as such ownership or control lasts.
   Ownership or control shall exist through the direct or indirect:
   - ownership of more than 50% of the nominal value of the issued equity share capital or of more than 50% of the shares entitling the holders to vote for the election of directors or persons performing similar functions, or
   - right by any other means to elect or appoint directors, or persons who collectively can exercise such control. A state, a division of a state or other public entity operating under public law, or any legal entity, linked to the first legal entity solely through a state or any division of a state or other public entity operating under public law, shall be deemed to fall outside the definition of an AFFILIATE.

2. **"COMMITTEE"** shall mean any working party or committee of ETSI and shall include Technical Committees, Sub-Technical Committees, Project Teams and rapporteur groups.

3. **"CONFIDENTIAL INFORMATION"** shall mean all information deemed to be confidential pursuant to Clause 10 of the POLICY disclosed directly or indirectly to the MEMBER.

4. **"EQUIPMENT"** shall mean any system, or device fully conforming to a STANDARD.

5. **"METHODS"** shall mean any method or operation fully conforming to a STANDARD.

6. **"ESSENTIAL"** as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

7. **"IPR"** shall mean any intellectual property right conferred by statute law including applications therefor other than trademarks. For the avoidance of doubt rights relating to get-up, confidential information, trade secrets or the like are excluded from the definition of IPR.

8. **"MANUFACTURE"**, shall mean production of EQUIPMENT.

9. **"MEMBER"** shall mean a member or associate member of ETSI. References to a MEMBER shall wherever the context permits be interpreted as references to that MEMBER and its AFFILIATES.

10. **"POLICY"** shall mean ETSI's Intellectual Property Rights Policy.

11. **"STANDARD"** shall mean any standard adopted by ETSI including options therein or amended versions and shall include European Standards (ENs) (telecommunications series), ETSI Standards (ESs), Common Technical Regulations (CTRs) which are taken from ENs (telecommunications series) and including drafts of any of the foregoing, and documents made under the previous nomenclature, including ETSs, I-ETSs, parts of NETs and TBRs, the technical specifications of which are available to all MEMBERS, but not including any standards, or parts thereof, not made by ETSI.
    The date on which a STANDARD is considered to be adopted by ETSI for the purposes of this POLICY shall be the date on which the technical specification of that STANDARD was available to all MEMBERS.

S-ITC-003356887