QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　　Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S NOTICE OF MOTIONS AND MOTIONS *IN LIMINE***<br><br>Date:  March 5, 2014<br>Time:  2:00 pm<br>Place:  Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.   Motion # 1:  To Exclude Evidence of Subjective Willfulness Unless the Court First
     Determines the Objective Requirement Is Satisfied ............................................................ 1

     A.   Legal Background ...................................................................................................... 1

     B.   The Court's Summary Judgment Order Precludes A Finding Of Willfulness
          As To The '959, '414, and '647 Patents ................................................................. 3

     C.   An Order *In Limine* Is Also Appropriate As To The '721 And '172 Patents ........... 4

II.  Motion #2:  To Exclude Evidence or Argument That Apple Practices the '414 or
     '172 Patents .......................................................................................................................... 5

III. Motion #3:  To Exclude Evidence of Purported "Copying" .............................................. 10

     A.   The Court Should Exclude Alleged "Copying" Documents Concerning
          Asserted Claims that Apple Does Not Practice ...................................................... 10

     B.   The Court Should Exclude Alleged "Copying" Documents That Do Not
          Discuss Claimed Features or Functionality ............................................................ 11

     C.   The Court Should Exclude Alleged "Copying" Documents That Post-Date
          The Introduction of the Accused Features .............................................................. 14

IV.  Motion #4:  To Exclude Evidence or Argument that Samsung "Copied" In
     Connection With the Galaxy Nexus ................................................................................... 14

V.   Motion #5:  Exclude Evidence of Samsung's Total Revenues or Profits From Sales
     of the Accused Products ..................................................................................................... 16

VI.  Motion #6:  To Exclude Evidence of Damages On Sales For Which Apple Has
     Already Obtained an Award of Samsung's Profits ............................................................ 18

VII. Motion #7:  To Exclude Evidence or Argument That Samsung Breached the
     Protective Order ................................................................................................................. 21

     A.   Any Evidence or Argument that Samsung or Its Counsel Breached the
          Protective Order Should Be Precluded as Irrelevant .............................................. 21

     B.   Any Arguable Probative Value Is Substantially Outweighed by the Risk of
          Prejudice, Confusion, and Waste of Time .............................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Aero Products International, Inc. v. Intex Recreation Corp.*,
  466 F.3d 1000 (Fed. Cir. 2006) ................................................................................20

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) .........................................................................10, 11

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
  682 F.3d 1003 (Fed. Cir. 2012) ............................................................................1, 2

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
  295 F.3d 1277 (Fed. Cir. 2002) .........................................................................19, 20

*Cf. Asyst Techs. v. Empak, Inc.*,
  No. 98-2045-JF, 2007 WL 120845 (N.D. Cal. Jan. 11, 2007) .....................11, 12, 13

*Cytyc Corp. v. TriPath Imaging, Inc.*,
  505 F. Supp. 2d 199 (D. Mass. 2007) ........................................................................9

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  747 F. Supp. 2d 1063 (W.D. Wis. 2010) ...................................................................4

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  No. 03-1431 ...............................................................................................................9

*Gart v. Logitech, Inc.*,
  254 F. Supp. 2d 1119 (C.D. Cal. 2003) .....................................................................9

*Guzik Technical Enterprises, Inc. v. Western Digital Corp.*,
  No. 11-03786-PSG, 2013 WL 6227626 (N.D. Cal. Nov. 22, 2013) .......................2, 3

*Gyromat Corp. v. Champion Spark Plug Co.*,
  735 F.2d 549 (Fed. Cir. 1984) .................................................................................18

*Laser Design Int'l, LLC v. BJ Crystal, Inc.*,
  No. 03-1179 ...............................................................................................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ...............................................................................17, 18

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
  No. 03-927-GMS, 2005 WL 1331216 (D. Del. June 6, 2005) ............................10, 13

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
  No. 09-80-LPS-MPT, 2013 WL 2920478 (D. Del. June 14, 2013) .....................2, 3, 4

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
  No. 08-04990 ...........................................................................................................17

*Multimedia Patent Trust v. Apple Inc.*,
  No. 10-2618, 2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) ....................................17

*Powell v. Home Depot USA Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011) .................................................................................1, 2

*Rissetto v. Plumbers & Steamfitters Local*
  *343*, 94 F.3d 597 (9th Cir. 1996)....................................................................................9

*Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*,
  926 F.2d 1161 (Fed. Cir. 1991)......................................................................................18

*Tarkus Imaging, Inc. v. Adobe Sys., Inc.*,
  867 F. Supp. 2d 534 (D. Del. 2012) .......................................................................1, 2, 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)......................................................................................17

*W.M. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
  683 F.3d 1356 (Fed. Cir. 2012)...............................................................................12, 13

## **<u>Statutes</u>**

35 U.S.C. § 289 ....................................................................................................................10

Fed. R. Evid. 401, 402.........................................................................................................13

Fed. R. Evid. 403......................................................................................................10, 13, 14

Fed. R. Evid. 701....................................................................................................................9

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 5, 2014 at 2:00 p.m, or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") will and hereby do move the Court for an order to exclude:

1.   Evidence of Subjective Willfulness Unless the Court First Determines the Objective Requirement Is Satisfied

2.   Evidence or Argument That Apple Practices the '414 or '172 Patents

3.   Evidence of Purported "Copying"

4.   Evidence or Argument that Samsung "Copied" In Connection With the Galaxy Nexus

5.   Evidence of Samsung's Total Revenues or Profits From Sales of the Accused Products

6.   Evidence of Damages On Sales For Which Apple Has Already Obtained an Award of Samsung's Profits

7.   Evidence or Argument that Samsung Breached the Protective Order In This Case or Other Litigation

These motions are based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Michael L. Fazio ("Fazio Decl.") and exhibits thereto; and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

1  DATED:  February 18, 2014          QUINN EMANUEL URQUHART &
2                                      SULLIVAN, LLP

3                                         By */s/ Victoria F. Maroulis*
4                                            Charles K. Verhoeven
                                             Kevin P.B. Johnson
5                                            Victoria F. Maroulis
                                             William C. Price
6                                            Michael L. Fazio
7                                            Attorneys for SAMSUNG ELECTRONICS CO.,
                                             LTD., SAMSUNG ELECTRONICS AMERICA,
8                                            INC., and SAMSUNG
                                             TELECOMMUNICATIONS AMERICA, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to the Court's January 24, 2014 Case Management Order (Dkt. 1158), Samsung moves *in limine* to exclude the evidence and argument described below.

I.    **Motion # 1:  To Exclude Evidence of Subjective Willfulness Unless the Court First Determines the Objective Requirement Is Satisfied**

Samsung moves *in limine* for an order barring Apple from submitting evidence to the jury regarding alleged willful infringement.  It is black-letter law that a jury should not consider the subjective requirement of willful infringement unless the Court *first* determines that the "threshold objective standard is satisfied."  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.* 682 F.3d 1003, 1005-1007 (Fed. Cir. 2012); *see also Powell v. Home Depot USA Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) (emphasis added) ("Since *Seagate*, this court has required patentees to prove the objective prong of the willful infringement inquiry by clear and convincing evidence *as a predicate* to the jury's consideration of the subjective prong.") (emphasis added).  Apple cannot, as a matter of law, make a showing that the objective requirement is satisfied.  Thus, as Magistrate Judge Grewal recently concluded in a similar case, an order *in limine* is appropriate to avoid confusion and prevent undue prejudice.

