Exhibit C

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

1          UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF CALIFORNIA
3              SAN JOSE DIVISION
4    APPLE INC., a California      )
5    corporation,                   )
6              Plaintiff,           )
7                                   )Case No.
8         vs.                       )12-cv-00630-LHK (PSG)
9    SAMSUNG ELECTRONICS CO., LTD.,)
10   a Korean corporation; SAMSUNG )
11   ELECTRONICS AMERICA, INC.,     )
12   a New York corporation; and    )
13   SAMSUNG TELECOMMUNICATIONS     )
14   AMERICA, LLC, a Delaware       )
15   limited liability company,     )
16             Defendants.          )
17   _____)
18     *** HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY ***
19     *** CONFIDENTIAL BUSINESS INFORMATION FOR APPLE ***
20         VIDEOTAPED DEPOSITION OF KENNETH KOCIENDA
21                 Palo Alto, California
22                 Tuesday, July 16, 2013
23
24   Job No. CS1692647
25   Reported by: Kelli Combs, CSR No. 7705

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF FLORIDA
 3
 4   MOTOROLA MOBILITY LLC,           )
 5              Plaintiff,            )
 6                                    ) Case No.
 7         vs.                        )1:12-20271-RNS-TEB
 8   APPLE INC.,                      )
 9              Defendant.            )
10   _____)
11
12
13         VIDEOTAPED DEPOSITION of KENNETH KOCIENDA,
14   Volume I, taken on behalf of Motorola and Samsung,
15   at One Palo Alto Square, Palo Alto, California,
16   beginning at 9:07 a.m., on Tuesday, July 16, 2013,
17   before KELLI COMBS, Certified Shorthand Reporter No.
18   7705.
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 8

1              Palo Alto, California
2              Tuesday, July 16, 2013
3                   9:06 a.m.
4
5            P R O C E E D I N G S
6          THE VIDEOGRAPHER:  Good morning.  We're on
7   the video record at 9:06 a.m.  Today is July 16th,
8   2013.
9          My name is Allan Dias.  Here with me is
10  Kelli Combs.  We're here from Veritext Legal
11  Solutions.  We are located today at 3000 El Camino
12  Real, Number One Palo Alto Square, in the City of
13  Palo Alto, California.
14          This is a matter pending before the United
15  States District Court, Southern District of Florida.
16  Case number 112-20271RNS-TEB.
17          This is a matter pending before the United
18  States District Court, Central District of
19  California, San Jose Division.  Case number
20  12-cv-00630.
21          Counsel, will you please identify
22  yourselves for the record.
23          MS. DAVIS:  Robin Davis of Quinn Emanuel
24  for Motorola Mobility, LLC, and the Motorola action
25  in the Southern District of Florida.

1      MR. HAGIZ:  Ron Hagiz, Quinn Emanuel, on
2  behalf of Samsung in the Northern District of
3  California action.
4      MR. BRIGGS:  Todd Briggs from Quinn
5  Emanuel on behalf of Samsung in the same Northern
6  District of California case.
7      MR. PIEJA:  Mike Pieja of Bridges &
8  Mavrakakis for Apple, and also for Mr. Kocienda.
9      MR. CHUNG:  Fred Chung from Gibson, Dunn &
10 Crutcher on behalf of Apple in the Apple versus
11 Samsung matter in the Northern District of
12 California.  Also with us today is Cindy Wheeler
13 from Apple.
14      THE VIDEOGRAPHER:  Will the court reporter
15 please swear in the witness?
16                KENNETH KOCIENDA,
17    after having been duly sworn, testified as follows:
18                     --o0o--
19      THE VIDEOGRAPHER:  You may proceed.
20                    EXAMINATION
21 BY MS. DAVIS:
22     Q    Good morning, Mr. Kocienda.
23     A    Good morning.
24     Q    If you will, could you say and spell your
25 full name for the record?

