*with Apple's and Samsung's objections*

1    [COUNSEL LISTED ON SIGNATURE PAGES]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12   APPLE INC., a California corporation,      Case No.    12-cv-00630-LHK (PSG)

13              Plaintiff,            **PROPOSED JOINT FINAL JURY**
                                      **INSTRUCTIONS WITH**

14       v.                             **OBJECTIONS**

15   SAMSUNG ELECTRONICS CO., LTD., a
   Korean corporation; SAMSUNG

16   ELECTRONICS AMERICA, INC., a New
   York corporation; and SAMSUNG

17   TELECOMMUNICATIONS AMERICA,
   LLC, a Delaware limited liability company,

18
               Defendant.

19

20

21

22

23

24

25

26

27

28

1    The parties provide the accompanying proposed final jury instructions in accordance with

2    the Court's January 24, 2014 Case Management Order (Dkt. No. 1158), and the Stipulation and

3    Order re Submission of Proposed Final Jury Instructions (Dkt. No. 1313).  The parties expressly

4    preserve and do not waive any of their rights and objections with respect to (1) jury instructions

5    previously submitted by any party but not given by the Court in Case No. 11-CV-01846 ("the

6    1846 Case"); (2) any of their rights and objections with respect to jury instructions previously

7    given by the Court in the 1846 Case, and including any such instructions included herein in whole

8    or in part; or (3) jury instructions stemming from orders from the first trial and post-trial

9    proceedings the 1846 Case, including but not limited to the March 1, 2013 Order re: Damages

10   that granted Samsung's motion for a new trial.  For Apple, those objections and proposed

11   instructions include but are not limited to those set forth in the 1846 Case Dkt. Nos. 895-1, 1047,

12   1231, 1232, 1241, 1264, 1279, 1279-1, 1327, 1329, 1402, 1426, 1591, 1640, 1641, 1693, 1694,

13   1803, 1810, 1811, 1815, 1822, 1830, 1834, 1845, 1856, 1861, 1863, 1883, 1884, 2260, 2513,

14   2707, 2724, 2768 as well as any objections or proposed instructions stated orally before the Court

15   (*see, e.g.*, 7/24/12 Hr'g Tr. 32-39; 7/27/12 Hr'g Tr. 4, 39-51, 72-76; Dkt. No. 1621 at 4-45; Dkt.

16   No. 1695 at 1642-43; Dkt. No. 1998 at 3730-3940; Dkt. No. 2562 at 111-19; Dkt. No. 2738 at 11-

17   15; Dkt. Nos. 2738 and 2739 at 307-20; Dkt. No. 2739 at 416-18; Dkt. No. 2841 at 941-45, 1055-

18   57; Dkt. No. 2843 at 1210-35; Dkt. No. 2844 at 1403-15).  For Samsung, those objections and

19   proposed instructions include but are not limited to those set forth in the 1846 Case Dkt. Nos.

20   987-03, 1221, 1231, 1232, 1238, 1264, 1279, 1279-01, 1329, 1388, 1389, 1423, 1426, 1428,

21   1591, 1600, 1622, 1656, 1670, 1693, 1694, 1800, 1809, 1812, 1821, 1821-01, 1831, 1846, 1858,

22   1859, 1860, 1862, 1867, 1883, 1892, 2241, 2513, 2707,  2724, 2768, as well as any objections or

23   proposed instructions stated orally before the Court (*see e.g.*, 7/24/12 Hr'g Tr. 32-39; 7/27/12

24   Hr'g Tr. 4, 39-51, 72-76; Dkt. No. 1621 at 4-45; Dkt. No. 1695 at 1642-43; Dkt. No. 1998 at

25   3730-3940; 10/23/13 Hr'g Tr. 1-27, 108-12; Dkt. No. 2562 at 111-19; Dkt. No. 2738 at 11-15;

26   Dkt. Nos. 2738 and 2739 at 307-20; Dkt. No. 2739 at 416-18; Dkt. No. 2841 at 941-45, 1055-57;

27   Dkt. No. 2843 at 1210-35; Dkt. No. 2844 at 1403-15).  The parties incorporate by reference all of

28

1   their previously submitted proposed jury instructions and objections to jury instructions in the

2   1846 Case.

3           Attached as Exhibit A is the parties' proposed set of undisputed final jury instructions.

4           Attached as Exhibit B is the parties' proposed set of disputed final jury instructions.

1          Dated: February 25, 2014

2

    By: */s/ Mark D. Selwyn*                      By: */s/ Victoria F. Maroulis*         

3

4          Attorney for Plaintiff and Counterclaim-      Attorney for Defendants and Counterclaim-
           Defendant                                  Plaintiffs

5          APPLE INC.                         SAMSUNG ELECTRONICS CO., LTD.,
                                           SAMSUNG ELECTRONICS AMERICA,

6                                          INC., AND SAMSUNG
                                           TELECOMMUNICATIONS AMERICA,

7                                          LLC

8          JOSH A. KREVITT (CA SBN 208552)      CHARLES K. VERHOEVEN (Bar No.
           jkrevitt@gibsondunn.com                  170151)

9          H. MARK LYON (CA SBN 162061)        charlesverhoeven@quinnemanuel.com
           mlyon@gibsondunn.com                   KEVIN A. SMITH (Bar No. 250814)

10         GIBSON, DUNN & CRUTCHER LLP      kevinsmith@quinnemanuel.com
           1881 Page Mill Road                     QUINN EMANUEL URQUHART &

11         Palo Alto, CA  94304-1211              SULLIVAN LLP
           Telephone: (650) 849-5300            50 California Street, 22nd Floor

12         Facsimile: (650) 849-5333             San Francisco, California 94111
                                           Telephone: (415) 875-6600

13         HAROLD J. McELHINNY (CA SBN      Facsimile: (415) 875-6700
           66781)

14         hmcelhinny@mofo.com
           JACK W. LONDEN (CA SBN 85776)      KEVIN P.B. JOHNSON (Bar No. 177129

15         jlonden@mofo.com                     (CA);
           RACHEL KREVANS (CA SBN 116421)    2542082 (NY))

16         rkrevans@mofo.com                   kevinjohnson@quinnemanuel.com
           RUTH N. BORENSTEIN (CA SBN       VICTORIA F. MAROULIS (Bar No.

17         133797)                             202603)
           rborenstein@mofo.com                victoriamaroulis@quinnemanuel.com

18         ERIK J. OLSON (CA SBN 175815)        QUINN EMANUEL URQUHART &
           ejolson@mofo.com                    SULLIVAN LLP

19         MORRISON & FOERSTER LLP         555 Twin Dolphin Drive, 5th Floor
           425 Market Street                   Redwood Shores, California 94065

20         San Francisco, California 94105-2482   Telephone: (650) 801-5000
           Telephone: (415) 268-7000           Facsimile: (650) 801-5100

21         Facsimile: (415) 268-7522

22                                         WILLIAM C. PRICE (Bar No. 108542)
           WILLIAM F. LEE (*pro hac vice*)      williamprice@quinnemanuel.com

23         William.lee@wilmerhale.com          QUINN EMANUEL URQUHART &

24         WILMER CUTLER PICKERING        SULLIVAN LLP
             HALE AND DORR LLP           865 South Figueroa Street, 10th Floor

25         60 State Street                    Los Angeles, California 90017-2543
           Boston, Massachusetts 02109         Telephone: (213) 443-3000

26         Telephone: (617) 526-6000          Facsimile: (213) 443-3100
           Facsimile: (617) 526-5000

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# TABLE OF CONTENTS

**Page**

EXHIBIT A – PROPOSED UNDISPUTED INSTRUCTIONS .................................................... 2

GENERAL CIVIL INSTRUCTIONS........................................................................................ 5

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 1 DUTY OF JURY ........................... 7

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2 BURDEN OF PROOF—
PREPONDERANCE OF THE EVIDENCE........................................................................ 8

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3 BURDEN OF PROOF—
CLEAR AND CONVINCING EVIDENCE........................................................................ 9

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4 TWO OR MORE
PARTIES—DIFFERENT LEGAL RIGHTS ................................................................... 10

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5 WHAT IS EVIDENCE ................ 11

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7 EVIDENCE FOR LIMITED
PURPOSE ...................................................................................................................... 12

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9 CHARTS AND
SUMMARIES IN EVIDENCE........................................................................................ 13

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10 DIRECT AND
CIRCUMSTANTIAL EVIDENCE ................................................................................. 14

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11 CREDIBILITY OF
WITNESSES................................................................................................................... 15

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12 IMPEACHMENT
EVIDENCE—WITNESS ............................................................................................... 16

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13 TAKING NOTES...................... 17

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14 DEPOSITION IN LIEU OF
LIVE TESTIMONY ....................................................................................................... 18

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15 USE OF
INTERROGATORIES OF A PARTY.............................................................................. 19

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 16 EXPERT OPINION ................... 20

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17 USE OF DEVICES
DURING DELIBERATIONS.......................................................................................... 21

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19 DUTY TO DELIBERATE.......... 26

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 20 COMMUNICATION WITH
COURT .......................................................................................................................... 27

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 21 RETURN OF VERDICT ........... 28

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 23 PATENTS—
INFRINGEMENT BURDEN OF PROOF ....................................................................... 30

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26 PATENTS—LITERAL
INFRINGEMENT........................................................................................................... 31

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 28 PATENTS—
INFRINGEMENT OF CLAIM 1 OF THE '239 PATENT UNDER THE
DOCTRINE OF EQUIVALENTS................................................................................... 32

1

2

## TABLE OF CONTENTS
### (continued)

Page

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 29 PATENTS—
INVALIDITY—BURDEN OF PROOF ........................................................................ 33

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 30 PRIORITY DATE—'596
PATENT ........................................................................................................................ 34

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 31 PATENTS—WRITTEN
DESCRIPTION REQUIREMENT ............................................................................... 35

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34 PATENTS—
OBVIOUSNESS ........................................................................................................... 36

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36 PATENT DAMAGES—
BURDEN OF PROOF ................................................................................................... 38

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 40 PATENT DAMAGES—
LOST PROFITS—AMOUNT OF PROFIT ................................................................. 39

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 42 PATENT DAMAGES—
REASONABLE ROYALTY—ENTITLEMENT .......................................................... 40

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 48 MONETARY
REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE .............................. 41

EXHIBIT B – PROPOSED DISPUTED INSTRUCTIONS ...................................................... 42

GENERAL CIVIL INSTRUCTIONS ......................................................................................... 43

PROPOSED FINAL JURY INSTRUCTION NO. 6 (APPLE) WHAT IS NOT
EVIDENCE ................................................................................................................... 44

PROPOSED FINAL JURY INSTRUCTION NO. 6 (SAMSUNG) WHAT IS NOT
EVIDENCE ................................................................................................................... 46

PROPOSED FINAL JURY INSTRUCTION NO. 8 (APPLE) CHARTS AND SLIDES
NOT RECEIVED IN EVIDENCE ............................................................................... 48

PROPOSED FINAL JURY INSTRUCTION NO. 8 (SAMSUNG) CHARTS AND
SLIDES NOT RECEIVED IN EVIDENCE ................................................................. 49

PROPOSED FINAL JURY INSTRUCTION NO. 18 (APPLE) SUMMARY OF
CONTENTIONS ........................................................................................................... 50

PROPOSED FINAL JURY INSTRUCTION NO. 18 (SAMSUNG) SUMMARY OF
CONTENTIONS ........................................................................................................... 53

PROPOSED FINAL JURY INSTRUCTION NO. 22 (APPLE) PATENTS—
INTERPRETATION OF CLAIMS .............................................................................. 57

PROPOSED FINAL JURY INSTRUCTION NO. 22 (SAMSUNG) PATENTS—
INTERPRETATION OF CLAIMS .............................................................................. 59

PROPOSED FINAL JURY INSTRUCTION NO. 24 (APPLE) PATENTS—DIRECT
INFRINGEMENT ......................................................................................................... 62

PROPOSED FINAL JURY INSTRUCTION NO. 24 (SAMSUNG) PATENTS—DIRECT
INFRINGEMENT ......................................................................................................... 64

PROPOSED FINAL JURY INSTRUCTION NO. 25 (APPLE) PATENTS—DIRECT
INFRINGEMENT ......................................................................................................... 66

# TABLE OF CONTENTS
## (continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 25 (SAMSUNG) DIRECT INFRINGEMENT ...... 68

PROPOSED FINAL JURY INSTRUCTION NO. 25A (SAMSUNG) DIRECT INFRINGEMENT OF THE '959 AND '414 PATENTS ...... 70

PROPOSED FINAL JURY INSTRUCTION NO. 26B (SAMSUNG) APPARATUS CLAIMS--LITERAL INFRINGEMENT ...... 72

PROPOSED FINAL JURY INSTRUCTION NO. 26C (SAMSUNG) APPARATUS CLAIMS--LITERAL INFRINGEMENT ...... 74

PROPOSED FINAL JURY INSTRUCTION NO. 27 (APPLE) PATENT INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS – '239 PATENT, CLAIMS 1 AND 15 ...... 76

PROPOSED FINAL JURY INSTRUCTION NO. 27 (SAMSUNG) MEANS-PLUS-FUNCTION CLAIMS – LITERAL INFRINGEMENT ...... 78

PROPOSED FINAL JURY INSTRUCTION NO. 32 (APPLE) PATENTS— ANTICIPATION ...... 80

PROPOSED FINAL JURY INSTRUCTION NO. 32 (SAMSUNG) ANTICIPATION ...... 82

PROPOSED FINAL JURY INSTRUCTION NO. 32A (SAMSUNG) ANTICIPATION OF THE '959 AND '414 PATENTS ...... 84

PROPOSED FINAL JURY INSTRUCTION NO. 33 (APPLE) PATENTS— STATUTORY BARS ...... 86

PROPOSED FINAL JURY INSTRUCTION NO. 33 (SAMSUNG) PATENTS— STATUTORY BARS ...... 88

PROPOSED FINAL JURY INSTRUCTION NO. 35 (APPLE) PATENT EXHAUSTION ...... 90

PROPOSED FINAL JURY INSTRUCTION NO. 35 (SAMSUNG) PATENT EXHAUSTION ...... 92

PROPOSED FINAL JURY INSTRUCTION NO. 37 (APPLE) PATENT DAMAGES — LOST PROFITS — GENERALLY ...... 94

PROPOSED FINAL JURY INSTRUCTION NO. 37 (SAMSUNG) PATENT DAMAGES — LOST PROFITS — GENERALLY ...... 96

PROPOSED FINAL JURY INSTRUCTION NO. 38 (APPLE) PATENT DAMAGES— LOST PROFITS—FACTORS TO CONSIDER ...... 98

PROPOSED FINAL JURY INSTRUCTION NO. 38 (SAMSUNG) PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER ...... 100

PROPOSED FINAL JURY INSTRUCTION NO. 39 (APPLE) PATENT DAMAGES— LOST PROFITS—AVAILABILITY OF ACCEPTABLE NON-INFRINGING ALTERNATIVES ...... 102

PROPOSED FINAL JURY INSTRUCTION NO. 41 (APPLE) PATENT DAMAGES— LOST PROFITS—MARKET SHARE ...... 105

PROPOSED FINAL JURY INSTRUCTION NO. 41 (SAMSUNG) PATENT DAMAGES—LOST PROFITS—MARKET SHARE ...... 106

# TABLE OF CONTENTS
### (continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 43 (APPLE) PATENT DAMAGES—
    REASONABLE ROYALTY—DEFINITION ................................................................. 107

PROPOSED FINAL JURY INSTRUCTION NO. 43 (SAMSUNG) PATENT
    DAMAGES—REASONABLE ROYALTY—DEFINITION ........................................ 110

PROPOSED FINAL JURY INSTRUCTION NO. 44 (APPLE) PATENT DAMAGES—
    DATE OF COMMENCEMENT—PRODUCTS ........................................................... 113

PROPOSED FINAL JURY INSTRUCTION NO. 44 (SAMSUNG)  PATENT
    DAMAGES—DATE OF COMMENCEMENT—PRODUCTS ................................... 114

PROPOSED FINAL JURY INSTRUCTION NO. 45 (APPLE) PATENTS—INDUCING
    PATENT INFRINGEMENT ........................................................................................ 117

PROPOSED FINAL JURY INSTRUCTION NO. 45 (SAMSUNG) INDUCING PATENT
    INFRINGEMENT ........................................................................................................ 119

PROPOSED FINAL JURY INSTRUCTION NO. 46 (APPLE) CONTRIBUTORY
    PATENT INFRINGEMENT ........................................................................................ 121

PROPOSED FINAL JURY INSTRUCTION NO. 46 (SAMSUNG) CONTRIBUTORY
    PATENT INFRINGEMENT ........................................................................................ 123

PROPOSED FINAL JURY INSTRUCTION NO. 47 (APPLE) WILLFUL PATENT
    INFRINGEMENT ........................................................................................................ 125

PROPOSED FINAL JURY INSTRUCTION NO. 47 (SAMSUNG) WILLFUL PATENT
    INFRINGEMENT ........................................................................................................ 127

PROPOSED FINAL JURY INSTRUCTION NO. 49 (APPLE) BREACH OF
    CONTRACT—OBLIGATION TO LICENSE PATENTS ON FRAND TERMS ........ 130

PROPOSED FINAL JURY INSTRUCTION NO. 49 (SAMSUNG) BREACH OF
    CONTRACT—OBLIGATION TO LICENSE PATENTS ON FRAND TERMS
    AND CONDITIONS .................................................................................................... 132

PROPOSED FINAL JURY INSTRUCTION NO. 50 (APPLE) BREACH OF
    CONTRACT—OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL
    PROPERTY RIGHTS ("IPR") .................................................................................... 134

PROPOSED FINAL JURY INSTRUCTION NO. 50 (SAMSUNG) BREACH OF
    CONTRACT—OBLIGATION TO TIMELY  DISCLOSE INTELLECTUAL
    PROPERTY RIGHTS ("IPR") .................................................................................... 136

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A
# PROPOSED UNDISPUTED
# INSTRUCTIONS

1

**GENERAL CIVIL INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 1**
**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. Do not let personal likes or dislikes, opinions, prejudices, bias, or sympathy influence your decision. Bias includes bias for or against any party or any witness based upon nationality, race or ethnicity. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.


Source:

11-CV-01846 Final Instruction No. 1 (Dkt. No. 1903 at 8).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2**
**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

2

3   When a party has the burden of proof on any claim or defense by a preponderance of the
    evidence, it means you must be persuaded by the evidence that the claim or defense is more
4   probably true than not true.

5   You should base your decision on all of the evidence, regardless of which party presented it.

6

7   Source:

8   11-CV-01846 Final Instruction No. 2 (Dkt. No. 1903 at 9).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3**
**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

Source:

11-CV-01846 Final Instruction No. 3 (Dkt. No. 1903 at 10).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4**
**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

2

3   You should decide the case as to each party separately.  Unless otherwise stated, the instructions
    apply to all parties.

4

5

    Source:

6

7   11-CV-01846 Final Instruction No. 4 (Dkt. No. 1903 at 11).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5**
**WHAT IS EVIDENCE**

The trial is now over.  The evidence you are to consider in deciding what the facts are consists of:

    1.    the sworn testimony of any witness;

    2.    the exhibits which are received into evidence; and

    3.    any facts to which the lawyers have agreed.

Source:

11-CV-01846 Final Instruction No. 5 (Dkt. No. 1903 at 12).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7**
**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may have been admitted for a limited purpose only. You must consider it only for that limited purpose and for no other.

Source:

11-CV-01846 Final Instruction No. 7 (Dkt. No. 1903 at 14).

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9**
**CHARTS AND SUMMARIES IN EVIDENCE**

3

4

5

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  You may use those charts and summaries as evidence, even though the underlying documents and records are not here.  You should give them only such weight as you think they deserve.

6

7

8

Source:

11-CV-01846 Final Instruction No. 9 (Dkt. No. 1903 at 16).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Source:

11-CV-01846 Final Instruction No. 10 (Dkt. No. 1903 at 17).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness said, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testified about it.

In considering the testimony of any witness, you may take into account:

    (1)    the opportunity and ability of the witness to see or hear or know the things testified to;

    (2)    the witness's memory;

    (3)    the witness's manner while testifying;

    (4)    the witness's interest in the outcome of the case and any bias or prejudice;

    (5)    whether other evidence contradicted the witness's testimony;

    (6)    the reasonableness of the witness's testimony in light of all the evidence; and

    (7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Source:

11-CV-01846 Final Instruction No. 11 (Dkt. No. 1903 at 18).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12**
**IMPEACHMENT EVIDENCE—WITNESS**

2

3

The evidence that a witness lied under oath or gave different testimony on a prior occasion may
be considered, along with all other evidence, in deciding whether or not to believe the witness and
how much weight to give to the testimony of the witness and for no other purpose.

4

5

6

Source:

7

11-CV-01846 Final Instruction No. 12 (Dkt. No. 1903 at 19).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13**
**TAKING NOTES**

3

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

4

5

Source:

6

11-CV-01846 Final Instruction No. 13 (Dkt. No. 1903 at 20).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Source:

11-CV-01846 Final Instruction No. 14 (Dkt. No. 1903 at 21).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15
USE OF INTERROGATORIES OF A PARTY**

2

3   Evidence was presented to you in the form of answers of one of the parties to written
    interrogatories submitted by the other side.  These answers were given in writing and under oath,

4   before the actual trial, in response to questions that were submitted in writing under established
    court procedures.  You should consider the answers, insofar as possible, in the same way as if

5   they were made from the witness stand.

6

7   Source:

8   11-CV-01846 Final Instruction No. 15 (Dkt. No. 1903 at 22).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 16**
**EXPERT OPINION**

2

3      Some witnesses, because of education or experience, were permitted to state opinions and the
       reasons for those opinions.

4

5      Opinion testimony should be judged just like any other testimony.  You may accept it or reject it,
       and give it as much weight as you think it deserves, considering the witness's education and
       experience, the reasons given for the opinion, and all the other evidence in the case.

6

7

       Source:

8

9      11-CV-01846 Final Instruction No. 16 (Dkt. No. 1903 at 23).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17**
**USE OF DEVICES DURING DELIBERATIONS**

**Device Handling Directions**

The physical devices you received are evidence in this trial.

You may use them in your deliberations but must not alter or modify the devices in any way.

Some of the devices have SIM cards in their packaging.  These SIM cards are not to be inserted into the phones.

Some of the devices have a mobile data connection.

Others must first be connected to the Court's Wi-Fi network to access the Internet.

Once connected, you must decline any software update notifications that may be presented to you.

You also must not download any content, such as apps, music, photographs, or games, to the devices.

*Connecting to the Internet*

To connect a device to the Court's Wi-Fi network, select "USDCSJ01" from the list of available wireless networks, as depicted below.



From the Applications menu, select the Web Browser application.



From the Court's Wi-Fi log in page, scroll to the bottom and click on the blue "Connect!" button.



1    *Declining System Update Notifications*

2    Some devices may display a "System update" notification like the ones below.



1

2

3

4

5

6

7

8

9



10

11

12

13

14

15

16

17

18   If you see such a screen, you must decline the request to update the system.  Select "Install later" or press the "home" or "back" button to exit the notification screen.

19

20



21

22

23   Source:

24   11-CV-01846 Final Instruction No. 17 (Dkt. No. 1903 at 24-28).

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19**
**DUTY TO DELIBERATE**

2

3    When you begin your deliberations, you should elect one member of the jury as your presiding
     juror.  That person will preside over the deliberations and speak for you here in court.

4

5    You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your
     verdict must be unanimous.

6    Each of you must decide the case for yourself, but you should do so only after you have
     considered all of the evidence, discussed it fully with the other jurors, and listened to the views of

7    your fellow jurors.

8    Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not
     come to a decision simply because other jurors think it is right.

9

10   It is important that you attempt to reach a unanimous verdict but, of course, only if each of you
     can do so after having made your own conscientious decision.  Do not change an honest belief
     about the weight and effect of the evidence simply to reach a verdict.

11

12   Source:

13   11-CV-01846 Final Instruction No. 19 (Dkt. No. 1903 at 31).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 20**
**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Source:

11-CV-01846 Final Instruction No. 20 (Dkt. No. 1903 at 32).

1

## JOINT PROPOSED FINAL JURY INSTRUCTION NO. 21
## RETURN OF VERDICT

2

3   A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

4

5   Source:

6   11-CV-01846 Final Instruction No. 21 (Dkt. No. 1903 at 33).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PATENT JURY INSTRUCTIONS**

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 23
PATENTS—INFRINGEMENT BURDEN OF PROOF**

3

4

5

I will now instruct you on the rules you must follow in deciding whether either Apple or Samsung (or both) has proven that the other side has infringed one or more of the asserted claims of the asserted patents.  To prove infringement of any claim, the patent holder must persuade you by a preponderance of the evidence that the alleged infringer has infringed that claim.

