JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

HAROLD J. McELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
JACK W. LONDEN (CA SBN 85776)
jlonden@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
RUTH N. BORENSTEIN (CA SBN 133797)
rborenstein@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.    12-cv-00630-LHK<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTIONS IN LIMINE**<br><br>Date:   March 5, 2014<br>Time:  2:00PM<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

PUBLIC REDACTED VERSION

# TABLE OF CONTENTS

Page

I.      SAMSUNG'S MIL #1 (WILLFULNESS EVIDENCE) SHOULD BE DENIED ............. 1

II.     SAMSUNG'S MIL #2 (UNASSERTED CLAIMS) SHOULD BE DENIED. ................. 5

III.    SAMSUNG'S MIL #3 (COPYING EVIDENCE) SHOULD BE DENIED....................... 8

        A.      Documents That Allegedly Relate to Unasserted Claims of Apple's Patents
                Are Relevant For Other Purposes ........................................................ 10

        B.      Documents Showing Copying of Patented Features or Motivation to Copy
                Are Relevant ....................................................................................... 12

        C.      Copying, Demand, and Competition Documents That Post-Date
                Introduction of the Accused Features Are Relevant ............................ 16

IV.     SAMSUNG'S MIL #4 (COPYING RE GALAXY NEXUS) SHOULD BE
        DENIED.......................................................................................................... 16

V.      SAMSUNG'S MIL #5 (TOTAL REVENUES/PROFITS) SHOULD BE DENIED ....... 17

VI.     SAMSUNG'S MIL #6 (PROFITS ALREADY AWARDED) SHOULD BE
        DENIED.......................................................................................................... 19

VII.    SAMSUNG'S MIL #7 (SANCTIONS AGAINST SAMSUNG) SHOULD BE
        DENIED.......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. KG v. Plebaniak,*
  No. 11-10268-PBS, 2013 U.S. Dist. LEXIS 46906 (D. Mass. Mar. 18, 2013) ..................... 20

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.,*
  466 F.3d 1000 (Fed. Cir. 2006) ............................................................................................... 20

*Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.,*
  344 F.3d 1186 (Fed. Cir. 2003) ................................................................................................. 9

*Apple Inc. v. ITC,*
  725 F.3d 1356 (Fed. Cir. 2013) ................................................................................................. 9

*Apple Inc. v. Samsung Elecs. Co.,*
  735 F.3d 1352 (Fed. Cir. 2013) ................................................................................................. 9

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
  377 U.S. 476 (1964). ................................................................................................................ 19

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.,*
  682 F.3d 1003 (Fed. Cir. 2012), *aff'd,* 670 F.3d 1171 (Fed. Cir. 2012) ............................... 1, 3

*Catalina Lighting, Inc. v. Lamps Plus, Inc.,*
  295 F.3d 1277 (Fed Cir. 2002) ................................................................................................ 20

*Crocs, Inc. v. ITC,*
  598 F.3d 1294 (Fed. Cir. 2010) ................................................................................................. 9

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
  567 F.3d 1314 (Fed. Cir. 2009) ........................................................................................... 4, 10

*Ethicon, Inc. v. Quigg,*
  849 F.2d 1422 (Fed. Cir. 1988) ................................................................................................. 5

*Georgia Pac. Corp. v. United States Plywood Corp.,*
  318 F. Supp. 1116 (S.D.N.Y. 1970) .......................................................................................... 9

*Global-Tech Appliances, Inc. v. SEB S.A.,*
  __ U.S. __, 131 S. Ct. 2060 (2011). .......................................................................................... 9

*Guzik Tech. Enters., Inc. v. W. Digital Corp.,*
  No. 11-03786-PSG, 2013 WL 6227626 (N.D. Cal. Nov. 22, 2013) .......................................... 4

*Heidelberger Druckmaschinen AG v. Hantscho Commerical Prods., Inc.,*
  21 F.3d 1068 (Fed. Cir. 1994) ................................................................................................... 6

*K-TEC, Inc. v. Vita-Mix Corp.*,
   696 F.3d 1364, 1378 (Fed. Cir. 2012) ........................................................................ 1

*LaserDynamics, Inc. v. Quanta Computers, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) .................................................................................... 18

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir 2006) ................................................................................. 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................................ 18

*Minco, Inc. v. Combustion Eng'g, Inc.*,
   95 F.3d 1109 (Fed. Cir. 1996) .................................................................................... 9

*Mosely, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*,
   849 F.2d 264 (7th Cir. 1988) .................................................................................... 20

*Powell v. Home Depot USA Inc.*,
   663 F.3d 1221 (Fed. Cir. 2011) ......................................................................... 1, 2, 3

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
   411 F.3d 1332 (Fed. Cir. 2005) .................................................................................. 6

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) (en banc) .................................................................... 7

*Shockley v. Arcan, Inc.*,
   248 F.3d 1349 (Fed. Cir 2001) ................................................................................. 19

*St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.*,
   No. 06-404-JJF-LPS, 2009 WL 1649751 (D. Del. 2009) ........................................... 5

*Tarkus Imaging, Inc. v. Adobe Sys., Inc.*,
   867 F. Supp. 2d 534 (D. Del. 2012) ........................................................................... 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) .......................................................................... 2, 18

*Vnus Med. Techs., Inc. v. Diomed Holdings, Inc.*,
   527 F. Supp. 2d 1072 (N.D. Cal. 2007) ..................................................................... 4

STATUTES

35 U.S.C. § 285 ............................................................................................................. 22

## I.     SAMSUNG'S MIL #1 (WILLFULNESS EVIDENCE) SHOULD BE DENIED

On the eve of trial, Samsung contends for the first time that the Court should bar Apple as a matter of law from offering ***any*** willfulness evidence at trial for ***any*** of Apple's five asserted patents.  That request should be rejected for the following reasons.

***First***, Samsung's argument hinges on the premise that, in *Bard* and *Powell*, the Federal Circuit supposedly held "that the objective prong of the willfulness inquiry should be resolved prior to the jury hearing evidence of willfulness."  (Mot. at 2 n.1.)  But that legal premise is incorrect.  Rather, the Federal Circuit made clear in both cases that a district court may ***reserve*** deciding the objective prong of a willfulness inquiry until ***after trial***—so it can decide the issue in light of the entire trial record, and with the benefit of the jury's verdict.  *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) (court may "allow the jury to determine the underlying facts relevant to the defense in the first instance," including evidence directed to the objective prong, though "the ultimate legal question . . . should always be decided as a matter of law by the judge"), *aff'd*, 670 F.3d 1171 (Fed. Cir. 2012); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("When the resolution of a particular issue or defense is a factual matter, however, whether reliance on that issue or defense was reasonable under the objective prong is properly considered by the jury.").

