DANIEL T. SHVODIAN, CSB No. 184576
DSvodian@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304
Telephone:  650.838.4300
Facsimile:   650.838.4350

Attorneys for Non-Party
*INTEL CORPORATION*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 12-cv-00630-LHK (PSG) <br><br> **NON-PARTY INTEL'S DECLARATION IN SUPPORT OF SAMSUNG'S ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL (DKT #1337)** |

Samsung recently filed an administrative motion (Dkt. #1337) to file under seal numerous exhibits, including two that contain Intel highly confidential information – Exhibits 19 and 29. Given the commercially sensitive nature of the highly confidential material contained in those exhibits, Intel supports Samsung's request to seal Exhibits 19 and 29.

### Exhibit 19

Exhibit 19 comprises invoices from Intel Americas, Inc. to Apple Computer, Inc.  Those invoices contain confidential pricing information between Intel and Apple.

In *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214 (2013), the Federal Circuit addressed the issue of sealing financial information, such as the type of pricing information contained in invoices. The court began by discussing factors that should be considered in determining whether documents should be filed under seal and stated that "[o]ne factor that weighs in favor of sealing documents is when the release of the documents will cause competitive harm to a business." *Id*. at 1221. The court then noted that in *In re Electronic Arts*, 298 F. App'x 568, 569 (9th Cir. 2008), "the Ninth Circuit held that a district court had abused its discretion in refusing to seal 'pricing terms, royalty rates, and guaranteed minimum payment terms' found in a license agreement because such information 'plainly falls within the definition of 'trade secrets.'"" *Apple*, 727 F.3d at 1222.

The Federal Circuit also noted that the Ninth Circuit has "carved out an exception to the presumption of access to judicial records" for "judicial records filed under seal when attached to a non-dispositive motion." *Id.*, quoting *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (internal quotation marks omitted). "Under the exception, the usual presumption of the public's right of access is rebutted. Thus, a particularized showing of 'good cause' under Federal Rule of Civil Procedure 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions." *Apple*, 727 F.3d at 1222, quoting *Midland*, 686 F.3d at 1119. The court explained that this is because the public has less need to access documents in support of a non-dispositive motion. *Apple*, 727 F.3d at 1222.

Here, the invoices at issue were submitted in an opposition to a motion *in limine* – a non-dispositive motion. And Intel could suffer competitive commercial harm if its confidential pricing information with Apple were to be made public to its other customers or to its competitors. Therefore, Intel requests that the all of the financial terms and numbers (unit price, extension, sub-total, second sub-total, and total amount due) in Exhibit 19 be redacted or that the entire exhibit be maintained under seal.

**Exhibit 29**

Exhibit 29 consists of two confidential Intel documents. The first document is Intel's confidential "X-Gold/X-Gold 616 Data Sheet" (the "X-Gold Data Sheet"). The second document is Intel's confidential "SMARTi UE/UE+ Preliminary Integration Manual" (the "SMARTi Manual"). Both of these documents bear the notation "Confidential – Distribution with NDA" or "Confidential – Distribution with NDA by Marketing," notations that the documents originally bore and that were not added just for purposes of this litigation.

The X-Gold Data Sheet and SMARTi Manual are Intel engineering and design documents. The documents contain detailed design and operational information regarding Intel Mobile Communication's X-Gold 616 baseband processor and Intel Mobile Communication's SMARTi transceiver chip. As detailed in the accompanying affidavit of Dr. Josef Hausner, Division Vice President of Intel Mobile Communications GmbH, which designs the Intel products used by Apple, the Intel product design information is kept confidential (Hausner Decl. at ¶¶ 8-16 (Attachment A hereto)), and is of tremendous value to Intel (Hausner Decl. at ¶¶ 17-18). Therefore, Intel has good cause to request that the details of these documents be kept under seal.

