1

2     [COUNSEL LISTED ON SIGNATURE
      PAGE]
3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12    APPLE INC.,                          Case No.    12-cv-00630 LHK (PSG)

13                   Plaintiff,            **JOINT PRETRIAL STATEMENT
                                           AND PROPOSED ORDER**
14           v.
                                           Date:    March 5, 2014
15    SAMSUNG ELECTRONICS CO., LTD., a     Time:    2:00 p.m.
      Korean business entity; SAMSUNG      Place:   Courtroom 4, 5th Floor
16    ELECTRONICS AMERICA, INC., a New York Judge:  Hon. Lucy H. Koh
      corporation; SAMSUNG
17    TELECOMMUNICATIONS AMERICA, LLC, a
      Delaware limited liability company,
18
                     Defendants.
19

20

21

22

23

24

25

26

27

28

Pursuant to the Guidelines for Final Pretrial Conference in Jury Trials, the parties submit the following Joint Proposed Pretrial Statement and Order.

## I.    SUBSTANCE OF THE ACTION

The parties to this action are Apple Inc. ("Apple"), a California corporation having its principal place of business in Cupertino, California; Samsung Electronics Co., Ltd., a Korean corporation having its principal place of business in Suwon-City, Korea; Samsung Telecommunications America, LLC, a Delaware corporation having its corporate headquarters in Richardson, Texas; and Samsung Electronics America, Inc., a New York corporation having its principal place of business in Ridgefield Park, New Jersey (collectively, "Samsung").

Apple asserts claims against Samsung for patent infringement relating to certain Samsung products. Samsung seeks declaratory judgment as to Apple's claims and asserts counterclaims of patent infringement relating to certain Apple products. Apple seeks declaratory judgment as to Samsung's counterclaims and asserts counterclaims of breach of contract associated with Samsung's assertion of patents that Samsung has declared to be essential to the UMTS wireless telecommunication standard. In addition, Apple seeks a declaration that it has the irrevocable right to a license on fair, reasonable and non-discriminatory ("FRAND") terms to the two Samsung declared essential patents at issue in this Action (the '087 and '596 patents, together the "Asserted Declared Essential Patents").

The operative pleadings are Apple's Amended Complaint (Dkt. No. 261), Samsung's Answer to Amended Complaint and Counterclaims (Dkt. No. 264), Apple's Amended Answer to Counterclaims and Counterclaims in Reply (Dkt. No. 262), and Samsung's Answer to Apple's Amended Counterclaims in Reply (Dkt. No. 263).

At the Court's direction, the parties have reduced the claims they will assert at trial. Apple's patent claims remaining for trial ("Apple's Patents In Suit") are:

**A.    Apple's Asserted Patent Claims**

1.    U.S. Patent No. 5,946,647 – Claim 9

2.    U.S. Patent No. 6,847,959 – Claim 25

3.    U.S. Patent No. 7,761,414 – Claim 20

4.    U.S. Patent No. 8,046,721 – Claim 8

5.    U.S. Patent No. 8,074,172 – Claim 18

**B.    Products Accused By Apple**

1.    Admire: '647, '959, '414, '721, '172

2.    Galaxy Nexus: '647, '959, '414, '721, '172

3.    Galaxy Note: '647, '959, '414, '172

4.    Galaxy Note II: '647, '959, '414

5.    Galaxy S II: '647, '959, '414, '721, '172

6.    Galaxy S II Epic 4G Touch: '647, '959, '414, '721, '172

7.    Galaxy S II Skyrocket: '647, '959, '414, '721, '172

8.    Galaxy S III: '647, '959, '414

9.    Galaxy Tab 2 10.1: '647, '959, '414

10.   Stratosphere: '647, '959, '414, '721, '172

Samsung's patent claims remaining for trial ("Samsung's Patents In Suit") are :

a.    U.S. Patent No. 7,756,087 – Claim 10.

b.    U.S. Patent No. 7,551,596 – Claim 13.

c.    U.S. Patent No. 6,226,449 – Claim 27.

d.    U.S. Patent No. 5,579,239 – Claims 1 and 15.

Samsung has accused the following products of infringement:

1.    iPhone 4

2.    iPhone 4S

3.    iPhone 5

4.    iPad 2

5.    iPad 3

6.    iPad 4

7.    iPad mini

8.     iPod touch (5th generation)

9.     iPod touch (4th generation)

10.    MacBook Pro

## II.     RELIEF SOUGHT

Both parties seek damages, enhanced damages, declaratory, and injunctive relief.  Apple also seeks preliminary injunctive relief.

**Apple seeks the following specific relief**:

1.     A judgment that Samsung has infringed each of Apple's asserted patents;

2.     An order and judgment enjoining Samsung and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of infringement of Apple's asserted patents, including by making, using, offering to sell, selling within the United States, or importing into the United States any of the accused products that are found to infringe or any other product not more than colorably different from a product found to infringe as to a feature found to infringe;

3.     A judgment awarding Apple all damages adequate to compensate for Samsung's infringement of Apple's asserted patents, and in no event less than a reasonable royalty for Samsung's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

4.     A judgment awarding Apple all damages, including treble damages, based on any infringement found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest and supplemental damages for infringing sales occurring after trial or the last reported sale by Samsung;

5.      A judgment that each of the asserted claims of Apple's asserted patents is valid and enforceable;

6.      Costs of suit and reasonable attorneys' fees, including attorneys' fees pursuant to 35 U.S.C. § 285;

7.      Any other remedy to which Apple may be entitled, including all remedies provided for in 35 U.SC. §§ 284, and 285 and under any other law;

8.      A judgment that Samsung has breached its FRAND obligations to Apple, as set forth in the ETSI IPR Policy and Samsung's declarations thereunder, by failing to (i) offer Apple FRAND license terms for the Asserted Declared Essential Patents; and/or (ii) timely disclose IPR that it later declared to be essential to UMTS;

9.      A judgment declaring that Samsung's Asserted Declared Essential Patents are unenforceable under the doctrines of waiver, equitable estoppel, and/or unclean hands by virtue of standards-related misconduct including (i) Samsung's breach of its FRAND commitments and/or (ii) Samsung's breach of its disclosure obligations at ETSI;

10.     A judgment declaring that, to the extent any of the alleged inventions described in and allegedly covered by the Asserted Declared Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple has the irrevocable right to be licensed on FRAND terms under those patents;

11.     A judgment declaring that, to the extent any of the alleged inventions described in and allegedly covered by the Asserted Declared Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers in baseband processor components supplied by Intel or Qualcomm, Samsung's rights with respect to the Asserted Declared Essential Patents are exhausted, and as such, the Asserted Declared Essential Patents are not infringed by the Apple accused products;

12.     A declaration that Apple has not infringed, and is not infringing, each of the Samsung asserted patents; and

13. A declaration that one or more of the claims of each of the Samsung asserted patents are invalid, void and/or unenforceable against Apple.

