1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4

5

    APPLE INC., A CALIFORNIA        )  C-12-00630 LHK
6   CORPORATION,                    )
                                    )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,           )
                                    )  MARCH 5, 2014
8         VS.                       )
                                    )  PAGES 1-97
9   SAMSUNG ELECTRONICS CO., LTD.,  )
    A KOREAN BUSINESS ENTITY;       )
10  SAMSUNG ELECTRONICS AMERICA,    )
    INC., A NEW YORK CORPORATION;   )
11  SAMSUNG TELECOMMUNICATIONS      )
    AMERICA, LLC, A DELAWARE        )
12  LIMITED LIABILITY COMPANY,      )
                                    )
13             DEFENDANTS.          )
    _____ )

14

15

16             TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17             UNITED STATES DISTRICT JUDGE

18

19

20             APPEARANCES ON NEXT PAGE

21

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2      A P P E A R A N C E S:

 3      FOR PLAINTIFF          MORRISON & FOERSTER
        APPLE:                 BY:   RACHEL KREVANS
 4                                   JAMES P. BENNETT
                               425 MARKET STREET
 5                             SAN FRANCISCO, CALIFORNIA  94105

 6
                               WILMER, CUTLER, PICKERING,
 7                             HALE AND DORR
                               BY:   WILLIAM F. LEE
 8                             50 STATE STREET
                               BOSTON, MASSACHUSETTS  02109
 9
                               BY:   MARK D. SELWYN
10                             950 PAGE MILL ROAD
                               PALO ALTO, CALIFORNIA  94304
11

12      FOR SAMSUNG:           QUINN, EMANUEL, URQUHART & SULLIVAN
                               BY:   JOHN B. QUINN
13                             865 S. FIGUEROA STREET, FLOOR 10
                               LOS ANGELES, CALIFORNIA  90017
14
                               BY:   VICTORIA F. MAROULIS
15                                   KEVIN B. JOHNSON
                               555 TWIN DOLPHIN DRIVE
16                             SUITE 560
                               REDWOOD SHORES, CALIFORNIA  94065
17
                               BY:   SEAN PAK
18                             50 CALIFORNIA STREET, FLOOR 22
                               SAN FRANCISCO, CALIFORNIA  94111
19

20

21

22

23

24

25
```

```
 1     SAN JOSE, CALIFORNIA                      MARCH 5, 2014

 2                        P R O C E E D I N G S

 3          (COURT CONVENED AT 3:18 P.M.)

 4             THE CLERK:  CALLING CASE NUMBER C-12-00630-LHK,

 5     APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY,

 6     LIMITED, ET AL.

 7             MS. KREVANS:  GOOD AFTERNOON, YOUR HONOR.

 8     RACHEL KREVANS FROM MORRISON & FOERSTER.

 9          I WANT TO START OUT BY APOLOGIZING FOR MR. MCELHINNY'S

10     ABSENCE.  HE'S IN ANOTHER TRIAL IN DELAWARE THAT SHOULD HAVE

11     BEEN OVER BY NOW, BUT IS NOT, SO HE IS IN A DIFFERENT FEDERAL

12     COURTHOUSE TODAY.

13          ALSO WITH ME TODAY IS MY PARTNER, JIM BENNETT; MY

14     COLLEAGUES, MR. OLSON, MR. SABRI; AND OUR COLLEAGUES FROM

15     GIBSON, DUNN, BRYAN BUROKER AND JENNIFER RHO.

16             MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE,

17     MARK SELWYN, AND KEVIN PRUSSIA FROM WILMER, HALE, ALSO FOR

18     APPLE.

19             THE COURT:  GOOD AFTERNOON.

20             MR. QUINN:  GOOD AFTERNOON, YOUR HONOR.  JOHN QUINN,

21     KEVIN JOHNSON, VICKY MAROULIS, SEAN PAK FOR SAMSUNG.

22             THE COURT:  OKAY.  GOOD AFTERNOON.

23          I HAVE RULINGS ON THE MOTIONS IN LIMINE, AND I WOULD ONLY

24     LIKE TO TALK ABOUT TWO FROM EACH SIDE.  OKAY?  SO A TOTAL OF

25     FOUR WE'LL DISCUSS.
```

1          LET ME START OFF BY ASKING IF YOU REVIEWED THE PRELIMINARY

2     JURY INSTRUCTIONS THAT WERE FILED YESTERDAY AND IF YOU HAD ANY

3     FURTHER COMMENT.  OBVIOUSLY THE OBJECTIONS YOU HAVE FILED

4     ALREADY ARE PRESERVED FOR APPEAL.

5          MR. LEE:  THERE ARE NO FURTHER JURY -- THERE ARE NO

6     FURTHER COMMENTS FROM US ON THE JURY INSTRUCTIONS, EXCEPT FOR,

7     YOUR HONOR, THERE WAS AN ISSUE RAISED ON THE '172 PATENT AND

8     THE SUMMARY JUDGMENT MOTION --

9          THE COURT:  YES, YES.

10          MR. LEE:  -- THAT MIGHT AFFECT THE PRECISE WORDS OF

11     THE JURY INSTRUCTIONS.  BUT SUBSTANTIVELY, WE HAVE NOTHING

12     BEYOND WHAT WE'VE OFFERED BEFORE.

13          MS. MAROULIS:  YOUR HONOR, SAMSUNG DOESN'T HAVE ANY

14     ADDITIONAL OBJECTIONS.  WE WANTED TO CALL THE COURT'S ATTENTION

15     TO A LINE IN JURY INSTRUCTION NUMBER 20 THAT TALKS ABOUT DESIGN

16     PATENTS.  WE BELIEVE IT'S A CARRYOVER FROM THE PRIOR CASE, AND

17     WE DON'T THINK EITHER PARTY SUBMITTED THAT LINE, SO IT'S

18     PROBABLY AN OVERSIGHT.

19          THE COURT:  AND ON PAGE 20 --

20          MS. MAROULIS:  IT'S PAGE 23, LINES -- BETWEEN 4 AND

21     5.  IT STATES "THE PATENT CLAIMS FOR DESIGN PATENTS ARE THE

22     DRAWINGS AND THE DESCRIPTIONS OF THE DRAWINGS."

23          THE COURT:  OKAY.  THANK YOU.  THAT'S AN ERROR.

24       OKAY.  ANYTHING OTHER THAN THAT, MS. MAROULIS?

25          MS. MAROULIS:  NO, YOUR HONOR.

```
 1            THE COURT:  OKAY.  THANK YOU.  I'LL MAKE A NOTE AND
 2     WE'LL CORRECT THAT.
 3            OKAY.  AS FAR AS THE TIME PERIOD FOR THE TRIAL,
 4     CALCULATING A TOTAL OF 3 HOURS FOR OPENING, 50 HOURS FOR
 5     EVIDENCE, AND 4 HOURS FOR CLOSING, AND ASSUMING WE'LL NEED A
 6     DAY TO, POTENTIALLY A DAY AND A HALF, AT LEAST, FOR JURY
 7     SELECTION, IT APPEARS THAT WE PROBABLY WILL NOT DO CLOSING
 8     UNTIL MOST LIKELY APRIL 28TH OR 29TH.
 9            THERE'S A POSSIBILITY THE 25TH WE MIGHT BE ABLE TO DO
10     SOME, BUT I DOUBT WE'D BE ABLE TO DO ALL.
11            DOES THAT MATCH YOUR CALCULATIONS, TOO?
12            MR. LEE:  IT DOES, YOUR HONOR.
13            THE COURT:  OKAY.
14            MR. QUINN:  YOUR HONOR, PERHAPS THIS IS AS GOOD A
15     POINT AS ANY TO RAISE AN ISSUE THAT I HOPE TO RAISE WITH THE
16     COURT TODAY.
17            WE ARE IN THE FINAL THROES OF TRIAL PREPARATION NOW.  WE
18     NOW HAVE THE DAUBERT RULINGS.  WE'RE BLOCKING OUT OUR WITNESS
19     TESTIMONY VERY SPECIFICALLY AND THE EXHIBITS.
20            AND, FRANKLY, ON OUR SIDE, WE FIND IT VERY, VERY DIFFICULT
21     TO SEE HOW WE'RE ABLE TO PRESENT THIS CASE IN THE 25 HOURS A
22     SIDE THAT THE COURT HAS INDICATED IN THE PAST.
23            AND WE WERE GOING TO ASK THE COURT, AND DO ASK THE COURT,
24     IF THE COURT WOULD CONSIDER GIVING EACH SIDE AN ADDITIONAL
25     EIGHT HOURS.
```

```
1              THE COURT:  WHAT ABOUT AN ADDITIONAL FIVE HOURS?

2    YOU'D EACH HAVE 30 HOURS PER SIDE.

3              MR. QUINN:  THAT WOULD -- THAT WOULD CERTAINLY BE A

4    BIG HELP, YOUR HONOR, IF THAT COULD BE DONE.

5              MR. LEE:  WE HAVE NO OBJECTION, YOUR HONOR.

6              THE COURT:  OKAY.  SO THAT WOULD BE THEN 60 HOURS,

7    WHICH -- I DIDN'T BRING MY CALCULATOR, BUT THAT WOULD BE 67

8    HOURS.  WE DO ROUGHLY FIVE AND A HALF HOURS, FIVE TO FIVE AND A

9    HALF HOURS PER DAY, WHICH WOULD BE ROUGHLY ABOUT 14 -- 13 TO 14

10   DAYS.  DOES THAT SOUND RIGHT?  IS THAT CORRECT?

11             MR. QUINN:  BACK OF THE HORSE GUESS, YOUR HONOR, THAT

12   DOES -- THAT DOES SOUND RIGHT.

13             THE COURT:  OKAY.

14             MR. QUINN:  I MIGHT MENTION, YOUR HONOR, THAT EVEN AT

15   THAT, WE ARE ACTUALLY GIVING -- AND WE'LL LET THE COURT KNOW

16   BEFORE THE END OF THE DAY ON FRIDAY IF WE DO THIS, WE ARE

17   ACTUALLY CONSIDERING DROPPING CERTAIN CLAIMS, SOME OF THE

18   COUNTERCLAIMS --

19             THE COURT:  OKAY.

20             MR. QUINN:  -- ON SAMSUNG'S SIDE.

21             THE COURT:  OKAY.

22             MR. QUINN:  AND WE WILL LET THE COURT KNOW.

23        JUST IN THE INTEREST OF TRYING TO NARROW IT AND STREAMLINE

24   THE CASE AND MAKE IT SIMPLER.

25             THE COURT:  OKAY.  THANK YOU.
```

1          NOW, WOULD -- IF YOU DID, WOULD THAT ALLOW US TO GO BACK

2     TO 25 PER SIDE?

3          (LAUGHTER.)

4              THE COURT:  I JUST --

5              MR. QUINN:  YOUR HONOR, WE -- IT'S -- AS WE BLOCK IT

6     OUT WITH THE, WITH THE EXPERTS AND THE WAY WE SEE THIS CASE

7     GOING, WE THINK THAT ADDITIONAL FIVE HOURS WOULD STILL BE A BIG

8     HELP, FRANKLY.

9          WE FEEL VERY, VERY CHALLENGED, EVEN DISMISSING THE CLAIMS

10    THAT WE'RE CONTEMPLATING DISMISSING, BEING ABLE TO PUT THIS

11    CASE ON.

12         SO IT -- EVEN IF WE DO THAT -- AND, AGAIN, WE'LL LET THE

13    COURT KNOW BY THE END OF THE DAY FRIDAY --

14             THE COURT:  OKAY.

15             MR. QUINN:  -- WE WOULD VERY MUCH APPRECIATE, AND WE

16    THINK IT WOULD HELP MAKE THE PRESENTATION MORE THOROUGH,

17    SIMPLER, AND, FRANKLY, A BETTER PRESENTATION OF THE ISSUES FOR

18    THE COURT AND FOR THE JURY IF WE HAVE THAT ADDITIONAL TIME.

19             THE COURT:  ALL RIGHT.  I WILL KEEP THAT.

20         SO THEN LET'S FIGURE OUT THE DAYS.  OKAY.  THEN WE WOULD

21    NOT BE CLOSING THEN UNTIL -- WELL, WE WOULDN'T FINISH WITH THE

22    EVIDENCE UNTIL MOST LIKELY MAY 2ND.

23             THE CLERK:  WE'VE GOT A CRIMINAL TRIAL SET TO START

24    ON THAT DAY.

25             THE COURT:  THAT'S SET FOR THE 28TH OF APRIL?

1          THE CLERK:  IT'S SET FOR JURY SELECTION ON THE --

2     WELL, YEAH, I THINK IT IS SET FOR THE 28TH, YES.  BUT IT MAY --

3     I DON'T -- I KNOW AMBER ROSEN IS STILL NOT BACK.

4          THE COURT:  SORRY?

5          THE CLERK:  MS. ROSEN IS STILL NOT BACK IN THE OFFICE

6     MUCH, SO I'M NOT SURE WHAT THE STATUS IS GOING TO BE.

7          THE COURT:  SHE'S NOT DOING IT?

8          THE CLERK:  WELL, SHE HAS BEEN, BUT NEDROW APPEARED

9     TODAY.  I CAN INQUIRE.

10          THE COURT:  WOULD YOU CHECK THAT?

11          THE CLERK:  UM-HUM.

12          THE COURT:  ALL RIGHT.  SO IT'S POSSIBLE WE WOULDN'T

13     FINISH UNTIL MAY 5TH.  ALL RIGHT.  SO THEN WE SHOULD PLAN ON

14     THE JURY INSTRUCTION/CLOSING THEN MOST LIKELY BEING ON MAY 6TH.

15          MR. LEE:  YOUR HONOR, THAT SEEMS LONGER THAN -- AS WE

16     DO THE ROUGH MATH, BUT WE'RE TRYING TO DO IT VERY QUICKLY.

17          THE COURT:  WELL, THIS IS MY CONCERN.  I'M NOT SURE

18     IF APRIL 1 WILL BE A TRIAL DAY OR WHETHER WE'LL STILL BE DOING

19     JURY SELECTION, SO THAT'S WHY I'M NOT COUNTING THE 1ST.

20          MR. LEE:  OKAY.

21          THE COURT:  SO THEN I COUNT 4, 7, 8, 11, 14, 15, 18,

22     21, 22, 25, 28, 29, MAY 2ND, AND MAY 5TH.  I MEAN, HOPEFULLY IT

23     WON'T BE THAT LONG, BUT THAT'S THE OUTSIDE.  MAYBE WE'LL FINISH

24     SOMEWHERE BETWEEN THE 28TH AND - THE 29TH AND MAY 2ND.

25          I HOPE THAT THE JURY SELECTION WILL NOT TAKE TWO FULL

```
 1    DAYS.  I'M HOPING WE'LL GET DONE IN A DAY LIKE WE DID LAST

 2    TIME, BUT I -- SO I THINK WE WILL PROBABLY CLOSE SOMETIME

 3    BETWEEN MAY 2ND, MAY 5TH, OR MAY 6TH.  DOES THAT SOUND RIGHT?

 4    DOES THAT SOUND RIGHT WITH YOUR CALCULATIONS?

 5              MR. LEE:  I THINK SO.

 6              MR. QUINN:  YES, YOUR HONOR.

 7              MS. MAROULIS:  YES, YOUR HONOR.

 8              THE COURT:  OKAY.  SO THEN WE SHOULD ASSUME THAT

 9    WE'RE GOING TO TELL THE POTENTIAL JURY POOL THAT THEY NEED TO

10    BE AVAILABLE AT LEAST THROUGH POTENTIALLY MAY 9TH.

11         OKAY.  LET'S GO AHEAD AND SET YOUR -- WELL, FIRST OF ALL,

12    LET ME ASK, YOUR SETTLEMENT STATUS REPORT SAID THAT THERE WERE

13    STILL COMMUNICATIONS.

14         CAN YOU TELL ME WHAT THE STATUS OF THAT IS?  IT WAS A

15    LITTLE BIT VAGUE.  EACH PARTY IS TALKING JUST TO THE MEDIATOR?

16    IS THAT RIGHT?

17              MR. LEE:  YES, THROUGH THE MEDIATOR, THAT'S CORRECT.

18              THE COURT:  OKAY.  SO YOU'RE STILL DISCUSSING

19    POSSIBLE RESOLUTION?

20              MR. LEE:  THE MEDIATOR IS STILL TALKING TO BOTH

21    PARTIES.

22              MR. QUINN:  YES.

23              MR. LEE:  NEITHER OF US ARE TALKING TO THE OTHER, BUT

24    WE'RE STILL TALKING.

25              MR. QUINN:  THERE ARE CONVERSATIONS GOING ON, YOUR
```

```
1    HONOR.

2              THE COURT:  OKAY.  BUT NO CURRENTLY PLANNED MEETINGS?

3              MR. LEE:  NO.

4              MR. QUINN:  NOT THAT I KNOW OF, YOUR HONOR.

5              THE COURT:  OKAY.  ALL RIGHT.  AT THIS POINT, I MEAN,

6    I HAVE ONE LAST ORDER IN ADDITION -- ON THE PERMANENT

7    INJUNCTION AND THE RULINGS FOR THIS PRETRIAL CONFERENCE, BUT

8    ANYTHING ELSE THE COURT CAN DO TO HELP YOU REACH A RESOLUTION?

9              MR. LEE:  I DON'T THINK SO, YOUR HONOR.

10             MR. QUINN:  NOT THAT I CAN THINK OF, YOUR HONOR.

11   THANK YOU.

12             THE COURT:  OKAY.  ALL RIGHT.

13        OKAY.  LET'S TALK ABOUT POST-TRIAL.  I'D LIKE TO SET A

14   BRIEFING SCHEDULE.  THIS WILL BE TIGHT, BUT UNFORTUNATELY, I'M

15   GOING TO HAVE TO KEEP THIS SCHEDULE.

16        MOTIONS ON MAY 23RD; OPPOSITIONS JUNE 6TH; THE REPLIES

17   JUNE 13TH; THE HEARING WOULD BE JULY 10TH AT 1:30.

18        AND I'D ALSO LIKE TO IMPOSE PAGE LIMITS ON YOUR POST-TRIAL

19   MOTIONS OF 45/45/25.

20        NOW, WHICHEVER PARTY PREVAILS, OR IF BOTH PARTIES PREVAIL,

21   I'M ASSUMING THAT THERE WOULD BE AN INJUNCTION MOTION.  IS THAT

22   RIGHT?

23             MR. LEE:  THAT'S CORRECT, YOUR HONOR.

24             MR. QUINN:  YES, YOUR HONOR.

25             THE COURT:  OKAY.  FOR THAT I'M GOING TO IMPOSE PAGE
```

1      LIMITS OF 20/20/15.  OKAY?

2                  MR. QUINN:  YES, YOUR HONOR.

3                  THE COURT:  ALL RIGHT.  SO THAT'S THAT SCHEDULE AND

4      PAGE LIMITS.

5           NOW, WHAT IS THIS ISSUE IN THE JOINT PRETRIAL STATEMENT

6      ABOUT THE VELLTURO SUPPLEMENTAL REPORT?  HAS THAT BEEN

7      RESOLVED, OR WHAT'S THE STATUS OF THAT ISSUE?

8                  MS. MAROULIS:  NO, YOUR HONOR.  MY PARTNER,

9      MR. WATSON, IS GOING TO ADDRESS THAT.

10                 THE COURT:  OKAY.

11                 MR. WATSON:  YOUR HONOR, THE PARTIES EXCHANGED

12     SUPPLEMENTAL REPORTS ON THE 17TH OF LAST MONTH.  DR. VELLTURO,

13     IN HIS SUPPLEMENTAL REPORT, HAS ASSERTED FOR THE FIRST TIME

14     OFF-THE-MARKET LOST PROFIT CALCULATION FOR THE '647 PATENT,

15     WHICH WAS NOT PREVIOUSLY THE SUBJECT OF AN OFF-THE-MARKET LOST

16     PROFIT CALCULATION.

17          AND WE BELIEVE THAT THAT IS AN IMPROPER SUPPLEMENTATION

18     AND ALSO CONTRARY TO THE LAW.

19                 THE COURT:  WHAT WERE THE SUPPLEMENTATIONS FOR?

20                 MR. WATSON:  SO AS THE COURT IS AWARE, THE PARTIES

21     SUBMITTED A STIPULATION THAT THEY WOULD BE PRODUCING UPDATED

22     FINANCIAL INFORMATION.

23                 THE COURT:  UM-HUM.

24                 MR. WATSON:  THAT INFORMATION WAS EXCHANGED.

25          AND ALSO THE PARTIES NARROWED THE PRODUCTS IN THE CASE

1    FROM 15 TO 10.

2         SO THE IDEA OF THE SUPPLEMENTAL REPORTS WAS THAT THEY

3    WOULD REFLECT THE UPDATED FINANCIAL INFORMATION AND ALSO

4    REFLECT THE NARROWING OF THE CASE FROM 15 PRODUCTS TO 10

5    PRODUCTS.

6         WHEN WE RECEIVED DR. VELLTURO'S REPORT, HE HAD NOW

7    ASSERTED OFF-THE-MARKET LOST PROFITS ON THE '647 PATENT WHICH

8    HE HAD NOT PREVIOUSLY DONE.

9              THE COURT:  I SEE.  SO THE SUPPLEMENTATION WAS

10   SUPPOSED TO BE PURELY JUST UPDATING THE NUMBERS?

11             MR. WATSON:  YES, YOUR HONOR.

12             MS. KREVANS:  YOUR HONOR, THE SUPPLEMENTATION WAS TO

13   TAKE CARE OF TWO ISSUES:  UPDATE THE NUMBERS, AND ALSO TAKE

14   INTO ACCOUNT THE COURT'S RULING THAT IT MADE IN THIS CASE, LIKE

15   THE RULING THAT THE COURT MADE IN THE 1846 DAMAGES RETRIAL,

16   DIRECTING THE PARTIES EXACTLY WHEN TO START THE PERIOD OF

17   POTENTIAL DESIGN AROUND AND BLACKOUT PERIOD FOR PURPOSES OF

18   LOST PROFITS.

19        AND SO IN THE REPORTS, BOTH OF THOSE THINGS HAD TO CHANGE.

20        AND WHEN BOTH OF THOSE WERE CHANGED, GIVEN THE DATES OF

21   FIRST INFRINGEMENT, WHICH IS WHAT THE COURT DIRECTED THE

22   PARTIES TO USE, FOR EACH OF THE PRODUCTS THAT ARE AT ISSUE IN

23   THE CASE, THERE ARE MANY PRODUCTS, THE DATE THAT THE COURT

24   ORDERED US TO START ON FOR THE '647 PATENT CHANGED.

25        SO OBEYING THE COURT'S SECOND ORDER, WHICH WAS SOMETHING

1      THAT SAMSUNG ASKED FOR, THAT IS, THAT WE APPLY THE COURT'S

2      ORDERED START AND DESIGN AROUND PERIOD ON THE DATE OF FIRST

3      INFRINGEMENT, THAT CHANGED THE DATE THAT WAS USED FOR THE '647

4      PATENT BECAUSE THE DATE OF FIRST INFRINGEMENT WAS DIFFERENT

5      FROM THE DATE PREVIOUSLY USED, AND THERE'S A SET OF PRODUCTS

6      THAT'S SMALLER.

7          WHEN WE OBEYED THAT ORDER, IT MEANT THAT, CONTRARY TO THE

8      PREVIOUS REPORT IN WHICH THERE WAS NO OVERLAP BETWEEN THE

9      DESIGN AROUND PERIOD AND THE NOTICE PERIOD, SINCE WE ONLY GET

10     DAMAGES IN THE NOTICE PERIOD, NOW THERE IS.

11         AND SO IT WAS A COMBINATION OF THOSE TWO THINGS, THE

12     SUPPLEMENT AND THE COURT'S ORDER, THAT THE DAMAGES HAD TO BE

13     DONE WITH THE DATE OF FIRST INFRINGEMENT AS THE START OF THE

14     DESIGN AROUND PERIOD THAT CAUSED THIS CHANGE.

15         THERE WAS NO OTHER DIFFERENCE IN WHAT WE DID.  WE WERE

16     SIMPLY FOLLOWING THE COURT'S ORDER.

17             MR. WATSON:  YOUR HONOR -- I'M SORRY.

18             MS. KREVANS:  IT MAY BE WHEN SAMSUNG ASKED THE COURT

19     TO MAKE THIS ORDER, THEY HAD NOT FULLY THOUGHT THROUGH WHAT ITS

20     IMPACT WAS, BUT THAT WAS THE IMPACT OF THE ORDER.  FOR THIS

21     PARTICULAR PATENT, APPLE'S DAMAGES CALCULATION WAS BETTER FOR

22     APPLE UNDER THE ORDER THAT SAMSUNG ASKED FOR.

23             MR. WATSON:  SO, YOUR HONOR, IF I MAY, A COUPLE

24     THINGS.

25         FIRST OF ALL, THE COURT'S DAUBERT ORDER HAD NOT ISSUED AS

1    OF THE TIME THAT DR. VELLTURO SUPPLEMENTED.

2        SECONDLY, AT THE DAUBERT HEARING, MS. KREVANS REPRESENTED

3    TO THE COURT THAT APPLE WOULD ONLY BE SEEKING OFF-THE-MARKET

4    LOST PROFITS ON TWO PATENTS.  SHE SAID, AND I QUOTE, IT WILL

5    ONLY BE A COUPLE OF THE PATENTS BECAUSE FOR THE OTHER THREE

6    PATENTS, THEY WOULD NOT BE SEEKING OFF-THE-MARKET LOST PROFITS.

7        THAT IS INCONSISTENT WITH WHAT THEY'RE DOING NOW.  THEY'RE

8    SEEKING OFF-THE-MARKET LOST PROFITS ON THE '172, THE '721, AND

9    THE '647.  SO MS. KREVANS REPRESENTED TO THE COURT AT THE

10   DAUBERT HEARING THAT THEY WOULD NOT BE DOING PRECISELY THIS.

11       THE COURT HAS NOT PREVIOUSLY ADDRESSED THIS QUESTION OF A

12   NOTICE PERIOD THAT PRE-DATED THE DATE OF FIRST INFRINGEMENT,

13   YOUR HONOR.

14       RECALL THAT FOR ALL OF THE OTHER PATENTS, YOU HAVE A DATE

15   OF FIRST INFRINGEMENT THAT APPLE HAS ALLEGED THAT IS PRIOR TO

16   THE NOTICE DATE, AND SO WHEN THE DISCUSSION WAS BEING HAD, THAT

17   WAS IN THE CONTEXT OF A SITUATION WHERE APPLE HAD PROVIDED

18   NOTICE AFTER THE DATE OF FIRST INFRINGEMENT.

19       AND IN THE CASE OF THE '647 PATENT, APPLE CONTENDS THAT IT

20   GAVE NOTICE OVER A YEAR BEFORE THE DATE OF FIRST INFRINGEMENT.

21       SO IF WE THINK FOR A MOMENT, YOUR HONOR, ABOUT THE BUT FOR

22   WORLD THAT IS SUPPOSED TO BE CREATED IN THIS ANALYSIS, APPLE'S

23   ARGUMENT IS THAT IT WOULD HAVE GIVEN NOTICE IN AUGUST OF 2010,

24   SAMSUNG WOULD NOT HAVE BEEN PERMITTED TO TAKE ANY STEPS TO

25   DESIGN AROUND IN THIS HYPOTHETICAL WORLD UNTIL THE DATE OF

1    FIRST INFRINGEMENT OCCURS A YEAR LATER.

2         AND AT THAT POINT, APPLE BEGINS RUNNING ITS BLACKOUT

3    DAMAGES.

4         SO IF WE ACCEPT THE PRINCIPLE THAT THE COURT ARTICULATED

5    IN THE 1846 CASE, WHICH IS THAT WE'RE LOOKING FOR A UNIVERSE

6    WHERE THE PATENT IS NOT INFRINGED -- WHERE THE PARTY KNOWS THE

7    PATENT WOULD BE INFRINGED BY THEIR ACTION, AND, THEREFORE, ACTS

8    TO AVOID THE INFRINGEMENT, APPLE'S ARGUMENT IS DIRECTLY

9    CONTRARY TO THE BASIC RATIONAL OF THE ORDER IN THE 1846 CASE

10   AND THE AUTHORITIES CITED THERE.

11        AND TO KIND OF --

12             THE COURT:  WELL, LET ME INTERRUPT YOU.  WHY DON'T WE

13   JUST SET A VERY BRIEF BRIEFING SCHEDULE?  WE HAVE SO MUCH TO

14   COVER TODAY.  I DON'T WANT TO NOW HAVE ORAL ARGUMENT ON A

15   MOTION THAT WE HAVEN'T EVEN BRIEFED.  THAT WAS, LIKE, ONE

16   SENTENCE IN THE JOINT PRETRIAL STATEMENT FILING.

17        SO --

18             MS. KREVANS:  I WOULD APPRECIATE THAT, YOUR HONOR,

19   BECAUSE THIS IS THE FIRST TIME WE'VE HEARD THIS AS WELL.

20             THE COURT:  ALL RIGHT.  SO WE OBVIOUSLY NEED TO DO

21   THIS QUICKLY.  WHAT ABOUT FIVE PAGES EACH?

22             MR. WATSON:  THAT'S PLENTY, YOUR HONOR.

23             THE COURT:  OKAY.  SO WHEN -- I THINK YOU SHOULD GO

24   FIRST SINCE IT'S YOUR MOTION TO STRIKE.

25             MR. WATSON:  SURE.  SOME TIME MID-WEEK NEXT WEEK,

```
 1          YOUR HONOR?  IS THAT ACCEPTABLE?

