# EXHIBIT 27

# Redacted Version Of Document Sought To Be Sealed

```
                                                              1
 1              UNITED STATES DISTRICT COURT
 2     NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION
 3    - - - - - - - - - - - - - - - - -X
 4    APPLE INC., a California          :
 5    Corporation,                      :
 6              Plaintiff,              :
 7    v.                                :
 8    SAMSUNG ELECTRONICS CO., LTD., a  :
 9    Korean corporation; SAMSUNG       : Civil Action No.
10    ELECTRONICS AMERICA, INC., a New  : 12-cv-00630-LHK(PSG)
11    York corporation; and SAMSUNG     :
12    TELECOMMUNICATIONS AMERICA, LLC,  :
13    A Delaware limited liability      :
14    Company,                          :
15              Defendants.             :
16    - - - - - - - - - - - - - - - - -X
17    (Caption continued on next page)
18       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
19     VIDEOTAPED DEPOSITION OF JAMES R. KEARL, Ph.D.
20                  Salt Lake City, Utah
21                Friday, October 4, 2013
22                       9:22 a.m.
23    Job No.:  44751
24    Pages:  1 - 307
25    Reported By:  Vickie Larsen, CSR/RMR
```

277

| | | |
|---|---|---|
| 1 | the licensor could be deemed to be operating in bad | 17:54:39 |
| 2 | faith?  Could you envision any circumstance in which | 17:54:43 |
| 3 | that might happen? | 17:54:45 |
| 4 |         MR. KIDMAN:  Objection.  Calls for a | 17:54:46 |
| 5 | legal conclusion.  Incomplete hypothetical. | 17:54:48 |
| 6 |         THE WITNESS:  It would depend upon sort | 17:54:51 |
| 7 | of the behavior after the offer.  I don't think one | 17:54:53 |
| 8 | can look at offers per se and make those kinds of | 17:54:58 |
| 9 | judgments.  One wants to know sort of where do we go | 17:55:02 |
| 10 | from the offer?  And how do the parties interact | 17:55:06 |
| 11 | following that? | 17:55:09 |
| 12 |         That's, at least, what I would understand | 17:55:11 |
| 13 | FRAND, to be a willingness to sort of engage in | 17:55:13 |
| 14 | negotiation.  But where you start the negotiation, it | 17:55:15 |
| 15 | may not be relevant to where you end up. | 17:55:22 |
| 16 |     Q.    BY MR. MUELLER:  So give me some examples | 17:55:25 |
| 17 | of conduct that would help me understand how a | 17:55:26 |
| 18 | licensor could operate in bad faith, in your view? | 17:55:30 |
| 19 |         MR. KIDMAN:  Object to the form of the | 17:55:34 |
| 20 | question. | 17:55:35 |
| 21 |         THE WITNESS:  A refusal to license.  A | 17:55:35 |
| 22 | refusal to engage in negotiation and to continue in | 17:55:52 |
| 23 | the negotiation of good faith basis in an effort to | 17:55:55 |
| 24 | try to read a license.  I mean, I suppose that -- | 17:55:59 |
| 25 |     Q.    BY MR. MUELLER:  How about conduct -- I'm | 17:56:03 |

278

| | | |
|---|---|---|
| 1 | sorry. | 17:56:04 |
| 2 | A.   Unwilling licensor, in this case. | 17:56:04 |
| 3 | Q.   Is there any conduct that, during the | 17:56:06 |
| 4 | negotiation, would put the licensor in the bad faith | 17:56:08 |
| 5 | category? | 17:56:13 |
| 6 | A.   I'm not in a position to make a judgment | 17:56:14 |
| 7 | about that. | 17:56:17 |
| 8 | Q.   What about bargaining with access to | 17:56:18 |
| 9 | confidential information the party wasn't supposed to | 17:56:21 |
| 10 | have about the other side's licenses? | 17:56:25 |
| 11 | MR. KIDMAN:  Object to the form of the | 17:56:28 |
| 12 | question. | 17:56:28 |
| 13 | Q.   BY MR. MUELLER:  Would that be bad faith | 17:56:30 |
| 14 | or good faith? | 17:56:31 |
| 15 | MR. KIDMAN:  Calls for a legal | 17:56:31 |
| 16 | conclusion.  Incomplete hypothetical. | 17:56:32 |
| 17 | THE WITNESS:  I suppose it depends upon | 17:56:39 |
| 18 | how that information was acquired.  And, I mean, | 17:56:40 |
| 19 | there's nothing in a negotiation or in sort of the | 17:56:43 |
| 20 | economic theory of negotiations that require | 17:56:47 |
| 21 | disclosure of information. | 17:56:49 |
| 22 | And in fact the price discovery mechanism | 17:56:52 |
| 23 | is the mechanism by which markets come to -- market | 17:56:54 |
| 24 | prices come to embed the information and the parties | 17:56:57 |
| 25 | in the process of a negotiation have to sort of -- the | 17:57:00 |

