Exhibit 1



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,287 | 10/15/2010 | 5946647 | 031486.647 | 9354 |

77970        7590        12/16/2011

Apple Inc.
c/o Novak Druce + Quigg LLP
1000 Louisiana Street
Fifty-Third Floor
Houston, TX  77002

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 12/16/2011

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS
BRYAN CAVE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104

Date:
**MAILED**

DEC 1 6 2011

CENTRAL REEXAMINATION UNIT

## EX PARTE REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. : 90011287
PATENT NO. : 5946647
ART UNIT : 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| **Office Action in Ex Parte Reexamination** | Control No.<br>90/011,287 | Patent Under Reexamination<br>5946647 |
|---|---|---|
| | Examiner<br>MARY STEELMAN | Art Unit<br>3992 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a ☒ Responsive to the communication(s) filed on <u>08/29/2011, 11/01/2011</u> .   b ☒ This action is made FINAL.
c ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.   3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO/SB/08.   4. ☐ _____ .

Part II   SUMMARY OF ACTION

1a. ☒ Claims *1-24 & 25-34* are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
3. ☒ Claims *1-12,14 and 32-34* are patentable and/or confirmed.
4. ☒ Claims *13 and 15-31* are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ The drawings, filed on _____ are acceptable.
7. ☐ The proposed drawing correction, filed on _____ has been   (7a) ☐ approved   (7b) ☐ disapproved.
8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

     a) ☐ All   b) ☐ Some*   c) ☐ None   of the certified copies have

     1 ☐ been received.

     2 ☐ not been received.

     3 ☐ been filed in Application No. _____ .

     4 ☐ been filed in reexamination Control No. _____ .

     5 ☐ been received by the International Bureau in PCT application No. _____ .

     * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)          Office Action in Ex Parte Reexamination          Part of Paper No. 20111108

Application/Control Number: 90/011,287                                                Page 2

Art Unit: 3992

**DETAILED ACTION** Ex Parte Reexamination

This is an Ex Parte Reexamination of USPN 5,946,647 to Miller et al. [hereinafter '647].

Receipt is acknowledged of the Response to Non Final Office Action (06/27/2011) filed on

August 29, 2011. No claim has been amended; no claim has been canceled. Claims 25-34 are

proposed to be added. Support for the newly proposed claims is found at p. 23 of Patent

Owner's Remarks.

Currently, claims 1-24 are subject to reexamination. Claims 1-12 and 14 are confirmed. Claims

13 and 15-24 are rejected.

New claims 25-34 are not found to broaden the scope of original claims 1 or 15. New claims 25-

34 are entered into prosecution. New claims 32 and 33 recite an "analyzer server" and are found

to be patentable for the same reasons that original claims 1-12 and 14 are confirmed. New claim

34 is found patentable in view of dependence on patentable independent claim 33.

**Information Disclosure Statement**

IDS received 06/28/2011, 08/03/2011, 08/29/2011, and 10/31/2011 have been entered into

prosecution. "With respect to the **Information Disclosure Statement** (PTO/SB/08A and 08B or

its equivalent) considered with this action, the information cited has been considered as

described in the MPEP. Note that MPEP 2256 and 2656 indicate that degree of consideration to

be given to such information will be normally limited by the degree to which the party filing the

information citation has explained the content and relevance of the information.

The relevance of the information may be a concise explanation, as it is presently understood by

the individual designated in § 1.56(c) most knowledgeable about the content of the information,

of each patent, publication, or other information listed that is not in the English language.  The

concise explanation may be either separate from applicant's specification or incorporated therein.

The video material (IDS 06/28/2011) has not been viewed and has been considered only to the

extent that the content and relevance has been explained. The video citation is lacking a date.

## Concurrent Proceedings

Patent Owner has notified (07/12/2011) the USPTO of the following concurrent proceedings:

> 1) MOTOROLA MOBILITY INC. v. APPLE INC. ET AL, 1:10CV00867 - DISTRICT
> OF DELAWARE, FILED OCTOBER 08, 2010.
>
> 2) APPLE INC. ET AL v. HIGH TECH COMPUTER CORP. ET AL, 1:10CV00166 -
> DISTRICT OF DELAWARE, FILED MARCH 02, 2010.
>
> 3) APPLE INC v. HIGH TECH COMPUTER CORP. ET AL, 337-TA-710,
> INTERNATIONAL TRADE COMMISSION, FILED APRIL 6, 2010.  An Initial
> Determination was signed July 15, 2011, a copy of which was received at USPTO on
> 08/29/2011.

## Response to Arguments

"Though understanding the claim language may be aided by explanations contained in the

written description, it is important not to import into a claim limitations that are not part of the

claim. For example, a particular embodiment appearing in the written description may not be

read into a claim when the claim language is broader than the embodiment." *Superguide Corp.*

*v. DirecTV Enterprises, Inc.,* 358 F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004). See

also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir.

004) (discussing recent cases wherein the court expressly rejected the contention that if a patent

describes only a single embodiment, the claims of the patent must be construed as being limited

to that embodiment);< *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369, 67 USPQ2d

1947, 1950 (Fed. Cir. 2003) ("Interpretation of descriptive statements in a patent's written

description is a difficult task, as an inherent tension exists as to whether a statement is a clear

lexicographic definition or a description of a preferred embodiment.  The problem is to interpret

claims in view of the specification' without unnecessarily importing limitations from the

specification into the claims."); *Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371, 65 USPQ2d

1865, 1869-70 (Fed. Cir. 2003) (Although the specification discussed only a single embodiment,

the court held that it was improper to read a specific order of steps into method claims where, as

a matter of logic or grammar, the language of the method claims did not impose a specific order

on the performance of the method steps, and the specification did not directly or implicitly

require a particular order).

