# Exhibit 8
# (Submitted Under Seal)

Highly Confidential – Attorneys' Eyes Only
Subject to Protective Order

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | CASE No. 12-cv-00630-LHK |

**EXPERT REPORT OF JUDITH A. CHEVALIER, PH.D.**

**SEPTEMBER 13, 2013**

## VIII. Critical Flaws Further Inflate the Vellturo Report Lost Profit Figures

242. Setting aside the concern that lost profits are not appropriate in this case, there are important errors in Dr. Vellturo's lost profit calculation methodology. Dr. Vellturo's lost profits damages calculation has four major components, each of which is significantly flawed. His blackout period is baseless and overstates harm; his reliance on the Hauser flawed conjoint analysis significantly inflates damages; his "Mor-Flo" analysis (*i.e.* analysis of Samsung incremental sales that were diverted from Apple) does not adequately consider the drivers of demand and other options available to Samsung; he overstates Apple's applicable incremental profit rate; and he ignores Apple's actual supply limitations. I discuss each of these below.

### A. Blackout Period

243. First, Dr. Vellturo assesses a time period during which Samsung would have been out of the market in order to engineer around the infringement accusations (except for one patent). He includes various calculations in his report with 1-month and 4-month blackout periods as examples,[564] stating that should "…a different duration of these blackout periods [apply], my analyses can be adjusted accordingly."[565] Dr. Vellturo considers all accused units produced during this "blackout" period starting in February 2012 to be available for the lost profits calculation.[566]

244. This "blackout" period is, however, simply "hold-up" damages related to marketplace exclusion, not Apple lost profits from displaced units from use of the patented-invention. It is unreasonable to believe that Samsung would effectively exit the market for one to four months. Samsung technical experts confirm that non-infringing alternatives to the claimed features could be implemented in a matter of ▓▓▓▓▓▓▓ and that commercial

---

[564] Vellturo Report, at 113-4.
[565] Vellturo Report, at 114.
[566] Vellturo Report, at 113-4.

introduction of the alternatives would take up to an additional ▬.[567] Samsung would thus be able to avoid being off the market for a significant amount of time.

245.  Furthermore, the Vellturo analysis assumes that during this blackout period no Samsung customers would wait for a redesigned Samsung product to come out. Many phone buyers delay purchase until newer versions of phones are released.[568] Apple deponents have testified that people will wait to buy until new products launch.[569] Buyers of the accused Samsung products clearly preferred that phone to the alternatives in the marketplace. Thus, many buyers likely would still have waited for the redesigned Samsung products to launch, even if they had to be held off the market for a number of weeks. Even so, carriers typically hold

---

[567] Samsung's technical experts indicate that time to design and implement alternatives to the accused functionality range from a matter o ▬. Design-around alternatives to the '647 patent are estimated to take between ▬ alternatives to the '959 patent between ▬ alternatives to the '414 are estimated to take between ▬ alternatives for the '760 patent are estimated to take between ▬ ▬. These estimates are generally consistent with the opinions of Samsung's technical experts, who indicate that times to design and implement alternatives to the accused functionality range from a matter of ▬ o up t ▬ ▬. See Rebuttal Expert Report of Dr. Kevin Jeffay Concerning Noninfringement of U.S. Patent No. 5,946,647 at ¶¶ 502, 515, 519, 523, 528 (estimating that various alternatives could be implemented in a matter of ▬ ▬ depending upon the alternative); Rebuttal Expert Report of Martin Rinard, Ph.D. Regarding Noninfringement of Claims 24 and 25 of U.S. Patent No. 6,847,959 at ¶¶ 312, 313, 318, 319, 330, 331, 341 ▬ ▬ Expert report of Jeffrey Chase, Ph.D. Regarding Noninfringement of the Asserted Claims of U.S. Patent No. 7,761,414 at ¶¶ 186, 196, 199, 204 ▬ Rebuttal Expert Report o ▬ Ph.D., Regarding Noninfringement of the Asserted Claim 8 of U.S. Patent No. 8,046,721 at ¶ 36 ▬ Rebuttal Expert Report of Daniel Wigdor Concerning Non-Infringement of U.S. Patent No. 8,074,172 at ¶¶ 145-146 (no more tha ▬ An additional period of approximatel ▬ would be required to allow for compiling code, testing, and receiving carrier approval for any proposed alternative, resulting in a total range of ▬ See Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories at 197.

[568] Apple sales data show this trend. For example, the iPhone 4S was released in October 2011 – in Q3 2011, Apple sold 4.8 million iPhones; in Q4 2011, Apple sold 15.1 million iPhones (a 213% increase). The iPhone 5 was released in September 2012, in Q3 2012, Apple sold 10.4 million iPhones ▬ ▬ See Exhibit 65C. "The iOS decline in the second quarter aligns with the cyclicality of iPhone," says Ramon Llamas, Research Manager with IDC's Mobile Phone team. "Without a new product launch since the debut of the iPhone 5 nearly a year ago, Apple's market share was vulnerable to product launches from the competition. But with a new iPhone and revamped iOS coming out later this year, Apple is well-positioned to re-capture market share." http://www.idc.com/getdoc.jsp?containerId=prUS24257413 (viewed 9/12/2013).

[569] For example, Apple's Greg Joswiak testified that there is an "anticipation to build up the demand" before the release of a new iPhone, and that Apple generally sees lower sales for the quarter before they launch a new phone than the quarter that they launch a new phone. Deposition of Greg Joswiak, July 9, 2013, at 99-102. He also says that, for many consumers, wanting to get the new iPhone is a factor in their decision between smartphones. Deposition of Greg Joswiak, July 9, 2013, at 50-52.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

compensate Apple is approximately $5.9 million if all patents asserted by Apple in this matter are found to be valid, enforceable, and infringed. The market, income, and cost approaches further demonstrate the unreasonableness of the conclusions presented in the Vellturo Report.

_____

JUDITH A. CHEVALIER