1 | JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
2 | H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
3 | GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
4 | Palo Alto, California  94304-1211
Telephone:  (650) 849-5300
5 | Facsimile:  (650) 849-5333

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

6 | HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
7 | JACK W. LONDEN (CA SBN 85776)
jlonden@mofo.com
8 | RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
9 | RUTH N. BORENSTEIN (CA SBN 133797)
rborenstein@mofo.com
10 | ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
11 | MORRISON & FOERSTER LLP
425 Market Street
12 | San Francisco, California 94105-2482
Telephone: (415) 268-7000
13 | Facsimile: (415) 268-7522

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

14 | *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC., a California corporation,

Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity; SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation; SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

Defendants.

Case No. 12-cv-00630-LHK (PSG)

**DECLARATION OF JENNIFER RHO IN
SUPPORT OF SAMSUNG'S
ADMINISTRATIVE MOTION TO FILE
UNDER SEAL DOCUMENTS FILED IN
CONNECTION WITH SAMSUNG'S
NOTICE OF MOTION AND MOTION
TO STRIKE PORTIONS OF DR.
VELLTURO'S SUPPLEMENTAL
EXPERT REPORT**

Gibson, Dunn &
Crutcher LLP

Rho Declaration iso Samsung's Motion to Seal
Motion to Strike Dr. Vellturo's Supplemental Expert Report
Case No. 12-cv-00630-LHK (PSG)

I, Jennifer Rho, declare and state as follows:

1.      I am a member of the California State Bar, an associate in the law firm of Gibson, Dunn & Crutcher LLP, and counsel for Apple, Inc. ("Apple").  Pursuant to Local Rules 7-11 and 79-5, I submit this Declaration in support of Samsung's Administrative Motion to File Under Seal Documents Filed in Connection with Samsung's Notice of Motion and Motion to Strike Portions of Dr. Vellturo's Supplemental Expert Report ("Motion to Seal") to confirm that there is good cause to seal Samsung's Motion to Strike Portions of Dr. Vellturo's Supplemental Report ("Motion to Strike") and certain of its supporting exhibits, as they are confidential and sealable.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would competently testify to them under oath.

2.      Samsung filed its Motion to Seal on March 7, 2014.  The motion sought to seal portions of Samsung's Motion to Strike and certain documents filed in support thereof.  D.I. 1420.  Samsung filed the declaration of Michael L. Fazio in support of its motion to seal those documents ("Fazio Sealing Declaration").  D.I. 1420-1.

3.   Certain portions of Samsung's Motion to Strike and documents filed in support thereof contain Apple's highly confidential financial information and information that could be used to derive such information, as well as proprietary market data purchased by Apple from a third party.  Apple thus seeks to support the sealing of the information highlighted in yellow that is enclosed in orange boxes in the following documents:

- Samsung's Motion to Strike;
- The Declaration of Judith Chevalier ("Chevalier Declaration")

Apple seeks to support sealing the information highlighted in yellow in the following:

- Exhibits 1 to 4 to the Chevalier Declaration;
- Exhibits 1 and 2 to the Declaration of Michael L. Fazio in support of Samsung's Motion to Strike ("Fazio Motion to Strike Declaration").

Finally, Apple also supports sealing of the information in Exhibit 4 to the Chevalier Declaration that is enclosed in blue boxes, as well as the information highlighted in yellow, for the reasons provided below.

Gibson, Dunn & Crutcher LLP

RHO DECLARATION ISO SAMSUNG'S MOTION TO SEAL
MOTION TO STRIKE DR. VELLTURO'S SUPPLEMENTAL EXPERT REPORT
CASE NO. 12-CV-00630-LHK (PSG)

1

4.     Each of the types of confidential information identified above is highly confidential, and the harm that would be caused to Apple and its third party provider of market research data from the public disclosure of such information outweighs the public's interest in such information in this case.  *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 11-CV-01846 (N.D. Cal.) (Dkt. No. 2397) (Sep. 11, 2013); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2013 WL 4487610 at *9-10 (Fed. Cir. 2013).

**Apple's Confidential Financial Information**

5.     Each of the following documents contains or can be used to directly derive Apple's confidential financial information, and particularly Apple's non-public, highly confidential profit margin and sales data, as well as the patterns created in such data.  As more extensively detailed in prior declarations submitted to the Court from Apple's employees, and particularly Apple Finance Manager Mark Buckley, Apple considers this financial information to be highly confidential.  *See, e.g.,* D.I. 442-1, 442-2, Declaration of Mark Buckley (Apr. 8, 2013).  Mr. Buckley has explained that Apple goes to "extensive lengths to protect the confidentiality of its financial information," calling it "among the most painstakingly protected information at the company, on par with source code."  *Id.* at 1-3; *see also* D.I. 685-1, Declaration of Mark Buckley at 2.  Indeed, Apple's profit and loss data for particular products is only shared with a very limited group of people, including, for example, the company's CFO, CEO, Board, and Executive Team.  It is not shared externally.  D.I. 442 at 3.

