# Exhibit 6
# Filed Publicly Pursuant To Court Order [Dkt. No. 1415]



Peter Cholnoky <peter.cholnoky@request.com>

# Response to April 16, 2011 letter

3 messages

---

**Patrick J Murphy** <pjm@apple.com>                                Wed, Jun 29, 2011 at 5:22 PM
To: peter.cholnoky@request.com

Dear Mr. Cholnoky,

Please see attached.

Kind regards,
Patrick

Patrick J Murphy
Senior Counsel, Patent Strategy & Licensing
 Apple Inc.
pjm@apple.com
+1 408 862 3172 (o)
+1 408 506 1024 (m)

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized
review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy
all copies of the original message.

> 📄 **2011-06-28 - ReQuest .pdf**
> 96K

---

**Peter Cholnoky** <peter.cholnoky@request.com>                     Wed, Jun 29, 2011 at 6:25 PM
To: Karthik Bala <karthik@vvisions.com>

Karthik,

I got this from Apple today. I want to respond to him about our timeline, but I want to make sure that I don't mess
up anything you are doing. This is the identical form letter we got from Amazon, so I don't think much of it. Let
me know.

Peter
[Quoted text hidden]

> 📄 **2011-06-28 - ReQuest .pdf**
> 96K

---

**Peter Cholnoky** <peter.cholnoky@request.com>                     Fri, Jul 8, 2011 at 2:33 PM
To: Patrick J Murphy <pjm@apple.com>

Dear Patrick,

Thank you for the email. We have a term sheet in hand for just under
$2M that we plan to sign on July 14th. I would be happy to answer any
questions you have. I believe the patent could be a major strategic
asset to the Apple.

PC 001027

Gmail - Response to April 16, 2011 letter

Peter Cholnoky, CEO
ReQuest
518.490.6155
peter.cholnoky@request.com
[Quoted text hidden]

PC 001028

# Exhibit 7
# Filed Publicly Pursuant To Court Order [Dkt. No. 1415]



June 28, 2011

Via Email (peter.cholnoky@request.com)
Confirmation Via US Mail

Peter M. Cholnoky, CEO
ReQuest, Inc.
100 Saratoga Village Blvd., #45
Ballston Spa, NY 12020

Re: U.S. Patent Nos. 7,136,934 and 7,577,757

Dear Mr. Cholnoky,

I am in receipt your April 16, 2011 letter to Bruce Sewell.

I will be coordinating Apple's review of ReQuest's patents. Apple respects the valid intellectual property rights of others. I will get back to you in due course. Please direct all future correspondence on this matter to me.

Sincerely,

Patrick J. Murphy
Senior Counsel, Patent Strategy & Licensing

PJM/rb

Sender's Return Address:
Apple
1 Infinite Loop, M/S 46-2PAT
Cupertino, CA 95014-2084
Phone  408-862-3172
Fax   408-974-4992

PC 001044

# Exhibit 8
# Filed Publicly Pursuant To Court Order [Dkt. No. 1415]

**Subject:** Re: Is Apple interested in a patent that may control iTunes?
**From:** Helene Workman <plotka@apple.com>
**Cc:** Boris Teksler <teksler@apple.com>, Mary Dawson
<mary.dawson@apple.com>,"Patrick J. Murphy" <pjm@apple.com>
**To:** Shammy Roberson <roberson@apple.com>
**Date:** Fri, 22 Jul 2011 10:44:07 -0700

Privileged and Confidential

[                              ] -- Helene

On Jul 22, 2011, at 10:03 AM, Shammy Roberson wrote:

Helene,

| **Attorney Client Privilege** |
|---|

Thanks,
Shammy
On Jul 21, 2011, at 5:04 PM, Patrick J Murphy wrote:
PRIVILEGED/CONFIDENTIAL

Hey Shammy,

| **Attorney Client Privilege** |
|---|

Thanks,
Patrick

On Jul 18, 2011, at 5:15 PM, Shammy Roberson wrote:
Boris,

| **Attorney Client Privilege** |
|---|

Thanks,
Shammy

Begin forwarded message:
From: Helene Workman <plotka@apple.com>
Date: July 18, 2011 5:10:11 PM PDT
To: Shammy Roberson <roberson@apple.com>
Subject: Fwd: Is Apple interested in a patent that may control iTunes?

Privileged and Confidential

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Hi, Shammy,

<div style="border:1px solid black; text-align:center;">

**Attorney Client Privilege**

</div>

Thanks. -- Helene

Begin forwarded message:
**From:** Bud Tribble <bud@apple.com>
**Date:** July 18, 2011 3:58:10 PM PDT
**To:** Helene Plotka Workman <plotka@apple.com>
**Subject:** Fwd: Is Apple interested in a patent that may control iTunes?

Privileged & Confidential
Hi Helene,

<div style="border:1px solid black; text-align:center; padding:80px;">

**Attorney Client Privilege**

</div>

Thanks,
Bud

Begin forwarded message:
**From:** "John Perry Barlow <barlow@eff.org>" <barlow@barlowfriendz.net>
**Date:** July 12, 2011 2:04:03 PM PDT
**To:** "bud@apple.com" <bud@apple.com>
**Subject: Fwd: Is Apple interested in a patent that may control iTunes?**

Sent from Barlow's mePhone. Please reply to barlow@eff.org,  text 917-863-2037, or call 415-888-2241.

Begin forwarded message:
**From:** John Gilmore <gnu@toad.com>
**Date:** June 30, 2011 12:10:36 AM GMT+02:00
**To:** barlow@eff.org, gnu@toad.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Cc:** peter.cholnoky@request.com

**Subject: Is Apple interested in a patent that may control iTunes?**

Hey John Perry,

Could you perhaps forward this to Bud Tribble?  I don't have his email address.  Our company president has corresponded with a few Apple lawyers, but they haven't shown any interest, and I think the lawyerly style of the correspondence has caused them to miss the big picture.

