# Exhibit 1
# Filed Publicly Pursuant To Court Order [Dkt. No. 1415]

|            |                                                                              |
|-----------:|------------------------------------------------------------------------------|
| **From:**  | Patrick J Murphy <pjm@apple.com>                                             |
| **Subject:** | Fwd: Draft ReQuest Template RE: Audio ReQuest RE: new project -- PRIVILEGED/CONFIDENTIAL |
| **To:**    | Mary Dawson <mary.dawson@apple.com>                                          |
| **Attachment:** | UK Search Report.pdf                                                    |
| **Attachment:** | What is a file synchronizer.pdf                                         |
| **Attachment:** | ReQuest discussion template.pptx                                        |
| **Attachment:** | ReQuest discussion template.pdf                                         |
| **Attachment:** | Krikorian Patented 3 10 1998.pdf                                        |
| **Attachment:** | Van der Meulen Pub 12 16 1999.pdf                                       |
| **Attachment:** | Kleiman Patented 9 28 1999.pdf                                          |
| **Attachment:** | Pet Make Special Claim Charts.pdf                                       |
| **Date:**  | Mon, 18 Jul 2011 22:21:43 -0700                                              |

for the ReQuest TPM file.

--Patrick

Begin forwarded message:

> From: Jack Lenell <jack.lenell@TekLawGroup.com>
> Date: July 18, 2011 10:16:22 PM PDT
> To: 'Patrick J Murphy' <pjm@apple.com>
> Subject: Draft ReQuest Template RE: Audio ReQuest RE: new project -- PRIVILEGED/CONFIDENTIAL
>
> Privileged and Confidential
>
> Hi Patrick,
>
> Enclosed for your review is a first draft of a ReQuest Discussion Template (in both PowerPoint and PDF format.)
>
> For obvious reasons, I've focused my arguments on 102(b) prior art references, which were published more than a year prior to ReQuest's first effective filing date.
>
> Also enclosed for your convenience are copies of my cited Kleinman, Krikorian and VanDerMeulen documents.
>
> = >
> All three references teach that files are "updated", which is that same word that is used in the body of all of the ReQuest claims.  However, the ReQuest patent specification claim preamble also uses the word "synchronization".  Just in case ReQuest tries to distinguish over the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY        APL630DEF-WH-A0000025327

Kleinman, Krikorian and VanDerMeulen documents by relying on "synchronization" in their claim preamble, I've also included the Balasubramaniam 102(b)/103 prior art document, which is entitled "What is a File Synchronizer".
>
> = >
> As further background, I'm also including a copy of ReQuest's claim chart, which is part of ReQuests patent file wrapper --via their petition to make special.
>
> And I've also enclosed a copy of the UK Search Report (which inspired me to dig up the additional Kleinman, Krikorian and VanDerMeulen documents.)
>
> Please let me know if you have any questions or concerns.
>
> Best regards,
>
> Jack
>
> Cell 970-556-2199
>
> From: Patrick J Murphy [mailto:pjm@apple.com]
> Sent: Monday, July 11, 2011 11:28 AM
> To: Jack Lenell
> Subject: Re: Audio ReQuest RE: new project -- PRIVILEGED/CONFIDENTIAL
>
> Thanks for the feedback on ReQuest. Left Cholnocky a v-mail. Will let you know what comes of my conversation with him.
>
> Attached is the template. Very basic, as you will see. :)
>
> Cheers,
> Patrick
>
> On Jul 11, 2011, at 10:13 AM, Jack Lenell wrote:
>
>
> Privileged and Confidential
>
> Hi Patrick,
>
> Thanks for taking time to talk this morning.  (Please send me a copy of the opinion template that you would like me to use for this matter.)
>
> Here's a link to the website for Doug's law firm:
>
>                http://www.tipatents.com/
>
>

> Cheers,
>
> Jack
>
> Cell 970-556-2199
>
> From: Doug Thomas [mailto:dthomas@tipatents.com]
> Sent: Friday, July 08, 2011 10:21 PM
> To: Patrick J Murphy; Jack Lenell
> Subject: Re: new project -- PRIVILEGED/CONFIDENTIAL
>
> Hi Patrick,
>
> I spoke with Jack earlier today.  He has completed his review and was planning on calling you Monday.
>
> Regards,
> Doug
>
> From: Patrick J Murphy <pjm@apple.com>
> To: Doug Thomas <dthomas@tipatents.com>; Jack Lenell <Jack.Lenell@TekLawGroup.com>
> Sent: Fri, July 8, 2011 5:19:10 PM
> Subject: Re: new project -- PRIVILEGED/CONFIDENTIAL
>
> As an FYI, ReQuest got back to me today, indicating that they're going to sign an LOI on the 14th. Whether it's posturing or not, I'd like to have something from you guys to consider by next Tuesday. Thanks.
>
> Best,
> Patrick
>
> On Jun 29, 2011, at 8:57 AM, Doug Thomas wrote:
>
>
>
> Thanks Patrick!
>
> Unless you object, I'll work with Jack Lenell on this.  As you may know Jack has and does work with me on Apple matters.
>
> Regards,
> Doug
>
> From: Patrick J Murphy <pjm@apple.com>
> To: Doug Thomas <dthomas@tipatents.com>
> Sent: Tue, June 28, 2011 4:23:11 PM
> Subject: Re: new project -- PRIVILEGED/CONFIDENTIAL

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY   APL630DEF-WH-A0000025329

> > letter from ReQuest attached.
>
> Thanks,
> Patrick
>
> On Jun 24, 2011, at 9:42 PM, Doug Thomas wrote:
>
>
>
> Hi Patrick,
>
> Let me know if you still want to touch base on iCloud.
>
> Cheers,
> Doug
>
> From: Doug Thomas <dthomas@tipatents.com>
> To: Patrick J Murphy <pjm@apple.com>
> Sent: Wed, June 15, 2011 2:27:47 PM
> Subject: Re: new project -- PRIVILEGED/CONFIDENTIAL
>
> What is a good time to call?
>
> From: Patrick J Murphy <pjm@apple.com>
> To: dthomas@tipatents.com
> Sent: Tue, June 14, 2011 5:34:35 PM
> Subject: new project -- PRIVILEGED/CONFIDENTIAL
>
> Hey Doug,
>
> Thanks for your voicemail.
>
> If you have the bandwidth, I'd like you to help on a third-party matter. Let me know if you
clear conflicts on ReQuest Inc. (http://www.request.com/company.asp). The patents of interest
are attached.
>
> Thanks,
> Patrick
>
> Patrick J Murphy
> Senior Counsel, Patent Strategy & Licensing
> ☐  Apple Inc.
> pjm@apple.com
> +1 408 862 3172 (o)
> +1 408 506 1024 (m)
>
> This email message is for the sole use of the intended recipient(s) and may contain confidential

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

and privileged information. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message.
>
>
>
>

---

for the ReQuest TPM file.

--Patrick

Begin forwarded message:

From: Jack Lenell <jack.lenell@TekLawGroup.com>
Date: July 18, 2011 10:16:22 PM PDT
To: 'Patrick J Murphy' <pjm@apple.com>
Subject: Draft ReQuest Template RE: Audio ReQuest RE: new project --
PRIVILEGED/CONFIDENTIAL

Privileged and Confidential

Hi Patrick,

Enclosed for your review is a first draft of a ReQuest Discussion Template (in both PowerPoint
and PDF format.)

For obvious reasons, I've focused my arguments on 102(b) prior art references, which were
published more than a year prior to ReQuest's first effective filing date.

Also enclosed for your convenience are copies of my cited Kleinman, Krikorian and
VanDerMeulen documents.

==

All three references teach that files are "updated", which is that same word that is used in the
body of all of the ReQuest claims.  However, the ReQuest patent specification claim preamble
also uses the word "synchronization".  Just in case ReQuest tries to distinguish over the
Kleinman, Krikorian and VanDerMeulen documents by relying on "synchronization" in their
claim preamble, I've also included the Balasubramaniam 102(b)/103 prior art document, which
is entitled "What is a File Synchronizer".

==

As further background, I'm also including a copy of ReQuest's claim chart, which is part of

ReQuests patent file wrapper --via their petition to make special.

And I've also enclosed a copy of the UK Search Report (which inspired me to dig up the additional Kleinman, Krikorian and VanDerMeulen documents.)

Please let me know if you have any questions or concerns.

Best regards,

Jack

Cell 970-556-2199

From: Patrick J Murphy [mailto:pjm@apple.com]
Sent: Monday, July 11, 2011 11:28 AM
To: Jack Lenell
Subject: Re: Audio ReQuest RE: new project -- PRIVILEGED/CONFIDENTIAL

Thanks for the feedback on ReQuest. Left Cholnocky a v-mail. Will let you know what comes of my conversation with him.

Attached is the template. Very basic, as you will see. :)

Cheers,
Patrick

On Jul 11, 2011, at 10:13 AM, Jack Lenell wrote:

Privileged and Confidential

Hi Patrick,

Thanks for taking time to talk this morning. (Please send me a copy of the opinion template that you would like me to use for this matter.)

Here's a link to the website for Doug's law firm:

        http://www.tipatents.com/


Cheers,

Jack

Cell 970-556-2199

From: Doug Thomas [mailto:dthomas@tipatents.com]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000025332

Sent: Friday, July 08, 2011 10:21 PM
To: Patrick J Murphy; Jack Lenell
Subject: Re: new project -- PRIVILEGED/CONFIDENTIAL

Hi Patrick,

I spoke with Jack earlier today.  He has completed his review and was planning on
calling you Monday.

Regards,
Doug


From: Patrick J Murphy <pjm@apple.com>
To: Doug Thomas <dthomas@tipatents.com>; Jack Lenell <Jack.Lenell@TekLawGroup.com>
Sent: Fri, July 8, 2011 5:19:10 PM
Subject: Re: new project -- PRIVILEGED/CONFIDENTIAL

As an FYI, ReQuest got back to me today, indicating that they're going to sign an LOI on the
14th. Whether it's posturing or not, I'd like to have something from you guys to consider by
next Tuesday. Thanks.

Best,
Patrick

On Jun 29, 2011, at 8:57 AM, Doug Thomas wrote:

Thanks Patrick!

Unless you object, I'll work with Jack Lenell on this.  As you may know Jack has and
does work with me on Apple matters.

Regards,
Doug


From: Patrick J Murphy <pjm@apple.com>
To: Doug Thomas <dthomas@tipatents.com>
Sent: Tue, June 28, 2011 4:23:11 PM
Subject: Re: new project -- PRIVILEGED/CONFIDENTIAL

letter from ReQuest attached.

Thanks,
Patrick

On Jun 24, 2011, at 9:42 PM, Doug Thomas wrote:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                APL630DEF-WH-A0000025333

Hi Patrick,

Let me know if you still want to touch base on iCloud.

Cheers,
Doug


From: Doug Thomas <dthomas@tipatents.com>
To: Patrick J Murphy <pjm@apple.com>
Sent: Wed, June 15, 2011 2:27:47 PM
Subject: Re: new project -- PRIVILEGED/CONFIDENTIAL

**What is a good time to call?**


**From:** Patrick J Murphy <pjm@apple.com>
To: dthomas@tipatents.com

Sent: Tue, June 14, 2011 5:34:35 PM
Subject: new project -- PRIVILEGED/CONFIDENTIAL

Hey Doug,

Thanks for your voicemail.

