# Samsung Reply ISO Its MTC Production of Financial Documents
# Filed Publicly Pursuant To Court Order [Dkt. No. 1415]

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF FINANCIAL DOCUMENTS**<br><br>Date: August 13, 2013<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Honorable Paul S. Grewal<br><br>**FILED UNDER SEAL** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      APPLE DOES NOT DISPUTE THAT RELEVANT FINANCIAL DATA EXISTS
        WHICH APPLE REFUSES TO PRODUCE. ......................................................... 2

        A.      Apple Admits That It Maintains Certain Financial Data In The Ordinary
                Course of Its Business. ............................................................................... 2

        B.      Apple's Own Documents Show That Apple Possesses Further Financial
                Documents That It Has Not Produced.......................................................... 6

II.     APPLE NEED ONLY QUERY ITS OWN FINANCIAL DATABASES TO
        PROVIDE THE REMAINING INFORMATION REQUESTED BY SAMSUNG. .......... 8

        A.      Rule 34 And Applicable Case Law Does Not Excuse Production Merely
                Because Apple May Need To Compile New Data.......................................... 8

        B.      The Case Law Cited By Apple Is Inapposite. ........................................... 10

        C.      Apple Has Failed To Demonstrate That It Is Unduly Burdensome To
                Produce The Requested Data. .................................................................. 11

III.    THE DOCUMENTS SOUGHT BY SAMSUNG ARE CONSISTENT WITH THE
        PARTIES' AGREEMENT............................................................................... 12

CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Beckman Indus., Inc. v. International Ins. Co.*,
  966 F.2d 470 (9th Cir.1992) ................................................................................12

*Burkybile v. Mitsubishi Motors Corp.*,
  2006 U.S. Dist. LEXIS 84864 (N.D. Ill. Oct. 17, 2006) ........................................10

*Chandler v. Carroll*,
  2013 WL 2323048 (D. Vermont May 28, 2013) ......................................................10

*In re eBay Seller Antitrust Litigation*,
  2009 WL 3613511 (N.D. Cal. Oct. 28, 2009) ......................................................9, 12

*Edeh v. Equifax, LLC*,
  2013 WL 1749912 (D. Minn. Apr. 23, 2013) ..........................................................11

*Gonzales v. Google, Inc.*,
  234 F.R.D. 674 (N.D. Cal. 2006) ..............................................................................9

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ....................................................................................................12

*IBM v. BGC Partners, Inc.*,
  2013 WL 1775373 (S.D.N.Y. April 25, 2013) ........................................................11

*Illinois Cent. R.R. v. 16.032 Acres of Land in Jefferson Parish*,
  1999 WL 61568 (E.D. La. Aug. 12, 1999) ..............................................................11

*Jinks-Umstead v. England*,
  227 F.R.D. 143 (D.D.C. 2005) ................................................................................10

*Kennedy v. Jackson Natl Life Ins. Co.*,
  2010 WL 1644944 (N.D. Cal. Apr. 22, 2010) ........................................................12

*Phase Four Indus., Inc. v. Marathon Coach, Inc.*,
  2006 WL 1465313 (N.D. Cal. 2006) ..........................................................................8

*Thomas v. Lawler*,
  2013 WL 3367488 (M.D. Pa. July 3, 2013) ............................................................10

*Van v. Wal-Mart Stores, Inc.*,
  2011 WL 62499 (N.D. Cal. Jan. 7, 2011) ................................................................10

*Vasudevan Software, Inc. v. MicroStrategy Inc.*,
  2013 WL 597655 (N.D. Cal. 2013) ............................................................................8

*Wagener v. SBC Pension Benefit Plan-Non-Bargained Program*,
  2007 WL 915209 (D.D.C. Mar. 26, 2007) ..............................................................11

# INTRODUCTION

Apple does not dispute that the financial data sought by Samsung is relevant.   Apple's 30(b)(6) designee on financial topics, Mark Buckley, confirmed that Apple maintains a substantial portion of the requested data on either a per-product basis or for the U.S. market, to include system billings, revenue adjustments, standard margins, advertising and marketing expenses, and gross margins.   Similarly, Apple's documents show that Apple maintains revenue and cost breakdowns on a per-product basis, as well as projections of U.S. revenues and gross margins per-product. Apple should be ordered to produce that data without further delay.

