1  JOSH A. KREVITT (CA SBN 208552)  WILLIAM F. LEE (*pro hac vice*)
   jkrevitt@gibsondunn.com           william.lee@wilmerhale.com
2  H. MARK LYON (CA SBN 162061)     WILMER CUTLER PICKERING
   mlyon@gibsondunn.com                HALE AND DORR LLP
3  GIBSON, DUNN & CRUTCHER LLP      60 State Street
   1881 Page Mill Road              Boston, Massachusetts 02109
4  Palo Alto, California 94304-1211 Telephone: (617) 526-6000
   Telephone: (650) 849-5300        Facsimile: (617) 526-5000
5  Facsimile: (650) 849-5333

6  MICHAEL A. JACOBS (CA SBN 111664)  MARK D. SELWYN (CA SBN 244180)
   mjacobs@mofo.com                    mark.selwyn@wilmerhale.com
7  RICHARD S.J. HUNG (CA SBN 197425)  WILMER CUTLER PICKERING
   rhung@mofo.com                        HALE AND DORR LLP
8  MORRISON & FOERSTER LLP            950 Page Mill Road
   425 Market Street                  Palo Alto, California 94304
9  San Francisco, California 94105-2482  Telephone: (650) 858-6000
   Telephone: (415) 268-7000          Facsimile: (650) 858-6100
10 Facsimile: (415) 268-7522

11 *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 12-cv-00630-LHK<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO COMPEL DOCUMENTS FROM RELATED LITIGATIONS** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...............................................................................................................1

II. BACKGROUND .................................................................................................................2

    A. Legal Standard .......................................................................................................2

    B. The "Technological Nexus" Standard ...................................................................2

    C. The Meet And Confer Process And Related Correspondence ..............................4

III. ARGUMENT .......................................................................................................................6

    A. There Is No Technological Nexus Between The VirnetX Case And This Case. ..................................................................................................................6

    B. There Is No Technological Nexus Between The Nokia and Kodak Investigations And This Case. ............................................................................10

    C. The Requested Discovery Is Overbroad And Unduly Burdensome. .............14

IV. CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alloc Inc. v. Pergo, Inc.*,
  Case No. 02-cv-00736 (E.D. Wis.) ..................................................................................8

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ......................................................................................13

*Apple Inc. v. Samsung Electronics Co., Ltd., et al.*,
  Case No. 11-cv-01846 (N.D. Cal.) ...................................................................................1

*Chen v. Ampco Sys. Parking*,
  Case No. 08-cv-0422-BEN, 2009 WL 2496729 (S.D. Cal. Aug. 14, 2009) .....................9

*High Point SARL v. Sprint Nextel Corp.*,
  Case No. 09-2269, 2012 WL 1533213 (D. Kan. Apr. 30, 2012) ...................................10

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
  285 F.R.D. 481 (N.D. Cal. 2012) ...............................................................................2, 15

*Oklahoma, ex rel. Edmondson v. Tyson Foods, Inc.*,
  Case No. 05-cv-329-TCK, 2006 WL 2862216 (N.D. Okla. Oct. 4, 2006) .......................9

*Payne v. Howard*,
  75 F.R.D. 465 (D.D.C. 1977) ...........................................................................................9

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ........................................................................................10

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D. Cal. 1995) .....................................................................................2

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ...............................................................................10, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................................... *passim*

## I. INTRODUCTION

The present dispute concerns the application to this case of the "technological nexus" standard adopted by the Court in Case No. 11-cv-01846 ("the 1846 case"). There, in view of the "balancing provisions" of Fed. R. Civ. P. 26(b)(2)(C)(iii), the Court found that the technological nexus standard was an appropriate gauge of the discoverability of materials from other litigations. *See Apple Inc. v. Samsung Electronics Co., Ltd., et al.*, Case No. 11-cv-01846 (N.D. Cal.) (Dkt. No. 536 at 5). Given the Court's guidance from the 1846 case, and as a result of the meet-and-confer process in this case, Apple has produced or agreed to produce tens of thousands of pages of litigation documents (such as expert reports and/or deposition transcripts) from over a dozen other litigations that have an alleged technological nexus to the present case.[1]

However, the parties have reached an impasse regarding whether three additional litigations have a technological nexus to this action:

1. *VirnetX, Inc. v. Cisco Systems, Inc., et al.*, Case No. 6:10-cv-00417 (E.D. Tex.) ("VirnetX case");[2]

2. *In the Matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers,* Inv. No. 337-TA-701 ("Nokia Investigation"); and

3. *In the Matter of Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components Thereof*, Inv. No. 337-TA-703 ("Kodak Investigation").

