# EXHIBIT 19

# (FILED UNDER SEAL)

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 12-cv-00630-LHK |
| Plaintiff, | **SAMSUNG'S FURTHER SUPPLEMENTAL RESPONSES TO APPLE'S SECOND AND THIRD SETS OF INTERROGATORIES** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **(Interrogatory Nos. 15, 17, 20, 24, 26, 29)** |
| Defendants. | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, ("Samsung") submit the following Further Supplemental Responses to Plaintiff Apple Inc's ("Apple's") Second and Third Sets of Interrogatories.

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 15:**

Separately for each claim of the Samsung Patent-in-Suit, identify each secondary consideration that you contend supports the non-obviousness of the invention(s) claimed (e.g., commercial success, long-felt need, commercial acquiescence, expressions of skepticism, copying, teaching away, simultaneous development, failure of others, unexpected results, commercial acquiescence through acceptance of licenses, departure from acceptable principles of prior art, or acclaim by industry), and for each such alleged secondary consideration describe in detail the facts underlying the alleged secondary consideration.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 15:**

In addition to its General Objections above, which it hereby incorporates by reference, Samsung objects to this Interrogatory to the extent that: (i) it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity; (ii) it prematurely calls for Samsung's position regarding the validity of its patents before sufficient discovery has been conducted; and (iii) it prematurely calls for expert testimony or opinions at this stage of litigation. Samsung will provide such contentions in accordance with the Court's Minute Order and Case Management Order, dated May 2, 2012.

Subject to and without waiving the foregoing general and specific objections, Samsung responds as follows:

Samsung has not yet completed its discovery and investigation of the facts relating to this interrogatory. Samsung will supplement or amend this response with a narrative and/or with the documents reflecting this information under Federal Rule of Civil Procedure 33(d). Samsung's contentions regarding the evidence that supports that non-obviousness of the Samsung Patents-in-

decision to purchase an iPhone. (FY12Q1, APLNDC630-0000149575; FY12Q2, APLNDC630-0000182563). These surveys indicate that the inventions claimed in the '757 patent contribute to the commercial success of Apple's infringing products.

**'449 Patent**

The '449 patent explains that at the time of the invention, a way of organizing images and videos stored in a digital camera was needed. To illustrate the problem, the patent provides the example of a digital camera capable of recording 3000 JPEG photos or 20 minutes of MPEG video in 300 MB of storage space. Browsing through 3000 JPEG images to find a particular image stored in the digital camera was impractical because the process of retrieving, decompressing and displaying each image could take about an hour. The '449 patent solves this problem by allowing images to be organized into different classifications or albums within the digital camera. Rather than browse through the entire collection of images to find a particular image, a user can organize and retrieve images from albums. The invention supports both still images (photos) and moving images with sound (videos). The invention also includes a "search mode" that enables the user to, for example, browse through a list of thumbnail images representing the photos and videos in the camera, regardless of their classification. Importantly, the invention incorporates the ability to organize and browse digital images using the digital camera itself, without the need for an external PC or other external hardware or software.

The inventions claimed in the '449 patent were embodied in the Hitachi MP-EG1 and MP-EG1A cameras. (*See, e.g.*, user manuals at APL630DEF-WH-A0000015299-15505, APL630DEF-WH-A0000015506-15606). The MP-EG1 was received with acclaim, and was "featured in many television and cable broadcasts and in nearly every major consumer and electronics publications including Business Week, Parade Magazine, PC Magazine, and Popular Electronics." (SAMNDCA630-06812315). It was the world's first digital camera capable of capturing and compressing not only photos, but also videos in MPEG format. Hitachi announced the innovative product highlighting the camera's built-in photo and video organizing features, as distinguished from the ability to download and organize the images on a PC: "[F]ile management functions are built into the camera to utilize the advantages of disk-based storage. Thumbnail

APL630DEF-WH0000102771 – 84; APL630DEF-WH0000102791 – 92; APL630DEF-WH0000102818 – 22; APL630DEF-WH0000102832 – 36; APL630DEF-WH0000102975 – 79; APL630DEF-WH0000102993 – 95; APL630DEF-WH0000103926 – 27.

Even after Apple began evaluating methods similar to those taught by the '179 patent, internal assessments and user testing suggested that such methods would not be successful and were not intuitive. *See, e.g.*, APL630DEF-WH0000101942– 51; APL630DEF-WH0000101955 – 60; APL630DEF-WH0000102734 – 39; APL630DEF-WH0000102779 – 84; APL630DEF-WH0000102808 – 12; APL630DEF-WH0000103003 – 04. Nevertheless, certain engineers continued to implement these methods despite early failures. *See, e.g.*, APL630DEF-WH0000101952 – 54; APL630DEF-WH0000102763 – 65. After substantial testing, Apple began to realize that the '179 method "can be the smartest and fastest way to input." APL630DEF-WH0000102766 – 70; *see also* APL630DEF-WH0000103818 – 20. Apple also recognized that this method was "different from ordinary cell phones" and "innovative." APL630DEF-WH0000102763 – 65; APL630DEF-WH0000103818 – 20.

The Japanese Kana keyboard implementing the system of the '179 patent enjoyed significant commercial success. When Apple released the iPad without this keyboard, users requested that that feature be added, confirming that the feature fulfilled a long-felt, but unsolved, need. *See, e.g.*, APL630DEF-WH0000113322 – 44.

**'239 Patent**

Before the '239 patent, it was difficult and expensive to transmit video from a remote location. Such transmissions required extensive and expensive equipment, or traveling back to a studio quickly to transfer the video to equipment that can manipulate it for transmission. The '239 patent solved this problem and introduced a novel way to transmit video from a remote location. This groundbreaking innovation allows for the rapid transmission of high quality video from remote locations without the need for expensive, bulky, and difficult to setup equipment, such as satellite transmission technology.

The '239 patent technology has been utilized in such applications as transmitting video of weather events like tornadoes, hosting the first live press conference over the internet, and