1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   William C. Price (Bar No. 108542)
10 williamprice@quinnemanuel.com
   Michael L. Fazio (Bar No. 228601)
11 michaelfazio@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
12 Los Angeles, California  90017
   Telephone:   (213) 443-3000
13 Facsimile:   (213) 443-3100

14 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
15 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

16

17                    UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19 | APPLE INC., a California corporation, | CASE NO. 12-cv-00630-LHK
20 | Plaintiff, | **SAMSUNG'S CLAIM CONSTRUCTION BRIEF FOR THE '239 PATENT TERM "MEANS FOR TRANSMISSION OF SAID CAPTURED VIDEO OVER A CELLULAR FREQUENCY"**
21 | vs. |
22 | SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG |
23 | ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG |
24 | TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, |
25 | |
26 | Defendants. |

27

28

**SAMSUNG'S CLAIM CONSTRUCTION BRIEF FOR THE '239 PATENT**

The structures corresponding to the terms "means for transmitting" in claim 1 and "means for transmission" in claim 15 are very different. Claim 1 claims two devices – a <u>mobile remote unit</u> that captures, compresses, <u>stores</u>, and transmits video and a <u>host unit</u> that receives – while claim 15 claims a single computer that simply transmits video over a cellular frequency. As explained below, these and other important differences require the two means plus function limitations to have different constructions.

## I. THE COURT SHOULD ADOPT SAMSUNG'S CONSTRUCTION

The parties agree that the function for "means for transmission of said captured video over a cellular frequency" is "transmission of said captured video over a cellular frequency." The parties' proposed constructions for the corresponding structure are below:

| Samsung's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| One or more modems connected to one or more cellular telephones or cellular radio transmitters. | One or more modems connected to one or more cellular telephones, and software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file. |

The issues to be determined are (1) whether the structure includes "cellular radio transmitters" and (2) whether the transmission structure includes software.

### A. Cellular Radio Transmitters are Included in Cellular Telephones

Neither party disputes that the '239 patent discloses cellular telephones as structure corresponding to the "means for transmission" function. However, a cellular telephone consists of a number of different components, many of which are not related to the actual transmission of data. Instead, data transmission is performed by specific hardware components found within the cellular telephone. This set of hardware components constitutes a cellular radio transmitter. Schonfeld Decl. at ¶3.

Apple argues that cellular radio transmitters should be excluded because radio transmitters in general are disclosed as an alternative to cellular telephones. However, this argument misses the point. In order to perform transmission in a cellular frequency, a cellular telephone necessarily includes a cellular radio transmitter for performing that transmission. "[D]isclosure of

structure corresponding to a means-plus-function limitation may be implicit in the written description *if it would have been clear to those skilled in the art* what structure must perform the function recited in the means-plus-function limitation." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999) (emphasis original). A person of ordinary skill would have understood that the cellular radio transmitters are the actual hardware components necessary to perform transmission. Schonfeld Decl. at ¶3.

Samsung's construction is also supported by the doctrine of claim differentiation. Apple wishes to limit the scope of claim 15 to "cellular telephones," and not "cellular radio transmitters." However, dependent claim 16 includes the additional limitation "a cellular telephone connected to each said interface," which is not found in claim 15. "The doctrine of claim differentiation is at its strongest in this type of case, where the limitation that is sought to be read into an independent claim already appears in a dependent claim." *InterDigital Comms. LLC v. Int'l Trade Com'n.*, 690 F.3d 1318, 1324 (Fed. Cir. 2012). Here, Apple has provided no evidence that can overcome the strong presumption that transmission over cellular frequencies can be performed by either cellular telephones or cellular radio transmitters.

**B.   The Structure for "Means for Transmission" Does Not Include Software**

Apple argues that the construction of claim 15 should include software limitations that mirror the Court's construction for claim 1's "means for transmitting" limitation. However, inclusion of these software limitations would improperly incorporate structure from the specification that is unnecessary to perform the claimed function in claim 15. As the Court noted in the *Markman* order, section 112(f) "does not permit incorporation of structure from the written description beyond that **necessary** to perform the claimed function." (Dkt. No. 447 at 55) (citing *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258) (Fed. Cir. 1999) (emphasis added). Thus, in the context of claim 1's "means for transmitting" limitation, the Court correctly noted that "whether software algorithms are a required structure depends on whether the software included in the specification is required for the hardware to perform the claimed function of transmitting." (*Id.* at 62.) For claim 1, the Court concluded that certain steps of software sequence B were required based on portions of the '239 specification. (*Id.*) (citing '239 patent,

8:23-30.)  However, this portion of the specification is only directed to transmission between a remote unit and a host unit (which is part of claim 1) of a stored data file (which is also part of claim 1—"means for storing said composite signal"):

> Transfer software sequence B enables the **remote unit to communicate with the host unit** to transmit a **stored data file** using the system hardware. Transfer software sequence B contains all of the instructions necessary to [1] initialize the communications ports **on the remote**, [2] obtain a cellular connection with each cellular telephone to **the host unit**, [3] obtain the stored data file, [4] initiate file splitting sequence C, and [5] transmit the split data file.

('239 patent, 8:23-30) (emphasis added).  In contrast, claim 15 does not require transmitting from a remote unit to a host unit; it also does not require any storing.  Nothing in the cited portion of the specification, or the rest of the specification, indicates that software sequence B is necessary when a remote unit and host unit are not involved, or when transmitting something other than a "stored data file."[1]  Transfer software sequence B is only necessary when: (i) transmitting between a remote unit and host unit; and (ii) transmitting a stored data file.  Because neither limitation applies to claim 15, transfer software sequence B is unnecessary for transmission and including it would be improper.

