QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS *IN LIMINE***<br><br>Date:  March 5, 2014<br>Time:  2:00 pm<br>Place:  Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

I.   Opposition to Motion # 1:  the Court Should Deny Apple's Objections to Samsung's Efforts to Simplify and Streamline the Evidence for Trial ................................. 1

     A.   Samsung's Exhibits Properly Summarize Voluminous Material ........................... 1

     B.   Samsung's Exhibits Do Not Combine "Unrelated" Documents ............................ 3

II.  Opposition to Motion #2:  Apple's Attempt to Exclude Relevant and Admissible Evidence of Its Prior Valuation of the '647 Patent Is Overboard and Unsupported ............ 5

III. Opposition to Motion #3:  the Court Should Deny Apple's Overbroad Objection to Evidence Regarding Patent Reexamination Proceedings ........................................ 8

IV.  Opposition to Motion #4:  Apple's Latest Effort to Keep the Jury From Seeing Prior Art Software Is Procedurally Improper and Substantively Meritless .......................... 9

     A.   The Court Already Resolved This Issue, and Apple Already Lost ........................ 10

     B.   Apple's Motion Is an Improper Motion for Reconsideration ................................ 11

     C.   Samsung's Software Demonstrations Are Supported by More Than Adequate Documentation; Apple's Arguments Rely on a Double Standard .......... 12

     D.   Exclusion of Samsung's Prior Art Demonstrations Would Be Legal Error .......... 13

V.   Opposition to Motion # 5:  Apple Attempts to Exclude Prior Art Documents Based on Legal Arguments Samsung Is Not Making ............................................... 15

     A.   Apple's Motion Is Not a Proper Motion *In Limine* and Can Be Denied for That Reason Alone ...................................................................... 15

     B.   Apple Misrepresents the Relevance and Use of the Tung Thesis as Corroborating Evidence of Prior Art Software's Relevant Functionality .............. 16

     C.   There Is No Basis to Exclude the Neonode Quick Start Guide .............................. 17

VI.  Opposition to Motion # 6:  Samsung Does Not Object to Apple's Motion Provided Apple Does Not Misstate Facts or Renege on the Deal Struck Resolve Samsung's Motion to Strike .................................................................... 19

     A.   Apple's Late Disclosure of a New Infringement Theory Resulted in a Deal Which Binds Apple ..................................................................... 20

     B.   Apple Does Not Challenge Dr. Rinard's Testimony that Version 2.7 of the Google Search Application Is an Available Non-Infringing Alternative .............. 22

VII. Opposition to Motion # 7:  Apple's Motion to Preclude Samsung from Offering Any Evidence of Design Arounds Should Be Denied ......................................... 24

     A.   Apple's Motion is an Untimely and Baseless *Daubert* Motion .............................. 25

B.     Apple's Complaints About Samsung's 30(b)(6) Witnesses Lack Merit ................. 25

C.     Apple Ignores Testimony on Estimated Design Around Times from Google Witnesses ........................................................................................... 27

D.     Apple Provides No Authority Requiring a Single 30(b)(6) Witness on Every Step in the Design Around Process .......................................................... 28

E.     Dr. Vellturo's Methodology Relies on the Same Evidence and Testimony Apple Now Seeks to Exclude ................................................................. 29

F.     Apple Offers No Authority Suggesting that Issue Preclusion Is a Remedy for Any Alleged Lack of 30(b)(6) Preparation ......................................... 29

# TABLE OF AUTHORITIES

**Page**

## Cases

*Baker v. Delta Air Lines, Inc.*,
  6 F.3d 632 (9th Cir. 1993).................................................................................................14

*Bruckelmyer v. Ground Heaters, Inc.*,
  445 F.3d 1374 (Fed. Cir. 2006)........................................................................................17

*CA, Inc. v. Simple.com*,
  No. 02-civ-2748, 2009 U.S. Dist. LEXIS 27092 (E.D. N.Y. Mar. 17, 2009).........................17

*Ceats, Inc. v. Continental Airlines, Inc.*,
  526 Fed. Appx. 966 (Fed. Cir. April 26, 2013)................................................................17

*Conceptus, Inc. v. Hologic, Inc.*,
  771 F. Supp. 2d 1164 (N.D. Cal. 2010) ...........................................................................28

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*,
  291 F.3d 1317 (Fed. Cir. 2002).......................................................................................19

*Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*,
  441 F. Supp. 2d 695 (M.D. Pa. 2006) .............................................................................30

*Finjan, Inc. v. Symantec Corp.*,
  No. 10-593, 2013 WL 5302560 (D. Del. Sept. 19, 2013) ................................................15

*Finnigan Corp. v. ITC*,
  180 F.3d 1354 (Fed. Cir. 1999).......................................................................................14

*In re Fritch*,
  972 F.2d 1260 (Fed. Cir. 1992).......................................................................................14

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999).......................................................................................28

*Guzik Technical Enters., Inc. v. Western Digital Corp.*,
  No. 11-03786-PSG, 2013 WL 6227626 (N.D. Cal. Nov. 22, 2013).........................................15

*Ierardi v. Lorillard, Inc.*,
  No. 90-7049, 1991 WL 66799 (E.D. Pa. Apr. 15, 1991) .................................................31

*Industrial Hard Crome, Ltd. v. Hetran, Inc.*,
  92 F. Supp. 2d 786 (N.D. Ill. 2000) ................................................................................30

*In re Klopfenstein*,
  380 F.3d 1345 (Fed. Cir. 2004).......................................................................................18

*Medtronic, Inc. v. AGA Med. Corp.*,
  618 F. Supp. 2d 1191 (N.D. Cal. 2009) ...........................................................................19

*Miller v. Int'l Bus. Machs.*,
    No. 02-2118, 2006 WL 1141090 (N.D. Cal. May 1, 2006) ...................................................11,12

*Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*,
    279 F.R.D. 59 (D. Mass. 2011) ...................................................................................................30

*Net MoneyIN, Inc. v. Verisign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008) ..................................................................................................14

*Nidec Corp. v. Victor Co. of Japan*,
    No. 05-0686, 2007 WL 4108092 (N.D. Cal. Nov. 16, 2007) ......................................................12

*Oracle Am., Inc. v. Google Inc.*,
    No. 10-03561, 2012 WL 877125 (N.D. Cal. Mar. 15, 2012 ) .......................................................6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*,
    763 F. Supp. 2d 671 (D. Del. 2010) ..........................................................................................8,9

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
    277 F.R.D. 676 (S.D. Fla. 2012) ................................................................................................30

*Rackable Sys., Inc. v. Super Micro Computer, Inc.*,
    No. C 05-3561, 2007 U.S. Dist. LEXIS 33824 (N.D. Cal. April 25, 2007) ...............................19

*Rainey v. Am. Forest and Paper Ass'n, Inc.*,
    26 F. Supp. 2d 82 (D.D.C. 1998) ...............................................................................................30

*Samsung Elecs. Co., Ltd. v. Quanta Computer, Inc.*,
    No. 00-4524-VRW, 2006 WL 2850028 (N.D. Cal. Oct. 4, 2006) ...............................................15

*Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*,
    264 F.3d 1344 (Fed. Cir. 2001) ..................................................................................................16

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991) ..................................................................................................28

*State Farm Mutual Auto. Ins. Co. v. New Horizont, Inc.*,
    250 F.R.D. 203 (E.D. Pa. 2008) .................................................................................................29

*Synqor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013) ..............................................................................................14,28

*Tesco Corp. v. Weatherford Int'l, Inc.*,
    750 F. Supp. 2d 780 (S.D. Tex. 2010) .........................................................................................8

*TradeCard. Inc v. S1 Corp.*,
    509 F. Supp. 2d 304 (S.D.N.Y. 2007) ........................................................................................17

*U.S. v. Bakker*,
    925 F.2d 728 (4th Cir. 1991) ........................................................................................................3

*U.S. v. Janati*,
    374 F.3d 263 (4th Cir. 2004) ........................................................................................................2

*U.S. v. Keck*,
    643 F.3d 789 (10th Cir. 2011) ........................................................................................3

*Versata Software, Inc. v. Internet Brands, Inc.*,
    902 F. Supp. 2d 841 (E.D. Tex. 2012) ........................................................................15

*Versata Software, Inc. v. SAP Am., Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013) ..........................................................................13,14,15

*Whatley v. Nike, Inc.*,
    No. 98-963-AS, 2000 WL 33201902 (D. Or. Oct. 20, 2000) .......................................7

## **Statutes**

35 U.S.C. § 102 ............................................................................................................15, 16

35 U.S.C. § 102(a) ...............................................................................................................16

35 U.S.C. § 271(g) ...............................................................................................................16

Fed. R. Evid. 403 ............................................................................................7, 13, 14, 15

Fed. R. Evid. 801 ..................................................................................................................8

Fed. R. Evid. 1006 .............................................................................................................2, 3

## **Other Authorities**

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Prac. and Proc.* § 2103
    (Supp. 2007) .................................................................................................................29

1

**I.      Opposition to Motion # 1:  the Court Should Deny Apple's Objections to Samsung's Efforts to Simplify and Streamline the Evidence for Trial**

2

3          Apple's claim that Samsung's exhibits employ a "compilation" approach that "neither

4  party used for the trials in this case" (*see* Mot. at 1) is plainly incorrect.  Apple's own exhibit list

5  in the 1846 case compiled hundreds of documents—of different types, from different sources and

6  time periods—into single exhibits, either by pasting together excerpts or simply lumping together

7  complete documents.  Apple employed this same approach in this case as well, with numerous

8  exhibits that combine multiple "unrelated" documents into one exhibit.

9          Samsung objected to Apple's multi-document exhibits in the 1846 case as an end-run

10 around the Court's limitations on the number of trial exhibits—the same objection Apple now

11 raises.  *See, e.g.*, Case No. 11-1846, Dkt. 1236-4.[1]  Apple defended its use of multi-document

12 exhibits as "advanced, improved trial techniques," and even claimed that combining documents

13 was "exactly what . . . [Samsung] should have been doing."  1846 Dkt. 1272 at 47:8-11, 50:9-10.

14 Samsung repeatedly objected to Apple's compilation exhibits throughout trial (*see, e.g.*, 1846 Dkt.

15 1468 at 2-4; 1846 Dkt. 1541 at 2), but the Court repeatedly overruled those objections.  *See, e.g.*,

16 1846 Dkt. 1512 at 2-3 (overruling objection to four "compilation" exhibits because "Samsung is

17 free to argue that the compilations are incomplete or misleading on rebuttal and cross."); *id.* at 4

18 (overruling objection to "compilations which show iPad advertisements, iPhone advertisements,

19 and television programs in which the products have been shown.").

20        Apple's motion fails to provide the Court with any principled basis for distinguishing

21 Samsung's exhibits from what Apple deems "the appropriate use of compilations and summaries."

22 *See* Mot. at 2.  Instead, Apple requests a blanket order excluding any Samsung exhibit that

23 incorporates more than one document, while permitting the many Apple exhibits that do the same.

**A.      Samsung's Exhibits Properly Summarize Voluminous Material**

24        Federal Rule of Evidence 1006 allows parties to rely on summaries "to prove the content

25 of voluminous writings, recordings, or photographs that cannot be conveniently examined in

26

27 ───────────────

[1] Citations to the docket in Case No. 11-1846 are hereafter abbreviated as "1846 Dkt."

28

court." Fed. R. Evid. 1006.  That is exactly what Samsung has done here.  Contrary to Apple's claim (*see* Mot. at 3), Samsung's exhibits do *not* simply combine "complete documents."  Rather, the bulk of Samsung's exhibits combine relevant excerpts from voluminous materials in order to distill a vast amount of complex information into a manageable form for the jury.  That is the precise purpose of Rule 1006.  *See, e.g.*, *U.S. v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004) ("The purpose of [Rule 1006] is to reduce the volume of written documents that are introduced into evidence by allowing in evidence accurate derivatives from the voluminous documents.")

Apple chooses DX333[2] as the poster child for Samsung's supposedly improper "compilations" of "separate, complete documents."  *See* Mot. at 1-3.  DX333, however, does not contain complete documents—DX333 consists of 45 pages of relevant excerpts from over 2,000 pages of documents that Samsung's technical expert relies on to explain the state of the art for the '647 patent.[3]  Similarly, DX334 is not just "multiple emails," but excerpts from a larger exchange that summarizes a discussion between the inventors of the '647 patent.  DX372 consists of excerpts from various Qualcomm tutorials that summarize the functionality of different versions of the same chip, while DX375 similarly summarizes nearly a thousand pages of testing results by combining only the portions related to the functionalities relevant to Samsung's infringement claims.  *See also* DX351 (relevant excerpts from over 40,000 pages worth of applications processor user manuals produced by Apple in this case).[4]

Apple itself has made liberal use of this same technique both in the 1846 case and here.  Two Apple exhibits from the 1846 trial pasted together quotations from more than 150 different documents—advertisements, surveys, third-party market studies, product launch videos, meeting minutes, meeting agendas, quarterly and annual business reports, emails, press releases, product demonstration videos, and internal Samsung documents.  *See* PX26 ("Summary of selected

---

[2] Trial exhibits cited herein are attached to the accompanying Fazio Declaration.

[3] DX333 does not require multiple admissibility decisions, as Apple claims.  In fact, Apple has agreed not to contest the publication date of the majority of documents summarized in DX333. *See* Fazio Decl. Ex. 2.  Moreover, the precise date of the documents summarized is not material because Samsung's expert does not rely on the documents as invalidating prior art.

[4] Samsung has revised DX354 to only include excerpts from Apple's bills of materials.

1  documents reflecting comments on demand for Apple's intellectual property"); PX27 ("Summary

2  of selected documents reflecting comments on the smartphone and tablet marketplace").  In this

3  case, Apple has combined quotations about different Apple products from two dozen articles

4  published in different sources.  *See* PTX144.  Indeed, Samsung is presenting the jury with actual

5  excerpts taken from underlying source documents, whereas Apple is taking isolated quotations in

6  a demonstrative parading as a trial exhibit.  *Compare* DX457 and DX458 (excerpted pages from

7  iPhone and iPad Buyer Surveys concerning reasons for purchasing Apple products) *with* PTX122

8  (summarizing selected pages from the same surveys in a Powerpoint slide).

9      There is no basis for rejecting Samsung's exhibits.  Rule 1006 does not require a specific

10  format, nor does it suggest that relying on excerpts to summarize the contents of voluminous

11  materials is improper.  Courts have accordingly treated compilations of excerpts, such as the ones

12  here, as proper Rule 1006 summaries.  *See, e.g.*, *U.S. v. Keck*, 643 F.3d 789, 797 (10th Cir. 2011)

13  (excerpting various spreadsheets admissible as a summary under Rule 1006); *U.S. v. Bakker*, 925

14  F.2d 728, 736 (4th Cir. 1991) (collection of video clips as summary of two-hour broadcast).

### B.      Samsung's Exhibits Do Not Combine "Unrelated" Documents

16      Apple makes no *per se* objection to "compilations" of complete documents.  Apple's

17  primary criticism is that Samsung's exhibits combine "unrelated" documents that "(1) concern

18  different products or components; (2) were produced or published by different sources; (3) are

19  different types; and/or (4) have different dates or date ranges."  *See* Mot. at 1-2.  Apple's claim is

20  not only belied by its own exhibits, but Samsung's compilations are simply not "unrelated."

21      Apple has consistently used compilations of documents that are "unrelated," as Apple

22  defines that term.  In the 1846 case, for example, Apple combined five complete ETSI declarations

23  into a single exhibit, despite the fact that the declarations were (1) signed by different individuals;

24  (2) submitted over the course of more than a decade; and (3) related to completely different

25  Samsung patents.  *See* PX122 ("Samsung ETSI IPR Statements").  Another Apple exhibit lumped

26  together entire documents from different sources—including third party press releases,

27  advertisements and websites—relating to different products that Apple contended were

28  "alternative designs."  *See* PX20; *see also* PX11 (multiple print ads for different Apple products);

1  PX117 (combining different Sony press releases with different dates).  Apple has done the same

2  here.  Although Apple highlights the fact that it grouped its compilations of user guides by product

3  (*see* Mot. at 2), Apple neglects to mention the fact that it compiled "specification sheets" for

4  nearly 30 different Samsung product models into a single exhibit.  *See* PTX241.  Apple similarly

5  combines thirteen separate IDC spreadsheets—over 10,000 printed pages—covering different time

6  periods and different products.  *See* PTX136.  Two other Apple exhibits include more than two

7  years' worth of invoices for different chipsets purchased from Qualcomm and Intel.  *See* PTX264;

8  PTX265. Apple also intends to use a single exhibit to introduce 16 different "practicing products"

9  (PTX109) and another exhibit to introduce Apple source code (PTX108) for many different

10  products and features.

11       To the extent Apple considers these exhibits an "appropriate use of compilations,"

12  Samsung's exhibits are no different.  Just as Apple's PX117 combined multiple press releases,

13  DX317 consists of three articles published from Microsoft's TechNet library regarding the same

14  Exchange Active Sync functionality of the same Windows Mobile 5 prior art.  Apple has even

15  agreed not to contest the authenticity of these articles or the dates of publication.  *See* Fazio Decl.

16  Ex. 2.  DX350 likewise consists of one type of document (product brochures) describing the

17  commercial embodiment of one patent (the '239 patent), produced from the same source

18  (FONET).[5]  *See also* DX360 (press articles regarding a single product that embodies the '449

19  patent, all collected from a single source, LexisNexis); DX357 (press coverage of awards earned

20  by embodiment of the '239 patent, cited by Samsung's expert regarding nonobviousness).  DX355

21  includes datasheets created and produced by ███████████ illustrating the ████████ used

22  in Apple's products—one type of document, from one source, concerning one component.  *See*

23  *also* DX353, DX491 (datasheets for a single component of Apple's products, created by the

24  manufacturer).  Similarly, DX356 consists of documents produced by one source, ██████████

25  describing the structure and operation of one component, Apple's ████████  The documents

---

27      [5] While Samsung's exhibit list identifies DX358 as a compilation, that exhibit contains
invoices that FONET maintained as a single document, and was produced as a single document.

1   included in DX352 and DX490 are all of the same type, follow a virtually identical format, and

2   come from the same source.  *See* DX352 (Apple schematics); DX490 (Apple user guides).

3         Other Samsung exhibits combine documents that were either intended to be viewed as one

4   set or that are more convenient to consider as a set.  For example, DX406 consists of four emails

5   written by the same author, to the same recipient, on the same day—and the subject line of the

6   emails clearly indicates that the emails are part of a set.  *See* DX406.1 ("Slide 1 of 4"); DX406.2

7   ("Slide 2 of 4"); DX406.3 ("Slide 3 of 4"); DX406.4 ("Slide 4 of 4").[6]  DX478 is a collection of

8   the letters exchanged between Apple and Samsung during FRAND licensing negotiations,

9   centrally organized in chronological order to assist the jury in understanding how the negotiations

10  unfolded.  DX489 combines documents that are representative of Apple's competitive analysis

11  practices, including two spreadsheets detailing specific instances in which Apple employees

12  sought reimbursement for the purchase of Samsung and other Android devices for testing,

13  teardowns, "immersion rooms," and competitive analysis; Apple's teardowns of Samsung and

14  Android devices; and a 2010 email, authored by Steve Jobs, which details a "Holy War" against

15  Android.  All of these documents were marked as exhibits at the 30(b)(6) deposition of Apple on

16  copying-related topics, and many came from the files of Apple's 30(b)(6) designee.

17        Samsung has combined documents that bear a clear logical relationship to one another.

18  Apple identifies no legitimate reason to force the jury to consider individual documents that are so

19  closely similar in terms of subject matter, format and source.  Granting Apple's motion would

20  needlessly complicate Samsung's presentation of evidence and waste trial time.

21  **II.    Opposition to Motion #2:  Apple's Attempt to Exclude Relevant and Admissible
           Evidence of Its Prior Valuation of the '647 Patent Is Overboard and Unsupported**

22

23        Ignoring the Court's directive to bring narrow motions *in limine*, Apple seeks an overly

24  broad order excluding "any reference to rulings, findings, or other developments in cases not

25  _____

26       [6]  Indeed, the Apple witness who received these emails acknowledged they were a set.  When
     the first of the four emails was marked at deposition, Mr. Imahiro responded "A. Yeah. Plus this is

27  slide 1 of 4, so there must be more."  Fazio Decl. Ex. 35, Imahiro Dep. Tr. 129:23-24.  Samsung's
     counsel then marked the remainder of the set to address this concern.  *Id.* at 129:18-131:24.

28

1   involving both parties to this action."  Apple cites no authority in support of such a broad brush

2   exclusion.  Apple should not be able to exclude all positions previously taken, testimony

3   previously given and expert positions previously disclosed without making individualized

4   showings that their admission here is improper.  Indeed, Apple's own experts rely on orders and

5   other materials from other cases, including the Apple/Motorola and Apple/HTC cases, in support

6   of Apple's contentions.[7]

7          The only evidence Apple expressly seeks to exclude is its own valuation of the '647 patent

8   in the *Motorola* litigation.  Apple does not contend it is irrelevant, nor can it.  Indeed, Apple has

9   previously argued to this Court "[i]t is well-established that positions taken in other litigations on

10  the same issue by a party are relevant and may be used against that party."  1846 Dkt. 815-1 at 6;

11  *accord, Oracle Am., Inc. v. Google Inc.,* No. 10-03561, 2012 WL 877125, *3 (N.D. Cal. Mar. 15,

12  2012 ) (Oracle's accounting valuation of its patents during acquisition of Sun was relevant to their

13  valuation in its litigation with Google); *Whatley v. Nike, Inc.*, No. 98-963-AS, 2000 WL

14  33201902, *3 (D. Or. Oct. 20, 2000) (patent valuation in plaintiff's marital property division is

15  relevant, admissible evidence at trial for patent infringement).  Rather, Apple's motion is based

16  entirely on its irrelevant argument that "other court's decisions" or "statements on the law" are

17  inadmissible.  Samsung's sole purpose for admitting this order is a factual position Apple took in

18  that case.  There, Apple valued a reasonable royalty for the '647 patent at 60 cents—20 times less

19  than the $12.49 Apple claims here.  Dkt. 1156-3, Vellturo Rpt. at 173, Table 7.

20  _____

21      [7]   For instance, Apple's expert Dr. Mowry discusses both summary judgment and claim
22  construction orders from *Apple Inc. v. Motorola, Inc.*, No. 11-08540 (N.D. Ill) in an attempt to
    bolster his analysis regarding shared libraries.  Fazio Decl. Ex. 38, Mowry Rebuttal Rpt. ¶¶ 81, 93;
23  Fazio Decl. Ex. 39, Mowry Rpt. ¶¶ 16-17, 279.  Dr. Mowry's report also contains a lengthy
    section claiming that the accused Browser application was already found to infringe, citing the
24  ITC's Initial Determination and Commission's Opinion in litigation against HTC (Inv. No. 337-
    TA-710).  *See id.* at 110-113.  Dr. Mowry also cites rulings on infringement, invalidity, practice of
25  the patent, and claim construction from that case.  *Id.* at ¶¶  90, 93, 236; Fazio Decl. Ex. 39,
    Mowry Rpt. ¶¶ 4-7, 298-299.  And Dr. Mowry cites his own expert reports from the Motorola and
26  HTC cases regarding conception and reduction to practice, Apple's alleged practice of the patent,
    and "praise and recognition of others."  Fazio Decl. Ex. 39, Mowry Rpt. ¶¶  20, 298-299; Fazio
27  Decl. Ex. 38, Mowry Rebuttal Rpt. ¶¶ ¶¶ 97-98, 397.

28

1    Samsung's heavy redactions to the *Motorola* order (DX449) demonstrate its intent to use

2    the order only to introduce Apple's prior valuation.  As the Court can see, DX449 is redacted

3    nearly entirely; less than two full paragraphs of the order remain.  Nothing in DX449 reveals the

4    *Motorola* court's rulings, statements of the law, factual findings or analysis.  Samsung is using a

5    very limited portion of the order reciting facts to demonstrate that when asserting the same patent

6    Apple is asserting here against Motorola, Apple valued it at 60 cents.  The only reason Samsung is

7    using an order from the *Motorola* case as evidence of this information is because Apple has forced

8    it to do so—despite being ordered to product expert reports, deposition transcripts and other

9    documents from the *Motorola* litigation (*see* 1846 Dkt. 867 at 12-13), Apple did not produce any

10   unredacted documents showing its expert's valuation of the '647 patent.

11    Apple is well aware of Samsung's reason for introducing this order.  Samsung's expert

12   damages rebuttal report and *Daubert* briefing reference it to point out Apple's 60 cent valuation of

13   the '647 patent and the inconsistency of that number and Dr. Vellturo's $12.49 valuation.

14   Nowhere does Apple argue that such factual information is not relevant or admissible.

15    Ignoring the real issue, Apple cites to rulings from the 1846 case, none of which have any

16   bearing here.  First, Apple points out that Samsung previously asked the Court to exclude

17   "evidence of how other courts or tribunals have construed or ruled on any Apple or Samsung

18   patents" and "reference to findings or rulings in other proceedings not involving the patents at

19   issue in this case."  Mot. at 4:2-5.  Samsung is not seeking to introduce evidence of either of those

20   with DX449.  All analysis and findings made in the *Motorola* order are redacted from DX449,

21   rendering Apple's comparison entirely inapt.[8]  Apple also references Samsung's request to

22   exclude evidence that Mr. Wagner's opinions "were excluded in the Motorola case."  Mot. at 3:24-

23   26.  Again, that is completely different than what Samsung seeks to introduce here.  Samsung is

24   not seeking to introduce any evidence of Judge Posner's rulings or findings as to Apple's damages

25   expert's opinions in the *Motorola* case or the admissibility thereof.  Evidence that another court

26   excluded an expert's opinion has Rule 403 implications not at issue here.

27

28    [8]   The *Motorola* proceeding *did* involve a patent here, making the comparison more inapt.

1    Apple's overly broad request to exclude any reference to cases not involving both parties

2    should be rejected.  And Apple has provided the Court with no support for its request to exclude

3    DX449, a party admission about the value of the '647.[9]  It is relevant to Apple's damages claims

4    and the credibility of its damages expert's opinions and there is no proper basis on which to

5    exclude it.

6    **III.    Opposition to Motion #3:  the Court Should Deny Apple's Overbroad Objection to**
     **Evidence Regarding Patent Reexamination Proceedings**

7
     Apple moves to exclude all evidence and argument regarding the PTO's reexamination of

8    the '172 and '647 patents, regardless of the reason a party seeks to admit that evidence.  Apple's

9    motion is overly broad for two reasons.  First, to the extent Apple is allowed to present evidence

10   of subjective willfulness to the jury, Samsung must be allowed to introduce reexamination

11   evidence for the limited purpose of rebutting Apple's claims of willfulness.  Second, Samsung

12   agrees that the reexamination proceedings generally should not be admitted for the purposes of

13   supporting or disputing validity.  But only Apple has sought to use the reexamination proceedings

14   for this purpose, and Samsung should be allowed to cross-examine Apple's witnesses with the

15   reexamination evidence that contradicts them.

16   As to both patents, the Court must allow the jury to consider reexamination evidence to the

17   extent that Apple is allowed to argue subjective willfulness.  Courts routinely admit reexamination

18   proceedings as evidence that a patentee did not willfully infringe.  *See, e.g.*, *Tesco Corp. v.*

19   *Weatherford Int'l, Inc.*, 750 F. Supp. 2d 780, 794-95 (S.D. Tex. 2010) ("The reexamination

20   proceedings are, however, relevant to the issue of willful infringement."); *Power Integrations, Inc.*

21   *v. Fairchild Semiconductor Int'l., Inc.*, 763 F. Supp. 2d 671, 689 (D. Del. 2010) ("[I]t would be

22   unfair to [defendant] to make a determination that it acted willfully . . . without even considering

23   the possibility that the PTO may, in the end, invalidate one or more of the [plaintiff's] asserted

24

25        [9]   Apple's argument that the *Motorola* order is hearsay (Mot. at 4:16-23) is not only irrelevant
26   because Samsung only seeks to admit Apple's own statement regarding the value of the '647
     patent set forth in the order, but it is also undercut by Apple's own contrary arguments in the 1846
27   case.  *See* 1846 Dkt. 815-1 at 7 ("[S]tatements made or adopted by Samsung in these other
     litigations are not hearsay and would be admissible under Fed. R. Evid. 801.").

28

1  patent claims.").[10]  Unless the Court grants Samsung's Motion *in Limine* No. 1 (Dkt. 1284 at 1-5),

2  Samsung must be allowed to introduce reexamination evidence for the limited purpose of

3  rebutting Apple's claims of willful infringement.

4          Beyond willfulness, Apple's motion is too broad because Apple seeks to bar Samsung

5  from cross-examining Apple's '172 expert about his reliance on the reexamination proceedings in

6  support of his validity opinion.  Apple claims its motion is necessary as to the '172 patent because

7  "Samsung has signaled its intent" to rely on reexamination proceedings "to establish invalidity of

8  that patent."  Mot. at 5.  This distorts the record.  Apple—not Samsung—has relied on the

9  reexamination proceedings as evidence of the '172 patent's validity.  Apple's expert, Dr.

10  Cockburn, claimed that the PTO's initial denial of a reexamination request supported Apple's

11  contention that a certain element was missing from the prior art that Samsung will present at trial.

12  Fazio Decl. Ex. 41, Cockburn Rebuttal Rpt. ¶ 119.  In response, Samsung submitted the updated

13  record of the reexamination proceedings—which resulted in the PTO changing its conclusion and

14  granting the reexamination request—to rebut Apple's reliance on the initial PTO decision.  *See*

15  DX349.  Samsung should not be barred from cross-examining Dr. Cockburn using the updated

16  reexamination proceedings, given that Dr. Cockburn explicitly relied on the prior findings.

17          As to the '647 patent, Samsung agrees that neither party should submit evidence or

18  argument regarding the reexamination proceedings to support or dispute validity, given that—as

19  Apple notes—the PTO Examiner applied different claim constructions and considered different

20  combinations of prior art than those that will be presented at trial.  Mot. at 6-7.

21  **IV.    Opposition to Motion #4:  Apple's Latest Effort to Keep the Jury From Seeing Prior
        Art Software Is Procedurally Improper and Substantively Meritless**

22

23          Apple's Motion #4 seeks—again—to exclude demonstration of the WAIS, AppleSearch,

24  Evolution and Windows Mobile 5 prior art software.

25          [10]  For instance, Apple alleges that Samsung first became aware of the '647 patent in 2010—

26  yet the PTO issued a rejection of asserted claim 9 on December 10, 2010 based on art Samsung
    has relied on in this case—evidence that it was neither objectively nor subjectively willful.  Fazio

27  Decl. Ex. 38, Mowry Rebuttal Rpt. ¶ 409.  Similarly, the reexamination of the '172 patent is based
    on prior art Samsung will present at trial.  *See* DX349.

28

### A.   The Court Already Resolved This Issue, and Apple Already Lost

Apple is clearly concerned about the validity of its patents—its motion represents Apple's *fourth attempt* to keep Samsung from showing prior art software to the jury.  Apple filed a motion for summary judgment on these same demonstrations of prior art software, and also filed a *Daubert* motion again directed to that software.[11]  Apple complained that Samsung's experts "built a 'demonstration system' for use in this case" and that "such 'could have been,' after-the-fact systems are not prior art, and it is improper for Samsung to rely upon them."  Dkt. 803-4 at 16:19-17:3.  Apple's *Daubert* motion complained that "Dr. Rinard's litigation-built systems do the opposite of assisting the trier of fact in deciding these questions—they instead only mislead the jury into believing that a system that did not exist before the patent might have existed, or might have been easily constructed."  Dkt. 806-3 at 24:3-6.  The Court disagreed with Apple on both counts.  On summary judgment, the Court ruled that "a jury could rely on Dr. Rinard's testimony, as well as the documentation he references, to conclude that his demonstration systems accurately represent systems that were actually known to and used by the public prior to the critical date."  Dkt. 1151 at 29.  Today, in its *Daubert* order, the Court reiterated that "the Court's summary judgment ruling effectively denied" Apple's *Daubert* motion.  Dkt. 1325 at 3.

These orders definitively resolved Apple's complaints about the reliability of Samsung's prior art software demonstrations.  Apple *knew* these issues were finally resolved—at the *Daubert* hearing, Apple's counsel withdrew as "moot" Apple's complaint that the demonstrations would "mislead the jury," in light of the Court's summary judgment and *Daubert* orders.[12]

---

[11]   Apple also moved to strike these exhibits before Judge Grewal (Dkt. 882-3 at 10-12), but later withdrew that motion with prejudice.  Dkt. 1056 (resolved: "Dr. Rinard's opinions that the '959 patent is invalid based on WAIS and AppleSearch demonstration systems"; resolved: "Dr. Chase's opinions that the '414 patent is invalid based on Windows Mobile and Evolution demonstration systems"); *see also* Dkt. 1061, 12/12/2041 Hrg. Tr. at 5:25-6:12.

[12]   Dkt. 806-3 at 24; Dkt. 1162, 1/23/14 Hrg. Tr. at 127:1-5 ("With respect to the motion on Rinard's demonstratives, which I understand your honor has denied, based on our -- we're still reviewing the court's summary judgment order, but based on the review of that order, we think that motion is probably moot.").  The Court agreed.  *Id*. at 127:6-7 ("The Court: Oh, I think that everything is -- I think that Kearl, Schonfeld, and Rinard, they're all moot now.")

1    Apple nonetheless filed its *seventh brief* challenging these software demonstrations, saying

2    that their probative value "is outweighed by the serious risk they present of misleading the jury."

3    *See* Mot. at 9:21-22.  This is not a motion *in limine*; it is an invitation to resolve factual issues.

4    The Court already declined that invitation, holding that the jury "could rely on" testimony from

5    Samsung's experts, as well as documents from the prior art period, to conclude that Samsung's

6    demonstration systems "accurately represent systems that were actually known to and used by the

7    public prior to the critical date." Dkt. 1151 at 29:5-9.  That finding precludes Apple's renewed

8    motion, just as it precluded as "moot" the *Daubert*-based argument that these demonstratives

9    would "mislead the jury." Dkt. 806-3 at 24:3-6.

10    **B.    Apple's Motion Is an Improper Motion for Reconsideration**

11    There is no basis for Apple to continue re-filing the same motion on this issue.  Apple's

12    motion raises no new arguments; it repackages already-rejected arguments, and asks the Court to

13    consider them as if they were new.[13]  The local rules do not allow this.  Apple's motion is in fact a

14    motion for reconsideration of this Court's summary judgment order, filed without the permission

15    required by Local Rule 7-9.  The Court can and should deny it for this reason alone.  *See, e.g.,*

16    *Miller v. Int'l Bus. Machs.*, No. 02-2118, 2006 WL 1141090, at *2 (N.D. Cal. May 1, 2006) ("As

---

18    [13]    *Compare, e.g.,* Dkt. 806 at 24:3-6 (Apple's *Daubert* motion: "Dr. Rinard's litigation-built
systems do the opposite of assisting the trier of fact in deciding these questions—they instead only
19    mislead the jury into believing that a system that did not exist before the patent might have
existed, or might have been easily constructed.") *with* Mot. at 9:27-28 ("Presenting these
20    'systems' to the jury for the purpose of demonstrating prior art would almost certainly mislead the
jury into believing that they are actual evidence of what did exist at the time."); Dkt. 944 at 4-6
21    ("Samsung has absolutely no evidence that anyone at any relevant time actually knew of or used
either system configured to have the claimed functionality Samsung concedes is necessary for its
22    validity case.") *with* Mot. at 7:22-24 ("Samsung has no evidence that these 'systems'—as
Samsung's experts configured them—actually existed in the critical time period."); Dkt. 944  at
23    11:10-14 ("To build the allegedly anticipating WAIS and AppleSearch systems, Dr. Rinard spends
hours of time, using multiple computers, building separate databases, selecting different compiling
24    options and literally building several computer systems that had to then be connected over the
Internet that was captured on a series of 26 different videos.") *with*  Mot. at 10:4-7 ("In reality,
25    Samsung's experts spent numerous hours building these systems using multiple computers,
building separate databases, and selecting different compiling options—none of this done with
26    instructions sold with the prior art systems themselves, but instead using the Asserted Patents in an
impermissible hindsight exercise.")

1   his motion raises arguments that have already been considered by the Court, Miller should have

2   sought leave to file a motion for reconsideration pursuant to Civil Local Rule 7-9 rather than a

3   motion to compel.")[14]

4   **C.   Samsung's Software Demonstrations Are Supported by More Than Adequate**
    **Documentation; Apple's Arguments Rely on a Double Standard**

5   

6   Apple presents a list of steps, generated by Apple's attorneys, that Apple claims are not

7   reliable for demonstrating the instructions in the prior art software—including installing the prior

8   art software and connecting computers to a network. Mot. at 8-9. Not so. Samsung's experts

9   prepared these demonstrations using authentic prior art software to demonstrate well-documented

10  capabilities of that software. For example, Dr. Rinard will show AppleSearch's ability to perform

11  local and remote search—a feature prominently illustrated on *Apple's own box* enclosing the prior

12  art software. *See* Dkt. 854-8 at -674. Each relevant software feature, and each step in Apple's

13  attorney-generated list of assembly steps, is grounded in contemporaneous documentation.[15]

14  Apple's complaints expose a double standard. Apple's experts used the accused software

15  to support their infringement opinions, and their demonstrations required a similar set of "steps" to

16  

17  

___

18   [14]   Even if a motion *in limine* were a proper vehicle to seek reconsideration (under Local Rule
19   7-2(a), it is not), the motion would fail because (1) there is no material difference in law or fact as
     compared to prior briefing;  (2) the material facts and applicable law have not changed since the
20   Court's prior order; and (3) there was no "manifest failure by the Court to consider material facts
     or dispositive legal arguments" that Apple presented to the Court. *Nidec Corp. v. Victor Co. of*
21   *Japan*, No. 05-0686, 2007 WL 4108092, at *2, *7 (N.D. Cal. Nov. 16, 2007).
22   [15]   **AppleSearch**: *see* Dkt. 854-7 at APLNDC630-0000441957-60 (AppleSearch
     Administrator's Guide describing capability to search information located in local storage media
23   on the AppleSearch server computer and in WAIS databases located on the Internet); Dkt. 854-9 at
     APLNDC630-0000441863-74 (AppleSearch User's Guide with step-by-step instructions for
24   simultaneously searching a database located on the computer with the AppleSearch server
     application and a remote WAIS  database using the AppleSearch client application); Dkt. 854-10
25   at SAMNDCA630-07216825-829 (Usenet postings by Apple employee and others, confirming
     capability to run AppleSearch server and client on same computer to search local storage media).
26   **WAIS**: *see* DX301 at FUHRNDCA630-00000001\freeWAIS-sf-2.0.65\doc\SF\fwsf.ps
27   (describing "Building and Installation", "Running Configure," "LOCAL_SEARCH," "Building
     databases," "Synonym Files," ""waisindex Options"); *id.* at FUHRNDCA630-
28   00000001\freeWAIS-sf-2.0.65\x\XwaisHELP ("Editing and Adding Sources").

1  prepare.[16]  On Apple's theory, Apple's experts should be precluded from demonstrating accused

2  software, as Apple cannot point to a single actual person who used the accused software in exactly

3  the way Apple plans to demonstrate it.  The law, however, does not support preclusion.

4         **D.     Exclusion of Samsung's Prior Art Demonstrations Would Be Legal Error**

5         Apple relies on Rule 403, which permits excluding "relevant evidence if its probative value

6  is substantially outweighed by a danger of one or more of the following: unfair prejudice,

7  confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

8  cumulative evidence."  FED. R. EVID. 403.  Demonstrations of prior art software to understand the

9  capabilities of that software is highly probative; indeed, the Federal Circuit considers it to be the

10 "most telling evidence" for claims such as these.  *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.

11 3d 1255, 1261 (Fed. Cir. 2013).  In *Versata*, the expert took the relevant instructions and

12 "activated functions already present in the software: data structures, access sequences, pricing

13 procedures, and condition types."  *Id.* at 1263.  Samsung's experts will do precisely the same.

14        Apple's motion says nothing about the high probative value of these demonstrations.  It

15 does not even attempt to quantify the probative value of the demonstrations, only arguing that

16 "[w]hatever probative value" these systems have must be outweighed by prejudice.  Mot. at 9.[17]

17 _____

18     [16]  For example, to allege infringement of the '959 patent, Dr. Snoeren (1) connects the

19 accused devices to the Internet using a network connection, (2) creates contact name entries
   showing "Apple Customer Support," (3) creates a separate contact entry for "Apple Support;" (4)

20 creates a bookmark in the browser application for "Apple.com," (5) entered specific search terms
   ("appalachian trial") to create a search history on the device; and (6) subsequently enters specific

21 search terms in the Google Search Application.  Fazio Decl. Ex. 44, Snoeren Rpt. ¶¶ 143, 154.
   To create the screenshots cited to support his infringement analysis for the '414 patent, Dr.

22 Snoeren (1) connects an accused device to the Internet using a network connection, (2) creates a
   Gmail account under the alias "awesome.test.phone@gmail.com," (3) composes an email in the

23 Gmail application using the newly created account, (4) creates a calendar entry in the Calendar
   application, (5) creates a contact in the Contacts application, (6) creates an Exchange account

24 under the alias "TestEmailAccount," (7) composes an email in the Mail application using the
   newly created Exchange account.  *Id.* at ¶ 415.  Dr. Snoeren does not even *assert* that he knows

25 any specific person who has performed these exact steps on an accused device, *ever*.

26     [17] To the contrary, Apple's statement that Dr. Chase "demonstrates how his . . . systems might
   have worked during the prior art time period by creating emails, calendar entries and contacts" on

27 the prior art devices (Mot. at 9:17-18) *affirms* the probative value of Dr. Chase's demonstratives.
   Like the '959 patent, claim 20 of the '414 patent is directed at a "computer readable storage

28     (footnote continued)

But the prejudice Apple identifies its entirely its own creation:  Apple says it will spend excessive time at trial objecting and cross-examining, causing a "disruptive sideshow" by continuing to rehashing the same complaints this Court has already rejected.  *Id.* at 10.  This is no basis for exclusion.  Rule 403 allows excluding evidence where the evidence *itself* would be "wasting time."  But an objecting party cannot twist the rule and trigger exclusion simply by saying that the objecting party will waste the court's time with excessive objections.  Moreover, while Apple repeatedly suggests Samsung cannot demonstrate prior art software unless Samsung locates a computer, perfectly preserved for over a decade, that ran prior art software in the prior art period, Apple cited no authority for that argument in any of the *seven briefs* Apple has filed on this issue.[18]  Nor could it.

Courts routinely admit an expert's demonstrative installation of software to demonstrate the software's capabilities.[19]  Here, as in many other cases, Samsung's experts installed authentic prior art software and activated functions already present in the software, without changing or editing the software itself.  This is exactly what the Federal Circuit encourages.  *See Versata*,  717

_____

medium containing executable program instructions" for performing synchronization.  Therefore, Apple's arguments that  Dr. Chase's demonstrative "systems" are not *themselves* prior art miss the point—that Dr. Chase's demonstratives are relevant to show the functionality of the "executable program instructions" in Windows Mobile 5 and Evolution—which *are* prior art.

[18]  Dkt. 803, Dkt. 806, Dkt. 882, Dkt. 944, Dkt. 945, Dkt. 1101, Dkt. 1281.   The cases Apple cites in its motion are inapposite—none of them involve demonstrations of prior art software.  In *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008), the Federal Circuit did not consider expert demonstratives of working prior art software, but instead overturned anticipation where the District Court improperly strung together disparate disclosures of two separate embodiments in a single publication, calling that combination anticipation rather than single-reference obviousness.  *Id.* at 1371.  *Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1380 (Fed. Cir. 2013) contains two brief paragraphs upholding exclusion of reexamination evidence.  *In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992) considered whether it was proper to combine the teachings of two separate patents for purposes of obviousness; it did not consider any evidentiary questions under Rule 403 or any demonstration of prior art software.  And *Baker v. Delta Air Lines, Inc.*, 6 F.3d 632, 643 (9th Cir. 1993) dealt with a compilation exhibit listing pilots who had been demoted in an age-discrimination case.  *Id.* at 634.  None of these are relevant.

[19]  For example, the district court in *Versata* upheld a verdict of anticipation based in part on a demonstration of prior art software capabilities, and expert testimony describing it.  *Versata Software*, 902 F. Supp. at 847.  Likewise, in *Finjan, Inc. v. Symantec Corp.*, No. 10-593, 2013 WL 5302560, at *14-17 (D. Del. Sept. 19, 2013), the court upheld a jury verdict of invalidity based in part on an expert's recreation (circa 2011) of prior art software from 1995 and 1996.

1   F. 3d at 1263 ("Versata's expert did not alter or modify SAP's code in order to achieve the

2   claimed functionality.  Rather, he followed SAP's own directions on how to implement pricing

3   functionality in its software and activated functions already present in the software: data

4   structures, access sequences, pricing procedures, and condition types. . .").  Samsung's use of prior

5   art software to "activat[e] functions already present in the software" is not excludable under Rule

6   403, and Apple invites legal error by asking to exclude what the Federal Circuit calls the "most

7   telling evidence" of software's capabilities.  *Id.*  at 1261.

8   **V.    Opposition to Motion # 5:  Apple Attempts to Exclude Prior Art Documents Based on
        Legal Arguments Samsung Is Not Making**

9
10          Apple moves to preclude Samsung from relying on the Tung thesis and the NeoNode

    Quick Start Guide as prior art "printed publications" under 35 U.S.C. § 102.  *See* Mot. at 10-12.
11
    These arguments fail procedurally, legally, and factually.
12
13          **A.    Apple's Motion Is Not a Proper Motion *In Limine* and Can Be Denied for That
                Reason Alone**

14          Apple makes a summary judgment argument, not a motion *in limine*.  Apple could and

15   should have made these arguments at summary judgment, just as Apple argued that other

16   references were not prior art under § 102.  *See* Dkt. 803-4 at 15-19.  In *Guzik Technical Enters.,*

17   *Inc. v. Western Digital Corp.*, No. 11-03786-PSG, 2013 WL 6227626, at *8 (N.D. Cal. Nov. 22,

18   2013), Judge Grewal denied a motion *in limine* seeking to preclude "evidence and argument

19   regarding infringement under 35 U.S.C. § 271(g)" because defendant "now (inappropriately)

20   brings a motion for summary judgment that it has 'disguised' as a motion in limine."  The Court

21   denied this "thinly-veiled" dispositive motion, since "[p]ursuant to the court's scheduling order the

22   last day for dispositive motions in this case to be heard was August 27, 2013 and motions were

23   required to be noticed in compliance with Civil L.R. 7–2(a)."  *Id.*; *see also Samsung Elecs. Co.,*

24   *Ltd. v. Quanta Computer, Inc.*, No. 00-4524-VRW, 2006 WL 2850028, at *6 (N.D. Cal. Oct. 4,

25   2006) (denying motion *in limine* asking to resolve "disputed meaning of certain evidence and the

26   disputed credibility of witnesses" as this was "a *de facto* summary judgment issue" that "[t]he

27   court declines to resolve").  Apple's late summary judgment motion violates the Court's schedule

28

for dispositive motions (Dkt. 713) and the provisions of the Local Rules governing page limits and notice requirements.  *See* Civ. L.R. 7-2(a).  Apple's motion should be denied on that ground alone.

**B.    Apple Misrepresents the Relevance and Use of the Tung Thesis as Corroborating Evidence of Prior Art Software's Relevant Functionality**

Apple's motion does not make legal or factual sense.  Samsung does not argue that the Tung thesis shows the '959 patent was "described in a printed publication in . . . a foreign country" under 35 U.S.C. §§ 102(a) or (b).  Samsung uses the WAIS software as prior art—not the Tung thesis.  The WAIS software was "known or used by others in this country" before the '959 patent under § 102(a) and "in public use . . . more than one year prior to" the '959 application under § 102(b).  That software, not Tung, is the prior art on which Samsung relies.  Dkt. 1256.  Tung corroborates WAIS functionality, and shows how the software was installed and used.  *See* DX304; Fazio Decl. Ex. 45, Fuhr Dep. Tr. at 89:19-90:22; 187:10-189:12.  Tung's thesis will be used to describe the WAIS software and corroborate fact and expert witness testimony regarding WAIS's invalidating features and functionality.[20]

The Federal Circuit explicitly requires corroboration for witness testimony that invalidates a patent under § 35 U.S.C. 102(a), (b) and (g)(2).  *See, e.g.*, *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1367 (Fed. Cir. 1999).  But that corroborating evidence need not be a "printed publication" that would itself anticipate the claims—the corroborating evidence need only be *contemporaneous* material.  *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001) (private business letter, purchase invoices and employee affidavit sufficient corroboration); *Ceats, Inc. v. Continental Airlines, Inc.*, 526 Fed. Appx. 966, 970-71 (Fed. Cir. April 26, 2013)

---

[20]  Notably, Dr. Rinard never argues that the Tung thesis is a "printed publication" under § 102(b) in his opening or rebuttal reports.  Rather, he cites the Tung thesis as support for his opinions concerning the WAIS software, including its design and development history (Dkt. 803-12, Rinard Rpt. ¶¶ 327-330, 337); features and functionalities (*id.* at ¶¶ 300, 307-309, 312-314, 319, 325, 326, 339; Fazio Decl. Ex. 46, Rinard Rpt. at ¶ 115; Dkt. 882-13, Rinard Rebuttal Rpt. ¶¶ 352, 366, 372, 376-377, 427, 491); and how the features and functionality meets the limitations of claim 25 of the '959 patent (Dkt. 803-12, Rinard Rpt. Ex. 9 at ¶¶ 7-8, 18-21, 24, 33-36, 44, 46-47, 49-56, 58, 61-62, 64-70, 74-76, 82-83).  Nor does Dr. Rinard use the Tung thesis as a single reference for his opinions concerning the WAIS system.  Dr. Rinard's uses fact witness testimony from the creators of freeWAIS-sf and his analysis of the freeWAIS-sf executable software, source code, and user manual (*id.* at ¶¶ 2-4.), all of which comport with the disclosures in the Tung thesis.

1    (internal "testing checklist requir[ing] testers to verify certain levels of functionality in the system"

2    provided sufficient corroboration that "that the public Expedia 2.0 system contained the claimed

3    functionality"); *TradeCard. Inc v. S1 Corp.*, 509 F. Supp. 2d 304, 318, 332-33 (S.D.N.Y. 2007)

4    ("confidential" nature of internal documents concerning the features and functionality of "prior art

5    software," including developer's notebook, internal design documents, and proprietary computer

6    source code, did not "vitiate their corroborative value," as the materials "provided reliable and

7    additional evidence to support an employee's testimony regarding P.O. Track's design, functions,

8    and publication to consumers."). Tung is highly probative corroborating evidence, and Apple

9    makes no argument to exclude Tung's use in that capacity.

10            **C.        There Is No Basis to Exclude the Neonode Quick Start Guide**

11           Apple also challenges the public availability of the Neonode Quick Start Guide ("Neonode

12   Guide"). This challenge fails. Even were Samsung not entitled to a ruling that the Neonode

13   Guide *was* publicly available, at a minimum this is a question for the factfinder.

14           Critically, Apple admits that the Neonode Guide was available on the Internet prior to the

15   critical date. *See* Mot. at 13-14. Accordingly, the only question is "whether a person of ordinary

16   skill in the art interested in the subject matter of the patents in suit and exercising reasonable

17   diligence *would have been able to locate*" the Neonode Guide. *See Bruckelmyer v. Ground*

18   *Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006). Apple's motion is premised on the idea that

19   a user interface designer for portable electronic devices in 2004 would not, as a matter of law,

20   have thought to look at the internet. This fails for numerous reasons.

21           First, courts assessing public availability have held that information on the internet is not

22   just considered publicly accessible, but is the quintessential indicia of availability. *See CA, Inc. v.*

23   *Simple.com*, No. 02-civ-2748, 2009 U.S. Dist. LEXIS 27092 at *43-44 (E.D. N.Y. Mar. 17, 2009)

24   ("Indeed, the Meininger reference is analogous to a document made available to the general public

25   in a library since one skilled in the art could find it by using an Internet search engine… the nature

26   of the Internet is such that one skilled in the art could access the Meininger reference at any hour

27   of the day from the convenience of her own home."). The PTO agrees. *See* Fazio Decl. Ex. 47,

28   MPEP § 2128 (instructing examiners that "Prior art disclosures on the Internet or on an on-line

1   database are considered to be publicly available as of the date the item was publicly posted.").

2   Accordingly, the Board of Patent Appeals and Interferences regularly finds that information

3   retrieved from "archive.org" showing the date on which particular website material was archived

4   is sufficient to establish *public availability* of the materials as of that date.  *See, e.g.*, *Ex Parte*

5   *Krivulka*, Appeal 2010-003098; Application 11/418,514, 2010 Pat. App. LEXIS 13234, at *10

6   (B.P.A.I. Sept. 30, 2010) (relying on evidence from Internet archive to establish availability); *Ex*

7   *Parte Shaouy*, Appeal 2007-0987; Application 09/810,992, 2007 Pat. App. LEXIS 3263, at *6

8   (B.P.A.I. May 24, 2007) (same).

9          Second, the factors generally used by courts in assessing public availability shows that the

10   Neonode Guide was publicly available under the governing law.  In *In re Klopfenstein,* 380 F.3d

11   1345 (Fed. Cir. 2004), the Federal Circuit identified factors that it considered in determining

12   whether a particular reference was publicly available, including the length of time the reference

13   was available and the expertise of the target audience.  *See id.* at 1347, 1350, 1352.  The Internet is

14   indisputably more available than the three day display of posterboards found to be publicly

15   available by the Federal Circuit.  *See id.* at 1347-52.  As established by the Internet Archive

16   declaration, the Neonode Guide was available on neonode.com by July 29, 2004 and has also been

17   available through archive.org since that date.  *See* Fazio Decl. Ex. 48, Butler Aff. at 1-2 ("The

18   Internet Archive assigns a URL on its site to the archive files in the format . . . [Year in

19   yyyy][Month in mm][Day in dd][Time code in hh:mm:ss]"; *see also* DX342.001-004 (*e.g.*,

20   20040729130130)).

21          Similarly, the expertise of the target audience belies Apple's suggestion.  To prevail, Apple

22   would have to show an interested person in 2004 or 2005 would not have been able to locate a

23   commercial website that describes a portable phone operated by finger touch.  *See* DX342.001-

24   .003.  But the '721 patent itself reveals that the target audience here would unquestionably have

25   known about the internet; it is directed to a "portable electronic devices" *that have internet access,*

26   including and mobile telephones (like the iPhone), as well as *handheld and tablet computers*.  *See*

27   JX10, '721 patent at 1:20-21; 3:52-66; 4:11-13.

28

1    Third, Apple's argument that those in the art would not have known to look for Neonode

2  (Mot. at 14) is misguided.  The test is not whether a person would have looked specifically for a

3  "Neonode" reference.  Rather, interested persons "seeking to improve a touchscreen portable

4  device would have looked to existing portable touchscreen devices."  *See* Fazio Decl. Ex. 50,

5  Greenberg Rpt. ¶ 459.  Even assuming that those having ordinary skill in the art in 2004 would not

6  have known of Neonode specifically, the pages from the website "www.neonode.com" describe

7  the features of Neonode as a "phone," where the user input is "touch," and that it is operated by

8  "finger touch."  *See* DX342.001-002.  The evidence therefore shows that a person interested in

9  touch screens, especially for portable devices—the exact field of the patent—would have been

10 able to locate the reference.

11   And last, even if the test were whether one of skill in the art would have found Neonode

12 information specifically, the prosecution history actually answers that question.  *Apple itself*

13 *identified a different Neonode manual* in an information disclosure statement filed with the

14 USPTO during prosecution of the '721 patent.  *See* JX11 at 157-164.

15   At a minimum, the Neonode Guide's undisputed availability on the Internet by July 29,

16 2004 creates a triable issue of fact as to the public accessibility of the document.  *See Rackable*

17 *Sys., Inc. v. Super Micro Computer, Inc.*, No. C 05-3561, 2007 U.S. Dist. LEXIS 33824, at *65

18 (N.D. Cal. April 25, 2007); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, 291 F.3d 1317,

19 1322 (Fed. Cir. 2002) (trial court erred in ruling as a matter of law when there is dispute whether

20 reports were sufficiently available to the public interested in the art); *Medtronic, Inc. v. AGA Med.*

21 *Corp.*, 618 F. Supp. 2d 1191, 1193 (N.D. Cal. 2009) (ruling as a matter of law not proper when

22 there is a "a triable issue as to whether the Hughes document was sufficiently publicly accessible

23 to constitute a 'printed publication' under  § 102").

24 **VI.    Opposition to Motion # 6:  Samsung Does Not Object to Apple's Motion Provided**
       **Apple Does Not Misstate Facts or Renege on the Deal Struck Resolve Samsung's**
25       **Motion to Strike**

26   Apple's motion #6 is best understood by what it does *not* challenge.  Apple does not

27 challenge any of Dr. Rinard's opinions about non-infringing *alternative* designs, including any of

28 Dr. Rinard's opinions regarding Google Search Application ("GSA") version 2.7 as a non-

infringing alternative.  Apple's motion #6 addresses a different issue:  whether Samsung can turn Dr. Rinard's unchallenged opinions about non-infringing *alternatives* into new opinions about actual non-infringing *sales*.  Mot. at 14-17.

Samsung does not oppose the narrow relief motion #6 requests, with one important caveat:  Samsung will not affirmatively solicit testimony about accused devices that were upgraded after the close of fact discovery and now run an upgraded version of the GSA (specifically, version 2.7 or higher), and Samsung will not seek to identify a particular number of accused device sales that ran this admittedly non-infringing version of the software, but Apple cannot misrepresent the facts at trial and argue that Samsung did not or could not easily implement this admittedly non-infringing alternative, by simply updating the version of the GSA application.

This issue has a long history.  Samsung will briefly summarize it for the Court's benefit. But to be clear, Apple's motion #6 should now be moot, unless Apple intends to argue (misleadingly and contrary to the facts) that Samsung could not or did not upgrade the GSA version on Samsung's phones to the admittedly-noninfringing version GSA 2.7.

### A.    Apple's Late Disclosure of a New Infringement Theory Resulted in a Deal Which Binds Apple

As late as its July 10, 2013 final set of infringement contentions, Apple's theory of infringement was that a "Google heuristic takes the information descriptor and searches content on the Internet.  More specifically, this heuristic constructs a query to be properly handled by the Google search suggestion engine."  Dkt. 880-22, Ex. 23 (Galaxy S III Infringement Chart) at 11-12.  This theory never mentioned the "local search history" database in the accused devices.  *Id.* But on August 12, Apple's infringement theory changed radically:  infringement allegedly occurred when a device combined results from a "local search history" database with Google's search suggestions.  Dkt. 880-21, Ex. 10 (Snoeren Rpt.) ¶¶ 202, 251-256, 264-269, 286-291; Dkt. 880-21, Ex. 11 (Snoeren Rpt. Ex. 4).  Apple's change in theory was made to preserve any pretense of validity of the '959 patent.  It presented an entirely new theory of the alleged "heuristic"— Apple's theory is that it is "heuristic" not to *construct* the query, but instead to take the *results* of the query "and combine" the results with "locally stored search history."

1    Unknown to Apple, and entirely by coincidence, Google decided to remove this "local

2  search history" database from the GSA before Apple even accused it. ███████████████████

3  ████████████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████ Fazio Decl. Ex. 54, Rinard

5  Rebuttal Rpt. ¶ 338. ███████████████████████████████████ *Id*. ███████████

6  ████████████████████████████████████████████████████████████████████████████

7  ████████ *Id*.

8    After Apple disclosed its new infringement theory on August 12, Samsung's expert tried to

9  respond to this new late infringement theory as best he could.  As part of his investigation, Dr.

10 Rinard ███████████████████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████ *Id*. ███████████████

12 ████████████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████████████

14 ████████ *Id*.  Dr. Rinard was also able to update the GSA version on a Samsung device (in this

15 case, a Jelly Bean Galaxy Nexus) to publicly-available version 2.7 of the GSA (*id.* at ¶ 197) and

16 test the functionality of this software.  Dr. Rinard noted that these materials supported his opinion

17 that removing the "local search history" database was a simple non-infringing alternative to

18 Apple's new theory, and that the simplicity and viability of this alternative design was supported

19 by the fact that ███████████████████████████████████████████████████████████

20 ████████████ *Id*. at ¶¶ 196-200, 338.

21    Separately from seeking to rebut Apple's late theories, Samsung moved to strike Apple's

22 late infringement theory, since no theory about "local search history" was ever been disclosed

23 during fact discovery or as part of Apple's infringement contentions. Dkt. 880-5 at 5-7, 17-19.

24 Apple then moved to strike Dr. Rinard's opinions relating to GSA version 2.7, claiming they were

25 also belatedly disclosed—even though Dr. Rinard could not have formed this opinion earlier, as he

26 did not know Apple would accuse "local search history" until August 12. Dkt. 882-03 at 18-19;

27 Dkt. 1056, Ex. A at 2.

28

SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS *IN LIMINE*

1    At the hearing on Samsung's motion to strike, Apple's counsel described Samsung's

2  motion to strike Apple's late infringement theory as "[by] far, the most important [issue] to

3  Apple" and as a "very significant motion."  Dkt. 1061, 10/10/13 Hrg. Tr. at 99:14-18.  Apple even

4  characterized the motion as a "*sub rosa* motion for summary judgment," as Apple had no

5  infringement case to bring without its late-disclosed theory.  *Id.* at 99:19-21.  To resolve

6  Samsung's "very significant motion" and other motions to strike, Apple and Samsung struck a

7  threefold deal:  Samsung would withdraw its motion to strike Apple's late-disclosed infringement

8  theory; Apple would withdraw, with prejudice, its motion to strike Dr. Rinard's testimony

9  regarding version 2.7 of the GSA; and Dr. Snoeren could review version 2.7 source code and

10 prepare a supplemental report.  Dkt. 1056, Ex. A at 2, n.3; *id.* at 5.  The parties reached that

11 agreement in Judge Grewal's courtroom, after a multi-hour meet and confer, and then

12 memorialized that agreement before Judge Grewal (Dkt. 1061, 12/12/13 Hrg. Tr. at 11:17-17) and

13 again in a subsequent filing (Dkt. 1056).

14   Finally, as part of the deal, Apple received source code for GSA 2.7, as requested—and

15 Apple's expert was given *four weeks* to review this code and submit a supplemental report

16 addressing whether GSA 2.7 was a non-infringing alternative.  Dkt. 1056, Ex. A at 2, n.3.  Apple's

17 expert reviewed the code, printing nearly a hundred pages in his review.  Fazio Decl. Ex. 53.  But

18 apparently, Dr. Snoeren could not dispute Dr. Rinard's technical opinion—Dr. Snoeren *never*

19 *served the supplemental report* that Apple requested.  *Id.*  Dr. Rinard's opinions regarding GSA

20 2.7 as a non-infringing alternative to the accused versions of the GSA stand unrebutted.

### B.   Apple Does Not Challenge Dr. Rinard's Testimony that Version 2.7 of the Google Search Application Is an Available Non-Infringing Alternative

21

22   Apple does not attempt to re-raise its challenge to Dr. Rinard's opinion that GSA 2.7 is a

23 non-infringing alternative on Apple's new theory of infringement.  Instead, Apple seeks much

24 narrower relief:  an order preventing "Samsung from arguing or presenting evidence at trial that

25 the allegedly non-infringing Quick Search Box code version 2.7 or later has actually been

26

27

28

implemented in a Samsung product." Mot. at 17.[21]  Apple seeks to preclude Samsung from

offering evidence that recently sold units of the accused Samsung devices were upgraded to GSA

2.7 after the close of fact discovery.[22]  As noted above, Samsung has no intention of affirmatively

adducing evidence that recent versions of the accused products included GSA 2.7 or higher when

those devices received regularly-scheduled software updates.  Samsung will limit its expert

testimony to opinions disclosed in its expert reports, and Samsung will not affirmatively solicit

testimony from fact witnesses to discuss recent updates to Samsung's devices.

Apple's motion carefully does not say, however, that Apple will not try to mislead the jury

by claiming that Samsung somehow could not deploy GSA 2.7 or higher.  The Court should not

allow any such argument, and if Apple does make such an argument, Samsung should be allowed

to correct the record. This is necessary for fundamental fairness.  Samsung fully complied with its

discovery obligations,[23] and had no opportunity to re-open discovery after Apple sprung a new

---

[21]  Apple's motion challenges *none* of the following opinions in Dr. Rinard's report:  Local
search history has been removed from vers███████████████████████ecl.
Ex. 54, Rinard Rebuttal Rpt. ¶¶ 196, 338); ███████████████████████████████████
████████████████████████████████ (*id.* at ¶ 338); Version 2.7 of the Google
Search Application was publicly available by August 21, 2013 (*id.*); a GSA without local search
history, such as version 2.7, would not infringe the asserted claims of the '959 patent (Dkt. 882-
13, Rinard Rebuttal Rpt. ¶ 334); and Dr. Rinard was able to update the Google Search Application
on an accused Samsung device (in this case, a Jelly Bean Galaxy Nexus) to version 2.7 of the
Google Search Application (*id.* at ¶ 197).

[22]  *See* Mot. at 14 ("Apple moves to exclude testimony and other evidence that [GSA 2.7] has
been implemented in any Samsung product"); *id.* at 17 ("If Samsung were to elicit testimony from
a witness at trial that Quick Search Box version 2.7 was actually implemented in a Samsung
product, . . .Apple . . . would have had no opportunity to obtain further information such as timing
of implementation in order to calculate alternative damages numbers").

[23]  Apple's claims of discovery violations all turn on ignoring the actual timeline of events.
*See* Mot. at 15-16.  Apple's Motion carefully avoids mentioning that Samsung had no chance to
provide the discovery Apple is now complaining Samsung did not provide.  Apple did not disclose
its infringement theory for the '959 patent until a month after the close of fact discovery—August
12, 2013. Dkt. 880-5 at 5-7, 17-19.  Before August 12, 2013, Samsung could not know the then-
unaccused "local search history" database was in any way relevant to the case, and Samsung
therefore had no reason to disclose non-infringement positions relating to that not-yet-accused
functionality.  The final day to serve substantive supplemental interrogatory responses was July
15, 2013, one month *before* Apple disclosed its new infringement theory targeting the "local
search history" database. Dkt. 664 at 3.  Samsung's July 15, 2013 response to Apple's non-
    (footnote continued)

infringement theory on Samsung more than one month after fact discovery closed.  Samsung will not affirmatively seek to discuss software upgrades that occurred after the close of discovery.  But Apple cannot suggest Samsung did not or could not make routine upgrades to an application, or suggest this simple non-infringing alternative could not be implemented.  Apple's motion should be denied.

## VII.   Opposition to Motion # 7:  Apple's Motion to Preclude Samsung from Offering Any Evidence of Design Arounds Should Be Denied

Apple's seventh motion *in limine* is notable for what it lacks:  any alleged authority for its sweeping request that the Court preclude Samsung from offering *any* evidence from *any* witness on the highly probative issue of design around times.  Apple's motion for exclusion of six of Samsung's expert witnesses is an untimely and meritless *Daubert* motion.  Nor is there any authority or basis in the record for Apple's request to exclude Samsung's fact witnesses.   Apple selectively ignores responsive testimony from the five Samsung witnesses in its misleading portrayal of the record.  And remarkably, Apple fails to mention—much less criticize—the testimony from two Google corporate witnesses who addressed the very questions about Google's design around times that Apple complains Samsung did not know.  Furthermore, Apple's motion rests on the false premise that Samsung was required to produce a single 30(b)(6) witness on all six steps that Apple speculates "necessarily" occur in every design around.

Finally, even if Apple had any legitimate complaint about Samsung's corporate testimony on design around times—which it does not—its failure to seek relief during discovery bars the drastic remedy Apple seeks.  Apple's motion should be denied.

---

infringement interrogatory was based on Apple's then-existing infringement contentions, not Apple's not-yet-disclosed local search history theory—a theory that *still to this day does not appear in Apple's infringement contentions*, because Apple never moved for leave to supplement those contentions.  Fazio Decl. Ex. 55, Samsung's July 15, 2013 Further Supplemental Responses To Apple's First, Third, and Tenth Set of Interrogatories at 107 ("Samsung's second supplemental responses are based on Samsung's current understanding of Apple's infringement contentions.").

**A.      Apple's Motion is an Untimely and Baseless *Daubert* Motion**

Although not even identified by Apple in its motion, the six expert witnesses who expect to testify on design around times are Drs. Rinard, Chase, Jeffay, Greenberg, and Wigdor, who opined on design around times in their respective technical reports; and Dr. Chevalier, who considered these opinions and presented reasonable royalty calculations based on varying design around time estimates (Fazio Decl. Ex. 56, Chevalier Rebuttal Rpt. ¶¶ 178-203; 359-364).  Apple does not challenge the methods, evidence considered, or conclusions drawn by these experts.

Every one of Samsung's technical experts reached independent conclusions on the time required to implement various technical alternatives to the accused designs.  Fazio Decl. Ex. 54, Rinard Rebuttal Rpt. ¶¶ 290-341; Ex. 57, Chase Rebuttal Rpt. ¶¶ 179-208; Ex. 58, Greenberg Rebuttal Rpt. ¶¶ 481-484; Ex. 59, Jeffay Rebuttal Rpt. ¶¶ 484-531; Ex. 60, Wigdor Rebuttal Rpt. ¶¶ 144-176.  Those opinions were based on the experts' analysis of the accused source code and their experience with software design and development, including their experience maintaining and editing source code.  Fazio Decl. Ex. 46, Rinard Rpt. ¶¶ 9-48; Ex. 61, Chase Rpt. ¶¶ 7-16; Ex. 50, Greenberg Rpt. ¶¶ 7-25; Ex. 59, Jeffay Rebuttal Rpt. ¶¶ 10-18; Ex. 62, Wigdor Rpt. ¶¶ 8-12.  The experts also reviewed a variety of interrogatory responses, third-party deposition transcripts, and opinions of other technical experts.  Fazio Decl. Ex. 54, Rinard Rebuttal Rpt. App'x 1; Ex. 57, Chase Rebuttal Rpt. App'x 1; Ex. 58, Greenberg Rebuttal Rpt. App'x 1; Ex. 59, Jeffay Rebuttal Rpt. App'x  1; Ex. 60, Wigdor Rebuttal Rpt. App'x 1.  In some cases the experts also tested existing third-party software to confirm its operation (*see, e.g.*, Fazio Decl. Ex. 54, Rinard Rebuttal Rpt. ¶ 170), and conducted interviews with third-party engineers.  *See, e.g.*, *id.* at ¶ 196.  Apple had the opportunity to bring a *Daubert* challenge against any of these experts but chose not to do so; its untimely request here, without any proffered legal basis, is sufficient reason to deny the motion.

**B.      Apple's Complaints About Samsung's 30(b)(6) Witnesses Lack Merit**

Samsung's witnesses provided reliable testimony consistent with Samsung's experts' opinions on design around times, to the extent Samsung has corporate knowledge on the subject.  Apple's motion simply ignores this body of testimony.  For example, Sunggeun Park, Samsung's

1   corporate designee related to accused functionality for the '959 patent, testified about

2   ███████████████████████████████████████ when questioned about one directly:

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████ Fazio Decl.

7   Ex. 63, Park Dep. Tr. at 135:3-11.  Mr. Park further provided testimony in general terms about

8   ████████████████████████████████████████████ *Id.* at 138:3-11.  Mr. Park's lack

9   of knowledge about ████████████████████████████████████ does not

10  indicate any failure of preparation on Samsung's part, as Apple contends (Mot. at 18), but rather

11  properly reflects Samsung's corporate knowledge about the subject.

12      For the '414 patent, Huijae Lee was also prepared.  For example, he testified that ███████

13  ████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████

15  ███████████████████ Fazio Decl. Ex. 64, Lee Dep. Tr. at 102:22-103:17.  Mr. Lee further

16  testified that ████████████████████████████████████████████████████████

17  ██████████ again reflecting Samsung's corporate knowledge of the subject.  *Id.* at 20:11-21:3.

18      Jinhyung Kim and Huijae Lee appropriately addressed Apple's questions on the '647

19  patent.  *See* Fazio Decl. Ex. 65, Kim Dep. Tr. at 186:6-8 ("████████████████████████

20  ██████████████████████████████████"); Fazio Decl. Ex. 64, Lee Dep.

21  Tr. at 141:8-11 ("████████████████████████████████████████████████████

22  ████████████████████████████"); *id.* at 143:8-11 ("████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████"); *see also id.* at 143:12-

25  144:1 (██████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

1    Samsung's witness for the '721 patent was also adequately prepared to testify on facts

2    within Samsung's possession.  *See* Fazio Decl. Ex. 66, Kim Dep. Tr. at 155:12-158:10 ("█████

3    ████████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████████

5    ███████████████████████████████████████").

6    For Daewoon Myoung, Samsung's 30(b)(6) designee on the '172 patent, Apple claims that

7    Mr. Myoung was unable to testify about the ██████████████████████████████ Mot. at 18-19.

8    However, Mr. Myoung was *never asked* how ██████████████ and the testimony cited by

9    Apple does not indicate otherwise.  Fazio Decl. Ex. 67, Myoung Dep. Tr. at 76:8-11.  (█████

10   ████████████████████████████████████████████████████████████████████████████████

11   ████████████████████"); *id.* at 77:10 ("███████████████████████████████████████

12   █████████); *id.* at 92:3-4 ("██████████████████████████████████████████████████

13   ████████████████████████████); *id.* at 129:10-13 ("████████████████████████████

14   ████████████████████████").  None of Apple's questions for Mr. Myoung relate to the

15   removal of the Google keyboard.  Instead, Mr. Myoung was only asked about ████████████

16   ████████████████████████████████████.  *See, e.g.*, *id.* at 126:15-24.

17   Samsung's 30(b)(6) witnesses testified based on the knowledge within Samsung's

18   possession, and where appropriate pointed to knowledge possessed by other parties such as

19   Google.  That is all that is required.  Apple offers no authority to the contrary.

20   **C.    Apple Ignores Testimony on Estimated Design Around Times from Google**
     **Witnesses**

21   In singling out the testimony of five Samsung engineers, Apple ignores the testimony of

22   Google's 30(b)(6) witnesses on the questions that called for knowledge within Google's ken,

23   rather than Samsung's.  For example, Bjorn Bringert testified extensively about ████████████

24   ████████████████████████████████████████████████████████████(Fazio Decl. Ex. 68, Bringert

25   Dep. Tr. at 60:23-83:23), and Hiroshi Lockheimer testified extensively about the ████████████

26   ████████████████████████████████████████████████████████████████████████████████ Fazio

27   Decl. Ex. 69, Lockheimer Dep. Tr. at 202:14-277:08.  Apple does not question the sufficiency of

28

1  testimony from Messrs. Bringert and Lockheimer.  Not surprising:  Dr. Vellturo relies on their

2  testimony for his opinion on design around times.  Dkt. 1156-3, Vellturo Rpt. ¶ 278.

3      Apple is well aware that Google—not not Samsung— ████████████████████

4  ██████████████████████████████████████████████████████████████  Dkt. 962-3

5  at 24-25, n. 28.  Apple's complaint that Samsung's corporate designee Sunggeun Park identified

6  Google as possessing the knowledge in question (Mot. at 18), carries no weight.

7      **D.      Apple Provides No Authority Requiring a Single 30(b)(6) Witness on Every
            Step in the Design Around Process**

8

9      Apple's motion rests on the proposition that Samsung was required to have educated one

10  30(b)(6) designee to testify "as to the full time period needed for any actual alleged design arounds

11  or proposed non-infringing alternatives."  Mot. at 18.  Apple itself invents six steps that

12  supposedly constitute this "full time period."[24]  Apple's premise that one witness must testify

13  about all of these steps is unsupported by any authority and is without merit.

14      Apple incorrectly cites *SynQor*, 709 F.3d at 1382, to suggest a "defendant must establish

15  that noninfringing alternatives were available for commercial use."  Mot. at 18.  But Apple bears

16  the burden of proof.  *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed.

17  Cir. 1999); *see also* 1846 Dkt. 2657 at 5-6 ("Apple, as the party seeking damages, bears the initial

18  burden of establishing that no such acceptable noninfringing alternatives were available to

19  Samsung during the periods for which Apple claims damages.") (citing *Standard Havens Prods.,*

20  *Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).  *SynQor* is not to the contrary; it

21  merely confirms that the availability and acceptability of a noninfringing alternative are questions

22  of fact.  709 F.3d 1381-82.[25]

---

24  Apple asserts that design around "necessarily includes" all six periods, but cites no
authority that suggests the Court should believe this speculation.  Mot. at 18.  These are not even
the same five steps that Dr. Vellturo concluded are "indictate[d]" by his review of Samsung's and
Google's evidence and testimony.  Dkt. 1156-3, Vellturo Rpt. ¶ 290.

25  Apple's reliance on *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164, 1178-79 (N.D.
Cal. 2010), is likewise misplaced.  As Apple concedes, the defendant in *Conceptus* could not
"point to *any*" evidence showing it had the capacity to implement non-infringing alternatives.  *Id.*
at 1179 (emphasis added).  By contrast, Samsung and Google's 30(b)(6) deponents have provided
      (footnote continued)

### E.   Dr. Vellturo's Methodology Relies on the Same Evidence and Testimony Apple Now Seeks to Exclude

Apple's own expert, Dr. Vellturo, did not state that he lacked sufficient information to form an opinion on total design around times.  He even admits in his report that the he derives his ███████████ and ████████████ design around periods from "two observed design and implementation periods" for the '959 and '721 patents.  Dkt. 1156-3, Vellturo Rpt. ¶¶ 290-92.[26] Nor does Apple contend that Dr. Vellturo's estimates would have changed even if Apple had timely sought further testimony.  Therefore Apple has suffered no prejudice.  Apple should not be permitted to offer a theory of lost profits that relies on testimony from factual and expert witnesses, and at the same time preclude Samsung from offering testimony of the exact same type.

### F.   Apple Offers No Authority Suggesting that Issue Preclusion Is a Remedy for Any Alleged Lack of 30(b)(6) Preparation

There is no authority for granting Apple the remedy it seeks, wholesale exclusion of an entire category of fact and expert testimony due to alleged deficiencies in Samsung's 30(b)(6) testimony, where Samsung presented five witnesses and Google presented two.  A Rule 30(b)(6) deposition is admissible against the party designating the representative but is not "binding" on the entity for which the witness testifies in the sense of preclusion or judicial admission.  8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Prac. and Proc.* § 2103 (Supp. 2007); *see also State Farm Mutual Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 212 (E.D. Pa. 2008) (collecting authority).  Rule 30(b)(6) testimony "can be contradicted and used for

---

evidence that Samsung did or could implement non-infringing alternatives, and the fact that not every deponent possessed all information regarding a particular alternative is of no moment.

[26]   For the '959 patent, Dr. Vellturo relies on the testimony of Google design around witnesses Hiroshi Lockheimer and Bjorn Bringert, as well as Samsung's Sunggeun Park—the very witnesses whose testimony Apple now challenges—████████████████████████████████████ ████████████████████████████████████████████████████████████████  Dkt. 1156-3, Vellturo Rpt. ¶ 278.  For the '721 patent, Dr. Vellturo relies on the testimony of Samsung witness Sung Sik Lee ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ *Id.* at ¶ 270. ████████████████████████████████████████████████████████████████ ██████████████████████ *Id.* at ¶ 274.

1    impeachment purposes," but it "is not a judicial admission that ultimately decides an issue."

2    *Industrial Hard Crome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000).

3           Issue preclusion is not an appropriate remedy for complaints that—even if they had any

4    merit—should have been addressed in discovery.  Facing a similar motion to preclude testimony

5    due to alleged failure to prepare its 30(b)(6) witnesses, the court in *Diamond Triumph Auto Glass,*

6    *Inc. v. Safelite Glass Corp.*, 441 F. Supp. 2d 695 (M.D. Pa. 2006) stated that "[a] court may

7    preclude a party from presenting evidence on an issue based on a discovery failure *solely if the*

8    *party fails to obey an order to provide discovery*."  *Id.* at 722 n.17 (citing Fed. R. Civ. P. 37(b)(2))

9    (emphasis added).  The court ruled that "[t]he Federal Rules of Civil Procedure do not allow such

10   a severe sanction under these circumstances," and such a sanction "would be a particularly

11   draconian measure."  *Id.*; *see also Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*, 279 F.R.D.

12   59, 61 (D. Mass. 2011) (refusing to impose "the very severe sanction of precluding [defendant]

13   from introducing evidence at trial" where designee had the most personal knowledge about the

14   designated topics, and prepared by reviewing relevant documents).   If Apple needed further

15   information—though there is no evidence that it did—"it was free to follow the procedures set

16   forth for compelling its production." *Diamond Triumph*, 441 F. Supp. 2d at 722 n.17.[27]  The close

17   of discovery in this case is long past, and Apple never moved to compel further deposition

18   testimony.  Apple's motion should be denied.

19

20

_____

21       [27]  Apple's cases do not support the sweeping relief it seeks. In *Rainey v. Am. Forest and
     Paper Ass'n, Inc.*, 26 F. Supp. 2d 82 (D.D.C. 1998), the court rejected defendant's attempt to

22   avoid summary judgment by providing an affidavit from a former employee that contradicted
     earlier 30(b)(6) testimony from a different employee.  *Id.* at 93-96.  The court did not "preclude[e]

23   testimony at trial."  Mot. at 20.  In *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676 (S.D.
     Fla. 2012), the plaintiff insurer brought a subrogation action against a subcontractor; its 30(b)(6)

24   witness was its only source of knowledge on certain issues and the insured third party with
     additional knowledge had refused to cooperate with discovery.  *Id.* at 685.  In the absence of third

25   party testimony, the plaintiff agreed that "it would be bound by [its witness's] lack of
     knowledge."  *Id.* at 698.  Here, the third party with knowledge, Google, provided extensive

26   testimony from two 30(b)(6) witnesses.  Finally, in *Ierardi v. Lorillard, Inc.*, No. 90-7049, 1991
     WL 66799, at *1 (E.D. Pa. Apr. 15, 1991), the court simply denied defendant's motion for a

27   protective order that would exempt it from "produc[ing] *any* witnesses pursuant to Rule 30(b)(6)."

28

1

2

3    DATED:  February 25, 2014          QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
4

5                                          By /s/ Victoria F. Maroulis
                                              Charles K. Verhoeven
6                                             Kevin P.B. Johnson
                                              Victoria F. Maroulis
7                                             William C. Price
                                              Michael L. Fazio
8

9                                             Attorneys for
                                              SAMSUNG ELECTRONICS CO., LTD.,
10                                            SAMSUNG ELECTRONICS AMERICA, INC.,
                                              and SAMSUNG TELECOMMUNICATIONS
11                                            AMERICA, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS *IN LIMINE*