# EXHIBIT 54

# Redacted Version of Document Sought To Be Sealed

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

|  |  |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br><br>**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE** |

**REBUTTAL EXPERT REPORT OF MARTIN RINARD, PH.D.
REGARDING NONINFRINGEMENT OF
CLAIMS 24 AND 25 OF U.S. PATENT NO. 6,847,959**

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

93.



In addition, the Google Search Application is "unbundled," meaning that users could have updated their versions of Google Search Application to 1.3.3 without waiting for an updated maintenance release.  For instance, I updated the Google Search Application in a Samsung Conquer 4G build to 1.3.3.  This device was running Android version 2.3.4 and build number GINGERBREAD.EF25, along with version 1.1.2.64376 of the Google Search Application, as shown in the screenshots below:



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE



I then went into the Play Store, went to Google Search, and selected the "Update" option shown below:



After I had completed the update, the version number read 1.3.3.247963:

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**



INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

170.   I have tested a Gingerbread device, namely a Samsung Conquer 4G running Google Search Application version 1.1.2, build 64376.  I first disabled display of my network search history in the settings menu, as shown in the screenshot below:



171.   I then performed searches for "Galaxy siii" then "galaxy nexus," confirming that it did in fact retain and display a history of my searches, as shown in the screenshot below, showing searches for "Galaxy siii" and "galaxy nexus" after having typed in "gal":

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

196. ████████████████████████████████████

████████   ████████████████████████████████████

████████████   ████████████████

197.     To confirm the removal of local search history functionality from GSA 2.7, I

updated the GSA to version 2.7.9.789824.arm, as shown in the screenshot below:



198.     I then removed the only account on the device:

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**



199.   I then performed a search for "galaxy siii" and "galaxy sii":



200.   When I next went to the GSA, and then typed in "gal," the GSA never displayed the past searches for "galaxy siii" and "galaxy sii," but rather only web suggestions:

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**



INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

**A.**     <u>**Non-Infringing Alternatives Generally**</u>

290.     I will discuss four non-infringing alternatives in this section, namely the Internet-Only Google Search Application (what Dr. Snoeren referred to as the "Fourth Alleged Alternative"), the Local-Only Google Search Application (what Dr. Snoeren referred to as the "Tenth Alleged Alternative"), the Dual-Mode Google Search Application (what Dr. Snoeren referred to as the "Eleventh Alleged Alternative"), and a Google Search Application Without Local Search History (what Dr. Snoeren referred to as the "Second Alleged Alternative").

291.     The Opening Snoeren Report repeatedly alleges that "'universal search' functionality enabling both local and web searches through a single query" is "mandated by the

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

Android standards."   (Opening Snoeren Report, ¶¶ 322, 327, 331-335.) I have reviewed the

documents cited by the Opening Snoeren Report in support of this proposition, and do not

believe this statement accurately reflects the requirements of the documents cited by the Opening

Snoeren Report.   Specifically, the Opening Snoeren Report cites Section 3.8.3 of the

Compatibility Definition documents for Android 2.3, 4.0, 4.1, and 4.2.  (Opening Snoeren Report

, ¶ 322.)  The Android 4.2 Compatibility Definition document is representative.  (APLNDC630-

0001370791.)  It reads:

> Android includes APIs [Resources, 22] that allow developers to
> incorporate search into their applications, and expose their
> application's data into the global system search. Generally
> speaking, this functionality consists of a single, system-wide user
> interface that allows users to enter queries, displays suggestions as
> users type, and displays results. The Android APIs allow
> developers to reuse this interface to provide search within their
> own apps, and allow developers to supply results to the common
> global search user interface.
>
> Device implementations MUST include a single, shared, system-
> wide search user interface capable of real-time suggestions in
> response to user input. Device implementations MUST implement
> the APIs that allow developers to reuse this user interface to
> provide   search   within   their   own   applications.   Device
> implementations MUST implement the APIs that allow third-party
> applications to add suggestions to the search box when it is run in
> global search mode. If no third-party applications are installed that
> make use of this functionality, the default behavior SHOULD be to
> display web search engine results and suggestions.

(*Id.*, at APLNDC630-0001370801-02.)

   292.   This document "mandates" three things.  First, the device must include a "single,

shared, system-wide search user interface capable of real-time suggestions in response to user

input."  This provision merely specifies an interface, and is silent as to the locations from which

the suggestions would be provided.  Second, the device must "implement the APIs that allow

developers to reuse this user interface to provide search within their own applications."  This

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

provision likewise specifies an interface, and is also silent as to the locations from which the suggestions would be provided.  Third,  the device must "implement the APIs that allow third-party applications to add suggestions to the search box when it is run in global search mode." This provision specifies that the device must include an API to add suggestions, but does not specify whether those suggestions are derived from web or local searches.  These provisions, alone or combined, do not provide any basis upon which to argue that web and local searches in response to a single query are mandated by the Android Compatibility Documents.  The Android Compatibility Definition documents for the other Android versions cited by the Opening Snoeren Report are not substantively different in this regard.

293.    The Android Compatibility Definition documents do provide for a preferred "default" configuration, to be used only when "no third-party applications are installed that make used of this [system-wide search] functionality."   (*Id.*) In this configuration, the "default behavior SHOULD be to display web search engine results and suggestions."  (*Id.*)  In other words, if there are no installed third party applications that make use of the system-wide search functionality, the default is to display web search engine results and web search engine suggestions.  The use of the word "should" indicates that this functionality is optional, not mandatory.  And this default functionality is entirely silent as to local search, perhaps because it is the default behavior when there are no third party applications available to be searched.  This provision also says nothing about combining web and local suggestions in response to a single query.

**B.**      **Internet-Only Google Search Application (the Opening Snoeren Report's "Fourth Alleged Alternative")**

294.    On pages 158-59 of Samsung's Interrogatory Responses, Samsung describes a non-infringing alternative in which the Google Search Application "only provide search

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

suggestions and search results from a web search to the Quick Search Box; no local search results would be provided." (Samsung's July 15, 2013 Further Supplemental Responses To Apple's First, Third, And Tenth Sets Of Interrogatories, p. 158-9.) I understand that this non-infringing alternative was introduced on a number of Samsung devices, including ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ (Samsung's Interrogatory Responses at 158-59, 174; *see also* Opening Snoeren Report, Exh. 5: identifying Internet-only software releases by "NA".)

295.    Apple acknowledges that this alternative design does not infringe any asserted claim of the '959 patent.  (*See* Opening Snoeren Report, p. 3, fn. 2; Opening Snoeren Report, Exh. 5, p. 1: "An 'NA' in the corresponding cell denotes a maintenance release where the Google Search application only retrieves Google search suggestions from the Internet.")

296.    As set forth below, the Google Search Application is used primarily to search for web results, not results on the device.  Accordingly, removal of the Google Search Application's

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

local search capability, requiring that a user search for local results in the search feature of the individual applications, would not impact the user's use of the Google Search Application in the great majority of circumstances.

297.    I have reviewed the deposition of Hiroshi Lockheimer, dated July 26, 2013. During the deposition, █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████

██████████████████████████████████████████████████

███████████████████

████████████████████████ ████████████████████████

████████████████████████ ████████████████████████

██████████████████████████████

███████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████

███████████████████████████████████████

████████

███████████████████████

█████████████████████████████████████████

██████████

██ ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

(Lockheimer Dep. 90:25 – 91:25 (objections omitted).)

298.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

█████████

████████████████████████████████████████

██████████████

█ ██████████████████████████████████████
█   ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████.

(Lockheimer Dep. 92:1-14.)

299.    I have also reviewed the deposition of Ann Hsieh, a User Experience Researcher in the Search group at Google.  Ms. Hsieh testified as Google's corporate witness related to whether the presence or absence of what Apple referred to as "Unified Search" has any effect on consumer purchasing decisions.  (Hsieh Depo. at 45:19-46:6.)  ████████████████████

████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
███████

(Transcript of the July 16, 2013 Deposition of A. Hsieh at (Hsieh Depo. 96:2-11.)

300.    Ms. Hsieh's testimony that  ███████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████  (*Id.*)  █████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

█████████████████████████████████████████████████████████████

█████████████████████████████████████████

301.    In addition to testimony, I have also reviewed a document produced by Google in this litigation, with the production number of GOOG-NDCAL630-00065845-69. ████████████

█████████████████████████████████████████████████████████████

███████

302.    ███████████████████████████████████████████████████

GOOG-NDCAL630-00065845-69. ██████████████████████████████████████

303.    ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

(GOOG-NDCAL630-00056846.) █████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████  ██████████████████████████████████

█████████████████████████████████████████████████  (GOOG-

NDCAL630-00065846-47.) ██████  █████  ██████  ████  █████  █  ████████  ██

███████████████████████████████████████████████  (GOOG-

NDCAL630-00065847.) █████████████████████████████████████

█████████████  (GOOG-NDCAL630-00065848.)

304.    ███████████████████████████████████████████████████

██████████████████.  (GOOG-NDCAL630-0006584.) ███████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

305.

306.    This information indicates that when users are using the accused application, they are predominantly interested in performing a Google search and discovering information on the Internet, and are not typically interested in local results from the device.

307.    In addition, the GSA permits a user to disable all searchable items other than the alleged "Web" module or alleged "Google" Search suggestions module, effectively converting the GSA into an Internet-only GSA.  I believe that it is unlikely that the device would be designed with the capability to operate in this mode if it were not acceptable to at least some users.

308.    The Opening Snoeren Report argues otherwise, stating that the history of the release and following removal of the Internet-only Google Search Application "certainly suggests that Samsung does not believe that its web-search-only version . . . is acceptable to customers" and that a "web-only version is significantly less robust than the Quick Search Box that infringes the '959 patent."  (Opening Snoeren Report, ¶ 327.)  I disagree that the Google Search Application infringes the '959 patent, and I likewise disagree that the evidence cited by the Opening Snoeren Report shows that the Internet-only Google Search Application is either not

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

robust or unacceptable.

309.    The Opening Snoeren Report cites a number of documents as evidence that the Internet-only GSA is not robust or unacceptable to consumers.  (Opening Snoeren Report, ¶ 327.)  These documents do not provide support for the Opening Snoeren Report's conclusion.  I discuss each of those documents in turn.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

310.     For this non-infringing alternative, the Opening Snoeren Report alleges that "such a system does not provide any 'universal search' functionality, which is mandated by the Android standards."   (Opening Snoeren Report, ¶ 327.)   Dr. Snoeren does not identify any particular requirement of these documents that the Internet-only GSA would fail to satisfy.   In addition, I am not aware of any consumer complaints that the devices employing the Internet-only GSA allegedly failed to comply with Android standards, suggesting that even if this alternative did not comply with the Android Compatibility Documents, this did not factor into the user experience.   Further ,the section of the Android Compatibility documents relating to search makes up a very small part of the Android Compatibility Definition documents.   For instance, Section 3.8.3 takes up less than a third of  a page in the 36-page Android 4.2 Compatbility Definition document.  (APLNDC630-0001370801.)

311.     In addition, devices with the Internet-only GSA included many versions of the

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

Galaxy S III.  (Opening Snoeren Report, Exh. 5, pp. 3-4.)  In fact, Exhibit 5 to the Opening Snoeren Report shows that 18 of 40 maintenance releases for the Galaxy S III included the Internet-only GSA. I understand that the S III was at one time the world's best-selling smartphone.  (APLNDC630-0000846670.) It is my understanding that during this time frame, i.e., the third quarter of 2012, many S III models were shipped with the Internet-only GSA. (Opening Snoeren Report, Exh. 5, pp. 3-4.)  While I am not a marketing expert, this fact suggests that the Internet-only GSA did not have a significant negative impact on sales, and was not unacceptable to consumers.

312.    On page 199 of Samsung's Interrogatory Responses, ███████████████████

███████████████████████████████████████████ (Samsung's July 15, 2013 Further

Supplemental Responses To Apple's First, Third, And Tenth Sets Of Interrogatories, p. 199.) █

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████ ███████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ █ ██████████████████████████████████

████████████████████ (*See* GOOG-NDCAL630-00065802; GOOG-NDCAL630-00065791;

GOOG-NDCAL630-00065786; GOOG-NDCAL630-00065800.)

313.    A similar modification could have made to the ███████████████████

---

[28]  ████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

C.     **Local-Only Google Search Application (the Opening Snoeren Report's "Tenth Alleged Alternative")**

314.     On page 175, lines 5-10 of Samsung's Interrogatory Responses, Samsung describes a non-infringing alternative in which the Google Search Application "would only provide local search suggestions and search results to the Quick Search Box; no web search suggestions or web search results would be provided."   (Samsung's July 15, 2013 Further Supplemental Responses To Apple's First, Third, And Tenth Sets Of Interrogatories, p. 175.)

315.     The Opening Snoeren Report states that this solution would not be acceptable for the Android developer community or users.   (Opening Snoeren Report, ¶ 334.) The Opening Snoeren Report does not explain why this would not be acceptable for the developer community, and I do not see how this change would have any impact on the developer community. Developers would remain able to provide search results to the Google Search Application in their applications.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

316.    The Opening Snoeren Report argues that this design would "go against the design goals of the QSB." (Opening Snoeren Report, ¶ 334.) Whether the alternative design would go against the design goals of the GSA is not relevant to whether the design would be acceptable to users.

317.    The Opening Snoeren Report further alleges that this non-infringing alternative design would "not provide a 'universal search' functionality enabling local and web searches through a single query, which is mandated by the Android standards." (Opening Snoeren Report, ¶ 334.) The Android standards do not require "a 'universal search' functionality enabling local and web searches through a single query." Those standards require "a single, shared, system-wide search user interface capable of real-time suggestions in response to user input," the implementation of "APIs that allow developers to reuse this user interface to provide search within their own applications," and the implementation of "APIs that allow third-party applications to add suggestions to the search box when it is run in global search mode." (APLNDC630-0001370801.) Not one of these requirements mention web suggestions or results, let alone web suggestions and results in response to a single query. The Compatibility Definition document ***optionally*** recommends that the interface should display web search engine results and suggestions when there are no third party applications installed that make use of the functionality. *Id.* But this functionality is optional, not mandatory.

318.    Samsung estimates that it would take about ███████████████

██████████████████████████████████████████

███████████████████████████    ████████████████

██████████████████████████████████████████

█████████████████████████████████████

126

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

███████████████████████████████████████

█████████████████████████████   █████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████  ███  ███  ██  ███████████████████  ██

████████████████████

319.   ████████████████████████████████████████

█████████████████████

**D.      Dual-Mode Google Search Application (the Opening Snoeren Report's "Eleventh Alleged Alternative")**

320.    On page 175, lines 11-18 of Samsung's July 15, 2013 Further Supplemental Responses To Apple's First, Third, And Tenth Sets Of Interrogatories, Samsung describes a non-infringing alternative in which the Google Search Application "may either provide web suggestions or provide local suggestions, but will never provide both web and local suggestions for the same query."   One of ordinary skill in the art would understand that there are many different ways to implement functionality such as this.   The interface could provide a radio box or sliding toggle, or could provide one search button for web searches and a second for local searches.   Samsung's Interrogatory Responses identify another method, namely "provid[ing] web suggestions by default, but allow[ing] the user to tap a 'Search My Phone' entry in the suggestions to clear the search query and switch to a local search mode."   (*Id*. at 175.)

321.    Apple has conceded that such an arrangement would not be infringing.   (*See* Apple's July 15, 2013 Interrogatory Responses at 150: arguing Sherlock does not anticipate

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

claim 24 because "the references cited by Samsung describe Sherlock as providing one window for searching the internet and another window for find file, where there is never a single input provided to both.")

322.    I do not see any evidence to support the Opening Snoeren Report's position that this alternative design would not be an acceptable alternative for GSA users, and disagree with the Opening Snoeren Report's conclusion in this regard.   (Opening Snoeren Report, ¶ 335.)

323.    The evidence cited by the Opening Snoeren Report does not support the Opening Snoeren Report's opinion that the Dual-Mode GSA would not be acceptable to users.   The Opening Snoeren Report states that "this would go against the design goals of the QSB." (Opening Snoeren Report, ¶ 335.)  But the document relied on for this description of the "design goals of the QSB" speaks only of a single search box that can be used for both web and local searches.  This non-infringing alternative uses only a single search box for both local and web searches.

324.    The Opening Snoeren Report argues that, "[i]f users had to input a search for web searches and then choose to separately search for local search results, the system would not provide a 'universal search' functionality enabling both local and web searches through a single query," and further argues this "is mandated by the Android standards."  As discussed above, the

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

Android Compatibility Definition documents do not mandate performing both local and web searches through a single query.  Accordingly, I do not believe that this non-infringing alternative would fail to comply with Android standards.  Finally, the Opening Snoeren Report argues that this non-infringing alternative "lacks the convenience and efficiency inherent in searching both local and remote data, and as a result would detract from a device's ease of use."  I do not believe the evidence bears this statement out.  As set forth above, Google Search Application users seek out Internet results with a much greater frequency that they seek results from providers on the phone.  Accordingly, any inconvenience or inefficiency resulting from this non-infringing alternative would be negligible.   In fact, providing a full screen of web suggestions may lead to increased efficiency, given that users are generally seeking web results, not results from local suggestions providers.

325.    Samsung estimates that, for the Jelly Bean version of the Google Search Application, ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████  In the accused display of web suggestions and suggestions from other applications on the device, the Jelly Bean version of the Google Search Application already displays an option labeled "SEARCH PHONE."  The following screenshot shows a number of web suggestions, such as "planet fitness" and "playstation 4," in addition to the names of applications, followed by a "SEARCH PHONE" option:

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**



(Galaxy Nexus running GSA version 2.0.0.424425.)  If a user runs a search on the term "pl," the user would see the following web results screen, including (after scrolling horizontally) a "Phone" button available at the bottom of the screen that launches a search of applications on the phone:



**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

However, when a user selects the "SEARCH PHONE" option in the first screen or the "Phone" button in the web results screen, the user would see a screen containing the same search box and query text and suggestions from applications on the device in response to the query text:



(Galaxy Nexus running GSA version 2.0.0.424425.)  The user may revert to the display of web suggestions and suggestions from other applications on the device by tapping the back button.

326.     As is apparent from the screen shots above, the Jelly Bean version of the Google Search Application comes close to implementing this non-infringing alternative.   It would require only the removal of the suggestions from other applications on the device in the first screen to obtain the desired functionality.   It would be simple to implement this modification.



**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**



327.    This alternative design would therefore not infringe claim 24 because it would never search both information in local storage media and in the Internet in response to the same query.

328.    Similarly, it would take very little additional time to eliminate local queries entirely. If further modified in this way, the Google Search Application would not search for any local information.

329.    Samsung estimates that, for the Ice Cream Sandwich version of the Google Search Application (1.4.x),

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

██████████████████

    330.   I have reviewed source code for the 1.4.x versions of the Google Search Application.  It is my opinion that modifying the Ice Cream Sandwich version of the GSA to implement the Dual-Mode GSA ████████████████████████████████

████████████████████████████████████████

██ ████ ██ ██ ██████ █ ██ ██ █████ ████ █ ████ ████ █ ████ █ ████ ██ █████ ███ ██

████████ ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

    331.  ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ ██████████

████████████████████████████████████████

██████ ██████████████████████████████████

██████████████████████ ██████████████████

██ ██ ████ ████ ████ █████ ███ ██

████████████████████████████████████████

████████████████████████████████████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

**E.** **Google Search Application Without Local Search History (the Opening Snoeren Report's "Second Alleged Alternative")**

332.    On page 157, lines 24-28 of Samsung's July 15, 2013 Further Supplemental Responses To Apple's First, Third, And Tenth Sets Of Interrogatories, Samsung describes a non-infringing alternative in which the Google Search Application is modified "to employ logical algorithms, such as those in Andreoli, as search algorithms to achieve distributed search without infringing any claims of the '959 patent; as applicants admitted, logical algorithms such as those in Andreoli are an aspect of the prior art that is not covered by the '959 patent's claims."  In other words, the Google Search Application could be modified to employ non-heuristic algorithms.

333.    There is, however, no need to eliminate *all* alleged "heuristics" to avoid infringement.  Claim 24 requires only that the heuristics locate information both locally and on the Internet.  If one or more heuristics were employed to locate information only locally, or only on the Internet, that would be a non-infringing alternative to claims 24 and 25 of the '959 patent.

334.    In the Ice Cream Sandwich and Jelly Bean versions of Google Search Application, the Opening Snoeren Report alleges that the "rule of thumb" used by the "Google Content Provider" is composed of three "aspects." ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████      ████████████████████████

███████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████  ████████████████████████  All three of these

"aspects" relate to a locally stored search history.  If the three "aspects" of the alleged "rule of thumb" used by the alleged "Google Content Provider" were removed from the alleged "Google Content Provider," then the "Google Content Provider" would not employ any alleged "rule of thumb," and could therefore not possibly infringe the asserted claims even if Dr. Snoeren's incorrect infringement theory were held to be valid.

335.    All of Dr. Snoeren's "aspects" involve the local search history results. One alternative design would therefore remove any locally stored search history in the Google Search Application.  The user would still be able to search the user's web  search history, *i.e.*, the "Web History" referenced in the following screenshot from a Galaxy Nexus running Google Search Application version 1.4.0.235179:

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**



336.     ████████████████████████████████████████████

████████████████████████████████████████████████████████

███  ████████████████████

337.     This alternative design would have minimal to no impact on the user experience. As discussed above in Section VI.J, in the Accused ICS Products and Accused JB Products, local search history is used only if the user either has not associated with the device with a Google account, or if the user manually disabled local search history. So, for users who associate the device with a Google account and who do not alter the default setting, there would be no change in user experience at all.

338.     ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████  ██████████████

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

339.     I believe that the local search history functionality that Dr. Snoeren identifies in the Opending Snoeren Report could be removed in versions 1.3.0 and up of the Google Search Application in ███████████████████████████████████ ████████████

340.     In earlier versions of the Google Search Application (1.1.x and 1.2.x), Dr. Snoeren alleges that Gingerbread provides local search history functionality in a slightly

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

different way, through the Google Search Application's "shortcuts" functionality.  I believe that this local search history functionality could likewise be removed for these versions of Google Search Application in a very small amount of time, well less than eight hours.  The simplest way to eliminate the identified local search history functionality would be to eliminate the storing of shortcuts when the user executes a search, specifically, by eliminating the call to reportClick() in the onSearchClicked() function of SearchActivity.java.   (AOSP 2.3.5 source code [31] at /packages/apps/QuickSearchBox/src/com/android/quicksearchbox/.)

341.    Based on the foregoing, I believe that this alternative could be implemented in any GSA version in less than eight person hours.

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

---

[31]    Produced at SAMNDCA630AOSP-000039.

_____
Name

Sept. 13, 2013
_____
Date

## APPENDIX 1 - LIST OF MATERIALS CONSIDERED

In forming my opinion, I have considered all of the materials, documents and things that are described and/or cited in my report itself, as well in all charts and exhibits thereto, in addition to the materials identified below.  I also considered all of the materials, documents and things that are described and/or cited in my Opening Report, including all appendices and exhibits thereto.  I also hereby incorporate by reference my List of Materials Considered for my Opening Report as if fully set out herein.  Where a reference identified below is cited in my report in an abbreviated form, I provide the short form of that citation below.

| AUTHOR | TITLE | SHORT CITE | BATES NO. |
|---|---|---|---|
| Y. Arrouye, K. Mortensen | U.S. Patent No. 6,847,959 | "'959 patent" | APLNDC630-0000173201 |
| Y. Arrouye, K. Mortensen | U.S. Patent No. 8,086,604 | "'604 patent" | |
| | File History of U.S. Patent No. 6,847,959 | "'959  File History" | APLNDC630-0000041187 |
| | File History of U.S. Patent No. 8,086,604 | "'604  File History" | APLNDC630-0000040372 |
| | Apple's Infringement Claim Charts for U.S. Patent No. 6,847,959 | "'959 Infringement Contentions" | |
| | Apple's Infringement Claim Charts for U.S. Patent No. 8,086,604 | "'604 Infringement Contentions" | |
| | Apple's Responses and Supplemental Responses to Samsung's Interrogatories Nos. 1, 5, 6-8, 10, 14, 15, 19, 25-27, 39, 41, 42 | | |
| | Samsung's Responses and Supplemental Responses to Apple's Interrogatory No. 24, 29, 41, 45, 47 | | |
| | Apple's Responses and Supplemental Responses to Samsung's First and Fourth | | |

1

| Sets of Requests for Admission | | |
|---|---|---|
| Order Granting Motion for Preliminary Injunction, June 29, 2012 | Dkt. No. 221 | |
| Samsung's Motion to Stay the Preliminary Injunction, July 1, 2012 | | |
| Order Denying Samsung's Motion to Stay, July 3, 2012 | Dkt. No. 230 | |
| Deposition transcripts of: Y. Arrouye K. Mortensen N. Polish E. Bivona B. Bringert A. Cheyer N. Fuhr N. Govert A. Hseih B. Kahle D. Kittlaus H. Lockheimer K. McLeod | "__ Depo. Tr." | |
| Declaration of N. Polish re: Apple's Motion for Preliminary Injunction, Feb. 6, 2012, and exhibits thereto | "Polish Decl." | |
| Declaration of B. Bringert, April 23, 2013, and exhibits thereto | "Bringert Decl." | |
| Reply Declaration of N. Polish re: Apple's Motion for Preliminary Injunction, May 14, 2012, and exhibits thereto | "Polish Rep. Decl." | |
| Expert Report of Dr. Alex C. Snoeren Concerning U.S. Patent Nos. 6,847,959 and 7,761,414, August 12, 2013, and exhibits thereto | "Opening Snoeren Report" | |
| Expert Report of Martin Rinard, Ph.D. Regarding the Validity of Claims  24 and 25 | "Opening Rinard Report" | |

| | | | |
|---|---|---|---|
| | of U.S. Patent. No. 6,847,959, August 12, 2013, and exhibits thereto | | |
| | Expert Report of John R. Hauser, August 11, 2013, and exhibits thereto | "Hauser Report" | |
| | Expert Report of Christopher A. Vellturo, Ph.D., August 12, 2013, and exhibits thereto | "Vellturo Report" | |
| Jensen | U.S. Patent No. 6,834,276 | "Jensen" | SAMNDCA630-07882139 |
| Shoham | U.S. Patent No. 5,855,015 | "Shoham" | SAMNDCA630-07881554 |
| Evans | U.S. Patent No. 5,926,808 | "Evans" | SAMNDCA630-07881665 |
| Legall | U.S. Patent No. 6,005,565 | "Legall" | SAMNDCA630-07881724 |
| Smith | U.S. Patent No. 7,653,614 | "Smith" | SAMNDCA630-07882284 |
| | U.S. Patent Application No. 09/299,826 | Reference No. GW98-0881 | SAMNDCA630-7883559 |
| | U.S. Patent Application No. 09/374,781 | Reference No. GW98-0880 | SAMNDCA630-07883588 |
| | U.S. Patent Application No. 09/298,005 | Reference No. GW98-0882 | SAMNDCA630-07883575 |
| | U.S. Patent Application No. 09/298,006 | Reference No. GW98-0884 | |
| Apple Inc. | Inspection of source code produced by Apple in this action, including on-site inspection of Siri, Sherlock, Newton, and AppleSearch source code and analysis of printouts of Siri, Sherlock, Newton, and AppleSearch source code produced by Apple in this action. | | |
| Google | Inspection of source code produced by Google in this action | | |
| Samsung | Inspection of source code produced by Samsung in this action | | |
| AOSP | Inspection of Android Open | | |

3

| | Source Project source code produced in this action | |
|---|---|---|
| Apple Inc. | AppleSearch User's Guide | APLNDC630-0000441829 |
| Apple Inc. | AppleSearch User's Guide for Windows | APLNDC630-0000441690 |
| | Android Compatibility Definition documents | APLNDC630-0001370791<br>APLNDC630-0001370853<br>APLNDC630-0001370827<br>APLNDC630-0001370765<br>APLNDC630-0001370745 |
| | | APLNDC630-0000171798 |
| | | APLNDC630-0000369880 |
| | | APLNDC630-0000283699 |
| | | APLNDC630-0000258809 |
| Samsung | ████████████████ ████████ | SAMNDCA630-07515686 |
| | | SAMNDCA630-07517047 |
| | | SAMNDCA630-07694668 |
| | | SAMNDCA630-07831241 |
| | | SAMNDCA630-07865073 |
| | | SAMNDCA630-07866179 |
| | | SAMNDCA630-05658428 |
| | | SAMNDCA630-07515681 |
| | | SAMNDCA630-07887395 |
| | | SAMNDCA630-07887396 |
| | | SAMNDCA630-07887429 |
| | | SAMNDCA630-07791816 |
| | | SAMNDCA630-00826544 |
| | | SAMNDCA630-06636892 |
| | | SAMNDCA630-06636898 |
| | | SAMNDCA630-06029246-50 |
| | | SAMNDC630-07604014 |
| | | SAMNDC630-07604016 |
| | | SAMNDCA630AOSP-00000399 |

| | | | |
|---|---|---|---|
| | | | SAMNDCA630AOSP-0000059 |
| | | | GOOG-NDCAL630-00070082 |
| | | | GOOG-NDCAL630-00037192 |
| | | | GOOG-NDCAL630-00065845 |
| | | | GOOG-NDCAL630-00065786 |
| | | | GOOG-NDCAL630-00065791 |
| | | | GOOG-NDCAL630-00065800 |
| | | | GOOG-NDCAL630-00065802 |
| | freeWAIS-sf 2.0.65 | | FUHRNDCA630-00000001; SAMNDCA630-05349929 |
| | Newton Programmer's Guide For Newton 2.0 | "Programmer's Guide" | SAMNDCA630-00939107; LUKENDCA630-00000605 |
| | WAIStation User Guide, Prototype Version, v. 0.57 | "User Guide" | SAMNDCA630-00944300; KAHLENDCA630-00000571 |
| Devices | Samsung Galaxy Nexus, running Android version 4.0.2, build number ICL53F.I9250XWLA2<br><br>Samsung Galaxy Nexus, running Android version 4.1.1, build number JRO03O<br><br>Samsung Conquer 4G, running Android version 2.3.4, build number GINGERBREAD.EF25 | | |
| ▉▉▉▉▉ | ▉▉▉▉▉▉▉▉<br>▉▉▉▉▉ | ▉▉▉▉▉▉<br>▉▉▉▉▉▉<br>▉▉▉ | APLNDC630-0000369862 |
| J. Danith | A Dictionary of Computing | | APLNDC630-0000040556 |
| N. Fuhr | freeWAIS-sf 2.0.65 | | FUHRNDCA630-00000001; SAMNDCA630-05349929 |
| D. Grossman et al. | Information Retrieval: Algorithms and Heuristics | "Grossman" | SAMNDCA630-00936965 |
| B. Kahle | | | KAHLENDCA630-00000594<br>KAHLENDCA630-00000038<br>KAHLENDCA630-00001965 |

| | | | |
|---|---|---|---|
| | | | KAHLENDCA630-00000541<br>KAHLENDCA630-00002986<br>KAHLENDCA630-00000487 |
| S. Luke | Apple Developer Documentation - Extending and Controlling Sherlock | | LUKENDCA630-00000501 |
| M. Mauldin | Lycos: Design choices in an Internet search service | "Mauldin" | SAMNDCA630-07389470 |
| E. Selberg | Towards a Comprehensive Web Search | "Selberg Thesis" | PQ000011-000240 |
| E. Selberg | | | SELBERGNDCA630-00000210 |
| Tung | Expansion of the FreeWAIS Server | "Tung Thesis" | SAMNDCA630-06029163;<br>FUHRNDCA630-00000013;<br>GOVERTNDCA630-00000001 – 00000002;<br>SAMNDCA630-07601360 |
| J. Zobel et al. | Exploring the Similarity Space | "Zobel" | SAMNDCA630-07389413 |
| B. Liskov | "A design methodology for reliable software systems," Fall Joint Computer Conference, 1972 | | SAMNDCA630-07601334 |
| B. Liskov | "Abstraction Mechanisms in CLU," Communications of the ACM, August 1977 | | SAMNDCA630-07887395 |
| D. Parnas | "On the Criteria To Be Used in Decomposing Systems Into Modules," Communications of ACM, December 1972 | | SAMNDCA630-07601353 |
| B. Liskov and S. Zilles | "Programming with Abstract Data Types," Proceedings of the ACM SIGPLAN Symposium on Very High Level Programming Languages, 1974 | | SAMNDCA630-07601324 |
| Wirth | "Modula.  A Language for Modular Multiprogramming," Software: Practice and Experience, January/February | | SAMNDCA630-07887396 |

6

| | 1977 | |
|---|---|---|
| Dahl et al | "Simula 67 Common Base Language," Norwegian Computing Center 1968 | SAMNDCA630-07887429 |
| | All other documents, materials and things described or cited to in this report | |
| | All other exhibits attached to this report | |

# EXHIBIT 55

# Redacted Version of Document Sought To Be Sealed

1  QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
2  Charles K. Verhoeven (Bar No. 170151)
   charlesverhoeven@quinnemanuel.com
3  Kevin A. Smith (Bar No. 250814)
   kevinsmith@quinnemanuel.com
4  50 California Street, 22nd Floor
   San Francisco, California 94111
5  Telephone: (415) 875-6600
   Facsimile: (415) 875-6700
6
   Kevin P.B. Johnson (Bar No. 177129)
7  kevinjohnson@quinnemanuel.com
   Victoria F. Maroulis (Bar No. 202603)
8  victoriamaroulis@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
9  Redwood Shores, California 94065
   Telephone: (650) 801-5000
10 Facsimile: (650) 801-5100

11 William C. Price (Bar No. 108542)
   williamprice@quinnemanuel.com
12 Michael L. Fazio (Bar No. 228601)
   michaelfazio@quinnemanuel.com
13 865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
14 Telephone:   (213) 443-3000
   Facsimile:   (213) 443-3100
15
   Attorneys for SAMSUNG ELECTRONICS CO.,
16 LTD., SAMSUNG ELECTRONICS AMERICA,
   INC. and SAMSUNG
17 TELECOMMUNICATIONS AMERICA, LLC

18                UNITED STATES DISTRICT COURT

19       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

20 APPLE INC., a California corporation,          CASE NO. 12-cv-00630-LHK

21              Plaintiff,                         **SAMSUNG'S FURTHER
                                                   SUPPLEMENTAL RESPONSES TO
22       vs.                                       APPLE'S FIRST, THIRD, AND TENTH
                                                   SETS OF INTERROGATORIES**
23 SAMSUNG ELECTRONICS CO., LTD., a
   Korean corporation; SAMSUNG               **(Interrogatory Nos. 4, 5, 6, 8, 20, 23, 24, 27,
24 ELECTRONICS AMERICA, INC., a New           29, 45)**
   York corporation; SAMSUNG
25 TELECOMMUNICATIONS AMERICA,
   LLC, a Delaware limited liability company,  **HIGHLY CONFIDENTIAL –
26                                              ATTORNEYS' EYES ONLY – SOURCE
                Defendants.                     CODE**
27

28

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

Subject to and incorporating its General Objections and Specific Objections from Samsung's Objections and Responses to Apple's Third Set of Interrogatories, Samsung provides the following further supplemental response:

Samsung's previous response fully responded to this Interrogatory by providing information concerning when and how Samsung became aware of the Non-Preliminary Injunction Patents-In-Suit and identifying a person with knowledge. Accordingly, no supplementation is required.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

Subject to and incorporating its General Objections and Specific Objections from Samsung's Objections and Responses to Apple's Third Set of Interrogatories, Samsung provides the following further supplemental response:

For at least the reasons set forth in response to Interrogatory No. 24, the accused products do not infringe the asserted Apple patents.  In addition, for at least the reasons set forth in Samsung's L.R. 3-3 contentions, the asserted claims of the asserted Apple patents are invalid, and invalid claims cannot give rise to liability for infringement.  Nonetheless, certain changes affecting the accused functionality have been made to Samsung's products as set forth in response to Interrogatory Nos. 29 and 45, the responses to which are incorporated herein by reference.

**INTERROGATORY NO. 24:**

If you contend or believe that you do not infringe any asserted claim of the Apple Patents-in-Suit, state with specificity the complete factual and legal bases for such contention or belief, including a claim chart identifying which claim limitations are not found in the Accused Samsung Products, the claim constructions or definitions used in supporting this contention or belief, and if you believe that any claim or claim limitation is governed by 35 U.S.C. 112 ¶ 6, identify the factual and legal basis for that belief and the corresponding structure, material, or acts described in the specification and equivalents thereof and further including an identification of all documents and things supporting such contention or belief, and an identification of the persons most knowledgeable of the facts supporting such contention or belief.

1  to contributory infringement, Apple has not shown that the Accused Products have no substantial

2  non-infringing uses, that Samsung engaged in conduct within the United States that contributed to

3  another's direct infringement, and that Samsung knew that the combination for which its

4  component was made was both patented and infringing.  With respect to inducement, Apple has

5  not shown that Samsung's actions induced infringing acts and that it knew or should have known,

6  with specific intent, its actions would induce actual infringement.

7

8  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 24:**

9          Subject to and incorporating its General Objections and Specific Objections from

10  Samsung's Objections and Responses to Apple's Second Set of Interrogatories, Samsung repeats

11  and restates its prior responses to Interrogatory No. 24 and provides the following second

12  supplemental response:

13          Samsung's second supplemental responses are based on Samsung's current understanding

14  of Apple's infringement contentions.  Discovery is ongoing, and Samsung reserves the right to

15  further supplement and amend its responses.

16  **'647 Patent**:

17          (i) The Accused Products Lack An "Analyzer Server"

18          Based on Samsung's current understanding of Apple's infringement contentions, Samsung

19  states that, at a minimum, the Accused Products first do not infringe the asserted claims of the

20  '647 patent (claims 1, 4, 6, 8, and 9) because, in addition to and with particular regard to

21  Samsung's prior responses, the Accused Products do not satisfy the limitation "an analyzer server

22  for detecting structures in the data, and for linking actions to the detected structures."   In Accused

23  Samsung Devices ███████████████████████, Apple identifies the Messenger and

24  Browser applications as satisfying the "analyzer server" limitations based on functionality in the

25  ██████████████ classes, respectively.[1]  *See, e.g.*, Exhibit E-15, Apple's Galaxy S III

26  _____

27       [1] Where source code is described in this response in describing functionality or
     noninfringement positions, that source code is necessarily an excerpt responsive to Apple's
28       (footnote continued)

1   rather than the starting and ending locations as a non-infringing alternative to the '721 Patent.

2   Samsung refers to one implementation of this design as the circle unlock..   As previously stated,

3   Samsung ███████████████████████████████████████████

4        Samsung also identified not using an unlock image at all, but rather, a visual effect applied

5   to a background image as a non-infringing alternative to the '721 Patent.   Samsung refers to one

6   implementation of this design as the "ripple" effect or unlock. ██████████████████████

7   █████████████████████████████████████████████████████

8   ████████████████   █████████████████████████████████

9   █████████████████████████████████████████████████████████

10  ███████████████   ██████████████████████████████████████

11  █████████████████████

12

13  DATED:   July 15, 2013                QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
14

15                                        By */s/ Michael L. Fazio*
                                             Charles K. Verhoeven
16                                           Kevin P.B. Johnson
                                             Victoria F. Maroulis
17                                           William C. Price
                                             Michael L. Fazio
18
                                          Attorneys for SAMSUNG ELECTRONICS
19                                        CO., LTD., SAMSUNG ELECTRONICS
                                          AMERICA, INC. and SAMSUNG
20                                        TELECOMMUNICATIONS AMERICA, LLC

21  f

22

23

24

25

26

27

28

# EXHIBIT 56

# Redacted Version of Document Sought To Be Sealed

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

      Plaintiff,

    vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation; SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation; SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

      Defendants.

CASE No. 12-cv-00630-LHK

# EXPERT REPORT OF JUDITH A. CHEVALIER, PH.D.

# SEPTEMBER 13, 2013

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

178.    Not only does Dr. Vellturo's overstatement of the benefit of the patents-at-issue

cause him to proffer unsound qualitative evidence of demand for the patented elements, but it

also wrongly leads him to the conclusion that Samsung would not have been able to offer any

alternative product designs which would have resulted in an acceptable product for certain

patents-in-suit.  In consultation with Apple's technical experts, Dr. Vellturo lists various

challenges associated with Samsung's identified non-infringing alternatives to each of the

asserted patents.[469]  As part of this, Dr. Vellturo implicitly ignores the marketplace success of the

Samsung products which are not accused of infringement.

179.    Samsung's ability to retain its customers with an alternatively designed product

which does not infringe the patents-at-issue must be considered in any analysis.  Here, the

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

---

[469] *See* Vellturo Report, at Exhibit 11.

availability of many acceptable options renders the relative importance of the patents-at-issue to be limited.  Coupled with the observation that many of the functionalities-at-issue are minor in nature (compared to both the quantity and relative importance of other features) and in consideration of the many elements that drive demand of the products more generally, the patents, here, are unlikely to drive any measurable demand for the accused Samsung products.

180.



.[471]  Dr. Vellturo instead indicates a range of up to four or five months for certain patents and longer than thirty-six months for others (as he assumes that they could not be designed around).[472]  I describe some of these options below based on my understanding of the opinions of Samsung's technical experts.

---

[470] *See e.g.*, Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 29.
[471] *See, e.g.*, Lockheimer Deposition, at Exhibit 4. ███████████████████████████
█████████████████████████████████████████████████████████████████████████
███████ These estimates are generally consistent with the opinions of Samsung's technical experts, who indicate that times to design and implement alternatives to the accused functionality range from ███████████████████
██████  *See* Rebuttal Expert Report of Dr. Kevin Jeffay Concerning Noninfringement of U.S. Patent No. 5,946,647 at ¶¶ 502, 515, 519, 523, 528 ████████████  Rebuttal Expert Report of Martin Rinard, Ph.D. Regarding Noninfringement of Claims 24 and 25 of U.S. Patent No. 6,847,959 at ¶¶ 312, 313, 318, 319, 330, 331, 341 ████████
█████; Expert report of Jeffrey Chase, Ph.D. Regarding Noninfringement of the Asserted Claims of U.S. Patent No. 7,761,414 at ¶¶ 186, 196, 199, 204 ████████; Rebuttal Expert Report of Saul Greenberg, Ph.D., Regarding Noninfringement of the Asserted Claim 8 of U.S. Patent No. 8,046,721 at ¶ 36 ███████████  Rebuttal Expert Report of Daniel Wigdor Concerning Non-Infringement of U.S. Patent No. 8,074,172 at ¶¶ 145-146 █████
███████████████████████████████████████████████████████████████████████
█████████  *See* Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories, July 15, 2013, at 197-198.
[472] *See, e.g.*, Vellturo Report, Exhibit 26.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

### 1.    The '647 Patent

181.    ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████[473] This,
however, would somewhat limit the functionality of the device, as fewer options would be
available to the device user.  Dr. Vellturo comments that "this limitation on functionality would
be frustrating to users and would detract from the user experience."[474]  I understand, however,
that in addition to the "short tap" functionality, Apple does not accuse providing a menu with
options such as "copy" and "save."  Accordingly, any limitation on functionality would be
minimal.[475]

182.    ██████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████ █████████████

█████████████████████████████████████████████████

████████████████ ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

---

[473] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 29, at 111-113.  Apple's technical expert Dr. Mowry has previously opined that multiple actions are necessary to practice this patent, and that is apparently still his opinion.  Mowry Report, at ¶ 273, at 108.  But he acknowledges that the Motorola Court's construction only requires a single action. Mowry Report, at ¶ 273, at 108.

[474] Vellturo Report, at Exhibit 11.

[475] Jeffay Report at ¶¶ 115, 117.

[476] Jeffay Report at ¶¶ 496-508; Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories at 154.

[477] Jeffay Report at ¶¶ 497,502.  *See also*, Lockheimer Deposition, at Exhibit 4.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

183.    I further understand that the '647 patent does not cover all kinds of detection and linking.  Rather, the detection and linking must be performed by an "analyzer server"—a system that uses something other than an analyzer server to detect and link data would not fall within the scope of the claims.[478]

## 2.    The '959 Patent

184.    I understand that Samsung asserts that several non-infringing alternatives to the '959 patent exist which would have been available at the point of first infringement, would have required minimal programming efforts, and would have provided users with a similar functionality.[481]

---

[478] Jeffay Report at ¶¶ 47-79, 108-119.
[479] Jeffay Report at ¶¶ 47-79, 108-119.
[480] Jeffay Report at ¶¶ 484-539;  *See also*, Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 29, at 112.
[481] Rinard Report at ¶¶ 294-341.
[482] Although Dr. Velluro claims that there was a torrent of negativity associated with this alteration, some of the documents he relies on suggest otherwise. Vellturo Report, at 74-5. David Beren, "Did Local (Universal) Search Get Restored In Galaxy S III Jelly Bean Update?," TmoNews, Nov. 15, 2012.  The author begins by stating, "In what appears to be a little known development ..." highlighting the lack of coverage or awareness of the change in the feature.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

████  Dr. Vellturo identifies one potential drawback with this design, stating "This alternative would require a user to run multiple searches if she wanted to search both local and remote data sources."[484]

185.  ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

186.  ████████████████████████████████████

████████████████████████████████████████████

---

[483] ████████████████████████████████████████

[484] Vellturo Report, at Exhibit 11.

[485] Rinard Report at ¶¶ 320-324.

[486] *See* GOOG-NDCAL630-00065845-69.

████████████████████████████████████████████████
████████████████████████████████████████████

[487] Expansive results from a mobile device search are typically not ideal.  One mobile marketing company explains, "A user's behavior when searching on a mobile is different from that of a typical desktop user. Mobile users are on the move, have smaller display screens and keyboards, use short, sketchy search phrases and are not interested in too much information." http://www.digitalresultsmarketing.com/mobile-marketing/mobile-search-engine-marketing-sem/ (viewed 9/12/2013).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████[488]   In this way, the user could quickly and easily gain access to a local search without retyping any query, and only then be exposed to the desired local results.  I understand that this design implementation is acknowledged by Apple not to infringe.[489]

### 3.   The '414 Patent

187.   Apple's damages experts appear to assert that the '414 patent covers all systems that "background sync," *i.e.*, where synchronization takes place while the user interface is active.[490]  This ignores systems that can "background sync" but would not infringe, by using a different programming architecture.  I understand that Samsung asserts that several non-infringing alternatives to the '414 patent exist.

188.   Among those, Samsung could have implemented an alternative software program that would provide for identical synchronization from a user's perspective.  This is the "Disabling Editing of Local Database through User Interface" option described in Dr. Chase's Expert Report.[491]  Apple concedes this is non-infringing.[492]  I understand that this alternative is completely "under the hood," with no visible change in functionality to the user. ██

██████████████████████████████████████████████████

██████████████████████████████████████████████

---

[488] Rinard Report at ¶ 320.
[489] I understand that Apple has conceded that an application that searches web results in one screen and local results in another does not infringe.  (*See* Apple's July 15, 2013 Interrogatory Responses at 150: arguing Sherlock does not anticipate claim 24 because "the references cited by Samsung describe Sherlock as providing one window for searching the internet and another window for find file, ***where there is never a single input provided to both***.")
[490] Vellturo Report, at 28.
[491] Chase Report at ¶¶192-197.
[492] *See* Snoeren Report, Fourth Alleged Alternative presented in ¶¶ 495-497.
[493] Chase Report at ¶ 196.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

189.    I also understand that Samsung would have had other options to design-around

the '414 patent.  These include approaches that would not be as desirable as the ███████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ ██ ███████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████ ██ █████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.[496]

190.    I understand that these options would have been available at the point of first

infringement, would have required minimal programming efforts, and would provide users with

a similar functionality.[497]

### 4.    The '760 Patent

191.    I understand that Samsung has a number of design-arounds to the '760 patent.[498]

The Missed Call Screen Management feature allows the user to return a missed call directly from

a list of missed calls or access additional means of responding to the caller.  ████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

---

[494] Chase Report, at ¶ 202.
[495] Chase Report, at ¶¶ 203-208.
[496] Chase Report, at ¶¶ 184-191.
[497] Chase Report, at ¶¶ 184-208.
[498] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First
Supplemental Response to Interrogatory No. 24, at 120-4.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER



---

[499] *See* Cockburn Report, at 156; *see also* Samsung's Further Supplemental Responses to Apple's First, Third and Tenth Sets of Interrogatories at 132-133 and 177.

[500] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 24, at 120-124.

[501] See Cockburn Report, at ¶ 573.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

194.    Dr. Vellturo comments that "the overlapping displays would be more cognitively demanding or confusing to users…[or] result in the screens being cramped or visually cluttered, as a result of having too much information displayed on the device's limited screen size."[502] However, it appears that such confusion would be imperceptible and the display would not need to show materially more information than before, as the pop-up screen could fill virtually the entire screen display.

195.    ███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████.[503]

### 5.    The '721 Patent

196.    I understand that Samsung asserts that several non-infringing alternatives to the '721 patent exist. ██████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ ██ ████████████

████████████████████████████████████████

████████████████████████████████████████████████

███████████ ██

197.    ██████████████████████████████████████████

███████████████████████████████████████████████████

---

[502] Vellturo Report, at Exhibit 11.
[503] *See e.g.*, Lockheimer Deposition, at Exhibit 4.
[504] Greenberg Report, at ¶¶ 471-472.
[505] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 24, at 124-6.  The Galaxy S III uses a Ripple unlock. *See*, Samsung Galaxy S III Verizon User Manual at 140-1, Samsung. 2012. Available at http://downloadcenter.samsung.com/content/UM/201207/20120706131108550/VZW_SCH-i535_English_User_Manual_LG1_F5.pdf (viewed 9/12/2013).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

198.    Dr. Vellturo's concerns are unwarranted.  In fact, Dr. Vellturo points to no convincing evidence that users of the Galaxy S III, Note, Note II, or any other device implementing the "Circle" and "Ripple" Unlock alternatives are suffering from these issues. Moreover, Dr. Vellturo's support regarding the same difficulties in the earlier "circle unlock" mechanism is flawed.

Dr. Vellturo did not point to any documents suggesting Circle Unlock *as shipped* received negative feedback.  Furthermore, Dr. Vellturo provides no evidence that Ripple unlock was designed "in response to negative feedback regarding circle unlock"[511] or that Ripple unlock itself is unacceptable.

---

508  Vellturo Report, at Exhibit 11.

509  Vellturo Report, at FN 456.

510  Vellturo refers to Cockburn Ex. 11, which is a chart of Cockburn's opinions.  No objective evidence is shown.

511  Vellturo Report, at fn. 460, 463.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

199.    I also understand that on Apple devices incorporating the upcoming iOS 7, unlocking the screen will not be done by swiping in a way that requires dragging any image.[512] One source explains, "Apple completely changed the iOS 7 lock screen with a new slide from anywhere design. Users can slide left to right from anywhere on the screen to unlock, so there's no need to adjust to hit the small slider at the bottom."[513]  Other comments, "This is the new lock screen. Notice how the slider switch is gone? Now you just swipe left to right to unlock your phone."[514] This further erodes the plausibility of Dr. Vellturo's contentions about the problems with such a design.

### 6.    The '172 Patent

200.    I understand that Samsung asserts that several non-infringing alternatives to the '172 patent exist.[515]   Among those, Samsung could have equipped its accused devices with the same non-infringing keyboard that is used in several other non-accused Samsung models, including the Dart and Galaxy S III.

201.    

.  This keyboard was not enabled by default, but was available.[516] Predicted text is displayed in first area (where the user is typing the message).  Apple agrees that this alternative is non-infringing.[517]

---

unlock.  Lee testified "It does, yes, make some indication or reference to the water ripple unlock, but it actually is talking about other problems associated with the water ripple unlock itself."
[512] *See, e.g.,* http://www.cultofmac.com/231576/ios-7-will-let-you-swipe-anywhere-to-unlock-your-screen/ (viewed 9/12/2013); http://www.pcpro.co.uk/news/381931/ios-7-release-date-features-and-screenshots (viewed 9/12/2013); http://appadvice.com/appnn/2013/06/slide-to-unlock-appadvice-goes-hands-on-with-ios-7s-new-lock-screen (viewed 9/12/2013).
[513] http://www.gottabemobile.com/2013/08/23/ios-7-release-date-features-video/(viewed 9/12/2013).
[514] http://www.businessinsider.com/ios-7-screenshot-tour-2013-6#this-is-the-new-lock-screen-notice-how-the-slider-switch-is-gone-now-you-just-swipe-left-to-right-to-unlock-your-phone-1 (viewed 9/12/2013).
[515] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 24, at 126-8.
[516] *See, e.g.,* Dart User Manual, SAMNDCA630-00921130.
[517] *See* Cockburn Report, at ¶ 450.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

██████████████████████████████████████ [518] The Behold II was released in November 2009.

202.    Another option, implemented in the later Galaxy S III revisions, has both a Swype and Samsung keyboard, neither of which are accused.[519] These show what was actually typed in the first area (where the user is typing), but do not replace when a delimiter (space or punctuation) is pressed.  Apple agrees this alternative is non-infringing.[520]

203.    I understand that these options would have required minimal programming efforts and would provide users with a similar functionally.[521]  Dr. Vellturo provides no evidence that the keyboards in these products would have been unacceptable to Samsung customers more generally.

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

---

[518] *See* ███████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
*See* Cockburn Report, at ¶ 440.
[521] Wigdor Report, at ¶¶ 146 ████████████████████████
████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER
INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

359.    The Cost Approach involves an examination of the costs required to construct or purchase an alternative technology that performs the same function as the patented technology, but which does not infringe the patent or patents-in-suit.[777]  The cost to develop and implement a non-infringing alternative technology is also called "design-around cost."  According to the Cost Approach, a user of certain patented technology would pay no more for access to that technology than its avoided costs.

360.    Many times a Cost Approach focuses on avoided out-of-pocket capital expenditures.  However, such examinations tend to underestimate the true value of assets, including intellectual property assets.  The "economic" facts that need to be considered include the costs of unsuccessful design attempts, the period of the design-around, and the going forward impacts of the alternative involving, for example, the cost associated with implementing and distributing the alternative technology.

361.    Dr. Vellturo has acknowledged that the presence of design-around alternatives would reduce the royalty rate in his calculations.[778]

---

[777] Reilly and Schweihs (1999), at 97.
[778] *See, e.g.*, Vellturo Report, at Exhibit 27.
[779] *See, e.g.*, Vellturo Report, at Exhibit 27.

196

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**SUBJECT TO PROTECTIVE ORDER**



362.

363.

---

[780] ███████████████████████████████ Vellturo Report, at Exhibit 27.

[781] *See, e.g.*, Samsung's Response to Apple's Interrogatory No. 29.

[782] ████████████████████████████████████████████████ *See* Rebuttal
Expert Report of Saul Greenberg, Ph.D Regarding Noninfringement of the Asserted Claim 8 of U.S. Patent No.
8,046,721, at ¶¶ 438-440; Rebuttal Expert Report of Dr. Daniel Wigdor Concerning Non-Infringement of U.S.
Patent No. 8,074,172, at ¶¶ 156-158.

[783] Lockheimer Deposition, at Exhibit 4.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER



- 

364.

784 *See* ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

785 *See* Rebuttal Expert Report of Dr. Kevin Jeffay Concerning Noninfringement of U.S. Patent No. 5,946,647 at ¶¶ 502, 515, 519, 523, 528 ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ebuttal Expert Report of Martin Rinard, Ph.D. Regarding Noninfringement of Claims 24 and 25 of U.S. Patent No. 6,847,959 at ¶¶ 312, 313, 318, 319, 330, 331, 341 ▄▄▄▄▄▄▄▄; Expert report of Jeffrey Chase, Ph.D. Regarding Noninfringement of the Asserted Claims of U.S. Patent No. 7,761,414 at ¶¶ 186, 196, 199, 204 ▄▄▄▄▄▄▄▄▄▄▄▄▄▄; Rebuttal Expert Report of Saul Greenberg, Ph.D., Regarding Noninfringement of the Asserted Claim 8 of U.S. Patent No. 8,046,721 at ¶ 36 ▄▄▄▄▄▄▄▄▄ Rebuttal Expert Report of Daniel Wigdor Concerning Non-Infringement of U.S. Patent No. 8,074,172 at ¶¶ 145-146 ▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄

*See* Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories, July 15, 2013, at 197.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**SUBJECT TO PROTECTIVE ORDER**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

_____

JUDITH A. CHEVALIER

# EXHIBIT 57

# Redacted Version of Document Sought To Be Sealed

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

APPLE INC.

v.

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA,
INC. AND
SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC

Case No. 12-cv-00630-LHK

# REBUTTAL EXPERT REPORT OF JEFFREY CHASE, PH.D
# REGARDING NONINFRINGEMENT OF THE ASSERTED CLAIMS OF
# U.S. PATENT NO. 7,761,414

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

## IX.    NON-INFRINGING ALTERNATIVES TO THE '414 PATENT

### A.    Summary of Non-Infringing Alternatives

179.    In its objections and responses to Apple's Interrogatory No. 29 and Interrogatory No. 45, Samsung identified and described several possible non-infringing alternatives for its products.  In ¶¶ 484-512 of his report, Dr. Snoeren comments on these alternatives.  My responses to Dr. Snoeren's comments are set forth below

180.    As a starting matter, Samsung states in its response to Interrogatory No. 29 that the Accused Products themselves do not infringe, and therefore are non-infringing alternatives to practicing, the asserted claims.  (July 15 Responses at 159.)  For the reasons set forth in this Report, I agree with this statement.

181.    Further, Samsung states in its response to Interrogatory No. 29 that to the extent that Apple contends that any of the prior art identified by Samsung does not anticipate the asserted claims of the '414 patent," the scope and variety of the prior art represents a plethora of alternatives to the claimed technology."  (*Id.* at 159-60.)  For the reasons set forth in my Opening Report, it is my opinion that the prior art identified by Samsung anticipates and/or renders obvious the asserted claims of the patent.  Nevertheless, to the extent that Apple contends otherwise, it is my opinion that any purported distinctions between the asserted claims and the prior art could be implemented in the Accused Products.

182.    As discussed in greater detail in section XI below, Dr. Snoeren's analysis of the Accused Products underscores their similarity to multiple prior art references discussed in my Opening Report.  Therefore, to the extent Dr. Snoeren argues that the Accused Products are covered by the asserted claims of the '414 patent, his infringement opinions merely confirm that the asserted claims are invalid, and practicing the prior art would constitute a non-infringing alternative to practicing any valid asserted claim.  To the extent the prior art varies from the

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

Accused Products in any minor way, it would be possible to implement the prior art functionality in the Accused Products.[13]

183.     In the following paragraphs, I respond in greater detail with respect to the alleged alternatives that Dr. Snoeren concedes would not infringe the asserted claims of the '414 patent.

### B.     Alternative 3:  "Offline Mode" Syncing.

184.     In its response to Apple's Interrogatory No. 29, Samsung identified a non-infringing alternative to the '414 patented technology that "would perform data synchronization only when [the accused] applications that allow users to access and edit structured data are not running."  (*Id.* at 161.)  Instead, synchronization could take place "during time intervals when these specific applications are not running."  (*Id.* at 161, 200.)

185.     As explained in Samsung's response to Apple's Interrogatory No. 45, "[o]ne potential implementation of this design would involve operating the Mail, Gmail, Calendar and Contacts applications in 'offline' mode so that automatic synchronization does not take place during operation of the applications, and data is synchronized only when the applications are not running in the foreground."  (*Id.* at 200.)  Put another way, synchronization would continue to occur while ***multitasking.***  Samsung estimates that this change could be implemented within 40 hours.  (*Id.*)

186.     Because the Accused Products already support (i) "background" synchronization in the context of multitasking and (ii) "offline" mode operation of applications, I agree that

---

[13] While Apple has purported to disclose its validity contentions in its interrogatory responses, Apple's rote responses simply quote the claims and cursorily assert that they are not met by the prior art without further analysis.  (*See* Apple's Response to Samsung's Interrogatory No. 26.)  Should Apple provide an expert report that analyzes any purported distinctions between the prior art and the asserted claims and sets forth a basis for Apple's position that the prior art does not anticipate the asserted claims, I reserve the right to respond to the opinions expressed in that report accordingly.

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

implementing this alternative would be technically straightforward and would consist primarily of turning "offline" mode on when the app is presenting a user interface, and turning "background" synchronization on when it is not doing so.  In my opinion, such a modification could be implemented in the code for the accused apps by a team of qualified engineers in 40 hours or less.

187.    As noted in Samsung's interrogatory responses, if this alternative were implemented by running Mail, Gmail, Calendar or Contacts apps in "offline" mode as described by Samsung, synchronization could be performed once the user exits that user interface.  At this point, or at any other point while the user interface of the specific app is not active, ███████

████████████████████████ █████████████ ███████████████████████

█████████████████████.  Synchronization would take place in the background, and the user would be free to continue using the device and interacting with other apps while synchronization takes place.

188.    Dr. Snoeren does not dispute that this alternative would not practice the asserted claims of the '414 patent.   (*See* Snoeren Report ¶¶ 492-493.)  I agree with Dr. Snoeren that this alternative described by Samsung would not practice the asserted claims of the '414 patent.[14]

189.    With respect to this alternative, Dr. Snoeren states only that "such a design change would have a significant and noticeable, negative effect on the functionality provided by the Gmail, Mail, Contacts and Calendar Apps."  (Snoeren Report ¶ 493.)  Dr. Snoeren also states that under this alternative, "the user would only be able to receive new email, calendar and contact data from a remote source by either first turning off their device or closing the

---

[14]   I further note that this design alternative optionally could be combined with any of the other alternatives discussed in this Report to further allow the execution of synchronization operations while using the app.

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

corresponding application and then turning it back on or re-launching the corresponding application. This would be a stark contrast to the present infringing synchronization functionality that occurs automatically in the background without noticeable disruption to the user's concurrent operation of the Gmail, Mail, Calendar and Contacts Applications."  (*Id.*)

190.    I disagree with Dr. Snoeren's characterization of this non-infringing alternative. This alternative simply matches the current operation of the accused apps when a server connection is not immediately available while the application is being used. In such cases,

When synchronization occurs, it takes place in the background and does not disrupt the user's operation of a device. Accordingly, Dr. Snoeren's citation of

Nothing about this design alternative requires the user's operation to be disrupted when synchronization occurs, and it certainly does not require the user interface to freeze and the device to "go black" during synchronization.

191.    Moreover, Dr. Snoeren provides no analysis or opinion that users would recognize a noticeable difference in functionality if the accused apps were synchronized upon exiting the UI rather than instantly. As noted above, even in the current operation of the accused apps,

(*See* supra ¶¶ 58-59.)

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

███████████████████   For instance, a user who merely uses the Contacts or Calendar apps to sync their personally created contacts and appointments between devices has no need for synchronization to be performed instantly.  Because the user is responsible for entering and editing all relevant data, when the user is using a particular device, all changes to the data will be entered locally through that device and no remote changes will be made requiring synchronization with a server.  For the user to then access his or her contacts or appointments on another device, it is sufficient for synchronization to occur after the user has completed operating the app on the first device.

### C.       Alternative 4:  Disabling Editing of Local Database through User Interface

192.     In its response to Apple's Interrogatory No. 29, Samsung identified a non-infringing alternative to the '414 patented technology that would not allow users to edit data stored in a local database through the user interface of the accused app:

> Instead, edits would be recorded in a transaction log. The device would then transmit the transaction log to a server and the server would apply edits from the log to a remote database. The remote database would then synchronize with the local database, resulting in the local database reflecting edits previously applied to the remote database via the transaction log.

(July 15 Responses at 161.)

193.     Dr. Snoeren does not dispute that this alternative would not practice the asserted claims of the '414 patent.   (*See* Snoeren Report ¶¶ 495-497.)   I agree with Dr. Snoeren that this alternative would not practice the asserted claims of the '414 patent.  I further note that this alternative would result in no meaningful change in functionality to the user of any of the accused apps. In particular, synchronization would continue to occur asynchronously upon a local edit or automatically scheduled synchronization request, with no disruption to the user's operation of the app or device.

EXPERT REPORT OF J. CHASE REGARDING NONINFRINGEMENT OF '414 PATENT

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

194.     Dr. Snoeren opines that "Samsung would be unable to expediently, if ever, implement this change." (Snoeren Report ¶ 496.)  I disagree with Dr. Snoeren's conclusion.  Dr. Snoeren expresses no opinion that this alternative would be technically challenging to implement.  It appears that his opinion is based solely on the fact that "the software that would need to be changed to implement this alternative ████████████████████████████ ████████████████████████████████████████████████ (*Id.*)

195.     While Dr. Snoeren did not opine regarding the software itself, my review of the source code indicates that his conclusion is not correct.  ████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ (Westbrook Dep. Tr. 38:11-19.) ████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████ *see.e.g.*, GOOG-NDCAL630-S-00008689, lines 63-65, 987-989).) ███████████████████████████████████████████ ████████████████████████████████ (*See* Westbrook Dep. Tr. at 46:15-19.)

196.     ████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████  █████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████████████

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

████████████████████████████████████████████████████

████████████████████████████████████████

197.     Dr. Snoeren also states that "this alleged alternative has significant technical drawbacks," and "would not be a practical non-infringing alternative" because it would "require additional radio time to synchronize the same amount of data on the device." (*Id.* ¶ 479.) Dr. Snoeren provides no basis for his opinion that the incremental addition in radio time associated with performing synchronization operations in this alternative would render the app impractical as an alternative. In any event, I note that for a user who sends e-mail and edits contacts and calendar data on a remote computer, this alternative would result in no increase in data transfer at all. Moreover, the process of receiving new e-mail, contacts or calendar data would be unchanged from the perspective of a person using a Samsung device that contained this alternative.

**D.     Alternative 8: Blocking UI on Sync.**

198.     In its response to Apple's Interrogatory No. 29, Samsung identified a non-infringing alternative to the '414 patented technology that would "perform data synchronization in any accused applications while blocking the user interfaces of those applications." (July 15 Responses at 176.) While performing synchronization, "the application could cause the user interface to display a dialog or otherwise prevent user access to the application." (*Id.*) Samsung estimates that this change could be implemented within 40 hours. (*Id.* at 201.)

199.     I agree that this design alternative could easily be implemented by modifying each

████████████████████████████████████████████████████████

███████████████████  ████████████  ████████████████████████████

████████████████████████████████. In my opinion, such a modification could be implemented in the code for the accused apps by a team of qualified engineers in 40 hours or less.

EXPERT REPORT OF J. CHASE REGARDING NONINFRINGEMENT OF '414 PATENT

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

200.    Dr. Snoeren does not dispute that this alternative would not practice the asserted claims of the '414 patent.   (*See* Snoeren Report ¶¶ 507-508.)  I agree with Dr. Snoeren that an alternative where the user interface thread of an app does not execute operations while synchronization is taking place would not practice the asserted claims of the '414 patent, because the user interface of the app would not be active while synchronization is performed.  Therefore, any alleged "user-level non-synchronization processing thread" provided by an app that provides a user interface to allow a user to access and edit structured data in a first store associated with a first database would not execute concurrently with a "synchronization processing thread" provided by a synchronization software component configured to synchronize the structured data from that database.

201.    Instead, Dr. Snoeren states only that "such a design change would have a significant and noticeable, negative effect on the functionality provided by the Gmail, Mail, Contacts and Calendar Apps," and therefore that "this proposed design change would not be a practical non-infringing alternative."  (Snoeren Report ¶ 508.)  Dr. Snoeren also states that under this alternative, "[d]epending on the speed of the synchronization operation, the result would vary from a sluggish user interface to being locked out of their email, calendar and contacts for extended periods of time."  (*Id.*)

202.    Dr. Snoeren presents no analysis to support his conclusion it would "not be practical" for Samsung to implement this alternative.  As discussed above in ¶ 62, ordinary synchronization operations often execute very quickly, in less than one second.  Moreover, as Apple has noted in the reports of its damages experts, users already encountered certain amounts of latency when using early versions of the accused apps and were required to wait for periods of time for synchronization operations to complete.  None of Apple's experts, however, has opined

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

that these versions of the accused apps were unsuccessful or were unacceptable to users. ██████

████████████████████████████████████████████████████████

████████████████████████████████████████     (*See* GOOG-NDCAL630-

00063685 at 3.)  Therefore, Dr. Snoeren (along with Dr. Hauser and Dr. Vellturo) has not

provided a basis for his opinion that the incremental wait time associated with this alternative

would render it unacceptable or "not practical" to users.

### E.    Alternative 10:  Performing Sync Operation on UI Thread

203.    In its response to Apple's Interrogatory No. 29, Samsung identified a non-

infringing alternative to the '414 patented technology that would "perform at least one

synchronization activity" on the user interface thread each time it executed.  (July 15 Responses

at 176-77.)  For example, the user interface thread could "itself exchange information directly

with the synchronization server (for example, requesting a timestamp of the last data

modification) upon startup)."  (*Id.* at 201.)  This alternative could be implemented in less than 10

person hours.  (*Id.*)

204.    I agree that this design alternative could be implemented in code very quickly, as

it requires only the addition of a single call to the synchronization server upon creation of the UI

thread.  In my opinion, such a modification could be implemented in the code for the accused

apps by a team of qualified engineers in 10 hours or less.

205.    As discussed above, Apple's corporate witness testified that "[a] thread that was

providing information to a synchronization server would not be a non-synchronization thread."

(Freedman Dep. Tr. at 103:4-15.)  Dr. Snoeren also has adopted this interpretation of a "non-

synchronization processing thread" as well.  (*See, e.g.*, Snoeren Report ¶ 441 ("Further the UI

threads do not perform synchronization operations. . . . Therefore the UI thread for the Gmail,

Email, Calendar and Contacts application is a 'user-level non-synchronization processing

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

thread.'"").)  Therefore, according to Apple's interpretation of the Asserted Claims, an alternative with a user interface thread that "exchange[d] information directly with the synchronization server" would not practice the asserted claims because it would not execute a "non-synchronization processing thread."

206.    Dr. Snoeren does not dispute that this alternative would not practice the asserted claims of the '414 patent.  Instead, Dr. Snoeren opines that "the description in Samsung's Response is incomplete and does not, in my opinion, provide a sufficiently detailed design to consider it to be a non-infringing alternative."  (Snoeren Report ¶ 512.)  However, Dr. Snoeren ignores Samsung's disclosure that this non-infringing alternative could include an exchange of information directly between the user interface thread and the synchronization server—*e.g.*, by "requesting a timestamp of the last data modification" upon startup.  (July 15 Responses at 201.)  In my opinion, this disclosure (which Dr. Snoeren fails to address or mention) sufficiently describes this alternative.

207.    Dr. Snoeren also opines that "such a design change would have significant technical drawbacks" because it would "block during the synchronous exchange of data from the device to the remote server resulting in disruptions to [the] user's ability to operate the user interface that would detract from the device's ease of use."  (*Id.*)  In my opinion, an alternative that only performed a synchronous operation to synchronize data to the remote server upon startup (or when connectivity is first established) would cause only minimal, if any, disruption to the user experience.  To the extent this exchange of data caused a pause, it would do so only upon starting the app, and would not affect subsequent synchronization operations performed while the user interface of the app is active.

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

208.    I also disagree with Dr. Snoeren's opinion that this alternative "would be a significant departure from Android's current, multi-threaded architecture."  (*Id.*) █████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████  (*See* Westbrook Dep. Tr. at 304: 5-10.) ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

ATTORNEYS' EYES ONLY – CONTAINS SOURCE CODE

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

Date: September 13, 2013

_____
Jeffrey S. Chase

### APPENDIX 1 - LIST OF MATERIALS CONSIDERED

In forming my opinion, I have considered all of the materials, documents and things that are described and/or cited in my report itself, in addition to the materials identified below.  Where a reference identified below is cited in my report in an abbreviated form, I provide the short form of that citation below.

| AUTHOR | TITLE | SHORT CITE | BATES NO. |
|---|---|---|---|
| G.J. Freedman | U.S. Patent No. 7,761,414 | "'414 patent" | SAMNDCA630-00930063-SAMNDCA630-00930074 |
| | File History of U.S. Patent No. 7,761,414 | "'414 File History" | APLNDC630-0000049779-APLNDC630-0000050667 |
| | Infringement Claim Charts for U.S. Patent No. 7,761,414 | "Infringement Claim Charts" | |
| | Dec. 21, 2012 Apple Inc.'s Opening Claim Construction Brief | "Apple CC Br." | Dkt. No. 333 |
| | Jan. 25, 2013 Samsung's Responsive Claim Construction Brief | "Samsung CC Br." | Dkt. No. 352 |
| | Feb. 8, 2013 Apple Inc.'s Reply Claim Construction Brief | "Apple Reply CC Br." | Dkt. No. 362 |
| | Feb. 14, 2013 Claim Construction Tutorial Hearing Transcript | "Feb. 14 Hg. Tr." | Dkt. No. 481 |
| | April 10, 2013 Order Construing Disputed Claim Terms of U.S. Patent Nos. 5,579,239; 5,666,414; 5,946,647; 7,577,757; 7,756,087; 7,761,414; 8,014,760 | "Claim Construction Order" | Dkt. No. 447 |
| | Non-Confidential Opening Brief of Appellant Apple Inc. | | *Apple Inc. v. Samsung Electronics et al.*, (Fed Cir. 2012) (No. 2012-1105) |
| | May 16, 2013 Apple's Second Supplemental Objections and Responses to | | |

| Samsung's First Set of Interrogatories | | |
| --- | --- | --- |
| Apple's Responses and Supplemental Responses to Samsung's Interrogatories Nos. 1, 5, 6-8, 14, 15, 19, 25-27, 39, 41, 42 | "July 15 Responses" | |
| Samsung's Responses and Supplemental Responses to Apple's Interrogatory No. 47 | | |
| Apple's Responses and Supplemental Responses to Samsung's Second and Fourth Sets of Requests for Admission | | |
| July 24, 2013 Joint Stipulation Regarding Authenticity of Source Code | "Source Code Stip." | Dkt. No. 705 |
| Expert Report of Dr. Alex C. Snoeren Concerning U.S. Patent Nos. 6,847,959 and 7,761,414 and materials and source code cited therein | "Snoeren Report" | |
| Expert Report of John R. Hauser and materials cited therein | "Hauser Report" | |
| Opening Expert Report of Christopher A. Vellturo, Ph.D and materials cited therein | "Vellturo Report" | |
| Expert Report of Jeffrey Chase, Ph.D Regarding the Invalidity of the | "Opening Report" | |

| | Asserted Claims of U.. patent No. 7,761,414 and materials and source code cited therein | | |
|---|---|---|---|
| | Deposition Testimony of Miguel de Icaza, Gordon Freedman, Gary Hall, Scott Herz, Jeffrey Stedfast, Dan Winship, Chris Wysocki, | "__ Dep. Tr." | |
| J. Hawkins et al. | U.S. Patent No. 6,000,000 | "Hawkins" | SAMNDCA630-07881704-SAMNDCA630-07881723 |
| D. Hill et al. | "Microsoft Smart Client Architecture and Design Guide" | "Hill" | SAMNDCA630-00949126-SAMNDCA630-00949337 |
| G. Rashid et al. | U.S. Patent App. No. 2005/0139235 A1 | "Rashid" | SAMNDCA630-07882345-SAMNDCA630-07882361 |
| V. Vadlamani et al. | U.S. Patent No. 7,506,006 | "Vadlamani" | SAMNDCA630-07882244-SAMNDCA630-07882283 |
| | Exchange ActiveSync and Exchange 2003 | | SAMNDCA630-00948288-SAMNDCA630-00948293 |
| | "What are the iTunes library files?" | | SAMNDCA630-06436874 |
| | Novell Evolution 2.4 User Guide | | SAMNDCA630-0094438-SAMNDCA630-0094555 |
| | Apple's 2004 WWDC Presentations on Sync Services | | APLNDC630-0000441117; APLNDC630-0000441001 |
| Microsoft Exchange Mobility Group | "Microsoft Exchange Server 2003: Microsoft Exchange Server ActiveSync Protocol 2.5 Reference" (June 1, 2005) | "ActiveSync Protocol" | MSFT-00630-000218-MSFT-00630-000442 |
| | Samsung source code | | Code made available for inspection by Samsung; SAMNDCA-SC00075502-75695 |

EXPERT REPORT OF J. CHASE REGARDING NONINFRINGEMENT OF '414 PATENT

| | SAMNDCA-SC00075183-75497 |
|---|---|
| Google source code | Code made available for inspection by Google; GOOG-NDCAL630-S-00002010-8688 |
| Exhibits and Video Exhibits to this Report | |

# EXHIBIT 58

# Redacted Version of Document Sought To Be Sealed

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

2

**Before the Honorable Lucy H. Koh**
**Federal District Court Judge**

3

4

5    APPLE, INC, a California corporation,
     Plaintiff

6    vs.

7    SAMSUNG ELECTRONICS CO., LTD., a
     Korean corporation; SAMSUNG                    CASE NO. 12-CV-00630-LHK
8    ELECTRONICS AMERICA, INC., a New
     York corporation; SAMSUNG
9    TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited liability company,
10   Defendants.

11

12        **REBUTTAL EXPERT REPORT OF SAUL GREENBERG, PH.D.,**
          **REGARDING NONINFRINGEMENT OF THE ASSERTED CLAIM 8 OF**
13                    **U.S. PATENT NO. 8,046,721**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REBUTTAL EXPERT REPORT OF S. GREENBERG RE: NONINFRINGEMENT OF US PATENT NO. 8,046,721
HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

**D.      The Samsung Non-Infringing Alternatives Would Not Take Significant Development Time to Implement**

481.    As noted above, Samsung has already implemented the Glass, Circle, and Ripple non-infringing designs, and Google has already implemented the Jelly Bean non-infringing design. Still others could be implemented by simply eliminating certain functionality, such as removing the continuously moving unlock image.  I was asked to consider how long it would take to implement each of the proposed non-infringing alternatives.  I have personally written touch-based interfaces, and my course curriculum at both the undergraduate and graduate level includes touch-based interface design, including touch-based interfaces for tablets and/or smart phones.  I am also familiar with the facilities for developing touch-based interfaces, such as APIs and programming environments.

482.    In my opinion, each of the identified non-infringing alternatives could be designed, tested and implemented in no more than 7 weeks, and many of them would take less time than that.  In one of my undergraduate courses, the first assignment given to students was to design and implement a proof of concept smartphone unlock interface, where the students were required to design workarounds to the European counterpart to the '849 patent (EP 2964022) patent claims. All students were able to do this assignment successfully within a very limited time frame.  While the complexity of student solutions varied (with some more complex and others less complex than the Samsung solutions I identified in this report), I estimate that most students were able to produce a proof of concept in between 20 and 40 hours of programming time.

483.    ███████████████████████████████████████
███████████████████████████████████████████
███  ██████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

REBUTTAL EXPERT REPORT OF S. GREENBERG RE: NONINFRINGEMENT OF US PATENT NO. 8,046,721
HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

1 ████████████████████████████████████████████████████████████████████

2 ██████████████████████████

3   484.   A software engineer simply developing a proof of concept or prototype could

program the Circle Unlock in less time than ██████████████. For example, transitioning

from the Glass Unlock mechanism to the Circle Unlock simply changes the graphical appearance

from moving the entire view to displaying a circle, arrows, and animated padlock.  Progressively

playing frames of an image in response to a dragging motion is a trivial implementation.

Similarly, the Ripple Unlock mechanism is █████████████████████████████████

████████████████████████████ ██ ███████████████████████████████████████

██████ ████ ██████ ███████████████████████████████████████████████████████

███████████████████████████████████████ A much

simpler visual effect—for example, applying an "inverse" visual transformation every X pixels

traveled, would take much less time.

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

02198.51981/5518224.2

Case No. 12-CV-00630-LHK

REBUTTAL EXPERT REPORT OF S. GREENBERG RE: NONINFRINGEMENT OF US PATENT NO. 8,046,721
HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

1

2

3

4

5

6

7

8  Date: September 13, 2013

9

10

11

12        Saul Greenberg

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REBUTTAL EXPERT REPORT OF S. GREENBERG RE: NONINFRINGEMENT OF US PATENT NO. 8,046,721
HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

## <u>APPENDIX 1 - LIST OF MATERIALS CONSIDERED</u>

In forming my opinion, I have considered all of the materials, documents and things that are described and/or cited in my report itself, as well in all charts and exhibits thereto, as well as the entirety of my opening report and documents cited therein, in addition to the materials identified below.  Where a reference identified below is cited in my report in an abbreviated form, I provide the short form of that citation below.

| AUTHOR | TITLE | SHORT CITE | BATES NO./FULL PATH |
|---|---|---|---|
| Ahn, Alice | Certified translation of S-ITC-001015073 | | |
| Ahn, Alice | Certified translation of S-ITC-001743000 | | |
| Ahn, Alice | Certified translation of S-ITC-006218603 | | |
| Alwaraki, M. | Image of iOS 7 Beta 1 Lock Screen | | Public (Retrieved from: http://3.bp.blogspot.com/-93kLbOtoF1w/Ubc2mXfooqI/AAAAAAAADoc/TOdkJq2tE9Y/s640/LockScreen+iOS7.png) |
| Apple, Inc. | 5/13/2013 Apple's Supplemental Response to Samsung's 3rd Set of Interrogatories (No 26) | | |
| Apple, Inc. | 7/15/13 Apple's Supplemental Responses to Samsung's 1st, 2nd, 3rd, 4th, 6th, and 8th set of Interrogatories | | |
| Business Insider | 7 Ways Apple Copied Android in iOS 7 | | SAMNDCA630-07870112 |
| Cult of Mac | iOS 7 Will Let You Slide Anywhere to Unlock Your Screen | | SAMNDCA630-07870159 |
| DeLuca, A. | Touch me once and I know it's you!  Implicit Authentication based on Touch Screen Patterns | | SAMNDCA630-07887383 Retrieved from: http://www.medien.ifi.lmu.de/pubdb/publications/pub/deluca2012chi/deluca2012chi.pdf |
| Digital Trends | iOS 7 vs. Android:  How Apple's new os stacks up against Google's | | SAMNDCA630-07870151 |

| | | | |
|---|---|---|---|
| Fhios | Competitor Review Touch screen mobile phones October 2009 | | SAMNDCA10994757 |
| Gee, H. | Certified translation of S-ITC-010679472 | | |
| Gizmodo | Animated gif of iOS 7 slide to unlock | | SAMNDCA630-0787184-190 |
| Gizmodo | One of the Most Underrated Features of iOS 7 | | SAMNDCA630-07870178 |
| ██████ | ███████████ | | ████████████████████ ██████████ |
| ██████ | ██████████████ | | █████████████████████ █████████████████ |
| ██████ | ████████████ | | ███████████████████████ |
| ██████ | ████████████ | | ████████████████████ ████████ |
| Gottabemobile | Image of iOS 7 Beta 4 Lock Screen | | Public (Retrieved from: http://cdn.gottabemobile.com/wp-content/uploads/2013/07/iOS-7-beta-4-new-lockscreen-323x575.png) |
| Hauser, J. | August 11, 2013 Expert Report of John R. Hauser | Hauser Report | |
| iDeviceMovies | iOS 7 - Lockscreen On iPhone 5 | | SAMNDCA630-07887393 (native) Retrieved from: http://www.youtube.com/watch?v=omv1sNaBPGw |
| Idownloadblog | iOS 7 Lock Screen Video | | SAMNDCA630-07870182 and 183 |
| Idownloadblog | iOS 7: the Lock screen | | SAMNDCA630-07870168 |
| Lee, S | Deposition Transcript of Sung Sik Lee | Sung Sik Lee Dep. Tr. | |
| Lee, S. | Exhibit 3 to the Deposition of Sung Sik Lee | Sung Sik Lee Dep. Ex. 3 | |
| Lee, S. | Translation of Exhibit 3 to the Deposition of Sung Sik Lee | | |
| Maximum PC | 6 Features iOS7 Took from Android and Other Operating Systems | | SAMNDCA630-07870103 |
| Moon, J. | Certified translation of S-ITC-010477381 | | |

| Neonode AB | Neonode Presentation | | NEOMAGNDCA630-00001510-1583 |
|---|---|---|---|
| Peterson, R. | Deposition Transcript of Roderick Peterson | Peterson Dep. Tr. | |
| Plaisant, C. | "Touchscreen Toggle Switches: Push or Slide? Design Issues and Usability Study." | | PLAISANTNDCA630-00000024-34 |
| Samsung | [Kessler] Unlock Scenario UI 1/25/2010 [Korean] | | S-ITC-007768891 |
| Samsung | 2012 New Sales & Marketing Plan | | SAMNDCA630-06034311 |
| Samsung | 7/15/13 3rd Supplemental Response to Apple's 6th set of Interrogatories (No. 41) | | |
| Samsung | 8/21/11 email [Korean] | | SAMNDCA11017648 |
| Samsung | Admire User Manual | | APLNDC630-0000159335 |
| Samsung | Amethyst, iPhone Usability Test Result 3/24/2010 | | SAMNDCA20003761 |
| Samsung | Atlas 6/2/2010 [Korean] | | S-ITC-010671049 |
| Samsung | Behold3 5/10/2010 [Korean] | | S-ITC-001015073 |
| Samsung | Behold3 5/10/2010 [Korean] | | SAMNDCA00508318 |
| ██████ | ████████ | | ██████████████ |
| | | | ████████████████ |
| | | | ████████████████ |
| | | | ██████ |
| ██████ | ████████ | | ██████████████ |
| | | | ██████████████████ |
| | | | ██████████████████ |
| | | | ████████ |
| ██████ | ████████ | | ██████ |
| | | | ██████████████ |
| | | | ████████████████ |
| | | | ██████████████ |
| ██████ | ████████ | | ██████████████████ |
| | █████ | | ██████████████████ |
| | | | ████████████ |
| | | | ██████████ |
| ██████ | ████████ | | ████████████████ |
| | | | ████████████████ |
| | | | ████████████████ |
| | | | ██████████ |

| | | |
|---|---|---|
| Samsung | GA3 Armani 11/10/2010 [Korean] | S-ITC-010531291 |
| ███████ | ███████████ | ███████████████████████ ████████████████████████████ ███████████████ |
| ███████ | ███████████████ █████████████ | ███████████████████████ ███████████████████████ ████████████████████████████ |
| Samsung | I9000 (Galaxy S) 6/17/2010 [Korean] | SAMNDCA630-04416663 |
| Samsung | I9000 (Galaxy S) 8/5/2010 [Korean] | SAMNDCA630-04502419 |
| ███████ | ███████████ | █████████████ ██████████████████████████ ██████████████████████████ █████████████████ |
| ███████ | ███████████ | ████████████████████████ ███████████████ ███████████████████████████ █████████████████████ |
| ███████ | ████████████████ | ██████████████████████████ ███████████████ ███████████████████████████ ████████████████████ |
| ███████ | ████████████████████ | ██████████████████████ ████████████████████████ |
| ███████ | ████████████████████ | ██████████████████████ ██████████████████████████ |
| Samsung | iPad vs Honeycomb P5 UX 2/11/2011 [Korean] | S-ITC-010679472 |
| Samsung | Kepler 5/3/2010 [Korean] | S-ITC-010477381 |
| ███████ | ███████████ | ████████████████████████ ████████████████████████ ████████████████ |
| Samsung | P1 8/3/2010 [Korean] | SAMNDCA10990627 |
| Samsung | P1 vs. iPad App. 4/20/2010 [Korean] | SAMNDCA00203727 |
| ███████ | ███████████ | ████████████ ██████████████████████ ██████████████████████████ |
| ███████ | ███████████████ | █████████████████████████ ██████████████████████ |

| | | |
|---|---|---|
| ███ | ████ | ████ |
| ███ | ████ | ████ |
| ███ | ████ | ████ |
| ███ | ████ | ████ |
| Samsung | S1, Motoroi, iPhone 3/11/2010 [Korean] | S-ITC-001743000 |
| Samsung | Samsung Admire Manual | APLNDC630-0000159335 |
| ███ | ████ | ████ |
| ███ | ████ | ████ |
| ███ | ████ | ████ |
| ███ | ████ | ████ |
| ███ | ████ | ████ |
| ███ | ████ | ████ |
| Samsung | STA GS3 Marketing Plan | SAMNDCA630-06519666 |
| Samsung | TMo Android Workshop | SAMNDCA630-04285656 |
| Samsung | Unknown Spreadsheet [Korean] | S-ITC-006218603 |
| Samsung | Unknown Spreadsheet [Korean] | S-ITC-01623973 |
| Samsung | Unknown survey comments | S-ITC-010604225 |
| Samsung | Verizon Wireless Weekly Report 4/17/2010 | S-ITC-003860399 |

| | | |
|---|---|---|
| Samsung | Victory 5/31/2010 [Korean] | S-ITC-500042803 |
| Schroepfer, P. | Certified translation of SAMNDCA00508318 | |
| Sim, J. | Certified translation of S-ITC-010671049 | |
| Son, David | Certified translation of S-ITC-007768891 | |
| Son, David | Certified translation of S-ITC-500042803 | |
| Sprint | Channel Weekly Marketing Update | S-ITC-003856763 |
| STA Market Sensing | Final Report i920 Usability Test 9/25/2009 | S-ITC-009302888 |
| STA Market Sensing | Final Report i920 Usability Tests 9/25/2009 | SAMNDCA10029586 |
| STA Market Sensing | I920 Usability Test 6/25/09 | SAMNDCA00231459 |
| Suh, K. | Certified translation of S-ITC-010531291 | |
| System Concepts, Ltd. | Samsung Galaxy S II Focus groups with professionals and non-professionals 4/26/2011 | S-ITC-010625175 |
| UBIC NA | Certified partial translation of SAMNDCA630-04502419 | |
| UBIC, NA | Certified partial translation of SAMNDCA00203727 | |
| UBIC, NA | Certified partial translation of SAMNDCA10990627 | |
| UBIC, NA | Certified partial translation of SAMNDCA630-04416663 | |
| UBIC, NA | Certified translation of SAMNDCA11017648 | |
| Unknown | Apple Support Communities Posting | SAMNDCA630-07884748-51 |
| User Centric, Inc. | Samsung 'Unlock' User Experience Research | SAMNDCA11011980 |

| | Study – Users Topline Report Dec. 2, 2011 | | |
|---|---|---|---|
| Vaughan-Nichols, S. | Apple iOS 7: Android copycat? | | SAMNDCA630-07870139 |
| Vellturo, C. | Opening Report of Christopher A. Vellturo | Vellturo Report | |
| XD | Galaxy S II User Experience Review | | S-ITC-600103586 |

# EXHIBIT 59

# Redacted Version of Document Sought To Be Sealed

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

      Plaintiff,

    vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

      Defendants.

CASE NO. 12-cv-00630-LHK

**REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT NO. 5,946,647**

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

## III.    BASES FOR OPINIONS

### A.    Qualifications

10.    A copy of my curriculum vitae (CV), which contains information pertaining to my education, experience, scholarship, awards, and professional activities is attached as Exhibit 13 to my Opening Report and summarized below.

11.    I have a Ph.D. in computer science from the University of Washington, a M.Sc. degree in computer science from the University of Toronto, and a B.S. degree with Highest Distinction in mathematics from the University of Illinois at Urbana-Champaign.

12.    I have been involved in the research and development of computing systems for over 30 years. I have been a faculty member at the University of North Carolina since 1989 where I perform research and I teach in the areas of operating systems, distributed systems, real-time and embedded systems, computer networking, multimedia computing and networking, and network management, among others. I consider myself an expert in these areas as well as others.

13.    I have authored or co-authored over 100 articles in peer-reviewed journals, conference proceedings, texts, and monographs in the aforementioned areas of computer science and others. I am currently an Associate Editor for the journal Real-Time Systems and have previously served as the Editor-in-Chief for the journal Multimedia Systems. In addition, I have edited and co-edited numerous published proceedings of technical conferences and have edited a book of readings in multimedia computing and networking (with Hong-Jiang Zhang) published by Morgan Kaufman. I am a co-author (with Long Le and F. Donelson Smith) of a monograph related to computer network protocols, and a co-author (with Jay Aikat and F. Donelson Smith) of a second monograph related to experimental computer networking. A complete listing of all my publications can be found in Appendix 2 to my Invalidity Report.

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

14.     I have served on numerous proposal review panels for the National Science Foundation and other international funding agencies in the aforementioned areas of computer science. I have served as a program chair or member of the technical program committee for over 100 professional, international, and technical conferences, workshops, and symposia.

15.     I have worked for, and had research collaborations with, companies such as Cisco Systems, CloudShield, VMware, Lucent, AT&T, Cabletron/Aprisma, IBM, Dell, Sun, Intel, DEC, and Hewlett Packard, among others.

16.     I am a named inventor on two U.S. Patents and have an application for a third patent pending. These patents are generally related to computer networking and the delivery of services over networks.

17.     In my research and teaching I have considered problems of the design and implementation of distributed computer systems and services including computer networks, operating systems, and network communication protocols. For example, in the early 1990s I led a team to develop a distributed platform for collaborative work. Part of this work involved the construction of distributed shared workspaces and desktop videoconferencing systems using digital audio and video as well as a storage system for storing and browsing distributed hypertext and hypermedia documents. A common theme in these systems involved automating processes and user activities spanning local and remote computers including finding structures in artifacts in the storage system and enabling users to perform actions on those structures. Much of this work was performed jointly with industry. For example, my research group collaborated with, and at times was funded by, companies such as Intel, IBM, DEC (now HP), Cabletron (now Enterasys), and AT&T Bell Laboratories (now Alcatel-Lucent).

18.     I have served as an expert witness and technical consultant in litigation matters concerning distributed systems, operating systems, multimedia networking, computer networks, cellular and wireline telephony, embedded systems and embedded software, real-time systems, among others. This work has been performed on behalf of entities such as HTC Corp., Pioneer

4

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

Electronics, Alpine Electronics, Verizon, Lucent, Motorola, AT&T, Nortel Networks, Cisco Systems, Google, Yahoo!, Microsoft, Green Hills Software, Akamai Technologies, Dell, and Cox Communications, among others. I have testified in several trials, arbitrations, and claim construction hearings as an expert witness. A complete listing of my testimony either by deposition or at trial within the last four years can be found in Appendix 2 to my Invalidity Report.

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

## XII.   <u>NON-INFRINGING ALTERNATIVES</u>

484.    In paragraphs 269-288, Dr. Mowry addresses one set of noninfringing alternatives to the functionality claimed in the '647 patent.  Below, I address each of these non-infringing alternatives in turn.

485.    As noted above, Samsung has implemented certain of the non-infringing designs described, and others could be implemented by simply eliminating certain functionality (as discussed below). I have considered how long it would take to implement each of the proposed non-infringing alternatives, and set forth my opinions below.  I understand that in response to particular interrogatories, Samsung has estimated the time that would be required to implement certain non-infringing alternatives. *See* Samsung's Further Supplemental Responses to Apple's First, Third and Tenth Sets of Interrogatories. In my opinion, Samsung's estimates are generally conservative, and could potentially be implemented quicker.

486.    I have personally been involved in the process of designing and implementing modifications to Android systems for the purposes of implementing a design that avoids the alleged scope of the patent. Those modifications involved changes to both hardware and software involved in providing services used by many applications typically found on an Android phone. Because that project involved modifications to hardware, it was a significantly more complex project than I estimate a software-only design around of the '647 patent would be. The design around effort I participated in involved interacting with hardware and software developers at different companies and the redesign of dozens of functions. Despite the size and complexity of this project, the work was completed in approximately four months. In contrast, based on my experience with Android software, as well as software development practices commonly

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

employed in industry, as well as knowledge of software development processes at companies such as Google, as well as the small scale of the modifications required to avoid the alleged scope of the '647 patent, it is my opinion that, conservatively speaking, the implementation of several of the non-infringing alternatives listed below could be completed by a single Android (software) developer in a matter of a few weeks, if not a few days.

487.    I note that Judge Posner in a Summary Judgment ruling in the Apple v. Motorola case concerning the alleged infringement of the '647 patent by Motorola phones, expressed the opinion that developing a non-infringing alternative to the '647 patent "would just require reprogramming Motorola's smartphones to avoid at least one claim limitation" and that "Motorola could design around [the '647 patent] simply by creating copies of the code that performs structure detection and linking for each particular program rather than by using a common-code module for all programs; for without a common code there is no 'analyzer server'" (see, Summary Judgment, pp. 23-24). Judge Posner further stated that Apple could not exclude Motorola's products from the market with an injunction "because of the ease of inventing around these [patents, including the '647 patent]" (*Id.*) Thus, having studied the '647 patent, Judge Posner was able to divine that non-infringing alternatives to the '647 patent (1) clearly existed, and (2) were likely easily obtained. I agree with Judge Posner on both counts.[38]

### A.    Summary of Non-Infringing Alternatives Based on Available Art

488.    I note at the outset that Dr. Mowry has not addressed the wide variety of noninfringing alternatives available in the art, both at the time of the patent and now, to provide the detection and linking functions that a user allegedly experiences on the devices.  The '647 patent does not cover all detection and linking—only one particular way of accomplishing detecting and linking that requires an "analyzer server" that links structures to actions via a particular form of "linking," as well as a specific kind of "user interface" and an "action processor"

---

[38]    I may demonstrate at trial using demonstratives (including demonstratives implementing the alternatives described herein) that my estimates and opinions herein are correct.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

for performing actions.  Systems that lack any of these individual architectural features are not covered by the '647 patent and therefore necessarily are noninfringing alternatives.

489.    For instance, I note that the notion of using an analyzer server as claimed in the '647 patent was a specific approach whereas other non-claimed approaches could similarly realize the objectives of the '647 patent.  For instance, although Apple apparently once employed a server to detect structures in documents as part of the inventors work, they soon realized that the server was the cause of significant performance degradation. These problems were significant enough that Apple spent considerable time and effort developing a new means of detecting structures that did not involve the use of an analyzer server. I have seen no evidence that there ever was any quantifiable benefit to either the user or Apple from the use of a server to detect structures in documents. In fact, there is evidence in this case that the use of a server to detect structures caused problems and no evidence that the use of a server to detect structures provides benefit (over, for example, using routines in the application itself to detect structures).

490.    Today, there is similarly no reason to employ a server to realize the objectives of the '647 patent.  And to the extent that the use of a server ever provided a quantifiable benefit from the ability to have a single executable entity provide detection services for all applications in a system, the vast amount of computational and storage resources available on modern computing platforms today (including smart phones) compared with systems of 1994 make any such economy inconsequential. Additionally, modern coding techniques emphasize the reusability of code without employing any actual sharing of code at compile or run time.  In other words, coders can easily incorporate code that performs detection and linking into their applications by patterning their code after pre-existing work or simply reusing existing code and writing it into their application with minimal work.  In other words, a programmer can easily incorporate code that performs detection and linking into their applications by patterning their code after pre-existing work or simply by reusing existing code and manually integrating it into their application.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

Neither of these approaches would require a significant effort because neither requires writing code to perform detecting and linking functions from scratch.

491.    Accordingly, source code for the detection and linking functionality that the "analyzer server" provides can be written, instead, as a shared library that is incorporated into the application at compile time or run time—as it is in the Accused Devices.    The inventors understood this was a superior alternative soon after the time of their alleged invention, as I detailed in Section VII.A of my Opening Report.   The inventors further understood that the use of a shared library was a completely different approach from the use of their analyzer server. For example, in a November 26, 1996 email, inventor Bonura confessed that "all" of his thinking concerning the embodiment of the '647 patent in Livedoc involved a client/server mechanism.   In response, inventor Wright proposed a different mechanism, namely, that of a shared library implementation.    MILLER00000064    /    APLNDC630-0000133392;    MILLER00000065    / APLNDC630-0000133393.

492.    Or, alternatively, the source code for the accused applications can simply be rewritten to incorporate into the application the accused "detection" and "linking" functionality without even employing a shared library.  I note that Judge Posner explicitly found the "ease of designing around the patent claims at issue" (including claim 1, from which all claims in this case depend), based on his construction in that case and this example.  *Apple v. Motorola*, Case: 1:11-cv-08540, Dkt. # 1038 (06/22/12) at 24.  Judge Posner specifically found that:

> Given my claim construction of the '647 patent, Motorola could design around simply by creating copies of the code that performs structure detection and linking for each particular program rather than by using a common-code module for all programs; for without a common code there is no 'analyzer server,' as required by the patent claim.

*Id*.  Under Judge Posner's construction of "analyzer server," the claimed server must comprise server routine separate from the client. Dr. Mowry has stated that because routines to allegedly detect structures and link actions to structures are found in a shared library, they are somehow

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

"separate" from the Browser and Messenger applications. While I strongly disagree with this analysis, if the existence of the shared library is the basis for Dr. Mowry's finding of "separateness," then a non-infringing alternative under Judge Posner's constructions would be to simply eliminate the Browser and Messenger's use of the shared library and put the accused code into each application at compile time. As explained above, generally putting a function from a shared library into a application is a trivial matter. There is no reason to expect that removing Brower's or Messenger's reliance on the accused shared library would be a significant effort.

493.    Generally, moving code from a shared library into an application is a trivial matter. Shared library code is integrated into a calling application at load or runtime and becomes part of the application.  Making shared library code part of the application at compile time is essentially performing the functions performed at runtime at compile time. Based on my review of the source code at issue for Messenger and Browser I believe it would be a very simple task to remove the accused code currently found in a shared library and integrate this code into Browser and Messenger. Moreover, this integration could be done such that the source code of the accused functions currently in the shared library could reside in one place in the Android source code distribution and be shared by all application developers. Thus, from the standpoint of software development practices, all of the benefits of having shared library could be maintained while ensuring that each application nonetheless used its own executable copy of the accused routines. In both of these examples, the user would experience absolutely no difference in the functionality provided.[39]

494.    ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

[39] ■■■■■■■■■■■■■■■■■■■■■■■■■■■

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████

12     495.    As to individual noninfringing design arounds, I respond to Dr. Mowry's comments

13 as follows:

14 **B.**    <u>**Non-Infringing Alternative: Analyze Text and Provide a Context Menu for**</u>

15     <u>**Any Text String Selected by the User**</u>

16     496.    In paragraphs 269-271, Dr. Mowry addresses a noninfringing alternative that I

17 understand has been expressed by Samsung as follows:

> One non-infringing alternative to the '647 patent technology is to
> only analyze text and provide a context menu when the text string
> was first selected by the user. As one implementation, such a non-
> infringing alternative can detect an area around a user's contact with
> the screen to determine the information the user has found of
> interest. Upon detecting the area around a contact with the screen, if
> that area contains information of a certain type—such as a phone
> number or e-mail address—the application can then provide a
> context menu based upon the determination of what information the
> user has found of interest matching that type.

Supplemental Responses to Apple's Interrogatory No. 29 at 154.

    497.    ████████████████████████████████████

████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1 ███████████████████████████████████████████████████

2 ██████████████████████████████.

3    498.   In paragraph 270, Dr. Mowry disagrees that the specifically described

4 implementation—wherein the system determines what text string the user has found of interest—

5 is not an example of analyzing text and providing a context menu only when the user first selects

6 the text. ████████████████████████████████████████

7 ██████████████████████. This is contrary to the '647 patent that requires a user

8 interface to enable the selection of a detected structure. Dr. Mowry simply did not set forth the

9 proper analysis as he has failed to recognize that no structure is detected at or prior to the users

10 selection.

11    499.   ████████████████████████████████████

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████████████████████████████████

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**
EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ██████████████████████

11     500.    It is my opinion that this is a non-infringing alternative to the asserted claims of the

12 '647 patent, because such an alternative at least fails to disclose the "analyzer server" and "user

13 interface" elements.  Such an alternative would lack an analyzer server because the user performs

14 the detection function (thus requiring the user to perform the "cognitively disruptive" function of

15 identifying structures of interest that the '647 patent sought to eliminate). For example, if for

16 whatever reason the user was unable to visually identify a structure such as phone number on a

17 web page, the system would provide no guidance as to if or where phone numbers were located in

18 the document (because the system would not have performed any detection processing).  The '647

19 patent specifically states that "visually searching data files or documents to find these structures is

20 laborious and cognitively disruptive, especially if the document is lengthy and hard to follow.

21 Furthermore, missing a structure such as a date may lead to missing an important meeting or

22 missing a deadline."  '647 patent, Col. 1:19-23.  ████████████████████████████████

23 ████████████████████████████████████████████████████

24 ██████████████████████████████████████

25     501.    The stated alternative would further lack the user interface element because the user

26 selection of text of interest to the user takes place *before* any structure has been detected by the

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

system and before linking has occurred.  Indeed, at the point in time when a user selects something of interest on the screen, the system has no knowledge that any structures of interest are being presented to the user because no detection has taken place. At the point in time that the user points to something on the display the system does not know if the user is pointing to random text or to an instance of some structure.  Therefore, I disagree with Dr. Mowry's conclusion that this does not represent a noninfringing alternative.

502.  ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████  This estimate is consistent with my review of the relevant code and my professional experience, as well as my previous work changing the design of Android software that involved changes that were similar (if not greater) in scope that the changes discussed, my experience working with industry professionals drafting and modifying code, my experience in the academic context, my experience with the software development practices commonly employed in industry, as well as my knowledge of software development processes at companies such as Google.

503.  In paragraph 271, Dr. Mowry discusses "the use of user 'gestures over text in combination with this alternative in order to recognize the text as being of a certain type and perform a task.'"  I note that using gestures in combination with this alternative differs from the Perspective system in that no detection would have taken place prior to the user selection of the structure.  Furthermore, in this noninfringing alternative, *all* structures could be acted on by a gesture, unlike the Perspective system, where only particular structures are responsive to gestures. I further note that these differences are important, as it means that the alternative does not have an analyzer server "for detecting structures" or for "linking actions," nor does it have the claimed user interface.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

C.     **Non-Infringing Alternative:  Provide a Single Action for a User to Perform**

504.    In paragraphs 272 to 274, Dr. Mowry addresses a noninfringing alternative that I understand was expressed as follows:

> Another non-infringing alternative to the '647 patent technology is to restrict the actions a user can perform after tapping on a text, in accord with Apple's theories (disputed) regarding the necessity of multiple actions being linked to each structure. For instance, upon selecting a phone number in the Messenger application, the user could be presented with only one action, such as "Add to Address Book." Similarly, in the Browser application, the user could select an e-mail and only be presented with "Add to Address Book." According to Apple, such an alternative lacks at least the following elements of the patented technology: "an analyzer server for detecting structures in the data, and for linking actions to the detected structures." Additionally, according to Apple's arguments regarding the Perspective/EO Communicator prior art, a user could perform gestures over a structure in combination with this alternative in order to perform a task, for instance drawing a "d" over a phone number to dial it, an "e" to compose an e-mail to an e-mail address.

Supplemental Responses to Apple's Interrogatory No. 29 at 154-155.  It is my opinion that this can be a non-infringing alternative to the asserted claims of the '647 patent, particularly if Apple and Dr. Mowry are correct that systems that only link a single action do not infringe the '647 patent.  If Apple and Dr. Mowry are correct, such a system fails to disclose at least the "analyzer server" limitation.

505.    I note, however, the District Court of Chicago previously disagreed with Apple and Dr. Mowry that multiple actions must be linked.  Dr. Mowry acknowledges as much in paragraph 273.  I further note that Dr. Mowry and Apple acknowledge throughout the allegations in this matter than versions of Browser and Messenger that ship with the accused devices do not infringe under this interpretations.  *See* Mowry footnotes 10 and 11.

506.    In paragraph 274, Dr. Mowry opines about what he considers would "frustrate users" and "limit the functionality available to the users" of the accused devices.  Dr. Mowry appears to have no basis for this opinion, and I am aware of none.  I note that it is well known to

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

people of ordinary skill in the art that the number of options presented to a user should be balanced with the complexity a given system presents.  I am aware of no research that definitively says that presenting only one action to a user would not be preferable from an "ease of use" standpoint, or that users would not in fact find this preferable.  It is a well-known principle that at least some users are satisfied with limited choices if it makes operation of a device simpler (*e.g.*, optimizing for the most common or dominant use case).  I also note that the short tap, as extensively detailed in those sections of Dr. Vellturo's report discussed above, only allows a user to perform one task.

507.    I further note that in paragraph 274, Dr. Mowry states that limiting the actions presented to the user to one action would "essentially return[] the device to the prior art."  Dr. Mowry implicitly acknowledges here that in his view the only difference between the prior art and the '647 system is adding an additional action that can be performed on a detected structure.  No other change is described by this alternative.  In my opinion, as expressed throughout my Opening Report, a person of ordinary skill in the art would have considered adding an additional option a trivial design variation and one that was obvious to try and simple and predictable to implement. In short, Dr. Mowry essentially acknowledges that the '647 patent would have been obvious.

508.    I note that, in accord with Dr. Mowry's own analysis, this alternative has been implemented on certain devices, and accordingly there would be no time to implement it out of the general time for compiling/testing, etc., discussed above.

**D.    Non-Infringing Alternative:  Allow Users to Link Actions to Structures**

509.    In paragraphs 275-277, Dr. Mowry addresses a non-infringing alternative that I understand can be expressed as follows:

> Another non-infringing alternative to the '647 patent technology is to allow the user to link actions to a structure.  For instance, according to Apple's arguments regarding the Perspective/EO Communicator prior art, using a glyph-drawing model (e.g. draw a "d" to dial), a user would link actions to a structure *after* a structure is detected in the document and the gesture is made.  According to Apple's

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE
EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

arguments, in such a system there are never multiple actions linked simultaneously to a structure.

Supplemental Responses to Apple's Interrogatory No. 29 at 155.

510.    I understand that this alternative is based on Apple's theories regarding why the '647 patent is valid over the Perspective prior art, and particularly based on the fact that Apple mistakenly believes and argues that a user must link actions to a structure in order for the various Perspective gestures to work.  In paragraph 276 of his report, Dr. Mowry states his position that, in the context of the Perspective prior art, gestures performed on a structure by a user do not constitute "actions," but are "merely gestures that a user must perform on Perspective's screen using a specially designed pen."  According to Dr. Mowry, then, no actions are linked to a structure in the described alternative, and the device does not practice the patent.  I note that, as set out in my Opening Report, Apple is incorrect, and that Perspective must link the gestures and their associated routines to the detected structures in order for the structures to be operative. But, to the extent Apple is correct (or at least to the extent Apple has described an implementation Apple claims does not practice the '647 patent), then Apple's view of the Perspective approach to performing actions on structures can form the basis of this alternative. It is my thus opinion that this is a non-infringing alternative to the asserted claims of the '647 patent depending on the implementation, because it would lack at least the claimed "analyzer server for detecting structures in the data, and for linking actions to the detected structures."

511.    In paragraph 276 Dr. Mowry acknowledges that the described implementation can be a noninfringing alternative.  I agree with Dr. Mowry that a possible implementation of this alternative does not require linking the structures to actions ahead of user selection, and thus is non-infringing.  In other words, I understand that this alternative covers any glyph-drawing model where a user can link actions to a structure, rather than the system.  In such an alternative, no linking ahead of selection by the user is necessary.  In fact, in some of those implementations, no detection is necessarily required either—a user could perform an action on any structure after the user detects.  Thus, I understand that allowing "the user to link actions to a structure" is broader

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1   than just the Perspective prior art, and could be implemented in a number of noninfringing ways,

2   because the user performs the "linking" step, not the analyzer server.

3        512.    I further note, however, that Dr. Mowry's opinion, as expressed in paragraph 276,

4   appears to inappropriately limit the scope of this alternative to the Perspective art.  In my opinion,

5   the Perspective prior art discloses an implementation of this alternative that would be anticipatory

6   and therefore infringing, because structures that are detected in the Perspective system are

7   specifically linked to the actions that can be performed on them by using a gesture, and the linking

8   is performed prior to selection by the user.  However, as noted above, this alternative can be

9   implemented in the way Dr. Mowry describes—which is not how Perspective actually functions—

10  and for this reason it is my opinion it would be noninfringing.

11       513.    In paragraph 277, Dr. Mowry states his opinion that this alternative would be

12  "inferior to the technology claimed in the '647 patent."  Dr. Mowry appears to have no basis for

13  this opinion, and I am aware of none.  Dr. Mowry states his opinion that this option would "forc[e]

14  a user to memorize a set of gestures to perform over a piece of information" and this would, in his

15  opinion, "would frustrate and confuse users."  Given that users must already memorize that there

16  are at least two gestures associated with structures in the accused devices (a tap and a long press

17  (and, in reality, a tap to select menu options as well), I disagree with Dr. Mowry's opinion. I note

18  that the number of gestures that might be required for the described glyph-drawing model could be

19  as minimal as two or three as a technical matter ("e" for "email," "d" for "dial," and "a" for "add to

20  address book," for instance), but could also be expanded to provide the user with a broader range

21  of choices.  In my opinion, in a touch-based system such as is used on the accused devices, this

22  could actually cut down on the number of steps a user needs to take to perform an action, and may

23  be preferred by at least some users.  I further note that the '647 patent describes use of voice

24  commands as one possible implementation—a system that would necessarily require the user to

25  memorize a set of commands.  '647 patent, Col. 4:31-38.

26

27

28
                                        291        **HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'**
                                                   **EYES ONLY – SOURCE CODE**
      _____
      EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

## E. Non-Infringing Alternative:  Detect Only One Type of Information; Allow a User to Perform Gestures on Other, Undetected Information

514.    In paragraphs 278 to 280, Dr. Mowry addresses another non-infringing alternative that I understand Samsung has expressed as follows:

> Another non-infringing alternative to the '647 patent technology is to restrict the type of information that can be detected by an application, in accord with Apple's theories (disputed) regarding the necessity that the analyzer server detect multiple types of structures.  For instance, in the Messenger application, the user could be presented with only one type of detected information, such as a phone number, with the same context menu for e-mail that currently exists.  Similarly, in the Browser application, the user could only select an e-mail and only be presented with the same context menu for e-mail that currently exists…. Additionally, according to Apple's arguments regarding the Perspective/EO Communicator prior art, a user could perform gestures over any other structure in combination with this alternative in order to perform a task, for instance drawing a "d" over a phone number to dial it or an "a" to add it to an address book while in Browser, or drawing an "e" to compose an e-mail to an e-mail address in Messenger or an "a" to add it to an address book.

Supplemental Responses to Apple's Interrogatory No. 29 at 155-156.  In paragraph 279, Dr. Mowry acknowledges that he considers this to be a non-infringing alternative.  He also states that the basis for his opinion regarding this alternative is that the '647 patent requires the detection of multiple *types* of structures.  Dr. Mowry cites the construction of "linking" in the Motorola action in support.  For the reasons set forth in my Opening Report at Section VIII.A, I disagree that the '647 patent requires the detection of multiple *types* of structures, and for this reason disagree that this is a noninfringing alternative unless Dr. Mowry and Apple are correct that the '647 patent requires the detection of multiple types of structures.

515.    ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████    This estimate is consistent with my review of the relevant code and my professional experience with making changes to software, including my previous work

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE
EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

changing the design of Android software that involved changes that were similar (if not greater) in scope that the changes discussed, my experience working with industry professionals drafting and modifying code, my experience in the academic context, my experience with the software development practices commonly employed in industry, as well as my knowledge of software development processes at companies such as Google.

516.   In paragraph 280, Dr. Mowry states that he believes this alternative "would be inferior" to the '647 patent technology and that it "represents a pure reduction in functionality as compared to the patented invention, as well as a reduction in ease of use." Dr. Mowry provides no basis for this opinion, and I am not aware of one.  I note that Dr. Mowry appears to wholly ignore the combination of this alternative with a glyph-drawing model when he states that such an alternative would not allow a user to operate on multiple types of information.  Given that his opinion that this alternative would result in a "pure reduction in functionality" is premised entirely on ignoring use in combination with a glyph-drawing model, he is incorrect when he states there is any reduction in functionality at all.  If anything, this alternative can be considered an expansion of existing functionality.

517.   Furthermore, I note that Dr. Mowry ignores the fact that Apple itself determined that, for Mobile Safari, only detecting phone numbers and not other types of structures was worthwhile in order to save time in rendering a page to a user, and actually removed the ability to detect other structures.   Deniau Depo., at 67:14-68:15; 101:5-17.   Accordingly, Apple itself appears to have determined that only detecting one type of structure is actually a superior alternative in some instances. Dr. Mowry ignores this information, despite the fact he opines that Mobile Safari is a practicing product.

**F.**      **Non-Infringing Alternative:  Provide the Same Context Menu of Options Regardless of the Text Selected**

518.   In paragraphs 281 to 282, Dr. Mowry addresses a non-infringing alternative that I understand can be expressed as follows:

293

> Another non-infringing alternative to the '647 patent technology is for the accused applications to provide the same context menu of options to the user regardless of what text the user has selected in the Browser and Messaging applications.  In such a situation, the user could be presented with a menu combining the current options provided for e-mail addresses, phone numbers, and street addresses when selecting one of those structures.

Supplemental Responses to Apple's Interrogatory No. 29 at 156.  In my opinion, this alternative would be non-infringing at least because it would lack an "analyzer server for detecting structures in the data."  This is because if the same context menu of options is provided to the user regardless of what text has been selected, there is no detecting of structures such as emails, telephone numbers, etc., done by the system at all.  I further note that even if detection took place, Apple appears to argue (though I do not agree) in relation to Mosaic and MHonArc that such a system would not perform "linking."  Apple's Response to Interrogatory No. 24.  Dr. Mowry also ignores this fact in his analysis.  In the described alternative, the user does the detection when they select the appropriate menu item, and the system can't customize the menu for the user—because the system does not have information indicating semantically what was selected. That is, the system merely knows that the user merely selected a string; the system has no knowledge as to what the string is or what the string represents.

519.  █████████████████████████████████████████████████

████████████████████████████████████████████████████████

████    This estimate is consistent with my review of the relevant code and my professional experience with making changes to software, including my previous work changing the design of Android software that involved changes that were similar (if not greater) in scope that the changes discussed, my experience working with industry professionals drafting and modifying code, my experience in the academic context, my experience with the software development practices commonly employed in industry, as well as my knowledge of software development processes at companies such as Google.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

520.    I note that in paragraph 282, Dr. Mowry appears to express a misunderstanding of this alternative given one of the particular examples Samsung has provided.  Dr. Mowry states that he believes that because a user would be presented with a context menu that combines all of the current options for detected structures when selecting any given structure, this alternative would still infringe.  But Dr. Mowry does not explain why providing the same menu of options would require detection (when in fact no detection would be required). .  In fact, the option as described clearly states the menu would be provided for all selected text, not just phone numbers, email addresses, etc.  In my opinion, this alternative does not require any detection at all, and thus must lack the claimed "analyzer server for detecting structures in the data."  In fact, this alternative could be implemented in a system that has removed the detecting routines that Apple claims infringes entirely.

521.    I further note that this alternative would not be cognitively disruptive or inferior because there is generally only a small set—as small as three—of possible operations.   I further note that the current menus Dr. Mowry accuses contain options regardless of context or what has been detected.  Moreover, with this alternative, more functionality can actually be provided than in the patent because when an structure is selected, you could potentially perform any operations on that structure associated with it through a contact entry.  For example, you could call a person from their email address, or search the web for their phone number, etc.

**G.**   ██████████████████████████████████████████████████████
██████████████████████████████████

522.    ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████   I note that in such a situation the code Apple and Dr. Mowry accuse as performing "detecting" would be removed from the phone,

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1   and thus the accused applications could not have an "analyzer server for detecting structures in the

2   data."

3        523.   ██████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ██   This estimate is consistent with my review of the relevant code and my professional

6   experience with making changes to software, including my previous work changing the design of

7   Android software that involved changes that were similar (if not greater) in scope that the changes

8   discussed, my experience working with industry professionals drafting and modifying code, my

9   experience in the academic context, my experience with the software development practices

10  commonly employed in industry, as well as my knowledge of software development processes at

11  companies such as Google.

12       524.   ██████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████   ██████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████   But under the Court's construction

24  in the Motorola case, there would be no "separate" analyzer server.  Dr. Mowry wholly ignores

25  this.

26

27

28

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'
EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

525.    In paragraph 285, Dr. Mowry agrees that this alternative would be non-infringing, and states that in his opinion it would be "vastly inferior to the infringing technology."  Dr. Mowry expresses no basis for this opinion, nor am I aware of any.  Moreover, "addition by subtraction" is a well-known principle in the art, and it cannot be assumed that removing a feature actually would render any application "vastly inferior."  It is important to note that even in the accused Browser implementations, the user must first visually detect a structure of interest, without any guidance being performed by the Browser. That is, contrary to the teachings of the '647 patent, in the Accused Devices with Browser, the user must perform the "cognitively disruptive" task that the '647 patent was allegedly created to eliminate. Therefore, at present the user derives no value from any detection function in any "analyzer server" in Browser because the users are the ones that have to first do the detecting. This contradicts Dr. Mowry's assertion of a "vast" difference between the presence and absence of an "analyzer server."

526.    As I noted above, Apple only accuses two applications on the accused devices of practicing the patent.  There are many more loaded onto the accused devices that do not incorporate this functionality, and are not "vastly inferior" in my opinion.

**H.    <u>Non-Infringing Alternative:  Alternative User Interfaces that Do Not Select Detected Structures or Use a Pop-Up</u>**

527.    Finally, in paragraphs 286-288, Dr. Mowry addresses an additional non-infringing alternative that relates to both claim 1 and 9.  I understand Samsung has expressed that in this alternative the accused applications would "not use a pop-up menu for displaying choices of actions to a user, but would instead use a different user interface, such as a list of actions at the bottom of the screen that can be pulled-up by the user."  Supplemental Responses to Apple's Interrogatory No. 29 at 174.  In my opinion, not using a pop-up menu would mean the accused devices would not infringe claim 9.  Additionally, because as described the alternative does not involve any selection by the user of the detected structure—but rather a different user interface

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

that is pulled up by the user to select actions—the described alternative lacks a "user interface for selecting a detected structure."

528.   ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████   This estimate is consistent with my review of the relevant code and my professional experience with making changes to software, including my previous work changing the design of Android software that involved changes that were similar (if not greater) in scope that the changes discussed, my experience working with industry professionals drafting and modifying code, my experience in the academic context, my experience with the software development practices commonly employed in industry, as well as my knowledge of software development processes at companies such as Google.

529.   In paragraph 287, Dr. Mowry expresses a misunderstanding of this alternative, opining that it would still infringe claim 1.  Dr. Mowry states that "Samsung's example, 'a list of actions at the bottom of the screen that can be pulled-up by the user,' would still allow the user to "select" from the list of actions."  But this ignores that the user would not select a structure in this alternative.  Instead, the user might simply copy a structure by routine copy-and-paste methods, then select an action such as "open dialer," "open email," or "open address book" from a menu of options.  The user could then paste the structure wherever needed.  In such a case, the user would not be "selecting a detected structure" because the user is merely copying  a structure that need not even be detected.

530.   In paragraph 288, Dr. Mowry states that this alternative "[a]t most" avoids infringement of claim 9.  Not using a "pop-up menu" avoids infringement of claim 9.  Yet Dr. Mowry still states that "it is not clear from Samsung's description that its proposed example would not constitute a 'pop-up menu.'"  I cannot conceive of how an alternative described as "not us[ing] a pop-up menu" could still constitute using a pop-up menu, unless Dr. Mowry is giving no

298   **HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

meaning to the phrase "pop-up menu" at all.  A menu that must be pulled up by the user, or a list at the bottom of a screen, surely cannot be considered a "pop-up menu."

531.    In paragraph 288, Dr. Mowry also opines that such an option "may be inferior" than that as the option claimed in claim 9.   Dr. Mowry does not apparently have a definitive opinion in this regard, nor a basis for it.   I note that the '647 patent discusses alternative presentation mechanisms without discussing them as inferior.

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1
2
3   DATED:  September 13, 2013
4                                                          _____
                                                           Kevin Jeffay
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

303        **HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'**
           **EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

**Appendix 1 to the Expert Report of Kevin Jeffay:**
**List of Materials Considered**

In preparation of my Report and for other work in this matter, I have reviewed (and will continue to review) the materials cited and discussed in this and my Opening Report and the appendices, as well as the materials described below, and any other materials necessary. This includes:

The materials cited and discussed by Dr. Mowry in his opening report and Materials Considered (Ex. 2) as well as the charts attached as Exhibit 3 to his report;

U.S. Patent No. 5,946,647, its File History and Reexamination History;

Rulings in *Apple Inc. v. Motorola, Inc. and Motorola Mobility, Inc.*, Case No. 10-CV-662 (W.D. Wis.), transferred to Case No. 1:11-cv-08540 (N.D. Ill);

Orders and Briefing relevant to the '647 patent in this litigation;

Various Apple, Google, and Samsung documents, cited in this or Dr. Mowry's report;

Samsung devices and related documentation;

Android Developer Documentation;

Apple's Infringement Contentions in this matter;

Apple and Samsung Interrogatory responses relevant to the '647 patent;

Source code made available for inspection by Samsung including particularly the code cited by Dr. Mowry or set forth in my report.

The following is a non-exhaustive list of additional documents I have considered, in addition to those cited in my report:

**U.S. Patent Materials**

U.S. Patent No. 5,946,647 to Miller et al.

U.S. Patent No. 5,101,424 to Clayton et al. (SAMNDCA630-00965569)

U.S. Patent No. 5,261,042 to Brandt et al. (SAMNDCA630-00965580)

U.S. Patent No. 5,359,317 to Gomez et al. (SAMNDCA630-00001077)

U.S. Patent No. 5,375,201 to Davoust et al. (SAMNDCA630-00965591

U.S. Patent No. 5,437,036 to Stamps et al. (SAMNDCA630-00001090, SAMNDCA630-00095000, and SAMNDCA630-00941672)

U.S. Patent No. 5,649,222 to Mogilevsky (SAMNDCA630-00965617)

U.S. Patent No. 5,859,636 to Pandit (SAMNDCA630-00000869 and SAMNDCA630-00001117)

U.S. Patent No. 5,862,395 to Bier (PARCNDCA630-00000685)

U.S. Patent No. 5,905,890 to Seaman et al. (SAMNDCA630-00000721)


**Other Patent Materials**

EP Pub. No. 0 458 563 A2 to Nokia Mobile Phones Ltd. (SAMNDCA630-00000738 and SAMNDCA630-00000748)

EP Pub. No. 0 472 444 A2


**Discovery, Court Filings and Court Orders**

Apple's Second Supplemental Objections and Responses to Samsung's First Set of Interrogatories, dated May 16, 2013 and relevant documents cited therein.

Apple's Supplemental Objections and Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39 and 41), dated July 15, 2013 and relevant documents cited therein.

Apple's Infringement Contentions and Amended Infringement Contentions and Appendices.

*Apple Inc. v. Motorola*, Order of March 19, 2012, Case No. 1:11-cv-08540.

*Apple Inc. v. Motorola*, Order of May 22, 2012, Case No. 1:11-cv-08540.

*Apple Inc. v. Motorola*, Order of June 22, 2012, Case No. 1:11-cv-08540.


**Publications**

*A System for Discovering Relationships by Feature Extraction from Text Databases*, Jack Conrad & Mary Hunter Utt, Proc. of the 17th Annual Int'l ACM SIGIR Conference on R&D in Information Retrieval (Aug. 1994) (SAMNDCA630-00944729 and SAMNDCA630-00953735)

*Macintosh Human Interface Guidelines*, Apple (1992) (SAMNDCA630-00944773 and SAMNDCA630-00954561)

*Automatic Structuring and Retrieval of Large Text Files*, Gerard Salton, James Allan, & Chris Buckley, Comm'ns of the Ass'n for Computing Mach., Vol. 37, No. 2 (Feb. 1994) (SAMNDCA630-00945789)

*Dexter With Open Eyes*, John Legett & John Schnase, Comm'ns of the Ass'n for Computing Mach., Vol. 37, No. 2 (Feb. 1994) (SAMNDCA630-00945183 and SAMNDCA630-00955194)

*Documents as User Interfaces*, Eric A. Bier & Ken Pier (1991) (SAMNDCA630-00959496 and SAMNDCA630-04320877)

*EmbeddedButtons: Supporting Buttons in Documents*, Eric A. Bier (Oct. 1992) (SAMNDCA630-04320879)

*Embedded Buttons: Documents as User Interfaces*, Eric A. Bier, CHI '91 Conf. Proc.: Reaching Through Technology (1991) (SAMNDCA630-06443618)

*Embedded Menus: Selecting Items in Context*, Comm'ns of the Ass'n for Computing Mach., Vol. 29, No. 4. (Apr. 1986) (SAMNDCA630-00959476)

*Formal Languages and Their Relation to Automata*, John Hopcroft and Jeffrey Ullman (1969) (SAMNDCA630-00954971 and SAMNDCA630-00954975)

*Homer manual* (Mar. 1994), from http://ftp.cz.xemacs.org/MIRRORS/ftp.funet.fi/pub/unix/irc/mac/Manual.sit and http://ftp.futuro.pl/pub/linux/irc/clients/macintosh/homer/Manual.sit.hqx (SAMNDCA630-07887301)

*Hypermedia System Design: Applying the Dexter Model*, Kaj Grønbæk & Randall H. Trigg, Comm'ns of the Ass'n for Computing Mach., Vol. 37, No. 2 (Feb. 1994) (SAMNDCA630-06439032)

*Integrated Text and Image Understanding for Document Understanding*, Suzanne Liebowitz Taylor et al., HLT '94: Proc. of the Workshop on Human Language Tech. (Mar. 1994)(SAMNDCA630-00945702 and SAMNDCA630-00959490)

*Learning Perl*, Randal Schwartz (1993) (SAMNDCA630-00964810)

*Light Hypermedia Link Services: A Study of Third Party Application Integration*, Hugh C. Davis et al., ECHT '94 Proc. (Sept. 1994) (SAMNDCA630-00944757 and SAMNDCA630-00953772)

*Lookup Guide to the EO Personal Communicator,* EO, Inc. (1993) (SAMNDCA630-00808887 and SAMNDCA630-00953094)

*Managing Internet Information Services*, Cricket Liu (1994) (SAMNDCA630-00955229)

*Microsoft Foundation Class Primer*, Jim Conger (1993) (SAMNDCA630-00945194 and SAMNDCA630-00955573)

*Newton Programmer's Guide*, Apple Computer, Inc. (1994) (SAMNDCA630-00807544)

*Parsing Techniques – a Practical Guide*, Dick Grune & Ceriel Jacobs (1st Ed. 1990) from http://dickgrune.com/Books/PTAPG_1st_Edition/ (SAMNDCA630-00954555 and SAMNDCA630-07885587)

*PenPoint 1.01 SDK Installation and Release Notes* (Sept. 27, 1992) (SAMNDCA630-00953431)

*PenPoint A Catalog of Products and Services* (Spring 1992) (SAMNDCA630-00952493)

*PenPoint API Reference Volume I*, Go Corp. (SAMNDCA630-00959521)

*PenPoint Architectural Reference Volume I*, Go Corp. (1992) (SAMNDCA630-00960698)

*PenPoint Architectural Reference Volume II*, Go Corp. (1992) (SAMNDCA630-00960177)

*PenPoint Development Tools*, Go Corp. (1992) (SAMNDCA630-00951826 and SAMNDCA630-00961352)

*PenPoint Getting Started*, Go Corp. (1992) (SAMNDCA630-00952135)

*PenPoint Programming*, Andy Novobilski (1992) (SAMNDCA630-00961665 and SAMNDCA630-00962056)

*PenPoint User Interface Design Reference*, Go Corp. (1992) (SAMNDCA630-00962450)

*Perspective Handbook*, Pensoft Corp. (1992) (SAMNDCA630-00808437)

*PenPoint Makes Its Debut with Support from 40 ISVs*

*POSIX Programmer's Guide Writing Portable UNIX Programs*, Donald Lewine (1994) (SAMNDCA630-00962809)

*Programming Perl*, Larry Wall & Randall Schwartz (1991) (SAMNDCA630-00964957)

*RFC 1459: Internet Relay Chat Protocol*, Oikarinen & Reed (May 1993) from http://tools.ietf.org/html/rfc1459

*sed & awk*, Dale Dougherty (1991) (SAMNDCA630-00964592)

*Sidekick Version 1.5 Owner's Handbook*, Borland International, Inc. (Mar. 1985) (SAMNDCA630-00808758 and SAMNDCA630-00963744)

*Sidekick 2.0 Getting Started*, Borland International (1991) (SAMNDCA630-00963291)

*Sidekick 2.0 User's Guide*, Borland International (1991) (SAMNDCA630-00963372)

*The AT&T EO Travel Guide* (1993) (SAMNDCA630-00806930)

*The Dexter Hypertext Reference Model*, Frank Halasz et al., Comm'ns of the Ass'n for Computing Mach., Vol. 37, No. 2 (Feb. 1994) (SAMNDCA630-06439036)

*The Mosaic Handbook*, Dale Dougherty & Richard Koman (1994) (SAMNDCA630-00809214)

*The UNIX Programming Environment*, Brian Kernighan & Rob Pike (1984) (SAMNDCA630-00963936)

*The Simon User Manual* (1994) (SAMNDCA630-00963873)

*Turbo Lightning Owner's Handbook*, Borland International (1985) (SAMNDCA630-07177122)

*Using SIDEKICK: The Desktop Organizer*, Phillip Robinson (1988) (SAMNDCA630-00965630)

*UNIX Applications Programming Mastering the Shell*, Ray Swartz (1990) (SAMNDCA630-00964123)

*UNIX System V/386 Programmer's Reference Manual* (1988) (SAMNDCA630-00965212)

*User Interface Design for the Hyperties Electronic Encyclopedia*, Ben Schneiderman, Hypertext '87 (Nov. 1987) (SAMNDCA630-00959454)

*Using PenPoint*, Go Corp. (1992) (SAMNDCA630-00952633)


**Physical Devices**

EO 440

Apple Newton

IBM Simon


**Deposition Transcripts and Exhibits**

Transcript of the April 6, 2012 Deposition of David Wright, including exhibits, and previous transcripts and exhibits thereto

Transcript of the November 13, 2012 Deposition of David Wright, including exhibits, and previous transcripts and exhibits thereto

Transcript of the December 11, 2012 Deposition of Thomas Bonura, including exhibits, and previous transcripts and exhibits thereto

Transcript of the January 17, 2013 Deposition of Bonnie Nardi, including exhibits, and previous transcripts and exhibits thereto

Transcript of the April 18, 2013 Deposition of Eric Bier, including exhibits

K. Jeffay Report Concerning the '647 Patent – Appendix 1

Transcript of the June 13, 2013 Deposition of Diana Cohen, including exhibits, and previous transcripts and exhibits thereto

Transcript of the June 14, 2013 Deposition of Michael Schaffer, including exhibits, and previous transcripts and exhibits thereto

Transcript of the June 19, 2013 Deposition of Lars Frid-Nielsen, including exhibits

Transcript of the July 8, 2013 Deposition of James Miller, including exhibits, and previous transcripts and exhibits thereto

Transcript of the July 12, 2013 Deposition of Thomas Deniau, including exhibits thereto

Transcript of the June 18, 2013 Deposition of Dianne Hackborn, including exhibits thereto

Transcript of the May 11, 2012 Deposition of Dianne Hackborn, including exhibits thereto

Transcript of the June 25, 2013 Deposition of Cary Clark, including exhibits thereto

Transcript of the May 3, 2012 Deposition of Cary Clark, including exhibits thereto

Transcript of April 4, 2012 Deposition of Todd Mowry, including exhibits thereto

Transcript of July 5, 2013 Deposition of Huijae Lee, including exhibits thereto

Transcript of June 5, 2013 Deposition of Jinyung Kim, including exhibits thereto


**Other**

Homer IRC client software from
http://ftp.cz.xemacs.org/MIRRORS/ftp.funet.fi/pub/unix/irc/mac/Homer_0.93.7.sit.hqx
and from http://ftp.futuro.pl/pub/linux/irc/clients/macintosh/homer/Homer_0.93.7.sit.hqx

*How MHonArc came to be*, Earl Hood (HOODNDCA630-00001051)

Mosaic version 2.0 Alpha 9 software and documentation from
ftp://ftp.ncsa.uiuc.edu/Mosaic/Windows/Archive/NCSAMosaicV2.0a9.zip
(SAMNDCA630-07885907)

Mosaic version 2.0 Alpha 9 README.WRI (SAMNDCA630-00950977 and SAMNDCA630-07885907\README.WRI)

Mosaic version 2.0 Alpha 9 RELNOTES.HTM (SAMNDCA630-00950979 and SAMNDCA630-07885907\RELNOTES.HTM)

MHonArc mhonarc.txt (SAMNDCA630-00806656 and HOODNDCA630-00000001\files\MHonArc1.0.0.tar.gz\MHonArc\doc\mhonarc.txt)

MHonArc mhonarc script (HOODNDCA630-00000001\files\MHonArc1.0.0.tar.gz\MHonArc\mhonarc)

MHonArc ReadMe (SAMNDCA630-00826192 and HOODNDCA630-00000001\files\MHonArc1.0.0.tar.gz\MHonArc\README)

MHonArc Release Notes (SAMNDCA630-00826195 and HOODNDCA630-00000001\files\MHonArc1.0.0.tar.gz\MHonArc\RELEASE_NOTES)

MHonArc software and documentation (HOODNDCA630-00000001\files\MHonArc1.0.0.tar.gz\MHonArc\)

MosaicMail script from http://www.mhonarc.jp/mirror/release/MHonArc/2.5.14/extras/MosaicMail (HOODNDCA630-00000001\MosaicMail)

Perspective source code (SCHAFFERNDCA630-00000001.zip\MWS\PENSOFT-1992\)

Sidekick version 1.56A source code (FRIDNIELNDCA630-00009433\SK v 1.56\Source Code\)

Sidekick version 1.56A software (FRIDNIELNDCA630-00009433\SK v 1.56\SK\Sidekick 1.56A\)

Video: Documents as User Interfaces Video Demo, Eric Bier, https://www.youtube.com/watch?v=0-_zVkrWCOk (1990) (SAMNDCA630-04320875)

Video: The Interactive Documents Project, Part 1, Eric Bier, https://www.youtube.com/watch?v=34hQhR055JE (July 1989) (SAMNDCA630-04320876)

Video: Documents as User Interfaces 1990, Eric Bier, http://www.youtube.com/watch?v=d0jScoChZCc (1990) (SAMNDCA630-06437701)

Video: CHI '91 video program: Reaching through Technology (1991) (SAMNDCA630-07274705)

MILLER00000064 (also APLNDC630-0000133392)

MILLER00000065 (also APLNDC630-0000133393)

MILLER00000133 (also APLNDC630-0000098807)

# EXHIBIT 60

# Redacted Version of Document Sought To Be Sealed

1

2 UNITED STATES DISTRICT COURT

3 NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

4 APPLE INC., a California corporation,

5        Plaintiff,

6     vs.

7 SAMSUNG ELECTRONICS CO., LTD., a      CASE NO. 12-cv-00630-LHK
Korean corporation; SAMSUNG

8 ELECTRONICS AMERICA, INC., a New
York corporation; SAMSUNG

9 TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

10
       Defendants.

11

12 **REBUTTAL EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

24    **IX.    NON-INFRINGING ALTERNATIVES**

25    144.    In paragraphs 436 to 466 of his Report, Prof. Cockburn addresses four non-

26    infringing alternatives to the asserted claim of the '172 patent. According to Prof. Cockburn, he

27    performed two steps when analyzing non-infringing alternatives: first he determined whether the

28    alternative would in his opinion infringe claim 18 of the '172 patent, and second he "examine[d]

-77-

the impact of the proposed design-around on the usability and convenience of the products from the user's perspective." Cockburn Report at ¶ 436. Prof. Cockburn agrees that each of these four alternative implementations are non-infringing. *See* Cockburn Report at ¶¶ 440, 450, 457, 462. The bulk of his analysis focuses on his second prong, in which he purportedly addresses usability and convenience. I address each of these non-infringing alternatives in turn.

145.    As noted below, Samsung has already implemented certain of these non-infringing designs, and others could be implemented by simply eliminating certain functionality. I was asked to consider how long it would take to implement each of the proposed non-infringing alternatives. I understand that in response to interrogatories, ███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████ In my opinion, given that a non-infringing alternative was available in the Samsung Dart prior to the release of any device accused of infringing the '172 patent, Samsung's estimates are conservative and the various non-infringing alternatives could be implemented in the accused devices more quickly than Samsung estimates.

146.    As discussed above, the non-accused Samsung keyboard was available on all but one of the accused devices from the time each device became available.   Therefore, for each of those devices implementing a non-infringing alternatives would have been simply a matter of removing or turning off access to the accused functionality. This could be done in an insubstantial amount of time by removing the accused software input methods from the device. For the one device without the non-accused Samsung keyboard, adding the Samsung keyboard would also take an insubstantial amount of time, in no case more than a week.

A.    **The Samsung And Swype Input Methods In The Samsung Galaxy S III, Model SCH-i535, Software Ver. MB1**

147.    In one non-infringing alternative the limitation of claim 18 of the '172 patent that

-78-

recites "the current character string in the first area is replaced with the suggested replacement character string if the user activates a key on the keyboard associated with a delimiter" is not performed. Instead, in this non-infringing alternative, activating a key on a keyboard associated with a delimiter causes the current character string in the first area to be kept. *See* Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories (Nos. 4, 5, 6, 8, 20, 23, 24, 27, 29, 45) at 181. Prof. Cockburn agrees that this alternative would not infringe claim 18 of the '172 patent. *See* Cockburn Report at ¶ 440.

148.     As described in detail above, the Samsung Galaxy S III, model SCH-i535, software version MB1 includes two input methods: Swype and the Samsung keyboard. This particular Galaxy S III is just one example of numerous Samsung products containing these two non-infringing input methods. In both of the input methods included in this Galaxy S III, as a keystroke sequence is entered by the user, such as "Mess", "Messaf", or "Message" (i.e. the current character string), that text is displayed in the leftmost position in a suggestions area that is displayed between a text entry area and a virtual keyboard (i.e. the second area). Also displayed in the suggestions area are the suggestions themselves, including a most likely interpretation of the keystroke sequence entered by a user (i.e. the suggested replacement character string). In both the Samsung keyboard and Swype, the best guess is displayed immediately to the right of the keystroke sequence entered by the user. The keystroke sequence selected by the user is also displayed in a text area where characters appear as a user selects keys on the virtual keyboard (i.e., the first area). Pressing the spacebar key or a punctuation key on the virtual keyboard causes the keystroke sequence entered by a user to continue to be displayed in the text area, followed by a space or punctuation mark as appropriate. The user can also select any of the items in the suggestions area by touching them, including the keystroke sequence the user had entered, such as "Messaf". This functionality is depicted below in the Samsung keyboard:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172



**From left to right: (1) entering "Mess"; and (2) after pressing the spacebar**



**From left to right: (1) entering "Messag"; and (2) after pressing the spacebar**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172



**From left to right: (1) entering "Messaf"; and (2) after pressing the spacebar**

And in Swype:

**From left to right: (1) entering "Mess"; and (2) after pressing the spacebar**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172**



**From left to right: (1) entering "Messag"; and (2) after pressing the spacebar**



**From left to right: (1) entering "Messaf"; and (2) after pressing the spacebar**

149.    Prof. Cockburn agrees that this alternative would not infringe claim 18 of the '172 patent. *See* Cockburn Report at ¶ 440. But although Prof. Cockburn does not dispute the existence or non-infringing nature of this implementation of an input method in Samsung's devices, Prof. Cockburn claims this alternative "does not afford the advantages and benefits of the '172 patent." *See* Cockburn Report at ¶ 441. In my opinion, for at least the reasons enumerated below, Prof. Cockburn is incorrect.

150.    Of the four purported benefits of the '172 patent described by Prof. Cockburn, there

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

is only one over which Prof. Cockburn and I have any dispute regarding this non-infringing alternative:

> *First*, by automatically replacing the current character string with the suggested replacement character string when a delimiter is selected, the user can focus their attention on writing their intended text without the need to check (and possibly correct) every character as it is entered – minor text input errors, such as typing 'hte' or 'rhe' instead of 'the', can therefore be automatically and seamlessly corrected without the need for manual intervention.

*See* Cockburn Report at ¶ 372. In devices using this non-infringing alternative, a user can still "focus their attention on writing their intended text without the need to check (and possibly correct) every character as it is entered", because both the Samsung keyboard and Swype provide a suggestions area that contains the keystroke sequence entered by the user and alternative suggestions. A user need not correct every character as it is entered, because the system allows for correction of entire words as well as completion of partial words by selecting an item displayed in the suggestions area. The only difference between the alleged invention claimed in the '172 patent and the non-infringing alternative described above is the "need for manual intervention", which, according to Prof. Cockburn, makes this text entry method "more cognitively demanding, as it requires the user to pay particular attention to errors and parse the available suggested replacement character strings." *See* Cockburn Report at ¶ 444. But Prof. Cockburn ignores that lack of "explicit control for all error correction" can be cognitively demanding as well. Indeed, predictive text systems are not perfect, and often make mistakes in their predictions. For example, in the Apple iPhone, when I type "Wigdor", the iPhone suggests "Wigs or", which is entered into the text area when I press the space key on the virtual keyboard. This is just as cognitively demanding, if not more so, since it requires the user to not only monitor the individual keystrokes as they enter them, but also to monitor the result of an automated system which has failed to "facilitate[] seamless text entry." *See* Cockburn Report at ¶ 445. Accordingly, it is simply not correct that this non-infringing alternative "fails to take advantage of this window of opportunity to make text entry on a touch screen device more seamless and easy to use", at least because in many situations this non-infringing alternative already provides a more seamless experience.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

151.    As evidence of the purported importance of "the ability to select a suggested word by typing space," Prof. Cockburn cites to a small set of documents from Samsung, Google, and Nuance. *See* Cockburn Report at ¶ 442. Prof. Cockburn adopts a strained reading of these documents in order to make his point. █████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ GOOG-NDCAL630-00064433 - 434. ██████████████████████████████████████████████ GOOG-NDCAL630-00054431.

152.    █████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████

153.    ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1   154. ████████████████████████████████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ██████████████████    ██████████████████    ████████████

5   ███████████████████████████████████████.

6   155.    In sum, the alleged benefits of the '172 patent are all provided by the Swype and

7   Samsung keyboard input methods in the Samsung Galaxy S III, model SCH-i535, software

8   version MB1. These input methods are in my opinion acceptable non-infringing alternatives to

9   claim 18 of the '172 patent.

10          **B.**     **The Samsung Input Method In The Samsung Dart**

11   156.       In another non-infringing alternative the limitations of claim 18 of the '172 that

12   recite "a first area of the touch screen display that displays a current character string being input

13   by a user with the keyboard"; "the current character string in the first area is replaced with the

14   suggested replacement character string if the user activates a key on the keyboard associated with

15   a delimiter"; "the current character string in the first area is replaced with the suggested

16   replacement character string if the user performs a gesture on the suggested replacement character

17   string in the second area;" and "the current character string in the first area is kept if the user

18   performs a gesture in the second area on the current character string or the portion thereof

19   displayed in the second area" are not performed. Instead, in this non-infringing alternative, a

20   suggested replacement character string (such as "message" if a user has typed "messaf") is

21   displayed in the first area. *See* Samsung's Further Supplemental Responses to Apple's First, Third,

22   and Tenth Sets of Interrogatories (Nos. 4, 5, 6, 8, 20, 23, 24, 27, 29, 45) at 181-182. Prof.

23   Cockburn agrees that this alternative would not infringe claim 18 of the '172 patent. *See* Cockburn

24   Report at ¶ 450.

25   157.    As described in detail above, the Samsung Dart includes two input methods: Swype

26   and the Samsung keypad. The Dart is just one example of numerous Samsung products containing

27   these two non-infringing input methods. The Samsung keypad includes an option in its settings,

28   called XT9, which is used to enable or disable predictive text. With XT9 enabled, the keystroke

sequence entered by the user such as "Mess", "Messaf", or "Message" (i.e. the current character string), is displayed in the leftmost position in a suggestions area that is displayed between a text entry area and a virtual keyboard (i.e. the second area). Also displayed in the suggestions area are the suggestions themselves, including a most likely interpretation of the keystroke sequence entered by a user (i.e. the suggested replacement character string). This best guess is highlighted in blue and, if the best guess and the keystroke sequence entered by the user are one and the same, the keystroke sequence entered by the user is highlighted in blue. The best guess is also displayed in a text area where characters appear as a user selects keys on the virtual keyboard (i.e., the first area). Pressing the spacebar key or a punctuation key on the virtual keyboard causes the best guess to continue to be displayed in the text area, followed by a space or punctuation mark as appropriate. The user can also select any of the items in the suggestions area by touching them, including the keystroke sequence the user had entered, such as "Messaf". All of this functionality is present in the Samsung Dart, as depicted below:

 

**From left to right: (1) entering "Mess"; and (2) after pressing the spacebar**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172




**From left to right: (1) entering "Messag"; (2) after pressing the spacebar; and (3) after selecting "Messag"**





**From left to right: (1) entering "Messaf"; (2) after pressing the spacebar; and (3) after selecting "Messaf"**

158.   Prof. Cockburn agrees that this alternative would not infringe claim 18 of the '172 patent. *See* Cockburn Report at ¶ 450. But although Prof. Cockburn does not dispute the existence or non-infringing nature of this implementation of an input method in Samsung's devices, Prof. Cockburn takes issue with the quality of this alternative, calling it "cognitively demanding" and "jarring", and claiming it "may result in less accurate text entry". *See* Cockburn Report at ¶¶ 451-453. According to Prof. Cockburn, this alternative "does not afford the benefits and advantages of the '172 patent." *See* Cockburn Report at ¶ 451. In my opinion, for at least the reasons enumerated below, Prof. Cockburn is incorrect.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

159.    Prof. Cockburn lists four purported benefits of the '172 patent:

*First*, by automatically replacing the current character string with the suggested replacement character string when a delimiter is selected, the user can focus their attention on writing their intended text without the need to check (and possibly correct) every character as it is entered – minor text input errors, such as typing 'hte' or 'rhe' instead of 'the', can therefore be automatically and seamlessly corrected without the need for manual intervention.

*Second*, by providing a second area for character strings that is distinct from the first area, the user can focus their attention on the first area without the visual distraction caused by other character strings being displayed in the first area.

*Third*, by placing both the current character string and the suggested replacement character strings in a second area, the user has a single area that can be consistently used for inspecting and selecting candidate words, regardless of whether the intended word is the current character string or a suggested replacement character string. Further, the separation of the second area from the first area allows words to be selected for inclusion into the first area by gestures on the second area, and therefore without the occlusion that might be caused by finger gestures blocking the user's view of text in the first area.

*Fourth*, by including the current character string in the second area, the user can gesture to specify that the actual characters input should be kept. This is important when the user intends to keep a word that is not known in the dictionary.

Cockburn Report at ¶¶ 372-375. Each of these purported benefits is present in the Samsung keypad.

160.    As to the first purported benefit, in the Samsung keypad, when the user presses a delimiter such as a spacebar or punctuation key, the best guess is displayed in the first area. Because the best guess is displayed in the first area after a user presses a delimiter, the user can "focus their attention on writing their intended text" and therefore text can "be automatically and seamlessly corrected without the need for manual intervention." *See* Cockburn Report at ¶ 372.

161.    As to the second purported benefit, the Samsung keypad also displays a suggestions area that is distinct from a text area. This allows the user to "focus their attention on the first

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1   area."[3]  *See* Cockburn Report at ¶ 373.

2      162.    As to the third purported benefit, the Samsung keypad provides a suggestions area,

3   which is an area that a user can consistently use for inspecting and selecting candidate words,

4   which allows words to be selected without finger gestures blocking a user's view of the text in the

5   first area.[4]  *See* Cockburn Report at ¶ 374.

6      163.    As to the fourth and final purported benefit, the Samsung keypad includes the

7   keystroke sequence entered by the user – the current character string – in the suggestions area.

8   This allows a user to "gesture to specify that the actual characters input should be kept", whether

9   they were initially displayed in the text area or not. *See* Cockburn Report at ¶ 375.

10     164.    Further, I note that Prof. Cockburn agrees that a Samsung keypad with this

11  functionality "had been implemented on a number of Samsung devices prior to the filing of this

12  lawsuit." *See* Cockburn Report at ¶ 454. Prof. Cockburn does state, however, that "it was never

13  implemented as the only input method in any of the Galaxy S II or S II Skyrocket devices" and

14  that the Galaxy S III "was the first Samsung device to implement this alternative as the only

15  default, pre-installed input method (via the Samsung keyboard)." *See id.* As an initial matter, it is

16  not relevant whether this keyboard was the "only input method" in a Galaxy S II or Galaxy S II

17  Skyrocket device. It is not my opinion that merely possessing the Samsung input method in

18  addition to another input method that Apple accuses of infringing the '172 patent renders those

19  devices non-infringing. Instead, it is my opinion that the Samsung input method, in all its

20  incarnations, is a non-infringing *alternative* that was present on those devices. Removing any

21  other input method accused of infringing would therefore render those devices non-infringing.

22  Furthermore, as is clearly demonstrated by the Dart, there were other Samsung devices prior to the

23  _____

24     [3]    I note that Apple devices, such as the iPhone, do not "provid[e] a second area for character
    strings that is distinct from the first area." *See* Cockburn Report at ¶ 373. In Apple devices, as the
25  user enters text, a single suggestion is displayed, next to the text being entered, in a user interface
    element that looks like a bubble that is displayed within the first area.
26     [4]    I note that Apple devices, such as the iPhone, do not separate the second area from the first
    area and therefore a user's finger gestures "block the user's view of text in the first area." *See*
27  Cockburn Report at ¶ 374.

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1    Galaxy S II and Galaxy S II Skyrocket that included this input method and are not accused of

2    infringing the '172 patent. And, as the Dart (and other devices) demonstrates, Prof. Cockburn's

3    attempt to pinpoint the S III as the first device to implement this alternative is plainly incorrect.

4    While the Dart does include other input methods, none of those input methods are accused of

5    infringing the '172 patent, and the Android operating system on the Dart provides a simple

6    method for a user to switch from one non-infringing input method to another. Accordingly, this

7    non-infringing alternative was available at least as early as the Samsung Dart.

8            165.   ████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   █████████████████████████.

13           166.   In sum, the alleged benefits of the '172 patent are all provided by the Samsung

14   keypad in the Samsung Dart, Galaxy S II Epic 4G Touch, Galaxy S III and Stratosphere as well.

15   This input method, as embodied at least in the Samsung Dart, Samsung Galaxy S II Epic 4G

16   Touch, Samsung Galaxy S III, model SCH-i535, software version LHE and Samsung Stratosphere

17   is in my opinion an acceptable non-infringing alternative to claim 18 of the '172 patent.

18        **C.**     **Continuous Contact Typing Methods (Swiftkey Flow, T9 Trace, and Swype)**

19           167.   In another non-infringing alternative the limitations of claim 18 of the '172 that

20   recite "a first area of the touch screen display that displays a current character string being input

21   by a user with the keyboard"; "a second area of the touch screen display separate from the first

22   area that displays the current character string or a portion thereof and a suggested replacement

23   character string for the current character string"; "the current character string in the first area is

24   replaced with the suggested replacement character string if the user activates a key on the

25   keyboard associated with a delimiter"; "the current character string in the first area is replaced

26   with the suggested replacement character string if the user performs a gesture on the suggested

27   replacement character string in the second area;" and "the current character string in the first area

28   is kept if the user performs a gesture in the second area on the current character string or the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1  portion thereof displayed in the second area" are not performed. Instead, in this non-infringing

2  alternative, a user enters text using a gesture-based text entry method such as T9 Trace or

3  Swiftkey Flow. *See* Samsung's Further Supplemental Responses to Apple's First, Third, and

4  Tenth Sets of Interrogatories (Nos. 4, 5, 6, 8, 20, 23, 24, 27, 29, 45) at 182-183. Prof. Cockburn

5  agrees that this alternative would not infringe claim 18 of the '172 patent. *See* Cockburn Report at

6  ¶ 457.

7         168.    One example of a device with multiple implementations of a gesture-based input

8  methods is the Samsung Galaxy S III, model SCH-i535, software version MB1. This Galaxy S III

9  includes both the Samsung keyboard with T9 Trace and Swype. As Prof. Cockburn describes, to

10 "perform text entry using these input methods, the user moves a finger across the letters

11 constituting the intended word. The user maintains continuous contact with the touch screen for

12 each word entered. After the user breaks contact with the touch screen, the device outputs a word

13 based on the pattern the user 'swiped'." Cockburn Report at ¶ 457. Prof. Cockburn goes on to

14 describe that users "can choose to keep the suggested word or replace the suggested word with

15 another word." *Id.* To add specificity to Prof. Cockburn's description, with this non-infringing

16 alternative the user might attempt to draw a finger through the letters that make up the word

17 "Message" (i.e. the suggested replacement character string), which is displayed in the leftmost

18 position in a suggestions area that is displayed between a text entry area and a virtual keyboard

19 (i.e. the second area). Also displayed in the suggestions area are additional suggestions. The best

20 guess is highlighted in blue (in the Samsung keyboard) or orange (in Swype) in the suggestions

21 area. The best guess is also displayed in the text area (i.e., the first area). Pressing the spacebar key

22 or a punctuation key on the virtual keyboard causes the best guess to continue to be displayed in

23 the text area, followed by a space or punctuation mark as appropriate. The user can also select any

24 of the items in the suggestions area by touching them. This functionality is depicted below in the

25 Samsung keyboard:

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172**

1
2
3
4
5
6
7
8
9
10

 

**From left to right: (1) Samsung keyboard T9 Trace help screen; (2) entering "Message" by swiping between letters**

And in Swype:

 

**From left to right: (1) Welcome to Swype!; (2) entering "Message" by drawing a path through the letters**

169.    Prof. Cockburn agrees that this alternative would not infringe claim 18 of the '172 patent. *See* Cockburn Report at ¶ 457. But although Prof. Cockburn does not dispute the existence or non-infringing nature of this implementation of an input method in Samsung's devices, Prof. Cockburn takes issue with the quality of this alternative, saying it has "significant drawbacks that

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

may decrease a device's ease of use." *See* Cockburn Report at ¶ 458. According to Prof. Cockburn, "[t]ext entry may take longer" and "[u]sers are also likely to be less accurate" than when using tap-based text entry. *See id.* I disagree with Prof. Cockburn's conclusions. First, I note that Prof. Cockburn has no support for his assertions that "a swiping gesture is likely to be slower than tapping" and that a user is likely to be less accurate when swiping than when tapping. *See id.* Regardless, Prof. Cockburn's bare assertions ignore that being fast and easy to use is the *entire point* of Swype and other swipe-based input methods. For example, in addition to the Galaxy S III, Swype was also available (and not accused) on the Samsung Dart:



**From left to right: (1) Swype Tips, "Swype is a new way to type"; and (2) entering "Message" by tracing a path through the letters**

The tutorial for Swype on the Dart repeatedly refers to Swype as "quick", "easy", and a way to "input text faster":



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

**From left to right: (1) Swype Tutorial introduction; (2) Swype Tutorial, "Swype is quick"; and (3) Swype tutorial, "That's how easy it is to enter words with Swype"**

Further, in my opinion swipe-based text entry is necessarily faster than tap-based text entry since it does not require the user to lift a finger, locate the next desired letter, and perform another tap for each desired character in a keystroke sequence. Instead, in Swype and when using T9 Trace, the user need merely drag a finger through the desired keystrokes, avoiding unnecessarily lifting a finger.

170.    Prof. Cockburn further asserts that when using a swipe-based text entry method, "cognitive demand, error rate, and frustration of entry" is increased due to "lack of visual feedback" in the text entry area. But Swype and T9 Trace provide this feedback in other ways. When entering text via Swype and T9 Trace in the Samsung keyboard, the input methods shows the "trace" of the user's finger as it moves across the virtual keyboard. This trace provides visual feedback sufficient to decrease cognitive demand, prevent any increase in error rate, and avoid user frustration during text entry. Indeed, one advantage of continuous contact typing methods is that a user needs to look up from the keyboard to the text area to verify that the word entered was correct only once: when the word has been completed. This is in stark contrast to conventional systems in which a user taps to type, including the purported invention of the '172 patent. In those systems, a user takes several steps to enter each letter in a word. First, the user locates the desired letter on the keyboard, and presses it. Then, after each character is entered, the user looks to the text area to see if the correct character was selected as well as the suggestion area to see if the intended word is displayed. The user must then make a decision to select a word from the suggestions area or to enter another character. In these systems, this process must be completed after every character is entered. In Swype, this process must be completed only once per word.

171.    In sum, the alleged benefits of the '172 patent are all provided by the swipe-typing functionality of Swype and the Samsung keyboard as well. This functionality, as embodied at least in the Samsung Dart and the Samsung Galaxy S III, model SCH-i535, software version MB1, is in my opinion an acceptable non-infringing alternative to claim 18 of the '172 patent.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1       **D.**     **U.S. Patent Application Publication No. 2007/0040813 to Kushler et al.**

2       172.   In another non-infringing alternative, an input method would practice the system

3 described in U.S. Patent Application Publication No. 2007/0040813 to Kushler et al. ("the Kushler

4 reference"). *See* Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth

5 Sets of Interrogatories (Nos. 4, 5, 6, 8, 20, 23, 24, 27, 29, 45) at 170. Prof. Cockburn agrees that

6 this alternative would not infringe claim 18 of the '172 patent. *See* Cockburn Report at ¶ 462. The

7 Kushler reference lists as its inventors Clifford Kushler and Randal Marsden, who developed the

8 Swype     input     method.     *See*     Swype     Text     Input     for     Screens,

9 http://www.forwordinput.com/about.html. The assignee of the Kushler reference, ForWord Input,

10 Inc., was founded by these same individuals. *See id.* ForWord Input later became known as

11 Swype,   Inc.   *See*   Swype   Inc.:   Private   Company   Information   –   BusinessWeek,

12 http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=49092563.

13       173.   In order to practice the Kushler reference, a single area would be presented to the

14 user when entering text that contains both the keystroke sequence entered by the user as well as

15 suggested replacements for that keystroke sequence. This single area would be superimposed onto

16 the text area, as shown in Figure 2B of the Kushler reference:



27       174.   This single area would display the keystroke sequence entered by the user at the

28 current cursor position in the text area as the user is entering text, and would also show one or

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

1   more suggestions. So, for example, if the user entered the keystroke sequence corresponding to

2   "Messaf", the non-infringing alternative system might display, from top to bottom, "Message" and

3   "Messaf". Selecting a spacebar or punctuation key would result in the top suggestion "Message"

4   being displayed in the text area. The user could alternatively select any of the entries in the list by

5   touching them.

6        175.   Prof. Cockburn agrees that this alternative would not infringe claim 18 of the '172

7   patent. *See* Cockburn Report at ¶ 462. But although Prof. Cockburn does not dispute the non-

8   infringing nature of this possible implementation of an input method in Samsung's devices, Prof.

9   Cockburn takes issue with the quality of this alternative, saying it "may visually overload the area

10  with content" and is "likely to require larger finger movements away from the keyboard to select

11  suggested strings." *See* Cockburn Report at ¶ 465-466. As with the non-infringing alternatives

12  discussed above, Prof. Cockburn has no support for his assertion that this hypothetical non-

13  infringing alternative would "overload the area with content." Indeed, as Figure 2B of the Kushler

14  reference clearly depicts, it is possible to design a user interface where this interface does not

15  "overload the area with content." As to Prof. Cockburn's assertion that this hypothetical non-

16  infringing alternative requires larger finger movements, the purported invention described in claim

17  18 of the '172 patent does not identify the location of the second area on the display. While some

18  other non-asserted claims, such as claims 1 and 17 do describe a second area that "is between the

19  first area and the keyboard", claim 18 is not so limited. *See* '172 patent at 11:25-26; 12:47-48.

20  Prof. Cockburn is attempting to incorporate a limitation into the lone asserted claim of the '172

21  patent in order to derive a benefit where none exists for the sole purpose of finding fault with an

22  acceptable non-infringing alternative. Claim 18 has no such benefit and this non-infringing

23  alternative has no such faults.

24       176.   In sum, the alleged benefits of the '172 patent are all provided by a non-infringing

25  alternative that practices the invention described in the Kushler reference. This functionality is in

26  my opinion an acceptable non-infringing alternative to claim 18 of the '172 patent.

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

DATED:   September 12, 2013

_____
Daniel Wigdor

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING
NON-INFRINGEMENT OF U.S. PATENT NO. 8,074,172

**Appendix 1 to the Expert Report of Daniel J. Wigdor:**
**List of Materials Considered**

In preparation of my Report and for other work in this matter, I have reviewed and will review all materials cited and discussed in my Invalidity Report and its Exhibits and in my Non-infringement Report, as well as the materials described below, and any other materials necessary:

Expert Report of Professor Andrew Cockburn, including Exhibits

Materials cited by Prof. Cockburn in his Report and in Exhibit 2 to his Report relating to the '172 patent, including:

APLNDC630-0000159335

APLNDC630-0000159472

APLNDC630-0000159672

APLNDC630-0000160121

APLNDC630-0000160354

APLNDC630-0000160368

APLNDC630-0000160391

APLNDC630-0000160394

APLNDC630-0000160973

APLNDC630-0000160976

APLNDC630-0000161179

APLNDC630-0000161388

APLNDC630-0000162108

APLNDC630-0000162110

APLNDC630-0000162299

APLNDC630-0000171537

APLNDC630-0001900256

APLNDC630-0001901361

APLNDC-Y0000060900

GOOG-NDCAL630-00064431

NUANCE 000015

SAMNDCA630-04335717

SAMNDCA630-05407747

SAMNDCA630-05520359

SAMNDCA630-06034311

SAMNDCA630-06248149

SAMNDCA630-06248163

SAMNDCA630-06519666

SAMNDCA630-06716908

SAMNDCA630-07320934

SAMNDCA630-07696882

SAMNDCA630-07696889

S-ITC-003856763

S-ITC-003860399

Transcript of the May 13, 2012 Deposition of Ken Wakasa, including exhibits

Transcript of the July 9, 2013 Deposition of Ken Wakasa, including exhibits

Apple Inc's Second Supplemental Objections and Responses to Samsung's First Set of Interrogatories

Samsung's Third Supplemental Objections and Responses to Apple's Sixth Set of Interrogatories (No. 41)

Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories (Interrogatory Nos. 4, 5, 6, 8, 20, 23, 24, 27, 29, 45)

Samsung's Further Supplemental Response to Apple's Third Set of Interrogatories (Interrogatory No. 28)

Samsung's Objections and Responses to Apple's Twelfth Set of Interrogatories (Nos. 47-50)

D. Wigdor Report Concerning the '172 Patent – Appendix 1

Declaration of Dr. Karan Singh Regarding U.S. Patent No. 8,074,172, including Exhibits

Reply Declaration of Dr. Karan Singh Regarding U.S. Patent No. 8,074,172, including Exhibits

Declaration of Ken Wakasa

http://www.samsung.com/us/mobile/cell-phones/SCH-R720ZAAMTR?

http://www.samsung.com/us/mobile/cell-phones/SCH-R720ZAAMTR-specs

http://www.samsung.com/us/support/owners/product/SCH-R720ZAAMTR

http://www.samsung.com/us/mobile/cell-phones/SGH-I927ZKAATT?

http://www.samsung.com/us/mobile/cell-phones/SGH-I927ZKAATT-specs

http://www.samsung.com/us/support/owners/product/SGH-I927ZKAATT

http://www.samsung.com/us/mobile/cell-phones/SPH-D600ZKASPR?

http://www.samsung.com/us/mobile/cell-phones/SPH-D600ZKASPR-specs

http://www.samsung.com/us/support/owners/product/SPH-D600ZKASPR

http://www.samsung.com/us/mobile/cell-phones/SPH-L700ZKASPR?

http://www.samsung.com/us/mobile/cell-phones/SPH-L700ZKASPR-specs

http://www.samsung.com/us/support/owners/product/SPH-L700ZKASPR

http://www.samsung.com/us/mobile/cell-phones/SCH-I515MSAVZW?

http://www.samsung.com/us/mobile/cell-phones/SCH-I515MSAVZW-specs

http://www.samsung.com/us/support/owners/product/SCH-I515MSAVZW

http://www.samsung.com/us/mobile/cell-phones/SGH-I717RWAATT?

http://www.samsung.com/us/mobile/cell-phones/SGH-I717RWAATT-specs

http://www.samsung.com/us/support/owners/product/SGH-I717RWAATT

http://www.samsung.com/us/mobile/cell-phones/SGH-I717ZBAATT?

http://www.samsung.com/us/mobile/cell-phones/SGH-I717ZBAATT-specs

http://www.samsung.com/us/support/owners/product/SGH-I717ZBAATT

http://www.samsung.com/us/support/owners/product/SGH-I777ZKAATT

http://www.samsung.com/us/mobile/cell-phones/SGH-T989ZKBTMB

http://www.samsung.com/us/mobile/cell-phones/SGH-T989ZKBTMB-specs

http://www.samsung.com/us/support/owners/product/SGH-T989ZKBTMB

http://www.samsung.com/us/mobile/cell-phones/SPH-D710ZKASPR-specs

http://www.samsung.com/us/support/owners/product/SPH-D710ZKASPR

http://www.samsung.com/us/mobile/cell-phones/SCH-I405ZWBVZW?

http://www.samsung.com/us/mobile/cell-phones/SCH-I405ZWBVZW-specs

http://www.samsung.com/us/support/owners/product/SCH-I405ZWBVZW

http://www.samsung.com/us/mobile/cell-phones/SPH-M930ZKASPR?

http://www.samsung.com/us/mobile/cell-phones/SPH-M930ZKASPR-specs

http://www.samsung.com/us/support/owners/product/SPH-M930ZKASPR

http://www.samsung.com/us/mobile/cell-phones/SGH-T499MABTMB

http://www.samsung.com/us/mobile/cell-phones/SGH-T499MABTMB-specs

http://www.samsung.com/us/support/owners/product/SGH-T499MABTMB

http://www.samsung.com/us/mobile/cell-phones/SCH-I605MSAVZW?

http://www.samsung.com/us/mobile/cell-phones/SCH-I605MSAVZW-specs

http://www.samsung.com/us/support/owners/product/SCH-I605MSAVZW

http://www.samsung.com/us/mobile/cell-phones/SGH-T889PSATMB?

http://www.samsung.com/us/mobile/cell-phones/SGH-T889PSATMB-specs

http://www.samsung.com/us/support/owners/product/SGH-T889PSATMB

http://www.samsung.com/us/mobile/cell-phones/SGH-I317ZWAATT?

http://www.samsung.com/us/mobile/cell-phones/SGH-I317ZWAATT-specs

http://www.samsung.com/us/support/owners/product/SGH-I317ZWAATT

http://www.samsung.com/us/mobile/cell-phones/SCH-I535ZNBVZW

http://www.samsung.com/us/mobile/cell-phones/SCH-I535ZNBVZW-specs

http://www.samsung.com/us/support/owners/product/SCH-I535ZNBVZW

http://www.samsung.com/us/mobile/cell-phones/SGH-I747ZRBATT?

http://www.samsung.com/us/mobile/cell-phones/SGH-I747ZRBATT-specs

D. Wigdor Report Concerning the '172 Patent – Appendix 1

http://www.samsung.com/us/support/owners/product/SGH-I747ZRBATT

http://www.samsung.com/us/mobile/cell-phones/SPH-L710RWBSPR

http://www.samsung.com/us/mobile/cell-phones/SPH-L710RWBSPR-specs

http://www.samsung.com/us/support/owners/product/SPH-L710RWBSPR

http://www.samsung.com/us/mobile/cell-phones/SGH-T999NBATMB?

http://www.samsung.com/us/mobile/cell-phones/SGH-T999NBATMB-specs

http://www.samsung.com/us/support/owners/product/SGH-T999NBATMB

http://www.samsung.com/us/mobile/cell-phones/SCH-R530MBBUSC

http://www.samsung.com/us/mobile/cell-phones/SCH-R530MBBUSC-specs

http://www.samsung.com/us/support/owners/product/SCH-R530MBBUSC

http://www.samsung.com/us/mobile/cell-phones/SCH-R530MBBCRI

http://www.samsung.com/us/mobile/cell-phones/SCH-R530MBBCRI-specs

http://www.samsung.com/us/support/owners/product/SCH-R530MBBCRI

http://www.samsung.com/us/mobile/cell-phones/SGH-I547ZKAATT?

http://www.samsung.com/us/mobile/cell-phones/SGH-I547ZKAATT-specs

http://www.samsung.com/us/support/owners/product/SGH-I547ZKAATT

http://www.samsung.com/us/mobile/cell-phones/SCH-I110ZKAVZW?

http://www.samsung.com/us/mobile/cell-phones/SCH-I110ZKAVZW-specs

http://www.samsung.com/us/support/owners/product/SCH-I110ZKAVZW

http://www.samsung.com/us/mobile/cell-phones/SGH-T879ZBBTMB

http://www.samsung.com/us/mobile/cell-phones/SGH-T879ZBBTMB-specs

http://www.samsung.com/us/support/owners/product/SGH-T879ZBBTMB

http://developer.android.com/reference/android/app/Activity.html

http://developer.android.com/training/basics/firstapp/starting-activity.html

Accused Samsung Devices, in particular (model name – model number – build number):

Samsung Admire – SCH-R720 – EJ25

D. Wigdor Report Concerning the '172 Patent – Appendix 1

Samsung Conquer 4G – SPH-D600 – EF25

Samsung Dart – SGH-T499 – UVKE4

Samsung Exhibit II 4G – SGH-T679 – UVLE1

Samsung Exhibit II 4G – SGH-T679 – UVLG3

Samsung Galaxy Nexus – SCH-i515 – EK02

Samsung Galaxy Nexus – SCH-i515 – FC05

Samsung Galaxy Nexus – SCH-i515 – FK02

Samsung Galaxy Note – SGH-i717 – UCLF6

Samsung Galaxy Note II – SPH-L900 – LJ1

Samsung Galaxy Note 10.1 – GT-N8013 – LGB

Samsung Galaxy Rugby Pro – SGH-i547 – LL1

Samsung Galaxy S II – SGH-i777 – UCKH7

Samsung Galaxy S II – SGH-T989 – UVLDE

Samsung Galaxy S II – SGH-T989 – UVLH1

Samsung Galaxy S II Epic 4G Touch – SPH-D710 – FH13, updated to GB27

Samsung Galaxy S II Skyrocket – SGH-i727 – UCLA3

Samsung Galaxy S III – SCH-i535 – LHE

Samsung Galaxy S III – SCH-i535 – MB1

Samsung Galaxy Tab 2 10.1 – SGH-i497 – LJ3

Samsung Illusion – SCH-i110 – EJ2

Samsung Stratosphere – SCH-i405 – EI2

Samsung Transform Ultra – SPH-M930 – EG30

Aug. 19, 2013 Order Granting / Denying Request For Ex Parte Reexamination
No. 90/012,892