# EXHIBIT 1

| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552) | WILLIAM F. LEE |
| jkrevitt@gibsondunn.com | william.lee@wilmerhale.com |
| H. MARK LYON (CA SBN 162061) | WILMER CUTLER PICKERING |
| mlyon@gibsondunn.com | HALE AND DORR LLP |
| GIBSON, DUNN & CRUTCHER LLP | 60 State Street |
| 1881 Page Mill Road | Boston, MA 02109 |
| Palo Alto, CA 94304-1211 | Telephone: (617) 526-6000 |
| Telephone: (650) 849-5300 | Facsimile: (617) 526-5000 |
| Facsimile: (650) 849-5333 | |
| | |
| HAROLD J. McELHINNY (CA SBN 66781) | MARK D. SELWYN (SBN 244180) |
| hmcelhinny@mofo.com | mark.selwyn@wilmerhale.com |
| JACK W. LONDEN (CA SBN 85776) | WILMER CUTLER PICKERING |
| jlonden@mofo.com | HALE AND DORR LLP |
| RACHEL KREVANS (CA SBN 116421) | 950 Page Mill Road |
| rkrevans@mofo.com | Palo Alto, California 94304 |
| RUTH N. BORENSTEIN (CA SBN 133797) | Telephone: (650) 858-6000 |
| rborenstein@mofo.com | Facsimile: (650) 858-6100 |
| ERIK J. OLSON (CA SBN 175815) | |
| ejolson@mofo.com | |
| MORRISON & FOERSTER LLP | |
| 425 Market Street | |
| San Francisco, California  94105-2482 | |
| Telephone:  (415) 268-7000 | |
| Facsimile:  (415) 268-7522 | |

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 12-cv-00630-LHK (PSG)<br><br>**DECLARATION OF JAMES STORER, PH.D. IN SUPPORT OF APPLE INC.'S CLAIM CONSTRUCTION BRIEF REGARDING THE "MEANS FOR TRANSMISSION" LIMITATION OF CLAIM 15 OF U.S. PATENT NO. 5,579,239** |

I, James Storer, declare as follows:

1. I have been engaged by counsel for Apple, Inc. as an expert in connection with this litigation. I submit this declaration in support of Apple's Claim Construction Brief Regarding the "Means For Transmission" Limitation of Claim 15 of U.S. Patent No. 5,579,239. I expect to testify at trial, and am prepared to testify at trial or hearing regarding the matters discussed in this declaration if asked to do so.

2. I am currently a professor of computer science at Brandeis University. I have worked, taught, consulted, and written in the field of computer science, including work relating to data compression, image processing, video processing, and data communications / transmission, for more than thirty years.

3. I received my B.A. in Mathematics and Computer Science from Cornell University in 1975, my Masters in Electrical Engineering and Computer Science from Princeton University in 1977, and my Ph.D. in Electrical Engineering and Computer Science from Princeton University in 1979.

4. I have reviewed U.S. Patent No. 5,579,239, including claim 15 and the specification, and the file history for the '239 patent. I understand that the parties agree that the "means for transmission of said captured video over a cellular frequency" limitation of claim 15 is governed by 35 U.S.C. § 112, ¶ 6, and that the claim must be construed to cover the corresponding structure described in the specification. It is my understanding that the parties agree that the structure for the limitation includes "one or modems connected to one or more cellular telephones."

6. In my opinion, the structure for "means for transmission" also includes "software performing a software sequence of initializing one or more communications ports on the remote unit, obtaining the stored data file, and transmitting the stored data file."

7. The specification explains that "[t]ransmission" of the video is "accomplished" by selecting the TRANSFER button 26 associated with the box on the screen (shown in Figure 2 of the patent) that shows "the first frame of video of the file to be

transmitted." Selection of the TRANSFER button 26 "initiates the transfer software sequence B," which "contains all of the instructions necessary instructions" to initialize the communications ports on the remote, obtain the stored data file, and transmit the split data file. ('239 patent, 8:17-30.) Transfer software sequence B is "called for each communications port" on the remote unit. Each communications port interfaces with a modem. (*Id*. at 8:38-42.) This software sequence is the only description in the patent of how transmission is initiated and accomplished through the interaction between software and hardware.

8. Throughout the specification, the captured video is also described as stored in a data file. For example, the specification explains that "it is the purpose of the present invention to provide a method and means for capturing full-color, full-motion audio/video signals, digitizing and compressing the signals into a digitized data file." ('239 patent at 2:26-29.) The Summary of the Invention describes this process:

> The video capture card takes the audio/visual signal, digitizes it into a computer data file, and compresses that data file. Once digitized and compressed, the data file is captured in the computer's memory by a capture module on the video capture card. A software sequence then instructs the computer central processing unit to store the captured data file on the computer's hard disk drive.

(*Id*. at 2:66-3:5.)

9. The file history confirms that the video is stored in a data file. In response to a rejection of claim 1 over U.S. Patent No. 5,062,136 to Gattis, the applicants argued that Gattis "only contemplates an uninterrupted, continuous stream of information digitized on a line by line of resolution basis" and "does not contemplate the creation of full-motion composite signal video information into digitized files which can be stored, transmitted, played or replayed. This is a very significant difference. . . . Gattis does not disclose the creation of a data file as required by Applicants' claims." (Selwyn Decl., Ex. 2 ['239 File History] at 10-11.) Gattis is directed to a video teleconferencing system and does not store video in a data file. The applicants applied these arguments to new claims that included

claim 15. (*Id*. at 12 ("The arguments contained herein in response to the rejections under 35 U.S.C. §112, 102(a) and 103 apply to new claims 16-20 [issued claims 12-16].").

10. The required structure for "means for transmission" does not include "cellular radio transmitters." The specification does not disclose "cellular radio transmitters" or "modems connected to cellular radio transmitters." The only hardware structure disclosed for "transmission" "over a cellular frequency" is "one or more modems connected to one or more cellular telephones." ('239 patent at 4:25-27 ("The remote unit also has up to four computer interfaces such as modems, each connected to a cellular telephone."), 8:10-11 ("Each modem interfaces through a different communications port.").

11. Moreover, the specification explains that "radio transmitters" are used where there is no cellular service – i.e., where "cellular radio transmitters" could not operate: "In areas which are inaccessible to standard telephone lines and outside cellular telephone 'cell,' files can be transmitted using radio frequencies. In order to accomplish this, the cellular telephones in the remote are replaced with radio transmitters." ('239 patent, 9:37-42.) Thus, the disclosure of "radio transmitters" excludes "cellular radio transmitters."

I declare under penalty of under the laws of the United States that the foregoing is true and correct.

Executed on this 21st day of March, 2014, in Lincoln, MA.

Dated: March 21, 2014

_____
James Storer, Ph.D.