[COUNSEL LISTED ON SIGNATURE PAGES]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendant. | Case No.    12-cv-00630-LHK (PSG)<br><br>**REVISED PROPOSED JOINT FINAL JURY INSTRUCTIONS WITH OBJECTIONS** |

1    The parties provide the accompanying revised proposed final jury instructions in

2    accordance with the Court's March 30, 2014 Order (Dkt. No. 1548).  Pursuant to the Stipulation

3    and Order re Submission of Proposed Final Jury Instructions (Dkt. No. 1313), the parties

4    expressly preserve and do not waive any of their rights and objections with respect to (1) jury

5    instructions previously submitted by any party but not given by the Court in Case No. 11-CV-

6    01846 ("the 1846 Case"); (2) any of their rights and objections with respect to jury instructions

7    previously given by the Court in the 1846 Case, and including any such instructions included

8    herein in whole or in part; or (3) jury instructions stemming from orders from the first trial and

9    post-trial proceedings the 1846 Case, including but not limited to the March 1, 2013 Order re:

10   Damages that granted Samsung's motion for a new trial.  For Apple, those objections and

11   proposed instructions include but are not limited to those set forth in the 1846 Case Dkt. Nos.

12   895-1, 1047, 1231, 1232, 1241, 1264, 1279, 1279-1, 1327, 1329, 1402, 1426, 1591, 1640, 1641,

13   1693, 1694, 1803, 1810, 1811, 1815, 1822, 1830, 1834, 1845, 1856, 1861, 1863, 1883, 1884,

14   2260, 2513, 2707, 2724, 2768 as well as any objections or proposed instructions stated orally

15   before the Court (*see, e.g.*, 7/24/12 Hr'g Tr. 32-39; 7/27/12 Hr'g Tr. 4, 39-51, 72-76; Dkt. No.

16   1621 at 4-45; Dkt. No. 1695 at 1642-43; Dkt. No. 1998 at 3730-3940; Dkt. No. 2562 at 111-19;

17   Dkt. No. 2738 at 11-15; Dkt. Nos. 2738 and 2739 at 307-20; Dkt. No. 2739 at 416-18; Dkt. No.

18   2841 at 941-45, 1055-57; Dkt. No. 2843 at 1210-35; Dkt. No. 2844 at 1403-15).  For Samsung,

19   those objections and proposed instructions include but are not limited to those set forth in the

20   1846 Case Dkt. Nos. 987-03, 1221, 1231, 1232, 1238, 1264, 1279, 1279-01, 1329, 1388, 1389,

21   1423, 1426, 1428, 1591, 1600, 1622, 1656, 1670, 1693, 1694, 1800, 1809, 1812, 1821, 1821-01,

22   1831, 1846, 1858, 1859, 1860, 1862, 1867, 1883, 1892, 2241, 2513, 2707,  2724, 2768, as well as

23   any objections or proposed instructions stated orally before the Court (*see e.g.*, 7/24/12 Hr'g Tr.

24   32-39; 7/27/12 Hr'g Tr. 4, 39-51, 72-76; Dkt. No. 1621 at 4-45; Dkt. No. 1695 at 1642-43; Dkt.

25   No. 1998 at 3730-3940; 10/23/13 Hr'g Tr. 1-27, 108-12; Dkt. No. 2562 at 111-19; Dkt. No. 2738

26   at 11-15; Dkt. Nos. 2738 and 2739 at 307-20; Dkt. No. 2739 at 416-18; Dkt. No. 2841 at 941-45,

27   1055-57; Dkt. No. 2843 at 1210-35; Dkt. No. 2844 at 1403-15).  The parties incorporate by

28

1  reference all of their previously submitted proposed jury instructions and objections to jury

2  instructions in the 1846 Case.

3      Attached as Exhibit A is the parties' revised proposed set of undisputed final jury

4  instructions.

5      Attached as Exhibit B is the parties' revised proposed set of disputed final jury

6  instructions.

7      Attached as Exhibit C is a redline against Dkt. 1458.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: April 1, 2014

By: */s/Mark D. Selwyn*

Attorney for Plaintiff and Counterclaim-Defendant

APPLE INC.

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

HAROLD J. McELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
JACK W. LONDEN (CA SBN 85776)
jlonden@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
RUTH N. BORENSTEIN (CA SBN 133797)
rborenstein@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
William.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

By: *s/ Victoria F. Maroulis*

Attorney for Defendants and Counterclaim-Plaintiffs

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA,
INC., AND SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC

CHARLES K. VERHOEVEN (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
KEVIN A. SMITH (Bar No. 250814)
kevinsmith@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

KEVIN P.B. JOHNSON (Bar No. 177129 (CA);
2542082 (NY))
kevinjohnson@quinnemanuel.com
VICTORIA F. MAROULIS (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

WILLIAM C. PRICE (Bar No. 108542)
williamprice@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# TABLE OF CONTENTS

**Page**

GENERAL CIVIL INSTRUCTIONS.................................................................................. 6

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 1 DUTY OF JURY........................... 7

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2 BURDEN OF PROOF—
PREPONDERANCE OF THE EVIDENCE........................................................... 8

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3 BURDEN OF PROOF—
CLEAR AND CONVINCING EVIDENCE............................................................ 9

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4 TWO OR MORE
PARTIES—DIFFERENT LEGAL RIGHTS ........................................................ 10

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5 WHAT IS EVIDENCE ................. 11

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7 EVIDENCE FOR LIMITED
PURPOSE ............................................................................................... 12

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9 CHARTS AND
SUMMARIES IN EVIDENCE......................................................................... 13

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10 DIRECT AND
CIRCUMSTANTIAL EVIDENCE .................................................................... 14

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11 CREDIBILITY OF
WITNESSES.............................................................................................. 15

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12 IMPEACHMENT
EVIDENCE—WITNESS ............................................................................... 16

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13 TAKING NOTES...................... 17

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14 DEPOSITION IN LIEU OF
LIVE TESTIMONY ..................................................................................... 18

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15 USE OF
INTERROGATORIES OF A PARTY................................................................. 19

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 16 EXPERT OPINION ................... 20

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17 USE OF DEVICES
DURING DELIBERATIONS............................................................................ 21

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19 DUTY TO DELIBERATE.......... 26

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 20 COMMUNICATION WITH
COURT .................................................................................................... 27

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 21 RETURN OF VERDICT ............ 28

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 23 PATENTS—
INFRINGEMENT BURDEN OF PROOF ........................................................... 30

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26 PATENTS—LITERAL
INFRINGEMENT......................................................................................... 31

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 27 PATENT INFRINGEMENT
OF MEANS-PLUS-FUNCTION CLAIMS – '239 PATENT, CLAIM 15 ..................... 32

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 29 PATENTS—
INVALIDITY—BURDEN OF PROOF .............................................................. 33

# TABLE OF CONTENTS
### (continued)

**Page**

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34 PATENTS— OBVIOUSNESS ................................................................................................... 34

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36 PATENT DAMAGES— BURDEN OF PROOF ............................................................................................. 36

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 40 PATENT DAMAGES— LOST PROFITS—AMOUNT OF PROFIT ............................................................ 37

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 42 PATENT DAMAGES— REASONABLE ROYALTY—ENTITLEMENT ..................................................... 38

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 48 MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE ............................. 39

GENERAL CIVIL INSTRUCTIONS ................................................................................. 41

PROPOSED FINAL JURY INSTRUCTION NO. 6 (APPLE) WHAT IS NOT EVIDENCE .............................................................................................................. 42

PROPOSED FINAL JURY INSTRUCTION NO. 6 (SAMSUNG) WHAT IS NOT EVIDENCE .............................................................................................................. 44

PROPOSED FINAL JURY INSTRUCTION NO. 8 (APPLE) CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE ............................................................. 46

PROPOSED FINAL JURY INSTRUCTION NO. 8 (SAMSUNG) CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE ......................................................... 47

PROPOSED FINAL JURY INSTRUCTION NO. 18 (APPLE) SUMMARY OF CONTENTIONS .................................................................................................... 48

PROPOSED FINAL JURY INSTRUCTION NO. 18 (SAMSUNG) SUMMARY OF CONTENTIONS .................................................................................................... 52

PROPOSED FINAL JURY INSTRUCTION NO. 22 (APPLE) PATENTS— INTERPRETATION OF CLAIMS ....................................................................... 55

PROPOSED FINAL JURY INSTRUCTION NO. 22 (SAMSUNG) PATENTS— INTERPRETATION OF CLAIMS ....................................................................... 57

PROPOSED FINAL JURY INSTRUCTION NO. 24 (APPLE) PATENTS—DIRECT INFRINGEMENT .................................................................................................. 60

PROPOSED FINAL JURY INSTRUCTION NO. 24 (SAMSUNG) PATENTS—DIRECT INFRINGEMENT .................................................................................................. 62

PROPOSED FINAL JURY INSTRUCTION NO. 25 (APPLE) PATENTS—DIRECT INFRINGEMENT .................................................................................................. 64

PROPOSED FINAL JURY INSTRUCTION NO. 25 (SAMSUNG) DIRECT INFRINGEMENT .................................................................................................. 66

PROPOSED FINAL JURY INSTRUCTION NO. 25A (SAMSUNG) DIRECT INFRINGEMENT OF THE '959 AND '414 PATENTS ................................................. 68

PROPOSED FINAL JURY INSTRUCTION NO. 26C (SAMSUNG) APPARATUS CLAIMS--LITERAL INFRINGEMENT ............................................................... 70

PROPOSED FINAL JURY INSTRUCTION NO. 32 (APPLE) PATENTS— ANTICIPATION .................................................................................................... 72

1

2

# TABLE OF CONTENTS
## (continued)

**Page**

3    PROPOSED FINAL JURY INSTRUCTION NO. 32 (SAMSUNG) ANTICIPATION.............. 74

4    PROPOSED FINAL JURY INSTRUCTION NO. 32A (SAMSUNG) ANTICIPATION
     OF THE '959 AND '414 PATENTS .......................................................................... 76

5    PROPOSED FINAL JURY INSTRUCTION NO. 33 (APPLE) PATENTS—
     STATUTORY BARS ................................................................................................ 78

6
     PROPOSED FINAL JURY INSTRUCTION NO. 33 (SAMSUNG) PATENTS—
7    STATUTORY BARS ................................................................................................ 80

8    PROPOSED FINAL JURY INSTRUCTION NO. 37 (APPLE) PATENT DAMAGES —
     LOST PROFITS — GENERALLY ........................................................................... 82

9    PROPOSED FINAL JURY INSTRUCTION NO. 37 (SAMSUNG) PATENT DAMAGES
     — LOST PROFITS — GENERALLY ...................................................................... 84

10   PROPOSED FINAL JURY INSTRUCTION NO. 38 (APPLE) PATENT DAMAGES—
     LOST PROFITS—FACTORS TO CONSIDER ....................................................... 86

11   PROPOSED FINAL JURY INSTRUCTION NO. 38 (SAMSUNG) PATENT
12   DAMAGES—LOST PROFITS—FACTORS TO CONSIDER.................................. 88

     PROPOSED FINAL JURY INSTRUCTION NO. 39 (APPLE) PATENT DAMAGES—
13   LOST PROFITS—AVAILABILITY OF ACCEPTABLE NON-INFRINGING
     ALTERNATIVES..................................................................................................... 90

14   PROPOSED FINAL JURY INSTRUCTION NO. 41 (APPLE) PATENT DAMAGES—
15   LOST PROFITS—MARKET SHARE ..................................................................... 93

16   PROPOSED FINAL JURY INSTRUCTION NO. 41 (SAMSUNG) PATENT
     DAMAGES—LOST PROFITS—MARKET SHARE ............................................... 94

17   PROPOSED FINAL JURY INSTRUCTION NO. 43 (APPLE) PATENT DAMAGES—
     REASONABLE ROYALTY—DEFINITION............................................................ 95

18   PROPOSED FINAL JURY INSTRUCTION NO. 43 (SAMSUNG) PATENT
19   DAMAGES—REASONABLE ROYALTY—DEFINITION........................................ 98

     PROPOSED FINAL JURY INSTRUCTION NO. 44 (APPLE) PATENT DAMAGES—
20   DATE OF COMMENCEMENT—PRODUCTS....................................................... 101

21   PROPOSED FINAL JURY INSTRUCTION NO. 44 (SAMSUNG)_ PATENT
     DAMAGES—DATE OF COMMENCEMENT—PRODUCTS................................... 102

22   PROPOSED FINAL JURY INSTRUCTION NO. 45 (APPLE) PATENTS—INDUCING
     PATENT INFRINGEMENT ................................................................................... 105

23   PROPOSED FINAL JURY INSTRUCTION NO. 45 (SAMSUNG) INDUCING PATENT
     INFRINGEMENT................................................................................................... 107

24   PROPOSED FINAL JURY INSTRUCTION NO. 46 (APPLE) CONTRIBUTORY
25   PATENT INFRINGEMENT ................................................................................... 109

26   PROPOSED FINAL JURY INSTRUCTION NO. 46 (SAMSUNG) CONTRIBUTORY
     PATENT INFRINGEMENT ................................................................................... 110

27   PROPOSED FINAL JURY INSTRUCTION NO. 47 (APPLE) WILLFUL PATENT
     INFRINGEMENT................................................................................................... 111

28

1

## TABLE OF CONTENTS
**(continued)**

2

**Page**

3

PROPOSED FINAL JURY INSTRUCTION NO. 47 (SAMSUNG) WILLFUL PATENT
INFRINGEMENT ........................................................................................................ 112

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A
# PROPOSED UNDISPUTED INSTRUCTIONS

# GENERAL CIVIL INSTRUCTIONS

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 1**
**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. Do not let personal likes or dislikes, opinions, prejudices, bias, or sympathy influence your decision. Bias includes bias for or against any party or any witness based upon nationality, race or ethnicity. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.


Source:

11-CV-01846 Final Instruction No. 1 (Dkt. No. 1903 at 8).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2**
**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Source:

11-CV-01846 Final Instruction No. 2 (Dkt. No. 1903 at 9).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3**
**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

2

3
When a party has the burden of proving any claim or defense by clear and convincing evidence, it
means you must be persuaded by the evidence that the claim or defense is highly probable.  This
4
is a higher standard of proof than proof by a preponderance of the evidence.

5
You should base your decision on all of the evidence, regardless of which party presented it.
6

7
Source:
8

9
11-CV-01846 Final Instruction No. 3 (Dkt. No. 1903 at 10).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4
TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

3

4

You should decide the case as to each party separately.  Unless otherwise stated, the instructions apply to all parties.

5

6

Source:

7

11-CV-01846 Final Instruction No. 4 (Dkt. No. 1903 at 11).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5**
**WHAT IS EVIDENCE**

The trial is now over.  The evidence you are to consider in deciding what the facts are consists of:

      1.     the sworn testimony of any witness;

      2.     the exhibits which are received into evidence; and

      3.     any facts to which the lawyers have agreed.

Source:

11-CV-01846 Final Instruction No. 5 (Dkt. No. 1903 at 12).

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7**
**EVIDENCE FOR LIMITED PURPOSE**

3

4

Some evidence may have been admitted for a limited purpose only.  You must consider it only for that limited purpose and for no other.

5

6

Source:

7

11-CV-01846 Final Instruction No. 7 (Dkt. No. 1903 at 14).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9**
**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  You may use those charts and summaries as evidence, even though the underlying documents and records are not here.  You should give them only such weight as you think they deserve.

Source:

11-CV-01846 Final Instruction No. 9 (Dkt. No. 1903 at 16).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.


Source:

11-CV-01846 Final Instruction No. 10 (Dkt. No. 1903 at 17).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness said, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testified about it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case and any bias or prejudice;

(5)    whether other evidence contradicted the witness's testimony;

(6)    the reasonableness of the witness's testimony in light of all the evidence; and

(7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Source:

11-CV-01846 Final Instruction No. 11 (Dkt. No. 1903 at 18).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12**
**IMPEACHMENT EVIDENCE—WITNESS**

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Source:

11-CV-01846 Final Instruction No. 12 (Dkt. No. 1903 at 19).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13**
**TAKING NOTES**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.


Source:

11-CV-01846 Final Instruction No. 13 (Dkt. No. 1903 at 20).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Source:

11-CV-01846 Final Instruction No. 14 (Dkt. No. 1903 at 21).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15**
**USE OF INTERROGATORIES OF A PARTY**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

Source:

11-CV-01846 Final Instruction No. 15 (Dkt. No. 1903 at 22).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 16**
**EXPERT OPINION**

2

3   Some witnesses, because of education or experience, were permitted to state opinions and the
    reasons for those opinions.

4

5   Opinion testimony should be judged just like any other testimony.  You may accept it or reject it,
    and give it as much weight as you think it deserves, considering the witness's education and
6   experience, the reasons given for the opinion, and all the other evidence in the case.

7

8   Source:

9   11-CV-01846 Final Instruction No. 16 (Dkt. No. 1903 at 23).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17**
**USE OF DEVICES DURING DELIBERATIONS**

**Device Handling Directions**

The physical devices you received are evidence in this trial.

You may use them in your deliberations but must not alter or modify the devices in any way.

Some of the devices have SIM cards in their packaging.  These SIM cards are not to be inserted into the phones.

Some of the devices have a mobile data connection.

Others must first be connected to the Court's Wi-Fi network to access the Internet.

Once connected, you must decline any software update notifications that may be presented to you.

You also must not download any content, such as apps, music, photographs, or games, to the devices.

1    *Connecting to the Internet*

2    To connect a device to the Court's Wi-Fi network, select "USDCSJ01" from the list of available
3    wireless networks, as depicted below.

4
5
6
7                        
8
9
10
11
12
13
14
15

16    From the Applications menu, select the Web Browser application.
17
18
19
20
21                        
22
23
24
25
26
27
28

From the Court's Wi-Fi log in page, scroll to the bottom and click on the blue "Connect!" button.

*Declining System Update Notifications*

Some devices may display a "System update" notification like the ones below.





If you see such a screen, you must decline the request to update the system.  Select "Install later" or press the "home" or "back" button to exit the notification screen.



Source:

11-CV-01846 Final Instruction No. 17 (Dkt. No. 1903 at 24-28).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19**
**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source:

11-CV-01846 Final Instruction No. 19 (Dkt. No. 1903 at 31).

1
2

## JOINT PROPOSED FINAL JURY INSTRUCTION NO. 20
## COMMUNICATION WITH COURT

3
4
5
6
7
8

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

9

Source:

10

11-CV-01846 Final Instruction No. 20 (Dkt. No. 1903 at 32).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 21**
**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

Source:

11-CV-01846 Final Instruction No. 21 (Dkt. No. 1903 at 33).

1

**PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 23**
**PATENTS—INFRINGEMENT BURDEN OF PROOF**

3

4

5

I will now instruct you on the rules you must follow in deciding whether either Apple or Samsung (or both) has proven that the other side has infringed one or more of the asserted claims of the asserted patents.  To prove infringement of any claim, the patent holder must persuade you by a preponderance of the evidence that the alleged infringer has infringed that claim.

6

7

Source:

8

Adapted from 11-CV-01846 Final Instruction No. 23 (Dkt. No. 1903 at 36).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26
PATENTS—LITERAL INFRINGEMENT**

3
4
5
6

To decide whether each accused Samsung and Apple product literally infringes a claim of an asserted patent, you must compare the product with the patent claim and determine whether every requirement of the claim is included in that product.  If so, the Samsung or Apple product in question literally infringes that claim.  If, however, a particular Samsung or Apple product does not have every requirement in the patent claim, that product does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

7
8
9

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in the accused product.  The fact that a particular accused Samsung or Apple product also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

10

Source:

11

Adapted from 11-CV-01846 Final Instruction No. 26 (Dkt. No. 1903 at 39).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 27
PATENT INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS – '239 PATENT,
CLAIM 15**

I will now describe the separate rules that apply to the "means-plus-function" requirement that is used in claim 15 of the '239 patent. A means-plus-function requirement covers the specific structure disclosed in a patent specification for performing the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil and paper or even the human brain. But because the phrase is a means-plus-function requirement, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data.

For purposes of this trial, I have interpreted the means-plus-function requirement for you and identified the structure in the patent specification that corresponds to the means-plus-function requirement. Specifically, I have determined that:

> "One or more modems connected to one or more cellular telephones, and software performing a software sequence of initializing one or more communications ports on said apparatus, obtaining a cellular connection, obtaining said captured video, and transmitting said captured video" is the structure that performs the "transmission of said captured video over a cellular frequency" function identified in the means-plus-function requirement of claim 15 of the '239 patent.

In deciding if Samsung has proven that Apple's product includes structure covered by a means-plus-function requirement, you must first decide whether the product has any structure that performs the function I just described to you. If not, the claim containing that means-plus-function requirement is not infringed.

If you find that the Apple accused product does have structure that performs the claimed function, you must then determine whether that structure is the same as the structure I have identified in the specification. If they are the same, the means-plus-function requirement is satisfied by that structure of the accused product. If all the other requirements of the claim are satisfied, the accused product infringes the claim.

Source:

N.D. Cal. Model Patent Jury Instr. B.3.5; 35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 29
PATENTS—INVALIDITY—BURDEN OF PROOF**

2

3    I will now instruct you on the rules you must follow in deciding whether Samsung has proven that
     claims of Apple's patents are invalid.  Apple does not contend that Samsung's patents are invalid.

4    Before discussing the specific rules, I want to remind you about the standard of proof that applies
     to this defense.  To prove invalidity of any patent claim, Samsung must persuade you by clear and

5    convincing evidence that the claim is invalid.

6

7    Source:

8    Adapted from 11-CV-01846 Final Instruction No. 29 (Dkt. No. 1903 at 42) and N.D. Cal. Model
     Patent Jury Instr. B.4.1.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34**
**PATENTS—OBVIOUSNESS**

2

3   Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have
    been obvious to a person of ordinary skill in the field at the time of invention.  This means that
4   even if all of the requirements of the claim cannot be found in a single prior art reference that
    would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in
5   the field who knew about all this prior art would have come up with the claimed invention.

6   The ultimate conclusion of whether a claim is obvious should be based upon your determination
    of several factual decisions.

7

8   First, you must decide the level of ordinary skill in the field that someone would have had at the
    time the claimed invention was made.  In deciding the level of ordinary skill, you should consider
9   all the evidence introduced at trial, including:

10          (1)     the levels of education and experience of persons working in the field;

11          (2)     the types of problems encountered in the field; and

12          (3)     the sophistication of the technology.

13  Second, you must decide the scope and content of the prior art.  The parties disagree as to
    whether certain prior art references should be included in the prior art you use to decide the
14  validity of claims at issue.  In order to be considered as prior art to a particular patent at issue
    here, these references must be reasonably related to the claimed invention of that patent.  A
15  reference is reasonably related if it is in the same field as the claimed invention or is from another
    field to which a person of ordinary skill in the field would look to solve a known problem.
16

17  Third, you must decide what differences, if any, existed between the claimed invention and the
    prior art.
18

19  Finally, you should consider any of the following factors that you find have been shown by the
    evidence:

20          (1)     commercial success of a product due to the merits of the claimed invention;

21          (2)     a long felt need for the solution provided by the claimed invention;

22          (3)     unsuccessful attempts by others to find the solution provided by the claimed
23                  invention;

24          (4)     copying of the claimed invention by others;

25          (5)     unexpected and superior results from the claimed invention;

26          (6)     acceptance by others of the claimed invention as shown by praise from others in
27                  the field or from the licensing of the claimed invention; and

28

1

2

    (7)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

3

4

5

6

The presence of any of factors 1-6 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factor 7 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

7

8

9

10

11

12

13

14

15

16

17

18

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether the alleged infringer has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

19

20

21

22

Source:

Adapted from 11-CV-01846 Final Instruction No. 33 (Dkt. No. 1903 at 46-47).

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36**
**PATENT DAMAGES—BURDEN OF PROOF**

I will instruct you about the measure of damages for claims of patent infringement.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that any party infringed any valid and enforceable claim of the other side's patents, you must then determine the amount of money damages to be awarded to the patent holder to compensate it for the infringement.

The amount of those damages must be adequate to compensate the patent holder for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Each patent holder has the burden to persuade you of the amount of its damages.  You should award only those damages that the patent holder proves it suffered by a preponderance of the evidence.  While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.   Neither patent holder is entitled to damages that are remote or speculative.

**Source:**

Adapted from Case No. 11-CV-01846 Final Instruction No. 35 (Dkt. No. 1903 at 49).

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 40**
**PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT**

3

4

Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.

5

6

Source:

7

8

Adapted from 11-CV-01846 Final Instruction No. 38 (Dkt. No. 1903 at 52).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 42
PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT**

2

3

Both Apple and Samsung seek a reasonable royalty for the infringement of their respective patents.

4

5

If Apple has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing Samsung sales for which Apple has not been awarded lost profits damages.

6

7

Samsung does not make a claim for lost profits. Samsung should be awarded a reasonable royalty for all infringing Apple sales.

8

9

Source:

10

Adapted from 11-CV-01846 Final Instruction No. 40 (Dkt. No. 1903 at 54).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 48
MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE**

2

3

You should award any remedy to which a party has proven it is entitled with respect to each sale of an accused smartphone or tablet, except that you should not award a party twice for the same sale of any accused smartphone or tablet. This means that if you award lost profits for the sale of a certain number of accused smartphones or tablets, you may not also award reasonable royalties for those same sales. If you award reasonable royalties for the sale of a certain number of accused smartphones or tablets, you may not award lost profits for those same sales.

4

5

6

You do not have to use the same theory to calculate damages for every sale, however. For example, an award may be split between lost profits for some sales and a reasonable royalty for the remainder of sales.

7

8

For any sale where you measure damages by a reasonable royalty or lost profits, you may include royalty amounts for each patent that you find valid and infringed by the sale or lost profits on that sale.

9

10

If a sale is awarded one form of monetary recovery, that same sale cannot be awarded another form of monetary recovery.

11

12

**Source:**

13

Adapted from Case No. 11-CV-01846 Final Instruction No. 74 (Dkt. No. 1903 at 96).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B
# PROPOSED DISPUTED
# INSTRUCTIONS

**GENERAL CIVIL INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 6 (Apple)**
**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits that were received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are all intended to help you interpret the evidence.  But these arguments and statements are not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)  Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4)  Demonstrations of the purported functionality of alleged prior art systems are not evidence.  In determining whether a patent claim is invalid you should not be influenced by these demonstrative systems, and your decision should be based solely on your interpretation of the evidence as it relates to the alleged prior art.

(5)  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Source:

Adapted from 11-CV-01846 Final Instruction No. 6 (Dkt. No. 1903 at 13).

**Samsung's Objections:**

Apple proposes departing from the 11-cv-01846 instructions by adding the fourth paragraph, but no changes in the law or other changes in circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's proposed change is not based on a change in

1  law and there is no other compelling reason to overturn the heavy presumption in favor of using
2  instructions from the first trial.

3  In addition, Apple's new fourth paragraph is in conflict with other instructions, is contrary to
   precedent, and is one-sided and prejudicial.  Apple seeks to prohibit Samsung from showing prior
4  art software (even software that is *stipulated* to be prior art) to the jury.  This is nothing more than
   a rehash of Apple's rejected motion for summary judgment and its rejected motion for *Daubert*
5  exclusion.  *See* Dkt. 1150 at 27-29; Dkt. 1325 at 3.  Moreover, it is false to say that
   demonstratives are "not evidence" and "may not [be] consider[ed]."  Demonstrative evidence *is* a
6  category of evidence, and it can help juries understand complex technical subject matter.  *See*
   *Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 1000 (N.D. Cal. 2009) ("the case presented complex
7  technical issues and [] the jury benefitted at trial from the use of demonstrative evidence.")
   Indeed, as Final Jury Instruction No. 8 notes, though demonstratives are not themselves "evidence
8  or proof *of facts*," they may nevertheless "help explain the contents of books, records, documents,
   or other evidence in the case."  Apple's instruction that the jury should not consider
9  demonstratives misleadingly suggests that demonstratives should be ignored, not considered, and
   is therefore in conflict with Final Jury Instruction No. 8.  Additionally, Apple's instruction
10 conflicts with controlling Federal Circuit precedent.  Particularly when the prior art is a piece of
   software and the claims recite a computer readable medium (as is the case with the asserted
11 claims of Apple's '959 and '414 patents), the Federal Circuit has opined that an "expert's
   *demonstrative* data setup" was the "most telling *evidence*" of the instructions included in prior art
12 software.  *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013)
   (emphases added).  The expert in *Versata* "confirmed his theories that the accused software was
13 capable of performing the claimed functionality by making the software perform the function
   without modifying the software."  *Id.* at 1262.

14 Finally, Apple's instruction is one-sided, permitting the jury to consider demonstrations such as
15 videos or screenshots of the accused products for infringement purposes, but not allowing the jury
   to consider demonstrations of prior art for invalidity.

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 6 (Samsung)**
**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits that were received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are all intended to help you interpret the evidence.  But these arguments and statements are not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4)     Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 6 (Dkt. No. 1903 at 13).

**Apple's Objections:**

Apple's proposed instruction properly includes an instruction that demonstrative exhibits created during the litigation to illustrate the operation of alleged prior art systems may be used at trial but not introduced into evidence.  Apple's Motion *in Limine* No. 4 seeks to exclude "Demonstration Systems" Created by Samsung's Experts Related to Alleged Prior Art.  If granted, no such demonstrative exhibits will be used.  If, on the other hand, the outcome of the motion allows Samsung to use demonstrative exhibits that are not admitted into evidence, the jury should be so instructed.

Apple expects that Samsung will rely heavily on demonstrative exhibits to demonstrate not an existing, single piece of software, but rather describe combinations of elements from prior art that were never combined in actual prior art systems.  Samsung has no evidence that these "systems"—as Samsung's experts configured them—actually existed in the critical time period.  Apple expects Samsung to argue about the demonstrative exhibits as if they were themselves evidence of prior art systems, which they are not.

Absent a clear instruction to the jury, as proposed by Apple, that highlights that these demonstrations of the purported functionality of alleged prior art systems are not evidence, there

1   is serious risk that the jury will be misled into accepting the demonstrative exhibits as actual
2   evidence of prior art.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROPOSED FINAL JURY INSTRUCTION NO. 8 (Apple)**
**CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE**

Certain demonstratives, videos, charts, and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.

Source:

Adapted from 11-CV-01846 Final Instruction No. 8 (Dkt. No. 1903 at 15).

**Samsung's Objections:**

Apple proposes the addition of "demonstratives" and "videos" to the instruction that the Court gave in 11-cv-01846, but no changes in the law or other changes in circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 8 (Samsung)**
**CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE**

3

4

Certain charts and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.

5

**Source:**

6

7

Case No. 11-CV-01846 Final Instruction No. 8 (Dkt. No. 1903 at 15).

8

**Apple's Objections:**

9

10

11

Apple's proposed instruction differs from Samsung's proposal in that it includes "demonstratives" and "videos."  If, as Apple expects, demonstratives and videos that are not "charts and slides" are used but not introduced into evidence, the jury should be instructed that they are not evidence.  (*See also* Apple's objections to Samsung's Proposed Final Jury Instruction No. 6.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 18 (Apple)**
**SUMMARY OF CONTENTIONS**

I will now again summarize for you each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.

As I previously explained, Apple seeks money damages from Samsung Electronics Company ("SEC"), Samsung Electronics America, Inc.  ("SEA"), and Samsung Telecommunications America, LLC ("STA"), for allegedly infringing claim 9 of the '647 patent, claim 25 of the '959 patent, claim 20 of the '414 patent, claim 8 of the '721 patent, and claim 18 of the '172 patent.  Apple also argues that SEC actively induced SEA and STA to infringe the patents.  Apple also contends that Samsung's infringement has been willful.

I have already determined that the following Samsung devices infringe claim 18 of the '172 patent:  Admire, Galaxy Nexus, Galaxy Note (excluding one release), Galaxy SII (excluding one release), Galaxy SII Epic 4G Touch (excluding one release), Galaxy SII Skyrocket (excluding one release), and Stratosphere.  Samsung denies that it has infringed the asserted claims of Apple's other asserted patents from its other asserted patents and argues that, in addition, all of Apple's asserted patent claims are invalid.  Invalidity is a defense to infringement.

Samsung has also brought claims against Apple for patent infringement.  Samsung seeks money damages from Apple for allegedly infringing claim 27 of the '449 patent, and claim 15 of the '239 patent.  Samsung also contends that Apple's infringement has been willful.

Apple denies that it has infringed the claims asserted by Samsung.  Apple does not argue that Samsung's patents are invalid.  Therefore, you need only determine whether the '449 and '239 patents are infringed and whether that infringement has been willful.

In this case, Apple does not contend that it practices the '414, '172, or '959 patents, and Samsung does not contend that it practices the '449 patent.  Whether or not a patent owner practices a patent is irrelevant to whether the patent has been infringed.  A patent owner need not practice the patent itself in order to recover damages for patent infringement.

For each party's patent infringement claims against the other, the first issue you will have to decide is whether the alleged infringer has infringed the claims of the patent holder's patents and, for Apple's patents, you must also decide whether those patents are valid.  If you decide that any claim of either party's patents has been infringed and, for Apple's patents, is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

Source:

Adapted from 11-CV-01846 Final Instruction No. 18 (Dkt. No. 1903 at 29-30).

**Samsung's Objections**

**Apple's Instruction Regarding Willful Infringement.**  In Samsung's prior objections to Apple's proposed preliminary and final jury instructions, Samsung objected to Apple's omission of Samsung's allegation that Apple's infringement was willful. In the present filing, Apple has included Samsung's allegation that Apple's infringement was willful in order "to conform to the Court's tentative preliminary jury instructions." Apple's Objection to Samsung's Proposed Final Jury Instruction No. 18. However, Apple maintained its objection to this inclusion. *Id.*

As previously stated in Samsung's objections to Apple's proposed preliminary and final jury instructions, Samsung's allegations of willful infringement are proper and therefore Samsung maintains that any exclusion of this allegation would be improper.

**Apple's Instruction Regarding Infringement of the '172 Patent.**  In the third paragraph of Apple's version of this instruction, Apple proposes language concerning the Court's determination of infringement of the '172 patent that is prejudicial to Samsung.   Apple proposed a similar instruction in its preliminary jury instructions and Samsung objects for the same reasons it objected to Apple's preliminary instruction.  In particular, Apple expressly highlights Samsung's infringement of claim 18 of the '172 patent, but fails to mention the patent numbers or asserted claims of Apple's other asserted patents.  The primary purpose served by Apple's emphasis on the Court's determination of infringement is to prejudice Samsung in the eyes of the jury.  Indeed, the syntax of Apple's proposed instruction appears designed to suggest that the claims of the other Apple patents are likewise infringed.  Apple's proposed instruction may also create the incorrect impression that Samsung is not challenging the validity of the '172 patent and thus mislead the jury into thinking that liability on '172 patent is determined and all the jury has to decide is damages.  To the contrary, Samsung has asserted a defense and counterclaim of invalidity, which is something the jury has yet to decide.  Invalidity is a defense to infringement.

In contrast, Samsung's proposed instruction separates the discussion of the '172 patent from the remaining Apple patents.  This separation makes clear that the jury does not need to decide the issue of infringement of the '172 patent, but unlike Apple's proposal, it neither suggests an infringement result as to the remaining Apple patents nor implies that Samsung is not challenging validity of the '172 patent.  This portion of Samsung's proposed instruction is also consistent the court's tentative preliminary instruction (Dkt. 1384).

**Apple's Belated Revisions To Jointly-Submitted Instruction Regarding Apple's Non-Practice of the '414, '172 and '959 patents.**  The deadline to propose final jury instructions was February 25, 2014.  (Dkt. No. 1158.)  On March 5, 2014, the Court further ordered that no later than March 7, the parties "file either a stipulation or competing proposals as to how to inform the jury that Apple does not practice the claims of the '414, '172, and '959 Patents."  (Dkt. No. 1398 at 3.)  The parties negotiated for two days, and after multiple exchanges, jointly agreed to the following instruction to both the preliminary and the final jury instructions in this case: "In this case, Apple does not contend that it practices the '414, '172, or '959 patents, and Samsung does not contend that it practices the '449 patent." (Dkt. No.  1418.)

The parties' joint March 7 filing was a compromise reflecting many rounds of negotiation. One of the sentences Apple now seeks to add to the final jury instructions – regarding new instructions for the calculation of damages – was specifically proposed by Apple, discussed by the parties, and then withdrawn by Apple prior to the joint March 7 filing. (3/7/2014 Email from N. Sabri to P. Curran; 3/7/2013 Email from E. Olson to P. Curran.) Samsung objected to the addition of the language Apple now seeks to re-insert, as it is an incomplete statement of the law and could mislead the jury into believing that non-practice is irrelevant to a variety of issues – including the appropriate calculation of damages, the consideration of *Georgia-Pacific* factors, and the analysis of various secondary considerations, including copying and commercial success. Rather than submit extended competing instructions from Samsung on these issues to ensure that the jury was not confused, the parties agreed that the appropriate insert for the March 7 filing should be limited to explaining the parties' contentions on practice. In exchange for withdrawing the materials Apple now seeks to re-insert, Samsung also agreed that Apple could include a reference to Samsung's asserted '449 patent. This patent was not addressed by the Court's March 5 Order or the Pretrial Conference; rather, Samsung sought to amend its infringement contentions in 2013 to add that it practices the asserted claim of '449 but Judge Grewal denied the motion to amend as Samsung products do practice the '449 patent. Samsung agreed to the inclusion of the '449 patent in this instruction solely to avoid unnecessarily burdening the Court with disputes and competing submissions on the eve of trial. If Apple seeks to belatedly re-open disputes and re-insert competing proposals, Samsung requests the court delete any reference the '449 patent, which was not subject to the Court's March 5 Order.

The Court's March 10 order instructed the Parties to file a redline of the existing jury instructions. (Dkt. No. 1422.) This Order did not authorize new proposed jury instructions – it merely ordered the parties to update existing instructions to reflect recent stipulations and case narrowing, including to insert the language the parties jointly agreed to regarding Apple's non-practice of the '414, '172, and '959 patents. (Dkt. No. 1418, 1422.) Rather than redline the final jury instructions to reflect Apple's joint filing of March 7 (Dkt. No. 1418), Apple proposes new, additional language that Samsung never agreed to and that the parties never submitted to the Court in response to the Court's March 5 Order. This is just the most recent example of what the Court already noted at the last hearing – Apple repeatedly telling the Court that the issue of non-practice is resolved, then Apple resurrecting the issue and arguing that it is somehow not resolved. (3/5/2014 Hearing Tr. at 62:5-11, 63:14-21, 64:22-25.) Apple waived any such proposed additional instructions. Apple's new language also ignores this Court's March 10 Order on pretrial filings, which made clear that the parties' stipulation regarding dismissal of claims and counterclaims should not be used to expand pretrial filings, but only to eliminate what is no longer necessary. (Dkt. No. 1427 at 3.)

Finally, Apple's additional language is also highly misleading since it does not make it clear that whether the patent owner practices the patent may be highly probative of the amount of damages as well as issues of validity. In particular, whether the patent owner practices the patent may be probative of a reasonable royalty under at least *Georgia-Pacific* factors 8 and 10. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971) (including factor 8: "[e]stablished profitability of the products made under the patent, its commercial success  and its current popularity;" and factor 10 "[t]he nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefit of those who have used the invention.") Furthermore, whether a patent owner practices a patent is highly relevant to factors that must be

considered in a lost profits analysis, including whether there is demand for the patented product (Panduit 1) and the patented feature (Panduit 2). *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). And, the Supreme Court has held that in some circumstances the commercial success of a claimed invention may indicate that the invention was nonobvious. *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966). For all these issues, whether the patent owner practices the patent may be highly probative as whether the patent owner may recover damages as well as to the amount of any damages.

The Court need not and should not consider Apple's new revisions to the language that the parties jointly agreed to. If Apple is permitted to make substantive revisions, Samsung should be permitted to propose competing language on these issues, including instructions regarding the implications for non-practice on various other issues in the case, including commercial success, copying, and amount of damages.

1

## PROPOSED FINAL JURY INSTRUCTION NO. 18 (Samsung)
## SUMMARY OF CONTENTIONS

2

3

I will now again summarize for you each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.

4

5

As I previously explained, Apple seeks money damages from Samsung Electronics Company ("SEC") Samsung Electronics America Inc., ("SEA") and Samsung Telecommunications America LLC ("STA") for allegedly infringing claim 9 of the '647 patent, claim 25 of the '959 patent, claim 20 of the '414 patent, claim 8 of the '721 patent and claim 18 of the '172 patent. Apple also argues that SEC actively induced SEA and STA to infringe the patents.  Apple contends that Samsung's infringement has been willful.

6

7

8

9

Samsung denies that it has infringed the asserted claims of the '647, '959, '414 and '721 patents and argues that, in addition, the asserted claims are invalid.  Invalidity is a defense to infringement.

10

11

Your duty for Apple's '172 patent is different from the other patents.  The Court has already found that the Admire, Galaxy Nexus, Galaxy Note (excluding one release), Galaxy SII (excluding one release), Galaxy SII Epic 4G Touch (excluding one release), Galaxy SII Skyrocket (excluding one release) and Stratosphere infringe claim 18 of the '172 patent. You need only determine whether claim 18 is invalid.

12

13

14

Samsung has also brought claims against Apple for patent infringement. Samsung seeks money damages from Apple for allegedly infringing claim 27 of the '449 patent and claim 15 of the '239 patent.   Samsung also contends that Apple's infringement has been willful.

15

16

17

Apple denies that it has infringed the claims asserted by Samsung.  Apple does not argue that Samsung's patents are invalid.  Therefore, you need only determine whether the '449 and '239 patents are infringed and whether that infringement has been willful.

18

19

In this case, Apple does not contend that it practices the '414, '172, or '959 patents, and Samsung does not contend that it practices the '449 patent.

20

21

For each party's patent infringement claims against the other, the first issue you will be asked to decide is whether the alleged infringer has infringed the claims of the patent holder's patents and, for Apple's patents, you must also decide whether those patents are valid.  If you decide that any claim of either party's patents has been infringed and, for Apple's patents, is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

22

23

24

25

Source:

26

Adapted from Case No. 11-CV-01846 Final Instruction No. 18 (Dkt. No. 1903 at 29).

27

28

**Apple's Objections:**

**Samsung's Instruction Regarding Patents that Parties Do Not Contend They Practice (6th paragraph).** Consistent with the parties' joint filing (Dkt. 1418) submitted at the Court's direction, Apple's and Samsung's proposed instructions inform the jury that each party does not contend that it practices specified patents. Samsung's instruction, however, fails to inform the jury of the legal significance of the absence of such contentions. Jurors may believe erroneously that the statement regarding Apple's or Samsung's contentions affects each patent holder's ability to prove infringement or that the patent holder may not obtain damages for infringement. The law is to the contrary. *See, e.g.*, *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1547-48 (Fed. Cir. 1995). Samsung does not contend otherwise. Nor does it offer any good reason why the potential misimpression should be left uncorrected. The Court should give Apple's proposed instruction, which will ensure that the jury is informed about the meaning of a patent holder's failure to practice a patent, and avoid prejudice to Apple from confusion or mistaken assumptions by jurors about Apple's failure to offer proof that it practices three of its five Asserted Patents.

Samsung's procedural objections all lack merit.

*First*, Apple has not waived its right to propose a final instruction that addresses whether the failure to practice of a patent precludes a ruling in Apple's favor. The parties jointly proposed a specific sentence about the parties' contentions in both the preliminary and final instructions. Apple's proposed instruction includes that specific sentence. Apple did not agree that it would propose no other language related to this issue, and the joint proposal does not foreclose Apple from proposing its instruction. Apple did not state or suggest to Samsung in the parties' meet and confer concerning the proposed language that Apple would never propose additional language beyond the sentence to which the parties agreed.

*Second*, Apple's agreement to include only the jointly-proposed sentence in the parties' revision to the Court's Tentative Preliminary Jury Instruction No. 20 did not restrict what Apple could propose as to a final jury instruction on this topic. Final jury instructions explain to the jury the meaning of the evidence that has been presented. It is therefore common for final instructions to include more detail than preliminary instructions. Moreover, the Court has issued tentative preliminary instructions, having already reviewed the parties' competing proposals. In contrast, the final instructions remain in dispute and will be resolved with the benefit of the trial testimony at the charging conference.

*Third*, Apple's proposed statements about the significance of not practicing a patent are not untimely. Samsung's contention that Apple's proposed language is unrelated to the statement the parties stipulated to is specious. The agreed-to statement concerns what patents the parties do not contend they practice; Apple's additional language concerns the significance of the failure to practice. They plainly address related topics. Apple did include any statements about not practicing patents in its proposed final jury instructions filed on February 25, 2014. Now that the parties have agreed to revise their proposed final instructions to include a statement on that topic, Apple is timely including a full statement about that issue.

**Samsung's Instruction Regarding Apple's Alleged Willful Infringement (5th and 8th paragraphs):** As previously stated in its objections to Samsung's proposed preliminary and final jury instructions, Apple objects to the inclusion of any reference in the jury instructions that its alleged infringement of Samsung's patents was willful. Apple has included such language in this filing, however, to conform to the Court's tentative preliminary jury instructions.

1

**PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 22 (Apple)**
**PATENTS—INTERPRETATION OF CLAIMS**

Before you decide whether Apple or Samsung has infringed the claims of the other side's patents or whether the claims of Apple's patents are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

- **U.S. Patent No. 7,761,414**

The term "concurrently with" means "the synchronization thread and the non-synchronization thread are both active during an overlapping time interval."

- **U.S. Patent No. 6,847,959**

The term "heuristic" means "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters."

- **U.S. Patent No. 5,946,647**

The term "action processor" means "program routine(s) that perform the selected action on the detected structure."

- **U.S. Patent No. 5,579,239**

Claim 15 of the '239 patent includes a "means-plus-function" term that I have already interpreted. I will give you my interpretation of that term later when I explain how means-plus-function terms are infringed.

*       *       *

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

The claims define the scope of the patent. You must read the claims in the same way when you analyze infringement and when you analyze Apple's patents for invalidity.

Source:

Adapted from 11-CV-01846 Final Instruction No. 22 (Dkt. No. 1903 at 35); Dkt. No. 447 (*Markman* order); Dkt. No. 1150 (MSJ order).

1

2      **Samsung's Objections**

3

4      Apple has defined the term "thread" repeatedly and consistently throughout this litigation,
       including in its statements to the Court.  In *Markman* briefing, Apple defined "thread" in the '414

5      patent as "a series of steps that a computer process needs to complete."  (Dkt. 333 at 19:6-20; *see*
       *also* Feb. 14, 2013 Hearing Tr. at 66:2-3 (counsel for Apple defining "thread" as "just a series of

6      steps.").)  Relying on Apple's arguments, the *Markman* Order adopted Apple's proposed
       construction of the disputed term "concurrently with," to mean "[t]he synchronization *thread* and

7      the non-synchronization *thread* are both active during an overlapping time interval."  (*See* Dkt.

8      447 at 25 (emphases added).)  Accordingly, the Court recognized in its Summary Judgment Order
       that "[t]he parties agree that a 'thread' is 'a series of steps that a computer process needs to

9      complete."  (Dkt. 1151 at 24-25 n.8.)  Apple now is judicially estopped from departing from its
       prior position and assigning a new definition to this claim term at trial. *See, e.g., New Hampshire*

10     *v. Maine*, 532 U.S. 742, 749 ("[W]here a party assumes a certain position in a legal proceeding,
       and succeeds in maintaining that position, he may not thereafter . . . , assume a contrary position. .

11     . . This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase
       of a case on an argument and then relying on a contradictory argument to prevail in another

12     phase.'") (citations omitted); *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555
       F.3d 772, 778-79 (9th Cir. 2009) (holding that "[t]he doctrine of judicial estoppel was developed

13     to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining
       advantage from that position, then seeking a second advantage by later taking an incompatible

14     position").  At trial Apple should not be allowed to argue that the plain and ordinary meaning of
       "thread" in the '414 patent is anything other than "a series of steps that a computer process needs

15     to complete."

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 22 (Samsung)**
**PATENTS—INTERPRETATION OF CLAIMS**

Before you decide whether Apple or Samsung has infringed the claims of the other side's patents or whether the claims of Apple's patents are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. For some terms, the parties agreed on a construction. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

• **U.S. Patent No. 7,761,414**

The term "concurrently with" means "the synchronization thread and the non-synchronization thread are both active during an overlapping time interval."

The term "thread" means "a series of steps that a computer process needs to complete."

• **U.S. Patent No. 5,946,647**

The term "action processor" means "program routine(s) that perform the selected action on the detected structure."

• **U.S. Patent No. 6,847,959**

The term "heuristic" means " "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters."

• **U.S. Patent No. 5,579,239**

Claim 15 of the '239 patent includes a "means-plus-function" term that I have already interpreted. I will give you my interpretation of that term later when I explain how means-plus-function terms are infringed.

\*       \*       \*

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

The claims define the scope of the patent. You must read the claims in the same way when you analyze infringement and when you analyze Apple's patents for invalidity.

**Source:**

1   Adapted from Case No. 11-CV-01846 Final Instruction No. 22 (Dkt. No. 1903 at 35); *Upsher-*
2   *Smith Labs. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed Cir. 2005) ("A century-old axiom of patent law holds that a product "which would literally infringe if later in time anticipates if
3   earlier." (citations omitted)); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1331 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and
4   infringement.").

5   **Apple's Objections:**

6   Apple objects to language in Samsung's Proposed Final Jury Instruction No. 22 that provides claim constructions for terms that the Court did not construe and about which the parties disagree
7   and that includes confusing and legally erroneous language.

8   *First*, Apple objects to the statement that "For some terms, the parties agreed on a construction." The parties did not agree on any constructions among those listed above.  So, that statement is
9   untrue.

10  *Second*, Samsung's proposed instruction also includes a claim construction of the term "thread" in '414 patent that was not issued by the Court and is not agreed between the parties.
11

12  The term "thread" was not identified as one of the parties' ten terms to be construed pursuant to the claim construction process (*see* Dkt. No. 300 (Joint Claim Construction and Prehearing Statement pursuant to Patent Local Rule 4-3)).  It was not otherwise identified as requiring
13  construction in connection with dispositive motions.  (*See, e.g.*, Dkt. Nos. 803, 805.)  Apple has never proposed a construction for the term "thread" as used in the asserted claim of U.S. Patent
14  No. 7,761,414, nor otherwise construed that word as a claim term.  Samsung cites one sentence in the background section of Apple's infringement expert report that explains the general
15  "technological concepts" of the '414 patent.  Samsung ignores the following section that specifically explains the asserted claims of the '414 patent and any claim construction positions
16  that Apple's expert is taking.  (*See* Dkt. No. 946-3 at 7 (Samsung's Reply in Support of Its Motion for Summary Judgment); Dkt. No.1151 at 24-25 n.8 (citing to Samsung's Reply (Dkt. No.
17  946-3) as the basis for a belief that the "parties agree that a 'thread' is a 'series of steps that a computer process needs to complete'").)  Samsung's proposed instruction thus improperly creates
18  a construction for a claim term that has neither been considered nor agreed to by the parties.

19  Further, Apple is not be judicially estopped (contrary to Samsung's contention in the Joint Pretrial statement).  The explanation of a thread was not an argument made to obtain summary judgment
20  rulings.

21  *Third*, Apple objects to inclusion of the statement "Thus, if a product was sold *before* the priority date of the patent, and would have infringed had it been sold *after* the patent issued, the patent
22  claim is invalid, because the patent claim does not describe a new invention—it describes a
23  product that already existed."

24  The statement will be confusing to a jury because the overall instruction relates to claim construction, yet the added sentence does not.  It attempts to blend issues of infringement and
25  invalidity.  It also errs by presenting a statement about invalidity in an instruction that is not connected to the instructions on the burden of proof and the presumption of validity.
26

27  In addition, the statement is not correct as a matter of law.  In 2008, the Federal Circuit held "anticipation cannot be proved by merely establishing that one 'practices the prior art.'"  *See*
28  *Zenith Elecs. Corp. v. PDI Commc'ns Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) (citing

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,* 279 F.3d 1357 (Fed. Cir. 2002). The Court explained that "the defense of noninfringement cannot be proved by comparing an accused product to the prior art" because of the differing burdens faced by infringement and invalidity assertions.  The Federal Circuit continued: "mere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity.  Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference. '[I]t is the presence of the prior art and its relationship to the claim language that matters for invalidity.'"  *Id.* at 1363 (quoting *Tate Access Floors,* 279 F.3d at 1367).

The *Tate Access Floors* court explained:

> Our law requires patent challengers to prove invalidity by clear and convincing evidence. Where an accused infringer is clearly practicing only that which was in the prior art, and nothing more, and the patentee's proffered construction reads on the accused device, meeting this burden of proof should not prove difficult.  Nevertheless, accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a "practicing prior art" defense to literal infringement under the less stringent preponderance of the evidence standard.

*Tate Access Floors,* 279 F.3d at 1367.

In addition, there is a discontinuity between infringement and anticipation because the statutes are different as to each.  Actions or products could literally infringe and not anticipate if earlier.

**PROPOSED FINAL JURY INSTRUCTION NO. 24 (Apple)**
**PATENTS—DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether Samsung and/or Apple has made, used, sold, offered for sale, or imported within the United States a product covered by any of the asserted claims of the other side's patents.  If Samsung or Apple has done so, it infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused Samsung and/or Apple products infringe that claim.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.

You have heard evidence about both side's commercial products.  However, in deciding the issue of patent infringement you may not compare the Samsung and Apple commercial products to each other.  Rather, you must compare the accused Samsung products to the claims of the Apple patents, and the accused Apple products to the claims of the Samsung patents.

Whether or not Samsung or Apple knew its products infringed or even knew of the other side's patents does not matter in determining direct infringement.

You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement.  These separate rules apply to a requirement of claim 15 of the '239 patent.  I will describe those separate rules shortly.


Source:

Adapted from 11-CV-01846 Final Instruction No. 24 (Dkt. No. 1903 at 37) and N.D. Cal. Model Patent Jury Instr. B.3.2.

**Samsung's Objections**

This instruction provides guidance to the jury on how to determine whether a patent is directly infringed, and warns against mistakes in making that determination such as comparing the patentee's commercial products with those of the accused infringer.  A warning against determining infringement by comparing the  figures in a patent specification with the accused products is also necessary particularly if Apple intends to show those comparisons to the jury, as it did in a portion of the expert report of Dr. Storer cited by the Court.  (Dkt. 1301 at 8.)

The additional language proposed by Samsung is as follows: "In deciding the issue of patent infringement you also may not compare the Samsung and Apple products to the figures in the

patents. Your decision must be based on a comparison of the accused products to the asserted claims."  This language is taken almost verbatim from Federal Circuit opinions.  *See Catalina Lighting, Inc. v. Lamps Plus, Inc.,*  295 F.3d 1277, 1286 (Fed. Cir. 2002) ("Certainly the Catalina joint is different from the ball-and-socket joint shown in the figures of the ′ 141 patent. But infringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent.")  In addition, similar language is included in the AIPLA's Model Patent Jury Instructions, at instruction 2.0: "Neither the written description, nor the drawings of a patent can be infringed."

Further, Apple proposes omitting language from the Court's 11-cv-1846 instructions, specifically language describing how dependent claims relate to their respective independent claims, as well as two examples describing the effect of infringement and invalidity determinations of independent claims on their dependent claims.  But no changes in the law or other changes in circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.

**PROPOSED FINAL JURY INSTRUCTION NO. 24 (Samsung)**
**PATENTS—DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether Samsung and/or Apple has made, used, sold, offered for sale, or imported within the United States a product covered by any of the asserted claims of the other side's patents.  If Samsung or Apple has done so, it infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused Samsung and/or Apple products infringe that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both side's commercial products.  However, in deciding the issue of patent infringement you may not compare the Samsung and Apple commercial products to each other.  Rather, you must compare the accused Samsung products to the claims of the Apple patents, and the accused Apple products to the claims of the Samsung patents.

In deciding the issue of patent infringement you also may not compare the Samsung and Apple products to the figures in the patents.  Your decision must be based on a comparison of the accused products to the asserted claims.

Whether or not Samsung or Apple knew its products infringed or even knew of the other side's patents does not matter in determining direct infringement.

You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement.  These separate rules apply to a requirement of claim 15 of the '239 patent.  I will describe those separate rules shortly.

**Source:**

Adapted from Case No. 11-CV-01846 Final Instruction No. 24 (Dkt. No. 1903 at 37); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002) ("Certainly the Catalina joint is different from the ball-and-socket joint shown in the figures of the '141 patent. But infringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent.").

**Apple's Objections:**

Apple has two objections.

*First*, Apple objects to the inclusion of the second, fourth and fifth sentences of the third paragraph because they are unnecessary and confusing.  Those sentences contemplate a case in which a party is asserting both an independent claim and a dependent claim from that independent claim.  Specifically, those sentences instruct the jury to make an explicit finding of infringement or non-infringement of an independent claim and only then reach the dependent claim.   However, for all of the Apple patents, Apple is only asserting dependent claims.  If the jury were to follow this instruction explicitly, it may be confused by the absence of asserted independent claims corresponding to asserted dependent claims, and never reach a finding of the asserted claims.  Neither party is asserting an independent claim and a dependent claim from the same patent in the final selection of five claims being tried in this case.  Samsung's proposed language is confusing and likely to lead to an erroneous understanding of the applicable law.

*Second*, Apple objects to the inclusion of Samsung's proposed fifth paragraph, which says "In deciding the issue of patent infringement you also may not compare the Samsung and Apple products to the figures in the patents.  Your decision must be based on a comparison of the accused products to the asserted claims."

That instruction was not necessary in the 1846 case trials and is not necessary now.  Samsung has not pointed to any different facts or circumstances to warrant deviating in this respect from the instruction provided in the 1846 case.

In addition, the added paragraph incorrectly suggests that the jury may not review the figures and specification of the patent to assist it in understanding the invention.  Further, the proposed language suggests that the jury is to compare the claims to the products, which is not sufficiently precise.  The jury is being asked to evaluate whether the accused product includes each and every limitation of the asserted claims.  The word "compare" in this paragraph without sufficient context might suggest to a lay juror that if it found additional elements present in the accused product it could find non-infringement.  That is not correct.  *See, e.g., E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988).

1

**PROPOSED FINAL JURY INSTRUCTION NO. 25 (Apple)**
**PATENTS—DIRECT INFRINGEMENT**

2

3

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis:

4

5

The location of the sale depends on many factors, and you may find that the sale occurred in several places.  A sale occurs wherever the "essential activities" of the sale take place.  The essential activities include, for example, negotiating the contract and performing obligations under the contract.

6

7

8

Source:

9

Adapted from 11-CV-01846 Final Instruction No. 25 (Dkt. No. 1903 at 38).

10

11

**Samsung's Objections:**

12

Samsung objects to this instruction as an inaccurate characterization of the law.  The Federal Circuit has never held that contracting alone, without more, constitutes a sale within the United States.  The cases relied on by Apple for support in the previous case held that contracting ***and*** performance may determine the location of a sale.  *See, e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) ("*North American Philips* . . . noted that in some cases the criterion for determining the location of a 'sale' under section 271(a) is not necessarily where legal title passes; the 'more familiar places of contracting and performance' may take precedence over the passage of legal title.").  In addition, in those cases where the Federal Circuit has found a sale within the United States, it was undisputed that delivery was made to the United States.  *See, e.g., Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("[I]t is undisputed that GlowProducts sold the products directly to customers in the United States.").  The Federal Circuit more recently elaborated on these prior holdings and held that the location of negotiation and contracting should ***not*** determine the location of the sale.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("Maersk USA's first argument, that the location of negotiation and contracting should control is contrary to our precedent in *Litecubes*.").  At least one district court has found that the holding of *Transocean* precludes finding that a sale occurred within the United States if the product is both shipped from and delivered to locations outside the United States.  *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, No. 2:10-cv-216-JRG, 2013 WL 4054915, at *3 (E.D. Tex. Aug. 6, 2013) ("The question stemming from Lake Cherokee's position is whether a contract between two U.S. companies, negotiated and executed within the United States, for the sale of a patented invention with delivery and performance outside of the United States, constitutes a sale under § 271(a). Despite the factual differences, the Federal Circuit's analysis in *Transocean* compels this Court to answer that question in the negative.").

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Samsung's proposed instruction correctly states the law on this issue by instructing the jury that they must consider "where the products were shipped from and where the products were shipped to."  The Federal Circuit has previously held that this language is proper in a jury instruction

28

1   regarding sales within the United States.  *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d
2   1360 (Fed. Cir. 2010), *aff'd on other grounds*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.
    Ct. 2060 (2011).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 25 (Samsung)**
**DIRECT INFRINGEMENT**

2

3

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis:

4

5

The location of a sale depends on many factors, and you may find that the sales occurred in several places.  In evaluating whether the sales took place in the United States, you must consider where the products were shipped from and where the products were shipped to.  A contract negotiated and executed within the United States, for the sale of a patented invention with delivery and performance outside of the United States, is not a sale within the United States.

6

7

Source:

8

9

Adapted from Case No. 11-CV-01846 Final Instruction No. 25 (Dkt. No. 1903 at 38); *SEB S.A. v. Montgomery Ward & Co., Inc.,* 594 F.3d 1360 (Fed. Cir. 2010), *aff'd on other grounds, Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060 (2011); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,* 617 F.3d 1296 (Fed. Cir. 2010); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp,* 394 F.3d 1368, 1376 (Fed. Cir. 2005); *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.,* No. 2:10-cv-216-JRG, 2013 WL 4054915, at *3 (E.D. Tex. Aug. 6, 2013); *ION, Inc. v. Sercel, Inc.,* No. 5:06-cv-236, 2010 WL 3768110, at *3-*4 (E.D. Tex. Sept. 16, 2010), *aff'd without opinion,* 464 Fed. Appx. 901 (Fed. Cir. 2012); *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.,* 659 F. Supp. 2d 790, 801 (S.D. Tex. 2009); *Wing Shing Prods. Ltd. v. Simatelex Manufactory Co.,* 479 F. Supp. 2d 388, 403 (S.D.N.Y. 2007); *Cornell Research Found., Inc. v. Hewlett-Packard Co.,* No. 5:01-CV-1974, 2007 WL 4349135 at *51 (N.D.N.Y. Jan. 31, 2007); *Minebea Co. v. Papst,* 444 F. Supp. 2d 68 (D.D.C. 2006); *Quality Tubing, Inc. v. Precision Tube Holdings Corp.,* 75 F. Supp. 2d 613, 621 (S.D. Tex. 1999).

10

11

12

13

14

15

16

17

Apple's Objections:

18

19

In the 1846 case, Samsung raised the same purported defense regarding whether Samsung Electronics Company, Ltd., the Korean parent, sells products to STA, SEA or carriers in the United States.  The parties submitted disputed instructions, objections and argument regarding the issue and the Court adopted the instruction proposed by Apple above.  The instruction is supported by at least the following cases.  35 U.S.C. § 271; *Litecubes, LLC v. N. Light Prods.,* 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("In contrast, here it is undisputed that GlowProducts sold the products directly to customers in the United States.  Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States."); *id.* ("GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada.  Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271."); *SEB S.A. v. Montgomery Ward & Co.,* 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("[T]he record shows that Pentalpha intended to sell its deep fryers directly into the United States. Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut to the deep fryers, and it manufactured the deep fryers with North American

20

21

22

23

24

25

26

27

28

1  electrical fittings.  Moreover, the invoices between Pentalpha and the three U.S. companies all
2  identify delivery to U.S. destinations. In sum, this court does not perceive any fundamental error
   with the jury instructions in light of the record evidence.").

3  Furthermore, the language proposed by Samsung—that, in determining whether a sale occurred in
4  the United States, the jury must consider "where the products were shipped from and where the
   products were shipped to.  A contract negotiated and executed within the United States, for the
5  sale of a patented invention with delivery and performance outside of the United States, is not a
   sale within the United States"—is nearly identical to language that Samsung proposed, and the
6  Court rejected, in the first trial.  (1846 Dkt. 1694 at 39.)  As then, Samsung's proposed instruction
7  is an incomplete and inaccurate statement of the law, since it describes only one factor relevant to
   determining the location of the sale.  The Federal Circuit has made clear that a sale is made at all
8  the locations where the sale's "essential activities," including negotiation and performance of the
   contract for sale or order and payment for the goods, take place. *See, e.g.*, *MEMC Elec. Materials,*
9  *Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376-77 (2005) (determining the
   location of a sale by considering where its "essential activities," such as ordering, packaging,
10 shipping and payment, took place); *North American Philips Corp. v. American Vending Sales,*
11 *Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (stating that a sale occurs not only where legal title
   passes, but also where contracting and performance occur); *Litecubes, LLC v. Northern Light*
12 *Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008) (determining the location of a sale by
   considering where the customers were located when they contracted for the accused products and
13 where the products were delivered).  Apple's corresponding instruction is an accurate statement
14 of the law of patent exhaustion.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 25A (Samsung)**
**DIRECT INFRINGEMENT OF THE '959 AND '414 PATENTS**

In this case, Apple asserts that Samsung infringes claim 25 of the '959 patent and claim 20 of the '414 patent, which are known as "computer readable medium" claims. Computer readable medium" claims cover capability. A product is covered by a computer readable medium claim when the product contains instructions that are capable of performing the listed steps. The product does not have to actually perform those steps in order to literally infringe the computer readable medium claim.

**Source:**

*Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (rejecting contention that end product needed to be modified by the user to result in an infringing configuration, where the expert showed that the software was "capable of performing the claimed functionality" and did not make any modifications to the computer source code); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("In this case, Finjan's non-method claims describe capabilities without requiring that any software components be 'active' or 'enabled.' . . .The storage medium claims similarly cover capability. Claim 65 of the '194 patent recites a 'computer-readable storage medium storing program code for causing a server that serves as a gateway to a client to perform the steps of: receiving ...; comparing ...; and preventing execution....' This language does not require that the program code be 'active,' only that it be written 'for causing' a server ('194 patent claim 65) or a computer ('780 patent claim 18) to perform certain steps."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:11-cv-01846, Dkt. 1156, at 11-12) (where a claim is directed to a "computer-readable storage device storing instructions . . . 'infringement occurs when a device that has the capability of performing the [recited] steps . . . is manufactured and sold.'").

**Apple's Objections:**

Apple objects to including this instruction because it is incorrect as a matter of law, unsupported by the cited cases, and unnecessary to enable the jury to determine infringement of the 414 and 959 Patents.

First, the instruction is wrong on the law. It states that computer readable medium claims "cover capability." That statement is incomplete without further context. As this Court found, a computer readable medium claim comprising instructions for performing various actions, requires evidence of an actual device that includes actual instructions that is capable, without configuration, compilation or other intervening action, to perform each of the steps in the manner required. (Case No. 5:11-cv-01846 Dkt. No. 1156, at 11-12 (where a claim is directed to a "computer-readable storage device storing instructions . . . 'infringement occurs when a device that has the capability of performing the [recited] steps . . . is manufactured and sold.'").)

Second, Samsung cites *Versata* and *Finjan, but those cases* required evidence that the accused products had a present, as-sold functionality that only had to be used or employed by the user. The fact that no user had employed the functionality did not avoid infringement. Samsung's proposed instruction could encompass a computer device that includes source code that can be used to create a product that later performs the instructions, even if there are at present no instructions for carrying out the configuration required by the claims.

Samsung inserts the concept of a "product" when the cases discuss a medium with instructions that cause a processor to perform a set of actions. Therefore, Samsung's proposed statement that

"A product is covered by a computer readable medium claim when the product contains instructions that are capable of performing the listed steps" is not correct.  The product would need to be or include a computer readable medium and the instructions it contains must be interpreted by a processor to cause the processor to perform the steps.  It is insufficient for a product to include instructions that are not readable by a processor directly, which is the case with uncompiled computer source code.  Samsung's proposed language would read encompass disks that contain source code, when the claim and the law require more.

Third, adding another instruction is unnecessary because Instruction No. 24 provides sufficient guidance to determine infringement.  Samsung is trying to introduce arguments supporting its defenses in the guise of a proposed jury instruction

**Samsung's Statement in Support:**

Following the trial in the 11-cv-1846 case, the Federal Circuit decided an important case concerning computer readable medium claims.  In *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255,  (Fed. Cir. 2013), the Federal Circuit determined that a computer readable medium claim covers any software with instructions capable of carrying out the recited steps if those instructions are executed – even if the instructions are part of complex software that requires significant post-sale configuration before performing the steps.  In *Versata*, the expert created a "demonstrative data setup" and "used the [software] interface to set up four pricing elements: a pricing calculation function; a pricing procedure; a condition table; and an access sequence."  (*Id*. at 1261.)  The expert testified that this demonstrative data setup "did not require any modification to [the software's] source code" and that the "[software] included the code to accomplish his demonstration."  (*Id*. at 1261-62.)  The expert therefore "confirmed his theories that the accused software was capable of performing the claimed functionality."  (*Id*. at 1262.)  In light of the Federal Circuit's guidance, the jury should be instructed that computer readable medium claims are satisfied when software includes instructions that, if executed, perform the steps recited in the claim – even when the software must be configured before the instructions in that software can perform the recited steps.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("storage medium claims . . . cover capability.").

1

## PROPOSED FINAL JURY INSTRUCTION NO. 26C (Samsung)
## APPARATUS CLAIMS--LITERAL INFRINGEMENT

2

3   Apparatus claims are commonly drafted to describe functions of the apparatus.  As I've already
    instructed you, if the patent claim uses the term "comprising," that patent claim is understood as
4   an open claim.  An open claim is infringed as long as every element of the claim is met.  The fact
    that the accused product may include additional functions will not avoid infringement.  Absent
5   language specifying a specific order for the functions, the accused products can perform these
    functions in any order and still infringe the apparatus claim.

6

**Source:**

7

8   Adapted from Final Jury Instruction No. 28, Case 5:11-cv-01846-LHK (Dkt. No. 1903); *Smith &
    Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001) ("the signal 'comprising' is
9   generally understood to signify that the claims do not exclude the presence in the accused
    apparatus or method of factors in addition to those explicitly recited") (citations omitted); *eTool
10  Development, Inc. v. National Semiconductor Corp.*, No. 2:08–CV–196–TJW, 2011 WL
    4100456, *17 (E.D. Tex. Sept. 13, 2011) (issuing jury instruction that "if you decide that a
11  Defendant's product or method includes all the requirements or steps in that claim, the claim is
    infringed[; t]his is true even if the accused product or method includes components or steps in
12  addition to those requirements"); *Baldwin Graphic Systems, Inc. v. Siebert, Inc*., 512 F.3d 1338,
    1345 (Fed. Cir. 2008) ("[A]lthough a method claim necessarily recites the steps of the method in
13  a particular order, as a general rule the claim is not limited to performance of the steps in the
    order recited, unless the claim explicitly or implicitly requires a specific order . . . In this case, the
14  claims themselves contain no basis to require air content reduction before winding. Though the
    claims, specification, and prosecution history require that the air content of the cleaning fabric be
15  reduced prior to saturation, this does not mean that the air content must be reduced prior to
    winding on the roll."); *Creative Internet Advertising Corp. v. Yahoo, Inc*., No. 6:07cv354, 2008
16  WL 5061625, *16 (E.D. Tex. Nov. 24, 2008) (rejecting argument that apparatus claims required
    that the functions of the recited logic elements of a computer program had to be performed in a
17  certain order where the claim language did not recite any sequence for the order of the function
    performance, and rejecting accused infringer's reliance on cases implying a sequence because
18  those cases dealt with method claims).

19  ### Apple's Objections:

20
    Samsung's proposal for separate instructions regarding apparatus claims is unnecessary and will
21  improperly suggest for the jury that its infringement determination of these claims is different
    from other claims.  The N.D. Cal Model Patent Jury Instructions do not include separate
22  instructions for apparatus claims and Samsung has not identified any unique issue in this case that
    would justify including such an instruction here.  The Court already has an instruction regarding
23  the use of "comprising" as an open-ended claim term.  (*See* Instruction No. 26.)  There is no need
    to include an additional instruction on this issue simply because the claim at issue is an apparatus
24  claim.  Indeed, several of the cases cited in Samsung's instruction involve claims other than
    apparatus claims, which exemplifies the extraneous nature of Samsung's proposal.
25

26  ### Samsung's Statement in Support:

27  Samsung's proposed instruction is nearly identical to Final Jury Instruction No. 28 that this Court
    adopted in Case No. 5:11-cv-01846-LHK (Dkt. No. 1903).  Final Jury Instruction No. 28 from the
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-01846 case was drafted to address a method claim.  Since there are no method claims are issue in this case, Samsung rephrased Final Jury Instruction No. 28 from the -01846 case to apply to apparatus claims.  Apple claims this instruction is repetitive of other Joint Proposed Final Jury Instructions, but other instructions does not address the issue regarding order of the claimed functions, which this Court included in Final Jury Instruction No. 28 from the -01846 case.  This instruction is based on long standing Federal Circuit law governing the interpretation of apparatus claims.

Since none of the other instructions address the issue regarding order of the claimed functions in an apparatus claim, Apple's objection to this instruction effectively omits language from the Court's 11-cv-1846 instructions.  But no changes in the law or other changes in circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's objection is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.  Apple did not submit any competing instruction.

**PROPOSED FINAL JURY INSTRUCTION NO. 32 (Apple)**
**PATENTS—ANTICIPATION**

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Samsung can show that an Apple patent claim was not new:

— If the claimed invention was already publicly known or actually publicly used by others in the exact manner claimed in the United States before the date of conception of the claimed invention;

— If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention. A reference is a "printed publication" if it is sufficiently accessible to those interested in locating relevant materials in the field without knowing the author, title, or location of a particular document, even if it is difficult to find;

— If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

— If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor. If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice. A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

— If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent holder's application filing date or the date of conception of the claimed invention.

Where the date of conception for a claimed invention or prior invention is in dispute, you must determine the dates of conception for that claimed invention or prior invention. Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

Source:

Adapted from 11-CV-01846 Final Instruction No. 31 (Dkt. No. 1903 at 44); *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F. 3d 1374, 1381 (Fed. Cir. 2012); *In re Lister*, 583 F.3d 1307, 1313 (Fed. Cir. 2009); *In re Bayer*, 568 F.2d 1357, 1360-62 (C.C.P.A. 1978).

**<u>Samsung's Objections</u>:**

Samsung objects to Apple's proposed departure from the 11-cv-1846 instructions, namely Apple's proposed changes to the first and second bullets.  In the first, Apple proposes the addition of "actually" to "publicly used" as well as the requirement that the use be "in the exact manner claimed."  In the second, Apple attempts to impose what appears to be a higher standard than is suggested by relevant authority.  No changes in the law or other changes in circumstances justify these modifications.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.  In addition, these portions of the instruction mirror Northern District of California Model Patent Jury Instruction 4.3a1, and no basis exists for differing from the model.

Apple's first bullet is incorrect for several additional reasons.  Apple's interjection of "actually" does nothing to change the substance of the instruction and serves only to bias the instruction in favor of validity.  Apple's inclusion of "used . . . in the exact manner claimed" is legally incorrect.  The question is whether the claimed invention is used, not whether it is used in any particular manner.  *See* 35 U.S.C. § 102(a) ("A person shall be entitled to a patent unless . . . the invention was known or used by others in this country . . . before the invention thereof by the applicant for patent.")  Apple's instruction regarding *manner* of use would be accurate only for method claims, but no method claims are asserted in this action.  *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("apparatus claims cover what a device is, not what a device does").  Per 35 U.S.C. 102(a), *any* use by another of a claimed invention (*i.e.*, an apparatus) in the United States is invalidating.  This instruction appears to be part of Apple's broader strategy of treating its computer readable medium claims of the '414 and '959 patents as apparatus claims for infringement and damages, but as method claims for invalidity.

Apple's changes to the second bullet similarly appear to be an attempt to suggest a higher standard for accessibility than is supported by relevant authority. Certainly, Apple points to no recent change in law that justifies departing from the instructions used in the first trial, where printed publications were also at issue.

35 U.S.C. § 102(a) does not state that "both [§ 102(a) and (b)] require actual use by someone at some point."  Samsung also notes that *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) actually stated that "public use" and "use" – two different statutory provisions – both require use:  "[a]lthough 'public use' for purposes of § 102(b) is defined differently from 'use' for purposes of § 102(a), both require actual use by someone at some point."  (*Id.*)  The requirements of 35 U.S.C. § 102(a) or (b) can also be met in other ways – including if the claimed article was "known" or "on sale," without regard to whether there was an invalidating "use."

**PROPOSED FINAL JURY INSTRUCTION NO. 32 (Samsung)**
**ANTICIPATION**

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device, or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Samsung can show that an Apple patent claim was not new:

– If the claimed invention was already publicly known or publicly used by others in the United States before the date of conception of the claimed invention;

– If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

– If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice.  A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

– If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent holder's application filing date or the date of conception of the claimed invention.

Since certain of them are in dispute, you must determine dates of conception for the claimed inventions and prior inventions.  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

**Source:**

1    Case No. 11-CV-01846 Final Instruction No. 31 (Dkt. No. 1903 at 44).

2

3    **Apple's Objections:**

4    Unlike Samsung's proposed instruction, Apple's proposed instruction on anticipation is proper.

5    ***First***, Apple's instruction properly instructs the jury fully on the law of anticipation.  Anticipation
6    of a computer readable medium claims requires evidence that someone *actually knew of or used* a
     medium that actually performs the claimed functionality. *See* 35 U.S.C. § 102(a) ("both [§ 102(a)
7    and (b)] require actual use by someone at some point.").  Mere evidence that a device is capable
     of being used is not enough for anticipation.  But, as Apple explained—and this Court has already
8    ruled—it is not sufficient to show what *could* have been done, or *could* have been known.  *See*
9    *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed Cir. 1991).  As this
     Court correctly held, a "post-hoc, reconstructed interpretation of how a WAIS system might have
10   been constructed does not constitute prior art for purposes of anticipation."  (Dkt. No. 230 at 6.)
     Rather, Samsung must show that the invention was, in fact, *actually* known or used.
11

12   As discussed in Apple's objection to Samsung's proposed Final Jury Instruction No. 32A in
     which Samsung relies on a misstatement of the law of anticipation, Samsung will likely suggest
13   to the jury, contrary to applicable law, that anticipation of a computer readable medium claim
     only requires capability of practicing the claim.  Absent a jury instruction that clearly instructs the
14   jury that anticipation requires the alleged prior art device to have been *actually publicly used* by
     others in the manner covered by the claim, , as proposed by Apple, there is a serious risk that the
15   jury will be misled into legal error causing prejudice to Apple.

16   ***Second***, Apple's proposed instruction instructs the jury fully on what constitutes a "printed
     publication."  Apple's Motion *in Limine* No. 5 seeks to exclude Purported Prior Art Documents
17   That do Not Qualify as Prior Art.  If the Court denies Apple's Motion *in Limine* No. 5, Apple
18   believes that Samsung will rely heavily in its invalidity case on printed publications that are not
     prior art.  To qualify as a printed publication, a document must be "sufficiently accessible to the
19   public interested in the art" before the critical date.  *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir.
     1989).  Absent a clear instruction, as proposed by Apple, that explains to the jury that a printed
20   publication must be *sufficiently accessible* to qualify as prior art, and that instructs the jury on
21   what this means, there is a serious risk that the jury will apply a legally incorrect standard,
     causing undue prejudice to Apple.

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 32A (Samsung)
## ANTICIPATION OF THE '959 AND '414 PATENTS

2

3   In this case, Apple asserts that Samsung infringes claim 25 of the '959 patent and claim 20 of the
    '414 patent, which are known as "computer readable medium" claims.  "Computer readable
4   medium" claims cover capability.  All of the requirements of a computer readable medium claim
    exist in a prior art medium if the prior art medium contained instructions capable of performing
5   the listed steps.  The medium did not have to actually perform those steps in order to anticipate
    the computer readable medium claim.

6

7   **Source:**

8   *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (rejecting
    contention that end product needed to be modified by the user to result in an infringing
9   configuration, where the expert showed that the software was "capable of performing the claimed
    functionality" and did not make any modifications to the computer source code); *Finjan, Inc. v.*
10  *Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("In this case, Fijian's non-
    method claims describe capabilities without requiring that any software components be 'active' or
11  'enabled.' . . .The storage medium claims similarly cover capability. Claim 65 of the '194 patent
    recites a 'computer-readable storage medium storing program code for causing a server that
12  serves as a gateway to a client to perform the steps of: receiving ...; comparing ...; and preventing
    execution....' This language does not require that the program code be 'active,' only that it be
13  written 'for causing' a server ('194 patent claim 65) or a computer ('780 patent claim 18) to
    perform certain steps."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:11-cv-01846, Dkt. 1156, at
14  11-12) (where a claim is directed to a "computer-readable storage device storing instructions . . .
    'infringement occurs when a device that has the capability of performing the [recited] steps . . . is
15  manufactured and sold.'").

16

17  **Apple's Objections:**

18  Apple objects to this special instruction for five reasons.

19  ***First***, it misstates the law of anticipation for a computer readable medium claim.  Contrary to
    Samsung's proposed instruction, anticipation of a computer readable medium claims requires
20  evidence that someone *actually knew of or used* a medium that actually performs the claimed
    functionality. *See* 35 U.S.C. § 102(a); *see also Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303
21  F.3d 1294, 1307 (Fed. Cir. 2002) ("both [§ 102(a) and (b)] require actual use by someone at some
    point.").  Mere evidence that a device is capable of being used is not enough for anticipation.
22  But, as Apple explained—and this Court has already ruled—it is not sufficient to show what
    *could* have been done, or *could* have been known.  *See Continental Can Co. USA, Inc. v.*
23  *Monsanto Co.*, 948 F.2d 1264, 1267 (Fed Cir. 1991).  As this Court correctly held, a "post-hoc,
    reconstructed interpretation of how a WAIS system might have been constructed does not
24  constitute prior art for purposes of anticipation."  (Dkt. No. 230 at 6.)  Rather, anticipation
    requires a finding based on evidence that the invention was, in fact, *actually* known or used.

25  ***Second***, none of the cases that Samsung cites in its proposed jury instruction addresses the proper
26  standard for anticipation.  Instead, Samsung cites two decisions addressing when software can
    *infringe* a claim.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) and
27  *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255 (Fed. Cir. 2013).  These infringement
    cases do not address—much less alter—the standard for anticipation or allow anticipation based
28  on software that is merely capable of anticipatory functionality.  The infringement and validity

1    provisions address different uses.  For anticipation, use must be accessible to the public, but not
so for infringement.  *Minnesota Min.*, 303 F.3d at 1306.  Nor do these infringement cases overrule
2    the clear holdings of the Federal Circuit requiring *actual* knowledge or use to meet the
"knowledge or use" prongs of Section 102.  *See, e.g., id.* at 1307.  Thus, Samsung's proposed
3    interpretation is erroneous as a matter of law.

4    ***Third***, Samsung's instruction improperly suggests that a disk that contains only source code could
be capable of performing instructions in a computer readable medium claim.  Source code is not
5    capable of performing steps as written.

6    ***Fourth***, this instruction suggests that "existing in the prior art" is sufficient when it is not.  No
subsection of Section 102 or 103 supports this "existing in the prior art" phraseology.  Samsung's
7    instruction would invite the jury to overlook the clear requirement to meet one of the specific
subsection of 102 and/or 103 to establish that a publication or device qualifies as prior art.

8

9    ***Fifth***, Apple objects to this instruction because it mixes infringement and invalidity language,
which is potentially confusing to the jury given that this instruction purported to relate to
invalidity.

10

11    **Samsung's Statement in Support:**

12    Following the trial in the 11-cv-1846 case, the Federal Circuit decided an important case
concerning computer readable medium claims.  In *Versata Software, Inc. v. SAP America, Inc.*,
13    717 F.3d 1255,  (Fed. Cir. 2013), the Federal Circuit determined that a computer readable
medium claim covers any software with instructions capable of carrying out the recited steps if
14    those instructions are executed – even if the instructions are part of complex software that
requires significant post-sale configuration before performing the steps.  In *Versata*, the expert
15    created a "demonstrative data setup" and "used the [software] interface to set up four pricing
elements: a pricing calculation function; a pricing procedure; a condition table; and an access
16    sequence."  (*Id.* at 1261.)  The expert testified that this demonstrative data setup "did not require
any modification to [the software's] source code" and that the "[software] included the code to
17    accomplish his demonstration."  (*Id.* at 1261-62.)  The expert therefore "confirmed his theories
that the accused software was capable of performing the claimed functionality."  (*Id.* at 1262.)  In
18    light of the Federal Circuit's guidance, the jury should be instructed that computer readable
medium claims are satisfied when software includes instructions that, if executed, perform the
19    steps recited in the claim – even when the software must be configured before the instructions in
that software can perform the recited steps.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d
20    1197, 1204-05 (Fed. Cir. 2010) ("storage medium claims . . . cover capability.").
21

22    35 U.S.C. § 102(a) does not state that "both [§ 102(a) and (b)] require actual use by someone at
some point."  Samsung also notes that *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d
23    1294, 1307 (Fed. Cir. 2002) actually stated that "public use" and "use" – two different statutory
provisions – both require use:  "[a]lthough 'public use' for purposes of § 102(b) is defined
24    differently from 'use' for purposes of § 102(a), both require actual use by someone at some
point."  (*Id.*)  The requirements of 35 U.S.C. § 102(a) or (b) can also be met in other ways –
25    including if the claimed article was "known" or "on sale," without regard to whether there was an
invalidating "use."
26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 33 (Apple)**
**PATENTS—STATUTORY BARS**

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways Samsung can show that an Apple patent application was not timely filed:

– If the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application. A reference is a "printed publication" if it is sufficiently accessible to those interested in locating relevant materials in the field without knowing the author, title, or location of a particular document, even if it is difficult to find;

– If the claimed invention was already being openly used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

– If a device or method using the claimed invention in the specific manner claimed was sold or offered for sale in the United States, and that claimed invention was ready for patenting, more than one year before the effective filing date of the patent application;

– If the patent holder had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field looking at the reference to make and use the claimed invention.

Source:

Adapted from 11-CV-01846 Final Instruction No. 32 (Dkt. No. 1903 at 45); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002); *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1381 (Fed. Cir. 2012); *In re Lister*, 583 F.3d 1307, 1313 (Fed. Cir. 2009); *In re Bayer*, 568 F.2d 1357, 1360-62 (C.C.P.A. 1978).

**Samsung's Objections:**

Samsung objects to Apple's proposed departure from the 11-cv-1846 instructions, namely Apple's proposed changes to the first and third bullets. In the first, Apple attempts to impose what appears to be a higher standard than is suggested by relevant authority. In the third, Apple proposes the requirement that a use be "in the specific manner claimed." No changes in the law or other changes in circumstances justify the modification. At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time."). Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial. In addition, these portions of the instruction mirror Northern District of California Model Patent Jury Instruction 4.3a2, and no basis exists for differing from the model.

Apple's third bullet point regarding use is incorrect for an additional reason. Apple's inclusion of "used . . . in the specific manner claimed" is legally incorrect. The question is whether the claimed invention is used, not whether it is used in any particular manner. *See* 35 U.S.C. § 102(b) ("A person shall be entitled to a patent unless . . . the invention was . . .in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.") Apple's instruction regarding manner of use would be accurate only for method claims, but no method claims are asserted in this action. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("apparatus claims cover what a device is, not what a device does"). Per 35 U.S.C. 102(b), *any* public use of a claimed invention more than one year before filing would be invalidating. This instruction appears to be part of Apple's broader strategy of treating its computer readable medium claims of the '414 and '959 patents as apparatus claims for infringement and damages, but as method claims for invalidity. Apple's changes to the first bullet similarly appear to be an attempt to suggest a higher standard for accessibility than is supported by relevant authority, and no intervening change in law justifies a departure from the earlier litigation.

**PROPOSED FINAL JURY INSTRUCTION NO. 33 (Samsung)**
**PATENTS—STATUTORY BARS**

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways Samsung can show that an Apple patent application was not timely filed:

– If the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– If the claimed invention was already being openly used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

– If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, more than one year before the effective filing date of the patent application;

– If the patent holder had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field looking at the reference to make and use the claimed invention.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 32 (Dkt. No. 1903 at 45).

**Apple's Objections:**

Apple's proposed instruction on this issue is proper because it instructs the jury fully on what constitutes a "printed publication." Apple's Motion *in Limine* No. 5 seeks to exclude Purported Prior Art Documents that do Not Qualify as Prior Art. If the Court denies Apple's Motion *in Limine* No. 5, Apple believes that Samsung will rely heavily in its invalidity case on printed publications that are not prior art. To qualify as a prior art printed publication, a document must

be "sufficiently accessible to the public interested in the art" before the critical date. *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989).  Absent a clear instruction, as proposed by Apple, that explains to the jury that a printed publication must be *sufficiently accessible* to qualify as prior art, and that instructs the jury on what this means, there is a serious risk that the jury will be misled about what constitutes prior art in this case, causing undue prejudice to Apple.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 37 (Apple)**
**PATENT DAMAGES — LOST PROFITS — GENERALLY**

3

4

In this case, Apple seeks to recover lost profits for some of Samsung's sales of allegedly infringing products, and a reasonable royalty on the rest of Samsung's allegedly infringing sales. Samsung does not seek lost profits for infringement of its patents.

5

6

7

8

To recover lost profits for infringing sales, Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America made of the infringing products. Apple must show the share of Samsung's sales that it would have made if the infringing products had not been on the market.

9

10

Source:

11

12

13

Adapted from 11-CV-01846 Final Instruction No. 36 (Dkt. No. 1903 at 50); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013), *cert. denied*, 2014 U.S. LEXIS 715 (Jan. 21, 2014); *Grain Processing Corp. v. AmericanMaize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *Nuance v. ABBYY*, No. 3:08-cv-02912-JSW, Dkt. No. 895 at 26 (N.D. Cal. Aug. 20, 2013) (White, J.); *id.*, Dkt. No. 921 at 2016.

14

Samsung's Objections:

15

16

17

18

19

20

21

22

23

24

25

26

Apple proposes to entirely delete the third paragraph of the corresponding instruction the Court gave in 11-cv-01846, but no changes in the law or other changes in circumstances justify the modification. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time."). Indeed, Apple tried to delete the same paragraph *three times* in 11-cv-01846 (Dkt. No. 1232 at 131; Dkt. No. 2768 at 5; Dkt. No. 2843 at 1214), and the Court rejected the attempt each time. Dkt. No. 1903 at 50; Dkt. 1998 at 3871; Dkt. No. 2784 at 32; Dkt. No. 2843 at 1218. Samsung incorporates by reference herein its arguments from page 12, line 22 to page 13, line 23 of the Joint Pretrial Statement and Proposed Order for New Damages Trial (Dkt. No. 2486) filed in 11-cv-01846, which addressed this exact issue. The deleted paragraph appears *verbatim* in Model Instruction 5.2 of the N.D. Cal. Model Patent Jury Instructions and is firmly grounded in both Supreme Court and Federal Circuit precedent. *See, e.g.*, *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (patentees "must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features"); *Ferguson Beauregard v. Mega Sys.*, *LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) ("The district court therefore failed to distinguish the allocation of profits that would have been made 'but for' the infringement of the '376 patent with the profits that could fairly be allocated to" other features not covered by the patent). This instruction should not be modified as Apple urges.

27

28

By using the phrase "Samsung had never used the patented invention," Samsung's instruction accurately reflects current law. This contrasts with Apple's proposed language, which would improperly allow it to recover the share of Samsung's sales "if the infringing products had not

been on the market." Although Apple's proposed language was adopted in 11-cv-01846, Apple improperly sought to use a market share (or *Mor-Flo*) analysis in that case as a substitute for showing "but for" causation. This is plainly wrong, and Apple's proposal would allow it to induce the same error here. Apple's proposed phraseology incorrectly implies that Apple does not have to satisfy the requirements of "but for" causation by proving what share of infringing sales it would have captured absent Samsung's use of the patented invention. The patentee, however, still bears the burden of proving that it would have made its *pro rata* share of the infringing sales. *See BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (reversing lost profits award based on market share where patentee "did not show with reasonable probability that [defendant's] customers would have purchased from [the patentee] in proportion with [the patentee's] market share."); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) ("a patentee must show that the infringing units do not have a disparately higher price than or possess characteristics significantly different from the patented product."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

1

**PROPOSED FINAL JURY INSTRUCTION NO. 37 (Samsung)**
**PATENT DAMAGES — LOST PROFITS — GENERALLY**

2

3

In this case, Apple seeks to recover lost profits for some of Samsung's sales of allegedly infringing products, and a reasonable royalty on the rest of Samsung's allegedly infringing sales. Samsung does not seek lost profits for infringement of its patents.

4

5

To recover lost profits for infringing sales, Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America made of the infringing products. Apple must also show the share of Samsung's sales that it would have made if Samsung had never used the patented invention.

6

7

8

9

You must allocate the lost profits based upon the customer demand for the patented feature of the infringing products. That is, you must determine which profits derive from the patented invention that Samsung sells, and not from other features of the infringing products.

10

11

**Source:**

12

Adapted from Case No. 11-CV-01846 Final Instruction No. 36 (Dkt. No. 1903 at 50).

13

**Apple's Objections:**

14

Apple objects to the final paragraph of the instruction, which is drawn from the Northern District Model and was used by the Court in case number 1846. The paragraph reflects a legal error, as reflected by recent Federal Circuit authority issued after the model instructions were drafted.

15

16

17

The Federal Circuit has made clear that lost profits should not be allocated based upon the consumer demand for the patented features of the infringing products. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013) (holding that the lost profits analysis under Panduit does not "require any allocation of consumer demand among the various limitations recited in a patent claim"). The discussion in *Versata Software Inc.*, and in *DePuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*, 567 F.3d 1314, 1330-31 (Fed. Cir. 2009), make clear that there is no need to allocate "lost profits based on customer demand the patented feature," language which is drawn from *Ferguson Beauregard v. Mega Sys. LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003). *DePuy Spine* specifically limited *Ferguson Beauregard* to a circumstance in which lost profits are challenged under the "entire market value rule," and *Versata* explicitly follows *DePuy Spine* on this issue. Thus, other courts in this district have recognized this error and omitted the disputed paragraph to comport with the Federal Circuit's recent guidance in *Versata. See Nuance v. ABBYY*, No. 3:08-cv-02912-JSW Dkt. No. 895 at 26 (N.D. Cal. Aug. 20, 2013) (White, J.); *id.*, Dkt. No. 921 at 2016. The Court should do the same here and reject Samsung's Proposed Instruction No. 22, which erroneously states that lost profits should be allocated according to the consumer demand for the patented features. Moreover, the paragraph is likely confuse the jury when it is compared to instructions 38 and 41, which properly instruct the jury that it may use a patentee's market share to identify the portion of the sales that a patentee would have made but for the infringement of the patent. Both those instructions arise from a long line of cases reaching back to *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

18

19

20

21

22

23

24

25

26

27

28

Separately, Apple objects to Samsung's changes to the last sentence of the second paragraph, which adds the word "also" and replaces "if the infringing products had not been on the market" with "if Samsung had never used the patented invention."  This change departs from the Northern District Model instruction and the instruction that the Court has already given twice.  In fact, Samsung has itself ***three times*** submitted the language to which it now objects.  It did so first on July 16, 2012 in connection with the first trial.  (1846 Dkt. 1238 at 68) (Disputed Instruction 31/54).  It did so again on August 13, 2012 when the parties were finalizing the jury instructions in the first trial in 1846.  (1846 Dkt. 1694 at 60) (Samsung's Proposed Jury Instruction No. 25).  It did so a third time on November 17, 2013.  (1846 Dkt. 2768 at 7) (Jury Instruction No. 22).  There is no justification to modify the Northern District model jury instruction to which Samsung previously agreed.  This is an accurate statement of the law as stated in *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545-46 (Fed. Cir. 1995) (en banc) and the long-standing lost profits framework described in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978).

**PROPOSED FINAL JURY INSTRUCTION NO. 38 (Apple)**
**PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

Apple is entitled to lost profits if it proves all of the following:

    (1)    that there was demand for the patented products;

    (2)    that there were no non-infringing substitutes for each of the infringing products, or, if there were, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes.  The time period relevant to determining availability of a non-infringing substitute is the entire period during which Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America infringed Apple's patents.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available. Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology (or other patented technology) to develop an alleged substitute.  (3) that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

    (4)    the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had not infringed.

Source:

Adapted from Retrial 11-CV-01846 Final Instruction No. 23 (Dkt. No. 2783 at 29.); *see also* 11-CV-01846 Final Instruction No. 37 (Dkt. No. 1903 at 51).

Samsung's Objections:

Apple's proposed jury instruction includes the phrase "or other patented technology" as part of *Panduit* factor 2, adapted from an instruction given at the damages retrial in the 11-cv-1846 case. But that instruction was given after a prior jury verdict where certain Samsung products were found to have infringed some, but not all, of Apple's asserted patents. *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846, Dkt. No. 1930 (N.D. Cal. Aug. 24, 2012).  Here, there has been no such finding and Apple has failed to identify a single case where the jury has been asked to decide if a non-infringing substitute infringed a *non-asserted* patent.  Additionally, inclusion of the vague phrase "other patented technology" is likely to confuse the jury, who will not know whether the phrase applies to Apple's technology, Samsung's, or any technology.  This phrase will also result in a trial within a trial regarding whether non-infringing alternatives in fact infringe other, non-

1    asserted patents.  Samsung's proposed instruction, which follows the Court's corresponding
2    instruction from the initial trial, is preferable.

3    Samsung's proposed instruction also accurately reflects the law by clarifying that if the jury
     determines that Samsung had a non-infringing alternative, lost profits are completely unavailable.
4    *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d 1341, 1352 (Fed. Cir. 1999) ("[M]arket
     sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost
5    profits."); *see also id.* at 1349 ("In the face of this noninfringing substitute, Grain Processing
     could not prove lost profits."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458
6    (Fed. Cir 1991) (alleged infringer's possession of its own non-infringing alternative bars lost
7    profits).  In contrast, Samsung's instruction reflects that if the jury were to determine that only
     third party manufacturers had non-infringing alternatives, Apple may be entitled to its *pro rata*
8    share of the market if it otherwise satisfies its burden.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 38 (Samsung)**
**PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

Apple is entitled to lost profits if it proves all of the following:

 (1) that there was demand for the patented products;

 (2) that there were no non-infringing substitutes for each of the infringing products, or, if there were no acceptable non-infringing substitutes available to Samsung, but there were acceptable non-infringing substitutes offered by other manufacturers, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America that Apple would have made despite the availability of the other non-infringing substitutes. The time period relevant to determining availability of a non-infringing substitute is the entire period during which Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America infringed Apple's patents. An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available. Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology to develop an alleged substitute;

 (3) that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

 (4) the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had not infringed.

**Source:** Adapted from Case No. 11-CV-01846 Final Instruction No. 35 (Dkt. No. 1903 at 49); *see also Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d at 1458 (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

**Apple's Objections:**

Apple has proposed an instruction that is substantively identical to what the Court used in the damages retrial in the 1846 case (*see* 1846 Dkt. No. 2783 at 33). Apple's proposal is also substantively identical to the instruction used in the first 1846 trial, with the exception of replicating the Court's addition of the following language in the retrial instruction: the phrase "(or other patented technology)" and the sentence beginning "The time period relevant to . . . ." Apple's instruction identifies all three Samsung entities, consistent with the instructions in the first trial. Samsung itself submitted the language of paragraph (2) with the sole exception of the

1    parenthetical "(or other patented technology)" in connection with the damages retrial in the 1846

2    case.

3    There is no legal or factual reason to depart from the former instructions and the N.D. Model
     instruction to include Samsung's modification of the meaning and effect of non-infringing

4    alternatives and Samsung's new limitation to alleged non-infringing alternatives offered by other
     manufacturers.  Samsung has never proposed it previously.  To the contrary, Samsung previously

5    offered identical language to what the Court has twice used (*see, e.g.* 1846 Dkt. No. 1694 at 65)
     and has offered no case law or other valid reason for the changes that it has now proposed.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### PROPOSED FINAL JURY INSTRUCTION NO. 39 (Apple)
### PATENT DAMAGES—LOST PROFITS—AVAILABILITY OF
### ACCEPTABLE NON-INFRINGING ALTERNATIVES

2

3

4     A product can be considered an acceptable non-infringing alternative if you find that it (i) was
      available to Samsung during the relevant damages period; and (ii) provided all the advantages of
5     the patented technology.

6     Apple has the initial burden of proving that no known alternatives were on the market during the
      relevant damages period. In determining whether an alternative product was on sale and available,
7     you may consider whether the alternative product infringed any Apple patents.

8     An alternative may be considered available even if it was not actually on sale during the
      infringement period if Samsung proves that it could have incorporated the non-infringing features
9     into its infringing products as a design-around. Samsung can meet its burden of proving the
      existence of a design-around with evidence that it had the necessary equipment, know-how, and
10    experience to implement those non-infringing alternatives. Mere speculation or conclusory
      assertions will not suffice.
11

12    In addition, a product lacking the advantages of that patented is not a substitute "acceptable" to
      the customer who wants those advantages.
13

14

15    Source:

16    Retrial 11-CV-01846 (Dkt. No. 2657) (Order re Noninfringing Alternatives); *SynQor, Inc. v.
      Artesyn Technologies, Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013); *DePuy Spine, Inc. v. Medtronic
17    Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009); *Grain Processing Corp. v. Am.
      Maize-Prods. Co.*, 185 F.3d 1341, 1330 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d
18    1538, 1545 (Fed. Cir. 1995) (en banc); *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164,
      1179 (N.D. Cal. 2010).
19

20

21    Samsung's Objections:

22    Apple proposed exactly the same instruction for the 11-CV-01846 retrial and the Court rejected it
      as unnecessary and incorrect in numerous respects.  *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-
23    1846, Dkt. No. 2784 (N.D. Cal. Nov. 18, 2013) (declining to include jury instruction on
      availability of acceptable non-infringing alternatives); Dkt. No. 2739 at 416 ("with regard to
24    Apple's proposed limiting instruction regarding use of products found not to infringe by the prior
      jury as evidence of the availability of acceptable non-infringing alternatives, that, that limiting
25    instruction is denied.  I think that it has several misstatements of law.").  There is no reason for
      the Court to depart from its previous ruling.  *First,* non-infringing alternatives are covered by the
26    jury instruction on "Lost Profits—Factors to Consider."  *Second*, the first paragraph of Apple's
      proposed instruction conflates the distinct concepts of "acceptability" and "availability."  *Third*,
27    Apple's focus on whether a non-infringing alternative was available to Samsung "during the

28

relevant damages period" – as opposed to the infringement period – is incorrect and contradicts the Court's Order re Noninfringing Alternatives in 11-CV-01846 (Dkt. No. 2657).  Indeed, in the very next paragraph, Apple refers to the "infringement period."  *Fourth,* Apple's proposed instruction is incoherent.  It asserts that, in considering whether an alternative product was "on the market" or "on sale and available," the jury may consider whether "the alternative product infringed any Apple patents."  But whether a product infringed any Apple patents has nothing to do with the factual question of whether a product was "on the market" or "on sale."  *Fifth*, Apple's proposed instruction is hopelessly ambiguous and confusing.  It provides that the jury may consider whether the alternative product infringed "any Apple patents," but does not clarify that it wants the jury to consider *unasserted* Apple patents.  It also refers to "incorporat[ing] the non-infringing features" without any explanation of what the "incorporation" or "non-infringing features" would be.  *Sixth,* Apple seeks to inject the same arguments that the Court already rejected in 11-CV-01846 , including its reliance on *Rite-Hite Co. v. Kelley Corp.*, 56 F.3d 1538 (Fed. Cir. 1995).  This Court has already held that "[b]ecause an acceptable noninfringing substitute need not be a product that was actually on the market at the time of infringement, the fact that the Samsung products infringed some of Apple's patents does not preclude Samsung from arguing that the noninfringing aspects of these products provide evidence that Samsung *could* have offered a fully noninfringing products that would have been an acceptable noninfringing substitute."  *Apple Inc. v. Samsung Elecs., Co.* , 11-cv-1846, Dkt. No. 2657 at 9:21-16.  The Court has also previously held that a non-infringing alternative "need not have the patented feature to be deemed 'acceptable.'" *Id.* at 4:26-5:1, 6:27-7:30 ("[I]f Apple fails to convince the jury that consumers purchased its patented products because they desired the patented features. . . , then the jury could reasonably infer that Samsung's non-infringing products were acceptable substitutes even without further evidence that the non-infringing products contained the patented features").  Apple's proposed instruction that "a product lacking the advantages of that [sic] patented is not a substitute 'acceptable' to the customer who wants those advantages" elides its burden to prove "particularized consumer demand for the patented features." *Id.* at 5-6.  Apple's proposed instruction also improperly suggests that an alternative must be "on sale and available," contrary to law. *Id.* at 5:23-25, 9:21-23.  *Seventh,* Apple has chosen to selectively include only those parts of the Court's Order that it views as aiding its case, but ignores all those parts that do not.  *Finally,* Apple has articulated no legitimate difference between this case and the last one that would justify this instruction.  For example, Samsung's expert, Dr. Martin Rinard, identified multiple actual noninfringing alternatives to the '959 patent.  (Rinard Rebuttal Report, ¶¶ 294-341.)  For the '647 patent, Samsung's expert Dr. Jeffay identified numerous non-infringement positions to the asserted claims (Jeffay Rebuttal Rpt. ¶¶ 258-469), and also identified other actual design-arounds to the '647 patent.  (*Id.* at ¶¶ 484-531.)  For the '414 patent, Samsung identified ten actual non-infringing alternatives during discovery.  (*See* Samsung's July 15, 2013 Supplemental Response to Interrogatory No. 29 at 160-62, 175-77.)  In contrast, Samsung's ability to introduce design around evidence in the 11-cv-1846 trials was severely constrained by the Court's order precluding it from introducing evidence of actual design arounds (*see* Dkt. 898).  Nonetheless, the Court rejected Apple's proposed instruction there and should do so again here.

Apple's Position:

The availability of alleged or actual non-infringing alternatives will be significant factual dispute in resolving damages in the present case.  Further, it is undisputed that Samsung failed to provide in discovery any actual design-arounds for the '959, '647 and '414 Patents.  This provides a compelling factual difference between this case and 1846, in which Samsung asserted actual design arounds to every patent, and warrants a change in the 1846 instructions.  As a result of its failure to identify actual design-arounds for the specified patents in this case, Samsung will, by necessity, rely on *hypothetical* design arounds to rebut Apple's claim to lost profits.  How such a claim should be treated has been explicitly resolved by the Federal Circuit through a shift in the burden of proof.  *See Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).  "When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time. *Cf. Rite-Hite*, 56 F.3d at 1545.  The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period. *Cf. id.*" *Grain Processing*, 185 F.3d at 1353; *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009).  This burden shift is not included in the Northern District Model instruction because it arises only in cases in which a design-around had not been implemented, as is the case here.  The proposed instruction properly states Apple's initial burden and properly states Samsung's resulting burden in language that mirrors the Federal Circuit's opinion and the Northern District model. *Id.* ("Mere speculation or conclusory assertions will not suffice to overcome the inference."); *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009) ("However, because Medtronic did not actually have a noninfringing substitute "on the market" during the relevant accounting period, it was Medtronic that bore the burden of overcoming the inference of unavailability").  "The trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement.  Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits; substitutes only theoretically possible will not." *Grain Processing*, 185 F.3d. at 1353; *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164, 1178-1179 (N.D. Cal. 2010).  Samsung should not be permitted misleadingly to offer an instruction that suggests Apple bears a burden of persuasion when the Federal Circuit says that it does not.

**PROPOSED FINAL JURY INSTRUCTION NO. 41 (Apple)**
**PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

One way Apple may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in Apple's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.


Source:

Adapted from 11-CV-01846 Final Instruction No. 39 (Dkt. No. 1903 at 53).

Samsung's Objections:

Although Apple's proposed instruction was adopted in 11-cv-01846, Apple improperly sought to use a market share (or *Mor-Flo*) analysis in that case as a substitute for showing "but for" causation.  This is plainly wrong, and Apple's proposal – particularly when combined with its proposal for the last sentence of the second paragraph in the "PATENT DAMAGES — LOST PROFITS — GENERALLY" instruction – would allow it to induce the same error here.  Apple's proposed instruction would allow it to improperly imply that Apple does not need to satisfy any causation requirement to recover lost profits in proportion with its market share.  This is incorrect, and Samsung's proposed instruction is in accord with the AIPLA model jury instruction, which more accurately states the law as requiring Apple to prove that it would have captured its *pro rata* market share but for Samsung's use of the patented invention.  AIPLA Model Patent Jury Instr. No. 11.7 (2012); *see also BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (reversing lost profits award based on market share where patentee "did not show with reasonable probability that [defendant's] customers would have purchased from [the patentee] in proportion with [the patentee's] market share."); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) ("a patentee must show that the infringing units do not have a disparately higher price than or possess characteristics significantly different from the patented product."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 41 (Samsung)**
**PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

3

4

5

6

7

8

If you find that there were acceptable non-infringing substitute products offered by manufacturers other than Apple or Samsung in the market, then Apple may still be entitled to lost profits on a portion of Samsung's infringing sales. The burden is on Apple to prove that it is more likely than not that the patented product competed in the same market as Samsung's infringing product, and that Apple would have captured its claimed share of that market but for Samsung's use of the patented invention. It is not necessary for Apple to prove that Apple and Samsung were the only two suppliers in the market for Apple to demonstrate entitlement to lost profits. The burden is on Apple, however, to show that it is more likely than not that it would have sold that portion had Samsung's product never used the patented invention.

9

10

11

12

13

14

15

16

**Source:** AIPLA Model Patent Jury Instr. No. 11.7 (2012); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-1357 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d at 1458 (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

17

**Apple's Objections:**

18

19

20

21

22

23

24

Since July 2012, Samsung has three times submitted an identical instruction to that submitted by Apple, which was previously used by the Court. (1846 Dkt. Nos. 1238 at 70; 1693 at 29; 2513 at 88.) The Court has given the instruction twice in circumstances raising the identical issues. (1846 Dkt. Nos. 1903 at 53; 2783 at 35.) The instruction used by the Court and proposed by Apple relies on the Northern District model, which is the source of other damages instructions. Samsung offers no compelling reason for change and no reason that the prior instruction is legally wrong. It instead proposes an instruction modified from the AIPLA model instructions, which improperly repeats language regarding Apple's alleged burdens from other instructions and that improperly limits Apple to a recovery based on whether, when and how many manufacturers other than Apple and Samsung sell alternative products. The Court (and Samsung) were right with respect to the instruction already given and there is no compelling reason to depart.

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 43 (Apple)**
**PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.  The patentee might also seek a royalty that is not calculated as a percentage of the net sales for the whole product, such as a royalty to be paid per unit sold.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining a reasonable royalty, you may consider the following factors:

    (1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

    (2)    The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

1    It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

2

3    Source:

4    Adapted from 11-CV-01846 Final Instruction No. 41 (Dkt. No. 1903 at 55-56).

5    Samsung's Objections:

6
     Apple proposes a change to the instruction that the Court gave in 11-cv-01846 by adding the
7    following new sentence at the end of the third paragraph:  "The patentee might also seek a royalty
     that is not calculated as a percentage of the net sales for the whole product, such as a royalty to be
8    paid per unit sold."   Notably, Apple previously agreed to this instruction *without the new*
9    *sentence* for the purposes of damages retrial in 11-cv-01846.  *Apple, Inc. v. Samsung Elecs., Co.,*
     11-cv-1846, Dkt. No. 1903 at 55-56 (N.D. Cal. Aug. 21, 2012) (Final Instruction No. 41).  There
10   is no reason for the Court to modify the instruction now.   At the *Daubert* hearing, the Court
     informed the parties that, absent a change in law or something else that justifies a change, the
11   Court would adopt the jury instructions from the first trial.  *See* January 23, 2014 Hearing at 5:10-
     14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial
12   unless you can point to either a change in the law or something else that justifies a change, but
13   there's going to be a heavy presumption that what was previously given will be given this time.").
     Apple's proposed addition also departs from the Model Patent Jury Instructions from the
14   Northern District of California.  N.D. Cal. Model Patent Jury Instr. B.5.6.  Moreover, Apple's
     proposed addition would cause jury confusion by using a financial phrase – "net sales" – nowhere
15   mentioned or defined elsewhere in the instruction.  Apple's addition is intended only to benefit
     itself and should be rejected.
16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 43 (Samsung)**
**PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining a reasonable royalty, you may consider the following factors:

(1)   The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)   The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 41 (Dkt. No. 1903 at 55).

**Apple's Objections:**

The sole difference between Apple and Samsung's instruction is the following sentence, which appears at the end of the third full paragraph of Apple's instruction:  "The patentee might also seek a royalty that is not calculated as a percentage of the net sales for the whole product, such as a royalty to be paid per unit sold."  All of the damages experts for Apple or Samsung will testify to a royalty based on a per unit basis, not as a percent of the revenue for the accused products.  No proposed royalty by any expert varies bases on any revenue amount.  Given this circumstance and the lack of any evidence of a revenue based royalty or a percentage based royalty, the Court should modify the Northern District model to conform to the evidence that will be presented.

**PROPOSED FINAL JURY INSTRUCTION NO. 44 (Apple)**
**PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents Samsung infringed. You may not award Apple damages for infringing a patent before Samsung had notice of Apple's claim of infringement of that patent. Samsung received notice of Apple's claim of infringement for the '647 patent on August 2010.  Samsung had notice of Apple's claim of infringement for all the other asserted patents on February 8, 2012.

With respect to Samsung's '239 and '449 patents, damages that Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.  You may not award Samsung damages for infringing a patent before Apple had notice of Samsung's claim of infringement of that patent.  Apple received notice of Samsung's claim of infringement for the asserted patents on April 18, 2012.

Source:

Adapted from 1846 Damages Retrial 11-CV-01846 Final Instruction No. 28 (Dkt. No. 2783 at 36) and 1846 Original 11-CV-01846 Final Instruction No. 42 (Dkt. No. 1903 at 29-30, 57).

Samsung's Objections:

Apple's proposed instruction is adapted from the damages retrial in the 11-cv-1846 case.  Use of that instruction is inappropriate here because it was given only after the Court's ruling in 11-cv-1846 establishing certain notice dates as a matter of law.  *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846, Dkt. No. 2271 (N.D. Cal. March 1, 2013).  No such ruling exists in this case and actual notice under 35 U.S.C. § 287 must be proven by the parties at trial.  Additionally, this instruction misstates the law because it implies that lost profits can be awarded even if the patentee does not provide actual notice of the products that purportedly infringe. Dkt. No. 2271 at 18:12-14 (emphasis added).  As the Court recognized in its jury instructions in the first 11-cv-1846 trial, actual notice requires a determination of "the date each Samsung entity received actual written notice of the patents *and specific products* alleged to infringe." *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846,  Dkt. No. 1903 at 57, 75 (N.D. Cal. Aug. 21, 2012) (emphasis added); *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d. 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.").  Indeed, Apple agreed with this "product specific" language for the first trial. Dkt. No. 1232 at 155.  Such language is also included in the corresponding N.D.Cal. Model Patent Instruction.  *See* N.D.Cal. Model Instruction 5.8 Date of Commencement – Products ("[Y]ou must determine the date that [alleged infringer] received actual written notice of the [ ] patent and the specific product alleged to infringe;]").  Although there was a subsequent dispute in 11-cv-1846 about whether Samsung had waived a "product-specific" notice argument for the retrial, no such dispute exists here and the law is uncontested.  The Court should thus adopt Samsung's proposed instruction, which hues to the Court's instruction from the first trial and the model instruction.

**PROPOSED FINAL JURY INSTRUCTION NO. 44 (Samsung)_
PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents it infringed.

You must determine the date that each Samsung entity received actual written notice of the patents and the specific products alleged to infringe.

It is undisputed that Apple informed Samsung Electronics Company of the '647 patent on August 4. 2010, and that Apple's lawsuit informed each Samsung entity of all of Apple's asserted patents on February 8, 2012.  It is up to you, based on the evidence, to decide when Apple informed each Samsung entity of each specific product alleged to infringe each of the asserted Apple patents.

Damages Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.

You must determine the date that Apple received actual written notice of the patents and the specific products alleged to infringe.

It is undisputed that  Samsung's lawsuit informed Apple of all of Samsung's asserted patents on April 18, 2012.  It is up to you, based on the evidence, to decide when Samsung informed Apple of each specific product alleged to infringe each of the asserted Samsung patents.


**Source:**

Adapted from Case No. 11-CV-01846 Final Instruction No. 42 (Dkt. No. 1903 at 57); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010); *SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).


**Apple's Objections:**

The present instruction concerns the notice requirement under 35 U.S.C. § 287.  There is no factual issue in dispute based on law already established by the Court's prior rulings, the parties' sworn statements and the pleadings in the case.  The Court has already ruled that the filing of a complaint gives a party notice of a claim of infringement for any patent included in the complaint and twice provided a jury instruction that states the same. (*See* 1846 Dkt. Nos. 2271 at 18:4-11; 1903 at 57:6-8.)  Samsung agrees in its proposed instruction that it received notice of Apple's claim of infringement for all five patents no later than February 8, 2012, when the complaint was filed in this action.  Samsung's effort to extend the date for notice based on an alleged need to identify each new product was already rejected by the Court before the 1846 damages retrial. (1846 Dkt. 2690 at 6-7).

Samsung's own proposed instruction admits that "It is undisputed that Apple informed Samsung Electronics Company of the '647 patent on August 4. 2010."   This admission is based on the same August 4, 2010 presentation that was the basis for notice for the '381 patent in the 1846 case.  (*See* PX132 at 15 ("Apple's Patents Infringed by Android Applications Layer . . . U.S. 5,946,647 – Data Detectors"); *cf.* PX52.14 from 1846 case).   The Court already found as a matter of law that this August 4, 2010 presentation sufficed to give notice of Apple's '381 Patent under identical circumstances.  (1846 Dkt. No. 2271 at 18:12-19:14.)  Samsung offers no reason to distinguish the Court's ruling in 1846 with respect to the next page of the identical document, which gives Samsung notice of its infringement of the '647 Patent.

Thus, there is no factual issue for the jury to decide and no need for the jury to receive anything other than a statement by the Court of the date on which damages for each patent can start. Apple's instruction eases the burden on the Court and eases the burden on the jury.

Even if the Court's concludes that a factual issue exists, Samsung's instruction is wrong and inconsistent with the Court's conclusions on the same issue in the damages retrial.  (1846 Dkt. No. 2690 at 6:14-7:16).  Nor is it consistent with Federal Circuit law on the issue: "If a patentee's initial notice is sufficiently specific to accuse one product of infringement, 'ensuing discovery of other models and related products may bring those products within the scope of the notice.'" *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012) (quoting *Funai,* 616 F.3d at 1373).  Samsung's instruction wrongly instructs the jury that notice for each new product is required even after a complaint is filed.  Thus, if any instruction should be given, it should mirror Final Jury Instruction No. 42 from the 1846 case with the patent numbers and complaint dates from this action inserted, *i.e.*, "While you may identify an earlier date by which each Samsung entity had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '414, '959, '647, '721 and '172 patents no later than February 8, 2012." (1846 Dkt. No. 1903 at 57:6-10).

1    **INDUCEMENT, CONTRIBUTORY, AND WILLFULNESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 45 (Apple)
## PATENTS—INDUCING PATENT INFRINGEMENT

2

3

Apple claims that Samsung Electronics Company actively induced its subsidiaries in the United States, Samsung Telecommunications America and Samsung Electronics America, to infringe Apple's patents.

4

5

In order for there to be inducement of infringement by Samsung Electronics Company, someone else must directly infringe the asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, the alleged infringer must:

6

7

8

      1.     have intentionally taken action that actually induced direct infringement by another;

9

10

      2.     have been aware of the asserted patent; and

11

      3.     have known that the acts it was causing would be infringing.

12

The "knowledge" and "awareness" requirements for inducement can be satisfied by showing that a party was willfully blind.  If Samsung Electronics Company did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that Samsung Electronics Company was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that Samsung Electronics Company took a risk that was substantial and unjustified.

13

14

15

16

17

If you find that Samsung Electronics Company was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, Samsung Electronics Company cannot be liable for inducement.

18

19

20

Source:

21

Adapted from 11-CV-01846 Final Instruction No. 58 (Dkt. No. 1903 at 77).

22

**Samsung's Objections:**

23

24

Samsung objects to the first sentence of the third paragraph of Apple's proposed inducement instruction as it is unnecessary and potentially confusing.  While the remainder of the paragraph tracks Northern District of California Model Patent Jury Instruction 3.9, the first sentence of Apple's instruction is not in the model instruction, and there is no basis for differing from the model here. The remainder of the third paragraph of the instruction lays out the standard for what it means to be "willfully blind." *See, e.g., Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1369 (Fed. Cir. 2013). The first sentence is sufficiently vague as to invite the jury to decide what

25

26

27

28

they think it means to be willfully blind and to apply a standard other than what is explained in the remainder of the paragraph.

**PROPOSED FINAL JURY INSTRUCTION NO. 45 (Samsung)**
**INDUCING PATENT INFRINGEMENT**

Apple claims that Samsung Electronics Company actively induced its subsidiaries, Samsung Telecommunications America and Samsung Electronics America, to infringe Apple's patents.

In order for there to be inducement of infringement by Samsung Electronics Company someone else must directly infringe the asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.   In order to be liable for inducement of infringement, the alleged infringer must:

      1.     have intentionally taken action that actually induced direct infringement by another;

      2.     have been aware of the asserted patent; and

      3.     have known that the acts it was causing would be infringing.

If Samsung Electronics Company did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that Samsung Electronics Company was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that Samsung Electronics Company took a risk that was substantial and unjustified.

If you find that Samsung Electronics Company was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, Samsung Electronics Company cannot be liable for inducement.

**Source:**
Adapted from Case No. 11-CV-01846 Final Instruction No. 58 (Dkt. No. 1903 at 47); 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.,* 131 S.Ct. 2060 (2011); *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (*en banc*) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005)); *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683 (Fed. Cir. 2008); *Commil USA, LLC v. Cisco Sys., Inc.,* 720 F.3d 1361, 1369 (Fed. Cir. 2013).

**Apple's Objections:**

There is no "compelling reason" to depart from the Court's prior instruction regarding inducement.  Samsung's proposed instruction differs from the prior instruction in three significant ways.

*First*, Samsung incorrectly deletes the Court's instruction regarding the willful blindness standard articulated in *Global-Tech Appliances, Inc. et. al. v. SEB S.A.,* 131 S.Ct. 2060, 2067 (2011).  (*See* Samsung's deletion of first sentence of the third paragraph that "[t]he 'knowledge' and

'awareness' requirements for inducement can be satisfied by showing that a party was willfully blind.").

**Second**, Samsung's instruction is incorrect and unsupported by the cases cited by Samsung. While Samsung seeks an instruction that "[a]nother person may directly infringe an apparatus claim by putting the apparatus as a whole into service . . . [without the] need to physically control each element," the cases cited by Samsung expressly state the opposite.  *See, e.g., Centillion Data Sys., LLC v. Qwest Commc'n Int'l Inc.*, 631 F.3d 1279, 1283-86 (Fed. Cir. 2011) ("We hold that to 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.,* control the system as a whole and obtain benefit from it.").

**PROPOSED FINAL JURY INSTRUCTION NO. 46 (Apple)**
**CONTRIBUTORY PATENT INFRINGEMENT**

Apple also argues that each of Samsung Electronics Company Ltd., Samsung Telecommunications America and/or Samsung Electronics America has contributed to infringement by another (either another Samsung entity or another company).  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by one of the Samsung entities, another Samsung entity or another company must directly infringe the asserted claims of the '414, '647, '959, and '721 patents.  If there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '414, '647, '959, or '721 patents, then contributory infringement exists if:

    1.    A Samsung entity supplied an important component of the infringing part of the product;

    2.    The component is not a common component suitable for non-infringing use; and

    3.    A Samsung entity supplied the component with the knowledge of the patent and knowledge that the component was especially made or adopted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Source:

Adapted from N.D. Cal. Model Jury Instr. B.3.8.

**PROPOSED FINAL JURY INSTRUCTION NO. 46 (Samsung)**
**CONTRIBUTORY PATENT INFRINGEMENT**

Apple also contends that Samsung has contributed to infringement by another.  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by Samsung, someone other than Samsung must directly infringe the asserted claims of Apple's '414, '647, '959, and '721 patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find that someone has directly infringed an asserted claim of Apple's '647, '959, '414 or '721 patents, then contributory infringement exists if:

> (1)    The accused infringer supplied an important component of the infringing part of the product;
>
> (2)    The component is not a common component suitable for non-infringing use; and
>
> (3)    The accused infringer supplied the component with the knowledge of the infringed patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**Source:**

Adapted from Northern District of California Model Patent Jury Instructions, §B3.8; 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et. al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**<u>Apple's Objections:</u>**

Apple objects to Samsung's proposed instruction because the proposed instruction fails to address the fact that each of the Samsung entities should be treated as independent actors for purposes of showing contributory infringement.  Samsung's instruction implies wrongly that the jury must identify an infringing party other than one of the Samsung parties to which the other Samsung parties contributed.  Samsung's parent entity should be able to avoid a jury verdict by implying that Apple must show that AT&T, not STA or SEA, infringed.  The potential for confusion from this omission is far more likely to affect the jury's deliberations than any potential uncertainty from including the definition of "common component" at the end of the instruction.  Apple further incorporates its objections to Samsung's proposed instruction regarding inducement.

**PROPOSED FINAL JURY INSTRUCTION NO. 47 (Apple)**
**WILLFUL PATENT INFRINGEMENT**

In this case, Apple and Samsung argue that the other side willfully infringed its patents.

To prove willful infringement, each side must first persuade you that the other side infringed a valid and enforceable claim of one or more of its patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, each side must persuade you by clear and convincing evidence that the other side acted with reckless disregard of the patent it infringed.

To demonstrate such "reckless disregard," each side must persuade you that the other side actually knew, or it was so obvious that the other side should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent.

Source:

Adapted from 11-CV-01846 Final Instruction No. 59 (Dkt. No. 1903 at 78).

**Samsung's Objections:**

In Samsung's prior objections to Apple's proposed preliminary and final jury instructions, Samsung objected to Apple's omission of Samsung's allegation that Apple's infringement was willful.  In the present filing, Apple has included Samsung's allegation that Apple's infringement was willful in order "to conform to the Court's tentative preliminary jury instructions."  Apple's Objection to Samsung's Proposed Final Jury Instruction No. 47.  However, Apple maintained its objection to this inclusion.  *Id.*

As previously stated in Samsung's objections to Apple's proposed preliminary and final jury instructions, Samsung's allegations of willful infringement are proper and therefore Samsung maintains that any exclusion of this allegation would be improper.

**PROPOSED FINAL JURY INSTRUCTION NO. 47 (Samsung)**
**WILLFUL PATENT INFRINGEMENT**

In this case, Apple and Samsung both argue that the other side willfully infringed its patents.

To prove willful infringement, each party must first persuade you that the other side infringed a valid and enforceable claim of one or more of its patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, the patent holder must persuade you by clear and convincing evidence that the other side acted with reckless disregard of the patent it infringed.

To demonstrate such "reckless disregard," the patent holder must persuade you that the other side actually knew, or it was so obvious that the other side should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 59 (Dkt. No. 1903 at 78).

**<u>Apple's Objections:</u>**

As previously stated in its objections to Samsung's proposed preliminary and final jury instructions, Apple objects to the inclusion of any reference in the jury instructions that its alleged infringement of Samsung's patents was willful. Apple has included such language in this filing, however, to conform to the Court's tentative preliminary jury instructions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C
# REDLINE AGAINST DKT. 1458

[COUNSEL LISTED ON SIGNATURE PAGES]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No.    12-cv-00630-LHK (PSG) |
| Plaintiff, | **REVISED PROPOSED JOINT FINAL JURY INSTRUCTIONS WITH OBJECTIONS** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendant. | |

1    The parties provide the accompanying revised proposed final jury instructions in

2    accordance with the Court's March ~~10~~30, 2014 Order ~~to File Revised Proposed Jury Instructions~~

3    ~~and Verdict Forms~~ (Dkt. No. ~~1422~~1548).  Pursuant to the Stipulation and Order re Submission of

4    Proposed Final Jury Instructions (Dkt. No. 1313), the parties expressly preserve and do not waive

5    any of their rights and objections with respect to (1) jury instructions previously submitted by any

6    party but not given by the Court in Case No. 11-CV-01846 ("the the 1846 Case"); (2) any of their

7    rights and objections with respect to jury instructions previously given by the Court in the 1846

8    Case, and including any such instructions included herein in whole or in part; or (3) jury

9    instructions stemming from orders from the first trial and post-trial proceedings the 1846 Case,

10   including but not limited to the March 1, 2013 Order re: Damages that granted Samsung's motion

11   for a new trial.  For Apple, those objections and proposed instructions include but are not limited

12   to those set forth in the 1846 Case Dkt. Nos. 895-1, 1047, 1231, 1232, 1241, 1264, 1279, 1279-1,

13   1327, 1329, 1402, 1426, 1591, 1640, 1641, 1693, 1694, 1803, 1810, 1811, 1815, 1822, 1830,

14   1834, 1845, 1856, 1861, 1863, 1883, 1884, 2260, 2513, 2707, 2724, 2768 as well as any

15   objections or proposed instructions stated orally before the Court (*see, e.g.*, 7/24/12 Hr'g Tr. 32-

16   39; 7/27/12 Hr'g Tr. 4, 39-51, 72-76; Dkt. No. 1621 at 4-45; Dkt. No. 1695 at 1642-43; Dkt. No.

17   1998 at 3730-3940; Dkt. No. 2562 at 111-19; Dkt. No. 2738 at 11-15; Dkt. Nos. 2738 and 2739 at

18   307-20; Dkt. No. 2739 at 416-18; Dkt. No. 2841 at 941-45, 1055-57; Dkt. No. 2843 at 1210-35;

19   Dkt. No. 2844 at 1403-15).  For Samsung, those objections and proposed instructions include but

20   are not limited to those set forth in the 1846 Case Dkt. Nos. 987-03, 1221, 1231, 1232, 1238,

21   1264, 1279, 1279-01, 1329, 1388, 1389, 1423, 1426, 1428, 1591, 1600, 1622, 1656, 1670, 1693,

22   1694, 1800, 1809, 1812, 1821, 1821-01, 1831, 1846, 1858, 1859, 1860, 1862, 1867, 1883, 1892,

23   2241, 2513, 2707,  2724, 2768, as well as any objections or proposed instructions stated orally

24   before the Court (*see e.g.*, 7/24/12 Hr'g Tr. 32-39; 7/27/12 Hr'g Tr. 4, 39-51, 72-76; Dkt. No.

25   1621 at 4-45; Dkt. No. 1695 at 1642-43; Dkt. No. 1998 at 3730-3940; 10/23/13 Hr'g Tr. 1-27,

26   108-12; Dkt. No. 2562 at 111-19; Dkt. No. 2738 at 11-15; Dkt. Nos. 2738 and 2739 at 307-20;

27   Dkt. No. 2739 at 416-18; Dkt. No. 2841 at 941-45, 1055-57; Dkt. No. 2843 at 1210-35; Dkt. No.

28

2844 at 1403-15).  The parties incorporate by reference all of their previously submitted proposed jury instructions and objections to jury instructions in the 1846 Case.

Attached as Exhibit A is the parties' revised proposed set of undisputed final jury instructions.

Attached as Exhibit B is the parties' revised proposed set of disputed final jury instructions.

Attached as Exhibit C is a redline against ~~the parties' original submission~~Dkt. 1458.

Dated: ~~March 13~~April 1, 2014

By: /s/ ~~Rachel Krevans~~Mark D. Selwyn _____     By:  s/ Victoria F. Maroulis_

_____

| | |
|---|---|
| Attorney for Plaintiff and Counterclaim-Defendant | Attorney for Defendants and Counterclaim-Plaintiffs |
| APPLE INC. | SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

HAROLD J. McELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
JACK W. LONDEN (CA SBN 85776)
jlonden@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
RUTH N. BORENSTEIN (CA SBN 133797)
rborenstein@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
William.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

CHARLES K. VERHOEVEN (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
KEVIN A. SMITH (Bar No. 250814)
kevinsmith@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

KEVIN P.B. JOHNSON (Bar No. 177129 (CA);
2542082 (NY))
kevinjohnson@quinnemanuel.com
VICTORIA F. MAROULIS (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

WILLIAM C. PRICE (Bar No. 108542)
williamprice@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

1

## **TABLE OF CONTENTS**

2

**Page**

3 GENERAL CIVIL INSTRUCTIONS..................................................................6

4 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 1 DUTY OF JURY...............7

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2 BURDEN OF PROOF—
5 PREPONDERANCE OF THE EVIDENCE..................................................8

6 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3 BURDEN OF PROOF—
CLEAR AND CONVINCING EVIDENCE..................................................9

7 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4 TWO OR MORE
PARTIES—DIFFERENT LEGAL RIGHTS..............................................10

8 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5 WHAT IS EVIDENCE.................11

9 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7 EVIDENCE FOR LIMITED
PURPOSE.....................................................................................12

10 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9 CHARTS AND
11 SUMMARIES IN EVIDENCE..............................................................13

12 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10 DIRECT AND
CIRCUMSTANTIAL EVIDENCE..........................................................14

13 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11 CREDIBILITY OF
WITNESSES...................................................................................15

14 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12 IMPEACHMENT
EVIDENCE—WITNESS....................................................................16

15 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13 TAKING NOTES.................17

16 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14 DEPOSITION IN LIEU OF
LIVE TESTIMONY...........................................................................18

17 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15 USE OF
18 INTERROGATORIES OF A PARTY......................................................19

19 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 16 EXPERT OPINION.................20

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17 USE OF DEVICES
20 DURING DELIBERATIONS................................................................21

21 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19 DUTY TO DELIBERATE..........26

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 20 COMMUNICATION WITH
22 COURT........................................................................................27

23 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 21 RETURN OF VERDICT............28

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 23 PATENTS—
24 INFRINGEMENT BURDEN OF PROOF..................................................30

25 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26 PATENTS—LITERAL
INFRINGEMENT.............................................................................31

26 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 29 PATENTS—
INVALIDITY—BURDEN OF PROOF....................................................32

27 JOINT PROPOSED FINAL JURY INSTRUCTION NO. 31 PATENTS—WRITTEN
DESCRIPTION REQUIREMENT..........................................................33

28

# TABLE OF CONTENTS
## (continued)

Page

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34 PATENTS—
OBVIOUSNESS ........................................................................................... 34

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36 PATENT DAMAGES—
BURDEN OF PROOF ................................................................................... 36

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 40 PATENT DAMAGES—
LOST PROFITS—AMOUNT OF PROFIT ................................................. 37

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 42 PATENT DAMAGES—
REASONABLE ROYALTY—ENTITLEMENT .......................................... 38

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 48 MONETARY
REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE ............... 39

GENERAL CIVIL INSTRUCTIONS ...................................................................... 41

PROPOSED FINAL JURY INSTRUCTION NO. 6 (APPLE) WHAT IS NOT
EVIDENCE ................................................................................................... 42

PROPOSED FINAL JURY INSTRUCTION NO. 6 (SAMSUNG) WHAT IS NOT
EVIDENCE ................................................................................................... 44

PROPOSED FINAL JURY INSTRUCTION NO. 8 (APPLE) CHARTS AND SLIDES
NOT RECEIVED IN EVIDENCE ............................................................... 46

PROPOSED FINAL JURY INSTRUCTION NO. 8 (SAMSUNG) CHARTS AND
SLIDES NOT RECEIVED IN EVIDENCE ................................................. 47

PROPOSED FINAL JURY INSTRUCTION NO. 18 (APPLE) SUMMARY OF
CONTENTIONS ........................................................................................... 48

PROPOSED FINAL JURY INSTRUCTION NO. 18 (SAMSUNG) SUMMARY OF
CONTENTIONS ........................................................................................... 50

PROPOSED FINAL JURY INSTRUCTION NO. 22 (APPLE) PATENTS—
INTERPRETATION OF CLAIMS .............................................................. 53

PROPOSED FINAL JURY INSTRUCTION NO. 22 (SAMSUNG) PATENTS—
INTERPRETATION OF CLAIMS .............................................................. 55

PROPOSED FINAL JURY INSTRUCTION NO. 24 (APPLE) PATENTS—DIRECT
INFRINGEMENT ......................................................................................... 58

PROPOSED FINAL JURY INSTRUCTION NO. 24 (SAMSUNG) PATENTS—DIRECT
INFRINGEMENT ......................................................................................... 60

PROPOSED FINAL JURY INSTRUCTION NO. 25 (APPLE) PATENTS—DIRECT
INFRINGEMENT ......................................................................................... 62

PROPOSED FINAL JURY INSTRUCTION NO. 25 (SAMSUNG) DIRECT
INFRINGEMENT ......................................................................................... 64

PROPOSED FINAL JURY INSTRUCTION NO. 25A (SAMSUNG) DIRECT
INFRINGEMENT OF THE '959 AND '414 PATENTS ............................ 66

PROPOSED FINAL JURY INSTRUCTION NO. 26B (SAMSUNG) APPARATUS
CLAIMS--LITERAL INFRINGEMENT ..................................................... 68

PROPOSED FINAL JURY INSTRUCTION NO. 26C (SAMSUNG) APPARATUS
CLAIMS--LITERAL INFRINGEMENT ..................................................... 70

**TABLE OF CONTENTS**
(continued)

**Page**

PROPOSED FINAL JURY INSTRUCTION NO. 27 (APPLE) PATENT
INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS—'239 PATENT,
CLAIM 15 ................................................................................................................72

PROPOSED FINAL JURY INSTRUCTION NO. 27 (SAMSUNG) MEANS-PLUS-
FUNCTION CLAIMS—LITERAL INFRINGEMENT .....................................74

PROPOSED FINAL JURY INSTRUCTION NO. 32 (APPLE) PATENTS—
ANTICIPATION .......................................................................................................76

PROPOSED FINAL JURY INSTRUCTION NO. 32 (SAMSUNG) ANTICIPATION ............78

PROPOSED FINAL JURY INSTRUCTION NO. 32A (SAMSUNG) ANTICIPATION
OF THE '959 AND '414 PATENTS ........................................................................80

PROPOSED FINAL JURY INSTRUCTION NO. 33 (APPLE) PATENTS—
STATUTORY BARS ...............................................................................................82

PROPOSED FINAL JURY INSTRUCTION NO. 33 (SAMSUNG) PATENTS—
STATUTORY BARS ...............................................................................................84

PROPOSED FINAL JURY INSTRUCTION NO. 37 (APPLE) PATENT DAMAGES—
LOST PROFITS—GENERALLY ..........................................................................86

PROPOSED FINAL JURY INSTRUCTION NO. 37 (SAMSUNG) PATENT DAMAGES
—LOST PROFITS—GENERALLY ......................................................................88

PROPOSED FINAL JURY INSTRUCTION NO. 38 (APPLE) PATENT DAMAGES—
LOST PROFITS—FACTORS TO CONSIDER ....................................................90

PROPOSED FINAL JURY INSTRUCTION NO. 38 (SAMSUNG) PATENT
DAMAGES—LOST PROFITS—FACTORS TO CONSIDER ...........................92

PROPOSED FINAL JURY INSTRUCTION NO. 39 (APPLE) PATENT DAMAGES—
LOST PROFITS—AVAILABILITY OF ACCEPTABLE NON-INFRINGING
ALTERNATIVES ....................................................................................................94

PROPOSED FINAL JURY INSTRUCTION NO. 41 (APPLE) PATENT DAMAGES—
LOST PROFITS—MARKET SHARE ...................................................................97

PROPOSED FINAL JURY INSTRUCTION NO. 41 (SAMSUNG) PATENT
DAMAGES—LOST PROFITS—MARKET SHARE ...........................................98

PROPOSED FINAL JURY INSTRUCTION NO. 43 (APPLE) PATENT DAMAGES—
REASONABLE ROYALTY—DEFINITION .........................................................99

PROPOSED FINAL JURY INSTRUCTION NO. 43 (SAMSUNG) PATENT
DAMAGES—REASONABLE ROYALTY—DEFINITION .............................102

PROPOSED FINAL JURY INSTRUCTION NO. 44 (APPLE) PATENT DAMAGES—
DATE OF COMMENCEMENT—PRODUCTS ..................................................105

PROPOSED FINAL JURY INSTRUCTION NO. 44 (SAMSUNG)—PATENT
DAMAGES—DATE OF COMMENCEMENT—PRODUCTS ..........................106

PROPOSED FINAL JURY INSTRUCTION NO. 45 (APPLE) PATENTS—INDUCING
PATENT INFRINGEMENT .................................................................................109

PROPOSED FINAL JURY INSTRUCTION NO. 45 (SAMSUNG) INDUCING PATENT
INFRINGEMENT ..................................................................................................111

# TABLE OF CONTENTS
## (continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 46 (APPLE) CONTRIBUTORY
PATENT INFRINGEMENT ..................................................................................... 113

PROPOSED FINAL JURY INSTRUCTION NO. 46 (SAMSUNG) CONTRIBUTORY
PATENT INFRINGEMENT ..................................................................................... 115

PROPOSED FINAL JURY INSTRUCTION NO. 47 (APPLE) WILLFUL PATENT
INFRINGEMENT ..................................................................................................... 117

PROPOSED FINAL JURY INSTRUCTION NO. 47 (SAMSUNG) WILLFUL PATENT
INFRINGEMENT ..................................................................................................... 119

1

## TABLE OF CONTENTS

2

**Page**

3    GENERAL CIVIL INSTRUCTIONS.............................................................................6

4    JOINT PROPOSED FINAL JURY INSTRUCTION NO. 1 DUTY OF JURY..............................7

5    JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2 BURDEN OF PROOF—
     PREPONDERANCE OF THE EVIDENCE......................................................................8

6    JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3 BURDEN OF PROOF—
     CLEAR AND CONVINCING EVIDENCE.....................................................................9

7    JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4 TWO OR MORE
8    PARTIES—DIFFERENT LEGAL RIGHTS ..................................................................10

9    JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5 WHAT IS EVIDENCE .................11

     JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7 EVIDENCE FOR LIMITED
10   PURPOSE ..........................................................................................................12

11   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9 CHARTS AND
     SUMMARIES IN EVIDENCE...................................................................................13

12   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10 DIRECT AND
     CIRCUMSTANTIAL EVIDENCE .............................................................................14

13   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11 CREDIBILITY OF
     WITNESSES.......................................................................................................15

14   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12 IMPEACHMENT
15   EVIDENCE—WITNESS .......................................................................................16

     JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13 TAKING NOTES.......................17
16
     JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14 DEPOSITION IN LIEU OF
17   LIVE TESTIMONY ..............................................................................................18

18   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15 USE OF
     INTERROGATORIES OF A PARTY..........................................................................19

19   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 16 EXPERT OPINION ...................20

20   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17 USE OF DEVICES
     DURING DELIBERATIONS....................................................................................21

21   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19 DUTY TO DELIBERATE..........26

22   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 20 COMMUNICATION WITH
     COURT .............................................................................................................27

23   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 21 RETURN OF VERDICT ............28

24   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 23 PATENTS—
     INFRINGEMENT BURDEN OF PROOF .....................................................................30

25   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26 PATENTS—LITERAL
     INFRINGEMENT..................................................................................................31

26   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 27 PATENT INFRINGEMENT
     OF MEANS-PLUS-FUNCTION CLAIMS – '239 PATENT, CLAIM 15 ......................32

27   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 29 PATENTS—
     INVALIDITY—BURDEN OF PROOF .......................................................................33

28

1
2

**TABLE OF CONTENTS**
(continued)

Page

3   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34 PATENTS—
4   OBVIOUSNESS .................................................................................. 35

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36 PATENT DAMAGES—
5   BURDEN OF PROOF .......................................................................... 37

6   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 40 PATENT DAMAGES—
   LOST PROFITS—AMOUNT OF PROFIT .......................................... 38

7   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 42 PATENT DAMAGES—
   REASONABLE ROYALTY—ENTITLEMENT ................................... 39

8   JOINT PROPOSED FINAL JURY INSTRUCTION NO. 48 MONETARY
   REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE .............. 40

9   GENERAL CIVIL INSTRUCTIONS ........................................................ 42

10  PROPOSED FINAL JURY INSTRUCTION NO. 6 (APPLE) WHAT IS NOT
   EVIDENCE ........................................................................................ 43

11  PROPOSED FINAL JURY INSTRUCTION NO. 6 (SAMSUNG) WHAT IS NOT
12  EVIDENCE ........................................................................................ 45

PROPOSED FINAL JURY INSTRUCTION NO. 8 (APPLE) CHARTS AND SLIDES
13  NOT RECEIVED IN EVIDENCE ....................................................... 47

14  PROPOSED FINAL JURY INSTRUCTION NO. 8 (SAMSUNG) CHARTS AND
   SLIDES NOT RECEIVED IN EVIDENCE ........................................... 48

15  PROPOSED FINAL JURY INSTRUCTION NO. 18 (APPLE) SUMMARY OF
   CONTENTIONS ................................................................................. 49

16  PROPOSED FINAL JURY INSTRUCTION NO. 18 (SAMSUNG) SUMMARY OF
17  CONTENTIONS ................................................................................. 53

PROPOSED FINAL JURY INSTRUCTION NO. 22 (APPLE) PATENTS—
18  INTERPRETATION OF CLAIMS ....................................................... 57

19  PROPOSED FINAL JURY INSTRUCTION NO. 22 (SAMSUNG) PATENTS—
   INTERPRETATION OF CLAIMS ....................................................... 59

20  PROPOSED FINAL JURY INSTRUCTION NO. 24 (APPLE) PATENTS—DIRECT
   INFRINGEMENT ............................................................................... 62

21  PROPOSED FINAL JURY INSTRUCTION NO. 24 (SAMSUNG) PATENTS—DIRECT
22  INFRINGEMENT ............................................................................... 64

PROPOSED FINAL JURY INSTRUCTION NO. 25 (APPLE) PATENTS—DIRECT
23  INFRINGEMENT ............................................................................... 66

24  PROPOSED FINAL JURY INSTRUCTION NO. 25 (SAMSUNG) DIRECT
   INFRINGEMENT ............................................................................... 68

25  PROPOSED FINAL JURY INSTRUCTION NO. 25A (SAMSUNG) DIRECT
   INFRINGEMENT OF THE '959 AND '414 PATENTS ........................ 70

26  PROPOSED FINAL JURY INSTRUCTION NO. 26C (SAMSUNG) APPARATUS
27  CLAIMS--LITERAL INFRINGEMENT ............................................. 72

PROPOSED FINAL JURY INSTRUCTION NO. 32 (APPLE) PATENTS—
28  ANTICIPATION ................................................................................. 77

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**
(continued)

**Page**

PROPOSED FINAL JURY INSTRUCTION NO. 32 (SAMSUNG) ANTICIPATION.............. 80

PROPOSED FINAL JURY INSTRUCTION NO. 32A (SAMSUNG) ANTICIPATION
OF THE '959 AND '414 PATENTS ........................................................................ 82

PROPOSED FINAL JURY INSTRUCTION NO. 33 (APPLE) PATENTS—
STATUTORY BARS ............................................................................................ 84

PROPOSED FINAL JURY INSTRUCTION NO. 33 (SAMSUNG) PATENTS—
STATUTORY BARS ............................................................................................ 86

PROPOSED FINAL JURY INSTRUCTION NO. 37 (APPLE) PATENT DAMAGES —
LOST PROFITS — GENERALLY ........................................................................ 88

PROPOSED FINAL JURY INSTRUCTION NO. 37 (SAMSUNG) PATENT DAMAGES
— LOST PROFITS — GENERALLY .................................................................... 90

PROPOSED FINAL JURY INSTRUCTION NO. 38 (APPLE) PATENT DAMAGES—
LOST PROFITS—FACTORS TO CONSIDER ...................................................... 92

PROPOSED FINAL JURY INSTRUCTION NO. 38 (SAMSUNG) PATENT
DAMAGES—LOST PROFITS—FACTORS TO CONSIDER.................................... 94

PROPOSED FINAL JURY INSTRUCTION NO. 39 (APPLE) PATENT DAMAGES—
LOST PROFITS—AVAILABILITY OF ACCEPTABLE NON-INFRINGING
ALTERNATIVES.................................................................................................. 96

PROPOSED FINAL JURY INSTRUCTION NO. 41 (APPLE) PATENT DAMAGES—
LOST PROFITS—MARKET SHARE.................................................................... 99

PROPOSED FINAL JURY INSTRUCTION NO. 41 (SAMSUNG) PATENT
DAMAGES—LOST PROFITS—MARKET SHARE ............................................ 100

PROPOSED FINAL JURY INSTRUCTION NO. 43 (APPLE) PATENT DAMAGES—
REASONABLE ROYALTY—DEFINITION.......................................................... 101

PROPOSED FINAL JURY INSTRUCTION NO. 43 (SAMSUNG) PATENT
DAMAGES—REASONABLE ROYALTY—DEFINITION.......................................... 104

PROPOSED FINAL JURY INSTRUCTION NO. 44 (APPLE) PATENT DAMAGES—
DATE OF COMMENCEMENT—PRODUCTS........................................................ 107

PROPOSED FINAL JURY INSTRUCTION NO. 44 (SAMSUNG)  PATENT
DAMAGES—DATE OF COMMENCEMENT—PRODUCTS.................................... 108

PROPOSED FINAL JURY INSTRUCTION NO. 45 (APPLE) PATENTS—INDUCING
PATENT INFRINGEMENT ................................................................................ 111

PROPOSED FINAL JURY INSTRUCTION NO. 45 (SAMSUNG) INDUCING PATENT
INFRINGEMENT................................................................................................ 113

PROPOSED FINAL JURY INSTRUCTION NO. 46 (APPLE) CONTRIBUTORY
PATENT INFRINGEMENT ................................................................................ 115

PROPOSED FINAL JURY INSTRUCTION NO. 46 (SAMSUNG) CONTRIBUTORY
PATENT INFRINGEMENT ................................................................................ 116

PROPOSED FINAL JURY INSTRUCTION NO. 47 (APPLE) WILLFUL PATENT
INFRINGEMENT................................................................................................ 117

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**
**(continued)**

**Page**

PROPOSED FINAL JURY INSTRUCTION NO. 47 (SAMSUNG) WILLFUL PATENT
INFRINGEMENT ........................................................................................................... 118

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A
# PROPOSED UNDISPUTED INSTRUCTIONS

1

**GENERAL CIVIL INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 1**
**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  Do not let personal likes or dislikes, opinions, prejudices, bias, or sympathy influence your decision.  Bias includes bias for or against any party or any witness based upon nationality, race or ethnicity.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.


Source:

11-CV-01846 Final Instruction No. 1 (Dkt. No. 1903 at 8).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2**
**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Source:

11-CV-01846 Final Instruction No. 2 (Dkt. No. 1903 at 9).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3**
**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

Source:

11-CV-01846 Final Instruction No. 3 (Dkt. No. 1903 at 10).

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4**
**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

3

4

You should decide the case as to each party separately.  Unless otherwise stated, the instructions apply to all parties.

5

6

Source:

7

11-CV-01846 Final Instruction No. 4 (Dkt. No. 1903 at 11).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5**
**WHAT IS EVIDENCE**

The trial is now over.  The evidence you are to consider in deciding what the facts are consists of:

      1.      the sworn testimony of any witness;

      2.      the exhibits which are received into evidence; and

      3.      any facts to which the lawyers have agreed.

Source:

11-CV-01846 Final Instruction No. 5 (Dkt. No. 1903 at 12).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7**
**EVIDENCE FOR LIMITED PURPOSE**

2

3    Some evidence may have been admitted for a limited purpose only.  You must consider it only for

4    that limited purpose and for no other.

5

6    Source:

7    11-CV-01846 Final Instruction No. 7 (Dkt. No. 1903 at 14).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9**
**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. You may use those charts and summaries as evidence, even though the underlying documents and records are not here. You should give them only such weight as you think they deserve.

Source:

11-CV-01846 Final Instruction No. 9 (Dkt. No. 1903 at 16).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Source:

11-CV-01846 Final Instruction No. 10 (Dkt. No. 1903 at 17).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness said, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testified about it.

In considering the testimony of any witness, you may take into account:

      (1)     the opportunity and ability of the witness to see or hear or know the things testified to;

      (2)     the witness's memory;

      (3)     the witness's manner while testifying;

      (4)     the witness's interest in the outcome of the case and any bias or prejudice;

      (5)     whether other evidence contradicted the witness's testimony;

      (6)     the reasonableness of the witness's testimony in light of all the evidence; and

      (7)     any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Source:

11-CV-01846 Final Instruction No. 11 (Dkt. No. 1903 at 18).

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12**
**IMPEACHMENT EVIDENCE—WITNESS**

3

4

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

5

6

Source:

7

8

11-CV-01846 Final Instruction No. 12 (Dkt. No. 1903 at 19).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13**
**TAKING NOTES**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.


Source:

11-CV-01846 Final Instruction No. 13 (Dkt. No. 1903 at 20).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Source:

11-CV-01846 Final Instruction No. 14 (Dkt. No. 1903 at 21).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15
USE OF INTERROGATORIES OF A PARTY**

2

3

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

4

5

6

7

Source:

8

11-CV-01846 Final Instruction No. 15 (Dkt. No. 1903 at 22).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 16
EXPERT OPINION**

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Source:

11-CV-01846 Final Instruction No. 16 (Dkt. No. 1903 at 23).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17**
**USE OF DEVICES DURING DELIBERATIONS**

**Device Handling Directions**

The physical devices you received are evidence in this trial.

You may use them in your deliberations but must not alter or modify the devices in any way.

Some of the devices have SIM cards in their packaging.  These SIM cards are not to be inserted into the phones.

Some of the devices have a mobile data connection.

Others must first be connected to the Court's Wi-Fi network to access the Internet.

Once connected, you must decline any software update notifications that may be presented to you.

You also must not download any content, such as apps, music, photographs, or games, to the devices.

1   *Connecting to the Internet*

2   To connect a device to the Court's Wi-Fi network, select "USDCSJ01" from the list of available
3   wireless networks, as depicted below.



From the Applications menu, select the Web Browser application.



From the Court's Wi-Fi log in page, scroll to the bottom and click on the blue "Connect!" button.

1   *Declining System Update Notifications*

2   Some devices may display a "System update" notification like the ones below.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

18   If you see such a screen, you must decline the request to update the system.  Select "Install later"
19   or press the "home" or "back" button to exit the notification screen.



20
21
22
23   Source:
24   11-CV-01846 Final Instruction No. 17 (Dkt. No. 1903 at 24-28).
25
26
27
28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19
DUTY TO DELIBERATE**

2

3
When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

4

5
You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

6

7
Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

8

9
Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

10

11
It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

12

13
Source:

11-CV-01846 Final Instruction No. 19 (Dkt. No. 1903 at 31).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ~~A~~B -- PROPOSED ~~UNDISPUTED~~DISPUTED INSTRUCTIONS
CASE NO. 12-CV-00630-LHK (PSG)
~~sf-3387656~~
~~ActiveUS 125375070v.3~~

26

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 20**
**COMMUNICATION WITH COURT**

2

3

4

5

6

7

8

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

9

Source:

10

11-CV-01846 Final Instruction No. 20 (Dkt. No. 1903 at 32).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 21**
**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

Source:

11-CV-01846 Final Instruction No. 21 (Dkt. No. 1903 at 33).

1

**PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 23**
**PATENTS—INFRINGEMENT BURDEN OF PROOF**

2

3

I will now instruct you on the rules you must follow in deciding whether either Apple or Samsung
(or both) has proven that the other side has infringed one or more of the asserted claims of the
asserted patents.  To prove infringement of any claim, the patent holder must persuade you by a
preponderance of the evidence that the alleged infringer has infringed that claim.

4

5

6

7

Source:

8

Adapted from 11-CV-01846 Final Instruction No. 23 (Dkt. No. 1903 at 36).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26**
**PATENTS—LITERAL INFRINGEMENT**

2

3

To decide whether each accused Samsung and Apple product literally infringes a claim of an asserted patent, you must compare the product with the patent claim and determine whether every requirement of the claim is included in that product.  If so, the Samsung or Apple product in question literally infringes that claim.  If, however, a particular Samsung or Apple product does not have every requirement in the patent claim, that product does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

4

5

6

7

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in the accused product.  The fact that a particular accused Samsung or Apple product also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

8

9

Source:

10

Adapted from 11-CV-01846 Final Instruction No. 26 (Dkt. No. 1903 at 39).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 27**
**PATENT INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS – '239 PATENT,**

2

**CLAIM 15**

3

4

I will now describe the separate rules that apply to the "means-plus-function" requirement that is used in claim 15 of the '239 patent.  A means-plus-function requirement covers the specific

5

structure disclosed in a patent specification for performing the claimed function.  A means-plus-function requirement does not cover all possible structures that could be used to perform the

6

claimed function.

7

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil

8

and paper or even the human brain.  But because the phrase is a means-plus-function requirement, we interpret that phrase not to cover every possible means for processing data, but instead to

9

cover the actual means disclosed in the patent for processing data.

10

For purposes of this trial, I have interpreted the means-plus-function requirement for you and identified the structure in the patent specification that corresponds to the means-plus-function

11

requirement.  Specifically, I have determined that:

12

"One or more modems connected to one or more cellular telephones, and software

13

performing a software sequence of initializing one or more communications ports on said apparatus, obtaining a cellular connection, obtaining said captured video, and transmitting

14

said captured video" is the structure that performs the "transmission of said captured video over a cellular frequency" function identified in the means-plus-function requirement of

15

claim 15 of the '239 patent.

16

In deciding if Samsung has proven that Apple's product includes structure covered by a means-plus-function requirement, you must first decide whether the product has any structure that

17

performs the function I just described to you.  If not, the claim containing that means-plus-function requirement is not infringed.

18

19

If you find that the Apple accused product does have structure that performs the claimed function, you must then determine whether that structure is the same as the structure I have identified in the

20

specification.  If they are the same, the means-plus-function requirement is satisfied by that structure of the accused product.  If all the other requirements of the claim are satisfied, the

21

accused product infringes the claim.

22

23

Source:

24

N.D. Cal. Model Patent Jury Instr. B.3.5; 35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v.*

25

*Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains*

26

*Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

27

28

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 29**
**PATENTS—INVALIDITY—BURDEN OF PROOF**

3

4

5

6

I will now instruct you on the rules you must follow in deciding whether ~~each party~~Samsung has proven that claims of ~~the other side's~~Apple's patents are invalid.  Apple does not contend that Samsung's patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, ~~the alleged infringer~~Samsung must persuade you by clear and convincing evidence that the claim is invalid.

7

8

Source:

9

Adapted from 11-CV-01846 Final Instruction No. 29 (Dkt. No. 1903 at 42) and N.D. Cal. Model Patent Jury Instr. B.4.1.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 31**
**PATENTS—WRITTEN DESCRIPTION REQUIREMENT**

2

3
A patent claim is invalid if the patent does not contain an adequate written description of the
claimed invention. The purpose of this written description requirement is to demonstrate that the
4
inventor was in possession of the invention at the time the application for the patent was filed,
even though the claims may have been changed or new claims added since that time. The written
5
description requirement is satisfied if a person of ordinary skill in the field reading the patent
6
application at the time it was filed would have recognized that the patent application described the
invention as claimed in the patent, even though the description may not use the exact words found
7
in the patent claim. A requirement in a claim need not be specifically disclosed in the patent
application as originally filed if a person of ordinary skill would understand that the missing
8
requirement is necessarily implied in the patent application as originally filed.

9

10
Source:

11
Adapted from 11-CV-01846 Final Instruction No. 30 (Dkt. No. 1903 at 43).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34**
**PATENTS—OBVIOUSNESS**

Not all innovations are patentable. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time of invention. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

    (1)    the levels of education and experience of persons working in the field;

    (2)    the types of problems encountered in the field; and

    (3)    the sophistication of the technology.

Second, you must decide the scope and content of the prior art. The parties disagree as to whether certain prior art references should be included in the prior art you use to decide the validity of claims at issue. In order to be considered as prior art to a particular patent at issue here, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

    (1)    commercial success of a product due to the merits of the claimed invention;

    (2)    a long felt need for the solution provided by the claimed invention;

    (3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

    (4)    copying of the claimed invention by others;

    (5)    unexpected and superior results from the claimed invention;

    (6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and

1
2

      (7)     independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

3
4
5
6

The presence of any of factors 1-6 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factor 7 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

7
8
9
10
11
12
13
14
15
16
17
18

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether the alleged infringer has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

19
20

Source:

21

Adapted from 11-CV-01846 Final Instruction No. 33 (Dkt. No. 1903 at 46-47).

22
23
24
25
26
27
28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36**
**PATENT DAMAGES—BURDEN OF PROOF**

2

3

I will instruct you about the measure of damages for claims of patent infringement.  By
instructing you on damages, I am not suggesting which party should win on any issue.  If you find
that any party infringed any valid and enforceable claim of the other side's patents, you must then
determine the amount of money damages to be awarded to the patent holder to compensate it for
the infringement.

4

5

6

The amount of those damages must be adequate to compensate the patent holder for the
infringement.  A damages award should put the patent holder in approximately the financial
position it would have been in had the infringement not occurred, but in no event may the
damages award be less than a reasonable royalty.  You should keep in mind that the damages you
award are meant to compensate the patent holder and not to punish an infringer.

7

8

9

Each patent holder has the burden to persuade you of the amount of its damages.  You should
award only those damages that the patent holder proves it suffered by a preponderance of the
evidence.  While a patent holder is not required to prove its damages with mathematical precision,
it must prove them with reasonable certainty.   Neither patent holder is entitled to damages that
are remote or speculative.

10

11

12

13

**Source:**

14

Adapted from Case No. 11-CV-01846 Final Instruction No. 35 (Dkt. No. 1903 at 49).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 40**
**PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT**

Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.

Source:

Adapted from 11-CV-01846 Final Instruction No. 38 (Dkt. No. 1903 at 52).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 42**
**PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT**

Both Apple and Samsung seek a reasonable royalty for the infringement of their respective patents.

If Apple has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing Samsung sales for which Apple has not been awarded lost profits damages.

Samsung does not make a claim for lost profits.  Samsung should be awarded a reasonable royalty for all infringing Apple sales.


Source:

Adapted from 11-CV-01846 Final Instruction No. 40 (Dkt. No. 1903 at 54).

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 48**
**MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE**

3

4

5

6

You should award any remedy to which a party has proven it is entitled with respect to each sale of an accused smartphone or tablet, except that you should not award a party twice for the same sale of any accused smartphone or tablet. This means that if you award lost profits for the sale of a certain number of accused smartphones or tablets, you may not also award reasonable royalties for those same sales. If you award reasonable royalties for the sale of a certain number of accused smartphones or tablets, you may not award lost profits for those same sales.

7

You do not have to use the same theory to calculate damages for every sale, however. For example, an award may be split between lost profits for some sales and a reasonable royalty for the remainder of sales.

8

9

For any sale where you measure damages by a reasonable royalty or lost profits, you may include royalty amounts for each patent that you find valid and infringed by the sale or lost profits on that sale.

10

11

If a sale is awarded one form of monetary recovery, that same sale cannot be awarded another form of monetary recovery.

12

**Source:**

13

Adapted from Case No. 11-CV-01846 Final Instruction No. 74 (Dkt. No. 1903 at 96).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A̶B -- Proposed U̶n̶d̶i̶s̶p̶u̶t̶e̶d̶Disputed Instructions
Case No. 12-cv-00630-LHK (PSG)
s̶f̶ ̶3̶3̶8̶7̶6̶5̶6̶
A̶c̶t̶i̶v̶e̶U̶S̶ ̶1̶2̶5̶3̶7̶5̶0̶7̶0̶v̶.̶3̶
40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B
# PROPOSED DISPUTED
# INSTRUCTIONS

1

**GENERAL CIVIL INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 6 (Apple)**
**WHAT IS NOT EVIDENCE**

2

3

In reaching your verdict, you may consider only the testimony and exhibits that were received
into evidence. Certain things are not evidence, and you may not consider them in deciding what
the facts are. I will list them for you:

4

5

    (1)    Arguments and statements by lawyers are not evidence. The lawyers are not
witnesses. What they said in their opening statements and throughout the trial, and
what they will say in their closing arguments or at other times are all intended to
help you interpret the evidence. But these arguments and statements are not
evidence. If the facts as you remember them differ from the way the lawyers have
stated them, your memory of them controls.

6

7

8

9

    (2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to
their clients to object when they believe a question is improper under the rules of
evidence. You should not be influenced by the objection or by the court's ruling
on it.

10

11

12

    (3)    Testimony that has been excluded or stricken, or that you have been instructed to
disregard, is not evidence and must not be considered. In addition, sometimes
testimony and exhibits are received only for a limited purpose; when I give a
limiting instruction, you must follow it.

13

14

15

    (4)    Demonstrations of the purported functionality of alleged prior art systems are not
evidence. In determining whether a patent claim is invalid you should not be
influenced by these demonstrative systems, and your decision should be based
solely on your interpretation of the evidence as it relates to the alleged prior art.

16

17

18

    (5)    Anything you may have seen or heard when the court was not in session is not
evidence. You are to decide the case solely on the evidence received at the trial.

19

20

Source:

21

Adapted from 11-CV-01846 Final Instruction No. 6 (Dkt. No. 1903 at 13).

22

**Samsung's Objections:**

23

24

Apple proposes departing from the 11-cv-01846 instructions by adding the fourth paragraph, but
no changes in the law or other changes in circumstances justify the modification. At the *Daubert*
hearing, the Court informed the parties that there was a "heavy presumption" in favor of using
instructions from the 1846 case, and that absent a change warranting a departure from that "heavy
presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first
trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and
final jury instructions from the first trial unless you can point to either a change in the law or
something else that justifies a change, but there's going to be a heavy presumption that what was
previously given will be given this time."). Apple's proposed change is not based on a change in

25

26

27

28

EXHIBIT ~~A~~B -- PROPOSED ~~UNDISPUTED~~DISPUTED INSTRUCTIONS
CASE NO. 12-CV-00630-LHK (PSG)
~~sf-3387656~~
ActiveUS 125375070v.3

law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.

In addition, Apple's new fourth paragraph is in conflict with other instructions, is contrary to precedent, and is one-sided and prejudicial. Apple seeks to prohibit Samsung from showing prior art software (even software that is *stipulated* to be prior art) to the jury. This is nothing more than a rehash of Apple's rejected motion for summary judgment and its rejected motion for *Daubert* exclusion. *See* Dkt. 1150 at 27-29; Dkt. 1325 at 3. Moreover, it is false to say that demonstratives are "not evidence" and "may not [be] consider[ed]." Demonstrative evidence *is* a category of evidence, and it can help juries understand complex technical subject matter. *See Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 1000 (N.D. Cal. 2009) ("the case presented complex technical issues and [] the jury benefitted at trial from the use of demonstrative evidence.") Indeed, as Final Jury Instruction No. 8 notes, though demonstratives are not themselves "evidence or proof *of facts*," they may nevertheless "help explain the contents of books, records, documents, or other evidence in the case." Apple's instruction that the jury should not consider demonstratives misleadingly suggests that demonstratives should be ignored, not considered, and is therefore in conflict with Final Jury Instruction No. 8. Additionally, Apple's instruction conflicts with controlling Federal Circuit precedent. Particularly when the prior art is a piece of software and the claims recite a computer readable medium (as is the case with the asserted claims of Apple's '959 and '414 patents), the Federal Circuit has opined that an "expert's *demonstrative* data setup" was the "most telling *evidence*" of the instructions included in prior art software. *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (emphases added). The expert in *Versata* "confirmed his theories that the accused software was capable of performing the claimed functionality by making the software perform the function without modifying the software." *Id.* at 1262.

Finally, Apple's instruction is one-sided, permitting the jury to consider demonstrations such as videos or screenshots of the accused products for infringement purposes, but not allowing the jury to consider demonstrations of prior art for invalidity.

**PROPOSED FINAL JURY INSTRUCTION NO. 6 (Samsung)**
**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits that were received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

    (1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are all intended to help you interpret the evidence. But these arguments and statements are not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

    (2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

    (3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

    (4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 6 (Dkt. No. 1903 at 13).

**Apple's Objections:**

Apple's proposed instruction properly includes an instruction that demonstrative exhibits created during the litigation to illustrate the operation of alleged prior art systems may be used at trial but not introduced into evidence. Apple's Motion *in Limine* No. 4 seeks to exclude "Demonstration Systems" Created by Samsung's Experts Related to Alleged Prior Art. If granted, no such demonstrative exhibits will be used. If, on the other hand, the outcome of the motion allows Samsung to use demonstrative exhibits that are not admitted into evidence, the jury should be so instructed.

Apple expects that Samsung will rely heavily on demonstrative exhibits to demonstrate not an existing, single piece of software, but rather describe combinations of elements from prior art that were never combined in actual prior art systems. Samsung has no evidence that these "systems"—as Samsung's experts configured them—actually existed in the critical time period. Apple expects Samsung to argue about the demonstrative exhibits as if they were themselves evidence of prior art systems, which they are not.

Absent a clear instruction to the jury, as proposed by Apple, that highlights that these demonstrations of the purported functionality of alleged prior art systems are not evidence, there

EXHIBIT ~~A~~B -- PROPOSED ~~UNDISPUTED~~DISPUTED INSTRUCTIONS

CASE NO. 12-CV-00630-LHK (PSG)
~~sf-3387656~~
ActiveUS 125375070v.3

1     is serious risk that the jury will be misled into accepting the demonstrative exhibits as actual
2     evidence of prior art.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 8 (Apple)**
**CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE**

2

3

Certain demonstratives, videos, charts, and slides not received in evidence have been shown to
you in order to help explain the contents of books, records, documents, or other evidence in the
case.  They are not themselves evidence or proof of any facts.

4

5

6

Source:

7

Adapted from 11-CV-01846 Final Instruction No. 8 (Dkt. No. 1903 at 15).

8

**Samsung's Objections:**

9

10

Apple proposes the addition of "demonstratives" and "videos" to the instruction that the Court
gave in 11-cv-01846, but no changes in the law or other changes in circumstances justify the
modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy
presumption" in favor of using instructions from the 1846 case, and that absent a change
warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would
adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now,
I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can
point to either a change in the law or something else that justifies a change, but there's going to be
a heavy presumption that what was previously given will be given this time.").  Apple's proposed
change is not based on a change in law and there is no other compelling reason to overturn the
heavy presumption in favor of using instructions from the first trial.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 8 (Samsung)**
**CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE**

Certain charts and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 8 (Dkt. No. 1903 at 15).

**Apple's Objections:**

Apple's proposed instruction differs from Samsung's proposal in that it includes "demonstratives" and "videos."  If, as Apple expects, demonstratives and videos that are not "charts and slides" are used but not introduced into evidence, the jury should be instructed that they are not evidence.  (*See also* Apple's objections to Samsung's Proposed Final Jury Instruction No. 6.)

**PROPOSED FINAL JURY INSTRUCTION NO. 18 (Apple)**
**SUMMARY OF CONTENTIONS**

I will now again summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

As I previously explained, Apple seeks money damages from Samsung Electronics Company ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA"), for allegedly infringing claim 9 of the '647 patent, claim 25 of the '959 patent, claim 20 of the '414 patent, claim 8 of the '721 patent, and claim 18 of the '172 patent. Apple also argues that SEC actively induced SEA and STA to infringe the patents. Apple also contends that Samsung's infringement has been willful.

I have already determined that the following Samsung devices infringe claim 18 of the '172 patent: Admire, Galaxy Nexus, Galaxy Note (excluding one release), Galaxy SII (excluding one release), Galaxy SII Epic 4G Touch (excluding one release), Galaxy SII Skyrocket (excluding one release), and Stratosphere. Samsung denies that it has infringed the asserted claims of Apple's other asserted patents from its other asserted patents and argues that, in addition, all of Apple's asserted patent claims are invalid. Invalidity is a defense to infringement.

Samsung has also brought claims against Apple for patent infringement. Samsung seeks money damages from Apple for allegedly infringing claim 27 of the '449 patent, and claim 15 of the '239 patent. Samsung also contends that Apple's infringement has been willful.

~~Invalidity is a defense to infringement.~~ Apple denies that it has infringed the claims asserted by Samsung ~~and argues~~. Apple does not argue that ~~the claims asserted by Samsung~~Samsung's patents are invalid. Therefore, you need only determine whether the '449 and '239 patents are infringed and whether that infringement has been willful.

In this case, Apple does not contend that it practices the '414, '172, or '959 patents, and Samsung does not contend that it practices the '449 patent. Whether or not a patent owner practices a patent is irrelevant to whether the patent has been infringed. A patent owner need not practice the patent itself in order to recover damages for patent infringement.

For each party's patent infringement claims against the other, the first issue you will have to decide is whether the alleged infringer has infringed the claims of the patent holder's patents and, for Apple's patents, you must also decide whether those patents are valid. If you decide that any claim of either party's patents has been infringed and, for Apple's patents, is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Source:

Adapted from 11-CV-01846 Final Instruction No. 18 (Dkt. No. 1903 at 29-30).

**Samsung's Objections**

**Apple's Instruction Regarding Willful Infringement.**  In Samsung's prior objections to Apple's proposed preliminary and final jury instructions, Samsung objected to Apple's omission of Samsung's allegation that Apple's infringement was willful. In the present filing, Apple has included Samsung's allegation that Apple's infringement was willful in order "to conform to the Court's tentative preliminary jury instructions." Apple's Objection to Samsung's Proposed Final Jury Instruction No. 18. However, Apple maintained its objection to this inclusion. *Id.*

As previously stated in Samsung's objections to Apple's proposed preliminary and final jury instructions, Samsung's allegations of willful infringement are proper and therefore Samsung maintains that any exclusion of this allegation would be improper.

**Apple's Instruction Regarding Infringement of the '172 Patent.**  In the third paragraph of Apple's version of this instruction, Apple proposes language concerning the Court's determination of infringement of the '172 patent that is prejudicial to Samsung.   Apple proposed a similar instruction in its preliminary jury instructions and Samsung objects for the same reasons it objected to Apple's preliminary instruction.  In particular, Apple expressly highlights Samsung's infringement of claim 18 of the '172 patent, but fails to mention the patent numbers or asserted claims of Apple's other asserted patents.  The primary purpose served by Apple's emphasis on the Court's determination of infringement is to prejudice Samsung in the eyes of the jury.  Indeed, the syntax of Apple's proposed instruction appears designed to suggest that the claims of the other Apple patents are likewise infringed.  Apple's proposed instruction may also create the incorrect impression that Samsung is not challenging the validity of the '172 patent and thus mislead the jury into thinking that liability on '172 patent is determined and all the jury has to decide is damages.  To the contrary, Samsung has asserted a defense and counterclaim of invalidity, which is something the jury has yet to decide.  Invalidity is a defense to infringement.

    In contrast, Samsung's proposed instruction separates the discussion of the '172 patent from the remaining Apple patents.  This separation makes clear that the jury does not need to decide the issue of infringement of the '172 patent, but unlike Apple's proposal, it neither suggests an infringement result as to the remaining Apple patents nor implies that Samsung is not challenging validity of the '172 patent.  This portion of Samsung's proposed instruction is also consistent the court's tentative preliminary instruction (Dkt. 1384).

**Apple's Belated Revisions To Jointly-Submitted Instruction Regarding Apple's Non-Practice of the '414, '172 and '959 patents.**  The deadline to propose final jury instructions was February 25, 2014.  (Dkt. No. 1158.)  On March 5, 2014, the Court further ordered that no later than March 7, the parties "file either a stipulation or competing proposals as to how to inform the jury that Apple does not practice the claims of the '414, '172, and '959 Patents."  (Dkt. No. 1398 at 3.)  The parties negotiated for two days, and after multiple exchanges, jointly agreed to the following instruction to both the preliminary and the final jury instructions in this case: "In this case, Apple does not contend that it practices the '414, '172, or '959 patents, and Samsung does not contend that it practices the '449 patent." (Dkt. No.  1418.)

The parties' joint March 7 filing was a compromise reflecting many rounds of negotiation. One of the sentences Apple now seeks to add to the final jury instructions – regarding new instructions for the calculation of damages – was specifically proposed by Apple, discussed by the parties, and then withdrawn by Apple prior to the joint March 7 filing. (3/7/2014 Email from N. Sabri to P. Curran; 3/7/2013 Email from E. Olson to P. Curran.) Samsung objected to the addition of the language Apple now seeks to re-insert, as it is an incomplete statement of the law and could mislead the jury into believing that non-practice is irrelevant to a variety of issues – including the appropriate calculation of damages, the consideration of *Georgia-Pacific* factors, and the analysis of various secondary considerations, including copying and commercial success. Rather than submit extended competing instructions from Samsung on these issues to ensure that the jury was not confused, the parties agreed that the appropriate insert for the March 7 filing should be limited to explaining the parties' contentions on practice. In exchange for withdrawing the materials Apple now seeks to re-insert, Samsung also agreed that Apple could include a reference to Samsung's asserted '449 patent. This patent was not addressed by the Court's March 5 Order or the Pretrial Conference; rather, Samsung sought to amend its infringement contentions in 2013 to add that it practices the asserted claim of '449 but Judge Grewal denied the motion to amend as Samsung products do practice the '449 patent. Samsung agreed to the inclusion of the '449 patent in this instruction solely to avoid unnecessarily burdening the Court with disputes and competing submissions on the eve of trial. If Apple seeks to belatedly re-open disputes and re-insert competing proposals, Samsung requests the court delete any reference the '449 patent, which was not subject to the Court's March 5 Order.

The Court's March 10 order instructed the Parties to file a redline of the existing jury instructions. (Dkt. No. 1422.) This Order did not authorize new proposed jury instructions – it merely ordered the parties to update existing instructions to reflect recent stipulations and case narrowing, including to insert the language the parties jointly agreed to regarding Apple's non-practice of the '414, '172, and '959 patents. (Dkt. No. 1418, 1422.) Rather than redline the final jury instructions to reflect Apple's joint filing of March 7 (Dkt. No. 1418), Apple proposes new, additional language that Samsung never agreed to and that the parties never submitted to the Court in response to the Court's March 5 Order. This is just the most recent example of what the Court already noted at the last hearing – Apple repeatedly telling the Court that the issue of non-practice is resolved, then Apple resurrecting the issue and arguing that it is somehow not resolved. (3/5/2014 Hearing Tr. at 62:5-11, 63:14-21, 64:22-25.) Apple waived any such proposed additional instructions. Apple's new language also ignores this Court's March 10 Order on pretrial filings, which made clear that the parties' stipulation regarding dismissal of claims and counterclaims should not be used to expand pretrial filings, but only to eliminate what is no longer necessary. (Dkt. No. 1427 at 3.)

Finally, Apple's additional language is also highly misleading since it does not make it clear that whether the patent owner practices the patent may be highly probative of the amount of damages as well as issues of validity. In particular, whether the patent owner practices the patent may be probative of a reasonable royalty under at least *Georgia-Pacific* factors 8 and 10. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971) (including factor 8: "[e]stablished profitability of the products made under the patent, its commercial success and its current popularity;" and factor 10 "[t]he nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefit of those who have used the invention.") Furthermore, whether a patent owner practices a patent is highly relevant to factors

1    that must be considered in a lost profits analysis, including whether there is demand for the
2    patented product (Panduit 1) and the patented feature (Panduit 2).  *Panduit Corp. v. Stahlin Bros.*
     *Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978).  And, the Supreme Court has held that in some
3    circumstances the commercial success of a claimed invention may indicate that the invention was
     nonobvious.  *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966).  For all these issues, whether
4    the patent owner practices the patent may be highly probative as whether the patent owner may
     recover damages as well as to the amount of any damages.
5
     The Court need not and should not consider Apple's new revisions to the language that the parties
6    jointly agreed to.  If Apple is permitted to make substantive revisions, Samsung should be
     permitted to propose competing language on these issues, including instructions regarding the
7    implications for non-practice on various other issues in the case, including commercial success,
     copying, and amount of damages.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 18 (Samsung)**
**SUMMARY OF CONTENTIONS**

I will now again summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

As I previously explained, Apple seeks money damages from Samsung Electronics Company ("SEC") Samsung Electronics America Inc., ("SEA") and Samsung Telecommunications America LLC ("STA") for allegedly infringing claim 9 of the '647 patent, claim 25 of the '959 patent, claim 20 of the '414 patent, claim 8 of the '721 patent and claim 18 of the '172 patent. Apple also argues that SEC actively induced SEA and STA to infringe the patents. Apple contends that Samsung's infringement has been willful.

Samsung denies that it has infringed the asserted claims of the '647, '959, '414 and '721 patents and argues that, in addition, the asserted claims are invalid. Invalidity is a defense to infringement.

Your duty for Apple's '172 patent is different from the other patents. The Court has already found that the Admire, Galaxy Nexus, Galaxy Note (excluding one release), Galaxy SII (excluding one release), Galaxy SII Epic 4G Touch (excluding one release), Galaxy SII Skyrocket (excluding one release) and Stratosphere infringe claim 18 of the '172 patent. You need only determine whether claim 18 is invalid.

Samsung has also brought claims against Apple for patent infringement. Samsung seeks money damages from Apple for allegedly infringing claim 27 of the '449 patent and claim 15 of the '239 patent. Samsung also contends that Apple's infringement has been willful.

Apple denies that it has infringed the claims asserted by Samsung and argues. Apple does not argue that the claims asserted by Samsung Samsung's patents are invalid. Invalidity is a defense to Therefore, you need only determine whether the '449 and '239 patents are infringed and whether that infringement has been willful.

In this case, Apple does not contend that it practices the '414, '172, or '959 patents, and Samsung does not contend that it practices the '449 patent.

For each party's patent infringement claims against the other, the first issue you will be asked to decide is whether the alleged infringer has infringed the claims of the patent holder's patents and, for Apple's patents, you must also decide whether those patents are valid. If you decide that any claim of either party's patents has been infringed and, for Apple's patents, is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Source:

Adapted from Case No. 11-CV-01846 Final Instruction No. 18 (Dkt. No. 1903 at 29).

**Apple's Objections:**

**Samsung's Instruction Regarding Patents that Parties Do Not Contend They Practice (6th paragraph).** Consistent with the parties' joint filing (Dkt. 1418) submitted at the Court's direction, Apple's and Samsung's proposed instructions inform the jury that each party does not contend that it practices specified patents. Samsung's instruction, however, fails to inform the jury of the legal significance of the absence of such contentions. Jurors may believe erroneously that the statement regarding Apple's or Samsung's contentions affects each patent holder's ability to prove infringement or that the patent holder may not obtain damages for infringement. The law is to the contrary. *See, e.g.*, *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1547-48 (Fed. Cir. 1995). Samsung does not contend otherwise. Nor does it offer any good reason why the potential misimpression should be left uncorrected. The Court should give Apple's proposed instruction, which will ensure that the jury is informed about the meaning of a patent holder's failure to practice a patent, and avoid prejudice to Apple from confusion or mistaken assumptions by jurors about Apple's failure to offer proof that it practices three of its five Asserted Patents.

Samsung's procedural objections all lack merit.

*First*, Apple has not waived its right to propose a final instruction that addresses whether the failure to practice of a patent precludes a ruling in Apple's favor. The parties jointly proposed a specific sentence about the parties' contentions in both the preliminary and final instructions. Apple's proposed instruction includes that specific sentence. Apple did not agree that it would propose no other language related to this issue, and the joint proposal does not foreclose Apple from proposing its instruction. Apple did not state or suggest to Samsung in the parties' meet and confer concerning the proposed language that Apple would never propose additional language beyond the sentence to which the parties agreed.

*Second*, Apple's agreement to include only the jointly-proposed sentence in the parties' revision to the Court's Tentative Preliminary Jury Instruction No. 20 did not restrict what Apple could propose as to a final jury instruction on this topic. Final jury instructions explain to the jury the meaning of the evidence that has been presented. It is therefore common for final instructions to include more detail than preliminary instructions. Moreover, the Court has issued tentative preliminary instructions, having already reviewed the parties' competing proposals. In contrast, the final instructions remain in dispute and will be resolved with the benefit of the trial testimony at the charging conference.

*Third*, Apple's proposed statements about the significance of not practicing a patent are not untimely. Samsung's contention that Apple's proposed language is unrelated to the statement the parties stipulated to is specious. The agreed-to statement concerns what patents the parties do not contend they practice; Apple's additional language concerns the significance of the failure to practice. They plainly address related topics. Apple did include any statements about not practicing patents in its proposed final jury instructions filed on February 25, 2014. Now that the parties have agreed to revise their proposed final instructions to include a statement on that topic, Apple is timely including a full statement about that issue.

**Samsung's Instruction Regarding Apple's Alleged Willful Infringement (5th and 8th paragraphs):** As previously stated in its objections to Samsung's proposed preliminary and final jury instructions, Apple objects to the inclusion of any reference in the jury instructions that its

1   alleged infringement of Samsung's patents was willful.  Apple has included such language in this
2   filing, however, to conform to the Court's tentative preliminary jury instructions.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          **PATENT JURY INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 22 (Apple)**
**PATENTS—INTERPRETATION OF CLAIMS**

Before you decide whether Apple or Samsung has infringed the claims of the other side's patents or whether the claims of Apple's patents are invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

- **U.S. Patent No. 7,761,414**

The term "concurrently with" means "the synchronization thread and the non-synchronization thread are both active during an overlapping time interval."

- **U.S. Patent No. 6,847,959**

The term "heuristic" means "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters."

- **U.S. Patent No. 5,946,647**

The term "action processor" means "program routine(s) that perform the selected action on the detected structure."

- **U.S. Patent No. 5,579,239**

Claim 15 of the '239 patent includes a "means-plus-function" ~~requirement.  I will explain to you later the separate rules that apply to interpreting this claim~~ term that I have already interpreted.  I will give you my interpretation of that term later when I explain how means-plus-function terms are infringed.

*        *        *

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

The claims define the scope of the patent.  You must read the claims in the same way when you analyze infringement and when you analyze Apple's patents for invalidity.

Source:

Adapted from 11-CV-01846 Final Instruction No. 22 (Dkt. No. 1903 at 35); Dkt. No. 447 (*Markman* order); Dkt. No. 1150 (MSJ order).

### Samsung's Objections

~~Samsung objects to Apple's instruction as it relates to the '239 patent. Apple's instruction states that "Claim 15 of the '239 patent includes a 'means-plus-function' requirement. I will explain to you later the separate rules that apply to interpreting this claim." The Court has not construed the means-plus-function limitation in Claim 15. Apple's instruction implies that it is the responsibility of the jury to construe this means-plus-function limitation. However, under Federal Circuit precedent, once a court establishes that a means plus function limitation is at issue, it must construe that limitation.~~ ~~*Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000)~~ ~~("Once a court establishes that a means-plus-function limitation is at issue, it must construe that limitation, thereby determining what the claimed function is and what structures disclosed in the written description correspond to the "means" for performing that function. These issues are likewise questions of law, reviewed de novo.");~~ ~~*Compression Technology Solutions LLC v. EMC Corp.*, 2013 WL 2368039 at \*9 (N.D. Cal. May 29, 2013)~~ ~~(quoting *Kemco*). As further explained in Samsung's objection to Apple's Instruction No. 27, the jury should not be instructed to construe means-plus-function limitations. For these reasons, the Court should adopt Samsung's instruction, which does not include reference to the '239 patent.~~

Apple has defined the term "thread" repeatedly and consistently throughout this litigation, including in its statements to the Court. In *Markman* briefing, Apple defined "thread" in the '414 patent as "a series of steps that a computer process needs to complete." (Dkt. 333 at 19:6-20; *see also* Feb. 14, 2013 Hearing Tr. at 66:2-3 (counsel for Apple defining "thread" as "just a series of steps.").) Relying on Apple's arguments, the *Markman* Order adopted Apple's proposed construction of the disputed term "concurrently with," to mean "[t]he synchronization *thread* and the non-synchronization *thread* are both active during an overlapping time interval." (*See* Dkt. 447 at 25 (emphases added).) Accordingly, the Court recognized in its Summary Judgment Order that "[t]he parties agree that a 'thread' is 'a series of steps that a computer process needs to complete.'" (Dkt. 1151 at 24-25 n.8.) Apple now is judicially estopped from departing from its prior position and assigning a new definition to this claim term at trial. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749 ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter . . . , assume a contrary position. . . . This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'") (citations omitted); *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778-79 (9th Cir. 2009) (holding that "[t]he doctrine of judicial estoppel was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining advantage from that position, then seeking a second advantage by later taking an incompatible position"). At trial Apple should not be allowed to argue that the plain and ordinary meaning of "thread" in the '414 patent is anything other than "a series of steps that a computer process needs to complete."

**PROPOSED FINAL JURY INSTRUCTION NO. 22 (Samsung)**
**PATENTS—INTERPRETATION OF CLAIMS**

Before you decide whether Apple or Samsung has infringed the claims of the other side's patents or whether the claims of Apple's patents are invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. For some terms, the parties agreed on a construction.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

• **U.S. Patent No. 7,761,414**

The term "concurrently with" means "the synchronization thread and the non-synchronization thread are both active during an overlapping time interval."

The term "thread" means "a series of steps that a computer process needs to complete."

• **U.S. Patent No. 5,946,647**

The term "action processor" means "program routine(s) that perform the selected action on the detected structure."

• **U.S. Patent No. 6,847,959**

The term "heuristic" means " "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters."

• **U.S. Patent No. 5,579,239**

Claim 15 of the '239 patent includes a "means-plus-function" term that I have already interpreted. I will give you my interpretation of that term later when I explain how means-plus-function terms are infringed.

*        *        *

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

The claims define the scope of the patent. You must read the claims in the same way when you analyze infringement and when you analyze Apple's patents for invalidity.

**Source:**

Adapted from Case No. 11-CV-01846 Final Instruction No. 22 (Dkt. No. 1903 at 35); *Upsher-Smith Labs. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed Cir. 2005) ("A century-old axiom of patent law holds that a product "which would literally infringe if later in time anticipates if earlier." (citations omitted)); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1331 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement.").

**Apple's Objections:**

Apple objects to language in Samsung's Proposed Final Jury Instruction No. 22 that provides claim constructions for terms that the Court did not construe and about which the parties disagree and that includes confusing and legally erroneous language.

*First*, Apple objects to the statement that "For some terms, the parties agreed on a construction." The parties did not agree on any constructions among those listed above. So, that statement is untrue.

*Second*, Samsung's proposed instruction also includes a claim construction of the term "thread" in '414 patent that was not issued by the Court and is not agreed between the parties.

The term "thread" was not identified as one of the parties' ten terms to be construed pursuant to the claim construction process (*see* Dkt. No. 300 (Joint Claim Construction and Prehearing Statement pursuant to Patent Local Rule 4-3)). It was not otherwise identified as requiring construction in connection with dispositive motions. (*See, e.g.*, Dkt. Nos. 803, 805.) Apple has never proposed a construction for the term "thread" as used in the asserted claim of U.S. Patent No. 7,761,414, nor otherwise construed that word as a claim term. Samsung cites one sentence in the background section of Apple's infringement expert report that explains the general "technological concepts" of the '414 patent. Samsung ignores the following section that specifically explains the asserted claims of the '414 patent and any claim construction positions that Apple's expert is taking. (*See* Dkt. No. 946-3 at 7 (Samsung's Reply in Support of Its Motion for Summary Judgment); Dkt. No.1151 at 24-25 n.8 (citing to Samsung's Reply (Dkt. No. 946-3) as the basis for a belief that the "parties agree that a 'thread' is a 'series of steps that a computer process needs to complete'").) Samsung's proposed instruction thus improperly creates a construction for a claim term that has neither been considered nor agreed to by the parties.

Further, Apple is not be judicially estopped (contrary to Samsung's contention in the Joint Pretrial statement). The explanation of a thread was not an argument made to obtain summary judgment rulings.

*Third*, Apple objects to inclusion of the statement "Thus, if a product was sold *before* the priority date of the patent, and would have infringed had it been sold *after* the patent issued, the patent claim is invalid, because the patent claim does not describe a new invention—it describes a product that already existed."

The statement will be confusing to a jury because the overall instruction relates to claim construction, yet the added sentence does not. It attempts to blend issues of infringement and invalidity. It also errs by presenting a statement about invalidity in an instruction that is not connected to the instructions on the burden of proof and the presumption of validity.

In addition, the statement is not correct as a matter of law. In 2008, the Federal Circuit held "anticipation cannot be proved by merely establishing that one 'practices the prior art.'" *See Zenith Elecs. Corp. v. PDI Commc'ns Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) (citing

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,* 279 F.3d 1357 (Fed. Cir. 2002).  The Court explained that "the defense of noninfringement cannot be proved by comparing an accused product to the prior art" because of the differing burdens faced by infringement and invalidity assertions.  The Federal Circuit continued: "mere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity.  Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference. '[I]t is the presence of the prior art and its relationship to the claim language that matters for invalidity.'" *Id.* at 1363 (quoting *Tate Access Floors,* 279 F.3d at 1367).

The *Tate Access Floors* court explained:

> Our law requires patent challengers to prove invalidity by clear and convincing evidence.  Where an accused infringer is clearly practicing only that which was in the prior art, and nothing more, and the patentee's proffered construction reads on the accused device, meeting this burden of proof should not prove difficult.  Nevertheless, accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a "practicing prior art" defense to literal infringement under the less stringent preponderance of the evidence standard.

*Tate Access Floors,* 279 F.3d at 1367.

In addition, there is a discontinuity between infringement and anticipation because the statutes are different as to each.  Actions or products could literally infringe and not anticipate if earlier.

**Reference to Means-Plus-Function Requirements.**  Apple's proposed instruction correctly identifies that there are "separate rules that apply" to means-plus-function claims.  This language was pulled directly from the district's model patent jury instructions.  (*See* N.D. Cal. Model Patent Jury Instr. B.2.1 (model instruction regarding interpretation of claims suggesting that it be coordinated with instruction 3.5); *Id.* at B.3.5 (instructing that "separate rules . . . apply to 'means-plus-function' requirements).).  Samsung's proposed instruction does not track the model jury instruction.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 24 (Apple)**
**PATENTS—DIRECT INFRINGEMENT**

2

3    A patent's claims define what is covered by the patent.  A product directly infringes a patent if it
     is covered by at least one claim of the patent.
4

5    Deciding whether a claim has been directly infringed is a two-step process.  The first step is to
     decide the meaning of the patent claim.  I have already made this decision, and I have already
6    instructed you as to the meaning of the asserted patent claims.  The second step is to decide
     whether Samsung and/or Apple has made, used, sold, offered for sale, or imported within the
7    United States a product covered by any of the asserted claims of the other side's patents.  If
     Samsung or Apple has done so, it infringes.  You, the jury, make this decision.
8

9    With one exception, you must consider each of the asserted claims of the patents individually, and
     decide whether the accused Samsung and/or Apple products infringe that claim.  A dependent
10   claim includes all of the requirements of a particular independent claim, plus additional
     requirements of its own.
11

12   You have heard evidence about both side's commercial products.  However, in deciding the issue
     of patent infringement you may not compare the Samsung and Apple commercial products to
13   each other.  Rather, you must compare the accused Samsung products to the claims of the Apple
     patents, and the accused Apple products to the claims of the Samsung patents.

14
     Whether or not Samsung or Apple knew its products infringed or even knew of the other side's
15   patents does not matter in determining direct infringement.

16   You should note, however, that what are called "means-plus-function" requirements in a claim
     are subject to different rules for deciding direct infringement.  These separate rules apply to a
17   requirement of claim 15 of the '239 patent.  I will describe those separate rules shortly.

18

19   Source:

20   Adapted from 11-CV-01846 Final Instruction No. 24 (Dkt. No. 1903 at 37) and N.D. Cal. Model
     Patent Jury Instr. B.3.2.
21

22   **Samsung's Objections**

23   This instruction provides guidance to the jury on how to determine whether a patent is directly
     infringed, and warns against mistakes in making that determination such as comparing the
24   patentee's commercial products with those of the accused infringer.  A warning against
     determining infringement by comparing the  figures in a patent specification with the accused
25   products is also necessary particularly if Apple intends to show those comparisons to the jury, as
     it did in a portion of the expert report of Dr. Storer cited by the Court.  (Dkt. 1301 at 8.)
26

27   The additional language proposed by Samsung is as follows: "In deciding the issue of patent
     infringement you also may not compare the Samsung and Apple products to the figures in the
28

patents. Your decision must be based on a comparison of the accused products to the asserted claims."  This language is taken almost verbatim from Federal Circuit opinions.  *See Catalina Lighting, Inc. v. Lamps Plus, Inc.,*  295 F.3d 1277, 1286 (Fed. Cir. 2002) ("Certainly the Catalina joint is different from the ball-and-socket joint shown in the figures of the ʹ 141 patent. But infringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent.")  In addition, similar language is included in the AIPLA's Model Patent Jury Instructions, at instruction 2.0: "Neither the written description, nor the drawings of a patent can be infringed."

Further, Apple proposes omitting language from the Court's 11-cv-1846 instructions, specifically language describing how dependent claims relate to their respective independent claims, as well as two examples describing the effect of infringement and invalidity determinations of independent claims on their dependent claims.  But no changes in the law or other changes in circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.

**PROPOSED FINAL JURY INSTRUCTION NO. 24 ("Samsung)
PATENTS—DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether Samsung and/or Apple has made, used, sold, offered for sale, or imported within the United States a product covered by any of the asserted claims of the other side's patents.  If Samsung or Apple has done so, it infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused Samsung and/or Apple products infringe that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both side's commercial products.  However, in deciding the issue of patent infringement you may not compare the Samsung and Apple commercial products to each other.  Rather, you must compare the accused Samsung products to the claims of the Apple patents, and the accused Apple products to the claims of the Samsung patents.

In deciding the issue of patent infringement you also may not compare the Samsung and Apple products to the figures in the patents.  Your decision must be based on a comparison of the accused products to the asserted claims.

Whether or not Samsung or Apple knew its products infringed or even knew of the other side's patents does not matter in determining direct infringement.

You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement.  These separate rules apply to a requirement of claim 15 of the '239 patent.  I will describe those separate rules shortly.

**Source:**

Adapted from Case No. 11-CV-01846 Final Instruction No. 24 (Dkt. No. 1903 at 37); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002) ("Certainly the Catalina joint is different from the ball-and-socket joint shown in the figures of the ′141 patent. But infringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent.").

**Apple's Objections:**

Apple has two objections.

*First*, Apple objects to the inclusion of the second, fourth and fifth sentences of the third paragraph because they are unnecessary and confusing. Those sentences contemplate a case in which a party is asserting both an independent claim and a dependent claim from that independent claim. Specifically, those sentences instruct the jury to make an explicit finding of infringement or non-infringement of an independent claim and only then reach the dependent claim. However, for all of the Apple patents, Apple is only asserting dependent claims. If the jury were to follow this instruction explicitly, it may be confused by the absence of asserted independent claims corresponding to asserted dependent claims, and never reach a finding of the asserted claims. Neither party is asserting an independent claim and a dependent claim from the same patent in the final selection of five claims being tried in this case. Samsung's proposed language is confusing and likely to lead to an erroneous understanding of the applicable law.

*Second*, Apple objects to the inclusion of Samsung's proposed fifth paragraph, which says "In deciding the issue of patent infringement you also may not compare the Samsung and Apple products to the figures in the patents. Your decision must be based on a comparison of the accused products to the asserted claims."

That instruction was not necessary in the 1846 case trials and is not necessary now. Samsung has not pointed to any different facts or circumstances to warrant deviating in this respect from the instruction provided in the 1846 case.

In addition, the added paragraph incorrectly suggests that the jury may not review the figures and specification of the patent to assist it in understanding the invention. Further, the proposed language suggests that the jury is to compare the claims to the products, which is not sufficiently precise. The jury is being asked to evaluate whether the accused product includes each and every limitation of the asserted claims. The word "compare" in this paragraph without sufficient context might suggest to a lay juror that if it found additional elements present in the accused product it could find non-infringement. That is not correct. *See, e.g., E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988).

1

**PROPOSED FINAL JURY INSTRUCTION NO. 25 (Apple)**
**PATENTS—DIRECT INFRINGEMENT**

2

3    In deciding whether a sale has taken place "within the United States," you may find the following
     guidelines helpful to your analysis:

4

5    The location of the sale depends on many factors, and you may find that the sale occurred in
     several places.  A sale occurs wherever the "essential activities" of the sale take place.  The

6    essential activities include, for example, negotiating the contract and performing obligations
     under the contract.

7

8

9    Source:

10   Adapted from 11-CV-01846 Final Instruction No. 25 (Dkt. No. 1903 at 38).

11   **Samsung's Objections:**

12   Samsung objects to this instruction as an inaccurate characterization of the law.  The Federal
     Circuit has never held that contracting alone, without more, constitutes a sale within the United

13   States.  The cases relied on by Apple for support in the previous case held that contracting ***and***
     performance may determine the location of a sale.  *See, e.g., MEMC Elec. Materials, Inc. v.*

14   *Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) ("*North American*
     *Philips* . . . noted that in some cases the criterion for determining the location of a 'sale' under

15   section 271(a) is not necessarily where legal title passes; the 'more familiar places of contracting
     and performance' may take precedence over the passage of legal title.").  In addition, in those

16   cases where the Federal Circuit has found a sale within the United States, it was undisputed that
     delivery was made to the United States.  *See, e.g., Litecubes, LLC v. Northern Light Prods., Inc.*,

17   523 F.3d 1353, 1371 (Fed. Cir. 2008) ("[I]t is undisputed that GlowProducts sold the products
     directly to customers in the United States.").  The Federal Circuit more recently elaborated on

18   these prior holdings and held that the location of negotiation and contracting should ***not***
     determine the location of a sale.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk*

19   *Contractors USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("Maersk USA's first argument, that
     the location of negotiation and contracting should control is contrary to our precedent in

20   *Litecubes*.").  At least one district court has found that the holding of *Transocean* precludes
     finding that a sale occurred within the United States if the product is both shipped from and

21   delivered to locations outside the United States.  *Lake Cherokee Hard Drive Techs., L.L.C. v.*
     *Marvell Semiconductor, Inc.*, No. 2:10-cv-216-JRG, 2013 WL 4054915, at *3 (E.D. Tex. Aug. 6,

22   2013) ("The question stemming from Lake Cherokee's position is whether a contract between two
     U.S. companies, negotiated and executed within the United States, for the sale of a patented

23   invention with delivery and performance outside of the United States, constitutes a sale under §
     271(a). Despite the factual differences, the Federal Circuit's analysis in *Transocean* compels this

24   Court to answer that question in the negative.").

25

26   Samsung's proposed instruction correctly states the law on this issue by instructing the jury that
     they must consider "where the products were shipped from and where the products were shipped

27   to." The Federal Circuit has previously held that this language is proper in a jury instruction

28

1    regarding sales within the United States.  *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d
2    1360 (Fed. Cir. 2010), *aff'd on other grounds*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.
     Ct. 2060 (2011).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 25 (Samsung)**
**DIRECT INFRINGEMENT**

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis:

The location of a sale depends on many factors, and you may find that the sales occurred in several places.  In evaluating whether the sales took place in the United States, you must consider where the products were shipped from and where the products were shipped to.  A contract negotiated and executed within the United States, for the sale of a patented invention with delivery and performance outside of the United States, is not a sale within the United States.

Source:

Adapted from Case No. 11-CV-01846 Final Instruction No. 25 (Dkt. No. 1903 at 38); *SEB S.A. v. Montgomery Ward & Co., Inc., 594 F.3d 1360 (Fed. Cir. 2010), aff'd on other grounds, Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp*, 394 F.3d 1368, 1376 (Fed. Cir. 2005); *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, No. 2:10-cv-216-JRG, 2013 WL 4054915, at *3 (E.D. Tex. Aug. 6, 2013); *ION, Inc. v. Sercel, Inc.*, No. 5:06-cv-236, 2010 WL 3768110, at *3-*4 (E.D. Tex. Sept. 16, 2010), *aff'd without opinion*, 464 Fed. Appx. 901 (Fed. Cir. 2012); *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 801 (S.D. Tex. 2009); *Wing Shing Prods. Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 403 (S.D.N.Y. 2007); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974, 2007 WL 4349135 at *51 (N.D.N.Y. Jan. 31, 2007); *Minebea Co. v. Papst*, 444 F. Supp. 2d 68 (D.D.C. 2006); *Quality Tubing, Inc. v. Precision Tube Holdings Corp.*, 75 F. Supp. 2d 613, 621 (S.D. Tex. 1999).

Apple's Objections:

In the 1846 case, Samsung raised the same purported defense regarding whether Samsung Electronics Company, Ltd., the Korean parent, sells products to STA, SEA or carriers in the United States.  The parties submitted disputed instructions, objections and argument regarding the issue and the Court adopted the instruction proposed by Apple above.  The instruction is supported by at least the following cases.  35 U.S.C. § 271; *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("In contrast, here it is undisputed that GlowProducts sold the products directly to customers in the United States.  Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States."); *id.* ("GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada.  Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271."); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("[T]he record shows that Pentalpha intended to sell its deep fryers directly into the United States.  Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut to the deep fryers, and it manufactured the deep fryers with North American

electrical fittings.  Moreover, the invoices between Pentalpha and the three U.S. companies all identify delivery to U.S. destinations. In sum, this court does not perceive any fundamental error with the jury instructions in light of the record evidence.").

Furthermore, the language proposed by Samsung—that, in determining whether a sale occurred in the United States, the jury must consider "where the products were shipped from and where the products were shipped to.  A contract negotiated and executed within the United States, for the sale of a patented invention with delivery and performance outside of the United States, is not a sale within the United States"—is nearly identical to language that Samsung proposed, and the Court rejected, in the first trial.  (1846 Dkt. 1694 at 39.)  As then, Samsung's proposed instruction is an incomplete and inaccurate statement of the law, since it describes only one factor relevant to determining the location of the sale.  The Federal Circuit has made clear that a sale is made at all the locations where the sale's "essential activities," including negotiation and performance of the contract for sale or order and payment for the goods, take place. *See, e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376-77 (2005) (determining the location of a sale by considering where its "essential activities," such as ordering, packaging, shipping and payment, took place); *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (stating that a sale occurs not only where legal title passes, but also where contracting and performance occur); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008) (determining the location of a sale by considering where the customers were located when they contracted for the accused products and where the products were delivered).  Apple's corresponding instruction is an accurate statement of the law of patent exhaustion.

## PROPOSED FINAL JURY INSTRUCTION NO. 25A (Samsung)
## DIRECT INFRINGEMENT OF THE '959 AND '414 PATENTS

In this case, Apple asserts that Samsung infringes claim 25 of the '959 patent and claim 20 of the '414 patent, which are known as "computer readable medium" claims. Computer readable medium" claims cover capability. A product is covered by a computer readable medium claim when the product contains instructions that are capable of performing the listed steps. The product does not have to actually perform those steps in order to literally infringe the computer readable medium claim.

**Source:**

*Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (rejecting contention that end product needed to be modified by the user to result in an infringing configuration, where the expert showed that the software was "capable of performing the claimed functionality" and did not make any modifications to the computer source code); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("In this case, Finjan's non-method claims describe capabilities without requiring that any software components be 'active' or 'enabled.' . . .The storage medium claims similarly cover capability. Claim 65 of the '194 patent recites a 'computer-readable storage medium storing program code for causing a server that serves as a gateway to a client to perform the steps of: receiving ...; comparing ...; and preventing execution....' This language does not require that the program code be 'active,' only that it be written 'for causing' a server ('194 patent claim 65) or a computer ('780 patent claim 18) to perform certain steps."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:11-cv-01846, Dkt. 1156, at 11-12) (where a claim is directed to a "computer-readable storage device storing instructions . . . 'infringement occurs when a device that has the capability of performing the [recited] steps . . . is manufactured and sold.'").

## Apple's Objections:

Apple objects to including this instruction because it is incorrect as a matter of law, unsupported by the cited cases, and unnecessary to enable the jury to determine infringement of the 414 and 959 Patents.

First, the instruction is wrong on the law. It states that computer readable medium claims "cover capability." That statement is incomplete without further context. As this Court found, a computer readable medium claim comprising instructions for performing various actions, requires evidence of an actual device that includes actual instructions that is capable, without configuration, compilation or other intervening action, to perform each of the steps in the manner required. (Case No. 5:11-cv-01846 Dkt. No. 1156, at 11-12 (where a claim is directed to a "computer-readable storage device storing instructions . . . 'infringement occurs when a device that has the capability of performing the [recited] steps . . . is manufactured and sold.'").)

Second, Samsung cites *Versata* and *Finjan, but those cases* required evidence that the accused products had a present, as-sold functionality that only had to be used or employed by the user. The fact that no user had employed the functionality did not avoid infringement. Samsung's proposed instruction could encompass a computer device that includes source code that can be used to create a product that later performs the instructions, even if there are at present no instructions for carrying out the configuration required by the claims.

Samsung inserts the concept of a "product" when the cases discuss a medium with instructions that cause a processor to perform a set of actions. Therefore, Samsung's proposed statement that

"A product is covered by a computer readable medium claim when the product contains instructions that are capable of performing the listed steps" is not correct. The product would need to be or include a computer readable medium and the instructions it contains must be interpreted by a processor to cause the processor to perform the steps. It is insufficient for a product to include instructions that are not readable by a processor directly, which is the case with uncompiled computer source code. Samsung's proposed language would read encompass disks that contain source code, when the claim and the law require more.

Third, adding another instruction is unnecessary because Instruction No. 24 provides sufficient guidance to determine infringement. Samsung is trying to introduce arguments supporting its defenses in the guise of a proposed jury instruction

**Samsung's Statement in Support:**

Following the trial in the 11-cv-1846 case, the Federal Circuit decided an important case concerning computer readable medium claims. In *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, (Fed. Cir. 2013), the Federal Circuit determined that a computer readable medium claim covers any software with instructions capable of carrying out the recited steps if those instructions are executed – even if the instructions are part of complex software that requires significant post-sale configuration before performing the steps. In *Versata*, the expert created a "demonstrative data setup" and "used the [software] interface to set up four pricing elements: a pricing calculation function; a pricing procedure; a condition table; and an access sequence." (*Id.* at 1261.) The expert testified that this demonstrative data setup "did not require any modification to [the software's] source code" and that the "[software] included the code to accomplish his demonstration." (*Id.* at 1261-62.) The expert therefore "confirmed his theories that the accused software was capable of performing the claimed functionality." (*Id.* at 1262.) In light of the Federal Circuit's guidance, the jury should be instructed that computer readable medium claims are satisfied when software includes instructions that, if executed, perform the steps recited in the claim – even when the software must be configured before the instructions in that software can perform the recited steps. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("storage medium claims . . . cover capability.").

**PROPOSED FINAL JURY INSTRUCTION NO. 26C (Samsung)**
**APPARATUS CLAIMS--LITERAL INFRINGEMENT**

Apparatus claims are commonly drafted to describe functions of the apparatus. As I've already instructed you, if the patent claim uses the term "comprising," that patent claim is understood as an open claim. An open claim is infringed as long as every element of the claim is met. The fact that the accused product may include additional functions will not avoid infringement. Absent language specifying a specific order for the functions, the accused products can perform these functions in any order and still infringe the apparatus claim.

**Source:**

Adapted from Final Jury Instruction No. 28, Case 5:11-cv-01846-LHK (Dkt. No. 1903); *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001) ("the signal 'comprising' is generally understood to signify that the claims do not exclude the presence in the accused apparatus or method of factors in addition to those explicitly recited") (citations omitted); *eTool Development, Inc. v. National Semiconductor Corp.*, No. 2:08–CV–196–TJW, 2011 WL 4100456, *17 (E.D. Tex. Sept. 13, 2011) (issuing jury instruction that "if you decide that a Defendant's product or method includes all the requirements or steps in that claim, the claim is infringed[; t]his is true even if the accused product or method includes components or steps in addition to those requirements"); *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) ("[A]lthough a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order . . . In this case, the claims themselves contain no basis to require air content reduction before winding. Though the claims, specification, and prosecution history require that the air content of the cleaning fabric be reduced prior to saturation, this does not mean that the air content must be reduced prior to winding on the roll."); *Creative Internet Advertising Corp. v. Yahoo, Inc.*, No. 6:07cv354, 2008 WL 5061625, *16 (E.D. Tex. Nov. 24, 2008) (rejecting argument that apparatus claims required that the functions of the recited logic elements of a computer program had to be performed in a certain order where the claim language did not recite any sequence for the order of the function performance, and rejecting accused infringer's reliance on cases implying a sequence because those cases dealt with method claims).

**Apple's Objections:**

Samsung's proposal for separate instructions regarding apparatus claims is unnecessary and will improperly suggest for the jury that its infringement determination of these claims is different from other claims. The N.D. Cal Model Patent Jury Instructions do not include separate instructions for apparatus claims and Samsung has not identified any unique issue in this case that would justify including such an instruction here. The Court already has an instruction regarding the use of "comprising" as an open-ended claim term. (*See* Instruction No. 26.) There is no need to include an additional instruction on this issue simply because the claim at issue is an apparatus claim. Indeed, several of the cases cited in Samsung's instruction involve claims other than apparatus claims, which exemplifies the extraneous nature of Samsung's proposal.

**Samsung's Statement in Support:**

Samsung's proposed instruction is nearly identical to Final Jury Instruction No. 28 that this Court adopted in Case No. 5:11-cv-01846-LHK (Dkt. No. 1903). Final Jury Instruction No. 28 from the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-01846 case was drafted to address a method claim.  Since there are no method claims are issue in this case, Samsung rephrased Final Jury Instruction No. 28 from the -01846 case to apply to apparatus claims.  Apple claims this instruction is repetitive of other Joint Proposed Final Jury Instructions, but other instructions does not address the issue regarding order of the claimed functions, which this Court included in Final Jury Instruction No. 28 from the -01846 case.  This instruction is based on long standing Federal Circuit law governing the interpretation of apparatus claims.

Since none of the other instructions address the issue regarding order of the claimed functions in an apparatus claim, Apple's objection to this instruction effectively omits language from the Court's 11-cv-1846 instructions.  But no changes in the law or other changes in circumstances justify the modification.  At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's objection is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial.  Apple did not submit any competing instruction.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 27 (Apple)**
**PATENT INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS – '239 PATENT,**
**CLAIM 15**

2

3

4    I will now describe the separate rules that apply to the "means-plus-function" requirement that is
used in claim 15 of the '239 patent. A means-plus-function requirement covers the specific

5    structure disclosed in a patent specification for performing the claimed function. A means-plus-
function requirement does not cover all possible structures that could be used to perform the

6    claimed function.

7    As an example, the term "means for processing data" might be understood to encompass a variety
of different ways of making a calculation, including not only a computer or calculator but a pencil

8    and paper or even the human brain. But because the phrase is a means-plus-function requirement,
we interpret that phrase not to cover every possible means for processing data, but instead to

9    cover the actual means disclosed in the patent for processing data.

10   Claim 15 of the '239 patent includes the term "means for transmission of said captured video over

11   a cellular frequency". You must decide whether the accused Apple products have the structure
disclosed in the patent for performing the claimed function. If you find that the accused Apple

12   products do have structure that performs the claimed function, you must then determine whether
that structure is the same as the structure identified in the specification. If it is the same, the

13   means-plus-function requirement for the claimed function is satisfied by that structure of the
accused Apple products. If the accused Apple products do not contain the structure disclosed in

14   the patent for performing the claimed function, then claim 15 of the '239 patent is not infringed.

15

16
Source:

17
N.D. Cal. Model Patent Jury Instr. B.3.5.

18

19

20   **Samsung's Objections:**

21   Samsung objects to the final paragraph in Apple's version of this instruction because it instructs
the jury to construe the means-plus-function term in claim 15 of the '239 patent.  The *en banc*

22   Federal Circuit recently rejected an assertion that claim construction is factual in nature. *Lighting
Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, No. 12-1014, slip. op. at 10-11, 21 (Fed. Cir.

23   Feb. 21, 2014). The Federal Circuit reinforced that claim construction "is a legal statement of the
scope of the patent right". *Id.* at 22.  Claim construction is a matter of law. *Id.* at 23.  Therefore,

24   claim construction disputes must be resolved by the court. *See O2 Micro Int'l Ltd. v. Beyond
Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a

25   fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.")
Furthermore, under Federal Circuit precedent, once a court establishes that a means plus function

26   limitation is at issue, it must construe that limitation. *Kemco Sales, Inc. v. Control Papers Co.*,

27   208 F.3d 1352, 1360 (Fed. Cir. 2000) ("Once a court establishes that a means-plus-function
limitation is at issue, it must construe that limitation, thereby determining what the claimed

28

EXHIBIT A̲B̲ -- PROPOSED U̶N̶D̶I̶S̶P̶U̶T̶E̶D̶D̲I̲S̲P̲U̲T̲E̲D̲ INSTRUCTIONS
74

function is and what structures disclosed in the written description correspond to the "means" for performing that function.  These issues are likewise questions of law, reviewed de novo."); *Compression Technology Solutions LLC v. EMC Corp.*, 2013 WL 2368039 at *9 (N.D. Cal. May 29, 2013) (quoting *Kemco*).  Here, there are clear and distinct disputes over the scope of the structures in the means plus function claims at issue.  Both parties have set forth competing constructions, and the jury should not be permitted to construe the terms without guidance from the Court.  An instruction such as that proposed by Apple would be error as it will inject uncertainty into any decision rendered by the jury. *See Lighting Ballast*, 16-26 (discussing the importance of maintaining the legal nature of *Markman* decisions to improve consistency and clarity in claim construction).  Indeed, instructing the jury to construe terms of a means plus function patent would result in a need for *de novo* review of the jury's decision regardless of the outcome. *Id.*

1    **PROPOSED FINAL JURY INSTRUCTION NO. 27 (Samsung)**
2    **MEANS-PLUS-FUNCTION CLAIMS – LITERAL INFRINGEMENT**

3    I will now describe the separate rules that apply to the "means-plus-function" requirement that is
     used in claim 15 of the '239 patent.  A means-plus-function requirement covers the specific
4    structure disclosed in a patent specification for performing the claimed function .  A means-plus-
     function requirement does not cover all possible structures that could be used to perform the
5    claimed function.
6
     As an example, the term "means for processing data" might be understood to encompass a variety
7    of different ways of making a calculation, including not only a computer or calculator but a pencil
     and paper or even the human brain.  But because the phrase is a means-plus-function requirement,
8    we interpret that phrase not to cover every possible means for processing data, but instead to
     cover the actual means disclosed in the patent for processing data.
9

10   **Source:**

11   35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389
     F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266
12   (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303,
     1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547
13   (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir.
     1993).
14

15

16   **Apple's Objections:**

17   Apple's proposed instruction largely tracks N.D. Cal. Model Patent Jury Instr. B.3.5.  Apple has
     modified the instruction to identify the only means-plus-function term in the claim for which the
18   jury must identify corresponding structure to determine infringement.  Samsung elected to not
     construe these terms and its proposed instruction seeks to ignore them as required additional
19   limitations.

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 32 (Apple)**
**PATENTS—ANTICIPATION**

2

3

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

4

5

6

7

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

8

9

10

Here is a list of the ways that ~~either party~~Samsung can show that ~~a~~an Apple patent claim was not new:

11

12

  — If the claimed invention was already publicly known or actually publicly used by others in the exact manner claimed in the United States before the date of conception of the claimed invention;

13

14

  — If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention.  A reference is a "printed publication" if it is sufficiently accessible to those interested in locating relevant materials in the field without knowing the author, title, or location of a particular document, even if it is difficult to find;

15

16

17

  — If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

18

19

  — If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice.  A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

20

21

22

23

24

  — If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent holder's application filing date or the date of conception of the claimed invention.

25

26

Where the date of conception for a claimed invention or prior invention is in dispute, you must determine the dates of conception for that claimed invention or prior invention.  Conception is the

27

28

mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

Source:

Adapted from 11-CV-01846 Final Instruction No. 31 (Dkt. No. 1903 at 44); *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F. 3d 1374, 1381 (Fed. Cir. 2012); *In re Lister*, 583 F.3d 1307, 1313 (Fed. Cir. 2009); *In re Bayer*, 568 F.2d 1357, 1360-62 (C.C.P.A. 1978).

**Samsung's Objections:**

Samsung objects to Apple's proposed departure from the 11-cv-1846 instructions, namely Apple's proposed changes to the first and second bullets. In the first, Apple proposes the addition of "actually" to "publicly used" as well as the requirement that the use be "in the exact manner claimed." In the second, Apple attempts to impose what appears to be a higher standard than is suggested by relevant authority. No changes in the law or other changes in circumstances justify these modifications. At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time."). Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial. In addition, these portions of the instruction mirror Northern District of California Model Patent Jury Instruction 4.3a1, and no basis exists for differing from the model.

Apple's first bullet is incorrect for several additional reasons. Apple's interjection of "actually" does nothing to change the substance of the instruction and serves only to bias the instruction in favor of validity. Apple's inclusion of "used . . . in the exact manner claimed" is legally incorrect. The question is whether the claimed invention is used, not whether it is used in any particular manner. *See* 35 U.S.C. § 102(a) ("A person shall be entitled to a patent unless . . . the invention was known or used by others in this country . . .before the invention thereof by the applicant for patent.") Apple's instruction regarding *manner* of use would be accurate only for method claims, but no method claims are asserted in this action. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("apparatus claims cover what a device is, not what a device does"). Per 35 U.S.C. 102(a), *any* use by another of a claimed invention (*i.e.*, an apparatus) in the United States is invalidating. This instruction appears to be part of Apple's broader strategy of treating its computer readable medium claims of the '414 and '959 patents as apparatus claims for infringement and damages, but as method claims for invalidity.

Apple's changes to the second bullet similarly appear to be an attempt to suggest a higher standard for accessibility than is supported by relevant authority. Certainly, Apple points to no recent change in law that justifies departing from the instructions used in the first trial, where printed publications were also at issue.

35 U.S.C. § 102(a) does not state that "both [§ 102(a) and (b)] require actual use by someone at some point." Samsung also notes that *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) actually stated that "public use" and "use" – two different statutory provisions – both require use: "[a]lthough 'public use' for purposes of § 102(b) is defined differently from 'use' for purposes of § 102(a), both require actual use by someone at some

1   point."  (*Id.*)  The requirements of 35 U.S.C. § 102(a) or (b) can also be met in other ways –

2   including if the claimed article was "known" or "on sale," without regard to whether there was an
    invalidating "use."

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 32 (Samsung)**
**ANTICIPATION**

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device, or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that either partySamsung can show that aan Apple patent claim was not new:

– If the claimed invention was already publicly known or publicly used by others in the United States before the date of conception of the claimed invention;

– If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

– If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice.  A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

– If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent holder's application filing date or the date of conception of the claimed invention.

Since certain of them are in dispute, you must determine dates of conception for the claimed inventions and prior inventions.  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 31 (Dkt. No. 1903 at 44).

**Apple's Objections:**

Unlike Samsung's proposed instruction, Apple's proposed instruction on anticipation is proper.

*First*, Apple's instruction properly instructs the jury fully on the law of anticipation. Anticipation of a computer readable medium claims requires evidence that someone *actually knew of or used* a medium that actually performs the claimed functionality. *See* 35 U.S.C. § 102(a) ("both [§ 102(a) and (b)] require actual use by someone at some point."). Mere evidence that a device is capable of being used is not enough for anticipation. But, as Apple explained—and this Court has already ruled—it is not sufficient to show what *could* have been done, or *could* have been known. *See Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed Cir. 1991). As this Court correctly held, a "post-hoc, reconstructed interpretation of how a WAIS system might have been constructed does not constitute prior art for purposes of anticipation." (Dkt. No. 230 at 6.) Rather, Samsung must show that the invention was, in fact, *actually* known or used.

As discussed in Apple's objection to Samsung's proposed Final Jury Instruction No. 32A in which Samsung relies on a misstatement of the law of anticipation, Samsung will likely suggest to the jury, contrary to applicable law, that anticipation of a computer readable medium claim only requires capability of practicing the claim. Absent a jury instruction that clearly instructs the jury that anticipation requires the alleged prior art device to have been *actually publicly used* by others in the manner covered by the claim, , as proposed by Apple, there is a serious risk that the jury will be misled into legal error causing prejudice to Apple.

*Second*, Apple's proposed instruction instructs the jury fully on what constitutes a "printed publication." Apple's Motion *in Limine* No. 5 seeks to exclude Purported Prior Art Documents That do Not Qualify as Prior Art. If the Court denies Apple's Motion *in Limine* No. 5, Apple believes that Samsung will rely heavily in its invalidity case on printed publications that are not prior art. To qualify as a printed publication, a document must be "sufficiently accessible to the public interested in the art" before the critical date. *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989). Absent a clear instruction, as proposed by Apple, that explains to the jury that a printed publication must be *sufficiently accessible* to qualify as prior art, and that instructs the jury on what this means, there is a serious risk that the jury will apply a legally incorrect standard, causing undue prejudice to Apple.

**PROPOSED FINAL JURY INSTRUCTION NO. 32A (Samsung)**
**ANTICIPATION OF THE '959 AND '414 PATENTS**

In this case, Apple asserts that Samsung infringes claim 25 of the '959 patent and claim 20 of the '414 patent, which are known as "computer readable medium" claims. "Computer readable medium" claims cover capability. All of the requirements of a computer readable medium claim exist in a prior art medium if the prior art medium contained instructions capable of performing the listed steps. The medium did not have to actually perform those steps in order to anticipate the computer readable medium claim.

**Source:**

*Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (rejecting contention that end product needed to be modified by the user to result in an infringing configuration, where the expert showed that the software was "capable of performing the claimed functionality" and did not make any modifications to the computer source code); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("In this case, Fijian's non-method claims describe capabilities without requiring that any software components be 'active' or 'enabled.' . . .The storage medium claims similarly cover capability. Claim 65 of the '194 patent recites a 'computer-readable storage medium storing program code for causing a server that serves as a gateway to a client to perform the steps of: receiving ...; comparing ...; and preventing execution....' This language does not require that the program code be 'active,' only that it be written 'for causing' a server ('194 patent claim 65) or a computer ('780 patent claim 18) to perform certain steps."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:11-cv-01846, Dkt. 1156, at 11-12) (where a claim is directed to a "computer-readable storage device storing instructions . . . 'infringement occurs when a device that has the capability of performing the [recited] steps . . . is manufactured and sold.'").

**Apple's Objections:**

Apple objects to this special instruction for five reasons.

*First*, it misstates the law of anticipation for a computer readable medium claim. Contrary to Samsung's proposed instruction, anticipation of a computer readable medium claims requires evidence that someone *actually knew of or used* a medium that actually performs the claimed functionality. *See* 35 U.S.C. § 102(a); *see also Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) ("both [§ 102(a) and (b)] require actual use by someone at some point."). Mere evidence that a device is capable of being used is not enough for anticipation. But, as Apple explained—and this Court has already ruled—it is not sufficient to show what *could* have been done, or *could* have been known. *See Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed Cir. 1991). As this Court correctly held, a "post-hoc, reconstructed interpretation of how a WAIS system might have been constructed does not constitute prior art for purposes of anticipation." (Dkt. No. 230 at 6.) Rather, anticipation requires a finding based on evidence that the invention was, in fact, *actually* known or used.

*Second*, none of the cases that Samsung cites in its proposed jury instruction addresses the proper standard for anticipation. Instead, Samsung cites two decisions addressing when software can *infringe* a claim. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) and *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255 (Fed. Cir. 2013). These infringement cases do not address—much less alter—the standard for anticipation or allow anticipation based on software that is merely capable of anticipatory functionality. The infringement and validity

1
2
3

provisions address different uses.  For anticipation, use must be accessible to the public, but not so for infringement.  *Minnesota Min.*, 303 F.3d at 1306.  Nor do these infringement cases overrule the clear holdings of the Federal Circuit requiring *actual* knowledge or use to meet the "knowledge or use" prongs of Section 102.  *See, e.g., id.* at 1307.  Thus, Samsung's proposed interpretation is erroneous as a matter of law.

4
5

***Third***, Samsung's instruction improperly suggests that a disk that contains only source code could be capable of performing instructions in a computer readable medium claim.  Source code is not capable of performing steps as written.

6
7
8

***Fourth***, this instruction suggests that "existing in the prior art" is sufficient when it is not.  No subsection of Section 102 or 103 supports this "existing in the prior art" phraseology.  Samsung's instruction would invite the jury to overlook the clear requirement to meet one of the specific subsection of 102 and/or 103 to establish that a publication or device qualifies as prior art.

9

***Fifth***, Apple objects to this instruction because it mixes infringement and invalidity language, which is potentially confusing to the jury given that this instruction purported to relate to invalidity.

10
11

**Samsung's Statement in Support:**

12
13
14
15
16
17
18
19
20
21

Following the trial in the 11-cv-1846 case, the Federal Circuit decided an important case concerning computer readable medium claims.  In *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255,  (Fed. Cir. 2013), the Federal Circuit determined that a computer readable medium claim covers any software with instructions capable of carrying out the recited steps if those instructions are executed – even if the instructions are part of complex software that requires significant post-sale configuration before performing the steps.  In *Versata*, the expert created a "demonstrative data setup" and "used the [software] interface to set up four pricing elements: a pricing calculation function; a pricing procedure; a condition table; and an access sequence."  (*Id.* at 1261.)  The expert testified that this demonstrative data setup "did not require any modification to [the software's] source code" and that the "[software] included the code to accomplish his demonstration."  (*Id.* at 1261-62.)  The expert therefore "confirmed his theories that the accused software was capable of performing the claimed functionality."  (*Id.* at 1262.)  In light of the Federal Circuit's guidance, the jury should be instructed that computer readable medium claims are satisfied when software includes instructions that, if executed, perform the steps recited in the claim – even when the software must be configured before the instructions in that software can perform the recited steps.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010) ("storage medium claims . . . cover capability.").

22
23
24
25
26

35 U.S.C. § 102(a) does not state that "both [§ 102(a) and (b)] require actual use by someone at some point."  Samsung also notes that *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) actually stated that "public use" and "use" – two different statutory provisions – both require use:  "[a]lthough 'public use' for purposes of § 102(b) is defined differently from 'use' for purposes of § 102(a), both require actual use by someone at some point."  (*Id.*)  The requirements of 35 U.S.C. § 102(a) or (b) can also be met in other ways – including if the claimed article was "known" or "on sale," without regard to whether there was an invalidating "use."

27
28

**PROPOSED FINAL JURY INSTRUCTION NO. 33 (Apple)**
**PATENTS—STATUTORY BARS**

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways either sideSamsung can show that thean Apple patent application was not timely filed:

    – If the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application. A reference is a "printed publication" if it is sufficiently accessible to those interested in locating relevant materials in the field without knowing the author, title, or location of a particular document, even if it is difficult to find;

    – If the claimed invention was already being openly used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

    – If a device or method using the claimed invention in the specific manner claimed was sold or offered for sale in the United States, and that claimed invention was ready for patenting, more than one year before the effective filing date of the patent application;

    – If the patent holder had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field looking at the reference to make and use the claimed invention.

Source:

Adapted from 11-CV-01846 Final Instruction No. 32 (Dkt. No. 1903 at 45); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002); *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1381 (Fed. Cir. 2012); *In re Lister*, 583 F.3d 1307, 1313 (Fed. Cir. 2009); *In re Bayer*, 568 F.2d 1357, 1360-62 (C.C.P.A. 1978).

**Samsung's Objections:**

Samsung objects to Apple's proposed departure from the 11-cv-1846 instructions, namely Apple's proposed changes to the first and third bullets. In the first, Apple attempts to impose what appears to be a higher standard than is suggested by relevant authority. In the third, Apple proposes the requirement that a use be "in the specific manner claimed." No changes in the law or other changes in circumstances justify the modification. At the *Daubert* hearing, the Court informed the parties that there was a "heavy presumption" in favor of using instructions from the 1846 case, and that absent a change warranting a departure from that "heavy presumption" (e.g., a change in law), the Court would adopt the jury instructions from the first trial. *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time."). Apple's proposed change is not based on a change in law and there is no other compelling reason to overturn the heavy presumption in favor of using instructions from the first trial. In addition, these portions of the instruction mirror Northern District of California Model Patent Jury Instruction 4.3a2, and no basis exists for differing from the model.

Apple's third bullet point regarding use is incorrect for an additional reason. Apple's inclusion of "used . . . in the specific manner claimed" is legally incorrect. The question is whether the claimed invention is used, not whether it is used in any particular manner. *See* 35 U.S.C. § 102(b) ("A person shall be entitled to a patent unless . . . the invention was . . .in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.") Apple's instruction regarding manner of use would be accurate only for method claims, but no method claims are asserted in this action. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("apparatus claims cover what a device is, not what a device does"). Per 35 U.S.C. 102(b), *any* public use of a claimed invention more than one year before filing would be invalidating. This instruction appears to be part of Apple's broader strategy of treating its computer readable medium claims of the '414 and '959 patents as apparatus claims for infringement and damages, but as method claims for invalidity. Apple's changes to the first bullet similarly appear to be an attempt to suggest a higher standard for accessibility than is supported by relevant authority, and no intervening change in law justifies a departure from the earlier litigation.

**PROPOSED FINAL JURY INSTRUCTION NO. 33 (Samsung)**
**PATENTS—STATUTORY BARS**

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed.  Here is a list of ways ~~either side~~Samsung can show that ~~the~~an Apple patent application was not timely filed:

> – If the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

> – If the claimed invention was already being openly used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

> – If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, more than one year before the effective filing date of the patent application;

> – If the patent holder had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field looking at the reference to make and use the claimed invention.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 32 (Dkt. No. 1903 at 45).


**Apple's Objections:**

Apple's proposed instruction on this issue is proper because it instructs the jury fully on what constitutes a "printed publication."  Apple's Motion *in Limine* No. 5 seeks to exclude Purported Prior Art Documents that do Not Qualify as Prior Art.  If the Court denies Apple's Motion *in Limine* No. 5, Apple believes that Samsung will rely heavily in its invalidity case on printed publications that are not prior art.  To qualify as a prior art printed publication, a document must

be "sufficiently accessible to the public interested in the art" before the critical date.  *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989).  Absent a clear instruction, as proposed by Apple, that explains to the jury that a printed publication must be *sufficiently accessible* to qualify as prior art, and that instructs the jury on what this means, there is a serious risk that the jury will be misled about what constitutes prior art in this case, causing undue prejudice to Apple.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 37 (Apple)**
**PATENT DAMAGES — LOST PROFITS — GENERALLY**

2

3

In this case, Apple seeks to recover lost profits for some of Samsung's sales of allegedly
infringing products, and a reasonable royalty on the rest of Samsung's allegedly infringing sales.
Samsung does not seek lost profits for infringement of its patents.

4

5

To recover lost profits for infringing sales, Apple must show that but for the infringement, there is
a reasonable probability that it would have made sales that Samsung Electronics Company,
Samsung Electronics America, and Samsung Telecommunications America made of the
infringing products.  Apple must show the share of Samsung's sales that it would have made if
the infringing products had not been on the market.

6

7

8

9

10

Source:

11

Adapted from 11-CV-01846 Final Instruction No. 36 (Dkt. No. 1903 at 50); *Versata Software,
Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013), *cert. denied*, 2014 U.S. LEXIS 715
(Jan. 21, 2014); *Grain Processing Corp. v. AmericanMaize-Products Co.*, 185 F.3d 1341, 1350
(Fed. Cir. 1999); *Nuance v. ABBYY*, No. 3:08-cv-02912-JSW, Dkt. No. 895 at 26 (N.D. Cal. Aug.
20, 2013) (White, J.); *id.*, Dkt. No. 921 at 2016.

12

13

14

Samsung's Objections:

15

Apple proposes to entirely delete the third paragraph of the corresponding instruction the Court
gave in 11-cv-01846, but no changes in the law or other changes in circumstances justify the
modification.  *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the
preliminary and final jury instructions from the first trial unless you can point to either a change
in the law or something else that justifies a change, but there's going to be a heavy presumption
that what was previously given will be given this time.").  Indeed, Apple tried to delete the same
paragraph *three times* in 11-cv-01846 (Dkt. No. 1232 at 131; Dkt. No. 2768 at 5; Dkt. No. 2843 at
1214), and the Court rejected the attempt each time.  Dkt. No. 1903 at 50; Dkt. 1998 at 3871; Dkt.
No. 2784 at 32; Dkt. No. 2843 at 1218.  Samsung incorporates by reference herein its arguments
from page 12, line 22 to page 13, line 23 of the Joint Pretrial Statement and Proposed Order for
New Damages Trial (Dkt. No. 2486) filed in 11-cv-01846, which addressed this exact issue.  The
deleted paragraph appears *verbatim* in Model Instruction 5.2 of the N.D. Cal. Model Patent Jury
Instructions and is firmly grounded in both Supreme Court and Federal Circuit precedent.  *See,
e.g.*, *Garretson  v. Clark*, 111 U.S. 120, 121 (1884) (patentees "must in every case give evidence
tending to separate or apportion . . . the patentee's damages between the patented feature and the
unpatented features"); *Ferguson Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir.
2003) ("The district court therefore failed to distinguish the allocation of profits that would have
been made 'but for' the infringement of the '376 patent with the profits that  could fairly be
allocated to" other features not covered by the patent).  This instruction should not be modified as
Apple urges.

16

17

18

19

20

21

22

23

24

25

26

27

By using the phrase "Samsung had never used the patented invention," Samsung's instruction
accurately reflects current law.  This contrasts with Apple's proposed language, which would
improperly allow it to recover the share of Samsung's sales "if the infringing products had not

28

been on the market."  Although Apple's proposed language was adopted in 11-cv-01846, Apple improperly sought to use a market share (or *Mor-Flo*) analysis in that case as a substitute for showing "but for" causation.  This is plainly wrong, and Apple's proposal would allow it to induce the same error here.  Apple's proposed phraseology incorrectly implies that Apple does not have to satisfy the requirements of "but for" causation by proving what share of infringing sales it would have captured absent Samsung's use of the patented invention.  The patentee, however, still bears the burden of proving that it would have made its *pro rata* share of the infringing sales. *See BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (reversing lost profits award based on market share where patentee "did not show with reasonable probability that [defendant's] customers would have purchased from [the patentee] in proportion with [the patentee's] market share."); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) ("a patentee must show that the infringing units do not have a disparately higher price than or possess characteristics significantly different from the patented product."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

1
2

## PROPOSED FINAL JURY INSTRUCTION NO. 37 (Samsung)
## PATENT DAMAGES — LOST PROFITS — GENERALLY

3
4

In this case, Apple seeks to recover lost profits for some of Samsung's sales of allegedly infringing products, and a reasonable royalty on the rest of Samsung's allegedly infringing sales. Samsung does not seek lost profits for infringement of its patents.

5
6
7
8

To recover lost profits for infringing sales, Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America made of the infringing products. Apple must also show the share of Samsung's sales that it would have made if Samsung had never used the patented invention.

9
10

You must allocate the lost profits based upon the customer demand for the patented feature of the infringing products. That is, you must determine which profits derive from the patented invention that Samsung sells, and not from other features of the infringing products.

11

**Source:**

12

Adapted from Case No. 11-CV-01846 Final Instruction No. 36 (Dkt. No. 1903 at 50).

13

**Apple's Objections:**

14
15

Apple objects to the final paragraph of the instruction, which is drawn from the Northern District Model and was used by the Court in case number 1846. The paragraph reflects a legal error, as reflected by recent Federal Circuit authority issued after the model instructions were drafted.

16
17
18
19
20
21
22
23
24
25
26
27
28

The Federal Circuit has made clear that lost profits should not be allocated based upon the consumer demand for the patented features of the infringing products. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013) (holding that the lost profits analysis under Panduit does not "require any allocation of consumer demand among the various limitations recited in a patent claim"). The discussion in *Versata Software Inc.*, and in *DePuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*, 567 F.3d 1314, 1330-31 (Fed. Cir. 2009), make clear that there is no need to allocate "lost profits based on customer demand the patented feature," language which is drawn from *Ferguson Beauregard v. Mega Sys. LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003). *DePuy Spine* specifically limited *Ferguson Beauregard* to a circumstance in which lost profits are challenged under the "entire market value rule," and *Versata* explicitly follows *DePuy Spine* on this issue. Thus, other courts in this district have recognized this error and omitted the disputed paragraph to comport with the Federal Circuit's recent guidance in *Versata. See Nuance v. ABBYY,* No. 3:08-cv-02912-JSW Dkt. No. 895 at 26 (N.D. Cal. Aug. 20, 2013) (White, J.); *id.*, Dkt. No. 921 at 2016. The Court should do the same here and reject Samsung's Proposed Instruction No. 22, which erroneously states that lost profits should be allocated according to the consumer demand for the patented features. Moreover, the paragraph is likely confuse the jury when it is compared to instructions 38 and 41, which properly instruct the jury that it may use a patentee's market share to identify the portion of the sales that a patentee would have made but for the infringement of the patent. Both those instructions arise from a long line of cases reaching back to *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

1

2

Separately, Apple objects to Samsung's changes to the last sentence of the second paragraph, which adds the word "also" and replaces "if the infringing products had not been on the market" with "if Samsung had never used the patented invention."  This change departs from the Northern District Model instruction and the instruction that the Court has already given twice.  In fact, Samsung has itself ***three times*** submitted the language to which it now objects.  It did so first on July 16, 2012 in connection with the first trial.  (1846 Dkt. 1238 at 68) (Disputed Instruction 31/54).  It did so again on August 13, 2012 when the parties were finalizing the jury instructions in the first trial in 1846.  (1846 Dkt. 1694 at 60) (Samsung's Proposed Jury Instruction No. 25). It did so a third time on November 17, 2013.  (1846 Dkt. 2768 at 7) (Jury Instruction No. 22). There is no justification to modify the Northern District model jury instruction to which Samsung previously agreed.  This is an accurate statement of the law as stated in *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545-46 (Fed. Cir. 1995) (en banc) and the long-standing lost profits framework described in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 38 (Apple)**
**PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

Apple is entitled to lost profits if it proves all of the following:

(1)    that there was demand for the patented products;

(2)    that there were no non-infringing substitutes for each of the infringing products, or, if there were, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes.  The time period relevant to determining availability of a non-infringing substitute is the entire period during which Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America infringed Apple's patents.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available. Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology (or other patented technology) to develop an alleged substitute.  (3) that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

(4)    the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had not infringed.

Source:

Adapted from Retrial 11-CV-01846 Final Instruction No. 23 (Dkt. No. 2783 at 29.); *see also* 11-CV-01846 Final Instruction No. 37 (Dkt. No. 1903 at 51).

Samsung's Objections:

Apple's proposed jury instruction includes the phrase "or other patented technology" as part of *Panduit* factor 2, adapted from an instruction given at the damages retrial in the 11-cv-1846 case. But that instruction was given after a prior jury verdict where certain Samsung products were found to have infringed some, but not all, of Apple's asserted patents. *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846, Dkt. No. 1930 (N.D. Cal. Aug. 24, 2012).  Here, there has been no such finding and Apple has failed to identify a single case where the jury has been asked to decide if a non-infringing substitute infringed a *non-asserted* patent.  Additionally, inclusion of the vague phrase "other patented technology" is likely to confuse the jury, who will not know whether the phrase applies to Apple's technology, Samsung's, or any technology.  This phrase will also result in a trial within a trial regarding whether non-infringing alternatives in fact infringe other, non-

1   asserted patents.  Samsung's proposed instruction, which follows the Court's corresponding
2   instruction from the initial trial, is preferable.

3   Samsung's proposed instruction also accurately reflects the law by clarifying that if the jury
    determines that Samsung had a non-infringing alternative, lost profits are completely unavailable.
4   *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d 1341, 1352 (Fed. Cir. 1999) ("[M]arket
    sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost
5   profits."); *see also id.* at 1349 ("In the face of this noninfringing substitute, Grain Processing
    could not prove lost profits."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458
6   (Fed. Cir 1991) (alleged infringer's possession of its own non-infringing alternative bars lost
7   profits).  In contrast, Samsung's instruction reflects that if the jury were to determine that only
    third party manufacturers had non-infringing alternatives, Apple may be entitled to its *pro rata*
8   share of the market if it otherwise satisfies its burden.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 38 (Samsung)**
**PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

Apple is entitled to lost profits if it proves all of the following:

    (1)    that there was demand for the patented products;

    (2)    that there were no non-infringing substitutes for each of the infringing products, or, if there were no acceptable non-infringing substitutes available to Samsung, but there were acceptable non-infringing substitutes offered by other manufacturers, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America that Apple would have made despite the availability of the other non-infringing substitutes. The time period relevant to determining availability of a non-infringing substitute is the entire period during which Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America infringed Apple's patents. An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available. Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology to develop an alleged substitute;

    (3)    that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

    (4)    the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had not infringed.

**Source:** Adapted from Case No. 11-CV-01846 Final Instruction No. 35 (Dkt. No. 1903 at 49); *see also Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d at 1458 (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

**Apple's Objections:**

Apple has proposed an instruction that is substantively identical to what the Court used in the damages retrial in the 1846 case (*see* 1846 Dkt. No. 2783 at 33). Apple's proposal is also substantively identical to the instruction used in the first 1846 trial, with the exception of replicating the Court's addition of the following language in the retrial instruction: the phrase "(or other patented technology)" and the sentence beginning "The time period relevant to . . . ." Apple's instruction identifies all three Samsung entities, consistent with the instructions in the first trial. Samsung itself submitted the language of paragraph (2) with the sole exception of the

1    parenthetical "(or other patented technology)" in connection with the damages retrial in the 1846

2    case.

3    There is no legal or factual reason to depart from the former instructions and the N.D. Model
     instruction to include Samsung's modification of the meaning and effect of non-infringing
4    alternatives and Samsung's new limitation to alleged non-infringing alternatives offered by other
     manufacturers.  Samsung has never proposed it previously.  To the contrary, Samsung previously
5    offered identical language to what the Court has twice used (*see, e.g.* 1846 Dkt. No. 1694 at 65)
     and has offered no case law or other valid reason for the changes that it has now proposed.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 39 (Apple)**
**PATENT DAMAGES—LOST PROFITS—AVAILABILITY OF**
**ACCEPTABLE NON-INFRINGING ALTERNATIVES**

2

3

4    A product can be considered an acceptable non-infringing alternative if you find that it (i) was
available to Samsung during the relevant damages period; and (ii) provided all the advantages of
the patented technology.

5

6    Apple has the initial burden of proving that no known alternatives were on the market during the
relevant damages period. In determining whether an alternative product was on sale and available,
you may consider whether the alternative product infringed any Apple patents.

7

8    An alternative may be considered available even if it was not actually on sale during the
infringement period if Samsung proves that it could have incorporated the non-infringing features
into its infringing products as a design-around. Samsung can meet its burden of proving the
existence of a design-around with evidence that it had the necessary equipment, know-how, and
experience to implement those non-infringing alternatives. Mere speculation or conclusory
assertions will not suffice.

9

10

11

12    In addition, a product lacking the advantages of that patented is not a substitute "acceptable" to
the customer who wants those advantages.

13

14

15    Source:

16    Retrial 11-CV-01846 (Dkt. No. 2657) (Order re Noninfringing Alternatives); *SynQor, Inc. v.
Artesyn Technologies, Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013); *DePuy Spine, Inc. v. Medtronic
Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009); *Grain Processing Corp. v. Am.
Maize-Prods. Co.*, 185 F.3d 1341, 1330 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d
1538, 1545 (Fed. Cir. 1995) (en banc); *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164,
1179 (N.D. Cal. 2010).

17

18

19

20

21    Samsung's Objections:

22    Apple proposed exactly the same instruction for the 11-CV-01846 retrial and the Court rejected it
as unnecessary and incorrect in numerous respects. *Apple, Inc. v. Samsung Elecs., Co.*, 11-cv-
1846, Dkt. No. 2784 (N.D. Cal. Nov. 18, 2013) (declining to include jury instruction on
availability of acceptable non-infringing alternatives); Dkt. No. 2739 at 416 ("with regard to
Apple's proposed limiting instruction regarding use of products found not to infringe by the prior
jury as evidence of the availability of acceptable non-infringing alternatives, that, that limiting
instruction is denied. I think that it has several misstatements of law."). There is no reason for
the Court to depart from its previous ruling. *First,* non-infringing alternatives are covered by the
jury instruction on "Lost Profits—Factors to Consider." *Second*, the first paragraph of Apple's
proposed instruction conflates the distinct concepts of "acceptability" and "availability." *Third*,
Apple's focus on whether a non-infringing alternative was available to Samsung "during the

23

24

25

26

27

28

relevant damages period" – as opposed to the infringement period – is incorrect and contradicts the Court's Order re Noninfringing Alternatives in 11-CV-01846 (Dkt. No. 2657).  Indeed, in the very next paragraph, Apple refers to the "infringement period." *Fourth,* Apple's proposed instruction is incoherent.  It asserts that, in considering whether an alternative product was "on the market" or "on sale and available," the jury may consider whether "the alternative product infringed any Apple patents."  But whether a product infringed any Apple patents has nothing to do with the factual question of whether a product was "on the market" or "on sale." *Fifth*, Apple's proposed instruction is hopelessly ambiguous and confusing.  It provides that the jury may consider whether the alternative product infringed "any Apple patents," but does not clarify that it wants the jury to consider *unasserted* Apple patents.  It also refers to "incorporat[ing] the non-infringing features" without any explanation of what the "incorporation" or "non-infringing features" would be. *Sixth,* Apple seeks to inject the same arguments that the Court already rejected in 11-CV-01846 , including its reliance on *Rite-Hite Co. v. Kelley Corp.*, 56 F.3d 1538 (Fed. Cir. 1995).  This Court has already held that "[b]ecause an acceptable noninfringing substitute need not be a product that was actually on the market at the time of infringement, the fact that the Samsung products infringed some of Apple's patents does not preclude Samsung from arguing that the noninfringing aspects of these products provide evidence that Samsung *could* have offered a fully noninfringing products that would have been an acceptable noninfringing substitute." *Apple Inc. v. Samsung Elecs., Co.* , 11-cv-1846, Dkt. No. 2657 at 9:21-16.  The Court has also previously held that a non-infringing alternative "need not have the patented feature to be deemed 'acceptable.'" *Id.* at 4:26-5:1, 6:27-7:30 ("[I]f Apple fails to convince the jury that consumers purchased its patented products because they desired the patented features. . . , then the jury could reasonably infer that Samsung's non-infringing products were acceptable substitutes even without further evidence that the non-infringing products contained the patented features").  Apple's proposed instruction that "a product lacking the advantages of that [sic] patented is not a substitute 'acceptable' to the customer who wants those advantages" elides its burden to prove "particularized consumer demand for the patented features." *Id.* at 5-6.  Apple's proposed instruction also improperly suggests that an alternative must be "on sale and available," contrary to law. *Id.* at 5:23-25, 9:21-23. *Seventh,* Apple has chosen to selectively include only those parts of the Court's Order that it views as aiding its case, but ignores all those parts that do not. *Finally,* Apple has articulated no legitimate difference between this case and the last one that would justify this instruction.  For example, Samsung's expert, Dr. Martin Rinard, identified multiple actual noninfringing alternatives to the '959 patent. (Rinard Rebuttal Report, ¶¶ 294-341.)  For the '647 patent, Samsung's expert Dr. Jeffay identified numerous non-infringement positions to the asserted claims (Jeffay Rebuttal Rpt. ¶¶ 258-469), and also identified other actual design-arounds to the '647 patent. (*Id.* at ¶¶ 484-531.)  For the '414 patent, Samsung identified ten actual non-infringing alternatives during discovery. (*See* Samsung's July 15, 2013 Supplemental Response to Interrogatory No. 29 at 160-62, 175-77.)  In contrast, Samsung's ability to introduce design around evidence in the 11-cv-1846 trials was severely constrained by the Court's order precluding it from introducing evidence of actual design arounds (*see* Dkt. 898).  Nonetheless, the Court rejected Apple's proposed instruction there and should do so again here.

Apple's Position:

1  The availability of alleged or actual non-infringing alternatives will be significant factual dispute
2  in resolving damages in the present case.  Further, it is undisputed that Samsung failed to provide
   in discovery any actual design-arounds for the '959, '647 and '414 Patents.  This provides a
3  compelling factual difference between this case and 1846, in which Samsung asserted actual
   design arounds to every patent, and warrants a change in the 1846 instructions.  As a result of its
4  failure to identify actual design-arounds for the specified patents in this case, Samsung will, by
   necessity, rely on *hypothetical* design arounds to rebut Apple's claim to lost profits.  How such a
5  claim should be treated has been explicitly resolved by the Federal Circuit through a shift in the
6  burden of proof.  *See Grain Processing Corp. v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1353
   (Fed. Cir. 1999).  "When an alleged alternative is not on the market during the accounting period,
7  a trial court may reasonably infer that it was not available as a noninfringing substitute at that
   time. *Cf. Rite-Hite*, 56 F.3d at 1545.  The accused infringer then has the burden to overcome this
8  inference by showing that the substitute was available during the accounting period. *Cf. id.*"
   *Grain Processing*, 185 F.3d at 1353; *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek,*
9  *Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009).  This burden shift is not included in the Northern
10 District Model instruction because it arises only in cases in which a design-around had not been
   implemented, as is the case here.  The proposed instruction properly states Apple's initial burden
11 and properly states Samsung's resulting burden in language that mirrors the Federal Circuit's
   opinion and the Northern District model. *Id.* ("Mere speculation or conclusory assertions will not
12 suffice to overcome the inference."); *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek,*
   *Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009) ("However, because Medtronic did not actually have a
13 noninfringing substitute "on the market" during the relevant accounting period, it was Medtronic
   that bore the burden of overcoming the inference of unavailability").  "The trial court must
14 proceed with caution in assessing proof of the availability of substitutes not actually sold during
15 the period of infringement.  Acceptable substitutes that the infringer proves were available during
   the accounting period can preclude or limit lost profits; substitutes only theoretically possible will
16 not." *Grain Processing*, 185 F.3d. at 1353; *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d
   1164, 1178-1179 (N.D. Cal. 2010).  Samsung should not be permitted misleadingly to offer an
17 instruction that suggests Apple bears a burden of persuasion when the Federal Circuit says that it
18 does not.

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 41 (Apple)**
**PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

One way Apple may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in Apple's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

Source:

Adapted from 11-CV-01846 Final Instruction No. 39 (Dkt. No. 1903 at 53).

Samsung's Objections:

Although Apple's proposed instruction was adopted in 11-cv-01846, Apple improperly sought to use a market share (or *Mor-Flo*) analysis in that case as a substitute for showing "but for" causation.  This is plainly wrong, and Apple's proposal – particularly when combined with its proposal for the last sentence of the second paragraph in the "PATENT DAMAGES — LOST PROFITS — GENERALLY" instruction – would allow it to induce the same error here.  Apple's proposed instruction would allow it to improperly imply that Apple does not need to satisfy any causation requirement to recover lost profits in proportion with its market share.  This is incorrect, and Samsung's proposed instruction is in accord with the AIPLA model jury instruction, which more accurately states the law as requiring Apple to prove that it would have captured its *pro rata* market share but for Samsung's use of the patented invention.  AIPLA Model Patent Jury Instr. No. 11.7 (2012); *see also BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (reversing lost profits award based on market share where patentee "did not show with reasonable probability that [defendant's] customers would have purchased from [the patentee] in proportion with [the patentee's] market share."); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) ("a patentee must show that the infringing units do not have a disparately higher price than or possess characteristics significantly different from the patented product."); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

**PROPOSED FINAL JURY INSTRUCTION NO. 41 (Samsung)**
**PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

If you find that there were acceptable non-infringing substitute products offered by manufacturers other than Apple or Samsung in the market, then Apple may still be entitled to lost profits on a portion of Samsung's infringing sales.  The burden is on Apple to prove that it is more likely than not that the patented product competed in the same market as Samsung's infringing product, and that Apple would have captured its claimed share of that market but for Samsung's use of the patented invention.  It is not necessary for Apple to prove that Apple and Samsung were the only two suppliers in the market for Apple to demonstrate entitlement to lost profits.  The burden is on Apple, however, to show that it is more likely than not that it would have sold that portion had Samsung's product never used the patented invention.

**Source:**  AIPLA Model Patent Jury Instr. No. 11.7 (2012); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-1357 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d at 1458 (affirming denial of lost profits based on market share where defendant had noninfringing alternative products); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) (defendant "could have sold a noninfringing alternative," and thus the patentee's "reliance on proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits.").

**<u>Apple's Objections:</u>**

Since July 2012, Samsung has three times submitted an identical instruction to that submitted by Apple, which was previously used by the Court.  (1846 Dkt. Nos. 1238 at 70; 1693 at 29; 2513 at 88.)  The Court has given the instruction twice in circumstances raising the identical issues. (1846 Dkt. Nos. 1903 at 53; 2783 at 35.)  The instruction used by the Court and proposed by Apple relies on the Northern District model, which is the source of other damages instructions. Samsung offers no compelling reason for change and no reason that the prior instruction is legally wrong.  It instead proposes an instruction modified from the AIPLA model instructions, which improperly repeats language regarding Apple's alleged burdens from other instructions and that improperly limits Apple to a recovery based on whether, when and how many manufacturers other than Apple and Samsung sell alternative products.  The Court (and Samsung) were right with respect to the instruction already given and there is no compelling reason to depart.

**PROPOSED FINAL JURY INSTRUCTION NO. 43 (Apple)**
**PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.  The patentee might also seek a royalty that is not calculated as a percentage of the net sales for the whole product, such as a royalty to be paid per unit sold.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining a reasonable royalty, you may consider the following factors:

  (1)   The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

  (2)   The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

Source:

Adapted from 11-CV-01846 Final Instruction No. 41 (Dkt. No. 1903 at 55-56).

Samsung's Objections:

Apple proposes a change to the instruction that the Court gave in 11-cv-01846 by adding the following new sentence at the end of the third paragraph: "The patentee might also seek a royalty that is not calculated as a percentage of the net sales for the whole product, such as a royalty to be paid per unit sold."   Notably, Apple previously agreed to this instruction *without the new sentence* for the purposes of damages retrial in 11-cv-01846. *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846, Dkt. No. 1903 at 55-56 (N.D. Cal. Aug. 21, 2012) (Final Instruction No. 41).  There is no reason for the Court to modify the instruction now.   At the *Daubert* hearing, the Court informed the parties that, absent a change in law or something else that justifies a change, the Court would adopt the jury instructions from the first trial.  *See* January 23, 2014 Hearing at 5:10-14 ("Now, I'm planning to adopt the preliminary and final jury instructions from the first trial unless you can point to either a change in the law or something else that justifies a change, but there's going to be a heavy presumption that what was previously given will be given this time.").  Apple's proposed addition also departs from the Model Patent Jury Instructions from the Northern District of California.  N.D. Cal. Model Patent Jury Instr. B.5.6.  Moreover, Apple's proposed addition would cause jury confusion by using a financial phrase – "net sales" – nowhere mentioned or defined elsewhere in the instruction.  Apple's addition is intended only to benefit itself and should be rejected.

## PROPOSED FINAL JURY INSTRUCTION NO. 43 (Samsung)
## PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining a reasonable royalty, you may consider the following factors:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 41 (Dkt. No. 1903 at 55).

**Apple's Objections:**

The sole difference between Apple and Samsung's instruction is the following sentence, which appears at the end of the third full paragraph of Apple's instruction: "The patentee might also seek a royalty that is not calculated as a percentage of the net sales for the whole product, such as a royalty to be paid per unit sold." All of the damages experts for Apple or Samsung will testify to a royalty based on a per unit basis, not as a percent of the revenue for the accused products. No proposed royalty by any expert varies bases on any revenue amount. Given this circumstance and the lack of any evidence of a revenue based royalty or a percentage based royalty, the Court should modify the Northern District model to conform to the evidence that will be presented.

1

2

### PROPOSED FINAL JURY INSTRUCTION NO. 44 (Apple)
### PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS

3

4

5

6

7

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents Samsung infringed. You may not award Apple damages for infringing a patent before Samsung had notice of Apple's claim of infringement of that patent. Samsung received notice of Apple's claim of infringement for the '647 patent on August 2010.  Samsung had notice of Apple's claim of infringement for all the other asserted patents on February 8, 2012.

8

9

10

With respect to Samsung's '239 and '449 patents, damages that Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.  You may not award Samsung damages for infringing a patent before Apple had notice of Samsung's claim of infringement of that patent.  Apple received notice of Samsung's claim of infringement for the asserted patents on April 18, 2012.

11

Source:

12

13

Adapted from 1846 Damages Retrial 11-CV-01846 Final Instruction No. 28 (Dkt. No. 2783 at 36) and 1846 Original 11-CV-01846 Final Instruction No. 42 (Dkt. No. 1903 at 29-30, 57).

14

Samsung's Objections:

15

16

17

18

19

20

21

22

23

24

25

26

27

Apple's proposed instruction is adapted from the damages retrial in the 11-cv-1846 case.  Use of that instruction is inappropriate here because it was given only after the Court's ruling in 11-cv-1846 establishing certain notice dates as a matter of law.  *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846, Dkt. No. 2271 (N.D. Cal. March 1, 2013).  No such ruling exists in this case and actual notice under 35 U.S.C. § 287 must be proven by the parties at trial.  Additionally, this instruction misstates the law because it implies that lost profits can be awarded even if the patentee does not provide actual notice of the products that purportedly infringe. Dkt. No. 2271 at 18:12-14 (emphasis added).  As the Court recognized in its jury instructions in the first 11-cv-1846 trial, actual notice requires a determination of "the date each Samsung entity received actual written notice of the patents *and specific products* alleged to infringe." *Apple, Inc. v. Samsung Elecs., Co.,* 11-cv-1846,  Dkt. No. 1903 at 57, 75 (N.D. Cal. Aug. 21, 2012) (emphasis added); *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d. 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.").  Indeed, Apple agreed with this "product specific" language for the first trial. Dkt. No. 1232 at 155.  Such language is also included in the corresponding N.D.Cal. Model Patent Instruction.  *See* N.D.Cal. Model Instruction 5.8 Date of Commencement – Products ("[Y]ou must determine the date that [alleged infringer] received actual written notice of the [ ] patent and the specific product alleged to infring;]").  Although there was a subsequent dispute in 11-cv-1846 about whether Samsung had waived a "product-specific" notice argument for the retrial, no such dispute exists here and the law is uncontested.  The Court should thus adopt Samsung's proposed instruction, which hues to the Court's instruction from the first trial and the model instruction.

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 44 (Samsung)_
PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

2

3
4

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents it infringed.

5
6

You must determine the date that each Samsung entity received actual written notice of the patents and the specific products alleged to infringe.

7
8
9

It is undisputed that Apple informed Samsung Electronics Company of the '647 patent on August 4. 2010, and that Apple's lawsuit informed each Samsung entity of all of Apple's asserted patents on February 8, 2012. It is up to you, based on the evidence, to decide when Apple informed each Samsung entity of each specific product alleged to infringe each of the asserted Apple patents.

10

Damages Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.

11
12

You must determine the date that Apple received actual written notice of the patents and the specific products alleged to infringe.

13
14

It is undisputed that Samsung's lawsuit informed Apple of all of Samsung's asserted patents on April 18, 2012. It is up to you, based on the evidence, to decide when Samsung informed Apple of each specific product alleged to infringe each of the asserted Samsung patents.

15

16

**Source:**

17
18
19

Adapted from Case No. 11-CV-01846 Final Instruction No. 42 (Dkt. No. 1903 at 57); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010); *SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

20

21

**Apple's Objections:**

22
23
24
25
26
27

The present instruction concerns the notice requirement under 35 U.S.C. § 287. There is no factual issue in dispute based on law already established by the Court's prior rulings, the parties' sworn statements and the pleadings in the case. The Court has already ruled that the filing of a complaint gives a party notice of a claim of infringement for any patent included in the complaint and twice provided a jury instruction that states the same. (*See* 1846 Dkt. Nos. 2271 at 18:4-11; 1903 at 57:6-8.) Samsung agrees in its proposed instruction that it received notice of Apple's claim of infringement for all five patents no later than February 8, 2012, when the complaint was filed in this action. Samsung's effort to extend the date for notice based on an alleged need to identify each new product was already rejected by the Court before the 1846 damages retrial. (1846 Dkt. 2690 at 6-7).

28

Samsung's own proposed instruction admits that "It is undisputed that Apple informed Samsung Electronics Company of the '647 patent on August 4. 2010."   This admission is based on the same August 4, 2010 presentation that was the basis for notice for the '381 patent in the 1846 case.  (*See* PX132 at 15 ("Apple's Patents Infringed by Android Applications Layer . . . U.S. 5,946,647 – Data Detectors"); *cf.* PX52.14 from 1846 case).   The Court already found as a matter of law that this August 4, 2010 presentation sufficed to give notice of Apple's '381 Patent under identical circumstances.  (1846 Dkt. No. 2271 at 18:12-19:14.)  Samsung offers no reason to distinguish the Court's ruling in 1846 with respect to the next page of the identical document, which gives Samsung notice of its infringement of the '647 Patent.

Thus, there is no factual issue for the jury to decide and no need for the jury to receive anything other than a statement by the Court of the date on which damages for each patent can start. Apple's instruction eases the burden on the Court and eases the burden on the jury.

Even if the Court's concludes that a factual issue exists, Samsung's instruction is wrong and inconsistent with the Court's conclusions on the same issue in the damages retrial.  (1846 Dkt. No. 2690 at 6:14-7:16).  Nor is it consistent with Federal Circuit law on the issue: "If a patentee's initial notice is sufficiently specific to accuse one product of infringement, 'ensuing discovery of other models and related products may bring those products within the scope of the notice.'" *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012) (quoting *Funai,* 616 F.3d at 1373).  Samsung's instruction wrongly instructs the jury that notice for each new product is required even after a complaint is filed.  Thus, if any instruction should be given, it should mirror Final Jury Instruction No. 42 from the 1846 case with the patent numbers and complaint dates from this action inserted, *i.e.*, "While you may identify an earlier date by which each Samsung entity had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '414, '959, '647, '721 and '172 patents no later than February 8, 2012." (1846 Dkt. No. 1903 at 57:6-10).

1

**INDUCEMENT, CONTRIBUTORY, AND WILLFULNESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 45 (Apple)**
**PATENTS—INDUCING PATENT INFRINGEMENT**

2

3
Apple claims that Samsung Electronics Company actively induced its subsidiaries in the United

4
States, Samsung Telecommunications America and Samsung Electronics America, to infringe
Apple's patents.

5
In order for there to be inducement of infringement by Samsung Electronics Company, someone

6
else must directly infringe the asserted patent; if there is no direct infringement by anyone, there
can be no induced infringement.  In order to be liable for inducement of infringement, the alleged

7
infringer must:

8
      1.     have intentionally taken action that actually induced direct infringement by
            another;

9

10
      2.     have been aware of the asserted patent; and

11
      3.     have known that the acts it was causing would be infringing.

12
The "knowledge" and "awareness" requirements for inducement can be satisfied by showing that
a party was willfully blind.  If Samsung Electronics Company did not know of the existence of

13
the patent in question or that the acts it was inducing were infringing, it can be liable for
inducement only if it actually believed that it was highly probable its actions would encourage

14
infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough

15
that Samsung Electronics Company was merely indifferent to the possibility that it might
encourage infringement of a patent.  Nor is it enough that Samsung Electronics Company took a

16
risk that was substantial and unjustified.

17
If you find that Samsung Electronics Company was aware of an asserted patent, but believed that
the acts it encouraged did not infringe that patent, or that the patent was invalid, Samsung

18
Electronics Company cannot be liable for inducement.

19

20
Source:

21
Adapted from 11-CV-01846 Final Instruction No. 58 (Dkt. No. 1903 at 77).

22
**Samsung's Objections:**

23

24
Samsung objects to the first sentence of the third paragraph of Apple's proposed inducement
instruction as it is unnecessary and potentially confusing.  While the remainder of the paragraph

25
tracks Northern District of California Model Patent Jury Instruction 3.9, the first sentence of
Apple's instruction is not in the model instruction, and there is no basis for differing from the

26
model here. The remainder of the third paragraph of the instruction lays out the standard for what
it means to be "willfully blind." *See, e.g., Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361,

27
1369 (Fed. Cir. 2013). The first sentence is sufficiently vague as to invite the jury to decide what

28

1  they think it means to be willfully blind and to apply a standard other than what is explained in
2  the remainder of the paragraph.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 45 (Samsung)**
**INDUCING PATENT INFRINGEMENT**

Apple claims that Samsung Electronics Company actively induced its subsidiaries, Samsung Telecommunications America and Samsung Electronics America, to infringe Apple's patents.

In order for there to be inducement of infringement by Samsung Electronics Company someone else must directly infringe the asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.   In order to be liable for inducement of infringement, the alleged infringer must:

       1.    have intentionally taken action that actually induced direct infringement by another;

       2.    have been aware of the asserted patent; and

       3.    have known that the acts it was causing would be infringing.

If Samsung Electronics Company did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that Samsung Electronics Company was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that Samsung Electronics Company took a risk that was substantial and unjustified.

If you find that Samsung Electronics Company was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, Samsung Electronics Company cannot be liable for inducement.

**Source:**
Adapted from Case No. 11-CV-01846 Final Instruction No. 58 (Dkt. No. 1903 at 47); 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.,* 131 S.Ct. 2060 (2011); *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (*en banc*) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005)); *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683 (Fed. Cir. 2008); *Commil USA, LLC v. Cisco Sys., Inc.,* 720 F.3d 1361, 1369 (Fed. Cir. 2013).

**Apple's Objections:**

There is no "compelling reason" to depart from the Court's prior instruction regarding inducement.  Samsung's proposed instruction differs from the prior instruction in three significant ways.

*First*, Samsung incorrectly deletes the Court's instruction regarding the willful blindness standard articulated in *Global-Tech Appliances, Inc. et. al. v. SEB S.A.,* 131 S.Ct. 2060, 2067 (2011).  (*See* Samsung's deletion of first sentence of the third paragraph that "[t]he 'knowledge' and

1    'awareness' requirements for inducement can be satisfied by showing that a party was willfully
2    blind.").

3    ***Second***, Samsung's instruction is incorrect and unsupported by the cases cited by Samsung.
     While Samsung seeks an instruction that "[a]nother person may directly infringe an apparatus
4    claim by putting the apparatus as a whole into service . . . [without the] need to physically control
     each element," the cases cited by Samsung expressly state the opposite.  *See, e.g.*, *Centillion Data*
5    *Sys., LLC v. Qwest Commc'n Int'l Inc.*, 631 F.3d 1279, 1283-86 (Fed. Cir. 2011) ("We hold that
     to 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*,
6    control the system as a whole and obtain benefit from it.").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 46 (Apple)**
**CONTRIBUTORY PATENT INFRINGEMENT**

Apple also argues that each of Samsung Electronics Company Ltd., Samsung Telecommunications America and/or Samsung Electronics America has contributed to infringement  by another (either another Samsung entity or another company).  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by one of the Samsung entities, another Samsung entity or another company must directly infringe the asserted claims of the '414, '647, '959, and '721 patents.  If there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '414, '647, '959, or '721 patents, then contributory infringement exists if:

  1.   A Samsung entity supplied an important component of the infringing part of the product;

  2.   The component is not a common component suitable for non-infringing use; and

  3.   A Samsung entity supplied the component with the knowledge of the patent and knowledge that the component was especially made or adopted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Source:

Adapted from N.D. Cal. Model Jury Instr. B.3.8.

**PROPOSED FINAL JURY INSTRUCTION NO. 46 (Samsung)**
**CONTRIBUTORY PATENT INFRINGEMENT**

Apple also contends that Samsung has contributed to infringement by another.  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by Samsung, someone other than Samsung must directly infringe the asserted claims of Apple's '414, '647, '959, and '721 patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find that someone has directly infringed an asserted claim of Apple's '647, '959, '414 or '721 patents, then contributory infringement exists if:

    (1)    The accused infringer supplied an important component of the infringing part of the product;

    (2)    The component is not a common component suitable for non-infringing use; and

    (3)    The accused infringer supplied the component with the knowledge of the infringed patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**Source:**

Adapted from Northern District of California Model Patent Jury Instructions, §B3.8; 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et. al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**Apple's Objections:**

Apple objects to Samsung's proposed instruction because the proposed instruction fails to address the fact that each of the Samsung entities should be treated as independent actors for purposes of showing contributory infringement.  Samsung's instruction implies wrongly that the jury must identify an infringing party other than one of the Samsung parties to which the other Samsung parties contributed.  Samsung's parent entity should be able to avoid a jury verdict by implying that Apple must show that AT&T, not STA or SEA, infringed.  The potential for confusion from this omission is far more likely to affect the jury's deliberations than any potential uncertainty from including the definition of "common component" at the end of the instruction.  Apple further incorporates its objections to Samsung's proposed instruction regarding inducement.

**PROPOSED FINAL JURY INSTRUCTION NO. 47 (Apple)**
**WILLFUL PATENT INFRINGEMENT**

In this case, Apple and Samsung argue that the other side willfully infringed its patents.

To prove willful infringement, each side must first persuade you that the other side infringed a valid and enforceable claim of one or more of its patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, each side must persuade you by clear and convincing evidence that the other side acted with reckless disregard of the patent it infringed.

To demonstrate such "reckless disregard," each side must persuade you that the other side actually knew, or it was so obvious that the other side should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent.

Source:

Adapted from 11-CV-01846 Final Instruction No. 59 (Dkt. No. 1903 at 78).

**Samsung's Objections:**

In Samsung's prior objections to Apple's proposed preliminary and final jury instructions, Samsung objected to Apple's omission of Samsung's allegation that Apple's infringement was willful.  In the present filing, Apple has included Samsung's allegation that Apple's infringement was willful in order "to conform to the Court's tentative preliminary jury instructions."  Apple's Objection to Samsung's Proposed Final Jury Instruction No. 47.  However, Apple maintained its objection to this inclusion.  *Id.*

As previously stated in Samsung's objections to Apple's proposed preliminary and final jury instructions, Samsung's allegations of willful infringement are proper and therefore Samsung maintains that any exclusion of this allegation would be improper.

## PROPOSED FINAL JURY INSTRUCTION NO. 47 (Samsung)
## WILLFUL PATENT INFRINGEMENT

In this case, Apple and Samsung both argue that the other side willfully infringed its patents.

To prove willful infringement, each party must first persuade you that the other side infringed a valid and enforceable claim of one or more of its patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, the patent holder must persuade you by clear and convincing evidence that the other side acted with reckless disregard of the patent it infringed.

To demonstrate such "reckless disregard," the patent holder must persuade you that the other side actually knew, or it was so obvious that the other side should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent.

**Source:**

Case No. 11-CV-01846 Final Instruction No. 59 (Dkt. No. 1903 at 78).

**Apple's Objections:**

As previously stated in its objections to Samsung's proposed preliminary and final jury instructions, Apple objects to the inclusion of any reference in the jury instructions that its alleged infringement of Samsung's patents was willful.  Apple has included such language in this filing, however, to conform to the Court's tentative preliminary jury instructions.