1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   William C. Price (Bar. No. 108542)
10 williamprice@quinnemanuel.com
   Michael L. Fazio (Bar No. 228601)
11 michaelfazio@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
12 Los Angeles, California 90017
   Telephone: (213) 443-3000
13 Facsimile: (213) 443-3100

14 Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA,
   INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC
15

16                       UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 | APPLE INC., a California corporation, | CASE NO. 12-cv-00630-LHK (PSG)
19 |         Plaintiff,                    |
20 |   vs.                                 | **SAMSUNG'S OBJECTIONS TO APPLE'S SLIDES AND EXHIBITS FOR OPENING STATEMENT AND SAMSUNG'S RESPONSES TO APPLE'S OBJECTIONS TO SAMSUNG'S SLIDES AND EXHIBITS FOR OPENING STATEMENT**
21 | SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG
22 | ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG
23 | TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,
24 |         Defendants.

I.  **OBJECTIONS TO APPLE'S OPENING SLIDES, VIDEOS AND EXHIBITS.**

**A. Images of Steve Jobs in Slide 2, 6, 17 and Reference to Him in Slide 5 Should Be Excluded.** Mr. Jobs' image is irrelevant to any issue, prejudicial, and its use is contrary to prior rulings in the '1846 case. *See* 5:11-cv-01846, Dkt. 1267 at 4:1-3. Such images are excludable.

**B. Slides 2-6 (PX118, PX133, PX134, PX135) Do Not Relate to the Patented Features and Are Irrelevant.** These slides quote from press articles that Apple previously claimed were relevant to establish that its trade dress was famous. The articles do not relate to the patented features, and thus are irrelevant. Any probative value is outweighed by the risk of misleading the jury into basing a validity determination or damages award on the merits of the iPhone, rather than the specific inventions at issue. Further, Slides 2, 5 and 6 violate the Court ruling on Samsung's MIL No. 1 in the 1846 case by trading on Steve Jobs's reputation, without any connection to the patents-in-suit. *See* 1846 Dkt. 1267 at 4 ("Evidence related to Steve Jobs will generally be excluded unless it is specifically relevant to the IP rights at issue . . ."). Mr. Jobs is not an inventor of any patent-in-suit. Thus, the fact that the PTO "Highlight[ed] Jobs's Innovations" is irrelevant. *See* Slide 5; PX134. Finally, Slides 2, 6 and PX118, include inadmissible hearsay statements by Mr. Jobs.

**C. The Title of Slides 9-15 Contains a Legal Instruction,** "How to Read a Patent." The title implies that the attorney opening is a correct statement of law.

**D. Slide 43 Contains Improper Legal Argument.** The Court has already held that the parties may not argue the law before the Court instructs the jury. *See* 1846 Dkt. 2696 at 5. Apple intends to mislead and confuse the jury by likening the reasonable royalty determination to irrelevant and legally distinct forms of payment.

**E. Slides 45-47 Contain Misleading and Inflammatory Statements Cherry Picked from Unidentified Documents and Presented Without Context.** For example, phrases like "Let's make something like the iPhone" are irrelevant to hypothetical negotiation. Apple imputes this statement to Samsung even though PX149 clearly states that this statement was paraphrasing comments from *carriers'* employees. Similarly, the phrase "Same as iPhone, clarify the unlocking standard by sliding," relates to a glass unlock design that Apple has never claimed is

1  covered by the '721 patent—and the '721 patent does not claim "sliding" generally. Slide 46 is
2  cumulative of Slide 45 but for one *additional* misleading quote, addressing non-accused functions
3  of a non-accused, non-Android phone.   Slide 47 contains argumentative statements (*e.g.*,
4  "Samsung refuses to stop copying") misleadingly presented as if quoted from historical documents.
5  Even if the underlying documents themselves could be admissible for some limited purpose, the
6  use of misleading snippets from these documents in the hypothetical negotiation context violated
7  FRE 403.

8  **F.   Samsung Objects to References to the August 4, 2010 "Notice" Meeting on Slides 50
9  and 51 as Confusing, Prejudicial and Contrary to Apple's Previous Disclosures.**   Samsung
10 objects to Apple's incorrect and misleading characterization of the '647 patent as "quick links" on
11 Slide 51.   Samsung also objects to this "quick links" designation used in these slides**.**    The
12 patent   never uses the word "quick" or "quick links," nor does it ever refer to the time for creating
13 a "link."   Finally, Samsung objects to the use of the term "notice" in these slides because Apple's
14 argument that the August 2010 presentation gave Samsung notice as a matter of patent law is
15 incorrect, as the presentation did not reference the accused products in this case.   Under
16 controlling law, "[a]ctual notice requires the affirmative communication of a *specific charge* of
17 infringement by a *specific accused product* or device." *Amsted Indus. Inc. v. Buckeye Steel*
18 *Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (emphasis added); *see also Coca–Cola Co. v.*
19 *Pepsico, Inc.*, 2004 WL 4910334 at *30 (N.D. Ga. Sep. 29, 2004) ("[T]he requirement of notice of
20 infringement directed towards a 'specific accused product or device'. . . pays due regard to the
21 rights of accused infringers to have a sufficiently clear understanding of *what 'specific product'*
22 *(as opposed to a 'family' or 'class' of products)* is alleged to be infringing . . .") (emphasis added).

23 **G. Slide 57 Is Irrelevant and Misleading.**   Samsung is accusing the Photos application - and
24 not Spotlight - of infringing the '449 patent.   Samsung's Infringement Contentions, Dkt. 660-3 at
25 5-14.   Thus, Spotlight is simply irrelevant.   Apple should not be permitted to identify an
26 unaccused feature in order to imply that the Apple devices as a whole do not infringe.   Rather,
27 infringement should be determined by comparing the asserted claims to the accused features.   *See*
28 *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002).   Samsung also

1  objects to the label "Search Feature," which is not the name of the feature, and which only affirms
2  the misleading and argumentative nature of Apple's slide.

3  **H.    Slide 60 Is Argumentative and Misleading.**   The diagram is incomplete, as
4  arrows representing inputs and outputs of the block have been both cropped and erased from the
5  original image.  *See*  APL630DEF-WH0001749928 (Fazio Dec. Ex. D). This hides the fact that
6  the displayed components are part of a single block.   Similarly, the use of highlighting for the H-
7  264 Encoder in particular hides the fact that it is part of the same block (identified by the off-white
8  shading).   Finally, superimposing thick, neon-highlighted borders and adding names to
9  components that are already identified in the document as JPEG and H.264 encoders further
10 enhances the incorrect illusion that these are separate components.

11 **I.    Slide 64 Is Objectionable as Irrelevant, Misleading and Confusing to the
12 Jury.  FRE 402, 403.**   This diagram, along with Apple's extra annotations, include multiple
13 limitations not at issue in claim 15.  Claim 15 only requires "a computer."  It does not require "a
14 video camera" or "remote unit," and certainly does not involve a "host unit," "playback unit," or
15 "monitor."  These are terms from claim 1, which Samsung dropped in an effort to further narrow
16 the case.  Apple should not be able to reintroduce these irrelevant elements and thereby confuse
17 and mislead the jury.  The jury might also be mislead into believing that this is the only
18 configuration—which is incorrect. (*See, e.g.*, '239 patent, col. 12:34-36 ("Alternatively, in a basic
19 embodiment, host unit **3** and playback unit **4** could be integrated into a single host/playback
20 unit."))  Additionally, Apple's labels may mislead and confuse the jury into thinking they are part
21 of figure 1 of the '239 patent.

22 **J**.  **Samsung objects to PX106 as misleading, irrelevant, prejudicial and hearsay.** PX106
23 purports to be an article written in 1998 by three named inventors of the '647 patent.   It is not.
24 Instead, it was created around 2010 and contains: (1) additional content suggesting recent Apple
25 products use the system described in the paper; and (2) substantial modifications to the original
26 figures and text, including the portions Apple relies on.

27 **K.  PX113, PX127, PX135, PX144 Violate the Court's Ruling on Samsung's MIL No. 2,
28 Dkt. 1398.**    By implying that Apple practices the '172 patent, these exhibits violate the Court's

1  ruling on MIL 2.  *See* PX113.1 (noting iPhone's "software that corrects typing errors on the

2  fly."); PX127.3 ("software offers to complete words for you"); PX135.2 (iPhone "considers

3  adjacent keys – and corrects your typos automatically."); *see also* PX144 ("summary" of these and

4  other press articles emphasizing comments about iPhone's auto-correct functionality).  The

5  remainder of these exhibits relate to generic and unpatented features, and are therefore irrelevant.

6      **L.  PX115, PX145, PX150, PX155 Are Irrelevant to Damages.**  Nothing in these

7  documents relate to the accused functionality or the accused products and thus they are irrelevant

8  to damages.  The jury should not be misled into awarding damages based on the value of

9  unpatented features.  Furthermore, Apple should not be permitted to base its copying allegations

10 on documents such as PX150, which does not mention any patented feature.

11     **M. PX137, PX165.**  Both PX137 and PX165 are highly prejudicial because they place

12 directly at issue the Court's preliminary injunction order concerning the '604 patent, which Apple

13 no longer asserts, and because Apple seeks to bar Samsung from telling the full story of the

14 preliminary injunction, including the Federal Circuit's reversal.  Apple has elsewhere objected to

15 Samsung's Slide 4, which fairly mentions both rulings from this Court and the Court of Appeals.

16 It would be highly prejudicial to tell the jury that this Court entered an injunction without also

17 telling them the Court of Appeals reversed it.  It would also be highly prejudicial for Apple to tell

18 the jury that Samsung "removed" the universal search feature and then "restored" it because

19 consumers allegedly complained, when in fact Samsung has always contended it did not infringe

20 any of Apple's patents-in-suit and always wanted to include the feature, but complied with this

21 Court's contrary order for the limited time that order was in effect.  The restoration had nothing to

22 do with the complaints and everything to do with the Federal Circuit's ruling.  In addition, PX137

23 is hearsay.  Both documents are highly prejudicial because their references to "universal search"

24 and legal proceedings would confuse the jury into thinking that the Court had previously

25 determined that Samsung infringed the '959 patent, when it did not.   PX165 at 7 (reporting

26 users' "belief that the universal search had been removed due to ongoing litigation between

27 Samsung and Apple"); PX137 at 2 (claiming "Local Search … was removed from the Galaxy S III

28 in response to Apple's lawsuits" and stating Samsung had now "snuck local search back into"

1  devices).   The satellite litigation these documents would spawn would waste substantial trial time
2  by forcing the parties to explain the differences between the '604 and '959 patents, and the fact
3  that this Court's preliminary injunction order was overruled by the Federal Circuit.   *See* 1846 Dkt.
4  1267 at 4 ("admitting these rulings into evidence would likely confuse the issues and waste time
5  because it would likely devolve into a litigation within a litigation where the parties present
6  evidence regarding what evidence was before which tribunal")

**N. Apple's Slides and Exhibits Suggesting Copying of Apple's Hardware Should Be Excluded.**

   **1.   Slides 26, 27, 29-33.**   All of the Apple patents-in-suit relate to *software*.   Yet Apple apparently intends to suggest that Samsung copied Apple's *hardware*, using the same "before and after" alleged "timeline" it used in the 1846 case to support its *design patent and trade dress* claims.   The outward appearance of Samsung's products is irrelevant to Apple's asserted patents; any allegation that Samsung copied Apple's hardware design is vastly outweighed by unfair prejudice.   *See* FRE 402, 403; *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (Evidence of copying a feature is "legally irrelevant unless the [] feature is shown to be an embodiment of the claims"); *see also Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, No. 03-927-GMS, 2005 WL 1331216, at *2 (D. Del. June 6, 2005) (excluding evidence of copying where patentee admitted that its product was not an embodiment of the asserted claim); *Asyst Techs. v. Empak, Inc.*, No. 98-2045-JF, 2007 WL 120845, at *2 (N.D. Cal. Jan. 11, 2007) (excluding evidence of copying under FRE 403).   Moreover, a nexus must exist between any alleged copying and the novel aspects of the claimed invention.   *See W.M. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012) ("a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis."). These slides confirm that Apple intends to drag the 1846 trial into this case even though this case concerns completely different patents and type of intellectual property.   Indeed, Apple stated in the Joint Pretrial Statment its intent to inform the jury about the verdict in the prior action.   *See* Dkt. 1455 at 20.

1  Apple's attempt are improper for several reasons including relevance, prejudice, and the fact that
2  the jury's willfulness determination was reversed by this Court.
3         In addition, the Court should exclude these slides based on untimely disclosure, for two
4  reasons.   First, none of Apple's interrogatory responses or expert reports disclosed the theory that
5  Samsung's alleged copying of the iPhone's hardware design is somehow relevant to the asserted
6  patents.   Second, Apple failed to identify any of the Samsung phones depicted in Slides 26, 27, 31,
7  32—not in its exhibit list, not in its interrogatory responses, and not in any expert report.
8         Finally, Slides 29, 30 and 33 are misleading in that Apple does not present the products to
9  scale and presents the accused products in a "timeline" without any release date information.
10 Apple no doubt intends to tell the jury that Samsung's designers copied the iPhone as a direct
11 response to the "crisis of design" email, *see infra* Slide 28, the same argument it made in the last
12 trial.   Apple should not be allowed to obscure the glaring hole in this theory—the first accused
13 product was released *a year-and-a-half* after that email was written, and many accused products
14 post-date the "crisis of design" by well over two years.   Moreover, the side-by side comparisons
15 of the iPhone with Samsung products is misleading because iPhone does not practice the majority
16 of claims asserted in this case.
17        **2.     Slide 28 (PX149).**   Apple's "crisis of design" theme is irrelevant because no
18 design IP is at issue in this case.   PX149 is addressed to UX designers, none of whom were
19 responsible for developing the accused software features, and compares the iPhone to Omnia—an
20 unaccused product that ran a completely different operating system (Bada).   Nothing in PX149 is
21 probative of any issue relating to validity, damages, or willfulness.
22        **3.     PX107**, **PX117, PX146, PX151.**   These exhibits discuss functionality related to
23 the '647 patent in applications that Apple has not accused of infringing that patent (*e.g.*, Memo)—
24 and products that are not at issue in this case.   Moreover, these documents are irrelevant to
25 willfulness because they predate Apple's alleged notice date, and because Google—not
26 Samsung—developed the applications accused of infringing the '647 patent.
27
28

 4.     **PX119**, **PX120, PX121**, **PX183** contain a discussion of unlock screen designs that are not accused, without any indication that Samsung copied the iPhone.   PX183 violates the Court order on Samsung's MIL No. 2 as it suggests Apple practices the '172 patent. Dkt. 1398 at 3.

## II.     RESPONSES TO APPLE'S OBJECTIONS TO SAMSUNG'S SLIDES/EXHIBITS

**A. Slide 4:**   Apple's objections seek to bar Samsung from telling the full story of the preliminary injunction, including the Federal Circuit's reversal.   After this Court entered a preliminary injunction barring Samsung from infringing the '604 patent, Samsung quickly removed the accused local search feature from its Android devices.   The Court of Appeals stayed the injunction and later reversed this Court's ruling.   After Federal Circuit stay went into effect, Samsung upgraded some of these devices to a new version of Android, which included the accused local search feature.

Apple seeks to deceive the jury by telling it only that this Court entered an injunction.   Apple does not object to the first bullet of Slide 4, which notes this Court's ruling, but does object to the second and third bullets, which explain the sequence of events and rebut Apple's misleading arguments.   Apple's goal appears to be to raise the specter of the preliminary injunction, including the quick removal of features caused by that injunction (and discussed in PTX 137 and 165), without allowing Samsung to explain that the Court of Appeals rejected Apple's theories and reversed the injunction.   Apple may also seek to deceive the jury by alleging, without explanation, that Samsung "removed" the universal search feature and then "restored" it because consumers allegedly complained, when in fact Samsung has always contended it did not infringe any of Apple's patents-in-suit, but complied with this Court's contrary order while that order was in effect and restored the feature after the Federal Circuit's ruling; complaints had nothing to do with it.

Apple's one-sided presentation would prejudice the jury and prevent it from understanding that this injunction concerned a different patent – a patent Apple later dropped from this action; that the Court of Appeals first stayed and then reversed the injunction; and that after the stay of injunction Samsung upgraded its phones to a version that included the accused feature.   The Court should allow the jurors to learn the full story, not Apple's carefully selected and highly prejudicial version of this story.   This will still waste substantial trial time by forcing the parties

1  to explain the differences between the '604 and '959 patents, but will not be wildly prejudicial as
2  would Apple's one-sided and incomplete presentation.

3  **B. Slide 31.** The Court has ruled that the parties may not "present quotes from the *final* jury
4  instructions in opening statements." *See* 1846 Dkt. 1696 at 5 (emphasis added). The Court has
5  never prevented either party from quoting *preliminary* instructions that the Court will have already
6  given to the jury.

7  **C. Slides 32 and 34:** Apple's objection to their titles as misleading is meritless. These slides
8  excerpt trial exhibits that accurately date and describe features of the Android operating system
9  that Apple accuses of infringement: "Activities and Intents" for the '647 patent and "Background
10 sync" for the '414 patent. For instance, the trial exhibit used in slide 32, DX336, is dated July 27,
11 2006—several months before Apple released the iPhone—and refers functionality Apple accuses
12 of infringing the '647 patent. Apple further objects to Slide 34 as misleading because it refers to
13 "Background sync" as "the syncing feature," but this is exactly how Apple characterizes the '414
14 patent in its damages survey. Apple's objection to slide 32 is premature: Diane Hackborn will
15 testify that her work on the relevant technology began well before 2009.

16 **D. Slide 33.** Samsung identified Cary Clark, a third-party witness, to testify live at trial.
17 Samsung was under no obligation to designate any of his deposition testimony. "Assumes facts
18 not in evidence" is not a proper objection here given that no exhibits or testimony have been
19 admitted into evidence.

20 **E. Slides 33 and 101:** The Court previously ruled that "[b]oth parties will be permitted to
21 use deposition testimony in the opening statements." 1846 Dkt. 1456 at 2:20-21. This included
22 allowing Samsung to use deposition testimony of Richard Howarth in its opening presentations
23 despite the fact that Mr. Howarth was identified as a witness Samsung might call live at trial.

24 **F. Slide 34**. Apple's claim that referring to "the syncing feature" is disingenuous, given that
25 its own slides refer to the '414 patent as the "syncing patent," (*e.g.*, Slide 51) and Dr. Hauser's
26 survey referred to the '414 patent as "Background Syncing." Furthermore, Apple focuses on the
27 title while ignoring that the quoted portions of DX327 make clear which features are described.

28

**G. Slide 37:**  Even though Apple's opening slides include images of numerous Samsung products not accused in this case, Apple objects to Samsung's use of portions of DTX405 that reference a single product that is not accused.  Apple cannot have it both ways, claiming that reference to an unaccused product is prejudicial to Apple while engaging in the exact same practice for its opening slides.  Nothing in the Court's prior order denying Apple's request to amend its infringement contentions (Dkt. 636) alters or in any way limits Samsung's ability to use *Apple* materials concerning the same Samsung product at trial.  Indeed, Apple has repeatedly relied on "copying" evidence that relates to products that are not accused.  Further, Galaxy S 4 was not "excluded," as Apple asserts.  Rather, Judge Grewal found that Apple had not timely disclosed it as an accused product.  *See* Dkt. 636 at 32-33.

**H. Slide 39**.  Dr. Hauser himself has testified—at his deposition, and at trial in the 1846 Case—that whether respondents were aware of the patented feature before purchasing an accused product has no bearing on his survey results, and he made no attempt to test consumer awareness of the patented features.  Thus, Slide 39 is not misleading.

**I. Slide 40.**  The heading on Slide 40 is an accurate reflection of the statements in Dr. Hauser's report regarding the source of the descriptions used for his survey.

**J. Slides 45, 57**:  Apple's objections to these slides are a complaint that Samsung did not recite the entirety of claim 18 in these slides.  Neither slide purports to present every limitation of the claim, and all accurately reflect limitations of claim 18 as understood by a layperson.

**K. Slide 47-48.**  These slides clearly identify the displayed information as the results of Dr. Reibstein's test, and not Dr. Hauser's survey.  The descriptions of Apple's patents are consistent with those used in Dr. Hauser's survey.

**L. Slide 49.**  Apple has consistently argued that Dr. Hauser's surveys are evidence of the amount consumers are willing to pay for particular features in a smartphone having a certain base price.  *See, e.g.*, 1846 Dkt. 2908-4 at 5; 1846 Dkt. 2897 at 3-4.  Describing the '647 patent as an "analyzer server" patent is no more misleading than describing it as a "quick links" patent.

**M. Slide 58:**  Apple objects that Slide 58 contains a mischaracterization and incomplete recitation of claim 18.  But Slide 58 includes figures from a prior art combination and does no

1  more than allege that the combination has all the elements of asserted claim 18.  The slide does

2  not purport to illustrate all the limitations of claim 18.

3  **N.  Slides 62-67:**   Apple's objections to Slides 62-67 are meritless.  The titles of these slides

4  are accurate; they identify the Samsung Dart device as a non-infringing alternative, which is

5  consistent with Apple's allegations in this case.  As recently as February 3, 2014, the day prior to

6  the most recent case narrowing, Apple was accusing the Dart of infringing multiple other Apple

7  patents.  *Compare* Dkt. 786 *with* Dkt. 1237.  Apple never accused the Dart of infringing the '172

8  patent, and Apple's expert admitted that the Dart does not infringe the '172 patent.  Sept. 26,

9  2013 Cockburn Dep. at 136:11-14 ("Q. And you agree that the Dart alternative does not infringe

10 claim 18 of the '172 patent, correct? A. Yes") (Fazio Dec. Ex. A.)

11 **O.  Slide 73:**   Apple complains that the heading "Dr. Hauser's Example: 'birfday'" is

12 misleading.  The slide presents the precise example in Dr. Hauser's survey (the mistyped word

13 "birfday") (PTX-140 at 46) on an iOS device.  On such a device, the suggested word is not

14 "birthday," but rather "bird day".  The slide accurately reflects both Dr. Hauser's example and

15 Apple's product.  The slide is not misleading.

16 **P.  Slide 96.**   Apple's own experts have admitted that Samsung played no role whatsoever in

17 designing the software for Galaxy Nexus, *see* Dkt. 1283-3 at 15, and the same is true for the

18 unlock screen of the Admire.   As the testimony of multiple Google witnesses will show, Slide 96

19 is not misleading—on the contrary, it would be misleading to use any description other than

20 "Google designs." In an effort to resolve this objection, Samsung has revised the wording to

21 "Accused Unlock Screens Designed by Google."

22 **Q.  Slides 103 and 110:** Apple "preserves its prior objections" to Samsung's opening slides

23 103 and 110 concerning the WAIS prior art.  As Apple apparently recognizes, its objections to

24 demonstrations of WAIS have already been repeatedly overruled by the Court.  *See* Dkt. 1150 at

25 29; Dkt. 1325 at 3; and Dkt. 1398 at 2 ("Apple's motion in limine #4 to exclude "demonstration

26 systems" created by Samsung's experts related to alleged prior art is DENIED.").

27 **R.  Slides 117 and 119.**   These slides simply contain webpages from Apple's own site that

28 describe the functionality of Apple's products.  FaceTime and sending videos via MMS are both

02198.51981/5841541.1
-11-
SAMSUNG'S OBJECTIONS AND RESPONSES RE: SLIDES AND EXHIBITS FOR OPENING ARGUMENT

1  accused of infringing claim 15 of the '239 patent.  (Dkt. 660-6, Samsung's Third Amended

2  Infringement Contentions, at 28-33, 36-37.)  These slides identify functionalities of the accused

3  products and indicate that Samsung alleges they infringe the '239 patent.

4      **S.  Slide 121 and 122.**   Samsung will revise the description of the patent to read "Image

5  Classification Patent," which conforms to the words used in the patent and asserted claim.  *See,*

6  *e.g.,* '449 patent, claim 25 ("wherein said recording circuit records each one of said plurality of

7  image signals with classification data, and said display lists a plurality of classifications and a

8  number of images belonging to each classification.")

9      **T.  Slide 125**.   Having withdrawn their *Daubert* motion (Dkt. 1145), Apple cannot prejudge

10 Samsung's damages theories via objection to Slide 125.   Whether Slide 125 is "misleading and

11 inaccurate" is a question for the jury.   It explains Samsung's damages as stated in DX391 (#1 (.99

12 benchmark) and #2 (70/30 value split) at 5-7, 9; #4 (relative values) at 4-9.)

13     **U.  JX28, JX29, JX32, JX33, JX35:**   The parties agreed that exhibits "may include any

14 model or build or version of an accused device" so long as that model or build or version of the

15 device was properly disclosed.  *See* 2/13/14 Londen e-mail to Thakur (Fazio Dec. Ex. B).  Apple

16 does not complain that any device in these exhibits is not one of the 10 devices Apple identified in

17 its case narrowing statement, or that any particular model or build or version of such a device was

18 not identified in a discovery response or expert report.

19     **V.  DX489.**   The Court overruled Apple's objection that DX489 is an improper compilation.

20 Dkt. 1398 at 1:28-2:5.   Apple did not identify any other objection to this exhibit.

21 DATED: March 27, 2014                QUINN EMANUEL URQUHART &

22                                                 SULLIVAN, LLP

23                                           By */s/ Victoria F. Maroulis*

24                                              Victoria F. Maroulis
                                             Michael L. Fazio

25                                              Attorneys for SAMSUNG ELECTRONICS
                                             CO., LTD., SAMSUNG ELECTRONICS

26                                              AMERICA, INC., and SAMSUNG
                                             TELECOMMUNICATIONS AMERICA, LLC

27

28