QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar. No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Cal. Bar. No. 228602)
michaelfazio@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 12-cv-00630-LHK |
| Plaintiff, | |
| vs. | **SAMSUNG'S OBJECTIONS AND RESPONSES REGARDING TESTIMONY BY AND EXHIBITS TO BE USED WITH JAMES MILLER AND THOMAS DENIAU** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

I.      SAMSUNG'S RESPONSES TO APPLE'S OBJECTIONS.

      A.      **Apple Has No Objections to Samsung's Cross Disclosures for Mr. Deniau.**

Apple has confirmed that it has no objections to Samsung's cross disclosures for Mr. Deniau.   *See* Email from Borenstein to Fazio dated April 1, 2014 (Fazio Decl., Ex. A).

      B.      **Samsung's Cross Disclosures for Mr. Miller Are Proper.**

**DX338:**   Apple's FRE 602 and 901 objections are misplaced.   DX338 is a paper authored by Eric A. Bier of the Xerox Palo Alto Research Center.   DX338 was published in the ACM Transactions on Information Systems in October 1992.   In 1992, Dr. Miller was an active ACM member, serving as a co-chair of CHI'92, the ACM Conference on Human Factors in computing.   (Fazio Decl. Ex. C, at 2.)   Dr. Miller testified that he was subscribed to periodicals including "ACM, Communications of ACM, [and] SIGCHI Bulletin."   (Fazio Decl., Ex. B (July 8, 2013 Miller Dep.) at 35:17-21.)   The fact that he received such periodicals alone renders Apple's foundation objection meritless.

Moreover, Dr. Miller testified that he recalled the author of this exhibit "as a researcher who had been at [PARC] at one time."   (*Id.* at 117:3-5.)   Dr. Miller's likely receipt of the periodical, involvement in the publishing organization, and knowledge of the author is more than sufficient foundation for an impeachment exhibit.

As to the authenticity of DX338, Samsung plans to call the paper's author, Eric Bier, who can authenticate it.   Moreover, Samsung plans to use DX338 for impeachment purposes here, meaning the authenticity stipulation is unnecessary.

**DX339:**   DX339 is a 1991 conference paper that includes an article about Embedded Buttons, which is prior art to Apple's '647 patent.   Apple objects to DX339 under FRE 402 and 403.   But it is not prejudicial to suggest Dr. Miller was aware of the Embedded Buttons prior art. According to DX339 itself, Dr. Miller was a papers subcommittee chair at the very conference at which Embedded Buttons was presented.   (DX339 at 010.)   As a papers subcommittee chair, Dr. Miller would have "review[ed] some subset of the papers presented at the conference," and would have received a copy of DX339.   (Fazio Decl., Ex. B (July 8, 2013 Miller Dep.) at 144:14-

19; 116:20-22.)   Dr. Miller was, as a point of fact, aware of Embedded Buttons.   (*Id.* at 115:20-115:24 ("I have some memory of it but not in detail.").)

Apple's 402 objection implies that Dr. Miller's knowledge of Embedded Buttons would only matter if Samsung relied on an inequitable conduct defense.   Samsung has not done so here.   Nevertheless, DX339 is plainly relevant to Dr. Miller's testimony.   According to Apple's witness list, Dr. Miller will testify to the "background, conception, and reduction to practice" of the '647 patent.   (Dkt. 1448-1 at 19.)   DX339/Embedded Buttons fall squarely within the proposed scope of Dr. Miller's testimony as part of the state of the art.   Indeed, as invalidating prior art, Embedded Buttons is plainly relevant to the background of the '647 patent.

**SDX2326:**   Apple objects that SDX2326 violates the "order excluding exhibits not on [the] exhibit list."   SDX2326, however, is not an exhibit that will be moved into evidence.   Rather, it is a demonstrative that illustrates some of the key differences between PX106 and the document that PX106 appears to be on its face—a publication called Collaborative, Programmable Intelligent Agents dated March 1998.   (Fazio Decl. Ex. D, at 1.)   The slide illustrates differences between the document Apple chose to put on its exhibit list—a substantially modified document marked with both a March 1998 date and a 2010 copyright date—and the document as it existed in 1998.   (PX 106, at 2 (showing copyright 2010).)   Accordingly, it is a proper impeachment demonstrative.

Apple also objects that SDX2326 should be excluded under Rule 403 because the comparison 1998 article is "not in evidence and [the] jury cannot compare it with PX106."   Notably, SDX2326 does precisely what Apple claims would clarify things for the jury: compare the copy published in March 1998 with the modified PX106.   Apple has not identified any discrepancies in Samsung's comparison.   If Samsung is not allowed to present SDX2326, Samsung requests the Court strike PX106 as well.   Alternatively, Samsung requests that the Court allow in SDX2326 to demonstrate to the jury the differences between the actual March 1998 article and PX106.

## II. SAMSUNG'S HIGH PRIORITY OBJECTIONS TO APPLE'S DISCLOSURES.

### A. Samsung's Objections to Mr. Deniau's Disclosures Should Be Sustained.

**PX109:** The Court should preclude Apple from using PX109 with Mr. Deniau and preclude Mr. Deniau from offering expert testimony on Apple's "practice" of the patent. PX109 is a list of Apple's "practicing" devices. Apple has identified the subject of Mr. Deniau's testimony on its witness list as follows: "Mr. Deniau may testify regarding the functionality and Apple's practice of the '647 patent." But Mr. Deniau is a fact witness, not an expert, and he testified at deposition that he has no knowledge of the '647 patent and has never seen it.[1] (Fazio Decl. Ex. E (July 12, 2013 Deniau Dep.) at 30:4-11.). Thus, under FRE 701, he should be precluded from testifying about Apple's alleged practice, which is the job of an expert. Because Mr. Deniau has not been disclosed for any other purpose, he should be precluded from testifying at all.

**PX240:** Apple has withdrawn PX240. *See* Email from Borenstein to Fazio dated April 1, 2014 (Fazio Decl., Exh. A).

### B. Samsung's Objections to Mr. Miller's Disclosures Should Be Sustained.

**PX106:** The Court should exclude PX106 under FRE 802 because it contains inadmissible hearsay. PX106 is an article purportedly authored by three inventors of the '647 patent, including Dr. James Miller. (PX 106 at 1.) The article includes a March 1998 date on its face. *Id.* It contains multiple out-of-court statements, including several added in 2008 or later. (Fazio Decl. Ex. F (Oct. 29, 2010 Miller Dep.) at 237:23-238:1.) Apple relies on certain of those statements to support the validity of the '647 patent. For instance, PX106 includes statements throughout about differences between Dr. Miller's work on the "Data Detectors" project and the state of the art, stating that prior artists Milind Pandit and Ben Shneiderman had goals that were "incongruent" with his own. PX106 at 3 (naming and citing work in text and at note [16] and [20]). These are out-of-court statements being offered by Apple for the truth of the matters

---

[1] Mr. Deniau did not provide an expert report pursuant to FRCP 26.

asserted therein concerning the prior art. Thus, PX106 should be excluded under FRE 802 as inadmissible hearsay.

The Court should also exclude PX106 under FRE 402 because it is irrelevant. Although Apple appears to equate PX106 with the '647 patent, PX106 never once mentions the '647 patent. Rather, PX106 describes Apple's Data Detectors. (PX106 at 002). Apple itself admitted in an interrogatory response that the "'data detectors' functionality is not necessarily coterminous with the asserted claims." (Dkt. 804-14 at 50.) In fact, the *only* testimony Dr. Miller has offered on PX106 is that he is "not certain" whether the paper "disclose[d] any aspect of the '647 patent." (Fazio Decl. Ex. F (Oct. 29, 2010 Miller Dep.) at 246:9-14.).

In addition to the irrelevance of Data Detectors, PX106 also describes the purported use of Data Detectors in Mac OS X 10.5. (PX 106 at 1.) But Apple never claimed that any Mac OS practices the asserted claim. In its relevant interrogatory responses, Apple only referred to iOS, stating that "[t]he Apple devices, identified with iOS version where appropriate, that practice any of the asserted Apple Patents are indicated below, along with the claims practiced of such Apple...." (Dkt. 804-14 at 44).

**Witness Objection Regarding Scope of the Alleged Invention:** Apple stated in its witness list disclosure that Dr. Miller "may testify regarding the '647 patent, including its background, conception, and reduction to practice." Given this disclosure, Samsung objects to the extent Dr. Miller attempts to testify beyond its scope, including testimony regarding the alleged '647 invention or Apple's alleged practice of the patent.

Importantly, Dr. Miller lacked any knowledge of these topics at deposition. Mr. Miller repeatedly testified "I don't know what the invention is so I can't say anything about it," and that he could not talk about "when [he] first conceived of the invention that is embodied in the '647 patent" because "I don't know what the invention is." (Fazio Decl. Ex. B (July 8, 2013 Miller Dep.) at 130:5-19; 131:9-14). Additionally, Dr. Miller testified that he had no opinion about the meaning of the terms in the claims or specification. (*Id.* at 28:23-29:10.) Dr. Miller's testimony was unequivocal: he testified that he had no opinion on the meaning of the terms "analyzer server," "linked actions," "action processor," "structure," or "action"—key terms from the patent—

1  and flatly answered "No" when asked if he had "any opinion on the meaning of any of the terms in
2  the claims which appear starting in Column 7, second to the last page of [the] patent" or "any of
3  the disclosures in the body of the patent."   (*Id.* at 132:4-20; Fazio Decl. Ex. G (Dec. 13, 2011
4  Miller Dep.) at 52:20-53:11.)   Rather, he claimed that he had "been hired as a consultant for our
5  work on Apple Data Detectors" only and, when asked if his testimony included the '647 patent, he
6  stated he was "not in a position to evaluate the patent in any way."   (Fazio Decl. Ex. B (July 8,
7  2013 Miller Dep.) at 130:21-131:14; 132:18-20).   Dr. Miller should not be allowed to offer
8  opinions now on topics that he claimed he knew nothing about at deposition.   Thus, Samsung
9  objects to the extent Dr. Miller tries to testify about the scope of patent claims or any embodiment,
10 given his unwillingness to do so at deposition.

**III.     APPLE'S CONFIDENTIALITY DESIGNATIONS AS TO MESSRS. MILLER AND DENIAU.**

The parties have conferred and resolved any issues regarding Apple's confidentiality designations for these two Apple witnesses.

DATED: April 2, 2014                    QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP

                                        By */s/ Victoria F. Maroulis*
                                            Victoria F. Maroulis
                                            William C. Price
                                            Michael L. Fazio
                                            Attorneys for SAMSUNG ELECTRONICS
                                            CO., LTD., SAMSUNG ELECTRONICS
                                            AMERICA, INC., and SAMSUNG
                                            TELECOMMUNICATIONS AMERICA, LLC