| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552)<br>jkrevitt@gibsondunn.com<br>H. MARK LYON (CA SBN 162061)<br>mlyon@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, CA 94304-1211<br>Telephone: (650) 849-5300<br>Facsimile: (650) 849-5333 | WILLIAM F. LEE<br>william.lee@wilmerhale.com<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000 |
| HAROLD J. McELHINNY (CA SBN 66781)<br>hmcelhinny@mofo.com<br>JACK W. LONDEN (CA SBN 85776)<br>jlonden@mofo.com<br>RACHEL KREVANS (CA SBN 116421)<br>rkrevans@mofo.com<br>RUTH N. BORENSTEIN (CA SBN 133797)<br>rborenstein@mofo.com<br>ERIK J. OLSON (CA SBN 175815)<br>ejolson@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California 94105-2482<br>Telephone: (415) 268-7000<br>Facsimile: (415) 268-7522 | MARK D. SELWYN (SBN 244180)<br>mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100 |

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendants. | Case No.   12-cv-00630-LHK<br><br>**APPLE'S OBJECTIONS AND RESPONSES TO OBJECTIONS REGARDING PARTIES' OPENING SLIDES** |

## I.   APPLE'S RESPONSES TO OBJECTIONS TO APPLE'S OPENING SLIDES

Samsung rehashes and recycles old arguments that this Court has already rejected on several occasions. Samsung makes blanket objections under FRE 402 and 403 to almost every document and demonstrative related to copying or competitive analysis, despite the Court's prior rulings that such material may be relevant to determining infringement (including willfulness), validity, and damages. (*See, e.g.*, Dkt. 1411 at 21:23-23:15; *id.* at 22:19-23:2 (the relevance of such material "outweigh[s] the unfair prejudice of the evidence.").) Samsung also objects to almost every document and demonstrative relating to the invention of the Apple products and the Apple asserted patents, despite the Court's prior ruling that "Apple may present the invention story" of its patents. (Dkt. 1398 at 3:3; *see also* Dkt. 1411 at 58:22-24.) Samsung's objections should (again) be overruled.

**Slides 2, 6 & 17.**  These slides are nearly identical to slides shown to the jury in the 1846 trials. The Court overruled Samsung's objections then and should do so again now. (1846 Dkt. 2696 at 1-3 (overruling objections to slides 1, 5, and 11).) **Slides 2 & 17** include videos from the 2007 MacWorld presentation, as well as a picture of the original iPhone with the patented slide-to-unlock feature. As the Court held in overruling Samsung's objections to the identical slide in the 1846 case, the video is relevant to demand and patented features. Likewise, as the Court held in 1846, **Slide 6** relates to "the history and development story of the iPhone," which is relevant to damages and liability. (1846 Dkt. 2696 at 3.)

**Slides 3-5 & PX134.**  These slides are nearly identical to slides shown to the jury in the 1846 trials, over Samsung's objections. As the Court held, the slides show acclaim and industry praise for the iPhone, which is relevant to showing demand for the patented product. (1846 Dkt. 2696 at 2-3 (slides 2-4).) Samsung includes the same TIME cover in its opening disclosure (Samsung's slide 2). PX134 was admitted at both 1846 trials. (1846 Dkt. 1610 at 607:1-14; 2841 at 830:10-14.)

**Slides 9-15.**  Apple's title of these slides—"How to Read a Patent"— is non-argumentative. The slides walk the jury through elements of a patent, *e.g.*, abstract, column, etc.

**Slides 26, 27, 31 & 32.** The Court overruled objections to identical slides in the 1846 case, including objections to resized images. (1846 Dkt. 2696 at 4-5 (slides 23 & 26).) These slides, which depict Samsung's products before and after the iPhone, are again relevant to explaining the timeline of Apple's inventions in the market, the problems solved by at least three of the asserted patents, and the reasons Samsung has infringed, which go to validity, infringement, and damages. (*See, e.g.*, 1846 Dkt. 2721 at 2 (copying evidence relevant to both demand for patented product and demand for patented feature); *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1123 (S.D.N.Y. 1970) (fact that infringer "deliberately decided to duplicate" patented product favored higher reasonable royalty). The need to change from smartphones based on keyboards to smartphones based on touchscreens and Samsung's decision to adopt Apple's inventions to avoid problems resulting from the change are likewise relevant to Samsung's willfulness. As Samsung changed its phones, it faced the same issues that Apple had encountered and solved them by turning to the solutions that Apple had pioneered. As a result, Samsung has infringed Apple's patents. Samsung's objection that the "appearance" of its phones is irrelevant is meritless; the Court allowed these same slides in the 1846 retrial, in which neither design patent infringement nor trade dress dilution was at issue. The pictured phones do not have to be on an exhibit list to be shown in a demonstrative; witnesses such as Phil Schiller are knowledgeable about Samsung's phones and can testify to the accuracy of the depictions if needed. (1846 Dkt. 1456 at 1 (slides 5 & 6).)

**Slide 28.** In the 1846 case, the Court overruled objections to a nearly identical slide using the same "crisis of design," "Let's make something like the iPhone" document. The document is relvant to the competitive landscape, which is directly relevant to the analysis of both lost profits and reasonable royalties. As the Court held then, the slide is relevant to at least the value and demand for the patented product and the patented features and is not substantially outweighed by any prejudice to Samsung. (1846 Dkt. 2696 at 4 (slide 22).)

**Slides 29-30, 33**. Samsung makes the same objections as to appearance, scale, and lack of correlation to trial exhibits that Apple refutes above regarding Slides 26 & 31, 27 & 32. There is no reason that release dates are needed with the depiction of the accused Samsung products.

1  **Slide 34.**  Dr. Hauser, Dr. Vellturo, and Dr. Reibstein all refer to the '172 patent as
2  "Autocorrect" and the '647 patent as "Quick Links." (*See, e.g.*, DX454 at 6).)  Apple should be
3  permitted to use the same terms that its experts (and Samsung's expert) will use in testimony.

4  **Slide 43.**  To explain royalties, Apple used a demonstrative with Ms. Davis that uses the
5  same examples—without objection.  (1846 Dkt. 2840 at -703:22-705:1 & P~~D~~X100.21.)

6  **Slides 45-46.**  Each of the quotes are taken directly from Samsung documents to be
7  introduced as exhibits at trial and reflect what Samsung would have brought to the table as part of
8  the hypothetical negotiation.  There is nothing improper about using Samsung's own words in a
9  slide.  For example, the slide accurately quotes a Samsung document (PX121) referencing an
10  iPhone unlock feature.  The source, PX121, addresses the shortfalls that Samsung identified in its
11  "glass unlock" lock screen (asserted by Samsung to be a non-infringing alternative) and
12  recommends that Samsung should change its feature to use Apple's patented slide to unlock
13  invention.  (*See* PX121 at 100.)  Samsung's copying of the patented feature is relevant.  It is not
14  related solely to an unaccused feature, but, if it was, it would still demonstrate Samsung's belief
15  in the importance of the patented function.  (*See* 1846 Dkt. 2721 at 3 (PX38).)

16  **Slide 47.**  The statements are not misleading or inflammatory.  They accurately reflect
17  facts and opinions that Apple would consider in a hypothetical negotiation.  Witness and
18  documents will reflect Apple's views at that time.  (1846 Dkt. 1456 at 1 (slides 5 & 6); *see* Jun
19  Won Lee Dep., Mar. 5, 2012 at 33:21-24 ("Apple stat[ed] that Samsung had copied Apple's
20  products."); PX-132 at 17 ("Samsung copying iPhone"); PX-133 ("the phone that has changed
21  phones forever").) .)  The slide does not misstate design-around times, rather it references
22  *Apple's* development process and investment in the iPhone (taking three years and thousands of
23  hours).  (*See* 1846 Dkt. at 739:2-14, 751:6-10 (Scott Forstall describing iPhone development from
24  2004-2007)

25  **Slide 50-51.**  Apple will remove the statement "and the '849 parent of '721 patent" from
26  the August 4, 2010 entry."  Consistent with rulings in 1846, Apple is using the August 4, 2010
27  meeting to prove notice for the '647 patent, which may be identified as the "quick links" for the
28  reasons discussed regarding Slide 34, *supra*.  (1846 Dkt. Dkt. Nos. 2271, 18:4-11.)

**Slide 57.** The slide shows that the search feature in the accused Apple products search text, not images as the '449 patent requires. The images are not misleading.

**Slide 60.** The slide annotates an image taken directly from the referenced exhibit to show that there are separate components in the SOC of the accused device.

**Slide 64.** The slide is directly relevant to the description of the invention, how it operates, and to claim 15 itself. The slide reproduces Figure 1 of the '239 patent, which is the only figure in the patent that shows an embodiment and is described as depicting "the present invention." ('239 patent at 3:66-67, 4:6-8.) Moreover, claim 15 is directed to a "computer" that transmits "captured video," and the remote unit shown in Figure 1 is the only computer in the specification that transmits video. (*Id*. at 4:17-27.) Accordingly, the slide is relevant and not misleading.

**PTX-106.** This exhibit is an article published by the inventors of the '647 patent, relating to the technology of the '647 patent. Samsung copied a screenshot from PTX106 into a Samsung internal design presentation. (*Compare* PTX-106.3, *with* PTX-107.52.) Dr. Miller, one of the authors of Exhibit 106, can testify to the article.

**PX107, 113, 115, 117, 118, 119, 120, 121, 127, 132, 133, 135, 137, 145, 146, 149, 150, 151, 154, 155, 156, 165, 174, 183, 196, 202, and 209.** Samsung broadly objects under FRE 402/403 to these exhibits, arguing they are irrelevant or prejudicial because they "predate notice" or "do not relate to" a product, feature, or patent at issue. But the documents Samsung objects to are generally copying-, competition-, or demand-related evidence and are directly relevant to damages and liability issues in this case. Indeed, the Court has already rejected a previous bid by Samsung to exclude many of these very same exhibits. (Dkt. 1398 at 3 (denying Samsung's motion to exclude, among others, PX107, 132, 146, 149, 151, 154, 156, 183, and 202).) Samsung essentially seeks to re-argue its unsuccessful motion *in limine*.[1]

---

[1] Apple cannot individually respond to Samsung's blanket objection to each of these 27 exhibits in the limited space of this brief, and this is not a new motion *in limine* to resolve the admission of 27 documents. Points made below for specific documents apply equally to each of the challenged documents.

As repeatedly briefed herein, in other briefs in this case and the 1846 case, "copying" or competitive analysis evidence—*e.g.*, evidence of Samsung's decisions to copy Apple generally or to copy specific benefits of the asserted patents, Samsung's motivation to copy Apple, and Samsung's analysis of Apple products and features—is relevant to both reasonable royalties and lost profits. For example, the evidence is relevant to illustrate the circumstances under which a hypothetical negotiation would have taken place. Indeed, the Court has found such evidence "highly probative" of *Georgia Pacific* factors 8 (commercial success and popularity), 9 (advantages of patented property), and 11 (infringer's use of the invention and value of that use). (*See, e.g.*, 1846 Dkt. 2721 at 2.) Documents showing Samsung's decision to copy specific benefits of the '657 patent, such as in **PTX151** at 21, informs the reasonable royalty analysis and rebuts Samsung's claim that the invention is obvious and valueless. And Samsung's decision to use the iPhone as its design standard, such as in **PTX149** at 6, is relevant to willfulness, the value of Apple's user experience, and the value of Apple's inventions in the marketplace. All would affect at least the reasonable royalty. Consistent with prior rulings, copying evidence is relevant whether or not it is precisely tailored to or mentions a patent because it shows the overall feature had value and rebuts the claims of Samsung's efforts that these features have no discernible value to consumers and would have no value in customer demand or a hypothetical negotiation.

Moreover, the Court has held copying evidence to be relevant to lost profits analyses. (*See, e.g.,* 1846 Dkt. 2721 at 2 (evidence relevant to both demand for patented product and demand for patented feature); 1846 Dkt. 2696 at 6-7 (rejecting Samsung's argument that copying evidence was supposedly too general as going to weight, not admissibility).) Copying is probative of demand for the patented product and the absence of acceptable non-infringing alternatives. *See*, *e.g.*, *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1367 (Fed. Cir. 2013) ("[E]vidence that Samsung's employees believed it to be important to incorporate the patented feature into Samsung's products is certainly relevant to the issue of nexus between the patent and market harm."), *cert. denied*, 134 S. Ct. 900 (2014). Thus, evidence of Samsung's decision to copy a patented invention, such as **PTX117** at 49, is relevant. Similarly, **PTX119** at 3 and 11-12, and

1  similar documents demonstrate that allegedly "small" changes to the user interface affect
2  consumer demand and thus rebut Samsung's claim that the patented features lack value to
3  customers. And the degree and scope of competition, as reflected in **PTX156**, **PTX202**,
4  **PTX209**, serves to demonstrate Apple's lost profits and sets the context for the hypothetical
5  negotiation. Evidence of interest in a feature whether or not tied to a patent also rebuts
6  Samsung's claim that these elements have no value to consumers

7  Documents reflecting praise for the iPhone and its significance in the market, such as
8  **PTX113, PTX118, PTX127, PTX133,** including evidence of the importance of Apple's
9  innovative user interface and operating system, and are relevant to Panduit factor 1, the
10 hypothetical negotiation and the shift in the marketplace that led Samsung to adopt the inventions.

11 Finally, the fact that a document "predates notice" does not make that document irrelevant
12 for damages purposes. The hypothetical negotation obviously takes into account events that
13 occurred prior to infringement. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l,*
14 *Inc.*, 711 F. 3d 1348, 1377-80 (Fed. Cir. 2013) (holding that evidence of pre-notice events were
15 relevant to determining post-notice damages).

16 **PTX132** shows that Samsung had notice of the '647 patent as early as August 4, 2010.
17 **PTX137** shows the value of the '959 patent by its praise for the "awesome" feature
18 reflected by universal search when Samsung reintroduced it in the Galaxy S III. Public praise is
19 relevant, without using the document to prove the truth of the matters stated, to demonstrate,
20 contrary to Samsung's position, demand for universal search. Apple is not using the document to
21 show whether Samsung removed the infringing feature due to this litigation but to show that
22 consumers were interested in and desired Apple's invention. Dr. Vellturo disclosed the document
23 in exactly this way in his expert report. (Dkt. 1156-03 at ¶¶ 203-204, 279.)

24 **PTX-122** is an FRE 1006 exhibit summarizing results from quarterly iPhone Buyer
25 Surveys, equivalent to exhibits introduced in the 1846 trials. (*See* PX143, 144, 145, & 146.) It
26 summarizes data from Apple's reports, which are available to Samsung and would be
27 voluminous. The evidence on the features presented reflect on demand for the patented features,
28 which is hotly contested.

1     **PTX-143** is a proper summary exhibit of Apple's sales of the iPhone and iPad. It is
2  nearly identical to PX-15 from the 1846 case, which Mr. Schiller sponsored and admitted.
3     **PTX-144** is a Rule 1006 summary of news articles reflecting market commentary on
4  consumer demand for the iPhone. It is nearly identical to PX17, which was admitted at the 1846
5  retrial. (Dkt. 1841 at 826:18-827:3).) Indeed, Samsung has itself offered an almost identical
6  exhibit at this trial. (*See* DTX-493.) Such exhibits, showing a "series of summarized newspaper
7  articles," where relevant are admissible. (Dkt. 1398 at 1-2.). PTX-144 includes information
8  relevant to multiple categories of the *Georgia Pacific* factors and is relevant to *Panduit* factor 1.
9  **II.     APPLE'S OBJECTIONS TO SAMSUNG'S OPENING SLIDES**
10    **Slides 3 & 4.** The reference in slide 3 to an injunction is highly prejudicial because it
11 suggests that Apple is not entitled to the damages. Further, equitable relief is to be decided by the
12 Court. Slide 4 is based on actions taken regarding a prior injunction in this case. The injunction
13 itself and disagreement by a "higher court" are not properly put before the jury. Slide 4 also
14 makes misleading arguments and speculates about the actions of a nonparty to this litigation.
15    **Slide 31.** The Court has previously excluded references to jury instructions in opening
16 statements, ruling that "[t]he Court will instruct the jurors on the law. It is improper for the
17 parties to do so and to argue the law in opening statements." (1846 Dkt. 2696 at 5.)
18    **Slides 32-33.** The heading of Slide 32 misleadingly and erroneously suggests that the
19 accused feature was developed before the iPhone was released in 2007. Similarly, the heading of
20 Slide 33 misleadingly and erroneously suggests that Google developed CacheBuilder before the
21 iPhone was released in 2007. But by Samsung's own admission in response to Apple's
22 Interrogatory No. 20, code implementing the accused functionality to which these slides refer
23 "has been available in the Android Open Source Project since April 30, 2009, when the open
24 source version of version 1.5 (cupcake) of Android was made available on the Internet."
25 Declaration of Ruth N. Borenstein "Borenstein Decl." Ex. A at 46.)
26    **Slide 34.** This slide is misleading and highly prejudicial because it suggests that Google
27 developed functionality before Apple and that the Google-developed functionality is prior art to
28 the '414 patent. But Samsung is not asserting any Android functionality as prior art.

**Slide 37.** This slide asserts that Apple has focused on the features of Samsung's Galaxy S4 device, but Samsung successfully opposed Apple's motion to amend its infringement contentions to include infringement claims against the Galaxy S4. (Dkt. 636.) It would be improper for Samsung to raise the Galaxy S4 in its defense, after asserting that adding the Galaxy S4 to this case would create "overwhelming" prejudice to Samsung. (Dkt. 568 at 4.)

**Slides 39-40.** The headings are misleading, argumentative, and prejudicial. Slide 39's heading that Dr. Hauser "does not care" if participants in his survey knew about the patented features is contradicted by the quoted portion of Dr. Hauser's report and by Dr. Hauser's deposition testimony, in which he explains that he considered this issue, but did not feel a separate survey was necessary to confirm whether or not survey participants knew of the patented features before buying their phones. (Borenstein Decl. Ex.B at 62:10-66:23.) Slide 40's heading wrongly implies that Apple attorneys "wrote" all descriptions in Dr. Hauser's report without his input, while the testimony is that counsel provided technical descriptions. As Dr. Hauser testified, he and his team had input into and helped craft the descriptions of the features tested in his survey. (*Id*. at 15:11-20.)

**Slides 44 & 46.** The images in these slides purport to be from Dr. Hauser's survey, but are in fact blurry and difficult-to-read screenshots. Proper images should be substituted.

**Slide 45, 57, & 58.** Each of these slides purports to identify what "[t]his patent requires," but each omits multiple elements of the asserted claim 18 of the '172 patent. None of slides 45, 57, or 58 suggest that showing the current character string in the first area, where text is displayed as typed, is a required element of the claim. (*See* JX13 at 12:52-58 (requires display in two areas).)

**Slides 47-48.** These slides are entitled "Dr. Reibstein's Analysis of Dr. Hauser's Survey" and "Dr. Reibstein's Conclusions re: Dr. Hauser's Survey," but in fact present results from Dr. Reibstein's own pre-test, not Hauser's survey. These slides will confuse the jury into believing that Dr. Reibstein's work with 26 respondents are Dr. Hauser's results with more than 500 respondents. These slides suggest falsely that 69% of people taking *Dr. Hauser's* survey were confused about the description of the autocorrect patent and that "there wasn't a single person

who understood all of the patents" in Dr. Hauser's survey, when that statement refers only to the small group of respondents in *Dr. Reibstein's* survey.  Samsung also changed the name of one of the patented features in Dr. Reibstein's survey, changing "quick links" to "analyzer server."  Both Dr. Reibstein and Dr. Hauser used "quick links" in their reports and in the actual language of their surveys.  (*See* DX454 at 6.)  Assigning a different definition would be confusing to the jury and prejudicial to Apple, as Dr. Hauser will testify using the terms in his survey and report.

**Slide 49.**  Dr. Hauser's survey tested the "quick links" and "autocorrect" patented features, not "analyzer server" and "word suggestion" as used in Slide 49.  As in Slides 47 and 48, these descriptions should be excluded.  Furthermore, Dr. Hauser has never said the amounts listed in the second column are what customers "would pay" for the patented features (implying a market price).  Instead, Dr. Hauser consistently describes these as the "price premium Samsung customers are willing to pay for these patent-related features."  (Dkt. 1182 at ¶¶ 25-31.)  The heading is misleading.

**Slides 62-67.**  These slides characterize the Samsung Dart as "non-infringing," yet there has been no judicial determination that the Dart does not infringe, and the Dart cannot be called "non-infringing" because Apple maintains that it infringes one or more Apple patents.  *See Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538 (Fed. Cir. 1995) (en banc).  Apple accused the Dart of infringement of all asserted patents but the '172 patent until its most recent case narrowing statement, when Apple dismissed the Dart without prejudice.  (*See* Dkt. 471; *compare* Dkt. 1237, *with* Dkt. 786.)  Casting the Dart as non-infringing would create confusion, prejudice Apple, and waste time by forcing Apple to prove the infringing nature of this product after Apple complied with the Court's case-narrowing directives.

**Slide 92.**  Slide 92 alters the appearance of a Figure from a prior art reference asserted against the '721 patent in order to make the prior art Figure resemble the claimed invention, without indicating the figure was modified.  As seen below, the Figure was rotated and portions were removed, to omit the "Password" portion and other key portions of the original figure.




| Image on slide 92 | Original image from prior art reference (rotated 90 degrees) |

Samsung replaced the misleading image when it originally appeared on one slide, but not slide 92.  This slide misrepresents the true nature of the depicted figure and is thus highly prejudicial and misleading.

**Slide 73.**  The heading's reference to "Dr. Hauser's example" misleadingly and falsely suggests that the image on the slide comes from Dr. Hauser's survey.  It does not.  Dr. Hauser's survey neither depicted nor tested the auto-correct functionality in the iPhone.

**Slide 75.**  Samsung lacks evidence to support its assertions regarding claim 15 of the '647 patent.  This claim has never been asserted in this case, and no expert has opined on it.  It would be unduly prejudicial to Apple to permit reference in an opening statement to a claim that Samsung will not be able to introduce at trial.

**Slide 78.**  The heading misleadingly and erroneously suggests that Mr. Bonura's deposition testimony relates to the "claimed analyzer server."  The testimony addressed differences between shared libraries and a client-server implementation.  The parties hotly contest whether the "claimed analyzer server" can be limited to a client-server implementation, or includes both shared libraries and client-server implementations.  To the extent that Samsung is equating and limiting the "claimed analyzer server" to a client-server implementation, that assertion is argumentative and inappropriate for opening statement.

1  **Slide 85.**  The heading that Apple's infringement analysis is based on "'Using the Accused Devices'" is misleading, false, and highly prejudicial because Apple's infringing analysis of the asserted computer readable storage medium claim is based on the software running on the accused product, which is capable of performing all the steps of the asserted claim.  *See Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1261-62 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 1013 (2014).

**Slide 87.**  Samsung had initially asserted iSync as alleged prior art, but dropped it pursuant to the Court's case-narrowing requirements.  Samsung's attempt to revive this piece of alleged prior art violates the Court's orders, is misleading, and is highly prejudicial to Apple.

**Slide 96.**  This slides identifies "Google" as distinct from "Samsung" designs.  This is prejudicial and irrelevant.  The accused phones are all Samsung phones.  Google is not a party to this litigation.  Yet the slide misleadingly implies that Google is accused of infringement for some phones, and Samsung for others.  Also, the inclusion of the Galaxy SII as "Not Accused" is incorrect since the Galaxy SII is accused of infringing multiple asserted patents.

**Slide 101.**  The deposition excerpts are improper because they were not included in Samsung's designations of Mr. Forstall's testimony.  (*See* Dkt. 1429.)  Further, there is no foundation for these excerpts, as Mr. Forstall, a software engineer, lacked personal knowledge to testify as to factors driving consumer demand.  As Mr. Forstall explained, he "wouldn't have metrics to indicate one way or another."

**Slides 103 & 110.**  Although the Court denied Apple's motion *in limine* as to the WAIS demonstration system, Apple preserves its objections to use of the WAIS Demo Video.  These slides and the accompanying video are misleading and highly prejudicial because they suggest that the so called WAIS System was an actual system that was used or sold in the United States prior to the date of inventions of the '959 patent, when it was actually created by an expert.

**Slide 108.**  This slide is misleading and prejudicial because it modifies actual exhibits, and implies that the patents disclose searching the internet.  In fact JX54 never mentions the Internet, and DX-306 does so only with respect to other figures, not Fig-8.

**Slides 117, 119, 121, & 122.** Slides 117 and 119 misleadingly imply that the '239 patent describes FaceTime and MMS ("Multimedia Messaging Service"). But the patent uses neither term, nor describes anything similar to either application. Similarly, Slides 121-122 describe the '449 patent as the "Video and Photo Album and Organization Patent" and "Video Albums Patent"—even though the term "album" appears nowhere in the '449 patent

**Slide 125.** This slide is misleading and inaccurate. The cited reference, DX391, does not provide a basis for any assertions in the slide. First, $0.99 is not "the real-world market price" for FaceTime because the $0.99 Mac OS FaceTime App was sold for only a short period before it was available for free as part of the Mac OS. Second, "Maximum Difference Scaling" is not "an established survey methodology" for determining the value of patented features. Indeed, Samsung's survey expert Dr. Rao testified that he is unaware that "Maximum Difference Scaling" had ever been used before to determine patent damages. (*See* Dkt. No. 806-06 at Ex. B-4 at 209:15-25.) Third, Samsung's damages analysis does not "split[] the value generated by each feature;" none of the method components is the "value generated by each feature."

**JX28, JX29, JX32, JX33, & JX35.** The parties agreed that JX28 – JX37 would be a compilation of the accused Samsung devices. Samsung has included, in its list for JX28, JX29, JX32, JX33, and JX35, builds, versions, or configurations that are not the accused builds, versions, or configurations by, for example, including devices with builds that were updated to be non-infringing as to certain patents. Apple cannot determine whether the specific phones that Samsung is requesting to put into evidence as joint exhibits of the Samsung accused devices are those that Apple accuses of infringement until Apple has inspected the phones, which is tentatively scheduled for Friday March 28. 2014.

**DTX-489.** Without more information as to how Samsung intends to use this voluminous exhibit in its opening statement, Apple objects to its use. It is a haphazard compilation with no clear connection amongst the documents (*e.g.*, a thirty-one page spreadsheet listing Apple's acquisitions of competitor devices in combination with a 2010 email chain discussing broad business strategy), with objectionable portions that will likely never be admitted into evidence.

| | | |
|---|---|---|
| 1 | Dated: March 27, 2014 | MORRISON & FOERSTER LLP |
| 2 | | |
| 3 | | By: */s/ Rachel Krevans* |
| 4 | | RACHEL KREVANS |
| 5 | | Attorneys for Plaintiff and Counterclaim-Defendant APPLE INC. |

APPLE'S OBJECTIONS & RESPONSES RE OPENING SLIDES
CASE NO. 12-CV-00630-LHK
sf-3397574

13