# EXHIBIT 3
# (Filed Under Seal)

| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552)<br>jkrevitt@gibsondunn.com<br>H. MARK LYON (CA SBN 162061)<br>mlyon@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, California 94304-1211<br>Telephone: (650) 849-5300<br>Facsimile: (650) 849-5333 | WILLIAM F. LEE (*pro hac vice*)<br>william.lee@wilmerhale.com<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000 |
| MICHAEL A. JACOBS (CA SBN 111664)<br>mjacobs@mofo.com<br>RICHARD S.J. HUNG (CA SBN 197425)<br>rhung@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California  94105-2482<br>Telephone:  (415) 268-7000<br>Facsimile:  (415) 268-7522 | MARK D. SELWYN (SBN 244180)<br>mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100 |

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br>   v.<br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br>        Counterclaim-Plaintiffs,<br>   v.<br>APPLE INC., a California corporation,<br><br>        Counterclaim-Defendant. | Civil Action No. 12-CV-00630-LHK (PSG)<br><br>**EXPERT REPORT OF PROFESSOR ANDREW COCKBURN**<br><br><br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

116.     In my experience, there were a number of known mechanisms for addressing this problem as of December 2005, each of which involved using an unlocking mechanism to minimize the risk of accidental activation of functions on the device.  The mechanisms most commonly used to minimize the risk of accidentally activating functions on a computing (or electronic) device involved the use of a sequence of physical button presses to unlock a device (such as an "unlock" button followed by the * key) or some other physical control on the device (such as a mechanical switch or a clam shell cover).  The '721 Patent describes how these previous unlocking procedures, such as "pressing a predefined set of buttons (simultaneously or sequentially) or entering a code or password", have drawbacks, such as button combinations that are hard to perform or the burden of having to create, memorize, and recall passwords, codes, and the like.  (*See, e.g.*, '721 Patent at 1:48-53.)  As such, the '721 Patent seeks to provide "more efficient, user friendly procedures for unlocking such devices, touch screens, and/or applications." (*See, e.g.*, '721 Patent at 1:56-58.)

117.     It is important to note that there is a distinction between unlocking mechanisms to prevent accidental activation of functions, as disclosed and claimed in the '721 Patent, and locking mechanisms for security or privacy reasons, which I understand address a different problem regarding security on the device.  Locking mechanisms for security or privacy reasons must be designed not only so that they cannot be activated accidentally (by anyone), but also so that they cannot be activated by anyone other than the owner of the device (or someone authorized by the owner).

**Benefits and Advantages of the '721 Patent**

118.     In my opinion, the unlocking mechanisms which are described and claimed in the '721 Patent achieve a unique (as of December 2005) and elegant solution for unlocking a device with a touch-sensitive display via gestural interactions detected on the touch-sensitive display.  The unlocking mechanisms involve the use of gestural interactions that minimize the risk of accidental activation of functions on the device, while, as I describe below, also having certain advantages over other unlocking mechanisms which I was aware as of December 2005.

119.     *First*, regarding learnability, in contrast to unlocking mechanisms involving a sequence of physical button presses, the gestural interactions of the '721 Patent for unlocking the

device use a combination of visual constraints and visual affordance to provide clear, unambiguous, cognitively lightweight, and intuitive communication of the action required to unlock the device. Visual constraints are an interface mechanism used to direct the user's attention to salient controls and thereby reduce the range of interactive elements that must be considered by the user for a particular action. By providing an unlock image on the touch screen display, together with associated visual cues the user's attention is directed to towards the key salient control(s) for unlocking. This contrasts with devices I was aware of prior to December 2005, which typically had a multitude of physical buttons as well as a display (which may have been touch enabled). Users were therefore likely to be under-constrained in determining the actions necessary to unlock the device. I recall struggling to determine which of approximately 10 physical buttons on my Nokia N800 Internet Tablet (2007) would activate the device and initiate the unlocking procedure (an awkward press on a recessed physical button on the top edge of the device was required). Samsung's own documents also indicate that users prefer to unlock a touch-screen device from the face of the touch-screen. (See, *e.g.*, S-ITC-009302900 ("Respondents felt that the iPhone's ability to unlock from the front of the phone was convenient and easy to complete, compared to the i920's side lock button, which seemed to increase task time.").)

120. The gestural interactions described in the '721 Patent also uses strong visual affordance to communicate the movement action required on the unlock image. Affordance is an interface mechanism used to suggest an action to the user, such that the appearance of the object suggests the required action (*e.g.*, handles suggest pulling, while buttons or panels suggest pushing). Strong affordances are clear, unambiguous, cognitively lightweight and intuitive, in contrast to explicit textual instructions which much be read, parsed, interpreted, and converted into a resultant action – for example, after pressing the edge button on my Nokia N800 Internet Tablet textual instructions to push another button appeared, and I recall a frustrating search for the button on the screen and on the device.

121. Furthermore, the movement of an image and other visual cues provide feedback to the user during manipulation of the unlock image that their actions are leading towards successful completion of the unlock action.

touch sensitive display at a first predefined location corresponding to an unlock image" and "to unlock the hand-held electronic device if the unlock image is moved from the first predefined location on the touch screen to a predefined unlock region on the touch-sensitive display."

323. At the outset, this alternative does not provide enough information to determine whether or not it would be non-infringing. It speaks of allowing the user to make contact at any location on the touch screen, but does not specify the context in which the user is allowed to make contact at any location on the touch screen—for example, there is no stipulation that the device is in a locked state nor whether the contact will unlock the device. Certainly a device may unlock according to the '721 Patent and subsequently allow the user to make contact at any location on the touch screen; or contact may be detected anywhere on a locked screen and remain locked.

324. The examples of the Galaxy SIII and Note II devices are phrased as "such as" examples, and so are not limiting in this context. However, the manner in which these devices operate by allowing the user to begin the unlock sweep motion at any location on the touch screen, would not meet the pre-defined location limitation.

325. The first of the Galaxy SIII and Note II was available in the United States in June 2012 – 4 months after this lawsuit was filed.[2] This is despite the fact that Samsung was apparently working on this alternative on an "urgent" basis since late 2011.[3]

326. I consider the unlocking mechanisms of the Galaxy SIII and Note II do not afford the benefits and advantages disclosed in the '721 Patent. The '721 Patent teaches against unlock mechanisms prone to accidental activation: "One problem associated with using touch screens on portable devices is the unintentional activation or deactivation of functions due to unintentional contact with the touch screen." (*See, e.g.*, '721 Patent at 1:38-40.) However, the "sweep anywhere" unlocking in the Galaxy SIII and Note II is similar to that used in early Samsung devices, which were the subject of numerous customer complaints and usability study criticisms for being prone to

---

[2] Sung Sik Lee Deposition, at 100-101.

[3] Sung Sik Lee Deposition, at 100-101; 105-105; Sung Sik Lee Deposition Exh. 3.