# Exhibit 2

(Redacted Version of Document to Be Sealed)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

|  |  |
|---|---|
| APPLE INC. <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC <br><br> Defendants. | CASE NO.12-cv-00630-LHK |

# OPENING EXPERT REPORT OF
# CHRISTOPHER A. VELLTURO, PH.D.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**SUBJECT TO PROTECTIVE ORDER**

> discussion group. The iPhone owners will talk about those kinds of things, how smooth it is and how it's easy to, you know, ask for something, and things show up in different places. So you do, you know, a search for a restaurant or whatever, and it shows up, or you can – you know, when the results come up, you can press on it and call, and those kind of things.
>
> But have we broken that out to ask specifically about those things? No. We would if ease of use were lower. We'd probably go back and go, What's going on there; right? But we typically get very high scores on ease of use.[316]

182. This discussion highlights not only the importance of product features, such as the ability to act on data structures with a touch screen, that contribute to ease of use, but also how such features combine to enhance the user experience. For example, in the excerpt above, Mr. Rangel pointed out how ease of search (to which the '959 Patent contributes as discussed below) combines with ease of acting on data structures using the invention taught by the '647 Patent.

183. 

184. Further, Samsung's own documents demonstrate the importance of being able to link to data structures. As early as July 12, 2008, almost a year before Samsung launched its Android-based phones, Samsung noticed the iPhone 3G's ability to "recognize [a] phone number and address" in email and its "function to call immediately."[318]

185. On February 13, 2009, Samsung noted that among other things, a "UX Best Practice" was to "provide capability of sharing data between applications (e.g., phone number to

---

[316] Deposition of Arthur Rangel, Transcript, Apr. 5, 2012, at 123:19–124:8.

[317] Email, dated Sept. 17, 2007, GOOG-NDCAL630-00062054, at -055.

[318] "iPhone 3G UX Analysis," July 12, 2008, SAMNDCA00251538, at -545.

dialer or address to GPS)."[319] As an example, Samsung described that, in iPhone, "Location information in Google Search can be used in GPS application directly from browser," "Phone number in Google Search can be dialed from the browser," and "Phone number in supported websites can be dialed from the browser."[320] Yat-Sang Hung, Director of Product and Experience Planning at STA, was the author of the document and agreed that he was recommending that Samsung implement similar capability on its own phones.[321] He sent the presentation to both HQ product planning and STA product planning teams.[322]

      186.    On March 2, 2010, Samsung compared its S1 phone and iPhone side-by-side, and noted that, in its S1 phone, "when a memo contains URL, phone number or Email, no Link is provided." In contrast, in the iPhone, "with a single tap on the URL, phone number or email in the memo, [it] immediately moves to the corresponding web page, outgoing call window, or E-mail composing window. Long press displays a menu with detailed options like copy, save, etc." Samsung concluded that it "need[ed] to improve usability by providing links for memo contents such as [w]eb, [call], and [e]-mail, that can be linked."[323]

      187.    On March 11, 2010, Samsung made a similar comparison between the S1 and iPhone and arrived at the same conclusion.[324] In addition, Samsung noted that the S1 is "[i]nconvenient because the user cannot make a phone call directly after finding the phone number using Web search." Instead, "[u]sers have to memorize the phone number and access the Dialer to make a call." In the iPhone, however, "when the user taps on the phone number, it

---

[319] "Touch Devices Browser User Experience Best Practices," Feb. 13, 2009, SAMNDCA10166661, at -731.

[320] "Touch Devices Browser User Experience Best Practices," Feb. 13, 2009, SAMNDCA10166661, at -728.

[321] Deposition of Yat-Sang Hung, Transcript, June 13, 2013, at 9:21-23, 110:9-17.

[322] Deposition of Yat-Sang Hung, Transcript, June 13, 2013, at 84:8-88:11.

[323] "Relative Evaluation Report on S1, iPhone," Mar. 2, 2010, SAMNDCA00203880 (translation), at -915.

[324] "S1, Motoroi, iPhone Comparison Evaluation Report," Mar. 11, 2010, S-ITC-001742947 (translation), at -994.

- Samsung ultimately selected the infringing implementation and ran into consumer pushback when inferior designs were used instead.

255. Thus, in my opinion, the evidence in this Section demonstrates that the implementation of the Asserted Patents by Apple contributed materially to demand for its devices and, once installed by Samsung in its devices, ameliorated Samsung's comparative competitive disadvantage vis-à-vis Apple. My opinion in this regard I further supported by the consumer research performed by Dr. Hauser, discussed below.

### (2) Survey-Based Evidence of the Impact of the Patented Features on Demand

256. To consider the role of the Asserted Patents with respect to demand for the accused products quantitatively, I have studied the results of consumer surveys prepared by Dr. John Hauser.[449] Dr. Hauser used conjoint analysis, a widely studied and applied form of quantitative consumer preference measurement,[450] to determine the impact of the features covered by the Asserted Patents on demand for smartphones and tablets by Samsung smartphone and tablet owners, relative to their demand for similar products without those features. I discuss the results and relevance of these surveys extensively below, in consideration of *Panduit* Factor 2. These surveys provide considerable evidence that the patented features contributed significantly to the demand for smartphones and tablets at Samsung (since the surveys were directed at Samsung users) and that a material portion of purchasers of Samsung smartphones and tablets would not purchase devices that did not incorporate each of the patented features. As a result, these survey results demonstrate that each of the patented features has a significant positive impact on demand.

---

[449] Expert Report of John R. Hauser, Aug. 11, 2013, Exhs. N1-2, O1-2, P, Q.

[450] Expert Report of John R. Hauser, Aug. 11, 2013, ¶ 16. In response to my Opening Declaration and Apple's motion for a preliminary injunction in this matter, Samsung's damages expert, Mr. Michael Wagner, endorsed surveys and conjoint analysis as suitable methods for proving the link between patented features and consumer demand for products, and for calculating the number of Samsung customers who made their decision to purchase a Samsung smartphone based on features enabled by Apple's patented inventions (Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, June 7, 2012 ("Wagner Declaration"), ¶ 116).

## VI. CONCLUSION

501.   The analysis above is based on the information I have obtained to date. I expect to supplement this report when Samsung produces updated financial information relating to the Accused Products. Moreover, after Apple reduces its number of Asserted Patents to 5, I expect to supplement this report to set forth damages scenarios involving the infringement of those five patents. I may also present the Court and the jury with demonstrative exhibits at trial to illustrate how these damages should be calculated if fewer than all Asserted Patents are found valid and infringed, if fewer than all products are found to infringe, or both, or, in that event, perform additional calculations, after any partial verdict of liability, to present that information. Additionally, I may supplement and adjust the above in the event additional facts come to light. Finally, I will provide the Court with whatever calculations are necessary to determine pre-judgment interest, post-judgment interest, attorneys' fees, costs, or any other remedy over and above Apple's base damages award.

August 12, 2013                              _____
                                             Dr. Christopher A. Vellturo

---

with minimal effort. Putting aside the accuracy of that position, if it were true, then Samsung would face little by way of hardship in avoiding infringement of Apple's Asserted Patents, whereas Apple faces substantial hardship due to Samsung's infringement, as discussed herein.