1 QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
2 charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
3 San Francisco, California 94111
Telephone: (415) 875-6600
4 Facsimile: (415) 875-6700

5 Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
6 Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
7 555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
8 Telephone: (650) 801-5000
Facsimile: (650) 801-5100
9
William C. Price (Bar No. 108542)
10 williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
11 michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
12 Los Angeles, California  90017
Telephone:   (213) 443-3000
13 Facsimile:   (213) 443-3100

14 Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
15 AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC
16

17                    UNITED STATES DISTRICT COURT

18          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| 19 APPLE INC., a California corporation, | CASE NO. 12-cv-00630-LHK |
| 20       Plaintiff, | **SAMSUNG'S PROFFER OF EXCLUDED EVIDENCE REGARDING APPLE'S PAST LICENSES AND LICENSING POSITIONS** |
| 21       vs. | |
| 22 SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG | |
| 23 ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG | |
| 24 TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 25 | |
| 26       Defendants. | |

27

28

Pursuant to Federal Rule of Evidence 103(a)(2), Samsung respectfully makes the following proffers of evidence excluded from trial.

**<u>Introduction</u>**

Apple is leading the Court into reversible error.   This case will go to the jury without any real world data points for license negotiations, such as Apple's license with its competitor HTC or Apple's own proposed reasonable royalty rate in another litigation on one of patents at issue here.   Instead, Apple and its damages expert will present the jury with a fanciful world where one competitor pays over a billion dollars in royalties,[1]  as much as $40.10 per unit, to use five narrow software features that can be designed around in a matter of weeks, or days.   In order to give the jury the necessary facts to evaluate the reliability and credibility of this expert opinion, Samsung should be allowed to (i) present evidence of Apple's position in the *Apple v. Motorola* litigation that the '647 patent—which is asserted in this case—is worth 60 cents per unit, rather than the exorbitant $12.49 per unit Apple claims here; and (ii) cross examine Apple's expert with the HTC license that includes, among others, all asserted patents.

**I.    THE JURY SHOULD HEAR EVIDENCE OF APPLE'S PRIOR POSITIONS REGARDING A REASONABLE ROYALTY FOR THE '647 PATENT BECAUSE IT IS HIGHLY PROBATIVE OF THE UNREASONABLENESS OF APPLE'S DAMAGES CLAIMS IN THIS LAWSUIT.**

As a result of the Court's evidentiary rulings, Samsung has been completely deprived of the ability to introduce any evidence of Apple's positions in the *Apple v. Motorola* lawsuit, N.D. Ill. Case No. 1:11-cv-08540, regarding the '647 patent, which are probative evidence of Apple's understanding of the limited value of that patent and inconsistent with Apple's damages positions in this lawsuit regarding that very same patent.

**A.    The Court's Evidentiary Rulings**

The parties have addressed the status of evidence regarding Apple's prior expert conclusions and methodologies on multiple occasions.

---

[1]    Apple is seeking both lost profits and reasonable royalties in the total amount of $2.2 billion.   This proffer is relevant to the "reasonable royalty" portion of Apple's damages claim.

***Apple's* Daubert *Challenge***.   Before trial, Apple argued in its *Daubert* motion that "Samsung's experts should be precluded from testifying about the opinions of Apple's experts expressed in past cases, including experts that are not testifying in this case, as such testimony from other cases is not probative of any issue in this case and would cause confusion of the issues and a mini-trial on expert opinions not given in this case."  (Dkt. 806-3 at 24.)   In response, Samsung argued that Apple should not be granted a blanket exclusion of all evidence showing that "Apple took positions in prior litigation that are wildly inconsistent with the damages approach Dr. Vellturo has set forth here," and that such a request to exclude relevant evidence under *Daubert* was improper and unwarranted.   (Dkt. 856-3 at 24-25.)

In its *Daubert* ruling on February 25, 2014, the Court rejected Apple's request to preclude Samsung's experts from testifying about "the opinions of Apple's experts expressed in past cases, including experts that are not testifying in this case."  (Dkt. 1326 at 21-22.)   The Court stated that "the revelation that Dr. Vellturo (or any other Apple expert) previously relied on different methodologies" was "relevant, both to impeach Apple's expert and to support [Samsung's expert's own opinions," because it "may help the jury assess the reliability and credibility of Dr. Vellturo's methodologies and conclusions in this case."  (*Id*. at 22.)   The Court also rejected Apple's argument that evidence of the prior methodologies or conclusions of Apple's experts should be excluded under Rule 403, concluding that "the probative value of such testimony is not substantially outweighed by any speculative danger of 'confusing the issues' or 'misleading the jury.'"  (*Id*. at 23 (citing Fed. R. Evid. 403).)   To the contrary, the Court concluded that "the past methodologies of Apple's experts are highly probative impeachment evidence that a fact-finder will consider in assessing the weight a fact-finder may choose to give to the experts in the instant litigation."  (*Id*.)   The Court also noted that the "parties' conduct in the damages retrial in *Apple I* shows that exploring expert opinions from other cases does not raise the types of irrelevant forays of which Apple complains about in this case."  (*Id*.)

***Apple's Motion* in Limine *No. 2***.   In addition, while its *Daubert* challenge was still pending, Apple moved *in limine* to exclude Samsung from introducing a heavily redacted copy of an order issued by Judge Posner in the *Apple v. Motorola* lawsuit which noted, among other

1   things, that Apple's expert in that case had asserted that an appropriate reasonable royalty for the

2   same '647 patent at issue in this case was 60 cents per unit.   (Dkt. 1281 at 3 (citing *Apple Inc. v.*

3   *Motorola, Inc.*, No. 1:11-cv-08540, 2012 WL 1959560, at *9-10 (N.D. Ill. May 22, 2012), *appeal*

4   *docketed*, Nos. 2012-1548, -1549 (Fed. Cir.) (oral argument heard Sept. 11, 2013).)   Apple argued

5   that the "Court should exclude the *Motorola* order, as well as any reference to rulings, findings, or

6   other developments in cases not involving both parties to this action," on the grounds that the "risk

7   of confusion" outweighs the probative value of such evidence.   (*Id.*)

8         With the benefit of the Court's *Daubert* decision that issued the same day as motions *in*

9   *limine* oppositions were due, Samsung noted that, just like Apple's unsuccessful *Daubert*

10  challenge, Apple's motion was overly-broad to the extent it applied to "all positions previously

11  taken, testimony previously given and expert positions previously disclosed without making

12  individualized showings that their admission here is improper."   (Dkt. 1337 at 6.)   Samsung also

13  noted it would seek to introduce the *Motorola* evidence not because of any "statements on the

14  law" made by another court, but rather because of the "factual position" Apple took in that case—

15  which is inconsistent with a factual position it is taking in this case—that Apple "valued a

16  reasonable royalty for the '647 patent at 60 cents—20 times less than the $12.49 Apple claims

17  here."   (*Id.* (citing Dkt. 1156-3, Vellturo Rpt. at 173, Table 7).)

18        As stated on the record of the March 5, 2014 hearing on the parties' motions *in limine*, the

19  Court denied-in-part Apple's motion as overly-broad, but granted it only as to the "specific

20  exhibit"—the *Motorola* order—that was the "subject of the motion," on the grounds that the

21  *Motorola* case presented different circumstances from this case, and that, "by virtue of the fact that

22  this exhibit actually has opinion and ruling" in it, "it would be highly prejudicial because it has the

23  imprimatur of the district court in the Northern District of Illinois."   (Dkt. 1411 at 67:18-68:18;

24  *see also* Dkt. 1398 at 2 (ruling that Apple's "motion *in limine* #2 to exclude evidence or argument

25  regarding findings and rulings and events from Apple's lawsuits with other parties . . . is DENIED

26  WITHOUT PREJUDICE with respect to Apple's overly broad request to exclude all references to

27  events and testimony in other cases," but is "GRANTED with respect to DX 449").)

28

1    ***Samsung's Request for Clarification at Trial***.   In recognition of the Court's prior rulings

2    that rejected Apple's blanket challenges to testimony or evidence about Apple's prior expert

3    opinions but excluded the only the *Motorola* order itself because it contained the rulings of a

4    different court, Samsung sought to clarify whether it was permitted to elicit from Apple's damages

5    expert, Dr. Vellturo, "the testimony that Apple took a position in a different case that [the

6    appropriate license for] one of the claims in suit here was" only 60 cents, and not the $12.49 Dr.

7    Vellturo asserts here.   (4/8/14 Rough Tr. at 1096:19-22.)   Apple argued that such a line of

8    inquiry was precluded by the Court's order on Apple's MIL No. 2, which excluded the *Motorola*

9    order.   (*Id*. at 1097:14-18.)   Samsung responded that its instant request did not fall within that

10   ruling because it did not concern the use of the *Motorola* order itself, but rather was permissible in

11   accordance with the Court's *Daubert* ruling that Apple's prior positions are "highly probative

12   impeachment evidence."   The Court, relying on its ruling on Apple's MIL No. 2, nevertheless

13   precluded Samsung from this line of inquiry.   (*Id*. at 1099:6-14.)

14   **B.   Evidence Of Apple's Expert's Positions In The *Apple v. Motorola* Lawsuit Is
     Highly Probative Of The Unreasonableness Of Apple's Expert's Positions In
15   This Lawsuit.**

16   Following the Court's April 8 ruling that Samsung may not elicit testimony from Apple's

17   expert regarding Apple's damages positions from the *Apple v. Motorola* lawsuit regarding the

18   '647 patent, Samsung has been deprived of the ability to introduce any evidence at all regarding

19   Apple's entirely inconsistent damages positions in that lawsuit.   For example, Samsung is unable

20   to question Apple's damages expert regarding his acknowledged awareness of Apple's position on

21   the '647 patent in the *Motorola* litigation and point out the inconsistencies between his numbers

22   and methodologies and those in the *Motorola* case—as well as the consistencies between the app-

23   based approach used by Apple's expert in *Motorola* and the methods applied by Dr. Chevalier

24   here.[2]

25

26   _____

27   [2]   The Court has also prevented Samsung from offering evidence that Dr. Vellturo himself
     used similar methodologies in calculating a reasonable royalty when acting on behalf of Apple in a
28   case where it was defendant.   (Dkt. 1626 at 2.)

_____

-4-

1    For the very same reasons the Court rejected Apple's blanket challenges to the introduction

2  of evidence or testimony regarding the prior conclusions of Apple experts, Samsung should be

3  permitted to offer evidence and elicit testimony regarding Apple's expert's conclusion in the

4  *Motorola* lawsuit that a reasonable royalty for the '647 patent was a mere fraction of what Apple

5  is claiming here.   As the Court recognized, such evidence would be probative not only of "the

6  reliability and credibility of Dr. Vellturo's methodologies and conclusions in this case," but also

7  could be used to impeach Dr. Vellturo's conclusions and support Samsung's experts' conclusions.

8  (Dkt. 1326 at 21-23.)   Evidence of Apple's damages positions from the *Motorola* lawsuit are

9  particularly probative here because they concerned the very same '647 patent at issue in this

10  lawsuit.[3]   Indeed, based on his finding that the *Motorola* lawsuit shared a "technological nexus"

11  with this dispute—in fact, the *same patents*—Judge Grewal compelled Apple to produce

12  documents from the *Motorola* lawsuit and sanctioned Apple for failing to timely do so.   (1846

13  Dkt. 536 at 5-6; 1846 Dkt. 867 at 11-12; 1846 Dkt. 1213 at 867.)

14    Nor is there any risk of unfair prejudice to Apple from the introduction of its positions on

15  the '647 patent from the *Apple v. Motorola* lawsuit.   To the extent Apple argues there are

16  meaningful distinctions between the reasons why, according to Apple, a 60 cent royalty for the

17  '647 patent was appropriate in the *Motorola* lawsuit, but a royalty of 20 times that amount is

18  appropriate here, Apple can elicit such an explanation on its own examination of its witnesses.

19  But any such distinctions should not preclude Samsung entirely from introducing highly probative

20  evidence of Apple's prior positions on an identical patent.

21    Nor are the concerns that animated the Court's decision to exclude the *Motorola* order

22  applicable to the narrowly tailored fact that Apple has previously requested a 60 cent royalty rate

23  for the '647 patent, as that fact alone does not have any "imprimatur" of being a judicial ruling or

24

25    [3]   While the Court is correct that *Motorola* involved "different asserted claims" (Dkt. 1411, 3/5/14 Hr'g Tr. at 68:1-2), that distinction only **reinforces** the probative value of Apple's position

26  in the *Motorola* case.  Apple asserted claim 1 of the '647 patent in *Motorola*—the broad independent claim from which claim 9 depends.  The fact that Dr. Vellturo's valuation of a

27  *narrower* patent claim is 20 times *greater* than what Apple alleged was reasonable in *Motorola*

28  shows Dr. Vellturo's analysis is not credible.

1    finding; rather, it was simply Apple's position.   Because that position is probative of "the

2    reliability and credibility" of the position Apple asserts here, Samsung should be permitted to

3    present it to the jury and inquire of Apple's witnesses about it.

4    **II.     SAMSUNG SHOULD BE PERMITTED TO USE THE HTC LICENSE TO CROSS-
         EXAMINE DR. VELLTURO BECAUSE IT IS HIGHLY PROBATIVE OF HIS**

5    **ANALYSIS OF *GEORGIA PACIFIC* FACTORS.**

6            This Court has previously excluded the HTC license on several occasions in this case and

7    the 1846 action over Samsung's objections.   Specifically, during the damages retrial, the Court

8    excluded the HTC license but stated that it could come in if Apple "opened the door" by claiming

9    that it does not license utility patents.   (Dkt. 2673 at 10-11.)   More recently, in its *Daubert* ruling,

10   the Court precluded Samsung's damages expert from basing her analysis on the HTC license.

11   (Dkt. 1326.)[4]   Finally, the Court restated its ruling during trial on April 8, 2014.   (4/8/14 Rough

12   Tr. at 1094:14-20).

13           Barring Samsung from presenting this evidence deprives the jury of highly relevant

14   evidence under the *Georgia Pacific* analysis, specifically Factors 1 (patentee's licensing history)

15   and 2 (comparable licenses).   *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79

16   (Fed. Cir. 2012) ("Actual licenses to the patented technology are highly probative as to what

17   constitutes a reasonable royalty[.]").   Samsung should be able to cross-examine Dr. Vellturo

18   about the Apple-HTC license because it goes directly to the reliability and credibility of his

19   *Georgia Pacific* analysis.   Dr. Vellturo's reasonable royalty analysis relies heavily on Apple's

20   purported unwillingness to license the patents-in-suit to a direct competitor.   According to Dr.

21   Vellturo, Apple would be "unwilling to grant a license at all" to a direct competitor like Samsung,

22

23

24

25

26       [4]   In the same *Daubert* order, the Court also precluded Samsung from relying on other
     comparable telecommunications industry licenses as well as Samsung-Apple prior negotiations.

27   Samsung maintains its objection to the ruling.

28

-6-

1    "Apple's licensing practices confirm" that Apple would "not voluntarily license Samsung," and

2    these considerations justify his astronomic rates.   (Dkt. 1156-3, Vellturo Rpt. ¶¶ 461-464.)[5]

3         Dr. Vellturo's analysis fails to take into account that Apple willingly licensed all five of

4    the patents-in-suit to HTC—the competitor most similarly situated to Samsung during the relevant

5    time period.   In doing so, Apple authorized the use of its inventions in Android products,

6    notwithstanding the same purported risk of lost downstream sales and "ecosystem benefits" that

7    Dr. Vellturo cites now in support of his inflated royalty rates.   Indeed, it is difficult to imagine a

8    more comparable license: it is an agreement for a running royalty between two competitors; the

9    licensee is running Android software; all asserted patents are covered; and the time period for the

10   hypothetical negotiation is comparable.

11        Regardless of whether the HTC license "provides a maximum royalty" (1846 Dkt. 2673 at

12   4) or a reliable basis for calculating a lump-sum royalty (Dkt. 1326 at 13-14), there is no good

13   basis for precluding Samsung from cross examining Dr. Vellturo regarding a license agreement

14   that contradicts the most critical assumptions underlying his reasonable royalty analysis.   To the

15   contrary, the Federal Circuit has rejected patentees' attempts to present reasonable royalty rates

16   that ignore the "history of licensing" the patent at issue and that "cannot be reconciled with the

17   actual licensing evidence."   *LaserDynamics*, 694 F.3d at 80-81.

18        Nor should Apple be permitted to mislead the jury further by arguing that it has not or

19   would not willingly license the patents-in-suit to a direct competitor, or that the multi-billion

20   royalty award that it seeks in this case is justified by "unique" circumstances that are not, in fact,

21   unique, when these assertions are belied by its own conduct.   (*See* 1846 Dkt. 2673 at 10-11

22   ("[T]he Court concludes it would be unjust to allow Apple to suggest to the jury that it has never

---

23
24        [5]   Although Dr. Vellturo has yet to testify at trial, Apple has clearly signaled that it will rely
     on these considerations.   (*See, e.g.*, Dkt. 1622, 4/1/14 Tr. at 336:23-337:1 ("Apple would not have
25   been willing to license these patents cheaply, if it would have been willing to license them at
     all."); *id.* at 471:2-473:12 (questioning Mr. Schiller about "Apple's willingness to license its
26   intellectual property to other companies," Apple's "competitive view" of Samsung, and how these
     factors would have "played a role in Apple's decision making"); *see also* PDX92.44-.48
27   (demonstratives disclosed for Vellturo direct exam referencing "Apple's patent policy" and the
     "Relationship Between the parties").)
28

1   or would license its utility patents when in fact it appears to have included at least two of the

2   utility patents-in-suit in the HTC Agreement.").)   If Apple believes the evidence of the HTC

3   Agreement can be explained away, it is free to elicit from Dr. Vellturo testimony as to why, in his

4   opinion, Apple's decision to license the patents-in-suit to HTC in similar circumstances has no

5   impact on his *Georgia Pacific* analysis of the hypothetical negotiation.   But Samsung should not

6   be deprived of the opportunity to present to the jury compelling evidence showing that Dr.

7   Vellturo's analysis of the hypothetical negotiation bears no resemblance to the way Apple has

8   conducted real-world negotiations.

9

10   DATED:   April 10, 2014                 QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP

11

12

13                                           By   /s/ Victoria F. Maroulis
                                                  _____
14                                                Charles K. Verhoeven
                                                  Kevin P.B. Johnson
15                                                William C. Price
                                                  Victoria F. Maroulis
16                                                Michael L. Fazio
                                                  Attorneys for SAMSUNG ELECTRONICS CO.,
17                                                LTD., SAMSUNG ELECTRONICS AMERICA,
                                                  INC., and SAMSUNG
18                                                TELECOMMUNICATIONS AMERICA, LLC

19

20

21

22

23

24

25

26

27

28