# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

APPLE INC., a California Corporation,

    Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

    Defendants.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

    Counterclaim-Plaintiffs,

v.

APPLE INC., a California corporation,

    Counterclaim-Defendant.

CASE NO. 12-cv-00630-LHK (PSG)

**INITIAL EXPERT REPORT OF DR. TODD C. MOWRY REGARDING INFRINGEMENT OF U.S. PATENT NO. 5,946,647**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE**

**GOOGLE'S HIGHLY CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY— SOURCE CODE**

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

40. I am being compensated for the time I have spent on this action at my customary rate of $500 per hour, plus reimbursement for expenses. My compensation does not depend in any way upon the opinions or testimony that I provide or the outcome of this action.

### B. Materials Considered

41. In forming the opinions set forth in this report, I considered and relied upon my experience, knowledge of the field, and education.

42. I also reviewed and considered the '647 Patent and its prosecution and reexamination history, various prior art, and the parties' disputes and the Court's Order as to construction of certain terms in the asserted claims of the '647 Patent.

43. I reviewed the parties' briefing, and certain accompanying declarations and exhibits, submitted in the preliminary injunction phase in this action, as well as the Court's Order granting Apple's motion for preliminary injunction.

44. I also reviewed and considered the Samsung Accused Products and documentation on those devices, design documents, developer specifications, and other documents about the Samsung Accused Products. I reviewed and considered various documents obtained from Samsung and Google related to the technology claimed by the '647 Patent. I reviewed and considered certain Android source code obtained from public sources and certain Android source code for Samsung devices obtained from Samsung and Google during discovery. In addition, I have evaluated representative samples of the accused products.

45. I also reviewed and considered transcripts of certain deposition in this and prior cases of Samsung employees, Google employees, and current and former Apple employees. I also reviewed and considered certain discovery responses by Apple and Samsung submitted in this litigation.

46. I have also reviewed other documents and reference materials cited or listed in this report. A non-exhaustive list of materials and documents that I considered is found in Exhibit 2. I reserve the right to rely upon any additional information or materials that may be provided to me or that are relied upon by any of Samsung's experts or witnesses in reports, testimony or otherwise.

47. I reserve the right to supplement this report should additional information become available to me.

## IV.   RELEVANT LEGAL PRINCIPLES AND GUIDELINES

48. I am not a legal expert and offer no legal opinions. However, I have been informed by counsel of various legal standards that apply to the pertinent technical issues, and I have applied those standards in arriving at my conclusions expressed in this report.

### A.   Claim Construction

49. I have been informed and understand that the language of a patent claim must be interpreted in light of the patent's claims, specification, and prosecution history, as well as other evidence extrinsic to the patent. More specifically, I understand that claim terms should be given their plain and ordinary meaning as understood by one of ordinary skill in the art as of the effective filing date of the patent application (*i.e.*, the day the application that led to the patent was filed), unless the claims, specification, or prosecution history indicate that a special meaning was intended.

50. I have been informed by counsel that, while claims must be interpreted in view of the specification, it is improper to import limitations from the specification into the claims. Although the specification often describes specific or preferred embodiments of the invention, claims should not be limited to those embodiments.

51. I have also been informed by counsel that the prosecution history should be considered during claim construction in conjunction with the claims and specification. For the prosecution

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          16

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

history to limit a claim, the applicant must make a clear and unambiguous disavowal of claim scope.

52.     I understand that the Court has construed one term of the '647 Patent in this case, and I apply that construction in my analysis below.  For other terms, I apply the meaning as understood by one of ordinary skill at the time of the invention in light of the intrinsic and extrinsic evidence.  To the extent that Samsung has taken certain claim construction positions for terms not construed by the Court, my analysis takes into account those constructions as detailed below.

### B.     Infringement

53.     I understand that to determine whether there is infringement of a patent:  (1) the claims of the patent must be construed; and (2) the properly construed claims must then be compared with the accused products.

54.     Where constructions have not been proposed, I have interpreted the claims as one of ordinary skill in the art would have at the time the relevant patent was filed.

55.     As the second step in the infringement analysis, I understand that the properly construed claim must be compared to the accused products.  I understand that an accused product may infringe a claim either literally or equivalently.  I understand from counsel that literal infringement exists when the accused product embodies each and every limitation of a given asserted claim.  If a product does not literally perform a limitation of the claim, it can still infringe under the doctrine of equivalents if the limitation it performs is insubstantially different from the claimed limitation.

56.     I understand that one test for determining equivalence is to determine whether the differences between the claimed limitation and the accused product are insubstantial.  I understand that another test for determining equivalence is to examine whether the step used by the accused product performs substantially the same function in substantially the same way to achieve

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          17

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

the textual data received by the analyzer server is received from external sources and is not "internal" to the analyzer server. That, however, does not mean by any stretch that the application like Word or email is a "client" and the analyzer server is a "server" in the traditional sense of client/server architectures in distributed systems. I also note that in this case Samsung relied on this very argument based on the file history to construe "action processor" as being "separate from a client," and the Court rejected that construction and reasoning.

### 2. "linking actions to the detected structures"

79. It is my opinion that Apple's construction for "linking actions to the detected structures" is consistent with the intrinsic record. I agree with Apple that such construction should be helpful to the jury and that the intrinsic record makes clear that the meaning of this term is indeed "associating detected structures to computer subroutines that cause the CPU to perform a sequence of operations on the particular structures to which they are associated." *See* '647 Patent at 2:31-34 ("Each action is a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked."); *see also id*. at 1:31-34; 2:36-41. Further, Apple's construction defines "actions" directly from the "Summary of Invention" section of the specification of the patent. '647 Patent at 2:30-41 ("Upon detection of a structure, the analyzer server links actions to the detected structure. Each action is a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked. An action may specify opening another application, loading the identified structure into an appropriate field, and closing the application. An action may further include internal actions such as storing phone numbers in an electronic phone book, addresses in an electronic address book, appointments on an electronic calendar, and external actions such as returning phone calls, drafting letters, sending facsimile copies and email, and the like.").

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

80. Further, Apple relied upon this definition of an action during the prosecution history. In particular, Apple distinguished the claimed invention from prior art directed to linking data strings to other data strings, explaining "[t]he linked actions [in the 647 Patent] enable execution of an action (page 16, line 22 to page 17, line 1), which is a computer subroutine causing a CPU to perform a sequence of operations." Mar. 15, 1999 Response to Office Action, at 8. Apple therefore defined an action consistently in the specification and the prosecution history and this definition should govern.

81. Samsung's construction—"creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure"— imports a specific, narrow, and improper requirement for how linking must be performed. Specifically, Samsung adds the requirement that "linking" means "creating a specified connection." One of ordinary skill in the art would not read this limitation into the claims. The '647 Patent does not use the word "link" to mean create a "specified" or "direct" connection." Instead, the '647 Patent consistently and repeatedly uses the words "link" and "associate" interchangeably. *See, e.g.*, '647 Patent at 1:66-2:2 (Description of the Background Art) ("Therefore, a system is needed that identifies structures, associates candidate actions to the structures, enables selection of an action and automatically performs the selected action on the structure."); 2:4-9 (Summary of the Invention) ("The present invention overcomes the limitations and deficiencies of previous systems with a system that identifies structures in computer data, associates candidate actions with each detected structure, enables the selection of an action, and automatically performs the selected action on the identified structure."); 2:12-20 (Summary of the Invention) ("The present invention has significant advantages over previous systems, in that the present system may incorporate an open-ended number and type of recognizable patterns, an open-

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)         28

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

ended number and type of pattern analysis units, and further that the system may enable an open-ended number and type (i.e. scripts, macros, code fragments, etc.) of candidate actions to associate with, and thus perform, on each identified structure."); 3:38-44 (Detailed Description of the Preferred Embodiment) ("The program 165 of the present invention is stored in RAM 170 and causes CPU 120 to identify structures in the data presented by application 167, to associate actions with the structures identified in the data, to enable the user to select a structure and an action, and to automatically perform the selected action on the identified structure."); 4:34-38 (Detailed Description of the Preferred Embodiment) ("For example, in an audio environment, user interface 240 may present the structures and associated actions to the user using voice synthesis and may enable selection of a pattern and action using voice or sound activation.").

82.     To the extent that a connection is required, that connection is merely an association between a detected structure and candidate actions to be performed on that structure. For example, the specification explains that "[u]pon identification of a structure in the text, parser 310 links the actions associated with the grammar to the identified structure . . . upon selection of the identified structure, user interface 240 can locate the linked actions."). '647 Patent at 4:64-5:5. Thus, the only linking that is required is between the detected structure and the candidate actions.

83.     Despite the disagreement regarding the proper construction of the Asserted Claims, as I explain below, the Samsung Accused Devices infringe under both Samsung's and Apple's constructions. I reserve the right to provide further opinions regarding other claim terms should Samsung assert they have a particular meaning.

### E.     Importance of the Patented Technology

84.     As I described above, the invention of the '647 Patent is particularly useful in today's mobile devices, which often prevent multiple applications from being shown simultaneously.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          29

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

document entitled "Comparative Evaluation Result" containing a "Usability Evaluation" comparing the iPhone with a Samsung device codenamed "Lismore." This document contains a side-by-side comparison with the iPhone browser, stating that it is "inconvenient to make a call after finding the number through [a] web search." It is noted that the iPhone allows a user to tap the phone number and dial it, while the Samsung device forces the user to "memorize the phone number" and "launch the Dialer to make the call." These inconveniences are part of what the '647 Patent was designed to avoid. The document further notes that an "improvement direction" would be to include the ability to directly call phone numbers found on the web.

87.  In addition, as described more fully below, Samsung has modified the publicly available Android messaging application so that it provides individualized context menus with multiple actions for each detected structure. For example, SAMNDCA11418669 is a document entitled "[Samsung android] Messaging UI." As shown below, this document contains a page that has, as shown below, a sample text message with three detected structures highlighted in blue, and three different context menus with associated actions for each respective detected structure.[5]

---

*(Cont'd from previous page)*

recognizing structures such as phone numbers and addresses and launching corresponding actions directly from the Messaging app).

[5] *See also, e.g.,* SAMNDCA630-06382677 (multiple context menus for structures in Messaging app).

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          31



88. In addition, I have reviewed Google documents discussing the importance of the patented technology. For example, one email from a member of Google's user experience group discussed the importance of the "interaction of text objects [with] other applications on the phone," for example, the ability to "select a phone number, an email address or a physical address and [the phone] will launch the dialer, email editor or maps respectively." GOOG-NDCAL630-00062054-57, at 55. In fact, this functionality was called "one of [Android's] most powerful features. *Id.* This same document also discusses the desirability of having multiple actions linked to detected structures, such as "Add to Address Book." *Id.* In addition, Google was aware of Apple's development of technology for the automatic detection of structures in data. *See, e.g.*, GOOG-NDCAL630-00004854 (email exchange among Google engineers stating "we should be able to do the same thing that was just shown at wwdc."). [6]

---

[6] I have also reviewed additional documents discussing Google's work to implement the accused functionality in Android. *See, e.g.,* GOOG-NDCAL630-00001622; GOOG-NDCAL630-
*(Cont'd on next page)*

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          32

Gibson, Dunn &
Crutcher LLP

Case 5:12-cv-00630-LHK   Document 1751-1   Filed 04/21/14   Page 11 of 19

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

## VI.   OVERVIEW OF THE SAMSUNG ACCUSED PRODUCTS

### A.   The Android Operating System

89.   The Android OS includes a Linux-based kernel, libraries, a set of frameworks that include core services, and a set of default applications. The Android OS is made publicly available. The code is available at http://source.android.com/, which is a website that is maintained by the Android Open Source Project and led by Google. *See* http://source.android.com/about/index.html. There have been several different versions of the Android OS, including Cupcake (1.5), Donut, (1.6), Éclair (2.1), Froyo (2.2), Gingerbread (2.3) Honeycomb (3.2), Ice Cream Sandwich (4.0), and Jelly Bean (4.1, 4.2). (*See, e.g.*, http://developer.android.com/about/dashboards/index.html.) As part of the Android OS platform, Google provides certain "stock" applications with each release of Android, including a web browser application and messaging application.

90.   Device makers, such as Samsung, can customize aspects of the Android platform and install it on devices that they sell. In addition to the software installed on the device when it is released ("Launch Release"), Samsung periodically releases software updates, known as Maintenance Releases, for the Accused Products.[7] These Maintenance Releases can include a new version of the Android operating system and new versions of applications on the device. As discussed more fully below, in my examination of the Samsung produced source code, I have

---

*(Cont'd from previous page)*

00001806; GOOG-NDCAL630-00004841; GOOG-NDCAL630-00004847; GOOG-NDCAL630-00004858 ; GOOG-NDCAL630-00027679; GOOG-NDCAL630-00035246; GOOG-NDCAL630-00037200; GOOG-NDCAL630-00037233; GOOG-NDCAL630-00037525; GOOG-NDCAL630-00039288; GOOG-NDCAL630-00045279; GOOG-NDCAL630-00055055; GOOG-NDCAL630-00055058; GOOG-NDCAL630-00055367; GOOG-NDCAL630-00055397; GOOG-NDCAL630-00060989; GOOG-NDCAL630-00062109; GOOG-NDCAL630-00062258.

[7] SAMNDCA630-00217804 at SAMNDCA630-00217804-23 (describing the OTA updating process used to update system and application software).

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)              33

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

concluded that Samsung has made no relevant changes to the public browser application that would affect my infringement analysis. I have also concluded that Samsung has made certain changes to the messaging application in certain of its devices, which I describe more fully below. But these changes do not affect my conclusion that the Messaging app on the Samsung Accused Devices infringes the '647 Patent.

### B. Samsung Accused Products

91. Samsung designs and sells mobile devices, including smartphones and tablet computers, which are based on the Android OS. A smartphone is a wireless phone that offers more advanced computing ability and connectivity than a conventional wireless phone. A smartphone can combine numerous functions, such as of a personal digital assistant, portable media player, camera, GPS, Wi-Fi, mobile broadband access, along with a wireless phone. A tablet computer is similar to a smartphone, in that it generally combines numerous functions including a personal digital assistant, portable media player, camera, GPS, Wi-Fi, mobile broadband access, and other mobile computing functionality, but generally without wireless phone capabilities. These devices generally incorporate touchscreens to allow user input.

92. I understand that mobile devices used, made, sold, or offered for sale in the United States by Samsung, or imported by Samsung into the United States, that run the Android OS include at least the following devices: Admire, Captivate Glide, Conquer 4G, Dart, Exhibit II 4G, Galaxy Nexus, Galaxy Note, Galaxy Note II, Galaxy Note 10.1, Galaxy Rugby Pro, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III, Galaxy Tab 2 10.1, Illusion, Stratosphere, and Transform Ultra. I understand that Apple accuses these devices of infringing Claims 1, 4, 6, 8, and 9 of the '647 Patent. For purposes of my report, I use the term "Samsung Accused Products" or "Accused Products" to refer to these devices. Unless otherwise noted,

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

person on the source code review computers at Samsung's outside counsel's offices and certain pages of source code for Samsung Accused Products. Attached as Exhibit 4 is a chart based on Samsung's interrogatory responses listing the different version of the Accused Products I believe infringe the '647 Patent. I also attach claim charts for the Accused Products at Exhibit 3 that reference specific source code supporting my analysis for each Launch and Maintenance Release bearing an asterisk. It is my opinion that Maintenance Releases not explicitly identified infringe in an identical manner to the preceding release for that device that is marked with an asterisk. In addition, while I identify certain source code in my report and attached claim charts, that source code is illustrative of the accused functionality and is not necessarily the exclusive source code for that functionality. I reserve the right to provide additional details, including additional citations to source code, in response to arguments made by Samsung or its experts. I also reserve the right to supplement my analysis for additional source code and other documentation as it is made available.

97. As described below, I conclude that the Samsung Accused Products meet each limitation of claims 1, 4, 6, 8, and 9 of the '647 Patent. I have also prepared and incorporate by reference here the claim charts in Exhibits 3, which describe in further detail how the Accused Products meet each limitation of the Asserted Claims.

98. I also note that the consistency between the various generations of the Android OS is expected, because new versions of the code will generally need to maintain compatibility with earlier versions in order to maintain compatibility between the core system applications, new applications, and newer and older versions of the Android OS. This same consistency is also expected between the public versions of Android and Samsung's proprietary versions thereof, and I have indeed observed that consistency in my source code review. In particular, while Samsung may seek to add functionality to differentiate its products from the Android products sold by other

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

manufacturers, such changes would be made with a mind to maintain compatibility between the core system applications, new applications, and the same newer and older versions of the Android OS. In other words, Samsung would be unlikely to change its version of Android in such a manner to make it incompatible with the expected functionality of the Android OS as a whole.

99. In the course of my study, I have reviewed sections of source code from Android OS code base versions 2.2, 2.3, 4.0, 4.1, and 4.2 all accessible from http://android.git.kernel.org, or from http://source.android.com/, which is a website that is maintained by the Android Open Source Project. *See* http://source.android.com/index.html. I reserve the right to use portions of this code beyond those cited specifically in my expert report. It is my understanding that Samsung obtains initial builds of the Android source code, and then may modify the initial build to customize it for use in Samsung products. *See* Jinhyung Kim Dep., 38:16-39:4. Based on my review of the public Android code and the Samsung-produced code I found that there were no differences relevant to my infringement analysis between the Android public platform version of the Browser application and the version on the Samsung Accused Products. My analysis is confirmed by Samsung's corporate representative, who testified that Samsung does not make relevant alterations to the Android Browser application. *See, e.g.,* Jinhyung Kim Dep., 186:186:2-23.

100. Based on my review of the public Android code and the Samsung-produced code, I found that certain differences exist between the Android public platform version of the Messaging application and the version on certain Samsung Accused Products, which I address below.

101. In light of the similarities among Accused Products, I have identified certain products in my analysis below that are representative of my infringement analysis. The Accused Browser Products fall into two groups: (1) devices running Froyo, Gingerbread, or Ice Cream

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)         39

Case 5:12-cv-00630-LHK   Document 1751-1   Filed 04/21/14   Page 15 of 19

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

price paid by STA and SEA for SEC's products is an artificial one created for tax purposes and not reflective of the true cost of goods. *See* Sheppard 01/24/2012 1843 Dep. Tr. at 62:18-63:1.

## VII. INFRINGEMENT OF THE '647 PATENT

107. I understand that Apple asserts that the Samsung Accused Products infringe claims 1, 4, 6, 8, and 9 of the '647 Patent. The following discussion includes my analysis of how the Samsung Accused Products meet each limitation of the Asserted Claims.

### A. Infringement by the Accused Browser Products

#### 1. Overview of the Android Browser

108. As part of the Android OS, Google provides a stock web browser application. I understand that the Browser on the Accused Browser Products is based on the publicly available Android web browser, and that Samsung does not make any relevant modifications to the source code. *See* [Jinhyung Kim 30(b)(6) transcript.]

109. In addition, Google corporate representatives submitted declarations and testified in this case that the accused Browser functionality has existed in Android since at least version 1.5 (Cupcake), and that there have been no changes in the accused functionality at least through Android version 4.0 (Ice Cream Sandwich) that are relevant to infringement of the '647 Patent. *See* April 23, 2012 Declaration of Cary Clark ("Clark Declaration"), ¶ 26 ; April 23, 2012 Declaration of Dianne Hackborn ("Hackborn Declaration"), ¶ 14 . I agree that there are accused functionality in the Accused Browser Products does not vary across Android OS versions.

#### 2. The Browser Has Already Been Found to Infringe the '647 Patent

110. The same web browser that is found in the Froyo, Gingerbread, and Ice Cream Sandwich versions of the Samsung Accused Devices was found to infringe claims 1 and 8 of the '647

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Specifications.)

131. Specifications and User Manuals detailing that the Accused Products include a memory storing information including program routines can be found at Accused Products Specifications and Accused Products User Manuals, referenced above.

e. **Claim 1 – (d) "an analyzer server for detecting structures in the data and for linking actions to the detected structures"**

132. As discussed above, the parties do not agree on the proper construction of this claim element. Regardless of whose construction is adopted, as I discuss below, it is my opinion that the Samsung Accused Products contain an analyzer server for detecting structures in data and for linking actions to the detected structures. To assist the reader I have organized this part of my declaration into two sub-sections: the first on the analyzer server's detection of structures in data, the second on its linking of actions to the detected structures. But to be clear, it is my opinion that the analyzer server for detecting structures in the data and for linking actions to the detected structures is a single claim element.

i **"detecting structures in the data"**

133. For the Browser applications in Froyo, Gingerbread and Ice Cream Sandwich devices, such as in the Ice Cream Sandwich versions of the Galaxy Nexus, the analyzer server program routines for detecting structures in data comprise the FindPartialAddress(), FindPartialEMail(), FindPartialNumber() and isFocusableText() methods of the CacheBuilder class. (CacheBuilder.cpp, L:2648-2860, L:1705-2522, SAMNDCA630-SC00071051-89.)[16]

134. The CacheBuilder class detects phone numbers, email addresses, and postal addresses

---

[16] Both Samsung and Google produced source code for the Galaxy Nexus. While I cite to code produced by Samsung, I have also reviewed corresponding code produced by Google, including GOOG-NDCAL-630-S-00004833-5024, 5178-80, 5181-84. I have also reviewed publicly available versions of the relevant source code. There are no differences among the different code versions for purposes of my analysis.

INITIAL EXPERT REPORT OF DR. TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)            48

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE




**Messaging app in Samsung Galaxy S III showing detected structures**          **Menu of linked actions**

177. As a general matter Accused Messaging Products running Froyo or Gingerbread follow the Android Messaging application provided with the public Android versions of Froyo and Gingerbread, which I describe in my infringement analysis below.[22]  The Samsung Admire is representative of these products.

178. For Accused Messaging Products running Ice Cream Sandwich and Jelly Bean, Samsung has created a proprietary Messaging application, which differs from the public version. The Samsung Galaxy S III is representative of these products.

179. I describe below the general functionality of the Messaging app in the Samsung accused products. I then provide my opinions regarding how each claim element is satisfied by the Accused Products containing a Messaging app.  When the user opens the Samsung Messaging

---

[22] One exception is the Galaxy Note running Gingerbread, which operates like the Accused Messaging Products running Ice Cream Sandwich and Jelly Bean.

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          67

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

sells, and offers to sell tablets that are not connected to a cellular network (i.e., Wi-Fi-only). *See* Cheong 06/24/2013 Dep. Tr. at 19:4-20:23; Denison 07/18/2013 Dep. Tr. at 17:6-18:16; Sheppard 12/21/2011 ITC Dep. Tr. at 77:5-15, 119:5-121:22, 139:7-140:1; Sheppard 01/24/2012 1846 Dep. Tr. at 27:11-28:10, 86:18-87:2.

294.   I understand that Samsung induces the carriers, retailers and other vendors to offer for sale and sell the Accused Products through a variety of acts, including offering incentives to the carriers. *See*, *e.g.,* "2012 New Sales & Marketing Plan," Aug. 23, 2012, SAMNDCA630-06034311, at 347-66 (AT&T), 367-80 (Sprint), 381-417 (T-Mobile), 418-33 (Verizon); "STA GS3 Marketing Plan," June 4, 2012, SAMNDCA630-06519666, at 676-86; "Channel Marketing Weekly Update, Sprint" Feb. 11, 2011, S-ITC-003856763, at 764-83; "Verizon Wireless Weekly Report," Apr. 17, 2010, S-ITC-003860399, at 422.

295.   In addition, the User Guides provided by Samsung to purchasers of the Accused Produce provide instructions on how to use Accused Products in a manner, such as calling phone numbers detected in the installed the Browser and Messaging applications, that infringe claims 1, 4, 6, 8, and 9 as discussed above. *See, e.g.*, Accused Product User Manuals.

296.   Further, I understand that, despite knowing of the '647 Patent since 2010, Samsung has modified the publicly available Android messaging application to remove what Samsung contends is a non-infringing alternative. Specifically, the publicly available Android messaging application provides a single context menu for multiple structures detected in a text message. While Samsung contends (and I disagree) that this is a non-infringing alternative, Samsung nevertheless modified the publicly available messaging app so that it provides separate context menus for each structure identified in a text message.

297.   Based on my experience, once functionality such as the infringing functionality that is

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)         114

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

embodied in several parts of the smartphone or tablet system is in place, it is rather difficult to remove or disable it.  Removing or disabling is not an impossible task but it would be time-consuming.  It would involve significant expenditure of time in engineering and testing.  Given that the infringing functionality infrastructure both for the Browser and Messaging applications appears to have originated from Google's Android code, it appears that it would involve having both Google and Samsung involved in the removal or disabling of the features.  Finally, given that the feature at issue is helpful to making the smartphone "smart" by making certain desired tasks seamless for the user and giving the user multiple choice of options (instead of, for example, a single option of merely dialing a phone number), one would expect that if a company embarked upon a design around, that the options it would then be able to give its user would be suboptimal and less desirable.

Text Intentionally Omitted

INITIAL EXPERT REPORT OF DR .TODD C.
MOWRY CONCERNING U.S. PATENT NO.
5,946,647 – CASE NO. 12-cv-00630-LHK (PSG)          115

Gibson, Dunn &
Crutcher LLP