# Exhibit 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| APPLE INC., a California corporation,<br><br>          Plaintiff,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>          Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**EXPERT REPORT OF DR. ALEX C. SNOEREN CONCERNING U.S. PATENT NOS. 6,847,959 AND  7,761,414**<br><br><br><br>**HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE**<br><br>**GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE** |

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

## I.      INTRODUCTION

1.      I have been asked by counsel for Apple, Inc. ("Apple") to provide an opinion as to whether certain Samsung products infringe United States Patent No. 6,847,959 ("the '959 Patent"), and 7,761,414 ("the '414 Patent"), which is assigned to Apple, Inc.   My opinions are set forth below in this report.

2.      If I am called as an expert witness, I expect to testify regarding my background, qualifications and experience relevant to the issues in this action, the technical subject matter of the '959 and '414 Patents, the accused Samsung products, and the Apple products that practice the claimed invention.

3.      I understand that there is still additional discovery taking place, and that there are current outstanding discovery issues relating to Samsung's and third-party document production.  I understand there are also still depositions remaining to be completed.  I therefore reserve the right to supplement my report should additional information be produced that is relevant to my analysis.

4.      My opinions are subject to change based on additional opinions that Samsung's experts may present and information I may receive in the future or additional work I may perform. With this in mind, based on the analysis I have conducted and for the reasons set forth below, I have preliminarily reached the conclusions and opinions in this report.

5.      In connection with my anticipated testimony in this Action, I may use as exhibits various documents produced in this Action that refer or relate to the matters discussed in this report.  I have not yet selected the particular exhibits that might be used.  In addition, I may create or assist in the creation of certain demonstrative exhibits to assist me in testifying.  Again, those exhibits have not yet been created.

## II.      EXECUTIVE SUMMARY

**A.      The '959 Patent**

   **1.      Overview of the '959 Patent**

6.      The '959 Patent is directed to the general problem of efficiently locating information across varying information sources, e.g., information stored locally on a device as well as information

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                  1

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

pace. Traditionally, instructions are executed serially in an order dictated by the computer program that is currently running. That is to say, a simple computer program can be thought of as a sequence of instructions, and the computer simply executes them in order. Now, some tasks can be more effectively described as a set of parallel tasks: for example, at a coffee shop you might have the job of taking orders at the cash register and the job of actually making the coffee at the espresso machine. Each one of these individual tasks—or sequences of instructions—is called a thread of control, or simply a thread. Hence, a multi-threaded program is one that is comprised of multiple tasks meant to be executed in parallel.

375.    How this parallel execution is effected depends a great deal on the actual computing hardware being employed.   However, generally speaking the goal is to make it seem like all the threads are concurrently making forward progress. Because computers are extremely fast, however, it is entirely possible that the hardware is actually only executing one thread at a time, and switching back and forth between these threads in rapid succession. Continuing with the coffee shop analogy above, a small shop may have one employee who serves the role of cashier and barista, moving back and forth between taking orders and making coffee between each customer. Contrast that situation with your local franchise espresso shop, which may have multiple employees, some manning the registers while others are pulling the shots. Similarly, so-called multi-core processors have multiple execution units (effectively multiple CPUs) within them, allowing them to actually execute several instructions simultaneously, so more than one thread can be physically running at the same time.

376.    Any fixed number of cores can only execute a finite number of threads simultaneously. It may be the case that more threads are available to run than can be scheduled at once. In that case, some component of the system—typically the operating system's scheduler—decides which thread(s) will receive the CPU(s) at any given time. Those threads that, due to the decision of the scheduler, are not currently assigned a CPU, but are available to run should the scheduler decide to assign them a CPU, are still considered to be running. Indeed, because schedulers in modern operating systems switch between running threads so rapidly, a user is unlikely to be aware that running threads are moving on and off of the CPU(s).

Gibson, Dunn
& Crutcher LLP

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                            136

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

397.     Under the Court's construction, two threads can be considered active during an overlapping time interval even when in some instances one or the other threads is blocked waiting for an event to occur.  For example, a UI thread would be considered active even if it is waiting for user input.  Similarly a synchronization processing thread can be considered active even if it is waiting for a network communication or an I/O event.  This is true for at least two reasons.  First, an "active" thread need not be running at a particular moment, particularly if there is nothing for the thread to do while it is waiting for input.  Indeed, one of skill in the art appreciates that UI threads are event-driven, in that they spend most of their time blocked waiting on asynchronous user-input events.  Similarly, threads that process network data also typically block awaiting network activity.  In each case, in the context of the '414 Patent one of skill in the art would describe these threads as running, as they are able to be scheduled the moment such an event occurs.  Second, even if one or the other of two threads that are being executed is momentarily blocked, it does not mean that they are mutually exclusive and therefore can be concurrently executed.  So in the previous example, the UI thread waiting for user input and the synchronization thread waiting for I/O events could both unblock at the same time due to, for example, the simultaneous arrival of a network packet and a user's keystroke, and would therefore both be simultaneously available to execute.  The scheduler will choose which will execute first and rapidly switch between the two.

        **d.**        **wherein the at least one synchronization processing thread is provided by a synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database.**

398.     Claim 11 further requires that the synchronization processing thread be provided by a synchronization software component that is configured to synchronize the structured data from the first database with the structured data from a second database.

399.     The '414 Patent distinguishes synchronization in the invention from prior art systems, stating that in prior systems:

> The handheld computer merely acts as a storage device by vending its storage memory, such as a hard drive or a flash memory, to the host computer which, through

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                145

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

456.    The synchronization processing threads provided by the Sync Adapters execute "concurrently" with the UI threads for the Email, Gmail, Calendar and Contacts applications – the user-level non-synchronization processing threads.  The threads provided by the sync adapters for performing synchronization operations are background threads.  Android executes these threads concurrently, *i.e.*, both threads are active during a short, overlapping time interval, generally one that is not user perceptible, and Android will rapidly switch between execution of these threads as they become ready to run. This allows the user to continue to be able to access and edit data in the user interface while the Sync Adapter is carrying out synchronization operations in the background.

457.    In Samsung's Contentions[90] at pages 92-93 and 126-128 Samsung states that the UI thread is not executing "concurrently" with the Sync Adapter thread because only one thread can write to the SQLite database at a given time and any other threads attempting to write to that same SQLite database will block until the original write is complete. I disagree.  First, as I explained in the Claim Analysis section, the user-level non-synchronization processing thread need not directly write to the first database, but rather can allow for the editing of data in that database by communicating with other software to write to that database.  In the Accused Products, such as the Samsung Galaxy S III the UI thread does not perform read and write operations.  Data is retrieved from the database through communication with the corresponding Content Provider and presented to the user in the user interface for access and editing.  Even when the database is locked for write operations, the UI thread is still fully active allowing a user to access and edit the structured data presented before them.

458.    Second, Samsung's contentions completely disregard the more common scenario where the UI and synchronization threads are not trying to write to the corresponding database on the device at the same exact instant.  The Sync Adapters perform synchronization operations in their synchronization thread that do not involve data being written to the database.  Thus, even when the database on the device is locked and edits made in the user interface are being written to the structured data stored therein, the Sync Adapter can still perform synchronization operations, including sending and receiving data to the remote server.  Likewise, even when the database on the

---

[90]  Samsung's response to Apple's Interrogatory No. 24.

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                                    169

Gibson, Dunn
& Crutcher LLP

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE
GOOGLE'S HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

1

2          I declare under penalty of perjury that the foregoing is true and correct.

3

4   Dated:    August 12, 2013

Alex C.  Snoeren

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn
& Crutcher LLP

EXPERT REPORT  OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                              197