United States Patent and Trademark Office

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Assignments on the Web >** Patent Query

**JOINT TRIAL EXHIBIT NO. 24**

United States District Court
Northern District of California
No. 12-CV-00630-LHK (PSG)

*Apple Inc. v. Samsung Elecs.*

Date Admitted:_____ By:_____

# Patent Assignment Abstract of Title

## *NOTE:Results display only for issued patents and published applications. For pending or abandoned applications please consult USPTO staff.*

**Total Assignments: 3**

**Patent #:** 6226449    **Issue Dt:** 05/01/2001    **Application #:** 08838286    **Filing Dt:** 04/17/1997

**Inventors:** HISASHI INOUE, KEIJI NAGAYAMA, TOMISHIGE YATSUGI

**Title:** APPARATUS FOR RECORDING AND REPRODUCING DIGITAL IMAGE AND SPEECH

### Assignment: 1

**Reel/Frame:** 008504/0456    **Recorded:** 04/17/1997    **Pages:** 2

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

| | |
|---|---|
| **Assignors:** INOUE, HISASHI | **Exec Dt:** 04/07/1997 |
| NAGAYAMA, KEIJI | **Exec Dt:** 04/07/1997 |
| YATSUGI, TOMISHIGE | **Exec Dt:** 04/07/1997 |

**Assignee:** HITACHI, LTD.
6, KANDA SURUGADAI 4-CHOME, CHIYODA-KU
TOKYO, JAPAN

**Correspondent:** ANTONELLI, TERRY, STOUT & KRAUS, LLP
MELVIN KRAUS
1300 NORTH SEVENTEENTH STREET
SUITE 1800
ARLINGTON, VIRGINIA 22209

### Assignment: 2

**Reel/Frame:** 026535/0861    **Recorded:** 05/19/2011    **Pages:** 5

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** HITACHI, LTD.    **Exec Dt:** 05/12/2011

**Assignee:** HITACHI CONSUMER ELECTRONICS CO., LTD.
2-1, OTEMACHI 2-CHOME, CHIYODA-KU
TOKYO, JAPAN

**Correspondent:** ANTONELLI, TERRY, STOUT & KRAUS, LLP
1300 NORTH 17TH STREET
SUITE 1800
ARLINGTON, VA 22209

### Assignment: 3

**Reel/Frame:** 026850/0763    **Recorded:** 09/02/2011    **Pages:** 5

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** HITACHI CONSUMER ELECTRONICS CO., LTD.    **Exec Dt:** 08/10/2011

**Assignee:** SAMSUNG ELECTRONICS CO., LTD.
416, MAETAN-DONG, YEONGTONG-GU
SUWON-SI, GYEONGGI-DO, KOREA, REPUBLIC OF

**Correspondent:** JEFFERSON IP LAW, LLP
1130 CONNECTICUT AVE., NW
SUITE 420
WASHINGTON, DC 20036

Search Results as of: 05/21/2012 07:40 PM
If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.3.1

assignments.uspto.gov/assignments/q?db=pat&qt=pat&reel=&frame=&pat=6226449&pub=&asnr=&asn…    1/2

SAMNDCA630-00835429

**JOINT TRIAL EXHIBIT NO. 24, Page 1 of 28**

# Hitachi PATENT SALE AGREEMENT

**THIS PATENT SALE AGREEMENT** (this "**Agreement**"), is made effective as of July ____, 2011 (the "**Effective Date**"), by and between Hitachi Consumer Electronics Co.,Ltd., a Japanese corporation with an address at 2-1, Otemachi 2-chome, Chiyoda-ku, Tokyo, Japan ("**Hitachi**"), and Samsung Electronics Co., Ltd., a Korean corporation with an address at 416 Maetan 3-Dong, Yeongtong-Gu, Suwon , Gyeonggi-Do 443-742, Korea ("**Assignee**"). Hitachi and Assignee each are referred to herein separately as "**Party**" and are referred to herein collectively as the "**Parties**."

# RECITALS

A.     Hitachi, in course of research and development in the fields of various products and equipment, filed and was granted related patents;

B.     Assignee desires to acquire the patents; and

C.     Hitachi desires to sell and assign the patents, and Assignee desires to receive such assignment, under the terms and conditions set forth herein.

## AGREEMENT

In consideration of the mutual covenants and obligations set forth below, Hitachi and Assignee hereby agree as follows:

1.     **DEFINITIONS**

1.1 "**Affiliate**" means, with respect to an entity, a person, corporation, partnership, or other entity that controls, is controlled by or is under common control with such entity, but only for so long as such control continues to exist. For the purposes of this Section 1.1, the word "control" (including, with correlative meaning, the terms "controlled by" or "under common control with") means the actual power, either directly or indirectly through one or more intermediaries, to direct the management and policies of such entity, whether by the ownership of at least fifty percent (50%) of the voting stock of such entity, or by contract or otherwise.

1.2 "**Assigned Patents**" shall mean the patents listed in Exhibit A  except for the Excluded Patents which shall be excluded from this definition.

1.3  "**CATV Broadcasting Companies**" shall mean Comcast Corporation, Time Warner Cable Inc., Cox Enterprises, Inc., Charter Communications Inc., Cablevision Systems Corporation, Bright House Networks, and Affiliates of the above listed companies.

1.4  "**Copyright Patents**" shall mean all patents listed as Family 3, Family 5, Family 6, and Family 7 in Exhibit A.

1.5  "**Excluded Patents**" shall mean JP3,149,627, JP3,675,442, JP4,353,306, JP4,353,307, and JP3,075,063.

1.6  "**Hitachi's Knowledge**" shall mean the actual knowledge after reasonable investigation (as of Payment Date) of the managing directors, the patent engineers, patent attorneys and licensing attorneys, in each case who as of the Payment Date are members of the Intellectual Property Group of Hitachi, Ltd. or are working under the directions of such members.

1.7  "**Hitachi Mobile Unit Patents**" shall mean all Hitachi's Licensed Patents that were: (i) internally administered, assigned or controlled by the Mobile Phone Business Unit, and (ii) filed by Hitachi, Ltd. to each

Highly Confidential - Attorneys' Eyes Only

patent office prior to April 1, 2004. Those patents with respect to which the Mobile Phone Business Unit of Hitachi, Ltd submitted invention disclosure sheet to the patent department of Hitachi, Ltd. prior to April 1, 2004 are also deemed to be Hitachi Mobile Unit Patents.

1.8 **"Existing Licenses"** shall mean any and all contracts, encumbrances, and agreements in effect as of the Effective Date pursuant to which Hitachi or any of its Affiliates granted or agreed to grant any licenses, authorizations to practice, immunities or covenants under the Assigned Patents (including, without limitation, any covenant to grant license, covenants not to sue or assert rights, under any of the Assigned Patents).

1.9 **"Existing Licensee"** shall mean any party or entity (or its or their affiliates if so provided under Existing Licenses) to which any licenses or covenants were, are or are required in the future to be granted pursuant to any of the Existing Licenses.

1.10    **"Licensed Patents"** shall mean (i) for Hitachi, any patents Hitachi owns and has the right to grant licenses to the Assignee, without compensation to third parties, during the License Term; and (ii)  for Assignee, any patents Assignee owns and has the right to grant licenses to Hitachi, without compensation to third parties, during the License Term, that are or were internally administered, assigned or controlled by Assignee's Mobile Communication Business Unit  or its predecessor. Notwithstanding the foregoing, for both Parties, patents subject to any patent pool activities shall be excluded from this definition. Assignee's organizational structure showing the Mobile Communication Business Unit and other business units as of the Effective Date is attached as Exhibit D.

1.11    **"Licensed Products"** shall mean, for both Parties, mobile phone products, including handset devices, subscriber units, tablets, and any other type of device or services manufactured, sold, or performed by Assignee's Mobile Communication Business Unit as of the Effective Date, that are marketed or sold under the brand name or other indicia of either Party.  For clarity, televisions, personal computers, digital photo frames, and all products and services of business units of Assignee other than Assignee's Mobile Communication Business Unit as of the Effective date shall be excluded from this definition for both Parties.  Notwithstanding, Hitachi's Licensed Product shall include any mobile phone products, handset devices, and related service of Hitachi, including forty-nine percent (49%) sales of Casio Hitachi Mobile Communications Co., Ltd.(hereinafter referred to as "CHMC")

1.12    **"License Term" shall** mean five (5) years from the Effective Date of this Agreement.

1.13    **"Mobile Phone Business Unit"** shall mean Mobile Information and Appliance Division of Hitachi, Ltd. which i) marketed mobile phone products, related parts, and related service, and ii) was spun off from Hitachi, Ltd., to CHMC as of April 2004.

1.14    **"Transitional Period License"** shall mean any and all contracts, encumbrances, and agreements which come into effect after the Effective Date but before the completion of recordation of the assignment of every Assigned Patents with the appropriate patent office, pursuant to which Hitachi or any of its Affiliates grant or agree to grant any licenses, authorizations to practice, immunities or covenants under the Assigned Patents (including, without limitation, any covenants not to sue or assert rights under any of the Assigned Patents) excluding any Assigned Patents in the United States  to entities not listed in Exhibit C.  For the avoidance of doubt, a Transitional Period License may not be granted to any entity in Exhibit C. Furthermore, any Assigned Patent in the United States may not be included in a Transitional Period License.

1.15    **"Transitional Period Licensee"** shall mean any party or entity (or its or their affiliates if so provided under a Transitional Period License) excluding the entities in Exhibit C to which any licenses or covenants were, are or are required in the future to be granted pursuant to any Transitional Period License.  For the avoidance of doubt, any entity in Exhibit C may not be a Transitional Period Licensee.



Highly Confidential - Attorneys' Eyes Only                    SAMNDCA630-00835431

2.    **ASSIGNMENT**

    **2.1 Assignment.** Subject to all (i) Existing Licenses, (ii) all Transitional Period Licenses, (iii) Hitachi's reservation of rights set forth in Section 4, and (iv) payment by Assignee in full of the amount set forth in Section 3.1, Hitachi hereby assigns and transfers (according to Section 2.2) to Assignee all right, title and interest that Hitachi has in and to the Assigned Patents (including, without limitation, the right to sue for any and all past, present and future damages for infringement, misappropriation or violation of rights related to any of the Assigned Patents). Hitachi further assigns, subject to all Existing Licenses, all Transitional Period Licenses Hitachi's reservation of rights set forth in Section 4 and payment by Assignee in full of the amount set forth in Section 3.1, all rights in, and empowers Assignee to continue to prosecute, any applications included in the Assigned Patents.

    **2.2 Transfer Procedure.** Assignee shall duly file, and shall cause to record and perfect the transfer of the Assigned Patents with the appropriate patent offices on or before sixty (60) days after the Effective Date. Assignment/recordation documents to be filed with the appropriate patent offices to record the assignment of the Assigned Patents shall substantially be in the form of Exhibit B attached hereto. If Exhibit B does not include assignment documents necessary to be filed in certain countries, Assignee shall prepare such documents which shall be substantially the same as the form set forth in Exhibit B. If there are any inconsistencies between such assignment/recordation documents and the terms and conditions provided in this Agreement, the terms and conditions of this Agreement shall prevail. Hitachi's sole obligation in the course of the assignment procedure is to sign and ship to Assignee those assignment/recordation documents provided in Exhibit B within seven (7) days from the Payment Date. For clarity, except as set forth in this Agreement, Hitachi has no obligation to deliver or transfer any of its internal documents to Assignee or instruct its outside law firm to forward any documents to Assignee.

    **2.2.1 Pending Office Action.** If, prior to and within two (2) months after the effective transfer of the Assigned Patents to Assignee, Hitachi receives any notices of action from any applicable patent office with respect to any patent applications included in the Assigned Patents, Hitachi shall promptly give notice to the Assignee thereof. Hitachi shall not be required to respond to such notices of action nor shall Hitachi be required to maintain any application or similar pending matter concerning such notices of action. Notwithstanding the above, Hitachi shall respond to an office action issued by a patent office if (1) Assignee provides detailed instructions within twenty (20) days after notice by Hitachi to Assignee of receipt of the office action, and (2) Hitachi will not be held responsible for the statements made in the office action or for decisions made by Hitachi to respond to the office action. Hitachi does not have to act if no instruction is provided by the Assignee as set forth in the foregoing. Assignee shall, within thirty (30) days after the Effective Date, provide Hitachi with a list of patent counsels that will handle the continued prosecution and maintenance of the Assigned Patents. If Assignee desires to continue to retain the same patent counsels that Hitachi has utilized for the Assigned Patents, Assignee shall state as such in the aforementioned list.

    **2.2.2 File Wrapper Transfer.** Within six (6) months after the Effective Date Hitachi shall deliver to Assignee at Hitachi's expense the file wrapper (correspondences between the relevant Patent Office and Hitachi, Ltd.'s Intellectual Property Group) in Hitachi's possession as of the Effective Date, for each of the Assigned Patents ("File Wrapper"). Additionally, the copies of agreements assigning ownership of the Assigned Patents from the inventors and any other prior owners to Hitachi as applicable, and initial invention disclosure sheets provided by inventors of the Assigned Patents to Hitachi, Ltd.'s Intellectual Property Group, but only to the extent they exist and in the possession of Hitachi as of the Effective Date shall be included within the meaning of File Wrapper; provided, however, that nothing contained in this Agreement, or done in pursuance of this Agreement shall require Hitachi to disclose to Assignee any information which contains Hitachi confidential and/or proprietary information (including third-party confidential information covered by valid non-disclosure agreements), and/or information to which any attorney-client privilege or the attorney work-product doctrine applies.

Assignee hereby acknowledges and recognizes that, in certain countries, including but not limited to Japan, recordation of patent transfer with the appropriate authorities is a prerequisite for the rightful transfer of the patent. Until Assignee properly records each assignment of the Assigned Patents with the appropriate patent

3



Highly Confidential - Attorneys' Eyes Only        SAMNDCA630-00835432

office in those certain countries, such unrecorded Assigned Patents may be licensed to Transitional Period Licensee. However, in no event shall any of the entities in Exhibit C be granted a Transitional Period License. Such a license shall be null and void. Any Assigned Patents in the United States shall not be included in a Transitional Period License. Such a license shall be null and void. Hitachi shall use reasonable efforts not to intentionally enter into a Transitional Period License.

**2.3 Costs and Expenses.**



**2.4 Limitations.** No license, immunity, ownership interest, or other right is granted under this Agreement, either directly or by implication, estoppel, or otherwise, except with respect to the Assigned Patents and Licensed Patents as expressly set forth herein.

**3.   PAYMENT**

**3.1 Payment.**



**3.2 Taxes.** All taxes imposed as a result of the existence of this Agreement or the performance by the Parties of their obligations hereunder shall be borne and paid by the Party required to do so by applicable law; *provided* that if Assignee is required by any applicable law or tax treaty to withhold any income taxes levied by the applicable governmental entity on any payment to be made by Assignee to Hitachi hereunder, Assignee shall

4

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835433

furnish Hitachi with official tax receipts or other evidence issued by the applicable tax authority in order to allow Hitachi to claim any national income tax credit in respect of any such taxes so withheld and paid to such government. Notwithstanding the foregoing, if a treaty for the avoidance of double taxation exists as of the Effective Date between Japan and any country under the law of which Assignee is subject to taxation as a result of the existence of this Agreement or Assignee's performance of its obligations hereunder, Assignee shall, prior to the payment of the Consideration, complete all applicable documents and procedures required to claim a tax exemption or a tax reduction under such treaty.

**4.    HITACHI'S RESERVED RIGHTS**

**4.1 Grant of License.** Hitachi hereby reserves and retains, and Assignee shall grant to Hitachi and, as specifically set forth in (a)-(j), its Affiliates including Hitachi, Ltd and Affiliates of Hitachi, Ltd., and Hitachi or Hitachi, Ltd's successors only in the event of the complete sale or divestiture of Hitachi or Hitachi Ltd., the following rights set forth in (a) – (j). For avoidance of doubt, Hitachi or its Affiliates will not lose its license or sublicense as a result of not meeting any requirements for registering licenses. Such reserved right and license shall include:

(a)    the right of Hitachi and any of its Affiliate, including those purchased or formed after the Effective Date, to practice the Assigned Patents including the rights to develop, have developed, make, have made, use, have used, sell, offer to sell, import, export and otherwise transfer or dispose of any product, service, method or process under the Assigned Patents;

(b)    the right of Hitachi and any of its Affiliates to grant fully paid-up sublicenses and covenants under the Assigned Patents to any Existing Licensee pursuant to the Existing Licenses; the right of Hitachi and any of its Affiliates to grant fully paid up sublicenses and covenants under the Assigned Patents to any Transitional Period Licensee pursuant to the Transitional Period Licenses;

(c)    the right of Hitachi and any of its Affiliates to grant fully paid-up sublicenses and covenants under the Assigned Patents to any third party who purchase a business unit or a subsidiary of Hitachi or its Affiliates on condition that (i) the third party purchases substantially all or the entirety of such business unit or subsidiary and (ii) such license shall be limited to the size of the business unit or subsidiary at the time of purchase by the third party;

(d)    the sole right of Hitachi to grant fully paid up sub-licenses and covenants under the Assigned Patents to Sharp Corporation, Panasonic Corporation, Toshiba Corporation, Fujitsu, Ltd., and any of their respective Affiliates ("Renewal Entities") to develop, have developed, make, have made, use, have used, sell, offer to sell, import, export and otherwise transfer or dispose of any product, service, method or process, but solely for renewal of the agreements with the Renewal Entities existing as of the Effective Date;

(f)    the sole right of Hitachi to grant fully paid up sub-licenses and covenants under the Assigned Patents to NEC Corporation and NEC Casio Mobile Communications, Ltd., and any of their respective Affiliates ("NEC Entities") to develop, have developed, make, have made, use, have used, sell, offer to sell, import, export and otherwise transfer or dispose of any product, service, method or process;

(g)    the sole right of Hitachi to grant fully paid up sub-licenses and covenants under Family 5 of the Assigned Patents to any entity headquartered in Japan ("Japanese Entities"), to develop, have developed, make, have made, use, have used, sell, offer to sell, import, export and otherwise transfer or dispose of any product, service, method or process;

(h)    the sole right of Hitachi to grant fully paid up sub-licenses and covenants under the Copyright Patents to CATV Broadcasting Companies to develop, make, use, sell, offer to sell, import, export and otherwise transfer or dispose of any product, service, method or process to the extent that CATV Broadcasting Companies provide content distribution service and equipments related thereto and use such equipments (for the avoidance of doubt, sublicenses to CATV Broadcasting Companies shall not pass-through nor extend to equipment manufacturers nor include the right to have made equipment from manufacturers);

Highly Confidential - Attorneys' Eyes Only                SAMNDCA630-00835434

(i)     the right of Hitachi and any of its Affiliates to obtain past, present, and future royalties and other consideration given or to be given in exchange for rights with respect to the Assigned Patents arising out of or accruing under any Existing Licenses, together with any and all such royalties and other consideration arising out of or accruing under any license or sublicense granted by Hitachi pursuant to this Section 4.1; and

(j)     the right of Hitachi and any of its Affiliates to grant a release of any claims for past infringement of the Assigned Patents to any licensee or sublicensees of Hitachi under this Section 4.1 (including, without limitation, Affiliates of Hitachi and any licensee under an Existing License).

The term of such reserved right and license set forth in Section 4.1 shall be from the Effective Date until the expiration of the last to expire of the Assigned Patents. In the event that, after the Effective Date, any of Hitachi's Affiliates ceases to be an Affiliate of Hitachi but where Hitachi still holds at least twenty percent (20%) of the voting stock of such entity, the terms of this Agreement shall continue in full force and effect with respect to such former Affiliate limited to Section 4.1(a). However, such continued rights shall not be applicable to any third parties acquiring such former Affiliate if such former Affiliate did or does not have a product or service that would infringe a claim of an Assigned Patent.

**4.2 Existing Licenses.** Assignee acknowledges and agrees, on behalf of itself, its Affiliates and each of their respective successors and assigns, that assignment of Hitachi's ownership interest in the Assigned Patents is made subject to the terms and conditions of the Existing Licenses. With respect to the subject matter of this Agreement, Assignee agrees not to knowingly interfere with: (i) any contractual relationship between Hitachi or its Affiliates and any of the Existing Licensees and (ii) the benefits derived from such Existing Licenses. Assignee further agrees not to challenge the validity and enforceability of the Existing Licenses on the grounds that such agreements were not of record, or that Assignee, its Affiliates, or their respective successors or assigns had no notice of, or were otherwise unaware of, such licenses or covenants. If Assignee grants subsequent rights to any third parties with respect to the Assigned Patents, it shall do so subject to the licenses reserved by Hitachi, its Affiliates and the Existing Licensees. If Assignee makes a claim under one or more of the Assigned Patents against Hitachi, its Affiliates, any of the Existing Licensees, or any of the Transitional Period Licensees, Assignee shall indemnify Hitachi, its Affiliates and the Existing Licensees from all losses arising therefrom. Prior to Assignee making a claim, Hitachi shall provide Assignee with a good faith determination of whether an entity identified by the Assignee (an "Identified Entity") has not been directly licensed. Such determination will be made by Hitachi within thirty (30) days after Assignee provides Hitachi (i) the identity of the Identified Entity and (ii) information regarding relevant products made or sold by such Identified Entity sufficient for Hitachi to determine the status of any license. Notwithstanding, if a request from the Assignee is provided to Hitachi more than two years after the Effective Date, Hitachi shall have forty-five (45) days after receipt of (i) and (ii) above to make a determination. Hitachi shall deliver the result to Assignee at the notice address in Section 8.1 within five (5) days after such determination. If subsequent and contrary to Hitachi's determination, the Identified Entity is found to have a direct license to the Assigned Patents, then the Assignee has no obligation to indemnify the Identified Entity. Furthermore, if Hitachi fails to provide the license information within thirty-five (35) days after receiving the items in (i) and (ii) above, then the Assignee has no obligation to indemnify the Identified entity. Assignee agrees that any sale to subsequent assignees of the Assigned Patents is subject to the Existing Licenses. .

**4.3 Limitations Against Hitachi Customers**. Assignee hereby agrees not to (1) assert or (2) permit any of its Affiliates or successors in interest to the Assigned Patents to assert, the Assigned Patents against any direct or indirect distributors and or customers of Hitachi or its Affiliates on account of the development, manufacture, use, sale, offer to sell, import, export or other transfer of any products or services made, had made, had developed, leased, sold or otherwise transferred by Hitachi or its Affiliates, and only with respect to such products and/or services. For the avoidance of doubt, the scope of this Section 4.3 is limited to the patent exhaustion doctrine.

**4.4 Registration of Licenses.** Upon the request of Hitachi and to the extent required by law, Assignee shall take all actions necessary to register any licenses or sublicenses of Hitachi, its Affiliates, the Existing Licensees or any other party to which licenses or sublicenses may be granted or permitted pursuant to this

6

Section 4 at any patent office or other applicable authority as directed by Hitachi. Hitachi shall reimburse Assignee for the full amount of such registration costs and fees, without holdback or setoff, within sixty (60) days following the delivery by Assignee of an invoice therefore. For clarity, registration of licenses with the patent offices, in countries where registration of licenses is necessary for such licenses to be effective against subsequent owners of the Assigned Patents, shall be deemed to be "required by law" under this Section 4.4.

5.    **CROSS LICENSE**

**5.1 Hitachi License Grant.** Subject to the terms and conditions of this Agreement, Hitachi hereby grants to Assignee and its Affiliates, a non-exclusive, non-transferable, worldwide, royalty-free, fully paid-up right and license, under Hitachi's Licensed Patents during the License Term:

(a)    to develop, have developed, make, use, have used, sell, offer to sale, import, export and otherwise transfer or dispose of Licensed Products;

(b)    to have made Licensed Products by a third party manufacturer for sale only to Assignee and/or its Affiliates; and

(c)    to practice any method claimed in Hitachi's Licensed Patents in connection with the exercise of the rights set forth in clauses (a) and (b).

**5.2** Notwithstanding the preamble of this Section 5.1, the licenses granted to the Assignee and its Affiliates pursuant to Section 5.1 shall continue, solely with respect to Hitachi Mobile Unit Patents, for the lives of those Hitachi Mobile Unit Patents.

**5.3 Assignee License Grant.** Subject to the terms and conditions of this Agreement, Assignee hereby grants to Hitachi and its Affiliates a non-exclusive, non-transferable, worldwide, royalty-free, fully paid-up right and license, under Assignee's Licensed Patents, during the License Term:

(a)    to develop, have developed, make, use, have used, sell, offer to sale, import, export and otherwise transfer or dispose of Licensed Products;

(b)    to have made Licensed Products by a third party manufacturer for sale only to Hitachi and/or its Affiliates; and

(c)    to practice any method claimed in Assignee's Licensed Patents in connection with the exercise of the rights set forth in clauses (i) and (ii).

**5.4 Assignee Release.** Assignee hereby irrevocably releases and forever discharges Hitachi and its Affiliates from any and all claims, damages, and liabilities that arise from or relate to any of Assignee's Licensed Patents prior to the Effective Date, predicated on any of Hitachi's Licensed Product, or the use, making, having made, sale, offer for sale, importation or other exploitation or disposition thereof. For clarity, Assignee's release shall include CHMC to the extent of forty-nine percent (49%) of sales of CHMC as provided in Section 1.11.

**5.5 Hitachi Release.** Hitachi hereby irrevocably releases and forever discharges Assignee and its Affiliates from any and all claims, damages, and liabilities that arise from or relate to any of Hitachi's Licensed Patents prior to the Effective Date, predicated on any of Assignee's Licensed Product or the use, making, having made, sale, offer for sale, importation or other exploitation or disposition thereof.

**5.6 No Implied Licenses.** Each Party hereby retains all rights not expressly granted by this Agreement. To the fullest extent permitted by applicable law, each Party hereby disclaims any and all implied licenses, immunities and other rights. In addition, this Agreement provides no licenses, immunities or other rights to any



7

party hereto under any trademarks or trade names, copyrights, mask work rights or trade secrets. The Parties acknowledge and agree that the licenses and releases granted by each Party under this Agreement are limited to those expressly set forth in this Agreement, and no rule of interpretation may be applied to otherwise affect any Party's right to exclude others from practicing the claims of such Party's Patents.

**5.7 Merger and Acquisition.** In the event that either Party merges with, acquires and/or is acquired by any third party during the Term of this Agreement (Merging Party), either the Merging Party or its successor shall continue the Merging Party's obligations, including granting the licenses, releases, and any other rights under this Agreement to the other Party; provided, however, such licenses, releases, and rights granted herein to Merging Party shall not extend to the products or services of the third party which were not provided by the Merging Party prior to such merger and/or acquisition, and such license, releases, and any other rights of the Merging Party shall be limited to the sales revenue of the business at the time of such event.

If the third party, which merges with, acquires and/or is acquired by Merging Party, has an existing patent license agreement with the other Party and is licensed by the other Party under one or more patents of the other Party ("Third Party Agreement"), then the third party's rights and obligations under the Third Party Agreement, including timely making any payments, is not affected by the existence of this Agreement and continues in accordance with the Third Party Agreement.

6. **REPRESENTATIONS AND WARRANTIES**

**6.1 Representations and Warranties of Assignee.** As of the Effective Date, Assignee hereby represents and warrants to Hitachi, as a material inducement for Hitachi's entry into this Agreement, as follows:

(a) Organization. Assignee is a corporation validly existing and in good standing under the laws of its jurisdiction of incorporation or formation; and

(b) Authority. Assignee's execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary group(s) within Assignee. This Agreement constitutes the valid and binding agreement and obligation of Assignee, enforceable against Assignee in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally from time to time in effect, and to general equitable principles.

**6.2 Representations and Warranties of Hitachi.** As of the Effective Date and the Payment Date, Hitachi hereby represents and warrants to Assignee, as a material inducement for Assignee's entry into this Agreement, as follows:

(a) Organization. Hitachi is a corporation validly existing under the laws of its jurisdiction of incorporation or formation;

(b) Authority. Hitachi's execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by necessary group(s) within Hitachi. This Agreement constitutes the valid and binding agreement and obligation of Hitachi, enforceable against Hitachi in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally from time to time in effect, and to general equitable principles;

(c) No Conflict or Violations. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby does not and shall not violate any statute, law, or court order of any competent and relevant court;

8

Highly Confidential - Attorneys' Eyes Only            SAMNDCA630-00835437

(d)   Hitachi is the sole owner of the Assigned Patents; it has the right to transfer, sell, and otherwise assign the Assigned Patents under the conditions set forth in the Agreement;

(e)   To Hitachi's Knowledge, (i) Hitachi has not directly granted patent licenses under the Assigned Patents to the third parties set forth in Exhibit C-1, (ii) Hitachi has not directly granted patent licenses under the Assigned Patents to third parties set forth in Exhibit C-2 with respect to products and services provided by such third parties after the Payment Date, (iii) Hitachi has not directly granted patent licenses under the Assigned Patents to third parties set forth in Exhibit C-3 with respect to mobile phones without plasma displays/modules, (iv) Hitachi has not directly granted patent licenses under the Assigned Patents to third parties set forth in Exhibit C-4 with respect to digital cameras provided by such third parties after the Payment Date, and (v) with respect to Microsoft Corporation ("Microsoft"), Hitachi represents and warrants that Hitachi has no direct patent license agreement with Microsoft with respect to the Assigned Patents expressly granting rights to mobile devices using the Windows Phone 7.0 operating system manufactured and sold by Microsoft;

(f)   To Hitachi's Knowledge, there are no lawsuits or legal proceedings before any court, arbitrator or governmental or regulatory official or office that are pending or threatened involving the Assigned Patents except for those with relevant authorities including patent offices in relation to prosecution of the Assigned Patents (for the avoidance of doubt, if a lawsuit or legal proceeding is initiated or threatened by a third party between the Effective and Payment Dates involving the Assigned Patents, then Hitachi shall promptly notify Assignee; such a lawsuit or legal proceeding not initiated nor threatened by Hitachi or its Affiliates shall not constitute breach of this Section 6.2(f));

(g)   To Hitachi's Knowledge, all listed inventors in the Assigned Patents are the sole inventors of such Assigned Patents;

(h)   To Hitachi's Knowledge, the Assigned Patents have not been found invalid, unpatentable, or unenforceable for any reason, as a final judgment on the merits, in any administrative or judicial proceedings except for those with relevant authorities including patent offices in relation to prosecution of the Assigned Patents (for the avoidance of doubt, if a lawsuit or legal proceeding is initiated or threatened by a third party between the Effective and Payment Dates involving the Assigned Patents, then Hitachi shall promptly notify Assignee; such a lawsuit or legal proceeding not initiated nor threatened by Hitachi or its Affiliates shall not constitute breach of this Section 6.2(h)); and

(i)   To Hitachi's Knowledge, if any Assigned Patents is terminally disclaimed to another patent or patent application or vice versa, such another patent or patent application or such respective Assigned Patents subject to such terminal disclaimer is included in the transactions contemplated by this Agreement.

**6.3 Breach.** Upon notice and sufficient proof provided by the Assignee of a breach of this Section 6.2, Assignee and Hitachi shall confer in good faith to specify the essence of the alleged breach and identify the damage specific to that breach in which the Assignee incurred. After such good faith determinations are made, Hitachi shall be allowed ninety (90) days to cure any breach under this Section 6.2.

*__NO OTHER REPRESENTATIONS OR WARRANTIES.__   THE REPRESENTATIONS AND WARRANTIES MADE BY EACH PARTY IN THIS __SECTION 6__ ARE IN LIEU OF ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED.   EACH PARTY HEREBY DISCLAIMS, AND THE OTHER PARTY ACKNOWLEDGES THAT IT HAS NOT RELIED UPON, ANY REPRESENTATIONS OR WARRANTIES OTHER THAN THOSE EXPRESSLY STATED HEREIN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL IMPLIED WARRANTIES OF MERCHANTABILITY,   FITNESS   FOR   A   PARTICULAR   PURPOSE,   TITLE,   AND NONINFRINGEMENT ARE HEREBY DISCLAIMED.*

7.   **DISCLAIMERS**

**7.1 Open Source Licenses.**  Hitachi or its Affiliates may have provided or contributed software code to an open source computer program or have made commitments for Hitachi to be subject to the obligations of

9

open source initiatives or organizations where license for computer software requires computer source code to be made available under terms that would, for example, allow for modification and redistribution of computer software without the consent of the original author. Assignee acknowledges and agrees that there may be an express or an implied license under the Assigned Patents based on the terms of each open source initiatives or organizations to any open source users or licensees and that the sale and assignment of the Assigned Patents shall be subject to, and Assignee shall abide by, all obligations of any open source license that relate to the Assigned Patents

**7.2 Standards Licenses.** Hitachi or its Affiliates may have made (or offered to make) or participated in standards bodies or patent pools that may have subjected the Assigned Patents (or portions thereof) to the express or implied licensing obligations set forth by such standards bodies or patent pools. Assignee hereby acknowledges and agrees that the sale and assignment of the Assigned Patents shall be subject to, and Assignee shall abide by, all obligations arising out of any such patents being subject to the obligations of standards bodies or patents pools including, but not limited to, obligations to license Assignment Patents under royalty-free or reasonable and non-discriminatory terms to third parties.

**7.3 ARIB/ULDAGE patent pool.** Assignee understands that it may not pool patents under Family 5 and Family 7 of the Assigned Patents into ARIB/ULDAGE due to the relevant rule of the pool.



10

Highly Confidential - Attorneys' Eyes Only

SAMNDCA630-00835439

## 9.    CONFIDENTIALITY

**9.1 Confidentiality of Agreement.**      The Parties agree to keep confidential and not disclose to any third party the terms and conditions of this Agreement, or any of the negotiations and discussions that preceded its making, except as follows: (i) as is necessary to effectuate any term or provision of this Agreement including any subsequent arbitration to enforce the terms hereof, except that both Parties shall take all reasonable steps to maintain the confidentiality of this information including filing documents under seal and entry of appropriate protective orders; (ii) to a Party's accountants or lawyers, including IP experts and attorney of Intellectual Property Group of Hitachi, Ltd. ; (iii) making such disclosures as may be required by law; (iv) to the extent reasonably necessary in connection with a merger, acquisition or spin-out, subject to confidentiality restrictions of like nature; (v) to register licenses and rights under the Assigned Patents of Hitachi, its Affiliates, Existing Licensee, and Transitional Period Licensees,and to register any change in ownership of the Assigned Patents with the appropriate patent office; and (vi) to a party's Affiliates.  For avoidance of doubt, a) the change in ownership of the Assigned Patents, and b) the scope of rights and license of Hitachi and its Affiliate under Section 4, are not confidential for the purpose of this Section.

**9.2 Confidential Documents.**  To the extent any attorney-client privilege or the attorney work-product doctrine applies to any documents related to the Assigned Patents that are retained by Hitachi after the Effective Date, Hitachi will protect those documents against disclosure to others with at least the same degree of care Hitachi uses to protect its own information of a similar nature unless: (1) disclosure is ordered by a court of competent jurisdiction, or (2) Hitachi gave Assignee prompt notice upon learning that any third party sought or intended to seek a court order requiring the disclosure of any portion of such documents.

## 10.    MISCELLANEOUS

**10.1    Notice.**  Any notice, request, demand or other communication required or permitted hereunder shall be in writing, shall reference this Agreement and shall be deemed to be properly given: (a) when delivered personally; or (b) two business days after deposit with a private industry express courier, with written confirmation of receipt.  All notices shall be sent to the following addresses (or to such other address or person as may be designated by a party by giving written notice to the other party pursuant to this Section):

|              |                                          |
|--------------|------------------------------------------|
| If to Hitachi: | Hitachi Consumer Electronics Co., Ltd.<br>Intellectual Property Management Dept.<br>292 Yoshida-cho, Tosuka-ku,<br>Yokohama 244-0817, Japan<br>Attn: General Manager |
| If to Assignee: | Samsung Electronics Co., Ltd.<br>IP Strategy Team, IP Center |



11

**JOINT TRIAL EXHIBIT NO. 24, Page 12 of 28**

416, Maetan 3-dong, Yeongtong-gu,
Suwon-si, Gyeonggi-do, 443-742, Korea
Attn : Vice President,
IP Acquisition & Collaboration Group
Fax+82-31-279-4560

**10.2   Entire Agreement.** The Parties hereto acknowledge that this Agreement and each of the exhibits attached hereto set forth the entire agreement and understanding of the Parties as to the subject matter hereto, and supersedes all prior and contemporaneous discussions, agreements and writings in respect hereto.

**10.3   Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK (WITHOUT GIVING EFFECT TO ITS PRINCIPLES OR RULES OF CONFLICTS OF LAWS, TO THE EXTENT SUCH PRINCIPLES OR RULES ARE NOT MANDATORILY APPLICABLE BY STATUTE AND WOULD PERMIT OR REQUIRE THE APPLICATION OF LAWS OF ANY OTHER JURISDICTION). EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BETWEEN THE PARTIES DIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT.

**10.4   Arbitration.** The Parties agree that, should any dispute of any nature arise between them concerning this Agreement, they shall first attempt in good faith to resolve any such dispute amicably through discussion and negotiation. If a dispute cannot be resolved informally, the Parties shall exchange their views in writing and shall meet and confer in person or by telephone and attempt in good faith to resolve the dispute prior to commencing any legal action. If the foregoing process fails, any claim, dispute or controversy among the Parties arising out of or relating to this Agreement, including the breach thereof, will be finally and exclusively settled by binding arbitration ("Arbitration") upon the written request of any Party. The Arbitration shall be administered by the International Chamber of Commerce in accordance with its rules of arbitration (the "Rules"). The Arbitration will be conducted by one arbitrator selected in accordance with the Rules and applying the law of Japan. The place of the Arbitration shall be in  Switzerland. The Arbitration will be conducted in English and all documents submitted by the Parties must be in English. Notwithstanding the foregoing, either Party may seek injunctive or other equitable relief in a court of competent jurisdiction pending the outcome of such arbitration. The Arbitration award will be final and binding upon the parties, and judgment upon such award may be entered in any court having jurisdiction thereof.

**10.5   Binding Effect.** This Agreement shall not be binding upon the Parties until it has been signed by or on behalf of each Party. Notwithstanding any other provisions in this Agreement, if Assignee fails to make the payment to Hitachi in accordance with Section 3.1, then Hitachi has the option, in its sole discretion, to declare this Agreement null and void ab initio, upon written notice to Assignee.

**10.6   Assignment of Agreement.** This Agreement shall inure to the benefit of and be binding upon the Parties hereto, their respective heirs, executors, administrators, successors and assigns. This Agreement may solely be assigned by a Party in connection with such Party's merger with, or the sale of all or substantially all of such Party's assets to, another entity (and in this case solely to the surviving entity or the entity that acquired such assets). Both parties further agree that, even if the Agreement is transferred to that another entity, duties set forth in this Agreement shall continue to be binding, and therefore, a Party shall be severally liable upon breach by such entity of the duties set forth in this Agreement.

**10.7   Assignment of Assigned Patents.**   Assignee acknowledges and agrees that it shall not assign, sell, or transfer any of the Assigned Patents to any third party, (i) except for in accordance with Section 10.6., or (ii) without prior written consent of Hitachi which shall not be unreasonably withheld.

12



Highly Confidential - Attorneys' Eyes Only                    SAMNDCA630-00835441

**10.8**     Assignee acknowledges that the purpose for Assignee to enter into this Agreement is to enjoy its own right and license to practice the Assigned Patents, and prepare possible assertion by third party. Therefore, Assignee agrees to make a good faith effort to use the Assigned Patents in a counter assertion to a claim made by third parties against the Assignee.

**10.10    Relationship of Parties.** Nothing contained in this Agreement shall be deemed or construed as creating a joint venture, partnership, agency, employment or fiduciary relationship between the Parties. Neither Party nor its agents have any authority of any kind to bind the other Party in any respect whatsoever, and the relationship of the Parties is, and at all times shall continue to be, that of independent contractors.

**10.11    Publicity, Trademarks, etc.** Nothing contained in this Agreement shall be construed as conferring any right to use in advertising, publicity or other promotional activities any name, trade name, trademark, trade dress or other designation of either Party (including any contraction, abbreviation or simulation of any of the foregoing), save as expressly stated herein. Each Party hereto agrees not to use or refer to this Agreement or any provision hereof in any promotional activity without the express written approval of the other party.

**10.12    Modification.** This Agreement may not be modified in any way except by a writing signed by the duly authorized representative of both Parties.

**10.13    Waiver.** A waiver, express or implied, by either Party of any right under this Agreement or of any failure to perform or breach hereof by the other Party hereto shall not constitute or be deemed to be a waiver of any other right hereunder or of any other failure to perform or breach hereof by such other Party, whether of a similar or dissimilar nature thereto.

**10.14    Severability.** If for any reason any provision of this Agreement, or portion thereof, is finally determined by a competent authority to be invalid, illegal or unenforceable under applicable law, that provision, or portion thereof, shall nonetheless be enforced to the maximum extent permissible by applicable law so as to give effect to the intent of the Parties, and the remainder of this Agreement shall continue in full force and effect.

**10.15    Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

**10.16    Signatures.** Facsimile signatures shall have same effect as if they were original signatures.

**10.17    Construction.** This Agreement shall be deemed to have been drafted by both Parties and, in the event of a dispute, neither Party shall be entitled to claim that any provision should be construed against the other Party by reason of the fact that it was drafted by the other Party. Each Party acknowledges that its legal counsel has reviewed and approved this Agreement and each of the exhibits attached hereto.

[SIGNATURE PAGE FOLLOWS]

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835442

**IN WITNESS WHEREOF**, Assignee and Hitachi have executed this Agreement by their respective duly authorized representatives as of the date first written above.

HITACHI:                                        ASSIGNEE:

HITACHI CONSUMER ELECTRONICS CO.,    SAMSUNG ELECTRONICS CO., LTD.
LTD.

By: _____          By: _____

    Name:                                       Name: *SEUNG-HO AHN*

    Title:                                      Title: *Executive VP*

[Signature Page to Patent Assignment Agreement]

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835443

**JOINT TRIAL EXHIBIT NO. 24, Page 15 of 28**

Exhibit A

Assigned Patents

| | Patent Number | | |
|---|---|---|---|
| | JP | US | Other countries |
| 1 | 3384138,    3543801,    3580286, 4274237,    4458196,    4637259, (Appl. 2010-208753) | 5933478 | — |
| 2 | 3564985, 3925430, 4207057 | 6275690,         6539218, 6799034,   6823182,   (Appl. 12/081141, 12/876324) | EP(DE/FR)851647, (EP       Appl.      9167993.6, 10011827.2), KR10-0306109, KR 10-0377650, CN ZL97107298.1, HK1015105, TW391092, MY132418-A, SG70057 |
| 3 | 3690414,    3791543,    4345762, 4456675 (Appl. 2008-220783, 2010-002460) | 6226449,   7106954,   (Appl. 11/516609) | EP(GB/DE/FR)802688, (EP       Appl.      5013345.3, 10011249.9) |
| 4 | 2849301,    2878686,    2983521, 3436689,    3485518,    3551119, 3685198,    3815489,    3982543, 4123285, 4144652, 4315177 | 5539535,         5699173, 5790274,         5793517, 5801847,         6081350, 6677989,   7304669, (Appl. 11/926594) | EP(GB/DE)617543,  EP961478, EP1359738, (EP Appl. 6009123.8) |
| 5 | 3405336, 3637905, 3780924 3119038 | 5878188,         6249639, 6807364,   7197232,   (Appl. 11/717708) | EP(GB/DE/FR)632445, 964397 (EP Appl. 10012897.4) |
| 6 | 3092432 | 5699370, 5930274 | — |
| 7 | 3404863, 4353098 | 6002694, 6249532 | KR10-0363114 |

B-1

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835444

| 8 | | 5461266, 5637932 | — |
|---|---|---|---|
| 9 | 3555435, 4007025, 4075915, 4730376, (Appl.2010-286912) | 6363101, 7035309, 7269203, 7400667, 7447256, 7471715, (Appl. 12/275309) | KR10-0295603 |
| 10 | 3525828, 3562525, 4635411 | 7397777, 7606198 (Appl. 12/567142) | CN ZL00133769.6, CN ZL200410008553.8, (CN Appl. 200610099797.0) |

B-2

Highly Confidential - Attorneys' Eyes Only            SAMNDCA630-00835445

Exhibit B   (JP Patents)

# 譲 渡 証 書

平成　　年　　月　　日

譲受人
住　所　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
名　称　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿殿

譲渡人
住　所
名　称　日立コンシューマーエレクトロニス株式会社

下記特許権は弊社所有のところ、今般これを貴社に譲渡したこと
に相違ありません。

記

1.
2.
3.
4.

以上

B-3

Highly Confidential - Attorneys' Eyes Only

SAMNDCA630-00835446

**Exhibit B**    (US Patents)

Form of ASSIGNMENT

Hitachi Consumer Electronics Co., Ltd., having offices at 2-1, Otemachi 2-chome, Chiyoda-ku, Tokyo, Japan, is the owner of record of the following Patents and Patent Applications:

Patent/Serial No.    1.1
               1.2        1.3

Hitachi Consumer Electronics Co., Ltd. hereby transfers and assigns to XXXXX having a business address at _____, the whole right, title, and interest in the aforementioned US Patents and Patent Applications.

**IN WITNESS WHEREOF**, this Assignment has been executed by an Agent authorized to act on behalf of the Assignor, Hitachi Consumer Electronics Co., Ltd.

Hitachi Consumer Electronics Co., Ltd.


By:    _____


Date:    _____


B-4

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835447

Exhibit B   (DE Patents)
## DEED OF ASSIGNMENT


We have assigned German patent

**No.**          **(EP**          **)**

to

Samsung Electronics Co., Ltd.
416, Maetan 3-dong, Yeongtong-gu
Suwon-si
Gyeonggi-do 442-742
Republic of Korea


and agree that this assignment will be recorded in the German Patent and Trademark Office.

Place/Date: …………………………………………………

Signature of Assignor: ……………………………………………

(Hitachi Consumer Electronics Co.,Ltd.)

Name of signatory:   ……………………………………………

Title of signatory:   ……………………………………………


(no legalization)

B-5

**Exhibit B**  (UK Patents)

1.   **THIS DEED OF ASSIGNMENT** is made on                                2011

2.   BETWEEN

3.   **Hitachi Consumer Electronics Co.,Ltd.** a company organised under the laws of Japan and having a place of business at 2-1, Otemachi 2-chome, Chiyoda-ku, Tokyo, Japan ("**the Assignor**").

4.   **Samsung Electronics Co., Ltd** a company organised under the laws of Korea and having a place of business at 416 Maetan 3-dong, Yeongtong-gu, Suwon-si, Gyeonggi-do, Korea ("**the Assignee**").

5.   RECITALS

6.   (A)     The Assignor has agreed to assign to the Assignee (and the Assignee has agreed to accept an assignment of) all of the Assignor's right title and interest in and to the Patent and the Invention on the terms of this Assignment.

7.   THIS DEED WITNESSES as follows:

Definitions

In this Deed and the Recitals hereto the following words shall have the following meanings:

| "Patent" | the patent referred to in the attached Schedule 1 |
|---|---|

In consideration of the sum of £1 now paid by the Assignee to the Assignor (receipt of which the Assignor hereby acknowledges) the Assignor HEREBY ASSIGNS to the Assignee absolutely and the Assignee hereby accepts an assignment of all the Assignor's right title and interest in and to the Patent

The assignment effected by clause 2 above shall include, the assignment and transfer of all rights of action, powers and benefits arising from ownership of the Patent in particular the right to sue for damages

B-6

Highly Confidential - Attorneys' Eyes Only                    SAMNDCA630-00835449

and other legal and equitable remedies (and retain any financial award made in any action) in respect of all causes of action arising prior to on or after the date of this Assignment subject to any rights of the Assignor as agreed between the parties.

The validity construction and performance of this Deed shall be governed by English law and shall be subject to the non-exclusive jurisdiction of the English courts to which the parties hereby submit.

IN WITNESS of which this Assignment has been executed and delivered as a Deed the date and year first above written.

**Signed as a deed on behalf of**

**Hitachi Consumer Electronics Co.,Ltd.**

a Japanese company by  [   ]                                )

being a person who in accordance                       )

with the laws of that territory is                                      )

acting under the authority of the company                     )

Signature_____

**Signed as a deed on behalf of**

**Samsung Electronics Co., Ltd**

a Korean company by  [   ]                                )

being a person who in accordance                       )

with the laws of that territory is                                      )

acting under the authority of the company                )

Signature_____

THE PATENT

B-7

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835450

| Patent Number | Date Filed | Subject Matter | Designated Countries |
|---|---|---|---|
|  |  |  |  |

B-8

Highly Confidential - Attorneys' Eyes Only

SAMNDCA630-00835451

Exhibit B   (FR Patents)

CONTRAT DE CESSION                              ASSIGNMENT DEED

Entre les Soussignées :                         Between the undersigned :

La Société dite :                               The Company styled :

**Hitachi Consumer Electronics Co., Ltd.**      **Hitachi Consumer Electronics Co., Ltd.**
Société de droit Japonais                       A Japanese company
2-1, Otemachi 2-chome, Chiyoda-ku,              2-1, Otemachi 2-chome, Chiyoda-ku,
Tokyo                                           Tokyo
JAPON                                           JAPAN

Dénommée ci-après la **"CEDANTE"**              Hereinafter called the **"ASSIGNOR"**

d'une part,                                     on the first part,

et :                                            and :

La Société dite :                               The Company styled :

**SAMSUNG ELECTRONICS CO., LTD**                **SAMSUNG ELECTRONICS CO., LTD**
Société de droit coréen                         A Korean company
416, Maetan 3-dong, Yeonggtong-gu               416, Maetan 3-dong, Yeongtong-gu
Suwon-si,Gyeonggi-do                            Suwon-si,Gyeonggi-do
REPUBLIQUE DE COREE                             REPUBLIC OF KOREA

Dénommée ci-après la **"CESSIONNAIRE"**         Hereinafter called the **"ASSIGNEE"**

d'autre part,                                   on the second part,

Lesquelles ont décidé et convenu ce qui suit :  Who have decided and agreed upon the
                                                following :

B-9                                             JK5

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835452

**JOINT TRIAL EXHIBIT NO. 24, Page 24 of 28**

La **CEDANTE** est propriétaire de la Partie Française du Brevet Européen _____déposé le _____ sous le n°__ _____.

The **ASSIGNOR** is the rightful owner of the below French Part of European Patent _____filed on _____under No. _____.

La **CEDANTE** cède tous les droits de propriété de la Partie Française du Brevet Européen susmentionné, à la **CESSIONNAIRE** qui l'accepte, ainsi que tous les droits de poursuite de faits de contrefaçon antérieurs à la signature du présent acte, sous réserve des droits du CEDANT comme convenu entre les parties.

The **ASSIGNOR** hereby assigns all the property rights of the above French Part of European Patent to the **ASSIGNEE** which accepts it, including the right to sue acts of infringement committed before the date of signature of the present deed, subject to any rights of the ASSIGNOR as agreed between the parties.

Cette cession est faite moyennant la somme de ………………………………

As a compensation for the present assignment, the **ASSIGNEE** has paid to the **ASSIGNOR** the amount of ………………………………………

que la **CESSIONNAIRE** a payée à la **CEDANTE** qui le reconnaît et en donne bonne et valable décharge. Dont quittance.

the receipt of which is hereby acknowledged.

Tout porteur d'un exemplaire du présent acte de cession sera habilité à faire procéder à l'inscription de la cession auprès du Registre National des Brevets tenu par l'Institut National de la Propriété Industrielle.

Any holder of a sample of this Deed of assignment shall be entitled to take appropriate steps for the recordal of the assignment on the National Patent Register at the French National Institute of Industrial Property.

Signé en deux exemplaires

Executed in two counterparts

B-10

Highly Confidential - Attorneys' Eyes Only

SAMNDCA630-00835453

**JOINT TRIAL EXHIBIT NO. 24, Page 25 of 28**

A                                        /
At:_____

Date_____
____

A                                        /
At_____
_

Date_____
____

Au nom et pour le compte de / *For and on behalf of:*
**HITACHI CONSUMER ELECTRONICS CO., LTD**

Au nom et pour le compte de / *For and on behalf of:*
**SAMSUNG ELECTRONICS CO., LTD**

Signature
_____

Signature
_____

Nom / *Name:*
Qualité / *Title:*

Nom / *Name:*
Qualité / *Title:*

B-11

Highly Confidential - Attorneys' Eyes Only                    SAMNDCA630-00835454

**JOINT TRIAL EXHIBIT NO. 24, Page 26 of 28**

Exhibit C

**Exhibit C-1**

Apple Computer, Inc.

TELEFONAKTIEBOLAGET LM ERICSSON

Google Inc.

HTC Corporation

Huawei Technologies Co. Ltd.

Nokia Corporation

Research In Motion Limited

ZTE Corporation

**Exhibit C-2**

Kyocera Corporation

Pantech Wireless Inc.

**Exhibit C-3**

LG Electronics, Inc.

**Exhibit C-4**

Canon Inc.

Olympus Corporation

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835455

Exhibit D

"At Samsung Electronics, we are navigating the
fast-changing business environment with enlightened
risk management as we improve our differentiated
capabilities across all of our businesses."

Strengthening leadership through differentiation

4

B-13

~SKS

Highly Confidential - Attorneys' Eyes Only          SAMNDCA630-00835456

**JOINT TRIAL EXHIBIT NO. 24, Page 28 of 28**