Exhibit 3

JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

***Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.***

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil Action No. 12-CV-00630-LHK (PSG)<br><br>**CORRECTED REBUTTAL EXPERT REPORT OF PROFESSOR ANDREW COCKBURN**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Counterclaim-Defendant. | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................ 1

II. EXECUTIVE SUMMARY ............................................................................. 2

    A.    U.S. Patent No. 8,074,172 ................................................................. 3

    B.    U.S. Patent No. 8,046,721 ................................................................. 3

III. QUALIFICATIONS AND EXPERIENCE .................................................... 4

IV. MATERIALS CONSIDERED FOR THIS EXPERT REPORT ..................... 7

V. LEGAL STANDARDS ................................................................................... 7

    A.    Claim Language ................................................................................. 7

    B.    Conception and Reduction to Practice .............................................. 9

    C.    Priority Date .................................................................................... 10

    D.    Validity ........................................................................................... 10

        1.    Presumption of Validity ...................................................... 10

        2.    Patentable Subject Matter .................................................... 11

        3.    Prior Art .............................................................................. 11

        4.    Anticipation ......................................................................... 12

        5.    Obviousness ........................................................................ 13

        6.    Written Description and Definiteness Requirement ............ 17

VI. GENERAL OBSERVATIONS ABOUT USER INTERFACE DESIGN ....... 17

VII. GENERAL OBSERVATIONS REGARDING SAMSUNG'S EXPERTS'
    PRIOR ART ASSERTIONS ........................................................................ 20

VIII. THE '172 PATENT ................................................................................... 22

    A.    Claim Analysis ............................................................................... 22

        1.    General Approach ................................................................ 22

        2.    "Portable Electronic Device with a Touch Screen and a
            Keyboard" .......................................................................... 22

    B.    Conception and Reduction to Practice ............................................ 25

    C.    Priority Date .................................................................................... 27

D.    Claim 18 of the '172 Patent Is Not Anticipated or Rendered
      Obvious ............................................................................................ 27

      1.    The Robinson Reference ....................................................... 27

            a.    Robinson Does Not Disclose a First Area of the
                  Touch Screen that Displays a Current Character
                  String ......................................................................... 34

            b.    Robinson Does Not Disclose Keeping or Replacing
                  the Current Character String ..................................... 36

            c.    Robinson Cannot Be Combined with the General
                  Understanding of a Person of Ordinary Skill in the
                  Art to Render Claim 18 Obvious ............................. 38

      2.    The Xrgomics Reference ....................................................... 42

            a.    Xrgomics Does Not Disclose Replacing a Current
                  Character String with a Suggested Replacement
                  Character String ......................................................... 44

      3.    The POBox Reference ........................................................... 46

            a.    POBox Does Not Disclose a First Area Displaying a
                  Current Character String Being Input by the User ....... 49

            b.    POBOX Does Not Disclose Replacing a Current
                  Character String with a Suggested Replacement
                  Character String If the User Activates a Key on the
                  Keyboard Associated with a Delimiter ...................... 50

            c.    POBox Does Not Disclose Replacing the Current
                  Character String with a Suggested Replacement
                  Character String if the User Performs a Gesture on
                  the Suggested Replacement Character String in the
                  Second Area ............................................................... 50

            d.    POBox Does Not Disclose Keeping the Current
                  Character String In the First Area When the User
                  Performs a Gesture in the Second Area ..................... 51

      4.    The TextPlus Reference ......................................................... 51

            a.    TextPlus Does Not Disclose A Second Area of the
                  Touchscreen Display Separate from the First Area ..... 56

            b.    TextPlus Does Not Disclose Replacing a Current
                  Character String in the First Area with the
                  Suggested Character String if the User Activates a
                  Key on the Keyboard Associated with a Delimiter ...... 57

            c.    TextPlus Does Not Disclose Replacing a Current
                  Character String in the First Area with the
                  Suggested Character String if the User Performs a

-ii-

- the current character string in the first area is kept if the user performs a gesture in the second area on the current character string or the portion thereof displayed in the second area.

As Robinson does not disclose the current character string in the first area, it cannot be kept.

119.    I am also aware that the USPTO has confirmed that Robinson does not disclose displaying a current character string in a first area.  I am aware that there is a reexamination pending for the '172 Patent.  In that reexamination proceeding, the USPTO refused to grant reexamination of claim 18 on grounds including its finding that one of the parent applications to which Dr. Wigdor claims Robinson claims priority (as it is a patent application from which Robinson is continued and with which it shares a specification) – the Robinson '190 Patent – does not disclose displaying a current character string in a first area.

**2.    The Xrgomics Reference**

120.    Dr. Wigdor also opined that Robinson in combination with Int'l Patent Pub. No. WO 2005/008899 A1 ("Xrgomics") renders claim 18 of the '172 Patent obvious.  I disagree.

121.    Xrgomics describes a text entry method that provides suggested word completions and letter replacements. The key of the word choice method is the word choice library database, and the function of word choice library is determined by three parameters stored in a profile: 1) the number of characters of a beginning keystroke sequence that must be present before word suggestions are shown; 2) the minimum number of characters a word must contain before it can be saved into the word library; and 3) the number of words to be stored for each beginning keystroke sequence. Xrgomics at 21.  Words typed by the user not currently in the word choice library can be added to the word choice library by selecting a delimiter.  *Id.* at 23.  Thus, instead of replacing the current character string with a suggested replacement string when the user selects a delimiter, as required by claim 18, Xrgomics discloses the opposite: current character strings are kept upon the selection of a delimiter.

-42-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



122.    Figure 1 from Xrgomics (reproduced above) shows one embodiment, including the "choice window 14 with word choices 16" (Xrgomics at 14).  In this figure, the user has entered the characters "amb" and word completions "ambitious" and "ambiguous" are offered as word completions in the choice window.  Word completions are offered because the three letters of "amb" exceed the minimum number of characters required before word suggestions are shown.  (Xrgomics at 21).

123.    Figure 5 from Xrgomics (reproduced below) shows another embodiment in which a word beginning with "deva" is being entered by the user (item 258 in the figure). The choice window shows selections available for "devastating", "devalue" and "devastate" as well as "deva" on a second line (item 262).  Letter choices are also shown, such as item 256.  (Xrgomics at 23).  In association with this example, Xrgomics states that "if the user enters and finishes the word "devas" (e.g. the word "devas" is selected by space, punctuation or carriage return), it would *not be stored in the database* as it does not have sufficient character length" (my emphasis).  Consequently, pressing the delimiter key after entering the text "devas" would keep the text currently being input, rather than replacing it.  Furthermore,

-43-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    any subsequent entry of the word "devas" would have the same effect of keeping the word

2    "devas" in the input area.



3

4

5

6

7

8

9

10

11

12

13

### a. Xrgomics Does Not Disclose Replacing a Current Character String with a Suggested Replacement Character String

15    124.    Xrgomics does not disclose, as required by claim 18 of the '172 Patent, that a

16    "current character string in the first area is replaced with the suggested replacement character

17    string if the user activates a key on the keyboard associated with a delimiter."

18    125.    In general, Xrgomics discloses that its system's response to the use of

19    delimiter keys (such as space and punctuation) varies with at least two contextual factors.

20    First, if the word entered by the user is not in the system's library database, then pressing the

21    space key to terminate the word completes it as normal: "if the user enters and finishes the

22    word "devas" (e.g. the word "devas" is selected by space, punctuation or carriage return), it

23    would not be stored in the database as it does not have sufficient character length."

24    (Xrgomics at 23).  Consequently, pressing a delimiter key after entering "devas" would

25    always enter "devas", rather than a suggested replacement character string (as required by the

26                                          -44-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          COCKBURN REBUTTAL EXPERT REPORT

'172 Patent).  Second, if the entered character sequence is shorter than the minimum number of characters required to generate a suggestion (parameter 1 above), then no word choice list is displayed or available to replace the entered character sequence.

126.   The Xrgomics flowchart shown in Figure 10 (below) confirms this contextual variance of the method disclosed by Xrgomics.  First, box 708 of Figure 10, which displays the word choice list, is only reached if a database match is found (box 706).  Second, a text entry from the word choice list *only* occurs if the user explicitly selects a word or letter (box 714 and 716): "If the word choice or the letter choice is what the user wants, the user simply selects it using any of the selection methods described above 714".  Third, a selected word may or may not be entered in the library database following selection of a delimiter key. (Xrgomics at 32-33).  The need for previously selected words to subsequently become unavailable is easily explained design artefact of the Xrgomics method – for example, if the user intends to type "hypochonriacs" and has previously entered "hypochondria" into the library, then they can type "hypoc", then select the suggestion "hypochondria", and subsequently type "cs" followed by a space to complete the intended word.  Thus, although "hypochondria" was earlier selected, it is not the word finally entered.  Further, when the user presses the space key to complete the word "hypochondriacs", the word "hypochondriacs" is kept, not replaced.

-45-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

127.    Thus, Xrgomics does not disclose or render obvious at least the following limitation of claim 18 of the '172 Patent: "the current character string in the first area is replaced with the suggested replacement character string if the user activates a key on the keyboard associated with a delimiter".

128.    Instead of replacing the current character string with a suggested replacement string when the user selects a delimiter, as required by claim 18, Xrgomics discloses the opposite: current character strings are kept upon the selection of a delimiter.

**3.      The POBox Reference**

129.    The POBox Reference, as described in Toshiyuki Masui, *PO Box: An Efficient Text Input Method for Handheld and Ubiquitous Computers*, Proc. of the Int"l

-46-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY