| | |
|---|---|
| JOSH A. KREVITT (CA SBN 208552) <br> jkrevitt@gibsondunn.com <br> H. MARK LYON (CA SBN 162061) <br> mlyon@gibsondunn.com <br> GIBSON, DUNN & CRUTCHER LLP <br> 1881 Page Mill Road <br> Palo Alto, CA 94304-1211 <br> Telephone: (650) 849-5300 <br> Facsimile: (650) 849-5333 | WILLIAM F. LEE <br> william.lee@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 60 State Street <br> Boston, MA 02109 <br> Telephone: (617) 526-6000 <br> Facsimile: (617) 526-5000 |
| HAROLD J. McELHINNY (CA SBN 66781) <br> hmcelhinny@mofo.com <br> JAMES P. BENNETT (CA SBN 65179) <br> jbennett@mofo.com <br> JACK W. LONDEN (CA SBN 85776) <br> jlonden@mofo.com <br> RACHEL KREVANS (CA SBN 116421) <br> rkrevans@mofo.com <br> RUTH N. BORENSTEIN (CA SBN 133797) <br> rborenstein@mofo.com <br> ERIK J. OLSON (CA SBN 175815) <br> ejolson@mofo.com <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, California 94105-2482 <br> Telephone: (415) 268-7000 <br> Facsimile: (415) 268-7522 | MARK D. SELWYN (SBN 244180) <br> mark.selwyn@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 950 Page Mill Road <br> Palo Alto, California 94304 <br> Telephone: (650) 858-6000 <br> Facsimile: (650) 858-6100 |

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br>                 Plaintiff, <br>     v. <br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br>                 Defendant. | Case No.   12-cv-00630-LHK (PSG) <br><br> **APPLE'S OPPOSITION TO SAMSUNG'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF ALL EVIDENCE** |

Samsung's latest JMOL largely rehashes the arguments Samsung made in its JMOL two weeks ago. (Dkt. 1663.)[1] The Court has already rejected Samsung's arguments once, and should do so again, given the additional evidence Apple has offered in support of its claims.

## I.   APPLE PRESENTED AMPLE EVIDENCE OF WILLFULNESS

Samsung continues to ignore undisputed evidence that it sold tens of millions of accused devices after notice of the patents in suit. (*See* Dkt. 1670 at 1:8-12.) Samsung also ignores evidence that it copied Apple's patented slide to unlock and data detectors technology. (*See id.* at 1:13-22.)[2] Samsung's intentional copying of Apple renders irrelevant whether Google copied Apple, particularly where Samsung chose to use Google's code on the accused devices, including the Galaxy Nexus phones Samsung sold. (*See* Dkt. 1623 at 649:21-650:3.)

## II.   APPLE PRESENTED AMPLE EVIDENCE OF INFRINGEMENT

**Claim 9 of '647 Patent**: Samsung's expert conceded the representativeness of the JX devices used by Dr. Mowry to establish infringement. (Dkt. 1717 at 1816:5-1817:16.) Dr. Mowry's testimony established infringement of claim 9 of the '647 patent (Dkt. 1624 at 841:19-843:11, 848:13-875:8), including the "analyzer server" and "linking actions to detected structures" limitations (*id.* at 850:11-861:7) under the *Motorola* constructions for those terms, *see Apple Inc. v. Motorola, Inc.*, Case No. 12-1548 (Fed Cir. Apr. 25, 2014). Samsung ignores that the code in the accused Samsung smartphones that infringes under those *Motorola* constructions is in evidence, and Dr. Mowry's testimony regarding the operation of the code also established infringement under the *Motorola* constructions of "analyzer server" (*Motorola*, slip op. at 21-26) and "linking actions to detected structures" (Dkt. 1624 at 854:9-861:7), even if Dr. Mowry did not use the precise terminology of those constructions in his testimony. (*Id.* at 895:1-5; 4/22/14

---

[1] Apple incorporates the arguments and evidence that it submitted in its prior JMOL opposition (Dkt. 1670) and its JMOL motion (Dkt. 1804).

[2] Contrary to Samsung's assertions, a reasonable jury could find that Apple practices the '647 and '721 patents. Dr. Cockburn repeatedly explained how Apple practices slide to unlock. (Dkt. 1263 at 634:22-636:3; 4/25/14 Tr. at 2896:10-2899:9.) Mr. Deniau testified about Apple's use of data detectors in the iPhone and iPad (Dkt. 1624 at 791:7-803:1), right before Dr. Mowry walked the jury through the requirements of claim 9 for the '647 patent (*id*. at 878:19-883:9). *Cf. Centricut., LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) (rejecting a "per se rule that expert testimony is required to prove infringement").

1  Tr. at 2788:22-2791:23.)  Dr. Mowry also presented evidence that "Jelly Bean" Browser satisfies

2  the "user interface" limitation via the "press and hold" gesture.  (Dkt. 1624 at 867:9-873:7;

3  4/22/14 Tr. at 2793:2-25.)

4  **Claim 25 of '959 Patent:**  In the 1846 case, the Court rejected Samsung's arguments regarding

5  the use of representative products to prove infringement.  (1846 Dkt. 2220 at 15:10-25.)  Google

6  engineer Bjorn Bringert, who worked on all versions of the accused functionality (Dkt. 1716 at

7  1568:15-20), admitted that the relevant code is proprietary to Google and not shared with

8  Samsung.  (*Id.* at 1571:1-1572: 5.)  Samsung therefore could not change the accused functionality

9  on particular products itself.  Further, Dr. Snoeren testified, based on his review of the source

10 code for all infringing products, that all limitations of claim 25 were met by all accused devices,

11 regardless of which Android version they used.  (Dkt. 1624 at 933:9-934:11; 942:1-945:9;

12 968:25-969:15; 996:15-998:10; 1000:23-1008:13; 942:7-12, 943:17-25.)  Dr. Snoeren also

13 testified that all of the accused devices contain (1) a heuristic to locate information from "the

14 Internet" (Dkt. 1624 at 934:3-11, 942:1-945:9, 953:21-956:23, 968:25-969:15, 996:15-997:23,

15 1000:23-1008:13; JX51(a), 4/22/14 Tr. at 2814:16-2818:12), (2) a heuristic to locate information

16 from "local storage media" (Dkt. 1624 at 942:13-945:5; 950:12-953:18; JX51(a)), and (3) an

17 "information identifier [that] is applied separately to each heuristic" (*id.* 958:8-959:8; JX51(a)).)

18 Apple also established that products sold by Samsung with an Internet-only version of the QSB

19 were subsequently updated by Samsung, "making" those products infringing, and establishing

20 induced and contributory infringement.  (Dkt. 1624 at 998:1-10.)

21 **Claim 20 of '414 Patent:**  Dr. Snoeren testified that he did not find any material differences

22 among the ten accused devices for purposes of infringement and Samsung offered no contrary

23 evidence.  (Dkt. 1624 at 968:25-969:20 ("As far as the claims are concerned, the code is the

24 same.").)  Samsung asserts that he conceded material differences on cross, but his testimony made

25 clear that "they all do infringe because the fundamentals underneath them are all the same." (Dkt.

26 1624 at 1001:12-14.)  Google's Hiroshi Lockheimer, "the person who's in charge of Android at

27 Google" (Dkt. 1715 at 1467:22-24), admitted that the Android sync framework and sync adapters

28 have remained fundamentally the same through all versions of Android.  (*Id.* at 1504:21-

1505:16.) Dr. Snoeren also discussed every claim element individually (*id.* at 968:25-990:19), including the code relevant to each claim element that Samsung asserts lacks evidentiary support ("execute at least one synchronization processing thread concurrently with the executing of [] at least one user-level non-synchronization processing thread" and "at least one synchronization processing thread [] provided by a synchronization software component"). (*Id.* 968:25-990:19; *see also* PX172; JX51(a); JX53(a); 4/22/14 Tr. 2829:14-2839:8.)

**Claim 8 of '721 Patent:** Samsung did not dispute Dr. Cockburn's use of representative products to establish infringement. (*See* Dkt. 1717 at 1980:11-1982:1.) Apple demonstrated infringement of every claim element for each accused product, including each element identified in Samsung's brief. (*See* Dkt. 1804 at 4; Dkt. 1670 at 3 (citing Dr. Cockburn's testimony at Dkt. 1623 at 657:17-664:24, 671:16-679:21).) Samsung offers no defense to infringement for five of the accused products, and for the Galaxy Nexus, offers only a defense contrary to the plain meaning of claim 8. (Dkt. 1804 at 4; Dkt. 1717 at 1980:1-1982:1 (Greenberg); 4/22/14 Tr. at 2859:22-2860:4, 2861:15-2862:5 (Cockburn).)

**Direct Infringement:** Apple established that SEC, STA, and SEA are each liable for direct infringement because each sells infringing devices in the United States. (Dkt. 1714 at 1209:12-23 (SEA sold tablets in the United States), 1208:23-1209:11 (STA sold accused devices in the United States); Dkt. 1715 at 1285:11-1286:6 (STA and SEA collected orders for accused devices from customers in the United States; SEC shipped accused devices to the United States); PX142.)

**Indirect Infringement:** Apple established that SEC induced STA and SEA to infringe. SEC knew about the '647 patent since at least August 2010, and all other patents since at least February 8, 2012. (Dkt. 1714 at 1043:17-20; PX132.) Samsung's witnesses testified that STA works at the direction of SEC's R&D team in Korea to design, develop, test, and commercialize U.S.-bound devices (PX3004 at 87:23-88:18), and that SEC makes the smartphones and tablets sold by STA and SEA. (PX3001 at 7:21-9:07.) The evidence further established that (1) SEC supplied millions of infringing devices to STA and SEA after Apple sued Samsung for patent infringement, and (2) STA and SEA, in turn, sold those infringing devices to retailers, and induced customers to use the infringing features via user guides. (*See, e.g.*, Dkt. 1624 at 961:3-8,

1  Dkt. 1624; PX230.071; PX238.739; *see also* PX230-PX239.)  Drawing all reasonable inferences

2  in Apple's favor, a jury could find that SEC induced infringement, and that the infringing features

3  have no substantial, non-infringing uses.  (*See, e.g.*, JX28-JX37; PX230-PX239.)

### III. APPLE PRESENTED AMPLE EVIDENCE OF VALIDITY

Samsung is not entitled to judgment as a matter of law on validity, particularly given the need for clear and convincing evidence on this issue.

**Claim 9 of the '647 Patent:**  Samsung presented to the jury only a single '647 invalidity theory based on the alleged obviousness of claim 9 over the Sidekick system.  Dr. Mowry testified that Sidekick was incapable of detecting multiple structures (Sidekick could only detect phone numbers) and lacked multiple linked actions (dialing was the only action Sidekick offered) (4/22/14 Tr. at 2801:13-2809:19.)  Although the *Motorola* construction requires only that each of the multiple structures have "at least one action per structure" (slip op. at 21-26), claim 9 still requires multiple linked actions, which Sidekick does not offer.  (*Id.* at 21-26 (finding that "the ability to link a structure to a single action still comports with the patent's plural reference, so long as other structures are linked to other actions").)

**Claim 25 of the '959 Patent:**  The "WAIS prior art," DX301, does not anticipate, because it does not include a heuristic for locating information on the local storage media and a heuristic for locating information in the Internet, both on the local device as claim 25 requires.  (4/22/14 Tr. at 2821:10-2822:12.)  Further, if installed in the manner Samsung proposes, the WAIS code would result in two identical sets of heuristics – not a plurality of heuristics (*id.* at 2823:10-25), and DX301 is source code – not computer readable instructions as required by claim 25.  (*Id.* at 2824:7-21.)  Samsung presented no obviousness evidence or argument as to the WAIS prior art, and claim 25 is not obvious in view of Smith and Shoham, for which Samsung did not perform an element-by-element analysis, either by patent, or in combination.  (Dkt. 1717 at 1929:9-1932:5.) Apple established (1) a person of ordinary skill would have had no reason to combine the references, and (2) even combined, the references would teach using one set of rules in different locations, not a plurality of heuristics.  (4/22/14 Tr. at 2826:24-2828:8.)  Finally, claim 25 is not indefinite (Dkt. 853-4 at 16-21; Dkt. 1151 at 29-34), as confirmed by the fact that both experts

were able to apply the claim language, as interpreted by the Court.  (4/22/14 at Tr. 2821:10-2822:12; 2823:10-25 (Snoeren); Dkt. 1717 at 1905:3-5; 1916:3-16 (Rinard).)

**Claim 20 of the '414 Patent:**  Claim 20 is not anticipated by Windows Mobile 5, because it requires three synchronization software components that are each (1) configured to synchronize a different data class and (2) provide a synchronization thread, contrary to Samsung's contention that only one of the synchronization software components needs to provide a thread.  (4/22/14 Tr. at 2828:21-2829:11.)  Samsung identified only one "Provider" that creates a thread – falling two short of what claim 20 requires.  (*Id.* at 2848:10-2849:23; 4/18/14 at 2193:22-2195:8; 2253:20-2254:21.)  Samsung presented no obviousness evidence or argument on claim 20 at all.

**Claim 8 of the '721 Patent:**  Samsung presented only one obviousness theory for claim 8, based on two references whose disclosures were considered by the PTO.  (Dkt. 1804 at 3; Dkt. 1717 at 1965:20-1966:3; 1996:4-18; 4/22/14 Tr. at 2864:22-2867:19.)  Dr. Cockburn testified that even in combination those references failed to disclose all elements of claim 8 (4/22/14 Tr. at 2864:22-2867:19 (Cockburn)), that Plaisant teaches away (*id.* at 2866:1-16), that an ordinary artisan would not be motivated to combine Neonode with Plaisant (*id.* at 2866:17-2867:5), and that secondary considerations showed that claim 8 was not obvious (*id.* at 2867:20-2869-20).  Samsung also presented no evidence that the claim term "unlock" is indefinite.  Samsung cites only to Dr. Cockburn's testimony that, as the '721 patent expressly teaches, "unlocking" can encompass sliding to answer a telephone call.  (Dkt. 1806-1 at 5 (citing Dkt. 1623 at 633, JX10).)  Dr. Cockburn testified that a person of ordinary skill would understand what the term unlock means.  (Dkt. 1624 at 632:13-633:16.)

**Claim 18 of the '172 Patent:**  Samsung's expert, Dr. Wigdor, offered a single invalidity theory based on the alleged obviousness of claim 18 in view of Robinson over Xrgomics.  This combination fails to disclose all of the elements of claim 18.  (Dkt. 1804 at 3; Dkt. 1717 at 2056:17-24 (Wigdor).)  Dr. Wigdor conceded that the Robinson reference does not disclose the "current character string," (Dkt. 1717 at 2016:3-24), and Dr. Cockburn confirmed that the elements missing from the Robinson reference could not be supplied by the Xrgomics reference, which lacks some of the same elements.  (4/25/14 Tr. at 2902:12-2906:2.)  Dr. Wigdor also

admitted that the PTO had the same disclosure from Robinson during prosecution of the '172 patent (4/18/14 Tr. at 2058:4-21), and Dr. Cockburn testified that the PTO also considered references disclosing the same features as Xrgomics before issuing the '172 patent. (4/25/14 Tr. at 2906:14-2907:11.) Both Dr. Wigdor and Dr. Cockburn testified regarding secondary considerations, including commercial success based on millions of infringing units (Dkt. 1717 at 2036:13-19; 4/25/14 Tr. at 2906:6-13) and praise for the invention. (4/25/14 Tr. at 2906:6-13.)

### IV.   APPLE PRESENTED AMPLE EVIDENCE OF DAMAGES

**Lost Profits:** Apple presented substantial evidence on the *Panduit* factors. <u>First</u>, Apple demonstrated that Samsung's alternatives infringed, were unavailable, or were inferior to the patented technology.[3] There is no merit to Samsung's arguments that the evidence was insufficient to establish: (1) the inferiority of a pull-down menu or tap-to-dial in place of a pop-up menu for the '647 patent,[4] (2) the relevance of Dr. Hauser's survey evidence with respect to the '414 patent,[5] (3) the inferiority of Samsung's proposed alternatives to the '721 and '172 patents, including the accuracy of Hauser's survey description of the '172 patent and alternatives to it,[6] (4) the inferiority and unavailability of alternatives to the '959 patent,[7] and (5) the relevance and accuracy of Dr Hauser's survey in measuring demand for the '647 patent, including in view of

---

[3] (Dkt. 1623 at 679:22-687:17 ('721 patent); Dkt. 1623 at 695:24-705:17 ('172 patent); 4/22/14 Tr. at 2797:3-2799:5; Dkt. 1714 at 1249:14-1253:11 ('647 patent); Dkt. 1624 at 996:15-998:10; Dkt. 1714 at 1259:22-1260:7; 4/22/14 Tr. at 2818:13-2819:8 ('959 patent); 4/22/14 Tr. at 2839:9-2841:18; Dkt. 1714 at 1256:22-1257:14 ('414 patent); Dkt. 1714 at 1075:16-20, 1116:11-24, 1124:3-17, 1126:1-6 (Hauser); PX120, PX137A, PX141, PX163, PX168, PX169, PX181.)

[4] For example, Dr. Mowry testified that a pull-down menu would still infringe the '647 patent, and that the pull-down menu and tap-to-dial were both inferior to the '647 patented technology. (4/22/14 Tr. at 2797:7-2799:5.)

[5] Samsung recycles its previously-rejected argument that Dr. Hauser's description does not capture elements of claim 20 of the '414 patent. (Dkt. 1326 at 35-36.) But Dr. Snoeren testified that in the accused products attempts to remove the separate synchronization components of claim 20 would result in "impacts" and "side effects" visible to the user. (Dkt. 1624 at 981:18-983:16; Dkt. 1714 at 1037:13-1039:2.) Because of the fundamental change it would require to the Android architecture Samsung employs, Samsung could not implement a single thread alternative to claim 20. (Dkt. 1715 at 1283:24-1284:15.)

[6] Dkt. 1623 at 679:22-687:17, 695:24-705:17 (inferiority of alternatives); *id.* 753:1-6 (Hauser's survey re '172 patent was "crystal clear"); 4/25/14 Tr. at 2907:12-2908:13; PX168.

[7] For the '959 Patent, there is no evidence Samsung's proposed GSA 2.7 alternative was available at the relevant design-around time (Dkt. 1717 at 1956:16-23), and the "Internet-only" design does not provide universal search at all. (4/25/14 Tr. at 2818:16-2819:8).

underlying software architecture and the Federal Circuit's recent *Motorola* opinion.[8]

*Second*, Apple presented ample evidence of demand for the iPhone and for each patented feature through the testimony of its technical, survey,[9] and damages experts, and through Samsung's own documents. (*See* Dkt. 1670 at 4:15-5:2.) There is no merit to Samsung's arguments regarding (1) evidence consumers welcomed the return of universal search or 98% of results were insufficient[10] or (2) that Hauser's survey was flawed.[11] *Third*, Apple presented evidence supporting Dr. Vellturo's "off-the-market" lost profit periods, including (1) testimony from Dr. Cockburn regarding the "months" it would take to design around the '721 and '172 patents, and (2) evidence that Samsung never designed around the '647 patent. (*Id*. at 5:2-7.) *Fourth*, Mr. Sexton and Dr. Vellturo testified that Apple would have had sufficient capacity to meet demand. (*Id.* at 5:8-9.) *Fifth*, Dr. Vellturo's reliance on the survey results was justified, as the Court found. (*See* Dkt. 1326 at 28:8-31:11.) *Sixth*, Dr. Vellturo properly quantified lost profits and relied on a market share allocation. (*See* Dkt. 1670 at 5:11-15.) *Finally*, Apple established that its products compete with the accused products. (*Id*. at 5:16-17.)

**Reasonable Royalties:** Dr. Vellturo provided detailed testimony about the hypothetical negotiation between Apple and Samsung in support of his reasonable royalty rates. (Dkt. 1715 at

---

[8] Dr. Hauser's survey did not have to address the underlying software architecture – it accurately captured the benefits of the patented feature to the user. (Tr. at 891:5-17). Samsung identified no alternative providing those same benefits with a different underlying software architecture. Further, the feature Dr. Hauser tested – multiple actions for detected structures – remains infringing under the *Motorola* claim construction. Because the *Motorola* ruling *broadens* the scope of the claims to include single actions as well as multiple actions for a particular structure, Dr. Hauser's survey undervalued the benefits of the patented feature in comparison to non-infringing alternatives. Dr. Hauser's survey evidence is more than sufficient.

[9] For the same reasons the Court rejected Samsung's *Daubert* motion, Samsung cannot show that Dr. Hauser's survey – which demonstrated significant demand for the patented features – is unreliable. (*See* Dkt. 1670 at 4:19-28.)

[10] Consumer demand for universal search is shown by PX163, PX193, PX110, PX137B and DX308 (600 million uses in one week of universal search; 14 million uses of local search).

[11] The survey animations and screen shots prove that Dr. Hauser's feature descriptions were not confusing. (PX 139, PX140). Dr. Hauser testified that his pretest, performed by experienced interviewers whom he personally trained and directed, confirmed respondents understood the descriptions and the survey tasks. (Dkt. 1714 at 1086:25-1088:3). Dr. Reibstein's flawed pretest was an improper memory test, which precluded respondents from looking back at survey descriptions, and was based on leading questions (4/18/14 Tr. at 2129:16-21, 2131:16-2134:7 (Reibstein); Dkt. 1714 at 1108:12-20 (Hauser).)

1301:8-1321:25; *see also* PX222A.036-PX222A.042.)  The Court has already rejected Samsung's attacks on the reliability of Dr. Hauser's survey (Dkt. 1326 at 24-36), and Dr. Vellturo's use of expected lost income in his reasonable royalty analysis (*id.* at 38-39).  The Court has also rejected Samsung's argument that royalty rates that might require the infringer to either raise prices or reduce profit margins are per se unreasonable.  (*Id.*)  Finally, it was proper to include in the royalty base smartphones that, although initially sold with non-infringing search functionality, were later updated to include infringing functionality.  (Dkt. 1624 at 996:15-998:10.)

**Galaxy SII Products**:  The Court previously rejected Samsung's argument that Apple cannot recover damages for Galaxy SII sales that overlap with the 1846 verdict.  (Dkt. 1398:3.)

**Notice:**  Apple's August 4, 2010 presentation put Samsung on notice that it was infringing the '647 patent by selling "Samsung phones using Android standard applications," covering the accused Android products in this case.  (PX132.015.)  In the 1846 case, the Court rejected Samsung's argument, holding that Apple's presentation was sufficiently specific to give notice as to all accused devices.  (1846 Dkt. 2690 at 6 (citing *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012)).).  Here, the August 4, 2010 presentation constitutes even more specific notice, because it identifies "Samsung phones using Android standard applications."

## V. SAMSUNG IS NOT ENTITLED TO JMOL ON THE '239 AND '449 PATENTS

A reasonable jury certainly could – and should – find that Apple does not infringe the '239 and '449 patents.  In its perfunctory JMOL motion, Samsung contends that "Apple's non-infringement arguments are based on erroneous claim constructions."  (Dkt. 1806-1 at 7.)  But Apple applied the plain meaning of the claim language and demonstrated that its products do not satisfy several claim limitations.  (*See* Dkt. 1301 at 4-9; Dkt. 1804 at 6-8 (Apple's JMOL motion identifying testimony and evidence supporting Apple's non-infringement arguments).)

Nor is Samsung entitled as a matter of law to the damages it seeks.  The jury may find that Dr. Rao's and Dr. Kearl's conclusory testimony was insufficient to support the claimed amounts or that only some, but not all, of the accused features infringe.  Lower damages amounts would also be supported by the record evidence including, for example, the price that Samsung paid to purchase each patent.  (JX24; PX246; 4/22/14 Tr. at 2668:17-20 (Kearl).)

| | |
|---|---|
| Dated: April 26, 2014 | MORRISON & FOERSTER LLP |
| | By: */s/ Harold J. McElhinny* |
| | HAROLD J. MCELHINNY |
| | Attorneys for Plaintiff and Counterclaim-Defendant APPLE INC. |

APPLE'S OPPOSITION TO SAMSUNG'S RULE 50(A) MOTION AT THE CLOSE OF ALL EVIDENCE
CASE NO.12-cv-00630-LHK (PSG)
sf-3408501

9