(d)  Prior to the execution of this Agreement it has informed in writing the other party of any patents of such party that are deemed to be Conditional Patents.

(e)  In the five (5) years prior to the execution of this Agreement, neither party assigned (partially or otherwise) or otherwise committed to assign more than an insignificant portion of its past, present or future patent rights to any third parties.

8.2    Apple and IBM.  Apple hereby represents and warrants that it has entered into no agreements or arrangements with International Business Machines Corporation ("IBM"), the third party joint owner of OTLC, with respect to licensing or enforcement of the OTLC patents to or against Microsoft per se.

8.3    Disclaimer.  EXCEPT AS EXPRESSLY SET FORTH HEREIN, NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE CONDITION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF ANY RIGHTS PROVIDED HEREUNDER NOR DOES EITHER PARTY ASSUME ANY LIABILITY IN RESPECT OF ANY INFRINGEMENT OF PATENT RIGHTS OR OTHER RIGHTS OF THIRD PARTIES DUE TO THE OTHER PARTY'S EXERCISE OF THE LICENSES AND RIGHTS GRANTED HEREIN.  NEITHER PARTY MAKES ANY REPRESENTATION OR WARRANTY THAT THE EXERCISE OF THE LICENSES AND RIGHTS GRANTED HEREIN WILL NOT INFRINGE ANY PATENT OR OTHER RIGHTS OF ANY THIRD PARTIES.

## SECTION 9

### Other Obligations and Restrictions Regarding Patent Rights

9.1    Assignment of Licensed Patents.  Neither party shall assign any of its Licensed Patents or its Conditional Patents unless such assignment is subject to such other party's licenses, covenants, representations, warrantees and releases and other rights under this Agreement; the foregoing shall include without limitation a representation, warranty, and covenant from such an assignee to grant the immunities of Sections 2.3 and 2.4 to Authorized Licensees.  Any assignment of rights to any inventions which either party now has, or hereafter obtains, the ability or right to grant licenses or immunity from suit to the other party, shall be subject to the terms and conditions of this Agreement such that any resulting patents from those inventions shall be licensed to the other party as if they were in fact Licensed Patents.  Any attempted assignment in derogation of the foregoing provisions shall be null and void.

9.2    Validity and Scope.  Nothing contained in this Agreement shall be construed as a warranty or representation by either party as to the validity or scope of any of its Licensed Patents or Conditional Patents.

-11-

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

9.3     No Restriction of Other Rights.  Nothing contained in this Agreement shall be construed as limiting the rights which the parties have outside the scope of the licenses granted hereunder, or restricting the right of either party or any of its Subsidiaries to make, have made, use, lease, sell, offer for sale, import or otherwise dispose of any particular product or products not licensed herein.

9.4     OTLC Patent Rights.  In addition to the provisions of Section 5.3, Apple agrees to transmit the letter shown in Exhibit B to OTLC, and to vote Apple's shares of common stock in favor of the grant of licenses, covenants and releases to Microsoft of the scope set forth in Sections 2, 3 and 4 .  The letter will be transmitted within seven (7) days of the Effective Date.  Apple agrees it will not assign its interest in whole or in part in OTLC for seven (7) days from the Effective Date.

9.5     Notice Regarding Potentially Licensed Patents.  Each party shall, upon request from the other party sufficiently identifying any particular patents, inform the other party as to the extent to which any such patents are subject to the licenses and rights granted hereunder.  If such licenses or rights under said patents are restricted in scope or otherwise unavailable, copies of all pertinent provisions of any contract or other arrangement creating such restrictions shall, upon request, be furnished to the party making such request, unless such disclosure is prevented by such contract or other legal obligation, and in that event a statement of the nature of such restriction will be provided to the extent allowed by such contract or other legal obligation.

9.6     Prosecution and Maintenance.  Neither of the parties hereto, nor any of their respective Subsidiaries shall be required hereunder to file any patent application, or to secure any patent or patent rights, or to maintain any patent in force, or to provide copies of patent applications to the other party or its Subsidiaries, or to disclose any inventions described or claimed in such patent applications.

9.7     Enforcement.  Neither party shall have any obligation hereunder to institute any action or suit against third parties for infringement of any of its Licensed Patents or to defend any action or suit brought by a third party which challenges or concerns the validity of any of its Licensed Patents. In addition, neither party shall have any right to institute any action or suit against third parties for infringement of any of the other party's Licensed Patents.

## SECTION 10

## Other Proprietary Rights

10.1     The parties understand and agree that no license or other right is granted herein to either party, directly or by implication, estoppel or otherwise, with respect to any trade secrets, know-how, design patents or registrations or copyright rights and that no such license or other right shall arise from the consummation of this Agreement or from any acts, statements or dealings leading to such consummation.  Except as specifically provided herein, neither party is required hereunder to furnish or disclose to the other any technical or other information.

-12-

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER                                                      APL-ITC796-0000010031

10.2    Nothing contained in this Agreement shall be construed as conferring any right to use in advertising, publicity, or other promotional activities any name, trade name, trademark, or other designation of either party hereto or of its Subsidiaries (including any contraction, abbreviation or simulation or any of the foregoing). Nor shall either party be permitted or required to mark any of its specific Products as "licensed by" the other party or otherwise state or imply that a product of one party is endorsed by the other party, unless specifically authorized to do so by an agreement signed by both parties.

## SECTION 11

### Limitation of Liability

EACH PARTY AGREES THAT THE OTHER PARTY SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT OR PUNITIVE DAMAGES EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## SECTION 12

### Acquisitions and Change of Control

12.1    Change of Control.

In the event that, during the Term hereof, a party hereto (the "Acquired Party") experiences a Change Of Control (a "Transaction") with respect to a third party (the "Acquiring Party"):

(a) the Acquired Party shall promptly notify the other party (the "Non-Acquiring Party") thereof in writing prior to the Transaction;

(b) The Capture Date shall be modified to be the earlier of (A) the original Capture Date, or (B) the date immediately prior to the effective date of such Transaction, and accordingly, the licenses, warrantees, representations and covenants granted by the parties in Section 2 and to Conditional Patents under Section 6 shall thereafter be limited to the party's Licensed Patents and Conditional Patents issued or issuing from patent applications having an Effective Filing Date on or before the modified Capture Date;

(c) The Acquired Party Licensed Products shall be limited to only those Licensed Products of the Acquired Party or its Subsidiaries which were Commercialized Products prior to the effective date of such Transaction ("Old Products") and any future versions, updates, upgrades, and successors (so long as, for Licensed Programs, they are backward compatible) of the Old Products ("New Versions"), but only to the extent such New Versions use or embody inventions used or embodied in the Old Products. In such a case, New Versions of the Old Products will not be licensed to the extent they incorporate inventions beyond those which were included in Old Products, and new

-13-

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

APL-ITC796-0000010032

products of the Acquired Party and any and all products of the Acquiring Party will also not be licensed;

        (d)  Such Transaction shall not affect any rights granted to the Non-Acquiring Party by the Acquired Party, such licenses, warrantees, representations and covenants will continue for the full term of the Licensed Patents defined in accordance with the modified Capture Date for all Licensed Products; and

        (e)  The releases granted in Section 4 shall survive as to the Non-Acquiring Party and Acquired Party, but such release for the Acquired Party shall not extend to the Acquiring Party;

    12.2   Personal Licenses, No Assignment of Rights Under Agreement.  The rights, licenses, representations, warrantees, covenants and releases granted to Microsoft and Apple under this Agreement shall be personal to the parties.  Other than specifically provided for in this Section 12, neither party shall have any rights to assign or otherwise transfer any of its rights or privileges under this Agreement whatsoever to any third party under action of law or otherwise, including in connection with the insolvency or bankruptcy of the party, without the prior written consent of the other party.  Any attempted assignment or transfer in derogation of the foregoing shall be null and void.

## SECTION 13

### Dispute Resolution

    13.1   Negotiation.  The parties shall make a good faith attempt to resolve any dispute or claim arising out of or related to this Agreement through negotiation.  In the event that either party hereto believes that the other party has failed to operate in accordance with this Agreement, such party shall give written notice of such failure to the other party.  Such written notice shall describe the basis for such contention in reasonable detail.  Within fifteen (15) days after such written notice is given by any party, the Chief Financial Officers of each of the parties shall meet and make a good faith attempt to resolve such dispute or claim.  Such good faith attempt shall continue for fifteen (15) days after the date of the written notice.

    13.2   Mediation.  In the event that any dispute or claim arising out of or related to this Agreement is not settled by the parties within the fifteen (15) day negotiation period set forth above, the parties will attempt in good faith to resolve such dispute or claim by mediation in accordance with the American Arbitration Association Commercial Mediation Rules.  The location of the mediation shall be in King County, Washington, if initiated by Apple, and in Santa Clara County, California, if initiated by Microsoft.  The mediation shall be held within thirty (30) days of the end of the fifteen (15) day negotiation period for a period no longer than two (2) days.  Nothing herein, however, shall prohibit either party from exercising any other rights or remedies, including initiating court proceedings if such party would be substantially prejudiced by a failure to act during the time that such good faith efforts are being made to resolve the dispute or claim through negotiation or

-14-

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

mediation; however, the negotiation and mediation efforts shall continue contemporaneously with any such court proceeding.  The costs of mediation shall be shared equally by the parties to the mediation. A settlement reached by mediation shall only be binding on the parties if it is mutually agreeable and voluntarily signed by both parties.

13.3    Governing Law and Court Proceedings.  This Agreement shall be subject to and governed in all respects by the statutes and laws of the State of New York without regard to the conflicts of laws principles thereof, with the exception of disputes related to the non-assignability of this Agreement, which disputes shall be subject to and governed by Federal Law.  The Superior Court of King County and/or the United States District Court residing in Seattle shall have exclusive jurisdiction and venue over all controversies in connection herewith initiated by Apple.  The Superior Court of Santa Clara County and/or the United States District Court residing in San Jose shall have exclusive jurisdiction and venue over all controversies in connection herewith initiated by Microsoft. Each party hereby irrevocably consents to such exclusive and personal jurisdiction and venue.  The parties may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief, as necessary, without breach of this Section 13.3.

## SECTION 14

### General

14.1    Entire Agreement; Amendment.  This Agreement including the exhibits and attachments hereto, constitute the final, complete and exclusive agreement and understanding between the parties hereto and integrate all prior discussions between them related to their subject matter.  This Agreement supersedes and governs any other prior or collateral agreements with respect to the subject matter hereof.  Neither this Agreement nor any term hereof may be amended, waived, discharged or terminated other than by a written instrument signed by the party against whom enforcement of any such amendment, waiver, discharge or termination is sought.  The construction, performance and enforcement of this Agreement, including the mutual consideration exchanged by the parties hereunder, shall be entirely separate from the Concurrent Agreements.  A breach of any or all of the terms or conditions of the Concurrent Agreements, whether material or not, shall have no affect on the rights and obligations of the parties hereunder.

14.2    Notices.  Any notice or other communication given under this Agreement shall be sufficient if in writing and sent by registered or certified mail, return receipt requested, postage prepaid, to a party at its address set forth below (or at such other address as shall be designated for such purpose by such party in a written notice to the other party hereto):

(a)    if to Apple, to it at:

1 Infinite Loop
Cupertino, CA 95014
Attention:  Chief Financial Officer

-15-

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

with a copy addressed as set forth above but to the attention of:  the General Counsel.
with a copy to:

Larry W. Sonsini
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94306

(b)     if to Microsoft, to it at:

Microsoft Corporation
One Microsoft Way
Building 8
North Office 2211
Redmond, WA 98052
Attention: Chief Financial Officer

with a copy addressed as set forth above but to the attention of:  the General Counsel.

All such notices and communications shall be effective when received by the addressee.

14.3    Force Majeure.  Neither party will be responsible for any failure to perform its obligations under this Agreement due to causes beyond its reasonable control, including but not limited to, acts of God, war, riot, embargoes, acts of civil or military authorities, fire, floods or accidents.

14.4    Waiver.  The waiver, express or implied, by either party of any breach of this Agreement by the other party will not waive any subsequent breach by such party of the same or a different kind.

14.5    Headings.  The headings to the Sections and Subsections of this Agreement are included merely for convenience of reference and shall not affect the meaning of the language included therein.

14.6    Independent Contractors.  The parties acknowledge and agree that they are dealing with each other hereunder as independent contractors. Nothing contained in this Agreement shall be interpreted as constituting either party the joint venturer, employee or partner of the other party or as conferring upon either party the power of authority to bind the other party in any transaction with third parties.

-16-

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

14.7   Severablity.  If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restriction of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

14.8   Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  For purposes hereof, a facsimile copy of this Agreement, including the signature pages hereto, shall be deemed to be an original.  Notwithstanding the foregoing, the parties shall deliver original execution copies of this Agreement to one another as soon as practicable following execution thereof.

14.9   Confidentiality and Public Disclosures.  Except as otherwise provided in this section, the parties agree that the terms and conditions of this Agreement are confidential and will be treated with at least the same care as other confidential information held by the parties.  The timing as to the disclosure of the existence of this Agreement shall be mutually agreed upon between the parties. Unless otherwise agreed in writing, the parties comments on this Agreement shall be limited to substantially the following:  "Apple and Microsoft have entered into a broad patent cross-license agreement.  The terms and conditions of which are confidential."  Under no circumstances shall the parties disclose the financial terms of this Agreement unless required by law or in conjunction with a judicial proceeding, in which case reasonable care will be taken to limit disclosure and dissemination of the terms.  If either party is subsequently required to make such disclosure or a filing with the Securities and Exchange Commission ("SEC Documents"), it shall advise the other party in advance of such a disclosure, and shall otherwise minimize the dissemination of information disclosed by, for example, redacting to the fullest extent permissible the terms and conditions of this Agreement, including the payment information, and not otherwise publicly promoting or disseminating any information disclosed in the SEC Documents.  Apple has determined that the method of recording this Agreement for accounting purposes does not require specific disclosure of the financial terms of

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER                                    APL-ITC796-0000010036

this Agreement.  This confidentiality provision shall in all other respects continue to be in force for both parties even if such a disclosure is required.  The parties hereby understand and acknowledge that the confidentiality of this Agreement is a material consideration to this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective authorized officers as of the date aforesaid.

APPLE COMPUTER, INC.

By: _____

Name: _____John B. Douglas, III_____

Title: _____Senior Vice President_____

MICROSOFT CORPORATION

By: _____

Name: _____Greg Maffei_____

Title: _____Chief Financial Officer___

-18-

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

SCHEDULE A - Instructions for Payment

The payment required under Section 5.1 above shall be made in United States Dollars by wire transfer to Apple at:

| | |
|---|---|
| Bank: | Bank of America, San Francisco |
| ABA#: | 121-000-358 |
| For Acct Of: | Apple Computer, Inc. |
| Acct No.: | 1233-6-04966 |

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

SCHEDULE B – Letter from Apple re: OTLC

[General Counsel of Apple]
August ___, 1997

[IBM]

Re:  License to Microsoft Corporation

I am writing to advise you that Apple Computer, Inc., has entered into a broad patent cross-license with Microsoft Corporation.  As a result of this cross-license agreement, Apple no longer has any financial interest in resolution of any OTLC claims against Microsoft.  Consequently, we wish to step aside and hereby authorize IBM to take any and all necessary steps to grant Microsoft a license to the OTLC patents consistent with both the IBM/Microsoft patent agreement and the Apple/Microsoft patent agreement.  Our authorization includes a royalty free license.

Apple intends to bring this matter before the Board of directors of OTLC at their next meeting and will cooperate fully with IBM and OTLC in this regard.

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER

August 11, 1997

Microsoft Corporation
One Microsoft Way
Building 8
North Office
Richmond, WA 98052

Dear Sirs:

In payment of the fee pursuant to Section 5 of the Patent Cross License Agreement dated as of August 5, 1997 between Apple Computer, Inc. and Microsoft Corporation, we hereby acknowledge receipt of a wire transfer of immediately available funds to our account in the amount of $93,076,924.

Very truly yours,

**APPLE COMPUTER, INC.**

By _____

Name: Fred Anderson
Title: Executive Vice President and
Chief Financial Officer

BE1::ODMA\PCDOCS\SQL2\406878\2
August 8, 1997

CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER