JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

HAROLD J. McELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
JAMES P. BENNETT (CA SBN 65179)
jbennett@mofo.com
JACK W. LONDEN (CA SBN 85776)
jlonden@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
RUTH N. BORENSTEIN (CA SBN 133797)
rborenstein@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendant. | Case No. 5:12-cv-00630-LHK (PSG) <br><br> **APPLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS** <br><br> Date:  July 10, 2014 <br> Time:  1:30 p.m. <br> Place:  Courtroom 8, 4th Floor <br> Judge:  Hon. Lucy H. Koh |

1

## NOTICE OF MOTION

2       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3       PLEASE TAKE NOTICE that on July 10, 2014, at 1:30 p.m., or as soon thereafter as the

4   matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court

5   for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street,

6   San Jose, CA 95113, Plaintiff Apple Inc. ("Apple") shall and hereby does move for judgment as a

7   matter of law (renewed), an amended judgment, a new trial, and damages enhancements against

8   Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung

9   Telecommunications America, Inc. ("Samsung"), as follows:

10      • Judgment as a matter of law that Samsung infringed claim 8 of the '721 patent by

11          making, using, selling, and/or importing within the United States the Galaxy SII,

12          Galaxy SII (Epic 4G Touch), and Galaxy SII (Skyrocket) products, and a new trial on

13          damages for that infringement; or in the alternative, a new trial on infringement and

14          damages.

15      • Judgment as a matter of law that Samsung infringed claim 20 of the '414 patent by

16          making, using, selling, and/or importing within the United States the Admire, Galaxy

17          Nexus, Galaxy Note, Galaxy Note II, Galaxy SII, Galaxy SII (Epic 4G Touch), Galaxy

18          SII (Skyrocket), Galaxy SIII, Galaxy Tab 2 10.1, and Stratosphere, and a new trial on

19          damages for that infringement; or in the alternative, a new trial on infringement and

20          damages.

21      • Judgment as a matter of law that Samsung infringed claim 25 of the '959 patent by

22          making, using, selling, and/or importing within the United States the Admire, Galaxy

23          Nexus, Galaxy Note, Galaxy Note II, Galaxy SII, Galaxy SII (Epic 4G Touch), Galaxy

24          SII (Skyrocket), Galaxy SIII, Galaxy Tab 2 10.1, and Stratosphere, and a new trial on

25          damages for that infringement; or in the alternative, a new trial on infringement and

26          damages.

27      • Judgment as a matter of law that Samsung willfully infringed claim 9 of the '647

28          patent.

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

i

- Judgment as a matter of law that Samsung failed to establish the affirmative defenses listed in Samsung's pleadings.

- Enhanced damages by trebling the jury award for infringement of the '721 patent from $2,990,625 to $8,971,875; and trebling the jury award for infringement of the '647 patent from $98,690,625 to $296,071,875.

- Supplemental damages through judgment.

- Prejudgment interest of $6,468,029 through July 10, 2014, with an additional $11,040.36 in prejudgment interest for each additional day prior to entry of judgment.

- Judgment as a matter of law that Apple does not infringe claim 27 of the '449 patent and vacatur of the $158,400 damages award, or in the alternative, a new trial on infringement and damages.

- Judgment as a matter of law that Apple's iPad products do not infringe claim 15 of the '239 patent.

- A new trial on infringement for the '414 and '959 patents (in the event that judgment of infringement is not granted); a new trial on willfulness for all patents other than the '721 patent (and also other than the '647 patent if the Court grants JMOL of willfulness for that patent); and a new trial on damages for all five of Apple's asserted patents, based on Samsung's improper and prejudicial statements.

This motion is based on this notice of motion and supporting memorandum, the accompanying declarations of Marylee Robinson and Nathan Sabri, the trial record, and such other written or oral argument as was presented and may be presented at or before the time this motion is taken under submission by the Court.

## **RELIEF REQUESTED**

Apple respectfully seeks an order that: (1) Samsung's Galaxy SII, Galaxy SII (Epic 4G Touch), and Galaxy SII (Skyrocket) products directly infringe claim 8 of the '721 patent, or in the alternative a new trial on infringement and damages; (2) all accused Samsung products infringe claim 20 of the '414 patent, or in the alternative a new trial on infringement and damages; (3) all accused Samsung products infringe claim 25 of the '959 patent, or in the alternative a new trial on

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

ii

1  infringement and damages; (4) Apple is entitled to a new trial on damages for Samsung's

2  infringement of claim 8 of the '721 patent based on Galaxy S II, Galaxy S II (Epic 4G Touch),

3  and Galaxy S II (Skyrocket) products, Samsung's infringement of claim 20 of the '414 patent,

4  and Samsung's infringement of claim 25 of the '959 patent, (5) Samsung failed to establish the

5  affirmative defenses listed in its pleadings and pre-trial statement; (6) Apple does not infringe

6  claim 27 of the '449 patent and vacatur of the $158,400 damages award, or in the alternative a

7  new trial on infringement and damages; (7) Apple's iPad products do not infringe claim 15 of the

8  '239 patent; and (8) Apple is entitled to a new trial on infringement for the '414 and '959 patents

9  (in the event that judgment of infringement is not granted); a new trial on willfulness for all

10  patents other than the '721 patent; and a new trial on damages for all five of Apple's asserted

11  patents based on Samsung's improper and prejudicial statements.

12      Apple respectfully seeks a further order granting it (1) enhanced damages of

13  $203,362,500, bringing the total award to $322,987,500; (2) supplemental damages through

14  judgment; and (3) prejudgment interest of $6,468,029 through July 10, 2014, with an additional

15  $11,040.36 in prejudgment interest for each additional day prior to entry of judgment.

16

17  Dated: May 23, 2014                    MORRISON & FOERSTER LLP

18

19                                    By:   /s/ Rachel Krevans
                                          _____
20                                        RACHEL KREVANS

21                                        Attorneys for Plaintiff and
                                          Counterclaim-Defendant
22                                        APPLE INC.

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

**Page**

3  NOTICE OF MOTION ........................................................................................................i

4  RELIEF REQUESTED ......................................................................................................ii

TABLE OF AUTHORITIES .............................................................................................vi

5  INTRODUCTION .............................................................................................................. 1

6  LEGAL STANDARDS ...................................................................................................... 1

7  ARGUMENT ..................................................................................................................... 3

8  I.    NO REASONABLE JURY COULD CONCLUDE THAT SAMSUNG'S
       GALAXY SII PRODUCTS DID NOT INFRINGE CLAIM 8 OF THE
9      '721 PATENT. ......................................................................................................... 3

       A.   Apple's Evidence Established that the Galaxy SII Products Meet
10          Every Element of Claim 8. ........................................................................... 3

       B.   No Substantial Evidence Supports the Non-Infringement Verdict. ............. 5

11  II.   NO REASONABLE JURY COULD CONCLUDE THAT SAMSUNG
12        DID NOT INFRINGE CLAIM 20 OF THE '414 PATENT. ............................... 6

13        A.   Apple's Evidence Established that the Accused Products Meet
               Every Element Of Claim 20. ........................................................................ 7

14        B.   No Substantial Evidence Supports the Non-Infringement Verdict. ........... 11

15  III.  NO REASONABLE JURY COULD CONCLUDE THAT SAMSUNG
          DID NOT INFRINGE CLAIM 25 OF THE '959 PATENT. ............................. 15

16        A.   Apple's Evidence Established that the Accused Products Meet
               Every Element of Claim 25. ....................................................................... 16

17        B.   No Substantial Evidence Supports the Non-Infringement Verdict. ........... 18

18  IV.   NO REASONABLE JURY COULD CONCLUDE THAT SAMSUNG
          DID NOT WILLFULLY INFRINGE THE '647 PATENT. .............................. 20

19  V.    APPLE IS ENTITLED TO JUDGMENT THAT SAMSUNG FAILED TO
          PROVE ITS AFFIRMATIVE DEFENSES. ...................................................... 22

20  VI.   APPLE IS ENTITLED TO ENHANCED DAMAGES, SUPPLEMENTAL
          DAMAGES, AND PREJUDGMENT INTEREST. ........................................... 23

21        A.   Substantial Damages Enhancements Are Warranted. ................................ 23

22             1.   The Court Should Award Enhanced Damages for the '721
                    Patent. .............................................................................................. 24

23             2.   The Court Should Award Enhanced Damages for the '647
24                  Patent. .............................................................................................. 27

25        B.   Supplemental Damages Are Warranted ..................................................... 28

          C.   Prejudgment Interest Is Warranted ........................................................... 29

26        D.   Apple Requests that the Court Award Supplemental Damages and
               Prejudgment Interest at this Time. ............................................................ 31

27

28

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VII.   APPLE IS ENTITLED TO JUDGMENT OR A NEW TRIAL ON
       SAMSUNG'S CLAIM FOR INFRINGEMENT OF CLAIM 27 OF THE
       '449 PATENT. ............................................................................................................ 32

VIII.  APPLE IS ENTITLED TO JUDGMENT THAT ITS IPAD PRODUCTS
       DO NOT INFRINGE CLAIM 15 OF THE '239 PATENT ............................................ 36

IX.    SAMSUNG'S IMPROPER AND PREJUDICIAL STATEMENTS
       REQUIRE A NEW TRIAL ................................................................................................ 37

       A.    A New Trial Should be Granted to Correct Samsung's False
             Assertions that Apple Has Never Practiced the '172, '414, and '959
             Patents. ............................................................................................................ 37

       B.    A New Trial Should Be Granted to Correct Samsung's Prejudicial
             References to the Possibility of a Permanent Injunction. .................................... 41

       C.    A New Trial Should Be Granted to Correct Samsung's Prejudicial
             References to the Federal Circuit's Preliminary Injunction
             Decision ............................................................................................................ 42

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Allstate Ins. Co. v. Herron*,
   634 F.3d 1101 (9th Cir. 2011) ................................................................................ 2

5

*Atmel Corp. v. Silicon Storage Tech., Inc.*,
6
   202 F. Supp. 2d 1096 (N.D. Cal. 2002), *aff'd*, 76 F. App'x 298 (Fed. Cir. 2003) ................ 31

7

*Bard Perpheral Vascular, Inv. v. W.L. Gore & Assocs., Inc.*,
   683 F.3d 1003 (Fed. Cir. 2012) .................................................................... 23, 24

8

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
9
   807 F.2d 964 (Fed. Cir. 1986) .................................................................... 30

10

*Broadcom Corp. v. Emulex Corp.*,
   732 F.3d 1325 (Fed. Cir. 2013) .................................................................... 5

11

*Callicrate v. Wadsworth Mfg., Inc.*,
12
   427 F.3d 1361 (Fed. Cir. 2005) .................................................................... 2, 3

13

*Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*,
14
   782 F. Supp. 2d 667 (N.D. Ill. 2011) .................................................... 12

15

*Ciena Corp. v. Corvis Corp.*,
16
   352 F. Supp. 2d 526 (D. Del. 2005) ............................................................ 42

17

*City Solutions, Inc. v. Clear Channel Commc'ns*,
   365 F.3d 835 (9th Cir. 2004) .................................................................... 2

18

*Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*,
19
   831 F. Supp. 1516 (D. Colo. 1993) ............................................................ 42

20

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
21
   567 F.3d 1314 (Fed. Cir. 2009) .................................................................... 20

22

*Dillon, Read & Co. v. United States*,
   875 F.2d 293 (Fed. Cir. 1989) .................................................................... 40

23

*E-Pass Techs., Inc. v. 3Com Corp.*,
24
   473 F.3d 1213 (Fed. Cir. 2007) .................................................................... 35

25

*Finjan, Inc. v. Secure Computing Corp.*,
26
   626 F.3d 1197 (Fed. Cir. 2010) .................................................................... 3, 28

27

*Forman v. Korean Air Lines Co.*,
   84 F.3d 446 (D.C. Cir. 1996) .................................................................... 31

28

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

vi

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
No. C 03-1431 SBA, 2008 U.S. Dist. LEXIS 119930 (N.D. Cal. April 4, 2008),
*rev'd on other grounds by* 582 F.3d 1288 (Fed. Cir. 2009) ..................................... 31

*Gen. Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983) ..................................... 29

*Gorenstein Entr. Inc. v. Quality Care-USA, Inc.*,
874 F.2d 431 (7th Cir. 1989) ..................................... 31

*Gyromat Corp. v. Champion Spark Plug Co.*,
735 F.2d 549 (Fed. Cir. 1984) ..................................... 28

*Harris Corp. v. Ericsson Inc.*,
417 F.3d 1241 (Fed. Cir. 2005) ..................................... 2, 15, 20

*Henderson v. George Wash. Univ.*,
449 F.3d 127 (D.C. Cir. 2006) ..................................... 40

*In re Katz Interactive Call Processing Patent Litig.*,
639 F.3d 1303 (Fed. Cir. 2011) ..................................... 40

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) (en banc) ..................................... 20, 23, 25, 27

*Integra Lifesciencies I, Ltd. v. Merck KGaA*,
496 F.3d 1334 (Fed. Cir. 2007) ..................................... 12

*Junker v. HDC Corp.*,
No. C-07-0594 JCS, 2008 WL 3385819 (N.D. Cal. July 28, 2008) ..................................... 31

*Jurgens v. CBK, Ltd.*,
80 F.3d 1566 (Fed. Cir. 1996) ..................................... 24

*K-TEC, Inc. v. Vita-Mix Corp.*,
696 F.3d 1364 (Fed. Cir. 2012) ..................................... 25, 27

*Lakeside-Scott v. Multnomah Cnty.*,
556 F.3d 797 (9th Cir. 2009) ..................................... 2

*Lam, Inc. v. Johns–Manville Corp.*,
718 F.2d 1056 (Fed. Cir. 1983) ..................................... 30

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
798 F. Supp. 2d 541 (D. Del. 2011) ..................................... 2

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006) ..................................... 12

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

vii

*Lummus Indus., Inc. v. D.M. & E. Corp.*,
862 F.2d 267 (Fed. Cir. 1988)......................................................................... 30

*Moba v. Diamond Automation, Inc.*,
325 F.3d 1306 (Fed. Cir. 2003).................................................................*passim*

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 (9th Cir. 2007).................................................................. 2, 3, 37

*Owner-Operator Indep. Drivers Ass'n Inc. v. Comerica Bank*,
No. 12-3491, 2014 WL 1316223 (6th Cir. Apr. 2, 2014) ...................................... 31

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
725 F. Supp. 2d 474 (D. Del. 2010), *aff'd*, 711 F.3d 1348 (Fed. Cir. 2013) ......................... 25

*Rattray v. City of Nat'l City*,
51 F.3d 793 (9th Cir. 1994)............................................................................. 37

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992), *abrogated on other grounds by*
*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ................................ 24

*Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*,
No. 5:11-cv-00774-PSG, 2014 WL1008183 (N.D. Cal. Mar. 7, 2014)................................ 31

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011)........................................................................... 2

*Shannon v. United States*,
512 U.S. 573 (1994) ..................................................................................... 42

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
453 F. App'x 977 (Fed. Cir. 2011) ................................................................... 35

*S. Cal. Retail Clerks Union v. Bjorklund*,
728 F.2d 1262 (9th Cir. 1984).......................................................................... 23

*Strub v. Axon Corp.*,
168 F.3d 1321, 1998 WL 537721 (Fed. Cir. Aug. 17, 1998)................................... 36

*Stryker Corp. v. Davol Inc.*,
234 F.3d 1252 (Fed. Cir. 2000) ........................................................................ 28

*Sunderland Marine Mut. Ins. Co. v. Weeks Marine Constr. Co.*,
338 F.3d 1276 (11th Cir. 2003).......................................................................... 31

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*,
222 F.3d 958 (Fed. Cir. 2000).......................................................................... 24

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

viii

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
   939 F.2d 1540 (Fed. Cir. 1991) ............................................................................... 30

*United States v. Rosa*,
   11 F.3d 315 (2d Cir. 1993) ...................................................................................... 40

*United States v. Schuler*,
   813 F.2d 978 (9th Cir. 1987) ..................................................................... 39, 42, 43

*United States v. Sine*,
   493 F.3d 1021 (9th Cir. 2007) ................................................................................. 40

*Voda v. Medtronic Inc.*,
   899 F. Supp. 2d 1188 (W.D. Okla. 2012), *aff'd*,
   541 F. App'x 1003 (Fed. Cir. 2013), *cert. denied*,
   2014 U.S. LEXIS 3118 (U.S. May 4, 2014) .................................................... 36, 37

*Wharf v. Burlington N.R.R. Co.*,
   60 F.3d 631 (9th Cir. 1995) ............................................................................. 38, 39

**STATUTES**

35 U.S.C. § 284 ............................................................................................... 2, 23, 29

**OTHER AUTHORITIES**

Fed. R. Civ. P.
   Rule 59(a) .................................................................................................................. 2
   Rule 59(e) .................................................................................................................. 2

Fed. R. Evid.
   Rule 402 ................................................................................................................... 40
   Rule 403 ................................................................................................................... 40

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

ix

**INTRODUCTION**

Apple seeks judgment as a matter of law that Samsung's Galaxy S II products infringe claim 8 of the '721 patent, and that all of the accused Samsung products infringe claim 20 of the '414 patent and claim 25 of the '959 patent, because the evidence at trial permitted only those conclusions.  The relevant facts regarding the operation of the products and their source code was uncontroverted—the only question was whether that operation met the claim language.  For claim 8 of the '721 patent, Samsung presented no defense with respect to the Galaxy S II products—its sole defense applied only to the Galaxy Nexus (and the jury rejected that defense in finding that the Nexus infringes).  For claim 20 of the '414 patent and claim 25 of the '959 patent, Samsung's defense improperly relied on importing new limitations into the claim language.  The evidence Samsung offered at trial directed to those new limitations cannot support the non-infringement verdict.  Apple also seeks additional relief in connection with Samsung's infringement, including a judgment that Samsung willfully infringed the '647 patent; enhancement of damages in light of the egregiousness of Samsung's willful infringement; and supplemental damages and prejudgment interest, to which Apple is entitled as a matter of law.

Apple also seeks judgment as a matter of law that its accused products do not infringe claim 27 of the '449 patent and that its iPad products do not infringe claim 15 of the '239 patent, as the evidence permitted only those conclusions.  Finally, Apple seeks a new trial, based on Samsung's improper and prejudicial statements to the jury regarding (1) Apple's practice of the '172, '414, and '959 patents in its own products; (2) the possibility of permanent injunctive relief; and (3) the Federal Circuit's preliminary injunction decision.  The Court's refusal to give Apple's proffered instructions to address Samsung's highly prejudicial statements warrants a new trial on infringement for the '414 and '959 patents (in the event that judgment of infringement is not granted), a new trial on willfulness for all patents other than the '721 patent (and also other than the '647 patent if the Court grants JMOL of willfulness for that patent), and a new trial on damages for all five of Apple's asserted patents.

**LEGAL STANDARDS**

Where a jury's verdict is not supported by substantial evidence, it is reversible error to

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

1

1    deny judgment as a matter of law ("JMOL").  *SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011);

2    *see also Moba v. Diamond Automation, Inc.*, 325 F.3d 1306, 1312 (Fed. Cir. 2003).[1]  As the

3    Ninth Circuit has explained, "[j]udgment as a matter of law is proper when the evidence permits

4    only one reasonable conclusion and the conclusion is contrary to that reached by the jury."

5    *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (citation omitted).  A court

6    evaluates "whether there is a legally sufficient basis for a reasonable jury to find for the

7    nonmoving party 'under the controlling law,'" which in the context of patent infringement, is "the

8    properly construed claims."  *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1252 (Fed. Cir. 2005)

9    (citation omitted).  Courts can and do award judgment as a matter of law that a patent has been

10   infringed notwithstanding a contrary jury verdict.  *See, e.g.*, *Moba*, 325 F.3d at 1315-16

11   (reversing denial of patentee's JMOL motion on infringement); *LG Elecs. U.S.A., Inc. v.*

12   *Whirlpool Corp.*, 798 F. Supp. 2d 541, 556 (D. Del. 2011).  Where JMOL of infringement is

13   granted, a court also should grant a new trial on damages.  *Callicrate*, 427 F.3d at 1363.

14         Under Rule 59(a), a trial court may grant a new trial where "the verdict is contrary to the

15   clear weight of the evidence" or "to prevent a miscarriage of justice."  *Molski v. M.J. Cable, Inc.*,

16   481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks omitted).  "[T]he district court has

17   the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even

18   though supported by substantial evidence, where, in the court's conscientious opinion, the verdict

19   is contrary to the clear weight of the evidence."  *Id.* (internal quotation marks and alterations

20   omitted).  Whether to grant a new trial is within the trial court's discretion.  *City Solutions, Inc. v.*

21   *Clear Channel Commc'ns*, 365 F.3d 835, 843 (9th Cir. 2004).

22         Amendment of the judgment pursuant to Rule 59(e) lies within the discretion of the Court

23   in light of new information not available at trial.  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111

24   (9th Cir. 2011).  Rule 59(e) provides an appropriate avenue to incorporate supplemental damages

25   based on post-verdict infringing sales and prejudgment interest pursuant to 35 U.S.C. § 284.  *See*

26   _____

27         [1] The Federal Circuit "reviews the grant or denial of a motion for JMOL 'under the law of
     the regional circuit where the appeal from the district court normally would lie.'"  *Callicrate v.*
28   *Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citation omitted).

1   *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) (ordering

2   supplemental damages to compensate patentee for uncompensated sales).

3                                              **ARGUMENT**

4   **I.     NO REASONABLE JURY COULD CONCLUDE THAT SAMSUNG'S
            GALAXY SII PRODUCTS DID NOT INFRINGE CLAIM 8 OF THE '721**
5           **PATENT.**

6           The evidence at trial permitted only one reasonable conclusion:  Samsung's Galaxy SII

7   products infringe claim 8 of the '721 patent.  Apple presented uncontroverted evidence

8   establishing every element of its infringement claim on the Galaxy SII products.  Samsung

9   offered no infringement defense for those products *at all*, and had no grounds for a defense.

10  Samsung's sole infringement defense addressed a different product—the Galaxy Nexus—on

11  grounds that do not apply to the Galaxy SII products and that were rejected by the jury in any

12  event.  As a result, there is no substantial evidence that supports the verdict of non-infringement,

13  and the Court should grant JMOL to Apple.  At a minimum, the Court should grant a new trial on

14  infringement and damages because the verdict is contrary to the clear weight of the evidence.  *See*

15  *Molski*, 481 F.3d at 729.[2]

16          **A.     Apple's Evidence Established that the Galaxy SII Products Meet Every
                    Element of Claim 8.**
17

18          Apple's technical expert, Dr. Cockburn, testified that all accused smartphones meet the

19  first five elements of claim 8, which are common to all smartphones:  "portable electronic

20  device," "touch-sensitive display," "memory," "one or more processors," and "one or more

21  modules stored in the memory and configured for execution by the one or more processors, the

22  one or more modules including instructions."  (Trial Tr. at 658:17-659:23 (Dkt. 1623); *see* JX10

23  at 19:22-47.)  Dr. Cockburn testified that, as computing devices, all accused products require

24  modules including instructions (*i.e.*, software), processors, and memory.  (Trial Tr. at 659:20-21

25  ─────────────────────

26          [2] Apple also is entitled to a new trial on damages for the infringement of claim 8 by the
    Galaxy SII products, and for the infringement of the '414 and '959 patents discussed in Sections
    II and III below.  *See Callicrate*, 427 F.3d at 1363 ("Because substantial evidence does not
27  support the jury verdict of no infringement, this court also reverses that verdict and remands for a
    trial on damages.").
28

1   (Dkt. 1623).)  He also testified that all accused products have a touch-sensitive display and are

2   portable electronic devices.  (*Id.* at 659:22-23.)  The presence of these elements in the Galaxy SII

3   products is apparent from the devices themselves (*see, e.g.*, JX32-C, JX32-E, JX33-A, JX33-B,

4   JX34-C), as well as from the Galaxy SII User Manuals in evidence (*see, e.g.*, PX234 at 22

5   ("touch screen" listed as product feature); *see also* PX235 at 19; PX236 at 20).  These elements

6   are present in the Galaxy SII devices in the same way as the accused products found to infringe

7   claim 8, and Samsung did not dispute that the Galaxy SII products (or any accused products) meet

8   these elements.

9        Dr. Cockburn testified that the accused Galaxy SII products also meet all remaining

10  elements of claim 8 (elements 6 through 9) via their "slide to answer" functionality—an accused

11  operation used to unlock a locked phone in order to answer an incoming phone call.  (Trial Tr. at

12  673:17-674:13 (Dkt. 1623).)  As Dr. Cockburn testified, the '721 patent specification expressly

13  discloses "slide to answer" as a form of unlocking covered by claims.  (*Id.* at 662:12-16, 676:5-9.)

14  He explained that, for purposes of infringement, the "slide to answer" form of unlocking is "very

15  similar" to "slide to unlock" (the form of unlocking performed at the home screens of other

16  accused devices found by the jury to infringe claim 8).  Both operations satisfy the remaining

17  elements of the claim, because they "detect a contact with the touch-sensitive display" at an

18  "unlock image"; allow the user to "continuously move the unlock image . . . in accordance to the

19  detected contact"; provide "visual cues" for the "direction of movement of the unlock image

20  required to unlock the device"; and "unlock the device" when the unlock image is moved "to a

21  predefined unlock region."  (JX10 at 19:48-20:9.)

22       The principal difference between the "slide to unlock" and "slide to answer" forms of

23  unlocking is that the latter is only performed to receive an incoming telephone call or respond to a

24  missed text message.  Unlike the other products that the jury found to infringe claim 8, the

25  accused Galaxy SII products infringe only via "slide to answer," and thus do not display any

26  infringing behavior in the absence of receiving an incoming phone call or missed

27  message.  Unless a juror called one of the representative Galaxy SII phones admitted into

28  evidence, the jury would not have elicited the infringing "slide to answer" feature and instead

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

4

would have seen the non-infringing "Glass Unlock" home screen, which does not practice claim 8 of the '721 patent.  This may explain the jury's failure to reach the only conclusion supported by the evidence.  But that is no basis to uphold the finding of non-infringement.  As the Federal Circuit has held, "an accused device that 'sometimes, but not always, embodies a claim[] nonetheless infringes.'"  *See Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (citation omitted) (affirming JMOL of infringement).

In connection with his testimony, Dr. Cockburn showed the jury a demonstrative video of a representative Galaxy SII product performing "slide to answer."  (*See* Trial Tr. at 673:19-674:13 (Dkt. 1623); PDX40.)  As that video demonstrates, when the Galaxy SII receives an incoming call, the screen shows a green telephone icon with a small arrow next to it, similar to the green icon present in the "slide to unlock" accused phones the jury found to infringe. (PDX40.)  To unlock the phone to answer the call, the user slides the green phone icon in the direction of the arrow from a predefined area on the left side of the screen to a predefined area on the right side of the screen.  (*Id.*)  Thus, as PDX40 showed and Dr. Cockburn testified, the "slide to answer" feature in the Galaxy SII products meets elements 6 through 9 of claim 8.  (*See* Trial Tr. at 673:19-674:13 (Dkt. 1623); PDX40.)  The products detect contact with the green telephone icon, which the user continually moves in the direction of the visual cue of the arrow, and the phone is unlocked to allow a call to be answered when the icon reaches the right side of the screen.  (*Id.*)  Dr. Cockburn further testified that all accused Galaxy SII software and carrier versions displayed "more or less identical" infringing behavior as the exemplary device depicted in his demonstrative video.  (Trial Tr. at 674:9-13 (Dkt. 1623); *see also id.* at 653:17-654:5; PX300.)

### B.      No Substantial Evidence Supports the Non-Infringement Verdict.

Samsung offered no non-infringement defense for the Galaxy SII products.  Samsung's counsel did not question Dr. Cockburn about his infringement analysis for the Galaxy SII products.  Samsung's expert, Dr. Greenberg, offered no defense to infringement for the Galaxy SII products.  (Trial Tr. at 1980:1-1982:1 (Dkt. 1717) (Greenberg); *see also id.* at 2859:22-2860:4 (4/22/14) (Cockburn).)  And Dr. Greenberg did not testify regarding any differences between

1    "slide to unlock" and "slide to answer" for purposes of infringement.  During closing, Apple

2    emphasized Samsung's failure to present a non-infringement defense as to the '721 patent for any

3    product other than the Galaxy Nexus.  (*Id.* at 3206:6-9 (4/29/14).)  Rather than contesting Apple's

4    assertion, Samsung's closing confirmed it because Samsung's counsel limited his non-

5    infringement discussion to the Galaxy Nexus, which had no relevance to the Galaxy SII

6    products.[3]  (*Id.* at 3309:7-3310:8.)  Because the jury was presented with no basis to find the

7    Galaxy SII products did not infringe, Apple is entitled to a judgment of infringement.[4]

8    **II.      NO REASONABLE JURY COULD CONCLUDE THAT SAMSUNG DID NOT**
         **INFRINGE CLAIM 20 OF THE '414 PATENT.**
9

10           Infringement of claim 20 of the '414 patent turned on whether the accused products

11   include at least three synchronization software components that were "configured to

12   synchronize," in accordance with the plain and ordinary meaning of that term.  Unable to dispute

13   the evidence regarding how the devices operate and the code functions, Samsung based its non-

14   infringement defense on an unjustifiably narrowed construction of the claim language—

15   suggesting the claim requires a sync adapter be configured to perform all synchronization, or to

16   perform synchronization in a specific way, such as through a direct connection with the first

17   database.  Samsung's evidence regarding whether the accused products meet the additional

18   limitations it improperly imported into the claim cannot support the non-infringement verdict,

19   because that evidence is irrelevant to whether those products meet the plain and ordinary meaning

20   of the claim language the Court instructed the jury to apply.  *See Moba*, 325 F.3d at 1314.  The

21   _____

22           [3] Dr. Greenburg testified that the Galaxy Nexus lacked an "unlock image" because the
     unlock image in that product changed shape when touched by the user.  (Trial Tr. at 1980:1-
23   1982:1 (Dkt. 1717).)  The jury rejected that defense when it found that the Galaxy Nexus
     infringed claim 8 of the '721 patent.  (Dkt. 1884 at 5.)

24           [4] Consistent with the jury's verdict where it found infringement, Apple is entitled to
     judgment against SEC, STA, and SEA for the infringement that is the subject of Apple's JMOL
25   motion.  Dr. Velluro offered uncontroverted testimony that each entity is liable for infringement
     because each sells accused devices within the United States.  (*See* Trial Tr. at 1208:23-1209:18
26   (Dkt. 1714); *id.* at 1285:11-1286:6 (Dkt. 1715); *see also* PX142 (summary of Samsung's U.S.
     sales data).)  Accordingly, Apple is entitled to judgment against SEC and STA for their
27   infringement of the '721 patent, and against SEC, STA, and SEA for their infringement of the
     '414 and '959 patents.
28

1 Court should grant JMOL of infringement or, in the alternative, grant a new trial on infringement

2 and damages, because the non-infringement verdict is contrary to the clear weight of the

3 evidence.

   **A.     Apple's Evidence Established that the Accused Products Meet Every Element
           Of Claim 20.**

6      The trial evidence established that the accused products practice every element of claim

7 20.  For all but one, there was not even a dispute, because Samsung contested only element e.

8      **a)  A computer readable storage medium containing executable program**

9 **instructions which when executed cause a data processing system to perform a method**

10 **comprising.**  Apple's expert, Dr. Snoeren, testified that he reviewed the code, and confirmed that

11 this element was met.  (Trial Tr. at 969:21-970:7 (Dkt. 1624).)  Samsung's expert, Dr. Chase,

12 agreed that each of the accused products has a computer readable storage medium with

13 executable program instructions.  (*Id.* at 2236:20-2237:2 (4/18/14).)  Apple also introduced into

14 evidence specifications for the accused products showing internal memory and a processor

15 capable of executing program instructions.   (PX241; Trial Tr. at 655:25-656:12 (Dkt. 1623)

16 (Cockburn).)

17     **b)  executing at least one user-level non-synchronization processing thread, wherein**

18 **the at least one user-level non-synchronization processing thread is provided by a user**

19 **application which provides a user interface to allow a user to access and edit structured**

20 **data in a first store associated with a first database.**  The evidence showed that the accused

21 products include instructions for executing at least one non-synchronization processing thread as

22 described in claim element b.  Dr. Snoeren testified based on his review of the source code that

23 the accused products include executable instructions for executing at least one user-level non-

24 synchronization processing thread (Trial Tr. at 972:6-9 (Dkt. 1624)); that the user applications

25 provide these processing threads (*id.* at 972:13-17); and that the applications' user interfaces

26 allow users to access and edit structured data in a first store associated with a first database (*id.*

27 at 972:6-974:24).  Samsung's expert Dr. Chase agreed.  (*Id.* at 2237:3-2239:15 (4/18/14).)  Dr.

28 Snoeren further testified that PX103 and PX104, academic publications on which he relied and

that were admitted into evidence (*id.* at 994:11-23 (Dkt. 1624)), confirm that Google stores Gmail information in a database. Dr. Snoeren testified that the Exchange servers also store structured data in a database. (*Id.* at 996:9-14 (Dkt. 1624).) Representative accused products in evidence also show that the accused products include user applications (Contacts, Calendar, and email applications (*id.* at 972:13-17 (Snoeren))) with user interfaces that allow users to access and edit data.

     **c) executing at least one synchronization processing thread concurrently with the executing of the at least one user level non-synchronization processing thread.** Dr. Snoeren testified based on his review of the code that the accused products include instructions for executing synchronization processing threads in an overlapping time interval with the user-level non-synchronization processing thread discussed under element b, consistent with the Court's construction. (*Id.* at 974:25-977:20.) And Dr. Chase agreed that, in the accused devices, the local data discussed under element b can be synchronized with data in remote locations, "in the background without interfering with the user level application." (*Id.* at 2239:19-2240:9 (4/18/14).)

     **d) wherein the at least one synchronization processing thread is provided by a synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database**. The evidence showed that at least one synchronization software component—each accused sync adapter—is configured to synchronize and provides a synchronization processing thread in the accused devices. Dr. Snoeren confirmed that all six sync adapters are synchronization software components that are configured to synchronize structured data from a first database to structured data from a second database. (Trial Tr. at 980:13-981:10 (Dkt. 1624).) Dr. Snoeren testified regarding his reliance on Google documents admitted during his testimony, which describe each sync adapter as responsible for synchronizing its respective data class. For example, Dr. Snoeren testified about admitted exhibit PX172, which he described as a "Google document that describes the architecture of several of the Google sync adapters." (*Id.* at 982:4-16.) In language that Dr. Snoeren read to the jury, PX172 describes sync adapters as "handl[ing] *all* of the sync protocol

Apple's Mot. for JMOL (Renewed), Amended Judgment, New Trial, and Damages Enhancements
Case No.12-cv-00630-LHK (PSG)
sf- 3414496

8

logic."  (PX172 at 1 (emphasis in original); *see* Trial Tr. at 983:1-4 (Dkt. 1624).)[5]  Dr. Snoeren

also testified about admitted exhibit PX102, a printout from "the Android developer's

documentation and website."  (Trial Tr. at 2832:3-13 (4/22/14).)  Dr. Snoeren walked the jury

through the document, explaining that PX102 describes the "base class" that applies to all six

accused sync adapters, and that the document confirms that (1) sync adapters "'spawn[] a thread

to invoke a sync operation'", meaning "provide or create"; (2) OnPerformSync will be invoked

on that thread; and (3) the sync adapter specifies the parameters for and calls the function to

"'perform a sync for [the] account.'"  (*Id.* at 2833:10-2835:21 (quoting PX102 at 1-3); PX102.)

Testimony from Google witnesses confirms that PX102's descriptions of sync adapters apply to

the accused sync adapters because Mr. Westbrook and Mr. Lockheimer testified that the sync

adapters in Gmail, Google Calendar, and Google Contacts are all proprietary Google code that

cannot be modified by manufacturers like Samsung.  (Trial Tr. at 1497:21-1499:11 (Dkt. 1715)

(Lockheimer testimony that Gmail, Google Calendar, and Google Contacts sync adapters cannot

be changed by manufacturers); *id.* at 1660:25-1661:17 (Dkt. 1716) (Westbrook testimony that

Gmail sync adapter is Google proprietary code); *see also id.* at 1504:21-1505:16 (Dkt. 1715)

(Lockheimer testimony that fundamental architecture of syncing same from Android 1.0 to

present).)

Along with Dr. Snoeren's testimony and the relevant Google documents, the code for all

six accused sync adapters and other relevant synchronization code was entered into evidence,

providing further proof of infringement.  (JX51A (SAMNDCA630-SC00057375-57379, 57422-

23, 57444-46, 57493-95 57553-87, GOOGNDCAL630-S-0002408, 2419-24, 3782-98, 3819-43).)

Samsung conceded that two of the six accused sync adapters meet the claim language,

thereby satisfying this limitation.[6]  (Trial Tr. at 2241:6-9 (4/18/14) (Chase disputing only whether

---

[5] The Google witness who Samsung called to testify regarding the accused
synchronization operations admitted that PX172 was a document from Google's systems that
Google produced in this case.  (Trial Tr. at 1663:7-9 (Dkt. 1716) (Westbrook).)

[6] Samsung's expert argued on cross examination that the accused sync adapters do not
"create" or "invoke" a thread (Trial Tr. at 2241:23-2245:25 (4/18/14) (Chase)), though Samsung
claimed in a footnote in opposition to Apple's JMOL motion during trial that this does not mean
Samsung disputes whether the accused sync adapters "provide" a thread as required by the claim
(Footnote continues on next page.)

"four of the six" sync adapters are "configured to synchronize structured data of the classes"); *see also id.* at 980:23-981:6 (Dkt. 1624) (Snoeren noting that Samsung does not dispute that Google Calendar and Google Contacts sync adapters are configured to synchronize as described in claim element d).)

**e) wherein the synchronization software component is configured to synchronize structured data of a first data class and other synchronization software components are configured to synchronize structured data of other corresponding data classes.** The evidence established that the accused products contain at least three synchronization software components that are "configured to synchronize" particular data classes—Dr. Snoeren testified based on his review of the code that two of the sync adapters discussed under element d above correspond to the Calendar data class; two of the sync adapters correspond to the Contacts data class, and two of the sync adapters correspond to the Mail data class. (*Id.* at 980:13-22 (Dkt. 1624).) The code that was admitted into evidence for all six sync adapters confirms this. (JX51A.) As discussed above, Samsung conceded that two of the six accused sync adapters meet the claim language, so the only dispute was whether the accused products include at least a third synchronization software component within the meaning of the claim. Dr. Snoeren testified that, along with the sync adapters Samsung conceded satisfy the relevant limitation, the Gmail and Exchange mail sync adapters also meet the claim limitations (even though only one additional synchronization software component is required to satisfy this limitation).

In establishing that this limitation is satisfied, Dr. Snoeren walked the jury through the code for the Gmail sync adapter and showed that it is configured to synchronize a specific Gmail account. He showed that the sync adapter calls the OnPerformLoggedSync function with particular parameters for a user's Gmail account, "configuring to synchronize just this user's mail." (Trial Tr. at 985:9-11, 985:19-25 (Dkt. 1624).) The code to which Dr. Snoeren referred can be seen in confidential PDX98.18, admitted into evidence as part of JX51A

---

(Footnote continued from previous page.)

(Dkt. 1817 at 4 n.2). In any event, the evidence presented at trial could lead to only one conclusion, as discussed.

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

10

1    (GOOGNDCAL630-S-0002408, 2419-24).  As Dr. Snoeren explained, the sync adapter code then

2    calls a function called "PerformBackgroundSync."  (Trial Tr. at 986:1-5 (Dkt. 1624); PDX91.18;

3    JX51A.)  That alone is sufficient to prove a third synchronization software component that is

4    configured to synchronize a particular data class (because Samsung conceded that two of the

5    accused sync adapters meet the claim language).  Dr. Snoeren nonetheless also provided the jury

6    with analysis and code for the Exchange mail sync adapter, which independently establishes that

7    the accused devices meet element e.  He testified regarding the code showing that the Exchange

8    mail sync adapter is configured to synchronize a particular user's email account.  (Trial Tr. at

9    988:2-8 (Dkt. 1624).)  He testified that there are two important functions in the sync adapter—

10   OnPerformSync and PerformSync—and showed the portion of the sync adapter code that causes

11   the synchronization to occur as configured.  (*Id.* at 987:16-988:18.)  And again, the code itself

12   shows that the sync adapter specifies a number of parameters when calling the OnPerformSync

13   function, configuring the synchronization to occur in a particular way.  (PDX91.44; JX51A

14   (SAMNDCA630-SC00057553-87).)

15          Apple's evidence was consistent with the Court's direction to apply the "plain and

16   ordinary meaning" to the phrase "configured to synchronize."  (Dkt. 1847 at 30.)  The claim

17   requires at least three synchronization software components "configured to synchronize the

18   structured data" from a first database with structured data from a second database.  At least one

19   synchronization software component must be "configured to synchronize structured data of a first

20   data class," and others must be "configured to synchronize structured data of other corresponding

21   data classes."  The evidence showed that all six accused sync adapters are configured to

22   synchronize particular data classes and to "handle[] all of the sync protocol logic" (PX172), and

23   that each spawns a thread to invoke a sync operation and specifies the parameters for, and calls

24   functions like OnPerform Sync to perform, the remaining sync steps for a particular account

25   (PX102).  Apple thus established infringement under the plain and ordinary meaning of the claim

26   language.

27          **B.     No Substantial Evidence Supports the Non-Infringement Verdict.**

28          Samsung contested only element e, declining to cross-examine Dr. Snoeren or put forward

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

11

1    any contrary evidence or argument on any other element.  (Trial Tr. at 2241:6-9 (4/18/14) (Chase

2    disputing only whether "four of the six" sync adapters are "configured to synchronize structured

3    data of the classes"); *id.* at 980:23-981:14 (Dkt. 1624) & 2830:3-12 (4/22/14) (Snoeren describing

4    dispute).)  But Samsung failed to support its contention that the accused products do not meet

5    element e with substantial evidence that could support the jury's verdict of non-infringement.

6         The Court did not construe the term "configured to synchronize," which is therefore

7    afforded its plain and ordinary meaning.  Samsung's evidence, however, was not directed to the

8    term's plain and ordinary meaning.  Instead, Samsung's expert Dr. Chase suggested that

9    "configured to synchronize" required that a sync adapter be configured to perform all

10   synchronization, or to perform synchronization in a specific way, such as through a direct

11   connection with the first database  (*See, e.g.*, *id.* at 2170:12-2171:2, 2172:20-23 (4/18/14) (Chase

12   testifying that sync adapter "passes the request to perform a sync" and does not "perform"

13   synchronization itself); *id.* at 2172:13-14 (Chase testifying that sync adapter does not have

14   connection to local database).)  But the claim language—"configured to synchronize"—does not

15   require a sync adapter to perform the synchronization itself, or have a direct connection to the

16   database.[7]

17        Samsung's evidence regarding whether the accused products met the additional

18   limitations it imported into the claim cannot support the non-infringement verdict, because it is

19   not directed to the plain and ordinary meaning the Court instructed the jury to apply.  *Moba*, 325

20   F.3d at 1314.  Instead, that evidence was irrelevant.  *Liquid Dynamics Corp. v. Vaughan Co.*, 449

21   F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming exclusion of expert opinion as irrelevant where

22   based on improper claim construction); *Chicago Mercantile Exch., Inc. v. Tech. Research Grp.,*

23   *LLC*, 782 F. Supp. 2d 667, 673 (N.D. Ill. 2011) (court's construction governs and "[a]ny

24   testimony that is based on an alternative construction is therefore irrelevant") *see also Integra*

25   *Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1342 (Fed. Cir. 2007) ("when an expert

_____

27   [7] Samsung's position is illogical, because as Dr. Snoeren explained when asked on cross-
     examination whether a sync adapter "calls into another class of code":  "That's how sync adapters
     work.  They make it all happen."  (Trial Tr. at 1013:7-17 (Dkt. 1624).)

1   witness' statement of the law is incorrect, that view of the law cannot be relied upon to support

2   the verdict").

3        Samsung's attempt to impose additional limitations where the Court directed the jury to

4   apply plain and ordinary meaning is precisely what the Federal Circuit rejected in *Moba,* 325 F.3d

5   at 1313-14.  There, the district court had construed a particular claim term, but after a verdict of

6   non-infringement, the court denied a JMOL motion, ruling that the jury could have determined

7   from the testimony at trial that the claim had additional requirements.  *Id*. at 1313.  The Federal

8   Circuit held that the district court erred by "[i]n essence" having "allowed the jury to add an

9   additional limitation to the district court's construction" of the claim term at issue.  *Id*.  Because

10   the record "disclose[d] no alternative basis upon which a reasonable jury could find that [the

11   defendant] does not infringe," the Federal Circuit reversed the denial of JMOL, holding that "by

12   allowing the jury to import an additional limitation into the claims, the district court

13   fundamentally altered the verdict."  *Id*. at 1314.  Similarly, here, Samsung proposed that the jury

14   "import [] additional limitations into the claims," *id.*, by suggesting that the claim required that a

15   sync adapter be configured to perform all synchronization or to perform synchronization in a

16   specific way.  As in *Moba*, "the record discloses no alternative basis upon which a reasonable

17   jury could find that [Samsung] does not infringe," *id.* at 1313-14, because Samsung based its non-

18   infringement defense solely on the narrowed claim construction, while Apple presented evidence

19   satisfying all claim elements (as discussed above).  Accordingly, as in *Moba*, denying Apple's

20   motion would be reversible error.

21        Samsung's narrowing construction of the claim language at trial is also inconsistent with

22   the specification and the prosecution history, and thus erroneous as a matter of law.  *See Moba*,

23   325 F.3d at 1314 ("Claim construction is a question of law and is not the province of the jury.").

24   The '414 patent specification confirms that the claim's plain and ordinary meaning does not

25   require the narrower constructions Samsung advanced at trial.  Figure 4 discloses a preferred

26   embodiment with multiple components involved in synchronizing data between a device and a

27   host computer.  (JX7 at fig. 4.)  The "Sync Agent" picture in the figure is described in the

28   specification as a "software synchronization component."  (*Id*. at 25:5-6.)  Figure 4 does not show

a direct connection between the Sync Agent and the databases—rather, it is connected through data class-specific data source software.  And the specification lists numerous synchronization operations that are actually performed by the Data Sources, *not* by the Sync Agent, including "open[ing]" the database on the device and "send[ing] changed/new/deleted records" to and "process[ing] and commit[ing] data" received from the host.  (*Id*. at 11:40-55.)  The Sync Agent itself is described as "manag[ing]" the connection and "set[ting] up the correct Data Source for a given Data Class."  (*Id*. at 11:60-65.)  Those are the same operations performed by the Gmail and Exchange sync adapters.  (PX172; PX102; Trial Tr. at 985:1-986:5, 987:19-988:18 (Dkt. 1624) (Snoeren).)

Nor does the prosecution history support Samsung's attempt to narrow the plain and ordinary meaning of the claim, as Samsung's expert Dr. Chase inaccurately suggested.  Dr. Chase testified that Apple changed the claim language from "caused to synchronize" to "configured to synchronize," but that is simply untrue.  (*See, e.g.*, Trial Tr. at 2182:10-11, 2183:3-5 (4/18/14).)  The actual change was from "configured to cause retrieval and storage of the structured data" to "configured to synchronize the structured data from the first database with the structured data from a second database."  (JX8 at 751.)

As the prosecution history demonstrates, this change was made for reasons wholly unrelated to whether the synchronization software components had to perform all the claimed functions themselves, rather than calling other code to perform part or all of the synchronization.  Instead, the change was made in response to the patent examiner's citation of a prior art publication, Shalev et al., "Predictive Log-Synchronization ACM SIGOPS Operating Systems Review, Volume 40, Issue 45, October 2006, pages 305-315 ("Shalev").  (JX8 at 720.)  Shalev disclosed a method of concurrent programming and programming verification in which threads coordinated operations on data via a shared log—*not* synchronization of data in databases, and *not* a prior art reference relevant to this case.  (*See* Declaration of Nathan Sabri ("Sabri Decl.") Ex. A at 306.)  In the Shalev method, competing threads would negotiate access to a shared file through use of a log.  (*Id.*)  A thread that did not acquire a lock on the data file would gain read access to a copy and write changes to a shared log file instead; a thread that acquired a lock on the

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

14

1   data file would actually commit the changes recorded in the log file into the data file.  (*Id.*)  The

2   examiner explained that, as originally worded, the "synchronization processing thread" in the

3   claim read on the thread in Shalev that performed the data changes that had been logged on a

4   copy.  (JX8 at 720.)  Similarly, as originally worded, the "non-synchronization processing thread"

5   in the claim read on the thread in Shalev that read the unmodified copy.  (*Id.*)

6        In response to the examiner's office action, Apple revised the broad claim language

7   "configured to *cause retrieval and storage* of the structured data" to "configured to *synchronize*

8   the structured data *from the first database with the structured data from a second database*."  (*Id.*

9   at 751) (emphases added).  Apple also added the language "associated with a first database" to the

10  immediately preceding element to further clarify that the invention involved synchronization of

11  structured data in databases.  (*Id.*)  These changes resolved the examiner's concern.  (*Id*. at 760.)

12       Because Samsung's position was based on a narrowing claim construction that was

13  inconsistent with the claim language, the specification, and the prosecution history, there was no

14  substantial evidence to support a verdict of no infringement of claim 20.  Rather, evaluating "the

15  properly construed claims based on the evidence presented," *Harris Corp.*, 417 F.3d at 1252,

16  permits only one reasonable conclusion—infringement.

17  **III.    NO REASONABLE JURY COULD CONCLUDE THAT SAMSUNG DID NOT**
18  **INFRINGE CLAIM 25 OF THE '959 PATENT.**

19       For claim 25 of the '959 patent, the question of infringement turned on whether the

20  accused products include a heuristic to locate information in a plurality of locations including the

21  Internet.  As with the '414 patent, the relevant claim limitation—"to locate information in the

22  plurality of locations which include the Internet and local storage media"—was subject to its

23  plain and ordinary meaning, and there was no dispute regarding how the accused devices operate

24  or the code functions.  Again unable to dispute the evidence regarding how the devices operate

25  and the code functions, Samsung defended infringement by improperly importing additional

26  limitations into the claim language—suggesting that the claim required that the heuristic locate

27  information in the Internet before the information at issue is downloaded to an accused device.

28  Samsung's attempt to narrow the claim at trial was improper, and rendered irrelevant the

1   testimony from Samsung's expert directed to that improper construction.  Because Samsung

2   presented no other argument, and there is no alternative basis on which a non-infringement

3   verdict is supportable, the jury verdict of non-infringement must be overturned.  The Court should

4   grant JMOL of infringement, or grant a new trial on infringement and damages, because the

5   verdict is contrary to the clear weight of the evidence.

6        **A.     Apple's Evidence Established that the Accused Products Meet Every Element**
            **of Claim 25.**

7

8        The evidence at trial established that the accused products practice every element of claim

9   25.  For all but one, there was not even a dispute, because Samsung contested only element c.

10       **a)  a computer readable medium for locating information from a plurality of**

11  **locations containing program instructions to.**  Dr. Snoeren testified that each accused device

12  has a computer readable medium for locating information from a plurality of locations, with

13  programing instructions, and showed videos demonstrating that the accused products can locate

14  information from a plurality of locations.  (Trial Tr. at 945:6-948:23, 949:12-16 (Dkt. 1624).)  Dr.

15  Snoeren discussed his review of the devices and specifications for the accused products entered

16  into evidence showing internal memory and a processor.  (*Id.* at 948:24-949:18; PX241.)

17  Representative accused devices admitted into evidence also showed the accused products are

18  capable of locating information from a plurality of locations.

19       **b)  receive an information identifier.**  Dr. Snoeren testified that this element was met

20  based on his review of the code for receiving an information identifier, and he showed videos

21  demonstrating the functionality.  (Trial Tr. at 945:6-948:23, 949:23-950:11 (Dkt. 1624).)

22  Representative accused devices in evidence showed the accused products receive an information

23  identifier in the form of a text string typed into the entry box of the accused Google Search

24  Application.

25       **c)  provide said information identifier to a plurality of heuristics to locate**

26  **information in the plurality of locations which include the Internet and local storage media.**

27  The evidence showed that the accused products include heuristics—construed by the Court to

28  mean "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters"

1   (Dkt. 1150 at 31)—to locate information in locations including both the Internet and local storage

2   media.  Based on his review of code, relevant portions of which were admitted into evidence

3   (JX51A), Dr. Snoeren testified that the accused products include instructions that provide the

4   information identifier to a plurality of heuristics that locate information on the Internet and local

5   storage media, and showed videos demonstrating the functionality.  (Trial Tr. at 945:6-948:23,

6   950:12-956:23 (Dkt. 1624).)  Dr. Snoeren showed the jury a demonstrative, based on his review

7   of the code, that illustrated how the code is designed.  (*Id.* at 942:1-945:5; PDX91.23-24.)  He

8   showed the heuristic modules that locate information in accused products running the

9   Gingerbread version of Android (Web and Contacts modules) as well as the Ice Cream Sandwich

10  and Jelly Bean versions (Google, Browser, Contacts, and Play Music modules).  (*Id.*)  He also

11  showed the jury the BlendResults function in Ice Cream Sandwich and Jelly Bean, and pointed

12  out English comments in the code that show that it combines results from (1) a Google search

13  suggestion server on the Internet with (2) local memory of places on the Internet the user

14  previously searched for using a heuristic.  (Trial Tr. at 954:1-956:7 (Dkt. 1624).)  He further

15  explained that the Web module in the Gingerbread versions also blends results in a heuristic

16  manner.  (*Id.* at 956:8-23.)

17          Under the plain and ordinary meaning of the claim language, which governs everything

18  other than "heuristic," Apple's evidence clearly showed infringement.  The claim requires

19  heuristics "to locate information in the plurality of locations which include the Internet and local

20  storage media."  As discussed above, Apple offered the code and Dr. Snoeren's related testimony

21  regarding heuristics to locate information in local storage media (e.g., contacts, music modules,

22  accessing information stored on the device) and the Internet (e.g., Google module, accessing

23  information on Google suggestion servers).  Apple thus satisfied this element under the plain and

24  ordinary meaning of the claim language.

25          **d)  determine at least one candidate item of information based upon the plurality of**

26  **heuristics.**  Dr. Snoeren testified that the code running on the devices determines a candidate

27  based upon the plurality of heuristics, and showed videos demonstrating the functionality.  (*Id.* at

28  945:6-948:23, 956:24-957:17.)  Representative accused products admitted into evidence confirm

1    that the accused products return at least one candidate result when a search is executed.

2        **e)  display representation of said candidate item of information.**  Dr. Snoeren again

3    confirmed that he verified this result in the code in all ten accused devices and showed videos

4    demonstrating this functionality.   (*Id*. at 945:6-948:23, 957:18-958:7.)  Representative accused

5    products in evidence confirm that the accused products display a candidate result.

6        **f)  wherein the information identifier is applied separately to each heuristic.**

7    Dr. Snoeren again confirmed based on his review of the code, which was admitted into evidence,

8    that the information identifier is applied separately to each heuristic and not dependent on other

9    heuristics. (*Id*. at 958:8-959:8.)

10       Because the evidence permitted only the conclusion that the accused devices meet all

11   elements, including element c—the only element Samsung disputed—Apple is entitled to JMOL

12   of infringement.

13       **B.        No Substantial Evidence Supports the Non-Infringement Verdict.**

14       Samsung did not cross-examine Dr. Snoeren or put forward any contrary evidence or

15   argument on any element other than element c.  And on element c, Samsung only disputed

16   whether the accused products include a heuristic to locate information in a plurality of locations

17   including the Internet.  (Samsung did not dispute that the accused products include a heuristic to

18   locate information in local storage media.)  The facts relevant to this issue were not in dispute.

19       The fact and expert witnesses called by Samsung agreed with Dr. Snoeren that the accused

20   Google Search Application communicates with the Google Suggestion Server and receives

21   information from that server.  (Trial Tr. at 1560:15-19 (Dkt. 1716) (Bringert); *id.* at 1889:18-23,

22   1896:11-18, 1897:9-14 (Dkt. 1717) (Rinard).)  They also agreed that the Google Suggestion

23   Server is on the Internet.  (*Id.* at 1561:25-1562:8 (Dkt. 1716) (Bringert); *id.* at 1885:1-9 (Dkt.

24   1717) (Rinard).)  And they agreed that the "blending" heuristic at issue combines (1) queries from

25   previous Internet searches stored on the accused device with (2) suggestions from a current

26   Internet search to decide what results to display in a single list to the user.  (*Id.* at 1561:3-19 (Dkt.

27   1716) (Bringert); *id.* at 1889:18-25 (Dkt. 1717) (Rinard).)  On rebuttal, Apple's expert Dr.

28   Snoeren even used the diagram drawn by Google engineer Bjorn Bringert to illustrate how the

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

18

1     accused Samsung products satisfy this limitation.  (*Id.* at 2817:1-2818:5 (4/22/14).)

2            The term "to locate information in the plurality of locations which include the Internet and

3     local storage media" was not construed, and thus was afforded its plain and ordinary meaning.

4     Once again, however, Samsung's expert, Dr. Rinard, improperly invited the jury to import new

5     limitations into the claim language, effectively testifying under a narrowing claim construction

6     that Samsung never requested and the Court never ordered.  To support its contention that the

7     accused Google Search Application does not locate information in the Internet, Dr. Rinard

8     testified that the Google Search Suggestion Server is what "found the information" on the

9     Internet, not the accused Google Search Application.  (Trial Tr. at 1889:18-1890:5 (Dkt. 1717)

10    (Rinard); *see also id.* at 1006:24-1008:13 (Dkt. 1624) (Snoeren); *id.* at 3289:3-5, 3289:10-18

11    (4/29/14).)  But the plain meaning of the claim language does not require the accused device or

12    application to search the Internet every time the user inputs a query.  It instead requires a heuristic

13    to locate information in a plurality of locations that include the Internet.  And there was no

14    dispute that the heuristic in question here locates information in the Internet because the Google

15    Search Application includes a module that locates information from the Google Search

16    Suggestion Server, and Samsung's own witnesses conceded that the Google Search Suggestion

17    Server is on the Internet.

18           Samsung also offered testimony suggesting that the "blending" heuristic operates on

19    information already "located," and therefore does not meet the requirement of a heuristic "to

20    locate information."  (*Id.* at 1890:11-21 (Dkt. 1717) (Rinard).)  But that testimony was

21    inconsistent with the undisputed facts and the plain meaning of the claim, and therefore cannot

22    support a non-infringement verdict.  The claim requires that the computer readable medium

23    contain instructions to "provide [an] information identifier to a plurality of heuristics to locate

24    information in the plurality of locations which include the Internet."  The accused Google Search

25    Application provides the search query to the blending heuristic.  That heuristic uses rules of

26    thumb to combine information obtained from the Google Search Suggestion Servers on the

27    Internet with locally stored search history, in order to locate the most helpful Internet-based

28    results for the user.  (*Id.* at 954:1-956:23 (Dkt. 1624) (Snoeren).)  The fact that something else

1   *initially located* information on the Internet does not affect whether the heuristic *also* locates

2   information on the Internet.

3       Samsung's position on validity confirmed as much.  In discussing freeWAIS-sf, Dr.

4   Rinard testified that a heuristic that acted on information to sort entries *after* they had already

5   been found from relevant sources satisfied the claim limitation requiring the heuristic to locate

6   information in the Internet.  (*Id*. at 1928:9-20 (Dkt. 1717) & *id.* at 2916:25-2917:6 (4/25/14))

7   (discussing "relevance ranking" and affirming that heuristic for sorting entries "once it gets them

8   back from the two sources" was one of "the rules upon which is located information, as the claim

9   requires").)

10      Samsung's attempt to import additional limitations into the plain and ordinary meaning of

11  the claim—i.e., that (1) the Internet heuristic act on information before it is downloaded to the

12  device, (2) the heuristic search the Internet for information, rather than locate information in the

13  Internet, and (3) the heuristic be the first software component or process to locate the information

14  at issue—is improper.  This is what the Federal Circuit rejected in *Moba*, and the record discloses

15  "no alternative basis upon which a reasonable jury could find" that Samsung does not infringe

16  claim 25.  *Moba*, 325 F.3d at 1313-14.  Instead, evaluating "the properly construed claims based

17  on the evidence presented," *Harris Corp*., 417 F.3d at 1252, permits only one reasonable

18  conclusion—infringement.

19  **IV.   NO REASONABLE JURY COULD CONCLUDE THAT SAMSUNG DID NOT
        WILLFULLY INFRINGE THE '647 PATENT.**
20

21      To establish willfulness, Apple needed to prove that Samsung (1) acted despite an

22  objectively high likelihood that its actions constituted infringement of a valid patent, and (2)

23  knew, or it was so obvious that Samsung should have known, of this likelihood.  *In re Seagate

24  Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  Evidence of copying supports a

25  finding of willfulness because it "may show what the accused infringer knew or should have

26  known about the likelihood of its infringement."  *DePuy Spine, Inc. v. Medtronic Sofamor Danek,

27  Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009).  Here, the evidence at trial permitted only one

28  reasonable conclusion: that Samsung willfully infringed the '647 patent.  The evidence

established that Samsung deliberately copied the patented feature of the '647 patent, and continued to infringe after Apple notified Samsung of its infringement of this patent in August 2010, and after Apple filed suit.

As the uncontroverted evidence at trial established, in announcing the iPhone, Apple gave notice to the world that it had applied for over 200 patents relating to the new device. (*See, e.g.*, PX118.)  It is also undisputed that Samsung received notice specific to the '647 patent in August 2010, when Apple accused Samsung of copying the iPhone, and identified the '647 patent as an exemplary patent infringed by Samsung phones using Android applications. (Trial Tr. at 1043:17-18 (Dkt. 1714) (Undisputed Fact No. 13); PX132 at 15; *see also* PX3003 at 33:21-33:24 (Lee).)

Notwithstanding Apple's clear notice that the iPhone was covered by patented technology, and express notice regarding the '647 patent, Samsung systematically copied the features of the iPhone, based on directives from Samsung's highest executives.  (*See* PX149 at 5 (crisis of design); *see also* PX120; PX121; PX146; PX157; PX219.)  Among other things, Samsung's copying targeted the "data detectors"—software that identifies specific types of data in text (e.g., phone numbers, email addresses, and web pages) and provides users with actions to take based on the type of data detected— used in Apple's iPhone and iPad products.  (Trial Tr. at 789:23-803:1 (Dkt. 1624) (Deniau)).  A Samsung internal development document from March 2010, which compared a prototype Samsung phone with the iPhone, noted that the iPhone provided links to phone numbers, email addresses, and other data through a tap or long press, while the Samsung phone did not.  (PX146 at 37.)  The document recommended that Samsung's new phone improve usability by adopting linking technology—the technology the jury found infringed the '647 patent.  (*Id.*)  Another Samsung document from August 2010, entitled "2011-2012 UX Roadmap," proposed "detecting schedule" information in emails and applying that information to a calendar application.  (PX107 at 52.)  The description of this proposed feature was accompanied by a screenshot from an article about Apple's "data detectors," which was written by inventors of the '647 patent and maintained on the website of one of the inventors.  (*Compare id.*, *with* PX106 at 3; *see also* Trial Tr. at 883:11-884:11, 887:8-888:17, 889:18-891:4 (Dkt. 1624) (Mowry).)  Samsung thus not only copied from the iPhone, but also directly from the '647 patent's inventors.

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

21

1    Based on its copying from Apple's products and the inventors of the '647 patent, Samsung

2    knew or should have known that there was a high likelihood that its actions constituted

3    infringement of a valid patent.  Yet Samsung continued to infringe the '647 patent even after

4    Apple provided express notice in August 2010, and then filed suit in February 2012.  (Trial Tr. at

5    1043:17-20 (Dkt. 1714) (Undisputed Fact No. 13); PX132 at 15; *see also* PX3003 at 33:21-33:24

6    (Lee).)

7    Samsung repeatedly asserted at trial that it could have implemented an acceptable design-

8    around alternative in less than a day.  (*See*, *e.g.*, Trial Tr. at 1797:21-1798:8 (Dkt. 1717) (Jeffay);

9    *id.* at 1587:25-1588:11 (Dkt. 1716) (Google engineer Hackborn testifying that "[c]hanges like

10   these shouldn't take more than a day for an engineer").)  Yet Samsung *never* designed around the

11   '647 patent.  (*Id.* at 1249:2-10 (Dkt. 1714) (Vellturo).)  Instead, Samsung sold over 35 million

12   phones with the features infringing the '647 patent in the United States between August 2011 and

13   April 2014, the undisputed damages period for that patent.  (PX142.)  When Google modified the

14   generic Android source code to change the functionality relevant to infringement of the '647

15   patent, Samsung rewrote that code so that its phones continued to infringe much as they had

16   previously, thereby confirming Samsung's responsibility for the infringement.  (Trial Tr. at

17   863:18-864:23 (Dkt. 1624) (Mowry).)  Samsung's persistent infringement, despite repeated notice

18   and the purported availability of alternatives, permits only the conclusion that Samsung acted

19   despite an objectively high likelihood that its actions constituted patent infringement, and that it

20   knew or should have known of this likelihood.  At trial, Samsung offered no countervailing

21   evidence regarding its willful infringement of the '647 patent, instead relying only on attorney

22   argument.  Given the evidence, no reasonable jury could find that Samsung did not willfully

23   infringe the '647 patent.

24   **V.    APPLE IS ENTITLED TO JUDGMENT THAT SAMSUNG FAILED TO PROVE
              ITS AFFIRMATIVE DEFENSES.**

25

26   Samsung did not offer any evidence at trial on the affirmative defenses listed in its

27   Answer, including waiver, acquiescence, estoppel, laches, failure to mitigate, prosecution history

28   estoppel, prosecution laches, "acts of plaintiff," and "actions of others."  (Dkt. 107.)  Further,

1    none of these affirmative defenses even appeared in the Joint Pretrial Statement, which the parties

2    agreed specified the remaining issues of fact and law to be litigated.  (Dkt. 1455-1 at 25 ("The

3    foregoing admissions having been made by the parties, and the parties having specified the

4    foregoing issues of fact and law remaining to be litigated, this order shall supplement the

5    pleadings and govern the course of trial of this action, unless modified to prevent manifest

6    injustice.").)  Samsung did not oppose Apple's motion for judgment on these defenses during

7    trial.  (*See* Dkt. 1804 at 3 (Apple requesting JMOL on affirmative defenses); Dkt. 1817 (Samsung

8    not including affirmative defenses in JMOL opposition).)   Accordingly, Apple is entitled to

9    judgment as a matter of law on those defenses.  *See S. Cal. Retail Clerks Union v. Bjorklund*, 728

10   F.2d 1262, 1264 (9th Cir. 1984) ("We have consistently held that issues not preserved in the

11   pretrial order have been eliminated from the action . . . .  The very purpose of the pretrial order is

12   to narrow the scope of the suit to those issues that are actually disputed and, thus, to eliminate

13   other would-be issues that appear in other portions of the record of the case.").

14   **VI.    APPLE IS ENTITLED TO ENHANCED DAMAGES, SUPPLEMENTAL**
**DAMAGES, AND PREJUDGMENT INTEREST.**
15

16          The jury found that Samsung willfully infringed the '721 patent.  And as set forth above,

17   Apple is entitled to judgment as a matter of law that Samsung also willfully infringed the '647

18   patent.  Given Samsung's past and current willful infringement, the Court should enhance

19   damages based on Samsung's willful infringement.  The Court should also award supplemental

20   damages and prejudgment interest.

21          **A.     Substantial Damages Enhancements Are Warranted.**

22          The Court may "increase the damages up to three times the amount found or assessed"

23   because Samsung's conduct was willful.  *See* 35 U.S.C. § 284; *In re Seagate Tech.*, 497 F.3d at

24   1368.  As discussed above, Samsung (1) acted despite an objectively high likelihood that its

25   actions constituted infringement of a valid patent, and (2) knew, or it was so obvious that

26   Samsung should have known, of this likelihood.  *In re Seagate Tech*, 497 F.3d at 1371.  The

27   existence of objective willfulness is a question of law.  *Bard Peripheral Vascular, Inc. v. W.L.*

28   *Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012).  "The paramount determination in

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

23

1   deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's

2   conduct based on all the facts and circumstances." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826

3   (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d

4   967, 975 (Fed. Cir. 1995).   Factors that require consideration when assessing enhanced damages

5   include: (1) whether Samsung deliberately copied Apple's patented technology or designs; (2)

6   whether Samsung had a good-faith belief that the patents were invalid or not infringed; (3)

7   Samsung's litigation conduct; (4) Samsung's size and financial condition; (5) the closeness of the

8   case; (6) the duration of Samsung's misconduct; (7) remedial action taken by Samsung; (8)

9   Samsung's motivation for willfully infringing; and (9) whether Samsung attempted to conceal its

10  misconduct.  *See Read Corp.*, 970 F.2d at 826-28.

11  Not all factors need to be present for a court to award enhanced damages; rather, a court

12  "must consider factors that render defendant's conduct more culpable, as well as factors that are

13  mitigating or ameliorating."  *Id*. at 826.  Once the jury finds willful infringement, enhancement is

14  appropriate so that the willful infringement finding will not be rendered meaningless, *see*

15  *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571-72 (Fed. Cir. 1996), and courts should provide a

16  justification if they decide not to enhance the award.  *See Tate Access Floors, Inc. v. Maxcess*

17  *Techs., Inc.*, 222 F.3d 958, 972 (Fed. Cir. 2000).

18                      **1.      The Court Should Award Enhanced Damages for the '721 Patent**

19  The jury awarded $2,990,625 in damages for Samsung's infringement of the '721 patent,

20  and also found Samsung's infringement willful.  (Dkt. 1884 at 7, 9.)  The egregiousness of

21  Samsung's infringement warrants trebling the jury award for this patent to the maximum statutory

22  amount of $8,971,875.

23  On the first *Read* factor, extensive evidence showed that Samsung intentionally copied not

24  only the iPhone, but its "slide to unlock" technology in particular.  For example, Samsung's own

25  development documents repeatedly demonstrated that Samsung intentionally copied the "slide to

26  unlock" feature from Apple's iPhone.  (Trial Tr. at 649:21-650:3 (Dkt. 1623) (Cockburn); *see*

27  *also id.* at 2900:4-2902:3 (4/25/14) (Cockburn).)  Dr. Cockburn testified at length regarding five

28  of those development documents, which made clear that Samsung recognized the benefits of the

1   '721 patented features and sought to incorporate those features and benefits into its own products.

2   (*See* PX119 at 11; PX120 at 28, 84; PX121 at 27, 100; PX157 at 19-20; PX219 at 14; *see also*

3   Trial Tr. at 639:5-650:3 (Dkt. 1623) (Cockburn); *id.* at 2900:4-2902:3 (4/25/14) (Cockburn).)

4   Courts have found that an accused infringer acted with objective willfulness where, as here, the

5   infringer copied products embodying the patents-in-suit.  *See K-TEC, Inc. v. Vita-Mix Corp.*, 696

6   F.3d 1364, 1378 (Fed. Cir. 2012) (objectively high likelihood of infringement shown when

7   defendant deliberately copied and non-infringement theories and invalidity theories rejected on

8   summary judgment or by jury); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, 725 F.

9   Supp. 2d 474, 477 (D. Del. 2010) ("meticulous study of products" followed by "blatant copying"

10  demonstrated objectively high risk of infringement), *aff'd*, 711 F.3d 1348 (Fed. Cir. 2013).

11         On the second *Read* factor, Samsung failed to offer a good-faith defense to Apple's '721

12  patent claim at trial.  Samsung offered *no* infringement defense for five of the six products

13  accused of infringing the '721 patent.  (Trial Tr. at 1980:1-1982:1 (Dkt. 1717) (Greenberg); *see*

14  *also id.* at 2859:22-2860:4 (4/22/14) (Cockburn).)  And Samsung's non-infringement defense for

15  the Galaxy Nexus product turned on an erroneous interpretation of the claim term "unlock image"

16  that contradicted the plain language of the claims and the patent specification.  (*See id.* at 2861:8-

17  2862:14 (Cockburn).)  Further, Samsung asserted only a single invalidity defense based on the

18  combination of two prior art references that the PTO had already considered and rejected.  (*See*

19  *id.* at 1996:4-1998:2 (Dkt. 1717) (Greenberg).)  The jury's rejection of Samsung's infringement

20  and invalidity defenses confirms their objective lack of merit.  With little or no evidence of non-

21  infringement and only insubstantial prior art defenses, the trial record proves that Samsung "acted

22  despite an objectively high likelihood that its actions constituted infringement of a valid patent."

23  *In re Seagate Tech.*, 497 F.3d at 1371; *see also K-TEC*, 696 F.3d at 1378 (jury's rejection of

24  invalidity theories supported finding of objective willfulness).

25         On the fourth *Read* factor, Samsung has substantial resources to pay an enhanced damages

26  award:  In the last quarter of 2013, Samsung held 36.0% of the United Sates smartphone market

27  with 10.9 million units sold in that quarter alone (PX222A1 at 26), and earned billions of dollars

28  on sales of infringing devices during the period covered by the suit (PX142 at 6).  Trebling the

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

25

jury's damages award on the '721 patent to $8.9 million would amount to a miniscule fraction of the revenue that Samsung made on all the accused sales.

On the fifth *Read* factor, the case was not close as to the '721 patent, as discussed with respect to factor two above. Further, the only issue relating to the '721 patent on which the jury did not find in Apple's favor—infringement by the Galaxy SII products—was made without any basis in the trial record, as discussed in Section I above.

On the sixth and seventh *Read* factors, duration of the infringement and remedial action taken by Samsung, the evidence established that Samsung began infringing the '721 patent when it issued in October 2011, and continued to infringe until January 28, 2013—nearly a year after Apple filed suit in February 2012. (Trial Tr. at 654:10-11 (Dkt. 1623) (Cockburn).) Over that period of time, Samsung sold millions of devices that infringed the '721 patent, generating many millions of dollars in revenue. (PX142; PX222A1 at 7.)

On the *eighth Read* factor, Samsung's motivation for willfully infringing the '721 patent, the evidence established that Samsung willfully infringed because it did not believe it could compete with the iPhone fairly. As the documentary evidence showed, in February 2010, Samsung was facing a "crisis of design" (PX149 at 5), understood that its "future success [was] dependent on blunting Apple" (PX154 at 5), and believed that "[b]eating Apple [was] no longer merely an objective" but a "survival strategy" (PX216 at 3). Samsung's internal development documents reflected its deliberate strategy of copying hundreds of software features from the iPhone, including Apple's patented "slide to unlock" technology, in order to make Samsung's own products more competitive. (*See* PX120 at 28, 84; PX121 at 27, 100; PX157 at 19-20; PX219 at 14.) And Samsung's strategy worked: Samsung's market share dramatically increased in the periods after it copied the iPhone—a critical time in the development of the smartphone market. (Trial Tr. at 1240:17-1242:20 (Dkt. 1714) (Vellturo).)

This is now the second lawsuit that Apple has brought against Samsung in an attempt to stop its illegal activity. This is also the second lawsuit in which Samsung has been found to be a willful infringer. (1846 Dkt. 1931 at 9; Dkt. 1884 at 7.) Yet Samsung remains as unrepentant as ever: Samsung's lead counsel was recently quoted in a CNET article as saying the jury's verdict

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

26

1   in this case was a "win" for Samsung, that Apple "[hasn't] collected a nickel" after years of

2   litigation, and that Apple "won't see a dime from the most recent judgment."  (Sabri Decl. Ex. B.)

3   In another article, Samsung's counsel was quoted as saying, "Apple hasn't collected a penny—or

4   succeeded in taking any products off the market."  (*Id.* Ex. C.)  Samsung's ongoing and persistent

5   disregard for Apple's patent rights warrants a substantial damages enhancement in this case.

6   **2.      The Court Should Award Enhanced Damages for the '647 Patent.**

7           For the same reasons, and for the reasons that Apple should be granted JMOL that

8   Samsung willfully infringed the '647 patent (*see* Section IV, *supra*), the Court should also

9   enhance damages for Samsung's willful infringement of the '647 patent, trebling the amounts

10  awarded by the jury:

11          On the first *Read* factor, Samsung systematically copied hundreds of iPhone software

12  features, including the specific '647 patented features at issue here.  (*See, e.g.*, PX106 at 3;

13  PX107 at 52; PX146 at 37.)

14          On the second *Read* factor, Samsung lacked a good-faith invalidity defense to the '647

15  patent, relying on a single invalidity reference (Sidekick) that detected only a single structure and

16  linked only a single action, rather than multiple structures and actions as required by the claim.

17  (*See* Dkt. 1804 at 1:8-24.)  The jury rejected that defense, together with Samsung's non-

18  infringement defense.  These facts—especially when viewed together with evidence of

19  Samsung's deliberate copying and failure to implement a non-infringing alternative—demonstrate

20  that Samsung "acted despite an objectively high likelihood that its actions constituted

21  infringement of a valid patent."  *In re Seagate Tech.*, 497 F.3d at 1371; *see also K-TEC*, 696 F.3d

22  at 1378.

23          On the fourth *Read* factor, as discussed above, the amounts Apple seeks to treble pale in

24  comparison to Samsung's vast financial resources.

25          On the fifth *Read* factor, the case was not close with respect to the '647 patent.  The jury

26  rejected Samsung's invalidity challenge.  (Dkt. 1884 at 7.)  The jury further found infringement

27  by all nine Samsung phones accused of infringing the '647 patent.  (*Id.* at 2.)

28          On the sixth *Read* factor, the duration of Samsung's misconduct was lengthy.  Apple first

1    notified Samsung of infringing the '647 patent on August 4, 2010.  (Trial Tr. at 1043:17-20 (Dkt.

2    1714) (Undisputed Fact No. 13).)  Yet, Samsung never stopped infringing, even though Samsung

3    claimed to have identified alleged non-infringing alternatives.  Rather than stop infringing,

4    Samsung sold over 35 million phones that infringed the '647 patent over a more than two-year

5    period.  (PX142; PX222A1 at 7.)  Further, when Google modified the generic Android source

6    code to change the functionality relevant to infringement of the '647 patent, Samsung rewrote that

7    code so that its phones continued to infringe much as they had previously, thereby confirming

8    Samsung's responsibility for the infringement.  (Trial Tr. at 863:18-864:23 (Dkt. 1624)

9    (Mowry).)

10       On the seventh *Read* factor, Samsung offered no evidence at trial that it ever designed

11   around the '647 patent.  (Trial Tr. at 1249:2-10 (Dkt. 1714) (Velluro).)

12       On the eighth *Read* factor, as discussed above, Samsung's motivation for willfully

13   infringing the '721 patent was to blunt Apple and divert its customers to Samsung.  That

14   motivation applied equally to Samsung's willful infringement of the '647 patent.

15                  **B.    Supplemental Damages Are Warranted**

16       The jury awarded Apple $119,625,000 for Samsung's infringing sales of ten product

17   models.  (Dkt. 1884 at 8-9.)  This award accounts for Samsung's infringing sales through April

18   2014.  (*See* PX142; PX222A; Trial Tr. at 1211:15-1212:24 (Dkt. 1714) (Velluro).)  As this Court

19   has previously recognized (1846 Dkt. 2271 at 2), supplemental damages should be awarded to

20   compensate Apple for infringing sales not considered by the jury—here, for Samsung's infringing

21   sales occurring after April 2014.  *See Finjan*, 626 F.3d at 1212-13 (ordering supplemental

22   damages to compensate patentee for uncompensated sales).

23       Apple requests that the Court calculate supplemental damages using the same

24   methodology that it applied in the 1846 case.  The Court has discretion in determining how to

25   calculate post-verdict damages, *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1260 (Fed. Cir.

26   2000), and any uncertainty regarding that calculation should be resolved against the infringer,

27   *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554-55 (Fed. Cir. 1984).  The Court

28   previously concluded that the proper per-product rate should be calculated based on the jury's

1   verdict: "Because the jury returned an award for each product separately, the Court can simply

2   divide the jury award for each product by that product's number of sales to calculate this per-

3   product amount." (1846 Dkt. 2271 at 5 (citing *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F.

4   Supp. 2d 951, 964-65 (N.D. Cal. 2009)).) The per-product rate would then be multiplied by the

5   number of infringing units sold by Samsung after April 2014. (*Id.* at 5-6.)

6       The per-product rate is easily obtained from the present record. The verdict form

7   identifies the amount of damages awarded for each product. (Dkt. 1884 at 9.) Pages 6 and 8 of

8   PX142 identify the total number of units sold for the periods from August 2011 to December

9   2013, and January 2014 through April 2014, respectively. The calculation of the per-product rate

10  from these figures is simple arithmetic: (Per Product Total from Verdict Form) / (Total Product

11  Sales from PX142 at 6 and PX142 at 8). The results for the Galaxy S III and Galaxy Note II are

12  $2.65 per unit and $2.72 per unit, respectively. (Declaration of Marylee Robinson ("Robinson

13  Decl.") ¶ 6.)

14      Multiplying these per-product rates by the new product unit sales will result in the

15  supplemental damages that should be added to the judgment. Samsung individually tracks the

16  sales of each of the relevant products by month, and it is Apple's understanding that only the

17  Galaxy S III and the Galaxy Note II remain on sale. (Robinson Decl. ¶¶ 7-8.) It should not be

18  difficult for Samsung to provide the unproduced sales data for these two products since April

19  2014, which is the only information needed to calculate supplemental damages. Apple therefore

20  asks the Court to order a schedule for unit sales after April 2014 to be produced before the Court

21  enters final judgment.

22      **C.   Prejudgment Interest Is Warranted.**

23      Under 35 U.S.C. § 284, a prevailing patent holder is entitled to prejudgment interest on

24  damages. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57 (1983) ("[P]rejudgment

25  interest should be awarded under § 284 absent some justification for withholding such an

26  award."). Prejudgment interest compensates the patentee for the delay in payment that results

27  when a defendant has infringed the patent and has retained the profits and royalties owed to the

28  patentee until a judgment occurs. Samsung has reaped the financial rewards of its infringement in

1  this case for nearly three years (from August 2011 to the present), and Mr. Quinn has recently

2  boasted about this to the press, proclaiming that despite Apple's victories in three trials:  "Apple

3  hasn't collected a penny—or succeeded in taking any products off the market."  (Sabri Decl. Ex.

4  C.)  Samsung's comments reinforce the importance of an award of prejudgment interest and the

5  need to apply a meaningful interest rate to address the delay in payment that has occurred here.

6  "The rate of prejudgment interest and whether it should be compounded or

7  uncompounded are matters left largely to the discretion of the district court," *Bio-Rad*

8  *Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986), which "may

9  award interest at or above the prime rate." *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540,

10  1545 (Fed. Cir. 1991).  "[W]hen the amount of the damages cannot be ascertained with precision,

11  any doubts regarding the amount must be resolved against the infringer." *Lummus Indus., Inc. v.*

12  *D.M. & E. Corp.*, 862 F.2d 267, 274-75 (Fed. Cir. 1988) (internal quotation marks omitted).

13  In the 1846 Case, the Court "award[ed] prejudgment interest at the 52-week Treasury Bill

14  Rate, compounded annually."  (1846 Dkt. 2271 at 7-8.)  Apple has accordingly prepared a

15  calculation applying that same methodology through July 10, 2014, with a daily amount to add

16  for each day thereafter.  (Robinson Decl. Exs. 4 & 5.)

17  Nonetheless, the 52-week T-Bill rate represents a rate that is grossly inadequate to address

18  the true economic harm that Samsung's delay has imposed.  Between 2011 and the present, the

19  T-Bill rate has been less than 0.20 percent.  (Robinson Decl. ¶ 10.)  In comparison, Apple has

20  borrowed in the public markets at rates of as much as 4.45 percent.  (*Id.* ¶ 9.)  The prime rate,

21  which reflects private borrowing rates for businesses, is close to the rate at which Apple has

22  actually borrowed in the market, and is a far better indicator of the actual economic value of the

23  delay in payment for Samsung's infringement than the T-Bill rate.  There is no reason that

24  Samsung should reap the advantage of what is effectively a loan from Apple with minimal

25  interest for three years.  Accordingly, Apple again urges the Court to calculate prejudgment

26  interest using the prime rate.

27  The Federal Circuit has endorsed awarding prejudgment interest at the prime rate, as have

28  numerous district courts in patent cases.  *See, e.g.*, *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d

1056, 1066 (Fed. Cir. 1983) ("The district court may 'fix' the interest and select an award above

the statutory rate, or select an award at the prime rate.") (citation omitted); *Sealant Sys. Int'l,*

*Inc. v. TEK Global S.R.L.*, No. 5:11-cv-00774-PSG, 2014 WL 1008183, at *6 (N.D. Cal. Mar. 7,

2014); *Atmel Corp. v. Silicon Storage Tech., Inc.*, 202 F. Supp. 2d 1096, 1101 (N.D. Cal. 2002),

*aff'd*, 76 F. App'x 298 (Fed. Cir. 2003); *Junker v. HDC Corp.*, No. C-07-0594 JCS, 2008 WL

3385819, at *6 (N.D. Cal. July 28, 2008); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l,*

*Inc.*, No. C 03-1431 SBA, 2008 U.S. Dist. LEXIS 119930 (N.D. Cal. Mar. 21, 2008), at *3 (N.D.

Cal. Apr. 4, 2008) ("Numerous other courts have also held that the prime rate is appropriate for

calculating prejudgment interest in a patent case."), *rev'd on other grounds by* 582 F.3d 1288

(Fed. Cir. 2009).  Moreover, the Sixth, Seventh, Eleventh, and D.C. Circuits have approved the

use of the prime rate to calculate prejudgment interest on other awards under federal law.  *See,*

*e.g.*, *Owner-Operator Indep. Drivers Ass'n Inc. v. Comerica Bank*, No. 12-3491, 2014 WL

1316223, at *13 (6th Cir. Apr. 2, 2014) (using the prime rate to award interest following

violations of the Interstate Commerce Commission Termination Act); *Gorenstein Entrs. Inc. v.*

*Quality Care-USA, Inc.*, 874 F.2d 431, 436-37 (7th Cir. 1989) (using the prime rate to award

interest for violations of the Lanham Act); *Sunderland Marine Mut. Ins. Co. v. Weeks Marine*

*Constr. Co.*, 338 F.3d 1276, 1280 (11th Cir. 2003) (using the prime rate to award interest in an

admiralty case); *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 450-51 (D.C. Cir. 1996) (using

the prime rate to award interest under the Warsaw Convention following an airline disaster).

Apple has prepared a separate calculation of $6,468,029 reflecting prejudgment interest at

the prime rate, compounded annually, through July 10, 2014, with a daily amount of $11,040.36

to add each day thereafter.  (Robinson Decl. Exs. 6 & 7.)  Both this calculation and the interest

calculation using the T-Bill rate ($261,612) were prepared using the same methods employed in

Apple's submissions in the 1846 case.  (*See* 1846 Dkt. 2876-3, ¶¶ 16-20.)

**D.      Apple Requests that the Court Award Supplemental Damages and Prejudgment Interest at this Time.**

In the 1846 Case, the Court concluded that the calculation of supplemental damages and

prejudgment interest should await the conclusion of the merits appeal.  For three reasons, Apple

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

31

1    believes that a current calculation would be more efficient and sensible here.  First, there are no

2    meaningful legal issues regarding how supplemental damages should be calculated.  Second, the

3    calculations are themselves simpler, involving only two products (Galaxy S III and Galaxy Note

4    II) and four months.  Third, there is no reason to delay the calculation and award of these

5    amounts, and performing the calculations now will eliminate the need for any future work by the

6    Court if the judgment is affirmed on appeal.  Thus, Apple requests that the Court order Samsung

7    to produce the relevant sales figures, complete the calculation, and include the amounts in the

8    final judgment entered after the resolution of post-trial motions.

9    **VII.    APPLE IS ENTITLED TO JUDGMENT OR A NEW TRIAL ON SAMSUNG'S
        CLAIM FOR INFRINGEMENT OF CLAIM 27 OF THE '449 PATENT.**

10

11          No reasonable jury could have found that Apple's iPhone 4, iPhone 4S, iPhone 5, iPod

12   touch 4th Generation, and iPod touch 5th Generation products infringe claim 27 of the '449

13   patent.  The evidence presented at trial—including the admissions of Samsung's expert—failed to

14   establish that Apple's products satisfy at least four limitations required by claim 27.  The Court

15   should accordingly grant judgment of non-infringement and vacate the $158,400 damages award

16   or, at the very least, grant a new trial on infringement and damages because the verdict is contrary

17   to the clear weight of the evidence.

18          *First*, Samsung failed to prove that Apple's iPhone 4S, iPhone 5, and iPod touch 5th

19   Generation products contain a "reproducing circuit which reproduces  . . . a sound signal in

20   synchronous to said moving image signal."  (JX22 at 18:24-26.)  For this element, Samsung's

21   expert Mr. Parulski merely pointed to an "audio circuit" shown in block diagrams for these

22   products.  (Trial Tr. at 2609:22-2610:23 (4/22/14) (Parulski); SDX3741-SDX3742; *see also*

23   DX351A at 351.1798 (block diagram for iPhone 5), 351.1572 (iPhone 4S), 351.2558 (iPod touch

24   5th Generation).)  But Apple presented uncontroverted evidence that the "audio circuit" identified

25   by Mr. Parulski—at least for the iPhone 4S, iPhone 5, and iPod touch 5th Generation—does not

26   perform ***any*** audio processing, let alone the required synchronization of audio with video.

27   Specifically, Apple's SOC engineer Tim Millet testified:

28          Q.  And what audio processing, if any, does this audio subsystem perform in the

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

32

1    iPhone 5?

2        A.  *None*.

3    (Trial Tr. at 2699:22-24 (4/22/14) (iPhone 5) (emphasis added); *see also id.* at 2700:7-13 (same

4    for iPhone 4S and iPod touch 5th Generation).)  Mr. Millet's testimony was never challenged or

5    rebutted.

6        Apple also established that the audio subsystem identified by Mr. Parulski is not even

7    *capable* of reproducing synchronous audio.  As Mr. Millet explained, Apple's "software team

8    decided to not use [the audio subsystem] because they found that it was less efficient, less

9    flexible, and didn't really save them any power."  (*Id.* at 2699:25-2700:13.)  Samsung did not

10   challenge or rebut that testimony.  On the contrary, Samsung's '239 patent expert Dr. Schonfeld

11   confirmed that an "integrated circuit by itself is just hardware" that "doesn't actually do

12   anything" until "you . . . write your own source code and tell it what to do, how to do it, when to

13   do it . . . ."  (*Id.* at 2558:1-4 (4/21/14).)  Because the evidence presented at trial conclusively

14   demonstrates that the component identified by Mr. Parulski as the "reproducing circuit" does *not*

15   process audio and is incapable of reproducing synchronous audio, the evidence does not support

16   the jury's infringement verdict.[8]

17       *Second*, Samsung failed to establish that any accused product includes "*a compressor*

18   which compresses said digital signal . . . by using a *different* compressing method for moving

19   image signals and for still image signals" or "*a decompressor* which decompresses said

20   compressed data by using a *different* decompressing method according to whether said recorded

21   compressed data is a moving image signal or a still image signal."  (JX22 at 18:13-16, 18:20-23

22   (emphases added).)  As both parties' experts agreed, the plain meaning of this claim language

23   requires "a compressor" that compresses *both* still images and videos.  (Trial Tr. at 2605:14-18

24   (4/21/14) (Parulski) ("The limitation requires a compressor that takes the digital signal and uses

25

26       [8]  If the Court grants judgment of non-infringement only with respect to Apple's iPhone
     4S, iPhone 5, and iPod touch 5th Generation products, it should also grant judgment of no
27   damages for those products.  Doing so would reduce the damages award for the '449 patent from
     $158,400 to $61,188.  (*See* Dkt. 1884 at 12.)
28

1   different compressing methods for photos and videos."); *id.* at 2768:18-23 (4/22/14) (Storer)

2   ("[I]t has to be a single compressor that has these two different methods built into it, one for

3   images, one for videos.").)  Both experts likewise agreed that the claim language also requires "a

4   decompressor" that decompresses *both* still images and videos.  (*Id.* at 2608:20-24 (4/21/14)

5   (Parulski); *id.* at 2775:1-10  (4/22/14) (Storer).)

6          The undisputed evidence demonstrated, however, that Apple's products use *separate and*

7   *distinct* components to compress/decompress still images and videos.  Both parties' experts and

8   Apple's engineer testified that a JPEG encoder compresses/decompresses still images, an H.264

9   encoder compresses videos, and an H.264 decoder decompresses videos.  (*Id.* at 2605:14-

10   2606:23, 2608:10-2609:11 (4/21/14) (Parulski); *id.* at 2693:3-24 (4/22/14) (Millet); *id.* at

11   2771:11-2775:16 (Storer); *see also* SDX3729, 3730, 3737, 3738.)  The uncontroverted evidence

12   also established that the JPEG and H.264 encoders/decoders in Apple's products:

- are designed by different companies (Trial Tr. at 2693:13-2694:7 (4/22/14)
   (Millet); *id*. at 2772:2-19 (Storer); *id.* at 2644:4-16 (Parulski));

- are at physically separate locations on the chip (*id.* at 2696:9-2697:3, 2697:15-
   23 (Millet); *id.* at 2772:23-2773:19 (Storer); PX294 at18; DX351A at
   351.3472);

- do not share *any* common circuitry for compressing/decompressing still images
   and videos (Trial Tr. at 2697:4-2698:10 (4/22/14) (Millet); *id.* at 2773:23-24
   (Storer)); and

- are on separate power domains, meaning that each can be turned on or off
   independently (*id.* at 2694:11-16, 2695:15-2696:8 (Millet); *id.* at 2773:14-16
   (Storer)).

From this evidence, a reasonable jury could only have found that Apple's products do not contain

"a compressor" for compressing (or "a decompressor" for decompressing) both still images and

videos as claim 27 requires.[9]

---

   [9] The '449 patent teaches that the claimed invention used a single compressor (or
decompressor) for still images and videos to "sav[e] . . . circuitry" because the JPEG and MPEG
compression/decompression standards used at that time were similar.  (JX22 at 4:16-20; *see also*
Trial Tr. at 2769:2-2770:6 (4/22/14) (Storer).)  But that is no longer true today.  As Dr. Storer
explained, the JPEG and H.264 compression/decompression standards used in Apple's products
are very different from one another and thus use separate circuitry.  (Trial Tr. at 2695:15-2696:8
(4/22/14) (Millet); *id.* at 2773:20-2775:16 (Storer).)

1    Mr. Parulski did not dispute any of these facts or offer contrary testimony.  Instead, he

2    opined that the JPEG and H.264 encoders/decoders—along with several other components that

3    have "nothing" to do with image or video compression (*id.* at 2694:17-2695:6 (Millet))—are part

4    of a single "compressor"/"decompressor" because they are shown on a functional block diagram

5    that identifies a set of high-performance components that do not have real-time requirements.  (*Id.*

6    at 2605:14-2606:23, 2644:4-13 (Parulski); *see also id.* at 2695:7-14 (Millet).)  But Mr. Parulski's

7    identification of separate and distinct encoders as a single "compressor" (and of separate and

8    distinct decoders as a single "decompressor") is inconsistent with the plain meaning of the claim

9    language.  It therefore cannot support the jury's infringement verdict.  *See Smith & Nephew,*

10   *Inc. v. Arthrex, Inc.*, 453 F. App'x  977, 980 (Fed. Cir. 2011) (reversing the denial of JMOL of

11   non-infringement because the plaintiff's "theory of infringement is inconsistent with the plain

12   language" of the asserted claim); *see also E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213,

13   1220 (Fed. Cir. 2007) (affirming summary judgment of non-infringement in part because the

14   district court properly concluded that no reasonable jury could find that the accused devices were

15   "cards" using the plain meaning of the word "card").

16   *Third*, Samsung failed to prove that any accused product contains a "recording circuit"

17   that "records each one of said plurality of image signals with classification data."  (JX22 at 18:32-

18   33.)  During his cursory, two-sentence infringement testimony regarding this claim limitation,

19   Mr. Parulski identified a NAND memory circuit in Apple's products as the "recording circuit" but

20   *never* explained how it supposedly records images with classification data.  (*See* Trial Tr. at

21   2615:22-2616:12 (4/21/14) (Parulski).)  Nor could he.  The evidence at trial established that

22   Apple's Camera Roll—like the ALL folder 608 in the '449 patent—includes *all* photos and

23   videos taken with the device and therefore is not a "classification."  (*Id.* at 2637:9-16 (4/22/14)

24   (Parulski); *id.* at 2762:10-16, 2775:17-2778:24 (Storer); JX22 at 7:3-7, fig. 6.)  The evidence

25   accordingly does not support the jury's infringement verdict for this limitation either.

26   *Finally*, Samsung failed to establish that any accused product contains a "list … as a

27   search mode."  (JX22 at 18:27-30.)  Unlike the '449 patent, Apple's Camera Roll does not display

28   a list, but instead displays an array of thumbnails that the user may browse.  (Trial Tr. at 2761:24-

1   2766:24 (4/22/14) (Storer).)  As Mr. Parulski admitted, that is precisely what the claimed

2   invention of the '449 patent *avoids*.  (*Id.* at 2633:18-2635:21 (Parulski); *see also id.* at 2759:10-

3   2760:10, 2767:11-2768:14 (Storer); JX22 at 1:24-44.)

4   **VIII.   APPLE IS ENTITLED TO JUDGMENT THAT ITS IPAD PRODUCTS DO NOT**
5   **INFRINGE CLAIM 15 OF THE '239 PATENT.**

6            In its preliminary instructions given on the first day of trial, the Court instructed the jury

7   that Samsung's claims against Apple included allegations that Apple's iPad (as well as iPhone)

8   products infringed claim 15 of the '239 patent.  (Trial Tr. at 294:1-8 (Dkt. 1622).)  That

9   instruction reflected Samsung's claim for infringement of the '239 patent by Apple's iPhone and

10  iPad products, as well as Apple's counterclaim for a declaratory judgment of non-infringement of

11  the '239 patent by those same products, both of which were set forth in the parties' Amended

12  Joint Pretrial Statement.  (Dkt. 1455-01 at 2, 3, 8.)  On April 18, 2014—after two years of

13  litigating these claims and during the third week of trial—Samsung informed Apple that it was no

14  longer accusing the iPad 2, iPad 3, iPad 4, and iPad mini of infringement.  (Dkt. 1764-5.)

15  Samsung subsequently failed to present any evidence of infringement by Apple's iPad products at

16  trial.  (*See* Trial Tr. at 2529:20-23 (4/21/14) (Schonfeld).)  In light of that failure, the Court

17  should grant judgment as a matter of law that Apple's iPad products do not infringe claim 15 of

18  the '239 patent.

19           Judgment is proper under these circumstances.  For example, in *Strub v. Axon Corp.*, 168

20  F.3d 1321, 1998 WL 537721 (Fed. Cir. Aug. 17, 1998) (unpublished), the Federal Circuit

21  reversed the district court's denial of the plaintiff's motion for JMOL of validity as an abuse of

22  discretion.  Although the defendant's invalidity claim was part of the pre-trial order, the

23  defendant failed to present any evidence of invalidity and waited until the close of evidence to

24  withdraw the cause of action.  *Id.* at *10-11.  The Court concluded that "[w]ithdrawal of a clearly

25  presented claim at such a late stage in the proceeding was clearly prejudicial to [the plaintiff]

26  which was forced to prepare a defense to this claim in advance of trial."  *Id.* at *11.  Similarly, in

27  *Voda v. Medtronic Inc.*, 899 F. Supp. 2d 1188 (W.D. Okla. 2012), *aff'd*, 541 F. App'x 1003 (Fed.

28  Cir. 2013), *cert. denied*, 2014 U.S. LEXIS 3118 (U.S. May 4, 2014), the district court granted

1   JMOL of validity where the jury had been instructed about the defendant's invalidity claims but

2   the defendant presented no evidence of invalidity at trial and attempted to withdraw the claim on

3   the sixth day of trial. *Id.* at 1193. As in these cases, Samsung's belated withdrawal of its

4   infringement allegations directed to Apple's iPad products during the third week of trial warrants

5   the entry of judgment that Apple's iPad products do not infringe claim 15 of the '239 patent.[10]

### IX.   SAMSUNG'S IMPROPER AND PREJUDICIAL STATEMENTS REQUIRE A NEW TRIAL.

8       A new trial is appropriate under Rule 59 where "the verdict is contrary to the clear weight

9   of the evidence," "the trial was not fair to the party moving," or "to prevent a miscarriage of

10   justice." *Molski*, 481 F.3d at 729 (internal quotation marks omitted); *see also Rattray v. City of*

11   *Nat'l City*, 51 F.3d 793, 800 (9th Cir. 1994) (new trial granted to prevent "miscarriage of

12   justice"). As explained below, Samsung's improper and prejudicial statements to the jury warrant

13   a new trial on infringement for the '414 and '959 patents (in the event that the Court does not

14   grant JMOL of infringement), a new trial on willfulness for all patents other than the '721 patent

15   (and also other than the '647 patent if the Court grants JMOL of willfulness for that patent), and a

16   new trial on damages for all five of Apple's asserted patents.

#### A.   A New Trial Should be Granted to Correct Samsung's False Assertions that Apple Has Never Practiced the '172, '414, and '959 Patents.

19       As Apple disclosed during discovery—and was prepared to demonstrate at trial—Apple

20   uses the '172, '414, and '959 patents in its own products. (*See* Dkt. 1567-3 (expert report

21   demonstrating that Apple practices claim 27 of the '172 patent); Dkt. 1567-4 (expert report

22   demonstrating that Apple practices claim 11 of the '414 patent and claim 34 of the '959 patent).)

23   While the Court precluded Apple from affirmatively contending at trial that it practices these

24   patents (Dkt. 1398 at 3), the Court nonetheless permitted Samsung to repeatedly tell the jury that

---

26       [10] Indeed, by moving for JMOL on Apple's invalidity claims for the '239 and '449 patents on the basis that "Apple failed to dispute validity" at trial (Dkt. 1806-1 at 9), Samsung apparently agrees that JMOL is appropriate when the party bearing the burden of proof withdraws a claim during (or just before) trial and does not present evidence on that claim during trial.

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

37

1    Apple has *never* practiced any of these *patents* (as opposed to just the asserted claims)—even

2    though those statements were demonstrably false.  Despite Apple's requests, the Court then

3    refused to permit Apple to correct or rebut Samsung's false assertions and refused to issue any

4    curative instruction.  Allowing the jury to reach a verdict based on false information presented by

5    Samsung was manifestly unfair to Apple and requires a new trial as to infringement for the '414

6    and '959 patents, willfulness for all patents other than the '721 patent, and damages for all five

7    asserted patents.  *See Wharf v. Burlington N.R.R. Co.*, 60 F.3d 631, 637-638 (9th Cir. 1995)

8    (granting new trial where defendant's counsel "misled the court and the jury" by arguing false

9    fact to jury, thereby "prevent[ing] [the plaintiff's] claim from being fully and fairly presented").

10          During opening statements, Samsung's counsel repeatedly made the false assertion that

11   Apple does not practice the '172, '414, and '959 patents and has never used those patents in

12   Apple's own products:

- "The way you know that Apple think that's a nuisance, because *in the iPhone, they don't use that ['172] patent, never have.  Have never used it.  The iPhone does it differently*."  (Trial Tr. at 386:17-19 (Dkt. 1622) (emphasis added).)

- "So in other words, the survey participants are told, 'you either use Apple's ['414] patent' which, again, this is another one, *Apple doesn't use this, it's not in any iPhone, never has been . . . .*"  (*Id.* at 391:3-5 (emphasis added).)

- "But, again, this search capability that, you know, they claim to have a ['959] patent on, *it's not something that they have ever used.  It's never been done on the iPhone.*"  (*Id.* at 401:22-24 (emphasis added).)

19   (*See also id.* at 357:18, 359:6-12, 386:25-387:2, 413:22-414:1 (Samsung's opening statement).)

20   After Samsung's counsel opened the door on this issue, Apple sought permission from the Court

21   to introduce evidence responding to and correcting the false assertions.  (Dkt. 1567 at 5-6.)  Apple

22   also asked the Court to issue a curative instruction to minimize the prejudice resulting from

23   Samsung's misstatements.  (*Id.* at 6.)  The Court denied Apple's requests.  (Dkt. 1578.)

24          Samsung then capitalized on that ruling with impunity throughout the trial.  During cross-

25   examination of Apple's damages expert, Samsung's counsel asked questions based on the

26   assumption that Apple does not use the asserted patents—knowing full well that, pursuant to the

27   Court's orders, Dr. Vellturo could not testify otherwise.  (*E.g.*, Trial Tr. at 1433:14-22 (Dkt.

28   1715) (Vellturo).)  Samsung's counsel also suggested to the jury that any damages awarded

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

38

1   should be reduced because Apple does not practice the asserted patents.  (*E.g.*, *id.* at 3270:20-23

2   (4/29/14) (claiming that Apple "seeks lots of money for things that Apple itself does not even

3   use"); *id.* at 3328:23-3329:3, 3330:11-20.)  And in closing, Samsung's counsel argued—

4   repeatedly and counterfactually—that Samsung could not have copied the asserted patents

5   because they have never been used in Apple's products.  (*Id.* at 3256:24-25 ("You can't copy it if

6   it's not there, if Apple doesn't practice it."); *id.* at 3257:12-3258:2 ("If it's not in your product,

7   someone can't copy it.  And why would someone come to your product if you're not practicing

8   those same patents."); *id.* at 3265:23-3266:8 ("By the way, it wasn't practicing most of these

9   patents, at this point all of them."); *id.* at 3277:12 ("[T]he iPhone doesn't practice most of these

10  patents."); *id.* at 3287:18-3288:1 ("Well, we've already seen that most of these patents aren't

11  used in the iPhone.").)[11]

12          What began as an order limiting what *Apple* could affirmatively contend at trial on a

13  single issue thus morphed into a license for *Samsung* to make numerous false and misleading

14  statements to the jury knowing that Apple could not rebut them.  This course of events not only

15  undermined Apple's infringement, willfulness, and damages arguments on the merits but also

16  changed the tenor of the entire trial—all to Apple's prejudice.  By allowing Samsung's

17  assertions to go unrebutted and refusing to issue any curative instruction, the Court enabled

18  Samsung to cement in the jury's mind that Apple has never practiced the '172, '414, and '959

19  patents and permitted the jury to reach a verdict and calculate damages based on that false

20  information.  At this point, the only appropriate remedy is a new trial on those issues affected by

21  the misstatements.  *See, e.g.*, *Wharf*, 60 F.3d at 637-38 (granting new trial where the defendant's

22  counsel "misled the court and the jury" by arguing a false fact to the jury); *United States v.*

23  *Schuler*, 813 F.2d 978, 981-82 (9th Cir. 1987) (granting new trial in light of attorney misconduct

24  where the trial court failed to issue a curative instruction).

25          The Court's prior order precluding Apple from contending that it practices the '172, '414,

26  _____

27          [11]   The Court granted Apple a continuing objection to these and similar statements
    concerning Apple's practicing of the asserted patents.  (Trial Tr. at 617:7-11 (Dkt. 1623)
28  (Christie).)

1   and '959 patents does not justify Samsung's presentation of false information to the jury.  Under

2   the curative instruction rule, once Samsung represented to the jury that Apple had never practiced

3   any claim of the patents, the Court had an obligation to permit Apple to rebut those assertions.

4   *See Henderson v. George Wash. Univ.*, 449 F.3d 127, 140-41 (D.C. Cir. 2006) (finding abuse of

5   discretion where trial court did not permit introduction of previously excluded evidence when

6   opposing party "opportunistically used [the prior exclusion] ruling not only to shield themselves

7   from potentially damaging evidence, but also to use it as a sword to slice through the foundation

8   of much of the appellant's case."); *see also United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir.

9   2007) ("[T]he 'opening the door' principle allows parties to introduce evidence on the same issue

10  to rebut any false impression that might have resulted from the earlier admission." (citation

11  omitted)); *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993) (otherwise inadmissible

12  evidence can be admitted "when it is needed to rebut a false impression that may have resulted

13  from the opposing party's evidence"); *Dillon, Read & Co. v. United States*, 875 F.2d 293, 300

14  (Fed. Cir. 1989) (trial court "has a duty" to prevent false information from being submitted to fact

15  finder).

16          The unjustness of precluding Apple from rebutting Samsung's repeated false assertions is

17  further illustrated when considering the context in which this issue first arose—the Court's case

18  narrowing procedure.  Apple was precluded from introducing critical evidence at trial not because

19  of any determination that the information was not relevant under FRE 402 or that the information

20  would be prejudicial or risk jury confusion under FRE 403.  Rather, Apple was precluded because

21  the Court's case narrowing process limited Apple to five asserted claims (which amounted to one

22  for each asserted patent) and Apple had not identified the practiced claims as among those five

23  asserted claims.  But adherence to a case narrowing procedure cannot justify depriving Apple of

24  the right to present the truth about its property rights—especially after Samsung presented the

25  jury with a counterfactual version of events regarding Apple's practicing of its own patents.  *Cf.*

26  *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312-13 (Fed. Cir. 2011)

27  (suggesting that a case narrowing procedure could violate the patentee's due process rights where

28  it results in preventing the patentee from introducing evidence concerning unasserted claims that

1    "present[] unique issues as to liability or damages").

2          Furthermore, when the Court initially precluded Apple from contending that it practiced

3    certain claims of the patents, the Court stated that its concern was related to whether Apple's

4    products could be considered acceptable non-infringing alternatives to the asserted claims.  (Dkt.

5    1398 at 3; Dkt. 1411 at 67:5-9 ("I just want to clarify this one issue, this one defense based on

6    practicing non-asserted claims to a Samsung argument that Apple products are non-infringing

7    alternatives. . . ."); Dkt. 1411 at 55:13-16 ("It is not fair to . . . say we are shielding it from any

8    invalidity challenge, but we're using it as a sword to prevent you from using it as a non-infringing

9    alternative.").)  But Samsung never made such a claim at trial.  Instead, Samsung used the Court's

10   preclusion order to belittle the value of Apple's patents and to argue non-infringement and

11   invalidity—issues entirely unrelated to the one initially articulated by the Court.  The result was

12   manifestly unfair to Apple and warrants a new trial on infringement for the '414 and '959 patents,

13   a new trial on willfulness for all patents other than the '721 patent, and a new trial on damages for

14   all five Apple patents.

### B.    A New Trial Should Be Granted to Correct Samsung's Prejudicial References to the Possibility of a Permanent Injunction.

17         There was no legitimate reason for Samsung to discuss the possibility of permanent

18   injunctive relief during this trial on liability and damages.  Nevertheless, Samsung's counsel

19   made the following remark to the jury during opening statements:

20                Yet Apple is here literally seeking billions of dollars for
                  particular software configurations that are under the hood in the
21                phone that most consumers are not even aware that it's there, and
                  they want to take that big number not only to the bank, not only to
22                the bank, *but to get an order saying that none of these phones can
                  be sold in the United States anymore*.
23

24   (Trial Tr. at 358:19-24 (Dkt. 1622) (emphasis added).)

25         Although the Court prohibited Samsung from making further reference to Apple's

26   permanent injunction request (*id.* at 615:16 (Dkt. 1623) (Sohn)), the Court denied Apple's request

27   for curative and final jury instructions to address the harm caused by Samsung's improper

28   statement.  Apple's requested instructions were necessary given Samsung's improper references

1   to the possibility of injunctive relief as a consequence of liability.  The law is clear that whether to

2   grant equitable remedies—like injunctive relief—is the exclusive province of the Court and

3   should not influence the jury's decision on the merits of the case.  *See Shannon v. United States*,

4   512 U.S. 573, 576 (1994) (recognizing "the well-established principle that a jury is to base its

5   verdict on the evidence before it, without regard to the possible consequences of the verdict"); *id.*

6   at 579 ("Information regarding the consequences of a verdict is therefore irrelevant to the jury's

7   task."); *see, e.g.*, *Broadcom Corp. v. Emulex Corp.*, No. 09-CV-01058-JVS-AN (C.D. Cal. Aug.

8   10, 2011), Dkt. 770 at 2 (excluding any reference to the possibility of permanent injunctive relief

9   before the jury in a patent case); *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 529 (D. Del.

10  2005) (same); *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1530 (D.

11  Colo. 1993).

12          Samsung invited the jury to consider the possibility of a permanent injunction in assessing

13  Apple's claims—to decide the case based on the potential consequences of the verdict, not the

14  facts or the law.  Based on Samsung's improper statement, the jury could have decided to reduce

15  the damages it awarded to Apple or, even worse, the jury could have found no liability on certain

16  patents as a way to reduce the impact of any injunction.  The Court's refusal to give Apple's

17  proffered instructions to address Samsung's highly prejudicial statements is accordingly grounds

18  for a new trial on infringement for the '414 and '959 patents, a new trial on willfulness for all

19  patents other than the '721 patent, and a new trial on damages for all five of Apple's asserted

20  patents.  *See, e.g.*, *Schuler*, 813 F.2d at 982.

21          **C.      A New Trial Should Be Granted to Correct Samsung's Prejudicial References
22                    to the Federal Circuit's Preliminary Injunction Decision.**

23          During opening statements, Samsung's counsel misleadingly suggested to the jury that the

24  Federal Circuit held that Samsung was "entitled" to use Apple's universal search feature:

25                      What happened is they sued on a different search patent.
                        They sued on the '604 patent, not this one, and they went to court
26                      and they got an injunction against our doing this type of search.
                        We didn't think it was right.  We didn't agree, but we complied.
27                      And so we – it wasn't hard to do.  I mean, we turned that off.

28                      We appealed it, and the court of appeals reversed and said

---

we were right, Apple was wrong, *we're entitled to do it*, and then dropped that patent.

(Trial Tr. at 402:7-15 (Dkt. 1622) (emphasis added).)

Samsung's statement regarding the Federal Circuit's preliminary injunction decision was incorrect.  Even Samsung tacitly admitted as much in its opposition to Apple's motion for a curative instruction.  (Dkt. 1571 at 12-13.)  Yet, the Court rejected Apple's proposed curative and final jury instructions to address the issue.  (*See* Dkt. 1578; Dkt. 1758 at 120-23.)  Emboldened by the Court's ruling, Samsung again improperly used the Federal Circuit's preliminary injunction decision during the trial when cross-examining Apple's damages expert.  *(See, e.g.*, Trial Tr. at 1342:5-12 (Dkt. 1715) (Vellturo).)

Samsung's statements regarding the Federal Circuit's preliminary injunction decision were highly prejudicial to Apple.  They unfairly suggested to the jury that an appeals court sided with Samsung and against Apple on an issue that was relevant in the current trial, when in fact the Federal Circuit's decision had no relevance to the issues that were before the jury.  Samsung's opening statement also improperly suggested that the appeals court somehow ruled that Samsung is entitled to use Apple's patented universal search feature claimed *in the '959 patent*, even though the '959 patent was not at issue in the appeal.[12]  The Court's refusal to give Apple's proffered instructions to address Samsung's highly prejudicial statements warrants a new trial on infringement, willfulness, and damages for the '959 patent.  *See, e.g., Schuler*, 813 F.2d at 982.

---

[12] The prejudice to Apple is even more pronounced when considering that Apple was precluded from referencing the fact that two prior juries found Samsung liable for infringing Apple's patents.  (*See*, *e.g*., Trial Tr.  at 263-64 (Dkt. 1621) (precluding Apple from mentioning the 1846 litigation during its opening statement).)

APPLE'S MOT. FOR JMOL (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS
CASE NO.12-cv-00630-LHK (PSG)
sf- 3414496

43

1   Dated: May 23, 2014                    MORRISON & FOERSTER LLP

2

3                                          By:   /s/ Rachel Krevans
                                                 RACHEL KREVANS
4
                                           Attorneys for Plaintiff and
5                                          Counterclaim-Defendant
                                           APPLE INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28