QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar. No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Cal. Bar No. 228601)
michaelfazio@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), AMENDED JUDGMENT, NEW TRIAL, AND DAMAGES ENHANCEMENTS**<br><br>**Date:** **July 10, 2014**<br>**Time:** **1:30 p.m.**<br>**Place:** **Courtroom 8, 4th Floor**<br>**Judge:** **Hon. Lucy H. Koh** |

# TABLE OF CONTENTS

**Page**

I.    THERE IS NO BASIS TO OVERTURN THE JURY'S VERDICT THAT SAMSUNG'S GALAXY S II PRODUCTS DID NOT INFRINGE CLAIM 8 OF THE '721 PATENT ................................................................................................... 1

II.   THERE IS NO BASIS TO OVERTURN THE JURY'S VERDICT THAT SAMSUNG DID NOT INFRINGE CLAIM 20 OF THE '414 PATENT ........................... 3

     A.    The Jury Correctly Found that the Accused Products Do Not Contain Three Synchronization Software Components that Are "Configured to Synchronize Structured Data" Because One of the Three Could Not Synchronize Anything ................................................................................ 3

     B.    The Non-Infringement Verdict Is Consistent With the Plain and Ordinary Meaning of the Term "Configured to Synchronize Structured Data." ..................... 6

III.   THERE IS NO BASIS TO OVERTURN THE JURY'S VERDICT THAT SAMSUNG DID NOT INFRINGE CLAIM 25 OF THE '959 PATENT ......................... 10

     A.    Apple Admits that Its Accused "Internet Heuristic" Does Not Actually Locate Anything on the Internet, and the Jury Reasonably Found that It Could Not Be a "Heuristic to Locate Information" on the Internet ....................... 11

     B.    Apple Failed To Introduce Any Evidence That Samsung's Devices Employed A Plurality Of Heuristics. ................................................................ 14

IV.   THERE IS NO BASIS TO OVERTURN THE JURY'S VERDICT THAT SAMSUNG DID NOT WILLFULLY INFRINGE THE '647 PATENT ........................... 15

V.    APPLE IS NOT ENTITLED TO ANY JUDGMENT CONCERNING SAMSUNG'S AFFIRMATIVE DEFENSES ................................................................ 18

VI.   APPLE IS NOT ENTITLED TO ENHANCED DAMAGES, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST ............................................................ 19

     A.    Apple Is Not Entitled to Enhanced Damages ........................................................ 19

         1.    The Court Should Not Award Enhanced Damages for the '721 Patent ......................................................................................................... 19

         2.    The Court Should Not Award Enhanced Damages for the '647 Patent ......................................................................................................... 22

     B.    Apple Is Not Entitled to Supplemental Damages .................................................. 24

         1.    Apple fails to show supplemental damages are appropriate. ...................... 24

         2.    Apple's reliance on the 1846 case is misplaced. ......................................... 26

         3.    Apple's request is premature. ...................................................................... 27

C.      Apple Is Not Entitled to $6.5 Million in Prejudgment Interest ............................... 28

      1.      The Court correctly held that the 52-week Treasury Bill rate provides full compensation. .......................................................... 28

      2.      Apple's request is premature. ......................................................... 30

      3.      Apple's request is based on the wrong amount. .......................... 30

VII.    APPLE IS NOT ENTITLED TO JUDGMENT OR A NEW TRIAL ON SAMSUNG'S CLAIM FOR INFRINGEMENT OF CLAIM 27 OF THE '449 PATENT ....................................................................................................... 30

VIII.   APPLE IS NOT ENTITLED TO JUDGMENT THAT ITS IPAD PRODUCTS DO NOT INFRINGE CLAIM 15 OF THE '239 PATENT ........................................ 35

IX.     THERE IS NO BASIS FOR A NEW TRIAL BASED ON SAMSUNG'S SUPPOSEDLY IMPROPER AND PREJUDICIAL STATEMENTS ................................ 36

A.      Apple's Request for a New Trial Based on Samsung's Statements Regarding Apple Not Practicing the '172, '414, and '959 Patents Is Meritless .............................................................................................. 36

      1.      Samsung appropriately argued against Apple's practice of these patents. ............................................................................................ 38

      2.      Apple twice elected to present more infringement claims against Samsung, understanding that this choice would decrease its ability to allege practice of its own patents; Apple cannot complain that its own choice was unfair. ...................................................................... 36

      3.      The Court's narrowing order did not violate Apple's due process rights. .............................................................................................. 39

      4.      There is no prejudice to Apple that would warrant a new trial. ................. 40

      5.      The Court correctly declined to issue a curative instruction. ...................... 41

B.      Apple's Request for a New Trial Based on Samsung's Reference to Apple's Request for Injunctive Relief Is Meritless ................................................. 42

C.      Apple's Request for a New Trial Based On Its Previously Rejected Arguments Regarding Samsung's Reference to the Federal Circuit's Reversal of the Preliminary Injunction Remains Meritless ................................... 43

CONCLUSION ................................................................................................................. 44

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)..............................................................................2, 7, 10, 14

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ..........................................................................................39

*Apple Inc. v. Samsung Elecs. Co., Ltd. (Apple  II)*,
  695 F.3d at 1377-80 ............................................................................................................44

*Apple Inc. v. Motorola, Inc.*,
  No. 12-1548 (Fed. Cir. Apr. 25, 2014) ...............................................................................16

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  920 F. Supp. 2d 1079 (N.D. Cal. 2013) ..............................................................................18

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 12-cv-00630-LHK, 2014 WL 660857 (N.D. Cal. Feb. 20, 2014)....................................7

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  2014 WL 549324 (N.D. Cal. Feb. 7, 2014) .........................................................................43

*Atmel Corp. v. Silicon Storage Tech., Inc.*,
  202 F. Supp. 2d 1096 (N.D. Cal. 2002), *aff'd*, 76 F. App'x 298 (Fed. Cir. 2003).....................29

*Baden Sports, Inc. v. Kabushiki Kaisha Molten*,
  2007 WL 2790777 (W.D. Wash. 2007) ..........................................................................22, 24

*Bard Peripheral Vascular, Inc. v. Gore & Assoc., Inc.*,
  682 F.3d 1003 (Fed. Cir. 2012)........................................................................................15, 17

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
  249 F.3d 1341 (Fed. Cir. 2001)..........................................................................................6, 7

*Boston Scientific Corp. v. Johnson & Johnson*,
  550 F. Supp. 2d 1102 (N.D. Cal. 2008) ..........................................................................25, 27

*Braintree Labs., Inc. v. Nephro-Tech Inc.*, ,
  81 F. Supp. 2d 1122 (D. Kan. 2000) ...................................................................................26

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
  295 F.3d 1277 (Fed. Cir. 2002)...........................................................................................15

*Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*,
  782 F. Supp. 2d 667 (N.D. Ill. 2011) ..................................................................................10

*Conceptus, Inc. v. Hologic, Inc.*,
  2012 WL 44064 (N.D. Cal. Jan. 9, 2012) ...........................................................................28

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

*Cornell Univ. v. Hewlett-Packard Co.,*
    No. 01-cv-1974, 2009 WL 1405208 (N.D.N.Y. May 15, 2009)................................30

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
    567 F.3d 1314 (Fed. Cir. 2009) ................................................................15, 21

*Dietrich v. Trek Bicycle Corp.,*
    297 F. Supp. 2d 1122 (W.D. Wis. 2003).................................................39

*Dillon, Read & Co. v. United States,*
    875 F.2d 293 (Fed. Cir. 1989)..................................................................41

*eBay, Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) .................................................................................24

*Edwards v. City of Philadelphia,*
    860 F.2d 568 (3d. Cir. 1988).....................................................................43

*Eolas Technologies, Inc. v. Microsoft Corp.,*
    2004 WL 170334 (N.D. Ill. 2004), *vacated in part on other grounds*, 399 F.3d 1325 (Fed. Cir.
    2005)........................................................................................................28

*Finjan, Inc. v. Secure Computing Corp.,*
    626 F.3d 1197 (Fed. Cir. 2010) ................................................................27

*Fonar Corp. v. General Elec. Co.,*
    107 F.3d 1543 (Fed. Cir. 1997)..............................................................31, 32

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., No. C 03-1431 SBA,*
    2008 WL 928535 (N.D. Cal. Apr. 4, 2008) ...............................................29

*Gen. Motors Corp. v. Devex Corp.,*
    461 U.S. 648 (1983) .................................................................................29

*Goodman v. Ohio,*
    2010 WL 3394727 (N.D. Ohio July 23, 2010)...........................................42

*Guzik Technical Enterprises, Inc. v. Western Digital Corp., No. 11-03786-PSG, 2013 WL
    6227626 (N.D. Cal. Nov. 22, 2013 ...........................................................18

*Gyromat Corp. v. Champion Spark Plug Co.,*
    735 F.2d 549 (Fed. Cir. 1984)..................................................................26

*Henderson v. George Washington Univ.,*
    449 F.3d 127 (D.C. Cir. 2006) ...............................................................41, 42

*ePlus Inc. v. Lawson  Software Inc.,*
    700 F.3d 509 (Fed. Cir. 2013).............................................................9, 10, 14

*Innogenetics, N.V. v. Abbott Labs.,*
    512 F.3d 1363 (Fed. Cir. 2008).................................................................25

*Integra Lifesciences I, Ltd. v. Merck KGaA,*
    496 F.3d 1334 (Fed. Cir. 2007)...................................................................9

*Intel Corp. v. Broadcom Corp.*,
    2003 U.S. Dist. LEXIS 2372 (D. Del. Feb. 13, 2003) ...................................................1

*Intron, Inc. v. Benghiat*,
    2003 WL 22037710 (D. Minn. 2003) ..........................................................................28

*JCS*,
    2008 WL 3385819 (N.D. Cal. July 28, 2008) ..............................................................29

*In re Katz Interactive Call Processing Patent Litig.*,
    639 F.3d 1303 (Fed. Cir. 2011) .............................................................................39, 40

*Laitram Corp. v NEC Corp.*,
    115 F.3d 947 (Fed. Cir. 1997) ....................................................................................29

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983) ..................................................................................29

*Leapfrog Enter., Inc. v. Fisher-Price, Inc.*,
    2005 WL 1331216 (D. Del. 2005) ..........................................................................16, 17

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006) ..................................................................................10

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ......................................................................................20

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
    633 F. Supp. 2d 361 (E.D. Tex. 2009) ....................................................................22, 24

*Moba, BV v. Diamond Automation, Inc.*,
    325 F.3d 1306 (Fed. Cir. 2003), ..........................................................................8, 9, 14

*Molski v. MJ Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ......................................................................................40

*Oiness v. Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996) ....................................................................................28

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007) ..................................................................................25

*Power Integrations, Inc. v. Fairchild Semiconductor Inc.*,
    762 F. Supp. 2d 710 (D. Del. 2011) .................................................................21, 22, 23, 24

*Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 08-CV-335-IEG, 2010 WL 3070370
    (S.D. Cal. Aug. 5, 2010), *aff'd in part, vacated in part*, 2012 WL 6602786 (Fed. Cir. Dec. 19,
    2012)......................................................................................................................26

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992) ............................................................................21, 20, 23, 24

*Remediation Prods., Inc. v. Adventus Americas, Inc.*,
    No. 3:07-cv-153-RJC-DCK, 2010 WL 3895915 (W.D.N.C. Sept. 30, 2010) ........................39

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
   563 F.3d 1358 (Fed. Cir. 2009) ................................................................................... 31, 32

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) ................................................................................... 15, 17,
   .................................................................................................................................. 23

*Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*,
   No. 5:11-cv-00774-PSG, 2014 WL 1008183 ................................................................ 29

*Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v.
Bjorklund*,
   728 F.2d 1262 (9th Cir. 1984) ...................................................................................... 19

*Spine Solutions v. Medtronic Sofamor Danek USA*,
   620 F.3d 1305 (Fed. Cir. 2010) .................................................................................... 21

*Stambler v. RSA Sec. Inc., No. Civ.A. 01-0065-SLR*,
   2003 WL 22749855 (D. Del. Nov. 14, 2013) .............................................................. 9, 14

*Strub v. Axon Corp.*,
   168 F.3d 1321, 1998 WL 537721 (Fed. Cir. Aug. 17, 1998) ....................................... 35, 36

*Summers v. Delta Air Lines, Inc.*,
   508 F.3d 923 (9th Cir. 2007) ........................................................................................ 19

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
   734 F.3d 1332 (Fed. Cir. 2013) .................................................................................... 32, 34

*Thorner v. Sony Computer Entm't Am., LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) .................................................................................... 7

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
   750 F.2d 1552 (Fed. Cir. 1984) .................................................................................... 25

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
   474 F.3d 1298 (Fed. Cir. 2007) .................................................................................... 38

*U.S. v. Emmanuel*,
   565 F.3d 1324 (11th Cir. 2009) .................................................................................... 42

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) .................................................................................... 17, 18

*United States v. Rosa*,
   11 F.3d 315 (2d Cir. 1993) ........................................................................................... 41

*United States v. Schuler*,
   813 F.2d 978 (9th Cir. 1987) ........................................................................................ 41, 42

*United States v. Sine*,
   493 F.3d 1021 (9th Cir. 2007) ...................................................................................... 41

*Voda v. Medtronic Inc.*,
   899 F. Supp. 2d 1188 (W.D. Okla. 2012), *aff'd*, 541 F. App'x 1003 (Fed. Cir. 2013) ... 36, 37, 38

*Wharf v. Burlington N.R.R. Co.*,
   60 F.3d 631 (9th Cir. 1995) .................................................................................... 39

### **Statutes**

Fed. R. Civ. P. 50(a)(1) .......................................................................................... 18

Fed. R. Evid. 404(a) ................................................................................................ 41

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

1      For the reasons set forth below, this Court should deny Apple's renewed motion for

2  judgment as a matter of law, amended judgment, a new trial, and enhanced damages.

3  **I.      THERE IS NO BASIS TO OVERTURN THE JURY'S VERDICT THAT SAMSUNG'S GALAXY S II PRODUCTS DID NOT INFRINGE CLAIM 8 OF THE '721 PATENT**

4

5      The jury's finding that the Galaxy S II devices do not infringe the '721 unlock patent with

6  their call-answering function is supported by the record and should not be overturned.   The jury

7  was entitled to find that the slide-to-answer feature does not meet the plain and ordinary meaning

8  of the "unlock" limitations in the claim.

9      Apple's motion begins on a faulty legal premise.  Apple asserts that it should be granted

10  judgment as a matter of law because Samsung's expert did not specifically address non-

11  infringement by the accused Galaxy S II devices.  That is not the law.  Proving infringement was

12  Apple's burden, and the fact that Samsung's expert did not specifically rebut Apple's arguments

13  concerning the Galaxy S II does not support a finding of infringement.  *See Intel Corp. v.*

14  *Broadcom Corp.*, 2003 U.S. Dist. LEXIS 2372 at *40 (D. Del. Feb. 13, 2003) (Defendant "was not

15  required to put on its own expert to disprove infringement because it was [Plaintiff] that bore the

16  burden of proving infringement.").   Apple cannot overcome its burden post-trial, when it failed to

17  provide sufficient evidence to the jury.

18      Moreover, the record here shows that the jury was presented with and rejected Apple's

19  infringement position.  Apple fails to mention that the jury was, in fact, made aware of Samsung's

20  non-infringement position with respect to slide-to-answer *by Apple's own expert*.  Tr. 674:14-21;

21  *see also* Tr. 663:1-9.  The record does not support overturning the jury's assessment of the

22  evidence.   Indeed, there is more than sufficient evidence in the record from which a reasonable

23  jury could find that the Galaxy S II devices do not infringe claim 8 of the '721 patent.  Apple

24  acknowledges that it accused the Galaxy S II products of infringing the slide-to-unlock patent

25  "only via 'slide to answer'" function, which occurs when the phone rings.  Dkt. 1897-3 at 14.  The

26  plain and ordinary meaning of "unlock," the patent specification, and Apple's description of the

27  purpose and advantages of its invention all support the conclusion that "slide-to-answer" does not

28  satisfy the "unlock" limitations of Claim 8.

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

First, the jury reasonably found that "slide to answer" does not satisfy the plain meaning of the "unlock" limitations of Claim 8.  The '721 patent is entitled "*Unlocking a Device* by Performing Gestures on an *Unlock* Image."  JX10 at 1 (emphasis added).  Claim 8 includes numerous "unlock" limitations, including an "*unlock image*," "*to unlock the hand-held electronic device* if the unlock image is moved . . ." and "visual cues to communicate a direction of movement of the unlock image *required to unlock the device*."  JX10 at 19:58-20:12 (emphasis added).  The claim term "unlock" was not construed, and the jury was instructed to apply the claim language's plain and ordinary meaning for any terms for which the Court did not provide a construction.  Tr. 3160:9-11.  It is inappropriate to second-guess the finding of the jury that answering the phone and moving to the active call screen does not unlock the device, as required by the claim.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) ("It was up to the jury to determine from the evidence presented at trial whether the ActiveVideo system satisfied the plain and ordinary meaning of the 'superimposing' limitations.").

Second, the jury's finding of non-infringement is supported by the '721 patent, which does not describe "slide to answer" as a form of sliding to unlock.  Figure 7 of the '721 patent – a portion of which the jury was shown – demonstrates unlocking a device by dragging unlock image 702 to the end of the channel.  *See* JX10 at Fig. 7; *see also* JX10 at 16:4-7, 15:40-16:11.  The sliding action, however, does not actually answer the incoming call, JX10 at 16:4-11, but rather the call can be answered only by pressing an "accept" button 708 *when the device has already been unlocked normally*.



1   Having been given the patent, directed to Figure 7, and told that Samsung did not consider

2   answering the phone to be "unlocking" within the patent, it was reasonable for the jury to

3   conclude not only that Apple had not met its burden, but that the evidence required a rejection of

4   Apple's infringement claim with respect to slide-to-answer.

5        Third, the jury's finding of non-infringement for the call-answering function is also

6   consistent with the testimony of Apple's inventor and its expert.  Gregory Christie, a named

7   inventor on the '721 patent, testified that the problem Apple was trying to solve was "accidental

8   use, pocket dialing . . ." Tr. 599:4-5.  Mr. Christie also testified that the invention was important

9   in his view because the unlock screen saying "slide to unlock" would be the "customer's first

10  experience" with the phone.  Tr. 601:13-24.  Apple's expert, Dr. Cockburn, further reinforced the

11  fact that the invention concerns the initial unlock screen by describing the "pocket dial" or

12  accidental activation problem that Apple sought to solve with its slide-to-unlock mechanism.  Tr.

13  636:4-13.  In contrast, the inventor's only testimony concerning slide to answer was that it was

14  another use Apple identified after coming up with their slide-to-unlock concept.  Tr. 602:16-25.

15  Thus, the jury could have reasonably determined that slide to answer did not satisfy the claim's

16  "unlock" limitations..

17       Last, it is clear that the jury's finding was no mistake.  The jury found infringement only

18  for devices for which Apple accused the initial lock screen (Admire, Galaxy Nexus, Stratosphere).

19  In contrast, the jury consistently and purposefully found non-infringement on each and every

20  device (Galaxy S II, Galaxy S II Epic 4G Touch, and Galaxy S II Skyrocket) for which Apple

21  accused only "slide to answer."  Having heard the evidence, and having found that Apple did not

22  meet its burden with respect to the slide-to-answer function (a decision squarely in line with the

23  patent and the record), there is no basis to overturn the verdict.

24  **II.     THERE IS NO BASIS TO OVERTURN THE JURY'S VERDICT THAT
         SAMSUNG DID NOT INFRINGE CLAIM 20 OF THE '414 PATENT**

25       The jury correctly found that Samsung did not infringe claim 20.  Apple's motion depends

26  on mischaracterizations of Samsung's arguments, and fails to properly defer to the jury's finding.

27       **A.     The Jury Correctly Found that the Accused Products Do Not Contain Three
              Synchronization Software Components "Configured to Synchronize**

28

**Structured Data" Because At Least One Accused Component Does Not Perform Synchronization Operations**

As Apple agrees, "infringement of claim 20 of the '414 patent turned on whether the accused products include at least three synchronization software components that were 'configured to synchronize,' in accordance with the plain and ordinary meaning of that term." Dkt. 1897-3 at 6:10-12.  Apple failed to show three such "synchronization software components." It could not identify three "Sync Adapters" that performed synchronization operations; instead, four of the six accused "Sync Adapters" performed no synchronization operations and merely caused other components in the accused devices to perform synchronization. *See, e.g.*, Tr. 1649:7-1651:19, 1652:13-1653:23, 2169:9-18, 2173:20-2174:6; JX51A, JX53A.  The jury reasonably concluded that these Sync Adapters could not be "configured to synchronize," as required by the claim, and therefore could not support infringement of claim 20.

At trial, the jury heard Google engineer Paul Westbrook testify about the accused Gmail Sync Adapter and Exchange Sync Adapters, and explain that neither performs any synchronization operations.  Tr. 1651:5-11, 1653:15-17.  Mr. Westbrook explained that Gmail performs synchronization using software called the "Mail Engine," not the Gmail Sync Adapter, Tr. 1650:1-4; SDX3010, while the Gmail Sync Adapter simply "passes messages between the Sync Manager here to this Mail Engine."  Tr. 1649:20-25.  In Mr. Westbrook's demonstrative SDX3010, he diagrammed how the Mail Engine was connected to the Gmail servers and to the local database, and thus could synchronize the two—but also showed how the Gmail Sync Adapter was not, and thus could not.  Tr. 1649:3-1651:11.  Mr. Westbrook further testified that Android implements Exchange synchronization in a similar way:  the "Exchange Service" does all the synchronization with Microsoft Exchange servers, not the accused Exchange Sync Adapters, which again simply pass messages to and from the Sync Manager.  Tr. 1652:2-1653:23.  As Dr. Chase explained, because claim 20 requires *three* synchronization software components that are



1   "configured to synchronize structured data" of different data classes, and neither the Gmail Sync

2   Adapter nor the three Exchange Sync Adapters accused by Apple satisfied this limitation, Apple

3   did not show the three required components, and thus could not show that the accused products

4   infringed claim 20.  *See, e.g.*, Tr. 2170:5-2172:1, 2172:13-2173:3, 2173:20-2174:20.

5         Apple challenges none of these facts.  And Apple did not challenge any of this evidence at

6   trial.  Apple did not cross-examine Mr. Westbrook on any of his testimony regarding the Sync

7   Adapters, or attempt to challenge this testimony in any way.  Indeed, on cross-examination,

8   Apple's expert Dr. Snoeren conceded that those Sync Adapters do not perform ***any***

9   synchronization operations themselves; at best, they "cause" synchronization to occur, by calling

10  other components that perform synchronization operations.  Tr. 1034:20-1035:6.  Instead, Apple

11  argued to the jury, and repeats now, that the accused devices infringe because they contain Sync

12  Adapters that call other components to perform synchronization, although they do not themselves

13  perform any synchronization.  Dkt. 1897-3 at 12:6-16.  But the Court previously denied Apple's

14  motion for summary judgment of infringement of claim 20 for this very reason, holding that

15  summary judgment was improper because a reasonable jury could "conclude that the accused

16  Sync Adapters merely ***direct*** other components to perform synchronization operations and are not

17  themselves 'configured to synchronize structured data' as required by the claim."  Dkt. 1151 at

18  24:2-4.  Because Samsung presented ample evidence—which Apple does not dispute—that could

19  have led the jury reasonably to conclude that the accused products lack the three requisite

20  synchronization software components that are "configured to synchronize structured data," the

21  Court should deny Apple's motion.[1]

22  _____

23      [1]  Apple attempts to use PX172 to argue in the abstract that Sync Adapters must "handle[] all
    of the sync protocol logic."  Dkt. 1897-3 at 11:21-22.  But Apple does not contradict Mr.
24  Westbrook's testimony that this is simply not true, and that this document did not come from
    Google.  Tr. 1657:15-1658:21.  Thus, Apple submits a document it alleges should challenge Mr.
25  Westbrook's understanding of his own software, without showing how the document correctly
    challenges Mr. Westbrook's understanding of that software.  Even on its face, PX172 describes
26  Sync Adapters implemented only for "calendar, contacts, [and] subscribed feeds" data classes—
    not mail data, the sole data class at issue in this trial.  PX172 at 5.  Therefore, even if PX172 were
27  accurate at all (which it is not), it does not even purport, on its own terms, to describe the Gmail
28      (footnote continued)

**B.      The Non-Infringement Verdict Is Consistent With the Plain and Ordinary Meaning of the Term "Configured to Synchronize Structured Data."**

To avoid addressing the facts presented by Samsung at trial demonstrating non-infringement, Apple falls back on the same claim construction arguments that it raised at summary judgment, and that the Court squarely rejected.  Apple provides no explanation why it believes the jury was required to accept Apple's interpretation of the plain and ordinary meaning of the term "configured to synchronize structured data" as including components that are "configured to call other components that synchronize structured data."   And Apple's rehashing of the argument that Samsung's witnesses imported "additional limitations" into the claim, Dkt. 1897-3 at 12:17-19, or adopted a "narrowing construction of the claim language," *id.* at 13:21, entirely mischaracterizes Samsung's non-infringement theory, which the Court already has held a jury could find is consistent with the plain and ordinary meaning of claim 20.  Accordingly, Apple fails to demonstrate that the jury's verdict is unsupported by the plain and ordinary meaning of the term "configured to synchronize structured data."

Apple offers no support for its argument that the jury should have been required to adopt Apple's theory that "the claim language—'configured to synchronize'—does not require a sync adapter to perform the synchronization itself."  Dkt. 1897-3 at 12:14-16.  Indeed, the Court explicitly denied Apple's motion for summary judgment on this basis, holding that "Apple contends that a reasonable jury would necessarily conclude that a synchronization software component is 'configured to synchronize structured data' even if it merely 'direct[s] other parts of the software' to synchronize structured data.  Apple Reply at 6 (emphasis omitted).  ***Apple has pointed to nothing that would require a jury to read the plain and ordinary meaning of the claim so broadly***."  Dkt. 1151 at 23:18-24 (emphasis added).  Thus, the Court recognized that the

and Exchange Mail Sync Adapters at issue.  Finally, even if PX172 did contradict Mr. Westbrook's testimony, the jury could reasonably have credited Mr. Westbrook as correct, and found the document to be incorrect.  *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1351 (Fed. Cir. 2001) ("To the extent that there was conflicting evidence, the jury's evaluation of the evidence could include determinations of the reliability of the data and the credibility of the witnesses.").

1    jury was not bound by Apple's reading of "configured to synchronize structured data," and that the

2    application of the plain and ordinary meaning of this term to the accused products was a factual

3    issue for the jury.

4            Ample evidence supported the jury's factual conclusion.  At trial, Dr, Chase testified that

5    that the plain and ordinary meaning of the term "configured to synchronize structured data" did

6    not refer simply to "causing synchronization to occur," but required a component to perform at

7    least one synchronization operation.  Tr. 2180:11-2181:11.  Dr. Chase explained:  "I can call the

8    mechanic to fix my car, and if that call causes the mechanic to fix may car, I really can't say that I

9    did it myself or I could do it myself.  Causing is very different from doing.  That applies to

10   software systems as well."  *Id.*  Samsung also presented evidence that the erroneously accused

11   Sync Adapters merely cause other components to synchronize data without performing ***any***

12   synchronization operations themselves.  The record evidence properly allowed the jury to reach its

13   factual conclusion:  these Sync Adapters are not "configured to synchronize structured data,"

14   according to the plain and ordinary meaning of that term.  *See* Dkt. 1151 at 23:18-24; *see also*

15   *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 660857, at *5-6 (N.D. Cal.

16   Feb. 20, 2014) (denying Samsung's motion to strike portions of Dr. Storer's non-infringement

17   expert report regarding a claim term to which Dr. Storer had "applied a plain and ordinary

18   meaning," because "Dr. Storer's understanding of the plain and ordinary meaning of the term at

19   issue is supported by the specification such that a jury could (but would not have to) agree with

20   Apple's noninfringement position" (citing *Thorner v. Sony Computer Entm't Am., LLC*, 669 F.3d

21   1362, 1369 (Fed. Cir. 2012)); *see also ActiveVideo*, 694 F.3d at 1326 ("It was up to the jury to

22   determine from the evidence presented at trial whether the ActiveVideo system satisfied the plain

23   and ordinary meaning of the 'superimposing' limitations."); *Biotec*, 249 F.3d at 1349 ("[T]he

24   meaning of 'melting' does not appear to have required 'construction,' or depart from its ordinary

25   meaning.  The issue in dispute was the application of the melting step in the accused process, a

26   factual question of infringement.").

27           As in its summary judgment motion, Apple wrongly accuses Samsung of having based its

28   non-infringement theory on "an unjustifiably narrowed construction of the claim language" that

1    "required that a Sync Adapter be configured to perform all synchronization."  Dkt. 1897-3 at 6:13-

2    17, 12:6-11.  But as the Court recognized in its order denying summary judgment, Samsung has

3    never argued that claim 20 requires a synchronization software component to perform all

4    synchronization operations; to the contrary, Samsung has observed that the accused Sync Adapters

5    "perform no synchronization operations at all, and are therefore not 'configured to synchronize

6    structured data,' as claim 20 requires."  Dkt. 1151 at 23:8-12.[2]  As the Court held, a reasonable

7    jury could agree with Samsung's interpretation and "conclude that the accused Sync Adapters

8    merely direct other components to perform synchronization operations and are not themselves

9    'configured to synchronize structured data' as required by the claim."  Dkt. 1151 at 24:2-5.[3]

10   Accordingly, Samsung has neither narrowed the language of claim 20 nor added new limitations.

11          Because Samsung's non-infringement theory is consistent with the Court's treatment of the

12   language of claim 20, none of the cases cited by Apple— which address arguments based on claim

13   interpretations that improperly depart from the Court's constructions—apply.  In particular,

14   Apple's reliance on *Moba, BV v. Diamond Automation, Inc.*, 325 F.3d 1306 (Fed. Cir. 2003), to

15   argue that Samsung purportedly "impose[d] additional limitations where the Court directed the

16   jury to apply plain and ordinary meaning," Dkt. 1897-3 at 13:3-20, underscores where Apple has

---

18   [2] As the Court already held in its summary judgment order, Samsung's position is consistent
19   with the specification of the '414 patent, which discloses only synchronization software
     components that perform synchronization operations.  *See* Dkt. 1151 at 23:23-24:2 (holding that
20   "a jury finding of noninfringement would not, as Apple contends, amount to an exclusion of a
     preferred embodiment.").
21   [3] Apple's additional argument that Dr. Chase interpreted the term "configured to synchronize
22   structured data" to require a component "to perform synchronization in a specific way, such as
     through a direct connection with the first database," Dkt. 1897-3 at 12:8-11, is similarly
23   misguided.  In fact, Dr. Chase simply explained how Dr. Snoeren erroneously opined in his expert
     report that each of the accused Sync Adapters is "configured to synchronize structured data"
24   because it "perform[s] synchronization functions for the data associated with those applications,
     including determining what local data is new, sending new or modified data to the remote service,
25   and receiving new or modified data from the remote service."  Tr. 2168:14-2169:18; 2172:2-22.
     As Dr. Chase testified, Dr. Snoeren's analysis was factually incorrect because the Gmail Sync
26   Adapter does not access data from either the Gmail database or the remote Gmail server, and
     therefore does not perform any of the synchronization operations that Dr. Snoeren had described
27   in his expert report.  Tr. 2169:9-18, 2171:19-2172:22.

gone wrong.  In *Moba*, which involved automated egg sorting technology, the district court construed a claim term requiring "guiding steps" to require "(1) Carrying eggs to holding stations; (2) Carrying eggs from the holding stations to the spaced apart location; and (3) Carrying more eggs to the holding stations."  *Id.* at 1313.  The court included this construction in its instructions to the jury, which rendered a verdict of non-infringement.  *Id.*  The patentee moved for judgment as a matter of law, arguing that the alleged infringer admitted it performed all three of these steps, and tendered as its sole non-infringement argument only that the patent required performance of the steps in a certain order.  *Id.* at 1313-15; *see also* Defendant's Renewed Mot. for Judgment as a Matter of Law, *Moba, BV v. Diamond Automation, Inc.*, No. 95-cv-2631, 2001 WL 34764320, at *23-28 (E.D. Pa. 2001).  The district court agreed, but found that "the jury reasonably could have determined from the testimony presented that sequential performance is a necessary characteristic of the 'guiding steps.'"  325 F.3d at 1313.  The Federal Circuit reversed, noting that the "instructions to the jury did not require sequential performance," and therefore the district court "allowed the jury to add an additional limitation" to the construed claim term.  *Id.* at 1313-14.

The situation here is different.  Here, unlike *Moba*, Samsung explained to the jury that the accused products cannot meet the plain and ordinary meaning of a "synchronization software component configured to synchronize structured data" because the components accused by Apple did not perform any synchronization operations at all.  Samsung thus argued not that an additional limitation should apply, but that a limitation in the claim was "not met" by the accused devices; as other Courts have recognized, *Moba* does not apply to such arguments.  *See, e.g.*, *Stambler v. RSA Sec. Inc.*, No. Civ.A. 01-0065-SLR, 2003 WL 22749855, at *6 (D. Del. Nov. 14, 2013) (distinguishing *Moba* because in *Stambler*, "defendants did not argue to the jury that an additional limitation should be read into the 'authenticating the first party' limitation; instead, they argued that this limitation was simply not met").[4]  Instead, this case falls under *ePlus Inc. v. Lawson*

---

[4]  Similarly, the other cases cited by Apple refer only to situations where a party contradicted the Court's explicit interpretation of a statute or claim, and do not apply.  *See Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1342 (Fed. Cir. 2007) (holding that jury's infringement
(footnote continued)

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

1    *Software Inc.*, 700 F.3d 509 (Fed. Cir. 2013), where a jury found that the defendant infringed

2    claim 26 of one of the patents-in-suit, and the district court denied the defendant's motion for

3    judgment as a matter of law of non-infringement.  *Id.* at 515-16, 521.  The Federal Circuit

4    affirmed, finding that the defendant was "essentially raising a claim construction argument

5    regarding the meaning of the term 'determining' in the guise of a challenge to the sufficiency of

6    the evidence of infringement."  *Id.* at 520-21.  The Court explained that the defendant had not

7    sought construction of "determining," and without a construction, "the jury was free to rely on the

8    plain and ordinary meaning of the term 'determining' and conclude that a user who prompts a

9    vendor to report whether a particular item is available 'determines' whether that item is

10    available."  *Id.* at 520; *see also ActiveVideo*, 694 F.3d at 1326.  The jury was permitted to do just

11    this, and the Court should not disturb the jury's determination.  *ePlus*, 700 F.3d at 520-21.

12        As this Court held at summary judgment, Apple's arguments regarding the application of

13    the plain and ordinary meaning of the term "configured to synchronize structured data" to the

14    accused products presented an issue of fact for the jury.  Dkt. 1151 at 23:18-24:6.  Trial has now

15    concluded, the jury has rejected Apple's arguments, and yet Apple continues to point to nothing

16    that would require otherwise.  This is fatal to Apple's motion, which the Court should deny for the

17    same reasons it denied Apple's summary judgment motion.

18    **III.    THERE IS NO BASIS TO OVERTURN THE JURY'S VERDICT THAT
         SAMSUNG DID NOT INFRINGE CLAIM 25 OF THE '959 PATENT**

19

20        The jury correctly found that Samsung did not infringe claim 25.  Apple's motion on the

21    '959 patent depends on mischaracterizations of Samsung's arguments, and fails to properly defer

22    to the jury's finding.  The Court should also deny Apple's motion at least because it failed to show

23    the accused devices contained a *plurality* of heuristics.
      _____

24    verdict could not be sustained based on an expert witness's "incorrect position" regarding the
      FDA exemption statute); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed.

25    Cir. 2006) (upholding district court's exclusion of expert opinion that was "based on an
      impermissible claim construction"); *Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*,

26    782 F. Supp. 2d 667, 673-74 (N.D. Ill. 2011) (clarifying court's construction of claim term, noting

27    that the court's construction governed at trial, and barring expert from testifying based on
      alternative construction).

28

1

2

**A.      Apple Admits, and the Jury Reasonably Found, that the Accused "Blending"
Does Not Actually Locate Anything on the Internet**

A reasonable jury could easily conclude that the code Apple accused was not a "heuristic

to locate information" on "the Internet."  The Court should deny Apple's motion.

At trial Google engineer Björn Bringert, who has worked on the accused Google Search

Application since its inception, explained that when an accused version of his application receives

a search query, it queries a Google server for search suggestions, Tr. 1560:15-19, 1568:15-22, and

also, in some cases, sends the query to a local database that

contains past searches.  Tr. 1561:6-14.  After the local

database and the Google server return results, Dr. Bringert

explained that separate code—the center box in his

demonstrative SDX3009—combines these two lists of results

so that the application can present a single list to the user.  Tr.

1561:15-19, 1562:9-13. 1562:22-1563:12.  Dr. Bringert

described the blendResults() source code implementing the

functionality represented by the center box in SDX3009, and



testified that this code merely combined "two lists that we already have" and did not "locate

anything."  Tr. 1567:8-23.

Apple's expert Dr. Snoeren agreed entirely with Dr. Bringert's description of this

functionality, Tr. 2817:1-2818:8, and specifically testified that SDX3009 was "another rendition

of the source code that [he] showed."  Tr. 2817:13-16.  Dr. Snoeren said that the alleged "heuristic

[to locate information on the Internet], in this drawing, lives in the little box in the center," and

that its function was "blending the two results."  Tr. 2817:24-2818:5.  He confirmed that he was

accusing *only* blendResults() of being the heuristic to locate information on the Internet, the code

represented by box in the center of Dr. Bringert's diagram.  Tr. 2817:24 to 2818:5; Dkt. 1897-3 at

18 (referring to the "'blending' heuristic at issue").  Dr. Snoeren agreed with Dr. Bringert that the

alleged heuristic to locate information on the Internet only received information that was already

on the device.  Tr. 2815:7-19 ("the heuristic . . . uses information that's on the phone to do its

1  work").  Thus, the question presented to the jury was simple:  could this accused blending code,

2  which itself located nothing and depended on other code to locate information on the Internet, be a

3  "heuristic to locate information" on the Internet?  Quite reasonably, the jury answered "no."

4  The record amply supports this finding.  Claim 25 requires instructions to provide the

5  "information identifier to a plurality of heuristics to locate information in the plurality of locations

6  which include the Internet."  JX4 at 9:20-22.  As Apple admits in its motion, the Court did not

7  construe this term, meaning the jury considered its "plain and ordinary meaning."  Dkt. 1897-3 at

8  19:3.  And as Apple's expert admitted at trial, this claim requires the *accused device* to include a

9  "heuristic to locate information" on "the Internet."  Tr. 1001:15-21, 1002:7-9.  Samsung's expert

10  Dr. Rinard explained that the "blending" cannot be a heuristic to locate information because it is

11  "taking information that has already been located . . . and putting it together."  Tr. 1890:11-20.

12  Dr. Rinard's source code analysis confirmed this opinion.  Tr. 1890:22-1891:4.  The jury could

13  have reasonably concluded, as it did, that the accused blending code was merely a blender that

14  combined information located elsewhere, and thus could not be the required "heuristic to locate

15  information" on "the Internet."  Tr. 1567:5-23, 1001:15-21, 1002:7-9.

16  Apple repeatedly tries to establish that no reasonable jury could have reached this

17  reasonable conclusion.  These arguments all rely on misunderstandings of Samsung's arguments

18  or this Court's orders; not surprisingly, they all fail.  First Apple argues that "there was no dispute

19  that the heuristic in question here locates information in the Internet because the Google Search

20  Application includes a module that locates information from the Google Search Suggestion

21  Server."  Dkt. 1897-3 at 19.  The first part of this argument is wrong:  the dispute over whether

22  "*the heuristic in question here* locates information in the Internet" was central to the trial on this

23  patent, as Apple acknowledges in its motion.  *Id.* at 18.  The second part of this argument is a red

24  herring:  there is *no dispute* that *other* code in the accused Google Search Application queries "the

25  Google Search Suggestion Server," Tr. 1006:24-1007:24—but Apple never identified this code as

26  the heuristic to locate information on the Internet, and Dr. Snoeren confirmed that the accused

27  heuristic to locate information on the Internet was *solely* blendResults().  Tr. 2817:24 to 2818:5;

28  Dkt. 1897-3 at 18 (referring to the "'blending' heuristic at issue").  A reasonable jury could have

1  concluded, and in this action did conclude, that because blendResults() did not locate information

2  on the Internet, it was not a "heuristic to locate information" on "the Internet."

3        Apple next argues that the "plain meaning of the claim language does not require the

4  accused device or application to search the Internet every time the user inputs a query."  Dkt.

5  1897-3 at 19.  But Samsung made no such argument.  Samsung argued only that the code accused

6  of being the heuristic to locate information on the Internet, blendResults(), never located *any*

7  information on the Internet, and thus could not be a "heuristic to locate information" on "the

8  Internet."  *See supra*.  The jury, reasonably, agreed.

9        Apple also argues "that something else initially located information on the Internet does

10  not affect whether the heuristic also locates information on the Internet."  Dkt. 1897-3 at 19-20.

11  Again, this is irrelevant.  Samsung does not argue that the accused blendResults() code locates

12  information initially located by something else; Samsung argues that blendResults() *located no*

13  *information at all*.  *See supra*.  Similarly, Apple argues that Samsung improperly argued "that the

14  claim required that the heuristic locate information in the Internet before the information at issue is

15  downloaded to an accused device."  Dkt. 1897-3 at 15.  But the claim requires a heuristic to locate

16  information *on the Internet*.  Arguing that a heuristic to locate information on the Internet must

17  locate information on the Internet is therefore not improper, but indeed is required.  Again, the

18  jury agreed with Samsung's arguments; again, reasonably so.

19        Finally, Apple argues that Samsung's non-infringement positions were inconsistent with its

20  invalidity positions.  Dkt. 1897-3 at 20.  Not so:  Apple's assertion arises from a

21  mischaracterization of Dr. Rinard's invalidity presentation.  Dr. Rinard testified that *calculation* of

22  a relevance score showed the "ranking heuristic at work."  Tr. 1928:8-17 ("Those two numbers are

23  the WAIS relevance ranking heuristic at work").  Specifically, if a WAIS result has a "high

24  number . . . , I think it's very relevant."  Tr. 1928:11-14.  Dr. Rinard's reference to "sorting" was

25  merely an explanation of how the WAIS software shown in a demonstrative video displayed

26  results from different sources, *i.e.*, in order of score.  SDX2939.  Dr. Rinard did not claim that the

27  sorting of results was itself heuristic.  *See* Tr. 1928:8-20.

28

All of Apple's arguments boil down to its disagreement with the jury's conclusion that the accused devices do not meet the plain and ordinary meaning of the claim.  That is not a basis for overturning a jury verdict.  *ActiveVideo Networks, Inc. v. Verizon Commc'ns,* Inc., 694 F.3d 1312, 1326 (Fed. Cir. 2012) ("It was up to the jury to determine from the evidence presented at trial whether the [accused] system satisfied the plain and ordinary meaning of the [claim] limitations.").[5]

### B.    Apple Failed To Introduce Any Evidence That Samsung's Devices Employed A Plurality Of Heuristics.

Claim 25 requires a "*plurality* of heuristics."  JX4 at 9:20-22.  Dr. Snoeren identified alleged Web and Contacts heuristics in accused devices running Gingerbread and alleged Google, Contacts, Browser, and Music heuristics in accused devices running Ice Cream Sandwich and Jelly Bean.  Tr. 943:7-12; 944:18-945:5; PDX91.23; PDX91.24.  However, Apple offered evidence of only a *single* accused "heuristic" on each accused device, identifying only the Gingerbread Web "module" and Ice Cream Sandwich and Jelly Bean Google "module."  Dr. Snoeren failed to explain how the Contacts "module" in Gingerbread locates information or to identify any "heuristic" employed by Contacts.  Tr. 942:20-943:12, 945:10-946:25.  Similarly, Dr. Snoeren failed to explain how Contacts, Browser, and Music in Ice Cream Sandwich and Jelly Bean locate information or to identify any "rule of thumb" in those "modules."  Tr. 944:8-945:5, 947:6-948:23.  Tellingly, Dr. Snoeren failed to rely on any source code from Contacts, Browser,

---

[5]    Apple's reliance on *Moba, BV v. Diamond Automation, Inc.*, 325 F. 3d 1306 (Fed. Cir. 2003) to argue that Samsung improperly "attempt[ed] to import additional limitations into the plain and ordinary meaning of" claim 25 (Dkt. 1897-3 at 20) fails for similar reasons as Apple's reliance on *Moba* to argue that Samsung improperly added limitations to claim 20 of the '414 patent.  *See supra*, at 8-9.  Unlike in *Moba* – where the district court construed the "guiding steps" claim term and erroneously "allowed the jury to add an additional limitation" to the construed term, 325 F.3d at 1313; *see also supra*, at 8-9 – here, the Court did not construe the claim term at issue: "to locate information in the plurality of locations which include the Internet."  *See, e.g.,* Dkt. 1847 at 30.)  It was therefore up to the jury to determine whether the accused devices satisfy the plain and ordinary meaning of the claim language.  Dkt. 1847 at 30 ("For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.").  The jury determined they did not, and that determination must stand.  *See, e.g.*, *ePlus*, 700 F.3d at 521; *ActiveVideo*, 694 F.3d at 1326; *Stambler*, 2003 WL 22749855 at *6; *see also supra* at 8-9.

or Music in his discussion of the '959 Patent.  Dkt. 1859-6 at 1-4.  A jury could reasonably find that Apple failed to prove the presence of a plurality of heuristics.  *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1285 (Fed. Cir. 2002) (patentee "needed to prove by a preponderance of the evidence that the accused product met each and every limitation").

## IV.   THERE IS NO BASIS TO OVERTURN THE JURY'S VERDICT THAT SAMSUNG DID NOT WILLFULLY INFRINGE THE '647 PATENT

Apple acknowledges that to establish willful infringement, Apple must provide clear and convincing evidence to the Court of an objectively high likelihood that the patents were valid and infringed and to the jury that Samsung subjectively knew or recklessly disregarded that the patents were valid and infringed.  *Bard Peripheral Vascular, Inc. v. Gore & Assoc., Inc.,* 682 F.3d 1003, 1007 (Fed. Cir. 2012).  Apple failed to prove the subjective prong to the jury, Dkt. 1884, and fails now to prove the objective prong in its papers.  Apple cites only random and scattershot "evidence" that, even if relevant, is inadequate to prove the objective prong or reverse the jury's finding on the subjective prong.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc); *Bard*, 682 F.3d at 1005.

On the subjective prong, Apple's "evidence" falls into two categories:  alleged copying and availability of alternatives.[6]  Neither provides a basis for reversing the jury's finding of no willful infringement.

First, Apple alleges Samsung copied both the iPhone and Apple's "data detectors" software.  Dkt. 1897-3 at 21.  But this allegation lacks merit, because Apple failed to establish that any of its products practice asserted claim 9 of the '647 patent.  *See* Tr. 787:19-809:18; 818:12-925:9; 2787:24-2811:3; 3016:4-3053:4; 3100:23-3111:24.  To practice this claim, Apple's products must include the specific software routines recited in claim 9.  For instance, practicing products must have an "analyzer server" that is "a server routine separate from a client that

---

[6]   "[E]vidence of copying in a case of direct infringement is relevant only to *Seagate*'s second prong" and therefore does nothing to remedy Apple's failure of proof for the threshold objective inquiry.  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009).

1   receives data from the client." *Apple Inc. v. Motorola, Inc*., No. 12-1548, Slip Op. at 21 (Fed. Cir.

2   Apr. 25, 2014).  That "analyzer server" must also "link[] actions to the detected structures" in a

3   very specific way, by "creating a specified connection between each detected structure and at least

4   one computer subroutine that causes the CPU to perform a sequence of operations on that detected

5   structure."  *Id*.  Any practicing product must also have an "action processor" of "program

6   routine(s) that perform the selected action on the detected structure."  Dkt. 447 at 20.

7        Apple, however, offered no proof that any of its products meet these requirements.

8   Despite testifying four times, Apple's expert Dr. Mowry made no attempt to show that ***any*** Apple

9   product had this particular software architecture, including the iPhone and Apple's "data

10  detectors" software that Apple claims Samsung "copied."  *See* Tr. 818:12-925:9; 2787:24-2811:3;

11  3016:4-3053:4; 3100:23-3111:24.  Instead, Apple relies on the testimony of Thomas Deniau, an

12  Apple engineer who testified regarding Apple's "data detectors" software.  But Mr. Deniau

13  provided no testimony under the Federal Circuit's constructions for "analyzer server" or "linking

14  actions to the detected structures."  *See* Tr. 787:19-809:18.  Nowhere did Mr. Deniau testify, for

15  example, about an "analyzer server," the existence of a "specified connection" between structures

16  and actions, or an "action processor."  *See id.*  Because there is no evidence that the iPhone or

17  Apple's "data detectors" software practice claim 9, any alleged copying of those products or

18  software is irrelevant to the willfulness inquiry.  *Leapfrog Enter., Inc. v. Fisher-Price, Inc.*, 2005

19  WL 1331216, at *2 (D. Del. 2005) (Where plaintiff would have to "rely upon mere attorney

20  argument to prove that copying of [a product] amounts to the copying of . . . the asserted claim,"

21  finding that "even allowing evidence that [defendant] engaged in 'slavish copying' of [the

22  product] to prove willfulness would be a waste of time").

23        Furthermore, the documents relied upon by Apple do not demonstrate copying even if

24  Apple had proven it practiced the patent.  Dr. Mowry admitted the accused functionality was

25  introduced into Android, and therefore Samsung's devices running Android, in the version called

26  "Cupcake," released in April 2009.  Tr. 919:9-920:14.  Every one of the so-called "copying"

27  documents cited by Apple post-date the inclusion of the accused functionality in Android.  PX106

28  ("Copyright © 2010"); PX107 (dated "2010.8.5"); PX120 (dated "2010. 5. 10"); PX121 (dated

1    "2010. 5.31"); PX146 (dated "March 2, 2010"); PX149 (dated "2/11/2010"); PX157 (dated "2010.

2    3.24"); PX219 (dated "2010. 5. 3"); *see also* Tr. 920:15-922:18 (Dr. Mowry admitting PX106,

3    PX107 and PX146 are dated 2010).  Apple does not even attempt explain how Samsung could

4    have copied a feature at a time when it was already including the feature in its devices.  *See* Dkt.

5    1897-3 at 21-22.

6         Additional facts also support a conclusion of no copying.  None of the documents—

7    including PX106 and PX107, which at best show Samsung cut-and-pasted a figure from a

8    published article on the website of one of the '647 patent's inventors—demonstrate copying the

9    software routines of claim 9 of the '647 patent (*i.e.*, analyzer server, user interface, or action

10   processer).  *See generally* PX106; PX107; PX120; PX121; PX146; PX149; PX157; PX219.  Nor

11   could they have.  As Dr. Mowry admitted, the asserted claim is directed to the underlying software

12   architecture, meaning that for Samsung to copy Apple's products, it would need access to Apple's

13   software, which Samsung did not have.  *See* Tr. 849:7-13.

14        Second, Apple also focuses on "Samsung's persistent infringement, despite repeated notice

15   and the purported availability of alternatives."  Dkt. 1897-3 at 22.  Apple relies on the

16   unsubstantiated testimony of Dr. Mowry to argue that "Samsung rewrote [the] code so that its

17   phones continued to infringe" after a change by Google, despite Samsung's unrebutted testimony

18   that that an engineer could "implement[] an acceptable design-around alternative in less than a

19   day."  *Id.*  Apple's motion fails to grasp the difference between ***ease*** of designing around and ***need***

20   to design around.  Samsung had no ***need*** to design around the '647 patent because, as noted below

21   and in Samsung's motion for JMOL, the record shows that Samsung had—and continues to

22   have—good faith defenses to both infringement and validity.  *See Bard*, 682 F.3d at 1005-06.  The

23   jury agreed.  That Samsung continued to include the features in its products despite allegations of

24   infringement does nothing to establish the reckless disregard of a valid and infringed patent

25   required by the subjective *Seagate* prong.  *See Seagate*, 497 F.3d at 1371; *Bard*, 682 F.3d at 1005;

26   *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310-11 (Fed. Cir. 2011).  Apple offered no

27   evidence as to what Samsung knew or should have known about the validity or infringement of

28   the '647 patent.  More importantly, Apple's motion provides no reason why the jury, considering

1    what little evidence Apple **did** offer, could not have reasonably concluded that Samsung did not

2    willfully infringe the '647 patent.  The record therefore supports the jury's findings, and the jury's

3    determination of no willful infringement of the '647 patent should not be disturbed.

4          Apple also fails to satisfy the objective prong.  "To establish objective willfulness, Apple

5    must prove by clear and convincing evidence that there was an objectively high likelihood that its

6    actions constituted infringement of a valid patent."  *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 920 F.

7    Supp. 2d 1079, 1107-1109 (N.D. Cal. 2013) (internal quotation marks omitted).  Where there is an

8    "objectively reasonable defense," then objective willfulness fails as matter of law.  *Id.*  That is

9    precisely the case here.  The record demonstrated Samsung's numerous reasonable defenses to

10   infringement—both with and without the Federal Circuit's constructions—and Samsung's

11   reasonable validity defenses based on Sidekick.  Tr. 1768:4-1842:9; 3078:11-3099:18; DX506.

12   Indeed, this Court recognized at summary judgment that Samsung had good faith defenses to

13   infringement of the '647 patent.  Dkt. 1151 at 18-19 (determining that Apple's contention that it

14   was entitled to summary judgment was "without merit").[7]  Apple provided no evidence at trial or

15   any argument in its motion to the contrary.  Because the threshold objective prong of the *Seagate*

16   willfulness inquiry is not met, the jury's finding of no willfulness should not be disturbed.  *Uniloc*,

17   632 F.3d at 1310-11.

18   **V.     APPLE IS NOT ENTITLED TO ANY JUDGMENT CONCERNING SAMSUNG'S
            AFFIRMATIVE DEFENSES**

19

20         Apple cannot be granted judgment as a matter of law for affirmative defenses asserted in

     Samsung's Answer but not included in the Joint Pretrial Statement.  As a prerequisite for

21

     judgment as a matter of law, a party must be "fully heard on an issue during a jury trial."  Fed. R.

22

     Civ. P. 50(a)(1).  Apple admits that no evidence was offered at trial on the affirmative defenses at

23

24   ───────────────

25      [7]   Samsung moved in limine to exclude evidence of subjective willfulness.  Dkt. 1283-3 at 1-
     4.  Samsung's argument was based primarily on *Guzik Technical Enterprises, Inc. v. Western*
26   *Digital Corp.*, which held, entirely consistent with this Court's order denying Apple's motion for
     summary judgment of infringement of the '647 patent, that "[b]ecause a reasonable jury could find
27   that the [patent-in-suit] could be found invalid on multiple grounds, a finding of willfulness is
     precluded."  No. 11-03786-PSG, 2013 WL 6227626, at *9 (N.D. Cal. Nov. 22, 2013).

28

issue.  Dkt. 1897-3.  Therefore, because Samsung was not fully heard at trial on those affirmative defenses, JMOL is inappropriate under the terms of Rule 50(a)(1).  *See, e.g.*, *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 927 (9th Cir. 2007) ("[P]rocedural requirements that, before a motion may be granted, a party must be 'fully heard on an issue' and be given an opportunity to correct any deficiencies assure fairness to the parties and promote the trial court's fact-finding role.").  Furthermore, because Apple did not ask for a judgment regarding Samsung's affirmative defenses in the Joint Pretrial Statement, Dkt. 1455-1 at 3-4, or in Apple's own pleadings, Apple has waived any argument that judgment should be entered on those defenses now.

Rule 50 is not intended to be a catch-all provision for rendering judgment on the multitude of claims and counterclaims raised by both parties in their pleadings, and Apple's attempt to convert it thusly is procedurally improper.  Rule 50 is the check that allows a court to render judgment as a matter of law in light of the evidence presented to the jury and the legal standards applied to such evidence.  Indeed, Apple cites no legal basis for the proposition that it can receive JMOL on defenses not raised at trial.  The lone case Apple cites, *Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund*, 728 F.2d 1262 (9th Cir. 1984), is inapposite.  That case involved a defendant opposing summary judgment on the basis of an issue that had not been included in the pretrial order.  *Id.* at 1264.  By granting the plaintiff's motion for summary judgment, the trial court had not entered JMOL on that issue. *See id.*  It merely recognized the issue as "eliminated from the action."  *Id.*

## VI.   APPLE IS NOT ENTITLED TO ENHANCED DAMAGES, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST

### A.   Apple Is Not Entitled to Enhanced Damages

#### 1.   The Court Should Not Award Enhanced Damages for the '721 Patent

Apple's request for enhanced damages based on the finding of infringement of the '721 patent is supported by neither the law nor the facts, and there is no basis for an award of enhanced damages.  In deciding whether to assess enhanced damages, this Court should consider: "(1) whether the infringer deliberately copied the ideas or design of another … (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and

1   formed a good-faith belief that it was invalid or that it was not infringed … (3) the infringer's

2   behavior as a party to the litigation. … (4) Defendant's size and financial condition. … (5)

3   Closeness of the case. … (6) Duration of defendant's misconduct. … (7) Remedial action by the

4   defendant. … (8) Defendant's motivation for harm. … (9) Whether defendant attempted to

5   conceal its misconduct" (the "Read factors"). *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-28

6   (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d

7   967, 975 (Fed. Cir. 1995). All of these factors support rejecting of enhanced damages.

8        ***Supposed Evidence of Copying***. Apple's attempt to construct a copying story has not

9   improved with repetition. The documents on which Apple relies are nothing more than the kind of

10   comparative analyses that are typical of all companies, including Apple. In addition, as discussed

11   in detail in Samsung's Motion for Judgment as a Matter of Law, the so-called copying evidence

12   predates the issuances of the '721 patent. *See* Dkt. 1896. Moreover, the record is devoid of *any*

13   evidence that Samsung ever acted on any of the recommendations in any of the so-called copying

14   documents. *Id.* In fact, of the three distinct models that the jury found infringe the '721 patent

15   (Galaxy Nexus, Admire and Stratosphere), two were not even designed by Samsung, and the third

16   was designed before any of the so-called copying documents were created. *See* Tr. 733:4-23,

17   1727:19-1728:6, 1978:9-14, 1731:23-25. Apple's general allegations based on comparison

18   documents fall far short of showing any intentional copying of the claimed invention.

19        ***Strength of Samsung's Defenses***. As described in detail in Samsung's JMOL motion,

20   Samsung offered strong defenses, and Apple did not even dispute that every element of the patent

21   was taught by the combination of the two references offered by Samsung. *See* Dkt. 1896. Apple

22   did not even move for summary judgment on any ground in connection with the '721 patent.

23        Apple, rather than questioning the invalidating art itself, resorts to misstating the record.

24   *See* Dkt. 1897-3. For example, Apple claims that the PTO "considered and rejected" the

25   combination of Neonode and Plaisant. Dkt. 1897-3. There is no evidence in the record to support

26   this statement. Not only was a different Neonode manual in front of the PTO, but the Plaisant

27   video was never before the PTO. *See* JX10 at 2; Tr. 1976:2-11. Moreover, there is no evidence

28

1    that the PTO specifically considered the combination of the Neonode and Plaisant references that

2    were cited.  *Compare* Tr. 1996:4-1998:2, *with* Dkt. 1897-3.

3        Finally, the fact that the jury ultimately disagreed with Samsung's defenses does not

4    suggest that the defenses lacked merit.  *See, e.g., DePuy Spine, Inc. v. Medtronic Sofamor Danek,*

5    *Inc.*, 567 F.3d 1314, 1337 (Fed. Cir. 2009) ("The mere fact that the jury ultimately found

6    equivalence does not diminish the difficulty of their task . . . ."); *Spine Solutions v. Medtronic*

7    *Sofamor Danek USA*, 620 F.3d 1305, 1319-20 (Fed. Cir. 2010) (granting JMOL of no willfulness

8    based on a "reasonable" obviousness defense, despite "substantial evidence to support the jury's

9    implicit finding" of nonobviousness).

10       ***Samsung's Good Faith Behavior***.  Apple does not even mention the third *Read* factor in

11   its motion.  In any case, the third *Read* factor—"the infringer's behavior as a party to the

12   litigation"—weighs in favor of Samsung.  Samsung acted in good faith throughout this litigation.

13       ***Samsung's Finances Do Not Warrant Enhancement***.  While a company's finances can be

14   mitigating to avoid crippling its business, the opposite is not true.  *See Power Integrations, Inc. v.*

15   *Fairchild Semiconductor Inc.*, 762 F. Supp. 2d 710, 722 (D. Del. 2011) (citing cases).

16       ***This Was a Close Case***.  As discussed above and in Samsung's JMOL motion, Samsung

17   presented strong defenses.  In addition, as is also discussed in detail above, there was ample

18   evidence for the jury to find that the three accused Galaxy S II devices do not infringe the '721

19   patent.

20       ***Duration of Infringement and Remedial Action Weigh Against Enhancement.***  In its

21   attempt to have the sixth and seventh *Read* factors weigh in its favor, Apple overstates the relevant

22   period.  It is undisputed that Samsung did not receive notice of the '721 patent until Apple filed

23   suit in February 2012. Tr. 1043:19-20.  Apple also does not dispute that updates rendered the

24   Admire and Stratosphere devices non-infringing by July and August 2012, respectively.  *See*

25   PX222A.  The third model found to infringe, the Galaxy Nexus, was updated from the Ice Cream

26   Sandwich to the Jelly Bean version of Android in the summer of 2012.  Tr. 909:1-7, 1513:11-18.

27   No new model introduced since 2012 has been accused of infringement.

28

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

1    ***Samsung's Intent***.  Only a specific intent to harm Apple, beyond simply gaining market

2    share through vigorous competition, would support enhancement.  *See Power Integrations*, 762 F.

3    Supp. 2d at 724; *Baden Sports, Inc. v. Kabushiki Kaisha Molten*, 2007 WL 2790777, at *5 (W.D.

4    Wash. 2007).  This requires showing that Samsung had a "specific intent to steal" from Apple as

5    opposed to a "sincere belief" in "a legitimate argument that [it] was acting lawfully."  *Mass*

6    *Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 391 (E.D. Tex. 2009).  However,

7    the documents Apple cites at most show robust competition, and, as previously discussed, the

8    purported "copying" documents do not support Apple's assertions.  Dkt. 1897-3 at 26.

9    ***Alleged Concealment of Misconduct.***  Apple does not address the ninth and final *Read*

10    factor—"whether defendant attempted to conceal its misconduct"—in its motion.  The reason is

11    plain:  Samsung made no attempt to conceal its conduct.  Samsung preserved its records and fully

12    cooperated at trial.

13    **2.    The Court Should Not Award Enhanced Damages for the '647 Patent**

14    For the reasons enumerated above, Apple cannot show any basis for overturning the jury's

15    verdict of no willful infringement of the '647 patent (*see* Section IV, *supra*).  But even if a

16    judgment of willful infringement of the '647 patent were appropriate, the *Read* rubric still would

17    not support a conclusion that enhanced damages should be awarded.

18    ***Supposed Evidence of Copying***.  On the first *Read* factor, the record belies Apple's

19    suggestion that Samsung copied the technology claimed in the '647 patent.  As discussed above,

20    there is no evidence to establish copying because (1) Apple failed to show any of its products

21    practice asserted claim 9 of the '647 patent; (2) Samsung included the feature before the alleged

22    copying occurred; and (3) none of the documents demonstrate copying the software routines of

23    claim 9 of the '647 patent.

24    ***Samsung's Good Faith Belief***.  On the second *Read* factor, the record supports Samsung's

25    good-faith non-infringement and invalidity defenses to the '647 patent.  *See* Tr. 1768:4-1842:9;

26    3078:11-3099:18; *see also* DX506.  As explained in Section IV, *supra*, that the jury rejected

27    Samsung's non-infringement and invalidity defenses does not demonstrate that Samsung "acted

28

1  despite an objectively high likelihood that its actions constituted infringement of a valid patent."

2  *Seagate*, 497 F.3d at 1371.

3       ***Samsung's Good Faith Behavior***.  Apple does not even mention the third *Read* factor in

4  its motion.  In any case, the third *Read* factor—"the infringer's behavior as a party to the

5  litigation"—weighs in favor of Samsung.  Samsung acted in good faith throughout this litigation.

6       ***Samsung's Finances Do Not Warrant Enhancement***.  On the fourth *Read* factor, while a

7  company's finances can be mitigating to avoid crippling its business, the opposite is not true.  *See*

8  *Power Integrations*, 762 F. Supp. 2d at 722.

9       ***This Was a Close Case***.  On the fifth *Read* factor, Apple has no support for its assertion

10  that the case "was not close with respect to the '647 patent."  Dkt. 1897-3 at 27.  It is true that the

11  jury rejected Samsung's invalidity challenge and found infringement by the Samsung phones

12  accused of infringing the '647 patent, Dkt. 1897-3 at 27, but the jury's conclusion, without more,

13  does not indicate one way or another the closeness of the case with respect to the '647 patent.

14  That the jury's decision must have been a close one can be gleaned from other sources, in

15  particular this Court's denial of both parties' motions for summary judgment.  *See* Dkt. 1151 at

16  18-19 (determining that Apple's contention that it was entitled to summary judgment was "without

17  merit.").  Accordingly, the fifth *Read* factor weighs in favor of Samsung.

18       ***Duration of Alleged Infringement***.  On the sixth *Read* factor, Apple's assertions amount to

19  a conclusory allegation that a two-year period of infringement is "lengthy."  *See* Dkt. 1897-3 at

20  27-28.  Apple claims that Samsung "identified alleged non-infringing alternatives" but continued

21  to infringe.  *Id.*  But the mere fact that Apple describes these non-infringing alternatives as

22  "alleged" lays plain a simple fact:  implementing any of the non-infringing alternatives Samsung

23  identified would not have deterred Apple from continuing to accuse those products of infringing

24  the '647 patent.  Apple also claims that Samsung rewrote code that Google had changed,

25  "confirming Samsung's responsibility for infringement."  *Id.*  As before, Apple relies only on the

26  unsubstantiated testimony of Dr. Mowry.  *See id.* (citing Tr. 863:18-864:23).  Moreover, Apple

27  offered no proof of any intent by Samsung to infringe the '647 patent.  *See id.*  These "facts" have

28  no relevance to the sixth *Read* factor.

1        ***Remedial Action***. On the seventh *Read* factor, remedial action taken by defendant, Apple

2    does not admit that *any* of the non-infringing alternatives Samsung identified would design around

3    the '647 patent, referring to them as "alleged." Dkt. 1897-3 at 28. Thus, under Apple's own view,

4    there was no remedial action available to Samsung.

5        ***Samsung's Intent***. On the eighth *Read* factor, only a specific intent to harm Apple,

6    beyond simply gaining market share through vigorous competition, would support enhancement.

7    *See Power Integrations*, 762 F. Supp. 2d at 724; *Baden Sports*, 2007 WL 2790777, at *5. This

8    requires showing that Samsung had a "specific intent to steal" from Apple as opposed to a "sincere

9    belief" in "a legitimate argument that [it] was acting lawfully." *Mass Engineered Design*, 633 F.

10   Supp. 2d at 391. However, the documents Apple cites at most show robust competition, and the

11   purported "copying" documents do not support Apple's assertions. *See* Section IV, *supra*.

12       ***Alleged Concealment of Misconduct.*** Apple does not address the ninth and final *Read*

13   factor—"whether defendant attempted to conceal its misconduct"—in its motion. The reason is

14   plain: Samsung did not conceal anything. Samsung preserved its records and fully cooperated at

15   trial.

16       **B.    Apple Is Not Entitled to Supplemental Damages**

17       Apple fails to carry its burden to show it is entitled to supplemental damages. Indeed, the

18   trial record shows that the jury's award is a lump sum, paid-up royalty, and therefore adding

19   supplemental damages would be an impermissible breach of the jury's role in awarding damages.

20   In any event, Apple's request is premature and ignores much of the information necessary to allow

21   any reliable calculation. If the Court does not reject Apple's motion outright, it should at a

22   minimum defer any ruling on supplemental damages until after appeal.[8]

23       **1.    Apple fails to show supplemental damages are appropriate.**

24       Proof of the inadequacy of remedies at law is a necessary prerequisite to equitable relief,

25   which includes supplemental damages. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-

26   _____

27       [8] Apple is not entitled to damages on any sales for the additional reasons set forth in
     Samsung's JMOL motion. *See* Dkt. 1896-3.

28

1    392 (2006); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1313 n. 13 (Fed. Cir. 2007) (noting

2    a post-verdict royalty is an equitable remedy and is not to be awarded "as a matter of course"

3    whenever a permanent injunction is not imposed).  Thus, Apple bears the burden to prove the

4    insufficiency of the jury's damage awards and the need for further equitable relief.  Additional

5    equitable relief beyond a verdict awarding damages is inappropriate where a party has already

6    been fully compensated by the award for use of its patent, including future use, in the form of a

7    lump sum, paid-up license.  *See, e.g., Innogenetics, N.V. v. Abbott Labs.,* 512 F.3d 1363, 1380

8    (Fed. Cir. 2008); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1565 (Fed.

9    Cir. 1984).  Here, Apple does not address either the basis for the jury's awards or why those

10   awards are inadequate, and for that reason alone its motion should be denied.

11          Moreover, the record shows that the jury awarded a lump sum, paid-up royalty, which fully

12   compensates Apple for all infringement, past and future.  The jury was instructed to decide the

13   structure of any royalty.  Dkt. 1847 at 50 ("A royalty can be calculated in several different ways

14   and it is for you to determine which way is the most appropriate … When a one-time lump sum is

15   paid, the infringer pays a single price for a license covering both past and future infringing

16   sales.").  A court may not alter the jury's determination of the appropriate form of royalty without

17   encroaching on the Seventh Amendment right to a jury trial.  *See Boston Scientific Corp. v.

18   Johnson & Johnson*, 550 F. Supp. 2d 1102, 1122 (N.D. Cal. 2008).  As explained in Samsung's

19   opposition to Apple's motion for a permanent injunction, filed concurrently, the jury awarded a

20   lump sum royalty for all three patents of $119,625,000.  It then allocated percentages of this lump

21   sum to each of three patents, and finally further allocated percentages of each per-patent sum to

22   individual products.  The jury's revisions in the amended verdict, which do not alter the total lump

23   sum award nor the total per-patent awards, confirm beyond any doubt that the jury determined to

24   award a specific lump sum.  *See* Samsung's Opp. to Apple's Mot. for Permanent Injunction, at 3-

25   4, filed concurrently; Decl. of Judith A. Chevalier.  The jury's decision to award a lump sum

26   royalty was also consistent with the only testimony in the record regarding the customary royalty

27   structure in the industry.  *See* Tr. 2422:23-2423:9 (Dr. Chevalier's unrebutted testimony that a

28   lump sum structure is "very prevalent in this industry" based on her review of "roughly 200"

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

1   industry licenses).  The verdict and the trial record support only one interpretation of what the jury

2   did:  in accord with the opinion of Samsung's expert, the jury awarded a lump-sum royalty that

3   fully compensates Apple "for both past and future."[9]

4           Even if the Court finds the record ambiguous, the Court should deny Apple's motion

5   because Apple failed to carry its burden to show that the jury's awards are inadequate.  *See*

6   *Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 08-CV-335-IEG, 2010 WL 3070370

7   (S.D. Cal. Aug. 5, 2010) (refusing to award supplemental damages as "an improper invasion of the

8   jury's province to determine actual damages and an inappropriate use of 35 U.S.C. § 284 to

9   enhance inadequate compensatory damages"), *aff'd in part, vacated in part*, 2012 WL 6602786

10  (Fed. Cir. Dec. 19, 2012) (citation omitted).  *Gyromat Corp. v. Champion Spark Plug Co.*, 735

11  F.2d 549 (Fed. Cir. 1984), is not the contrary, as it does not address supplemental damages *at all*.

12              **2.       Apple's reliance on the 1846 case is misplaced.**

13          Apple argues that the Court should award supplemental damages here because in the 1846

14  case it declared its intention to do so if there are issues remaining after appeal.[10]  Dkt. 1897-3 at

15  28.  That argument is meritless.  Here, Apple failed to rebut Dr. Chevalier's lump sum royalty

16  opinion, and it does not contend either that the jury used its damages figures to calculate a royalty,

17  or that the jury awarded specific royalty rates.  The jury's total award of $119,625,000 makes it

18  obvious that the jury flatly rejected Apple's damages theories, which sought $2,275,579,888.

19  PX222A at 3.  The award is much closer to Dr. Chevalier's opinion, which stated that the lump

20  sum royalty would be "roughly $38.4 million."  Tr. 2422:20.  In contrast, in the 1846 case, the

21  jury's utility patent awards were 50% of Apple's claimed royalty.  1846 case Dkt. 2271 at 9.

22  Apple cannot rely on the very different facts in the 1846 case to cover up its failure here to show

23  that the jury rejected a paid-up, lump sum royalty.  *See Braintree Labs., Inc. v. Nephro-Tech Inc.*,

---

24

25      [9]  While the verdict form chart on Galaxy S II products includes awards to "Present," Dkt.
    1884 at 10, Apple concedes that sales of these products stopped before the verdict.  Dkt. 1897-3 at

26  29.  The verdict form does not contradict the unequivocal record supporting a lump sum award.

27      [10]  Samsung's appeal seeks relief on many grounds, and even if a portion of the liability
    verdict remains intact, Samsung expects to contest any future request by Apple for supplemental

28  damages.

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

1   81 F. Supp. 2d 1122, 1140 (D. Kan. 2000) (denying supplemental damages for failure to

2   "accurately correspond to the damages awarded by the jury").

3       Moreover, in the 1846 case, the Court noted that in most cases addressing supplemental

4   damages, including *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010), "a

5   jury determined what the appropriate royalty rate would be."  1846 case Dkt. 2271 at 4-5.  The

6   Court also held that where, as here, a jury does not make a finding as to the appropriate royalty

7   rate, the Court cannot do so without violating Samsung's Seventh Amendment rights.  *Id.* at 5

8   (citing *Boston Scientific*, 550 F. Supp. 2d at 1122).  Thus, as the Court recognized in the 1846

9   case, federal law does not allow the Court to choose a royalty rate where the jury declines to do so.

10      In sum, Apple has not met its burden to show entitlement to additional relief on top of the

11  legal remedy it has already been accorded by the jury.

12              **3.      Apple's request is premature.**

13      The Court should, at a minimum, defer any ruling on supplemental damages until after all

14  appeals.  Apple's request to litigate the amount of supplemental damages before the Court enters

15  final judgment, Dkt. 1897-3 at 29, threatens an unnecessary waste of time and resources.  It should

16  be rejected as premature for several reasons.

17      First, any calculation would be premature given Samsung's strong defenses to liability on

18  the '647 patent.  Apple admits that the only two products with post-verdict sales are the Galaxy S

19  III and Galaxy Note II.  Dkt. 1897-3 at 29.  The jury held that these products infringed only the

20  '647 patent.  Dkt. 1884 at 2-4.  As set forth in Samsung's motion for JMOL, Dkt. 1896-3 at 1-16,

21  Samsung has multiple strong defenses to liability.  Even if the Court upholds a part of the liability

22  verdict, the parties are likely to seek appellate review.  Second, as Apple concedes, any calculation

23  of supplemental damages would require more recent sales figures—including returns—that cannot

24  be reliably known until all sales are finalized and accounted for.  Common sense suggests that this

25  exercise should not be repeated more than once, and therefore Apple's request for a first

26  production regardless of the completeness of the data is unjustified.  Third, Apple is wrong that

27  "the only information needed" is sales data after the May 5, 2014 verdict.  Samsung offered

28  unrebutted testimony that there are a number of feasible design-arounds for claim 9 of the '647

patent.  *See* Tr. 1796:12-1798:8; *see also* Tr. 1583:3-1589:5 (Google testimony confirming same).

Thus, whether post-verdict sales should be considered for supplemental damages will likely require discovery regarding the timing of design-around efforts.

This Court, like others, has recognized it is preferable to "delay orders for the submission of such evidence and hearings thereon pending the resolution of appeals, to 'avoid potentially unnecessary expenditures of time and money in preparing such an accounting.'"  1846 case Dkt. 2271 at 6 (quoting *Intron, Inc. v. Benghiat*, 2003 WL 22037710, at *16 (D. Minn. 2003)); *Eolas Technologies, Inc. v. Microsoft Corp.*, 2004 WL 170334 at *8 (N.D. Ill. 2004), *vacated in part on other grounds*, 399 F.3d 1325 (Fed. Cir. 2005).  Apple fails to identify a compelling reason in this case to burden the parties and the Court with repeated, piecemeal briefing on post-verdict sales.  If the Court does not deny Apple's motion now, it should defer any ruling on supplemental damages until after all appeals.

### C.     Apple Is Not Entitled to $6.5 Million in Prejudgment Interest

There is no requirement that this Court award prejudgment interest.  *Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012) (denying prejudgment interest because "[t]he jury award was generous enough").  If prejudgment interest is awarded, this Court should follow the approach it took in the 1846 case, where interest was awarded at the 52-week Treasury Bill Rate and calculation of prejudgment interest was deferred until after all appeals.  Apple's request that the Court contradict its earlier findings on the procedure and timing for the calculation of prejudgment interest are without merit.

#### 1.     The Court correctly held that the 52-week Treasury Bill rate provides full compensation.

In the 1846 case, this Court "award[ed] prejudgment interest at the 52-week Treasury Bill Rate, compounded annually."  1846 Dkt. 2271 at 7-8.  There is no basis for Apple's argument that greater prejudgment interest is warranted here.

Apple's complaints about the 52-week T-Bill rate run afoul of governing law that limits prejudgment interest to compensation only.  It is axiomatic that the purpose of prejudgment interest is compensatory, not punitive.  *E.g.*, *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed.

1    Cir. 1996).  Apple's complaints about the pace of federal courts and the shortcomings of its own

2    litigation strategy, Dkt. 1897-3 at 30, cannot justify awarding Apple a windfall of over $6 million

3    in excess of fair compensation.  The relevant question for a company in Apple's position—holding

4    $150,000,000,000 in cash—is what it could have earned on additional cash in the bank, not what

5    costs it would face to borrow.  *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 (1983)

6    (prejudgment interest compensates for "the foregone use of the money between the time of

7    infringement and the date of the judgment").  For that reason, the only reasonable measure is the

8    T-Bill rate.  *See Laitram Corp. v NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (finding the T-

9    Bill rate is appropriate where there is no evidence of "a causal connection between any borrowing

10   and the loss of the use of the money awarded as a result of infringement"); *accord* 1846 case Dkt.

11   2271 at 7.[11]

12        Apple tells the Court it "has borrowed in the public markets."  Dkt. 1897-3 at 30.  But

13   Apple neglects to explain that it did so to avoid paying U.S. taxes.  Apple itself told investors it

14   borrows money through debt offerings in order to fund a dividend program, even though it has

15   $150 billion in cash on hand, because it wants to avoid bringing cash into the United States, where

16   it would have to pay the taxes it owes.

17         We ended the quarter with $150.6 billion in cash, plus marketable securities … our
18         domestic cash was $18.4 billion … 88% of our total cash was offshore … To
         repatriate our foreign cash under current U.S. tax law, we would incur additional
         cash tax consequences and we don't believe this would be in the best interest of our
19         shareholders. … To execute our updated capital return program in a tax-efficient

20

21        [11]  Apple's authorities are not the contrary.  *See Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d
22   1056, 1066 (Fed. Cir. 1983) (patentee borrowed money "in order to continue its operations");
   *Atmel Corp. v. Silicon Storage Tech., Inc.*, 202 F. Supp. 2d 1096, 1099 (N.D. Cal. 2002), *aff'd*, 76
23   F. App'x 298 (Fed. Cir. 2003) (plaintiff borrowed from banks during the years in question "at
   amounts ranging from $16 to $138 million" and defendant conceded a bank loan rate was
24   appropriate).  *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2008
   WL 928535, at *3 (N.D. Cal. Apr. 4, 2008), relied on both *Lam* and *Atmel*.  *Junker v. HDC Corp.*,
25   No. C-07-0594 JCS, 2008 WL 3385819 (N.D. Cal. July 28, 2008), was an unopposed motion for
   default judgment.  *Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*, No. 5:11-cv-00774-PSG, 2014
26   WL 1008183, at *3, nn. 59-61 (N.D. Cal. Mar. 7, 2014), relied on all of these cases.  Apple's
27   references to cases from other circuits dealing with other causes of action are irrelevant to the
   question of adequate compensation under the Patent Act.

28

1    manner and leverage our very strong balance sheet, we intend to access the debt
2    markets again.

Fazio Decl. Ex. A at 6-7 (Apple's Q2 2014 earnings call transcript); *see also id.,* Ex. B at 7 (Q2

2013 earnings call transcript), Ex. C ("Going Into Debt Will Help Apple Avoid Taxes").   The

Court is well aware of Apple's efforts to avoid U.S. taxes, including the Senate investigation into

Apple's storing of cash at offshore entities.  *See* 1846 case Dkt. 2535 at 120.  Apple's corporate

tax avoidance strategy is not a reason for the Court to depart from its earlier finding that Apple is

fully compensated by the T-Bill rate and not the prime rate.   Furthermore, Apple's actual

borrowing proves that the prime rate would overcompensate Apple.  When Apple borrowed for a

term most comparable to the prejudgment period, three years, it paid just 0.45% on $1.5 billion in

debt.  (Dkt. 1897-10 (Robinson Decl. Ex. 2).)  Thus, the prime rate of 3.25% is over seven times

higher than the rate at which Apple was able to borrow over 12 times as much as the jury's royalty

award.  The prime rate would grant Apple a windfall, not compensation. *See Cornell Univ. v.*

*Hewlett-Packard Co.,* No. 01-cv-1974, 2009 WL 1405208, at *3 (N.D.N.Y. May 15, 2009)

(Rader, J., by designation) (rejecting the prime rate in favor of the T-Bill rate).

### 2.      Apple's request is premature.

Apple's request is premature because the interest Apple seeks must be based on the

amount of the judgment, and both sides have challenged the legal sufficiency of the jury's awards.

Any calculation of prejudgment interest should be deferred until after all appeals, when the final

amount of the judgment is known.  *See* 1846 case Dkt. 2271 at 8.

### 3.      Apple's request is based on the wrong amount.

Finally, Apple's calculation uses the wrong amount owed to Apple, because it ignores the

fact that the jury awarded Samsung $158,400 for Apple's infringement of Samsung's '449 patent.

Dkt. 1884 at 12.

### VII.   APPLE IS NOT ENTITLED TO JUDGMENT OR A NEW TRIAL ON SAMSUNG'S CLAIM FOR INFRINGEMENT OF CLAIM 27 OF THE '449 PATENT

Samsung presented substantial evidence that the iPhone 4, 4S and 5, and the 4th and 5th

generation iPod Touch meet each and every limitation of claim 27 of the '449 patent.  Samsung's

expert, Mr. Parulski, testified how each claim limitation is met by these products.  Tr. 2601:19-2626:17.  For each limitation, Mr. Parulski cited other evidence in the record supporting his opinions, including Apple processor manuals, bills of materials, component datasheets, Apple's corporate deposition testimony, and his own testing and analysis of the accused products.  *See, e.g.*, Tr. 2595:1-8, 18-21; 2601:14-24; 2603:3-20; 2604:6-8; 2604:22-2605:3; 2605:14-24; 2607:6-23; 2608:10-16; 2610:1-20; 2611:22-2612:18; 2613:6-2614:10; DX351A; DX354A; DX491A; JX22; JX38; JX39; JX40; JX40B; JX45A; JX46A.  Mr. Parulski's testimony and the additional evidence he cited far exceed the standard for substantial evidence.  *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1370-1371 (Fed. Cir. 2009) (Substantial evidence is "relevant evidence reasonable minds might accept as adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."); *Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543, 1551–52 (Fed. Cir. 1997) (concluding expert testimony was substantial evidence to support jury's infringement finding).  Accordingly, Apple's motion for judgment as a matter of law that it does not infringe claim the '449 patent should be denied.[12]

**Reproducing Circuit:** Apple's argument regarding this term is limited to the iPhone 4S, iPhone 5, and iPod touch 5th generation products, and is based solely on testimony from its employee Tim Millet.  Mr. Millet testified that a circuit identified by Samsung's expert, Mr. Parulski, does not produce synchronous audio in these three products.  *See* Dkt. 1897-3 at 32-33.  Mr. Millet's testimony, however, is contradicted by testimony and documents cited by Mr. Parulski, testimony from own Apple's expert, and the actual operation of the accused Apple products.  As explained below, overwhelming evidence supports the jury's verdict.

First, Mr. Parulski testified that the "reproducing circuit" limitation is met in each accused product by display and audio circuitry included in each product's system-on-a-chip ("SOC") processor.  Tr. 2609:22-2611:1; DX351.1541, 1572, 1764, 1798, 2550, 2558.  This testimony and

---

[12]  Similarly, there is no merit to Apple's argument that it is entitled to a new trial because the verdict was against the "clear" weight of the evidence.  Dkt. 1897-3 at 32.  As shown below for each claim limitation identified by Apple, the great weight of the evidence supports the jury's verdict.

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

1  documentary evidence alone fully supports the jury's finding of infringement.  *See Revolution*

2  *Eyewear,* 563 F.3d at 1370-1371; *Fonar,* 107 F.3d at 1551–52.

3      Second, Apple's expert, Dr. Storer, never testified that the iPhone 4S, iPhone 5, and iPod

4  touch 5th generation products lack a "reproducing circuit."  Tellingly, Dr. Storer testified that he

5  spoke with "the engineers" of Apple accused products, yet he never formed the opinion that these

6  products do not include a "reproducing circuit."  Tr. 2721:20-2722:5.  Moreover, Dr. Storer

7  testified that there are no relevant differences between the five accused products.[13]  This testimony

8  contradicts Mr. Millet's suggestion that the iPhone 4S, iPhone 5, and iPod touch 5th generation

9  products do not include a "reproducing circuit," and further supports the jury's verdict.  *Id.*

10     Finally, Mr. Millet testified that "the software team" decided not to use the specific audio

11 circuit identified by Mr. Parulski in the iPhone 4S, iPhone 5, and iPod touch 5th generation

12 products,  but he later admitted that he is a hardware architect and could not provide testimony

13 about Apple's iOS software.  Tr. 2699:20-2700:13; Tr. 2699:20-2700:13 ("Q. You are not here to

14 testify about Apple's iOS software, right?  You're not an expert on that?  A. No.").  Moreover,

15 Mr. Millet failed to dispute that the iPhone 4S, iPhone 5, and iPod touch 5th generation products

16 include a reproducing circuit.  Nor could he.  It is beyond dispute that the accused products play

17 sound synchronous with video and the jury could have confirmed as much through an inspection

18 of the Apple products during deliberations.  At best, Mr. Millet provided contradictory testimony

19 that the jury could properly refuse to credit.  *See Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734

20 F.3d 1332, 1343 (Fed. Cir. 2013) ("It has long been held that a jury may properly refuse to credit

21 even uncontradicted testimony.") (citation omitted).

22     **Compressor and Decompressor**:  Claim 27 requires a "compressor" and a

23 "decompressor" that use different compression methods for photos and videos.  Mr. Parulski

24 testified that the "compressor" and "decompressor" limitations are met by the SOC in the accused

25

26     [13]   Tr. 2760:11-17 ("Q. Which Apple products do you understand Samsung to be accusing of
    infringing the '449 patents?  A. So it's the Apple 4 -- the iPhone 4, 4S, 5, and also the iPad [sic]
27 touch fourth and fifth generation.  Q. For purposes of your analysis, did you identify any relevant
    differences among those products?  A. No. Sorry. No.").

28

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

1    products.  Tr. 2639 ("I have identified a single Apple design[ed] chip with the circuitry that

2    performs both compressing methods."); DX351.1774, 1755, 1774, 1550, 2536, and 0026.  Mr.

3    Millet also confirmed during cross-examination that the SOC contains "circuitry for both the

4    photo and video compressors and decompressors."  Tr. 2701:14-2702:8.

5          Notwithstanding that there is uncontroverted evidence that the accused SOC includes the

6    circuitry at issue, Apple asks this Court to engage in an arbitrary box drawing exercise to overturn

7    the jury's verdict.  Specifically, Apple claims it does not infringe because specific circuits—video

8    and photo encoders and decoders—within the SOC should be considered separate compressors

9    and decompressors.  Dkt. 1897-3 at 33-35.  This argument was advanced by Dr. Storer, and

10   rebutted by Mr. Parulski and Apple's own internal documents.  Tr. 2770:7-2775:16, 2605:14-

11   2607:1, 2608:10-2609:16, 2638:12-2640:5.  As Mr. Parulski explained, the encoders and decoders

12   identified by Apple are part of the compressors and decompressors within the SOC.  *See, e.g.*, Tr.

13   2640:8-19.  Mr. Parulski's testimony is supported by Apple's own documentation for the SOC.

14   For example, the encoders and decoders in the A6 SOC are part of a single block called Hperf-

15   NRT.  Tr. 2691:13-15 (Millet, "So this is one of the subdesigns inside the SOC.  It's really a

16   grouping of different components that we group together and call the Hpert-NRT.").  It is

17   irrelevant who designs these circuit blocks for Apple.  Apple's SOC documentation also states that

18   encoding and decoding circuitry are "integrated" as part of the same "unit."  PX294.3380; Tr.

19   2639:20-21 (Parulski: "I've just circled the unit that's in Apple's block diagram [] of the chip that

20   Apple has designed").  Thus, substantial evidence supports the finding  that the "compressor" and

21   "decompressor" limitations are met by the circuitry identified by Mr. Parulski, the operation of

22   which are not disputed by Apple's expert or Mr. Millet.

23         **Recording Circuit/Classification Data**:  Mr. Parulski established that the accused

24   products contain a "recording circuit" that "records each one of said plurality of image signals with

25   classification data."  Tr. 2615:22 - 2616:12.  Mr. Parulski testified how the accused products meet

26   this limitation:  "Apple's corporate representative has confirmed – and I inspected the source code

27   as well, and it confirmed that there's a single database in the iPhone 5, as well as the other

28

SAMSUNG'S OPPOSITION TO APPLE'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

1    products that stores not only the photos and videos, but stores, for example, which images are in

2    the camera roll and the other rolls."  Tr. 2616:4-9.

3            Apple does not dispute that images recorded in albums/rolls other than the Camera Roll

4    have associated classification data.  Dkt. 1897-3 at 35.  This undisputed evidence standing alone

5    supports the jury's verdict.  Additionally, Apple's argument with respect to the Camera Roll is

6    incorrect.  *First*, the Camera Roll does not contain all images stored in the accused products.  For

7    example, when photos or videos are imported from a different device they are automatically added

8    to an album called "Photo Library," not to the Camera Roll.  Tr. 2637:6-8.  Thus, images in the

9    Camera Roll include data that associate them with the Camera Roll as distinguished from images

10   stored in the Photo Library.  *Second*, the Camera Roll album is not analogous to the ALL folder in

11   the '449 Patent.  In the embodiment described in the specification of the '449 patent, images are

12   automatically added to a default folder when they are captured, not to the ALL folder.  *See* JX22,

13   6:54-65, Fig. 6, item 601.  *Finally*, the fact that the Camera Roll is a classification that includes

14   images having associated classification data is well supported in the record.  For example, Mr.

15   Parulski testified that the "Albums" in the accused products, which include the Camera Roll and

16   user created albums, all correspond to classifications or folders in the '449 patent.  Tr. 2592:12-13,

17   2598:11-13, 2601:7-13, 2615:12-18.  Thus, there is substantial evidence that albums other than the

18   Camera Roll as well as the Camera Roll itself are all classifications that include images recorded

19   with associated classification data.

20           **List/Search Mode**:  Mr. Parulski testified that the accused products meet the "list . . . as a

21   search mode" limitation.  Tr.  2611:21-2614:14.  Apple argues that "[u]nlike the '449 patent,

22   Apple's Camera Roll does not display a list but instead displays an array of thumbnails that the

23   user may browse."  Dkt 1897-3 at 35-36.  The jury rejected this argument, and properly found that

24   the thumbnails displayed in the Camera Roll are a list.  And contrary to Apple's assertion, Figure 8

25   of the '449 patent, just like the Camera Roll, displays a list of thumbnail images that the user may

26   browse.  As Mr. Parulski explained, this figure displays three thumbnail images and a user can

27   hold down an up or down button to select different pages with different thumbnails.  Tr. 2613:6-

28   2614:10.  In this example, there are six pages of thumbnails a user may search through.  *Id*.  Just

1   like Figure 8, the Camera Roll display is a search mode because the user can browse through the

2   list of thumbnail images in the display to find a particular photo or video.  Accordingly, the jury's

3   finding that the accused products meet the "list . . . as a search mode" term is supported by

4   substantial evidence.

5   **VIII.   APPLE IS NOT ENTITLED TO JUDGMENT THAT ITS IPAD PRODUCTS DO NOT INFRINGE CLAIM 15 OF THE '239 PATENT**

6

7        Apple is not entitled to judgment that its iPad products do not infringe claim 15 of the

    '239 patent.  Dkt. 1897-3 at 36-37.

8

9        First, the Court has encouraged the parties to drop accused products and claims throughout

10  this case to simplify trial.  These dismissals have been made without prejudice.  *See, e.g.*, Dkt.

    480, Apr. 24, 2013 H'rg Tr. at 13:21-22 (the Court stating "I'm not dismissing anything with

11  prejudice," when discussing limiting accused products); *see also* Dkt. 715, Apple's Notice of

12  Dismissal, at 2 (dismissing accused products "without prejudice").  Consistent with the practice

13  throughout this case, Samsung dropped the iPads prior to presenting its affirmative case without

14  prejudice.

15       Second, Apple dropped its infringement allegations against a Samsung product during its

16  affirmative case, but did not drop this product with prejudice.  *See* Fazio Decl. Ex. D, Apr. 4, 2014

17  Email from Sabri to Samsung (stating that Apple no longer accuses the Galaxy Tab 2 10.1 of

18  infringing its '647 patent).  Apple cannot credibly argue that it can drop accused Samsung

19  products without prejudice *during* its affirmative case, but that Samsung cannot drop accused

20  Apple products without prejudice *before* its affirmative case began.

21       Third, when the Court ordered "the parties" to file an updated list regarding which Apple

22  products were accused of infringing each Samsung patent, Dkt. 1737, Apple did not claim that its

23  iPads were still at issue and that Apple sought judgment of non-infringement.  Instead, Apple

24  remained silent, waiving any argument that Samsung withdrew these products with prejudice.

25       The cases cited by Apple are readily distinguishable.  The defendant in *Strub v. Axon

26  Corp.*, 168 F.3d 1321, 1998 WL 537721 (Fed. Cir. Aug. 17, 1998) (unpublished), waited to

27  withdraw its invalidity claim until *after* the close of all evidence and the plaintiff moved for JMOL

28

1    of validity.  *Id.* at *10-11.  Similarly, in *Voda v. Medtronic Inc.*, 899 F. Supp. 2d 1188 (W.D. Okla.

2    2012), *aff'd*, 541 F. App'x 1003 (Fed. Cir. 2013), the defendant waited until the sixth day of trial,

3    which was *during* its case-in-chief, to withdraw its invalidity claims.  *Id.* at 1192; *see also* Fazio

4    Decl. Ex. E, Excerpt from *Voda* Trial Tr., at 1179:1-7.  Here, Samsung dropped its allegations

5    against Apple's iPads prior to beginning its affirmative case.  Apple was not prejudiced by this

6    decision—which streamlined and simplified the case.  Accordingly, Apple is not entitled to a

7    judgment of non-infringement regarding its iPad products.[14]

8    **IX.    THERE IS NO BASIS FOR A NEW TRIAL BASED ON SAMSUNG'S
         SUPPOSEDLY IMPROPER AND PREJUDICIAL STATEMENTS**

9

10       **A.    Apple's Request for a New Trial Based on Samsung's Statements Regarding
              Apple Not Practicing the '172, '414, and '959 Patents Is Meritless**

11       Apple's motion for a new trial is the *fourth* time that Apple has tried to avoid this Court's

12   rulings on its claims to practice the '172, '414, and '959 patents.[15]  By the time this Court resolves

13   these motions, almost a year will have elapsed since Samsung's original motion to enforce the

14   case narrowing order, a year during which this Court ruled many times against Apple's motions

15   making the same arguments Apple raises again here.  *E.g.*, Dkt. 1057 at 2; Dkt. 1398 at 3; Dkt.

16   1578 at 1; Tr. 613:4-7.  Apple chose not to assert that it practiced the patents, and it cannot

17   backtrack now.  Furthermore, Samsung made no false statements at trial that prejudiced Apple.

18           **1.    Apple twice elected to present more infringement claims against
                  Samsung, understanding that this choice would decrease its ability to
19               allege practice of its own patents; Apple cannot complain that its own
                  choice was unfair.**

20       As a threshold matter, Apple's argument fails because Apple itself elected to present *less*

21   evidence of its own alleged practice so it could present *more* evidence of Samsung's alleged

22   infringement; it cannot now complain that its own election has led to a supposedly unfair result.

23

24   _____

25       [14]  Samsung did move for JMOL that its patents were valid based on Apple's failure to present
26   evidence of invalidity at trial.  The Court, however, denied this motion, and Samsung did not
     pursue it in Samsung's renewed motion for judgment as a matter of law.
27       [15]  If this Court does grant a new trial, Samsung preserves all of its arguments raised in this
     Court regarding how any retrial should be conducted.
28

1        This Court's case narrowing order required Apple and Samsung each to "limit their

2    asserted claims to 5 per side" at trial.  Dkt. 471 at 2.  Apple read this order to exempt claims

3    asserted for practice, and confirmed to Samsung its intention to bring eight claims to trial,

4    including three claims for practice that Apple said did not count.  *See* Dkt. 804-3 at 3.  When

5    Samsung then moved to enforce the Court's case narrowing order, at the Court's invitation Apple

6    explicitly elected to withdraw its three "practice" claims, knowing full well that Samsung could

7    therefore argue Apple does not practice those three patents:

8            THE COURT:  **Your request was "we will withdraw the unasserted claims if
             and only if Samsung does not argue that Apple does not practice the claims of**
9            **the patent," which they have said explicitly they will make that argument, so
             then the unasserted claims will be in the case, in which case I think it's**—I
10           mean, it'll think about this motion further, but my tentative right now is it seems
             only fair that they then get to challenge the validity.

11
             MR KREVITT:  **Then we would withdraw the claims, your honor, and not
12           request the opportunity to say that we practice the unasserted claims**.

13   Dkt. 1133 at 170:15-25 (emphasis added).  Apple's election resolved this issue—until, during

14   briefing of motions *in limine*, Apple tried to wriggle free.  Dkt. 1373 at 1-5.  As the Court noted,

15   Apple's election already waived any right to argue it practices the '172, '414, and '959 patents.

16   (Dkt. 1411 at 49:15-20.)  Generously, however, the Court gave Apple *another* chance to change its

17   election, while noting that, unless Apple counted its claims under the Court's case narrowing

18   order, it *could not use them even "defensively,"* in response to Samsung:

19           THE COURT:  If you want to put this claim at issue, you are welcome to do that.  It just
             needs to be one of your five, three of your five if you'd like to use all three.  That's just
20           your choice.

21           MS KREVANS:  Your Honor, I—

22           THE COURT:  I'm not going to let this be litigated behind the door in a sword and shield
             fashion where they can't challenge validity, but you get to use it defensively.  That's just
23           not going to happen.  What's your choice?

24   *Id.* at 50:2-9.  After a break to confer with client counsel, Apple made the same election again:

25           MS. KREVANS:  Yes, Your Honor, we would like to stick with our original five.

26           THE COURT:  Okay.

27           . . .

28

MS. KREVANS:  They can argue, if you rule that, **they can argue that Apple practices no claim in all these patents**, and, therefore, that the iPhone is a non-infringing alternative, if that's your ruling, we will abide by it, and we would like to stick with our five claims.

*Id.* at 58:1-13 (emphasis added).  Later in the hearing, when counsel for Apple offered to "stipulate that Apple does not practice the asserted claims," the Court stated, "It can't be just asserted claims.  It has to be these patents."  *Id.* at 63:1-8.  In response, the parties filed a joint motion to supplement Preliminary Jury Instruction No. 20 and Proposed Final Jury Instruction No. 18 to confirm that "Apple does not contend that it practices the '414, '172, or '959 patents" in this action.  Dkt. 1418 at 2.  All of this makes excruciatingly clear what Apple now dearly wishes did not happen:  Apple elected, not once but *twice*, to waive any argument that it practiced the '414, '172, or '959 patents, knowing full well that this election allowed Samsung to argue that Apple did not practice these patents.  Apple made this election not because it wanted to give Samsung an argument, but because it wanted to use *all* of the five claims allowed by the Court's order to accuse Samsung of infringement, and it concluded that the benefit of doing so outweighed the cost of losing its claim to practice these three patents.  Having made this election, Apple cannot now complain that it does not like the result.  *See, e.g., Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) ("Transclean should not be permitted to reverse course this late in the proceedings simply because it now realizes its litigation strategy was unsuccessful.").

> **2.     Samsung appropriately argued against Apple's practice of these patents.**

Apple's motion also fails because it rests on the assumption that, when Samsung asserted its view that Apple's products do not practice the '172, '414, and '959 patents, it made "false statements."  Dkt. 1897-3 at 37-41.  This assumption is incorrect, as Samsung's allegedly "false statements" are Samsung's *view of the patent claims*; they cannot be "false" any more than Apple's allegations of infringement.  Apple's motion, however, depends on the unstated view that as soon as Samsung stops talking about application of Apple's patents to Samsung's products and starts talking about application of the same patents to Apple's products, Samsung stops making arguments and starts making "false statements."

This makes no sense.  Just as it is not a "false statement" when Apple claims its patents cover Samsung's products, it equally cannot be a "false statement" when Samsung argues that Apple's patents do not cover Apple's own products.  Assertions regarding infringement and practice require precisely the same comparison of claims to products; disagreements over whether claims apply to a product—*any* product—cause legal disputes, not falsehoods.  *See, e.g.*, *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *Remediation Prods., Inc. v. Adventus Americas, Inc.*, No. 3:07-cv-153-RJC-DCK, 2010 WL 3895915, at *3 (W.D.N.C. Sept. 30, 2010); *Dietrich v. Trek Bicycle Corp.*, 297 F. Supp. 2d 1122, 1130-31 (W.D. Wis. 2003).

Apple's own authorities confirm that its argument is unsound.  Apple cites a single case involving "false statements," *Wharf v. Burlington N.R.R. Co.*, 60 F.3d 631 (9th Cir. 1995), but *Wharf* is inapposite because it concerned a statement about a factual event that was clearly misleading.  Specifically, *Wharf* is an employment case where defense counsel told the jury that plaintiff "still has his job" with defendant, even though defendant planned to terminate plaintiff— and counsel knew it.  *Id.* at 637-38.  The court found this fact known to be false prejudiced the plaintiff who could have asked the jury to award more damages.  *Id.* at 638.  Here, unlike in *Wharf*, the supposedly false statement is actually a contested issue that was not proven false.

### 3. The Court's narrowing order did not violate Apple's due process rights.

Seeking to avoid the consequences of its own election, Apple briefly argues that the Court violated its due process rights by "depriving Apple of the right to present the truth about its property rights."  Dkt. 1897-3 at 40-41.  To begin with, this requires the incorrect premise that "Samsung presented the jury a counterfactual version of events," *id.* at 40, and fails along with Apple's other arguments incorrectly alleging "false statements."  *Supra* at 38.  In addition, the single case Apple cites for this argument, *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011), explains why the Court acted correctly and did not violate any of Apple's rights.  Contrary to Apple's argument, the *Katz* Court approved the district court's case narrowing procedure, noting in the process that the patentee "could have sought to demonstrate" to

1   the district court "that some of its unselected claims presented unique issues as to liability or

2   damages," but *did not do so*—and thus could not, after receiving an undesired result at trial, seek

3   to overturn the district court's case narrowing order on due process grounds. *Id.* at 1312-13.  The

4   same thing happened here:  Apple failed to make *any* demonstration of *any* "unique issues as to

5   liability or damages," or really any demonstration of anything, even when invited by the Court:

6   > THE COURT:  So is it relevant or not to damages?

7   > . . . .

8   > MR KREVITT: Your Honor, it is relevant at this point.  It may be relevant.  We have
    > limited time at trial.  I can't sit here now and tell you what issues we'll put on at trial.
9   > When I said it may be relevant, I was simply meaning I don't know what the trial
    > presentation will look like. . . .
10
    > THE COURT:  Well, I'm being asked to rule on this motion now and your opposition was
11  > not helpful because it didn't explain why you want this in. . . . You chose to be very vague
    > on why you wanted to use it.
12
    (Dkt. 1133 at 160:4-23).  Like the patentee in *Katz*, Apple cannot now raise due process, having
13
    missed its chance to make this showing.  *Katz*, 639 F.3d at 1313.  Thus *Katz* not only cannot help
14
    Apple, but sets forth a standard under which Apple's motion must fail.
15
16  **4.       There is no prejudice to Apple that would warrant a new trial.**

17          Apple's motion suffers from another, independent failure:  Apple makes no attempt to

18  explain *how* it was harmed by the Court's ruling.  Instead, Apple argues that it could not "correct

19  or rebut Samsung's false assertions," and that *this by itself* is sufficient to warrant a new trial.  Dkt.

20  1897-3 at 38.  Apple's argument boils down to a complaint that Apple could not present every

21  piece of evidence it wished to present – in particular, evidence that Apple allegedly practices the

22  '172, '414, and '959 patents.  Apple's mere assertion that it could not present evidence does not

23  satisfy Rule 59, which allows a new trial "only if the verdict is contrary to the clear weight of the

24  evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."

25  *Molski v. MJ Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  Indeed, even if Apple had presented

26  its evidence, Apple fails to show that the jury would have believed that evidence over Samsung's

27

28

1    contrary evidence, and that even if the jury believed Apple's evidence, the jury would have

2    reached a different verdict.[16]

3              **5.        The Court correctly declined to issue a curative instruction.**

4              Finally, Apple argues that the Court further erred by failing to issue a curative instruction.

5    *E.g.*, Dkt. 1897-3 at 39-40.  But the cases Apple cites contradict its assertion.  Four of the five

6    cases emphasize that only false information can open the door to otherwise inadmissible rebuttal

7    evidence.  *United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir. 2007); *United States v. Rosa*, 11

8    F.3d 315, 335 (2d Cir. 1993); *Dillon, Read & Co. v. United States*, 875 F.2d 293, 300 (Fed. Cir.

9    1989); *see also United States v. Schuler*, 813 F.2d 978, 979-83 (9th Cir. 1987) (without a curative

10   instruction, a prosecutor's comment on a non-testifying defendant's laughter during trial violated

11   Fed. R. Evid. 404(a), Due Process, and the Fifth Amendment, and thus warranted reversal).

12   Apple's fifth case holds that "the introduction of *inadmissible* or *irrelevant* evidence by one party

13   justifies or 'opens the door to' admission of otherwise inadmissible evidence."  *Henderson v.*

14   *George Washington Univ.*, 449 F.3d 127, 140 (D.C. Cir. 2006) (emphasis added).  Apple admits

15   that Samsung's evidence was admissible and relevant; it simply wishes it could have presented

16   more evidence on the same subject.  None of Apple's cases support its interpretation of this rule,

17   and the Court should not adopt it.

18

19   _____

20       [16]   Apple also argues for a new trial based on a mischaracterization of the Court's motive for
     issuing its rulings.  Apple contends the Court did so out of concern about "whether Apple's
21   products could be considered acceptable non-infringing alternatives to the asserted claims," and
     argues the trial was "manifestly unfair" because Samsung never made that argument.  Dkt. 1897-3
22   at 41.  Apple has conveniently forgotten the history of Samsung's motion to enforce and resulting
     issues.  The Court precluded Apple from arguing it practices certain claims of the '172, '414, and
23   '959 patents because it would be unfair for Apple to use those claims as a sword, yet prevent
     Samsung from challenging its practice and their validity.  *E.g.*, Dkt. 1133 at 155:24-156:2.
24   Months later, hearing the parties' motions *in limine*, the Court repeated its fairness ruling, and
     indicated as an example that Samsung should be able to contend the iPhone was a non-infringing
25   alternative—but did not rule that Samsung *must* make that argument.  *See*, *e.g.*, Dkt. 1411 at
     55:13-16, 66:23-67:3.  Samsung never requested the opportunity to make that argument, *see* Dkt.
26   804-3; Dkt. 852-5; Dkt. 1283-3 at 5-9; Dkt. 1327-8, but clearly stated from the first motion that it
     wished to argue that Apple practiced no valid claims of the '172, '414, and '959 patents.
27

28

**B.      Apple's Request for a New Trial Based on Samsung's Reference to Apple's Request for Injunctive Relief Is Meritless**

The Court has considered Apple's argument on this issue three times and each time it has rejected the recycled arguments Apple makes again here.  Dkt. 1538, 1555, 1578.  Apple's motion raises no new arguments and identifies no basis for the Court to revisit this issue.

As made clear in prior briefing, *see* Dkt. 1571 at 8-10, Samsung's counsel's statement that Apple brought this suit to get an injunction in addition to seeking billions of dollars, Tr. 358:19-24, was not improper.  Apple continues to mischaracterize it, omitting sentences immediately following the reference to injunctive relief that make clear the reference *was* made for a "legitimate reason" – evidence of Apple's true motive for filing suit (which Samsung argued was to stifle its main competitor, Android, by seeking over-the-top penalties).  *See id.*  Apple has provided no basis for the Court to conclude statements made to show Apple's motive for filing suit are improper, much less meet the standard for imposing the drastic remedy of a new trial.  Indeed, it would be absurd for Apple to question the validity of addressing motive given that Apple was the party that interjected motivations for filing suit during its opening statement.  *See id.* (citing Trial Tr. 4/1/14 341:17-343:11) (Apple's counsel arguing about Samsung's motivations for suit on the '239 and '449 patents).  Moreover, Apple acknowledged that the question of whether to permit reference to a permanent injunction was "completely in [the Court's] discretion."  3/31/14 Trial Tr. 255:21-22.

Other than a passing reference to the clearly distinguishable *Schuler* case, the only new trial case Apple cites,[17] Apple's motion cites no authority beyond that the Court previously rejected.  Dkt. 1567, 1578.  Apple cites *no* authority suggesting the Court's denial of Apple's requested curative instruction was error.[18]

---

[17]   *U.S. v. Schuler*, 813 F.2d 978 (9th Cir. 1987), was a criminal case where the prosecutor made comments about the conduct of a non-testifying defendant.  The Court ruled that failure to give a curative instruction violated the defendant's Fifth Amendment rights, *id.* at 982, which is obviously not at issue here.

[18]   "The decision to give a curative instruction lies within the sound discretion of the trial court."  *Goodman v. Ohio*, 2010 WL 3394727, *12 (N.D. Ohio July 23, 2010); *U.S. v.*
(footnote continued)

1      Furthermore, even if the statement at issue were improper, there is no plausible basis for

2  saying that this one sentence during opening statements was so prejudicial as to warrant a new

3  trial.  Earlier this year, this Court denied Samsung's request for a new trial in the 1846 action

4  based on Apple's counsel's prejudicial statements during closing argument.  *Apple v. Samsung*,

5  2014 WL 549324 (N.D. Cal. Feb. 7, 2014).  Unlike the reference at issue here, Apple's counsel's

6  racially motivated statements were, as the Court acknowledged, "troubling."  *Id.* at *11, *13.

7  Nonetheless, this Court held they did not warrant a new trial under the applicable standard.  *Id.* at

8  *11.  "Under Ninth Circuit case law, granting a motion for new trial on the grounds of attorney

9  misconduct is only appropriate where the 'flavor of misconduct ... sufficiently permeate an entire

10  proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching

11  its verdict.'"  *Id.* (citation omitted).  The Court found there that the problematic comments "did not

12  permeate the proceedings[,]" but "were confined to a few seconds of the closing argument[.]"  *Id.*

13  at *14.  If Apple's prejudicial remark in closing does not warrant a new trial, certainly this

14  statement—which Apple has conceded the Court had discretion to permit—does not.

15      **C.     Apple's Request for a New Trial Based On Its Previously Rejected Arguments**
       **Regarding Samsung's Reference to the Federal Circuit's Reversal of the**
16      **Preliminary Injunction Remains Meritless**

17      The Court has also rejected Apple's arguments regarding Samsung's reference to the

18  preliminary injunction and the Federal Circuit's reversal three times.  *See* Dkt. 1538 at 1; Tr.

19  253:21-255:17; Dkt. 1578 at 2.  Apple was the one who injected the preliminary injunction issue

20  into this case:  although the Court was initially inclined to exclude any mention of the preliminary

21  injunction proceedings, Apple insisted on arguing that Samsung removed local search

22  functionality and then "made the decision to turn the function back on" because "users complained

23  _____

24  *Emmanuel*, 565 F.3d 1324, 1335 (11th Cir. 2009) ("decision not to give a curative instruction was
   well within the district court's discretion."); *Edwards v. City of Philadelphia*, 860 F.2d 568,
25  574 (3d. Cir. 1988) ("decision of whether, and in what manner to give a curative
   instruction following such an argument, however, is committed to the sound discretion of the
26  district court").

27

28

1  about it." Tr. at 322:23-24.  To avoid prejudicing Samsung, the Court gave Apple an

2  election:  avoid telling any part of this story at all, or permit Samsung to explain "the fact that the

3  injunction was issued and it was reversed by the higher court."  Tr. at 255:5-7.  Apple chose the

4  latter, and Samsung responded exactly as this Court said it could.  Apple's continued complaints

5  about a decision *it* made remain meritless.

6       Moreover, there was nothing improper about Samsung's statement because it correctly

7  explained the import of the Federal Circuit's decision.  *See* Dkt. 1571 at 10-11.  The Federal

8  Circuit found Apple failed to establish a likelihood of success on its infringement claims on the

9  '604 patent and determined the patent was far narrower than Apple contended.  *Apple II*, 695 F.3d

10  at 1377-80.  With the injunction reversed, Samsung believed it was entitled to return the feature to

11  its phones, as Samsung argued to the jury.  Tr. 403:1-3 (the feature is "one of many, many features

12  and we include it and we think we're entitled to include it").  While Apple argues that Samsung

13  mischaracterized the decision, Dkt. 1897-3 at 43, Apple omits the full context of Samsung's

14  statement, which made clear that the Federal Circuit decision involved "a different search patent . .

15  . the '604 patent, not this one . . . ."  Tr. 402:7-8. Similarly, Samsung never mentioned the '959

16  patent in connection with the Federal Circuit decision, and Apple cites nothing to the contrary.

17       In any event, Apple suffered no prejudice from Samsung's limited references to the

18  Federal Circuit decision, let alone the kind of prejudice that would warrant a new trial.  Apple has

19  cited no civil case supporting its request for a new trial on this issue, to which Apple knowingly

20  opened the door.

21                          **CONCLUSION**

22       For the foregoing reasons, the Court should enter an order denying Apple's motion for

23  judgment as a matter of law, amended judgment, new trial, and enhanced damages.

24

25

26

27

28

1    DATED: June 6, 2014                    Respectfully submitted,

2                                           QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
3

4                                              By /s/ Victoria F. Maroulis
                                                  Kevin P.B. Johnson
5                                                 Victoria F. Maroulis
                                                  William C. Price
6                                                 Michael L. Fazio

7                                              Attorneys for SAMSUNG ELECTRONICS CO.,
                                               LTD., SAMSUNG ELECTRONICS AMERICA,
8                                              INC. and SAMSUNG
                                               TELECOMMUNICATIONS AMERICA, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28