JOSH A. KREVITT (CA SBN 208552)
jkrevitt@gibsondunn.com
H. MARK LYON (CA SBN 162061)
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

HAROLD J. McELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
JAMES P. BENNETT (CA SBN 65179)
jbennett@mofo.com
JACK W. LONDEN (CA SBN 85776)
jlonden@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
RUTH N. BORENSTEIN (CA SBN 133797)
rborenstein@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 5:12-cv-00630-LHK (PSG)<br><br>**APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(B) AND MOTION TO AMEND THE JUDGMENT**<br><br>Date: July 10, 2014<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

## <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ....................................................................................................................1

I.   SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 9 OF THE '647
     PATENT. ...............................................................................................................1

     A.   Apple Presented Its Case Using The Proper Constructions. ...................2

     B.   Samsung's Belated Challenges To Dr. Mowry's Testimony
          Regarding The *Motorola* Constructions Are Meritless. .........................3

     C.   A Reasonable Jury Could Conclude That Samsung Infringed The
          '647 Patent. .............................................................................................5

          1.   A reasonable jury could conclude that a shared library is
               separate from an application. ........................................................5

          2.   A reasonable jury could conclude that there is a "specified
               connection" between the detected structures and a computer
               subroutine that performs a sequence of operations. ....................8

          3.   A reasonable jury could conclude that the accused Samsung
               devices satisfy the "action processor" limitation. ......................9

          4.   A reasonable jury could conclude that the browser
               application of the Jelly Bean Galaxy Nexus enables the
               selection of a detected structure. ................................................10

     D.   A Reasonable Jury Could Conclude That Claim 9 Is Not Obvious. ....11

II.  SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 8 OF THE '721
     PATENT. .............................................................................................................14

     A.   A Reasonable Jury Could Conclude That Claim 8 Is Not Obvious. ....14

          1.   A reasonable jury could conclude that Neonode and Plaisant
               do not disclose all claim elements. .............................................14

          2.   A reasonable jury could conclude that a person of ordinary
               skill in the art would not have been motivated to combine
               Neonode and Plaisant. ................................................................16

          3.   A reasonable jury could conclude that secondary
               considerations of nonobviousness preclude an obviousness
               determination. .............................................................................17

     B.   Samsung Failed To Prove That Claim 8 Is Indefinite. .........................19

     C.   A Reasonable Jury Could Conclude That Samsung Infringed Claim
          8. ............................................................................................................20

          1.   A reasonable jury could conclude that the Galaxy Nexus
               infringes. .....................................................................................20

          2.   A reasonable jury could conclude that the infringing devices
               contain "instructions." ................................................................21

     D.   A Reasonable Jury Could Conclude That Samsung's Infringement
          Was Willful. ...........................................................................................22

|   |   | 1. | Samsung's defenses were not objectively reasonable............................. 22 |
|   |   | 2. | Substantial evidence supports the jury's willfulness finding................. 23 |
| III. | SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 18 OF THE '172 PATENT. .................................................................................................. 24 |
| IV. | SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 25 OF THE '959 PATENT. .................................................................................................. 26 |
|   | A. | A Reasonable Jury Could Conclude That FreeWAIS-Sf Did Not Anticipate Claim 25. ......................................................................... 26 |
|   |   | 1. | A reasonable jury could conclude that the freeWAIS-sf code did not satisfy the "computer readable medium" with "program instructions" preamble. ...................................................... 26 |
|   |   | 2. | A reasonable jury could conclude that the freeWAIS-sf code was not a "plurality of heuristics to locate information in the plurality of locations which include the Internet and local storage media."................................................................................ 28 |
|   | B. | A Reasonable Jury Could Conclude That Claim 25 Is Not Obvious.......... 29 |
|   | C. | The Condition Set By The Court For Re-raising Indefiniteness Was Not Met, Although Samsung Failed To Prove Indefiniteness In Any Event. .................................................................................................. 31 |
| V. | SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 20 OF THE '414 PATENT. .................................................................................................. 33 |
|   | A. | A Reasonable Jury Could Conclude That The Exchange Provider Components Of Windows Mobile 5 Do Not "Provide" A Thread As Required By Claim 20................................................................................ 33 |
|   | B. | A Reasonable Jury Could Conclude That An "IMAP Mail Component" In Windows Mobile 5 Did Not Invalidate Claim 20. .................... 35 |
| VI. | THE RECORD SUPPORTS THE INDIRECT INFRINGEMENT VERDICT. .......................................................................................... 37 |
| VII. | NO REDUCTIONS FOR THE GALAXY S II PRODUCTS ARE APPROPRIATE................................................................................ 38 |
|   | A. | Samsung Has Not Satisfied Any Judgment. ........................................ 38 |
|   | B. | Until A Judgment Is Satisfied, There Can Be No Double Recovery For Galaxy S II Sales After August 25, 2012. ...................................... 40 |
|   | C. | The Verdict In This Case Is The Only Award Apple Has Received For The Sale Of Galaxy S II Products Between July 1 And August 24, 2012........................................................................................... 41 |
|   | D. | Samsung's Apportionment Of Question 10b Is Improper. ................. 42 |
| VIII. | SAMSUNG IS NOT ENTITLED TO JMOL ON THE '239 PATENT. ......... 42 |
|   | A. | Substantial Evidence Supports The Jury's Non-Infringement Finding. .............................................................................................. 42 |
|   | B. | Applying Plain Meaning For Terms Not Construed By The Court, Dr. Storer Properly Compared The Accused Products To The Asserted Claim. .................................................................................. 44 |
| CONCLUSION ...................................................................................................... 45 |

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accentra, Inc. v. Staples, Inc.*,
   851 F. Supp. 2d 1205 (C.D. Cal. 2011) ................................................................. 39

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012)............................................................................ 30

*Aero Prods. Int'l v. Intex Recreation Corp.*,
   466 F.3d 1000 (Fed. Cir. 2010) ........................................................................... 39

*Alexsam, Inc. v. IDT Corp.*,
   715 F.3d 1336 (Fed. Cir. 2013)............................................................................ 11

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) ........................................................................... 45

*Apple Inc. v. Motorola Inc.*,
   No. 12-1548, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) ................................... 1

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
   No. 3:01-cv-0485, 2010 WL 815466 (M.D. Pa. Mar. 3, 2010) ............................ 39

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   377 U.S. 476 (1964)............................................................................................. 39

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
   682 F.3d 1003 (Fed. Cir. 2012)........................................................................... 22

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
   No. CV 03-0597-PXM-MHM,
   2013 U.S. Dist. LEXIS 159987 (D. Ariz. Oct. 16, 2012) ..................................... 22

*Bollinger v. Rheem Mfg. Co.*,
   381 F.2d 182 (10th Cir. 1967).............................................................................. 40

*Broadcom Corp. v. Qualcomm, Inc.*,
   543 F.3d 683 (Fed. Cir. 2008).............................................................................. 21

*Catalina Lighting Inc. v. Lamps Plus, Inc.*,
   295 F.3d 1277 (Fed. Cir. 2002)............................................................................ 39

*Chuy v. The Philadelphia Eagles Football Club*,
   595 F.2d 1265 (3d Cir. 1979)............................................................................... 42

*Cornell University v. Hewlett-Packard Co.*,
   609 F. Supp. 2d 279 (N.D.N.Y. 2009) ................................................................. 42

*DSPT Int'l, Inc. v. Nahum*,
    624 F.3d 1213 (9th Cir. 2010) ............................................................................... 1

*Duran v. Town of Cicero, Ill.*,
    653 F. 3d 632 (7th Cir. 2011) ............................................................................... 39

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
    697 F.3d 1342 (Fed. Cir. 2012), *cert. denied*, 133 S. Ct. 2010 (2013) ................... 26

*Galderma Labs., LP v. Tolmar, Inc.*,
    737 F.3d 731 (Fed. Cir. 2013) ............................................................................... 17

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ......................................................................................... 24

*Group One, Ltd. v. Hallmark Cards, Inc.*,
    407 F.3d 1297 (Fed. Cir. 2005) ............................................................... 11, 16, 30

*Hewlett-Packard Co. v. Mustek Sys.*,
    340 F.3d 1314 (Fed. Cir. 2003) ............................................................................. 20

*In re Kubin*,
    561 F.3d 1351 (Fed. Cir. 2009) ............................................................................. 17

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) (en banc) .............................................................. 23

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008) ............................................................................. 11

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
    No. 96 CV 1307-B(AJB),
    2004 WL 2284001 (S.D. Cal. Sept. 7, 2004) ........................................................ 39

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012) ...................................................................... *passim*

*Krause v. Dresser Indus., Inc.*,
    910 F.2d 674 (10th Cir. 1990) ............................................................................... 42

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    No. 12-786, 2014 WL 2440535 (U.S. June 2, 2014) ............................................. 38

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
    449 F.3d 1209 (Fed. Cir. 2006) ............................................................................. 24

*Lisle Corp. v. A.J. Mfg. Co.*,
    398 F.3d 1306 (Fed. Cir. 2005) ............................................................................. 19

*Los Angeles Mem'l Coliseum Comm'n v. NFL*,
791 F.2d 1356 (9th Cir. 1986)................................................................ 42

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)............................................................... 1

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012)................................................................ 23

*Microsoft Corp. v. i4i Ltd.*,
131 S. Ct. 2238 (2011) ............................................................ 11, 14, 26

*Minks v. Polaris Indus., Inc.*,
546 F.3d 1364 (Fed. Cir. 2008)................................................................ 39

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
No. 13-369, 2014 WL 2440536 (U.S. June 2, 2014) ........................... 19, 20, 31, 32

*Power-One, Inc. v. Artesyn Techs., Inc.*,
599 F.3d 1343 (Fed. Cir. 2010)................................................................ 12

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) .................................................................... 4, 5

*Rexnord Corp. v. Laitrom Corp.*,
274 F.3d 1336 (Fed. Cir. 2001)................................................................ 37

*Seal-Flex, Inc. v. Athletic Track & Court Constr.*,
172 F.3d 836 (Fed. Cir. 1999)................................................................ 1

*Sargent Mfg. Co. v. Cal-Royal Prods., Inc.*,
No. 3:08-CV-408(VLB),
2012 U.S. Dist. LEXIS 23852 (D. Conn. Feb. 24, 2012) ........................ 24

*SSL Servs., LLC v. Citrix Sys.,Inc.*,
940 F. Supp. 2d 480 (E.D. Tex. 2013) ...................................................... 22

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
617 F.3d 1296 (Fed. Cir. 2010) ("*Transocean I*") ............................. 11, 12, 16, 31

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
699 F.3d 1340 (Fed. Cir. 2012) ("*Transocean II*") .......................... 14, 17, 18

*Tryker Corp. v. Zimmer Inc.*,
No. 1:10-CV-1223,
2013 U.S. Dist. LEXIS 171817 (W.D. Mich. Aug. 7, 2013) ..................... 22

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*,
602 F.3d 1325 (Fed. Cir. 2010) ............................................................... 9

*Versata Software, Inc. v. SAP AM., Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013)................................................................................... 27

*Winner Int'l Royalty Corp. v. Wang*,
   202 F.3d 1340 (Fed. Cir. 2000).......................................................................... 14, 31

*Yarmouth Sea Prods., Inc. v. Scully*,
   131 F.3d 389 (4th Cir. 1997).......................................................................... 40

*Zomba Enters., Inc. v. Panorama Records, Inc.*,
   491 F.3d 574 (6th Cir. 2007)......................................................................... 23

**STATUTES**

35 U.S.C. § 289 ....................................................................................................... 41

**OTHER AUTHORITIES**

Fed. R. Civ. P.
   Rule 50 ............................................................................................................. 37
   Rule 50(a) ................................................................................................ 3, 40, 45
   Rule 50(b) ................................................................................................ 3, 17, 37
   Rule 52 ............................................................................................................. 19

1    Samsung fails to meet the high bar required to obtain judgment on any claim, as

2  substantial evidence supported the portions of the verdict that Samsung challenges and Samsung

3  did not present evidence that permitted "only one reasonable conclusion." *DSPT Int'l, Inc. v.*

4  *Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) ("verdict must be upheld if it is supported by

5  substantial evidence" and disturbed only if "evidence permits only one reasonable conclusion,"

6  which is "contrary to the jury's verdict").  On infringement, Samsung must show that, contrary to

7  the jury's verdict, the evidence reasonably permits only the conclusion that Apple failed to prove

8  infringement by a preponderance of the evidence.  *Seal-Flex, Inc. v. Athletic Track & Court*

9  *Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).  On validity, Samsung must meet the even higher

10  standard of showing that, contrary to the jury's verdict, the evidence reasonably permits only the

11  conclusion that Samsung proved invalidity by clear and convincing evidence.  *Lucent Techs., Inc.*

12  *v. Gateway, Inc.*, 580 F.3d 1301, 1316 (Fed. Cir. 2009).  Samsung cannot meet these standards,

13  and the Court should deny Samsung's motion.

14                                        **ARGUMENT**

15  **I.    SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 9 OF THE '647 PATENT.**

16    Samsung's motion for JMOL on the '647 patent is based on the faulty premise that the

17  Federal Circuit's decision in the *Motorola* case[1] gutted Apple's trial presentation, which

18  supposedly relied only on claim constructions that the Federal Circuit rejected.  Samsung ignores

19  that (1) the Federal Circuit's decision changed the constructions for only two of the elements of

20  claim 9, and thus had no effect on Apple's trial presentation regarding the unaffected elements;

21  (2) the evidence Dr. Mowry presented prior to the Federal Circuit's decision regarding the

22  operation of the relevant aspects of the devices and their code remained relevant under the

23  *Motorola* constructions; and (3) after the Federal Circuit issued the decision, Dr. Mowry returned

24  to testify regarding both infringement and validity using the *Motorola* constructions for the

25  "analyzer server" and "linking actions" elements of claim 9.

26    Samsung's motion on the '647 patent should be denied, because Apple presented more

27  _____

28    [1] *Apple Inc. v. Motorola Inc.*, No. 12-1548, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014).

than substantial evidence from which a reasonable jury could conclude that the accused Samsung

devices infringe, while Samsung failed to present clear and convincing evidence from which a

reasonable jury could conclude that Sidekick rendered the '647 patent invalid.

### A.     Apple Presented Its Case Using The Proper Constructions.

Samsung ignores that the Federal Circuit's decision had no effect on most of claim 9's

limitations.  Samsung obviously has no basis to complain about Dr. Mowry's initial testimony

regarding the unaffected limitations, in which he addressed the plain and ordinary meaning of the

unconstrued claim terms, and the Court's construction of "action processor," consistent with the

Court's instructions to the jury.  (Tr. 818:12-925:10 (Dkt. 1624); *id.* at 2787:24-2811:4

(4/22/14).)  Samsung also ignores that Dr. Mowry's initial testimony regarding the architecture

and functions of the source code and the operation of the Samsung devices indisputably remains

relevant to whether the *Motorola* constructions of "analyzer server" and "linking actions" are

satisfied.  (Tr. 850:11-861:7 (Dkt. 1624); JX 50A, JX51A, JX53A.)  That evidence provided

substantial proof that (1) the shared libraries are separate from the applications, and (2) the code

Dr. Mowry identified creates a specified connection between each detected structure and a

computer subroutine.  Indeed, a reasonable jury could conclude that the accused Samsung devices

satisfy the *Motorola* constructions based solely on the evidence Dr. Mowry offered in his initial

testimony, and that conclusion was then bolstered by his recall testimony.

Samsung further ignores that Dr. Mowry's testimony regarding the "analyzer server" and

"linking actions" elements was at all times consistent with the constructions the Court provided

the jury.  When trial commenced, the "analyzer server" and "linking actions" elements were

subject to plain and ordinary meaning, consistent with the Court's orders and Samsung's own

proposed jury instructions.  (Dkt. 1458-2 at 56.)  Samsung had been free to seek construction of

those elements at the appropriate time, but declined to do so even when the Court asked Samsung

at the summary judgment hearing which additional terms it would like the Court to construe.

(Dkt. 1133 at 173:17-178:14.)  Samsung's belated request on the eve of trial to instruct the jury

on the *Motorola* constructions for "analyzer server" and "linking actions" does not excuse its

prior failure to seek construction of those elements.  Given the Court's denial of that untimely

request (Dkt. 1536), Dr. Mowry's initial testimony properly addressed the "analyzer server" and "linking actions" elements in terms of their plain and ordinary meaning.  While Samsung frames this as Apple's "choice" regarding which claim constructions to use at trial (Mot. 2-3, 5), Apple was simply complying with the Court's rulings then in effect.

When the Federal Circuit decision issued on April 25, the Court gave the parties multiple opportunities to propose how to proceed.  The Court ultimately decided to instruct the jury on the *Motorola* constructions of "analyzer server" and "linking actions," and have the parties' experts return to testify regarding the application of those constructions.  (Tr. 2981:8-2982:4 (4/25/14).) Samsung did not object to the recall procedure in any way or at any time before the end of trial.

Pursuant to the Court's order, Dr. Mowry returned to testify at length regarding the application of the *Motorola* constructions to the infringement and validity issues before the jury. (Tr. 3016:4-3053:6, 3100:22-3111:25 (4/28/14).)  Samsung thus cannot dispute that Dr. Mowry testified pursuant to the proper construction for each limitation of claim 9.

### B. Samsung's Belated Challenges To Dr. Mowry's Testimony Regarding The *Motorola* Constructions Are Meritless.

In its "renewed" JMOL motion, Samsung raises a number of completely new challenges to Dr. Mowry's opinions regarding the application of the *Motorola* constructions.  Although Dr. Mowry had properly disclosed the relevant opinions in his report and during his testimony, Samsung (1) never filed a pre-trial *Daubert* motion on these issues, (2) never objected on these grounds during Dr. Mowry's recall testimony, and (3) never raised these issues in its Rule 50(a) motion at the close of evidence.  Samsung may not raise these new issues for the first time in its Rule 50(b) motion.  Moreover, Samsung's argument fails because its premise is false.  Samsung suggests that, unlike its expert, Dr. Mowry did not take the "prudent course" of performing an analysis using both plain and ordinary meaning and the *Motorola* constructions in his report. (Mot. 5.)  But Dr. Mowry did exactly that, as his opening report (dated August 12, 2013) expressly disclosed opinions that the same code in the Samsung devices satisfies the "analyzer server" and "linking actions" elements under either plain and ordinary meaning or the *Motorola* constructions.  (Dkt. 1074-5 ¶¶ 15, 83, 132-152, 226-249.)

1    Samsung also belatedly suggests there was some analytical problem with Dr. Mowry's

2    recall opinions under the *Motorola* constructions, because he identified "no new code" to satisfy

3    those constructions.  (Mot. 8.)  In essence, Samsung suggests that, because the *Motorola*

4    constructions are narrower than the plain and ordinary meaning, Dr. Mowry necessarily had to

5    identify different code to satisfy those constructions.

6    Samsung's criticism is illogical.  Something that satisfies the plain and ordinary meaning

7    of a claim limitation can also satisfy a narrower construction of that limitation.  Dr. Mowry's

8    initial testimony did not suggest otherwise.  Instead, as he made clear in his recall testimony, Dr.

9    Mowry concluded that the same components of the code would satisfy both the plain and ordinary

10   meaning of those elements and the *Motorola* constructions.  (Tr. 3016:4-20 (4/28/14).)  Rather

11   than impeaching Dr. Mowry's testimony, this explains why Dr. Mowry believed his initial and

12   recall testimony were consistent, as he testified during his cross-examination.  (*Id.* at 3033:11-18.)

13   Although Samsung admits that Dr. Mowry used the language of the *Motorola*

14   constructions in his recall testimony, Samsung nonetheless belatedly asserts that Dr. Mowry's

15   recall testimony was fundamentally inconsistent with, and insufficient as a matter of law under,

16   the *Motorola* constructions.  (Mot. 8.)  But Samsung has no support for this argument, and Judge

17   Posner—who originally adopted the constructions at issue in the *Motorola* case—and this Court

18   have both applied the *Motorola* constructions in ways that confirm that Dr. Mowry's recall

19   testimony was consistent with the *Motorola* constructions.

20   ***First***, Judge Posner denied Motorola's motion for summary judgment on the issues of

21   whether (1) a shared library in Google's Android operating system can be the "separate" server

22   routine of the *Motorola* construction for "analyzer server"; and (2) the linking provided in

23   Android satisfies the "specified connection" of the *Motorola* construction for "linking actions."

24   (Decl. of Nathan Sabri in Supp. of Apple's Opp. to Samsung's Mot. for JMOL ("Sabri Decl.")

25   Ex. A at 5.)  These are the very positions that Dr. Mowry took in his recall testimony on

26   infringement.  (Tr. 3022:12-3025:7, 3027:6-3028:25 (4/28/14).)  By denying summary judgment,

27   Judge Posner confirmed that these positions do not fail as a matter of law under the *Motorola*

28   constructions.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[T]he

1   standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law,

2   such that 'the inquiry under each is the same.'").

3        *Second*, Judge Posner held in his claim construction order that, even under the *Motorola*

4   construction of "linking actions," claim 9 requires multiple actions, (Sabri Decl. Ex. B at 10-11),

5   the same position Dr. Mowry took in his trial testimony.  (Tr. 2803:5-7, 2809:7 (4/22/14); *id.* at

6   3102:1-3104:14 (4/28/14).)  While Samsung characterizes this position as an "attempt to end-run"

7   the *Motorola* construction of "linking actions" (Mot. 15), Judge Posner's order confirms that this

8   is the correct reading of the claim.

9        *Third*, this Court's preliminary injunction order in this case made clear that Judge

10   Posner's rulings in the *Motorola* case were persuasive authority with respect to how the *Motorola*

11   constructions would apply to the Android operating system in the Samsung devices.  (Dkt. 221 at

12   32-34.)  The Court determined that the existence of "glue code" did not preclude the shared

13   libraries from being the "separate" analyzer server required by the *Motorola* construction, and the

14   functionality of the accused devices confirmed the existence of the "specified connection"

15   required for linking actions by the *Motorola* construction.  (*Id.* at 33-36, 38.)  These, too, are

16   positions Dr. Mowry took in his trial testimony on infringement.  (Tr. 854:9-861:7 (Dkt. 1624);

17   *id.* at 3019:22-3022:3, 3027:6-3028:25 (4/28/14).)  Nothing in Dr. Mowry's recall testimony was

18   inconsistent with the *Motorola* constructions.

19        **C.      A Reasonable Jury Could Conclude That Samsung Infringed The '647 Patent.**

20            **1.      A reasonable jury could conclude that a shared library is separate**
                 **from an application.**

21

22        The *Motorola* construction for the term "analyzer server" requires "a server routine

23   separate from client that receives data having structures from the client."  (Sabri Decl. Ex. B at

24   10.)  Dr. Mowry testified during his recall testimony that:  (1) the browser and messaging

25   applications in the infringing Samsung devices are the "client" of the construction (Tr.  3017:1-8

26   (4/28/14)); (2) the relevant shared libraries are the "separate" server routine of the construction

27   (*id.* at 3017:17-3020:21 (4/28/14)); and (3) the shared libraries receive data having structures

28   from the client applications (*id.* at 3019:18-21, 3021:25-3022:3).

1    In his recall testimony, Dr. Jeffay disputed only whether the shared libraries are "separate"

2    from the applications.  (*Id.* at 3078:19-3079:4.)  Dr. Jeffay did not dispute many of the key facts

3    relevant to resolution of this issue, including, as Dr. Mowry testified, that:  (1) the relevant

4    components of the code are "shared libraries" (*id.* at 3017:17-22, 3079:17-3080:1, 3097:12-22);

5    (2) those shared libraries are available for use by multiple applications (*id.* at 3022:7-3023:2,

6    3024:20-3025:7, 3097:12-3098:16); and (3) in an e-mail roughly contemporaneous with the filing

7    of the application for the '647 patent, one of the inventors stated that he was "looking into

8    implementing the server as a shared library" (*id.* at 897:24-898:4 (Dkt. 1624); *id.* at 1787:2-

9    1788:16 (Dkt. 1717); *id.* at 2789:25-2791:6 (4/22/14); DX334 at 3).

10    Based on these undisputed facts alone, a reasonable jury could conclude that the shared

11    libraries are "separate" from the client applications, as required by the claim.  Because the

12    *Motorola* construction does not further define (let alone narrow) the word "separate," a

13    reasonable jury could conclude that a library that is "shared" by at least two applications, as

14    Dr. Jeffay admitted (Tr. 3096:25-3098:16 (4/28/14)), is "separate" from those applications.

15    Additional testimony from Dr. Mowry and the source code provided further support for

16    the reasonableness of the jury's conclusion.  In his recall testimony, Dr. Mowry testified that

17    (1) the shared libraries are developed independently of the applications; (2) the shared libraries

18    are designed to be reused across different applications beyond just browser and messaging; (3)

19    there is only one copy of the code for each shared library; and (4) each application runs the code

20    for a given shared library from the same location in memory.  (*Id.* at 3022:12-3025:7.)

21    Dr. Mowry also explained why shared libraries are treated this way—to conserve memory on the

22    infringing devices.  (*Id.* at 3024:11-19.)  While Dr. Jeffay disputed much of this, "[b]ecause of

23    this conflicting expert testimony, the jury was free to 'make credibility determinations and

24    believe the witness it consider[ed] more trustworthy.'"  *Kinetic Concepts, Inc. v. Smith &*

25    *Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012) (citation omitted).

26    Judge Posner's denial of summary judgment on this point confirms that shared libraries

27    are not excluded as a matter of law under the *Motorola* construction of "analyzer server."  As

28    Judge Posner observed:

> The "separateness" of the client application and the analyzer server required by my claim construction isn't an issue suitable for summary judgment; some of the code responsible for each task is intertwined with the client applications, though much appears separate from and reused across the client applications.

(Sabri Decl. Ex. A at 5.)  Judge Posner's ruling confirms that a reasonable jury could conclude that a shared library can satisfy the *Motorola* construction for "analyzer server."

Samsung nonetheless asserts that the existence of "glue code" precludes the separate server required by the claim language.  (Mot. 12-13.)  But Dr. Mowry testified regarding the need for glue code in a "client and server software architecture," with the glue code in client applications pulling together data and other things needed to communicate with separate server routines.  (Tr. 3019:22-3022:3 (4/28/14).)  Based on Dr. Mowry's testimony, the jury could reasonably conclude that the existence of glue code does not preclude the separateness required by the claim, but instead confirms that the applications and shared libraries are separate (because they need intermediary "glue code" to communicate).  The Court's preliminary injunction order confirms that a reasonable jury could reach that conclusion under the *Motorola* construction:

> To the extent that there may be relevant code intertwined with the client applications, Dr. Mowry explains that in any client-server relationship, there must be code in the client that calls to the server.  This "glue code," however, simply allows the communication between the client and the server.  Mowry Reply Decl. ¶¶ 67-70.  The Court agrees that the presence of this "glue code" does not remove the accused device from the scope of the '647 Patent.

(Dkt. 221 at 34-35.)

Samsung's motion tries to create a dispute regarding whether the shared libraries receive data from the client applications, arguing that there can be no "sending or receiving of data" between things that are not separate.  (Mot. 12.)  But this merely restates Samsung's erroneous argument that the shared libraries and the client applications are not separate.  Dr. Mowry unequivocally testified that each of the shared libraries he identified as the server routines of the *Motorola* construction receives data from the client applications (Tr. 3019:18-21, 3021:25-3022:3 (4/28/14)), which Dr. Jeffay did not dispute.  Dr. Mowry identified the specific code and related functionality via which the shared libraries receive data such as phone numbers and e-mail addresses from the client applications.  (*Id.* at 853:13-861:1, 873:8-874:6 (Dkt. 1624); *id.* at

1  2794:1-2796:21 (4/22/14); *see also* PDX88.20, 88.22, 88.24.)

2          **2.      A reasonable jury could conclude that there is a "specified connection"
               between the detected structures and a computer subroutine that
3              performs a sequence of operations.**

4          The *Motorola* construction for "linking actions" requires "creating a specified connection

5  between each detected structure and at least one computer subroutine that causes the CPU to

6  perform a sequence of operations on that detected structure." (Sabri Decl. Ex. B at 10-11.)

7  Dr. Mowry testified at length regarding the specific components of the code in the infringing

8  devices that create the specified connection between a detected structure and at least one

9  computer subroutine (startActivity). (Tr. 854:9-861:7 (Dkt. 1624); *id.* at 3027:6-3028:25

10  (4/28/14); JX50A; JX51A; JX53A.) He also showed videos confirming the existence of the

11  specified connection in the accused devices. (PDX88.14-17.) This functionality was available

12  for review by the jury via the representative devices in evidence. (JX28-JX37.) Based on this

13  substantial evidence, a reasonable jury could conclude that the infringing devices satisfy the

14  "specified connection" element of the *Motorola* construction.

15          Samsung asserts that the code Dr. Mowry identified cannot satisfy the *Motorola*

16  construction. But Samsung's argument improperly adds words to that construction, which does

17  not require a "pre-programmed" or "preset" connection between each detected structure and a

18  computer subroutine. (Mot. 2, 11.) Instead, the *Motorola* construction requires "*creating* a

19  specified connection" (Sabri Decl. Ex. B at 10-11 (emphasis added)), which Apple proved via

20  Dr. Mowry's testimony, source code, and the operation of the phones. Similarly, the *Motorola*

21  construction does not require that the "computer subroutine" be a "specific application." Instead,

22  the construction requires a "computer subroutine that causes the CPU to perform a sequence of

23  operations" (*id.*), which Apple proved via that same evidence.[2]

24  _____

25      [2] Samsung asserts that Dr. Mowry's testimony on the "specified connection" element
      "conflicts" with the "linked action" language of the user interface element. (Mot. 10.) Samsung
26  did not raise this (or any) argument regarding the user interface element in its three prior JMOLs,
      and thus has waived it. Samsung's argument is also wrong, because Samsung assumes that
27  startActivity cannot be the "linked action" of the claim because (Samsung asserts) it is called after
      selection, and thus cannot already be "linked." But Dr. Mowry testified that the code in the
28  infringing devices is written so that the selection of an action automatically calls startActivity,
                                                                    (Footnote continues on next page.)

Samsung also asserts that Dr. Mowry's testimony on this issue is inconsistent with the testimony of Ms. Hackborn and Dr. Jeffay.  (Mot. 9-10.)  But Ms. Hackborn did not express opinions regarding the application of the claim language to the Android functionality she discussed (Tr. 1575:1-1594:25 (Dkt. 1716)), and Dr. Mowry testified that her testimony did not affect his opinions (*id.* at 3025:12-20 (4/28/14)).  Dr. Jeffay may have disagreed with Dr. Mowry on the relevance of Ms. Hackborn's testimony, but such factual disputes between the experts "were properly for the jury to decide."  *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1341 (Fed. Cir. 2010).

The Court's conclusion in its preliminary injunction order under the *Motorola* constructions confirms that a reasonable jury could conclude that the infringing devices satisfy the "specified connection" element of the *Motorola* construction:

> That a "specified connection" is formed is clear from the functionality of the Galaxy Nexus itself:  clicking on a detected structure presents the user with a menu of options, any of which, if clicked on by the user, will perform the specified action.

(Dkt. 221 at 36.)  Judge Posner's order denying summary judgment similarly confirmed that this is not an issue on which Samsung is entitled to JMOL:  "Whether the linking performed by the Android system is sufficiently specific to fall within my narrow construction of the term presents a genuine issue of material fact as to infringement."  (Sabri Decl. Ex. A at 5.)

### 3. A reasonable jury could conclude that the accused Samsung devices satisfy the "action processor" limitation.

The Court's construction of "action processor" requires "program routine(s) that perform the selected action on the detected structure."  (Dkt. 447 at 20.)  Dr. Mowry testified that the code in the accused devices includes program routines that perform the selected action for a specific

---

(Footnote continued from previous page.)

thereby confirming that startActivity is already "linked" at the time of selection (Tr. 853:13-874:6 (Dkt. 1624)), as a reasonable jury could reasonably infer.  Dr. Mowry further testified that the specified connection already exists when the pop-up menu is created (Tr. 3027:6-3028:25 (4/28/14)), thus allowing the user to select an already "linked action."  Samsung's attempt to manufacture new arguments based on timing issues is also inconsistent with Judge Posner's clarification (in his denial of summary judgment on the "specified connection" element) that his "'647 claim construction didn't interpret any issues of timing." (Sabri Decl. Ex. A at 5.)

1    detected structure, and the relevant code was also in evidence (JX50A, JX51A, JX53A).  In

2    particular, Dr. Mowry testified regarding how (1) the intent object passed to startActivity differs

3    for each detected structure and selected action, as reflected in its "action" field and "data" field;

4    and (2) startActivity (working with resolveActivity as needed) uses the intent object to launch the

5    relevant application with the detected structure filled in for use by the application.  (Tr.  853:13-

6    861:1, 873:8-874:6 (Dkt. 1624); *id.* at 2794:1-2796:21 (4/22/14); PDX88.35.)  Dr. Mowry also

7    showed videos confirming that the accused Samsung devices perform a selected action on a

8    detected structure (PDX88.14-17), and this functionality was available for review by the jury via

9    the representative devices in evidence (JX28-JX37).  Accordingly, a reasonable jury could

10   conclude that the accused Samsung devices satisfy this limitation.

11         Samsung's argument that StartActivity does not perform the "selected action" (Mot. 13) is

12   based on the erroneous assumption that the "selected action" must be the ultimate execution by an

13   application of an activity related to a structure, such as making a call.  But *Motorola* requires no

14   such thing.  It held that an action is "at least one computer subroutine that causes the CPU to

15   perform a sequence of operations on that detected structure" (Sabri Decl. Ex. B at 10-11), which

16   startActivity satisfies by launching an application with the detected structure filled in for use by

17   the application.

18         The Court's preliminary injunction order under the *Motorola* construction confirms that a

19   reasonable jury could conclude that the infringing devices satisfy this element.  As discussed, the

20   Court found that "clicking on a detected structure presents the user with a menu of options, any of

21   which, if clicked on by the user, *will perform the specified action*."  (Dkt. 221 at 36 (emphasis

22   added).)  Samsung is not entitled to JMOL on this issue.

23              **4.     A reasonable jury could conclude that the browser application of the
                        Jelly Bean Galaxy Nexus enables the selection of a detected structure.**

24         Dr. Mowry presented substantial evidence regarding how the relevant functionality and

25   related code of the Jelly Bean Galaxy Nexus browser satisfies this limitation.  As Dr. Mowry

26   testified and demonstrated, in the Jelly Bean Galaxy Nexus browser, a long press results in

27   selection of a structure only after the structure has been detected, satisfying the claim element by

28

1  enabling selection of an already detected structure.  (Tr. 865:5-871:7 (Dkt. 1624); *id.* at 2793:2-

2  25 (4/22/2014); PDX88.40.)  This functionality was available for review by the jury via the

3  representative devices in evidence (JX 28-JX37), and the relevant code was also in evidence

4  (JX50A, JX51A, JX53A).  Accordingly, a reasonable jury could conclude that the browser of the

5  Jelly Bean Galaxy Nexus satisfies this limitation.

6  **D.  A Reasonable Jury Could Conclude That Claim 9 Is Not Obvious.**

7  To overcome the jury verdict rejecting its invalidity case, Samsung must establish that no

8  reasonable jury, drawing all inferences in Apple's favor, could find that Samsung failed to

9  establish obviousness by clear and convincing evidence.  *See Microsoft Corp. v. i4i Ltd. P'ship*,

10  131 S. Ct. 2238, 2242 (2011).  "Obviousness is a question of law based on underlying factual

11  findings:  (1) the scope and content of the prior art; (2) the differences between the claims and the

12  prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness."

13  *Kinetic Concepts*, 688 F.3d at 1360.  In reviewing a verdict of nonobviousness, a court must

14  "'presume that the jury resolved all factual disputes in favor of the prevailing party.'"  *Alexsam,*

15  *Inc. v. IDT Corp.*, 715 F.3d 1336, 1347 (Fed. Cir. 2013) (citation omitted).  "[W]hether the prior

16  art discloses the limitations of a particular claim is a question of fact to be determined by the

17  jury," *Kinetic Concepts*, 688 F.3d at 1363, as is motivation to combine, *Group One, Ltd. v.*

18  *Hallmark Cards, Inc.*, 407 F.3d 1297, 1304 (Fed. Cir. 2005).  The trial record makes clear that

19  Samsung is not entitled to JMOL on this issue.

20  ***First***, Dr. Jeffay admitted that Sidekick fails to anticipate, because it fails to disclose at

21  least (1) the specified connection required by the "linking actions" element and (2) a pop-up

22  menu of multiple actions.  (Tr. 3098:20-3099:6 (4/28/14).)  But Dr. Jeffay offered only

23  conclusory statements that it would have been obvious to add these missing elements to Sidekick.

24  *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) (rejecting

25  conclusory expert testimony on obviousness).  Further, Dr. Jeffay failed "to identify a reason that

26  would have prompted a person of ordinary skill in the art to combine the elements as the new

27  invention does."  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA,*

28  *Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010) ("*Transocean I*").  A reasonable jury could conclude

1  that Samsung failed to meet its burden of proving invalidity by clear and convincing evidence on

2  these grounds alone.

3      *Second*, the gaps in Sidekick to which Dr. Jeffay admitted were not the only elements

4  Sidekick failed to disclose.  Although the language of claim 9 requires detection of multiple

5  "structures," Dr. Mowry testified that Sidekick could detect only one structure:  phone numbers.

6  (Tr. 2801:13-2809:19 (4/22/14); *id.* at 3101:17-3104:14 (4/28/14).)  Mr. Frid-Nielsen—a witness

7  from the company that made Sidekick—confirmed this.  (*Id.* at 1721:12-1722:18 (Dkt. 1716).)

8  Dr. Mowry also showed the jury the relevant Sidekick code (PDX88.75), which was entered into

9  evidence (DX331), and explained how that code used only one pattern to detect phone numbers

10  (Tr. 2803:13-2809:6 (4/22/14); *id.* at 3101:17-24; 3106:11-3107:4 (4/28/14)).  In contrast,

11  Dr. Jeffay offered only conclusory testimony based on a screenshot from a demonstration of

12  Sidekick he put together nearly two decades after the fact.  (*Id.* at 1807:18, 1833:23-1834:6,

13  1835:1-12 (Dkt. 1717); SDX 2587.)  Dr. Jeffay did not address the Sidekick code that Dr. Mowry

14  explained to the jury.

15      The jury was again free to credit Dr. Mowry's testimony, rather than Dr. Jeffay's, and it

16  had every reason to do so, given that Dr. Jeffay's "demonstration" contained obvious errors, such

17  as Sidekick's supposed ability to automatically dial a number in Sweden based on a "+" code that

18  Sidekick did not even detect.  (Tr. 2806:3-2809:6 (4/22/14).)  *See Power-One, Inc. v. Artesyn*

19  *Techs., Inc.*, 599 F.3d 1343, 1352 (Fed. Cir. 2010) (in resolving conflicting evidence on

20  obviousness, jury was free to disbelieve defendant's expert and credit plaintiff's expert).

21      *Third*, although claim 9 requires *multiple* actions, Sidekick linked to only *one* action.

22  Many aspects of the claim language show that it requires plural "actions":  the preamble describes

23  a computer-based system for "performing actions," the claim requires an analyzer server "for

24  linking actions," and the claim also requires a pop-up menu of "linked actions."  (JX1 at 7:7-24,

25  7:53-55.)  The specification similarly explains that one of the problems in the prior art was that it

26  did not "enable the performance of other candidates actions," beyond dialing a phone number.

27  (Tr. 2809:20-2810:12 (4/22/14); JX1 at 1:68-65.)  Samsung nonetheless asserts that claim 9 does

28  not require multiple actions.  Samsung's position is inconsistent not only with the claim language,

but with Judge Posner's analysis:

> [T]he ability to link a structure to a single action still comports with the patent's plural reference, so long as other structures are linked to other actions.  An analyzer that links dates to the calendar and phone numbers to the phone book still "links structures to actions."

(Sabri Decl. Ex. B at 10-11 (Motorola Markman Order).)  This Court reached a similar conclusion in its preliminary injunction order:  "Both Judge Posner and the ITC *correctly* recognized that the 'linking' limitation refers to plural 'actions' and plural 'structures.'" (Dkt. 221 at 38 (emphasis added).)  Samsung's assumption that claim 9 requires only one linked action is simply wrong.

Claim 9's requirement of multiple actions is fatal to Samsung's obviousness defense, because Sidekick linked only one action:  dialing.  (Tr. 1722:16-18, 1723:7-19 (Dkt. 1716) (Frid-Nielsen); *id.* at 1806:23-1807:20 (Dkt. 1717) (Jeffay); *id.* at 2803:5-7, 2809:7 (4/22/14) (Mowry); *id.* at 3101:17-3104:14 (4/28/14) (Mowry); DX330 (Sidekick manual).)  Sidekick thus was like the prior art disclosed to the PTO in the specification of the '647 patent.  (JX1 at 1:68-65.)  Dr. Jeffay did not provide any evidence regarding how this critical gap in Sidekick might be satisfied.  While Samsung argues that it offered "evidence" that "adding additional actions, to the extent necessary, would have been obvious" (Mot. 16 n.2), Dr. Jeffay only testified that adding a pop-up menu to Sidekick would have been obvious.  He did not address combining additional actions with Sidekick's dialer.  (Tr. 1805:11-20, 1806:23-1807:20, 1810:2-1811:7 (Dkt. 1717).)  Accordingly, a reasonable jury could conclude that Samsung failed to present clear and convincing evidence on this point.

*Fourth*, Samsung's JMOL simply ignores—and thus has waived any response to— Dr. Mowry's testimony that Sidekick failed to satisfy the user interface element because it did not enable "selecting a structure."  (Tr. 923:14-924:14 (Dkt. 1624); *id.* at 2802:17-18 (4/22/14); *see also id.* at 1836:18-1839:18 (Dkt. 1717).)  This is yet another ground on which a reasonable jury could conclude that Sidekick did not render claim 9 obvious.

*Finally*, Samsung's argument that Apple failed to offer any evidence on objective indicia of nonobviousness is both irrelevant and wrong.  (Mot. 15-16.)  A patentee is not required to

1  provide such evidence where, as here, an infringer failed to establish a *prima facie* case of

2  obviousness.  *See, e.g.*, *Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1350 (Fed. Cir.

3  2000).  Nevertheless, Apple presented both testimonial and documentary evidence regarding

4  Google's need for the invention and Samsung's copying of the inventors' article and the iPhone's

5  "data detectors" functionality (Tr. 878:9 -883:10, 887:8-891:4 (Dkt. 1624); PX106; PX107;

6  PX116; PX146; *see also* Tr. 789:23-803:1 (Dkt. 1624)), as well as testimony regarding the

7  innovative aspects of the invention (*id.* at 831:14-832:19 (Dkt. 1624)).  *See, e.g., Transocean*

8  *Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir.

9  2012) ("*Transocean II*") (indicia of nonobviousness include commercial success, industry praise,

10 unexpected results, copying, industry skepticism, and long-felt need).  Samsung also ignores that

11 the specification of the patent highlights the failure of others, by noting that the prior art (like

12 Sidekick) offers only one action:  dialing. (Tr. 2809:22-2810:12 (4/22/14); JX1 at 1:68-65.)

13 Given Samsung's failure to offer clear and convincing evidence on all of the issues discussed

14 above, the jury was entitled to conclude that the asserted claim of the '647 patent is not obvious.

15 **II.     SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 8 OF THE '721 PATENT.**

16       **A.     A Reasonable Jury Could Conclude That Claim 8 Is Not Obvious.**

17       Samsung is not entitled to JMOL of obviousness of claim 8 of the '721 patent because a

18 reasonable jury could conclude that (1) Neonode and Plaisant do not disclose all claim elements,

19 (2) a person of ordinary skill in the art would not have been motivated to combine Neonode and

20 Plaisant, and (3) objective indicia of nonobviousness confirm the validity of Apple's slide to

21 unlock invention—each of which independently requires denial of JMOL.  As discussed above

22 (*see supra*, Section I.D), Samsung bears the burden of establishing obviousness by clear and

23 convincing evidence, drawing all inferences in Apple's favor.  *Microsoft*, 131 S. Ct. at 2242.

24              **1.     A reasonable jury could conclude that Neonode and Plaisant do not
                         disclose all claim elements.**

25

26       Apple offered extensive expert testimony at trial showing that Neonode and Plaisant, even

27 if combined, fail to disclose all elements of claim 8.  Neonode describes unlocking a mobile

28 phone using a "right sweep" gesture, but fails to disclose several key claim elements relating to an

1   "unlock image" and its movement.  (*Compare* DX342 at 13 (Neonode manual), *with* JX10 at 28

2   ('721 patent).)  As Dr. Cockburn explained, "the Neonode Guide is clearly lacking many

3   elements of the claim," including that there was "no predefined location corresponding to an

4   unlock image," "no continuous movement of an unlock image," "no unlocking the device if the

5   image is moved from one location to another," and "no visual cues communicating the direction

6   of movement" since "there's no image to move."  (Tr. 2864:25-2865:11 (4/22/14).)  Plaisant,

7   which concerns a touchscreen user interface for turning on and off large home appliance systems

8   such as air conditioning units or heaters, fails to supply these missing claim elements because

9   Plaisant does not disclose locking and unlocking a portable electronic device.  (*See id.* at 2865:23-

10  2867:5; DX344 at 1-2; *see also* DX343.)  Plaisant therefore lacks the same key claim elements as

11  Neonode relating to an "unlock image" and its movement.

12       Dr. Greenberg offered only a brief, conclusory analysis of the combination of Neonode

13  and Plaisant.  (Tr. 1975:4-1976:1 (Dkt. 1717).)  He asserted—without explanation, and contrary

14  to the facts—that "the only thing the Neonode phone is missing is the unlock image" and "that's

15  provided by Plaisant."  (*Id.* at 1975:14-20.)  Dr. Greenberg did not explain why he believed

16  Neonode disclosed the key claim elements relating to the movement of the unlock image.  Nor

17  did he explain why he believed Plaisant—which on its face does not concern unlocking

18  anything—disclosed an "unlock image."  (*See* DX344 at 1-2.)

19       Where, as here, the parties offered "conflicting expert testimony, the jury was free to

20  'make credibility determinations and believe the witness it consider[ed] more trustworthy.'"

21  *Kinetic Concepts*, 688 F.3d at 1362 (citation omitted).  In light of the jury's verdict that claim 8 is

22  valid, the Court "must infer that the jury found [Dr. Cockburn] to be credible and persuasive" in

23  testifying that the cited prior art did not disclose key claim elements.  *Id.*  Dr. Cockburn's

24  testimony constitutes substantial evidence supporting the jury's nonobviousness finding.  On this

25  record, it would be error for this Court to "fail[] to defer to the jury's factual findings and grant[]

26  JMOL on obviousness."  *Id.* at 1371.

27

28

### 2.  A reasonable jury could conclude that a person of ordinary skill in the art would not have been motivated to combine Neonode and Plaisant.

In addition to showing that prior art references disclose the claim limitations, "'it can be important to identify a reason that would have prompted a person of ordinary skill in the art to combine the elements as the new invention does.'"  *Transocean I*, 617 F.3d at 1303 (citation omitted).  A reasonable jury could find a lack of motivation to combine Neonode and Plaisant, which is an independent ground to deny JMOL.  *See Group One*, 407 F.3d at 1304 (reversing JMOL of obviousness in view of conflicting expert testimony on motivation to combine).

Dr. Cockburn identified two reasons why a person of ordinary skill would not have been motivated to combine Neonode and Plaisant.  *First*, he testified that Plaisant described "toggle designs" intended to be used with a "touch screen [that] would be mounted into a wall or into cabinetry" for controlling "office or home appliances, like air conditioning units or heaters."  (Tr. 2865:20-23 (4/22/14).)  A reasonable jury could infer from this testimony that an ordinary artisan would not have been motivated to combine elements from a wall-mounted touchscreen for home appliances and a smartphone, particularly in view of the "pocket dialing" problem specific to mobile devices that Apple's invention sought to address.  (*See* Dkt. 221 at 51 (Order on Preliminary Injunction) ("It is not clear that it would have been obvious to someone of ordinary skill in the art to apply Plaisant to solve the unique problems of handheld devices such as cell phones.").)

*Second*, Dr. Cockburn testified that Plaisant "teach[es] away from the use of sliding," it "tells you not to use the sliding mechanism."  (Tr. 2865:24-25 (4/22/14).)  Cockburn explained that Plaisant teaches that sliders are among "the least preferred" toggle mechanisms, and "tells us that toggles that are pushed seem to be preferred over toggles that slide; and the sliding is more complex than simply touching; and also that sliders are harder to implement."  (*Id.* at 2866:8-16; *see* DX344 at 2.)  Dr. Cockburn therefore concluded that an ordinary artisan would not have been motivated to combine these references.  (Tr. 2866:17-21 (4/22/14).)

Samsung ignores Dr. Cockburn's testimony in favor of carefully selected snippets from Plaisant that, when viewed in the light most favorable to *Samsung*, purportedly show that Plaisant

1   does not "teach away" from the use of sliders in smartphones.  This turns the legal standard of

2   Rule 50(b) on its head.  Viewed in the light most favorable to *Apple*, Plaisant clearly teaches

3   away from the use of sliders by stating that "sliders were not preferred," "sliding is a more

4   complex task," and "sliders are more difficult to implement."  (DX344 at 2.)  Any "ambivalence

5   in Plaisant about sliders" (Mot. 18) cuts against Samsung under the applicable Rule 50(b)

6   standards.[3]  Substantial evidence therefore supports the jury's implied finding that an ordinary

7   artisan would not have been motivated to combine Neonode and Plaisant.

8                   **3.       A reasonable jury could conclude that secondary considerations of
                        nonobviousness preclude an obviousness determination.**

9

10   Evidence of secondary considerations of nonobviousness—such as commercial success,

11   industry praise, copying, and long-felt but unsolved need—"'may often be the most probative and

12   cogent evidence in the record'" as it "'may often establish that an invention appearing to have

13   been obvious in light of the prior art was not.'"  *Transocean II*, 699 F.3d at 1349 (citation

14   omitted); *see id.* at 1349-54.  The substantial evidence of secondary considerations in the record

15   provides an independent ground to deny JMOL.

16   Numerous trial exhibits reflect praise for Apple's slide to unlock invention, which is

17   practiced by the iPhone.  (*See, e.g.*, PX118; PX119; PX180; *see also* Tr. 634:19-635:25 (Dkt.

18   1623) (Cockburn).)  One exhibit, prepared by Samsung's European design team in June 2009,

19   called Apple's slide to unlock invention a "[c]reative way[] of solving UI complexity."  (PX119

20   at 11; *see also* Tr. 648:6-649:21 (Dkt. 1623) (Cockburn).)  Other such exhibits include the

21   January 2007 MacWorld video featuring Steve Jobs' live demonstration of slide to unlock to a

22   ─────────────────────

23           [3]  *In re Kubin*, 561 F.3d 1351 (Fed. Cir. 2009), cited by Samsung, supports Apple.  There,
     the Federal Circuit affirmed a finding that the prior art did not teach away, because the finding

24   was supported by "substantial evidence," even though "some data" supported a contrary finding.
     *Id.* at 1357.  Here, too, substantial evidence supports the jury's implied finding notwithstanding

25   any "ambivalence" in Plaisant.  In *Galderma Laboratories, LP v. Tolmar, Inc.*, 737 F.3d 731, 736
     (Fed. Cir. 2013), the court addressed a claimed invention that fell within a range disclosed in the

26   prior art—it used a 0.3% concentration of a drug when the prior art disclosed using that same
     drug for the same purpose in a preferred range of 0.01%–1%.  In that unusual and inapposite

27   circumstance, the Federal Circuit placed the burden on the *patentee* to establish a "teaching
     away," and concluded that the patentee's citation of prior art indicating 0.1% was "optimal"
     failed to show teaching away of using 0.3%.  *Id.* at 738-39.

28

1   delighted audience (PX118 at 41:40-42:01; *see* Tr. 2868:23-2869:2 (4/22/14)), and an iPhone

2   commercial prominently demonstrating the slide to unlock feature (PX180 at 00:19-21).

3          Samsung's own documents also reflect its copying of Apple's slide to unlock invention.

4   For example, a May 2010 Samsung development document recommended modifying Samsung's

5   unlocking method to make it the "[s]ame as iPhone" and "clarify the unlocking standard by

6   sliding." (PX121 at 100.)  Many other exhibits—which Dr. Cockburn discussed at length during

7   his testimony (Tr. 638:22-650:3 (Dkt. 1623); *id.* at 2900:4-2902:3 (4/25/14))—similarly reflected

8   Samsung's copying.  (*See, e.g.*, PX120 at 28, 84; PX157 at 19, 20; PX219 at 14.)

9          Apple also introduced evidence of a long-felt but unmet need for its invention.  For

10  example, Dr. Cockburn testified that phone designers had been trying to solve the problem of

11  accidental activation for a long time before the iPhone, but had only come up with frustrating

12  solutions, like those involving a series of hard key presses.  (Tr. 636:14-637:3 (Dkt. 1623);*id.* at

13  2869:3-10 (4/22/14).)  Finally, Apple provided evidence of commercial success, including

14  Dr. Cockburn's testimony that "clearly there's been commercial success both of the iPhones that

15  use this invention, and for the devices that have copied the technique."  (Tr.  2868:20-22

16  (4/22/14); *see also* PX142; PX143.)  Samsung is wrong that Apple failed to establish a nexus

17  between commercial success and the invention.  Dr. Hauser's survey results showed a significant

18  difference in consumer demand between tablets with the patented features and tablets without

19  them (PX141 at 8), which is sufficient to establish the required nexus.[4]  *See Transocean II*, 699

20  F.3d at 1350 (evidence that invention "commanded a market premium" over non-infringing

21  alternative established nexus).

22         A reasonable jury could conclude from this evidence that Samsung failed to prove by

23  clear and convincing evidence that claim 8 is obvious.

24

25  ───────────────────

26      [4] Samsung's argument about the popularity of the non-accused Galaxy S III is irrelevant.
    That fact alone says nothing about the commercial success of products practicing claim 8 versus
    products not practicing claim 8.  In any event, this is the same argument that Samsung made to
27  the jury (*see, e.g.*, Tr. 717:5-9 (Dkt. 1623)), and which the jury impliedly rejected in reaching its
    verdict.

28

**B.    Samsung Failed To Prove That Claim 8 Is Indefinite.**

Samsung failed to establish by clear and convincing evidence that claim 8 is indefinite. Samsung purported to identify indefiniteness in the Joint Pretrial Statement as an issue to be tried. (Dkt. 1336 at 23.)  However, Samsung failed to offer any evidence or testimony to support this defense at trial.  If there were any factual dispute over indefiniteness, Samsung waived it by failing to raise the issue at trial. *See Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1317 (Fed. Cir. 2005) (indefiniteness defense waived when not pursued at jury trial).

Unable to point to any facts (including any expert opinion) supporting its position, Samsung relies on conclusory attorney argument that the term "unlock" is indefinite.  Samsung's argument fails.  "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, No. 13-369, 2014 WL 2440536, at *2 (U.S. June 2, 2014).  The Court's preliminary injunction order has already concluded that the term "unlock" is definite, rejecting the same indefiniteness arguments that Samsung now makes in its JMOL motion.  (*See* Dkt. 221 at 52.)  For example, the Court determined that "the specification provides a definition that establishes when a device is 'locked' and when it is 'unlocked,'" and that "[t]he specification describes what 'most, if not all, user input' means."  (*See id.* (quoting JX10 at 7:64-8:45).)  The Court should reject Samsung's arguments again, as the prior ruling makes clear that the claim is not indefinite under *Nautilus*.

Further, the trial record confirms that claim 8 is not indefinite.  Dr. Cockburn, a person of ordinary skill in the art (*see* Tr. 621:12-19, 629:8-13 (Dkt. 1623)), testified that he had "no difficulty at all in understanding the difference between a locked state and an unlocked state." (*Id*. at 634:15-18.)  He testified that the term "unlock" is clear under "the plain and ordinary meaning," but that "if clarification is required, the specification clearly states that when the device is locked, a predefined set of actions is unavailable [and] the device will ignore most, if not all, input."  (*Id*. at 633:7-11.)  Samsung's expert offered no contrary testimony.  In fact, it was plain that Dr. Greenberg also understood the meaning of the term, as he had no difficulty

1    explaining locking and unlocking when discussing the prior art (*id*. at 1967:1-1968:21 (Dkt.

2    1717)) and non-infringing alternatives (*id*. at 1982:6-16).  Samsung accordingly fails prove by

3    clear and convincing evidence that the term "unlock," read in the light of the specification,

4    "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the

5    invention."  *Nautilus*, 2014 WL 2440536, at *2.

6       **C.    A Reasonable Jury Could Conclude That Samsung Infringed Claim 8.**

7          **1.    A reasonable jury could conclude that the Galaxy Nexus infringes.**

8          Samsung's JMOL arguments regarding the Galaxy Nexus are based on the same narrow

9    construction of "unlock image" that the Court rejected in its preliminary injunction order.  Then,

10    as now, Samsung argued that "the term 'unlock image' must refer to the same single 'unlock

11    image'" because the claims first refer to "*an* unlock image" and then refer to "*the* unlock image."

12    (Dkt. 221 at 44; *see* Mot. 19.)  The Court rejected Samsung's proffered construction, concluding

13    that (1) a dependent claim requires that the "unlock image" be a "single image" and, under the

14    claim differentiation doctrine, the independent claim must be construed more broadly to

15    encompass multiple unlock images, and (2) Samsung's construction contradicted the

16    specification.  (Dkt. 221 at 45.)  Samsung then made the strategic decision not to ask the Court to

17    construe the term "unlock image" (Dkt. 335), instead asking the Court to instruct the jury to

18    "apply the claim language's plain and ordinary meaning."  (Dkt. 1340 at 59.)

19          Samsung now attempts to pass off its rejected construction as "plain meaning," but its

20    arguments at the preliminary injunction phase, and the Court's rejection of Samsung's proffered

21    construction, make clear that Samsung seeks claim construction.  The Court should reject

22    Samsung's invitation to engage in post-trial claim construction to narrow the term "unlock

23    image" in accordance with the construction the Court previously rejected:

24          [T]he parties cannot reserve issues of claim construction for the
          stage of post-trial motions.  When issues of claim construction have
25          not been properly raised in connection with the jury instructions, it
          is improper for the district court to adopt a new or more detailed
26          claim construction in connection with the JMOL motion.

27    *Hewlett-Packard Co. v. Mustek Sys*., *Inc.*, 340 F.3d 1314, 1320-21 (Fed. Cir. 2003).  The Court

28    should deny JMOL on that ground alone.

In addition, the jury was entitled to reject Samsung's contention that an "unlock image" must consist of the same, single image.  Both parties presented expert testimony on infringement under conflicting views of the plain meaning of the term "unlock image."  In walking through the elements of each claim, Dr. Cockburn testified that when the user contacts the unlock image in the Ice Cream Sandwich version of the Galaxy Nexus, "the image will animate, it'll change its representation slightly, it'll then move continuously with the finger, and it'll unlock when it reaches the unlock region."  (Tr. 676:20-23 (Dkt. 1623).)  Similarly, Dr. Cockburn testified that, in the Jellybean version, "the image changes slightly" to a "spotlight effect on the dots on the background," but otherwise operates the same as the Ice Cream Sandwich version.  (*Id.* at 677:2-5.)  In contrast, Dr. Greenberg, provided virtually no support for his position that an "unlock image" must consist of the same, single image.  (*Id.* 1980:25-1981:8 (Dkt. 1717).)

The jury was free to weigh the experts' testimony and determine for itself whether the Galaxy Nexus contains an "unlock image" under the plain meaning of that term.[5]  *See Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008) (affirming denial of JMOL of infringement where expert testimony on plain meaning of claim term was sufficiently broad to encompass accused device).  Substantial evidence supports the jury's implied finding that it does.

### 2.  A reasonable jury could conclude that the infringing devices contain "instructions."

Samsung's three-sentence argument seeking JMOL of non-infringement on all devices is based on the erroneous premise that Apple offered no evidence of "instructions."  (Mot. 21.)  Dr. Cockburn testified that, as computing devices, all accused products have "instructions" (i.e., software).  (Tr. 659:20-2 (Dkt. 1623).)  The presence of such "instructions" is apparent from the

_____

[5] Contrary to Samsung's argument (Mot. 20), Apple did offer "evidence that the 'unlock image' in the Galaxy Nexus was, in fact, a graphical user interface object that actually changed form."  Dr. Cockburn demonstrated how the unlock image changes appearance using representative Galaxy Nexus devices.  (*See* PDX44, PDX46; JX29BD, JX29-D; Tr. 676:17-677:5 (Dkt. 1623).)  As Dr. Cockburn explained, source code is not required to prove this element because "these patents address the behavior of the device at its user interface, and they do not speak to any particular requirement in the form of instructions."  (Tr. 626:8-11 (Dkt. 1623).)  As he further explained, the Jelly Bean version of the Galaxy Nexus meets the "continuously move" element because a "spotlight effect on the dots" moves in accordance with the user's contact.  (*Id.* at 677:1-12.)

devices themselves because the user-interface operations needed to unlock a device would not function without instructions running those operations.

### D. A Reasonable Jury Could Conclude That Samsung's Infringement Was Willful.

#### 1. Samsung's defenses were not objectively reasonable.

The central inquiry under the objective prong of *Seagate* is, "based on the record ultimately made in the infringement proceedings, whether a 'reasonable litigant could realistically expect' [its] defenses to succeed." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) (citation omitted). Samsung cannot meet that standard.

***Samsung's Obviousness Defense.*** A reasonable litigant could not realistically expect Samsung's sole invalidity defense asserted at trial—the supposed obviousness of claim 8 in view of Neonode and Plaisant—to succeed. *Samsung's own documents* contradicted this defense. For example, Samsung documents described the iPhone's slide to unlock feature as a "[c]reative way[] of solving UI complexity" (PX119 at 11) and recommended that Samsung make its unlocking method the "[s]ame as iPhone" (PX180 at 100). (*See also supra,* Section II.A.3.) This evidence weighs in favor of finding objective willfulness. *See Tryker Corp. v. Zimmer Inc*., No. 1:10-CV-1223, 2013 U.S. Dist. LEXIS 171817, at *40-41 (W.D. Mich. Aug. 7, 2013) (invalidity defense objectively unreasonable where defendant "acknowledged [plaintiff's] inventions to be 'pioneering'" and "all-but instructed its design team to copy").

As Samsung's expert conceded at trial, the PTO had considered the relevant disclosures from Neonode and Plaisant and issued claim 8 over them. (Tr. 1996:13-1998:2 (Dkt. 1717) (Greenberg).) The PTO's prior rejection of Samsung's invalidity defense also weighs in favor of finding objective willfulness. *SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 503-04 (E.D. Tex. 2013); *Bard Peripheral Vascular, Inc. v. W. L. Gore & Assocs., Inc.*, No. CV 03-0597-PHX-MHM, 2013 U.S. Dist. LEXIS 149987, at *32 (D. Ariz. Oct. 16, 2013).

This Court also previously concluded during the preliminary injunction phase that Samsung was not likely to succeed on its obviousness defense because (1) Plaisant failed to disclose several key elements of claim 8, (2) Plaisant could not be combined with "a handheld

electronic device" because "[t]he Plaisant reference was a terminal from which large devices such as heaters and home security systems were connected and controlled," and (3) it was "not clear that it would have been obvious to someone of ordinary skill in the art to apply Plaisant to solve the unique problems of handheld devices such as cell phones." (Dkt. 221 at 51.)  A reasonable litigant could not expect its invalidity defense to succeed in view of this ruling.  *Cf. Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 585 (6th Cir. 2007) ("In copyright cases, it is unreasonable to rely on a defense to infringement after a court rejects it on the merits.").

*Samsung's non-infringement defense*.  A reasonable litigant also could not have expected Samsung's non-infringement defense to succeed.  Samsung presented *no* infringement defense for five of the six accused products at trial, and its expert spent less than three minutes on the single product it did defend.  (Tr. 1981:1-1982:1 (Dkt. 1717) (Greenberg).)  That defense turned on an unsupported construction of the term "unlock image" that the Court had previously rejected on the merits during the preliminary injunction phase as inconsistent with the patent specification and claim differentiation doctrine.  (Dkt. 221 at 44-55.)  This fact supports finding objective unreasonableness.  *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012) (claim construction that "ignored the entirety of the specification and the prosecution history, and thus was unsupported by the intrinsic record, was frivolous and supports a finding of bad faith").

### 2.     Substantial evidence supports the jury's willfulness finding.

*Seagate* recognizes that post-filing activity can give rise to a willfulness claim where, as here, a patentee was "denied a preliminary injunction despite establishing a likelihood of success on the merits."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (en banc).  Samsung is wrong that "no evidence in the record" supports a finding of subjective willfulness based on Samsung's post-filing activity.  (Mot. 23.)  As Dr. Cockburn testified, Samsung continued to infringe claim 8 for nearly a year after Apple filed this lawsuit.  (Tr. 654:10-11 (Dkt. 1623) (Galaxy Nexus devices sold "through to the 28th of January 2013"); *see* PX222A at 7.)  Samsung's infringement persisted despite its having designed a non-infringing alternative called "circle unlock," which could have been immediately released to all infringing phones.  (Tr.

1  1984:18-1985:1 (Dkt. 1717) (Greenberg); *see id.* at 1335:10-17 (Dkt. 1715) (Vellturo).)  A

2  reasonable jury, viewing this evidence in the light most favorable to Apple, could infer that

3  Samsung intentionally chose to continue infringing after Apple filed suit in reckless disregard for

4  Apple's patent rights.  *See Sargent Mfg. Co. v. Cal-Royal Prods., Inc.*, No. 3:08-cv-408 (VLB),

5  2012 U.S. Dist. LEXIS 23852, 30-31 (D. Conn. Feb. 24, 2012) (fact that infringer "created a new

6  design . . . to avoid infringement, and yet continued to sell the allegedly infringing design" for

7  about a year after suit sufficient to support willfulness verdict).  That is particularly true in light

8  of evidence that Samsung's design-round was commercially inferior, which supports an inference

9  that Samsung deliberately chose infringement over substituting an inferior, non-infringing unlock

10  mechanism.  (PX181 at 5 (Verizon "showed negative response towards our company's circle lock

11  playing the role of the visual cue."); Tr. 684:22-686:20 (Dkt. 1623) (Cockburn).)

12      Samsung's deliberate copying of the iPhone lends further support to the jury's finding of

13  willfulness.  *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1225-26 (Fed. Cir.

14  2006) (affirming jury's finding of willful infringement based on evidence of copying).

15  Samsung's decision to copy, despite Apple's notice to the world that it had applied for over 200

16  patents relating to the new device (*see* PX118), constitutes exactly the kind of high risk behavior

17  from which a reasonable jury could infer that Samsung knew or should have known that its

18  actions risked infringing a valid Apple patent.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.

19  Ct. 2060, 2071 (2011) (affirming finding of inducement, which requires higher *mens rea* of

20  willful blindness, based in part on infringer's "decision to copy" patented product).  Samsung's

21  criticisms of Apple's copying evidence are without merit, and in any event, go to issues of weight

22  and credibility that fall within the exclusive province of the jury.

23  **III.      SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 18 OF THE '172 PATENT.**

24      Samsung's motion for JMOL of obviousness of claim 18 fails for two independent

25  reasons.  ***First***, a reasonable jury could conclude that Robinson and Xrgomics do not disclose all

26  elements of claim 18.  Dr. Cockburn testified that "there are a series of elements that are missing"

27  from Robinson, and that Xrgomics "does not fill these gaps" because "some of the same elements

28  are missing in both of the disclosures."  (Tr. 2904:1-221 (4/25/14).)  Specifically, both disclosures

1    are missing the element, "the current character string in the first area is replaced with the

2    suggested replacement string when the user presses a delimiter." (*Id.* at 2904:19-21, 2905:21-

3    2906:2.) Xrgomics does not have this element because it is a "word completion" system rather

4    than a "spelling correction" system. (*Id.* at 2904:22-2905:17 (4/25/14); *see also* PDX97.124A.)

5    Robinson does not have it either. (Tr. 2904:1-15 (4/25/14); *see also* PDX97.123.)

6         Samsung's expert, Dr. Wigdor, admitted that Robinson does not disclose the first claim

7    element requiring that the current character string appear in a first display area. (Tr. 2016:18-24

8    (Dkt. 1717).) This necessarily means that Robinson does not disclose replacing the current

9    character string in the first area with a suggested replacement string, as there is nothing in the first

10   area to replace. Dr. Wigdor nevertheless testified that the combination of Robinson and

11   Xrgomics disclosed all elements because Xrgomics contains a current character string in a first

12   area. (*Id.* at 2018:11-19 (Dkt. 1717).) But Dr. Wigdor ignored the fact that neither Robinson nor

13   Xrgomics teaches replacing a current character string in a first area with a suggested replacement

14   string. (*See id.*)

15        The jury was free to examine the prior art (DX492, JX59), weigh the credibility of each

16   witness, and decide whether Samsung had proven by clear and convincing evidence that

17   Robinson and Xrgomics disclose all claim elements. *See, e.g.*, *Kinetic Concepts*, 688 F.3d at

18   1363. The jury found that Samsung failed to meet that burden, and substantial evidence supports

19   that finding. Because Robinson and Xrgomics do not disclose all claim elements, Samsung

20   cannot make out a *prima facie* case of obviousness.

21        **Second,** a reasonable jury could conclude that objective considerations of nonobviousness

22   preclude an obviousness determination. Both parties' experts agreed that Samsung's sales of 7.5

23   million infringing devices that practice claim 18 constituted evidence of commercial success. (Tr.

24   2036:13-19 (Dkt. 1717) (Wigdor); *id.* at 2906:6-9 (4/25/14) (Cockburn).) Dr. Hauser's survey

25   established the required nexus by showing that consumers demand products that practice the

26   claimed invention to those containing a non-infringing alternative. (PX141 at 9.) Dr. Cockburn

27   also testified regarding praise for the '172 invention, as reflected in Samsung's own documents

28   and in comments from carriers. (Tr. 698:5-700:10 (Dkt. 1623); *id.* at 2906:10-13 (Dkt. 4/21/14);

PX168 at 7; PX169 at 1, 4.)  For example, Dr. Cockburn discussed PX168—a Samsung document reflecting T-Mobile's request that Samsung modify its autocorrect technology to adopt the functionality of claim 18.  (PX168 at 7; Tr. 700:4-10 (Dkt. 1623).)

A reasonable jury could conclude from this evidence that claim 18 is not obvious.

## IV.     SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 25 OF THE '959 PATENT.

Substantial evidence supports the jury's verdict that Samsung failed to prove invalidity of claim 25 of the '959 patent by clear and convincing evidence.  A reasonable jury could conclude that the freeWAIS-sf source code Samsung cited as prior art does not anticipate claim 25, and that the Smith and Shoham combination does not render claim 25 obvious.  Samsung may not re-raise the indefiniteness arguments from its unsuccessful summary judgment motion, but Samsung failed to prove indefiniteness in any event.

### A.     A Reasonable Jury Could Conclude That FreeWAIS-Sf Did Not Anticipate Claim 25.

Anticipation is a question of fact to be determined by the jury.  *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1351 (Fed. Cir. 2012), *cert. denied*, 133 S. Ct. 2010 (2013).   Samsung had the burden to prove anticipation by clear and convincing evidence.  *See Microsoft*, 131 S. Ct. at 2242.

#### 1.     A reasonable jury could conclude that the freeWAIS-sf code did not satisfy the "computer readable medium" with "program instructions" preamble.

Claim 25 is directed to a "computer readable medium for locating information from a plurality of locations containing program instructions to" carry out the claim elements.  (JX4 at 9.)  None of the terms in that phrase was construed, and therefore each must be afforded its plain and ordinary meaning.  (Dkt. 1847 at 30.)  The record contains substantial evidence that the freeWAIS-sf source code did not meet this element.

Samsung emphasized repeatedly that it was relying solely on freeWAIS-sf *source code* as prior art, not a compiled version of the code or a system in existence prior to the '959 priority date.  (Tr. 2915:13-15 (4/25/14) (Rinard) ("Q:  Can you remind us what prior art you relied upon for your opinions on the WAIS system?  A:  That's the WAIS source code."); *see also id.* at

1   1914:6-9, 1929:1-6 (Dkt. 1717) (Rinard).)  Apple responded with testimony from Dr. Snoeren

2   supporting the conclusion that source code is not computer readable.  (*Id.* at 2824:16-21 (4/22/14)

3   ("[T]he way source code works is that's for humans to read and write.  Computers don't actually

4   execute source code.  So in order to get program instructions, you have to compile that code.  So

5   the source code itself wouldn't actually even meet the preamble of the claim.").)  Samsung put

6   forward no contrary evidence.  The jury could reasonably have agreed with Apple that the source

7   code Samsung cited did not constitute a computer readable medium containing "program

8   instructions" to do anything.  *Cf. Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262

9   (Fed. Cir. 2013) (whether "computer instructions" included source code was factual issue).

10      Samsung cites Dr. Rinard's testimony that "'instructions in the source code are what

11  invalidate[] the claims, not the compiled source code'" (Mot. 30), but the jury had good reason

12  not to accept Dr. Rinard's testimony, as it contradicts the plain and ordinary meaning of the claim

13  language.  Claim 25 refers to "program instructions," which must be readable by a computer in

14  executing a "program."  In contrast, source code is human readable and cannot be read by a

15  computer or executed by the computer until after it is compiled into program instructions.

16      At most, Dr. Rinard's testimony disputes Dr. Snoeren's testimony that source code cannot

17  serve as "program instructions," but the jury was free to resolve this dispute in Apple's favor.

18  Samsung argues that the jury could not have credited Dr. Snoeren's testimony on this point

19  because he presented source code to the jury as part of his infringement analysis, but that suggests

20  contradiction where there is none.  Dr. Snoeren reviewed source code to see how the program

21  instructions on the computer readable medium operate (because source code is human readable

22  while the object code is machine readable), but he explained that the "computer readable

23  medium" was the accused products' "flash memory" (Tr. 949:12-18 (Dkt. 1624)), which would

24  contain compiled, computer readable object code.  By contrast, Dr. Rinard relied *solely* on the

25  source code and pointed to no "computer readable medium" with compiled code containing

26  program instructions that would meet the claim elements.

27      Samsung claims that Apple agreed with Dr. Rinard's position in the parties' glossary

28  definition for the term "source code" (Mot. 30), but that definition is consistent with Apple's

1   position: "written instructions for a computer, mobile phone, or tablet *that can be read by a*

2   *person*." Apple never agreed that source code is machine readable program instructions.

3       Samsung also claims to have presented evidence that "WAIS source code (DX301) was

4   compiled, installed, and executed in the United States." (Mot. 29.) But Samsung fails to identify

5   any specific instance of such a configuration that would operate according to Dr. Rinard's

6   demonstration system. Even if it had, a single isolated installation of WAIS source code would

7   not, without more, anticipate claim 25. For example, an installation on a single machine would

8   not possess the purported "plurality of heuristics" to which Dr. Rinard referred, and would not

9   have the ability to locate information in a plurality of locations that includes both the Internet and

10  local storage media. Dr. Rinard admitted he never found or analyzed a system that had the source

11  code "installed, executable, and running" the way that he demonstrated it. (*Id.* at 1953:8-25.)

12  Thus, a reasonable jury could reject Samsung's argument that compiled instructions based on

13  WAIS existed in the United States in the configuration required to anticipate claim 25.

14      For all of these reasons, a reasonable jury could conclude that the freeWAIS-sf source

15  code was not a computer readable medium with program instructions.

16      **2.    A reasonable jury could conclude that the freeWAIS-sf code was not a
               "plurality of heuristics to locate information in the plurality of**

17      **locations which include the Internet and local storage media."**

18      Claim 25 requires a "plurality of heuristics to locate information in the plurality of

19  locations which include the Internet and local storage media." Even looking to Dr. Rinard's 2013

20  system, built using the claim as a roadmap, the jury could conclude that freeWAIS-sf failed to

21  meet this element because (1) rather than the requisite plurality of heuristics, his demonstration

22  system used the same heuristics on two machines, and (2) heuristics that are only on a remote

23  machine, rather than the local device, do not satisfy the claim requirement for a heuristic on the

24  computer readable medium for locating information from locations that include the Internet.

25      Samsung failed to prove that freeWAIS-sf, once compiled as program instructions on a

26  computer readable medium, includes a "plurality" of heuristics to locate information in the

27  "plurality" of locations. As Dr. Snoeren explained, Dr. Rinard created his freeWAIS-sf system

28  by compiling the same source code on two different machines. (Tr. 2825:12-25 (4/22/14).) As a

1    result, Dr. Rinard's attempt did not lead to a *plurality* of heuristics for locating information from

2    the *plurality* of locations—rather, it led to the *same* heuristic or heuristics set on the local machine

3    and the remote machine for searching both locations.  (*Id.*)

4         Moreover, it is undisputed that freeWAIS-sf, once configured and compiled into

5    Dr. Rinard's "demonstration" system, does not include any heuristic *on the computer readable*

6    *medium* for locating information from locations that include the Internet.  As Dr. Snoeren

7    testified, "the instructions that do everything in [the claim elements] have to be on the medium,"

8    and "the devices that facilitate those things are all on that same device which contains the

9    medium," including the plurality of heuristics.  (*Id.* at 2822:13-23.)  Dr. Snoeren's testimony is

10   consistent with the claim language and the specification.  The claim language speaks of a single

11   medium and local storage media—not two separate systems in which the remote system has its

12   own medium and local storage media.  Figure 1 of the '959 patent similarly shows a single

13   processor, single local storage media, and single memory, which are connected to the Internet via

14   a LAN server, Internet router, and/or WAN router—it does not show a separate processor on the

15   Internet, instead of the computer readable medium as described in the claim, on which certain of

16   the heuristics could be run.  (JX4 at 2.)  The specification also explains that there was little

17   existing technology that "allows *the computer* to help the user determine such additional criteria

18   or to automatically provide additional criteria, so that search results have a higher percentage of

19   items that are of interest to the user."  (JX4 at 5 (emphasis added).)  A reasonable jury could

20   conclude that heuristics that are only on a remote machine, rather than the local device, do not

21   satisfy the requirements of the claim.

22        **B.      A Reasonable Jury Could Conclude That Claim 25 Is Not Obvious.**

23        Samsung barely even mentioned the Smith and Shoham references to the jury, much less

24   proved by clear and convincing evidence that the proposed combination met each and every

25   limitation of claim 25.  Dr. Rinard mentioned the references only briefly on direct, without any

26   element-by-element analysis, and then ignored them entirely in his rebuttal testimony.  (Tr.

27   1929:9-1932:9 (Dkt. 1717) (Rinard); *id.* at 2826:11-21 (4/22/14) (Snoeren).)  Dr. Rinard's

28   conclusory reference to prior art references, with no attempt to show how the combination

1    satisfies each element of the asserted claim, cannot be "clear and convincing" evidence of

2    obviousness.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328

3    (Fed. Cir. 2012) (affirming JMOL on validity where defendant's expert's obviousness testimony

4    "was conclusory and factually unsupported" and "failed to explain . . . how any specific

5    combination would operate or read on the asserted claims").

6           Samsung's reliance on Smith and Shoham fails for the independent reason that Samsung

7    did not prove that a person of ordinary skill would have had reason to combine the references.

8    Samsung's only evidence regarding a skilled artisan's motivation to combine the references was

9    one question to Dr. Rinard with a conclusory response:  "They would have been.  They're in the

10   same field.  They're attempting to solve similar problems.  They would have been motivated to

11   combine." (Tr. 1931:24-1932:5 (Dkt. 1717).)  In contrast, Dr. Snoeren explained that the two

12   patents are "about two entirely different things"—Smith concerned a set top box for a TV, while

13   Shoham was a theoretical mathematic patent concerning searches in a hyperlinked network

14   database.  (*Id.* at 2826:24-2827:16 (4/22/14).)  Dr. Snoeren further explained that the Shoham

15   patent described how to do searches "when you don't know what you're looking for, which is not

16   at all the situation in Smith or the way that Dr. Rinard described how that device worked."  (*Id.*)

17   He testified that, as a result, "it's not clear at all why you would use this mathematical

18   formulation from Shoham, which doesn't know what it's looking for, with the device from Smith,

19   which has a very particular domain." (*Id.* at 2827:17-20 (4/22/14).)  Motivation to combine is a

20   question of fact for the jury.  *Group One*, 407 F.3d at 1304.  A reasonable jury could agree with

21   Dr. Snoeren that a person of ordinary skill would not have combined Smith and Shoham.

22          Samsung also failed to prove that the Smith and Shoham combination would teach a

23   plurality of heuristics.  Dr. Snoeren testified that, like the freeWAIS-sf system that Dr. Rinard

24   created, "the Smith system, when it talks about searching in multiple locations, it uses the same

25   set of rules." (Tr. 2828:1-8 (4/22/14).)  Accordingly, as Dr. Snoeren explained, "if someone had

26   taken Shoham and decided to turn those rules into heuristics, it still would have run the same

27   heuristic in those different locations.  So it [] wouldn't have had a plurality of heuristics."  (*Id.*)  A

28   reasonable jury could conclude that Samsung did not carry its burden of showing that the Smith

1    and Shoham combination would teach a plurality of heuristics.

2            Finally, Samsung's argument that Dr. Snoeren's obviousness opinions "cannot be

3    considered" as a matter of law because he did not discuss secondary considerations (Mot. 32) is

4    wrong.  Samsung relies on *Transocean I*, but that case held that a *district court* must consider

5    secondary indicia before finding a claim *invalid*, 617 F.3d at 1305, not that an expert must discuss

6    secondary indicia before opining that a claim is not obvious.  Indeed, where, as here, a defendant

7    fails to present a *prima facie* case of obviousness, a patentee is not required to establish secondary

8    considerations.  *See, e.g.*, *Winner Int'l*, 202 F.3d at 1350.

9        **C.    The Condition Set By The Court For Re-raising Indefiniteness Was Not Met,**
             **Although Samsung Failed To Prove Indefiniteness In Any Event.**
10

11           In denying Samsung's motion for summary judgment based on indefiniteness of the term

12   "heuristic," the Court stated that Samsung could re-raise the issue "should the term 'heuristic'

13   become central to Apple's attempts to distinguish the '959 patent from any prior art Samsung

14   asserts at trial."  (Dkt. 1150 at 33 n.11.)  That threshold requirement was not met, as the parties'

15   disputes regarding claim elements that referred to heuristics were not related to the definition of

16   "heuristic" or to whether something was or was not a heuristic.  Rather, Apple disputed whether

17   Samsung's cited prior art included a "*plurality* of heuristics," and where the heuristics were

18   located.  (*See supra*, Sections IV.A.2 and IV.B.)  The Court should thus disregard Samsung's

19   argument as an improper motion for reconsideration.

20           Even if the Court reconsiders Samsung's indefiniteness defense, it should deny JMOL, as

21   Samsung has not established by clear and convincing evidence that claim 25 is indefinite.  As

22   with the '721 patent, the Court has already rejected the arguments that Samsung rehashes in its

23   JMOL motion, and the Court's analysis on summary judgment was consistent with and applies

24   with equal force under the Supreme Court's new formulation for indefiniteness in *Nautilus*.

25   Under *Nautilus*, a patent is invalid for indefiniteness "if its claims, read in light of the

26   specification delineating the patent, and the prosecution history, fail to inform, with reasonable

27   certainty, those skilled in the art about the scope of the invention."  Nautilus, 2014 WL 2440536,

28   at *2.

1     The Court's summary judgment order described the purpose of the definiteness

2   requirement as "to ensure that the claims delineate the scope of the invention using language that

3   adequately notifies the public of the patentee's right to exclude."  (Dkt. 1150 at 29 (citing

4   *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).)  The Court's

5   construction of "heuristic" informs those skilled in the art about the scope of the invention with

6   reasonable certainty.  *See Nautilus*, 2014 WL 2440536, at *2.  The Court defined "heuristic" to

7   mean "some 'rule of thumb' that does not consist solely of constraint satisfaction parameters."

8   (Dkt. 1150 at 31.)  For example, a search that returns results based solely on whether a "name"

9   field matches a user-provided input would not be a heuristic because it consists solely of

10  "constraint satisfaction parameters."  (*Id*. at 32.)  Here, the parties were able easily to identify

11  searches that are heuristic, because the Court's construction is clear—where a search goes beyond

12  mere "constraint satisfaction parameters" and relies instead on a "rule of thumb," the search is a

13  heuristic.  The Court's conclusion that the precise boundary of "heuristic" is not critical in this

14  case also remains true, as Apple relies on other elements of the claim to distinguish it from the

15  prior art, as discussed above.

16      Further, as with the '721 patent, Samsung purported to identify the alleged indefiniteness

17  of the term "heuristic" in the Joint Pretrial Statement as an issue for trial.  (*See* Dkt. 1336 at 19.)

18  However, the trial testimony from both parties' experts, far from showing any ambiguity in the

19  term, reinforces the conclusion that "heuristic" adequately informed a person skilled in the art of

20  the scope of the invention with reasonable certainty.  As discussed above, Dr. Rinard had no

21  difficulty identifying heuristics in the prior art Samsung presented at trial, and Apple did not

22  dispute whether they were heuristics.  In fact, Dr. Rinard did not even suggest to the jury that the

23  term was ambiguous, or that it was arguable whether any of the heuristics at issue—in

24  infringement or validity—met the definition.  (*See, e.g.*, Tr. 1918:7-8 (Dkt. 1717) ("This

25  absolutely satisfies her honor's construction of heuristics.").)  Similarly, Dr. Snoeren had no

26  difficulty identifying heuristics in his infringement analysis, and Samsung did not dispute whether

27  any were heuristics.  (*See, e.g.*, Tr. 953:21-956:4 (Dkt. 1624).)  For example, Dr. Rinard disputed

28  whether the BlendResults code was a heuristic "*for locating information*" (Tr. 1889:18-1890:5

1   (Dkt. 1717) (emphasis added)), but he did not dispute that that code was a heuristic.

2   Samsung made *no* showing at trial—or in its motion—that would support a finding of

3   indefiniteness.  It certainly has not met its burden of clear and convincing evidence of

4   indefiniteness.  Just as the Court denied summary judgment as to indefiniteness, it should deny

5   Samsung's JMOL motion that rehashes the same arguments.

6   **V.   SAMSUNG IS NOT ENTITLED TO JMOL ON CLAIM 20 OF THE '414 PATENT.**

7   Substantial evidence supports the jury's verdict that Samsung failed to prove invalidity of

8   claim 20 of the '414 patent.  Consistent with the Court's order denying summary judgment, a

9   reasonable jury could conclude that Windows Mobile 5 Exchange Provider components on which

10  Samsung relied at trial do not "provide" a thread as required by claim 20.  And Samsung

11  presented no evidence that the IMAP Mail component on which it now relies so heavily was even

12  part of the Windows Mobile 5 prior art system it presented to the jury—much less a step-by-step

13  analysis mapping that component to the claim elements.

14   **A.   A Reasonable Jury Could Conclude That The Exchange Provider**
         **Components Of Windows Mobile 5 Do Not "Provide" A Thread As Required**
15       **By Claim 20.**

16  Samsung presented the jury with the same three Windows Mobile Exchange Provider

17  components that it had raised in its unsuccessful motion for summary judgment.  (*Compare*

18  SDX3650, *with* Dkt. 805-4 at 12-13.)  Samsung again argues a meaning of "provide" that is

19  broader than its plain and ordinary meaning, asserting that components "provide" a thread when

20  they "execute in threads" (Mot. 38:3-5; *see* Dkt. 805-4 at 16)—i.e., that a component need only

21  use a thread supplied by another component, rather than provide the thread itself.  In denying

22  summary judgment, the Court ruled that determining whether these synchronization components

23  "provide the claimed synchronization processing thread as required by claim 20 (as per claim 11)

24  is a question of fact for the jury."  (Dkt. 1150 at 25.)  The jury has now resolved that question of

25  fact against Samsung, and had ample evidence to do so.  Just as Samsung's interpretation of

26  "provide" did not warrant a grant of summary judgment, it also does not warrant JMOL.

27  The evidence demonstrated that the Exchange Provider components execute on pre-

28  existing threads provided by *other* components, and do not provide a thread themselves.

1   Samsung's expert Dr. Chase admitted that "none of [the Exchange Provider components] creates

2   a synchronization processing thread as I understand the meaning of it in the claims." (Tr. 2254:5-

3   21 (4/18/14).)  Dr. Snoeren testified that based on his review of the source code, "none of those

4   [components] provide a thread." (Tr. 2848:10-2849:1 (4/22/14).)  This testimony stands

5   unrefuted:  Samsung never asked Dr. Chase any questions on redirect that addressed his

6   admission and it chose not to recall Dr. Chase in its rebuttal invalidity case.  (*Id.* at 2254:24-

7   2255:3 (4/18/14).)  A reasonable jury, presented with uncontroverted evidence that the Exchange

8   Provider components do not create a thread, could conclude that such components do not

9   "provide" a thread within the plain and ordinary meaning of that term.

10      A reasonable jury also could reject Samsung's proffered interpretation of "provide" for

11   the additional reason that it contradicted the '414 specification, which teaches that it is only in

12   "*certain* embodiments" that the "synchronization processing thread *may* be provided by a

13   synchronization software component." (JX7 at 2:42-44) (emphasis added).  If a synchronization

14   software component "provided" a synchronization processing thread simply by executing in the

15   thread as Samsung argues (Mot. 38), then every synchronization processing thread would be

16   "provided by" a synchronization software component executing in it, contrary to the teaching of

17   the specification.

18      Moreover, a reasonable jury could recognize that Samsung's argument was contrary to the

19   plain and ordinary meaning of "provide" because it reads "provided by" out of the claim.  Claim

20   20 requires that the "synchronization processing thread is provided by a synchronization software

21   component which is configured to synchronize" data. (JX7 at 32:66-33:1.)  As Samsung's expert

22   conceded at his deposition, under Samsung's broad argument that a component simply executing

23   on a thread thereby "provides" that thread, *any* component that is "configured to synchronize

24   data" "will necessarily provide" a synchronization thread.  (Dkt. 1110-8 at 245:11-246:11.)  The

25   jury would be reasonable and correct to ignore Samsung's attempt to argue that Windows

26   Mobile 5 meets the "provided by" element by simply arguing "provided by" out of the claim.

27

28

1

**B.     A Reasonable Jury Could Conclude That An "IMAP Mail Component" In Windows Mobile 5 Did Not Invalidate Claim 20.**

2

3          Samsung seeks JMOL on an entirely new invalidity argument that was not presented to

4   the jury—that an "IMAP Mail Component" in Windows Mobile 5 is the first synchronization

5   software component that provides a thread, and that the calendar and contacts Exchange

6   components are the two additional components set forth in claim 20.  At trial, Samsung merely

7   mentioned the IMAP Mail Component and stated the conclusion that the component meets certain

8   claim limitations, without presenting any evidence to support that conclusion—or even any

9   evidence that the component is actually part of the prior art system at issue—much less evidence

10  to support the theory that Samsung now advances.  A reasonable jury could conclude that

11  Samsung failed to satisfy its burden of "clear and convincing evidence" of invalidity based on the

12  IMAP Mail Component.

13         Samsung first mentioned the "IMAP Mail Component" in connection with a

14  demonstrative—not an exhibit—on which Dr. Chase had placed the three Exchange Provider

15  Components discussed above, as well as what he referred to as "a fourth component . . . called

16  IMAP Mail Component that can synchronize data with IMAP mail servers."  (Tr. 2194:8-16

17  (4/18/14) (Chase discussing SDX3650).)  But the system that Dr. Chase went on to illustrate and

18  describe to the jury utilized *only* the three Exchange Provider Components, not this "fourth

19  component."  Dr. Chase described and illustrated a system in which Exchange components

20  synchronized with an *Exchange* server, not an IMAP server.  (Tr. 2194:18-24 (4/18/14) ("These

21  handheld devices synchronize wirelessly on the go with Exchange servers, and the Exchange

22  server we can see there on the right . . .") (describing SDX3651).)  Dr. Chase continued that "the

23  *three provider components* that I spoke about are synchronization software components, each for

24  a different data class, and they meet the limitations for the claim.  They are, in particular,

25  configured to synchronized structured data of those data classes."  (*Id.* at 2194:25-2195:8

26  (emphasis added).)  He emphasized that he found *three* synchronization software components—

27

28

"one for each of the different classes, e-mail, contacts, and calendar." (*Id.* at 2195:9-14.)[6]

Dr. Chase's failure to include the IMAP Mail Component in the system he described to the jury is consistent with the evidence that he presented, which speaks only to Exchange synchronization, not an IMAP synchronization process. Dr. Chase relied heavily on DX317, a Microsoft publication describing Exchange, Exchange Active Sync protocol, and other "details on Windows Mobile 5." (Tr. 2187:15-2188:7 (4/18/14).) The sole graphic that Dr. Chase utilized to show the jury the Windows Mobile system was pulled directly from DX317. (*Compare* SDX3651-53, *with* DX317 at 2.) Neither the illustrations nor the text of DX317 so much as mention IMAP. They address "Exchange ActiveSync and Exchange 2003" and show a system with the Exchange Provider components that Dr. Chase discussed and an *Exchange* server.

In sum, Dr. Chase never explained how—much less presented any evidence that—the "IMAP Mail Component" was part of the Windows Mobile 5 prior art system that he claimed anticipated claim 20. A reasonable jury could certainly conclude that Samsung failed to meet its burden of showing that the "IMAP Mail Component" was a "synchronization software component" in the Windows Mobile 5 prior art system that met the claim elements; indeed, any other conclusion would have been unreasonable.

Samsung's motion fails on the independent basis that, even if Samsung had met its burden to show that the IMAP Mail Component was part of the Windows Mobile 5 system and operated as Samsung now argues, a reasonable jury still could find that that one component providing a thread is insufficient to satisfy claim 20, and therefore that Samsung had failed to prove that claim 20 was invalid. Claim 20 depends from claim 11. Claim 11 defines the characteristics of a synchronization software component. It requires that those components are "configured to synchronize the structured data from the first database with the structured data from a second database" and that they also "provide[]" "at least one synchronization processing thread." (JX7 at

---

[6] Dr. Chase mentioned IMAP again only to declare that "an example of an IMAP server would be something called Cyrus, and Cyrus also stores mail data in the database." (Tr. 2196:10-13 (4/18/14).) He never testified that the Windows Mobile system he described synchronized with "something called Cyrus" or any other type of IMAP server.

47.)  Claim 20 provides further limitations on three synchronization software components of the type defined in claim 11, stating, "the storage medium as in claim 11 wherein the synchronization software component is configured to synchronize structured data of a first data class and other synchronization software components are configured to synchronize structured data of other corresponding data classes."  (*Id.*)  As a result, claim 20 requires three synchronization software components, each of which must be configured to synchronize a particular data class and provide a thread.  The presentation of only *one* synchronization software component that is configured to synchronize a particular data class and that provides a synchronization processing thread therefore cannot satisfy claim 20.  Samsung's argument that the "other synchronization software components" do not need to provide synchronization processing threads reads the term "synchronization software component" inconsistently between claims 11 and 20, which is illogical and improper.  *See, e.g.*, *Rexnord Corp. v. Laitrom Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("Furthermore, a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.").

## VI.     THE RECORD SUPPORTS THE INDIRECT INFRINGEMENT VERDICT.

Samsung makes no JMOL argument regarding direct infringement that is unique to SEC.  Thus, if the Court agrees with Apple that Samsung is not entitled to JMOL of non-infringement of the '647 and '721 patents, SEC (along with SEA and STA) will be responsible for damages for that infringement.  Samsung also is liable for infringement of the '172 patent, as established by the Court's summary judgment order (Dkt. 1151) and stipulation (Dkt. 1416).  As a result, Samsung's challenge to SEC's *indirect* infringement will not affect the size of the verdict or who is responsible for payment (and therefore need not be resolved).  (*See* 1846 Dkt. 2220 at 34.)

The Court can readily dispose of Samsung's indirect infringement arguments, as they are recycled, often with identical language, from motions that the Court rejected in the 1846 case and in prior Rule 50 motions in this case.  (*Compare* Mot. 38:12-18, *with* 1846 Dkt. 1990 at 16:23-17:4 (using identical language); *see* Dkt. 1806 at 3:20-26 (Samsung's motion); Dkt. 1846 at 2 (Order).)  Further, as discussed above and in Apple's Rule 50(b) motion, the record at trial is more than sufficient to demonstrate Samsung's knowledge of and intent to copy and infringe both

1    the '721 and '647 patents.  (*See* Dkt. 1897-3 at 21:1-22:6; *supra,* Sections I.D, II.D.2, II.A.3.)

2    Additional evidence establishes the remaining elements of SEC's indirect infringement in light of

3    the undisputed sales by STA.[7]  (PX3001 (Denison) (SEC's control over STA's operations);

4    PX3004 (Sheppard) (testimony on SEC's control over shipments, customers and pricing in

5    United States); Tr. 1208-1210 (Dkt. 1714) (Velluro) (explaining chain of sales for smartphones);

6    Tr. 1046:22-1047:15 (Dkt. 1714) (undisputed that STA is wholly owned subsidiary of SEC).)

7         In response to this record, Samsung cites all of Dr. Jeffay's testimony as evidence of

8    Samsung's beliefs regarding the '647 patent (Mot. 38:22), but Dr. Jeffay is not an employee of

9    Samsung and testified to no personal knowledge regarding Samsung's state of mind.  In contrast,

10   the record conclusively establishes that SEC knew of the '647 patent and Apple's allegations of

11   infringement since August of 2010.  (PX132.15; PTX3003 (testimony of Jun Won Lee).)

12   Samsung cites testimony that one product performed a "single tap to dial" function *in addition to*

13   performing the infringing functions of the '647 patent (Mot. 39:8), but inclusion of an additional

14   non-infringing function is not a defense, particularly when SEC supplied products and software

15   that Samsung had specifically redesigned to include the infringing features.  (*See, e.g.*, PX146 at

16   35; PX121 at 27, 100.)  Samsung's motion fails to establish the absence of substantial evidence to

17   support the indirect infringement verdict.

18   **VII.   NO REDUCTIONS FOR THE GALAXY S II PRODUCTS ARE APPROPRIATE.**

19        **A.   Samsung Has Not Satisfied Any Judgment.**

20        The Court has already ruled that any deduction must await payment of a judgment and

21   noted that no payment will occur until the appeal in the 1846 case is completed.  (Dkt. 1411 at

22   24:17-25:1 ("At the appropriate time, if there is a judgment in favor of Apple in this case on this

23   particular Galaxy S II product and both survive appeal, then the Court will consult with the

24   parties at that time to determine only one recovery for each sale."); Dkt. 1398 at 3:23-24.)  This

25   alone resolves Samsung's motion.

26   _____

27        [7] Because STA was found to directly infringe apparatus claims, the Supreme Court's
     recent decision in *Limelight Networks, Inc. v. Akamai Techs., Inc.*, No. 12-786, 2014 WL
28   2440535, at *5-6 (U.S. June 2, 2014), has no impact on the sufficiency of Apple's evidence.

1    Samsung does not challenge the Court's ruling, which is dictated by controlling authority.

2    A patentee is entitled to hold direct and indirect infringers jointly and severally liable for the same

3    infringement, and the patentee is barred only from *collecting* more than once for it.  *Aro Mfg.*

4    *Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 512 (1964).  The mere existence of the

5    unpaid judgment in 1846 alone does not release Samsung from the current judgment before any

6    payment occurs.  None of Samsung's cited cases supports reducing the present award before

7    judgment is paid.  Some involved overlapping awards *within the same case*, and eliminated a

8    double recovery included in a single judgment because payment of a single judgment for the

9    largest overlapping jury award would *necessarily* satisfy the award of the lesser, included

10   amounts.[8]  Others did not even address double recovery or the question of how overlapping

11   judgments should be handled.[9]

12   Samsung wrongly contends that the existence of separate cases and separate appeals is

13   irrelevant.  That argument ignores the significant risks to the successful patentee, the inability of

14   the appellate court to resolve the issue in a single appeal, and defendants' burden to demonstrate

15   satisfaction of a judgment.  When a district court eliminates an alleged double recovery in a single

16   case, the appellate court receives one record and can issue a single mandate that calculates one

17   judgment sufficient to fully compensate the patentee and avoid a double recovery.  But when two

18   judgments are at issue, an appellate order that affects one award or judgment does not reinstate

19   the other.  Thus, if the Court granted Samsung's request now and Samsung later won its appeal in

20   1846, Apple would not be able to collect on the present award even though Samsung has

21   infringed multiple patents and any basis for the reducing the judgment would have been

22   eliminated.  The prospect of such unjust results is one of the reasons that defendants bear the

---

23

24   [8] *Catalina Lighting Inc. v. Lamps Plus, Inc*., 295 F.3d 1277 (Fed. Cir. 2002), *Aero Prods. Int'l v. Intex Recreation Corp.*, 466 F.3d 1000, 1019-20 (Fed. Cir. 2010); *Arlington Indus. Inc. v.*

25   *Bridgeport Fittings, Inc.*, No. 3:01-CV-0485, 2010 WL 815466 (M.D. Pa. Mar. 3, 2010).

26   [9] *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1371 (Fed. Cir. 2008); *Accentra Inc. v. Staples, Inc.*, 851 F. Supp. 2d 1205 (C.D. Cal. 2011); *Integra Lifesciences I, Ltd. v. Merck KGaA*, No. 96 CV 1307-B(AJB), 2004 WL 2284001 (S.D. Cal. Sept. 7, 2004).  Another inapposite case,

27   *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 642 (7th Cir. 2011) addressed issues of *respondeat superior* and a single jury verdict, and did not involve separate judgments.

28

1    burden of proving that facts outside the record—including satisfaction of a prior judgment or

2    other payment in full—justify modifying a judgment.  *See Yarmouth Sea Prods. v. Scully*, 131

3    F.3d 389, 399 (4th Cir. 1997); *Bollinger v. Rheem Mfg. Co.*, 381 F.2d 182, 185 (10th Cir. 1967).

4    Samsung cannot provide that proof until the appeal concludes and payment occurs.

### B.    Until A Judgment Is Satisfied, There Can Be No Double Recovery For Galaxy S II Sales After August 25, 2012.

7    Samsung asks the Court to eliminate as a "double recovery" the $9,184,992 in damages

8    that the jury attributed to sales of the Galaxy S II products after August 25, 2012.  That request is

9    improper because Samsung did not move for the equivalent relief in its Rule 50(a) motion.

10    Samsung's request also fails on the merits, for the reasons discussed in the prior Section—

11    there is no double recovery because there has been no payment of any judgment.  Apple cannot

12    yet collect and Samsung has not paid anything for sales of Galaxy S II products that occurred

13    after August 25, 2012 (or at any time).

14    Notably, Samsung's arguments about potential double recovery of supplemental damages

15    for Galaxy S II products do not contest Apple's entitlement to supplemental damages, or raise any

16    issues about how those damages should be calculated.  The absence of those arguments is fully

17    consistent with other recent events that make clear that there is no longer any impediment to

18    entering a supplemental damages award in the 1846 case and that doing so would benefit the

19    Court and the parties.

20    *First*, although the Court defined the methodology for calculating supplemental damages

21    in the 1846 case, the Court deferred an award in part to obtain appellate guidance on how

22    supplemental damages should be calculated when the jury's award derives from Section 289

23    damages.  (*See* 1846 Dkt. 2271 at 6.)  However, on May 23, 2014, Samsung filed its opening

24    brief in the 1846 appeal and did not challenge either whether supplemental damages should be

25    awarded or the Court's methods for calculating them.  (Brief of the Petitioner-Appellant, *Apple*

26    *Inc. v. Samsung Elecs., Ltd.*, No. 14-1335 (Fed. Cir. May 23, 2014), Dkt. 33.)  Therefore, the

27    Federal Circuit will not be providing any further guidance on supplemental damages.

28    *Second*, because sales of the Galaxy S II products stopped in September 2013 and

1    Samsung has now provided all the relevant information, the record in 1846, and PX142 in this

2    case, now contain all the information needed to calculate supplemental damages.  The same is

3    true for prejudgment interest.  Supplemental damages and prejudgment interest are easily

4    calculated and will add $185 million to the existing judgment in the 1846 case.  (Decl. of Marylee

5    Robinson Re Supplemental Damages ¶¶ 4-14 & Exs. 1-5.)

6        *Finally*, entry of an award would pave the way to resolve both cases following appeal

7    without further court intervention, which benefits the Court and both parties.  All amounts would

8    be liquidated, and Apple would be able to collect once and only once for the relevant sales of

9    Galaxy S II products.

10    **C.    The Verdict In This Case Is The Only Award Apple Has Received For The
         Sale Of Galaxy S II Products Between July 1 And August 24, 2012.**

11

12        The jury in this case awarded Apple $2,012,273 for Samsung's sales of Galaxy S II

13    products in July and August of 2012.  (Dkt. 1884 at 10.)  Samsung seeks to preclude Apple from

14    recovering on that verdict as a supposed double recovery, but it cites no evidence that Apple has

15    recovered damages for the sale of Galaxy S II products in that time period.  No such evidence

16    exists.  Both parties' damages calculations for the Galaxy S II products in the 1846 case stopped

17    as of June 30, 2012, and the Court has ruled that Apple may not receive supplemental damages

18    for that time period in the 1846 case.  (*See* 1846 Dkt. 1554 at 3; 1846 JX1500; 1846 Dkt. 1839 at

19    2040-2041; 1846 Tr. 3033:17-20.)  Apple has obtained neither a judgment nor payment that

20    reflects an award of Section 289 damages for the Galaxy S II products after July 1, 2012.

21        Contrary to Samsung's arguments, the Court's March 1, 2013, order in the 1846 case does

22    not support its request.  There, the Court held that Apple failed to carry its burden in seeking

23    supplemental damages because the jury *could have* awarded additional damages beyond Mr.

24    Musika's calculation for this interim period.  (1846 Dkt. 2271 at 3.)  The Court never held that the

25    jury actually added to the Section 289 damages to account for this period.  To the contrary, the

26    Court concluded that the jury derived its calculation of Samsung's profits solely based on a

27    percentage reduction from Mr. Musika's calculations of Samsung's profits, which ended on

28    June 30, 2012.  (*Id.* at 9-10.)  Samsung itself urged this interpretation of the 1846 verdict.

1    Given these facts, there is no foundation for Samsung's claim of a double recovery.

2    Samsung's motion should be denied.

3        **D.    Samsung's Apportionment Of Question 10b Is Improper.**

4        Question 10b does not break down damages by patent.  Nor did Samsung—in any of the

5    three proposed verdict forms it submitted with an equivalent question—ever propose an

6    interrogatory that broke down its equivalent question by patent.  (*See* Dkt. 1453-3 at 21; Dkt.

7    1642 at 26; Dkt. 1757-1 at 25.)  Samsung has thus waived a claim that it is entitled to have the

8    Court break down the amounts in the manner that Dr. Chevalier advocates.

9        Moreover, Samsung fails to show that Dr. Chevalier's proposed percentages have any

10   foundation in the record.  The percentages she assigns to each of the nine boxes in Question 10b

11   differ for each of the nine entries.  Samsung cannot explain how the assigned percentages tie to

12   any testimony, any exhibit, or any argument that Samsung (or Apple) previously made.  The

13   Court is not entitled to reach beyond the evidence in the record and the breakdown that the jury

14   provided to adjust verdicts or reduce judgments based solely on intuition about how the

15   calculations were completed.  *See Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356,

16   1365 (9th Cir. 1986); *Krause v. Dresser Indus.*, *Inc.*, 910 F.2d 674, 679-80 (10th Cir. 1990);

17   *Chuy v. The Philadelphia Eagles Football Club*, 595 F.2d 1265, 1279 n.19 (3d Cir. 1979).

18       Samsung's cited authority, *Cornell University v. Hewlett-Packard Co.*, 609 F. Supp. 2d

19   279 (N.D.N.Y. 2009), does not justify its approach.  There, the Court applied "the jury's

20   *uncontroverted* royalty rate of 0.8 percent" to a different royalty base.  *Id.* at 292 (emphasis

21   added).  That "uncontroverted" rate was both undisputed and directly tied to the testimony of

22   plaintiffs' expert.  *Id.* at 290-92.  In contrast, Apple does not agree that Dr. Chevalier's

23   derivations are valid and neither Samsung nor Dr. Chevalier ties them to any testimony or

24   exhibits.  The Court should reject Samsung's efforts to reach beyond the verdict and assign

25   18 specific amounts to Question 10b that are not found on the verdict form.

26   **VIII.   SAMSUNG IS NOT ENTITLED TO JMOL ON THE '239 PATENT.**

27       **A.    Substantial Evidence Supports The Jury's Non-Infringement Finding.**

28       The jury was free to credit Apple's witnesses over Samsung's, and substantial evidence

1    supports a finding that Apple's accused products lack the required "video capture module,"

2    "means for transmission," or "video" (for FaceTime).

3        ***Video capture module.***  A "video capture module" is a commercially-available

4    component that receives analog video from a device, such as a VCR, and compresses it.  (Tr.

5    2724:21-2726:7, 2727:24-2730:14, 2731:1-25 (4/22/14); PX248; PX249; PX253; PX254.)

6    Dr. Storer explained, based on his review of Apple documents, product tear-downs, and

7    interviews with Apple engineers, that the accused devices lack a "video capture module."  (Tr.

8    2739:3-2740:12 (4/22/14).)

9        Dr. Schonfeld never identified a "video capture module" in the accused products.  Instead,

10   he merely opined that the applications processor (or "SOC") captures and compresses video.  (Tr.

11   2540:18-2541:18.)  But the claim requires that a specific component—a "video capture

12   module"—perform the capture and compression.  (Tr. 2540:18-2547:3 (4/21/14).)  Furthermore,

13   Dr. Storer explained why the applications processor is not a "video capture module":  it has very

14   different physical characteristics, receives only digital data representing frames of video, and

15   cannot receive analog data or receive data from an external device.  (*Id.* at 2738:13-2743:17.)

16       ***Means for transmission.***  Dr. Storer explained that the accused devices also do not

17   contain "one or more modems connected to cellular telephones," as required by the Court's

18   construction, because, among other reasons, the baseband chip is not "connected to" a cellular

19   telephone and the iPhone is not a cellular telephone without the baseband chip.  (*Id.* at 2744:14-

20   2745:2, 2746:2-6; *see also id.* at 2548:10-16 (4/21/14) (Schonfeld); JX25 at 4:17-27, 8:3-6, 8:38-

21   47.)  Dr. Storer also explained that the accused devices lack the required "communication ports"

22   and software for "initializing one or more communication ports," and that Dr. Schonfeld never

23   identified any ports or software for initializing ports.  (Tr. 2751:20-2753:19 (4/22/14).)

24       ***Obtaining / transmitting captured video (FaceTime).***  Mr. Garcia explained that

25   FaceTime transmits and discards individual video frames as they are received.  (*Id.* at 2713:12-

26   2715:11 (4/22/14).)  Based on this unchallenged testimony, Dr. Storer testified—and the jury was

27   free to find—that FaceTime thus never obtains or transmits "captured video" as the claim

28   requires.  (*Id.* at 2753:20-2755:13.)

**B.     Applying Plain Meaning For Terms Not Construed By The Court, Dr. Storer Properly Compared The Accused Products To The Asserted Claim.**

Samsung asserts that Dr. Storer improperly compared the accused products to a commercial embodiment of the '239 patent and that Apple relied on claim constructions contrary to the plain meaning.  Both arguments fail.

*First*, Samsung has advanced these same objections in previous motions and either lost or withdrawn them.  In the context of the terms "video capture module" and "video," the Court ruled that the "parties may 'introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art.'"  (Dkt. 1301 at 5 (citation omitted).)  The Court also agreed that Dr. Storer's opinions did not depart from plain meaning, that he noted "correctly" that "the specification only uses the term 'video capture module' in conjunction with 'video card,'" and that the jury could agree with Dr. Storer's opinion.  (*Id.* at 7-8.)  Samsung also withdrew its motion to strike and a *Daubert* motion insofar as they sought to exclude Dr. Storer's opinions about "modems" and "communications port" because they purportedly departed from plain meaning.  (Dkt. 878-05 at 10-11, 17; Dkt. 802-03 at 23-24, Ex. TT at 6-10; *see* Dkt. 1138-04; Dkt. 1145.)

*Second*, relying on his experience in the field and numerous documents describing video capture modules (including those used by the inventors), Dr. Storer explained the plain meaning of "video capture module" to one of ordinary skill in the art at the time of the invention, as the Court permitted him to do.  (Tr. 2724:21-2738:3 (4/22/14); *see also id.* at 2511:7-2512:1 (4/21/14) (Freeman), 2712:24-2713:9 (4/22/14) (Garcia).)  The deletion of the phrase "video card" from claim 15 during prosecution did nothing to change what a "video capture module" *is*, and Samsung presented no evidence to the contrary.  (*See Id.* at 2742:6-10 (4/22/14) (Storer).)  The same is true for the construction of "means for transmission":  as Dr. Storer explained, the components in the required structure were well known in the art and described in the patent.  (*Id.* at 2744:14-2746:18.)  Finally, Samsung fails to explain how Dr. Storer's testimony about "video" was erroneous or even how the claim covers "streaming video" or "video frames."  (Mot. 45.)  The '239 patent never mentions streaming video, and a single frame is not video.  (Tr. 2754:20-25

1    (4/22/14) (Storer).)

2    **Third**, Samsung failed to raise its argument that Dr. Storer improperly compared the

3    accused product to a commercial embodiment of the '239 patent in its Rule 50(a) motion.  (*See*

4    Dkt. 1803 at 7.)  Samsung's new argument is therefore waived.  In any event, Samsung has failed

5    to identify any error in Dr. Storer's testimony about commercial video capture modules or the

6    FirstLook product—which Samsung *itself* introduced in its case-in-chief through Mr. Freeman

7    and Dr. Schonfeld.  (Tr. 2512:2-25, 2533:16-2534:7 (4/21/14).)  In explaining the technology,

8    Dr. Storer described the Intel Action Media II product that was used in the inventors' FirstLook

9    product and other commercial products.  (*Id.* at 2732:18-2737:17 (4/22/14); *see also id.* at 2577:1-

10   5 (4/21/14) (Schonfeld).)  That testimony was consistent with the Court's ruling on plain meaning

11   (Dkt. 1301 at 5) and with the specification's description of video cards with video capture

12   modules as "available commercially from IBM/Intel" (JX25 at 4:39-41).  Dr. Storer's non-

13   infringement analysis then properly compared the accused products to the claim language.  (Tr.

14   2739:3-2746:18, 2751:10-2755:13 (4/22/14).)

15   **Finally**, *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1347 (Fed. Cir.

16   2003), provides no assistance to Samsung.  In that case, the Federal Circuit reversed a grant of

17   summary judgment of non-infringement because the court had relied on differences in a preferred

18   embodiment and the accused process that were wholly irrelevant to the claimed process.  Here, as

19   described above, Dr. Storer identified language in the specification consistent with the plain

20   meaning of limitations *actually in claim 15*.  Dr. Storer's analysis was based on claim language

21   and therefore proper, as this Court previously held.  (Dkt. 1301 at 7-8.)

22                                          **CONCLUSION**

23   Samsung's motion for judgment as a matter of law and motion to amend the judgment

24   should be denied.

25

26

27

28

1    Dated: June 6, 2014                    MORRISON & FOERSTER LLP

2

3                                           By:   /s/ Rachel Krevans
                                                  RACHEL KREVANS
4
                                            Attorneys for Plaintiff and
5                                           Counterclaim-Defendant
                                            APPLE INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28