# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

| | | |
|---|---|---|
| APPLE INC. and NeXT SOFTWARE INC. (f/k/a NeXT COMPUTER, INC.), | ) ) ) | |
| *Plaintiffs*, | ) ) | No. 1:11-cv-08540 |
| v. | ) ) ) | Judge Richard A. Posner. |
| MOTOROLA, INC. and MOTOROLA MOBILITY, INC., | ) ) ) | |
| *Defendants*. | ) | |

ORDER OF APRIL 9, 2012

**Apple Patent '002.** Motorola's principal argument is that the Android operating system, though as sold it does not generate windows that obstruct the notification window, is designed to enable a programmer to write a program that does obstruct the notification window, and at least one third-party programmer has done so; the program is the Smart Taskbar. Thus the operating system makes it easy for third-party programmers to write programs that can obstruct the notification window by including higher window layers. Whether this means that Motorola is not infringing, even though it merely enables application programmers to create the obstruction functionality, presents an issue of law rather than of fact, and I direct the parties to address it in short briefs due on Friday, April 13.

**Apple Patent '263.** I deny Motorola's motion for summary judgment of noninfringement. Motorola argues that its products don't infringe the '263 patent because they contain no realtime signal processing subsystem, which as I've construed the term requires the system to process data subject to explicit response-time constraints communicated to it by a realtime API. The realtime API is a conduit for applications that need data-processing services from the realtime subsystem; such applications tell the realtime API its constraints and the API passes them along to the realtime subsystem.

Case: 5:12-cv-00630-LHK Document 1908-14 Filed 06/06/14 Page 3 of 6
Case: 1:11-cv-08540 Document #: 751 Filed: 04/09/12 Page 2 of 5 PageID #:63596

No. 1:11-cv-08540     2

Apple asserts that the "hardware accelerator" is the realtime signal processing subsystem in Motorola's devices, but Motorola counters that the hardware accelerator isn't subject to explicit response-time constraints and no realtime API supplies it with such constraints. (The parties' other arguments I can ignore.) Apple responds that the entire device is subject to a "playback clock" that sets limits for data flow, and, if a component of the system doesn't keep up, a process called "starvation" occurs, which leads to degraded performance. Apple also argues that video files running on Android applications have internal data-processing parameters for playback that they communicate to the hardware accelerator. So if either the playback clock or the video-processing constraints are communicated to the hardware accelerator via a realtime API, Apple has a plausible claim that Motorola's devices infringe the "realtime signal processing subsystem" claim in the patent. Apple's expert Dr. Polish has identified "OMX codec node" and the "PVMF Node API" as realtime APIs that do that.

Motorola doesn't directly challenge Dr. Polish's technical points in its briefs, but argues that those explicit response-time constraints apply to other components of the Android system. But so what? As long as they also apply to the hardware accelerator, and the constraints are communicated via the realtime APIs, that might suffice for infringement, at least under the doctrine of equivalents. These questions raise factual issues, which require a trial to resolve.

**Apple patent '559.** I grant Apple's motion for summary judgment of noninfringement of claim 4, but deny its motion for summary judgment of noninfringement of claim 5 and of invalidity of the patent.

I construed claim 4's description of inner codes that "comprise a set of Hadamard code words" to mean inner codes that "contain at least one Hadamard code word." I ruled that an inner code consisting of elements "taken from" a set of Hadamard code words isn't covered by the description if the ultimate set contains no Hadamard code words.

Motorola contends that the "signature code" in Apple's devices infringes the inner code limitation. The signature code begins as a set of Hadamard code words but they undergo a quadrature transformation before being combined with the outer code. The Hadamard code words described in the patent are real-valued strings of +1 and -1. A Hadamard code word that has been subjected to a quadrature transformation becomes a complex number; it is no longer real-valued. I reject Motorola's last-minute argument that '559's reference to Hadamard code words actually encompasses "complex Hadamard matrices" based on complex numbers. Motorola opposes Apple's contention

Case: 5:12-cv-00630-LHK Document 1908-14 Filed 06/06/14 Page 4 of 6
Case: 1:11-cv-08540 Document #: 751 Filed: 04/09/12 Page 3 of 5 PageID #:63597

No. 1:11-cv-08540 3

that Hadamard codes are always real-valued on the basis of a *Wikipedia* article, rather than its expert, and it does so despite the parties' (and their experts') apparent agreement until now that Hadamard code words are binary sequences of 1's and -1's with specific noninterference properties. Two weeks ago at claim construction, Motorola argued that "the patent contemplates the code words forming the inner codes to be taken from a set of *binary* Hadamard code words." Binary strings are real-valued. A Hadamard code subject to a quadrature transformation is not: $4 + 2i$ is not 4. Whether $4 + 2i$ "contains" 4 is irrelevant—they are different numbers. The signature code in Apple's devices is a set of Hadamard code words, the elements of which are subject to a quadrature transformation resulting in complex numbers. The resulting set contains no real-valued Hadamard code words and cannot be said to infringe '559's inner code under my construction of the term.

Motorola has a second argument, however. Claim 1 is a "comprising" claim, which means that additional steps can be inserted into the claimed process. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1319 (Fed. Cir. 2009). Since the signature code before it undergoes the quadrature transformation can still infringe '559's inner code limitation, the quadrature transformation may be an additional step. Motorola seeks to insert it into the claim 1 method between the formation of the inner code and the multiplication of the inner code by the outer code. But this puts too much weight on the "comprising" doctrine, because it involves the insertion of an additional step *inside* a claimed step. See *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007). A process that performs a quadrature transformation between generating the inner code and combining it with the outer code doesn't practice claim 1's step of "multiplying the outer code by the inner code," and therefore cannot literally infringe claim 4, which is derivative from claim 1.

The process {(inner code) x (quadrature term) x (outer code)} may be equivalent to {(inner code) x (outer code) x (quadrature term)} by the commutative property of multiplication. But claim 1 is explicit that the inner code is multiplied by the outer code in one step. Even if switching the terms around might achieve the same preamble generation function, it wouldn't achieve it in the way disclosed by '559. Motorola's infringement theory of equivalence would thus circumvent a specific limitation of the '559 patent if successful, and so is barred by the rule articulated in *Athletic Alternatives v. Prince Mfg.*, 73 F.3d 1373, 1382 (Fed. Cir. 1996); see also *Decisioning.com v. Federated Dept. Stores, Inc.*, 527 F.3d 1300, 1315 (Fed. Cir. 2008). I therefore grant Apple's motion for summary judgment of noninfringement of claim 4.

I construed claim 5's phrase "set of orthogonal code words" to mean a set that contained at least some elements orthogonal to each other. Apple's allegedly infringing products use an inner code that is a repetition of the same Hadamard code word 256 times. Since a Hadamard code word isn't orthogonal to itself, if the Apple signature code is considered a set of 256 repeats, it contains no orthogonal elements and is not a set of orthogonal code words.

But Motorola is correct that concatenating 256 small Hadamard code words yields one long Hadamard code word. If the Apple signature code is considered a set of 1 element, rather than of 256 smaller elements, it fits within the language of claim 5. The parties accuse each other of inconsistent characterizations of the signature code as one 4096-bit code word or 256 repetitions of a 16-bit code word during the course of this litigation. If Apple's signature code is the former, Motorola's infringement argument is viable. If the latter, it isn't. Given the equivocal nature of both sides' characterizations and their expert testimony, there is a triable issue as to which characterization applies. Claim 5 is independent of claims 4 and 1, moreover, so granting summary judgment on claim 4 doesn't directly affect claim 5. Apple's motion for summary judgment of noninfringement of claim 5 is therefore denied.

Apple has not established by clear and convincing evidence that U.S. Patent No. 6,163,533 anticipates every claim limitation of the '559 patent, rendering it invalid. *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1265 (Fed. Cir. 2012). For example, Motorola's expert submits that the '533 method transmits the information-bearing signal and (what is alleged to be) the preamble signal in a different bundle from what the '559 patent discloses. This disagreement, along with others relating to whether the '533 patent combines the inner and outer codes in the same manner as the '559 method, indicate that genuine issues of material fact remain.

Apple's objection to evidence submitted in support of Motorola's motion opposing summary judgment on the '559 patent is dismissed as moot; I have not relied upon the sections of Dr. Kenny's affidavit to which Apple objects.

**Apple patent '647.** I deny Motorola's motion for summary judgment of noninfringement of claim 1 and dependent claim 8.

I construed the phrase "analyzer server" in claim 1 to mean a code module that is separate from client applications and provides structure detection and linking services to the client applications. (To clarify, "server" and "client" denote pieces of code in a computer. I rejected Apple's argument that the terms describe separate machines.)

Case: 1:11-cv-08540 Document #: 751 Filed: 04/09/12 Page 5 of 5 PageID #:63599
Case5:12-cv-00630-LHK Document1908-14 Filed06/06/14 Page6 of 6

No. 1:11-cv-08540    5

Apple's infringement theory considers the Motorola Messaging, MMS, and Browser applications to be the client applications. Motorola argues that each runs its own analyzer code within the program—hence, none uses a "server." It appears that the Android system stores code to perform the pattern recognition and linking functions claimed by '647 in Android common libraries (the ContextMenu, CacheBuilder and Linkify libraries). The client applications call on relevant code from the libraries to facilitate structure detection and linking. In his supplemental infringement reports, Apple's expert has opined that calling code from a common library is the same as, or equivalent to, the '647 client and analyzer server system. The "separateness" of the client application and the analyzer server required by my claim construction isn't an issue suitable for summary judgment; some of the code responsible for each task is intertwined with the client applications, though much appears separate from and reused across the client applications.

The '647 specification requires that the analyzer server link structures to actions through the use of "conventional pointers." I accepted Motorola's claim construction argument that conventional pointers were code creating a "specified connection" between the structure and the action. Apple's expert has opined that sufficiently specific links exist when the Android system presents the user with a list of actions relevant to a recognized structure. Whether the linking performed by the Android system is sufficiently specific to fall within my narrow construction of the term presents a genuine issue of material fact as to infringement.

Any argument for summary judgment of noninfringement based on the timing of the linking in the Android system compared with the '647 system is beyond the limited scope of this summary judgment round, as my '647 claim construction didn't interpret any issues of timing.

United States Circuit Judge

April 9, 2012