Timothy T. Scott (State Bar No. 126971)
tscott@kslaw.com
Geoffrey M. Ezgar (State Bar No. 184243)
gezgar@kslaw.com
KING & SPALDING LLP
601 California Avenue
Palo Alto, CA 94304
Telephone: +1 650 422 6700
Facsimile: +1 650 422 6800

Attorneys for Non-Party
INTERNATIONAL BUSINESS MACHINES CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (PSG)<br><br>**DECLARATION OF MARK PETERSEN IN SUPPORT OF SAMSUNG'S ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>Judge:  Hon. Judge Lucy H. Koh |

## Declaration of Mark Petersen

1. I make this declaration in support of Samsung's Administrative Motion to File Documents Under Seal Relating to Samsung's Opposition to Apple's Motion for Permanent Injunction ("Administrative Motion"). I make this declaration based on my personal knowledge of the facts described below.

2. I am Director of Finance for Research and Intellectual Property at International Business Machines Corporation ("IBM"). In this role, I am responsible for the financial aspects of IBM's corporate Intellectual Property licensing and assignment program.

3. Samsung's Opposition to Apple's Motion for Permanent Injunction ("Opposition Brief") includes a supporting Declaration from Dr. Judith Chevalier ("Chevalier Declaration").

4. I am informed by counsel for Samsung that the Chevalier Declaration may contain information deemed confidential by IBM. Specifically, para. 72 of the Chevalier Declaration and p. 173 of Exhibit 2 to the Chevalier Declaration contain information pertaining to the terms of IBM's confidential patent cross license agreements with Apple.

5. IBM has had for decades and continues to have an active and substantial program of licensing and selling patents and other types of Intellectual Property. Such program includes entering into patent cross license agreements with third parties such as Apple, under which each party grants to the other licenses under its patent portfolio as it relates to the other party's business activities. Often such cross licenses will include a "balancing payment" from one party to the other to account for differences in the size and relevance of the respective patent portfolios.

6. In the industry, the balancing payment in a cross license agreement may be based on a number of factors, which may include: the breadth of the licenses granted; the size, strength and age of the respective patent portfolios; the relevant product and service revenue of the parties; and the extent to which the parties may already have patent coverage. IBM's particular pricing methodology for computing balancing payments, including the exact factors IBM relies upon and how it weights those factors, is trade secret information.

7. Public disclosure of the substantive and financial terms of IBM's confidential license agreements with Apple, including the scope of the license and the amount of consideration paid, would negatively impact IBM in future license and settlement negotiations by giving potential licensees the ability to derive IBM's secret methodology for determining balancing payments. The amount of the balancing payment in a particular agreement are significant data points towards reverse engineering IBM's pricing methodology. Competitors and potential counterparties to licensing and settlement agreements would gain an unfair insight into IBM's analyses, particularly as IBM would know nothing about their methodology for the negotiations. Using their knowledge of the precise substantive and financial terms of previously nonpublic agreements, this unfair advantage would allow them to calibrate their negotiation strategies to the detriment of IBM.

8. IBM's cross license agreements with Apple require the parties to maintain the confidentiality of their terms, and IBM relies upon that confidentiality when entering into these agreements. For the reasons stated above, the public disclosure of the substantive and financial terms of those agreements, including the commercially sensitive balancing payment amounts specified in the agreements, would harm IBM's patent licensing business.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: June 10, 2014

By: _____
MARK PETERSEN