A.    **Legal Background**

The Federal Circuit has repeatedly held that the judge—not the jury—must initially determine whether the objective prong of willfulness is met, including whether "an accused infringer's reliance on a particular issue or defense is reasonable." *Bard*, 682 F.3d at 1006-07; *see also id.* at 1008 (objective prong "should always be decided as a matter of law by the judge"). "Should the court determine that the infringer's reliance on a defense was not objectively reckless, *it cannot send the question of willfulness to the jury*, since proving the objective prong is a predicate to consideration of the subjective prong." *Powell*, 663 F.3d at 1236 (emphasis added); *See also Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, 867 F. Supp. 2d 534, 536-37 (D. Del. 2012) ("If

1   . . . the first prong cannot be shown, then the Court should not put the issue of willfulness—

2   including the second 'subjective' prong—before a jury.") (citing *Powell*, 663 F.3d at 1236).[1]

3          Given this Court's recent findings on summary judgment and the substantial nature of

4   Samsung's defenses, the question of willfulness—and evidence on that issue—cannot go to the

5   jury.  This case is on all fours with *Guzik Technical Enterprises, Inc. v. Western Digital Corp.*,

6   No. 11-03786-PSG, 2013 WL 6227626, at *9 (N.D. Cal. Nov. 22, 2013), where the Court had

7   recently denied the defendant's motion for summary judgment of invalidity, finding triable issues

8   of fact regarding defendant's anticipation and obviousness defenses.  *Id.*  Relying on its summary

9   judgment findings, the Court issued an order *in limine* barring evidence of willful infringement,

10  finding that "[b]ecause a reasonable jury could find that the [patent-in-suit] could be found invalid

11  on multiple grounds, a finding of willfulness is precluded.  It would be unfairly prejudicial to

12  instruct the jury on willfulness where that issue is not properly before the jury."  *Id.*

13         The Court in *Guzik* relied on *Tarkus Imaging, Inc. v. Adobe Systems, Inc.*, 867 F. Supp. 2d

14  534 (D. Del. 2012), which is similarly instructive.  There, the court considered the defendant's

15  contention that even though there were remaining factual issues for the jury, the court should first

16  resolve the objective prong of willfulness in the defendant's favor before trial.  The court

17  concluded that it could not send the subjective prong of willfulness to the jury until it first

18  considered the defendant's request.  *See id.* at 536-37.  The court granted summary judgment of no

19  willfulness, finding that the patentee could not meet the objective prong because the defendant had

20  proposed reasonable constructions for claim limitations under which it would not infringe—even

21  though the Court had not adopted those constructions.  *Id.* at 537; *see also Masimo Corp. v.*

22  *Philips Elecs. N. Am. Corp.,* No. 09-80-LPS-MPT, 2013 WL 2920478, at *3-5 (D. Del. June 14,

23  2013) (finding no objective willfulness based on reasonable, but rejected, constructions and

---

[1]   The Federal Circuit has stated that the objective prong of the willfulness inquiry should resolved prior to the jury hearing evidence of willfulness unless the court needs to hear evidence relating to defenses such as unenforceability first.  *See Powell*, 663 F.3d at 1237, n.2; *Bard*, 682 F.3d at 1008.  There is no such need to wait here, as set forth below.

invalidity defenses, and rejecting the patentee's contention that reasonableness of the defendant's defenses could only be decided after a full liability trial).

**B.     The Court's Summary Judgment Order Precludes A Finding Of Willfulness As To The '959, '414, and '647 Patents**

Just as in *Guzik*, the Court is already in position to find Samsung's defenses are objectively reasonable based on the summary judgment proceedings.  In denying Apple's motions for summary judgment on the '414, '647, and '959 patents, the Court found that Samsung has raised good faith defenses that a reasonable jury could accept for each of those three patents.  As in *Guzik*, these rulings preclude a finding of willfulness and warrant an order *in limine*.  Specifically:

- On the '647, the Court denied Apple's motion for summary judgment of infringement, finding that in light of Samsung's non-infringement defenses, Apple's contention that it was entitled to summary judgment was "without merit."  Dkt. 1151 at 18-19.

- On the '414, the Court denied Apple's motion for summary judgment of infringement because "a jury could reasonably conclude that" Samsung's non-infringement defenses were correct.  *Id.* at 23-24.

- On the '959, the Court denied Apple's motion for summary judgment that claims 24-25 are not invalid based on the Court conclusion that a reasonable jury could find that two anticipatory prior art systems—AppleSearch and WAIS—qualified as invalidating prior art.  *Id.* at 28-29.  The Court further concluded that while it would be premature to invalidate claims 24 and 25 of the '959 patent as indefinite, Samsung was free to raise its indefiniteness this defense at trial if Apple persisted in distinguishing the '959 patent from the prior art based on the term "heuristic."  *Id.* at 33 n.11.

- The Court further considered Samsung's noninfringement and invalidity arguments for each of these patents, finding that a reasonable juror could decide for either party.  *Id.* at 1151 at 20-21, 25.

These rulings closely parallel *Guzik*, in which the Court found that "[b]ecause a reasonable jury could find that the [patent-in-suit] could be found invalid on multiple grounds, ***a finding of willfulness is precluded***.  It would be unfairly prejudicial to instruct the jury on willfulness where that issue is not properly before the jury."  *Guzik*, 2013 WL 6227626 at *9 (emphasis added).  They also closely parallel this Court's ruling during the parties' earlier litigation, where this Court found the objective prong of willfulness was not satisfied with respect to the '163 patent because Samsung raised good faith, objectively reasonable defenses: "although the Court has ultimately found the term . . . definite, Samsung's position . . . was objectively reasonable, and raised close questions of law concerning the definiteness requirement in the context of terms of degree."  Case

1   No. 11-1846, Dkt. 2220 at 28.[2]  By denying Apple summary judgment, the Court has found

2   Samsung's defenses on the '647, '414 and '959 patents to be "objectively reasonable" defenses a

3   jury could accept, barring further consideration of willfulness.

4         **C.**      **An Order *In Limine* Is Also Appropriate As To The '721 And '172 Patents**

5         An order *in limine* on willfulness is also warranted for the '172 and '721 patents.  On the

6   '172 patent,  Samsung will present strong invalidity defenses that are unquestionably objectively

7   reasonable—indeed, the PTO recently granted an *ex parte* re-examination request against the '172

8   patent on the same prior art that Samsung will present at trial, finding that this prior art raised a

9   substantial question of patentability.  *Compare* Dkt. 1234-1 at 9-17 (PTO findings) *with* Fazio

10  Decl. Ex. 1, Wigdor Rpt. ¶¶ 296-336, 426-483.  Moreover, as in *Tarkus Imaging,* Samsung raised

11  a construction of "a portable electronic device with a keyboard and a touch screen display" that

12  would have resulted in a finding of non-infringement, had the Court adopted it.  Dkt. 1151 at 11

13  (noting the '172 Accused Products "indisputably lack" a physical keyboard).  Although the Court

14  did not Samsung's claim construction, based on its reading of the specification and its comparison

15  to other claims, several courts have found that a reasonable claim construction precludes any

16  finding of objective willfulness, even where the court did not the defendant's construction.  *See,*

17  *e.g., Tarkus Imaging,* 867 F. Supp. 2d at 536-37; *Masimo*, 2013 WL 2920478 at *3-5; *Douglas*

18  *Dynamics, LLC v. Buyers Prods. Co.*, 747 F. Supp. 2d 1063, 1113 (W.D. Wis. 2010) (finding no

19  objective willfulness despite grant of summary judgment of infringement where defendant raised a

20  rejected claim construction that would have negated infringement).  Samsung's proposed

21  construction was based on a close reading of the claim language, specification and embodiments,

22  as well as well-accepted principles of claim construction.  Dkt. 1151 at 13-14.

23        Likewise, regarding the '721 patent, Samsung has raised a set of reasonable, credible

24  noninfringement and invalidity defenses to this patent.  For example, Samsung's expert, Dr. Saul

25  Greenberg, submitted an extensive report regarding invalidity of the '721 patent based on

26  anticipation by the Hyppönen prior art (*see* Fazio Decl. Ex. 2, Greenberg Rpt. ¶¶ 289-336), as well

27

28        [2]  Citations to the docket in Case No. 11-1846 are hereafter abbreviated as "1846 Dkt."

as obviousness (*id.* at ¶¶ 458-523) and indefiniteness (*id.* at ¶¶ 825-844).  The Hyppönen prior art has already been used to invalidate a foreign counterpart of U.S. Pat. No. 7,657,849, the parent of the '721 patent.  Fazio Decl. Ex. 3.  Samsung has also raised substantial noninfringement defenses to Apple's claims, barring any finding that Apple has met the objective prong.  Fazio Decl. Ex. 4, Greenberg Rebuttal Rpt. ¶¶ 22-36.

As this Court noted in its ruling on willfulness in the first trial between these parties, "Samsung need[s] only one reasonable defense on which to rely, in order to defeat the objective willfulness inquiry."  1846 Dkt. 2220 at 32.  Here, Samsung has multiple defenses, and Apple has no grounds for challenging their reasonableness.  In fact, none of Apple's experts set forth an opinion on the objective willfulness inquiry, and the only basis Apple has set forward in this litigation regarding willfulness merely refers to its first Complaint in this matter without addressing any of Samsung's defenses.  *See* Fazio Decl. Ex. 5 at 5 (Apple's Amended Pat. L.R. 3-1(h) disclosure failing to address the objective reasonableness of Samsung's defenses).

The Court's findings in the first trial show why the Court should resolve Samsung's motion now:  in the first case, the parties expended considerable trial time litigating issues of subjective willfulness, only for the Court to later rule that Apple could not establish the objective prong for any of Apple's five asserted patents.  *See* 1846 Dkt. 2220 at 27-32.  In this case, the Court should not require Samsung to waste time rebutting allegations that will have no substantive impact, and will only prejudice Samsung and confuse the jury.

## II.    Motion #2:  To Exclude Evidence or Argument That Apple Practices the '414 or '172 Patents

Seeking to avoid rulings on Samsung's motion to enforce the case narrowing order and Samsung's motion for summary judgment of invalidity, Apple agreed not to argue at trial that Apple's products practice the '414 or '172 patents.  Fazio Decl. Ex. 6, 12/12/13 Hrg. Tr. at 162:18-163:5.  This agreement covered both the asserted and unasserted claims of these patents. *Id.* at 157:19-158:4, 170:15-25.  The Court relied on these representations in its December 13, 2013 Order.  Dkt. 1057 at 2.  The Court should hold Apple to its word by ordering *in limine* that at

1  trial, Apple cannot present evidence or argument suggesting that the iPhone practices the '414 or
2  '172 patents.  This includes evidence regarding iOS synchronization and the iOS keyboard.

3          As the Court is well aware, to avoid a finding of invalidity, Apple told this Court that it
4  would not argue at trial that its products practice unasserted claim 11 of the '414 patent or
5  unasserted claim 27 of the '172 patent.  Fazio Decl. Ex. 6 at 170:23-171-4.  Moreover, Apple
6  agreed at that same hearing that it does not contend its products practiced asserted claim 20 of the
7  '414 patent or asserted claim 18 of the '172 patent.  *Id.* at 162:18-163:5 ("Your position is that
8  they do not practice claim 18 of the '172, claim 20 . . . of the '414, or claims 24 and 25 of the
9  '959? . . . . MS. MAROULIS: That's correct, your honor, and I don't think Apple would disagree
10 with that.  THE COURT: What's your response?  MR. KREVITT: We agree with that point, your
11 honor.  ***We are not alleging that we practice those claims***.") (emphasis added).   Apple's positions
12 on claim 20 of the '414 patent and claim 18 of the '172 patent were unsurprising.  Apple's
13 interrogatory responses confirm that ████████████████████████████████████████████████
14 ████████████████████████  Dkt. 1065-2 at 53-55, 57-58; Fazio Decl. Ex. 7 at 130-335, 339-
15 340.)  Apple's technical experts likewise ██████████████████████████████████████████████
16 ███████████████████████████  Dkt. 1081, Snoeren Rpt. ¶¶ 525-28; Fazio Decl. Ex.
17 8, 9/25/13 Snoeren Dep. Tr. at 253:18-24; Dkt. 1081-2, Cockburn Rpt. ¶¶ 470-73; Fazio Decl. Ex.
18 9, 9/26/13 Cockburn Dep. Tr. at 33:7-35:2.  This Court struck the only expert opinions on Apple's
19 alleged practice of the patents—specifically, opinions on non-asserted claim 11 of the '414 patent
20 and non-asserted claim 27 of the '172 patent.  Dkt. 1057 at 2.  In so doing, this Court recognized
21 that claim 11 of the '414 patent was likely invalid, and it would be unfair for Apple to rely on
22 claims to practice the '414 patent at trial while avoiding a pre-trial finding of invalidity.  Fazio
23 Decl. Ex. 6 at 156:4-16 ("You can't have it both ways. . . . Do you want us to go ahead and
24 invalidate claim 11? . . . I think it's a weak one and that's why you didn't choose it and that's why
25 you chose claim 20.").

26         Despite this clear record, Apple appears ready to use the '414 patent inventor, Gordon
27 Freedman, to suggest misleadingly that the iPhone practices claim 20.  Under the guise of
28 addressing "conception" and "reduction to practice," Apple proposes to show the jury multiple

1   Apple emails discussing the iPhone.  *See, e.g.,* Dkt. 1272-3 at PX101; *id.* at PX170; *id.* at PX171[3].

2   Apple's expert claims these emails are relevant because they detail ████████████████████

3   ██████████████████████████████████████████████████████████████████

4   ████████  Fazio Decl. Ex. 10, Snoeren Rebuttal Rpt. ¶ 392 (citing PX170 (APLNDC630-

5   0000163586)).  But this is exactly the problem.  Apple does *not* claim Mr. Freedman ████████

6   ██████████████████████████████████████████████████████████████████

7   ████████████████████████████.  Yet Apple proposes to tell the jury that Mr.

8   Freedman's ████████████████████████████████ is the basis for claim 20 of the

9   '414 patent.

10       Apple can **only** want this evidence to misleadingly suggest to the jury that the iPhone uses

11   claim 20 of the '414 patent.  There is no other legitimate basis for this material.  And there is no

12   reason to speculate on Apple's true intention: ██████████████████████████████████

13   ████████████████████  Apple's exhibit list identifies Mr. Freedman as a sponsoring witnesses

14   for "Apple **practicing devices**."  *See, e.g.,* Dkt. 1272-3 at PX109.  Moreover, Apple's witness list

15   states that Mr. Freedman will sponsor iOS source code as a witness—████████████████████

16   ██████████████████████████████████.  *See id.* at PX108.

17       Apple claims that its discussion of the iPhone is relevant because of priority—specifically,

18   its claimed early priority date of February 24, 2006.  But that priority date is a non-issue:  **it is not**

19   **relevant to any validity position**.  All of Samsung's prior art pre-dates the earlier alleged priority

20   date of February 24, 2006.  *See* Fazio Decl. Ex. 11, Chase Rpt. ¶¶ 217-218, 241, 531, 533, 648-

21   649, 651-652.  Apple's conception and diligence are simply not relevant to any issue in dispute.

22   Yet Apple continues to seek to introduce evidence regarding the conception and reduction to

───────────────────────

24      [3]  For the Court's convenience, Plaintiff's Exhibits are referred to by their proposed exhibit

25   number.  Samsung has filed the relevant exhibits as attachments to the Declaration of Michael L.
     Fazio in Support of Samsung's Notice of Motions and Motions *In Limine*, submitted herewith.

26   The parties have agreed to exchange translations of foreign-language exhibits on February 19,
     2014.  Accordingly, Samsung will submit Apple's proposed translations of any foreign-language

27   document discussion in this motion when it filed its opposition to Apple's motions in limine on
     February 25, 2014.

1    practice of the '414 patent into the record.  In doing so, Apple seeks to confuse the jury by

2    suggesting that the '414 patent is ███████████████—the very argument it promised not to make at

3    trial.  Fazio Decl. Ex. 6 at 162:18-163:5, 170:23-171:18.

4            As with the '414 patent, Apple appears ready to use testimony from a '172 patent inventor,

5    Kenneth Kocienda, to misleadingly suggest that the iPhone practices claim 18.  Just like Mr.

6    Freedman, Apple proposes, under the pretext of "conception" and "reduction to practice," to show

7    the jury documents that discuss the iPhone.  *See, e.g.,* Dkt. 1272-3 at PX177.  But Apple does not

8    claim ████████████████████████████████████████████████.  Yet

9    Apple proposes to tell the jury that Mr. Kocienda ████████████████████████████

10   █████████████████████████████.

11           Apple can ***only*** want this evidence to misleadingly suggest to the jury that the iPhone uses

12   claim 18 of the '172 patent.  There is no other legitimate basis identified by Apple for this

13   material.  And there is no reason to speculate on Apple's goals:  despite the fact that ███████████

14   ████████████████████████, Apple's exhibit list identifies Mr. Kocienda as a

15   sponsoring witnesses for "Apple ***practicing devices***."  *See, e.g.,* Dkt. 1272-3 at PX109.  Moreover,

16   Apple's witness list states that Mr. Kocienda will sponsor iOS source code as a witness—despite

17   the fact that █████████████████████████████████████████.

18           Apple's attempt to include Mr. Kocienda's testimony under the guise of conception and

19   reduction to practice is misplaced.  Apple's claimed priority date based on its alleged conception

20   and reduction to practice—████████████ versus the January 5, 2007 filing date—fails to pre-date

21   any of Samsung's remaining prior art.  *See* Fazio Decl. Ex. 1, Wigdor Rpt. ¶¶ 296, 312, 327.

22           The Court should preclude Apple from presenting evidence at trial clearly intended to

23   ████████████████████████████████████████████████████████.

24   Apple has no expert testimony claiming that ███████████████████████████████████

25   ████████████████████████████████████████████████ (*see* supra

26

27

28

at 6).  Apple should not be permitted to use its inventors as backdoor experts to inject new arguments regarding alleged practice of the '414 and '172 patents.  Fed. R. Evid. 701.[4]

Moreover, as the Court is aware, both Samsung and the Court relied on Apple's prior statements that it would not, under any circumstances, introduce evidence or argument at trial that Apple practices the '414 or '172 patents.  The doctrine of judicial estoppel therefore prohibits Apple from taking a position at trial inconsistent with its representations at the Motion to Enforce hearing.  *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) ("Judicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.").  For this independent reason, Apple should not be allowed to rescind its prior election, nor should it be permitted to present misleading, irrelevant, and confusing materials to the jury regarding the '414 and '172 patents.[5]

---

[4] *See also* 1846 Dkt. 2719 at 4-6 (prohibiting Apple from presenting a new damages theory through a fact witness, where an expert would not be able to explain the calculations, and noting that it would be "particularly difficult" for the jury to reach a damages figure "where the issues are complex, the parties are large companies, and the damages evidence is hotly contested"); *Laser Design Int'l, LLC v. BJ Crystal, Inc.*, No. 03-1179 JSW, 2007 WL 735763, at *3 (N.D. Cal. Mar. 7, 2007) ("[W]hile lay witnesses may be allowed to testify as to their personal knowledge of a particular invention or prior art, they may not 'provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.'"); *Cytyc Corp. v. TriPath Imaging, Inc.*, 505 F. Supp. 2d 199, 211-12 (D. Mass. 2007), *as amended*, (Aug. 23, 2007) (precluding patentee from presenting a new doctrine of equivalents theory through lay testimony); *Gart v. Logitech, Inc.*, 254 F. Supp. 2d. 1119, 1123 (C.D. Cal 2003) (allowing inventor to testify about his experience directing the research group for the technology at issue, but prohibiting him from opining on how patent claims at issue compared to the prior art); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-1431 SBA, 2006 WL 1330002, at *3 (N.D. Cal. May 15, 2006) (prohibiting engineer from "offer[ing] opinion testimony comparing [a product] to the '131 Patent").

[5] Apple's exhibit and witness lists do not indicate Apple is poised to misleadingly suggest any connection between its products and claim 25 of the '959 patent.  If Apple attempts at trial to tie the '959 patent in any way to Siri or the iPhone, the Court should similarly bar Apple from doing so for the reasons discussed in this motion.

---

III.     **Motion #3:  To Exclude Evidence of Purported "Copying"**

Apple includes "copying" as one of the purposes for thirty-five separate exhibits on its exhibit list.  *See* Dkt. 1272-3.  ████████████████████████████ ████████████████████████████████████████████████ Many of these documents, however, have no legal or factual relationship to a copying claim.  As such, they are irrelevant and plainly prejudicial to Samsung and should therefore be excluded under Rules 401-403.

Samsung moves to exclude specific documents falling within three categories:  (1) documents concerning Samsung products accused of infringing claims that Apple's products do not practice;  (2) documents that do not address claim elements or accused features or functionalities; (3) documents generated after the accused features were introduced.  The basis for excluding each category is explained below, followed by an explanation for why each document should be excluded.[6]

### A.     The Court Should Exclude Alleged "Copying" Documents Concerning Asserted Claims that Apple Does Not Practice

Apple identifies several documents in support of its copying allegation that concern claimed subject matter Apple itself does not practice.  For instance, Apple admits that its products *do not practice* at least the asserted claims of the '172, '414, and '959 patents.  *See* Section II, *supra*.  Evidence of copying a feature is "legally irrelevant unless the [] feature is shown to be an embodiment of the claims."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001); *see also Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, No. 03-927-GMS, 2005 WL 1331216, at *2 (D. Del. June 6, 2005) (excluding evidence of copying where patentee admitted that its product was not an embodiment of the asserted claim).  The Court should preclude Apple from presenting documents for purposes of copying, such as PX138, PX183 and PX194, that concern accused features not practiced by Apple.

---

[6]  Samsung specifically moves to exclude Apple from presenting these documents for purposes of copying and, unless otherwise stated, takes no position on Apple's other purported uses.

1      PX138 is an ████████████████████████████████████████████

2  ████████████████████ and Apple includes "copying" as a purpose for the exhibit.  Dkt. 1272-3

3  at 6.  But as Apple admits, Apple's products do not practice claim 25 of the '959 patent.  Fazio

4  Decl. Ex. 6 at 162:18-163:5.  There is no way Samsung (or Google) could copy the technology in

5  claim 25 of the '959 patent because Apple products *do not contain that technology*.[7]  PX138 could

6  not show "copying" and is therefore irrelevant.  *See Amazon.com,* 239 F.3d at 1366.

7      PX183 is ████████████████████████████████[8]  PX194 is ████████████████

8  ████████████████████████████████████████ Apple identified both

9  documents on its exhibit list as relevant to copying.  Apple's expert for the '172 patent also

10  ████████████████████████████████████████████████████ *See*

11  Fazio Decl. Ex. 12, Cockburn Rebuttal Rpt. ¶¶ 260-261.  But Apple does not practice the asserted

12  claim of the '172 patent, *see* Fazio Decl. Ex. 6 at 162:18-163:5, and Apple's devices are therefore

13  irrelevant for purposes of copying.  *See Amazon.com,* 239 F.3d at 1366.  Apple has no basis to

14  present to the jury any documents that allegedly show Samsung copied Apple's non-practicing

15  keyboards, and it would be highly prejudicial to Samsung to let Apple introduce "copying"

16  evidence for a claim Apple does not practice.  *Cf. Asyst Techs. v. Empak, Inc.*, No. 98-2045-JF,

17  2007 WL 120845, at *2 (N.D. Cal. Jan. 11, 2007).

**B.    The Court Should Exclude Alleged "Copying" Documents That Do Not Discuss Claimed Features or Functionality**

Apple also identifies "copying" documents that do not correlate the accused feature(s) with

the asserted claim limitations.  In fact, many are so general that they do not mention the claimed

features or functionality at all. It would be highly prejudicial to Samsung to allow Apple to

construct a story of copying based on comparisons of features unrelated to any limitations of the

asserted claims.  *See Asyst Techs.*, 2007 WL 120845 at *2 (excluding evidence of copying under

---

[7]  Apple has even agreed that it will not present evidence at trial of its alleged practice of unasserted claims.  *See* Dkt. 1057 at 2.

[8]  PX183 should also be excluded because it concerns ████████████████, and no Samsung Tablets are accused of infringing the '172 patent.

-11-

1   FRE 403).  Moreover, a nexus must exist between any alleged copying and the novel aspects of

2   the claimed invention.  *See W.M. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356,

3   1364 (Fed. Cir. 2012) ("a nexus between the copying and the novel aspects of the claimed

4   invention must exist for evidence of copying to be given significant weight in an obviousness

5   analysis.")  The following documents lack such a nexus, and should therefore be excluded.

6          Apple identifies several documents on its exhibit list, including PX107, PX146 and PX151,

7   to purportedly show copying for Apple's '647 patent.  But these documents only address ***user-***

8   ***facing functionality***, whereas the asserted claim of the '647 patent is directed to the ***underlying***

9   ***software***.  For instance, PX107 is ██████████████████████████████████████████████

10  ████████████████████████████████████████.[9]  *See* Dkt. 1272-3 (PX107) at

11  S-ITC-001735519.   PX146 concerns the ***user functionality*** ██████████████.  *See* Dkt.

12  1272-3 (PX146) at SAMNDCA00203915.  And PX151 concerns ***user functionality*** ████████

13  ██████.  *See* Dkt. 1156-3, Velluro Rpt. ¶ 190; Fazio Decl. Ex. 13, Mowry Rebuttal Rpt. fn. 10.

14  None of these documents discuss the ***underlying software*** associated with that user functionality.

15  As such, they have no nexus to the subject matter of the asserted claim.  Asserted claim 9 of the

16  '647 patent requires three specific software routines:  an "analyzer server," a "user interface ," and

17  an "action processor."  *See* '647 patent, JX1 at 7:14-21, 53-55.  The general discussion of user

18  functionality in these documents is not sufficient to establish copying for a claim that specifies

19  distinct underlying software routines.  In fact, Apple has no evidence that Google or Samsung

20  copied the underlying software routines found in Apple's products.  They did not; neither Google

21  nor Samsung had access to the underlying software.  Thus, the Court should preclude Apple from

22  presenting PX107, PX146 or PX151 for purposes of copying.

23          A number of Apple's other "copying" exhibits should also be excluded because they do

24  not discuss the accused features or functionality, let alone the purported novel elements of the

25

26          [9]   Apple's '647 expert, Dr. Mowry, cited PX107 in a footnote in which he listed documents

27  that he contends show copying of the subject matter of the '647 patent.  *See* Fazio Decl. Ex. 13,

28  Mowry Rebuttal Rpt., fn 10.

1   claimed invention.  *See W.M. Wrigley,* 683 F.3d at 1364 (requiring a nexus between the alleged

2   copying and the novel aspects of the claimed invention).  For instance, several "copying"

3   documents on Apple's exhibit list (*see*, *e.g.*, Dkt. 1272-3 at PX132, PX147, PX149, PX152,

4   PX154, PX156, PX197, PX200, PX202, PX203, PX206, PX211, PX212, PX214, PX216, and

5   PX217) lack a technical expert sponsoring witness, indicating that Apple cannot establish the

6   necessary nexus between these documents and the asserted claims.  PX147 is ███████████

7   ██████████████████████████████████████████  This document does

8   not address any of the allegedly novel features or functionalities found in Apple's asserted patents.

9   *See id.*  PX149, an █████████████████████████, is also indicative of Apple's

10  overreaching in its attempt to show "copying."  At best it contains general statements ████████

11  █████████, but it does not discuss a single claimed feature.  *See id.*  These documents are not

12  relevant to any alleged "copying" of Apple's purported inventions, and they should be excluded as

13  both irrelevant and more prejudicial than probative.  *See Asyst Techs.*, 2007 WL 120845 at *2

14  (excluding evidence of copying of features that were not elements of the claims at issue).[10]

15        Similarly, each of PX154, PX156, PX202, PX203, PX206, PX214, and PX216 contain

16  ██████████████████████████████████████ and do not discuss the

17  particular features or functionality that Apple contends satisfy the limitations of the asserted

18  claims.  *See* Dkt. 1272-3 at PX154, PX156, PX202, PX203, PX206, PX214 and PX216.  Even if

19  these documents suggested "copying," which they do not, they are not relevant and would be far

20  more prejudicial than probative.  These documents do not discuss features that allegedly satisfy

21  elements of the asserted claims.  *See Asyst Techs.*, 2007 WL 120845 at *2; *Leapfrog*, 2005 WL

22  1331216 at *2.

23        Apple's attempt to present a prejudicial, unsupported story of copying is further

24  highlighted by PX211.  *See* Dkt. 1272-3 at PX 211.  Like many of the other "copying" documents

25  _____

26        [10]  Indeed, no discussion of Apple products can be relevant to alleged copying of the asserted
      claims of any of the '959, '414 or '172 patents where Apple admits that it does not practice the

27   asserted claims.  *See Leapfrog*, 2005 WL 1331216 at *2 (excluding evidence of copying where
      patentee admitted that its product was not an embodiment of the asserted claim).

28

identified by Apple, this document does not mention any of the claimed features or functionality. Thus, PX211 is both irrelevant and far more prejudicial than probative, and it should be excluded.

The Court should further preclude Apple from presenting any of PX132, PX147, PX149, PX152, PX154, PX156, PX197, PX200, PX202, PX203, PX206, PX211, PX212, PX214, PX216, and PX217 for purposes of copying because there is no nexus between the content of these documents and the subject matter of the asserted claims.

> ### C. The Court Should Exclude Alleged "Copying" Documents That Post-Date The Introduction of the Accused Features

Based on Apple's identification of exhibits, it appears that Apple will argue that any analysis referencing a competitor's product is indicative of copying, no matter when the competitor's product was considered. But Samsung's evaluation or comparison of features *already integrated into Samsung's products* cannot be evidence of copying. For example, PX156 (dated February 16, 2012), PX206 (dated June 5, 2012), PX218 (dated July 14, 2012) and PX217 (dated September 12, 2012) all post-date the design and introduction of the accused features. In fact, each of these documents post-date commencement of the litigation. Any analysis of an Apple product that took place *after* introduction of the accused features could not be evidence that those features were copied. Such documents have no probative value, and permitting Apple to bolster its copying allegations with irrelevant materials would be highly prejudicial.

For all of the reasons set forth above, the Court should preclude Apple from relying on any of PX107, PX132, PX138, PX146, PX147, PX149, PX151, PX152, PX154, PX156, PX183, PX194, PX197, PX200, PX202, PX203, PX206, PX211, PX212, PX214, PX216, PX217, and PX218 to allege copying.

## IV. Motion #4: To Exclude Evidence or Argument that Samsung "Copied" In Connection With the Galaxy Nexus

Apple should be precluded from making any allegation that Samsung "copied" with respect to the Galaxy Nexus device. The Galaxy Nexus device runs a pure version of the Android operating system, carrying no Samsung-designed software. Fazio Decl. Ex. 14 (CNET article: "the Galaxy Nexus has a pure Android interface" with no "manufacturer or carrier skin" that "lets Android's true glory shine through"); Fazio Decl. Ex. 15 (Engadget article: Galaxy Nexus runs a

1   "completely unskinned iteration of the OS it's ushering in," providing Android "the way Google

2   designed it, and not an OEM's interpretation").  Apple's own technical experts have admitted that

3    *See* Fazio Decl. Ex. 16,

4   9/27/13 Cockburn Dep. Tr. 394:11-395:4

5

6

7   Numerous Google witnesses have confirmed that

8   . *See, e.g.,* Fazio Decl. Ex. 18, 5/11/12 Nagel

9   Dep. Tr. 119:15-120:17

10   ;

11   Fazio Decl. Ex. 19, 7/26/13 Lockheimer Dep. Tr. 250:21-251:22, 273:21-274:11

12   ; Fazio Decl. Ex. 20, 6/28/13 Bringert

13   Dep. Tr. 91:17-92:17

14   .[11]

15        Thus, any allegation that Samsung engaged in any "copying" with respect to the Galaxy

16   Nexus would be grossly misleading and unfairly prejudicial.  As Apple well knows, Samsung did

17   not—and could not—engage in any copying with respect to the Galaxy Nexus, because Samsung

18   _____

19   [11]   Samsung's witnesses, for their part, have uniformly testified that Samsung

20   . *See, e.g.,* Fazio Decl. Ex. 21,
     6/20/13 Kang Dep. Tr. 126:15-25 ("

21   "); Fazio Decl. Ex. 22, 6/20/13 Kim Dep. Tr. 107:25-108:14 ("Nexus is

22   something that Google developed the software for, and the

23   . . . So it has Google logos and everything on it."); Fazio Decl. Ex. 23, 5/11/12 Lee Dep. Tr.
     20:11-21:16, 22:24-25:17 ("Samsung basically had

24   , whereas with other devices, it

25   . However, not so with the [Galaxy Nexus] . . . everything is conducted under the
     control of Google."); Fazio Decl. Ex. 24, 6/7/13 Myoung Dep. Tr. 40:22-25 ("in the case of
     something like the Google Nexus . . .

26   "); *id.* at 57:9-58:7 (Galaxy Nexus and other Nexus-branded devices are "

27

28

1   had no control over the software for the Galaxy Nexus UI and in fact made no modifications

2   whatsoever to the software.  Apple cannot be permitted to present copying accusations

3   indiscriminately, thereby forcing Samsung to expend its limited trial time clarifying that Apple's

4   allegations do not and cannot apply to the Galaxy Nexus.

5   **V.      Motion #5:  Exclude Evidence of Samsung's Total Revenues or Profits From Sales of
           the Accused Products**

6

7          Apple intends to disclose to the jury the total revenue and profit Samsung earned from

8   sales of the accused products.  *See* Fazio Decl. Ex. 25, Vellturo Rpt. Ex. 10 (calculating

9   Samsung's total revenues and profits); Dkt. 1272-3 at PX160 (showing per-product and total

10  revenues, gross profit, and operating profit).  Allowing these figures into evidence inevitably

11  creates the risk that the jury will compare the parties' competing damages calculations to

12  Samsung's total revenues or profits.  Indeed, Apple deliberately used Samsung's revenue and

13  profit figures for this purpose during the last trial, repeatedly urging the jury to assess its $379

14  million damages request in the "context" of Samsung's $3.5 billion in infringing revenue.  *See,*

15  *e.g.,* 1846 Dkt. 2739 at 347:13-16; *see also* Dkt. 2844 at 1324:24-1325:6 ("Is [$379 million] a lot

16  of money? . . . yes it is.  But, wow, there was an awful lot of infringement.  $3.5 billion.  *That's*

17  *the number to judge that against.*").  Apple expressly framed both parties' damages calculations as

18  a percentage of the entire market value of Samsung's infringing sales.  *See, e.g., id.* at 1303:23-

19  1304:5 ("We have asked for approximately 10% of what they collected from infringing our

20  [patents] . . . .  They are asking to retain $3.45 billion, 99 percent, 99 percent of what they

21  collected."); 1846 Dkt. 2842 at 1034:1-4 ("[Y]our total $52 million in damages would allow

22  Samsung to keep about 99.5 percent of all the revenues it collected for infringing these patents;

23  correct?"); *cf.* 1846 Dkt. 2844 at 1398:9-11 ("$52 million is a very small piece of $3.5 billion.").

24         The Federal Circuit has held that disclosure of the defendant's total revenue from the

25  accused products is irrelevant and unduly prejudicial absent proof that the patented feature creates

26  the basis for consumer demand.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir.

27  2011).  In *Uniloc*, the court held that the fact that "a company has made $19 billion dollars in

28  revenue from an infringing product cannot help but skew the damages horizon for the jury," and

1    that neither cross-examination nor jury instructions could effectively put "[t]he $19 billion cat . . .

2    back into the bag."  *Id.*; *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68

3    (Fed. Cir. 2012) ("Admission of [defendant's] overall revenues . . . only serve to make a

4    patentee's proffered damages amount appear modest by comparison, and to artificially inflate the

5    jury's damages calculation").  Several courts have relied on *Uniloc* in excluding evidence of the

6    defendant's total infringing revenues or profits as unduly prejudicial.  *See, e.g., Mformation*

7    *Techs., Inc. v. Research in Motion Ltd.*, No. 08-04990 JW, 2012 WL 1142537, at *4 (N.D. Cal.

8    Mar. 29, 2012) ("[U]nfair prejudice would result from letting the jury hear that the accused

9    devices generated a certain amount of profits."); *Multimedia Patent Trust v. Apple Inc.*, No. 10-

10   2618, 2012 WL 5873711, at *5-6 (S.D. Cal. Nov. 20, 2012) ("*[A]ny discussion* of the Defendants'

11   total revenue carries a substantial danger of unfair prejudice to the Defendant.") (emphasis

12   added).[12]

13        Here, Apple cannot legitimately claim that the patented features "create[ ] the 'basis for

14   customer demand' or 'substantial create[ ] the value of the component parts."  *See Uniloc*, 632

15   F.3d at 1318 (citations omitted).  Not even the inflated results of Apple's deeply flawed conjoint

16   surveys suggest that the patented features "alone motivate[d] consumers to purchase" Samsung's

17   products, such that the entire value of those products are properly attributable to the patented

18   features, or that "those features alone drives the market" for smartphones or tablets.  *See*

19   *LaserDynamics,* 694 F.3d at 68-69.

20        Apple's damages expert nevertheless relies on Samsung's total revenue and profit figures

21   for two purposes, neither of which justify the substantial risk of prejudice to Samsung.  *First*, Dr.

22   Vellturo cites Samsung's revenue and profit figures as evidence of demand for the patented

23   product under the first *Panduit* factor.  Dkt. 1156-3, Vellturo Rpt. ¶¶ 159.  Yet Samsung *concedes*

24   _____

25        [12]   During the last trial, this Court ruled that Apple's disclosure of Samsung's total infringing
     sales and revenue figures was misleading and prejudicial where Apple had no legitimate claim to
26   recover infringer's profits.  1846 Dkt. 2721 at 4.  Notably, Apple's only justifications for
     disclosing Samsung's total revenue in previous case related to its claim for infringer's profits (*see*
27   Dkt. 2908-4 at 31-32), which is not an available remedy in this case.

28

that significant demand exists for both parties' products, and thus *Panduit* factor 1 is not in dispute.[13]  *Second*, Dr. Vellturo relies on the total amount of revenue and profits earned from the accused products in his analysis of the *Georgia-Pacific* factors, specifically factors 8 and 11.  *Id.* at ¶¶ 470-472, 476-478.  Apple has admitted, however, that Dr. Vellturo's *Georgia-Pacific* analysis has no impact on his proffered royalty rates.  *See* Dkt. 857-3 at 15, n. 15 ("Dr. Vellturo explained that his separate treatment of the *Georgia Pacific* factors . . . did not further change his royalty numbers.").  Any probative value to the *Panduit* or *Georgia-Pacific* factors is minimal, and vastly outweighed by risk of "skew[ing] the damages horizon for the jury."  *Uniloc*, 632 F.3d at 1320.  Evidence of Samsung's total revenues or profits should therefore be excluded under Federal Rule of Evidence 403.

## VI.   Motion #6:  To Exclude Evidence of Damages On Sales For Which Apple Has Already Obtained an Award of Samsung's Profits

Several of the products at issue in this case—Galaxy S II (AT&T), Galaxy S II (T-Mobile), Galaxy S II Epic 4G Touch, and Galaxy S II Skyrocket ("Galaxy S II Products")—were at issue in the 1846 Case, and subject to the August 2012 jury verdict.  *See* 1846 Dkt. 1931 at 2-4, 6, 20.  The jury found that each of the Galaxy S II Products infringed Apple's D'677 patent and awarded over $256 million in damages (*see id.*), an amount that the Court has recognized represents an award of Samsung's profits under 35 U.S.C. § 289.  *See* 1846 Dkt. 2271 at 10.[14]  In this case, Apple's damages expert calculates damages for the *same sales* of these products.  Dkt. 1156-3, Vellturo

---

[13] In any event, the first *Panduit* factor would not support admitting total revenue and profit figures into evidence even if demand for the patented product was in dispute.  Courts have looked to the "*number of sales* . . . of infringing products" as evidence of demand for the patented product—***not*** the total revenue or profit from those sales.  *See, e.g., Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 522 (Fed. Cir. 1984) (emphasis added); *see also Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991) (same).

[14] In addition to the D'677 patent, the Galaxy S II (AT&T) was found to infringe the '381, '915 and '163 patents, while the Galaxy S II (T-Mobile) was found to infringe the '915 and '163 patents.  *See* 1846 Dkt. 1931 at 2-4.  The Court's March 1, 2013 Order re: Damages explicitly found that the award for the Galaxy S II (AT&T) and Galaxy S II (T-Mobile)  represented infringer's profits without any additional award of reasonable royalty or lost profits (*see* 1846 Dkt. 2271 at 10), and therefore did not present any double recovery problem.

1   Rpt. ¶ 152 (conceding that Apple is not entitled to any further recovery on sales for which Apple

2   receives an award of lost profits or a disgorgement of Samsung's profits in the 1846 case, but

3   stating that he declined to calculate "any adjustment to account" for overlap with the jury verdict

4   in the 1846 case); *see also* Fazio Decl. Ex. 26, Vellturo Rpt. Ex. 17-A, 17-B ██████████████

5   ████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████; *cf.* Dkt. 1272-3 at PX160 (showing financial

7   data for more than 4 million units of the Galaxy S II Products sold prior to August 2012).  The

8   Court should not permit Apple to present an impermissible double-recovery damages theory,

9   which would improperly inflate the amount of  Apple's claims and would be highly prejudicial to

10  Samsung.  Fed. R. Evid. 403.

11          The Federal Circuit has made clear that a plaintiff is only entitled to one recovery on each

12  infringing sale—even if that sale infringes more than one intellectual property right.  In *Catalina*

13  *Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277, 1290 (Fed. Cir. 2002), the defendant's products

14  were found to infringe both a utility patent and a design patent.  The court held that the patentee,

15  having been awarded infringer's profits for infringement of the design patent, was not entitled to

16  an award for infringement of the utility patent.  *Id.* at 1291 (plaintiff "is entitled to damages for

17  each infringement, but once it receives profits under § 289 for each sale, [it] is not entitled to a

18  further recovery [under § 284] from the same sale") (citations omitted).

19          The Federal Circuit reaffirmed the prohibition on double recovery in *Aero Products*

20  *International, Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1319-20 (Fed. Cir. 2006), where the

21  plaintiff sought a reasonable royalty for utility patent infringement as well as disgorgement of the

22  defendant's profits for trademark infringement.  Relying on *Catalina Lighting* and other cases, the

23  court held that the plaintiff could not recover both utility patent damages and infringer's profits for

24  trademark infringement on the same sales of the accused product.  *See id.*  Even where the plaintiff

25  seeks damages "based upon separate statutes or causes of action, when the claims arise out of the

26  same set of operative facts . . . there may be only one recovery."  *Id.* at 1020.  This Court has

27  relied on *Aero Products* and *Catalina Lighting* for the proposition that "a plaintiff may be

28

compensated only once for each sale, even if more than one form of infringement has occurred." *See* Dkt. 2271 at 19, n. 2 (citations omitted).

Apple itself has conceded on multiple occasions that it "cannot recover more than once with respect to any individual sale." *See, e.g.,* 1846 Dkt. 1861 at 2.[15] Yet that is precisely what Apple now seeks to do. Having sought and obtained an award of infringer's profits on the Galaxy S II Products for infringement of the D'677 patent, Apple now seeks additional remedies on the same sales. The Federal Circuit's decisions in *Catalina Lighting* and *Aero Products* squarely prohibit Apple from doing so. Accordingly, the Court should exclude any evidence of damages on sales of the Galaxy S II Products prior to the first jury's verdict in the 1846 Case.

The Court should not permit Apple to present an impermissible double-recovery damages theory to the jury on the basis that the parties expect to appeal any final judgment the Court may enter in the 1846 Case. Apple has not identified any authority for that position, nor has Apple explained how the Court could calculate a remittitur amount to correct for any use by the jury of an impermissible double-recovery theory. In the 1846 case, this Court rightly rejected–twice– Apple's pleas to be allowed to present a legally impermissible theory of damages to a jury on the basis that the Court could reduce that award to a legally permissible amount later. *See* 1846 Dkt. 2660 at 11 n.7 (rejecting Apple's plea to present to the jury its legally impermissible theory on design around start dates because "the Court will not take the risk of allowing Apple to present a legally erroneous damages analysis to the jury"); 1846 Dkt. 2719 at 7 n. 2 (rejecting Apple's plea to present to the jury its legally impermissible non-expert/non-*Panduit* lost profits theory because

---

[15]  Specifically, Apple acknowledged that once infringer's profits are awarded for a sale, any further remedy, including a royalty for other utility patents infringed by that sale, would be improper double recovery. 1846 Dkt. 1856 at 11 ("Apple is entitled to one and only one remedy for each individual sale of an infringing smartphone or tablet"). Apple represented to the Court that its damages calculations were "carefully constructed to prevent [the] specific error" of double recovery. *See id.* Both of Apple's damages experts insisted that they avoided calculating more than one remedy for each accused sale. *See* 1846 Dkt. 1839 at 2050:1-15 (Musika: "[E]ach one of those 22 million phones, has to go in one of those categories . . . but not two categories. If we put it in two categories, then we're going to end up with double counting."); 1846 Dkt. 2840 at 644:17-678:24 (Davis explaining the need to avoid "counting any single unit sold by Samsung twice.").

1    Apple's theory would "invit[e] the jury to award lost profits in the absence of substantial evidence

2    to support a concrete lost profits award").  The same logic applies here and the same result should

3    follow.  Apple should not be permitted to seek damages on sales for which Apple has already

4    obtained an award of Samsung's profits.  Accordingly, the Court should exclude any evidence of

5    damages on sales of the Galaxy S II Products prior to the first jury's verdict in the 1846 Case.

6    **VII.    Motion #7:  To Exclude Evidence or Argument That Samsung Breached the**
          **Protective Order**

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████

10   ████████████    *See, e.g.*, Fazio Decl. Ex. 27, 10/4/2013 Kearl Dep. Tr. 278:8-10, 279:6-8.  Apple

11   should not be permitted to do so.  Magistrate Judge Grewal has ruled that the disclosures were not

12   only "inadvertent," but also irrelevant to this litigation and Samsung's negotiations.  1846 Dkt.

13   2935 ("Sanctions Order") at 18.  Moreover, even if this evidence had some relevance here, it

14   should be excluded under Federal Rule of Evidence 403 because any relevance is substantially

15   outweighed by the risk of unfair prejudice, jury confusion, and waste of time.

16           **A.    Any Evidence or Argument that Samsung or Its Counsel Breached the**
                    **Protective Order Should Be Precluded as Irrelevant**

17

18           The inadvertent disclosure of Nokia-Apple license terms, alleged use thereof, and

19   sanctions proceedings are inadmissible.  Evidence is inadmissible if it has no tendency to make a

20   fact that is of consequence to determining the action more or less probable than it would be

21   without the evidence.  Fed. R. Evid. 401, 402.  A Quinn Emanuel attorney inadvertently left

22   unredacted a portion of an otherwise redacted expert report when sharing it with Samsung's in-

23   house counsel.  Judge Grewal found that Quinn Emanuel and Samsung should have had better

24   systems in place to prevent disclosure, should have told Apple and Nokia about the disclosure

25   sooner, and that there was some evidence that the confidential business information (CBI) was

26   used.  Sanctions Order at 18.  Apple may try to use this evidence to argue that Samsung conducted

27   FRAND licensing negotiations with Apple in bad faith.  But Judge Grewal found that none of

28   these occurrences "ultimately implicate any issue in this or any other litigation or negotiation."  *Id.*

1   Apple's allegations that Samsung in-house counsel improperly used the CBI to help

2   outside counsel form a FRAND position also failed.  Specifically, there was no indication that

3   Samsung improperly used the inadvertently disclosed Nokia-Apple license terms to make a

4   licensing offer to Apple to create a litigation advantage.[16]  Sanctions Order at 18, 11-12.

5   Because the inadvertent disclosure did not affect the licensing negotiations in this case or

6   any other, it has no bearing on any fact of consequence to Apple's defenses or counterclaims,

7   which could only implicate Apple's licensing negotiations with Samsung.  Judge Grewal's order

8   makes clear the disclosure of Nokia-Apple license terms and events stemming from it are

9   irrelevant to any issue in this case.  Evidence and argument about them should therefore be

10  excluded.

11       **B.    Any Arguable Probative Value Is Substantially Outweighed by the Risk of
               Prejudice, Confusion, and Waste of Time**

12  Even if the inadvertent disclosure and the events following it, including the sanctions

13  proceedings and order, bore some relevance to this action, they should be excluded under Fed. R.

14  Evid. 403.  Apple's allegations of misconduct by Quinn Emanuel and Samsung ranged from

15  intentional corporate espionage to bad faith negotiations—"loud and certain accusations" based

16  only on "aggressive suppositions and inferences . . . without anything more."Sanctions Order at

17  18.  Apple sought "ludicrously overbroad" and completely unprecedented sanctions.  *Id.*  Some

18  sanctions were issued.  But none of the bases for the sanctions order are sufficiently relevant to

19  any fact at issue here to overcome the substantial prejudice inherent in permitting Apple to use this

20  evidence to cast aspersions on Samsung or its counsel—especially in light of the recent media

21  focus on internet surveillance.  The jury may simply assume that Samsung is liable based on the

22  disclosure or the fact that the Court issued sanctions rather than the merits of the action.[17]

---

[16]   The Nokia-Apple license terms were produced to Samsung's outside counsel under a protective order.  They were permitted to form litigation positions and give settlement advice based on the information.  Dkt. 687 at §6(e).

[17]   This Court previously excluded evidence of discovery disputes and sanctions for similar reasons in the previous trial between the same parties.  *See* Dkt. 1267 at 4-5.

1        Aside from unfair prejudice and jury confusion, evidence regarding the inadvertent

2  disclosure and sanctions would be a waste of time that substantially outweighs its probative value.

3  ████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████  1846 Dkt. 2965-2

5  (filed under seal); 1846 Dkt. 2965-3 (filed under seal).  Evidence of ████████████████

6  ██████████████████████████  and would confuse the jury into believing this was a

7  case about attorney character or corporate espionage rather than about whether Samsung's

8  negotiations with Apple were on FRAND terms.  Judge Grewal expended considerable time

9  reviewing documents *in camera* to determine what terms were disclosed and whether they were

10 used, and on privilege disputes, during the side-litigation on sanctions.  *See* Sanctions Order at 3.

11 The jury and the Court will have to do the same if Apple is permitted to present this evidence,

12 resulting in a significant waste of time.  It should be precluded.

13

14 DATED:  February 18, 2014          QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
15

16                                    By */s/ Victoria F. Maroulis*
17                                       Charles K. Verhoeven
                                         Kevin P.B. Johnson
18                                       Victoria F. Maroulis
                                         William C. Price
19                                       Michael L. Fazio

20                                       Attorneys for
21                                       SAMSUNG ELECTRONICS CO., LTD.,
                                         SAMSUNG ELECTRONICS AMERICA, INC.,
22                                       and SAMSUNG TELECOMMUNICATIONS
                                         AMERICA, LLC
23

24

25

26

27

28