1        MS. DAVIS:  And, Counsel, I'm going to be
2   back in 30(b)(6).
3        MR. PIEJA:  You're now back in 30(b)(6)?
4        MS. DAVIS:  Yes.
5        MR. PIEJA:  Okay.  Thank you.
6        THE WITNESS:  No, I did not.
7   BY MS. DAVIS:
8        Q    Okay.
9             And following the figures there is a
10  written disclosure section which begins on the page
11  numbered -25395.  Did you draft any of the written
12  disclosure of the '172 patent?
13       A    No.  No, I don't think I did.
14       Q    Just generally, what's your understanding
15  of the subject matter of the '172 patent?
16       MR. PIEJA:  Objection; calls for a legal
17  conclusion.
18       THE WITNESS:  This patent describes some
19  of the work that I did.
20  BY MS. DAVIS:
21       Q    Can you be more specific?
22       A    It describes some of the work I did on
23  keyboards at Apple during the time period that we've
24  been discussing.
25       Q    And when you say "the time period we've

1  been discussing," you're referring to the
2  October 2005 to 2006 period?
3     A    Generally speaking, yes.
4     Q    Would you include more time than that?
5     A    I would -- I would probably include much
6  of 2006.
7     Q    Okay.  So mostly 2006?
8     A    2005 and 2006.  Late 2005 and 2006 I think
9  would cover it.
10    Q    Okay.
11         And do you remember when you first had the
12 idea that is covered here in the '172 patent?
13         MR. PIEJA:  Objection; vague, lacks
14 foundation, calls for a legal conclusion.
15         But you can answer.
16         THE WITNESS:  I don't have a specific
17 recollection of a particular moment, no.
18 BY MS. DAVIS:
19    Q    Okay.
20         What was your contribution to the subject
21 matter of the '172 patent?
22         MR. PIEJA:  Objection to the extent it
23 calls for a legal conclusion.
24         THE WITNESS:  Again, as we've discussed,
25 my primary responsibility was on keyboard

1 technology.
2 BY MS. DAVIS:
3     Q    So the keyboard technology that we've
4 discussed earlier this morning?
5     A    Yes.
6     Q    And what would you say was Mr. Ording's
7 contribution to the '172 patent?
8         MR. PIEJA: Again, objection to the extent
9 the question calls for a legal conclusion.
10         THE WITNESS: Again, I would describe my
11 work, you know, with Mr. Ording throughout this
12 period as, you know, a collection of collaborations
13 which, you know, went on in this sort of rolling
14 iterative basis.
15 BY MS. DAVIS:
16     Q    Okay.
17         Do you remember any particular ideas or
18 features that are part of the '172 patent that you
19 would say are Mr. Ording's ideas?
20         MR. PIEJA: Again, objection; calls for a
21 legal conclusion regarding the contents of the
22 patent.
23         THE WITNESS: Yeah, I'm -- I'm not a
24 lawyer, so it's -- you know, again, I would
25 characterize my work as I did this, Bas and I

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 102

1  collaborated very, very closely on keyboard
2  technology on this rolling iterative basis.
3  BY MS. DAVIS:
4      Q   And just in your collaboration with Bas on
5  keyboard technology, were there any particular ideas
6  that Bas had that you attribute to him that were
7  captured in your work on the keyboard?
8          MR. PIEJA:  Objection; asked and answered.
9          THE WITNESS:  Yeah.  Again, without, you
10  know -- without -- I don't think that I could give a
11  more specific answer than I've already given.
12          MS. DAVIS:  Okay.  So let's actually put
13  the '172 patent aside for a second.  And I'm going
14  to mark another exhibit.  This one is Exhibit, I
15  guess, 5.
16                  (Deposition Exhibit 5 marked for
17                  identification.)
18  BY MS. DAVIS:
19      Q   It's a document with two sets of Bates
20  numbers, but I'm going to use the bottom set.  It's
21  Bates number SDFL-APPLE00344341 through -344434.
22          And if you'll take a second, Mr. Kocienda,
23  and just look through Exhibit 5.  And once you've
24  had a chance to do that, let me know if you
25  recognize it.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 123

1  ago we were looking at Exhibit 4, which was the '172
2  patent.  If you could pull that one out.
3       A    Okay.
4       Q    And I just want you to have the series of
5  reference.  I'm going to ask a couple of questions,
6  and if you want to look at it, it's there for you.
7            What was the first Apple product that used
8  the keyboard that you developed for the iPhone?
9       A    That would be the initial iPhone
10 hardware/software product.
11      Q    And do you know which was the first Apple
12 product that practiced any claims of the '172
13 patent?
14           MR. PIEJA:  Objection; calls for a legal
15 conclusion.
16           THE WITNESS:  I mean, I would say that my
17 keyboard work was present on the initial iPhone
18 product.
19 BY MS. DAVIS:
20      Q    And since you're testifying today as
21 Apple's corporate witness, is it your understanding
22 that the subject matter of the '172 patent was on
23 that first iPhone?
24           MR. PIEJA:  Objection; calls for a legal
25 conclusion.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 124

1  THE WITNESS: Again, to the best of my
2  ability to answer that as someone who is not a
3  lawyer, I'd say yes.
4  BY MS. DAVIS:
5      Q    Okay.
6           And just to be clear, I know you're not a
7  lawyer so these questions are in your capacity as a
8  software engineer.
9      A    Okay.
10     Q    Are there other keyboards or -- I'm sorry.
11          Are there other Apple products that use
12 the keyboard that you developed for Apple?
13          MR. PIEJA: Objection; beyond the scope of
14 the 30(b)(6) designation.
15          THE WITNESS: Yes.
16 BY MS. DAVIS:
17     Q    What other products?
18          MR. PIEJA: Same objection.
19          THE WITNESS: To the best of my knowledge,
20 that would include iPad products and iPod Touch
21 products.
22 BY MS. DAVIS:
23     Q    Okay.
24          Do you know if those products also use --
25 practice the claims of the '172 patent?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 129

1  Claim 27.
2        If you could read that to yourself and let
3  me know when you're done.
4     A    Okay.
5     Q    Do you have an understanding of Claim 27?
6     A    Yes.
7     Q    And did the first original iPhone practice
8  Claim 27 of the '172 patent?
9        MR. PIEJA:  Objection; calls for a legal
10 conclusion.
11       THE WITNESS:  I believe that it did, yes.
12 BY MS. DAVIS:
13    Q    Okay.
14       When was the iPhone keyboard that you
15 worked on first disclosed to the public?
16    A    To the best of my knowledge, this would be
17 the day that Steve Jobs announced it to the world,
18 you know, on stage at a -- at a conference.  I
19 believe it was a Mac World conference.
20    Q    Do you remember when that Mac World
21 conference was?
22    A    It was in early January of 2007.
23    Q    And was that -- and -- strike that.
24       And when was a product that included the
25 keyboard that you developed first offered for sale?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 132

1    A    I think the difference is -- I think the
2  difference is subtle.  But for word recommendation,
3  the system endeavors to give some feedback about
4  what it's going to do while you're interacting with
5  the keyboard.  So the keyboard and the text entry
6  system gives you feedback of various sorts.  So
7  that's what I would say for word recommendation.
8  You can see which words it will, you know -- it is
9  recommending to you different from what your typing
10 is.
11          And in terms of auto-correction, that's
12 the system by which these recommendations are chosen
13 automatically for you by the system.  So they're
14 similar, but there are some subtle differences.
15    Q    So within the subject matter of the '172
16 patent, do you understand it to describe word
17 recommendations?
18          MR. PIEJA:  Objection; calls for a legal
19 conclusion.
20          THE WITNESS:  Well, again, you know, since
21 I'm -- I'm -- I'm -- you know, I'm not a lawyer.
22 I'm, you know, describing, you know, my work to you
23 in the language that I use as an engineer, which may
24 or may not have legal meaning when, you know, used,
25 you know, in a patent.

1  BY MS. DAVIS:
2      Q    And I appreciate that you're not a lawyer,
3  and so, you know, as -- as a non-lawyer, as a
4  software engineer, did you understand that the work
5  you did that resulted in the '172 patent included
6  word recommendations?
7      A    Yes.
8      Q    Did you also understand that it included
9  auto-correction?
10     A    Yes.
11     Q    And turning back literally a few moments
12 ago, we were talking about the benefit to users who
13 used the keyboard system that you worked on and
14 captured in the '172 patent.
15          What are the benefits of word
16 recommendations for users?
17     A    Well, again, the -- the system endeavors
18 to -- to help the user enter their text, and in
19 order to help the user feel comfortable and that
20 they understand how the system is working, there are
21 methods of giving feedback to the user about what
22 the system is doing.
23     Q    And how did --
24          How did those provide a benefit for the
25 user of the system?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 134

1    A    Again, you know, the high-level goal is
2  for users to feel comfortable as they're interacting
3  with the system, to give them a sense that they
4  understand how it works, that after using and
5  building up experience with the system and learning
6  a little bit about what it does, that, oh, they get
7  a feeling, oh, I get it.  I -- I -- I understand how
8  it works and, you know, over time you build a
9  comfort level.
10   Q    Any other benefits that users get from
11 using the system with word recommendations?
12   A    You know, again, you know, the whole goal
13 is, you know -- the high-level goal is to make a
14 great product and, you know, as part of that, you
15 know, my work was to help to make a great keyboard
16 and text entry system, and so, I mean, all of these
17 little things feed into that goal.
18   Q    Are there any particular benefits that you
19 would associate with the auto-correct features of
20 the keyboard and your work that led to the '172
21 patent?
22   A    Generally speaking, auto-correction helps
23 users to type more efficiently, in my view.
24   Q    How does it help users type more
25 efficiently?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 280

1  because Motorola made this request, we have made
2  available the director files that you requested.
3  And I note for the record, Motorola has not
4  questioned the witness on them.  And that will be
5  all.  Unless you had follow-up further.
6          MS. DAVIS:  No, I think that's it.
7          Thank you very much.
8          THE WITNESS:  Thank you.
9          THE VIDEOGRAPHER:  This is the end of
10 today's deposition.  We are off the record at
11 5:38 p.m.  The master disks will be held by
12 Veritext.
13          (Time noted:  5:38 p.m.)

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 281

1          I, the undersigned, a Certified Shorthand
2    Reporter of the State of California, do hereby
3    certify:
4          That the foregoing proceedings were taken
5    before me at the time and place herein set forth; that
6    any witnesses in the foregoing proceedings, prior to
7    testifying, were administered an oath; that a record of
8    the proceedings was made by me using machine shorthand
9    which was thereafter transcribed under my direction;
10   that the foregoing transcript is a true record of the
11   testimony given.
12         Further, that the foregoing pertains to the
13   original transcript of a deposition in a Federal Case,
14   before completion of the proceedings, a review of the
15   transcript [ ] was [X] was not requested.
16         I further certify I am neither financially
17   interested in the action nor a relative or employee of
18   any attorney or any party to this action.
19         IN WITNESS WHEREOF, I have this dates
20   subscribed my name.
21
22   Dated:
23                  _____
24              KELLI COMBS
25              CSR No. 7705

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 283

1       Veritext Legal Solutions
            290 W. Mt. Pleasant Ave. - Suite 3200
2               Livingston, New Jersey 07039
            Toll Free: 800-227-8440   Fax: 973-629-1287
3
4       _____, 2013
5       To: Michael T. Pieja, Esq.
6       Case Name: Motorola Mobility LLC v. Apple, Inc.
        Veritext Reference Number: 1692647
7       Witness:  Kenneth Kocienda Deposition Date:  7/16/2013
8
        Dear Sir/Madam:
9
        Enclosed please find a deposition transcript.  Please have the witness
10      review the transcript and note any changes or corrections on the
        included errata sheet, indicating the page, line number, change, and
11      the reason for the change.  Have the witness' signature at the bottom
        of the sheet notarized and forward errata sheet back to us at the
12      address shown above.
13
14      If the jurat is not returned within thirty days of your receipt of
        this letter, the reading and signing will be deemed waived.
15
16
        Sincerely,
17
18      Production Department
19
20      Encl.
21      Cc: all counsel
22
23
24
25