6

7

8

Source:

Adapted from 11-CV-01846 Final Instruction No. 23 (Dkt. No. 1903 at 36).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26**
**PATENTS—LITERAL INFRINGEMENT**

2

3    To decide whether each accused Samsung and Apple product literally infringes a claim of an
     asserted patent, you must compare the product with the patent claim and determine whether every
4    requirement of the claim is included in that product.  If so, the Samsung or Apple product in
     question literally infringes that claim.  If, however, a particular Samsung or Apple product does
5    not have every requirement in the patent claim, that product does not literally infringe that claim.
     You must decide literal infringement for each asserted claim separately.

6

7    If the patent claim uses the term "comprising," that patent claim is to be understood as an open
     claim.  An open claim is infringed as long as every requirement in the claim is present in the
8    accused product.  The fact that a particular accused Samsung or Apple product also includes other
     parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

9    Source:

10   Adapted from 11-CV-01846 Final Instruction No. 26 (Dkt. No. 1903 at 39).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 28**
**PATENTS—INFRINGEMENT OF CLAIM 1 OF THE '239 PATENT UNDER THE**
**DOCTRINE OF EQUIVALENTS**

If you decide that an accused Apple product does not literally infringe claim 1 of Samsung's '239 patent, for the two "means-plus-function" terms that I have already construed, then you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes parts or software instructions that are identical or equivalent to the requirements of the claim. If the product lacks a part or software instructions that is identical or equivalent to even one requirement of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has either a part or software instructions that are identical or equivalent to that individual claim requirement.

A product part or software instructions are equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or software instructions and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a product part or software instructions is not substantial is to consider whether, as of the time of the alleged infringement, the part or software instructions performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or software instructions with the claimed requirement. The known interchangeability between the claim requirement and the part or software instructions of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part or software instructions and the claim requirement is not substantial. The fact that a part or software instructions of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

Source:

Adapted from 11-CV-01846 Final Instruction No. 27 (Dkt. No. 1903 at 40).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 29**
**PATENTS—INVALIDITY—BURDEN OF PROOF**

2

3     I will now instruct you on the rules you must follow in deciding whether each party has proven
      that claims of the other side's patents are invalid.  Before discussing the specific rules, I want to
      remind you about the standard of proof that applies to this defense.  To prove invalidity of any
4     patent claim, the alleged infringer must persuade you by clear and convincing evidence that the
      claim is invalid.

5

6

      Source:

7

8     Adapted from 11-CV-01846 Final Instruction No. 29 (Dkt. No. 1903 at 42) and N.D. Cal. Model
      Patent Jury Instr. B.4.1.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 30**
**PRIORITY DATE—'596 PATENT**

In order to reach a decision on the issue of validity, you must first decide on the effective filing date for each patent claim. This is known as the priority date. The parties dispute the priority date of the asserted claim of Samsung's '596 patent.

Samsung argues that the priority date of the '596 patent should be no later than November 9, 2004, the date that Korean Patent Application No. 2004-91093 was filed.

Apple argues that the priority date of the '596 patent should be no earlier than December 21, 2004.

The proper priority date is the earliest date that the patentee filed an application containing a disclosure providing a sufficiently detailed written description that would enable one of ordinary skill in the art to practice the full scope of the claimed invention. This is known as the written description requirement. The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the priority application for the patent was filed, even though the claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the priority patent application at the time it was filed would have recognized that the priority patent application described the invention as claimed in the '596 patent, even though the description may not use the exact words found in the '596 patent claim. A requirement in a claim need not be specifically disclosed in the priority patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the priority patent application as originally filed.

Source:

Adapted from 11-cv-01846 Final Instruction No. 30 (Dkt. No. 1903 at 43)*; Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1369 (Fed. Cir. 2009) ("[T]he test for sufficiency of support in a parent application is whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.' ") (quoting *Ralston Purina Co. v. Far–Mar–Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326-31 (Fed. Cir. 2008) ("[the] disclosure of the earlier filed application must describe the later claimed invention in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought . . . the earlier application need not describe the claimed subject matter in precisely the same terms as found in the claims at issue.") (citations omitted); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1233 (Fed. Cir. 1985); 35 U.S.C. § 120.

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 31**
**PATENTS—WRITTEN DESCRIPTION REQUIREMENT**

2

3   A patent claim is invalid if the patent does not contain an adequate written description of the
claimed invention.  The purpose of this written description requirement is to demonstrate that the
4   inventor was in possession of the invention at the time the application for the patent was filed,
even though the claims may have been changed or new claims added since that time.  The written
5   description requirement is satisfied if a person of ordinary skill in the field reading the patent
application at the time it was filed would have recognized that the patent application described the
6   invention as claimed in the patent, even though the description may not use the exact words found
in the patent claim.  A requirement in a claim need not be specifically disclosed in the patent
7   application as originally filed if a person of ordinary skill would understand that the missing
requirement is necessarily implied in the patent application as originally filed.

8

9

Source:

10

Adapted from 11-CV-01846 Final Instruction No. 30 (Dkt. No. 1903 at 43).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34**
**PATENTS—OBVIOUSNESS**

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time of invention.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

    (1)    the levels of education and experience of persons working in the field;

    (2)    the types of problems encountered in the field; and

    (3)    the sophistication of the technology.

Second, you must decide the scope and content of the prior art.  The parties disagree as to whether certain prior art references should be included in the prior art you use to decide the validity of claims at issue.  In order to be considered as prior art to a particular patent at issue here, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

    (1)    commercial success of a product due to the merits of the claimed invention;

    (2)    a long felt need for the solution provided by the claimed invention;

    (3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

    (4)    copying of the claimed invention by others;

    (5)    unexpected and superior results from the claimed invention;

    (6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and

    (7)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

The presence of any of factors 1-6 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factor 7 may be considered by you as an indication that the claimed invention would

have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether the alleged infringer has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

Source:

Adapted from 11-CV-01846 Final Instruction No. 33 (Dkt. No. 1903 at 46-47).

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36
PATENT DAMAGES—BURDEN OF PROOF**

3

4

5

I will instruct you about the measure of damages for claims of patent infringement.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that any party infringed any valid and enforceable claim of the other side's patents, you must then determine the amount of money damages to be awarded to the patent holder to compensate it for the infringement.

6

7

8

9

The amount of those damages must be adequate to compensate the patent holder for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

10

11

12

Each patent holder has the burden to persuade you of the amount of its damages.  You should award only those damages that the patent holder proves it suffered by a preponderance of the evidence.  While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.   Neither patent holder is entitled to damages that are remote or speculative.

13

**Source:**

14

Adapted from Case No. 11-CV-01846 Final Instruction No. 35 (Dkt. No. 1903 at 49).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 40**
**PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT**

2

3   Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it
claims it would have made but for the infringement and subtracting from that figure the amount
of additional costs or expenses it would have incurred in making those lost sales, such as cost of
4   goods, sales costs, packaging costs, and shipping costs.

5

6   Source:

7   Adapted from 11-CV-01846 Final Instruction No. 38 (Dkt. No. 1903 at 52).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 42**
**PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT**

2

3    Both Apple and Samsung seek a reasonable royalty for the infringement of their respective patents.

4    If Apple has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all
5    infringing Samsung sales for which Apple has not been awarded lost profits damages.

6    Samsung does not make a claim for lost profits.  Samsung should be awarded a reasonable royalty for all infringing Apple sales.

7

8    Source:

9

10   Adapted from 11-CV-01846 Final Instruction No. 40 (Dkt. No. 1903 at 54).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 48
MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE**

You should award any remedy to which a party has proven it is entitled with respect to each sale of an accused smartphone or tablet, except that you should not award a party twice for the same sale of any accused smartphone or tablet. This means that if you award lost profits for the sale of a certain number of accused smartphones or tablets, you may not also award reasonable royalties for those same sales. If you award reasonable royalties for the sale of a certain number of accused smartphones or tablets, you may not award lost profits for those same sales.

You do not have to use the same theory to calculate damages for every sale, however. For example, an award may be split between lost profits for some sales and a reasonable royalty for the remainder of sales.

For any sale where you measure damages by a reasonable royalty or lost profits, you may include royalty amounts for each patent that you find valid and infringed by the sale or lost profits on that sale.

If a sale is awarded one form of monetary recovery, that same sale cannot be awarded another form of monetary recovery.

**Source:**

Adapted from Case No. 11-CV-01846 Final Instruction No. 74 (Dkt. No. 1903 at 96).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B
# PROPOSED DISPUTED
# INSTRUCTIONS

**GENERAL CIVIL INSTRUCTIONS**

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 6 (Apple)**
**WHAT IS NOT EVIDENCE**

3

4

In reaching your verdict, you may consider only the testimony and exhibits that were received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

5

6

(1)    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are all intended to help you interpret the evidence.  But these arguments and statements are not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

7

8

9

10

(2)    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

11

12

(3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

13

14

15

(4)    Demonstrations of the purported functionality of alleged prior art systems are not evidence.  In determining whether a patent claim is invalid you should not be influenced by these demonstrative systems, and your decision should be based solely on your interpretation of the evidence as it relates to the alleged prior art.

16

17

(5)    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

18

19

20

Source:

21

Adapted from 11-CV-01846 Final Instruction No. 6 (Dkt. No. 1903 at 13).

**Samsung's Objections:**

22

23

Apple proposes departing from the 11-cv-01846 instructions by adding the fourth paragraph, but no changes in the law or other changes in circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.

24

25

26

27

28

In addition, Apple's new fourth paragraph is in conflict with other instructions, is contrary to precedent, and is one-sided and prejudicial.  Apple seeks to prohibit Samsung from showing prior

1

2   art software (even software that is *stipulated* to be prior art) to the jury.  This is nothing more than

3   a rehash of Apple's rejected motion for summary judgment and its rejected motion for *Daubert*
    exclusion.  *See* Dkt. 1150 at 27-29; Dkt. 1325 at 3.  Moreover, it is false to say that

4   demonstratives are "not evidence" and "may not [be] consider[ed]."  Demonstrative evidence *is* a
    category of evidence, and it can help juries understand complex technical subject matter.  *See*

5   *Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 1000 (N.D. Cal. 2009) ("the case presented complex
    technical issues and [] the jury benefitted at trial from the use of demonstrative evidence.")

6   Indeed, as Final Jury Instruction No. 8 notes, though demonstratives are not themselves "evidence
    or proof *of facts*," they may nevertheless "help explain the contents of books, records, documents,

7   or other evidence in the case."  Apple's instruction that the jury should not consider
    demonstratives misleadingly suggests that demonstratives should be ignored, not considered, and

8   is therefore in conflict with Final Jury Instruction No. 8.  Additionally, Apple's instruction
    conflicts with controlling Federal Circuit precedent.  Particularly when the prior art is a piece of

9   software and the claims recite a computer readable medium (as is the case with the asserted
    claims of Apple's '959 and '414 patents), the Federal Circuit has opined that an "expert's

10  *demonstrative* data setup" was the "most telling *evidence*" of the instructions included in prior art
    software.  *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013)

11  (emphases added).  The expert in *Versata* "confirmed his theories that the accused software was
    capable of performing the claimed functionality by making the software perform the function

12  without modifying the software."  *Id*. at 1262.

13  Finally, Apple's instruction is one-sided, permitting the jury to consider demonstrations such as
    videos or screenshots of the accused products for infringement purposes, but not allowing the jury

14  to consider demonstrations of prior art for invalidity.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 6 (Samsung)**
**WHAT IS NOT EVIDENCE**

3

4

In reaching your verdict, you may consider only the testimony and exhibits that were received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

5

6

    (1)      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are all intended to help you interpret the evidence.  But these arguments and statements are not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

7

8

9

    (2)      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

10

11

12

    (3)      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

13

14

    (4)      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

15

16

**Source:**

17

Case No. 11-CV-01846 Final Instruction No. 6 (Dkt. No. 1903 at 13).

18

**Apple's Objections:**

19

20

Apple's proposed instruction properly includes an instruction that demonstrative exhibits created during the litigation to illustrate the operation of alleged prior art systems may be used at trial but not introduced into evidence.  Apple's Motion *in Limine* No. 4 seeks to exclude "Demonstration Systems" Created by Samsung's Experts Related to Alleged Prior Art.  If granted, no such demonstrative exhibits will be used.  If, on the other hand, the outcome of the motion allows Samsung to use demonstrative exhibits that are not admitted into evidence, the jury should be so instructed.

21

22

23

24

Apple expects that Samsung will rely heavily on demonstrative exhibits to demonstrate not an existing, single piece of software, but rather describe combinations of elements from prior art that were never combined in actual prior art systems.  Samsung has no evidence that these "systems"—as Samsung's experts configured them—actually existed in the critical time period. Apple expects Samsung to argue about the demonstrative exhibits as if they were themselves evidence of prior art systems, which they are not.

25

26

27

28

Absent a clear instruction to the jury, as proposed by Apple, that highlights that these demonstrations of the purported functionality of alleged prior art systems are not evidence, there

1

2    is serious risk that the jury will be misled into accepting the demonstrative exhibits as actual
     evidence of prior art.
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
## PROPOSED FINAL JURY INSTRUCTION NO. 8 (Apple)
## CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE
3

4
Certain demonstratives, videos, charts, and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.
5

6

7
Source:

8
Adapted from 11-CV-01846 Final Instruction No. 8 (Dkt. No. 1903 at 15).

9
**<u>Samsung's Objections</u>:**

10
Apple proposes the addition of "demonstratives" and "videos" to the instruction that the Court gave in 11-cv-01846, but no changes in the law or other changes in circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

**PROPOSED FINAL JURY INSTRUCTION NO. 8 (Samsung)**
**CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE**

4
5

Certain charts and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts.

6

**Source:**

7

Case No. 11-CV-01846 Final Instruction No. 8 (Dkt. No. 1903 at 15).

8

**Apple's Objections:**

9
10
11
12

Apple's proposed instruction differs from Samsung's proposal in that it includes "demonstratives" and "videos." If, as Apple expects, demonstratives and videos that are not "charts and slides" are used but not introduced into evidence, the jury should be instructed that they are not evidence. (*See also* Apple's objections to Samsung's Proposed Final Jury Instruction No. 6.)

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 18 (Apple)
## SUMMARY OF CONTENTIONS

3

4    I will now again summarize for you each side's contentions in this case.  I will then tell you what
     each side must prove to win on each of its contentions.

5

6    As I previously explained, Apple seeks money damages from Samsung Electronics Company
     ("SEC"), Samsung Electronics America, Inc.  ("SEA"), and Samsung Telecommunications
     America, LLC ("STA"), for allegedly infringing claim 9 of the '647 patent, claim 25 of the '959

7    patent, claim 20 of the '414 patent, claim 8 of the '721 patent, and claim 18 of the '172 patent.
     Apple also argues that SEC actively induced SEA and STA to infringe the patents.  Apple also

8    contends that Samsung's infringement has been willful.

9    I have already determined that the following Samsung devices infringe claim 18 of the '172
     patent:  Admire, Galaxy Nexus, Galaxy Note (excluding one release), Galaxy SII (excluding one

10   release), Galaxy SII Epic 4G Touch (excluding one release), and Stratosphere.  Samsung denies
     that it has infringed the asserted claims of Apple's other asserted patents from its other asserted

11   patents and argues that, in addition, all of Apple's asserted patent claims are invalid.  Invalidity is
     a defense to infringement.

12

13   Samsung has also brought claims against Apple for patent infringement.  Samsung seeks money
     damages from Apple for allegedly infringing the claim 10 of the '087 patent, claim 13 of the '596
     patent, claim 27 of the '449 patent, and claims 1 and 15 of the '239 patent.

14

15   Invalidity and exhaustion are defenses to infringement.  Apple denies that it has infringed the
     claims asserted by Samsung and argues that the claims asserted by Samsung are invalid, and for
     the '087 and '596 patents, exhausted due to Samsung's agreements with Intel and Qualcomm.

16   Apple also contends that, by asserting its "declared essential" patents against Apple, Samsung has
     breached its contractual obligations to timely disclose and then license these patents on fair,

17   reasonable, and nondiscriminatory terms.

18   For each party's patent infringement claims against the other, the first issue you will have to
     decide is whether the alleged infringer has infringed the claims of the patent holder's patents and

19   whether those patents are valid.  If you decide that any claim of either party's patents has been
     infringed and is not invalid, you will then need to decide any money damages to be awarded to

20   the patent holder to compensate for the infringement.  You will also need to make a finding as to
     whether Samsung's infringement was willful.  If you decide that Samsung's infringement was

21   willful, that decision should not affect any damage award you give.  I will take willfulness into
     account later.

22

23   To resolve Apple's claims regarding Samsung's "declared essential" patents, you will need to
     make a finding as to whether Samsung  breached its contractual obligations.  If you decide that
     Samsung breached its contractual obligations, you will then need to decide what money damages

24   to award to Apple.

25

26   Source:

27   Adapted from 11-CV-01846 Final Instruction No. 18 (Dkt. No. 1903 at 29-30).

28   **Samsung's Objections**

1

2    **Apple's Instruction Regarding Willful Infringement.**  Samsung objects to Apple's omission of
Samsung's allegations that Apple willfully infringed the '087, '596, '239, and '449 patents from
3    Paragraph 6 of Apple's instruction.  Samsung has consistently alleged that Apple willfully
infringed these patents, including in its initial infringement contentions served on June 15, 2012.
4    (*See* Dkt. No. 267-3 at 4, Samsung's June 15, 2012 Infringement Contentions.)  In those initial
contentions, Samsung specifically stated that "Apple has willfully infringed at least U.S. Patent
5    No.[] 7,756,087 . . . since at least September 2010 when Samsung informed Apple of its
infringement."  *Id.*  In October 2012, Samsung amended its infringement contentions and
6    specifically included an allegation that Apple willfully infringed the other Samsung patents at
issue.  These contentions stated that "Apple has willfully infringed the other Samsung patents
7    since at least the filing of Samsung's counterclaims."  (Dkt. No. 267-6 at 5-6, Samsung's
Amended Infringement Contentions.)  More than 16 months have passed since Samsung's
8    amendment, and Apple has never before raised its belief that Samsung did not allege that Apple's
infringement was and still is willful.
9

10

11   To the extent Apple omitted these allegations because it believes them insufficient, Samsung
notes that Apple has provided a similar level of detail for its own willfulness allegations.  Its
12   infringement contentions provide a cursory mention that Samsung has willfully infringed while
referring back to Apple's complaint.  (*See* Dkt. No. 269-3 at 4-5, Apple's June 15, 2012
13   Infringement Contentions.)  The complaint has similar boilerplate allegations that Samsung has
willfully infringed Apple's patents.  (*See* Dkt. No. 1, Complaint.)  Because Samsung has clearly
14   alleged that Apple willfully infringes—in at least as much detail as Apple's own willfulness
allegations—Samsung respectfully requests that Paragraph 6 of this instruction include
15   Samsung's allegations that Apple's infringement has been willful.  This allegation is included in
Samsung's Instruction No. 18 at Paragraph 7.
16

17   Moreover, Apple's argument that Samsung's willfulness contention cannot rest on post-filing
conduct is inconsistent with Apple's own willfulness allegations.  To the extent Samsung's
18   willfulness allegations are deemed deficient, so too are Apple's.

19   **Apple's Instruction Regarding Infringement of the '172 Patent.**  In the third paragraph of
Apple's version of this instruction, Apple proposes language concerning the Court's
20   determination of infringement of the '172 patent that is prejudicial to Samsung.  Apple proposed
a similar instruction in its preliminary jury instructions and Samsung objects for the same reasons
21   it objected to Apple's preliminary instruction.  In particular, Apple expressly highlights
Samsung's infringement of claim 18 of the '172 patent, but fails to mention the patent numbers or
22   asserted claims of Apple's other asserted patents.  The primary purpose served by Apple's
emphasis on the Court's determination of infringement is to prejudice Samsung in the eyes of the
23   jury.  Indeed, the syntax of Apple's proposed instruction appears designed to suggest that the
claims of the other Apple patents are likewise infringed.  Apple's proposed instruction may also
24   create the incorrect impression that Samsung is not challenging the validity of the '172 patent and
thus mislead the jury into thinking that liability on '172 patent is determined and all the jury has
25   to decide is damages.  To the contrary, Samsung has asserted a defense and counterclaim of
invalidity, which is something the jury has yet to decide.  Invalidity is a defense to infringement.
26

27   In contrast, Samsung's proposed instruction separates the discussion of the '172 patent from the
remaining Apple patents.  This separation makes clear that the jury does not need to decide the
28   issue of infringement of the '172 patent, but unlike Apple's proposal, it neither suggests an

infringement result as to the remaining Apple patents nor implies that Samsung is not challenging validity of the '172 patent.

**PROPOSED FINAL JURY INSTRUCTION NO. 18 (Samsung)**
**SUMMARY OF CONTENTIONS**

I will now again summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

As I previously explained, Apple seeks money damages from Samsung Electronics Company ("SEC") Samsung Electronics America Inc., ("SEA") and Samsung Telecommunications America LLC ("STA") for allegedly infringing claim 9 of the '647 patent, claim 25 of the '959 patent, claim 20 of the '414 patent, claim 8 of the '721 patent and claim 18 of the '172 patent. Apple also argues that SEC actively induced SEA and STA to infringe the patents. Apple contends that Samsung's infringement has been willful.

Samsung denies that it has infringed the asserted claims of the '647, '959, '414 and '721 patents and argues that, in addition, the asserted claims are invalid. Invalidity is a defense to infringement.

Your duty for Apple's '172 patent is different from the other patents. For the '172 patent, it has already been found that certain accused products practice claim 18 of the '172 patent, and you need only determine whether claim 18 is invalid.

Samsung has also brought claims against Apple for patent infringement. Samsung seeks money damages from Apple for allegedly infringing claim 10 of the '087 patent, claim 13 of the '596 patent, claim 27 of the '449 patent, and claim 1 and claim 15 of the '239 patent Samsung also contends that Apple's infringement has been willful.

Invalidity and exhaustion are defenses to infringement. Apple denies that it has infringed the claims asserted by Samsung and argues that the claims asserted by Samsung are invalid and for the '087 and '596 patents, exhausted due to Samsung's agreements with Intel and Qualcomm Apple also contends that, by asserting its "declared essential" patents against Apple, Samsung has breached its contractual obligations to timely disclose and then license these patents on fair, reasonable, and nondiscriminatory terms.

For each party's patent infringement claims against the other, the first issue you will be asked to decide is whether the alleged infringer has infringed the claims of the patent holder's patents and whether those patents are valid. If you decide that any claim of either party's patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

To resolve Apple's claims regarding Samsung's "declared essential" patents, you will also need to make a finding as to whether Samsung breached its contractual obligations. If you decide that Samsung breached its contractual obligations, you will then need to decide what money damages to award to Apple.

Source:

Adapted from Case No. 11-CV-01846 Final Instruction No. 18 (Dkt. No. 1903 at 29).

**Apple's Objections:**

1

2   **Samsung's Instruction Regarding Infringement of the '172 patent (4th paragraph)**.  The
    Court has granted summary judgment of infringement of claim 18 of the '712 patent.  In the

3   damages retrial in the 1846 case, the Court established a model for the instruction that should be
    used here:  "During a prior proceeding, a jury found the '381, '915, '163, D'677, and D'305

4   patents valid and that each of these patents is infringed by a product marked below with an x.
    Your sole job in this trial is to determine the amount of damages to be awarded to Apple for

5   Samsung's infringement of these patents."  (Case No. 11-CV-01846 Dkt. No. 2716 at 21.)  The

6   Court included a chart identifying the infringing products and the patents each was found to
    infringed.  (*Id*.)

7

8   Apple objects to  Samsung's Proposed Instruction No. 18 because it does not follow the model of
    the Court's 1846 instruction.  Instead, Samsung's proposed instruction states that "it has already

9   been found that certain accused products practice claim 18 of the '172 patent," which
    misleadingly avoids the word "infringement" and fails to identify the products that the Court

10  found to infringe.  The Court should adopt Apple's proposed instruction, which follows the model
    of the instruction in the 1846 retrial exactly.

11

12  **Samsung's Instruction Regarding Apple's Alleged Willful Infringement (5th and 7th
    paragraphs):**  Apple objects to the inclusion of any reference in the jury instructions that its

13  alleged infringement of the Samsung asserted patents was willful because Samsung has failed to
    adequately disclose willfulness contentions and the bases for any such contentions, as required by

14  the District's Patent Local Rules.  Patent Local Rule 3-1(h) required Samsung to disclose the
    basis for any allegation of willful infringement.  *See* Patent L.R. 3-1(h) ("a party claiming . . .

15  willful infringement [shall disclose] the basis for such allegation").  To do so, Samsung was
    required to identify facts establishing, among other things, that Apple knew of the asserted

16  patents before the commencement of the lawsuit and knew that the accused activities were
    infringing.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007); *see also Bard*

17  *Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012).  As

18  shown below, Samsung's Rule 3-1(h) disclosure—amended three times since the beginning of
    this lawsuit—does neither:

19

20              Before initiating this lawsuit, Apple was aware that its products
                infringed many Samsung patents, including patents Samsung has

21              asserted against Apple in this action.  Despite this knowledge,
                Apple continued to infringe Samsung's patents and continued to act

22              in an objectively reckless manner.  Apple has willfully infringed at
                least U.S. Patent Nos. 7,756,087 and U.S. Patent No. 6,292,179

23              since at least September 2010 when Samsung informed Apple of its
                infringement.  Apple has continued to willfully infringe these

24              patents and the other Samsung patents since the filing of Samsung's
                counterclaims.

25

26  (Dkt. No. 660 at 4.)

27  *First*, Samsung does not dispute that it seeks to rely on Apple's post-litigation conduct to support
    its willfulness allegation.  (*See* Dkt. 1286-03 at 25).  On the contrary, Samsung admits that for

28  patents other than the '087 patent, its willfulness allegation extends only to the time of Samsung's
    counterclaim—and includes nothing more than the assertion that the filing of its counterclaim

1

2   provided Apple with notice.  (Dkt. 1286-3 at 24-25.)  The Court has already held that "post-filing

3   conduct alone is legally insufficient to prove willfulness."  *Lift-U v. Ricon Corp.*, C.A. No. 10-
    01850-LHK, 2012 WL 5303301, at *11 (N.D. Cal. Oct. 25, 2012) (Koh, J.) (granting summary

4   judgment of no willful infringement); *see also In re Seagate*, 497 F.3d at 1374 (ordinarily,

5   "willfulness will depend on an infringer's prelitigation conduct").  Accordingly, to present a
    claim for willful infringement to the jury, Samsung must have identified sufficient facts

6   establishing that Apple had notice of each asserted patent prior to this litigation.  But rather than
    attempt to defend the sufficiency of its willfulness disclosures, Samsung seeks to distract,

7   asserting that "[t]o the extent Samsung's willfulness allegations are deemed deficient, so too are

8   Apple's." (Dkt. 1286-03 at 25.)  But Samsung has not sought to exclude Apple's willfulness
    claim on this ground.  (*See* Dkt. 1306 (arguing that Apple's willfulness evidence should be

9   excluded for an entirely different reason, *i.e.*, alleged failure to satisfy the objective prong).)
    Even if Samsung had challenged the sufficiency of Apple's willfulness claim on this ground, it

10  would fail.  Apple has clearly identified facts suggesting that Samsung had pre-suit notice of the
    asserted Apple patents, including the fact that Samsung engaged in systematic copying of Apple's

11  products, including the claimed features, and continued to flood the market with infringing
    products even after being sued by Apple in the 1846 lawsuit and being adjudicated as an infringer

12  of Apple's intellectual property.  (*See, e.g.*, Dkt. 1.)

13  *Second*, Samsung's cursory reference to the '087 patent in its Rule 3-1(h) disclosure is inadequate
    because it fails to provide any facts that Apple knew that the accused activities were infringing.

14  Samsung's disclosure regarding Apple's conduct amounts to nothing more than a recitation of the
    legal elements of a willfulness claim.  Indeed, "other than the mere suggestion that infringement

15  continues, there are no facts . . . concerning . . . [pre- or] post-filing conduct at all, and certainly
    none that would support a claim of recklessness." *Vasudevan Software, Inc. v. TIBCO Software,*

16  *Inc.*, C.A. No. 11-06638-RS, 2012 WL 1831543, at *5 (N.D. Cal. May 18, 2012).  Accordingly,

17  the jury should also not be instructed that Apple can be found liable for willful infringement of
    the '087 patent.

18

19

20

21

22

23

24

25

26

27

28

**PATENT JURY INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 22 (Apple)**
**PATENTS—INTERPRETATION OF CLAIMS**

Before you decide whether Apple or Samsung has infringed the claims of the other side's patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

- **U.S. Patent No. 7,761,414**

The term "concurrently with" means "the synchronization thread and the non-synchronization thread are both active during an overlapping time interval."

- **U.S. Patent No. 6,847,959**

The term "heuristic" means "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters."

- **U.S. Patent No. 5,946,647**

The term "action processor" means "program routine(s) that perform the selected action on the detected structure."

- **U.S. Patent No. 7,756,087**

The term "non-scheduled transmission" means "Transmission of data using non-scheduled transmission information to indicate possible transmission time intervals (TTIs)."

The term "N" means "a positive integer."

- **U.S. Patent No. 5,579,239**

Claim 1 of the '239 patent includes "means-plus-function" requirements. I will explain to you later the separate rules that apply to interpreting this claim.

\*        \*        \*

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

Source:

Adapted from 11-CV-01846 Final Instruction No. 22 (Dkt. No. 1903 at 35); Dkt. No. 447 (*Markman* order); Dkt. No. 1150 (MSJ order).

1

2      **Samsung's Objections**

3      Samsung objects to Apple's instruction as it relates to the '239 patent. Apple's instruction states

4      that "Claim 1 of the '239 patent includes 'means-plus-function requirements. I will explain to
       you later the separate rules that apply to interpreting this claim." This instruction fails to

5      acknowledge that the Court has already construed two means-plus-function terms from Claim 1
       of the '239. It also incorrectly implies that the jury must interpret this claim.

6

7      In contrast, Samsung's instruction regarding the '239 patent indicates that the Court has already
       construed two terms from the '239 patent. It also correctly informs the jury that the Court will

8      "explain how means plus function terms are literally infringed and infringed under the doctrine of
       equivalents." Samsung's instruction does not improperly instruct the jury that the jury will be

9      tasked with interpreting this claim. For these reasons, the Court should adopt Samsung's
       instruction regarding the '239 patent.

10

11     Apple has defined the term "thread" repeatedly and consistently throughout this litigation,
       including in its statements to the Court. In *Markman* briefing, Apple defined "thread" in the '414

12     patent as "a series of steps that a computer process needs to complete." (Dkt. 333 at 19:6-20; *see
       also* Feb. 14, 2013 Hearing Tr. at 66:2-3 (counsel for Apple defining "thread" as "just a series of

13     steps.").) Relying on Apple's arguments, the *Markman* Order adopted Apple's proposed
       construction of the disputed term "concurrently with," to mean "[t]he synchronization *thread* and

14     the non-synchronization *thread* are both active during an overlapping time interval." (*See* Dkt.
       447 at 25 (emphases added).) Accordingly, the Court recognized in its Summary Judgment Order

15     that "[t]he parties agree that a 'thread' is 'a series of steps that a computer process needs to
       complete." (Dkt. 1151 at 24-25 n.8.) Apple now is judicially estopped from departing from its

16     prior position and assigning a new definition to this claim term at trial. *See*, *e.g.*, *New Hampshire
       v. Maine*, 532 U.S. 742, 749 ("[W]here a party assumes a certain position in a legal proceeding,

17     and succeeds in maintaining that position, he may not thereafter . . . , assume a contrary position. .
       . . This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase

18     of a case on an argument and then relying on a contradictory argument to prevail in another
       phase.'") (citations omitted); *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555

19     F.3d 772, 778-79 (9th Cir. 2009) (holding that "[t]he doctrine of judicial estoppel was developed
       to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining

20     advantage from that position, then seeking a second advantage by later taking an incompatible
       position"). At trial Apple should not be allowed to argue that the plain and ordinary meaning of

21     "thread" in the '414 patent is anything other than "a series of steps that a computer process needs
       to complete."

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 22 (Samsung)**
**PATENTS—INTERPRETATION OF CLAIMS**

Before you decide whether Apple or Samsung has infringed the claims of the other side's patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. For some terms, the parties agreed on a construction. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

- **U.S. Patent No. 7,761,414**

The term "concurrently with" means "the synchronization thread and the non-synchronization thread are both active during an overlapping time interval."

The term "thread" means "a series of steps that a computer process needs to complete."

- **U.S. Patent No. 5,946,647**

The term "action processor" means "program routine(s) that perform the selected action on the detected structure."

- **U.S. Patent No. 6,847,959**

The term "heuristic" means " "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters."

- **U.S. Patent No. 7,756,087**

The term "non-scheduled transmission" means "Transmission of data using non-scheduled transmission information to indicate possible transmission time intervals (TTIs)."

The term "N" means "a positive integer."

- **U.S. Patent No. 5,579,239**

Claim 1 of the '239 patent includes two "means-plus-function" terms that I have already interpreted. I will give you my interpretation of those terms later when I explain how means plus function terms are literally infringed and infringed under the doctrine of equivalents.

\*       \*       \*

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

1

2

3

The claims define the scope of the patent.  You must read the claims in the same way when you analyze infringement and when you analyze invalidity.

4

**Source:**

5

6

Adapted from Case No. 11-CV-01846 Final Instruction No. 22 (Dkt. No. 1903 at 35); *Upsher-Smith Labs. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed Cir. 2005) ("A century-old axiom of patent law holds that a product "which would literally infringe if later in time anticipates if earlier." (citations omitted)); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1331 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement.").

7

8

9

**Apple's Objections:**

10

Apple objects to language in Samsung's Proposed Final Jury Instruction No. 22 that provides claim constructions for terms that the Court did not construe and about which the parties disagree and that includes confusing and legally erroneous language.

11

12

*First*, Apple objects to the statement that "For some terms, the parties agreed on a construction." The parties did not agree on any constructions among those listed above.  So, that statement is untrue.

13

14

*Second*, Samsung's proposed instruction also includes a claim construction of the term "thread" in '414 patent that was not issued by the Court and is not agreed between the parties.

15

16

17

18

19

20

21

22

The term "thread" was not identified as one of the parties' ten terms to be construed pursuant to the claim construction process (*see* Dkt. No. 300 (Joint Claim Construction and Prehearing Statement pursuant to Patent Local Rule 4-3)).  It was not otherwise identified as requiring construction in connection with dispositive motions.  (*See, e.g.*, Dkt. Nos. 803, 805.)  Apple has never proposed a construction for the term "thread" as used in the asserted claim of U.S. Patent No. 7,761,414, nor otherwise construed that word as a claim term.  Samsung cites one sentence in the background section of Apple's infringement expert report that explains the general "technological concepts" of the '414 patent.  Samsung ignores the following section that specifically explains the asserted claims of the '414 patent and any claim construction positions that Apple's expert is taking.  (*See* Dkt. No. 946-3 at 7 (Samsung's Reply in Support of Its Motion for Summary Judgment); Dkt. No.1151 at 24-25 n.8 (citing to Samsung's Reply (Dkt. No. 946-3) as the basis for a belief that the "parties agree that a 'thread' is a 'series of steps that a computer process needs to complete'").)  Samsung's proposed instruction thus improperly creates a construction for a claim term that has neither been considered nor agreed to by the parties.

23

24

Further, Apple is not be judicially estopped (contrary to Samsung's contention in the Joint Pretrial statement).  The explanation of a thread was not an argument made to obtain summary judgment rulings.

25

26

*Third*, Apple objects to inclusion of the statement "Thus, if a product was sold *before* the priority date of the patent, and would have infringed had it been sold *after* the patent issued, the patent claim is invalid, because the patent claim does not describe a new invention—it describes a product that already existed."

27

28

The statement will be confusing to a jury because the overall instruction relates to claim construction, yet the added sentence does not.  It attempts to blend issues of infringement and invalidity.  It also errs by presenting a statement about invalidity in an instruction that is not connected to the instructions on the burden of proof and the presumption of validity.

1

2  In addition, the statement is not correct as a matter of law.  In 2008, the Federal Circuit held "anticipation cannot be proved by merely establishing that one 'practices the prior art.'"  *See*

3  *Zenith Elecs. Corp. v. PDI Commc'ns Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) (citing *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,* 279 F.3d 1357 (Fed. Cir. 2002).

4  The Court explained that "the defense of noninfringement cannot be proved by comparing an accused product to the prior art" because of the differing burdens faced by infringement and

5  invalidity assertions.  The Federal Circuit continued: "mere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing

6  evidence of invalidity.  Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference. '[I]t is the presence of the prior art and

7  its relationship to the claim language that matters for invalidity.'"  *Id.* at 1363 (quoting *Tate Access Floors,* 279 F.3d at 1367).

8  The *Tate Access Floors* court explained:

9

10      Our law requires patent challengers to prove invalidity by clear and convincing evidence.
        Where an accused infringer is clearly practicing only that which was in the prior art, and

11      nothing more, and the patentee's proffered construction reads on the accused device,
        meeting this burden of proof should not prove difficult.  Nevertheless, accused infringers

12      are not free to flout the requirement of proving invalidity by clear and convincing
        evidence by asserting a "practicing prior art" defense to literal infringement under the less
        stringent preponderance of the evidence standard.

13  *Tate Access Floors,* 279 F.3d at 1367.

14

15  In addition, there is a discontinuity between infringement and anticipation because the statutes are different as to each.  Actions or products could literally infringe and not anticipate if earlier.

16  **Reference to Means-Plus-Function Requirements.**  Apple's proposed instruction correctly identifies that there are "separate rules that apply" to means-plus-function claims.  This language

17  was pulled directly from the district's model patent jury instructions.  (*See* N.D. Cal. Model Patent Jury Instr. B.2.1 (model instruction regarding interpretation of claims suggesting that it be

18  coordinated with instruction 3.5); *Id.* at B.3.5 (instructing that "separate rules . . . apply to 'means-plus-function' requirements).).  Samsung's proposed instruction does not track the model

19  jury instruction.  In addition, as explained in more detail in Apple's objection to Samsung's proposed instruction number 28, incorrectly suggests that Samsung can present an equivalents

20  theory of infringement for any means-plus-function claim.  Samsung has expressly agreed that it would seek a doctrine of equivalents theory for only the two construed means-plus-fuction terms

21  of the '239 patent.

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 24 (Apple)**
**PATENTS—DIRECT INFRINGEMENT**

3

4

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

5

6

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Samsung and/or Apple has made, used, sold, offered for sale, or imported within the United States a product covered by any of the asserted claims of the other side's patents. If Samsung or Apple has done so, it infringes. You, the jury, make this decision.

7

8

9

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused Samsung and/or Apple products infringe that claim. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.

10

11

You have heard evidence about both side's commercial products. However, in deciding the issue of patent infringement you may not compare the Samsung and Apple commercial products to each other. Rather, you must compare the accused Samsung products to the claims of the Apple patents, and the accused Apple products to the claims of the Samsung patents.

12

13

14

Whether or not Samsung or Apple knew its products infringed or even knew of the other side's patents does not matter in determining direct infringement.

15

16

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement. You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement. These separate rules apply to claim 1 of the '239 patent. I will describe those separate rules shortly.

17

18

19

20

Source:

21

Adapted from 11-CV-01846 Final Instruction No. 24 (Dkt. No. 1903 at 37) and N.D. Cal. Model Patent Jury Instr. B.3.2.

22

23

**Samsung's Objections**

24

This instruction provides guidance to the jury on how to determine whether a patent is directly infringed, and warns against mistakes in making that determination such as comparing the patentee's commercial products with those of the accused infringer. A warning against determining infringement by comparing the figures in a patent specification with the accused products is also necessary particularly if Apple intends to show those comparisons to the jury, as it did in a portion of the expert report of Dr. Storer cited by the Court. (Dkt. 1301 at 8.)

25

26

27

28

The additional language proposed by Samsung is as follows: "In deciding the issue of patent infringement you also may not compare the Samsung and Apple products to the figures in the patents. Your decision must be based on a comparison of the accused products to the asserted

1

2    claims."  This language is taken almost verbatim from Federal Circuit opinions.  *See Catalina*
*Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277, 1286 (Fed. Cir. 2002) ("Certainly the Catalina
3    joint is different from the ball-and-socket joint shown in the figures of the ' 141 patent. But
infringement is to be determined by comparing the asserted claim to the accused device, not by
4    comparing the accused device to the figures of the asserted patent.")  In addition, similar language
is included in the AIPLA's Model Patent Jury Instructions, at instruction 2.0: "Neither the written
5    description, nor the drawings of a patent can be infringed."

6

7    Further, Apple proposes omitting language from the Court's 11-cv-1846 instructions, specifically
language describing how dependent claims relate to their respective independent claims, as well
8    as two examples describing the effect of infringement and invalidity determinations of
independent claims on their dependent claims.  But no changes in the law or other changes in
9    circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties
that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that
10   absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the
Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-
11   14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial
unless you can point to either a change in the law or something else that justifies a change, but
12   there's going to be a heavy presumption that what was previously given will be given this time.").
Apple's proposed change is not based on a change in law and there is no other compelling reason
13   to overturn the heavy presumption in favor of using instructions from the first trial.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 24 (Samsung)**
**PATENTS—DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether Samsung and/or Apple has made, used, sold, offered for sale, or imported within the United States a product covered by any of the asserted claims of the other side's patents.  If Samsung or Apple has done so, it infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused Samsung and/or Apple products infringe that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both side's commercial products.  However, in deciding the issue of patent infringement you may not compare the Samsung and Apple commercial products to each other.  Rather, you must compare the accused Samsung products to the claims of the Apple patents, and the accused Apple products to the claims of the Samsung patents.

In deciding the issue of patent infringement you also may not compare the Samsung and Apple products to the figures in the patents.  Your decision must be based on a comparison of the accused products to the asserted claims.

Whether or not Samsung or Apple knew its products infringed or even knew of the other side's patents does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed.  A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following instructions will provide more detail on these two types of direct infringement.  You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement.  These separate rules apply to claim 1 of the '239 patent.  I will describe those separate rules shortly.

**Source:**

Adapted from Case No. 11-CV-01846 Final Instruction No. 24 (Dkt. No. 1903 at 37); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002) ("Certainly the Catalina joint is different from the ball-and-socket joint shown in the figures of the '141 patent. But infringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent.").

1

2   **Apple's Objections:**

3   Apple has two objections.

4   ***First***, Apple objects to the inclusion of the second, fourth and fifth sentences of the third paragraph because they are unnecessary and confusing.  Those sentences contemplate a case in
5   which a party is asserting both an independent claim and a dependent claim from that independent claim.  Specifically, those sentences instruct the jury to make an explicit finding of infringement
6   or non-infringement of an independent claim and only then reach the dependent claim.   However, for all of the Apple patents, Apple is only asserting dependent claims.  If the jury were to follow
7   this instruction explicitly, it may be confused by the absence of asserted independent claims corresponding to asserted dependent claims, and never reach a finding of the asserted claims.
8   Neither party is asserting an independent claim and a dependent claim from the same patent in the final selection of five claims being tried in this case.  Samsung's proposed language is confusing
9   and likely to lead to an erroneous understanding of the applicable law.

10   ***Second***, Apple objects to the inclusion of Samsung's proposed fifth paragraph, which says "In deciding the issue of patent infringement you also may not compare the Samsung and Apple
11   products to the figures in the patents.  Your decision must be based on a comparison of the accused products to the asserted claims."

12
     That instruction was not necessary in the 1846 case trials and is not necessary now.  Samsung has
13   not pointed to any different facts or circumstances to warrant deviating in this respect from the instruction provided in the 1846 case.

14
     In addition, the added paragraph incorrectly suggests that the jury may not review the figures and
15   specification of the patent to assist it in understanding the invention.  Further, the proposed language suggests that the jury is to compare the claims to the products, which is not sufficiently
16   precise.  The jury is being asked to evaluate whether the accused product includes each and every limitation of the asserted claims.  The word "compare" in this paragraph without sufficient
17   context might suggest to a lay juror that if it found additional elements present in the accused product it could find non-infringement.  That is not correct.  *See, e.g., E.I. du*
18   *Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988).

19

20

21

22

23

24

25

26

27

28

1

2

3

**PROPOSED FINAL JURY INSTRUCTION NO. 25 (Apple)**
**PATENTS—DIRECT INFRINGEMENT**

4

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis:

5

6

7

The location of the sale depends on many factors, and you may find that the sale occurred in several places.  A sale occurs wherever the "essential activities" of the sale take place.  The essential activities include, for example, negotiating the contract and performing obligations under the contract.

8

9

Source:

10

Adapted from 11-CV-01846 Final Instruction No. 25 (Dkt. No. 1903 at 38).

11

**Samsung's Objections:**

12

13

14

Samsung objects to this instruction as an inaccurate characterization of the law.  The Federal Circuit has never held that contracting alone, without more, constitutes a sale within the United States.  The cases relied on by Apple for support in the previous case held that contracting ***and*** performance may determine the location of a sale.  *See, e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) ("*North American*

15

16

17

18

*Philips* . . . noted that in some cases the criterion for determining the location of a 'sale' under section 271(a) is not necessarily where legal title passes; the 'more familiar places of contracting and performance' may take precedence over the passage of legal title.").  In addition, in those cases where the Federal Circuit has found a sale within the United States, it was undisputed that delivery was made to the United States.  *See, e.g., Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("[I]t is undisputed that GlowProducts sold the products

19

20

directly to customers in the United States.").  The Federal Circuit more recently elaborated on these prior holdings and held that the location of negotiation and contracting should ***not*** determine the location of the sale.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("Maersk USA's first argument, that

21

22

23

24

25

the location of negotiation and contracting should control is contrary to our precedent in *Litecubes*.").  At least one district court has found that the holding of *Transocean* precludes finding that a sale occurred within the United States if the product is both shipped from and delivered to locations outside the United States.  *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, No. 2:10-cv-216-JRG, 2013 WL 4054915, at *3 (E.D. Tex. Aug. 6, 2013) ("The question stemming from Lake Cherokee's position is whether a contract between two U.S. companies, negotiated and executed within the United States, for the sale of a patented invention with delivery and performance outside of the United States, constitutes a sale under § 271(a). Despite the factual differences, the Federal Circuit's analysis in *Transocean* compels this Court to answer that question in the negative.").

26

27

28

Samsung's proposed instruction correctly states the law on this issue by instructing the jury that they must consider "where the products were shipped from and where the products were shipped to."  The Federal Circuit has previously held that this language is proper in a jury instruction regarding sales within the United States.  *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d

1

2   1360 (Fed. Cir. 2010), *aff'd on other grounds*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.

3   Ct. 2060 (2011).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 25 (Samsung)**
**DIRECT INFRINGEMENT**

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis:

The location of a sale depends on many factors, and you may find that the sales occurred in several places.  In evaluating whether the sales took place in the United States, you must consider where the products were shipped from and where the products were shipped to.  A contract negotiated and executed within the United States, for the sale of a patented invention with delivery and performance outside of the United States, is not a sale within the United States.

Source:

Adapted from Case No. 11-CV-01846 Final Instruction No. 25 (Dkt. No. 1903 at 38); *SEB S.A. v. Montgomery Ward & Co., Inc.,* 594 F.3d 1360 (Fed. Cir. 2010), *aff'd on other grounds, Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060 (2011); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,* 617 F.3d 1296 (Fed. Cir. 2010); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp,* 394 F.3d 1368, 1376 (Fed. Cir. 2005); *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.,* No. 2:10-cv-216-JRG, 2013 WL 4054915, at *3 (E.D. Tex. Aug. 6, 2013); *ION, Inc. v. Sercel, Inc.,* No. 5:06-cv-236, 2010 WL 3768110, at *3-*4 (E.D. Tex. Sept. 16, 2010), *aff'd without opinion,* 464 Fed. Appx. 901 (Fed. Cir. 2012); *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.,* 659 F. Supp. 2d 790, 801 (S.D. Tex. 2009); *Wing Shing Prods. Ltd. v. Simatelex Manufactory Co.,* 479 F. Supp. 2d 388, 403 (S.D.N.Y. 2007); *Cornell Research Found., Inc. v. Hewlett-Packard Co.,* No. 5:01-CV-1974, 2007 WL 4349135 at *51 (N.D.N.Y. Jan. 31, 2007); *Minebea Co. v. Papst,* 444 F. Supp. 2d 68 (D.D.C. 2006); *Quality Tubing, Inc. v. Precision Tube Holdings Corp.,* 75 F. Supp. 2d 613, 621 (S.D. Tex. 1999).

**Apple's Objections:**

In the 1846 case, Samsung raised the same purported defense regarding whether Samsung Electronics Company, Ltd., the Korean parent, sells products to STA, SEA or carriers in the United States.  The parties submitted disputed instructions, objections and argument regarding the issue and the Court adopted the instruction proposed by Apple above.  The instruction is supported by at least the following cases.  35 U.S.C. § 271; *Litecubes, LLC v. N. Light Prods.,* 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("In contrast, here it is undisputed that GlowProducts sold the products directly to customers in the United States.  Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States."); *id.* ("GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada.  Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271."); *SEB S.A. v. Montgomery Ward & Co.,* 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("[T]he record shows that Pentalpha intended to sell its deep fryers directly into the United States. Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut to the deep fryers, and it manufactured the deep fryers with North American

1

2   electrical fittings.  Moreover, the invoices between Pentalpha and the three U.S. companies all
    identify delivery to U.S. destinations. In sum, this court does not perceive any fundamental error
3   with the jury instructions in light of the record evidence.").

4   Furthermore, the language proposed by Samsung—that, in determining whether a sale occurred in
5   the United States, the jury must consider "where the products were shipped from and where the
    products were shipped to.  A contract negotiated and executed within the United States, for the
6   sale of a patented invention with delivery and performance outside of the United States, is not a
    sale within the United States"—is nearly identical to language that Samsung proposed, and the
7   Court rejected, in the first trial.  (1846 Dkt. 1694 at 39.)  As then, Samsung's proposed instruction
8   is an incomplete and inaccurate statement of the law, since it describes only one factor relevant to
    determining the location of the sale.  The Federal Circuit has made clear that a sale is made at all
9   the locations where the sale's "essential activities," including negotiation and performance of the
    contract for sale or order and payment for the goods, take place. *See, e.g., MEMC Elec. Materials,*
10  *Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376-77 (2005) (determining the
    location of a sale by considering where its "essential activities," such as ordering, packaging,
11  shipping and payment, took place); *North American Philips Corp. v. American Vending Sales,*
12  *Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (stating that a sale occurs not only where legal title
    passes, but also where contracting and performance occur); *Litecubes, LLC v. Northern Light*
13  *Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008) (determining the location of a sale by
    considering where the customers were located when they contracted for the accused products and
14  where the products were delivered).  Apple's corresponding instruction is an accurate statement
15  of the law of patent exhaustion.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 25A (Samsung)
DIRECT INFRINGEMENT OF THE '959 AND '414 PATENTS**

3

4     In this case, Apple asserts that Samsung infringes claim 25 of the '959 patent and claim 20 of the
'414 patent, which are known as "computer readable medium" claims.  Computer readable

5     medium" claims cover capability.  A product is covered by a computer readable medium claim
when the product contains instructions that are capable of performing the listed steps.  The

6     product does not have to actually perform those steps in order to literally infringe the computer
readable medium claim.

7

**Source:**

8

*Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (rejecting

9     contention that end product needed to be modified by the user to result in an infringing
configuration, where the expert showed that the software was "capable of performing the claimed

10    functionality" and did not make any modifications to the computer source code); *Finjan, Inc. v.
Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("In this case, Finjan's non-

11    method claims describe capabilities without requiring that any software components be 'active' or
'enabled.' . . .The storage medium claims similarly cover capability. Claim 65 of the '194 patent

12    recites a 'computer-readable storage medium storing program code for causing a server that
serves as a gateway to a client to perform the steps of: receiving ...; comparing ...; and preventing

13    execution....' This language does not require that the program code be 'active,' only that it be
written 'for causing' a server ('194 patent claim 65) or a computer ('780 patent claim 18) to

14    perform certain steps."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:11-cv-01846, Dkt. 1156, at
11-12) (where a claim is directed to a "computer-readable storage device storing instructions . . .

15    'infringement occurs when a device that has the capability of performing the [recited] steps . . . is
manufactured and sold.'").

16

17    **<u>Apple's Objections:</u>**

18    Apple objects to including this instruction because it is incorrect as a matter of law, unsupported
by the cited cases, and unnecessary to enable the jury to determine infringement of the 414 and

19    959 Patents.

20    First, the instruction is wrong on the law.  It states that computer readable medium claims "cover
capability."  That statement is incomplete without further context.  As this Court found, a

21    computer readable medium claim comprising instructions for performing various actions, requires
evidence of an actual device that includes actual instructions that is capable, without

22    configuration, compilation or other intervening action, to perform each of the steps in the manner
required.  (Case No. 5:11-cv-01846 Dkt. No. 1156, at 11-12 (where a claim is directed to a

23    "computer-readable storage device storing instructions . . . 'infringement occurs when a device
that has the capability of performing the [recited] steps . . . is manufactured and sold.'").)

24

25    Second, Samsung cites *Versata* and *Finjan, but those cases* required evidence that the accused
products had a present, as-sold functionality that only had to be used or employed by the user.

26    The fact that no user had employed the functionality did not avoid infringement.  Samsung's
proposed instruction could encompass a computer device that includes source code that can be

27    used to create a product that later performs the instructions, even if there are at present no
instructions for carrying out the configuration required by the claims.

28    Samsung inserts the concept of a "product" when the cases discuss a medium with instructions
that cause a processor to perform a set of actions.  Therefore, Samsung's proposed statement that

1

2   "A product is covered by a computer readable medium claim when the product contains
    instructions that are capable of performing the listed steps" is not correct.  The product would
3   need to be or include a computer readable medium and the instructions it contains must be
    interpreted by a processor to cause the processor to perform the steps.  It is insufficient for a
4   product to include instructions that are not readable by a processor directly, which is the case with
    uncompiled computer source code.  Samsung's proposed language would read encompass disks
5   that contain source code, when the claim and the law require more.

6   Third, adding another instruction is unnecessary because Instruction No. 24 provides sufficient
    guidance to determine infringement.  Samsung is trying to introduce arguments supporting its
7   defenses in the guise of a proposed jury instruction

8   **Samsung's Statement in Support**:

9   Following the trial in the 11-cv-1846 case, the Federal Circuit decided an important case
    concerning computer readable medium claims.  In *Versata Software, Inc. v. SAP America, Inc.*,
10  717 F.3d 1255,  (Fed. Cir. 2013), the Federal Circuit determined that a computer readable
    medium claim covers any software with instructions capable of carrying out the recited steps if
11  those instructions are executed – even if the instructions are part of complex software that
    requires significant post-sale configuration before performing the steps.  In *Versata*, the expert
12  created a "demonstrative data setup" and "used the [software] interface to set up four pricing
    elements: a pricing calculation function; a pricing procedure; a condition table; and an access
13  sequence."  (*Id*. at 1261.)  The expert testified that this demonstrative data setup "did not require
    any modification to [the software's] source code" and that the "[software] included the code to
14  accomplish his demonstration."  (*Id*. at 1261-62.)  The expert therefore "confirmed his theories
    that the accused software was capable of performing the claimed functionality."  (*Id*. at 1262.)  In
15  light of the Federal Circuit's guidance, the jury should be instructed that computer readable
    medium claims are satisfied when software includes instructions that, if executed, perform the
16  steps recited in the claim – even when the software must be configured before the instructions in
    that software can perform the recited steps.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d
17  1197, 1204-05 (Fed. Cir. 2010) ("storage medium claims . . . cover capability.").

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 26B (Samsung)**
**APPARATUS CLAIMS--LITERAL INFRINGEMENT**

In this case, Samsung asserts that Apple infringes claim 10 of the '087 patent.  Apparatus claim 9, which is the independent claim for dependent claim 10, is drafted to describe functions of the apparatus.  Apparatus claim 9 is literally infringed if the accused product is capable of performing these functions.  The accused product does not have to actually perform the function in order to literally infringe the apparatus claim.

**Source:**

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) (finding infringement of a software system that had the capability to perform an apparatus claim, despite part of that infringing capability being disabled or "locked out" until the user separately purchased a software key); *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (rejecting contention that end product needed to be modified by the user to result in an infringing configuration, where the user merely set parameters provided by the software program and did not make any modifications to the computer source code); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464 (Fed. Cir. 1990) ("apparatus claims cover what a device is, not what a device does").

**Apple's Objections:**

First, Samsung's proposal for separate instructions regarding apparatus claims is unnecessary and will improperly suggest for the jury that its infringement determination of these claims is different from other claims.  The N.D. Cal Model Patent Jury Instructions do not include separate instructions for infringement of apparatus claims and Samsung has not identified any unique issue in this case that would justify including such an instruction here.  The general infringement instructions are sufficient to enable the jury to determine whether claim 10 of the '087 patent is infringed.

Second, the instructions proposed by Samsung are incomplete and inaccurate statements of the law regarding functional capability in apparatus claims.  For example, Samsung seeks to instruct the jury that an accused product can infringe an apparatus claim if it "is capable of performing" the recited functions.  But the Federal Circuit has made clear that merely having the "capability of being *configured or programmed* to perform the stated function," is not enough—if the accused products do not infringe "without modification," there is no infringement.  *Nazomi Comms., Inc. v. Nokia Corp.*, 739 F.3d 1339, 1346 (Fed. Cir. 2014) (emphasis in original).  Accordingly, Samsung's instruction is erroneous.

**Samsung's Statement in Support:**

Samsung's proposed instruction is a complete and accurate statement of the interpretation of apparatus claims and clarifies a complicated issue for the jury.  This instruction is based on clear Federal Circuit law that certain apparatus claim limitations, such as claim 10 of the '087 patent, do not have to actually perform the functions of the apparatus in order to literally infringe the claim limitation.  Apple has indicated its intent to present evidence about whether or not the accused products perform the functional features of claim 10 of the '087 patent.  Under the Federal Circuit law cited above, it is clear that such evidence would be improper in analyzing

1

2   whether or not the accused products infringe claim 10 of the '087 patent.  This instruction will

3   focus the jury on relevant evidence that they may rely upon in the infringement analysis.  Apple
    did not submit any competing instruction.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 26C (Samsung)**
**APPARATUS CLAIMS--LITERAL INFRINGEMENT**

Apparatus claims are commonly drafted to describe functions of the apparatus.  As I've already instructed you, if the patent claim uses the term "comprising," that patent claim is understood as an open claim.  An open claim is infringed as long as every element of the claim is met.  The fact that the accused product may include additional functions will not avoid infringement.  Absent language specifying a specific order for the functions, the accused products can perform these functions in any order and still infringe the apparatus claim.

**Source:**

Adapted from Final Jury Instruction No. 28, Case 5:11-cv-01846-LHK (Dkt. No. 1903); *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001) ("the signal 'comprising' is generally understood to signify that the claims do not exclude the presence in the accused apparatus or method of factors in addition to those explicitly recited") (citations omitted); *eTool Development, Inc. v. National Semiconductor Corp.*, No. 2:08–CV–196–TJW, 2011 WL 4100456, *17 (E.D. Tex. Sept. 13, 2011) (issuing jury instruction that "if you decide that a Defendant's product or method includes all the requirements or steps in that claim, the claim is infringed[; t]his is true even if the accused product or method includes components or steps in addition to those requirements"); *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) ("[A]lthough a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order . . . In this case, the claims themselves contain no basis to require air content reduction before winding. Though the claims, specification, and prosecution history require that the air content of the cleaning fabric be reduced prior to saturation, this does not mean that the air content must be reduced prior to winding on the roll."); *Creative Internet Advertising Corp. v. Yahoo, Inc*., No. 6:07cv354, 2008 WL 5061625, *16 (E.D. Tex. Nov. 24, 2008) (rejecting argument that apparatus claims required that the functions of the recited logic elements of a computer program had to be performed in a certain order where the claim language did not recite any sequence for the order of the function performance, and rejecting accused infringer's reliance on cases implying a sequence because those cases dealt with method claims).

**Apple's Objections:**

Samsung's proposal for separate instructions regarding apparatus claims is unnecessary and will improperly suggest for the jury that its infringement determination of these claims is different from other claims.  The N.D. Cal Model Patent Jury Instructions do not include separate instructions for apparatus claims and Samsung has not identified any unique issue in this case that would justify including such an instruction here.  The Court already has an instruction regarding the use of "comprising" as an open-ended claim term.  (*See* Instruction No. 26.)  There is no need to include an additional instruction on this issue simply because the claim at issue is an apparatus claim.  Indeed, several of the cases cited in Samsung's instruction involve claims other than apparatus claims, which exemplifies the extraneous nature of Samsung's proposal.

**Samsung's Statement in Support:**

Samsung's proposed instruction is nearly identical to Final Jury Instruction No. 28 that this Court adopted in Case No. 5:11-cv-01846-LHK (Dkt. No. 1903).  Final Jury Instruction No. 28 from the

1

2    -01846 case was drafted to address a method claim. Since there are no method claims are issue in this case, Samsung rephrased Final Jury Instruction No. 28 from the -01846 case to apply to

3    apparatus claims. Apple claims this instruction is repetitive of other Joint Proposed Final Jury Instructions, but other instructions does not address the issue regarding order of the claimed

4    functions, which this Court included in Final Jury Instruction No. 28 from the -01846 case. This instruction is based on long standing Federal Circuit law governing the interpretation of apparatus

5    claims.

6

7    Since none of the other instructions address the issue regarding order of the claimed functions in an apparatus claim, Apple's objection to this instruction effectively omits language from the

8    Court's 11-cv-1846 instructions. But no changes in the law or other changes in circumstances justify the modification. At the *Daubert* hearing, the Court informed the parties that there was a

9    "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would

10    adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can

11    point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time."). Apple's objection

12    is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial. Apple did not submit any

13    competing instruction.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**PROPOSED FINAL JURY INSTRUCTION NO. 27 (Apple)**
**PATENT INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS – '239 PATENT,**
**CLAIMS 1 AND 15**

4

5

6

7

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in claims 1 and 15 of the '239 patent.  A means-plus-function requirement covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of that specific structure that perform the claimed function.  A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

8

9

10

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil and paper or even the human brain.  But because the phrase is a means-plus-function requirement, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data and other means that are equivalent to it.

11

12

For purposes of this trial, I have interpreted certain of the mean-plus-function requirements.  In particular, I have determined that:

13

14

•      "an audio capture card, and a video card having a video capture module" is the structure that performs the "capturing, digitizing, and compressing at least one composite signal" function identified in the means-plus-function requirement of claim 1.

15

16

17

•      "one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file" is the structure that performs the "transmitting said composite signal" function identified in the means-plus-function requirement of claim 1.

18

19

20

If you find that the accused Apple products do have structure that performs these two claimed functions for claim 1, you must then determine whether that structure is the same as or equivalent to the structure I have identified in the specification.  If they are the same or equivalent, the means-plus-function requirement for these two claimed functions is satisfied by that structure of the accused Apple products.

21

22

23

In order to prove that a structure in the accused Apple products is equivalent to the structure in the '239 patent for these two claimed functions, Samsung must show that a person of ordinary skill in the field would have considered that the differences between the structure described in the '239 patent and the structure in the accused Apple products are not substantial.  Samsung must also show that the structure was available on the date the '239 patent was granted.

24

25

26

For all other means-plus-function requirements, you must decide whether the accused products have the structure disclosed in the patent for performing the claimed function.  If the accused products do not contain the structure disclosed in the patent for performing at least one of the claimed functions, then the claim containing that means-plus-function requirement is not infringed.

27

Source:

28

N.D. Cal. Model Patent Jury Instr. B.3.5.

1

2   **Samsung's Objections:**

3   Samsung objects to the final paragraph in Apple's version of this instruction because it instructs
the jury to construe the remaining claim terms.   The *en banc* Federal Circuit recently rejected an
4   assertion that claim construction is factual in nature. *Lighting Ballast Control LLC v. Philips
Elecs. N. Am. Corp.*, No. 12-1014, slip. op. at 10-11, 21 (Fed. Cir. Feb. 21, 2014).  The Federal
5   Circuit reinforced that claim construction "is a legal statement of the scope of the patent right".
6   *Id*. at 22.  Claim construction is a matter of law. *Id*. at 23.  Therefore, claim construction disputes
must be resolved by the court.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521
7   F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the
scope of a claim term, it is the court's duty to resolve it.")  Here, there are clear and distinct
8   disputes over the scope of the structures in the means plus function claims at issue.  Both parties
9   have set forth competing constructions, and the jury should not be permitted to construe the terms
without guidance from the Court.  An instruction such as that proposed by Apple would be error
10  as it will inject uncertainty into any decision rendered by the jury. *See Lighting Ballast*, 16-26
(discussing the importance of maintaining the legal nature of *Markman* decisions to improve
11  consistency and clarity in claim construction).  Indeed, instructing the jury to construe terms of a
means plus function patent would result in a need for *de novo* review of the jury's decision
12  regardless of the outcome. *Id*.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 27 (Samsung)**
**MEANS-PLUS-FUNCTION CLAIMS – LITERAL INFRINGEMENT**

3

4

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in claims 1 and 15 of the '239 patent. A means-plus-function requirement covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of that specific structure that perform the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

5

6

7

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil and paper or even the human brain. But because the phrase is a means-plus-function requirement, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data and other means that are equivalent to it.

8

9

10

For purposes of this trial, I have interpreted certain of the mean-plus-function requirements. In particular, I have determined that:

11

12

13

- "an audio capture card, and a video card having a video capture module" is the structure that performs the "capturing, digitizing, and compressing at least one composite signal" function identified in the means-plus-function requirement of claim 1.

14

15

- "one or more modems connected to one or more cellular telephones, telephone lines, and/or radio transmitters, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file" is the structure that performs the "transmitting said composite signal" function identified in the means-plus-function requirement of claim 1.

16

17

18

19

If you find that the accused Apple products do have structure that performs these two claimed functions for claim 1, you must then determine whether that structure is the same as or equivalent to the structure I have identified in the specification. If they are the same or equivalent, the means-plus-function requirement for these two claimed functions is satisfied by that structure of the accused Apple products.

20

21

22

In order to prove that a structure in the accused Apple products is equivalent to the structure in the '239 patent for these two claimed functions, Samsung must show that a person of ordinary skill in the field would have considered that the differences between the structure described in the '239 patent and the structure in the accused Apple products are not substantial. Samsung must also show that the structure was available on the date the '239 patent was granted.

23

24

25

**Source:**

26

35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

27

28

1

2      **Apple's Objections:**

3      Apple's proposed instruction largely tracks N.D. Cal. Model Patent Jury Instr. B.3.5.  Apple has

4      modified the instruction to:  (1) make clear that the two means-plus-function terms for which the
       Court has identified corresponding structure are the only two means-plus-function terms for

5      which Samsung is able to argue for equivalents; and (2) highlight that there are additional means-
       plus-function terms in the claims for which the jury must identify corresponding structure to

6      determine infringement.

7      Regarding the first issue, Samsung expressly agreed to withdraw all doctrine of equivalents and
       structural equivalents arguments under Section 112(f) except for the "means for capturing" and

8      "means for transmitting" terms in claim 1 of the '239 patent that were construed by the Court.
       (Dkt. 1056 at 3n.4 ("DOE Agreement:  Both Apple and Samsung agree to withdraw all doctrine

9      of equivalents and structural equivalents arguments under Section 112(f) in their respective expert
       reports that are subject to the parties' pending motions to strike.  For clarity, Apple's motion to

10     strike did not include and this agreement does not extend to the 'means for capturing' and 'means

11     for transmitting' limitations . . . .").)  Samsung agreed to do so after Apple moved to strike
       Samsung's experts' infringement analyses under the doctrine of equivalents.  Judge Grewal had

12     previously denied Samsung's request to amend its infringement contentions to add equivalents
       theories for all claims except the two means-plus-function terms construed by the Court.  (Dkt.

13     636 at 8:18-19 ("Samsung's general request to add doctrine of equivalents theories on those
       grounds therefore is DENIED."); *id.* at 18:3-4 ("In summary, Samsung may add its proposed

14     equivalence contentions and it may add the components and apps that it asserts meet the structure

15     as construed by Judge Koh.").)  Nonetheless, Samsung served infringement expert reports that
       included the excluded equivalence theories.  The parties' agreement reflected in Dkt. 1056

16     precludes Samsung from presenting to the jury any equivalence theory for any means-plus-
       function term other than the "means for capturing" and "means for transmitting" terms in claim 1

17     of the '239 patent.  Any instruction regarding equivalents should make that clear.

18

19     Regarding the second issue, Apple's proposed instruction correctly identifies that there are
       additional means-plus-function requirements in the claims of the '239 patent for which the

20     disclosed structure must be identified in order to determine infringement.  Samsung elected to not
       construe these terms and its proposed instruction seeks to ignore them as required additional

21     limitations.

22

23

24

25

26

27

28

1

2

3

**PROPOSED FINAL JURY INSTRUCTION NO. 32 (Apple)**
**PATENTS—ANTICIPATION**

4

5

6

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

7

8

9

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

10

Here is a list of the ways that either party can show that a patent claim was not new:

11

12

— If the claimed invention was already publicly known or actually publicly used by others in the exact manner claimed in the United States before the date of conception of the claimed invention;

13

14

15

— If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention. A reference is a "printed publication" if it is sufficiently accessible to those interested in locating relevant materials in the field without knowing the author, title, or location of a particular document, even if it is difficult to find;

16

17

— If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

18

19

20

21

22

— If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor. If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice. A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

23

— If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent holder's application filing date or the date of conception of the claimed invention.

24

25

26

Where the date of conception for a claimed invention or prior invention is in dispute, you must determine the dates of conception for that claimed invention or prior invention. Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

27

Source:

28

Adapted from 11-CV-01846 Final Instruction No. 31 (Dkt. No. 1903 at 44); *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.

1

2    3d 1374, 1381 (Fed. Cir. 2012); *In re Lister*, 583 F.3d 1307, 1313 (Fed. Cir. 2009); *In re Bayer*,
     568 F.2d 1357, 1360-62 (C.C.P.A. 1978).

3    **Samsung's Objections:**

4

5    Samsung objects to Apple's proposed departure from the 11-cv-1846 instructions, namely
     Apple's proposed changes to the first and second bullets.  In the first, Apple proposes the addition
     of "actually" to "publicly used" as well as the requirement that the use be "in the exact manner

6    claimed."  In the second, Apple attempts to impose what appears to be a higher standard than is
     suggested by relevant authority.  No changes in the law or other changes in circumstances justify

7    these modifications.  At the *Daubert* hearing, the Court informed the parties that there was a
     "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change

8    warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would
     adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now,

9    I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can
     point to either a change in the law or something else that justifies a change, but there's going to be

10   a heavy presumption that what was previously given will be given this time.").  Apple's proposed
     change is not based on a change in law and there is no other compelling reason to overturn the

11   heavy presumption in favor of using instructions from the first trial.  In addition, these portions of
     the instruction mirror Northern District of California Model Patent Jury Instruction 4.3a1, and no

12   basis exists for differing from the model.

13   Apple's first bullet is incorrect for several additional reasons.  Apple's interjection of "actually"
     does nothing to change the substance of the instruction and serves only to bias the instruction in

14   favor of validity.  Apple's inclusion of "used . . . in the exact manner claimed" is legally
     incorrect.  The question is whether the claimed invention is used, not whether it is used in any

15   particular manner. *See* 35 U.S.C. § 102(a) ("A person shall be entitled to a patent unless . . . the
     invention was known or used by others in this country . . .before the invention thereof by the

16   applicant for patent.")  Apple's instruction regarding *manner* of use would be accurate only for
     method claims, but no method claims are asserted in this action.  *Hewlett-Packard Co. v. Bausch*

17   *& Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("apparatus claims cover what a device is,
     not what a device does").  Per 35 U.S.C. 102(a), *any* use by another of a claimed invention (*i.e.*,

18   an apparatus) in the United States is invalidating.  This instruction appears to be part of Apple's
     broader strategy of treating its computer readable medium claims of the '414 and '959 patents as

19   apparatus claims for infringement and damages, but as method claims for invalidity.
     Apple's changes to the second bullet similarly appear to be an attempt to suggest a higher

20   standard for accessibility than is supported by relevant authority.  Certainly, Apple points to no
     recent change in law that justifies departing from the instructions used in the first trial, where

21   printed publications were also at issue.

22   35 U.S.C. § 102(a) does not state that "both [§ 102(a) and (b)] require actual use by someone at
     some point."  Samsung also notes that *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d

23   1294, 1307 (Fed. Cir. 2002) actually stated that "public use" and "use" – two different statutory
     provisions – both require use:  "[a]lthough 'public use' for purposes of § 102(b) is defined

24   differently from 'use' for purposes of § 102(a), both require actual use by someone at some
     point." (*Id.*)  The requirements of 35 U.S.C. § 102(a) or (b) can also be met in other ways –

25   including if the claimed article was "known" or "on sale," without regard to whether there was an
     invalidating "use."

26

27

28

1
2
3

**PROPOSED FINAL JURY INSTRUCTION NO. 32 (Samsung)**
**ANTICIPATION**

4
5
6
7

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device, or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

8
9
10

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

11

Here is a list of the ways that either party can show that a patent claim was not new:

12
13

– If the claimed invention was already publicly known or publicly used by others in the United States before the date of conception of the claimed invention;

14
15

– If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

16
17
18

– If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

19
20
21
22

– If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice.  A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

23
24
25

– If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent holder's application filing date or the date of conception of the claimed invention.

26
27
28

Since certain of them are in dispute, you must determine dates of conception for the claimed inventions and prior inventions.  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

**Source:**

1

2 Case No. 11-CV-01846 Final Instruction No. 31 (Dkt. No. 1903 at 44).

3

4 **Apple's Objections:**

5 Unlike Samsung's proposed instruction, Apple's proposed instruction on anticipation is proper.

6 ***First***, Apple's instruction properly instructs the jury fully on the law of anticipation. Anticipation
7 of a computer readable medium claims requires evidence that someone *actually knew of or used* a
 medium that actually performs the claimed functionality. *See* 35 U.S.C. § 102(a) ("both [§ 102(a)
8 and (b)] require actual use by someone at some point."). Mere evidence that a device is capable
 of being used is not enough for anticipation. But, as Apple explained—and this Court has already
9 ruled—it is not sufficient to show what *could* have been done, or *could* have been known. *See*
10 *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed Cir. 1991). As this
 Court correctly held, a "post-hoc, reconstructed interpretation of how a WAIS system might have
11 been constructed does not constitute prior art for purposes of anticipation." (Dkt. No. 230 at 6.)
 Rather, Samsung must show that the invention was, in fact, *actually* known or used.

12
 As discussed in Apple's objection to Samsung's proposed Final Jury Instruction No. 32A in
13 which Samsung relies on a misstatement of the law of anticipation, Samsung will likely suggest
 to the jury, contrary to applicable law, that anticipation of a computer readable medium claim
14 only requires capability of practicing the claim. Absent a jury instruction that clearly instructs the
 jury that anticipation requires the alleged prior art device to have been *actually publicly used* by
15 others in the manner covered by the claim, , as proposed by Apple, there is a serious risk that the
16 jury will be misled into legal error causing prejudice to Apple.

17 ***Second***, Apple's proposed instruction instructs the jury fully on what constitutes a "printed
 publication." Apple's Motion *in Limine* No. 5 seeks to exclude Purported Prior Art Documents
18 That do Not Qualify as Prior Art. If the Court denies Apple's Motion *in Limine* No. 5, Apple
 believes that Samsung will rely heavily in its invalidity case on printed publications that are not
19 prior art. To qualify as a printed publication, a document must be "sufficiently accessible to the
 public interested in the art" before the critical date. *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir.
20 1989). Absent a clear instruction, as proposed by Apple, that explains to the jury that a printed
21 publication must be *sufficiently accessible* to qualify as prior art, and that instructs the jury on
 what this means, there is a serious risk that the jury will apply a legally incorrect standard,
22 causing undue prejudice to Apple.

23

24

25

26

27

28

1

2

3

### PROPOSED FINAL JURY INSTRUCTION NO. 32A (Samsung)
### ANTICIPATION OF THE '959 AND '414 PATENTS

4

5

6

7

In this case, Apple asserts that Samsung infringes claim 25 of the '959 patent and claim 20 of the '414 patent, which are known as "computer readable medium" claims.  "Computer readable medium" claims cover capability.  All of the requirements of a computer readable medium claim exist in a prior art medium if the prior art medium contained instructions capable of performing the listed steps.  The medium did not have to actually perform those steps in order to anticipate the computer readable medium claim.

8

**Source:**

9

10

11

12

13

14

15

16

*Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (rejecting contention that end product needed to be modified by the user to result in an infringing configuration, where the expert showed that the software was "capable of performing the claimed functionality" and did not make any modifications to the computer source code); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("In this case, Fijian's non-method claims describe capabilities without requiring that any software components be 'active' or 'enabled.' . . .The storage medium claims similarly cover capability. Claim 65 of the '194 patent recites a 'computer-readable storage medium storing program code for causing a server that serves as a gateway to a client to perform the steps of: receiving ...; comparing ...; and preventing execution....' This language does not require that the program code be 'active,' only that it be written 'for causing' a server ('194 patent claim 65) or a computer ('780 patent claim 18) to perform certain steps."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:11-cv-01846, Dkt. 1156, at 11-12) (where a claim is directed to a "computer-readable storage device storing instructions . . . 'infringement occurs when a device that has the capability of performing the [recited] steps . . . is manufactured and sold.'").

17

18

### Apple's Objections:

19

Apple objects to this special instruction for five reasons.

20

21

22

23

24

25

***First***, it misstates the law of anticipation for a computer readable medium claim.  Contrary to Samsung's proposed instruction, anticipation of a computer readable medium claims requires evidence that someone *actually knew of or used* a medium that actually performs the claimed functionality. *See* 35 U.S.C. § 102(a); *see also Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) ("both [§ 102(a) and (b)] require actual use by someone at some point.").  Mere evidence that a device is capable of being used is not enough for anticipation. But, as Apple explained—and this Court has already ruled—it is not sufficient to show what *could* have been done, or *could* have been known.  *See Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed Cir. 1991).  As this Court correctly held, a "post-hoc, reconstructed interpretation of how a WAIS system might have been constructed does not constitute prior art for purposes of anticipation." (Dkt. No. 230 at 6.)  Rather, anticipation requires a finding based on evidence that the invention was, in fact, *actually* known or used.

26

27

28

***Second***, none of the cases that Samsung cites in its proposed jury instruction addresses the proper standard for anticipation.  Instead, Samsung cites two decisions addressing when software can *infringe* a claim.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) and *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255 (Fed. Cir. 2013).  These infringement cases do not address—much less alter—the standard for anticipation or allow anticipation based on software that is merely capable of anticipatory functionality.  The infringement and validity

1

2   provisions address different uses.  For anticipation, use must be accessible to the public, but not so for infringement.  *Minnesota Min.*, 303 F.3d at 1306.  Nor do these infringement cases overrule

3   the clear holdings of the Federal Circuit requiring *actual* knowledge or use to meet the "knowledge or use" prongs of Section 102.  *See, e.g., id.* at 1307.  Thus, Samsung's proposed

4   interpretation is erroneous as a matter of law.

5   ***Third***, Samsung's instruction improperly suggests that a disk that contains only source code could be capable of performing instructions in a computer readable medium claim.  Source code is not

6   capable of performing steps as written.

7   ***Fourth***, this instruction suggests that "existing in the prior art" is sufficient when it is not.  No subsection of Section 102 or 103 supports this "existing in the prior art" phraseology.  Samsung's

8   instruction would invite the jury to overlook the clear requirement to meet one of the specific subsection of 102 and/or 103 to establish that a publication or device qualifies as prior art.

9

10  ***Fifth***, Apple objects to this instruction because it mixes infringement and invalidity language, which is potentially confusing to the jury given that this instruction purported to relate to invalidity.

11

12  **Samsung's Statement in Support:**

13  Following the trial in the 11-cv-1846 case, the Federal Circuit decided an important case concerning computer readable medium claims.  In *Versata Software, Inc. v. SAP America, Inc.*,

14  717 F.3d 1255,  (Fed. Cir. 2013), the Federal Circuit determined that a computer readable medium claim covers any software with instructions capable of carrying out the recited steps if

15  those instructions are executed – even if the instructions are part of complex software that requires significant post-sale configuration before performing the steps.  In *Versata*, the expert

16  created a "demonstrative data setup" and "used the [software] interface to set up four pricing elements: a pricing calculation function; a pricing procedure; a condition table; and an access

17  sequence."  (*Id.* at 1261.)  The expert testified that this demonstrative data setup "did not require any modification to [the software's] source code" and that the "[software] included the code to

18  accomplish his demonstration."  (*Id.* at 1261-62.)  The expert therefore "confirmed his theories that the accused software was capable of performing the claimed functionality."  (*Id.* at 1262.)  In

19  light of the Federal Circuit's guidance, the jury should be instructed that computer readable medium claims are satisfied when software includes instructions that, if executed, perform the

20  steps recited in the claim – even when the software must be configured before the instructions in that software can perform the recited steps.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d

21  1197, 1204-05 (Fed. Cir. 2010) ("storage medium claims . . . cover capability.").

22

23  35 U.S.C. § 102(a) does not state that "both [§ 102(a) and (b)] require actual use by someone at some point."  Samsung also notes that *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d

24  1294, 1307 (Fed. Cir. 2002) actually stated that "public use" and "use" – two different statutory provisions – both require use:  "[a]lthough 'public use' for purposes of § 102(b) is defined

25  differently from 'use' for purposes of § 102(a), both require actual use by someone at some point."  (*Id.*)  The requirements of 35 U.S.C. § 102(a) or (b) can also be met in other ways –

26  including if the claimed article was "known" or "on sale," without regard to whether there was an invalidating "use."

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 33 (Apple)**
**PATENTS—STATUTORY BARS**

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways either side can show that the patent application was not timely filed:

> – If the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application. A reference is a "printed publication" if it is sufficiently accessible to those interested in locating relevant materials in the field without knowing the author, title, or location of a particular document, even if it is difficult to find;

> – If the claimed invention was already being openly used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

> – If a device or method using the claimed invention in the specific manner claimed was sold or offered for sale in the United States, and that claimed invention was ready for patenting, more than one year before the effective filing date of the patent application;

> – If the patent holder had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field looking at the reference to make and use the claimed invention.

Source:

Adapted from 11-CV-01846 Final Instruction No. 32 (Dkt. No. 1903 at 45); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002); *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1381 (Fed. Cir. 2012); *In re Lister*, 583 F.3d 1307, 1313 (Fed. Cir. 2009); *In re Bayer*, 568 F.2d 1357, 1360-62 (C.C.P.A. 1978).

**Samsung's Objections:**

Samsung objects to Apple's proposed departure from the 11-cv-1846 instructions, namely Apple's proposed changes to the first and third bullets. In the first, Apple attempts to impose what appears to be a higher standard than is suggested by relevant authority. In the third, Apple proposes the requirement that a use be "in the specific manner claimed." No changes in the law or other changes in circumstances justify the modification. At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the

1

2   1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23,

3   2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that

4   justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time."). Apple's proposed change is not based on a change in law and there is

5   no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial. In addition, these portions of the instruction mirror Northern District of California

6   Model Patent Jury Instruction 4.3a2, and no basis exists for differing from the model.

7   Apple's third bullet point regarding use is incorrect for an additional reason.  Apple's inclusion of "used . . . in the specific manner claimed" is legally incorrect.  The question is whether the

8   claimed invention is used, not whether it is used in any particular manner.  *See* 35 U.S.C. § 102(b)

9   ("A person shall be entitled to a patent unless . . . the invention was . . .in public use or on sale in this country, more than one year prior to the date of the application for patent in the United

10  States.")  Apple's instruction regarding manner of use would be accurate only for method claims, but no method claims are asserted in this action.  *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,

11  909 F.2d 1464, 1469 (Fed. Cir. 1990) ("apparatus claims cover what a device is, not what a device does").  Per 35 U.S.C. 102(b), *any* public use of a claimed invention more than one year

12  before filing would be invalidating.  This instruction appears to be part of Apple's broader strategy of treating its computer readable medium claims of the '414 and '959 patents as

13  apparatus claims for infringement and damages, but as method claims for invalidity.  Apple's changes to the first bullet similarly appear to be an attempt to suggest a higher standard for

14  accessibility than is supported by relevant authority, and no intervening change in law justifies a departure from the earlier litigation.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 33 (Samsung)**
**PATENTS—STATUTORY BARS**

3

4
5
6

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways either side can show that the patent application was not timely filed:

7
8
9

– If the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

10
11
12

– If the claimed invention was already being openly used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

13
14

– If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, more than one year before the effective filing date of the patent application;

15
16

– If the patent holder had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.

17
18
19
20
21

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field looking at the reference to make and use the claimed invention.

22

**Source:**

23

Case No. 11-CV-01846 Final Instruction No. 32 (Dkt. No. 1903 at 45).

24

25

**Apple's Objections:**

26
27
28

Apple's proposed instruction on this issue is proper because it instructs the jury fully on what constitutes a "printed publication." Apple's Motion *in Limine* No. 5 seeks to exclude Purported Prior Art Documents that do Not Qualify as Prior Art. If the Court denies Apple's Motion *in Limine* No. 5, Apple believes that Samsung will rely heavily in its invalidity case on printed publications that are not prior art. To qualify as a prior art printed publication, a document must

1

2  be "sufficiently accessible to the public interested in the art" before the critical date.  *In re*

3  *Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989).  Absent a clear instruction, as proposed by Apple, that explains to the jury that a printed publication must be *sufficiently accessible* to qualify as

4  prior art, and that instructs the jury on what this means, there is a serious risk that the jury will be misled about what constitutes prior art in this case, causing undue prejudice to Apple.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 35 (Apple)
## PATENT EXHAUSTION

I will now instruct you on how to decide Apple's defense of patent exhaustion.  Apple contends that Samsung is barred from enforcing the '087 and '596 patents against Apple's accused iPhone and iPad products because they incorporate baseband chips that Intel and Qualcomm sold to Apple with authorization from Samsung.

To prevail on the defense of patent exhaustion, Apple must prove that the following is more likely true than not:

> **First**, that Intel and/or Qualcomm was authorized to sell the baseband chips under the terms of the license agreement between Samsung and Intel and/or a covenant not to sue between Samsung and Qualcomm;

> **Second**, that the sales were made in the United States.  The location of the sale depends on many factors, and you may find that the sale occurred in several places.  A sale occurs wherever the "essential activities" of the sale take place.  The essential activities include, for example, negotiating the contract and performing obligations under the contract; and

> **Third**, that, if the accused products infringe, it is because the baseband chips substantially embody the '087 and/or '596 patents.  The baseband chips embody the relevant patent if they include all the inventive aspects of the patented device.

Apple must prove all three of these elements to prevail on this defense of patent exhaustion.  If Apple does not prove any one of these elements, you must reject Apple's affirmative defense and find for Samsung on this issue.  If you find that Apple has proven all three elements, you must find for Apple on this issue.

Source:

Adapted from 11-CV-01846 Final Instruction No. 34 (Dkt. No. 1903 at 48).

**<u>Samsung's Objections</u>:**

Apple's proposed instruction misstates the law regarding the initial US sale requirement in connection with the second element of exhaustion.  The Federal Circuit has never held that contracting alone, without more, constitutes a sale within the United States.  The cases relied on by Apple for support in the previous case held that contracting **and** performance may determine the location of a sale.  *See, e.g.*, *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) ("*North American Philips* . . . noted that in some cases the criterion for determining the location of a 'sale' under section 271(a) is not necessarily where legal title passes; the 'more familiar places of contracting and performance' may take precedence over the passage of legal title.").  In addition, in those cases where the Federal Circuit has found a sale within the United States, it was undisputed that delivery was made to the United States.  *See, e.g.*, *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("[I]t is undisputed that GlowProducts sold the products directly to customers in the United States.").  The Federal Circuit more recently elaborated on these prior holdings and held that the

1

2   location of negotiation and contracting should ***not*** determine the location of the sale.  *Transocean*

3   *Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1310 (Fed.
Cir. 2010) ("Maersk USA's first argument, that the location of negotiation and contracting should

4   control is contrary to our precedent in *Litecubes*.").  At least one district court has found that the
holding of *Transocean* precludes finding that a sale occurred within the United States if the

5   product is both shipped from and delivered to locations outside the United States.  *Lake Cherokee
Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, No. 2:10-cv-216-JRG, 2013 WL

6   4054915, at *3 (E.D. Tex. Aug. 6, 2013) ("The question stemming from Lake Cherokee's position
is whether a contract between two U.S. companies, negotiated and executed within the United

7   States, for the sale of a patented invention with delivery and performance outside of the United

8   States, constitutes a sale under § 271(a). Despite the factual differences, the Federal Circuit's
analysis in *Transocean* compels this Court to answer that question in the negative.").

9

10  Samsung's proposed instruction correctly states the law on this issue by instructing the jury that
they must consider "where the products were shipped from and where the products were shipped

11  to."  The Federal Circuit has previously held that this language is proper in a jury instruction
regarding sales within the United States.  *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d

12  1360 (Fed. Cir. 2010), *aff'd on other grounds*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.
Ct. 2060 (2011).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 35 (Samsung)
## PATENT EXHAUSTION

3

4

I will now instruct you on how to decide Apple's defense of patent exhaustion. Apple contends that Samsung is barred from enforcing the '596 and '087 patents against Apple's accused iPhone and iPad products because they incorporate baseband chips that Apple contends Intel and Qualcomm sold to Apple with authorization from Samsung.

5

6

To prevail on the defense of patent exhaustion, Apple must prove that the following is more likely true than not:

7

8

**First**, that Intel and/or Qualcomm was authorized to sell the baseband chips under the terms of the license agreement between Samsung and Intel and/or a covenant not to sue between Samsung and Qualcomm;

9

10

**Second**, that the authorized sales were made in the United States. The location of the sale depends on many factors, and you may find that the sale occurred in several places.  In evaluating whether the sales took place in the United States, you must consider where the products were shipped from and where the products were shipped to.  A contract negotiated and executed within the United States, for the sale of a patented invention with delivery and performance outside of the United States, is not a sale within the United States; and

11

12

13

14

**Third**, for each patent, that, if the accused products infringe, it is because the baseband chips substantially embody the '596 and/or '087 patent. The baseband chips embody the relevant patent if they include all the inventive aspects of the patented device.

15

16

Apple must prove all three of these elements to prevail on this defense of patent exhaustion for each accused product. If Apple does not prove any one of these elements, you must reject Apple's affirmative defense and find for Samsung on this issue. If you find that Apple has proven all three elements, you must find for Apple on this issue.

17

18

19

**Source:**

20

Adapted from Case No. 11-CV-01846 Final Instruction No. 34 (Dkt. No. 1903 at 48); *Quanta Computer, Inc. v. LG Elecs, Inc.*, 553 U.S. 617 (2008); *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373 (Fed. Cir. 2012); *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360 (Fed. Cir. 2010), *aff'd on other grounds*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366 (Fed. Cir. 2010); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp*, 394 F.3d 1368, 1376 (Fed. Cir. 2005); *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, No. 2:10-cv-216-JRG, 2013 WL 4054915, at *3 (E.D. Tex. Aug. 6, 2013); *MedImmune, LLC v. BioPharma, Inc.*, No. C 08-9550 JF HRL, 2011 WL 61191 at *17 (N.D. Cal. 2011); *ION, Inc. v. Sercel, Inc.*, No. 5:06-cv-236, 2010 WL 3768110, at *3-*4 (E.D. Tex. Sept. 16, 2010), *aff'd without opinion*, 464 Fed. Appx. 901 (Fed. Cir. 2012); *LaserDynamics, Inc. v. Quanta Storage America, Inc.*, No. 2:06-CV-348-TJW-CE, 2009 U.S. Dist. LEXIS 115848 at *3 (E.D. Tex. 2009); *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 801 (S.D. Tex. 2009); *Wing Shing Prods. Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 403 (S.D.N.Y. 2007); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974, 2007 WL 4349135 at *51 (N.D.N.Y. Jan. 31, 2007); *Minebea Co. v. Papst*, 444 F. Supp. 2d 68 (D.D.C. 2006); *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 222 (D. Del 2001); *Quality Tubing, Inc. v. Precision Tube Holdings Corp.*, 75 F. Supp. 2d 613, 621 (S.D. Tex. 1999); *Gilson v. Republic of*

21

22

23

24

25

26

27

28

1

2   *Ireland*, 787 F.2d 655, 658 (D.C. Cir. 1986); *PPG Industries, Inc. v. Guardian Industries Corp.*, 597 F.2d 1090, 1093 (6th Cir. 1979); *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d

3   1108, 1114 (Del. 1985).

4

5   **Apple's Objections:**

6   Samsung's proposed instruction misstates the law and applies a standard the Court rejected in the 1846 case. Samsung cannot point to any change in the law since the 1846 case that would justify

7   revising the instruction, and has ignored the Court's directive to use instructions from that case absent a "compelling reason" to revise them. (Dkt. 1158 at 2.) Indeed, developments since the

8   1846 case support removing the US sale requirement altogether for worldwide licenses such as the two at issue here, not limiting the types of evidence that can support a US sale.[1]

9   Samsung's proposed instruction states that, in determining whether a sale occurred in the United

10  States, the jury must consider "where the products were shipped from and where the products were shipped to. A contract negotiated and executed within the United states, for the sale of a

11  patented invention with delivery and performance outside of the United States, is not a sale within the United States." This is very similar to Samsung's proposed instruction in the 1846 case,

12  rejected by this Court, which stated that "[i]n evaluating whether the sales took place in the United States, you must consider whether the baseband processor chips were actually delivered to

13  Apple or its contractors in the United States." Revised (Disputed) Joint Proposed Jury Instructions For After The Close Of Evidence, Case No. 11-cv-1846, (Dkt. No. 1694 at 39). As

14  in that case, Samsung's proposed instruction is an incomplete and inaccurate statement of the law, since it describes only one factor relevant to determining the location of the sale. The Federal

15  Circuit has made clear that a sale is made at all the locations where the sale's "essential activities," including negotiation and performance of the contract for sale or order and payment

16  for the goods, take place. *See, e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376-77 (2005) (determining the location of a sale by considering where

17  its "essential activities," such as ordering, packaging, shipping and payment, took place); *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994)

18  (stating that a sale occurs not only where legal title passes, but also where contracting and performance occur); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed.

19  Cir. 2008) (determining the location of a sale by considering where the customers were located when they contracted for the accused products and where the products were delivered). Apple's

20  corresponding instruction is an accurate statement of the law of patent exhaustion and makes minimal revisions to the instruction given by the Court in the 1846 case to reflect the patents at

21  issue and that both Intel and Qualcomm have licenses from Samsung relevant to this case.

22

23

24   ――――――――――――――
        [1] *See Multimedia Patent Trust v. Apple, Inc.*, 2012 WL 6863471 (S.D.Cal. Nov. 9, 2012).
     In *Multimedia Patent Trust*, the court held that a US sale was not required to establish patent

25  exhaustion under a worldwide license. The court distinguished *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373 (Fed. Cir. 2012) and the *Jazz Photo* line of cases relied on by Samsung

26  here because "those cases only involved foreign sales made directly by the patentee and did not involve sales made pursuant to a unconditional worldwide license." *Id.* at *5. The court instead

27  determined that "the doctrine of patent exhaustion applied where the patentee gave the licensee an unconditional grant of a license 'to sell ... and/or offer for sale' the accused products even though

28  the authorized sales were made in a foreign jurisdiction." *Id.*

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 37 (Apple)**
**PATENT DAMAGES — LOST PROFITS — GENERALLY**

3

4

In this case, Apple seeks to recover lost profits for some of Samsung's sales of allegedly infringing products, and a reasonable royalty on the rest of Samsung's allegedly infringing sales. Samsung does not seek lost profits for infringement of its patents.

5

6

To recover lost profits for infringing sales, Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America made of the infringing products. Apple must show the share of Samsung's sales that it would have made if the infringing products had not been on the market.

7

8

9

10

Source:

11

12

13

Adapted from 11-CV-01846 Final Instruction No. 36 (Dkt. No. 1903 at 50); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013), *cert. denied*, 2014 U.S. LEXIS 715 (Jan. 21, 2014); *Grain Processing Corp. v. AmericanMaize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *Nuance v. ABBYY*, No. 3:08-cv-02912-JSW, Dkt. No. 895 at 26 (N.D. Cal. Aug. 20, 2013) (White, J.); *id.*, Dkt. No. 921 at 2016.

14

**Samsung's Objections:**

15

16

17

18

19

20

21

22

23

24

25

26

Apple proposes to entirely delete the third paragraph of the corresponding instruction the Court gave in 11-cv-01846, but no changes in the law or other changes in circumstances justify the modification. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time."). Indeed, Apple tried to delete the same paragraph *three times* in 11-cv-01846 (Dkt. No. 1232 at 131; Dkt. No. 2768 at 5; Dkt. No. 2843 at 1214), and the Court rejected the attempt each time. Dkt. No. 1903 at 50; Dkt. 1998 at 3871; Dkt. No. 2784 at 32; Dkt. No. 2843 at 1218. Samsung incorporates by reference herein its arguments from page 12, line 22 to page 13, line 23 of the Joint Pretrial Statement and Proposed Order for New Damages Trial (Dkt. No. 2486) filed in 11-cv-01846, which addressed this exact issue. The deleted paragraph appears *verbatim* in Model Instruction 5.2 of the N.D. Cal. Model Patent Jury Instructions and is firmly grounded in both Supreme Court and Federal Circuit precedent. *See, e.g.*, *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (patentees "must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features"); *Ferguson Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) ("The district court therefore failed to distinguish the allocation of profits that would have been made 'but for' the infringement of the '376 patent with the profits that could fairly be allocated to" other features not covered by the patent). This instruction should not be modified as Apple urges.

27

28

By using the phrase "Samsung had never used the patented invention," Samsung's instruction accurately reflects current law. This contrasts with Apple's proposed language, which would improperly allow it to recover the share of Samsung's sales "if the infringing products had not been on the market." Although Apple's proposed language was adopted in 11-cv-01846, Apple

1

2   improperly sought to use a market share (or *Mor-Flo*) analysis in that case as a substitute for
    showing "but for" causation.  This is plainly wrong, and Apple's proposal would allow it to

3   induce the same error here.  Apple's proposed phraseology incorrectly implies that Apple does
    not have to satisfy the requirements of "but for" causation by proving what share of infringing

4   sales it would have captured absent Samsung's use of the patented invention.  The patentee,
    however, still bears the burden of proving that it would have made its *pro rata* share of the

5   infringing sales. *See BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993)

6   (reversing lost profits award based on market share where patentee "did not show with reasonable
    probability that [defendant's] customers would have purchased from [the patentee] in proportion

7   with [the patentee's] market share."); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l,*

8   *Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) ("a patentee must show that the infringing units do not
    have a disparately higher price than or possess characteristics significantly different from the

9   patented product."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir.
    1991) (affirming denial of lost profits based on market share where defendant had noninfringing

10  alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J.
    2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing

11  alternative," and thus the patentee's "reliance on proof of its own market share, without more, is
    insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost

12  profits.").

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 37 (Samsung)**
**PATENT DAMAGES — LOST PROFITS — GENERALLY**

3

4

5

In this case, Apple seeks to recover lost profits for some of Samsung's sales of allegedly infringing products, and a reasonable royalty on the rest of Samsung's allegedly infringing sales. Samsung does not seek lost profits for infringement of its patents.

6

7

8

9

To recover lost profits for infringing sales, Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America made of the infringing products. Apple must also show the share of Samsung's sales that it would have made if Samsung had never used the patented invention.

10

11

You must allocate the lost profits based upon the customer demand for the patented feature of the infringing products. That is, you must determine which profits derive from the patented invention that Samsung sells, and not from other features of the infringing products.

12

**Source:**

13

Adapted from Case No. 11-CV-01846 Final Instruction No. 36 (Dkt. No. 1903 at 50).

14

**Apple's Objections:**

15

16

Apple objects to the final paragraph of the instruction, which is drawn from the Northern District Model and was used by the Court in case number 1846. The paragraph reflects a legal error, as reflected by recent Federal Circuit authority issued after the model instructions were drafted.

17

18

19

20

21

22

23

24

25

26

27

28

The Federal Circuit has made clear that lost profits should not be allocated based upon the consumer demand for the patented features of the infringing products. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013) (holding that the lost profits analysis under Panduit does not "require any allocation of consumer demand among the various limitations recited in a patent claim"). The discussion in *Versata Software Inc.*, and in *DePuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*, 567 F.3d 1314, 1330-31 (Fed. Cir. 2009), make clear that there is no need to allocate "lost profits based on customer demand the patented feature," language which is drawn from *Ferguson Beauregard v. Mega Sys. LLC,* 350 F.3d 1327, 1346 (Fed. Cir. 2003). *DePuy Spine* specifically limited *Ferguson Beauregard* to a circumstance in which lost profits are challenged under the "entire market value rule," and *Versata* explicitly follows *DePuy Spine* on this issue. Thus, other courts in this district have recognized this error and omitted the disputed paragraph to comport with the Federal Circuit's recent guidance in *Versata. See Nuance v. ABBYY,* No. 3:08-cv-02912-JSW Dkt. No. 895 at 26 (N.D. Cal. Aug. 20, 2013) (White, J.); *id.*, Dkt. No. 921 at 2016. The Court should do the same here and reject Samsung's Proposed Instruction No. 22, which erroneously states that lost profits should be allocated according to the consumer demand for the patented features. Moreover, the paragraph is likely confuse the jury when it is compared to instructions 38 and 41, which properly instruct the jury that it may use a patentee's market share to identify the portion of the sales that a patentee would have made but for the infringement of the patent. Both those instructions arise from a long line of cases reaching back to *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

1

2   Separately, Apple objects to Samsung's changes to the last sentence of the second paragraph,
which adds the word "also" and replaces "if the infringing products had not been on the market"

3   with "if Samsung had never used the patented invention."  This change departs from the Northern

4   District Model instruction and the instruction that the Court has already given twice.  In fact,
Samsung has itself ***three times*** submitted the language to which it now objects.  It did so first on

5   July 16, 2012 in connection with the first trial.  (1846 Dkt. 1238 at 68) (Disputed Instruction

6   31/54).  It did so again on August 13, 2012 when the parties were finalizing the jury instructions
in the first trial in 1846.  (1846 Dkt. 1694 at 60) (Samsung's Proposed Jury Instruction No. 25).

7   It did so a third time on November 17, 2013.  (1846 Dkt. 2768 at 7) (Jury Instruction No. 22).
There is no justification to modify the Northern District model jury instruction to which Samsung

8   previously agreed.  This is an accurate statement of the law as stated in *Rite-Hite Corp. v. Kelley
Co.*, 56 F.3d 1538, 1545-46 (Fed. Cir. 1995) (en banc) and the long-standing lost profits

9   framework described in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir.
1978).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
## PROPOSED FINAL JURY INSTRUCTION NO. 38 (Apple)
## PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER
3

4      Apple is entitled to lost profits if it proves all of the following:

5          (1)      that there was demand for the patented products;

6          (2)      that there were no non-infringing substitutes for each of the infringing products,
                    or, if there were, the number of the sales of each product made by Samsung
7                   Electronics Company, Samsung Electronics America, and Samsung
                    Telecommunications America that Apple would have made despite the availability
8                   of other non-infringing substitutes. The time period relevant to determining
                    availability of a non-infringing substitute is the entire period during which
9                   Samsung Electronics Company, Samsung Electronics America, and Samsung
                    Telecommunications America infringed Apple's patents. An alternative may be
10                  considered available as a potential substitute even if it was not actually on sale
                    during the infringement period. Factors suggesting that the alternative was
11                  available include whether the material, experience, and know-how for the alleged
                    substitute were readily available. Factors suggesting that the alternative was not
12                  available include whether the material was of such high cost as to render the
                    alternative unavailable and whether Samsung had to design or invent around the
13                  patented technology (or other patented technology) to develop an alleged
                    substitute. (3) that Apple had the manufacturing and marketing capacity to make
14                  any infringing sales actually made by Samsung Electronics Company, Samsung
                    Electronics America, and Samsung Telecommunications America and for which
15                  Apple seeks an award of lost profits; and

16         (4)      the amount of profit that Apple would have made if Samsung Electronics
                    Company, Samsung Electronics America, and Samsung Telecommunications
17                  America had not infringed.

18     Source:

19     Adapted from Retrial 11-CV-01846 Final Instruction No. 23 (Dkt. No. 2783 at 29.); *see also* 11-
       CV-01846 Final Instruction No. 37 (Dkt. No. 1903 at 51).
20

21     **Samsung's Objections:**

22     Apple's proposed jury instruction includes the phrase "or other patented technology" as part of
       *Panduit* factor 2, adapted from an instruction given at the damages retrial in the 11-cv-1846 case.
23     But that instruction was given after a prior jury verdict where certain Samsung products were
       found to have infringed some, but not all, of Apple's asserted patents. *Apple, Inc. v. Samsung*
24     *Elecs., Co.,* 11-cv-1846, Dkt. No. 1930 (N.D. Cal. Aug. 24, 2012). Here, there has been no such
       finding and Apple has failed to identify a single case where the jury has been asked to decide if a
25     non-infringing substitute infringed a *non-asserted* patent. Additionally, inclusion of the vague
       phrase "other patented technology" is likely to confuse the jury, who will not know whether the
26     phrase applies to Apple's technology, Samsung's, or any technology. This phrase will also result
       in a trial within a trial regarding whether non-infringing alternatives in fact infringe other, non-
27     asserted patents. Samsung's proposed instruction, which follows the Court's corresponding
       instruction from the initial trial, is preferable.
28

1

2      Samsung's proposed instruction also accurately reflects the law by clarifying that if the jury
       determines that Samsung had a non-infringing alternative, lost profits are completely unavailable.
3      *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d 1341, 1352 (Fed. Cir. 1999) ("[M]arket
       sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost
4      profits."); *see also id.* at 1349 ("In the face of this noninfringing substitute, Grain Processing
5      could not prove lost profits."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458
       (Fed. Cir 1991) (alleged infringer's possession of its own non-infringing alternative bars lost
6      profits).  In contrast, Samsung's instruction reflects that if the jury were to determine that only
       third party manufacturers had non-infringing alternatives, Apple may be entitled to its *pro rata*
7      share of the market if it otherwise satisfies its burden.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
### PROPOSED FINAL JURY INSTRUCTION NO. 38 (Samsung)
### PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER

3

4    Apple is entitled to lost profits if it proves all of the following:

5        (1)    that there was demand for the patented products;

6        (2)    that there were no non-infringing substitutes for each of the infringing products,
     or, if there were no acceptable non-infringing substitutes available to Samsung, but
7    there were acceptable non-infringing substitutes offered by other manufacturers,
     the number of the sales of each product made by Samsung Electronics Company,
8    Samsung Electronics America, and Samsung Telecommunications America that
     Apple would have made despite the availability of the other non-infringing
9    substitutes.  The time period relevant to determining availability of a non-
     infringing substitute is the entire period during which Samsung  Electronics
10   Company, Samsung Electronics America, and Samsung Telecommunications
     America infringed Apple's patents.  An alternative may be considered available as
11   a potential substitute even if it was not actually on sale during the infringement
     period.  Factors suggesting that the alternative was available include whether the
12   material, experience, and know-how for the alleged substitute were readily
     available.  Factors suggesting that the alternative was not available include
13   whether the material was of such high cost as to render the alternative unavailable
     and whether Samsung had to design or invent around the patented technology to
14   develop an alleged substitute;

15       (3)    that Apple had the manufacturing and marketing capacity to make any infringing
     sales actually made by Samsung Electronics Company, Samsung Electronics
16   America, and Samsung Telecommunications America and for which Apple seeks
     an award of lost profits; and

17
         (4)    the amount of profit that Apple would have made if Samsung Electronics
18   Company, Samsung Electronics America, and Samsung Telecommunications
     America had not infringed.

19

20   **Source:**  Adapted from Case No. 11-CV-01846 Final Instruction No. 35 (Dkt. No. 1903 at 49);
     *see also Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d at 1458 (affirming denial of lost
21   profits based on market share where defendant had noninfringing alternative products); *Fuji
     Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368
22   (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's
     "reliance on proof of its own market share, without more, is insufficient as a matter of law to
23   support a reasonable probability of 'but for' causation of lost profits.").

24   **Apple's Objections:**

25   Apple has proposed an instruction that is substantively identical to what the Court used in the
     damages retrial in the 1846 case (*see* 1846 Dkt. No. 2783 at 33).  Apple's proposal is also
26   substantively identical to the instruction used in the first 1846 trial, with the exception of
     replicating the Court's addition of the following language in the retrial instruction:  the phrase
27   "(or other patented technology)" and the sentence beginning "The time period relevant to . . . ."
     Apple's instruction identifies all three Samsung entities, consistent with the instructions in the
28   first trial.  Samsung itself submitted the language of paragraph (2) with the sole exception of the

1

2

3

parenthetical "(or other patented technology)" in connection with the damages retrial in the 1846 case.

4

5

6

7

There is no legal or factual reason to depart from the former instructions and the N.D. Model instruction to include Samsung's modification of the meaning and effect of non-infringing alternatives and Samsung's new limitation to alleged non-infringing alternatives offered by other manufacturers. Samsung has never proposed it previously. To the contrary, Samsung previously offered identical language to what the Court has twice used (*see, e.g.* 1846 Dkt. No. 1694 at 65) and has offered no case law or other valid reason for the changes that it has now proposed.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**PROPOSED FINAL JURY INSTRUCTION NO. 39 (Apple)**
**PATENT DAMAGES—LOST PROFITS—AVAILABILITY OF**
**ACCEPTABLE NON-INFRINGING ALTERNATIVES**

4

5

6

A product can be considered an acceptable non-infringing alternative if you find that it (i) was available to Samsung during the relevant damages period; and (ii) provided all the advantages of the patented technology.

7

Apple has the initial burden of proving that no known alternatives were on the market during the relevant damages period. In determining whether an alternative product was on sale and available, you may consider whether the alternative product infringed any Apple patents.

8

9

10

11

An alternative may be considered available even if it was not actually on sale during the infringement period if Samsung proves that it could have incorporated the non-infringing features into its infringing products as a design-around. Samsung can meet its burden of proving the existence of a design-around with evidence that it had the necessary equipment, know-how, and experience to implement those non-infringing alternatives. Mere speculation or conclusory assertions will not suffice.

12

13

In addition, a product lacking the advantages of that patented is not a substitute "acceptable" to the customer who wants those advantages.

14

15

Source:

16

17

18

Retrial 11-CV-01846 (Dkt. No. 2657) (Order re Noninfringing Alternatives); *SynQor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1330 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164, 1179 (N.D. Cal. 2010).

19

20

**Samsung's Objections:**

21

22

23

24

25

26

27

28

Apple proposed exactly the same instruction for the 11-CV-01846 retrial and the Court rejected it as unnecessary and incorrect in numerous respects. *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846, Dkt. No. 2784 (N.D. Cal. Nov. 18, 2013) (declining to include jury instruction on availability of acceptable non-infringing alternatives); Dkt. No. 2739 at 416 ("with regard to Apple's proposed limiting instruction regarding use of products found not to infringe by the prior jury as evidence of the availability of acceptable non-infringing alternatives, that, that limiting instruction is denied. I think that it has several misstatements of law."). There is no reason for the Court to depart from its previous ruling. *First,* non-infringing alternatives are covered by the jury instruction on "Lost Profits—Factors to Consider." *Second*, the first paragraph of Apple's proposed instruction conflates the distinct concepts of "acceptability" and "availability." *Third*, Apple's focus on whether a non-infringing alternative was available to Samsung "during the relevant damages period" – as opposed to the infringement period – is incorrect and contradicts the Court's Order re Noninfringing Alternatives in 11-CV-01846 (Dkt. No. 2657). Indeed, in the very next paragraph, Apple refers to the "infringement period." *Fourth,* Apple's proposed

1

2   instruction is incoherent.  It asserts that, in considering whether an alternative product was "on the
market" or "on sale and available," the jury may consider whether "the alternative product
3   infringed any Apple patents."  But whether a product infringed any Apple patents has nothing to
do with the factual question of whether a product was "on the market" or "on sale."  *Fifth,*
4   Apple's proposed instruction is hopelessly ambiguous and confusing.  It provides that the jury
may consider whether the alternative product infringed "any Apple patents," but does not clarify
5   that it wants the jury to consider *unasserted* Apple patents.   It also refers to "incorporat[ing] the
non-infringing features" without any explanation of what the "incorporation" or "non-infringing
6   features" would be.  *Sixth,* Apple seeks to inject the same arguments that the Court already
rejected in 11-CV-01846 , including its reliance on *Rite-Hite Co. v. Kelley Corp.*, 56 F.3d 1538
7   (Fed. Cir. 1995).  This Court has already held that "[b]ecause an acceptable noninfringing
substitute need not be a product that was actually on the market at the time of infringement, the
8   fact that the Samsung products infringed some of Apple's patents does not preclude Samsung
from arguing that the noninfringing aspects of these products provide evidence that Samsung
9   *could* have offered a fully noninfringing products that would have been an acceptable
noninfringing substitute."  *Apple Inc. v. Samsung Elecs., Co.* , 11-cv-1846, Dkt. No. 2657 at 9:21-
10   16.  The Court has also previously held that a non-infringing alternative "need not have the
patented feature to be deemed 'acceptable.'" *Id.* at 4:26-5:1, 6:27-7:30 ("[I]f Apple fails to
11   convince the jury that consumers purchased its patented products because they desired the
patented features. . . , then the jury could reasonably infer that Samsung's non-infringing products
12   were acceptable substitutes even without further evidence that the non-infringing products
contained the patented features").  Apple's proposed instruction that "a product lacking the
13   advantages of that [sic] patented is not a substitute 'acceptable' to the customer who wants those
advantages" elides its burden to prove "particularized consumer demand for the patented
14   features." *Id.* at 5-6.  Apple's proposed instruction also improperly suggests that an alternative
must be "on sale and available," contrary to law. *Id.* at 5:23-25, 9:21-23.  *Seventh,* Apple has
15   chosen to selectively include only those parts of the Court's Order that it views as aiding its case,
but ignores all those parts that do not.  *Finally,* Apple has articulated no legitimate difference
16   between this case and the last one that would justify this instruction.  For example, Samsung's
expert, Dr. Martin Rinard, identified multiple actual noninfringing alternatives to the '959 patent.
17   (Rinard Rebuttal Report, ¶¶ 294-341.)  For the '647 patent, Samsung's expert Dr. Jeffay
identified numerous non-infringement positions to the asserted claims (Jeffay Rebuttal Rpt. ¶¶
18   258-469), and also identified other actual design-arounds to the '647 patent.  (*Id.* at ¶¶ 484-531.)
For the '414 patent, Samsung identified ten actual non-infringing alternatives during discovery.
19   (*See* Samsung's July 15, 2013 Supplemental Response to Interrogatory No. 29 at 160-62, 175-
77.)  In contrast, Samsung's ability to introduce design around evidence in the 11-cv-1846 trials
20   was severely constrained by the Court's order precluding it from introducing evidence of actual
design arounds (*see* Dkt. 898).  Nonetheless, the Court rejected Apple's proposed instruction
21   there and should do so again here.

22

23

24

25

26   **Apple's Position:**

27   The availability of alleged or actual non-infringing alternatives will be significant factual dispute
in resolving damages in the present case.  Further, it is undisputed that Samsung failed to provide
28   in discovery any actual design-arounds for the '959, '647 and '414 Patents.  This provides a
compelling factual difference between this case and 1846, in which Samsung asserted actual
design arounds to every patent, and warrants a change in the 1846 instructions.  As a result of its

1

2    failure to identify actual design-arounds for the specified patents in this case, Samsung will, by
     necessity, rely on *hypothetical* design arounds to rebut Apple's claim to lost profits. How such a

3    claim should be treated has been explicitly resolved by the Federal Circuit through a shift in the
     burden of proof. *See Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1353

4    (Fed. Cir. 1999). "When an alleged alternative is not on the market during the accounting period,
     a trial court may reasonably infer that it was not available as a noninfringing substitute at that

5    time. *Cf. Rite-Hite*, 56 F.3d at 1545. The accused infringer then has the burden to overcome this
     inference by showing that the substitute was available during the accounting period. *Cf. id.*"

6    *Grain Processing*, 185 F.3d at 1353; *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek,
     Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009). This burden shift is not included in the Northern

7    District Model instruction because it arises only in cases in which a design-around had not been
     implemented, as is the case here. The proposed instruction properly states Apple's initial burden

8    and properly states Samsung's resulting burden in language that mirrors the Federal Circuit's
     opinion and the Northern District model. *Id.* ("Mere speculation or conclusory assertions will not

9    suffice to overcome the inference."); *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek,
     Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009) ("However, because Medtronic did not actually have a

10   noninfringing substitute "on the market" during the relevant accounting period, it was Medtronic
     that bore the burden of overcoming the inference of unavailability"). "The trial court must

11   proceed with caution in assessing proof of the availability of substitutes not actually sold during
     the period of infringement. Acceptable substitutes that the infringer proves were available during

12   the accounting period can preclude or limit lost profits; substitutes only theoretically possible will
     not." *Grain Processing*, 185 F.3d. at 1353; *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d

13   1164, 1178-1179 (N.D. Cal. 2010). Samsung should not be permitted misleadingly to offer an
     instruction that suggests Apple bears a burden of persuasion when the Federal Circuit says that it

14   does not.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROPOSED FINAL JURY INSTRUCTION NO. 41 (Apple)
PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

One way Apple may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in Apple's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

Source:

Adapted from 11-CV-01846 Final Instruction No. 39 (Dkt. No. 1903 at 53).

**Samsung's Objections:**

Although Apple's proposed instruction was adopted in 11-cv-01846, Apple improperly sought to use a market share (or *Mor-Flo*) analysis in that case as a substitute for showing "but for" causation.  This is plainly wrong, and Apple's proposal – particularly when combined with its proposal for the last sentence of the second paragraph in the "PATENT DAMAGES — LOST PROFITS — GENERALLY" instruction – would allow it to induce the same error here.  Apple's proposed instruction would allow it to improperly imply that Apple does not need to satisfy any causation requirement to recover lost profits in proportion with its market share.  This is incorrect, and Samsung's proposed instruction is in accord with the AIPLA model jury instruction, which more accurately states the law as requiring Apple to prove that it would have captured its *pro rata* market share but for Samsung's use of the patented invention.  AIPLA Model Patent Jury Instr. No. 11.7 (2012); *see also BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (reversing lost profits award based on market share where patentee "did not show with reasonable probability that [defendant's] customers would have purchased from [the patentee] in proportion with [the patentee's] market share."); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) ("a patentee must show that the infringing units do not have a disparately higher price than or possess characteristics significantly different from the patented product."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

1

2          **PROPOSED FINAL JURY INSTRUCTION NO. 41 (Samsung)**
           **PATENT DAMAGES—LOST PROFITS—MARKET SHARE**
3

4    If you find that there were acceptable non-infringing substitute products offered by manufacturers
     other than Apple or Samsung in the market, then Apple may still be entitled to lost profits on a
5    portion of Samsung's infringing sales.  The burden is on Apple to prove that it is more likely than
     not that the patented product competed in the same market as Samsung's infringing product, and
6    that Apple would have captured its claimed share of that market but for Samsung's use of the
     patented invention.  It is not necessary for Apple to prove that Apple and Samsung were the only
7    two suppliers in the market for Apple to demonstrate entitlement to lost profits.  The burden is on
     Apple, however, to show that it is more likely than not that it would have sold that portion had
8    Samsung's product never used the patented invention.
9

10

11   **Source:**  AIPLA Model Patent Jury Instr. No. 11.7 (2012); *DePuy Spine, Inc. v. Medtronic
     Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Crystal Semiconductor Corp. v.
12   Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-1357 (Fed. Cir. 2001); *BIC Leisure Prods.,
     Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus.,
13   Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932
     F.2d at 1458 (affirming denial of lost profits based on market share where defendant had
14   noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d
     434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a
15   noninfringing alternative," and thus the patentee's "reliance on proof of its own market share,
     without more, is insufficient as a matter of law to support a reasonable probability of 'but for'
16   causation of lost profits.").
17

     **Apple's Objections:**
18

19   Since July 2012, Samsung has three times submitted an identical instruction to that submitted by
     Apple, which was previously used by the Court.  (1846 Dkt. Nos. 1238 at 70; 1693 at 29; 2513 at
20   88.)  The Court has given the instruction twice in circumstances raising the identical issues.
     (1846 Dkt. Nos. 1903 at 53; 2783 at 35.)  The instruction used by the Court and proposed by
21   Apple relies on the Northern District model, which is the source of other damages instructions.
     Samsung offers no compelling reason for change and no reason that the prior instruction is legally
22   wrong.  It instead proposes an instruction modified from the AIPLA model instructions, which
     improperly repeats language regarding Apple's alleged burdens from other instructions and that
23   improperly limits Apple to a recovery based on whether, when and how many manufacturers
     other than Apple and Samsung sell alternative products.  The Court (and Samsung) were right
24   with respect to the instruction already given and there is no compelling reason to depart.
25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 43 (Apple)**
**PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. The patentee might also seek a royalty that is not calculated as a percentage of the net sales for the whole product, such as a royalty to be paid per unit sold.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining a reasonable royalty, you may consider the following factors:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

1

2       (5)     The commercial relationship between the licensor and licensee, such as whether
they are competitors in the same territory in the same line of business, or whether
3            they are inventor and promoter.

4       (6)     The effect of selling the patented specialty in promoting sales of other products of
the licensee, the existing value of the invention to the licensor as a generator of
5            sales of his nonpatented items, and the extent of such derivative or convoyed sales.

6       (7)     The duration of the patent and the term of the license.

7       (8)     The established profitability of the product made under the patents, its commercial
success, and its current popularity.

8

9       (9)     The utility and advantages of the patented property over the old modes or devices,
if any, that had been used for working out similar results.

10      (10)    The nature of the patented invention, the character of the commercial embodiment
of it as owned and produced by the licensor, and the benefits to those who have
11           used the invention.

12      (11)    The extent to which the infringer has made use of the invention and any evidence
probative of the value of that use.

13

14      (12)    The portion of the profit or of the selling price that may be customary in the
particular business or in comparable business to allow for the use of the invention
or analogous inventions.

15

16      (13)    The portion of the realizable profits that should be credited to the invention as
distinguished from nonpatented elements, the manufacturing process, business
risks, or significant features or improvements added by the infringer.

17

18      (14)    The opinion and testimony of qualified experts.

19      (15)    The amount that a licensor (such as the patentee) and a licensee (such as the
infringer) would have agreed upon (at the time the infringement began) if both had
been reasonably and voluntarily trying to reach an agreement; that is, the amount
20           which a prudent licensee—who desired, as a business proposition, to obtain a
license to manufacture and sell a particular article embodying the patented
21           invention—would have been willing to pay as a royalty and yet be able to make a
reasonable profit and which amount would have been acceptable by a prudent
22           patentee who was willing to grant a license.

23   It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

24

25   Source:

26   Adapted from 11-CV-01846 Final Instruction No. 41 (Dkt. No. 1903 at 55-56).

27   **<u>Samsung's Objections:</u>**

28   Apple proposes a change to the instruction that the Court gave in 11-cv-01846 by adding the
following new sentence at the end of the third paragraph:  "The patentee might also seek a royalty

1

2   that is not calculated as a percentage of the net sales for the whole product, such as a royalty to be
    paid per unit sold."   Notably, Apple previously agreed to this instruction *without the new*

3   *sentence* for the purposes of damages retrial in 11-cv-01846.  *Apple, Inc. v. Samsung Elecs., Co.,*
    11-cv-1846, Dkt. No. 1903 at 55-56 (N.D. Cal. Aug. 21, 2012) (Final Instruction No. 41).   There

4   is no reason for the Court to modify the instruction now.   At the *Daubert* hearing, the Court

5   informed the parties that, absent a change in law or something else that justifies a change, the
    Court would adopt the jury instructions from the first trial.  *See* January 23, 2014 Hearing at 5:10-

6   14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial
    unless you can point to either a change in the law or something else that justifies a change, but

7   there's going to be a heavy presumption that what was previously given will be given this time.").

8   Apple's proposed addition also departs from the Model Patent Jury Instructions from the
    Northern District of California.  N.D. Cal. Model Patent Jury Instr. B.5.6.  Moreover, Apple's

9   proposed addition would cause jury confusion by using a financial phrase – "net sales" – nowhere
    mentioned or defined elsewhere in the instruction.  Apple's addition is intended only to benefit

10  itself and should be rejected.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 43 (Samsung)**
**PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining a reasonable royalty, you may consider the following factors:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 41 (Dkt. No. 1903 at 55).

**<u>Apple's Objections:</u>**

1

2   The sole difference between Apple and Samsung's instruction is the following sentence, which
3   appears at the end of the third full paragraph of Apple's instruction:  "The patentee might also
    seek a royalty that is not calculated as a percentage of the net sales for the whole product, such as
4   a royalty to be paid per unit sold."  All of the damages experts for Apple or Samsung will testify
5   to a royalty based on a per unit basis, not as a percent of the revenue for the accused products.  No
    proposed royalty by any expert varies bases on any revenue amount.  Given this circumstance and
6   the lack of any evidence of a revenue based royalty or a percentage based royalty, the Court
    should modify the Northern District model to conform to the evidence that will be presented.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**PROPOSED FINAL JURY INSTRUCTION NO. 44 (Apple)**
**PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

4

5

6

7

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents Samsung infringed. You may not award Apple damages for infringing a patent before Samsung had notice of Apple's claim of infringement of that patent. Samsung received notice of Apple's claim of infringement for the '647 patent on August 2010. Samsung had notice of Apple's claim of infringement for all the other asserted patents on February 8, 2012.

8

9

10

With respect to Samsung's '239, '449, '596, and '087 patents, damages that Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed. You may not award Samsung damages for infringing a patent before Apple had notice of Samsung's claim of infringement of that patent. Apple received notice of Samsung's claim of infringement for the '087 patent on September 13, 2010. Apple had notice of Samsung's claim of infringement for all the other asserted patents on April 18, 2012.

11

Source:

12

13

Adapted from 1846 Damages Retrial 11-CV-01846 Final Instruction No. 28 (Dkt. No. 2783 at 36) and 1846 Original 11-CV-01846 Final Instruction No. 42 (Dkt. No. 1903 at 29-30, 57).

14

**Samsung's Objections:**

15

16

17

18

19

20

21

22

23

24

25

Apple's proposed instruction is adapted from the damages retrial in the 11-cv-1846 case. Use of that instruction is inappropriate here because it was given only after the Court's ruling in 11-cv-1846 establishing certain notice dates as a matter of law. *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846, Dkt. No. 2271 (N.D. Cal. March 1, 2013). No such ruling exists in this case and actual notice under 35 U.S.C. § 287 must be proven by the parties at trial. Additionally, this instruction misstates the law because it implies that lost profits can be awarded even if the patentee does not provide actual notice of the products that purportedly infringe. Dkt. No. 2271 at 18:12-14 (emphasis added). As the Court recognized in its jury instructions in the first 11-cv-1846 trial, actual notice requires a determination of "the date each Samsung entity received actual written notice of the patents *and specific products* alleged to infringe." *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846, Dkt. No. 1903 at 57, 75 (N.D. Cal. Aug. 21, 2012) (emphasis added); *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d. 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."). Indeed, Apple agreed with this "product specific" language for the first trial. Dkt. No. 1232 at 155. Such language is also included in the corresponding N.D.Cal. Model Patent Instruction. *See* N.D.Cal. Model Instruction 5.8 Date of Commencement – Products ("[Y]ou must determine the date that [alleged infringer] received actual written notice of the [ ] patent and the specific product alleged to infringe;]"). Although there was a subsequent dispute in 11-cv-1846 about whether Samsung had waived a "product-specific" notice argument for the retrial, no such dispute exists here and the law is uncontested. The Court should thus adopt Samsung's proposed instruction, which hues to the Court's instruction from the first trial and the model instruction.

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 44 (Samsung)_
PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

3

4

5

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents it infringed.

6

7

You must determine the date that each Samsung entity received actual written notice of the patents and the specific products alleged to infringe.

8

9

10

It is undisputed that Apple informed Samsung Electronics Company of the '647 patent on August 4. 2010, and that Apple's lawsuit informed each Samsung entity of all of Apple's asserted patents on February 8, 2012.   It is up to you, based on the evidence, to decide when Apple informed each Samsung entity of each specific product alleged to infringe each of the asserted Apple patents.

11

Damages Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.

12

13

You must determine the date that Apple received actual written notice of the patents and the specific products alleged to infringe.

14

15

16

It is undisputed that Samsung informed Apple of the '087 patent on September 13, 2010, and that Samsung's lawsuit informed Apple of all of Samsung's asserted patents on April 18, 2012.  It is up to you, based on the evidence, to decide when Samsung informed Apple of each specific product alleged to infringe each of the asserted Samsung patents.

17

18

**Source:**

19

20

Adapted from Case No. 11-CV-01846 Final Instruction No. 42 (Dkt. No. 1903 at 57); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.,* 616 F.3d 1357, 1373 (Fed. Cir. 2010); *SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

21

22

**<u>Apple's Objections:</u>**

23

24

25

26

27

28

The present instruction concerns the notice requirement under 35 U.S.C. § 287.  There is no factual issue in dispute based on law already established by the Court's prior rulings, the parties' sworn statements and the pleadings in the case.  The Court has already ruled that the filing of a complaint gives a party notice of a claim of infringement for any patent included in the complaint and twice provided a jury instruction that states the same. (*See* 1846 Dkt. Nos. 2271 at 18:4-11; 1903 at 57:6-8.)  Samsung agrees in its proposed instruction that it received notice of Apple's claim of infringement for all five patents no later than February 8, 2012, when the complaint was filed in this action.  Samsung's effort to extend the date for notice based on an alleged need to identify each new product was already rejected by the Court before the 1846 damages retrial. (1846 Dkt. 2690 at 6-7).

1

2   Samsung's own proposed instruction admits that "It is undisputed that Apple informed Samsung

3   Electronics Company of the '647 patent on August 4. 2010."   This admission is based on the
    same August 4, 2010 presentation that was the basis for notice for the '381 patent in the 1846

4   case.  (*See* PX132 at 15 ("Apple's Patents Infringed by Android Applications Layer . . . U.S.
    5,946,647 – Data Detectors"); *cf.* PX52.14 from 1846 case).   The Court already found as a matter

5   of law that this August 4, 2010 presentation sufficed to give notice of Apple's '381 Patent under
    identical circumstances.  (1846 Dkt. No. 2271 at 18:12-19:14.)  Samsung offers no reason to

6   distinguish the Court's ruling in 1846 with respect to the next page of the identical document,
    which gives Samsung notice of its infringement of the '647 Patent.

7

8   Thus, there is no factual issue for the jury to decide and no need for the jury to receive anything
    other than a statement by the Court of the date on which damages for each patent can start.

9   Apple's instruction eases the burden on the Court and eases the burden on the jury.

10  Even if the Court's concludes that a factual issue exists, Samsung's instruction is wrong and
    inconsistent with the Court's conclusions on the same issue in the damages retrial.  (1846 Dkt.

11  No. 2690 at 6:14-7:16).  Nor is it consistent with Federal Circuit law on the issue: "If a patentee's
    initial notice is sufficiently specific to accuse one product of infringement, 'ensuing discovery of

12  other models and related products may bring those products within the scope of the notice.'" *K-
    TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012) (quoting *Funai,* 616 F.3d at

13  1373).  Samsung's instruction wrongly instructs the jury that notice for each new product is
    required even after a complaint is filed.  Thus, if any instruction should be given, it should mirror

14  Final Jury Instruction No. 42 from the 1846 case with the patent numbers and complaint dates
    from this action inserted, *i.e.*, "While you may identify an earlier date by which each Samsung

15  entity had notice of Apple's claims of infringement based on your evaluation of the evidence,
    Apple's lawsuit provided Samsung such notice for the '414, '959, '647, '721 and '172 patents no

16  later than February 8, 2012."  (1846 Dkt. No. 1903 at 57:6-10).

17

18

19

20

21

22

23

24

25

26

27

28

**INDUCEMENT, CONTRIBUTORY, AND WILLFULNESS JURY INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 45 (Apple)**
**PATENTS—INDUCING PATENT INFRINGEMENT**

Apple claims that Samsung Electronics Company actively induced its subsidiaries in the United States, Samsung Telecommunications America and Samsung Electronics America, to infringe Apple's patents.  Samsung claims that Apple actively induced third parties to infringe Samsung's '239 patent, claim 1.

In order for there to be inducement of infringement by either Samsung Electronics Company or Apple, someone else must directly infringe the asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, the alleged infringer must:

      1.      have intentionally taken action that actually induced direct infringement by another;

      2.      have been aware of the asserted patent; and

      3.      have known that the acts it was causing would be infringing.

The "knowledge" and "awareness" requirements for inducement can be satisfied by showing that a party was willfully blind.  If Samsung Electronics Company or Apple did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that Samsung Electronics Company or Apple was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that Samsung Electronics Company or Apple took a risk that was substantial and unjustified.

If you find that Samsung Electronics Company or Apple was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, Samsung Electronics Company or Apple cannot be liable for inducement.

Source:

Adapted from 11-CV-01846 Final Instruction No. 58 (Dkt. No. 1903 at 77).

**Samsung's Objections:**

Samsung objects to Apple's instruction regarding inducement because it fails to incorporate the Federal Circuit's *en banc* decision in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (*en banc*), *cert. granted*, 571 U.S. (Jan. 10, 2014).  In *Akamai*, the Federal Circuit recognized that for purposes of indirect infringement, the underlying act of infringement may be carried out by multiple actors.  The Federal Circuit held that a single entity does not need to infringe the asserted claim in order to find a party liable for inducement infringement.  *Id.* at 1306.  Paragraph 2 of Apple's proposed instruction still relies on language from the instructions in the 1846 case, which issued on August 21, 2012—10 days prior to the issuance of the Federal Circuit's *Akamai* decision.  This language only considers infringement by "someone else" or "direct infringement by anyone."  In light of *Akamai*, this language is overly

restrictive, and for this reason, the Court should adopt Samsung's proposed inducement instruction.

Additionally, Apple's proposed instruction fails to incorporate the Federal Circuit's decision in *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011).  In *Centillion*, the Federal Circuit recognized that another person may directly infringe an apparatus claim by putting the apparatus as a whole into service.  *Id.* at 1285.  That user does not need to have physical control over every element of the apparatus.  *Id.* at 1284-85.  The Federal Circuit actually anticipated this situation arising in the context of inducement.  *Id.* at 1286 (holding that Qwest's customers use the system at issue and then stating that "[b]ecause the issue has not been raised on appeal here, we make no comment on whether Qwest may have *induced* infringement by a customer").[2]  Paragraph 2 of Apple's proposed instruction does not include language regarding *Centillion*, but Samsung's proposed instruction does include this language in its Paragraph 2.  For this reason, the Court should adopt Samsung's proposed inducement instruction.

Further, Samsung objects to the first sentence of the third paragraph of Apple's proposed inducement instruction as it is unnecessary and potentially confusing.  While the remainder of the paragraph tracks Northern District of California Model Patent Jury Instruction 3.9, the first sentence of Apple's instruction is not in the model instruction, and there is no basis for differing from the model here. The remainder of the third paragraph of the instruction lays out the standard for what it means to be "willfully blind." *See, e.g., Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1369 (Fed. Cir. 2013). The first sentence is sufficiently vague as to invite the jury to decide what they think it means to be willfully blind and to apply a standard other than what is explained in the remainder of the paragraph.

---

[2] *Akamai* further confirms this understanding.  The Federal Circuit recognized that divided infringement with respect to inducement is likely only with respect to method claims because "[w]hen claims are directed to a product or apparatus, direct infringement is always present, because the entity that installs the final part and thereby completes the claimed invention is a direct infringer."  692 F.3d at 1305-06.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 45 (Samsung)
INDUCING PATENT INFRINGEMENT**

3

4

5

Apple claims that Samsung Electronics Company actively induced its subsidiaries, Samsung Telecommunications America and Samsung Electronics America, to infringe Apple's patents. Samsung claims that Apple has actively induced others to infringe claim 1 of the '239 patent.

6

7

8

9

In order for there to be inducement of infringement by either Samsung Electronics Company or Apple, another person or a combination of more than one person together must infringe the asserted patent; if there is no infringement, there can be no induced infringement. Another person may directly infringe an apparatus claim by putting the apparatus as a whole into service. This person does not need to physically control each element. In order to be liable for inducement of infringement, the alleged infringer must:

10

11

    1.      have intentionally taken action that actually induced infringement by another person or combination of persons;

12

    2.      have been aware of the asserted patent; and

13

    3.      have known that the acts it was causing would be infringing.

14

15

16

If Samsung Electronics Company or Apple did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth. It is not enough that Samsung Electronics Company or Apple was merely indifferent to the possibility that it might encourage infringement of a patent. Nor is it enough that Samsung Electronics Company or Apple took a risk that was substantial and unjustified.

17

18

19

If you find that Samsung Electronics Company or Apple was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, Samsung Electronics Company or Apple cannot be liable for inducement.

20

Apple argues that SEC has actively induced STA and SEA to infringe Apple's patents. Samsung argues that Apple has actively induced others to infringe Samsung's patents.

21

22

23

24

25

26

**Source:**
Adapted from Case No. 11-CV-01846 Final Instruction No. 58 (Dkt. No. 1903 at 47); 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.,* 131 S.Ct. 2060 (2011); *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (*en banc*) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005)); *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683 (Fed. Cir. 2008); *Commil USA, LLC v. Cisco Sys., Inc.,* 720 F.3d 1361, 1369 (Fed. Cir. 2013); *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 692 F.3d 1301, 1306 (Fed. Cir. 2012) (en banc), *cert. granted,* 571 U.S. (Jan. 10, 2014); *Centillion Data Sys., LLC v. Qwest Commc'n Int'l Inc.,* 631 F.3d 1279, 1283-86 (Fed. Cir. 2011); *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282 (Fed. Cir. 2005).

27

28

**Apple's Objections:**

1

2
There is no "compelling reason" to depart from the Court's prior instruction regarding
inducement.  Samsung's proposed instruction differs from the prior instruction in three significant
3
ways.

4
*First*, Samsung incorrectly deletes the Court's instruction regarding the willful blindness standard
5
articulated in *Global-Tech Appliances, Inc. et. al. v. SEB S.A.,* 131 S.Ct. 2060, 2067 (2011).  (*See*
Samsung's deletion of first sentence of the third paragraph that "[t]he 'knowledge' and
6
'awareness' requirements for inducement can be satisfied by showing that a party was willfully
blind.").
7

8
*Second*, Samsung has modified the Court's instruction regarding direct infringement by a third
party.  Samsung suggests that the new language is necessary in view of the decisions in *Akamai*
9
*Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2012) (en banc), *cert.*
*granted*, 571 U.S. (Jan. 10, 2014) and *Centillion Data Sys., LLC v. Qwest Commc'n Int'l Inc.*, 631
10
F.3d 1279, 1283-86 (Fed. Cir. 2011).  *Centillion*, however, was decided by the Federal Circuit
*before* the 1846 trial and the *en banc* decision in *Akamai* had been pending at the time.  Yet,
11
Samsung never objected to this Court's direct infringement language.  (*See* C.A. No. 11-01846-
LHK, Dkt. 1694 at 155 (Samsung's proposed final jury instruction no. 45.1).)  Apple's proposed
12
language on this issue is identical to that agreed-to by the parties in the first trial and adopted by
the Court.  There is nothing inconsistent with the Court's prior instruction and *Akamai* and
13
*Centillion*—it expressly allows for a finding of infringement based on the acts of "another."
Furthermore, Samsung has not identified any other person or entity other than Apple allegedly
14
involved in the infringement.  Accordingly, Samsung's changes are unnecessary.

15

16
*Third*, Samsung's instruction is incorrect and unsupported by the cases cited by Samsung.  While
Samsung seeks an instruction that "[a]nother person may directly infringe an apparatus claim by
17
putting the apparatus as a whole into service . . . [without the] need to physically control each
element," the cases cited by Samsung expressly state the opposite.  *See, e.g., Centillion Data Sys.,*
18
*LLC v. Qwest Commc'n Int'l Inc.*, 631 F.3d 1279, 1283-86 (Fed. Cir. 2011) ("We hold that to
'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*,
19
control the system as a whole and obtain benefit from it.").

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 46 (Apple)**
**CONTRIBUTORY PATENT INFRINGEMENT**

Apple also argues that each of Samsung Electronics Company Ltd., Samsung Telecommunications America and/or Samsung Electronics America has contributed to infringement  by another (either another Samsung entity or another company).  Samsung also argues that Apple has contributed to infringement by another.  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by one of the Samsung entities, another Samsung entity or another company must directly infringe the asserted claims of the '414, '647, '959, and '721 patents.  In order for there to be contributory infringement by Apple, someone other than Apple must directly infringe claim 1 of the '239 patent..  If there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '414, '647, '959, or '721 patents, then contributory infringement exists if:

1.     A Samsung entity supplied an important component of the infringing part of the product;

2.     The component is not a common component suitable for non-infringing use; and

3.     A Samsung entity supplied the component with the knowledge of the patent and knowledge that the component was especially made or adopted for use in an infringing manner.

If you find someone has directly infringed the'239 patent (claim 1), then contributory infringement exists if:

1.     Apple supplied an important component of the infringing part of the product;

2.     The component is not a common component suitable for non-infringing use; and

3.     Apple supplied the component with the knowledge of the patent and knowledge that the component was especially made or adopted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.


Source:

Adapted from N.D. Cal. Model Jury Instr. B.3.8.

**Samsung's Objections:**

Samsung objects to Apple's proposed instruction regarding infringement for the same reasons as discussed with respect to Apple's proposed instruction regarding inducement, and Samsung incorporates by reference those objections.  Apple's proposed contributory infringement section

1

2   fails to incorporate instructions regarding the Federal Circuit's *Akamai* and *Centillion* decisions.
    *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (*en banc*), *cert.*
3   *granted*, 571 U.S. (Jan. 10, 2014); *Centillion Data Sys., LLC v. Qwest Comm'ns Int'l, Inc.*, 631
    F.3d 1279 (Fed. Cir. 2011).   While *Akamai* was decided in the context of inducement, the Federal
4   Circuit's holding is applicable to other forms of indirect infringement, namely contributory
5   infringement.   Paragraphs 2, 3, and 4 of Apple's proposed instruction fail to reflect the Federal
    Circuit's holding in *Akamai*.  For example, they state "direct infringement by anyone" and
6   "someone has directly infringed."  In light of *Akamai*, this language is overly restrictive, and for
    this reason, the Court should adopt Samsung's proposed contributory infringement instruction.
7

8   Similarly, the Federal Circuit's clarification in *Centillion* on what constitutes the use of an
    apparatus is also applicable to contributory infringement.  Apple's proposed instruction lacks any
9   reference to this holding, but Samsung's proposed instructions incorporates this holding in its
    Paragraph 2.  For this reason, the Court should adopt Samsung's proposed contributory
10  infringement instruction.

11  Additionally, Apple's proposed instruction unnecessarily breaks down contributory infringement
    by Apple and contributory infringement by Samsung.  This is unnecessary and confusing to the
12  jury.  The jury may be misled into believing that a different standard applies to Apple than to
    Samsung.  For example, the jury may be misled into believing that Apple's final paragraph
13  regarding what constitutes a "common component suitable for non-infringing use" only applies to
    Samsung's claim of contributory infringement because it directly follows the Samsung section.
14  No reason exists to separate Apple's and Samsung's claims of contributory infringement and
15  doing so will only mislead and confuse the jury as well as add additional length to already
    voluminous instructions.  For this reason, the Court should adopt Samsung's proposed
16  contributory infringement instruction which efficiently combines both parties' contentions.

17

18

19

20

21

22

23

24

25

26

27

28

1

2
### PROPOSED FINAL JURY INSTRUCTION NO. 46 (Samsung)
### CONTRIBUTORY PATENT INFRINGEMENT

3

4   Samsung also contends that Apple has contributed to infringement by another.   Apple also
    contends that Samsung has contributed to infringement by another.   Contributory infringement
5   may arise when someone supplies something that is used to infringe one or more of the patent
    claims.

6

7   In order for there to be contributory infringement by either Apple, or Samsung, claim 1 of the
    '239 patent or an asserted claim of Apple's '647, '959, '414 or '721 patents must be infringed by
    a person or a combination of more than one person together; if the claim is not infringed, there
8   can be no contributory infringement.   Another person may directly infringe an apparatus claim by
    putting the apparatus as a whole into service.   This person does not need to physically control
9   each element.

10  If you find that claim 1 of the '239 patent or an asserted claim of Apple's '647, '959, '414 or '721
    patents is infringed, then contributory infringement exists if:

11

12          (1)     The accused infringer supplied an important component of the infringing part of
                    the apparatus;

13          (2)     The component is not a common component suitable for non-infringing use; and

14          (3)     The accused infringer supplied the component with the knowledge of the infringed
                    patent and knowledge that the component was especially made or adapted for use
15                  in an infringing manner.

16  A "common component suitable for non-infringing use" is a component that has uses other than
    as a component of the patented apparatus for transmission of data, and those other uses are not
17  occasional, farfetched, impractical, experimental, or hypothetical.

18  **Source:**

19
    Adapted from Northern District of California Model Patent Jury Instructions, §B3.8; 35 U.S.C. §
20  271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et. al.*, 491 F.3d 1342, 1356-58 (Fed. Cir.
    2007); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *DSU Med. Corp.*
21  *v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
    244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464,
22  1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co.*, 803 F.2d 1170,
    1174 (Fed. Cir. 1986); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306
23  (Fed. Cir. 2012) (en banc), *cert. granted*, 571 U.S. (Jan. 10, 2014).

24  **Apple's Objections:**

25  Apple objects to Samsung's proposed instruction because it is not an accurate statement of the
    law or facts of this case (*e.g.*, changing product to apparatus and filling in the accused product;
26  changing the instruction to remove the requirement of direct infringement; and, further revising
    the instruction to state that infringement can be found based on the acts of "a person or
27  combination of more than one person together."). Further, the proposed instruction fails to
    address the fact that each of the Samsung entities should be treated as independent actors for
28  purposes of showing contributory infringement. Samsung's instruction implies wrongly that the

1

2   jury must identify an infringing party other than one of the Samsung parties to which the other
    Samsung parties contributed.  Samsung's parent entity should be able to avoid a jury verdict by
3   implying that Apple must show that AT&T, not STA or SEA, infringed.  The potential for
    confusion from this omission is far more likely to affect the jury's deliberations than any potential
4   uncertainty from including the definition of "common component" at the end of the instruction.
5   Apple further incorporates its objections to Samsung's proposed instruction regarding
    inducement.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

### PROPOSED FINAL JURY INSTRUCTION NO. 47 (Apple)
### WILLFUL PATENT INFRINGEMENT

3

4

In this case, Apple argues that Samsung willfully infringed its patents.

5

6

To prove willful infringement, Apple must first persuade you that Samsung infringed a valid and enforceable claim of one or more of its patents.  The requirements for proving such infringement were discussed in my prior instructions.

7

In addition, to prove willful infringement, Apple must persuade you by clear and convincing evidence that Samsung acted with reckless disregard of the patent it infringed.

8

9

To demonstrate such "reckless disregard," Apple must persuade you that Samsung actually knew, or it was so obvious that Samsung should have known, that its actions constituted infringement of a valid and enforceable patent.

10

11

In deciding whether Samsung acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

12

13

> A factor that may be considered as evidence that Samsung was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

14

15

> A factor that may be considered as evidence that Samsung was willful is whether it intentionally copied a product of the other side that is covered by a patent.

16

Source:

17

Adapted from 11-CV-01846 Final Instruction No. 59 (Dkt. No. 1903 at 78).

18

**Samsung's Objections:**

19

20

As noted in Samsung's objection to Apple's proposed Instruction 18: Summary of Contentions, Samsung objects to Apple's omission of Samsung's allegations that Apple willfully infringed the '087, '596, '239, and '449 patents from this instruction.  Samsung has consistently alleged that Apple willfully infringed these patents, including in its initial infringement contentions served on June 15, 2012.  (*See* Dkt. No. 267-3 at 4, Samsung's June 15, 2012 Infringement Contentions.)  In those initial contentions, Samsung specifically stated that "Apple has willfully infringed at least U.S. Patent No.[] 7,756,087 . . . since at least September 2010 when Samsung informed Apple of its infringement."  *Id.*  In October 2012, Samsung amended its infringement contentions and specifically included an allegation that Apple willfully infringed the other Samsung patents at issue.  These contentions stated that "Apple has willfully infringed the other Samsung patents since at least the filing of Samsung's counterclaims."  (Dkt. No. 267-6 at 5-6, Samsung's Amended Infringement Contentions.)  More than 16 months have passed since Samsung's amendment, and Apple has never before raised its belief that Samsung did not allege that Apple's infringement was and still is willful.

21

22

23

24

25

26

27

28

To the extent Apple omitted these allegations because it believes them insufficient, Samsung notes that Apple has provided a similar level of detail for its own willfulness allegations.  Its

1

2    infringement contentions provide a cursory mention that Samsung has willfully infringed while
referring back to Apple's complaint.  (*See* Dkt. No. 269-3 at 4-5, Apple's June 15, 2012

3    Infringement Contentions.)  The complaint has similar boilerplate allegations that Samsung has
willfully infringed Apple's patents.  (*See* Dkt. No. 1, Complaint.)  Because Samsung has clearly

4    alleged that Apple willfully infringes—in at least as much detail as Apple's own willfulness
allegations—Samsung respectfully requests that this instruction include Samsung's allegations

5    that Apple's infringement has been willful.

6
Moreover, Apple's argument that Samsung's willfulness contention cannot rest on post-filing

7    conduct is inconsistent with Apple's own willfulness allegations.  To the extent Samsung's
willfulness allegations are deemed deficient, so too are Apple's.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 47 (Samsung)**
**WILLFUL PATENT INFRINGEMENT**

In this case, Apple and Samsung both argue that the other side willfully infringed its patents.

To prove willful infringement, each party must first persuade you that the other side infringed a valid and enforceable claim of one or more of its patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, the patent holder must persuade you by clear and convincing evidence that the other side acted with reckless disregard of the patent it infringed.

To demonstrate such "reckless disregard," the patent holder must persuade you that the other side actually knew, or it was so obvious that the other side should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 59 (Dkt. No. 1903 at 78).

**Apple's Objections:**

Apple objects to the inclusion of any reference in the jury instructions that its alleged infringement of the Samsung asserted patents was willful because Samsung has failed to adequately disclose willfulness contentions and the bases for any such contentions, as required by the District's Patent Local Rules.  Patent Local Rule 3-1(h) required Samsung to disclose the basis for any allegation of willful infringement.  *See* Patent L.R. 3-1(h) ("a party claiming . . . willful infringement [shall disclose] the basis for such allegation").  To do so, Samsung was required to identify facts establishing, among other things, that Apple knew of the asserted patents before the commencement of the lawsuit and knew that the accused activities were infringing.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 168 (Fed. Cir. 2007); *see also Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012).  As shown below, Samsung's Rule 3-1(h) disclosure—amended three times since the beginning of this lawsuit—does neither:

> Before initiating this lawsuit, Apple was aware that its products
> infringed many Samsung patents, including patents Samsung has
> asserted against Apple in this action.  Despite this knowledge,
> Apple continued to infringe Samsung's patents and continued to act

1

2   in an objectively reckless manner.  Apple has willfully infringed at
    least U.S. Patent Nos. 7,756,087 and U.S. Patent No. 6,292,179
3   since at least September 2010 when Samsung informed Apple of its
    infringement.  Apple has continued to willfully infringe these
4   patents and the other Samsung patents since the filing of Samsung's
    counterclaims.
5

6   (Dkt. 660 at 4.)

7   **First**, Samsung does not dispute that it seeks to rely on Apple's post-litigation conduct to support
    its willfulness allegation.  (*See* Dkt. 1286-03 at 25).  On the contrary, Samsung admits that for
8   patents other than the '087 patent, its willfulness allegation extends only to the time of Samsung's
    counterclaim—and includes nothing more than the assertion that the filing of its counterclaim
9   provided Apple with notice.  (Dkt. 1286-3 at 24-25.)  The Court has already held that "post-filing
10  conduct alone is legally insufficient to prove willfulness."  *Lift-U v. Ricon Corp.*, C.A. No. 10-
    01850-LHK, 2012 WL 5303301, at *11 (N.D. Cal. Oct. 25, 2012) (Koh, J.) (granting summary
11  judgment of no willful infringement); *see also In re Seagate*, 497 F.3d at 1374 (ordinarily,
    "willfulness will depend on an infringer's prelitigation conduct").  Accordingly, to present a
12  claim for willful infringement to the jury, Samsung must have identified sufficient facts
    establishing that Apple had notice of each asserted patent prior to this litigation.  But rather than
13  attempt to defend the sufficiency of its willfulness disclosures, Samsung seeks to distract,
    asserting that "[t]o the extent Samsung's willfulness allegations are deemed deficient, so too are
14  Apple's." (Dkt. 1286-03 at 25.)  But Samsung has not sought to exclude Apple's willfulness
    claim on this ground.  (*See* Dkt. 1306 (arguing that Apple's willfulness evidence should be
15  excluded for an entirely different reason, *i.e.*, alleged failure to satisfy the objective prong).)
    Even if Samsung had challenged the sufficiency of Apple's willfulness claim on this ground, it
16  would fail.  Apple has clearly identified facts suggesting that Samsung had pre-suit notice of the
    asserted Apple patents, including the fact that Samsung engaged in systematic copying of Apple's
17  products, including the claimed features, and continued to flood the market with infringing
    products even after being sued by Apple in the 1846 lawsuit and being adjudicated as an infringer
18  of Apple's intellectual property.   (*See*, *e.g.*, Dkt. 1.)
19
    **Second**, Samsung's cursory reference to the '087 patent in its Rule 3-1(h) disclosure is inadequate
20  because it fails to provide any facts that Apple knew that the accused activities were infringing.
    Samsung's disclosure regarding Apple's conduct amounts to nothing more than a recitation of the
21  legal elements of a willfulness claim.  Indeed, "other than the mere suggestion that infringement
    continues, there are no facts . . . concerning . . . [pre- or] post-filing conduct at all, and certainly
22  none that would support a claim of recklessness."  *Vasudevan Software, Inc. v. TIBCO Software,*
    *Inc.*, C.A. No. 11-06638-RS, 2012 WL 1831543, at *5 (N.D. Cal. May 18, 2012).  Accordingly,
23  the jury should also not be instructed that Apple can be found liable for willful infringement of
    the '087 patent.
24

25

26

27

28

**BREACH OF CONTRACT JURY INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 49 (Apple)**
**BREACH OF CONTRACT—OBLIGATION TO LICENSE**
**PATENTS ON FRAND TERMS**

I will now instruct you on how to determine whether Apple has proved its breach of contract claim.  A breach is an unjustified failure to perform a contract.

Samsung has submitted declarations to ETSI in which Samsung identified the '087 and '596 patents, or related patents or applications, as Intellectual Property Rights ("IPRs") that it believed may be considered essential to the UMTS standard.  In those declarations, Samsung declared that it would be prepared to grant irrevocable licenses under those IPRs on fair, reasonable and nondiscriminatory ("FRAND") terms and conditions to the extent the IPRs remain essential to the UMTS standard.  In order to demonstrate breach of this provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

Source:

Adapted from 11-CV-01846 Final Instruction No. 75 (Dkt. No. 1903 at 98).

**Samsung's Objections:**

The ETSI Intellectual Property Rights Policy is governed by the laws of France.  JX-87 (Dkt. 1305-4) at § 12.  Similarly, the "construction, validity and performance" of Samsung's declarations to ETSI are governed by the laws of France.  JX-76 (Dkt. 1305-2) at 1; JX-79 (Dkt. 1305-3) at 1. This Court has previously ruled that "French law is applicable to Apple's contract counterclaims" under the ETSI IPR Policy.  Case No. 11-cv-1846-LHK (PSG), Dkt. No. 920, at 14-15.  The Court should consider  the appropriate foreign law when crafting jury instructions. *Universal Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999) (overturning district court decision that refused to consider expert declaration on Japanese contract law); *see also Jinro Am., Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1000-01 (9th Cir. 2001) (upholding district court's jury instructions after finding the court properly considered Japanese law expert).

Professor Remy Libchaber, Samsung's expert on French contract law, provided an expert report setting forth the elements required under French law to establish contractual liability. (Declaration of Alex Baxter in Support of Samsung's Objections (Exhibit Expert Rep. of Prof. Remy Libchaber) at 8-12, 20-22).  In particular, Professor Libchaber explains that Article 6.1 of the ETSI is to be understood in the context of the French law requirement to negotiate in good faith. (*Id.* at 9-10.)  Professor Libchaber provides factors that are to be taken into account to determine whether the FRAND obligations set forth in Article 6.1 of the ETSI IPR Policy were fulfilled. (Libchaber Report at 12.)  Professor Libchaber also provides factors that may rebut a finding of liability and explains that Apple's conduct during negotiations must be taken into account in assessing liability.  (*Id.* at 9-10.)  Professor Libchaber further provides the test under French law that must be applied to determine whether Apple suffered harm.  (*Id.* at 17-20.)  The instructions used in the 1846 litigation do not provide these tests or factors to the jury.

1

2    Determining the law of a foreign country is the province of the Court, not the jury.  Fed. R. Civ.

3    P. 44.1.  It is also the Court's responsibility to instruct the jury as to the proper foreign law to
     apply, just as the Court must instruct the jury regarding proper United States law.  *U.S. v.*

4    *Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) ("It is well settled . . . that the judge instructs the
     jury in the law. Resolving doubtful questions of law is the distinct and exclusive province of the

5    trial judge.") (citation and internal quotation marks omitted).

6    The Court should not retain the jury instructions from the 1846 litigation because, in that case, the
     Court did not receive expert submissions regarding French law.  By contrast, both parties have

7    submitted expert reports regarding the legal test for determining contractual liability under French
     law.  Here, Samsung's submission of Professor Libchaber's expert report provides compelling

8    reasons to change the previously-used jury instruction.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2              **PROPOSED FINAL JURY INSTRUCTION NO. 49 (Samsung)**
     **BREACH OF CONTRACT—OBLIGATION TO LICENSE PATENTS ON FRAND**

3                       **TERMS AND CONDITIONS**

4

5 I will now instruct you on how to determine whether Apple has proved its breach of contract claim. A breach is an unjustified failure to perform a contract.

6 Samsung has submitted declarations to ETSI in which Samsung identified the '596 and '087 patents, or related patents or applications, as IPRs that it believed may be considered essential to

7 the UMTS standard. In those declarations, Samsung declared that it would be prepared to grant irrevocable licenses under those IPRs on fair, reasonable and nondiscriminatory ("FRAND")

8 terms and conditions to the extent the IPRs remain essential to the UMTS standard.

9 The November 1997 ETSI IPR Policy provides:

10               When an ESSENTIAL IPR relating to a particular STANDARD is
               brought to the attention of ETSI, the Director-General of ETSI shall

11               immediately request the owner to give within three months an
               undertaking in writing that it is prepared to grant irrevocable

12               licenses on fair, reasonable and non-discriminatory terms and
               conditions under such IPR to at least the following extent:

13

14              •     MANUFACTURE, including the right to make or have made customized
                  components and sub-systems to the licensee's own design for use in

15                  MANUFACTURE;
              •     sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;

16              •     repair, use, or operate EQUIPMENT; and
              •     use METHODS.

17

18               The above undertaking may be made subject to the condition that
               those who seek licenses agree to reciprocate.

19 In order to demonstrate breach of this provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple

20 was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

21 In order to demonstrate that Samsung did not fulfill its obligation, Apple must demonstrate at least one of the three following facts:

22 •     Samsung's negotiation behavior reveals its unwillingness to license its declared essential patents and/or to license them on FRAND terms and conditions;

23 •     None of Samsung's offers were on FRAND terms and condition; or

24 •     Samsung failed to behave as a good-faith negotiator.

25 If any of these facts is demonstrated, Samsung may rebut a finding of liability by demonstrating at least one of the following two facts:

26
    •     Apple's negotiation behavior reveals its unwillingness to take a license to Samsung's

27         declared-essential patents on FRAND terms and conditions; or
    •     Apple did not act as a good-faith negotiator.

28
To the extent that Apple does demonstrate liability, Apple must further prove the following regarding the harm it claims to have suffered:

1

2

- •     The existence and amount of the harm incurred;
3
- •     The harm is the direct and certain consequence of Samsung's failure; and
- •     This harm was foreseeable at the time when the contract was entered into.
4

5
If you find that Samsung failed to comply with its obligations in the past, but did comply before the Court rules on this case by offering a retroactive license on FRAND terms, then Apple must demonstrate that the past failure caused a harm that was not cured by the more recent compliance. Such harm can only consist of the additional costs Apple would not have incurred if Samsung had complied with its obligations when it was required to do so.
6

7

8
**Source:**

9
Adapted from Case No. 11-CV-01846 Final Instruction No.75 (Dkt. No. 1903 at 98); Expert Report of Remy Libchaber Regarding Interpretation of Contracts under French Law.

10

11
**<u>Apple's Objections:</u>**

12
Samsung's proposed Instruction No. 49 is unnecessarily long and complicated, misstates the standard for damages, and ignores the Court's directive to use the instructions from Case No. 11-cv-1846 "absent a compelling reason to depart." (Dkt. 1158 at 2.) Both Samsung and Apple's French law experts agree that the instruction offered by the Curt in the earlier case was proper. *See* Expert Report of Remy Libchaber at 20 (Samsung's expert stating that "[t]hese jury instructions do not contain any erroneous elements"); Expert Report of Nicolas Molfessis at ¶¶ 14-15 (Apple's expert stating that "[i]n my opinion this instruction accurately states the questions to be decided, under French contract law, by a court or jury assessing whether Samsung had breached its FRAND licensing commitments."). Despite that agreement, Samsung seeks to revise that instruction to include incorrect elements.

13

14

15

16

17
Regarding damages, Samsung's proposed instruction states that only damages foreseeable at the time of contracting can be awarded. However, unforeseen damages may be awarded where the breach was sufficiently serious. *See* Deposition of Nicolas Molfessis at 95-96 ("Q. How serious the harm is? A. The fault, not the harm, the fault. If the fault committed is grave or serious, then the creditor is entitled to be indemnified even for indirect and uncertain consequences.").

18

19

20
The contract claims in this case relate to Samsung's breach of the same contractual provisions at issue in the prior case, namely the licensing obligations set forth in Samsung's IPR Information Statement and Licensing Declarations. Although the alleged breaches involve different asserted patents, the operative facts underlying Apple's claims are analogous to the 1846 case: Samsung refused to comply with its FRAND licensing commitments. The Court's instruction from the 1846 case on this issue—which was agreed to by Samsung—was correct. *See* Revised (Undisputed) Joint Proposed Jury Instructions For After The Close Of Evidence (Dkt. No. 1693 at 29); Final Instruction No. 75 (Dkt. No. 1903 at 98). French law experts retained by both parties in the 630 case have considered the instructions given by the Court in the 1846 case, and both concluded that those instructions accurately reflect French law. Samsung has not identified anything new in this case that would constitute "a compelling reason to depart" from that instruction. Accordingly, the Court should adopt Apple's proposed instruction, which makes minimal revisions to the instruction given by the Court in the 1846 case to reflect the patents at issue here.

21

22

23

24

25

26

27

28

1

2          **PROPOSED FINAL JURY INSTRUCTION NO. 50 (Apple)**
            **BREACH OF CONTRACT—OBLIGATION TO TIMELY**
3        **DISCLOSE INTELLECTUAL PROPERTY RIGHTS ("IPR")**

4
The November 1997 ETSI IPR Policy provides:
5
                    Each MEMBER shall use its reasonable endeavours to
6                   timely inform ETSI of ESSENTIAL IPRs it becomes aware
                    of.  In particular, a MEMBER submitting a technical
7                   proposal for a STANDARD shall, on a bona fide basis,
                    draw the attention of ETSI to any MEMBER's IPR which
8                   might be ESSENTIAL if that proposal is adopted.

9
In order to demonstrate breach of this contract provision, Apple must prove that all of the
10   conditions for performance of this obligation occurred, that Samsung did not fulfill this
     obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to
11   perform this obligation.

12
Source:
13
11-CV-01846 Final Instruction No. 76 (Dkt. No. 1903 at 99).
14
**Samsung's Objections:**
15
16   The words "of that" should appear in the reproduction of clause 4.1 of the ETSI IPR Policy in this
     instruction.  The words "of that" do not appear in the instructions from the previous case but they
17   do appear in the actual policy.  JX-87 (Dkt. 1305-4) at § 4.1.   Apple's proposed instruction omits
     the words "of that" from the second sentence of clause 4.1 of the 1997 ETSI IPR Policy.  Without
18   these words, the sentence is difficult to understand and may be confusing to a jury.  Ensuring that
     the jury instructions are accurate as to the contents of the policy is a compelling reason to deviate
19   from the instructions used in the previous trial.

20   The ETSI Intellectual Property Rights Policy is governed by the laws of France.  JX-87 at § 12.
     This Court has previously ruled that "French law is applicable to Apple's contract counterclaims"
21   under the ETSI IPR Policy.  Case No. 11-cv-1846-LHK (PSG), Dkt. No. 920, at 14-15.  The
     Court should consider  the appropriate foreign law when crafting jury instructions.  *Universal*
22   *Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999) (overturning district
     court decision that refused to consider expert declaration on Japanese contract law); *see also*
23   *Jinro Am., Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1000-01 (9th Cir. 2001) (upholding
     district court's jury instructions after finding the court properly considered Japanese law expert).
24

25   Professor Remy Libchaber, Samsung's expert on French contract law, provided an expert report
     setting forth the elements required under French law to establish contractual liability.
26    (Declaration of Alex Baxter in Support of Samsung's Objections, Exhibit 1 (Expert Rep. of Prof.
     Remy Libchaber) at 12-22).   The ETSI IPR Policy states that ETSI members are required "to
27   'use its reasonable endeavors' to disclose essential IPR in a timely fashion, and "that members
     'shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which
28   might be ESSENTIAL if that proposal is adopted."  (*Id.* at 14); JX-87 at § 4.1.  Professor

1

2   Libchaber explains what evidence is to be considered in determining the meaning of ambiguous
terms in an agreement.  (Libchaber Report at 15-17.)  In particular, Professor Libchaber explains
3   that common industry practice should be considered in interpreting such terms.  (Libchaber
Report at 15-17).  Further, Professor Libchaber has explained the requirements for proving harm
4   under French contract law.  (Libchaber Report at 17-8, 20-12).  The instructions used in the 1846
5   litigation do not provide these tests or factors to the jury.

6   Determining the law of a foreign country is the province of the Court, not the jury.  Fed. R. Civ.
P. 44.1.  It is also the Court's responsibility to instruct the jury as to the proper foreign law to
7   apply, just as the Court must instruct the jury regarding proper United States law.  *U.S. v.
Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) ("It is well settled . . . that the judge instructs the
8   jury in the law. Resolving doubtful questions of law is the distinct and exclusive province of the
9   trial judge.") (citation and internal quotation marks omitted).

10  The Court should not retain the jury instructions from the 1846 litigation because, in that case, the
Court did not receive expert submissions regarding French law.  By contrast, both parties have
11  submitted expert reports regarding the legal test for determining contractual liability under French
law.  Here, Samsung's submission of Prof. Libchaber's expert report provides compelling reasons
12  to change the previously-used jury instruction.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**PROPOSED FINAL JURY INSTRUCTION NO. 50 (Samsung)**
**BREACH OF CONTRACT—OBLIGATION TO TIMELY**
**DISCLOSE INTELLECTUAL PROPERTY RIGHTS ("IPR")**

4

5

The November 1997 ETSI IPR Policy provides:

6

7

8

> Each MEMBER shall use its reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs it becomes aware of. In particular, a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

9

10

In order to demonstrate breach of this contract provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

11

12

13

14

In order to demonstrate that Samsung did not fulfill its obligation, Apple must demonstrate that Samsung did not use reasonable endeavors to timely inform ETSI of the applications that issued as the '087 and/or '596 patent.  In making this determination, you should take into account (i) whether Samsung made good faith efforts to disclose the '087 and '596 patents, (ii) other ETSI members' practices in terms of timing of disclosure of their patents, and (iii) Apple's own practice in terms of timing of disclosure of its patents.

15

16

In order to demonstrate that some harm was caused by Samsung's failure to perform its obligation, Apple must demonstrate that, by reason of Samsung's failure to comply with its obligation, Apple suffered harm. Apple must then prove cumulatively:

17

18

- The existence and amount of the harm incurred;
- The harm is the direct and certain consequence of Samsung's failure; and
- This harm was foreseeable at the time when the contract was entered into.

19

20

**Source:**

21

Adapted from Case No. 11-CV-01846 Final Instruction No. 76 (Dkt. No. 1903 at 99); Expert Report of Remy Libchaber Regarding Interpretation of Contracts under French Law.

22

23

**Apple's Objections**:

24

25

26

27

28

Samsung's proposed Instruction No. 50 is unnecessarily long and complicated, misstates the standard for breach of the ETSI disclosure requirement and for damages, and ignores the Court's directive to use the instructions from Case No. 11-cv-1846 "absent a compelling reason to depart."  (Dkt. 1158 at 2.)  Both Samsung and Apple's French law experts agree that the instruction offered by the Curt in the earlier case was proper.  *See* Expert Report of Remy Libchaber at 20 (Samsung's expert stating that "[t]hese jury instructions do not contain any erroneous elements"); Expert Report of Nicolas Molfessis at ¶¶ 8-9 (Apple's expert stating that "[i]n my opinion, this instruction accurately states the questions to be decided, under French contract law, by a court or jury assessing whether Samsung had breached its disclosure obligations under the ETSI IPR Policy.").  Despite that agreement, Samsung seeks to revise that instruction to include incorrect elements.

1

2   Regarding Samsung's breach, Samsung's proposed instruction improperly directs the jury to
    consider tools of interpretation, including Apple's conduct, that are only appropriate where a
3   contract is ambiguous and, moreover, are not probative because they are factually distinct from
    Samsung's conduct in submitting proposals to 3GPP and then failing to make timely disclosures.
4   *See* Deposition of Remy Libchaber at 29-30 ("Q. Where a phrase is unambiguous, there is no
    need to resort to tools of interpretation, looking outside the plain language of a contract; is that
5   correct? A. Yes, yes."); 174, 176. Further, the instruction directs the jury to consider only
    whether Samsung used "reasonable endeavours to timely inform ETSI," when the second
6   sentence of Clause 4.1—which is applicable to Samsung's conduct here—provides a specific rule
    that directs a member to make a disclosure before a standard is adopted. *See Apple Inc. v.*
7   *Motorola Mobility, Inc.*, 886 F.Supp.2d 1061, 1086 (W.D. Wis. 2012) ("the ETSI intellectual
    property rights policy is clear. . . . By using the terms "might" and "if," the policy clearly
8   requires members to make efforts to disclose intellectual property rights *before* a standard is
    adopted."); *see also* Deposition of Remby Libchaber at 155-56 ("Q. Where there is a specific rule
9   that addresses an issue, is it correct that, under French law, you can't ignore that specific rule in
    favor of a general rule? A. Yes. Specific rules supersedes general rules, yes."). Regarding
10  damages, Samsung's proposed instruction states that only direct damages foreseeable at the time
    of contracting can be awarded. However, indirect, unforeseen damages may be awarded where
11  the breach was sufficiently serious. *See* Deposition of Nicolas Molfessis at 95-96 ("Q. How
    serious the harm is? A. The fault, not the harm, the fault. If the fault committed is grave or
12  serious, then the creditor is entitled to be indemnified even for indirect and uncertain
    consequences.").

13
    The contract claims in this case relate to Samsung's breach of the same contractual provisions at
14  issue in the prior case, namely the disclosure obligation set forth in Clause 4 of the ETSI IPR
    Policy. Although the alleged breaches involve different asserted patents, the operative facts
15  underlying Apple's claims are analogous to the 1846 case: Samsung participated in the relevant
    standard-setting meetings, but waited until after the relevant standards had been adopted to
16  disclose its intellectual property. The Court's instruction from the 1846 case on this issue—
    which was agreed to by Samsung—was correct. *See* Revised (Undisputed) Joint Proposed Jury
17  Instructions For After The Close Of Evidence (Dkt. No. 1693 at 30); Final Instruction No. 76
    (Dkt. No. 1903 at 99). French law experts retained by both parties in the 630 case have
18  considered the instructions given by the Court in the 1846 case, and both concluded that those
    instructions accurately reflect French law. Samsung has not identified anything new in this case
19  that would constitute "a compelling reason to depart" from that instruction. Accordingly, the
    Court should adopt Apple's proposed instruction which makes minimal revisions to the
20  instruction given by the Court in the 1846 case to reflect the patents at issue here.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Mark D. Selwyn am the ECF User whose ID and password are being used to file this Joint Statement.  In compliance with Local Rule 5-1(i)(3), I hereby attest that Victoria F. Maroulis has concurred in this filing.


Dated:  February 25, 2014                    _/s/_ Mark D. Selwyn_____
                                             Mark. D Selwyn