In *Bard*, the Federal Circuit remanded with explicit instructions for the district court to decide the objective prong "based on the record ultimately made in the infringement proceedings."  682 F.3d at 1008 (quotation omitted).  Similarly, in *Powell*, the Federal Circuit expressed no concern arising from the fact that the district court had first addressed the objective prong when ruling on the defendant's ***post-trial*** JMOL motion.  663 F.3d at 1235.  Samsung says nothing about these critical aspects of the opinions on which it relies—and fails to cite other Federal Circuit opinions approving district court decisions that assessed objective willfulness after the parties had presented their willfulness evidence to the jury.  *See, e.g.*, *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378 (Fed. Cir. 2012) (affirming district court's finding of objective willfulness made after the infringer's defenses were "soundly rejected by the jury");

1    *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011) (affirming post-trial

2    JMOL of no willfulness based on record presented at trial).[1]

3        *Second*, Samsung's attempt to impose a rigid new legal requirement for courts to decide

4    the objective prong before trial also conflicts with the position that Samsung itself took on this

5    same issue in the 1846 case—where it presented the jury with willfulness evidence for all five of

6    its asserted patents, without any mention of a supposed need for the Court to consider the

7    objective prong beforehand.  (1846 Dkt. 1931 at 18 (verdict form presenting Samsung willfulness

8    claims).)  Samsung said nothing then because no such requirement exists, and it should not be

9    permitted to take a contrary position here simply because it failed to assert a valid willfulness

10   claim for any of its own patents in this case.

11        *Third*, Samsung alleges that barring Apple from presenting its evidence of willfulness at

12   trial will promote judicial economy and avoid "wast[ing] time."  (Mot. at 5.)  But the opposite is

13   true.  If the Court precludes Apple from offering its willfulness evidence to the jury, and is later

14   reversed on that issue, another time-consuming trial would be necessary for Apple to introduce its

15   evidence (and for Samsung to respond with evidence of its own).  By contrast, if Apple is allowed

16   to offer willfulness evidence at the upcoming trial, the Court can assess the merits of Apple's

17   willfulness claims after the trial—just as it did in the 1846 case (1846 Dkt. 2220 at 26-32), and

18   just as the Federal Circuit has approved (as noted above).  If the Federal Circuit reverses that

19   willfulness ruling on appeal, it can use the existing trial record to reach its own conclusions on the

20   issue, rather than requiring another burdensome trial on remand.

21        Nor can Samsung sustain its claim that it will suffer undue "prejudice" if Apple offers

22   willfulness evidence to the jury.  (Mot. at 5.)  In the cases discussed above, the Federal Circuit

23

24        [1]  Samsung erroneously contends "[i]t is black-letter law that a jury should not consider

25   the subjective requirement of willful infringement unless the Court first determines that the 'threshold objective standard is satisfied.'"  (Mot. at 1.)  This is another misstatement of the law: "[D]istrict courts have broad discretion to set the order of trial.  Thus, certain issues that affect

26   resolution of the objective prong inquiry . . . may be tried ***after the jury has considered the***

27   ***subjective prong*** in the infringement proceeding."  *Powell*, 663 F.3d at 1237 n.2 (emphasis added).

28

1    permitted juries to hear willfulness evidence before the district court rendered a decision on the

2    objective prong, without stating any concern of resulting unfair prejudice.  Samsung's claim of

3    prejudice here is particularly unfounded given that the jury will need to consider much of Apple's

4    willfulness evidence (*e.g.*, evidence of Samsung's copying) in connection with other issues, such

5    as Apple's damages claim.  (*E.g.*, 1846 Dkt. 2721 at 2 (overruling objections to evidence of

6    Samsung's copying as relevant to lost profits and *Georgia-Pacific* factors 8, 9, and 11).)

7         **Fourth**, Samsung argues that Apple cannot prove the objective prong for the '959, '414,

8    and '647 patents as a matter of law because the Court earlier denied Apple's summary judgment

9    motions directed to those patents.  (Mot. at 3-4.)  But the Court denied those motions because

10   disputed factual questions existed.  (Dkt. 1151 at 19 ('647 patent:  "This disagreement between

11   the parties' experts constitutes a genuine dispute as to the application of Judge Posner's claim

12   construction of 'analyzer server' to the accused products, one that this Court cannot resolve at

13   summary judgment."); *id.* at 22 ('414 patent:  "[T]he Court concludes that a genuine dispute as to

14   infringement precludes summary judgment."); *id.* at 29 ('959 patent:  finding fact disputes about

15   whether references were prior art).)[2]

16        These are precisely the type of ***disputed factual issues*** underlying the objective prong that

17   the Federal Circuit has held ***the jury should decide.***  *See Bard*, 682 F.3d at 1008 ("In considering

18   the objective prong of *Seagate*, the judge may when the defense is a question of fact or a mixed

19   question of law and fact allow the jury to determine the underlying facts relevant to the defense in

20   the first instance, for example, the questions of anticipation and obviousness."); *Powell*, 663 F.3d

21   at 1236-37 ("When the resolution of a particular issue or defense is a factual matter, however,

22   whether reliance on that issue or defense was reasonable under the objective prong is properly

23   considered by the jury.").  Thus, Samsung cannot turn the Court's denial of summary judgment

24

25

26        [2]  For the '959 patent, the Court only addressed whether two asserted references were
     prior art, and did not assess whether Samsung had objectively reasonable invalidity defenses
27   based on the references.  (Dkt. 1151 at 29.)

28

1   due to the existence of factual disputes into a substantive determination that Samsung's purported

2   defenses are objectively reasonable on the merits.[3]

3       **Fifth**, for the '721 patent, Samsung contends that the Court should preclude Apple from

4   offering willfulness evidence because, according to Samsung, it "will present strong invalidity

5   defenses that are unquestionably objectively reasonable." (Mot. at 4.) But Samsung cites no case

6   (and Apple is aware of none) in which a party avoided a trial on the issue of willfulness by

7   unilaterally declaring that its defenses were "unquestionably objectively reasonable." Indeed, if

8   Samsung truly believed its position, presumably it would have moved for summary judgment on

9   Apple's willfulness claims—which, of course, it did not. Nor can Samsung bar Apple's '721

10  willfulness claim by declaring that it was "reasonable" for it to argue during *Markman* that the

11  "keyboard" limitation of claim 18 requires a "physical keyboard." (*Id.*) The Court dismissed that

12  argument as ***unreasonable***. (Dkt. 1151 at 12-13 (holding that the intrinsic and extrinsic evidence

13  "***lead[] inescapably*** to the conclusion that claim 18 . . . naturally includes a virtual keyboard"

14  (emphasis added); *id.* at 14 ("[T]he specification of the '172 Patent, as described above,

15  overwhelmingly supports a virtual or soft keyboard.") (emphasis added)).)

16      Samsung also suggests that its invalidity defense for the '721 patent should be deemed

17  objectively reasonable because "the PTO recently granted an *ex parte* re-examination request

18  against the '721 patent on the same prior art that Samsung will present at trial, finding that this

19  prior art raised a substantial question of patentability." (Mot. at 4.) But Samsung cannot

---

21  [3] Samsung relies on two district court cases, *Guzik Technology Enterprises, Inc. v. Western Digital Corp.*, No. 11-03786-PSG, 2013 WL 6227626, at *9 (N.D. Cal. Nov. 22, 2013),

22  and *Tarkus Imaging, Inc. v. Adobe Systems, Inc.*, 867 F. Supp. 2d 534 (D. Del. 2012). (Mot. at 2-3.) But unlike here, the issue of objective willfulness in *Tarkus* turned on a "close" question of

23  law, not disputed issues of fact. 867 F. Supp. 2d at 537. Likewise, *Guzik* depended upon the specific anticipation and obviousness issues of that case, and did not announce a rule that a

24  willfulness finding is unavailable simply because the accused infringer's defenses survived summary judgment (which would have been contrary to Federal Circuit precedent, in any event).

25  2013 WL 6227626, at *9; *see DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009) ("[T]he fact that an issue was submitted to a jury does not

26  automatically immunize an accused infringer from a finding of willful infringement."); *Vnus Med. Techs., Inc. v. Diomed Holdings, Inc.*, 527 F. Supp. 2d 1072, 1075 n.5 (N.D. Cal. 2007)

27  (rejecting argument that a patentee must seek summary judgment on accused infringer's defenses to pursue willful infringement).

28

1    manufacture objective reasonableness based on the PTO's decision merely to institute re-

2    examination—a proceeding that involves a different standard of proof (preponderance vs. clear

3    and convincing), applies a different claim construction standard (broadest reasonable

4    interpretation vs. meaning to a person of ordinary skill in the art), and is not even close to final or

5    otherwise binding on this Court.  *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir.

6    1988) ("The [PTO and district courts] take different approaches in determining validity and on

7    the same evidence could quite correctly come to different conclusions."); *St. Clair Intellectual*

8    *Prop. Consultants, Inc. v. Palm, Inc.*, No. 06-404-JJF-LPS, 2009 WL 1649751, at *1 (D. Del.

9    June 10, 2009) ("[T]here is no per se rule that reexamination proceedings preclude a plaintiff

10   from asserting a claim of willful infringement.").

11       **Finally**, for the '172 patent, Samsung declares that it "has raised a set of reasonable,

12   credible noninfringement and invalidity defenses."  (Mot. at 4.)  But again, Samsung cannot strip

13   Apple of its willfulness claim based on nothing more than cursory declarations that its own

14   defenses are "reasonable," and blanket citations to more than 100 paragraphs of its expert reports

15   (without explanation).

16       **II.     SAMSUNG'S MIL #2 (UNASSERTED CLAIMS) SHOULD BE DENIED.**

17       Samsung's MIL #2 should be denied because it improperly seeks the exclusion of

18   evidence that is relevant for reasons that do not depend on a contention that Apple practices the

19   asserted or unasserted claims of the patents.

20       Samsung is wrong in asserting that testimony by Gordon Freedman, a '414 patent inventor,

21   or Kenneth Kocienda, a '172 patent inventor, would be relevant only if Apple contends it

22   practices those patents.  Testimony about the iPhone, its development, and features is relevant

23   regardless of whether the iPhone practices the claims of those patents.  For example, Mr.

24   Kocienda is familiar with and can identify the Apple phones being introduced into evidence,

25   which practice asserted claims of the '647 and '721 patents.  Samsung is incorrect in arguing

26   (Mot. at 8) that listing him as a sponsoring witness for those exhibits implies anything contrary to

27   Apple's commitment.

28

1        In addition, it is it is entirely relevant and important for the jury to hear how the inventors

2   came up with the inventions at issue here.  The inventors of the '414 patent and the '172 patent

3   developed the inventions while working on the development of the iPhone.  (*See, e.g.*, Opp'n

4   Decl. of Nathan B. Sabri ("Sabri Opp'n Decl.") Ex. A (1/16/2013 Gordon Freedman Dep. Tr.) at

5   81:16-21; *id.* Ex. B (4/13/2012 Kenneth Kocienda Dep. Tr.) at 79:3-15; *id.* Ex. C (7/16/2013

6   Kenneth Kocienda Dep. Tr.) at 99:14-102:11; 123:7-124:21.)  The development history of any

7   patent is relevant, and the problems solved by the patents were posed by challenges encountered

8   in the development of the iPhone.  For example, the '172 was conceived as a way to provide "a

9   keyboard that when demonstrated to someone, when they began to use it, in their judgment, they

10  were able to type comfortably and efficiently with it."  (*Id.* Ex. B (4/13/2013 Kenneth Kocienda

11  Dep. Tr.) at 46:2-7.)  The patented inventions were designed to help achieve consumer acceptance

12  of a mobile device that synchronized data efficiently and concurrently with accessing and

13  modifying data in the programs being synchronized with other devices (*id.* Ex. A (1/16/2013

14  Gordon Freedman Dep. Tr.) at 82:5-16 ('414 patent)) and to overcome end-user resistance to

15  using a virtual keyboard on a small glass touch screen (*id*. Ex. C (Kenneth Kocienda Dep. Tr.) at

16  133:11-134:17 ('172 patent)).

17       Evidence concerning the problem solved is also relevant to Apple's ability to demonstrate

18  secondary considerations of nonobviousness, regarding the failure of others to solve the same

19  problem.  *See Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d

20  1068, 1072 (Fed. Cir. 1994) ("Indeed, the litigation argument that an innovation is really quite

21  ordinary carries diminished weight when offered by those who had tried and failed to solve the

22  same problem, and then promptly adopted the solution that they are now denigrating."); *Princeton*

23  *Biochemicals, Inc. v. Beckman Coulter, Inc*., 411 F.3d 1332, 1337 (Fed. Cir. 2005) ("Contrary to

24  this reasoning, section 103 requires assessment of the invention as a whole.  This 'as a whole'

25  assessment of the invention requires a showing that an artisan of ordinary skill in the art at the

26  time of invention, confronted by the same problems as the inventor and with no knowledge of the

27  claimed invention, would have selected the various elements from the prior art and combined

28  them in the claimed manner.") (emphasis added) (internal citations omitted).

1      The fact that the iPhone provided these same advantages is highly relevant—and Apple

2   cannot properly be barred from asking witnesses with personal knowledge about how it did so—

3   whether or not it practiced unasserted claims.  Whether iPhones were sufficiently similar to

4   compete against the accused Samsung phones is relevant to the jury's consideration of lost profits

5   damages because if the accused infringing phones had not been on sale, this evidence supports the

6   conclusion that a portion of their buyers would have bought iPhones instead.  A patentee that can

7   prove it would have made more sales but for the infringer's sales can recover lost profits whether

8   or not the patentee practiced the patent itself.  *Rite-Hite Corp. v. Kelley Co., Inc*., 56 F.3d 1538,

9   1545 (Fed. Cir. 1995) (en banc).  The Final Jury Instructions in the 1846 case required, for lost

10  profits, evidence "that but for the infringement, there is a reasonable probability that it would

11  have made sales that Samsung . . . made of the infringing products;" but the jury instructions

12  imposed no requirement of proof that Apple practiced the claims.  (1846 Dkt. 2784 at 28.)

13  Samsung is wrong when it asserts that evidence about comparable features of the iPhone would

14  be relevant only if Apple contends that it practiced the patents.[4]

15      In short, testimony about the iPhone and its features comparable to those provided by

16  practicing the asserted claims is relevant for several reasons—none of them dependent on a

17  contention that Apple practices those claims or other claims of the three patents.  Apple will not

18  argue or elicit from its witnesses testimony that its products practice claims that it has committed

19  not to say it practices.  There is no need or basis for an *in limine* order going further.  But having

20  asked the Court to obtain Apple's commitment, Samsung must act consistently.  It must not itself

21

22      [4]  On February 25, 2014, Samsung filed an administrative motion for leave to supplement
    its second motion in limine that adds a request for exclusion of certain source code to this motion.
23  Apple will oppose that administrative motion, and opposes the relief that Samsung's proposed
    supplement requests.  The fact that Apple listed source code for certain Apple products does not
24  mean that Apple will argue those products practice any patent claims.  Moreover, the source code
    is relevant to other Apple contentions in this case.  For example, source code that has been relied
25  on by Apple experts to testify that iPhones provide valuable advantages comparable to those in
    infringing Samsung phones is relevant for that reason, without any assertion that the iPhones
26  practice a claim of the patent.  (*See, e.g.*, Dkt. No. 880, Ex. 10 to Fazio Decl. (filed under seal)
    (Snoeren Opening Expert Report) at ¶¶ 360-67; Dkt. 1156-03 (Vellturo Opening Expert Report)
27  ¶ 81.)

28

1   seek to elicit testimony on this point that is contrary to fact,[5] and it must not argue as fact that

2   Apple's products do not perform in ways that are described by any unasserted claims.  At

3   Samsung's request, the Court required Apple to choose between delaying the trial for validity

4   briefing or committing not to say that it practices certain unasserted claims.  (Dkt. 1133 (12/12/13

5   Hearing Tr.) at 170:151- 171:12.)  Samsung would open the door itself if, for example, it argued

6   that Apple's silence on practicing unasserted claims meant that Samsung could achieve a

7   noninfringing alternative by simply copying  a feature of the iPhone that does not practice an

8   asserted claim, but does satisfy the requirements of an unasserted claim.

9   **III.    SAMSUNG'S MIL #3 (COPYING EVIDENCE) SHOULD BE DENIED**

10          Samsung's MIL #3 is a moving target.  Samsung states that it "***moves to exclude*** specific

11   documents falling within three categories," but avers in a footnote that it only seeks to exclude

12   Apple "from presenting these documents for purposes of copying."  (Mot. at 10 & n.6.)  Contrary

13   to that footnote, however, Samsung argues for total exclusion of certain documents.  (*Id.* at 13:11-

14   13 (numerous documents should be "excluded as both irrelevant and more prejudicial than

15   probative"').)  Samsung's proposed order seeks to "exclude[] . . . evidence of copying to the

16   extent such evidence relates to [specified categories], including [specified exhibits]," with no

17   limitation that would allow the targeted exhibits to be admitted for other purposes.  (Dkt. 1283-5

18   at 1.)

19          The exclusion order that Samsung seeks plainly overreaches and conflicts with numerous

20   orders from the 1846 case.  Apple's copying exhibits—*e.g.*, documents that evidence intent to

21   copy Apple or Apple's products generally, intent to copy features covered by the asserted patents

22   (whether practiced by Apple or not), motivation to copy Apple—are highly relevant to numerous

23   issues in the case.  For example, the Court has held copying evidence "highly probative" of

---

24          [5] While Apple will refrain from asking questions that elicit such testimony, and will
prepare its witnesses so that they will not volunteer the fact that features of iPhones and iPads

25   practice unasserted claims, its witnesses must tell the truth if asked that question by Samsung.
For example, Mr. Kocienda testified during deposition that iPhones have practiced unasserted

26   claims.  (*See, e.g.*, Sabri Opp'n Decl. Ex. C (7/16/2013 Kenneth Kocienda Depo. Tr.) at 129:7-
11.)  If Samsung asks whether Apple practices any unasserted claims it will open the door to

27   those facts.

28

1    *Georgia Pacific* factors 8 (commercial success and popularity), 9 (advantages of patented

2    property), and 11 (infringer's use of the invention and value of that use).   (*See, e.g.*, 1846 Dkt.

3    2721 at 2.)  *See also Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116,

4    1123 (S.D.N.Y. 1970) (fact that infringer "deliberately decided to duplicate" patented product

5    favored higher reasonable royalty).

6         The Court also has held copying evidence to be relevant to lost profits.  (*See, e.g.*, 1846

7    Dkt. 2721 at 2 (evidence relevant to both demand for patented product and demand for patented

8    feature); *see also* 1846 Dkt. 2696 at 6-7 (rejecting Samsung's argument that copying evidence

9    was supposedly too general as going to weight, not admissibility).)  Other courts likewise

10   recognize that copying is probative of demand for the patented product (*Panduit* factor 1) and the

11   absence of acceptable non-infringing alternatives (*Panduit* factor 2).  *See, e.g.*, *Minco, Inc. v.*

12   *Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996) (fact that infringer "chose to copy"

13   rather than implement "one of the plentiful, hypothetical, *post hoc*, non-infringing alternatives"

14   supported award of lost profits); *see also Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1367

15   (Fed. Cir. 2013) ("[E]vidence that Samsung's employees believed it to be important to

16   incorporate the patented feature into Samsung's products is certainly relevant to the issue of

17   nexus between the patent and market harm.").

18        Copying evidence also rebuts allegations of obviousness.  (*See* 1846 Dkt. 1903 (Final Jury

19   Instruction No. 33) at 46).  *Apple Inc. v. ITC*, 725 F.3d 1356, 1366 n.4 (Fed. Cir. 2013) (reversing

20   obviousness  finding, in part, because "Apple's evidence of industry copying of the multitouch

21   screen and industry praise of this feature are strong evidence of nexus" required to show

22   secondary considerations of nonobviousness); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1311 (Fed. Cir.

23   2010) ("Copying may indeed be another form of flattering praise for inventive features.");

24   *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1196 (Fed. Cir.

25   2003) ("[E]vidence of copying is relevant to an obviousness determination.").

26        Copying is likewise relevant to induced infringement.  *Global-Tech Appliances, Inc. v.*

27   *SEB S.A.*, ___ U.S. ___, 131 S. Ct. 2060, 2071 (2011) (affirming finding of induced infringement

28   based in part on infringer's "decision to copy all but the cosmetic features of" the patented

1    product).  And it is a relevant factor in establishing subjective willfulness.  (*See id.* at 78 (Final

2    Jury Instruction No. 59).)  *See also DePuy Spine, Inc.*, 567 F.3d  at 1336 (evidence of copying

3    relevant to subjective willfulness "as it may show what the accused infringer knew or should have

4    known about the likelihood of its infringement"); *Liquid Dynamics Corp. v. Vaughan Co.*, 449

5    F.3d 1209, 1225-26 (Fed. Cir. 2006) (affirming jury's finding of willful infringement based on

6    the evidence of copying in the record).

7          The Court rejected Samsung's comparable motion *in limine* to exclude copying

8    documents from the 1846 damages retrial.  (1846 Dkt. 2552 at 2 (denying without prejudice

9    Samsung's motion to exclude copying evidence).) The Court should likewise deny Samsung's

10   current MIL #3, which recycles several of its unsuccessful arguments from the 1846 case.

11   (*Compare* Mot. at 11-12 (arguing for exclusion of documents that discuss copying generally

12   without targeting specific claimed features), *with* 1846 Dkt. 2406 at 2 n.1 (same); Mot. at 11 n.8

13   (arguing for exclusion because copying document involved unaccused Samsung product), *with*

14   1846 Dkt. 2406 at 3 n.2 (same).)  Samsung's motion even targets several of the same documents

15   it moved to exclude in its 1846 retrial motion *in limine* (Dkt. 2406 at 2-3 nn.1-2)—PX146,

16   PX149, and PX202, all of which were ultimately admitted (as PX44, PX40, and PX58,

17   respectively).  Instead, the Court addressed Samsung's arguments on an exhibit-by-exhibit basis

18   at trial, which led to numerous orders overruling Samsung's objections to copying documents, as

19   discussed above.

20         The Court should once again deny Samsung's attempt broadly to exclude copying

21   documents and instead consider Samsung's objections on a document-by-document basis at trial.

22   If the Court decides to addresses now the three categories of copying documents and the specific

23   documents identified in Samsung's MIL #3, the Court should deny Samsung's motion for the

24   reasons stated below.

25         **A.     Documents That Allegedly Relate to Unasserted Claims of Apple's Patents
                    Are Relevant For Other Purposes**

26

27         Samsung's claim that three "copying" documents relate only to unasserted claims is not

28   well-founded.  The three cited documents are relevant to show copying of other features that

1   Apple did in fact practice, as well as to show value or demand of the asserted claims (which is

2   relevant regardless of whether Apple practices them).

3       **PX183 and PX194:**  PX183 is

4

5                   PX194 is

6

7                                   (PX149 at 6.)  Both PX183 and PX194 show

8

9

10

11

12                                   (PX194 at 27, 52;

13   PX183 at 82.)  These documents demonstrate the importance of specific patented features recited

14   in the asserted claims, and are relevant for that purpose whether or not Apple's products practice

15   the asserted claims (*i.e.*, embody all the other features of the asserted claims).[6]

16       **PX138:**  Apple does not intend to use PX138 as evidence of copying.  As Samsung

17   correctly notes, the document is

18                                                     But Samsung's

19   conclusion that the document is therefore irrelevant does not follow.

20                                   , which supports Apple's argument that the universal

21   search functionality of the '959 patent is important.

22

23

24

---

25       [6] Samsung's argument that PX183 should be excluded because it concerns
         is also flawed, and has previously been rejected by the Court.  (*See, e.g.*, 1846 Dkt. 2721

26   at 2 (copying evidence admissible even though it related to unaccused                    .)  A
     Samsung admission of

27

28

1

**B.** **Documents Showing Copying of Patented Features or Motivation to Copy Are Relevant**

Samsung's argument that copying documents are irrelevant unless they discuss the precise limitations of an asserted claim is essentially identical to unsuccessful arguments it made in 1846. (*See* 1846 Dkt. 2669 at 6 (Samsung objected to "crisis of design" exhibit because it did not discuss specific patented features); 1846 Dkt. 2696 at 4 (Court overruled Samsung's objection because "crisis of design" exhibit was "relevant to showing demand for the patented product, the iPhone"); *see also id.* at 6 (Samsung's arguments that copying evidence was not sufficiently specific to Apple's patented features went "to weight, not admissibility").)  As the Court's prior orders show, copying evidence—whether reflecting general copying of Apple's products or specific copying of Apple's patented features—are relevant to disputed issues of fact.

**PX132:** PX132 is an August 4, 2010, Apple presentation to Samsung that emphasized Android's infringement of Apple's patents and asked Samsung to stop copying the iPhone.  The Court previously admitted this exhibit at the 1846 trial (as PX52) over Samsung's "copying" objection because the exhibit established the notice date of the '381 patent.  (*See* Dkt. 2721 at 2.)  Here, PX132 is also relevant to notice because it specifically identified the '647 patent as an example of an Apple patent infringed by Samsung phones running Android and thus established the notice date for that patent.  (PX132 at 15.)  In addition, PX132 is highly relevant to willfulness, particularly in view of other evidence showing that Samsung continued to infringe Apple's patents even after Apple asked Samsung to stop.

**PX107, PX146, PX151, PX197:** Each of these exhibits speaks to the importance of the asserted claim of the '647 patent, which Apple practices.  PX107 is ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

1   

2  ████████████████████████  PX146 is an internal Samsung document showing a detailed

3  side-by-side comparison between a prototype Samsung Galaxy S phone and the iPhone.  The

4  same exhibit was admitted (as PX44) without any limiting instruction at the original 1846 trial.

5  (1846 Dkt. 1889 at 2.)  It was also admitted at the 1846 retrial over Samsung's objection that the

6  exhibit was not sufficiently specific to the '163 patented features at issue there.  (1846 Dkt. 2696

7  at 6.)  PX146, in addition to providing general evidence of copying in support of Apple's

8  damages and willfulness claims, specifically discusses Apple's cross-application linking

9  functionality enabled by the asserted claim of the '647 patent.  (*See* PX146 at 37.)  Similarly,

10  PX151 is ████████████████████████████████████

11  ██████████████████████████████████.  (PX151 at 2,

12  10.)  Samsung's argument that the '647 patent is directed to software rather than user-facing

13  functionality ignores that user-facing functionality is enabled by software, and at most goes to

14  weight, not admissibility.  PX197 is ████████████████████.  Like

15  PX146 and PX151, this exhibit contains a ████████████████████

16  ████████████████████████████████████████

17  █████████████████  (PX197 at 8.)  The exhibit also ████

18  ████████████████████████████████████

19  ████████████  (PX197 at 10.)  Samsung's bald claim that there is no nexus between these

20  exhibits and Apple's patented features is unfounded.

21       **PX149, PX152:**  These exhibits reflect demand for Apple's patented product, the iPhone,

22  and Samsung's desire to emulate and copy the iPhone in order to compete effectively with Apple.

23  PX149 is an internal Samsung email recording a speech given by Samsung's Head of Mobile

24  Division that Samsung was suffering from a "crisis of design" because the difference in user

25  experience between the iPhone and Samsung's phone was "truly that of Heaven and Earth."

26  (PX149 at 5.)  The Court admitted this exhibit at the 1846 trial (as PX40) without any limiting

27  instruction.  (*See* 1846 Dkt. 1889 at 2.)  The Court also admitted this exhibit at the 1846 retrial

28  over Samsung's objection that it lacked any nexus to the patented features.  (*Compare* 1846 Dkt.

1   2669 at 5-6, *with* 1846 Dkt. 2696 at 4.)  Similarly, PX152 is ███████████████████

2   ████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████  Both exhibits reflect

4   copying/demand for Apple's patented iPhone, and are thus relevant at least to Apple's damages

5   claims.  (*See* 1846 Dkt. 2696 at 4 (PX40 "relevant to demand for the patented product, the

6   iPhone").)  They also constitute circumstantial evidence of Samsung's copying of Apple's

7   patented features, as they show Samsung faced immense internal ██████████ "make something

8   like the iPhone" (PX149) and evaluate Samsung's own development plans ██████████████

9   ████████████  (PX152).  They also operate as Samsung admissions of the value of Apple's user

10  interface and user experience.

11       **PX200:**  PX200 speaks directly to the value of the '959 and '721 patented features.

12  PX200 is a ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████.  This

19  exhibit supports an inference that █████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21       **PX147, PX154, PX156, PX202, PX203, PX206, PX214, PX216, PX217:**  Each of these

22  exhibits are relevant to show marketplace dynamics, demand for Apple's patented products, and

23  direct competition between Apple and Samsung—all issues relevant to Apple's damages claims.

24  For example, PX156 is an internal Samsung presentation from February 2012 noting ███████

25  ██████████████████████████████████████████████████████████  (PX156 at

26  8.)  Similarly, PX202, PX203, PX206, PX214, PX216, and PX217 are Samsung documents ███

27  ████████████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████.  (*See, e.g.*, PX202 at

1   3 ("Beat Apple"); PX203 at 1 ("████████"); PX206 at 1 ("████████

2   ████████"); PX214 at 17 ("████████████████████");

3   PX216 at 3 ("████████████████████"); PX217

4   at 47 ("████████████████████").)  The Court

5   admitted PX202 at the original 1846 trial (as PX58 "Beat Apple") without any limiting

6   instruction.  (*See* 1846 Dkt. 1889 at 2.)  The Court also admitted PX202 at the 1846 retrial over

7   Samsung's objection.  (*See* Dkt. 2843 at 1165:22-1166:1.)  Apple will offer these exhibits not

8   only to establish damages, but also to show Samsung's motive to copy Apple's products in order

9   to make Samsung's accused products more enticing to Apple's customers.

10          **PX211:**  PX211 is a March 2011 news article comparing Samsung's 10-inch tablet to the

11  iPad 2, and concluding that Samsung "has realized it has to match Apple's successful design and

12  pricing recipe . . . to capture meaningful market share."  (PX211 at 2.)  This exhibit is relevant to

13  direct competition between Samsung's 10-inch tablets and Apple's iPad.  The exhibit's references

14  to Samsung copying the iPad show market demand for Apple's patented product, the iPad, and

15  Samsung's desire to divert Apple's customers by offering products similar to Apple's products.

16          **PX212:**  PX212 is ████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████, (PX212 at 1.)  Apple will offer

19  this exhibit to show ████████████████████████████████

20  ████████████████████████████████████████

21  ████████████████.

22          **PX218:**  PX218 summarizes ████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████

25  ████████████████████████████.  This evidence

26  is highly relevant to show consumer demand for the '959 patented feature, which is relevant at

27  least to Apple's damages claims.

28

### C.    Copying, Demand, and Competition Documents That Post-Date Introduction of the Accused Features Are Relevant

The Court should deny Samsung's request to exclude copying documents that post-date introduction of the accused features.  The fact that Samsung continued to copy even after commencement of this litigation underscores Samsung's willful infringement of Apple's patents and the value of those patents.  PX156, PX206, and PX217 are relevant to show competition between the parties as well as motivation for Samsung to copy Apple, as discussed above.  PX218 discusses ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████  The relevance of these documents does not depend on publication before introduction of the accused features.

## IV.    SAMSUNG'S MIL #4 (COPYING RE GALAXY NEXUS) SHOULD BE DENIED.

This Court gave clear instructions that "overbroad, sweeping motions [in limine] will be denied."  (Dkt. 1198 (1/23/14 Hearing Tr.) at 13; *see generally id.* at 13-17.)  As the Court explained, motions based on "broad generalizations" force the Court to "take a very broad look"—as opposed to reviewing "an individual document or witness"—and may lead to "an overbroad ruling."  (*Id.* at 14.)  Yet Samsung's MIL #4 is precisely the type of "theme-based" motion (*id.* at 17) the Court proscribed:  *it fails to identify a single document that Samsung contends should be excluded* and instead asks the Court broadly to preclude Apple from "making any allegation that Samsung 'copied' with respect to the Galaxy Nexus."  (Mot. at 14.)  The Court should deny Samsung's overbroad motion and wait to see if Samsung ultimately identifies a document, or specific testimony from a specific witness, that it contends should be excluded.

In the absence of any identification of the evidence that Samsung seeks to exclude, the purpose of Samsung's motion is unclear.  To the extent Samsung intends to suggest that Apple may not rely on evidence that Google copied Apple's protected IP in creating the Android operating system used in Samsung's Galaxy Nexus, or in any other Accused Product, that suggestion is wrong as a matter of law.  As Apple discusses above in its opposition to MIL #3, the Court repeatedly overruled Samsung's 1846-retrial objections to evidence that Samsung itself

1    copied Apple's patented products and features because that evidence is relevant to Apple's lost

2    profits damages claims and reasonable royalties.  The Court's rulings that evidence of copying

3    was "highly probative" of *Georgia Pacific* factors 8 (commercial success and popularity), 9

4    (advantages of patented property), and 11 (infringer's use of the invention and value of that use)

5    (*see, e.g.*, 1846 Dkt. 2721 at 2), apply here, whether the copying was done by Samsung itself, or

6    by Google when it created the infringing software that Samsung used.  (*See, e.g.*, 1846 Dkt. 2696

7    at 6.)  As Apple also explains above, copying evidence is also probative of non-obviousness.

8    Again, the evidence is just as probative whether it was Samsung or Google who created the

9    infringing software.

10   **V.      SAMSUNG'S MIL #5 (TOTAL REVENUES/PROFITS) SHOULD BE DENIED**

11          Apple should not be precluded from presenting evidence regarding the total revenue and

12   profits earned from Samsung's sale of the accused products.

13          ***First***, Samsung does not dispute that, under the damages theories presented in this case,

14   information regarding Samsung's total revenues and profits is relevant to determining lost profits

15   and reasonable royalty damages.  Indeed, Samsung concedes in its motion that this information is

16   relevant to Mr. Vellturo's analysis of the first *Panduit* factor (demand for the patented product)

17   and *Georgia-Pacific* factors 8 and 11(the established profitability and commercial success of the

18   patented product and the extent to which the infringer has used the invention).  (Mot. at 17:23-

19   18:8; *see also* Sabri Opp'n Decl. Ex. E (Kearl Expert Rpt.) at 20 (Samsung's damages expert

20   admitting that total revenue and profits are "potentially relevant data" in determining an

21   appropriate royalty for alleged infringement in this matter).)

22          Samsung suggests that information about its total revenues and profits need not be

23   presented to the jury because Samsung does not dispute "that significant demand exists for both

24   parties' products" and because Mr. Vellturo's ultimate royalty number allegedly does not depend

25   on any specific *Georgia-Pacific* factor.  (Mot. at 18:1-5.)  Even if both were true (which they are

26   not) [7], Apple will still be required to introduce sufficient evidence at trial to support its damages

27          [7] Samsung's claim that "Apple has admitted . . . that Dr. Vellturo's *Georgia-Pacific*
     analysis has no impact on his proffered royalty rates" is misleading.  (Dkt. 1306 at 18.)  Dr.

28
     (Footnote continues on next page.)

calculations.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)

("The burden of proving damages falls on the patentee.").  The Court should not preclude Apple

from introducing evidence that even Samsung concedes is relevant to these calculations.

*Second*, Samsung itself has disclosed that it will rely on its total revenues and profits.

Samsung's damages expert, Dr. Chevalier, relies heavily on the profits of the accused Samsung

products to estimate what she believes is appropriate compensation for Samsung's infringement.

Specifically, one of the main approaches Dr. Chevalier uses in her reasonable royalty analysis is

the Income Approach.  (Dkt. 831-3 (Judy Chevalier Expert Rpt.) ¶ 302).)  Specifically, Dr.

Chevalier employed an Incremental Income/Analytical Approach.  According to Dr. Chevalier,

the "*first component* of this analysis is identification of *the profits for the products* that

incorporate the patented technology at issue." (*Id.* ¶ 336 (emphasis added).)  Samsung should not

be permitted to present a theory to the jury based on its total profits while simultaneously seeking

to prohibit Apple from doing the same (or cross-examining Dr. Chevalier on her use of that

input).

*Third*, Samsung has not established that the risk of undue prejudice or jury confusion

outweighs the relevance of this information to the damages theories in this case.  Samsung

contends that evidence of the total revenue and profit earned from sales of its accused products is

*per se* prejudicial and can never be used outside of the entire market value rule.  (Mot. at 16.)  But

none of the cases cited by Samsung stands for such a sweeping proposition.  To the contrary,

*Uniloc* held that "implying a relationship between the entire market value of the accused products

and the patent," when none exists, is improper.  632 F.3d at 1320; *see also LaserDynamics Inc. v.

Quanta Computers, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012).  But nothing in Samsung's motion

establishes that is what Apple intends to do.  Indeed, the Court has now observed two trials

---

(Footnote continued from previous page.)

Vellturo explained that several factors, including factor 8, increased the estimated reasonable
royalty, but that he applied a "conservative limit" to his reasonable royalty rate based on his
consideration of Apple's minimum willingness to accept and Samsung's maximum willingness to
pay.  (Dkt. 1156-03 (Christopher Vellturo Expert Rpt. ) ¶¶ 483-484.)

1    involving the parties and is aware of the appropriate context in which Apple has previously used

2    evidence of Samsung's total revenues and profits.  Those references were few and scattered and

3    the Court denied Samsung's post-trial motion for a new trial based on them.  Further, as discussed

4    above, Samsung has made clear that it intends to use its own profit margins in an attempt to make

5    its damages calculation seem reasonable.  Samsung did the very same thing during the prior trials.

6    (*See, e.g.*, 1846 Dkt. 2844 at 1360:14-1361:3 (Samsung's closing argument at the re-trial arguing

7    that its low profit margins demonstrated the reasonableness of its damages calculations).)  If

8    Samsung injects its total revenues and profits into the case as it has done before and has signaled

9    it intends to do again, then it cannot credibly claim prejudice.

## VI.    SAMSUNG'S MIL #6 (PROFITS ALREADY AWARDED) SHOULD BE DENIED.

11        Samsung's MIL #6 is based on a misstatement of the law.  There is no bar against two

12    judgments that award damages (including lost profits or infringer's profits) based on the same

13    infringing sale, only against ***collecting*** on both of those judgments.  For example, a patentee is

14    entitled to hold direct and indirect infringers jointly and severally liable for the same

15    infringement, and the patentee is barred only from ***collecting*** more than once for it.  *Aro Mfg. Co.*

16    *v. Convertible Top Replacement Co.*, 377 U.S. 476, 512 (1964).

17        The Federal Circuit held in *Shockley v. Arcan, Inc*., 248 F.3d 1349 (Fed. Cir 2001):

> [O]ther courts, including the Supreme Court, have held that parties that make and sell an infringing device are joint tortfeasors with parties that purchase an infringing device for use or resale.  *Birdsell v. Shaliol,* 112 U.S. 485, 488-89, 5 S.Ct. 244, 28 L.Ed. 768 (1884); *Dowagiac Mfg. Co. v. Deere & Webber Co., 284 F. 331, 337 (8th Cir.1922).  Each joint tortfeasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee. *Birdsell,* at 488-89; *Dowagiac* at 337.  Entry of judgment against one infringer does not automatically release other related infringers. *Sherman, Clay & Co. v. Searchlight Horn Co.,* 225 F. 497, 500 (9th Cir.1915) ("There may be as many causes of action as there are joint tortfeasors, and as many recoveries, but there can only be one satisfaction.").  This court agrees with and adopts this rule.

25    *Id.* at 1364.

1    The rule against multiple satisfactions does not become applicable until part or all of the

2    obligation is satisfied.[8]  None of the cases Samsung cites holds to the contrary.  In *Catalina*

3    *Lighting*, the Federal Circuit held that "once [the patentee] *receives* profits under § 289 for each

4    sale, [the patentee] is not entitled to a further recovery from the same sale."  *Catalina Lighting,*

5    *Inc. v. Lamps Plus, Inc*., 295 F.3d 1277, 1291 (Fed Cir. 2002) (emphasis added).  *Aero Products*

6    *International, Inc. v. Intex Recreation Corp*., 466 F.3d 1000 (Fed. Cir. 2006), involved a prior

7    judgment for $2.85 million that the defendant had already paid.  466 F.3d at 1018-20.

8    If and when Samsung satisfies a judgment by ***paying*** Apple, the burden will be on

9    Samsung, as the judgment debtor, to establish that an additional payment would be a double

10   recovery.  *Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. KG v. Plebaniak*, No. 11-10268-

11   PBS, 2013 U.S. Dist. LEXIS 46906, at *25-29 (D. Mass. Mar. 18, 2013) (analyzing Rule 60(b)(5)

12   in deciding whether to credit settling co-defendants' payments in a copyright case).  But there is

13   no basis for Samsung to object today to the possibility that Apple will obtain a judgment

14   awarding damages for all sales that infringe the patents asserted in this case.  *A fortiori*, the

15   evidence of that infringement cannot be excluded on this basis.

16   To be clear, although unnecessary to resolve this motion, Apple understands and intends

17   to comply with the law preventing double recovery of judgments.  In fact, Apple's Proposed Jury

18   Verdict Form, submitted concurrently with this opposition, includes a question requesting

19   responses sufficient to avoid any future issues based on a possible overlap with the award of

20   profits for the same sales in the 1846 case.  The only infringing sales that were part of the verdict

21   in that case and are also among the sales Apple accuses in this case are sales of Galaxy II phones

22   (Galaxy S II, Galaxy S II Epic 4G, and Galaxy S II Skyrocket), so those phones are the subject of

23

---

24   [8]   *See Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 272 (7th Cir. 1988)
     (although plaintiff "is now armed with two judgments . . . the law is clear that Moseley is entitled
25   to but one satisfaction.  Thus, we conclude that when Moseley executes on the judgment against
     Ellis . . . and collects the $32,000, Moseley will be precluded from a double recovery since
26   Rossini could seek relief from the default judgment against him under Rule 60(b)(5) Fed. R. Civ.
     Proc., allowing for relief where the judgment has been 'satisfied.' Moseley will be limited to one
27   satisfaction, and thus an injustice will not result from our affirmance.").

28

1  a separate question (Question 11.b.) in Apple's Proposed Jury Verdict Form.[9]  If the jury in this

2  case states separately the amounts of damages for those products for all relevant time periods, it

3  will be clear in the future what total recovery amount Samsung will be required to pay without a

4  possibility of double recovery.

5      Because Samsung has not satisfied the judgment from the 1846 case (and presently is

6  taking the position that it owes Apple *nothing* on that judgment), there is no justification for the

7  relief that Samsung seeks.  Moreover, granting Samsung's motion would create grounds for a

8  retrial of this case if the judgment of infringement in the 1846 for the overlapping sales is not

9  fully affirmed.  Denial of Samsung's motion, and use of the jury verdict form Apple suggests,

10  would avoid this risk of another retrial on damages.

11  **VII.    SAMSUNG'S MIL #7 (SANCTIONS AGAINST SAMSUNG) SHOULD BE
12           DENIED**

13      In its January 29, 2014, Order Granting Motion for Sanctions, the Court found that

14  "Samsung and its outside counsel made a conscious decision to set up a system" that would allow

15  widespread violations of the Protective Order to ensue from a "predictable" mistake.  (Dkt. 2935

16  at 13.)  The Court further found Samsung's "failure to institute sufficient safeguards" to prevent

17  Protective Order violations to be "strategic" and "willful," and that "Samsung is as culpable for

18  this debacle as Quinn Emanuel."  (*Id.* at 1, 15.)  While the Court ultimately concluded that "there

19  has been insufficient evidence that this failure to notify or misuse ultimately implicated any issue

20  in this or any other litigation or negotiation," the Court found that Samsung "made use of"

21

22      [9] Apple's proposed Question 11.b. asks for separate damages amounts for Galaxy S II
23  phones sold in three time periods:  (1) Damages for phones sold on or before June 30, 2012,
     might overlap, because damages for Galaxy S II phones sold in that time period were included in
24  the 1846 verdict.  By obtaining a separate damages amount for that time period, Apple will be
     able to collect only once, if the jury in this action awards damages in this category and if the jury
25  awards in the 1846 case and this case are both affirmed.  (2) Damages awarded in this case for the
     period July 1, 2012 through August 24, 2012 cannot be an overlap with the damages in the 1846
26  case.  (3)  Damages for the period from August 25, 2012 forward might overlap, depending on
     when the Court awards supplemental damages in the 1846 case, whether the jury awards damages
27  in this case for Galaxy S II phone in the same time period, and whether both are affirmed on
     appeal.

28

1    Apple's confidential information, and that Samsung's explanations of non-use were "tenuous"

2    and "shaky."[10]  (*Id.* at 11, 18.)

3            While Apple believes that the sanctions ruling is relevant to whether this is an exceptional

4    case under 35 U.S.C. § 285, Apple does not intend to present evidence or argument to the jury

5    regarding Samsung's protective order violations, unless Samsung opens the door.

6

7    Dated:  February 25, 2014                    MORRISON & FOERSTER LLP

8

9                                        By:    */s/ Rachel Krevans*
                                                RACHEL KREVANS

10                                              Attorneys for Plaintiff and
                                                Counterclaim-Defendant
11                                              APPLE INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─────────────────────

26        [10]  The Court also determined that Samsung had waived privilege with respect to the "vast
     majority of the documents cited" in the January 29, 2014 Order.  Samsung still refuses to produce
27   these documents to Apple.

28