Courts in this circuit have often found that a party's interest in securing non-public engineering designs and other proprietary trade secrets constitutes "good cause" for sealing court records. *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, Case No. 11–CV–05973 PSG, 2013 WL 1366046, at 1 (N.D. Cal. Apr. 3, 2013). While Exhibit 29 does not relate to a dispositive motion, courts have also repeatedly held that the protection of the confidentiality of engineering and design documents constitutes a "compelling reason" when that heightened standard has been applied in the context of evidence attached to dispositive motions. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (compelling reason may be found in avoiding release of trade secrets); *Network Appliance, Inc. v. Sun Microsys., Inc.*, Case No. C-07-06053 EDL, 2010 WL 841274 (N.D. Cal. Mar. 10, 2010) (compelling reason to seal documents containing source code [at *5], detailed descriptions of source code [*5] and other "proprietary technical information" [at *2]); *Dish Network, LLC v. Sonicview USA, Inc.*, Case No. 09CV1553-

1  L (NLS), 2009 WL 2579052, at *1 (S.D. Cal. Aug. 20, 2009); *Upek, Inc. v. Authentec, Inc.*, Case No. C 10-00424 JF, 2010 WL 1980189, at *4 (N.D. Cal. May 17, 2010). This Court has previously found compelling reasons to seal technical information pertaining to Intel baseband chip designs in the litigation between Apple and Samsung tried last year. *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846 (LHK), Order Granting-in-Part and Denying-in-Part Motions to Seal (Dkt. #1649) at 26-28 (N.D. Cal. Aug. 9, 2012) and Order re: Intel's Request for Clarification (Dkt. #1959) at 2-3 (N.D. Cal. Sept. 7, 2012).

The X-Gold Data Sheet and SMARTi Manual that comprise Exhibit 29 specify various aspects of Intel's confidential product designs, including circuit designs, timing diagrams, and performance specifications. Intel derives significant commercial value from the confidentiality of its chip designs. (Hausner Decl. at ¶¶ 11-12, 16-18.) Intel can reasonably anticipate that disclosure of the X-Gold Data Sheet and SMARTi Manual could cause Intel significant commercial harm. Intel's interest in avoiding that harm is more than sufficient to meet the good cause standard for sealing this information.

Given that the Data Sheet and Manual contain proprietary design information throughout the two documents, Intel respectfully requests the two Intel documents in Exhibit 29 be sealed in their entirety. Good cause for this request has been demonstrated in the evidence from Dr. Hausner that Intel will be significantly harmed if it cannot maintain its trade secrets and if its competitors have free access to the fruits of Intel's R&D investment.

Dated: March 3, 2014                      Respectfully submitted,

By:   */s/ Daniel T. Shvodian*
         Daniel T. Shvodian

*Counsel for Non-Party Intel Corporation*

# EXHIBIT A

K 2223/2013

1

Form 59
Rule 29.02(1)

# Affidavit

No.   NSD 315 of 2013

Federal Court of Australia

District Registry: New South Wales

Division: General

**Samsung Electronics Co. Limited and Another**

Applicants / Cross-Respondents

**Apple Inc. and Another**

Respondents / Cross-Claimants

| Affidavit of: | Prof. Dr. Josef Hausner |
|---|---|
| Address: | Neubiberg, Germany |
| Occupation: | Division Vice President, Intel Mobile Communications GmbH |
| Date: | Aug 29, 2013 |

## Contents

| Document number | Details | Paragraph | Page |
|---|---|---|---|
| 1 | Affidavit of Josef Hausner in support of the interlocutory application to be filed by Apple for a suppression order pursuant to section 37AF(1)(b) of the *Federal Court Act 1976* (Cth) affirmed on Aug 29, 2013 | n/a | 1 |
| 2 | Annexure "X", being copy of Interlocutory Application including Attachment A | 4 | |

On Aug 29, 2013, I, Prof. Dr. Josef Hausner of Neubiberg, Germany, Division Vice President, do solemnly, sincerely and truly declare and affirm:

1. I am employed by Intel Mobile Communications GmbH ("IMC") at Neubiberg, Germany. IMC is a wholly owned subsidiary of Intel Corp. ("Intel"). My title is Division Vice President, and I am responsible for wireless architecture in IMC's Wireless System Engineering Group. I received a Dipl.-Ing. (Diploma of Engineering) degree from

---

Filed on behalf of the Respondents / Cross-Claimants
Prepared by Sue Gilchrist
Herbert Smith Freehills
Tel   +61 2 9225 5000                                    Fax   +61 2 9322 4000
Email   sue.gilchrist@hsf.com                            Ref   8201 9565
**Address for service**   MLC Centre
                         Martin Place
                         SYDNEY  NSW  2000                              [Form approved 01/08/2011]

Herbert Smith Freehills \003839883

Technical University of Munich in 1986 and a Dr.-Ing. (Doctor of Engineering) degree from Technical University of Munich in 1991. I began working at the Wireless Solutions business unit at Infineon Technologies AG ("Infineon") in 2006. Intel acquired Infineon Technologies AG Wireless Solutions (WLS) business, which became known as IMC. I am authorized to make this affirmation on behalf of IMC.

2. I make this affidavit from my own knowledge, unless stated otherwise. Where I refer in this affidavit to being informed of matters, I believe those matters to be true.

3. Nothing stated in this affidavit is intended expressly or impliedly to waive any claim of attorney-client privilege or legal professional privilege.

4. I understand that Apple is to file an application for a suppression order protecting certain confidential information pertaining to these proceedings, and I affirm this affidavit in support of that application. Specifically, I am informed that Apple will file an Interlocutory Application, which I understand to be the document annexed to this affidavit as **Annexure X**. I am informed that this affidavit relates to an order sought to prohibit disclosure of the Intel Highly Confidential Material / Intel Highly Confidential Source Code (hereinafter 'Intel Confidential Material') except to persons who have provided the confidentiality undertaking described in paragraph 6 of this affidavit, for a specified period of time.

**Confidentiality of Intel Source Code Material / Intel Highly Confidential Source Code**

5. The Intel Confidential Material listed in Annexure C1 to Attachment A to the Interlocutory Application at Annexure X includes source code ("Intel Source Code Material") owned by IMC and required for the manufacture and operation of digital baseband processors that are designed, developed and sold by IMC, as well as highly confidential information about the design and operation of those baseband processors. Both of these categories of information are considered by IMC to be highly confidential to IMC.

6. I understand that, for these proceedings, the Intel Confidential Material is the subject of a strict confidentiality undertaking that has been entered into by a limited number of legal representatives of both Apple and Samsung and a limited number of expert witnesses who have given expert testimony during the course of the proceeding, and that a copy of the relevant confidentiality undertaking is reproduced at Annexure C2 to Attachment A to the Short Minutes of Order.

7. I understand that, for these proceedings, the Intel Confidential Material has been made available by IMC to Apple and Samsung only on the basis of a confidentiality undertaking agreed between Apple, Samsung, and IMC. IMC would not have voluntarily

3

provided access to the Intel Confidential Material for the purposes of these proceedings if an agreement had not been able to be reached with Apple and Samsung to preserve the confidentiality of this material. I understand that this undertaking obliges Apple and Samsung (and any persons given access to the Intel Confidential Material) to treat the Intel Confidential Material according to the conditions set out in the undertaking. I understand that IMC's provision of the Intel Confidential Material was also premised on an understanding that the parties would seek court orders to further protect the confidentiality of the Intel Confidential Material.

8. The Intel Source Code Material consists of two types of source code - firmware source code and hardware description language ("HDL") source code.

9. Firmware is a type of software that is designed to control the operation of IMC's modem hardware and to implement various protocol functions in the modem. IMC does not typically provide the source code for its firmware to customers, but instead provides it only in binary executable form. IMC maintains its firmware source code on internal servers and implements network access security measures to prevent unauthorized access to this code.

10. HDL source code is code written in a specialized computer language used to describe the structure, design and operation of electronic circuits, and most commonly, digital logic circuits. HDL source code enables a precise, formal description of an electronic circuit that allows for the automated analysis, simulation, and simulated testing of an electronic circuit. It also allows for the compilation of an HDL program into a lower level specification of physical electronic components, such as the set of masks used to create an integrated circuit. IMC does not typically provide the HDL source to customers. IMC maintains its HDL source code on internal servers and implements network access security measures to prevent unauthorized access to this code.

11. The information contained in the Intel Source Code Material (both the firmware source code and the HDL source code) is highly confidential and commercially sensitive to Intel. IMC's source code is extremely valuable to Intel because it represents a significant investment and contains numerous trade secrets that provide a competitive advantage to Intel. Intel would be seriously harmed if potential competitors could shortcut their development efforts by copying Intel's source code or learning about the substance of that code through the documents and testimony produced in this litigation.

12. The Intel Source Code Material also provides Intel with a competitive advantage. The 3GPP standards, which are publicly available, generally describe how mobile devices behave when interoperating with a wireless network. The standards, however, do not

always specify how that behaviour must be implemented; so each manufacturer generally creates a unique implementation using its trade secrets to optimize certain performance aspects. For example, a hardware or firmware implementation could optimize speed over power consumption, or vice-versa. Given the numerous trade secrets embedded in the Intel Source Code Materials, public disclosure of that information would permit competitors to copy Intel's designs, along with key features that give Intel a competitive advantage.

13. Intel does not disclose the design of its hardware or firmware to its customers or the public. While Intel provides some technical documentation to its customers, these documents are disclosed only after the customer has signed a non-disclosure agreement (NDA). In addition, the type of documentation that Intel provides to its customers discloses only enough information to configure and use the Intel products. It does not detail the firmware or circuitry implementation.

14. The other documents contained in the Intel Confidential Information are excerpts from the "X-GOLD 61x Product Specification" (593-DC2961-593DOC004487). The X-GOLD 61x Product Specification contains detailed descriptions of hardware and software components of Intel's X-GOLD 61x product. This document is intended for internal use by Intel and contains confidential and competitively-sensitive Intel trade secrets.

15. IMC's product development process can be classified into two phases. First, IMC system engineers develop a detailed system design that describes how each function of the product will be implemented in hardware and software components. This model is tested and when the system engineers are satisfied with the performance of their system design, it is set out in complete detail in a document such as the X-GOLD 61x Product Specification. The Product Specification document describes the various hardware and software modules that make up the system, specifies the algorithms used by each module and may address other implementation aspects of a module when these might impact system performance. The X-GOLD 61x Product Specification contains over 1500 pages of such detail. In the second phase of IMC's development process, IMC engineers design the hardware and software to implement the details of the system design, which may include writing HDL code to implement the modem hardware or source code for the system software.

16. The system design sets the primary performance characteristics of a product and is an important factor in the success of the resulting product. Disclosure of the Product Specification, or the information contained therein, would be extremely damaging to Intel. Disclosure would enable competitors to identify and copy unique and

5

advantageous features of IMC's system design for the X-GOLD 61x or permit a competitor to build a copycat product based on Intel's trade secrets. This document is designed primarily for use internally at Intel, and distribution outside the company is restricted. When aspects of the detailed system design for IMC's modems need to be shared with a customer, Intel requires the customer to enter into a Non-Disclosure Agreement (NDA) to protect the information revealed.

17. As a result of the highly confidential nature of the Intel Confidential Material as outlined above, public disclosure of this information would likely cause significant commercial and competitive detriment to Intel.

18. The confidential nature of the Intel Source Code Material is likely to continue indefinitely, and at least for the next 15 years. This is because the lifecycle of cellular technology is usually at least 15 years, as a chipset may on initial launch be used in high-end products with the latest technology, but then as technology continues to progress, the chipset may continue to be used in less expensive models that do not offer the latest technology. A chipset may also be used by a manufacturer across numerous generations of products; may be used by different manufacturers; and may be used at different times in products of different standards or price points. Further, the design information and the source code is often used by IMC in the design and development of future products (including as a point of reference or starting point).

**AFFIRMED** at  Munich, 28 August 2013
Signature of deponent

Name of witness        Wing Yan Mok
Address of witness     Reichenbachstrasse 28, Munich 80469
Capacity of witness    US Attorney at law

Signature of witness

URNr.   K 2223/2013

I, the undersigned Notary Jens Kirchner of Munich, Germany, hereby certify the authenticity of the foregoing true signature executed in my presence by

Mr. Dr. Josef **Hausner**,
born 26 February 1961,
with address in D-82110 Germering, Schützenstraße 7,
with business address D-85579 Neubiberg, Am Campeon 10.12,
personally known to me.

Further I, the undersigned Notary Jens Kirchner, hereby certify the authenticity of the foregoing true signature executed in my presence by

Mrs. Wing Yan **Mok**,
born 7 December 1974,
with address D-80469 Munich, Reichenbachstraße 28,
personally known to me,
as Witness.

Munich, 29 August 2013

Jens Kirchner
Notary

H:\Gesellschaften\InfineonAG_ki\Intel_k_ku\Hausner_Mok_UB_engl.rtf

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 3, 2014, a true and correct copy of the foregoing was served on the parties via electronic mail pursuant to Civil Local Rule 5-1(h).

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Daniel T. Shvodian*
　　　　　　　　　　　　　　　　　　　　　　　　　　Daniel T. Shvodian