**Apple's further separate statement regarding relief requested:**

Apple's itemization of witnesses, documents, or other evidentiary material to be presented concerning the amount of damages is attached as Exhibit 1.

<u>**Samsung seeks the following specific relief:**</u>

1. That the Court dismiss with prejudice any and all claims of Apple's Complaint and order that Apple take nothing as a result of the Complaint and that all of Apple's prayers for relief are denied;

2. That the Court find and declare, and enter judgment, in favor of the Samsung Counterclaimants and against Apple that the Samsung Counterclaimants have not infringed any of the Apple Patents In Suit;

3. That the Court find and declare, and enter judgment, in favor of the Samsung Counterclaimants and against Apple that each and every claim of the Apple Patents In Suit is invalid;

4. That this case be declared "exceptional" under 35 U.S.C. § 285 and that the Samsung Counterclaimants be awarded their attorneys' fees, expenses, and costs incurred in this action;

5. That Apple be ordered to pay all costs associated with this action;

6. That Apple be declared to have infringed, induced others to infringe and/or committed acts of contributory infringement with respect to the claims of Samsung's Patents In Suit as alleged above;

7. That Apple and its officers, agents, servants, employees, and all those persons acting or attempting to act in active concert or in participation with them or acting on their behalf be immediately, preliminarily and permanently enjoined from further infringement of Samsung's Patents In Suit;

8.     That Apple be ordered to account for and pay to the Samsung Patent
        Counterclaimants all damages caused to them by reason of Apple's infringement
        of Samsung's Patents In Suit pursuant to 35 U.S.C. § 284;

9.     That Apple be ordered to pay treble damages for willful infringement of each of
        Samsung's Patents In Suit pursuant to 35 U.S.C. § 284;

10.    That this case be declared "exceptional" under 35 U.S.C. § 285 and that the
        Samsung Patent Counterclaimants be awarded their attorneys' fees, expenses, and
        costs incurred in this action; and

11.    That the Samsung Patent Counterclaimants be granted pre-judgment and post-
        judgment interest on the damages caused to them by reason of Apple's
        infringement of Samsung's Patents In Suit.

**Samsung's further separate statement regarding relief requested**

Samsung's itemization of witnesses, documents, or other evidentiary material to be
presented concerning the amount of damages is attached as Exhibit 2.

## III.    <u>UNDISPUTED FACTS</u>

1.     Apple is a corporation organized under the laws of the State of California, and its
        principal place of business is in Cupertino, California.

2.     Samsung Electronics Co., Ltd. (referred to individually herein as "SEC") is a
        corporation organized and existing under the laws of the country of Korea having
        its principal place of business at 416 Maetan-3dong, Yeongtong-gu, Suwon-City,
        Gyeonggi-do, Korea 443-742.

3.     Samsung Telecommunications America, LLC (referred to individually herein as
        "STA") is a corporation organized and existing under the laws of the state of
        Delaware having its principal place of business at 1301 East Lookout Drive,
        Richardson, Texas 75082.

4.      Samsung Electronics America, Inc. (referred to individually herein as "SEA") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660.

5.      STA is an indirect subsidiary of SEC.  SEA is a subsidiary of SEC.

6.      Venue is proper in this District.

7.      The Court has personal jurisdiction over each of the parties, and each of them transacts business within this District.

8.      U.S. Patent No. 5,946,647 was filed on February 1, 1996, and issued on August 31, 1999.

9.      U.S. Patent No. 6,847,959 was filed on January 5, 2000, and issued on January 25, 2005.

10.    U.S. Patent No. 7,761,414 was filed on January 7, 2007, and issued on July 20, 2010.

11.    U.S. Patent No. 8,046,721 claims priority to an application filed December 23, 2005, was filed on June 2, 2009, and issued on October 25, 2011.

12.    U.S. Patent No. 8,074,172 was filed on January 5, 2007, and issued on December 6, 2011.

13.    Apple informed Samsung Electronics Company of the '647 patent on August 4, 2010, and Apple's lawsuit informed each Samsung entity of all of Apple's asserted patents on February 8, 2012.

14.    Samsung informed Apple of the '087 patent on September 9, 2010, and Samsung's lawsuit informed Apple of all of Samsung's asserted patents on April 18, 2012.

15.    U.S. Patent No. 7,756,087 claims priority to Korean patent applications filed 7/16/2004, 8/11/2004, 1/4/2005, and 3/11/2005; was filed in the U.S. on 7/18/2005; and issued on 7/13/2010.

16.  U.S. Patent No. 7,551,596 claims priority to Korean patent applications filed 11/9/2004 and 12/21/2004; was filed in the U.S. on 11/9/2005; and issued on 6/23/2009.

17.  U.S. Patent No. 6,226,449 claims priority to Japanese patent applications filed 4/17/1996 and 2/17/1997; was filed in the U.S. on 4/17/1997; and issued on 5/1/2001.

18.  U.S. Patent No. 5,579,239 was filed on 2/16/1994, and issued on 11/26/1996.

19.  Apple's products do not practice claim 25 of the '959 patent, claim 20 of the '414 patent, or claim 18 of the '172 patent.

## IV.  DISPUTED FACTUAL ISSUES

### Joint Statement

The following disputed factual issues remain to be resolved:

### Apple's Claims Against Samsung

1.  Whether Samsung, through selling certain accused instrumentalities, directly or indirectly infringes:

Claim 9 of U.S. Patent No. 5,946,647

Claim 25 of U.S. Patent No. 6,847,959

Claim 20 of U.S. Patent No. 7,761,414

Claim 8 of U.S. Patent No. 8,046,721

2.  Whether Samsung's Galaxy S II Skyrocket, like the other '172 Accused Products identified in the Court's 1/21/14 SJ order, infringes Claim 18 of the '172 patent;

3.  Whether STA and/or SEC has made, used, sold, offered for sale, or imported within the U.S. each of the following products that infringe the '172 patent: Admire, Galaxy Nexus, Galaxy Note, Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, Galaxy S II, and Stratosphere;

4.  Whether Samsung Electronics Company Ltd. indirectly infringes Claim 18 of the '172 patent;

5.      Whether Apple's asserted patent claims are valid;

6.      Whether, if Samsung has infringed Apple's asserted patents, such infringement is willful;

7.      The amount of damages, if any, to which Apple is entitled as a result of Samsung's infringement of the '414, '959, '647, '172, and '721 patents for the following 10 Samsung products: Admire, Galaxy Nexus, Galaxy Note, Galaxy Note II, Galaxy SII, Galaxy SII Epic 4G Touch, Galaxy SII Skyrocket, Galaxy SIII, Galaxy Tab II 10.1, and Stratosphere;

8.      Whether any of Apple's claims are barred;

9.      Whether Apple practices the asserted claims of the '647 and '721 patents, including whether iOS 7 practices claim 8 of the '721 patent;

10.     Whether Samsung has breached its FRAND obligations to Apple, as set forth in the ETSI IPR Policy and Samsung's declarations to ETSI thereunder, by (i) seeking an injunction for the alleged infringement of its Asserted Declared Essential Patents; (ii) failing to offer Apple FRAND license terms for the Asserted Declared Essential Patents; and/or (iii) failing to timely disclose IPR that it later declared to be essential to UMTS ("collectively, standards-related conduct");

11.     Whether Apple has an irrevocable right to be licensed on FRAND terms under Samsung's  Asserted Declared Essential Patents;

9.      Whether the Samsung Asserted Declared Essential Patents are rendered unenforceable by virtue of Samsung's standards-related conduct, including Samsung's waiver of the right to enforce those patents.

10.     The date Apple provided actual written notice of its claims of infringement to each Samsung defendant pursuant to 35 U.S.C. § 287.

**Samsung's Claims Against Apple**

1.      Whether Apple, through selling certain accused instrumentalities, infringes:

a.      U.S. Patent No. 7,756,087 – Claims 10.

b.      U.S. Patent No. 7,551,596 – Claim 13.

c.      U.S. Patent No. 6,226,449 – Claim 27.

d.      U.S. Patent No. 5,579,239 – Claims 1 and 15.

2.      Whether Samsung's asserted patent claims are valid;

3.      The amount of damages, if any, to which Samsung is entitled as a result of Apple's infringement of the '087, '596, '449, and '239 patents for the following Apple products: iPhone 4, iPhone 4S, iPhone 5, iPad 2, iPad 3, iPad 4, iPad mini, iPod touch (5th generation), iPod touch (4th generation), and MacBook Pro;

4.      Whether Apple is entitled to a license to patents Samsung has declared essential to industry standards, and the terms and conditions of such license;

5.      Whether Samsung has breached contracts in connection with its standards-related conduct or its assertion of patents that it has declared essential to industry standards;

6.      Whether the asserted patents that Samsung has declared essential to industry standards are rendered unenforceable by virtue of Samsung's standards-related conduct, including by virtue of a waiver of the right to enforce those patents;

7.      The remedies to which Samsung is entitled, if any, as a result;

8.      Whether any of Samsung's claims are barred;

9.      Whether claim 13 of the '596 patent has a priority date of November 9, 2004;

10.      Whether sales of the PMB 9801 baseband chips incorporated in the accused Apple products exhaust Samsung's rights in the Asserted Declared Essential patents;

11.      Whether sales of the MDM6610, MDM9600, MDM9610, and MDM9615M baseband chips incorporated in the accused Apple products exhaust Samsung's rights in the Asserted Declared Essential patents;

12.      The date Samsung provided actual written notice of its claims of infringement to Apple pursuant to 35 U.S.C. § 287.

**V.**      **AGREED STATEMENT**

The parties concur that no part of the action may be presented upon an agreed statement of facts.

## VI.   STIPULATIONS

The parties have tentatively agreed to a stipulation concerning the authenticity of certain documents and expect to file the stipulation soon.

The parties agreed to, and the Court entered, a stipulated order concerning the authenticity of certain documents.  (Dkt. No. 1032.)  The parties continue to confer in an attempt to resolve other potential authenticity issues in advance of trial.

The parties will confer and expect to file a stipulation regarding interpreter logistics for trial and resolution of translation disputes in advance of trial.

## VII.   WITNESSES TO BE CALLED

Apple's and Samsung's witness lists were previously filed.  (Dkt.Nos. 1265, 1266-1.)

## VIII.   EXHIBITS, SCHEDULES, SUMMARIES

Apple's and Samsung's corrected exhibit lists were filed shortly before this Joint Pretrial Statement.  (Dkt. Nos. 1330, 1331.)  The parties' corrected joint exhibit list is attached as Exhibit 3.  Consistent with the Court's Jury Pretrial Standing Order, the parties exchanged copies of individual exhibits.  The parties have lodged copies of exhibits with the Court on February 25, 2014.

## IX.   DISPUTED LEGAL ISSUES

### Apple's Separate Statement Regarding Disputed Legal Issues

Apple identifies the following legal issues that, based on the parties' prior submissions, appear to be disputed.  Because the disputed issues of fact identified above may also be considered issues of law or mixed issues of fact and law, Apple incorporates those identified issues as well as the following:

1.     Whether the Court should instruct the jury that to the extent Samsung relies on alleged prior art systems for their invalidity defense, Samsung must prove by clear and convincing evidence that these alleged prior art systems were actually known

to, and used by, the public prior to the critical date. *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) ("[B]oth [§ 102(a) and (b)] require actual use by someone at some point.").

2.     Whether claim 12 of U.S. Patent No. 7,880,730 to Robinson ("Robinson '730") is prior art under 102(e) to the '172 Patent, given that claim 12 was not part of the disclosure to which Robinson '730 claims priority and was not added to such disclosure until after the '172 Patent was filed.

3.     Whether Apple should be awarded treble damages and attorneys' fees in view of the willful nature of Samsung's patent infringement and the exceptional nature of this case.

4.     If Samsung is found to infringe, whether Apple is entitled to injunctive relief. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

5.     Whether the asserted claims of the Samsung patents are invalid as obvious under 35 U.S.C. §103.

6.     Whether claim 27 of the '449 patent is invalid for failure to meet the written description requirement under 35 U.S.C. § 112, ¶ 1 because the term "search mode" is unsupported by the specification and/or originally-filed claims.

7.     Whether any of Samsung's infringement theories under claims 1 and 15 of the '239 patent is barred by the doctrine of prosecution history estoppel.

8.     Whether claim 13 of the '596 patent is entitled to claim priority to Korean Patent Application No. 2004-91093, filed on November 9, 2004.

9.     If Apple is found to infringe, whether Samsung is entitled to injunctive relief. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

10.    Whether Samsung breached enforceable contractual commitments under the ETSI IPR Policy and Samsung's declarations to ETSI thereunder by failing timely to disclose one or more of the Asserted Declared Essential Patents under that Policy.

11. Whether Samsung breached enforceable contractual commitments under the ETSI IPR Policy and Samsung's declarations to ETSI thereunder by failing to offer Apple a license to the Samsung Asserted Declared-Essential Patents under fair, reasonable and non-discriminatory terms.

12. Whether a royalty calculated on a per unit basis through the date of trial is properly characterized as a lump sum royalty under *Lucent Techs., Inc. v. Gateway*, Inc., 580 F.3d 1301, 1336 (Fed. Cir. 2009). *See also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30-31 (Fed. Cir. 2012).

13. Whether Samsung should be permitted to seek constructions of terms where none was previously sought for them.

14. Whether Samsung should be permitted to contend that certain terms are not entitled to their plain meaning, where Samsung did not previously seek construction.

15. Whether Samsung should be permitted to present evidence or argument that Apple's experts are interpreting claims terms in a manner other than plain meaning, where Samsung did not previously seek construction or suggest that the terms did not carry their plain meaning.

16. Whether, with respect to the '239 patent, Samsung or its experts should be permitted to apply the means plus function limitations to cover structure not disclosed in the specification or equivalent to that disclosed in the specification.

17. Whether, with respect to the '239 patent, Samsung should be permitted to identify structure in the accused products for allegedly performing the claimed function that Samsung failed to disclose in its Infringement Contentions.

18. Whether Samsung should be permitted to re-litigate, or seek untimely reconsideration of, rulings by the Court resolving the purported issues that Samsung lists below.

19. Whether Samsung should be permitted to re-raise issues included in Daubert

motions and motions to strike that it withdrew.  (See Dkt. 1168 and 1296.)

20.     Whether Samsung should be permitted to present evidence or argument of alleged willful infringement by Apple, where Samsung failed to adequately disclose willfulness contentions or their bases as required by the Patent Local Rules.

21.     Whether Apple's complaint and Samsung's sworn statement establish as a matter of law the date on which notice was given regarding Apple's claims of infringement with respect to the asserted patents.

22.     Samsung wrongly claims the February 17, 2014 supplemental expert report of Christopher Vellturo was improper.  Consistent with the parties' stipulation, Dr. Vellturo updated his report to address updated financial data produced by Apple and Samsung on February 10, 2014 and to address case narrowing decisions made on February 4, 2014.  (See Dkt. 1235.)  His report identifies how he supplemented his calculations, and how the updated information on product sales, additional financial data, and infringement claims affected his damages calculations.  Consistent with Apple's representations to the Court on January 23, 2014, Dr. Vellturo also modified his calculation of lost profits damages to conform to the Court's tentative ruling that a design around period must start on the date of first infringement not the date of  first notice of the claim of infringement.  (See January 23 Hrg., Dkt. 1198, at 19:1-4).  Dr. Vellturo has applied that ruling, consistent with the Court's order today, to all patents asserted in this case.  Dr. Vellturo's supplement is proper, is authorized by the Court's order regarding Samsung's Daubert motion (Dkt. 1325 at 42:11-13), and consistent with the circumstances and updated information that gave rise to it.  Samsung's suggestion that Dr. Vellturo should be required to start the design around period on the date of first notice (and not the date of first infringement) for the '647 Patent but use the date of first infringement (and not the date of first notice) for all other asserted patents should be rejected.

23.     Samsung incorrectly asserts that there is a "disputed legal issue" re whether Dr. Hauser's survey reliably describes the patented features associated with the asserted claims.  There is not, as the Court has today rejected this argument in its entirety.   The Court recognized that "the framing of questions for purposes of surveys is generally an issue of weight, not admissibility."  (Dkt. 1325 at 33.)  The Court held that "the accuracy of Dr. Hauser's survey question[s] must be evaluated from the perspective of a Samsung customer" and disagreed with Samsung's assertion that the description of the feature associated with claim 20 of the '414 is overbroad and improper.  (*Id.* at 35.)  The Court further held that by failing to appropriately brief the issue, Samsung "has forfeited any Rule 702 argument that Dr. Hauser's survey questions depart from the asserted claims," except with respect to the '414 patent as explained in its order.  (*Id.* at 36).

24.     Whether Samsung should be permitted to contend that certain claims or claim terms are indefinite or otherwise invalid for failure to particularly and distinctly claim the alleged invention where they did not properly seek such constructions or where the Court previously ruled on such contentions.  (*See, e.g.*, Dkt. No. 222 at 52 (holding that the '721 patent claim term "unlock" is not indefinite).)

25.     Whether Samsung should be permitted to argue to the jury that certain claims or claim terms are indefinite.

Samsung's Separate Statement Regarding Disputed Legal Issues

1.     Whether Dr. Fuja should be allowed to rely on his construction that claim 13 of the '596 patent requires the limitations to be constructed in a specific order: "[t]he process entails first forming constituent parts of the second PDU, including 'forming a first protocol data unit (PDU) including uplink packet data' . . . and then forming the second PDU by concatenating a header and a payload," when such a construction is unsupported.  (Fuja Rebuttal Report ¶¶ 379-420).

2.     Whether Dr. Fuja should be allowed to rely on his construction that a "control

SDU" in claim 13 of the '596 patent must be generated at a higher layer than the layer that creates MAC-e PDUs, when such a construction contradicts the intrinsic evidence.  (Fuja Rebuttal Report ¶¶ 436-445).

3.      Whether Dr. Fuja should be allowed to rely on his construction that "control information for an uplink packet data service" in claim 13 of the '596 patent must be used by a scheduling component within the Node B, when such a construction contradicts the intrinsic evidence.  (Fuja Rebuttal Report ¶¶ 356, 446-460).

4.      Whether Dr. Fuja should be allowed to rely on his construction that an "N field representing the number of uplink data" is an N field representing the number of bits or bytes contained in the MAC-es PDU, when such a construction contradicts the intrinsic evidence.  (Fuja Rebuttal Report ¶¶ 421-435).

5.      Whether Dr. Fuja should be allowed to rely on his construction that "forming a second data packet unit (PDU) by concatenating a header and a payload" in claim 13 of the '596 patent requires the MAC-e header and MAC-e payload to be formed as standalone units prior to the concatenation operation, when such a construction is unsupported.  (Fuja Rebuttal Report ¶¶ 393-402, 411-420).

6.      Whether Dr. Fuja should be allowed to rely on his construction that "receiver receiving" in claim 9 of the '087 patent requires actual receiving, rather than just capability of receiving, when such a construction is unsupported.  (Fuja Rebuttal Report ¶¶ 316, 318, 328, 337-351).

7.      Whether the correct construction for "DDI field" in claim 13 of the '596 patent is a logical identifier representing the first PDU.

8.      Whether the '596 patent has a priority date of November 9, 2004.

9.      Whether Apple should be allowed to argue that Samsung's products do not practice the '449 patent and, if so, whether Samsung should be allowed to present argument and evidence its products do practice the patent.

10.     Whether Dr. Storer should be allowed to rely on his construction that "means for

capturing, digitizing, and compressing at least one composite signal" in claim 1 of the '239 patent, the function of which was already agreed to by the parties and adopted by the Court, requires receiving an analog electrical signal that represents viewable video frames output from an analog video source such as a video camera or VCR, digitizing and compressing that signal. (Storer Rebuttal Report ¶¶ 546, 555, 561).

11.     Whether Dr. Storer should be allowed to rely on his alternative corresponding structure for "means for capturing, digitizing, and compressing at least one composite signal" in claim 1 of the '239 patent, which was already construed by the Court, for which he requires cards: (1) to be optional, add-on components that can be inserted into an expansion slot in a computer to add video or audio (or both) capture functionality; (2) to not have components unrelated to capture, digitization, and compression; and (3) to be removable. (Storer Rebuttal Report ¶¶ 532, 536, 551).

12.     Whether Dr. Storer should be allowed to rely on his alternative corresponding structure for "means for transmitting said composite signal" in claim 1 of the '239 patent, which was already construed by the Court, for which he adds the additional limitations that: (1) a communications port be must be a physical hardware port on the remote unit (a personal computer) that connects the modem to the remote unit; and (2) a file must be able to be stored, transmitted, and the storage must be such that the file can be played and replayed repeatedly. (Storer Rebuttal Report ¶¶ 603, 643).

13.     Whether Dr. Storer should be allowed to ignore the Court's meaning for the term "modem" from the Court's Markman order and  rely on his own definition of "modem," which is part of the Court's corresponding structure for "means for transmitting said composite signal" in claim 1 of the '239 patent, for which he requires it to: (1) operate on a dial-up basis; (2) modulate the digital video data so

that it can be transmitted over the voice frequencies in telephone lines and cellular

networks available at the time; and (3) directly connect to the host computer

through the dial-up connection. (Storer Rebuttal Report ¶¶ 639-40).

14.   Whether Dr. Storer should be permitted to improperly incorporate additional claim

limitations into the non-means plus function claim term, "video capture module"

in claim 15. (Storer Rebuttal Report, ¶¶702-711).

15.   In the '239 patent, claim 1, what is the proper structure for the following means

plus function claim terms:  "means for storing said composite signal," "means for

receiving at least one composite signal transmitted by the remote unit," "means for

exchanging data with said host unit," "means for storing the composite signal

received by the host unit, and "means for decompressing said composite signal."

16.   In the '239 patent, claim 15, what is the proper structure for the following means

plus function claim term:  "means for transmission of said captured video over a

cellular frequency."

17.   Whether Dr. Storer should be allowed to rely on his construction of the term

"digital camera" as limited to a device that does not include any other

functionality, when the construction lacks intrinsic or extrinsic support. (Storer

Rebuttal Report, ¶¶ 123-124).

18.   Whether Dr. Storer should be allowed to rely on his construction of the term

"imaging device" as requiring that such a device expose all pixels at once, or that

it capture the charge associated with each pixel at the same time, when the

construction lacks intrinsic or extrinsic support. (Storer Rebuttal Report, ¶ 159).

19.   Whether Dr. Storer should be allowed to rely on his construction that the claimed

"A/D converter" and "imaging device" cannot be part of the same integrated

circuit, or part of an integrated circuit that performs additional functions, when the

construction lacks intrinsic or extrinsic support. (Storer Rebuttal Report, ¶¶ 128,

154, 158).

20. Whether Dr. Storer should be allowed to rely on his construction that the claimed "compressor" and "decompressor" must use common circuitry to perform compression or decompression of still and moving images, or cannot be part of an integrated circuit that performs additional functions, when the construction lacks intrinsic or extrinsic support. (Storer Rebuttal Report, ¶¶ 163-166, 174, 179).

21. Whether Dr. Storer should be allowed to rely on his construction that a "list" must include text and conform to a top-down arrangement, when the construction lacks intrinsic or extrinsic support. (Storer Rebuttal Report, ¶¶ 300-306).

22. Whether Dr. Storer should be allowed to rely on his construction that the claimed "search mode" cannot consist of scrolling through thumbnail images representing photos and videos, when the construction lacks intrinsic or extrinsic support. (Storer Rebuttal Report, ¶¶ 308, 311-312, 321).

23. Whether Dr. Storer should be allowed to rely on his construction that a "classification" cannot consist of photos and videos taken with a device, or that a photo or video must remain on the device even when deleted from a "classification," or that the user must be able to rename a "classification," rearrange the photos within the "classification," or create the "classification," when the construction lacks intrinsic or extrinsic support. (Storer Rebuttal Report, ¶¶ 324-326, 331, 334-336).

24. Whether the asserted claims of Apple's Patents In Suit are invalid as anticipated under 35 U.S.C. § 102.

25. Whether the asserted claims of Apple's Patents In Suit are invalid as obvious under 35 U.S.C. § 103.

26. Whether the asserted claim of the '959 patent is invalid as indefinite and insolubly ambiguous under 35 U.S.C. § 112, and as described in the Federal Circuit's decisions in, *e.g.*, *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) and *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d

1342, 1351 (Fed. Cir. 2005); *see also* Dkt. No. 1150 at 33 n.11 (Order on Motion for Summary Judgment noting that "Samsung remains free to raise the issue of indefiniteness again should the term 'heuristic' become central to Apple's attempts to distinguish the '959 Patent from any prior art Samsung asserts at trial.").

27.     Whether, if the Court concludes that the term "heuristic" as used in the asserted claim of the '959 patent is not indefinite because it is not insolubly ambiguous, the asserted claim is invalid for failure to particularly and distinctly claim the alleged invention.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, Supreme Court Case No. 13-00369, 2014 WL 92363 (Jan. 10, 2014).

28.     What is the correct construction of the phrase "the information identifier is applied separately to each heuristic" in claim 25 of the '959 patent?

29.     What is the correct construction of the phrase "a plurality of heuristics to locate information in the plurality of locations which include the Internet and local storage media" in claim 25 of the '959 patent?

30.     What is the correct construction of the phrase "thread . . . provided by a synchronization software component" in claim 20 of the '414 patent?

31.     What is the correct construction of the phrase "provided by" in claim 20 of the '414 patent?

32.     What is the correct construction of the phrase "synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database" in claim 20 of the '414 patent?

33.     What is the correct construction of the phrase "configured to synchronize [] structured data" in claim 20 of the '414 patent?

34.     What is the correct construction of the phrase "wherein the synchronization software component is configured to synchronize structured data of a first data class and other synchronization software components are configured to

synchronize structured data of other corresponding data classes" in claim 20 of the '414 patent?

35. What is the correct construction for the term "analyzer server" in the '647 patent? The Federal Circuit is currently reviewing this claim construction. Judge Richard A. Posner construed this term in the *Apple v. Motorola* action, Case No. 1:11-cv-08540 (N.D. Ill.). The parties in that case appealed several issues to the Federal Circuit; Apple among other things appealed Judge Posner's construction for this term. The Federal Circuit heard oral argument in September 2013 but has not yet issued an order. The Federal Circuit's ruling could substantially impact the scope of Apple's asserted claim for the '647 patent. For instance, if the Court rejects both Judge Posner's constructions and Apple's proposed constructions and provides new constructions, the parties' current contentions and defenses will likely require modification and supplementation.

36. What is the correct construction for the phrase "linking actions to the detected structures" in the '647 patent? The Federal Circuit is currently reviewing this claim construction as well. All the facts identified above for the "analyzer server" term also apply for this phrase.

37. What is the correct construction for the term "structures" in the '647 patent?

38. What is the correct construction for the phrase "enabling the selection of a detected structure" in the '647 patent?

39. Whether claim language allowed by the USPTO and therefore necessarily found by the PTO to be supported by the specification of a prior art patent maintains the priority date of that patent. *See Lucent Techs., Inc. v. Gateway Inc.*, 543 F.3d 710, 718 (Fed. Cir. 2008).

40. What is the legal test for determining a breach of contract, including a breach of the ETSI IPR Policy, under French law.

41.    Whether, under French law, participation in the ETSI/3GPP standards setting process (1) constitutes a binding obligation under clause 4.1 of the ETSI IPR Policy; (2) whether breach of this obligation automatically results in the waiver of rights to enforce IPR; and (3) whether such breach is enforceable by another member, a potential licensee, or solely by ETSI.

42.    The proper interpretation of clauses 4.1 and 6.1 of the ETSI IPR Policy.

43.    Whether Intel Corp., Intel Americas, or any Intel entity or affiliate was authorized by agreement with Samsung to sell cellular baseband processors that are integrated into the accused Apple products.

44.    Whether Qualcomm or any Qualcomm entity or affiliate was authorized by agreement with Samsung to sell cellular baseband processors that are integrated into the accused Apple products and whether Apple is directly covered by a covenant not to sue in that agreement.

45.    Whether the United States patent system has extraterritorial effect such that a patentee's authorization of an international first sale affects exhaustion of that patentee's rights in the United States. *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1105 (Fed. Cir. 2001); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1373 (Fed. Cir. 2005).

46.    On February 17, 2014, Apple served on Samsung the Supplemental Expert Report of Christopher A. Vellturo.  In that report, Apple has, *inter alia*, improperly introduced new damages claims, used different methodologies than previously employed by Dr. Vellturo, and attempted to rely on new evidence.  This improper supplementation exceeds the scope of the parties' February 4, 2013 stipulation, Apple's representations to the Court regarding the scope of the parties' agreement, the Court's orders and the Federal Rules.  Samsung anticipates seeking appropriate relief from the Court to exclude Apple's improper supplementation. Dr. Vellturo's supplementation also incorrectly changes the start date for the design around

period for the '647 patent from the earlier August 4, 2010 notice date to the later date of first infringement.  This is contrary to law which contemplates that lost profits are based on the date that "Samsung would have first attempted to develop noninfringing alternatives or to 'design around.'"  *Apple Inc. v. Samsung Elecs., Co., Ltd*, Dkt. 2660 at 1 (N.D. Cal. Nov. 7, 2013) (addressing whether lost profits analysis should start on the date of first infringement and not "*some later date*"). The Court's prior rulings on this issue did not consider the circumstance where the notice date precedes the date of first infringement because Apple did not previously seek any off-the-market damages on the '647 patent.

47.     Whether Dr. Hauser's survey reliably describes the now-narrowed claims of the asserted patents, including dependent claim 20 of the '414 patent, dependent claim 25 of the '959 patent, dependent claim 9 of the '647 patent, dependent claim 8 of the '721 patent, and independent claim 18 of the '172 patent.  Samsung notes that, after the *Daubert* hearing and long after *Daubert* briefing was complete, Apple elected to further narrow the asserted claims by selecting only dependent claims for the '959, and '647 patents – further widening the gap between what Dr. Hauser described in his survey and what the asserted claims actually cover.

48.     Whether the asserted claim of the '721 patent is invalid as indefinite and insolubly ambiguous under 35 U.S.C. § 112, and as described in the Federal Circuit's decisions in, *e.g.*, *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) and *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005).

49.     Whether, if the Court concludes that the term "unlocking" as used in the asserted claim of the '721 patent is not indefinite because it is not insolubly ambiguous, the asserted claim is invalid for failure to particularly and distinctly claim the alleged invention.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, Supreme Court Case No. 13-00369, 2014 WL 92363 (Jan. 10, 2014).

50.    Whether, if Apple has infringed Samsung's Patents In Suit, such infringement is willful.

## X.    FURTHER DISCOVERY OR MOTIONS

Except as described below, the parties do not intend to pursue further discovery.  The parties have filed motions in limine and oppositions thereto.  Though neither party has filed any further motions, the parties expressly reserve their rights to do so.

The parties do not contemplate further discovery or motions apart from sealing issues and the issues set forth below.

By stipulation of the parties, Apple agreed to take the deposition of third-party Sylvia Hall-Ellis outside of fact discovery to allow potential narrowing of issues through stipulations as to authenticity.  Apple intends to take Ms. Hall-Ellis's deposition as soon as practically possible.

Additionally, the following motions are currently pending before the Court:

1.    Apple's Motion for Clarification of Order Re: Motions to Strike and Seal (Dkt. No. 1127) Concerning Dr. Mowry's Theories "Based on His Discussions with Engineers not Disclosed" by Apple (Dkt. 1228)

2.    Apple's Motions in Limine (Dkt. No. 1281)

3.    Samsung's Motions in Limine (Dkt. No. 1285)

4.    Samsung's Motion for Leave to Supplement Motion in Limine #2 (Dkt. No. 1327)

## XI.    DISPUTED EVIDENTIARY ISSUES

### A.    Apple's Separate Statement of Disputed Evidentiary Issues:

Apple is moving in limine to exclude the following from evidence:

1.    Exhibits that are improper compilations or summaries (MIL #1).

2.    Evidence and argument regarding findings and rulings and events from Apple's lawsuits with other parties (MIL #2).

3.    Evidence and argument relating to patent reexamination proceedings concerning the patents-in-suit (MIL #3).

4.      Evidence and argument relating to alleged prior art "demonstration systems" (MIL #4).

5.      Purported prior art documents that do not qualify as prior art (MIL #5).

6.      Evidence and argument that a purportedly non-infringing version of Google Quick Search Box has been implemented in any Samsung product (MIL #6).

7.      Evidence and argument regarding complete design around times by Samsung (MIL #7).

In addition, Apple may at trial seek exclusion or limiting instructions regarding other issues, including:

1.      Evidence and argument regarding Apple's labor practices or tax payments, policies, and practices, which are not relevant to any claim or issue in this litigation and would cause undue prejudice if introduced.  Fed. R. Evid. 401, 402, 403, 404, 801, 802; 1846 Hearing Tr. July 18, 2014 at 135:6-9 (permitting tax and working hour evidence only as relevant to damages and capacity, excluding as to "mud smearing like tax evasion . . . human rights claim[s]."); 1846 Dkt. 2552 at 3 (granting motion to exclude reference to investigation and hearing on tax practices).

2.       Evidence and argument regarding non-comparable license agreements and Apple's prior negotiations with Samsung.  Fed. R. Evid. 401, 402, 403, 408.

3.      Evidence and argument regarding any alleged inconsistency between the opinions of Apple's damages expert in this case, Dr. Vellturo, and the opinions of Apple's experts in prior cases, including those of Dr. Musika and Ms. Davis.  Fed. R. Evid. 401, 402, 403.

4.      Evidence and argument suggesting that Apple or any of the inventors to the patents-in-suit committed inequitable conduct or otherwise failed to disclose prior art to the PTO.  Fed. R. Evid. 401, 402, 403.

5.     Evidence and argument premised on deeming the claims of U.S. Patent No. 7,880,730 to Robinson to be prior art with regard to the '172 patent.  Fed. R. Evid. 401, 402, 403.

6.     Evidence and argument regarding prior art based on unauthenticated or incomplete source code exhibits or hearsay statements regarding public use.  Fed. R. Evid. 401, 402, 403, 801, 802.

7.     Evidence and argument regarding inventor and expert witness testimony or documents relating to issues of claim construction.  Fed. R. Evid. 401, 402, 403, 701.

8.     Evidence or argument based on unproduced press releases regarding alleged prior art.  Fed. R. Evid. 401, 402, 403, 801, 802.

9.     Evidence and argument regarding the Samsung Dart as a purported non-infringing alternative.  Fed. R. Evid. 401, 402, 403.

10.    Testimony by deposition of witnesses located within the Northern District of California where the testimony is not an opposing party admission.  Fed. R. Evid. 801, 804.

11.    Any attempt by Samsung to present evidence on indefiniteness to the jury.

12.    In addition, Apple informs the Court of its intent to present and argue to the jury the significance of the 1846 case verdicts and damages awards, which is relevant to proving Samsung's willful infringement in this case.  Samsung has identified several "evidentiary issues," purporting to seek exclusion on highly specific issues and evading the Court's limit on motions in limine.  Samsung's arguments are also misguided in substance.

13.    With respect to Samsung's evidentiary issue #8 regarding the '414 patent, as discussed in Apple's objections to Samsung's proposed final jury instructions, Samsung is seeking further claim construction now on "thread," a term that was neither identified by the parties as a term to be construed (Dkt. 300) nor identified

as requiring construction in connection with dispositive motions (Dkts. 803, 805). Apple has not had the opportunity to provide a claim construction analysis of the term "thread" in terms of the intrinsic record, including the specification and file history, and Samsung should not be permitted to improperly create a construction now.  Moreover, Apple did not explain thread in order to obtain summary judgment rulings, and therefore should not be judicially estopped now from explaining thread as used in the context of the '414 patent claims.

14.     With respect to Samsung's evidentiary issue #9, Samsung's argument is a backdoor attempt to prevent Dr. Snoeren from applying the term "heuristic" in the context of Claim 25 of the '959 patent.  Dr. Snoeren used the Court's construction of "heuristic."  Dr. Snoeren's discussion of modules applies this construction in the context of Claim 24, which refer to a "plurality of heuristics to locate information in the plurality of locations which include the Internet and local storage media," and more particularly claim 25, which adds the requirement that "the information identifier [be] applied separately to each heuristic."  The Court should not permit Samsung to seek a further narrowing claim construction or to prevent Dr. Snoeren from explaining the limitations of claim 25.  Moreover, Samsung's assertion that Dr. Snoeren contends he need not identify a "rule of thumb" for locating information misconstrues Dr. Snoeren's expert report.

**B.     Samsung's Separate Statement of Disputed Evidentiary Issues:**

Consistent with Samsung's motions in limine, Samsung requests that the Court order the following:

1.     To preclude Apple from presenting evidence or argument of subjective willfulness as to the '959, '414, '647, '721 and '172 Apple Patents In Suit unless the Court first determines that the objective requirement is satisfied.

2.     To preclude Apple from presenting any evidence or argument that Apple practices the '414, '959 or '172 Apple Patents In Suit.

3.      To preclude Apple from presenting any evidence or argument of purported "copying," to include exclusion of alleged "copying" documents concerning asserted claims that Apple's products do not practice; exclusion of alleged "copying" documents that do not discuss accused features or functionality; and exclusion of alleged "copying" documents that post-date the introduction of the accused features.

4.      To preclude Apple from presenting any evidence or argument that Samsung's Galaxy Nexus copied any of Apple's alleged inventions.

5.      To preclude Apple from presenting Samsung's total revenues and total profits to the jury to argue that Apple's damages figures are supportable based upon such overall figures, particularly in light of the fact that such overall figures are grossly inflated when compared to the limited revenues and profits realized from the accused Samsung products at issue in this case and because those numbers are entirely irrelevant in this case where infringer's profits are not at issue.

6.      To preclude Apple from presenting any evidence or argument of damages on sales for which Apple has already obtained an award of Samsung's profits.

7.      To prevent Apple from presenting evidence or argument that Samsung breached the Protective Order in this or other cases, such as the 1846 action or ITC Investigations, through inadvertent disclosure of Nokia or Apple CBI to Samsung personnel, or from otherwise referring to the Court's Sanctions Order dated January 29, 2014.

8.      To prevent Apple from arguing at trial that the term "thread" in the '414 patent has a meaning inconsistent with Apple's prior representations to this Court.  In *Markman* briefing, Apple defined "thread" in the '414 patent as "a series of steps that a computer process needs to complete."  (Dkt. 333 at 19:6-20; *see also* Feb. 14, 2013 Hearing Tr. at 66:2-3 (counsel for Apple defining "thread" as "just a series of steps.").)  Relying on Apple's arguments, the *Markman* Order adopted Apple's proposed construction of the disputed term "concurrently with," to mean "[t]he synchronization *thread* and the non-synchronization *thread* are both active during an overlapping time interval."  (*See* Dkt. 447 at 25 (emphases added).)  Accordingly, the Court recognized in its Summary Judgment Order that "[t]he parties agree that a 'thread' is 'a series of

steps that a computer process needs to complete." (Dkt. 1151 at 24-25 n.8.) Apple now is judicially estopped from departing from its prior position and assigning a new definition to this claim term at trial. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter . . . , assume a contrary position. . . . This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'") (citations omitted); *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778-79 (9th Cir. 2009) (holding that "[t]he doctrine of judicial estoppel was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining advantage from that position, then seeking a second advantage by later taking an incompatible position"). At trial Apple should not be allowed to argue that the plain and ordinary meaning of "thread" in the '414 patent is anything other than "a series of steps that a computer process needs to complete."

9. To prevent Apple from arguing that the term "heuristic" in the '959 patent requires "modules." In the Court's Order on the parties' summary judgment motions, the Court construed "heuristic" in the '959 patent as "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters." (Dkt. 1150 at 31.) At trial, Apple should not be permitted to contend that "heuristic" has some other meaning in the context of the '959 patent. This includes Apple's technical expert, Alex Snoeren, who construed "heuristics" in his expert report not as "rules of thumb that do not consist solely of constraint satisfaction parameters" but instead as a "***module[]*** having a search algorithm that employs some rule of thumb and does not consist solely of constraint satisfaction parameters." (Dkt. 946-9 at ¶ 97 (internal quotations omitted).) Dr. Snoeren's expert report relied heavily on this erroneous construction of "heuristics" for his validity rebuttal on the '959 patent. At trial, Apple should not be permitted to re-construe "heuristics" and add limitations not found in this Court's construction of "heuristics."[1]

---

[1] As this Court may recall, during the preliminary injunction phase this Court was faced with Apple's now-dropped '604 patent, which is related to the still-asserted '959 patent. Claim 6 of the '604 patent required "a plurality of heuristic modules." (Dkt. 1, Ex. 8, at col. 8, ll. 26-41.)
(Footnote continues on next page.)

10.  Apple contends that it should be entitled to present and argue form the 1846 verdicts and awards.  Introduction of the 1846 verdict is not relevant for any purpose, is highly prejudicial and improper.  Samsung will object to introduction of the verdict.  Injecting a prior verdict into this case would be reversible error.

## XII.   BIFURCATION, SEPARATE TRIAL OF ISSUES

At this point, the parties are not contemplating bifurcation or separate trial of issues.

## XIII.   ESTIMATE OF TRIAL TIME

Trial is scheduled to commence on March 31, 2014 and continue on Mondays, Tuesdays, and Fridays.  Pursuant to the Court's January 24, 2014 Case Management Order, the Court has allocated each side 25 hours of court time for direct examination, cross-examination, and rebuttal combined.

## XIV.   MISCELLANEOUS

Apple's Separate Statement

Apple proposes that the Court and parties follow the same procedures used in the 1846 damages retrial when displaying and discussing documents that have confidential information in open court.  The examining attorney should direct the trial technician to display the confidential document only to the witness and jury; the examining attorney should not read confidential information out loud; and the examining attorney should direct the witness on the stand to direct the jury where to view confidential information on the page without stating the confidential information out loud.

---

(Footnote continued from previous page.)

The term "module" likewise appears in non-asserted claim 1 of the '959 patent, which requires a "plurality of plug-in modules each using a different heuristic."  (Dkt. 1, Ex. 2, at col. 7, ln. 62 – col. 8, ln. 4.)  Unlike claim 6 of the '604 patent, or claim 1 of the '959 patent, the drafters chose *not* to limit claim 25 of the '959 patent to a "module."  (Dkt. 1, Ex. 2, at col. 9, ll. 16-30.)  Apple's technical expert nonetheless construed "heuristic" to require "modules" in claim 25 of the '959 patent, and argued that claim 25 of the '959 patent was valid over the prior art because the prior art lacked "modules."  Likewise, Dr. Snoeren appears to opine that for infringement, he need not identify a "rule of thumb" that locates information – he appears to contend that he need only identify a software "module" that contains some rule of thumb for purposes *other* than locating information.  (Dkt. 880-06, Ex. 10, at ¶¶ 251-55, 264-68, 286-90.)

1

<u>Samsung's Separate Statement</u>

2
None.

3
*The foregoing admissions having been made by the parties, and the parties having specified the*
*foregoing issues of fact and law remaining to be litigated, this order shall supplement the*

4
*pleadings and govern the course of trial of this action, unless modified to prevent manifest*
*injustice.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Dated: March 4, 2014

2

3  HAROLD J. MCELHINNY (CA SBN
   66781)
4  hmcelhinny@mofo.com
5  JACK W. LONDEN (CA SBN 85776)
   jlonden@mofo.com
6  RACHEL KREVANS (CA SBN 116421)
   rkrevans@mofo.com
7  RUTH N. BORENSTEIN (CA SBN
   133797)
8  rborenstein@mofo.com
9  ERIK J. OLSON (CA SBN 175815)
   ejolson@mofo.com
10 MORRISON & FOERSTER LLP
11 425 Market Street
   San Francisco, California 94105-2482
12 Telephone: (415) 268-7000
   Facsimile: (415) 268-7522
13
   WILLIAM F. LEE
14 william.lee@wilmerhale.com
   WILMER CUTLER PICKERING
15 HALE AND DORR LLP
   60 State Street
16 Boston, MA 02109
   Telephone: (617) 526-6000
17 Facsimile: (617) 526-5000
18 MARK D. SELWYN (SBN 244180)
   mark.selwyn@wilmerhale.com
19 WILMER CUTLER PICKERING
   HALE AND DORR LLP
20 950 Page Mill Road
   Palo Alto, California 94304
21 Telephone: (650) 858-6000
   Facsimile: (650) 858-6100
22

23
   By:  _____*DRAFT*_____
24        Rachel Krevans
25    Attorneys for Plaintiff and
       Counterclaim-Defendant APPLE
26

27

28

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

By:  _____*DRAFT*_____
      Victoria Maroulis

   Attorneys for Defendants and
   Counterclaim-Plaintiffs

SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS
AMERICA, LLC

**ATTESTATION OF E-FILED SIGNATURE**

I, Rachel Krevans, am the ECF User whose ID and password are being used to file this Joint Pretrial Statement.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Victoria Maroulis has concurred in this filing.

Dated:  March 4, 2014

_DRAFT_
RACHEL KREVANS

**IT IS SO ORDERED.**

Dated: _____, 2014        By: _____

Honorable Lucy H. Koh