 2               MS. KREVANS:  YOUR HONOR, I THINK SOONER WOULD BE

 3          BETTER.  WE'RE TALKING HERE ABOUT WHAT WE'RE PRESENTING AT

 4          TRIAL, AND IF WE HAVE TO REDO THIS AGAIN TO CHANGE IT TO SOME

 5          DIFFERENT DATE DEPENDING WHAT THE COURT RULES, OBVIOUSLY

 6          EVERYBODY WANTS TO HAVE THAT HAPPEN SOONER.

 7               THE COURT:  RIGHT.  AND THE JOINT PRETRIAL STATEMENT

 8          WAS FILED ON FEBRUARY 25TH.  IS THERE A REASON WHY YOU HAVEN'T

 9          FILED IT ALREADY?

10               MR. WATSON:  YOUR HONOR, WE WERE JUST WAITING FOR THE

11          COURT'S DIRECTION ON HOW YOU'D WANT US TO PROCEED ON THIS.  IF

12          YOU WANT ME TO FILE BY MONDAY ON CLOSE OF BUSINESS, I CAN DO

13          THAT.

14               THE COURT:  HOW MUCH TIME DO YOU NEED TO RESPOND?

15               MS. KREVANS:  WE'D LIKE FOUR DAYS, YOUR HONOR.  SO IF

16          I COULD SUGGEST, IF THEY FILED FRIDAY, WE COULD FILE TUESDAY.

17          THAT WOULD GET IT ALL TO THE COURT MUCH QUICKER.  AND THEY

18          OBVIOUSLY KNOW THEIR ARGUMENT.

19               THE COURT:  ALL RIGHT.  CAN YOU FILE THAT ON FRIDAY,

20          THE 7TH?

21               MR. WATSON:  IF THE COURT WOULD LIKE THAT, THAT'S

22          WHAT I'LL DO.

23               THE COURT:  I WOULD.  I HAVE SUMMARY JUDGMENT AND

24          DAUBERTS IN THE HIGH-TECH CASE ON MARCH 20TH AND 27TH, SO I

25          NEED TO GET THIS WRAPPED UP, OKAY --
```

```
1              MR. WATSON:  UNDERSTOOD.

2              THE COURT:  -- BEFORE I HAVE OTHER TIME CONSUMING

3       ISSUES.

4          SO YOU FILE ON MARCH 7TH, MR. WATSON.

5          AND, MS. KREVANS, YOU'LL FILE ON MARCH 11TH, YOU SAID?

6              MS. KREVANS:  THAT'S RIGHT, YOUR HONOR.

7              THE COURT:  OKAY.  AND JUST FIVE PAGES EACH.

8          DO YOU THINK YOU'LL NEED A REPLY?

9              MR. WATSON:  IF I COULD HAVE TWO PAGES, YOUR HONOR?

10             THE COURT:  ALL RIGHT.  I'LL GIVE YOU ONE DAY,

11      THOUGH, MARCH 12TH.

12             MR. WATSON:  THANK YOU, YOUR HONOR.

13             THE COURT:  OTHERWISE WE JUST DON'T HAVE TIME TO

14      HANDLE THE OTHER MOTIONS IN THE NEXT TWO TO THREE WEEKS.

15         OKAY.  SO THAT'S THAT ISSUE.

16         NOW, WHAT HAVE YOU RESOLVED WITH REGARD TO THE SKYROCKET

17      AND THE SEC INDUCEMENT FOR THE '172?  YOUR LETTER BRIEF SAID

18      THAT YOU'RE STILL TALKING AND TRYING TO WORK OUT A STIPULATION.

19             MS. KREVANS:  YEAH.  AND WE HAD PROPOSED A

20      STIPULATION TO SAMSUNG AND THEY SAID THEY COULDN'T AGREE TO

21      THAT STIPULATION.

22         WE ASKED THEM WHAT, WHAT RESOLUTION THEY COULD AGREE TO

23      AND THEY SAID THEY WOULD LET US KNOW TODAY.

24             THE COURT:  THEY WOULD LET YOU KNOW BY WHEN?

25             MS. KREVANS:  TODAY.
```

1          THE COURT:  OH, OKAY.

2          MS. MAROULIS:  I'M NOT SURE WE SAID WE'D LET THEM

3     KNOW TODAY.  WE LOOKED AT THE STIPULATION AND ESSENTIALLY IT

4     ASKS TO GIVE JUDGMENT AS TO THIS PRODUCT BASED ON A LETTER

5     BRIEF.

6          SO IT IS OUR POSITION THAT AS TO THIS PRODUCT, APPLE

7     WAIVED THE INFRINGEMENT ARGUMENTS.  BUT WE HAVEN'T FULLY LOOKED

8     AT THE STIPULATION AND ALL THE OTHER ISSUES TO SEE IF WE CAN --

9          THE COURT:  OTHERWISE I'M GOING TO JUST ISSUE MY OWN

10     ORDER BECAUSE SAMSUNG'S OPPOSITION TO APPLE'S SUMMARY JUDGMENT

11     MOTION DID NOT AT ALL MENTION ANY DIFFERENT NON-INFRINGEMENT

12     ARGUMENT FOR ANY PRODUCT, AND YOU WERE ON NOTICE THAT THE

13     SKYROCKET WAS AN ACCUSED PRODUCT.

14          MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.  IT WAS AN

15     ACCUSED PRODUCT.  BUT IT WAS NEVER INCLUDED IN APPLE'S EITHER

16     PROPOSED ORDER OR SUMMARY JUDGMENT MOTION PAPERS.

17          BUT IF WE MAY HAVE UNTIL THE REST OF THE WEEK TO SORT THIS

18     OUT, WE WOULD REPORT BACK TO THE COURT.

19          MS. KREVANS:  YOUR HONOR, I HAVE TO RESPECTFULLY

20     DISAGREE WITH MS. MAROULIS.  IT WAS INCLUDED IN THE PAPERS.  IT

21     WAS ONE OF THE PRODUCTS THAT WAS LISTED IN THE EXHIBITS AND IT

22     WAS ADDRESSED IN THE EXHIBITS AND THE DECLARATIONS THAT WERE

23     PROOF OF INFRINGEMENT.

24          THE ONLY PLACE IT WAS MISSING WAS IN A LIST THAT WAS IN A

25     FOOTNOTE IN THE BRIEF, AND FOR THAT WE APOLOGIZE, BUT IT WAS

1    CLEARLY COVERED BY THE MOTION.  IT'S BEEN AN ACCUSED PRODUCT

2    ALL ALONG FOR THIS PATENT.  THERE IS NO DISPUTE ABOUT THIS AND

3    THERE'S NO DISPUTE THAT STA SELLS THIS PRODUCT IN THE

4    UNITED STATES.

5         SO WE'RE JUST TRYING TO CLEAN UP WHAT'S CLEARLY A CLERICAL

6    ERROR SO WE DON'T HAVE TO WASTE THE JURY'S TIME PUTTING ON

7    PROOF THAT THIS PRODUCT INFRINGES WHEN WE'VE ALREADY PROVED IT

8    IN THE SUMMARY JUDGMENT MOTION, JUST LEFT IT OUT OF A FOOTNOTE.

9         MS. MAROULIS:  YOUR HONOR, THE SUBJECT OF JOINT AND

10   SEVERAL LIABILITY WAS NOT RAISED IN ANY OF APPLE'S PAPERS.

11        BUT WE NEED TO SPEAK WITH THE CLIENT, SO IF WE CAN GET

12   BACK TO APPLE BEFORE THE END OF THE WEEK, WE'D APPRECIATE THAT.

13        THE COURT:  OKAY.  WELL, I'LL JUST LET YOU KNOW, I'M

14   INCLINED TO ORDER -- ISSUE AN ORDER IF YOU DON'T STIPULATE,

15   BECAUSE SAMSUNG'S EXPERT TESTIFIED THAT THE NO PHYSICAL

16   KEYBOARD ARGUMENT WAS HIS ONLY NON-INFRINGEMENT POSITION FOR

17   ALL OF THE PHONES, AND THIS WAS IN APPLE'S EXPERT'S

18   DECLARATION, THE SKYROCKET, AS WELL AS IN THEIR EXHIBITS.

19        SO I'M INCLINED TO ISSUE AN ORDER CONSISTENT WITH THAT.

20        WITH REGARD TO WHETHER SEC SELLS DIRECTLY OR INDUCES ANY

21   OF THE OTHER TWO ENTITIES, THE SAMSUNG OPPOSITION TO THE MOTION

22   FOR SUMMARY JUDGMENT DID NOT AT ALL SUGGEST THAT, AND IF IT WAS

23   A DEFENSE TO SUMMARY JUDGMENT, IT SHOULD HAVE BEEN RAISED.  IT

24   WAS NOT RAISED AT ALL THAT ANY SAMSUNG DEFENDANT DID NOT SELL

25   THE '172 ACCUSED PRODUCTS IN THE U.S.

```
 1          SO THAT SHOULD HAVE BEEN RAISED AS A DEFENSE DURING THE
 2     SUMMARY JUDGMENT PROCEEDINGS IF THAT WAS, IN FACT, A DEFENSE.
 3          SO --
 4              MS. MAROULIS:  YOUR HONOR, WE UNDERSTAND YOUR
 5     DIRECTION.
 6              THE COURT:  OKAY.
 7              MS. MAROULIS:  AND WE'LL WORK WITH THAT.
 8          I JUST WANT TO ADD THAT IT'S AN ISSUE THAT WAS NEVER
 9     RAISED BY APPLE IN THEIR PAPERS AND IT'S THEIR MOTION.  BUT WE
10     UNDERSTAND THE COURT.
11              THE COURT:  RIGHT.  BUT IF YOU'RE OPPOSING A SUMMARY
12     JUDGMENT MOTION OF NON-INFRINGEMENT, YOU SHOULD HAVE RAISED IT
13     AS A DEFENSE THAT THERE WOULDN'T BE ANY INFRINGEMENT.
14          ALL RIGHT.  SO BY FRIDAY, MARCH 7TH -- LET ME ASK, IS
15     SAMSUNG -- I'M SORRY.  IS APPLE GOING TO DO ANY FURTHER CASE
16     NARROWING?
17              MS. KREVANS:  NO, YOUR HONOR.
18              THE COURT:  OKAY.  SO BY MARCH 7TH, SAMSUNG WILL FILE
19     A NOTICE OF ANY FURTHER CASE NARROWING IT INTENDS TO DO, AND
20     WILL ALSO -- WHAT ARE YOU GOING TO DO WITH REGARD TO THIS '172
21     ISSUE?
22              MS. MAROULIS:  IF THE STIPULATION IS ACCEPTABLE, WE
23     MIGHT JUST ENTER INTO A STIPULATION.
24          IF WE INTEND TO CHALLENGE IT, WE'LL NOTIFY.  BUT I'M SURE
25     WE CAN WORK IT OUT.
```

1          THE COURT:  OKAY.  THANK YOU.

2          OKAY.  SO WITH REGARD TO THE MOTIONS IN LIMINE, I'M JUST

3     PREPARED TO GIVE YOU MY RULINGS, AND I ONLY HAVE QUESTIONS ON A

4     COUPLE OF THEM, OR COMMENTS ON A COUPLE OF THEM.

5          OKAY.  LET'S DO THE SAMSUNG MOTIONS FIRST, AND THEN I'LL

6     DO THE APPLE MOTIONS.

7          WITH REGARD TO SAMSUNG MOTION IN LIMINE NUMBER 1 TO

8     EXCLUDE EVIDENCE OF SUBJECTIVE WILLFULNESS, THIS MOTION IS

9     DENIED.

10          THE COURT DID NOT MAKE A DETERMINATION OF OBJECTIVE

11     WILLFULNESS BEFORE EVIDENCE OF SUBJECTIVE WILLFULNESS IS

12     PRESENTED TO THE JURY, AND I CITE FOR THAT BARD PERIPHERAL

13     VASCULAR VERSUS W.L. GORE & ASSOCIATES, 682 F.3D 1003 AT 1008,

14     FEDERAL CIRCUIT, 2012.

15          AND THAT'S HOW WE HANDLED IT IN THE APPLE I FIRST TRIAL.

16          THE DENIAL OF APPLE'S SUMMARY JUDGMENT MOTION DOES NOT

17     EQUATE TO A FINDING THAT SAMSUNG'S DEFENSES WERE OBJECTIVELY

18     REASONABLE, AND FOR THE '172, I ACTUALLY DID GRANT SUMMARY

19     JUDGMENT OF INFRINGEMENT AS TO CERTAIN PRODUCTS.

20          THIS SHOULD HAVE BEEN PRESENTED IN A MOTION FOR FINDING OF

21     OBJECTIVE REASONABLENESS AT THE MOTION FOR SUMMARY JUDGMENT

22     PHASE, BUT SAMSUNG NEVER MADE THAT MOTION.

23          AND I THINK WITH REGARD TO THE BALANCING TEST UNDER 403,

24     BECAUSE SOME OF THIS EVIDENCE WILL BE RELEVANT FOR PURPOSE OF

25     REBUTTING OBJECTIVE -- OBVIOUSNESS, MAY BE RELEVANT TO

```
 1     INFRINGEMENT; MAY BE RELEVANT FOR THE DEVELOPMENT STORY FOR THE
 2     ACCUSED PRODUCTS; MAY BE RELEVANT TO PANDUIT FACTOR 1 FOR LOST
 3     PROFITS, WHICH REQUIRES APPLE TO SHOW DEMAND FOR THE PATENTED
 4     FEATURE, AND PANDUIT FACTOR NUMBER 2, ABSENCE OF ACCEPTABLE
 5     NON-INFRINGING ALTERNATIVES; SIMILARLY MAY BE RELEVANT TO
 6     GEORGIA-PACIFIC FACTOR NUMBER 8, PROFITABILITY OR SUCCESS OF
 7     THE PRODUCT; GEORGIA-PACIFIC FACTOR NUMBER 9, UTILITY OF THE
 8     PATENT OVER OLD MODES; AND GEORGIA-PACIFIC FACTOR NUMBER 11,
 9     THE EXTENT TO WHICH AN INFRINGER USES AN INVENTION.
10          MUCH OF THIS EVIDENCE MAY BE COMING IN FOR DAMAGES,
11     INFRINGEMENT, AND THESE OTHER PURPOSES, SO I DON'T FIND THAT
12     JUDICIAL ECONOMY WILL BE SERVED OR THAT SAMSUNG WILL BE
13     UNFAIRLY PREJUDICED BY HAVING THIS COME IN FOR THE WILLFULNESS
14     PURPOSE AS WELL.
15          NOW, OBVIOUSLY, THAT HAVING BEEN SAID, THE COURT WILL MAKE
16     AN EXHIBIT-BY-EXHIBIT DETERMINATION IF YOU DO FILE A HIGH
17     PRIORITY OBJECTION TO ANY EXHIBIT.  BUT THAT'S THE RULING ON
18     THAT MOTION.
19          AND I WOULD SAY THAT THE RULING WOULD BE SIMILAR FOR
20     SAMSUNG'S MOTION IN LIMINE NUMBER 3, EXCLUDING EVIDENCE OF
21     COPYING.  I THINK IT STILL WOULD BE RELEVANT FOR THE SAME
22     PURPOSES, DAMAGES, REBUTTING OBVIOUSNESS, PROBATIVE OF
23     POTENTIAL INFRINGEMENT, AND ALL THE PANDUIT AND GEORGIA-PACIFIC
24     FACTORS I'VE STATED, AND THE 403 BALANCING TEST WOULD COME OUT
25     THE SAME WAY, THAT IT WOULD BE HIGHLY PROBATIVE FOR THESE OTHER
```

1    ISSUES AND THAT WOULD OUTWEIGH THE UNFAIR PREJUDICE OF THE

2    EVIDENCE.

3         AND THAT IS TRUE FOR SAMSUNG'S MOTION IN LIMINE NUMBER 4,

4    EXCLUDING EVIDENCE THAT SAMSUNG COPIED IN CONNECTION WITH THE

5    GALAXY NEXUS.

6         THIS MOTION MAKES THE EXTRA ARGUMENT THAT AS FAR AS THE

7    GALAXY NEXUS, ANY INFRINGEMENT WAS BY GOOGLE, WHO DEVELOPED THE

8    SOFTWARE THAT RUNS ON THAT PRODUCT AND NOT SAMSUNG.

9         BUT REGARDLESS OF WHO IS ALLEGEDLY DOING THE COPYING,

10   COPYING EVIDENCE IS STILL RELEVANT TO THOSE SAME LOST PROFITS,

11   PANDUIT FACTORS 1 AND 2, GEORGIA-PACIFIC FACTORS 8, 9, AND 11,

12   MAY BE PROBATIVE OF INFRINGEMENT, MAY BE PROBATIVE OF REBUTTING

13   OBVIOUSNESS, MAY BE PROBATIVE OF INFRINGEMENT.

14        AND SO FOR ALL OF THESE REASONS, THE PROBATIVE VALUE I

15   THINK WOULD OUTWEIGH ANY UNFAIR PREJUDICE.

16        AGAIN, YOU'RE FREE TO MAKE AN OBJECTION TO A SPECIFIC

17   DOCUMENT AND I CAN DO A SPECIFIC BALANCING ON A

18   DOCUMENT-BY-DOCUMENT BASIS.

19        BUT THAT'S THE RULING AS TO THE MOTIONS IN LIMINE 1, 3,

20   AND 4.

21        LET'S GO TO MOTION IN LIMINE NUMBER 5.  NOW, I DO HAVE

22   SOME -- WELL, I'M GOING TO HOLD 2 AND 5 BECAUSE THOSE I HAVE

23   QUESTIONS ON.

24        LET ME GO AHEAD AND MOVE ON TO MOTION IN LIMINE NUMBER 6.

25   THAT IS EXCLUDING EVIDENCE OF DAMAGES ON SALES FOR WHICH APPLE

1    HAS OBTAINED INFRINGER'S PROFITS IN THE FIRST APPLE V. SAMSUNG

2    CASE.

3         THAT MOTION IN LIMINE IS ALSO DENIED.  WHILE THE COURT

4    AGREES WITH SAMSUNG AND APPLE AGREES THAT APPLE MAY ONLY

5    RECOVER ONE FORM OF DAMAGES FOR EACH INFRINGING SALE, HOWEVER,

6    MOST LIKELY BOTH PARTIES, BUT CERTAINLY ONE PARTY, WILL APPEAL

7    THE JUDGMENT IN THE 11-CV-1846 CASE ON INFRINGER'S PROFITS ON

8    THE GALAXY S II PRODUCTS, AND IT IS LIKELY THAT THAT JUDGMENT

9    COULD BE VACATED OR REVERSED, IN WHICH CASE APPLE MAY WANT TO

10   SEEK LOST PROFITS OR REASONABLE ROYALTY DAMAGES IN THIS CASE.

11        AND SO THE VERDICT FORM IN THIS CASE WILL SEPARATE OUT THE

12   DAMAGES FOR THE GALAXY S II PRODUCTS IN THE RELEVANT TIME

13   PERIODS SUCH THAT IF THE JUDGMENT IN THE 11-1846 CASE SURVIVES

14   APPEAL, APPLE AT THAT POINT MAY SEEK TO ACTUALLY RECOVER FOR

15   THOSE DAMAGES, OR WE'LL SEE WHAT HAPPENS WITH WHAT THE JURY

16   DOES IN THIS CASE AND WHETHER THERE'S ANY APPEAL IN THIS CASE.

17        I MEAN, I AGREE WITH YOU THERE WILL HAVE TO BE ONLY ONE

18   RECOVERY.  BUT AT THIS POINT WITH ALL OF THE APPEALS, I DON'T

19   THINK PAYMENT WILL BE HAPPENING ANY TIME SOON ON THE 11-1846

20   CASE SO THAT WE SHOULDN'T HAVE ANY ISSUE WITH DOUBLE RECOVERY.

21   SO THAT MOTION IS DENIED.

22        AT THE APPROPRIATE TIME, IF THERE IS A JUDGMENT IN FAVOR

23   OF APPLE IN THIS CASE ON THIS PARTICULAR GALAXY S II PRODUCT

24   AND BOTH SURVIVE APPEAL, THEN THE COURT WILL CONSULT WITH THE

25   PARTIES AT THAT TIME TO DETERMINE ONLY ONE RECOVERY FOR EACH

1      SALE.  OKAY?

2            WITH REGARD TO MOTION IN LIMINE NUMBER 7, TO EXCLUDE

3      EVIDENCE THAT SAMSUNG BREACHED THE PROTECTIVE ORDER, APPLE HAS

4      STATED IN ITS OPPOSITION THAT IT DOESN'T INTEND TO USE ANY

5      MATERIAL REGARDING THE PROTECTIVE ORDER VIOLATIONS UNLESS

6      SAMSUNG OPENS THE DOOR.

7            SO IN THE ABSENCE OF ANY DOOR OPENING, THE COURT BELIEVES

8      THAT ANY EVIDENCE OF PROTECTIVE ORDER VIOLATIONS WOULD BE

9      IRRELEVANT, IT WOULD BE A WASTE OF TIME, IT WOULD CONFUSE THE

10     JURY, AND IT WOULD BE SUBSTANTIALLY OUTWEIGHED BY UNFAIR

11     PREJUDICE.

12           SO MOTION IN LIMINE NUMBER 7 IS GRANTED.

13           OKAY.  LET'S GO TO 5.  WITH REGARD TO 5, I'LL TELL YOU

14     WHAT MY TENTATIVE IS.  I AM PLANNING TO GRANT SAMSUNG'S MOTION

15     IN LIMINE NUMBER 5 AS TO REVENUE, BUT I'M TENTATIVELY PLANNING

16     TO DENY AS TO PROFITS.

17           AND LET ME GIVE YOU MY REASONING.  IT DOES APPEAR THAT

18     DR. VELLTURO'S THEORY DOES TAKE INTO ACCOUNT PROFIT AND IT

19     DOESN'T SEEM TO EXPLICITLY TAKE INTO ACCOUNT THE REVENUE, AND I

20     THINK REVENUE WOULD BE MORE PREJUDICIAL ANYWAY.

21           THOSE NUMBERS CAME IN IN THE FIRST CASE BECAUSE

22     INFRINGER'S PROFITS WERE AT ISSUE AND THERE WAS A DISPUTE ABOUT

23     OPERATING EXPENSES AND EXACTLY HOW MUCH PROFIT SAMSUNG HAD

24     MADE, AND SO REVENUES AND PROFITS CERTAINLY SEEMED RELEVANT IN

25     THAT CASE.

1    BUT WE DON'T HAVE EXPLICITLY INFRINGER'S PROFITS HERE,

2    ALTHOUGH HE DOES TAKE IT INTO CONSIDERATION FOR HIS EDGEWORTH

3    BOX.

4        LET ME HEAR FROM THE PARTIES IF I WERE TO GRANT SAMSUNG'S

5    MOTION AS TO REVENUE, BUT DENY IT AS TO PROFITS.

6            MR. LEE:  YOUR HONOR, MAY I ADDRESS THAT?

7            THE COURT:  YES.  AND WHAT I'M INTERESTED IN FROM

8    APPLE IS EXACTLY HOW REVENUE AND/OR PROFIT PLAYS A ROLE IN

9    MR. -- IN DR. VELLTURO'S ANALYSIS.

10           MR. LEE:  YEAH.  I -- LET ME ANSWER THAT QUESTION

11   DIRECTLY, YOUR HONOR, AND THEN SAY LEGALLY WHY WE ALSO THINK

12   THAT REVENUE AND PROFITS COME IN.

13       SO DR. VELLTURO HAS USED BOTH TOTAL REVENUES, AND THEN

14   PROFITS ARE RELATED TO REVENUES.  THEY ARE DERIVATIVE OF TOTAL

15   REVENUES.  SO HE'S USED TOTAL REVENUES AND TOTAL PROFITS FOR

16   THREE DIFFERENT REASONS.

17       HE'S USED IT AS EVIDENCE OF PANDUIT FACTOR 1, WHICH IS

18   DEMAND FOR THE PATENTED PRODUCT, WHICH IS DEMONSTRATED BY THE

19   TOTAL REVENUES OR SALES.  THAT'S A DIFFERENT -- I'LL COME TO

20   THE LEGAL ANALYSIS IN A SECOND, BUT IT IS INDICATIVE AND THAT'S

21   WHAT HE SAYS IN HIS REPORT.  IT IS INDICATIVE OF AND EVIDENCE

22   OF DEMAND FOR THE PATENTED PRODUCT.

23       HE ALSO USES IT AS PART OF GEORGIA-PACIFIC FACTOR NUMBER

24   8, WHICH, AS YOUR HONOR KNOWS, HAS TWO PARTS.  IT IS

25   PROFITABILITY, BUT ALSO COMMERCIAL SUCCESS OF THE PRODUCT.

1      COMMERCIAL SUCCESS OF THE PRODUCT AS INDICATED BY THE PATENTED

2      PRODUCTS IS DEMONSTRATED BY BOTH TOTAL REVENUES AND PROFITS.

3              THE COURT:  BUT I AGREE WITH WHAT SAMSUNG SAYS IN

4      THAT DR. VELLTURO DOESN'T REALLY RELY ON THE GEORGIA-PACIFIC.

5      HE DOES HIS WILLINGNESS TO PAY, WILLINGNESS TO ACCEPT SORT OF

6      MEETING IN THE MIDDLE BY SAMSUNG DOUBLING THE PRICE OF ITS

7      PRODUCTS ANALYSIS.

8              MR. LEE:  HE DOES, YOUR HONOR.  BUT HE CLEARLY USES

9      BOTH TOTAL REVENUES AND TOTAL PROFITS.  HE DOES BOTH BECAUSE IF

10     HE DIDN'T DO THE GEORGIA-PACIFIC FACTORS --

11             THE COURT:  HOW DOES HE USE REVENUE?  I DIDN'T SEE

12     HOW HE USED REVENUE.

13             MR. LEE:  HE USES TOTAL REVENUE AS AN INDICATION OF

14     THE COMMERCIAL SUCCESS OF THE PATENTED PRODUCTS, AND IN ORDER

15     TO DERIVE OR TO COMPUTE PROFITABILITY, HE USES TOTAL REVENUE.

16         AND LET ME, YOUR HONOR, WHILE WE ARE --

17             THE COURT:  BUT HE DOESN'T EVEN -- I MEAN, I ASSUME

18     THAT'S A GEORGIA-PACIFIC FACTOR IN WHY HE LOOKS AT THAT.  BUT

19     HE DOESN'T REALLY RELY ON TOTAL REVENUE FOR HIS REAL ANALYSIS,

20     THE EDGEWORTH BOX ANALYSIS.

21             MR. LEE:  YOUR HONOR, I THINK THAT IT'S NOT THE CORE

22     OF HIS ANALYSIS.

23         BUT MAYBE IF I COULD START AT THE END AND THEN COME BACK,

24     WHICH IS THE LEGAL BASIS FOR THE MOTION, THE ONLY LEGAL BASIS

25     TO EXCLUDE IT IS THE ENTIRE MARKET VALUE RULE ISSUE, WHICH

```
 1        IS --

 2                 THE COURT:  WHAT ABOUT 403?  I AGREE WITH YOU ON THE

 3        ENTIRE MARKET VALUE RULE, BUT NO ONE IS ASSERTING THAT THEORY.

 4                 MR. LEE:  RIGHT.  OKAY.

 5                 THE COURT:  BUT WHAT ABOUT THE PREJUDICE, THAT YOU

 6        SHOULDN'T BE ABLE TO KEEP EMPHASIZING TO THE JURY THE TOTAL

 7        AMOUNT OF REVENUE AND THAT THAT'S OVERLY PREJUDICIAL AND NOT

 8        VERY PROBATIVE HERE WHEN HE DOESN'T RELY ON IT?

 9                 MR. LEE:  WELL, YOUR HONOR, WE CAN'T -- IN ORDER TO

10        DEMONSTRATE WHAT THE PROFITABILITY OF THE PRODUCTS IS, IT'S

11        TOTAL REVENUE MINUS TOTAL COST.

12             AS YOUR HONOR POINTED OUT IN YOUR DAUBERT RULINGS,

13        DR. CHEVALIER IS USING INCOME APPROACH.  HERS IS AN INCOME

14        APPROACH BASED ON TOTAL PROFITS OF THE ACCUSED DEVICES.

15        CROSS-EXAMINING HER ON HER PROFITABILITY ANALYSIS AND HER

16        INCOME APPROACH, WITHOUT BEING ABLE TO GET AT TOTAL REVENUES

17        AND TOTAL PROFITS, WOULD BE A CHALLENGE.

18             SO BOTH EXPERTS HAVE RELIED UPON TOTAL REVENUES, THEY'VE

19        RELIED UPON TOTAL PROFITS.

20             WHAT THE 403 ISSUE, WHICH IS THE ISSUE THAT WAS RAISED IN

21        UNILOC, IS IF YOU'RE ACTUALLY TRYING TO BASE YOUR REVENUE

22        BASE -- AND WE AGREE WITH YOUR HONOR, THERE IS NO SUGGESTION

23        THAT DR. VELLTURO WAS BASING HIS REVENUE BASE ON THE TOTAL

24        REVENUE.

25                 SO THE QUESTION IS IF IT'S NOT -- IF THERE'S NO ENTIRE
```

```
 1      MARKET VALUE ISSUE AND IF TOTAL REVENUES AND DERIVATIVELY TOTAL

 2      PROFITS ARE RELEVANT BOTH FOR LOST PROFITS ISSUES AND FOR

 3      REASONABLE ROYALTY ISSUES, IS IT SO PREJUDICIAL THAT IT

 4      SHOULDN'T COME IN?

 5          IF I JUST TAKE --

 6          THE COURT:  BUT IF YOU HAVE THE -- YOU'RE SAYING

 7      REVENUE IS RELEVANT BECAUSE THAT HELPS ME DERIVE PROFIT.  BUT

 8      IF I'M SAYING YOU CAN USE THE PROFIT, THEN WHY DO YOU NEED THE

 9      REVENUE?  YOU'VE ALREADY DONE THAT DERIVATION, SO YOU'VE

10      ALREADY GOT THE NUMBER THAT HE ACTUALLY DOES APPEAR TO

11      CONSIDER.

12          MR. LEE:  LET ME TAKE DR. CHEVALIER, BUT WHAT

13      SHE'S -- YOUR HONOR HAS ADDRESSED HER, THE ANALYSIS BASED UPON

14      LICENSES, SO SHE'S NOW -- ONE OF THE THINGS SHE'S LEFT WITH HER

15      INCOME APPROACH.  THE INCOME APPROACH BY DR. CHEVALIER IS

16      DEPENDENT UPON HER DETERMINATION OF THE PROFITABILITY OF THE

17      ACCUSED PRODUCTS.  SHE GETS THAT BY TAKING TOTAL REVENUES OF

18      THE ACCUSED PRODUCTS, DEDUCTING COSTS, MAKING A PROFITABILITY

19      DETERMINATION, AND THEN SHE USES THAT TO DERIVE ULTIMATELY HER

20      ROYALTY DETERMINATION.

21          SO I THINK, YOUR HONOR, IF THERE WERE AN ENTIRE MARKET

22      VALUE RULE ISSUE, I THINK THE 403 ANALYSIS WOULD BE DIFFERENT.

23      THAT'S WHAT UNILOC ADDRESSED.  BUT THIS IS A CIRCUMSTANCE WHERE

24      BOTH EXPERTS HAVE USED IT, BOTH OF THEM HAVE USED IT BOTH AS A

25      NUMBER, BUT ALSO TO DERIVE THE TOTAL PROFITS.
```

```
 1        AND IN THAT CONTEXT, THEY'RE -- WE DON'T THINK THE 403

 2    CONSIDERATION OUTWEIGH IT.

 3        AND IN THE PRIOR CASES, YOUR HONOR, IT WAS NOT JUST A

 4    QUESTION OF THE TOTAL REVENUES AND WHETHER THEY WERE RELEVANT

 5    TO, FOR INSTANCE, SAMSUNG'S PROFITS.  THEY WERE ALSO RELEVANT,

 6    AND WE ARGUED THIS TO YOUR HONOR IN THE 1846 CASE, THEY WERE

 7    ALSO RELEVANT TO THE LOST PROFITS ANALYSIS IN THE SAME WAY THAT

 8    DR. VELLTURO'S USING THEM HERE.

 9        THE COURT:  OKAY.  DOES ANYONE -- IS THERE A DISPUTE

10    AS TO WHAT SAMSUNG'S PROFITS ARE?  OR IS THAT A NUMBER THAT

11    BOTH SIDES AGREE?

12        MR. QUINN:  YOU KNOW, ACTUALLY, I DON'T KNOW THE

13    ANSWER TO THAT, YOUR HONOR, OFFHAND.

14        MR. LEE:  IT'S NOT AGREED, YOUR HONOR.  THERE'S A

15    DISPUTE ABOUT WHAT THEIR PROFITS ARE BETWEEN THE EXPERTS.

16        THAT'S WHY THE QUESTION OF DERIVING THEM IS IMPORTANT.

17        THE COURT:  WELL, HOW IS -- IF THE PROFIT IS

18    DISPUTED -- I'M SORRY, MR. QUINN.

19        IF THE SAMSUNG PROFIT IS DISPUTED, I'M JUST TRYING TO GET

20    A SENSE, IS IT GOING TO BE A SIMILAR SITUATION AS IN, FOR

21    EXAMPLE, A DAMAGES RETRIAL WHERE THE JURY IS GOING TO HAVE TO

22    FIGURE OUT, YOU KNOW, WHAT OPERATING EXPENSES SHOULD BE TAKEN

23    INTO CONSIDERATION SO THEY CAN DETERMINE SAMSUNG'S PROFITS?

24    AND THEN THE REVENUE NUMBER MIGHT BE RELEVANT TO THAT

25    CALCULATION?
```

```
 1            OR WHAT --

 2                MR. LEE:  YOUR HONOR, I THINK --

 3                THE COURT:  I DON'T SEE THAT HAPPENING HERE.

 4                MR. LEE:  I DON'T THINK IT'S GOING TO BE THE SAME AS

 5      IT WAS FOR SAMSUNG'S PROFITS.

 6                THE COURT:  YEAH.

 7                MR. LEE:  THIS IS GOING TO BE A MORE -- WELL, THERE

 8      ARE TWO DIFFERENT PROFITABILITY DETERMINATIONS.

 9            THERE'S DR. VELLTURO'S PROFITABILITY DETERMINATION, WHICH

10      YOU THEN USES FOR BOTH REASONABLE ROYALTY, AND HE USES THE

11      TOTAL REVENUE AS EVIDENCE FOR DEMAND FOR THE PATENTED PRODUCT.

12            DR. CHEVALIER IS THE PERSON WHO USES AN INCREMENTAL INCOME

13      APPROACH THAT REQUIRES A DETERMINATION OF BOTH TOTAL REVENUES

14      AND PROFITS.

15            THE QUESTION OF THE MANNER IN WHICH SHE'S COMPUTED THOSE

16      AND THE QUESTION OF HOW SHE'S DETERMINED THE PROFITABILITY WILL

17      BE RELEVANT TO THE CREDIBILITY AND WEIGHT OF HER OPINION, AND

18      WE WILL CROSS-EXAMINE ON THOSE ISSUES.

19                THE COURT:  LET ME ASK YOU, WHAT IF ONE COMPROMISE

20      WOULD BE THAT YOU COULD ASK A QUESTION OF DR. VELLTURO ABOUT

21      IT, BUT THEN YOU'RE NOT ABLE TO CONSTANTLY RAISE IT IN OPENING

22      OR CLOSING, BECAUSE THEN IT'S OVERLY PREJUDICIAL IF YOU KEEP

23      DOING YOUR COMPARISON OF WE'RE ONLY ASKING FOR X AMOUNT WHICH

24      IS, YOU KNOW, 3 PERCENT OF THIS TOTAL REVENUE NUMBER, WHICH I

25      CAN SEE SAMSUNG'S POINT THAT THEY THINK THAT THAT IS
```

1    PREJUDICIAL TO THEM.

2              MR. LEE:  WELL, I HADN'T THOUGHT IT ALL THE WAY

3    THROUGH, YOUR HONOR.  WHAT IF -- WOULD WE BE ABLE TO USE THE

4    TOTAL PROFITABILITY NUMBER IN THE OPENING?

5              THE COURT:  HOW DOES THAT RELATE TO HIS EDGEWORTH BOX

6    THEORY?

7              MR. LEE:  WELL, THE TOTAL PROFITABILITY RELATES -- HE

8    ACTUALLY, IN HIS REPORT AT PARAGRAPHS 470 TO 474 AND 476 TO

9    478, HE DOES GO THROUGH THE GEORGIA-PACIFIC FACTOR AS WELL AND

10   HE SPECIFICALLY IDENTIFIES THESE ISSUES.

11             THE COURT:  BUT THAT'S NOT REALLY WHAT HE RELIES ON

12   FOR HIS THEORY, RIGHT.  HIS THEORY IS THE EDGEWORTH BOX.

13             MR. LEE:  FOR LACK OF A BETTER TERM, IT IS A CHECK ON

14   HIS ANALYSIS SO THAT HE HAS CONFIRMED THAT HE'S USED THE

15   GEORGIA-PACIFIC FACTORS AS WELL TO COME TO A COMPARABLE RESULT.

16       I MEAN, IF WHAT YOU'RE ASKING --

17             THE COURT:  I'M SORRY TO INTERRUPT YOU.  IS HE GOING

18   TO SAY, LOOK, I HAVE THESE DIFFERENT ANALYSES THAT I'VE DONE,

19   AND MY ULTIMATE CONCLUSION IS CONSISTENT WITH ALL OF THEM?

20             MR. LEE:  I THINK IT'S MORE LIKELY, YOUR HONOR, THAT

21   HE'LL DO HIS EDGEWORTH BOX ANALYSIS, COME TO HIS OPINIONS, AND

22   SAY, AND I HAVE, IN ADDITION, DONE GEORGIA-PACIFIC ANALYSIS.

23   I'VE RUN THROUGH THE FACTORS, IN MUCH THE SAME WAY THAT

24   MS. DAVIS DID WHEN SHE HAD RUN THROUGH THE EVIDENCE IN

25   DEMONSTRATING HER LOST PROFITS ANALYSIS.  SHE GOT TO REASONABLE

1    ROYALTY AND SAID SAME FACTORS, SAME CONSIDERATIONS, I

2    CONSIDERED THE FACTORS.

3         BUT THAT WILL -- IT'S CONFIRMATION.

4              THE COURT:  AND I CONSIDERED THE FACTORS AND THEY

5    CONFIRM MY EDGEWORTH BOX CONCLUSION, OR WHAT?  NO RELATIONSHIP.

6              MR. LEE:  I THINK -- SUBSTANTIVELY, YES.

7              THE COURT:  SUBSTANTIVELY?

8              MR. LEE:  THAT'S BASICALLY RIGHT.  THAT'S BASICALLY

9    RIGHT.

10             THE COURT:  THAT THE GEORGIA-PACIFIC ANALYSIS

11   CONFIRMS MY EDGEWORTH BOX.

12             MR. LEE:  YES.

13             THE COURT:  OKAY.  AND YOU'RE SAYING FOR THAT ONE YOU

14   NEED PROFITABILITY?

15             MR. LEE:  YES.

16             THE COURT:  OKAY.

17             MR. LEE:  AND TO CROSS-EXAMINE DR. CHEVALIER.  AND

18   I'M GOING BACK TO A QUESTION ON THE OPENING, YOUR HONOR.

19             THE COURT:  I GUESS I DON'T QUITE AGREE WITH YOU THAT

20   DR. CHEVALIER REALLY RELIES ON -- I'M GOING TO ALLOW PROFITS.

21   I'M GOING TO ALLOW PROFITS --

22             MR. LEE:  OKAY.

23             THE COURT:  -- BECAUSE THERE IS SOME DISCUSSION OF

24   THAT, EVEN IN DR. VELLTURO'S EDGEWORTH BOX DISCUSSION.  BUT I'M

25   NOT GOING TO ALLOW REVENUE.

```
 1              MR. LEE:  SO, YOUR HONOR, IN ORDER TO, WE THINK LONG,

 2     KIND OF MAKE A SUGGESTION?

 3              THE COURT:  WHAT'S THAT?

 4              MR. LEE:  WE WOULD TAKE YOUR HONOR'S ADMONITION NOT

 5     TO MENTION TOTAL REVENUES IN THE OPENING, BUT MIGHT ADDRESS

 6     TOTAL PROFITS.  BEFORE WE RAISE THE ISSUE OF TOTAL REVENUES

 7     WITH DR. VELLTURO OR WITH DR. CHEVALIER, WE'LL RAISE IT WITH

 8     YOUR HONOR SO THAT YOU KNOW IT'S COMING AND YOU KNOW IN WHAT

 9     CONTEXT.

10              THE COURT:  I'M SORRY.  I DIDN'T HEAR THAT LAST PART.

11              MR. LEE:  BEFORE WE RAISE THE ISSUE OF TOTAL REVENUES

12     WITH DR. VELLTURO OR ON CROSS-EXAMINATION WITH DR. CHEVALIER,

13     WE'LL RAISE IT WITH YOU IN THE BRIEFING THE DAY BEFORE SO YOU

14     KNOW THAT IT'S COMING.

15              THE COURT:  WELL, I'M NOT EVEN HEARING THAT THEY EVEN

16     REALLY RELIED ON --

17              MR. LEE:  THE REASON I MAKE THIS PROPOSAL, YOUR

18     HONOR, IT ALLOWS US TO GIVE YOU SOME CONTEXT.  I UNDERSTAND

19     WHAT YOU'RE SAYING ABOUT TOTAL REVENUES IN THE OPENING, BUT IF

20     WE COULD TALK ABOUT THE PROFITABILITY OF THE PRODUCTS, THAT

21     MIGHT BE SUFFICIENT FOR OPENING PURPOSES.

22          BUT TO GO BACK TO YOUR HONOR'S SUGGESTION ABOUT ASKING

23     DR. VELLTURO ABOUT THE REVENUES, ASKING DR. CHEVALIER ABOUT THE

24     REVENUES FOR PURPOSES OF TESTING THE OPINIONS ON PROFITABILITY,

25     WE THINK WE SHOULD BE ABLE TO DO THAT AND I'M PRETTY SURE THAT
```

```
 1     WE CAN DEMONSTRATE THE CONTEXT TO YOU, THAT IT'S A FAIR

 2     QUESTION, NOT OUTWEIGHED BY RULE 403 CONSIDERATIONS.

 3          BUT GIVEN YOUR HONOR'S CONCERN, WE'RE HAPPY TO RAISE IT

 4     WITH YOU IN ADVANCE SO YOU KNOW IT'S COMING AND IF YOU HAVE

 5     DIFFERENT INSTRUCTIONS FOR US, WE'LL KNOW.

 6          THE COURT:  ALL RIGHT.  LET ME HEAR FROM MR. QUINN.

 7          YOU SEE MY QUANDARY.  I AM SYMPATHETIC TO YOUR POSITION

 8     THAT THEM THROWING AROUND THIS TOTAL REVENUE NUMBER IS HIGHLY

 9     PREJUDICIAL.  BUT ON THE OTHER HAND, I DON'T UNDERSTAND TO --

10          MR. QUINN:  I UNDERSTAND, YOUR HONOR.

11          THE COURT:  -- NOT ALLOW THEM TO HAVE THEIR EXPERT

12     TESTIFY AS TO WHAT HE CONSIDERED.

13          MR. QUINN:  THIS DISCUSSION IS TAKING PLACE UNDER A

14     MISCONCEPTION.

15          THE COURT:  OKAY.

16          MR. QUINN:  DR. VELLTURO DOES NOT TALK ABOUT GROSS

17     PROFITS.  THAT'S WHAT THEY WANT TO TALK ABOUT.  IF YOU LOOK AT

18     THE PARAGRAPHS OF DR. VELLTURO'S REPORT THAT MR. LEE JUST CITED

19     YOU TO, PARAGRAPH 470, ET SEQ, HE TALKS ABOUT PROFIT MARGINS.

20          HE TALKS ABOUT BOTH SIDES' PROFIT MARGINS.  I'M TOLD

21     SOMEWHERE HE TALKS ABOUT PER UNIT PROFITS.  BUT THERE'S NOWHERE

22     IN HIS EDGEWORTH BOX ANALYSIS OR ELSEWHERE DOES HE RELY ON

23     SAMSUNG'S GROSS PROFITS.

24          AND THAT'S THE NUMBER THAT APPLE WANTS TO GET OUT AND PUT

25     IN FRONT OF THE JURY.  IT SHOULDN'T COME IN FOR THE SAME
```

1      REASONS THAT THE GROSS REVENUES SHOULDN'T COME IN.

2            AND, YOUR HONOR, THEY TELL YOU THAT --

3            THE COURT:  BUT DID HE COME UP -- I'M SORRY TO

4      INTERRUPT YOU.  DID HE COME UP WITH THE PROFIT MARGIN AND THE

5      PER UNIT PROFIT FOR THE ACCUSED PRODUCTS?  OR IS THAT SOMETHING

6      HE DERIVED FROM THE TOTAL PROFIT NUMBERS?  AND IF THERE'S A

7      DISPUTE AS TO WHAT THOSE NUMBERS SHOULD BE, HOW CAN I PREVENT

8      APPLE FROM TRYING TO --

9            MR. QUINN:  I MEAN --

10           THE COURT:  -- EXPLAIN THEIR CALCULATION.

11           MR. QUINN:  YOUR HONOR, HIS POINT IS HE RELIES ON

12     WHAT THE GROSS PROFIT MARGIN IS.

13           THE COURT:  OKAY.

14           MR. QUINN:  AND I'M TOLD SOMEWHERE, AND I COULDN'T

15     FIND IT, HE TALKS ABOUT PER UNIT PROFITABILITY.

16           THE COURT:  OKAY.

17           MR. QUINN:  SO THAT'S IN HIS REPORT.

18        THAT ISN'T WHAT APPLE IS ASKING FOR NOW.  APPLE WANTS TO

19     PUT IN WHAT SAMSUNG'S GROSS PROFITS ARE.

20           THE COURT:  FOR THE ACCUSED PRODUCTS.

21           MR. QUINN:  YES.

22           THE COURT:  OKAY.

23           MR. QUINN:  AND DR. VELLTURO DOESN'T RELY ON THAT.

24     IT SHOULDN'T COME IN.  IT'S GROSSLY PREJUDICIAL.

25           AND THEY ASSERT IN THEIR BRIEF, YOUR HONOR, THAT

1      DR. CHEVALIER ALSO RELIED ON WHAT SAMSUNG'S PROFITS WERE, GROSS

2      PROFITS WERE.  AND THEY CITE THE COURT TO PARAGRAPH 336 OF HER

3      REPORT.

4           AND IF THE COURT, IF IT READS 336, WILL SEE THAT'S NOT IN

5      THERE AT ALL EITHER.  SHE DOES NOT RELY ON SAMSUNG'S GROSS

6      PROFITS IN ANY SENSE AT ALL.  SHE REFERS TO PER UNIT

7      PROFITABILITY.

8           SO OUR MOTION IS NOT DIRECTED TO PER UNIT PROFITABILITY.

9      OUR MOTION IS DIRECTED TO PUTTING OUT THE BIG NUMBER OF GROSS

10     PROFITS.  IT'S NOT RELEVANT, AND IT'S EXTREMELY PREJUDICIAL.

11          THE COURT:  BUT IS THERE A DISPUTE AS TO THE GROSS

12     PROFIT MARGIN AND THE PER UNIT PROFITABILITY NUMBERS?  BECAUSE

13     IF THERE'S A DISPUTE, THEN I DON'T SEE HOW I CAN PREVENT APPLE

14     FROM GETTING --

15          MR. QUINN:  I DON'T BELIEVE -- I -- YOU KNOW, I DON'T

16     KNOW THAT THERE'S ANY DISPUTE ON THE PER UNIT PROFITABILITY,

17     YOUR HONOR.

18          THE COURT:  OKAY.

19          MR. QUINN:  BUT THE POINT IS, SHOULD THEY UNDER, YOU

20     KNOW, UNILOC AND THE MULTIMEDIA PATENT TRUST CASE, SHOULD THEY

21     BE ABLE TO TROT OUT THESE BIG GROSS PROFITS NUMBERS FOR ACCUSED

22     DEVICES OR SAMSUNG'S PROFITS GENERALLY?  SHOULD THEY BE ABLE TO

23     MAKE THAT ARGUMENT THAT WAS MADE IN CLOSING ARGUMENT IN THE

24     LAST TRIAL THAT WHAT WE'RE ASKING FOR IS A TINY FRACTION OF

25     WHAT SAMSUNG MAKES?

```
 1              AND I SUBMIT THAT'S SIMPLY NOT APPROPRIATE UNDER THE LAW.

 2              AND THE BASES ON WHICH THEY URGE THE COURT TO PERMIT THIS,

 3      YOUR HONOR, ARE SIMPLY NOT TRUE.  NEITHER EXPERT RELIES ON

 4      GROSS PROFITS, AND THAT'S WHAT THIS MOTION ADDRESSES.

 5              AS TO THE EDGEWORTH BOX AND THE GEORGIA-PACIFIC ANALYSIS,

 6      YOUR HONOR, IT'S TRUE THAT DR. VELLTURO TICKS THE BOXES AND

 7      DISCUSSES EACH OF THE FACTORS.

 8              THE COURT:  UM-HUM.

 9              MR. QUINN:  AND THE EDGEWORTH BOX HYPOTHETICALLY --

10      YOU KNOW, HAS THIS HYPOTHETICAL NEGOTIATION.  BOTH COME UP WITH

11      A CONCLUSION THE ONLY REASONABLE ROYALTY IS APPLE'S PROFITS.

12      EVERYTHING ELSE TURNS OUT TO BE IRRELEVANT.  HE ACKNOWLEDGED IN

13      HIS DEPOSITION -- I TOOK HIS DEPOSITION -- THAT NONE OF THE

14      OTHER FACTORS, YOU KNOW, HE THOUGHT WERE RELEVANT.  HE LOOKED

15      AT THEM SO YOU COULD SAY HE CHECKED THE BOX, BUT AT THE END OF

16      THE DAY, THEY DIDN'T INFLUENCE HIS OPINION AT ALL.

17              THE ONE THOUGHT I'D LIKE TO LEAVE YOU WITH, YOUR HONOR, IS

18      WHAT'S BEEN URGED AS THE BASIS FOR BEING ABLE TO PUT IN THE BIG

19      NUMBER IS SIMPLY NOT ACCURATE.  NEITHER EXPERT RELIED ON THAT.

20              THE COURT:  WELL, HE DOES -- DR. VELLTURO DOES

21      CONSIDER THE TOTAL REVENUES WITH RESPECT TO GEORGIA-PACIFIC

22      FACTORS, AND THE PROBLEM IS EVEN IF THAT'S NOT THE CRUX OF HIS

23      THEORY, EVERY EXPERT IS GOING TO HAVE TO GET UP ON THE STAND

24      AND SAY, AS YOU SAID, THAT THEY'VE TICKED THE BOX, THEY'VE GONE

25      THROUGH THE FACTORS AND THEY'VE CONSIDERED THEM.
```

```
 1          MR. QUINN:  RIGHT.

 2          THE COURT:  IF I SAY, OH, YOU CAN'T TALK ABOUT FACTOR

 3     NUMBER 11 AND FACTOR NUMBER 8 BECAUSE NOW THAT'S PRECLUDED,

 4     THEN YOU'RE GOING TO GET UP AND SAY, HOW INCOMPLETE WAS HIS

 5     ANALYSIS.  HE DIDN'T EVEN CONSIDER THE FACTORS HE'S SUPPOSED TO

 6     CONSIDER.

 7          MR. QUINN:  WE PROMISE WE WON'T SAY IT'S INCOMPLETE

 8     BECAUSE HE DIDN'T MENTION THAT.  THE POINT IS, YOUR HONOR --

 9          THE COURT:  DO YOU SEE WHAT I'M SAYING?  I THINK IT

10     MIGHT BE PROBLEMATIC IF HE DID TICK THROUGH THE FACTORS TO NOT

11     EVEN LET HIM DO THAT, BECAUSE THEN IT'LL LOOK LIKE HIS ANALYSIS

12     IS INCOMPLETE.

13          MR. QUINN:  BUT PANDUIT FACTOR 1, DEMAND FOR THE

14     PRODUCT, THEY DON'T HAVE TO SAY WHAT OUR GROSS REVENUES ARE.

15     THEY DON'T HAVE TO SAY THAT.  THEY DON'T HAVE TO SAY WHAT OUR

16     PROFITS ARE.  THAT BOX IS CHECKED.

17          AND IT DOESN'T -- YOU KNOW, UNDULY PREJUDICIAL, DOESN'T

18     THAT ANALYSIS COME INTO PLAY HERE SOMEWHERE?  BECAUSE WE HAVE

19     THESE DECISIONS WHERE COURTS SAID YOU CAN'T TAKE THAT -- YOU

20     CAN'T PUT THAT CAT BACK IN THE BAG ONCE THAT BIG NUMBER IS OUT

21     THERE.

22          AND IT'S COMPLETELY INAPPROPRIATE.  IF YOU HAVE A

23     SITUATION WHERE THEY CAN'T, YOU KNOW, MEET THE ENTIRE MARKET

24     VALUE RULE AND THERE'S NO CLAIM THAT THAT'S -- THAT THAT

25     APPLIES HERE, SO THEY SHOULD HAVE NO BASIS FOR MENTIONING GROSS
```

1    REVENUES.

2          IT'S JUST -- YOU KNOW, IT'S EXTRAORDINARILY PREJUDICIAL.

3    AND WE'VE GOT SOME STRONG CASE LAW ON THAT.

4              THE COURT:  WELL, I MEAN, IT WOULD BE RELEVANT TO THE

5    EXTENT TO WHICH THE ALLEGED INFRINGER USED THE INVENTION,

6    GEORGIA-PACIFIC FACTOR 11, PROFITABILITY OR SUCCESS OF THE

7    PRODUCT, GEORGIA-PACIFIC FACTOR 8, AND HE APPEARS TO HAVE AT

8    LEAST, AS YOU SAID, CHECKED THE BOX ON THOSE TWO FACTORS WITH

9    THE TOTAL REVENUES.

10          SO IF I SAY YOU CAN'T EVEN TESTIFY TO THAT, EVEN THOUGH

11    IT'S IN YOUR EXPERT REPORT --

12              MR. QUINN:  WELL, YOUR HONOR, WE DON'T HAVE ANY

13    OBJECTION TO HIM SAYING HE CONSIDERED IT.  THAT CHECKS THE BOX.

14          BUT WHY SHOULD HE BE ABLE TO GO THE STEP FORWARD AND TELL

15    THE JURY THE HUGE NUMBER?  I MEAN, ESPECIALLY SINCE, AT THE END

16    OF THE DAY, HIS CONCLUSION WAS IT ALL DEFAULTS TO WHAT APPLE'S

17    PROFITS WERE, AND HE FOUND NONE OF THE OTHER FACTORS RELEVANT.

18          I MEAN, THAT'S THE VERY DEFINITION OF SOMETHING WHERE, YOU

19    KNOW, THE PROBATIVE VALUE IS OUTWEIGHED BY THE PREJUDICIAL

20    EFFECT, BECAUSE THEIR OWN EXPERT SAID IT DIDN'T MATTER, IT

21    DIDN'T FACTOR INTO HIS ANALYSIS.

22              THE COURT:  BUT HE SAYS THAT SAMSUNG WOULD COME UP TO

23    THE PRICE THAT APPLE'S WILLING TO ACCEPT BY DOUBLING THE PRICE

24    OF THEIR DEVICES, AND DID HE DO ANY PROFITABILITY CONSIDERATION

25    TO BE ABLE TO SAY THAT THEY COULD DOUBLE THE PRICE AND STILL

```
 1        MAKE A LIVING AND --

 2              MR. QUINN:  IT'S NOT --

 3              THE COURT:  -- AND PAY THE LICENSE FEE?

 4              MR. QUINN:  WE THINK IT'S A BIT OF A RABBIT OUT OF

 5        THE HAT.  HE SAID, WELL, SAMSUNG WOULD BE ABLE TO DOUBLE ITS

 6        PRICES.

 7            YOU KNOW, HE DOESN'T BASE THAT ON ANYTHING RELATING TO THE

 8        GROSS PROFITABILITY, SAMSUNG'S GROSS PROFITABILITY.

 9            AGAIN, THERE IS REFERENCE TO PER UNIT PROFITABILITY.  AND

10        THAT'S NOT WHAT THIS MOTION IS DIRECTED TO.

11              THE COURT:  WHAT IF WE DID THIS, JUST KIND OF A

12        COMPROMISE:  IF IT'S IN HIS REPORT, THEN I FEEL LIKE IT'S

13        SOMEWHAT PROBLEMATIC TO NOT LET HIM TESTIFY TO IT DURING DIRECT

14        OR CROSS.

15            BUT WHAT IF I PROHIBITED APPLE FROM MAKING THE ARGUMENT

16        THAT YOU RAISE THAT, OH, LOOK IN COMPARISON TO THESE TOTAL

17        NUMBERS.  THIS IS A TINY PIECE OF THE PIE AND SAY YOU CAN'T

18        MAKE THAT ARGUMENT BECAUSE I DON'T THINK THAT'S APPROPRIATE.

19        THAT'S CERTAINLY NOT THE ARGUMENT THAT THEIR DAMAGES EXPERTS

20        ARE MAKING.  THAT'S CERTAINLY NOT SOMETHING THAT THEY HAVE PUT

21        FORTH AS A DAMAGES THEORY AND SAY, WELL, YOU CAN'T MAKE THAT

22        ARGUMENT, EITHER IN OPENING OR CLOSING AS TO EITHER PROFITS OR

23        AS TO TOTAL REVENUES.

24            BUT IF YOUR EXPERT CONSIDERED IT AS PART OF THEIR

25        ANALYSIS, THEN THEY CAN AT LEAST TESTIFY TO IT DURING DIRECT OR
```

```
 1    CROSS.
 2              MR. QUINN:  I APPRECIATE WHERE THE COURT IS GOING
 3    WITH THIS, BUT, YOU KNOW, I DON'T THINK THAT SOLVES THE
 4    PROBLEM.  AN EXPERT CAN'T PUT JUST ANYTHING IN THEIR REPORT AND
 5    THEN SAY, WELL, IT'S IN MY REPORT, I CONSIDERED IT, THEREFORE,
 6    I HAVE TO BE ABLE TO SAY IT.  IF THEY'RE UNDER UNILOC AND OTHER
 7    CASE LAW, THIS SHOULD NOT COME IN.  THIS IS REGARDING JUST, YOU
 8    KNOW, UNDULY PREJUDICIAL.
 9         THE FACT THAT AN EXPERT PUT IT IN THEIR REPORT, YOU KNOW,
10    SHOULDN'T SOLVE THAT PROBLEM.  IT DOESN'T GET US OUT FROM UNDER
11    WHAT THE LAW REQUIRES.
12         AGAIN, WHAT HE TALKS ABOUT IS AVERAGE SELLING PRICE -- AND
13    I'M LOOKING AT MR. VELLTURO'S REPORT, PARAGRAPH 431 -- HE TALKS
14    IN TERMS OF AVERAGE SELLING PRICES.  YOU KNOW, $15 PER UNIT,
15    $19 PER UNIT, AND THEN HE TALKS ABOUT PROFIT INCREASES -- I'M
16    SORRY -- WHAT THE AVERAGE PRICE INCREASE WOULD BE AND WHAT THE
17    PROFIT PER UNIT WOULD BE OF ROUGHLY $19 AND $15 RESPECTIVELY
18    PER UNIT, AND THEN SOME OTHERS, $45 PER UNIT AND $35 PER UNIT.
19         YOUR HONOR, HE DOESN'T TALK ABOUT GROSS PROFITS.  THEY
20    SAID HE DOES.  THEY CITED YOU SOME PARAGRAPHS.  IT'S NOT THERE.
21         NOW, MR. LEE MENTIONED PARAGRAPH 470 AND FOLLOWING.  WE
22    CAN LOOK AT THAT.  I'M LOOKING AT PARAGRAPHS 434 -- I'M AT 431,
23    432, 434 FROM DR. VELLTURO'S REPORT.  IT'S ALL PER UNIT.
24              THE COURT:  ALL RIGHT.  CAN I ASK, BECAUSE I WAS NOT
25    AWARE THAT -- I THOUGHT YOU DIDN'T WANT ANY REFERENCE TO -- I
```

```
 1        THOUGHT THE MOTION WAS BROADER.
 2              MR. QUINN:  WE DON'T HAVE AN OBJECTION TO THE PER
 3        UNIT NUMBERS, YOUR HONOR.
 4              THE COURT:  OR --
 5              MR. QUINN:  PER UNIT NUMBERS.
 6              THE COURT:  OR GROSS PROFIT MARGINS.
 7              MR. QUINN:  OR GROSS PROFIT MARGINS, WE DON'T HAVE AN
 8        OBJECTION TO THAT.
 9           BUT THE MOTION IS DIRECTED TO THE TOTAL GROSS NUMBERS,
10        PROFITS AND REVENUES, WHICH IS WHAT THEY WANT TO PUT OUT.
11              THE COURT:  AND YOU DON'T HAVE AN OBJECTION TO GROSS
12        PROFIT MARGINS?
13              MR. QUINN:  NO.
14              THE COURT:  OKAY.  OKAY.  WELL, I WILL -- ARE THERE
15        SPECIFIC PARAGRAPHS THAT YOU WANT ME TO LOOK AT BEYOND WHAT
16        YOU'VE ALREADY BRIEFED?
17              MR. LEE:  YOUR HONOR, I WOULD JUST, IN RESPONSE TO
18        MR. --
19              MR. QUINN:  WAS THAT DIRECTED TO ME OR TO MR. LEE?
20              THE COURT:  IT'S DIRECTED TO YOU, BUT MR. LEE CAN
21        ALSO GIVE HIS TWO CENTS.
22              MR. LEE:  YOU GO FIRST.
23              MR. QUINN:  WHAT THE DID -- THE MOTION -- I DON'T
24        KNOW THE PARTICULAR PARAGRAPHS BECAUSE THE GROSS NUMBERS AREN'T
25        IN THIS.
```

```
 1              THE COURT:  OKAY.

 2              MR. QUINN:  SO THE MOTION IS DIRECTED TO WHAT ISN'T

 3    THERE AND SHOULD NOT COME IN.

 4              THE COURT:  UM-HUM.  OKAY.

 5              MR. LEE:  YOUR HONOR, I WOULD DIRECT YOU TO PARAGRAPH

 6    476, AND SINCE THE CORE OF THIS MOTION IS, IS IT IN THE REPORT

 7    OR NOT, DOES HE RELY UPON IT?  SECOND SENTENCE:  "AS SHOWN IN

 8    EXHIBIT 10," AND THIS IS REFERRING TO GEORGIA-PACIFIC FACTOR

 9    NUMBER 11, SO MR. QUINN WAS IN A DIFFERENT PLACE, THIS IS

10    PARAGRAPH 476, "AS SHOWN IN EXHIBIT 10, SAMSUNG HAS

11    INCORPORATED THE PATENTED INVENTIONS AND ACCUSED PRODUCTS THAT

12    HAVE GARNERED $12.6 BILLION IN REVENUES DURING THE DAMAGES

13    PERIOD FROM JUNE 2011 THROUGH 2013.  THESE ACCUSED PRODUCTS

14    COMPRISE A SIGNIFICANT NUMBER OF THE SMARTPHONES AND TABLETS

15    THAT SAMSUNG HAS RELEASED DURING THE DAMAGES PERIOD."

16         THEN USING -- THIS IS THE GROSS REVENUE NUMBER THAT

17    MR. QUINN SAYS WAS NOT IN THE REPORT.  THE NEXT TWO PARAGRAPHS

18    ARE HIS ANALYSIS OF GEORGIA-PACIFIC FACTOR NUMBER 11 BASED UPON

19    THAT.

20         IF YOUR HONOR TURNS BACK ONE PAGE TO PARAGRAPH 470, WHICH

21    ADDRESSES GEORGIA-PACIFIC FACTOR NUMBER 8, YOU'LL FIND A

22    DISCUSSION OF EXHIBIT 10.

23         EXHIBIT 10 DOES COMPUTE GROSS PROFIT MARGINS, BUT WHAT

24    YOUR HONOR WILL SEE IF YOU LOOK AT EXHIBIT 10, PRODUCT BY

25    PRODUCT, IT DOES SO BY TAKING GROSS REVENUES, SUBTRACTING COSTS
```

1    OF GOODS SOLD, AND COMPUTING MARGINS.

2         AND IN PARAGRAPHS 470 AND 471, IT USES THE INFORMATION

3    FROM EXHIBITS 8, 9, AND 10, ALL OF WHICH HAVE GROSS REVENUE

4    NUMBERS IN THAT ANALYSIS.

5         SO IF THE CORE OF OUR DISPUTE IS DID HE RELY UPON IT, THE

6    ANSWER IS YES.  IT'S THERE IN BLACK AND WHITE.

7         AND THE LAST THING I'LL SAY BECAUSE I KNOW YOUR HONOR HAS

8    OTHER MOTIONS TO ADDRESS, IS UNILOC IS AN ENTIRE MARKET VALUE

9    RULE CASE.  DR. VELLTURO DOES NOT BASE HIS ROYALTY -- HIS

10   ROYALTY BASE IS NOT BASED UPON THE ENTIRE MARKET VALUE OF ANY

11   PRODUCT.  SO THE UNILOC CONCERN IS NOT AT ISSUE HERE.

12        THE COURT:  ALL RIGHT.  WELL, I'LL -- I WILL TAKE

13   THIS ONE, NUMBER 5, UNDER SUBMISSION.  I'LL TELL YOU MY

14   TENTATIVE AT THE MOMENT IS TO ALLOW -- I MEAN, IF IT IS -- IF

15   DR. VELLTURO DID CONSIDER TOTAL REVENUE AND GROSS PROFIT IN HIS

16   ANALYSIS, EVEN IF IT WASN'T THE CRUX OF HIS ULTIMATE THEORY, I

17   THINK IT WOULD BE MORE PROBLEMATIC TO PROHIBIT HIM FROM

18   TESTIFYING TO SOMETHING THAT HE ACTUALLY CONSIDERED.

19        AND I THINK THAT WOULD OPEN HIM UP TO BEING A NON -- NOT

20   COMPREHENSIVE DAMAGES EXPERT AND NOT DOING A THOROUGH AND

21   COMPLETE ANALYSIS.

22        HAVING SAID THAT, WHILE IT MIGHT BE ALLOWED DURING

23   DR. VELLTURO'S EXAMINATIONS, I WOULD NOT ALLOW IT IN OPENING

24   AND CLOSING, PARTICULARLY IN THE WAY THAT APPLE USED IT IN THE

25   LAST RETRIAL BECAUSE I DON'T THINK THAT IS THEIR DAMAGES THEORY

 1    AND THEY SHOULDN'T CONTINUE TO THROW THAT OUT, THAT SORT OF

 2    PERCENTAGE ARGUMENT.

 3         OKAY.  LET'S GO TO THE NEXT SAMSUNG ONE, AND THAT IS

 4    NUMBER 2.  OKAY.  FIRST OF ALL, IS THERE AN ENGINEER WHO HAS

 5    TESTIFIED ABOUT APPLE'S PRACTICE OF UNASSERTED CLAIMS OF EITHER

 6    THE '414 OR THE '959, OR IS THERE ONLY TESTIMONY AS TO THE

 7    '172?

 8         MS. MAROULIS:  YOUR HONOR, WE'RE NOT AWARE OF ANY,

 9    BUT THE TEAM IS CHECKING.

10         THE COURT:  ALL RIGHT.  WHAT ABOUT APPLE?  DO YOU

11    KNOW OF ANY?

12         MS. MAROULIS:  WE BELIEVE IT WAS JUST EXPERTS.

13         THE COURT:  I'M SORRY?

14         MS. MAROULIS:  WE BELIEVE IT WAS JUST EXPERT

15    TESTIMONY.

16         THE COURT:  ABOUT OTHER APPLE PRODUCTS PRACTICING THE

17    UNASSERTED CLAIMS OF THESE TWO PATENTS?

18         MS. MAROULIS:  CORRECT.

19         THE COURT:  EXPERTS TESTIFIED AS TO THAT?  AS TO THE

20    '959 AND THE '414?

21         MS. MAROULIS:  YES, IT WAS DR. SNOEREN, YOUR HONOR.

22         MS. KREVANS:  YOUR HONOR, I'D HAVE TO --

23         THE COURT:  HE TESTIFIED THAT APPLE PRACTICES THE

24    UNASSERTED CLAIMS?

25         MS. MAROULIS:  CORRECT.

```
 1              YOUR HONOR, IT WAS INDEED THE PARAGRAPHS THAT WE SOUGHT TO

 2     STRIKE WITH THE MOTION TO ENFORCE AND THE COURT STRUCK.  SO

 3     WITH RESPECT TO DR. SNOEREN, IT'S PARAGRAPHS 360 THROUGH 367.

 4              THE COURT:  OKAY.  LET ME HEAR FROM APPLE.

 5          SO YOU HAVE AN ENGINEER SAYING THAT THE '172 UNASSERTED

 6     CLAIM IS PRACTICED?  IS THAT CORRECT?

 7              MS. KREVANS:  I'M SORRY.  DO YOU WANT TO HEAR FROM

 8      SAMSUNG OR FROM APPLE, YOUR HONOR?

 9              THE COURT:  FROM APPLE.

10              MS. KREVANS:  YOUR HONOR, I'D HAVE TO CHECK.  I

11     ACTUALLY BELIEVE THAT THE ONLY INVENTOR ON THE THREE EFFECTIVE

12     PATENTS HERE WHO TALKED ABOUT WHETHER HE THOUGHT THAT APPLE

13     PRODUCTS PRACTICED ONE OF THE UNASSERTED CLAIMS WAS PERHAPS THE

14     '414 INVENTOR, BUT TO BE SURE I'D HAVE TO CHECK AND WE CAN

15     CHECK AND GET BACK TO YOU.  BUT TO BE CLEAR, YOUR HONOR.

16              THE COURT:  OKAY.  WELL, I HAVE A DEPO TRANSCRIPT OF

17     AN APPLE ENGINEER SAYING HE DID THINK THE '172 WAS PRACTICED.

18     NOW, I COULD WRONG THAT THAT WAS AN ASSERTED CLAIM VERSUS AN

19     UNASSERTED CLAIM.

20              MS. MAROULIS:  YOUR HONOR, WAS THAT MR. KOCIENDA?

21              THE COURT:  I BELIEVE SO, YES.

22              MS. MAROULIS:  THAT SOUNDS RIGHT, AND I BELIEVE

23     THAT'S '172.

24              THE COURT:  THAT'S THE '172, BUT WAS IT AN ASSERTED

25     CLAIM OR UNASSERTED CLAIM?  I THINK -- WELL, IT'S CLAIM 27, SO
```

```
 1            LET ME JUST TAKE A QUICK LOOK.

 2                 CLAIM 27 OF THE '172.

 3                      MS. MAROULIS:  AND THAT'S AN UNASSERTED CLAIM, YOUR

 4            HONOR.

 5                      THE COURT:  THAT'S A NON-ASSERTED CLAIM.

 6                      MS. KREVANS:  THAT'S CORRECT, YOUR HONOR.

 7                      THE COURT:  ALL RIGHT.  WELL, THIS IS WHAT I'M -- I

 8            HAVE A COUPLE OF MINDS AS TO THIS ONE.

 9                 AS I SAID BEFORE, IT'S NOT FAIR TO SAMSUNG FOR APPLE TO

10            SAY, WELL, I'M NOT ASSERTING CLAIM 27 OF THE '172; I'M NOT

11            ASSERTING CLAIM 11 OF THE '414; I'M NOT ASSERTING CLAIM 34 OF

12            THE '959 PATENT, BUT AT TRIAL, I'D LIKE TO BE ABLE TO SAY I

13            ACTUALLY DO PRACTICE THAT INVENTION AND GET CREDIT FOR THAT IN

14            TERMS OF WIPING OUT A POTENTIAL NON-INFRINGING ALTERNATIVE.

15                 I JUST DON'T THINK THAT'S FAIR.

16                 SO IF YOU WANT TO MAKE THAT ARGUMENT AT ALL, THEN IT NEEDS

17            TO BE ONE OF YOUR FIVE ASSERTED CLAIMS.  OKAY?

18                 I DON'T -- I'VE GIVEN YOU THE OPTION PREVIOUSLY TO MAKE

19            THAT ELECTION AND MR. KREVITT SAID NO.

20                 I KNOW IN YOUR BRIEF YOU SAY, OH, NO, WE WERE FORCED TO DO

21            THAT BECAUSE WE WERE TOLD WE WOULD LOSE OUR TRIAL DATE

22            OTHERWISE.

23                 I'M SAYING IF YOU WANT TO LITIGATE THE VALIDITY, I MIGHT

24            FIND THESE CLAIMS INVALID MYSELF OR WE CAN HAVE THE VALIDITY

25            ISSUE GO TO THE JURY.
```

```
1          I THINK CLAIM 11 REQUIRING ONLY ONE SYNC COMPONENT,
2    POTENTIALLY INVALID; CLAIM 34 REQUIRING SEARCHING ONLY ONE
3    LOCATION WITH A PLURALITY OF HEURISTICS, POTENTIALLY INVALID;
4    CLAIM 27 REQUIRING SELECTING ONLY AUTO CORRECT SPELLING AND
5    AUTO PUNCTUATION MARK, POTENTIALLY INVALID.
6          I THINK THAT'S NOT FAIR FOR YOU TO SAY, WELL, I'M NOT
7    GOING TO OPEN THIS UP TO A VALIDITY CHALLENGE, BUT I STILL GET
8    TO USE IT AND SAY I PRACTICE IT AND TO NOT ALLOW SAMSUNG TO
9    HAVE A NON-INFRINGING ALTERNATIVE ARGUMENT.
10         MS. KREVANS:  YOUR HONOR, WITH RESPECT, THAT'S NOT
11   WHAT MOTION 2 WAS ABOUT.  MOTION 2 IS ABOUT SAMSUNG TRYING TO
12   LEVERAGE OFF WHAT ACTUALLY HAPPENED AT THE SUMMARY JUDGMENT
13   HEARING AND USE IT TO TRY TO SAY THAT APPLE'S INVENTORS CAN'T
14   TESTIFY AT ALL ABOUT WHAT --
15         THE COURT:  WELL, YOUR PROPOSITION ALSO MISREPRESENTS
16   WHAT HAPPENED AT THE SUMMARY JUDGMENT HEARING.  YOU SAY, OH,
17   NO, NO, NO, THE COURT UNDERSTOOD THAT APPLE WAS ONLY
18   REPRESENTING THAT APPLE DID NOT PRACTICE THE ASSERTED CLAIMS,
19   AND THE COURT WAS NOT SAYING THAT APPLE COULD NOT ARGUE THAT IT
20   DIDN'T PRACTICE THE UNASSERTED CLAIMS.  THAT'S NOT TRUE.
21         THE WHOLE POINT OF THIS IS HOW CAN YOU ESSENTIALLY ASSERT
22   THIS CLAIM WITHOUT LETTING IT BE CHALLENGED FOR INVALIDITY?
23   THAT'S WHAT THE DISCUSSION WAS ABOUT.
24         AND WHAT YOU QUOTE IS WHAT I SAID AT THE VERY BEGINNING OF
25   THE DISCUSSION, AND THEN YOU JUST DISREGARD EVERYTHING AFTER
```

1      THAT, BECAUSE THAT WAS THE CRUX OF THIS.

2            IF YOU WANT TO PUT THIS CLAIM AT ISSUE, YOU ARE WELCOME TO

3      DO THAT.  IT JUST NEEDS TO BE ONE OF YOUR FIVE, THREE OF YOUR

4      FIVE IF YOU'D LIKE TO USE ALL THREE.  THAT'S JUST YOUR CHOICE.

5                  MS. KREVANS:  YOUR HONOR, I --

6                  THE COURT:  I'M NOT GOING TO LET THIS BE LITIGATED

7      BEHIND THE DOOR IN A SWORD AND SHIELD FASHION WHERE THEY CAN'T

8      CHALLENGE INVALIDITY, BUT YOU GET TO USE IT DEFENSIVELY.

9      THAT'S JUST NOT GOING TO HAPPEN.  WHAT'S YOUR CHOICE?

10                 MS. KREVANS:  AS WE SAID AT THE SUMMARY JUDGMENT

11     HEARING, WE HAVE NO INTENTION OF SAYING WE PRACTICE THE

12     UNASSERTED CLAIMS.

13           THE LONG BACK AND FORTH AT THE HEARING, WHICH WAS REALLY

14     EXCERPTED WE THOUGHT UNFAIRLY IN SAMSUNG'S SUPPLEMENTAL

15     BRIEF --

16                 THE COURT:  I THOUGHT IT WAS EXCERPTED UNFAIRLY IN

17     APPLE'S.

18                 MS. KREVANS:  WHAT WE TRIED TO DO IS PUT THE WHOLE

19     THING IN.

20                 THE COURT:  NO, NO.  YOU JUST QUOTE ME SAYING I SAID

21     IT WAS A FAIR PROPOSAL, WHAT APPLE WAS STATING.

22           THAT'S NOT WHAT I SAID.  THAT'S NOT WHAT I SAID AFTER I

23     UNDERSTOOD WHAT THE ISSUE WAS, AND THAT'S CERTAINLY NOT WHAT I

24     SAID FOR ALL THE PARAGRAPHS AFTER THAT ONE QUOTE.

25                 MS. KREVANS:  WE WOULD HOPE, YOUR HONOR, IN RULING ON

1    THIS THAT YOU WOULD READ THE WHOLE TRANSCRIPT.  WE JUST FELT IT

2    WAS TOO MUCH TO PUT THE WHOLE THING IN.  WE TRIED TO QUOTE

3    EVERY BACK AND FORTH.

4         THE WAY THAT THE COLLOQUY STARTED WAS WITH RESPECT TO WHAT

5    IF SAMSUNG -- IF SAMSUNG ASSERTED -- IF SAMSUNG CONTENDED THAT

6    APPLE DIDN'T PRACTICE THE PATENT AT ALL, HOW COULD APPLE

7    RESPOND?

8         BUT IMMEDIATELY AFTER THAT, IT GOT MORE SPECIFIC, AND THE

9    MORE SPECIFIC ISSUE THAT WAS THE BACK AND FORTH WAS APPLE SAYS

10   IT WON'T PRACTICE -- IT WILL NOT ASSERT THAT IT PRACTICES THE

11   UNASSERTED CLAIMS.

12        SAMSUNG GETS TO SAY TO THE JURY, APPLE DOESN'T CONTEND

13   THAT IT PRACTICES THE ASSERTED CLAIMS.

14        WE AGREE THAT SAMSUNG GETS TO CONTEND THAT.

15        AND WHAT WE UNDERSTOOD THEN AT THE HEARING WAS EVEN THOUGH

16   SAMSUNG IS GOING TO SAY THAT, AND AS THE COURT SAID AT THE

17   SUMMARY JUDGMENT HEARING, SAMSUNG HAS ALREADY SAID THAT IT WILL

18   SAY APPLE DOES NOT PRACTICE THE ASSERTED CLAIMS, THAT WON'T

19   OPEN THE DOOR TO APPLE SAYING THAT.

20        THE COURT:  LET ME INTERRUPT YOU A SECOND.  ARE YOU

21   PREPARED LITIGATE THE VALIDITY?  I'M WILLING TO DO THE VALIDITY

22   ON THESE THREE AND WE COULD POTENTIALLY INVALIDATE THESE THREE

23   UNASSERTED CLAIMS BEFORE THE TRIAL ON THIS AND IT WOULD BE A

24   NON-ISSUE.

25        LET ME ASK MS. MAROULIS, ARE YOU READY TO DO THAT?  WHAT

```
 1     WOULD YOU NEED?  DO YOU NEED EXPERT REPORTS?  FOR SOME OF

 2     THESE, THEY ARE INDEPENDENT CLAIMS FROM WHICH ASSERTED CLAIMS

 3     DEPEND, SO I WOULD ASSUME YOU HAVE THE DISCOVERY FOR IT.  YOU

 4     MAY NOT HAVE EXPERT REPORTS ON IT.

 5             MS. MAROULIS:  YOUR HONOR, I WOULD NEED TO TALK WITH

 6     THE TEAM, BUT AS YOUR HONOR KNOWS, WE ALREADY MOVED ON SUMMARY

 7     JUDGMENT ON ONE OF THE CLAIMS THAT WAS DROPPED, SO WE PRESERVE

 8     THOSE ARGUMENTS.

 9         BUT WE HAVEN'T MADE THOSE ARGUMENTS AS TO OTHER UNASSERTED

10     CLAIMS, SO WE WOULD BE REOPENING EXPERT DISCOVERY AND REOPENING

11     MOTION PRACTICE.

12             THE COURT:  IS THAT SOMETHING THAT YOU COULD DO

13     BEFORE THE END OF MARCH?

14             MS. MAROULIS:  YES, YOUR HONOR.

15             THE COURT:  OKAY.

16             MS. KREVANS:  YOUR HONOR, IF I MAY, I ACTUALLY DON'T

17     THINK THIS IS NECESSARY BECAUSE APPLE --

18             THE COURT:  NO.  WHAT YOU'RE SAYING IS THAT, THAT

19     SAMSUNG CAN ONLY SAY THAT APPLE DOES NOT PRACTICE THE ASSERTED

20     CLAIMS AND THAT THERE HAS TO BE COMPLETE SILENCE AS TO THE

21     UNASSERTED CLAIMS.  THAT'S WHAT YOU'RE SAYING; CORRECT?

22             MS. KREVANS:  NO.  WHAT WE ARE SAYING IS OUR

23     UNDERSTANDING AT THE HEARING WAS THAT IF THEY SAID THAT, IT

24     WOULDN'T OPEN THE DOOR TO US SAYING ANYTHING ABOUT WHETHER WE

25     DO PRACTICE THE UNASSERTED CLAIMS.
```

```
 1              BUT WHAT WE REQUESTED IN OUR BRIEF WAS -- AND THE COURT
 2      MAY SAY YES OR NO TO THIS -- IF THEY SAY INSTEAD APPLE DOESN'T
 3      PRACTICE THE PATENT AT ALL, WE THINK IT WOULD ONLY BE FAIR, IF
 4      THEY SAY THAT, BUT ONLY IF, FOR US TO BE ABLE TO SAY, YES, WE
 5      DO.
 6              BUT WHAT THEIR MOTION IS ABOUT IS ABOUT A DIFFERENT ISSUE.
 7              THE COURT:  WELL, THEN, WHY DON'T WE LET THE VALIDITY
 8      ISSUE GO TO THE JURY THEN?  MAYBE THEY MIGHT FIND THOSE CLAIMS
 9      INVALID.
10              MS. KREVANS:  BECAUSE, YOUR HONOR, THE CASE HAS BEEN
11      NARROWED SUCH THAT THOSE CLAIMS ARE NOT AT ISSUE, AND WE HAVE
12      NO INTENTION OF PUTTING THEM AT ISSUE.
13              WHAT THIS MOTION IS ABOUT, THE ACTUAL MOTION THAT'S IN
14      FRONT OF YOU RIGHT NOW, MOTION IN LIMINE NUMBER 2, IS SAMSUNG'S
15      ATTEMPT TO TURN THE FACT THAT THE UNASSERTED CLAIMS -- WE'RE
16      NOT GOING TO SAY WE PRACTICE THE UNASSERTED CLAIMS INTO OUR
17      INVENTORS CAN'T TESTIFY AT ALL ABOUT HOW THEY CAME UP WITH THE
18      INVENTIONS.
19              SO WE HAVE THREE PATENTS HERE --
20              THE COURT:  NO.  YOU'RE SAYING THAT THEY CANNOT SAY
21      THAT APPLE'S PRODUCTS, WHICH APPLE CONCEDES DO NOT PRACTICE THE
22      ASSERTED CLAIMS, ARE A NON-INFRINGING ALTERNATIVE.  THAT'S WHAT
23      YOU'RE SAYING, BECAUSE YOU WANT TO BE ABLE TO POINT TO
24      UNASSERTED CLAIMS THAT AT LEAST ONE ENGINEER FOR THE '172,
25      CLAIM 27, SAYS THAT APPLE PRACTICES.
```

1          MS. KREVANS:  YOUR HONOR --

2          THE COURT:  IF THAT'S YOUR POSITION, THEN I'M SAYING

3   LET'S LITIGATE THE VALIDITY AND I MAY INVALIDATE THESE

4   UNASSERTED CLAIMS BECAUSE I THINK YOU CHOSE THE CLAIMS THAT YOU

5   DID BECAUSE THEY HAVE THREE SYNC COMPONENTS INSTEAD OF ONE.  I

6   THINK IT'S EASIER TO INVALIDATE A ONE SYNC COMPONENT, THAT YOU

7   CHOSE THE REQUIRE SEARCHING A PLURALITY OF LOCATIONS BECAUSE

8   THAT IS HARDER TO INVALIDATE THAN REQUIRING SEARCHING ONLY ONE

9   LOCATION WITH A PLURALITY OF HEURISTICS, AND THE SAME FOR THE

10  '172.

11         SO THAT I THINK IS THE CRUX OF THE ISSUE.  WHY SHOULD THEY

12  NOT BE ABLE TO THE SAY THE IPHONE IS A NON-INFRINGING

13  ALTERNATIVE, AND IF THEY CAN'T DO THAT, THEN LET'S LITIGATE

14  THESE.  EITHER LET THE JURY DECIDE WHETHER THESE ARE VALID

15  CLAIMS OR NOT, OR I'LL DECIDE BEFORE THE END OF THE MONTH.

16         MS. KREVANS:  WITH RESPECT, YOUR HONOR, I ACTUALLY

17  DON'T THINK THAT'S WHAT THEY ASKED FOR IN THEIR MOTION.

18         THE COURT:  WELL, IN YOUR MOTION, YOU SAID THE COURT

19  DIDN'T LET US LITIGATE THE VALIDITY OF THE TRIAL BECAUSE SHE

20  SAID IF WE DO THAT, WE DON'T GET OUR TRIAL DATE.

21         AND I'M SAYING GO AHEAD.

22         MS. KREVANS:  YOUR HONOR, WE WANT TO GO FORWARD WITH

23  THE FIVE CLAIMS THAT WE CHOSE.  WE WILL LIVE UP TO OUR

24  REPRESENTATION THAT WE WILL NOT ASSERT THAT WE PRACTICE ANY

25  OTHER CLAIMS.

```
 1              WHAT --

 2                   THE COURT:  ANY WHAT?

 3                   MS. KREVANS:  ANY OTHER CLAIM OF THOSE PATENTS.

 4                   THE COURT:  ANY OTHER CLAIM.  SO INCLUDING UNASSERTED

 5         CLAIMS?

 6                   MS. KREVANS:  THAT'S EXACTLY CORRECT.

 7                   THE COURT:  BUT THEN SAMSUNG CANNOT ARGUE THAT APPLE

 8         PRODUCTS ARE NON-INFRINGING ALTERNATIVE BECAUSE THEN YOU WANT

 9         TO ARGUE THAT YOU DO PRACTICE THE UNASSERTED CLAIMS WHICH ARE

10         POTENTIALLY INVALID.

11                   MS. KREVANS:  I DON'T THINK --

12                   THE COURT:  THAT WAS THE WHOLE POINT OF OUR

13         DISCUSSION.  IT IS NOT FAIR TO USE IT AS A SWORD AND A SHIELD

14         AND SAY WE ARE SHIELDING IT FROM ANY VALIDITY CHALLENGE, BUT

15         WE'RE USING IT AS A SWORD TO PREVENT YOU FROM USING IT AS A

16         NON-INFRINGING ALTERNATIVE.  THAT WAS THE DISCUSSION I THOUGHT

17         I WAS HAVING AT THE SUMMARY JUDGMENT HEARING.

18              YOU CAN'T HAVE IT BOTH WAYS.  EITHER YOU'RE GOING TO USE

19         IT AND IT COUNTS AS ONE OF YOUR FIVE AND IT IS POTENTIALLY

20         GOING TO BE INVALIDATED.

21                   MS. KREVANS:  WE WILL ABIDE BY WHATEVER RULING THE

22         COURT MAKES ON THIS, YOUR HONOR.

23              I WOULD SAY, THOUGH, THAT I THINK THE MAIN POINT OF THEIR

24         MOTION WAS SOMETHING DIFFERENT, AND I DO WANT TO MAKE SURE THAT

25         WE UNDERSTAND WHAT THE COURT'S RULING IS ON THAT, BECAUSE THE
```

```
1    MAIN POINT OF THEIR MOTION APPEARED TO BE TO SAY THE INVENTORS

2    MAY NOT TESTIFY AT ALL ABOUT HOW THEY CAME UP WITH THEIR

3    INVENTIONS.

4         WE HAVE NO INTENTION OF PUTTING THE INVENTORS ON TO SAY I

5    MADE THIS INVENTION AND IT PRACTICES CLAIM X, ANY CLAIM.  THE

6    INVENTORS AREN'T GOING TO SAY THAT ABOUT ANY CLAIM FOR THESE

7    THREE PATENTS.

8         BUT WHAT THE INVENTORS OUGHT TO BE ABLE TO DO IS SAY, FOR

9    THE TWO PATENTS THAT ARE HERE, FOR THIS ISSUE HERE, THIS IS HOW

10   I CAME UP WITH THIS INVENTION.  I WAS ASKED TO WORK ON THE

11   DEVELOPMENT OF THE IPHONE.

12        THE COURT:  SO LET ME ASK YOU MY QUESTION.  WHY

13   SHOULD YOU BE ABLE TO NOT ASSERT THESE THREE CLAIMS, BUT USE

14   THEM AS A BASIS TO PREVENT SAMSUNG FROM ARGUING THAT APPLE

15   PRODUCTS ARE NON-INFRINGING ALTERNATIVES?  WHY SHOULD YOU BE

16   ABLE TO DO THAT AND NOT HAVE THE VALIDITY OF THOSE CLAIMS

17   CHALLENGED?

18        IF YOU GIVE ME A COMPELLING REASON, MAYBE YOU'LL CONVINCE

19   ME.  BUT THAT'S MY QUESTION.

20        MS. KREVANS:  WELL, YOUR HONOR, WE -- YOU'VE ALREADY

21   DECIDED THE FIRST HALF OF THIS ISSUE AND WE'RE GOING TO ABIDE

22   BY YOUR RULING.  AND IF YOU DECIDE THE SECOND HALF UNFAVORABLE

23   TO US, WE WILL ABIDE BY THAT AS WELL.

24        THE COURT:  WHICH MEANS THAT SAMSUNG COULD ARGUE THAT

25   THE APPLE PRODUCTS ARE NON-INFRINGING ALTERNATIVES.
```

```
 1            MS. KREVANS:  IF YOU RULE THAT THEY CAN, WE WILL GO

 2     FORWARD AND ABIDE BY THAT.  WHATEVER YOUR HONOR RULES, WE ARE

 3     GOING TO ABIDE BY THAT FOR THE PURPOSES OF THIS TRIAL.

 4            THE COURT:  SO YOU WOULD PREFER THAT RULING VERSUS

 5     HAVING US BRIEF AND HAVE ME RULE ON VALIDITY IN ADVANCE OF THE

 6     TRIAL OF THESE THREE UNASSERTED CLAIMS?

 7            MS. KREVANS:  YOUR HONOR, WE HAVE SELECTED THE FIVE

 8     CLAIMS THAT WE WANT TO GO TO TRIAL ON.  YOU'VE MADE THE RULINGS

 9     YOU'VE ALREADY MADE.  YOU MAY MAKE FURTHER ONES ON THIS MOTION.

10     WE WILL ABIDE BY THEM AS WELL.

11         WE WANT TO KEEP OUR TRIAL DATE AND THESE ARE THE CLAIMS

12     WE'RE --

13            THE COURT:  I'M NOT TALKING ABOUT THE TRIAL DATE.

14     I'M GIVING YOU THE CHOICE.  DO YOU WANT ME TO POTENTIALLY RULE

15     ON THE VALIDITY OF THESE UNASSERTED CLAIMS VERSUS JUST ALLOWING

16     SAMSUNG TO ARGUE THAT THE APPLE PRODUCTS ARE NON-INFRINGING

17     ALTERNATIVES?

18            MS. KREVANS:  SO THAT'S A CHOICE WE THOUGHT WAS NOT

19     AVAILABLE TO US.  MAY I CONFER WITH MY CLIENT FOR A MOMENT?

20            THE COURT:  OR HAVE THE JURY DECIDE IT AS WELL.

21         (PAUSE IN PROCEEDINGS.)

22            MS. KREVANS:  CAN I HAVE 30 SECONDS, YOUR HONOR, JUST

23     TO TALK TO MY CLIENT?

24            THE COURT:  GO AHEAD.

25         (PAUSE IN PROCEEDINGS.)
```

```
 1            MS. KREVANS:  YES, YOUR HONOR, WE WOULD LIKE TO STICK
 2    WITH OUR ORIGINAL FIVE.
 3            THE COURT:  OKAY.
 4            MS. KREVANS:  AND IF -- EVEN THOUGH WE UNDERSTAND
 5    YOUR HONOR MAY RULE -- YOU MAY HAVE ALREADY RULED JUST NOW --
 6            THE COURT:  OKAY.
 7            MS. KREVANS:  -- THAT THEY CAN ARGUE --
 8            THE COURT:  THEY CAN?
 9            MS. KREVANS:  THEY CAN ARGUE, IF YOU RULE THAT, THEY
10    CAN ARGUE THAT APPLE PRACTICES NO CLAIM IN ALL THESE PATENTS,
11    AND, THEREFORE, THAT THE IPHONE IS A NON-INFRINGING
12    ALTERNATIVE, IF THAT'S YOUR RULING, WE WILL ABIDE BY IT, AND WE
13    WOULD LIKE TO STICK WITH OUR FIVE CLAIMS.
14            THE COURT:  ALL RIGHT.  SO YOU WOULD PREFER NOT TO GO
15    AHEAD AND LITIGATE THE VALIDITY OF THESE THREE UNASSERTED
16    CLAIMS; CORRECT?
17            MS. KREVANS:  WE'VE PICKED OUR FIVE CLAIMS, YOUR
18    HONOR.  WE UNDERSTAND YOUR RULINGS.
19            THE COURT:  ALL RIGHT.
20            MS. KREVANS:  BUT THERE IS ANOTHER ISSUE RAISED BY
21    THIS MOTION.
22            THE COURT:  OKAY.  NOW, AS FAR AS WHETHER YOUR
23    INVENTORS CAN TELL THE INVENTION STORY, I THINK THAT SAMSUNG'S
24    MOTION IS OVERBROAD AND I WOULD DENY IT TO THAT EXTENT.
25        NOW, ON THE OTHER HAND, BE VERY CAREFUL WITH THEM BECAUSE
```

```
 1        IF THEY DO START TESTIFYING THAT THERE IS PRACTICING OF ANY OF

 2        THE UNASSERTED CLAIMS BY ANY APPLE PRODUCTS, THEN I DON'T EVEN

 3        WANT TO CONTEMPLATE WHAT WILL HAPPEN AT THAT POINT.  OKAY?  SO

 4        DON'T, DON'T -- PLEASE DON'T MAKE US GO THERE.

 5                MS. KREVANS:  WE WILL BE VERY CAREFUL, YOUR HONOR.

 6                THE COURT:  BE EXTREMELY CAREFUL WITH YOUR WITNESSES.

 7                MS. KREVANS:  WE WOULD JUST REQUEST THAT SAMSUNG BE

 8        EQUALLY CAREFUL WITH THE QUESTIONS THEY ASK ON

 9        CROSS-EXAMINATION.

10                THE COURT:  WELL, LET ME ASK, WE COULD DO SOME KIND

11        OF JURY INSTRUCTION, I DON'T KNOW IF THAT WOULD HELP,

12        PROPHYLACTICALLY, OR WE COULD WAIT -- I MEAN, I JUST DON'T WANT

13        TO SEE ANY PROBLEM ON THIS AND --

14                MS. KREVANS:  I THINK IT'S A LITTLE PREMATURE TO TRY

15        TO THINK ABOUT PROPHYLACTIC JURY INSTRUCTIONS.  I KNOW THAT IF

16        SAMSUNG WANTS TO, THEY CAN BE CAREFUL NOT TO ASK THE QUESTION

17        THAT CALLS FOR AN ANSWER THAT THEY'VE SAID THEY DON'T WANT A

18        WITNESS TO GIVE.  WE WILL ABSOLUTELY BE THAT CAREFUL.

19                THE COURT:  WELL, I GUESS THE QUESTION IS HOW CAN

20        SAMSUNG ESTABLISH THAT IT'S A NON-INFRINGING ALTERNATIVE IF

21        THEY CAN'T ASK THE QUESTION?  THAT'S WHY I THINK THE JURY

22        INSTRUCTION WOULD BE APPROPRIATE.

23                MS. KREVANS:  WELL --

24                THE COURT:  WHY DON'T I ASK THE PARTIES TO COME UP

25        WITH A PROPOSAL?  I THINK IF WE DO A JURY INSTRUCTION, THEN IT
```

```
 1        WOULD ELIMINATE ANY ISSUE AND THAT COULD POTENTIALLY HELP CURE

 2        ANY CONFUSION IF IT ARISES.

 3            I MEAN, THERE WILL BE OTHER CONSEQUENCES IF THERE'S A

 4        VIOLATION OF THIS RULING.

 5                MS. KREVANS:  WE WILL MEET AND CONFER.  I HAVE TO

 6        SAY, IN THE PAST IT'S BEEN A LITTLE HARD TO COME UP WITH THESE

 7        THINGS, AND I THINK IN PARTICULAR A PROPHYLACTIC INSTRUCTION

 8        BEFORE EVIDENCE COMES IN CAN BE TOUGH.  BUT WE'LL SEE IF WE CAN

 9        WORK SOMETHING OUT, AND IF NOT, WE WILL REPORT TO THE COURT IN

10        ANY EVENT.

11                THE COURT:  IT'S ALMOST A STIPULATION, A STIPULATION

12        THAT APPLE DOESN'T ASSERT THAT IT PRACTICES THE INVENTIONS OF

13        THIS PATENT AND APPLE PRODUCTS ARE A NON-INFRINGING

14        ALTERNATIVE.

15            I MEAN, I GUESS MY QUESTION TO YOU IS, IF SAMSUNG CAN'T

16        ASK THAT QUESTION, HOW CAN THEY MAKE THAT ARGUMENT?  HOW ARE

17        THEY GOING TO GET IT IN?

18                MS. KREVANS:  I THINK, YOUR HONOR, THE WAY THAT THEY

19        WOULD GET IT IN IS THEY WOULD SIMPLY SAY TO THE JURY, APPLE HAS

20        NOT SHOWN YOU ANY EVIDENCE THAT --

21                THE COURT:  THAT'S ATTORNEY ARGUMENT.  THAT'S NOT

22        EVIDENCE.  THEY NEED EVIDENCE TO BE ABLE TO GET THAT IN.

23        THAT'S WHY I WAS SUGGESTING SOME KIND OF STIPULATION, MAYBE A

24        STIPULATION WOULD BE BETTER THAN A JURY INSTRUCTION.

25                MS. KREVANS:  WHY DON'T WE SEE WHAT WE CAN WORK OUT,
```

 1     AND IF WE WORK SOMETHING OUT, WE'LL PRESENT IT.  IF WE DON'T

 2     WORK SOMETHING OUT, WE'LL DO SOME KIND OF JOINT REPORT TO YOU

 3     ON THIS.  WE'LL BE SHORT AND WE'LL SAY, HERE'S WHAT WE CAN

 4     AGREE ON AND HERE'S WHAT WE'D LIKE THE COURT'S GUIDANCE ON.

 5     AND YOU CAN LET US KNOW WHEN YOU WOULD LIKE TO HAVE THAT.

 6          THE COURT:  LET ME HEAR FROM MS. MAROULIS.  I AM

 7     GOING TO RULE THAT SAMSUNG WILL BE ABLE TO ARGUE THAT THE APPLE

 8     PRODUCTS ARE NON-INFRINGING ALTERNATIVES FOR THE '414, '172,

 9     AND '959.  BUT HOW ARE YOU GOING TO GET THAT IN?

10          MS. MAROULIS:  YOUR HONOR, WE THINK THE JURY

11     INSTRUCTION IS A GOOD IDEA.  WE'LL TRY TO COME UP WITH ONE, AND

12     IF WE CAN'T, ANOTHER ALTERNATIVE IS A STIPULATION THAT CAN BE

13     READ TO THE JURY.  IN OTHER WORDS, IT HAS TO BE COMMUNICATED TO

14     THE JURY IN SOME FORMAT.

15       SO WE WILL PROPOSE SOME LANGUAGE TO APPLE OVER THE NEXT

16     COUPLE OF DAYS AND GET BACK TO THE COURT BY FRIDAY.

17          THE COURT:  OKAY.  I GUESS IT COULD POTENTIALLY COME

18     IN THROUGH AN APPLE EXPERT.  THAT'S ANOTHER POSSIBILITY, JUST A

19     SINGLE QUESTION.

20          MS. KREVANS:  YOUR HONOR, I HAVE TO SAY, I DON'T WANT

21     TO PROVOKE ANY MORE ARGUMENTS, AND WE'RE CLOSE TO MAYBE BEING

22     DONE HERE, BUT I'M NOT AWARE THAT SAMSUNG HAS EVER ARGUED THAT

23     THE APPLE PRODUCTS ARE NON-INFRINGING ALTERNATIVES ON A PATENT

24     OF WHICH SAMSUNG PRODUCTS HAVE BEEN ACCUSED OF INFRINGING.

25       SO WE HAVE TO GO BACK AND CHECK THE RECORD, WHICH IS WHY I

1    SUGGEST I THINK IT MIGHT BE A BETTER USE OF THE COURT'S TIME IF

2    THE PARTIES TRIED TO WORK THIS OUT FIRST AND REPORT PROMPTLY TO

3    YOU, PERHAPS YOU COULD SET A DATE FOR US TO REPORT, AND WE'LL

4    SEE WHAT COMES OF THAT.

5              THE COURT:  I DON'T WANT TO KICK THE CAN DOWN THE

6    ROAD.  THIS HAS BEEN A LIVE ISSUE SINCE THE MOTION TO ENFORCE

7    THE PROTECTIVE ORDER, THE CASE NARROWING ORDER, WHICH I DENIED

8    AS MOOT.

9        I WOULD LIKE TO JUST GRANT IT RIGHT NOW BECAUSE I THOUGHT

10   THIS HAD BEEN RESOLVED AT OUR SUMMARY JUDGMENT HEARING BACK IN

11   DECEMBER.

12             MS. KREVANS:  I'M JUST SAYING, YOUR HONOR, I THINK

13   THIS NON-INFRINGING ALTERNATIVE ISSUE IS THROWING US A LITTLE

14   BIT BECAUSE TO US IT SEEMS TO BE A LITTLE BIT OF A NEW ISSUE

15   AND WE NEED TO GO GIVE IT THE ATTENTION IT DESERVES.  BUT WE

16   CAN COME BACK TO YOU VERY PROMPTLY.

17             THE COURT:  NO.  I MEAN, YOUR WHOLE POINT OF YOUR

18   OPPOSITION WAS, NO, SAMSUNG CAN'T MAKE THAT ARGUMENT BECAUSE

19   THEN WE WILL HAVE OUR WITNESSES SAY, OH, OF COURSE WE PRACTICE

20   CLAIM 27 OF THE '172 PATENT.

21             MS. KREVANS:  BUT YOU HAVE NOW RULED THAT WE CAN'T DO

22   THAT, SO WE WON'T DO THAT, YOUR HONOR.

23             THE COURT:  WELL, LET ME ASK SAMSUNG, HOW ARE YOU

24   GOING TO GET IN THAT APPLE DOES NOT PRACTICE THE ASSERTED

25   CLAIMS?  WHAT EVIDENCE WERE YOU INTENDING TO USE FOR THAT?

1          MS. KREVANS:  YOUR HONOR, WE CAN STIPULATE THAT APPLE

2     DOES NOT PRACTICE THE ASSERTED CLAIMS.  THAT'S NOT A PROBLEM.

3     WE'VE ALREADY AGREED TO THAT.

4          MS. MAROULIS:  YOUR HONOR, WE'LL EITHER DO IT THROUGH

5     CROSS-EXAMINATION, OR IF WE CAN GET A STIPULATION TO READ TO

6     THE JURY OR A JURY INSTRUCTION, THAT MIGHT BE MORE EFFICIENT.

7          THE COURT:  IT CAN'T BE JUST ASSERTED CLAIMS.  IT HAS

8     TO BE THESE PATENTS.

9          MS. MAROULIS:  AND WE WILL PROPOSE LANGUAGE TO APPLE

10    AND HOPEFULLY WE'LL WORK OUT A JOINT PROPOSAL TO THE COURT.

11    BUT IF NOT, WE'LL HAVE COMPETING PROPOSALS THEN.

12         BUT WE AGREE THAT THE ISSUE NEEDS TO BE RESOLVED SOON

13    BECAUSE IT'S BEEN LANGUISHING SINCE LAST DECEMBER.

14         MS. KREVANS:  SHOULD WE REPORT TO THE COURT BY, SAY,

15    MONDAY?  GIVE US TIME TO GO BACK AND FORTH?

16         THE COURT:  THAT'S FINE.  BUT YOU GRIMACED WHEN I

17    SAID THAT APPLE DOESN'T PRACTICE THE '172 AND '959 AND '414.  I

18    MEAN, I GUESS -- I DON'T WANT IT TO BE A SITUATION, LIKE

19    DECEMBER, WHERE YOU SAY SOMETHING TO SORT OF APPEASE AND GET

20    RID OF THE MOTION AND THEN THE ISSUE RE-POPS BACK UP AND

21    RESURRECTS IN TWO TO THREE WEEKS.  I WANT IT DECIDED NOW.

22         MS. KREVANS:  I UNDERSTAND THAT, YOUR HONOR, BUT

23    THERE'S A DIFFERENCE BETWEEN YOUR HONOR RULING THAT WE CAN'T

24    MAKE CERTAIN ARGUMENTS AND APPLE ACTUALLY STIPULATING TO

25    SOMETHING WHICH ISN'T TRUE.

```
 1              SO I THINK WE NEED TO WORK OUT TIME TO WORK OUT SOMETHING
 2     THAT'S ACCEPTABLE WITH SAMSUNG THAT DOESN'T PUT US IN THAT
 3     POSITION.
 4              THE COURT:  OTHERWISE I WANT TO RULE ON THE VALIDITY
 5     OF ONE SYNC COMPONENT.
 6              MS. KREVANS:  WE UNDERSTAND THAT, YOUR HONOR.
 7              THE COURT:  OKAY.  I'M READY, AND WE MAY JUST
 8     POTENTIALLY INVALIDATE THESE THREE CLAIMS WHICH WOULD
 9     COMPLETELY ELIMINATE THIS ISSUE FOR THE TRIAL, FOR THE APPEAL,
10     THE RETRIAL, WHATEVER ELSE IS GOING TO HAPPEN, AND THAT'S WHAT
11     I WANT TO DO.
12          AND YOU'RE SAYING, NO, DON'T DO THAT, DON'T DO THAT
13     BECAUSE WE'VE RESOLVED IT.
14          WHY DON'T YOU FILE SOMETHING ON MONDAY?
15          HOW QUICKLY CAN YOU DO AN EXPERT REPORT, IF YOU NEEDED TO,
16     OF INVALIDITY OF THESE THREE UNASSERTED CLAIMS?  THAT'S WHY I
17     WANT THIS WRAPPED UP, BECAUSE IF YOU'RE GOING TO GO THAT ROUTE,
18     WE NEED TO DO IT AS QUICKLY AS POSSIBLE BECAUSE, AS I SAID, AT
19     THE END OF MARCH I HAVE OTHER BIG HEARINGS.
20              MS. MAROULIS:  YOUR HONOR, WE HOPE THAT WON'T BE
21     NECESSARY, BUT IF WE HAVE TO, WE CAN DO TWO WEEKS.
22              THE COURT:  ALL RIGHT.  I WANT TO KNOW BY FRIDAY OF
23     THIS WEEK YOUR COMPETING PROPOSAL, BECAUSE IF IT'S NOT
24     RESOLVED, I WANT TO GO THAT OTHER DIRECTION.  OKAY?  SO THAT'S
25     MARCH 7TH.
```

```
1              WERE YOU ABLE TO CHECK WITH GSA?

2                  THE CLERK:  SNOOKI REPORTED IT.

3                  THE COURT:  OKAY.  WE NEED TO TAKE A BREAK.  DO YOU

4      WANT TO GO ANOTHER -- WHY DON'T WE GO AHEAD AND TAKE OUR BREAK

5      NOW?

6              AND THEN WHEN WE COME BACK, I'M GOING TO GIVE YOU THE

7      RULINGS ON ALL THE APPLE MOTIONS, EXCEPT I DO HAVE QUESTIONS AS

8      TO NUMBER 6.  OKAY?  BUT OTHERWISE I'LL GIVE YOU THE RULINGS ON

9      ALL THE OTHERS.

10              OKAY.  THANK YOU.  LET'S TAKE A TEN MINUTE BREAK.

11              (RECESS FROM 4:43 P.M. UNTIL 4:59 P.M.)

12                  THE COURT:  OKAY.  WELCOME BACK.

13              LET ME -- THERE WAS ONE OTHER ISSUE IN THE JOINT PRETRIAL

14      STATEMENT, AND THAT WAS SAMSUNG RAISING TWO NEW EVIDENTIARY

15      ISSUES WHICH REALLY WERE REQUESTING NEW CLAIM CONSTRUCTIONS.

16              ONE WAS AN ORDER TO PREVENT APPLE FROM ARGUING AT TRIAL THAT

17      THE TERM "THREAD" IN THE '414 PATENT HAS A MEANING INCONSISTENT

18      WITH THE PRIOR REPRESENTATIONS TO THIS COURT; THE SECOND WAS AN

19      ORDER TO PREVENT APPLE FROM ARGUING THAT THE TERM "HEURISTIC"

20      IN THE '959 PATENT REQUIRES MODULES.

21              THOSE REQUESTS ARE DENIED UNDER THE SAME ANALYSIS IN THE

22      COURT'S SUMMARY JUDGMENT ORDER.  I'M NOT GOING TO DO NEW CLAIM

23      CONSTRUCTIONS AT THIS TIME.

24              LET ME ASK, WE HAD PREVIOUSLY LEFT FOR A LATER DAY THE

25      ISSUE OF WHETHER THERE WOULD BE A LIMIT ON THE NUMBER OF
```

```
 1    DEMONSTRATIVE SLIDES FOR OPENING AND CLOSING ARGUMENTS AND YOU

 2    WERE GOING TO MEET AND CONFER.

 3              MR. LEE:  WE HAVE --

 4              MR. QUINN:  WE HAVE AGREEMENT ON THAT.

 5              MR. LEE:  WE HAVE AGREEMENT ON THAT.

 6              THE COURT:  FANTASTIC.  WHAT IS THAT?

 7              MR. LEE:  WE HAVE AGREEMENT IT'S LESS THAN A

 8    THOUSAND.

 9         (LAUGHTER.)

10              MR. LEE:  IT'S 125 -- WE WILL EXCHANGE 125 EACH FOR

11    THE OPENING.

12              MR. QUINN:  AND THE CLOSE.

13              THE COURT:  OKAY.  THANK YOU.  THANK YOU VERY MUCH

14    FOR REACHING AN AGREEMENT.

15         YOU KNOW, I DID WANT TO CLARIFY ONE THING ON THE LAST

16    ISSUE THAT WE HANDLED RIGHT BEFORE THE BREAK.

17         YOU KNOW, IF APPLE WANTS TO MAKE A RITE-HITE ARGUMENT LIKE

18    YOU DID IN THE RETRIAL THAT, LOOK, EVEN IF THERE'S NO

19    INFRINGEMENT OF THIS ONE PATENT, THERE'S INFRINGEMENT OF OTHER

20    PATENTS, THEREFORE, IT CANNOT BE A NON-INFRINGING ALTERNATIVE,

21    I DID ALLOW THAT ARGUMENT TO GO TO THE JURY IN THE RETRIAL.  I

22    MEAN, YOU COULD MAKE THAT ARGUMENT HERE AS WELL.

23         I'M NOT -- I'M NOT REQUIRING THAT YOU STIPULATE THAT THE

24    APPLE PRODUCTS ARE, IN FACT, ACCEPTABLE NON-INFRINGING

25    ALTERNATIVES FOR THE '959, '414, AND '172.  I JUST AM ORDERING
```

 1    THAT YOU CAN'T REFUTE SAMSUNG'S ARGUMENT THAT THE APPLE

 2    PRODUCTS ARE NON-INFRINGING ALTERNATIVES ON THE BASIS THAT

 3    APPLE PRACTICES THE UNASSERTED CLAIMS.

 4         OKAY?  IS THAT -- IS THAT CLEARER?  I THINK I WAS NOT -- I

 5    WAS A LITTLE BIT SLOPPY BEFORE THE BREAK.  I'M NOT -- I JUST

 6    WANT TO CLARIFY THIS ONE ISSUE, THIS ONE DEFENSE BASED ON

 7    PRACTICING NON-ASSERTED CLAIMS TO A SAMSUNG ARGUMENT THAT APPLE

 8    PRODUCTS ARE NON-INFRINGING ALTERNATIVES TO THE '414, '959, AND

 9    '172.  OKAY?  SO JUST FOR CLARIFICATION OF THAT.

10         MS. KREVANS:  THANK YOU, YOUR HONOR.

11         THE COURT:  OKAY.  SO FOR THE APPLE ONES, LET ME GIVE

12    YOU THE ORDERS.

13         WITH REGARD TO -- LET'S DO MOTION IN LIMINE NUMBER 2, TO

14    EXCLUDE EVIDENCE OR ARGUMENT REGARDING FINDINGS AND RULINGS AND

15    EVENTS FROM APPLE'S LAWSUITS WITH OTHER PARTIES AND ANY

16    REFERENCE TO RULINGS IN CASES NOT INVOLVING BOTH PARTIES TO

17    THIS ACTION.

18         I'M GOING TO DENY THIS MOTION WITHOUT PREJUDICE BECAUSE

19    IT'S OVERBROAD, BUT I'M GOING TO GRANT IT AS TO THE DX 449,

20    WHICH WAS THE SPECIFIC EXHIBIT THAT WAS THE SUBJECT OF THIS

21    MOTION, AND THAT WAS BASICALLY JUDGE POSNER'S ORDER ON DAMAGES

22    IN THE APPLE VERSUS MOTOROLA CASE IN THE NORTHERN DISTRICT OF

23    ILLINOIS.  THE ARGUMENT FOR THE APPEAL ON THAT ORDER HAS

24    ALREADY TAKEN PLACE, I BELIEVE LAST YEAR WITH THE FEDERAL

25    CIRCUIT.

```
 1              BUT, YOU KNOW, THAT CASE INVOLVED DIFFERENT ASSERTED

 2     CLAIMS OF THE '647 PATENT.  JUDGE POSNER CONSTRUED DIFFERENT

 3     CLAIM TERMS.  THERE WERE OBVIOUSLY DIFFERENT PRODUCTS BECAUSE

 4     THAT CASE INVOLVED MOTOROLA AS A DEFENDANT, WE HAVE SAMSUNG AS

 5     A DEFENDANT.

 6              THERE WERE DIFFERENT IMPLEMENTATIONS OF THE VARIOUS

 7     FUNCTIONS THAT ARE AT ISSUE.  THERE COULD VERY WELL BE

 8     DIFFERENT NON-INFRINGING ALTERNATIVES.

 9              THE FEDERAL CIRCUIT IS REALLY CLEAR THAT FOR DAMAGES WE

10     REALLY NEED TO TAKE A LOOK AT THE SPECIFIC PARTIES AND THEIR

11     CIRCUMSTANCES, AND MOTOROLA IS OBVIOUSLY A DIFFERENT PARTY THAN

12     SAMSUNG AND WILL HAVE DIFFERENT CIRCUMSTANCES.

13              AND BY VIRTUE OF THE FACT THAT THIS EXHIBIT ACTUALLY HAS

14     OPINION AND RULING AND JUDGE POSNER AND THE CASE CITE AND

15     EVERYTHING, I THINK IT WOULD BE OVERLY PREJUDICIAL BECAUSE IT

16     HAS THE IMPRIMATUR OF THE DISTRICT COURT IN THE NORTHERN

17     DISTRICT OF ILLINOIS, AND I THINK THE PROBATIVE VALUE WILL BE

18     MINIMAL BASED ON ALL THE DIFFERENCES THAT I HAVE JUST STATED.

19              SO UNDER 403, I THINK IT WOULD BE COMPLETELY CONFUSING TO

20     THE JURY.  WE WOULD HAVE A WHOLE MINI TRIAL ON THAT ILLINOIS

21     CASE INSERTED INTO OUR CASE, WHICH IS COMPLEX ENOUGH, AND IT

22     WOULD BE AN UNDUE CONSUMPTION OF TIME AND PREJUDICIAL BECAUSE

23     OF THE EXHIBIT BEING AN ORDER OF A COURT.

24              AND I HAVE PREVIOUSLY RULED IN ALL THE APPLE I CASES THAT

25     I'M NOT GOING TO ALLOW A JUDICIAL RULING IN ANOTHER LITIGATION
```

```
 1     TO BE USED AS AN EXHIBIT HERE BECAUSE I THINK IT'S TOO
 2     PREJUDICIAL, AND UNDER 403 THE PREJUDICIAL RISK OUTWEIGHS ANY
 3     PROBATIVE VALUE.
 4          AND I DON'T WANT TO HAVE A MINITRIAL AS TO WHAT HAPPENED
 5     IN THOSE OTHER LITIGATIONS IN THIS CASE.
 6          MR. JOHNSON:  YOUR HONOR, JUST 30 SECONDS ON THAT.
 7          THE COURT:  YES.
 8          MR. JOHNSON:  JUST SO -- DX 449, FAZIO EXHIBIT 40, WE
 9     DID OUR BEST TO REDACT EVERYTHING OUT OF HERE EXCEPT THE ONE
10     POINT.  THE ONLY POINT WE WANT FROM THIS ORDER IS TO BE ABLE TO
11     POINT OUT THAT FOR THE SAME PATENT INVOLVED IN THIS CASE, THE
12     '647 PATENT, THAT IN ANOTHER CASE, APPLE THOUGHT THE VALUATION
13     OF THAT PATENT WAS $0.60 AS OPPOSED TO $12.49 HERE.
14          WE'RE NOT OFFERING IT FOR ANY ANALYSIS, LEGAL OR --
15          THE COURT:  ALL RIGHT.  I UNDERSTAND THAT.  IT'S
16     DIFFERENT ASSERTED CLAIMS, DIFFERENT CLAIM CONSTRUCTIONS,
17     DIFFERENT PRODUCTS, DIFFERENT DEFENDANTS, DIFFERENT PARTY
18     CIRCUMSTANCES, DIFFERENT IMPLEMENTATIONS IN THE ACCUSED
19     PRODUCTS, DIFFERENT NON-INFRINGING ALTERNATIVES, SO MY RULING
20     STILL STANDS.
21          LET'S GO TO MOTION IN LIMINE NUMBER 3.  THIS IS THE MOTION
22     TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING PATENT
23     RE-EXAMINATION PROCEEDINGS CONCERNING THE PATENT IN SUIT.
24          SAMSUNG IS NOT RELYING ON AN OPINION OF COUNSEL AS A
25     DEFENSE TO WILLFULNESS.  IS THAT CORRECT?
```

1              MR. JOHNSON:  THAT'S CORRECT, YOUR HONOR.

2              THE COURT:  OKAY.  ALL RIGHT.  SO YOU DON'T HAVE ANY

3      OPINION OF COUNSEL RELYING ON THIS PRELIMINARY REJECTION.  ALL

4      RIGHT.

5              WELL, WITH REGARD TO THE '647, THE FINAL OFFICE ACTION HAS

6      CONFIRMED THE PATENTABILITY OF CLAIM 9, WHICH IS AT ISSUE IN

7      THIS CASE.  GRANTED, OTHER CLAIMS WERE REJECTED BY THE PTO, AND

8      SO THIS IS ON APPEAL, THE CLAIMS THAT ARE NOT AT ISSUE IN THIS

9      CASE.

10             WITH REGARD TO THE '172, THERE'S JUST BEEN A DECISION BY

11     THE PTO AS RECENTLY AS JANUARY 13TH OF 2014, THAT A

12     RE-EXAMINATION PETITION RAISES A SUBSTANTIAL QUESTION OF

13     PATENTABILITY.

14             AND SO THE RE-EXAMINATION PROCEEDINGS ARE JUST STARTING.

15             WITH REGARD TO BOTH CASES, THE COURT GRANTS THE MOTION

16     BECAUSE UNDER RULE 403, THIS WOULD EFFECTIVELY REQUIRE A

17     MINITRIAL ON THE PTO RE-EXAMINATION PROCEEDINGS, AND THOSE

18     PROCEEDINGS, I MEAN, YOU DON'T EVEN HAVE A FIRST OFFICE ACTION

19     IN THE '172.

20             IN THE '647, THE PATENT OFFICE ULTIMATELY CONFIRMED THE

21     PATENTABILITY OF CLAIM 9, WHICH IS THE CLAIM AT ISSUE.

22             SO I THINK THE PROBATIVE VALUE IS MINIMAL.  AND I THINK IT

23     WOULD BE HIGHLY PREJUDICIAL TO BRING IN ANOTHER SET OF

24     PROCEEDINGS, IT WOULD BE VERY CONFUSING TO THE JURY.  IT WOULD

25     BE AN UNDUE CONSUMPTION OF TIME.

1          SO THIS MOTION IS GRANTED.

2          OKAY.  LET'S GO TO MOTION IN LIMINE NUMBER 4, TO EXCLUDE

3     DEMONSTRATION SYSTEMS CREATED BY SAMSUNG'S EXPERT RELATED TO

4     ALLEGED PRIOR ART.

5          WITH REGARD TO SAMSUNG'S USE OF THE WAIS, W-A-I-S SYSTEM,

6     AND THE APPLESEARCH SYSTEM, APPLE HAS ALREADY CHALLENGED THOSE

7     DEMONSTRATION SYSTEMS ON SUMMARY JUDGMENT AND DAUBERT AND LOST.

8     THE COURT SEES NO REASON TO DEVIATE FROM THOSE RULINGS.  THE

9     MOTION TO EXCLUDE THOSE TWO DEMONSTRATION SYSTEMS IS DENIED.

10         THOSE SYSTEMS' PROBATIVE VALUE IS NOT SUBSTANTIALLY

11    OUTWEIGHED BY ANY POTENTIAL PREJUDICE, AND THERE'S NO CAUSE TO

12    EXCLUDE SAMSUNG'S USE OF THESE DEMONSTRATIVE DEMONSTRATION

13    SYSTEMS.

14         NOW, WITH REGARD TO THIS, THE NEW ONE, THAT'S DR. CHASE'S

15    CLAIMS REGARDING THE FUNCTIONALITIES IN WINDOWS MOBILE AND

16    EVOLUTION, APPLE'S CHALLENGE TO THIS DEMONSTRATION SYSTEM WAS

17    IN ONE PARAGRAPH AND REALLY DIDN'T PROVIDE ANY BASIS TO EXCLUDE

18    IT.

19         WHAT IS YOUR CLAIM AS TO DR. CHASE'S DEMONSTRATION SYSTEM,

20    THE WINDOWS MOBILE AND EVOLUTION?

21              MS. KREVANS:  YOUR HONOR, IT IS ESSENTIALLY THE SAME

22    TYPE OF OBJECTION THAT WE HAD TO THE OTHERS, BUT IT WASN'T

23    RAISED BEFORE.  WE'D BE HAPPY TO RERAISE IT IF THEY ACTUALLY

24    TRY TO USE IT AT TRIAL.

25              THE COURT:  NO.  THAT MOTION IS DENIED.  I DIDN'T

1    FIND YOUR ONE PARAGRAPH CONVINCING IN YOUR MOTION, AND YOU

2    DON'T PROVIDE ANY REASON TO EXCLUDE IT IN YOUR MOTION IN

3    LIMINE.  AND THIS WAS THE TIME TO DO IT.  SO THAT MOTION IS

4    DENIED.

5        LET'S GO TO NUMBER 5.  THIS IS THE MOTION TO EXCLUDE THE

6    TUNG THESIS, WHICH IS ENTITLED EXTENSION OF THE FREEWAIS, WHICH

7    IS SPELLED W-A-I-S, SERVER, AND THE NEONODE QUICK START GUIDE,

8    WHICH APPLESEARCH DID NOT QUALIFY AS PRIOR ART UNDER SECTION

9    102 BECAUSE THEY'RE NOT SUFFICIENTLY ACCESSIBLE TO THE PUBLIC.

10       THIS MOTION IS DENIED.  AS FAR AS THE TUNG THESIS, WHICH

11   IS DX 304, SAMSUNG'S NOT ASSERTING THAT THIS THESIS IS PRIOR

12   ART.  THEY'RE SIMPLY CITING IT AND USING IT FOR CORROBORATION

13   FOR THE WAIS PRIOR ART WHICH, UNDER FEDERAL CIRCUIT LAW, IS

14   PERMISSIBLE.

15       AND APPLE'S MOTION TO EXCLUDE THE NEONODE QUICK START

16   GUIDE IS DENIED BECAUSE THERE ARE TRIABLE ISSUES OF FACT AS TO

17   WHETHER THE GUIDE WAS PUBLICLY ACCESSIBLE AND, THUS,

18   CONSTITUTES A PUBLIC -- A PRINTED PUBLICATION WITHIN THE

19   MEANING OF SECTION 102(B).

20       THIS GUIDE WAS AVAILABLE ON THE INTERNET BY JULY OF 2004,

21   WHICH WOULD HAVE BEEN WELL BEFORE ONE YEAR BEFORE THE

22   APPLICATION DATE OF THE '721, WHICH IS JUNE 2ND OF 2008, AND

23   UNDER VOTER VERIFIED, INCORPORATED VERSUS PREMIER ELECTION

24   SOLUTIONS, 698 F.3D 1374, FEDERAL CIRCUIT 2012, IN THAT CASE

25   THE FEDERAL CIRCUIT FOUND AN ONLINE PUBLICATION PUBLICLY

1    AVAILABLE BECAUSE IT WAS RETRIEVABLE USING GENERAL SEARCH TERMS

2    PERTINENT TO THE RELEVANT ART AND WAS UNDISPUTEDLY OPEN TO ANY

3    INTERNET USER BY THE CRITICAL DATE, CERT DENIED IN 2013.

4         AND EVEN THE PTO'S M.P.E.P. NOTES THAT PRIOR ART

5    DISCLOSURES ON THE INTERNET OR ON AN ONLINE DATABASE ARE TO BE

6    CONSIDERED PUBLICLY AVAILABLE AS OF THE DATE THE ITEM WAS

7    PUBLICLY POSTED, AND THAT AN ELECTRONIC PUBLICATION, INCLUDING

8    AN ONLINE DATABASE OR INTERNET PUBLICATION, IS CONSIDERED TO BE

9    A PRINTED PUBLICATION.  THAT'S M.P.E.P. SECTION 2128.

10        AND HERE THE WEBSITE WHERE THE NEONODE GUIDE WAS LOCATED

11   WAS AVAILABLE ONLINE AT LEAST THREE YEARS AND ELEVEN MONTHS

12   BEFORE THE CRITICAL DATE, JUNE 2ND OF 2008, AND THAT'S

13   ACCORDING TO THE UNDISPUTED BUTLER DECLARATION.

14        FURTHER, A JURY COULD FIND THAT THOSE SKILLED IN THE ART

15   WHO EXERCISED REASONABLE DILIGENCE COULD LOCATE THE GUIDE, EVEN

16   DESPITE THE FACT THAT SAMSUNG CONCEDES THAT THE NEONODE WAS

17   NEVER SOLD IN THE UNITED STATES BEFORE THE CRITICAL DATE.

18        MS. KREVANS:  YOUR HONOR, MAY I BE HEARD ON THAT EVEN

19   FOR 60 SECONDS?  I THINK THERE'S A CRITICAL FACT THAT DID NOT

20   COME THROUGH IN THE BRIEFING.

21        THE COURT:  WHAT'S THAT?

22        MS. KREVANS:  ON THE NEONODE, IT'S ONLY BEEN PROVEN

23   TO BE AVAILABLE VIA THE WAYBACK MACHINE.  THE WAYBACK MACHINE

24   IS NOT SOMETHING THAT LETS SOMEBODY SEARCH IN A KEY WORD SENSE,

25   AND SO THE ONLY WAY TO FIND SOMETHING ON THE WAYBACK MACHINE IS

```
 1          TO KNOW THE URL, THAT IS, KNOW THE URL OF THE WEBSITE ITSELF.

 2              AND SO THIS IS NOT SOMETHING THAT SAMSUNG HAS SHOWN

 3      SOMEONE COULD FIND BY PUTTING IN KEY WORDS, OR COULD HAVE FOUND

 4      BY PUTTING IN KEY WORDS RELATING TO THE PATENT, AND, THEREFORE,

 5      IT DOESN'T MEET THE FIRST TEST THAT YOUR HONOR RECITED BECAUSE

 6      ALTHOUGH IT WAS AVAILABLE ON THE INTERNET, IT WASN'T AVAILABLE

 7      TO A PERSON OF SKILL IN THE ART WHO WAS SEARCHING LOOKING FOR

 8      THINGS RELEVANT TO THIS INVENTION USING KEY WORDS.  THEY WOULD

 9      HAVE TO HAVE KNOWN IT EXISTED, KNOWN THE WEBSITE'S URL AND PUT

10      THAT URL IN THE WAYBACK MACHINE.

11              AND I THINK THAT USES MY 60 SECONDS.

12               THE COURT:  ALL RIGHT.  WELL, THE GUIDE DESCRIBES A

13      PORTABLE PHONE, AND THE TARGET AUDIENCE THAT WAS TRYING TO

14      SOLVE THE PROBLEMS WHICH THE '721 SOLVES WOULD HAVE THOUGHT TO

15      LOOK ON THE INTERNET BECAUSE THE '721 IS DIRECTED TO PORTABLE

16      ELECTRONIC DEVICES, INCLUDING MOBILE PHONES THAT HAVE INTERNET

17      ACCESS.

18          THE COURT FINDS THAT A USER INTERFACE DESIGNER FOR

19      PORTABLE ELECTRONIC DEVICES WOULD HAVE THOUGHT TO LOOK AT THE

20      INTERNET.

21              PROFESSOR GREENBURG SAYS THAT PERSONS SEEKING TO IMPROVE A

22      TOUCHSCREEN PORTABLE DEVICE WOULD HAVE LOOKED TO EXISTING

23      PORTABLE TOUCHSCREEN DEVICES AND THAT NEONODE IS SUCH A DEVICE.

24              SO EVEN IF THE PERSON INTERESTED IN THE ART DIDN'T KNOW

25      OF THE NEONODE SPECIFICALLY, THE GUIDE DESCRIBES FEATURES OF
```

1    THE NEONODE AS A PHONE WITH THE USER INPUT OF TOUCH.

2        THE COURT FINDS THAT PEOPLE INTERESTED IN TOUCHSCREENS FOR

3    PORTABLE DEVICES MAY WELL HAVE BEEN ABLE TO FIND THE GUIDE ON

4    THE INTERNET UPON A SEARCH, AND THIS IS NOT IMPLAUSIBLE GIVEN

5    THAT APPLE ITSELF IDENTIFIED A DIFFERENT NEONODE MANUAL IN AN

6    INFORMATION DISCLOSURE STATEMENT FILED WITH THE U.S. PTO DURING

7    THE PROSECUTION OF THE '721 PATENT.  THAT'S JX 11 AT 164, AND

8    IT'S THE WELCOME TO THE N1 GUIDE.

9        ALL RIGHT.  LET'S GO TO MOTION IN LIMINE NUMBER 6 TO

10   EXCLUDE EVIDENCE AND TESTIMONY THAT A PURPORTEDLY

11   NON-INFRINGING VERSION -- OH, ACTUALLY, I WANT TO SAVE THAT

12   ONE.  THAT'S ONE THAT WE NEED TO TALK ABOUT.

13       ACTUALLY, WE CAN GO AHEAD AND DO IT.  NON-INFRINGING

14   VERSION OF GOOGLE QUICK SEARCH BOX HAS BEEN IMPLEMENTED IN ANY

15   SAMSUNG ACCUSED PRODUCT.

16       LET ME ASK WHETHER APPLE DEPOSED THE GOOGLE ENGINEER WHO

17   CREATED THIS DESIGN AROUND ABOUT THE QUICK SEARCH BOX 2.7.

18           MS. KREVANS:  YOUR HONOR, HE WAS DEPOSED.  BUT

19   THIS -- THE EVENTS THAT ARE SUBJECT TO THIS, AND SOME OF THEM

20   ARE -- I'M NOT GOING TO TALK ABOUT THEM PUBLICLY, THEY ALL

21   HAPPENED AFTER THE DEPOSITION, SO WE HAD NO WAY OF KNOWING THAT

22   WE SHOULD ASK HIM ABOUT IT.

23           THE COURT:  I SEE.  SO THIS IS WHAT I'M -- LET ME

24   GIVE YOU MY TENTATIVE AND THEN YOU CAN ADDRESS THAT.

25       I'M PLANNING TO GRANT THIS IN PART AND DENY IT IN PART.

1    SAMSUNG MAY NOT ARGUE OR PRESENT EVIDENCE AT TRIAL THAT QUICK

2    SEARCH BOX 2.7 OR LATER HAS ACTUALLY BEEN IMPLEMENTED IN ANY

3    SAMSUNG DEVICE.

4         HOWEVER, I WOULD ALLOW THEM TO, AS THEY DISCLOSED IN

5    DR. RINARD'S REBUTTAL EXPERT REPORT, ALLOW HIM TO TESTIFY THAT

6    HE WAS ABLE TO IMPLEMENT THE QUICK SEARCH BOX 2.7 ON A SAMSUNG

7    DEVICE TO TEST THE FUNCTIONALITY OF THE SOFTWARE.

8         NOW, WITH THAT RULING, I WOULD ALSO GIVE YOU ANOTHER

9    DEPOSITION OF THAT GOOGLE ENGINEER BECAUSE I THINK IT IS NOT

10   FAIR FOR YOU TO TAKE -- TO NOT HAVE THE OPPORTUNITY TO TAKE

11   THAT ENGINEER'S DEPOSITION ABOUT THE QUICK SEARCH BOX 2.7.

12        AND IF YOU DID NOT HAVE AN OPPORTUNITY TO DEPOSE

13   DR. RINARD ABOUT IT, I WOULD ALLOW YOU TO DO THAT AS WELL, BUT

14   I WOULD ASSUME THAT YOU DID SINCE THAT WAS IN HIS REBUTTAL

15   REPORT.

16        SO DO YOU WANT TO ADDRESS THE TENTATIVE AND --

17             MS. KREVANS:  YOUR HONOR, SO LONG AS SAMSUNG IS

18   LIMITED ON THIS TOPIC TO HAVING DR. RINARD HIMSELF TESTIFY TO

19   WHAT IS IN HIS REPORT --

20             THE COURT:  YES.

21             MS. KREVANS:  -- WE'RE FINE.

22             THE COURT:  OKAY.

23             MS. KREVANS:  WHAT WE WERE WORRIED ABOUT IS IT LOOKED

24   TO US AS THOUGH THEY WERE TRYING TO DO OTHER THINGS.

25             THE COURT:  NO, THEY CAN'T -- YOU KNOW, THIS ALL

1      HAPPENED IN OCTOBER WAY PAST ALL THE CUTOFFS.  THEY ARE NOT

2      ALLOWED TO NOW SUDDENLY SAY THAT THEY'VE IMPLEMENTED THIS

3      DESIGN AROUND.

4           MS. KREVANS:  OKAY.  AND I THINK WITH RESPECT TO THE

5      DEPOSITION OF DR. RINARD, WHEN WE -- ONCE WE TAKE THE

6      SUPPLEMENTAL DEPOSITION OF THE ENGINEER, WHICH WE APPRECIATE,

7      IF WE FIND OUT NEW INFORMATION THAT WE THINK NECESSITATES

8      TAKING A VERY SHORT ADDITIONAL DEPOSITION OF DR. RINARD, WE

9      WOULD DO THAT AS WELL.  IT MAY BE THAT WE WON'T NEED TO DO SO,

10     BECAUSE HE WAS ASKED ABOUT THIS, BUT HE WAS ASKED ABOUT IT BY A

11     LAWYER WHO, OF COURSE, DID NOT HAVE THE BENEFIT OF HAVING DONE

12     THE UNDERLYING FACT DISCOVERY OF THE ENGINEER.

13          THE COURT:  OKAY.  SO THIS RULING I WILL ALLOW YOU TO

14     DEPOSE THE GOOGLE ENGINEER AND, IF NECESSARY, DR. RINARD BASED

15     ON INFORMATION THAT YOU LEARN FROM THE GOOGLE ENGINEER'S

16     DEPOSITION.

17          MS. KREVANS:  THANK YOU, YOUR HONOR.

18          THE COURT:  OKAY.  DO YOU WANT TO BE HEARD ON THAT.

19          MR. PAK:  YES, YOUR HONOR, VERY BRIEFLY.

20     REALLY TWO ISSUES, YOUR HONOR.  FIRST OF ALL, I WANT TO

21     CLARIFY THE RECORD THAT THE REASON WHY THIS DISCOVERY DID NOT

22     TAKE PLACE DURING THE FACT DISCOVERY PERIOD WAS THAT THE THEORY

23     TO WHICH THIS DESIGN AROUND RELATES IS A NEW THEORY THAT WAS

24     PROPOSED AFTER FACT DISCOVERY FOR THE FIRST TIME IN APPLE'S

25     EXPERT REPORT.

 1          THERE WERE CROSS MOTIONS TO STRIKE.  THERE WAS AN

 2     AGREEMENT TO WITHDRAW WITH PREJUDICE CHALLENGES TO THE EXPERT

 3     REPORTS.

 4          THE ONLY DISCOVERY ALSO OFFERED APPLE AT THE TIME

 5     DISCOVERY, ANY ADDITIONAL DISCOVERY THEY NEEDED.  THEY ASKED

 6     FOR ONE THING, WHICH IS THEY WANTED TO SEE THE GSA 2.7 CODE.

 7     WE PROVIDED THAT CODE.

 8          THEIR EXPERT HAD A CHANCE TO LOOK AT IT FOR FOUR WEEKS.

 9     THERE WAS A DEADLINE FOR SUPPLEMENTATION OF THAT REPORT.  HE

10     FAILED TO PROVIDE A REPORT.

11          AND SO, YOUR HONOR, WE ABSOLUTELY RESPECT THE FIRST PART

12     OF YOUR HONOR'S RULING WITH RESPECT TO THE -- WE WILL NOT ARGUE

13     AT TRIAL THAT THAT MADE IT ONTO THE SAMSUNG PRODUCT.

14          THE COURT:  OKAY.

15          MR. PAK:  HOWEVER, DR. RINARD IN HIS REPORT DOES RELY

16     ON THE GOOGLE ENGINEER WHO IMPLEMENTED THIS PARTICULAR DESIGN

17     IN CONVERSATIONS, AND ALSO THE GSA 2.7 CODE.

18          WE HAVE NO PROBLEMS WITH APPLE TAKING ANOTHER DEPOSITION

19     OF MR. BJORN, BUT WE ASK THAT NOT ONLY DR. RINARD, BUT ALSO THE

20     GOOGLE ENGINEER BE ABLE TO CONFIRM THE FACTUAL EVIDENCE IN THE

21     CASE RELATING TO THE DESIGN AROUND WITH RESPECT TO THE GOOGLE

22     IMPLEMENTATION, NOT ANY SAMSUNG PRODUCT.

23          THE COURT:  OKAY, WAIT.  I'M SORRY.  I DIDN'T

24     UNDERSTAND THAT LAST PART THAT YOU JUST SAID.

25          MR. PAK:  YES, YOUR HONOR.  SO IF YOU REMEMBER, THE

1    WAY THE ANDROID PLATFORM WORKS IS THAT GOOGLE ENGINEERS

2    DEVELOPED PACKAGES FOR VERSIONS OF ANDROID, AND THEN THEY'RE

3    HANDED OVER TO SAMSUNG.  SAMSUNG THEN EITHER MAKES

4    MODIFICATIONS IN CERTAIN LIMITED SITUATIONS, OR SHIPS IT IN

5    BINARY FORM ON THEIR PHONES.

6         THE ENGINEER IN QUESTION IS NOT A SAMSUNG ENGINEER.  HE'S

7    A GOOGLE ENGINEER.  THE GOOGLE ENGINEER IMPLEMENTED THE

8    PARTICULAR DESIGN AROUND INDEPENDENT AND FOR ENGINEERING

9    REASONS AND THAT'S CORROBORATION OF DR. RINARD'S ANALYSIS OF

10   THE DESIGN AROUND, THAT IT WAS FAIRLY TRIVIAL TO DO AND

11   REQUIRED ONLY TAKING OUT A FEW PIECES OF CODE.

12        WHAT WE WOULD LIKE TO DO, YOUR HONOR, IS AFTER APPLE HAS A

13   CHANCE TO DEPOSE --

14             THE COURT:  OH, YOU WANT TO GET THE DESIGN AROUND IN

15   BY JUST CLAIMING IT'S A GOOGLE DESIGN AROUND, NOT A SAMSUNG

16   DESIGN AROUND.  THAT'S NOT GOING TO HAPPEN.

17             MR. PAK:  NO, YOUR HONOR.

18             THE COURT:  THAT'S WHAT I'M HEARING.  YOU'RE GOING TO

19   TRY TO GET IT IN, SAY THIS IS GOOGLE IMPLEMENTED, NOT SAMSUNG,

20   THEREFORE, THEY CAN TESTIFY THAT THEY DID THAT.  I'M SAYING NO.

21             MR. PAK:  OKAY.  WE RESPECT THAT, YOUR HONOR.

22             THE COURT:  OKAY.  LET ME ASK APPLE, WHY DIDN'T YOU

23   FILE A SUPPLEMENTAL REPORT BY DR. SNOEREN WHEN YOU WERE GIVEN A

24   CHANCE TO DO THAT BASED ON THE AGREEMENT THAT YOU MADE WITH

25   SAMSUNG?

```
 1              MS. KREVANS:  THE AGREEMENT WE MADE --

 2              THE COURT:  YOU ORIGINALLY MOVED TO STRIKE THIS AND

 3    THEN SAID, NO, NO, NO, HE WON'T DO THAT.  JUST GIVE US THE CODE

 4    AND WE'LL DO A SUPPLEMENTAL SNOEREN REPORT.  WHY DIDN'T YOU DO

 5    THAT?

 6              MS. KREVANS:  THE MOTION TO STRIKE WAS PART OF A HUGE

 7    DEAL WITH LOTS OF THINGS.  IT HAD TO DO WITH WHAT WE BELIEVED

 8    WAS MERITORIOUS.  WE WITHDREW IT AND STICK BY THE WITHDRAWAL.

 9              ON THE REPORT, WE WANTED TO HAVE A CHANCE TO LOOK AT THE

10    CODE WITH OUR EXPERT AND, IF WE THOUGHT IT NECESSARY, TO DO AN

11    ADDITIONAL REPORT.

12              WE GOT A CHANCE TO LOOK AT THE CODE AND WE DID NOT SEE A

13    NEED TO DO AN ADDITIONAL REPORT, AND THAT'S WHY WE DIDN'T.

14    LESS WORK IS GOOD SOMETIMES.

15              THE COURT:  OKAY.  LET ME ASK YOU ANOTHER QUESTION.

16    WHAT -- ARE YOU PLANNING TO ARGUE THAT SAMSUNG COULD NOT HAVE

17    EASILY IMPLEMENTED THE QUICK SEARCH BOX 2.7?  IF SO, WHAT

18    EVIDENCE WOULD YOU PLAN ON PRESENTING FOR THAT PROPOSITION?

19              MS. KREVANS:  WE PLAN ON ARGUING THAT THEY COULDN'T

20    HAVE IMPLEMENTED IT BEFORE IT WAS RELEASED, JUST BECAUSE IT

21    DIDN'T EXIST.

22              THE COURT:  OKAY.

23              MS. KREVANS:  AND THERE IS NO EVIDENCE AS TO WHETHER

24    IT COULD EASILY HAVE BEEN IMPLEMENTED OTHER THAN WHAT

25    DR. RINARD SAYS, AND AS LONG AS THEY'RE LIMITED IN THEIR REPORT
```

```
1     TO WHAT HE SAYS, WE WILL MAKE OUR ARGUMENTS BASED ON HIS

2     TESTIMONY AND ANY REBUTTAL YOU PERMIT OUR EXPERT TO GIVE.

3              THE COURT:  OKAY.  ALL RIGHT.

4              MS. KREVANS:  ONE OTHER POINT JUST TO NOTE, YOUR

5     HONOR.

6              THE COURT:  YES.

7              MS. KREVANS:  IF MY MEMORY IS CORRECT, THERE WERE

8     SOME SORT OF TRIPLE LAYERS OF ONE PERSON TELLS ANOTHER WHO

9     TELLS ANOTHER GOING ON HERE.

10        I BELIEVE DR. RINARD ACTUALLY TALKED TO AN ENGINEER, WHOSE

11    NAME WAS BJORN BRINGERT, BUT MAYBE I'M REMEMBERING WRONG.  I

12    THINK THE ACTUAL PERSON WHO DID THE CODING WAS A DIFFERENT

13    ENGINEER AND HE TALKED TO MR. BRINGERT WHO THEN TALKED TO

14    DR. RINARD.

15        SO THE DEPOSITION WE MAY WANT TO TAKE OF THE ENGINEER

16    WOULD BE THE DEPOSITION OF THE ENGINEER WHO DID THE CODING

17    BECAUSE THAT'S THE PERSON WHO REALLY KNOWS.  SO I JUST WANT TO

18    MAKE THAT CLEAR.

19             THE COURT:  OKAY.  SO HOW DO YOU WANT US TO WORD

20    THAT?  BECAUSE I'M GOING TO ISSUE A CASE MANAGEMENT ORDER FOR

21    OUR PRETRIAL CONFERENCE ORDER LIKE I NORMALLY DO THAT JUST

22    SAYS, FOR THE REASONS STATED ON THE RECORD, MOTION 1 IS GRANTED

23    OR DENIED.  HOW DO YOU WANT ME TO PHRASE THIS?

24             MS. KREVANS:  I THINK IF YOU SIMPLY SAID THAT APPLE

25    IS PERMITTED TO TAKE AN ADDITIONAL DEPOSITION OF THE GOOGLE
```

1    ENGINEER WHO DID THE SOFTWARE DEVELOPMENT FOR THIS PARTICULAR

2    VERSION, SO IT'S -- AM I ALLOWED TO SAY THIS PART?  CAN I SAY

3    2.7?

4              MR. PAK:  YES.

5              MS. KREVANS:  YES.  OKAY.  THEN WE WILL --

6              THE COURT:  I DIDN'T EVEN HEAR THAT.

7              MS. KREVANS:  IT'S THIS CONSTANT MINEFIELD, YOUR

8    HONOR, TO MAKE SURE WE DON'T REVEAL THINGS WE'RE NOT SUPPOSED

9    TO REVEAL.

10        I'M NOT SURE WE EVEN KNOW THE NAME, BUT I'M SURE THAT

11   SAMSUNG WILL PROVIDE US THE NAME, AND WE CAN FIND A DATE AND DO

12   IT.

13             THE COURT:  I'M JUST GOING TO SAY THE ENGINEER WHO

14   DID SOFTWARE DEVELOPMENT FOR THE QUICK SEARCH BOX 2.7.

15             MS. KREVANS:  THAT'S PERFECT, YOUR HONOR.

16             THE COURT:  OKAY.  LET'S GO TO NUMBER 7, THE MOTION

17   TO EXCLUDE TESTIMONY OR EVIDENCE REGARDING DESIGN AROUND TIMES

18   BY SAMSUNG.

19        THAT MOTION IS DENIED.  APPLE HASN'T CITED ANY AUTHORITY

20   FOR ITS ARGUMENT THAT TESTIMONY ON THE DESIGN AROUND TIMES AT

21   TRIAL -- BLESS YOU -- MUST BE PRECLUDED UNLESS THE PARTY'S

22   30(B)(6) DESIGNEE PROVIDES SPECIFIC FACTS AS TO ALL ALLEGED

23   CLAIM PERIODS.

24        APPLE CITES IN ITS MOTION REGARDING DESIGN AROUND TIMES.

25   THE COURT DOES NOT FIND THAT SAMSUNG'S DESIGNEE'S TESTIMONY WAS

```
 1        SO INADEQUATE WITH RESPECT TO DESIGN AROUND TIMES THAT A REMEDY

 2        IS REQUIRED FOR AN ALLEGED VIOLATION OF RULE 30(B)(6)

 3        VIOLATION.

 4            OKAY.  SO THEN THE ONLY ONE I HAVE LEFT, AND THEN WE CAN

 5        ALL CONCLUDE, IS APPLE'S MOTION IN LIMINE NUMBER 1.  AND LET ME

 6        JUST SAY THAT IN REVIEWING BOTH PARTIES' EXHIBITS, IT IS CLEAR

 7        TO THE COURT THAT BOTH SIDES ARE NOT LIMITING THEMSELVES TO 200

 8        EXHIBITS AND ARE CLAIMING A LOT OF THINGS ARE COMPILATIONS,

 9        WHICH ARE REALLY NOT.

10            YOU KNOW, THERE ARE MULTIPLE DIFFERENT DOCUMENTS.  I CAN

11        JUST NAME A FEW, BUT I'M GOING TO BE PERMISSIVE ABOUT THIS TO

12        BOTH SIDES.  I THINK THAT IS FAIR, AND I PREVIOUSLY DENIED, I

13        GUESS, TWO MOTIONS, I GUESS, FILED BY SAMSUNG AGAINST APPLE FOR

14        EXHIBITS THAT WERE REALLY NOT TRUE COMPILATIONS.

15            AND I JUST THINK BOTH SIDES ARE NOT REALLY COMPLYING WITH

16        1006 OF THE FEDERAL RULES OF EVIDENCE BECAUSE THESE REALLY

17        AREN'T TRUE COMPILATIONS, BUT I'M GOING TO BE VERY PERMISSIVE

18        ABOUT ALLOWING YOU TO DO THAT.

19            NOW, THERE ARE A COUPLE THAT I DO HAVE QUESTIONS ABOUT AND

20        WOULD POTENTIALLY DENY -- OR I MEAN GRANT.  I'M GOING TO DENY

21        WITH REGARD TO EVERYTHING ELSE.  BUT LET ME -- THERE ARE A

22        COUPLE THAT I DID WANT TO ASK SOME QUESTIONS ABOUT, AND I'LL

23        START WITH DX 351.

24            IT'S COMPRISED OF EXCERPTS FROM 14 DOCUMENTS, INCLUDING

25        USER MANUALS, DATE SHEETS, SPECIFICATIONS PRODUCED BY APPLE
```

```
 1        WITH REGARD TO AT LEAST SEVEN DIFFERENT APPLICATIONS

 2    PROCESSORS.

 3            NOW, YOU KNOW, APPLE'S PX 241 COMPILES SPECIFICATION

 4    SHEETS FROM MULTIPLE DIFFERENT SAMSUNG ACCUSED PRODUCT MODELS,

 5    BUT AT LEAST THEY'RE ALL SPECIFICATION SHEETS.

 6            BUT IN DX 351, THERE ARE MANUALS, DATA SHEETS,

 7    SPECIFICATIONS FOR DIFFERENT PROCESSORS.  IT JUST SEEMS VERY

 8    VARIED.

 9            SO LET ME ASK SAMSUNG WHAT THESE DOCUMENTS ARE BEING USED

10    FOR AND WHY THEY'RE BEING CATEGORIZED TOGETHER IN ONE EXHIBIT.

11              MS. MAROULIS:  YOUR HONOR, IT'S MY UNDERSTANDING THAT

12     THOSE ARE ALL FROM USER MANUALS, AND THEY'RE RELATING TO

13     ACCUSED FUNCTIONALITY.  AND IT'S ACTUALLY A COMPILATION FROM A

14     MUCH LARGER SET OF DATA THAT'S ABOUT 40,000 PAGES.

15         WE DO THINK IT'S COMPARABLE TO PLAINTIFF'S EXHIBIT 241

16    BECAUSE IT WAS ALSO SPECIFICATION SHEETS FROM MULTIPLE

17    UNRELATED PRODUCTS.

18         SO WE THINK THEY'RE COMPARABLE, AND IN GENERAL WHAT WE'VE

19    DONE IN PREPARING EXHIBIT LISTS IS WE'VE FOLLOWED THE ROAD

20    SIGNS AND ROADMAP THAT WAS SET UP IN THE PRIOR CASE, AND APPLE

21    MADE A BIG STATEMENT ABOUT HOW THESE ARE NEW INNOVATIVE TRIAL

22    TECHNIQUES AND WE SHOULD BE USING THEM TOO.

23         SO IN THIS CASE WE ESSENTIALLY DID A COMPILATION WHERE IT

24    WOULD BE USEFUL FOR THE JURY TO HAVE A MUCH SMALLER SET THAN

25    ALL 40,000 PAGES OF THE USER MANUAL MATERIALS.
```

```
 1          SO MY UNDERSTANDING IS IT'S ONE TYPE OF DOCUMENT ONLY AND

 2    THEY'RE ALL APPLICATION PROCESSOR USER MANUALS.  THIS IS DX

 3    351.

 4          THE COURT:  SO YOU'RE SAYING THE DATA SHEETS AND

 5    SPECIFICATIONS PROBABLY COME FROM THE USER MANUALS?

 6          MS. MAROULIS:  NO, YOUR HONOR.  I'M SAYING THEY'RE

 7    COMPARABLE.  WHAT WE'RE SAYING IS THAT DX 351 IS A COMPILATION

 8    OF EXCERPTS FROM USER MANUALS, AND PLAINTIFF'S EXHIBIT 241 IS A

 9    COMPILATION OF UNRELATED DATA SHEETS.

10          WE DID NOT CHALLENGE THAT EXHIBIT.  WE COULD HAVE, BUT WE

11    FIGURED THAT BOTH SIDES ARE DOING THE SAME THING THAT WE WERE

12    DOING IN THE PRIOR CASE AND IT'S ONLY FAIR.

13          THE COURT:  WELL, I MEAN, 241, THOUGH, THEY'RE ALL

14    SPECIFICATION SHEETS.  THEY ARE FOR DIFFERENT PRODUCTS, BUT

15    THIS ONE IS NOT JUST AT LEAST ALL THE SAME TYPE OF DOCUMENT.

16    IT DOES SEEM TO BE MIXING MANUALS, DATA SHEETS, SPECIFICATIONS,

17    ORDER OF PRODUCTS.

18          MS. MAROULIS:  YOUR HONOR, MY TEAM TELLS ME THIS IS

19    ALL USER MANUALS AND THEY'RE NOT MIXING DIFFERENT DOCUMENTS.

20    IS IT POSSIBLE WE'RE TALKING ABOUT DIFFERENT EXHIBITS?

21          THE COURT:  OKAY.  I'VE BEEN LENIENT ON THESE

22    COMPILATIONS BECAUSE I'VE IMPOSED THESE LIMITS ON EXHIBITS.

23          LET ME ASK YOU ABOUT 352.  THIS SEEMS LIKE IT'S 22

24    DIFFERENT SCHEMATICS AND IT'S NOT CLEAR IF THEY'RE SCHEMATICS

25    FOR DIFFERENT PRODUCTS.
```

```
 1          DO YOU HAVE AN EXPLANATION ABOUT WHY THESE ARE GROUPED

 2     TOGETHER?

 3          AND I WILL JUST SAY, YOU KNOW, ON PX 136, AN APPLE

 4     EXHIBIT, YOU KNOW, IT'S A CD WITH 13 DIFFERENT FILES OF IDC,

 5     SMARTPHONE, AND TABLET DATA, AND THEY COMPRISE ABOUT 10,000

 6     PAGES.

 7          SO, I MEAN, I'M BEING LENIENT ON BOTH SIDES TO DO THESE

 8     REALLY NON-COMPILATION/COMPILATIONS.

 9              MS. MAROULIS:  YOUR HONOR, YOU ACTUALLY ANTICIPATED

10     WHAT I WAS GOING TO SAY.  I HAVE A CHEAT SHEET HERE WITH OUR

11     EXHIBITS ON ONE SIDE AND APPLE'S EXHIBITS ON THE OTHER, AND

12     WHEN YOUR HONOR WAS TALKING ABOUT THE SCHEMATICS, MY CHEAT

13     SHEET SAID IT'S SIMILAR TO 241, THE DATA SHEETS, AND PTX 236,

14     WHICH IS SUMMARY OF MARKET SHARE DATA, WHICH IS BASICALLY 13

15     DIFFERENT SPREADSHEETS PUT TOGETHER COMPRISING 10,000 PAGES.

16          SO THE IDEA IS TO CREATE EXHIBITS WITH RELATED MATERIALS

17     THAT WOULD MAKE IT EASIER FOR THE JURY TO UNDERSTAND THE

18     TESTIMONY.  SO THERE'S NO DIFFERENCE IN HOW THE PARTIES ARE

19     USING THE SCHEMATICS ARE FOR DIFFERENT PRODUCTS, BUT THEY'RE

20     THE SAME TYPE OF PRODUCT, AND THEY WOULD BE USED BY THE SAME

21     TYPE OF WITNESSES TO EXPLAIN ACCUSED FUNCTIONALITY.  THIS IS

22     FOR INFRINGEMENT OF SAMSUNG PATENTS.

23              THE COURT:  OKAY.  I'LL DENY IT AS TO THOSE TWO, BUT

24     THE OTHER THREE THAT I HAVE QUESTIONS ABOUT, WHICH ARE

25     POTENTIAL GRANTS, ONE IS DX 333.  IT'S CALLED SUMMARY OF THE
```

1    STATE OF THE ART FOR THE '647 PATENT.  IT'S EXCERPTS FROM 11

2    DIFFERENT DOCUMENTS BY DIFFERENT PARTIES; SEVEN SEEMED TO BE

3    EXCERPTS OF MANUALS FOR DIFFERENT PRODUCTS; TWO ARE PATENTS

4    ISSUED TO DIFFERENT INVENTORS.  SOME THINGS ARE A LITTLE BIT

5    UNCLEAR, BUT THEIR NAMES ARE NAMES ARE MANAGING INTERNET

6    SERVICES AND ASSIGNMENTS AND IT SAYS HERE'S HOW, IDM.

7              MS. MAROULIS:  YOUR HONOR.  LET ME ADDRESS THAT.  THE

8    EXHIBIT 333 WAS THE EXHIBIT, THE STATE OF THE ART THAT IS GOING

9    TO BE PROVIDED BY ONE OF OUR TECHNICAL EXPERTS, DR. JEFFAY.

10   ALL OF THE ART HERE WAS DISCUSSED IN HIS REPORT, AND IT'S VERY

11   SIMILAR TO WHAT APPLE DID WITH THEIR EXPERTS WHERE THEY

12   PRESENTED AN EXPERT AND PRESENTED A SUMMARY OF DIFFERENT

13   INFORMATION.

14        SO FIRST OF ALL, ALL OF THE ART WAS PRODUCED; SECONDLY, IT

15   WAS ALL MR. JEFFAY'S REPORTS.

16        ALSO, IT'S NOT PRIOR ART STATE OF THE ART.  SO WE DON'T

17   NEED TO PROVE DATES HERE, AND APPLE APPARENTLY IS NOT

18   CHALLENGING ON AUTHENTICITY GROUNDS THESE VARIOUS SOURCES.

19        SO THE EXHIBITS THAT APPLE USED IN THE LAST TRIAL WERE

20   VERY SIMILAR IS MR. MUSIKA'S EXHIBITS 26 AND 27 WHERE HE DID

21   THESE EXCERPTS AND QUOTES FROM MANY, MANY DIFFERENT DOCUMENTS,

22   SOME AS MANY AS 150.  THEY'RE ALL FROM DIFFERENT SOURCES,

23   DIFFERENT DATES, DIFFERENT SUBJECT MATTER.  WE STRENUOUSLY

24   OBJECTED, BUT IT WAS LET IN WITH REGARD TO 1006.

25        SO WHAT YOU HAVE HERE IS IT'S BASICALLY EXCERPTS FROM

```
 1    DIFFERENT STATE OF THE ART REFERENCES THAT ALL APPEAR IN

 2    DR. JEFFAY'S REPORT.

 3         SO THEY ARE RELATED.  THEY'LL BE INTRODUCED BY ONE

 4    SPONSORING WITNESS, DR. JEFFAY, AND IT'S VERY SIMILAR TO WHAT

 5    APPLE DID IN THE PRIOR TRIAL.

 6         THE COURT:  ALL RIGHT.  LET ME ASK ABOUT THE LAST TWO

 7    AND THEN WE CAN END TODAY.

 8         MR. LEE:  YOUR HONOR, CAN I SAY JUST A WORD ABOUT

 9    THIS ONE?

10         THE COURT:  YES, ON 333, CORRECT?

11         MR. LEE:  YES.

12         THE COURT:  OKAY.

13         MR. LEE:  I REALIZE YOUR HONOR HAS PAST THE OTHER

14    TWO.  THERE'S A PROBLEM WITH NOT ONLY THE DIFFERENT DOCUMENTS,

15    THE DIFFERENT SOURCES, BUT THESE REALLY ARE NOT SUMMARIES.

16    THESE ARE EXCERPTS OF THE PORTIONS THAT THEY THINK ARE THE BEST

17    FOR THEM.  THIS IS LIKE A DEMONSTRATIVE WHERE YOU HAD AN

18    EXHIBIT THAT YOU PUT UP ON THE SCREEN WHAT'S BEST FOR THEM.

19    THE ACTUAL UNDERLYING DOCUMENTS OF 333 ARE MORE THAN 2,000

20    PAGES, AND I DON'T THINK THAT RULE 1006 IS INTENDED.  IT'S

21    SUPPOSED TO BE A SUMMARY.  IT'S NOT SUPPOSED TO BE AN EXCERPT

22    OF THAT WHICH IS BEST FOR YOU.

23         SO THIS PARTICULAR DOCUMENT, 333, IS 45 EXCERPTS OF 45

24    DIFFERENT SOURCES OF THE STATE OF THE ART AS THEY CALL IT.

25    THEY'RE INCOMPLETE.
```

1          THEY HAVE BASICALLY SELECTED PORTIONS THAT THEY THINK ARE

2     HELPFUL TO THEM.  BUT THIS GOES BACK TO THE JURY.  THE JURY IS

3     NOT GOING TO HAVE THE CONTEXT FOR ANY OF THEM.

4          AND WITH THAT ADDITION, WE THINK THIS ONE SHOULDN'T COME

5     IN.

6          MS. MAROULIS:  YOUR HONOR, THAT WAS PRECISELY THE

7     ARGUMENT THAT WAS MADE HERE IN JULY OF 2012 WITH RESPECT TO

8     MR. MUSIKA'S AND MR. HEDGE'S EXHIBITS WHERE THEY PUT TOGETHER

9     WHAT WE THOUGHT WAS A MISLEADING SET OF QUOTES AND IT WAS LET

10    IN.

11         SO IN THIS CASE IT'S NOT MISLEADING AT ALL.  HE'S NOT

12    CHARACTERIZING IT.  IT'S JUST EXCERPTS FROM THE DOCUMENTS.

13    IT'S THE SAME PRINCIPLE AS FORMER PX 26, PX 27, AND MR. HEDGE,

14    THE FORMER ECONOMICS EXPERT, COMPILATION, PX 20, WHICH

15    LITERALLY STUCK TOGETHER VARIOUS PRESS RELEASES, THIRD PARTY

16    DOCUMENTS, AND EVERY OTHER MATTER.

17         MR. LEE:  YOUR HONOR, THERE'S A DIFFERENCE WHEN

18    YOU'RE COMPILING DOCUMENTS THAT ARE, FOR INSTANCE, PRAISE FOR

19    THE PATENTED INVENTION.  PRESS RELEASES, ARTICLES THAT HAVE

20    MENTIONED THE PATENTED INVENTION OR YOU'RE COMPILING SURVEY

21    RESULTS IN SUMMARY FORM, AS MR. MUSIKA DID.

22         THAT'S DIFFERENT FROM GOING INTO 45 DIFFERENT TECHNICAL

23    PUBLICATIONS AND SAYING, HERE'S 45 PAGES.  THIS IS WHAT'S

24    IMPORTANT FROM THESE 2,000.  THAT'S A DIFFERENT SITUATION.

25         MS. MAROULIS:  YOUR HONOR, IT IS IDENTICAL.

1      MR. MUSIKA'S SUMMARY HAD QUOTES AND THESE QUOTES WERE HIGHLY

2      SELECTIVE.  WE THOUGHT THEY WERE HIGHLY MISLEADING, BUT THERE'S

3      NO DISPUTE THAT THEY WERE HIGHLY SELECTIVE FROM THOUSANDS OF

4      PAGES OF DOCUMENTS.

5              THE COURT:  LET ME ASK YOU ABOUT TWO MORE.  DX 490 IS

6      THREE FULL APPLE USER GUIDES RELATING TO DIFFERENT PRODUCTS,

7      THE IPHONE, THE IPAD, AND THE I5 TOUCH, AND IT GOES TO PROVE

8      INFRINGEMENT OF THE '229 AND '449, AND APPLE, IN ITS USER

9      GUIDES, ACTUALLY JUST LABELS EACH USER GUIDE AS ONE EXHIBIT.

10     FOR EXAMPLE, PX 232 IS A USER GUIDE FOR THE SAMSUNG GALAXY

11     NOTE.  PX 233 IS THE USER GUIDES FOR THE SAMSUNG GALAXY NOTE 2.

12         SO WHY SHOULD -- I'M TRYING TO GET PARODY AS MUCH AS

13     POSSIBLE BETWEEN THE TWO SIDES.

14             MS. MAROULIS:  YOUR HONOR, AGAIN, WE WERE WORKING ON

15     THE PRINCIPAL OF APPLE DOING SOMETHING SIMILAR NOT WITH USER

16     GUIDES, BUT OTHER TYPES OF MATERIALS, FOR EXAMPLE, PTX 241,

17     WHICH IS A SET OF SPECIFICATION SHEETS, AND PTX 736, WHICH IS

18     13 SEPARATE IDC SPREADSHEETS THAT ARE 10,000 PAGES LARGE.

19         SO IT'S A SIMILAR, IT'S A SIMILAR TYPE -- IT'S NOT THE

20     SAME TYPE OF DOCUMENTS, BUT IT'S A SIMILAR TYPE OF PRINCIPLE.

21     PTX 241, FOR EXAMPLE, HAS 26 DIFFERENT SAMSUNG PRODUCTS AT

22     ISSUE.  SO THE PARODY IS NOT EXACT IN THE SENSE OF DOCUMENT TO

23     DOCUMENT, BUT IT'S THE SAME PRINCIPLE AND -- IT'S THE PRINCIPLE

24     THAT BOTH SIDES HAVE BEEN WORKING WITH.

25             THE COURT:  SO THE OTHER ONE IS 489.  IT'S CALLED THE

1      SUMMARY OF APPLE MATERIALS REGARDING COMPETITIVE ANALYSIS, BUT

2      IT'S REALLY NOT A SUMMARY.  IT'S EXCERPTS OF 11 DIFFERENT

3      DOCUMENTS.

4          TAKE APARTS FOR DIFFERENT PRODUCTS, SOME SAMSUNG, SOME

5      GOOGLE, SOME HTC, SOME MOTOROLA.  YOU'VE GOT E-MAILS FROM

6      STEVE JOBS IN HERE.  IT'S 11 VERY DISPARATE DOCUMENTS.

7          WHY SHOULD ALL THESE BE TOGETHER?

8              MS. MAROULIS:  YOUR HONOR, THESE DOCUMENTS LARGELY

9      WERE USED AT THE DEPOSITION OF APPLE CORPORATION DESIGNEE ON

10     THE SUBJECT OF APPLE COPYING OTHERS, AND MOST OF THEM CAME FROM

11     COURT FILES, NOT ALL OF THEM.  AND THIS IS A COMPILATION OF

12     DOCUMENTS SHOWING THAT APPLE IS ENGAGED IN THE SAME COMPETITIVE

13     ANALYSIS AS SAMSUNG OR ANYBODY ELSE.

14         THESE DOCUMENTS WERE INTRODUCED IN BOTH TRIALS AND THESE

15     DOCUMENTS, WHILE THEY'RE DIFFERENT DOCUMENTS, IT'S VERY SIMILAR

16     TO, FOR EXAMPLE, WHAT MR. HEDGE DID IN HIS APPRAISAL FOR APPLE.

17             THE COURT:  I THOUGHT THE TAKE APARTS -- I'M SORRY TO

18     INTERRUPT YOU -- IN THE OTHER TRIAL WERE ACTUALLY ONE DOCUMENT

19     PER EXHIBIT.  WERE THEY ALL LUMPED TOGETHER LIKE THIS?

20             MS. MAROULIS:  NOT ON THAT ISSUE, YOUR HONOR.

21         BUT WE DIDN'T HAVE WHAT WE HAD HERE, WHICH IS A CORPORATE

22     DESIGNEE THAT WE DEPOSED SPECIFICALLY ON THIS ISSUE.  IT WAS A

23     LONG DEPOSITION AND MOST OF THESE DOCUMENTS, I CANNOT SAY EVERY

24     SINGLE ONE OF THEM, BUT MOST OF THEM WERE USED IN THE

25     DEPOSITION AND THEY ARE GOING TO BE USEFUL FOR THE JURY.

1          THEY'RE RELATED TO EACH OTHER THEMATICALLY, WHICH IS APPLE'S

2     USE OF COMPETITIVE INTELLIGENCE.

3          THE FIRST PART OF IT I CANNOT DESCRIBE IN DETAIL, YOUR

4     HONOR, BUT IT'S THE SPREADSHEET THAT IS ACTUALLY, I THINK, ONE

5     DOCUMENT.  BUT IT'S MULTIPLE PAGES.

6          THE COURT:  OKAY.  LET ME HEAR FROM APPLE.  IS THERE

7     ANYONE -- I MEAN, YOU'VE LISTED SO MANY.  IS IT JUST DX 333

8     THAT YOU'RE CONCERNED ABOUT?

9          MR. LEE:  NO, YOUR HONOR.  IF I COULD GO THROUGH THEM

10    IN REVERSE ORDER VERY QUICKLY GIVEN THE HOUR.  BUT IN 489, IT'S

11    NOT THAT ALL OF THESE DISPARATE DOCUMENTS, DIFFERENT SOURCES,

12    DIFFERENT TYPE, THEY'RE USED IN SIMILAR DEPOSITIONS IN MAY

13    ACCORDING TO SAMSUNG, BE FACTUALLY RELATED.  IF THAT WAS THE

14    PRINCIPLE FOR 1006, YOUR HONOR WOULD BE SEEING COMPILATIONS ALL

15    THE TIME.  I DON'T THINK THAT'S WHAT HAPPENED IN THE FIRST

16    TRIAL, AND I DON'T THINK THAT'S WHAT HAPPENED WITH OURS.

17          AS TO 333, WE TALKED ABOUT THAT.

18          AS TO 351, YOUR HONOR, IT'S -- A COMPARISON WAS MADE TO

19    OUR 241.  OUR PTX 241 IS 75 PAGES OF SPECIFICATIONS.  DX 351 IS

20    3600 PAGES OF APPLE MANUALS FOR I THINK DIFFERENT INTERNAL

21    COMPONENTS.

22          AND THERE ARE TWO CONCERNS.  THERE IS NO SUMMARY.  WE'VE

23    PROVIDED SUMMARIES UNDER 1006 WHEN WE'VE GIVEN A COMPILATION.

24    THERE'S NO SUMMARY OF THIS.

25          AND THEN I HAVE THE CONCERN THAT WHEN YOU HAVE A 3600 PAGE

1    DUMP INTO THE RECORD, WHEN YOUR HONOR GETS TO JMOL, WHEN WE GET

2    UP AN APPEAL, THERE ARE GOING TO BE ARGUMENTS THAT, OH, THIS

3    WAS IN THE RECORD, NO ONE IS GOING TO REFER TO THE 3600 PAGES

4    OTHER THAN AS A LUMP, AND I DON'T THINK THAT'S WHAT 1006 WAS

5    INTENDED FOR.

6        THEN THE LAST THING I'LL SAY IS THIS:  THE FACT THAT THE

7    CIRCUMSTANCES THAT ARE CITED TO YOUR HONOR ARE MR. MUSIKA AS

8    OPPOSED TO THE TECHNICAL EXPERTS IS NOT A COINCIDENCE.  I THINK

9    FOR SURVEY EVIDENCE, FINANCIAL EVIDENCE, MARKET SHARE

10   INFORMATION, THAT IS WHAT 1006 WAS INTENDED FOR.

11       BUT COLLECTING E-MAILS AND LETTERS FROM DIFFERENT PARTIES

12   AND PUTTING THEM TOGETHER BECAUSE THEY'RE THEMATICALLY RELATED

13   ISN'T WHAT 1006 IS FOR.

14       AND THE END RESULT -- IT'S TWO THINGS, YOUR HONOR.  ONE

15   IS, AND WE'VE MADE THIS ARGUMENT TO YOU, THAT A NUMBER OF

16   EXHIBITS IS SEVERAL HUNDRED MORE THAN 200.

17       BUT SETTING THAT ASIDE, THERE IS A PROBLEM WITH HAVING

18   DOCUMENTS JUST DUMPED IN THE RECORD WITHOUT ANY DISCUSSION OF

19   THEM DURING THE COURSE OF THE -- ANY MEANINGFUL DISCUSSION OF

20   THEM DURING THE COURSE OF THE TRIAL.

21       AND THEN FOR 333, IT'S NOT EVEN THE DOCUMENTS.  IT'S WHAT

22   SOMEONE HAS IDENTIFIED AS SOMETHING MOST HELPFUL TO THEIR CASE.

23           MS. MAROULIS:  YOUR HONOR, MAY I REPLY BRIEFLY?

24           THE COURT:  GO AHEAD, PLEASE.

25           MS. MAROULIS:  IN A NUMBER OF INSTANCES, APPLE, IN

```
 1     BOTH THIS CASE AND IN THE PRIOR CASE, SOUGHT TO GET IN MULTIPLE

 2     DOCUMENTS, NOT BY WAY OF SUMMARY, BUT LITERALLY STICKING THEM

 3     TOGETHER.  I'VE ALREADY MENTIONED SEVERAL TIMES PTX 241, WHICH

 4     IS SPECIFICATIONS.  THEY ALSO COMBINED SOURCE CODE FOR MANY

 5     DIFFERENT ACCUSED PRODUCTS THAT ARE NOT RELATED TO EACH OTHER.

 6          FINALLY, IN THE LAST TRIAL, THEY PUT TOGETHER ALL OF

 7     SAMSUNG'S DECLARATIONS TO ETSI RELATED TO COMPLETELY DIFFERENT

 8     PATENTS, FILED AT DIFFERENT TIMES, AUTHORED AND DEFENDED IN

 9     DEPOSITIONS BY DIFFERENT PEOPLE.  THEY PUT THEM TOGETHER IN

10     INSTEAD OF FIVE OR SIX AND CREATED AN EXHIBIT.

11          SO ALL WE'RE ASKING IS THAT BOTH SIDES BE TREATED IN THE

12     SAME WAY AS TO THEIR EXHIBITS.  AND WHETHER IT'S A TECHNICAL

13     EXPERT OR A DAMAGES EXPERT SHOULD NOT REALLY BE A DIFFERENT

14     STANDARD.  IF APPLE WAS ALLOWED TO DO IT LAST TIME AND THEY'RE

15     ALLOWED TO DO IT THIS TIME, WE SHOULD BE AS WELL.

16          THE COURT:  BUT I DON'T RECALL THEM SAYING THIS IS A

17     SUMMARY OF THE STATE OF THE ART AND ALL THE PRIOR ART FOR A

18     CERTAIN PATENT AS ONE EXHIBIT.

19          MS. MAROULIS:  THEY DID NOT DO A STATE OF THE ART,

20     BUT THEY'VE DONE MANY OTHER DISCIPLINES AND SUBJECTS.  SO IT

21     DOESN'T SEEM THAT WE SHOULD DECIDE IT BASED ON WHAT THE ISSUE

22     IS.

23          THE COURT:  BUT I --

24          MS. MAROULIS:  IF THEY WERE ABLE TO DO IT WITH

25     RESPECT TO DEMAND, IF THEY'RE ABLE TO DO IT WITH RESPECT TO
```

```
 1        ALLEGED PRAISE FOR THE PRODUCTS AND VARIOUS OTHER ISSUES, WE
 2        SHOULD BE, TOO.  AND THEY'RE DOING IT FOR INFRINGEMENT FOR THE
 3        SPECIFICATION SHEETS, WHICH IS PX 241.  IT'S THE SAME
 4        PRINCIPLE.
 5             THE COURT:  WELL, I'M NOT -- I'M GOING TO DENY THE
 6        MOTION AS TO DX 490 EVEN IF THAT IS THREE DIFFERENT APPLE USER
 7        GUIDES FOR THREE DIFFERENT PRODUCTS.  I'M GOING TO ALLOW THAT
 8        BECAUSE THESE ARE ALL APPLE DOCUMENTS.  THESE ARE ACCUSED
 9        PRODUCTS.
10        I THINK THE RECORD ON APPEAL WILL NOT BE AS COMPLICATED IF
11        IT'S THREE SEPARATE APPLE USER GUIDES.
12        I AM MORE CONCERNED, HOWEVER, ABOUT 333.
13        NOW, 351 IS ALSO JUST APPLE USER MANUALS, DATA SHEETS,
14        SPECIFICATIONS.  I'M GOING TO DENY THAT.
15        MR. LEE, YOU'RE EXPLAINING ABOUT 3,000 PAGES, BUT PX 336,
16        THE CD OF IDC DATA IS 10,000 PAGES.
17        BUT WHAT DOES CONCERN ME IS I THINK 333 IS MORE
18        PROBLEMATIC.  I MEAN, IF IT'S JUST A SERIES OF PARTIES' USER
19        MANUALS, I'M FINE WITH THAT BEING LUMPED TOGETHER.
20        OKAY.  THIS IS WHAT I'M GOING TO DO.  I'M GOING TO GRANT
21        IT AS TO THE MOTION AS TO DX 333, BUT DENY IT AS TO ALL OTHER
22        EXHIBITS THAT WERE REFERENCED IN THE MOTION.  I'M DENYING IT AS
23        TO DX 317, 334, 350, 351, 352, 353, 354, 355, 356, 357, 358,
24        360, 372, 375, 406, 457, 458, 478, 489, 490, AND 491.
25             MR. LEE:  YOUR HONOR, MAY I JUST ASK ONE QUESTION OR
```

```
 1        CLARIFICATION?

 2                 THE COURT:  WHAT'S THAT?

 3                 MR. LEE:  WE'VE OBJECTED TO THESE AS NOT PROPER

 4        COMPILATIONS UNDER 1006.  IF WE GET TO THE POINT WHERE THE

 5        COMPILATION IS GOING TO BE OFFERED AND WE HAVE AN OBJECTION TO

 6        THAT SPECIFICALLY, NOT FOR 1006 REASONS, BUT FOR RELEVANCE

 7        REASONS OR SOMETHING ELSE, WE CAN STILL USE OUR HIGH PRIORITY

 8        OBJECTION FOR THAT ON THAT EVENING OR THAT DAY?

 9                 THE COURT:  YOU MEAN A 1006 OBJECTION TO A SPECIFIC

10        DOCUMENT THAT'S NOT ON THIS LIST?

11                 MR. LEE:  NO.  WHAT I MEAN IS WHEN THEY GO TO -- WE

12        WOULD NOT OBJECT TO THEM AS IMPROPER 1006 COMPILATIONS.

13            BUT WHEN WE WENT TO OFFER THE COMPILATION, IF WE HAD AN

14        OBJECTION TO A DOCUMENT IN THE COMPILATION FOR DIFFERENT

15        REASONS, IT'S NOT RELEVANT, IT'S HEARSAY --

16                 THE COURT:  OH, THAT'S FINE.

17                 MR. LEE:  OKAY.  THANK YOU.

18                 THE COURT:  THAT'S NOT -- THAT'S FINE.

19            OKAY.  SO IT'S ONLY GRANTED AS TO ONE EXHIBIT.  IT'S

20        DENIED AS TO EVERYTHING ELSE.

21                 MS. MAROULIS:  THANK YOU, YOUR HONOR.

22                 THE COURT:  ALL RIGHT.  THANK YOU.  I THINK WE ARE

23        DONE.  IS THERE ANYTHING ELSE?  I DON'T THINK WE NEED TO SEE

24        EACH OTHER AGAIN UNTIL THE TRIAL.  BUT YOU TELL ME IF YOU THINK

25        THAT'S NOT RIGHT.  I THINK WE'RE OKAY.
```

1              MR. LEE:  FOR APPLE, WE THINK THAT'S CORRECT, YOUR

2     HONOR.

3              THE COURT:  OKAY.  SO THEN WE'LL SEE YOU THEN ON

4     MARCH 31ST, AT 9:00 O'CLOCK UNLESS YOU THINK YOU NEED TO COME

5     BEFORE THEN.

6              MR. LEE:  9:00 O'CLOCK IS FINE.

7              THE COURT:  OKAY.  THEN 9:00 O'CLOCK.

8         THANK YOU.

9              MR. QUINN:  THANK YOU, YOUR HONOR.

10              MR. LEE:  THANK YOU, YOUR HONOR.

11         (THE PROCEEDINGS WERE CONCLUDED AT 5:46 P.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                       CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____
    LEE-ANNE SHORTRIDGE, CSR, CRR
17  CERTIFICATE NUMBER 9595

18       DATED:  MARCH 6, 2014

19

20

21

22

23

24

25