279

| | | |
|---|---|---|
| 1 | information gets into the price. | 17:57:03 |
| 2 | But, you know, if one party has different | 17:57:07 |
| 3 | information of their party, negotiating on the basis | 17:57:12 |
| 4 | of that different information is not on its face bad | 17:57:15 |
| 5 | faith. | 17:57:18 |
| 6 | Q.   BY MR. MUELLER:  So let's assume the | 17:57:19 |
| 7 | party acquired the information in violation of a court | 17:57:20 |
| 8 | order.  Would that be bad faith? | 17:57:22 |
| 9 | MR. KIDMAN:  Objection.  Calls for a | 17:57:24 |
| 10 | legal conclusion.  Assumes facts not in evidence. | 17:57:26 |
| 11 | THE WITNESS:  The court -- | 17:57:29 |
| 12 | MR. KIDMAN:  Lacks foundation. | 17:57:30 |
| 13 | Incomplete hypothetical. | 17:57:31 |
| 14 | THE WITNESS:  The court would have to | 17:57:32 |
| 15 | decide that.  I'm not in a position to. | 17:57:33 |
| 16 | Q.   BY MR. MUELLER:  Is your standard of bad | 17:57:35 |
| 17 | faith and good faith a subjective standard that turns | 17:57:37 |
| 18 | on the intent of the licensor? | 17:57:40 |
| 19 | MR. KIDMAN:  Objection.  Vague. | 17:57:46 |
| 20 | THE WITNESS:  Well, I don't know how I | 17:57:48 |
| 21 | would make a judgment of intent.  I'm not a specialist | 17:57:53 |
| 22 | in reading intent.  This is -- and I know -- I know | 17:57:58 |
| 23 | that is a standard for certain kinds of illegal | 17:58:02 |
| 24 | activities, whether there was intentions of. | 17:58:06 |
| 25 | But an economist doesn't have any | 17:58:08 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF JAMES R. KEARL, Ph.D.
CONDUCTED ON FRIDAY, OCTOBER 4, 2013

280

| | | |
|---|---|---|
| 1 | expertise to bring to bear on whether there was | 17:58:10 |
| 2 | intention or not.  What an economist can look at is | 17:58:14 |
| 3 | the actual behavior. | 17:58:17 |
| 4 | Q.    BY MR. KIDMAN:  Well, in your report when | 17:58:21 |
| 5 | you characterized Apple as not operating in good | 17:58:22 |
| 6 | faith, what standard were you applying? | 17:58:26 |
| 7 | A.    The -- I was looking at the negotiation | 17:58:28 |
| 8 | history in which -- ████████████████ | |
| | ████████████████████████████████ | |
| | ████████████    ████████████ | |
| | ████████████████████ | |
| 12 | So I don't need to recite into the record | 17:58:53 |
| 13 | here, but my report sort of details my understanding | 17:58:55 |
| 14 | of the negotiation history, and it's all of those | 17:58:58 |
| 15 | elements taken together suggest that Apple was not -- | 17:59:01 |
| 16 | not negotiating in good faith. | 17:59:08 |
| 17 | Q.    Now, you understand that the first time | 17:59:10 |
| 18 | Samsung made an offer specific to its declared | 17:59:13 |
| 19 | essential patents was in July of 2011? | 17:59:18 |
| 20 | A.    Which offer is this? | 17:59:22 |
| 21 | Q.    This is the 2.4 percent of the average | 17:59:24 |
| 22 | sales price of the Apple devices? | 17:59:27 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER
PLANET DEPOS - ASIA    888.433.3767 | WWW.PLANETDEPOS.COM/ASIA