In In re Zletz, supra, the examiner and the Board had interpreted claims reading "normally solid

polypropylene" and "normally solid polypropylene having a crystalline polypropylene content"

as being limited to "normally solid linear high homopolymers of propylene which have a

crystalline polypropylene content." The court ruled that limitations, not present in the claims,

were improperly imported from the specification. See also *In re Marosi*, 710 F.2d 799, 218

USPQ 289 (Fed. Cir. 1983) ("Claims are not to be read in a vacuum, and limitations therein are

to be interpreted in light of the specification in giving them their broadest reasonable

interpretation'." 710 F.2d at 802, 218 USPQ at 292 (quoting In re Okuzawa, 537 F.2d 545, 548,

190 USPQ 464, 466 (CCPA 1976)) (emphasis in original). The court looked to the specification

to construe "essentially free of alkali metal" as including unavoidable levels of impurities but no

more.). Compare *In re Weiss*, 989 F.2d 1202, 26 USPQ2d 1885 (Fed. Cir. 1993) (unpublished

decision - cannot be cited as precedent) (The claim related to an athletic shoe with cleats that

"break away at a preselected level of force" and thus prevent injury to the wearer. The examiner

rejected the claims over prior art teaching athletic shoes with cleats not intended to break off and

rationalized that the cleats would break away given a high enough force. The court reversed the

rejection stating that when interpreting a claim term which is ambiguous, such as "a preselected

level of force", we must look to the specification for the meaning ascribed to that term by the

inventor." The specification had defined "preselected level of force" as that level of force at

which the breaking away will prevent injury to the wearer during athletic exertion.**)

An applicant is entitled to be his or her own lexicographer and may rebut the presumption that

claim terms are to be given their ordinary and customary meaning by clearly setting forth a

definition of the term that is different from its ordinary and customary meaning(s). See *In re*

*Paulsen*, 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed. Cir. 1994) (inventor may define

specific terms used to describe invention, but must do so "with reasonable clarity, deliberateness,

and precision" and, if done, must "set out his uncommon definition in some manner within the

patent disclosure' so as to give one of ordinary skill in the art notice of the change" in meaning)

(quoting *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387-88, 21 USPQ2d 1383, 1386

(Fed. Cir. 1992)). Where an explicit definition is provided by the applicant for a term, that

definition will control interpretation of the term as it is used in the claim. *Toro Co. v. White*

*Consolidated Industries Inc.*, 199 F.3d 1295, 1301, 53 USPQ2d 1065, 1069 (Fed. Cir. 1999)

(meaning of words used in a claim is not construed in a "lexicographic vacuum, but in the

context of the specification and drawings"). Any special meaning assigned to a term "must be

sufficiently clear in the specification that any departure from common usage would be so

understood by a person of experience in the field of the invention. " *Multiform Desiccants Inc. v.*

*Medzam Ltd.*, 133 F.3d 1473, 1477, 45 USPQ2d 1429, 1432 (Fed. Cir. 1998). See also *Process*

*Control Corp. v.*

*HydReclaim Corp.*, 190 F.3d 1350, 1357, 52 USPQ2d 1029, 1033 (Fed. Cir. 1999) and MPEP §

2173.05(a). The specification should also be relied on for more than just explicit lexicography or

clear disavowal of claim scope to determine the meaning of a claim term when applicant acts as

his or her own lexicographer; the meaning of a particular claim term may be defined by

implication, that is, according to the usage of the term in >the< context in the specification. See

*Phillips v. AWH Corp.*, *>415 F.3d 1303<, 75 USPQ2d 1321 (Fed. Cir. 2005) (en banc); and

*Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1577 (Fed. Cir.

1996).

Compare *Merck & Co., Inc., v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370, 73 USPQ2d

1641, 1646 (Fed. Cir. 2005), where the court held that patentee failed to redefine the ordinary

meaning of "about" to mean "exactly" in clear enough terms to justify the counterintuitive

definition of "about." ("When a patentee acts as his own lexicographer in redefining the meaning

of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description.").

## Discussion related to the claim term "analyzer server"

**Examiner** notes that Applicant acted as their own lexicographer in defining the term "analyzer server." The '647 Specification teaches "...an analyzer server for detecting structures in the data, and for linking actions to the detected structures..." An analyzer server is described ('647, 3: 54-67; 4: 58-64) as a subroutine within a program, which receives data from a document that has recognizable patterns. The analyzer server comprises one or more pattern analysis units, such as a parser and grammars (grammar file) or fast string search function and dictionaries (string library), which use patterns to parse a document for recognizable structures. "Parser retrieves a grammar from grammar file and parses text using the retrieved grammar." (5: 5-10 & FIG. 4 - Alternately, a fast string search, using a pattern, retrieves 1070 the contents of string library 420, detects 1080 the strings in the data identical to those in the string library 420, such as a dictionary, and links 1090 actions associated with the library string to the detected string. ('647, 6: 43-47) The analyzer server links actions associated with the responsible pattern (as retrieved from grammar file/string library) to the detected structure, using conventional pointers (3: 65-67): "Parser retrieves from grammar file 320 pointers attached to the grammar and attaches the same pointers to the identified structure." ('647, 4:67 - 5: 2)   "...a parsing process retrieves 1030 grammars, detects 1040 structures in the data based on the retrieved grammars, and links 1050 actions associated with each grammar to each structure detected by that grammar." ('647, 6: 39-42)

Application/Control Number: 90/011,287                                              Page 8

Art Unit: 3992

An "analyzer server" includes parser functionality, linking associated actions to a detected

structure using pointers retrieved from the grammar file 320. The parser of the '647 invention

uses pointers that are attached to the grammar to attach to the identified structure, thus linking

detected Structure to associated action ('647, 4: 67-5: 2).

Citations from '647 related to analyzer server:

> (Abstract) "The analyzer server receives, from an application running concurrently,
> data having recognizable structures, uses a pattern analysis unit, such as a parser or
> fast string search function, to detect structures in the data, and links relevant actions to
> the detected structures."

> (2: 25-34), "The program [a program to identify structures in a document] includes
> program subroutines that include an analyzer server, an application program interface,
> a user interface and an action processor. The analyzer server receives data from a
> document having recognizable structures, and uses patterns to detect the structures.
> Upon detection of a structure, the analyzer server links actions to the detected
> structure. Each action is a computer subroutine that causes the CPU to perform a
> sequence of operations on the particular structure to which it is linked."

> (3: 54-67), "Program 165 contains program subroutines including an analyzer server
> 220, an application program interface 230, a user interface 240 and an action processor
> 250. Analyzer server 220 receives data having recognizable patterns from a document
> 210, which may be retrieved from a storage medium such as RAM 170, ROM 155,
> disk storage 175, or the like, and presented on output device 105 by application 167.
> Analyzer server 220 comprises one or more pattern analysis units, such as a parser and
> grammars or a fast string search function and dictionaries, which uses patterns to parse
> document 210 for recognizable structures. Upon detection of a structure, analyzer
> server 220 links actions associated with the responsible pattern to the detected
> structure, using conventional pointers."

> (4: 58 - 5: 5), "Referring now to FIG. 3, a block diagram illustrating an analyzer server
> 220 is shown. In this figure, analyzer server 220 is described as having a parser 310
> and a grammar file 320, although alternatively or additionally a fast string search
> function or other function [6: 64 -67, use a neural net or a musical library for
> searching] can be used. Parser 310 retrieves a grammar from grammar file 320 and
> parses text using the retrieved grammar. Upon identification of a structure in the text,
> parser 310 links the actions associated with the grammar to the identified structure.
> More particularly, parser 310 retrieves from grammar file 320 pointers attached to the
> grammar and attaches the same pointers to the identified structure. These pointers
> direct the system [by way of selection using a user interface] to the associated actions

> contained in associated actions file 330. Thus, upon selection of the identified
> structure, user interface 240 can locate the linked actions."

> (5: 5- 17), "FIG. 4 illustrates an example of an analyzer server 220 which includes
> grammars 410 and a string library 420 such as a dictionary, each with associated
> actions...When analyzer server 220 identifies [a structure]...actions...are linked to [the
> structure]..."

The Specification provides embodiments of the analyzer server (various pattern analysis

techniques noted) that use a parser and grammars or a fast string search function, dictionaries, a

neural net or a musical library to search / parse a document 210 for recognizable structures.

When a structure is identified, the analyzer server retrieves pointers attached to the grammar

(pointers attached to grammar provide an address of an associated actions) and attaches (links)

the same pointers to the identified structure. The pointers are used by the interface (user

interface 240, visual or audio embodiments disclosed) to locate associated actions. See FIG. 3,

data structure of grammars #320 with pointers attached to each grammar, and data structure of

Associated Actions #330, where pointers attached to each grammar point to associated actions.

The detected structures are linked to pointers that provide the address of associated relevant

actions, where each action (2: 31-34) is a computer subroutine that causes the CPU to perform a

sequence of operations on the particular structure. Structures may be linked by way of pointers

that point to multiple actions [candidate actions] (2: 34-41) where actions may include opening,

loading, closing, storing or external actions such as returning phone calls, drafting letters,

sending facsimile copies and e-mail and the like. (2: 50-53), "...the user interface presents and

enables selection of candidate actions. When a candidate action is selected, the action processor

Application/Control Number: 90/011,287                                                          Page 10

Art Unit: 3992

performs the selected action [where each action is a computer subroutine that causes...a sequence

of operations] on the selected structure."


Within the claims reciting "analyzer server", the analyzer server subroutine is responsible for the

linking action.  The "linking" action is only done by an "analyzer server."  With regards to the

defined "analyzer server", Patent Owner's cite to ('647, 5: 6-37) as representing an exemplary

embodiment or a broader interpretation does not appear to be evidentiary to Patent Owner's

suggestion of a broad interpretation of the "linking" action done by an "analyzer server."  The

enablement of the linking action by the "analyzer server", by use of conventional pointers is

explicit.


**Discussion related to the claim term "linking"**

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have

to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the

effective filing date of the patent application." *Phillips v. AWH Corp.*, *>415 F.3d 1303, 1313<,

75 USPQ2d 1321>, 1326< (Fed. Cir. 2005) (en banc).  *Sunrace Roots Enter. Co. v. SRAM Corp.*,

336 F.3d 1298, 1302, 67 USPQ2d 1438, 1441 (Fed. Cir. 2003); *Brookhill-Wilk 1, LLC v.*

*Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 67 USPQ2d 1132, 1136 (Fed. Cir. 2003)("In the

absence of an express intent to impart a novel meaning to the claim terms, the words are

presumed to take on the ordinary and customary meanings attributed to them by those of

ordinary skill in the art.").  *E-Pass Technologies, Inc. v. 3Com Corporation*, 343 F.3d 1364,

1368, 67 USPQ2d 1947, 1949 (Fed. Cir. 2003) (Where no explicit definition for the term

"electronic multi-function card" was given in the specification, this term should be given its

ordinary meaning and broadest reasonable interpretation; the term should not be limited to the

industry standard definition of credit card where there is no suggestion that this definition applies

to the electronic multi-function card as claimed, and should not be limited to preferred

embodiments in the specification.).  The ordinary and customary meaning of a term may be

evidenced by a variety of sources, >including "the words of the claims themselves, the remainder

of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific

principles, the meaning of technical terms, and the state of the art."< *Phillips v. AWH Corp.*,

*>415 F.3d at 1314<, 75 USPQ2d **>at 1327.< If extrinsic reference sources, such as

dictionaries, evidence more than one definition for the term, the intrinsic record must be

consulted to identify which of the different possible definitions is most consistent with

applicant's use of the terms. *Brookhill-Wilk* 1, 334 F. 3d at 1300, 67 USPQ2d at 1137.  If more

than one extrinsic definition is consistent with the use of the words in the intrinsic record, the

claim terms may be construed to encompass all consistent meanings. ** See *>e.g.,< Rexnord

Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342, 60 USPQ2d 1851, 1854 (Fed. Cir. 001)(explaining

the court's analytical process for determining the meaning of disputed claim terms); *Toro Co. v.

White Consol. Indus., Inc.*, 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed. Cir. 1999)

("[W]ords in patent claims are given their ordinary meaning in the usage of the field of the

invention, unless the text of the patent makes clear that a word was used with a special

meaning."). Compare *MSM Investments Co. v. Carolwood Corp.*, 259 F.3d 1335, 1339-40, 59

USPQ2d 1856, 1859-60 (Fed. Cir. 2001) (Claims directed to a method of feeding an animal a

beneficial amount of methylsulfonylmethane (MSM) to enhance the animal's diet were held

anticipated by prior oral administration of MSM to human patients to relieve pain. Although the

ordinary meaning of "feeding" is limited to provision of food or nourishment, the broad

definition of "food" in the written description warranted finding that the claimed method

encompasses the use of MSM for both nutritional and pharmacological purposes.); and *Rapoport*

*v. Dement*, 254 F.3d 1053, 1059-60, 59 USPQ2d 1215, 1219-20 (Fed. Cir. 2001) (Both intrinsic

evidence and the plain meaning of the term "method for treatment of sleep apneas" supported

construction of the term as being limited to treatment of the underlying sleep apnea disorder

itself, and not encompassing treatment of anxiety and other secondary symptoms related to sleep

apnea.).


Applicants (March 15, 1999, pp. 8-9) explained that their amendment distinguished the prior art

because the linked actions are "computer subroutines" that cause a "CPU to perform a sequence

of operations" such as "opening another application, loading the identified structure into an

appropriate field, or closing the application." "The linked actions of the claimed invention are

patentably distinguished from the heading node (HN) structure of Vale. The linked actions

enable execution of an action (page 16, line 22 through page 17, line 1), which is a computer

subroutine causing a CPU to perform a sequence of operations (page 5, lines 4-5). Additionally,

in the claimed invention, "[a]n action may specify opening another application, loading the

identified structure into an appropriate filed, and closing the application. An action may further

include internal actions.., and external actions .... " (page 5, line 6-11). Thus the linked actions

Application/Control Number: 90/011,287                                           Page 13

Art Unit: 3992

can cure deficiencies of prior systems employing laborious and disruptive processes (page 1,

lines 17-21, page 2, line 11 to page 3, line 14)."

In view of the above, with regards to claims not explicitly reciting "analyzer server", Examiner

gives the broadest reasonable interpretation of the term "linking."   Given that a "linked action"

may specify opening another application, so that while the action may be linked to a selected

structure, the action does not necessarily cause a sequence of operations to be performed "on"

the particular structure to which it is linked.   Linked actions enable execution of an action which

is a computer subroutine causing a CPU to perform a sequence of operations.  Where Applicants

acted as their own lexicographer in explicitly defining an analyzer server, "linking" is narrowed

to an implementation using conventional pointers.

## Arguments related to PenSoft

Regarding **claim 15**, **Patent Owner** argues (Remarks, 08/29/2011, p. 10) that PenSoft's opening

of the item's profile does not anticipate the claimed "linked action" because it does not cause the

CPU to perform operations on the item to which it is linked - - as defined in the '647 patent's

specification.

**Examiner** asserts that PenSoft's program called Associate recognizes an item and creates links

to that item.  A double click on the recognized item causes the CPU to perform an "opening"

operation of the profile.  '647 at 2: 34-41 describes "an action" such as "opening another

application, closing the application. Opening the profile reads on "opening another application." An operation "on" the particular structure is not taken literally, given the various broadly suggested possible actions in the specification.

**Patent Owner** asserts (Patent Owner Remarks 08/29/2011, p. 11) that the connotation of PenSoft's use of the word "link" is different than in the '647 patent claims. Patent Owner states (p. 12) that PenSoft does not disclose "linking actions to structures as defined by the claimed term linked action." **Patent Owner** argues (p. 12) for the broadest reasonable interpretation standard requires that the claim interpretation must be 'consistent with the specification,.., and that claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art.'" *In re Suitco Surface,* 603 F.3d 1255, 1260 (Fed. Cir. 2010) *(citing In re Bond,* 910 F.2d 831,833 (Fed.Cir.1990) *(quoting In re Sneed,* 710 F.2d 1544, 1548 (Fed.Cir.1983))).

**Claim 15** requires that the structure and a linked action be separately enabled for selection. **Patent Owner** asserts that FIG. 7 and the rest of the '647 patent's disclosure is also consistent with this interpretation that the detected structure and the linked actions are separately selectable. *See, e.g.,* '647 patent at 2:49-53; 3:38-44; 4:1-31; 6:17-21; and 6:26-28. Given the '647 patent's consistent disclosure of enabling separate selection of detected structures and linked actions, and the proper application of the broadest reasonable interpretation standard consistent with the specification, the recitation of "enabling selection of the structure and a linked action" requires that the structure and the linked action be separately enabled for selection.

**Examiner** notes that the language of **claims 13 and 15** is broad. Claim language recites a computer to perform the steps of... "enabling a selection of the structure and a linked action..." Patent Owner has not pointed to a citation in the '647 Specification that provides an explicit definition of claimed term "linked action." The term "linked" is given the broadest reasonable interpretation. Claim language does not recite "enabling a user selection (or user interface selection) of the structure and a user selection (or user interface selection) of a linked action. An executing program that enables the selection of the structure and a linked action fairly reads on claim language. See Non Final Office Action, 06/27/2011, p. 9. The executing program "enables" the selection of the structure and a linked action." The plain language of the claim does not require that the structure and a linked action be separately enabled for selection. The term "user" is not in the claim language. Claim language does not recite "enabling user selection" of a detected structure and selection of a linked action.

**Patent Owner** argues (p. 14) that PenSoft's pop-up menus or the "InkWell" icon do not read on an "action" that is enabled for selection. **Patent Owner** asserts (pp. 14-15) that a pop-up menu does not disclose an action for performance on the detected structure, but rather displays information. **Patent Owner** asserts (p. 16) that the InkWell icon turns on a handwriting recognition feature, before a structure is detected, that translates handwriting into text, and cannot be a displayed action because it does not perform operation on a detected structure (i.e., it is not an action as that term is defined by the '647 patent).

Application/Control Number: 90/011,287                                     Page 16

Art Unit: 3992

**Examiner** notes that PenSoft teaches (p. 33-35) that in an executing program the "inkwell" may

be enabled for selection, enabling an action on ink handwritten text (the detected structure).  As

an example, selected ink handwritten text may be "linked" to an action that converts handwriting

to text type.  Claim language does not expressly recite enabling selection of a linked action.

Claim language does not recite a necessary order of steps to be taken.  Claim language does not

recite the limitation "displayed action."  The language of claims 13 and 15 is broad.


## Arguments related to Nokia

Regarding **claim 15**, **Patent Owner** argues (pp. 16-17) that Nokia does not disclose the linking

step ("linking at least one action to the detected structure").  **Patent Owner** cites to '647 at 3:

38-44; 4: 64- 5: 5; 5: 15-18; 5: 38-43 for disclosure of linking.  **Patent Owner** states (p. 19),

"While the '647 patent discusses the use of conventional pointers to be used in linking, the

broadest reasonable interpretation of linking is not so limited."


**Examiner** notes that Patent Owner argues (pp. 12 & 18 footnotes) for both an interpretation

"consistent with the specification" and the broadest reasonable interpretation of linking to not be

limited to requiring pointers.  It appears to **Examiner** that the only embodiment disclosed in the

'647 specification with respect to features comprised within the analyzer server program

subroutine, teaches "conventional pointers" used in the linking step.  **Examiner** opines that

Patent Owner's citation (PO Interview Summary 08/29/2011, p. 2) to '647, column 5, lines 6-37

does not teach a broader interpretation of linking, when claimed with the defined "analyzer

server." In contrast, Examiner notes the broad language of claims 13 and 15-29, which merely recite "linking" and do not narrow the term to actions of the defined "analyzer server," are broadly interpreted as any type of linked association. For that reason claims 13 and 15-29 are not confirmed. Nokia (9: 9-52) fairly teaches "linking" (i.e., by display action of a detected structure or by way of keyed inputs enabling a store or transfer action).

Regarding **claim 15, Patent Owner** asserts (p. 20) that Nokia does not disclose a computer subroutine that performs operations on a linked structure, a linking step that links actions to a detected structure, or linking as required by the '647 patent. Nokia does not disclose an association between the number [telephone number] and candidate actions such that a selection of the number leads to candidate actions. Nokia's disclosure of calling a number does not anticipate the linking of claim 15 because no *linking* occurs before execution of the call circuit. **Patent Owner** asserts (p. 20, footnote) that the '647 Abstract makes clear that linking occurs before execution of the selected linked action.

**Examiner** notes that limitations not present in the claims are not properly imported from the specification. Examiner opines that claim language is broad. **Examiner** points out that the language of **claim 15** (and similarly in **claims 13 and 22**) does not require steps in a specified order. Claim language may be amended to recite a required sequence of steps. Support for a sequence may be found at '647, 4: 64 – 5: 5: "Upon identification of a structure in the text, parser 310 links the actions associated with the grammar to the identified structure. More particularly,

Application/Control Number: 90/011,287                                    Page 18

Art Unit: 3992

parser 310 retrieves from grammar file 320 pointers attached to the grammar and attaches the

same pointers to the identified structure. These pointers direct the system to the associated

actions contained in associated actions file 330.  Thus, upon selection of the identified structure,

user interface 240 can locate the linked actions."   Nokia discloses a computer subroutine (i.e., a

circuit programmed to...).  Nokia discloses a linking step (Non Final Office Action 06/27/2011,

pp. 18-20; 7: 15-24; 7: 32-39; 9: 9-52) for example by way of a 3rd, 4th, or 6th circuit.  The

executing program, keyboard keys, and display "enable selection."  An example selectable

linked action is given by methods programmed in the 4th and 5th circuits, such as select for

operation the desired one of the said telephone number tracing methods (actions)

preprogrammed.

Regarding **claim 18** ("the grammar is associated with a particular action, and wherein the step of

linking at least one action to the detected structure includes the step of linking the particular

action to the detected structure"), **Patent Owner** asserts (pp. 20-21) the Nokia does not disclose

any actions associated with the grammar pattern.

**Examiner** notes that Patent Owner appears to recognize that Nokia's detecting of telephone

number reads on a grammar pattern.  However, Patent Owner appears to assert that Nokia does

not disclose any actions associated with the pattern.  Non Final Office Action 06/27/2011, p. 24

provides an exemplary action (7: 15-24; 8: 1-15) to correct a telephone number that is linked to

the detected structure.  An action is linked to a detected structure located in both the register (a

memory location) and the display.

Application/Control Number: 90/011,287                                    Page 19

Art Unit: 3992

Regarding **claim 19** ("the memory contains strings, and wherein the step of detecting a structure

further comprises the steps of retrieving a string from the memory and scanning the data to

identify the string"), **Patent Owner** asserts (p. 21) that Nokia does not disclose the step of

detecting a structure using strings.  Nokia never discloses that it uses strings to identify the

telephone number string.

**Examiner** points to Non Final Office Action 06/27/2011, p. 24.  A memory stored alphanumeric

message (a string) may be processed, scanned to detect whether the retrieved string may be

identified as a telephone number.  See Nokia at 2: 23-28; 6: 14-30.  Claim language does not

recite "detecting a structure using strings."

Regarding **claim 20** ("after the step of detecting a structure, the step of highlighting the detected

structure"), **Patent Owner** asserts (pp. 21-22) that Nokia's disclosure of an asterisk to identify a

phone number in a message is used as a delimiter to try to detect a structure, whereas the claim

requires that the highlighting is performed after detection. Further, an asterisk to delimit a

structure does not disclose highlighting as that term is used and understood in the '647 patent.

**Examiner** is persuaded by Patent Owner remarks and withdraws the rejection of claim 20 as

anticipated by Nokia. Notably claim 20 explicitly requires an order to the steps (i.e., after

detecting, the step of highlighting).


Regarding **claim 21** ("after the step of linking at least one action to the detected structure, the

step of displaying and enabling selection of an action for performance on the detected

structure"), **Patent Owner** asserts (p. 22) that Nokia does not disclose displaying actions that can

be selected.


**Examiner** cites to "enabling" discussion above. Nokia links an action to the detected structure

by way of keyed input. The detected structure is displayed. The executing program "enables"

the selection of an action for performance on the detected structure. See Nokia 7: 32-39 and 8:

1-15. Claim language does not recite "displaying actions that can be selected."


Regarding **claim 22** ("communicating with the application to determine the location of the

detected structure as presented by the application, to enable selection of the detected structure

and a linked action, and to determine if the detected structure and a linked action have been

selected"), **Patent Owner** asserts (p. 22) that Nokia does not disclose communication with the

text message application to determine if the detected structure and linked action have been

selected. Nokia does not disclose "linked actions." Therefore, it does not and cannot disclose

communication to determine if a detected structure or a linked action has been selected. The

Application/Control Number: 90/011,287                                                    Page 21

Art Unit: 3992

circuits identified in the Office action and described in Nokia do not communicate with the text

message application.


**Examiner** notes that "communicate with the text message application" is not in the claim

language.  Claim language recites:  "...communicating with the application to determine the

location of the detected structure as presented by the application, to enable selection of the

detected structure

and a linked action, and to determine if the detected structure and a linked action have been

selected..."  Nokia fairly discloses the limitation.


Nokia discloses (6: 11-12) "The RPK searches for a telephone number contained in a message."

(communicating with the application); (6: 15-26), "...whereupon the RPK will search, starting

from the beginning of the message, for the first point at which there is, for example, a numeral

and the numeral is followed by at least four of any of the characters included in the following set

[search to detect a matching character string / grammar] (determine the location of the detected

structure); (7: 3-7), "In the search for a telephone number from a text message it is possible to

apply...any of the methods described above or some other search algorithm which has been

programmed according to the invention into the RPK."

The executing program enables selection.  (7:32-39), "If the user accepts the number he performs

an acceptance keying, whereupon the RPK will eliminate from the display any characters

following the number and any non-numeric characters inside the number. Now there is visible in

Application/Control Number: 90/011,287                                                                Page 22

Art Unit: 3992

the display only a "pure" telephone number, and this number is also in the number register

(communicating with the application to determine the location, in the register, of the detected

structure as presented by the application), according to which further procedures are possible

(link an action).  Nokia's executing program determines if the detected structure and a linked

action have been selected.  The detected telephone number will be in the display and register

(temporary memory).   A user performs a "keying" (key input) in the selection process (to

determine if the detected structure and a linked action have been selected).

Functions described in the Nokia invention rely on (9: 1 – 10: 8) "corresponding circuits for the

present message of the temporary memory, the appropriate special keys, or a circuit by which the

functioning of the conventional keys is temporarily converted to one required by the invention,

and possibly switch means for changing the modes of function."

## Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis

for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless -

> (b) the invention was patented or described in a printed publication in this or a foreign
> country or in public use or on sale in this country, more than one year prior to the date
> of
> application for patent in the United States.

Application/Control Number: 90/011,287                                    Page 23

Art Unit: 3992

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or
> described as set forth in section 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that the subject matter as a whole
> would have been obvious at the time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.  Patentability shall not be negatived
> by the manner in which the invention was made.

The following rejections are maintained and incorporated by reference from Non Final Office

Action 06/27/2011:

**Claims 13, 15, 16, 20, 21, 22, and 24 are rejected under 35 U.S.C. 102(b) as being**

**anticipated by PenSoft.**

**Claim 19 is rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of**

**PenSoft and Salton.**

**Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of**

**PenSoft and Nokia.**

Application/Control Number: 90/011,287                                                Page 24

Art Unit: 3992

**Claims 13, 15, 17-23 are rejected under 35 U.S.C. § 102(b) as anticipated by Nokia.**

(Examiner is persuaded that limitations of dependent claim 20 are not disclosed by Nokia.

However, the rejection of claim 20 is maintained due to its dependence on rejected independent

claim 15.)

**Claim 16 is rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of**

**Nokia and '036.**

**Newly added claims 25-34**

**Claims 25-31 are rejected under 35 U.S.C. 102(b) as anticipated by PenSoft.**

**Claims 25-31 are rejected under 35 U.S.C. § 102(b) as anticipated by Nokia.**

New independent **claims 32 and 33** recite the limitation "analyzer server" and are found

patentable for the reasons that claim 1 was confirmed.  **Claim 34** is found patentable for being

dependent on claim 33.

**Claim 32** language recites "wherein detecting includes finding and recognizing the structure."  It

is noted ('647, 3: 61-64) that the defined "analyzer server" "uses patterns to parse document 210

for recognizable structures."  Patent Owner points to support (2: 31-31; 4: 58-5:5, "upon

identification of a structure in the text"; 5: 19-31, "analyzer server identifies"; 5: 51-61,

Application/Control Number: 90/011,287                                          Page 25

Art Unit: 3992

"recognizing patterns in documents" "Upon detection of a structure"; & 6: 34-42, "detects

structures) in the Specification.  The broad terms ("finding" and "recognizing") read on the

general teachings of identifying, recognizing, and detecting.

**Claim 33** language additionally recites an "action processor."  The action processor is explicitly

defined at '647, 4: 52-57 where inventor acted as his own lexicographer:  "Upon selection of a

candidate action, user interface 240 transmits the selected structure and the selected action to

action processor 250.  Action processor 250 retrieves the sequence of operations that constitute

the selected action, and performs the sequence using the selected structure as the object of the

selected action."  Patent Owner cited to exemplary functions of an action processor at '647, 5:

38-43:  "Upon selection of an action, the action processor performs the action on the detected

structure."  (Abstract)  The action processor is a program subroutine.  (2: 25-26)  "When a

candidate action is selected, the action processor performs the selected action on the selected

structure."  (2: 51-53)  **Claim 33** explicitly recites narrower limitations ("a user interface

enabling the selection of a detected structure; and the user interface enabling the selection of a

linked action") where it is made clear that both the detected structure and the linked action are

enabled for selection by the user interface.

**Claim 34** explicitly requires a user interface to enable the selection of a linked action, in

response to a selection of a detected structure.

Application/Control Number: 90/011,287                                      Page 26

Art Unit: 3992

**New claims 25-31** recite limitations similar to claim 15 and are rejected for the same reasons.

Very slight changes in the limitations provide a narrowing of the scope.  The modified language

is disclosed by the prior art as follows:

**Claim 25** narrows claim language by reciting "automatically linking, by the computer...  PenSoft

discloses (pp. 11-12) an "Associate" as part of an executing Perspective Notebook software

program:  "The Associate is a part of Perspective that automatically establishes links by

recognizing the names of people, companies, etc. you write...and creates the link."  "The

Associate can automatically file the note by recognizing names you enter and creating links..."

PenSoft discloses (p. 1) a computer running the PenPoint operating system and the Perspective

software.  A computer executing the Associate in the Perspective program performs

automatically linking actions.  See also PenSoft at pp. 37, 39.   Further, Examiner considers

actions taken by an executing program to read on "automatically."  Nokia discloses (9: 9-52)

"automatically linking, by the computer" by way of user key inputs to various programmed

circuits. See Non Final 06/27/2011, pp. 18-19.

**Claim 26** narrows claim language with the following limitations:  "enabling selection of the

detected structure", "enabling selection of an action linked to the detected structure" and

"executing a selected action linked to a selected structure."  Claim language makes it explicit that

a selection of an action is enabled.

Application/Control Number: 90/011,287                                              Page 27

Art Unit: 3992

PenSoft discloses these limitations.  Perspective includes a software tool called "the Associate"

that, when installed on the PenPoint hardware (including memory), detects structures in data

input by a user and links actions (p. 175, as an example makes related files available to read, or

write to a file) to the detected structure. Id. at 11-12, 19, 36-40.  PenSoft (p. 12), "The Associate

can automatically file the note by recognizing (detecting) names you enter and creating links..."

See Perspective user interface (p. 177).  Linked items in Perspective are bolded.  Id. at 11.

Perspective is software designed to run (execute) on the PenPoint operating system and related

hardware, which includes a processing unit to control the execution of the program routines. See

PenSoft at 1, 6.  An executing program, by way of a user interface and user input "enables"

selections.

Additional examples disclosed : An item (detected structure) may be linked (p. 251) to a Profile

page (pp. 168; 254), where the Profile page enables selectable actions such as create, edit, read,

or delete (p. 175).  See selection (user interface) of an action linked to the detected structure at p.

177.  InkWell (pp. 33; 35; 229; 258) is used to translate (action) (ink handwritten text is a

detected structure) at a later time [linked after ink handwritten text is entered].  Detected

structures in ink (from Options menu) are linked to InkWell.  An InkWell translation (action) can

be selected from the Edit menu.

Nokia discloses the limitations and expressly discloses the selection of an action by way of key

input.  See discussion of claim 25 above.

**Claim 27** narrows the limitations with the recitation of "detecting, by the computer, a structure in the data, wherein detecting includes finding and recognizing the structure." Examiner notes PenSoft teaches "detecting, by the computer." See discussion related to claim 26 above. Regarding the terms "finding" and "recognizing", see discussion related to claim 32 above. The broad terms ("finding" and "recognizing") read on PenSoft's general teachings (pp. 11-12) of identifying, recognizing, and detecting.

Nokia discloses the concept of "finding and recognizing" at 3: 47-48. See Non Final 06/27/2011, pp. 17-18.

**Claim 28** adds the limitation: "enabling selection of the detected structure wherein upon selection of the detected structure at least one action linked to the structure is enabled for selection." The PenSoft and Nokia citations provided in the rejection of claim 15 maps to the limitation.

**Claim 29** (dependent upon claim 28, "wherein the action linked to the structure is enabled for selection by its presentation in a graphical user interface") further explicitly expresses that the action is presented on a graphical user interface and is enabled for selection. PenSoft discloses A Profile page enables selectable actions such as create, edit, read, or delete (p. 175). See selection (user interface) of an action linked to the detected structure at p. 177.

Application/Control Number: 90/011,287                                    Page 29

Art Unit: 3992

Nokia (5: 46-51) fails to disclose a graphical user interface that presents actions enabled for

selection.  Claim 29 as anticipated by Nokia is  rejected due to dependence on rejected

independent claim 28.)

**Claim 30** is narrowed by reciting "enabling user selection of the detected structure..."  PenSoft

enables "user" selection by way of graphical user interface.  See examples of user interfaces in

Chapter 9, p. 175.   Nokia enables "user" selection by way of user generated key inputs.

**Claim 31** recites "detecting structures."  The specification supports enabling selection of a single

detected structure, of the plurality of structures, and [its associated] linked actions, one at a time.

Repetitive PenSoft or Nokia program execution would enable detecting structures and linking at

least one action to the detected structures; enabling selection of the detected structures and linked

actions...

**<u>Reasons for Confirmation</u>**

The confirmation / patentability of claims 1-12, 14 and 32-34 is based solely on the prior art of

the record having raised the substantial new question of patentability, as, at least, the noted prior

art fails to teach or suggest the features of the analyzer server.

**Examiner** confirms **claims 1-12, and 14** and finds patentable **claims 32-34**, in view of the explicit teachings in the '647 specification.   The inventor acted as his own lexicographer in defining term "analyzer server." The only variations of the defined analyzer server embody the use of a grammar file, a fast string search or other function in a pattern analysis unit. See citations at '647, 3: 54-67 and 4: 58 – 5: 5.  PenSoft and Nokia, alone or in combination with other prior art of record in this reexamination, fail to teach the following explicitly defined elements of an analyzer server (3: 65-67): "Upon detection of a structure, analyzer server 220 links actions associated with the responsible pattern to the detected structure, using conventional pointers."   The enabling details are disclosed at '647, 4: 58-5:5: "...parser 310 links the actions associated with the grammar to the identified structure.  More particularly, parser 310 retrieves from grammar file 320 pointers attached to the grammar and attaches the same pointers to the identified structure.  These pointers direct the system to the associated actions contained in associated action file 330.  Thus, upon selection of the identified structure, user interface 240 can locate the linked actions." Based on the above citations, one of ordinary skill in the art (a person skilled in programming a user interface, data structures, pointers, events and event handler code) would be enabled to make or use the invention.


Regarding independent **claim 1** (and similarly recited in independent **claims 32 &33)**, the prior art presented in this reexamination fails to teach "an analyzer server for detecting structures in the data and for linking actions to the detected structures." **Claims 2-12 & 34** are confirmed / found patentable for being dependent on a confirmed / patentable independent claim.  Regarding **claim 14**, the prior art presented in this reexamination fails to teach an analyzer server "means

for detecting a structure in the data; means for linking at least one action to the detected

structure." See 112 6[th] paragraph analysis of 'means for' language (Non Final 12/10/2010, p. 5):

"means for detecting a structure in the data" at 3:39-41 - "The program 165...stored in RAM 170

and causes CPU 120 to identify structures..." 3:61-64 - "Analyzer server 220 comprises...pattern

analysis units, such as a parser and grammars or a fast string search function and dictionaries..."

"means for linking at least one action to the detected structure" at 3: 39-41- "The program 165...

stored in RAM 170 and causes CPU 120 to associate actions with the structures identified..." See

3: 65-67- "analyzer server 220 links actions...to detected structure using pointers."


## Summary

Claims 1-12 and 14 are confirmed.  New claims 32-34 are found patentable.  Original Claims 13

and 15-24 and new claims 25-31 are finally rejected.  Patent Owner's arguments have been fully

considered.  Arguments rebutting the rejection of claim 20, as anticipated by Nokia, are found

persuasive.  All remaining arguments have been fully considered, but found unpersuasive, as

noted by Examiner above.  The rejection of claim 20 under U.S.C. §102(b) based on anticipation

by Nokia has been withdrawn.  Claim 20 remains rejected in view of its dependence on rejected

independent claim 15.


Any comments considered necessary by PATENT OWNER regarding the above statement must

be submitted promptly to avoid processing delays. Such submission by the patent owner should

be labeled: "Comments on Statement of Reasons for Patentability and/or Confirmation" and will

be placed in the reexamination file.

Application/Control Number: 90/011,287

Page 32

Art Unit: 3992

## Conclusion

**THIS ACTION IS MADE FINAL.** A shortened statutory period for response to this action is set to expire TWO (2) months from the mailing date of this action.

Extensions of time under 37 CFR 1.136(a) do not apply in reexamination proceedings. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that reexamination proceedings "will be conducted with special dispatch within the Office." Extensions of time in reexamination proceedings are provided for in 37 CFR 1.550(c). A request for extension of time must be filed on or before the day on which a response to this action is due, and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g). The mere filing of a request will not effect any extension of time. An extension of time will be granted only for sufficient cause, and for a reasonable time specified. The filing of a timely first response to this final rejection will be construed as including a request to extend the shortened statutory period for an additional month, which will be granted even if previous extensions have been granted. In no event however, will the statutory period for response expire later than SIX MONTHS from the mailing date of the final action. See MPEP § 2265.

All correspondence relating to this ex parte reexamination proceeding should be directed:

By EFS:
Registered users may submit via the electronic filing system EFS-Web, at
http://efs.uspto.gov/efile/myportal/efs-registered

Application/Control Number: 90/011,287                                    Page 33

Art Unit: 3992


By Mail to:
Mail Stop Ex Parte Reexam
Central Reexamination Unit
Commissioner for Patents
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

By FAX to:
(571) 273-9900
Central Reexamination Unit

By hand:
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, VA 22314


Any inquiry concerning this communication or earlier communications from the Reexamination

Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the

Central Reexamination Unit at telephone number (571) 272-7705.


/Mary Steelman/                                   Conferees: /ZC/

Primary Patent Examiner

Patent Reexamination Specialist / Art Unit 3992

Central Reexamination Unit

Attorney Docket No.: 20142.0002.RXUS00 (P1716USREX1)
Control No.: 90/011,287

PATENT- EX PARTE REEXAMINATION

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | MILLER, James et al. | Group Art Unit: | 3992 |
| | | | |
| Patent No. | 5,946,647 | | |
| Control No.: | 90/011,287 | Confirmation No.: | 9354 |
| | | | |
| Reexam Filed: | 10/15/2010 | Examiner: | STEELMAN, Mary |

For: SYSTEM AND METHOD FOR PERFORMING AN ACTION ON A STRUCTURE IN COMPUTER-GENERATED DATA

Mail Stop Ex Parte Reexam
Central Reexamination Unit
Commissioner for Patents
Unites States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

RESPONSE TO FINAL OFFICE ACTION

This paper is filed in response to the Final Office Action mailed December 16, 2011 (hereinafter "Office Action") and setting forth a shortened-statutory period of two months in which to respond. Accordingly, this paper is timely filed pursuant to 37 C.F.R. § 1.7 on or before February 16, 2012.