6.     More specifically, Exhibits 2 and 3 to the Chevalier Declaration identify, on a month by month basis, Apple's incremental profit margin/unit, as well as the units information used to create such calculation.  I understand that this number was calculated from, and directly reflects, Apple's highly confidential profit margin for its iPhone and iPad products – information that has never been made public.  Should the unit data contained in the same document be made public, simple arithmetic would reveal Apple's profit margin data.

7.     In addition, Samsung's Motion to Strike, the Chevalier Declaration, Exhibits 1 to 3 to the Chevalier Declaration, and Exhibit 2 to the Fazio Motion to Strike Declaration each contain information that could be used to derive Apple's highly confidential profit information.

RHO DECLARATION ISO SAMSUNG'S MOTION TO SEAL
MOTION TO STRIKE DR. VELLTURO'S SUPPLEMENTAL EXPERT REPORT
CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

2

In particular, and as further explained in Mr. Buckley's February 25, 2014 Declaration filed in Case No. 11-cv-1846, each of these documents contains financial information and sales data that could be used in conjunction with one another to calculate Apple's profits. *See* D.I. 2986. I understand that the information in question has not been publicly disclosed. Thus, should this information become public, Apple's profit-per-phone and profit-per-tablet could be determined. I understand that the Court granted Apple's motion to seal such information during the damages retrial in the 1846 case. *See* 1846 Trial Tr., vol. 3, 646:1-14 (sealing Apple exhibit 25G1). I further understand that, while Apple disclosed this information to the jury during the damages retrial, it did so in a way designed to avoid disclosure to the general public in the courtroom or mention in the transcript. *See id.* 675:3-11.

8.    Additionally, Exhibit 1 to the Fazio Motion to Strike Declaration details the patterns and trends of sales of recent iPhone models, on a model by model basis. This document, which is Dr. Vellturo's Supplemental Expert Report regarding Damages, explains the sales patterns for specific, individual iPhone models, including, for example, which products had no unit sales in a particular time period, or other trends that can be determined only by having Apple's complete, highly confidential sales data for all of its products. As Mr. Buckley has explained, while Apple does release some limited financial information regarding worldwide sales of its entire product lines during earning calls and in SEC filings, Apple does not, in those situations, release the more detailed financial information at issue here, regarding individual product models and for a more targeted geographical region. D.I. 442-1 at 1-2.

9.    As Mr. Buckley further explained, the public disclosure of Apple's profit margin and sales information – which is highly confidential and which Apple does not make available publicly – would cause Apple severe harm. Declaration of Mark Buckley, D.I. 685-1 at 1-2, 7-16 (July 15, 2013); *see also* Declaration of Mark Buckley, D.I. 442-1, 442-2 (Apr. 8, 2013); D.I. 1416, Case No. 11-cv-1846 (July 27, 2012). Such information thus would provide far more insight into Apple's operating expenses and finances than Apple has previously disclosed to the public – or, as Mr. Buckley confirmed, is disclosed in practice by other companies in Apple's industry, and particularly Apple's competitors. *See* D.I. 442 at 1-2; D.I. 685. As just

Gibson, Dunn & Crutcher LLP

RHO DECLARATION ISO SAMSUNG'S MOTION TO SEAL
MOTION TO STRIKE DR. VELLTURO'S SUPPLEMENTAL EXPERT REPORT
CASE NO. 12-CV-00630-LHK (PSG)                                                3

1  one example, the public disclosure of this information, which is not typically made available by

2  Apple's competitors, would thereby give those competitors of Apple insight into "how and why

3  Apple has made strategic decisions."  D.I. 442 at 3.  Mr. Buckley explained that, for example,

4  the disclosure of this type of Apple's confidential financial information could "permit Apple's

5  competitors to tailor their product offerings, advertising, costs, budgets, and business strategies

6  to more effectively compete with Apple."  D.I. 442-1 at 3; D.I. 685 at 2-6.  For example, if

7  competitors gained access to the profit margin and sales data reflected in the documents at issue

8  here, they could learn when and how Apple's products are most profitable, as well as how

9  Apple allocates its development and product strategies accordingly.

10       10.     Moreover, access to Apple's profit margin and sales information would give

11  Apple's competitors a substantial and unfair advantage over Apple.  Knowledge of such

12  information – none of which is disclosed publicly by Apple or by Apple's competitors – would

13  provide an economic boon to Apple's competitors if disclosed, giving them a substantial and

14  unfair advantage over Apple.  *See, e.g.,* D.I. 442-1 at 5.  As Mr. Buckley explained, knowledge

15  of such information could allow Apple's competitors to determine what price levels would

16  make Apple's products unprofitable to Apple, and target their product offerings accordingly.

17  Even if Apple's competitors' products are not identical to the Apple products in question, the

18  price of such competitor products affect the demand for Apple's products.  *Id.* at 4.  Indeed, as

19  Mr. Buckley explained, public disclosure of this information would give Apple's competitors

20  an asymmetric advantage: Apple's competitors do not publicly disclose such data, and Apple

21  has no access to similar data from the competitors that would use this information against

22  Apple.  *Id.* at 5; D.I. 685 at 2-16.

23       11.     I further understand that both this Court and the Federal Circuit deem non-public

24  financial information to be sealable.  *See, e.g., Apple, Inc. v. Samsung Electronics Co., Ltd.*,

25  Case No. 11-CV-01846 (N.D. Cal.) (Dkt. No. 2397) (Sep. 11, 2013); *Apple, Inc. v. Samsung*

26  *Electronics Co., Ltd.*, 2013 WL 4487610 at *9-10 (Fed. Cir. 2013).  Moreover, the Federal

27  Circuit held that Apple's and Samsung's "strong interest in keeping their detailed financial

28  information sealed and the public's relatively minimal interest in this particular information"

Gibson, Dunn &
Crutcher LLP

RHO DECLARATION ISO SAMSUNG'S MOTION TO SEAL
MOTION TO STRIKE DR. VELLTURO'S SUPPLEMENTAL EXPERT REPORT
CASE NO. 12-CV-00630-LHK (PSG)

4

warranted filing such information under seal. *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2013 WL 4487610 at *10.  It is also the case here that there is minimal interest of the public in this information; the financial information at issue is not necessary to understanding the parties' arguments.

**Confidential Third Party Market Research Information**

12.     In addition to containing Apple's confidential financial information, Exhibit 4 to the Chevalier Declaration also contains information from data reports purchased from third party market research companies, and particularly the International Data Corporation ("IDC"), pursuant to contractual agreements restricting the public disclosure of such information.  Such information is enclosed in a blue box.

13.     Apple seeks to seal Exhibit 4 to the Chevalier Declaration on the grounds that it reflects a comprehensive set of recent market data and analysis purchased from such a third-party research company, which has considerable commercial value for it.  As this Court explained in the August 9, 2012 Order, these companies' "business model[s] revolve[] around gathering and selling these data and reports, so public disclosure of these exhibits could result in substantial commercial harm." *Apple Inc. v. Samsung Electronics Co., Ltd., et al.*, Case No. 11-cv-01846 (Aug. 9, 2012 N.D. Cal.) (Dkt. No. 1649 at 10).  "The public's interest in access to these underlying documents is low, while the potential for harm to [the third parties] is quite high [and] if these reports were made publically available, [their] customers would have no need to purchase them—disclosure would not only harm [their] competitive standing, it would completely destroy it." *Id.*

14.     I am aware that Apple imposes strict confidentiality restrictions upon this data within Apple.  Receipt of complete research data reports and competitive analyses, or substantial portions thereof, is restricted to select groups of individuals who require such information in order to perform their normal job responsibilities, or who otherwise require such information in light of their decision-making authority.  Thus, and as one example of how stringently Apple protects the confidentiality of this information, Apple requires multiple levels of approval before any of these documents may be produced in a litigation, even when being

Gibson, Dunn &
Crutcher LLP

RHO DECLARATION ISO SAMSUNG'S MOTION TO SEAL
MOTION TO STRIKE DR. VELLTURO'S SUPPLEMENTAL EXPERT REPORT
CASE NO. 12-CV-00630-LHK (PSG)

5

1  produced under a Protective Order with a "Highly Confidential – Outside Attorneys' Eyes

2  Only" confidentiality designation.

3          15.     In addition, I am aware that the third-party companies that provide this

4  information further impose confidentiality restrictions upon their data.  As counsel for Apple, I

5  have interacted with such third-party research companies – and particularly IDC.  I am thus

6  familiar with the general business of those third-party companies, the reasons for and the terms

7  under which Apple typically purchases data from these companies, and the confidentiality

8  requirements imposed by these third-party companies in connection with any production that

9  Apple must make of the third parties' data in litigation.

10         16.     I further understand that, for these third-party companies, and particularly a

11 company like IDC, their data and analysis constitutes the backbone of their businesses.  IDC,

12 for example, focuses on data and analysis in the smartphone market.  They spend significant

13 resources to compile, analyze, and make available their data, and in turn require considerable

14 payment in order to recoup those investments.  *See, e.g.,* D.I. 442-5, Declaration of Crawford

15 Del Prete (Apr. 8, 2013).  In turn, it costs Apple a substantial amount to obtain this data; each

16 individual report purchased from these companies typically costs many thousands of dollars.

17         17.     It is thus my understanding that these third-party companies would effectively

18 lose any meaningful opportunity to sell their data and analysis if it were to be made publicly

19 available, as IDC has itself confirmed in declarations submitted in this litigation and the prior

20 litigation between Apple and Samsung.  *See, e.g.,* D.I. 442-5, Declaration of Crawford Del

21 Prete (Apr. 8, 2013).  As Mr. Del Prete, IDC's Executive Vice President, Worldwide Research

22 Products and Chief Research Officer, explained, public disclosure of IDC's data and analysis

23 would materially and adversely impact IDC's commercial interests.  For example, public

24 disclosure of such data and analysis would cause IDC's customers to no longer need to

25 purchase IDC's data, thus supplanting the market for these reports.  *Id.* at ¶ 15.  As I understand

26 it, many of these vendors provide their research to customers like Apple via a subscription

27 service.  However, that subscription service would be critically impaired if the research were

28 instead available for public download from the court's website.  Similarly, public disclosure of

Gibson, Dunn &
Crutcher LLP

RHO DECLARATION ISO SAMSUNG'S MOTION TO SEAL
MOTION TO STRIKE DR. VELLTURO'S SUPPLEMENTAL EXPERT REPORT
CASE NO. 12-CV-00630-LHK (PSG)

6

such data could give this information to IDC's direct competitors, enabling them to benefit from IDC's work and investment.  *Id.*  Essentially, public disclosure of all or a substantial part of one of these reports would effectively destroy Apple's secondary vendors' businesses.

18.     As confirmed by Apple employee Gregory Joswiak in a prior declaration submitted in this litigation, to protect against such consequences, I am aware that each of these third-party market research companies puts into place extensive protective measures specifically designed to avoid public disclosure of their reports and to preserve the reports' confidentiality.  *See* D.I. 442-3, Declaration of Gregory Joswiak at ¶ 16 (Apr. 8, 2013).  For example, in order to produce and otherwise use these reports during the present litigation, Apple was specifically required to provide notice of such disclosure and a copy of the Protective Order entered in this action, as well as agree to ensure that the third-party research would be produced only under the highest confidentiality designation available, *i.e.*, "Highly Confidential – Outside Attorneys' Eyes Only."  In particular, IDC specifically required Apple to enter into a litigation-specific Content Use Agreement containing strict protections and stipulations concerning IDC's proprietary and otherwise confidential information.  That Content Use Agreement specifically conditions consent to use IDC content upon that content being afforded the protections of the Protective Order.  *Id.;* Del Prete Declaration at ¶¶ 8-14.

19.     I, as counsel for Apple, have reached out to IDC to discuss what IDC data may be disclosed during this litigation.  IDC has reiterated that, while we may publicly disclose only passing references to IDC's Apple- and Samsung-focused data in the parties' briefs and supporting declarations, any larger or broader portions of its data, and particularly any recent data focusing on the market as a whole, was at the core of its most confidential information.  During my discussions with IDC, IDC has reiterated that Apple is contractually obligated to otherwise maintain the confidentiality of all large portions of its data.

*        *        *

20.     The relief requested above is necessary and narrowly tailored to protect the confidentiality of Apple's financial information and of Apple's third party market research data.

RHO DECLARATION ISO SAMSUNG'S MOTION TO SEAL
MOTION TO STRIKE DR. VELLTURO'S SUPPLEMENTAL EXPERT REPORT
CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

7

21.     As the ECF system did not permit for a way to file the foregoing, highlighted documents under seal as attached to this declaration, copies of such documents will be lodged with the court and served upon counsel for Samsung.

I declare under the penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge.

Dated: March 11, 2014

_/s/ Jennifer J. Rho_____
Jennifer J. Rho

Gibson, Dunn &
Crutcher LLP

RHO DECLARATION ISO SAMSUNG'S MOTION TO SEAL
MOTION TO STRIKE DR. VELLTURO'S SUPPLEMENTAL EXPERT REPORT
CASE NO. 12-CV-00630-LHK (PSG)

8

**ATTESTATION**

I, Rachel Krevans, am the ECF User whose ID and password are being used to file this Declaration.  In compliance with General Order 45, X.B., I hereby attest that Jennifer Rho has concurred in this filing.

Dated: March 11, 2014                              */s/ Rachel Krevans*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document, and its supporting documents, were filed electronically in compliance with Civil Local Rule 5.1, and will be served upon all counsel of record for the parties who have consented to electronic service in accordance with Civil Local Rule 5.1 via the Court's ECF system.

Dated: March 11, 2014                              */s/ Rachel Krevans*