I'm on the board of a company that holds a patent which I believe that the iPod and iTunes infringe.  (Others disagree with me, and I think you should make up your own mind by reading the patent.)  We are in the late stages of selling this patent to a large company for more than a million dollars, after receiving multiple offers for it.  If indeed it does control iTunes, then if the buyer asserted it against Apple, they could perhaps stop not only the import into the US of iPods and iPhones and iPads, but also Macintoshes.

We are ReQuest Inc. (request.com), and we own US patent 7,577,757, for synchronizing music, photos and video among multiple devices.  ITunes does this kind of synchronization when an Apple device is plugged into a Macintosh or PC.

ReQuest is a small company without the resources to prosecute a patent against a company the size of Apple.  We invented and deployed the sync technology ourselves.  We got the patent to protect our home-theater multimedia servers, which synchronize media among multiple homes or yachts, from other home-theater competitors.  It has worked for us in that market.  The current top bidding buyer has not only the resources but perhaps also the motivation to engage Apple over this patent.  Before selling it to a multi-billion dollar company that both competes with and collaborates with Apple, we'd like to offer Apple a chance to buy the patent if it wishes to.

ReQuest's President, Peter Cholnoky, is managing the sale.  He can be reached at <peter.cholnoky@request.com> or at +1 518 301 1893.

Thank you,

John Gilmore
Director
ReQuest Inc. (Ballston Spa, NY)
http://request.com

+1 415 221 6524    voice

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL630DEF-WH0000638567

+1 415 221 7251   fax
+1 415 513 7871 mobile
gnu@toad.com

**Helene Workman**
**Director, Patent Development**
**Apple Inc.**
**1 Infinite Loop, MS:  36-2PAT**
**Cupertino, CA  95014**
**408-974-5081**

Helene Workman

Director, Patent Development

Apple Inc.

1 Infinite Loop, MS:  36-2PAT

Cupertino, CA  95014

408-974-5081

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Exhibit 9
# Filed Publicly Pursuant To Court Order [Dkt. No. 1415]

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

***Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Civil Action No. 12-CV-00630-LHK (PSG) <br><br> **APPLE INC.'S OBJECTIONS AND RESPONSES TO SAMSUNG'S FIRST SET OF INTERROGATORIES** <br><br> **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Counterclaim-Defendant. | |

1    success caused by the claimed invention (Samsung itself does not claim to practice the

2    patent); (iii) that anyone has copied the '449 patent; (iv) that anyone has sought a license to

3    the '449 patent; or (v) any praise of the '449 patent.

4           Discovery is still in its early stages and Apple is continuing to investigate.  Apple

5    reserves the right to supplement and/or amend its response as appropriate.

6    **INTERROGATORY NO. 12:**

7           If YOU contend or believe that YOU do not infringe any asserted claim of the

8    SAMSUNG PATENTS, state with specificity the complete factual and legal bases for such

9    contention or belief.

10   **RESPONSE TO INTERROGATORY NO. 12**

11          Apple objects to this Interrogatory as premature to the extent that it: (a) conflicts with

12   the schedule entered by the Court, (b) conflicts with the obligations imposed by the Federal

13   Rules of Civil Procedure, the Civil Local Rules and/or the Patent Local Rules of this Court,

14   and/or any other applicable rule; (c) seeks information that is the subject of expert testimony;

15   (d) seeks information and/or responses that are dependent on the Court's construction of the

16   asserted claims of the patents-in-suit; or (e) seeks information and/or responses that are

17   dependent on depositions and documents that have not been taken or produced.  Apple also

18   objects to this Interrogatory as premature on the ground that Samsung's infringement

19   contentions under Patent Local Rule 3-1 fail to specifically identify the features and/or

20   functionality of the accused Apple products that Samsung contends satisfy each limitation of

21   the asserted claims of the patents-in-suit and otherwise lack sufficient detail to allow Apple

22   to identify "the complete factual and legal bases" for its noninfringement arguments.

23          Apple also objects to this Interrogatory on the grounds that it is overbroad, unduly

24   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence,

25   especially to the extent it seeks information about the accused Apple products beyond the

26   components or technologies of those products that may be relevant to Samsung's patents-in-

27   suit, and/or that Samsung has placed at issue in this case in its Patent Rule 3-1 Disclosures.

28                                                   -34-

1    Apple further objects to this Interrogatory to the extent it requires information outside

2  Apple's possession, custody, and control, including, for example, information concerning

3  components that Apple has purchased from third parties.

4    Subject to and without waiving the foregoing General and Specific Objections, Apple

5  responds as follows:

6  **'087 Patent**

7    Apple denies that it infringes the '087 patent and denies that the '087 patent is

8  essential to any standard.  Nevertheless, Samsung's submission of declarations to ETSI

9  covering the '087 patent obligates Samsung to license the '087 patent FRAND terms.

10    Apple has not directly infringed, induced infringement of, or contributed to

11  infringement of the '087 patent.  Samsung's infringement contentions fail to demonstrate

12  direct or indirect infringement of the '087 patent by Apple.  Samsung's contentions also fail

13  to allege any facts to support its allegations of indirect infringement, including with respect

14  to the critical issues of whether Apple intended to induce others to infringe the '087 patent,

15  whether the Accused Products are capable of substantial non-infringing uses, whether the

16  Accused Products were especially made or especially adapted for infringing use, and how

17  others have supposedly directly infringed the '087 patent.

18    Samsung has not shown that any Accused Product has any of the features of the

19  UMTS standards cited in Samsung's infringement contentions.  Based on Apple's current

20  understanding of the asserted claims of the '087 patent, and with reservation of all rights to

21  amend or supplement this interrogatory response, the Accused Products do not: (1) perform

22  "non-scheduled transmission"; (2) receive non-scheduled transmission information indicating

23  k TTIs; (3) receive the non-scheduled transmission parameter, N; (4) identify, or transmit on,

24  k of N TTIs; (5) transmit data "within a data rate"; (6) compute a "determination value"; and

25  (7) have a "receiver receiving" and a "transmitter transmitting" simultaneously.

26    Further responding, based on Apple's current understanding of the asserted claims of

27  the '087 patent, and recognizing that Samsung has not specifically identified the features

28                                                     -35-

1   and/or functionality of the Accused Products that it contends satisfy each limitation of the

2   asserted claims—for example, Samsung has failed to identify any "receiver receiving non-

3   scheduled transmission information indicating k transmission time intervals (TTIs) for

4   transmitting non-scheduled data via the E-DCH" in the Accused Products —Apple states that

5   at a minimum the following limitations of the asserted claims of the '087 patent are not

6   satisfied by the Accused Products: "receiving non-scheduled transmission information

7   indicating k transmission time intervals (TTIs) for transmitting non-scheduled data via the E-

8   DCH, wherein non-scheduled transmissions can be performed during the k TTIs within a

9   period having N TTIs"; "transmitting data on at least one TTI of the k TTIs within the period,

10  wherein the parameter k is an integer greater than 0 and less than or equal to a positive

11  integer N"; "non-scheduled transmission information is configured by a bit map of N bits

12  indicating the k TTIs using specific bit values"; "transmitting the data within a data rate

13  allowed by a radio network controller (RNC) on at least one of the k TTIs"; "computing a

14  non-scheduled transmission determination value according to a connection frame number

15  (CFN) for generating a frame to be used in communication with a Node B accessed by the

16  UE and a subframe number"; "transmitting the data in TTIs in which non-scheduled

17  transmission determination values correspond to values of the k TTIs"; "the non-scheduled

18  transmission determination value is computed by (CFN*n+Subframe Number)mod N, where

19  a TTI size of the E-DCH is 1/n of a frame length"; "a receiver receiving non-scheduled

20  transmission information indicating k transmission time intervals (TTIs) for transmitting non-

21  scheduled data via the E-DCH, wherein non-scheduled transmissions can be performed

22  during the k TTIs within a period having N TTIs"; "a transmitter transmitting data on at least

23  one TTI of the k TTIs within the period; wherein the k is an integer greater than 0 and less

24  than or equal to a positive integer N"; "the transmitter transmits the data within a data rate

25  allowed by a radio network controller (RNC) on at least one TTI of the k TTIs;" "the

26  transmitter computes a non-scheduled transmission determination value according to a

27  connection frame number (CFN) for generating a frame to be used in communication with a

28                                          -36-

1  Node B accessed by the UE and a subframe number"; "the transmitter … transmits the data

2  in TTIs in which non-scheduled transmission determination values correspond to values of

3  the k TTIs"; "a receiver receiving at least one of scheduling assignment information

4  generated by the Node B based on a scheduling information and non-scheduled transmission

5  information indicating k transmission time intervals (TTIs) for transmitting non-scheduled

6  data via the E-DCH within a period having N TTIs"; "a controller selecting a Node B

7  controlled scheduling mode or an non-scheduled transmission mode to transmit data"; "a

8  transmitter transmitting uplink data according to the scheduling assignment information in

9  the Node B controlled scheduling mode"; and "a transmitter …transmitting uplink data on at

10 least one TTI of the k TTIs within the period in the non-scheduled transmission mode;

11 wherein the parameter k is an integer greater than 0, and less than or equal to a positive

12 integer N."

13        At least because the Accused Products do not satisfy all limitations of claims 1 and 9

14 of the '087 patent, they also do not infringe dependent claims 2, 6, 7, 8, 10, 14, 15, 16, 34,

15 35, 39, and 40.

16 **'058 Patent**

17        Samsung's infringement contentions as to'058 patent lack sufficient detail to allow

18 Apple to identify all its potential noninfringement arguments.  Samsung's contentions fail to

19 allege any facts to support its allegations of indirect infringement, including with respect to

20 the critical issues of whether Apple intended to induce others to infringe the '058 patent,

21 whether the Accused Products are capable of substantial non-infringing uses, whether the

22 Accused Products were especially made or especially adapted for infringing use, and how

23 others have supposedly directly infringed the '058 patent.

24        Furthermore, and not by way of limitation, although Samsung's Patent Local Rule 3-1

25 infringement contentions purport to accuse the iPhone, iPad, and iPod Touch (4th Gen.),

26 Samsung's contentions fail to address each limitation of the asserted claims for each of those

27 products.  In addition, although Samsung purports to accuse the Contacts, Calendar, Safari,

28                                                    -37-

1   and Messages applications, Samsung does not sufficiently explain how the functionality of

2   these applications allegedly meets the limitations of the asserted claims.

3          Based on Apple's current understanding of the asserted claims of the '058 patent,

4   Apple responds that it does not infringe the below-identified asserted claims for at least the

5   following reasons:

6          Samsung identifies "a touchscreen" as a "user input unit," but then contends that "the

7   touchscreen firmware that operates and is pre-loaded on the Accused Device outputs a data-

8   display request signal if there is a data-display request from a user."  From this disclosure, it

9   is unclear (i) what hardware and/or software Samsung contends is the "touchscreen" and

10  whether Samsung is accusing the "touchscreen" alone as the "user input unit," or (ii) what

11  hardware and/or software Samsung contends is "the touchscreen firmware" and whether

12  Samsung is accusing "the touchscreen firmware" alone as the "user input unit."  Regardless,

13  "touchscreen firmware" is not a "user input unit," and Samsung has failed to identify any

14  "data-display request" or "data-display request signal" in connection with either a

15  "touchscreen" or "touchscreen firmware" as required by claims 1, 4, or 17 ("a user input unit

16  for outputting a data-display request signal if there is a data-display request from a user") or

17  claims 9 or 12 ("if a data display request signal is inputted by a user").

18         Samsung also identifies "a home button" as a "user input unit," and contends that it

19  "outputs a data-display request signal upon being pressed by the user."  But the home button

20  is not a "user input unit," and Samsung has failed to identify any "data-display request" or

21  "data-display request signal" in connection with the home button as required by claims 1, 4,

22  or 17 ("a user input unit for outputting a data-display request signal if there is a data-display

23  request from a user") or claims 9 or 12 ("displaying a plurality of identification information

24  corresponding to a plurality of data if a data display request signal is inputted by a user").

25         Samsung contends that "[e]ach Accused Device has a memory unit comprised of

26  internal flash memory and dynamic random access memory for storing a plurality of data and

27  a plurality of identification information corresponding to such data (including icons, folder

28                                              -38-

1  names, file names, and pictures),” but does not specifically identify any such memory unit, as

2  required by claims 1, 4, or 17 (“a memory unit for storing a plurality of data and a plurality

3  of identification information corresponding to said plurality of data”).

4       Samsung contends that “[e]ach Accused Device has a screen for displaying the

5  plurality of data.”  But Samsung does not identify what it means by “a screen” as required by

6  claims 1, 4, or 17 (“a display unit for displaying the plurality of data”).  In addition, to the

7  extent Samsung contends the same “screen”/“touchscreen” satisfies both the “display” and

8  “user input unit” requirements of the asserted claims, Samsung also fails to satisfy these

9  elements of the claims.

10      Samsung appears to contend that the A4 and A5 processors are a “controller,” but

11  does not explain how these processors control the “display unit” to display “the plurality of

12  identification information” in response to the user’s input of “said data display request

13  signal,” the “first layer,” or the “second layer” as required by claims 1, 4, or 17 (“a controller

14  for controlling said display unit to display the plurality of identification information if said

15  data display request signal is inputted by the user, display data corresponding to specific

16  identification information via a first layer if the specific identification information is selected

17  from among the plurality of identification information, and display a specific area of the

18  specific information in an enlarged form via a second layer if the specific area is selected

19  from the specific identification information of the first layer”; “a controller for controlling

20  said display unit in response to the data-display request by the user to display the plurality of

21  identification information, said display unit further displaying data corresponding to specific

22  identification information via a first layer if the specific identification information is selected

23  from among the plurality of identification information, and displaying a specific area of the

24  specific information in an enlarged form via a second layer if the specific area is selected

25  from the specific identification information of the first layer”).

26      Samsung contends that “when a user touches the ‘Notes’ icon, a list of the user’s

27  Notes (i.e., a plurality of identification information) is displayed,” and that “when a user

28                                              -39-

opens an inbox in the 'Mail' application, a list of the user's email filenames (i.e., a plurality of identification information) is displayed."  But these examples do not constitute "a plurality of identification information" as required by asserted claims 1, 4, 9, 12, or 17  ("a controller for controlling said display unit to display the plurality of identification information if said data display request signal is inputted by the user, display data corresponding to specific identification information via a first layer if the specific identification information is selected from among the plurality of identification information, and display a specific area of the specific information in an enlarged form via a second layer if the specific area is selected from the specific identification information of the first layer"; "displaying a plurality of identification information corresponding respectively to a plurality of data if a data display request signal is inputted by a user"; "a controller for controlling said display unit in response to the data-display request by the user to display the plurality of identification information, said display unit further displaying data corresponding to specific identification information via a first layer if the specific identification information is selected from among the plurality of identification information, and displaying a specific area of the specific information in an enlarged form via a second layer if the specific area is selected from the specific identification information of the first layer").

Samsung has failed to identify a "first layer" displayed by the accused Apple products (under the control of a controller or otherwise), as required by claims 1 and 4 ("display data corresponding to specific identification information via a first layer"), claims 9 and 12 ("displaying specific data corresponding to a specific one of the plurality of identification information via a first layer"), or claim 17 ("displaying data corresponding to specific identification information via a first layer").

Samsung has failed to identify any instance in which the accused Apple products display "specific identification information" in a "first layer" (under the control of a controller or otherwise), as required by claims 1 and 4 ("display a specific area of the specific information in an enlarged form via second layer if the specific area is selected from the

-40-

1   specific identification information of the first layer") or claim 17 ("displaying a specific area

2   of the specific information in an enlarged form via a second layer if the specific area is

3   selected from the specific identification information of the first layer").

4        Samsung has failed to identify any instance in which the accused Apple products

5   display "a specific area of the specific identification information in an enlarged form via a

6   second layer" (under the control of a controller or otherwise, or "if the specific area is

7   selected from the specific identification information of the first layer"), as required by claims

8   1 and 4 ("display a specific area of the specific information in an enlarged form via second

9   layer if the specific area is selected from the specific identification information of the first

10  layer") or claim 17 ("displaying a specific area of the specific information in an enlarged

11  form via a second layer if the specific area is selected from the specific identification

12  information of the first layer").

13       Samsung has failed to identify any instance in which the accused Apple products

14  display "identification information" in the form of a "file name" (under the control of a

15  controller or otherwise), as required by asserted claims 4 and 12 ("wherein each of said

16  plurality of identification information is a file name").

17  **'596 Patent**

18       Apple denies that it infringes the '596 patent and denies that the '596 patent is

19  essential to any standard.  Nevertheless, Samsung's submission of declarations to ETSI

20  covering the '596 patent obligates Samsung to license the '596 patent on FRAND terms.

21       Apple has not directly infringed, induced infringement of, or contributed to

22  infringement of the '596 patent.  Samsung's infringement contentions fail to demonstrate

23  direct or indirect infringement of the '596 patent by Apple.  Samsung's contentions also fail

24  to allege any facts to support its allegations of indirect infringement, including with respect

25  to the critical issues of whether Apple intended to induce others to infringe the '596 patent,

26  whether the Accused Products are capable of substantial non-infringing uses, whether the

27

28                                      -41-

1  Accused Products were especially made or especially adapted for infringing use, and how

2  others have supposedly directly infringed the '596 patent.

3      Samsung has not shown that any Accused Product has any of the features of the

4  UMTS standards cited in Samsung's infringement contentions.  Based on Apple's current

5  understanding of the asserted claims of the '596 patent, and with reservation of all rights to

6  amend or supplement this interrogatory response, the Accused Products do not: (1) form a

7  "data packet unit"; (2) transmit "the second PDU"; (3) have the claimed "block"; (4) have the

8  claimed "control unit"; (5) have the claimed ""multiplexing and transmission sequence

9  number (TSN) setting unit"; and (6) use "a data description indicator (DDI) field

10  representing the first PDU and an N field representing the number of uplink packet data

11  included in the first PDU."

12      Further responding, based on Apple's current understanding of the asserted claims of

13  the '596 patent, and recognizing that Samsung has not specifically identified the features

14  and/or functionality of the Accused Products that it contends satisfy each limitation of the

15  asserted claims—for example, Samsung has failed to identify a "block for forming a first

16  protocol data unit (PDU) including uplink packet data" in the Accused Products—Apple

17  states that at a minimum the following limitations of the asserted claims of the '596 patent

18  are not satisfied by the Accused Products: "forming a first protocol data unit (PDU) including

19  uplink packet data"; "forming a control service data unit (SDU) including control

20  information for an uplink packet data service"; "forming at least one first header part

21  corresponding to the first PDU by using a data description indicator (DDI) field representing

22  the first PDU and an N field representing the number of uplink packet data included in the

23  first PDU"; "forming a second header part corresponding to the control SDU by using a DDI

24  field set as a predetermined specific value representing that the control SDU is transmitted";

25  "forming a second data packet unit (PDU) by concatenating a header and a payload";

26  "transmitting the second PDU to a Node B, wherein the header includes the header parts, and

27  the payload includes the first PDU and the control SDU"; "the control information includes

28                         -42-

at least one of transmission power information of a UE to transmit the uplink packet data

service and buffer status information thereof"; "the DDI field inserted into the first header

part represents a media access control-data (MAC-d) flow and a logical channel relating to

uplink packet data included in the first PDU, and a size of the uplink packet data"; a "block

for forming a first protocol data unit (PDU) including uplink packet data"; "a control unit for

forming a control service data unit (SDU) including control information for an uplink packet

data service"; and "a multiplexing and transmission sequence number (TSN) setting unit for

forming at least one first header part corresponding to the first PDU by using a data

description indicator (DDI) field representing the first PDU and an N field representing the

number of uplink packet data included in the first PDU, forming a second header part

corresponding to the control SDU by using a DDI field set as a predetermined specific value

representing that the control SDU is transmitted, and forming a second data packet unit

(PDU) by concatenating a header and a payload, the header including the header parts, the

payload including the first PDU and the control SDU, wherein the second PDU is transmitted

to a Node B."

At least because the Accused Products do not satisfy all limitations of claims 1 and 13

of the '596 patent, they also do not infringe dependent claims 4, 6, 16, and 18.

**'179 Patent**

Samsung's infringement contentions as to the '179 patent lack sufficient detail to

allow Apple to identify all its potential noninfringement arguments.  Samsung's contentions

fail to allege any facts to support its allegations of indirect infringement, including with

respect to the critical issues of whether Apple intended to induce others to infringe the '179

patent, whether the Accused Products are capable of substantial non-infringing uses, whether

the Accused Products were especially made or especially adapted for infringing use, and how

others have supposedly directly infringed the '179 patent.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          Case No. 12-CV-00630-LHK (PSG)

1    Furthermore, and not by way of limitation, although Samsung's Patent Local Rule 3-1

2    infringement contentions purport to accuse "all Apple products that implement a touchscreen

3    keyboard as described herein," "including" the iPod Touch and "all models" of the iPhone

4    and iPad, its claim charts only provide information about the iPhone 4S.  Because Samsung

5    has limited its contentions to the iPhone 4S alone, no response other than with respect to the

6    iPhone 4S is required.  And even with respect to the iPhone 4S, Samsung has failed to

7    identify the specific functionality that supposedly meets the limitations of the asserted

8    claims, and has limited it contentions to the Japanese (Kana) keyboard.  In addition, as

9    detailed further below, Samsung also has not explained how the "coordinate value," "digital

10   value," "controller," "key code," "key code table," "key information table," "searching key

11   code information," or "vector" limitations of the asserted claims are met by the accused

12   Apple products.

13   Based on Apple's current understanding of the asserted claims of the '179 patent,

14   Apple responds that it does not infringe the below-identified asserted claims for at least the

15   following reasons:

16   Samsung identifies "a multi-touch screen panel and associated circuitry" as a "touch

17   panel," but does not identify which "associated circuitry" it includes as part of the "touch

18   panel."  Samsung also does not explain how the accused Apple products supposedly generate

19   or obtain "a coordinate value" of any kind, as required by claims 1, 3, 4, 5, or 6 ("generating

20   a coordinate valued in accordance with a position pressed by a stylus") or claims 9 or 10

21   ("obtaining a coordinate value …").

22   Samsung contends that "[e]ach of Apple's Accused Devices comprises a converter

23   receiving said coordinate value and outputting a digital value," but never identifies any such

24   "converter" in the accused Apple products as required by claims 1, 3, 4, 5, or 6 ("a converter

25   receiving said coordinate value and outputting a digital value").

26   Samsung contends that "[e]ach of Apple's Accused Devices comprises a memory,"

27   that "the Accused Devices also include processors with internal memory and access to

28                                          -44-

RAM," and that "[t]he Accused Devices store in memory the names of keys forming a keyboard image . . . [and] [s]ome keys are a [sic] assigned a plurality of respective key codes, which are also stored in memory." But Samsung does not identify a specific memory that stores any "names of keys," "a plurality of key codes" for each key, or "corresponding screen and direction range information" for each key code. Nor does Samsung explain how the accused Apple devices allegedly generate key codes, enlarge key codes, store or otherwise use key code tables or key information tables, or use direction range information consisting of a minimum and maximum value of a trace. These elements are required by claims 1, 3, 4, 5, 6, 7, 8, 10, or 11 ("a memory storing: names of keys forming said keyboard image, for each of said keys, a plurality of respective key codes, and for each of said key codes, corresponding screen and direction range information"; "wherein said memory further comprises: key code tables, each corresponding to one of said keys, storing said corresponding screen and direction range information of said plurality of respective key codes, and a key information table storing said names of keys and address information indicating, for each of said keys, the corresponding one of said key code tables"; "wherein said direction range information is different for each of said plurality of respective key codes of one of said keys"; "wherein the direction range information of the key code includes a minimum value and a maximum value of said trace direction of said stylus"; "(a) displaying an image of the keyboard including keys with a plurality of key codes"; "(e) searching key code information in accordance with the key area and the trace direction to generate a selected key code of the plurality of key codes of the key area").

Samsung contends that "[e]ach of the Accused Devices comprise a controller controlling said display of said keyboard image, receiving said digital value for a trace of said stylus, and determining the position and direction of said trace," and that the Accused Devices include "a processor and associated chips and circuitry to control the display and process input from the touch screen." But Samsung does not identify any specific controller that "control[s] said display of said keyboard image," or explain how it "receive[es] a digital

-45-

value for a trace" or what exactly that digital value is, how the alleged "controller" "determin[es] the position or direction of said trace," or how it "selects one of said key codes." Nor does Samsung explain how the "controller" allegedly generates key codes, enlarges key codes, uses key code tables or key information tables, or uses vectors. These elements are required by claims 1, 3, 4, 5, 6, 7, 8, 10, or 11 ("a controller controlling said display of said keyboard image, receiving said digital value for a trace of said stylus, and determining the position and direction of said trace"; "wherein said controller selects one of said key codes based on said position and on said direction of said trace"; "wherein said controller controls said screen to display, in said keyboard image, an image of said generated key code for a predetermined time after said controller selects said one of said key codes, and then to restore said image of said generated key code to its original state"; "wherein said controller controls said screen to change a character color and a background color of said image of said generated key code"; "wherein said controller controls said screen to enlarge only said generated key code"; "(a) displaying an image of the keyboard including keys with a plurality of key codes"; "(b) obtaining the trace of a stylus"; "(c) determining a key area in which the trace of the stylus is drawn"; "(d) obtaining a direction of the trace drawn on the determined key area"; "(e) searching key code information in accordance with the key area and the trace direction to generate a selected key code of the plurality of key codes of the key area"; "(f) displaying on the image of the keyboard an image of the key code generated by step (e) to be distinguished from the others of the plurality of key codes, and then restoring the image to its original state"; "(b1) obtaining a coordinate value of a start point of the trace"; "(b2) obtaining a coordinate value in which the stylus contacts the touch panel, after a predetermined time"; "(b3) determining whether the point obtained in the step (b2) is an end point, thereby obtaining the end point of the trace"; "wherein step (c) includes checking whether a part of coordinate values of the trace drawn by the stylus is within the range defined as a key area"; "(a) displaying an image of a keyboard including keys with a plurality of key codes"; "(b) obtaining the trace of a stylus"; "(c) determining a key area in which the

-46-

1  trace of the stylus is drawn"; "(d) obtaining a direction of the trace drawn on the determined

2  key area"; "(e) searching key code information in accordance with the key area and the trace

3  direction to generate a selected key code of the plurality of key codes of the key area"; "(d1)

4  obtaining a vector composed of coordinate values of a start point and an end point of the

5  stylus trace"; "(d2) calculating the magnitude of the obtained vector"; "(d3) comparing the

6  magnitude of the vector with the magnitude of a reference vector"; "(d4) determining a trace

7  direction to be zero when the vector magnitude is smaller than the magnitude of the reference

8  vector, and obtaining the trace direction by calculating an angle between the vector and a

9  reference line when the magnitude of the vector is larger than the magnitude of the reference

10  vector").

11      The two-step menu embodiments of the accused Apple products do not satisfy the

12  various "trace" limitations of the asserted claims because such embodiments are disclaimed

13  in the '179 patent specification; thus, these embodiments do not infringe asserted claims 1, 3,

14  4, 5, 6, 7, 8, 10, or 11.

15      The two-step menu embodiments of the accused Apple products do not display "an

16  image of said generated key code for a predetermined time after said controller selects said

17  one of said key codes," and thus do not infringe asserted claims 1, 3, 4, 5, or 6.

18      Certain embodiments of the Apple accused products do not display the alleged "key

19  codes" on the virtual keys and thus cannot restore images of these non-displayed key codes

20  to their "original state," and thus do not infringe asserted claims 1, 3, 4, 5, or 6 ("and then to

21  restore said image of said generated key code to its original state"), or claims 7, 8,  or 10

22  ("restoring the image to its original state").  Likewise, these embodiments do not "display[ ]

23  an image of a keyboard including keys with a plurality of key codes," and thus do not

24  infringe asserted claims 7, 8, 10, or 11.

25      The accused Apple products do not enlarge a key code, and thus do not infringe

26  asserted claim 3 ("enlarge only said generated key code").  Alternatively, certain

27  embodiments do not display an image of the alleged key codes on the keys such that the

28                                    -47-

1    image can be "enlarged," and thus do not infringe asserted claim 3 ("enlarge only said

2    generated key code").

3          Certain embodiments of the Apple accused products do not display the alleged "key

4    codes" on the virtual keys, and thus do not infringe asserted claims 7, 8, or 10.  These

5    embodiments do not meet element (a) ("(a) displaying an image of a keyboard including keys

6    with a plurality of key codes") or element (f) ("(f) displaying on the image of the keyboard

7    an image of the key code … and then restoring the image to its original state").

8          The accused Apple products do not determine a "coordinate value" as a "point" that

9    represents the touch position of a stylus, and thus do not infringe asserted claim 9 ("(b3)

10   determining whether the point obtained in the step (b2) is an end point, thereby obtaining the

11   end point of the trace").

12         The accused Apple products do not "obtain[ ] a vector composed of coordinate values

13   of a start point and an end point of the stylus trace," and thus do not infringe asserted claim

14   11.  Furthermore, any vector calculation is not composed of "coordinate values" as that term

15   is used in the claims.

16         The accused Apple products do not include a "reference vector" and do not

17   "determin[e] a trace direction to be zero when the vector magnitude is smaller than the

18   magnitude of the reference vector," and thus do not infringe asserted claim 11 ("(d3)

19   comparing the magnitude of the vector with the magnitude of a reference vector"; "(d4)

20   determining a trace direction to be zero when the vector magnitude is smaller than the

21   magnitude of the reference vector, and obtaining the trace direction by calculating an angle

22   between the vector and a reference line when the magnitude of the vector is larger than the

23   magnitude of the reference vector").

24   **'757 Patent**

25         Based on Apple's current understanding of the asserted claims of the '757 patent, and

26   recognizing that Samsung has not specifically identified the features and/or functionality of

27   the accused Apple products that it contends satisfy each limitation of the asserted claims—

28                                             -48-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          Case No. 12-CV-00630-LHK (PSG)

APPLE'S RESPONSES TO SAMSUNG'S FIRST SET OF INTERROGATORIES

for example, Samsung has failed to identify any "zone[s]"—Apple states that the accused Apple products do not infringe because they do not synchronize audio, video, or photographic data as required by the '757 patent.  Additionally, the accused Apple products do not infringe for at least the reason that they do not include zones, and are not zone specific storage and interface devices.

Further responding, Apple states that at least the following limitations of the asserted claims of the '757 patent are not satisfied by one or more of the accused Apple products: "[a] system for synchronizing devices in a multimedia environment[]," "at least one zone," "each zone having at least one zone specific storage and interface device," "wherein audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and interface device are updated in relation to the zone specific storage and interface devices and the central storage and interface device," "whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user," "a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially identical content information and content management information displayed and manipulated in anyone [sic] of the zones," "an output device coupled to the at least one central storage and interface, wherein audio, video, or photographic information is outputted," "wherein the central storage and interface device is capable of converting analog information into digital form."

At least because the accused Apple products do not satisfy all the limitations of claim 1 of the '757 patent, they also do not infringe dependent claim 2-5, 11, 12, 14, and 15.

**'239 Patent**

Based on Apple's current understanding of the asserted claims of the '239 patent, Apple has not directly infringed, induced infringement of, or contributed to infringement of the '239 patent.  Samsung's infringement contentions fail to demonstrate direct or indirect

-49-

1    infringement of the '239 patent by Apple.  Samsung's contentions also fail to allege any facts

2    to support its allegations of indirect infringement, including with respect to the critical issues

3    of whether Apple intended to induce others to infringe the '239 patent, whether the Accused

4    Products are capable of substantial non-infringing uses, whether the Accused Products were

5    especially made or especially adapted for infringing use, and how others have supposedly

6    directly infringed the '239 patent.

7          In addition, Samsung has not specifically identified the features and/or functionality

8    of the accused Apple products that it contends satisfy each limitation of the asserted claims.

9    For example, Samsung has failed to identify any "means for exchanging data with [a] host

10   unit," "means for splitting and organizing the digitized, compressed audio and/or video signal

11   prior to transmission," "interface[s]," or "cellular telephone[s] connected to said interface."

12         Further responding, based on Apple's current understanding of the asserted claims of

13   the '239 patent, Apple states that at least the following limitations of the asserted claims of

14   the '239 patent are not satisfied by the accused Apple products: "a mobile remote unit,"

15   "means for capturing, digitizing, and compressing at least one composite signal," "means for

16   storing said composite signal," "means for receiving at least one composite signal transmitted

17   by the remote unit," "means for exchanging data with said host unit," "means for storing the

18   composite signal received by the host unit," "means for decompressing said composite

19   signal," "means for splitting and organizing the digitized, compressed audio and/or video

20   signal prior to transmission," "wherein the means for capturing, digitizing, and compressing

21   said composite signal includes a video capture device installed in said remote unit to capture

22   said composite signal in real time," "wherein the means for capturing, compressing and

23   digitizing said Composite signal includes an audio capture device installed in said remote

24   unit," "wherein the means for transmitting the composite signal includes: at least one

25   interface installed in conjunction with said remote unit; a cellular telephone connected to

26   each said interface," "a computer including a video capture module to capture and compress

27   video in real time," "means for transmission of said captured video over a cellular

28                                              -50-

1  frequency," "wherein the means for transmission of said captured video over a cellular

2  frequency includes: at least two interfaces operating in conjunction with said computer; a

3  cellular telephone connected to each said interface," "means for splitting the captured video

4  into pieces for transmission through said interfaces."  Further, for the means-plus-function

5  claim limitations listed above, the Apple products do not meet those limitations because the

6  Apple products do not use the structures or equivalent structures disclosed in the '239 patent

7  specification (to the extent any such structures are disclosed).

8          At least because the accused Apple products do not satisfy all the limitations of

9  claims 1 and 15 of the '239 patent, they also do not infringe dependent claims 2-7, and 16-17.

10  **'470 Patent**

11          Samsung has not specifically identified the features and/or functionality of the

12  accused Apple products that it contends satisfy each limitation of the asserted claims of the

13  '470 patent.  For example, and not by way of limitation, although Samsung's Patent Local

14  Rule 3-1 infringement contentions purport to accuse all models of the iPhone, iPad,

15  MacBook, and iMac of infringing the '470 patent, Samsung's contentions only attempted to

16  identify how each element of the  asserted claims allegedly reads on  the iPhone 4S.

17  Accordingly, no response other than with respect to the iPhone 4S is required.

18          Based on Apple's current understanding of the asserted claims of the '470 patent,

19  Apple states that at least the following limitations of the asserted claims of the '470 patent

20  are not satisfied by the accused Apple products:  "A/V device"; "a display screen operable to

21  display one of a first On-screen Display (OSD) window, which indicates that the external

22  audio reproduction unit is connected to the audio output port, and a second OSD window,

23  which indicates that the external audio reproduction unit is not connected to the audio output

24  port"; "input command"; "wherein if the control unit receives the input command and the

25  external audio reproduction unit is connected to the audio output port, the control unit

26  controls the display screen to automatically display the first OSD window"; "wherein if the

27  control unit receives the input command and the external audio reproduction unit is not

28                                                -51-

1  connected to the audio output port, the control unit controls the display screen to

2  automatically display the second OSD window"; "wherein if the control unit receives the

3  input command and the external audio reproduction unit is connected to the audio output

4  port, the control unit further controls the audio signal processing unit to automatically output

5  the processed audio signal to the audio output port"; "wherein if the control unit receives the

6  input command and the external audio reproduction unit is not connected to the audio output

7  port, the control unit further controls the audio signal processing unit to automatically output

8  the processed audio signal to the speaker"; "wherein the first OSD window displays

9  previously stored volume level of external audio reproduction unit and the second OSD

10  window displays previously stored volume level of the speaker"; "if the external audio

11  reproduction unit is connected to the audio output port of the A/V device, automatically

12  displaying on the display screen a first OSD window indicating that the external audio

13  reproduction unit is connected to the audio output port"; and "if the external audio

14  reproduction is not connected to the audio output port, automatically displaying on the

15  display screen a second OSD window indicating that the external audio reproduction unit is

16  not connected to the audio output port."

17       At least because the accused Apple products do not satisfy all the limitations of

18  claims 7 and 12 of the '470 patent, the accused Apple products also do not infringe

19  dependent claims 8, 9, 10, 11, 13, 14, 15, and 16.

20  **'449 Patent**

21       Samsung has not specifically identified the features and/or functionality of the

22  accused Apple products that it contends satisfy each limitation of the asserted claims.  For

23  example, and not by way of limitation, although Samsung's Patent Local Rule 3-1

24  infringement contentions purport to accuse the iPod touch 4th generation and all generations

25  of the iPad, Samsung has only attempted to identify how each element allegedly reads on an

26  iPhone running iOS 5.1.1.  Accordingly, no response other than with respect to an iPhone

27

28                                        -52-

1  running iOS 5.1.1 is required.  In addition, Samsung has failed to identify the "recording

2  circuit" in any accused product.

3         Based on Apple's current understanding of the asserted claims of the '449 patent,

4  Apple states that at least the following limitations of the asserted claims of the '449 patent

5  are not satisfied by the accused Apple products: :  "an A/D converter which converts said

6  analog signal from said imaging device to a digital signal," "a recording circuit which

7  records compressed data, said compressed data including a moving image signal, and a still

8  image signal"; "a reproducing circuit which reproduces a moving image signal, a sound

9  signal in synchronous to said moving image signal, and a still image signal"; "a display

10 which displays said moving image signals and still image signals outputted from said

11 reproducing circuit, and a list of said moving image signal and still image signal as a search

12 mode, and a list of classifications as a classification mode"; "wherein said recording circuit

13 records each one of said plurality of image signals with classification data"; and "said display

14 lists a plurality of classifications and a number of images belonging to each classification."

15        At least because the accused Apple products do not satisfy all the limitations of claim

16 25 of the '449 patent, they also do not infringe dependent claim 27.

17        Discovery is still in its early stages and Apple is continuing to investigate.  Apple

18 reserves the right to supplement and/or amend its response as appropriate.

19 **INTERROGATORY NO. 13:**

20        Separately for all SOFTWARE produced by APPLE including, but not limited to iOS

21 SOURCE CODE, IDENTIFY: (a) each version of SOFTWARE that corresponds to

22 commercially distributed versions of SOFTWARE; (b) which APPLE ACCUSED

23 PRODUCT was commercially distributed with which version of the SOFTWARE produced

24 by APPLE; and (c) all material differences between the commercially distributed versions of

25 SOFTWARE that are relevant to any aspect, element or function of any APPLE ACCUSED

26 PRODUCT that is alleged to infringe any of the SAMSUNG PATENTS.

27 **RESPONSE TO INTERROGATORY NO. 13**

28                                        -53-