If you have the bandwidth, I'd like you to help on a third-party matter. Let me know if you clear conflicts on ReQuest Inc. (http://www.request.com/company.asp). The patents of interest are attached.

Thanks,
Patrick

Patrick J Murphy
Senior Counsel, Patent Strategy & Licensing
☐  Apple Inc.

pjm@apple.com

+1 408 862 3172 (o)
+1 408 506 1024 (m)

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

   APL630DEF-WH-A0000025334

# Exhibit 3
# Filed Publicly Pursuant To Court Order [Dkt. No. 1415]

*ATTORNEY-CLIENT COMMUNICATION*
*PRIVILEGED & CONFIDENTIAL*

August 31, 2011

Mr. Patrick Murphy
Senior Counsel, Patent Strategy & Licensing
Apple Inc.
1 Infinite Loop
Cupertino, CA 95014
United States of America

Re:     Opinion Regarding Validity/Invalidity for U.S. Patent No. 7,577,757

Dear Patrick:

Pursuant to your request, I have undertaken review of U.S. Patent No. 7,577,757 (the " '757 patent") (see Exhibit A).  It is my opinion that each of the claims of the '757 patent is anticipated by, or in the alternative obvious in view of, prior art.

## I.  BACKGROUND

During the course of this study, I reviewed the '757 patent together with its file history and the file history of its parent application (U.S. Patent No. 7,136,934).  I also reviewed a number of prior art references that were not before the Examiner during prosecution of the '757 patent.  My study was based primarily on the foregoing together with my knowledge and study of the relevant patent statutes, rules, and case law.

The '757 patent, is presumably owned by ReQuest, Inc. and is directed to managing and playing digital music and media files on devices that are networked together.  With reference to its own FIG. 7, the '757 patent specifically points out the "AudioReQuest Pro" devices as examples of such devices that can be networked together for managing and playing digital music and media files.  Specifically, the '757 patent states:

> "Referring now to FIG. 7, a block diagram 700 of an embodiment of the instant invention is depicted. A central storage and interface device 702 , which can be a AudioReQuest Pro, produced by ReQuest, Inc. is shown. It is noted that AudioReQuest is a trademark of ReQuest, Inc." ('757 patent 8:17-21)

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 2 of 27

AudioReQuest Pro (ARQ Pro) is a central storage device that digitally records music from CDs using its built-in CD player. In addition, it can record from analog sources such as radio, Long Playing records (LPs), and audiocassettes through its line-in recording capability. Further, it can record and transfer digital music from the PC and Internet sites. Playlists are created on the system by having a specific user who categorizes song choices for current or later playing. Song and Music Navigation information can be viewed on the built-in LCD, a television interface, or on other devices such as home automation control systems and personal computers through serial and Ethernet connections. Music can be either transferred or streamed to other devices 714 such as digital portable players, streaming network devices, web browsers, personal computers, online websites and servers, and other ReQuest products through network and universal serial bus (USB) connections." ('757 patent 8:45-61)

ReQuest, Inc. claims priority to an original patent application for their AudioReQuest Pro (ARQ Pro) device filed on June 19th, 2001, which ultimately matured into the '757 patent.  However, *more than a year prior* to filing their original patent application, Request Inc, offered the AudiReQuest  (ARQ1) device for sale on their online store and elsewhere.  The AudiReQuest  (ARQ1) device is Request Inc.'s predecessor model to its AudioReQuest Pro (ARQ Pro) device, and it is believed that the two devices share many substantially similar functionalities.  For example, both had similar CD players, hard drive storage and Ethernet networking hardware, in addition to Universal Serial Bus (USB) connectors.  Functionalities of the AudioReQuest (ARQ1) are disclosed in the web page archive of the WWW.REQUEST.COM website of Request, Inc., which the archive.org repository has dated as May 20th, 2000 or earlier.  (See Exhibit B.)

Because of the substantial similarities in the device functionalities, I believe that a reasonable Patent Examiner may have found ReQuest Inc.'s offer of the AudiReQuest (ARQ1) device for sale (more than one year earlier) to be relevant to patentability of the AudioReQuest Pro (ARQ Pro) device.  I believe that the failure by ReQuest Inc. and its employee inventors to disclose these known facts to the United States Patent Office may have been a breach of their Duty of Candor.

As a result of some prior art searching, I have identified several prior art references that were not considered by the Patent Examiner.  Initially, I note that *synchronizing files* (such as synchronizing digital music and media files) on networked multimedia computers was known in the art well before the priority filing for the '757 patent.  As one specific example, a Multimedia Personal Computer ("MPC") running Microsoft Windows 98 software at that time (more than a year prior to ReQuest Inc.'s filing their original patent application) played media files, were networked together, did

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    APL630DEF-WH-A0000024927

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 3 of 27

file synchronization between networked MPC's using the "Briefcase" tool, and further disclosed or suggested everything else that ReQuest Inc. attempts to claim in their '757 patent.

Moreover, in addition to the Windows '98 "Briefcase" network file synchronizer and its companion Windows '98 media player, my review has also uncovered a number of additional prior art references, which were published or patented more than a year prior to the date when the original ReQuest Inc. patent application was filed, but which were not ever considered by the U.S. Patent Examiner. For example, U.S. Patent No. 5,959,945 and U.S. Patent No. 5,832,448 are other prior art references that disclose or suggest everything else that ReQuest Inc. attempts to claim in their '757 patent.

As discussed in further detail subsequently herein, it is my opinion that the '934 patent is anticipated by, or in the alternative obvious in view of, at least Microsoft Windows 98, U.S. Patent No. 5,959,945 or U.S. Patent No. 5,832,448.

## II.  LEGAL STANDARDS

### A. Invalidity Under 35 U.S.C. § 102 — Anticipation

In order to anticipate, a single prior art reference must disclose each and every limitation of the claimed invention, either expressly or inherently. Telemac Cellular Corp. v. ToppTelecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001). There must be no difference between the claimed invention and the reference disclosure as viewed by a person of ordinary skill in the field of the invention. See Scripps Clinic & Res. Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991). Determining whether the claims of a patent are anticipated is a two-step process. The claims are first interpreted to determine their scope. Next, the properly-construed claims are compared to the anticipatory reference. Medichem, S.A. v. Rolabo, Si., 353 F.3d 928, 933 (Fed. Cir. 2003).

### B. Invalidity Under 35 U.S.C. § 103 — Obviousness

Patent claims are invalid as obvious when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made by a person having ordinary skill in the art." 35 U.S.C. § 103(a). A patent "composed of several elements is not

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024928

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 4 of 27

proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." KSR Intl Co.v. Teleflex, Inc., 550 U.S. 398, 418, 127 S. Ct. 1727 (2007). When a patent, however, "simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." Id. at 417 (internal quotations omitted). "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103." Id. at 419.

## III. ARGUMENT

As set forth below, it is my opinion that claims 1-15 of the '757 patent are anticipated by each of the Microsoft Windows 98 Resource Kit, U.S. Patent No. 5,959,945 ("Kleiman"), and U.S. Patent No. 5,832,448 ("Krikorian"). Alternatively, claims 1-15 of the '757 patent are obvious in view of the Microsoft Windows 98 Resource Kit, U.S. Patent No. 5,959,945 ("Kleiman") and U.S. Patent No. 5,832,448 ("Krikorian").

### A. Claims of the '757 patent are anticipated by Microsoft Windows 98 Resource Kit

#### 1. *Microsoft Windows 98 Resource Kit is prior art under 35 USC § 102(b)*

The Microsoft Windows 98 Resource Kit, ISBN: 1572316446, was published by Microsoft Press on 7/1/1998. (See excerpts in Exhibit C.) Because the original ReQuest, Inc. patent application was filed more than a year later on June 19th, 2001, the Microsoft Windows 98 Resource Kit is prior art under 35 USC § 102(b).

#### 2. *Microsoft Windows 98 Resource Kit Discloses Every Claim Limitation*

As demonstrated below, the Microsoft Windows 98 Resource Kit anticipates each and every claim of the '757 patent.

#### Claim 1

#### 1. A system for synchronizing devices in a multimedia environmental, the system comprising:

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 5 of 27

**at least one central storage and interface device, wherein audio, video, or photographic data, including content information and content management information, relating to at least one user, are stored in digital form; and**

**at least one zone, each zone having at least one zone specific storage and interface device capable of storing or interfacing with information stored in the central storage and interface device,**

**wherein audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and interface device and the central storage and interface device, are updated in relation to the zone specific storage and interface devices and the central storage and interface device,**

**whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.**

In Chapter 12 entitled "Software", the Windows 98 Resource Kit teaches the claimed storage and interfacing with such digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"):

=========================================================

**"Chapter 12 Software**

Windows 98 ships with a DVD player named Dvdplay.exe. Dvdplay.exe is a stand-alone executable and has no program-specific DLLs associated with it. Like most applets shipped with Windows, DVDPlay has only basic functionality and may be replaced by a third-party application. If you have a supported decoder, DVD Player can be installed and uninstalled from the Control Panel using the Add/Remove Programs option.

**Note** When the DVD Player is launched, it searches all local drives in alphabetical order, starting with C, looking for a folder called Video_TS. When this folder is located, the data file within it is loaded, and video streaming begins. If this folder exists on a drive that comes before the DVD drive, the player will try to play the data in the first folder it finds. This is also an issue with systems that have multiple DVD drives.

The basic DVD program is shown in Figure 12.4. It contains, from left to right, buttons for choosing a channel; VCR style controls for controlling playback; and menu navigation buttons for using the on-screen menu choices.



**Figure 12.4 Basic DVD player**

Recording, Editing, and Playing Audio

   Windows 98 multimedia services provide extensible, device-independent audio support. Windows 98 features services for sound control for computers that have sound cards and for waveform-audio, MIDI, and mixer devices.

With audio support in Windows 98, users can do the following:

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 6 of 27

- Use Media Player or ActiveMovie Control to play WAV or MIDI files.
- Use applications that take advantage of DirectSound audio acceleration.
- Use the Sound option in Control Panel to assign sound clips to play each time a specific event occurs.
- Use CD Player to play audio CDs.
- Use Sound Recorder to record sound.
- Use built-in Windows 98 OLE support to copy or link audio clips in other documents. For more information, see Chapter 25, "Application Support." "

==============================================================

For the reasons discussed in Chapter 12 of the Windows 98 Resource Kit, Multimedia Personal Computers ("MPC's") running Windows 98 are recognized as each providing a respective multimedia environment.

Further, in Chapter 19 entitled "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches the claimed system for synchronizing devices in a multimedia environment. More specifically, Chapter 19 describes synchronizing MPC's running Windows 98, by updating files over a network. Windows 98 provides the multimedia environment:

==============================================================

**"Chapter 19 - Remote Networking and Mobile Computing**

**Using Briefcase to Synchronize Files**

If you can use a portable computer and a desktop computer, or you are connected to a network, you must constantly work to keep the files synchronized. Windows 98 Briefcase minimizes this task by keeping track of the relationships between files on two or more computers.

With Briefcase, you can do the following:

- Create a Briefcase folder.
- Add files to Briefcase.
- Check the status of files in Briefcase and their related files.
- Update related files, either individually or all at once.
- Split related files to maintain them separately.

Windows 98 provides a set of OLE interfaces that allow applications to bind reconciliation handlers to it, track the contents of Briefcase, and define the outcome of any reconciliation on a class-by-class basis. For example, when both the file in Briefcase and its synchronized copy outside have changed, Windows 98 calls the appropriate reconciliation handler to merge the two files. This could be handy when several users are simultaneously updating one large document.

**Caution**

Do not place one Briefcase inside another Briefcase. You cannot drag a file into a Briefcase that is in another Briefcase.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    APL630DEF-WH-A0000024931

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 7 of 27

## Creating and Configuring a Briefcase

To install Briefcase during Windows 98 Setup, you must run Setup from the DOS prompt and choose Custom or Portable as the setup type. You can also install Briefcase after installing Windows 98.

**To install Briefcase after Windows 98 installation**

1. In Control Panel, double-click Add/Remove Programs.
2. Click the **Windows Setup** tab, in the **Components** list click **Accessories**, and then click **Details**.
3. In the **Accessories** dialog box, click **Briefcase**, and then click **OK**.

If you install Briefcase, it appears as an icon on your Windows 98 desktop. To run Briefcase, double-click its icon.

**To uninstall Briefcase**

• Drag the Briefcase icon to the Recycle bin.

**Tip**

You can use Briefcase to synchronize files between a portable computer running Windows 98 and a desktop computer running Windows NT Server 3.5 or later.

## Updating Files with Briefcase

When you update files by using Briefcase, Windows 98 automatically replaces unmodified files with modified files. If both files have changed, Windows 98 calls the appropriate application (if available) to merge the disparate files. The host and guest can be connected in the following ways:

• You can copy files from your desktop to Briefcase and then load Briefcase onto your portable computer. If you are using a Plug and Play BIOS docking station, Briefcase automatically updates files when you later dock your portable computer.
• You can update files using Briefcase and a floppy disk. For information, see Windows 98 Help.
• You can synchronize files between a portable computer and a network if the portable computer has a network connection."

=====================================================================================

In view of the foregoing, using "Briefcase", the Microsoft Windows 98 Resource Kit discloses Multimedia Personal Computers ("MPC's") in "zones" that are "updated". I am assuming that a broad interpretation of "zones" would be necessarily proffered by ReQuest.

In particular, a "Briefcase" of a first MPC can update a corresponding "Briefcase" of a second MPC to synchronize files. In this example, the first MPC is doing the updating of the second MPC, so the first MPC can be recognized as the claimed "central storage and interface device". Since the second MPC is getting updated, it can be recognized as the "zone specific storage and interface device".

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                        APL630DEF-WH-A0000024932

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 8 of 27

Of course, the selection of first and second MPC's in the example is arbitrary. It could go the other way. The second MPC can update the first MPC to synchronize files. Additionally, updates can go both directions. Window 98 "Briefcase" can synchronize in both directions between first and second MPCs.

Accordingly, in view of all of the foregoing, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 1 of the '757 Patent.

### Claim 2

**2. The system of claim 1, further comprising a local area network (LAN) coupled to at least one zone specific storage and interface device with the central storage and interface device, wherein the interconnections within the LAN is hardwired or wireless.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches hardwired LAN interconnections. Wireless WAN for use with LAN is also taught. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 2 of the '757 Patent.

### Claim 3

**3. The system of claim 1, further comprising a wide area network (WAN) coupling at least one zone specific storage and interface device with the central storage and interface device.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches wide area networks (WANs). Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 3 of the '757 Patent.

### Claim 4

**4. The system of claim 1, further comprising a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially identical content information and content management information displayed and manipulated in anyone of the zones.**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 9 of 27

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed storage and output of digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's").  In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked MPC's running Windows 98 using "Briefcase".  Two or more synchronized MPC's have substantially the same (identical) files in their "Briefcase".  Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 4 of the '757 Patent.

### Claim 5

**5. The system of claim 1, further comprising an output device coupled to the at least one central storage and interface, wherein audio, video, or photographic information is outputted.**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed storage and output of digital music and media files using Windows 98 software on a Multimedia Personal Computer ("MPC").  Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 5 of the '757 Patent.

### Claim 6

**6. The system of claim 1, further comprising a server, wherein audio, video, and photographic information contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device are stored therein and updated at a predetermined time in relation with other zone specific storage and interface devices as well as the central storage and interface device, coupled to the WAN.**

In Chapter 12 "Multimedia" Windows 98 Resource Kit teaches the claimed storage of digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's").  In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked MPC's running Windows 98 using "Briefcase".  A time when files are updated or synchronized can be determined by a user at the Windows 98 user interface of "Briefcase".  In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches using NT Server and wide area networks (WANs). Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 6 of the '757 Patent.

### Claim 7

**7. The system of claim 1, further comprising an other device coupled to the central storage and interface device via a network connection other than the LAN or WAN.**

In the Microsoft Windows 98 Resource Kit, Chapter 11 entitled "Printing, Imaging, and Fonts" teaches device connection to the Multimedia Personal Computer ("MPC") running Windows 98 using Universal Serial Bus (USB). Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 7 of the '757 Patent.

### Claim 8

**8. The system of claim 1, wherein the at least one user pre-stores the audio, video, and photographic information by way of using a device comprising the central storage and interface device, and the zone specific storage and interface device.**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed storage of digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"). In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked MPC's running Windows 98 using "Briefcase". Files are recognized as pre-stored on one MPC before being synchronized using "Briefcase" to update the files on another networked MPC. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 8 of the '757 Patent.

### Claim 9

**9. The system of claim 1, wherein the central storage and interface device comprises means for transmitting or receiving information to or from the ozone specific storage and interface device.**

In Chapter 12 "Software" Windows 98 Resource Kit teaches the claimed storage of digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"). In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked MPC's running Windows 98 using "Briefcase". In synchronizing files to or from each MPC, there is the transmitting or receiving of information to or from MPCs. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 9 of the '757 Patent.

### Claim 10

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    APL630DEF-WH-A0000024935

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 11 of 27

**10. The System of claim 1, wherein the zone specific storage and interface device comprises means for transmitting or receiving information to or from the central storage and interface device.**

In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked Multimedia Personal Computers ("MPC's") running Windows 98 using "Briefcase". In synchronizing files to or from each MPC, there is the transmitting or receiving of information to or from MPCs. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 10 of the '757 Patent.

### Claim 11

**11. The system of claim 1, wherein the central storage and interface device is capable of converting analog information into digital form.**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed conversion of analog sound information into digital form, for example using "sound recorder". Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 11 of the '757 Patent.

### Claim 12

**12. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a personal computer (PC).**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed storage and interfacing with digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"). In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches networking. Networking can be between Multimedia Personal Computers ("MPC's") and/or Personal Computers ("PC's") in various combinations. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 12 of the '757 Patent.

### Claim 13

**13. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a wireless mobile device.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" use of wireless WAN is taught. In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches networking

with mobile devices. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 13 of the '757 Patent.

### Claim 14

**14. The system of claim 1 wherein the central storage and interlace device is disposed to be coupled to a wireless mobile device via LAN.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches LAN interconnections. Wireless WAN for use with LAN is also taught. In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches networking with mobile devices. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 14 of the '757 Patent.

### Claim 15

**15. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via WAN.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches LAN interconnections. Wireless WAN for use with LAN is also taught. In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches networking with mobile devices. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 15 of the '757 Patent.

### B.  Claims of the '757 patent are anticipated by Kleiman

#### 1.   Kleiman is prior art under 35 USC § 102(b)

U.S. Patent No. 5,959,945 ("Kleiman") was patented 9/28/1999. Because the orignial ReQuest, Inc. patent application was filed more than a year later on June 19th, 2001, Kleiman is prior art under 35 USC § 102(b).

#### 3.   Kleiman Discloses Every Claim Limitation

As demonstrated below, Kleiman anticipates each and every claim of the '757 patent.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024937

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 13 of 27

### Claim 1

**1. A system for synchronizing devices in a multimedia environmental, the system comprising:**

**at least one central storage and interface device, wherein audio, video, or photographic data, including content information and content management information, relating to at least one user, are stored in digital form; and**

**at least one zone, each zone having at least one zone specific storage and interface device capable of storing or interfacing with information stored in the central storage and interface device,**

**wherein audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and interface device and the central storage and interface device, are updated in relation to the zone specific storage and interface devices and the central storage and interface device,**

**whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 14 of 27



FIG. 1

Figure 1 of Kleiman shows central storage that selectively updates digital video, music, images and management files over a LAN or WAN for a plurality of multimedia personal jukeboxes at various in-home locations based on user selections. Assuming a broad interpretation of "zones" as would be necessarily proffered by ReQuest, Kleinman discloses such "zones" in the form of various locations where multimedia client computers (IT1 – IT9) and their users can be situated (6:21-40; 6:60-67; and 7:1-4). The multimedia client computers are "updated" by receiving updated digital video, music, images and management files over a LAN or WAN, based on user selections (6:8-13; 6:41-49; 7:5-10; 9:21-67; 10:1-7).

Accordingly, I believe that Kleiman anticipates all of the limitations of claim 1 of the '757 Patent.

**Claim 2**

**2. The system of claim 1, further comprising a local area network (LAN) coupled to at least one zone specific storage and interface device with the central storage and**

**interface device, wherein the interconnections within the LAN is hardwired or wireless.**

Kleiman teaches hardwired LAN interconnections.  Kleiman teaches also teaches using wireless Local Multipoint Distribution Service (LMDS), which is bi-directional and based on cellular-like technology.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 2 of the '757 Patent.

### Claim 3

**3. The system of claim 1, further comprising a wide area network (WAN) coupling at least one zone specific storage and interface device with the central storage and interface device.**

Kleiman teaches wide area networks (WANs).  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 3 of the '757 Patent.

### Claim 4

**4. The system of claim 1, further comprising a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially identical content information and content management information displayed and manipulated in anyone of the zones.**

In Kleiman, personal jukebox players of multimedia client computers are "updated" by receiving updated digital video, music, images and management files over a LAN or WAN, based on user selections (6:8-13; 6:41-49; 7:5-10; 9:21-67; 10:1-7). Updates match user selections. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 4 of the '757 Patent.

### Claim 5

**5. The system of claim 1, further comprising an output device coupled to the at least one central storage and interface, wherein audio, video, or photographic information is outputted.**

In Kleiman, multimedia client computers can play the updated digital video, music, images and management files (6:8-13; 6:41-49; 7:5-10; 9:21-67; 10:1-7). Accordingly, I believe that Kleiman anticipates all of the limitations of claim 5 of the '757 Patent.

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 16 of 27

### Claim 6

**6. The system of claim 1, further comprising a server, wherein audio, video, and photographic information contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device are stored therein and updated at a predetermined time in relation with other zone specific storage and interface devices as well as the central storage and interface device, coupled to the WAN.**

Kleiman teaches a client/server environment, in which multimedia client computers are "updated" by receiving updated digital video, music, images and management files over a LAN or WAN, based on user selections (6:8-13; 6:41-49; 7:5-10; 9:21-67; 10:1-7). The system of Kleiman can request that the new music or hierarchy be sent within a given time. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 6 of the '757 Patent.

### Claim 7

**7. The system of claim 1, further comprising an other device coupled to the central storage and interface device via a network connection other than the LAN or WAN.**

FIG. 1 of Kleinman shows multimedia client computers (IT1 – IT9) in various locations, which are in communication with central storage in various different ways. IT1 in FIG. 1, uses an asynchronous analog telephone line for the exchange of information. IT2 uses an integrated digital switched network for the exchange of information. IT3 uses removable discs to store information related to requests. IT5 uses an asymmetric digital subscriber line to exchange information. IT6 uses switched digital video or a hybrid-fiber coaxial cable modem. IT7 uses terrestrial, wireless technologies. IT8 uses a satellite receiver. IT9 uses a portable computer to capture transaction and statistical information from the IT, and downloads contents required by the IT. The connection between the IT and the Operation Service Center (OSC) is through a port or LAN. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 7 of the '757 Patent.

### Claim 8

**8. The system of claim 1, wherein the at least one user pre-stores the audio, video, and photographic information by way of using a device comprising the central storage and interface device, and the zone specific storage and interface device.**

Multimedia client computer IT3 shown in FIG. 1 of Kleiman uses removable discs to store all information related to requests. Information can be pre-stored on removable

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 17 of 27

discs, prior to being loaded onto IT3 by an operator. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 8 of the '757 Patent.

### Claim 9

**9. The system of claim 1, wherein the central storage and interface device comprises means for transmitting or receiving information to or from the ozone specific storage and interface device.**

In Kleiman, there is the transmitting or receiving of information to or from multimedia client computers. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 9 of the '757 Patent.

### Claim 10

**10. The System of claim 1, wherein the zone specific storage and interface device comprises means for transmitting or receiving information to or from the central storage and interface device.**

In Kleiman, there is the transmitting or receiving of information to or from central storage.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 10 of the '757 Patent.

### Claim 11

**11. The system of claim 1, wherein the central storage and interface device is capable of converting analog information into digital form.**

I believe that that "sound recorder" capability is understood as present on multimedia workstations, of the type taught by Kleiman, and therefore is inherently or implicitly present in Kleiman.  (Kleiman teaches a "VET factory" in the Global OSC GI that produces VET envelopes which are transferred throughout the system.  The "VET factory" has one or more *multimedia workstations* with editing and authoring capabilities, temporary storage, content capture units and an internal connection to the OSC network hub.)  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 11 of the '757 Patent.

### Claim 12

**12. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a personal computer (PC).**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 18 of 27

Multimedia client computer IT9 is coupled with a portable computer CM9 to capture transaction and statistical information from the IT, and downloads contents required by the IT.  Weighing all of the foregoing, I believe that teaching of a personal computer is inherent or implicit in Kleiman.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 12 of the '757 Patent.

### Claim 13

**13. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a wireless mobile device.**

Kleiman teaches using wireless Local Multipoint Distribution Service (LMDS), which is bi-directional and based on cellular-like technology.  Kleiman teaches that multimedia client computer IT9 uses a portable computer to capture transaction and statistical information from the IT, and downloads contents required by the IT.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 13 of the '757 Patent.

### Claim 14

**14. The system of claim 1 wherein the central storage and interlace device is disposed to be coupled to a wireless mobile device via LAN.**

Kleiman teaches networking central storage using a LAN.  Kleiman also teaches using wireless Local Multipoint Distribution Service (LMDS), which is bi-directional and based on cellular-like technology.  Kleiman teaches that multimedia client computer IT9 uses a portable computer to capture transaction and statistical information from the IT, and downloads contents required by the IT.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 14 of the '757 Patent.

### Claim 15

**15. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via WAN.**

Kleiman teach networking central storage using a WAN.  Kleiman also teaches using wireless Local Multipoint Distribution Service (LMDS), which is bi-directional and based on cellular-like technology.  Kleiman teaches that multimedia client computer IT9 uses a portable computer to capture transaction and statistical information from the IT, and downloads contents required by the IT.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 15 of the '757 Patent.

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 19 of 27

### C.  Claims of the '757 patent are anticipated by Krikorian

#### 2.  *Krikorian is prior art under 35 USC § 102(b)*

U.S. Patent No. 5,832,448 ("Krikorian") was patented 3/10/1998.  Because the original ReQuest, Inc. patent application was filed more than a year later on June 19th, 2001, Krikorian is prior art under 35 USC § 102(b).

#### 4.  *Krikorian Discloses Every Claim Limitation*

As demonstrated below, Krikorian anticipates each and every claim of the '757 patent.

#### Claim 1

**1. A system for synchronizing devices in a multimedia environmental, the system comprising:**

**at least one central storage and interface device, wherein audio, video, or photographic data, including content information and content management information, relating to at least one user, are stored in digital form; and**

**at least one zone, each zone having at least one zone specific storage and interface device capable of storing or interfacing with information stored in the central storage and interface device,**

**wherein audio, video, or photographic information, relating to at least one user, contained within the zone specific storage and interface device and the central storage and interface device, are updated in relation to the zone specific storage and interface devices and the central storage and interface device,**

**whereby the at least one user can be situated in any one of the zones and access the audio, video, or photographic information related to the at least one user.**

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 20 of 27



Fig-6

The text and figures of Krikorian make references to Microsoft Windows and Apple Macintosh user interfaces for playing digitized data.  Accordingly, I can recognize the end user computers of Krikorian as multimedia computers.  Figure 6 of Krikorian shows a central computer that updates screen saver video, music, images and management files over the Internet in response to requests from end user multimedia computers at various locations.  Assuming a broad interpretation of "zones" as would be necessarily proffered by ReQuest, Krickorian discloses "zones" in the form of various locations where multimedia computers can be situated (208, 210 and 212) and their end users can be situated (7:35-45).  The end user multimedia computers are "updated" by receiving and storing updated screen saver video, music, images and management files, over the Internet in response to requests from end user multimedia computers (3:3-17; and 5:10-33)

Accordingly, I believe that Krikorian anticipates all of the limitations of claim 1 of the '757 Patent.

**Claim 2**

**2. The system of claim 1, further comprising a local area network (LAN) coupled to at least one zone specific storage and interface device with the central storage and interface device, wherein the interconnections within the LAN is hardwired or wireless.**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024945

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 21 of 27

Krikorian expressly teaches a communication link that is either wired or wireless. Further, Krikorian teaches using the Internet.  I can recognized the Internet as a network of computer networks, encompassing Local Area Networks (LANs) as well as Wide Area Networks (WANs).  Accordingly, I believe that Krikorian anticipates all of the limitations of claim 2 of the '757 Patent.

### Claim 3

**3. The system of claim 1, further comprising a wide area network (WAN) coupling at least one zone specific storage and interface device with the central storage and interface device.**

Krikorian expressly teaches a communication link that is either wired or wireless. Further, Krikorian teaches using the Internet.  I can recognized the Internet as a network of computer networks, encompassing Local Area Networks (LANs) as well as Wide Area Networks (WANs).   Accordingly, I believe that Krikorian anticipates all of the limitations of claim 3 of the '757 Patent.

### Claim 4

**4. The system of claim 1, further comprising a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially identical content information and content management information displayed and manipulated in anyone of the zones.**

In Krikorian, media players of end user multimedia computers are "updated" by receiving and storing updated screen saver video, music, images and management files, over the Internet in response to requests from end user multimedia computers (3:3-17; and 5:10-33).  Updates match requests from end user multimedia computers.  Accordingly, I believe that Krikorian anticipates all of the limitations of claim 4 of the '757 Patent.

### Claim 5

**5. The system of claim 1, further comprising an output device coupled to the at least one central storage and interface, wherein audio, video, or photographic information is outputted.**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    APL630DEF-WH-A0000024946

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 22 of 27

In Krikorian, end user multimedia computers can play the updated screen saver video, music, images and management files (3:3-17; and 5:10-33)   Accordingly, I believe that Krikorian anticipates all of the limitations of claim 5 of the '757 Patent.

### Claim 6

**6. The system of claim 1, further comprising a server, wherein audio, video, and photographic information contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device are stored therein and updated at a predetermined time in relation with other zone specific storage and interface devices as well as the central storage and interface device, coupled to the WAN.**

Krikorian teaches a central file server, in which end user multimedia computers are "updated" by receiving and storing updated screen saver video, music, images and management files, over the Internet in response to requests from end user multimedia computers (3:3-17; and 5:10-33).  The Internet encompasses Wide Area Networks (WANs).  Krikorian teaches that updating occurs at desired intervals.  Accordingly, I believe that Krikorian anticipates all of the limitations of claim 6 of the '757 Patent.

### Claim 7

**7. The system of claim 1, further comprising an other device coupled to the central storage and interface device via a network connection other than the LAN or WAN.**

Krikorian teaches using the Internet.  The Internet inherently or implicitly couples through numerous devices, encompassing Local Area Networks (LANs) and Wide Area Networks (WANs) as well as network connections other than LANs and WANs.  Accordingly, I believe that Krikorian anticipates all of the limitations of claim 7 of the '757 Patent.

### Claim 8

**8. The system of claim 1, wherein the at least one user pre-stores the audio, video, and photographic information by way of using a device comprising the central storage and interface device, and the zone specific storage and interface device.**

Krikorian teaches using removable compact discs (CDs) with CD ROM drives for storing digitized data.  Such digitized data can be pre-stored on removable compact discs, prior to being loaded onto end user multimedia computers.  Accordingly, I believe that Krikorian anticipates all of the limitations of claim 8 of the '757 Patent.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024947

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 23 of 27

### Claim 9

**9. The system of claim 1, wherein the central storage and interface device comprises means for transmitting or receiving information to or from the ozone specific storage and interface device.**

In Krikorian, there is transmitting or receiving of information to or from end user multimedia computers. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 9 of the '757 Patent.

### Claim 10

**10. The System of claim 1, wherein the zone specific storage and interface device comprises means for transmitting or receiving information to or from the central storage and interface device.**

In Krikorian, there is transmitting or receiving of information to or from a central computer having storage. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 10 of the '757 Patent.

### Claim 11

**11. The system of claim 1, wherein the central storage and interface device is capable of converting analog information into digital form.**

Krikorian does not explicitly teach conversion of analog sound information into digital form for example, using a "sound recorder". However, the text and figures of Kriorian make references to Microsoft Windows and Apple Macintosh user interfaces for playing digitized data. I believe sound recorder capability is present on multimedia computers, of the type taught by Krikorian, and therefore is implicitly present in Krikorian. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 11 of the '757 Patent.

### Claim 12

**12. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a personal computer (PC).**

Krikorian references computers running Microsoft Windows and Apple Macintosh user interfaces. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 12 of the '757 Patent.

### Claim 13

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 24 of 27

**13. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a wireless mobile device.**

Krikorian teaches using a wireless communication link.  Krikorian further teaches using a portable or laptop computer.  Accordingly, I believe that Krikorian anticipates all of the limitations of claim 13 of the '757 Patent.

### Claim 14

**14. The system of claim 1 wherein the central storage and interlace device is disposed to be coupled to a wireless mobile device via LAN.**

Krikorian teaches a central file server having storage, and connected to the Internet.  The Internet inherently encompasses Local Area Networks (LANs).  Krikorian further teaches using a wireless communication link and using a portable or laptop computer.  Accordingly, I believe that Krikorian anticipates all of the limitations of claim 14 of the '757 Patent.

### Claim 15

**15. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via WAN.**

Krikorian teaches a central file server having storage, and connected to the Internet.  The Internet inherently encompasses Wide Area Networks (WANs).  Krikorian further teaches using a wireless communication link and using a portable or laptop computer.  Accordingly, I believe that Krikorian anticipates all of the limitations of claim 15 of the '757 Patent.

### D. In the Alternative, the Claims 1-15 of the '757 Patent Are Obvious in View of Each of Microsoft Windows 98 Resource Kit, Kleiman and Krikorian, Alone or in Combination with Balasubramaniam, VanDerMeulen and/or AudiReQuest  (ARQ1)

For the reasons stated above, it is my opinion that claims 1-15 of the '757 patent are anticipated by each of the Microsoft Windows 98 Resource Kit, U.S. Patent No. 5,959,945 ("Kleiman"), and U.S. Patent No. 5,832,448 ("Krikorian").   Alternatively, it is my opinion that the Microsoft Windows 98 Resource Kit, Kleiman and Krikorian, alone or in combination with Balasubramaniam (see Exhibit D), VanDerMeulen (see Exhibit E) and/or ReQuest, Inc.'s own offer for sale of the AudiReQuest  (ARQ1) device, each render claims 1-15 of the '757 patent obvious.  As explained in detail above, the

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 25 of 27

Microsoft 98 Windows Resource Kit, Kleiman or Krikorian each disclose synchronizing or updating digital music and media files on networked multimedia computers.

As explained previously, more than a year prior to ReQuest filing their patent application, numerous other network based file synchronizers (in additional to Windows 98 "Briefcase") were already well known, as discussed in detail in Balasubramaniam. Further, more than a year prior to ReQuest filing their patent application, VanDerMeulen discussed a network of consumer electronic devices for media storage and playback, which included cataloging, archiving, retrieval and playback of collections of digital video, cover images, digital music and management files relating to a user.

Similarly, more than a year prior to filing their patent application on their AudioReQuest Pro (ARQ Pro) device, Request Inc, offered the AudioReQuest (ARQ1) device for sale on their online store and elsewhere. The AudioReQuest (ARQ1) device is Request Inc.'s predecessor model to its AudioReQuest Pro (ARQ Pro). As explained previously, I believe that the two devices share many substantially similar functionalities.

It would have been obvious to one of ordinary skill in the art at the time of the alleged invention of the '757 patent to combine the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian with Balasubramaniam, VanDerMeulen and/or ReQuest, Inc.'s own AudiReQuest (ARQ1) device, because all of these references are directed to the same fundamental technology—namely file synchronizing or updating—and combining the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian with Balasubramaniam, VanDerMeulen and/or ReQuest, Inc.'s own AudiReQuest (ARQ1) device would simply involve arranging old elements, with each performing the same function it had been known to perform to thereby yield expected results.

Thus, claim 1 of the '757 patent is, at a minimum, obvious in view of the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian, either alone or in combination with Balasubramaniam, VanDerMeulen and/or ReQuest, Inc.'s own AudiReQuest (ARQ1) device. Further, for the detailed reasons stated above, the Microsoft Windows 98 Resource Kit, Kleiman and Krikorian teach each of the limitations of Claims 2-15 of the '757 patent. Accordingly, Claims 2-15 of the '757 patent are also obvious in view of the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian, either alone or in combination with Balasubramaniam, VanDerMeulen and/or ReQuest, Inc.'s own AudiReQuest (ARQ1) device.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 26 of 27

## VIII.   CONCLUSION

For the foregoing reasons, according to my review, my opinion is that each of the claims of the '757 patent are likely either anticipated by, or unpatentable over, the prior art as discussed herein.

Nevertheless, it should be understood that the opinions and conclusions contained herein, while well-founded, are my opinions of the likelihood that a court will find that the claims of a U.S. patent are invalid, even though the patent claims are presumed valid by statute.  Different persons may reach different conclusions based on the same facts.

Additionally, litigation is an unpredictable process, and performance and credibility of witnesses, unanticipated documents, the particular court involved, and a myriad of other factors, including equitable considerations separate from the patent issues, often influence the outcome of the litigation.  Therefore, while this opinion is based upon analysis conducted in accordance with controlling legal guidelines, I cannot guarantee Apple success should these issues be litigated.

One consideration is the statutory presumption of patent validity, which gives the patentee an important advantage in litigation.  Another consideration is that certain issues in patent cases, including factual issues relating to patent validity, can be determined by juries.  A further consideration is that the appellate process has rendered decisions that increase the chances for upholding patent validity and this influences the decisions rendered by lower courts.

Accordingly, it is possible that a court or jury could reach conclusions different from those expressed in this opinion.

This opinion and the information supplied to you in connection with this matter are prepared for the benefit of Apple Inc.  This is a confidential communication expressing my legal opinions, which is provided solely to Apple.

I assume that only Apple will rely on my opinion, and I have structured my considerations consistent with the limited expected use of, and reliance on my opinion.  Therefore, no third party should rely on my opinion.  This opinion is an attorney-client privileged communication and disclosure of the opinion to third parties may waive any attorney-client privilege.

Should you have any questions regarding the opinions expressed herein, or the basis for such findings, please feel free to contact me.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                APL630DEF-WH-A0000024951

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 27 of 27


Sincerely,


TECHNOLOGY AND INNOVATION LAW GROUP

A Professional Corporation


Jack Lenell, Esq.

# Exhibit 4
# Filed Publicly Pursuant To Court Order [Dkt. No. 1415]

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 1 of 27

*ATTORNEY-CLIENT COMMUNICATION*
*PRIVILEGED & CONFIDENTIAL*


August 31, 2011

Mr. Patrick Murphy
Senior Counsel, Patent Strategy & Licensing
Apple Inc.
1 Infinite Loop
Cupertino, CA 95014
United States of America


Re:     Opinion Regarding Validity/Invalidity for U.S. Patent No. 7,136,934


Dear Patrick:

Pursuant to your request, I have undertaken review of U.S. Patent No. 7,136,934 (the " '934 patent") (see Exhibit A). It is my opinion that each of the claims of the '934 patent is anticipated by, or in the alternative obvious in view of, prior art.


## I.  BACKGROUND

During the course of this study, I reviewed the '934 patent together with its file history and the file history of its child application (U.S. Patent No. 7,577,757). I also reviewed a number of prior art references that were not before the Examiner during prosecution of the '934 patent. My study was based primarily on the foregoing together with my knowledge and study of the relevant patent statutes, rules, and case law.

The '934 patent, is presumably owned by ReQuest, Inc. and is directed to managing and playing digital music and media files on devices that are networked together. With reference to its own FIG. 7, the '934 patent specifically points out the "AudioReQuest Pro" devices as examples of such devices that can be networked together for managing and playing digital music and media files. Specifically, the '934 patent states:

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 2 of 27

> "Referring now to FIG. 7, a block diagram 700 of an embodiment of the instant invention is depicted. A central storage and interface device 702 , which can be a AudioReQuest Pro, produced by ReQuest, Inc. is shown. It is noted that AudioReQuest is a trademark of ReQuest, Inc." ('934 patent 8:20-24)

> AudioReQuest Pro (ARQ Pro) is a central storage device that digitally records music from CDs using its built-in CD player. In addition, it can record from analog sources such as radio, Long Playing records (LPs), and audiocassettes through its line-in recording capability. Further, it can record and transfer digital music from the PC and Internet sites. Playlists are created on the system by having a specific user who categorizes song choices for current or later playing. Song and Music Navigation information can be viewed on the built-in LCD, a television interface, or on other devices such as home automation control systems and personal computers through serial and Ethernet connections. Music can be either transferred or streamed to other devices 714 such as digital portable players, streaming network devices, web browsers, personal computers, online websites and servers, and other ReQuest products through network and universal serial bus (USB) connections." ('934 patent 8:49-65)

ReQuest, Inc. filed their patent application for their AudioReQuest Pro (ARQ Pro) device, which matured into the '934 patent, on June 19th, 2001.  However, _more than a year prior_ to filing their patent application, Request Inc, offered the AudiReQuest (ARQ1) device for sale on their online store and elsewhere.  The AudiReQuest (ARQ1) device is Request Inc.'s predecessor model to its AudioReQuest Pro (ARQ Pro) device, and it is believed that the two devices share many substantially similar functionalities.  For example, both had similar CD players, hard drive storage and Ethernet networking hardware, in addition to Universal Serial Bus (USB) connectors.  Functionalities of the AudioReQuest (ARQ1) are disclosed in the web page archive of the WWW.REQUEST.COM website of Request, Inc., which the archive.org repository has dated as May 20[th,] 2000 or earlier.  (See Exhibit B.)

Because of the substantial similarities in the device functionalities, I believe that a reasonable Patent Examiner may have found ReQuest Inc.'s offer of the AudiReQuest (ARQ1) device for sale (more than one year earlier) to be relevant to patentability of the AudioReQuest Pro (ARQ Pro) device.  I believe that the failure by ReQuest Inc. and its employee inventors to disclose these known facts to the United States Patent Office may have been a breach of their Duty of Candor.

As a result of some prior art searching, I have identified several prior art references that were not considered by the Patent Examiner.  Initially, I note that _synchronizing files_ (such as synchronizing digital music and media files) on networked multimedia computer's was known in the art well before the filing of the '934 patent.  As

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024955

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 3 of 27

one specific example, a Multimedia Personal Computer ("MPC") running Microsoft
Windows 98 software at that time (more than a year prior to ReQuest Inc.'s filing their
patent application) played media files, were networked together, did file synchronization
between networked MPC's using the "Briefcase" tool, and further disclosed or suggested
everything else that ReQuest Inc. attempts to claim in their '934 patent.

Moreover, in addition to the Windows '98 "Briefcase" network file synchronizer
and its companion Windows '98 media player, my review has also uncovered a number
of additional prior art references, which were published or patented more than a year prior
to the date when the ReQuest Inc. patent application was filed, but which were not ever
considered by the U.S. Patent Examiner. For example, U.S. Patent No. 5,959,945 and
U.S. Patent No. 5,832,448 are other prior art references that disclose or suggest
everything else that ReQuest Inc. attempts to claim in their '934 patent.

As discussed in further detail subsequently herein, it is my opinion that the '934
patent is anticipated by, or in the alternative obvious in view of, at least Microsoft
Windows 98, U.S. Patent No. 5,959,945 or U.S. Patent No. 5,832,448.


## II.  LEGAL STANDARDS

### A. Invalidity Under 35 U.S.C. § 102 — Anticipation

In order to anticipate, a single prior art reference must disclose each and every
limitation of the claimed invention, either expressly or inherently. Telemac Cellular Corp.
v. ToppTelecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001). There must be no
difference between the claimed invention and the reference disclosure as viewed by a
person of ordinary skill in the field of the invention. See Scripps Clinic & Res. Found. v.
Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991). Determining whether the claims
of a patent are anticipated is a two-step process. The claims are first interpreted to
determine their scope. Next, the properly-construed claims are compared to the
anticipatory reference. Medichem, S.A. v. Rolabo, Si., 353 F.3d 928, 933 (Fed. Cir.
2003).


### B. Invalidity Under 35 U.S.C. § 103 — Obviousness

Patent claims are invalid as obvious when "the differences between the subject
matter sought to be patented and the prior art are such that the subject matter as a whole

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY     APL630DEF-WH-A0000024956

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 4 of 27

would have been obvious at the time the invention was made by a person having ordinary skill in the art." 35 U.S.C. § 103(a). A patent "composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." KSR Intl Co.v. Teleflex, Inc., 550 U.S. 398, 418, 127 S. Ct. 1727 (2007). When a patent, however, "simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." Id. at 417 (internal quotations omitted). "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103." Id. at 419.

## III. ARGUMENT

As set forth below, it is my opinion that claims 1-15 of the '934 patent are anticipated by each of the Microsoft Windows 98 Resource Kit, U.S. Patent No. 5,959,945 ("Kleiman"), and U.S. Patent No. 5,832,448 ("Krikorian"). Alternatively, claims 1-15 of the '934 patent are obvious in view of the Microsoft Windows 98 Resource Kit, U.S. Patent No. 5,959,945 ("Kleiman") and U.S. Patent No. 5,832,448 ("Krikorian").

### A. Claims of the '924 patent are anticipated by Microsoft Windows 98 Resource Kit

#### 1. *Microsoft Windows 98 Resource Kit is prior art under 35 USC § 102(b)*

The Microsoft Windows 98 Resource Kit, ISBN: 1572316446, was published by Microsoft Press on 7/1/1998. (See excerpts in Exhibit C.) Because the ReQuest, Inc.'s patent application, which matured into the '934 patent, was filed more than a year later on June 19th, 2001, the Microsoft Windows 98 Resource Kit is prior art under 35 USC § 102(b).

#### 2. *Microsoft Windows 98 Resource Kit Discloses Every Claim Limitation*

As demonstrated below, the Microsoft Windows 98 Resource Kit anticipates each and every claim of the '924 patent.

**Claim 1**

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 5 of 27

**1. A system for synchronizing a multiplicity of devices in a multimedia environment, comprising:**

**at least one central storage and interface device, wherein audio, video, and photographic information including content information and content management information, relating to at least one user, are stored in digital form; and**

**a plurality of zones each having a zone specific storage and interface device being capable of storing or interfacing with information stored in the central storage and interface device,**

**wherein audio, video, or photographic information, relating to at least one user, contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device, are updated in relation with other zone specific storage and interface devices and the central storage and interface device,**

**whereby the at least one user can be situated at anyone of the zones and access substantially identical audio, video, and photographic information related to the at least one user.**

In Chapter 12 entitled "Software", the Windows 98 Resource Kit teaches the claimed storage and interfacing with such digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"):

====================================================================

**"Chapter 12 Software**

Windows 98 ships with a DVD player named Dvdplay.exe. Dvdplay.exe is a stand-alone executable and has no program-specific DLLs associated with it. Like most applets shipped with Windows, DVDPlay has only basic functionality and may be replaced by a third-party application. If you have a supported decoder, DVD Player can be installed and uninstalled from the Control Panel using the Add/Remove Programs option.

**Note** When the DVD Player is launched, it searches all local drives in alphabetical order, starting with C, looking for a folder called Video_TS. When this folder is located, the data file within it is loaded, and video streaming begins. If this folder exists on a drive that comes before the DVD drive, the player will try to play the data in the first folder it finds. This is also an issue with systems that have multiple DVD drives.

The basic DVD program is shown in Figure 12.4. It contains, from left to right, buttons for choosing a channel; VCR style controls for controlling playback; and menu navigation buttons for using the on-screen menu choices.



**Figure 12.4 Basic DVD player**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY            APL630DEF-WH-A0000024958

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 6 of 27

Recording, Editing, and Playing Audio

   Windows 98 multimedia services provide extensible, device-independent audio support. Windows 98 features services for sound control for computers that have sound cards and for waveform-audio, MIDI, and mixer devices.

With audio support in Windows 98, users can do the following:

- Use Media Player or ActiveMovie Control to play WAV or MIDI files.
- Use applications that take advantage of DirectSound audio acceleration.
- Use the Sound option in Control Panel to assign sound clips to play each time a specific event occurs.
- Use CD Player to play audio CDs.
- Use Sound Recorder to record sound.
- Use built-in Windows 98 OLE support to copy or link audio clips in other documents. For more information, see Chapter 25, "Application Support." "

============================================================

For the reasons discussed in Chapter 12 of the Windows 98 Resource Kit, Multimedia Personal Computers ("MPC's") running Windows 98 are recognized as each providing a respective multimedia environment.

       Further, in Chapter 19 entitled "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches the claimed synchronizing of a multiplicity of devices in a multimedia environment.  More specifically, Chapter 19 describes synchronizing a multiplicity of MPC's running Windows 98, by updating files over a network.  Windows 98 provides the multimedia environment:

============================================================

**"Chapter 19 - Remote Networking and Mobile Computing**

**Using Briefcase to Synchronize Files**

If you can use a portable computer and a desktop computer, or you are connected to a network, you must constantly work to keep the files synchronized. Windows 98 Briefcase minimizes this task by keeping track of the relationships between files on two or more computers.

With Briefcase, you can do the following:

- Create a Briefcase folder.
- Add files to Briefcase.
- Check the status of files in Briefcase and their related files.
- Update related files, either individually or all at once.
- Split related files to maintain them separately.

Windows 98 provides a set of OLE interfaces that allow applications to bind reconciliation handlers to it, track the contents of Briefcase, and define the outcome of any reconciliation on a class-by-class basis. For example, when both the file in Briefcase and its synchronized copy outside have changed, Windows 98 calls the appropriate reconciliation

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    APL630DEF-WH-A0000024959

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 7 of 27

handler to merge the two files. This could be handy when several users are simultaneously updating one large document.

**Caution**

Do not place one Briefcase inside another Briefcase. You cannot drag a file into a Briefcase that is in another Briefcase.

## Creating and Configuring a Briefcase

To install Briefcase during Windows 98 Setup, you must run Setup from the DOS prompt and choose Custom or Portable as the setup type. You can also install Briefcase after installing Windows 98.

► **To install Briefcase after Windows 98 installation**

1. In Control Panel, double-click Add/Remove Programs.
2. Click the **Windows Setup** tab, in the **Components** list click **Accessories**, and then click **Details**.
3. In the **Accessories** dialog box, click **Briefcase**, and then click **OK**.

If you install Briefcase, it appears as an icon on your Windows 98 desktop. To run Briefcase, double-click its icon.

► **To uninstall Briefcase**

• Drag the Briefcase icon to the Recycle bin.

**Tip**

You can use Briefcase to synchronize files between a portable computer running Windows 98 and a desktop computer running Windows NT Server 3.5 or later.

## Updating Files with Briefcase

When you update files by using Briefcase, Windows 98 automatically replaces unmodified files with modified files. If both files have changed, Windows 98 calls the appropriate application (if available) to merge the disparate files. The host and guest can be connected in the following ways:

• You can copy files from your desktop to Briefcase and then load Briefcase onto your portable computer. If you are using a Plug and Play BIOS docking station, Briefcase automatically updates files when you later dock your portable computer.
• You can update files using Briefcase and a floppy disk. For information, see Windows 98 Help.
• You can synchronize files between a portable computer and a network if the portable computer has a network connection."

========================================================================

In view of the foregoing, using "Briefcase", the Microsoft Windows 98 Resource Kit discloses Multimedia Personal Computers ("MPC's") in "zones" that are "updated". I am assuming that a broad interpretation of "zones" would be necessarily proffered by ReQuest.

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 8 of 27

In particular, a "Briefcase" of a first MPC can update a corresponding "Briefcase" of a second MPC to synchronize files. In this example, the first MPC is doing the updating of the second MPC, so the first MPC can be recognized as the claimed "central storage and interface device". Since the second MPC is getting updated, it can be recognized as the "zone specific storage and interface device".

Of course, the selection of first and second MPC's in the example is arbitrary. It could go the other way. The second MPC can update the first MPC to synchronize files. Additionally, updates can go both directions. Window 98 "Briefcase" can synchronize in both directions between first and second MPC's.

Accordingly, in view of all of the foregoing, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 1 of the '934 Patent.

### Claim 2

**2. The system of claim 1, further comprising a local area network (LAN) coupled to at least one zone specific storage and interface device with the central storage and interface device, wherein the interconnections within the LAN is hardwired or wireless.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches hardwired LAN interconnections. Wireless WAN for use with LAN is also taught. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 2 of the '934 Patent.

### Claim 3

**3. The system of claim 1, further comprising a wide area network (WAN) coupling at least one zone specific storage and interface device with the central storage and interface device.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches wide area networks (WANs). Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 3 of the '934 Patent.

### Claim 4

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 9 of 27

**4. The system of claim 1, further comprising a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially identical content information and content management information displayed and manipulated in anyone of the zones.**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed storage and output of digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"). In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked MPC's running Windows 98 using "Briefcase". Two or more synchronized MPC's can have substantially the same (identical) files in their "Briefcase". Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 4 of the '934 Patent.

### Claim 5

**5. The system of claim 1, further comprising an output device coupled to the at least one central storage and interface device, wherein audio, video, and photographic information is outputted.**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed storage and output of digital music and media files using Windows 98 software on a Multimedia Personal Computer ("MPC"). Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 5 of the '934 Patent.

### Claim 6

**6. The system of claim 1, further comprising a server, wherein audio, video, and photographic information contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device are stored therein and updated at a predetermined time in relation with other zone specific storage and interface devices as well as the central storage and interface device, coupled to the WAN.**

In Chapter 12 "Multimedia" Windows 98 Resource Kit teaches the claimed storage of digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"). In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked MPC's running Windows 98 using "Briefcase". A time when files are updated or synchronized can be determined by a user at the Windows 98 user interface of

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024962

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 10 of 27

"Briefcase". In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches using NT Server and wide area networks (WANs). Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 6 of the '934 Patent.

### Claim 7

**7. The system of claim 1, further comprising an other device coupled to the central storage and interface device via a network connection other than the LAN or WAN.**

In the Microsoft Windows 98 Resource Kit, Chapter 11 entitled "Printing, Imaging, and Fonts" teaches device connection to the Multimedia Personal Computer ("MPC") running Windows 98 using Universal Serial Bus (USB). Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 7 of the '934 Patent.

### Claim 8

**8. The system of claim 1, wherein the at least one user pre-stores the audio, video, and photographic information by way of using a device comprising the central storage and interface device, and the zone specific storage and interface device.**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed storage of digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"). In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked MPC's running Windows 98 using "Briefcase". Files are recognized as pre-stored on one MPC before being synchronized using "Briefcase" to update the files on another networked MPC. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 8 of the '934 Patent.

### Claim 9

**9. The system of claim 1, wherein the central storage and interface device comprises means for transmitting or receiving information to or from the zone specific storage and interface device.**

In Chapter 12 "Software" Windows 98 Resource Kit teaches the claimed storage of digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"). In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked MPC's running Windows 98 using "Briefcase". In synchronizing files to or from each MPC, there is the transmitting or receiving of information to or from MPC's. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 9 of the '934 Patent.

### Claim 10

**10. The system of claim 1, wherein the zone specific storage and interface device comprises means for transmitting or receiving information to or from the central storage and interface device.**

In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches file synchronization between networked Multimedia Personal Computers ("MPC's") running Windows 98 using "Briefcase". In synchronizing files to or from each MPC, there is the transmitting or receiving of information to or from MPC's. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 10 of the '934 Patent.

### Claim 11

**11. The system of claim 1, wherein the central storage and interface device is capable of converting analog information into digital form.**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed conversion of analog sound information into digital form, for example using "sound recorder". Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 11 of the '934 Patent.

### Claim 12

**12. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a personal computer (PC).**

In Chapter 12 "Software", the Windows 98 Resource Kit teaches the claimed storage and interfacing with digital music and media files using Windows 98 software on Multimedia Personal Computers ("MPC's"). In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches networking. Networking

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 12 of 27

can be between Multimedia Personal Computers ("MPC's") and/or Personal Computers ("PC's") in various combinations.  Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 12 of the '934 Patent.

### Claim 13

**13. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a wireless mobile device.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" use of wireless WAN is taught.  In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches networking with mobile devices. Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 13 of the '934 Patent.

### Claim 14

**14. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via LAN.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches LAN interconnections.  Wireless WAN for use with LAN is also taught.  In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches networking with mobile devices.  Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 14 of the '934 Patent.

### Claim 15

**15. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via WAN.**

In the Microsoft Windows 98 Resource Kit, Chapter 15 entitled "Network Adapters and Protocols" teaches LAN interconnections.  Wireless WAN for use with LAN is also taught.  In Chapter 19 "Remote Networking and Mobile Computing", the Windows 98 Resource Kit teaches networking with mobile devices.  Accordingly, I believe that the Microsoft Windows 98 Resource Kit anticipates all of the limitations of claim 15 of the '934 Patent.

### B.  Claims of the '924 patent are anticipated by Kleiman

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 13 of 27

### 1.   *Kleiman is prior art under 35 USC § 102(b)*

U.S. Patent No. 5,959,945 ("Kleiman") was patented 9/28/1999.  Because the ReQuest, Inc. patent application, which matured into the '934 patent, was filed more than a year later on June 19th, 2001, Kleiman is prior art under 35 USC § 102(b).

### 3.   *Kleiman Discloses Every Claim Limitation*

As demonstrated below, Kleiman anticipates each and every claim of the '924 patent.

**Claim 1**

**1. A system for synchronizing a multiplicity of devices in a multimedia environment, comprising:**

**at least one central storage and interface device, wherein audio, video, and photographic information including content information and content management information, relating to at least one user, are stored in digital form; and**

**a plurality of zones each having a zone specific storage and interface device being capable of storing or interfacing with information stored in the central storage and interface device,**

**wherein audio, video, or photographic information, relating to at least one user, contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device, are updated in relation with other zone specific storage and interface devices and the central storage and interface device,**

**whereby the at least one user can be situated at anyone of the zones and access substantially identical audio, video, and photographic information related to the at least one user.**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 14 of 27



FIG. 1

Figure 1 of Kleiman shows central storage that selectively updates digital video, music, images and management files over a LAN or WAN for a plurality of multimedia personal jukeboxes at various in-home locations based on user selections. Assuming a broad interpretation of "zones" as would be necessarily proffered by ReQuest, Kleinman discloses such "zones" in the form of various locations where multimedia client computers (IT1 – IT9) and their users can be situated (6:21-40; 6:60-67; and 7:1-4). The multimedia client computers are "updated" by receiving updated digital video, music, images and management files over a LAN or WAN, based on user selections (6:8-13; 6:41-49; 7:5-10; 9:21-67; 10:1-7).

Accordingly, I believe that Kleiman anticipates all of the limitations of claim 1 of the '934 Patent.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    APL630DEF-WH-A0000024967

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 15 of 27

### Claim 2

**2. The system of claim 1, further comprising a local area network (LAN) coupled to at least one zone specific storage and interface device with the central storage and interface device, wherein the interconnections within the LAN is hardwired or wireless.**

Kleiman teaches hardwired LAN interconnections.  Kleiman teaches also teaches using wireless Local Multipoint Distribution Service (LMDS), which is bi-directional and based on cellular-like technology.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 2 of the '934 Patent.

### Claim 3

**3. The system of claim 1, further comprising a wide area network (WAN) coupling at least one zone specific storage and interface device with the central storage and interface device.**

Kleiman teaches wide area networks (WANs).  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 3 of the '934 Patent.

### Claim 4

**4. The system of claim 1, further comprising a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially identical content information and content management information displayed and manipulated in anyone of the zones.**

In Kleiman, personal jukebox players of multimedia client computers are "updated" by receiving updated digital video, music, images and management files over a LAN or WAN, based on user selections (6:8-13; 6:41-49; 7:5-10; 9:21-67; 10:1-7). Updates match user selections. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 4 of the '934 Patent.

### Claim 5

**5. The system of claim 1, further comprising an output device coupled to the at least one central storage and interface device, wherein audio, video, and photographic information is outputted.**

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 16 of 27

In Kleiman, multimedia client computers can play the updated digital video, music, images and management files (6:8-13; 6:41-49; 7:5-10; 9:21-67; 10:1-7). Accordingly, I believe that Kleiman anticipates all of the limitations of claim 5 of the '934 Patent.

### Claim 6

**6. The system of claim 1, further comprising a server, wherein audio, video, and photographic information contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device are stored therein and updated at a predetermined time in relation with other zone specific storage and interface devices as well as the central storage and interface device, coupled to the WAN.**

Kleiman teaches a client/server environment, in which multimedia client computers are "updated" by receiving updated digital video, music, images and management files over a LAN or WAN, based on user selections (6:8-13; 6:41-49; 7:5-10; 9:21-67; 10:1-7). The system of Kleiman can request that the new music or hierarchy be sent within a given time. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 6 of the '934 Patent.

### Claim 7

**7. The system of claim 1, further comprising an other device coupled to the central storage and interface device via a network connection other than the LAN or WAN.**

FIG. 1 of Kleinman shows multimedia client computers (IT1 – IT9) in various locations, which are in communication with central storage in various different ways. IT1 in FIG. 1, uses an asynchronous analog telephone line for the exchange of information. IT2 uses an integrated digital switched network for the exchange of information. IT3 uses removable discs to store information related to requests. IT5 uses an asymmetric digital subscriber line to exchange information. IT6 uses switched digital video or a hybrid-fiber coaxial cable modem. IT7 uses terrestrial, wireless technologies. IT8 uses a satellite receiver. IT9 uses a portable computer to capture transaction and statistical information from the IT, and downloads contents required by the IT. The connection between the IT and the Operation Service Center (OSC) is through a port or LAN. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 7 of the '934 Patent.

### Claim 8

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 17 of 27

**8. The system of claim 1, wherein the at least one user pre-stores the audio, video, and photographic information by way of using a device comprising the central storage and interface device, and the zone specific storage and interface device.**

Multimedia client computer IT3 shown in FIG. 1 of Kleiman uses removable discs to store all information related to requests.   Information can be pre-stored on removable discs, prior to being loaded onto IT3 by an operator. Accordingly, I believe that Kleiman anticipates all of the limitations of claim 8 of the '934 Patent.

### Claim 9

**9. The system of claim 1, wherein the central storage and interface device comprises means for transmitting or receiving information to or from the zone specific storage and interface device.**

In Kleiman, there is the transmitting or receiving of information to or from multimedia client computers.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 9 of the '934 Patent.

### Claim 10

**10. The system of claim 1, wherein the zone specific storage and interface device comprises means for transmitting or receiving information to or from the central storage and interface device.**

In Kleiman, there is the transmitting or receiving of information to or from central storage.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 10 of the '934 Patent.

### Claim 11

**11. The system of claim 1, wherein the central storage and interface device is capable of converting analog information into digital form.**

I believe that that "sound recorder" capability is understood as present on multimedia workstations, of the type taught by Kleiman, and therefore is inherently or implicitly present in Kleiman.  (Kleiman teaches a "VET factory" in the Global OSC GI that produces VET envelopes which are transferred throughout the system.  The "VET factory" has one or more *multimedia workstations* with editing and authoring capabilities, temporary storage, content capture units and an internal connection to the OSC network hub.)  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 11 of the '934 Patent.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 18 of 27

### Claim 12

**12. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a personal computer (PC).**

Multimedia client computer IT9 is coupled with a portable computer CM9 to capture transaction and statistical information from the IT, and downloads contents required by the IT.  Weighing all of the foregoing, I believe that teaching of a personal computer is inherent or implicit in Kleiman.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 12 of the '934 Patent.

### Claim 13

**13. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a wireless mobile device.**

Kleiman teaches using wireless Local Multipoint Distribution Service (LMDS), which is bi-directional and based on cellular-like technology.  Kleiman teaches that multimedia client computer IT9 uses a portable computer to capture transaction and statistical information from the IT, and downloads contents required by the IT.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 13 of the '934 Patent.

### Claim 14

**14. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via LAN.**

Kleiman teaches networking central storage using a LAN.  Kleiman also teaches using wireless Local Multipoint Distribution Service (LMDS), which is bi-directional and based on cellular-like technology.  Kleiman teaches that multimedia client computer IT9 uses a portable computer to capture transaction and statistical information from the IT, and downloads contents required by the IT.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 14 of the '934 Patent.

### Claim 15

**15. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via WAN.**

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 19 of 27

Kleiman teach networking central storage using a WAN.  Kleiman also teaches using wireless Local Multipoint Distribution Service (LMDS), which is bi-directional and based on cellular-like technology.  Kleiman teaches that multimedia client computer IT9 uses a portable computer to capture transaction and statistical information from the IT, and downloads contents required by the IT.  Accordingly, I believe that Kleiman anticipates all of the limitations of claim 15 of the '934 Patent.

### C.  Claims of the '924 patent are anticipated by Krikorian

*2.  Krikorian is prior art under 35 USC § 102(b)*

U.S. Patent No. 5,832,448 ("Krikorian") was patented 3/10/1998.  Because the ReQuest, Inc. patent application, which matured into the '934 patent, was filed more than a year later on June 19th, 2001, Krikorian is prior art under 35 USC § 102(b).

*4.  Krikorian Discloses Every Claim Limitation*

As demonstrated below, Krikorian anticipates each and every claim of the '924 patent.

<u>**Claim 1**</u>

**1. A system for synchronizing a multiplicity of devices in a multimedia environment, comprising:**

**at least one central storage and interface device, wherein audio, video, and photographic information including content information and content management information, relating to at least one user, are stored in digital form; and**

**a plurality of zones each having a zone specific storage and interface device being capable of storing or interfacing with information stored in the central storage and interface device,**

**wherein audio, video, or photographic information, relating to at least one user, contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device, are updated in relation with other zone specific storage and interface devices and the central storage and interface device,**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024972

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 20 of 27

**whereby the at least one user can be situated at anyone of the zones and access substantially identical audio, video, and photographic information related to the at least one user.**



Fig-6

The text and figures of Krikorian make references to Microsoft Windows and Apple Macintosh user interfaces for playing digitized data.  Accordingly, I can recognize the end user computers of Krikorian as multimedia computers.  Figure 6 of Krikorian shows a central computer that updates screen saver video, music, images and management files over the Internet in response to requests from end user multimedia computers at various locations.  Assuming a broad interpretation of "zones" as would be necessarily proffered by ReQuest, Krikorian discloses "zones" in the form of various locations where multimedia computers (208, 210 and 212) and their end users can be situated (7:35-45). The end user multimedia computers are "updated" by receiving and storing updated screen saver video, music, images and management files, over the Internet in response to requests from end user multimedia computers (3:3-17; and 5:10-33)

Accordingly, I believe that Krikorian anticipates all of the limitations of claim 1 of the '934 Patent.

**Claim 2**

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 21 of 27

**2. The system of claim 1, further comprising a local area network (LAN) coupled to at least one zone specific storage and interface device with the central storage and interface device, wherein the interconnections within the LAN is hardwired or wireless.**

Krikorian expressly teaches a communication link that is either wired or wireless. Further, Krikorian teaches using the Internet. I can recognize the Internet as a network of computer networks, encompassing Local Area Networks (LANs) as well as Wide Area Networks (WANs). Accordingly, I believe that Krikorian anticipates all of the limitations of claim 2 of the '934 Patent.

**Claim 3**

**3. The system of claim 1, further comprising a wide area network (WAN) coupling at least one zone specific storage and interface device with the central storage and interface device.**

Krikorian expressly teaches a communication link that is either wired or wireless. Further, Krikorian teaches using the Internet. I can recognize the Internet as a network of computer networks, encompassing Local Area Networks (LANs) as well as Wide Area Networks (WANs). Accordingly, I believe that Krikorian anticipates all of the limitations of claim 3 of the '934 Patent.

**Claim 4**

**4. The system of claim 1, further comprising a set of zone specific output devices coupled to each of the zone specific storage and interface device, wherein audio, video, and photographic information is outputted, thereby the at least one user is disposed to have substantially identical content information and content management information displayed and manipulated in anyone of the zones.**

In Krikorian, media players of end user multimedia computers are "updated" by receiving and storing updated screen saver video, music, images and management files, over the Internet in response to requests from end user multimedia computers (3:3-17; and 5:10-33). Updates match requests from end user multimedia computers. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 4 of the '934 Patent.

**Claim 5**

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 22 of 27

**5. The system of claim 1, further comprising an output device coupled to the at least one central storage and interface device, wherein audio, video, and photographic information is outputted.**

In Krikorian, end user multimedia computers can play the updated screen saver video, music, images and management files (3:3-17; and 5:10-33)   Accordingly, I believe that Krikorian anticipates all of the limitations of claim 5 of the '934 Patent.

### Claim 6

**6. The system of claim 1, further comprising a server, wherein audio, video, and photographic information contained within each one of the plurality of zone specific storage and interface devices and the central storage and interface device are stored therein and updated at a predetermined time in relation with other zone specific storage and interface devices as well as the central storage and interface device, coupled to the WAN.**

Krikorian teaches a central file server, in which end user multimedia computers are "updated" by receiving and storing updated screen saver video, music, images and management files, over the Internet in response to requests from end user multimedia computers (3:3-17; and 5:10-33). The Internet encompasses Wide Area Networks (WANs). Krikorian teaches that updating occurs at desired intervals. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 6 of the '934 Patent.

### Claim 7

**7. The system of claim 1, further comprising an other device coupled to the central storage and interface device via a network connection other than the LAN or WAN.**

Krikorian teaches using the Internet.  The Internet inherently or implicitly couples through numerous devices, encompassing Local Area Networks (LANs) and Wide Area Networks (WANs) as well as network connections other than LANs and WANs. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 7 of the '934 Patent.

### Claim 8

**8. The system of claim 1, wherein the at least one user pre-stores the audio, video, and photographic information by way of using a device comprising the central storage and interface device, and the zone specific storage and interface device.**

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 23 of 27

Krikorian teaches using removable compact discs (CDs) with CD ROM drives for storing digitized data. Such digitized data can be pre-stored on removable compact discs, prior to being loaded onto end user multimedia computers. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 8 of the '934 Patent.

### Claim 9

**9. The system of claim 1, wherein the central storage and interface device comprises means for transmitting or receiving information to or from the zone specific storage and interface device.**

In Krikorian, there is transmitting or receiving of information to or from end user multimedia computers. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 9 of the '934 Patent.

### Claim 10

**10. The system of claim 1, wherein the zone specific storage and interface device comprises means for transmitting or receiving information to or from the central storage and interface device.**

In Krikorian, there is transmitting or receiving of information to or from a central computer having storage. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 10 of the '934 Patent.

### Claim 11

**11. The system of claim 1, wherein the central storage and interface device is capable of converting analog information into digital form.**

Krikorian does not explicitly teach conversion of analog sound information into digital form for example, using a "sound recorder". However, the text and figures of Kriorian make references to Microsoft Windows and Apple Macintosh user interfaces for playing digitized data. I believe sound recorder capability is present on multimedia computers, of the type taught by Krikorian, and therefore is implicitly present in Krikorian. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 11 of the '934 Patent.

### Claim 12

**12. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a personal computer (PC).**

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 24 of 27

Krikorian references computers running Microsoft Windows and Apple Macintosh user interfaces. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 12 of the '934 Patent.

### Claim 13

**13. The system of claim 1, wherein the zone specific storage and interface device is disposed to be coupled to a wireless mobile device.**

Krikorian teaches using a wireless communication link. Krikorian further teaches using a portable or laptop computer. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 13 of the '934 Patent.

### Claim 14

**14. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via LAN.**

Krikorian teaches a central file server having storage, and connected to the Internet. The Internet inherently encompasses Local Area Networks (LANs). Krikorian further teaches using a wireless communication link and using a portable or laptop computer. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 14 of the '934 Patent.

### Claim 15

**15. The system of claim 1, wherein the central storage and interface device is disposed to be coupled to a wireless mobile device via WAN.**

Krikorian teaches a central file server having storage, and connected to the Internet. The Internet inherently encompasses Wide Area Networks (WANs). Krikorian further teaches using a wireless communication link and using a portable or laptop computer. Accordingly, I believe that Krikorian anticipates all of the limitations of claim 15 of the '934 Patent.

**D. In the Alternative, the Claims 1-15 of the '934 Patent Are Obvious in View of Each of Microsoft Windows 98 Resource Kit, Kleiman and Krikorian, Alone or in Combination with Balasubramaniam, VanDerMeulen and/or AudiReQuest (ARQ1)**

For the reasons stated above, it is my opinion that claims 1-15 of the '934 patent are anticipated by each of the Microsoft Windows 98 Resource Kit, U.S. Patent No.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024977

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 25 of 27

5,959,945 ("Kleiman"), and U.S. Patent No. 5,832,448 ("Krikorian"). Alternatively, it is my opinion that the Microsoft Windows 98 Resource Kit, Kleiman and Krikorian, alone or in combination with Balasubramaniam (see Exhibit D), VanDerMeulen (see Exhibit E) and/or ReQuest, Inc.'s own offer for sale of the AudiReQuest (ARQ1) device, each render claims 1-15 of the '934 patent obvious. As explained in detail above, the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian each disclose synchronizing or updating digital music and media files on multimedia computers.

As explained previously, more than a year prior to ReQuest filing their patent application, numerous other network based file synchronizers (in additional to Windows 98 "Briefcase") were already well known, as discussed in detail in Balasubramaniam. Further, more than a year prior to ReQuest filing their patent application, VanDerMeulen discussed a network of consumer electronic devices for media storage and playback, which included cataloging, archiving, retrieval and playback of collections of digital video, cover images, digital music and management files relating to a user.

Similarly, more than a year prior to filing their patent application on their AudioReQuest Pro (ARQ Pro) device, Request Inc, offered the AudiReQuest (ARQ1) device for sale on their online store and elsewhere. The AudiReQuest (ARQ1) device is Request Inc.'s predecessor model to its AudioReQuest Pro (ARQ Pro). As explained previously, I believe that the two devices share many substantially similar functionalities.

It would have been obvious to one of ordinary skill in the art at the time of the alleged invention of the '934 patent to combine the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian with Balasubramaniam, VanDerMeulen and/or ReQuest, Inc.'s own AudiReQuest (ARQ1) device, because all of these references are directed to the same fundamental technology—namely file synchronizing or updating—and combining the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian with Balasubramaniam, VanDerMeulen and/or ReQuest, Inc.'s own AudiReQuest (ARQ1) device would simply involve arranging old elements, with each performing the same function it had been known to perform to thereby yield expected results.

Thus, claim 1 of the '934 patent is, at a minimum, obvious in view of the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian, either alone or in combination with Balasubramaniam, VanDerMeulen and/or ReQuest, Inc.'s own AudiReQuest (ARQ1) device. Further, for the detailed reasons stated above, the Microsoft Windows 98 Resource Kit, Kleiman and Krikorian teach each of the limitations of Claims 2-15 of the '934 patent. Accordingly, Claims 2-15 of the '934 patent are also obvious in view of the Microsoft 98 Windows Resource Kit, Kleiman or Krikorian, either

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024978

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 26 of 27

alone or in combination with Balasubramaniam, VanDerMeulen and/or ReQuest, Inc.'s own AudiReQuest  (ARQ1) device.

## VIII.   CONCLUSION

For the foregoing reasons, according to my review, my opinion is that each of the claims of the '934 patent are likely either anticipated by, or unpatentable over, the prior art as discussed herein.

Nevertheless, it should be understood that the opinions and conclusions contained herein, while well-founded, are my opinions of the likelihood that a court will find that the claims of a U.S. patent are invalid, even though the patent claims are presumed valid by statute.  Different persons may reach different conclusions based on the same facts.

Additionally, litigation is an unpredictable process, and performance and credibility of witnesses, unanticipated documents, the particular court involved, and a myriad of other factors, including equitable considerations separate from the patent issues, often influence the outcome of the litigation.  Therefore, while this opinion is based upon analysis conducted in accordance with controlling legal guidelines, I cannot guarantee Apple success should these issues be litigated.

One consideration is the statutory presumption of patent validity, which gives the patentee an important advantage in litigation.  Another consideration is that certain issues in patent cases, including factual issues relating to patent validity, can be determined by juries.  A further consideration is that the appellate process has rendered decisions that increase the chances for upholding patent validity and this influences the decisions rendered by lower courts.

Accordingly, it is possible that a court or jury could reach conclusions different from those expressed in this opinion.

This opinion and the information supplied to you in connection with this matter are prepared for the benefit of Apple Inc.  This is a confidential communication expressing my legal opinions, which is provided solely to Apple.

I assume that only Apple will rely on my opinion, and I have structured my considerations consistent with the limited expected use of, and reliance on my opinion.  Therefore, no third party should rely on my opinion.  This opinion is an attorney-client

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024979

ATTORNEY-CLIENT COMMUNICATION
PRIVILEGED & CONFIDENTIAL
Mr. Patrick Murphy
August 31, 2011
Page 27 of 27

privileged communication and disclosure of the opinion to third parties may waive any attorney-client privilege.


Should you have any questions regarding the opinions expressed herein, or the basis for such findings, please feel free to contact me.


Sincerely,


TECHNOLOGY AND INNOVATION LAW GROUP

A Professional Corporation


Jack Lenell, Esq.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          APL630DEF-WH-A0000024980