What remains in dispute is a handful of additional categories of financial data for which Apple contends it cannot produce documents without creating a new dataset.   Apple argues that it should not have "to prepare or create new documents" and concludes this principle excuses Apple from querying pre-existing financial databases in order to provide basic financial information, such as U.S. gross margins, U.S. operating margins and U.S. sales expenses for the accused Apple products.   But courts hold that "the need to create a new dataset … does not excuse production" and discovery obligations include creating "new code to format and extract query and URL data from many computer banks."   The Court should require the same of Apple.

As a fallback, Apple asserts that it would be unduly burdensome to query its databases to provide the documents that Samsung seeks.   Yet to substantiate its undue burden argument, Apple must point to specific facts.   Here, Apple cites none, instead relying upon conclusory statements that querying its databases will be a "lengthy process" that will take "several months." Moreover, a company that touts its computing capabilities is hardly credible in claiming that it would be too burdensome to create a new dataset from financial data that already exists.

Lastly, Apple seems to contend that the financial documents requested by Samsung are outside the scope of the parties' prior agreement regarding financial document productions. Apple, however, cites nothing evidencing that agreement.   Indeed, the parties' agreement regarding financials supports production of the documents at issue here.   For these reasons and those set forth below, Samsung's Motion to Compel should be granted.

**ARGUMENT**

**I.     APPLE DOES NOT DISPUTE THAT RELEVANT FINANCIAL DATA EXISTS WHICH APPLE REFUSES TO PRODUCE.**

> **A.     Apple Admits That It Maintains Certain Financial Data In The Ordinary Course of Its Business.**

Apple contends that it "does not maintain the data that Samsung seeks here, namely, U.S. revenues, margins, profits, and cost breakdowns by product by memory size."   Opp. at 1:7-9. To be clear – and to unpack Apple's statement – Samsung's seeks this type of financial data for either *the U.S. market* or for *each accused Apple product* and, if it can reasonably be extracted, for both.   Samsung's "Statement of Issues" in its Motion made clear the relief that Samsung seeks:

> (1)   Whether Apple must produce financial data, such as revenues, margins, profits, and cost breakdowns, on a per-product basis, rather than aggregated data for entire product lines;
>
> (2)   Whether Apple must produce financial data for the U.S. market only, rather than the worldwide financial data relating to its product lines that Apple has currently produced.

The evidence shows that this precise data – segregated either on a per-product basis *or* for the U.S. market – is maintained by Apple and yet has not been produced.   This data includes:

- System billings on a per-product basis;
- Revenue adjustments – amortization, deferrals, commissions, and carriers subsidies – on a per-product basis;
- Standard margins for the U.S. market;
- Advertising and marketing expenses for "hero products" for the U.S. market;
- Gross margins on a per-product basis;
- Per-product cost/expense breakdowns;
- Projected iPhone revenues on a per-product basis for the U.S. market; and
- Projected gross margins on a per-product basis for the U.S. market.

> **1.     Apple Has Failed to Produce System Billings on a Per-Product Basis.**

Apple concedes (in a footnote) that "[a]s Mr. Buckley testified during his deposition, Apple *does maintain 'system billings' on a per-model basis for iPhone*."   *See* Opp. at 6, fn. 4

1 (emphasis added).    Mr. Buckley's testimony regarding system billings makes this point clear:

2             Q.    My understanding is that Apple does track system billings on
                        a model-by-model level; is that correct?

3             A.    Yes.
            Q.    Okay.

4             A.    *And we have always*.

5 Reply Declaration of Michael L. Fazio In Support of Samsung's Motion to Compel Financial

6 Documents ("Fazio Reply Decl.") Ex. 1, Buckley Tr. at 59:5-10 (emphasis added).

7        Apple attempts to dismiss Mr. Buckley's admission of system billings that Apple tracks on

8 a per model basis – and which Apple has not produced – by contending that "system billings is

9 only one element of revenue …."   Opp. at 6, n.4.   Apple ignores that Mr. Buckley made no such

10 distinction in either his deposition testimony or in his subsequent declaration.   Indeed, Mr.

11 Buckley, in his declaration, uses "billings" as synonymous with "total revenue."   *See* Declaration

12 of Mark Buckley dated July 30, 2013 ("Buckley Decl.") ¶ 5.   Furthermore, the aggregate revenue

13 data that Apple produced for the iPhone likewise notes that the difference between billings and

14 revenue is "immaterial."   Declaration of Amar L. Thakur dated July 8, 2013 ("Thakur Decl.") Ex.

15 5 ("Difference between Billing Amt and Revenue Amt deemed immaterial").   In any event, even

16 if Apple's statement is credited, the result is unchanged – system billings, as an element of

17 revenue, are relevant to determining Apple's revenues attributable to the accused Apple products.

18        Apple also seems to contend that Samsung did not request this revenue data on a per-

19 product basis.   *See* Opp. at 6, fn. 4.   Yet these documents were requested by Samsung's Request

20 for Production Nos. 101, 197, 543, 544, 551, 552, 555 and 556, which Samsung has moved on.

21           **2.**      **Apple Has Failed To Produce Revenue Adjustments – To Include**

22                  **Amortization, Deferrals, Commissions and Carrier Subsidies – on a**

23                  **Per-Product Basis.**

24        Similarly, Apple does not dispute that it tracks certain system revenue adjustments on a

25 per-model basis, to include amortization, deferrals, commissions and carrier subsidies.   Mr.

26 Buckley testified:

27             Q.    Okay. Now, after -- prior to the fourth -- Apple's fourth
                       quarter for the -- for 2011, what adjustments to system

28                        billings did Apple on a model-by-model basis?

1

> A.  Amortization and deferral. And commissions and carrier subsidies.   And it may be -- it may have been a rolling event, so it may not have, all four categories, occurred at a set point in time. I'd have to research.

2

3

> Q.  And I just -- I want to make sure that we're on the same page. The three items that you just labeled amortization -- or four, amortization, deferral, commission and carrier subsidies, was your testimony that they were tracked on a model-by-model level prior to the fourth quarter of 2011 or only after the fourth quarter of 2011?

4

5

6

> A.  Only after.

7

Fazio Reply Decl. Ex. 1, Buckley Tr. at 59:11- 60:3; *see also id. at* 70:18-71:1 (admitting that

8

Apple calculates deferral amounts per phone sold).   Such adjustments are relevant to

9

determining Apple's net revenue for the accused Apple products and should be ordered produced.

10

Apple argues against their production, contending that it "has never applied those

11

additional elements . . . to system billings in a manner that would yield reliable revenue data per

12

iPhone model worldwide, let alone for the United States."   Opp. at 6, n. 4.   Apple's argument

13

misses the mark.   The test for discoverability is not whether Apple has used this revenue

14

adjustment data in a particular manner.   Rather, and consistent with the Rules, this data regarding

15

adjustments is discoverable because it is relevant to Samsung's claims or defenses and,

16

specifically, an accurate determination of net revenue from sales of the accused Apple products.

17

*See Fed. R. Civ. P*. 26(b).

18

### 3.   Apple Has Failed to Produce Standard Margins for the U.S. Market.

19

Apple also contends that its "Rule 30(b)(6) designee on financial topics confirmed under

20

oath that Apple does not maintain such data."   Opp. at 1.   Apple's vague statement seems to

21

imply that Apple does not maintain standard margins for the U.S. market.   Mr. Buckley,

22

however, testified to the contrary:

23

> Q.  Can Apple calculate standard margin for the iPhone for the United States only?

24

> A.  For the iPhone business, yes.

25

Fazio Reply Decl. Ex. 1, Buckley Tr. at 23:8-10.

26

Notably, in Mr. Buckley's declaration submitted in support of Apple's opposition brief,

27

Apple carefully avoids the issue of standards margins for the U.S. market.   Indeed, though Mr.

28

-4-

1  Buckley declares that "Apple does maintain *gross* margin data by product line at the *worldwide*

2  level," (*see* Buckley Decl. ¶ 7), he says nothing about *standard* margins for the *U.S. market* –

3  which Apple plainly possesses and can produce.

4  **4.    Apple Has Failed To Produce Advertising and Marketing Expenses For**

5  **Its "Hero Products" For The U.S. Market.**

6  Apple also maintains documents showing its advertising and marketing expenses for the

7  U.S. market and for certain products.    Specifically, Mr. Buckley testified that "we've looked at

8  our hero product and a subset of total advertising expense, a subset of that.    *We do look on our*

9  *hero products and I do have a view of that worldwide and U.S.*"    Fazio Reply Decl. Ex. 1,

10 Buckley Tr. at 116:23-117:9 (emphasis added).    Mr. Buckley noted that these "hero products"

11 include "music, Mac, iPhone and iPad" and that such advertising and marketing data is generated

12 quarterly.    *See id.*    Apple's Opposition brief does not address these categories of data.    Apple

13 should be ordered to produce this data without further delay.

14 **5.    Apple Has Failed to Produce Gross Margin Data on a Per-Product**

15 **Basis.**

16 Apple contends that "Samsung gave up its request for [gross margin] reports in exchange

17 for discovery concessions from Apple" and, thus, Samsung is barred from obtaining any gross

18 margin data from Apple.    *See* Opp. at 5-6, n. 3.    Apple's argument is incorrect for two reasons.

19 First, gross margin reports, which no longer are generated by Apple, only show

20 "*estimates*" of gross margins – "*not actuals.*"    *See* Fazio Reply Decl., Ex. 1, Buckley Tr. at

21 31:13-19 (emphasis added).    Apple separately maintains *other* documents showing its "ongoing"

22 analysis of actual worldwide gross margins per-product and, according to Mr. Buckley, Apple has

23 been generating these documents showing actual gross margins for the past year.    *See id.* at 63:7-

24 64:24; 67:26-68:14.    Merely because Samsung agreed not to pursue gross margin reports cannot

25 rationally be construed to mean that Samsung cannot obtain *actual* gross margin data that is not

26 contained in those reports in the first place.    Samsung is entitled to these documents showing

27 Apple's ongoing analysis of actual gross margins on a per-product basis.

28 Second, merely because Samsung agreed not to pursue a specific type of document – gross

1   margin reports – does not mean that Samsung forfeited its right to other Apple documents that

2   may show estimated gross margins on a per-product basis.   *See* Ex. 3 to Declaration of Rod Stone

3   filed July 30, 2013.   For this additional reason, Apple should be compelled to produce the gross

4   margin data on a per-product basis that Samsung seeks in its Motion.

5         **B.      Apple's Own Documents Show That Apple Possesses Further Financial**

6              **Documents That It Has Not Produced.**

7         In his declaration, Mr. Buckley carefully cabins his statements to the purported effort

8   Apple would have to undertake to generate financial data on a "per-model, U.S. basis."   Mr.

9   Buckley thus slams together both *U.S.* financial data and *per-product* financial data in his analysis.

10  However, Mr. Buckley's declaration is silent as to whether Apple maintains financial data for the

11  U.S. market and, *separately*, financial data per-product.   As detailed below, it is a provable fact

12  that for certain additional categories of financial data, Apple does in fact maintain such data for

13  either the U.S. market or per-product.

14        First, Apple concedes that it maintains gross margin data on a per-product basis (Opp. at 5,

15  n.3), and therefore, tacitly admits that it maintains the per-product revenue and cost data needed to

16  calculate gross margins.   Indeed, as Apple's own documents show, Apple cannot determine gross

17  margin data on a per-product basis without first calculating revenues and cost data—including

18  standard cost, variances, royalties, and other costs of goods sold ("OCOGS") on a per-product

19  basis.   *See* Thakur Decl. Ex. 5 (calculating gross margins equal to total revenue minus standard

20  costs, variance, royalties, and OCOGS).   If Apple maintains per-product gross margins, Apple

21  necessarily must maintain per-product revenue and cost data that it has withheld from Samsung.

22  Apple should be compelled to produce such documents.

23        Second, additional Apple documents confirm that Apple maintains detailed cost/expense

24  data not only for each accused Apple product, but also for each *variation* of the accused products.

25  For example, Exhibits 21 and 24 to the Thakur Declaration show variances, royalties and

26  OCOGS—as well as each individual line item comprising these costs—separately for many

27  different variations of the iPhone and iPad.   *See, e.g.,* Thakur Decl. Ex. 21 at APLNDC630-

28  0000875192-195 (four different variations of iPhone 4); Thakur Decl. Ex. 24 at APLNDC630-

1   0000875000-015 ("U.S. ONLY" costs for 6 variations of iPad 2 and 18 variations of iPad 3).

2   Apple dismisses these documents, contending that they merely reflect "target costs" (Opp. 9, n.

3   6).[1]   Yet Apple ignores the fact that both Exhibits 21 and 24 expressly note the difference

4   between "Total Cost" and "Cost Target" for each product.   *See, e.g.,* Thakur Decl. Ex. 21 at

5   APLNDC630-0000875190 ("Δ to Cost Target"); Thakur Decl. Ex. 24 at APLNDC630-

6   0000875002-003 ("Delta to Cost Target").   Apple points to nothing in the documents themselves

7   suggesting that they show anything other than actual costs.[2]

8       Lastly, Samsung's Motion cited numerous other documents showing that Apple regularly

9   generates projections of U.S.-only revenues and gross margins on a per-product basis.   Although

10  financial projections are responsive to document requests that are the subject of Samsung's

11  Motion (*see* RFP Nos. 547-550, 553-554, 864-865), Apple asserts that it may withhold documents

12  that Apple deems "overly simplistic" or "likely inaccurate."   Opp. at 9.   Apple's cites no

13  authority for this proposition, and the law is to the contrary.

14      Financial projections, by definition, do not reflect "actual data" and are therefore "likely

15  inaccurate;" yet courts routinely compel parties to produce such documents.   *See, e.g., Vasudevan*

16  *Software, Inc. v. MicroStrategy Inc.*, 2013 WL 597655, *1 (N.D. Cal. Feb. 15, 2013) (granting

17  motion to compel production of "documents relating to [the accused infringer's] financial

18  projections"); *Phase Four Indus., Inc. v. Marathon Coach, Inc.*, 2006 WL 1465313, *3–*8 (N.D.

19  Cal. May 24, 2006) (granting patentee's motion to compel accused infringer to produce sales

20  projections and price estimates).   Here too, Apple should not be permitted to withhold financial

21  projections on the grounds that they may contain information ultimately deemed inaccurate.

---

[1]   Apple's only support for this assertion is Mr. Buckley's blanket statement that documents cited by Samsung "***appear*** to contain merely estimates, targets, or projections of various financial items."   Buckley Decl. ¶ 10 (emphasis added).   Notably, Mr. Buckley does not claim to have any knowledge of these documents, which were not produced from his custodial files.

[2]   Apple's suggestion that its production of costed BOMs satisfies Samsung's request for product-level cost data is disingenuous.   As Apple admits, costed BOMs are limited to the costs of components.   Buckley Decl. ¶ 9.   The documents cited by Samsung show a host of additional costs—including variances, royalties, overhead, freight, distribution, Applecare and warranty, and period expense—that are absent from Apple's costed BOMs.   *See* Thakur Decl. Exs. 21-24.

1   **II.    APPLE NEED ONLY QUERY ITS OWN FINANCIAL DATABASES TO**

2   **PROVIDE THE REMAINING INFORMATION REQUESTED BY SAMSUNG.**

3       **A.    Rule 34 And Applicable Case Law Does Not Excuse Production Merely**

4           **Because Apple May Need To Compile New Data.**

5         Apple contends that it "should not be compelled to create financial data for production."

6   *See* Opp. at 3:2-3.   Apple's argument, however, overlooks a critical difference.   Samsung has

7   not asked Apple to create new financial data where there is no underlying database from which

8   such data may be derived.   Rather, Samsung requests that Apple merely query its existing

9   financial data in order to produce financial information that its Rule 30(b)(6) designee testified

10   that Apple is capable of deriving.[3]   Importantly, Apple does not deny that the financial data that

11   Samsung seeks is ascertainable, but claims that Apple's discovery obligations do not extend to

12   querying its pre-existing data.   Federal Rule of Civil Procedure 34 and case law, however,

13   provide to the contrary.

14         Rule 34 specifically allows for a party to serve on any other party a request for "any

15   designated documents or electronically stored information ... stored in any medium from which

16   information can be obtained either directly or, if necessary, after translation by the responding

17   party into a reasonably usable form."   *Fed. R. Civ. P.* 34(a)(1)(A).   In 2006, Rule 34 was

18   amended to make explicit that dynamic databases were subject to Rule 34 production:

19   "Electronically stored information *may exist in dynamic databases* and other forms far different

20   from fixed expression on paper.   Rule 34(a) is amended to confirm that *discovery of*

21   *electronically stored information stands on equal footing with discovery of paper documents."*

22   *Fed. R. Civ. P.* 34, Advisory Committee notes (2006 Amendment) (emphasis added).   Even 45

23   years ago, the Advisory Committee recognized the importance of electronic data compilations and

24   the necessity of requiring a party to translate this data into usable form:

25   _____

26   [3]   As discussed below, this financial data consists of:   (1) gross margins for the accused Apple
products for the U.S. market; (2) sales expenses for the U.S. market; (3) operating margins for the

27   U.S. market; and (4) amounts spent on advertising on a per-model basis.

28

> Rule 34 applies to electronics data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form.

*Fed. R. Civ. P.* 34, Advisory Committee notes (1970 Amendment).

Numerous courts have found that Rule 34 requires the production of reports from dynamic databases, such as Apple's financial databases here.    As just one example, in *In re eBay Seller Antitrust Litigation*, 2009 WL 3613511, *1 (N.D. Cal. Oct. 28, 2009), plaintiff sought to compel defendant eBay to produce records regarding certain transactional data.    Defendant argued, as does Apple here, that production of this transactional data would necessitate expending significant time and resources in order to "creat[e] new data solely for the instant litigation."   *See id.*   The district court rejected defendant's argument, and upheld the magistrate judge's order finding that, consistent with Rule 34, "the technical burden to [defendant] of *creating a new dataset* for the instant litigation does not excuse production."   *Id.* at *2 (emphasis added).

As another example, in *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006), the Court denied Google's motion to quash a government subpoena that required production of search query and URL information from databases, over Google's objection that it "does not maintain search query or URL information in the ordinary course of business."   Notwithstanding the "general rule" that parties "are not required to create documents that do not exist," the Court compelled Google to produce the requested information despite the need for Google to create "*new code to format and extract query and URL data from many computer banks*."   *Id.* (emphasis added).

Additional courts similarly hold that a party's discovery obligations under Rule 34 extend to querying data in the manner requested by Samsung here.   *See, e.g., Burkybile v. Mitsubishi Motors Corp.*, 2006 U.S. Dist. LEXIS 84864, *10-14 (N.D. Ill. Oct. 17, 2006) (ordering production of data from database where the information existed, but was accessible in some form); *Jinks-Umstead v. England*, 227 F.R.D. 143, 148 (D.D.C. 2005) (requiring party to formulate queries and consult reports in order to recover information from its database to produce in

1    discovery).   Consistent with the rulings of these cases, the Court should require Apple to perform

2    the necessary searches to produce the requested data.

3         **B.        The Case Law Cited By Apple Is Inapposite.**

4              Each of the cases cited by Apple is distinguishable because they involved requests for

5    paper documents or underlying data that did not exist – and had never existed – in any form.   *Van*

6    *v. Wal-Mart Stores, Inc.*, 2011 WL 62499, *1, n.1 (N.D. Cal. Jan. 7, 2011) (denying motion to

7    compel seeking that defendant alter an existing document by labeling previously produced floor

8    plans); *Chandler v. Carroll*, 2013 WL 2323048, *3 (D. Vermont May 28, 2013) (plaintiff

9    requested medical records and audio/visual tapes of his incarceration, but he admitted he had

10   never been treated by defendant's medical personnel, and defendant's counsel attested that there

11   were no tapes of his incarceration); *Thomas v. Lawler*, 2013 WL 3367488, *5 (M.D. Pa. July 3,

12   2013) (denying plaintiff's motion requesting that defendant photograph the prison chapel in order

13   to then produce the photograph as a document responsive to plaintiff's document requests).

14             Similarly, Apple contends that this rule "is particularly true where a party seeks to compel

15   the creation of financial documents that do not otherwise exist in the ordinary course of business."

16   Opp. at 3:19-21.   Not so.   Rather, in each of the cases cited by Apple that purportedly involved

17   financial information, the moving party failed to provide sufficient evidence showing that the

18   financial data it sought could be extracted from an underlying database.   *See Illinois Cent. R.R. v.*

19   *16.032 Acres of Land in Jefferson Parish*, 1999 WL 61568, *1 (E.D. La. Aug. 12, 1999)

20   (plaintiff offered no evidence disputing defendant's statement that "it does not possess the

21   means to generate those figures").[4]

22   _____

23   [4]   *See also Edeh v. Equifax, LLC*, 2013 WL 1749912, *13-14 (D. Minn. Apr. 23, 2013) (plaintiff
24   had not presented "any evidence to counter [defendant's] assertion that it does not have any
     responsive documents"); *Wagener v. SBC Pension Benefit Plan-Non-Bargained Program*, 2007
25   WL 915209, *4 (D.D.C. Mar. 26, 2007) (same).   Additionally, one of the cases cited by Apple,
     *IBM v. BGC Partners, Inc.*, 2013 WL 1775373 (S.D.N.Y. April 25, 2013), did not involve a
26   motion to compel.   Rather, in that case, the court denied a motion for adverse inference
     instruction because defendant could not be sanctioned for failing to collect information that it did
27   not otherwise collect in the ordinary course.   *See id.* at *1.

28

By contrast, here, Apple's 30(b)(6) designee on financial topics conceded that Apple could readily generate such data.   With respect to gross margins for the iPhone line for the U.S. market, Mr. Buckley testified: "Could we take a stab at it?   Yeah, I guess we could …."   Fazio Reply Decl. Ex. 1, Buckley Tr. at 28:7-12.   Mr. Buckley even provided a roadmap for how to perform this gross margin calculation for the U.S. market, stating:

> I would come up with the start of a document to get to gross margin. Yes, you would start with revenue and yes, I would look at U.S. revenue, and then everything else below revenue, we'd have to figure out how do we allocate this to U.S. sales.

*Id.* at 42:7-17; *see also id.* at 51:19-52:1 (conceding that Apple can calculate operating margins for iPhone line of business for U.S. market only).

Similarly, for sales expense for the iPhone line for the U.S. market only, Mr. Buckley offered a "very simple way" for determining sales expense for the iPhone line of business for the U.S. market, stating:   "But, you know, could you look at division 56 [the U.S. division] and say, all right, what's from division 56 that's flowing in the sales expense line? Yeah. That's a very simple way of doing it."   *Id.* at 45:18-46:8.   Mr. Buckley's proffer of a simple way of extracting this sales expense data for the U.S. market further supports production.

## C.   Apple Has Failed To Demonstrate That It Is Unduly Burdensome To Produce The Requested Data.

Apple contends that production of the data that Samsung seeks "would entail significant burden, requiring the input of multiple financial groups at Apple and likely several months of coordinated effort."   Opp. at 7:7-9.   Importantly, Apple does *not* contend that this data is inaccessible – only that it would be a "lengthy process" to obtain it.

Undue burden requires Apple to make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements …."   *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Kennedy v. Jackson Nat'l Life Ins. Co.,* 2010 WL 1644944, *1 (N.D. Cal. Apr. 22, 2010) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test") (quoting *Beckman Indus., Inc. v. International Ins. Co*., 966 F.2d 470, 476 (9th Cir. 1992)).   Apple's conclusory statements that

1   generating the data sought would "take several months" (*see* Buckley Decl. ¶ 6) are insufficient.

2       Moreover, Apple does not address the factors under Rule 26(b) for assessing undue

3   burden, which include "likely benefit, the needs of the case, the amount in controversy, the parties'

4   resources, the importance of the issues at stake in the action and the important of the discovery in

5   resolving the issues."   Here, the relevant time period in this case spans several years.   This time

6   dimension alone – and the fact that discovery is aimed at such a substantial time frame – makes

7   the needs of the case great.   The amount in controversy, is at least hundreds of millions of dollars

8   and, thus, dwarfs the purported burden to Apple.   And with respect to resources, Apple does not

9   dispute that few parties are as well resourced as it – indeed, having three law firms litigating this

10  case on its behalf.   *See In re eBay Seller Antitrust Litig.*, 2009 WL 3613511 at *2 (requiring eBay

11  to create a new dataset notwithstanding eBay's claim that production would require creating new

12  programs and spending more than 6 months and costing as much as $300,000).   Accordingly,

13  Apple fails to show that the burden of production is undue.

14  **III.   THE DOCUMENTS SOUGHT BY SAMSUNG ARE CONSISTENT WITH THE**

15  **PARTIES' AGREEMENT.**

16      Apple also seems to contend that the parties' prior agreement regarding the scope of

17  financial document production weighs in favor of denying Samsung's Motion.   *See* Opp. at 2:18-

18  25.   Yet Apple cites nothing detailing the parties' agreement.   The parties' correspondence

19  demonstrates that the documents Samsung seeks are well within that agreement and are documents

20  that Samsung itself has produced.

21      Both parties propounded requests for production seeking numerous financial documents, to

22  include gross and net revenues; gross and net incomes; gross and net profits; costs of good sold;

23  commissions; selling expenses; and general and administrative expenses.   *Compare* Apple RFP

24  Nos. 314-315 (Fazio Reply Decl. Ex. 2) *with* Samsung RFP No. 197 (Mot. at iv).   Samsung

25  agreed to produce these financial documents "for the accused Samsung products sold in the U.S."

26  *See* Fazio Reply Decl. Ex. 3, letter from Fazio to Krevitt dated March 8, 2013.   Samsung

27  confirmed *both* parties' agreement to produce these financial documents, stating:

28

1    This agreement to produce is with the understanding that Apple has
     agreed to produce comparable financial data for the accused Apple
2    products.

3    *See id.*

4          Indeed, it was Apple that initially demanded production of at least some of this financial

5    data, to include gross financial information, for the accused Samsung products.    *See* Fazio Reply

6    Decl. Ex. 4, letter from Valek to Fazio dated Feb. 26, 2013 ("[G]ross financial information is

7    needed to accurately determin[e] Samsung's margins on its accused products … We understand

8    that Samsung will tell us by March 8, 2013, whether it will agree to produce this gross financial

9    information or whether it will continue its objection to produce the same – in which case Apple

10   will be free to move to compel the same") (internal quotations omitted).    Apple cannot have it

11   both ways – it cannot demand production of gross financial information from Samsung and then,

12   after Samsung produces such information, refuse to provide Apple's own comparable gross

13   financial data.    For this further additional reason, Samsung's Motion should be granted.

14                                   **CONCLUSION**

15         Samsung respectfully requests that the Court grant Samsung's Motion to Compel.

16

17   DATED:    August 6, 2013              QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
18

19
                                          By  */s/ Victoria F. Maroulis*
20                                            Victoria F. Maroulis
                                              Attorney for SAMSUNG ELECTRONICS CO.,
21                                            LTD., SAMSUNG ELECTRONICS AMERICA,
                                              INC., and SAMSUNG
22                                            TELECOMMUNICATIONS AMERICA, LLC

23

24

25

26

27

28