Because the alleged technological nexus that Samsung attempts to draw between this case and each of the three cases listed above is unreasonably broad and fails to justify the expansive discovery that Samsung seeks, Samsung's motion should be denied.

---

[1] *See* Declaration of Peter. J. Kolovos in Support of Apple's Opposition to Samsung's Motion to Compel Documents from Related Litigations ("Kolovos Decl.") Ex. 1. This number does not include documents produced to Samsung in the 1846 case from other Apple litigations (*see, e.g.,* Case No. 11-cv-01846 (Dkt. No. 1043)), although these documents are also deemed produced in this action pursuant to the Protective Order in this case.

[2] Samsung's document requests also seek documents from Case No. 6:12-cv-00855 (E.D. Tex.), but Samsung has not moved to compel the production of these documents. *See* Dkt. No. 496 ("Motion") at 1 ("Relief Requested"); Dkt. No. 497 (Proposed Order).

1

## II. BACKGROUND

### A. Legal Standard

The scope of discovery shall be limited to "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). The burden of proving that the requested discovery is relevant falls on the moving party. *See Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)"); *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) ("[T]he party seeking to compel discovery bears the burden of showing that his request satisfies the relevance requirement of Rule 26[.]"). Accordingly, it is Samsung's burden to prove that the documents it requests from other litigations are relevant to this case.

### B. The "Technological Nexus" Standard

Apple is not, as Samsung suggests, applying a "heightened standard of relevance" (Motion at 1) to the discoverability of materials from the VirnetX case and the Nokia and Kodak Investigations. Rather, Apple is employing the standard adopted by this Court in the 1846 case and agreed to by the parties in this case. In the 1846 case, Apple offered, and the Court accepted, a definition of "technological nexus" in order to impose reasonable constraints on the discovery of materials from other matters; that definition included "cases involving the patents-in-suit or patents covering the same or similar technologies, features, or designs as the patents-in-suit." *See* Case No. 11-cv-01846 (Dkt. No. 536 at 5).[3] The Court found that this definition was an "appropriate" means of balancing the concerns identified in Fed. R. Civ. P. 26(b)(2)(C)(iii), such as the burden or expense of the proposed discovery and the importance of the proposed discovery in resolving the issues. *See id.*

---

[3] Further, with specific reference to the asserted utility patents in the 1846 case, Apple's definition included "touchbased interface functions, display elements, touch-screen hardware, or touch-screen logic." *See id.*

2

Apple's Opposition to Samsung's Motion to Compel
Case No. 12-cv-00630 (LHK)

On April 12, 2012, Samsung issued a similar set of document requests in this case as it did in the 1846 case, including a request for transcripts from other matters relating to the Apple patents. *See, e.g.,* Kolovos Decl. Ex. 2 (Apple's Objections and Responses to Samsung's Request for Production No. 61). Recognizing the logic in applying the technological nexus standard from the 1846 case to this case, and in an attempt to avoid burdening the Court with unnecessary motion practice, the parties negotiated an appropriate definition of "technological nexus" for this action. After meeting and conferring and "several rounds of correspondence," the parties agreed to use the following definition for the Apple patents:

> Prior cases involving the Apple patents-in-suit or patents covering the same or similar technologies, features or designs as the Apple patents-in-suit. With respect to patent inventors, this would include the asserted utility patents or other utility patents covering touch-sensitive user interaction to perform unlock functions, asynchronous sync functionality, word correction and recommendation functions, missed call management functionality, search functionality, historical list functions, and special text detection.

*Id.* at Ex. 1 (3/1/13 Letter from Thakur).

As evidenced by the parties' negotiations and the definition ultimately agreed upon by the parties, the definition of "technological nexus" was meant to be a reasonable proxy for the features described in the asserted patents. For example, on November 28, 2012, Samsung wrote Apple proposing that the parties use the phrase "touch-sensitive user interaction" as part of the technological nexus definition. *Id.* at Ex. 3 (11/28/12 Letter from Fazio). Apple objected and suggested that the parties limit Samsung's proposed language by adding the phrase "to perform unlock functions" because Samsung's language was so ambiguous that it "potentially extend[ed] the definition of 'technological nexus' far beyond the 'slide-to-unlock' functionality at issue . . . . and [Apple's proposal] more appropriately matches the definition to the functionality at issue." *Id.* at Ex. 4 (12/1/12 Letter from Valek). Samsung agreed to add Apple's proposed language. *Id.* at Ex. 1.

1      Despite the agreement reached by the parties for the Apple patents-in-suit (pursuant

2  to which Apple has agreed to produce documents from over a dozen other litigations (*Id.* at

3  Ex. 1)), Samsung now takes the position that a technological nexus can exist even if there is

4  no overlap in the "inventive features." *See* Motion at 8.  For example, Samsung now

5  contends that the VirnetX patents share a nexus with the '239 patent simply because both

6  "disclose transmissions using cellular telephone technology such as CDMA, phone lines,

7  and transmitters." *Id.*  Indeed, Samsung's proposed nexus is so broad that all litigations

8  involving Samsung's telecommunication-related patents, such as its patents that have been

9  declared essential to 3GPP standards, would share a technological nexus (and thus fall

10 within the scope of Samsung's obligation to produce documents from its other litigations to

11 Apple).  The nexus proposed by Samsung for the Nokia and Kodak Investigations is equally

12 broad, as Samsung simply asserts that the documents from these investigations "are relevant

13 because Nokia's '256 patent and Kodak's '218 patent—like Samsung's '449 patent—relate

14 to digital camera technology designed for mobile devices." Motion at 5.  In contrast with

15 the more granular definitions of "technological nexus" employed in the 1846 case and

16 agreed upon by the parties for the Apple patents in this case, the nexus Samsung attempts to

17 draw between this case and the VirnetX case, Nokia Investigation, and Kodak Investigation

18 is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

19      **C.    The Meet And Confer Process And Related Correspondence**

20      Samsung first sent Apple a letter complaining of Apple's responses to Samsung's

21 document requests pertaining to the VirnetX case on December 20, 2012.  *See* Kolovos

22 Decl. Ex. 5 (12/20/12 Letter from Thakur).  In response, Apple wrote to Samsung to explain

23 its objections in further detail, noting both that "the VirnetX litigation is not relevant to

24 either party's claims or defenses in this case *because* it has no technological nexus with this

25 case" and that "the VirnetX patents-in-suit relate to the establishment of secure

26 communications between computers—an area of technology not covered by or in any way

27 related to any of the patents-in-suit in this litigation." *Id.* at Ex. 6 (1/11/13 Letter from

28

4

Kolovos). Samsung agreed to discuss the issue at the parties' next meet and confer. *Id.* at Ex. 7 (1/14/13 Letter from Thakur). Then, nearly two months later, on March 5, 2013, Samsung wrote to follow-up on its January 14 letter and asserted that the VirnetX requests "seek relevant documents because both the VirnetX litigation and the present litigation involve the same accused Apple product: FaceTime." *Id.* at Ex. 8 (3/5/13 Letter from Thakur). [4]

On March 3, 2013, Samsung wrote to Apple regarding its responses to Samsung's document requests pertaining to the Nokia and Kodak Investigations. *Id.* at Ex. 9 (3/3/13 Letter from Thakur). In its letter, Samsung responded to Apple's objection that the Nokia and Kodak Investigations lacked a "technological nexus" by alleging that "Samsung's asserted patent '449 similarly relates to digital camera technology for mobile phones." *Id.*

Apple jointly addressed Samsung's March 3 letter regarding the Nokia and Kodak Investigations and Samsung's document requests related to the VirnetX case on March 21, 2013. *Id.* at Ex. 10 (3/21/13 Letter from Kolovos). On April 12, 2013, Samsung sent Apple a further letter on these issues, arguing for the first time that its requests for documents from the VirnetX litigation were pertinent to issues of "indirect infringement, willfulness, and the determination of a reasonable royalty." *Id.* at Ex. 11 (4/12/13 Letter from Thakur). Samsung also offered to "narrow" the scope of its requests to "deposition transcripts, trial transcripts, court rulings, infringement and invalidity contentions, expert reports, responses to requests for admission, responses to interrogatories, documents referenced in responses to interrogatories, and all documents submitted in connection with claim construction or motions other than discovery motions." After meeting and conferring further, the parties were unable to resolve their disagreement, and Samsung filed its motion to compel on May 7, 2013.

---

[4] Unlike in its prior correspondence, in its motion Samsung now refers to FaceTime as a feature of a product, rather than a product. *See* Motion at 2.

5

## III. ARGUMENT

### A. There Is No Technological Nexus Between the VirnetX Case And This Case.

Apple is not suggesting that the Court needs to conduct a "limitation-by-limitation comparison" (Motion at 7), or anything close to that, to determine that the technological nexus standard is not satisfied with respect to the VirnetX case. Rather, even a cursory comparison demonstrates that the '239 patent and the VirnetX patents relate to different technologies. As evidenced by the titles of the patents at issue, the VirnetX patents relate to a means for communicating securely over the Internet, whereas the '239 patent relates to capturing, compressing, and transmitting video. For comparison, below are the titles of the patents at issue:

| **Samsung Patent** | **VirnetX Patents** |
|---|---|
| 5,579,239 ("Remote Video Transmission System") | 6,502,135 ("Agile Network Protocol for Secure Communications with Assured System Availability") |
| | 6,839,759 ("Method for establishing secure communication link between computers of virtual private network without user entering any cryptographic information") |
| | 7,188,180 ("Method for establishing secure communication link between computers of virtual private network") |
| | 7,418,504 ("Agile Network Protocol For Secure Communications Using Secure Domain Names") |
| | 7,490,151 ("Establishment Of A Secure Communication Link Based On A Domain Name Service (DNS) Request") |
| | 7,921,211 (Agile network protocol for secure communications using secure domain names") |

1  Nor does the prosecution of these patents suggest any nexus between the
2  technologies at issue.  Although the '239 patent issued approximately four years before the
3  earliest of the VirnetX patents was filed, there is no indication that the '239 patent is
4  considered relevant prior art to the VirnetX patents (and Samsung does not suggest
5  otherwise), nor is the '239 patent art of record for any of the VirnetX patents.  Indeed, there
6  are approximately 400 patent references cited on the face of the VirnetX patents—but the
7  '239 patent is not among them.

8  Similarly, while the '239 patent indicates on its face that it falls into several patent
9  classifications, there is no overlap in those classifications with the VirnetX patents.  For
10 example, among others, the '239 patent falls into Classification Nos. 348 ("Television") and
11 386 ("Motion video signal processing for recording or reproducing").  According to the
12 U.S. Patent and Trademark Office, there are over 100,000 issued patents that fall under
13 those two classifications alone.  *See* Kolovos Decl. Ex. 12.  But, again, the VirnetX patents
14 are not among those.  In fact, none of the VirnetX patents fall under any of the U.S. patent
15 classifications listed on the face of the '239 patent.  Instead, all the VirnetX patents fall
16 under Classification No. 709 ("Electrical Computers And Digital Processing Systems:
17 Multicomputer Data Transferring"), which encompasses over 65,000 issued patents.  *See id*.
18 Thus, even at a very high level, the VirnetX patents do not cover similar features to what is
19 claimed in the '239 patent.

20 A review of the patents confirms the absence of a technological nexus between the
21 VirnetX case and this one.  For example, each of the VirnetX patents relates to secure
22 internet communications, namely a "secure mechanism for communicating over the
23 internet, including a protocol referred to as the Tunneled Agile Routing Protocol (TARP)"
24 and each "uses a unique two-layer encryption format and special TARP routers."  *See*
25 Kolovos Decl. Ex. 13 (U.S. Patent No. 6,502,135) at 2:66-3:2; Ex. 14 (U.S. Patent No.
26 6,839,759) at 3:8-11; Ex. 15 (U.S. Patent No. 7,188,180) at 3:11-14; Ex. 16 (U.S. Patent
27 No. 7,418,504) at 3:14-17; Ex. 17 (U.S. Patent No. 7,490,151) at 3:8-11; Ex. 18 (U.S.
28

7

Patent No. 7,921,211) at 3:10-14. By contrast, the '239 patent relates to a "means for capturing full-color, full-motion audio/video signals, digitizing and compressing the signals into a digitized data file, and transmitting the signals over telephone lines, cellular, radio and other telemetric frequencies." *See* '239 patent at 2:26-31. Samsung's '239 patent ***never mentions the Internet***, let alone alleged improvements in the security of Internet data transmissions, even though this is central to the VirnetX patents.

Samsung argues that, even if the "inventive features" are not the same, the VirnetX patents and the '239 patent share an alleged nexus because both "relate in part to transmitting video over similar means." *See* Motion at 8. However, Samsung cites no support for this claim, and makes almost no attempt whatsoever to compare the patents asserted in *VirnetX* to the '239 patent—surely because doing so would demonstrate the lack of a nexus. In fact, Samsung does not even discuss or cite any of the VirnetX patents in its motion except for the '211 patent (which itself is not mentioned in Samsung's discovery requests).[5] Samsung goes on to argue that both the VirnetX patents and the '239 patent "disclose transmissions using cellular telephone technology such as CDMA, phone lines, and transmitters." Even if true, however, this cannot be a reasonable test of relevance, as it would encompass nearly all litigation where a cellular phone is an accused product.

Samsung cites an unreported decision from another district court to suggest that it should be permitted to compel the VirnetX documents based solely on FaceTime being accused in both the VirnetX case and this case. *See* Motion at 8 (citing *Alloc, Inc. v. Unilin Beheer B.V.*, Case No. 02-cv-01266, 2006 WL 757871, at *5 (E.D. Wisc. Mar. 24, 2006)). However, there was an obvious technological nexus between that case and the purportedly related case, *Alloc Inc. v. Pergo, Inc.*, Case No. 02-cv-00736 (E.D. Wis.), since in both cases the asserted patents related to methods for connecting floor covering, *e.g.*, floor panels. In contrast, here, since there is no technological nexus between the '239 patent and

---

[5] Unlike the other VirnetX patents, Samsung never expressly seeks documents pertaining to the '211 patent, and many, if not all, of Samsung's document requests do not even pertain to the '211 patent. *See, e.g.,* Dkt. 496 at 2-3 (Samsung's Requests for Production Nos. 350-52).

8

the patents asserted in *VirnetX,* the discovery requested by Samsung should be denied. And indeed, in other cases where a moving party has sought discovery from allegedly related cases but failed to demonstrate why the requested discovery would be relevant, courts have denied the requested discovery. *See Chen v. Ampco Sys. Parking*, Case No. 08-cv-0422-BEN, 2009 WL 2496729, at *2-3 (S.D. Cal. Aug. 14, 2009) (denying plaintiff's request for additional discovery from "related" cases in part because plaintiff could not make a sufficient showing of relevance); *Oklahoma, ex rel. Edmondson v. Tyson Foods, Inc.,* Case No. 05-cv-329-TCK, 2006 WL 2862216 (N.D. Okla. Oct. 4, 2006) ("Although Plaintiffs do identify some surface similarities between the City of Tulsa action and the currently pending case, such similarities are not enough to require a carte blanche production of all documents from the City of Tulsa action."); *Payne v. Howard*, 75 F.R.D. 465, 469 (D.D.C. 1977) ("Parties to a lawsuit are only entitled to discover information that 'appears reasonably calculated to lead to the discovery of admissible evidence.' Whether pleadings in one suit are 'reasonably calculated' to lead to admissible evidence in another suit is far from clear. In the Court's view, discovery of this type of information typically will not lead to admissible evidence.") (citations omitted).

Perhaps recognizing that there is no "technological" nexus, Samsung asserts that the requested VirnetX litigation materials are relevant to issues of willfulness, indirect infringement, and damages. But the documents from the *VirnetX* case will not be relevant to these issues where the patents do not cover similar functionality. For example, since the "inventive features" of the '239 patent and the VirnetX patents are markedly different, there is no reason to think that documents pertaining to VirnetX's alleged damages will be relevant here (even if Apple uses the same damages expert in both cases).[6] *See Uniloc USA,*

---

[6] Samsung implies that Dr. Vellturo's role as Apple's damages expert in both the VirnetX case and this case alone makes its requested discovery relevant (Motion at 9), but does not explain how the analysis of *VirnetX's* alleged damages could inform the analysis of *Samsung's* alleged damages "regardless of the technological differences between the '239 patent and the VirnetX patents." *See id.* In any event, Samsung's document requests are not limited to Dr. Vellturo's testimony or even documents pertaining to damages issues.

*Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) (noting that in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010), the Court held that "evidence of royalty rates from licenses without a relationship to the claimed invention could not form the basis of a reasonable royalty calculation."). In any event, even if the Court were to find that some nexus existed, Samsung's sweeping request for materials from the VirnetX case would still not be warranted.[7] Since Apple has already agreed to produce all documents in its possession related to the functionality accused by Samsung in its infringement contentions (which includes FaceTime), it is unlikely that Samsung's requested discovery will have any non-cumulative, probative value to any issue in this case. Accordingly, the Court should deny Samsung's requests for documents from the VirnetX litigation.

### B. There Is No Technological Nexus Between The Nokia and Kodak Investigations And This Case.

Samsung suggests that the Nokia Investigation possesses the required technological nexus with this case because two asserted Samsung patents (the '449 patent and the '239 patent) and the '256 patent to Nokia "involve digital camera technology."[8] While Samsung is correct that at some high level these patents relate to digital camera technology, these patents are nonetheless fundamentally different.[9]

---

[7] Even in the case relied upon by Samsung, the court limited the required production of documents to relevant patent license agreements, damages expert reports, and deposition transcripts of damages experts. Further, this was only after a finding that the patents at issue were similar because both "address[ed] packetization of voice traffic and interfacing packet networks with traditional circuit-switched telephone networks." *See High Point SARL v. Sprint Nextel Corp.*, Case No. 09-2269, 2012 WL 1533213, at *5 (D. Kan. Apr. 30, 2012).

[8] Samsung also suggests in a footnote that the '735 patent to Nokia bears a "striking resemblance" to Apple's '647 patent (Motion at 11 n.4). Samsung has not previously raised this argument with Apple in correspondence or during the parties' meet and confer sessions.

[9] Samsung notes that Apple has previously distinguished its dispute with Kodak from the 1846 case on the basis that the patents asserted by Kodak related to digital imaging technology. Motion at 10. Although this was an accurate distinction, this does not mean that Apple contends that all patents that relate to digital imaging technology share a "technological nexus."

In its discovery responses in this case, Samsung has stated that the following features of the asserted '449 patent were purportedly non-obvious: "The '449 patent explains that at the time of the invention, a way of organizing images and videos stored in a digital camera was needed . . . . The '449 patent solves this problem by allowing images to be organized into different classifications or albums within the digital camera." *See* Kolovos Decl. Ex. 19 at 12 (Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories). Similarly, for the alleged non-obviousness of the '239 patent, Samsung has stated: "Before the '239 patent, it was difficult and expensive to transmit video from a remote location. Such transmissions required extensive and expensive equipment, or traveling back to a studio quickly to transfer the video to equipment that can manipulate it for transmission. The '239 patent solved this problem and introduced a novel way to transmit video from a remote location. This groundbreaking innovation allows for the rapid transmission of high quality video from remote locations without the need for expensive, bulky, and difficult to setup equipment, such as satellite transmission technology." *See id* at 15. The components of the purportedly novel system claimed in the '239 patent included a remote unit, a host unit, and a playback unit. *See* '239 patent at Abstract, Fig. 1.

However, unlike the '449 and '239 patents, Nokia's '256 patent is primarily concerned with camera "control" as between the camera module and the mobile terminal processor—not "a way of organizing images and videos" ('449 patent) or a novel way of transmitting videos from a remote location ('239 patent). *See* '256 patent at 2:1-3, 23-26 ("The mobile terminal also includes a single-chip camera module and an integrated mobile terminal processor . . . . In the mobile terminal of the present invention, the camera control resides in the mobile terminal processor and overrides basic sensor driving and adjustment functions in operation."). In other words, Nokia's '256 patent is directed to the interplay between the camera module chip and mobile terminal processor chip, not the features purportedly covered by Samsung's '449 and '239 patents.

11

1   Given Samsung's interrogatory response admissions about the nature of the
2   technology claimed in the '449 and '239 patents, Samsung cannot now claim that it is
3   entitled to discovery from Apple from other litigations using a broader alleged definition of
4   the relevant technology.  While it is true that, on some level, these patents relate to digital
5   camera technology (and thus might share various camera hardware limitations, such as the
6   ones noted by Samsung in its motion), the '256 patent covers fundamentally different
7   camera features than the '449 patent or the '239 patent.  And to the extent that the patents
8   have some generic camera requirements in common, such as image sensors or processors
9   that can convert data into popular image or video formats, Samsung has not established how
10  this is likely to relate to any asserted claim or defense in this case.

11  The '218 patent in the Kodak Investigation also bears no resemblance to the alleged
12  inventive features of the '449 patent and '239 patent.  The '218 patent relates to the
13  operation of a camera in two "modes":  (1) a "preview mode" in which an LCD display on
14  the camera shows moving images from the viewfinder prior to an image being captured; and
15  (2) a "still image mode" in which a higher quality image is actually recorded.  *See* '218
16  patent at 2:25-31 ("In one aspect, the electronic camera is operable in a still image mode
17  according to a relatively more complex digital image processing technique to produce high
18  quality still images, and in a motion preview mode according to a relatively more simple
19  digital image processing techniques to produce a preview image of acceptable quality prior
20  to initiation of the still image mode.").  In short, the '218 patent is directed to how the user
21  can prepare to take a picture by using the "preview mode," as opposed to how that picture is
22  organized after it is actually captured ('449 patent) or how it is transmitted after being
23  captured ('239 patent).

24  Thus, the patents at issue in this case and the patents at issue in the Nokia and Kodak
25  Investigations are aimed at different features:  organizing images and videos into different
26  classifications or albums ('449 patent), transmitting videos from a remote location using a
27  "remote unit," a "host unit," and a "playback unit" ('239 patent), controlling a camera
28

1  module chip using a mobile terminal processor chip and vice versa (Nokia's '256 patent),
2  and a preview image mode (Kodak's '218 patent). Samsung cannot manufacture a
3  technological nexus between these patents simply by saying that they all have something to
4  do with digital camera technology, a description that could be applied to tens of thousands
5  of patents.[10]
6        Samsung also contends that the Nokia and Kodak Investigations share a
7  technological nexus with this case because "much of the expert testimony and other
8  evidence" will "overlap," and notes that the inventor of the patent at issue in the Kodak
9  Investigation has been disclosed by Samsung as an expert here (Mr. Parulski). Motion at
10 11-12. However, both infringement and invalidity require proof on a limitation-by
11 limitation basis. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351
12 (Fed. Cir. 2001) ("Of course, whether performed at the preliminary injunction stage or at
13 some later stage in the course of a particular case, infringement and validity analyses must
14 be performed on a claim-by-claim basis.") (citing *Bayer AG v. Elan Pharm. Research
15 Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936,
16 942 (Fed. Cir. 1992)). Since Samsung has resisted the idea that anything approaching a
17 "limitation-by-limitation comparison" is necessary when determining whether patents share
18 a technological nexus (Motion at 7), Samsung has not demonstrated that the expert
19 testimony or other evidence is likely to substantially overlap. Further, there is little reason
20 to believe that any expert testimony will overlap given the differences between the patents
21 asserted in this case and the patents asserted in the Nokia and Kodak Investigations.
22 Certainly, the mere use of the same expert does not create a technological nexus between
23 two cases, particularly where it is reasonable to expect that the expert testimony and prior

---

[10] For example, the U.S. Patent Office indicates that there are nearly 25,000 patents that fall under Classification No. 396 ("Photography"), *see* Kolovos Decl. Ex. 12, even though this class only provides for "photographic apparatus not classified elsewhere[.]" *See* Kolovos Decl. Ex. 20.

13

art evidence will focus on the inventive features of the patents at issue in each of the cases, rather than digital camera technology generally.[11]

Samsung further suggests that other evidence will overlap because it has subpoenaed OmniVision in this case, and OmniVision documents appeared on the exhibits lists in the Nokia and Kodak Investigations.  Motion at 11.  However, the fact that Samsung has already issued a subpoena to Omnivision in this case only makes the discovery it seeks from Apple more inappropriate.  *See* Fed. R. Civ. P. 26(b)(2)(C) (requiring courts to limit discovery where, for example, the requested discovery is cumulative or can be obtained from some other source that is more convenient, less burdensome, or less expensive.)

**C.   The Requested Discovery Is Overbroad And Unduly Burdensome.**

Although Apple has already made a substantial production in this case and in the 1846 case of documents from other litigations, Samsung now seeks to broaden the technological nexus standard even further to encompass litigations where the asserted patents share no technological nexus to the Samsung patents-in-suit.  This is precisely the sort of discovery that must be limited in light of the balancing provisions of the federal rules.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i-iii) ("the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: the discovery sought is unreasonably cumulative or duplicative . . . or the burden or expense of the proposed discovery outweighs its likely benefit[.]"); Case No. 11-cv-01846 (Dkt. No. 536 at 5).  Given the absence of any technological nexus between this case and the VirnetX case, Nokia Investigation, and Kodak Investigation, Samsung's requested discovery should not be allowed at all.  To the extent that any nexus does exist, however, it does not justify the broad discovery sought by Samsung.

---

[11] While Samsung seeks to draw significance from the fact that Dr. Storer was disclosed as an expert for Apple in this case and in the Nokia Investigation (Motion at 11), it fails to note that Dr. Storer never submitted an expert report or provided deposition testimony in the Nokia Investigation.  *See* Kolovos Decl. at ¶22.

14

1  Samsung's requests—which seek "all expert reports and transcripts of expert
2  testimony, transcripts of testimony from Apple witnesses, initial disclosures served by
3  Apple, responses to interrogatories and requests for admission served by Apple, and
4  briefing and supporting documentation filed in connection with claim construction,
5  dispositive motions, post-trial motions, Daubert motions, or motions in limine, to the extent
6  that such documents are not publicly available and are related to Apple's alleged
7  infringement, Apple's defenses and counterclaims, or any damages allegedly suffered by
8  VirnetX"—are plainly overbroad.[12]  Samsung makes no attempt whatsoever to explain the
9  relevance of the documents it is seeking, including, for example, why Apple's discovery
10 responses and motions in limine will be relevant to the claims and defenses at issue in this
11 case.  It is Samsung's burden to explain why those documents are likely to yield relevant
12 information.  *See Louisiana Pac. Corp.*, 285 F.R.D. at 485.  Samsung should not be allowed
13 to demand such broad discovery from other litigations without explaining (or even
14 mentioning) the relevance of the types of documents it is seeking.

## IV.  CONCLUSION

For the foregoing reasons, Apple respectfully requests that Samsung's Motion to Compel be denied.

---

[12] Samsung's requests are also directed to documents filed under seal and not publicly available.  *See* Dkt. No. 497.  The Court has previously held that Apple need not produce documents whose production is barred by an ITC protective order, *e.g.*, because the documents in question contain the confidential information of a non-party.  *See* Case No. 11-cv-01846 (Dkt. No. 1213 at 7) ("The court agrees with Apple . . . that Apple need not produce unredacted court documents whose production is barred by either the ITC's protective order or the District of Delaware's local rules. These documents are outside of Apple's 'possession, custody, or control.'").

15

| | |
|---|---|
| Dated:  May 23, 2013 | WILMER CUTLER PICKERING   HALE AND DORR LLP |
| | */s/ Mark D. Selwyn* |
| | Mark D. Selwyn (SBN 244180) |
| | (mark.selwyn@wilmerhale.com) |
| | 950 Page Mill Road |
| | Palo Alto, CA  94304 |
| | Telephone:  (650) 858-6000 |
| | Facsimile:  (650) 858-6100 |
| | |
| | *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on May 23, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

/s/ Mark. D Selwyn
Mark D. Selwyn