On the other hand, the specification plainly identifies the structure necessary for transmission in general.  "Files may be **transmitted** using telephone lines, **cellular**, radio and other telemetric frequencies. In the preferred embodiment, **cellular telephones are integrated with the remote unit to allow transmission** of files from areas which are inaccessible to standard telephone lines."  ('239 patent at 9:25-29.)  "In areas which are inaccessible to standard telephone lines and outside cellular telephone 'cell,' files can be **transmitted** using radio frequencies. In order **to accomplish this, the cellular telephones in the remote are replaced with radio transmitters**."  (*Id.* at 9:38-40.)  These passages indicate that cellular telephones and radio transmitters are the means for transmission.  They make no reference whatsoever to software sequence B, and therefore that software should not be part of the structure.

---

[1] The cited portion actually indicates that the system hardware alone, which Apple and Samsung agree includes at least a modem and cellular telephone, may be used to transmit.  (*Id.* 8:24-25) ("to transmit a stored data file **using the system hardware**")

### C. "Means for Transmission" Does Not Include Initializing a Communications Port or Obtaining the Stored Data File

Even if the Court finds that claim 15 should include software, that software disclosure should be restricted solely to software to perform the claimed function, which is "transmission of said captured video over a cellular frequency." It does not include initializing a communications port or obtaining the stored data file, which the patent distinguishes from transmission: "Transfer software sequence B contains all of the instructions necessary to [1] **initialize the communications ports on the remote**, [2] obtain a cellular connection with each cellular telephone to the host unit, [3] **obtain the stored data file**, [4] initiate file splitting sequence C, **and [5] transmit the split data file**." ('239 patent at 8:25-30) (emphasis added). The first four processes are separate and distinct from the fifth transmission process. Further below, the specification confirms that retrieval of stored data is distinct from transmission of such data: "The 10K file files containing archived bit sets are **retrieved**, **transmitted**, and **stored** until all have been sent." ('239 patent at 9:15-16) (emphasis added).

Claim 15 does not include any limitation directed to initializing a communications port or obtaining a stored data file. It does not include the limitation "means for storing said composite signal," as found in claim 1. Accordingly, it would be improper to include software for initializing a communications port or obtaining a stored file within the scope of claim 15. Instead, if the Court finds that software is necessary at all, such software should be limited to "software that transmits the file." *Acromed Corp*, 253 F.3d at 1382.

## II. SAMSUNG HAS NOT WAIVED INFRINGEMENT ARGUMENTS BASED ON EQUIVALENTS FOR CLAIM 15

After the Court's *Markman* order issued, Samsung moved to amend its infringement contentions to include allegations that Apple infringes under section 112(f) equivalents and under the doctrine of equivalents ("DOE") for terms in both claims 1 and 15. Samsung moved, in part, based on the Court's adoption of substantial portions of Apple's proposed construction for "means for transmitting said composite signal" in claim 1. Samsung also moved to add allegations under section 112(f) and DOE for claim 15's "means for transmitting said captured video over a cellular frequency" limitation. Samsung moved to amend for claim 15 because it anticipated that Apple

may argue for the same or similar narrow structure in claim 15 that it argued for in claim 1, and the Court may adopt that construction.  (Dkt. No. 476-3, Samsung's Motion to Amend, at 5.)  Apple is now doing just that. (Dkt. No. 1465 at 2-5.)  Judge Grewal permitted Samsung's amendments for claim 1.  (Dkt. No. 636 at 17-18.)  But Judge Grewal denied Samsung's amendments for claim 15 because Samsung's request was "premature."  (*Id.* at 8.)  Judge Grewal stated that if Samsung faces an adverse construction, Samsung could then seek leave to amend to allege infringement under section 112(f) and DOE, pursuant to Patent Local Rule 3-6(a).  (*Id.*)[2]

Contrary to Apple's assertion, Samsung did not relinquish the right to make this argument in the agreement that resolved portions of the parties' motions to strike.  In fact, the agreement expressly contemplated making these arguments in precisely this scenario: "This agreement does not preclude the parties from seeking leave to amend their infringement contentions to include doctrine of equivalents or structural equivalents arguments under Section 112(f) if the Court construes terms adverse to a party in the future."  (Dkt. No. 1056 at 3 n.4.)  As contemplated by Judge Grewal, if the Court adopts Apple's proposed construction, or portions thereof, Samsung respectfully requests that it be permitted to amend its infringement contentions to allege infringement under 112(f) and DOE for that limitation.[3]

### III.    CONCLUSION

For the foregoing reasons, Samsung respectfully requests the Court adopt its proposed construction of "means for transmission of said captured video over a cellular frequency."

---

[2]  Judge Grewal stated, "If and when Samsung faces an adverse construction, it may seek leave to amend in light of that construction, at which point the court can consider whether its proposed amendments arise from a material difference in the claim construction and the prejudice, if any, Apple may suffer as a result.  Samsung's request is premature."  (Dkt. No. 636 at 8.)

[3]  Samsung's expert included analyses under section 112(f) and DOE in his expert report to preserve the right to make that argument—as Judge Grewal implied would be permitted. (*See, e.g.*, Dkt. No. 877-6, Schonfeld Initial Expert Report, ¶ 1495.)  Apple's expert responded. (*See, e.g.*, Dkt. No. 878-15, Storer Rebuttal Expert Report, ¶ 713.)  If the Court permits Samsung to make arguments based on section 112(f) and/or DOE for the "means for transmission" limitation of claim 15, no additional expert discovery will be necessary.

DATED: March 19, 2014

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Victoria F. Maroulis
Charles K. Verhoeven
Kevin P.B. Johnson
William C. Price
Victoria F. Maroulis
Michael L. Fazio
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC